# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., *et. al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

### NON-SURETY CLAIM RELATED PHASE II TRIAL BRIEF OF FIREMAN'S FUND INSURANCE COMPANY, ALLIANZ S.P.A., F/K/A RIUNIONE ADRIATICA DI SICURTA, AND ALLIANZ SE, F/K/A ALLIANZ AKTIENGESELLSCHAFT

Dated:  July 13, 2009

STEVENS & LEE, P.C.
John D. Demmy (DE Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Email: jdd@stevenslee.com

-and-

Leonard P. Goldberger
Marnie E. Simon
(Members PA Bar)
1818 Market Street, 29th Floor
Philadelphia, PA 19103-1702
Telephone:  (215) 751-2864/2885
Telecopier:  (610) 371-7376/8505
Email: lpg@stevenslee.com
Email: mes@stevenslee.com

ATTORNEYS FOR FIREMAN'S FUND
INSURANCE COMPANY, ALLIANZ S.p.A., f/k/a
RIUNIONE ADRIATICA DI SICURTA, AND
ALLIANZ SE, f/k/a ALLIANZ
AKTIENGESELLSCHAFT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. PRELIMINARY STATEMENT ...................................................................................1

II. BACKGROUND ........................................................................................................3

    A. FFIC's Surety Claim Against Grace ....................................................................3

    B. The FFIC/Allianz Insurance Policies...................................................................4

    C. Treatment of The FFIC/Allianz Claims In Connection With the FFIC/Allianz Policies...............................................................................................5

    D. The Trust and The TDPs.......................................................................................7

III. ARGUMENT.............................................................................................................8

    A. The First Amended Plan Does Not Satisfy The Requirements For Confirmation Under Section 1129(a) Of The Bankruptcy Code. ...........................8

        1. The First Amended Plan's Release and Exculpation Provisions Are Impermissibly Broad........................................................................9

        2. The First Amended Plan Does Not Comply With Section 524(g)'s Funding Requirement....................................................................14

        3. The First Amended Plan Provisions Limiting Section 524(g) Protection To Insurers Who Settle Before The End Of The Confirmation Hearing Are Objectionable..................................................15

        4. The First Amended Plan Impermissibly Confers Jurisdiction Over Non-Core Matters To The Bankruptcy Court............................................17

        5. The First Amended Plan Fails to Comply With Other Provisions Required Under Section 1129....................................................17

        6. The First Amended Plan Was Not Proposed In Good Faith As Required By Section 1129(a)(3) Of The Bankruptcy Code.......................18

        7. The Proposed Assignment Of Asbestos Insurance Rights To The Trust Has  No Legitimate Basis And Is Not Being Proposed In Good Faith ..................................................................................22

        8. The First Amended Plan Is Not Being Proposed In Good Faith Because  The First Amended Plan And The Trust Documents Are Subject To Impermissible Conflicts of Interest .........................................23

    B. The Fourth Amended Plan Violates The Anti-Assignment Restrictions In The FFIC/Allianz Policies. ..................................................................................25

    C. The First Amended Plan Cannot Be Confirmed Because It Is Not Fair And Equitable As To FFIC/Allianz And Therefore Does Not Satisfy The Requirements of Section 1129(b) ........................................................................25

IV.   CONCLUSION...............................................................................................................26

# TABLE OF AUTHORITIES

CASES

*In re ACandS, Inc.*,
 311 B.R. 36 (Bankr. D. Del. 2004) .................................................................23, 24

*Amatex Corp. v. Aetna Cas. & Sur. Co.*,
 107 B.R. 856 (E.D.Pa.1989) aff'd, 908 F.2d 961 (3d Cir.1990) ............................17

*In re Ames Dept. Stores, Inc.*,
 1995 WL 311764 (S.D.N.Y. May 18, 1995) ........................................................26

*Beard v. Braunstein*,
 914 F.2d 434 (3d Cir. 1990)..................................................................................17

*In re Burns and Roe Enterprises, Inc., et al.*,
 No. 08-4191 at 49 (D.N.J. filed Feb. 20, 2009) ....................................................21

*Caldwell Trucking PRP Group v. Spalding Composites Co.*,
 890 F. Supp. 1247 (D.N.J. 1995) ..........................................................................22

*Certain Underwriters at Lloyd's, London v. McDermott Int'l Inc.*,
 2002 U.S. Dist. Lexis 874 (E.D.La. 2002)............................................................26

*In re Combustion Engineering, Inc.*,
 391 F.3d 190 (3d Cir. 2004)...............................................................12, 16, 21, 22

*In re Continental Airlines*,
 203 F.3d 203 (3d Cir. 2000)..................................................................................13

*In re Coram Health Care Corporation*,
 271 B.R. 228 (Bankr. D. Del. 2001) ....................................................................19

*In re Coupon Clearing Serv.*, 113 F.3d 1091 (9th Cir. 1997)..........................................14

*In re Federal-Mogul Global, Inc.*,
 Case No. 01-10578 (Bankr. D. Del.) ....................................................................21

*In the Matter of United States Brass Corp.*,
 110 F.3d 1261 (7th Cir. 1997) ..............................................................................17

*In re Mid-Valley, Inc.*,
 305 B.R. 425 (Bankr. W.D. Pa. 2004) ..................................................................19

*Moody v. Amoco Oil Co.*,
 734 F.2d 1200 (7th Cir.), cert denied, 469 U.S. 982 (1984) ..................................14

*In re NII Holdings, Inc.,*
    288 B.R. 356 (Bankr. D. Del. 2002) ....................................................................19

*Sullivan v. Maryland Cas. Co.*
    *(In re Ramex, Int'l, Inc.)*, 91 B.R. 313 (Bankr. E.D. Pa. 1988) ................................17

*In re Western Asbestos*,
    313 B.R. 822 (Bankr. N.D. Cal. 2003) .................................................................16

## STATUTES, RULES & REGULATIONS

11 U.S.C. § 502 ....................................................................................................................18

11 U.S.C. § 524(g)(1)(A) ....................................................................................................15

11 U.S.C. § 524(g)(3) ..........................................................................................................16

11 U.S.C. § 524(g)(4)(a)(ii)(III) .........................................................................................16

11 U.S.C. § 524(g)(2)(B)(i)(II) ...........................................................................................14

11 U.S.C. § 524(g)(4)(B)(ii) ...............................................................................................16

11 U.S.C. §§ 1123(a)(5) ..........................................................................................15, 21, 25

11 U.S.C. § 1129(a)(1) ....................................................................................................8, 11

11 U.S.C. § 1129(a)(3) ..........................................................1, 8, 11, 17, 18, 19, 23, 26

11 U.S.C. § 1129(b) ........................................................................................................25, 26

28 U.S.C. § 157 ....................................................................................................................17

Fed. R. Civ. P. 30(b)(6) ..................................................................................................23, 24

## OTHER AUTHORITIES

43 Am.Jur.2d Insurance § 785 ............................................................................................22

14 Couch on Ins. § 199:13 ..................................................................................................14

## I.    PRELIMINARY STATEMENT[1]

Pursuant to the Third Amended Case Management Order entered on May 5, 2009 [Docket No. 21544] (the "CMO"), FFIC/Allianz[2] submit this brief[3] in connection with the Phase II Confirmation Hearing (this "Phase II Trial Brief").[4]

The First Amended Plan does not satisfy the requirements of section 1129 of the Bankruptcy Code and cannot be confirmed by the Court, as: (i) the release, exculpation and injunction provisions of the First Amended Plan are overly broad and otherwise improper *vis a vis* insurer claims; (ii) the First Amended Plan fails, for a multitude of reasons, to satisfy the good faith requirement of section 1129(a)(3) of the Bankruptcy Code; (iii) the First Amended Plan does not satisfy the requirements of section 524(g) of the Bankruptcy Code; and (iv) the First Amended Plan is proposed by means forbidden by applicable law because confirmation of the First Amended Plan as drafted may violate FFIC/Allianz's contractual rights, by purporting to discharge Debtors' contractual obligations to FFIC/Allianz without any corresponding

---

[1]   Capitalized terms not defined herein refer to those terms as defined in the *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of February 27, 2009* (the "First Amended Plan") and/or in the Disclosure Statement relating to the First Amended Plan (the "Disclosure Statement") in the forms in which such documents appear on the docket as of this date.

[2]   Fireman's Fund Insurance Company ("FFIC"), Allianz S.p.A., f/k/a Riunione Adriatica di Sicurta ("RAS"), Allianz SE, f/k/a Allianz Aktiengesellschaft ("Allianz"), and possibly other related insurance companies (collectively, "FFIC/Allianz")

[3]   On May 20, 2009, FFIC/Allianz filed their *Final Phase I And Non-Surety Claim Related Phase II Objections Of Fireman's Fund Insurance Company, Allianz S.P.A., F/K/A Riunione Adriatica Di Sicurta, And Allianz Se, F/K/A Allianz Aktiengesellschaft To Confirmation Of The First Amended Joint Plan Of Reorganization* (the "Final Objections") [Docket No. 21781].  FFIC/Allianz incorporate their Final Objections herein.

[4]   The Confirmation Hearing in respect of the First Amended Plan was bifurcated into: (x) Phase I, an evidentiary hearing and argument on June 22 and 23, 2009, on "(i) whether the First Amended Plan improperly affects the rights of the Debtors' insurers (in their capacity as insurers, but not creditors); [and] (ii) the standing of the Debtors' insurers (in their capacity as insurers, but not creditors) to litigate confirmation objections that involve issues other than those described in Section (i) ..."  CMO at ¶ 1; and (y) Phase II, scheduled for September 8 through 17, 2009, for all non-Phase I issues.

SL1 934996v1/021630.00003

assumption of such duties by any other party, including the Asbestos PI Trust (hereafter, the "Trust").

In addition, the First Amended Plan proposes to impair FFIC/Allianz's state law coverage rights by assigning Insurance Rights, including rights with respect to the FFIC/Allianz Policies (as defined below), to the Trust and thereafter preventing FFIC/Allianz from litigating in coverage court that the assignment violated the anti-assignment provisions of the FFIC/Allianz Policies and applicable state law.[5]

Perhaps the most alarming aspects of the First Amended Plan are the procedures proposed to process and pay asbestos-related claims for which coverage will be sought from FFIC/Allianz. The Trust, which will have the exclusive right and responsibility to process and pay asbestos-related claims, *will be controlled by representatives of the claimants*. Of course, this arrangement is contrary to the adversarial nature of the non-bankruptcy tort system and creates the obvious potential for conflict, self-dealing, and abuse. The Trust Distribution Procedures ("TDPs") were developed by the ACC and the FCR, with minimal if any input by Grace – the insured under the FFIC/Allianz Policies – for the sole benefit of their asbestos claimant constituencies. The procedures will be controlled by lawyers who represent thousands of the very claimants who will be submitting claims to the Trust. That Debtors surrendered control over the development and future operation of the Trust to asbestos claimants' representatives, who have every incentive to maximize their clients' recoveries, without any

---

[5]  Thus, the Plan Proponents seek to have this Court conclusively determine coverage defenses that otherwise would be available to FFIC/Allianz in coverage litigation absent this bankruptcy case. Pursuant to the assignment of Insurance Rights, the Trust will seek coverage from FFIC/Allianz for any claims processed and paid for which it believes the FFIC/Allianz Policies provide coverage; but FFIC/Allianz will be stripped of their rights to participate in the investigation, defense and settlement of claims, and the Debtors' obligations to cooperate with FFIC/Allianz will have been discharged, contrary to the parties' respective rights and obligations outside of bankruptcy and without any maintenance or assumption of such obligations by any party.

2

participation by anyone with an incentive to minimize recoveries or to weed out illegitimate claims, including insurers who ultimately will be requested to pay, demonstrates that the First Amended Plan was not proposed in good faith.

For these and for all of the following reasons, the First Amended Plan should not be confirmed.

## II.   <u>BACKGROUND</u>

### A. FFIC's Surety Claim Against Grace

FFIC is a creditor of Grace (the "Surety Claim") under a pre-petition "Indemnity Agreement" under which Grace assumed a contractual obligation to indemnify FFIC for any loss FFIC suffered under a supersedeas bond in excess of $43 million (the "Bond"). FFIC issued the Bond in connection with Grace's appeal of a judgment (the "*Edwards* judgment") that five asbestos personal injury claimants obtained against Grace pre-petition. The *Edwards* judgment awarded the claimants compensatory damages totaling $21 million, punitive damages in the amount of $21.5 million, and post-judgment interest at the rate of 12 percent per annum (interest accrued to date on the compensatory damages portion of the judgment amounts to approximately $22 million).[6]

On March 27, 2003, FFIC timely filed its proof of claim asserting an unsecured claim for the full amount of the Bond, $43,038,931.91, which is the maximum amount that Grace could be obligated to pay to FFIC pursuant to the Indemnity Agreement should FFIC incur any loss as a result of furnishing the Bond. The proof of claim also asserts a secured claim based on a $13 million letter of credit provided by Wachovia Bank to secure Grace's obligations to FFIC under the Indemnity Agreement, including the payment of premiums. FFIC has already drawn

---

[6]   The compensatory damage portions of the judgment were awarded jointly and severally against Grace and Pittsburgh Corning Co., which filed for bankruptcy before the appeal.

approximately $1.8 million on the letter of credit due to Grace's failure to pay premiums owed

on the Bond, leaving collateral of $11,204,000 available.  No one has objected to FFIC's proof of

claim, hence the claim is undisputed.

   The Plan Proponents' position is that the Surety Claim is a Class 6 claim that will

be channeled to the Trust upon confirmation of the First Amended Plan.[7]

  **B.  The FFIC/Allianz Insurance Policies**

   During the Phase I Confirmation Hearing, FFIC/Allianz introduced the

FFIC/Allianz excess liability insurance policies (the "FFIC/Allianz Policies") into evidence (by

agreement with Plan Proponents as to authenticity and genuineness for the purposes only of the

Phase I proceedings but subject to the Plan Proponents' "relevance" objection).[8]  The

FFIC/Allianz Policies generally "follow form," except as otherwise noted in the FFIC/Allianz

Policies, to certain underlying insurance policies (the "London Policies"), which also were

introduced into evidence (again, by agreement with Plan Proponents as to authenticity and

genuineness for the purposes only of the Phase I proceedings but subject to the Plan Proponents'

"relevance" objection).  The FFIC/Allianz Policies expressly incorporate certain terms and

conditions of such underlying insurance policies by reference.   Each of the FFIC/Allianz

Policies contains anti-assignment provisions, cooperation provisions, and provisions prohibiting

settlement by the insured without insurer consent.  *See Notice of Service of Amended Hearing*

---

[7] Contemporaneously with the filing of this Phase II Trial Brief, FFIC is filing a separate Surety Bond-related Phase II trial brief entitled *Fireman's Fund Insurance Company's Phase II Trial Brief Relating To Its "Surety Claim."*

[8] The FFIC/Allianz Policies are clearly relevant to the confirmation objections being raised by FFIC/Allianz herein and in their Final Objections as the contract documents set forth the rights and obligations of the parties which will be affected by confirmation of the First Amended Plan.  The Plan Proponents' "relevance" objection, both as to the FFIC/Allianz Policies and the underlying London Policies, goes to their argument that all Phase I issues are legal issues for which no evidence other than the language of the First Amended Plan need be considered.  FFIC/Allianz disagrees with that notion for the reasons set forth above and in FFIC/Allianz's proffer with respect to the FFIC/Allianz Policies and the underlying London Policies.

*Exhibits of FFIC/Allianz With Respect To Phase I Confirmation Hearing Pursuant To Third Amended Case Management Order* for a complete listing of the FFIC/Allianz Policies [Docket No. 22252].[9]

### C. Treatment of The FFIC/Allianz Claims In Connection With the FFIC/Allianz Policies

The First Amended Plan, provides, *inter alia*:

(i) for extremely broad releases and exculpations (*see* First Amended Plan at Article VIII and § 11.9) for a multitude of identifiable and non-identifiable people (who the Plan Proponents refused to identify in their discovery responses)[10] which are overly broad and do not comply with the standards for releases under applicable Third Circuit law;

(ii) for creation of the Trust pursuant to section 524(g) of the Bankruptcy Code, which will have sole authority, with no court oversight and no participation by insurers, to process and pay all present and future Asbestos PI Claims against Debtors, and which will be effectively controlled by lawyers for asbestos personal injury claimants;  and

(iii) assignment of Asbestos Insurance Rights, including such rights associated with the FFIC/Allianz Policies, to the Trust notwithstanding anti-assignment provisions in the FFIC/Allianz Policies, *see* First Amended Plan § 7.2.2.

In short, as to FFIC/Allianz in their capacities as insurers, the First Amended Plan contemplates that the Trust will demand that FFIC/Allianz cover and pay Asbestos PI Claims, at the values arbitrarily established by the TDPs (or as such values may hereafter be adjusted by the Trust in its absolute and unfettered discretion, *see* Docket No. 20874, Exs. 2 Asbestos PI Trust Agreement (the "Trust Agreement") and 4 (TDPs)).

---

[9]    The FFIC/Allianz Policies are also listed on Exhibit 6 to the First Amended Plan [Docket No. 20874 Ex. 6, Sch. 1].

[10]    *See* FFIC/Allianz Exhibits 34-36, Response to Interrogatory No. 21.

5

Significantly, and contrary to FFIC/Allianz's rights under the FFIC/Allianz Policies, upon confirmation of the First Amended Plan the Trust purportedly will be entitled to seek coverage from FFIC/Allianz without honoring FFIC/Allianz's corresponding contractual right to participate in the defense of, or in the processing and payment of the claims as contemplated by the TDPs, and without even being made aware of the basis on which the claim was asserted against the Trust. *See* TDP at § 6.5.  This is because FFIC/Allianz's understanding of the First Amended Plan is that confirmation will discharge Debtors from their obligations under the FFIC/Allianz Policies ("Debtors' Contractual Obligations") and also enjoin any attempt by FFIC/Allianz to assert its contractual rights ("Contractual Rights").  The Plan Proponents suggest that such may not be the effect of the First Amended Plan but nowhere in the Plan Documents does it state affirmatively that Debtors are maintaining Debtors' Contractual Obligations or that the Trust is assuming such obligations or that FFIC/Allianz will not be subject to the injunction against attempting to enforce their Contractual Rights.

Moreover, the people administering the Trust (the Trustees and the TAC) and processing and paying claims under the TDPs are the very lawyers for many of the asbestos claimants seeking payment from the Trust.  Of course, those lawyers have every economic incentive to maximize recoveries to their (and their colleagues') Asbestos PI Claimant-clients, at the expense of FFIC/Allianz.  Certainly, the Contractual Rights enjoyed by FFIC/Allianz under the FFIC/Allianz Policies – the right to insist that the insured fulfill its contractual duty to cooperate, the identity of interest between Debtors and their insurers, the insurers' right to associate in the defense of claims, and so on – will be impaired by confirmation of the First Amended Plan.  These Contractual Rights will be replaced by a system that has as its primary

6

function rapid processing and payment – not the strict investigation, evaluation, review and defense – of Asbestos PI Claims.

Of course, in the tort system, Debtors and their insurers were on the same side of the adversarial process, allied against asbestos claimants and their lawyers. The First Amended Plan will overturn this in a manner not contemplated by, and contrary to, the terms of the Policies. Upon confirmation, asbestos claimants and their lawyers will effectively control the processing and payment of their own asbestos-related claims, without any provision in the TDPs expressly authorizing participation by FFIC/Allianz, and in the face of the Trust's "exclusive" right o process and pay claims. *See, e.g.*, First Amended Plan §§ 3.1.6, 5.2; Trust Agreement §§ 1.2, 2.1; and TDP §§ 2.2, 5.1, 5.10, 5.11. Afterward, the Trust will present a bill to FFIC/Allianz and demand payment. The way the First Amended Plan, the Trust Agreement and the TDPs are written make it clear that neither the Reorganized Debtors, the Trust, nor anyone else has any duty to cooperate with FFIC/Allianz or otherwise comply with the FFIC/Allianz Policies in respect of any Asbestos PI Claims that may be tendered to FFIC/Allianz.[11]

### D. The Trust and The TDPs

Any discussion of the terms of the TDPs must be underscored by the fact that, under the Plan, the Trustee and the fiduciaries for Asbestos PI Claimants – the TAC made up of claimants' lawyers and the FCR – would purportedly have unfettered discretion to change anything about the Trust or the TDPs that they wish at any time after confirmation without any approval from anyone else, including either the Bankruptcy Court or the District Court. *See* Trust Agreement, § 2.2(f); TDPs § 5.3(a)(3). With respect to (i) lax medical and evidentiary

---

[11] Also, the Trust, dominated by asbestos claimant's lawyers, will, in effect, have authority over any settlement of coverage issues with FFIC/Allianz (*see* Trust Agreement § 2.2 (f)(viii)), a situation that simply does not exist outside of bankruptcy. In effect, the Trust and the TDPs truly create a situation in which the "fox is guarding the hen house," and represents a world turned upside down, at the expense of FFIC/Allianz.

7

requirements, *see* TDPs pages 23-40, (ii) compromised connectivity standards, *see* pages 40-43, (iii) elimination of meritorious defenses, *see* pages 20-23, and (iv) the TDPs providing no assurances that asbestos claimants will be limited to one satisfaction, the Trust and the TDPs as proposed amply demonstrate that the Trust structure in respect of the determination of Grace's liability for asbestos claims will result in harm to FFIC/Allianz.

Once claims have been processed and paid as contemplated by the Trust, with all the deviations from applicable non-bankruptcy law as outlined above, the Trust will present a bill to FFIC/Allianz. However, as of such time, FFIC/Allianz's Contractual Rights under the FFIC/Allianz Policies and applicable non-bankruptcy law will have been impaired or ignored, and FFIC/Allianz will have lost important coverage defenses that they had prior to confirmation. They will have been injured in fact.

## III.    ARGUMENT

### A. The First Amended Plan Does Not Satisfy The Requirements For Confirmation Under Section 1129(a) Of The Bankruptcy Code.

"The Court shall confirm a plan only if all of the following requirements are met: (1) The plan complies with the applicable provisions of this title. . . . [and] (3) The plan has been proposed in good faith and not by any means forbidden by law. . . ." 11 U.S.C. § 1129(a)(1) and (3). The First Amended Plan cannot be confirmed pursuant to section 1129(a) because, among other reasons, its (i) release and exculpation provisions are too broad, (ii) section 524(g) funding requirements are inadequate and illusory, and (iii) artificial timing restrictions on obtaining section 524(g) protection usurp the District Court's power.

SL1 934996v1/021630.00003

1. <u>The First Amended Plan's Release and Exculpation Provisions Are Impermissibly Broad</u>

Section 11.9 of the First Amended Plan purports to exculpate not only the Debtors but also a host of non-debtors from liability to third parties such as FFIC/Allianz and the other insurers:

> None of the Reorganized Debtors, the Debtors, the Non-Debtor Affiliates, the Sealed Air Indemnified Parties, the Fresenius Indemnified Parties, the Asbestos PI Trustees of the Asbestos PI Trust, the Asbestos PI Trust Advisory Committee, the Asbestos PD Trustees of the Asbestos PD Trust, the Asbestos PD Trust Advisory Committee, Asbestos PI Committee, the Asbestos PD Committee, the Unsecured Creditors' Committee, the Equity Committee, the Asbestos PI FCR, the Asbestos PD FCR, or any of their respective Representatives are to have or incur any liability to any Entity for any act or omission in connection with or arising out of the Chapter 11 Cases, including the negotiation of this Plan or the settlements provided in the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement, the pursuit of confirmation of this Plan, the consummation of this Plan or the settlements provided in the Sealed Air Settlement Agreement or Fresenius Settlement Agreement, or the administration of this Plan or the property to be distributed under this Plan so long as, in each case such action, or failure to act, did not constitute gross negligence or willful misconduct. In all respects, they will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence or willful misconduct. This section is not intended to preclude a governmental entity from enforcing its police and regulatory powers.

Section 8.8.7 of the First Amended Plan, the Creditor Release provision, purports to release numerous third parties, and their agents and Representatives, from all liability having anything to do with the Debtors, thus releasing these third parties from their conduct going back decades:

> Without limiting any other provisions of this Plan, each Holder of a Claim or Equity Interest who votes in favor of this Plan shall be deemed to unconditionally have released the Asbestos Protected Parties, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Equity Committee, Asbestos PI FCR, and the Asbestos PD FCR, and each such party's Representatives, as of the

9

Effective Date, from any and all claims, SA Claims, SA Damages, obligations, rights, suits, judgments, damages, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, that such Holder would have been legally entitled to assert in its own right (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, their operations on or before the Effective Date, their respective property, the Chapter 11 Cases, or the negotiation, formulation, and preparation of this Plan or any related agreements, instruments, or other documents. In addition to the foregoing, each Holder of a Claim or Equity Interest who receives or retains any property under this Plan shall also be deemed to unconditionally release the Fresenius Indemnified Parties to the same extent as the release in the preceding sentence. This section is not intended to preclude a Governmental Unit from enforcing its police and regulatory powers.

Section 8.8.8 is yet another provision releasing numerous claims against non-debtor third parties.  It states that:

Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Debtor, in its individual capacity and as a debtor-in-possession for and on behalf of its estate and its Affiliates, and the Reorganized Debtors on their own behalf and as representatives of their respective estates and their Affiliates, and their respective successors, assigns and any and all Entities who may purport to claim by, through, for or because of them, are hereby deemed to release and waive conclusively, absolutely, unconditionally, irrevocably, and forever each and all of the Debtors' and their Non-Debtor Affiliates' Representatives and their respective properties (the "Released Parties"), from any and all claims, obligations, rights, suits, damages, remedies, liabilities, or causes of action in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the Debtors' property, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and the Disclosure Statement, or related agreements, instruments, or other documents, involving any act, omission, transaction, agreement, occurrence, or event taking place on or before the Effective Date, other than any act or

10

> omission of a Released Party that constitutes willful misconduct. Any act
> or omission taken with the approval of the Bankruptcy Court will
> be conclusively deemed not to constitute willful misconduct.

The First Amended Plan does not satisfy the confirmation requirements of sections 1129(a)(1) and (3) of the Bankruptcy Code to the extent that it contains third-party releases and exculpation provisions that are overly broad with respect to both the entities being released and claims being released. *See* First Amended Plan at §§ 11.9, 8.8.7, 8.8.8, *supra*. This includes, without limitation, the First Amended Plan's broad definition of Asbestos Protected Parties and their Representatives, *see* §§ 8.8.7, 1.160, which makes it impossible to know exactly who is covered by the Asbestos PI Channeling Injunction.[12] The time period for which the First Amended Plan provides releases and exculpations reaches back years before this Court ever had any relationship to this case, and seeks to extend such releases and exculpations for years after confirmation. Finally, the First Amended Plan provides for releases and exculpations to numerous categories of lawyers including a host of plaintiff lawyers which is contrary to public policy and professional ethical norms because in releasing all lawyers involved in years of unsupervised negotiations, indeed all lawyers involved in any aspect of the Chapter 11 case, the release and exculpation provisions may operate as a waiver agreement, and even worse, in this case the asbestos claimant-clients may not even be aware of the rights they may be waiving away. Section 11.9, for example, would operate to prevent clients from suing their lawyers under a variety of legal theories.

---

[12] In addition to Asbestos Protected Parties, the release and exculpation provisions cover other non-debtor parties, some of whom, but not all of whom, are listed as follows: Asbestos Insurance Entities and their Representatives, *see* §§ 8.8.7, 1.160, Reorganized Debtors, *see* §§ 11.9, 1.157, various Non-Debtor Affiliates, *see* §§ 1.160, 1.136, Sealed Air Corporation, *see* §§ 11.9, 1.177, Cryovac, Inc., *see* §§ 11.9, 1.177, Fresenius, *see* §§ 11.9, 1.106, the Asbestos PI Trustees, *see* §§ 11.9, 1.137, 1.138, 8.8.7, the TAC, *see* §§ 11.9, 1.193, the Asbestos PI Committee, *see* §§ 11.9, 1.34, 8.8.7, the FCR, *see* §§ 11.9, 1.35, 1.36, 8.8.7.

The Third Circuit has established strict limitations for the approval of third-party releases in asbestos bankruptcies under section 524(g):  "As both the plain language of the statute and its legislative history make clear, section 524(g) provides no specific authority to extend a channeling injunction to include third party actions against non-debtors where the liability alleged is not derivative of the debtor."  *In re Combustion Engineering, Inc*., 391 F.3d 190, 228 (3d Cir. 2004).  The non-debtor releases and exculpations in the First Amended Plan do not fall within the narrow definition of section 524(g) as expounded in *Combustion Engineering*.  The non-debtors must be "alleged to be directly or indirectly liable for the conduct of, claims against, [or] demands on the debtor" for the third-party releases under section 524(g).  *Id.*  Yet the First Amended Plan's broad non-debtor third party releases, injunctions, and exculpation provisions go way beyond anything that is authorized by section 524(g), releasing claims against third parties for pre-petition and post-petition conduct having nothing to do with the Debtors' liability.

For the reasons stated by the Third Circuit in *Combustion Engineering*, because section 524(g) is the only Bankruptcy Code provision that explicitly provides for third-party non-debtor releases, it is the only appropriate vehicle for third party non-debtor relief in asbestos bankruptcy cases.  In *Combustion Engineering*, the Third Circuit made clear that in asbestos cases, a bankruptcy court may not approve a third-party release that falls outside section 524(g)'s parameters.  *Id*. at 236-37 ("Because § 524(g) expressly contemplates the inclusion of third parties' liability within the scope of the channeling injunction – and sets out the specific requirements that must be met in order to permit inclusion – the general powers of § 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g).").

12

Even if section 524(g) did not establish the outer boundary for third-party injunctions in asbestos cases, which it clearly does, the proposed releases would still exceed the scope permitted in this Circuit.  In non-asbestos cases, the Third Circuit has limited the scope and permissibility of third-party non-debtor exculpations to situations that are, at the very least, rare.  Indeed, the Third Circuit has held out the possibility that they may never be acceptable. *See In re Continental Airlines*, 203 F.3d 203, 217 (3d Cir. 2000).

Should a coverage action result in a finding that the agreements, arrangements or other actions taken pre- or post-petition were the product of bad faith or collusion, FFIC/Allianz will have claims against a variety of third parties who purport to be covered by the broad release and exculpation provisions in the Plan.  Likewise, to the extent that any non-debtor parties submitted (or caused to be submitted) invalid claims for payment, FFIC/Allianz will have claims against those parties.  The same is true about the presentation of false or misleading claims in the future.  In cases where an insurer discovers that there has been collusion, misrepresentations, or other misconduct in the presentation of claims, it is well recognized that the law provides for a number of statutory and common law remedies against all involved.  The First Amended Plan wrongly strips FFIC/Allianz of the ability to assert such potential claims against non-debtors.

Separate and apart from the non-consensual release and exculpation of non-debtors, the Plan Proponents also seek an injunction that purports to cut off the contractual and common law rights of contribution, subrogation and indemnity that FFIC/Allianz and other insurers hold against other non-debtor insurers.  The injunction provisions impair FFIC/Allianz's Contractual Rights including, without limitation, any (i) rights of subrogation, contribution, recoupment and setoff; (ii) rights to require the insured to pay any retrospective premiums,

13

deductibles and self-insured retentions; and (iii) rights to enforce performance of Debtors'

Contractual Obligations.  *See* First Amended Plan §§ 7.15(h), (i), 8.2.1, 11.9.[13]

The "remedy" provided in section 7.15(i) for otherwise enforceable Contribution

Claims against non-debtor entities, including Settled Asbestos Insurance Companies, leaves a

non-settling Asbestos Insurance Entity, such as FFIC/Allianz, without the same set of rights that

it would have had absent the impairments arising solely as a result of the First Amended Plan

being confirmed.  *See* First Amended Plan §§ 7.15(i) and 8.2.1.  Enjoining FFIC/Allianz's

Contribution Claims, along with its other potential claims, impairs its non-bankruptcy law rights

against the non-debtor entities.

2.  The First Amended Plan Does Not Comply With Section 524(g)'s Funding Requirement

Section 524(g)(2)(B)(i)(II) requires that an asbestos personal injury trust "be

funded in whole or in part by the ***securities of 1 or more of the debtors*** . . . ."  (Emphasis added.)

Under the First Amended Plan, Debtors are contributing the Warrants to the Trust.  *See* First

Amended Plan § 7.1.4.  The Warrants are not "securities" because they are not available to the

Asbestos PI Trust for immediate funding and are not items held or traded for investment

purposes or for a profit stream.  Moreover, FFIC/Allianz submits that the Warrants have no

current value and have no certainty of attaining any value after confirmation of the First

Amended Plan.  Thus, the granting of the Warrants to the Trust is illusory with respect to

conformity with section 524(g)(2)(B)(i)(II) of the Bankruptcy Code.

---

[13]  A bankruptcy court cannot alter or enlarge an insurer's contractual obligations.  *See Coupon Clearing Serv.*, 113 F.3d 1091, 1099 (9th Cir. 1997) ("the estate ha[s] no greater rights in property than those held by the debtor prior to bankruptcy"); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir.), cert denied, 469 U.S. 982 (1984) (the Bankruptcy Code is not intended to expand debtor's rights against others more than they exist at the commencement of the case).  Moreover, as a matter of applicable non-bankruptcy law, the abrogation of FFIC's Contractual Rights may excuse FFIC from any obligations to provide otherwise allegedly applicable coverage for Asbestos PI Claims.  *See* 14 Couch on Ins. § 199:13 (2003).

3.  <u>The First Amended Plan Provisions Limiting Section 524(g) Protection To
    Insurers Who Settle Before The End Of The Confirmation Hearing Are
    Objectionable</u>

The First Amended Plan violates section 524(g) because it improperly purports to

usurp the District Court's power by seeking to impose artificial timing restrictions on obtaining

section 524(g) protection solely as a means of securing a litigation advantage for Plan

Proponents.  The First Amended Plan makes clear that a non-settling insurer that enters into a

post-confirmation settlement agreement cannot obtain the benefits of the Asbestos PI Channeling

Injunction.[14]  These artificial timing restrictions violate section 1129(a)(1) because they fail to

comply with the requirements contained in section 524(g) of the Bankruptcy Code.

Section 524(g) sets forth the requirements for issuance of a 524(g) channeling

injunction.[15]  One is that a third party must qualify under section 524(g)(4)(A)(ii) as having the

kind of connection with the debtor that justifies section 524(g) relief.  Every one of Debtors'

insurers indisputably meets this requirement.[16]  Another such requirement is that "the ***court***

determines," before entering the confirmation order, that identifying the third party (by name or

as part of an identifiable group) in such injunction "is fair and equitable with respect to" potential

future asbestos claimants who would be subject to the injunction, "in light of the benefits

---

[14]  Section 8.2.1 of the First Amended Plan channels Asbestos PI Claims away from "Debtors,
     Reorganized Debtors, and any other Asbestos Protected Party . . . ."  Definition 50(d) of the First
     Amended Plan includes "Settled Asbestos Insurance Company" as an Asbestos Protected Party.
     Definition 200 of the First Amended Plan defines "Settled Asbestos Insurance Company" to mean
     "any Asbestos Insurance Entity that has entered into an Asbestos Insurance Settlement Agreement
     *prior to the conclusion of the Confirmation Hearing . . .*"  (Emphasis added).

[15]  "To achieve this relief [provided by § 524(g)], a debtor must satisfy the perquisites set forth in §
     524(g) in addition to the standard plan confirmation requirements."  *Combustion Engineering,* 391
     F.3d at 234.

[16]  *See* 11 U.S.C. § 524(g)(4)(a)(ii)(III) (authorizing issuance of a supplemental channeling injunction in
     favor of any third party whose alleged liability arises from "the third party's provision of insurance to
     the debtor or a related party").

provided, or to be provided, to such trust on behalf of . . . such third party."[17]  If these two

requirements are satisfied, and if the First Amended Plan meets the other requirements of

sections 1129(a) and 524(g), then a settling insure, even one that does so post-confirmation, can

and should be entitled to protection under the supplemental injunction issued pursuant to section

524(g).[18]

Where a plan of reorganization is otherwise confirmable under Chapter 11 and,

further, meets the various requirements of section 524(g), the district court "may issue . . . an

injunction in accordance with this subsection to supplement the injunctive effect of a discharge

under this section." 11 U.S.C. § 524(g)(1)(A).   Under section 524(g), it is the District Court

that must issue or affirm the injunction.  Nowhere, however, does section 524(g) purport to allow

Plan Proponents to impose any restriction, timing-related or otherwise, on the District Court's

power to find that an insurer has made a "fair and equitable" contribution to the Trust justifying

the extension of the Asbestos PI Channeling Injunction to such insurer.  Indeed, section 524(g)

plans and confirmation orders regularly acknowledge that the district court's power to provide

insurers with the protection of a supplemental channeling injunction is not time-limited.  Thus,

the First Amended Plan's artificial time-restriction as to current unsettled insurers obtaining the

---

[17]  11 U.S.C. § 524(g)(4)(B)(ii) (emphasis added).  Similarly, section 524(g)(1) states that "*a court* that enters an order confirming a plan of reorganization under chapter 11 may issue" a supplemental injunction under section 524(g).  (Emphasis added.)  It is clear from the statute that these references to "court" are to the District Court, not this Bankruptcy Court.  *See* 11 U.S.C. § 524(g)(3) (the channeling injunction is valid only if the confirmation order is "issued or affirmed by the district court that has jurisdiction over the reorganization case").

[18]  *See In re Western Asbestos*, 313 B.R. 822, 855 (Bankr. N.D. Cal. 2003) ("While an injunction is an equitable remedy, in this instance, the equities are built into [§ 524(g)].  If those equities are satisfied, the Court does not believe that it has the discretion to limit the effect of the supplemental injunction to something less than that permitted by statute").

SL1 934996v1/021630.00003

benefits of the Asbestos PI Channeling Injunction are impermissible under sections 524(g) and 1129(a)(1) of the Bankruptcy Code. [19]

> 4.  The First Amended Plan Impermissibly Confers Jurisdiction Over Non-Core Matters To The Bankruptcy Court

The First Amended Plan does not satisfy section 1129(a)(3) to the extent that it attempts to confer jurisdiction, contrary to 28 U.S.C. § 157, over non-core matters, such as insurance coverage disputes or other adjudication of FFIC/Allianz's rights and obligations under the FFIC/Allianz Policies, upon the Bankruptcy Court.  This includes, without limitation, any possible adjudication of FFIC/Allianz's rights against any affiliate, released party, or any other non-debtor third party.[20]

> 5.  The First Amended Plan Fails to Comply With Other Provisions Required Under Section 1129

The First Amended Plan does not satisfy section 1129(a)(4) because the compensation to be provided to the members of the TAC by the Trust is not set forth in the First Amended Plan or in any of the First Amended Plan Documents.

---

[19]  FFIC/Allianz notes that in other asbestos cases before this Court, including Federal-Mogul Global, Inc., Case No. 01-10578 (JKF), plans have allowed settling insurers to obtain the benefits of the channeling injunction under section 524(g) after confirmation of a plan.

[20]  To the extent that the First Amended Plan contemplates that proceeds of the FFIC/Allianz Policies will be a source for payment of Asbestos PI Claims, neither the First Amended Plan nor the Confirmation Order may adjudicate the existence or extent of insurance coverage under the FFIC/Allianz Policies, rights to payments under the FFIC/Allianz Policies or coverage for any particular Asbestos PI Claim. *See Beard v. Braunstein*, 914 F.2d 434, 445 (3d Cir. 1990) (holding that an action "involving pre-petition contracts, allegedly breached both before and after the filing of a petition, is entirely a non-core matter"); *see Amatex Corp. v. Aetna Cas. & Sur. Co.*, 107 B.R. 856, 863 (E.D.Pa.1989) (determining that an adversary proceeding seeking declaratory relief concerning insurance coverage for asbestos-related claims is a non-core matter) aff'd, 908 F.2d 961 (3d Cir.1990); *Sullivan v. Maryland Cas. Co. (In re Ramex, Int'l, Inc.)*, 91 B.R. 313, 315 (Bankr. E.D. Pa. 1988) (stating that a "cause of action for declaratory judgment under a policy of insurance issued to the debtor pre-petition is not a core proceeding"); *In the Matter of United States Brass Corp.*, 110 F.3d 1261, 1268-9 (7th Cir. 1997) (holding that an action between a debtor and its insurer to resolve a coverage dispute is non-core).

The First Amended Plan does not satisfy section 1129(a)(5)(A)(ii) in that the TAC is in a position to effectively control the Trust, which is a successor to Debtors with respect to Asbestos Insurance Rights, and the appointment of the members of the TAC is not consistent with the interests of creditors or with public policy.

The First Amended Plan violates section 502(a) of the Bankruptcy Code by divesting FFIC/Allianz of their statutory right to object to claims.  Indeed, section 502(a) provides that any party in interest may object to a claim; however, the First Amended Plan deprives insurers of that right with respect to asbestos claims in contravention of the express provisions of the Bankruptcy Code.  The TDPs would also grant to the Trust the exclusive authority to allow claims in violation of section 502(b) of the Bankruptcy Code, which provides that *the Court* shall, after notice and a hearing, determine the amount of each lawful claim to which a party in interest objects.  Neither the First Amended Plan nor the TDPs provide the Court with any role whatsoever in the claims resolution process.  Thus, although the TDPs does not use the word, it is clear that the Trust will be "allowing" and, thereafter liquidating, disputed claims without notice and a hearing in violation of section 502(b).[21]

6.  <u>The First Amended Plan Was Not Proposed In Good Faith As Required By Section 1129(a)(3) Of The Bankruptcy Code</u>

The First Amended Plan is not confirmable because it is not being proposed in good faith.  A chapter 11 plan must be proposed in good faith and not by any means forbidden by

---

[21]  Providing the Trust with the *exclusive* authority to object to and resolve disputed claims after the Effective Date -- without requiring the approval of FFIC/Allianz -- violates Debtors' ongoing duty of cooperation with respect to claims tendered for coverage under the FFIC/Allianz Policies.  Further, FFIC/Allianz may demand that Debtors comply with their Contractual Obligations by objecting to, and seeking the disallowance of, unmeritorious Asbestos PI Claims.  To the extent that Debtors and/or the Trustees either fail to do so, or are released from the obligation to do so by the terms of the First Amended Plan, it would constitute a further violation of the duty of cooperation.

18

law.  11 U.S.C. § 1129(a)(3).  The First Amended Plan was not proposed in good faith and relies

on means forbidden by law, in that:

> (i)  the contemplated operation of the Trust is fraught with inherent and
irreconcilable conflicts of interest; and

> (ii)  it is proposed by means forbidden by law insofar as it purports to re-
write the FFIC/Allianz Policies by abrogating FFIC/Allianz's Contractual Rights and releasing

Debtors' performance of reciprocal Contractual Obligations.

The good faith requirement embodied in section 1129(a)(3) was summarized by

Judge Walrath in *In re Coram Health Care Corporation*, 271 B.R. 228 (Bankr. D. Del. 2001), as

follows:

> The good faith standard requires that the plan be proposed with
> honesty, good intentions and a basis for expecting that a
> reorganization can be effective with results consistent with the
> objectives and purposes of the Bankruptcy Code. . . . In evaluating
> the totality of circumstances surrounding a plan a court has
> considerable judicial discretion in finding good faith, with the most
> important feature being an inquiry into the fundamental fairness of
> the plan.

*Coram,* 271 B.R. at 234 (internal quotations omitted).

Under this standard, the Court must examine the totality of the circumstances

surrounding a plan of reorganization to assess whether it is fundamentally fair.  *In re NII*

*Holdings, Inc.,* 288 B.R. 356 (Bankr. D. Del. 2002)(examining the totality of the circumstances

to determine whether the plan was proposed in good faith under section 1129(a)(3)).

First, the First Amended Plan contemplates assignment of the FFIC/Allianz

Policies to the Trust in contravention of the express terms of the FFIC/Allianz Policies

themselves and applicable state law.  The proposed assignment of the Asbestos Insurance Rights

is certainly not necessary to the effectuation of the First Amended Plan.  There is nothing in the

19

Bankruptcy Code, including without limitation, section 524(g), that requires the assignment of insurance to the Trust, and this Court has confirmed a section 524(g) plan that did not include any such assignment.[22]  Rather, the proposed assignment, again contrary to the express terms of the FFIC/Allianz Policies and applicable law, coupled with the discharge of Debtors' obligations and the lack of any assumption of such obligations by the Trust, is designed simply to impair FFIC/Allianz's Contractual Rights.

Second, the First Amended Plan and related Trust documents were developed by the FCR and ACC for the benefit of their constituencies, are rife with inherent conflicts of interest, and are, in effect, designed to prejudice insurers including FFIC/Allianz.

Third, the Trust and the TDPs represent a complete abandonment by Debtors to asbestos claimants of the process by which Asbestos PI Claims will be processed and paid, again, with insurers left to face the consequences.  Debtors' own statements demonstrate that the First Amended Plan is not proposed in good faith with respect to the proposed treatment of Asbestos PI Claims, as the terms of the Trust Agreement and the TDPs are such that non-meritorious – or possibly even fraudulent – Asbestos PI Claims will be allowed and paid as a result of confirmation of the First Amended Plan and implementation of the TDPs.[23]

---

[22]    *See In re Mid-Valley, Inc.*, 305 B.R. 425, 427-429 (Bankr. W.D. Pa. 2004).

[23]    In their original disclosure statement filed on November 13, 2004 [Docket No. 6896] (the "First Disclosure Statement"), Debtors stated:

> In the Debtors' view, only a small portion of the Asbestos PI Claims
> allege even a prima facie case of any functional impairment attributable
> to exposure to the Debtors' products.

First Disclosure Statement § 2.4.1.  As recently as March 2008, Debtors' position was that their aggregate liability for present and future Asbestos PI Claims was between $385 million and $1.314 billion, with a median value of $712 million.  *See* Debtors' Expert Report by B. Thomas Florence, Ph.D., dated June 18, 2007, at p. 3 [Docket No. 16116].  Yet, in April 2008, Debtors did an about-face, agreeing, without insurer involvement or consent, to spend over $2 billion in payment of Asbestos PI Claims.  *See* First Amended Plan  §§ 1.1.40 and 7.2.2.   In addition to violating the good faith requirements of the Bankruptcy Code, Debtors' voluntary acceptance of such substantial asbestos liability has a direct and adverse impact on FFIC/Allianz's Contractual Rights, which is belied by

SL1 934996v1/021630.00003

Finally, the First Amended Plan, despite the language contained in section 7.15, is decidedly not "insurance neutral."  If it was Debtors' goal to truly make the First Amended Plan neutral as to insurers generally, or specifically with respect to FFIC/Allianz, it could have been done.  FFIC/Allianz submit that, as has been done in other asbestos-related bankruptcy cases, the First Amended Plan could be written such that the FFIC/Allianz Policies could "pass through" the bankruptcy unaffected by confirmation of the First Amended Plan, with FFIC/Allianz's Contractual Rights and Debtors' Contractual Obligations remaining entirely unaffected post-confirmation in the event any asbestos-related claims relating to the FFIC/Allianz Policies materialize.[24]  *See In re Burns and Roe Enterprises, Inc., et al*., No. 08-4191 at 49 (D.N.J. filed Feb. 20, 2009) (pursuant to the plan and 11 U.S.C. §§ 1123(a)(5)(A) and 1141(b), FFIC's policies were not assigned to the 524(g) trust, but rather "passed through" through the bankruptcy case unaffected by confirmation of the plan).  That Debtors have not chosen this route, and instead have misleadingly characterized the First Amended Plan as "insurance neutral" while at the same time seeking to significantly and irreversibly impair FFIC/Allianz's Contractual Rights, including their right to argue in subsequent coverage litigation that the assignment of the FFIC/Allianz Policies vitiates coverage, is a clear indication of the lack of good faith.  When these considerations are considered in the aggregate, the only conclusion that can be drawn is that the First Amended Plan fails to satisfy the good faith standard because it is designed to impair FFIC/Allianz's Contractual Rights.

---

characterizing the First Amended Plan as "insurance neutral."

[24]  Moreover, even if a plan could be made truly insurance neutral in the absence of a complete pass through arrangement, section 7.15 of the First Amended Plan is woefully short of the neutrality provisions that have been included in other recent asbestos-related plans, *see, e.g.*, *In re Federal-Mogul Global, Inc.,* Case No. 01-10578 (Bankr. D. Del.) and also does not provide as much protection as was provided by the neutrality language considered by the Third Circuit in *Combustion Engineering*.

21

7.  The Proposed Assignment Of Asbestos Insurance Rights To The Trust Has
No Legitimate Basis And Is Not Being Proposed In Good Faith

It is axiomatic that bankruptcy does not expand or otherwise alter a debtor's right or interest in an asset of the estate.   Upon bankruptcy, Debtors' rights (if any) under the FFIC/Allianz Policies were limited by the terms and conditions thereof, including anti-assignment provisions.  Debtors' non-assignable interest in the FFIC/Allianz Policies did not become an assignable interest merely by becoming property of the estate.  Rather, as the Third Circuit stated in *Combustion Engineering*, "[t]o the extent such an interest [transferred to the estate] is limited in the hands of the debtor, it is equally limited in the hands of the estate."   391 F.3d at 219.  Accordingly, Debtors' rights under the FFIC/Allianz Policies are limited by the anti-assignment provisions thereof.

Enforcement of anti-assignment clauses in insurance policies is crucial to maintaining the fundamental bargain between the insurer and policyholder.[25]  The First Amended Plan, however, contemplates that Debtors and other Insurance Contributors will assign their Asbestos Insurance Rights under the FFIC/Allianz Policies to the Trust notwithstanding anti-assignment provisions in the FFIC/Allianz Policies.  *See* First Amended Plan § 7.2.2.  The FFIC/Allianz Policies are not subject to assignment without FFIC/Allianz's express consent, which has neither been sought from nor given by FFIC/Allianz.

As noted above, the viability of the First Amended Plan does not depend upon assignment of the FFIC/Allianz Policies and there is no practical or legal basis for the proposed assignment of the FFIC/Allianz Policies to the Trust.  Thus, FFIC/Allianz's involuntary

---

[25]   *See* 43 Am.Jur.2d Insurance § 785; *Caldwell Trucking PRP Group v. Spalding Composites Co.*, 890 F. Supp. 1247, 1260-61 (D.N.J. 1995) (holding that assignment of insurance rights would violate the "essence of the contract" because, *inter alia*, it would create an economic incentive for policyholders to maximize insurance pay-out, which is inconsistent with policyholder's obligation to cooperate in its own defense).  Moreover, breach of the anti-assignment clause will vitiate an insurer's further obligations to provide coverage under the policy.  *See* 43 Am.Jur.2d Insurance § 785.

involvement in this case through, *inter alia*, the proposed assignment of the FFIC/Allianz

Policies lacks the type of fundamental fairness, with respect to FFIC/Allianz, that courts must

find when concluding that a plan was proposed in good faith.

       8.   The First Amended Plan Is Not Being Proposed In Good Faith Because
            The First Amended Plan And The Trust Documents Are Subject To
            Impermissible Conflicts of Interest

FFIC/Allianz believe that Debtors colluded with the ACC by delegating the

drafting of the Trust Agreement and TDP to the ACC in exchange for the agreement to approve

Debtors' *de minimis* equity contributions to fund the First Amended Plan.  Indeed, if confirmed,

the First Amended Plan will provide Debtors with a complete discharge from all current and

future asbestos claims and liabilities in exchange for Warrants that may or may not provide

equity to the Trust one year after the Effective Date.  At the end of the day, Debtors keep their

company.

The deposition of the ACC's rule 30(b)(6) witness confirms that the Asbestos PI

Claimants were permitted to develop and draft the Trust Agreement and TDPs and allowed to

have significant input into the development of the First Amended Plan.  A conclusion that one

could draw is that Debtors' wholesale delegation to the Asbestos PI Claimants was in exchange

for an agreement that Debtor's equity contribution to the Trust could be exceedingly modest.  In

light of the manner in which the ACC dominated the development and drafting of the TDPs and

Trust Agreement, the First Amended Plan was not proposed in good faith, and is subject to

impermissible conflicts of interest arising from Debtors' abdication of their duty to treat

FFIC/Allianz fairly in exchange for a "free pass."

The court in *In re ACandS, Inc.*, 311 B.R. 36 (Bankr. D. Del. 2004), refused to

confirm a plan, on the basis of lack of good faith under section 1129(a)(3), where the Chapter 11

debtor was are either controlled by, or colluded with, asbestos claimants in the formation of the

plan.  In *ACandS*, the court denied confirmation of the debtors' Chapter 11 plan because, *inter alia,* the asbestos claimants dominated the debtor and effectively controlled the drafting of the Chapter 11 plan.  In *ACandS*, the debtor entered into pre-petition negotiations with a "pre-petition asbestos plaintiffs' committee" in an effort to arrange a pre-packaged bankruptcy. The court observed that although the debtor was represented during the course of those negotiations, the correspondence among the plaintiffs' asbestos counsel that was presented during the confirmation hearing demonstrated that the plan was drafted by, and for the benefit of, the asbestos claimants.  The court also observed that the committee drafted the pre-petition trust, elected the trustee for the trust, and determined the payments that were to be paid to claimants. In light of these considerations, the court concluded that the plan was not confirmable because it was not proposed in good faith under section 1129(a)(3):

> Given the unbridled dominance of the committee in the debtor's affairs and actions during the prepetition period . . . and the obvious self-dealing that resulted from control of the debtor, it is impossible to conclude that the plan was consistent with the objectives and purposes of the Bankruptcy Code.

*Id.* at 43.

Similarly, the depositions of Debtors' and the ACC's Rule 30(b)(6) witnesses, which will introduced into evidence during Phase II, demonstrate that the ACC controlled the drafting of the First Amended Plan and the Trust documents.  In other words, the Trust and TDPs were drafted by, and will be administered by, representatives of the same asbestos claimants who will be submitting claims to the Trust.  Debtors' abdication of their obligations to all creditors and parties in interest, including FFIC/Allianz, by participating in this collusive arrangement makes it impossible for this Court to find that the First Amended Plan was proposed in good faith.

24

**B.  The Fourth Amended Plan Violates The Anti-Assignment Restrictions In The FFIC/Allianz Policies.**

FFIC/Allianz are well aware of this Court's rulings in other cases that insurance policy anti-assignment clauses are preempted in section 524(g) cases by section 1123(a)(5). FFIC/Allianz respectfully disagree with the Court's analysis of this issue; and notes that appeals are pending in the Third Circuit Court of Appeals in two cases in which this Court has ruled on this issue.  To avoid belaboring the point here, but to fully preserve its arguments for appeal, FFIC/Allianz has attached to this trial brief an Appendix containing its arguments with respect to the proposed assignment of Insurance Rights in connection with the First Amended Plan. FFIC/Allianz incorporate the Appendix into this trial brief, and will raise the arguments therein on appeal if one is taken on this issue.

**C.  The First Amended Plan Cannot Be Confirmed Because It Is Not Fair And Equitable As To FFIC/Allianz And Therefore Does Not Satisfy The Requirements of Section 1129(b)**

Section 1129(b) of the Bankruptcy Code states, in pertinent part, that "the court . . . shall confirm a plan . . . if the plan does not discriminate unfairly, and is fair and equitable . . . ."

FFIC/Allianz are entitled to fair and equitable treatment of rights under, interests in, and potential Claims arising out of, the FFIC/Allianz Policies.  Because the First Amended Plan does not provide fair and equitable treatment to FFIC/Allianz, it does not satisfy section 1129(b) of the Bankruptcy Code with respect to FFIC/Allianz.

Specifically, the discharges and injunctions contained in the First Amended Plan impermissibly impair FFIC/Allianz's post-Effective Date rights to enforce satisfaction of Debtors', Reorganized Debtors' and/or or the Trust's continuing duties and obligations under the FFIC/Allianz Policies, as well as any possible rights of set-off, recoupment, contribution,

25

reimbursement and subrogation.  *See* First Amended Plan §§ 7.15(h) and Article XIII.  In this respect, the First Amended Plan is not fair and equitable to, and unfairly discriminates against, FFIC/Allianz because it makes FFIC/Allianz potentially liable to provide insurance coverage and other performance under the FFIC/Allianz Policies while depriving FFIC/Allianz of their corresponding ability to exercise their rights, and enforce their remedies, thereunder.  *Id.*

In addition, the First Amended Plan improperly proposes to re-write the terms of the FFIC/Allianz Policies.  A debtor "cannot unilaterally impose coverage terms on [the insurers] ...."[26]  To the extent that the First Amended Plan purports to assign any of the FFIC/Allianz Policies without the prior express consent of FFIC/Allianz and without expressly requiring Debtors, Reorganized Debtors, and/or or the Trust, as the case may be, to assume all of the duties and obligations of the insured thereunder, it impermissibly attempts to unilaterally modify the terms of the FFIC/Allianz Policies.

## IV.    CONCLUSION

The First Amended Plan does not satisfy the requirements of section 1129 of the Bankruptcy Code and cannot be confirmed by the Court because:  (i) the release, exculpation, and injunction provisions of the First Amended Plan are overly broad and otherwise improper *vis a vis* insurer claims; (ii) the First Amended Plan fails, for a multitude of reasons, to satisfy the good faith requirement of section 1129(a)(3) of the Bankruptcy Code; (iii) the First Amended Plan does not comply with the requirements of section 524(g) of the Bankruptcy Code; and (iv) the First Amended Plan is proposed by means forbidden by applicable law, as confirmation will effect a violation of FFIC/Allianz's contractual rights, by discharging the Debtors from their

---

[26]   *Certain Underwriters at Lloyd's, London v. McDermott Int'l Inc.*, 2002 U.S.  Dist.  Lexis 874* 32 (E.D. La. 2002); *see also In re Ames Dept.  Stores, Inc.*, 1995 WL 311764 (S.D.N.Y.  May 18, 1995) (bankruptcy court does not have the authority to rewrite the terms of an insurance policy and impose requirements upon the insurer which were not part of the parties' bargains).

contractual obligations without any corresponding assumption of such duties by any other party including the Trust.  In addition, the First Amended Plan's proposed assignment of Asbestos Insurance Rights, including rights with respect to the FFIC/Allianz Policies, to the Trust violates the anti-assignment provisions of the FFIC/Allianz Policies and applicable state law.  For these reasons the First Amended Plan should not be confirmed.

FFIC/Allianz reserves their right to amend, modify or supplement this Phase II Trial Brief in response to, or as a result of any discovery or investigation being conducted in connection with confirmation of the First Amended Plan and/or any submission in connection with the First Amended Plan or this case filed by any party-in-interest.  FFIC/Allianz also reserves the right to join in any other Phase II trial brief filed by any other party.

Dated:  July 13, 2009                                STEVENS & LEE, P.C.


/s/ *John D. Demmy*
John D. Demmy (DE Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Email: jdd@stevenslee.com

-and-

Leonard P. Goldberger
Marnie E. Simon
(Members PA Bar)
1818 Market Street, 29th Floor
Philadelphia, PA 19103-1702
Telephone:  (215) 751-2864/2885
Telecopier:  (610) 371-7376/8505
Email: lpg@stevenslee.com
Email: mes@stevenslee.com

ATTORNEYS FOR FIREMAN'S FUND
INSURANCE COMPANY, ALLIANZ S.p.A., f/k/a
RIUNIONE ADRIATICA DI SICURTA, AND
ALLIANZ SE, f/k/a ALLIANZ
AKTIENGESELLSCHAFT