**APPENDIX**

**I.    The Bankruptcy Code Does Not Expressly Preempt The Anti-Assignment Provisions in the Insurers' Policies**

This Court has held in other cases that debtors may assign their insurance policies and rights thereunder to § 524(g) trusts notwithstanding policy provisions barring such assignments without the insurer's consent, on the ground that enforcement of the policy provisions is preempted by § 1123(a)(5).[1] In those cases, the Court relied on the Third Circuit's decision in *Combustion Engineering* and rejected reliance on the Ninth Circuit's ruling in *PG&E*.[2] But *Combustion Engineering* does not address the question at issue, and *PG&E* supplies the correct analysis which this Court should follow.

In *Combustion Engineering*, the court did not address the question of whether insurance policy anti-assignment clauses were preempted by § 1123(a)(5). Rather, all the court did was decide that a debtor's interests in its insurance policies became property of its estate under § 541, notwithstanding anti-assignment provisions.[3] The court did not address or analyze whether that interest in property could subsequently be transferred out of the debtor's estate to a § 524(g) trust, without the insurers' consent. Although the court did make a passing reference to § 1123(a)(5) in a footnote, all that footnote addresses is the meaning and application of § 541.[4] That passing reference to § 1123(a)(5) is hardly a considered, binding holding that an insurance

---

[1]    *See*, *e.g.*, *In re Federal-Mogul Global, Inc.*, 385 B.R. 560 (Bankr. D. Del. 2008); *In re Global Industrial Techs., Inc.*, 375 B.R. 155 (Bankr. W.D. Pa. 2007). *See also In re Kaiser Aluminum Corp.*, 343 B.R. 88 (D. Del. 2006).

[2]    *Pacific Gas & Elec. Co. v. California*, 350 F.3d 932 (9th Cir. 2003).

[3]    *Combustion Engineering*, 391 F.3d at 219.

[4]    *Id*. at n.27 ("The Bankruptcy Code expressly contemplates the inclusion of debtor insurance policies ***in the bankruptcy estate***. Section 1123(a)(5) provides . . . ") (emphasis added).

policy may be assigned by the debtor's estate to a trust despite the policy's anti-assignment provision.

Unlike the court in *Combustion Engineering*, the Ninth Circuit in *PG&E* did directly address the preemptive scope of § 1123(a)(5). In *PG&E*, the court held, as a matter of law, that § 1123(a)(5) does ***not*** expressly preempt all "applicable nonbankruptcy law" that might otherwise affect implementation of a plan.[5] The Ninth Circuit instead concluded that the preemptive reach of § 1123(a)(5) is limited to nonbankruptcy law that relates to the "financial condition" of the debtor.[6]

In *PG&E*, the plan and disclosure statement filed by the debtor, a large public utility, said that an extensive overlay of state laws and regulations that otherwise might influence the plan's complex restructuring, including the disaggregation and transfer of the debtor's assets, would be preempted and therefore not an impediment to implementing the plan.[7] Relying upon the "notwithstanding applicable nonbankruptcy" language in § 1123(a)(5), the disclosure statement advised creditors that "section 1123(a)(5) of the Bankruptcy Code authorizes, among other things, the sale or transfer of assets by the Debtor without the consent of the State or the California Public Utilities Commission."[8] According to the debtor, such preemption was necessary to facilitate its reorganization.[9]

Initially, the bankruptcy court in *PG&E* rejected what it characterized as "the [plan proponents'] 'across the board take-no-prisoners preemption strategy,'" holding that

---

[5]   *PG&E*, 350 F.3d at 946-48.

[6]   *Id.* at 937.

[7]   *Id.* at 936.

[8]   *Id.* at 935.

[9]   *Id.* at 936.

"'there is no express exemption of numerous state laws'" and reserving for further decision the precise parameters of any preemption.[10] The district court, in an interlocutory appeal, reversed the bankruptcy court in favor of the debtor's views.[11]

The Ninth Circuit then reversed the district court. The Ninth Circuit carefully reviewed the statute's legislative history and concluded that § 1123(a)(5) has the same narrow preemptive effect as § 1142(a), and thus could not be construed so broadly as to potentially override all state laws. The much more modest scope of § 1142(a), the court observed, is limited to state law "relating to" the debtor's "financial condition:"

> Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.[12]

Based on the language of the statute and the relevant legislative history, the Ninth Circuit reasoned that "[i]t makes perfect sense that the express preemptive scope of what must be included in a confirmable plan, specified in § 1123(a), would be the same as the express preemptive scope of what is actually included in a confirmed plan, specified in § 1142(a)."[13]

Accordingly, the *PG&E* court held that "the 'notwithstanding' clause of § 1123(a) expressly preempts otherwise applicable nonbankruptcy law, and that the scope of that express preemption is the same as under the 'notwithstanding' clause of § 1142(a)."[14] It further held "that the express preemption of § 1123(a)(5) *is limited to* otherwise applicable nonbankruptcy

---

[10]      *Id.* at 937.

[11]      *Id.*

[12]      *Id.* at 941, quoting § 1142(a).

[13]      *Id.* at 947. *See also id.* at 948 ("a plan proposed in conformity with § 1123(a) could be confirmed, and a confirmed plan would then have the preemptive effect precisely specified in § 1142(a)").

[14]      *Id.* at 948.

laws 'relating to financial condition,' as specified in §1142(a)."[15]

Under the reasoning of *PG&E*, it is clear that the anti-assignment provision of the Policies is not preempted because it does not relate to Debtors' financial condition; rights under Debtors' insurance policies are assignable, or not, irrespective of Debtors' financial condition. Accordingly, the Policies' no-assignment provision is *not* expressly preempted by § 1123(a)(5).

Presumably, Debtors will argue that *PG&E* is factually inapposite because that case involved state regulation and not private contract rights. But the fact that *PG&E* involved preemption of state regulation is of no importance, because the Ninth Circuit did not limit its holding to the peculiar facts before it. To the contrary, the court enunciated a rule of decision regarding the extent and breadth of the preemptive scope of § 1123(a)(5) generally and, as a matter of law, it limited § 1123(a)(5)'s preemptive effect to laws that relate to the debtor's financial condition. The Ninth Circuit's substantive analysis of the preemptive scope of section 1123(a)(5), the only such analysis by any circuit court, should not be ignored.

## II. The Anti-Assignment Provision Is Not Implicitly Preempted By The Bankruptcy Code

Moreover, nothing in the Bankruptcy Code implicitly preempts Insurers' contractual right to bar the assignment of policy rights to the Trust without its consent. There are two types of implied preemption.[16] The first is "field preemption," where "the scope of a statute indicates that Congress intended federal law to occupy a field exclusively."[17] The second is

---

[15]   *Id.* at 942 (emphasis added). *See also* 7 *Collier on Bankruptcy* ¶ 363.10[2] at 363, 84 (15th ed. 2008) ("Collier") ("Bankruptcy law protects the trustee's ability to take control of property and typically to use the property in a reorganization but it does not override restrictions on the transfer or use of the property that are not tied to the debtor's bankruptcy or its financial condition").

[16]   *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995).

[17]   *Id.*

A-4

"conflict preemption," which occurs when either "it is 'impossible for a private party to comply with both state and federal requirements,'"[18] or where "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"[19] For conflict preemption to apply, the conflict must be an actual conflict, not merely a hypothetical or potential conflict.[20] Neither "field preemption" nor "conflict preemption" applies here.

### A. "Conflict Preemption" Does Not Apply Because It Is Not Impossible For Debtors To Comply With Both The Anti-Assignment Provisions And The Bankruptcy Code

Conflict preemption does not apply here because there is nothing in the Bankruptcy Code that makes it impossible for Debtors simultaneously to comply with the Policies' anti-assignment provision and the Bankruptcy Code. Section 1123(a) requires only that a debtor "provide adequate means" by which it will implement a plan of reorganization. The provision allows the debtor significant flexibility to achieve that end, including through sales, mergers, securities offerings, distributions to creditors, "the retention by the debtor of all or any part of the property of the estate" or, conversely, the "transfer of all or any part" of such property "to one or more entities."[21] Nothing in § 1123(a) mandates the assignment of policy rights to the Trust over the objections of insurers, or requires Debtors to disregard existing contractual obligations.[22]

Nor is there anything in § 524(g) which would otherwise make it impossible for Debtors to comply with both the statute and its contractual obligations. Specifically, nothing in

---

[18]   *Id.*, citing *English v. General Elec. Co.,* 496 U.S. 72, 79 (1990).

[19]   *Id.*, citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

[20]   *English*, 496 U.S. at 89.

[21]   § 1123(a)(5)(A)-(B) (emphasis added).

[22]   § 1123(a)(5)(A)-(D), (J).

§ 524(g) requires Debtors to contribute their insurance rights to a trust, in contravention of anti-assignment provisions in its policies or otherwise. To the contrary, § 524(g) only directs that a trust be funded "in whole or in part by the securities of one or more debtors involved in such plan and by the obligation of such debtor or debtors to make future payments, including dividends."[23] Indeed, this Court has confirmed § 524(g) plans in which the debtor did not assign any of its insurance policies to the trust.[24]

Thus, as with § 1123(a)(5), nothing in § 524(g) is in conflict with the Policies' anti-assignment provision or would render it impossible for Debtors to both comply with their contractual obligations and confirm a § 524(g) plan. If anything, § 524(g) recognizes that not all insurance companies will participate in the trust and that not all policies will be transferred to it. Indeed, § 524(g)(4)(A)(ii), which addresses the third-party injunction, clearly provides that such an injunction is ***not*** mandatory but, rather, "***may***" be extended to an insurance company that provides insurance proceeds to the trust.[25] Thus, there is nothing in § 524(g) that even remotely conflicts with the Policies' anti-assignment provisions.

There also is no basis to disregard the anti-assignment provision just because it may pose an obstacle to confirmation of the First Amended Plan. The First Amended Plan must comply with the law; the law is not to be molded to fit Debtors' preferred plan structure. As another court has observed, "Congress's purpose in enacting the Bankruptcy Code was not to

---

[23]   § 524(g)(2)(B)(i)(II).

[24]   *See, e.g.*, *In re Mid-Valley, Inc*., No. 03-35592 (JKF), 2004 Bankr. LEXIS 1553 at *15-16 (Bankr. W.D. Pa. July 21, 2004); *In re Mid-Valley, Inc.,* 305 B.R. 425, 428 (Bankr. W.D. Pa. 2004) (noting debtors' intent, later realized, "to fund their obligations under the Plan without any assistance from the certain insurers and . . . to bear the entire and sole risk that they might be unable to recover from the certain insurers some or all of the funds paid out under the Plan").

[25]   *See* §§ 524(g)(4)(A)(ii)(III), (B)(ii).

A-6

SL1 933210v1/021630.00003

mandate that every company be reorganized at all costs, but rather to establish a preference for reorganizations, where they are legally feasible and economically practical."[26] Accordingly, "simply making a reorganization more difficult for a particular debtor . . . does not rise to the level of stand[ing] as an obstacle to the accomplishment of the full purposes and objectives of Congress."[27] Thus, the Bankruptcy Code provides qualified debtors a mechanism to reorganize, if they can comply with the Code's requirements; it does not guarantee them the opportunity to reorganize in the most expedient way at the expense of others' contractual rights.

As the U.S. Supreme Court observed in rejecting a similar argument under a different provision of the Bankruptcy Code, "[i]f Congress wishes to grant … an extraordinary exemption from nonbankruptcy law, the intention would be clearly expressed, not left to be collected or inferred from disputable considerations of convenience in administering the estate of the bankrupt."[28] This approach is consistent with the bedrock tenet that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law," to prevent a debtor "from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'"[29]

---

[26] *Baker & Drake, Inc. v. Public Serv. Comm'n (In re Baker & Drake, Inc.)*, 35 F.3d 1348, 1354 (9th Cir. 1994).

[27] *Id.* (second alteration in original; internal quotations and citation omitted).

[28] *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl Prot.*, 474 U.S. 494, 501 (1986).

[29] *Butner v. United States*, 440 U.S. 48, 54-55 (1979), quoting *Lewis v. Manufacturers Nat'l Bank*, 364 U.S. 603, 609 (1961).

Moreover, Debtors have not shown that it is necessary for them to override anti-assignment provisions in order to confirm a plan. As noted, § 524(g) plans have been confirmed – including by this Court – without any assignment of the debtor's insurance.

### B. "Field Preemption" Also Does Not Apply

Field preemption plainly does not apply here either because, far from "occup[ying] the legislative field," Congress has expressly left the field of insurance regulation almost entirely to the states under the McCarran-Ferguson Act.[30] There is nothing to suggest that § 524(g) comprehensively governs contract law or insurance law. In fact, § 524(g) does not purport to govern these areas at all. Neither the case law nor the legislative history pertaining to § 524(g) mentions any congressional intent with respect to either contract law or insurance law. Thus, § 524(g) does not supplant these traditional state law fields with federal law.[31]

### III. Finding That Section 1123(a) Or Section 524(g) Overrides The Anti-Assignment Clause Will Lead To Absurd Results

In all events, construing §§ 1123 or 524(g) to preempt the Policies' anti-assignment provision would violate a cardinal rule of statutory construction by leading to potentially absurd results.[32] To hold that § 1123(a)(5) or § 524(g) overrides all non-bankruptcy law that might impact the implementation of a reorganization plan would effectively give bankruptcy courts *carte blanche* power to ignore **any** provision of a contract that would potentially limit the assets available to fund a trust. It also would, by necessity, allow a plan to

---

[30]    *See* 15 U.S.C. § 1012; *Lorillard Tobacco*, 533 U.S. 525, 540-41 (2001).

[31]    *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("In all preemption cases, and particularly in those in which Congress has legislated in a field in which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (internal quotations and citations omitted).

A-8

override all federal law and state law and all provisions of private contracts that might govern the ten specific transactions listed in § 1123(a)(5). It cannot be credibly argued that Congress intended, particularly without saying so, to vest that much power in bankruptcy courts.

Instead, absent clear congressional intent to the contrary, courts presume that Congress does *not* intend to preempt private contracts and agreements. The Supremacy Clause applies to "any Thing in the *Constitution* or *Laws* of any State" and therefore, by its terms, applies only to state enactments made pursuant to state powers, such as statutes and regulations – not private contracts.[33]

Thus, for example, the U.S. Supreme Court has held that the National Labor Relations Act does not preempt the provisions of a labor contract, explaining that "the Supremacy Clause does not require preemption of private conduct."[34] To be sure, the Court noted, contracts may be enforced pursuant to state law, but that does not transform a contract's terms into a "law" for preemption purposes:

> That a contract has no legal force apart from the [state] law that acknowledges its binding character . . . does not mean that every contractual provision is imposed under State law. To the contrary, common understanding dictates that a contractual

---

(…continued)

[32] *See, e.g., Nixon v. Missouri Mun. League,* 541 U.S. 125, 138 (2004) (reading express preemption provision narrowly so as not to "lead[ ] to absurd . . . results"), citing *United States v. American Trucking Assocs.,* 310 U.S. 534, 543 (1940).

[33] *See Gibbons v. Ogden*, 22 U.S. 1, 211 (1824) ("appropriate application of" the Supremacy Clause is to "acts of the State Legislatures . . . enacted in the exercise of [its] powers"); *Building & Constr. Trades Council v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218, 227, 113 S.Ct. 1190, 1196 (1993) ("preemption doctrines apply only to state *regulation*") (emphasis in original).

[34] *Building and Constr. Trades Council*, 507 U.S. at 229. *See also* Cipollone v. Liggett Group, Inc., 505 U.S. 504, 526 (1992) ("a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement . . . *imposed under State law* '") (emphasis in original); *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 228-29 (1995) (Airline Deregulation Act did not preempt passengers' contract claims).

requirement, although only enforceable under state law, is not imposed by the State, but rather is imposed by the contracting party upon itself.[35]

In accord with this basic principle of preemption, it is evident that Congress plainly did not intend § 1123(a) of the Bankruptcy Code to preempt the terms of private insurance contracts. Congress expressly limited the preemptive scope of § 1123(a)(5) to "applicable nonbankruptcy *law*."[36] Thus, by its terms, the statute applies only to *laws*, not contracts. There can be no doubt on this point in light of the fact Congress *did* expressly preempt the terms of both applicable "law" *and* private "contracts" in several other provisions of the Bankruptcy Code.[37]

## IV. A Declaration That The Policies' Anti-Assignment Clause Is Not Enforceable Requires An Adversary Proceeding

Even if this Court could properly decide the anti-assignment issue, it may not do so in the context of a plan confirmation hearing. Adjudication of substantive rights may be made only in the context of an adversary proceeding pursuant to Bankruptcy Rule 7001, which provides that "a proceeding to obtain a declaratory judgment relating to" "a proceeding to recover money or property" must be commenced and prosecuted through an adversary proceeding, with its attendant procedural protections.[38] Plan Proponents may not circumvent Rule 7001 and obtain such a judgment "without filing an adversary proceeding," simply by

---

[35] *Cipollone*, 505 U.S. at 526 n.24 (quotation omitted).

[36] (Emphasis added.)

[37] *See, e.g.*, § 541(c)(1) (regarding transfer of property from the debtor to the bankruptcy estate) ("notwithstanding any provision in an *agreement*, transfer instrument, *or applicable nonbankruptcy law*") (emphasis added); § 363(1) (governing use, sale, or lease of property of the estate) ("notwithstanding any provision in a *contract*, a lease, *or applicable law*") (emphasis added); § 365(e)(1) (governing assumption, assignment or rejection of executory contracts and unexpired leases) ("[n]otwithstanding a provision in *an executory contract or unexpired lease*, or in *applicable law*") (emphasis added); § 365(f)(1) ("notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law"); § 1124(2) (governing impairment of claims or interests) ("notwithstanding any *contractual provision or applicable law*") (emphasis added).

"inserting . . . findings . . . in their proposed plans."[39] Thus, "where the Rules require an adversary proceeding . . . a creditor has the due process right not to have th[e] issue resolved without one."[40] This Court, therefore, cannot decide this issue as part of confirmation of the First Amended Plan.

---

(…continued)

[38] Fed. R. Bankr. P. 7001(1), (9).

[39] *In re Hanson*, 397 F.3d 482, 484 (7th Cir. 2005).

[40] *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230, 242 (3d Cir. 2008) (holding that plan that had become final was not preclusive as to matter that should have been decided by adversary proceeding, despite creditor's actual notice of confirmation proceedings).