IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W.R. GRACE & CO., *et al.*, | : | Case No. 01-1139 (JKF) |
| | : | (Jointly Administered) |
| | : | |
| Debtors. | : | **Related D.I.: 21777** |

**TRIAL BRIEF IN SUPPORT OF THE LIMITED OBJECTION OF CERTAIN
AIU INSURERS TO THE DEBTORS' FIRST AMENDED JOINT PLAN
OF REORGANIZATION**

**ZEICHNER ELLMAN & KRAUSE LLP**
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 223-0400

{00314386;v1}

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT REGARDING THE CARVE-OUT OF THE
AIU INSURERS FROM THE INSURER NEUTRALITY PROVISION ........................... 3

BACKGROUND ........................................................................................................... 4

OBJECTIONS TO THE PLAN ...................................................................................... 6

    A.   Treatment of the AIU Agreements Under The Plan ................................................. 6

    B.   The Plan Proponents Cannot Use Bankruptcy To Re-Write the Agreements and
        Expand AIU's Duties ........................................................................................ 9

    C.   The Plan Fails Under § 1129 of the Bankruptcy Code ........................................... 11

    D.   The Agreements Excuses the AIU Insurers From Having To Perform Their....
        Duties If The Contract is Assigned to the Asbestos PI Trust ............................... 12

JOINDER .................................................................................................................... 13

CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Argonaut Ins. Co. v. Ames Dept. Stores, Inc.,*
   No. 93 Civ. 4014 (KMW), 1995 U.S. Dist. LEXIS 6704 (S.D.N.Y. May 18,
   1995) ................................................................................................................................. 8

*Bogus v. Am. Nat'l Bank of Cheyenne, Wyo.,*
   401 F.2d 458,460-461 (10th Cir. 1968) ............................................................................ 8

*In re Bolin Oil Co.,*
   51 B.R. 936 (Bankr. N.D. Ohio 1985) .............................................................................. 8

*In re Bristol Assocs., Inc.,*
   505 F.2d 1056 (3d Cir. 1974) ........................................................................................... 8

*In re Combustion Eng'g, Inc.,*
   391 F.3d 190 (3d Cir. 2004) ............................................................................................. 8

*In re EES Lambert Assocs.,*
   62 B.R. 328,336 (Bankr. N.D. Ill. 1986) .......................................................................... 8

*Integrated Solutions v. Serv. Support Specialties.,*
   124 F.3d 487 (3d Cir. 1997) ............................................................................................. 9

*NLRB v. Bildisco and Bildisco,*
   465 U.S. 513 (1984) ......................................................................................................... 9

*Paramount Fin. Co. v. United States,*
   379 F.2d 543 (6th Cir. 1967) ............................................................................................ 8

*Westmoreland Human Opportunities, Inc. v. Walsh,*
   246 F.3d 233 (3d Cir. 2001) ............................................................................................. 8

*Zartman v. First Nat'l Bank of Waterloo, N.Y.,*
   216 U.S. 134 (1910) ......................................................................................................... 8

Certain insurance companies (the "AIU Insurers")[1] by and through the undersigned counsel, hereby file this trial brief in support of its Limited Objection (the "Limited Objection", D.I. no. 21777) to the Debtors' First Amended Joint Plan (the "Plan"). The Limited Objection has been classified by the Debtors as a Phase II objection, a classification which the AIU Insurers do not dispute. In support of its Limited Objection, the AIU Insurers represent as follows:

## PRELIMINARY STATEMENT REGARDING THE CARVE-OUT OF THE AIU INSURERS FROM THE INSURER NEUTRALITY PROVISION

The Plan is subject to numerous insurer objections, and most of those objections are subject to the argument by Plan Proponents that the Plan is to be insurer neutral. Thus, Plan Proponents argue, these insurers are purportedly not harmed by the Plan. These other insurers (not AIU) will address thosearguments.

AIU Insurers, however, fall into a small defined category of carriers with pre-petition settlement agreements that provide for reimbursement of losses in the future (defined in the Plan as Asbestos Insurance Reimbursement Agreements or "AIRA"). **The AIRA's are expressly carved out of the insurance neutrality provisions of the Plan** by the combined effect of sections 7.2.2(d)(v) and

---

[1]   The AIU Insurers include: American Home Assurance Company, AIU Insurance Company, Birmingham Fire Insurance Company, Granite State Insurance Company, Illinois National Insurance Company, Insurance Company of the State of Pennsylvania, Lexington Insurance Company and New Hampshire Insurance Company. Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection or Plan.

7.15(j).  Section 7.2.2(d)(v) unabashedly states that compliance with the TDP is "full compliance" with any AIRA.

It is a black letter principle that bankruptcy cannot increase the obligations of a third-party with a duty to pay money to an estate.  Under its AIRA agreements with the Debtors, however, AIU Insurers have certain conditions that precede, or go hand-in-glove with, their duty to reimburse losses.  Those conditions are simply eliminated  - taken away - with no insurance neutrality provision to replace or protect them.

It is for that reason that while other insurers were subject to the "Phase I" hearing which addressed neutrality, the AIU Insurers were not.  Inasmuch as AIRA insurers are carved out of neutrality, AIRA insurers are to be addressed in Phase II, where Plan Proponents must justify their "full compliance" provision (7.2.2(d)(v)), without "neutrality" as a justification.

## BACKGROUND

1.    Prior to the Petition Date, the AIU Insurers entered into two confidential settlement agreements with certain Debtor W.R. Grace & Co. – Conn. ("Grace") resolving, *inter alia*, certain insurance coverage actions between the parties. The settlement agreements were entered into in 1995 and 2000 (respectively, the "1995 Agreement" and the "2000 Agreement", collectively, the "Agreements", to be entered by the AIU Insurers as Trial Exhibits subject to applicable protective order).

2.      The 1995 and 2000 Agreements provide that Grace is obligated to provide the AIU Insurers certain continuing indemnification rights for claims that might be asserted by others against the AIU Insurers in connection with disputes related to claims.

3.      The 1995 and 2000 Agreements also provide that Grace is obligated to defend the AIU Insurers from certain actions that might be commenced against them in connection with certain asbestos related claims.

4.      Additionally, both agreements provide the AIU Insurers with the right to review and audit all documentation relating to billings and payments of covered asbestos related claims and further provide that Grace will cooperate in providing such information.  Additionally, meetings are to be held to discuss claims, to review strategy and to consider the administration, defense and settlement of asbestos related claims. Grace is also obligated to provide quarterly status reports.

5.      The Agreements also prohibit their assignment by the Debtors without the clear consent of the AIU Insurers.

6.      Despite the clear, binding terms of the Agreements, the Plan, as currently filed, either is silent as to the above continuing obligations of the Reorganized Debtors, or explicitly alters the Agreements by categorizing them as "Asbestos Insurance Reimbursement Agreements" as discussed below.

## OBJECTIONS TO THE PLAN

**A.**     **Treatment of the AIU Agreements Under The Plan**

7.     Under the Plan, the Agreements are classified as Asbestos Insurance Reimbursement Agreements ("AIRA") on Schedule 3 of the Asbestos Insurance Transfer Agreement (Exhibit 6 to the Plan Exhibit Book) (hereafter the "Transfer Agreement"). In turn, an AIRA is defined under the Plan as follows:

> [A]ny agreement entered into prior to the Petition Date between the Debtors or Non-Debtor Affiliates, or any of them or their predecessors, on the one hand, and any Asbestos Insurance Entity, on the other hand, to which the Asbestos Insurance Entity agreed to reimburse the Debtors or the Non-Debtor Affiliates, or any of them or their predecessors, for certain liability, indemnity, or defense costs arising from or related to asbestos-related claims, including Asbestos PI Claims. The known Asbestos Insurance Reimbursement Agreements are listed on Schedule 3 to the Asbestos Insurance Transfer Agreement.

Plan, p. 5.

8.     Pursuant to the Plan and the Transfer Agreement, the Insurance Contributors (i.e., the Debtors) "irrevocably transfer, convey, and grant to the Asbestos PI Trust all of their Asbestos Insurance Rights ..." Transfer Agmt, § 1(a).

9.     The Transfer is free and clear of all liens, claims and encumbrances, except that "all Asbestos Insurer Coverage Defenses are preserved." *Id.* The Plan defines Asbestos Insurer Coverage Defenses as follows:

Asbestos Insurer Coverage Defenses are defined under
the Plan to mean "all rights and defenses at law or in
equity that any Asbestos Insurance Entity may have under
any Asbestos Insurance Policy, Asbestos Insurance
Settlement Agreement, Asbestos In-Place Insurance
Coverage or applicable law to a claim seeking insurance
coverage. Asbestos Insurer Coverage Defenses include
any defense based on the terms of the Plan or the Plan
Documents or the manner in which the Plan or Plan
Documents were negotiated; but Asbestos Insurer
Coverage Defenses do not include any defense that (i) the
Plan or any of the Plan Documents do not comply with
the Bankruptcy Code, or (ii) the transfer of Asbestos
Insurance Rights pursuant to the Asbestos Insurance
Transfer Agreement is prohibited by an Asbestos
Insurance Policy, any Asbestos Insurance Settlement
Agreement, any Asbestos In-Place Insurance Coverage or
applicable non- bankruptcy law."

*Plan, p. 6-7.*

10.    By not specifically including AIRA's in its definition of Asbestos

Insurer Coverage Defenses, it is unclear whether insurers who are parties to such

agreements will maintain their coverage defenses post-confirmation.  Indeed, the Plan

seems to rule out that possibility by the treatment given to AIRA's in Section

7.2.2(b)(iv) of the Plan:

On the Effective Date, the Asbestos PI Trust shall be the
successor to all rights of the Debtors and Non-Debtor
Affiliates under each Asbestos Insurance Reimbursement
Agreement.  The Asbestos PI Trust's payment of an
Asbestos PI Claim under the PI TDP *shall be deemed to
constitute settlement and payment of such claim by or on
behalf of the Debtors or Non-Debtor Affiliates within the
meaning of, and in full compliance with, each Asbestos
Insurance Reimbursement Agreement.*

<u>Plan</u>, p. 64  (Emphasis added)

11.     Section 7.2.2(b)(iv) of the Plan substantially, and detrimentally affects the rights of the AIU Insurers.  Section 7.2.2(b)(iv) of the Plan re-writes the terms of the Agreements so that payment of a claim by the Asbestos PI Trust will be deemed to be settlement and payment of that claim in full compliance with the terms of the Agreements, whether or not it complies with the terms and conditions of the Agreements.  Any rights that the AIU Insurers may possess regarding audit or defense of such claims are simply done away with by the Plan.  Nowhere in the Plan do the Plan Proponents cite to any section of the Bankruptcy Code that authorizes Section 7.2.2(b)(iv) of the Plan.

12.     In order to effectuate this wholesale re-writing and expansion of AIU's contractual duties, the Plan Proponents carve the AIRA out from the insurance neutrality protections provided in Section 7.15 of the Plan.  Section 7.15(j) provides that "Asbestos Insurance Entities that are parties to Asbestos Insurance Reimbursement Agreements shall be bound by the provisions of Section 7.2.2(d)(iv) of the Plan with respect to such Asbestos Insurance Reimbursement Agreements." <u>Plan</u>, p. 89.

**B.    The Plan Proponents Cannot Use Bankruptcy To Re-Write the
Agreements and Expand AIU's Duties**

13.    Contractual rights are determined under state law. *See, e.g., In re
Bristol Assocs., Inc.*, 505 F.2d 1056, 1059 n. 4 (3d Cir. 1974).[2]    As this Court
recognized, such rights must not be modified by a plan. *In re Combustion Eng'g, Inc.*,
391 F.3d 190, 209 (3d Cir. 2004) ("recognizing the Plan should not modify the
contractual rights of insurers"); *see also In re EES Lambert Assocs.*, 62 B.R. 328,336
(Bankr. N.D. Ill. 1986) ("However expansive the bankruptcy court's power may be to
protect the property interests of debtors-in-possession, it does not extend to enlarging
the rights of a debtor under a contract or rewriting its terms."); *In re Bolin Oil Co.*, 51
B.R. 936, 938 (Bankr. N.D. Ohio 1985) (holding, with respect to an insurance policy
issued to the debtor, that "[t]he Bankruptcy Code does not enlarge the rights of the
debtor under a contract"); *Argonaut Ins. Co. v. Ames Dept. Stores, Inc.*, No. 93 Civ.
4014 (KMW), 1995 U.S. Dist. LEXIS 6704, *2 (S.D.N.Y. May 18, 1995) ("a
bankruptcy court does not have the power to rewrite contracts"); *Zartman v. First Nat'l
Bank of Waterloo, N.Y.*, 216 U.S. 134, 138 (1910) ("While bankruptcy courts have the
power to allow debtors to escape burdensome contracts by rejecting them, bankruptcy
courts do not have the power to rewrite contracts to allow debtors to continue to

---

[2]    *See also Bogus v. Am. Nat'l Bank of Cheyenne, Wyo.*, 401 F.2d 458,460-461 (10th Cir. 1968);
*Paramount Fin. Co. v. United States*, 379 F.2d 543, 544-545 (6th Cir. 1967); *Westmoreland Human
Opportunities, Inc. v. Walsh*, 246 F.3d 233, 241 (3d Cir. 2001).

perform on more favorable terms. "); *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 531-32 (1984) (debtor must assume contract's burdens as well as its benefits).[3]

14.    Section 7.2.2(d)(iv) of the Plan clearly articulates Plan Proponents' intention not to perform material terms of the Agreements.  In fact, the Plan rewrites the agreement so that "payment of an Asbestos PI Claim under the PI TDP shall be deemed to constitute settlement and payment of such claim by or on behalf of the Debtors ... within the meaning of, **and in full compliance with"** the Agreements. (Emphasis added.)

15.    These revisions, which go to the heart of the Agreements violate the rule that requires *cum onere* assumption of the agreement.  If the Agreements can be assigned to the Asbestos PI Trust, the Asbestos PI Trust cannot have more and better

---

[3]    The Third Circuit has made it absolutely clear that § 541 does not eliminate any restrictions on an interest in property once it has passed to the estate:

> Courts applying the *Butner* analysis have relied on its holding to conclude that "once a property interest has passed to the estate, it is subject to the same limitations imposed upon the debtor by applicable nonbankruptcy law." *In re American Freight Sys., Inc.*, 179 B.R. 952, 960 (Bankr. D. Kan. 1995); *see also In re Transcon Lines*, 58 F.3d 1432, 1438 (9th Cir. 1995) (noting that "non bankruptcy law defines the nature, scope, and extent of the property rights that come into the hands of the bankruptcy estate"), *cert. denied sub nom. Gumport v. Sterling Press, Inc.*, 516 U.S. 1146, 134 L. Ed. 2d 96, 116 S. Ct. 1016 (1996); *In re Sanders*, 969 F.2d 591, 593 (7th Cir. 1992) ("[A] bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time she filed the bankruptcy petition."); *In re FCX, Inc.*, 853 F.2d 1149, 1153 (4th Cir. 1988) ("The estate under § 541(a) succeeds only to those interests that the debtor had in property prior to commencement of the bankruptcy case."); *In re Bishop College*, 151 B.R. 394, 398 (Bankr. N.D.Tex. 1993) (holding that a bankrupt's estate receives trust assets "subject to any restrictions imposed by state law, pre-petition").

*Integrated Solutions v. Serv. Support Specialties.*, 124 F.3d 487, 492 (3d Cir. 1997).

rights than the Debtors currently have under the Agreements. The Plan must make clear that AIU retains all its rights under the Policies and that the insureds (and the Asbestos PI Trust) retain all of the obligations under the Agreements. This is crucial because the Plan eliminates the rights insurers have under their policies to defend, audit and resolve claims on behalf of the Debtors in the state tort law system. It instead gives the Trustees of the Asbestos PI Trust responsibility for resolving Asbestos PI Claims, based upon TDP that were drafted without any input from AIU and without its consent.

16.     By substituting the TDP for procedures and settlements that might otherwise be followed and achieved by the insurers under the Agreements, the Plan may put the insurers in the position, in subsequent coverage litigation with the Asbestos PI Trust, of having to show that the TDP is in plain breach of the insured's obligations under the AIU Agreements.

17.     The Agreements mandate cooperation, but the insurance neutrality provisions carved out all AIRA's and mandates that the Asbestos PI Trust be deemed "in full compliance" when plainly it is not.

## C.     The Plan Fails Under § 1129 of the Bankruptcy Code

18.     The Plan fails to satisfy § 1129(a)(3) of the Bankruptcy Code (11 U.S.C. § 1129(a)(3)) because it provides, artificially, for Asbestos PI claimants' submissions to the Asbestos PI Trust to be kept secret. Such artificial confidentiality requirements violates the AIU Insurers rights under the Agreements to audit such claims

and will almost certainly promote the payment of non-meritorious claims.[4]  Secrecy in the claims resolution process, while coverage is sought from the AIU Insurers, means that it might not even be able to discover the basis on which payment was made by the Asbestos PI Trust on an Asbestos PI Claim which is to be tendered for payment to the AIU Insurers.  Thus, the Plan impairs the AIU Insurers' rights by declaring the documents submitted by a claimant in support of an Asbestos PI Claim to be "privileged" and entitled to "confidential" treatment and, as such, beyond the reach of an insurer that otherwise is contractually entitled to that information from its insured. (See, TDP ¶ 6.5)

19.    The Plan also fails to satisfy § 1129(a)(3) because it purports to enjoin the AIU Insurers from pursuing Contribution Claims against a Settled Asbestos Insurance Company, see Plan §§ 7.15(i) and 8.2.1, which violates the AIU Insurers' state law rights against non-debtor entities.

**D.    The Agreements Excuses the AIU Insurers From Having To Perform Their Duties If The Contract is Assigned to the Asbestos PI Trust**

20.    Pursuant to the Plan, all of the Asbestos Insurance Rights of the Debtors and certain non- Debtor affiliates under the policies issued by the AIU Insurers will be transferred to the Asbestos PI Trust.  A condition of Confirmation is that this

---

[4]  The TDP purports to require that the Asbestos PI Trust hold all materials submitted by an Asbestos PI Claimant as confidential, and only allows the Asbestos PI Trust, in specific limited circumstances (which are not identified), to disclose the contents of the materials to the applicable insurance company after obtaining the consent of the TAC and the FCR. *See* TDP § 6.5.

Court find that the transfer of the Asbestos Insurance Rights is valid and enforceable cagainst the AIU Insurers, "notwithstanding any anti- assignment provision in or incorporated into any Asbestos Insurance Reimbursement Agreement". Section 7.15(g). This Insurance Assignment exception in Section 7.15(g) is a violation of the terms of the AIU Insurer's Agreements that provide that assignments made without AIUs consent will not bind AIU

21.    Transfer of the Asbestos Insurance Rights to the Asbestos PI Trust without AIU's consent violates the terms of the Agreements.  As stated above, the Agreements require that the AIU Insurer's consent be obtained before any assignment of the Agreements can take place. The AIU Insurers have not consented to the transfer of the Agreements or the underlying Asbestos Insurance Rights to the Asbestos PI Trust.  If a claim is asserted against AIU pursuant to the Agreements, AIU would interpose as a defense the fact that the Agreements were assigned without its consent.

## JOINDER

22.    The AIU Insurers reserve the right to join in any other trial brief submitted by other insurers to the extent such briefs support the arguments made above.

## CONCLUSION

The AIU Insurers request that the Plan not be confirmed without the necessary changes outlined above being made.

Dated:       July 13, 2009

Respectfully submitted,

ASHBY & GEDDES

By: _____
Ricardo Palacio (#3765)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE  19899
Telephone: (302) 654-1888
Facsimile:  (302) 654-2067

- and -

ZEICHNER ELLMAN & KRAUSE LLP
Michael S. Davis
575 Lexington Avenue
New York, New York  10022
Telephone: (212) 233-0400
Facsimile: (212) 753-0396
E-mail:  mdavis@zeklaw.com

Co-Counsel for AIU Holdings Ltd.