IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | * | |
| W.R. GRACE & CO., et al., | * | Chapter 11 |
| Debtors. | * | Case No. 01-01139 (JKF)<br>(Jointly Administered) |
| | * | Related Docket Nos. 22200, 22329, 22331 |

------------------------------------------------------X

### THE PHASE I INSURERS' RESPONSE TO THE PLAN PROPONENTS' OBJECTIONS TO THE INSURERS' PROFFER OF EVIDENCE FOR CERTAIN ISSUES OF PHASE 1 OF PLAN CONFIRMATION PROCEEDINGS

The insurers who participated in Phase I proceedings before the Court (hereinafter "the Phase I Insurers"[1]) submit this response to the Plan Proponents' Motions to Exclude evidence proffered by the Phase I Insurers during and subsequent to the Phase I proceedings on June 22 and 23, 2009. Pursuant to the Court's direction, all of the proffered evidence was submitted to Debtors' counsel for collection, along with a statement from certain of the Phase I Insurers regarding the basis for the proffer, and exhibit binders were submitted to the Court. The Phase I Insurers also refer the Court to the proffers submitted with the exhibits.

The Phase I Insurers address herein the overall bases for the admission of the tendered evidence. In addition, the Insurers have attached as Addendum A to this Response a chart responding on a line-by-line and exhibit-by-exhibit basis to the Plan Proponents' objections to

---

[1] Those insurers are: Continental Casualty Company and Continental Insurance Company on their own behalf and on behalf of certain affiliate companies (with respect to certain unsettled coverage), Federal Insurance Company, Fireman's Fund Insurance Company, Allianz S.p.A. f/k/a Riunione Adriatica Di Sicurta, Allianz SE f/k/a Allianz Aktiengesellschaft, General Insurance Company of America, Government Employees Insurance Company, Republic Insurance Company n/k/a Starr Indemnity & Liability Company, Seaton Insurance Company, AXA Belgium as successor to Royal Belge SA, Zurich Insurance Company and Zurich International (Bermuda) Ltd.

the Certain Insurers' deposition designations, and have also attached as Addendum B to this Response a chart responding on a document-by-document basis to the Plan Proponents' objections to "All Other Exhibits" (*i.e.*, all Trial Exhibits other than insurance policies and settlement agreements, which are addressed below). As discussed herein, all of the Plan Proponents' objections are without merit, and should be overruled.

## PRELIMINARY STATEMENT

The current Proposed Plan proposes to transfer the "rights of the Debtors" to certain unsettled insurance policies (as well as to proceeds under certain settlement agreements) to an Asbestos Personal Injury Trust to be created upon confirmation of the Plan. The Phase 1 Insurers have filed Objections to various provisions of the Plan, illustrating how the Plan Provisions do not make clear, or are not consistent with, the Plan Proponents' professed intent to make the Plan "insurance neutral," such that it is clear that all of the insurers' defenses to coverage under the policies are clearly preserved under the Proposed Plan. The Plan Proponents structured these confirmation proceedings so as to have a trial first, in a "Phase I," with respect to the issue of "insurance neutrality." Certain issues, including those related to the anti-assignment provisions in policies, the rights of settled carriers under their settlement agreements and the insurers' standing as creditors, as well as issues relating to injunctions and releases, have been reserved for "Phase II."

Proceedings were held before the Court on June 22 and June 23, 2009. Pursuant to a process reached at those proceedings, certain evidence was tendered at those proceedings, and subsequently additional proffers of evidence were served on the Plan Proponents. On July 2, 2009, the Plan Proponents served objections – nearly entirely on relevance grounds – to all of the Insurers' proffers. The Plan Proponents have objected to each policy or settlement agreement

proffered as a foundation for the Insurers' objections on "relevance" grounds. (Nineteen pages of the Plan Proponents' objections are directed to the Insurers' policies or settlement agreements. All objections other than relevance have been waived with respect to those proffers.) The Plan Proponents also object to the admission of all of the discovery taken from them with respect to the Plan, including the deposition testimony of Rule 30(b)(6) witnesses and their own responses to Requests for Admission and Interrogatories. They object to the admission of the testimony of one of the Proponents' own experts, Dr. Mark Peterson.[2]

In making such objections, the Plan Proponents have argued, and make the same argument again in their motion to exclude the Insurers' evidence, that *nothing* should be admitted as evidence in this Phase I trial except certain language of the Plan. According to those arguments, so long as the Plan Proponents "cut and paste" certain language from the Third Circuit Court of Appeals' decision in *Combustion Engineering* and put it in the Plan somewhere, the Court should go no further to assess whether the Plan adequately and clearly preserves the Insurers' contractual rights. They literally seek to limit the role of the Court to looking at highlighted words. Indeed, the most striking evidence at the proceedings was the Plan Proponents' own demonstrative highlighting for the Court all of the alleged neutrality language in Section 7.15 of the proposed Plan – ***except*** for the words "*except* as provided herein," which is followed by a series of additional subsections.

---

[2] It is difficult to even determine the bases for many of the Plan Proponents' objections. Generally, they simply invoke such labels as "hearsay," "authenticity" or "foundation" without any explanation as to how the exhibits in question run afoul of these principles. Such objections are subject to being overruled on this basis alone, given the requirements of current Fed. R. Evid. 103 with respect to the preservation of objections. As has been long recognized, "Objections to the admission of evidence must be of such a specific character as to indicate distinctly the grounds upon which the party relies, so as to give the other side full opportunity to obviate them at the time, if, under the circumstances, that can be done." *See Noonan v. Caledonia Gold Mining Co.*, 121 U.S. 393, 400 (1887). To the extent that the Insurers are able to guess at the basis of Plan Proponents' vague objections, they respond to those objections herein.

As will be addressed further in the Insurers' Phase I Post-trial Brief, in assessing whether the Plan adequately protects contractual rights, however, the Court is not required to put blinders on and simply check whether certain snippets of language are printed somewhere in the Plan. Rather, especially here where the Plan Proponents concede that exceptions and "carve-outs" have been made to the neutrality language of the Plan, the Court's role is to look at the Plan in its entirety, with its carve-outs and exceptions, and determine whether the Plan has the language and provisions to plainly and unambiguously leave the Insurers' rights properly unaffected. The Insurers' proffer of the policies and the Plan Proponents' admissions, and related evidence, are tendered so that the Court has a basis to make its assessment, not limited to the Plan Proponents' selective highlighting.

As discussed with the Court, the Insurers believe that the appropriate clarifications can be made by agreement between the parties, as has been done in other cases. If the clarifications cannot be worked out consensually, then the Insurers will seek an appropriate order from the Court and the Insurers' proffered evidence provides the appropriate foundation for such an order to be entered.

### I. INSURERS' RESPONSE TO PLAN PROPONENTS' OBJECTIONS TO THE INSURERS' PROFFER OF POLICIES AND SETTLEMENT AGREEMENTS AND TO EVIDENCE ESTABLISHING THAT RIGHTS UNDER THE POLICIES HAVE NOT BEEN WAIVED, SURRENDERED OR COMPROMISED

The subject matter of Phase I of the Plan confirmation proceedings is to determine whether the Plan adequately and clearly preserves the Insurers' defenses based on their contractual rights under their contracts with the Debtors. Certain of the evidence proffered by the Insurers serves as a foundation for their objections -- that is, that they have contractual rights under the policies (and the settlement agreement proffered by General Ins. Co.) and that those rights have not been forfeited, surrendered or compromised.

The policies (and the settlement agreement proffered by General Ins. Co.) here proffered were not, and are not, offered for purposes of coverage determinations, and the Insurers agree with the Plan Proponents that such determinations are not within the scope of this proceeding. Nonetheless, as the Court saw in this proceeding and has seen in other proceedings, the policies and agreements illustrate the types of defenses that need to be unambiguously preserved for determination later in an appropriate coverage action.

Indeed, as demonstrated by Insurer counsel at the Phase I proceedings, one of the more problematic issues is the lack of clarity in the Plan over the assumption or retention of certain obligations specified in the policies, such as the obligation to provide notice or to cooperate in the defense of claims, or of warranties in the settlement agreements. *(See, e.g.*, CNA's Phase I Trial Brief at p. 12.) The policies and agreement provide the basis and foundation for assessment of whether the Plan adequately addresses with clarity the treatment of those rights under the policies. As such, they are plainly relevant to Phase I issues before the Court. Similarly, the Insurers cited to the "consent" provisions in the policies to illustrate the need to make sure that the Plan clearly preserves defenses based upon the overall resolution by the Debtors of asbestos claims by their settlement without the involvement or consent of the Insurers. The Plan Proponents may prefer that specific examples are not available to the Court in its assessments of the Plan's operation, but the policies are nonetheless relevant to the objections before the Court. They are the counterpoint to the Plan, and the basis to review the Plan Proponents' assertions as to the adequacy of the current provisions under applicable law. Moreover:

> [U]nder Federal Rule of Evidence 401, a wide variety of information should be relevant to the issues in all but the most narrow and simple of lawsuits. Background information about witnesses, disputes and documents therefore is routinely received as relevant under Federal Rule of Evidence 401, so long as it is not prejudicial and is not unduly cumulative.

J. McLaughlin, FED. EVID. PRACTICE GUIDE, Sec.6.01[1][b] (Matthew Bender 2009). The Plan Proponents' objection as to the policies and settlement agreements should be overruled.[3]

The Insurers made additional proffers on a basis similar to that of the policies themselves -- that the evidence and admissions of the Plan Proponents demonstrate that the rights they are asserting under unsettled policies have not been waived, compromised or surrendered, and thus, they have a basis to object to the Plan's proposed treatment of those rights.[4] This proffer includes party admissions that the settlement between the Debtors and the ACC of asbestos personal injury liabilities was negotiated and reached without any insurer participation.[5] Such evidence should also be admitted as foundation for the Insurers' Phase I objections.

---

[3] The Court should thus admit all of the exhibits listed on the "Plan Proponents' Objections based on Relevance to All Policies and Settlement Agreements," that is, AXA Belgium Phase I Trial Exhibit Nos. 1-3; Certain Insurers' Phase I Trial Exhibit No. 8, Designated Excerpts, Deposition of Jeffrey Posner, May 6, 2009, at 279-280 & Ex. 18; CNA Phase 1 Trial Exhibit Nos. 6-26; Federal Insurance Company Phase I Trial Exhibit Nos. 1-15; Fireman's Fund and Allianz Phase I Trial Exhibit Nos. 1-32; GEICO/Republic/Seaton Phase I Trial Exhibit No. GRS-24; General Insurance Company Phase I Trial Exhibit Nos. Substitute 1A and 1B; and Zurich Insurance Company Phase I Trial Exhibit Nos. 1-15. The exhibit listed by Plan Proponents as "ACC & OneBeacon" Phase I Trial Exhibit No. 1 is both (a) mislabeled, as OneBeacon is not a Phase I Insurer and did not participate in Phase I of the Confirmation Hearing, and (b) entirely duplicative of GEICO/Republic/Seaton Phase I Trial Exhibit No. GRS-24, therefore it need not be addressed further.

[4] The Court should thus admit the following Exhibits: CNA Phase I Trial Exhibit No. 1, Admission Nos. 1, 5, & 10, Interrogatory No. 6; CNA Phase I Trial Exhibit No. 2, Admission Nos. 1 & 5; CNA Phase I Trial Exhibit No. 3, Admission Nos. 1 & 5; Federal Exhibit 21, Admission Nos. 1, 5, & 10; Certain Insurers' Phase I Trial Exhibit No. 4, Designated Excerpts, Deposition of Jay Hughes, June 11, 2009 ("Hughes Dep."), at 314-319, 358-361, 378-388; GEICO/Republic/Seaton Phase I Trial Exhibit No. GRS-5, RFA Resp. Nos. 1 & 17 and Interrog. Resp. No. 3. The Court should also admit all designated deposition testimony and Exhibits listed on Addenda A and B.

[5] The Court should thus admit the following Exhibits: CNA Phase I Trial Exhibit No. 1, Admission Nos. 2, 6, & 7, Interrogatory No. 6; CNA Phase I Trial Exhibit No. 2, Admission Nos. 2, 6, & 7; CNA Phase I Trial Exhibit No. 3, Admission Nos. 2, 6, & 7; Federal Exhibit 21, Admission Nos. 2, 6 & 7; Certain Insurers' Phase I Trial Exhibit No. 2, Designated Excerpts, Deposition of Richard Finke, March 30, 2009 ("Finke Dep. I"), at 181-184, 191-192, Ex. 12 (W.R. Grace April 6, 2008, SEC Form 8-K and Term Sheet (collectively "SEC 8-K")); Certain Insurers' Phase I Trial Exhibit No. 3, Designated Excerpts, Deposition of Richard Finke, May 13, 2009 ("Finke Dep. II"), at 26-28, 37-39, 288-289, Ex. 3 (SEC 8-K); Certain Insurers' Phase I Trial Exhibit No. 4, Designated Excerpts, Hughes Dep. at 132-133, 341-344, 354-357; Certain Insurers' Phase I Trial Exhibit No. 5, Designated Excerpts, Deposition of Elihu

## II. THE PLAN PROPONENTS' DISCOVERY RESPONSES AND DEPOSITION TESTIMONY ARE PARTY ADMISSIONS RELEVANT TO MATTERS AT ISSUE

The vast majority of the time spent before the Court in the Phase I proceeding consisted of Plan Proponents' counsel trying to explain to the Court the provisions of Section 7.15 of the Plan and making various assertions as to its operation and effect – literally for hours. In certain cases, such as to the assumption of policy obligations by the Trust, counsel made assertions clearly outside the language of the Plan. (*See, e.g.*, Phase I Trial Transcript, 6/23/09, Argument of Peter Lockwood, at p. 73.) Yet, paradoxically, in their objections to the Insurers' proffer of evidence, the Plan Proponents take the position that similar statements that they made in writing in responses to discovery, or in sworn testimony at depositions, are inadmissible.

By their arguments, the Plan Proponents must be deemed to have put their interpretation of the Plan language at issue, and their other statements regarding the operation must be deemed admissible as party admissions on the same matters pursuant to Fed. R. Evid. 801(d)(2). Moreover, at a minimum, such statements are admissible because they serve as an illustration to the Court of the lack of clarity in the Plan as presently proposed, such that the Plan Proponents are unable to provide clear answers on issues that impact the Court's assessment of whether the Plan adequately preserves the Insurers' rights and ability to assert coverage defenses. They are further support for the Insurers' objections. (*See, e.g.*, CNA Phase I Trial Brief, at 14.) As this Court noted in a discovery context:

---

Inselbuch, June 12, 2009 ("Inselbuch Dep."), at 20-26, 34-37, 190-203, 237-239, Ex. 2 (SEC 8-K), Ex. 2A (Signed SEC 8-K), Ex. 4 (Plan Ex. 4 - Trust Distribution Procedures ("TDP")); Certain Insurers' Phase I Trial Exhibit No. 6, Designated Excerpts, Deposition of Peter Van N. Lockwood, May 1 & 4, 2009 ("Lockwood Dep."), at 16-19, 36-38, 40-51, 225-230, 370-372, 381-383, 637, Ex. 3 (SEC 8-K); Certain Insurers' Phase I Trial Exhibit No. 7, Designated Excerpts, Deposition of Mark Peterson, June 9, 2009 ("Peterson Dep."), at 197, 228-229. The Court should also admit all designated deposition testimony and Exhibits listed on Addenda A and B.

180325v1                                                    7

> Yes, it's a contract between the parties and I think they've got the right to figure [it] out because it's going to be a matter of evidence, what the parties expect this contract to be, Yes, it's a written document, but it's customary in plan confirmation hearings that are contested to have parties explain the provisions in the plan and what their intended consequences and I don't see anything improper about that discovery.

*In Re Pittsburgh Corning Corp*, Tr., 2/19/04, at p. 117-118 (excerpt attached as Addendum C). As the Court indicated at that hearing, to the extent that the Plan Proponents were going to ask the Court to make findings or determinations about the Plan (such as they are doing here by seeking an order that the Plan is "insurance neutral"), then evidence as to the way the Plan Proponents expect the Plan to operate is relevant to the Court. (*Id.* at 124-125) [6]

Similarly, the response and testimony elucidate for the Court the inconsistencies discussed at argument with respect to the lack of Plan language clearly addressing the transfer, or retention, of policy obligations. Clearly, if the Debtors' Rule 30(b)(6) witness and the ACC representative who drafted the Plan provisions cannot point to language in the Plan addressing the issue of who assumes or retains the obligations under the policy, then those admissions are relevant to the Court's assessment of whether the Plan is insurance neutral, as argued. Moreover,

---

[6] The Plan Proponents' argument that the testimony regarding the Plan is inadmissible legal opinion is not only inconsistent with this Court's prior rulings respecting Plan discovery, it is also inconsistent with their own submissions (*see* Docket No. 22200, Bench Brief at 3) that recognize such testimony may be admissible to address ambiguities with respect to the legal language in question. Here, given the circular carve-outs and exceptions in the proposed neutrality language, and this Court's own observations at the Phase I hearing that provisions of Section 7.15 are confusing, the predicate for admission of such testimony is in any event established here. *See, e.g.*, *In re Texas General Petroleum Corp.*, 52 F.3d 1330, 1335-36 (5th Cir. 1995) (upholding a bankruptcy court's use of parol evidence to interpret a reorganization plan because the bankruptcy court found the reorganization plan to be ambiguous); *Siata Int'l U.S.A., Inc. v. Ins. Co. of N. Am.*, 498 F.2d 817, 819 (3rd Cir. 1974) (reversing a lower court that interpreted an ambiguous contract without the aid of extrinsic evidence, and stating that the lower court "should have received evidence to clear up the ambiguity instead of attempting to construe the instrument on its face"); 11 Samuel Williston & Richard A. Lord, A TREATISE ON THE LAW OF CONTRACTS § 30:7 (4th ed. 1999) ("Where a written contract is ambiguous, a factual question is presented as to the meaning of its provisions, requiring a factual determination as to the intent of the parties in entering the contract. Thus, the fact finder must interpret the contract's terms, in light of the apparent purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of intent and meaning.").

180325v1                                    8

the Insurers should have the right to demonstrate inconsistencies between the argument made to this Court and the responses made in discovery.

All of the Insurers' proffers regarding the Plan Proponents' statements regarding the operation of the Plan with respect to the Insurers' rights and obligations should be admitted under Rule 801(d) as party admissions.[7] *See, e.g., U.S. for Use and Benefit of Carter Equipment Co v. H.R. Morgan, Inc.*, 544 F.2d 1271 (5th Cir. 1977) ("Of course, statements made out of court by a party-opponent are universally deemed admissible when offered against him."), *amended on other grounds by U.S. for Use and Benefit of Carter Equipment Co v. H.R. Morgan, Inc.*, 554 F.2d 164 (5th Cir. 1977).

### III. PLAN PROPONENTS' BLANKET HEARSAY AND OTHER OBJECTIONS ARE FRIVOLOUS AND WITHOUT MERIT

In their zeal to exclude all evidence from the record in this Confirmation Proceeding, the Proponents have asserted repeated (almost universal) inappropriate hearsay and other objections to the Phase I Insurers' proffers. In addition to asserting that relevant party admissions should be excluded as "hearsay," miscellaneous "hearsay" objections are leveled as against exhibits such as

---

[7] The following proffers relating to the structure and operation of the Plan should be admitted on this basis: CNA Phase I Trial Exhibit No. 1, Admission No. 9, Interrogatory Nos. 1, 3, 4, 5, 10, 11, & 12; CNA Phase I Trial Exhibit No. 2, Admission No. 9, Interrogatory Nos. 3, 4, 5, 9, 10, 11, & 12; CNA Phase I Trial Exhibit No. 3, Admission No. 9, Interrogatory Nos. 3, 4, 5, 9, 10, 11, & 12; CNA Phase I Trial Exhibit No. 4, Designated Excerpts, Finke Dep. II at 47-49; CNA Phase I Trial Exhibit 5, Designated Excerpts, Lockwood Dep. at 105-106 & 506-507; Federal Exhibit 21, Admission Nos. 9, 11 & 12; GEICO/Republic/Seaton Phase I Trial Exhibit No. GRS-1/3/5, RFA Resp. Nos. 3, 4, 8, 9, 10, 12, 13, 14, 19, 20, 24, 25, 26, 28, 29, 30, 39, 40, 42 and Interrog. Resp. Nos. 1, 2; Certain Insurers' Phase I Trial Exhibit No. 2, Designated Excerpts, Finke Dep. I at 192-194, 197-199; Certain Insurers' Phase I Trial Exhibit No. 3, Designated Excerpts, Finke Dep. II at 13-14, 43-49, 54-58, 69-70, 75-91, 93-96, 116-118, 121-127, 201 289-294, 335, 337-340; Certain Insurers' Phase I Trial Exhibit No. 4, Designated Excerpts, Hughes Dep. at Ex. 3 (TDP); Certain Insurers' Phase I Trial Exhibit No. 5, Designated Excerpts, Inselbuch Dep. at 105-106, 224-228, 235-236; Certain Insurers' Phase I Trial Exhibit No. 6, Designated Excerpts, Lockwood Dep. at 25-31, 51-63, 65-68, 83-89, 103-110, 125-126, 129-130, 170-177, 213-214, 216-225, 230-233, 235-236, 248-253, 261-263, 321-324, 404-406, 565-566, 635, and exhibits related to Lockwood's testimony, including Ex. 6 (Plan Ex. 19 – Retained Causes of Action), Ex. 8 (Scotts Adversary Complaint), Ex. 9 (Debtors' Diagram Related to Scotts' Claims). The Court should also admit all designated deposition testimony and Exhibits listed on Addenda A and B.

a complaint brought by the Scotts Company filed in an adversary proceeding instituted in this very case (GRS-17); Objections filed in this case (GRS-18 and GRS-19); Ballot forms sent to Insurers (GRS-21) and Proofs of Claim (*e.g.,* GRS-20, Fireman's Fund Ex. 33). Those documents were clearly not offered for the truth of the matter asserted, but simply to reflect the statements in question were made and that claims have been filed.[8] (We note that the Court may in any event take judicial notice of its own records. *See, e.g., In Re Indian Palms Assoc.,* 61 F.3d 197, 204-205 (3d Cir. 1995) ("[I]t is not seriously questioned that the filing of documents in the case record provides competent evidence of certain facts – that a specific document was filed, that a party took a certain position, that certain judicial findings, allegations, or admissions were made."))

The Plan Proponents also even object to the Form 8-K dated April 6, 2008 that the Debtors filed with the Securities and Exchange Commission as "hearsay." That filing contained the terms of the settlement reached by the Debtors with the Asbestos Personal Injury Committee. (This was used as an exhibit, for example at the deposition of the Debtors' 30(b)(6) witness Richard Finke.) That filing is also an admission by a party and therefore is *not* hearsay under Rule 801(d). This was a filing reflecting matters affecting the financial condition of the Debtors and filed with a federal regulatory agency. *See, e.g., New York ex rel. Spitzer v. Saint Francis Hosp.,* 94 F. Supp. 2d 423 (S.D.N.Y. 2000) (finding that public documents filed with state regulatory agencies or released to the press were admissions of party opponent and thus not excludable as hearsay). The filing would also be admissible under the "business records" exception to hearsay for documents "kept in the course of regularly conducted business conducted activity" under F.R.E. 803(6). The filing was submitted to a federal regulatory agency

---

[8] In addition, the Court should admit Certain Insurers' Phase I Trial Exhibit No. 6, Designated Excerpts, Lockwood Dep. at 176-177, Ex. 8 (Scotts Adversary Complaint). The Court should also admit all designated deposition testimony and Exhibits listed on Addenda A and B.

as required by law and were thus made in the regular course of business. *See Taylor v. Baltimore & O.R. Co.*, 344 F.2d 281, 285 (2d Cir. 1965).[9] Moreover, the 8K and Term Sheet were utilized not for their content, but only to lay a foundation for questions regarding the lack of insurer participation in the deal that was reached. Nonetheless, the Plan Proponents' objection to a document upon which they signed off, filed with the government, released to investors and the public, and which is the basis for the Plan which they seek to have this Court confirm, is emblematic of the types of objections they raise to the proffers made by the Phase I Insurers.

Other "hearsay" objections are made to documents such as Zurich Exhibit 16, a declaration regarding authenticity offered ***pursuant to this Court's instruction*** that the insurers prepare such declarations in lieu of presenting live testimony. With respect to a more limited number of (again) unsupported authenticity and foundation objections, the Phase 1 Insurers submit that sufficient authenticity is established or foundation provided by the associated testimony that has been offered in connection with the exhibits in question, or as a matter of record in this proceeding. Certainly, nothing in the "objections" raised by the Plan Proponents establishes otherwise.

The Plan Proponents even object to Plan documents that were used as exhibits at depositions, noting that they "may" not now be the most current versions. (*E.g.*, Certain Insurers' Ex. Nos. 4 & 5). The Plan Proponents have not, however, asserted or explained whether the fact that the document *may* have been updated has any significance whatsoever with respect to the testimony or the portions addressed. Nonetheless, the Phase I Insurers have no objection to the substitution of any documents in this regard that are actually identified by the

---

[9] For these reasons, the Court should admit Certain Insurers' Phase I Trial Exhibit No. 2, Designated Excerpts, Finke Dep. I at 179-184, Ex. 12 (SEC 8-K); Certain Insurers' Phase I Trial Exhibit No. 3, Designated Excerpts, Finke Dep. II at 24-28, 37, Ex. 3 (SEC 8-K); Certain Insurers' Phase I Trial Exhibit No. 6, Designated Excerpts, Lockwood Dep. at 15-19, 36-38, 370-372, Ex. 3 (SEC 8-K). The Court should also admit all designated deposition testimony and Exhibits listed on Addenda A and B.

Plan Proponents to be out of date (though such substitution may well cause confusion with respect to references in the transcripts.)

### IV. EVIDENCE PROFFERS RELATING TO THE TAC ETHICAL CONFLICTS ISSUE SHOULD BE HELD IN ABEYANCE

The Phase I Insurers included in their designations certain evidence related to the ethical conflicts of the proposed members of the Trust Advisory Committee. During the course of the Phase I Hearing, the Court reserved certain aspects of the issue of standing with respect to ethical conflicts relating to proposed appointments to the Trust Advisory Committee. That is, the Court advised that if the Plan were determined to be "insurance neutral" with respect to the matters addressed in Phase I, then the Court would address whether the insurers or their counsel nonetheless had standing to raise ethical violations. Certain evidence has been proffered in connection with the Court's reservation of consideration of that issue, including the 2019 Statements of the TAC members and testimony.[10] Such evidence establishes the TAC members' representation of multitudes of individual claimants, to whom they presently owe ethical obligations to represent zealously and maximize their recovery, while at the same time owing fiduciary obligations to Trust beneficiaries, including future claimants and other parties who would claim against the Trust. The Insurers request that the Court reserve evidentiary rulings on those proffers until those matters are before the Court.

---

[10] The Court should thus reserve ruling on the following Exhibits: Insurers' Combined I-12 through I-15; CNA Phase I Trial Exhibit 5, Designated Excerpts, Lockwood Dep. at 199-200, 381-383, 506-507, & 603; Certain Insurers' Phase I Trial Exhibit No. 3, Designated Excerpts, Finke Dep. II at 59-69; Certain Insurers' Phase I Trial Exhibit No. 6, Designated Excerpts, Lockwood Dep. at 120-125, 196-209, 213-214, 221-225, 240-244.

## CONCLUSION

Based upon the foregoing, Certain Insurers respectfully submit that the Plan Proponents' Motions to Exclude Phase I Exhibits and Deposition Designations (Docket Nos. 22329 and 22331) be (1) deferred with respect to proffers of evidence relevant to Phase II of these matters, as set forth above; (2) deferred as to all other proffers pending further discussions between the Plan Proponents and Insurers respecting whether compromise neutrality language can be agreed to; and (3) in the event that no agreement can be reached, denied in all other respects.

Dated: July 13, 2009
      Wilmington, Delaware

ROSENTHAL, MONHAIT & GODDESS, P.A.

 /s/ Edward B. Rosenthal
Edward B. Rosenthal (Bar No. 3131)
P.O. Box 1070
Wilmington, Delaware 19899
Telephone: (302) 656-4433x6
Facsimile: (302) 658-7567

-and-

GOODWIN PROCTER LLP
Daniel M. Glosband (*pro hac vice*)
Michael S. Giannotto (*pro hac vice*)
Brian H. Mukherjee (*pro hac vice*)
Exchange Place
Boston, Massachusetts 02109
Telephone: (617) 570-1000
Facsimile: (617) 523-1231

-and-

FORD MARRIN ESPOSITO
WITMEYER & GLESER, L.L.P.
Elizabeth DeCristofaro (*pro hac vice*)
Wall Street Plaza
23rd Floor
New York, New York 10005-1875
Telephone: (212) 269-4900
Facsimile: (212) 344-4294

*Attorneys for Continental Casualty Company and Continental Insurance Company and related subsidiaries and affiliates*


DRINKER BIDDLE & REATH LLP

/s/ David P. Primack
Warren T. Pratt (4334)
David P. Primack (4449)
1100 N. Market Street, Suite 1000
Wilmington, DE 19801-1254
Telephone: 302-467-4200

- and –

Michael F. Brown (*pro hac vice*)
Jeffrey M. Boerger (*pro hac vice*)
One Logan Square
Philadelphia, PA 19103-6996
Telephone: 215-988-2700

*Attorneys for Government Employees Insurance Company, Republic Insurance Company n/k/a Starr Indemnity & Liability Company, and Seaton Insurance Company*

/s/ Jeffrey C. Wisler
Jeffrey C. Wisler (#2795)
Marc J. Phillips (#4445)
CONNOLLY BOVE LODGE &
    HUTZ LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141 Telephone
(302) 658-0380 Facsimile

OF COUNSEL:
Richard A. Ifft (*pro hac vice*)
Karalee C. Morell
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7170 Telephone
(202) 719-7049 Facsimile

*Attorneys for Zurich Insurance Company and Zurich International (Bermuda) Ltd.*

COZEN O'CONNOR

/s/ *Barry M. Klayman*
Barry M. Klayman (DE No. 3676)
1201 N. Market Street
Suite 1400
Wilmington, DE 19801
(302) 295-2035 Telephone
(215) 701-2209 Facsimile

- and -

180325v1

15

William P. Shelley (PA ID 40875)
Jacob C. Cohn (PA ID 54139)
Ilan Rosenberg (PA ID 89668)
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000 Telephone
(215) 665-2013 Facsimile

*Attorneys for Federal Insurance Company*

STEVENS & LEE, P.C.

/s/ *John D. Demmy*
John D. Demmy (DE Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Email: jdd@stevenslee.com

-and-

Leonard P. Goldberger
Marnie E. Simon
(Members PA Bar)
1818 Market Street, 29th Floor
Philadelphia, PA 19103-1702
Telephone: (215) 751-2864/2885
Telecopier: (610) 371-7376/8505
Email: lpg@stevenslee.com
Email: mes@stevenslee.com

Attorneys for *FIREMAN'S FUND INSURANCE COMPANY, ALLIANZ S.p.A., f/k/a RIUNIONE ADRIATICA DI SICURTA, AND ALLIANZ SE, f/k/a ALLIANZ AKTIENGESELLSCHAFT*

Eileen T. McCabe, pro hac vice
MENDES & MOUNT LLP
750 Seventh Avenue
New York, NY 10019
Telephone: (212)261-8254
Facsimile: (302)235-2536
eileen.mccabe@mendes.com

- and -

Michael A. Shiner, pro hac vice
TUCKER ARENSBERG
1500 One PPG Place
Pittsburgh, PA 15222-5401
Telephone: (412) 566-1212
Facsimile: (412) 594-5619
mshiner@tuckerlaw.com

John S. Spadaro (No. 3155)
724 Yorklyn Road, Suite 375
Hockessin, DE 19707
Telephone: (302) 235-7745
Facsimile: (302) 235-2536
jspadaro@johnsheehanspadaro.com

*Counsel for AXA Belgium as successor to Royal Belge SA*