## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Objection Deadline: July 13, 2009** |
| | ) | **Related to Docket Nos. 20872 and 21783** |

**MARYLAND CASUALTY COMPANY'S BRIEF IN SUPPORT OF ITS
PHASE II OBJECTIONS TO FIRST AMENDED JOINT PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE
OF W.R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF
ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE
CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE
OF EQUITY SECURITY HOLDERS DATED AS OF FEBRUARY 27, 2009**

Jeffrey C. Wisler (#2795)
Marc J. Phillips (#4445)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141 Telephone
(302) 658-0380 Facsimile

OF COUNSEL:
Edward J. Longosz, II
ECKERT SEAMANS CHERIN &
     MELLOTT, LLC
1747 Pennsylvania Avenue, N.W.
Suite 1200
Washington, DC 20006
(202) 659-6600 Telephone
(202) 659-6699 Facsimile

Richard A. Ifft
Karalee C. Morell
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
(202) 719-7170 Telephone
(202) 719-7049 Facsimile

*Attorneys for Maryland Casualty
Company*

Dated: July 13, 2009

# TABLE OF CONTENTS

Page

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS .......................... 1

SUMMARY OF ARGUMENT ......................................................................... 2

STATEMENT OF FACTS ............................................................................. 3

ARGUMENT ............................................................................................. 4

    I.     MCC is Fully Protected Under the First Amended Plan............................ 4

    II.    First Amended Plan Mis-Classifies the MCC Claims ................................ 6

    III.   First Amended Plan Does Not Meet the Fair and Equitable
          Requirments of the Bankruptcy Code.......................................................... 8

          A.     First Amended Plan fails to Provide Fair and Equitable
                   Treatment to the MCC Claims....................................................... 8

          B.     First Amended Plan Violates The Absolute Priority Rule............. 9

    IV.   First Amended Plan Unfairly Discriminates Against the MCC Claims ... 10

    V.    First Amended Plan Contains Improper Exculpation and Release
          Provisions................................................................................................. 12

          A.     Exculpation Provision................................................................... 12

          B.     Release Provision.......................................................................... 13

    VI.   Reservation of Rights and Joinder ........................................................... 15

CONCLUSION........................................................................................... 16

## TABLE OF AUTHORITIES

Page

**Cases**

*ACandS, Inc.*, 311 B.R. 36 (Bankr. D. Del. 2004) ............................................................ 9

*Al Tech Speciality Corp. v. Allegheny Int'l, Inc. (In re Allegheny Int'l, Inc.)*, 126 B.R. 919 (W.D. Pa. 1991) ................................................................................................................... 11

*Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203 (3d Cir. 2000) ..................................................................................................................... 13

*In re Armstrong World Indus., Inc.*, 432 F.3d 507 (3d Cir. 2005) ...................................... 9

*In re Congoleum Corp.*, 362 B.R. 167 (Bankr. D.N.J. 2007) .................................. 7, 13, 14

*In re Exide Techs.*, 303 B.R. 48 (Bankr. D. Del. 2003) ................................................. 4, 14

*In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001).................... 4, 13

*In re Harvard Indus.*, 138 B.R. 10 (Bankr. D. Del. 1992)................................................ 11

*In re Hemingway Transport, Inc.*, 993 F.2d 915 (1st Cir. 1993) ...................................... 11

*In re Insilco Techs., Inc.*, 480 F.3d 212 (3d Cir. 2007)....................................................... 9

*In re Summit Metals, Inc.*, 379 BR 40 (Bankr. D. Del. 2007) ........................................... 7

*In re Touch America Holdings, Inc.*, 381 B.R. 95 (Bankr. D. Del. 2008) ........................ 11

*In re WebSci Techs., Inc.*, 234 Fed. Appx. 26 (3d Cir. 2007)............................................. 9

*In re Zenith Elecs. Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999) ......................................... 14

**Statutes**

11 U.S.C. §524(g)(4)(A)(ii) ......................................................................... 5, 6, 11

11 U.S.C. §524(g)(4)(B)(ii) (V) ...................................................................... 8

11 U.S.C. § 1122 ................................................................................ 7, 12, 13

11 U.S.C. § 1123(a)(4) ............................................................................. 9, 12

11 U.S.C. § 1129 ....................................................................................... 4

11 U.S.C. § 1129(a)(3) ................................................................................. 9

11 U.S.C. § 1129(b)(2)(B)(ii) ..................................................................... 9, 10

11 U.S.C. § 502(e)(1)(B) .......................................................................... 10, 11

**Other References**

7 *Collier on Bankruptcy* 15th ed. rev ................................................................. 7

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

The above-captioned debtors ("Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware ("Court") on April 2, 2001.

On or about February 27, 2009, Debtors filed the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders dated as of February 27, 2009* [Docket No. 20872] ("First Amended Plan").

By Order dated March 9, 2009, the Court approved the *Debtors' Disclosure Statement for the First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders dated as of February 27, 2009* ("Disclosure Statement").    The Disclosure Statement includes the proposed First Amended Plan.

On or about May 20, 2009, Maryland Casualty Company ("MCC") filed its objection [D.I. 21783] ("MCC Objection") to the First Amended Plan. This is MCC's brief in support of the MCC Objection.[1]

---

[1] MCC hereby reserves the right to amend and/or supplement this Brief based upon, *inter alia*, any arguments made by the Plan Proponents, the Libby Claimants, Scotts, BNSF or any other parties in their Phase II briefs.

## SUMMARY OF ARGUMENT

The First Amended Plan fully and permanently protects MCC from and against any and all Asbestos PI Claims,[1] including any and all third party claims arising from or relating to the Debtors, their products or their operations. However, the First Amended Plan fails to comply with various confirmation requirements of section 1129 of the Bankruptcy Code and therefore cannot be confirmed. Specifically, the First Amended Plan:

1.      Mis-classifies the MCC Claims;

2.      Fails to provide fair and equitable treatment to the MCC Claims;

3.      Violates section 1129(b)(2)(B)(ii) of the Bankruptcy Code;

4.      Unfairly discriminates against the MCC Claims; and

5.      Contains releases and exculpations that are impermissible under applicable law.[2]

---

[1] Capitalized terms not defined herein have the meaning defined in the First Amended Plan.

[2] MCC also objects to the First Amended Plan based on feasibility. That argument is governed by a separate briefing schedule and, accordingly, is not addressed herein.

## STATEMENT OF FACTS

Prior to 1973, MCC issued certain general liability insurance policies to Debtors. Under separate settlement agreements ("MCC Settlement Agreements"), Debtors and MCC agreed to settle all litigation between them regarding insurance coverage provided by those policies for, *inter alia*, asbestos-related claims for which Debtors demanded coverage. The MCC Settlement Agreements addressed, *inter alia*, all claims by third parties arising from or relating to the exposure to asbestos for which coverage might be sought under the policies. Under the MCC Settlement Agreements, all of MCC's obligations for the defense and indemnification of asbestos-related claims under the policies were fully and finally exhausted. Further, the MCC Settlement Agreements obligated W.R. Grace & Co.-Conn and all of its subsidiaries and successors to, *inter alia*, indemnify and hold MCC harmless from and against all future liability, loss, cost, or expense arising from asbestos-related claims ("MCC Indemnity Rights").[3]

MCC timely filed sixty-two (62) separate proofs of claim ("Proofs of Claim") – one proof of claim against each of the sixty-two (62) Debtors. Each Proof of Claim asserts separate, independent claims against the respective Debtor in whose bankruptcy case the Proof of Claim was filed. The Proofs of Claim, in the aggregate, do not seek duplicate recovery. Rather, they properly and accurately assert claims for the Debtors' joint and several liability for the MCC Indemnity Rights (collectively "MCC Claims").

---

[3] *See, e.g.* May 6, 2009, Deposition of Jeffrey Posner, at page 258:

Q. "And in connection with the settlement agreements with Maryland Casualty specifically, you would agree that Grace has an ongoing obligation to indemnity or to provide indemnity consistent with those settlement agreements. Is that correct?"

A. "Yes."

## ARGUMENT

Under the First Amended Plan, MCC is fully and permanently protected from and against any and all Asbestos PI Claims, including any and all third party claims arising from or relating to the Debtors, their products or their operations. However, the First Amended Plan's treatment of the MCC Claims is inadequate and does not comply with section 1129(a) of the Bankruptcy Code. Section 1129(a) of the Bankruptcy Code contains the statutory requirements which must be met as a prerequisite to confirmation of a plan of reorganization. 11 U.S.C. § 1129. The requirements of section 1129(a) of the Bankruptcy Code are conjunctive, requiring that each and every element specified therein be met prior to confirmation of a plan. *Id.* It is well-established that the proponent of a plan of reorganization bears the burden of proving by a preponderance of the evidence that each of the requirements contained in section 1129(a) has been satisfied. *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 598-99 (Bankr. D. Del. 2001); *In re Exide Techs.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003). Therefore, the First Amended Plan cannot be confirmed.

## I.    MCC is Fully Protected Under the First Amended Plan

MCC is a Settled Asbestos Insurance Company and is, under the First Amended Plan, fully and permanently protected by the Asbestos Insurance Channeling Injunction from any and all Asbestos PI Claims, including, *inter alia*, any and all third party claims against MCC ("Third Party Claims") arising from or relating to Debtors, their products or their operations. The Third Party Claims include all claims raised or asserted against MCC by Scotts Company LLC ("Scotts"), Burlington Northern Santa Fe Railroad ("BNSF") and the Libby Claimants. The Third Party Claims are derivative claims,

4

implicate the conduct and liability of the Debtors, and fully trigger the MCC Indemnity Rights.[4] Although alleged to be "independent" claims against MCC, these claims are not independent at all; they are claims based on the Debtors' conduct and operations that have been creatively crafted to implicate MCC,[5] and this Court has already seen through transparent litigation tactics.[6]

MCC is fully entitled to the protection provided by the Asbestos PI Channeling Injunction because, *inter alia*, it falls within the scope of Section 524(g)(4)(A)(ii), and because adequate consideration has been and will be provided in exchange for such protection. Specifically, MCC is a third party who is identifiable from the terms of the Asbestos PI Channeling Injunction, and is alleged to be directly or indirectly liable for the conduct of, claims against and demands upon the Debtor arising by reason of MCC's

---

[4] *See, e.g. Brief of Appellees* [Debtors] dated March 3, 2003 (U.S. District Court, D. Del. C.A. No. 02-1549, Docket No. 12), at pg. 10: "Any claims made by the Libby Plaintiffs against MCC trigger the release and contractual indemnity clause in the Settlement Agreement;" at pg. 11: "It is Grace's asbestos dust, Grace's dust control system and Grace's maintenance thereof that have allegedly caused the Libby Plaintiff's injuries;" at pg. 25: "Maryland's alleged liability is wholly derivative of the Libby Plaintiffs' claims against Grace and implicates the indemnification rights of Maryland under the [Settlement] Agreement."

[5] *See, e.g. Debtors' Sur-Reply to Carol Gerard's Reply in Support of her Motion to Clairify the Scope of, or in the alternative, to Modify the Preliminary Injunction*, dated March 15, 2002 (U.S. Bankruptcy Court, D. Del. Case No. 01-01139, Adv. Pro. No. 01-771, Docket No. 92), at pg. 2: "Indeed, Ms. Gerard's alleged 'independent' claim against Maryland for negligence involves actions that generally only Grace, not Maryland, could have taken such as: providing facilities to prevent exposure to asbestos dust; controlling asbestos dust on Grace's premises; or exercising reasonable care in the operation of the Libby Plant. Maryland could not have taken these actions independently of Grace." . . . In fact, to the extent such actions were taken, they would have been performed at Grace's direction, with Grace determining and controlling the scope of Maryland's work."

[6] *See, e.g. Transcript of Hearing held on August 26, 2002*, dated September 9, 2002 (U.S. Bankruptcy Court, D. Del. Case No. 01-01139, Docket No. 2670), p. 15 at 15-18: THE COURT: "Regardless of what the documentation says or doesn't say, the question is whether or not Maryland was a volunteer, or somehow or other a principal, as opposed to an agent, in undertaking some obligation. Now, maybe I'm missing documents. But I got I think two binders full that were submitted to me in Pittsburgh. I read every word of those documents. There is nothing in the documents that were sent to me that establishes that Maryland was acting as anything other at any time than as an agent for the Debtor. Nothing."

previous provision of insurance to the Debtors.[7]   11 U.S.C. §524(g)(4)(A)(ii).

Additionally, MCC made a substantial monetary payment to the Debtors under the MCC

Settlement Agreements, and the MCC Indemnity Rights received in exchange for that

monetary payment will be channeled under the First Amended Plan to the Asbestos PI

Trust, providing substantial consideration and benefit to the Estate.[8]

The Libby Claimants, BNSF and Scotts have argued that MCC should not be fully

protected from their respective claims by the Asbestos PI Channeling Injunction.  This

position is neither factually nor legally correct.  On the contrary, notwithstanding any

theoretical "independent" claims asserted and/or articulated by these parties, all such

claims will be fully and properly enjoined by the Asbestos PI Channeling Injunction.

MCC reserves the right to file a reply brief in response to any brief filed by these parties

that argues otherwise.

## II.   First Amended Plan Mis-Classifies the MCC Claims

The First Amended Plan mis-classifies the MCC Claims as solely Class 6 Claims

in violation of section 1122 of the Bankruptcy Code.  The MCC Claims may include

---

[7] *See, e.g. Debtors' Sur-Reply to Carol Gerard's Reply in Support of her Motion to Clairify the Scope of, or in the alternative, to Modify the Preliminary Injunction,* dated March 15, 2002 (U.S. Bankruptcy Court, D. Del. Case No. 01-01139, Adv. Pro. No. 01-771, Docket No. 92), at pg. 2: "Ms. Gerard's claims against Maryland relate to Grace's asbestos liabilities at the Libby Plant, which are covered by the Maryland Policies."

[8] *See, e.g.* May 4, 2009, Deposition of Peter Van N. Lockwood, at 519-522: "The basis, which I take it which is what you are asking for, for Maryland Casualty being a protected party to this Plan is that in the past, Maryland Casualty Company has paid a lot of money to Grace and entered into a settlement agreement with Grace which releases that coverage and which Grace indemnifies it against claims.  As I testified, I believe, on Friday, Grace, as part of this deal, Grace has had two positions that it has taken that we have . . . accepted. Number one is a claim for indemnity from a settled insurer based on claims against that insurer that are asbestos personal injury claims against or arising out of Grace is something that has to be channeled to the Trust because it fits within the definition of an asbestos personal injury claim under 524(g), and that in order that Grace be protected from such indemnity claims, the roughly $3 billion that Grace and various related parties are paying to this Plan is, in part, on behalf of those settled insurers.... [T]he benefit to the Grace Estate is that it eliminates potential claims by Maryland Casualty Company against the Debtor and its Estate."

claims that should be separately classified from Class 6 Claims and should be treated at least as favorably as Class 9 Claims.

It is a fundamental tenet of the Bankruptcy Code that a plan may place a claim in a particular class only if such a claim is *substantially similar* to the other claims contained in that class." 11 U.S.C. § 1122(a) (emphasis added).  In reviewing the propriety of a classification, the most important consideration "is the legal character of the claim as it relates to the assets of the debtor." *In re Congoleum Corp.,* 362 B.R. 198, 203 (Bankr. D.N.J. 2007). "Thus . . . only the nature of the claim . . . is relevant to classification, not the identity of the holder of the claim." 7 *Collier on Bankruptcy* 15th ed. rev. ¶ 1122.03[3].

MCC Claims that could have arisen from Third Party Claims will now be enjoined by the Asbestos PI Channeling Injunction.  Thus, the MCC Claims are within the "Channeling Circle" created by the First Amended Plan and its Asbestos PI Trust, and will never actually arise.  However, to the extent that the MCC Indemnity Rights are triggered by a Third Party Claim that is not fully and permanently enjoined by the Asbestos PI Channeling Injunction,[9] the resulting MCC Claim is not within the "Channeling Circle".  These potential "surviving" MCC Claims are not substantially similar to other Class 6 Claims, since they will be, by definition, outside the scope of Asbestos PI Claims.  Accordingly, such claims can not be classified as Class 6 Claims, but must be treated like other non-Class 6 contract claims.  As unsecured claims, any such MCC Claims must be placed in Class 9. *See In re Summit Metals, Inc.*, 379 BR 40, 56 (Bankr. D. Del. 2007) (where an agreement is executed prepetition, any right of

---

[9] MCC asserts that no such claims exist, but the Libby Claimants have argued otherwise.

indemnification arising from that agreement is a prepetition unsecured claim). Absent such reclassification, the First Amended Plan cannot be confirmed.

## III.    First Amended Plan Does Not Meet the Fair and Equitable Requirments of the Bankruptcy Code

### A.    First Amended Plan fails to Provide Fair and Equitable Treatment to the MCC Claims

The First Amended Plan does not provide for the fair and equitable treatment of indemnity claims that may arise and/or be liquidated after the Effective Date of the First Amended Plan.

Pursuant to the First Amended Plan, the MCC Claims are classified as Indirect PI Trust Claims that are to be channeled to the Asbestos PI Trust and resolved pursuant to the Asbestos PI TDP ("TDPs"). Assuming arguendo that the MCC Claims are Indirect PI Trust Claims, the TDPs treat those claims unfairly. Specifically the TDPs add unreasonable expense, time and uncertainty, to the claims process, and unfairly discriminate against Indirect PI Trust Claims.[10]

In addition, certain Indirect PI Claims are placed in a less favorable position in the FIFO queue for being paid than Direct PI Claims.[11] Section 524(g)(2)(B)(ii)(V) of the Bankruptcy Code specifically prohibits such disparate treatment of claims based upon timing, and requires that the plan must reasonably assure that claims and demands

---

[10] *Compare, e.g.* treatment of Direct Asbestos PI Claims under Section 5.1 of the TDPs.

[11] For instance, Post-Effective Date Direct PI Claims are placed in the FIFO queue as of the date they are filed, while Insurance-Related TDP Claims and Indemnified Insurer TDP Claims are only placed in the FIFO queue after an agreement is reached with the Asbestos PI Trust as to the amount due or after and ADR award is made.

involving similar claims be paid in substantially the same manner. *See ACandS, Inc.*, 311 B.R. 36, 42 (Bankr. D.Del. 2004).

Finally, the TDPs fail to clarify the payment amount and payout percentage the Indirect PI Trust Claims may receive and fail to clarify the procedures pursuant to which Indirect PI Trust Claims will be processed. Section 5.6 of the TDPs unfairly provides that Indirect PI Trust Claims shall be processed in accordance with procedures to be developed and implemented by the Trustees. Thus, the First Amended Plan fails to provide fair and equitable treatment to the MCC Claims in accordance with sections 1123(a)(4) and 1129(a)(3) of the Bankruptcy Code and cannot be confirmed.

      B.      <u>First Amended Plan Violates The Absolute Priority Rule</u>

The First Amended Plan violates the absolute priority rule of 11 U.S.C. § 1129(b)(2)(B)(ii).

To meet the "fair and equitable" requirement of section 1129 of the Bankruptcy Code, the First Amended Plan must comply with the absolute priority rule. Specifically, each creditor must receive the full value of the allowed amount of its claim, or alternatively, creditors in junior classes may not receive any distribution. *See* 11 U.S.C. § 1129(b)(2)(B)(ii); *see also, In re Armstrong World Indus., Inc.,* 432 F.3d 507, 518 (3d Cir. 2005) (affirming denial of confirmation because plan violated absolute priority rule). Thus, in its simplest terms, the absolute priority rule "requires that senior classes receive full compensation for their claims before other [junior] classes can participate." *In re WebSci Techs., Inc.*, 234 Fed. Appx. 26, 30 (3d Cir. 2007); *see also In re Insilco Techs., Inc.*, 480 F.3d 212, 218 n.10 (3d Cir. 2007).  ("Even in the flexible world of Chapter 11

reorganizations, the absolute priority rule, 11 U.S.C. § 1129 (b)(2)(B), requires that equity holders receive nothing unless all creditors are paid in full.")

The First Amended Plan violates the absolute priority rule in that it impairs the rights of holders of Class 6 Claims, but leaves unaltered the legal, equitable, and contractual rights of the holders of Class 9 Claims. Additionally, the First Amended Plan permits holders of the Debtors' equity to retain value. With this clear violation of the absolute priority rule, the First Amended Plan can not be confirmed.

## IV.    First Amended Plan Unfairly Discriminates Against the MCC Claims

The First Amended Plan, in conjunction with the Debtor's independent actions, unfairly discriminates against the MCC Claims in violation of sections 1122 and 1123(a)(4) of the Bankruptcy Code. Specifically, the Debtors have singled out MCC by seeking to disallow the MCC Claims pursuant to section 502(e)(1)(B) of the Bankruptcy Code. This action is in direct conflict with the letter and spirit of the First Amended Plan: As made clear in the deposition of Peter Van N. Lockwood on May 1, 2009 ("Lockwood Dep."), Asbestos PI Claims are not subject to 502(e) disallowance under the First Amended Plan:

> Question: Just so I understand you, asbestos PI claims then are not subject to 502(e) disallowance under the Plan; is that correct?
>
> Mr. Lockwood: This is correct. They are being sent to a Trust under 524(g). And, in my legal view, how the 524(g) Trust handles those after confirmation is not a 502 allowance process.

Lockwood Dep. 73-74: 18-24, 2-7.

Section 502(e)(1)(B) of the Bankruptcy Code states that "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor . . .

10

to the extent that – such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution." 11 U.S.C. § 502(e)(1)(B). Section 502(e)(1)(B) of the Bankruptcy Code was enacted "to preclude redundant recoveries on identical claims against insolvent estates in violation of [ ] fundamental code policy . . . ." *In re Touch America Holdings, Inc.*, 381 B.R. 95, 109 (Bankr. D. Del. 2008) (citing *Juniper Dev. Group v. Kahn* (*In re Hemingway Transport, Inc.*), 993 F.2d 915, 923 (1st Cir. 1993)); *see also In re Harvard Indus.*, 138 B.R. 10, 12 (Bankr. D. Del. 1992) (The fundamental purpose of section 502(e)(1)(B) is to "prevent[] double payment by the estate of the same underlying liability"); *Al Tech Speciality Corp. v. Allegheny Int'l, Inc. (In re Allegheny Int'l, Inc.)*, 126 B.R. 919, 923 (W.D. Pa. 1991), *aff'd*, 950 F.2d 721 (3d Cir. 1991) ("Section 502(e)(1)(B) is not a means of immunizing debtors from contingent liability, but instead protects debtors from multiple liability on contingent debts). In essence, section 502(e)(1)(B) of the Bankruptcy Code is aimed at preventing "double dipping" from the Debtors' estates.

The section 524(g) injunction contained in the First Amended Plan purports to eliminate the "co-liability" element of section 502(e)(1)(B) of the Bankruptcy Code. Upon confirmation of the First Amended Plan, all present and future Asbestos PI Claims will be channeled to the Asbestos PI Trust under section 524(g) of the Bankruptcy Code. The Asbestos PI Trust will be the sole and exclusive recourse for the Holders of Asbestos PI Claims and all Asbestos PI Claims will be paid solely from the assets of the Asbestos PI Trust. If the First Amended Plan is confirmed, MCC will have no claims to assert against the Debtors' estates as all claims have been channeled to the Asbestos PI Trust. As Mr. Lockwood stated,

> [W]ith respect . . . pre-petition settlement agreements . . . the only
> remaining obligation, quote/unquote, that I am aware of under those
> agreements is a potential indemnity obligation on the part of Grace
> in the event that somebody successfully or attempts to sue a settled
> insurer. The Plan channels to the Trust any claims against those
> settled insurers, and, therefore, there should never be any indemnity
> claim because the claim gets cutoff from the insurer before it reaches
> the point where the insurer has paid money, which would trigger an
> indemnity right.

Lockwood Dep. 111-12: 6-24, 1-5.

The MCC Claims are the only claims to which the Debtors have objected under section 502(e) of the Bankruptcy Code. By singling out the MCC Claims, and by acting in contravention of the terms of the First Amended Plan, the Debtors fail to treat similarly situated creditors in the same manner as required by sections 1122(b) and 1123(a)(4) of the Bankruptcy Code. Without such equal treatment the First Amended Plan can not be confirmed.

**V.     First Amended Plan Contains Improper Exculpation and Release Provisions**

      A.     <u>Exculpation Provision</u>

Section 11.9 of the First Amended Plan is overly broad and impermissible under applicable law. This exculpation provision purports to immunize a massive range of entities and persons from a spectrum of liability. Additionally, this provision provides immunity from liability for activities related to the "administration of this Plan or the property to be distributed under this Plan." This immunity is not only overly broad, but would also impermissibly serve to immunize parties from prospective liability.

Non-consensual exculpation provisions such as Section 11.9 may be approved only in an "extraordinary" case if all of the following four factors are present: (i) the non-consensual release is necessary to the success of the reorganization; (ii) the releasees

12

have provided a critical financial contribution to the debtor's plan; (iii) the releasees' financial contribution is necessary to make the plan feasible; and (iv) the release is fair to the non-consensual creditors, *i.e.,* whether the non-consensual creditors received reasonable compensation in exchange for the release. *Genesis*, 266 B.R. at 607-08. These factors incorporate those identified by the Third Circuit in *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 214 (3d Cir. 2000) ("The hallmarks of permissible non-consensual releases are fairness, necessity to the reorganization, and specific factual findings to support these conclusions.").

The Plan Proponents have offered no factual support to justify such far ranging protections. *See In re Congoleum Corp.*, 362 B.R. 167, 190, 195-96 (Bankr. D.N.J. 2007); *Genesis*, 266 B.R. at 606-07. On the contrary, although some of the exculpated parties may have provided financial contribution to the First Amended Plan, there is no evidence that this is true for each and every party for whom the Debtors are seeking immunity. Additionally, Class 6 Claims will not be reasonably compensated in exchange for the releases. Section 11.9 of the First Amended Plan cannot be approved.

B.    Release Provision

Section 8.8.7 of the First Amended Plan triggers releases that are impermissible under applicable law. Though a portion of this release provision purports to be consensual, "consensual releases cannot be based solely on a vote in favor of a plan." *Congoleum*, 362 B.R. at 194. "For a release to be consensual, the creditor must have unambiguously manifested assent to the release of the nondebtor from liability of its debt." *Id.* Given the immense complexity of the First Amended Plan, the inclusion of a consent-to-release statement on the ballot "is of questionable value." *Id.*

13

Additionally, section 8.8.7 provides that "each Holder of a Claim or Equity Interest who receives or retains any property under this Plan shall also be deemed to unconditionally release the Fresenius Indemnified Parties . . ." To determine whether this non-consensual release is fair, this Court must consider the *Zenith* factors to determine whether the equities weigh in favor of approval. *See In re Exide Techs.*, 303 B.R. 48, 73 (Bankr. D. Del. 2003) (citing to *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999)). In *Zenith*, Judge Walrath held that, notwithstanding section 524(e), a plan may provide for releases by a debtor of non-debtor third parties under certain limited circumstances, after consideration of five factors:

(1)    the identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate;

(2)    substantial contribution by the non-debtor of assets to the reorganization;

(3)    the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success;

(4)    an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes "overwhelmingly" votes to accept the plan; and

(5)    provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction.

*Id.* at 110.

The Plan Proponents have offered no factual support to justify the release in Section 8.8.7. On the contrary, *e.g.*, the affected class of claims (Class 6 Claims) are not being substantially paid under the First Amended Plan.   Thus, Section 8.8.7 of the First Amended Plan cannot be approved.

## VI.    Reservation of Rights and Joinder

MCC hereby reserves the right to amend and/or supplement this Brief based upon: (i) ongoing discovery relating to the First Amended Plan; (ii) any arguments made by the Plan Proponents, the Libby Claimants, Scotts, BNSF or any other parties in their Phase II briefs; and (iii) any amendment to or modification of the First Amended Plan.    In addition, MCC hereby joins arguments made by other parties-in-interest in their Phase II briefs to the extent such objections are not inconsistent with MCC's interests, and the positions set forth herein, including but not limited to the proposed selection of TAC members and trustees of the Asbestos PI Trust.

## CONCLUSION

WHEREFORE, for all of the forgoing reasons, MCC respectfully requests that the Court deny confirmation of the First Amended Plan, except to the extent the First Amended Plan is modified consistent with this Brief, and grant MCC such further and additional relief and the Court may deem just and proper.

Dated: July 13, 2009

CONNOLLY BOVE LODGE & HUTZ LLP

Jeffrey C. Wisler (#2795)
Marc J. Phillips (#4445)
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE  19899
(302) 658-9141 Telephone
(302) 658-0380 Facsimile

OF COUNSEL:

Edward J. Longosz, II
Eckert Seamans Cherin & Mellott, LLC
1747 Pennsylvania Avenue, N.W.
Suite 1200
Washington, DC  20006
(202) 659-6600 Telephone
(202) 659-6699 Facsimile

Richard A. Ifft
Karalee C. Morell
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
(202) 719-7170 Telephone
(202) 719-7049 Facsimile

*Attorneys for Maryland Casualty Company*

#696794v1

16