IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-1139(JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Related to D.I. No. 20872** |

# TRIAL BRIEF OF LONGACRE MASTER FUND, LTD. AND LONGACRE CAPITAL PARTNERS (QP), L.P. OBJECTING TO CONFIRMATION OF THE FIRST AMENDED CHAPTER 11 PLAN OF W.R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL <u>COMMITTEE OF EQUITY SECURITY HOLDERS DATED FEBRUARY 27, 2009</u>

Dated: July 13, 2009
Wilmington, DE

PEPPER HAMILTON LLP

/s/  John H. Schanne
PEPPER HAMILTON LLP
David M. Fournier (No. 2812)
James C. Carignan (No. 2987)
John H. Schanne II (No. 5260)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
(302) 777-6500

*Counsel for Longacre Master Fund, Ltd. And Longacre Capital Partners (QP), L.P.*

#11213095 v2

## TABLE OF CONTENTS

|  | Page |
|---|---|
| SUMMARY OF ARGUMENT | 1 |
| BACKGROUND | 1 |
| ARGUMENT | 5 |
|     A.    The Plan Cannot Be Confirmed to the Extent It Classifies the Claim as a Class 6 Claim Because Such Classification is Impermissible under Section 1122(a) of the Bankruptcy Code. | 5 |

#11213095 v2

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re 222 Liberty Associates*,
   108 B.R. 971 (Bankr. E.D. Pa. 1990) ........................................................................5

*In re Boston Post Road Ltd. P'ship.*,
   21 F.3d 477 (2d Cir. 1994)........................................................................................10

*In re Bryson Properties, XVIII*,
   961 F.2d 496 (4th Cir. 1992) ......................................................................................6

*In re Cocoran Hosp. Dist.*,
   233 B.R. 449 (Bankr. S.D. Cal. 1999) .....................................................................10

*In re Coram Healthcare Corp.*,
   315 B.R. 321 (Bankr. D. Del. 2004) ...................................................................6, 10

*In re Dow Corning Corp.*,
   244 B.R. 634 (Bankr. E.D. Mich. 1999) ..................................................................6, 9

*In re EBP, Inc.*,
   172 B.R. 241 (Bankr. N.D. Ohio 1994) ....................................................................9

*In re Gato Realty Trust Corp.*,
   183 B.R. 15 (Bankr. D. Mass. 1995) .........................................................................7

*In re Gibbs*,
   230 B.R. 471 (Bankr. D. Conn. 1999) ......................................................................6

*In re Gillette Assoc., Ltd.*,
   101 B.R. 866 (Bankr. N.D. Ohio 1989) ....................................................................6

*In re Johnston*,
   21 F.3d 323 (9th Cir. 1994) ....................................................................................6, 7

*In re Listani Foods, Inc.*,
   329 B.R. 491 (D. N.J. 2005) .....................................................................................7

*In re Mahoney Hawkes, LLP*,
   289 B.R. 285 (Bankr. D. Mass. 2002) ......................................................................7

*In re One Times Square Assocs. Ltd. P'ship.*,
   159 B.R. 695 (Bankr. S.D.N.Y. 1993).......................................................................9

*In re Porcelli*,
   319 B.R. 8 (Bankr. M.D. Fla. 2004) .........................................................................8

**Page(s)**

*In re US Truck Co., Inc.*,
  42 B.R. 790 (Bankr. E.D. Mich. 1984) .................................................................................9

*In re White Horse Grain Co.*,
  60 B.R. 16 (Bankr. E.D. Pa. 1986) .......................................................................................5

**STATUTES**

11 U.S.C. § 1122(a) ..............................................................................................1, 5, 7, 8

sections 1107 and 1108 of the Bankruptcy Code ...............................................................1

Chapter 11 Of The Bankruptcy Code .......................................................................1, 6, 10

**OTHER AUTHORITIES**

Disclosure Statement, §§ 3.2.3.1.2, 3.2.3.3 .........................................................................8

Disclosure Statement, § 3.2.3.3 ..........................................................................................2

National Union.*Id* ......................................................................................................2, 3, 4

Longacre Master Fund, Ltd. and Longacre Capital Partners (QP), L.P. (together, "Longacre"), hereby submit this Trial Brief (the "Brief") in connection with the Phase II Hearing (the "Phase II Hearing") to consider confirmation of the First Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Of W.R. Grace & Co., *et al.*, The Official Committee Of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants' Representative, And The Official Committee Of Equity Security Holders Dated February 27, 2009 (D.I. 20872) (the "Plan").

## SUMMARY OF ARGUMENT

1. The Plan cannot be confirmed in its present form to the extent it classifies claim number 9553 as a "Class 6" claim instead of a "Class 9" claim, because such classification would violate the requirements of 11 U.S.C. § 1122(a).

## BACKGROUND

On April 2, 2001 (the "Petition Date") the above-captioned debtors and debtors-in-possession (the "Debtors") each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy Code") (*see* D.I. 1). The Debtors are presently operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

On April 13, 2001, the Office of the United States Trustee appointed the Official Committee of Asbestos Personal Injury Claimants to represent the interests of creditors whose claims are based on injuries due to asbestos exposure.[1] Furthermore, on May 24, 2004, the Bankruptcy Court entered the Order (D.I. 5645) appointing David T. Austern as the legal representative for the future asbestos personal injury claimants (the "Representative"), which

---
[1] *See* Debtors' Disclosure Statement For the Plan (D.I. 20871) (the "Disclosure Statement") at § 3.2.3.1.2.

Representative has been charged in these proceedings with representing the interests of asbestos personal injury claimants whose claims have not yet been revealed. (<u>Disclosure Statement</u>, § 3.2.3.3).

Subsequent to the Petition Date, National Union Fire Insurance Company of Pittsburg, PA ("National Union") filed a proof of claim in the Debtors' proceedings in the amount of $46,971,764 plus additional unliquidated amounts, which claim was assigned claim number 9553 (the "Claim").[2] On November 13, 2007, Debtors and National Union entered into a Settlement Agreement And Mutual Release (the "Settlement Agreement"), reducing and allowing the Claim in the amount of $9,806,018 and specifying that the Claim was allowed and would be treated ". . . as an unsecured, pre-petition, non-priority claim." (<u>Settlement Agreement</u>, ¶ 5).

The Settlement Agreement, in addition to allowing the Claim in a fixed, liquidated amount of $9,806,018, also specifies the bases for the allowed Claim and the dollar amounts attributable to each respective basis. First, $8,639,890 of the Claim is based on amounts National Union was required to pay (and which amounts Debtors were required to reimburse) under surety bonds that National Union had issued to guarantee Debtors' payment obligations under settlements with certain asbestos personal injury claimants. *Id.* Second, $432,193 of the Claim is based upon premium payments that Debtors had failed to pay to National Union in connection with such surety bonds. *Id.* Third, $733,935 of the Claim is based upon litigation expenses, including legal fees, incurred by National Union.*Id.*

---

[2] *See* Order Authorizing Debtors' Settlement With National Union And Claimants and the attached Settlement Agreement And Mutual Release (A.D.I. 115 in Adv. Proc. No. 02-01657) (the "Settlement Agreement") at ¶ M, attached hereto as Exhibit "A".

The Settlement Agreement also indicates that the Claim is to be treated similarly to the treatment of "Class 9" claims under the Debtors' proposed Plan, stating:

> "[i]n the event that any plan or plans of reorganization that the Debtors, or any of them, may confirm in the bankruptcy cases provides for payment of interest on unsecured, pre-petition, non-priority claims, the National Union Claim in the amount allowed herein, shall bear interest at the rate provided in such plan or plans from and after the Closing Date without regard to the date from which interest accrues under the terms of such plan or plans of reorganization."

*Id.*

On December 13, 2007, National Union and Longacre entered into the Assignment Of Claim (the "Assignment"), pursuant to which National Union assigned all right, title and interest in the Claim to Longacre, and pursuant to which Longacre is entitled to enforce all rights and benefits under the Claim, as the successor-in-interest to National Union.[3]

On February 27, 2009, the Debtors filed the Plan. The Plan classifies stakes in the Debtors into eleven classes: nine classes of creditors and two classes of equity interest holders. (Plan, p. 43-44). Class 6 includes asbestos personal injury claims, labeled "Asbestos PI Claims." *Id.* at p. 44. Class 9 includes the claims of general, unsecured creditors. *Id.* According to the Plan, only Class 6 creditors and Class 7B claimants are impaired. *Id.* Conversely, the Plan treats Class 9 claims as unimpaired, proposing a 100 % distribution plus post-petition interest on account of such claims. *Id.*

The Plan's definition of 'Asbestos PI Claims,' (i.e., Class 6 claims), goes far beyond individuals who claim personal injury as a result of asbestos exposure causally related to Debtors' operations. Rather, the Plan includes within such definition (thereby classifying entities falling within such definition as Class 6 claimants) "a Claim . . . or any present or future, debt,

---

[3] A Copy of the Assignment is appended hereto as Exhibit "B".

liability, or obligation . . . against . . . any of the Debtors or Asbestos Protected Parties, including . . . (y) all cross-claims, contribution claims, subrogation claims, reimbursement claims, and indemnity claims . . . whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity, or any other theory of law, equity, or admiralty), in each case for, based on, or arising out of, resulting from, or attributable to, directly or indirectly . . . [injury resulting from asbestos exposure] . . .". *Id.* at 12. As such, the Plan attempts to classify in Class 6 not only personal injury tort claims, but also any claim of any entity whose claim has any connection whatsoever with an asbestos-related injury, no matter how tangentially and no matter if the claim has nothing to do with the injury itself, but rather is a contract-based claim of an insurer that provided liability protection to Debtors. *Id.*

Under the Plan, Class 6 Claims are impaired and they can only recover against assets funded into the Asbestos PI Trust, pursuant to a channeling injunction, and can obtain no further recovery from the Debtors. *Id.* at p. 47. That is, the Plan provides that "[t]he sole recourse of the Holder of an Asbestos PI Claim on account of such Asbestos PI Claim . . . shall be to the Asbestos PI Trust pursuant to the provisions of the Asbestos PI Channeling Injunction, the Asbestos IP Trust Agreement, and the Asbestos IP TDP." *Id.*

Debtors have informed Longacre that they have classified the Claim as a Class 6 claim. However, Debtors have classified a substantially similar claim as a Class 9 claim. On May 15, 2009, the Debtors filed under certification of counsel the Stipulation Regarding Classification Of Claims Of Morgan Stanley Senior Funding, Inc. ("Morgan Stanley") As Assignee of Certain Claims Of Bank of America, N.A. Under The Plan (D.I. 21722) (the "Morgan Stanley Stipulation"). The Morgan Stanley Stipulation classifies in Class 9 certain

claims that are similar in nature, kind and character to the Claim. (Morgan Stanley Stipulation, p. 2). Indeed, the claims that Debtors place in Class 9 pursuant to the Morgan Stanley Stipulation: (i) arose from a reimbursement agreement pursuant to which Debtors were obligated to make reimbursement payments for draws by National Union on letters of credit posted by Debtors as collateral for certain surety bonds issued in favor of the Debtors; and (ii) have been allowed pursuant to a prior stipulation in fixed, liquidated amounts as non-priority, unsecured claims.

**ARGUMENT**

**A.  The Plan Cannot Be Confirmed to the Extent It Classifies the Claim as a Class 6 Claim Because Such Classification is Impermissible under Section 1122(a) of the Bankruptcy Code.**

The Plan cannot be confirmed in its present form because it misclassifies the Claim as a Class 6 claim, even though the Claim is an allowed, liquidated, contract-based claim in a fixed amount, liquidated through the Settlement Agreement pursuant to which Debtors have agreed to provide post-petition interest in the same manner as is provided to holders of other allowed unsecured claims. Rather than placing the Claim in Class 6, which class is designed to channel unresolved asbestos personal injury claims into a trust with limited assets, as is currently proposed, the Claim should be classified with other liquidated contract-based claims in Class 9. Debtors' proposed classification of the Claim is improper under section 1122(a) of the Bankruptcy Code and under the terms of the Court-approved Settlement Agreement.

Section 1122(a) provides, with certain exceptions not applicable here, " . . . a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Section 1122(a) requires that claims to be classified together in a plan be 'substantially similar.' *In re 222 Liberty Associates*, 108 B.R. 971 (Bankr. E.D. Pa. 1990); *In re White Horse Grain Co.*, 60 B.R.

-5-

16 (Bankr. E.D. Pa. 1986); *In re Bryson Properties, XVIII*, 961 F.2d 496 (4th Cir. 1992);

Classification together of similar claims is among the most fundamental principles of Chapter 11. *In re Gibbs*, 230 B.R. 471 (Bankr. D. Conn. 1999). Classification is a method of recognizing differences in rights of creditors calling for different treatment for such creditors' claims. *In re Gillette Assoc., Ltd.*, 101 B.R. 866 (Bankr. N.D. Ohio 1989).

To determine whether claims are 'substantially similar' or dissimilar, the courts will focus on the nature and species of the claims at issue. *In re Coram Healthcare Corp.*, 315 B.R. 321, 349 (Bankr. D. Del. 2004) (*citing In re FF Holdings Corp. & Farm Fresh, Inc.*, 1998 U.S. Dist. LEXIS 10741 \*13 (D. Del. Feb. 17, 1998)). "The 'primary analysis centers upon the legal attributes of the claims and not upon the status or circumstances of the claimant. Emphasis is not upon the holder so much as it is upon that which is held.'" *Coram*, 315 B.R. at 349 (*quoting In re Northeast Dairy Coop. Fed'n. Inc.*, 73 B.R. 239, 250 (Bankr. N.D.N.Y. 1987)); *see also In re Dow Corning Corp.*, 244 B.R. 634 (Bankr. E.D. Mich. 1999) (holding that 'substantially similar' means similar in legal nature, character or effect); *AOV Indus., Inc.*, 792 F.2d 1140, 1151 (D.C. Cir. 1986) ("[t]he focus of the classification is the legal character of the claim as it relates to the assets of the debtor"); *In re Johnston*, 21 F.3d 323 (9th Cir. 1994) (holding that to decide whether claims are substantially similar for purposes of 1122(a), a court should evaluate nature of each claim, i.e., kind, species or character).

It is clear that the Claim is substantially similar to Class 9 claims and is completely dissimilar to the tort claims of individuals who have sustained personal injuries as a result of asbestos exposure. The Claim is strictly a contract claim. (<u>Settlement Agreement</u>, ¶ 5). It is based upon the Debtors' obligations under surety bonds issued by National Union, including Debtors' duties to pay bond premiums and to reimburse National Union for legal expenses and

for payouts that were already made several years ago to claimants in connection with the Debtors' litigation settlements. *Id.* Further, the Claim has already been allowed in a fixed, certain dollar amount. *Id.* In addition, the Settlement Agreement provides that the Claim will be treated under the Plan "as an unsecured, pre-petition, non-priority claim," and even that it will receive interest in the same manner as the Plan proposes to provide to Class 9 claimants. *Id.*

As such, the nature of the Claim stands in stark contrast to claims of asbestos tort claimants in Class 6, most of whom also have claims (and sources of recovery) against numerous defendants in addition to the Debtors. Under the Plan, Class 6 erects a channeling injunction and provides a procedure pursuant to which personal injury claimants, many of whom possess unliquidated claims, the amounts of which cannot presently be known, can recover only against certain trust assets in a fixed amount. This procedure is practical as applied to unliquidated tort claimants, so that the Plan can go effective and distributions to other creditors are not delayed pending adjudication of the unresolved Class 6 claims. It makes no sense, however, with respect to a contract claim such as the Claim, which has already been allowed in a fixed amount and which, by Debtors' agreement, has already been determined to be an unsecured, non-priority claim that is entitled to receive interest in the same manner as is contemplated for Class 9 claimants. Given the similarity the Claim shares with the other liquidated, contract-based general unsecured claims that Debtors classify in Class 9, the Plan cannot place the Claim in Class 6 and comply with Bankruptcy Code section 1122(a). *In re Mahoney Hawkes, LLP*, 289 B.R. 285 (Bankr. D. Mass. 2002) (separate classification of unsecured claims is only justified when the legal character of the claims is such as to accord them a status different from the other unsecured creditors); *In re Gato Realty Trust Corp.*, 183 B.R. 15 (Bankr. D. Mass. 1995) (same); *In re Listani Foods, Inc.*, 329 B.R. 491 (D. N.J. 2005) (same); *see also In re Porcelli*, 319 B.R. 8

(Bankr. M.D. Fla. 2004) (holding that plan cannot provide for disparate treatment of claims that have identical legal rights).

The Claim must be classified not only to satisfy the requirements of section 1122(a) of the Bankruptcy Code, but also to remain consistent with the terms of the Settlement Agreement that has already been approved by this Court. The Settlement Agreement unambiguously provides that if other holders of allowed unsecured claims are receiving post-petition interest under a Plan, the Claim also is to receive interest from and after the Closing Date under the Settlement Agreement. (Settlement Agreement, ¶ 5). As such, the Settlement Agreement clearly contemplated that the Claim would be treated under any Plan in the same manner as all other holders of allowed general unsecured claims. Classification of the Claim in Class 6 rather than Class 9 is fundamentally at odds with the Debtors' obligations under the Settlement Agreement regarding the treatment of the Claim.

Including the Claim within Class 6 would not only be improper under section 1122(a) and the terms of the Settlement Agreement, it also would be inequitable. The interests of true Asbestos PI Claimants, that is, individuals with tort claims based on personal injury, have been represented throughout these proceedings by a Committee of Personal Injury Claimants and even an "Asbestos PI Future Claimants' Representative." (Disclosure Statement, §§ 3.2.3.1.2, 3.2.3.3). These appointees have not, however, represented the interests of holders of the claims of entities, such as National Union, that are based solely on contractual obligations and do not belong in Class 6. National Union (and Longacre as the purchaser of the Claim) were entitled to rely upon the language of the Settlement Agreement providing the Claim was to be treated under the Plan "as an unsecured, pre-petition, non-priority claim." Given this language, National Union and Longacre had no way of knowing, and had no reasonable basis for assuming, that the

Claim would be lumped in with totally dissimilar tort claims and would not be paid in full. It would be inequitable, and fundamentally inconsistent with the Settlement Agreement, to force Longacre to accept classification of the Claim into Class 6 (with the resulting reduced distribution) based upon the Debtors' unilateral decision respecting classification. The Claim is fixed and allowed, is based upon Debtors' contractual obligations, is *not* based upon tort, and Debtors have already agreed in the Settlement Agreement to treat it as a general, pre-petition, unsecured claim payable with interest to the extent (as is the case here) that other unsecured claims are paid interest. Omitting the Claim from Class 9, which is the class where claims that are substantially similar are classified, and placing it in Class 6, which should be reserved for unliquidated tort claims, is not proper. *See, e.g., In re National / Northway Ltd. P'ship.*, 279 B.R. 17 (Bankr. D. Mass 2002) (deficiency claim of non-recourse undersecured creditor was not of different legal character than other general unsecured claims and could not be separately classified); *In re Dow Corning Corp.*, 244 B.R. 634 (Bankr. E.D. Mich. 1999) (commercial claims in one class of a Plan were of a different nature and character than personal injury claims in another class and thus were properly classified separately); *In re US Truck Co., Inc.*, 42 B.R. 790 (Bankr. E.D. Mich. 1984) (plan cannot be confirmed where trade claims and workers compensation claims were in the same class, because workers compensation claims were materially dissimilar as they were not fixed but were open-ended in character); *In re EBP, Inc.*, 172 B.R. 241 (Bankr. N.D. Ohio 1994) (tort judgment claim and claims of unsecured trade creditors are dissimilar such that separate classification is warranted); *In re One Times Square Assocs. Ltd. P'ship.*, 159 B.R. 695 (Bankr. S.D.N.Y. 1993) (plan that separately classified claims arising from rejection of signage agreements from other unsecured claims violated section 1122

where neither nature of creditors' business, debtors' assets nor mechanics of claims justified separate classification).

The Debtors' recent agreement to reclassify certain other claims from Class 6 to Class 9 suggests that the Debtors themselves recognize the impropriety of classifying claims such as the Claim in Class 6. As noted *supra*, the Debtors entered into the Morgan Stanley Stipulation agreeing to classify the Morgan Stanley Claims in Class 9. Similar to the Claim at issue here, the Morgan Stanley Claims (a) are based on Debtors' contractual obligation to reimburse draws by National Union on letters of credit posted as collateral for certain surety bonds, and (b) have already been allowed in fixed, liquidated amounts as unsecured claims. Given the substantial similarity between the Claim and the Morgan Stanley Claims, there is no rationale basis for classifying one in Class 6 while the others are placed in Class 9.

Since the Claim is substantially similar to other contract-based claims that are in Class 9, Debtors must demonstrate a reasonable and proper purpose for placing it with the tort claimants in Class 6. *Coram*, 315 B.R. at 349 (*quoting John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs. (In re Route 37 Bus. Park Assocs.)*, 987 F.2d 154, 158 (3d Cir. 1993)) ("Even though similar claims may be placed in separate classes, plan proponents cannot do so when it would be unreasonable. The Third Circuit has held that 'it seems clear that the Code was not meant to allow [a plan proponent] complete freedom to place substantially similar claims in separate classes.'"); *In re Cocoran Hosp. Dist.*, 233 B.R. 449 (Bankr. S.D. Cal. 1999) (holding that the requisite business or economic justification for separate classification of unsecured claims cannot consist solely of Chapter 11 debtor's wish to obtain consenting impaired class of creditors voting in favor of the plan); *In re Boston Post Road Ltd. P'ship.*, 21 F.3d 477 (2d Cir. 1994) (holding that a Chapter 11 debtor must adduce credible proof of a legitimate reason for

separate classification of similar claims). Debtors have not, because they cannot, offered any legitimate reason for including the Claim, a liquidated contractual claim, in Class 6 with unliquidated personal injury claims. The Court should deny confirmation unless the Claim is classified in Class 9.

Longacre joins in the argument set forth in Fireman's Fund Insurance Company's Phase II Trial Brief Relating to Its "Surety Claim" (D.I. 22412), that the Plan violates Bankruptcy Code sections 1123(a)(3) and 1123(a)(4) because it fails to specify the treatment of Indirect PI Trust Claim, and respectfully incorporates such argument herein by reference as if fully set forth herein.

Dated: July 13, 2009
Wilmington, DE

PEPPER HAMILTON LLP

/s/ John H. Schanne
PEPPER HAMILTON LLP
David M. Fournier (No. 2812)
James C. Carignan (No. 2987)
John H. Schanne II (No. 5260)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

*Counsel for Longacre Master Fund, Ltd. And Longacre Capital Partners (QP), L.P.*