# EXHIBIT B

LMF-LQP

## ASSIGNMENT OF CLAIM

1.   Identification of the parties:

Seller:

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA
70 Pine Street
New York, NY 10270
Attn:   James J Murphy
Tel:    (212) 770-1898
Fax:    (212) 770-1489

with a copy to:
Zeichner Ellman & Krause LLP
575 Lexington Avenue
New York, NY 10022
Attn:   Michael S. Davis
Tel:    (212) 826-5311
Fax:    (866) 213-9038

Buyers:
LONGACRE MASTER FUND, LTD. and
LONGACRE CAPITAL PARTNERS (QP), L.P.
810 Seventh Avenue, 22nd Floor
New York, NY 10019
Tel :   212-259-4305
Fax :   212-259-4343
Attn :  Vladimir Jelisavcic

2.       (a) By this Assignment of Claim ("Assignment"), Seller, its successors and assigns, for good and valuable consideration, the sufficiency of which is hereby acknowledged by Seller, absolutely and unconditionally sells, transfers and assigns unto Buyers, their successors and assigns, all rights, title and interest in and to the claim(s) and any reclamation claim(s) as more fully defined below (the "Claim") of Seller against W.R. GRACE & CO.-CONN., et al. ("Debtor"), the debtor-in-possession in the Chapter 11 reorganization case, Case No. 01-01140 (the "Case"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The consideration paid by Buyers to Seller for the Claim is set forth on Exhibit A annexed hereto and made a part hereof (the "Consideration"). The Claim is defined as, without limitation, all of Seller's right, title and interest in and to the Order (defined below) or the Proof of Claim (defined below), all cure amounts paid by Debtor in connection with the assumption of contracts related to such claims(s) or the Proof of Claim; all rights to receive principal, interest, all rights of stoppage in transit, replevin and reclamation, fees, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing; and all other claims, causes of action and voting and other rights arising under or relating to any of the foregoing, including, without limitation, all of Seller's rights to receive cash, securities, instruments and/or other property or distributions issued in connection with any of the foregoing or the Case.

         (b) Buyers hereby agree that the payment of the Consideration shall be completed within two (2) business days following the Order (as defined below) being made final and non-appealable. Buyers shall cause the Consideration to be delivered to the Seller in accordance with the wiring instructions set forth as Exhibit A.

3.   Seller represents and warrants the following:

**L01475**

[ X ] YES, PROOF OF CLAIM #9553 HAS been duly and timely filed in the Case in the aggregate amount of $46,971,764.00 (the "Proof of Claim Amount") and a true and such proof of claim is attached to this Assignment (collectively, the "Proof of Claim"). The Proof of Claim has been modified and acknowledged by the Debtor pursuant to that certain Order Authorizing Debtors' Settlement with National Union and Claimants and the related Settlement Agreement and Mutual Release (the "Order") to an allowed unsecured, pre-petition, non-priority claim against the Debtor in the amount of $9,806,018.00 (the "Allowed Amount") and a true copy of the Order has been attached to this Agreement. Buyers shall be deemed to be the owner of the Claim in the Allowed Amount, subject to the terms of this Assignment, and shall be entitled to identify itself as the owner of the Proof of Claim on the records of the Bankruptcy Court.

[ ] NO, a PROOF OF CLAIM HAS NOT been filed in the Case. The agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing the Claims support the filing of a proof of claim against the Debtor in the amount of <Size> (the "Proof of Claim Amount").

4. Seller further represents and warrants that: (a) the Claim is allowed unsecured, pre-petition, non-priority claim against the Debtor in the amount of the Allowed Amount (b) the Claim is a valid, enforceable claim against the Debtor; (c) no consent, approval, filing or corporate, partnership or other action is required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Assignment by Seller; (d) this Assignment has been duly authorized, executed and delivered by Seller and Seller has the requisite power and authority to execute, deliver and perform this Assignment; (e) this Assignment constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms; (f) it has not filed a petition seeking protection under the Bankruptcy Code, or admitted its inability to, or failed to, pay its debts generally as they become due; (g) no payment or other distribution has been received by Seller, or by any third party on behalf of Seller, in full or partial satisfaction of, or in connection with, the Claim; (h) no portion of the Claim has been sold, assigned or pledged to any third party in whole or in part; (i) the Claim is not subject to any factoring agreement; (j) Seller owns and has and is hereby selling to Buyers good and sole legal and beneficial title to the Claim free and clear of any and all liens, security interests, encumbrances or claims of any kind or nature whatsoever; (k) the basis for the Claim is amounts due and owing by the Debtor arising from the issuance of surety bonds to Debtor; (l) true and complete copies of all agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing or relating to the Claim will be, at Buyers' option, delivered to Buyers prior to closing of this Assignment and/or maintained in good condition by Seller until the Bankruptcy Court enters a final decree closing the Case and delivered to Buyers within 5 business days of Buyers' request; (m) Seller has no liability or obligation related to or in connection with the Claim or the Case; (n) other than the Proof of Claim, no proof of claim has been or will be filed by or on behalf of Seller in the Case or any related proceeding; (o) no objection to the Claim has been filed or threatened; and (p) the Claim is not subject to any defense, claim or right of setoff, reduction, impairment, avoidance, disallowance, subordination or preference action, in whole or in part, whether on contractual, legal or equitable grounds, that have been or may be asserted by or on behalf of the Debtor or any other party to reduce the amount of the Claim or affect its validity, priority or enforceability.

5. Seller is aware that the consideration being paid by Buyers hereunder may differ both in kind and amount from the amount ultimately distributed with respect to the Claim pursuant to any plan of reorganization confirmed for the Debtor. Seller represents that it has adequate information concerning the financial condition of the Debtor and the Case to make an informed decision regarding the sale of the Claim and that it has independently and without reliance on Buyers, and based on such information as Seller has deemed appropriate, made its own decision to enter into this Assignment. Seller is aware that information which may be pertinent to Seller's decision to transfer the Claim is available to Seller and can be obtained from the Bankruptcy Court's files. Seller further represents that it is not and has never been an "insider" of the Debtor (as defined in Section 101(31) of the Bankruptcy Code) or a member of any official or unofficial committee in respect of the Case.

6. Seller acknowledges and agrees that: (a) Buyers currently may have, and later may come into possession of, information relating to the Debtor that is not known to Seller and that such information may be material to

Seller's decision to assign the Claim to Buyers ("<u>Seller Excluded Information</u>"); (b) Seller has determined to assign the Claim notwithstanding its lack of knowledge of the Seller Excluded Information; and (c) Buyers shall have no liability to Seller, and Seller waives and releases any claims that it might have against Buyers with respect to the non-disclosure of the Seller Excluded Information.

7. Seller further acknowledges and agrees that: (a) Buyers are not assuming any of Seller's obligations under that certain Settlement Agreement and Mutual Release, dated as of November 13, 2007 (the "<u>Settlement Agreement</u>"), among the Debtor and its 61 affiliated entities that are also Debtors in the Case, Seller and its affiliates, and Reaud, Morgan & Quinn, Inc. and Environmental Litigation Group, P.C. and their respective clients (collectively, the "<u>Claimants</u>"); (b) Seller shall maintain sole responsibility for payment of the Payment Amount (as defined in the Settlement Agreement) to the Claimants under the terms of the Settlement Agreement; and (c) Seller's failure to pay the Payment Amount to the Claimants in accordance with the terms of the Settlement Agreement shall constitute an "Impairment" of the Claim under Section 9 of this Assignment and the Buyers shall be entitled to exercise all of their rights and remedies under Section 9 as a result of such failure.

8. Buyers represent and warrant and covenant to Seller that as of the date hereof: (a) no consent, approval, filing or corporate, partnership or other action is required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Assignment; (b) this Assignment has been duly authorized, executed and delivered by Buyers and Buyers have the requisite power and authority to execute, deliver and perform this Assignment and the transactions contemplated by this Assignment are not in contravention of any law, order, regulation or agreement by which Buyers are bound; (c) each Buyer (i) is a sophisticated buyer with respect to the sale of the Claim, (ii) has adequate information concerning the business and financial condition of Debtor and the status of the Case to make an informed decision regarding the sale of the Claim, (iii) has independently and without reliance upon Seller, and based on such information as Buyer has deemed appropriate, made its own analysis and decision to enter into this Assignment, and (iv) is aware that the consideration being paid by it hereunder may differ both in kind and amount from the amount ultimately distributed with respect to the Claim pursuant to any plan of reorganization which is confirmed for the Debtor, any liquidation or any other distribution in the Case; (d) Buyers acknowledge that Seller has not given Buyers any investment advice, credit information, or opinion on whether the purchase of the Claim is prudent; (e) Buyers acknowledge that (i) Seller currently may have, and later may come into possession of, information with respect to the Claim, Debtor, or any of its affiliates that is not known to Buyer and that may be material to a decision to purchase the Claim ("***Buyer Excluded Information***"), (ii) Buyers have not requested to receive the Buyer Excluded Information and Buyers have determined to purchase the Claim notwithstanding its lack of knowledge of the Buyer Excluded Information, (iii) information which may be pertinent to Buyers' decision to purchase the Claim is available to Buyers and may be obtained from the Bankruptcy Court's files, the Debtor, and other public sources, and (iv) without limiting any of the representations and warranties of Seller herein, Seller shall have no liability to Buyers, and Buyers waive and release any claims that it might have against Seller or any agents, controlling persons, officers, members, managers, directors, and employees of Seller whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Buyer Excluded Information.

9. In the event all or any part of the Claim is either (a) objected to; (b) impaired by the commencement or notice from Debtor of any action or proceeding including, but not limited to any proceeding which seeks to reduce all or part of the Allowed Amount or provide less favorable treatment to the Claim than other unsecured claims, including the timing of payments or distributions or (c) offset, disallowed, subordinated, or otherwise impaired, in whole or in part, in the Case for any reason whatsoever, including, without limitation, pursuant to an order of the Bankruptcy Court (whether or not such order is appealed), (collectively, an "<u>Impairment</u>"), Seller agrees to immediately repay, on demand of Buyers (which demand shall be made at Buyers' sole option), an amount equal to the portion of the Allowed Amount subject to the Impairment multiplied by the Purchase Rate, plus interest thereon at 10% per annum from the date hereof to the date of repayment, provided, however, that such a demand by Buyers shall not be deemed an election of remedies or any limitation on any other rights that Buyers may have hereunder or under applicable law. In the event an order is entered in the Bankruptcy Court disapproving the transfer of the Claim, or in the event that the Bankruptcy Court does not substitute Buyers for Seller, Seller

agrees to immediately repay, upon demand of Buyers, the consideration paid by Buyers hereunder, plus interest thereon at 10% per annum from the date hereof to the date of repayment.

10. Seller agrees that in the event Seller receives any payments or distributions or notices with respect to or relating to the Claim, Seller shall (a) accept the same as Buyers' agent, (b) hold the same in trust on behalf of and for the sole benefit of Buyers, and (c) in the case of cash ("Cash Distribution"), promptly deliver the same forthwith to Buyers (free of any withholding, set-off, claim or deduction of any kind), within 2 business days. In the case of distributions in the form of securities, Seller shall (i) notify Buyers immediately of Seller's receipt of such distributions and (ii) immediately deposit such securities in Seller's brokerage account and (iii) instruct the broker to immediately deliver such securities in electronic form to Bear Stearns DTC #352, for further credit to account #102-21928-25. In the event Seller fails to deliver the Cash Distribution to Buyers within 2 business days of Seller's receipt, Seller shall be obligated to pay Buyers interest on the Cash Distribution at 10% per annum, from the date of Seller's receipt to the date of Buyers' receipt. Moreover, in the event Seller receives a Cash Distribution prior to or at the time of the funding of the consideration to be paid under this Assignment, Buyers shall have the right (at their option) to offset (in whole or in part) the Cash Distribution against the consideration by instructing Seller to retain all or a portion of the Cash Distribution. In addition, Seller agrees to provide Buyers with copies of all correspondence with respect to the Claim.

11. Seller agrees to indemnify Buyers from all losses, damages and liabilities, including reasonable attorneys' fees and expenses, which result from Seller's breach of any representation, warranty or covenant set forth herein, or any Impairment of the Claim, including, but not limited to, any action, proceeding, objection or investigation relating to any attempt or threatened attempt to avoid, disallow, reduce, subordinate or otherwise impair the Claim or otherwise delay payments or distributions in respect of the Claim. Buyers do not assume and shall not be responsible for any obligations or liabilities of Seller related to or in connection with the Claim or the Case. In the event Seller has sold or assigned the Claim or any portion thereof to any other person or entity, Seller shall, immediately upon demand by Buyers, pay Buyers liquidated damages in an amount equal to twice the sum of the purchase price paid hereunder and Buyers' costs and expenses (including, without limitation, attorneys' fees and expenses) relating to this Assignment or the Claim.

12. Seller hereby irrevocably appoints Buyers with full power of substitution as its true and lawful attorney and authorizes Buyers to act in Seller's name, place and stead, to demand, sue for, compromise, recover, and transfer to Buyers all such sums of money and securities which now are, or may hereafter become due and payable for, or on account of the Claim herein assigned. Seller grants unto Buyers full authority to do all things necessary to enforce or compromise the Claim and Seller's rights thereunder or related thereto pursuant to this Assignment. Seller agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Buyers. Buyers shall have no obligation to take any action to prove, defend, demand or take any action with respect to the Claim or otherwise in the Case. Seller agrees to execute, acknowledge and deliver all such further certificates, instruments and other documents, and to take all such further action as may be necessary or appropriate to effect assignment of the Claim and all interests therein to Buyers, to fully assist Buyers in enforcing the Claim and to otherwise effectuate the intent of this Assignment. Seller agrees that Buyers may sell, transfer or assign the Claim, or any portion thereof, together with all right, title and interest of Buyers and all obligations of Buyers in and to this Assignment (the purchaser or transferee of the Claim from the Buyers is defined as the "Beneficial Owner"). In the event Buyers sell, transfer or assign the Claim, or any portion thereof: (i) Buyers shall have no further obligations to Seller under this Assignment; (ii) Seller shall deal only with the Beneficial Owner of the Claim; (iii) Seller shall only enforce its rights under this Assignment against the Beneficial Owner of the Claim; and (iv) the Beneficial Owner shall have all of the Buyers' rights under this Assignment and related documents.

13. Buyers and Seller irrevocably agree that any action to enforce, interpret, or construe any provision of this Assignment will be brought and determined only in a state or Federal court located in the City of New York, except in a bankruptcy court ("New York Courts"). Seller irrevocably and unconditionally consents to personal jurisdiction over Seller by the New York Courts in any action to enforce, interpret or construe any provision of this Assignment, and also hereby irrevocably waives: (a) trial by jury; (b) any defense of improper venue; or (c)

forum non conveniens, to any such action brought in the New York Courts. Seller consents to service of process by certified mail at its address listed above. This Assignment shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to any choice of law principles thereof.

14. The document attached hereto as Exhibit B and incorporated herein by reference may be filed by Buyers with the Bankruptcy Court as evidence of this transfer. Seller grants Buyers the right to: (a) make any corrections to Exhibit B necessary to effect assignment of the Claim; and (b) execute other evidences of transfer that may be necessary to transfer other proofs of claim filed by Seller in the Case. Seller hereby waives any notice or hearing requirements imposed by Rule 3001 of the Bankruptcy Rules, and stipulates that an order may be entered recognizing this Assignment as an unconditional assignment and the Buyers herein as the valid owner of the Claim. Seller acknowledges and agrees that Longacre Master Fund, Ltd. shall be the holder of record of the Claim and shall identify itself as such on the records of the Bankruptcy Court.

15. All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Assignment and the purchase and sale of the Claim and shall inure to the benefit of, be binding upon and enforceable by the parties hereto and Buyers' successors and assigns. A facsimile copy of this executed Assignment shall constitute an original and shall bear the same binding effect as any original signatures. This Assignment may be executed in two or more counterparts, each of which shall be deemed to be an original and all of which, when taken together, shall constitute one and the same document. This Assignment shall be read and interpreted according to its plain meaning and an ambiguity shall not be construed against either party. It is expressly agreed by the parties that the judicial rule of construction that a document should be more strictly construed against the draftsperson thereof shall not apply to any provision of this Assignment. This Assignment (including the Exhibits attached hereto, and consistent provisions of the Claim Sale Agreement and other documents incorporated into this Assignment by express reference) constitutes the entire understanding between Buyers and Seller and supersedes any previous agreement, verbal or written, between the parties.

16. The parties hereto acknowledge that (i) each entity identified as Buyer in paragraph 1 shall be deemed to have made such representations, warranties, covenants, and agreements set forth herein for as to itself only in the Ownership Percentages set forth on Exhibit A, (ii) the obligations of each Buyer herein shall be several (and not joint), and (iii) notwithstanding anything to the contrary in this Assignment, the parties hereby agree that all obligations and liabilities of a party hereunder are enforceable solely against such party and such party's assets and not against any officer, director, trustee, member or limited or general partner of such party or against any assets of any officer, director, trustee, member or limited or general partner of such party.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, each of the undersigned has duly executed this Assignment of Claim by its duly authorized representative dated December 13 , 2007.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA

By:_____
Name:    JAMES S MURPHY
Title:    AUTHORIZED REPRESENTATIVE
Date:    December 13, 2007

LONGACRE MASTER FUND, LTD.
(81.75%)

By:_____
Name:    Steven S. Weissman
Title:    Director
Date:    12/11/07

LONGACRE CAPITAL PARTNERS (QP), L.P.
(18.25%)

By: Longacre Management, LLC,
its General Partner

By:_____
Name:    Steven S. Weissman
Title:    Member
Date:    12/11/07

**L01480**

**CONSIDERATION PAID TO SELLER**

Exhibit A

Upon settlement of this transaction, subject to Buyers' verification of Seller's representations and warranties made herein, payment of the Consideration shall be made as follows:

Allowed Amount:          $9,806,018.00

x Purchase Rate:

      ------

Consideration:
      =====

Ownership Percentages shall be as follows:

| Buyers: | Percentag |
|---|---|
| Longacre Master Fund, Ltd. | 81.75% |
| Longacre Capital Partners (QP), L.P. | 18.25% |
| Total | 100.00% |

Seller's Wire Instructions:

Bank:           Bank of America
Address:        1185 Avenue of the Americas, 2nd Floor
                New York, New York 10036

ABA No.:        026 009 593
Account No.:    0048 3730 6300
Account Name: National Union Fire Insurance Company of Pittsburg
                Grace Trust Account

**L01481**

### EVIDENCE OF TRANSFER OF CLAIM

Exhibit B

TO: United States Bankruptcy Court ("Bankruptcy Court")
District of Delaware
824 Market St., Room 525
Wilmington, DE 19801
Attn: Clerk

AND TO: W.R. GRACE & CO.-CONN., ("Debtor")
Case No. 01-01140

Claim # 9553

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA., its successors and assigns ("Seller"), for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, does hereby unconditionally and irrevocably sell, transfer and assign unto:

LONGACRE MASTER FUND, LTD.
c/o U.S. Bank National Association
Corporate Trust Services
1420 Fifth Avenue, 7th Floor
Seattle, Washington 98101
Attn: Kyle J Lunde

its successors and assigns ("Buyer"), all rights, title and interest in and to the claim of Seller, including all rights of stoppage in transit, replevin and reclamation, in the principal amount of $9,806,018.00 ("Claim") against the Debtor in the Bankruptcy Court, or any other court with jurisdiction over the bankruptcy proceedings of the Debtor.

Seller hereby waives any objection to the transfer of the Claim to Buyer on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law. Seller acknowledges, understands and agrees, and hereby stipulates that an order of the Bankruptcy Court may be entered without further notice to Seller transferring to Buyer the Claim and recognizing the Buyer as the sole owner and holder of the Claim.

You are hereby directed to make all future payments and distributions, and to give all notices and other communications, in respect of the Claim to Buyer.

IN WITNESS WHEREOF, the undersigned has duly executed this Evidence of Transfer of Claim by its duly authorized representative dated December 13 , 2007.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBUG, PA

By:_____
Name: James J Murphy
Title: Authorized Representative

LONGACRE MASTER FUND, LTD.

By:_____
Name: Steven S. Weissman
Title: Director

**L01482**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------------------X

| In re: | |
| | Chapter 11 |
| W.R. GRACE & CO.-CONN. | |
| | Case No. 01-01140 |
| | |
| Debtors. | |

------------------------------------------------------------------X    **Claim No. 9553**

### NOTICE OF TRANSFER OF CLAIM PURSUANT TO FRBP RULE 3001(e)(2)

To: (Transferor)          National Union Fire Insurance Company Pittsburg, PA
                          70 Pine Street
                          New York, NY 10270
                          Attn: James J. Murphy

The transfer of your claim as shown above, in the amount of $9,806,018.00 has been transferred (unless previously expunged by court order) to:

                          LONGACRE MASTER FUND, LTD.
                          Transferor: National Union Fire Insurance Company Pittsburg, PA
                          810 Seventh Avenue, 22nd Floor
                          New York, NY 10019
                          Attn: Vladimir Jelisavcic

No action is required if you do not object to the transfer of your claim. However, IF YOU OBJECT TO THE TRANSFER OF YOUR CLAIM, WITHIN 20 DAYS OF THE DATE OF THIS NOTICE, YOU MUST:

          - FILE A WRITTEN OBJECTION TO THE TRANSFER with:

                    United States Bankruptcy Court
                    District of Delaware
                    824 Market Street, Room 525
                    Wilmington, DE 19801

          - SEND A COPY OF YOUR OBJECTION TO THE TRANSFEREE.

Refer to INTERNAL CONTROL No. _____ in your objection. If you file an objection, a hearing will be scheduled. IF YOUR OBJECTION IS NOT TIMELY FILED, THE TRANSFEREE WILL BE SUBSTITUTED ON OUR RECORDS AS THE CLAIMANT.
                                                  Intake Clerk

------------------------------------------------------------------------------------------------------------

FOR CLERK'S OFFICE USE ONLY:
This notice was mailed to the first named party, by first class mail, post prepaid on _____, 2006.
INTERNAL CONTROL NO._____
Claims Agent Noticed: (Name of Outside Agent)
Copy to Transferee:_____


                                        _____
                                        Deputy Clerk

**L01483**

**EVIDENCE OF TRANSFER OF CLAIM**

Exhibit B

TO:          United States Bankruptcy Court ("Bankruptcy Court")
             District of Delaware
             824 Market St., Room 525
             Wilmington, DE 19801
             Attn:   Clerk

AND TO:     W.R. GRACE & CO.-CONN., ("Debtor")
            Case No. 01-01140

Claim # 9553

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA.,** its successors and assigns ("Seller"), for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, does hereby unconditionally and irrevocably sell, transfer and assign unto:

> **LONGACRE MASTER FUND, LTD.**
> c/o U.S. Bank National Association
> Corporate Trust Services
> 1420 Fifth Avenue, 7th Floor
> Seattle, Washington 98101
> Attn: Kyle J Lunde

its successors and assigns ("Buyer"), all rights, title and interest in and to the claim of Seller, including all rights of stoppage in transit, replevin and reclamation, in the principal amount of $9,806,018.00 ("Claim") against the Debtor in the Bankruptcy Court, or any other court with jurisdiction over the bankruptcy proceedings of the Debtor.

Seller hereby waives any objection to the transfer of the Claim to Buyer on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law. Seller acknowledges, understands and agrees, and hereby stipulates that an order of the Bankruptcy Court may be entered without further notice to Seller transferring to Buyer the Claim and recognizing the Buyer as the sole owner and holder of the Claim.

You are hereby directed to make all future payments and distributions, and to give all notices and other communications, in respect of the Claim to Buyer.

IN WITNESS WHEREOF, the undersigned have duly executed this Evidence of Transfer of Claim by its duly authorized representative dated December 13, 2007.

NATIONAL UNION FIRE INSURANCE            LONGACRE MASTER FUND, LTD.
COMPANY OF PITTSBURG, PA

By:___/s/ James J. Murphy_____        By:_/s/ Steven S. Weissman_____
Name: James J. Murphy                    Name: Steven S. Weissman
Title:   Authorized Representative       Title: Director

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) |
| W. R. GRACE & CO., et al. | ) Chapter 11 |
| | ) |
| Debtors. | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| | ) |
| W. R. GRACE & CO.-CONN., | ) |
| | ) |
| Plaintiff, | ) Adversary No. 02-01657 |
| | ) |
| NATIONAL UNION FIRE INSURANCE | ) |
| COMPANY OF PITTSBURGH, PA. | ) |
| | ) Hearing: December 17, 2007, 2:00 p.m. |
| Defendant, Third Party and | ) Agenda Item No. _____ |
| Joinder Plaintiff | ) |
| | ) |
| | ) |
| REAUD, MORGAN & QUINN, INC. and | ) Re: Docket Nos. 58, 106, 107, 112, 114 |
| ENVIRONMENTAL LITIGATION GROUP, P.C., | ) _____ |
| | ) |
| Third-Party and Joinder | ) |
| Defendants | ) |

## ORDER AUTHORIZING DEBTORS' SETTLEMENT WITH NATIONAL UNION AND CLAIMANTS

Upon consideration of the "*Debtors' Motion for an Order Authorizing Settlement with National Union and Claimants*" (the "Motion"); and due and proper notice of the Motion having been given; and it appearing that the relief requested in the Motion is in the best interests of the Debtors,[1] their estates and creditors, it is hereby

ORDERED that the Motion is granted; and it is further

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

L01485

ORDERED that the Debtors are hereby authorized to perform their obligations under the Agreement; and it is further

ORDERED that National Union Claim No. 9553 is allowed in the sums provided for in the Agreement; and it is further

ORDERED that the Claimants' Claims Nos. 103, 104, 13945, 13954, 14036 and 14053 are disallowed and expunged for all purposes; and it is further

ORDERED that upon payment by National Union of the Payment Amount, this Adversary Proceeding shall be dismissed; and it is further

ORDERED that the Debtors are authorized to take whatever other actions may be necessary to consummate the transactions contemplated by the Agreement; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order; and it is further

ORDERED that this Order is effective immediately upon its entry.

Dated: December **4** , 2007

_Judith K. Fitzgerald_
Honorable Judith K. Fitzgerald
U. S. Bankruptcy Judge

91100-001\DOCS_DE:132752.1

**L01486**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | )<br>) |
| | ) |
| W. R. GRACE & CO., et al. | )    Chapter 11 |
| | ) |
| Debtors. | )    Case No. 01-01139 (JKF)<br>)    (Jointly Administered) |
| ——————————————————— | ) |
| | ) |
| W. R. GRACE & CO.-CONN., | ) |
| | ) |
| Plaintiff, | )    Adversary No. 02-01657 |
| | ) |
| NATIONAL UNION FIRE INSURANCE | ) |
| COMPANY OF PITTSBURGH, PA. | ) |
| | )    Hearing: December 17, 2007, 2:00 p.m. |
| Defendant, Third Party and | )    Agenda Item No. _____ |
| Joinder Plaintiff | ) |
| | ) |
| | ) |
| REAUD, MORGAN & QUINN, INC. and | )    Re: Docket Nos. 58, 106, 107, 112, 114 |
| ENVIRONMENTAL LITIGATION GROUP, P.C., | )                                   _____ |
| | ) |
| Third-Party and Joinder | ) |
| Defendants | ) |

## ORDER AUTHORIZING DEBTORS' SETTLEMENT WITH NATIONAL UNION AND CLAIMANTS

Upon consideration of the "*Debtors' Motion for an Order Authorizing Settlement with National Union and Claimants*" (the "Motion"); and due and proper notice of the Motion having been given; and it appearing that the relief requested in the Motion is in the best interests of the Debtors,[1] their estates and creditors, it is hereby

ORDERED that the Motion is granted; and it is further

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

91100-001\DOCS_DE:132752.1

ORDERED that the Debtors are hereby authorized to perform their obligations under the Agreement; and it is further

ORDERED that National Union Claim No. 9553 is allowed in the sums provided for in the Agreement; and it is further

ORDERED that the Claimants' Claims Nos. 103, 104, 13945, 13954, 14036 and 14053 are disallowed and expunged for all purposes; and it is further

ORDERED that upon payment by National Union of the Payment Amount, this Adversary Proceeding shall be dismissed; and it is further

ORDERED that the Debtors are authorized to take whatever other actions may be necessary to consummate the transactions contemplated by the Agreement; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order; and it is further

ORDERED that this Order is effective immediately upon its entry.

Dated: December **4**, 2007

_Judith K. Fitzgerald_
Honorable Judith K. Fitzgerald ab
U. S. Bankruptcy Judge

91100-001\DOCS_DE:132752.1

**L01488**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement"), dated November $\underline{13^{th}}$,

2007, is made by and between (i) W. R. Grace & Co. and its 61 affiliated entities who are

Debtors in the chapter 11 cases identified as case no. 01-01139 (JKF) pending in the United

States Bankruptcy Court for the District of Delaware; (ii) National Union Fire Insurance

Company of Pittsburgh, PA. and it affiliates AIU Insurance Company, American Home

Assurance Company, Granite State Insurance Company, Illinois National Insurance Company,

The Insurance Company of the State of Pennsylvania, New Hampshire Insurance Company,

Commerce and Industry Insurance Company and Commerce and Industry Insurance Company of

Canada (collectively, "National Union"); and (iii) Reaud, Morgan & Quinn, Inc. ("RMQ") and

Environmental Litigation Group, P.C. ("ELG") and their respective clients who are Settling

Plaintiffs under the Settlement Agreements defined below (collectively, RMQ, ELG and their

clients shall be referred to as "Claimants"). The Debtors, National Union and Claimants shall be

referred to herein collectively as "the Parties."

### RECITALS

A.       On or about August 25, 2000, Claimants entered into two settlement agreements

with W.R. Grace & Co.-Conn ("Grace") one of the Debtors (the "Settlement Agreements"). The

first agreement, the "Alabama Agreement," established procedures for qualifying Alabama

asbestos personal injury claimants to settle their claims against Grace. The second agreement,

the "Texas Agreement," likewise established procedures for qualifying Texas asbestos personal

injury claimants to settle their claims against Grace.

B.       The Settlement Agreements contain specific requirements that a Claimant must

satisfy before its claim is eligible for payment. These requirement include supplying "Qualifying

Materials" to substantiate a Claimant's claim. Pursuant to the Settlement Agreements, Grace was

KAB 12226838.4

required to make payments on account of claims that satisfied the Settlement Agreements in four

yearly installments, with the final two payments due on January 15, 2002 and January 15, 2003.

C.      Pursuant to the terms of the Settlement Agreements, Grace was required to obtain

guarantees of its prospective obligations under the Settlement Agreements. To satisfy this

requirement, Grace caused National Union to issue two surety bonds (the "Bonds") to Grace, as

the principal, for the benefit of Claimants, as obligees. Bond #ESD 7311060 dated October 23,

2000 secures payments under the Alabama Agreement; Bond #ESD 7311061 dated October 23,

2000 secures payments under the Texas Agreement.

D.      On April 2, 2001 (the "Petition Date"), Debtors filed chapter 11 Bankruptcy cases

in the United States Bankruptcy Court for the District of Delaware. At that time, two of the four

installments under the Settlement Agreements had been paid by Debtors. The third installment

was paid by agreement of the parties during the chapter 11 cases.

E.      Grace commenced an Adversary Proceeding (Case No. 02-01657) on January 18,

2002 seeking to enjoin National Union from making certain prospective payments pursuant to

the Bonds. Grace initially alleged that Claimants had not provided sufficient documentation to

support their claims for payment as required by the Settlement Agreements and thus were not

owed any amounts under the Settlement Agreements for which the Bonds were posted.

F.      National Union responded by filing a third-party action against Claimants which

sought a declaration that no additional monies were owed under the Settlement Agreements or

establishing the extent, if any, of National Union's and Grace's obligations to Claimants.

G.      In December 2002, National Union moved for summary judgment seeking a

declaration that no additional amounts were owed to the Claimants under the Settlement

Agreements. Claimants filed a cross-claim and on September 10, 2003 filed a cross-motion for

2

L01490

summary judgment alleging that additional amounts were due under the Settlement Agreements and that no further review of the claims was appropriate.

H.    Oral argument on the cross motions for summary judgment was originally held in March 2004. At the March 2004 hearing, the Court granted the Debtors the right to review all supporting documentation submitted for unpaid claims that was submitted within 60 days prior to the Petition Date as well as any supporting documentation submitted after the Petition Date. The Court also granted National Union the right to review all claims and supporting documentation submitted for any claims that remained unpaid under the Settlement Agreements, regardless of when the supporting documentation was submitted.

I.    The Court did not rule at that time, however, as to what would be the rights of the Parties after such review was completed.

J.    In June 2006, Claimants filed a Motion for Entry of Judgment which National Union and the Debtors opposed.

K.    The Court ordered briefing on the issue of the applicability of section 108 of the Bankruptcy Code and set the matter for further oral argument. On July 19, 2007, after reviewing the briefing and hearing the arguments of counsel, the Court determined that ordered National Union was to pay Claimants on account of Qualified Claims submitted more than 60 days prior to the Petition Date (i.e. on or before January 31, 2001)..

L.    The Parties subsequently engaged in good-faith discussions regarding the form of the Order memorializing the Court's July 19, 2007 rulings. While the Parties essentially reached agreement with respect to the correct value of the Qualified Claims submitted more than 60 days prior to the Petition Date which should be paid, the Parties are not able to agree on the issue of prejudgment interest.

3

L01491

M.      National Union has filed various proofs of claim against the Debtors for the

obligations of the Debtors to National Union as a result of the Bonds. Pursuant to a Stipulation

between the Debtors and National Union dated February 1, 2006, National Union's sole

surviving claim against the Debtors related to the Bonds is claim number 9553 which asserts a

claim against the Debtors in the amount of $46,971,764 plus unliquidated amounts which

National Union asserts are secured by certain letters of credit (the "National Union Claim").

N.      Claimants have filed certain proofs of claim against the Debtors, identified as

claims nos. 103, 104, 13945, 13954, 14036 and 14053 for unpaid amounts they assert are owing

by the Debtors to Claimants under the Settlement Agreements (the "Claimants' Claims").

O.      The Parties now desire to enter into this Agreement, on the terms and conditions

as set forth herein, in order to resolve the outstanding issues between them, including but not

limited to: (a) all issues regarding all claims that have been submitted to Debtors for payment

under the Settlement Agreements; (b) the issue of pre judgment interest; (c) how the amounts

owing under the Settlement Agreements shall be funded by National Union; (d) the allowed

amount of National Union's Claim; (e) release of the Bonds; (f) satisfaction and cancellation of

the Settlement Agreements and disallowance of Claimant's Claims; and (f) dismissal of the

Adversary Proceeding.

### AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the Parties agree as follows:

1.      National Union shall pay Claimants the sum of $15,350,000 in full satisfaction

and settlement of National Union's obligations under the Bonds (the "Payment Amount"), which

Payment Amount shall be paid by National Union to Claimants within 3 business days after an

order entered by the Bankruptcy Court approving this Agreement becomes a Final Order, as

defined below (the "Closing Date"), such order to be in form and content reasonably satisfactory

4

K&E 123125281 4

to the Parties, and each of them, which shall authorize the Debtors to perform their obligations under this Agreement, cancel and release the Bonds, allow the National Union Claim in the sum provided for herein, and dismiss the Adversary Proceeding (the "Approval Order"). Notwithstanding the foregoing, the Closing Date shall not occur before December 10, 2007.

2.      Upon payment by National Union of the Payment Amount, (a) the Bonds shall be cancelled and the originals returned to National Union on the Closing Date and all obligations of National Union under the Bonds shall be deemed fully satisfied; (b) the Settlement Agreements and all obligations of the Debtors thereunder shall be deemed fully satisfied, and (c) the Adversary Proceeding shall be dismissed.

3.      In order to partially fund the Payment Amount, National Union shall draw down (a) the remainder of letter of credit no. 7404289 issued by Bank of America N.A. in the remaining amount of $710,110 and (b) letter of credit no. 7404163 issued by Bank of America N.A. in the amount of $6 million, and both letters of credit shall be cancelled. National Union shall draw on the letters of credit five business days prior to the Closing Date.

4.      Surety Bond No. ESD 7310985 dated September 19, 2000 issued on behalf of Grace by American Home Assurance Company, an affiliate of National Union, in favor of the Tennessee Department of Heath and Environment in the penal sum of $31,772,596.00 (the "Tennessee Bond") shall remain unaltered and nothing herein shall provide any basis to cancel the Tennessee Bond notwithstanding the draw by National Union of letter of credit no. 7404163 outlined in paragraph 3 above which was posted as partial security for Grace's obligations to American Home Assurance Company for the Tennessee Bond, and Debtors shall have no obligation to provide a replacement letter of credit.

5

K&E 17226628.4

L01493

5.      Upon payment by National Union of the Payment Amount, National Union Claim

No. 9553 shall be allowed in the total amount of $9,806,018, as an unsecured, pre-petition, non-

priority claim against the chapter 11 estates of the Debtors, which claim consists of:  (a)

$8,639,890, the balance of the Payment Amount after applying the letter of credit proceeds

outlined in paragraph 3 above; (b) National Union's claim for unpaid bond premiums on the

Bonds in the amount of $432,193; and (c) National Union's claim for litigation expenses in

connection with the Bonds in the amount of $733,935.  All other amounts claimed owing on

Claim No. 9553 shall be hereby expunged and disallowed.  In the event that any plan or plans of

reorganization that the Debtors, or any of them, may confirm in their bankruptcy cases provides

for payment of interest on unsecured, pre-petition, non-priority claims, the National Union Claim

in the amount allowed herein, shall bear interest at the rate provided in such plan or plans from

and after the Closing Date without regard to the date from which interest accrues under the terms

of such plan or plans of reorganization with respect to any other creditor.

6.      The amounts set forth in paragraph 5 above are being allowed without prejudice

to:  (i) any further amounts National Union may claim for legal fees and expenses accrued in

connection with the Bonds for legal services after September 30, 2007, (ii) any additional

amounts due for premiums arising under the Bonds in excess of the amount allowed herein for

which National Union can provide the Debtors evidence of such further amounts owing; (iii)

amounts due for premiums arising under the Tennessee Bond, and (iv) any other amounts

unrelated to the Bonds that may be due to National Union.  Notwithstanding any other provision

in the Agreement, no claim listed in the preceding sentence is released or reduced by this

Agreement.  National Union may file new proofs of claim ("New POCs") for (i) amounts

National Union may claim for legal fees and expenses accrued in connection with the Bonds

6

L01494

after September 30, 2007, (ii) additional amounts due for premiums on the Bonds in excess of the amount allowed herein, if applicable, and (iii) amounts due for premiums arising under the Tennessee Bond, and such New POCs shall not be deemed to be untimely. All parties reserve all their rights and defenses (other than untimeliness) with respect to the claims described in this paragraph.

       7.      Upon payment by National Union of the Payment Amount, all of Claimants' claims which were submitted to Debtors under the Settlement Agreements at any time shall be disallowed and expunged. To the extent that Claimants seek to pursue claims which they allege were covered under the Settlement Agreements but were not previously submitted to Debtors as a result of the chapter 11 filing and notwithstanding any bar date previously imposed in Debtors' Chapter 11 cases, these Claimants shall have 90 days from the date of a Final Order to file such proofs of claims and this Agreement shall not release or affect such claims. National Union shall have no liability for any claims preserved, asserted or allowed pursuant to this paragraph and Debtors reserve their rights to object to any such claims. Furthermore, this Agreement does not affect or in any way relate to "new asbestos-related cancers" among Settling Plaintiffs as outlined in paragraph 9 of the Settlement Agreements and the corresponding releases, and all rights outlined thereunder are preserved.

       8.      In the event that the Tennessee Bond outlined in paragraph 4 above is later drawn upon prior to Debtors' emergence from their Chapter 11 cases, National Union shall be allowed a general unsecured claim to be reimbursed for any draw or other costs or expenses due National Union that may arise in connection with the Tennessee Bond. Such general unsecured claim shall be entitled to the same treatment and conditions with respect to interest as the National Union Claim outlined in paragraph 5 above. In the event that the Tennessee Bond is not drawn

7

L01495

upon prior to Debtors' emergence from Chapter 11, Debtors shall assume the agreement establishing the Tennessee Bond in its chapter 11 plan and perform its obligations thereunder in the ordinary course of its business, other than providing a replacement letter of credit.

9.      To the extent that National Union makes any payments under this Agreement or under the Tennessee Bond or other pre-exiting prepetition obligations to the Debtors, and to the extent National Union has a right of setoff, this Agreement hereby substitutes an administrative priority claim equal in value, if any, to such right of setoff. No such administrative priority claim shall be allowed to or paid to National Union pursuant to such claim unless and until the Bankruptcy Court determines that National Union had a right of offset equal in value to the amount of such administrative priority claim. The Debtors shall retain all rights to contend that there is no such right of setoff and to object to the administrative priority claim substituted herein. The intent of this paragraph is to preserve the status quo and to allow National Union to make payments to Claimants and the Debtors without the need to raise setoff issues each time a payment is made. All entities shall retain all rights and defenses in connection with such payments and the administrative priority claims and no party is deemed to have agreed that any such setoff rights exist or not.

10.      As used herein, the term "Final Order" means an order of the Bankruptcy Court that has been entered upon the docket in the Debtors' chapter 11 cases, and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument or rehearing was sought, and

8

L01496

the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a "Final Order."

11.    The Parties will cooperate to cause the order approving this Agreement to become a Final Order at the earliest date possible. The Parties further agree that if the Bankruptcy Court enters an order approving this Agreement, which order does not become a Final Order for any reason within 120 days of the entry of the order, each Party shall have the right to declare this Agreement null and void, in which case the Parties will have all of the rights, obligations and claims that they had prior to executing this Agreement.

12.    Claimants agree that they are forever barred, estopped, and enjoined from asserting any additional claims against National Union or the Debtors, except to the extent that entities other than National Union may have liability as outlined in paragraph 7 above, with respect to the claims addressed by the Settlement Agreements.

13.    The Parties agree that Claimants are not parties to the agreements contained above in paragraphs 3, 4, 5, 6, 8 and 9 and are not making any promise or representation with regard to such paragraphs.

## RELEASES

14.    Other than the Parties' obligations hereunder, the Debtors, on behalf of themselves and each of their subsidiaries and affiliates, hereby release and discharge National Union and Claimants and each of their/its successors, heirs, assigns, agents, partners, attorneys, family members, employees, shareholders, officers, directors, members, representatives, insurers, corporations, partnerships and their subsidiaries, affiliates and predecessors, of and from any and all manner of action or actions, cause or causes of action in law or in equity, suits, debts, liens,

9

K&E 17224418.4

contracts, agreements, promises, liabilities, claims, demands, damages, losses, costs or expenses of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, from the beginning of time to the date of this Agreement which the Debtors now have or may hereafter have by reason of any matter, cause or thing whatsoever from the beginning of time to the date hereof relating to or arising out of the Settlement Agreements, Bonds, letters of credit, National Union Claim, Claimants' Claims and any claims arising out of, based upon, or relating to any of the matters raised in the Settlement Agreements, Bonds, letters of credit, National Union Claim or Claimants' Claims. Without limiting the generality of the foregoing, the Debtors, on behalf of themselves and each of their subsidiaries and affiliates, in the event the National Union Claim is hereafter transferred, sold or assigned, agrees that the National Union Claim shall not be subject at any time to any right of setoff or any other defense arising out of the Tennessee Bond, any other obligations owed to any of the Debtors, or otherwise.

15.    Other than the Parties' obligations hereunder, National Union, on behalf of itself and each of its subsidiaries and affiliates, hereby releases and discharges Claimants, the Debtors and each of their/its successors, heirs, assigns, agents, partners, attorneys, family members, employees, shareholders, officers, directors, members, representatives, insurers, corporations, partnerships and their subsidiaries, affiliates and predecessors, of and from any and all manner of action or actions, cause or causes of action in law or in equity, suits, debts, liens, contracts, agreements, promises, liabilities, claims, demands, damages, losses, costs or expenses of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, from the beginning of time to the date of this Agreement which National Union now has or may hereafter have by reason of any matter, cause or thing whatsoever from the beginning of time to the date hereof relating to or arising out of the Settlement Agreements, Bonds, letters of credit, National

10

K&E 12216935.4

L01498

Union Claim or Claimants' Claims and any claims arising out of, based upon, or relating to any of the matters raised in the Settlement Agreements, Bonds, letters of credit, National Union Claims or Claimants' Claims.

16.    Other than the Parties' obligations hereunder, and except as set forth in paragraph 7 above, Claimants on behalf of themselves and each of their respective subsidiaries and affiliates, partners, members and share or other equity holders, hereby releases and discharges the Debtors and National Union and each of their/its successors, heirs, assigns, agents, partners, attorneys, family members, employees, shareholders, officers, directors, members, representatives, insurers, corporations, partnerships and their subsidiaries, affiliates and predecessors, of and from any and all manner of action or actions, cause or causes of action in law or in equity, suits, debts, liens, contracts, agreements, promises, liabilities, claims, demands, damages, losses, costs or expenses of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, from the beginning of time to the date of this Agreement which Claimants now has or may hereafter have by reason of any matter, cause or thing whatsoever from the beginning of time to the date hereof relating to or arising out of the Settlement Agreements, Bonds, letters of credit, National Union Claim or Claimants' Claims and any claims arising out of, based upon, or relating to any of the matters raised in the Settlement Agreements, Bonds, letters of credit, National Union Claim or Claimants' Claims. It is understood and agreed that nothing herein shall settle, release or affect in any way the rights of the parties in that certain case entitled Aaron C. Edwards, et al. v. Pittsburgh Corning Corporation, et al (Cause No. B-150,896-J; 60th District Court, Jefferson County, Texas), including the judgment rendered therein against W. R. Grace & Co. and the pending appeal."

L01499

17.    Each of the Parties represents and warrants to all other Parties that it is the sole (or joint with one or more other Parties) and lawful owner of all right, title and interest in and to every claim that is releasing hereby and that no portion of any claim, right, demand, action or cause of action that it has or might have against any other Party, nor any portion of any such claim, right, demand, action or cause of action to which it may be entitled, has been assigned or transferred to any other person, firm or corporation in any manner (other than assignments which may have been made by Claimants to their counsel pursuant to any agreement between such parties), including by way of subrogation or operation of law or otherwise. Each Party further represents and warrants to all other Parties that it does not know of any person or entity not a Party hereto who has (or claims to have) any interest in any claim or right which is released hereby. In the event that any claim, demand, or suit should be made or instituted against a Party or Parties because of a purported assignment, subrogation, or transfer, the Party who so assigned, subrogated or transferred that claim, demand, or suit agrees to indemnify and hold harmless the other Party or Parties against the claim, suit or demand and to pay and satisfy any such claim, suit or demand, including necessary expenses of investigation, attorneys' fees and costs.

## MISCELLANEOUS

18.    This Agreement shall be construed and interpreted in accordance with the laws of the State of Delaware.

19.    All Parties agree that this Agreement may be executed in counterparts, and that any copy of this Agreement which contains the original or a photocopy or facsimile of the signature of each and every signatory hereto shall be deemed an original.

20.    Each Party shall bear all attorney fees and costs incurred by such Party in connection with the Settlement Agreements, Bonds, letters of credit, National Union Claim or Claimants' Claims, this Agreement and the matters and documents referred to herein and all

12

K&E 17334324.4

related matters, except for the obligations of Debtors to National Union outlined in paragraphs 5 and 6 above.

21.    This Agreement sets forth the entire agreement between the Parties concerning the settlement of the disputes described in this Agreement, and shall supersede any and all prior agreements or understandings, written or oral, between these Parties pertaining to the subject matter hereof except for the releases previously executed by the settling plaintiffs under the Settlement Agreements. Each Party agrees that no provision or breach of this Agreement may be waived unless the waiver is expressed in a writing signed by the Party charged with the waiver, and that the waiver of any one provision or breach shall not be deemed to constitute a waiver of any other provision or breach. This Agreement may not be amended, modified, or terminated, in whole or in part, except by an instrument in writing, executed by the Parties or their authorized representatives.

22.    To the extent that any additional documents or acts are reasonably required to be executed or performed by a Party in order to effectuate or carry out this Agreement, the Party in question shall promptly execute and deliver such documents and/or perform said acts in accordance with the terms hereof.

23.    The liability for any claim released herein is denied by the Parties herein released, and this final compromise and settlement thereof shall never be treated as an admission of liability or responsibility at any time for any purpose.

24.    The terms of this Agreement have been negotiated at arms' length among sophisticated Parties represented by counsel, and this Agreement in its final form is the result of the combined efforts of counsel for all Parties. As a result, the rule of "Interpretation Against the Draftsman" shall not apply in any dispute over interpretation of the terms of this Agreement.

13

K&E 12226528.4

25.    Any dispute concerning the interpretation, performance or enforcement of this Agreement or any other matter arising from or connected with this Agreement shall be determined solely by proceedings in the Debtors' chapter 11 cases or in the event the chapter 11 cases are closed, in the appropriate State or Federal Court in Delaware.

26.    In entering into this Agreement, the Parties represent that they each relied upon the advice of their own attorneys, who are attorneys of their own choice, concerning the legal consequences of this Agreement; that the terms of this Agreement have been completely read and explained to the Parties by their respective attorneys; and that the terms of this Agreement are fully understood and voluntarily accepted by the Parties.

27.    All Parties agree that all warranties and representations expressed in this Agreement shall survive the execution of the Agreement.

28.    Any provision of this Agreement which is deemed invalid, illegal or unenforceable shall be ineffective only to the extent of such invalidity, illegality or unenforceability, without affecting in any way the validity, legality or enforceability of any other provision of this Agreement, provided that the economic or legal substance of this Agreement is not affected in any manner materially adverse to any Party.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth above.

W. R. GRACE & CO., et al., Debtors and Debtors in possession

By _____
Jay Hughes
Sr. Litigation Counsel

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH NA, AIU

14

K&B 13224928.4

L01502

INSURANCE COMPANY, AMERICAN HOME
ASSURANCE COMPANY, GRANITE STATE
INSURANCE COMPANY, ILLINOIS
NATIONAL INSURANCE COMPANY, THE
INSURANCE COMPANY OF THE STATE OF
PENNSYLVANIA, NEW HAMPSHIRE
INSURANCE COMPANY, COMMERCE AND
INDUSTRY INSURANCE COMPANY AND
COMMERCE AND INDUSTRY INSURANCE
COMPANY OF CANADA

By _____
    Their Authorized Signatory
       James J. Murphy

REAUD, MORGAN QUINN AND
ENVIRONMENTAL LITIGATION GROUP P.C.
for Claimants

By _____
    Their Authorized Signatory

15

L01503

INSURANCE COMPANY, AMERICAN HOME
ASSURANCE COMPANY, GRANITE STATE
INSURANCE COMPANY, ILLINOIS
NATIONAL INSURANCE COMPANY, THE
INSURANCE COMPANY OF THE STATE OF
PENNSYLVANIA, NEW HAMPSHIRE
INSURANCE COMPANY, COMMERCE AND
INDUSTRY INSURANCE COMPANY AND
COMMERCE AND INDUSTRY INSURANCE
COMPANY OF CANADA

By _____
    Their Authorized Signatory

REAUD, MORGAN QUINN AND
ENVIRONMENTAL LITIGATION GROUP P.C.
for Claimants

By _____ , _THEIR ATTORNEY_
    Their Authorized Signatory

15

K&E 12736828.4

**L01504**

November 30, 2007 at 4:00 p.m. The Debtors' extended the objection for the Official Committee

of Unsecured Creditors (the "Committee") until December 5, 2005, at 5:00 p.m. The Committee

informed the Debtors that they do no intend to file an objection to the Motion.

It is hereby respectfully requested that the Order attached to the Application be

entered at the Court's earliest convenience.

Dated: December 4, 2007

KIRKLAND & ELLIS LLP
David M. Bernick P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:     (312) 861-2000
Facsimile:      (312) 861-2200

and

PACHULSKI STANG ZIEHL & JONES LLP

_James E. O'Neill_

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
Telephone:     (302) 652-4100
Facsimile:      (302) 652-4400

Co-Counsel to Debtors and Debtors-in-Possession

L01506