# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - -

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| | : | Case No. |
| W.R. GRACE & CO., et al, | : | 01-01139 JKF |
| | : | |
| | : | (Jointly |
| Debtors | : | Administered) |

- - -

Friday, May 1, 2009

- - -

Oral deposition of PETER VAN N. LOCKWOOD, ESQUIRE, taken pursuant to notice, was held at the offices of CAPLIN & DRYSDALE, One Thomas Circle N.W., Suite 1100, Washington, DC 20005, commencing at 9:43 a.m., on the above date, before Lori A. Zabielski, a Registered Professional Reporter and Notary Public in and for the Commonwealth of Pennsylvania.

- - -

MAGNA LEGAL SERVICES
Seven Penn Center
1635 Market Street
8th Floor
Philadelphia, Pennsylvania 19103

Page 2

```
 1  APPEARANCES:
 2
 3  DRINKER BIDDLE & REATH, LLP
    BY: MICHAEL F. BROWN, ESQUIRE
 4      JEFFREY M. BOERGER, ESQUIRE
    One Logan Square
 5  18th & Cherry Streets
    Philadelphia, Pennsylvania 19103-6996
 6  215.988.2988
    (brownmf@dbr.com)
 7  (jeffrey.boerger@dbr.com)
    Representing OneBeacon America Insurance
 8  Company, Seaton Insurance Company,
    Government Employees Insurance Company,
 9  Columbia Insurance Company f/k/a Republic
    Insurance Company
10
11
    CAPLIN & DRYSDALE, CHARTERED
12  BY: NATHAN D. FINCH, ESQUIRE
        JEFFREY A. LIESEMER, ESQUIRE*
13      (*VIA TELECONFERENCE)
    One Thomas Circle N.W.
14  Suite 1100
    Washington, DC 20005
15  202.862.7801
    (ndf@capdale.com)
16  (jal@capdale.com)
    Representing Grace, Official Committee of
17  Asbestos Personal Injury Claimants
    ("ACC"), and Witness
18
19
    W.R. GRACE & CO.
20  BY: RICHARD C. FINKE, ESQUIRE*
        ASSISTANT GENERAL COUNSEL
21      (*VIA TELECONFERENCE)
    5400 Broken Sound Boulevard, NW
22  Suite 300
    Boca Raton, Florida 33487
23  561.362.1533
    Representing W.R. Grace & Co.
24
```

Page 3

```
 1  APPEARANCES (continued)
 2
 3  KIRKLAND & ELLIS, LLP
    BY: BARBARA M. HARDING, ESQUIRE
 4      THEODORE L. FREEDMAN, ESQUIRE
    655 Fifteenth Street, N.W.
 5  Washington, DC 20005-5793
    202.879.5081
 6  (barbara.harding@kirkland.com)
    (tfreedman@kirkland.com)
 7  Representing the Debtors
 8
 9  SIMPSON THACHER & BARTLETT, LLP
    BY: ELISA ALCABES, ESQUIRE
10  425 Lexington Avenue
    New York, New York 10017-3954
11  212.455.3133
    (ealcabes@stblaw.com)
12  Representing Travelers Casualty and
    Surety Company
13
14
    VORYS, SATER, SEYMOUR AND PEASE, LLP
15  BY: TIFFANY STRELOW COBB, ESQUIRE*
        ROBERT J. SIDMAN, ESQUIRE*
16      (*VIA TELECONFERENCE)
    52 East Gay Street
17  Columbus, Ohio 43215
    614.464.8322
18  (tscobb@vorys.com)
    Representing The Scotts Company, LLC
19
20
    COHN WHITESELL & GOLDBERG, LLP
21  BY: DANIEL C. COHN, ESQUIRE
    101 Arch Street
22  Boston, Massachusetts 02110
    617.951.2505
23  (cohn@cwg11.com)
    Representing the Libby Claimants
24
```

Page 4

```
 1  APPEARANCES (continued)
 2
 3  SPEIGHTS & RUNYAN
    BY: DANIEL H. SPEIGHTS, ESQUIRE*
 4      (* VIA TELECONFERENCE)
    200 Jackson Avenue East
 5  P.O. Box 685
    Hampton, South Carolina 29924
 6  803.943.4444
    (dspeights@speightsrunyan.com)
 7  Representing Anderson Memorial Hospital
 8
 9  TUCKER ARENSBERG
    BY: MICHAEL A. SHINER, ESQUIRE
10  1500 One PPG Place
    Pittsburgh, Pennsylvania 15222
11  412.594.5586
    (mshiner@tuckerlaw.com)
12  Representing Certain London Market
    Insurers and AXA Belgium
13
14
    MENDES & MOUNT, LLP
15  BY: CAROLINA ACEVEDO, ESQUIRE*
        (*VIA TELECONFERENCE)
16  750 Seventh Avenue
    New York, New York 10019
17  212.261.8262
    (carolina.acevedo@mendes.com)
18  Representing AXA Belgium as Successor to
    Royale Belge SSA
19
20
    MENDES & MOUNT, LLP
21  BY: ALEXANDER MUELLER, ESQUIRE*
        (*VIA TELECONFERENCE)
22  750 Seventh Avenue
    New York, New York 10019-6829
23  212.261.8296
    (alexander.mueller@mendes.com)
24  Representing London Market Companies
```

Page 5

```
 1  APPEARANCE (continued)
 2
 3  FORD MARRIN ESPOSITO & WITMEYER & GLESER
    BY: ELIZABETH M. DeCRISTOFARO, ESQUIRE
 4  Wall Street Plaza
    New York, New York 10005-1875
 5  212.269.4900
    Representing Continental Casualty Company
 6  and Continental Insurance Company
 7
 8  BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
    BY: MATTHEW I. KRAMER, ESQUIRE
 9  200 South Biscayne Boulevard
    Suite 2500
10  Miami, Florida 33131-5340
    305.450.7246
11  (mkramer@bilzin.com)
    Representing Property Damage Committee
12
13
    STROOCK & STROOCK & LAVAN, LLP
14  BY: ARLENE G. KRIEGER, ESQUIRE
    180 Maiden Lane
15  New York, New York 10038-4982
    212.806.5400
16  (akrieger@stroock.com)
    Representing Official Committee of
17  Unsecured Creditors
18
19  CROWELL & MORING, LLP
    BY: MARK PLEVIN, ESQUIRE
20      NOAH S. BLOOMBERG, ESQUIRE
    1001 Pennsylvania Avenue NW
21  Washington, DC 20004-2595
    202.624.2913
22  (mplevin@crowell.com)
    (nbloomberg@crowell.com)
23  Representing Fireman's Fund Insurance
    (Surety Bond)
24
```

**Page 6**

1  APPEARANCES (continued)
2
   STEVENS & LEE, P.C.
3  BY: JOHN D. DEMMY, ESQUIRE
   1105 North Market Street, 7th Floor
4  Wilmington, Delaware 19801
   302.654.5180
5  (jdd@stevenslee.com)
   Representing Fireman's Fund Insurance
6
7
   ALAN B. RICH LAW OFFICES
8  BY: ALAN B. RICH, ESQUIRE
   Elm Place, Suite 4620
9  1401 Elm Street
   Dallas, Texas 75202
10 214.744.5100
   (arich@alanrichlaw.com)
11 Representing Property Damage FCR
12
13 CONNOLLY BOVE LODGE & HUTZ, LLP
   BY: JEFFREY C. WISLER, ESQUIRE
14 The Nemours Building
   1007 North Orange Street
15 P.O. Box 2207
   Wilmington, Delaware 19899
16 302.88.6528
   (jwisler@cblh.com)
17 Representing Maryland Casualty
18
19 ECKERT SEAMANS CHERIN & MELLOTT, LLC
   BY: EDWARD J. LONGOSZ, II, ESQUIRE
20 1747 Pennsylvania Avenue, NW
   12th Floor
21 Washington, DC 20006
   202.659.6619
22 (elongosz@eckertseamans.com)
   Representing Maryland Casualty and Zurich
23
24

**Page 7**

1  APPEARANCES (continued)
2
   WILEY REIN, LLP
3  BY: KARALEE C. MORELL, ESQUIRE
   1776 K Street NW
4  Washington, DC 20006
   202.719.7520
5  (kmorell@wileyrein.com)
   Representing Maryland Casualty and Zurich
6
7
   COZEN O'CONNOR
8  BY: JACOB C. COHN, ESQUIRE
   1900 Market Street
9  Philadelphia, Pennsylvania 19103-3508
   215.665.2147
10 (jcohn@cozen.com)
   Representing Federal Insurance Company
11
12
   ORRICK HERRINGTON & SUTCLIFFE, LLP
13 BY: JONATHAN P. GUY, ESQUIRE
      JOSHUA M. CUTLER, ESQUIRE
14 Columbia Center
   1152 15th Street, N.W.
15 Washington, DC 20005-1706
   202.339.8516
16 (jguy@orrick.com)
   Representing Future Claimants
17 Representative
18
19 CUYLER BURK, P.C.
   BY: ANDREW CRAIG, ESQUIRE
20 4 Century Drive
   Parsippany, New Jersey 07054
21 973.734.3200
   (acraig@cuyler.com)
22 Representing Allstate Insurance Company
23
24

**Page 8**

1  APPEARANCES (continued)
2
3  WILSON ELSER MOSKOWITZ EDELMAN & DICKER,
   LLP
4  BY: CARL PERNICONE, ESQUIRE*
      (*VIA TELECONFERENCE)
5  150 East 42nd Street
   New York, New York 10017-5639
6  212.915.5656
   (carl.pernicone@wilsonelser.com)
7  Representing Arrowood Indemnity Company
8
9  WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
   BY: KEVIN J. MANGAN, ESQUIRE*
10    (*VIA TELECONFERENCE)
   222 Delaware Avenue
11 Suite 1501
   Wilmington, Delaware 19801
12 302.252.4361
   (kmangan@wcsr.com)
13 Representing State of Montana
14
15 PEPPER HAMILTON, LLP
   BY: LINDA J. CASEY, ESQUIRE*
16    (*VIA TELECONFERENCE)
   3000 Two Logan Square
17 Philadelphia, Pennsylvania 19103
   215.981.4000
18 (caseyl@pepperlaw.com)
   Representing BNSF Railway Company
19
20    - - -
21
22
23
24

**Page 9**

1       - - -
2     I N D E X
3       - - -
4
5  Testimony of:
6  PETER VAN N. LOCKWOOD, ESQUIRE
7
8  By Mr. Brown        Page 12
9  By Ms. Alcabes      Page 267
10 By Ms. Cobb         Page 339
11 By Mr. Cohn         Page 368
12
13
14       - - -
15     E X H I B I T S
16       - - -
17 NO.  DESCRIPTION              PAGE
18 1    Amended Notice of Deposition
        of Asbestos PI Committee...   12
19
     2  Objections to the Official
20      Committee...                  12
21 3    Form 8-K and Term Sheet       15
22 4    Exhibit-6 to Exhibit Book     26
23 5    First Amended Joint Plan of
        Reorganization...             27
24

Page 118

```
         provision, essentially that we are
 2       going to transfer the assets to
 3       the Trust and if you got a claim
 4       or an interest in the assets, then
 5       you can litigate that claim
 6       against the Trust.
 7              But we are going, I guess,
 8       have potential confirmation
 9       objections about whether there are
10       any such claims. I mean, the mere
11       assertion of a claim doesn't mean
12       that it's valid.
13   BY MR. BROWN:
14       Q.    Okay. If I can direct your
15   attention down to 7.2.4, which is
16   entitled Assignment and Enforcement of
17   Asbestos PI Trust Causes of Action.
18       A.    Yes.
19       Q.    I must confess, I am a bit
20   baffled by this one, so I need some help
21   with it.
22              How do Asbestos PI Trust
23   causes of action differ from asbestos
24   insurance rights?
```

Page 119

```
       A.    Well, I have to go back and
 2   look at the definitions to answer that
 3   question.
 4              Well, I think asbestos PI
 5   Trust causes of action does include
 6   asbestos insurance rights.
 7       Q.    What else does it include?
 8       A.    Well, if you look at the
 9   definition, it includes defenses such
10   that, for example, if a claimant says, I
11   have a valid claim against Grace that's
12   channelled to the Trust and the Trust
13   disagrees with it, the Trust retains all
14   the defenses to that claim that Grace
15   would have had. That's clause A under
16   definition 47.
17       Q.    Okay.
18       A.    Clause B is, for example,
19   contribution rights, et cetera. So, for
20   example, if the Trust has -- if Grace has
21   contribution rights that it has not
22   asserted and that which are still valid
23   against a codefendant in a tort system
24   and the codefendant brings in indirect
```

Page 120

```
 1   Asbestos PI Trust claim against the
 2   Trust, the Trust could assert Grace's
 3   contribution rights as a counterclaim to
 4   that. That's two categories of things
 5   that this is intended to include.
 6       Q.    Okay. Let's go to page 64,
 7   7.2.6, Creation and Termination of the
 8   Asbestos PI TAC.
 9       A.    Correct.
10       Q.    It says, "On or before the
11   Confirmation Date, the initial members of
12   the Asbestos PI TAC shall be selected by
13   the Asbestos PI Committee."
14              That has already occurred,
15   correct?
16       A.    Correct. They are
17   identified in the Asbestos PI Trust
18   Agreement.
19       Q.    Okay. How many actual
20   committee members are there on the
21   Asbestos PI Committee?
22       A.    I don't remember. But we
23   have the Disclosure Statement here. I
24   could re    uickl find out b    ust
```

Page 121

```
 1   looking at it where they are identified.
 2       Q.    Okay.
 3       A.    It's certainly more than the
 4   four that are going to be on the TAC.
 5       Q.    Okay. Is it fair to say
 6   that the actual committee members who are
 7   asbestos claimants act through their tort
 8   counsel in connection with their
 9   obligations as committee members?
10       A.    As a general proposition,
11   that's true. In any given committee on
12   any given issue, an individual member
13   might choose to show up and act on their
14   own behalf, and there have been some
15   examples in the past where that has
16   occurred.
17              But, as a general
18   proposition, the committee members are
19   blue-collar folks of limited legal
20   knowledge, and they delegate to their
21   personal injury lawyers their sort of
22   activities acting for them as an agent on
23   these committees.
24       Q.    Oka . You are counsel to
```

Page 122

1  the Asbestos PI Committee. You don't
2  have occasion, do you, to deal directly
3  with the actual claimants?
4          MR. FINCH: Object to the
5      form.
6          THE WITNESS: That's not
7      entirely true. I get calls
8      periodically that I just got this
9      incomprehensible Disclosure
10     Statement from Grace and could you
11     please tell me what it means or
12     something. But as a general
13     proposition --
14         MR. FINCH: Transfer to it
15     to Finch.
16         THE WITNESS: Or where do I
17     file my proof of claim.
18         But, as a general
19     proposition, I don't nor do other
20     folks at Caplin & Drysdale deal
21     directly with original committee
22     members.
23 BY MR. BROWN:
24     You deal with ersonal

Page 123

1  injury attorneys, correct?
2      A.   As a general proposition, we
3  deal with the PI lawyers who have been
4  appointed by their client committee
5  member to act on their behest in the
6  committee.
7      Q.   Now, the TAC members are
8  John Cooney, Perry Weitz, Joe Rice,
9  and -- who was the fourth one?
10     A.   Well, I can tell you by
11 looking at the PI Trust Agreement, which
12 is Exhibit-2 to the Plan and looking at
13 the signature page, we should have, which
14 is --
15     Q.   Russell Budd.
16     A.   Russell Budd, John Cooney,
17 Joseph Rice, and Perry Weitz.
18     Q.   And each of them works for a
19 law firm, correct?
20     A.   Each of them is a partner a
21 law firm, yes.
22     Q.   Sorry. I didn't mean to...
23         Now, does each of those law
24 firms have a client that sits on the

Page 124

1  committee?
2      A.   Yes.
3      Q.   And do those committee
4  members for those firms act through those
5  four gentlemen?
6      A.   On the committee?
7      Q.   Yes.
8      A.   Generally, yes.
9      Q.   Okay. So is it fair to say
10 that Mr. Rice, Mr. Weitz, Mr. Cooney, and
11 Mr. Budd selected themselves to be
12 members of the TAC?
13     A.   No, because there are many
14 other members of the committee, and the
15 committee as a whole, which, in this
16 particular case, I believe has a majority
17 of members that are not these four
18 gentlemen, decided which of their members
19 they thought would be appropriate persons
20 to put on the TAC.
21     Q.   And how was that decided?
22     A.   As far as I know, they had
23 informal discussions, and they had a
24 committee meeting. I don't remember

Page 125

1  whether there were votes or anything like
2  that. But at the end of the day, through
3  some sort of nomination or informal
4  self-nomination or self-nomination,
5  speeches, lobbying, discussions, what
6  have you, there came a time at which the
7  committee voted to select these four
8  people.
9      Q.   Okay.
10     A.   And I might add that the
11 Future Claimants Representative had a
12 sort of a generalized oversight in the
13 sense that while the Plan contemplates
14 that the committee would nominate the
15 TAC. If the FCR thought, for some reason
16 or another, that somebody had been put on
17 the TAC that was a real bad idea, the
18 committee would probably have had to
19 listen to the Future Representative's
20 views on that even though the Futures Rep
21 did not have sort of a formal veto or
22 role in that process.
23     Q.   Okay. I want to now turn to
24     e -- well, it's 69 on m  version,

Page 126

1  Section 7.7, Conditions to Occurrence of
2  the Confirmation Date, and I want to
3  focus your attention first on (g).
4      A.  I see it.
5      Q.  What are the securities that
6  are funding the Asbestos PI Trust?
7      A.  The warrant and the Deferred
8  Payment Agreement, which is a debt
9  obligation, which also includes, I
10 believe, a promissory note or promissory
11 notes.
12     Q.  Can you describe for me the
13 circumstances under which the asbestos PI
14 claim -- excuse me -- the Asbestos PI
15 Trust will be funded with dividends?
16     A.  In the event that it
17 exercises the warrant and acquires stock
18 pursuant to that exercise and the stock
19 pays dividends, it will get dividends.
20     Q.  And if the warrant is not
21 exercised?
22     A.  Then it won't get dividends.
23     Q.  What about if there is a
24 default under the deferred payment note?

Page 127

1      A.  My recollection is that the
2  Trust has the right to get 50.1 percent
3  of the stock of the Debtor under those
4  circumstances.
5          But, again, the terms of --
6  that's a very complicated set of
7  documents, and the precise terms of that
8  are whatever the document states. I can
9  only give you a sort of a very
10 generalized description.
11     Q.  Okay. Let me draw your
12 attention now down to (l), condition (l).
13     A.  Yes, I see it.
14     Q.  What does that mean?
15         MS. HARDING:  Object to
16 form.
17         THE WITNESS:  Well, what it
18 means is that if you didn't have a
19 TDP, which includes things like a
20 payment percentage and mechanisms
21 for trying to trying to limit the
22 ways in which the Trust expends
23 monies on claims, and you just had
24 sort of a come in, sue the Trust

Page 128

1  and the tort system, et cetera,
2  you would have a
3  first-come-first-serve operation
4  where there was the distinct
5  possibility that, as it happened
6  in the Manville Trust at the very
7  beginning, all the money would run
8  out the door at the front end, and
9  there wouldn't be anything left
10 for future claimants, which would
11 violate 524(g).
12 BY MR. BROWN:
13     Q.  Okay. Well, the way that
14 this provision is written suggests that
15 any procedures other than those that are
16 set forth in this Plan would defeat the
17 purposes of Section 524(g).
18         Is that what is intended
19 here?
20         MR. FINCH:  Object to form.
21         MS. HARDING:  Object to
22 form.
23 BY MR. BROWN:
24     Q.  Are there other options, is

Page 129

1  the question?
2      A.  If the question is could one
3  hypothesize a somewhat different set of
4  TDPs that had somewhat different
5  procedures, the answer is depending on
6  what that different TDP set of procedures
7  was, you might be able to say the same
8  thing about it.
9          The purpose of this thing is
10 to say that this structure, according to
11 the court, satisfies the requirements of
12 524(g) that say that you have to
13 establish this requirement.
14         I mean, this is a finding of
15 fact that is intended to have the court
16 rule that the Plan does, in fact, meet
17 the requirements of a subsection of
18 524(g).
19     Q.  You could, in fact, have a
20 Plan that met the qualifications for
21 524(g) that actually had a role for
22 asbestos insurance entities, correct?
23         MR. FINCH:  Object to form.
24         MS. HARDING:  Object to