## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Re:  Dkt. No. 20872 |

## HARTFORD'S TRIAL BRIEF IN SUPPORT OF OBJECTIONS TO CONFIRMATION OF  FIRST AMENDED JOINT PLAN OF REORGANIZATION

Hartford Accident and Indemnity Company, First State Insurance Company, Twin City

Fire Insurance Company, and New England Reinsurance Corporation (collectively, "Hartford")

submit this brief in support of their objections to the confirmation of the First Amended Joint

Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al.,

the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future

Claimants' Representative, and the Official Committee of Equity Security Holders (the "Plan

Proponents") Dated February 27, 2009 [Dkt. No. 20872] (the "Plan").  Hartford submits this

brief in accordance with the Third Amended Case Management Order Related to the First

Amended Joint Plan of Reorganization [Dkt. No. 21544].

## PRELIMINARY STATEMENT

The Plan's treatment of the Asbestos Insurance Reimbursement Agreements, including

Hartford's October 8, 1998 Asbestos Settlement Agreement and Release ("the Hartford

Agreement" or "Agreement"), is patently unlawful.[1]  Through confirmation of the Plan, Plan

Proponents in effect seek to have this Court grant a declaratory judgment that the payment of the

---

[1]      Hartford has no outstanding, unsettled insurance policies issued to W.R. Grace or its affiliated debtors.  Its only obligations to any of the Debtors with respect to asbestos liabilities are pursuant to the October 8, 1998 Asbestos Settlement Agreement and Release, which is identified in the Joint plan as an "Asbestos Insurance Reimbursement Agreement."  Accordingly, Hartford's only interest in, and its only objection to, the Joint Plan is with respect to the Plan's treatment of the Asbestos Insurance Reimbursement Agreements.
        Hartford reasserts and incorporates herein all objections previously raised by Hartford and Hartford does not intend to waive any objection by not addressing it in this Trial Brief.

Asbestos PI Trust[2] (to which the rights under the Asbestos Insurance Reimbursement Agreements will be transferred) of any Asbestos PI Claim under the PI TPD will "constitute settlement and payment of such claim by or on behalf of the Debtors or Non-Debtor Affiliates *within the meaning of, and in full compliance with, each Asbestos Insurance Reimbursement Agreement.*" *See* Plan, § 7.2.2(d)(iv).  The inclusion of such a declaration in the Plan, if the Plan is confirmed, could potentially eliminate any defenses that Hartford may have under the Hartford Agreement in response to future, yet unasserted claims under the Agreement by the Asbestos PI Trust.

The court does not have the power to grant the affirmative relief that Plan Proponents have awarded themselves in the Plan.  To do so would be antithetical to well-established substantive and procedural limitations on the power of the Court.  Procedurally, the Court cannot grant this affirmative relief in the context of these plan confirmation proceedings; if it were to consider such relief, it could do so only in the context of an adversary proceeding properly commenced and conducted in accordance with the Federal Rules of Civil Procedure, as incorporated by the Bankruptcy Rules.

Even were an adversary proceeding commenced, however, the declaration that Plan Proponents seek would still be beyond this Court's power to grant, as the Court is further constrained by the limits on its jurisdiction and by well-settled bankruptcy law.  The substantive issue that Plan Proponents ask the Court to address is whether the Asbestos PI Trust's future payments under the PI TDP will warrant reimbursement by Hartford, or whether Hartford may have valid defenses to such payment.  That issue, a run-of-the-mill state-law contract dispute, is clearly a non-core matter, which Hartford is entitled to have finally resolved by an Article III court.  Thus, this Court could not issue a final determination on the matter.  Finally, the Court is

---

[2]    Capitalized terms not otherwise defined herein are defined as they are defined in the Plan.

constrained by well-settled principles of bankruptcy law, which make clear that a bankruptcy

court does not have the ability to unilaterally modify a debtor's contract—which is precisely

what Section 7.2.2(d)(iv) of the Plan purports to do.  *See In re Amatex Corp.*, 97 B.R. 220, 221

(Bankr. E.D. Pa.) (the bankruptcy court's powers cannot "stretch so far as to alter contractual

rights established under state law"), *aff'd sub nom., Amatex Corp. v. Stonewall Ins. Co.*, 102 B.R.

411 (E.D. Pa. 1989).

**I.**     **The Plan's Treatment of the Asbestos Insurance Reimbursement Agreements**

Pursuant to the Hartford Agreement, Hartford and W.R. Grace & Co. and certain of its

affiliated companies compromised certain claims for insurance coverage for asbestos-related

claims asserted by W.R. Grace, and agreed upon terms for Hartford's reimbursement of W.R.

Grace for payments W.R. Grace made for the defense and payment of asbestos-related claims.

W.R. Grace and Hartford operated under that Agreement with respect to asbestos-related claims

from the execution of the Agreement until the commencement of W.R. Grace's bankruptcy case.

The Plan identifies the Hartford Agreement as an Asbestos Insurance Reimbursement

Agreement.  S*ee* Plan, § 1.1(9); Exhibit Book, Asbestos Insurance Transfer Agreement, Schedule

3.  Under the Plan, upon the Effective Date, all "rights, titles, privileges, interests, claims,

demands or entitlements" that Debtors have under any Asbestos Insurance Reimbursement

Agreements will be transferred to the Asbestos PI Trust established under the Plan.  Plan, §

1.1(13); Exhibit Book, Asbestos Insurance Transfer Agreement, § 1.

The controlling provision in the Plan with respect to the post-transfer treatment of the

Asbestos Insurance Reimbursement Agreements is Section 7.2.2(d)(iv) of the Plan.  This section

provides that:

> On the Effective Date, the Asbestos PI Trust shall be the successor
> to all rights of the Debtors and Non-Debtor Affiliates under each
> Asbestos Insurance Reimbursement Agreement.  The Asbestos PI

> Trust's payment of an Asbestos PI Claim under the PI TDP shall
> be deemed to constitute settlement and payment of such claim by
> or on behalf of the Debtors or Non-Debtor Affiliates *within the
> meaning of, and in full compliance with, each Asbestos Insurance
> Reimbursement Agreement.*

Plan, § 7.2.2(d)(iv) (emphasis added).[3]   This language could potentially eliminate Hartford's

defenses under the Agreement with respect to requests for reimbursement from the Asbestos PI

Trust, leaving the Trust free to disregard the terms of the Agreement.   Moreover, the provision is,

at best, ambiguous as to whether the Trust's right to reimbursement is limited to the actual

amount paid by the Trust—*i.e.*, the liquidated value of the claim multiplied by the applicable

payment percentage—or whether the Trust might seek "reimbursement" of some greater amount.

Section 7.2.2(d)(iv), however, arguably would impair Hartford from succeeding on even this

basic defense.

Debtors may argue that Section 7.15 of the Plan—titled "Insurance Neutrality"—ensures

that insurers' rights under their respective policies and agreements are protected.   But, leaving

aside whether that is true with respect to any insurance policies or agreements other than the

Asbestos Insurance Reimbursement Agreements, it is patently not true with respect to Asbestos

Insurance Reimbursement Agreements.   While Section 7.15(a) of the Plan purports to preserve

all of insurers' "legal, equitable or contractual rights," and Section 7.15(c) of the Plan states that

insurers' rights will be determined under their agreements, both of those sections are specifically

subject to an exception—"except as provided in this Section 7.15"—and Section 7.15(h)(ii)

specifically provides that "Asbestos Insurance Entities that are parties to Asbestos Insurance

Reimbursement Agreements shall be bound by the provisions of Section 7.2.2.(d)(iv) with

respect to such Asbestos Insurance Reimbursement Agreements."   Moreover, while Section

---

[3]    Although certain provisions of the Plan suggest that Hartford's rights will be determined under the Hartford
Agreement, *see* Plan, § 7.15(a) and (c), and that the Asbestos Trust will assume the obligations under the Asbestos
Insurance Reimbursement Agreements, *see* Plan, § 7.13, Section 7.15(ii) makes clear that Section 7.2.2(d)(iv)
trumps these other provisions.

7.15(f) purports to preserve the defenses of insurers under Asbestos Insurance Policies, Asbestos

Insurance Settlement Agreements, and Asbestos-in-Place Insurance Coverage, it does not even

purport to do so for Asbestos Insurance Reimbursement Agreements.  Plan, § 1.1(16) (Definition

of Asbestos Insurer Coverage Defenses) (Asbestos Insurance Reimbursement Agreements not

included in definition) and § 7.15(f).

## II.    The Plan Seeks An Improper Declaratory Judgment That This Court Does Not Have the Power to Grant.

Through Section 7.2.2(d)(iv), the Plan seeks declaratory relief that, if granted, will

effectively allow the Asbestos PI Trust to assume the benefits of the Asbestos Insurance

Reimbursement Agreements, but free itself from provisions that would provide a defense to

payment under those agreements.  This Court can grant neither the form nor the substance of the

relief that the Plan purports to provide to the Asbestos PI Trust, and for that reason must deny

confirmation of the Plan.

### A.    A Declaratory Judgment Cannot Be Granted in the Context of This Plan Confirmation Proceeding.

The affirmative relief of a declaratory judgment can only be granted in the context of a

formal adversary proceeding in which Hartford would be afforded procedural and substantive

rights consistent with such a request for affirmative relief.  *See* Fed. R. Bankr. P. 7001(l), (9).  A

proponent of a plan of reorganization is not permitted to conduct an end run around these

procedural protections by inserting declarations into the Plan.

A bankruptcy proceeding to confirm a plan of reorganization, like that at issue here, is a

limited proceeding known as a "contested matter."  It is commenced by the filing of a plan of

reorganization and governed by the summary procedures set out in Rule 9014.  *See* Fed. R.

Bankr. P. 3020(b)(1), 9014.  The only question properly at issue in such a contested matter is

whether the proposed plan—which addresses the respective claims of the debtor's creditors to its assets—satisfies the statutory requirements for confirmation. *See* 11 U.S.C. § 1129.

If a debtor wishes to obtain any other affirmative relief against a third party—such as money damages or a declaratory judgment—it must seek such relief through a separate proceeding known as an "adversary proceeding." *See* Fed. R. Bank. P. 7001(1), (9).  An adversary proceeding is a separate lawsuit, filed in the bankruptcy case, that is commenced with the traditional protections of a summons and a complaint, and which is generally governed by the Federal Rules of Civil Procedure, much like civil actions in federal district court. *See* Fed. R. Bank. P. 7001, Part VII (incorporating with minor differences the Fed. R. Civ. P.).

The Third Circuit has recognized that Rule 7001's requirement that certain matters be resolved through an adversary proceeding is more than just a meaningless formality that the court can overlook.  In *SLW Capital, LLC v. Mansaray-Ruffin* (*In re Mansaray Ruffin*), 530 F.3d 230, 236–37 (3d Cir. 2008), the Third Circuit held that a debtor could not invalidate a lien by simply providing for it as an unsecured claim in the debtor's plan.  The Court relied on Federal Rule of Bankruptcy Procedure 7001, which, it noted, sets forth matters that may only be resolved through an adversary proceeding. *Id.* at 234.  The Court held that "where the Rules require an adversary proceeding—which entails a fundamentally different, and heightened, level of procedural protections—to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one." *Id.* at 242.  The Court reached this conclusion in *SLW Capital* even though the lien holder in that case had notice of the plan but never objected to the provision affecting its lien, *id.* at 233, 237, and even though the plan had become final. *Id.* at 238 ("We hold that the adversary proceeding Rule at issue here is mandatory and establishes a right to specific process that must be afforded.  Its mandatory nature is grounded in principles of

due process that trump 'finality.'"). Although a different subsection of Rule 7001 was at issue in the *SLW Capital* case, the Court's reasoning applies equally to the facts here.

That Rule 7001's requirement of an adversary proceeding is more than just a formality is indisputable. Indeed, a party's right to compliance with that rule is of such significance that the Supreme Court has granted review of a case that addresses the effectiveness of an order that grants relief identified in Rule 7001 without the commencement of an adversary proceeding as required by the rule. *See Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193 (9th Cir. 2008), *cert. granted*, --- S.Ct. ----, 2009 WL 646192 (June 15, 2009).

Accordingly, if Debtors desire a ruling in the bankruptcy proceedings on whether payment by the Asbestos PI Trust of an Asbestos PI Claim will "constitute settlement and payment of such claim . . . within the meaning of, and in full compliance with, each Asbestos Reimbursement Agreement," they must file an adversary proceeding against the parties to those agreements seeking a declaratory judgment on that issue, thus respecting the parties' procedural and substantive rights. Courts have recognized that this is the proper procedure to seek such relief, *see, e.g.*, *Amatex Corp. v. Aetna Cas. & Sur. Co. (In re Amatex Corp.)*, 107 B.R. 856, 858, 862–63 (E.D. Pa. 1989) (granting declaratory judgment in insurance coverage dispute, following *de novo* review of bankruptcy judge's proposed findings and conclusions, in adversary proceeding that debtor commenced against its insurers), *aff'd*, 908 F.2d 961 (3d. Cir. 1990). Courts have likewise made clear that the circumvention of those procedures by the methods employed here is impermissible. As the Seventh Circuit clearly explained, a debtor may not obtain a declaratory judgment "without filing an adversary proceeding" simply by "inserting . . . findings . . . in their proposed plans," which would "permit debtors to flout both substantive and procedural provisions of the Bankruptcy Code and Rules through a meaningless incantation . . . in their proposed plans." *In re Hanson*, 397 F.3d 482, 484–86 (7th Cir. 2005).

**B.     The Court Does Not Have Jurisdiction to Determine This Non-Core
Matter Involving State Law.**

Bankruptcy courts are not Article III courts, and their jurisdiction to hear and decide

proceedings is therefore limited by the Constitution and statute to matters at the heart of the

bankruptcy function:  the administration of the debtor's estate and the adjustment of debtor-

creditor relations.  Although other matters, such as the debtor's state-law contract claims against

third parties, may be related to the bankruptcy, litigants are entitled to an Article III forum for

such disputes.  *See N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 76, 87, 91–

92 (1982) (bankruptcy court could not adjudicate debtor's contract suit against third party).

By statute, bankruptcy courts may "hear and determine" "core" matters of bankruptcy

law, but they may only "hear"—and not "determine"—"non-core" matters that merely relate to a

bankruptcy case.  28 U.S.C. § 157(b)(1), (c)(1) (in non-core matters, bankruptcy judges submit

proposed findings of fact and conclusions of law to district court for de novo review).  Contract

disputes are "non-core" proceedings.  The issue the Plan Proponents ask this Court to determine

by confirmation of the Plan—whether payments by the Asbestos PI Trust will "constitute

settlement and payment … within the meaning of, and in full compliance with" the Hartford

Settlement—plainly is not a "core" proceeding:  it does not "invoke[] a substantive right

provided by title 11," nor is it an issue that "could arise only in the context of a bankruptcy

case."  *See In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 267 (3d Cir. 1991).  Rather, it

involves the parties' rights and obligations under private contracts governed by state law, an

issue that is routinely resolved in litigation outside of bankruptcy.  *See, e.g.*, *In re Amatex Corp.*,

107 B.R. 856, 863 (E.D. Pa. 1989) (debtor's adversary proceeding against insurer seeking

declaratory judgment of coverage for asbestos-related personal injury claims was a "non-core"

proceeding), *aff'd*, 908 F.2d 961 (3d Cir. 1990); *see also Beard v. Braunstein*, 914 F.2d 434,

444–45 (3d. Cir. 1990) (finding "garden variety" contract action for unpaid rents a "non-core"

matter).  Accordingly, even if the issue were otherwise properly before the Court, the Court

could not issue a final determination as to whether such relief was warranted.

> **C.    The Court Does Not Have the Power to Modify the Debtors' Contracts.**

It is a well-settled principle of bankruptcy law that a bankruptcy estate "succeeds only to

the nature and the rights of the property interest that the debtor possessed pre-petition."  *See, e.g.,*

*Integrated Solutions v. Service Support Specialties,* 124 F.3d 487, 492–95 (3d Cir. 1997); *In re*

*Coupon Clearing Serv., Inc.,* 113 F.3d 1091, 1099 (9th Cir. 1997) ("The nature and extent of a

debtor's interest in property is determined by state law, with the estate having no greater rights in

property than those held by the debtor prior to bankruptcy."); *Moody v. Amoco Oil Co.*, 734 F.2d

1200, 1213 (7th Cir. 1984) ("whatever rights a debtor has in property at the commencement of

the case continue in bankruptcy—no more, no less"); *see also Butner v. United States*, 440 U.S.

48, 55 (1979) (a debtor should not receive "a windfall merely by reason of the happenstance of

bankruptcy").

This principle clearly applies to debtors' prepetition contracts, which are often some of

the most valuable assets of the bankruptcy estate.  *See Westmoreland Human Opportunities, Inc.*

*v. Walsh*, 246 F.3d 233, 242 (3d. Cir. 2001) ("It is also settled that the expansive nature of §541's

property definition encompasses rights and interests arising from ordinary contractual

relationships.") (citing *Collier on Bankruptcy*, ¶ 541.08[4] (15th ed. rev. 1996), and *In re Minoco*

*Group of Cos.*, 799 F.2d 517, 519 (9th Cir. 1986)).  Thus, except as otherwise specifically set

forth in the Bankruptcy Code (for example, the provisions relating to the rejection of executory

contracts), the filing of a bankruptcy petition does not enhance the debtor's rights under its

contract, and the bankruptcy estate—and any subsequent transferee—take the contract subject to

all of its terms, including any defenses to future performance that the counterparty to the contract

may have.  *See, e.g., Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149,

1153 (3d Cir. 1989) (recognizing "the general rule binding trustees to pre-petition non-executory

contracts"); *In re Stewart Foods, Inc.*, 64 F.3d 141, 145 (4th Cir. 1995) ("a debtor-in-possession

. . . remains bound by the debtor's obligations under those contracts after the bankruptcy

filing.").  Notably, even if a contract is executory, the Debtor is not permitted to modify the

contract.  It may assume or reject the contract, but must do so with respect to the entire contract.

It cannot pick and choose the provisions it seeks to maintain.  *Collier on Bankruptcy*, ¶ 365.03

(15th ed. rev. 2006) ("trustee must either assume the entire contract, *cum onere*, or reject the

entire contract") (citations omitted). [4]

     Applying these principles, Courts have recognized that bankruptcy courts lack the power

to unilaterally modify a debtor's contractual rights and obligations.  *In re Yates Dev., Inc.*, 256

F.3d 1285, 1290 (11th Cir. 2001) ("it is never the role of a  . . . court to rewrite a contract")**;** *In re

Crippin,* 877 F.2d 594, 598 (7th Cir. 1989) ("bankruptcy courts do not have the power to rewrite

contracts to allow debtors to continue to perform on more favorable terms"); *In re Amatex Corp*,

97 B.R. 220, 221 (Bankr. E.D. Pa.) (the bankruptcy court's powers cannot "stretch so far as to

alter contractual rights established under state law"), *aff'd sub nom., Amatex Corp. v. Stonewall

Ins. Co.*, 102 B.R. 411 (E.D. Pa. 1989).

     By inserting Section 7.2.2(d)(iv) into the Plan, Plan Proponents are effectively asking this

Court—by means of a declaratory judgment—to modify the Hartford Agreement (as well as the

other Asbestos Insurance Reimbursement Agreements) by declaring that the Asbestos PI Trust is

entitled to enforce the right to reimbursement under the Agreement, but that defenses Hartford

may have under the terms of the Agreement are not applicable.  This is as much a modification

of the contract as if the Court struck out any provisions of the Agreement on which Hartford

---

[4]     Plan Proponents have not taken the position that the Asbestos Insurance Reimbursement Agreements are executory and have not identified any Asbestos Insurance Reimbursement Agreement as being rejected.

might rely to challenge the Asbestos PI Trust's request for payment.  Bankruptcy law does not permit the court to grant Plan Proponents this relief.

<u>**CONCLUSION**</u>

The Plan is unlawful on its face and cannot be confirmed.  Hartford thus respectfully requests that the Court enter an order denying confirmation of the Plan.

Respectfully submitted,

  /s/ Michael Yurkewicz

Michael Yurkewicz
**KLEHR, HARRISON, HARVEY
  BRANZBURG AND ELLERS LLP**
919 Market St., Suite 1000
Wilmington, DE  19801
Telephone:  302-426-1189
Facsimile:  302-426-9193

Craig Goldblatt
Nancy L. Manzer
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
Telephone:  202-663-6000
Facsimile:  202-663-6363

William J. Bowman
James P. Ruggeri
Edward B. Parks, II
**HOGAN & HARTSON, L.L.P.**
555 Thirteenth Street, N.W.
Washington, DC  20004
Telephone:  202-637-5600
Facsimile:  202-637-5910

*Counsel for Hartford Accident and Indemnity
Company, First State Insurance Company, Twin
City Fire Insurance Company, and New England
Reinsurance Corporation*

Dated:  July 13, 2009