# EXHIBIT 4

-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 RdViu+uRqVBjBC3UCWZE2pgTAwsCeUbCuU4GIreDRvqgcKkv8yhOMJeA9P8N1SCO
 tno7SgICRQQxVeiBeY/piw==

<SEC-DOCUMENT>0000950123-96-004024.txt : 19960805
<SEC-HEADER>0000950123-96-004024.hdr.sgml : 19960805
ACCESSION NUMBER:                0000950123-96-004024
CONFORMED SUBMISSION TYPE:       S-4
PUBLIC DOCUMENT COUNT:           27
FILED AS OF DATE:                19960802
SROS:               NYSE

FILER:

        COMPANY DATA:
                COMPANY CONFORMED NAME:                 GRACE W R & CO /NY/
                CENTRAL INDEX KEY:                      0000042872
                STANDARD INDUSTRIAL CLASSIFICATION:     CHEMICALS & ALLIED PRODUCTS [2800]
                IRS NUMBER:                             133461988
                STATE OF INCORPORATION:                 NY
                FISCAL YEAR END:                        1231

        FILING VALUES:
                FORM TYPE:              S-4
                SEC ACT:                1933 Act
                SEC FILE NUMBER:        333-09497
                FILM NUMBER:            96603297

        BUSINESS ADDRESS:
                STREET 1:               ONE TOWN CENTER RD
                CITY:                   BOCA RATON
                STATE:                  FL
                ZIP:                    33486-1010
                BUSINESS PHONE:         4073622000

        FORMER COMPANY:
                FORMER CONFORMED NAME:  GRACE W R & CO /CT/
                DATE OF NAME CHANGE:    19900423
</SEC-HEADER>
<DOCUMENT>
<TYPE>S-4
<SEQUENCE>1
<DESCRIPTION>FORM S-4
<TEXT>

<PAGE>   1

      AS FILED WITH THE SECURITIES AND EXCHANGE COMMISSION ON AUGUST 2, 1996
                                                          REGISTRATION NO. 33-
- -------------------------------------------------------------------------------
- -------------------------------------------------------------------------------

                      SECURITIES AND EXCHANGE COMMISSION
                            WASHINGTON, D.C. 20549
                            ------------------------

                                  FORM S-4

                       REGISTRATION STATEMENT UNDER
                       THE SECURITIES ACT OF 1933
                       ---------------------------

                            W. R. GRACE & CO.
               (TO BE RENAMED FRESENIUS NATIONAL MEDICAL CARE, INC.)

                  (EXACT NAME OF REGISTRANT AS SPECIFIED IN ITS CHARTER)

                                  NEW YORK
            (STATE OR OTHER JURISDICTION OF INCORPORATION OR ORGANIZATION)

                                    3081
              (PRIMARY STANDARD INDUSTRIAL CLASSIFICATION CODE NUMBER)

                                 13-3461988
                   (I.R.S. EMPLOYER IDENTIFICATION NUMBER)

          ONE TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486-1010
                           TELEPHONE: 407-362-2000
           (ADDRESS, INCLUDING ZIP CODE, AND TELEPHONE NUMBER, INCLUDING
               AREA CODE, OF REGISTRANT'S PRINCIPAL EXECUTIVE OFFICES)

                                ROBERT B. LAMM
          ONE TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486-1010
                           TELEPHONE: 407-362-1645
            (NAME, ADDRESS, INCLUDING ZIP CODE, AND TELEPHONE NUMBER,
                  INCLUDING AREA CODE, OF AGENT OF SERVICE)
                           ---------------------------

COPIES TO:

<TABLE>
<S>

DR. ULRICH WAGNER
O'MELVENY & MYERS
153 EAST 53RD STREET
NEW YORK, NEW YORK 10022
(212) 326-2000

<C>

ANDREW R. BROWNSTEIN, ESQ.
WACHTELL, LIPTON, ROSEN & KATZ
51 WEST 52ND STREET
NEW YORK, NEW YORK 10019
(212) 403-1000

</TABLE>

--------------------------

APPROXIMATE DATE OF COMMENCEMENT OF PROPOSED SALE OF THE SECURITIES TO THE
PUBLIC:

. AS SOON AS PRACTICABLE AFTER THE EFFECTIVE DATE OF THIS REGISTRATION STATEMENT
--------------------------

<TABLE>
<CAPTION>
CALCULATION OF REGISTRATION FEE

| TITLE OF EACH CLASS OF SECURITIES TO BE REGISTERED | AMOUNT TO BE REGISTERED | PROPOSED MAXIMUM OFFERING PRICE PER UNIT(1) | PROPOSED MAXIMUM AGGREGATE OFFERING PRICE(1) | AMOUNT OF REGISTRATION FEE(1) |
|---|---|---|---|---|
| <S> | <C> | <C> | <C> | <C> |
| Class D Preferred Shares, Par Value $.10 Per Share.......................... | Up to 100,000,000 | N/A | N/A | N/A |

</TABLE>

(1) The fee has been calculated under Rule 457(f)(1) and paid in connection with
    the Registration Statement on Form F-4 filed by Fresenius Medical Care AG.
    --------------------------

THE REGISTRANT HEREBY AMENDS THIS REGISTRATION STATEMENT ON SUCH DATE OR
DATES AS MAY BE NECESSARY TO DELAY ITS EFFECTIVE DATE UNTIL THE REGISTRANT SHALL
FILE A FURTHER AMENDMENT WHICH SPECIFICALLY STATES THAT THIS REGISTRATION
STATEMENT SHALL THEREAFTER BECOME EFFECTIVE IN ACCORDANCE WITH SECTION 8(a) OF
THE SECURITIES ACT OF 1933 OR UNTIL THE REGISTRATION STATEMENT SHALL BECOME
EFFECTIVE ON SUCH DATE AS THE COMMISSION, ACTING PURSUANT TO SAID SECTION 8(a),
MAY DETERMINE.

<PAGE>   2

W. R. GRACE & CO.

CROSS REFERENCE SHEET PURSUANT TO ITEM 501(B) OF REGULATION S-K

<TABLE>
<CAPTION>

| ITEM OF FORM S-4 | CAPTION IN JOINT PROXY STATEMENT-PROSPECTUS |
|---|---|
| <C> <S> | <C> |
| 1. Forepart of Registration Statement and Outside Front Cover Page of Prospectus............................ | Cover Page of Joint Proxy Statement-Prospectus |
| 2. Inside Front and Outside Back Cover Pages of Prospectus........................ | AVAILABLE INFORMATION; INCORPORATION OF CERTAIN INFORMATION BY REFERENCE; ENFORCEABILITY OF CIVIL LIABILITIES UNDER THE FEDERAL SECURITIES LAWS; TABLE OF CONTENTS |
| 3. Risk Factors, Ratio of Earnings to Fixed Charges and Other Information.......... | SUMMARY; RISK FACTORS |
| 4. Terms of the Transaction.................. | THE REORGANIZATION; BACKGROUND AND REASONS; DESCRIPTION OF CAPITAL STOCK OF FRESENIUS MEDICAL CARE; DESCRIPTION OF AMERICAN DEPOSITARY SHARES; DESCRIPTION OF NEW PREFERRED SHARES; THE REORGANIZATION -- Accounting Treatment; CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE TRANSACTIONS TO GRACE AND GRACE SHAREHOLDERS; CERTAIN INCOME TAX CONSEQUENCES OF THE TRANSACTIONS TO HOLDERS OF FRESENIUS USA COMMON STOCK; COMPARISON OF CERTAIN RIGHTS OF SHAREHOLDERS OF GRACE AND FRESENIUS USA; BACKGROUND AND REASONS -- Background of the Reorganization; Reasons for the Recommendation of the Grace Board; BACKGROUND AND REASONS -- Background of the Reorganization; Reasons for the Recommendation of the Fresenius USA Board |
| 5. Pro Forma Financial Information........... | FRESENIUS MEDICAL CARE AG UNAUDITED PRO |

<table>
<tr><td></td><td>FORMA CONDENSED COMBINED FINANCIAL<br>INFORMATION</td></tr>
<tr><td>6.  Material Contacts with the Company Being<br>    Acquired............................</td><td>BACKGROUND AND REASONS -- Background of the<br>Reorganization; Reasons for Recommendations<br>of the Grace Board; THE<br>REORGANIZATION -- Continuing Arrangements<br>between Fresenius Medical Care and Fresenius<br>AG; BUSINESS OF FRESENIUS MEDICAL<br>CARE -- Business of Fresenius<br>USA -- Material Contracts between Fresenius<br>AG and Fresenius USA; INTERESTS OF CERTAIN<br>PERSONS</td></tr>
</table>

&lt;/TABLE&gt;

i

&lt;PAGE&gt;   3

&lt;TABLE&gt;
&lt;CAPTION&gt;

| ITEM OF FORM S-4 | CAPTION IN JOINT PROXY<br>STATEMENT-PROSPECTUS |
|---|---|
| &lt;C&gt;   &lt;S&gt; | &lt;C&gt; |
| 7.  Additional Information Required for<br>    Reoffering by Persons and Parties Deemed<br>    to be Underwriters.................... | Not Applicable |
| 8.  Interests of Named Experts and Counsel.... | SECURITY OWNERSHIP; INTERESTS OF CERTAIN<br>PERSONS; EXPERTS |
| 9.  Disclosure of Commission Position on<br>    Indemnification for Securities Act<br>    Liabilities........................... | Not Applicable |
| 10. Information with Respect to S-3<br>    Registrants........................... | Not Applicable |
| 11. Incorporation of Certain Information by<br>    Reference............................. | Not Applicable |
| 12. Information with Respect to S-2 or S-3<br>    Registrants........................... | Not Applicable |
| 13. Incorporation of Certain Information by<br>    Reference............................. | Not Applicable |
| 14. Information with Respect to Registrants<br>    Other Than S-3 or S-2 Registrants....... | BUSINESS OF FRESENIUS MEDICAL CARE;<br>DESCRIPTION OF CAPITAL STOCK OF FRESENIUS<br>MEDICAL CARE -- Exchange Controls and Other<br>Limitations; GRACE SPECIAL-PURPOSE SELECTED<br>FINANCIAL DATA; MANAGEMENT'S DISCUSSION AND<br>ANALYSIS OF FINANCIAL CONDITION AND RESULTS<br>OF OPERATIONS -- NMC; SELECTED FINANCIAL<br>DATA OF FRESENIUS WORLDWIDE DIALYSIS;<br>MANAGEMENT'S DISCUSSION AND ANALYSIS OF<br>FINANCIAL CONDITION AND RESULTS OF<br>OPERATIONS -- FRESENIUS WORLDWIDE DIALYSIS;<br>SELECTED FINANCIAL DATA OF FRESENIUS USA;<br>MANAGEMENT'S DISCUSSION AND ANALYSIS OF<br>FINANCIAL CONDITION AND RESULTS OF<br>OPERATIONS -- FRESENIUS USA |
| 15. Information with Respect to S-3<br>    Companies............................. | Not Applicable |
| 16. Information with Respect to S-2 or S-3<br>    Companies............................. | Not Applicable |

&lt;/TABLE&gt;

ii

&lt;PAGE&gt;   4

&lt;TABLE&gt;
&lt;CAPTION&gt;

| ITEM OF FORM S-4 | CAPTION IN JOINT PROXY<br>STATEMENT-PROSPECTUS |
|---|---|
| &lt;C&gt;   &lt;S&gt; | &lt;C&gt; |
| 17. Information with Respect to Companies<br>    Other Than S-2 or S-3 Companies......... | BUSINESS OF FRESENIUS MEDICAL<br>CARE -- Business of Fresenius USA; BUSINESS<br>OF FRESENIUS MEDICAL CARE -- Business of<br>NMC; RISK FACTORS; SUMMARY -- Markets and<br>Market Prices; SELECTED FINANCIAL DATA OF<br>FRESENIUS USA; GRACE SPECIAL-PURPOSE<br>SELECTED FINANCIAL DATA; MANAGEMENT'S<br>DISCUSSION AND ANALYSIS OF FINANCIAL<br>CONDITION AND RESULTS OF<br>OPERATIONS -- FRESENIUS USA; MANAGEMENT'S<br>DISCUSSION AND ANALYSIS OF FINANCIAL<br>CONDITION AND RESULTS OF OPERATIONS -- NMC;<br>CONSOLIDATED FINANCIAL STATEMENTS OF<br>FRESENIUS USA, INC.; SPECIAL-PURPOSE,<br>CONSOLIDATED FINANCIAL STATEMENTS OF W. R.<br>GRACE & CO.; CONSOLIDATED INTERIM FINANCIAL<br>STATEMENTS OF FRESENIUS USA, INC.;<br>SPECIAL-PURPOSE, CONSOLIDATED FINANCIAL<br>STATEMENTS OF W. R. GRACE & CO. |
| 18. Information if Proxies, Consents or<br>    Authorizations Are to be Solicited...... | Outside Front Cover of Joint Proxy<br>Statement-Prospectus; AVAILABLE INFORMATION; |

```
                                        INCORPORATION OF CERTAIN INFORMATION BY
                                        REFERENCE; THE SPECIAL MEETINGS; THE
                                        REORGANIZATION -- Appraisal Rights;
                                        INTERESTS OF CERTAIN PERSONS; SECURITY
                                        OWNERSHIP; MANAGEMENT OF FRESENIUS MEDICAL
                                        CARE

19.   Information if Proxies, Consents or
      Authorizations Are Not to be Solicited
      in an Exchange Offer.................... Not Applicable
</TABLE>
```

                                iii

<PAGE>    5

                        W. R. Grace Letterhead

                            August 2, 1996

Dear Shareholders:

        You are cordially invited to attend a Special Meeting of Shareholders of
Grace, to be held at 10:00 a.m., local time, on September 16, 1996 at our
headquarters in Boca Raton, Florida. I hope that you will attend this important
meeting in person or by proxy.

        On February 4, 1996, Grace and Fresenius AG, a German health care
corporation, entered into an Agreement and Plan of Reorganization (as
supplemented or modified from time to time, the "Reorganization Agreement," and
the transactions contemplated thereby, the "Reorganization") to combine Grace's
principal health care subsidiary, National Medicare Care, Inc., with Fresenius
AG's worldwide dialysis business to form a company to be named "Fresenius
Medical Care AG." The Reorganization will be a momentous event in the history of
Grace. It will form the world's largest renal treatment and products company,
which will be well positioned to compete in today's global marketplace. In the
Reorganization, holders of Grace Common Stock and options will be allocated an
aggregate of 44.8% of the ordinary shares of Fresenius Medical Care, on a fully
diluted basis. Immediately prior to the combination, Grace will spin off its
packaging and specialty chemicals businesses to the holders of its Common Stock.
This spun-off company will retain the "W. R. Grace & Co." name.

        The Reorganization is described in greater detail in the enclosed Joint
Proxy Statement-Prospectus. Attached as Annex A to the Joint Proxy
Statement-Prospectus is a Prospectus describing the business of the company that
will be spun off.

        The enclosed Joint Proxy Statement-Prospectus asks you to approve the
transactions described above, as a result of which you will receive, for each
share of Grace Common Stock you own, based upon the number of shares of, and
options with respect to, Grace Common Stock outstanding as of July 15, 1996,

        (a) approximately 1.013 American Depositary Shares represented by American
Depositary Receipts, each representing one-third of an ordinary share of
Fresenius Medical Care,

        (b) one share of common stock of the packaging and specialty chemicals
company and

        (c) one share of a new series of Grace preferred stock, which may pay a
one-time special dividend based on Fresenius Medical Care's performance.

        Adoption and approval of the Reorganization Agreement and the transactions
contemplated thereby requires the vote of two-thirds (and, in the case of a
related amendment to
<PAGE>    6

Grace's Certificate of Incorporation, a majority) of the total voting power of
Grace's outstanding capital stock. Shareholders are entitled to vote all shares
of Grace Common Stock and all shares of all classes of Grace Preferred Stock
held by them on July 29, 1996, which is the record date for the Special Meeting.
YOUR BOARD OF DIRECTORS RECOMMENDS THAT YOU VOTE FOR THE PROPOSALS. In order to
ensure that your vote is represented at the meeting, please indicate your choice
on the proxy, date and sign it, and return it in the enclosed envelope. A prompt
response will be appreciated.

                                Sincerely,

                                /s/ A.J. Costello
                                ------------------------------------
                                Albert J. Costello
                                Chairman, President and Chief
                                Executive Officer

<PAGE>    7

                            W. R. GRACE & CO.
                            ONE TOWN CENTER ROAD
                        BOCA RATON, FLORIDA 33486-1010

                    NOTICE OF SPECIAL MEETING OF SHAREHOLDERS
                                TO BE HELD
                            ON SEPTEMBER 16, 1996

        NOTICE HEREBY IS GIVEN that a Special Meeting of Shareholders of W. R.
Grace & Co., a New York corporation ("Grace"), will be held at Grace's
headquarters at One Town Center Road, Boca Raton, Florida at 10:00 a.m., local

time, on September 16, 1996 to consider and vote upon the following matters, which are more fully described in the accompanying Joint Proxy Statement-Prospectus:

1. To consider and vote upon a proposal to adopt and approve (a) the Agreement and Plan of Reorganization, dated as of February 4, 1996, between Grace and Fresenius AG, a German corporation, together with the agreements that are exhibits thereto, all as supplemented or modified from time to time (the "Reorganization Agreement"), and (b) the transactions contemplated thereby (collectively, the "Reorganization"), including, without limitation, the Grace Merger and the Distribution (each as defined in the Reorganization Agreement).

2. To consider and vote upon a proposal to adopt and approve an amendment to Grace's Certificate of Incorporation, as set forth in the Certificate of Amendment attached to the accompanying Joint Proxy Statement-Prospectus as Appendix B.

3. To transact such other business as may properly come before the meeting or any adjournments or postponements thereof.

Only holders of record of Grace Common Stock and all classes of Grace Preferred Stock at the close of business on July 29, 1996 (the "Record Date") are entitled to notice of and to vote at such meeting or any adjournments or postponements thereof. Approval of the Reorganization requires the affirmative vote of two-thirds, and adoption and approval of the amendment to Grace's Certificate of Incorporation requires the affirmative vote of a majority, of the total voting power of Grace Common Stock and Grace Preferred Stock, voting together as one class.

Any holder of shares of Grace Common Stock as of the Record Date who does not assent to the Reorganization has the right, upon compliance with specific procedures, to demand from Grace payment of the fair value of such holder's shares. Reference is made to "THE REORGANIZATION -- Appraisal Rights" in the Joint Proxy Statement-Prospectus for a more complete discussion thereof and to Sections 623 and 910 of the New York Business Corporation Law, copies of which are attached to the Joint Proxy Statement-Prospectus as Appendix F.

By Order of the Board of Directors,

/s/ R. B. Lamm
Robert B. Lamm
Secretary

August 2, 1996
<PAGE>   8

-------------------------------IMPORTANT NOTICES-------------------------------

PLEASE MARK, SIGN, DATE AND RETURN THE ENCLOSED PROXY PROMPTLY, WHETHER OR NOT YOU PLAN TO ATTEND THE GRACE SPECIAL MEETING. YOUR PROXY WILL BE REVOCABLE, EITHER IN WRITING OR BY VOTING IN PERSON AT THE SPECIAL MEETING, AT ANY TIME PRIOR TO ITS EXERCISE.

THE BOARD OF DIRECTORS OF GRACE RECOMMENDS THAT SHAREHOLDERS VOTE TO APPROVE THE MATTERS TO BE CONSIDERED AT THE SPECIAL MEETING.

PLEASE DO NOT SEND IN ANY SHARE CERTIFICATES AT THIS TIME.
<PAGE>   9

LOGO

August 2, 1996

Dear Stockholder:

You are cordially invited to attend a Special Meeting of Stockholders of Fresenius USA, Inc. to be held at 10:00 a.m., local time on September 16, 1996 at the 52nd floor conference center of O'Melveny & Myers LLP, 153 East 53rd Street, New York, New York 10022 (the "Fresenius USA Special Meeting"). I hope that you will be present or represented in person or by proxy at this important meeting.

On February 4, 1996, Fresenius AG, the majority stockholder of Fresenius USA, Inc. ("Fresenius USA"), and W. R. Grace & Co. ("Grace") entered into an Agreement and Plan of Reorganization (as supplemented or modified from time to time, the "Reorganization Agreement") to combine Fresenius AG's worldwide dialysis business, including Fresenius USA, with Grace's health care operations, including National Medical Care, Inc., Grace's principal health care subsidiary ("NMC"), to form a company to be named "Fresenius Medical Care AG" (the "Reorganization"). On May 8, 1996, the Reorganization Agreement was approved and adopted on behalf of Fresenius USA by its Board of Directors.

The combination of Fresenius AG's worldwide dialysis business with NMC will form the world's largest integrated dialysis company. Fresenius Medical Care AG will be well-positioned to compete vigorously in today's global marketplace. In less than 10 years since the original investment by Fresenius AG in Fresenius USA, we have grown from a struggling peritoneal dialysis company to a profitable business that is a significant competitor in all aspects of the dialysis products business in North America. The strategic combination of Fresenius AG's worldwide dialysis business (including Fresenius USA) with NMC will provide our stockholders with an opportunity to participate in the growth of a newly formed health care company.

Under the Reorganization Agreement, Fresenius AG will contribute its

worldwide dialysis business, including its equity interest in Fresenius USA, to
Fresenius Medical Care AG. Fresenius USA will merge with a subsidiary of
Fresenius Medical Care AG (the "Fresenius USA Merger") and, after spinning off
its non-health care businesses, Grace will merge with another Fresenius Medical
Care AG subsidiary (the "Grace Merger").

     The enclosed Joint Proxy Statement-Prospectus asks you and your fellow
stockholders to approve the transactions described above, as a result of which
you will receive, for each share of Common Stock of Fresenius USA, par value
$.01 per share (the "Fresenius USA Common Stock"), you own, approximately 1.112
American Depositary Shares ("ADSs") represented by American Depositary Receipts
of Fresenius Medical Care AG. Each ADS represents the right to receive one-third
of an ordinary share, nominal value DM 5 per
<PAGE>    10

share, of Fresenius Medical Care AG ("FMC Ordinary Shares"). The Reorganization
is described in greater detail in the enclosed Joint Proxy Statement-Prospectus.
The Joint Proxy Statement-Prospectus is also a prospectus of Fresenius Medical
Care AG, and contains detailed information concerning the FMC Ordinary Shares
and the ADSs.

     A special committee of independent directors of Fresenius USA (the
"Fresenius USA Independent Committee") has reviewed the Reorganization on behalf
of its stockholders (other than Fresenius AG and W. R. Grace & Co. and their
subsidiaries) and has recommended that such stockholders vote in favor of the
Reorganization. The Fresenius USA Independent Committee has also received an
opinion from Salomon Brothers Inc, its financial advisor, that the exchange
ratio for the exchange of Fresenius USA Common Stock for FMC Ordinary Shares by
stockholders of Fresenius USA (other than Fresenius AG and W. R. Grace & Co. and
their respective subsidiaries) is fair, from a financial point of view, to such
stockholders.

     Approval of the Reorganization requires a favorable vote of two-thirds of
the outstanding shares of Fresenius USA Common Stock. Stockholders are entitled
to vote all shares of Fresenius USA Common Stock held of record on July 29,
1996, which is the record date for the Fresenius USA Special Meeting. A vote in
favor of the proposals authorizing the Reorganization is assured because
Fresenius AG, the majority stockholder of Fresenius USA, has agreed to vote for
such proposals.

     The Fresenius USA Special Meeting will also consider a proposed amendment
to the Fresenius USA 1987 Stock Option Plan described in the Joint Proxy
Statement-Prospectus under the heading "AMENDMENT TO THE FRESENIUS USA 1987
STOCK OPTION PLAN," which has already been approved by the Board of Directors.
Approval of such amendment requires the favorable vote of a majority of the
shares of Fresenius USA Common Stock entitled to vote at the Fresenius USA
Special Meeting. Fresenius AG, the majority stockholder, intends to vote for
such proposal.

     YOUR BOARD OF DIRECTORS, INCLUDING THE FRESENIUS USA INDEPENDENT COMMITTEE
CREATED TO EVALUATE THE REORGANIZATION, UNANIMOUSLY RECOMMENDS THAT YOU VOTE FOR
THE PROPOSALS.

     We urge you to consider carefully these important matters, which are
described in the attached Joint Proxy Statement-Prospectus. In order to ensure
that your vote is represented at the meeting, please indicate your choice on the
proxy, date and sign it, and return it in the enclosed envelope. A prompt
response will be appreciated. You may revoke your proxy at any time before
exercise.

                                   Sincerely,

                                   /s/ Ben J. Lipps

                                   Ben J. Lipps, Ph.D.
                                   President and Chief Executive Officer

<PAGE>    11

                         FRESENIUS USA, INC.
                         2637 SHADELANDS DRIVE
                     WALNUT CREEK, CALIFORNIA 94598

                 NOTICE OF SPECIAL MEETING OF STOCKHOLDERS
                    TO BE HELD ON SEPTEMBER 16, 1996

     NOTICE HEREBY IS GIVEN that a Special Meeting of Stockholders of Fresenius
USA, Inc., a Massachusetts corporation ("Fresenius USA"), will be held at the
52nd floor conference center of O'Melveny & Myers LLP, 153 East 53rd Street, New
York, New York 10022 at 10:00 a.m. local time on September 16, 1996 to consider
and vote upon the following matters described in the accompanying Joint Proxy
Statement-Prospectus:

     1. To consider and vote upon a proposal to adopt and approve (a) the
Agreement and Plan of Reorganization, dated as of February 4, 1996, as it may be
supplemented or modified from time to time (the "Reorganization Agreement"),
among W. R. Grace & Co., a New York corporation, Fresenius AG, a German
corporation ("Fresenius AG") and Fresenius USA and any exhibits thereto to which
Fresenius USA is a party, (b) the transactions contemplated thereby (the
"Reorganization"), including, without limitation, the merger of FUSA Merger Sub,
Inc., a Massachusetts corporation and a wholly owned subsidiary of Fresenius
Medical Care AG (a German corporation and a wholly owned subsidiary of Fresenius
AG) with and into Fresenius USA.

     2. To consider and vote upon a proposal to amend Fresenius USA's 1987 Stock

Option Plan to fix the maximum number of shares for which options may be granted under such plan to any individual at 1,000,000 shares.

   3. To transact any and all other business that may properly come before the meeting or any adjournments or postponements thereof.

   Only holders of record of Fresenius USA common stock, par value $.01 per share (the "Fresenius USA Common Stock"), at the close of business on July 29, 1996 (the "Record Date"), are entitled to notice of and to vote at such meeting or any adjournments or postponements thereof. Approval of the matters to be voted upon in connection with the Reorganization requires the affirmative vote of two-thirds of the outstanding shares of Fresenius USA Common Stock and approval of the amendment of Fresenius USA's 1987 Stock Option Plan requires the affirmative vote of a majority of the outstanding shares of Fresenius USA Common Stock.

   In accordance with Section 87, Chapter 156B of the General Laws of Massachusetts, holders of Fresenius USA Common Stock are advised as follows with respect to the proposal to approve the Reorganization Agreement and the Reorganization:

      If the action proposed is approved by the stockholders at the meeting and effected by Fresenius USA, any stockholder (1) who files with Fresenius USA before the taking of the vote on the approval of such action, written objection to the proposed action stating that he intends to demand payment for his shares if the action is taken and (2) whose shares are not voted in favor of such action has or may have the right to demand in writing from Fresenius USA, within twenty days after the date of mailing to the stockholder of notice in writing that the corporate action has become effective, payment for his shares and an appraisal of the value thereof. Fresenius USA and any such stockholder shall in such case have the rights and duties and shall follow the procedure set forth in sections 88 to 98, inclusive, of chapter 156B of the General Laws of Massachusetts.

   Reference is made to "THE REORGANIZATION -- Appraisal Rights" in the Joint Proxy Statement-Prospectus and to Sections 85 through 98 of Chapter 156B of the General Laws of Massachusetts, copies of which are attached to the Joint Proxy Statement-Prospectus as Appendix G.

                                        By Order of the Board of Directors

                                        Robert E. Farrell
                                        Clerk

August 2, 1996
<PAGE>    12

                           IMPORTANT NOTICES

PLEASE MARK, SIGN, DATE AND RETURN THE ENCLOSED PROXY PROMPTLY, WHETHER OR NOT YOU PLAN TO ATTEND THE SPECIAL MEETING. YOUR PROXY WILL BE REVOCABLE, EITHER IN WRITING OR BY VOTING IN PERSON AT THE SPECIAL MEETING, AT ANY TIME PRIOR TO ITS EXERCISE.

THE BOARD OF DIRECTORS OF FRESENIUS USA, INCLUDING ALL OF THE MEMBERS OF A SPECIAL COMMITTEE OF INDEPENDENT DIRECTORS OF FRESENIUS USA, UNANIMOUSLY RECOMMENDS THAT STOCKHOLDERS VOTE TO APPROVE THE MATTERS TO BE VOTED UPON AT THE SPECIAL MEETING.

PLEASE DO NOT SEND IN ANY SHARE CERTIFICATES AT THIS TIME.
<PAGE>    13

                        JOINT PROXY STATEMENT

                                 OF

                         W. R. GRACE & CO.
                                AND

                        FRESENIUS USA, INC.
                        -------------------

                      FRESENIUS MEDICAL CARE AG
   W. R. GRACE & CO. (TO BE RENAMED FRESENIUS NATIONAL MEDICAL CARE, INC.)
                              PROSPECTUS

         UP TO 210,000,000 AMERICAN DEPOSITARY SHARES, EACH REPRESENTING
      ONE-THIRD OF AN ORDINARY SHARE, NOMINAL VALUE DM 5 PER SHARE, OF FRESENIUS
                            MEDICAL CARE AG

   UP TO 100,000,000 SHARES, PAR VALUE $.10 PER SHARE, OF CLASS D PREFERRED STOCK
     OF W. R. GRACE & CO. (TO BE RENAMED FRESENIUS NATIONAL MEDICAL CARE, INC.)
                        -------------------

   This Joint Proxy Statement-Prospectus is being furnished to the shareholders of W. R. Grace & Co., a New York corporation ("Grace"), which will be renamed "Fresenius National Medical Care, Inc." ("FNMC"), in connection with the solicitation of proxies by Grace's Board of Directors (the "Grace Board") from holders of shares of Grace common stock ("Grace Common Stock"), and from holders of shares of all classes of Grace preferred stock, par value $100 per share ("Grace Preferred Stock"), for use at a special meeting of shareholders of Grace to be held on September 16, 1996 and at any adjournments or postponements thereof (the "Grace Special Meeting").

This Joint Proxy Statement-Prospectus also is being furnished to the stockholders of Fresenius USA, Inc., a Massachusetts corporation ("Fresenius USA"), in connection with the solicitation of proxies by Fresenius USA's Board of Directors (the "Fresenius USA Board") from holders of shares of Fresenius USA common stock, par value $.01 per share ("Fresenius USA Common Stock"), for use at a special meeting of stockholders of Fresenius USA to be held on September 16, 1996 and at any adjournments or postponements thereof (the "Fresenius USA Special Meeting" and, together with the Grace Special Meeting, the "Special Meetings").

(Continued on next page)

---------------------------

ATTACHED AS ANNEX A TO THE VERSION OF THIS JOINT PROXY STATEMENT-PROSPECTUS BEING FURNISHED TO GRACE SHAREHOLDERS IS THE NEW GRACE PROSPECTUS. SEE THE NEW GRACE PROSPECTUS FOR CERTAIN MATTERS RELEVANT TO OWNERSHIP OF NEW GRACE SECURITIES.

SEE "RISK FACTORS" AT PAGE 21 FOR A DISCUSSION OF CERTAIN RISKS RELATING TO THE SECURITIES OFFERED HEREBY. SEE "SUMMARY--THE REORGANIZATION" AND "--CONSIDERATION TO SHAREHOLDERS" AT PAGE 2 FOR A SUMMARY OF THE REORGANIZATION.

THE SECURITIES TO BE ISSUED PURSUANT TO THIS JOINT PROXY STATEMENT-PROSPECTUS HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS JOINT PROXY STATEMENT-PROSPECTUS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

---------------------------

The date of this Joint Proxy Statement-Prospectus is August 2, 1996.
<PAGE>  14

(Continued from front cover)
    This Joint Proxy Statement-Prospectus relates to, among other matters, proposals that the shareholders of Grace and Fresenius USA adopt and approve the Agreement and Plan of Reorganization, dated February 4, 1996 and the agreements that are exhibits thereto (all as supplemented or modified from time to time, the "Reorganization Agreement"), by and between Grace, Fresenius AG ("Fresenius AG"), a German corporation and the beneficial owner of approximately 70.6% of the outstanding Fresenius USA Common Stock, and Fresenius USA, and the transactions contemplated thereby. This Joint Proxy Statement - Prospectus also relates to certain related matters, including, in the case of Grace, proposed amendments to Grace's Certificate of Incorporation (the "Grace Amendment") to change its name from "W. R. Grace & Co." to "Fresenius National Medical Care, Inc." and to establish a new class of Grace Preferred Stock (the "New Preferred Shares"); and, in the case of Fresenius USA, a proposed amendment (the "Fresenius USA Plan Amendment") to the Fresenius USA 1987 Stock Option Plan (the "Fresenius USA Plan").

    The Reorganization Agreement provides for the combination of the worldwide dialysis business of Fresenius AG, including Fresenius USA ("Fresenius Worldwide Dialysis"), and the health care business of Grace conducted by Grace's wholly owned subsidiary, National Medical Care, Inc., a Delaware corporation ("NMC"), to form Fresenius Medical Care AG, a German corporation ("Fresenius Medical Care"). The combination to be effected pursuant to the Reorganization Agreement and the other transactions contemplated thereby are collectively referred to in this Joint Proxy Statement-Prospectus as the "Reorganization."

    The Reorganization will be effected as follows.

    The Contribution of FWD.  Pursuant to the Contribution Agreement, dated February 4, 1996 (the "Contribution Agreement"), among Fresenius AG, Sterilpharma GmbH, a wholly owned subsidiary of Fresenius AG and the predecessor of Fresenius Medical Care, and W. R. Grace & Co.-Conn., a wholly owned subsidiary of Grace ("Grace Chemicals"), Fresenius AG will contribute its worldwide dialysis business, including its entire direct and indirect ownership interest in Fresenius USA (the "Contribution"), to Fresenius Medical Care in consideration of the issuance of approximately 35,210,000 ordinary shares, nominal value DM 5 per share, of Fresenius Medical Care ("FMC Ordinary Shares").

    The Distribution of New Grace.  On the date of the Reorganization, pursuant to the Distribution Agreement, dated February 4, 1996, among Grace, Grace Chemicals and Fresenius AG (the "Distribution Agreement"), Grace will spin off Grace Holding, Inc., a Delaware corporation and a wholly owned subsidiary of Grace ("New Grace"), which will hold all of Grace's assets and liabilities other than those of NMC (the "Distribution").

    The Recapitalization.  Immediately following the Distribution, Grace will be recapitalized so that each holder of shares of Grace Common Stock will receive one New Preferred Share for each share of Grace Common Stock (the "Recapitalization"). Following the Reorganization, all shares of Grace Preferred Stock, including the New Preferred Shares, will remain outstanding as shares of FNMC.

    The Mergers.  On the date of the Reorganization, a wholly owned New York subsidiary of Fresenius Medical Care ("Grace Merger Sub") will be merged with and into Grace, with Grace the surviving corporation (the "Grace Merger"); and a wholly owned Massachusetts subsidiary of Fresenius

Medical Care ("FUSA Merger Sub") will be merged with and into Fresenius
USA, with Fresenius USA the surviving corporation (the "Fresenius USA
Merger" and, collectively with the Grace Merger, the "Mergers"). In the
Grace Merger, all shares of Grace Common Stock outstanding will be
cancelled and the holders of Grace Common Stock (other than any Grace
Common Stock owned by Fresenius AG, Fresenius USA, Grace or their
respective subsidiaries, and other than Grace Common Stock as to which
appraisal rights have been asserted and not withdrawn or otherwise lost)
will receive approximately 1.013 American Depositary Shares ("ADSs")
represented by American Depositary Receipts ("ADRs"), each representing
one-third of an FMC Ordinary Share, for each share of Grace Common Stock
held by them based upon the number of shares of, and options with respect
to, Grace Common Stock outstanding as of July 15, 1996; Grace Preferred
Stock will not be exchanged for FMC Ordinary Shares in the Grace Merger. In
the Fresenius USA Merger, all shares of Fresenius USA Common Stock
outstanding will be cancelled and the holders of Fresenius USA Common Stock
(other than Fresenius USA Common Stock owned by Fresenius AG, Fresenius
USA, Grace or their respective subsidiaries, and other than Fresenius USA
Common Stock as to which appraisal rights have been asserted and not
withdrawn or otherwise lost) will receive approximately 1.112 ADSs,
represented by ADRs, each representing one-third of an FMC Ordinary Share,
per share of Fresenius USA Common Stock held by them.
<PAGE>   15

(Continued from front cover)
     The Contribution of Fresenius USA.  As promptly as practicable
following the Mergers, Fresenius Medical Care will contribute Fresenius USA
to FNMC.

     Grace does not intend to effect the Distribution in the event that the
Reorganization (including the Distribution and the Grace Merger) is not approved
at the Grace Meeting. Following the Reorganization, it is expected that shares
of New Grace Common Stock will be listed on the New York Stock Exchange, Inc.
(the "NYSE"). It is also expected that the ADSs will be listed on the NYSE.
Following the Reorganization, FNMC intends to seek to list the New Preferred
Shares on a national stock exchange. However, no assurance can be given that the
New Preferred Shares will satisfy the listing criteria of any such exchange. The
Reorganization Agreement, the text of the Grace Amendment and the text of the
Fresenius USA Plan, as amended by the proposed Fresenius USA Plan Amendment are
attached to this Joint Proxy Statement-Prospectus as Appendices A, B and E,
respectively.

     The following table summarizes what the shareholders of Grace and Fresenius
USA will receive in the Reorganization:

<TABLE>

| <S> | <C> |
|---|---|
| one share of: | will be entitled to receive: |
| Grace Common Stock, which had a closing price on August 1, 1996 in NYSE composite trading of $63 1/4 | Approximately 1,013 ADSs, each ADS representing one-third of an FMC Ordinary Share (based upon the number of shares of, and options with respect to, Grace Common Stock outstanding as of July 15, 1996) One New Preferred Share One share of New Grace Common Stock |
| Fresenius USA Common Stock, which had a closing price on August 1, 1996 in AMEX composite trading of $19 | Approximately 1.112 ADSs, each ADS representing one-third of an FMC Ordinary Share |

</TABLE>

     Shares of Grace Preferred Stock will remain outstanding following the
Reorganization.

     In connection with approval of the Reorganization by the Grace Board, the
Grace Board received opinions from CS First Boston and Merrill Lynch to the
effect that, in the opinion of such firms, as of February 4, 1996, the terms of
the Distribution Payment and the Grace Merger, taken together, were fair, from a
financial point of view, to the holders of Grace Common Stock. In connection
with these opinions, these firms performed a variety of financial and
comparative analyses which included, among other things, valuation analyses with
respect to Fresenius Medical Care and NMC and made a presentation to the Grace
Board. Such opinions and presentation are based on certain assumptions and are
subject to certain limitations. Such opinions and presentation are described
herein under "BACKGROUND AND REASONS" at pages 37 through 57, and the opinions
of CS First Boston and Merrill Lynch are set forth in full in Appendix C hereto.

     In connection with approval of the Reorganization by the Fresenius USA
Board, the Fresenius USA Independent Committee received an opinion from Salomon
Brothers to the effect that, in the opinion of such firm, as of May 8, 1996, the
exchange ratio of 0.37067735 FMC Ordinary Shares to be issued in exchange for
each share of Fresenius USA Common Stock held by the stockholders of Fresenius
USA (other than Fresenius AG and Grace and their respective subsidiaries) was
fair, from a financial point of view, to the holders of Fresenius USA Common
Stock (other than Fresenius AG and Grace and their respective subsidiaries). In
connection with this opinion, Salomon Brothers performed a variety of financial
and comparative analyses which included, among other things, valuation analyses
with respect to Fresenius
<PAGE>   16

Medical Care and Fresenius USA and made a presentation to the Fresenius USA
Independent Committee. Such opinion and presentation are based on certain

assumptions and are subject to certain limitations. Such opinion and
presentation are described herein under "BACKGROUND AND REASONS" at pages 47
through 57, and the opinion of Salomon Brothers is set forth in full in Appendix
D hereto.

See the "INDEX OF DEFINED TERMS" at page 245 for the locations of the
definitions of capitalized terms used in this Joint Proxy Statement-Prospectus.
(End of front cover)
<PAGE>   17

                          AVAILABLE INFORMATION

        Each of Grace and Fresenius USA is (and, following the Reorganization, FNMC
and Fresenius Medical Care will be) subject to the informational requirements of
the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and, in
accordance therewith, each files (and FNMC and Fresenius Medical Care will file)
reports and other information with the Securities and Exchange Commission (the
"Commission"). The reports and other information filed by Grace and Fresenius
USA (and to be filed by FNMC and Fresenius Medical Care) with the Commission can
be inspected and copied at the Commission's public reference room located at 450
Fifth Street, N.W., Room 1024, Washington, D.C. 20549, and at the public
reference facilities in the Commission's regional offices located at: 7 World
Trade Center, 13th Floor, New York, New York 10048; and at Northwest Atrium
Center, 500 West Madison Street, Suite 1400, Chicago, Illinois 60661. Copies of
such material can be obtained at prescribed rates by writing to the Securities
and Exchange Commission, Public Reference Section, 450 Fifth Street, N.W.,
Washington, D.C. 20549. In addition, reports, proxy statements, and other
information concerning Fresenius USA may be inspected at the offices of the
AMEX, 86 Trinity Place, New York, New York 10005. Reports and other information
concerning Grace prior to the Reorganization (and, following the Reorganization,
Fresenius Medical Care) may be inspected at the offices of the NYSE, 20 Broad
Street, New York, New York 10005.

        Registration Statements have been filed pursuant to the Securities Act of
1933, as amended (the "Securities Act"), covering the ADSs representing FMC
Ordinary Shares issuable in the Reorganization and the New Preferred Shares
issuable in the Recapitalization (including exhibits and amendments thereto,
collectively, the "Registration Statement"). This Joint Proxy
Statement-Prospectus constitutes both the Joint Proxy Statement of Grace and
Fresenius USA relating to the solicitation of proxies for use at their
respective Special Meetings and the Prospectus for the ADSs and the New
Preferred Shares filed as part of the Registration Statement. All information in
the Registration Statement regarding Grace and its subsidiaries has been
provided by Grace, all information regarding Fresenius USA has been provided by
Fresenius USA, and all information regarding Fresenius AG or its worldwide
dialysis business other than Fresenius USA has been provided by Fresenius AG.
New Grace has filed with the Commission a registration statement on Form S-1
(including exhibits and amendments thereto, the "New Grace Registration
Statement"), which includes a Prospectus (the "New Grace Prospectus"), pursuant
to the Exchange Act covering the shares of common stock, par value $.01 per
share (the "New Grace Common Stock"), issuable in the Distribution. The New
Grace Prospectus is attached as Annex A to the version of this Joint Proxy
Statement-Prospectus being furnished to Grace shareholders. None of Fresenius
AG, Fresenius USA or Fresenius Medical Care has participated in the preparation
of the New Grace Prospectus, has any independent knowledge of the matters set
forth therein (except to the extent such documents contain excerpts from this
Joint Proxy Statement-Prospectus without material change) or takes any
responsibility for any information contained therein. This Joint Proxy
Statement-Prospectus and the proxies are first being provided to shareholders of
Grace and Fresenius USA on or about August 5, 1996.

        This Joint Proxy Statement-Prospectus does not contain all of the
information set forth in the Registration Statements covering the securities
offered hereby which Fresenius Medical Care and Grace have filed with the
Commission, certain portions of which have been omitted pursuant to the rules
and regulations of the Commission, and to which portions reference is hereby
made for further information with respect to Fresenius Medical Care, Grace and
the securities offered hereby, but all material terms of each such document are
described herein. Statements contained herein concerning any documents are not
necessarily complete; in each instance, reference is made to the copies of such
documents filed as exhibits to the Registration Statement, and each such
statement is qualified in its entirety by such reference. This Joint Proxy
Statement-Prospectus also does not contain all of the information regarding New
Grace set forth in the New Grace Registration Statement. See "ADDITIONAL
INFORMATION" in the New Grace Prospectus attached as Annex A to the version of
this Joint Proxy Statement-Prospectus being furnished to Grace shareholders.

        FOLLOWING THE REORGANIZATION, FRESENIUS MEDICAL CARE WILL PREPARE ANNUAL
AND QUARTERLY REPORTS WHICH WILL BE DISTRIBUTED TO ITS SHAREHOLDERS. FRESENIUS
MEDICAL CARE'S ANNUAL REPORTS WILL CONTAIN FINANCIAL STATEMENTS EXAMINED AND
REPORTED UPON, WITH OPINIONS EXPRESSED, BY FRESENIUS MEDICAL CARE'S AUDITORS.
THE CONSOLIDATED FINANCIAL STATEMENTS OF FRESENIUS MEDICAL CARE INCLUDED IN SUCH
ANNUAL AND QUARTERLY REPORTS

                                      i

<PAGE>   18

WILL BE PREPARED IN CONFORMITY WITH U.S. GENERALLY ACCEPTED ACCOUNTING
PRINCIPLES ("US GAAP"), AND SUCH OPINIONS OF FRESENIUS MEDICAL CARE'S AUDITORS
WILL BE AS TO PREPARATION IN CONFORMITY WITH US GAAP. See "DESCRIPTION OF THE
POOLING AGREEMENT." Fresenius Medical Care will also file annual reports with
the Commission on Form 20-F, which will be made available to Morgan Guaranty
Trust Company of New York, as depositary (the "Depositary") with respect to the
ADSs and ADRs evidencing such ADSs. The first such report is expected to be

issued with regard to the fiscal year ending December 31, 1996. Fresenius
Medical Care will file its quarterly reports with the Commission under cover of
Form 6-K.

Fresenius Medical Care will also furnish the Depositary with all notices of
shareholder meetings and other reports and communications that are made
generally available to shareholders of Fresenius Medical Care. The Depositary
will, to the extent permitted by law, arrange for the transmittal to the
registered holders of ADRs of all notices, reports and communications provided
by Fresenius Medical Care, and will make such notices, reports and
communications, together with the governing instruments affecting the FMC
Ordinary Shares and amendments thereto, available for inspection by registered
holders of ADRs at the principal office of the Depositary in New York, presently
located at 60 Wall Street, New York, New York 10260.

Following the Reorganization, in addition to Annual Reports on Form 20-F
and quarterly reports, Fresenius Medical Care intends to file with the
Commission materials with respect to its annual meeting of shareholders and any
special meeting of shareholders under cover of Form 6-K. Such materials will
also be made available to the Depositary which will forward such materials with
requests for voting instructions to all registered holders of ADRs in accordance
with the terms of the Deposit Agreement described under "DESCRIPTION OF AMERICAN
DEPOSITARY RECEIPTS." See "DESCRIPTION OF THE POOLING AGREEMENT." Fresenius
Medical Care intends to provide in such materials information generally
comparable to that which would be provided to shareholders of a U.S. corporation
in a proxy statement filed with the Commission, except that certain information
including information relating to Fresenius Medical Care's management, executive
compensation and options, beneficial ownership of Fresenius Medical Care
securities and certain related party transactions will be provided in accordance
with the disclosure requirements applicable to "foreign private issuers," as
defined in the Commission's rules.

Following the completion of the Reorganization, by virtue of the issuance
of the New Preferred Shares pursuant to the Recapitalization, FNMC will continue
to be subject to the informational requirements of the Exchange Act, and, in
accordance therewith, will continue to file reports, proxy statements and other
information with the Commission and any stock exchange on which such shares are
listed or quoted.

NO PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY
REPRESENTATION ON BEHALF OF FRESENIUS MEDICAL CARE, FRESENIUS USA, FRESENIUS AG,
GRACE OR NEW GRACE CONCERNING THE FMC ORDINARY SHARES, THE ADSS, THE NEW
PREFERRED SHARES, THE NEW GRACE COMMON STOCK OR ANY OF THE MATTERS BEING
CONSIDERED AT EITHER SPECIAL MEETING IF NOT CONTAINED IN OR APPENDED TO THIS
JOINT PROXY STATEMENT-PROSPECTUS, AND, IF GIVEN OR MADE, SUCH INFORMATION OR
REPRESENTATION SHOULD NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED. THIS JOINT
PROXY STATEMENT-PROSPECTUS DOES NOT CONSTITUTE AN OFFER TO SELL, OR A
SOLICITATION OF AN OFFER TO PURCHASE, THE SECURITIES OFFERED BY THIS JOINT PROXY
STATEMENT-PROSPECTUS OR THE NEW GRACE PROSPECTUS WHICH IS ATTACHED AS ANNEX A TO
THE VERSION OF THIS JOINT PROXY STATEMENT-PROSPECTUS BEING FURNISHED TO GRACE
SHAREHOLDERS, OR THE SOLICITATION OF A PROXY, BY ANY PERSON IN ANY JURISDICTION
IN WHICH SUCH AN OFFER OR SOLICITATION IS NOT AUTHORIZED OR IN WHICH THE PERSON
MAKING SUCH OFFER OR SOLICITATION IS NOT QUALIFIED TO DO SO OR TO ANY PERSON TO
WHOM IT IS UNLAWFUL TO MAKE SUCH AN OFFER, OR SOLICITATION OF AN OFFER, OR PROXY
SOLICITATION.

NOTICE PURSUANT TO NEW HAMPSHIRE LAW: NEITHER THE FACT THAT A REGISTRATION
STATEMENT OR AN APPLICATION FOR A LICENSE HAS BEEN FILED WITH THE STATE OF NEW
HAMPSHIRE NOR THE FACT THAT A SECURITY IS EFFECTIVELY REGISTERED OR A PERSON IS
LICENSED IN THE STATE OF NEW HAMPSHIRE CONSTITUTES A FINDING BY THE SECRETARY OF
STATE THAT ANY DOCUMENT FILED UNDER RSA 421-B IS TRUE, COMPLETE AND NOT
MISLEADING. NEITHER ANY SUCH FACT NOR THE FACT THAT AN EXEMPTION OR EXCEPTION IS
AVAILABLE FOR A SECURITY OR A TRANSACTION MEANS THAT THE SECRETARY OF STATE HAS
PASSED IN ANY WAY UPON THE MERITS OR QUALIFICATIONS OF, OR RECOMMENDED OR GIVEN
APPROVAL TO, ANY PERSON,

                                      ii

<PAGE>  19

SECURITY OR TRANSACTION. IT IS UNLAWFUL TO MAKE, OR CAUSE TO BE MADE, TO ANY
PROSPECTIVE PURCHASER, CUSTOMER, OR CLIENT, ANY REPRESENTATION INCONSISTENT WITH
THE PROVISIONS OF THIS PARAGRAPH.

                   INCORPORATION OF CERTAIN INFORMATION BY REFERENCE

THIS JOINT PROXY STATEMENT-PROSPECTUS AND THE NEW GRACE PROSPECTUS
INCORPORATE BY REFERENCE DOCUMENTS NOT INCLUDED HEREIN OR THEREIN OR DELIVERED
HEREWITH OR THEREWITH. DOCUMENTS RELATING TO FRESENIUS USA, EXCLUDING EXHIBITS
UNLESS SPECIFICALLY INCORPORATED HEREIN, ARE AVAILABLE WITHOUT CHARGE UPON
WRITTEN REQUEST TO THE CLERK, FRESENIUS USA, INC., 2637 SHADELANDS DRIVE, WALNUT
CREEK, CALIFORNIA 94598. TELEPHONE REQUESTS MAY BE DIRECTED TO (510) 295-0200.
DOCUMENTS RELATING TO GRACE AND NEW GRACE, EXCLUDING EXHIBITS UNLESS
SPECIFICALLY INCORPORATED HEREIN OR IN THE NEW GRACE PROSPECTUS, ARE AVAILABLE
WITHOUT CHARGE UPON REQUEST IN WRITING TO W. R. GRACE & CO. CORPORATE
COMMUNICATIONS, ONE TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486-1010. TELEPHONE
REQUESTS MAY BE DIRECTED TO (407) 362-2300. IN ORDER TO ENSURE TIMELY DELIVERY
OF THE DOCUMENTS, ANY REQUEST SHOULD BE MADE BY SEPTEMBER 9, 1996.

The following documents filed with the Commission by Fresenius USA (File
No. 1-8350) are incorporated herein by reference: (a) Fresenius USA's Annual
Report on Form 10-K for the fiscal year ended December 31, 1995 and (b)
Fresenius USA's Quarterly Report on Form 10-Q for the quarter ended March 31,
1996.

        The following documents filed with the Commission by Grace (File No.
1-3720) are incorporated herein by reference: (a) Grace's Annual Report on Form
10-K for the fiscal year ended December 31, 1995, (b) Grace's Current Reports on
Form 8-K dated April 15, May 6 and July 11, 1996 and (c) Grace's Quarterly
Report on Form 10-Q for the quarter ended March 31, 1996.

        All documents filed by either Fresenius USA or Grace pursuant to Section
13(a), 13(c), 14 or 15(d) of the Exchange Act subsequent to the date hereof and
prior to the termination of the offering of the securities offered hereby shall
be deemed to be incorporated herein by reference and to be a part hereof from
the date of such filing. Any statement contained herein or in a document
incorporated or deemed to be incorporated herein by reference shall be deemed to
be modified or superseded for purposes hereof to the extent that a statement
contained herein or in any other subsequently filed document which also is, or
is deemed to be, incorporated herein by reference modifies or supersedes such
statement. Any such statement so modified or superseded shall not be deemed to
constitute a part hereof, except as so modified or superseded.

                    ENFORCEABILITY OF CIVIL LIABILITIES
                    UNDER THE FEDERAL SECURITIES LAWS

        Fresenius Medical Care is a corporation organized under the laws of
Germany. Certain of Fresenius Medical Care's directors and executive officers
and certain of the experts named herein are residents of Germany. A substantial
portion of the assets of Fresenius Medical Care and of such individuals is
located outside the U.S. As a result, it may be difficult or impossible for
investors to effect service of process upon such persons within the U.S. with
respect to matters arising under the U.S. federal securities laws or to enforce
against them in U.S. courts judgments of such courts predicated upon the civil
liability provisions of such federal securities laws. Fresenius Medical Care has
been advised by its German counsel, Norr, Stiefenhofer & Lutz, that there may be
doubt as to the enforceability in Germany, in original actions, of liabilities
predicated on the U.S. federal securities laws and that in Germany both
recognition and enforcement of court judgments with respect to civil liability
provisions of U.S. federal securities laws are solely governed by the provisions
of the German Civil Procedure Code (Zivilprozessordnung or ZPO). In some cases,
especially when according to the German statutory provisions the international
jurisdiction of the U.S. court will not be recognized or the judgment conflicts
with basic principles (e.g., the restriction to compensatory damages and limited
pre-trial discovery) of German law, the U.S. judgment might not be recognized by
a German court. The service of process in U.S. proceedings on persons in Germany
is regulated by a multilateral treaty guaranteeing service of writs and other
legal documents in civil cases if the current address of the defendant is known.

                                      iii

<PAGE>    20

                            TABLE OF CONTENTS

<TABLE>
<CAPTION>
                                                                         PAGE
                                                                         ----
<S>                                                                      <C>
AVAILABLE INFORMATION.................................................... i
INCORPORATION OF CERTAIN INFORMATION BY REFERENCE....................... iii
ENFORCEABILITY OF CIVIL LIABILITIES UNDER THE FEDERAL SECURITIES LAWS.... iii
SUMMARY................................................................. 1
    The Companies....................................................... 1
    The Reorganization.................................................. 2
    Consideration to Shareholders....................................... 2
    The Special Meetings................................................ 5
    Recommendations of the Boards of Directors.......................... 6
    The Reorganization Agreement........................................ 8
    Certain Federal Income Tax Consequences............................. 11
    Appraisal Rights.................................................... 11
    New Preferred Shares................................................ 12
    Certain Effects of the Reorganization on the Rights of Grace Shareholders and
        Fresenius USA Stockholders...................................... 12
    Certain Considerations.............................................. 12
    Markets and Market Prices........................................... 13
    Summary Selected Special-Purpose, Consolidated Financial Information of Grace....... 15
    Summary Selected Historical Financial Information of Fresenius Worldwide Dialysis... 16
    Summary Selected Historical Financial Information of Fresenius USA.. 17
    Summary Selected Unaudited Pro Forma Financial Information of Fresenius Medical
        Care............................................................ 18
    Comparative Per Share Data.......................................... 19
RISK FACTORS............................................................ 21
    Risks Relating to the Business of Fresenius Medical Care............ 21
    Risks Relating to Regulatory Matters................................ 23
    Other Risks......................................................... 28
THE SPECIAL MEETINGS.................................................... 33
    General............................................................. 33
    Date, Place and Time................................................ 33
    Record Dates........................................................ 33
    Votes Required...................................................... 34
    Voting and Revocation of Proxies.................................... 35
    Solicitation of Proxies............................................. 36
    Grace Amendment..................................................... 36
BACKGROUND AND REASONS.................................................. 37
    Background of the Reorganization; Reasons for the Recommendation of the Grace
        Board........................................................... 37
    Background of the Reorganization; Reasons for the Recommendation of the Fresenius
        USA Board....................................................... 47

```
        Recommendation of the Fresenius USA Independent Committee and the Board of
           Directors..........................................................  50
THE REORGANIZATION............................................................  58
        The Reorganization Agreement..........................................  58
        Consideration to Shareholders.........................................  60
        Effective Time........................................................  61
        Recommendation of the Grace Board; Non-Solicitation...................  61
        Termination Fees......................................................  62
        Expenses..............................................................  62
        Termination...........................................................  63
        Conduct of Business Prior to Effective Time; Certain Covenants........  63
        Employee Benefits.....................................................  65
        Conditions............................................................  65
        Waiver and Amendment..................................................  67
        The Contribution Agreement............................................  67
        The Distribution Agreement............................................  68
        The Grace Tax Sharing and Indemnification Agreement...................  68
        The Fresenius Tax Indemnification Agreement...........................  69
        Additional Agreements of Fresenius USA................................  69
        Continuing Arrangements between Fresenius Medical Care and Fresenius AG  70
        Accounting Treatment..................................................  73
        Appraisal Rights......................................................  73
    </TABLE>
```

                                            iv

    <PAGE>    21

    <TABLE>
    <CAPTION>
```
                                                                           PAGE
                                                                           ----
    <S>                                                                    <C>
        Exchange of Certificates..............................................  78
BUSINESS OF FRESENIUS MEDICAL CARE............................................  80
        General...............................................................  80
        Renal Industry Overview...............................................  80
        Strategy..............................................................  83
        Business of Fresenius Worldwide Dialysis..............................  86
        Fresenius AG..........................................................  86
        Fresenius Worldwide Dialysis..........................................  87
        Fresenius Worldwide Dialysis Products.................................  88
        Marketing, Distribution and Service...................................  91
        Manufacturing Operations and Sources of Supply........................  92
        International Development.............................................  93
        Research and Development..............................................  93
        Patents, Trademarks and Licenses......................................  94
        Competition...........................................................  94
        Employees.............................................................  95
        Properties............................................................  95
        Litigation............................................................  96
        Business of Fresenius USA.............................................  96
        Fresenius USA.........................................................  96
        History...............................................................  97
        Fresenius USA Products................................................  98
        Marketing, Distribution and Service...................................  99
        Manufacturing Operations and Sources of Supply........................ 100
        Research and Development.............................................. 101
        Patents, Trademarks and Licenses...................................... 102
        Competition........................................................... 102
        Employees............................................................. 102
        Properties............................................................ 103
        Material Contracts between Fresenius AG and Fresenius USA............. 103
        Business of NMC....................................................... 105
        W. R. Grace & Co...................................................... 105
        Overview.............................................................. 105
        DSD Operations........................................................ 106
        Medical Products Group................................................ 111
        NMC Homecare.......................................................... 112
        Competition........................................................... 115
        Employees............................................................. 117
        Properties............................................................ 117
        Regulatory and Legal Matters.......................................... 118
        Regulatory Overview................................................... 118
        Product Regulation.................................................... 119
        Facilities and Operational Regulation................................. 121
        Reimbursement......................................................... 122
        Anti-kickback Statute, False Claims Act, Stark Law and Fraud and Abuse Laws...... 127
        Legal and Regulatory Proceedings...................................... 130
        Health Care Reform.................................................... 142
        Changes in the Health Care Industry................................... 142
GRACE SPECIAL-PURPOSE SELECTED FINANCIAL DATA................................. 144
MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS
    -- NMC.................................................................... 145
        Overview.............................................................. 145
        Results of Operations................................................. 146
        Liquidity and Capital Resources....................................... 149
SELECTED FINANCIAL DATA OF FRESENIUS WORLDWIDE DIALYSIS........................ 152
SUMMARY OF CERTAIN SIGNIFICANT DIFFERENCES BETWEEN GERMAN AND U.S. GENERALLY ACCEPTED
    ACCOUNTING PRINCIPLES..................................................... 153
        Goodwill and Business Acquisitions.................................... 153
        Capitalization of Interest............................................ 153
        Leasing............................................................... 153
        Recording of Provisions, Reserves, Valuation Adjustments.............. 153
        Pensions and Similar Obligations...................................... 154
```

```
</TABLE>

<PAGE>   22
                                         v
<TABLE>
<CAPTION>
```

| | PAGE |
|---|---|
| &lt;S&gt; | &lt;C&gt; |
| Foreign Currency | 154 |
| Deferred Taxes | 154 |
| MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS | |
| -- FRESENIUS WORLDWIDE DIALYSIS | 155 |
| Overview | 155 |
| Results of Operations | 157 |
| Liquidity and Capital Resources | 160 |
| SELECTED FINANCIAL DATA OF FRESENIUS USA | 163 |
| MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS | |
| -- FRESENIUS USA | 164 |
| Overview | 164 |
| Results of Operations | 166 |
| Liquidity and Capital Resources | 168 |
| FRESENIUS MEDICAL CARE AG UNAUDITED PRO FORMA CONDENSED COMBINED FINANCIAL | |
| INFORMATION | 170 |
| MANAGEMENT OF FRESENIUS MEDICAL CARE | 178 |
| General | 178 |
| The Supervisory Board | 178 |
| Members of the FMC Supervisory Board | 178 |
| FMC Supervisory Board Compensation | 179 |
| FMC Management Board and Certain Other Executive Officers | 179 |
| Compensation of the FMC Management Board and Certain Other Executive Officers | 182 |
| Stock Option Plan | 183 |
| SECURITY OWNERSHIP | 185 |
| Security Ownership of Certain Beneficial Owners and Management of Fresenius Medical | |
| Care | 185 |
| Security Ownership of Certain Beneficial Owners and Management of Fresenius AG | 185 |
| Security Ownership of Certain Beneficial Owners and Management of Fresenius USA | 186 |
| INTERESTS OF CERTAIN PERSONS | 188 |
| Other Interests in the Reorganization | 188 |
| FRESENIUS USA EXECUTIVE COMPENSATION | 189 |
| Summary Compensation | 189 |
| Securities Repurchases | 191 |
| Compensation Committee Interlocks and Insider Participation | 193 |
| Indemnification Agreements | 193 |
| FINANCING | 194 |
| FMC Credit Agreement | 194 |
| Other Indebtedness | 196 |
| CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE TRANSACTIONS TO GRACE AND GRACE | |
| SHAREHOLDERS | 197 |
| Consequences of the Distribution | 197 |
| Consequences of the Recapitalization | 198 |
| Consequences of the Grace Merger | 199 |
| CERTAIN INCOME TAX CONSEQUENCES OF THE TRANSACTIONS TO HOLDERS OF FRESENIUS USA COMMON | |
| STOCK | 201 |
| U.S. Federal Income Tax Consequences of the Merger | 201 |
| U.S. and German Tax Consequences of Holding FMC Ordinary Shares or ADSs | 201 |
| Other Tax Consequences | 204 |
| DESCRIPTION OF NEW PREFERRED SHARES | 206 |
| General | 206 |
| Dividends | 206 |
| Adjustments | 208 |
| Voting Rights | 208 |
| Optional Redemption | 209 |
| Preemptive Rights | 209 |
| DESCRIPTION OF CAPITAL STOCK OF FRESENIUS MEDICAL CARE | 210 |
| General | 210 |
| Absence of a Public Market | 210 |
| Dividend Rights | 210 |
| Liquidation Rights | 211 |
| Preemptive Rights | 211 |

```
</TABLE>

<PAGE>   23
                                         vi
<TABLE>
<CAPTION>
```

| | PAGE |
|---|---|
| &lt;S&gt; | &lt;C&gt; |
| Voting Rights | 211 |
| FMC Preferred Shares | 212 |
| Exchange Controls and Other Limitations | 213 |
| DESCRIPTION OF THE POOLING AGREEMENT | 214 |
| General | 214 |
| Independent Directors | 214 |
| Extraordinary Transactions | 214 |
| Interested Transactions | 214 |
| Disposition of Voting Shares; Take-along Rights | 214 |
| Listing of American Depositary Shares; SEC Filings | 215 |
| Term | 216 |
| Amendment | 216 |
| Enforcement; Governing Law | 216 |

```
    Directors and Officers............................................ 216
DESCRIPTION OF AMERICAN DEPOSITARY RECEIPTS........................... 217
    Deposit, Transfer and Withdrawal................................. 217
    Distributions on Deposited Securities............................ 218
    Disclosure of Interests.......................................... 220
    Record Dates..................................................... 220
    Voting of Deposited Securities................................... 220
    Inspection of Transfer Books..................................... 221
    Reports and Other Communications................................. 221
    Changes Affecting Deposited Securities........................... 221
    Amendment and Termination of Deposit Agreement................... 222
    Charges of Depositary............................................ 222
    Liability of Holders for Taxes................................... 223
    General Limitations.............................................. 223
    Governing Law.................................................... 224
    Morgan Guaranty Trust Company of New York........................ 224
COMPARISON OF CERTAIN RIGHTS OF SHAREHOLDERS OF GRACE AND FRESENIUS USA. 225
    Duties of Directors.............................................. 225
    Size and Classification of the Board of Directors................ 226
    Removal of Directors; Filling Vacancies on the Board of Directors. 227
    Shareholder Nominations.......................................... 228
    Action by Written Consent........................................ 229
    Meetings of Shareholders......................................... 229
    Shareholder Proposals............................................ 230
    Required Vote for Authorization of Certain Actions............... 230
    Amendment of Corporate Charter and By-laws....................... 231
    Appraisal Rights................................................. 231
    Fair Price and Anti-Greenmail Provisions......................... 232
    Stock Rights Plan................................................ 232
    State Anti-takeover Statutes..................................... 233
    Limitation on Directors' Liability............................... 234
    Indemnification of Officers and Directors........................ 235
    Cumulative Voting................................................ 235
    Conflict-of-Interest Transactions................................ 236
    Dividends and Other Distributions................................ 236
    Issuance of Rights or Options to Purchase Shares to Directors, Officers and
        Employees.................................................... 237
    Loans to Directors............................................... 237
    Class Action Suits............................................... 238
    Shareholder Derivative and Breach of Fiduciary Duty Suits........ 238
    Right to Inspect Corporate Books and Records; Right to Inspect Shareholder Lists.... 239
    SEC Reporting.................................................... 240
AMENDMENT TO THE FRESENIUS USA 1987 STOCK OPTION PLAN................. 241
    The Fresenius USA Plan........................................... 241
    Terms of the Grant to Dr. Lipps.................................. 242
    Effect of the Amendment.......................................... 242
EXPERTS.............................................................. 243
VALIDITY OF SHARES................................................... 243
SUBMISSION OF SHAREHOLDER PROPOSALS.................................. 244
</TABLE>
```

vii

<PAGE>  24

```
<TABLE>
<CAPTION>
                                                                    PAGE
                                                                    ----
<S>                                                                 <C>
INDEX OF DEFINED TERMS............................................... 245
INDEX OF FINANCIAL STATEMENTS........................................ F-1
Appendix A   -  Reorganization Agreement
Appendix B   -  Form of Certificate of Amendment of the Certificate of Incorporation of W. R.
                Grace & Co.
Appendix C   -  Merrill Lynch and CS First Boston Fairness Opinions
Appendix D   -  Salomon Brothers Fairness Opinion
Appendix E   -  Fresenius USA 1987 Stock Option Plan
Appendix F   -  Sections 910 and 623 of the NYBCL
Appendix G   -  Sections 85 through 98 of the MBCL
Appendix H   -  Letter Agreement, dated May 8, 1996, among Fresenius AG, Fresenius USA and
                Grace
Appendix I   -  Agreement, dated May 8, 1996 between Fresenius AG and Fresenius USA
Annex A      -  Grace Holding, Inc. Prospectus (included only with copies of this Joint Proxy
                Statement-Prospectus being furnished to shareholders of Grace)
</TABLE>
```

viii

<PAGE>  25

## SUMMARY

The following summary is not intended to be complete and is qualified in all respects by the more detailed information included in this Joint Proxy Statement-Prospectus, the Appendices hereto and the documents incorporated herein by reference. Shareholders are urged to read carefully this Joint Proxy Statement-Prospectus, including the Appendices hereto and the documents incorporated herein by reference, in their entirety. In addition, Grace shareholders are urged to read the New Grace Prospectus attached as Annex A to the version of this Joint Proxy Statement-Prospectus furnished to Grace shareholders.

THE COMPANIES

  GRACE

Grace, through its subsidiaries, is primarily engaged in the packaging and specialty chemicals businesses on a worldwide basis and, through NMC, in specialized health care activities. In the Reorganization, Grace will spin off New Grace, containing all of its businesses other than NMC. At such time, Grace's name will be changed to "Fresenius National Medical Care, Inc." and New Grace's name will be changed to "W. R. Grace & Co."

NMC is primarily engaged in (a) providing kidney dialysis services, (b) manufacturing and distributing products and equipment for dialysis treatment and performing clinical laboratory testing and other medical services, and (c) providing home infusion, home respiratory therapy and home health services. NMC operates through three principal business units: the Dialysis Services Division ("DSD"), the Medical Products Group ("MPG"), and the NMC Homecare Division ("NMC Homecare"). NMC's address is Reservoir Place, 1601 Trapelo Road, Waltham, Massachusetts 02154, and its telephone number is (617) 466-9850.

Grace's address is One Town Center Road, Boca Raton, Florida 33486-1010 and its telephone number is (407) 362-2000. Following the Reorganization, FNMC's address and telephone number will become those of NMC listed above.

FRESENIUS AG

Fresenius AG is a German corporation which develops, manufactures and distributes pharmaceuticals and medical systems products and services on a global basis. Fresenius AG conducts business in four operating divisions: Fresenius Worldwide Dialysis, Pharmaceuticals Division, Intensive Care and Diagnostics Division, and Project Business Division. Fresenius Worldwide Dialysis develops, manufactures and distributes dialysis systems products for the treatment of patients suffering from kidney failure, including dialysis machines, dialyzers, bloodlines, hemodialysis concentrates and peritoneal dialysis solutions. Fresenius AG's address is Borkenberg 14, 61440 Oberursel, Germany (near Frankfurt), and its telephone number is 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-600.

FRESENIUS USA

Fresenius USA is a manufacturer and the exclusive North American distributor of Fresenius Worldwide Dialysis' products. Fresenius AG is the beneficial owner of approximately 70.6% of the outstanding Fresenius USA Common Stock. See "SECURITY OWNERSHIP." Fresenius USA's address is 2637 Shadelands Drive, Walnut Creek, California 94598, and its telephone number is (510) 295-0200.

FRESENIUS MEDICAL CARE

Fresenius Medical Care will be the world's largest integrated dialysis products and services company. Fresenius Medical Care will combine Fresenius Worldwide Dialysis, a leading international provider of a complete line of dialysis products with a commitment to technological superiority and innovation, with NMC, a leading provider of dialysis services which has a commitment to quality clinical treatment. Following consummation of the Reorganization, Fresenius Medical Care will have its corporate headquarters at Borkenberg 14, 61440 Oberursel, Germany (near Frankfurt).

1

<PAGE>   26

THE REORGANIZATION

The following transactions are to be consummated in connection with the Reorganization:

- Fresenius AG will contribute Fresenius Worldwide Dialysis including its shares of Fresenius USA, to Fresenius Medical Care.

- The Reorganization Agreement provides that NMC will enter into the NMC Credit Agreement and, on the Effective Date, borrow an amount sufficient to finance the payment to, and the assumption of indebtedness of, Grace Chemicals such that the Debt of Grace on a consolidated basis, at the Effective Time, will not exceed $2.263 billion, subject to adjustment as provided in the Reorganization Agreement.

- Grace Chemicals will then distribute the capital stock of NNC to Grace, as a result of which Grace Chemicals and NMC will be sister companies.

- Immediately thereafter, Grace will contribute the capital stock of Grace Chemicals to New Grace and effect the Distribution.

- Immediately following the Distribution, Grace will effect the Recapitalization, in which each holder of Grace Common Stock will hold thereafter one share of Grace Common Stock and one New Preferred Share for each share of Grace Common Stock held.

- Immediately following the Recapitalization, each of Grace and Fresenius USA will merge with wholly owned subsidiaries of Fresenius Medical Care.

- As promptly as practicable following the Mergers, Fresenius Medical Care will contribute Fresenius USA to FNMC.

CONSIDERATION TO SHAREHOLDERS

In the Reorganization, Fresenius AG and shareholders of Grace and Fresenius USA will receive the following consideration:

FRESENIUS AG

- Fresenius Worldwide Dialysis, including all Fresenius USA Common Stock
  held by Fresenius AG or its subsidiaries, will be contributed to
  Fresenius Medical Care in exchange for FMC Ordinary Shares representing
  approximately 50.3% of all FMC Ordinary Shares outstanding, on a fully
  diluted basis, immediately following the Reorganization.

GRACE COMMON SHAREHOLDERS

- The closing price of Grace Common Stock in NYSE composite trading on
  August 1, 1996 was $63 1/4 per share.

- Each holder of Grace Common Stock issued and outstanding at the time of
  Distribution (the "Time of Distribution") will receive one share of New
  Grace Common Stock in the Distribution.

- Each holder of Grace Common Stock issued and outstanding after the Time
  of Distribution will receive one New Preferred Share.

- Holders of shares of Grace Common Stock issued and outstanding
  immediately prior to the Effective Time (other than any shares of Grace
  Common Stock owned by Fresenius AG or its subsidiaries, Fresenius USA or
  its subsidiaries or any Grace subsidiary, any shares of Grace Common
  Stock held in Grace's treasury or any shares of Grace Common Stock
  dissenting from the Reorganization), and NMC employees who are holders of
  options with respect to Grace Common Stock will be allocated 44.8% of the
  FMC Ordinary Shares outstanding on a fully diluted basis. As of July 15,
  1996, there were outstanding 92,001,176 shares of Grace Common Stock, and
  options with respect to approximately 231,000 shares of Grace Common
  Stock held by employees of NMC (none of whom is an officer or

2

<PAGE>   27

director of Grace). On this basis, assuming that there are no Grace
Common Dissenting Shareholders and that each option with respect to Grace
Common Stock is converted to an option with respect to 3.7 ADSs, each
share of Grace Common Stock will be converted in the Grace Merger into
the right to receive 1.013 ADSs, each such ADS representing one-third of
an FMC Ordinary Share.

GRACE PREFERRED SHAREHOLDERS

- Each share of Grace Preferred Stock and each New Preferred Share issued
  and outstanding immediately prior to the Effective Time will remain
  issued and outstanding as FNMC stock.

FRESENIUS USA COMMON STOCKHOLDERS

- The closing price of Fresenius USA Common Stock in AMEX composite trading
  on August 1, 1996 was $19 per share.

- Each share of Fresenius USA Common Stock issued and outstanding
  immediately prior to the Effective Time (other than any shares of
  Fresenius USA Common Stock owned by Grace or its subsidiaries or by
  Fresenius AG or its subsidiaries, any shares of Fresenius USA Common
  Stock held in Fresenius USA's treasury or any shares of Fresenius USA
  Common Stock dissenting from the Reorganization) will be converted in the
  Fresenius USA Merger into the right to receive approximately 1.112 ADSs,
  each such ADS representing one-third of an FMC Ordinary Share, and each
  holder of options or warrants to purchase Fresenius USA Common Stock
  (other than Grace or its subsidiaries or Fresenius AG or its
  subsidiaries) will receive options or warrants to purchase approximately
  1.112 ADSs for each share of Fresenius USA Common Stock issuable upon
  exercise of such options or warrants. As of July 29, 1996, there were
  outstanding 26,374,218 shares of Fresenius USA Common Stock and options
  or warrants with respect to 2,636,626 shares of Fresenius USA Common
  Stock. On this basis, assuming that there are no Fresenius USA Dissenting
  Stockholders and that each option with respect to Fresenius USA Common
  Stock is converted into an option with respect to FMC Ordinary Shares,
  and that Fresenius USA effects certain securities repurchases (see "THE
  REORGANIZATION -- Additional Agreements of Fresenius USA"), holders of
  shares of (and options and warrants with respect to) Fresenius USA Common
  Stock will be allocated approximately 4.9% of the FMC Ordinary Shares.

GENERAL

- In lieu of fractional FMC Ordinary Shares or ADSs, each person who would
  otherwise have been entitled to a fraction of an FMC Ordinary Share or
  ADS will be paid an amount in cash (without interest) equal to such
  holder's proportionate interest in the net proceeds from the sale in the
  open market by an exchange agent appointed by Fresenius Medical Care with
  the approval of Grace and Fresenius AG (the "Exchange Agent"), on behalf
  of all such holders, of the aggregate fractional FMC Ordinary Shares or
  ADSs issued.

- Each share of Grace Common Stock owned by Fresenius AG or its
  subsidiaries, Fresenius USA or its subsidiaries or any Grace subsidiary,
  or held in Grace's treasury, will be cancelled and retired without
  payment of any consideration therefor and will cease to exist. Each share
  of Fresenius USA Common Stock owned by Grace or its subsidiaries,
  Fresenius AG or its subsidiaries, or any Fresenius USA subsidiary, or
  held in Fresenius USA's treasury, will be cancelled and retired without

payment of any consideration therefor (except for the consideration set
forth above) and will cease to exist. As of July 15 , 1996, Grace owned
no shares of Fresenius USA Common Stock, and Fresenius USA owned one
share of Grace Common Stock.

3

<PAGE>   28
The following charts represent the corporate organization of the parties to the
Reorganization on both pre-transaction and post-transaction bases:

[CHART]

4

<PAGE>   29

THE SPECIAL MEETINGS

GRACE

The Grace Special Meeting to consider and vote on approval and adoption of
the Reorganization Agreement and the transactions contemplated thereby, as well
as the Grace Amendment, will be held on September 16, 1996 at 10:00 a.m. local
time at Grace's headquarters at One Town Center Road, Boca Raton, Florida. Only
holders of record of Grace Common Stock and Grace Preferred Stock at the close
of business on July 29, 1996 (the "Grace Record Date") will be entitled to
notice of and to vote at the Grace Special Meeting. As of July 15, 1996, the
following shares of the following classes of Grace's capital stock were
outstanding and entitled to the following votes:

<TABLE>
<CAPTION>

| CLASS | SHARES OUTSTANDING | VOTES PER SHARE |
|-------|--------------------|-----------------|
| <S> | <C> | <C> |
| Grace 6% Preferred Stock........................................ | 36,460 | 160 |
| Grace Class A Preferred Stock.................................. | 16,256 | 16 |
| Grace Class B Preferred Stock.................................. | 21,577 | 16 |
| Grace Common Stock............................................ | 92,001,176 | 1 |

</TABLE>

Holders of Grace Common Stock and Grace Preferred Stock will vote together
as one class.

Votes Required.  Adoption and approval of the Reorganization Agreement and
the transactions contemplated thereby requires the affirmative vote of
two-thirds (and, in the case of the Grace Amendment, a majority) of the total
voting power (or 65,626,736 votes as of July 15, 1996) of Grace's outstanding
capital stock. As a result, failing to vote in person or by proxy on any such
proposal or abstaining on any such proposal has the same effect as voting
against the proposal.

Beneficial Ownership of Management.  At June 15, 1996, Grace's directors
and executive officers and their affiliates beneficially owned in the aggregate
Grace Common Stock and Grace Preferred Stock representing less than 1% of the
total voting power of Grace's outstanding capital stock. Each of the directors
and executive officers of Grace is expected to vote in favor of the proposals to
be voted on at the Grace Special Meeting.

FRESENIUS USA

The Fresenius USA Special Meeting to consider and vote on the approval and
adoption of the Reorganization Agreement and the transactions contemplated
thereby, as well as on the Fresenius USA Plan Amendment, will be held on
September 16, 1996 at 10:00 a.m. local time, at the 52nd floor conference
center of O'Melveny & Myers LLP, 153 East 53rd Street, New York NY 10022. Only
holders of record of Fresenius USA Common Stock at the close of business on
July 29, 1996 (the "Fresenius USA Record Date") will be entitled to notice of
and to vote at the Fresenius USA Special Meeting. At July 29, 1996, there were
outstanding and entitled to vote 26,374,218 shares of Fresenius USA Common
Stock. Each share of Fresenius USA Common Stock is entitled to one vote.

The affirmative vote of the holders of record of at least two-thirds of the
outstanding shares of Fresenius USA Common Stock is necessary to approve and
adopt the Reorganization Agreement and the transactions contemplated thereby.
The affirmative vote of the holders of record of a majority of the shares of
Fresenius USA Common Stock is necessary to approve the Fresenius USA Plan
Amendment. As a result, failing to vote by person or proxy on any such proposal
at the Fresenius USA Special Meeting or abstaining on any such proposal has the
same effect as voting against the proposal.

Fresenius AG is currently the beneficial owner of 18,438,545 outstanding
shares of Fresenius USA Common Stock, including 3,129,883 shares of Fresenius
USA Common Stock which were acquired upon conversion of the Fresenius USA Series
F Series Preferred Stock ("Fresenius USA Preferred Stock") previously owned by
Fresenius AG and including 1,515,221 shares which were acquired upon exercise of

5

<PAGE>   30

warrants to purchase Fresenius USA Common Stock. Fresenius AG has informed

Fresenius USA that it has agreed to vote all of its shares of Fresenius USA
Common Stock in favor of the Reorganization and intends to vote all such shares
in favor of the Fresenius USA Plan Amendment. Such 18,438,545 shares represent
approximately 70.3% of the outstanding shares of Fresenius USA Common Stock.
ACCORDINGLY, SUCH AFFIRMATIVE VOTE BY FRESENIUS AG WILL RESULT IN THE APPROVAL
OF THE REORGANIZATION AND THE TRANSACTIONS CONTEMPLATED THEREBY AND THE
FRESENIUS USA PLAN AMENDMENT. In addition, directors and executive officers of
Fresenius USA, who beneficially owned as of July 23, 1996, in the aggregate,
262,166 shares of Fresenius USA Common Stock, or approximately 1% of the
Fresenius USA Common Stock then outstanding, are expected to vote the shares
they own in favor of the Reorganization and the Fresenius USA Plan Amendment.
See "SECURITY OWNERSHIP -- Security Ownership of Certain Beneficial Owners and
Management of Fresenius USA."

     Shareholders of Fresenius AG have already approved the Reorganization at an
Extraordinary General Meeting held on April 11, 1996.

     For information with respect to certain interests of the directors and
executive officers of Fresenius USA in the Reorganization, see "INTERESTS OF
CERTAIN PERSONS" and "FRESENIUS USA EXECUTIVE COMPENSATION."

     For additional information relating to the Special Meetings, see "THE
SPECIAL MEETINGS."

RECOMMENDATIONS OF THE BOARDS OF DIRECTORS

     The Grace Board has unanimously approved the Reorganization Agreement
and the transactions contemplated thereby. Based in part on the recommendations
of the Grace Financial Advisors summarized under "BACKGROUND AND REASONS
- -- Background of the Reorganization; Reasons for the Recommendation of the
Grace Board," the members of the Grace Board believe that the Reorganization
Agreement and the transactions contemplated thereby are fair to, and in the
best interests of, the Grace shareholders, and recommend a vote FOR approval of
the Reorganization and the Grace Amendment.

     The Fresenius USA Board, by unanimous vote, including the votes of all
of the independent directors of Fresenius USA (the "Fresenius USA Independent
Committee"), has approved the Reorganization Agreement and the transactions
contemplated thereby, including without limitation, the Fresenius USA Merger.
Based in part on the recommendations of the Fresenius USA Independent
Committee's financial advisors summarized under "BACKGROUND AND REASONS --
Background of the Reorganization; Reasons for the Recommendation of the
Fresenius USA Board," the members of the Fresenius USA Board unanimously
believe that such transactions are fair to, and in the best interests of, the
stockholders of Fresenius USA. The Fresenius USA Board, by unanimous vote,
including the vote of all of the members of the Fresenius USA Independent
Committee, has also approved the Fresenius USA Plan Amendment. The Fresenius
USA Board, including all of the members of the Fresenius USA Independent
Committee, unanimously recommend a vote FOR approval of the Reorganization and
the Fresenius USA Plan Amendment.

     In connection with approval of the Reorganization by the Grace Board, the
Grace Board received opinions from CS First Boston and Merrill Lynch to the
effect that, in the opinion of such firms, as of February 4, 1996, the terms of
the Distribution Payment and the Grace Merger, taken together, were fair, from a
financial point of view, to the holders of Grace Common Stock. In connection
with these opinions, these firms performed a variety of financial and
comparative analyses which included, among other things, valuation analyses with
respect to Fresenius Medical Care and NMC and made a presentation to the Grace
Board. Such opinions and presentation are based on certain assumptions and are
subject to certain limitations. Such opinions and presentation are described
herein under "BACKGROUND AND REASONS" at pages 37 through 57, and the opinions
of CS First Boston and Merrill Lynch are set forth in full in Appendix C hereto.

     In connection with approval of the Reorganization by the Fresenius USA
Board, the Fresenius USA Independent Committee received an opinion from Salomon
Brothers to the effect that, in the opinion of such

                                       6

<PAGE>   31

firm, as of May 8, 1996, the exchange ratio of 0.37067735 FMC Ordinary Shares to
be issued in exchange for each share of Fresenius USA Common Stock held by the
stockholders of Fresenius USA (other than Fresenius AG and Grace and their
respective subsidiaries) was fair, from a financial point of view, to the
holders of Fresenius USA Common Stock (other than Fresenius AG and Grace and
their respective subsidiaries). In connection with this opinion, Salomon
Brothers performed a variety of financial and comparative analyses which
included, among other things, valuation analyses with respect to Fresenius
Medical Care and Fresenius USA and made a presentation to the Fresenius USA
Independent Committee. Such opinion and presentation are based on certain
assumptions and are subject to certain limitations. Such opinion and
presentation are described herein under "BACKGROUND AND REASONS" at pages 47
through 57, and the opinion of Salomon Brothers is set forth in full in Appendix
D hereto.

     The determinations of the Grace Board and Fresenius USA Board with respect
to the Reorganization are based upon a number of factors. For a discussion of
certain factors considered by the Grace Board and the Fresenius USA Board, see
"BACKGROUND AND REASONS -- Background of the Reorganization; Reasons for the
Recommendation of the Grace Board" and "-- Background of the Reorganization;
Reasons for the Recommendation of the Fresenius USA Board."

     INTERESTS OF CERTAIN PERSONS IN THE TRANSACTIONS

In considering the recommendations of the Grace Board and the Fresenius USA
Board with respect to the Reorganization, shareholders of Grace and Fresenius
USA should be aware that Fresenius AG and certain current and former members of
the respective boards of directors of Grace and Fresenius USA have certain
interests in the Reorganization in addition to the interests of shareholders of
Grace and Fresenius USA generally. These interests include certain contractual
relationships relating to the supply of products and the sharing of intellectual
property, among other things, between Fresenius AG and Fresenius Medical Care
(discussed under "THE REORGANIZATION -- Continuing Arrangements Between
Fresenius Medical Care and Fresenius AG"), various employment and consulting
agreements (discussed under "MANAGEMENT OF FRESENIUS MEDICAL
CARE -- Compensation of the FMC Management Board and Certain Other Executive
Officers -- Employment and Consulting Agreements"), indemnification agreements
(discussed under "FRESENIUS USA EXECUTIVE COMPENSATION -- Indemnification
Agreements"), payments in the aggregate amount of $15,035,119 in respect of
shares of, and stock options with respect to, Fresenius USA Common Stock
(discussed under "FRESENIUS USA EXECUTIVE COMPENSATION -- Securities
Repurchases") and supplemental compensation ranging between $50,000 and $75,000
per person to members of the Fresenius USA Independent Committee for services
rendered thereon (discussed under "INTERESTS OF CERTAIN PERSONS -- Other
Interests in the Reorganization"). No Grace insiders will receive any material
benefits as a result of the Reorganization.

    OPINIONS OF FINANCIAL ADVISORS

    Grace.  CS First Boston Corporation ("CS First Boston") and Merrill Lynch,
Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), financial advisors to
Grace ("Grace Financial Advisors"), have issued their respective written
opinions to the Grace Board that, as of February 4, 1996, the date of approval
of the Reorganization Agreement by the Grace Board, the terms of the
Distribution Payment and the Grace Merger, taken together, were fair, from a
financial point of view, to the holders of the Grace Common Stock. Such written
opinions are reproduced in their entirety as Appendix C to this Joint Proxy
Statement-Prospectus, and holders of Grace Common Stock are urged to read such
opinions and confirmations carefully in their entirety for a description of the
procedures followed, assumptions and qualifications made, matters considered,
and limitations on the review undertaken by such firms.

    Fresenius USA.  Salomon Brothers Inc ("Salomon Brothers"), the financial
advisor to the Fresenius USA Independent Committee, has issued its written
opinion to the Fresenius USA Independent Committee that, as of May 8, 1996, the
exchange ratio for the exchange of Fresenius USA Common Stock for FMC Ordinary
Shares by the stockholders of Fresenius USA (other than Fresenius AG and Grace
and their

                                       7

<PAGE>   32

respective subsidiaries) in the Fresenius USA Merger is fair, from a financial
point of view, to such holders. The written opinion of Salomon Brothers is
reproduced in its entirety as Appendix D to this Joint Proxy
Statement-Prospectus, and holders of Fresenius USA Common Stock are urged to
read such opinion carefully in its entirety for a description of the procedures
followed, assumptions and qualifications made, matters considered, and
limitations on the review undertaken by Salomon Brothers.

    THE REORGANIZATION AGREEMENT

    On February 4, 1996, Fresenius AG and Grace executed and delivered
agreements which provide for the transactions described below.

    FORMATION OF FRESENIUS MEDICAL CARE

    Fresenius AG has changed the name of Sterilpharma GmbH to "Fresenius
Medical Care GmbH" and will convert it into a German stock corporation, changing
its name to "Fresenius Medical Care AG."

    THE CONTRIBUTION

    Prior to the Effective Time, Fresenius AG will contribute Fresenius
Worldwide Dialysis to Fresenius Medical Care. However, Fresenius AG will retain
and lease (either directly or through an affiliate) to Fresenius Medical Care
(or an affiliate) certain real property and buildings in Germany, as described
under "THE REORGANIZATION -- Continuing Arrangements between Fresenius Medical
Care and Fresenius AG  -- Real Property Lease." Fresenius AG will also retain
and license to Fresenius Medical Care the "Fresenius" name and mark and the "F"
logo as described under "THE REORGANIZATION -- Continuing Arrangements between
Fresenius Medical Care and Fresenius AG -- Trademarks."

    THE DISTRIBUTION

    Prior to the Effective Time, New Grace will hold all assets of Grace (other
than NMC). Immediately prior to the Recapitalization, Grace will effect the
Distribution whereby Grace will spin off New Grace.

    THE DISTRIBUTION PAYMENT

    In connection with the Distribution, NMC will borrow and/or will retain or
assume Debt (as defined in the Reorganization Agreement) in an aggregate amount
of approximately $2.263 billion (as adjusted pursuant to the Reorganization
Agreement) and will distribute the net cash proceeds to Grace Chemicals as a
dividend (such assumption and dividend, the "Distribution Payment"). It is
expected that NMC will borrow funds for such Distribution Payment pursuant to

the NMC Credit Agreement, as a result of which, on a pro forma basis, NMC would have had annual debt service obligation under such Agreement and its other obligations of approximately $170.0 million in 1995. See Note 2 of Notes to Unaudited Pro Forma Condensed Combined Financial Information. Grace intends that a portion of such net cash proceeds will be applied to further reduce Grace Chemicals' debt and the remaining net cash proceeds received from NMC be used to purchase shares of New Grace Common Stock and to invest in core businesses.

In connection with the NMC Credit Agreement, Grace Chemicals has agreed to guarantee Facility 3 (which provides for $500 million of available credit) and under Facility 2 up to a maximum of $450 million. The NMC Credit Agreement is expected to provide that these guarantees will be released as to $800 million upon the occurrence of certain events after 45 days, but within 60 days, following the Effective Date, including (a) the receipt of an unconditional joint and several guarantee from Fresenius Medical Care and certain of its subsidiaries for the full amount of the NMC Credit Facility; or (b) the receipt of a letter of credit or other acceptable financial accommodation for the account of Grace Chemicals or Fresenius Medical Care in form and substance satisfactory to the Lenders; or (c) a prepayment in certain specified amounts under the NMC Credit Facility guaranteed by Grace Chemicals. If such guarantees are not released within 60 days following

8

<PAGE>   33

the Effective Date, demand for payment will be made on Grace Chemicals under such guarantees as to $800 million. It is the intention of Fresenius Medical Care to provide the unconditional joint and several guarantees referred to in the preceding sentence in a manner so as to cause the release of Grace Chemicals' guarantees as to $800 million not before 46 days, but on or prior to 50 days, following the Effective Date. However, no assurance can be given that such guarantees as to $800 million will be provided or that either or both of Grace Chemicals' guarantees will be released. In the event that Fresenius Medical Care does not provide such guarantees or otherwise effect the release of the Grace Chemicals guarantees as to $800 million, Grace Chemicals would be required to provide the letters of credit or repay the amounts specified in the NMC Credit Agreement and, thereafter, be subrogated to the rights of Lenders with respect to such repaid amounts after the Lenders under the respective facilities have been repaid in full; and Grace Chemicals has undertaken to the Lenders to maintain unused available credit in an amount to be determined while the Grace Chemicals guarantees are outstanding in order to facilitate such actions. In connection with Grace Chemicals' agreement to extend guarantees under the NMC Credit Agreement, Fresenius Medical Care and Grace Chemicals intend to enter into an agreement to induce Fresenius Medical Care to cause such guarantees to be released as to $800 million not later than the 50th day following the Effective Date. The balance of the Grace Chemicals guarantees under Facility 2 will be released upon NMC (or Fresenius Medical Care, if Fresenius Medical Care guarantees the NMC Credit Facility), on a consolidated basis, achieving a ratio of senior debt to EBITDA of equal to or less than 3.5. See "FINANCING -- NMC Credit Agreement."

THE RECAPITALIZATION

Immediately following the Distribution and immediately prior to the Effective Time, the Recapitalization of Grace will be effected so that each holder of Grace Common Stock will receive one New Preferred Share for each share of Grace Common Stock held.

THE MERGERS

At the Effective Time, Grace Merger Sub will merge with and into Grace, with Grace the surviving corporation, and Grace's name will be changed to "Fresenius National Medical Care, Inc." and FUSA Merger Sub will merge with and into Fresenius USA, with Fresenius USA being the surviving corporation; and as promptly as practicable following the Mergers, Fresenius USA will be contributed to FNMC. As a result of the Mergers, holders of Grace Common Stock (together with holders of options to purchase Grace Common Stock who are employees of NMC) at the Effective Time will be allocated 44.8% of the FMC Ordinary Shares outstanding immediately thereafter, on a fully diluted basis, and Fresenius AG will be allocated approximately 50.3% of the FMC Ordinary Shares outstanding immediately thereafter, on a fully diluted basis. Holders of Fresenius USA Common Stock (together with holders of options and warrants to purchase Fresenius USA Common Stock) will be allocated, in the aggregate, approximately 4.9% of the FMC Ordinary Shares outstanding immediately thereafter, on a fully diluted basis, based on an exchange ratio of approximately 1.112 ADSs for each share of Fresenius USA Common Stock.

OTHER TERMS OF THE REORGANIZATION AGREEMENT

Effective Time. The Fresenius USA Merger and the Grace Merger will become effective on the date and time on which articles of merger respecting the Fresenius USA Merger are filed with the Secretary of State for the Commonwealth of Massachusetts and the certificate of merger respecting the Grace Merger is filed by the Department of State for the State of New York (or such later date and time as may be specified therein (the date thereof the "Effective Date," and the time thereof, the "Effective Time").

Accounting Treatment. Each of the Grace Merger and the Fresenius USA Merger will be accounted for as a purchase by Fresenius Medical Care under US GAAP. See "THE REORGANIZATION -- Accounting Treatment."

9

<PAGE>   34

CONDITIONS

Financing.  It is a condition to the consummation of the Reorganization
that Grace and Fresenius AG have obtained the financing necessary to consummate
the Reorganization, including the Distribution Payment, on terms satisfactory to
the parties.

Antitrust.  It is a condition to the consummation of the Reorganization
that the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act
of 1976, as amended, and the rules promulgated thereunder (the "HSR Act"), shall
have expired or terminated. On July 25, 1996, the U.S. Federal Trade Commission
(the "FTC") accepted for public comment an Agreement Containing Consent Order
with Fresenius AG and Fresenius USA, and the HSR Act waiting period terminated
on July 26, 1996. Following the public comment period, the FTC may either take
steps to enter a final order or withdraw acceptance of the Agreement Containing
Consent Order. Unless acceptance is withdrawn by the FTC, the Agreement
Containing Consent Order will require the divestiture of Fresenius USA's
dialysate concentrate manufacturing facility in Lewisberry, Pennsylvania. See
"BUSINESS OF FRESENIUS MEDICAL CARE -- Business of Fresenius USA -- Properties"
and "THE REORGANIZATION -- Conditions."

Under Germany's Law Against Restraints of Competition, Fresenius AG and NMC
have filed for pre-merger clearance with the German Federal Cartel Office
("FCO"). The FCO has granted clearance, subject to the divestment prior to the
consummation of the Reorganization of Schiwa GmbH ("Schiwa") and Rena-Med GmbH
and its affiliates ("Rena-Med"), German subsidiaries of Fresenius AG and Grace,
respectively, whose products include dialysate concentrates. Efforts are
underway to divest Schiwa and Rena-Med. Discussions are in progress with the FCO
regarding the conditions and timing of the divestment and clearance. See "THE
REORGANIZATION -- Conditions."

Litigation.  It is a condition to the consummation of the Reorganization
that no governmental entity shall have issued any judgment, decree, injunction
or other order which is in effect and prohibits consummation of the
Reorganization.

Other Approvals.  It is a condition to the Reorganization that all material
filings, consents, approvals and authorizations required to be made or obtained
in connection with the Reorganization be made or obtained from the applicable
governmental or regulatory authority, agency, court or other entity, domestic or
foreign, prior to the Effective Time. In this regard, it should be noted that
certain regulatory approvals may be required by state and local authorities and
by certain government agencies which regulate the health care business. NMC and
Fresenius Worldwide Dialysis are working toward obtaining all such consents and
approvals and expect that such consents and approvals will be obtained.

Waiver.  All conditions to the Reorganization may be waived by the relevant
party, but neither Grace nor Fresenius AG expects to waive any material
conditions.

TERMINATION

The Reorganization Agreement may be terminated and the Reorganization
abandoned at any time prior to the Effective Time under certain circumstances
described in the Reorganization Agreement, including in connection with a Higher
Offer. If the Reorganization Agreement is terminated under certain specified
conditions, $75 million plus actual out-of-pocket expenses will become payable
by Grace to Fresenius AG (although Grace will not be responsible for the
expenses of Fresenius USA). Pursuant to an agreement between Fresenius AG and
Fresenius USA, Fresenius USA is entitled to 34% of any such termination fee. See
"THE REORGANIZATION -- Conditions," "-- Termination Fees" and "-- Termination."
In the event of termination of the Reorganization Agreement, no party to the
Reorganization Agreement will have any liability or future obligation to any
other party, except for liability for any material and willful breach of any
covenant.

10

<PAGE>   35

CERTAIN FEDERAL INCOME TAX CONSEQUENCES

TAX CONSEQUENCES TO GRACE AND GRACE SHAREHOLDERS

The obligations of Grace to consummate the Distribution and the
Recapitalization, and the obligations of Grace, Fresenius AG and Fresenius USA
to consummate the Reorganization, are conditioned, among other things, on the
receipt of opinions from special counsel and tax counsel to Grace that: (a) the
Distribution will qualify as a tax-free distribution such that a Grace
shareholder will not recognize any income, gain or loss as a result of the
Distribution; (b) the Recapitalization will be a tax-free transaction to Grace
such that no gain or loss will be recognized by Grace as a result of the
Recapitalization; and (c) the Grace Merger will qualify as a tax-free
transaction to Grace and its shareholders such that Grace will recognize no gain
or loss as a result of the Grace Merger, and no gain or loss will be recognized
by Grace shareholders upon receipt of ADSs representing FMC Ordinary Shares in
exchange for Grace Common Stock pursuant to the Grace Merger, except that
holders of Grace Common Stock who exercise their appraisal rights or who receive
cash in lieu of fractional shares will recognize gain or loss. It is also
expected that the Recapitalization will be tax free to the Grace shareholders.
No ruling from the Internal Revenue Service ("IRS") has or will be sought with
respect to any aspect of the Reorganization. See "CERTAIN FEDERAL INCOME TAX
CONSEQUENCES OF THE TRANSACTIONS TO GRACE AND GRACE SHAREHOLDERS."

TAX CONSEQUENCES TO FRESENIUS USA STOCKHOLDERS AND FRESENIUS MEDICAL CARE

Stockholders of Fresenius USA who exchange their shares of Fresenius USA Common Stock for FMC Ordinary Shares or ADSs will not be subject to federal income tax except to the extent cash is received in lieu of fractional shares. The exchange of shares of Fresenius USA Common Stock entirely for cash by Fresenius USA Dissenting Stockholders will be a taxable transaction on which gain or loss will be recognized.

For a more complete summary of the material U.S. federal and German income tax consequences of exchanging shares of Fresenius USA Common Stock for FMC Ordinary Shares and of holding the FMC Ordinary Shares, see "CERTAIN INCOME TAX CONSEQUENCES OF THE TRANSACTIONS TO HOLDERS OF FRESENIUS USA COMMON STOCK."

Fresenius Medical Care will recognize no gain or loss upon receipt of Fresenius USA Common Stock in exchange for FMC Ordinary Shares or ADSs.

APPRAISAL RIGHTS

Holders of Grace Common Stock have the right to dissent from the approval and adoption of the Reorganization Agreement and the transactions contemplated thereby and, subject to strict compliance with Sections 623 and 910 of the New York Business Corporation Act (the "NYBCL"), as an alternative to receiving the applicable consideration for their Grace Common Stock, to a judicial determination of the fair value of their Grace Common Stock. Sections 623 and 910 of the NYBCL are described under "THE REORGANIZATION -- Appraisal Rights" and are attached as Appendix F to this Joint Proxy Statement-Prospectus.

Holders of Fresenius USA Common Stock have the right to dissent from approval and adoption of the Reorganization Agreement and the transactions contemplated thereby, and, subject to strict compliance with certain requirements of the Massachusetts Business Corporation Law (the "MBCL"), to receive payment for the "fair value," as defined in the MBCL, of their Fresenius USA Common Stock. These requirements are described under "THE REORGANIZATION -- Appraisal Rights" and in the provisions of Sections 85 through 98 of the MBCL, which are attached as Appendix G to this Joint Proxy Statement-Prospectus.

11

<PAGE>    36

NEW PREFERRED SHARES

Prior to the Effective Time, but following the Distribution, the Recapitalization of Grace will be effected so that holders of Grace Common Stock will receive one New Preferred Share for each share of Grace Common Stock held. The New Preferred Shares will have a liquidation preference of $0.10 per share (the "Liquidation Preference") and will have no dividend rights and no dividend preference except with respect to the Special Dividend described below. The New Preferred Shares will have no class voting rights (except as provided by law or in the FNMC certificate of incorporation, as described below). The New Preferred Shares will have one-tenth of a vote per share. The holders of the New Preferred Shares will be entitled to receive, when and if declared by the board of directors of FNMC (the "FNMC Board"), the Special Dividend, payable in cash in annual installments beginning on October 1, 2002 and in each subsequent year until the dividend is fully paid, in an amount based on adjusted cash flow of Fresenius Medical Care from January 1, 1997 to December 31, 2001. Under certain circumstances, FNMC may pay the Special Dividend in shares of Common Stock of FNMC ("FNMC Common Stock"). If the Special Dividend is payable, but not declared, or if any installment of the Special Dividend is not paid on October 1, 2002 and, thereafter, on October 1 in each of the following years, if applicable (each such date, a "Payment Date"), FNMC may not pay any other dividends on FNMC Common Stock and the holders of the New Preferred Shares will have a right to vote as a class to elect two directors to the FNMC Board. However, failure of FNMC to pay dividends on the New Preferred Shares will not preclude Fresenius Medical Care from paying dividends on FMC Ordinary Shares. The New Preferred Shares are redeemable after the date of the Public Announcement (which is required to be made no later than May 1, 2002) for the greater of the Liquidation Preference or any unpaid Special Dividend Amount. See "DESCRIPTION OF NEW PREFERRED SHARES" for a more complete description of the New Preferred Shares as well as hypothetical examples of how the Special Dividend would be calculated. The text of the Grace Amendment providing the terms of the New Preferred Shares is set forth in Appendix B hereto.

CERTAIN EFFECTS OF THE REORGANIZATION ON THE RIGHTS OF GRACE SHAREHOLDERS AND FRESENIUS USA STOCKHOLDERS

Upon consummation of the Mergers, the holders of shares of Grace Common Stock and of Fresenius USA Common Stock will become holders of ADRs representing ADSs evidencing FMC Ordinary Shares. Certain differences exist between the rights of a shareholder of a Massachusetts or New York corporation, on the one hand, and holders of ADRs representing ADSs evidencing ordinary shares of a German stock corporation, on the other hand. The internal affairs of Fresenius Medical Care will be governed by German law and by Fresenius Medical Care's Articles of Association. The Reorganization will result in certain differences in the rights of Grace shareholders and Fresenius USA stockholders from the rights they currently possess. Shareholders of Fresenius Medical Care will have the benefit of certain provisions pursuant to German law, Fresenius Medical Care's Articles of Association, and a pooling agreement for the benefit of the shareholders of Fresenius Medical Care, other than Fresenius AG, as more particularly described under "DESCRIPTION OF THE POOLING AGREEMENT."

CERTAIN CONSIDERATIONS

In deciding whether to approve and adopt the Reorganization Agreement and

the transactions contemplated thereby, shareholders should carefully evaluate
the matters set forth under "RISK FACTORS" and "BUSINESS OF FRESENIUS MEDICAL
CARE," and, in the case of Grace shareholders, in the New Grace Prospectus
attached as Annex A to the version of this Joint Proxy Statement-Prospectus
being furnished to Grace shareholders, in addition to the other matters
described herein and therein. In addition, see "BUSINESS OF FRESENIUS MEDICAL
CARE -- Regulatory and Legal Matters -- Legal and Regulatory Proceedings --
Shareholder Litigation" for a summary of a purported class action filed in
February 1996 relating to the Reorganization. The plaintiff in such action has
not taken any steps to prosecute such action since it was filed, and the
defendants believe such action is without merit.

                                      12

<PAGE>   37

MARKETS AND MARKET PRICES

     Grace Common Stock is listed under the symbol "GRA" on the NYSE. Fresenius
USA Common Stock is listed under the symbol "FRN" on the AMEX. On July 15, 1996,
there were approximately 18,000 holders of record of Grace Common Stock and
approximately 4,200 holders of record of Fresenius USA Common Stock. On February
2, 1996, the last trading date prior to the joint public announcement by Grace
and Fresenius AG of the signing of the Reorganization Agreement, the last
reported sale price on the NYSE Composite Tape was $69.25 per share for Grace
Common Stock and the last reported sale price on the AMEX was $21.50 per share
for Fresenius USA Common Stock. On August 1, 1996, the last reported sale price
on the NYSE Composite Tape was $63 1/4 per share for Grace Common Stock and the
last reported sale price on the AMEX was $19 per share for Fresenius USA
Common Stock.

     Application will be made by New Grace to list the New Grace Common Stock on
the NYSE. Application will be made by Fresenius Medical Care to list the FMC
Ordinary Shares on the Frankfurt Stock Exchange and the ADSs on the NYSE.
Following the Reorganization, FNMC intends to seek to list the New Preferred
Shares on a national stock exchange. However, no assurance can be given that the
New Preferred Shares will satisfy the listing criteria of any such exchange.
Unless orderly markets in FMC Ordinary Shares, the ADSs and the New Preferred
Shares develop, the trading prices of such securities may fluctuate
significantly.

     The following table sets forth, for the fiscal quarters indicated (ended
March 31, June 30, September 30 and December 31), the range of high and low sale
prices of Grace Common Stock as reported on the NYSE Composite Tape and of
Fresenius USA Common Stock as reported on the AMEX. Grace has paid a quarterly
dividend on Grace Common Stock of $0.125 per share since December 1995. Prior to
that date, Grace paid a quarterly dividend of $0.35 per share. Fresenius USA has
never paid a dividend on Fresenius USA Common Stock.

                                    GRACE

<TABLE>
<CAPTION>

| DATE | HIGH | LOW | CLOSE |
|------|------|-----|-------|
| <S> | <C> | <C> | <C> |
| Third Quarter 1996 (through August 1, 1996)............... | 73 | 60 1/2 | 63 1/4 |
| Second Quarter 1996.................................... | 82 3/4 | 70 7/8 | 70 7/8 |
| First Quarter 1996.................................... | 81 3/4 | 53 5/8 | 78 1/4 |
| Fourth Quarter 1995.................................... | 66 7/8 | 53 | 59 1/8 |
| Third Quarter 1995.................................... | 71 5/8 | 61 | 66 3/4 |
| Second Quarter 1995.................................... | 65 1/4 | 51 | 61 3/8 |
| First Quarter 1995.................................... | 55 1/4 | 38 1/4 | 53 1/4 |
| Fourth Quarter 1994.................................... | 41 3/8 | 35 1/4 | 38 5/8 |
| Third Quarter 1994.................................... | 42 1/2 | 38 1/8 | 41 1/2 |
| Second Quarter 1994.................................... | 43 1/4 | 38 3/8 | 39 7/8 |
| First Quarter 1994.................................... | 46 3/4 | 39 7/8 | 41 1/4 |

</TABLE>

                                      13

<PAGE>   38

                                FRESENIUS USA

<TABLE>
<CAPTION>

| DATE | HIGH | LOW | CLOSE |
|------|------|-----|-------|
| <S> | <C> | <C> | <C> |
| Third Quarter 1996 (through August 1, 1996)............... | 21 7/8 | 17 3/4 | 19 |
| Second Quarter 1996.................................... | 24 7/8 | 19 1/8 | 21 1/2 |
| First Quarter 1996.................................... | 22 5/8 | 17 1/4 | 20 3/8 |
| Fourth Quarter 1995.................................... | 19 7/8 | 15 1/8 | 19 7/8 |
| Third Quarter 1995.................................... | 16 1/2 | 12 | 15 5/8 |
| Second Quarter 1995.................................... | 13 1/8 | 9 1/2 | 13 1/8 |
| First Quarter 1995.................................... | 11 | 8 5/8 | 10 1/2 |
| Fourth Quarter 1994.................................... | 8 7/8 | 7 | 8 3/8 |
| Third Quarter 1994.................................... | 9 | 5 7/8 | 8 5/8 |
| Second Quarter 1994.................................... | 7 1/2 | 5 3/8 | 6 1/4 |
| First Quarter 1994.................................... | 8 1/4 | 6 5/8 | 6 7/8 |

</TABLE>

     SHAREHOLDERS ARE ADVISED TO OBTAIN CURRENT MARKET QUOTATIONS FOR GRACE
COMMON STOCK AND FRESENIUS USA COMMON STOCK.

14

<PAGE>   39

SUMMARY SELECTED SPECIAL-PURPOSE, CONSOLIDATED FINANCIAL INFORMATION OF GRACE

    The following Summary Special-Purpose, Consolidated Financial Information
of Grace includes only the assets, liabilities, revenues and expenses of the
Grace health care business operated by NMC prior to the Reorganization. However,
certain health care-related assets owned or investments held in part by Grace
Chemicals and in part by NMC, and previously under the oversight of NMC, are
being retained by Grace Chemicals in the Reorganization and are excluded from
this Summary Special-Purpose, Consolidated Financial Information. The following
Summary Special-Purpose, Consolidated Financial Information of Grace should be
read in conjunction with the Special-Purpose, Consolidated Financial Statements
of Grace and "MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND
RESULTS OF OPERATIONS -- NMC" included elsewhere in this Joint Proxy
Statement-Prospectus, as well as Grace's 1995 Annual Report on Form 10-K
incorporated herein by reference. The following Summary Special-Purpose,
Consolidated Financial Information for the years ended December 31, 1993, 1994
and 1995 has been derived from Special-Purpose, Consolidated Financial
Statements audited by Price Waterhouse LLP, independent accountants, except for
Balance Sheet Data at December 31, 1993. Special-Purpose, Consolidated Balance
Sheets at December 31, 1994 and 1995 and the related Special-Purpose,
Consolidated Statements of Earnings and of Cash Flows for the three years ended
December 31, 1995 and notes thereto appear elsewhere herein. The report of Price
Waterhouse LLP which also appears elsewhere herein contains an explanatory
paragraph relating to the basis of presentation described in Note 1 to such
Special-Purpose, Consolidated Financial Statements. The Summary Special-Purpose,
Consolidated Financial Information for the three months ended March 31, 1995 and
1996, and the years ended December 31, 1991 and 1992 and the Balance Sheet Data
at December 31, 1993 has been derived from Grace's Unaudited Special-Purpose,
Consolidated Financial Statements. For additional information, see "GRACE
SPECIAL-PURPOSE SELECTED FINANCIAL DATA."

<TABLE>
<CAPTION>

| | | YEAR ENDED DECEMBER 31, | | | | THREE MONTHS ENDED MARCH 31, | |
|---|---|---|---|---|---|---|---|
| | 1991 | 1992 | 1993 | 1994 | 1995 | 1995 | 1996 |
| | | | | (IN MILLIONS) | | | |
| <S> | <C> | <C> | <C> | <C> | <C> | <C> | <C> |
| SUMMARY OF OPERATING DATA: | | | | | | | |
| Net revenues...................... | $1,010 | $1,214 | $1,456 | $1,818 | $2,033 | $ 478 | $ 528 |
| Earnings before income taxes....... | 114 | 140 | 191 | 214 | 206 | 48 | 49 |
| Net earnings...................... | 63 | 80 | 104 | 102 | 97 | 26 | 26 |
| BALANCE SHEET DATA (AT END OF PERIOD): | | | | | | | |
| Total assets...................... | $ 853 | $ 900 | $1,245 | $1,644 | $1,998 | | $2,059 |
| Total long-term debt and capitalized lease obligations... | 7 | 6 | 14 | 17 | 35 | | 28 |
| Total liabilities................. | 253 | 367 | 365 | 485 | 635 | | 601 |
| Total equity...................... | 600 | 533 | 880 | 1,159 | 1,363 | | 1,458 |

</TABLE>

15

<PAGE>   40

SUMMARY SELECTED HISTORICAL FINANCIAL INFORMATION OF FRESENIUS WORLDWIDE
DIALYSIS

    The following summary combined financial information of Fresenius Worldwide
Dialysis should be read in conjunction with the combined financial statements of
Fresenius Worldwide Dialysis and "MANAGEMENT'S DISCUSSION AND ANALYSIS OF
FINANCIAL CONDITION AND RESULTS OF OPERATIONS -- FRESENIUS WORLDWIDE DIALYSIS"
included elsewhere in this Joint Proxy Statement-Prospectus. The summary
financial information prepared in accordance with US GAAP as of and for the
years ended December 31, 1994 and 1995 has been derived from combined financial
statements of Fresenius Worldwide Dialysis prepared in accordance with US GAAP
and audited by KPMG Deutsche Treuhand-Gesellschaft Aktiengesellschaft
Wirtschaftsprufungsgesellschaft, independent accountants. The selected combined
financial data as of and for the three months ended March 31, 1995 and 1996 have
been derived from the Fresenius Worldwide Dialysis unaudited interim combined
financial statements prepared in accordance with US GAAP, and, in the opinion of
management of Fresenius AG have been prepared on a basis substantially
consistent with that of the audited US GAAP combined financial statements of
Fresenius Worldwide Dialysis as of and for each of the years ended December 31,
1994 and 1995. The German GAAP summary combined financial data as of and for
each of the years in the five-year period ended December 31, 1995 have been
derived from Fresenius Worldwide Dialysis' unaudited combined financial
statements, prepared in accordance with German generally accepted accounting
principles ("German GAAP"), and, in the opinion of management of Fresenius AG,
have been prepared on a basis substantially consistent with that of the audited
German GAAP consolidated financial statements of Fresenius AG as of and for such
periods. US GAAP information for Fresenius Worldwide Dialysis as of and for the
years ended December 31, 1991, 1992 and 1993 is not available. For additional
information, see "SELECTED FINANCIAL DATA OF FRESENIUS WORLDWIDE DIALYSIS."

    The reporting currency of Fresenius Worldwide Dialysis is the U.S. dollar.
In accordance with US GAAP, the assets and liabilities of Fresenius Worldwide
Dialysis subsidiaries whose "functional" currency is other than the U.S. dollar
are translated at the year end rate of exchange. Income and expense and cash

flow items are translated at the average exchange rate for the year.

| | 1991 | 1992 | 1993 | 1994 | 1995 | 1994 | 1995 | 1995 | 1996 |
|---|---|---|---|---|---|---|---|---|---|
| | | | YEAR ENDED DECEMBER 31, | | | | | THREE MONTHS ENDED MARCH 31, | |
| | | | GERMAN GAAP | | | | U.S. GAAP | | |
| | | (UNAUDITED) | | | (IN MILLIONS) | | | (UNAUDITED) | |
| SUMMARY OF OPERATING DATA: | | | | | | | | | |
| Net sales | $377 | $519 | $611 | $719 | $895 | $720 | $897 | $208 | $235 |
| Operating income | 28 | 34 | 73 | 84 | 121 | 88 | 122 | 35 | 38 |
| Net income | 7 | 11 | 41 | 51 | 72 | 52 | 70 | 19 | 22 |
| BALANCE SHEET DATA (AT END OF PERIOD): | | | | | | | | | |
| Total assets | $284 | $356 | $452 | $481 | $568 | $543 | $644 | | $679 |
| Total long-term debt and capitalized lease obligations | 21 | 20 | 51 | 33 | 35 | 37 | 40 | | 22 |
| Net assets | 88 | 133 | 200 | 231 | 267 | 261 | 306 | | 340 |

German GAAP differs in certain significant respects from US GAAP. For a discussion of certain significant differences between German GAAP and US GAAP, see "SUMMARY OF CERTAIN SIGNIFICANT DIFFERENCES BETWEEN GERMAN AND U.S. GENERALLY ACCEPTED ACCOUNTING PRINCIPLES."

16

<PAGE> 41

SUMMARY SELECTED HISTORICAL FINANCIAL INFORMATION OF FRESENIUS USA

The following summary combined and consolidated financial information of Fresenius USA should be read in conjunction with the consolidated financial statements of Fresenius USA and "MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS -- FRESENIUS USA" included elsewhere in this Joint Proxy Statement-Prospectus. The summary financial information has been prepared from consolidated financial statements as of and for each of the years in the five-year period ended December 31, 1995 audited by KPMG Peat Marwick LLP, independent accountants, and from the unaudited interim consolidated financial statements as of March 31, 1996 and for the three months ended March 31, 1995 and 1996. For additional information, see "SELECTED FINANCIAL DATA OF FRESENIUS USA."

| | 1991 | 1992 | 1993 | 1994 | 1995 | 1995 | 1996 |
|---|---|---|---|---|---|---|---|
| | | | YEAR ENDED DECEMBER 31, | | | THREE MONTHS ENDED MARCH 31, | |
| | | (IN MILLIONS, EXCEPT PER SHARE AMOUNTS) | | | | | |
| SUMMARY OF OPERATING DATA: | | | | | | | |
| Net sales | $ 101 | $ 129 | $ 206 | $ 254 | $ 305 | $ 68 | $ 81 |
| Operating income (loss) | (1) | 3 | 9 | 12 | 18 | 4 | 7 |
| Net income (loss) | (3) | 1 | 4 | 7 | 16 | 3 | 5 |
| Net income (loss) per common and common equivalent share: | | | | | | | |
| Primary | $(0.16) | $0.03 | $0.18 | $0.32 | $0.61 | $ .13 | $ .19 |
| Fully diluted | $(0.16) | $0.03 | $0.18 | $0.31 | $0.59 | $ .13 | $ .19 |
| BALANCE SHEET DATA (AT END OF PERIOD): | | | | | | | |
| Total assets | $ 78 | $ 89 | $ 159 | $ 185 | $ 225 | $ | $ 227 |
| Total debt and capital lease obligations | 29 | 22 | 68 | 66 | 75 | | 72 |
| Total stockholders' equity | 23 | 31 | 37 | 61 | 79 | | 85 |

17

<PAGE> 42

SUMMARY SELECTED UNAUDITED PRO FORMA FINANCIAL INFORMATION OF FRESENIUS MEDICAL CARE

The following summary selected unaudited pro forma financial data illustrate the pro forma effects of the Reorganization. The pro forma income statement data are based on the income statements of Grace and Fresenius Worldwide Dialysis, including Fresenius USA, for the year ended December 31, 1995, and the three month period ended March 31, 1996 and assume that the Reorganization occurred as of January 1 of each respective period. The pro forma balance sheet data are based on the balance sheets of Grace and Fresenius Worldwide Dialysis, including Fresenius USA, as of March 31, 1996, and assume that the Reorganization occurred as of March 31, 1996. The selected unaudited pro forma financial data should be read in conjunction with the Fresenius

Medical Care Pro Forma Financial Statements, together with the historical annual and interim financial statements and other financial information of Grace, Fresenius USA and Fresenius Worldwide Dialysis included elsewhere in this Joint Proxy Statement-Prospectus. The Pro Forma Condensed Combined Financial Statements from which the following selections are taken have been prepared in accordance with US GAAP under which the Reorganization has been accounted for as a purchase of Grace by Fresenius Medical Care. THE PRO FORMA CONDENSED COMBINED FINANCIAL STATEMENTS FROM WHICH THE INFORMATION HAS BEEN TAKEN DO NOT PURPORT TO REPRESENT WHAT THE FINANCIAL POSITION OR RESULTS OF OPERATIONS OF FRESENIUS MEDICAL CARE, GRACE, FRESENIUS WORLDWIDE DIALYSIS OR FRESENIUS USA WOULD ACTUALLY HAVE BEEN IF THE REORGANIZATION HAD IN FACT OCCURRED AS OF JANUARY 1, 1995 OR JANUARY 1, 1996, OR TO PROJECT THE FINANCIAL POSITION OR RESULTS OF OPERATIONS FOR ANY FUTURE DATE OR PERIOD.

| | YEAR ENDED DECEMBER 31, 1995 | THREE MONTHS ENDED MARCH 31, 1996 |
|---|---|---|
| | (IN MILLIONS, EXCEPT PER SHARE AMOUNTS) | |
| SUMMARY OF PRO FORMA OPERATING INFORMATION: | | |
| Net revenues........................................ | $2,847 | $ 743 |
| Earnings before income taxes....................... | 144 | 33 |
| Net earnings....................................... | 58 | 14 |
| Earnings per share................................. | $ .83 | $ .20 |
| PRO FORMA BALANCE SHEET INFORMATION: | | |
| Total assets....................................... | | $4,641 |
| Total borrowings(1)................................ | | 2,224 |
| Total liabilities................................. | | 2,946 |
| Total stockholders' equity........................ | | 1,695 |

- ----------------
1. Excludes $200 million for the off-balance sheet financing arrangement of Grace. See "FINANCING."

    Fresenius Medical Care pro forma revenues for the year ended December 31, 1995 and the three-month period ended March 31, 1996 were $2,847 million and $743 million, respectively. Of such amounts, prior to intercompany elimination entries, $2,020 million and $525 million, respectively, was generated by Grace and $865 million and $228 million, respectively, was generated by Fresenius Worldwide Dialysis. Included in total Fresenius Worldwide Dialysis revenues (prior to intercompany elimination entries) are Fresenius USA revenues for the year ended December 31, 1995 and three-month period ended March 31, 1996 of $305 million and $81 million, respectively.

    Fresenius Medical Care pro forma net earnings for the year ended December 31, 1995 and the three-month period ended March 31, 1996 were $58 million and $14 million. Of such amounts, prior to intercompany elimination entries, $2 million and $(7) million, respectively, was generated by Grace and $64 million and $23 million, respectively, was generated by Fresenius Worldwide Dialysis. Included in total Fresenius Worldwide Dialysis net earnings (prior to intercompany elimination entries) are Fresenius USA net earnings for the year ended December 31, 1995 and three-month period ended March 31, 1996 of $16 million and $5 million, respectively.

                                    18
<PAGE>    43

    Immediately subsequent to consummation of the Reorganization, the outstanding ordinary shares of Fresenius Medical Care will be owned approximately 44.8% by the former shareholders of Grace, approximately 50.3% by Fresenius AG and approximately 4.9% by the former holders of Fresenius USA common stock other than Grace or its subsidiaries and Fresenius AG or its subsidiaries.

COMPARATIVE PER SHARE DATA

    HISTORICAL NET EARNINGS, BOOK VALUE AND DIVIDENDS PER SHARE

    Set forth below are historical net earnings from continuing operations, net earnings, book value and dividends per share of New Grace, Grace, and Fresenius USA. The information set forth below should be read in conjunction with the historical consolidated financial statements of W. R. Grace & Co., incorporated herein by reference and the special-purpose, consolidated financial statements of Grace and the consolidated financial statements of Fresenius USA appearing elsewhere in this Joint Proxy Statement-Prospectus.

| | YEAR ENDED DECEMBER 31, 1995 | | | THREE MONTHS ENDED MARCH 31, 1996 | | |
|---|---|---|---|---|---|---|
| | NEW GRACE(1) | GRACE(2) | FRESENIUS USA | NEW GRACE(1) | GRACE(2) | FRESENIUS USA |
| Net (loss)/earnings from continuing operations.......................... | $(2.05) | $ 1.01 | $0.61 | $ 0.42 | $ 0.27 | $0.19 |
| Net (loss)/earnings.......................... | (3.40) | 1.01 | 0.61 | 0.65 | 0.27 | 0.19 |
| Book value.......................... | 12.57 | 13.92 | 3.65 | 13.44 | 14.73 | 3.92 |
| Dividends.......................... | 1.18 | -- | -- | 0.13 | -- | -- |

PRO FORMA NET EARNINGS, BOOK VALUE AND DIVIDENDS PER SHARE

    Set forth below are pro forma net earnings from continuing operations, book
value and dividends per share for Fresenius Medical Care and New Grace. The
information set forth below should be read in conjunction with the Fresenius
Medical Care AG Pro Forma Condensed Combined Financial Information appearing
elsewhere in this Joint Proxy Statement-Prospectus and, for Grace shareholders,
the New Grace Pro Forma Financial Information contained in the New Grace
Prospectus.

<TABLE>
<CAPTION>

|  | YEAR ENDED DECEMBER 31, 1995 | | THREE MONTHS ENDED MARCH 31, 1996 | |
| --- | --- | --- | --- | --- |
|  | NEW GRACE | FRESENIUS MEDICAL CARE | NEW GRACE | FRESENIUS MEDICAL CARE |
| <S> | <C> | <C> | <C> | <C> |
| Net earnings/(loss) from continuing operations.......... | $ (2.05) | $ 0.83 | $ 0.39 | $ 0.20 |
| Book value............................................. |  |  | 17.02 | 24.21 |
| Dividends.............................................. | -- | -- | -- | -- |

</TABLE>

- ----------------

(1) Represents per share data derived from the historical financial statements
    of W. R. Grace & Co. as filed on Form 10-K and 10-Q. These financial
    statements include the packaging and specialty chemical businesses as
    continuing operations and NMC and certain other businesses as discontinued
    operations.
(2) Represents per share data derived from the special-purpose consolidated
    financial statements of W. R. Grace & Co. restated to reflect NMC as the
    only continuing operation and excluding all other businesses of W. R. Grace
    & Co.

                              19

<PAGE>    44

    PRO FORMA EQUIVALENT NET EARNINGS, BOOK VALUE AND DIVIDENDS PER SHARE

    Set forth below are equivalent pro forma net earnings from continuing
operations, book value and dividends per share for W. R. Grace & Co. and
Fresenius USA. The equivalent pro forma data for W. R. Grace & Co. are based
upon the exchange of one share of Grace Common Stock for one share of New Grace
Common Stock and 1.013 ADSs. The equivalent pro forma data for Fresenius USA are
based upon the exchange of one share of Fresenius USA Common Stock for 1.112
ADSs and the assumption that there will be 9,253,331 Fresenius USA Common Share
Equivalents on the Effective Date. Each ADS represents one-third of an FMC
Ordinary Share.

<TABLE>
<CAPTION>

|  | YEAR ENDED DECEMBER 31, 1995 | | THREE MONTHS ENDED MARCH 31, 1996 | |
| --- | --- | --- | --- | --- |
|  | W. R. GRACE & CO. | FRESENIUS USA | W. R. GRACE & CO. | FRESENIUS USA |
| <S> | <C> | <C> | <C> | <C> |
| Net earnings/(loss) from continuing operations |  |  |  |  |
| Fresenius Medical Care............................... | $ 0.28 | $ 0.31 | $ 0.07 | $ 0.07 |
| New Grace............................................ | (2.05) | -- | 0.39 | -- |
| Totals........................................... | $(1.77) | $ 0.31 | $ 0.46 | 0.07 |
| Book value |  |  |  |  |
| Fresenius Medical Care............................... |  |  | $ 8.17 | $ 8.97 |
| New Grace............................................ |  |  | 17.02 | -- |
| Totals........................................... |  |  | 25.19 | $ 8.97 |
| Dividends |  |  |  |  |
| Fresenius Medical Care............................... | $ 0.40 | -- | $ 0.04 | -- |
| New Grace............................................ | 1.18 | -- | 0.13 | -- |
| Totals........................................... | $ 1.58 | -- | $ 0.17 | -- |

</TABLE>

                              20

<PAGE>    45

                          RISK FACTORS

    The following risk factors, in addition to the other information contained
in this Joint Proxy Statement-Prospectus, should be carefully considered. Grace
shareholders should also consider the information in the New Grace Prospectus
attached as Annex A to the version of this Joint Proxy Statement-Prospectus
furnished to Grace shareholders. As used herein, the name "Fresenius Medical
Care" refers to the health care businesses conducted by Fresenius Worldwide
Dialysis and NMC prior to the Effective Time, and to be conducted by Fresenius
Medical Care following the Effective Time.

RISKS RELATING TO THE BUSINESS OF FRESENIUS MEDICAL CARE

COST PRESSURES AND OPERATING MARGINS

     Fresenius Medical Care's costs are subject to increases as a result of
rising labor and supply costs. At the same time, reimbursement rates (both
governmental and non-governmental) for dialysis treatments and other services
offered by Fresenius Medical Care are generally fixed and may remain at current
levels or be reduced. See "-- Risks Relating to Regulatory Matters -- Dependence
on Government Reimbursement" and "-- Health Care Reform." Although Fresenius
Medical Care will seek to maintain or improve operating margins through cost
efficiencies, there can be no assurance that Fresenius Medical Care's operating
margins will not decline in the future. See "MANAGEMENT'S DISCUSSION AND
ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS -- NMC," "MANAGEMENT'S
DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS
- -- FRESENIUS USA" and "MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL
CONDITION AND RESULTS OF OPERATIONS -- FRESENIUS WORLDWIDE DIALYSIS."

COMPETITION

     Fresenius Medical Care faces and is likely to face numerous competitors,
some of which may possess substantial financial, marketing or research and
development resources. There can be no assurance that such competition will not
materially adversely affect the future pricing or sale of Fresenius Medical
Care's products and/or services. In particular, technological innovation has
historically been a significant competitive factor in the dialysis products
business. There can be no assurance that the introduction of new products by
competitors will not render one or more of Fresenius Medical Care's products
obsolete.

     Fresenius Medical Care will be a vertically integrated company which will
compete in the provider business with many of the customers of its products
business. As a result, independent dialysis centers and those operated by other
chains that are presently customers of Fresenius Worldwide Dialysis may elect to
limit or terminate their purchases of Fresenius Medical Care dialysis products
so as to avoid purchasing products manufactured by a competitor. Fresenius
Medical Care will continue to compete vigorously for the business of such
customers. However, there can be no assurance that any such possible purchase
reductions will not have a material adverse effect on Fresenius Medical Care's
business, financial position or results of operations.

PRODUCTS LIABILITY AND OTHER CLAIMS

     Health care companies are subject to claims alleging negligence, products
liability, breach of warranty, malpractice and other legal theories that may
involve large claims and significant defense costs whether or not such liability
is imposed. Products manufactured by such companies may also be subject to
recall. Although such claims and recalls have not had a material adverse effect
on the businesses of Fresenius Medical Care in the past, there can be no
assurance that Fresenius Medical Care will not suffer one or more significant
claims or product recalls in the future, which could materially adversely affect
its business, financial position or results of operations.

     While NMC, Fresenius USA and Fresenius AG have been able to obtain
liability insurance in the past, it is possible that such insurance may not be
available in the future on terms acceptable to Fresenius Medical Care, if at
all. A successful claim in excess of the limits of Fresenius Medical Care's
insurance coverage could have a material adverse effect on Fresenius Medical
Care's results of operations or financial condition. Such

                                      21

<PAGE>   46

claims, regardless of their merit or eventual outcome, also may have a material
adverse effect on Fresenius Medical Care's business and reputation. See
"BUSINESS OF FRESENIUS MEDICAL CARE -- Regulatory and Legal Matters -- Legal and
Regulatory Proceedings."

DEPENDENCE ON ACQUISITIONS

     NMC's growth in revenues and operating earnings in prior years has
resulted, in significant part, from its ability to consummate acquisitions of
health care businesses, particularly dialysis centers, on reasonable terms. The
health care industry has experienced significant consolidation in recent years,
particularly in the dialysis and homecare service sectors in which Fresenius
Medical Care will compete, resulting, in some cases, in increased costs of
acquisitions in these sectors. Moreover, because of this ongoing consolidation,
the availability of acquisition candidates has decreased in dialysis and
homecare services. Fresenius Medical Care's ability to make acquisitions also
will depend, in part, on Fresenius Medical Care's available financial resources
and the limitations imposed under the NMC Credit Agreement. See "-- Other
Risks-- Effects of Indebtedness" and "FINANCING." Fresenius Medical Care's
ability to continue to effect acquisitions may also depend on its ability to use
its capital stock as consideration in such transactions, which ability may be
limited. See "DESCRIPTION OF CAPITAL STOCK OF FRESENIUS MEDICAL
CARE -- General." The inability of Fresenius Medical Care to continue to be able
to effect acquisitions on reasonable terms could have a material adverse impact
on growth of its business and its future financial position and results of
operations.

     Fresenius Medical Care believes that its committed credit lines, combined
with internally generated funds, will be sufficient to finance its acquisition
and expansion plans. In addition, Fresenius Medical Care may use a new class of