# EXHIBIT 6

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case Nos. 01-1139 through 01-1200 |
| W.R. GRACE & CO., et al., | ) | |
| | ) | |
| Debtors, | ) | |
| | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF | ) | |
| ASBESTOS PERSONAL INJURY | ) | |
| CLAIMANTS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | Adv. No. 02-2210 |
| | ) | [LEAD DOCKET] |
| SEALED AIR CORPORATION | ) | |
| and CRYOVAC, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF | ) | |
| ASBESTOS PERSONAL INJURY | ) | |
| CLAIMANTS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | Adv. No. 02-2211 |
| | ) | |
| FRESENIUS MEDICAL CARE, | ) | |
| HOLDINGS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

This Document Pertains to Adv. No. 02–2210

## ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS SEALED AIR CORPORATION AND CRYOVAC, INC. TO PLAINTIFFS' ORIGINAL COMPLAINT

Defendants Sealed Air Corporation and Cryovac, Inc. (collectively "Defendants"), by their attorneys, for their Answer and Affirmative Defenses to plaintiffs' Original Complaint ("the Complaint"), respond as follows:

1.    The first sentence of paragraph 1 is denied, except that Defendants admit that Plaintiffs purport to characterize the nature of this proceeding. The second sentence of paragraph 1 is denied, except that Defendants admit that, at certain times in the past, Grace-Conn. manufactured and sold certain asbestos-containing products. In further response, Defendants affirmatively aver that the Cryovac packaging business never mined, milled, manufactured, sold, or distributed asbestos or any asbestos-containing products. The remainder of paragraph 1 is denied, except that Defendants admit that the documents Grace-Conn. has produced in this case indicate that Grace-Conn. is currently a defendant in thousands of (currently stayed) asbestos-related lawsuits, including putative state or federal class actions related to Zonolite Attic Insulation. In further response, Defendants affirmatively aver that Grace-Conn. was not a defendant in any putative state or national class action alleging liability for Zonolite Attic Insulation until years after the March 31, 1998, close of the corporate transaction whereby the Cryovac packaging business was acquired from Grace-Conn. for good and valuable consideration, and which is the subject of this proceeding ("the 1998 Transaction").

2.    Paragraph 2 is denied, except that Defendants admit that as a means of facilitating the 1998 Transaction, and in order to maintain the tax-free status thereof, Grace-Conn. transferred the assets of its packaging division to its subsidiary, Cryovac, Inc., and distributed the shares of Cryovac, Inc. to its then parent, W.R. Grace & Co. (occasionally referred to herein as "Grace-1996"), the parent holding company created in 1996, which is now known as Sealed Air Corporation

2

(occasionally referred to herein as "new" Sealed Air). In further response, Defendants affirmatively aver that inasmuch as the parent holding company was created in 1996, it is improper to refer to it as "Grace-1998," and object to Plaintiffs' use of this term in paragraph 2 and throughout the Complaint as false and misleading.

3.    Paragraph 3 is denied. In further response, Defendants affirmatively aver that Plaintiffs know, or should have known, from the documents that have already been produced to Plaintiffs in this proceeding, including the February 13, 1998 Joint Proxy, Board Minutes, legal memoranda from Wachtell, Lipton, Rosen & Katz, and investment bankers' reports, that Grace's reasons for the 1998 Transaction include enhancing stockholder value through a tax-free transaction with a premium valuation for the Cryovac packaging business, combining complementary packaging businesses by bringing together Cryovac's superior position in the food packaging industry with the strengths in protective and specialty packaging provided by the company then known as Sealed Air Corporation ("old" Sealed Air) (a long time producer of packaging products, including Bubble Wrap® cushioning, that was not affiliated with any Grace entity), and making Grace-Conn. a focused specialty chemicals company with the flexibility to invest in new product development, geographic expansion, and strategic acquisitions. Furthermore, Plaintiffs know, or should have known, that "old" Sealed Air's reasons for the 1998 Transaction include, but are not limited to, the opportunity to combine complementary product lines, increasing opportunities through combined marketing networks, distribution channels and technologies, and achieving efficiencies in areas such as purchasing, distribution, marketing, administration, financing, and treasury.

4.    Paragraph 4 is denied. In further response, Defendants affirmatively aver, as reflected by, among other things, the documents that have already been produced to Plaintiffs in this proceeding, including the KPMG projection of Grace-Conn.'s asbestos liabilities through the year

2039, the Houlihan Lokey solvency analysis, and a solvency report from Grace-1996's Chief Financial Officer, that at the time of the 1998 Transaction it appeared that the non-packaging assets of Grace-Conn. were more than sufficient to meet its liabilities, and that Grace-Conn. would be solvent even if its asbestos liabilities proved to be considerably higher than projected. For example, KPMG's analysis concluded that Grace-Conn.'s total liability for the defense and payment of asbestos personal injury claims through the year 2039 would be approximately $1.25 billion (pre-tax and undiscounted). So, too, Houlihan Lokey used several methods to perform valuations of Grace-Conn.'s businesses, took the value it had calculated for the non-packaging businesses, and conducted analyses showing that Grace-Conn. would be solvent after the 1998 Transaction. As part of its solvency analysis, Houlihan Lokey took into account the present value of Grace-Conn.'s future asbestos liabilities, based on estimates provided by KPMG and management. Using various methods, Houlihan Lokey determined that Grace-Conn.'s remaining businesses would have a value of between $2.2 and $2.5 billion. After subtracting Grace-Conn.'s long term liabilities, including long term debt, net environmental liabilities, and net asbestos liabilities, Houlihan Lokey found that Grace-Conn.'s remaining businesses would still have a residual equity value in a range of from almost $1 billion to more than $1.5 billion. Houlihan Lokey further found that at the conclusion of the 1998 Transaction, Grace-Conn.'s remaining businesses would remain solvent. So, too, Chief Financial Officer Larry Ellberger prepared a solvency report that analyzed certain financial matters in conjunction with the 1998 Transaction, including Grace-Conn.'s expected future asbestos costs, and concluded that Grace-Conn. would be solvent both before and after the 1998 Transaction.

5.     Paragraph 5 is admitted, except that paragraph 5 incorrectly refers to Grace Specialty Chemicals, Inc. as W.R. Grace Specialty Chemicals Inc.

6.    Paragraph 6 purports to state a legal conclusion, to which no response is required. To the extent a response is required, paragraph 6 is admitted.

7.    Paragraph 7 purports to state a legal conclusion, to which no response is required. To the extent a response is required, paragraph 7 is admitted.

8.    The first sentence of paragraph 8 is admitted. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remainder of paragraph 8, and therefore deny same, except that Defendants admit that Plaintiffs are made up of persons that assert personal injury or property damage claims against Grace and Grace-Conn.

9.    Paragraph 9 purports to state a legal conclusion, to which no response is required. To the extent a response is required, Paragraph 9 is denied.

10.    Paragraph 10 purports to state a legal conclusion, to which no response is required. To the extent a response is required, Paragraph 10 is denied. In further response, Defendants affirmatively aver that the 1998 Transaction was an arm's length transaction between separate corporations which was conducted for valid business reasons, and did not render any entity insolvent.

11.    Paragraph 11 is denied, except that Defendants admit that "new" Sealed Air is a Delaware corporation whose principal place of business is located at Park 80 East in Saddle Brook, New Jersey.

12.    Paragraph 12 is denied, except that Defendants admit that Cryovac, Inc. is a Delaware corporation.

13.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of paragraph 13, and therefore deny same, except that Defendants admit that, on

information and belief, thousands of lawsuits have been filed alleging injuries arising from exposure to asbestos.

14. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the first and second sentences of paragraph 14, and therefore deny same, except that Defendants admit that, on information and belief, asbestos litigation has been going on for decades and that certain companies have declared bankruptcy based, at least in part, on asbestos litigation. The remainder of paragraph 14 is denied. In further response, Defendants incorporate by reference their responses to paragraphs 1 and 20.

15. Paragraph 15 is denied, except that Defendants admit that prior to the 1998 Transaction, Grace-1996 was a publicly traded holding corporation, which owned 100% of the shares of Grace-Conn., which was an operating company with separate divisions including a Construction Products Division, Specialty Chemicals Division, Container Division, and Packaging Division.

16. Paragraph 16 purports to state a legal conclusion, to which no response is required. To the extent a response is required, paragraph 16 is denied.

17. Paragraph 17 is denied. In further response, Defendants incorporate by reference their responses to paragraphs 2, 3, 4, and 20.

18. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of paragraph 18, and therefore deny same.

19. Paragraph 19 is denied. In further response, Defendants incorporate by reference their responses to paragraphs 2, 3, 4, and 20.

20. Paragraph 20 is denied. In further response, Defendants affirmatively aver that before the 1998 Transaction, Grace-1996 was a publicly traded parent holding company that was created

in 1996, long after Grace-Conn. had ceased all asbestos-related activities. Grace-1996 owned the shares of Grace-Conn., an operating company with separate divisions including a Construction Products Division, Specialty Chemicals Division, Container Division, and Packaging Division. In order to accomplish the 1998 Transaction in a tax-free manner, the assets of the Packaging Division were transferred to Cryovac, Inc., a Grace-Conn. subsidiary. Cryovac was then transferred from Grace-Conn. to Grace-1996 by distributing Cryovac's shares from Grace-Conn. to Grace-1996. The non-packaging businesses remained a part of Grace-Conn. Thereafter, the shares of Grace-Conn. were contributed by Grace-1996 to Grace Specialty Chemicals, Inc., a subsidiary of Grace-1996 that had been incorporated to facilitate the transaction. Grace-1996 and Cryovac borrowed more than $1.2 billion, providing the proceeds to Grace-Conn. and Grace Specialty Chemicals. This amount was used to pay off substantially all of Grace-Conn.'s debt, and was not used for the benefit of Grace-1996 or Cyrovac as Plaintiffs allege. Indeed, Grace-1996 and Cryovac assumed more than $1.2 billion in debt they would not otherwise have incurred. Grace Specialty Chemicals was subsequently spun off to the shareholders of Grace-1996 and renamed W.R. Grace & Co. (a Delaware corporation) ("new" Grace Delaware). The "old" Sealed Air then merged into a merger subsidiary of Grace-1996, and was renamed Sealed Air Corporation (US), while Grace-1996, then owning both packaging companies, was renamed Sealed Air Corporation (*i.e.*, "new" Sealed Air). After the close of the 1998 Transaction, "new" Grace Delaware was the publicly-traded Grace entity and sole owner of Grace-Conn., which continued to own and operate the non-packaging businesses. At the time of the 1998 Transaction, the Cryovac packaging business had a fair value of considerably less than the $5 billion Plaintiffs allege.

21.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of paragraph 21, and therefore deny same.

7

22.     Paragraph 22 is denied, except that Defendants admit that the consideration that was paid for the 1998 Transaction included the assumption of more than $1.2 billion in debt by Grace-1996 and Cryovac, and the issuance of approximately 36 million shares of Sealed Air's convertible preferred stock, and 40.9 million shares of Sealed Air common stock, and that, based on "old" Sealed Air's stock price at the close of business on August 13, 1997, this consideration had an aggregate value of approximately $4.9 billion. Furthermore, Defendants expressly deny that examining the value of the consideration provided is an appropriate or valid method by which to value the Cryovac packaging business inasmuch as the value of the consideration provided reflected a considerable transaction premium.

23.     Paragraph 23 is denied.

24.     Paragraph 24 is denied. In further response, Defendants incorporate by reference their responses to paragraphs 2, 3, 4, 20, and 22.

25.     Paragraph 25 is denied, except that Defendants admit that Plaintiffs selectively quote a portion of the Form S-4 filed on February 13, 1998. In further response, Defendants affirmatively aver that, immediately following Plaintiffs' selective excerpt, the S-4 expressly states that "Sealed Air and Grace believe that Grace, New Grace and their subsidiaries are adequately capitalized and will be adequately capitalized after the reorganization, and that none of the transfers contemplated to occur in the reorganization is a fraudulent transfer." In further response, Defendants incorporate by reference their responses to paragraphs 3, 4, and 20.

26.     Paragraph 26 is denied, except that Defendants admit that Plaintiffs accurately quote a selective portion of the Form S-4 filed on February 13, 1998. Defendants expressly deny that this statement, which was made in a public filing subject to the federal securities laws and their attendant broad and robust disclosure obligations, is of any probative value in this proceeding.

8

27.    Paragraph 27 is denied, except that Defendants admit that Plaintiffs purport to refer to a Form 10-K dated December 31, 1997. In further response, Defendants affirmatively aver that as of the time of the 1998 Transaction, Grace-Conn. was solvent not only if the estimated asbestos liabilities as reported in the 10-K through the year 2002 were taken into account, but also if the asbestos liabilities estimated by KPMG through the year 2039 were taken into account.

28.    Paragraph 28 is denied, except that Defendants admit that Plaintiffs purport to refer to a Form 10-K for the year ending December 31, 2000. Defendants expressly deny that the number of lawsuits that were pending against Grace-Conn. as of December 31, 2000 – nearly three years after the close of the 1998 Transaction – is relevant to the issues in this proceeding. In further response, Defendants affirmatively aver that it is not legally permissible to use this type of hindsight in evaluating whether a transaction constituted a fraudulent transfer at the time of the transaction.

29.    Paragraph 29 is denied, except that Defendants admit that Plaintiffs purport to refer to a Form 10-K for the year ending December 31, 2000. Defendants expressly deny that the status of Grace-Conn.'s asbestos litigation as of December 31, 2000 – nearly three years after the close of the 1998 Transaction – is relevant to the issues in this proceeding. In further response, Defendants affirmatively aver that it is not legally permissible to use this type of hindsight in examining whether a transaction constituted a fraudulent transfer at the time of the transaction. Moreover, Plaintiffs' reference to the Zonolite Attic Insulation litigation is deceptive and misleading because at the time of the 1998 Transaction, there were no lawsuits pending against Grace-Conn. that were filed on behalf of owners of homes containing Zonolite Attic Insulation, no such putative state or nationwide class actions concerning Zonolite Attic Insulation were filed (let alone certified by the single state trial court that subsequently did so) until years after the close of the 1998 Transaction, and the future filing of such actions could not be reasonably foreseen at the time of the 1998 Transaction.

30.    Paragraph 30 is denied. In further response, Defendants incorporate by reference their responses to paragraphs 4 and 29.

31.    Paragraph 31 purports to state a legal conclusion, to which no response is required. To the extent a response is required, Paragraph 31 is denied.

32.    Paragraph 32 purports to state a legal conclusion, to which no response is required. To the extent a response is required, paragraph 32 is denied.

33.    The first and third sentences of paragraph 33 purport to state legal conclusions, to which no response is required. To the extent a response is required, the first and third sentences of paragraph 33 are denied, except that Defendants admit that the first sentence of paragraph 33 purports to quote § 544(b) of the Bankruptcy Code. The remainder of paragraph 33 is denied.

## AS TO COUNT I
## CONSTRUCTIVE FRAUDULENT TRANSFER

34.    Defendants incorporate by reference their responses to paragraphs 1 through 33 of the Complaint with the same legal force and effect as if fully set forth at length herein.

35.    Paragraph 35 purports to state a legal conclusion, to which no response is required. To the extent a response is required, paragraph 35 is denied. In further response, Defendants incorporate by reference their responses to paragraphs 4 and 20.

36.    Paragraph 36 is denied. In further response, Defendants incorporate by reference their responses to paragraphs 4 and 20.

37.    Paragraph 37 is denied.

## AS TO COUNT II
## CONSTRUCTIVE FRAUDULENT TRANSFER

38.    Defendants incorporate by reference their responses to paragraphs 1 through 37 of the Complaint with the same legal force and effect as if fully set forth at length herein.

39.     Paragraph 39 purports to state a legal conclusion, to which no response is required. To the extent a response is required, paragraph 39 is denied.  In further response, Defendants incorporate by reference their responses to paragraphs 4 and 20.

40.     Paragraph 40 is denied. In further response, Defendants incorporate by reference their responses to paragraphs 4 and 20.

41.     Paragraph 41 is denied.

### AS TO COUNT III
### CONSTRUCTIVE FRAUDULENT TRANSFER

42.     Defendants incorporate by reference their responses to paragraphs 1 through 41 of the Complaint with the same legal force and effect as if fully set forth at length herein.

43.     Paragraph 43 purports to state a legal conclusion, to which no response is required. To the extent a response is required, paragraph 43 is denied.  In further response, Defendants incorporate by reference their responses to paragraphs 4 and 20.

44.     Paragraph 44 is denied. In further response, Defendants incorporate by reference their responses to paragraphs 4 and 20.

45.     Paragraph 45 is denied.

### AS TO COUNT IV
### TRANSFER MADE WITH INTENT TO HINDER, DELAY OR DEFRAUD

46.     Defendants incorporate by reference their responses to paragraphs 1 through 45 of the Complaint with the same legal force and effect as if fully set forth at length herein.

47.     Paragraph 47 purports to state a legal conclusion, to which no response is required. To the extent a response is required, paragraph 47 is denied.  In further response, Defendants incorporate by reference their responses to paragraphs 2, 3, and 4.

48.     Paragraph 48 is denied. In further response, Defendants incorporate by reference their responses to paragraphs 2, 3, and 4.

49.     Paragraph 49 is denied.  Defendants specifically deny that Plaintiffs have properly characterized either the law or the facts with respect to the "badges of fraud" inasmuch as: (i) the 1998 Transaction was conducted between separate publicly traded companies and not between insiders; (ii) the fact that the shareholders of Grace-1996 retained an ownership interest in the Cryovac packaging business is a normal aspect of corporate transactions, made in accord with established federal law, and not indicative of fraud; (iii) while the transaction might appear "inordinately" complex to those unfamiliar with Morris Trust transactions and not specializing in the corporate acquisition or tax areas, the structure of the 1998 Transaction was dictated by the desire for the corporate transaction to be tax-free, and the need to comply with the rules governing Morris Trust transactions to achieve this end under applicable federal law; (iv) Grace-Conn.'s asbestos liabilities do not constitute a badge of fraud because the fact that Grace-Conn. had such liabilities was well known, and the magnitude of such liabilities as well as Grace-Conn.'s ability to meet its liabilities were carefully studied in connection with the 1998 Transaction; (v) the value of the consideration provided constituted fair value, or more than fair value, for the Cryovac packaging business; and (vi) Grace-Conn. was not insolvent at the time of the 1998 Transaction or rendered insolvent by the 1998 Transaction.  In further response, Defendants incorporate by reference their responses to paragraphs 2, 3, and 4.

50.     Paragraph 50 is denied.

12

## AS TO COUNT V
## SUCCESSOR LIABILITY

51.    Defendants incorporate by reference their responses to paragraphs 1 through 50 of the Complaint with the same legal force and effect as if fully set forth at length herein.

52.    Paragraph 52 is denied. In further response, Defendants incorporate by reference their responses to paragraphs 2, 3, and 4.

53.    Paragraph 53 is denied.

54.    Paragraph 54 purports to state a legal conclusion, to which no response is required. To the extent a response is required, paragraph 54 is denied.

## AS TO COUNT VI
## PIERCING THE CORPORATE VEIL

55.    Defendants incorporate by reference their responses to paragraphs 1 through 54 of the Complaint with the same legal force and effect as if fully set forth at length herein.

56.    Paragraph 56 is denied. In further response, Defendants incorporate by reference their response to paragraph 3.

57.    Paragraph 57 is denied. In further response, Defendants incorporate by reference their responses to paragraphs 3 and 4.

58.    Paragraph 58 is denied.

59.    Paragraph 59 purports to state a legal conclusion, to which no response is required. To the extent a response is required, paragraph 59 is denied.

## AS TO COUNT VII
## BREACH OF FIDUCIARY DUTY

60.    Defendants incorporate by reference their responses to paragraphs 1 through 59 of the Complaint with the same legal force and effect as if fully set forth at length herein.

13

61.     Paragraph 61 purports to state a legal conclusion, to which no response is required. To the extent a response is required, paragraph 61 is denied.

62.     Paragraph 62 is denied.

63.     Paragraph 63 is denied. In further response, Defendants incorporate by reference their responses to paragraphs 3 and 4.

**AS TO COUNT VIII**
**AVOIDANCE OF TRANSFER TO INSIDERS**
**RECEIVED IN BREACH OF FIDUCIARY DUTY**

64.     Defendants incorporate by reference their responses to paragraphs 1 through 63 of the Complaint with the same legal force and effect as if fully set forth at length herein.

65.     Paragraph 65 is denied. In further response, Defendants incorporate by reference their response to paragraph 4.

66.     Paragraph 66 is denied.

67.     Paragraph 67 is denied.

68.     Paragraph 68 is denied.

69.     Paragraph 69 is denied.

**AS TO COUNT X (sic)**
**PUNITIVE DAMAGES**

70.     Defendants incorporate by reference their responses to paragraphs 1 through 69 of the Complaint with the same legal force and effect as if fully set forth at length herein.

71.     Paragraph 71 is denied.

**AS TO PLAINTIFFS' PRAYER FOR RELIEF**

Plaintiffs' prayer for relief is denied in its entirety.

14

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint and each and every cause of action therein fail to state a claim for which relief may be granted.

### SECOND DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations and of repose.

### THIRD DEFENSE

The Complaint, and each and every cause of action therein contained, is barred by the doctrine of unclean hands and laches.

### FOURTH DEFENSE

If W.R. Grace & Co. and W.R. Grace & Co.-Conn. are now insolvent, then such insolvency is the result of intervening or superseding events, factors, occurrences or conditions, which were in no way caused by Defendants, were not foreseeable, and for which Defendants are not liable.

### FIFTH DEFENSE

Plaintiffs are estopped from asserting the claims alleged in each and every one of its causes of action.

### SIXTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the fact that Grace-Conn. was neither insolvent at the time of, nor rendered insolvent by, the 1998 Transaction.

### SEVENTH DEFENSE

Plaintiffs' claims for punitive or exemplary damages are barred or reduced by applicable law or statute or, in the alternative, are unconstitutional insofar as they violate the due process protections

afforded by the United States Constitution, the excessive fines clause of the Eighth Amendment to the United States Constitution, as well as applicable provisions of state constitutions.

### EIGHTH DEFENSE

The Complaint fails to allege a claim for which punitive damages can be recovered.

### NINTH DEFENSE

Plaintiffs' claims are barred to the extent, if any, plaintiffs have settled, released or obtained satisfaction of their asbestos personal injury claims.

### TENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by res judicata and collateral estoppel.

### ELEVENTH DEFENSE

The allegations of the Complaint concerning fraud are insufficient because they are not pled with the particularity required by Fed. R. Civ. P. 9(b).

### TWELFTH DEFENSE

Plaintiffs' claims are barred to the extent Plaintiffs lack standing with respect to some or all of the causes of action asserted in the Complaint.

### THIRTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the fact that the 1998 Transaction did not leave Grace-Conn. engaged in a business for which its remaining assets were unreasonably small in relation to the business.

### FOURTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the fact that the 1998 Transaction was not conducted to hinder, delay, or defraud Grace-Conn.'s creditors.

16

## FIFTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the fact that Grace-Conn. did not intend to incur, and did not reasonably believe it would incur, debts beyond its ability to pay as they became due.

## SIXTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the fact that the 1998 Transaction was not conducted for the purpose of avoiding claims, including asbestos claims.

## SEVENTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the fact that Grace-1996, Grace-Conn., and the "old" Sealed Air were separate and independent corporations.

## EIGHTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the fact that there was no breach of fiduciary duties.

## NINETEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by their failure to join necessary parties.

## DEFENSES RESERVED

Defendants hereby gives notice that they intend to rely upon any other defenses that may become available or apparent during the discovery proceedings in this matter and hereby reserves the right to amend this Answer and to assert any such defense. Defendants also reserves the right to assert other and related defenses which may become available in the event of a determination that the action, or some part thereof, is governed by the substantive law of a state other than the State of Delaware.

WHEREFORE, Defendants Sealed Air Corporation and Cryovac, Inc. request that the

Court dismiss the Complaint with prejudice, that Plaintiffs recover nothing herein, and that

Defendants recover their costs and such further relief as the Court deems proper.

Respectfully submitted,

Dated:  April 1, 2002          By:    _____

Mark S. Chehi
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
Wilmington, Delaware  19899-0636
(302) 651-3000

Sheila L. Birnbaum
Henry P. Wasserstein
Bert L. Wolff
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York  10036-6522
(212) 735-3000
Attorneys for Defendants
Sealed Air Corporation and Cryovac, Inc.

## CERTIFICATE OF SERVICE

I, Mark S. Chehi, hereby certify that on this 1st day of April, 2002, I caused the foregoing **Answer and Affirmative Defenses of Defendants Sealed Air Corporation and Cryovac, Inc. to Plaintiffs' Original Complaint** to be served on the parties listed on Exhibit A, attached hereto, in the manner indicated.

_____
Mark S. Chehi

## EXHIBIT A

**Overnight Courier**

Lewis T. LeClair, Esq.
McKool Smith
300 Crescent Court, Suite 1500
Dallas, TX 75201

Scott L. Baena, Esq.
Bilzin Sumberg Dunn Baena Price & Axelrod
First Union Financial Center
200 South Biscayne Blvd, Suite 2500
Miami, FL 33131

Peter Van N. Lockwood, Esq.
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005

Elihu Inselbuch, Esquire
Caplin & Drysdale, Chartered
399 Park Avenue 36th Floor
New York, NY 10022

**Hand Delivery**

Frank J. Perch, Esq
Office of the U.S. Trustee
844 King Street
Wilmington, DE 19899

Theodore J. Tacconelli, Esq.
Ferry & Joseph P.A.
824 Market Street, Suite 904
Wilmington, DE 19899

Matthew G. Zaleski, III, Esq.
Campbell & Levine
Chase Manhattan Center
1201 North Market St., Suite 1500
Wilmington, DE 19899