# EXHIBIT 13

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF Delaware | | GRACE NON-ASBESTOS PROOF OF CLAIM FORM |
|---|---|---|
| Name of Debtor: W.R. Grace & Co.-Conn. | Case Number: 01-1179 | |

NOTE: Do not use this form to assert an Asbestos Personal Injury Claim, a Settled Asbestos Claim or a Zonolite Attic Insulation Claim. Those claims will be subject to a separate claims submission process. This form should also not be used to file a claim for an Asbestos Property Damage Claim or Medical Monitoring Claim. A specialized proof of claim form for each of these claims should be filed.

| Name of Creditor (The person or other entity to whom the Debtor owes money or property): Fresenius Medical Care Holdings, Inc. | ☒ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|
| Name and address where notices should be sent: Fresenius Medical Care Holdings, Inc. c/o David S. Rosenbloom, Esq. McDermott, Will & Emery 227 West Monroe Street Chicago, Illinois 60606-5096 Telephone: 312-372-2000 | ☐ Check box if you have never received any notices from the bankruptcy court in this case. ☒ Check box if the address differs from the address on the envelope sent to you by the court. | |
| Account or other number by which creditor identifies Debtor: | Check here ☐ replaces if this claim ☐ amends a previously filed claim, dated: _____ | |

Corporate Name, Common Name, and/or d/b/a name of specific Debtor against whom the claim is asserted:
W.R. Grace & Co.-Conn.

| 1. Basis for Claim<br>☐ Goods sold<br>☐ Services performed<br>☐ Environmental liability<br>☐ Money loaned<br>☐ Non-asbestos personal injury/wrongful death<br>☒ Taxes<br>☒ Other – Please see attached Addendum. | ☐ Retiree benefits as defined in 11 U.S.C. '1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Your SS #:_____<br>Unpaid compensation for services performed<br>from _____ to _____ (date) |
|---|---|
| 2. Date debt was Incurred: Various – Please see attached Addendum. | 3. If court judgment, date obtained: |
| 4. Total Amount of Claim at Time Case Filed: | Unliquidated – Please see attached Addendum. |

If all or part of your claim is secured or entitled to priority, lso complete Item 5 below.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. Classification of Claim. Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

| ☒ SECURED CLAIM (check this box if your claim is secured by collateral, including a right of setoff.)<br>Brief Description of Collateral:<br>☐ Real Estate  ☒ Other (Describe briefly) Please see attached Addendum.<br>Amount of arrearage and other charges at time case filed included in secured claim above, if any: $_____<br>Attach evidence of perfection of security interest<br>☒ UNSECURED NONPRIORITY CLAIM<br>A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim. | ☒ UNSECURED PRIORITY CLAIM - Specify the priority of the claim.<br>☐ Wages, salaries, or commissions (up to $4650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. '507(a)(3).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. '507(a)(4).<br>☒ Taxes or penalties of governmental units - 11 U.S.C. '507(a)(8).<br>☒ Other - Specify applicable paragraph of 11 U.S.C. '507(a)(8) and/or 503(b). |
|---|---|

6. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
7. Supporting Documents: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Please see attached Addendum.
8. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date<br>3-26-03 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>[signature]<br>Jerry Schneider, Chief Financial Officer | This Space is for Court Use Only |
|---|---|---|

WR Grace    BF.33.130.6492
00008112
SR=553

REC'D MAR 2 8 2003

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et. al.[1], | ) | Jointly Administered for Administrative Purposes under |
| Debtors. | ) | Case No. 01-01139 (JKF) |
| | ) | |
| | ) | **PROOF OF CLAIM ADDENDUM** |

      Fresenius Medical Care Holdings, Inc., a New York corporation (taxpayer identification number 13-3461988, formerly known as Fresenius National Medical Care Holdings, Inc., and before that as W.R. Grace & Co. ) ("FMCH"), National Medical Care, Inc., a Delaware corporation (taxpayer identification number 04-2835488) ("NMC"), Bio-Medical Applications of Indiana, a Delaware corporation (taxpayer identification number 04-2969825) ("Indiana Inc"),

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Bio-Medical Applications of Oklahoma, Inc., a Delaware corporation (taxpayer identification number 04-3017363) ("Oklahoma Inc"), Bio-Medical Applications of Mississippi, Inc., a Delaware corporation (taxpayer identification number 04-3108559) ("Mississippi Inc"), Bio-Medical Applications of Rhode Island, Inc., a Delaware corporation (taxpayer identification number 04-2489760) ("RI Inc."), Bio-Medical Applications of South Carolina, Inc., a Delaware corporation (taxpayer identification number 04-2944532) ("SC Inc"), NMC Homecare, Inc., an Delaware corporation (taxpayer identification number 04-2898385) ("Homecare"), and Fresenius U.S.A., Inc., a Massachusetts corporation ("FUSA") hereby submit, on their own behalf and behalf of each corporation, which immediately after December 31, 1996, was a member of the affiliated group of corporations that joined with FMCH in filing a consolidated tax return under section 1501 of the Internal Revenue Code of 1986, as amended (the "Code") or a combined tax return under a comparable provisions of tax law of other jurisdictions (domestic or foreign) (collectively, the "FMCH Group"), this addendum (the "Addendum") to their proofs of claim (the "Proofs of Claim"), against the above-captioned debtors and debtors in possession (collectively, the "Debtors") and their bankruptcy estates in the Chapter 11 proceedings currently pending before the United States Bankruptcy Court for the District of Delaware (the "Court"), jointly administered under Case No. 01-01139-JKF.

**I.     PROCEDURAL POSTURE**

1.     The above-captioned Debtors commenced these jointly-administered Chapter 11 cases by filing concurrent voluntary petitions on April 2, 2001 (the "Petition Date").

2.     On or about April 22, 2002, this Court entered its Order As to All Non-Asbestos Claims, Asbestos Property Damage Claims and Medical Monitoring Claims: (I) Establishing Bar

-2-

Date, (II) Approving Proof Of Claim Forms and (III) Approving Notice Program (the "Bar Date Order").

3.     The Bar Date Order fixed March 31, 2003 "as the bar date for filing proofs of claims asserting Asbestos Property Damage Claims, Medical Monitoring Claims and Non-Asbestos Claims against the Debtors."

4.     Pursuant to the terms of the Bar Date Order and as is more fully described below, FMCH, NMC, Indiana Inc, Oklahoma Inc, Mississippi Inc, RI Inc, SC Inc, Homecare, and FUSA submit their Proofs of Claim and Addenda thereto with the express reservation that those Proofs of Claim may be amended and supplemented as required.

## II.    THE 1996 NMC TRANSACTION

5.     Prior to October 1996, W.R. Grace & Co. was a publicly traded New York holding company ("Grace New York"), which operated chiefly through its wholly owned subsidiary, W.R. Grace & Co.-Conn. ("Grace-Conn."). Grace-Conn., in turn, consisted of three business components: (1) a specialty chemicals and construction business; (2) a packaging business; and (3) a health care business, which focused on dialysis services. Grace-Conn. conducted its health care business principally through its then-wholly owned subsidiary, NMC. NMC provided various dialysis, laboratory, and home health care services.

6.     In 1996, Grace New York and Fresenius AG ("Fresenius"), a German dialysis products and pharmaceuticals company, entered into a complicated reorganization transaction that combined the NMC health care business with the Fresenius worldwide dialysis business. The transaction (the "Grace/Fresenius Reorganization") was memorialized in various agreements, including a Distribution Agreement among Grace New York, Grace-Conn. and

Fresenius (the "Distribution Agreement").[2] The Grace/Fresenius Reorganization provided for the separation of Grace New York's NMC health care business from the non-health care Grace New York businesses, so that each would operate as entirely separate entities going forward. To that result, Grace New York transferred ownership of Grace-Conn. and all its non-health care businesses to a newly formed shell corporation, Grace Holding, Inc. (n/k/a Sealed Air Corporation) ("Grace Holding") and then distributed all of the shares of Grace Holding to its shareholders in a pro rata distribution. Immediately thereafter, Grace New York, with NMC as its direct subsidiary, and FUSA, each merged with a wholly-owned subsidiary of Fresenius Medical Care AG. Grace New York ultimately changed its name to FMCH. The closing of the Grace/Fresenius Reorganization occurred from September 27 to September 30, 1996.

7.  In allocating the Grace New York health care business to FMCH, and the other Grace New York businesses to Grace Holding, the entity to be spun-off to Grace New York shareholders, the parties provided for a corresponding allocation of liabilities. The parties agreed that all liabilities relating to Grace New York's non-health care businesses, including asbestos-related liabilities, would be borne by the entities receiving and retaining those non-health care businesses. Thus, the Distribution Agreement provides a very broad indemnification in favor of the Fresenius entities that excludes only losses arising from the NMC business:

---

[2] The Debtors and other parties in interest have been previously provided with copies of the documents referenced in this Addendum. Accordingly, and due to the voluminous nature of such documents, copies are not attached to the Proof of Claim unless otherwise indicated.

Grace-Conn.[3] shall indemnify, defend and hold harmless the NMC Indemnitees[4] from and against (1) all Indemnifiable Losses[5] of Grace [Grace New York] ... including, without limitation, Indemnifiable Losses relating to the manufacture or sale of asbestos-containing materials by any Grace-Conn. Business or relating to any liability of the Grace-Conn. Business under Environmental Law, other than those Indemnifiable Losses arising from or relating to the NMC Business....[6]

8. Similarly to their treatment of the business-related liabilities, the parties also provided for a mutual allocation of tax-related liabilities and cross-indemnifications. Towards that end, the parties executed a Tax Sharing and Indemnification Agreement (the "TSIA") on September 27, 1996. The Tax Sharing Agreement provides that Grace-Conn., Grace Holding, and the other members of the Grace-Conn. Group[7] will be responsible for paying all tax liabilities associated with pre-transaction activities, except those tax liabilities attributable to the activities of NMC.[8]

---

[3] The Distribution Agreement defined "Grace Conn." to include Grace Holding. Distribution Agreement at § 2.01.

[4] The NMC Indemnitees include Grace New York, NMC, and each person that directly or indirectly controls, is controlled by, or is under common control with, NMC, excluding any such persons that are members of the Grace-Conn. Group. See Distribution Agreement at § 1.01. FMCH was formerly known as Grace New York and is therefore an NMC Indemnitee. Indiana Inc, Oklahoma Inc, Mississippi Inc, RI Inc, SC Inc and Homecare were subsidiaries of NMC and are therefore also NMC Indemnitees.

[5] "Indemnifiable Losses" are "all losses, Liabilities, damages, claims, demands, judgments or settlements of any nature or kind, known or unknown, fixed, accrued, absolute or contingent, liquidated or unliquidated, including all reasonable costs and expenses (legal, accounting or otherwise as such costs are incurred) relating thereto, suffered (and not actually reimbursed by insurance proceeds) by an Indemnitee, including any reasonable costs or expenses of enforcing any indemnity hereunder." Distribution Agreement at § 1.01

[6] Distribution Agreement at § 4.02(a).

[7] The Distribution Agreement defines "Grace-Conn. Group" to include Grace-Conn. and its subsidiaries. Distribution Agreement, at § 1.01.

[8] The TSIA at §§ 3.01 and 3.02.

### III. THE INDEMNIFIED ASBESTOS CLAIMS

9.  Prior to the Petition Date, on September 28, 2000, certain of the NMC Indemnitees, along with certain of the Debtors, were named as defendants in a putative class action brought on behalf of a class of person claiming to have suffered personal injury as a result of exposure to products containing asbestos that were manufactured or distributed by Grace-Conn. That lawsuit is captioned *Mesquita v. W.R. Grace & Co., et al.*, amended as *Abner v. W.R. Grace & Co. et al.*, No. 315465, Superior Court of California, County of San Francisco, (since transferred to the Court as Adversary Proceeding No. 01-08883) (the "Abner Litigation").

10. On the Petition Date, FMCH, NMC, and FUSA were named as defendants in a putative class action brought on behalf of a class of person alleging to have suffered property damage as a result of the presence of products containing asbestos that were manufactured or distributed by Grace-Conn. That lawsuit is captioned *Woodward v. Sealed Air Corporation (US) et al.*, No. 01-10547 PBS, U.S. District Court, District of Massachusetts, (since transferred to the Court as Case No. 01-CV-412) (the "Woodward Litigation").

11. Both prior to and after the Petition Date, the Debtors have acknowledged their obligation to indemnify and defend the NMC Indemnitees, including FMCH, NMC, and FUSA, for the claims alleged in the Abner Litigation and the Woodward Litigation.

12. On November 16, 2001, counsel for the class in the Woodward Litigation filed an Adversary Proceeding, captioned, *Lewis v. W.R. Grace & Co. et al.*, U.S. Bankruptcy Court, District of Delaware, Bkr. Case No. D. Del. 01-001139/Adv. Case No. 01-08810 (the "Lewis Adversary Proceeding"). The allegations in the Lewis Adversary Proceeding are substantially similar to the allegations in the Woodward Litigation, and the Debtors are likewise obligated to

indemnify and defend the NMC Indemnitees, including FMCH, NMC, and FUSA in connection with that proceeding.

13. On May 3, 2001, the Court entered an Order Granting Preliminary Injunction that effectively stayed the Abner Litigation, the Woodward Litigation, and the Lewis Adversary Proceeding. The Court subsequently entered a modified Preliminary Injunction on January 22, 2002, which continued the stay of the above-referenced asbestos litigation.

14. On June 14, 2001, the Official Committee of Asbestos Property Damage Claimants (the "Property Damage Committee") and the Official Committee of Asbestos Personal Injury Claimants (the "Personal Injury Committee") (collectively, the Personal Injury Committee and the Property Damage Committee are referred to herein as the "Asbestos Committees") filed their Joint Motion for Authority to Prosecute Fraudulent Transfer Claims (the "Motion to Prosecute"), seeking authority to prosecute certain fraudulent transfer claims against, among others, certain NMC Indemnitees, and Sealed Air Corporation and Cryovac, Inc. (collectively, referred to herein as the "Sealed Air Companies").

15. On March 12, 2002, this Court entered an order withdrawing the reference with respect to, and granting, the Motion to Prosecute.

16. On March 18, 2002, the Asbestos Committees filed a complaint against certain NMC Indemnitees (referred to herein as the "NMC Defendants"), alleging, among other things, that the NMC Defendants were liable as successors for the asbestos liabilities of the Debtors and that the NMC Defendants were recipients of fraudulent transfers in respect of the W.R. Grace entities. That Adversary Proceeding is captioned *Official Committee of Asbestos Personal Injury Claimants and Official Committee of Asbestos Property Damage Claimants of W.R. Grace & Co., suing in behalf of the Chapter 11 Bankruptcy Estates of W.R. Grace & Co., et al., Plaintiffs*

-7-

*v. Fresenius Medical Care Holdings, Inc. and National Medical Care, Inc.*, Adversary Proceeding No. 02-2211, which the Court consolidated with Adversary Proceeding No. 02-2210, by Order dated March 28, 2002 (the "Asbestos Claimants' Adversary Proceeding"). See Adv. Proc. 01-2211, Dkt. No. 1.

## IV. THE INDEMNIFIED TAX OBLIGATIONS

17. The Debtors and certain of the NMC Indemnitees, including FMCH and NMC, were members through September 29, 1996 of the Grace New York Group,[9] and included in the group's consolidated tax returns for years ending on or before December 31, 1996. Each member of the Grace New York Group is severally and thus primarily liable for the income taxes (as well as other taxes) for the tax years during which such corporation was included as a member of the Grace New York Group. Under the TSIA the Debtors are obligated to indemnify the NMC Indemnitees, including FMCH and NMC for certain tax deficiencies asserted by the tax authorities relating to the tax years ending on or before, or including September 29, 1996 (e.g., the federal consolidated tax return of the Grace New York Group for the tax year ending December 31, 1996).

18. In October of 1997, the Internal Revenue Service (the "IRS") commenced an examination of the consolidated tax returns of the Grace New York Group with respect to the 1993 – 1996 tax periods (the "Tax Audit"). The IRS has filed priority tax claims and other tax claims against the estates of the Debtors. Certain state and local tax authorities have filed similar

---

[9] As used here, the term "Grace New York Group" shall mean that group of corporations, including Grace-Conn., and the Sealed Air Companies, that were members through September 29, 1996 or December 31, 1996, as applicable, of the affiliated group of corporations within the meaning of Section 1504 of the Code, and the Treasury Regulations promulgated thereunder, of which Grace New York was the common parent, including, with respect to Taxes of other jurisdictions (domestic or foreign), that group of corporations which included Grace New York or one or more of the members of the Grace New York Group with respect to a consolidated or combined tax return.

-8-

priority and other tax claims. Such claims are incorporated herein by reference. The total amount of the tax claims filed against the estates of the debtors by the IRS and state and local tax authorities, in the aggregate (the "Combined Tax Authority Claim Amount"), currently is in excess of one billion dollars. Since many of the individual tax claims are duplicative and tax audits and appeals have not been completed, and the possibility remains that additional tax and related liabilities may be asserted, the Combined Tax Authority Claim Amount may increase or decrease over time.

## V. PROPOSED SETTLEMENT OF ASBESTOS CLAIMANTS' ADVERSARY PROCEEDING

19.     On November 27, 2002, at the direction of the Court, representatives of the plaintiff Asbestos Committees in the Asbestos Claimants' Adversary Proceeding and of FMCH and NMC participated in a lengthy settlement conference, during which the parties were able to successfully negotiate a settlement that addressed three separate areas: (i) settlement of the Asbestos Claimants' Adversary Proceeding and protection for the NMC Indemnitees from current and future Grace-Related Claims; (ii) responsibility for the priority taxes arising out of the Tax Audit and other Taxes; and (iii) release of claims against the Sealed Air Companies by the NMC Defendants. The settlement was memorialized in a term sheet executed on November 27, 2002 (the "Term Sheet"). By Order dated November 27, 2002, the Court approved the Term Sheet.

20.     Shortly after the November 27th settlement conference, representatives from the Plaintiffs, the Debtors, and the NMC Defendants jointly began negotiating and drafting the documentation of the settlement. During the course of this joint drafting of the definitive settlement documents, it became apparent that greater tax efficiencies and other mutual benefits for the estates and the settling parties could be achieved by restructuring portions of the

settlement reflected in the Term Sheet. As a result, the Plaintiffs, the Debtors, and the NMC Defendants agreed to modify the terms of the settlement to provide economically similar benefits for the Debtors' estates without intricate tax provisions. The proposed final Settlement Agreement addresses the same three subject areas as the original Term Sheet, to wit: (i) settlement of the Asbestos Claimants' Adversary Proceeding and protection for the NMC Indemnitees from current and future Grace-Related Claims; (ii) responsibility for the priority taxes arising out of the Tax Audit and other Taxes; and (iii) release of the claims against the Sealed Air Companies by the NMC Defendants. Under the Settlement Agreement, the NMC Defendants have agreed to make a one-time lump sum payment of $115 million in exchange for full protection from current and future Grace-Related Claims, including Asbestos-Related Claims, and claims arising out of the Tax Audit and other Taxes. In addition, the Settlement Agreement provides that the Debtors will retain control of, and responsibility to pay (or indemnify the NMC Defendants) for, Indemnified Taxes (as defined in the Settlement Agreement). Finally, the Settlement Agreement provides that the NMC Defendants will release the Sealed Air Companies for all Grace-Related Claims.

21. The Settlement Agreement, or a substantially similar amended and restated version of the Settlement Agreement, will be presented to the Court for approval and implementation. Nothing in this Proof of Claim and Addendum shall in any way limit or diminish the rights and claims of FMCH, NMC, FUSA, or other NMC Indemnitees, arising out of the Settlement Agreement.

VI. **CLAIMS OF THE NMC INDEMNITEES**

22. The NMC Indemnitees, including FMCH, and NMC, and FUSA, hold valid and enforceable claims against the Debtors for indemnification and/or contribution, including

-10-

attorneys' and advisors' fees and expenses, with respect to: all Indemnifiable Losses, including but not limited to the claims alleged in the Abner Litigation, the Woodward Litigation, the Lewis Adversary Proceeding, and the Asbestos Claimants' Adversary Proceeding; and for all Tax Deficiencies, Tax Detriments, Tax Refunds, and other Tax Liabilities[10]; all pursuant to (i) the Distribution Agreement, including without limitation section 4.02 thereof; (ii) the TSIA, including without limitation sections 3.02, 4.01, 4.04 and 5.05 thereof; (iii) common law; (iv) equity; and (v) any other applicable oral or written contract, and/or any applicable state, federal, or other law, rule, or regulation.

23. The total amount of the NMC Indemnitees' and FUSA's claims for indemnity and/or contribution, although partially unliquidated, is presently estimated at not less than the Combined Tax Authority Claim Amount. However, the liquidated amount of the claims may be larger or smaller. The NMC Indemnitees reserve their right to amend and supplement their Proofs of Claim to specify a different amount upon the availability of further information about the potential liabilities for which the NMC Indemnitees, including FMCH and NMC, and FUSA, are entitled to indemnification and/or contribution.

24. Subject to Court approval, and confirmation of a plan of reorganization, the Settlement Agreement is intended to resolve most, but not all, of the NMC Indemnitees' claims against the Debtors' estates upon the occurrence of certain conditions, as set forth in the Settlement Agreement. The NMC Indemnitees reserve all of their rights and remedies under the Settlement Agreement, as well as those existing prior to and after execution of the Settlement Agreement.

---

[10] Such terms are defined in the TSIA.

### A. Secured Claims

25. Some or all of the claims of the NMC Indemnitees, including FMCH and NMC, and of FUSA, may be entitled to allowance and payment as secured claims. Specifically, and without limitation, the NMC Indemnitees may be entitled to exercise rights of recoupment and/or setoff, including with respect to any payments due under the Settlement Agreement. Separately, the NMC Indemnitees may be entitled to imposition of a constructive trust, including with respect to refunds received from the IRS and held by one or more of these bankruptcy estates. In the alternative, the NMC Indemnitees may hold a valid, prior, perfected, and enforceable equitable lien in, among other things, refunds from the IRS held by one or more of these bankruptcy estates or any payments due under the Settlement Agreement.

26. Based on the foregoing, the NMC Indemnitees hereby demand allowance and payment on account of their secured claims, enforcement of their rights of recoupment and/or setoff, delivery of any funds held in constructive trust, foreclosure of their equitable liens, and allowance and payment of any other claims to which they may be entitled.

### B. Administrative Expense Priority Claims

27. The NMC Indemnitees, including FMCH and NMC, and FUSA, believe that some of their claims are or would be entitled to allowance and payment as administrative expense priority claims pursuant to 11 U.S.C. §§ 503 and 507(a)(1). Such claims include, but are not limited to, claims relating to or arising out of the Settlement Agreement and any breach thereof. Additionally, some of the Indemnifiable Losses may also be entitled to administrative priority status. If and when appropriate, the NMC Indemnities reserve the right to file a request for allowance and payment of their administrative expense priority claims.

### C. Tax Priority Claims

28. In the alternative, the claims of the NMC Indemnitees, including FMCH and NMC, for all Tax Deficiencies, Tax Detriments, Tax Refunds, and other Tax Liabilities are entitled to allowance and payment from these bankruptcy estates as tax priority claims pursuant to 11 U.S.C. §§ 503(b) and/or 507(a)(8).

29. Based on the foregoing, and subject to possible amendment in the event the Settlement Agreement becomes effective under its terms, the NMC Indemnitees hereby demand allowance and payment of their tax priority claims and any other claims to which they may be entitled.

### D. Unsecured Claims

30. Some of the claims of the NMC Indemnitees, including FMCH, and NMC, and the claims of FUSA, are entitled to allowance and payment from these bankruptcy estates as general unsecured claims pursuant to 11 U.S.C. § 502.

31. Based on the foregoing, and subject to possible amendment in the event the Settlement Agreement becomes effective under its terms, the NMC Indemnitees hereby demand allowance and payment of their general unsecured claims and any other claims to which they may be entitled.

## VII. RESERVATIONS OF OTHER CLAIMS AND RIGHTS

32. In addition to the foregoing, the NMC Indemnitees expressly reserve all other rights, remedies, interests, priorities, protections, claims, counterclaims, defenses, setoffs, and recoupments, including, without limitation, claims against the Debtors, their respective affiliates, creditors, and current and former directors, officers, and shareholders, under Sections 503, 507, 510, 542, 544, 545, 548, 549, 550, and 553 of the Bankruptcy Code. This Proof of Claim is

-13-

being filed under the compulsion of the Bar Date Order and is filed to protect the NMC Indemnitees from forfeiture of their claims by reason of that Bar Date Order.

33. The NMC Indemnitees reserve their right to amend and supplement the foregoing Proof of Claim and to file additional claims against the Debtors for any reason, including, without limitation, requests for allowance and payment of administrative expense claims, claims for breach of the Settlement Agreement, and claims relating to any other matter.

34. The filing of this Proof of Claim is not and should not be construed to be: (i) a waiver of the NMC Indemnitees' rights to have any and all final orders in any and all non-core matters entered only after de novo review by a United States District Court; (ii) a waiver of the NMC Indemnitees' rights to demand arbitration or trial by jury in any proceeding as to any and all matters so triable, whether or not the same are designated as legal or private rights, or in any case or controversy or proceeding related thereto, notwithstanding the designation of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b) or otherwise, and whether such jury trial is pursuant to statute or the United States Constitution; (iii) a waiver or release of any of the NMC Indemnitees' rights, causes of action or defenses against any other entity or person for all or part of any claim described herein; (iv) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of this claim or with respect to any claim objection or other proceeding; (v) a waiver of any right to the subordination, in favor of any of the NMC Indemnitees, of indebtedness or liens held by other creditors of the Debtors; (vi) an election of remedy that waives or otherwise affects any available remedy of any of the NMC Indemnitees; or (vii) a waiver of jury trial rights. None of the NMC Indemnitees admit liability to any party.

35. The NMC Indemnitees further reserve any and all rights against parties other than the Debtors based on the foregoing facts and circumstances.

-14-

## VIII. AMENDMENT TO PROOF OF CLAIM

36. Without limiting the generality of the foregoing, the amount of damages cannot presently be determined, and the NMC Indemnitees reserve the right to amend this Proof of Claim from time to time as additional information becomes available to, among other things, recharacterize in any manner the claims set forth herein, reflect any additional amounts owing from the Debtors, and to include herein any further relevant information.

## IX. NOTICES

37. All papers or pleadings concerning this Proof of Claim should be sent to:

> David S. Rosenbloom
> McDermott, Will & Emery
> 227 W. Monroe, Suite 4400
> Chicago, Illinois 60606
> Telephone: (312) 372-2000
> Facsimile: (312) 984-7700

and

> The FMCH Group
> c/o Fresenius Medical Care North America
> Corporate Headquarters
> Corporate Law Department
> 95 Hayden Avenue
> Lexington, MA 02420-9192
> Telephone: (781) 402-9254
> Facsimile: (781) 402-9713