EXHIBIT 14

| UNITED STATES BANKRUPTCY COURT FOR ~ DISTRICT OF Delaware | | GRACE NON-ASBESTOS PROOF OF CLAIM FORM |
|---|---|---|

| Name of Debtor:[1] W.R. Grace & Co.-Conn. | Case Number 01-1179 | |
|---|---|---|

NOTE: Do not use this form to assert an Asbestos Personal Injury Claim, a Settled Asbestos Claim or a Zonolite Attic Insulation Claim. These claims will be subject to a separate claims submission process. This form should also not be used to file a claim for an Asbestos Property Damage Claim or Medical Monitoring Claim. A specialized proof of claim form for each of these claims should be filed.

| Name of Creditor (The person or other entity to whom the Debtor owes money or property):<br><br>Sealed Air Corporation (US)<br><br>Name and address where notices should be sent:<br><br>Sealed Air Corporation (US)<br>c/o Sealed Air Corporation<br>Park 80 East<br>Saddle Brook, NJ 07663<br>Attention: H. Katherine White | ☒ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. See Annex A<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☒ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|
| Account or other number by which creditor identifies Debtor: | Check here ☐ replaces<br>if this claim ☐ amends a previously filed claim, dated:_____ | |

Corporate Name, Common Name, and/or d/b/a name of specific Debtor against whom the claim is asserted:
W.R. Grace & Co.-Conn.

| 1. Basis for Claim<br>☐ Goods sold<br>☐ Services performed<br>☐ Environmental liability<br>☐ Money loaned<br>☐ Non-asbestos personal injury/wrongful death<br>☐ Taxes<br>☒ Other See Annex B | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br><br>Your SS #:_____<br>Unpaid compensation for services performed<br>from _____ to _____ (date) |
|---|---|
| 2. Date debt was incurred: On and after March 30, 1998 | 3. If court judgment, date obtained: |
| 4. Total Amount of Claim at Time Case Filed:<br>If all or part of your claim is secured or entitled to priority, also complete Item 5 below.<br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges. | $ 4,930,009,950.54 – See Annex B |

5. **Classification of Claim.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. **CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.**

| ☐ SECURED CLAIM (check this box if your claim is secured by collateral, including a right of setoff.)<br><br>Brief Description of Collateral:<br><br>☐ Real Estate    ☐ Other (Describe briefly)<br><br>Amount of arrearage and other charges at time case filed included in secured claim above, if any: $_____<br><br>Attach evidence of perfection of security interest<br><br>☒ UNSECURED NONPRIORITY CLAIM<br><br>A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim. | ☐ UNSECURED PRIORITY CLAIM - Specify the priority of the claim.<br><br>☐ Wages, salaries, or commissions (up to $4650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).<br><br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).<br><br>☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(7).<br><br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a(___). |
|---|---|

| 6. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. | This Space is for Court Use Only |
|---|---|
| 7. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br>8. Acknowledgement: Upon receipt and processing of this Proof of Claim, you will receive an acknowledgement card indicating the date of filing and your unique claim number. If you want a file stamped copy of the Proof of Claim form itself, enclose a self-addressed envelope and copy of this proof of claim form. | RECEIVED<br>MAR 31 2003<br>CLAIMS ADMINISTRATION<br>RUST CONSULTING, INC. |
| Date<br>3/26/03 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>H. Katherine White  *H. Katherine White, Vice President* |

[1] See General Instructions and Claims Bar Date Notice and its exhibits for names of all Debtors and *other* name

WR Grace    BF.48.189.9427<br>00014339<br>SR=722

### Annex A to Proof of Claim filed by Sealed Air Corporation (US)

The items of the claim herein are the subject of claims filed by Cryovac, Inc. and its affiliates. The elements of this claim are also components of a claim filed by Sealed Air Corporation. Specifically, components of Sealed Air Corporation's claim relating to: indemnification for asbestos-related claims; indemnification for potential claims of Fresenius Medical Care, Inc. and its affiliates; contingent unliquidated claims for liabilities under the Tax Sharing Agreement; Net Benefit Amount liability regarding foreign pensions; severance costs related to U.S. and non-U.S. employees; pre-merger taxes and related costs associated with transferred employees; adjustment to Sealed Air Corporation's share of contribution for severance of W.R. Grace employees; site separation costs; transaction costs; IS separation costs; and costs and expenses of printing and mailing the Joint Proxy Statement and the Grace registration statement, are all subject to the claim filed herein.

ANNEX B TO PROOF OF CLAIM OF SEALED AIR CORPORATION (US)
IN THE CHAPTER 11 CASE OF
<u>W.R. Grace & Co.-Conn. (Case No. 01-1179)</u>

A.    <u>Claim Calculation</u>

| Claim Component | Amount Attributed to Claim Component | Source of Claim |
|---|---|---|
| 1. Indemnification for Asbestos Related Claims, Including, Without Limitation, on Account of the Cases Listed on Schedule 1. | $4,800,000,000.00 (estimated)[1] | Section 1.01 (definition of Packco Liabilities[2]) and section 4.02(a)[3] of the Distribution Agreement, dated as of March 30, 1998, by and among W.R. Grace & Co., W.R. Grace & Co.-Conn., and Grace Specialty Chemicals Inc., as amended, and other related agreements (the "Distribution Agreement")(Exhibit A hereto) |
| 2. Indemnification of Costs and Expenses Including Legal Fees as of December 31, 2002 | $17,948,544.82 (Schedule 2(a) and (b)) | Section 1.01 (definition of Indemnifiable Losses[4]) and section 4.02(a)[5] of the Distribution Agreement |
| 3. Indemnification for Potential Claims by Fresenius Medical Care, Inc. and Its Affiliates | Unknown[6] | Section 1.01 and 4.02(a) of the Distribution Agreement and the TSA as defined in item 4 |

| Claim Component | Amount Attributed to Claim Component | Source of Claim |
|---|---|---|
| 4. Contingent Unliquidated Claims for Liabilities Under the Tax Sharing Agreement, dated as of March 30, 1998, by and among W.R. Grace & Co., W.R. Grace & Co.-Conn. and Sealed Air Corporation, (the "TSA")[?](Exhibit B hereto) | All liabilities relating to taxes, including interest, penalties and additions thereto, and all other amounts, required to be paid by W.R. Grace & Co.-Conn. or W.R. Grace & Co. to Sealed Air Corp. or any of its affiliates pursuant to the TSA and/or under the Distribution Agreement | 1.Section 1.01 and 4.02(a) of the Distribution Agreement 2. The TSA |
| 5. Net Benefit Amount Liability Regarding Foreign Pensions | $8,520,000.00 | 1. Distribution Agreement; 2. Employment Benefits Allocation Agreement, dated as of March 30, 1998, by and among W.R. Grace & Co., W.R. Grace & Co.-Conn., and Grace Specialty Chemicals, Inc., as amended (the "EBA") (Exhibit C hereto); and 3. Agreement Regarding Foreign Pension and Employee Matters, dated as of March 30, 1998 by and among W.R. Grace & Co., W.R. Grace & Co.-Conn., Grace Specialty Chemicals, Inc., and Sealed Air Corporation, as amended (the "FPA")(Exhibit D hereto) |
| 6. Severance and Other Benefits and Costs Reimbursable by W.R. Grace & Co. Relating to U.S. Packaging Employees | $1,072,654.00 | 1. Section 5.01 of the EBA 2. Section 1.01 (definition of Packco Liabilities) of the Distribution Agreement |

| Claim Component | Amount Attributed to Claim Component | Source of Claim |
|---|---|---|
| 7. Pre-Merger Taxes and Related Costs Associated with Transferred Employees on International Assignments | $485,569.83 | 1. Sections 1.01, 6.01, and 7.03 of the EBA<br>2. The FPA |
| 8. Severance Costs Relating to Non-U.S. Employees | $457,547.00 | Section 3.02 of the FPA |
| 9. Adjustment to Sealed Air Corp.'s Share of Contribution for Severance of W.R. Grace Employees | $121,111.00 | Section 8.04 of the Distribution Agreement |
| 10. Site Separation Costs | Unknown | Section 8.04 of the Distribution Agreement and related agreements |
| 11. Transaction Costs | $864,021.06 | Section 8.04 of the Distribution Agreement |
| 12. IS Separation Costs | $441,933.66 (Schedule 3) | Section 8.04 of the Distribution Agreement and related IT separation agreements |
| 13. Costs and Expenses of Printing and Mailing the Joint Proxy Statement and the Grace Registration Statement | $98,569.17 | Section 6.12(a) of the Agreement and Plan of Merger, dated as of August 14, 1997 by and among W.R. Grace & Co., Sealed Air Corporation and Packco Acquisition Corp., as amended (the "Merger Agreement") |
| **Total Claim Amount** | $4,830,009,950.54 | |

B.       **Additional Statements/Qualifications**

1.      The claimant is submitting this proof of claim in an aggregate amount which
        includes estimated amounts as well as contingent claims for various elements, as
        more specifically stated in Part A of this Annex. The claimant is reserving the right
        to amend the amount claimed herein based on the occurrence of contingencies,
        future estimates and/or the fixing of the estimated amounts.

2.      The documentation supporting the claim is voluminous. Certain of supporting
        documentation is attached to, inter alia, the claim of Sealed Air Corporation in Case
        No. 01-1139, and is incorporated herein by reference. All supporting documenta-
        tion necessary to support the claim is available upon request.

3.      The claim is not subject to any setoff or counterclaim, except to the extent
        that the debtor or other party may take any action that would give rise to a right of
        setoff, recoupment, counterclaim or other rights or claim that the claimant may have
        against the debtor.

4.      Subject to paragraph 3 above, this claim is a general unsecured claim.

5.      The claimant does not waive any right to any security held by or on behalf of
        the claimant or claimant's right to claim specific assets or other right or rights of
        action that the claimant has or may have against the debtor.

6.      The claimant reserves their right generally to (a) amend, update, or supplement this
        proof of claim at any time and in any respect, including, without limitation, (i)
        designating any portion of it as entitled to a secured, priority or administrative
        expense status and (ii) asserting additional claims arising under the Merger Agree-
        ment, Distribution Agreement, the TSA, and all other agreements related thereto; (b)
        file a request for payment of an administrative or priority expense, (c) assert any post-
        petition liabilities against the debtor or (d) file claims or other payment demands with
        respect of executory contracts that have not been rejected as of the date hereof.

## Endnotes

1. This claim will be eliminated if the parties enter into the Settlement Agreement as currently contemplated in Adv. P. No. 02-2210 (the "Settlement Agreement") and a chapter 11 plan consistent with the terms of such pending settlement is confirmed.

2. Section 1.01 provides, ". . . Packco liabilities shall not, in any event, include: . . . (e) Liabilities, whether such Liabilities relate to events, occurrences or circumstances occurring or existing, or whether such Liabilities arise, before, on or after the Distribution Date, relating to asbestos or asbestos-containing materials manufactured and/or sold (collectively "Asbestos Activities") by Grace, Grace-Conn. or any of their respective Subsidiaries, affiliates or predecessors . . . ."

3. Section 4.02(a) provides, " . . . [T]he New Grace Group shall indemnify, defend and hold harmless the Packco Indemnitees from and against (i) all Indemnifiable Losses arising out of or due to the failure or alleged failure of any member of the New Grace Group (x) to pay any Grace-Conn. Liabilities (including, without limitation, all Liabilities specifically excluded from the definition of Packco Liabilities herein), whether such Indemnifiable Losses relate to events, occurrences or circumstances occurring or existing, or whether such Indemnifiable Losses are asserted, before or after the Distribution Date . . . ."

4. Section 1.01 provides, "Indemnifiable losses [are] all losses, Liabilities, damages, claims, demands, judgments or settlements of any nature or kind, including all reasonable costs and expenses (legal, accounting or otherwise as such costs are incurred) relating thereto, suffered (and not actually reimbursed by insurance proceeds) by an Indemnitee, including any reasonable costs or expenses of enforcing any indemnity hereunder.

5. See Endnote 3.

6. Endnote 1 similarly applies to this item.

7. This claim will be eliminated upon assumption of the TSA as currently contemplated by the Settlement Agreement.

**SCHEDULE 1**

## SEALED AIR CORPORATION

### Listing of Cases for Bankruptcy Proof of Claim

| CASE | COURT | SERVED |
|---|---|---|
| Tchoryk v. A-Best Products Co., et al., Case No. CV02464187 D65 CM | Ct. Com. Pl., Cuyahoga County, Ohio | NA |
| Gambrell v. Asbestos Claims Management Corp., et al., Case No. CV 98-7550 | Cir. Ct. of Jefferson County, Alabama | 12/22/1998 |
| Priest v. W.R. Grace & Co.-Conn., DV-99-4 | Lincoln County Dist. Ct., 19th Jud. Dist., Mont. | 01/08/1999 |
| Lindholm, et al. V. W.R. Grace & Co., MDL 1376 (D. Mass.) | D. Mass. | 02/22/2000 |
| Grenfell v. W.R. Grace & Co., et al., MDL 875 (E.D. Pa.) | E.D. Pa. | 03/09/2000 |
| Tennison v. W.R. Grace & Co., et al., U.S. District Case No. CV 00-035-M-DWM | D. Mont., Missoula Div. | 03/09/2000 |
| Barbanti v. W.R. Grace & Co.-Conn., et al., Case No. 00201756-6 | Super.Ct., Spokane Cty., Wash. | 03/30/2000 |
| Price v. W. R. Grace & Co., et al., MDL 1376 (D. Mass.) | D. Mass. | 04/28/2000 |
| Goldstein, et al. v. W.R. Grace & Co., et al. MDL 1376 (D. Mass.) | D. Mass. | 05/08/2000 |
| Chakarian v. W.R. Grace & Co., MDL 875 (E.D. Pa.) | E.D. Pa. | 05/16/2000 |
| Hunter v. W.R. Grace & Co., et al., MDL 1376 (D. Mass.) | D. Mass | 07/24/2000 |
| Seibolts v. W.R. Grace & Co.-Conn., et al., MDL 875 | E.D. Pa. | 09/01/2000 |
| Groh v. W.R. Grace & Co.-Conn., et al., MDL 875 | E.D. Pa. | 09/01/2000 |
| Johnson v. W.R. Grace & Co.-Conn., et al., MDL 875 | E. D. Pa. | 09/01/2000 |

| CASE | COURT | SERVED |
|------|-------|--------|
| McMurchie v. W.R. Grace & Co.-Conn., et al., Case No. PI 00-015072 | Hennepin County Dist. Court, 4th Jud. Dist. Minn. | 10/18/2000 |
| Abner v. W.R. Grace & Co., et al., Case No. 315465 | Super. Ct., San Francisco County., Cal. | 11/27/2000 |
| Mihalovich v. W.R. Grace & Co.-Conn., et al., Case No. CS-01-0036-FVS | E. D. Wash. | 02/01/2001 |
| Simpson v. Owens-Corning f/k/a Owens-Corning Fiberglas Corp., et al., Case No. 1999-CI-16239 | Bexar County Dist. Ct., 37th Jud. Dist., Tex. | 02/23/2001 |
| Lerma v. AcandS, Inc., et al., Case No. 00-5898-F | Nueces County Dist. Ct., 214th Jud. Dist., Tex. | 03/02/2001 |
| Dunn v. Owens-Corning f/k/a Owens-Corning Fiberglas Corp., et al., Case No. 00-3385-A | Nueces County Dist. Ct., 28th Jud. Dist., Tex. | 03/02/2001 |
| Milner v. Owens-Corning f/k/a Owens-Corning Fiberglas Corp., et al., Case No. 00-4479-G | Nueces County Dist. Ct., 319th Jud. Dist., Tex. | 03/02/2001 |
| Brant v. W.R. Grace & Co.-Conn, et al., Case No. 01201043-8 | Super.Ct., Spokane Cty., Wash. | 03/02/2001 |
| Mumphrey v. AcandS, Inc., et al., Case No. 44929-A | County Ct. of Smith County at Law 2 | 03/05/2001 |
| Ashna v. AcandS, Inc., et al., Case No. 01-558-E | Nueces County Dist. Ct., 148th Jud. Dist., Tex. | 03/05/2001 |
| Bell v. Owens-Corning f/k/a Owens-Corning Fiberglas Corp., et al., Case No. 5376-B | Nueces County Dist. Ct., 117th Jud. Dist., Tex. | 03/20/2001 |
| Painter v. AP Green Indistries, Inc., et al., Case No. CC-99-08920-C | County Ct. of Dallas County at Law 3 | 03/23/2001 |
| Painter v. AP Green Industries, Inc., et al., Case No. DV01-01002-H | Dallas County Dist. Ct., 160th Jud. Dist., Tex. | 03/23/2001 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Eggert v. W.R. Grace & Co.-Conn, et al., Case No. CIV0 1-0121-N-EJL | D. Idaho | 03/26/2001 |
| Woodward v. Sealed Air Corporation (US), et al., Case No. 01-10547 PBS | D. Mass. | 04/03/2001 |
| Blankenship v. A-Best Products Company, et al., Case No. 01-433591-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/09/2001 |
| McDonald, et al. v. A-Best Products Company, et al., Case No. 01-434358-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/09/2001 |
| Snyder v. A-Best Products Company, et al., Case No. 01-433800-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/10/2001 |
| Blanton v. A-Best Products Company, et al., Case No. 01-433799-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/10/2001 |
| Brenskelle v. A-Best Products Company, et al., Case No. 01-433859-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/12/2001 |
| Christy, et al. v. A-Best Products Company, et al., Case No. 01-434225-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/16/2001 |
| Benshoff, et al. v. A-Best Products Company, et al., Case No. 01-434509-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/16/2001 |
| Zaranka, et al. v. A-Best Products Company, et al., Case No. 01-434221 | Ct. Com. Pl., Cuyahoga County, Ohio | 04/16/2001 |
| Alley v. A-Best Products Company, et al., Case No. 01-433801-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/16/2001 |
| Cody, et al. v. A-Best Products Company, et al., Case No. 01-434308-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/16/2001 |
| Black, et al. v. A-Best Products Company, et al., Case No. 01-437441-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/16/2001 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Hopkins, et al. v. A-Best Products Company, et al., Case No. 375292, et al. 6300 consolidated actions with separate case numbers. | Ct. Com. Pl., Cuyahoga County, Ohio | 04/16/2001 |
| Luscombe, et al. v. A-Best Products Company, et al., Case No. 01-434171-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/16/2001 |
| Davenport, et al. v. A-Best Products Company, et al., Case No. 01-434687-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/19/2001 |
| Brown, J. v. A-Best Products Company, et al., Case No. 01-434572-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/20/2001 |
| Vasil, et al. v. A-Best Products Company, et al., Case No. 01-434523-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/20/2001 |
| Abbadini, et al. v. A-Best Products Company, et al., Case No. 01-434871-CV | Ct. Com. Pl. Cuyahoga County, Ohio | 04/23/2001 |
| Lonchar, et al. v. A-Best Products Company, et al., Case No. 01-434821-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/23/2001 |
| Dye, et al. v. BF Goodrich Company, et al., Case No. 01-434737-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/23/2001 |
| Brown, M.J., et al. v. A-Best Products Company, et al., Case No. 434637-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 04/24/2001 |
| Jackson, et al. v. A-Best Products Company, et al., Case No. 01-435398-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/04/2001 |
| Ameduri, et al. v. A-Best Products Company, et al., Case No. 01-435033 | Ct. Com. Pl., Cuyahoga County, Ohio | 05/07/2001 |
| Robinson, et al. v. A-Best Products Company, et al., Case No. 01-435215-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/07/2001 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Hill, et al. v. A-Best Products Company, et al., Case No. 01-435083-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/08/2001 |
| Wilson, et al. v. A-Best Products Company, et al., Case No. 01-435265-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/08/2001 |
| Butler v. A-Best Products Company, et al., Case No. 01-436057-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/14/2001 |
| Abrom, et al. v. A-Best Products Company, et al., Case No. 01-435983-CV | C. P. Cuyahoga County, Ohio | 05/14/2001 |
| Thomas, et al. v. A-Best Products Company, et al., Case No. 01-435758-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/14/2001 |
| Fuzell, et al. v. A-Best Products Company, et al., Case No. 01-435588-435637 | Ct. Com. Pl., Cuyahoga County, Ohio | 05/14/2001 |
| Murray, et al. v. A-Best Products Company, et al., Case No. 01-435933-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/14/2001 |
| Rogers, et al. v. A-Best Products Company, et al., Case No. 01-435808-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/14/2001 |
| Grasse, et al. v. A-Best Products Company, et al., Case No. 01-435638-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/14/2001 |
| Dann, et al. v. A-Best Products Company, et al., Case No. 01-435448-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/15/2001 |
| Krutil, et al. v. A-Best Products Company, et al., Case No. 01-436599-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/16/2001 |
| Louis, et al. v. A-Best Products Company, et al., Case No. 01-437204-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/16/2001 |
| Hovanic, et al. v. A-Best Products Company, et al., Case No. 01-437552-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/16/2001 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Allen, et al. v. A-Best Products Company, et al., Case No. 01-437462-CV | Ct. Com. Pl. Cuyahoga County, Ohio | 05/16/2001 |
| Richardson, et al. v. A-Best Products Company, et al., Case No. 437006-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/16/2001 |
| Peel, et al. v. A-Best Products Company, et al., Case No. 01-437410-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/16/2001 |
| Bailey, et al. v. A-Best Products Company, et al., Case No. 01-437372-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/16/2001 |
| Horrison, et al. v. A-Best Products Company, et al., Case No. 437453-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/16/2001 |
| Greer, et al. v. A-Best Products Company, et al., Case No. 01-436771-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/17/2001 |
| Clements, et al. v. A-Best Products Company, et al., Case No. 01-436822-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/17/2001 |
| Hampton, et al. v. A-Best Products Company, et al., Case No. 01-437154-CV | Ct. Com. Pl., Cuyahoga County, Ohio | 05/17/2001 |
| Adams, et al. v. A-Best Products Company, et al., Case No. 01-436956-CV | Ct. Com. Pl. Cuyahoga County, Ohio | 05/17/2001 |
| White v. A-Best Products Company, et al. Case No. 01-438773-CV D97 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 05/23/2001 |
| White, et al. v. A-Best Products Co., et al., Case No. 01-438773-CV D97 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 05/23/2001 |
| Straub v. A-Best Products Co., et al., Case No. 01-439617-CV D93 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/04/2001 |

| CASE | COURT | SERVED |
|------|-------|--------|
| McCallum, et al. v. A-Best Products Co., et al., Case No. 01-439786-CV D94 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/05/2001 |
| Kelly, et al. v. A-Best Products Co., et al., Case No. 01-441196-CV D71 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/18/2001 |
| Barrett, et al. v. A-Best Products Co., et al., Case No. 01-441288-CV D94 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/18/2001 |
| Barnett, et al. v. A-Best Products Co., et al., Case No. 01-441440-CV D92 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/18/2001 |
| D'Andrea, et al. v. A-Best Products Co., et al., Case No. 01-441534-CV D71 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/18/2001 |
| Peters, et al. v. A-Best Products Co., et al., Case No. 01-441303-CV D92 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/18/2001 |
| Bartles, et al. v. A-Best Products Co., et al., Case No. 01-441643-CV D71 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/20/2001 |
| Walton, et al. v. A-Best Products Co., et al., Case No. | Ct. Com. Pl., Cuyahoga County, Ohio | 07/02/2001 |
| Gossard, et al. v. A-Best Products Co., et al., Case No. 01-442866-CV D70 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/20/2001 |
| Martin, et al. v. A-Best Products Co., et al., Case No. 01-443138-CV D70 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/20/2001 |
| Colonna, et al. v. A-Best Products Co., et al., Case No. 01-443289-CV D70 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/20/2001 |
| Alvarado, et al. v. A-Best Products Co., et al., Case No. 01-443307-CV D91 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/23/2001 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Formica, et al. v. A-Best Products Co., et al., Case No. 01-443539-CV D39 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/23/2001 |
| Porter, et al. v. A-Best Products Co., et al., Case No. 01-443793-CV D93 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/23/2001 |
| Brown, et al. v. A-Best Products Co., et al., Case No. 01-443678-CV D93 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/23/2001 |
| Christian, et al. v. A-Best Products Co., et al., Case No. 01-443330-CV D91 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/23/2001 |
| Greathouse, et al. v. A-Best Products Co., et al., Case No. 01-444829-CV D70 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/03/2001 |
| Mainguy, et al. v. A-Best Products Co., et al., Case No. 01-444830-CV D70 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/06/2001 |
| Frontz, et al. v. A-Best Products Co., et al., Case No. 01-444832-CV D70 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/06/2001 |
| Spence, et al. v. A-Best Products Co., et al., Case No. 01-444831-CV D70 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/06/2001 |
| Blackshear, et al. v. A-Best Products Co., et al., Case No. 01-444833-CV D70 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/08/2001 |
| Budd, et al. v. A-Best Products Co., et al., Case No. 01-444951-CV E15 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/14/2001 |
| Jessee, et al. v. A-Best Products Co., et al., Case No. 01-445212-CV D70 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/14/2001 |
| Hill, et al. v. A-Best Products Co., et al., Case No. 01-445624-CV D91 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/21/2001 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Schuler, et al. v. A-Best Products Co., et al., Case No. 01-445683-CV D92 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/22/2001 |
| Moore, et al. v. A-Best Products Co., et al., Case No. 01-445684-CV D89 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/23/2001 |
| Anzur, et al. v. A-Best Products Co., et al., Case No. 01-445936-CV D93 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/23/2001 |
| Kochemba, et al. v. A-Best Products Co., et al., Case No. 01-445881-CV D92 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/23/2001 |
| Bridges, et al. v. A-Best Products Co., et al., Case No. 01-445886-CV D91 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/27/2001 |
| Navolanic, et al. v. A-Best Products Co., et al., Case No. 01-446189-CV E13 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/27/2001 |
| Goodwin, et al. v. A-Best Products Co., et al., Case No. 01-445752-CV D91 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/27/2001 |
| Bryant, et al. v. A-Best Products Co., et al., Case No. 01-445882-CV D92 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/27/2001 |
| Miller, et al. v. A-Best Products Co., et al., Case No. 01-445883-CV D92 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/27/2001 |
| Basalyk, et al. v. A-Best Products Co., et al., Case No. 01-446196-CV E13 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/29/2001 |
| Daily, et al. v. A-Best Products Co., et al., Case No. 01-446190-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/29/2001 |
| Anderson, et al. v. A-Best Products Co., et al., Case No. 01-446190-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/30/2001 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Henderson, et al. v. A-Best Products Co., et al., Case No. 01-446808-CV D38 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 09/12/2001 |
| Talbott, et al. v. A-Best Products Co., et al., Case No. 01-447789-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 09/19/2001 |
| Logsdon, et al. v. A-Best Products Co., et al., Case No. 01-447763-CV D92 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 09/19/2001 |
| Pauff, et al. v. A-Best Products Co., et al., Case No. 01-447987-CV D92 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 09/24/2001 |
| Roth, et al. v. A-Best Products Co., et al., Case No. 01-447985-CV D92 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 09/24/2001 |
| Ellerbroch, et al. v. A-Best Products Co., et al., Case No. 01-447803-CV D70 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 09/24/2001 |
| Terkun, et al. v. A-Best Products Co., et al., Case No. 01-447985-CV D92 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 09/27/2001 |
| Patterson, et al. v. A-Best Products Co., et al., Case No. 01-447985-CV D92 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 09/27/2001 |
| Burns, et al. v. A-Best Products Co., et al., Case No. 01-448854-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/02/2001 |
| Barrett, et al. v. A-Best Products Co., et al., Case No. 01-449179-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/04/2001 |
| Knots, et al. v. A-Best Products Co., et al., Case No. 01-449250-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/12/2001 |
| Beal, et al. v. A.P. Green Services, Inc., et al., Case No. 01-449958-CV D88 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/15/2001 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Allred, et al. v. A-Best Products Co., et al., Case No. 01-449883-CV D70 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/15/2001 |
| Andrews, et al. v. A-Best Products Co., et al., Case No. 01-449981-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/17/2001 |
| Arrington, et al. v. A-Best Products Co., et al., Case No. 01-450324-CV D89 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/25/2001 |
| Quick, et al. v. A-Best Products Co., et al., Case No. 01-45053X-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/25/2001 |
| Rosie, et al. v. A-Best Products Co., et al., Case No. 01-451212-CV D83 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 11/08/2001 |
| Jenkins v. A-Best Products Co., et al., Case No. 01-452552-CV D83 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/03/2001 |
| Powell v. A-Best Products Co., et al., Case No. 01-452550-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/03/2001 |
| Simpson v. A-Best Products Co., et al., Case No. 01-452551-CV D83 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/03/2001 |
| Hampton v. A-Best Products Co., et al., Case No. 01-453097-CV D36 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/04/2001 |
| Stroub v. A-Best Products Co., et al., Case No. 01-453047-CV D36 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/04/2001 |
| Rumpf v. A.P. Green Services, Inc., et al., Case No. 01-453047-CV D36 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/05/2001 |
| Pearson v. A-Best Products Co., et al., Case No. 01-452876-CV D36 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/05/2001 |

| CASE | COURT | SERVED |
|---|---|---|
| Altiere v. A-Best Products Co., et al., Case No. 01-453740-CV D36 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/17/2001 |
| Janeczko v. A-Best Products Co., et al., Case No. 01-453988-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/17/2001 |
| Gifford v. A-Best Products Co., et al., Case No. 01-453790-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/17/2001 |
| Sop v. A-Best Products Co., et al., Case No. 01-453402-CV D36 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/17/2001 |
| Sherock v. A-Best Products Co., et al., Case No. 01-454336-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/17/2001 |
| Gaioch v. A-Best Products Co., et al., Case No. 01-454974-CV D66 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/17/2001 |
| Brennan v. A-Best Products Co., et al., Case No. 01-453938-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/17/2001 |
| Ackerman v. A-Best Products Co., et al., Case No. 01-454181-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/20/2001 |
| Phillips v. A-Best Products Co., et al., Case No. 01-454386-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/20/2001 |
| Dailey v. A-Best Products Co., et al., Case No. 01-454131-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/20/2001 |
| Jones v. A-Best Products Co., et al., Case No. 01-455033-CV D85 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/28/2001 |
| Liebhart v. A-Best Products Co., et al., Case No. 01-454889-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/28/2001 |

| <u>CASE</u> | <u>COURT</u> | <u>SERVED</u> |
|---|---|---|
| Chicone v. A-Best Products Co., et al., Case No. 01-454851-CV D36 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/28/2001 |
| Manos v. A-Best Products Co., et al., Case No. 01-454561-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/28/2001 |
| Toth v. A-Best Products Co., et al., Case No. 01-454701-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/28/2001 |
| Simmons v. A-Best Products Co., et al., Case No. 01-455521-CV D35 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/31/2001 |
| Pulver v. A-Best Products Co., et al., Case No. 01-456418-CV D66 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/14/2002 |
| Porter v. A-Best Products Co., et al., Case No. 01-456556-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/14/2002 |
| Koshock v. A-Best Products Co., et al., Case No. 01-456279-CV D66 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/14/2002 |
| Allison v. A-Best Products Co., et al., Case No. 01-455562-CV D66 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/14/2002 |
| Cockburn v. A-Best Products Co., et al., Case No. 01-455951-CV D36 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/14/2002 |
| Jackson v. A-Best Products Co., et al., Case No. 01-456279-CV D66 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/14/2002 |
| Hanel v. A-Best Products Co., et al., Case No. 01-456279-CV D66 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/14/2002 |
| Battle v. A-Best Products Co., et al., Case No. 01-455746-CV D83 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/14/2002 |



| CASE | COURT | SERVED |
|------|-------|--------|
| Little v. A-Best Products Co., et al., Case No. 01-455772-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/14/2002 |
| Tyree v. A-Best Products Co., et al., Case No. 01-456779-CV D88 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/14/2002 |
| Bales v. A-Best Products Co., et al., Case No. 01-455994-CV D88 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/14/2002 |
| Yoho v. A-Best Products Co., et al., Case No. 01-455730-CV D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/14/2002 |
| Allen v. A-Best Products Co., et al., Case No. 01-455719-CV D83 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/14/2002 |
| Sealed Air Corporation v. Fresenius Medical Care AG et. al., Case No. 600300/02 | Supreme Court of the State of New York, County of New York | 01/23/2002 |
| Burden v. A.P. Green Services, Inc., et al., Case No. 01-457806-CV D93 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/24/2002 |
| Zoul v. A.P. Green Services, Inc., et al., Case No. 01-457809-CV D93 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/24/2002 |
| Maiorano v. A.P. Green Services, Inc., et al., Case No. 01-456965-CV D85 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/24/2002 |
| Trexler v. A-Best Products Co., et al., Case No. 01-456952-CV D66 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/24/2002 |
| Holmes v. A-Best Products Co., et al., Case No. 01-455882-CV D66 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/24/2002 |
| Graham v. A.P. Green Services, Inc., et al., Case No. 01-456968-CV D86 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/24/2002 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Hart v. A.P. Green Services, Inc., et al., Case No. 01-456965-CV D85 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/24/2002 |
| Hall v. A-Best Products Co., et al., Case No. 01-455882-CV D66 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/24/2002 |
| Berry v. A-Best Products Co., et al., Case No. 01-455882-CV D66 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/24/2002 |
| Jones v. A-Best Products Co., et al., Case No. 02-458535-CV D83 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/01/2002 |
| Reed v. A-Best Products Co., et al., Case No. 02-458699-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/01/2002 |
| Lee v. A-Best Products Co., et al., Case No. 02-457953-CV D88 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/01/2002 |
| Watson v. A.P. Green Services, Inc., et al., Case No. 01-457724-CV D94 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/01/2002 |
| Scarbro v. A-Best Products Co., et al., Case No. 02-458749-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/01/2002 |
| McCray v. A-Best Products Co., et al., Case No. 02-458749-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/04/2002 |
| Golden v. A-Best Products Co., et al., Case No. 02-459276-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/04/2002 |
| Foster v. A.P. Green Services, Inc., et al., Case No. 01-457722-CV D94 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/04/2002 |
| Clements v. A-Best Products Co., et al., Case No. 02-458749-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/04/2002 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Phillips v. A.P. Green Services, Inc., et al., Case No. 02-458843-CV D94 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/04/2002 |
| Rose v. A-Best Products Co., et al., Case No. 02-458902-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/04/2002 |
| Ratkovich v. A-Best Products Co., et al., Case No. 02-459329-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/06/2002 |
| Noble v. A-Best Products Co., et al., Case No. 02-459734-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/08/2002 |
| Spence v. A-Best Products Co., et al., Case No. 02-459784-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/11/2002 |
| Johnson v. A-Best Products Co., et al., Case No. 02-459592-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/11/2002 |
| Gatrell v. A-Best Products Co., et al., Case No. 02-459379-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/11/2002 |
| Robertson v. A-Best Products Co., et al., Case No. 02-459112-CV D83 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/11/2002 |
| Prock v. A-Best Products Co., et al., Case No. 02-459957-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/11/2002 |
| Seafler v. A-Best Products Co., et al., Case No. 02-460007-CV D83 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/11/2002 |
| Crigger v. A-Best Products Co., et al., Case No. 02-459542-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/11/2002 |
| Wilson v. A-Best Products Co., et al., Case No. 02-460383-CV D88 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/20/2002 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Hall v. A-Best Products Co., et al., Case No. 02-460583-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/20/2002 |
| Hill v. A-Best Products Co., et al., Case No. 02-460333-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/20/2002 |
| Coulter v. A-Best Products Co., et al., Case No. 02-460939-CV D65 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/20/2002 |
| Bomba v. A-Best Products Co., et al., Case No. 02-460533-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/20/2002 |
| Hawkins v. A-Best Products Co., et al., Case No. 02-461078-CV D86 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/20/2002 |
| Pendleton v. A-Best Products Co., et al., Case No. 02-461079-CV D82 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/20/2002 |
| Burgess v. A-Best Products Co., et al., Case No. 02-461022-CV D82 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/20/2002 |
| Tidmore v. A-Best Products Co., et al., Case No. 02-460306-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/25/2002 |
| Letscher v. A-Best Products Co., et al., Case No. 02-461081-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/25/2002 |
| Grey v. A-Best Products Co., et al., Case No. 02-461022-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/25/2002 |
| Washington v. A-Best Products Co., et al., Case No. 02-460306-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/25/2002 |
| Nash v. A-Best Products Co., et al., Case No. 02-461587-CV D83 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/25/2002 |

| CASE | COURT | SERVED |
|---|---|---|
| Degirolamo v. A-Best Products Co., et al., Case No. 02-461203-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/26/2002 |
| Barbati v. A-Best Products Co., et al., Case No. 02-461382-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/26/2002 |
| Chmura v. A-Best Products Co., et al., Case No. 02-461575-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 02/26/2002 |
| Smith v. A-Best Products Co., et al., Case No. 02-462822-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 03/04/2002 |
| Adams v. A-Best Products Co., et al., Case No. 02-461532-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 03/04/2002 |
| Scarfo v. A-Best Products Co., et al., Case No. 02-461082-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 03/04/2002 |
| O'Bryant v. A-Best Products Co., et al., Case No. 02-460973-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 03/04/2002 |
| Babbitt v. A-Best Products Co., et al., Case No. 02-461382-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 03/04/2002 |
| Campola v. A-Best Products Co., et al., Case No. 02-461284-CV D65 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 03/04/2002 |
| Vassel v. A-Best Products Co., et al., Case No. 02-461083-CV D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 03/04/2002 |
| Jennings v. A-Best Products Co., et al., Case No. 02-461284-CV D65 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 03/04/2002 |
| Pierce v. A-Best Products Co., et al., Case No. 02-463661-CV D65 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 03/12/2002 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Shellito v. A-Best Products Co., et al., Case No. 02-463664-CV D85 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 03/12/2002 |
| Official Committee of Asbestos Personal Injury Claimants and Official Committee of Asbestos Property Damage Claimants of W.R. Grace & Co. v. Sealed Air Corporation et. al., Case No. 02-2210 | USDC, Disctrict of Delaware | 03/18/2002 |
| Short v. Firestone Tire & Rubber Co., et al., Case No. CV014444533 D79 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 03/21/2002 |
| Davis v. A-Best Products Co., et al., Case No. CV01444534 D55 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 03/26/2002 |
| Baumgartner v. AP Green Services Inc. Case No. CV02464011 D93 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 03/26/2002 |
| Pahut v. A-Best Products Co., et al., Case No. CV02466391 D78 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 04/16/2002 |
| Hill v. A-Best Products Co., et al., Case No. CV02466392 D99 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 04/16/2002 |
| King v. A-Best Products Co., et al., Case No. CV02466389 D99 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 04/16/2002 |
| Wysomierski v. A-Best Products Co., et al., Case No. CV01442040 D100 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 04/16/2002 |
| Rosier v. A-Best Products Co., et al., Case No. CV02466387 D81 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 04/16/2002 |
| Howard v. A-Best Products Co., et al., Case No. CV02466393 D30 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 04/17/2002 |
| Ogan v. A.W. Chesterson Co., et al., Case No. CV02467718 D84 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 05/02/2002 |

| CASE | COURT | SERVED |
|---|---|---|
| Asad v. A-Best Products Co., et al., Case No. CV02467115 D73 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 05/02/2002 |
| Drvenkar v. A-Best Products Co., et al., Case No. CV02468425 D80 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 05/06/2002 |
| Gordon v. A-Best Products Co., et al., Case No. CV02469706 D76 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 05/24/2002 |
| Gjavor v. A-Best Products Co., et al., Case No. CV02464054 D86 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/04/2002 |
| McBee v. A-Best Products Co., et al., Case No. CV02470611 D78 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/04/2002 |
| Garicia v. A-Best Products Co., et al., Case No. CV02466393 D30 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/04/2002 |
| Padden v. A.W. Chesterson Co., et al., Case No. CV02467718 D84 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/04/2002 |
| Riedel v. A-Best Products Co., et al., Case No. CV02471311 D78 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/07/2002 |
| Twitchell v. A-Best Products Co., et al., Case No. CV02471312 D28 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/07/2002 |
| Marchbank v. A-Best Products Co., et al., Case No. CV02464157 D65 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/10/2002 |
| Metzinger v. A-Best Products Co., et al., Case No. CV02471236 D78 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/10/2002 |
| Smith v. A-Best Products Co., et al., Case No. CV02464104 D86 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/10/2002 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Furkin v. A-Best Products Co., et al., <br> Case No. CV0246 D112 CM | Ct. Com. Pl., <br> Cuyahoga County, <br> Ohio | 06/10/2002 |
| Montgomery v. A-Best Products Co., et al., <br> Case No. CV02472454 D78 CM | Ct. Com. Pl., <br> Cuyahoga County, <br> Ohio | 06/14/2002 |
| Allen v. A-Best Products Co., et al., <br> Case No. CV02464203 D86 CM | Ct. Com. Pl., <br> Cuyahoga County, <br> Ohio | 06/17/2002 |
| Bower v. A-Best Products Co., et al., <br> Case No. CV02464172 D86 CM | Ct. Com. Pl., <br> Cuyahoga County, <br> Ohio | 06/17/2002 |
| Russell v. A-Best Products Co., et al., <br> Case No. CV02472451 D78 CM | Ct. Com. Pl., <br> Cuyahoga County, <br> Ohio | 06/17/2002 |
| Griffin v. A-Best Products Co., et al., <br> Case No. CV02464161 D86 CM | Ct. Com. Pl., <br> Cuyahoga County, <br> Ohio | 06/17/2002 |
| Ferenczy v. A-Best Products Co., et al., <br> Case No. CV02464253 D86 CM | Ct. Com. Pl., <br> Cuyahoga County, <br> Ohio | 06/19/2002 |
| Music v. A-Best Products Co., et al., <br> Case No. CV02472321 D78 CM | Ct. Com. Pl., <br> Cuyahoga County, <br> Ohio | 06/20/2002 |
| Howard v. A-Best Products Co., et al., <br> Case No. CV02472317 D78 CM | Ct. Com. Pl., <br> Cuyahoga County, <br> Ohio | 06/20/2002 |
| Kendall v. Consolidated Rail Corp., et al., <br> Case No. CV02472595 D62 CM | Ct. Com. Pl., <br> Cuyahoga County, <br> Ohio | 06/20/2002 |
| Sturgeon v. A-Best Products Co., et al., <br> Case No. CV02472315 D58 CM | Ct. Com. Pl., <br> Cuyahoga County, <br> Ohio | 06/20/2002 |
| Brayo v. A-Best Products Co., et al., <br> Case No. CV02464632 D82 CM | Ct. Com. Pl., <br> Cuyahoga County, <br> Ohio | 06/24/2002 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Elser v. A-Best Products Co., et al., Case No. CV02464532 D86 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/24/2002 |
| Glover v. A-Best Products Co., et al., Case No. CV02464494 D82 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/24/2002 |
| Moore v. A-Best Products Co., et al., Case No. CV02473328 D97 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/27/2002 |
| Hawkins v. A-Best Products Co., et al., Case No. CV02464667 D86 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/27/2002 |
| Guy A-Best Products Co., et al., Case No. CV0246898261 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/27/2002 |
| Barber v. A-Best Products Co., et al., Case No. CV02468962 D81 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/27/2002 |
| Morgan  A.W. Chesterson Co., et al., Case No. CV02473132 D89 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/27/2002 |
| Arledge v. A-Best Products Co., et al., Case No. CV02468929 D61 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 06/27/2002 |
| Frazier v. A-Best Products Co., et al., Case No. CV02464582 D86 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/01/2002 |
| McIntoch v. A-Best Products Co., et al., Case No. CV02473330 D78 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/01/2002 |
| Frisby v. A-Best Products Co., et al., Case No. CV02473329 D88 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/01/2002 |
| Hatcher v. A-Best Products Co., et al., Case No. CV02469042 D80 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/08/2002 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Chaney v. A-Best Products Co., et al., Case No. CV02469092 D77 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/08/2002 |
| Pisciotta v. Sealed Air Corp., et al. Case No. 02-114274 | Sup.Ct., New York County, New York | 07/08/2002 |
| Cash v. A-Best Products Co., et al. Case No. CV02469197 D99 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/08/2002 |
| Robinson v. A-Best Products Co., et al., Case No. CV02474041 D88 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/10/2002 |
| Adorno v. A-Best Products Co., et al., Case No. CV02475230 D76 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/24/2002 |
| Marvin v. A-Best Products Co., et al., Case No. CV02476391 D125 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 07/29/2002 |
| Weirauch v. A-Best Products Co., et al., Case No. CV02469200 D58 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/02/2002 |
| Bope v. A.W. Chesterson Co., et al., Case No. CV02475429 D90 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/02/2002 |
| Santore v. A-Best Products Co., et al., Case No. CV02475717 D78 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/19/2002 |
| Leephart v. A-Best Products Co., et al., Case No. CV02478543 D28 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/27/2002 |
| Fortune v. A-Best Products Co., et al., Case No. CV02478550 D77 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/27/2002 |
| Haring v. A-Best Products Co., et al., Case No. CV02478553 D77 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/29/2002 |
| Novak v. A-Best Products Co., et al., Case No. CV02478556 D95 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 08/30/2002 |

| CASE | COURT | SERVED |
|---|---|---|
| Kettner v. A-Best Products Co., et al., Case No. CV02479582 D88 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 09/06/2002 |
| Castillo v. A-Best Products Co., et al., Case No. CV02479583 D77 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 09/06/2002 |
| Meltz v. A-Best Products Co., et al., Case No. CV02479581 D77 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 09/06/2002 |
| Wiley v. A-Best Products Co., et al., Case No. CV02475757 D75 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 09/10/2002 |
| Cameron v. A-Best Products Co., et al., Case No. CV02475785 D78 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 09/10/2002 |
| Evans v. A-Best Products Co., et al., Case No. CV02478676 | Ct. Com. Pl., Cuyahoga County, Ohio | 09/27/2002 |
| Tyus v. A-Best Products Co., et al., Case No. CB02478776 | Ct. Com. Pl., Cuyahoga County, Ohio | 09/30/2002 |
| Jarrell v. A-Best Products Co., et al., Case No. 2478835 | Ct. Com. Pl., Cuyahoga County, Ohio | 10/04/2002 |
| Swoope v. A-Best Products Co., et al., Case No. CV02476789 | Ct. Com. Pl., Cuyahoga County, Ohio | 10/04/2002 |
| Feazell v. A-Best Products Co., et al., Case No. CB02478815 | Ct. Com. Pl., Cuyahoga County, Ohio | 10/04/2002 |
| Raymond v. A-Best Products Co., et al., Case No. CV02478947 | Ct. Com. Pl., Cuyahoga County, Ohio | 10/07/2002 |
| Banas v. A-Best Products Co., et al., Case No. CV02478847 | Ct. Com. Pl., Cuyahoga County, Ohio | 10/07/2002 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Mitchell v. A-Best Products Co., et al., Case No. CV02478897 | Ct. Com. Pl., Cuyahoga County, Ohio | 10/07/2002 |
| Holovach v. A-Best Products Co., et al., Case No. CV02478726 | Ct. Com. Pl., Cuyahoga County, Ohio | 10/07/2002 |
| Durko v. A-Best Products Co., et al., Case No. CV02482887 | Ct. Com. Pl., Cuyahoga County, Ohio | 10/09/2002 |
| Jones v. A-Best Products Co., et al., Case No. CV02483396 | Ct. Com. Pl., Cuyahoga County, Ohio | 10/11/2002 |
| Brown v. A-Best Products Co., et al., Case No. CV02483395 | Ct. Com. Pl., Cuyahoga County, Ohio | 10/11/2002 |
| Hasson v. A.W. Chesterson Co., et al., Case No. CV02483401 D84 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/15/2002 |
| Bogan v. A-Best Products Co., et al., Case No. CV02480484 D74 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/18/2002 |
| West v. A-Best Products Co., et al., Case No. CV02480584 D77 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/18/2002 |
| Row v. A-Best Products Co., et al., Case No. CV02480634 D74 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/18/2002 |
| Arntz v. A.W. Chesterson Co., et al., Case No. CV02482175 D87 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/21/2002 |
| Anderson v. A-Best Products Co., et al., Case No. CV02480754 D57 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/21/2002 |
| Coleman v. A-Best Products Co., et al., Case No. CV02480672 D77 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/21/2002 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Channels v. A-Best Products Co., et al., Case No. CV02480534 D77 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/21/2002 |
| Ohneck v. A-Best Products Co., et al., Case No. CV02484711 D26 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/30/2002 |
| Briggs v. A-Best Products Co., et al., Case No. CV02484708 D76 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/30/2002 |
| Dailey v. A-Best Products Co., et al., Case No. CV02483235 D83 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 10/30/2002 |
| Workman v. A.W. Chesterson Inc., et al., Case No. CV02484857 D73 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 11/01/2002 |
| McKee v. Pfizer, et al., Case No. CV02484712 D70 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 11/01/2002 |
| Hanshew v. Pfizer, et al., Case No. CV02484709 D76 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 11/01/2002 |
| Dunlap v. A.W. Chesterson Inc., et al., Case No. CV02485862 D74 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 11/15/2002 |
| Howieson v. A.W. Chesterson Inc., et al., Case No. CV02485862 D74 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 11/25/2002 |
| Yavornitzky v. A.W. Chesterson Inc., et al., Case No. CV02486823 D48 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/03/2002 |
| Rose v. A.W. Chesterson Inc., et al., Case No. CV02485862 D74 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/03/2002 |
| Tuttle v. A-Best Products Co., et al., Case No. CV02487577 D86 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/04/2002 |

| CASE | COURT | SERVED |
|---|---|---|
| Roswitha v. A.W. Chesterson Inc., et al., Case No. CV02487980 D72 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/06/2002 |
| Direnzo v. A.W. Chesterson Inc., et al., Case No. CV02488122 D75 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/12/2002 |
| Black et, al. v. Foster Wheeler Energy Corp., et. al., Case No. CV02489093 D55 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/27/2002 |
| Pennington v. Pfizer Inc., et. al., Case No. CV02489468 | Ct. Com. Pl., Cuyahoga County, Ohio | 12/27/2002 |
| Comley v. Foster Wheeler Energy Corp., et. al., Case No. CV02489467 D55 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/27/2002 |
| Lopresti v. A.W. Chesterton, Inc., et, al., Case No. CV02489640 D75 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/27/2002 |
| Hubbard v. A.W. Chesterton, Inc., et. al., Case No. CV02487150 D75 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 12/27/2002 |
| Kovach, et. al. v. Foster Wheeler Energy Corp.,et. al., Case No. CV02489138 D55 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/06/2003 |
| Aukland v. A.W. Chesterton, Inc., et. al., Case No. CV03491334 D70 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/21/2003 |
| Wesley v. Pfizer, Inc. et. al., Case No. CV03491332 D75 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/21/2003 |
| Novak v. A.W. Chesterton, Inc., et. al., Case No. CV03491335 D75 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/21/2003 |
| Freeman et. al. v. A.W. Chesterton, Inc., et. al., Case No. CV02490547 D26 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/21/2003 |

| CASE | COURT | SERVED |
|---|---|---|
| Yozwiak v. A.W. Chesterton, Inc., et. al., Case No. CV03491448 D75 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/21/2003 |
| Indorf et. al. v. A.W. Chesterton, Inc., et. al., Case No. CV02490645 D72 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/21/2003 |
| Delmark et. al. v. A.W. Chesterton, Inc., et. al., Case No. CV02490597 D26 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/21/2003 |
| Shellhouse v. A.W. Chesterton, Inc., et. al., Case No. CV03491337 D60 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/21/2003 |
| Polk v. A.W. Chesterton, Inc., et. al., Case No. CV03491765 D76 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/28/2003 |
| Abbruzzese et. al. v. A-Best Products Co., et. al., Case No. CV02490660 D82 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/28/2003 |
| Fountain et. al. v. A-Best Products Co., et. al., Case No. CV02490710 D82 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/29/2003 |
| Kimble et. al. v. A.W. Chesterton, Inc., et. al., Case No. CV02490649 D75 CM | Ct. Com. Pl., Cuyahoga County, Ohio | 01/29/2003 |
| Olson v. A-Best Products Company, et al., Case No. CV02490760 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/03/2003 |
| Wilkinson v. A-Best Products Company, et al., Case No. CV02490810 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/03/2003 |
| Musgrave et al. v. A.W. Chesterton, Inc., et al., Case No. CV03492077 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/07/2003 |
| Carlon et al. v. A. W. Chesterton, Inc., et al., Case No. CV03491977 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/07/2003 |

| CASE | COURT | SERVED |
|------|-------|--------|
| Cook et al. v. A.W. Chesterton, Inc., et al., Case No. CV 03492027 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/07/2003 |
| Villio et al. v. A. W. Chesterton, Inc., et al., Case No. CV 03492222 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/19/2003 |
| West et al. v. A. W. Chesterton, Inc., et al., Case No. CV03492176 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/19/2003 |
| Pawlus et al. v. Pfizer, Inc., et al., Case No. CV03492127 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/19/2003 |
| Owens v. A. W. Chesterton, Inc., et al., Case No. CV03492261 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/20/2003 |
| Baker v. A. W. Chesterton, Inc., et al., Case No. CV03492272 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/20/2003 |
| Colosimo v. A. W. Chesterton, Inc., et al., Case No. CV03494153 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/21/2003 |
| Null v. Foster Wheeler Energy Corporation, et al., Case No. CV03492372 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/24/2003 |
| Roth, et al., v. A. W. Chesterton, Inc., et al., Case No. CV03492322 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/24/2003 |
| Abston, et al., v. A. W. Chesterton, Inc., et al., Case No. CV03492417 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/24/2003 |
| Burch, et al., v. A. W. Chesterton, Inc., et al., Case No. CV0394804 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/27/2003 |
| Adkins, et al., v Pfizer, Inc., et al., Case No. CF03492455 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/27/2003 |

| CASE | COURT | SERVED |
|---|---|---|
| Sheridan, et al., v. A. W. Chesterton, Inc., et al., Case No. CV03494851 | Ct. Com. Pl., Cuyahoga County, Ohio | 02/28/2003 |

30

**SCHEDULE 2a**

## Schedule 2a

## Summary of Bills for Sealed Air Corp. (Client No. 007490)

| Matter No. | Bill No. | Bill Amount |
|---|---|---|
| 2 | 773027 | $11,829.00 |
| 2 | 786982 | $5,770.00 |
| 2 | 796499 | $135.00 |
| 2 | 796498 | $6,241.00 |
| 2 | 819644 | $124,318.00 |
| 2 | 826670 | $118,355.00 |
| 2 | 831425 | $64,153.00 |
| 2 | 844743 | $166,214.00 |
| 2 | 856656 | $48,647.00 |
| 2 | 854206 | $67,261.00 |
| 2 | 861074 | $91,428.00 |
| 2 | 857411 | $301,980.00 |
| 2 | 862582 | $75,658.00 |
| 2 | 871954 | $26,785.00 |
| 2 | 871184 | $2,776.00 |
| MATTER 00002 SUBTOTAL | | $1,111,550.00 |
| 5 | 826791 | $36,180.00 |
| 5 | 834105 | $10,304.00 |
| 5 | 841580 | $5,799.00 |
| 5 | 844748 | $44,700.00 |
| 5 | 851731 | $3,808.00 |
| 5 | 856661 | $18,028.00 |
| 5 | 854208 | $18,535.00 |
| 5 | 862588 | $88,279.00 |

735872.01-New York S7A

| Matter No. | Bill No. | Bill Amount |
|---|---|---|
| 5 | 871955 | $87,354.00 |
| 5 | 871186 | $134,037.00 |
| 5 | 873455 | $145,609.00 |
| 5 | 876157 | $133,790.00 |
| 5 | 883794 | $89,370.00 |
| 5 | 884400 | $78,147.00 |
| 5 | 892404 | $85,892.00 |
| 5 | 897749 | $75,905.00 |
| 5 | 897752 | $85,515.00 |
| 5 | 907289 | $126,532.00 |
| 5 | 907304 | $189,110.00 |
| 5 | 915011 | $165,065.00 |
| 5 | 918434 | $182,846.00 |
| 5 | 915916 | $205,097.00 |
| 5 | 922000 | $519,865.00 |
| 5 | 928585 | $1,115,277.00 |
| 5 | 931653 | $1,327,562.00 |
| 5 | 940177 | $569,599.00 |
| 5 | 939520 | $1,355,452.00 |
| 5 | 942136 | $383,778.00 |
| 5 | 948126 | $120,894.00 |
| **MATTER 00005 SUBTOTAL** | | **$7,402,329.00** |
| 6 | 848681 | $1,771.00 |
| 6 | 851732 | $33,455.00 |
| 6 | 856662 | $8,650.00 |
| 6 | 859729 | $26,171.00 |

| Matter No. | Bill No. | Bill Amount |
|---|---|---|
| 6 | 857412 | $29,355.00 |
| 6 | 862592 | $1,698.00 |
| 6 | 871957 | $850.00 |
| **MATTER 00006 SUBTOTAL** | | **$101,950.00** |
| 7 | 871958 | $10,119.00 |
| **MATTER 00007 SUBTOTAL** | | **$10,119.00** |
| Goldwein & Assoc. Fees and Expenses | | |
| **TOTAL (for matters 00002,00005,00006,00007)** | | **$8,625,948.00** |
| | | |
| | | |

3

**SCHEDULE 2b**

| Name | Date | Invoice | Amount | |
|---|---|---|---|---|
| Acu-Image, Inc. | 2/21/02 | 9815 | $27,148.75 | $27,148.75 |
| | | | | |
| Alix Partners, LLC | July, 2002 | 13454203-1 | 11,306.88 | |
| | August, 2002 | 13454357-1 | 82,626.11 | |
| | September, 2002 | 13454945-1 | 12,629.45 | 106,562.44 |
| | | | 106,562.44 | |
| | | | | |
| Automated Legal Solutions, Inc. | 4/26/02 | 1383 | 3,851.85 | |
| | 5/30/02 | 1388 | 938.23 | |
| | 10/9/02 | 1406 | 450.98 | 5,241.06 |
| | | | 5,241.06 | |
| | | | | |
| Aztec Messenger Service | 6/20/02 | A16911 | 55.00 | |
| | 9/9/02 | A18462 | 65.00 | 120.00 |
| | | | 120.00 | |
| | | | | |
| Bates White Ballentine | March, 2002 | CEB642 | 9,583.75 | |
| | April, 2002 | CEB658 | 64,478.23 | |
| | May, 2002 | CEB699 | 127,605.43 | |
| | June, 2002 | CEB707 | 218,610.45 | |
| | July, 2002 | CEB766 | 237,298.93 | |
| | August, 2002 | CEB803 | 470,110.84 | |
| | September, 2002 | CEB848 | 299,782.68 | |
| | October, 2002 | CEB895 | 103,036.12 | |
| | December, 2002 | CEB940 | 281,111.54 | 1,811,617.97 |
| | | | 1,811,617.97 | |
| | | | | |
| Boverie, Jackson, Busby & La Fera | 8/17/02 | 220947 | 1,279.66 | |
| | 8/14/02 | 220949 | 25.00 | |
| | 8/28/02 | 220992 | 1,825.12 | 3,129.78 |
| | | | 3,129.78 | |
| | | | | |
| Brief Encounters, Inc. | 8/7/02 | 20020000283 | 55.00 | 55.00 |
| | | | | |
| Catuogno Court Reporting & Sten-Tel | 8/6/02 | 23061 | 83.82 | |
| | 8/15/02 | 23248 | 1,338.60 | 1,422.42 |
| | | | 1,422.42 | |
| | | | . | |
| | | | | |
| Charles River Associates, Inc. | 9/15/02 | 15319 | 318,200.05 | |
| | Aug.-Oct. 2002 | 15656 | 160,420.09 | |
| | | 16102 | 2,573.31 | 481,193.45 |
| | | | 481,193.45 | |
| | | | | |
| Clicks | 7/29/02 | 86366 | 20,593.52 | |
| | 8/12/02 | 87003 | 1,337.56 | |
| | 8/22/02 | 87244 | 8,514.61 | |
| | 8/26/02 | 87288 | 6,719.36 | |
| | 8/28/02 | 87349 | 22,019.05 | |
| | 9/10/02 | 87530 | 8,772.13 | 67,956.23 |

| Name | Date | Invoice | Amount | |
|------|------|---------|--------|---|
| | | | 67,956.23 | |
| | | | | |
| David Feldman & Associates | 8/5/02 | 905274 | 816.40 | |
| | | 905684 | 1,115.97 | |
| | | 905761 | 2,118.15 | 4,050.52 |
| | | | 4,050.52 | |
| | | | | |
| Doris O. Wong Associates, Inc. | 7/31/02 | 61971 | 1,667.65 | |
| | 8/6/02 | 62028 | 2,009.85 | |
| | 8/7/02 | 62045 | 2,999.15 | |
| | 8/16/02 | 62157 | 1,111.60 | 7,788.25 |
| | | | 7,788.25 | |
| | | | | |
| Cleeton Davis Court Reporters | 8/19/02 | KMD-2307 | 1,307.90 | 1,307.90 |
| | | | | |
| Esquire Deposition Service | 9/11/02 | 166796ENY | 1,822.00 | |
| | 9/16/02 | 125594ECG | 364.59 | |
| | 10/23/02 | 171048ENY | 1,088.10 | 3,274.69 |
| | | | 3,274.69 | |
| | | | | |
| Eric Stallard, ASA, MAAA | Jan. - April, 2002 | | 4,274.18 | |
| | May - Aug., 2002 | | 18,782.63 | 23,056.81 |
| | | | 23,056.81 | |
| | | | | |
| Fried, Frank, Harris, Shriver & Jacobson | August, 2002 | 334127 | 10,698.21 | |
| | July, 2002 | 95569 | 4,562.37 | |
| | September , 2002 | 334784 | 27,534.44 | |
| | October, 2002 | 335092 | 287.47 | 43,082.49 |
| | | | 43,082.49 | |
| | | | | |
| Goldin Associates, L.L.C. | May, 2001 | | 150,000 | |
| | June, 2001 | | 150,000 | |
| | July, 2001 | | 150,000 | |
| | August, 2001 | | 150,000 | |
| | September, 2001 | | 150,000 | |
| | October, 2001 | | 150,000 | |
| | October, 2001 | | 845 | |
| | November, 2001 | | 76,242.90 | |
| | November, 2001 | | 75,397.58 | |
| | January, 2002 | | 65,000 | |
| | February, 2002 | | 65,000 | |
| | March, 2002 | | 203,269.55 | |
| | April, 2002 | | 200,147.62 | |
| | May, 2002 | | 100,246.49 | |
| | June, 2002 | | 100,259.43 | |
| | July, 2002 | | 250,228.94 | |
| | 8/15/02 | | 100,000.00 | |
| | August, 2002 | | 275,000.00 | |
| | November, 2002 | | 86,280.60 | |
| | December, 2002 | | 61,524.97 | |

| Name | Date | Invoice | Amount | |
|------|------|---------|--------|---|
| | Januaary, 2003 | | 768.58 | 2,560,211.98 |
| | | | 2,560,211.98 | |
| | | | | |
| Houlihan Lokey Howard & Zukin | January, 2003 | 23808 | 24,546.57 | 24,546.57 |
| | | | | |
| Jane Rose Reporting Inc. | August, 2002 | 1055922 | 1,628.65 | |
| | August, 2002 | 1055942 | 2,130.85 | |
| | August, 2002 | 1055949 | 613.6 | |
| | August, 2002 | 1055954 | 2,079.45 | |
| | August, 2002 | 1055959 | 2,255.35 | |
| | September, 2002 | 1056145 | 1,412.60 | |
| | October, 2002 | 1056167 | 2,268.90 | |
| ● | October, 2002 | 1056170 | 2,009.50 | |
| | October, 2002 | 1056199 | 1,793.60 | |
| | October, 2002 | 1056194 | 2,178.85 | |
| | October, 2002 | 1056189 | 710.60 | |
| | October, 2002 | 1056185 | 713.55 | |
| | October, 2002 | 1056205 | 1,732.75 | |
| | October, 2002 | 1056178 | 506.00 | |
| | October, 2002 | 1056173 | 808.70 | |
| | October, 2002 | 1056210 | 2,478.75 | |
| | October, 2002 | 1056215 | 1,943.00 | 27,264.70 |
| | | | 27,264.70 | |
| | | | | |
| Lazard Freres | 9/1/ 2002-2-2003 | | 3,053,978.43 | 3,053,978.43 |
| | | | | |
| Lex Business Solutions | July, 2002 | 106101431A | 6,196.10 | |
| | July, 2002 | 106101502A | 1,439.57 | |
| | July, 2002 | 106101503A | 4,236.98 | |
| | July, 2002 | 106101518B | 10,851.43 | |
| | July, 2002 | 106101519A | 5,628.33 | |
| | July, 2002 | 1061015477A | 1,300.00 | |
| | July, 2002 | 106101596A | 7,879.75 | |
| | July, 2002 | 106101582A | 769.97 | |
| | July, 2002 | 106101631A | 1,898.46 | |
| | July, 2002 | 106101650A | 612.13 | |
| | July, 2002 | 112101283A | 3,164.40 | |
| | July, 2002 | 106101713B | 3,117.29 | |
| | July, 2002 | 106101732A | 3,117.29 | |
| | August, 2002 | 106101956B | 5,076.38 | |
| | August, 2002 | 117100084A | 6,187.47 | |
| | August, 2002 | 106101989C | 5,976.65 | |
| | August, 2002 | 106102063A | 2,627.12 | |
| | August, 2002 | 106102080A | 454.27 | |
| | August, 2002 | 106102164A | 780.69 | |
| | August, 2002 | 106102194B | 2,056.33 | |
| | August, 2002 | 106102200C | 1,115.56 | |
| | September, 2002 | 106102324A | 1,978.34 | |
| | September, 2002 | 106102419A | 10,613.93 | |
| | September, 2002 | 106102444A | 520.44 | |

| Name | Date | Invoice | Amount | |
|---|---|---|---|---|
| | September, 2002 | 106102426A | 1,386.22 | |
| | September, 2002 | 106102471A | 591.32 | |
| | September, 2002 | 106102472A | 203.34 | |
| | September, 2002 | 106102501A | 2,140.61 | |
| | September, 2002 | 106102502A | 3,467.99 | 95,388.36 |
| | | | 95,388.36 | |
| | | | | |
| Lyon Reporting, Inc. | July, 2002 | 9383 | 1,311.40 | |
| | July, 2002 | 9385 | 1,156.40 | 2,467.80 |
| | | | 2,467.80 | |
| | | | | |
| Maupin Taylor & Ellis, P.A. | July, 2002 | 145128 | 4,022.95 | 4,022.95 |
| | | | | |
| Merrill Communications, LLD | 9/7/02 | 152022 | 532.98 | 532.98 |
| | | | | |
| New Jersey Lawyers Service | September, 2002 | 8156A | 64.95 | 64.95 |
| | | | | |
| New Jersey Legal Copy | August 20, 2002 | 36013 | 787.58 | |
| | August 20, 2002 | 36121 | 2,556.46 | 3,344.04 |
| | | | 3,344.04 | |
| | | | | |
| RLS Solutions (Ridgeway) | August 5, 2002 | 45-022883 | 976.28 | |
| | August 8, 2002 | 45-022922 | 1,259.80 | |
| | August 8, 2002 | 45-022925 | 7,294.49 | |
| | August 9, 2002 | 45-022934 | 7,046.39 | |
| | August 9, 2002 | 45-022940 | 1,391.71 | |
| | August 31, 2002 | 45-023103 | 2,488.76 | |
| | August, 2002 | 45-022931 | 54,399.28 | |
| | August 20, 2002 | 45-023007 | 33,776.59 | |
| | September 13, 2002 | 45-023179 | 1,060.91 | |
| | September 13, 2002 | 45-023180 | 1,207.77 | 110,901.98 |
| | | | 110,901.98 | |
| | | | | |
| Roux Associates | Bills June, 2002 | 39017 | 72,508.23 | |
| | July, 2002 | 39370 | 150,505.93 | |
| | August, 2002 | 39516 | 348,443.41 | |
| | August, 2002 | 39710 | 77,271.60 | |
| | September, 2002 | 40128 | 187,867.07 | |
| | October, 2002 | 40446 | 3,276.52 | |
| | February, 2003 | 42034 | 151.20 | 840,023.96 |
| | | | 840,023.96 | |
| | | | | |
| Silver Reporting Services, Inc. | August 15, 2002 | N910 | 1,153.79 | 1,153.79 |
| | | | | |
| Stikeman Elliott LLP | January 15, 2003 | 4255337 | 543.64 | 543.64 |
| | | | | |
| TrialGraphix | June 30, 2002 | 2126929 | 713.64 | |
| | November 30, 3002 | 2127605 | 446.53 | 1,160.17 |
| | | | 1,160.17 | |

| Name | Date | Invoice | Amount | |
|------|------|---------|--------|--|
| | | | | |
| Trico Document Solutions LLC | July 29, 2002 | 123 | **1,936.75** | 1,936.75 |
| | | | | |
| Uniscribe | September, 2002 | | **2,612.56** | 2,612.56 |
| | | | | |
| Veritext, LLC | July, 2002 | 93957 | 1,726.20 | |
| | July, 2002 | 93884 | 1,072.40 | |
| | July, 2002 | 93052 | 740.60 | |
| | Augus, 2002 | 96797 | 806.55 | |
| | September, 2002 | 98517 | 888.40 | 5,234.15 |
| | | | **5,234.15** | |
| | | | | |
| Vincent Varallo Associates, Inc. | July 22, 2002 | 95421 | 438.30 | |
| | July 30, 2002 | 95561 | 1,068.90 | 1,507.20 |
| | | | **1,507.20** | |
| | | | | |
| | | | | |
| | | | **TOTAL** | **9,322,596.82** |

**SCHEDULE 3**

## IT/Telecommunications Separation Expense

In accordance with the IT separation agreement entered into shortly after the transaction closing, Sealed Air incurred the costs detailed below. The budget was established in an exchange of letters between Bill Hickey and Brian McGowan in June of 1998, ending with a letter dated June 4, 1998 from Bill Hickey to Brian McGowan, summarizing the agreement.

Sealed Air has incurred the following expenses in this category:

|       | IT      | Telecomm | Total        |
|-------|---------|----------|--------------|
| US    |         | 199,643  | 199,643      |
| EU    | 11,340  | 31,900   | 43,240       |
| AP    | 198,509 | 131,470  | 329,979      |
| LA    | 40,641  | 87,979   | 128,620      |
| Total |         |          | $701,482     |
|       |         |          | x   .63      |
|       |         |          | $441,933.66  |

**Exhibit A**

DISTRIBUTION AGREEMENT

by and among

W. R. GRACE & CO.

W. R. GRACE & CO.-CONN.,

and

GRACE SPECIALTY CHEMICALS, INC.

(to be renamed "W. R. Grace & Co.")

Dated as of March 30, 1998

TABLE OF CONTENTS

Page

I.    Definitions.......................................    2

        1.01   General...............................    2
        1.02   References to Time....................   17

II.   Certain Transactions Prior to the
      Distribution Date.............................   18

        2.01   Transfer of Packco Assets; Assumption
               of Packco Liabilities................   18
        2.02   Certain Foreign Transfers.............   20
        2.03   Certificate of Incorporation;
               By-laws; Rights Plan..................   23
        2.04   Issuance of Stock.....................   23
        2.05   Other Agreements; Shared Facilities ...   23
        2.06   Financing.............................   24
        2.07   Grace Recapitalization................   26
        2.08   Registration and Listing..............   27
        2.09   Grace and New Grace Boards............   28
        2.10   Transfers Not Effected Prior to the
               Distribution; Transfers Deemed
               Effective as of the Distribution
               Date..................................   28
        2.11   Intercompany Accounts and
               Distribution Payments.................   29

III.  The Distribution...............................   29

        3.01   Record Date and Distribution Date.....   29
        3.02   The Agent.............................   29
        3.03   Delivery of Share Certificates to the
               Agent.................................   29
        3.04   The Distribution......................   30

IV.   Survival and Indemnification...................   30

        4.01   Survival of Agreements................   30
        4.02   Indemnification.......................   30
        4.03   Procedures for Indemnification for
               Third-Party Claims...................   31
        4.04   Remedies Cumulative...................   33

TABLE OF CONTENTS (continued)

V.     Certain Additional Covenants....................    34

       5.01   Notices to Third Parties...............    34
       5.02   Licenses and Permits...................    34
       5.03   Intercompany Agreements................    34
       5.04   Guarantee Obligations..................    35
       5.05   Further Assurances.....................    36
       5.06   Environmental Claims Cooperation.......    36

VI.    Access to Information..........................    36

       6.01   Provision of Corporate Records.........    36
       6.02   Access to Information..................    37
       6.03   Production of Witnesses................    39
       6.04   Retention of Records...................    39
       6.05   Confidentiality........................    40
       6.06   Cooperation with Respect to
              Government Reports and Filings.........    40

VII.   No Representations or Warranties...............    41

       7.01   No Representations or Warranties.......    41

VIII.  Miscellaneous.................................    42

       8.01   Conditions to Obligations..............    42
       8.02   Use of Grace Name and Mark.............    43
       8.03   Complete Agreement.....................    44
       8.04   Expenses...............................    44
       8.05   Governing Law..........................    45
       8.06   Notices................................    45
       8.07   Amendment and Modification.............    46
       8.08   Successors and Assigns; No Third-Party
              Beneficiaries..........................    46
       8.09   Counterparts...........................    46
       8.10   Interpretation.........................    46
       8.11   Severability...........................    47
       8.12   References; Construction...............    47
       8.13   Termination............................    47
       8.14   SAC Reasonable Consent.................    47

SIGNATURES.........................................    48

Schedules to Distribution Agreement


Exhibit A        Form of Employee Benefits Allocation Agreement

-ii-

TABLE OF CONTENTS (continued)

Exhibit B          Form of Tax Sharing Agreement

Exhibit C          Form of New Grace Certificate of Incorporation

Exhibit D          Form of New Grace Bylaws

Exhibit E          Form of New Grace Preferred Share Purchase
                   Rights Plan

-iii-

DISTRIBUTION AGREEMENT

        This DISTRIBUTION AGREEMENT (this "Agreement"), dated
as of March 30, 1998, by and among W. R. Grace & Co., a
Delaware corporation ("Grace"), W. R. Grace & Co.-Conn., a Con-
necticut corporation and a wholly owned subsidiary of Grace
("Grace-Conn.") and Grace Specialty Chemicals, Inc., a Delaware
corporation and a wholly owned subsidiary of Grace ("New
Grace").

RECITALS

        A.  *The Merger Agreement*.  Grace and Sealed Air Cor-
poration, a Delaware corporation ("SAC"), have entered into an
Agreement and Plan of Merger, dated as of August 14, 1997 (the
"Merger Agreement"), pursuant to which, at the Effective Time
(as defined therein), a wholly owned subsidiary of Grace will
merge with and into SAC, with SAC being the surviving corpora-
tion (the "Merger"), and Grace being renamed "Sealed Air Corpo-
ration".

        B.  *The Distribution Agreement*.  This Agreement and
the Other Agreements (as defined herein) set forth certain
transactions that SAC has required as a condition to its will-
ingness to consummate the Merger, and the purpose of this
Agreement is to make possible the Merger by divesting Grace of
the businesses and operations to be conducted by New Grace and
its subsidiaries, including Grace-Conn.

        C.  *The Contribution*.  Prior to the Effective Time,
and subject to the terms and conditions set forth in this
Agreement, Grace intends to cause the transfer to a wholly
owned subsidiary of Grace-Conn. ("Packco") of certain assets
and liabilities of Grace and its subsidiaries predominantly
related to the Packaging Business (the "Contribution"), as con-
templated by this Agreement and the Other Agreements.

        D.  *Financing*.  It is the intention of the parties
hereto that, prior to the Distribution:  (i) Grace and/or Pack-
co shall enter into new financing arrangements and shall make,
or cause to be made, the New Grace Capital Contribution (as
defined herein); and (ii) the parties shall cooperate with one
another with respect to the foregoing.

        E.  *The Distribution*.  Following the Contribution and
prior to the Effective Time, subject to the conditions set
forth in this Agreement, (i) the capital stock of Packco will

be distributed to Grace (the "Intragroup Spinoff"), (ii) the capital stock of Grace-Conn. will be contributed to New Grace and (iii) all of the issued and outstanding shares of the common stock of New Grace (together with the New Grace Rights, "New Grace Common Stock") will be distributed on a pro rata basis (the "Distribution") to the holders as of the Record Date of the common stock of Grace, par value $.01 per share ("Grace Common Stock"), other than shares held in the treasury of Grace.

F.    *The Recapitalization.*  Following the Distribution and immediately prior to the Effective Time, Grace intends to consummate the Recapitalization in which each holder of a share of Grace Common Stock shall hold, immediately thereafter, the Per Share Common Consideration and the Per Share Preferred Consideration.

G.    *Intention of the Parties.*  It is the intention of the parties (i) to this Agreement that, for United States federal income tax purposes, the Contribution and associated transactions shall qualify as a tax-free transaction under Section 351 of the Internal Revenue Code of 1986, as amended (the "Code"), the Contribution and the Intragroup Spinoff (and associated transactions) shall qualify as a tax-free transaction under Sections 355 and 368 of the Code, the Distribution and associated transactions shall qualify as a tax-free transaction under Sections 355 and 368 of the Code, and the Recapitalization shall be tax-free to Grace and its shareholders under the Code, and (ii) to this Agreement and the Merger Agreement that the Merger shall qualify as a "reorganization" within the meaning of Section 368 of the Code and the Merger will be tax free under the Code to Grace, SAC and their respective shareholders.

NOW, THEREFORE, in consideration of the premises, and of the representations, warranties, covenants and agreements set forth herein, the parties hereto hereby agree as follows:

ARTICLE I

DEFINITIONS

SECTION 1.01  General.  As used in this Agreement, the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

*Adjusted Foreign Transfer Taxes:*  as defined in Section 2.02(c) hereof.

- 2 -

*Affiliate:* with respect to any specified Person, a Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person; *provided, however, that,* for purposes of this Agreement, no member of either Group shall be deemed to be an Affiliate of any member of the other Group.

*Agent:* the distribution agent to be appointed by Grace to distribute the shares of New Grace Common Stock pursuant to the Distribution.

*Agreement:* as defined in the preamble to this Agreement.

*Asset:* any and all assets and properties, tangible or intangible, including, without limitation, the following: (i) cash, notes and accounts and notes receivable (whether current or non-current); (ii) certificates of deposit, banker's acceptances, stock, debentures, evidences of indebtedness, certificates of interest or participation in profit-sharing agreements, collateral-trust certificates, preorganization certificates or subscriptions, transferable shares, investment contracts, voting-trust certificates, fractional undivided interests in oil, gas or other mineral rights, puts, calls, straddles, options and other securities of any kind; (iii) intangible property rights, inventions, discoveries, know-how, United States and foreign patents and patent applications, trade secrets, confidential information, registered and unregistered trademarks, service marks, service names, trade styles and trade names and associated goodwill; statutory, common law and registered copyrights; applications for any of the foregoing, rights to use the foregoing and other rights in, to and under the foregoing; (iv) rights under leases, contracts, licenses, permits, distribution arrangements, sales and purchase agreements, other agreements and business arrangements; (v) real estate and buildings and other improvements thereon; (vi) leasehold improvements, fixtures, trade fixtures, machinery, equipment (including transportation and office equipment), tools, dies and furniture; (vii) office supplies, production supplies, spare parts, other miscellaneous supplies and other tangible property of any kind; (viii) computer equipment and software; (ix) raw materials, work-in-process, finished goods, consigned goods and other inventories; (x) prepayments or prepaid expenses; (xi) claims, causes of action, choses in action, rights under express or implied warranties, rights of recovery and rights of setoff of any kind; (xii) the right to receive mail, payments on accounts receivable and other communications; (xiii) lists of customers, records pertaining to customers and accounts, personnel records, lists and records pertaining to customers, suppliers and agents, and books, ledgers, files and

- 3 -

business records of every kind; (xiv) advertising materials and
other printed or written materials; (xv) goodwill as a going
concern and other intangible properties; (xvi) employee con-
tracts, including any rights thereunder to restrict an employee
from competing in certain respects; and (xvii) licenses and
authorizations issued by any governmental authority.

*Benefits Agreement:* the Employee Benefits Allocation
Agreement to be entered into prior to the Distribution between
Grace and New Grace, substantially in the form of Exhibit A
hereto, with such changes as are acceptable to Grace, New
Grace, Grace-Conn. and SAC.

*Business:* the New Grace Business or the Packaging
Business.

*Code:* as defined in the Recitals to this Agreement.

*Contribution:* as defined in the Recitals to this
Agreement.

*Debt Costs:* as defined in Section 2.06(b) hereof.

*Deemed Foreign Tax Credits:* as defined in Section
2.02(c) hereof.

*Deemed Repatriations:* as defined in Section 2.02(c)
hereof.

*Distribution:* as defined in the Recitals to this
Agreement.

*Distribution Date:* the date as of which the Dis-
tribution shall be effected, to be determined by, or under the
authority of, the Board of Directors of Grace consistent with
this Agreement and the Merger Agreement.

*Effective Time:* as defined in the Merger Agreement.

*Environmental Law:* as defined in the Merger Agree-
ment.

*Excess Short-Term Payables:* as defined in Section
2.02(c) hereof.

*Excess Shares:* as defined in Section 2.07(b) hereof.

*Exchange Act:* the Securities Exchange Act of 1934,
as amended, together with the rules and regulations promulgated
thereunder.

- 4 -

*Exchange Agent:* the exchange agent to be retained in connection with effecting the Recapitalization (which may also be the Exchange Agent with respect to the Merger and/or the Agent).

*Foreign Exchange Rate:* with respect to any currency other than United States dollars as of any date, the rate on such date at which such currency may be exchanged for United States dollars as quoted in *The Wall Street Journal.*

*Foreign New Grace Subsidiaries:* as defined in the Tax Sharing Agreement.

*Foreign NOLs:* as defined in Section 2.02(c) hereof.

*Foreign Packco Subsidiaries:* as defined in the Tax Sharing Agreement.

*Foreign Tax Credits:* as defined in Section 2.02(c) hereof.

*Foreign Transfer Taxes:* as defined in Section 2.02(c) hereof.

*Foreign Transfers:* as defined in Section 2.02(a) hereof.

*Grace:* as defined in the preamble to this Agreement.

*Grace Certificate of Incorporation:* as defined in the Merger Agreement.

*Grace Common Stock:* as defined in the Recitals to this Agreement.

*Grace-Conn.:* as defined in the preamble to this Agreement.

*Grace-Conn. Assets:* all of the Assets owned by Grace or its Subsidiaries immediately prior to the Distribution, other than any Packco Assets.

*Grace-Conn. Liabilities:* all of the Liabilities of Grace or its Subsidiaries immediately prior to the Distribution, other than Packco Liabilities.

*Grace-Conn. Public Debt:* (i) the outstanding indebtedness of Grace-Conn. under its 8.0% Notes Due 2004, 7.4% Notes Due 2000 and 7.75% Notes Due 2002 (other than any such indebtedness owned by Grace-Conn. or another member of the New Grace

Group) and (ii) with respect to any indebtedness described in clause (i), any amendments, modifications, refinancings, extensions, renewals, refundings or replacements of, or indebtedness exchanged for, such indebtedness which in each case is guaranteed by Grace (other than any such indebtedness owned by Grace-Conn. or another member of the New Grace Group).

*Grace Credit Agreement:* the credit agreement or other financing agreements or arrangements to be entered into by Grace and/or Packco prior to the Distribution Date to fund the New Grace Capital Contribution and fees and expenses of Packco (or Grace) in connection with the transactions contemplated hereby and to provide Packco with working capital.

*Group:* the Packco Group or the New Grace Group.

*Indemnifiable Losses:* all losses, Liabilities, damages, claims, demands, judgments or settlements of any nature or kind, including all reasonable costs and expenses (legal, accounting or otherwise as such costs are incurred) relating thereto, suffered (and not actually reimbursed by insurance proceeds) by an Indemnitee, including any reasonable costs or expenses of enforcing any indemnity hereunder.

*Indemnifying Party:* a Person who or which is obligated under this Agreement to provide indemnification.

*Indemnitee:* a Person who or which may seek indemnification under this Agreement.

*Indemnity Payment:* an amount that an Indemnifying Party is required to pay to or in respect of an Indemnitee pursuant to Article IV.

*Information:* all records, books, contracts, instruments, computer data and other data and information.

*Intragroup Spinoff:* as defined in Recital E to this Agreement.

*Joint Proxy Statement:* as defined in the Merger Agreement.

*Liabilities:* all debts, liabilities and obligations, whether absolute or contingent, matured or unmatured, liquidated or unliquidated, accrued or unaccrued, known or unknown, whenever arising, and whether or not the same would properly be reflected on a balance sheet.

*Litigation Matters*:  actual, threatened or future
litigations, investigations, claims or other legal matters that
have been or may be asserted against, or otherwise adversely
affect, Grace and/or New Grace (or members of either Group).

*Merger*:  as defined in the Recitals to this Agree-
ment.

*Merger Agreement*:  as defined in the Recitals to this
Agreement.

*Net Benefit Amount*:  the amount (whether positive or
negative) equal to (i) minus (ii), where (i) is the sum of the
U.S. Plan Assets and the Foreign Plan Assets (each as defined
below) and (ii) is the sum of the U.S. Benefit Plan Liabilities
and the Foreign Benefit Plan Liabilities (each as defined be-
low).

    "U.S. Plan Assets" means the aggregate fair market
value, as of the Distribution Date, of the assets of the
Union Retirement Plan (as defined in the Benefits Agree-
ment) and the assets that will be transferred to the
Packco Hourly Non-Union Retirement Plan (as defined in the
Benefits Agreement) pursuant to Section 4.01(d) of the
Benefits Agreement, in each case as reasonably determined
by Actuarial Sciences Associates ("ASA").  "Foreign Plan
Assets" means the aggregate fair market value, as of the
Distribution Date, of the assets that will be, pursuant to
the Foreign Plans Agreement (as defined in the Benefits
Agreement), transferred from a Noninsured Foreign Pension
Plan (as defined in the Benefits Agreement) that is a New
Grace Benefit Plan (as defined in the Benefits Agreement)
(a "Transferring New Grace Foreign Plan") to a Packco Ben-
efit Plan or retained by a Noninsured Foreign Pension Plan
that is a Packco Benefit Plan (a "Retained Grace Foreign
Plan"), in each case as reasonably determined by the Local
Actuary (as defined in the Benefits Agreement) for the
relevant Transferring New Grace Foreign Plan or Retained
Grace Foreign Plan.

    "U.S. Benefit Plan Liabilities" means the sum of
the Accrued Benefit Obligation, calculated in accordance
with FAS 87 ("ABO"), for (i) benefits of Packco Partici-
pants (as defined in the Benefits Agreement) under the
Union Retirement Plan and (ii) benefits of Packco Partici-
pants under the Hourly Non-Union Retirement Plan (as de-
fined in the Benefits Agreement) that are assumed by the
Packco Hourly Non-Union Retirement Plan pursuant to Sec-
tion 4.01(d) of the Benefits Agreement.  "Foreign Benefit
Plan Liabilities" means the greater of (i) the sum of the

ABOs for the Assumed Foreign Benefits (as defined below)
plus $10 million and (ii) the sum of the Projected Benefit
Obligations, calculated in accordance with FAS 87 ("PBO"),
for the Assumed Foreign Benefits.  The "Assumed Foreign
Benefits" means the aggregate amount of the retirement
benefits of Packco Participants under each Noninsured For-
eign Pension Plan that are, pursuant to the Foreign Bene-
fits Agreement, either assumed by a Packco Benefit Plan
from a Transferring New Grace Foreign Plan or retained by
a Retained Grace Foreign Plan.

        The determination of U.S. Benefit Plan Liabilities
shall be made by ASA in accordance with the actuarial and other
assumptions set forth on Schedule 1.01(f).  The determination
of the ABOs and PBOs for the Assumed Foreign Benefits shall in
each case be made by AON Consulting ("AON") as of the Distribu-
tion Date based upon the actuarial and other assumptions used
by AON to determine the ABO or PBO (as applicable) of the rel-
evant Transferring New Grace Foreign Plan or Retained Grace
Foreign Plan for purposes of Grace's fiscal 1996 year-end fi-
nancial disclosures, if such ABO or PBO is reported thereon,
which actuarial and other assumptions are set forth on Schedule
1.01(f), provided, in the case of the assumptions relating to
each Noninsured Foreign Pension Plan, that such assumptions are
reasonable.  To the extent that the ABO or PBO for a particular
Transferring New Grace Foreign Plan or Retained Grace Foreign
Plan was not so reported, such assumptions shall be reasonable
assumptions developed by AON in the manner most typically used
by AON to develop assumptions for determining ABO or PBO for
FAS 87 purposes for substantially similar plans in the appli-
cable jurisdiction.

        ASA, the Local Actuaries and AON (collectively, the
"Actuaries") shall initially make the determinations called for
by this definition on a good-faith estimated basis not later
than December 31, 1997 or such other date as the parties hereto
shall request.  In making such initial determinations, the lo-
cal Actuaries shall be entitled to rely upon the advice of
Grace and New Grace with respect to the anticipated terms and
conditions of the Foreign Plans Agreement (if it has not yet
been signed) and the manner in which its terms and conditions
will be implemented.  Final determinations shall be made by the
Actuaries as and when the asset transfers and assumptions of
liabilities contemplated by the Foreign Plans Agreement and
Section 4.01(d) of the Benefits Agreement are completed, and
the New Grace Capital Contribution shall be adjusted as neces-
sary to reflect the Net Benefit Amount as so finally deter-
mined.  Grace and New Grace agree to cooperate in supplying the
Actuaries with all information reasonably requested by them in
connection with making such determinations, including, without

- 8 -

limitation, information concerning Plan participants, assets and benefits. Grace, New Grace and SAC shall be entitled to review and comment on the Actuaries' analyses as the Actuaries are in the process of making their determinations.

New Grace: as defined in the preamble to this Agreement.

New Grace Business: all of the businesses and operations conducted by Grace and its Subsidiaries at any time, whether prior to, on or after the Distribution Date, other than the Packaging Business.

New Grace Capital Contribution: the capital contribution, distribution or other transfer to be received by Grace-Conn. at or shortly prior to the Distribution, in the aggregate amount of:

(a)   $1,200,000,000;

plus (b)   the aggregate amount of cash held by Packco or any Packco Subsidiaries immediately prior to the Distribution;

minus (c)   the amount by which

(i)   the aggregate amount of (x) withholding Taxes that would be imposed by foreign jurisdictions on a deemed distribution to Packco by each Foreign Packco Subsidiary immediately following the Distribution, of an amount of cash equal to the excess of (I) the amount of cash held by such Foreign Packco Subsidiary immediately prior to the Distribution over (II) the sum of (A) the amount of debt that may be repaid without penalty plus current accrued but unpaid Taxes of such Subsidiary as of the Distribution Date and (B) Excess Short-Term Payables of such Subsidiary; provided, however, that such amount of cash shall be determined taking into account the principles, as applied to Packco, set forth in the proviso in Section 2.02(c)(v), and (y) Taxes that would be imposed by the United States or any political subdivision thereof in excess of the Foreign Tax Credits of Packco in respect of Taxes paid by Packco or deemed paid by Packco as a result of such deemed distributions of such cash;

- 9 -

*exceeds* (ii)  the aggregate amount of Packco Repatriation
                Tax Costs;

*plus*  (d)  the Net Benefit Amount; and

*plus*  (e)  the aggregate amount of Transaction Costs, if
             any, payable by Grace to New Grace pursuant to
             Section 8.04 of this Agreement, as of the Dis-
             tribution Date.

        *New Grace Common Stock:* as defined in the Recitals
to this Agreement.

        *New Grace Group:* New Grace, Grace-Conn. and the oth-
er New Grace Subsidiaries.

        *New Grace Group Excess Cash:* as defined in Section
2.02(c) hereof.

        *New Grace Indemnitees:* New Grace, each Affiliate of
Grace-Conn. (other than members of the Packco Group) and each
of their respective Representatives and each of the heirs, ex-
ecutors, successors and assigns of any of the foregoing.

        *New Grace Repatriation Tax Costs:* as defined in Sec-
tion 2.02(c) hereof.

        *New Grace Rights:* the preferred share purchase
rights of New Grace.

        *New Grace Subsidiaries:* all direct and indirect Sub-
sidiaries of Grace, including foreign subsidiaries of Grace-
Conn. to be formed pursuant to the Tax Sharing Agreement or
Section 2.02 hereof, other than Packco and any Packco Subsid-
iary.

        *Newco Common Stock:* the shares of common stock, par
value $.10 per share, of Grace.

        *Newco Convertible Preferred Stock:* the Series A Con-
vertible Preferred Stock of Grace, par value $.10 per share,
the terms of which are described in Exhibit E to the Merger
Agreement.

        *NYSE:* New York Stock Exchange, Inc.

        *Other Agreements:* the Benefits Agreement, the Tax
Sharing Agreement, an insurance procedures agreement, an intel-
lectual property license agreement, an interim services agree-
ment, the shared facilities agreements and the other agreements

- 10 -

entered into or to be entered into in connection with the Dis-
tribution as contemplated by Article II of this Agreement.

*Packaging Business*: all of the worldwide packaging
businesses, operations and investments conducted or owned by
Grace and its Subsidiaries at any time, whether prior to, on or
after the Distribution Date, including Cryovac® flexible plas-
tic packaging systems, Omicron® rigid plastic cups and tubs for
dairy foods and Formpac® foam trays for supermarket and insti-
tutional food service, *provided* that the Packaging Business
shall not include the worldwide businesses, operations and in-
vestments at or prior to the Distribution Date conducted or
owned by Grace and its Subsidiaries of its container business
group (which was, until 1996, operated as a separate business
unit known as Grace Container Products and any extensions of
such former business unit since such time and through the Dis-
tribution Date), including, without limitation, Darex® con-
tainer sealants and coatings.

*Packco*: as defined in the Recitals to this Agree-
ment.

*Packco Assets*: collectively and except as otherwise
provided in any of the Other Agreements, (i) all of the right,
title and interest immediately prior to the time of the Distri-
bution of Grace and its Subsidiaries in all Assets that are
predominantly used or held for use in or predominantly relating
to or to the extent arising from the Packaging Business; (ii)
the rights to use shared Assets as provided in Article II;
(iii) all other Assets of Grace and its Subsidiaries to the
extent specifically assigned to or retained by any member of
the Packco Group pursuant to this Agreement or any Other Agree-
ment; (iv) the capital stock of Packco and all Packco Subsid-
iaries; and (v) the Assets set forth on Schedule 1.01(a)
hereto; *provided* that

(a)  all cash and marketable securities held by
any member of the Packco Group immediately prior to
the Distribution shall be Grace-Conn. Assets;

(b)  intellectual property rights shall be Pack-
co Assets in the form and to the extent provided in
Section 2.01(d);

(c)  with respect to leased or owned real prop-
erty included in the Packco Assets that is not used
exclusively by the Packaging Business, Packco Assets
shall include only real property used or held for use
in the Packaging Business as of the Distribution Date

- 11 -

and shall not include any vacant or unoccupied prop-
erty otherwise owned or leased by Grace or any of its
Subsidiaries (except in the case of vacant or unoc-
cupied property (I) on a site that is engaged pre-
dominantly in the Packaging Business, to provide a
reasonable buffer area for such operations, to the
extent practicable or (II) that is used or held for
use in the Packaging Business);

(d)   other than as provided herein or in the
Other Agreements, Packco Assets shall not include any
general corporate or corporate service operations of
Grace conducted in its Boca Raton, Florida headquar-
ters and the other locations set forth on Schedule
1.01(b) hereto;

(e)   all right, title and interest of Grace and
its Subsidiaries in the real property identified on
Schedule 1.01(a) shall be Packco Assets; and

(f)   Packco Assets shall not include (I) the
Woburn, MA Grace facility or the Scuffletown Rd.,
South Carolina facility previously used by the Pack-
aging Business (or any Assets located at or relating
to such facilities); (II) Assets relating to any di-
vested business or product line of Grace or any of
its Subsidiaries (including rights to payment and
indemnification thereunder, but Packco Assets shall
include rights to indemnification relating to amounts
paid by the Packco Group pursuant to clause (a)(II)
of the definition of Packco Liabilities); (III) any
interim service or tolling agreements entered into in
connection with any divestiture by Grace or any of
its Subsidiaries prior to the Distribution Date; and
(IV) the Assets set forth on Schedule 1.01(c).

*Packco Group:*  Grace, Packco and the Packco Subsid-
iaries.

*Packco Group Excess Cash:*  as defined in Section
2.02(c) hereof.

*Packco Indemnitees:*  Grace, Packco, each Affiliate of
Packco and each of their respective Representatives and each of
the heirs, executors, successors and assigns of any of the
foregoing.

*Packco Liabilities:*  collectively, and in each case
except to the extent otherwise provided in any Other Agreement,
(i) all Liabilities of Grace and its Subsidiaries to the extent

- 12 -

relating to or arising from the Packaging Business or the
Packco Assets; (ii) all Liabilities of Grace and its Subsid-
iaries to the extent assigned to or assumed by Grace and Packco
under this Agreement or any Other Agreement; (iii) all Liabil-
ities of Grace and/or Packco under the Grace Credit Agreement;
and (iv) all Liabilities set forth on Schedule 1.01(d) hereto,
*provided* that Packco Liabilities shall not, in any event, in-
clude:

      (a)  Liabilities of Grace and its Subsidiaries
(I) arising under any Environmental Law relating to
any facility or Asset that was used or held for use
in the Packaging Business prior to but not on or af-
ter the Distribution Date (including formerly owned
or leased facilities and former offsite disposal fa-
cilities) or (II) relating to any business or product
line that was part of, or any facility or Asset that
was used or held for use in, the Packaging Business
that, in each case, has been divested prior to the
Distribution Date; *provided* that, except as otherwise
provided below, 25% of such Liabilities described in
this clause not to exceed $10 million in the aggre-
gate shall be Packco Liabilities;

      (b)  Liabilities arising under any Environmental
Law relating to or arising from the Woburn, MA Grace
facility or the Scuffletown Road, SC facility;

      (c)  Liabilities for any indebtedness, other
than indebtedness under the Grace Credit Agreement
and indebtedness to unaffiliated persons outstanding
on the date hereof;

      (d)  Liabilities of Grace or any of its Subsid-
iaries relating to or arising from any interim ser-
vice or tolling agreements entered into in connection
with any divestiture by Grace or any of its Subsid-
iaries;

      (e)  Liabilities, whether such Liabilities re-
late to events, occurrences or circumstances occur-
ring or existing, or whether such Liabilities arise,
before, on or after the Distribution Date, relating
to asbestos or asbestos-containing materials manufac-
tured and/or sold (collectively, "<u>Asbestos Activi-
ties</u>") by Grace, Grace-Conn. or any of their respec-
tive Subsidiaries, affiliates or predecessors (but
this clause shall not include such Liabilities to the
extent relating to Asbestos Activities, if any, con-
ducted after the Distribution Date of any member of

- 13 -

the Packco Group or any of their Affiliates after the Distribution Date);

(f)  Liabilities relating to or arising from any violation or alleged violation on or prior to the Distribution Date by Grace, Grace-Conn. or any of their respective Subsidiaries, affiliates or predecessors of any federal, state or foreign securities laws; and

(g)  Liabilities relating to or arising from any breach or alleged breach of fiduciary duties by any director or executive officer of Grace, Grace-Conn. or any of their respective Subsidiaries, affiliates or predecessors prior to the Distribution Date.

*Packco Repatriation Tax Costs:*  as defined in Section 2.02(c) hereof.

*Packco Subsidiaries:*  all direct and indirect Subsidiaries of Grace to be transferred to or formed by Packco in connection with the Contribution or the Foreign Transfers (including any such Subsidiary to be formed pursuant to the Tax Sharing Agreement or Section 2.02).

*Per Share Common Consideration:*  the shares (or fraction of a share) of Newco Common Stock issuable in the Recapitalization per share of Grace Common Stock outstanding as of the Record Date, such amount to be determined by dividing (a) the amount equal to (I) 40,895,000, increased by the product, if any, of (x) 1.7027 and (y) the net increase in outstanding Sealed Air Common Shares between August 14, 1997 and the Distribution Date, minus (II) the Net Option Number, by (b) the aggregate number of shares of Grace Common Stock outstanding as of the Record Date, the result being rounded to the nearest one-thousandth (or, in the event there is no nearest number, rounded up to the next one-thousandth).  "Net Option Number" means

(i)  the aggregate number of shares of Newco Common Stock into which all outstanding options to purchase shares of Grace Common Stock outstanding as of the Distribution Date and held by Packco Employees are or may be exercisable (whether or not then exercisable) immediately after the Effective Time (such number calculated as provided in the Benefits Agreement, the "Newco Options"), multiplied by the amount by which:

- 14 -

(I)   the average of the arithmetic mean
      between the highest and lowest sales
      prices of a share of Newco Common
      Stock on the New York Stock Exchange
      Composite Tape on each of the five
      trading days beginning on the ex-
      dividend date for the Distribution
      (the "SAC Stock Price")

exceeds (II)  the weighted average per-share exer-
              cise price for the Newco Options, cal-
              culated as provided in the Benefits
              Agreement;

divided by (ii) the SAC Stock Price.

Fractional shares otherwise issuable to a Grace shareholder
shall be treated as provided in Section 2.07(b).  In the event
that shares of Grace Common Stock are issued between the Record
Date and the Effective Time, including pursuant to the exercise
of stock options granted by Grace (but not including issuances
in the Recapitalization), such Consideration shall be appro-
priately adjusted.

    Per Share Preferred Consideration: the shares (or
fraction of a share) of Newco Convertible Preferred Stock issu-
able in the Recapitalization per share of Grace Common Stock
outstanding as of the Record Date, such amount to be calculated
by dividing 36,000,000 by the aggregate number of shares of
Grace Common Stock outstanding as of the Record Date, the re-
sult being rounded to the nearest one-thousandth (or, in the
event there is no nearest number, rounded up to the next one-
thousandth).  Fractional shares otherwise issuable to a Grace
shareholder shall be treated as provided in Section 2.07(b).
In the event that shares of Grace Common Stock are issued be-
tween the Record Date and the Effective Time, including pursu-
ant to the exercise of stock options granted by Grace (but not
including issuances in the Recapitalization), such Consider-
ation shall be appropriately adjusted.

    Person: an individual, a partnership, a joint ven-
ture, a corporation, a limited liability company, a trust, an
unincorporated organization or a government or any department
or agency thereof.

    Pre-Distribution Period: as defined in the Tax Shar-
ing Agreement.

    Privileged Information: with respect to either
Group, Information regarding a member of such Group, or any of

- 15 -

its operations, Assets or Liabilities (whether in documents or stored in any other form or known to its employees or agents) that is or may be protected from disclosure pursuant to the attorney-client privilege, the work product doctrine or other applicable privileges, that a member of the other Group may come into possession of or obtain access to pursuant to this Agreement or otherwise.

*Recapitalization:* as defined in Section 2.07 hereof.

*Record Date:* the close of business on the date to be determined by the Board of Directors of Grace as the record date for determining shareholders of Grace entitled to receive the Distribution and the Recapitalization, which date shall be the day of, or the business day immediately preceding the day of, the Effective Time.

*Registration Statements:* a registration statement on Form 10 (or, if such form is not appropriate, the appropriate form pursuant to the Securities Act) to be filed by New Grace with the SEC to effect the registration of the New Grace Common Stock and the New Grace Rights pursuant to the Exchange Act (or, if applicable, pursuant to the Securities Act) and the registration statement to be filed by Grace with the SEC in connection with the Recapitalization and the Merger pursuant to the Securities Act.

*Representative:* with respect to any Person, any of such Person's directors, officers, employees, agents, consultants, advisors, accountants, attorneys and representatives.

*SAC:* as defined in the Recitals to this Agreement.

*SEC:* the Securities and Exchange Commission.

*Securities Act:* the Securities Act of 1933, as amended, together with the rules and regulations promulgated thereunder.

*Severance Costs:* as defined in Section 8.04 hereof.

*Shared Facilities:* other than Shared Regional Headquarters, any production, manufacturing, sales office or other facility (whether owned or leased) of Grace or any of its subsidiaries in which operations of both the Packaging Business and the New Grace Business are conducted as of the Distribution Date, including the facilities listed on Schedule 1.01(e) hereto.

- 16 -

*Shared Regional Headquarters:* regional headquarters of Grace in which services are provided, as of the Distribution Date, to both the Packaging Business and the New Grace Business.

*Subsidiary:* with respect to any specified Person, any corporation or other legal entity of which such Person or any of its subsidiaries controls or owns, directly or indirectly, more than 50% of the stock or other equity interest entitled to vote on the election of members to the board of directors or similar governing body.

*Subsidiary Excess Cash:* as defined in Section 2.02(c) hereof.

*Tax:* as defined in the Tax Sharing Agreement.

*Tax Benefit:* as defined in the Tax Sharing Agreement.

*Tax Sharing Agreement:* the Tax Sharing Agreement to be entered into prior to the Distribution between Grace and New Grace, substantially in the form of Exhibit B hereto, with such changes as are acceptable to Grace, New Grace, Grace-Conn. and SAC.

*Third-Party Claim:* any claim, suit, derivative suit, arbitration, inquiry, proceeding or investigation by or before any court, any governmental or other regulatory or administrative agency or commission or any arbitration tribunal asserted by a Person who or which is neither a party hereto nor an Affiliate of a party hereto.

*Transaction Agreements:* as defined in the Merger Agreement.

*Transaction Costs:* as defined in Section 8.04 hereof.

*Withholding Taxes:* as defined in Section 2.02(c) hereof.

SECTION 1.02  References to Time.  All references in this Agreement to times of the day shall be to New York City time.

ARTICLE II

CERTAIN TRANSACTIONS PRIOR TO THE DISTRIBUTION DATE

SECTION 2.01  Transfer of Packco Assets; Assumption of Packco Liabilities.  (a)  Prior to the Distribution Date but subject to Section 2.02, Grace shall transfer, or cause to be transferred to Packco or, at Packco's option, to a Packco Subsidiary effective as of the Distribution Date all of the Packco Assets.  Immediately prior to the Distribution, the capital stock of Packco shall be distributed to Grace.  Grace shall also transfer, or cause to be transferred, the capital stock of any Subsidiary such that, as of the Distribution Date, the Packco Subsidiaries shall be wholly owned (except for shares held by directors or officers to comply with applicable law) by a member of the Packco Group and the New Grace Subsidiaries shall be wholly owned (except for shares held by directors or officers to comply with applicable law) by a member of the New Grace Group.  Effective as of the Distribution Date, the transfers described in this Section will result in Packco or another member of the Packco Group obtaining all of the rights, title and interests of Grace and its Subsidiaries in the Packco Assets, subject to Sections 2.05 and 2.10.

(b)  Effective as of the Distribution Date and subject to Section 2.02, Packco shall, or shall cause a Packco Subsidiary to, assume, pay, perform, and discharge in due course all of the Packco Liabilities.

(c)  Separation of Assets.  The Packco Assets and Grace-Conn. Assets (including Assets that are, or are contained in, the Shared Facilities) shall, to the extent reasonably practicable (including taking into account the costs of any actions taken), be severed, divided or otherwise separated from each other so that a member of the respective Group will own and control their respective Assets as of the Distribution Date, provided that neither Grace nor New Grace shall be obligated to make significant expenditures to effect such separation prior to the Distribution Date.  Actions taken and expenditures incurred to separate the Shared Facilities shall be subject to the agreement of Grace, New Grace and SAC.  Such separation may include subdivision of real property, subleasing or other division of shared buildings or premises and allocation of shared working capital, equipment and other Assets.  Such separation shall be effected in a manner that does not unreasonably disrupt either the Packaging Business or the New Grace Business and minimizes, to the extent practicable, current and future costs (and losses of tax or other economic benefits) of the respective Businesses.  With respect to any Asset that cannot reasonably be separated or otherwise allocated as

- 18 -

provided above, (i) all right, title and interest of Grace and
its Subsidiaries shall be allocated to the Group as to which
such Asset is predominantly used or held for use or predomi-
nantly relates and (ii) the other Group shall have a right to
use such Assets in its Business in a manner consistent with
past practice for a period which is coterminous with the life
of the Asset described in (i) (and the coextensive obligation
to pay its allocable share of any costs or expenses related to
such Asset pursuant to the last sentence of this Section
2.01(c)).  To the extent the separation of Assets cannot be
achieved in a reasonably practicable manner, the parties will
enter into appropriate arrangements regarding the shared Asset.
Any costs related to the use of a shared Asset that is not sep-
arated as of the Distribution Date shall be allocated, with
respect to the two-year period beginning immediately after the
Distribution Date, based on the methodology historically used
by Grace, and, for any period thereafter, using such reasonable
manner as agreed by New Grace and Grace.

     (d)  *Intellectual Property.*  Notwithstanding the
foregoing or anything else contained herein, any intellectual
property rights of Grace or any of its Subsidiaries that are
Packco Assets shall be licensed to or transferred to Packco, as
the case may be, as follows.  With respect to intellectual
property rights used or held for use solely in connection with
the Packaging Business, Packco shall have full ownership (to
the extent of Grace's rights therein) of such rights.  Except
as otherwise provided in Schedule 2.01(d), with respect to in-
tellectual property rights that are used or held for use in
both the Packaging Business and the New Grace Business, title
to such rights shall be owned by the New Grace Group and the
Packco Group shall have an exclusive, worldwide, fully paid,
perpetual, royalty-free license to use the intellectual prop-
erty rights for the field of use described in the next sentence
hereof.  The field of use shall be (i) the businesses engaged
in by Packco and the Packco Group as of the Distribution Date
and the businesses of SAC as of the Distribution Date, includ-
ing, in each case, reasonable extensions thereof, *provided,
however,* that such field of use shall not include the field
described in the proviso to the definition of "Packaging Busi-
ness" as well as (to the extent not described in such proviso)
the business of (A) closures, closure sealant compositions and
multifunctional can ends which are used on or with rigid con-
tainers and (B) coatings, sealants, compositions and equipment
used or held for use in the manufacture of cans and other rigid
containers, in each case including reasonable extensions
thereof; and (ii) notwithstanding (i), with respect to reason-
able extensions referred to in the first part of clause (i)
that overlap with the reasonable extensions described in the
proviso in clause (i), the field of use shall include such

- 19 -

overlap but the license therefor shall be non-exclusive and the New Grace Group shall also have title to use such intellectual property in the area of overlap.  Such licenses shall not unduly restrict the subsequent transfer or license (within the applicable field of use) of the intellectual property.  Such arrangements shall not restrict or limit in any way the rights of SAC to use any intellectual property that is not a Packco Asset.

(e)  The costs (and other out-of-pocket losses) attributable to the separation of the Assets, including, without limitation, the Shared Facilities, shall be allocated pursuant to Section 8.04.

SECTION 2.02  Certain Foreign Transfers.  (a)  Prior to the Distribution Date, Grace shall use its reasonable best efforts to effect the legal separation of the Packco Assets and Packco Liabilities, on the one hand, from the Grace-Conn. Assets and Grace-Conn. Liabilities, on the other hand, that are located in jurisdictions outside the United States.  Such separation may include asset transfers, stock transfers, spin-offs, mergers, reorganizations, consolidations or other transfers which may be effected before, simultaneously with or after the Distribution (collectively, the "Foreign Transfers").  Any Foreign Transfer that occurs after the Distribution shall be effected pursuant to a binding commitment in existence prior to the Distribution Date.

(b)  The Adjusted Foreign Transfer Taxes shall be allocated between the New Grace Group and the Packco Group as provided in Section 8.04.  Each party shall reimburse the other to the extent that such other party pays Foreign Transfer Taxes in excess of the amount of Adjusted Foreign Transfer Taxes allocable to such other party pursuant to Section 8.04.  Such payment shall, for Tax purposes, be characterized as an adjustment of the New Grace Capital Contribution.

(c)  (i)  "Adjusted Foreign Transfer Taxes" shall mean the excess, if any, of (I) the sum of the Foreign Transfer Taxes, Packco Repatriation Tax Costs and New Grace Repatriation Tax Costs over (II) the present value using a discount rate of 5% (or, in the case of value added taxes, the gross value) of any Tax Benefits (including foreign tax credits for United States federal income tax purposes ("Foreign Tax Credits") other than Foreign Tax Credits attributable to Foreign Transfer Taxes or Withholding Taxes that in the aggregate do not exceed the Tax imposed by the United States and any political subdivision thereof on the Deemed Repatriation) that may or would arise as a result of the Foreign Transfers, the payment of the Foreign Transfer Taxes or the Deemed Repatriations.  Such Tax

- 20 -

Benefits shall be presumed to be utilized in the first year in which they arise (or are deemed to arise). All amounts relating to the calculation of Adjusted Foreign Transfer Taxes and the amount calculated pursuant to clause (c) of the definition of "New Grace Capital Contribution" shall be calculated in local currency and translated into U.S. Dollars at the Foreign Exchange Rate for such currency as of the Distribution Date.

(ii)    "Foreign Transfer Taxes" shall mean net Taxes that may be imposed by any jurisdiction other than the United States or any political subdivision thereof in connection with the Foreign Transfers (and any Tax net of associated foreign tax credits imposed by the United States or a political subdivision thereof on the Foreign Transfer in Venezuela) on any member of the New Grace Group or the Packco Group; *provided, however,* that the Foreign NOLs shall be taken into account in calculating the amount of Foreign Transfer Taxes.

(iii)    "Packco Repatriation Tax Costs" and "New Grace Repatriation Tax Costs", respectively, shall mean the sum of the (I) withholding Taxes that would be imposed by a foreign jurisdiction on a deemed distribution of Packco Group Excess Cash to Packco or of New Grace Group Excess Cash to New Grace, respectively (the "Deemed Repatriations"), on the day immediately following the Distribution ("Withholding Taxes") and (II) Taxes that would be imposed by the United States or any political subdivision thereof on a Deemed Repatriation (without taking into account any net operating loss or other deduction) in excess of the Foreign Tax Credits of Packco or Grace-Conn., respectively, in respect of Taxes paid or deemed paid by Packco or Grace-Conn., respectively, as a result of such Deemed Repatriation ("Deemed Foreign Tax Credits").

(iv)    "Packco Group Excess Cash" and "New Grace Group Excess Cash", respectively, shall mean the sum of the amount of Subsidiary Excess Cash for all Foreign Packco Subsidiaries or Foreign New Grace Subsidiaries.

(v)    "Subsidiary Excess Cash" shall mean the cash transferred to a Foreign Packco Subsidiary or Foreign New Grace Subsidiary pursuant to a Foreign Transfer in excess of the sum of (I) the amount of debt that may be repaid without penalty plus current accrued unpaid Taxes of such Subsidiary as of the Distribution Date and (II) the excess of trade and other short-term payables over trade and other short-term receivables of such Subsidiary ("Excess Short-Term Payables"); *provided, however,* that each party shall take steps (including causing the Subsidiary to loan cash to an Affiliate organized in a foreign jurisdiction to the extent that such Affiliate can use such cash to repay its debt or to pay current accrued unpaid Taxes

- 21 -

and Excess Short-Term Payables) and cooperate in good faith to minimize the amount of Subsidiary Excess Cash, taking into account Tax and financial considerations as if each party were bearing the full amount of its respective Repatriation Tax Cost.

(vi)   The "Foreign NOLs" shall mean net operating losses for German income tax purposes of Grace GmbH and Grace Multiflex GmbH, and net operating losses for other foreign income tax purposes of any other Foreign Packco Subsidiary, attributable to the Pre-Distribution Period to the extent, in either case, that such net operating losses would be an Overall Tax Benefit (or Hypothetical Pre-Distribution Overall Tax Benefit), calculated without regard to any Tax Item arising on the Foreign Transfer involving such Subsidiary, that does not exceed the amount of income or gain arising, for purposes of the applicable foreign income tax, on the Foreign Transfer involving such Subsidiary.

(d)   In connection with the Foreign Transfers, certain Assets (including cash) or Liabilities that, without the agreement of the parties as required by this Section 2.02(d), would be Grace-Conn. Assets or Grace-Conn. Liabilities, as the case may be, may be retained by Packco or a Packco Subsidiary (or Assets or Liabilities that, without the agreement of the parties as required by this Section 2.02(d), would be Packco Assets or Packco Liabilities, may be retained by New Grace or a New Grace Subsidiary) if agreed between Grace and New Grace and reasonably satisfactory to SAC.

(e)   Neither SAC nor any member of the Packco Group or the New Grace Group shall take any action, or fail or omit to take any action where the taking of such action or the failure or omission to take such action would disturb the tax treatment assumed by the parties in calculating the Foreign Transfer Taxes and cause any Indemnifiable Loss to a member of the other Group, including an increase in the amount of Adjusted Foreign Transfer Taxes borne by the other Group. Grace agrees to indemnify and hold the Grace-Conn. Indemnitees harmless, and Grace-Conn. agrees to indemnify and hold the Packco Indemnitees harmless, from and against any such Indemnifiable Loss without regard to any limitation contained in Section 8.04.

(f)   Adjusted Foreign Transfer Taxes shall be recalculated upon any audit adjustment, Final Determination or any other change (i) of a Foreign Transfer Tax or another foreign Tax or Tax Item that would change the amount of Deemed Foreign Tax Credit or otherwise alter Packco Repatriation Tax Costs or New Grace Repatriation Tax Costs or (ii) that changes the

- 22 -

amount of a Foreign NOL.  Appropriate payment shall be made
between the parties such that Foreign Transfer Taxes, as so
redetermined, and Adjusted Foreign Transfer Taxes, as so recal-
culated, are shared according to the principles of Section
2.02(b).

SECTION 2.03  Certificate of Incorporation; By-laws;
Rights Plan.  (a)  Prior to the Distribution Date, Grace shall
contribute the capital stock of Grace-Conn. to New Grace, as
well as the capital stock of any other Subsidiary of Grace
formed in connection with the Foreign Transfers that is not a
Packco Subsidiary.  In addition, prior to the Distribution
Date, the parties hereto shall take all action necessary so
that, at the Distribution Date, New Grace's name shall be
"W. R. Grace & Co."

(b)  Prior to the Distribution Date, Grace and New
Grace shall take all action necessary so that the certificate
of incorporation and by-laws of New Grace and the preferred
share purchase rights plan of New Grace shall be in effect as
specified by New Grace, each in the form of Exhibits C, D and E
hereto, respectively (with such changes as Grace and New Grace
may find appropriate).

(c)  Prior to the Distribution Date, Grace and Packco
shall take all action necessary so that the certificate of in-
corporation and by-laws of Packco shall be substantially simi-
lar to the customary form of certificate of incorporation and
by-laws for a wholly owned Delaware subsidiary and reasonably
acceptable to SAC.

SECTION 2.04  Issuance of Stock.  Prior to the Dis-
tribution Date, the parties hereto shall take all steps neces-
sary so that the number of shares of New Grace Common Stock
outstanding and held by Grace shall equal the number of shares
of Grace Common Stock outstanding on the Record Date.

SECTION 2.05  Other Agreements; Shared Facilities.
(a)  Each of Grace and New Grace shall, prior to the Distribu-
tion Date, enter into, or cause the appropriate members of the
Group of which it is a member to enter into, the Other Agree-
ments in connection with the Distribution, including, without
limitation, agreements with respect to (i) insurance proce-
dures, (ii) interim services (including, without limitation,
services to be provided by the Shared Regional Headquarters
consistent with current operations of the respective Busi-
nesses, and services to be provided by country organizations to
operations of the other Business consistent with past prac-
tice), which shall be charged at allocated cost based on
Grace's historical methodology, subject to applicable tax laws

- 23 -

in any jurisdiction, (iii) intellectual property licenses as
contemplated by Section 2.01, (iv) and other matters as may be
advisable.  The Other Agreements (or, in the case of the forms
of agreement attached hereto, any amendments thereto) shall be
on terms reasonably acceptable to Grace, New Grace and SAC.
Agreements regarding interim services (including country ser-
vices) shall generally have a term not to exceed 24 months
(subject to earlier termination on six months' notice (or such
shorter period as does not impose additional costs on the pro-
viding party) by the party receiving the services) and will
provide, in the case of agreements pursuant to which Packco is
to provide services to New Grace, for services at least as ex-
tensive as any obligations contained in interim service and
tolling agreements entered into prior to the Distribution Date
between Grace and a third party.  Such Agreements regarding
interim services (including country services) will also provide
that any value added taxes imposed on such services shall be
paid and borne, as between the parties, by the party receiving
such services.  The parties shall use reasonable efforts to
conclude the Other Agreements prior to the time the other con-
ditions to the Distribution have been satisfied.

          (b)   The parties acknowledge and agree that operation
by members of the Packco Group or New Grace Group of the Shared
Facilities after the Distribution Date may continue to require
the joint occupation or use by the parties of certain related
premises or facilities (such as waste disposal, utilities, se-
curity and other matters).  The parties shall enter into ap-
propriate arrangements regarding cost allocation and service
provision with respect to these matters, which allocation shall
be as described in Section 2.01(c) and 2.05(a), as applicable.
The agreements described in this paragraph (b) shall be in-
cluded in the Other Agreements.

          SECTION 2.06  Financing.   (a)  Prior to the Distri-
bution Date, Grace and/or Packco shall enter into the Grace
Credit Agreement, which shall be on terms reasonably acceptable
to Grace and SAC, and Grace and/or Packco shall contribute, or
cause to be contributed, the New Grace Capital Contribution to
Grace-Conn., all as described in this Section.  No member of
the New Grace Group shall have any Liability or obligation with
respect to the Grace Credit Agreement.  At the election of New
Grace and subject to the consent of Grace and SAC, which will
not be unreasonably withheld, a portion of the New Grace Capi-
tal Contribution may be contributed to foreign Subsidiaries of
New Grace.  It is contemplated that the New Grace Capital Con-
tribution shall be effected as follows; provided, however, that
Packco shall not borrow an amount in excess of the tax basis,
for U.S. federal income tax purposes, of Grace-Conn. in the
stock of Packco:  (i) each of Grace and Packco shall borrow

                              - 24 -

agreed-upon amounts; (ii) Packco distributes a portion of the
New Grace Capital Contribution to Grace-Conn. which uses such
funds to pay creditors; (iii) the Intragroup Spinoff occurs;
(iv) Grace contributes the remaining amount of the New Grace
Capital Contribution to New Grace as well as the capital stock
of Grace-Conn.; and (v) New Grace loans the amount described in
clause (iv) to Grace-Conn. in the form of a security.

        (b)   Prior to the Distribution, Grace-Conn. may con-
summate a cash tender offer in accordance with applicable secu-
rities laws for any and all Grace-Conn. Public Debt.  Grace-
Conn. may also elect, in its discretion, to defease or other-
wise acquire any portion of the Grace-Conn. Public Debt.  To
the extent that upon consummation of the Distribution, there
remains outstanding (other than to the extent owned by Grace-
Conn. or New Grace) in excess of $50 million in principal
amount of the Grace-Conn. Public Debt, New Grace or Grace-Conn.
shall obtain an "evergreen" letter of credit, with an initial
expiration date no sooner than 364 days after the Effective
Time, from a financial institution or group of financial insti-
tutions reasonably acceptable to Grace and SAC for the benefit
of Grace with respect to such outstanding amount from time to
time in excess of $50 million.

        The letter of credit shall be in form and substance
reasonably acceptable to SAC and shall entitle Grace to draw
thereunder if Grace shall be required to make (and makes) any
payment pursuant to the terms of its guarantee of any Grace-
Conn. Public Debt.  The expiration date of such letter of
credit shall be automatically extended for successive 364-day
periods, with an absolute expiration date on the date that is
the 91st day after the date on which the outstanding principal
amount of the Grace-Conn. Public Debt shall have been reduced
to no more than $50 million, unless, prior to such 91st day,
any payments shall have been made that are subject to avoidance
pursuant to a bankruptcy or similar proceeding, in which case
such letter of credit shall be extended (with respect to the
applicable payments) until such payments are no longer subject
to such avoidance, unless notice of termination is given by the
issuing bank or banks, in which case Grace shall be entitled to
draw thereunder (whether or not any demand for payment in re-
spect of its guarantee shall have been made), provided that, to
the extent such funds are not used to make payments on the
Grace-Conn. Public Debt, Grace shall hold such proceeds sepa-
rate in an interest-bearing escrow account with a financial
institution and pursuant to escrow arrangements reasonably ac-
ceptable to Grace-Conn.  To the extent that the amount held in
such escrow account is greater than (i) the outstanding Grace-
Conn. Public Debt minus (ii) $50 million, Grace shall remit
such excess amount to Grace-Conn.  The amount of the letter of

- 25 -

credit may be reduced from time to time, but shall not at any time be less than the amount by which the outstanding principal amount of the Grace-Conn. Public Debt (other than such debt owned by a member of the New Grace Group) exceeds $50 million.

"Debt Costs" shall mean the costs incurred by Grace or Grace-Conn. in connection with a tender offer, defeasance, retirement or other acquisition of Grace-Conn. Public Debt, which costs shall consist of (i) any incremental costs, fees, expenses and payments incurred in connection with such action, and in the case of a tender offer shall include all costs, fees, expenses and payments incurred in connection with a tender offer that are, in the aggregate, in excess of the outstanding principal amount and accrued interest of the Grace-Conn. Public Debt so acquired; plus (ii) any costs associated with terminating or re-negotiating any related interest rate swap agreements with respect to the amount of Grace-Conn. Public Debt acquired, defeased or retired; and plus (iii) the costs of the letter of credit described above.

SECTION 2.07  Grace Recapitalization.  (a)  Immediately prior to the Effective Time, Grace shall consummate a recapitalization of the Grace Common Stock, such that each share of Grace Common Stock outstanding as of the Record Date shall be exchanged for the Per Share Common Consideration and the Per Share Preferred Consideration (the "Recapitalization"). Options to purchase shares of Grace Common Stock previously granted by Grace or a predecessor and outstanding as of the time of the Recapitalization shall be treated as provided in the Benefits Agreement.  In connection with the Recapitalization and the Merger, the Grace Certificate of Incorporation shall be amended so that the par value of the Newco Common Stock will be $.10 per share, as well as otherwise provided in the Merger Agreement.  Grace shall retain an Exchange Agent or transfer agent as appropriate and take other appropriate actions to effect the Recapitalization, including customary procedures with respect to the exchange of share certificates.

(b)  No fractional shares of Newco Common Stock or Newco Convertible Preferred Stock shall be issued in the Recapitalization.  In lieu of any such fractional shares, each person who would otherwise have been entitled to a fraction of a share of Newco Common Stock or Newco Convertible Preferred Stock upon surrender of former shares of Grace Common Stock for exchange pursuant to the Recapitalization shall be paid an amount in cash (without interest) equal to such holder's proportionate interest in the net proceeds from the sale or sales in the open market by the Exchange Agent, on behalf of all such holders, of the aggregate fractional shares of Newco Common Stock or Newco Convertible Preferred Stock issued pursuant to

- 26 -

this paragraph.  As soon as practicable following the Distribu-
tion Date, the Exchange Agent shall determine the excess of (i)
the number of full shares of Newco Common Stock or Newco Con-
vertible Preferred Stock, as the case may be, delivered to the
Exchange Agent over (ii) the aggregate number of full shares of
Newco Common Stock or Newco Convertible Preferred Stock to be
distributed in respect of Grace Common Shares (such excess, the
"Excess Shares"), and the Exchange Agent, as agent for the
former holders of such Grace Common Shares, shall sell the Ex-
cess Shares at the prevailing prices on the open market.  The
sale of the Excess Shares by the Exchange Agent shall be ex-
ecuted on a public exchange through one or more firms and shall
be executed in round lots to the extent practicable.  Grace
shall pay all commissions, transfer taxes and other out-of-
pocket transaction costs, including the expenses and compensa-
tion of the Exchange Agent, incurred in connection with such
sale of Excess Shares.  Until the net proceeds of such sale or
sales have been distributed, the Exchange Agent shall hold such
proceeds in trust for such former stockholders.  As soon as
practicable after the determination of the amount of cash to be
paid in lieu of any fractional interests, the Exchange Agent
shall make available in accordance with this Agreement such
amounts to such former stockholders.

        SECTION 2.08  Registration and Listing.  Prior to the
Distribution Date:

        (a)  The parties shall take such efforts regarding
the Registration Statements and the Joint Proxy Statement as is
provided in the Merger Agreement.  After such Registration
Statements become effective, Grace shall cause the Joint Proxy
Statement and the information statement (or prospectus, as the
case may be) for the New Grace Common Stock forming a part of
the Registration Statement for New Grace to be delivered to all
holders of record of Grace Common Stock as of the record date
for the meeting of Grace shareholders to which the Joint Proxy
Statement relates.

        (b)  The parties hereto shall use reasonable efforts
to take all such action as may be necessary or appropriate un-
der state securities and blue sky laws in connection with the
transactions contemplated by this Agreement.

        (c)  New Grace and Grace shall prepare, and New Grace
and Grace shall file and seek to make effective, an application
for the listing of the New Grace Common Stock on the NYSE, and
an application for the listing on the NYSE of the Newco Common
Stock and the Newco Convertible Preferred Stock to be issued in
connection with the Recapitalization and the Merger, in each
case subject to official notice of issuance.

- 27 -

(d)   The parties hereto shall cooperate in preparing,
filing with the SEC and causing to become effective any regis-
tration statements or amendments thereto which are necessary or
appropriate in order to effect the transactions contemplated
hereby or to reflect the establishment of, or amendments to,
any employee benefit plans contemplated hereby or by the Em-
ployee Benefits Agreement requiring registration under the Se-
curities Act.

SECTION 2.09   Grace and New Grace Boards.   The par-
ties hereto shall take all steps necessary so that, effective
immediately after the Distribution, the Board of Directors of
each of Grace and New Grace, so long as the common stock of
such company is registered under Section 12 of the Exchange
Act, shall at all times be comprised of a majority of indepen-
dent directors (other than due to temporary vacancies).

SECTION 2.10   Transfers Not Effected Prior to the
Distribution; Transfers Deemed Effective as of the Distribution
Date.   To the extent that any transfers contemplated by this
Article II shall not have been consummated on the Distribution
Date, including, without limitation, any Foreign Transfers, the
parties shall cooperate to effect such transfers as promptly
following the Distribution Date as shall be practicable.   Noth-
ing herein shall be deemed to require the transfer of any As-
sets or the assumption of any Liabilities which by their terms
or operation of law cannot be transferred or assumed; *provided,
however,* that Grace and New Grace and their respective Subsid-
iaries shall cooperate to obtain any necessary consents or ap-
provals for the transfer of all Assets and Liabilities con-
templated to be transferred pursuant to this Article II.   In
the event that any such transfer of Assets or Liabilities has
not been consummated, effective as of and after the Distribu-
tion Date, the party retaining such Asset or Liability shall
thereafter hold such Asset in trust for the use and benefit of
the party entitled thereto (at the expense of the party enti-
tled thereto) and retain such Liability for the account of the
party by whom such Liability is to be assumed pursuant hereto,
and take such other action as may be reasonably requested by
the party to which such Asset is to be transferred, or by whom
such Liability is to be assumed, as the case may be, in order
to place such party, insofar as reasonably possible, in the
same position as would have existed had such Asset or Liability
been transferred as contemplated hereby.   As and when any such
Asset or Liability becomes transferable, such transfer shall be
effected forthwith.   The parties agree that, as of the Distri-
bution Date, each party hereto shall be deemed to have acquired
complete and sole beneficial ownership over all of the Assets,
together with all rights, powers and privileges incident there-
to, and shall be deemed to have assumed in accordance with the

- 28 -

terms of this Agreement all of the Liabilities, and all duties, obligations and responsibilities incident thereto, which such party is entitled to acquire or required to assume pursuant to the terms of this Agreement.

SECTION 2.11  Intercompany Accounts and Distribution Payments.  After the Distribution Date, the parties shall be obligated to pay only those intercompany accounts between members of the New Grace Group and members of the Packco Group that arose in connection with transfers of goods and services in the ordinary course of business, consistent with past practices (which the parties shall use reasonable efforts to settle prior to the Distribution Date), and all other intercompany accounts shall be settled without transfer of non-financial assets as of the Distribution Date.

## ARTICLE III

### THE DISTRIBUTION

SECTION 3.01  Record Date and Distribution Date. Subject to the satisfaction of the conditions set forth in Section 8.01(a), the Board of Directors of Grace, in its sole discretion and consistent with the Merger Agreement, shall establish the Record Date and the Distribution Date and any appropriate procedures in connection with the Distribution.

SECTION 3.02  The Agent.  Prior to the Distribution Date, New Grace shall enter into an agreement with the Agent providing for, among other things, the payment of the Distribution to the holders of Grace Common Stock in accordance with this Article III.

SECTION 3.03  Delivery of Share Certificates to the Agent.  Prior to the Distribution Date, Grace shall deliver to the Agent a share certificate representing (or authorize the related book-entry transfer of) all of the outstanding shares of New Grace Common Stock to be distributed in connection with the payment of the Distribution.  After the Distribution Date, upon the request of the Agent, New Grace shall provide all certificates for shares (or book-entry transfer authorizations) of New Grace Common Stock that the Agent shall require in order to effect the Distribution.

SECTION 3.04  The Distribution.  Subject to the terms and conditions of this Agreement, New Grace shall instruct the Agent to distribute, as of the Distribution Date, one share of New Grace Common Stock in respect of each share of Grace Common

- 29 -

Stock held by holders of record of Grace Common Stock on the
Record Date.

## ARTICLE IV

### SURVIVAL AND INDEMNIFICATION

SECTION 4.01  Survival of Agreements.  All covenants
and agreements of the parties hereto contained in this Agree-
ment shall survive the Distribution Date.

SECTION 4.02  Indemnification.  (a)  Except as spe-
cifically otherwise provided in the Other Agreements, the New
Grace Group shall indemnify, defend and hold harmless the Pack-
co Indemnitees from and against (i) all Indemnifiable Losses
arising out of or due to the failure or alleged failure of any
member of the New Grace Group (x) to pay any Grace-Conn. Lia-
bilities (including, without limitation, all Liabilities spe-
cifically excluded from the definition of Packco Liabilities
herein), whether such Indemnifiable Losses relate to events,
occurrences or circumstances occurring or existing, or whether
such Indemnifiable Losses are asserted, before or after the
Distribution Date, or (y) to perform any of its obligations
under this Agreement (including the obligation to effect the
transfers as provided in the last sentence of Section 2.01(a));
(ii) all Indemnifiable Losses arising out of or based upon any
untrue statement or alleged untrue statement of a material
fact, or omission or alleged omission to state a material fact
required to be stated, in the Registration Statements or the
Joint Proxy Statement or any preliminary or final form thereof
or any amendment thereto, or necessary to make the statements
therein not misleading, except that such indemnifications shall
not apply to any Indemnifiable Losses that arise out of or are
based upon any statement or omission, or alleged statement or
omission, in any of the portions of the Registration Statements
or the Joint Proxy Statement, or any preliminary or final form
thereof or any amendment thereto, solely with respect to infor-
mation relating to SAC supplied by SAC specifically for use in
the preparation thereof or relating to Newco after the Merger;
and (iii) all Indemnifiable Losses arising from or relating to
all existing litigation brought by pre-Merger shareholders of
Grace acting in such capacity and all litigation to be brought
by pre-Merger shareholders of Grace acting in such capacity and
relating to any events or transactions occurring prior to the
Effective Time or to the transactions contemplated by the
Transaction Agreements.

(b)  Except as specifically otherwise provided in the
Other Agreements, the Packco Group shall indemnify, defend and

hold harmless the New Grace Indemnitees from and against (i) all Indemnifiable Losses arising out of or due to the failure or alleged failure of any member of the Packco Group to pay any Packco Liabilities or to perform any of its obligations under this Agreement after the Distribution Date; and (ii) all Indemnifiable Losses arising out of or based upon any untrue statement or alleged untrue statement of a material fact, or omission or alleged omission to state a material fact required to be stated, in any portion of the Registration Statements or the Joint Proxy Statement (or any preliminary or final form thereof or any amendment thereto) solely with respect to information relating to SAC supplied by SAC specifically for use in the preparation thereof or relating to Newco after the Merger (including the pro forma financial information relating to Newco contained in the Registration Statements (other than the historical information relating to Grace and the Packaging Business)), or necessary to make the statements therein not misleading.

(c)    If any Indemnity Payment required to be made hereunder or under any Other Agreement is denominated in a currency other than United States dollars, such payment shall be made in United States dollars and the amount thereof shall be computed using the Foreign Exchange Rate for such currency determined as of the date on which such Indemnity Payment is made.

(d)    Notwithstanding anything to the contrary set forth herein, indemnification relating to any arrangements between any member of the Packco Group and any member of the New Grace Group for the provision after the Distribution of goods and services in the ordinary course shall be governed by the terms of such arrangements and not by this Section or as otherwise set forth in this Agreement and the Other Agreements.

SECTION 4.03  Procedures for Indemnification for Third-Party Claims.  (a)  Grace shall, and shall cause the other Packco Indemnitees to, notify New Grace in writing promptly after learning of any Third-Party Claim for which any Packco Indemnitee intends to seek indemnification from New Grace under this Agreement.  New Grace shall, and shall cause the other New Grace Indemnitees to, notify Grace in writing promptly after learning of any Third-Party Claim for which any New Grace Indemnitee intends to seek indemnification from Grace under this Agreement.  The failure of any Indemnitee to give such notice shall not relieve any Indemnifying Party of its obligations under this Article except to the extent that such Indemnifying Party or its Affiliate is actually prejudiced by such failure to give notice.  Such notice shall describe such Third-Party

- 31 -

Claim in reasonable detail considering the Information provided to the Indemnitee.

(b)   Except as otherwise provided in paragraph (c) of this Section, an Indemnifying Party may, by notice to the Indemnitee and to Grace, if New Grace is the Indemnifying Party, or to the Indemnitee and New Grace, if Grace is the Indemnifying Party, at any time after receipt by such Indemnifying Party of such Indemnitee's notice of a Third-Party Claim, undertake (itself or through another member of the Group of which the Indemnifying Party is a member) the defense or settlement of such Third-Party Claim.  If an Indemnifying Party undertakes the defense of any Third-Party Claim, such Indemnifying Party shall thereby admit its obligation to indemnify the Indemnitee against such Third-Party Claim, and such Indemnifying Party shall control the investigation and defense or settlement thereof, and the Indemnitee may not settle or compromise such Third-Party Claim, except that such Indemnifying Party shall not (i) require any Indemnitee, without its prior written consent, to take or refrain from taking any action in connection with such Third-Party Claim, or make any public statement, which such Indemnitee reasonably considers to be against its interests, nor (ii) without the prior written consent of the Indemnitee and of Grace, if the Indemnitee is a Packco Indemnitee, or the Indemnitee and of New Grace, if the Indemnitee is a New Grace Indemnitee, consent to any settlement that does not include as a part thereof an unconditional release of the Indemnitees from liability with respect to such Third-Party Claim or that requires the Indemnitee or any of its Representatives or Affiliates to make any payment that is not fully indemnified under this Agreement or to be subject to any non-monetary remedy; and subject to the Indemnifying Party's control rights, as specified herein, the Indemnitees may participate in such investigation and defense, at their own expense.  Following the provision of notices to the Indemnifying Party, until such time as an Indemnifying Party has undertaken the defense of any Third-Party Claim as provided herein, such Indemnitee shall control the investigation and defense or settlement thereof, without prejudice to its right to seek indemnification hereunder.

(c)   If an Indemnitee reasonably determines that there may be legal defenses available to it that are different from or in addition to those available to its Indemnifying Party which make it inappropriate for the Indemnifying Party to undertake the defense or settlement thereof, then such Indemnifying Party shall not be entitled to undertake the defense or settlement of such Third-Party Claim; and counsel for the Indemnifying Party shall be entitled to conduct the defense of

- 32 -

such Indemnifying Party and counsel for the Indemnitee (se-
lected by the Indemnitee) shall be entitled to conduct the de-
fense of such Indemnitee, it being understood that both such
counsel shall cooperate with each other to conduct the defense
or settlement of such action as efficiently as possible.  The
above provisions of this paragraph (c) shall not apply to
Third-Party Claims relating to asbestos claims described in the
proviso to the definition of Packco Liabilities.  Rather, with
respect to such asbestos claims, with the consent of Grace-
Conn., which shall not be unreasonably withheld, counsel for
the Indemnifying Party shall be entitled to conduct the defense
of such Third-Party Claim to the extent the legal defenses
available to the Indemnifying Party and the Indemnitee are sub-
stantially similar, but counsel for the Indemnitee shall be
entitled to assert and conduct its own defense to the extent,
but only to the extent, of any additional legal defenses avail-
able to it.

(d)  In no event shall an Indemnifying Party be li-
able for the fees and expenses of more than one counsel for all
Indemnitees (in addition to its own counsel, if any) in connec-
tion with any one action, or separate but similar or related
actions, in the same jurisdiction arising out of the same gen-
eral allegations or circumstances.

(e)  New Grace shall, and shall cause the other New
Grace Indemnitees to, and Grace shall, and shall cause the
other Packco Indemnitees to, make available to each other,
their counsel and other Representatives, all information and
documents reasonably available to them which relate to any
Third-Party Claim, and otherwise cooperate as may reasonably be
required in connection with the investigation, defense and set-
tlement thereof, subject to the terms and conditions of a mutu-
ally acceptable joint defense agreement.  Any joint defense
agreement entered into by New Grace or Grace with any third
party relating to any Third-Party Claim shall provide that New
Grace or Grace may, if requested, provide information obtained
through any such agreement to the New Grace Indemnitees and/or
the Packco Indemnitees.

SECTION 4.04  Remedies Cumulative.  The remedies pro-
vided in this Article IV shall be cumulative and shall not pre-
clude assertion by any Indemnitee of any other rights or the
seeking of any other remedies against any Indemnifying Party.
However, the procedures set forth in Section 4.03 shall be the
exclusive procedures governing any indemnity action brought
under this Agreement, except as otherwise specifically provided
in any of the Other Agreements.

- 33 -

ARTICLE V

CERTAIN ADDITIONAL COVENANTS

SECTION 5.01  Notices to Third Parties.  In addition
to the actions described in Section 5.02, the members of the
Packco Group and the members of the New Grace Group shall coop-
erate to make all other filings and give notice to and obtain
consents from all third parties that may reasonably be required
to consummate the transactions contemplated by this Agreement,
the Merger Agreement and the Other Agreements.

SECTION 5.02  Licenses and Permits.  Each party here-
to shall cause the appropriate members of its Group to prepare
and file with the appropriate licensing and permitting authori-
ties applications for the transfer or issuance, as may be. nec-
essary or advisable in connection with the transactions contem-
plated by this Agreement, the Other Agreements and the Merger
Agreement, to its Group of all material governmental licenses
and permits required for the members of its Group to operate
its Business after the Distribution Date.  The members of the
New Grace Group and the members of the Packco Group shall coop-
erate and use all reasonable efforts to secure the transfer or
issuance of the licenses and permits.

SECTION 5.03  Intercompany Agreements.  All con-
tracts, licenses, agreements, commitments or other arrange-
ments, formal or informal, between any member of the Packco
Group, on the one hand, and any member of the New Grace Group,
on the other hand, in existence as of the Distribution Date,
pursuant to which any member of either Group makes payments in
respect of Taxes to any member of the other Group or provides
to any member of the other Group goods or services (including,
without limitation, management, administrative, legal, finan-
cial, accounting, data processing, insurance or technical sup-
port), or the use of any Assets of any member of the other
Group, or the secondment of any employee, or pursuant to which
rights, privileges or benefits are afforded to members of ei-
ther Group as Affiliates of the other Group, shall terminate as
of the close of business on the day prior to the Distribution
Date, except as specifically provided herein or in the Other
Agreements.  From and after the Distribution Date, no member of
either Group shall have any rights under any such contract,
license, agreement, commitment or arrangement with any member
of the other Group, except as specifically provided herein or
in the Other Agreements.

SECTION 5.04  Guarantee Obligations.  (a) Grace and
New Grace shall cooperate, and shall cause their respective
Groups to cooperate, to terminate, or to cause a member of the

- 34 -

Packco Group to be substituted in all respects for any member
of the New Grace Group in respect of, all obligations of any
member of the New Grace Group under any Packco Liabilities for
which such member of the New Grace Group may be liable, as
guarantor, original tenant, primary obligor or otherwise.   If
such a termination or substitution is not effected by the Dis-
tribution Date, (i) Grace shall indemnify and hold harmless the
New Grace Indemnitees for any Indemnifiable Loss arising from
or relating thereto, and (ii) without the prior written consent
of the Chief Financial Officer, Treasurer or any Assistant
Treasurer of New Grace, from and after the Distribution Date,
Grace shall not, and shall not permit any member of the Packco
Group or any of its Affiliates to, renew or extend the term of,
increase its obligations under, or transfer to a third party,
any loan, lease, contract or other obligation for which any
member of the New Grace Group is or may be liable unless all
obligations of the New Grace Group with respect thereto are
thereupon terminated by documentation reasonably satisfactory
in form and substance to the Chief Financial Officer, Treasurer
or any Assistant Treasurer of New Grace, *provided* that the lim-
itations in clause (ii) shall not apply in the event that a
member of the Packco Group obtains a letter of credit from a
financial institution reasonably acceptable to New Grace and
for the benefit of New Grace with respect to such obligation of
the New Grace Group.

        (b)   Grace and New Grace shall cooperate, and shall
cause their respective Groups to cooperate, to terminate, or to
cause a member of the New Grace Group to be substituted in all
respects for any member of the Packco Group in respect of, all
obligations of any member of the Packco Group under any Grace-
Conn. Liabilities for which such member of the Packco Group may
be liable, as guarantor, original tenant, primary obligor or
otherwise.   The foregoing sentence does not apply to the Grace-
Conn. Public Debt, which is governed by Section 2.06.   If such
a termination or substitution is not effected by the Distribu-
tion Date, (i) New Grace shall indemnify and hold harmless the
Packco Indemnitees for any Indemnifiable Loss arising from or
relating thereto, and (ii) without the prior written consent of
the Chief Financial Officer, Treasurer or any Assistant Trea-
surer of Grace, from and after the Distribution Date, New Grace
shall not, and shall not permit any member of the New Grace
Group to, renew or extend the term of, increase its obligations
under, or transfer to a third party, any loan, lease, contract
or other obligation for which any member of the Packco Group is
or may be liable unless all obligations of the Packco Group
with respect thereto are thereupon terminated by documentation
reasonably satisfactory in form and substance to the Chief Fi-
nancial Officer, Treasurer or any Assistant Treasurer of Grace,
*provided* that the limitations contained in clause (ii) shall

- 35 -

not apply in the event that a member of the New Grace Group obtains a letter of credit from a financial institution reasonably acceptable to Grace and for the benefit of Grace with respect to such obligation of the Packco Group.

SECTION 5.05  Further Assurances.  In addition to the actions specifically provided for elsewhere in this Agreement, each of the parties hereto shall use reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things reasonably necessary, proper or advisable under applicable laws, regulations and agreements to consummate and make effective the transactions contemplated by this Agreement.  Without limiting the foregoing, each party hereto shall cooperate with the other party, and execute and deliver, or use reasonable efforts to cause to be executed and delivered, all instruments, and to make all filings with, and to obtain all consents, approvals or authorizations of, any governmental or regulatory authority or any other Person under any permit, license, agreement, indenture or other instrument, and take all such other actions as such party may reasonably be requested to take by any other party hereto from time to time, consistent with the terms of this Agreement, the Merger Agreement and the Other Agreements, in order to effectuate the provisions and purposes of this Agreement.

SECTION 5.06  Environmental Claims Cooperation.  With respect to claims relating to Environmental Laws described in clause (a) of the definition of Packco Liabilities, the New Grace Group and the Packco Group shall cooperate to minimize the costs incurred in connection with such claims and shall generally cooperate and provide appropriate information to the other party with respect to such claims.  Notwithstanding any other provision of this Agreement, including Article IV, Grace shall be entitled to participate in the defense of any such claims but New Grace shall control the resolution of any such claims; provided that New Grace shall not consent to entry of any judgment or enter into any settlement without the approval of Grace, which approval shall not be unreasonably withheld.

### ARTICLE VI

### ACCESS TO INFORMATION

SECTION 6.01  Provision of Corporate Records.  Prior to or as promptly as practicable after the Distribution Date, Grace shall retain complete and accurate copies but shall deliver to New Grace all corporate books and records of the New Grace Group in its possession and copies of the relevant portions of all corporate books and records of the Packco Group

- 36 -

relating directly and predominantly to the Grace-Conn. Assets,
the New Grace Business, or the Liabilities of the New Grace
Group, including, in each case, all active agreements, active
litigation files and government filings. Grace shall also re-
tain complete and accurate copies but deliver to New Grace all
corporate board and committee minute books of Grace. From and
after the Distribution Date, all such books, records and copies
shall be the property of New Grace. Prior to or as promptly as
practicable after the Distribution Date, New Grace shall de-
liver to Grace all corporate books and records of the Packco
Group in its possession and copies of the relevant portions of
all corporate books and records of the New Grace Group relating
directly and predominantly to the Packco Assets, the Packaging
Business, or the Liabilities of the Packco Group, including, in
each case, all active agreements, active litigation files and
government filings. From and after the Distribution Date, all
such books, records and copies shall be the property of Grace.
The costs and expenses incurred in the provision of records or
other information to a party shall be paid for (including reim-
bursement of costs incurred by the providing party) by the re-
questing party.

SECTION 6.02  Access to Information. From and after
the Distribution Date, each of Grace and New Grace shall afford
to the other and to the other's Representatives reasonable ac-
cess and duplicating rights during normal business hours to all
Information within the possession or control of such party's
Group relating to the other party's Group's pre-Distribution
business, Assets or Liabilities or relating to or arising in
connection with the relationship between the Groups on or prior
to the Distribution Date, insofar as such access is reasonably
required for a reasonable purpose, subject to the provisions
below regarding Privileged Information. Without limiting the
foregoing, Information may be requested under this Section 6.02
for audit, accounting, claims, litigation and Tax purposes, as
well as for purposes of fulfilling disclosure and reporting
obligations.

In furtherance of the foregoing:

(a)  Each party hereto acknowledges that: (i) Each
of Grace and New Grace (and the members of the Packco
Group and the New Grace Group, respectively) has or may
obtain Privileged Information; (ii) there are a number of
Litigation Matters affecting each or both of Grace and New
Grace; (iii) both Grace and New Grace have a common legal
interest in Litigation Matters, in the Privileged Informa-
tion and in the preservation of the confidential status of
the Privileged Information, in each case relating to the
pre-Distribution business of the Packco Group or the New

- 37 -

Grace Group or relating to or arising in connection with
the relationship between the Groups on or prior to the
Distribution Date; and (iv) both Grace and New Grace in-
tend that the transactions contemplated hereby and by the
Merger Agreement and the Other Agreements and any transfer
of Privileged Information in connection therewith shall
not operate as a waiver of any potentially applicable
privilege.

(b)    Each of Grace and New Grace agrees, on behalf of
itself and each member of the Group of which it is a mem-
ber, not to disclose or otherwise waive any privilege at-
taching to any Privileged Information relating to the pre-
Distribution business of the New Grace Group or the Packco
Group, respectively, or relating to or arising in connec-
tion with the relationship between the Groups on or prior
to the Distribution Date, without providing prompt written
notice to and obtaining the prior written consent of the
other, which consent shall not be unreasonably withheld
and shall not be withheld if the other party certifies
that such disclosure is to be made in response to a likely
threat of suspension or debarment or similar action; pro-
vided, however, that Grace and New Grace may make such
disclosure or waiver with respect to Privileged Informa-
tion if such Privileged Information relates solely to the
pre-Distribution business of the Packco Group in the case
of Grace or the New Grace Group in the case of New Grace.
In the event of a disagreement between any member of the
Packco Group and any member of the New Grace Group con-
cerning the reasonableness of withholding such consent, no
disclosure shall be made prior to a resolution of such
disagreement by a court of competent jurisdiction, pro-
vided that the limitations in this sentence shall not ap-
ply in the case of disclosure required by law and so cer-
tified as provided in the first sentence of this para-
graph.

(c)    Upon any member of the Packco Group or any mem-
ber of the New Grace Group receiving any subpoena or other
compulsory disclosure notice from a court, other govern-
mental agency or otherwise which requests disclosure of
Privileged Information, in each case relating to pre-Dis-
tribution business of the New Grace Group or the Packco
Group, respectively, or relating to or arising in connec-
tion with the relationship between the Groups on or prior
to the Distribution Date, the recipient of the notice
shall promptly provide to the other Group (following the
notice provisions set forth herein) a copy of such notice,
the intended response, and all materials or information
relating to the other Group that might be disclosed.    In

- 38 -

the event of a disagreement as to the intended response or disclosure, unless and until the disagreement is resolved as provided in paragraph (b) of this Section, the parties shall cooperate to assert all defenses to disclosure claimed by either party's Group, and shall not disclose any disputed documents or information until all legal defenses and claims of privilege have been finally determined.

SECTION 6.03  Production of Witnesses.  Subject to Section 6.02, after the Distribution Date, each of Grace and New Grace shall, and shall cause each member of the Packco Group and the New Grace Group, respectively, to make available to New Grace or Grace or any member of the New Grace Group or of the Packco Group, as the case may be, upon written request, such Group's directors, officers, employees and agents as witnesses to the extent that any such Person may reasonably be required in connection with any Litigation Matters, administrative or other proceedings in which the requesting party may from time to time be involved and relating to the pre-Distribution business of the Packco Group or the New Grace Group or relating to or in connection with the relationship between the Groups on or prior to the Distribution Date.

SECTION 6.04  Retention of Records.  Except as otherwise agreed in writing, or as otherwise provided in the Other Agreements, each of Grace and New Grace shall, and shall cause the members of the Group of which it is a member to, retain all Information in such party's Group's possession or under its control relating directly and predominantly to the pre-Distribution business, Assets or Liabilities of the other party's Group until such Information is at least ten years old or until such later date as may be required by law, except that if, prior to the expiration of such period, any member of either party's Group wishes to destroy or dispose of any such Information that is at least three years old, prior to destroying or disposing of any of such Information, (a) the party whose Group is proposing to dispose of or destroy any such Information shall provide no less than 30 days' prior written notice to the other party, specifying the Information proposed to be destroyed or disposed of, and (b) if, prior to the scheduled date for such destruction or disposal, the other party requests in writing that any of the Information proposed to be destroyed or disposed of be delivered to such other party, the party whose Group is proposing to dispose of or destroy such Information promptly shall arrange for the delivery of the requested Information to a location specified by, and at the expense of, the requesting party.

- 39 -

SECTION 6.05  Confidentiality.  Subject to Section
6.02, which shall govern Privileged Information, from and after
the Distribution Date, each of Grace and New Grace shall hold,
and shall use reasonable efforts to cause its Affiliates and
Representatives to hold, in strict confidence all Information
concerning the other party's Group obtained by it prior to the
Distribution Date or furnished to it by such other party's
Group pursuant to this Agreement or the Other Agreements and
shall not release or disclose such Information to any other
Person, except its Affiliates and Representatives, who shall be
bound by the provisions of this Section 6.05, and each party
shall be responsible for a breach by any of its Affiliates or
Representatives; provided, however, that any member of the
Packco Group or the New Grace Group may disclose such Informa-
tion to the extent that (a) disclosure is compelled by judicial
or administrative process or, in the opinion of such Person's
counsel, by other requirements of law, or (b) such party can
show that such Information was (i) available to such Person on
a nonconfidential basis (other than from a member of the other
party's Group) prior to its disclosure by the other party's
Group, (ii) in the public domain through no fault of such Per-
son or (iii) lawfully acquired by such Person from another
source after the time that it was furnished to such Person by
the other party's Group, and not acquired from such source sub-
ject to any confidentiality obligation on the part of such
source known to the acquiror.  Notwithstanding the foregoing,
each of Grace and New Grace shall be deemed to have satisfied
its obligations under this Section 6.05 with respect to any
Information (other than Privileged Information) if it exercises
the same care with regard to such Information as it takes to
preserve confidentiality for its own similar Information.

SECTION 6.06  Cooperation with Respect to Government
Reports and Filings.  Grace, on behalf of itself and each mem-
ber of the Packco Group, agrees to provide any member of the
New Grace Group, and New Grace, on behalf of itself and each
member of the New Grace Group, agrees to provide any member of
the Packco Group, with such cooperation and Information as may
be reasonably requested by the other in connection with the
preparation or filing of any government report or other govern-
ment filing contemplated by this Agreement or in conducting any
other government proceeding relating to the pre-Distribution
business of the Packco Group or the New Grace Group, Assets or
Liabilities of either Group or relating to or in connection
with the relationship between the Groups on or prior to the
Distribution Date.  Such cooperation and Information shall in-
clude, without limitation, promptly forwarding copies of appro-
priate notices and forms or other communications received from
or sent to any government authority which relate to the Packco
Group, in the case of the New Grace Group, or the New Grace

- 40 -

Group, in the case of the Packco Group.  Each party shall make
its employees and facilities available during normal business
hours and on reasonable prior notice to provide explanation of
any documents or Information provided hereunder.

ARTICLE VII

NO REPRESENTATIONS OR WARRANTIES

SECTION 7.01  No Representations or Warranties.  Ex-
cept as expressly set forth herein or in any other Transaction
Agreement (including Article II and Sections 4.01, 4.02 and
5.05), New Grace and Grace-Conn. understand and agree that no
member of the Packco Group is, in this Agreement or in any
other agreement or document, representing or warranting to New
Grace or any member of the New Grace Group in any way as to the
Grace-Conn. Assets, the New Grace Business or the Grace-Conn.
Liabilities, it being agreed and understood that New Grace and
each member of the New Grace Group shall take all of the Grace-
Conn. Assets "as is, where is."  Except as expressly set forth
herein or in any other Transaction Agreement and subject to
Sections 4.01, 4.02 and 5.05, New Grace and each member of the
New Grace Group shall bear the economic and legal risk that the
Grace-Conn. Assets shall prove to be insufficient or that the
title of any member of the New Grace Group to any Grace-Conn.
Assets shall be other than good and marketable and free from
encumbrances.  Except as expressly set forth herein or in any
other Transaction Agreement (including Article II and Sections
4.01, 4.02 and 5.05), Grace understands and agrees that no mem-
ber of the New Grace Group is, in this Agreement or in any
other agreement or document, representing or warranting to
Grace or any member of the Packco Group in any way as to the
Packco Assets, the Packaging Business or the Packco Liabili-
ties, it being agreed and understood that Grace, Packco and
each other member of the Packco Group shall take all of the
Packco Assets "as is, where is."  Except as expressly set forth
herein or in any other Transaction Agreement and subject to
Sections 4.01, 4.02 and 5.05, Grace and each member of the
Packco Group shall bear the economic and legal risk that the
Packco Assets shall prove to be insufficient or that the title
of any member of the Packco Group to any Packco Assets shall be
other than good and marketable and free from encumbrances.  The
foregoing shall be without prejudice to any rights under Ar-
ticle II, Section 4.01, Section 4.02 or Section 5.05 or to the
covenants otherwise contained in this Agreement or any other
Transaction Agreement.

ARTICLE VIII

MISCELLANEOUS

SECTION 8.01  Conditions to Obligations.  (a)  The
obligations of the parties hereto to consummate the payment of
the Distribution are subject to the satisfaction of each of the
following conditions:

(i)  the transactions contemplated hereby (including
the Distribution, the Recapitalization, the Merger, the
amendment to the Grace Certificate of Incorporation and
otherwise as required by applicable law and stock exchange
regulations) shall have been duly approved by Grace share-
holders;

(ii)  all conditions to the Merger set forth in the
Merger Agreement (other than that the Distribution be con-
summated) shall have been satisfied or waived;

(iii)  all third-party consents and governmental ap-
provals required in connection with the transactions con-
templated hereby shall have been received, except where
the failure to obtain such consents or approvals would not
have a material adverse effect on either (A) the ability
of the parties to consummate the transactions contemplated
by this Agreement, the Other Agreements or the Merger
Agreement or (B) the business, assets, liabilities, finan-
cial condition or results of operations of Grace-Conn. or
Packco and their respective subsidiaries, taken as a
whole;

(iv)  the transactions contemplated by Article II
shall have been consummated in all material respects, to
the extent required to be consummated prior to the Distri-
bution;

(v)  the shares of New Grace Common Stock to be is-
sued in the Distribution, and the shares of Newco Common
Stock and the Newco Convertible Preferred Stock to be is-
sued in the Recapitalization and the Merger, as the case
may be, shall have been authorized for listing on the
NYSE, in each case subject to official notice of issuance;

(vi)  the Board of Directors of New Grace, composed as
contemplated by Section 2.09, shall have been duly elect-
ed;

(vii)  the Registration Statements shall have been de-
clared effective under the Exchange Act or the Securities

- 42 -

Act, as the case may be, by the SEC and no stop order sus-
pending the effectiveness of either of the Registration
Statements shall have been issued by the SEC and, to the
knowledge of Grace and New Grace, no proceeding for that
purpose shall have been instituted by the SEC;

(viii)  the applicable parties shall have entered into
each of the Other Agreements;

(ix)  (A) the Board of Directors of Grace shall have
received customary opinions of a nationally recognized
investment banking or appraisal firm in form and substance
reasonably satisfactory to such Board to the effect that,
after giving effect to the transactions set forth in Ar-
ticle II hereof, neither Grace nor New Grace and Grace--
Conn. will be insolvent (such opinions to be dated as of
the date of the Merger Agreement, the date the Board of
Directors of Grace declares the Distribution and the Dis-
tribution Date) and (B) the financial condition of each of
Grace and Grace-Conn. satisfies the requirements of Sec-
tion 170 of the Delaware General Corporation Law and Sec-
tion 33-687 of the Connecticut Business Corporation Act,
respectively, such that the distribution of the common
stock of Packco to Grace by Grace-Conn. and the Distribu-
tion may be effected without violating such Sections, and
the Board of Directors of Grace and the Board of Directors
of Grace-Conn. shall in good faith have determined that
such requirements have been satisfied; and

(x)  the transactions contemplated hereby shall be in
compliance with all applicable federal and state securi-
ties laws.

(b)  Any determination made by the Board of Directors
of Grace or Grace-Conn. on behalf of such party hereto prior to
the Distribution Date concerning the satisfaction or waiver of
any or all of the conditions set forth in this Section shall be
conclusive.

SECTION 8.02  Use of Grace Name and Mark.  Grace ac-
knowledges that Grace-Conn. shall own all rights in the "Grace"
name and logo and related tradenames and marks.  Effective at
the Distribution Date, Grace shall change its name to a name
that does not use the word "Grace" or any variation thereof and
shall itself, and shall cause each member of the Packco Group
to, cease all use of the "Grace" name as part of any corporate
name.  As promptly as practicable after the Distribution Date,
Grace shall, and shall cause each member of the Packco Group

- 43 -

to, cease all other use of the "Grace" name and logo and re-
lated tradenames and marks, *provided* that Grace may use inven-
tory including any such name, logo, tradenames or marks in ex-
istence as of the Distribution Date.  Grace shall cause the
Packco Group to use such names, logos and marks during such
transition period only to the extent consistent with past prac-
tice and as Grace reasonably believes is appropriate, and dur-
ing the period of such usage Grace shall cause the Packco Group
to maintain the same standards of quality with respect to such
names, logos and marks as previously exercised.  No such mate-
rial shall be used by the Packco Group after the six-month an-
niversary of the Distribution Date.

        SECTION 8.03  Complete Agreement.  This Agreement,
the Exhibits and Schedules hereto and the agreements and other
documents referred to herein shall constitute the entire agree-
ment between the parties hereto with respect to the subject
matter hereof (other than the Merger Agreement and the sched-
ules and exhibits thereto) and shall supersede all previous
negotiations, commitments and writings with respect to such
subject matter.

        SECTION 8.04  Expenses.  Except as otherwise specifi-
cally provided herein or in any other Transaction Agreement,
New Grace shall bear all costs and expenses (including all Debt
Costs, Adjusted Foreign Transfer Taxes, Severance Costs and
losses of benefits) incurred by Grace, New Grace and/or any
members of their respective Groups (collectively, the "Transac-
tion Costs") in connection with the transactions contemplated
by this Agreement and the Other Agreements (including the Con-
tribution (and the related transfers, separations and/or al-
locations of Assets and Liabilities), the Intragroup Spinoff,
the Distribution and the Recapitalization)); *provided* that
Grace (for the account of Newco after the Merger) agrees to
bear:  (i) the lesser of $50 million and 37% of the aggregate
amount of all Debt Costs, Adjusted Foreign Transfer Taxes and
Severance Costs; (ii) the lesser of $10 million and 37% of all
other Transaction Costs (excluding any Debt Costs, Adjusted
Foreign Transfer Taxes, Severance Costs and costs and expenses
payable by New Grace or Grace pursuant to Section 6.12 of the
Merger Agreement) and (iii) the fees and costs incurred in con-
nection with the Grace Credit Agreement.  "Severance Costs"
means the costs associated with the termination in connection
with the transactions contemplated hereby (including the Merg-
er) of employment of employees of Grace and Grace-Conn. located
at the Grace corporate headquarters.  To the extent Transaction
Costs are not included in the New Grace Capital Contribution,
Newco or New Grace shall promptly pay its share of any such
costs upon receipt of reasonable documentation relating to such
costs.  Appropriate payment shall be made between the parties

- 44 -