# EXHIBIT 21

Westlaw.

140 Cong.Rec. H10752-01
140 Cong. Rec. H10752-01, 1994 WL 545773 (Cong.Rec.)
**(Cite as: 140 Cong. Rec. H10752-01)**

Congressional Record --- House of Representatives
Proceedings and Debates of the 103rd Congress, Second Session
Tuesday, October 4, 1994

**\*H10752 BANKRUPTCY REFORM ACT OF 1994**

Mr. BROOKS.

Mr. Speaker, I move to suspend the rules and pass the bill (H.R. 5116) to amend title II of the United States Code, as amended.

The Clerk read as follows:

H.R. 5116

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

SECTION 1. SHORT TITLE.

(a) SHORT TITLE.-This Act may be cited as the "Bankruptcy Reform Act of 1994".

(b) TABLE OF CONTENTS.-The table of contents is as follows:

Sec. 1. Short title.

TITLE I-IMPROVED BANKRUPTCY ADMINISTRATION

Sec. 101. Expedited hearing on automatic stay.

Sec. 102. Jurisdiction to review interlocutory orders increasing or reducing certain time periods for filing plan.

Sec. 103. Expedited procedure for reaffirmation of debts.

Sec. 104. Powers of bankruptcy courts.

Sec. 105. Participation by bankruptcy administrator at meetings of creditors and equity security holders.

Sec. 106. Definition relating to eligibility to serve on chapter 11 committees.

Sec. 107. Increased incentive compensation for trustees.

Sec. 108. Dollar adjustments.

Sec. 109. Premerger notification.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

140 Cong.Rec. H10752-01                                                    Page 68
140 Cong. Rec. H10752-01, 1994 WL 545773 (Cong.Rec.)
**(Cite as: 140 Cong. Rec. H10752-01)**

cifically permit members of chapter 11 committees to receive court-approved reim-
bursement of their actual and necessary out-of-pocket expenses. The new provision
would not allow the payment of compensation for services rendered by or to the
committee members.

### Section 111. Bankruptcy code injunctions

This section adds a new subsection (g) to section 524 of the Code, establishing
a procedure for dealing in a chapter 11 reorganization proceeding with future per-
sonal injury claims against the debtor based on exposure to asbestos-containing
products. The procedure involves the establishment of a trust to pay the future
claims, coupled with an injunction to prevent future claimants from suing the
debtor.

The procedure is modeled on the trust/injunction in the Johns-Manville case,
which pioneered the approach a decade ago in response to the flood of asbestos
lawsuits, it was facing. Asbestos-related disease has a long latency period-up to
30 years or more-and many of the exposures from the 1940's, when asbestos was in
widespread use as an insulating material, had become the personal injury lawsuits
of the 1970's and 1980's. In 1982, when Johns-Manville filed for bankruptcy, it
had been named in 12,500 lawsuits, and epidemiologists estimated that 50,000 to
100,000 more could be expected, with a potential liability totalling $2 billion.
Kane v. Johns-Manville Corp., 843 F.2d 636, 639 (2d Cir. 1988).

From the beginning, a central element of the case was how to deal with future
claimants-those who were not yet before the court, because their disease had not
yet manifested itself. The parties in the Manville case devised a creative solu-
tion to help protect the future asbestos claimants, in the form of a trust into
which would be placed stock of the emerging debtor company and a portion of future
profits, along with contributions from Johns-Manville's insurers. Present, as well
as future, asbestos personal injury claimants would bring their actions against
the trust. In connection with the trust, an injunction would be issued barring new
asbestos claims against the emerging debtor company. Asbestos claimants would have
a stake in Johns-Manville's successful reorganization, because the company's suc-
cess would increase both the value of the stock held by the trust and the company
profits set aside for it.

The bankruptcy court appointed a special representative for the future
claimants; this special representative was centrally involved in formulating the
plan and negotiating support for it among the other creditors. The Johns-Manville
plan was confirmed and upheld on appeal. Kane v. Johns-Manville Corp., 68 B.R. 618
(Bankr. S.D.N.Y. 1986), aff'd in part, rev'd in part, 78 B.R. 407 (S.D.N.Y. 1987),
aff'd, 843 F.2d 636 (2d Cir. 1988). Nevertheless, lingering uncertainty in the
financial community as to whether the injunction can withstand all challenges has
apparently made it more difficult for the company to meet its needs for capital
and has depressed the value of its stock. This has undermined the "fresh start"

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

objectives of bankruptcy and the goals of the trust arrangement.

Meanwhile, following Johns-Manville's lead, another asbestos manufacturer, UNR, has resolved its chapter 11 reorganization with a similar trust/injunction arrangement. And other asbestos manufacturers are reportedly considering the same approach.

The Committee remains concerned that full consideration be accorded to the interests of future claimants, who, by definition, do not have their own voice. Nevertheless, the Committee also recognizes that the interests of future claimants are ill-served if Johns-Manville and other asbestos companies are forced into liquidation and lose their ability to generate stock value and profits that can be used to satisfy claims. Thus, the tension present in the trust/injunction mechanism is not unlike the tension present in bankruptcy generally.

The Committee has approved section 111 of the bill in order to strengthen the Manville and UNR trust/injunction mechanisms and to offer similar certitude to other asbestos trust/injunction mechanisms that meet the same kind of high standards with respect to regard for the rights of claimants, present and future, as displayed in the two pioneering cases. The Committee believes Johns-Manville and UNR were aided in meeting these high standards, in part at least, by the perceived legal uncertainty surrounding this mechanism, which created strong incentives to take exceptional precautions at every stage of the proceeding. The Committee has concluded, therefore, that creating greater certitude regarding the validity of the trust/injunction mechanism must be accompanied by explicit requirements simulating those met in the Manville case.

Section 111 requires, in order for present claimants to be bound by a trust/injunction, that the trust have the capability of owning a majority of the shares of the debtor or its parent or of a subsidiary; that the debtor prove that it is likely to be subject to substantial future asbestos claims, the number of which cannot be easily predicted, and that the trust is needed in order to deal equitably with present and future claims; and that a separate creditor class be established for those with present claims, which must vote by a 75 percent margin to approve the plan.

In order for future claimants to be bound by a trust/injunction, section 111 requires that the trust operate in a structure and manner necessary to give reasonable assurance that the trust will value, and be able to pay, similar present and future claims in substantially the same manner.

The asbestos trust/injunction mechanism established in the bill is available for use by any asbestos company facing a similarly *H10766 overwhelming liability. It is written, however, so that Johns-Manville and UNR, both of which have met and surpassed the standards imposed in this section, will be able to take advantage of the certainty it provides without having to reopen their cases.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Section 111 contains a rule of construction to make clear that the special rule being devised for the asbestos claim trust/injunction mechanism is not intended to alter any authority bankruptcy courts may already have to issue injunctions in connection with a plan or reorganization. Indeed, Johns-Manville and UNR firmly believe that the court in their cases had full authority to approve the trust/injunction mechanism. And other debtors in other industries are reportedly beginning to experiment with similar mechanisms. The Committee expresses no opinion as to how much authority a bankruptcy court may generally have under its traditional equitable powers to issue an enforceable injunction of this kind. The Committee has decided to provide explicit authority in the asbestos area because of the singular cumulative magnitude of the claims involved. How the new statutory mechanism works in the asbestos area may help the Committee judge whether the concept should be extended into other areas.

Section 112. Authority of bankruptcy judges to conduct jury trials in civil proceedings

This section would amend title 28 of the United States Code to clarify that bankruptcy judges may conduct jury trials and enter appropriate orders consistent with those trials if designated by the district court and with the express consent of all parties to the bankruptcy proceeding.

This amendment world clarify a recent Supreme Court decision and resolve conflicting opinions among the different circuits regarding this issue. The Supreme Court in conflicting opinions among the different circuits regarding this issue. The Supreme Court in Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989), held that in bankruptcy core proceedings, there is a constitutional right to a trial by jury.

The Granfinanciera court had no finding on whether bankruptcy judges could conduct civil trials, and the circuits have reached contrary opinions regarding this issue. Five circuits have held that, in the absence of enabling legislation, bankruptcy judges could not hold jury trials. See Official Committee of Unsecured Creditors v. Schwartzman (In re Stansbury Poplar Place, Inc.), 13 F.3d 122 (4th Cir. 1993); In re Grabill Corp., 987 F.2d 1153, reh'g en hand denied, 976 F.2d 1126 (7th Cir. 1992); Raforth v. National Union Fire Insurance Co. (In re Baker & Getty Financial Services Inc., 954 F.2d 1169 (6th Cir. 1992); Kaiser Steel Corp v. Frates (In re Kaiser Steel Corp., 911 F.2d 380 (10th Cir. 1990); In re United Missouri Bank of Kansas City, N.A., 901 F.2d 1449 (8th Cir. 1990). The Second Circuit has been the lone circuit to hold that bankruptcy judges have implicit authority to conduct jury trials. See In re Ben Cooper, Inc., 896 F.2d 1394 (2d Cir. 1990).

Section 113. Sovereign immunity

This section would effectively overrule two Supreme Court cases that have held that the States and Federal Government are not deemed to have waived their sover-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.