# EXHIBIT 23

Westlaw.

140 Cong.Rec. S14461-01
140 Cong. Rec. S14461-01, 1994 WL 553390 (Cong.Rec.)
**(Cite as: 140 Cong. Rec. S14461-01)**

Page 1

Congressional Record --- Senate
Proceedings and Debates of the 103rd Congress, Second Session
Thursday, October 6, 1994

*S14461 BANKRUPTCY REFORM ACT OF 1994

Mr. FORD.

Mr. President, I ask unanimous consent that the Senate proceed to the immediate consideration of H.R. 5116, the bankruptcy reform bill, just received from the House; that the bill be deemed read the third time, passed, the motion to reconsider laid upon the table.

The PRESIDING OFFICER.

Without objection, it is so ordered.

So the bill (H.R. 5116) was deemed read the third time, and passed.

Mr. GRASSLEY.

Mr. President, I am pleased to support H.R. 5116. This bill represents the collective wisdom of the Senate and the House concerning needed bankruptcy reforms. As an original cosponsor of the Senate-passed bill, S. 540, I would have its enactment. Nonetheless, compromise is the key to enact just about anything, I can support this compromise bill as a good effort to improve our Nation's bankruptcy laws. Indeed, several of the provisions of the House bill were an improvement on the Senate language.

At this time, I would like to address a number of the issues covered by this legislation. First, I am pleased that the House has agreed to create a bankruptcy review commission. Since the enactment of the present code in 1978, the code has not been able to accommodate the many changes in the economy and other laws. Although the code largely has functioned well, no one in 1978 could have foreseen the changed circumstances that now confront our bankruptcy system. This year, more than 900,000 bankruptcy petitions will be filed, many more than anyone could have imagined in 1978. Since 1978, the world economy has become more international in scope, and the economic boom, in part financed through debt in the 1980's, has led to a multitude of bankruptcies in the 1990's. Additionally, new laws have been enacted whose relation to bankruptcy has not been carefully evaluated. And despite the 1984 legislation in response to the Northern Pipeline decision, the constitutionality of the current bankruptcy system is not certain. The Blue-Ribbon Bankruptcy Commission established by this bill will evaluate the code's deficiencies, substantively and operationally, and make recommendations to the Congress for legislative change. Thus, while H.R. 5116 will improve the bankruptcy system, its

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

140 Cong.Rec. S14461-01                                                                Page 10
140 Cong. Rec. S14461-01, 1994 WL 553390 (Cong.Rec.)
**(Cite as: 140 Cong. Rec. S14461-01)**

Mr. BROWN.

Mr. President, I wonder if the distinguished manager of the bill, the senior Senator from Alabama, is available to answer one of two questions that I have regarding this bill? Specifically, Mr. President, when S. 540, the Bankruptcy Reform Amendments, was considered by the Senate earlier this year, the Senate adopted an amendment sponsored by myself; the senior Senator from Alabama, Mr. HEFLIN; and the Senator from Florida, Mr. GRAHAM. That amendment, which ultimately became Section 221 of the Senate-passed bill, sought to codify the authority of the courts to issue permanent injunctions under certain circumstances. Can the distinguished bill manager advise me regarding the disposition of that provision? Is it included in the bill that passed the other body and is before us for approval today?

MR. HEFLIN. Mr. President, if the Senator will yield, I can advice the Senator that the provision be refers to was approved by the House and is a part of the measure we have before us today. What was Section 221 of the Senate bill is how substantively reflected in Section 111 of the House bill. Certain minor changes to the language of the provision were recommended by the House, and I understand that the provision as adopted by the House is acceptable to the various parties that have been involved in this matter.

MR. BROWN. Mr. President, I thank the distinguished bill manager for his response, and I wonder if I might make an additional inquiry? Specifically, Mr. President, I wonder if the Senator from Alabama can enlighten the Senate regarding the impact of this "Supplemental Permanent Injunctions" provision on those existing Injunctions that have been issued in asbestos-related Chapter 11 reorganizations, as well as its impact on any subsequent Injunction that may be issued in an asbestos-related reorganization proceeding.

Mr. HEFLIN.

Mr. President, if the Senator will yield, I would be happy to respond. Mr. President, Section 111 will codify a court's authority to issue a permanent injunction to supplement the existing injunctive effect of Section 524 of the Code in asbestos-related Chapter 11 reorganizations. This section provides that, if certain defined conditions are satisfied, a court may issue a supplemental permanent injunction barring asbestos-related claims or demands against the reorganized company and channeling those claims to an independent trust. To qualify under the statute, such a trust is to be funded in whole or in part by the securities of the reorganized company, which at some time could be borrowed against, or more likely sold outright, to raise cash to pay claims; and the reorganized obligation to make future payments, including dividends, to the asbestos victims' trust.

Moreover this section is carefully limited to bankruptcy orders where certain specified conditions are satisfied, including requirements that a supermajority of the affected class of asbestos claimants vote to approve the plan creating the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

140 Cong.Rec. S14461-01                                                                                               Page 11
140 Cong. Rec. S14461-01, 1994 WL 553390 (Cong.Rec.)
**(Cite as: 140 Cong. Rec. S14461-01)**

trust and authorizing the injunction, and that the terms of the injunction be set out in the plan or related documents and fully detailed in any plan description issued for the purposes of soliciting creditor approval. If and when these and other conditions are satisfied, the section provides that the affected injunction is permanent and irrevocable except on initial appeal of the plan, if any.

   Mr. President, this statutory affirmation of the court's existing injunctive authority is designed to help asbestos victims receive maximum value. It does so by assuring investors, lenders, and employees that the reorganized debtor has indeed emerged from Chapter 11 free and clear of all asbestos-related liabilities other than those defined in the confirmed plan of reorganization, and that all asbestos-related claims and demands must be made against the court-approved trust. This added certainty will ensure that the full value of such a trust's assets-the securities upon which it relies in order to generate resources to pay asbestos claims-can be realized.

   Finally, Mr. President, with respect to the Senator's specific question, this Section applies to injunctions in effect on or after the date of enactment. What that means is, for any injunction that may have been issued under a court's authority under the Code prior to enactment, such an injunction is afforded statutory permanence from the date of enactment forward, assuming that it otherwise meets the qualifying criteria described earlier. A good example of this would be the injunctions issued in the Manville and the UNR Industries reorganizations, both of which are intended to be covered by this section and both of which will be confirmed as permanent under this statute, so that the securities of these reorganized companies should no longer be discounted because of any fear of unknown asbestos liabilities. Regarding any prospective asbestos-related trusts and their related injunctions, they, too, would qualify under the statute so long as the criteria outlined in the proposed legislation are satisfied.

   Mr. BROWN.

   Mr. President, I thank the distinguished bill manager for his explanation, and I am pleased that this provision has been approved by the other body and can be approved by the Senate again here today. As the Senator from Alabama has ably stated, adoption of this provision will assure that the financial markets are free to value the securities of reorganized companies such as Denver-based Manville Corporation, unencumbered by any suggestion that asbestos-related claims arising from Manville's pre-bankruptcy activities, whether existing now or manifesting in the future, may reach to the reorganized company in any fashion other than that provided in the confirmed plan of reorganization. In essence, we are affirming what Chapter 11 reorganization is supposed to be about: allowing an otherwise viable business to quantify, consolidate, and manage its debt so that it can satisfy its creditors to the maximum extent feasible, but without threatening its continued existence and the thousands of jobs that it provides. I am pleased to have been an original sponsor of this important provision, and I urge my colleagues to

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

140 Cong.Rec. S14461-01
140 Cong. Rec. S14461-01, 1994 WL 553390 (Cong.Rec.)
**(Cite as: 140 Cong. Rec. S14461-01)**

Page 12

support it and the entire Bankruptcy Reform Amendments package that is before us today.

Mr. HATCH. Mr. President, the Bankruptcy Act of 1994 is one of the most important pieces of economic legislation to be considered and passed by the 103d Congress. It is important because it clarifies many of the existing ambiguities in our bankruptcy law that have, in essence, discouraged the extension of new credit to our businesses in Utah and throughout the Nation.

The bill responds to these concerns by offering clear guidance to both creditors and debtors as to the risks they are undertaking. It strikes a fair and delicate balance between the rights and responsibilities of creditors and the rights and obligations of debtors. More importantly, it encourages the credit community to extend much needed new capital to the well deserving businesses in our communities seeking to grow and expand. In sum, this bill is good for business, good for creditors and good for consumers.

This bill also creates a new Bankruptcy Commission to study and investigate bankruptcy issues and problems. One issue that merits careful study is the relationship of local governments to bankruptcy law. This issue is of great concern to many local governments in Utah, including Salt Lake *S14465 City. We need to review how the priority provisions of the code impact our local governments as they are increasingly drawn into the bankruptcy process.

In coming to an agreement on the provisions contained in H.R. 5116, the House and the Senate have agreed to eliminate section 205 of S. 540, the Senate-passed bill. Section 205 provided that, unless a landlord obtain a stay pending appeal, the reversal or modification of an assignment of a lease will have no effect on a good faith assignee. While there is some disagreement as to the proper interpretation and implementation of the bankruptcy code in this area, I believe that the decision in in re Slocum was correct in its analysis of the law.

The House has added a new provision, section 216, to the Bankruptcy Reform Act and I would like to clarify my belief as to the purpose and intent of including this section. It is my understanding that the current statute of limitations contained in section 546(a) of title 11 requires that an avoidance action be brought within 2 years of the filing of a chapter 11 petition, even if a trustee or other estate representative is subsequently appointed or the case is later converted. Thus, under current law, if a trustee or other estate representative is appointed after the current 2 year statute of limitations expires, any actions which the trustee may discover are time-barred. This amendment has arisen from a perceived need to provide a period of time for a later appointed bankruptcy estate representative to investigate and institute actions.

This is yet another area of bankruptcy law that has been the subject of extensive litigation recently, and I commend the Congress for its attention to this

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.