**EXHIBIT 4**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:

W.R. Grace & Co., *et al.*             Chapter 11

           Debtors.            Bankruptcy No. 01-1139-JKF
           (Jointly Administered)

**Related to Doc. No. 18922, Debtors' Objection to the Unsecured Claims Asserted Under the Debtors' Credit Agreements Dated as of May 14, 1998, and May 5, 1999.**

## MEMORANDUM OPINION[1]

The matter before the court is Debtors' objection to the claims of their prepetition Bank Lenders. The objection is premised on §§502(b), 105(a), 726, and 1129 of the Bankruptcy Code. JPMorgan Chase Bank, in its capacity as agent for the Bank Lenders, filed Claim Numbers 9159 and 9168 as unsecured claims but included postpetition default interest.[2] *See* Exhibits A and B to Doc. No. 18922. It is the default interest portion of the claims to which Debtors object. For the reasons which follow we hold that the Bank Lenders are not entitled to postpetition interest at the default rate and we will sustain Debtors' objection on the limited §502(b) and §726 grounds asserted in the objection. We defer decision regarding §1129.

Relevant to the way the parties framed the issue is how the pending plan treats the Bank Lenders' claims. The plan of reorganization filed in 2008 provides for payment in full of the

---

[1]This Memorandum Opinion constitutes the court's findings of fact and conclusions of law.

[2]The proofs of claim also include demands for interest that was due on the date of the filing of the bankruptcy but the parties agree there was no prepetition default and that no such interest is owed.

1

principal amount of the Bank Lenders' claims plus interest in a percentage in excess of the nondefault contract rate but less than the contract default rate.[3] The 2008 plan is the result of agreement among Debtors, the Asbestos Claimants' Committee (ACC"), and the Future Claims Representative ("FCR"). The plan has not yet been confirmed[4] and does not propose to pay all allowed claims at 100 percent of the amounts they would receive absent the intervention of a

---

[3] Under a plan negotiated in 2005 an interest rate of 6.09 percent was negotiated and memorialized in a letter agreement. *See* Doc. No. 19072, Exh. A, Letter Agreement dated January 12, 2005, from Lewis Kruger, Counsel for Creditors' Committee, to Janet S. Baer, Counsel for Debtors ("the 2005 Letter Agreement"). A further agreement was entered into between Debtors and the Creditors' Committee in February of 2006 which provided that, in exchange for the Committee's continued support of the 2005 plan, Debtors would pay Lenders postpetition interest at 6.09 percent through December 31, 2005, and, beginning January 1, 2006, interest at a floating adjusted interest rate tied to the prime. *See* Doc. No. 19476 at 8, ¶ 18. *See* Doc. No. 19072, Exh. B, Letter Agreement dated February 27, 2006 ("the 2006 Letter Agreement"). Under the 2005 Letter Agreement, the Creditors' Committee was permitted to withdraw as a proponent of the 2005 plan if certain events did not occur, one of which was confirmation of that plan. That plan was never presented for confirmation and is no longer before the court. Therefore, it would appear that the 2005 Letter Agreement, as amended by the 2006 Letter Agreement, is no longer in effect.

The question was raised as to whether the Creditors' Committee as constituted in 2005 agreed on the rate in 2005 and 2006 as a committee which represented all its members or whether Committee members each agreed on their own behalf and not as authorized representatives of other Committee members and the Committee as a whole. In the former instance successors in interest such as the current Bank Lenders would be bound by the agreement. In the case before us the 2005 letter agreement was signed only by the Creditors' Committee chairman, Thomas F. Maher, of J.P. Morgan Chase & Co., agent for the Bank Lenders, on behalf of the entire Committee. Mr. Maher was the "point person" for the 2005 Plan negotiations. Doc. No. 19476, Debtors' Trial Brief in Support of Objection to Unsecured Claims Asserted Under Credit Agreements, at 5; Doc. No. 19323, Declaration of Robert M. Tarola, Senior Vice President - Corporate Strategy and former Chief Financial Officer of W.R. Grace & Co., in Support of Debtors' Objection, at 2, ¶ 3. Thus, the agreement was entered into on behalf of the entire Committee. Distinguish *In re Adelphia Communications Corp.*, 368 B.R. 140, 232 (Bankr.S.D.N.Y. 2007)(agreement executed by members only in their individual capacities, not as authorized representatives of any other entity).

[4] The plan confirmation hearing begins in June, 2009, and continues in July and September.

2

§524(g) trust.[5]

Bank Lenders make three arguments. First, Bank Lenders base their assertion to payment of interest at the default rate in their contracts on the presumption that Debtors have conceded solvency because the 2008 plan as proposed permits equity to retain an interest. As to the solvency issue, we conclude that the Bank Lenders' presumption that Debtors are solvent is not established. The Bank Lenders also assert that the default rate is required to satisfy the fair and equitable standard and best interests of creditors test applicable in some circumstances at the plan confirmation phase of the case. We find that issues concerning whether the plan is fair and equitable or is in the best interests of creditors must be reserved for the plan confirmation hearing. Finally, the Bank Lenders assert entitlement to the default rate based on alleged postpetition defaults by the Debtors. However, we find no evidence presented to substantiate a default on Bank Lenders' claims.

To begin the analysis, we note that under §502(b)(2) allowed claims do not include unmatured interest. As stated in *In re Dow Corning Corp.*, 244 B.R. 678, 685 (Bankr.E.D.Mich. 1999), if a claim is entitled to interest the interest is paid <u>on</u> the allowed claim, not <u>as</u> the allowed claim. Here, Bank Lenders hold unsecured claims. The question then becomes what kind of interest is the creditor entitled to receive. The presumption is that unsecured creditors receive no interest at all. There are exceptions to that rule: under §506(b) when a creditor is oversecured and under §726(a)(5) when the debtor is shown to have sufficient funds on hand to pay interest after distributions authorized by §726(a)(1) - (a)(4) are made. At this stage of these proceedings

---

[5]For example, the ZAI property damage claims to be paid through a §524(g) trust will receive a contribution toward the cost of removal of asbestos-containing Zonolite Attic Insulation ("ZAI"). The personal injury asbestos claims will be paid according to matrix values.

3

the Bank Lenders do not meet the standard under either exception as we explain in more detail below.

We address first the last of Bank Lenders' assertions, i.e., that Debtors defaulted under the loan agreements by (a) incurring postpetition nonmonetary covenant defaults, (b) filing bankruptcy, and (c) failing to make quarterly interest payments postpetition.

(a) Postpetition Nonmonetary Defaults

The only default mentioned in this category is Debtors' alleged failure to meet certain reporting requirements under the loan documents. Bank Lenders did not specify the reporting requirements that were not met and do not deny that during the course of this case Debtors have complied with the reporting requirements of the Bankruptcy Code. Moreover, the Bank Lenders, which continued to serve as lenders postpetition, have never, in the 8-year life of this case, expressed dissatisfaction with Debtors' reporting or filed any requests in connection therewith until they responded to Debtors' objection to their claims. For purposes of this Memorandum Opinion, we have insufficient evidence that any alleged reporting failures under the loan documents constitute a default of a type that would trigger any default interest provision in the loan documents.

(b) Filing Bankruptcy as an Event of Default Giving Rise to
Obligation to Pay Default Interest Rate

As a matter of law, the bankruptcy filing *per se* is not a permissible basis for invoking the contract default interest rate. Section 365(e) of the Bankruptcy Code prohibits enforcement of *ipso facto* clauses in contracts. *See In re IT Group, Inc., Co.*, 302 B.R. 483, 486 (D.Del. 2003).

(c) §502(b) and Postpetition Quarterly Interest Payments

The Bank Lenders' proofs of claim include, *inter alia*, pre- and postpetition interest. It is

4

undisputed that there were no prepetition defaults with respect to the obligations to the Bank Lenders and so no prepetition interest is owed.

As noted above, an unsecured creditor is not entitled to unmatured postpetition interest unless (a) debtor is shown to be solvent after all distributions are made, 11 U.S.C. §726, or (b) the creditor is oversecured. 11 U.S.C. §506. *See also Matter of Plunkett*, 191 B.R. 768, 779 (Bankr.E.D.Wis. 1995), *affirmed* 82 F.3d 738 (7th Cir. 1996). Section 502(b)(2) prohibits the allowance of unmatured interest as part of an allowed unsecured claim. *In re Coram Healthcare Corp.*, 315 B.R. 321, 324 (Bankr.D.Del. 2004). If interest is paid with respect to an unsecured claim at all, it is paid <u>on</u> an allowed claim, not <u>as</u> an allowed claim. *In re Dow Corning Corp.*, 244 B.R. 678, 685 (Bankr.E.D.Mich 1999). Furthermore, nonpayment of postpetition interest is not a default. The fact that the Bankruptcy Code precluded Debtors from paying postpetition interest means that Debtors will not be held to have defaulted for that reason. *See In re NextWave Personal Communications, Inc.*, 244 B.R. 253, 264 (Bankr.S.D.N.Y. 2000)(failure to make postpetition payments cannot be deemed a default when the payments are prohibited by the Bankruptcy Code). In general, the Bankruptcy Code prohibits payment of postpetition interest on unsecured claims and the Bank Lenders hold only unsecured claims.[6] For these reasons, Bank Lenders have not shown entitlement to default interest.

---

[6]"The age-old rule in bankruptcy, adopted from the English system, is that interest on claims stops accruing when the bankruptcy petition is filed . . . . In other words, creditors cannot recover postpetition interest . . . . One justification for the rule is that it promotes certainty . . . . By setting a date when interest stops, the rule saves the trustee from having to continuously recalculate the amount due each creditor. . . . It also saves the estate from having to pay extra for the delay in payment when that delay is necessary if the courts are to preserve and protect the estate for the benefit of all creditors. . . . Further, the rule prevents any unmerited gain or loss by creditors whose claims have different interest rates . . .; all are treated equally." *Matter of Fesco Plastics Corp., Inc.*, 996 F.2d 152, 155 (7th Cir. 1993).

5

Turning next to the issue of solvency, Bank Lenders argue that the issue is not governed by §502 but by the "fair and equitable" requirements of §1129. Bank Lenders assert that if they are not paid the default rate of interest, the plan cannot be found to be fair and equitable. The argument is premised on their assertion that Debtors have conceded solvency. Bank Lenders cite no cases, and our research has pointed us to no authority, that stand for the proposition that a debtor is presumed to concede solvency when a proposed plan provides for retention of interest by, or distribution to, equity. Debtors' solvency or lack thereof has not been established in this case. Furthermore, §1129 concerns plan confirmation standards and we are not at that stage of these proceedings. This is a claims objection matter.

(d) Exceptions to §502(b)(2)

Section 502(b)(2) prohibits allowance of unmatured interest as included within an allowed claim. There are two exceptions to §502(b)(2) - one is under §506(b) when a creditor is oversecured and the second is under §726(a)(5) when a debtor has sufficient funds left after paying other allowed claims (i.e., those in §726(a)(1) - (a)(4)) to pay interest, in which case the creditor is entitled to interest at the legal rate.[7] *See In re Shoen,* 176 F.3d 1150, 1153 at n.2 (9th Cir. 1999), *cert. denied* 528 U.S. 1075 (2000).

*(i) §506(b), Oversecured Creditors*

Section 506(b) provides that an oversecured creditor shall be paid interest on its claims as "provided for under the agreement or State statute under which the claim arose." The Bank

---

[7] According to Debtors, the federal judgment rate of interest when the bankruptcy was filed was 4.19 percent. As of the date of filing of the bankruptcy the contract default rate was 7.77 percent and the nondefault contract rate was 5.77 percent. As noted, the proposed interest rate under the plan is 6.09 percent. Doc. No. 18922 at 5, ¶ 12. *See* note 3, *supra.*

6

Lenders are unsecured, not oversecured, and, therefore, §506 does not apply.

Bank Lenders rely heavily on one case discussing default interest to unsecured creditors, *In re Dow Corning Corp.*, 456 F.3d 668, 679-80 (6th Cir. 2006), *cert. denied* 549 U.S. 1317 (2007). The case is inapposite. Again, the underpinning of Bank Lenders' arguments is a presumption that Debtors are solvent, a fact not established here. Even if Debtors are presumed to be solvent solely for purposes of this discussion, payment of interest at the default rate depends on the equities of the case. *Dow Corning* recognized that "[c]ourts in solvent debtor cases have overwhelmingly concluded that there is a presumption that the default interest rate should be allowed . . . . unless the higher rate would produce an inequitable result." 456 F.3d at 680.[8] *Dow Corning* noted that, in solvent debtor cases, "courts have generally confined themselves to determining and enforcing whatever prepetition rights a . . . creditor has against the debtor," absent compelling equitable considerations. *Id.* at 679. Thus, even in the case Bank Lenders rely on, payment of the default rate depends on the equities of the case and is not an entitlement. *Dow Corning* also noted that, because solvent bankruptcy estates are somewhat rare, most courts considering whether to award default interest "have done so in the context of an insolvent debtor" and have concluded that "default interest need not be awarded in every instance for a plan to pass muster under §1129(b)(1)." 456 F.3d at 678-79.

The cases *Dow Corning* relied upon, moreover, had no factual similarity to the case at bench. *Dow Corning* looked at, *inter alia*, *Matter of Southland Corp.*, 160 F.3d 1054 (5th Cir.

---

[8]Furthermore, the issue in *Dow Corning* was different. Under the plan in *Dow Corning* all unsecured creditors were to be paid in full with interest at the federal judgment rate. Most of their contracts provided for nondefault interest at a rate that exceeded the federal judgment rate in effect at the time and they objected to confirmation. Here, Bank Lenders will be paid interest at a rate higher than their nondefault rate.

7

1998), *Matter of Terry Ltd. Partnership*, 27 F.3d 241 (7th Cir.), *cert. denied sub nom. Invex Holdings, N.V. v. Equitable Life Ins. Co. of Iowa*, 513 U.S. 948 (1994); *In re Casa Blanca Project Lenders, L.P.*, 196 B.R. 140 (9th Cir. BAP 1996). All three cases involved oversecured creditors and *Casa Blanca* and *Terry Limited Partnership* involved sales of collateral securing the creditors' claims, not payment of claims through reorganization in a plan confirmation. Most, if not all, of the cases relied on in *Dow Corning* involved prepetition defaults as well as oversecured creditors. The cases involving §506 oversecured creditors or sales of oversecured creditors' collateral are inapplicable here.[9]

The only issue ripe for adjudication is whether, as unsecured creditors, Bank Lenders are entitled to the default rate of interest as a matter of claim allowance and we conclude that they are not. Whether as a matter of plan confirmation default interest should be awarded on the Bank Lenders' claims is not before us as: (a) we are not at the plan confirmation stage; (b) we

---

[9] *Matter of Southland Corp.*, 160 F.3d 1054 (5th Cir. 1998)(debtor defaulted prepetition and had been notified prepetition by oversecured creditors that the default interest rate was in effect; oversecured creditors held entitled to default interest); *Matter of Terry Limited Partnership*, 27 F.3d 241, 243 (7th Cir. 1994)(collateral of an oversecured mortgagee was sold postpetition; debtor had defaulted prepetition; there is a "presumption in favor of the [default] contract rate subject to rebuttal based upon equitable considerations"); *In re Casa Blanca Project Lenders, L.P.*, 196 B.R. 140 (9th Cir. BAP 1996)(oversecured creditor's collateral was sold during the course of a chapter 11; the court held that the nondefault contract rate applied subject to rebuttal for equitable considerations).

*General Elec. Capital Corp. v. Future Media Productions, Inc.*, 536 F.3d 969 (9th Cir. 2008), criticized the holding in *Casa Blanca* insofar as it "transposed the concept of 'cure' from §1124 and §365 into . . . §363." 536 F.3d at 974. The Court of Appeals in *General Electric Capital* held that the Bankruptcy Code does not preclude an <u>over</u>secured creditor from collecting interest at the contract default rate when the claim was being paid from the proceeds of a sale of assets securing the claim and the debtor was not curing a prepetition default under the plan.

8

have no evidence of solvency or insolvency; (c) Bank Lenders are unsecured creditors who will be paid in full with interest at a rate higher than their contract rate; (d) there is no prepetition default; and (e) there is no evidence of postpetition defaults that would trigger any default interest provisions in the loan documents.

*(ii) §726(a)(5) Solvency*

Bank Lenders face another obstacle. Section 726(a)(5) provides that, if a debtor is solvent, interest is to be paid at the legal rate, not at the contract default rate.[10] Section 726(a)(5) is applicable to chapter 11 cases through §1129(a)(7) and provides for payment of interest "at the legal rate" if the creditor has not accepted the plan.[11] *In re Coram Healthcare Corp.*, 315 B.R. 321, 346 (Bankr.D.Del. 2004)(citing cases). There are three approaches to the definition of "the legal rate of interest." One is the state law approach which provides that if a contract establishes an interest rate that contract rate is the legal rate. The second is that when a specific state statute sets a rate of interest, that rate is the legal rate. The third, the federal judgment rate approach, dictates that the legal rate is that established by 28 U.S.C. §1961. *See In re Beguelin*, 220 B.R. 94, 99 (9th Cir. BAP 1998). The Ninth Circuit Court of Appeals, in a well-reasoned opinion, has concluded that the "legal rate" for purposes of §726(a) is the federal judgment rate. *See In re Cardelucci*, 285 F.3d 1231, 1235 (9th Cir.), *cert. denied* 537 U.S. 1072 (2002)(award of

---

[10] In a slightly different context, the U.S. Supreme Court addressed the purpose of §726(a)(5) and found that it "requires no more than that undersecured creditors receive postpetition interest from a solvent debtor on equal terms with unsecured creditors rather than ahead of them...." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 379 (1988).

[11] Under §1129(a)(7)(A)(ii), an impaired class of claims must receive or retain property under the plan on account of each claim of a value, as of the plan effective date, that is not less than the holder would retain or receive if the debtor were liquidated under chapter 7 on that date.

9

postjudgment interest is dictated by federal law). Regardless of which approach would be selected here, <u>none</u> would be the default rate.

Bank Lenders argue that Debtors are presumed to be solvent because the 2008 plan provides a distribution to, or retention of interest by, equity. Bank Lenders cite no authority for the proposition that a debtor is presumed solvent simply because equity is to retain an interest under the plan. Likewise, they cite no cases for the proposition that a debtor concedes solvency when equity retains an interest under a proposed plan. *See Matter of West Texas Marketing Corp.*, 54 F.3d 1194, 1198 (5th Cir.), *cert. denied sub nom. Kellogg v. U.S.*, 516 U.S. 991 1995)(implicit in §726 obligation to pay postpetition interest on unsecured claims sufficient assets must remain following distributions under §726(a)(1) - (a)(4). The obligation "is ignored until the time the court determines whether the debtor's assets can meet the obligation." *Id.* at 1203.

Bank Lenders concede that the doctrine that unsecured creditors are entitled to postpetition interest only when a debtor is solvent is based upon Congressional policy that one creditor group should not benefit at the expense of another. Bank Lenders do not explain why paying the contract default rate of interest only to them is consistent with that policy but it does not matter - the law simply does not <u>entitle</u> any creditor in the position of the Bank Lenders to a default rate of interest. Our research has indicated, at best, a presumption of postpetition default interest payable to unsecured creditors only when solvency has been determined as a matter of fact which, in this case, it has not, or where the creditor is oversecured, which Bank Lenders are not. Even oversecured creditors do not have an absolute right to default interest; equitable considerations come into play.

Next, we address the plan confirmation issues.

(e) §1129

Bank Lenders argue that if they are not paid the default interest, the plan is not fair and equitable under §1129(b), does not meet the best interests of creditors test of §1129(a)(7), and does not comport with the absolute priority rule. As stated above, these issues cannot be addressed until the plan confirmation hearing. They are not ripe at this time.

(f) Inapplicability of Other Cases Cited by Bank Lenders

Other cases cited by the Bank Lenders do not support their position. For example, the Bank Lenders cite *In re Armstrong World Industries, Inc.*, 432 F.3d 507 (3d Cir. 2005), where the plan did not pay unsecured creditors the allowed amount of their claims in full but ensured that equity retained an interest, whether or not a class senior to equity consented. *Armstrong* is of no use to the Bank Lenders here inasmuch as the 2008 plan proposes to pay them 100 percent of the allowed amount of their claims in accord with §1129(b)(2)(B), plus interest in excess of the nondefault rate provided in their contract.

Bank Lenders point to the default interest rate to be paid to unsecured creditors in plans confirmed in *In re USG Corporation,* Bankruptcy No. 01-2094 (Bankr.D.Del.), and *In re Owens Corning,* Bankruptcy No. 00-3837 (Bankr.D.Del.). *USG* and *Owens Corning* involved plans in which the interest rate was not contested so are not germane. Neither involved a determination by the bankruptcy court that the default interest rate was required or appropriate.

The parties dispute the effect of the decision in *In re PPI Enterprises (U.S.), Inc.*, 324 F.3d 197 (3d Cir. 2003). In *PPI Enterprises* the Court of Appeals for the Third Circuit agreed with the bankruptcy court's holding that a solvent debtor must pay postpetition preconfirmation

11

interest on a claim in order for that claim to be unimpaired. However, the court said nothing about the interest being paid at the default rate and the case cannot be read to require the default rate to be paid.

### (g) Summary

In summary, we find that the Bank Lenders are not entitled to the postpetition default rate of interest as part of their allowed claims pursuant to §502 because Debtors have not been established to be solvent and Bank Lenders are unsecured creditors that, pursuant to the proposed plan, will be paid 100 percent of the principal balance of their claims plus interest thereon at a rate greater than the nondefault rate provided in their contracts. Thus, as a matter of claims allowance in the current posture of this case, Debtors' objection to the claims with respect to default interest is sustained and default interest is disallowed as part of the allowed claim. Whether default interest is appropriate to be paid on the Bank Lenders' allowed claims in the context of plan confirmation must await the plan confirmation hearing and the evidence adduced at that time.

An appropriate order will be entered.

DATE: May 19, 2009

*Judith K. Fitzgerald*   rmab
Judith K. Fitzgerald
United States Bankruptcy Judge

Debtors shall immediately serve a copy of this Memorandum Opinion on all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:

W.R. Grace & Co., *et al.*            Chapter 11

       Debtors.            Bankruptcy No. 01-1139-JKF
(Jointly Administered)

**Related to Doc. No. 18922, Debtors' Objection to the Unsecured Claims Asserted Under the Debtors' Credit Agreements Dated as of May 14, 1998, and May 5, 1999.**

**ORDER SUSTAINING DEBTORS' OBJECTION TO UNSECURED CLAIMS INSOFAR AS CLAIMS INCLUDE POSTPETITION INTEREST AT THE CONTRACT DEFAULT RATE**

AND NOW, this **19th** day of **May, 2009**, for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED** that Debtors' objection to the claims of Bank Lenders is **SUSTAINED** insofar as there is no entitlement to postpetition interest at the contract default rate on the principal balance of claims 9159 and 9168, which are unsecured. Plan confirmation issues are preserved.

It is **FURTHER ORDERED** that Debtors shall serve a copy of this Memorandum Opinion on and Order all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.

                                      *Judith K. Fitzgerald*   rmab
                                      United States Bankruptcy Judge

1