**EXHIBIT 6**

```
                 UNITED STATES BANKRUPTCY COURT
               WESTERN DISTRICT OF PENNSYLVANIA


IN RE:                         .   Case No.  01-01139 (JKF)
                               .   Jointly Administered
W.R. GRACE & COMPANY,          .
et al.,                        .   5414 U.S. Steel Tower
                               .   600 Grant Street
                               .   Pittsburgh, PA 15219
           Debtors.            .
                               .   June 22, 2009
. . . . . . . . . . . . . ..       9:04 a.m.


                      TRANSCRIPT OF HEARING
              BEFORE HONORABLE JUDITH K. FITZGERALD
              UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:         Kirkland & Ellis, LLP
                         By:  DAVID BERNICK, ESQ.
                              BARBARA HARDING, ESQ.
                              JANET BAER, ESQ.
                              LISA ESAYIAN, ESQ.
                         200 East Randolph Drive
                         Chicago, IL   60601

For the Debtors:         Kirkland & Ellis, LLP
                         By:  THEODORE FREEDMAN, ESQ.
                              JUSTIN BROOKS, ESQ.
                              DEANNA BOLL, ESQ.
                         Citigroup Center
                         601 Lexington Avenue
                         New York, NY   10022-4611


Audio Operator:          Cathy Younker

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```

---

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net

(609)586-2311       Fax No. (609) 587-3599

58

1  apply to loan agreements. It says it right in the Code, and
2  I'm happy to review it with particularity.
3          THE COURT: No, I understand, and you're concept of
4  the fact that even the filing of bankruptcy without the ipso
5  facto clause would accelerate the payments. That's why you
6  have a claim that you can file is not something that I even
7  think I need to have you argue.
8          MR. COBB: So, Your Honor, with -- just so I'm clear,
9  I want to -- because I want to walk carefully through this,
10 Your Honor agrees with me that the filing of the bankruptcy
11 case is a default.
12         THE COURT: No, I agree that it accelerates the
13 payments under the loan, because that's what you have to do in
14 order to file your claim.
15         MR. COBB: Okay.
16         THE COURT: The Bankruptcy Code will accelerate all
17 the obligations up to the point of the filing of the
18 bankruptcy. So any obligation that is due you can file your
19 claim for. Not stated very well, but --
20         MR. COBB: All right. That's okay, Your Honor. Let
21 me see if I understand. So if I can show Your Honor in the
22 loan agreements where the filing of the bankruptcy proceeding
23 is a default, and that default kicks in default interest, I can
24 sit down.
25         THE COURT: I don't know. Show me -- wait till I

**J&J COURT TRANSCRIBERS, INC.**

1  that the simple answer on impairment is 1124(1), under PPIE.
2  PPIE says, you give force to whatever bankruptcy limitations
3  apply and that includes 502, 726, therefore, no impairment
4  because the limitation that we're invoking is 502, perhaps,
5  726, either way we work.
6      We then get to Column 2, which is, they say, TAC, is
7  there such -- and the preliminary question on TAC on is, is
8  there such a thing as TAC on? Is there such a thing as a source
9  of a right to interest that goes beyond the claim.
10     THE COURT: Okay, I got it. We don't have to redo
11 that.
12     MR. BERNICK: Yes. And it's the same basic deal, but
13 the proof of the pudding, the proof of the pudding, this is why
14 what they're doing is so key here, is that 502 speaks directly
15 to unmatured interest as of the date of the filing.
16     THE COURT: Right.
17     MR. BERNICK: And their particular, their particular
18 breed of entitlement to unmatured interest is the provision of
19 their loan document that speaks the moment the petition is
20 filed. This might be different if they had a condition in
21 their contract that they could argue gave rise to a default
22 post petition. We could still argue about whether 502 still
23 was a bar, but 502 specifically addresses the particular kind
24 of provision that they've got here. It basically trumps, you
25 could read -- you know, you read 502, 502 specifically, on the

1  moment, trumps the kind of provision that they're invoking,
2  which is, rights that are triggered by the very fact of filing.
3  Indeed, you could say that effectively, 502 accomplishes the
4  same effect as the ipso facto precedence. It says, you can't
5  improve your position by virtue of the debtor having filed,
6  which then goes back to Your Honor's argument.
7       Your Honor's argument says that that's essentially
8  what we're saying, is that the debtor in taking advantage of
9  the fact that they're permitted to file the petition, thereby,
10 and gets into the protection of bankruptcy, including against
11 impairment arguments, by virtue of having filed.
12      And, therefore, and that's right, this really is
13 exactly the kind of -- if this provision is enforced,
14 notwithstanding 502, it basically always enables every single
15 time, the unsecured creditors to get what 502 would otherwise
16 deny them.
17      THE COURT: Well, okay. Your argument, if I
18 understand it correctly is, that 502 sets the allowed claim. In
19 this instance, I've defined the allowed claim as not including
20 any unmatured interest, which is what 502(b)(2) tells me I have
21 to do by operation of law.
22      MR. BERNICK: Right.
23      THE COURT: Okay. So, their unmatured -- or I'm
24 sorry, their prepetition allowed claim, as I've defined it and
25 ruled, is the principal without interest. The debtors' plan

1 position that it was wrong, well then we're going to walk right
2 through the door and we're going to put in some more evidence
3 on that, it's not just a declaration, there's more that's
4 there.  But, yes, we believe that Your Honor got it right on
5 non-payment the first time.
6     With respect to the payment portions, they're now
7 focused and they argue the acceleration provision and the lack
8 of need for notice, we say, okay, let's talk about that.  We
9 thought before that that was disposed of because it's,
10 effectively, an ipso facto provision and ipso facto provisions
11 are not favored, in fact, we've got more cases that are outside
12 the 365 context, but even if you were to acknowledge that
13 they've got this provision and even if this provision were to
14 read out in some fashion as being applicable to this case, it
15 can't trump 502, because 502 speaks specifically to this.  And
16 if 502 speaks specifically to it, then they can't get to
17 impairment under PPIE.
18     502 says -- where's 502?
19     THE COURT:  Well, the 365 argument, of course, is
20 still talking about contracts, even contracts to make loans
21 that are executory, and carves out an exception to those
22 contracts.  So, I'm not sure 365 applies in this context, I
23 don't think anybody has ever argued that this contract, the
24 loan that's at issue, is executory.  So, I don't think
25 365(e)(2) applies at all to the circumstances here.

1    MR. BERNICK: But we also believe that the ipso facto
2 law is not confined to 365.
3    THE COURT: Well, there are cases that would support
4 that view, there are also cases that would talk about financial
5 accommodations in a slightly different context. I'm not sure I
6 need to get there, I don't think 365 applies. At least if it
7 does, I've never heard a word, by anybody, suggesting that this
8 is an executory contract. So, I don't think 365, in that
9 sense, is operative in this case.
10   With respect to the 502 argument you're making, I
11 understand it. So, why don't we take a break, if you want to
12 cite a couple of cases when we get back, we'll do that, and
13 I'll give you a chance, Mr. Cobb, after the break. We're
14 taking a ten minute recess.
15   UNIDENTIFIED MALE SPEAKER: Sorry, Your Honor.
16              (Recess)
17   THE COURT: Please be seated. Mr. Bernick, before
18 you begin, I want to note for the record that I have had the
19 Sheppards checked on both on West Law and on LEXUS, again, for
20 the NextWave opinion that we cited in the opinion and I can't
21 see any place that it's been vacated, reversed, overruled. In
22 fact, I can't even see that it was appealed. So, if somebody
23 has an indication of where that is, I would like it. There are
24 a series of NextWave cases that have, in fact, been vacated on
25 appeal, but not the one we cited.

**J&J COURT TRANSCRIBERS, INC.**

1  we've been talking about here.
2  　　　　We're saying that 502, by its very terms, is in a
3  sense, a specific ruling on de facto in the context of
4  unmatured interest because is speaks specifically to unmatured
5  interest as of the date of the filing and the ipso facto clause
6  that they're talking about, obviously, is as of the date of the
7  filing.  So, it's right on point and, obviously, would then
8  trigger the non-impairment argument under PPIE in exactly the
9  fashion that we've indicated.
10 　　　　But counsel is kind of at pains to suggest that
11 somehow ipso facto clauses are only disfavored in the context
12 of 365.  And the answer to that is no.  365 addresses ipso
13 facto, but so does 541 and Judge Walrath's decision in the
14 context of the EBCI case, specifically deals with Section 541,
15 which has to do with property of the estate, and says that ipso
16 facto clauses do not control what constitutes property of the
17 estate.  The estate can't be divested of property rights by
18 virtue of an ipso facto clause.
19 　　　　So -- and, then she goes on to comment, Judge Walrath
20 goes on to comment that they are, generally ipso facto clauses
21 are generally disfavored, if not outright unenforceable, under
22 the bankruptcy code. It's broad language, but that's a
23 particularly appropriate observation in this case because
24 there's not just one, but there's clearly more than one,
25 there's 541, and we would say, 502, all of them express exactly

1  the same policy. Exactly the same policy. And under 502 it's
2  not a policy, it is an actual provision that under PPIE means
3  that there can't be impairment to the extent that clause does
4  not result in acceleration.
5      In the course of the break, my bankruptcy mentor,
6  Theodore Freedman, also pointed out to me that there is an
7  additional provision of 1124 that we ought to focus on and that
8  is 1124(2). We've only been talking about 1124(1), but if you
9  talk about 1124(2), this applies, this says a class is impaired
10 under a plan with respect to each claim or interest of such
11 class unless, with respect to each claim, the plan -- I don't
12 have the highlighter but -- notwithstanding any contractual
13 provision, or applicable law that entitles the holder of such
14 claim or interest, to demand or receive accelerated payment of
15 such claim or interest after the occurrence of a default, which
16 is what they're arguing, (a) cures any such default of a cure
17 before or after the commencement of the case under this title,
18 other than a default of a kind, specified kind, not the default
19 specified in 365(b)(2) of the kind of this title, or of a kind
20 that 365(b)(2) expressly does not require to be cured.
21     What this says is that if the plan cures a default
22 that otherwise gives rise to a demand for accelerated payment,
23 if it cures a default, then there's not impairment. And,
24 effectively, our plan cures the default to the extent that
25 there was non-payment of principal and interest. Effectively,

121

1  it does that and, therefore, really, unless you've got the --
2  unless the ipso facto clause is to be recognized.
3       So, our plan also is unimpaired with respect to the
4  lender group by virtue of 124(2) and then it says, but then
5  goes further. It says, well, the question is, well, are we
6  curing default insofar as a default rate of interest is
7  concerned, and the answer is no. We're not. But you take a
8  look at the remainder of the language of 1124(2)(a), it
9  specifically excludes that kind of default that does --
10 essentially does not need to be cured. What does that refer
11 to?
12      Well, if you take a look at 365(b)(2) --
13      THE COURT: Well, 365 isn't going to apply anyway.
14      MR. BERNICK: I understand that. But that was the
15 first thing I pushed back on Mr. Freedman for, but I think he's
16 correct, which is that this refers to a default of a kind
17 specified, it is the kind of default. In other words, this is
18 not a provision that is simply reading out to 365. This is a
19 more general provision. This provision says that if your plan
20 cures a default, that's the basis of a claim for acceleration,
21 it's not impairment. However, it also further says, you don't
22 have to cure the kind of default that wouldn't have to be cured
23 under 362. And what does that mean? It's 362(b)(2) and that,
24 of course, is defaults that include the commencement of the
25 case.

**J&J COURT TRANSCRIBERS, INC.**

122

1    THE COURT: The commencement of the case.
2    MR. BERNICK: So, if you take a look at 1124(2)(a),
3 (2)(a) recognizes now in the context of impairment,
4 specifically. Here we were talking about 502 means, that ipso
5 facto causes giving rise to acceleration are not recognized as
6 being allowable, now in the context of impairment, if we take a
7 look at 1124(2), 1124(2) recognizes that (a), where you've
8 cured, it's not impaired, and we have cured -- we have more
9 than cured with respect to the non-default contract rate and,
10 therefore, we're okay here, then they said -- and then to
11 answer the point that we haven't cured with respect to the
12 default, contract default rate, the answer is, we don't have to
13 cure because this contemplates that those kinds of defaults are
14 not being recognized by the code. And that is specifically --
15    THE COURT: Okay. Can I get back to what we were
16 supposed to be doing today, because the time is two hours past
17 it and we only have through Wednesday to get through
18 everything.
19    MR. BERNICK: Right.
20    THE COURT: We were supposed to be here for an
21 evidentiary hearing. Are there any facts that are in dispute
22 because you folks can argue all of this in a supplemental
23 brief. I think that PPI addresses somewhat this issue that
24 you're raising now, in any event. The thing about PPI is it
25 doesn't say what the rate of interest is that has to be applied

**J&J COURT TRANSCRIBERS, INC.**

1  Court on whatever schedule you think is appropriate.
2          THE COURT: All right. Mr. Pasquale?
3          MR. PASQUALE: Thank you, Your Honor, Ken Pasquale
4  for the Committee. Mr. Freedman will be surprised, but I stand
5  to help the debtors.
6          We talked about this a little bit on Thursday and now
7  I'm focused on the non-lender claims, of which Morgan Stanley
8  is one, but the non-lender claims in Class 9.
9          We did, for the committee, raise various objections
10 with respect to the treatment of that group of creditors, and
11 just so the record is clear, it is true the provisions in the
12 plan were suggested by the committee and negotiated with the
13 debtors. That doesn't bind any individual creditor like Morgan
14 Stanley, that's the Kensington case that's been cited to the
15 Court many times from the Third Circuit.
16         With respect to the committee's objection, however,
17 with respect to that sub-group of creditors in Class 9, the
18 debtors have made a statement that they are going to modify the
19 language with respect to the litigation protocol, to make clear
20 that no creditors legal, contractual, equitable rights, the
21 language from 1124, will be impacted by the procedures.
22         We wanted to be sure to preserve the argument that
23 any of those creditors had, to argue anything, both a default
24 rate, a contractual rate different from that provided in the
25 plan, interest on interest, whatever arguments they may have.

**J&J COURT TRANSCRIBERS, INC.**

1 talk about this and we'll finalize the scheduling issues
2 tomorrow.
3            THE COURT: Yes, sir.
4            MR. BROWN: Yeah, we're a little confused, but I
5 think we can take it up tomorrow morning.
6            THE COURT: Well, this is what I have so far, if this
7 will help, but, you know, if you want to modify it, you can let
8 me know in the morning. The debtor is to submit all of their
9 evidence to the insurers by July 2nd. Well, let's start with
10 tomorrow. We'll put all of the insurer evidence in tomorrow.
11 Then the debtors will do their counter-designations by July
12 2nd. By July 16, everybody's briefs are due, limited to 30
13 pages. So I expect one collective insurance brief and one
14 collective plan proponent brief. If you can't do it
15 collectively, you can divide up the number of pages among you,
16 but 30 pages. That's what I'm aiming for because I already
17 have massive briefs.
18            I don't want you to restate a single thing. What I'm
19 looking for is a post-trial submission, not a pretrial
20 submission. Don't redo it. I don't want to read it again.
21 I've been through it already. It took me a long time. I don't
22 want -- and I don't want it repeated. Okay. Argument, if I
23 need it, would be on July 22nd which is Tuesday at 9:00.
24            UNIDENTIFIED ATTORNEY: 21st, Your Honor.
25            UNIDENTIFIED ATTORNEY: 21st.

**J&J COURT TRANSCRIBERS, INC.**