**<u>EXHIBIT 10</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.**, *et al.*,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| **Debtors.** | ) | |
| | ) | |

## DECLARATION OF KEVIN A. MARTIN
## CERTIFYING TABULATION OF BALLOTS REGARDING
## VOTE ON FIRST AMENDED JOINT PLAN OF REORGANIZATION

I, KEVIN A. MARTIN declare:

1.      I am over the age of eighteen years and am competent to testify about the matters contained herein.  I am a Senior Manager of the BMC Group, Inc. (f/k/a Bankruptcy Management Corporation) ("BMC"), at its Southern California office located at 444 North Nash

---

[1]   The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

1

allowing a Claim for voting purposes only in response to a timely Filed Voting Motion, the amount allowed thereunder.

b.     The liquidated amount specified in a proof of claim timely Filed in accordance with the March 2003 Bar Date Order, so long as such Claim had not been disallowed or expunged by the Bankruptcy Court and was not the subject of an objection pending as of the Voting Record Date; *provided, however,* that the Holders of Claims arising from the Pre-petition Credit Facilities were entitled to vote such Claims, subject to the limitation in paragraph (f) below, notwithstanding the pending objection to post-petition interest payable in relation to such Claims.

c.     The amount of the Claim listed in the Schedules as liquidated, undisputed, and noncontingent.

d.     If a Claim was recorded in the Schedules or on a proof of claim as unliquidated, contingent, and/or disputed only in part, the Holder of the Claim was entitled to vote that portion of the Claim that was liquidated, noncontingent, and undisputed in the liquidated, noncontingent, and undisputed amount, subject to any limitations set forth herein and unless otherwise ordered by the Bankruptcy Court.

e.     If a proof of claim had been timely filed in accordance with the March 2003 Bar Date Order and such Claim was wholly unliquidated or contingent, the Claim amount, for voting purposes only, was $1.00, so long as such Claim had not been disallowed or expunged by the Bankruptcy Court and was not the subject of an objection pending as of the Voting Record Date.

f.     With respect to (a) through (e) above, any amount of post-petition interest that may be payable with respect to a Claim under the Plan was not to be included for purposes of tabulating votes to accept or reject the Plan.

## Equity Interests

27.    Each registered holder or beneficial owner of Parent Common Stock was entitled to a vote equal to the number of the registered holder's or beneficial owner's shares of Parent Common Stock as of the Voting Record Date. With respect to the tabulation of Ballots and Master Ballots for Equity Interests in the Parent, for purposes of voting, the amount used to tabulate acceptance or rejection of the Plan was as follows (in order of priority):

a.     Votes cast by beneficial owners holding Parent Common Stock through a Nominee were applied against the positions held by such entities as of the

15

Voting Record Date, as evidenced by the record and depository listings. Votes submitted by a Nominee, whether pursuant to a Master Ballot or prevalidated Ballots, were not counted in excess of the Record Amount of Parent Common Stock held by such Nominee.

b.   To the extent that conflicting votes or "overvotes" were submitted by a Nominee, whether pursuant to a Master Ballot or prevalidated Ballots, BMC resolved the conflict or overvote prior to the preparation of the vote certification.

c.   To the extent that overvotes on a Master Ballot or on prevalidated Ballots were not reconcilable prior to the preparation of the vote certification, BMC applied the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or prevalidated Ballots that contained the overvote, but only to the extent of the Nominee's position in Parent Common Stock.

d.   Multiple Master Ballots were allowed to be completed by a single Nominee and delivered to BMC. Votes reflected by multiple Master Ballots were counted, except to the extent that they were duplicative of other Master Ballots. If two or more Master Ballots were inconsistent, the latest otherwise valid Master Ballot received prior to the Voting Deadline, to the extent of any such inconsistency, superseded and revoked any prior Master Ballot.

e.   For purposes of tabulating votes, each registered holder or beneficial holder of Parent Common Stock was deemed to have voted the full amount of its holdings relating to Parent Common Stock.

28.    To the best of my knowledge, information and belief, BMC has complied in all respects with the Disclosure Statement Order and Voting Procedures in determining the validity of, and tabulating, the ballots. As set forth in the Voting Procedures, ballots cast to accept the Plan were accumulated and totaled for each voting class. Ballots cast to reject the Plan were accumulated and totaled for each voting class. For the purposes of tabulating votes, BMC counted each properly filed and completed ballot in accordance with the Voting Procedures. To the best of my knowledge, information and belief, all valid ballots received on or prior to the Voting Deadline by BMC in accordance with the Voting Procedures were counted and included in the tabulation.

16

29.   The results of the voting in all classes entitled to vote, as reflected on the valid ballots received by BMC prior to the Voting Deadline, are attached here to as Exhibit A.  As reflected in Exhibit A, Holders of at least two-thirds in amount and more than one-half in number (or for classes voting for Section 524(g) purposes, at least 75% in number) of claims voting in each impaired class have voted to accept the Plan.  The votes of creditors in Class 9, which is unimpaired, were provisionally solicited and provisionally tabulated.  More than one-half in number of claims voting in Class 9 voted to accept the Plan, but the provisional vote did not obtain the requisite two-thirds dollar amount for acceptance.

30.   I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 8, 2009

Kevin A. Martin
BMC Group, Inc.
444 North Nash Street
El Segundo, California 90245
Telephone:  (310) 321-5555
Telecopier:  (310) 640-8071

Claims Reconciliation and Solicitation
Consultant to the Debtors and Debtors in
Possession

State of California        )
                           )
County of Los Angeles      )

On June 𝟖 , 2009 before me, James H. Myers, a Notary Public, personally appeared Kevin A. Martin, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

17

KAB 14727721 5

JAMES H. MYERS
Commission # 1589628
Notary Public - California
Los Angeles County
My Comm. Expires Jul 19, 2009