**<u>EXHIBIT 23</u>**

BANKRUPTCY REFORM ACT OF 1978
P L 95-598

## HOUSE REPORT NO. 95-595

### [page 1]

The Committee on the Judiciary, to whom was referred the bill (H.R. 8200) to establish a uniform law on the subject of Bankruptcies, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass. The committee amendment strikes out all after the enacting clause and inserts a new text, which appears in italic type in the reported bill.

The amendment is an amendment in the nature of a substitute for the bill, incorporating six substantive amendments adopted by the committee, and numerous technical, drafting, and style changes to the bill. A detailed description of the six amendments adopted during committee deliberations is incorporated into the description of the bill contained in this Report, which addresses itself to the amendments in the nature of a substitute. Briefly summarized, they are as follows:

The first amendment provides an alternative to the United States trustee in the appointment of private standing chapter 13 trustees. The amendment permits United States trustees, with the approval of the Attorney General, to employ private standing trustees or public assistant United States trustees to serve in chapter 13 cases.

The second amendment limits the consumer priority in § 507(5) of proposed title 11 to $2,400 per individual.

The third amendment changes section 303(b) of the bill to delete the repealer of section 4(e) of the Perishable Agricultural Commodities Act and replace the repealer with an amendment to section 4(e) of that Act to allow suspension of a license in the event of bankruptcy if the circumstances of the bankruptcy warrant. This changes current

### [page 2]

law, which does not so limit the Secretary's discretion in determining whether to suspend the license in the event of bankruptcy.

The fourth amendment, agreed to by roll call vote of 18 to 13, struck certain special retirement provisions for transition service by bankruptcy judges, which were contained in sections 408 and 409 of the bill.

The fifth amendment places a $100,000 limit on contributions to the Referees' Salary and Expense Fund in chapter XI cases.

The final amendment, which was incorporated into the amendment in the nature of a substitute and not considered separately, makes the four special tax provisions contained in the proposed bankruptcy code (sections 346, 728, 1146, and 1331) inapplicable to Federal taxes.

## INTRODUCTION

### I. History

In 1970, Congress created the Commission on the Bankruptcy Laws of the United States to study and recommend changes in the bankruptcy laws.[1] The Commission became operational in June, 1971, and filed its final report with the Congress on July 30, 1973.[2] Its report was in two parts. Part I contained the Commission's findings and recommendations. Part II contained a draft of a bill to implement those recommendations. Don Edwards, Chairman of the Subcommittee on Civil and Constitutional Rights and a Member of the Commission, and

**LEGISLATIVE HISTORY**
P.L. 95–598

there would be no distribution on the claim, and the debtor would have a greater debt to repay after the case is closed than if the claim were paid in part or in full in the case or under the plan.

Subsection (d) governs the filing of claims of the kinds specified in subsections (f), (g), (h), (i), or (j) of proposed 11 U.S.C. 502. The separation of this provision from the other claim filing provisions in this section is intended to indicate that claims of the kind of commencement of the case, must be treated differently for filing purposes such as the bar date for filing claims. The Rules will provide for later filing of claims of these kinds.

*§ 502. Allowance of claims or interests*

A proof of claim or interest is prima facie evidence of the claim or interest. Thus, it is allowed under subsection (a) unless a party in interest objects. The Rules and case law will determine who is a party in interest for purposes of objection to allowance. The case law is well developed on this subject today. As a result of the change in the liability of a general partner's estate for the debts of this partnership, see proposed 11 U.S.C. 723, the category of persons that are parties in interest in the partnership case will be expanded to include a creditor of a partner against whose estate the trustee of the partnership estate may proceed under proposed 11 U.S.C. 723(c).

Subsection (b) prescribes the grounds on which a claim may be disallowed. The court will apply these standards if there is an objection to a proof of claim. The burden of proof on the issue of allowance is left to the Rules of Bankruptcy Procedure. Under the current Chapter XIII Rules, a creditor is required to prove that his claim is free from usury, Rule 13–301. It is expected that the Rules will make similar provision for both liquidation and individual repayment plan cases. *See* Bankruptcy Act § 656(b); H.R. 31, 94th Cong., 1st Sess., § 6–104(a) (1975).

Paragraph (1) requires disallowance if the claim is unenforceable against the debtor for any reason (such as usury, unconscionability, or failure of consideration) other than because it is contingent or unmatured. All such contingent or unmatured claims are to be liquidated by the bankruptcy court in order to afford the debtor complete bankruptcy relief; these claims are generally not provable under present law.

Paragraph (2) requires disallowance to the extent that the claim is for unmatured interest as of the date of the petition. Whether interest is matured or unmatured on the date of bankruptcy is to be determined without reference to any ipso facto or bankruptcy clause in the agreement creating the claim. Interest disallowed under this paragraph includes postpetition interest that is not yet due and payable, and any portion of prepaid interest that represents an original discounting of the claim, yet that would not have been earned on the date of bankruptcy. For example, a claim on a $1,000 note issued

[page 353]

the day before bankruptcy would only be allowed to the extent of the case actually advanced. If the original discount was 10% so that the cash advanced was only $900, then notwithstanding the face amount of note, only $900 would be allowed. If $900 was advanced under the note some time before bankruptcy, the interest component

6308

BANKRUPTCY REFORM ACT OF 1978
P.L. 95–598

of the note would have to be pro-rated and disallowed to the extent it was for interest after the commencement of the case.

Section 502(b) thus contains two principles of present law. First, interest stops accruing at the date of the filing of the petition, because any claim for unmatured interest is disallowed under this paragraph. Second, bankruptcy operates as the acceleration of the principal amount of all claims against the debtor. One unarticulated reason for this is that the discounting factor for claims after the commencement of the case is equivalent to contractual interest rate on the claim. Thus, this paragraph does not cause disallowance of claims that have not been discounted to a present value because of the irrebutable presumption that the discounting rate and the contractual interest rate (even a zero interest rate) are equivalent.

Paragraph (3) requires disallowance of a claim to the extent that the creditor may offset the claim against a debt owing to the debtor. This will prevent double recovery, and permit the claim to be filed only for the balance due. This follows section 68 of the Bankruptcy Act.

Paragraph (4) requires disallowance of a property tax claim to the extent that the tax due exceeds the value of the property. This too follows current law to the extent the property tax is ad valorem.

Paragraph (5) prevents overreaching by the debtor's attorneys and concealing of assets by debtors. It permits the court to examine the claim of a debtor's attorney independently of any other provision of this subsection, and to disallow it to the extent that it exceeds the reasonable value of the attorneys' services.

Postpetition alimony, maintenance or support claims are disallowed under paragraph (6). They are to be paid from the debtor's postpetition property, because the claims are nondischargeable.

Paragraph (7), derived from current law, limits the damages allowable to a landlord of the debtor. The history of this provision is set out at length in *Oldden* v. *Tonto Realty Co.*, 143 F.2d 916 (2d Cir. 1944). It is designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate. The damages a landlord may assert from termination of a lease are limited to the rent reserved for the greater of one year or ten percent of the remaining lease term, not to exceed three years, after the earlier of the date of the filing of the petition and the date of surrender or repossession. The sliding scale formula is new, is designed to protect the long-term lessor, and is included as a replacement of the dual provisions in current law of a three-year test for reorganization cases and a one-year test for liquidation cases. This subsection does not apply to limit administrative expense claims for use of the leased premises to which the landlord is otherwise entitled.

This paragraph will not overrule *Oldden*, or the proposition for which it has been read to stand: to the extent that a landlord has a

[page 354]

security deposit in excess of the amount of his claim allowed under this paragraph, the excess comes into the estate. Moreover, his allowed claim is for his total damages, as limited by this paragraph. By virtue of proposed 11 U.S.C. 506(a) and 506(d), the claim will be divided into a secured portion and an unsecured portion in those cases in which the deposit that the landlord holds in less than his damages. As under