**EXHIBIT 24**

# BANKRUPTCY REFORM ACT OF 1978
P.L. 95-598

## HOUSE REPORT NO. 95-595

[page 1]

The Committee on the Judiciary, to whom was referred the bill (H.R. 8200) to establish a uniform law on the subject of Bankruptcies, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass. The committee amendment strikes out all after the enacting clause and inserts a new text, which appears in italic type in the reported bill.

The amendment is an amendment in the nature of a substitute for the bill, incorporating six substantive amendments adopted by the committee, and numerous technical, drafting, and style changes to the bill. A detailed description of the six amendments adopted during committee deliberations is incorporated into the description of the bill contained in this Report, which addresses itself to the amendments in the nature of a substitute. Briefly summarized, they are as follows:

The first amendment provides an alternative to the United States trustee in the appointment of private standing chapter 13 trustees. The amendment permits United States trustees, with the approval of the Attorney General, to employ private standing trustees or public assistant United States trustees to serve in chapter 13 cases.

The second amendment limits the consumer priority in § 507(5) of proposed title 11 to $2,400 per individual.

The third amendment changes section 303(b) of the bill to delete the repealer of section 4(e) of the Perishable Agricultural Commodities Act and replace the repealer with an amendment to section 4(e) of that Act to allow suspension of a license in the event of bankruptcy if the circumstances of the bankruptcy warrant. This changes current

[page 2]

law, which does not so limit the Secretary's discretion in determining whether to suspend the license in the event of bankruptcy.

The fourth amendment, agreed to by roll call vote of 18 to 13, struck certain special retirement provisions for transition service by bankruptcy judges, which were contained in sections 408 and 409 of the bill.

The fifth amendment places a $100,000 limit on contributions to the Referees' Salary and Expense Fund in chapter XI cases.

The final amendment, which was incorporated into the amendment in the nature of a substitute and not considered separately, makes the four special tax provisions contained in the proposed bankruptcy code (sections 346, 728, 1146, and 1331) inapplicable to Federal taxes.

## INTRODUCTION

### I. HISTORY

In 1970, Congress created the Commission on the Bankruptcy Laws of the United States to study and recommend changes in the bankruptcy laws.[1] The Commission became operational in June, 1971, and filed its final report with the Congress on July 30, 1973.[2] Its report was in two parts. Part I contained the Commission's findings and recommendations. Part II contained a draft of a bill to implement those recommendations. Don Edwards, Chairman of the Subcommittee on Civil and Constitutional Rights and a Member of the Commission, and

## LEGISLATIVE HISTORY
P.L. 95-598

tory contract if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract is no longer executory.

Because of the sensitive nature of the commodities markets and the special provisions governing commodity broker liquidations in subchapter IV of chapter 7, the provisions governing rejection, liquidation, or termination of open contractual commitments under proposed 11 U.S.C. 765, and the provisions governing distribution in proposed 11 U.S.C. 767 (a) and (c) will govern if any conflict between those provisions and the provisions of this section arise.

Subsections (b), (c), and (d) provide limitations on the trustee's powers. Subsection (b) requires the trustee to cure any default in the contract or lease and to provide adequate assurance of future performance if there has been a default, before he may assume. This provision does not apply to defaults under ipso facto or bankruptcy clauses, which is a significant departure from present law.

[page 348]

Subsection (c) prohibits the trustee from assuming or assigning a contract or lease if applicable nonbankruptcy law excuses the other party from performance to someone other than the debtor, unless the other party consents. This prohibition applies only in the situation in which applicable law excuses the other party from performance independent of any restrictive language in the contract or lease itself. The purpose of this subsection, at least in part, is to prevent the trustee from requiring new advances of money or other property. The section permits the trustee to continue to use and pay for property already advanced, but is not designed to permit the trusee to demand new loans or additional transfers of property under lease commitments.

Thus, under this provision, contracts such as loan commitments and letters of credit are nonassignable, and may not be assumed by the trustee.

Subsection (d) places time limits on assumption and rejection. In a liquidation case, the trustee must assume within 60 days (or within an additional 60 days, if the court, for cause, extends the time). If not, the contract or lease is deemed rejected. In a rehabilitation case, the time limit is not fixed in the bill. However, if the other party to the contract or lease requests the court to fix a time, the court may specify a time within which the trustee must act. This provision will prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate.

Subsection (e) invalidates ipso factor or bankruptcy clauses. These clauses, protected under present law, automatically terminate the contract or lease, or permit the other contracting party to terminate the contract or lease, in the event of bankruptcy. This frequently hampers rehabilitation efforts. If the trustee may assume or assign the contract under the limitations imposed by the remainder of the section, then the contract or lease may be utilized to assist in the debtor's rehabilitation or liquidation.

The unenforceability of ipso facto or bankruptcy clauses proposed under this section will require the courts to be sensitive to the rights of the nondebtor party to executory contracts and unexpired leases. If the trustee is to assume a contract or lease, the courts will have to insure that the trustee's performance under the contract or lease gives the

## BANKRUPTCY REFORM ACT OF 1978
P.L. 95-598

other contracting party the full benefit of his bargain. An example of the complexity that may arise in these situations and the need for a determination of all aspects of a particular executory contract or unexpired lease is the shopping center lease under which the debtor is a tenant in a shopping center.

A shopping center is often a carefully planned enterprise, and though it consists of nuemrous individual tenants, the center is planned as a single unit, often subject to a master lease or financing agreement. Under these agreements, the tenant mix in a shopping center may be as important to the lessor as the actual promised rental payments, because certain mixes will attract higher patronage of the stores in the center, and thus a higher rental for the landlord from those stores that are subject to a percentage of gross receipts rental agreement. Thus, in order to assure a landlord of his bargained for exchange, the court would have to consider such factors as the nature of the business to be

[page 349]

conducted by the trustee or his assignee, whether that business complies with the requirements of any master agreement, whether the kind of business proposed will generate gross sales in an amount such that the percentage rent specified in the lease is substantially the same as what would have been provided by the debtor, and whether the business proposed to be conducted would result in a breach of other clauses in master agreements relating, for example, to tenant mix and location.

This subsection does not limit the application of an ipso facto or bankruptcy clause to a new insolvency or receivership after the bankruptcy case is closed. That is, the clause is not invalidated in toto, but merely made inapplicable during the case for the purposes of disporition of the executory contract or unexpired lease.

Subsection (f) partially invalidates restrictions on assignment of contracts or leases by the trustee to a third party. The subsection imposes two restrictions on the trustee: he must first assume the contract or lease, subject to all the restrictions on assumption found in the section, and adequate assurance of future performance must be provided to the other contracting party. Paragraph (3) of the subsection invalidates contractual provisions that permit termination or modification in the event of an assignment, as contrary to the policy of this subsection.

Subsection (g) defines the time as of which a rejection of an executory contract or unexpired lease constitutes a breach of the contract or lease. Generally, the breach is as of the date immediately preceding the date of the petition. The purpose is to treat rejection claim as prepetition claims. The remainder of the subsection specifies different times for cases that are converted from one chapter to another. The provisions of this subsection are not a substantive authorization to breach or reject an assumed contract. Rather, they prescribe the rules for the allowance of claims in case an assumed contract is breached, or if a case under chapter 11 in which a contract has been assumed is converted to a case under chapter 7 in which the contract is rejected.

Subsection (h) protects real property lessees of the debtor if the trustee rejects an unexpired lease under which the debtor is the lessor (or sublessor). The subsection permits the lessee to remain in possession of the leased property or to treat the lease as terminated by the rejection. The balance of the term of the lease referred to in para-