**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------- X
In re:                                         :    CHAPTER 11

W.R. GRACE & CO., *et al.*,            :    CASE NO. 01-01139 (JKF)
            Debtors.                           Jointly Administered
                                                   :

                                                   **Re: Docket Nos. 22153, 22399**
------------------------------------- X

**OBJECTION BY THE DEBTORS AND ARROWOOD
TO THE LIBBY CLAIMANTS' MOTION FOR SHORTENED NOTICE AND
<u>EXPEDITED CONSIDERATION OF MOTION TO DEFER</u>**

The Debtors and Arrowood[1] respectfully object to the Libby Claimants' motion for adjournment[2] of the Debtors' Motion for an Order Approving Settlement Agreement and Mutual Release with the Royal Parties dated June 17, 2009 [Dkt. No. 22153].[3]

    1.    The Debtors motion to approve the settlement is scheduled to be heard on July 27. Publication notice of the July 10 objection deadline and July 27 hearing date was run in the national edition of USA Today. The Official Committee of Asbestos Claimants ("ACC") and the Future Claimants Representative ("FCR") have consented in writing to the Grace Parties' entry into the Agreement and support the motion. No one other then the Libby Claimants filed an objection by the July 10 deadline for doing so.[4]

    2.    Granting the Libby Claimants' request for shortened notice and expedited consideration of their Motion to Defer on the self-created grounds of their untimely served discovery is unnecessary and would be highly prejudicial. Extensive discovery has been

---

[1] Arrowood Indemnity Company, f/k/a Royal Indemnity Company ("Arrowood").
[2] Libby Claimants' Motion for Leave from this Court's Case Management Order for Shortened Notice and Expedited Consideration of Motion to Defer Consideration of Debtors' Motion to Approve Settlement with Royal Parties [Dkt. No. 22399].
[3] The FCR has advised Arrowood through counsel that they join in the relief requested by this objection.
[4] BNSF filed a pleading three days late on July 13 that purports to set out objections to the settlement but really seems to be an objection to the Plan.

NY1:1784982.8

provided to the Libby Claimants including the production of thousands of pages of documents, copies of all the policies and the depositions of three Grace witnesses knowledgeable about the Royal coverage and prior settlement. Proceedings in the Bankruptcy Court are on a tight schedule and continue to move forward daily. If there is a deferment, the standstill provisions of the settlement would be put in jeopardy. Arguments on the merits of discovery should be made at the hearing on approval of the settlement and the request for an adjournment denied. This Court has no obligation to hear arguments on discovery issues related to a settlement prior to the settlement approval hearing.

## No Exigent Circumstance Warrants the Ex Parte Relief Sought by the Libby Claimants

3.      In their motion to shorten time, the Libby Claimants make the sweeping assertion that the Plan Proponents and Arrowood have not provided sufficient information to allow the Court to assess the Debtors' motion. This assertion is plainly wrong. Quite to the contrary, the Plan Proponents and Arrowood have worked in good faith to be responsive to the Libby Claimants' inquiries and requests, despite the fact that these requests seek information that is (i) irrelevant to the Court's inquiry in evaluating the parties' settlement agreement with the Debtors and the Plan Trust; (ii) clearly protected by the long-standing privileges and confidentiality pertaining to settlements; and (iii) not subject to discovery, as previously ruled by this Court.

4.      The Plan Proponents and Arrowood have provided the Libby Claimants with the information and documents needed to evaluate the propriety of the settlement. These materials include a copy of the fully executed settlement agreement for which approval is sought, the policies covered by the settlement agreement, details of the consideration to be provided and copies of the prior settlement agreements between Grace and Royal. Additionally, in response to the Libby Claimants' requests, the Debtors and/or Arrowood have produced: (i) correspondence

contemporaneous with the prior Grace/Royal settlement concerning the scope of that settlement; (ii) documents concerning the parties' course of performance under the prior settlement and (iii) documents concerning the issuance of the policies.  By our estimate, the documents identified include as much or more as the contents of five boxes.  In addition to these documents, the Libby Claimants have access to the publicly available pleadings and exhibits in the years-long coverage action between Grace and CNA.  *See Maryland Casualty Co. v. W.R. Grace & Co.*, No. 88-04337, (S.D.N.Y. June 21, 1988).

5. Moreover, Grace has produced for deposition three corporate-designee witnesses who were extensively cross-examined by the Libby Claimants over the course of three days about the prior Grace/Royal settlement and the Royal policies that are the subject of the current settlement.[5]  Grace has also offered the Libby Claimants a declaration of a corporate representative that confirms the arm's length negotiation of the settlement and explains its terms.[6]

6. The information, documents and witnesses produced to the Libby Claimants collectively answer any questions regarding whether the settlement should be approved under *In re Martin*, 91 F.3d 389 (3d Cir. 1996).[7]  Other bankruptcy courts in Third Circuit have deemed similar materials to provide "a sufficient factual background" for approval of an insurer settlement.  *See In re Congoleum*, Oct. 31, 2005 Tr. at 26:21-27:2 (Dkt. No. 3223).

---

[5] *See* Jeff Posner May 6, 2009, Deposition Tr. pages 143:12-148:12, 148:13-149:23 and 308:8-314:7 [Arrowood's Initial Deposition Designations of Testimony of Jeffrey Posner, Richard Finke, Jay Hughes and Peter Van N. Lockwood and Request for Judicial Notice, Dkt. No. 22144] (attesting to good faith and arm's length nature of the 1995 settlement); Jay Hughes June 11, 2009, Deposition Tr. pages 367:6-371:12 [Dkt. No. 22144] (confirming that "Grace had fully and finally released Royal from any further liability for asbestos-related claims under the Grace/Zonolite policies").

[6] The Debtors and Arrowood will shortly file with the Court the declarations, a draft of which was circulated approximately two weeks ago to the Libby Claimants.

[7] The four *Martin* factors that bankruptcy courts must consider when approving settlement agreements are "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."

**Libby's Motion to Defer is Predicated on
Self-Created Grounds**

7.  On top of the document and deposition discovery provided by Grace, Arrowood offered to produce its counsel involved in the settlement negotiations and a corporate designee for deposition. On July 9, Arrowood offered to produce its counsel for deposition on July 13 at a location within driving distance of the Boston office of the Libby's bankruptcy counsel. This offer, and Arrowood's offer to produce a corporate designee during the week of July 13, were both turned down on the pretext that the Libby Claimants had to have not just the settlement agreement but also every draft of the settlement agreement before they would depose anyone. This discovery clearly is not relevant to the Court's consideration of the *Martin* factors because basic discovery of the facts provides the necessary information.

8.  While the Court need not reach beyond this point, should it do so the comprehensive extent of the discovery provided can be seen by walking through the answers provided to the Libby Claimants' document requests:

+ *Document Request No. 1* asked for all insurance policies issued by a Royal Party to Grace. In response to this request, Grace produced its policy library and Arrowood produced the Royal excess policies.

+ *Document Request No. 2* asks for all settlement agreements between a Grace Party and a Royal Party, including the final 1995 Settlement Agreement and earlier drafts. In response to this request, Arrowood produced the signed Stipulation of Authenticity between Grace and Arrowood that contains, amongst other documents relating to the 1995 Settlement, a copy of the 1995 Settlement Agreement.

+ *Document Request No. 3* asks for all the documents of the Royal Parties that concern the 1995 Settlement Agreement, including documents relating to the negotiation of the settlement, and documents relating to interpretation of the Settlement. In response to this very expansive, burdensome, and vague Request, Arrowood and the Debtors have produced letters Royal and Grace exchanged during the negotiation, and finalization, of the 1995 settlement—some of which explicitly discuss the extent of the coverage resolved by the 1995 Settlement—as well as documents from the signed

Stipulation of Authenticity that include correspondence of the Royal Parties related to the 1995 Settlement Agreement, and all of the exhibits to Arrowood's Disclosure Statement objections (which dealt almost exclusively with issues relating to the 1995 Settlement).

+ *Document Request No. 4* asks for all communications, between any Grace Party and any Royal Party relating to the 1995 Settlement Agreement, including communications in the course of negotiation of the settlement, communications after the settlement's execution, communications concerning the submission of claims under any of the Subject Insurance Policies following the 1995 Settlement Agreement, and the May 5, 2006 letter from Carl Pernicone and Jay Hughes to Jon Moyer. In response to this similarly expansive, vague and overly-burdensome Request, Arrowood and the Debtors have produced letters Royal and Grace exchanged during the negotiation, and finalization, of the 1995 settlement—some of which explicitly discuss the extent of the coverage resolved by the 1995 Settlement. These documents comprise communications between Royal and Grace occurring both during the negotiation of the 1995 Settlement, and communications occurring after the terms of the 1995 Settlement were agreed upon by the parties.

+ *Document Request No. 5*, which is far from clearly drafted, asks for all documents that "form the basis for statements made in the first full paragraph of page 5 of the letter dated November 8, 2008 from Paul Koepff and Tancred Schiavoni to David Bernick." Arrowood has produced in response to this Request correspondence between Grace and Arrowood relating to the 1995 Settlement, the Stipulation of Authenticity and the documents contained therein and all of the exhibits to its Disclosure Statement objections. Arrowood has specifically objected to this Document Request on the grounds that its use of the vague term "form the basis of" makes this Request, as drafted, both unclear, and unduly burdensome.

+ *Document Request No. 6* asks for all secondary evidence referred to in paragraph VII.G. of the Settlement Agreement and all secondary evidence previously exchanged between the parties. In response to this request, Arrowood produced historical documents and Grace made available a witness for deposition during confirmation-related discovery who was extensively cross-examined by the Libby Claimants on these documents.

+ *Document Request No. 7* states just three words: "All BNSF Policies." While the meaning of this request is not entirely clear, Arrowood and the Debtors have produced in response copies of the contractual indemnity agreement between BNSF and Grace, as well as correspondence, including some from over 50 years ago, relating to the BNSF contractual indemnity agreements.

9. This level of response is far above and beyond what is called for in advance of a hearing to approve a settlement. None of the other settling insurers whose agreements have been approved provided this level of information about their settlements. Indeed, the real question is

whether the Libby Claimants are entitled to any discovery whatsoever.[8]

### The Libby Claimant Objections Do <u>Not Require Discovery</u>

10.     The bottom line is that no party—not the Libby Claimants or anyone else—has challenged the good faith of the Arrowood settlement. Nor could they. This settlement was negotiated beginning to end under the auspices of, and overseen by, the FCR and ACC. The ACC, FCR and Debtors participated in the settlement discussions. The Libby Claimants are members of the ACC. Here, the Libby Claimants' only objection concerns their interpretation of the injunctions to be issued in support of the settlement. The resolution of this issue falls within the four corners of the documents and there is no need to resort to parol evidence.

11.     Moreover, if the Libby Claimants truly believed that Arrowood's responses were inadequate, they had ample opportunity to file a motion to compel discovery before the July 10 deadline. They did not do so. By that failure, they are barred from claiming any deficiency now.[9] Furthermore, arguments on the merits of discovery should be made at the hearing on approval of the settlement. This Court has no obligation to hear arguments on discovery issues related to a settlement prior to the settlement approval hearing.

---

[8]     The Libby Claimants' main discovery complaint is that the Plan Proponents and Arrowood have not produced drafts of the settlement agreement. *See* Libby Claimants' Objection to Debtors' Motion to Approve Settlement with Royal Parties at 4–5 [Dkt. No. 22397]. The Libby Claimants cite no case law that permits a claimant in a bankruptcy case to obtain unfettered discovery of a debtor's confidential settlement communications. To the contrary, courts in the Third Circuit have required that the party seeking discovery of information relating to settlement negotiations must make a particularized showing that the evidence is likely to lead to the discovery of admissible evidence. *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 154 F.R.D. 552, 561–562 (D.N.J. 1994). The Libby Claimants have failed to meet this burden.

[9]     *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999) (holding that absent unusual circumstances a motion to compel should be filed before the scheduled date for dispositive motions); *Wells v. Sears Roebuck and Co.*, F.R.D. 240, 241 (S.D. Miss. 2001) (holding that "if the conduct of a respondent to discovery necessitates a motion to compel, the requester of the discovery must protect himself by timely proceeding with the motion to compel. If he fails to do so, he acts at his own peril."); *Suntrust Bank v. Blue Water Fiber, L.P.*, 210 F.R.D. 196, 200-01 (ED. Mich. 2002) (finding failure to promptly enforce discovery rights constituted a waiver of such rights) (citing 8 A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure* § 2285 (2d ed. 1994) (generally, if a moving party has unduly delayed in filing a motion for an order compelling discovery, a court may conclude that the motion is untimely)).

## An Adjournment would Severely
## Prejudice All Parties

12.     Putting aside these issues, the deferment that the Libby Claimants seek would severely prejudice all parties and cause chaos.  The proceedings in the Bankruptcy Court are on a tight schedule and continue to move forward.  Proceedings toward confirmation are moving forward daily.  If there was a deferment, the standstill provisions of the settlement would be put in jeopardy and the parties and the Court faced with Arrowood and the Plan Proponents reinitiating litigation over intensely disputed issues at great cost to the estate.[10]  Among other things, this includes a pending appeal in the bankruptcy case where Arrowood is a party.  At the same time, the Libby Claimants would presumably use the deferment to press for even more intrusive discovery into settlement communications which could easily upset what is at best a tenuous situation as is.

13.     The Plan Proponents and Arrowood have had three meet and confer sessions with counsel for the Libby Claimants.  Every effort was made to respond to questions and resolve any legitimate information requests.  The Libby Claimants have shown little interest in resolving any issue they may have concerning Arrowood's settlement and seem intend on delaying a hearing on the motion.

---

[10]   The Grace/Arrowood Settlement Agreement contains various litigation standstill provisions.  *See* Grace/Arrowood Settlement Agreement Section III (I).

## CONCLUSION

Arguments on the merits of discovery should be made at the hearing on approval of the settlement. This Court has no obligation to hear arguments on discovery issues related to a settlement prior to the settlement approval hearing.

Dated: July 14, 2009
      Wilmington, Delaware

| | |
|---|---|
| By: /s/ Timothy P. Cairns<br>Timothy P. Cairns, Esquire (#4228)<br>PACHULSKI STANG ZIEHL & JONES LLP<br>James O'Neill (#4020)<br>Kathleen P. Makowski, Esquire<br>919 North Market Street, 17th Floor<br>P.O Box 8705<br>Wilmington, DE 19899-8705<br>Telephone (302) 452-4100<br>Fax (302) 452-4400<br><br>-and-<br><br>Kirkland & Ellis LLP<br>David M. Bernick<br>Theodore L. Freeman<br>Deanna D. Boll<br>Citigroup Center<br>601 Lexington Avenue<br>New York, NY 10022<br>Telephone (202) 446-4800<br>Fax (212) 446-4900<br><br>*Counsel for Debtors and Debtors in Possession* | By: /s/ Garvan F. McDaniel<br>Garvan F. McDaniel, Esq. (#4167)<br>BIFFERATO, GENTILOTTI LLC<br>800 N. King Street, Plaza Level<br>Wilmington, DE 19801<br>(302) 429-1900 Phone<br>(302) 429-8600 Fax<br><br>-and-<br><br>Carl J. Pernicone, Esq.<br>WILSON, ELSER, MOSKOWITZ EDELMAN & DICKER, LLP<br>150 East 42nd Street<br>New York, NY 10017-5639<br>Telephone: (212) 490-3000<br><br>-and-<br><br>Tancred V. Schiavoni, Esq.<br>O'MELVENY & MYERS LLP<br>7 Times Square<br>New York, New York<br>(212) 326-2267<br><br>*Counsel to Arrowood Indemnity Company, f/k/a Royal Indemnity Company* |

9