IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>(Jointly Administered)<br><br>Ref. No. 22017 |

## LIBBY CLAIMANTS' REPLY BRIEF IN SUPPORT OF MOTION TO RECONSIDER

Libby Claimants,[1] by and through their counsel of record, file this Reply Brief in Support of the [Motion to Reconsider[2]], together with a Motion for Leave to File Reply Brief. This brief is necessary and warranted given the manifest injustice that could occur to Libby Claimants if their treating physician, Dr. Whitehouse, is barred from testifying, and due to the errors made in the Grace and Arrowood Responses, to which Libby Claimants should be entitled to reply.

### ARGUMENT

**I.      Libby Claimants Do Satisfy the Standard for Reconsideration.**

1.      Grace and Arrowood rely upon the same standard for reconsideration as Libby Claimants. Their Responses point out that the Motion to Reconsider is not based upon any change in controlling law, but is instead based upon the alternative prongs allowing reconsideration based on new evidence or to prevent manifest injustice. *See Max's Seafood Cafe v. Quinteros by Lou-Ann, Inc.*, 176 F.3d 669, 677 (3d Cir.1999); *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995). They run astray in failing to recognize the

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [D.I. 21365], as it may be amended and restated from time to time.
[2] On May 27, 2009, this Court entered a Modified Order Granting in Part Motion of Arrowood Indemnity Company, f/k/a/ Royal Indemnity Company to Strike Whitehouse Expert Report or, Alternatively, Compel the Production of Documents and Databases on Which He Relies and for Entry of a Confidentiality Order." (D.I. 21874) ("Modified Order"). On June 8, Libby Claimants filed a Motion to Reconsider the Modified Order. (D.I. 22017) ("Motion to Reconsider"). On July 10, briefs opposing the Motion to Reconsider were filed by Grace (D.I. 22388) ("Grace Response") and Arrowood (D.I. 22390) ("Arrowood Response").

{393.001-W0001258.}

affidavits filed in support of the Motion to Reconsider[3] as the new evidence that they most certainly are. The Responses also ignore Dr. Whitehouse's primary role as treating physician of the Libby Claimants. As such, they ignore the different standard of production for reliance materials pursuant to FRCP 26(a)(2)(B) for Dr. Whitehouse, and the consequent, indeed unheard of injustice that would occur from striking Dr. Whitehouse's testimony <u>as a treating physician</u>.

## II.   The St. John's and CARD Affidavits are New Evidence Justifying Reconsideration.

2.   Grace characterizes the St. John's and CARD Affidavits as mere restatements of "the hospitals' long established policies for producing records." (Grace Response, p.5). Arrowood calls the Affidavits irrelevant and argues that they should have been presented at the May 14, 2009, Hearing. (Arrowood Response, p.4-6). Both Responses ignore a key element of the Affidavits. The Affidavits constitute new evidence available only after entry of the Modified Order, in part because they are themselves based upon and reflect policy stemming from specific entry of this Court's Modified Order and the related May 26, 2009, Protective Order. The St. John's Affidavit, ¶ 12, and CARD Affidavit, ¶ 12, state:

> [CARD/St. John]'s willingness and ability to produce medical records to the "Plan Proponents or other requesting parties" is governed by and <u>stems only from the Modified Order, together with the Protective Order</u> . . . . Prior to entry of the Modified Order compelling [CARD/St. John's] to produce the medical records, . . . [CARD/St. John's] would not have been at liberty to produce or allow access to a patient's medical records . . . (emphasis added)

3.   Momentarily setting aside whether Libby Claimants <u>should</u> have to produce medical records for all 1,800 Libby asbestos patients, these Affidavits constitute new evidence about what Libby Claimants <u>could</u> have produced without an order from this Court. Not until this Court entered the Protective Order and the Modified Order did Libby Claimants have any

---

[3] See affidavits of June 4, 2009 ("St. John's Affidavit") and June 8, 2009 ("CARD Affidavit"), attached respectively as Exhibits 2 and 3 to the Motion to Reconsider.

basis or right to approach St. John's and CARD with requests for other patients' medical records. The Affidavits are not vague policy. They state that this Court's orders are the basis and necessary conditions for the production of Libby medical records. Without actual court order/s dictating disclosure, St. John's and CARD could not initiate any potential production regarding the 850 Libby asbestos patients. Therefore, they constitute new evidence.[4] Suggestions that Libby Claimants could have secured or submitted the records or Affidavits earlier are naive.

    4.    The Motion to Reconsider seeks reevaluation of the obligation to produce medical records for all 1,800 Libby asbestos patients, and of any sanction against Dr. Whitehouse or Libby Claimants related thereto. The Motion to Reconsider also asserts that the terms of any production, such as the time needed for it and who bears its costs, must be reconsidered in light of the new evidence. The new evidence relates to those potential considerations by stating specific facts about costs and previous productions in which Libby Claimants were not involved. Even if the Court maintains its interpretation of Dr. Whitehouse's obligations pursuant to FRCP 26(a)(2)(B), the Affidavits should be considered new evidence under FRCP Rule 59(e) and an appropriate, independent basis for reconsideration of how and when any production occurs.

### III. Libby Claimants Could Not Have Been Expected Prior to the Hearing to Interpret FRCP 26 or Dr. Whitehouse's Obligations as Broadly as in the Modified Order.

    5.    Grace's and Arrowood's Responses argue that regardless of the Affidavits, Libby Claimants should suffer the sanction of having Dr. Whitehouse stricken because the obligation to produce all patient records existed (and should have been known) as of December 2008. Libby Claimants cannot be held to perceive or comply with such a duty. If Libby Claimants do have

---

[4] The Court implies that redaction of the 850 sets of medical records is the only necessary condition to generate this production of records. But no legal basis has ever been identified authorizing Libby Claimants or Dr. Whitehouse to demand and produce other patients' medical records. This further highlights that the only authority upon which any

the duty to produce all 1,800 Libby patients' records, that duty should be recognized as taking effect in May 2009, when this Court for the first time ever interpreted FRCP 26(a)(2)(B) to encompass a treating physician's entire clinical patient base.

6.    Arrowood's April 9 Motion to Strike (D.I. 21245) addressed only the Libby Claimants' own medical records. It never sought to extend the scope of Dr. Whitehouse's reliance materials to all 1,800 Libby asbestos patients. Grace's May 8 brief in support of the motion (D.I. 21591)–filed the same date as Libby Claimant's response (D.I. 21599)–was Libby Claimants' first notice that FRCP 26(a)(2)(B) might be applied so broadly in this case.

7.    Grace's and Arrowood's Responses cite the 2006 matter of Grace's right to discover Dr. Whitehouse's patient files.[5] Grace argues that the facts described in the Affidavits are not burdens at all, because they have been known to Libby Claimants since 2006. (Grace Response, p.6). This Court ordered in 2006 (D.I. 12607) that Libby Claimants' own medical records should be produced, along with those from a limited number of Dr. Whitehouse's other patients. However, relying upon the important (but unfortunately now ignored) distinction between Libby Claimants and non-claimants, the Court <u>did not require production of records regarding the then-800 Libby asbestos patients who were not among the Libby Claimants</u>.[6] Libby Claimants could not foresee from this Court's past rulings that all of Dr. Whitehouse's patient records would be required.

---

of the entities involved in this matter are relying is specific entry of this Court's Modified Order and Protective Order, which are now being interpreted by the actual medical providers to compel such production.

[5] In 2006, while challenging essentially the same expert opinions as being offered now by Dr. Whitehouse, Grace sought medical records for all the then-1500 Libby asbestos patients. *See* Debtors' Motion for Authorization to Seek Discovery from Dr. Alan C. Whitehouse [] (D.I. 11850), and Libby Claimants' Objection (D.I. 12065) thereto.

[6] See June 5, 2006, Order, p.7, ¶3. (D.I. 12607). The Modified Order further reversed the 2006 Order, which made Grace, not Libby Claimants, responsible for the costs of production. June 5, 2006, pp.7-8, ¶4.

8.      Most importantly, specific caselaw that interprets FRCP 26(a)(2)(B) to require a treating physician to produce records from his entire clinical population as a condition of his expert testimony has <u>never</u> been cited, indeed, <u>because it does not exist</u>. Concerns regarding protective orders notwithstanding, Libby Claimants have always and appropriately interpreted and fulfilled their discovery obligations under FRCP 26 to include production of medical records <u>actually relied upon</u> by Dr. Whitehouse for his specific opinions in this case. Dr. Whitehouse has never stated that he is relying upon the actual patient records of those 1,800 Libby asbestos victims for his specific opinions in this case. He identifies the 950 Libby Claimants and the patients in his Libby medical studies as the basis of his specific opinions in this case. See Dr. Whitehouse May 14, 2009, report, ¶ 84. Vague citations to general duties of any expert pursuant to FRCP 26 cannot be considered to self-illuminate a treating physician's alleged duty to produce records from his entire patient population. Nor should strained quotations from Dr. Whitehouse about his clinical experience be substituted to define the specific, litigation-based reliance materials that he is using to support the particular opinions in his reports and in this case.

9.      In sum, neither the parties' motions, this Court's past rulings, nor any case cited by other parties or this Court forewarned that a duty to produce medical records from all 1,800 Libby asbestos patients exists. To expect Libby Claimants to have divined such a broad obligation contradicts the statements given by Dr. Whitehouse about what actual documents he is relying upon for his specific opinions in this case. As made clear by the Motion to Reconsider, treating physicians do have a unique place under FRCP 26. No matter what obligation the Court now recognizes for Dr. Whitehouse thereunder, Libby Claimants should not suffer the harsh sanction called for in the Modified Order merely because they were not out in front where no other parties or courts have gone before. The Court should reconsider the duty that Libby

Claimants had regarding production of Libby medical records. Then, if appropriate, the Court should develop a reasonable schedule and means, taking into account the new evidence about the huge potential impact on the Libby medical community and Libby Claimants, without simply dictating the extreme sanction of striking Dr. Whitehouse's testimony.

**IV.     Dr. Whitehouse is First and Foremost the Libby Claimants' Treating Physician, and the Manifest Injustice of Striking His Testimony Is Undeniable.**

10.     Grace's and Arrowood's Responses do not address the indisputable fact that Dr. Whitehouse is the Libby Claimants' treating physician. The law regarding treating physicians and their reliance materials is unchallenged. Arrowood argues only that Dr. Whitehouse's pre-litigation experience with Libby asbestos disease is "false." (Arrowood Response, p.6, fn.13). The record must now be made clear.[7] Libby Claimants are entitled to have their treating physician testify as an expert. Striking Dr. Whitehouse is a direct, obvious, and observable error.

11.     This Court must look beyond the Movants' unjustified, repetitive attacks against Dr. Whitehouse, and their mis-characterizations of his role in this case.[8] At the least, reconsideration of the Modified Order, taking into account the undeniable difference between Dr. Whitehouse as a treating physician and the other roles of experts in this case, should occur.

## CONCLUSION

Based upon the above, Libby Claimants respectfully request that this Court grant (i) the relief requested in the Motion to Reconsider; and (ii) such other and further relief as the Court may deem just and proper.

---

[7] See Dr. Whitehouse May 14, 2009, report, ¶5 (stating that he began treatment of Libby asbestos patients in 1980).
[8] *See, e.g.,* Arrowood's Response, Points III and IV, which are repetitive and unrelated to the present issue.

Dated: July 15, 2009
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kerri K. Mumford / /s/ Adam G. Landis w/permission*

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Daniel C. Cohn
Christopher M. Candon
**COHN WHITESELL & GOLDBERG LLP**
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2505
Facsimile: (617) 951-0679

*Counsel for Libby Claimants*