IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ` | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date:  July 21, 2009 at 10:00 a.m.** |

**PLAN PROPONENTS' CONSOLIDATED POST-TRIAL PHASE I BRIEF IN SUPPORT OF CONFIRMATION OF JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

[1]  The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc.,  CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

The above-captioned debtors (the "Debtors"), together with the Official Committee of
Asbestos Personal Injury Claimants, the Official Committee of Equity Security Holders, and the
Asbestos PI Future Claimants' Representative (collectively the "Plan Proponents"), hereby
submit this post-trial Phase I Brief in support of confirmation of their First Amended Joint Plan
of Reorganization (as amended, the "Joint Plan").[2]

### PRELIMINARY STATEMENT

The Plan Proponents argued to this Court in pre-trial briefs and at the Phase I
Confirmation Hearing that the Insurance Companies[3] had no standing as insurers to object to the
Plan.  The Plan Proponents demonstrated that the Insurance Companies' rights and coverage
defenses were preserved by the insurance neutrality language of Section 7.15 of the Plan,
patterned after well-recognized language first approved by this Court in the <u>Combustion
Engineering</u> case and subsequently affirmed by the Third Circuit.  The Insurance Companies'
lack of standing to object to plan confirmation is a well-established legal issue upon which no
evidence is required, and thus the various attempted "evidentiary" submissions by the insurers
should be rejected as irrelevant.  Moreover, at the Phase I Confirmation hearing, this Court noted
that only minor, if any, changes needed to be made to Section 7.15 to address the Insurers' stated
concerns.  "It seems to me that what's in 7.15 now could probably be tweaked to accommodate
everybody's interests.  I don't think it's that far off the mark."  Hr'g Tr. at 128, June 23, 2009
[D.I. 22447].  The Plan Proponents did exactly that, and conveyed those revisions to Section
7.15, addressing concerns raised at the Phase I hearing, to the Insurance Companies on July 2,

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to
      them in the Joint Plan.

[3]   The "Insurance Companies" are the Insurers who filed objections to the Plan.

2009.  Those revisions ensure that insurance neutrality provisions that already were not "far off the mark" are now ready to be approved.

At the conclusion of the Phase I Confirmation Hearing, this Court requested post-trial briefing with respect to insurance neutrality, and subsequently issued an Order providing for simultaneous briefs from the Plan Proponents and the Insurance Companies not to exceed 30 pages.  Order Regarding Further Matters Related to the Phase I Confirmation Hearing with respect to Insurance Neutrality, dated July 8, 2009, at ¶ 6 [D.I. 22360].  That Order likewise precluded the parties from reiterating the fully-briefed legal arguments relating to the Insurers' standing and Insurance Neutrality, as the Court also made clear at the hearing.  "These Post Trial Submissions shall not contain arguments previously raised by the parties * * *." Id.

Accordingly, the Plan Proponents file this post-trial brief to demonstrate (1) that the recent amendments to Section 7.15 and related provisions of the Plan by the Plan Proponents fully address all concerns noted by the Court at the Phase I hearing and all even potentially valid concerns raised by the Insurance Companies, and (2) that all evidence proposed to be submitted into the record by the Insurance Companies in connection with the Phase I hearing is irrelevant to the insurance neutrality of the Plan and their standing.[4]  The Plan is Insurance Neutral, the Insurance Companies have no standing as insurers to object to the Plan, and this Court should so rule.

---

[4]    Attached to this brief are the current language of Section 7.15 as proposed by the Plan Proponents to address issues raised at the hearing, at Exhibit A, as well as a blackline of that language against the prior language of Section 7.15, at Exhibit B.

## ARGUMENT

I.    **THE PLAN PROPONENTS HAVE APPROPRIATELY MODIFIED SECTION 7.15**

Pursuant to this Court's direction, the Plan Proponents have tweaked Section 7.15 of the Plan to address concerns raised at the hearing.  Two of those changes involve Section 7.15(a), the language of which is the <u>Combustion Engineering</u> language, and which is the core of Section 7.15.  First, in response to comments by the Insurance Companies, the Court indicated that Section 7.15(a) should be clarified to make clear that it does not purport to preempt the Confirmation Order.  Hr'g Tr. at 40, June 23, 2009.  Accordingly, the Plan Proponents have deleted the references to "Confirmation Order" in Section 7.15(a) that the Insurance Companies alleged gave rise to such an inference.  <u>Id.</u>  The Plan Proponents intend, to the extent this Court approves, for insurance neutrality language also to be included in the Confirmation Order.

Second, the Court indicated that the introductory clause of Section 7.15(a) did not specify which subsections of 7.15 potentially limited the scope of Section 7.15(a), and that such clarification could be helpful.  "And it says this Section 7.15. It doesn't say 7.15A, 7.15C.  It says, 'except as provided in this section.'  So, I offhand don't really understand whether it's attempting to limit those clauses to everything else that's in this section, or only to the particular paragraph. I don't think that this is clear. I think it can be fixed, but I don't think it's perfectly clear * * *."  Hr'g Tr. at 62, June 23, 2009.  Therefore, the Plan Proponents have revised Section 7.15 to eliminate the phrase "except to the extent provided in this Section 7.15" and replaced it with "except as provided in Sections 7.15(b) through 7.15(i) of the Plan," addressing this Court's concern.

Third, Section 7.15(b) of the Plan notes that "[t]he Plan, the Plan Documents, and the Confirmation Order shall be binding on the Debtors, the Reorganized Debtors, the Asbestos PI

Trust and the beneficiaries of the Asbestos PI Trust."  In response to complaints from the Insurance Companies at the Phase I hearing, the Court suggested that this Section could be revised to make clear that it only binds insurers to the extent that they submit claims to the trust. "[I]f the problem simply is that the insurers have different capacities and they want to make sure that this language is only affecting them in their capacity as insurers who submit claims to the trust and not in some other capacity, I don't see why that's so difficult to put in * * *."  Hr'g Tr. at 64-65, June 23, 2009.  Accordingly, the Plan Proponents have now done exactly that, by adding a sentence to the end of Section 7.15(b) that states "For the purpose of this Section 7.15(b), the term 'beneficiaries' shall include an Asbestos Insurance Entity only to the extent such Asbestos Insurance Entity asserts an Asbestos PI Claim against the Asbestos PI Trust."

Fourth, at the hearing the Insurance Companies suggested that the interaction between the preemptory language of Section 7.15 and Section 7.7(tt) of the Plan was not clear.  "Now, one of the things that we are concerned about in this plan, and I want to put this on the screen, there are various provisions in the plan that deal with rights under the policies that are not in -- or could deal with rights under the policies that are not in 7.15.  First of all, Section 7.7(tt), which I have here, under that provision, if this Court confirms the plan, it will have made a finding that the insurer's obligations under the policies are not diminished or reduced, the insurer's obligations."  Hr'g Tr. at 195, June 22, 2009 [D.I. 22322].  Plan Proponents have accordingly moved Section 7.7(tt) into new Section 7.15(i), to prevent any confusion.

Finally, the Insurance Companies repeatedly expressed concerns about the definition of "Asbestos Insurer Coverage Defenses" in Section 1.1.16 of the Plan, incorporated in the previous version of Section 7.15(f), and in particular the exclusion from that definition of any defense that "the Plan or any of the Plan Documents do not comply with the Bankruptcy Code."  The

Insurance Companies claimed that such an exclusion could be used to mislead a future court,

stating, for example, that

> what we're concerned about is that a court, a coverage court, could construe this
> language as doing more, that a court or the trust's lawyers might argue to a court
> that because to confirm this plan you have to find that it was -- that the plan was
> made in good faith, that they could come along and say, look, this bankruptcy
> judge blessed this plan so these TDP, they were negotiated in good faith. They're
> reasonable values for claims. In fact, the whole settlement is a reasonable
> settlement of claims between Grace and the ACC and so coverage court, you
> should take that into account in determining whether if the insurers make a claim
> that this was an unreasonable settlement or paid too much or those types of things,
> you should take that into account that we have a bankruptcy judge who already
> ruled on that. * * * They think we're already protected enough and our view is,
> so, you know, humor us.

Hr'g Tr. at 197-99, June 22, 2009.

The Insurance Companies' unsubstantiated concerns specifically related to Section

7.15(f)'s use of the phrase "Asbestos Insurer Coverage Defenses."  "7.15(f) is the provision of

the plan, the neutrality provision, that introduces this concept of asbestos insurer coverage

defenses.  And I think one of the things that the insurers are concerned about is whether that

language is being used for some mischievous purpose on the part of the plan proponents."  Hr'g

Tr. at 35, June 23, 2009 [by Mr. Brown].  To satisfy the Insurance Companies' expressed

concerns, the Plan Proponents have deleted Section 1.1.16 and its defined phrase Asbestos

Insurer Coverage Defenses from the Plan, and have correspondingly deleted the reference to

Asbestos Insurer Coverage Defenses in Section 7.15(f) about which the Insurance Companies

complained as an explicit carve-out from Insurance Neutrality.

The Plan Proponents believe that no further revisions to Section 7.15 are necessary or

appropriate.  For example, the Insurance Companies argued in pre-trial briefs, and repeated at the

hearing, the contention that the Plan was allegedly unclear with respect to whether obligations

associated with the insurance rights being transferred to the Asbestos PI Trust were being

somehow obviated. But as the Plan Proponents already showed in their pre-trial brief,[5] such obligations are preserved by the super-preemptory language of Section 7.15, and to the extent there is any alleged material breach of any obligations under the policies, such breach can give rise to a coverage defense that under Section 7.15 would be resolved by a non-bankruptcy court in coverage litigation.[6]  This Court made clear at the hearing that it had no interest in pre-judging or adjudicating such coverage defenses now.

Also, with respect to the Insurance Companies' notion that this Court should attempt to anticipatorily limit the use of its rulings, this Court has already recognized the inappropriateness of that request. "I can't, as a judge issuing a ruling, determine that some other court isn't going to use my order or my judgment in a certain way, just like some other court that issues a judgment can't determine how I'm going to use it. So, I don't think -- and we've gone through this in other cases. I don't think there is a way to automatically foreclose some court from making some use that the parties don't intend." Hr'g Tr. at 200, June 22, 2009. This Court's conclusion is consistent with Third Circuit precedent. "Because collateral estoppel is a legal doctrine for consideration and application in the court in which any future proceedings are commenced, the district court here may not limit the collateral effect of its order." United States v. First Nat'l State Bank of N.J., 616 F.2d 668, 675 (3d Cir. 1980).

Likewise, this Court explained how, in this case and others, it solved that perceived problem by appropriately limiting the scope of its decision. "The way to do that, I think, is to

---

[5]    Plan Proponents' Consolidated Phase I Brief in Support of Confirmation of Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code, dated June 8, 2009 ("Phase I Pre-Trial Brief"), at 16-17.

[6]    Id.

say that the Court's findings are limited to the issue that's before me which is plan confirmation and not coverage." Hr'g Tr. at 200, June 22, 2009. This Court's conclusion in that regard is likewise consistent with Third Circuit precedent. "Although we may not dictate the preclusion consequences of our decision to future courts, we do have authority to make clear the limited scope of the District Court's decision." D'Amico v. CBS Corp., 297 F.3d 287, 294 (3d Cir. 2002) (citations and internal quotation omitted). No further language regarding any hypothetical future use of this Court's findings is needed or would be appropriate, as this Court recognized at the Phase I hearing. Hr'g Tr. at 202, June 22, 2009 (rejecting insurance company argument that insurance neutrality required attempted limits on future use of plan or Court's findings, and stating "[b]ut wait. Those were all negotiated issues. For my purposes, I need one simple statement and that's one sentence from Combustion Engineering that tracks 1124. That's all I think the plan has to do to say that it's insurance neutral."). Section 7.15 of the Plan renders the Plan insurance neutral, and with the revisions to Section 7.15 implemented by the Plan Proponents as a result of the Phase I hearing, the Insurance Companies have no valid complaints regarding it.[7]

## II. THE EVIDENCE SUBMITTED BY THE INSURANCE COMPANIES IN CONNECTION WITH THE PHASE I HEARING IS IRRELEVANT AND SHOULD NOT BE ACCEPTED INTO THE RECORD.

The issue of whether the Plan is "insurance neutral," and thus whether the Insurance Companies have standing to object to confirmation, is a legal question as to which no evidence other than the Plan itself is either relevant or necessary. Despite ample opportunity in the briefs

---

[7]    As this Court also recognized at the Phase I hearing, the Confirmation Order could be used to clear up any confusion if necessary. "So why are these things that can't be taken care of in the confirmation order as they have been in virtually every other case?" Hr'g Tr. at 199, June 22, 2009.

and at the Phase I hearing, the Insurance Companies have not been able to demonstrate otherwise.  The Plan Proponents have already demonstrated, on a per exhibit basis, how all evidence sought to be admitted by the Insurance Companies into evidence is irrelevant.  <u>See</u> Plan Proponents' Objections to and Motion to Exclude Objecting Parties' Phase I Deposition Designations, dated July 2, 2009 [D.I. 22329]; Plan Proponents' Objections to Plan Objectors' Proffered Trial Exhibits for Phase I of the Confirmation Hearing and Motion to Exclude Such Exhibits, dated July 2, 2009 [D.I. 22331].  That showing will not be repeated here, and is hereby incorporated by reference.

The irrelevance of the proffered evidence is also demonstrated by the Insurance Companies' own attempts to explain its relevance at the Phase I hearing.  In their own words

> I want to make clear what the purpose of putting this evidence into the record is. The purpose, Your Honor, is not to ask Your Honor to make coverage decisions. I think the one thing we can all agree on, including Your Honor, is that's not what you want to do, that's not what's intended here, but I want Your Honor to have at least an idea in the record of what has actually transpired and <u>an example of what the insurers are trying to preserve</u> for purposes of subsequent coverage litigation.

Hr'g Tr. at 17, June 23, 2009 (emphasis added) [by Mr. Brown].[8]

By their own admission, therefore, the evidence the Insurance Companies seek to admit is solely for the purpose of demonstrating the scope of their alleged coverage defenses.

---

[8]    <u>See also</u> Hr'g Tr. at 194, June 22, 2009 (emphasis added) [by Mr. Giannotto] ("We intend to introduce as part of our evidentiary case here the unsettled insurance policies that have been issued by the CNA companies to the debtors.  And we're not introducing them for the purpose of you making a coverage determination.  We don't want that.  The plan proponents evidently don't want that as well.  <u>What we want to do</u> though, in order to be able to establish our standing on the issue of insurance neutrality, <u>is to show that at least on the face those policies do contain certain obligations that the debtors are supposed to comply with,</u> including notice of claims and occurrences, allowing us to assist in the investigation defense and settlement of claims, not making any voluntary payments.").

In other words, the Insurance Companies seek to have evidence admitted for the purpose of showing that they allegedly have certain rights, while simultaneously saying that this Court should not address that topic.  The inherent inconsistency in their position is made even more clear when they attempt to explain it.  "One of the rights that we've outlined, and we're not asking Your Honor to find that we have this right, we're just putting the policies in the record so Your Honor understands that there are policies and they have these words in them.  It's a coverage court that will ultimately decide that.  But one of the rights we have is a right to associate in the defense of claims."  Id. at 21-22.  The fact that the policies have certain words in them is irrelevant unless those words constitute a valid defense to coverage in a coverage court, and no party has requested this Court to make such a finding.  To the contrary, those issues are reserved by Section 7.15 to be addressed by a coverage court applying state law in the event such issues in fact arise in the future.

This Court has recognized the obvious dangers of admitting such evidence into the record, the sole relevance of which is to provide support for a future coverage determination.  "I'm not making coverage determinations.  I haven't been presented with any evidence concerning the rights and liabilities of the parties under the policies.  The whole point of going through this exercise is to make sure that I'm not presented with that evidence so that I can't make those findings."  Hr'g Tr. at 200-01, June 22, 2009 (emphasis added).  The issue of insurance neutrality is a legal determination for the Court, and by the Insurance Companies' own admission, their proffered evidence is solely relevant to the rights and liabilities of the parties under the policies — issues not before this Court for Confirmation.  That evidence thus must be excluded from the record in Phase I as an improper attempt to place irrelevant coverage issues before the Court.

III.    **THE PLAN PROPONENTS HAVE SHOWN THAT THE PLAN IS INSURANCE NEUTRAL, AND THAT THE INSURANCE COMPANIES HAVE NO STANDING AS INSURERS.**

In their Phase I Pre-Trial Brief, the Plan Proponents demonstrated conclusively that standing is determined issue-by-issue, and that insurance companies cannot raise the rights of third parties to object to confirmation.  Id. at 4-30.  Pursuant to this Court's instructions, this brief does not repeat that analysis, but incorporates it by reference.  This Court likewise recognized both of those principles at the Phase I hearing.  "But you were asking whether [standing is] issue by issue, you know, claim by claim.  And I think in this circuit, the answer is yes, it is," Hr'g Tr. at 215, June 22, 2009, and "you've got to show me where your interests are affected.  You can't, for example, pick up the objections of the general unsecured creditor class. * * * * You don't have standing to raise objections of trade creditors in your capacity as an insurer."  Id. at 213-14.

Section 7.15 has been appropriately modified to address the Court's comments, and the Plan is insurance neutral.  The Insurance Companies therefore have no standing to object to the Plan as insurers, and this Court should so rule.

Dated: July 16, 2009
Wilmington, Delaware

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Theodore L. Freedman
Lisa G. Esayian
601 Lexington Avenue
New York, NY  10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Barbara Harding
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile:  (202) 879-5200

and

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
70 W. Madison Street
Suite 2100
Chicago, IL 60602
Telephone: (312) 641-2162

and


*/s/James E. O'Neill*
PACHULSKI, STANG, ZIEHL & JONES LLP
James E. O'Neill (Bar No. 4042)
Timothy Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

*Counsel for the Debtors and Debtors in Possession*

CAMPBELL & LEVINE, LLC


*/s/Kathleen Campbell Davis*
Mark T. Hurford (No. 3299)
Kathleen Campbell Davis (No. 4229)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone:  (302) 426-1900
Facsimile:  (302) 426-9947


and

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

Peter Van N. Lockwood
Nathan D. Finch
Kevin C. Maclay
Jeffrey A. Liesemer

One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone:  (202) 862-5000
Facsimile:  (202) 429-3301

*Counsel for the Official Committee of Asbestos*
*Personal Injury Claimants*

PHILLIPS, GOLDMAN & SPENCE, P.A.

*/s/John C. Phillips*
John C. Phillips (Bar No. 110)
1200 North Broom Street
Wilmington, DE 19806
Telephone:  (302) 655-4200
Facsimile:  (302) 655-4210

and

ORRICK, HERRINGTON & SUTCLIFFE LLP
Roger Frankel
Richard H. Wyron
Jonathan P. Guy
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8400
Facsimile: (202) 339-8500

*Counsel for David T. Austern, Asbestos PI Future
Claimants' Representative*

SAUL EWING LLP

*/s/Teresa K.D. Currier*
Teresa K.D. Currier (Bar No. 3080)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Telephone:  (302) 421-6800
Facsimile:  (302) 421-6813

and

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Philip Bentley
Gregory Horowitz
Douglas Mannal
1177 Avenue of the Americas
New York, NY 10022
Telephone:  (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee of Equity Security
Holders*

{D0157460.1 }