IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | * | |
| W.R. GRACE & CO., et al., | * | Chapter 11 |
| Debtors. | * | Case No. 01-01139 (JKF)<br>(Jointly Administered) |
| | * | Related Docket Nos. 21544, 22360 |

------------------------------------------------------X

# THE PHASE I INSURERS'
## POST-TRIAL BRIEF

The Phase I Insurers[1] submit this Post-Trial Brief with respect to the Phase I proceedings held before the Court on June 22 and 23, 2009 (the "Phase I Hearing"). The purpose of this submission is not to duplicate the issues addressed in the Phase I Insurers' Objections and Pre-trial briefs already filed with the Court, and accordingly, this submission focuses on the Phase I Findings of Fact and Conclusions of Law requested by the Phase I Insurers. The Phase I insurers provide citations to the evidence submitted in support of the Findings and Conclusions, and also incorporate and refer the Court to the pleadings and evidence already before the Court.[2]

---

[1]     The Phase I Insurers are:  Continental Casualty Company and Continental Insurance Company on their own behalf and on behalf of certain affiliate companies, Federal Insurance Company, Fireman's Fund Insurance Company, Allianz S.p.A. f/k/a Riunione Adriatica Di Sicurta, Allianz SE f/k/a Allianz Aktiengesellschaft, General Insurance Company of America, Government Employees Insurance Company, Republic Insurance Company n/k/a Starr Indemnity & Liability Company, Seaton Insurance Company, AXA Belgium as successor to Royal Belge SA, Zurich Insurance Company and Zurich International (Bermuda) Ltd.  The Phase I Hearing addressed "insurance neutrality;" certain of the insurers have also raised Objections to the Plan in their capacity as settled insurers as creditors. Those issues are to be addressed in Phase II.

[2]     Final Plan Objections Of CNA Companies To The First Amended Joint Plan Of Reorganization (D.I. 21794); Final Objection to Confirmation of Amended Joint Plan of Reorganization Filed by OneBeacon and Seaton (D.I. 21763) (see footnote 2 (Seaton Joinder)); Final Objection to Confirmation of Amended Joint Plan of Reorganization Filed by GEICO and Republic (D.I. 21771); Zurich's Objection to

## PRELIMINARY STATEMENT

At the Phase I Hearing, the Plan Proponents attempted to truncate this Court's examination of whether the First Amended Joint Plan of Reorganization (hereinafter "the Plan") adversely affects the rights of the Phase I Insurers to assert and litigate coverage defenses in future coverage litigation under unsettled insurance policies (or policies that are allegedly only partially settled) and certain related settlement agreements proffered to the Court. They asked the Court to entirely disregard the evidence and to ignore the various exceptions, carve-outs and edits to Section 7.15 of the Plan, the section that they argue provides "insurance neutrality." The Plan Proponents similarly told the Court to overlook the interaction of Section 7.15 with other provisions of the Plan, and to disregard any ambiguity or dissonance that may arise when those provisions are compared.

As discussed in the Phase I Insurers' responses to the Plan Proponents' evidentiary objections,[3] the Plan Proponents' position, though argued for hours, came down to this

---

First Amended Joint Plan of Reorganization (D.I. 21764); Federal's Objection to the First Amended Joint Plan of Reorganization (D.I. 21770); Final Phase I And Non-Surety Claim Related Phase II Objections Of FFIC and Allianz To Confirmation Of The First Amended Joint Plan Of Reorganization (D.I. 21781); AXA Belgium's Objection to Confirmation of Amended Plan (D.I. 21803); Objection of General to the First Amended Joint Plan of Reorganization and Joinder in Objections by Other Insurers (D.I. 21776); Phase I Trial Brief For CNA Companies (D.I. 21938); Phase I Trial Brief of GEICO, Republic, and Seaton (D.I. 21943); Joinder by Zurich to the Phase I Trial Brief for CNA Companies (D.I. 21939); Trial Brief in Support of Federal's Objections to the First Amended Joint Plan of Reorganization (Phase I) (D.I. 21931); Phase I Trial Brief Of FFIC and Allianz (D.I. 91929); Phase I Trial Brief filed by AXA Belgium (D.I. 21944); General's Trial Brief (Phase I) (D.I. 21930); Notice of Service of The CNA Insurance Companies' Proffer of Evidence for Phase I of Plan Confirmation Proceedings (D.I. 22324); Notice of Service Of Amended Hearing Exhibits Of FFIC and Allianz With Respect To Phase I Confirmation Hearing (D.I. 22252); GEICO/Republic/Seaton Proffer of Evidence for Phase I of the Confirmation Hearing (D.I. 22274); Phase I Declaration by Eileen T. McCabe (D.I. 22276); Certain Insurers' Proffer of Designated Deposition Testimony, and Pertinent Exhibits Thereto, for Phase I of the Confirmation Hearing (D.I. 22278).

[3]      The Phase I Insurers' Response to the Plan Proponents' Objection to the Insurers' Proffer of Evidence for Certain Issues of Phase I of the Plan Confirmation Proceedings (D.I. 22423); *see also* Objection Of Fireman's Fund Insurance Company, Allianz S.P.A., f/k/a Riunione Adriatica Di Sicurta,

proposition: so long as the Plan Proponents include in the Plan certain language excerpted from the Third Circuit Court of Appeals' decision in *Combustion Engineering*, the Court should go no further to assess whether the Plan adequately and clearly preserves the Insurers' contractual rights and coverage defenses – notwithstanding all of the qualifications and exceptions the Plan Proponents have made to that language.

The lesson from the *Combustion Engineering* decision is not, however, that a selected "cut and paste" of certain language will magically ensure "insurance neutrality." Rather, this Court must review the Plan in its entirety, in the context of the facts of this particular bankruptcy, to determine whether this Plan as a whole "expose[s] the Objecting Insurers. . . *to the possibility* that other Plan Provisions *could affect* aspects of subject policies and settlement agreements." *In re Combustion Eng'g,* 391 F.3d 190, 217-218 (3d Cir. 2004). At argument, the Plan Proponents characterized some of their exceptions in Section 7.15 as "clarifications," meant to address other issues. For example, the Plan Proponents asserted that Subsection (b) of Section 7.15 was intended to ensure that personal injury claimants were bound by the Plan. But, at the same time, they ignore the fact that by utilizing such language as an exception to the overall so-called super-peremptory language of Subsection 7.15(a), they in turn create further ambiguity and the possibility that the operation of the Plan "*could affect*" the rights of Insurers who are also claimants against the Trust.

Indeed, it was more than evident from the arguments both at the pre-trial conference on June 18, 2009, and the two days of the Phase I Hearing, as the Plan Proponents' counsel strained to explain or fill in provisions where there was no clarity in the Plan, that this Court has ample basis to reject the Plan Proponents' claims that the exception-ridden and circuitous language of

---

And Allianz Se, f/k/a Allianz Aktiengesellschaft To The Plan Proponents' Motion To Exclude Such Exhibits (D.I. 22409).

the current Section 7.15 adequately ensures "insurance neutrality."  As this Court noted, such gaps and problems have been addressed in other Plans approved by the Court, and "insurance neutrality" language addressing such issues has been provided in cases such as *Federal Mogul* and *Kaiser Aluminum*.  There is no reason that the same language approved in *Federal Mogul* and *Kaiser Aluminum* should not be in this Plan.  At the Court's direction, the parties agreed at the Phase I Hearing to attempt to negotiate  a  resolution of the "Insurance Neutrality" issue.

The Phase I Insurers note that the Plan Proponents recently circulated a revised Section 7.15, marked "For Settlement Purposes Only," for purposes of negotiations. On the evening of July 14 (one business day before this filing was due), the Plan Proponents advised that they intended to submit that revision to the Court in connection with this briefing, for purposes of determining whether their new version of Section 7.15 properly provides "Insurance Neutrality."[4]   Assuming that the revised Section 7.15 is proposed to the Court, the Phase I Insurers submit that the Plan Proponents' revision does not address or cure the problems identified at the Phase I Hearing.  Nonetheless, the Phase I Insurers are prepared to move ahead with negotiations.

---

[4]     Acknowledging, finally, that their original proposed neutrality language fails to pass muster, the Plan Proponents now submit a modified Section 7.15 – a document they proposed in the context of negotiating a potential stipulation on neutrality – trying to patch up the provision's shortcomings. (The Court and the parties have already previously spent two days and multiple submissions on the current Plan language, without any such revision proposed.)  This eleventh-hour submission of revised language should be deemed an admission that the current Plan language does not clearly and adequately leave the insurers' rights and coverage defenses unaffected.  For the reasons stated herein, the proposed revised 7.15 (if submitted to the Court as proposed to the Phase I Insurers) still does not cure the deficiencies identified in Phase I.

Moreover, the Court should reject the Plan Proponents' apparent attempt to short-circuit the negotiation process by tendering their settlement proposal to the Phase I Insurers to the Court and encourage the parties to continue negotiating in good faith to arrive at a *mutually-agreeable* insurance neutrality stipulation (as was done before, *inter alia*, in the *Kaiser Aluminum* and *Federal Mogul* cases before this Court).

If those negotiations are unsuccessful, then the Phase I Insurers request that the Court adopt the Findings of Fact and Conclusions of Law below, and craft an order that adopts the language of the attached submission of the Phase I Insurers (Addendum A), which includes language approved by this Court in *Federal Mogul*. (Also attached for the convenience of the Court is a black-lined version of Addendum A, showing changes to current Plan language.)

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

1.    The Phase I Insurers are insurers who issued insurance policies to the Debtors. The relevant policies are among those termed "Asbestos Insurance Policies" under the First Amended Plan of Reorganization, dated February 27, 2009 (hereinafter "the Plan"). With the exception of General Insurance Company of America ("General"), the Phase I Hearing concerned aspects of the Plan Proponents' Plan with respect to unsettled (or allegedly partially settled) insurance policies.

2.    The only Phase I issue before the Court is whether the Plan, with respect to these unsettled (or allegedly partially settled) insurance policies and any related settlement agreements, is "insurance neutral," in the sense that confirmation of the Plan will not adversely effect in any way the insurers' ability to assert and litigate coverage defenses should the Reorganized Debtors or the Asbestos PI Trust institute any Asbestos Insurance Actions against the Phase I Insurers.[5]

3.    The Court understands that the insurance policies of the Phase I Insurers are either unsettled policies, partially settled policies or policies that the Plan Proponents may contend, and relevant insures, dispute, are only partially settled policies. This Court need not and will not address any disputes concerning the scope or availability of any insurance coverage or the scope

---

[5]    Certain issues, including those related to the anti-assignment provisions in policies, the rights of settled carriers under their settlement agreements and the insurers' standing as creditors, as well as issues relating to injunctions and releases provided in the Plan, have been reserved for "Phase II."

of any settlement agreement. Those are among the issues to be addressed in subsequent coverage litigation. What matters here is that the Plan Proponents have acknowledged that they intend for the Plan to preserve the Phase I Insurers' rights and coverage defenses under the policies and any related settlement agreements. *See, e.g.,* Phase I Hearing, Tr. 6/22/09, at 168.

4.      The Plan Proponents do not generally dispute that the Phase I Insurers presently have retained their rights under the policies or settlement agreements. (*See, e.g.*, GEICO/Republic/Seaton Phase I Trial Ex. GRS-5, Debtors' Response to Requests for Admissions, Nos. 1 & 17; CNA Phase I Trial Ex. 1, Debtors' Response to Requests for Admissions, No. 10; Certain Insurers' Phase I Trial Ex. 4, Designated Excerpts from Dep. Transcript of Jay Hughes, dated June 11, 2009 ("Hughes Tr."), at 318-319, 359-361, 379-383, 387-388).

5.      It is also generally undisputed that the Phase I Insurers did not participate in the negotiations of, or consent to, the settlement among the Asbestos Personal Injury Committee, the Future Claimants Representative, the Equity Holders Committee and the Debtors that led to the current Plan, and that the Phase I Insurers did not participate in the drafting of the Plan, or related documents, such as the Asbestos Insurance Transfer Agreement or the Trust Distribution Procedures. (*See, e.g*., CNA Phase I Trial Ex. 1, Debtors' Response to Requests for Admissions, Nos. 1, 2, 5, 6, & 7; Certain Insurers' Phase I Trial Ex. 1, Designated Excerpts from Dep Transcript of David Austern, dated May 15, 2009 ("Austern Tr."), at 243-244; Certain Insurers' Phase I Trial Ex. 2, Designated Excerpts from Dep. Transcript of Richard Finke, dated March 30, 2009 ("Finke I Tr."), at 183-84; Certain Insurers' Phase I Trial Ex. 3, Designated Excerpts from Dep. Transcript of Richard Finke, dated May 13, 2009 ("Finke II Tr."), at 37; Certain Insurers' Phase I Trial Ex. 5, Designated Excerpts from Dep. Transcript of Elihu Inselbuch, dated June 12,

2009 ("Inselbuch Tr."), at 195-196; Certain Insurers' Phase I Trial Ex. 6, Designated Excerpts from Dep. Transcript of Peter Van N. Lockwood, dated May 1 & 4, 2009 ("Lockwood Tr."), at 36-38.

6. At the Phase I Hearing, the Plan Proponents advocated the position that the Plan was intended to be, and was drafted to be, "insurance neutral." To be insurance neutral, the Plan must leave rights and obligations under the policies at issue "utterly unaffected." *In re Congoleum Corp.* ("*Congoleum IV*"), 2009 Bankr. LEXIS 900, at \*6 (Bankr. D.N.J. Feb. 26, 2009). Among other things, as this Court has stated, to be insurance neutral, a plan must "'broadly preserve[] insurers' pre-petition rights under the subject insurance policies' and … permit the Objecting Insurers to 'dispute coverage under specific policies, and … raise any of the same challenges or defenses to the payment of claims available pre-petition.'" *In re Pittsburgh Corning Corp.*, 2006 Bankr. LEXIS 4636, at \*86 (Bankr. W.D. Pa. Dec. 21, 2006) (quoting *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 217 (3d Cir. 2004)).

7. The Plan Proponents assert that the language of Section 7.15 of the Plan completely satisfies the standards established by the case law (and in particular the standards established in the Third Circuit's decision in *Combustion Engineering*) for a plan to be insurance neutral. However, the Phase I Insurers demonstrated during the Phase I Hearing that the Plan, as presently drafted, is unclear and ambiguous in certain ways, such that the Court cannot find the Plan to be "insurance neutral" as intended by the Plan Proponents without further modification.

**Lack of Clarity In Plan "Insurance Neutrality" Provision**

8. In *Combustion Engineering*, the Third Circuit upheld an "insurance neutrality" provision (which it called a "super-peremptory provision") initially drafted by the Bankruptcy Court, which provided:

181031                                    7

> Notwithstanding anything to the contrary in this Order, the Plan or any of
> the Plan Documents, nothing in this Order, the Plan or any of the Plan
> documents (including any other provision that purports to be preemptory
> or supervening), shall in anyway [sic] operate to, or have the effect of,
> impairing the insurers' legal, equitable or contractual rights, if any, in any
> respect. The rights of insurers shall be determined under the Subject
> Insurance Policies or Subject Insurance Settlement Agreements as
> applicable.

*Combustion Eng'g,* 391 F.3d at 209. The Plan Proponents have argued to the Court that Section

7.15 is modeled on the Court of Appeals' holding in *Combustion Engineering.* However, even if

the *Combustion Engineering* language were sufficient in itself without consideration of the

operation of the Plan as a whole to make the Plan insurance neutral, Section 7.15 of this Plan has

exceptions and carve-outs that create tensions between certain subsections and thus may create

ambiguities in their construction. The Court cannot therefore hold that Section 7.15 as drafted

"provide[s] unqualified assurance to the Insurers that their rights are utterly unaffected."

*Congoleum IV*, 2009 Bankr. LEXIS 900, at *6.

9.      For example, as the Court discussed on the record, subsection (b) of Section 7.15

states that "The Plan, the Plan Documents and the Confirmation Order shall be binding on the

Debtors, the Reorganized Debtors, the Asbestos PI Trust and the beneficiaries of the Asbestos PI

Trust." The Phase I Insurers submitted the testimony of the Debtors' Rule 30(b)(6) witness,

Richard Finke, who testified that if an insurer was the holder of an "Indemnified Insurer TDP

Claim" as used in § 5.13 of the TDP, it would fit within the undefined phrase "the beneficiaries

of the Asbestos PI Trust" that appears in § 7.15(b) such that the insurer would be bound by the

Plan, Plan Documents, and Confirmation Order. (Certain Insurers' Phase I Trial Ex. 3, Finke II

Tr. at 86-90). That would mean, however, that the insurer, in its capacity as an insurer, might be

deemed bound by the Plan and Plan Documents, merely because it was also a creditor of the

Debtors by means of its Indemnified Insurer TDP Claim. If that were the case, the Plan would

adversely affect the ability of the Insurer, as an insurer, to litigate and assert defenses in coverage litigation, since an argument could be made in coverage litigation that the insurer is in fact bound by the TDP.

10.     In their recent "settlement" submission to the Phase I Insurers, the Plan Proponents proposed to revise Section 7.15(b) so as to add, "For purposes of this Section 7.15(b), the term "beneficiaries" shall include an Asbestos Insurance Entity only to the extent such Asbestos Insurance Entity asserts an Asbestos PI Claim against the Asbestos PI Trust." That revision, however, does not eliminate the inherent ambiguity in Section 7.15(b), since it would not clarify that the insurer would be bound only in its capacity as claimant, not insurer. The language suggested by the Phase I Insurers that is included in Appendix A, resolves the ambiguity that the Court discussed on the record with respect to Section 7.15(b), as it makes clear that the Plan and the Plan Documents are only binding upon those who hold Class 6 Asbestos PI Claims, and that it does not bind an insurer in any respect other than as a holder of such claims.

## LACK OF CLARITY REGARDING ASSUMPTION OR RETENTION OF OBLIGATIONS UNDER THE POLICIES AND SETTLEMENT AGREEMENT

11.     Additional subsections of Section 7.15, with carve-outs and exceptions, create further ambiguities. First, the Plan and related documents do not address the question of the insureds' obligations under the policies. Under Plan Section 2.2.2(d)(i), certain policy rights are to be contributed to fund an Asbestos PI Trust to be created pursuant to Section 524(g) of the Bankruptcy Code. The Plan states that the "Insurance Contributors" (*i.e.*, the Debtors and non-Debtors affiliates having rights under the policies) are to deliver to the Asbestos PI Trust upon the Effective Date an Asbestos Insurance Transfer Agreement, which states that the Insurance Contributors transfer all of their "Asbestos Insurance Rights" to the Trust.   (Plan, Ex. 6).

Case 01-01139-AMC   Doc 22480   Filed 07/16/09   Page 10 of 21

"Asbestos Insurance Rights" are defined as "*any and all rights, titles, privileges, interests, claims demands or entitlement of the Insurance Contributors* to any proceeds, payments, escrowed funds, initial or supplemental dividends, scheme payments, supplemental scheme payments, causes of actions and choses in action of any Insurance Contributor with respect to any Insurance Policy, Asbestos Insurance Settlement Agreement, Asbestos-in-Place Settlement Agreement, including all Asbestos Insurance Actions . . ." (Plan, Sec. 1.1(13)). The Asbestos Insurance Transfer Agreement states the "Transfer is *not* an assignment of any policy." (Ex. 6, at Sec. 1(d)).

        12.     Although the Plan and Asbestos Insurance Transfer Agreement presently address the "Rights" under the Asbestos Insurance Policies, neither the Plan nor the Asbestos Insurance Transfer Agreement anywhere plainly address the insureds' *obligations* under the Asbestos Insurance Policies, either explicitly stating that such obligations remain undiminished with respect to the Debtors or Insurance Contributors and/or are transferred to the Asbestos PI Trust. Sections 7.7(tt) and 7.7(uu) of the Plan would require the Court to find that "the duties and obligations of the Asbestos Insurance Entities" are not diminished or reduced by the discharge of the Debtors under the Plan and the transfer of Asbestos Insurance Rights to the Asbestos PI Trust. The obligations of the *insureds* under the Asbestos Insurance Policies are **not** addressed in those sections. Similarly, the "settlement" proposal recently submitted by the Plan Proponents with respect to Section 7.15 would specifically provide, in proposed Section 7.15(i) that the duties and obligations of Asbestos Insurance Entities would not be diminished by the discharge of the Debtors or the assumption by the Trust of liability for Asbestos PI Claims. It is nonetheless still silent, however, as to whether the insureds' obligations under the Asbestos

181031                                    10

Insurance Policies remain undiminished and unreduced and/or whether those obligations are assumed by the Trust.

13.    During the Phase I Hearing, the Phase I Insurers illustrated this issue with examples of certain terms in their policies that they maintain impose certain obligations on the insureds. For example, certain provisions of the unsettled Asbestos Insurance Policies require the insureds to provide timely notice to insurers of any "occurrence" or "claim" made against it; to cooperate with the insurers in investigating claims made against the insured and in defending against those claims; and to refrain from entering into any settlements, or otherwise making any voluntary payments, without the consent of the insurer.[6] This Court need not, and will not, address the scope of any such policy obligations of the insureds, or any corresponding obligations of the insurers, in the proceedings addressing confirmation. Again, those are among the issues to be addressed in future coverage litigation. The Court simply notes that the Phase I Insurers maintain that under applicable non-bankruptcy law, the insured's failure to satisfy its obligations would give rise to defenses to coverage. As described above, neither the Plan nor the Asbestos Insurance Transfer Agreement expressly address the insureds' obligations under the Policies when discussing the transfer of "rights" or the obligations and duties of the insurers.

14.    Moreover, the Phase I Insurers also pointed to the potential additional confusion caused by Plan Sections 7.13 and 8.1.1. Those provisions in effect provide that, except as

_____

[6] Examples of the types of obligations under the policies cited to by the Phase I Insurers include: ***Notice provisions***: GEICO/Republic/Seaton Phase I Trial Ex. GRS-24, Ex. 1 thereto at Condition 6, Exs. 2, 3 & 4 thereto at Condition C(1)&(2), Exs. 5 & 6 thereto at Condition 3, and Exs. 7 & 8 thereto at Condition G; ***Duty to cooperate***: GEICO/Republic/Seaton Phase I Trial Ex. GRS-24, Ex. 1 thereto at Condition 7, Exs. 2, 3 & 4 thereto at Condition C(3), and Exs. 7 & 8 thereto at Condition H; ***Voluntary payment***: GEICO/Republic/Seaton Phase I Trial Ex. GRS-24, Ex. 1 thereto at Condition 9, Exs. 2, 3, & 4 thereto at Condition C(4), and Exs. 7 & 8 thereto at Condition J; ***Right to associate in the defense of covered claims***: GEICO/Republic/Seaton Phase I Trial Ex. GRS-24, Ex. 1 thereto, at Condition 7, Exs. 7 & 8 thereto at Condition H. Other examples include: ***Notice provisions****:* Zurich Phase I Trial Ex. 12, at Condition G; ***Duty to cooperate***: Zurich Phase I Trial Ex. 12, at Condition H; ***Right to associate in the defense of covered claims***: Zurich Phase I Trial Ex. 12, at Condition H.

otherwise provided in the Plan, any obligations of the Debtors that are not specifically retained are eliminated. Section 7.15 needs to be clarified to ensure that, as expressly intended by the Plan Proponents, the insureds' obligations under the policies are not eliminated by the Plan. Otherwise, the insurers' coverage defenses would not be preserved, since absent this bankruptcy the failure of the insured to comply with its policy obligations would be a basis to deny coverage, and the party that presently has the obligation (and that the obligation exists) is inherent in the issue of establishing the defense. There should be no ambiguity about whether, in any subsequent coverage litigation, the Trust can claim that it has the right to insurance recoveries under the policies or settlement agreement, but that it does not have any obligations of the insureds under those policies or the settlement agreement, and consequently the insurers are obligated to pay under their policies and settlement agreements, notwithstanding failure of the Trust or the Reorganized Debtor to comply with the obligations.

15. In responses to discovery and depositions seeking clarification from the Plan Proponents on this point, the Plan Proponents simply referred to Section 7.15 of the Plan *(i.e.*, the "Insurance Neutrality" provision) or were unable to respond. (*See, e.g.*, CNA Phase I Trial Ex. 1, Debtors' Response to Interrogatories, Interrogatory Nos. 9 & 10; CNA Phase I Trial Ex. 2, ACC's Response to CNA's Interrogatories, Interrogatory Nos. 9 & 10; CNA Phase I Trial Ex. 3, FCR's Response to CNA's Interrogatories, Interrogatory Nos. 9 & 10). At argument before the Court, counsel for the ACC argued that the Plan Proponents' view is that although the Asbestos Insurance Transfer Agreement states that the transfer is not an assignment of the policies *in toto* and does not so provide, the transfer of rights under the Agreement would mean that the Trust will assume the obligations under the Policies and Settlement Agreement as a matter of law. (Tr., 6/23/09, at 73). At deposition, counsel for the ACC suggested that the issue of the

responsibility for those obligations would not be determined until coverage litigation or subsequent negotiations:

> And so to that extent, yes, the Trust, one way or another, *to the extent determined by a coverage court or by negotiations with insurers,* will have to perform what you have described as the obligations and rights under the assigned insurance coverage. That's my understanding.

(CNA Phase I Trial Ex. 5, Lockwood Tr. at 106). When questioned on the same issue, the Debtors' 30(b)(6) witness, Richard Finke, responded, "*I don't have an answer as to the specific duties in terms of whether the PI Trust has a given duty and obligation [or whether it] remains with a Grace entity*. I think it would depend on the nature of the duty or obligation." (CNA Phase I Trial Ex. 4, Finke II Tr. at 48). Similarly, the Future Claims Representative stated that he did not know if under the Plan, the Trust steps into the shoes of the Debtor with respect to the Debtor's obligations under the policy. (Certain Insurers' Phase I Trial Ex. 1, Austern Tr. at 94). Thus, according to the Plan Proponents themselves, there appears to be ambiguity in the treatment of the insureds' duties and obligations under the policies and related settlement agreements.

16.    In view of the ambiguity in the Plan in this respect, and the record before the Court, the Court agrees with the Phase I Insurers and finds that the Plan does not plainly and unambiguously address the issue of the insureds' obligations under the policies and related settlement agreements. If under Section 7.15 of the Plan, all of the Phase I Insurers' defenses relating to the fulfillment of obligations under the policies are preserved, then in order to make the Plan unambiguously "insurance neutral," as intended by the Plan Proponents, it should be clearly stated who has the obligation to fulfill the insureds' obligations under the policies and related settlement agreements obligations once the Plan is confirmed. The language proposed by

the Phase I Insurers and included in Appendix A appropriately provides the clarity needed on this issue.

## LACK OF CLARITY REGARDING USE OF THE COURT'S FINDINGS

17. Subsection (f) of Section 7.15 involves an additional exception to subsection 7.15(a) and incorporates language related to the use of this Court's findings. As proposed, subsection 7.15(f) provides that "nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and or conclusion of law with respect to confirmation or consummation of the Plan shall limit the right of any Asbestos Insurance Entity, in any Asbestos Insurance Action, to assert any "Asbestos Insurer Coverage Defense." The definition of Asbestos Insurer Coverage Defense, however, contains a clause that could potentially be ambiguous with respect to the super-peremptory nature of Subsection 7.15(a). Specifically, pursuant to § 1.1(16) of the Plan, Asbestos Insurer Coverage Defenses "do not include any defense that (i) the Plan or any of the Plan Documents do not comply with the Bankruptcy Code…." As broadly worded, that provision would include the finding required by section 1129(a)(3) that the Plan was proposed in good faith.

18. The Phase I Insurers have expressed concern that, without clarifying language, this definition could be misused or misinterpreted to purportedly support the position that findings by the Court regarding the Plan and the TDP were also findings regarding the reasonable valuations of the Asbestos PI claims, either individually or collectively, with respect to issues arising under the Policies or that resolution of such claims without an insurer's involvement was reasonable and/or appropriate. The Plan Proponents maintain that this is not the intent of Clause (i), but that it is merely meant to preclude a coverage court from collaterally attacking findings of the Bankruptcy Court as to matters of Bankruptcy Law.

181031                                                                                              14

19.     More generally, even apart from the definition of Asbestos Insurer Coverage Defense, the Phase I Insurers have expressed concerns that this Court's findings and conclusions – which are being made solely for purposes of confirmation – could be misinterpreted or misused in subsequent coverage actions in a way that would tilt the playing field in favor of the entities seeking coverage (*i.e.* the Reorganized Debtors or the Trust). In other bankruptcies, including *Federal Mogul* and *Kaiser Aluminum*, the parties have agreed upon -- and this Court has approved -- language that makes clear that this Court's findings cannot be used in coverage litigation for purposes for which they are not intended, such as to show that there has been a valuation put on Asbestos PI Claims that is binding on the insurers, or that the TDP or other aspects of the Plan should be deemed "reasonable" settlements for purposes of determining whether insurers must provide coverage for claims paid by the Trust. The Court believes that that language -- which is included in Appendix A submitted by the Phase I Insurers and which is modeled on the *Federal Mogul* plan -- provides the clarity that is needed to ensure that this Court's findings and conclusions are not inadvertently misused or misinterpreted in a coverage action.

20.     As this Court has repeatedly noted, it will not include coverage determinations in its findings in connection with confirmation of the Plan, and will not make any findings or conclusions that are intended to decide or impact coverage issues that may be the subject of subsequent litigation. It will make the findings and conclusions necessary under Section 1129 of the Bankruptcy Code with respect to confirmation of the Plan, but not more. The Phase I Insurers do not dispute that process, but showed that the structure of 7.15 with its carve-outs and exceptions make the Plan language here distinguishable from the "super-peremptory" language utilized in *Combustion Engineering*, and thus creates the potential for misunderstanding

regarding the use of those findings. The Court agrees and finds that to the extent that the Plan Proponents create carve-outs from super-peremptory language, to retain the assurance that the Phase I Insurers' rights are unaffected by the Plan and its Confirmation, they should include language to prevent to the extent possible the misinterpretation and/or misuse of those findings as impacting coverage. The revision of Sections 7.15 and 1.1(16) to remove language referring to and/or defining "Asbestos Coverage Defenses" by the Plan Proponents -- as proposed in the recent Settlement Proposal of the Plan Proponents -- does not cure the issue, and does not resolve this problem, which can be addressed by inclusion of Plan language inserted in other cases before the Court.

CONCLUSION

21.     The Court finds that the Plan language cannot be found to provide the Phase I Insurers with the unqualified assurance required by *Combustion Engineering* that the Plan does not, and will not, adversely affect their rights to litigate and assert defenses in coverage litigation, as intended by the Plan Proponents. The Plan Proponents proposed revision does not cure all of the issues of ambiguity raised by the Phase I Insurers. At the Phase I Hearing before the Court, the parties indicated that they would attempt to resolve ambiguities and issues regarding insurance neutrality by agreement. If the parties are unable to do so, the Court will adopt the language proposed by the Phase I Insurers *(see* Phase I Insurers' proposed modification to Section 7.15 attached) for purposes of a Confirmation Order.

\* \* \* \* \* \*

## CONCLUSION

For the reasons stated in their Phase I Plan Objections, their Phase I Trial Briefs, and the

record of proceedings had herein, the Phase I Insurers request that (1) the Court's determination

of Phase I issues be deferred pending the parties' attempt to consensually modify the Plan's

insurance neutrality language  regarding Phase I issues and (2) in the event that no agreement can

be reached, the Court enter the above proposed findings of fact and conclusions of law.

Dated:  July 16, 2009
     Wilmington, Delaware

ROSENTHAL, MONHAIT & GODDESS, P.A.
*/s/ Edward B. Rosenthal*
Edward B. Rosenthal (Bar No. 3131)
P.O. Box 1070
Wilmington, Delaware 19899
Telephone: (302) 656-4433x6
Facsimile: (302) 658-7567

- and -

GOODWIN PROCTER LLP
Daniel M. Glosband (*pro hac vice*)
Michael S. Giannotto (*pro hac vice*)
Brian H. Mukherjee (*pro hac vice*)
Exchange Place
Boston, Massachusetts 02109
Telephone: (617) 570-1000
Facsimile: (617) 523-1231

- and -

FORD MARRIN ESPOSITO WITMEYER &
GLESER, L.L.P.
Elizabeth DeCristofaro (*pro hac vice*)
Wall Street Plaza
23rd Floor
New York, New York 10005-1875
Telephone: (212) 269-4900
Facsimile: (212) 344-4294

*Attorneys for Continental Casualty Company and*
*Continental Insurance Company and related*
*subsidiaries and affiliates*

181031                17

DRINKER BIDDLE & REATH LLP
*/s/ David P. Primack*
Warren T. Pratt (4334)
David P. Primack (4449)
1100 N. Market Street, Suite 1000
Wilmington, DE 19801-1254
Telephone: 302-467-4200

- and -

Michael F. Brown (*pro hac vice*)
Jeffrey M. Boerger (*pro hac vice*)
One Logan Square
Philadelphia, PA 19103-6996
Telephone: 215-988-2700

*Attorneys for Government Employees Insurance
Company, Republic Insurance Company n/k/a Starr
Indemnity & Liability Company, and Seaton
Insurance Company*

CONNOLLY BOVE LODGE & HUTZ LLP
/s/ Jeffrey C. Wisler
Jeffrey C. Wisler (#2795)
Marc J. Phillips (#4445)
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141 Telephone
(302) 658-0380 Facsimile

OF COUNSEL:
Richard A. Ifft (*pro hac vice*)
Karalee C. Morell
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7170 Telephone
(202) 719-7049 Facsimile

*Attorneys for Zurich Insurance Company and
Zurich International (Bermuda) Ltd.*

181031                    18

COZEN O'CONNOR
/s/ *Barry M. Klayman*
Barry M. Klayman (DE  No. 3676)
1201 N. Market Street
Suite 1400
Wilmington, DE 19801
(302) 295-2035 Telephone
(215) 701-2209 Facsimile

- and -

William P. Shelley (PA ID 40875)
Jacob C. Cohn (PA ID 54139)
Ilan Rosenberg (PA ID 89668)
1900 Market Street
Philadelphia, PA  19103
(215) 665-2000 Telephone
(215) 665-2013 Facsimile

*Attorneys for Federal Insurance Company*

STEVENS & LEE, P.C.
/s/ *John D. Demmy*
John D. Demmy (DE Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Email: jdd@stevenslee.com

- and -

Leonard P. Goldberger
Marnie E. Simon
(Members PA Bar)
1818 Market Street, 29th Floor
Philadelphia, PA 19103-1702
Telephone:  (215) 751-2864/2885
Telecopier:  (610) 371-7376/8505
Email: lpg@stevenslee.com
Email: mes@stevenslee.com

*Attorneys for Fireman's Fund Insurance Company,*
*Allianz S.p.A., f/k/a  Riunnione Adriatica di Sicurta,*
*and Allianz SE, f/k/a Allianz Aktiengesellschaft*

MENDES & MOUNT LLP
/s/ *John S. Spadaro*
John S. Spadaro (No. 3155)
724 Yorklyn Road, Suite 375
Hockessin, DE 19707
Telephone: (302) 235-7745
Facsimile: (302) 235-2536
jspadaro@johnsheehanspadaro.com

- and -

Eileen T. McCabe (*pro hac vice)*
750 Seventh Avenue
New York, NY 10019
Telephone: (212)261-8254
Facsimile: (302)235-2536
eileen.mccabe@mendes.com

- and -

Michael A. Shiner (*pro hac vice*)
TUCKER ARENSBERG
1500 One PPG Place
Pittsburgh, PA 15222-5401
Telephone: (412) 566-1212
Facsimile: (412) 594-5619
mshiner@tuckerlaw.com

*Counsel for AXA Belgium as successor to Royal Belge SA*

MESSANA ROSNER & STERN LLP
/s/ Frederick B. Rosner
Frederick B. Rosner (DE #3995)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: 302-777-1111
Facsimile: 302-295-4801

- and-

Robert B. Millner
Christopher E. Prince
SONNENSCHEIN NATH & ROSENTHAL LLP
233 S. Wacker Drive, Suite 7800
Chicago, Illinois 60606
Telephone: 312-876-8000
Facsimile: 312-876-7934

*Counsel for General Insurance Company of
America*