IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al.*,<br><br>            Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>Jointly Administered<br><br>**Related Docket Nos. 22178, 22185, 22407**<br><br>Hearing Date: July 27, 2009 @ 2:00 p.m. (ET) |

**ARROWOOD'S JOINDER TO PLAN PROPONENTS' MOTION TO EXCLUDE
THE EXPERT REPORT OF DR. SPEAR AND REPLY TO THE LIBBY CLAIMANTS
OPPOSITION TO THE MOTION TO STRIKE DR. SPEAR (DKT. #22407)**

Arrowood[1] joins the Plan Proponents in seeking an order striking Dr. Spear's purported expert report. In the brief in support of their objection, the Libby Claimants acknowledge the proposition for which Dr. Spear's testimony is offered. As is explained below, this proposition runs directly counter to the law in this Circuit. This admission and the fact that the Libby Claimants have failed to comply with the disclosure requirements of Rule 26(a)(2)(B) provide alternative and independent grounds to strike Dr. Spear's report as a matter of law.

**I. DR. SPEAR'S TESTIMONY IS OFFERED TO SUPPORT AN ARGUMENT THAT IS IMPERMISSIBLE AS A MATTER OF LAW**

The Libby Claimants assert that their intention in including the testimony of Dr. Spear is to support their argument that their claims should be valued differently from other asbestos claims.[2] In support of this proposition, the Libby Claimants do not argue that Dr. Spear will

---

[1] Arrowood Indemnity Company, f/k/a Royal Indemnity Company (collectively, the "Joining Parties"). The Declaration of Allen Schwartz dated April, 3 2009, and the attached exhibits are offered in further support of the Moving Parties' motion ("Schwartz Decl.").

[2] Libby Claimants' Objection to Plan Proponents' Motion In Limine to Exclude the Expert Report and Testimony of Dr. Terry M. Spear at 3–4 [Dkt. No. 22407] ("One of the primary problems with the Plan is that it fails to account for factors, aside from the disease categories, which profoundly impact the value of claims in the tort system. Dr. Spear's testimony directly addresses those non-medical factors . . . Despite the fact that similar Libby claims settled for more than 100 times the nationwide settlement average, the Plan values the Libby claims in the same manner it values factually and legally distinct, and less valuable, claims held by other

NY1:1783232.5

demonstrate that the Libby Claimants contracted a different disease than other claimants.[3] Instead, the Libby Claimants argue that Dr. Spear will show why the Plan should pay more to claimants represented by the handful of law firms who have banded together to call themselves the "Libby Claimants" *for the same exact diseases* contracted by asbestos claimants represented by other law firms elsewhere. Yet, even if Dr. Spear's testimony proves that some law firms were successful in winning higher recoveries prior to Grace's bankruptcy filing than others (a contested point),[4] this would not entitle the Libby Claimants to a different claims valuation process under the Bankruptcy Code.

"Equality of distribution among creditors is a central policy of the Bankruptcy Code." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004) (quoting *Begier v. IRS*, 496 U.S. 53, 58 (1990)). The fundamental rule in bankruptcy is that the debtor is not allowed to pay more to creditors it prefers than to others, but rather must distribute its limited assets among all creditors on an equal basis. *See id.* at 241 n.55 ("Equality between creditors is necessarily the ultimate aim of bankrupt[cy] law" (quoting *Clarke v. Rogers*, 228 U.S. 534, 548 (1913))).

The Bankruptcy Code thus requires that a plan of reorganization provide the "same treatment" for "substantially similar" claims. *Id*. at 239 (quoting 11 U.S.C. §§ 1122(a), 1123(a)(4)). And in asbestos cases, section 524(g) underscores this requirement, mandating that the plan must "[value, and . . . pay,] present claims and future demands that involve similar claims in substantially the same manner." *See id*. (quoting 11 U.S.C. § 524(g)(2)(B)(ii)(V)).

---

claimants.").

[3]  The Libby Claimants have seemingly backed away from this implausible argument in light of Judge Molley's ruling dismissing Dr. Whitehouse's expert testimony.

[4]  The Libby Claimants basis for asserting a higher settlement value for the clients represented by their law firms as opposed to other law firms is based on an apples and oranges comparison of dissimilar claims cherry picked from among the overall claimant population. Putting this aside, prepetition settlement amounts were influenced by host of factors that are constantly shifting. With the criminal case now behind Grace and a favorable verdict in hand, many of these factors are now different.

The Libby Claimants suffer from the same diseases from which all other claimants in this case suffer. Their claims are "substantially similar" to other claimants' claims, and they must receive the same treatment as other claimants under Third Circuit law.[5]

In *Combustion Engineering*, the Third Circuit held that a plan of reorganization could not be confirmed where pre-petition payments to favored current claimants appeared to "impermissibly discriminate against certain asbestos personal injury claimants" in violation of the "fundamental bankruptcy policy of 'equality of distribution among creditors.'" *Id*. at 239, 241. The Court of Appeals explained that where a debtor makes pre-petition transfers to favor certain claimants in contemplation of a subsequent bankruptcy filing, the bankruptcy court must "consider the bankruptcy scheme as an integrated whole," including the pre-petition transfers, "in order to evaluate whether Plan confirmation is warranted." *Id*. at 241–42 & nn. 55-56. Any claim that a particular law firm or group of firms obtained a higher recovery pre-petition is analogous to the pre-petition transfers to favored claimants in *Combustion Engineering*. Granting the Libby Claimants preferential treatment for substantially similar claims would constitute impermissible discrimination against other asbestos claimants in this bankruptcy.

Tellingly, the Court of Appeals has also found "a striking disparity" in another section 524(g) bankruptcy between the pre-petition settlements afforded two asbestos claimants in comparison to the proposed Plan's treatment of other claimants. *See In re Congoleum Corp*., 426 F.3d at 689 n.15. While the treatment of these two claimants was not presented for direct review on that appeal, the Third Circuit observed that "this case . . . has led to problems of fair and equal resolution." *Id*. at 693. Reiterating what it said in *Combustion Engineering*, the Third

---

[5] The Supreme Court has underscored the importance of equal treatment in the resolution of asbestos liability. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 854-55 (1999) (rejecting asbestos class-action settlement that violated "requirement of equity" by favoring current claimants with "better terms" than future claimants); *Amchem Prods. v. Windsor*, 521 U.S. 591, 626-28 (1997) (rejecting asbestos class-action settlement that lacked safeguards for fair allocation of compensation among current and future claimants).

Circuit directed that "careful and comprehensive scrutiny is required" of the "conduct of the parties and counsel pre-petition" in this case, warning that approval of a plan "whose preparation was tainted with overreaching . . . would be a perversion of the bankruptcy process." *Congoleum Corp.*, 426 F.3d at 693–94.

Allowing a group of plaintiffs firms to extract higher payment rate under the Plan for their clients as the price for dropping their objections here would likewise be a perversion of the bankruptcy process. The clients of a group of plaintiff firms that have banded together to object to the Plan are not entitled to higher recoveries than other claimants because they happened to hire more powerful or litigious lawyers than other claimants. The only accepted practice in section 524(g) bankruptcies is to distinguish among asbestos claims based on disease category, and the Libby Claimants have cited no legal support for a Trust Distribution Procedure based on other distinctions between asbestos claimants.

In short, the Libby Claimants cannot circumvent section 524(g) and the "fundamental bankruptcy policy of 'equality of distribution among creditors'" by obtaining preferential treatment for select claimants. *Combustion Eng'g*, 391 F.3d at 241. Any Plan providing such grossly preferential treatment of the Libby Claimants would render the Plan unconfirmable as a matter of law. The bankruptcy court would be obligated to deny confirmation of a Plan that does not provide the "requisite equality of distribution among creditors." *Id.* at 242.

The proposition for which Dr. Spear's testimony is offered is one that runs counter to established law in this Circuit. Dr. Spear's testimony should be excluded as a matter of law.

## II. THE LIBBY CLAIMANTS' FAILURE TO COMPLY WITH THE DISCLOSURE REQUIREMENTS OF RULE 26(A)(2)(B) PROVIDE A SEPARATE AND INDEPENDENT GROUND FOR STRIKING DR. SPEAR

Dr. Spear refers in his report to documents he relied on, which memorialize the Libby Claimants' purported occupational and exposure histories. Yet, all the material he purportedly reviewed has not been produced.[6] Dr. Spear has not produced any database, notes or other documents purporting to memorialize his review. Nor has he produced any database, spreadsheet or schedule that identifies with specificity the scope and nature of the population allegedly studied or the facts extracted on each claimant.

The level of non-compliance is significant. Included among the things that the Libby Claimants have withheld are all of the documents supporting the studies[7] that Dr. Spear purports to have done in the Libby area. These documents include:

+ Databases and spreadsheets that contain tree bark results that Dr. Spear contends that he took from test sites and control sites in the Libby area
+ Databases and spreadsheets that contain the tree core results from test sites and control sites that Dr. Spear alleges that he preformed.
+ Results from bark and core sample analysis performed by Wadsworth Center
+ Databases and spreadsheets containing the scanning electron micrographs of amphibole fibers on bark and core samples that Dr. Spear alleges that he performed.
+ Results of transmission electron microscopy analysis of bark and core samples
+ Data underlying the table of averages in the firewood harvesting study.

---

[6] Instead, Dr. Spear merely lists five items upon which he relies: (1) the Expert Report of Dr. A.C. Whitehouse, (2) the common exhibits for the Grace trials in Libby 1997-2000, (3) transcripts of the trials in *Skramstad v. W.R.Grace* (1997), *Benefield v. W.R. Grace* (1998) and *Finstad v. W.R. Grace* (1999), (4) depositions of Earl Lovick, Assistant Manager of the W.R. Grace operations of Libby, Montana, and (5) industrial hygiene literature on asbestos and disease. *See* Expert Report of Dr. Spear, Exhibit A to Plan Proponents' Joint Expedited Motion in Limine to Exclude the Expert Report and Testimony of Dr. Terry M. Spear [Dkt. No. 22178-1]. Generic reference to "industrial hygiene literature" hardly qualifies as a basis on which to form an expert opinion.

[7] *See* Expert Report of Dr. Spear [Dkt. No. 22178-1]. In one of these articles, Dr. Spear conducted a study involving collection of tree bark and core samples from areas surrounding the Libby mine. *See* Ward, T.J., Spear, T., *et al.*, *Trees as Reservoirs for Amphibole Fibers in Libby, Montana*, Science of the Total Environment, vol. 367, issue 1, August 2006. In the other article, Dr. Spear conducted a study involving simulated firewood harvesting studying asbestos present in samples from (1) fibers caught in investigators' face mask filters, (2) fibers wiped from investigators' clothing, and (3) fibers wiped from tree bark samples. *See* Hart, J.F., Spear, T.M., *et al.*, *Evaluation of Asbestos Exposures During Firewood Harvesting Simulations in Libby, Montana - Preliminary Data*, Ann. Occup. Hyg., vol. 51, No. 8, November 2007.

- + Spreadsheets of results from asbestos fiber collection from face masks
- + Spreadsheets of results from asbestos fiber collection from clothing wipes
- + Spreadsheets of results from asbestos fiber collection from bark samples
- + Lists of locations of test site trees selected for the harvesting simulation
- + Results from bark sample analysis by transmission electron microscopy
- + All data recorded by the "data recorder" present at harvesting simulation
- + Results of air and wipe sample analysis performed by DataChem Laboratories

Other significant material is also missing.[8] For example, Dr. Spear purports to reach certain expert opinions in his report regarding the alleged sources of exposure for his clients, yet the Libby plaintiff lawyers have routinely named a host of other companies as the source of the Libby Claimants' exposure to asbestos. These entities include:

| | |
|---|---|
| Brad E. Phillips | Mark Schoknecht |
| Champion International Corp. | Mt. St. Bd. of Health, Div. of Disease Control |
| David Robinson | Mt. St. Dep't of Health, Div. of Air Poll. |
| Dep't of Pub. Health & Human Servs. | Control & Indus. Hygiene |
| Dep't of Labor & Indus. | Robinson Insulation Co. |
| Emmett Lisle | State of Montana by and through the Dep't of Env. Quality |
| Everett Nelson | |
| Garlock Inc.[9] | St. Regis Co. |
| International Paper Co. | St. Regis Corp. |
| John Swing | State of Montana |
| John Luger | Zurn Industries (Erie City Ironworks) |
| J. Neils Lumber Co. | Does A-Z |

Nonetheless, Dr. Spear has produced no information or documents on these alleged exposures. Production of his file will show among other things that he either excluded this material or that the claimants who are the subject of his report were selectively culled from a wider population.

---

[8] In his expert report, Dr. Spear notes that he co-authored two articles he published regarding studies on asbestos exposure in trees conducted in the Libby area. From his report, it is unclear whether Dr. Spear relies on these articles in forming his expert opinion. But whether he relies on the articles or not, the Libby Claimants must produce the raw data used in each of the studies he performed if Dr. Spear is to be taken seriously as an expert witness. Yet the Libby Claimants have failed to turn over one shred of the data from this study.

[9] Garlock has filed a trial brief in this case that confirms that claimants alleging claims against Grace have at the same time asserted that Garlock is the source of their exposure.

The files that have been withheld are relevant, material and essential to any consideration of the opinions at issue. The scope and nature of population allegedly studied, the facts extracted on each claimant and the nature of the comparisons considered would all be reflected in this type of documentation. It is impossible for someone to purport to simply know this information and, if Dr. Spear claimed to do so, his opinions could not meet scientific scrutiny.

Rule 26(a)(2)(B) requires the disclosure of all information that experts consider in forming their opinions and testimony, including all data or other information. Fed. R. Civ. P. 26(a)(2)(B).[10] This Rule imposes a duty to disclose, without awaiting formal discovery requests, basic information that is needed to prepare for trial. Rule 37 imposes severe consequences for violating Rule 26. Unless the failure to produce data or other information is harmless—which is not the case here—the non-complying party is not permitted to use as evidence any testimony or information that should have been disclosed. That sanction is entirely appropriate here and provides a separate and independent ground from those asserted by the Plan Proponents for striking Dr. Spear.

It is axiomatic that a party proffering an expert opinion must produce all "information considered by the [expert] in forming the [his or her] opinion." Fed. R. Civ. P. 26(a)(2)(B). This includes the "data or other information considered by the witness in forming" his expert report and testimony. *Id*. That is precisely how the Third Circuit has interpreted Rule 26:

> Pursuant to Fed. R. Civ. P. 26(a)(2)(B), an expert witness's report must contain a complete statement of all opinions to be expressed and the data or other information considered by the witness in forming those opinions. A party that fails to disclose evidence required by Rule 26(a) will not be allowed to use that evidence unless the failure to disclose the evidence is harmless.

---

[10] Fed. R. Civ. P. 26 and Fed. R. Civ. P. 37 are incorporated generally by Fed. R. Bankr. P. 9014, and respectively by Fed. R. Bankr. P. 7026, and Fed. R. Bankr. P. 7037.

*Johnson v. Vanguard Manufacturing, Inc.*, 34 Fed. Appx. 858, 859 (3d Cir. 2002); *see also In re Safeguard Scientifics*, No. 01-3208, 2004 U.S. Dist. LEXIS 23494 at *5 (E.D. Pa. Nov. 17, 2004) ("If an expert's initial report does not include a complete statement of opinions to be expressed and the basis for these opinions, a court may prohibit the expert from later testifying on issues or opinions not addressed in the initial report"); *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006) ("Every litigant in federal court is plainly entitled under Rule 26(a)(2)(B) to be given the information spelled out therein, and none shoulder the burden to independently investigate and ferret out that information as best they can and at the expense of their client . . . the available penalty for failure to comply with Rule 26(a)(2)(B) is equally plain, and if a litigant refuses to comply with the requirements of the rule, he dose so at his peril"). Indeed, Rule 26 "imposes on parties a duty to disclose, *without awaiting formal discovery requests*, certain basic information that is needed in most cases to prepare for trial or make an informed decision about settlement." Fed. R. Civ. P. 26(a), Advisory Committee Notes (1993) (emphasis added).

      The reasons for this rule are straightforward and self-evident. First, an opposing party cannot test an expert's opinion or formulate a rebuttal opinion without an opportunity to assess the underlying data and the conclusions drawn from it. As the Third Circuit has held, "Rules 26 (a) and (b) recognize that being forced to cross-examine an opposing expert without the benefit of a meaningful opportunity to depose him *puts a party at a substantial disadvantage*." *Brooks v. Price*, 121 Fed. Appx. 961, 965 (3d Cir. 2005) (emphasis added); *McMillan v. Weeks Marine, Inc.*, 478 F. Supp. 2d 651, 659 (D. Del. 2007) ("The purpose of [Rule 26(a)(2)(B)] is to give opposing parties a reasonable opportunity to prepare for effective cross examination or to secure their own expert witness"). Second, the law forbids litigation by ambush and specifically the use of surprise expert opinions. *See Vandenbraak v. Alfieri*, No. 01-482, 2005 U.S. Dist. LEXIS

9882 at *9 (D. Del. May 25, 2005) ("[Rule 26(a)(2)(B)] is intended to protect opposing parties from unfair surprise and to allow such parties an opportunity to develop evidence to meet the expert testimony being proffered by the party that hired the expert"); *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996) ("The reason for requiring expert reports is 'the elimination of unfair surprise to the opposing party and the conservation of resources'") (quoting *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995); *see also Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007) (same).

If Arrowood and other parties in interest are denied access to this material, they will be severely prejudiced. First, it will be difficult to refute Dr. Spear's confirmation testimony without an opportunity to examine the data supporting his opinion—or to have done so before his deposition. Second, Arrowood has been precluded from preparing rebuttal opinions relating to Libby issues, which were due on April 6, 2009. Third, there will be no way for Arrowood to cure the prejudice if it is denied access to this discovery.

Sanctions under Rule 37 "provide[] an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed." Fed R. Civ. P. 26(a)(2)(B), Advisory Committee Notes (1993). Accordingly, the Third Circuit has not hesitated to uphold decisions striking expert testimony where a party has failed to comply with this rule. *See United State v. 68.94 Acres of Land*, 918 F.2d 389, 396–97 (3d Cir. 1990) (upholding the exclusion of plaintiff's expert when, at trial, the expert relied on data that plaintiffs had failed to disclose in accord with a pre-trial order); *Hagans v. Henry Weber Aircraft Distributors, Inc.*, 852 F.2d 60, 64 (3d Cir. 1988) (holding that the exclusion of plaintiff's substitute pilot expert was a proper sanction for the plaintiff's failure to disclosure all the bases of the original pilot expert's opinion in accordance with the district judge's pre-trial

order); *Brooks*, 121 Fed. Appx. at 965 (affirming the exclusion of plaintiff's expert witness for failing to file an expert report prior to the discovery deadline, depriving defendant of a meaningful opportunity to depose him and putting defendant at a substantial disadvantage); *see also Smith v. Botsford General Hospital*, 419 F.3d 513, 516 (6th Cir. 2005) (affirming the striking of plaintiff's expert witness for failure to disclose the data and other information considered in forming his opinion); *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 282–284, 289–91 (E.D. Va. 2001) (finding that government had a duty to preserve correspondence between expert and consultants, and that destruction of such evidence was intentional warranting sanctions for spoliation of evidence, and that an adverse inference against the expert's testimony and their credibility in general was warranted).

[Remainder of page left blank]

**CONCLUSION**

For the foregoing reasons, Arrowood respectfully requests that this Court enter an order striking Dr. Spear's report.

Dated: July 16, 2009
       Wilmington, Delaware

/s/ Garvan F. McDaniel
Garvan F. McDaniel, Esq. (#4167)
Bifferato Gentilotti LLC
800 N. King Street, Plaza Level
Wilmington, DE  19801
Telephone:  (302) 429-1900

-and-

Carl J. Pernicone, Esq.
WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER, LLP
150 East 42nd Street
New York, NY 10017-5639
Telephone: (212) 490-3000

-and-

Tancred Schiavoni, Esq.
Gary Svirsky, Esq.
O'MELVENY & MYERS LLP
7 Times Square
New York, New York
Telephone: (212) 326-2267

*Counsel to Arrowood Indemnity Company, f/k/a Royal Indemnity Company*