## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
In re:                                   :
                                         :   CHAPTER 11
W.R. GRACE & CO., et al.,                :
                                         :   CASE NO. 01-01139 (JKF)
            Debtors.                     :   Jointly Administered
                                         :
                                         :   Re: Docket No. 22153
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

## ARROWOOD'S OBJECTION TO THE LIBBY CLAIMANTS' MOTION FOR SHORTENED NOTICE AND EXPEDITED CONSIDERATION OF MOTION TO COMPEL

Arrowood[1] respectfully objects to the Libby Claimants' motion to shorten notice[2] so they can pursue an entirely meritless motion to compel related to the Debtors' Motion for an Order Approving Settlement Agreement and Mutual Release with the Royal Parties dated June 17, 2009 [Dkt. No. 22153].

### No Exigent Circumstance Warrants the Ex Parte Relief Sought by the Libby Claimants

1.      In their motion to shorten time, the Libby Claimants make the sweeping assertion that Grace and Arrowood have not provided sufficient information to allow the Court to assess the Debtors' motion.  This is wrong.

3.      Grace and Arrowood have provided the Libby Claimants with the information and documents needed to evaluate the propriety of the settlement.  These materials include a copy of the fully executed settlement agreement for which approval is sought, the policies covered by the settlement agreement, details of the consideration to be provided and copies of the prior

---

[1]      Arrowood Indemnity Company, f/k/a Royal Indemnity Company ("Arrowood").

[2]      Libby Claimants' Motion for Leave from this Court's Case Management Order for Shortened Notice and Expedited Consideration of Motion to Compel Debtors and Arrowood to Respond to Discovery Requests in Connection with Debtors' Motion to Approve Settlement with the Royal Parties dated July 16, 2009 [Dkt. No. 22479].

settlement agreements between Grace and Royal.  Additionally, in response to the Libby

Claimants' requests, the Debtors and/or Arrowood have produced:  (i) correspondence

contemporaneous with the prior Grace/Royal settlement concerning the scope of that settlement;

(ii) documents concerning the parties' course of performance under the prior settlement and (iii)

documents concerning the issuance of the policies.   By our estimate, the documents identified

include as much or more as the contents of five boxes.  In addition to these documents, the Libby

Claimants have access to the publicly available pleadings and exhibits in the years-long coverage

action between Grace and CNA.  *See Maryland Casualty Co. v. W.R. Grace & Co.*, No. 88-

04337, (S.D.N.Y. June 21, 1988).[3]

4.       Moreover, Grace has produced for deposition three corporate-designee witnesses

who were extensively cross-examined by the Libby Claimants over the course of three days

about the prior Grace/Royal settlement and the Royal policies that are the subject of the current

settlement.[4]  Grace has also offered the Libby Claimants a declaration of a corporate

representative that confirms the arm's length negotiation of the settlement and explains its

terms.[5]

5.       The information, documents and witnesses produced to the Libby Claimants

collectively answer any questions regarding whether the settlement should be approved under *In*

---

[3]     The Debtors motion to approve the settlement was scheduled to be heard on July 27.  Publication notice of the
July 10 objection deadline and July 27 hearing date was run in the national edition of USA Today.  The hearing
date was moved to August 24 when the Libby Claimants sought an adjournment.  The Official Committee of
Asbestos Claimants ("ACC") and the Future Claimants Representative ("FCR") have consented in writing to
the Grace Parties' entry into the Agreement and support the motion.  No one other then the Libby Claimants
filed an objection by the July 10 deadline for doing so. BNSF filed a pleading three days late on July 13 that
purports to set out objections to the settlement but really seems to be an objection to the Plan.

[4]     *See* Jeff Posner May 6, 2009, Deposition Tr. pages 143:12-148:12, 148:13-149:23 and 308:8-314:7
[Arrowood's Initial Deposition Designations of Testimony of Jeffrey Posner, Richard Finke, Jay Hughes and
Peter Van N. Lockwood and Request for Judicial Notice, Dkt. No. 22144] (attesting to good faith and arm's
length nature of the 1995 settlement); Jay Hughes June 11, 2009, Deposition Tr. pages 367:6-371:12 [Dkt. No.
22144] (confirming that "Grace had fully and finally released Royal from any further liability for asbestos-
related claims under the Grace/Zonolite policies").

[5]     The Debtors and Arrowood will shortly file with the Court the declarations, a draft of which was circulated
approximately two weeks ago to the Libby Claimants.

*re Martin*, 91 F.3d 389 (3d Cir. 1996).[6]  Other bankruptcy courts in Third Circuit have deemed

similar materials to provide "a sufficient factual background" for approval of an insurer

settlement.  *See In re Congoleum*, Oct. 31, 2005 Tr. at 26:21-27:2 (Dkt. No. 3223).

### Libby's Motion to Shorten Notice is Predicated on Self-Created Grounds

5.        On top of the document and deposition discovery provided by Grace, Arrowood

offered on July 9 to produce its counsel involved in the settlement negotiations and a corporate

designee for deposition.  When the Libby Claimants failed to follow up on either deposition,

Arrowood noticed the deposition of its corporate designate for July 18 and counsel for July 21,

served the Libby Claimants and invited them to attend and question. The Libby Claimants

responded to both notices by sending emails *declining the invitation to attend*. [7]

5.        While the Court need not reach beyond this point, should it do so the

comprehensive extent of the discovery provided can be seen by walking through the answers

provided to the Libby Claimants' document requests:

+ *Document Request No. 1* asked for all insurance policies issued by a Royal Party to
  Grace.  In response to this request, Grace produced its policy library and Arrowood
  produced the Royal excess policies.

+ *Document Request No. 2* asks for all settlement agreements between a Grace Party
  and a Royal Party, including the final 1995 Settlement Agreement and earlier drafts.
  In response to this request, Arrowood produced the signed Stipulation of Authenticity
  between Grace and Arrowood that contains, amongst other documents relating to the
  1995 Settlement, a copy of the 1995 Settlement Agreement.

+ *Document Request No. 3* asks for all the documents of the Royal Parties that concern
  the 1995 Settlement Agreement, including documents relating to the negotiation of
  the settlement, and documents relating to interpretation of the Settlement. In response

---

[6]    The four *Martin* factors that bankruptcy courts must consider when approving settlement agreements are "(1)
the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation
involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of
the creditors."

[7]    These offers were both turned down on the pretext that the Libby Claimants want not just the settlement
agreement and all the other documents that they have been given but also want every draft of the settlement
agreement before they will depose anyone.

to this very expansive, burdensome, and vague Request, Arrowood and the Debtors have produced  letters Royal and Grace exchanged during the negotiation, and finalization, of the 1995 settlement—some of which explicitly discuss the extent of the coverage resolved by the 1995 Settlement—as well as documents from the signed Stipulation of Authenticity that include correspondence of the Royal Parties related to the 1995 Settlement Agreement, and all of the exhibits to Arrowood's Disclosure Statement objections (which dealt almost exclusively with issues relating to the 1995 Settlement).

+   ***Document Request  No. 4*** asks for all communications, between any Grace Party and any Royal Party relating to the 1995 Settlement Agreement, including communications in the course of negotiation of the settlement, communications after the settlement's execution, communications concerning the submission of claims under any of the Subject Insurance Policies following the 1995 Settlement Agreement, and the May 5, 2006 letter from Carl Pernicone and Jay Hughes to Jon Moyer.  In response to this similarly expansive, vague and overly-burdensome Request, Arrowood and the Debtors have produced letters Royal and Grace exchanged during the negotiation, and finalization, of the 1995 settlement—some of which explicitly discuss the extent of the coverage resolved by the 1995 Settlement. These documents comprise communications between Royal and Grace occurring both during the negotiation of the 1995 Settlement, and communications occurring after the terms of the 1995 Settlement were agreed upon by the parties.

+   ***Document Request  No. 5***, which is far from clearly drafted, asks for all documents that "form the basis for statements made in the first full paragraph of page 5 of the letter dated November 8, 2008 from Paul Koepff and Tancred Schiavoni to David Bernick."  Arrowood has produced in response to this Request correspondence between Grace and Arrowood relating to the 1995 Settlement, the Stipulation of Authenticity and the documents contained therein and all of the exhibits to its Disclosure Statement objections. Arrowood has specifically objected to this Document Request on the grounds that its use of the vague term "form the basis of" makes this Request, as drafted, both unclear and unduly burdensome.

+   ***Document Request  No. 6*** asks for all secondary evidence referred to in paragraph VII.G. of the Settlement Agreement and all secondary evidence previously exchanged between the parties.  In response to this request, Arrowood produced historical documents and Grace made available a witness for deposition during confirmation-related discovery who was extensively cross-examined by the Libby Claimants on these documents.

+   ***Document Request No. 7*** states just three words:  "All BNSF Policies." While the meaning of this request is not entirely clear, Arrowood and the Debtors have produced in response copies of the contractual indemnity agreement between BNSF and Grace, as well as correspondence, including some from over 50 years ago, relating to the BNSF contractual indemnity agreements.

8.      This level of response is far above and beyond what is called for in advance of a

hearing to approve a settlement.  None of the other settling insurers whose agreements have been approved provided this level of information about their settlements.[8]

### The Libby Claimant Objections Do
### Not Require Discovery

9.      The bottom line is that no party—not the Libby Claimants or anyone else—has challenged the good faith of the Arrowood settlement.  Nor could they.  This settlement was negotiated beginning to end under the auspices of, and overseen by, the FCR and ACC.  The ACC, FCR and Debtors participated in the settlement discussions.  The Libby Claimants are members of the ACC.

10.     The Libby Claimants' discovery complaint boils down to the fact that the Debtors and Arrowood have not produced drafts of a prior Grace/Royal settlement agreement.[9]  The final fully executed prior settlement agreement has been produced.  As have correspondence contemporaneous with the settlement that describe its terns.  Moreover, the Debtors produced for deposition three corporate designee witnesses involved in the negotiation of this prior settlement each of whom were exhaustively cross-examined about the agreement by the Libby Claimants. The prior Grace/Royal Settlement Agreement, the contemporaneous correspondence about the prior Grace/Royal Settlement Agreement and the Royal and Grace witnesses all confirm that the prior Grace/Royal Settlement Agreement release *all asbestos related claims* including products claims and what the Libby Claimants refer to as so called non-product claims. This is not

---

[8]    The Libby Claimants' discovery complaint is that the Plan Proponents and Arrowood have not produced drafts of the settlement agreement.  *See* Libby Claimants' Objection to Debtors' Motion to Approve Settlement with Royal Parties at 4–5 [Dkt. No. 22397].  The Libby Claimants cite no case law that permits a claimant in a bankruptcy case to obtain unfettered discovery of a debtor's confidential settlement communications.  To the contrary, courts in the Third Circuit have required that the party seeking discovery of information relating to settlement negotiations must make a particularized showing that the evidence is likely to lead to the discovery of admissible evidence.  *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 154 F.R.D. 552, 561–562 (D.N.J. 1994). The Libby Claimants have failed to meet this burden.

[9]    *See* Libby Claimants' Objection to Debtors' Motion to Approve Settlement with Royal Parties at 4–5 [Dkt. No. 22397].

surprising since $100 million was paid by Royal in this prior settlement.

11.     The Libby Claimants cite no case law that permits a claimant in a bankruptcy case to obtain discovery of a debtor's confidential settlement communications and settlement drafts. Federal courts have recognized that communications made in furtherance of settlement are protected by a general "settlement privilege."[10]  These courts have applied the settlement privilege because of "[t]he public policy favoring secret negotiations, combined with the inherent questionability of the truthfulness of any statements made therein."[11]  Specifically, these courts have recognized that "the parties may assume disputed facts to be true for the unique purpose of settlement negotiations.  The discovery of these sort of 'facts' would be highly misleading if allowed to be used for purposes other than settlement."[12]

12.     Equally or more important, discovery of parol evidence is utterly irrelevant where both parties to an agreement are in accord as to the meaning of an agreement, as is the case here. What the Libby Claimants are in essence saying is that they want prior drafts of a prior settlement agreement to try to demonstrate that the prior agreement means something other then

---

[10]   *See, e.g., Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 322 F.3d 976, 981 (6th Cir. 2003); *Allen County v. Reilly Indus.*, 197 F.R.D. 352, 353 (N.D. Ohio 2000) (applying privilege to correspondence regarding settlement agreement); *Olin Corp. v. Ins. Co. of N. Am.*, 603 F.Supp. 445, 449-50 (S.D.N.Y. 1985) (denying motion to compel settlement correspondence between counsel); *Cook v. Yellow Freight Sys.*, 132 F.R.D. 548, 554 (E.D. Cal. 1990) (denying third party's motion to compel settlement correspondence based on "a well-established privilege relating to settlement discussions").

[11]   *Goodyear*, 332 F.3d at 981.

[12]   *Cook*, 132 F.R.D. at 554.

what it says in the final agreement.  This is nonsense.  The resolution of this issue falls within the four corners of the document and there is no need to resort to parol evidence.[13]

### Delay Severely Prejudices All Parties, the Libby Claimants Know this and are Seeking to Exploit the Situation Improperly

11.    The delay that the Libby Claimants seek will prejudices all parties.  The proceedings in the Bankruptcy Court are on a tight schedule and continue to move forward.  To the extent that there is any deferment, the standstill provisions of the settlement are put in jeopardy and the parties are faced with Arrowood and the Plan Proponents reinitiating litigation over intensely disputed issues.[14]  Among other things, this includes a pending appeal in the bankruptcy case where Arrowood is a party.  At the same time, the Libby Claimants would presumably use the deferment to press for even more intrusive discovery into settlement communications which could easily upset what is at best a tenuous situation as is.

---

[13]    If the Libby Claimants truly believed that Arrowood's responses were inadequate, they had ample opportunity to file a motion to compel discovery before the July 10 deadline for objecting to the settlement.  They did not do so.  By that failure, they are barred from claiming any deficiency now.  *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999) (holding that absent unusual circumstances a motion to compel should be filed before the scheduled date for dispositive motions); *Wells v. Sears Roebuck and Co.*, F.R.D. 240, 241 (S.D. Miss. 2001) (holding that "if the conduct of a respondent to discovery necessitates a motion to compel, the requester of the discovery must protect himself by timely proceeding with the motion to compel.  If he fails to do so, he acts at his own peril."); *Suntrust Bank v. Blue Water Fiber, L.P.*, 210 F.R.D. 196, 200-01 (ED. Mich. 2002) (finding failure to promptly enforce discovery rights constituted a waiver of such rights) (citing 8 A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure* § 2285 (2d ed. 1994) (generally, if a moving party has unduly delayed in filing a motion for an order compelling discovery, a court may conclude that the motion is untimely)).

[14]    The Grace/Arrowood Settlement Agreement contains various litigation standstill provisions.  *See* Grace/Arrowood Settlement Agreement Section III (I).

**CONCLUSION**

The Libby Claimants arguments on the merits of discovery should be promptly

dismissed.  This Court has no obligation to hear arguments on discovery issues related to a

settlement prior to the settlement approval hearing.

Dated:  July 17, 2009
      Wilmington, Delaware

/s/ Garvan F. McDaniel
Garvan F. McDaniel, Esq. (#4167)
BIFFERATO GENTILOTTI LLC
800 N. King Street, Plaza Level
Wilmington, DE  19801
(302) 429-1900 Phone
(302) 429-8600 Fax

-and-

Carl J. Pernicone, Esq.
WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER, LLP
150 East 42nd Street
New York, NY 10017-5639
Telephone: (212) 490-3000

-and-

Tancred V. Schiavoni, Esq.
O'MELVENY & MYERS LLP
7 Times Square
New York, New York
(212) 326-2267

*Counsel to Arrowood Indemnity
Company, f/k/a Royal Indemnity Company*