IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Case No. 01-01139 (JKF) |
| | : | |
| W. R. GRACE & CO., et al., | : | Jointly Administered |
| | : | |
| Debtors. | : | Chapter 11 |
| | : | |
| | : | Related to: D.I. 19579, 20864, 21752, 22374 |
| | : | |

## SUPPLEMENTAL MEMORANDUM OF LAW OF MORGAN STANLEY SENIOR FUNDING, INC. REGARDING IMPAIRMENT ISSUES UNDER THE FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS, DATED FEBRUARY 27, 2009

EDWARDS ANGELL PALMER & DODGE LLP
Stuart M. Brown (Bar No. 4050)
919 North Market Street
15th Floor
Wilmington, Delaware 19801
(302) 777-7770

-and-

KATTEN MUCHIN ROSENMAN LLP
Jeff J. Friedman (admitted pro hac vice)
Noah Heller (admitted pro hac vice)
Merritt A. Pardini (admitted pro hac vice)
575 Madison Avenue
New York, New York 10022
(212) 940-8800

*Attorneys for Morgan Stanley
Senior Funding, Inc.*

84387386v8
WLM 517962.1

# Table of Contents

Table Of Authorities .................................................................................................................. ii

Preliminary Statement ............................................................................................................... 1

Statement of the Facts ............................................................................................................... 5

    A.   The Letters of Credit and the Reimbursement Agreements ............................... 5

    B.   The Morgan Stanley Claims ................................................................................ 6

    C.   The Treatment of the Morgan Stanley Claims Under the Plan ........................... 7

Argument ................................................................................................................................... 8

    A.   The Plan's Treatment Of Class 9 Claimants, and The Morgan Stanley Claims In Particular, Does Not And Cannot Constitute Unimpairment ............................. 8

    B.   For The Plan To Render The Morgan Stanley Claims Unimpaired, Post-Petition Interest Must Be Paid on the Effective Date of the Plan ................................... 10

    C.   The Proper Rate Of Interest to Render Morgan Stanley's Claims Unimpaired Is The Morgan Stanley Contract Rate. .................................................................. 11

Conclusion ............................................................................................................................... 15

# Table Of Authorities

**CASES**

*In re Ace-Texas, Inc.*,
217 B.R. 719 (Bankr. D. Del. 1998) .................................................................. 11-12, 13

*In re Ambanc La Mesa Limited Partnership*,
115 F.3d 650 (9th Cir. 1997) ..................................................................................... 10

*In re Coram Healthcare Corp.*,
315 B.R. 321 (Bankr. D. Del. 2004) ....................................................................... 9, 11

*In re L & J Anaheim Assoc.*,
995 F.2d 940 (9th Cir. 1993) ....................................................................................... 9

*In re Madison Hotel Assoc.*,
749 F.2d 410 (7th Cir. 1984) ....................................................................................... 9

*In re Mirant Corp.*,
327 B.R. 262 (Bankr. N.D. Tex. 2005) ..................................................................... 11

*In re Monclova Care Ctr., Inc.*,
59 Fed. Appx. 660 (6th Cir. 2003) ......................................................................... 9, 13

*In re Monclova Care Ctr., Inc.*,
254 B.R. 167 (Bankr. N.D. Ohio 2000) ...................................................................... 8

*In re New Midland Plaza Assoc.*,
247 B.R. 877 (Bankr. S.D. Fla. 2000) ........................................................ 9, 13, 13-14

*In re New Valley Corp.*,
168 B.R. 73 (Bankr. D.N.J. 1994) ....................................................................... 1, 9-10

*In re PPI Enters. (U.S.), Inc.*,
228 B.R. 339 (Bankr. D. Del. 1998) .......................................................................... 10

*In re PPI Enters. (U.S.), Inc.*,
324 F.3d 197 (3d Cir. 2003) ........................................................................... 9, 10, 14

*In re Southland Corp.*,
160 F.3d 1054 (5th Cir. 1998) ................................................................................ 9, 13

**STATUTES**

11 U.S.C. § 726 .................................................................................................................11

11 U.S.C. § 1123(a)(4) ..........................................................................................................5

11 U.S.C. § 1124(1) ..................................................................................................... *passim*

11 U.S.C. § 1124(3) ...................................................................................................1, 2, 10

11 U.S.C. § 1129(b) ..................................................................................................... *passim*

84387386v8
WLM 517962.1

Morgan Stanley Senior Funding, Inc. ("Morgan Stanley"), by and through its undersigned counsel, hereby provides this supplemental memorandum of law with respect to the issue of impairment under the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders, dated February 27, 2009 (the "Plan"),[1] and as authorized by this Court's Order Regarding Further Matters Related to the Phase I Confirmation Hearing With Respect to Class 9 Impairment, dated July 9, 2009, and respectfully states as follows:

## Preliminary Statement

The Plan's treatment of Class 9 claimants, and Morgan Stanley in particular, does not constitute unimpairment. The Plan proposes to "cash-out" Class 9 claimants such as Morgan Stanley by paying their allowed claims in full in cash on the Effective Date. No post-petition interest will be paid to any Class 9 claimant on the Effective Date, however, if it challenges the post-petition interest rate proposed under the Plan unless and until that claimant litigates and obtains a final judgment in its favor. This is the method of unimpairment that had been in section 1124(3) of the Bankruptcy Code until Congress repealed the method in direct response to In re New Valley Corp., 168 B.R. 73 (Bankr. D.N.J. 1994), in which the court held that under section 1124(3) no post-petition interest had to be paid to unsecured creditors of the debtor even thought the equity holders retained their interests. The Plan Proponents' contention that the same treatment can be afforded to Class 9 claimants under section 1124(1) of the Bankruptcy Code, and that such treatment renders the claims unimpaired, cannot be correct.

Congress, in eliminating "cash-out" of a creditor class as a form of unimpairment, simply required one of two things to happen with respect to such a class in order for the plan

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

1

confirmation standards to be satisfied: the class had to vote to accept the treatment provided by the requisite voting majorities or, if the class voted to reject the treatment, the cramdown provisions of section 1129(b) of the Bankruptcy Code had to be satisfied. Those provisions, consistent with the absolute priority rule, require the payment to a class of rejecting unsecured creditors of the allowed claim in full, together with post-petition interest, if equity interest holders receive or retain any property in respect of their equity interests. Congress's intent in this regard could not be more clear.

To the extent the Third Circuit has since held that Congress's motive in repealing section 1124(3) went principally to the issue of payment of post-petition interest and that, so long as post-petition interest is paid, "cash-out" is permitted under section 1124(1) of the Bankruptcy Code in which an unimpaired class's rights are required to be left unaltered, then the treatment afforded under section 1124(1) must be measured against and no worse economically than the cramdown treatment that would be provided to that class had the class voted and rejected the plan. Under this Plan, since equity interest holders are receiving or retaining property in respect of their equity interests, to leave the legal, equitable and contractual rights of Class 9 claimants unaltered, the Plan must provide for the payment to Class 9 claimants on the Effective Date of both the principal amount of any allowed claim and post-petition interest.

Morgan Stanley submits that its rights can only be left "unaltered" if it receives post-petition interest at the one and only rate set forth in its contract, irrespective of the label placed on that interest rate (i.e., non-default or default rate). Whatever the Court ultimately determines to be the appropriate amount of post-petition interest that must be paid on the Effective Date for a Class 9 claim to be unimpaired, however, on the facts of these cases, where equity holders are retaining property on account of their equity interests under the Plan, that amount cannot be zero.

Class 9 provides for a staggering five (5) different post-petition interest treatments under which post-petition interest would be paid <u>on the Effective Date</u> to the holder of an allowed

2

Class 9 Claim:[2] (i) a 6.09% interest rate for the banks which subsequently adjusts to the prime rate in 2006, (ii) a 4.19% interest rate for certain environmental claims, (iii) the non-default rate contained in contracts which contain a non-default rate of interest, (iv) a 4.19% interest rate for contracts which do not contain a non-default rate of interest, and (v) 4.19% for a Class 9 claimant filing a Notice of Non-Default Contract Rate of Interest. There is also a sixth post-petition interest treatment under the Plan under which <u>no interest</u> would be paid on the Effective Date to a Class 9 claimant, like Morgan Stanley, which filed a Post-Petition Interest Determination Notice. Those Class 9 claimants will receive no post-petition interest until there is a final judgment, no longer subject to appeal or review, determining the appropriate amount of post-petition interest (a "<u>Final Judgment</u>"). Moreover, for those wishing to litigate over the appropriate interest rate, the Plan appears to provide that if the creditor is successful and obtains a Final Judgment for post-petition interest, no pre-judgment interest on that Final Judgment would be payable, thus materially reducing the present value of that creditor's post-petition interest payment that should have been paid on the Effective Date.

For a "cash-out" of Class 9 claims to pass muster under section 1124(1) of the Bankruptcy Code, Morgan Stanley submits that in the context of a case such as this, where equity holders are retaining property on account of their equity interests, some <u>minimum</u> post-petition interest must be paid in respect of Morgan Stanley's allowed claim on the Effective Date, notwithstanding the need for post-Effective Date litigation because Morgan Stanley and the Debtors disagree on whether Morgan Stanley's contract rate should control the quantum of post-petition interest. Moreover, a successful litigant must be entitled to interest on interest or it will not have received the present value of the post-petition interest that should have been paid to

---

[2] This is not an instance where the entire claim is disputed and post-effective date litigation is needed to resolve whether there is an allowed underlying claim before anything can be paid. Morgan Stanley's claim has been allowed by a Court-approved stipulation and, accordingly, an issue is whether such a claim can be unimpaired in a "cash-out" where only the principal amount of the claim and no post-petition interest is going to be paid on the Effective Date.

3

it on the Effective Date.[3] Any other result would cause Class 9 creditors to do worse economically under section 1124 when they have no right to vote on the Plan, than they would under section 1129(b) if they could vote and reject the Plan.

While Morgan Stanley submits that the one and only interest rate in its contract is the appropriate rate for post-petition interest, if the Court nevertheless determines that particular contract rates do not set forth the appropriate post-petition interest rate required for unimpairment here, then the Court must determine a generic, appropriate post-petition interest rate to be paid on the Effective Date in respect of a currently allowed Class 9 claim that does not have an associated contract rate of interest (or a contract rate that the Court finds controlling). Zero, however, is not an appropriate post-petition interest payment on the Effective Date where, like Morgan Stanley, the Class 9 creditor has an undisputed, allowed claim and equity holders are retaining property on account of their equity interests.[4] The rate and timing of payment determined by the Court must then be measured against the Plan's treatment to determine whether every claim in Class 9 is unimpaired, as it must be in order for Class 9 to be unimpaired.

The Plan Proponents' argument that so long as a Class 9 claimant has the right to litigate then its legal, equitable and contractual rights are left unaltered cannot be a correct interpretation of unimpairment. Under that interpretation, there would be no need for the Debtors to make any

---

[3] Moreover, a litigant whose rights are left unaltered under section 1124(1) should be entitled to recover attorneys fees and costs to the extent the underlying contract so provides.

[4] It is important to note that section 1129(b) has been universally interpreted to require the payment of post-petition interest to a rejecting class of unsecured creditors where equity holders receive or retain property on account of their equity interests. Morgan Stanley believes that such a fact pattern constitutes "solvency" and the courts have, at least colloquially, referred to it as such. Morgan Stanley submits that if equity holders are receiving or retaining property under the Plan on account of their equity interests, that is the end of the Court's inquiry and the Debtor is solvent per se for purposes of an unimpaired, unsecured creditor's entitlement to post-petition interest. Given the value retained by the equity holders according to the Disclosure Statement, it would be a strange result if the Court nevertheless finds that that the Debtors are insolvent on the Effective Date. Nevertheless, if Class 9 is unimpaired and cannot vote, Class 9 cannot be treated worse economically than it would be treated had it voted to reject the Plan and was entitled to treatment under the cramdown provisions of section 1129(b). Any other result would stand absolute priority on its head.

4

payment to any unimpaired creditor with an allowed claim so long as the creditor is free to sue for the breach of contract upon the Debtors' failure to pay.

If Class 9 is impaired, as Morgan Stanley contends, then issues reserved for Phase II of the Confirmation Hearing, such as whether Class 9, with its six different interest treatments, violates section 1123(a)(4)'s requirement of equal treatment for all creditors in a particular class, whether the six different interest treatments create six different sub-classes for classification and voting purposes, and whether the Plan Proponents can satisfy the cramdown standards of section 1129(b) as to any rejecting class or sub-class, become relevant to the confirmability of the Plan.

## Statement of the Facts

On April 2, 2001 (the "Petition Date"), W. R. Grace & Co., W. R. Grace & Co. – Conn. ("Grace-Conn") and certain of their affiliates and subsidiaries (together with W. R. Grace & Co. and Grace-Conn, the "Debtors") filed with this Court their petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

### A.    The Letters of Credit And The Reimbursement Agreements

Prior to the Petition Date, Bank of America, N.A. ("BofA") issued three standby letters of credit for the account of Grace-Conn (collectively, the "Letters of Credit") as collateral for certain insurance transactions and surety bonds issued in favor of the Debtors. Upon any draw under the Letters of Credit, Grace-Conn was obligated to reimburse BofA in accordance with the terms of certain agreement(s) between Grace-Conn and BofA (the "Reimbursement Agreements"). The Reimbursement Agreements provide for the payment of interest "on demand, on any amount not paid when due . . . from the due date until payment in full at a rate per annum equal to the rate of interest publicly announced from time to time by Bank of America as its prime rate, plus three percentage points (not to exceed the maximum rate permitted by applicable law)" (the "Morgan Stanley Contract Rate"). Notably, it is the only interest rate mentioned in the Reimbursement Agreement.

On November 11, 2005, the Debtors and BofA entered into that certain Stipulation Regarding Allowance of Certain Claims (the "2005 Stipulation"), pursuant to which the Debtors agreed that, as a result of National Union Fire Insurance Company of Pittsburgh, PA having drawn on two of the Letters of Credit, BofA was entitled to (i) an allowed, unsecured nonpriority claim against Grace-Conn in the amount of $9,779,270, and (ii) an allowed, contingent, unliquidated and undisputed claim against Grace-Conn with respect to all undrawn amounts of the outstanding Letters of Credit. On November 14, 2005, this Court entered its Order Authorizing Settlement with Bank of America, N.A. and Granting Related Relief, which authorized the Debtors' entry into the 2005 Stipulation.

In light of National Union's subsequent draws under the Letters of Credit, BofA's allowed, contingent, unliquidated and undisputed claim against Grace-Conn with respect to such subsequent draws under the outstanding Letters of Credit was liquidated in the amount of $6,710,110.

### B. The Morgan Stanley Claims

Pursuant to Transfer of Claim Agreements dated April 24, 2006 and February 22, 2008, Morgan Stanley became the owner of all of BofA's right, title and interest in and to BofA's $6,710,110 claim and BofA's $9,779,270 claim (collectively, the "Morgan Stanley Claims").

Pursuant to a Stipulation, dated May 14, 2009, Regarding Classification of Claims of Morgan Stanley Senior Funding, Inc. as Assignee of Certain Claims of Bank of America, N.A. Under the Plan, the Morgan Stanley Claims are allowed under the Plan in full as Class 9 General Unsecured Claims (the "Morgan Stanley Stipulation"). That stipulation does not, however, address the appropriate rate of post-petition interest to be paid on the Morgan Stanley Claims under the Plan.

On May 19, 2009, Morgan Stanley filed its objection to confirmation of the Plan [D.I. 21752] (the "Plan Objection"). At Phase I of the confirmation hearing on June 22, 2009, Morgan Stanley's counsel appeared and participated in oral argument on the issue of impairment. As a

result of that argument, as well as issues raised by the bank lender group and the Committee, this Court authorized supplemental briefing on the issue of impairment under the Plan. Accordingly, this memorandum of law supplements the previously-filed Plan Objection on the issue of impairment and Morgan Stanley hereby reincorporates the Plan Objection herein.

### C.    The Treatment Of The Morgan Stanley Claims Under The Plan

The Plan provides for five (5) different post-petition interest treatments under which post-petition interest would be paid on the Effective Date to a holder of an allowed Class 9 General Unsecured Claim, and one treatment where no post-petition interest is paid to such a holder until entry of a Final Judgment:[5]

1) Claims arising from the Pre-petition Credit Facilities will receive interest at 6.09% from the Petition Date through December 31, 2005 and thereafter at floating prime, compounded quarterly through the Effective Date. See Plan at § 3.1.9(b)(A).

2) Claims arising from Environmental Claims that include a liquidated amount for post-petition future cleanup liabilities will receive interest at 4.19% from the date specified in an order allowing the claim, compounded annually through the Effective Date. See Plan at § 3.1.9(b)(B).

3) Claims arising from existing contracts that specify payment of interest will receive interest at the specified non-default rate from the Petition Date and compounded annually through the Effective Date. See Plan at § 3.1.9(b)(C).

4) Claims of "other" unsecured creditors – i.e., those without a contract or with a contract that does not specify a non-default contract rate – will receive interest at 4.19% from the Petition Date compounded annually through the Effective Date. See Plan at § 3.1.9(b)(D)

5) Claims of those that file a Notice of Non-Default Contract Rate of Interest (assuming they have not also filed a Post-Petition Interest Determination Notice) will receive post-petition interest at 4.19% or the non-default rate (per the Debtor's books and records) from the Petition Date and compounded annually until resolution of the Notice of Non-Default Contract Rate of Interest by Final Judgment. See Plan at § 3.1.9(e).

---

[5]    See footnote 2, supra.

7

6) Claims of those that file a Post-Petition Interest Determination Notice will receive no interest on their Allowed General Unsecured Claim until resolution of their Post-Petition Interest Determination Notice by a Final Judgment. See Plan at § 3.1.9(d).

Because the Debtors have contended that the Morgan Stanley Contract Rate is a "default" rate of interest, Morgan Stanley was required to protect its rights to seek the Morgan Stanley Contract Rate by filing a Post-Petition Interest Determination Notice and thus falls into category 6 above.

Under the Plan, because Morgan Stanley holds an undisputed, Court-approved, allowed General Unsecured Claim pursuant to the Morgan Stanley Stipulation, it will receive, on the Effective Date, payment of the allowed amount of the Morgan Stanley Claims – i.e., its principal in the amount of $16,489,380. But, because Morgan Stanley was compelled to file a Post-Petition Interest Determination Notice, the Plan provides that it will receive no post-petition interest on its allowed Class 9 claim on the Effective Date, but must instead wait for an indeterminate period of time until the issue of its entitlement to interest is resolved by a Final Judgment. See Plan at § 3.1.9(d). Moreover, it appears from the Plan that, after the Effective Date, no additional interest will accrue even though Morgan Stanley will clearly be deprived of the time value of the interest that would have been paid on the Effective Date, but for the litigation. See Plan at § 3.1.9(e)(iii). The Plan does not provide that such a litigant can recover its attorneys' fees and costs to the extent its contract so provides.

## Argument

### A. The Plan's Treatment Of Class 9 Claimants, and The Morgan Stanley Claims In Particular, Does Not Constitute Unimpairment

The Plan Proponents assert that Class 9 General Unsecured Claims are unimpaired. That, however, is not the case. The law provides a presumption of impairment that a debtor is obligated to overcome. In re Monclova Care Ctr., Inc., 254 B.R. 167, 178-79 (Bankr. N.D. Ohio 2000). Moreover, there is little doubt that Congress intended impairment be defined "in the

8

broadest possible terms." In re Madison Hotel Assoc., 749 F.2d 410, 418 (7th Cir. 1984) quoting In re Taddeo, 685 F.2d 24, 28 (2d Cir. 1982). Any alteration of the creditor's rights – even one that places the creditor in a better position than it would otherwise be – constitutes impairment. See, e.g., In re L & J Anaheim Assoc., 995 F.2d 940, 943 (9th Cir. 1993). Unless the creditor's legal, equitable and contractual rights are left entirely unaltered, the claim is impaired. In re PPI Enters. (U.S.), Inc., 324 F.3d 197, 202 (3d Cir. 2003); In re Coram Healthcare Corp., 315 B.R. 321, 351 (Bankr. D. Del. 2004) ("if the proposed plan of reorganization does not leave the creditor's rights entirely unaltered, the creditor's claim is impaired."). See also, In re Monclova Care Center, Inc., 59 Fed. Appx. 660, 664 (6th Cir. 2003) ("[A] class of claims would be impaired by a plan if the claims would not be paid in full with interest on the effective date of the plan."); In re Southland Corp., 160 F.3d 1054, 1058 (5th Cir. 1998) ("Debtor's intent in the Plan was to 'leave the Banks' claim unaltered, to wit: to treat the Banks' claims as if the bankruptcy had not been filed...."); In re New Midland Plaza Assoc., 247 B.R. 877, 896 (Bankr. S.D. Fla. 2000) ("Thus, under § 1124 as amended, if a class of claims is not paid in full with interest on the effective date, the class is impaired.").

What this Plan proposes, however, is not unimpairment but effectively a "cash-out" of creditors such as Morgan Stanley by paying their allowed claims – without post-petition interest – on the Effective Date. This is nothing more than an attempt to resuscitate the Bankruptcy Code's long-dead section 1124(3) and the holding in In re New Valley Corp., 168 B.R. 73 (Bankr. D.N.J. 1994). In New Valley, the debtor objected to the claims of certain lenders and sought a declaratory judgment ruling that simple payment of the full amount of the lender's prepetition claim rendered the claim unimpaired. Id. at 75-76. The New Valley court agreed and held that under section 1124(3) of the Bankruptcy Code, no post-petition interest had to be paid to unimpaired unsecured creditors even though the equity holders retained property on account

of their equity interests. Id. at 80. Unwilling to countenance such a patently inequitable result, Congress repealed section 1124(3), and, in doing so, made clear that in the case of a reorganizing solvent debtor, unimpairment requires paying a creditor a separate payment of post-petition interest in addition to the "allowed" amount of the claim. PPI Enters., 324 F.3d at 206. See also, In re PPI Enters. (U.S.), Inc., 228 B.R. 339 (Bankr. D. Del. 1998) ("[M]y reading of the legislative history indicates that Congress merely intended to eliminate the anomalous result created by the New Valley decision .... Thus, I conclude that Congress did not intend to eliminate unimpairment of purely money claims. It intended that to be unimpaired, the claim must receive postpetition interest."). 228 B.R at 352.[6]

### B.  For The Plan To Render The Morgan Stanley Claims Unimpaired, Post-Petition Interest Must Be Paid on the Effective Date of the Plan

As a result of Congress repealing section 1124(3) and thus eliminating "cash-out" of a creditor class to achieve unimpairment, a plan proponent is left with two options: either the class must vote to accept the proposed treatment by the requisite voting/claim majorities, or, if the class rejects the plan the cramdown provisions of section 1129(b) of the Bankruptcy Code must be satisfied. The latter, of course, requires the payment of the allowed claims of an unsecured class in full plus post-petition interest, if equity holders receive or retain any property on account of their equity interests. See In re Ambanc La Mesa Limited Partnership, 115 F.3d 650, 654 (9th Cir. 1997) (holding that chapter 11 plan violated absolute priority rule where plan did not provide for the payment of interest on objecting general unsecured creditor's claim where equity

---

[6]  The Third Circuit held In re PPI Enters. (U.S.), Inc., 324 F.3d 197, 206-207 (3d Cir. 2003), that section 1124(1) is an acceptable stand-in for repealed section 1124(3) so long as post-petition interest is paid. In light of Congress's intention in repealing 1124(3), such a holding makes sense only if the rights left unaltered under section 1124(1) include the right to have the unimpairment treatment measured against and be no worse economically than the treatment that the class would receive had it been able to vote to reject the plan and, therefore, been entitled to treatment under the absolute priority rule in section 1129(b). H.R. Rep. No. 103-835, at 47-48 (1994) reprinted in 1994 U.S.C.C.A.N. 3340, 3356-57.

10

retained interests); In re Mirant Corp., 327 B.R. 262, 271 (Bankr. N.D. Tex. 2005) ("Section 1129(b)(2)(B) permits confirmation of a plan that provides return to equity over dissent of a class of creditors only if such creditors receive the present value of their claims – i.e., the principal of their claims plus interest"); Coram Healthcare, 315 B.R. at 344 (finding that under 11 U.S.C. § 1129(b) unsecured creditors were entitled to post-petition interest before any distribution could be made to equity holders) citing, In re Joaquin Estates, Inc., 64 B.R. 534, 536 (9th Cir. B.A.P. 1986) (holding that bankruptcy court abused its discretion in denying postpetition interest to solvent debtor's unsecured creditor as interest must be paid pursuant to 11 U.S.C. § 726).

It would be an anomalous result if "cash-out" which includes post-petition interest is a permissible method of unimpairment under section 1124(1), but the treatment afforded under section 1124(1) could nonetheless be worse than the cramdown treatment that would be provided to that class if it could have voted and rejected the Plan. Here, since equity interest holders are receiving or retaining property on account of their equity interests, the Plan must provide for the payment of post-petition interest <u>on the Effective Date</u> to holders of undisputed allowed Class 9 claims such as Morgan Stanley.

### C. The Proper Rate Of Interest To Render Morgan Stanley's Claims Unimpaired Is The Morgan Stanley Contract Rate

Morgan Stanley submits that its legal, equitable and contractual rights can only be left "unaltered" if it receives interest at the Morgan Stanley Contract Rate: the one and only rate set forth in its contract. This is true irrespective of whether the Plan Proponents choose to place a "default" or "non-default" label upon the Morgan Stanley Contract Rate. See In re Ace-Texas, Inc., 217 B.R. 719, 727 (Bankr. D. Del. 1998) ("[I]mpairment can be avoided only if the plan proposes cash payment in the full amount of the claim in accordance with the parties' agreement.

11

When the agreement requires a higher post-default rate of interest, this means the higher rate must be paid. Any other treatment would alter the creditor's rights.").

Here, the Plan Proponents have devised five (5) different post-petition interest regimes for Class 9 under which post-petition interest would be paid on the Effective Date to the holder of allowed Class 9 claims, and one additional regime where interest would not be paid on the Effective Date. Because Morgan Stanley was compelled to file a Post-Petition Interest Determination Notice, however, the Plan provides that it will receive no post-petition interest on its otherwise allowed Class 9 claim on the Effective Date, but must instead wait for an indeterminate period of time until the issue of its entitlement to interest is resolved by a Final Judgment. Moreover, after the Effective Date, it appears from the Plan that no additional interest will accrue even though Morgan Stanley will clearly be deprived of the time value of the interest that would have been paid on the Effective Date, but for litigation over the appropriate amount of post-petition interest. See Plan at § 3.1.9(e)(iii).

Ultimately, the Court here is faced with a dispute regarding what it means to be "unimpaired" in the context of these cases. For General Unsecured Creditors, the Plan Proponents have asserted that unimpairment can be achieved under section 1124(1) by paying an allowed unsecured claim on the Effective Date, but without making any post-petition interest payment until a dispute over the proper amount of post-petition interest is resolved by Final Judgment. The Plan Proponents foist upon Morgan Stanley and others who dispute the Plan's post-petition interest treatment an interest-allowance protocol where interest will be the subject of litigation for an indeterminate period of time after the Effective Date, while at the same time reserving the right to argue in that litigation that Morgan Stanley is entitled to no post-petition interest at all under section 1124(1) and paying no interest until a Final Judgment is obtained in the litigant's favor. In contrast, Morgan Stanley asserts that – consistent with PPI Enters. and the cases cited above – unimpairment under section 1124(1) can only be achieved through payment of the Morgan Stanley Claims in full, plus payment of post-petition interest on the Effective

12

Date. Although Morgan Stanley believes the Morgan Stanley Contract Rate must be used as the measure for post-petition interest, even if the Court ultimately determines it is not the correct measure, it is clear that some minimum amount of post-petition interest must be paid in respect of Morgan Stanley's allowed Class 9 claim on the Effective Date in order to satisfy section 1124(1) of the Bankruptcy Code.

The dispute over the appropriate interest rate is a significant one and represents, with respect to the Morgan Stanley Claims, millions of dollars. The Plan Proponents have purported to set forth their definition of what it means under section 1124(1) for Class 9 claims to be unimpaired. The ultimate decision, however, of whether the Morgan Stanley Claims and other Class 9 claims are unimpaired by the Plan rests solely with this Court. The Court must determine what it means to be rendered unimpaired under section 1124(1) and whether, in the context of these cases – i.e., where equity holders are retaining property on account of their equity interests, section 1124(1) requires a different treatment than the Plan provides. It is Morgan Stanley's position that section 1124(1) always requires the underlying contract to be honored, as written, including whatever interest rates are specified in the contract. See, e.g., Southland, 160 F.3d at 1059-60; Ace-Texas, 217 B.R. at 727; New Midland Plaza, 247 B.R. at 896. Nevertheless, in the context of these cases, where equity holders retain property, the Plan cannot be confirmed if Class 9 claimants fare worse economically as unimpaired creditors than they would as a rejecting class under the cramdown provisions of section 1129(b) of the Bankruptcy Code.

Whatever this Court ultimately determines is the appropriate amount of post-petition interest to be paid on the Effective Date to a holder of an otherwise allowed Class 9 claim such as Morgan Stanley, where equity is retaining property, as it is here, that rate simply cannot be zero merely because Morgan Stanley and the Plan Proponents disagree on the proper interest rate. Monclova Care, 59 Fed. Appx. at 664 ("[A] class of claims would be impaired by a plan if the claims would not be paid in full with interest on the effective date of the plan."); New

13

Midland Plaza, 247 B.R. at 896 ("Thus, under § 1124 as amended, if a class of claims is not paid in full with interest <u>on the effective date</u>, the class is impaired.") (emphasis added).

Accordingly, Morgan Stanley respectfully submits that this Court must determine, prior to or contemporaneously with, the Confirmation Hearing, what interest rate must be paid on claims like the Morgan Stanley Claim, at a minimum, in order for that claim to be rendered unimpaired.[7] If the Plan does not measure up, then Class 9 is impaired because the legal, equitable and contractual rights of the claimants will not remain "entirely unaltered." PPI Enters., 324 F.3d at 202.

---

[7] If the Court determines that the rate contained in a Class 9 creditor's contract controls, that will alleviate the need for litigation. If the Court determines that only a contractual, non-default rate is appropriate, then the dispute over the nature of the Morgan Stanley Contract Rate will continue. But, upon such a holding, Morgan Stanley submits that it would also be incumbent upon the Court, where there is no contract or there is no non-default rate in a contract, to determine whether the Debtor's proposed interest rate of 4.19% or some other interest rate is the appropriate measure for post-petition interest and Morgan Stanley would be entitled to receive at least that minimum amount of post-petition interest on the Effective Date pending the resolution of its interest rate dispute.

14

## Conclusion

For the reasons set forth above, Morgan Stanley respectfully requests that this Court deny confirmation of the Plan and grant such other and further relief as is just and proper.

Dated: July 17, 2009.

>  /s/ Stuart M. Brown
> EDWARDS ANGELL PALMER & DODGE LLP
> Stuart M. Brown (Bar No. 4050)
> 919 North Market Street
> 15th Floor
> Wilmington, Delaware 19801
> (302) 777-7770
>
> -and-
>
> KATTEN MUCHIN ROSENMAN LLP
> Jeff J. Friedman (admitted pro hac vice)
> Noah Heller (admitted pro hac vice)
> Merritt A. Pardini (admitted pro hac vice)
> 575 Madison Avenue
> New York, New York 10022
> (212) 940-8800
>
> *Attorneys for Morgan Stanley Senior Funding, Inc.*