IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W.R. Grace & Co., *et al.*, | : | Case No. 01-1139 (JKF) |
| | : | |
| Debtors. | : | Jointly Administered |

**PRETRIAL STATEMENT REGARDING ISSUES TO BE RAISED
BY GENERAL INSURANCE COMPANY OF AMERICA AT THE
PHASE II CONFIRMATION HEARING AND EVIDENCE TO BE INTRODUCED**

Pursuant to the July 7, 2009 Order Regarding Phase II Pre-Trial Proceedings [Docket No. 22347] General Insurance Company of America ("General Insurance"), submits this Pretrial Statement in order to identify (a) the issues General Insurance intends to address at the Phase II hearing scheduled for September 8, 2009; and (b) the witnesses (and evidence to be established by each of them) and exhibits that General Insurance expects to introduce in connection with those issues. As provided in the Court's July 7, 2009 Order, General Insurance reserves the right to submit a supplemental Pre-Trial submission in the event that matters raised in the Plan Proponents' Trial Brief have not been previously addressed in this Pretrial submission.

**I.**

**ISSUES TO BE RAISED**

General Insurance expects to raise the following issues, all of which are fully discussed in its Phase II Trial Brief [Docket No. 22419]:

1. **Whether the Plan violates §§ 1129(a)(1) and 553(a) of the Bankruptcy Code by attempting to cut off General Insurance's Recoupment and Setoff Rights:**

   (a) The Settlement Agreement and Mutual Release that General Insurance entered into with W.R. Grace & Co.-Conn. ("Grace") effective March 3, 1994, contains an express provision (§ 8) that General Insurance be indemnified for, defended against, and held

{00000997. }

harmless from asbestos-related claims of any kind, as well as an express warranty (§ 15.D) against tender of asbestos-related claims of any kind.

(b) The Plan's current treatment of the General Insurance Settlement Agreement (Plan Exs. 5 and 6) indicates that the Plan Proponents take the position that the Settlement Agreement released only "products" coverage, thereby indicating that Grace and the Asbestos PI Trust will breach the Settlement Agreement.

(c) Outside bankruptcy, if Grace sued General Insurance for payment of Asbestos Claims, General Insurance would not only have a defense based on the release in its Settlement Agreement, but also a counterclaim and rights of recoupment and setoff based on Grace's breach of the Settlement Agreement.

(d) The Plan, however, assigns Asbestos Insurance Rights to the Asbestos PI Trust. (Plan § 7.2.2(d)(ii).) Therefore, if General Insurance's rights of recoupment and setoff are to be preserved, General Insurance must be able to assert them against the Asbestos PI Trust, as Grace's assignee.

(e) However, the Plan does not provide that the <u>obligations</u> of Grace under Asbestos Insurance Policies or under Asbestos Insurance Settlement Agreements (like the General Insurance Settlement Agreement) are also transferred to the Asbestos PI Trust.

(f) Instead, it appears that the Asbestos Insurance Rights are severed and decoupled from the obligations in the Asbestos Insurance Policies and Asbestos Insurance Settlement Agreements (Plan Ex. 6 at § 1(a); Plan § 7.2.2(d)(ii)), thereby potentially cutting off rights of recoupment and setoff.

(g) Section 553(a) of the Bankruptcy Code requires that setoff rights be preserved, and undisputed case law preserves recoupment rights. Since the Plan fails to preserve

such rights, and indeed appears to be designed to cut them off, it violates Code § 1129(a)(1) and is unconfirmable.

    2.    **Whether the Plan violates Section 1129(a)(1), 1129(a)(3) and 1123(a)(3) of the Bankruptcy Code because the Plan does not provide for treatment for General Insurance's Indirect PI Trust Claims and improperly attempts to extinguish them.**

    (a)    General Insurance's Claims under its contractual indemnity (§ 8 of its Settlement Agreement) and claims for breach of the Settlement Agreement, including the warranty against tender of asbestos claims of any kind (§15D of the Settlement Agreement), appear to fall within the Plan's definition of Indirect PI Trust Claims (Plan § 1.1(33)), which are channeled to the Asbestos PI Trust and treated under the Asbestos PI TDP. (Plan § 3.1.6)

    (b)    In order to preserve, and not extinguish, General Insurance's contractual Claims under its Settlement Agreement, the Trust must assume Grace's obligations under that Agreement. The case law makes clear that a Plan Proponent cannot rewrite an insurance contract by severing and decoupling rights from obligations.

    (c)    The Asbestos PI TDP (Plan Ex. 4) is defective because it does not provide for treatment of General Insurance's Claims. Instead, it appears to provide only for reimbursement if and when General Insurance pays an Asbestos claim. There is no provision in the Asbestos PI TDP to pay costs, expenses, and attorneys fees associated therewith.

    (d)    Even more significantly, there is no treatment in the TDP to pay damages to General Insurance for breach of its Settlement Agreement, which the Trust would breach each time it tenders a claim to, or seeks payment from, General Insurance. The failure to provide treatment for such claims is directly contrary to Section 1123(a)(3) of the Code.

3. **Whether the Plan violates Section 1129(a)(1) and 1122 because it misclassifies General Insurance's Contract Claims.**

(a) General Insurance's Claims arise out of a contract with Grace. Its breach of contract claims are not derivative of Asbestos Claims. In fact, such claims will be established when a court of competent jurisdiction finds that General Insurance is <u>not</u> liable for asbestos-related claims, as Grace agreed in the Settlement Agreement. A claim for damages for breach of the Settlement Agreement -- not based in any way on payment of an Asbestos Claim -- belongs in Class 9 of the Plan, which provides for General Unsecured Claims to be paid in full.

(b) Regardless of whether General Insurance's Claims are channeled to the Asbestos PI Trust, the Plan should be modified to say that the treatment to be accorded any breach of contract claim by General Insurance, including breach of the warranty against tender of Asbestos Claims of any kind whatsoever, breach of the release, reimbursement for fees and costs in defending claims -- is the treatment accorded to Class 9 General Unsecured Claims, *i.e.*, payment in full, not fractional payment that Asbestos PI Claims are given under the Asbestos PI TDP.

(c) A further fix, however, is also needed. Under the Asbestos PI TDP (Plan Ex. 4) and the Asbestos PI Trust Agreement (Plan Ex. 2), the Asbestos PI Trustees, with the consent of the Asbestos PI Trust Advisory Committee, have broad power to change the Asbestos PI TDP. (*See* Asbestos PI TDP § 2.2(f).) Any treatment accorded to General Insurance would be illusory if the Trustees and the TAC could change it at whim. The TAC members are all prominent asbestos PI attorneys, plus the Futures Representative. They all owe fiduciary duties to their constituents; they all have an interest in maximizing insurance recovery. None have an interest in paying damage or indemnity payments to General Insurance. Therefore the Plan

should be changed to prevent the Trustees and TAC from changing the treatment of General Insurance's claims in any way prejudicial to General Insurance.

### 4. Whether the Plan Violates Code §§ 1129(a)(1) and 1123(a)(4) Unless Fixed by Specifying that the Trust Will Pay Retrospective Premiums in Full

(a)   The General Insurance policies involved herein include provisions whereby the premium amounts thereunder are subject to change and are determined retrospectively on the basis of, among other things, loss experience and claims paid. *See*, for example, the policy marked as General Insurance Substitute Exhibit 1A at page MDC 233.

(b)   If General Insurance is required to pay any Asbestos Claims, a retrospective premium may be generated. Such claim may be an Indirect PI Trust Claim under the Plan because it may be viewed as "on account of alleged liability of the Debtors for payment. . . of any damages such Entity has paid or may pay to the plaintiff in such actions." (Plan, § 1.1(138), subparagraph (x)(ii).) Such claim may also be an Indirect PI Trust Claim because it falls under the indemnity provision of the General Insurance Settlement Agreement. (Agreement § 8.) In either event, General Insurance believes it likely that the intent of the Plan is that if the Asbestos PI Trust gets the benefit of insurance, it will pay the premium. The Plan should be clarified as to who will pay claims for retrospective premium on Asbestos Insurance Policies.

(c)   More to the point, a claim for retrospective premium is a contract claim. It is not a claim to be indemnified for paying an Asbestos Claim; it is the price of the insurance contract itself. As with other simple contract claims, it should be paid in full, and the Asbestos PI TDP should be amended to so provide. As with the contract claims discussed above, a new TDP provision for paying retrospective premium should not be subject to the whim of the Trustees and the TAC. Without such a fix, the Plan violates Bankruptcy Code sections 1129(a)(1) and § 1123(a)(3) because it is unclear as to treatment of retro premiums claims. The

{00000997. }

Plan also violates Bankruptcy Code section 1122 because it misclassifies such claims as Asbestos PI Claims, which they are not.

5.  General Insurance joins in the issues raised by CNA in its Phase II Pretrial Submission, except (i) any issue it raises as to modification on abrogation of provisions of policies and/or agreements (including anti-assignment provisions) is to be read as pertaining to the General Insurance Settlement Agreement and the policies (or alleged policies) referred to therein; and (ii) General Insurance does not join in any suggestion or statement that the Court should construe or interpret any Asbestos Insurance Settlement Agreement, such construction or interpretation being a matter to be dealt with elsewhere, in the context of coverage determination.

## II.

### WITNESSES GENERAL INSURANCE EXPECTS TO CALL

1.  An authentication/foundation witness. (Plan Proponents have already agreed in Phase I that they have only a relevance objection to the policy marked as General Insurance Substitute Exhibit 1A and the Settlement Agreement marked as General Insurance Exhibit 1B. Therefore, General Insurance does not believe it will need to call a witness for authentication or other foundation for these Exhibits. The only other exhibit General Insurance intends to offer in Phase II is its proof of claim, which it believes that Plan Proponents will agree can be admitted for the purpose of showing the claims that General Insurance asserts.)

2.  The witnesses identified by CNA in its Pretrial Submission.

3.  General Insurance may identify additional witnesses in response to any issue raised by the Plan Proponents or other parties as part of the Plan confirmation process.

4.  General Insurance may call as a witness any individual disclosed as potential witnesses or called as witnesses by the other parties to this proceeding.

{00000997. }

## III.

## EXHIBITS GENERAL INSURANCE EXPECTS TO INTRODUCE

1.      General Insurance Substitute Exhibit 1A, which is Comprehensive Liability Policy No. BLP 245115 issued by General Insurance to Vermiculite Northwest, Inc. and its related corporate entities for the period June 1, 1964 to June 1, 1965 (the "1964 Policy"). The 1964 policy is stamped with production numbers MDC 231 to MDC 253.

2.      General Insurance Exhibit 1B, which is the Settlement Agreement and Policy Release that was entered into effective March 3, 1994 between General Insurance and Grace.

3.      General Insurance's Proof Claim.

4.      Any exhibits listed by CNA in its Phase II Pretrial Submission, other than any CNA policy or settlement agreement.

5.      Any exhibits listed by other insurers or parties in interest in their pre-trial submissions.

Dated:  July 20, 2009

Respectfully submitted,

**MESSANA ROSNER & STERN LLP**

/s/ Frederick B. Rosner
Frederick B. Rosner (DE #3995)
1000 N. West Street, Suite 1200
Wilmington, DE  19801
Telephone: 302-777-1111

- and-

Robert B. Millner
SONNENSCHEIN NATH & ROSENTHAL LLP
233 S. Wacker Drive, Suite 7800
Chicago, Illinois  60606
Telephone: 312-876-8000

*Counsel for General Insurance Company of America*

{00000997. }