IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: )<br>)<br>W.R. GRACE & CO., et al., )<br>)<br>    Debtors. )<br>_____ ) | Chapter 11<br><br>Case No. 01-01139(JKF) |

## PHASE II PRE-TRIAL STATEMENT OF GARLOCK SEALING TECHNOLOGIES, LLC

Garlock Sealing Technologies, LLC ("Garlock"), pursuant to paragraph 4 of the Order Regarding Phase II Pre-Trial Proceedings (Dkt. No. 22347), submits this Phase II Pre-Trial Statement:

**A.    Statement of Issues**

Garlock intends to raise all of the issues listed in its Phase II Trial Brief in Opposition to Confirmation of Proponents' First Amended Joint Plan of Reorganization (Dkt. No. 22428). Without limiting in any way the issues raised in the brief, Garlock intends to raise the following issue at the Phase II Confirmation Hearing:

- Whether the Plan is not fair and equitable to Garlock, for the reasons discussed in its Phase II Trial Brief

Garlock reserves the right to join in the objections presented by other parties at the Confirmation Hearing.

**B.    List of Witnesses**

At this time, Garlock intends to call the following witnesses at the Confirmation Hearing:

1.    Paul L. Grant, Jr., Garrison Litigation Management Group, Ltd., 120 East Avenue, Suite 101, Rochester, NY, 14604-2551.

2271636/1

Mr. Grant is the President of Garrison Litigation Management Group, Ltd.

Mr. Grant will provide testimony regarding the facts set forth in Garlock's Phase II Trial Brief in opposition to confirmation of the Plan, including but not limited to the frequency with which Garlock and Grace were sued together prior to the Petition Date; that plaintiffs often alleged or testified that they were exposed to the products of both companies because such products were often used in proximity to one another or because plaintiffs were in occupations that brought them into contact with such products; that prior to the Petition Date, Grace's fault in contributing to asbestos injuries was taken into account in the tort system and reflected in the trial risks and settlements of other defendants; Garlock's rights against Grace under state law, and the actions Grace could take, to ensure that Grace's contributions to plaintiffs' asbestos-related injuries were accounted for in the tort system and not borne by Garlock; the impact of Grace's 2001 bankruptcy petition on the tort system; how Garlock has continued to be sued by plaintiffs who suffer injuries jointly caused by Grace products; how plaintiffs use trust distribution procedures similar to the TDP to defeat the rights of Garlock and other defendants to ensure Grace's fault and claims payments in asbestos litigation are reflected in the tort system; how secrecy of claims filings, claims filing deferral, the right to take inconsistent positions concerning whether Grace contributed to personal injury and other features of the TDP are unfair to Garlock, violate its state law rights and prejudice Garlock's ability to receive any benefit from the Trust; Garlock's experience filing several Indirect Asbestos Claims and dealing with asbestos trusts established for other national asbestos defendants like Grace with similar trust distribution procedures, including Babcock & Wilcox, Armstrong World Industries, Inc., U.S. Gypsum Company, Owens Corning, Fibreboard, National Gypsum Company, and DII Industries, Inc.

Mr. Grant may also be called to rebut evidence offered by the Proponents or other parties in interest.

Garlock plans to offer Mr. Grant's testimony live but is interested in discussing with the Proponents procedures for doing so by deposition.

2. Christopher O. Massenburg, Aultman, Tyner, Ruffin & Swetman, Ltd, 315 Hemphill Street, P.O. Drawer 750, Hattiesburg, MS 39403-0750.

Mr. Massenburg is a partner who practices law in the Hattiesburg office of Aultman, Tyner, Ruffin & Swetman. Since 2001, he has represented Garlock in defense and settlement of asbestos cases in Mississippi.

Mr. Massenburg will provide testimony regarding the facts set forth in Garlock's Phase II Trial Brief in opposition to confirmation of the Plan, including but not limited to the frequency with which Garlock and Grace were sued together prior to the Petition Date; that plaintiffs often alleged or testified that they were exposed to the products of both companies because such products were often used in proximity to one another or because plaintiffs were in occupations that brought them into contact with such products; that prior to the Petition Date, Grace's fault in contributing to asbestos injuries and payments Grace made to resolve claims were taken into account in the tort system and reflected in the trial risk and settlements of other defendants; Garlock's rights against Grace under state law, and the actions Garlock could take, to ensure that Grace's contributions to plaintiffs' asbestos-related injuries were accounted for in the tort system and not borne by Garlock; the impact of Grace's 2001 bankruptcy petition on Garlock; how Garlock has continued to be sued by plaintiffs who suffer injuries jointly caused by Grace products; how secrecy of claims filings, claims filing deferral and the right to take inconsistent

positions on whether Grace contributed to personal injury violate fundamental principles of Mississippi law.

Mr. Massenburg may also be called to rebut evidence offered by the Proponents or other parties in interest.

Garlock plans to offer Mr. Massenburg's testimony live but is interested in discussing with the Proponents procedures for doing so by deposition.

3.  John A. Turlik, Segal McCambridge Singer & Mahoney, United Plaza, 30 S. 17th Street, Suite 1700, Philadelphia, PA  19103

Mr. Turlik is a partner who practices law in the Philadelphia office of Segal McCambridge Singer & Mahoney. Mr Turlik is licensed to practice law in the states of Maryland, Pennsylvania, and Ohio. He has represented Garlock in defense and settlement of asbestos claims in these states.

Mr. Turlik will provide testimony regarding the facts set forth in Garlock's Phase II Trial Brief in opposition to confirmation of the Plan, including but not limited to the frequency with which Garlock and Grace were sued together prior to the Petition Date; that plaintiffs often alleged or testified that they were exposed to the products of both companies because such products were often used in proximity to one another or because plaintiffs were in occupations that brought them into contact with such products; that prior to the Petition Date, Grace's fault in contributing to asbestos injuries and payments Grace made to resolve claims were taken into account in the tort system and reflected in the trial risk and settlements of other defendants; Garlock's rights against Grace under state law, and the actions Garlock could take, to ensure that Grace's contributions to plaintiffs' asbestos-related injuries were accounted for in the tort system and not borne by Garlock; the impact of Grace's 2001 bankruptcy petition on Garlock; how

Garlock has continued to be sued by plaintiffs who suffer injuries jointly caused by Grace products; how plaintiffs use trust distribution procedures similar to the TDP to prevent Garlock and other defendants from taking account of Grace's fault and claims payments in asbestos litigation in the states in which he represents Garlock; cases in which plaintiffs (i) failed to provide evidence of exposure to asbestos-containing products of companies whose liabilities have been assumed by trusts, (ii) obtained judgments against Garlock, and (iii) subsequently filed claims against such trusts; how secrecy of claims filings, indefinite claim deferral and the right to take inconsistent positions on whether Grace contributed to personal injury in cases defendants by Garlock violate fundamental principles of applicable state law; Garlock's experience filing several Indirect Asbestos Claims and dealing with asbestos trusts established for other national asbestos defendants like Grace with similar trust distribution procedures, including Babcock & Wilcox; Armstrong World Industries, Inc., U.S. Gypsum Company, Owens Corning, Fibreboard, National Gypsum Company, and DII Industries, Inc.

Mr. Turlik may also be called to rebut evidence offered by the Proponents or other parties in interest.

Garlock plans to offer Mr. Turlik's testimony live but is interested in discussing with the Proponents procedures for doing so by deposition.

4. Gary H. Kaplan, Marshall, Dennehey, Warner, Coleman & Goggin, 1220 Market St., Wilmington, DE, 19801.

Mr. Kaplan is a partner who practices law in the Wilmington, Delaware office of Marshall, Dennehey, Warner, Coleman & Goggin. He represents Garlock in defense and settlement of asbestos cases in Delaware.

2271636/1

Mr. Kaplan will provide testimony regarding the facts set forth in Garlock's Phase II Trial Brief in opposition to confirmation of the Plan, including but not limited to the frequency with which Garlock and Grace were sued together prior to the Petition Date; that plaintiffs often alleged or testified that they were exposed to the products of both companies because such products were often used in proximity to one another or because plaintiffs were in occupations that brought them into contact with such products; that prior to the Petition Date, Grace's fault in contributing to asbestos injuries and payments Grace made to resolve claims were taken into account in the tort system and reflected in the trial risk and settlements of other defendants; Garlock's rights against Grace under state law, and the actions Garlock could take, to ensure that Grace's contributions to plaintiffs' asbestos-related injuries were accounted for in the tort system and not borne by Garlock; the impact of Grace's 2001 bankruptcy petition on Garlock; how Garlock has continued to be sued by plaintiffs who suffer injuries jointly caused by Grace products; how plaintiffs use trust distribution procedures similar to the TDP to defeat the rights of Garlock and other defendants to ensure Grace's fault and claims payments in Delaware asbestos litigation; how secrecy of claims filings, claims filing deferral and the right to take inconsistent positions on whether Grace contributed to personal injury violate fundamental principles of Delaware law.

Mr. Kaplan may also be called to rebut evidence offered by the Proponents or other parties in interest.

Garlock plans to offer Mr. Kaplan's testimony live but is interested in discussing with the Proponents procedures for doing so by deposition.

5. Glenn L.M. Swetman. Aultman, Tyner, Ruffin & Swetman, Ltd., 400 Poydras St., Suite 1900, New Orleans, LA, 70130.

Mr. Swetman is a partner who practices law in the New Orleans office of Aultman, Tyner, Ruffin & Swetman. He represents Garlock in defense and settlement of asbestos cases in Louisiana.

Mr. Swetman will provide testimony regarding the facts set forth in Garlock's Phase II Trial Brief in opposition to confirmation of the Plan, including the frequency with which Garlock and Grace were sued together prior to the Petition Date; that plaintiffs often alleged or testified that they were exposed to the products of both companies because such products were often used in proximity to one another or because plaintiffs were in occupations that brought them into contact with such products; that prior to the Petition Date, Grace's fault in contributing to asbestos injuries and payments Grace made to resolve claims were taken into account in the tort system and reflected in the trial risk and settlements of other defendants; Garlock's rights against Grace under state law, and the actions Garlock could take, to ensure that Grace's contributions to plaintiffs' asbestos-related injuries were accounted for in the tort system and not borne by Garlock; the impact of Grace's 2001 bankruptcy petition on Garlock; how Garlock has continued to be sued by plaintiffs who suffer injuries jointly caused by Grace products; how plaintiffs use trust distribution procedures similar to the TDP to defeat the rights of Garlock and other defendants to ensure Grace's fault and claims payments are accounted for in Louisiana asbestos litigation; how secrecy of claims filings, claims filing deferral and the right to take inconsistent positions on whether Grace contributed to personal injury violates fundamental principles of Louisiana law.

Mr. Swetman may also be called to rebut evidence offered by the Proponents or other parties in interest.

2271636/1

Garlock plans to offer Mr. Swetman's testimony live but is interested in discussing with the Proponents procedures for doing so by deposition.

6.     William F. Mahoney. Segal McCambridge Singer & Mahoney, 233 S. Wacker Drive, Suite 5500, Chicago, IL, 60606.

Mr. Mahoney is a partner who practices law in the Chicago office of Segal McCambridge Singer & Mahoney. He represents Garlock in defense and settlement of asbestos cases.

Mr. Mahoney will provide testimony regarding the facts set forth in Garlock's Phase II Trial Brief in opposition to confirmation of the Plan, including the frequency with which Garlock and Grace were sued together prior to the Petition Date; that plaintiffs often alleged or testified that they were exposed to the products of both companies because such products were often used in proximity to one another or because plaintiffs were in occupations that brought them into contact with such products; that prior to the Petition Date, Grace's fault in contributing to asbestos injuries and payments Grace made to resolve claims were taken into account in the tort system and reflected in the trial risk and settlements of other defendants; Garlock's rights against Grace under state law, and the actions Garlock could take, to ensure that Grace's contributions to plaintiffs' asbestos-related injuries were accounted for in the tort system and not borne by Garlock; the impact of Grace's 2001 bankruptcy petition on Garlock; how Garlock has continued to be sued by plaintiffs who suffer injuries jointly caused by Grace products; how plaintiffs use trust distribution procedures similar to the TDP to defeat the rights of Garlock and other defendants to ensure Grace's fault and claims payments are accounted for in Illinois and Texas asbestos litigation; how secrecy of claims filings, claims filing deferral and the right to take inconsistent positions on whether Grace contributed to personal injury violate fundamental principles of Texas and Illinois law.

Mr. Mahoney may also be called to rebut evidence offered by the Proponents or other parties in interest.

Garlock plans to offer Mr. Mahoney's testimony live but is interested in discussing with the Proponents procedures for doing so by deposition.

**C.    List of Exhibits**

Garlock may introduce or otherwise rely on the following documents in its direct case, in support of its objection to confirmation:

1.    Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants' Representative, And The Official Committee of Equity Security Holders Dated As Of September 19, 2008, together with the Plan Documents, including the Trust Agreement and the WRG Asbestos PI Trust Distribution Procedures.

2.    Proponents' Disclosure Statement, including exhibits, schedules, and other attachments.

3.    Selected complaints, discovery responses, deposition transcripts and other documents from actions in the tort system in numerous states demonstrating that Garlock was sued in countless cases prior to the Petition Date and continues to be named in cases subsequent to the Petition Date by persons allegedly suffering from asbestos-related injuries caused in part by Grace.

4.    Final judgments and other documents related to asbestos actions against Garlock, including Puller v. ACandS, Inc., et al. (Circuit Court for Baltimore City No. 24-X-02-000023), Snyder v. ACandS, Inc., et al. (Circuit Court for Baltimore City No. 24-X-01-001969), and Wilson v. ACandS, Inc. (Circuit Court for Baltimore City No. 24-X-01-000916).

5. Claim forms and related materials filed by Garlock and Estates of Reginald Puller, Gary Snyder, and Paul Wilson against various asbestos trusts, including asbestos trusts for Babcock & Wilcox; Armstrong World Industries, Inc., U.S. Gypsum Company, Owens Corning, Fibreboard, National Gypsum Company, and DII Industries, Inc.

6. Trust distribution procedures and related documents for Manville Trust (2002 Trust Distribution Process); Owens Corning/Fibreboard Asbestos Personal Injury Trust (2008); United States Gypsum Asbestos Personal Injury Settlement Trust (2008); and Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust (2008).

7. Report of Mark A. Peterson, W.R. Grace Projected Liabilities for Asbestos Personal Injury Claims As of April 2001 (June 2007).

8. Trial transcripts containing testimony, exhibits, and other evidence offered by any Proponent during the asbestos personal injury estimation proceedings held on various dates from January 14, 2008 to April 1, 2008.

9. Selected complaints, discovery responses, hearing transcripts, deposition transcripts and other documents from actions in the tort system in numerous states demonstrating plaintiffs' abuse of trust distribution procedures to avoid disclosing and having to give Garlock and other co-defendants credit under state law for benefits plaintiffs receive from asbestos trusts, including but not limited to:

> (a) Transcript From Hearing on Motion to Revoke Pro Hac Vice Privileges and Motion to Dismiss, Kananian v. Lorillard Tobacco Co., Court of Common Pleas, Cuyahoga County, Ohio, January 18, 2007;
>
> (b) Transcript From Hearing on Motion to Compel, Chester Link v. Ahlstrom Pumps, LLC, Superior Court of the State of Delaware in and for New Castle County, December 7, 2006; and

2271636/1

      (c)    Transcript From Hearing on Motion for Continuance, Brassfield, et al. v. Alcoa, Inc., et al., District Court of Harris County, Texas, 11th Judicial District, November 22, 2006.

10. Kimberley A. Strassel, "Trusts Busted," Wall Street Journal (December 5, 2006)

11. "Cuyahoga Comeuppance," Wall Street Journal (January 22, 2007)

12. WR Grace Ballot Tabulation Summary, and Exhibits.

13. Exhibits offered by the Proponents and other parties in interest.

14. Demonstrative exhibits.

Garlock expressly reserves the rights to introduce additional testimony and documentary evidence in rebuttal to the Plan Proponents' proof at trial.

Garlock reserves the right to join in witness and deposition designations of any other party, to join in exhibits of any other party, to call any person identified on any preliminary and/or final witness lists and/or pretrial submissions of any other party, or to call any person called to testify by any other party.

Additionally, because discovery has not yet been completed, Garlock reserves its right to supplement or alter this pretrial submission and/or to designate additional testimony, exhibits, or other evidence to submit at the Phase II confirmation hearings.

Dated: July 20, 2009

MORRIS JAMES LLP

/s/ JWC

Brett D. Fallon (DE Bar No. 2480)
Jeffrey R. Waxman (DE Bar No. 4159)
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: bfallon@morrisjames.com
Email: jwaxman@morrisjames.com

11

2271636/1

-and-

Garland Cassada, Esq.
Richard C. Worf, Esq.
ROBINSON, BRADSHAW & HINSON
101 North Tyron Street, Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-8135
Email: GCassada@rbh.com
  RWorf@rbh.com

*Attorneys for Garlock Sealing Technologies LLC*