IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Objection Deadline: August 7, 2009** |
| | ) | **Hearing Date: August 24, 2009 at 10:30 a.m.** |

## DEBTORS' MOTION FOR AN ORDER APPROVING THE AMENDED AND RESTATED SETTLEMENT AGREEMENT AND MUTUAL RELEASE WITH LLOYD'S UNDERWRITERS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order approving an Amended and Restated Settlement Agreement and Mutual Release (the "Amended Agreement") by and between W.R. Grace & Co. and certain underwriters at Lloyd's, London (the "Lloyd's Underwriters") as defined in the Amended Agreement. A copy of the Amended Agreement is attached as <u>Exhibit A</u>. In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion is proper under 28 U.S.C. § 1408.

2. The statutory predicates for this Motion are sections 105(a), 363(b) and 524(g) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 the Federal Rules of Bankruptcy Procedure.

## Background.

3. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. Lloyd's Underwriters subscribed to certain policies of insurance (the "Subject Policies") that provide, or are alleged to provide, insurance coverage to W.R. Grace & Co. and W.R. Grace & Co. - Conn. (collectively, "Grace"). Grace has incurred and may incur in the future certain liabilities, expenses and losses arising out of asbestos-related claims and other claims.

5. Prior to the Petition Date, Grace and Lloyd's Underwriters entered into a settlement agreement dated November 17, 1995 ("1995 London Agreement") which governed the method by which Lloyd's Underwriters and certain insurance companies that subscribed to insurance policies issued to Grace with inception dates prior to June 30, 1985 (such other companies are commonly referred to in the insurance industry as "London Market Companies") would reimburse Grace for losses on asbestos-related claims.

2

6. In 2006, the Debtors negotiated a new settlement agreement with Lloyd's Underwriters that fully and finally settled all claims, whether related to asbestos or not, that the parties asserted or could have asserted against one another relating to the Subject Policies, including policies with inception dates after June 30, 1985, and the 1995 London Agreement (the "2006 Agreement").

7. After certain objections were made and resolved, on November 20, 2006, the Court entered an order approving the 2006 Agreement. Shortly thereafter, pursuant to the 2006 Agreement and the Approval Order, Lloyd's Underwriters made a cash payment of $90 million (the Settlement Amount) into a settlement account in accordance with the 2006 Agreement. The Settlement Amount has been held in an escrow account since that time and has accrued interest.

8. The Amended Agreement makes the following principal modifications to the 2006 Agreement:

(a) The 2006 Agreement gave Lloyd's Underwriters the option to terminate the agreement in the event that the Bankruptcy Court had not entered a Confirmation Order by December 31, 2008. The Amended Agreement extends that deadline to December 31, 2013, or such other date to which the parties agree.

(b) The 2006 Agreement called for the funds in the settlement account to be paid to the Debtors (or as otherwise provided pursuant to the Chapter 11 plan of reorganization) upon the effective date of a plan of reorganization which met certain requirements as set forth in the 2006 Agreement. However, the First Amended Joint Plan of Reorganization filed by the Plan Proponents on February 27, 2009 (the "Plan") calls for proceeds of Asbestos Insurance Policies to be paid to the Asbestos PI Trust. Accordingly, the Amended Agreement provides that within thirty days of the Trigger Date (as defined in the Amended Agreement), the funds in the settlement account will be paid to the Trust.

(c) The 2006 Agreement called for the Settlement Amount to be held in escrow at J.P. Morgan Chase. The Amended Agreement provides that, at Lloyd's Underwriters' option, the Settlement Amount may be transferred to and held by a Berkshire Company (as defined in the Amended Agreement) until the Trigger Date. The Amended Agreement further provides that fifty-two (52) percent of the interest accrued as of March 31, 2009 will be transferred to Resolute Management Services Limited, as run-off agent for Lloyd's Underwriters, upon the Approval Order becoming a Final Order.

    (d)    The 2006 Agreement called for the Reorganized Debtors to have the obligation to indemnify Lloyd's Underwriters for potential future claims relating to the Subject Policies. The Trust did not have an obligation to indemnify Lloyd's Underwriters under the 2006 Agreement, but, as noted above, that agreement did not contemplate that the Settlement Amount would be paid to the Trust. As a corollary to the modification whereby the Trust, rather than the Debtors, will receive the funds in the settlement account, the Amended Agreement also provides that the Asbestos PI Trust will defend, indemnify and hold harmless Lloyd's Underwriters, including defense costs, in respect of any Asbestos PI Claim subject to the Asbestos PI Channeling Injunction, while it provides for the Reorganized Debtors to defend, indemnify and hold harmless Lloyd's Underwriters, including defense costs, for other claims relating to the Subject Policies as set forth in Section V of the Amended Agreement.

    (e)    The Amended Agreement is conditioned upon the designation of (a) Lloyd's Underwriters, and (b) Underwriter Third Party Beneficiaries (as defined in the Amended Agreement), to the extent such Underwriter Third Party Beneficiaries are eligible for protection under Bankruptcy Code Section 524(g), as Settled Asbestos Insurance Companies with respect to the Subject Policies, effective upon the Trigger Date, and gives Lloyd's Underwriters the right to terminate the Amended Agreement in the event that they are not so designated.

### Relief Requested

9. By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Amended Agreement, which has been executed by the parties, and, by its terms, will become effective upon the approval of this Court.

### Basis for Relief

10. This Court has statutory authority to authorize and approve the Debtors' entry into the Amended Agreement pursuant to sections 105 and 363(b)(1) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). A settlement of

claims and causes of action by a debtor in possession constitutes a use of property of the estate. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.* The Amended Agreement is an amendment to such a settlement -- the 2006 Agreement.

11. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019(a). Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is in the best interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *See Martin*, 91 F.3d at 393.

12. The standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should only be rejected if they fall "below the lowest point in the range of

reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The standards set forth above are plainly met in this case.

13.     The Amended Agreement is in the best interests of the Debtors, their estates and their creditors because it allows the substantive compromises embodied in the 2006 Agreement -- which resolved all possible future disputes between the Parties regarding their respective rights and obligations under the Subject Policies and the 1995 London Agreement -- to remain in place and because it implements certain changes to the 2006 Agreement that have been made necessary by the passage of two and a half years, and by various modifications to the Debtors' plan of reorganization, since the 2006 Agreement was approved. If the Amended Agreement is not approved, the Lloyd's Underwriters can terminate the 2006 Agreement,[2] and the Debtors and other Plan Proponents would be required to pursue their claims against the Lloyd's Underwriters under the terms of the 1995 London Agreement. This process would subject the Plan Proponents to risk concerning the ultimate amount of recovery from Lloyd's Underwriters and risks related to the Plan confirmation process.

14.     Pursuant to the definition of Settled Asbestos Insurance Company in the Plan, the Amended Agreement is sufficiently comprehensive to warrant treatment under Section 524(g) of the Bankruptcy Code, and thus to warrant the designation of (a) Lloyd's Underwriters, and (b) Underwriter Third Party Beneficiaries (as defined in the Amended Agreement), to the extent such Underwriter Third Party Beneficiaries are eligible for protection under Bankruptcy Code

---

[2] The deadline for termination at Lloyd's Underwriters' option under the 2006 Agreement has been extended by mutual agreement until September 30, 2009, for the sole purpose of allowing time for approval of the Amended Agreement.

Section 524(g), as Settled Asbestos Insurance Companies with respect to the Subject Policies, effective upon the Trigger Date. Debtors note that the 2006 Agreement is currently designated an Asbestos Insurance Settlement Agreement and Lloyd's Underwriters are currently designated as Settled Asbestos Insurance Companies on Exhibit 5 to the Plan, pursuant to this Court's prior approval of the 2006 Agreement, of which this Amended Agreement is an amendment.

15. For all of the foregoing reasons, the Debtors submit that the Amended Agreement is fair and reasonable and in the best interest of the Debtors, their creditors and their estates, and thus the Debtors should be authorized to enter into the Amended Agreement.

### **Notice**

16. Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, and (iv) those parties that requested papers under Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the Amended Agreement, and granting such other and further relief as the Court deems just and proper.

Dated: July 20, 2009

KIRKLAND & ELLIS LLP
David M. Bernick
Lisa G. Esayian
300 N. LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Theodore Freedman
Citigroup Center
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and

PACHULSKI STANG ZIEHL & JONES LLP

/s/ James E. O'Neill

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession