IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**Hearing Date: August 24, 2009, 10:30 am**
**Objection Deadline: August 7, 2009**

## DEBTORS' OBJECTION TO THE PROOF OF CLAIM FILED BY NORFOLK SOUTHERN RAILWAY COMPANY

The above-captioned debtors (the "Debtors") object to Claim No. 7021 (the "Norfolk Claim," which is attached as Exhibit 1), which was filed by Norfolk Southern Railway Company ("Norfolk"). In support of this Objection, the Debtors state the following:

### Introduction

Norfolk is allegedly the successor in interest to Southern Railway Company ("Southern"), the company from which Grace licensed warehouse space in Natka, South Carolina, and also licensed railway track and related freight services into and from that location. In 1998, one of Southern's employees, a conductor named Lester Kirkland, twice slipped and fell from Southern's train cars as he tried to pull defective handbrakes on trains that were owned, maintained and operated by Southern. In each instance, the portion of the railway track where Mr. Kirkland fell was not part of the railway track that was leased by Grace from Southern. In July 1998, Mr. Kirkland sued Norfolk for negligence on account of the injuries that he allegedly sustained during his falls from Norfolk train cars. Grace was not named as a defendant in Mr. Kirkland's lawsuit. To the contrary, Mr. Kirkland's allegations ***did not reference or implicate***

*Grace*; the complaint failed to mention Grace, let alone allege that Grace's acts or omissions contributed in any way to Mr. Kirkland's injuries.

On March 21, 2001, the jury returned a verdict in favor of Mr. Kirkland on account of his negligence claims against Norfolk, and ordered Norfolk to pay $1,924,500 to Mr. Kirkland. Shortly thereafter, Norfolk entered into a settlement agreement with Mr. Kirkland, and agreed to pay him $1.5 million in satisfaction of its liabilities from his injuries and the related judgment. The Norfolk Claim seeks (in part) contractual reimbursement for this $1.5 million, as well as an additional $61,664 for costs associated with Norfolk's defense of the Kirkland action.

Norfolk's request for indemnification has no legal basis and should be disallowed because the underlying agreements at issue do not allow indemnification under the present circumstances. Specifically, Mr. Kirkland alleged that when he slipped and fell, he was: (i) injured during the course of his employment by Norfolk; (ii) riding a train that was owned, operated and maintained by Norfolk; (iii) injured on account of a defective handbrake located on Norfolk's train; and (iv) fell while passing over railway track that was not subject to Grace's agreements with Norfolk. What is more, Norfolk did not implead or otherwise formally seek to have Grace added to the complaint as a co-defendant or other necessary party. In short, Grace simply had no tie to the Kirkland litigation.

In addition to the above-referenced amounts, the Norfolk Claim also requests $20,415 on account of allegedly unpaid transportation services, and $2,102 for environmental cleanup costs and track scale testing. The Debtors do not object to Norfolk's claim for $2,102 associated with environmental cleanup and track scale testing. However, Grace has paid Norfolk for all but $4,820 of the amounts owed to Norfolk for transportation services under the agreements. Grace accordingly objects to $15,595 of Norfolk's alleged $20,415 in unpaid freight charges. The

2

Debtors therefore ask the Court to enter an order that disallows and expunges the Norfolk Claim's requests for indemnification ($1.5 million), related legal fees ($61,664), and allegedly unpaid transportation services for which the Debtors have already made payment ($15,595) (a proposed order is attached as Exhibit 2).

## Jurisdiction

1.       This Court has jurisdiction over this matter under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (O).

2.       The statutory bases for relief requested herein are 11 U.S.C. §§ 105(a) and 502, Rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure, and Rule 3007-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware.

## Facts and Background

3.       On December 15, 1980, one of the Debtors, W. R. Grace & Co.-Conn. ("Grace"), a Connecticut Corporation, and Southern, a Virginia Corporation, entered into an licensing agreement (the "Licensing Agreement"), which granted Grace the right to use Southern's land and railroad right-of-way in Natka, South Carolina. (Licensing Agreement, Proofs of Claim Exhibit A, at pg. 1.) Pursuant to the Licensing Agreement, Grace was permitted to use Southern's property for Kaolin mining and manufacturing.[1] The Licensing Agreement specifically granted Grace the right to maintain on Southern's property an existing warehouse building with overhead canopies, a shed, and a cyclone fence and gates. (Licensing Agreement ¶ 1(A).)

4.       On December 15, 1980, Grace and Southern also entered into an operating agreement (the "Operating Agreement"), whereby Southern agreed to operate the 1,678 feet of industrial railroad track leading to and from the Natka, South Carolina, warehouse that was the

---

[1] Kaolin is soft white clay that is an essential ingredient in the manufacture of china and porcelain and is widely used in the making of paper, rubber, paint, and many other products. *See* http://www.britannica.com/EBchecked/topic/311676/kaolin.

subject of the Licensing Agreement. This track was used to transport shipments of Kaolin from the warehouse. Pursuant to the Operating Agreement, Southern assumed control of the operation of the subject railroad track. (Proofs of Claim Exhibit B, Operating Agreement, titled "Exhibit A" ¶ 2.)

5.    The Licensing Agreement and Operating Agreement each contained a provision that allocated liability between the parties for their acts of independent or joint negligence. Pursuant to the Licensing Agreement, Southern was solely responsible for any damages or liability resulting from the negligence or acts of its employees; Grace was solely responsible for damages or liability resulting from the negligence or acts of its employees; and Southern and Grace were jointly responsible for loss caused by their joint and concurring negligence. (Licensing Agreement, ¶ 10; Operating Agreement, ¶5.) Specifically, the Licensing Agreement and Operating Agreement each state, in relevant part:

> The liability of the parties to this agreement, as between themselves, for death, personal injury and property loss and damage, which occurs by reason of, or arises out of, or is incidental to, the use or occupancy by Licensee of the property covered by this agreement, shall be determined in accordance with the following provisions:
>
> ***
>
> (b) *Licensee [Grace] shall be solely responsible for,* and shall bear all cost, expense and liability resulting from *death, personal injury, and loss and damage to property, caused solely by the negligence of Licensee, or of the agents or employees of Licensee,* or by the violation by Licensee or its agents or employees of the terms of this agreement, or by the negligence of Licensee concurring with the negligence of a third party;
>
> (c) Except as provided in subparagraph (a) above, *Company [Southern] shall be solely responsible for* and shall bear all cost, expense and liability resulting from *death, personal injury, and property loss and damage, caused solely by the negligence of Company, or of the agents or employees of Company,* or by the negligence of Company concurring with the negligence of a third party;
>
> (d) Except as provided in subparagraph (a) above, Company and Licensee shall be solely responsible for and shall bear equally all cost, expense and liability

resulting from the death, personal injury and property loss and damage caused by their joint and concurring negligence;

(e) Each of the parties hereto, for the liability imposed upon such party by this agreement, shall indemnify and hold entirely harmless the other party hereto.

(*Id.*) (emphasis added).

6.    On November 7, 1983, Grace and Southern entered into a supplemental agreement (the "Supplemental Agreement"), whereby Southern agreed to operate an additional 477 feet of industrial track leading from Grace's warehouse building in Natka, South Carolina, in accordance with same terms as the track covered under the existing Operating Agreement. (Supplemental Agreement.)

7.    On October 3, 1990, Grace and Southern entered into an additional supplemental agreement (the "Second Supplemental Agreement," collectively with the Licensing Agreement, Operating Agreement and Supplemental Agreement, the "Agreements"), which gave Grace the right to construct and maintain an overhead loading structure with a retractable spout over the industrial track in Natka, South Carolina. (Second Supplemental Agreement, Proof of Claim Exhibit C.)  Pursuant to the Second Supplemental Agreement, the terms of the previous agreements were to continue until terminated by the parties.  (Supplemental Agreement ¶ 4.)

8.    According to the Norfolk Claim, sometime prior to July 7, 1998, Norfolk became the successor in interest to Southern.[2] (Proof of Claim Addendum, at pg. 2.)

9.    On July 7, 1998, Lester F. Kirkland, Jr., a resident of South Carolina and an employee of Norfolk, filed a personal injury lawsuit against Norfolk in Bibb County, Georgia, under the Federal Employers Liability Act, 45. U.S.C. § 51 *et. seq.*  According to Mr. Kirkland's complaint (the "Kirkland Complaint"), on January 23, 1998, he was employed by Norfolk and was working as a conductor on a Norfolk train that was near Warrenville, South Carolina, when

---

[2] The Debtors can neither admit nor deny this allegation, and therefore have not objected to Norfolk's standing to sue under any or all of the Agreements or otherwise.  However, to the extent that Norfolk is not the successor in interest to Southern under the Agreements, the Debtors reserve their rights to object to Norfolk's standing to prosecute its claim.

he attempted to release a defective handbrake, which would not release properly. As Mr. Kirkland attempted to release the handbrake, he allegedly slipped "on a slick and dangerous substance," which Norfolk had "allowed to cover the rail car," and he sustained injuries as a result of his ensuing fall. (Proof of Claim Exhibit D, Kirkland Complaint, at ¶5.) The alleged incident took place on railway track that was not the subject of any of the Agreements or otherwise controlled or operated by Grace.

10.     The Kirkland Complaint also alleges that on January 26, 1998, Mr. Kirkland was again injured when attempting to apply a Norfolk handbrake on a Norfolk train car that was located at the Aiken Depot, near Aiken, South Carolina. (Kirkland Complaint, at ¶6.) The Aiken Depot likewise was some distance away from land that was subject to the Agreements or otherwise leased, operated or otherwise controlled by Grace.

11.     The Kirkland Complaint was brought exclusively against Norfolk. The five-count Kirkland Complaint alleges that Mr. Kirkland's injuries were the result of Southern's "negligence in its railroad cars, work practices, maintenance practices, and safety practices" and "negligent failure ... to use reasonable care to provide to [Mr. Kirkland] a reasonably safe place" to work. (Kirkland Complaint, at ¶¶7-8.) The Kirkland Complaint does not name Grace as a defendant, and it does not allege that Grace was negligent or that Mr. Kirkland's injuries were in any way caused by the acts or omissions of Grace. (*See* Kirkland Complaint.)

12.     On March 21, 2001, the jury in Mr. Kirkland's lawsuit against Southern returned a verdict in favor of Mr. Kirkland. Despite the fact that Mr. Kirkland had only requested $1.5 million, the jury awarded Mr. Kirkland judgment in the sum of $1,924,500, plus interest. (Proof of Claim Exhibit F.)

13.     On April 2, 2001, the Debtors filed their petitions for relief under Chapter 11 of Title 11 of the United States Code. (Dkt. No. 1.)

14.     On July 2, 2001, Mr. Kirkland and Norfolk allegedly entered into a settlement agreement on account of Norfolk's liability to Mr. Kirkland, pursuant to which Norfolk agreed to pay Mr. Kirkland $1.5 million. Norfolk allegedly paid this amount to Mr. Kirkland on or about

6

July 6, 2001. (Proof of Claim Exhibit G.)

15.    On April 22, 2002, the Bankruptcy Court issued a bar date order in these cases (Dkt. No. 1963), which established March 31, 2003, as the deadline for filing pre-petition: non-asbestos, asbestos property damage, and medical-monitoring claims. (*Id.*)

16.    On March 27, 2003, Norfolk filed the Norfolk Claim, which seeks a total of $1,584,182 for: (a) indemnification on account of its $1.5 million post-judgment settlement with Mr. Kirkland; (b) $61,664 in legal fees from its defense of the Kirkland lawsuit; (c) $20,415 on account of allegedly outstanding freight charges; and (d) $2,102 on account of environmental clean up costs and track scale testing charges in Chattanooga, Tennessee, where Grace allegedly leased track from Southern.

<u>**Argument**</u>

A.    **The Agreements are Governed by South Carolina Law.**

17.    As a Federal Court sitting in Delaware, this Court applies Delaware choice of law principles to determine the appropriate State's law to apply to the Norfolk Claim. *A.P.S., Inc. v. Standard Motor Prods., Inc.*, 295 B.R. 442, 453 (D. Del. 2003), *citing Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941).

18.    Delaware courts have adopted the Restatement (Second) of Conflicts of Laws' "most significant relationship test" to govern choice of law principles. *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 41 (Del. 1991) (adopting the Restatement rule for tort cases); *Cannon v. Dorr-Oliver, Inc.*, 394 A.2d 1160, 1166 (Del. Super. 1978) (adopting the Restatement rule in contract cases). The Restatement identifies the following factors for the Court to consider when determining which State's law applies to contracts, such as the Agreements at issue here, that lack a choice of law provision: (i) the place of contracting; (ii) the place of negotiation; (iii) the place of performance; (iv) the location of the subject matter of the contract; and (v) the place of incorporation and business of the commercial parties. Restatement (Second) of Conflict of Laws § 188 (1971). These factors are evaluated according to their relative importance to the particular

7

issue and in accordance with the following principles that are identified in Section 6 of the Restatement: (i) the needs of the interstate and international systems; (ii) the relevant policies of the forum; (iii) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (iv) the protection of justified expectations; (v) the basic policies underlying the particular field of law; (vi) certainty, predictability and uniformity of result; and (vii) ease in the determination and application of the law to be applied. *Liggett Group Inc. v. Affiliated FM Ins. Co.*, 788 A.2d 134, 138 (Del. Super. 2001).

19.     Under these factors, the Norfolk Claim and the underlying Agreements should be governed by South Carolina law. Although the parties are both incorporated in separate states (Grace in Connecticut and Southern in Virginia), neither of these States has any direct connection to the Agreements or the injuries giving rise to Mr. Kirkland's injuries. Instead, the business activities that are the subject of the Agreements, the events giving rise to Mr. Kirkland's injuries, and Mr. Kirkland's state of residence are all in South Carolina. In particular, the subject matter of the Agreements is 1,678 feet of track and a parcel of Southern's property located near Natka, South Carolina; the Agreements were performed in South Carolina; and Mr. Kirkland allegedly slipped and incurred his injuries while traveling over railway track located in South Carolina. Therefore, South Carolina has the closest relationship to the Agreements at issue, and its substantive law should apply to the Agreements. *Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991) (stating "[w]e agree that the general rule in [Restatement] section 188 controls the choice of law governing contractual rights and duties, and that these include indemnity agreements.") (internal citation omitted).

## B.     Norfolk Fails to Allege Facts Sufficient to Recover on its Indemnification Claims.

20.     Under South Carolina law, "a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from its own negligent acts unless such intention is expressed in clear and unequivocal terms." *Federal Pacific Elec. v. Carolina Prod.*

*Enterprises*, 298 S.C. 23, 26 (S.C. App. Ct. 1989); *Laurens Emergency Med. Specialists, PA v. M.S. Bailey & Sons Bankers*, 355 S.C. 104, 111 (S.C. 2003).[3]  Therefore, given that the jury in the Kirkland trial has already determined that Norfolk's negligence was a proximate cause of Mr. Kirkland's injuries, Norfolk has the burden of establishing that the indemnification provisions in the Agreements pursuant to which it seeks recovery from the Debtors are expressed clearly and unequivocally.  Far from satisfying this lofty burden, neither the Kirkland Complaint nor the Norfolk Claim allege that Grace's actions or omissions *in any way contributed* to Mr. Kirkland's injuries, let alone that the Debtors have a contractual indemnification obligation under the above-quoted language from Paragraph 10 of the Licensing Agreement and Paragraph 5 of the Operating Agreement, or otherwise.

21.    There has been absolutely no allegation -- either in the Kirkland Complaint or in the Norfolk Claim -- that Grace was negligent or otherwise involved in the events that resulted in Mr. Kirkland's injuries.  Therefore, the Court is left with a situation where (i) a jury has found that Norfolk's negligence was the proximate cause of Mr. Kirkland's injuries; and (ii) there is no allegation or indication in Norfolk's Proof of Claim that Grace in any way contributed to Mr. Kirkland's injuries.

22.    Norfolk accordingly has failed to allege facts that, even if proven, would allow it to recover for reimbursement under the Agreements, and Norfolk has failed to satisfy its initial burden to recover for its proof of claim.  *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3d Cir. 1992) ("Initially, the claimant must allege facts sufficient to support the claim.").  Therefore, under the Agreements, Norfolk is "solely responsible and shall bear all costs, expense and liability" resulting from Mr. Kirkland's accidents.  (Licensing Agreement 10(c); Operating

---

[3] The law in Georgia, where Mr. Kirkland obtained judgment against Norfolk, is no different: "Georgia law is very clear that a contract does not indemnify the indemnitee against its own negligence unless it says so, because "[p]ublic policy is reluctant to cast the burden of negligent actions upon those who are not actually at fault." *UPS, Inc. v. Colt Sec. Agency, Inc.*, 676 S.E.2d 22, 24 (Ga. Ct. App. 2009), *quoting Allstate Ins. Co. v. City of Atlanta*, 202 Ga. App. 692, 693 (1992).  Similarly, in Delaware, "[w]hile a contract for indemnification may provide for indemnification for the indemnitee's own negligence, that intention must be evidenced by unequivocal language. *American Ins. Group v. Risk Enterprise Management, Ltd.*, 761 A.2d 826, 829 (Del. 2000), *quoting Precision Air, Inc. v. Standard Chlorine of Del., Inc.*, 654 A.2d 403 (Del. 1995).

9

Agreement 5(c)). Therefore, based on Norfolk's clear failure to allege any facts to satisfy its initial burden on its claim, the Norfolk Claim should be disallowed and expunged.

### C.    There is Likewise No Allegation of "Joint and Concurrent" Negligence.

23.    Under the terms of the Licensing and Operating Agreements, Grace was not obligated to indemnify Norfolk for Norfolk's own negligent conduct, unless such negligence was "joint and concurring" with Grace. To establish joint and concurrent negligence with Grace, Norfolk must establish that Grace was also negligent, and that the combination of each party's negligence directly caused Mr. Kirkland's injury. *See, e.g., Garbe v. Halloran*, 150 Ohio St. 476, 481 (1948) ("[c]oncurrent negligence consists of the negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence in producing a single indivisible injury.")

24.    As noted above, there is absolutely no allegation or indication from the Kirkland Complaint or the Norfolk Claim that Grace's acts or omissions contributed *in any way* to Mr. Kirkland's injuries, let alone that such actions rose to the level of "joint and concurring" negligence with the negligent acts of Norfolk.[4]

25.    To the extent that Norfolk is alleging that Grace was jointly and concurrently negligent with Norfolk, such a claim would be inconsistent with the terms of the Operating and Licensing Agreements, which stated that it was Norfolk's sole responsibility to move the freight and to maintain and operate the train cars where Mr. Kirkland was injured:

- "Railroad *will operate*...for the receipt and shipment of carload freights of Industry over the lines of Railroad..." (Operating Agreement ¶ A.) (emphasis added);

- "Industry [Grace] will acquire and hereby guarantees to Railroad full right and lawful

---

[4] The jury in Mr. Kirkland's negligence action against Norfolk Southern entered a judgment in favor of Mr. Kirkland. Therefore, it has already been determined that Norfolk Southern's negligence was a proximate cause of Mr. Kirkland's injuries and, therefore, the Agreements' provision concerning situations where Grace is solely negligent (Licensing Agreement ¶ 10(b); Operating Agreement ¶ 5(b)) could not be applicable under the current circumstances.

10

authority to *maintain and operate* any portion of said industrial track." (Operating Agreement titled "Exhibit A" ¶ 1.) (emphasis added);

- "Railroad shall have *entire control of said track and the operation thereof...*" (*Id.* at ¶ 2.) (emphasis added); and

- "Cars shall not be moved to or from said industrial track *except by Railroad.*" (*Id.* at ¶ 6.) (emphasis added).

26.    Thus, Norfolk was responsible for its cars and the track where Mr. Kirkland's injuries occurred. What is more, according to the above-quoted language, not only was Grace not responsible for maintaining track that was not subject to the Agreements or the operations of Norfolk's cars, it was expressly prohibited from doing so.

27.    Therefore, to the extent that Mr. Kirkland was injured on account of slipping while pulling a defective handbrake on a Norfolk car that was traveling on track not leased by Grace -- as alleged in his complaint (Proof of Claim, Kirkland Complaint, at pg. 2) and as found by the jury in the underlying action -- his injuries related to Norfolk's obligations under the Agreements. Because Mr. Kirkland's injuries were determined to have been the result of Norfolk's failure to maintain these instrumentalities for which it had exclusive responsibility, Grace could not possibly have been jointly and concurrently negligent in Norfolk's operation of carload freights under the Agreements.

28.    This result and the underlying allocation of responsibility between the parties is not surprising. Norfolk's primary business is the ownership and operation of railway tracks and the transportation of goods over those tracks. *See , e..g,* Norfolk's Website, attached as Exhibit 3 and available at, http://www.nscorp.com/nscportal/nscorp/) ("Our Vision: Be the *safest*, most *customer-focused* and *successful* transportation company in the world") (emphasis in original); *see also* Norfolk Southern 2008 Annual Report, attached as Exhibit 4 ("Description of Business: Norfolk Southern Corporation (NYSE: NSC) is one of the nation's premier transportation companies. Its Norfolk Southern Railway subsidiary *operates* approximately 21,000 route miles in 22 states and the District of Columbia, serving every major port in the eastern United States

11

and providing superior connections to western rail carriers….") (emphasis added).

29.    Grace is not in the business of operating train cars or railway track, and its express responsibilities under the Agreements accordingly are limited to maintaining the specific track that is the subject of the Agreements; not maintaining or operating Norfolk's train cars and its remaining railways.

### D.    Mr. Kirkland's Allegations Support the Finding that Norfolk was Ultimately Responsible for the Conditions that Gave Rise to Mr. Kirkland's Injury.

30.    Besides the contractual allocation of responsibilities, the remaining factors surrounding Mr. Kirkland's falls likewise support a finding that Norfolk was solely responsible for Mr. Kirkland's injuries.  Mr. Kirkland was an employee of Norfolk; he was injured while traveling on track maintained by Norfolk; he was injured on a train that Norfolk owned and operated; and his injuries were caused while attempting to engage a defective Norfolk handbrake on that Norfolk train car.  The Kirkland Complaint specifically alleged that Mr. Kirkland's injuries were the result of Norfolk's equipment: "[t]he handbrake was in a defective condition and would not release when Plaintiff applied it properly."  (Kirkland Complaint, at ¶5.)  Thus, the allegations and jury verdict in Mr. Kirkland's case support a finding that Norfolk's negligence was the sole proximate cause of Mr. Kirkland's injuries.

Mr. Kirkland's Allegations Support the Finding that Norfolk was Ultimately Responsible for the Conditions that Gave Rise to Mr. Kirkland's Injury.

### E.    The Norfolk Claim Seeks Indemnification For Amounts That Exceed Any Possible Indemnification Under the Present Facts.

31.    To the extent that Grace is found to have been jointly negligent with Norfolk, then Grace objects to the amount of indemnification sought in the Norfolk Claim.  The Norfolk Claim seeks indemnification for the entire amount of Norfolk's settlement with Mr. Kirkland, and all of Norfolk's related legal fees.  However, the jury in the underlying litigation already determined that Norfolk was negligent and that its negligence was a proximate cause of Mr. Kirkland's

injuries. Therefore, even if it could be established that Mr. Kirkland's injuries were the product of "joint and concurring negligence" between Norfolk and Grace, then Norfolk would not be entitled to indemnification for the totality of these amounts. Instead, pursuant to the terms of the Agreement, Norfolk would be entitled to at most $780,832, or half of the amounts that it paid to settle and defend its litigation with Mr. Kirkland ($1.5 million for settlement and $61,664 in legal fees).[5]

**F.    A Portion of Norfolk's Alleged Freight Charges Remain Unpaid.**

32.    Grace has satisfied all but $4,820.35 of Norfolk's alleged unpaid freight charges, and accordingly objects to $15,595.17 of Norfolk's claim for $20,415.52 in unpaid freight charges. This amount consists of several freight bills that were sent to Grace on various dates. However, Grace paid most of these freight charges: On April 24, 2001, Grace issued Norfolk a check for $1,220 to cover freight charges for $970 and $250; On April 26, 2001, Grace issued Norfolk a check for $4,889.25; on May 10, 2001, Grace issued Norfolk a check for $5,402.22 to cover charges for $840 and $4,562.22; and on August 16, 2001, Grace issued Norfolk a check for $4,923.70. Therefore, Grace has paid all but $4,820 of Norfolk's requested freight charges, and the Debtors request that the Court enter an order disallowing the remaining $15,595.17, for which the Debtors have already made payment.

**G.    The Debtors Object to Any Additional Untimely Claims that Norfolk May Assert.**

33.    In addition to the specific claims that are addressed above, the Norfolk Claim also purports to reserve Norfolk's right to amend the Norfolk Claim to assert additional claims that it may have under the Agreements. (Proof of Claim Addendum, at pg. 3.) To the extent that Norfolk attempts to assert any additional claims relating to the Agreements, the Debtors object to

---

[5] The Debtors can neither admit nor deny the reasonableness of Norfolk's settlement or associated legal fees. Therefore, the Debtors do not object to the reasonableness of such amounts in this Objection, but they reserve the right to do so at a later time.

.

13

any such claims that arose on or before April 1, 1998, as being untimely under the applicable 3 year statute of limitations. *See* 10 Del. C. § 8121 (2005) (Delaware adopts the shorter of the Delaware's statute of limitations or the limitations period where the claim arose); DEL. CODE ANN. tit. 10, § 8106 (3 year statute of limitations for breach of contract claims under Delaware law); S.C. CODE ANN. § 15-3-530 (1976) (3 year statute of limitations for breach of contract claim under South Carolina law). The Debtors also reserve their rights to assert any and all additional objections that may apply to any such unarticulated claims that relate to the Agreements.

### Reservation

34.     The Debtors hereby reserve the right to object in the future to any of the Norfolk Claim listed in this Objection on any ground, and to amend, modify and/or supplement this Objection, including, without limitation, to object to amended claims and newly-filed claims and to file all other objections relating to the Norfolk Claim.[6] Separate notice and hearing will be scheduled for any such objection.

### Notice

35.     The Debtors will serve copies of this Objection on (i) the Office of the United States Trustee and (ii) the Claimants, (iii) counsel to each of the official committees appointed by the United States Trustee; (iv) counsel for the personal injury future claimants' representatives; (v) counsel to the property damage future claimants' representative, (vi) counsel to the debtor in possession lender and (vii) all parties that have requested that they be served with all pleadings filed in these cases pursuant to Federal Rule of Bankruptcy Procedure 2002. The Debtors submit that notice of this Objection as outlined above is sufficient under Bankruptcy Rule 3007 and that no further notice is necessary.

---

[6] Grace makes no specific objection to Norfolk's environmental cleanup and track scale testing claims in the amount of $2,102.00, but reserves the right to revise its Objection as the claim proceeds.

14

**No Previous Request**

36.     No previous request for the specific relief set forth herein has been made to this or any other court.

**Compliance With Rule 3007-1**

37.     This Objection and related exhibits attached hereto, complies with Rule 3007-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware.

**Conclusion**

38.     The Norfolk Claim seeks contractual indemnification under the Agreements for amounts that Norfolk has paid to defend and settle Mr. Kirkland's negligence lawsuit against Norfolk. According to those Agreements, the Debtors cannot be held responsible for any of those amounts unless it is first established that either Grace's sole negligence caused Mr. Kirkland's injuries or Grace's joint and concurring negligence with Norfolk caused Mr. Kirkland's injuries. The jury in the underlying action already determined that Norfolk's negligence was a proximate cause of Mr. Kirkland's injuries. Therefore, Norfolk could not possibly establish that Grace was solely negligent, and Norfolk's only possibility for recovery under the Agreements would be on account of joint and concurring negligence between Norfolk and Grace. However, while the Norfolk Claim seeks indemnification from Grace, it fails to provide any evidence, or even to make any allegations, that Grace was jointly and concurrently negligent in causing Mr. Kirkland's injuries. Indeed, neither the Norfolk Claim nor the Kirkland Complaint assert that Grace's actions had anything to do with Mr. Kirkland's injury, and the circumstances described in the Kirkland Complaint all concern instrumentalities for which Norfolk was responsible. The Debtors therefore ask the Court to enter an order that disallows and expunges the Norfolk Claim' for indemnification ($1.5 million), related legal fees ($61,664), as well as Norfolk's claim for allegedly unpaid transportation services for which the Debtors have already made payment ($15,595.17).

Dated:  July 20, 2009

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Samuel L. Blatnick
Andrew B. Fromm
300 N. LaSalle St.
Chicago, IL  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

The Law Offices of Janet S. Baer P.C.,
Janet S. Baer, P.C.
70 W. Madison St., Suite 2100,
Chicago, IL 60602.
Phone: 312-641-2162.
Fax:  312-641-2165.

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for Debtors and Debtors in Possession

16