# Exhibit 1

*Norfolk Southern*

# WR Grace

### Bankruptcy Form 10

### Index Sheet

SR00000520 ■

| Claim Number: | 00007021 | | Receive Date: | 03/27/2003 |
|---|---|---|---|---|

## Multiple Claim Reference

Claim Number _____

- [ ] MMPOC   Medical Monitoring Claim Form
- [ ] PDPOC   Property Damage
- [ ] NAPO   Non-Asbestos Claim Form
- [ ]   Amended

Claim Number _____

- [ ] MMPOC   Medical Monitoring Claim Form
- [ ] PDPOC   Property Damage
- [ ] NAPO   Non-Asbestos Claim Form
- [ ]   Amended

## Attorney Information

Firm Number:   00298

Firm Name:   Potter Anderson & Carroon LLP

Attorney Number:

Attorney Name:

Zip Code:   19899-0951

Cover Letter Location Number:   SR00000520

| Attachments<br>Medical Monitoring | Attachments<br>Property Damage | Non-Asbestos |
|---|---|---|
| [ ] TBD | [ ] TBD | [x] Other Attachments |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| | [ ] Other Attachments | |

| Other | |
|---|---|
| | [ ] Non-Standard Form |
| | [ ] Amended |
| | [ ] Post-Deadline Postmark Date |

Box/Batch: WRBF0028/WRBF0110

Document Number: WRBF005494 ■

ADDENDUM TO PROOF OF CLAIM FILED BY
NORFOLK SOUTHERN RAILWAY COMPANY

On April 2, 2001 (the "Petition Date"), W.R. Grace & Co. and its affiliated debtors (collectively referred to herein as the "Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. 101 *et seq.*

Prior to the Petition Date, on or about December 15, 1980, Southern Railway Company, and W.R. Grace & Co. entered into an agreement (the "Right-of-Way Agreement") pursuant to which W.R. Grace & Co. was permitted to occupy and use portions of a railroad right-of-way with respect to its kaolin manufacturing business located in Natka, South Carolina. A copy of the Right-of-Way Agreement is attached hereto as Exhibit A.

On or about December 15, 1980, Southern Railway Company and W. R. Grace & Co. entered into another agreement pursuant to which Southern Railway Company would operate an industrial railroad track to serve W. R. Grace's kaolin manufacturing business (the "Track Agreement"). A copy of the Track Agreement is attached hereto as Exhibit B.

On or about November 7, 1983, Southern Railway Company and W.R. Grace & Co. entered into an agreement which supplements the Track Agreement (the "November 1983 Agreement") and provides for Southern Railway Company's operation of an additional 477 feet in industrial track. A copy of the November 1983 Agreement is attached hereto as Exhibit C.

On or about October 3, 1990, Southern Railway Company and W.R. Grace & Co.-Conn, formerly W.R. Grace & Co., entered into a supplemental agreement pursuant to which Southern Railway Company granted W.R. Grace & Co.-Conn the right or license to construct, maintain and use an overhead loading structure with retractable loading spout across and over Southern Railway Company's industrial track (the "September 1990 Agreement"). A copy of the

to, those amounts that Norfolk Southern has incurred as a result of, and in the defense of, the Kirkland Action.

In addition, Norfolk Southern is in the business of providing, among other things, freight services for the transportation of various goods (the "Transportation Services"). As set forth in the Statement of Charges attached hereto as Exhibit H, for the period from August 16, 2000 through April 2, 2001, Norfolk Southern provided the Debtors with Transportation Services in the amount of $20,415.52 for which it has not been paid. Accordingly, Norfolk Southern has a claim against the Debtors in the amount of $20,415.52.

Finally, as set forth in the invoices attached hereto as Exhibit I, the Debtors are indebted to Norfolk Southern for (i) expenses incurred by Norfolk Southern on the Debtors' behalf for environmental clean up by Ferguson Harbour at Chattanooga, Tennessee and (ii) track scale testing. Accordingly, Norfolk Southern has a claim against the Debtors in the amount of $2,102.00.

By this proof of claim, Norfolk Southern also asserts its right to setoff the amounts owed by the Debtors to Norfolk Southern against any claim that may be brought against Norfolk Southern by the Debtors, the Debtors in possession, any trustee or any estate representative.

Norfolk Southern also expressly asserts and reserves all other rights, including, without limitation, (i) the right of recoupment, (ii) any other defenses to any cause of action, (iii) to amend this claim, and (iv) to assert this claim or any portion of it against any other Debtor if a basis to do so is subsequently discovered. To the extent that these claims are used defensively, as a right of setoff, Norfolk Southern asserts that such claims are secured claims.

3

# Exhibit A

Form 626

of the effective date hereof.  If Licensee shall default in the payment of rental hereunder for a period of 30 days after the same shall be due, a service charge in the amount of 1/2 of 1% of such rent for each month or portion thereof that the same shall remain unpaid shall be charged to Licensee.  Licensee will pay such service charge together with rental due hereunder.

4.  Licensee will use said premises for the purposes aforesaid and for no other purpose.  This license is a personal privilege to Licensee and shall not be assigned without the written consent of Company; nor shall Licensee, except with such consent, permit said premises to be used for any purpose by any other person.

5.  Licensee will pay all taxes, licenses or other charges assessed or levied upon the property of or business conducted by Licensee upon said premises of Company, or against Company by reason of the location of such property or business of Licensee upon said premises.

6.  Licensee will not construct or install upon said premises any buildings, structures or improvements unless specifically permitted hereby or by written consent of Company.  Any buildings, structures or improvements erected by Licensee on said premises, if permitted hereby, shall be substantially constructed or installed, maintained and used in such manner as not to interfere with the operation and maintenance of the railroad of Company, shall be kept in good repair and presentable condition, shall be located as described herein or shown on the attached print, and shall not be relocated upon Company premises except with the written consent of Company.  Buildings or structures of Licensee, if permitted hereunder, shall have roofs of metal or other non-combustible material to reduce fire risks.  Licensee agrees to keep said premises in clean and sanitary condition, free of waste, trash, or unsanitary or inflammable matter, and to prevent the posting of advertising bills or signs upon said premises, except the usual business sign of Licensee.

7.  Licensee will not permit smoking within any building of Company occupied by Licensee, and will post and maintain in a conspicuous place, or places, within said premises a sign or signs, reading "NO SMOKING ALLOWED", or words of similar import.

8.  If the premises occupied hereunder by Licensee consists of a building or other structures of Company, or space therein, Licensee

(a) accepts the premises in their present condition; it being agreed that all maintenance and repairs needed to keep the premises in as tenantable condition as at present shall be made by the Licensee at Licensee's sole cost and expense, the term "premises" as used in this subparagraph to include, without limitation, air conditioning, heating, sprinkler systems, plumbing, wiring facilities and other equipment or facilities which may be furnished by Company and employed in the use and occupancy of the premises; and that Company shall have no obligation to perform any maintenance or to make any repair or replacement with respect to the premises except those required to be made to the roofing, foundations, and outside walls (exclusive of windows, doors and facilities attached to or adjacent to the outside walls such as loading docks).  It is further agreed that Licensee in fulfilling the obligations assumed by Licensee herein shall make provision for the immediate repair and maintenance of all doors, windows, or other facilities comprising the premises which serve to protect the premises from the elements, damage by vandalism or other causes, and that where any such repair or maintenance is not or is not considered by Licensee to be the responsibility of Licensee, Licensee shall notify Company immediately of the need for such repair and maintenance, Licensee failing in either respect, to be liable to Company for all damage resulting.  Company shall have no obligation to furnish Licensee any water, heat, light or other public utilities for use by Licensee in Licensee's occupation and use of said premises, and all facilities for supplying light, water, heat and other public utilities required by Licensee in connection with Licensee's use of said premises shall be of character and design approved by Company and shall be installed and maintained therein at the expense of Licensee, and in accordance with the requirements of Company as to proper installation and construction; Licensee agreeing to pay all expenses and charges for such utilities and to install separate meters necessary in connection therewith.

(b) will not make any alterations in, additions to or improvements to said

2883-227

- 7 -

Form 626

Licensee agrees to observe and be bound by the rules of the Company with respect to standard clearances for all railroad tracks located on or adjacent to the premises covered by this agreement; that is to say, the Licensee agrees to maintain and preserve an overhead space of 22 feet measured perpendicularly from the top of the rail (except that overhead clearance where wire lines extend over said track shall be such as may be prescribed by the Company) and a space 20 feet in width, measured 10 feet on each side from the center line of said track; provided, however, that the side clearance of 10 feet must be increased one and one-half (1-1/2) inches for every degree of curvature, which space shall be kept clear of any obstruction whatever, including but not limited to all structures, facilities or property of the Licensee which are or may be placed or erected above or parallel to said track.

(b) Notwithstanding anything contained in this agreement, and irrespective of any joint or concurring negligence of Company, Licensee shall assume sole responsibility for and shall indemnify, save harmless and defend Company from and against all claims, actions, or legal proceedings arising, in whole or in part, from the failure of Licensee to comply with any clearance requirements set forth in this agreement. In this connection, it is specifically understood that knowledge on the part of Company of a violation of any such clearance requirements, whether such knowledge is actual or implied, shall not constitute a waiver and shall not relieve Licensee of its obligations to indemnify Company for losses and claims resulting from any such violation.

12.  In the event that the whole or any part of the premises occupied by Licensee hereunder shall be taken for any purpose under the power of eminent domain, Licensee shall not be entitled to share in any award resulting from any such taking, nor shall Licensee have any claim against the Company for any expense which may be incurred by Licensee as a result of such taking or as a result of termination of this agreement by reason of such taking, as hereinafter provided. In the event that the taking shall be of the whole of the property herein occupied by Licensee or of such part as shall render said premises untenantable for the uses at such time made of the premises by the Licensee, then this agreement and all rights and interests acquired hereunder shall terminate as of the date of the vesting of title to the property in the condemning authority, and in no event shall Licensee have any claim for the value of any unexpired period of this agreement.

13.  Company may terminate this agreement at any time by 30 days' written notice to Licensee of election so to do, and if Licensee shall default in the payment of rentals, or violate any other covenants herein, Company may terminate this agreement by 10 days' written notice to Licensee of election so to do; service of such notice to be made either (a) by delivering a copy of the notice to Licensee, or (b) by mailing the same to or leaving it at the last known address of Licensee and posting in any conspicuous place upon said premises. Licensee may also terminate this agreement by 30 days' written notice to Company of election so to do. Upon the termination of this agreement, in any manner, Licensee will vacate said premises of Company, remove all property (including structures, if any) of Licensee therefrom, and surrender possession of said premises to Company in as good condition as they were in prior to construction or placing of said property thereupon, and, in default thereof, Company may, in addition to any other legal remedy it may have, at its election (a) remove the property of Licensee from and restore the condition of said premises of Company, at the expense of Licensee, or (b) subject to notice as hereinafter provided, take possession of any property left on said premises by Licensee and dispose of the same by sale or otherwise for the purpose of applying the proceeds thereof against unpaid rental or to other payments due pursuant to the terms of this agreement, or for other purposes as hereinafter mentioned; except that if said property so left on said premises by Licensee has no value, in the judgment of Company, or cannot be conveniently sold, the same may be disposed of in such manner as Company may determine to relieve itself of the burden of caring for such property; provided, however, that prior to the sale or other disposition of such property Company shall notify, or attempt to notify, Licensee of Company's intent so to sell or dispose of such property. If this agreement shall be terminated by Company it agrees, upon written

2883-227          - 4 -

standard clearances do not obtain to the effect that such structures will not clear man on side or on top of car.

Notwithstanding any other provisions of this agreement, Licensee shall indemnify and save harmless Company, and any associated, controlled or affiliated corporation, from and against the consequences of any loss of life, personal injury or property loss or damage which may result from or be attributable to any limited or restricted clearances for said industrial track, whether or not negligence of Company may have caused or contributed to such loss, injury or damage.

IN WITNESS WHEREOF the parties hereto have executed these presents in duplicate, each part being an original, this ___15th___ day of ___December___, 19 _80_.

In presence of:

As to Company.

In presence of:

_D. K. Crawford_
As to Licensee.

SOUTHERN RAILWAY COMPANY,

By

_____
Vice President.

W. R. GRACE & CO.,

By

_____
-Vice-President.

-6-

DAC:jat
7-16-80
33458-1    2883-227



AIKEN CO. S.C.
V-36b/6

(Rev. 4-1-75)

THIS AGREEMENT, made between
SOUTHERN RAILWAY COMPANY, a Virginia corporation, its successors and assigns,

hereinafter styled Railroad, party of the first part; and ~~XXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXX~~ *(uri 194*
W. R. Grace & Co., a Connecticut Corporation,

hereinafter styled Industry, party of the second part;

## W I T N E S S E T H:

THAT the PARTIES HERETO agree as follows:

A. Railroad will ——————————operate, to afford Industry facilities for the receipt and shipment of carload freights of Industry over the lines of Railroad in accordance with lawfully published tariffs, an industrial track described as follows:

A double-ended side track, at NATKA, South Carolina, 1678 feet, more or less, in length, measured between the switch points thereof, located substantially as shown in red and green on print of Drawing No. TB-80-0185, dated June 27, 1980, annexed hereto and made a part hereof. Said double-ended side track being hereinafter referred to as "track" or "industrial track".

Railroad, moreover, hereby grants unto Industry the right or license to construct, maintain and use (a) two double swing gates across said industrial track; (b) two overhead canopies over said industrial track; and (c) a shed over said industrial track; all at the locations shown on said annexed print. Said overhead canopies and said shed being hereinafter sometimes together referred to as "Facility".

B. Said track is to be——————————operated upon and subject to the terms and conditions set out in Exhibit "A" hereto annexed and made a part hereof.

This agreement shall be effective as of the 1st day of June, 19 80. Either party hereto may terminate this agreement by ____sixty____ ( 60 ) days' written notice to the other of election so to do.

IN WITNESS WHEREOF, the parties hereto have executed this agreement in _duplicate_ each part being an original, as of the 15th day of December, 19 80.

In presence of:

_____

As to Railroad.

In presence of:,

_D. K. Crawford_
As to Industry.

SOUTHERN RAILWAY COMPANY,
By

_____
Vice President.

W. R. GRACE & CO.
~~XXXXXXXXXXXXXXX~~ *(uri 194*
By

_____
Vice President.

JHJ:jat    7-30-80
    33458

2883-228

2f (rev. 3-7-78)

- 2 -

solely by the negligence of Railroad, or of the agents or employees of Railroad, or by the negligence of Railroad concurring with the negligence of a third party;

(d) Except as provided in subparagraph (a) above, Railroad and Industry shall be jointly responsible for and shall bear equally all cost, expense and liability resulting from death, personal injury, and property loss and damage, caused by their joint and concurring negligence;

(e) Notwithstanding anything contained in this agreement, and irrespective of the sole, joint, or concurring negligence of Railroad, Industry shall assume sole responsibility for and shall indemnify and save harmless and defend Railroad from and against all claims, actions, or legal proceedings arising, in whole or in part, from the failure of Industry to comply with any clearance requirements set forth in this agreement. In this connection it is specifically understood that knowledge on the part of Railroad of a violation of any such clearance requirements, whether such knowledge is actual or implied, shall not constitute a waiver and shall not relieve Industry of its obligations to indemnify Railroad for losses and claims resulting from any such violation;

(f) Each of the parties hereto, for the liability imposed upon such party by this agreement, shall indemnify and hold entirely harmless the other party hereto;

(g) Knowledge on the part of Railroad of a continuing violation of the terms of this agreement by Industry shall constitute neither negligence nor acquiescence on the part of Railroad, and shall in no event relieve Industry of any of the responsibilities imposed upon Industry hereunder; and

(h) The term "Railroad", as used in this paragraph, shall include not only Railroad specifically named in the first sentence of this agreement, but also all of the corporate affiliates of Railroad so named.

6.   Cars shall not be moved to or from said industrial track except by Railroad. Industry will provide and furnish, at its own cost and expense, and keep ready for use at all times in a convenient place, a metal sign (or signs) at least 12 inches by 15 inches, reading "STOP"—"Men at Work", the letters in the word "STOP" to be at least four (4) inches high, and the letters in the words "Men at Work" at least two (2) inches high, and the color of which shall be white with blue background, which said sign(s) shall be used (1) whenever work is being done or activity performed in or about any car or series of cars, either by men and/or equipment; (2) whenever any car or series of cars is being loaded or unloaded either by hand or by the use of any mechanical means or device without regard to whether said mechanical means or device is connected to said car or series of cars; (3) whenever any work is being done or activity performed on or about the tracks themselves by men and/or equipment without regard to whether any car or series of cars is located on the tracks at the time the work is being done or the activity is being performed; and (4) at any other time when Industry employees and/or Industry equipment are engaged in such activity that the movement of cars could cause injury or damage to employees and/or equipment. If Industry loads or unloads to or from rail tank cars placed on said track by Railroad, said sign(s) shall be of the size and coloring specified herein, provided, however, that said sign(s) shall read "STOP"—"Tank Car Connected" and shall be maintained in place until the car is disconnected from any mechanical means or device used in connection with the loading or unloading thereof, including, but not limited to, any hose, pipe, conveyor belt or coupling of any type; it being understood and agreed that tank cars must not be left connected to any such mechanical means or device, as above defined, except when loading or unloading is going on and while a competent person is present and in charge. If the commodity loaded or unloaded into or from said rail tank cars is defined as hazardous or flammable in the regulations of the United States Department of Transportation, it is further understood and agreed that (a) brakes must be set and wheels blocked on all cars being loaded or unloaded and (b) smoking is to be prohibited in loading or unloading areas and "No Smoking" sign(s), satisfactory to Railroad, are to be posted in conspicuous locations approved by Railroad in loading or unloading areas, said sign(s) to be provided at the cost and expense of Industry. Industry agrees to keep the premises around and about said track clean

2f (rev. 3-7-78)

– 4 –

of Railroad, but at the expense of Industry. Notwithstanding any other provision hereof, if Industry shall fail to comply with any of its covenants in this agreement contained, Railroad shall have the right forthwith to discontinue operation of said industrial track, without liability to Industry, until Industry shall have complied with all of said covenants.

12. Industry will construct, maintain and renew, at its sole cost, said double swing gates across said track at the location indicated on said annexed print; said gates to be of such design and specification as may be prescribed by Railroad, to be equipped with Railroad's standard switch lock, so applied that said gates may be locked from the outside, and to be constructed in such manner as to provide, when opened, an unobstructed space on each side of the center line of said track of not less than ten feet and a total clearance of not less than twenty feet. Industry shall also provide a substantial device on each side of said track to which the wings of said gates may be fastened and made stationary parallel, or substantially parallel, with said track when railroad equipment is moving through the gateway; each of said devices to be so arranged that when the wings of said gates are fastened thereto the distance between the side of each wing and the center line of said track will not be less than ten feet in the clear.

Notwithstanding any other provisions of this agreement, Industry will assume full responsibility for the safe and proper maintenance and use of said gates; and, except for loss, damage or injury caused solely by the negligence of Railroad, Industry will indemnify and save harmless Railroad, and any associated, controlled or affiliated corporation, from and against the consequences of any property loss or damage, loss of life or personal injury whatever accruing from or by reason of the construction, maintenance or use of said gates or by reason of the presence of the same across said track, whether or not negligence of Railroad may have contributed to such loss, injury or damage.

13. Industry will construct, and maintain said Facility at all times during the life of this agreement, at its sole cost and expense, in strict accord with plans and specifications (if any) shown and noted on said annexed print and such other specifications as may be reasonably prescribed by Railroad, and, moreover, in all respects in accordance with the requirements of Railroad; it being understood that the work of constructing and maintaining said Facility shall, at all times during its progress, be subject to the inspection and supervision, and upon its completion to the approval, of the duly authorized representative of Railroad.

14. Industry will maintain said Facility at all times during the life of this agreement in such condition that said Facility or the use thereof by Industry shall not be or become an obstruction to, or interfere with, the safe and proper maintenance of said industrial track, or railroad operations upon said track, or endanger life or limb of employees of Railroad or other persons on or about said track.

15. Said Facility shall be maintained at the location indicated on said annexed print, and shall not be relocated without the consent, in writing, of Railroad.

16. Industry proposes to construct, maintain and use said Facility with full cognizance of the risk of loss of life, personal injury and property loss or damage which may be caused by or result from railroad operations on said industrial track or the location of said Facility, or which may accrue from or by reason of the construction, installation, maintenance, presence or use of said Facility by Industry; and Industry covenants that said Facility shall be constructed, maintained and used solely at the risk of Industry and that neither Railroad, nor any associated, controlled or affiliated corporation, shall assume any responsibility in the premises; Industry hereby specifically agreeing, notwithstanding any other provision of this agreement, to indemnify and save harmless Railroad, and any associated, controlled or affiliated corporation, from and against the consequences of any and all such loss, injury or damage, whether or not negligence of Railroad may have caused or contributed to such loss, injury or damage.

2883-228

THIS SUPPLEMENTAL AGREEMENT, made between

SOUTHERN RAILWAY COMPANY, a Virginia corporation, its successors and assigns, hereinafter styled Railroad, party of the first part; and

W. R. GRACE & CO., a Connecticut corporation, hereinafter styled Industry, party of the second part;

W I T N E S S E T H: That

WHEREAS, under the terms and conditions of that certain written agreement (hereinafter referred to as "Agreement") between the parties hereto dated December 15, 1980, Railroad operates an existing industrial track at NATKA, South Carolina to serve the business of Industry; and

WHEREAS, Industry has, at its own cost and expense, constructed an additional industrial track, 477 feet, more or less, in length, springing from said existing industrial track and the parties hereto enter into this supplemental agreement to provide for the operation of said additional industrial track;

NOW, THEREFORE, the PARTIES HERETO agree as follows:

1. Railroad will operate said additional industrial track upon all of the terms and conditions and subject to all of the provisions of said Agreement, as herein modified; the location of said additional industrial track being substantially as shown in red on print of Drawing No. AC-0020-R1, dated March 2, 1983, revised June 26, 1983, annexed hereto and made a part of this supplemental agreement.

2. Industry hereby guarantees to Railroad the right to operate any portion of said additional industrial track which may be located beyond the limits of the right of way of Railroad, or upon or across any public highway.

3. Title said said additional industrial track is vested in Industry and Industry shall maintain the same in all respects in accordance with the provisions of Article 3 of Exhibit "A" of said Agreement.

4. This supplemental agreement shall be effective as of the 1st day of September , 19 83, is supplemental to said Agreement and modifies

2883-228



2883-228

THIS SUPPLEMENTAL AGREEMENT, made between          2883-228

SOUTHERN RAILWAY COMPANY, a Virginia corporation, hereinafter called
Railroad; and

W. R. GRACE & CO-CONN, a Connecticut corporation, hereinafter called
Industry; and    (formerly W. R. Grace & Co.)

## W I T N E S S E T H: That

The parties hereto agree that, effective as of the ___17th___ day
of ___SEPTEMBER___, 1990____, the written agreement dated December 15,
1980, between Railroad and Industry concerning the operation and maintenance
of an industrial track 1678 feet in length at NATKA, South Carolina as
supplemented by agreement dated November 7, 1983 to provide for an additional
track 477 feet in length, (hereinafter together referred to as "Agreement") is
hereby modified in the following manner, but not otherwise, that is to say:

1.    Railroad hereby grants unto Industry the right or license to
construct, maintain and use an overhead loading structure with retractable
loading spout, hereinafter called "Facility," across and over an industrial
track of Industry; the location of said Facility being substantially as shown
on print of Drawing No. AD-0102, dated June 14, 1990, annexed hereto and made
a part hereof.

2.    Industry will construct and maintain said Facility at all times,
during the life of said Agreement, at its sole cost and expense, in strict
accord with plans and specifications (if any) shown and noted on said annexed
print and such other specifications as may be reasonably prescribed by
Railroad, and, moreover, in all respects in accordance with the requirements
of Railroad; it being understood that the work of constructing and maintaining
said Facility shall, at all times during its progress, be subject to the
inspection and supervision, and upon its completion to the approval, of the
duly authorized representative of Railroad.

3.    Industry will maintain said Facility at all times during the
life of said Agreement in such condition that said Facility or the use thereof
by Industry shall not be or become an obstruction to, or interfere with, the
safe and proper maintenance of said industrial track, or railroad operations
upon said track, or endanger life or limb of employees of Railroad or other
persons on or about said track.

4.    Said Facility shall be maintained at the location indicated upon
said annexed print, and shall not be relocated without the consent, in
writing, of Railroad.

5.    Industry proposes to construct, maintain and use said Facility
with full cognizance of the risk of loss of life, personal injury or property
loss or damage which may be caused by or result from railroad operations on
said industrial track at the location of said Facility, or which may accrue
from or by reason of the construction, installation, maintenance, presence or
use of said Facility by Industry; and Industry covenants that said Facility
shall be constructed, maintained and used solely at the risk of Industry, and
that neither Railroad, nor any associated, controlled or affiliated
corporation, shall assume any responsibility in the premises: Industry hereby
specifically agreeing, notwithstanding any other provisions of said Agreement,
to indemnify and save harmless Railroad, and any associated, controlled or
affiliated corporation, from and against the consequences of any and all such
loss, injury or damage, whether or not negligence of Railroad may have caused
or contributed to such loss, injury or damage.

6.    This agreement is supplemental to said Agreement and modifies
the same as herein provided, but not otherwise, and said Agreement, as herein
modified, shall continue in effect until terminated as therein provided.





# Exhibit E

employment for the Defendant were in furtherance of interstate commerce or directly or closely affected interstate commerce.

4.      This action is brought pursuant to the provisions of the Federal Employers Liability Act, 45 U.S.C., §51, et seq.

## II. FACTS

5.      On January 23, 1998, the Plaintiff was employed as a conductor on a train being operated by the Defendant, Norfolk Southern Railway Company, near Warrenville, South Carolina. As part of the Plaintiff's duties, he was attempting to release a handbrake on a railroad car in the course of switching operations. The handbrake was in a defective condition and would not release when the Plaintiff applied it properly. As the Plaintiff attempted to release the defective handbrake, he slipped in a slick and dangerous substance which had been allowed to cover the rail car on which the handbrake was located. When he slipped, he fell from the rail car and landed on the ground suffering severe and permanent injuries to his back and hand.

6.      Following his injuries, the Plaintiff continued to try to perform his job. On January 26, 1998, he was again attempting to apply a handbrake on a rail car which was located at the Aiken Depot, near Aiken, South Carolina. This car was covered with a clay like slick and dangerous substance. While attempting to apply this handbrake, the Plaintiff slipped and reinjured his back and aggravated the previous injury which he had suffered to his back.

## III. COUNT ONE (JANUARY 23, 1998 INJURY)

7.      All of the Plaintiff's injuries and damages were caused, in whole or in part, by the negligence of the Defendant, its agents, servants or employees while acting within the line and scope of their employment for said Defendant, or by reason of a defect or insufficiency due to the

2

## VIII.  DAMAGES

12.    The Plaintiff avers that as a result, in whole or in part, of the Defendant's negligence, he has suffered and seeks to recover for the following special injuries and damages:

      (a)    Past lost wages and benefits;

      (b)    Future lost wages and benefits;

      (c)    Permanent impairment of his ability to earn a living;

      (d)    Past medical expenses;

      (e)    Future medical expenses.

13.    The Plaintiff avers that as a result, in whole or in part, of the Defendant's negligence, he has suffered and seeks to recover for the following general injuries and damages:

      (a)    Past physical pain and mental anguish;

      (b)    Future physical pain and mental anguish;

      (c)    Permanent physical disability;

      (d)    Inability to carry out and enjoy the usual and normal activities of life.

14.    The Plaintiff seeks to recover a sum that will fully and fairly compensate him for his special and general damages.  Because of the severity of his injuries, the Plaintiff expects such fair compensation to be in excess of Two Million Dollars ($2,000,000.00).

## IX.  JURY DEMAND

15.    The Plaintiff demands a trial by a jury.


WHEREFORE, the Plaintiff prays for a trial by jury, that summons issue, that judgment be entered in favor of him and against the Defendant and that the following relief be granted:

4

# Exhibit F

IN THE STATE COURT OF BIBB COUNTY
STATE OF GEORGIA

LESTER E. KIRKLAND, JR.,                      :

        Plaintiff,                            :

                       :

vs.                                           :            CIVIL ACTION NO. 45273

NORFOLK SOUTHERN RAILWAY                      :
COMPANY,                                      :

        Defendant.                            :

---

## JURY VERDICT

We, the jury, find for the:

( X )   Plaintiff in the amount of $ 1,924,500 .00

OR

(   )   Defendant.

This 21st day of March, 2001.

FILED IN OFFICE
21st DAY OF March 2001
_Deputy Clerk_

_Terry L. Jenkins_
Foreperson

MAR.20.2003  11:07AM  HBGM                                            NO.269  P.3

RECEIVED
STATE COURT OF
IN THE STATE COURT OF BIBB COUNTY    BIBB COUNTY GEORGIA
STATE OF GEORGIA

2001 JUL 11 AM 11: 33

~Signature~
CLERK STATE COURT

LESTER E. KIRKLAND, JR.,                  :

    Plaintiff,                                   :
                                                    :
vs.                                                 :
                                                    :     CIVIL ACTION
NORFOLK SOUTHERN RAILWAY         :     NO. 45273
COMPANY,                                        :
                                                    :
    Defendant.                                  :

### PLAINTIFF'S SATISFACTION OF JUDGMENT AND DISMISSAL OF ACTION

The above styled matter having been settled by and between the parties, the Clerk is

hereby authorized to mark "Satisfied of Record" the judgment entered in this case dated

March 21, 2001 and to dismiss this action upon payment of costs by Defendant.

This ___6___ day of July, 2001.

~Signature~

JAMES H. WETTERMARK
Attorney for Plaintiff

Burge & Wettermark
2300 SouthTrust Tower
420 North 20th Street
Birmingham, AL 35203-3204

STATEMENT OF CHARGES DUE NORFOLK SOUTHERN RAILWAY COMPANY
FOR THE ACCOUNT OF W R GRACE
AS COVERED BY BILLS LISTED BELOW:

UN 792
CUSTOMER NUMBER 003600
Accruing Station: Various

| Freight Bill # | FB Date | Waybill # | Waybill Date | Amount Billed | Amount Paid | Correction | Net Amt. Due |
|---|---|---|---|---|---|---|---|
| Pre-petition | | | | | | | |
| 6229247419 | 8/16/00 | 801213 | 8/15/00 | $970.00 | $0.00 | $0.00 | $970.00 |
| 6318590884 | 11/13/00 | 901541 | 11/10/00 | $250.00 | $0.00 | $0.00 | $250.00 |
| 7057520946 | 2/26/01 | 841393 | 2/21/01 | $4,820.35 | $0.00 | $0.00 | $4,820.35 |
| 7071431096 | 3/12/01 | 843174 | 3/6/01 | $4,923.70 | $0.00 | $0.00 | $4,923.70 |
| 7082184937 | 3/23/01 | 844720 | 3/16/01 | $4,889.25 | $0.00 | $0.00 | $4,889.25 |
| 7091351826 | 4/2/01 | 888455 | 1/25/01 | $4,562.22 | $0.00 | $0.00 | $4,562.22 |
| **Total** | | | | **$20,415.52** | **$0.00** | **$0.00** | **$20,415.52** |

Page: 1 Document Name: untitled

```
                              Print
D494              * *  Display / Print / Fax / Memo Invoice  * *              GBQ34
+-----------------------------------------------------+ Screen 1     of 4    +
                         Norfolk Southern Corporation
Invoice: 1102001401  Date: 2001-02-08  Account: QG8252      Bill: M12703
Bill to: W R GRACE COMPANY
         ATTN  MR MARTIN BOURQUIN
         DAVISON CHEMICAL DIVISION
         4000 NORTH HAWTHORN STREET
         CHATTANOOGA, TN 37406
Description of Work:
         TO BILL FOR EXPENSES INCURRED BY NORFOLK SOUTHERN FOR
         ENVIROMENTAL CLEAN-UP BY FERGUSON-HARBOUR
         AT CHATTANOOGA, TN 7-21-00
         NS BILL # M12703     BJA

Please PAY this Amount:          $1,202.00




F1=Help                  F3=High Keys
         F8=Forward
                              F10=MainMenu F11=PrevMenu F12=PrevScrn
                                                06/05/01 12:52:04
```

Date: 6/5/2001 Time: 12:54:23 PM