IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | (Jointly Administered) |
| | ) | |
| W.R. Grace & Co., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | |

## ANDERSON MEMORIAL HOSPITAL'S PRE-TRIAL SUBMISSION

Anderson Memorial Hospital ("Anderson") hereby files its Pre-trial Submission pursuant to

the Order regarding Phase II Pretrial Procedures, dated July 7, 2009 [Doc. 22351].

**I.    INTRODUCTION**

1.    Anderson has filed Objections to Confirmation of Debtors' First Amended Joint Plan

("Objections"), in which it asserts, *inter alia*:

> The Debtors' Plan cannot be confirmed because it violates the fundamental tenet of
> "equality of treatment" required of any bankruptcy plan, it fails to afford creditors in
> the same class the same treatment, it improperly classifies creditors who are
> subjected to disparate treatment in the same class, it improperly releases third parties,
> it is not proposed in good faith, and it does not comply with the requirements of the
> Bankruptcy Code.[1]

2.    Although the Debtors ("Grace") told this Court at the beginning of this bankruptcy

that Anderson's 1992 lawsuit would be returned to the tort system,[2] Grace's First Amended Joint

Plan ("Plan") proposes that *only* Anderson and its witnesses must travel over 600 miles for a nonjury

trial by the Bankruptcy Court.   At the same time, according to Grace, a "substantial" number of

traditional PD claims that are "likely" to be filed after the Effective Date, will have the opportunity

---

[1][Doc. 21782 at 1].

[2][Doc. 587 at 47].

to return to the tort system;[3] present and future personal injury ("PI") claims will be determined by

a trust in accordance with procedures written by the personal injury ("PI") attorneys and interpreted

by Trustees of their choice and later have the opportunity to return to the tort system; and present and

future Zonolite Attic Insulation ("ZAI") claims will be determined in accordance with procedures

written by ZAI's class counsel.

  3.  Grace has filed a Motion for Protective Order to prevent Anderson from taking the

deposition of its General Counsel, Mark Shelnitz, which is scheduled for argument on July 27, 2009.

Mr. Shelnitz was the person at Grace "primarily responsible" for the restructuring effort. [Deposition

of Richard Finke (September 30, 2008) (Doc. 21259) at 171]. Upon information and belief, Mr.

Shelnitz has had more involvement in Grace's decisions regarding the litigation against and the

proposed treatment of PD claims in general and Anderson in particular than any other Grace official.

Apparently Mr. Shelnitz, or someone to whom he reported, approved and/or promoted Grace's 2005

decision to smear S&R and therefore all other property damage claimants through a series of *ex parte*

and false attacks to gain some advantage with this Court, personally attending the primary hearing

where this effort was advanced, and the disposition of PD claims was converted from a concise

estimation proceeding to an objections proceeding, without due notice to Anderson or other PD

claimants. [Hearing (July 19, 2005) (Doc. 9105)]. Mr. Shelnitz was also a member of the Grace

team which negotiated the Plan with the PI Committee and Equity (PD was excluded). Mr. Shelnitz

---

  [3]Grace's expert, Dr. Denise Martin, has opined in her report that "Grace Is Likely To Be Subject To Substantial Future Property Damage Demands" [Doc. 21033 at 4]. According to Dr. Martin, "more than 140,000 steel-frame building projects are estimated to have occurred over the period from 1959 through 1973," and "more than 324,000 construction projects involving the types of buildings in which acoustical plaster would have been used are estimated to have occurred over the period from 1940 through 1973." [Id. at 6].

was also the senior Grace representative who negotiated the ZAI settlement with Ed Westbrook and Darrel Scott, who represented several ZAI claimants, rather than the PD Committee, which represented all ZAI claimants. In summary, Mr. Shelnitz is the one Grace official in a position to explain Grace's justification for the disparate treatment of Anderson in the Plan. Consequently, Anderson cannot finally decide which issues it wants to present or which witnesses and exhibits it will use until it takes Mr. Shelnitz's deposition. Moreover, in the event the Motion for Protective Order is granted, Anderson will serve a 30(b)(6) deposition seeking the same information. Anderson reserves its right to supplement this Pre-Trial Submission after it is permitted to take this discovery.

4.      In addition, on May 21, 2009, Anderson noticed the deposition of Dr. Thomas Florence to be taken on June 2, 2009, before the expiration of non-feasibility Phase II discovery. Upon information and belief, Dr. Florence is an important witness to demonstrate the disparity between the treatment of asbestos PI and PD claims. Subsequently, Grace informed Anderson that it would not go forward on that date with the deposition, but would make Dr. Florence available on July 8, 2009. Anderson then re-noticed Dr. Florence's deposition for July 8, 2009. Thereafter, without prior consultation with Anderson, Grace changed the deposition until August 11, 2009. Consequently, Anderson will not be able to take this discovery for another three weeks (almost 12 weeks after it noticed the deposition). Anderson reserves its right to supplement this Pre-Trial Submission after it is permitted to take this discovery.

5.      Finally, in accordance with the Court's Third Amended Case Management Order Related to the First Amended Plan of Reorganization, trial briefs and final plan objections regarding feasibility issues are not due until August 25, 2009. Because discovery with respect to the Plan's feasibility has not yet begun, Anderson is not now in a position to make a complete pretrial statement

on feasibility issues. Therefore, this Pretrial Statement may be significantly modified after the completion of feasibility discovery, and Anderson reserves the right to identify additional issues relating to feasibility when the trial briefs and final plan objections are due. Anderson also reserves the right to join in any issues identified by other parties, and to supplement this statement after the Plan Proponents have filed their trial brief.

## II.    STATEMENT OF ISSUES

1.    Whether the Plan fails to provide for "equality among creditors," particularly with respect to the treatment of the Anderson claims.

2.    Whether the Plan fails to provide for the same treatment for each claim or interest of a particular class, unless the holder of the claim has agreed to less favorable treatment, as required by 11 U.S.C. § 1123(a)(4), particularly with respect to the treatment of the Anderson claims.

3.    Whether the Plan's classification scheme is improper because claimants in the same class (Class 7) are subject to disparate treatment.

4.    Whether the solicitation of votes for Class 7 is invalid because claims subject to disparate treatment have been classified together.

5.    Whether the solicitation of votes for Class 6 is invalid because the Court never established a claims bar date for Personal Injury Claims, and accordingly has not determined the universe of potentially allowable Class 6 Claims.

6.    Whether reliance on Class 6 as an impaired accepting class for purposes of confirmation is improper because of the invalidity of the solicitation of Class 6 claims.

7.    Whether the Asbestos PD Trust proposed in the Plan satisfies the requirements of 11 U.S.C. § 524(g).

8.      Whether it is improper to channel Property Damage claims and demands to a § 524(g) trust where all resolved Property Damage claims will be paid on the effective date, and the Plan Proponents contend that no unresolved Property Damage claims and demands will ultimately be allowed.

9.      Whether it is improper to channel Property Damage claims and demands to a § 524(g) trust where the Plan Proponents contend that such claims and demands will be unimpaired under the Plan.

10.     Whether the multiple-trust structure of the Plan is prohibited by 11 U.S.C.§ 524(g).

11.     Whether the Plan, notwithstanding the Plan Proponents' contentions, impairs Class 7A claims, including by (a) failing to pay interest on such claims, notwithstanding the Plan's preservation of valuable equity interests; and (b) altering the means by which Anderson may pursue its claim post-confirmation.

12.     Whether the Plan Proponents failed to properly solicit the votes of impaired Class 7A claimants for purposes of confirmation of the Plan, rather than exclusively for purposes of 11 U.S.C. § 524(g).

13.     Whether Anderson's claims should be separately classified due to the disparate treatment of the claims; and if so, whether the Plan does not unfairly discriminate and is fair and equitable with respect to such claims.

14.     Whether the Plan fails to provide US ZAI claimants who opt out of the US ZAI Class Settlement with a meaningful opportunity to opt out of the US ZAI Class.

15.     Whether ZAI opt-outs should be separately classified from Class 7B for purposes of voting and treatment under the Plan, including being permitted to pursue their claims outside of the

ZAI Trust Distribution Procedures.

16.     Whether the release and exculpatory provisions in Sections 8.8.7 and 11.9 of the Plan are overbroad and improper under applicable standards.

17.     Whether the Plan was not filed in good faith under 11 U.S.C. § 1129(a)(3).

## III.   LIST OF WITNESSES

1.     David T. Austern (by deposition).  Anderson may publish that portion of his deposition taken by Anderson's counsel regarding the history of the Plan and the FCR's position regarding PD claims.

2.     Dr. Morton Corn (by deposition or prior trial testimony).  Anderson may publish portions of Dr. Corn's prior testimony on the issue of feasibility, but it cannot make that decision until it is made aware of what testimony and other evidence Grace will introduce in attempting to meet its burden of establishing Plan feasibility.

3.     Dr. John E. Craighead (by deposition or prior trial testimony).  Anderson may publish portions of Dr. Craighead's prior testimony on the issue of feasibility, but it cannot make that decision until it is made aware of what testimony and other evidence Grace will introduce in attempting to meet its burden of establishing Plan feasibility.

4.     William M. Ewing.  Anderson may call Mr. Ewing on the issue of feasibility, but it cannot make that decision until it is made aware of what testimony and other evidence Grace will introduce in attempting to meet its burden of establishing Plan feasibility.

5.     Richard Finke (by deposition).  Anderson may publish portions of Mr. Finke's deposition dealing with the history and treatment of Anderson prior to and during the bankruptcy and general asbestos property damage issues.

6.     B. Thomas Florence (by deposition).  Grace has unilaterally postponed Dr. Florence's deposition until August 11, 2009.

7.     John P. Freeman.  Anderson has not made a decision on whether to call Mr. Freeman pending the deposition of Mr. Shelnitz.  If Mr. Freeman testifies, he may testify regarding Grace's actions against Anderson and its counsel before and during the bankruptcy.

8.     Dr. Edward A. Gaensler (by deposition or prior trial testimony).  Anderson may publish portions of Dr. Gaensler's prior testimony on the issue of feasibility, but it

cannot make that decision until it is made aware of what testimony and other evidence Grace will introduce in attempting to meet its burden of establishing Plan feasibility.

9.    W. D. Hilton, Jr. (live or by deposition). Mr. Hilton may testify as to the processing of Anderson's claims in the Celotex Bankruptcy.

10.    Jay Hughes (by deposition). Anderson may publish portions of Mr. Hughes' deposition dealing with data bases and indices to Grace's documents.

11.    Elihu Inselbuch (by deposition). Anderson may publish portions of Mr. Inselbuch's deposition dealing with negotiations and the operation of the Trust Distribution Procedures.

12.    Dori Kuchinsky (by deposition). Anderson may publish portions of Ms. Kuchinsky's deposition regarding the history and activities of the Safe Buildings Alliance.

13.    Hudson LaForce. The evidence which will be given by Mr. LaForce is unknown since his deposition has not yet occurred. It is anticipated that Mr. LaForce will testify live at the Phase II confirmation hearing, although if he does not do so, Anderson reserves the right to call Mr. LaForce by deposition.

14.    Peter Lockwood (by deposition). Anderson may publish portions of Mr. Lockwood's deposition dealing with the development of the Bankruptcy Plan in regard to asbestos claims, including the history of negotiations and the ACC's position on certain provisions of the Plan regarding PD claims.

15.    Denise Neumann Martin, Ph.D. (by deposition). Anderson's understanding is that Dr. Martin will testify at the confirmation hearing, and if that is correct, Anderson does not intend to publish any portions of her deposition, although it may use the same for cross-examination.

16.    Mark A. Peterson (by deposition). Anderson's understanding is that Dr. Peterson will testify at the confirmation hearing, and if that is correct, Anderson does not intend to publish any portions of his deposition, although it may use the same for cross-examination.

17.    Jeffrey Posner (by deposition). Anderson may publish portions of Mr. Posner's deposition dealing with reserves in general and specifically for Anderson and the treatment of property damage insurance under the plan.

18.    Darrell W. Scott (by deposition). Anderson may publish portions of Mr. Scott's deposition dealing with the negotiation and treatment of ZAI claims.

19.     Mark Shelnitz (live or by deposition).  Anderson's Notice of Deposition of Mr. Shelnitz is the subject of a Motion for Protective Order.

20.     Gibson Solomons.  Anderson has not made a decision on whether to call Mr. Solomons pending the deposition of Mr. Shelnitz.  If Mr. Solomons testifies, he may testify regarding statements made by Grace's counsel about its purpose in attacking Speights & Runyan.

21.     James Verhalen (by deposition).  Anderson may publish portions of Mr. Verhalen's prior testimony on the issue of feasibility, but it cannot make that decision until it is made aware of what testimony and other evidence Grace will introduce in attempting to meet its burden of establishing Plan feasibility.

22.     Dr. Hans Weill (by deposition or prior trial testimony).  Anderson may publish portions of Dr. Weill's prior testimony on the issue of feasibility, but it cannot make that decision until it is made aware of what testimony and other evidence Grace will introduce in attempting to meet its burden of establishing Plan feasibility.

23.     Edward J. Westbrook (by deposition).  Anderson may publish portions of Mr. Westbrook's deposition dealing with the negotiation and treatment of ZAI claims.

24.     Pamela Zilly.  The evidence which will be given by Ms. Zilly is unknown since her deposition has not yet occurred.  It is anticipated that Ms. Zilly will testify live at the Phase II confirmation hearing, although if she does not do so, Anderson reserves the right to call Ms. Zilly by deposition.

Anderson reserves the right to call any witness listed by any other party, any witness identified in further discovery, any witness to refute or explain matters revealed in subsequent discovery or argument, and any witness it identifies in connection with feasibility.  Anderson also reserves the right to call any party (including its counsel) as a witness.

## IV.   LIST OF EXHIBITS

In addition to those items already a part of the record in this case, including the record in the

Bankruptcy Court, the District Court, and the Court of Appeals, Anderson may offer the following

exhibits:

| DATE | DESCRIPTION |
| --- | --- |
| 1984 | Dupre, J.S., Mustard, J.F. and Uffen, R.J. (Editors) Report of the Royal Commission |

on Matters of Health and Safety Arising from the Use of Asbestos in Ontario

01/09/84       Excerpt of Hearing in the Greenville Schools case.

06/07/84       Memo to the Grace Team

02/00/88       EPA Study of Asbestos-Containing Materials in Public Buildings - A Report to Congress

06/01/88       EPA Final Report entitled "Assessing Asbestos Exposure in Public Buildings" (GSA Building Study)

               Asbestos in Public and Commercial Buildings: Supplementary Analysis of Selected Data Previously Considered by the Literature Review Panel by HEI-AR (Health Effects Institute-Asbestos Research)

               "Exposure to Airborne Asbestos in Buildings." R.J. Lee, D.R. Van Orden, M. Corn, K.S. Crump (Results of air sampling in 315 buildings). Regulatory Toxicology and Pharmacology.

06/28/89       Harvard University, Summary of Symposium on Health Aspects of Exposure to Asbestos in Buildings, Proteau, M.D.

06/29/89       The New England Journal of Medicine article titled, "Asbestos-Related Disease" B. T. Mossman, Ph.D., and J. Bernard L. Gee, M.D.

01/19/90       "Asbestos: Scientific Developments and Implications for Public Policy." B.T. Mossman, J. Bignon, M. Corn, A. Seaton, and J.B.L. Gee Science 247, 294-301

1990           Article entitled "The Safe Buildings Alliance: For Whose Safety?" published in the July/August 1990 issue of Asbestos Abatement

07/00/90       Managing Asbestos In Place: A Building Owner's Guide to Operation and Maintenance Program for Asbestos-Containing Materials (U.S. E.P.A.) (Green Book)

09/07/90       Green Book cover letters addressed to "Interested Party School Official Training
09/18/90       Provider from Michael M. Stahl
09/27/90

12/00/90       Federal Register, 40 C.F.R. Part 61, "National Emission Standards for Hazardous Air Pollutants; Asbestos NESHAP" prepared by the U.S. EPA

12/20/90       Letter from Michael M. Stahl, Director Environmental EPA Assistance Division,

EPA, to Harold J. Engel

| | |
|---|---|
| 1991 | Asbestos in Public and Commercial Buildings: A Literature Review and Synthesis of Current Knowledge.  Health Affects Institute - Asbestos Report. |
| 1991 | "Airborne Concentrations of Asbestos in 71 School Building" M. Corn, R.J. Lee, D.R. Van Orden, M. Corn, K.S. Crump.  Regulatory Toxicology and Pharmacology |
| 00/06/91 | American Industrial Hygiene Association (AIHA). Association News and Information news release entitled, "AIHA Statement on the Removal of Asbestos-Containing Materials From Buildings."  Attached is AM Ind Hyg Assoc.J article entitled the same. |
| 02/11/91 | Letter from Robert McNally, Chief, Assistant Programs Development Branch, Environmental Assistance Division EPA, to School Schneider |
| 04/02/91 | William K. Reilly of U.S. Environmental Protection Agency re "The Facts About Asbestos-In-Buildings" - An Advisory to the Public, dated 03/06/91; EPA An Advisory to the Public Asbestos in Buildings, 56 Fed. Reg. 13, 472 |
| 08/07/91 | JAMA Asbestos Removal - Council on Science Affairs article titled, "Asbestos Removal, Health Hazards, and the EPA" |
| 08/07/91 | AMA Council Report: Asbestos Removal, Health Hazards and the EPA (August 7, 1991) |
| 09/25/91 | BOMA press release entitled, "BOMA International Welcomes Research Findings" |
| 1992 | "Airborne Asbestos Levels in Buildings: Maintenance Worker and Occupant Exposures."  B. Price, K.S. Crump, and E.C. Baird, III |
| 1992 | "Exposure Inferences from Airborne Asbestos Measurements in Buildings." B. Price and K.S. Crump.  IAQ 92 Environments for People |
| 1992 | Gaensler, E.A., "Asbestos Exposure in Buildings," Clinics in Chest Medicine |
| 02/12/92 | Mortgage Bankers Association of America "Issue Paper - Asbestos Standards" |
| 07/30/92 | Letter from Linda J. Fisher, Assistant Administrator to Ms. Marlene E. Marschal, Minnesota Department of Health |
| 10/05/93 | Federal Register, Vol. 58, No. 191, Environmental Protections Agency 40 C.F.R. Part 61, entitled "Asbestos NESHAP Clarification of Intent" pages 51784-51785. |

Anderson's Certification Briefs in the South Carolina Circuit Court 1998-2001

Grace's Certification Briefs in the South Carolina Circuit Court 1998-2001

| | |
|---|---|
| 03/25/99 | W.R. Grace's Trial Brief in <u>W.R. Grace & Co.-Conn. v. State of North Dakota and Heidi Heitkamp, Attorney General for the State of North Dakota</u>, State of North Dakota, District Court, County of Burleigh, South Central Judicial District, Case No. 94-C-2079 |
| 09/2000 | Transcript of the proceedings and exhibits entered into evidence on Anderson's Motion to Certify in the Court of Common Pleas for Hampton County in September 2000 |
| 04/–/01 | United States Trustee's File relating to the formation of the Asbestos Property Damage Committee |
| 2002 | Bar Date Pleadings from <u>In Re: Federal-Mogul Global, Inc., Debtors</u>, Chapter 11, Case No. 01-10578 (JKF) (U.S. Bankruptcy Court, District of Delaware) |
| 07/03/02 | Complaint filed in <u>In Re: The Celotex Corporation and Carey Canada Inc./ Asbestos Settlement Trust v. Anderson Memorial Hospital.</u>, Bankr.M.D.Fla., Case Nos. 90-10016-8B1/Adv. No. 02-521 |
| 2003 | Bar Date Pleadings from <u>In Re: U.S. Mineral Products Company, Debtors</u>, Chapter 11, Case No. 01-2471-JKF (U.S. Bankruptcy Court, District of Delaware) |
| 02/06/04 | Joint Motion of the Legal Representative and Trust Advisory Committee to Intervene in Adversary Proceeding No. 02-521, <u>In Re: The Celotex Corporation and Carey Canada Inc./ Asbestos Settlement Trust v. Anderson Memorial Hospital.</u>, Bankr. M.D.Fla., Case Nos. 90-10016-8B1/Adv. No. 02-521 |
| 08/16/05 | Affidavit of John Freeman |
| 08/20/06 | Affidavit of Gibson Solomons |
| 04/21/08 | Order on Asbestos Settlement Trust's Motion Seeking Instructions Regarding Payment of Fifty-two Asbestos Property Damage Claims Submitted by Anderson Memorial Hospital, <u>In Re: The Celotex Corporation and Carey Canada Inc./ Asbestos Settlement Trust v. Anderson Memorial Hospital.</u>, Bankr.M.D.Fla., Case Nos. 90-10016-8B1/Adv. No. 02-521 |

Emails to and from Debtors and their counsel

Grace documents demonstrating its market share.

DATED:  July 20, 2009

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile (302) 654-0728
E-mail: loizides@loizides.com

SPEIGHTS & RUNYAN
Daniel A. Speights (SC Fed. ID No. 4252)
C. Alan Runyan (SC Fed ID No.3683)
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC 29924
Telephone: (803) 943-4444
Facsimile: (803) 943-4599

KOZYAK TROPIN & THROCKMORTON, P.A.
John W. Kozyak
David L. Rosendorf
2525 Ponce de Leon, 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

*Counsel for Anderson Memorial Hospital*