## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF)<br>(Jointly Administered) |
| Debtors. | **Hearing Date: August 24, 2009 at 10:30 a.m. (ET)**<br>**Objections Due: August 7, 2009 at 4:00 p.m. (ET)** |

### LIBBY CLAIMANTS' MOTION TO STRIKE, OR ALTERNATIVELY TO LIMIT AND ALLOW FOR THE REBUTTAL OF, THE EXPERT TESTIMONY OF GARY FRIEDMAN, M.D.

The claimants injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants"),[1] by and through their counsel, Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP, hereby move this Court to strike the expert testimony of Gary Friedman, M.D. on the same basis that this Court has ruled that the testimony of Dr. Whitehouse must be limited: failure to produce medical records that contributed to formation of Dr. Friedman's opinions.

### INTRODUCTION

1.      On April 9, 2009, Arrowood Indemnity Company, f/k/a/ Royal Indemnity Company, filed a "Motion to Strike Dr. Whitehouse Expert Report or, Alternatively, Compel the Production of Documents and Databases on Which He Relies and for Entry of a Confidentiality Order" (D.I. 21245).  The matter was heard on May 14, 2009,[2] after which this Court entered the "Modified Order Granting in Part Motion of Arrowood Indemnity Company, f/k/a/ Royal

---

[1]   As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [D.I. 21365], as it may be amended and restated from time to time.

[2]   Debtors W.R. Grace ("Grace") supported Arrowood's motion with a brief and argument (May 8, 2009, D.I. 21591).  Insurers Maryland Casualty Company ("MCC") (April 30, 2009, D.I. 21492) and Continental Casualty Company ("CCC") (May 4, 2009, D.I. 21523) also joined the motion.  At the hearing, fellow Plan Proponents Official Committee of Asbestos Personal Injury Claimants ("ACC") and the Asbestos PI Future Claimants'

Indemnity Company to Strike Whitehouse Expert Report or, Alternatively, Compel the
Production of Documents and Databases on Which He Relies and for Entry of a Confidentiality
Order." (D.I. 21874) ("Modified Order").  The Modified Order hinges Dr. Whitehouse's ability
to testify as an expert in this case on the production of medical records regarding all 1,800 Libby
asbestos patients.[3]  Undisputed is that almost half of those 1,800 patients (850) are not among the
Libby Claimants who are parties in this case, and that the 850 non-claimants represent merely the
clinical background of asbestos patients treated by Dr. Whitehouse in Libby.[4]

      2.      Libby Claimants have filed a "Motion to Reconsider [the Modified Order]." (D.I.
22017) ("Motion to Reconsider").[5]  The Motion to Reconsider asserts, among other bases for
reconsideration, that: (1) Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(B) does not require
a treating physician like Dr. Whitehouse to produce expert reports or medical records regarding
his patients, be they claimants or non-claimants; and (2) even if physicians like Dr. Whitehouse
must produce medical records as part of their reliance materials pursuant to FRCP 26(a)(2)(B),
Dr. Whitehouse's specific opinions in this case do not rely upon (i.e. depend, relate to, or derive
from) his entire clinical background, but should instead be considered limited under the rule to

---

Representative ("FCR") orally joined the motion.  Collectively, Arrowood, Grace, MCC, CCC, ACC, and FCR, are
hereinafter referred to as "Movants."

[3]  The Modified Order states in relevant part:

> It is FURTHER ORDERED, that medical records ("the records") for any individual in the
> population of 1800 patients whose medical records have not yet been produced to the Plan
> Proponents or other requesting parties must be produced by May 21, 2009, regardless of whether
> or not such individual is a claimant in these bankruptcy proceedings. . . . Failure to produce a
> complete set of these medical records will bar Dr. Whitehouse from offering any expert opinion
> that was formed based upon reliance, in whole or in part, on the records.

[4]  All references to 1,800 patients by the Court and Movants (and any basis for finding reliance upon 850 non-
claimants) stem exclusively from one simple statement in the Report of Dr. Alan C. Whitehouse, 12/29/08, ¶ 2, "I
currently practice chest medicine at the [CARD] in Libby, Montana, where we have over 1,800 active cases of
asbestos disease from exposure to Libby asbestos." Nothing in any of Dr. Whitehouse's reports or other parts of the
record suggests that Dr. Whitehouse actually relied upon or even looked at patient records of the 850 non-claimants
in relation to this case, i.e. in his capacity as a litigation expert.

[5]  *See also* Libby Claimants' Reply Brief in Support of Motion to Reconsider.  (D.I. 22466).  Briefs opposing the
Motion to Reconsider have been filed by Grace (D.I. 22388) and Arrowood (D.I. 22390).

the 950 Libby Claimants in this case and the other reliance materials identified in his expert reports and which records have been produced. The Motion to Reconsider is pending.

3.      The Libby Claimants hereby file this Motion to Strike, or Alternatively to Limit and Allow for the Rebuttal of the Expert Testimony of Gary Friedman, M.D. ("Motion to Strike") based on principles requiring consistency throughout this case based upon the Court's rulings and interpretations of a medical expert's obligations pursuant to FRCP 26(a)(2)(B). As set forth below, Dr. Friedman should be held to the same (or higher)[6] standard relied upon by this Court and applied to Dr. Whitehouse.

4.      At present, the Court's rulings reflect that a medical expert must produce medical records regarding the asbestos patients they have treated or seen and which form the basis of their medical expertise in asbestos disease. If the Motion to Reconsider is granted and clarifies that all of Dr. Whitehouse's expert testimony is not tied to the production of records regarding hundreds of asbestos patients whose claims are not at issue in this case and which have not been specifically relied upon by Dr. Whitehouse for his opinions in this case, Libby Claimants reserve the right to amend their Motion to Strike or seek other appropriate relief so that Dr. Friedman's duties of production pursuant to FRCP 26(a)(2)(B) are interpreted in accordance with whatever new standard is set by the Court at such time.

## ARGUMENT

I.      **This Court Must Apply FRCP 26(a)(2)(B) and its Interpretation of What Materials a Medical Expert is Found to Rely Upon Consistently Throughout this Case for All Medical Experts.**

---

[6]  Dr. Whitehouse is on special footing because he is a treating physician. *See Salas v. U.S.*, 165 F.R.D. 31, 33 (W.D.N.Y. 1995) (quoting FRCP 26(a)(2), Advisory Committee's Notes, 1993 Amendment, specifically excluding treating physicians). Dr. Friedman has indisputably been "retained or specially employed to provide expert testimony in the case." FRCP 26(a)(2)(b). Therefore, no treating physician exception that would otherwise mitigate Dr. Friedman's duty of production pursuant to FRCP 26(a)(2) applies.

5.      Dr. Whitehouse's May 14, 2009, report states in relevant part:

¶ 84.   The data and other information considered in forming the above opinions
and observations include:
   a.      Unless otherwise indicated, observations made in litigation
   are based upon the approximately 950 persons with ARD who are
   [Libby Claimants], and specific non-client patients who are listed
   in the documents in ¶ 82, for whom redacted medical records have
   been delivered.  This is a very large number, and provides
   sufficient data to describe all phenomena discussed in this report.

The Court and Movants, however, reject or ignore this definition of what medical records and

which Libby asbestos patients Dr. Whitehouse relies upon for his specific opinions in this case.

Instead, they look beyond the factual record[7] and interpret FRCP 26(a)(2)(B) so as to establish

that Dr. Whitehouse is relying upon all Libby asbestos patients for his opinions in this case.

6.      The Modified Order can only be interpreted as a categorical factual and legal

determination about the broad scope of the concept of "reliance" under FRCP 26(a)(2)(B) in this

case.[8]  It holds that because Dr. Whitehouse intends to offer medical opinions about Libby

asbestos, he "relied upon," for purposes of FRCP 26(a)(2)(B), all of the 1,800 Libby asbestos

patients he has ever treated and their records.  Implicitly, it holds that a doctor who has treated

patients with disease similar to that on which he is offering expert opinions relies upon his

expertise treating all such patients, and is therefore required to produce the records from his

related patient population.

7.      While Libby Claimants wish the Court to reconsider its Modified Order, the

Libby Claimants and all parties remain bound by its effect.  Applying the Modified Order and its

interpretation of FRCP 26(a)(2)(B) to all the medical experts in this case, any doctor intending to

---

[7] *See* fn. 4 above.
[8] None of the Movants ever cited any case applying FRCP 26(a)(2)(B) in this manner to a medical expert, much
less to a treating physician.  Likewise, the Court, both at the May 14 hearing and in its Order, seems to rely on
general principles about an expert's obligations (identified only in FRCP 26), and not on any specific authority.

offer an opinion regarding asbestos disease that was formed based upon reliance, "in whole or in part,"[9] on medical expertise developed while treating or examining patients with asbestos disease must produce the medical records regarding all his or her asbestos patients.

**II.    Dr. Friedman Has Failed to Produce Records on Which He Must Be Recognized to Rely under the Modified Order and FRCP 26(a)(2)(B) in this Case, and Should Therefore be Barred from Offering Any Expert Opinions on Asbestos Disease.**

9.    Dr. Friedman testified at his June 22, 2009, deposition about how his clinical experience with patients is important to his opinions about Dr. Whitehouse:

Q.    During that time between 1973 and 2005, did you treat asbestos patients?
A.    Yes.
         . . . .
Q.    Are you capable of putting any kind of figure on it in terms of gross numbers or a percentage over your 30-plus year career?
A.    Well, I know that over the course of my career we've reviewed—I or members of my clinic that I owned at the time have reviewed radiographs and medical records or performed independent medical examinations or as a treating doctor in the range of 100,000 or so cases.
         . . . .
Q.    Your opinions about Dr. Whitehouse in this case, do they rely upon the knowledge and experience that you've gained in over 30 years of treating asbestos patients?
A.    My opinion of Dr. Whitehouse predominantly relies on my review of his work, publications, depositions, affidavits that he's given and my review of medical literature that he has cited.
         It also relies to some extent on every patient that I've ever seen in my life and my medical school because I learn from every patient whether they're asbestos or not.
         Many of my patients have had pleural or interstitial diseases unrelated to asbestos and I've learned from them as far as the differential diagnosis of those conditions, so, I mean, I think any good doctor learns from everything he does. (14:10—19:8).[10]

10.    Just as Dr. Whitehouse recognized his treatment of 1,800 Libby asbestos patients as part of the information on which he based his clinical opinions regarding Libby asbestos

---

[9]    *See* Modified Order.
[10]    Attached as Exhibit 1 are all portions of the June 22, 2009, deposition which are cited herein.

disease, this testimony reflects that Dr. Friedman's clinical experience with asbestos disease should be considered pursuant to the Modified Order as part of "the data or other information considered by [Dr. Friedman] in forming" his opinions regarding asbestos disease.[11]  Applying the same interpretation of FRCP 26(a)(2)(B) to Dr. Friedman that was used as a basis for the Modified Order regarding Dr. Whitehouse, this Court must recognize that the medical records which have not been produced reflecting Dr. Friedman's clinical treatment of patients with asbestos disease constitute his reliance materials pursuant to FRCP 26(a)(2)(B).  The Plan Proponents, however, have not produced any of the medical records reflecting Dr. Friedman's clinical treatment of patients with asbestos disease.

11.    After having failed to produce medical records reflecting his clinical treatment of patients with asbestos disease, the Modified Order, together with FRCP 26 and FRCP 37, establishes that the sanction for Dr. Friedman's failure to produce his reliance materials is that he shall be barred from offering any opinion regarding asbestos disease.  The basis for this sanction was set forth by Movants and indeed relied upon by the Court when adopting the Modified Order.  It should be applied consistently to Dr. Friedman.

**III.    Even if Dr. Friedman's Expert Testimony is Not Altogether Barred, He Has Failed to Produce Libby Medical Records on Which He Relies and Should be Precluded from Offering Any Opinions Regarding Libby Asbestos Disease.**

12.    Aside from his failure to produce medical records reflecting the basis for his opinions regarding asbestos disease, Dr. Friedman has failed to produce the medical records of specific Libby asbestos patients that he reviewed and on which he relies in this case.  Those particular records form the basis of Dr. Friedman's specific opinions regarding Libby asbestos disease generally, and in specific rebuttal to Dr. Whitehouse's opinions in this case.  As such, the

---

[11]  *See* FRCP 26(a)(2)(B)(ii).

records regarding those Libby asbestos patients must be considered a distinct element among Dr. Friedman's reliance materials pursuant to FRCP 26(a)(2)(B), and likewise under the Modified Order. His failure to produce the records or even to identify the Libby asbestos patients whose records he relies upon means that the Libby Claimants cannot respond to almost all of the opinions that he offers in this case.

13.    Dr. Friedman's opinions in this case consist primarily of criticisms of Dr. Whitehouse's 2004 study regarding Libby lung function loss.[12] They take many forms, but in each case, he fails to produce or adequately identify the Libby patient medical records upon which he relies for his opinions.

14.    First, Dr. Friedman asserts that Dr. Whitehouse's Study contains multiple errors and specific misstatements of fact. However, in almost every case, he fails to identify by name or particular medical record which of the 123 Dr. Whitehouse Study patients he relies upon for his specific opinion.[13] The Libby Claimants cannot evaluate, much less rebut the validity of his opinions without specific identification or production of those records on which Dr. Friedman relies.

15.    Second, Dr. Friedman offers numerous "demonstrative" only examples of errors in Dr. Whitehouse's Study.[14] While he identifies the tip of the iceberg medical records as his

---

[12]   *See* Whitehouse (2004) "Asbestos Related Pleural Disease Due to Tremolite Associated With Progressive Loss of Lung Function: Serial Observations in 123 Miners, Family Members, and Residents of Libby, Montana," Am J Ind Med 46:219-225 (discussing 123 Libby patients, for whom Dr. Whitehouse compared the first and last PFT [Pulmonary Function Test] results, or a total of 246 PFT results) (hereinafter "Dr. Whitehouse's Study").

[13]   *See, e.g.,* Exhibit 1, 191:5—192:3, and 195:15—196:15 (discussing PFT's alleged by Dr. Friedman to have been generated on test equipment different than that asserted in the Dr. Whitehouse Study, but admitting that he cannot state how many or precisely which of the 123 patients he is relying upon for his opinion).

[14]   *See* Exhibit 1, 220:17—221:4 (alleging that Dr. Whitehouse did not use post-bronchodilator PFT results as asserted in his Study); *see also* 283:24—287:14 (Dr. Friedman admits that his report and the documents produced in support thereof addressing "lots," 281:21, of Dr. Whitehouse's alleged height and age adjustment errors are "simply demonstrative aids . . . not intended to represent everything," 287:5-6); 238:13—245:15 (admitting that in

examples, his opinions in this case are defined by and rely upon the entire underwater body of patients supporting Dr. Friedman's opinion that Dr. Whitehouse's Study is in error. Dr. Friedman has failed to identify or produce any of those records which he considers significant, apparently on the basis that to do so would be unnecessary and repetitive:

> Q.    Why would you have pulled out some of them and not all of them?
> A.    Because if these were supposed to be used as demonstratives at trial, they are very similar and there's no reason to sit and show 15 or 20 slides of the same thing. (Exh. 1, 221:5-10).

Dr. Friedman blatantly understates his obligations pursuant to FRCP 26(a)(2)(B). The rules of expert discovery cannot be equated with whatever judgment Dr. Friedman or the Plan Proponents applied about how many records would be enough to demonstrate a jury point at trial. Libby Claimants are entitled to review <u>all</u> the records relied upon by Dr. Friedman for his opinion that Dr. Whitehouse's Study is supposedly replete with error and therefore unreliable.

16.    Third, Dr. Friedman offers multiple opinions in this case based upon his own review of particular records and additional work he did to manipulate the Libby patient data that may have been the basis of the Dr. Whitehouse Study. As just one example, he calculated progression of lung function loss on dates going beyond those in the Dr. Whitehouse Study and on patients beyond the 123 patients involved in the Study, and relies upon those additional findings.[15] He has generated databases and reports in the process,[16] none of which have been produced or made available. Dr. Friedman has unquestionably not produced all of his reliance materials, and as a result, the Libby Claimants cannot evaluate or test his opinions in this case.

---

identifying Dr. Whitehouse's alleged errors regarding use of Knudson norms, Dr. Friedman "simply provided demonstrative aids [which] does not mean that I stopped at that point." 243:20-22).
[15]  *See* Exhibit 1, 89:4—90:11, 92:14—93:1.
[16]  *See* Exhibit 1, 93:2-4; 236:2—237:1.

17.    One of the greatest harms from Dr. Friedman's failure to identify or produce the particular medical records that he relies upon is that neither this Court nor Libby Claimants can assess whether the errors in PFT results claimed by Dr. Friedman in fact even impact the Dr. Whitehouse Study.    Dr. Friedman has reviewed medical records from hundreds of Libby asbestos patients,[17] obviously not all of whom were among the 123 subjects in Dr. Whitehouse's Study.    Dr. Friedman testified that while he recognizes errors in many particular PFT's, he cannot testify that the allegedly flawed PFT's were actually among those 246 PFT's at issue and which were relied upon by Dr. Whitehouse in his Study:

> Q.    You don't know which 246 PFT studies Dr. Whitehouse actually used as a basis for his findings in this study?
> A.    He represents first and last.  I've tried where possible to identify those.  If that's—if my identification is not correct, I've made a good faith effort. (Exh. 1, 216:15-21).[18]

Only by being able to evaluate each particular PFT relied upon by Dr. Friedman and identify whether it was used in the Dr. Whitehouse Study can Dr. Whitehouse or Libby Claimants address the validity of Dr. Friedman's opinions, as applied to the Dr. Whitehouse Study and as intended by the Plan Proponents.

18.    Libby Claimants have attempted since Dr. Friedman's deposition to obtain the medical records regarding those Libby asbestos patients upon which he relies as the basis for his opinions in this case about Libby asbestos disease.[19]  The Plan Proponents have not produced the records in timely fashion.[20]  The failure by Dr. Friedman and the Plan Proponents to identify or

---

[17]    *See* Exhibit 1, 88:3-13 (noting that Dr. Friedman has seen PFT studies from approximately 550 of Dr. Whitehouse's Libby patients); 209:22-24 ("Q. [Y]ou've reviewed far more than 246 PFT results; correct? A. Yes.").

[18]    *See also* Exhibit 1, 195:22—196:15; 218:24—219:8; 227:2-25; 235:6-12; 237:2-6; 244:6-16; 287:2-9.

[19]    *See* June 30, 2009, letter to counsel addressing Dr. Friedman's reliance materials, attached hereto as Exhibit 2.

[20]    The Plan Proponents have refused to provide Dr. Friedman's reliance materials in part because they were supposedly produced as a part of discovery in the estimation phase.  First, Dr. Friedman testified that he did not become involved in this bankruptcy case until March or April 2009, Exh. 1, 100:24—101:18, obviously well after

produce records regarding these Libby asbestos patients leaves the Libby Claimants incapable of responding to Dr. Friedman's opinions.

19.     The principles that led this Court to adopt the Modified Order apply with even greater force to opinions that Dr. Friedman intends to offer regarding Libby asbestos disease and Dr. Whitehouse. Libby medical records were examined by Dr. Friedman solely in his function as an expert in this case and with the express purpose of forming and evaluating opinions regarding Libby asbestos disease and/or Dr. Whitehouse's opinions in this case. Yet because Dr. Friedman and the Plan Proponents have failed to produce the underlying medical records and other documents on which Dr. Friedman's opinions in this case rely, Libby Claimants cannot test the opinions that Dr. Friedman developed after reliance on those documents or offer any kind of rebuttal. *See McMillan v. Weeks Marine, Inc.*, 478 F. Supp. 2d 651, 659 ("The purpose of [FRCP 26(a)(2)(B)] is to give opposing parties a reasonable opportunity to prepare for effective cross examination or to secure their own expert witness."). Libby Claimants need and are entitled to review the underlying documents on which Dr. Friedman relied when forming the opinions that he is offering in this case. The prejudice suffered by Libby Claimants from Dr. Friedman's failure to produce is real and significant. *See Brooks v. Price*, 121 Fed. Appx. 961, 965 (3d Cir. 2005) ("being forced to cross-examine an opposing expert without the benefit of a meaningful opportunity to depose him puts a party at a substantial disadvantage.").

20.     The sanction for such failure is clear. "FRCP 37(c)(1) gives teeth to the expert disclosure requirements 'by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.'" *Olson v. Montana Rail Link, Inc.*, 227 F.R.D. 550,

---

the estimation proceedings were concluded. Second, even if the records were produced to Libby Claimants, Dr. Friedman has a responsibility to identify the records that he is specifically relying upon, and citing to an unrelated,

552 (D. Mont. 2005) (prohibiting medical expert who waited until two days before his deposition to provide the data underlying his opinions from relying in any way upon data or conclusions that were not timely provided in accordance with case schedule); *see also United States v. 68.94 Acres of Land*, 918 F.2d 389, 396-97 (3d Cir. 1990) (expert properly excluded after relying on data that had not been disclosed); *Smith v. Botsford Gen'l Hosp.*, 419 F.3d 513, 516-17 (6th Cir. 2005) (affirming the striking of expert who failed to disclose all data and information considered in forming his opinion).  Here, Dr. Friedman should be barred from offering any testimony or opinions based, in whole or in part, upon records or documents that have not been provided, including those documents that he reviewed or prepared regarding Libby asbestos patients.  More specifically, Dr. Friedman should not be allowed to testify, in whole or in part, as to the Dr. Whitehouse Study, after having failed to produce and identify so much of the material that he relies upon for his opinions regarding the Study.

**IV.    If Dr. Friedman is Allowed to Offer Any Expert Testimony, Libby Claimants Should be Allowed to Offer a Rebuttal Report.**

21.    Libby Claimants assert that Dr. Friedman should be barred or limited from testifying as an expert on the above grounds.  Not yet addressed is the fact that Dr. Friedman did not produce Dr. Friedman's reliance materials until mid-May 2009, well after the deadline for such production in the CMO.

22.    Because of the late production, Libby Claimants were precluded from preparing a Rebuttal Report, as they have with all the other medical experts put forth by the Plan Proponents. Likewise, as stated above, Libby Claimants were prejudiced in their ability to adequately prepare for Dr. Friedman;s deposition.  In conjunction with the denial of an opportunity for rebuttal, the

---

unidentified, non-specific production preceding this witness's involvement in this case cannot be said to satisfy Dr. Friedman's FRCP 26(a)(2)(B) obligations.

failed and untimely disclosures have prevented Libby Claimants from making an adequate record in rebuttal to Dr. Friedman's opinions in this case.

23.     Obviously, if the relief requested by Libby Claimants above is granted, no rebuttal to Dr. Friedman's opinions will be required.  However, should Dr. Friedman be allowed to offer any expert testimony in this case, Libby Claimants should be given a sufficient and reasonable opportunity to present a rebuttal to such testimony.

## **CONCLUSION**

Based upon the above, Libby Claimants respectfully request that this Court strike altogether or alternatively limit any expert testimony from Dr. Friedman, and grant any further relief that is just and proper.

Dated: July 20, 2009
   Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, DE  19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

- and -

Daniel C. Cohn
Christopher M. Candon
**COHN WHITESELL & GOLDBERG LLP**
101 Arch Street
Boston, MA 02110
Telephone:  (617) 951-2505
Facsimile:  (617) 951-0679

*Counsel for Libby Claimants*