THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**AFFIDAVIT OF GEORGE W. YOUNG IN SUPPORT OF DEBTORS'
MOTION FOR AN ORDER (A) APPROVING THE AGREEMENTS
BY AND BETWEEN W. R. GRACE & CO.-CONN. AND BUYER; (B) AUTHORIZING
THE SALE OF W. R. GRACE & CO.-CONN.'S MEMBRANES BUSINESS TO BUYER
FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER
INTERESTS; (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT TO
BUYER OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; AND (D) GRANTING CERTAIN RELATED RELIEF**

1. I am the Vice President Business Development of Grace Davison (one of the Debtors' two operating segments), which has offices located at 7500 Grace Drive, Columbia, Maryland 21044. I submit this Affidavit in support of the Debtors' *Motion for an Order (A) Approving the Agreements by and between W. R. Grace & Co.-Conn. and Buyer; (B) Authorizing*

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

*the Sale of W. R. Grace & Co.-Conn.'s Membranes Business to Buyer Free and Clear of Liens, Claims, Encumbrances and Other Interests; (C) Authorizing the Assumption and Assignment to Buyer of Certain Executory Contracts and Unexpired Leases; and (D) Granting Certain Related Relief* (the "Sale Motion"). Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Sale Motion.

2. I am responsible for Grace Davison's Mergers and Acquisitions, Incubator Business Development, Process Engineering, and Process Development functions. In that capacity, I have reviewed the Sale Motion and the Agreements, and am, directly or through the Debtors' personnel, attorneys, and financial advisor familiar with the information contained therein and in the exhibits annexed thereto. Except as otherwise noted, I have personal knowledge of the matters set forth herein.

3. The Membranes Business, a unit of Grace Davison, is a developer and producer of cellulose acetate polymer, spiral-wound membrane modules used to separate carbon dioxide ($CO_2$) and hydrogen sulfide ($H_2S$) from natural gas streams. These membranes are used in the separation systems of natural gas producers, including private and public companies and state-owned enterprises. The Membranes Business maintains a portfolio of intellectual property that includes patents, trade secrets, and manufacturing know-how related to separation membranes for applications ranging from natural gas treatment, to pharmaceutical and semiconductor lithography applications, to "green" technologies such as $CO_2$ capture and bio-separations. The Membranes Business uses predominantly external sales channels in the distribution of its products.. Its principal distributor represents approximately 90% of Membrane Business sales.

4. As of July 15, 2009, the Membranes Business had sixteen (16) employees. Fifteen (15) employees are located at its production facility in Littleton, CO, and the business's senior principal scientist is based in Columbia, MD.

5. In the first quarter of 2009, I participated with management in the decision to sell the Membranes Business. This decision was based on a number of factors, including that the Membranes Business is not complementary to the Debtors' other business lines and represents less than 1% of the Debtors' 2008 consolidated revenues. Further, the Membranes Business is the Debtors' only operation that sells into the natural gas industry and, therefore, the Debtors have very little supplier leverage in this market. I believe the sale of the Membranes Business would generate value to the estate while enabling senior management to focus on higher-return, core activities.

6. In April 2009, under my supervision, certain of the Debtor's employees, in consultation with Seale & Associates Inc., our financial advisor, started pursuing the sale of the Membranes Business. Seale and the Debtors reviewed information on 1300 companies and I am informed that Seale contacted more than 100 potential strategic buyers and 70 potential financial buyers. I am informed that generally, strategic buyers were more interested than financial buyers because they are looking to add the Membranes Business to the package of goods and services that they already offer to natural gas producers.

7. I am informed that Seale provided a brief summary of the investment opportunity was provided to more than 115 potential buyers (both strategic and financial). Of these, I am informed that 32 potential buyers eventually entered into confidentiality agreements and received a detailed information memorandum, and I received 12 preliminary indications of interest containing a preliminary purchase price. Based on the preliminary purchase prices in the

indications of interest, I invited four potential buyers that participated in a tour of the Littleton, Colorado manufacturing facility, and presentations by the management of the business, followed by substantial due diligence through access to an electronic data room and follow-up questions that were answered by the Selling Debtor's management through Seale.

8. Each of the four potential buyers then submitted a revised firm bid, subject to negotiation of a definitive agreement for the transaction, which I reviewed.

9. In evaluating each bid, the Selling Debtor considered primarily the dollar amount of the bid, Seller Debtor's confidence that the bid would hold up, the bid's required closing conditions, and relative ease of transition of the Membranes Business to the potential buyer's organization. The Buyer's bid was the second highest; but taking into account all the evaluation criteria, its bid was the most attractive. The Buyer is in a similar business and therefore was able to quickly understand and evaluate many aspects of the Membranes Business. The Buyer had received pre-approval of the transaction by its senior executives, and was prepared to move on an accelerated timeline. By contrast, the highest bidder was unfamiliar with the business, and required an extra two weeks of evaluation before it was prepared to move forward. The highest bid was therefore basically a further indication of interest, and the Seller Debtor had no certainty whether a bona fide final offer would be forthcoming, much less whether the price would hold up. By contrast, the Buyer had provided a firm bid and was ready to begin negotiations immediately. Based on these factors and circumstances, the Selling Debtor determined, in its business judgment, that the offer from the Buyer was materially better than the three other bids submitted and, as such, constituted the highest and best offer for the Membranes Business.

10. In my best business judgment, the Buyer's offer represents the most attractive option along several dimensions, including purchase price, and conditions and timing to closing.

Moreover, to the best of my knowledge and belief, I have determined that the Buyer has the capability and operating expertise to close the transaction and integrate the Membranes Business into its own operations with only limited transitional assistance from the Debtors. Therefore, I recommended authorization of the Selling Debtor's entry into the Agreements with the Buyer for which the Selling Debtor now seeks approval from this Court.

11. Based on my business judgment, I believe that the most prudent course of action is to seek approval of the Sale to the Buyer as provided for in the Sale Motion. Among other reasons, I believe that further delays in completing the Sale could lead to deteriorating financial performance of the Membranes Business and eroded potential value.

12. I have determined that the Sale of the Membranes Business by private sale to the Buyer will obtain the highest and best offer for this business thereby maximizing the value to the Selling Debtor's estate. The Agreements represent the culmination of comprehensive, arms-length negotiations for the Sale of the Membranes Business in exchange for what, I believe, is the highest and best consideration available for such business. The Sale will generate value to the estate while enabling the Selling Debtor's management to focus on higher-return, core activities. Therefore, I believe that the Sale is in the best interests of the Selling Debtor and its affiliates, their estates, and their creditors.

13. The Selling Debtor also believes that the amount of the consideration received for the Membranes Business is fair and reasonable. The extensive marketing efforts have demonstrated that the offer made by the Buyer is the best offer that the Debtor has received for such assets. I believe that the fairness and reasonableness of the consideration to be paid by the Buyer ultimately has been demonstrated by adequate "market exposure" and a fair marketing process – the best means for establishing whether a fair and reasonable price is being paid.

14. If the Sale Agreement is not approved, then management will be forced to evaluate options that are not as attractive as the current offer. The alternative to the proposed Sale is to continue to market the Membranes Business, which would subject the estate to significant market risk with a low probability of identifying a higher and better offer. I believe that further delays in completing the Sale could lead to deteriorating financial performance of the Membranes Business and eroded potential value. Moreover, I believe that employees and customers of the Membranes Business would face uncertainty regarding the future of the Membranes Business. This uncertainty could potentially lead to loss of employees, weakened financial performance, and the further erosion of value.

15. The parties to the Agreements have always negotiated at arm's-length, and in good faith, and the Buyer has not exerted control or undue influence over the Selling Debtor. To the best of my knowledge and belief, I have determined that the Buyer is completely and wholly unrelated to the Selling Debtor. Extensive negotiations were held between the parties involving substantial time and energy by the parties and their professionals, and the Agreements reflect give-and-take and compromises by both sides.

16. To the best of my knowledge and belief, I have determined that the Buyer does not, and will not, share any common incorporators, officers, directors, or controlling stockholders with the Selling Debtor, and that the Buyer is not an insider of the Selling Debtor.

17. The Sale contemplates the assumption and assignment of certain executory contracts and unexpired leases of the Membranes Business to the Buyer, which are necessary to the Buyer for the continuation of the Membranes Business and, at the same time, will enhance the value of the Sale to the Selling Debtor's estate by curtailing further administrative liability to the estate and eliminating certain rejection claims. Furthermore, the Buyer has agreed to pay

half of the Cure Amounts in connection with the Transferred Contracts. The estimated cure payments associated with all of the Transferred Contracts totals $0; therefore, the maximum liability of the Selling Debtor is $0.

18.   I am further informed that, to the extent necessary, the Buyer is able and willing, at the Sale Hearing, to demonstrate to the satisfaction of this Court that adequate assurance of future performance is present. Accordingly, the Selling Debtor submits that the assumption of the Transferred Contracts by the Selling Debtor and assignment to the Buyer should be approved.

19.   To preserve the value of the Membranes Business by bringing certainty to the sale process, and because both the Selling Debtor and Buyer desire to close the Sale on or before September 15, 2009, the Selling Debtor seeks to close the Sale as soon as possible after all closing conditions have been met or waived. Accordingly, the Selling Debtor requests that any order approving the Agreements be effective immediately.

*[Signature page follows]*

The information contained in this Affidavit is true and correct to the best of my knowledge and belief.

*[signature]*
George W. Young
Vice President Business Development
Grace Davison

Subscribed and sworn to before me
this 20th day of July, 2009

*[signature]*

MOLLIE K. SPRINKLE
Notary Public, State of Maryland
County of Carroll
My Commission Expires December 1, 2010