## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | (Jointly Administered) |

## LIBBY CLAIMANTS' PHASE II PRE-TRIAL SUBMISSION

Pursuant to this Court's Order Regarding Phase II Pre-Trial Proceedings dated July 7, 2009 [Docket No. 22347] (the "Order"), claimants injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants"),[1] by and through their counsel, Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP, hereby submit the following Pre-Trial Submission in accordance with paragraph 4 of the Order:

Statement of Issues

The Libby Claimants submit that the Plan[2] is unconfirmable as a matter of law. Their objections, summarized below, include:[3]

- **The Plan is Unconfirmable Because It Impermissibly Discriminates Against the Libby Claimants and Thereby Violates the Bankruptcy Code's Policy of Equal Distribution.[4]** The Plan violates the Bankruptcy Code's requirement of equal

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Docket No. 21365], as it may be amended and restated from time to time.

[2] First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders dated as of February 27, 2009 [Docket No. 20872]

[3] As a procedural matter, the Libby Claimants have objected to being required to file their Trial Brief [Docket No. 22439] in support of their objection to confirmation of the Plan at a time when the Plan Proponents have not yet fully disclosed their contentions with respect to confirmation of the Plan and, specifically, in response to the Plan Objection [Docket No. 21811] filed by the Libby Claimants. Accordingly, the Libby Claimants have reserved the right to amend and/or supplement their Trial Brief—as they continue to reserve their right to supplement their Plan Objection—as the Plan Proponents' contentions are finally revealed. The Plan Proponents have agreed that the Libby Claimants may wait until after they have been provided further discovery by the Plan Proponents to file their Trial Brief relating to their objection that the Plan fails to satisfy the "best interests of creditors" test under Section 1129(a)(7) of the Bankruptcy Code.

[4] Trial Brief, Section V.A.

{393.001-W0001429.}

distribution, as set forth in In re Combustion Engineering, 391 F.3d 190, 239 (3d Cir. 2004). The TDP has been designed to liquidate Asbestos PI Claims other than Libby Claims at an amount greater than or equal to their value in the tort system. For Libby Claims, however, the terms of the TDP will result in liquidation at far less than tort system value.

- **The Plan Impermissibly Disenfranchises the Libby Claimants Through Impermissible Classification and Treatment of Their Claims.**[5] The treatment of Libby Claims under the Plan violates not only the mandate of Combustion Engineering regarding fairness of distribution but also specific provisions of the Bankruptcy Code regarding classification of claims, and uniform treatment of claims within a class.

  - **The Plan Impermissibly Places the Libby Claimants' Claims in a Class with Claims that Are Not Substantially Similar.**[6] The Plan creates a single class of asbestos personal injury claims. This is *not* required by Section 524(g) of the Bankruptcy Code. To the contrary, Section 524(g) refers to a "class or classes of the claimants whose claims are to be addressed by a trust." 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb). The Plan violates Section 1122(a) by placing the Libby Claims, over their objection, in the same class as claims that are not substantially similar to them. The Libby Claimants' rights against Grace and its insurers require them to be separately classified.

  - **The Plan is Unconfirmable Because It Provides Different Treatment to Claims of the Same Class.**[7] Section 1123(a)(4) requires that, for confirmation to be granted, a plan shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). The Plan violates Section 1123(a)(4) by providing differential treatment of Asbestos PI Claims based on (a) the type of asbestos disease, (b) whether the claim is based on a jury verdict, (c) when the claim is liquidated by the Asbestos PI Trust, (d) whether the claim is for wrongful death or loss of consortium; and (e) whether the claim is for compensatory or punitive damages. In addition, the Plan violates Section 1123(a)(4) because the Libby Claimants are being treated differently as a result of being deprived of more valuable insurance rights in order to receive the same benefit (a *pro rata* share of the entire insurance pool).

  - **The Plan Takes Away the Rights of Libby Claimants Without Providing Them With an Effective Right to Vote.**[8] This case presents the very situation that concerned the Third Circuit in Combustion Engineering whereby asbestos personal injury claimants with weaker legal rights will swamp other class

---

[5] Trial Brief, Section V.B.

[6] Trial Brief, Section V.B.1.

[7] Trial Brief, Section V.B.2.

[8] Trial Brief, Section V.B.3.

members with stronger legal rights when all are placed in the same class. <u>Combustion Engineering</u>, 391 F.3d at 244. The Plan is unconfirmable because it permits the Libby Claimants to be outvoted by Asbestos PI Claimants who are treated more favorably.

- **The Plan is Unconfirmable Because It Denies the Libby Claimants Their Right to Trial by Jury.[9]** The Seventh Amendment to the United States Constitution guarantees the right to trial by jury in civil cases. The constitutional right to trial by jury extends to asbestos personal injury claims in Chapter 11 cases. <u>In re G-I Holdings, Inc.</u>, 323 B.R. 583, 607 (Bankr. D. N.J. 2005). By capping the amount for which an asbestos personal injury claim may be liquidated even where the jury's verdict is greater, the Plan renders meaningless the right to a trial by jury and is unconfirmable as a matter of law.

- **The Plan is Unconfirmable Because It Violates the Libby Claimants' Right to Have Their Claims Allowed in Accordance with Applicable Nonbankruptcy Law.[10]** Claims in bankruptcy cases must be allowed or disallowed under state law except where the Bankruptcy Code otherwise provides. <u>Butner v. United States</u>, 440 U.S. 48 (1979). Under state law, the valid amount of a personal injury claim is the amount provided by a final judgment obtained through the tort system.

  - **The Plan is Unconfirmable Because It Improperly Limits the Allowed Amount of Most Libby Claims.[11]** For most Libby Claims, the TDP does not permit the Asbestos PI Trust to voluntarily allow the claim in the amount that could be obtained in the tort system. Moreover, if any Asbestos PI Claimants obtains a judgment through the tort system, the TDP improperly caps the liquidated value of the claim at less than the judgment.

  - **The Plan is Unconfirmable Because It Improperly Disallows Punitive Damages Claims.[12]** The Plan, through the TDP, categorically disallows punitive damages even while acknowledging that they are available in the tort system.

  - **The Plan is Unconfirmable Because It Improperly Disallows Wrongful Death and Loss of Consortium Claims.[13]** The Plan, through the TDP, provides for automatic disallowance of wrongful death claims and loss of consortium claims— a violation of Supreme Court precedent barring categorical disallowance of legally valid claims.

---

[9] Trial Brief, Section V.C.

[10] Trial Brief, Section V.D.

[11] Trial Brief, Section V.D.1.

[12] Trial Brief, Section V.D.2.

[13] Trial Brief, Section V.D.3.

- **The Plan is Unconfirmable Because It Provides for Injunctions and Exculpations that are Impermissibly Broad.**[14]    The Plan provides for injunctions and exculpations that violate Section 524(g) on numerous grounds, including:

  - **The Asbestos Insurance Entity Injunction Violates Section 524(g) by Protecting Third Parties from Claims Outside the Permissible Four Categories.**[15]

  - **The Plan Injunctions and the Exculpations Provision Violate Section 524(g) by Protecting Third Parties Who Are Not Making a Substantial Financial Contribution.**[16]

  - **The Plan Impermissibly Enjoins the Libby Claimants' Pursuit of Insurance Coverage as to Which They do not Compete with Each Other or any Other Claimant.**[17]

  - **The Plan Impermissibly Enjoins the Libby Claimants Even Though the Plan is Not Fair and Equitable to the Libby Claimants.**[18]

  - **The Plan Impermissibly Releases the Fresenius Indemnified Parties.**[19]

- **The Plan is Unconfirmable Because It Improperly Usurps the Court's Function to Modify or Dissolve Preliminary Injunctions.**[20]    The Plan purports to freeze in place injunctions—such as the preliminary injunction that now prevents the Libby Claimants from pursuing claims against BNSF—regardless of whether (a) there is cause for this Court to dissolve the injunction, or (b) the injunction is reversed on appeal.

- **The Plan Violates Section 1129(a)(7) of the Bankruptcy Code Because It Provides Less to the Libby Claimants Than They Would Receive or Retain In a Chapter 7 Liquidation of the Debtors.**[21]    Taking account of the Libby Claimants' rights against insurance policies if the Debtors were to be liquidated under Chapter 7, many if not all of the Libby Claimants would realize a greater recovery in Chapter 7 than under the Plan.

---

[14] Trial Brief, Section V.E.

[15] Trial Brief, Section V.E.2.

[16] Trial Brief, Section V.E.3.

[17] Trial Brief, Section V.E.4.

[18] Trial Brief, Section V.E.5.

[19] Trial Brief, Section V.E.6.

[20] Trial Brief, Section V.F.

[21] Trial Brief, Section V.G.

As set forth in greater detail in the Trial Brief, Plan Objection, and the Supplement to Libby Claimants' Objection to First Amended Joint Plan of Reorganization [Docket No. 22385], the Libby Claimants have identified numerous issues with respect to the medical criteria included in the proposed TDP (many incorporated into the issues above), including:

- Whether the differences in asbestos disease from Libby winchite exposure, including severity, progression and probability of death, make Libby winchite claims **substantially dissimilar** from other asbestos claims.

- Does the TDP medical criteria requirement of a finding of **blunting** of the costophrenic angle on chest x-ray, to qualify for level IV-B severe pleural disease, discriminate against severe pleurals in general and Libby winchite claimants in particular?

- Does the TDP medical criteria requirement of a finding of pleural thickening of **3mm thickness** or more on chest x-ray, to qualify for level IV-B severe pleural disease, discriminate against severe pleurals in general and Libby winchite claimants in particular?

- Does the TDP medical criteria requirement of a finding of pleural thickening with **extent over 25%** of the chest wall on chest x-ray, to qualify for level IV-B severe pleural disease, discriminate against severe pleurals in general and Libby winchite claimants in particular?

- Does the TDP medical criteria acceptance of **use of CT scans** for levels II and III (mild and moderate) pleural disease, but not for level IV severe pleural disease, discriminate against severe pleurals in general and Libby winchite claimants in particular?

- Does the TDP medical criteria requirement of bilateral asbestos-related disease for levels II, III, IV-B, V, and VII discriminate against claimants with **unilateral disease**?

- Does the TDP medical criteria's omission at levels III and IV (moderate and severe asbestosis/pleural disease) to use **diffusion capacity** (DLCO) as a measure of severity discriminate against Libby winchite claimants?

- Does the TDP medical criteria's use at levels III and IV (moderate and severe asbestosis/pleural disease) of the **FEV1/FVC ratio >65** as a limit on severity of forced vital capacity (FVC), discriminate against Libby winchite exposure claimants?

- Do the TDP medical criteria have the **overall effect** of discrimination of severe pleurals in general and Libby winchite claimants in particular?

## II.    List of Witnesses

1.    Dr. Alan C. Whitehouse.  See the summary attached hereto as Exhibit A.

2.    Dr. Arthur L. Frank.  See the summary attached hereto as Exhibit B.

3.    Dr. Terry Spear.  See the summary attached hereto as Exhibit C.

4.    Dr. Craig Molgaard.  See the summary attached hereto as Exhibit D.

5.    Jon L. Heberling, Esq.  See the summary attached hereto as Exhibit E.

6.    Tom L. Lewis, Esq.  See the summary attached hereto as Exhibit F.

7.    Dr. John Parker.  See the summary attached hereto as Exhibit G.

8.    Dr. Suresh Moolgavkar.  See the summary attached hereto as Exhibit H.

9.    Mark A. Peterson.  See the summary attached hereto as Exhibit I.

10.    Elihu Inselbuch, Esq.  See the summary attached hereto as Exhibit J.

11.    Peter Lockwood, Esq.  See the summary attached hereto as Exhibit K.

12.    Earl Lovick (deceased).  See the summary attached hereto as Exhibit L.

13.    Jay Hughes, Esq.  See the summary attached hereto as Exhibit M.

14.    Jeffrey Posner.  See the summary attached hereto as Exhibit N.

15.    Dr. Peter Lees.  See the summary attached hereto as Exhibit O.

16.    Dr. Elizabeth Anderson.  See the summary attached hereto as Exhibit P.

17.    Thomas Albert (deceased), by deposition.  His testimony is summarized below:

Thomas Albert was a Libby resident from 1936 to 1965.  He was Grace employee at its mine and mill near Libby, Montana (worked as dry mill sweeper, labor pool, dumpman, Euclid driver), from 1960 to 1962.  He was also exposed to Grace asbestos while working at the Libby lumber mill from 1951-1953.  He was also exposed to Grace asbestos while going about his activities of daily living in Libby.  He will describe the nature and extent of his exposure to Grace asbestos.  He will testify as to the symptoms from his asbestos related disease.  His wife Mary Albert's deposition testimony given in his wrongful death case will also be offered on the same subjects.

18.    Fred Alsbury (deceased), by deposition.  His testimony is summarized below:

Fred Alsbury was a Libby resident from 1969 to 2008. He was Grace employee at its mine and mill near Libby, Montana (worked as security guard, mixed reagents, dry mill, sweeper), from 1968 to 1983-84. He was Burns security officer from 1985-1987. He was also exposed to Grace asbestos while going about his activities of daily living in Libby. He will describe the nature and extent of his exposure to Grace asbestos. He will testify as to the symptoms from his asbestos related disease.

19.    Bob Barnes will testify concerning the following:

Bob Barnes was a Libby resident from 1949 to 1950 and from 1952 to the present. He was a Grace Employee at its mine and mill near Libby, Montana (worked as a sweeper and operator in the dry mill and as a member of the construction crew), from April 1965 to December, 1966. He was also exposed to Grace asbestos while employed in Libby by the BNSF Railway's predecessor in interest from 1949 to 1950 and from 1952 to 1963 and while working at the Libby lumber mill from 1966 to 1991. He was also exposed to Grace asbestos while going about his activities of daily living in Libby. He will describe the nature and extent of his exposure to Grace asbestos. He will testify as to the symptoms from his asbestos related disease, including his use of and need for oxygen.

20.    Helen Bundrock (deceased), by deposition (taken January 1988), will testify:

Helen Bundrock was a Libby resident from 1957 to date of her deposition. Her husband, Art Bundrock, worked at Grace mine and mill, from 1957 until 1978 (first 3 years in dry mill, then went to the wet mill for several years; then the garage 5 years; finished in the warehouse). She was also exposed to Grace asbestos while going about her activities of daily living in Libby. Helen will also testify as to the nature and extent of her Grace asbestos exposure as a result of her husband's bringing asbestos fibers home on his clothing. She will testify as to the symptoms from her asbestos related disease.

21.    Stuart Cannon will testify concerning the following:

Dates of his Libby Residence: 1939-43, 1946-56, 1961-68, 1976-80, 1986-present
Dates of his Employment at Grace, and jobs held at Grace: 3/24/60-7/15/64; Sweeper in
       Dry Mill; Euclid Driver; Dump Man; Lab
Other Places of Grace Asbestos Exposure: Libby lumbermill employee (1965)
Nature and Extent of Exposure
Symptoms of his Lung Condition.

22.    Edward Carvey (deceased), by deposition. His testimony is summarized below:

Dates of his Libby Residence: 1928-29, 1931, 1937-42, 1945
Dates of his Employment at Grace, and jobs held at Grace: 1941-42, 1/25–12/5/45;
Sweeper and Operator in Dry Mill; Skip Operator
Other Places of Grace Asbestos Exposure: 1946-62 Libby lumbermill employee
Nature and Extent of Exposure

Symptoms of his Lung Condition.

23.    Bruce Cole will testify concerning the following:

Bruce Cole has been a Libby resident for most of his life. He was employed at Grace's mine and mill, near Libby, Lincoln County, Montana from 1974 to 1987. He was also exposed to Grace asbestos while going about his activities of daily living in Libby. He will testify as to the nature and extent of his Grace asbestos exposure. He will testify as to his symptoms from his asbestos related disease.

24.    Floyd Cole (deceased), by deposition. His testimony is summarized below:

Floyd Cole was born and reared in Lincoln County, Montana and has spent nearly his entire life there. He began working for Zonolite Company in April, 1949 and for Zonolite and/or Grace at the Libby mine and mill for 30 years doing many different jobs. He will testify as to the nature and extent of his Grace asbestos exposure. He will testify as to his symptoms from his asbestos related disease. Mr. Cole settled his case with Grace in 1990 for $200,000.

25.    Robert Conn will testify concerning the following:

Robert Conn has been a resident of Libby from 1932 to 1952 and from 1956 to the present. He was exposed to Grace asbestos while employed at the Libby lumbermill from 1968 to 1992. He was also exposed to Grace asbestos while going about his activities of daily living in Libby. He will testify as to the nature and extent of his Grace asbestos exposure. He will testify as to his symptoms from his asbestos related disease.

26.    Shirley Conn, will testify concerning the following:

Shirley Conn was a resident of Libby from 1933 to 1957 and from 1963 to present. She was exposed to Grace asbestos by her brother's employment at Zonolite in 1948 and as a result of husband's employment at the Libby lumbermill from 1968 to 1992. She was exposed to Grace asbestos while going about his activities of daily living in Libby. As a child she played in piles of asbestos laced vermiculite left by Zonolite and Grace in and around the community piles. She will testify as to the nature and extent of her Grace asbestos exposure. She will testify as to her symptoms from her asbestos related disease.

27.    Carl Craig will testify concerning the following:

Dates of his Libby Residence: 1953-73, 1974-present
Dates of his Employment at Grace, and jobs held at Grace: 7/23/74-7/23/76; Millwright
        helper; utility man; skip operator; bid skipper; labor pool
Nature and Extent of Exposure
Symptoms of his Lung Condition

28.    Carrie Dedrick will testify concerning the following

Dates of her Libby Residence: 1942-61, 1969-present
Other Grace Asbestos Exposure: Husband did subcontract work at Grace (1970's)
Nature and Extent of Exposure
Symptoms of her Lung Condition.

29.    Thomas DeShazer will testify concerning the following:

Thomas DeShazer moved to Libby in 1947 at 4 years of age.  From then until 1988 he lived in Libby or near Libby.  He was exposed to Grace asbestos as a result of his father's employment at the Zonolite mine near Libby, Montana..  He was also exposed to Grace asbestos while working at the Libby lumbermill from 1962 until 1988.  He was also exposed to Grace asbestos while going about his activities of daily living in Libby.  He will testify as to the nature and extent of his Grace asbestos exposure.  He will testify as to his symptoms from his asbestos related disease.

30.    Rodney Elletson will testify concerning the following:

Rodney Elletson has lived in Libby, Montana most of his adult life.  He was employed by Grace at its mine and mill near Libby, Montana, from 1974 to 1990.
He was also exposed to Grace asbestos while going about his activities of daily living in Libby.  He will testify as to the nature and extent of his Grace asbestos exposure.  He will testify as to his symptoms from his asbestos related disease.

31.    Richard Erickson will testify concerning the following:

Richard Erickson has lived in Libby or Lincoln County, Montana most of his life.  His employment history includes the following jobs that exposed him to Grace's Libby asbestos: 1971 Libby Dam; 1970 to 1972 St. Regis Mill; 1972 to 1974 Libby Dam project; 1974 to 1975 Grace road construction; and 1980 to 1994 Erickson Painting in Libby (paint, drywall, remodel).  He was also exposed to Grace asbestos while going about his activities of daily living in Libby.  He will testify as to the nature and extent of his Grace asbestos exposure.  He will testify as to his symptoms from his asbestos related disease.

32.    Warren Dean Ferch will testify concerning the following:

Dates of his Libby Residence: 1950-present
Dates of his Employment at Grace, and jobs held at Grace: 7/23/74-9/90; Labor pool;
        Research Dept.
Other Places of Grace Asbestos Exposure: played in piles, at ballfields (childhood);
        Libby lumbermill employee (1970)
Nature and Extent of Exposure
Symptoms of his Lung Condition, including his use of and need for oxygen.

33.    Kenneth Finstad (deceased), by deposition.  His testimony is summarized below:

Dates of his Libby Residence: 1965-67

Dates of his Employment at Grace, and jobs held at Grace: 4/28/65 - 4/1/67; Dry Mill
Nature and Extent of Exposure
Symptoms of his Lung Condition.

34.     Richard Flesher will testify concerning the following:

Richard Flesher has lived in Lincoln County, Montana most of his life.  His employment history includes the following jobs that exposed him to Grace's Libby asbestos: cutting firewood in the Rainey Creek drainage during high school cut firewood, including Rainey Drainage, 1973 to 1979 Grace Libby mine; 1979 to 1993 St. Regis, Champion electrician; 1998 St. John's Lutheran Hosp. Libby; 1998 to 19/99 Noble Electric; and 1999 to 2001 Flesher Electric. He was also exposed to Grace asbestos while going about his activities of daily living in Libby.  He will testify as to the nature and extent of his Grace asbestos exposure.  He will testify as to his symptoms from his asbestos related disease.

35.     Geraldine Fletcher will testify concerning the following:

Geraldine Fletcher has lived most of her life in Lincoln County, Montana.  She was exposed to Grace asbestos brought home by her husband while he worked at Grace in the 1960's. She was exposed to Grace asbestos as a result of her husband's work at the St. Regis/Champion lumber mill in Libby, Montana.  She was also exposed to Grace asbestos at her home located between the Grace Zonolite Plant and railroad track near Libby.  She was also exposed to Grace asbestos while going about her activities of daily living in and near Libby.  She will testify as to the nature and extent of her Grace asbestos exposure.  She will testify as to his symptoms from her asbestos related disease.

36.     Bill Fore will testify concerning the following:

Libby Claimants intend to have Bill Fore present the following evidence:
Dates of his Libby Residence: 1951-61, 1961-65, 1974-present
Dates of his Employment at Grace, and jobs held at Grace: 1973-91; Millwright
Other Grace Asbestos Exposure: Libby lumbermill employee (1963-64, 1992-93)
Nature and Extent of Exposure
Symptoms of his Lung Condition, including his use of and need for oxygen.

37.     Daniel Garrison (deceased), by deposition.  His testimony is summarized below:

Dates of his Libby Residence: 1931-38, 1940-2000
Dates of his Employment at Grace, and jobs held at Grace: 12/6/56-1/23/57;
        Conveyor Belt Feeder, Dry Mill Sweeper
Other Places of Grace Asbestos Exposure: Libby lumbermill employee (1951-52)
Nature and Extent of Exposure
Symptoms of his Lung Condition.

38.     Edward Gaston (deceased), by deposition.  His testimony is summarized below:

Dates of his Libby Residence: 1954, 1957-2003
Dates of his Employment at Grace, and jobs held at Grace: 5/14/59-2/16/90; Mill
    operator; Test lab belt operator; Dust truck driver
Nature and Extent of Exposure
Symptoms of his Lung Condition.

39.    Robert Graham (deceased), by deposition.  His testimony is summarized below:

Dates of his Libby Residence: 1962-98
Dates of his Employment at Grace, and jobs held at Grace: 8/22/62-2/16/90; Heavy
    Equipment Mechanic, Laborer, Dumpman, Euclid Driver
Other Places of Grace Asbestos Exposure: Grace company vehicles (1960's-75)
Nature and Extent of Exposure
Symptoms of his Lung Condition.

40.    William Hagerty (deceased), by deposition.  His testimony is summarized below:

Dates of his Libby Residence: 1946-2005
Dates of his Employment at Grace, and jobs held at Grace: 8/6/46-2/28/49; Power Shovel
    Truck Driver in Mine Pit; Sweeper; Conveyor; Belt Ore Loader
Other Places of Grace Asbestos Exposure: Libby lumbermill employee (1950-74)
Nature and Extent of Exposure
Symptoms of his Lung Condition.

41.    Hazel Halsey will testify concerning the following:

Dates of her Libby Residence: 1950-present
Other Places of Grace Asbestos Exposure: Husband Grace employee (7/22/46-5/7/51);
    ballfields (1950's-90's)
Nature and Extent of Exposure
Symptoms of her Lung Condition, including her use of and need for oxygen.

42.    William Hardgrove will testify concerning the following:

William Hardgrove has resided in Libby, Montana since 1966.  His employment history includes the following jobs that exposed him to Grace's Libby asbestos: From August, 1967 to April, 1984, he worked for Grace at the Libby mine and mill (reruning oversize at the Little Mill, top floor operator at the dry mill, millright, mine truck operator; maintenance for Libby schools; and security guard at lumber mill).  He was also exposed to Grace asbestos while going about his activities of daily living in Libby.  He will testify as to the nature and extent of his Grace asbestos exposure.  He will testify as to his symptoms from his asbestos related disease.  William Hargrove settled with grace for the sum of $195,000 in 1999.

43.    Larry Hill will testify concerning the following:

Dates of his Libby Residence: 1952-85

Other Places of Grace Asbestos Exposure: Libby lumbermill employee (1971-72); Husband Libby lumbermill employee (1952-70); played on piles and baseball fields (childhood)
Nature and Extent of Exposure
Symptoms of his Lung Condition, including his use of and need for oxygen.

44.   Patricia Hill will testify concerning the following:

Dates of her Libby Residence: 1952-present
Other Places of Grace Asbestos Exposure: Husband Libby lumbermill employee (1952-93); baseball and athletic fields (1950's-60's)
Nature and Extent of Exposure
Symptoms of her Lung Condition.

45.   James Hopkins will testify concerning the following:

Dates of his Libby Residence: 1964-90, 2000-present
Dates of his Employment at Grace, and jobs held at Grace: 9/28/64-1/1/90; Electrician, Instrumentation foreman
Nature and Extent of Exposure
Symptoms of his Lung Condition.

46.   Ervin Hulbert will testify concerning the following:

Dates of his Libby Residence: 1966, 1967-69, 1972-73, 1974-77, 1989-99
Dates of his Employment at Grace, and jobs held at Grace: 8/19/74-2/15/77; Construction crew
Nature and Extent of Exposure
Symptoms of his Lung Condition.

47.   Jack Kenworthy (deceased), by deposition.  His testimony is summarized below:

Dates of his Libby Residence: 1960-61, 1964-66, 1968-84
Dates of his Employment at Grace, and jobs held at Grace: 4/10/68-4/2/84; Dry Mill Sweeper; Construction, Repair maintenance; Mechanic; Welder
Other Places of Grace Asbestos Exposure: Libby lumbermill employee (1964-66)
Nature and Extent of Exposure
Symptoms of his Lung Condition.

48.   Carl Larson (deceased), by deposition.  His testimony is summarized below:

Dates of his Libby Residence: 1936-54, 1958-99
Other Places of Grace Asbestos Exposure: Libby lumbermill employee (1958-81)
Nature and Extent of Exposure
Symptoms of his Lung Condition.

49.     John Lyle (deceased), by deposition.  His testimony is summarized below:

> Dates of his Libby Residence: 1944-60, 1965-01
> Dates of his Employment at Grace: 1/19/67-10/7/93 (Mechanic; Demolition_
> Other Places of Grace Asbestos Exposure: Libby lumbermill employee (1959-60); Father
>       Grace employee (1949-60)
> Nature and Extent of Exposure
> Symptoms of his Lung Condition.

50.     Lloyd Maynard (deceased), by deposition.  His testimony is summarized below:

Lloyd Maynard was a long time resident of Libby, Montana from 1950 until his death in 1989.  He worked as a sweeper at the Zonolite / Grace Libby mine and mill from 1957 to 1959 and as a sweeper, mill operator, from 1961 until 1975, with interruptions of service during that time period.  He was exposed to Grace asbestos while working as a Burns Security Service at the Grace facility 1980 and worked there for several years.  He died in1989.  His deposition includes testimony as to the nature and extent of his Grace asbestos exposure and his symptoms from his asbestos related disease.  Lloyd Maynard settled his case against Grace in 1988 for $325,000.

51.     Alfred Miron will testify concerning the following:

Alfred Miron lived in Libby, Montana from 1959 to 1961 and from 1965 to 1976.  He was exposed to Grace asbestos while employed by Grace from 1965 to 1976 and while employed by J. Neils Lumber Company's Libby lumber mill from 1959 to 1961.  He was also exposed to Grace asbestos while going about his activities of daily living in Libby.  He will testify as to the nature and extent of his Grace asbestos exposure.  He will testify as to his symptoms from his asbestos related disease.

52.     Jack Mitchell (by deposition).  His testimony is summarized below:

Jack Mitchell was employed by Grace at its Libby mine and mill during summer break from school from 1965 to 1970 where he worked in the mill as a construction laborer and sweeper.  He will testify as to the nature and extent of his Grace asbestos exposure.  He will testify as to his symptoms from his asbestos related disease.  He settled his case against Grace in 1999 for the sum of $280,000.

53.     Thomas Murray (deceased), by deposition.  His testimony is summarized below:

> Dates of his Libby Residence: 1948 & 1949 (summers)
> Dates of his Employment at Grace, and jobs held at Grace: 1948-49; Dry Mill Sweeper;
>       Transfer point; Construction; Mechanic; Welder
> Nature and Extent of Exposure
> Symptoms of his Lung Condition.

54.     Larry Nelson will testify concerning the following:

Larry Nelson resided in Libby or Lincoln County, Montana from 1946 to 1968; from 1970 to 1975; and from 1986 to the present. He was exposed to Grace asbestos while employed by N & N Logging in the 1960's and 1970's and while employed by J. Neils and St. Regis Lumber Company from 1964 to 1965 and from 1968 to 1969. He was also exposed to Grace asbestos while going about his activities of daily living in Libby. He will testify as to the nature and extent of his Grace asbestos exposure. He will testify as to his symptoms from his asbestos related disease.

55.     Robert Nelson (deceased), by deposition. His testimony is summarized below:

> Dates of his Libby Residence: 1957-60, 1962-64, 1970-73, 1974-75
> Dates of his Employment at Grace, and jobs held at Grace: 8/2/63-6/19/64; Labor Pool, Dry Mill Sweeper, Shift Tester, Dumpman, Euc driver
> Other Places of Grace Asbestos Exposure: Libby lumbermill employee (1957-60, 1967-69 off & on, 1970-71)
> Nature and Extent of Exposure
> Symptoms of his Lung Condition.

56.     William Powell will testify concerning the following:

> Dates of his Libby Residence: 1949-68, 1983-90, 2001-present
> Other Places of Grace Asbestos Exposure: Libby lumbermill employee (9/67-2/68, 6/77-10/80); lived with relatives who worked at Grace (summers, 1959-63); played in piles (childhood)
> Nature and Extent of Exposure
> Symptoms of his Lung Condition.

57.     Darlene "Toni" Riley (deceased), by deposition. Her testimony is summarized below:

> Dates of her Libby Residence: 1944-51, 1951-54 (summers), 1956-98
> Nature and Extent of Grace Asbestos Exposure in Libby and Lincoln County, Montana
> Symptoms of her Lung Condition.

58.     Dan Schnetter will testify by deposition or in person. His testimony is summarized below:

Dan Schnetter has lived in Libby most of his adult life. He was exposed to Grace asbestos while working for Grace's Libby mine in the dry mill 1974 to 1982. In 1997, after 7 days of trial in Lincoln County District Court, he settled with Grace for the sum of $1,100,000. He will testify as to the nature and extent of his Grace asbestos exposure. He will testify as to his symptoms from his asbestos related disease.

59.     Steve Schnetter will testify by deposition or in person. His testimony is summarized below:

Steve Schnetter is a long time Libby, Montana resident. He was exposed to asbestos while employed by Grace from 1973 to 1990. He was also exposed to Grace asbestos while going about his activities of daily living in Libby. He will testify as to the nature and extent of his Grace asbestos exposure. He will testify as to his symptoms from his asbestos related disease. He settled his case with Grace for the sum of $225,000 in April, 2000.

60.    Billie Schull will testify concerning the following:

Dates of his Libby Residence: 1962-present
Dates of his Employment at Grace, and jobs held at Grace: 1964-7/12/68; Laborer; Euclid
        driver; Skip truck driver; Ore regrader; Bagging facility
Other Grace Asbestos Exposure: Libby lumbermill employee (1973-2001)
Nature and Extent of Exposure
Symptoms of his Lung Condition.

61.    Wilma Shearer will testify concerning the following:

Dates of her Libby Residence: 1944-65, 1980-present
Other Places of Grace Asbestos Exposure: Husband Grace employee (12/9/59-4/27/61);
        Father Grace employee (11/9/44-5/15/61)
Nature and Extent of Exposure
Symptoms of her Lung Condition.

62.    Judy Shelmerdine will testify concerning the following:

Dates of her Libby Residence: 1950-67, 1973-75, 1980-present
Other Places of Grace Asbestos Exposure: Ex-Husband Grace Employee (9/11/75-
        12/08/75)
Nature and Extent of Exposure
Symptoms of her Lung Condition, including her use of and need for oxygen.

63.    Donna Shriner will testify concerning the following:

Dates of her Libby Residence: 1938-present
Other Grace Asbestos Exposure: Played in piles (child; Neighbor Grace Employee, Grace
        vehicle (1945-63); Husband Libby lumbermill employee (1959-93);
Nature and Extent of Exposure
Symptoms of her Lung Condition, including her use of and need for oxygen.

64.    Lester Skramstad (deceased), by deposition. His testimony is summarized below:

Dates of his Libby Residence: 1954-58, 1959-61, 1966-2007
Dates of his Employment at Grace, and jobs held at Grace: 8/26/59-7/15/61; Dry Mill
        Sweeper, Popping Plant; Truck Driver; Millwright
Other Places of Grace Asbestos Exposure: Libby lumbermill employee (1954-57)
Nature and Extent of Exposure

Symptoms of his Lung Condition.

65.    Norita Skramstad will testify concerning the following:

Dates of her Libby Residence: 1954-61, 1966-present
Other Places of Grace Asbestos Exposure: Husband Grace employee (8/26/59-7/15/61);
      track, swimming pool, ballfields (1964-late 90's)
Nature and Extent of Exposure
Symptoms of her Lung Condition.

66.    Rex Smith (deceased), by deposition.  His testimony is summarized below:

Dates of his Libby Residence: 1950-55, 1957-96
Dates of his Employment at Grace, and jobs held at Grace: 1950-55, 1957-87; Dry Mill
      Sweeper, Ore Tester in Mill Lab, Clerk in Warehouse, Mine Office, Mill Office
Nature and Extent of Exposure
Symptoms of his Lung Condition.

67.    Ronald Smith will testify concerning the following:

Dates of his Libby Residence: 1945-61, 1963-64, 1982-83, 1985, 1996-97
Dates of his Employment at Grace, and jobs held at Grace: 7/29/63-2/15/64; Dry Mill
      Sweeper, Truck Driver
Other Places of Grace Asbestos Exposure: Father Grace Employee (1950-61)
Nature and Extent of Exposure
Symptoms of his Lung Condition, including his use of and need for oxygen.

68.    Jay Swennes will testify by deposition or in person.  His testimony is summarized below:

Jay Swennes is a long time resident of Lincoln County, Montana.  He was exposed to
Grace asbestos while employed by Grace at its mine and mill in Lincoln County from 1973 to
1981 and by St. Regis Company from 1971-1972.  He was also exposed to Grace asbestos while
going about his activities of daily living in Libby.  He will testify as to the nature and extent of
his Grace asbestos exposure.  He will testify as to his symptoms from his asbestos related
disease.  In August, 2000 he settled his case against Grace for $580,000.

69.    Mike Switzer will testify concerning the following:

Mike Switzer is a long time resident of Libby, Montana from 1937 to 1955 and from
1975 to the present.  He was exposed to Grace asbestos while living with his father, who was a
Grace Libby mine and mill employee.  He was exposed to Grace asbestos while working as a
sawyer below the tailings on Grace property.  He was also exposed to Grace asbestos while
going about his activities of daily living in Libby.  He will testify as to the nature and extent of
his Grace asbestos exposure.  He will testify as to his symptoms from his asbestos related
disease.

70.     Leroy Thom will testify concerning the following:

Dates of his Libby Residence: 1966-present
Dates of his Employment at Grace, and jobs held at Grace: 5/22/74-12/91; Dry Mill
        Sweeper; Construction; Millwright; Tear down
Nature and Extent of Exposure
Symptoms of his Lung Condition.
His testimony will include foundation evidence for admissibility of photographs of the
        Grace facility in Lincoln County, Montana and for admissibility of some
        documentary evidence.

71.     Eva Thomson will testify concerning the following facts:

Dates of her Libby Residence:
Other Places of Grace Asbestos Exposure: Father Grace Employee (1955-60); Husband
        Grace Employee (1968-90); Cleaned Grace worker bus (1985-88)
Nature and Extent of Exposure
Symptoms of her Lung Condition.

72.     A. Diane Troyer will testify concerning the following:

Dates of her Libby Residence: 1949-present
Other Places of Grace Asbestos Exposure: Father Grace Employee (1957-69); Grace
        company van (1957-69)
Nature and Extent of Exposure
Symptoms of her Lung Condition.

73.     Margaret Vatland (deceased), by deposition.  Her testimony is summarized below:

Dates of her Libby Residence: 1945-96
Other Places of Grace Asbestos Exposure: Husband Grace Employee (1955-74)
Nature and Extent of Exposure
Symptoms of her Lung Condition.

74.     Kay Vinson will testify concerning the following:

Dates of her Libby Residence: 1954-present
Other Places of Grace Asbestos Exposure: Employee at Libby laundry, where washed
        Grace employee clothes (1968-73)
Nature and Extent of Exposure
Symptoms of her Lung Condition, including her use of and need for oxygen as a result of
        her asbestos related lung disease.

75.     Verle Vinson (deceased), by deposition.  His testimony is summarized below:

Dates of his Libby Residence: 1946-2006

Dates of his Employment at Grace, and jobs held at Grace: 2/12/49-1/15/50; Labor Pool
Other Places of Grace Asbestos Exposure: Libby lumbermill employee (1953-87)
Nature and Extent of Exposure
Symptoms of his Lung Condition.

76.     Edgar Warner will testify concerning the following:

Dates of his Libby Residence: 1968-78, 1980-82, 1986-2001
Dates of his Employment at Grace, and jobs held at Grace: 8/16/67-7/10/78; Labor Pool,
    Oiler, Asst. Mechanic, Mill Sweeper, Ore Assayer, Mechanic
Nature and Extent of Exposure
Symptoms of his Lung Condition, including his use of and need for oxygen as a result of
her asbestos related lung disease.

77.     Robert Wilkes will testify concerning the following:

Dates of his Libby Residence: 1943-52, 1953-present
Dates of his Employment at Grace, and jobs held at Grace: 5/4/45-12/13/45; Truck
    Driver, Dry Mill
Nature and Extent of Exposure
Symptoms of his Lung Condition, including his use of and need for oxygen.

78.     Robert Wilkins (deceased), by deposition.  His testimony is summarized below:

Robert Wilkins worked for Grace in Lincoln, County from 1966 until 1990.  His jobs there included working in the dry mill, as a Euclid driver; as a mechanic in the mine, and at the loading facilities on the Kootenai (cleaning cars and working on the ore loader).  The deposition will provide testimony as to the nature and extent of his Grace asbestos exposure and as to his symptoms from his asbestos related disease.  In May, 2000 he settled his case against Grace for $800,000.

79.     Andrew Wright (deceased), by deposition. His testimony is summarized below:

Dates of his Libby Residence: 1956-62, 1968-73; 1975-2001
Dates of his Employment at Grace, and jobs held at Grace: 5/27/57-1/18/63;
    Construction, Wet Mill, Dry Mill, Euclid Driver
Nature and Extent of Exposure
Symptoms of his Lung Condition.

80.     Any other Libby Claimant, to the extent agreement is not reached on the pending draft

stipulation relating to facts concerning available insurance coverage for their claims.[22]

## III.   List of Exhibits

1.    Whitehouse (2004), "Asbestos-Related Pleural Disease Due to Tremolite Associated with Progressive Loss of Lung Function:   Serial Observations in 123 Miners, Family Members, and Residents of Libby, Montana," Am J Ind Med 46:219-225 (2004).

2.    Whitehouse et al (2008), "Environmental Exposure to Libby Asbestos and Mesotheliomas," Whitehouse (2008) Am J Ind Med. 51(11):877-880.

3.    Printout, Client Sort by Exposure (Community/Family Member/Worker) (CARD patients only).

4.    Printout, Dead in 123 patients in Whitehouse (2004), as of 3/12/09.

5.    Chart "Case # Type of Progression" with rapid progression x-rays on CD.

6.    CD, "Whitehouse Progression films."

7.    CD, "Plaque to Interstitial Disease."

8.    CD, "photos of pleural plaques." (3/14/09)

9.    Chart, "Summary of Mortality Study Disease Percentages Significant Contributing Factor Analysis (as of 7/9/08)."

10.   Chart, "Summary of Mortality Study Disease Percentages Primary Cause Analysis (as of 7/9/08)."

11.   Spreadsheet, "CARD Mortality Study, 76 Non-Malignant Deaths, CHX Readings by Dr. Whitehouse."  May 2009.

12.   Spreadsheet, "CARD Mortality Study, Meso, LC, Other Cancers, CHX Readings by Dr. Whitehouse."  May 2009.

13.   Spreadsheet, "CARD Mortality Study, 76 non-malignant deaths, CT Scans per Dr. Whitehouse."  May 2009.

14.   Spreadsheet, "CARD Mortality Study, 76 Non-Malignant Deaths, CHX Readings

---

[22] Instead of calling hundreds of Libby Claimants to testify at the Confirmation Hearing to prove their dates of residence in Lincoln County, Montana, and status as worker, family member, or community member, the Libby Claimants have proposed a stipulation that would obviate the need for these witnesses.  At this time, the proposed stipulation is under consideration by the Plan Proponents.  This evidence is relevant to prove the existence of available insurance coverage and, thus, the insurance rights of the Libby Claimants—a key element of several of their pending objections to the Plan.

by Dr. Frank."  May 2009.

15.    Spreadsheet, "CARD Mortality Study, non-malignant ARD deaths - primary/ contributing causes 5/9/09."

16.    "Death Certificate Causes of Death 110."  May 2009.

17.    Spreadsheet, "CHX Measurements by Dr. Whitehouse on various clients of MHSM and LSK 3/13/09."

18.    Gauntlet (76 Non-Malignant Asbestos-Related Disease Deaths, Using Dr. Whitehouse CHX Readings).

19.    Gauntlet (76 Non-Malignant Asbestos-Related Disease Deaths, Using Dr. Frank CHX Readings).

20.    Gauntlet (49 Non-Malignant Asbestos-Related Disease Deaths per DC Contributing Cause, Using Dr. Whitehouse CHX Readings).

21.    Gauntlet (49 Non-Malignant Asbestos-Related Disease Deaths per DC Contributing Cause, Using Dr. Frank CHX Readings).

22.    Gauntlet (38 Non-Malignant Asbestos-Related Disease Deaths per DC Underlying Cause, Using Dr. Whitehouse CHX Readings).

23.    Gauntlet (38 Non-Malignant Asbestos-Related Disease Deaths per DC Underlying Cause, Using Dr. Frank CHX Readings).

24.    Printout, "Libby Claimants on Oxygen (CARD patients only)," 5/28/08.

25.    Printout, "Libby Claimants with FVC, TLC or DLCO < 60 (CARD patients only)," 5/28/08.

26.    Chart "Mesothelioma Cases Due to Exposure to Libby Asbestos."

27.    Chart, "Summary of Deceased Clients Chart MHSM."

28.    Printout, Deceased MHSM clients (alpha order) 3/12/09.

29.    Chart, "Summary of Deceased Clients Chart LSK."

30.    Printout, Deceased LSK clients (alpha order) 3/12/09.

31.    Chart, "Workers with Disease - 1969."

32.    Chart, "Workers with Disease - 1975."

33.    Chart, "Workers with Disease - 1976."

34.    Cookson (1986), Fig. 1. Chart W-2 "Years since first exposed."

35.    Chart, Studies on Radiographic Progression of Asbestos Disease.

36.    Chart, Workers Dead from Asbestos Disease (2000 study).

37.    Audit of HNA Denials and Downgrades of Severity of Disease (December 2005), and chart of data with non-Libby Claimants deleted.

38.    Public Citizen, "Leading Medical Experts Fault Arbitrary, Outdated Medical Criteria in Asbestos Bill," (May 2005).

39.    Letter dated February 9, 2005, titled "Preliminary Report of 79 Chest X-rays Reviewed Relative to the Asbestos Injury Resolution Act of 2005, with attached Log of Patients Criteria Study, FVC and on Oxygen (non-Libby Claimants' names are blacked out.)

40.    Letter by the President of the American Thoracic Society.

41.    Chart, "Weill comparison to ATSDR and CARD."

42.    Chart, W.R. Grace & Co., "Source Emissions - Results of Surveys 1975."

43.    Memo, W.R. Grace & Co., McCaig to Walsh 9/17/85.

44.    Chart, "Center for Asbestos Related Disease, Libby Pulmonary Function Test (PFT) Comparison with Independent Medical Exam PFTs."

45.    Medical records of Libby Claimants and others (already delivered to opposing parties), including the following, with references to exhibit numbers in the Dr. Whitehouse Expert Report (May 2009):

    a.    Various listed patients in the CARD mortality study, Exh. 7.

    b.    Various listed patients on the rapid progression list, Exh. 6.

    c.    Various listed patients on the list of patients on oxygen, Exh. 8.

    d.    Various listed individuals on the list of mesotheliomas, Exh. 9.

    e.    Various listed patients on the list of deceased clients, Exh. 10.

    f.    Various listed patients on the spreadsheet titled "CHX Measurements by Dr. Whitehouse on various clients of MHSM and LSK."

      g.     Libby claimants and settled claimants specifically listed as witnesses.

      h.     Settled claimants as listed.

46.     Demonstrative exhibits illustrating the testimony of Dr. Alan C. Whitehouse.

47.     Demonstrative exhibits illustrating the testimony of Dr. Arthur L. Frank.

48.     Demonstrative exhibits illustrating the testimony of Dr. Craig A. Molgaard.

49.     U.S., EPA, Determination and Findings of Public Health Emergency for the Libby Asbestos Site in Lincoln County, Montana.  (3 pages) 6/17/09.

50.     U.S., EPA, Action Memorandum Amendment (23 pages) 6/17/09.

51.     U.S., EPA, Certification of Index of Documents in the Administrative Record for the Determination and Findings of Public Health Emergency for the Libby Asbestos Site in Lincoln County, Montana.  (4 pages) 6/16/09.

52.     CDC, NIOSH, Work-related Lung Disease Surveillance System, Figure 1-1 Asbestosis: Number of Deaths, Crude and Age-adjusted Death Rates, U.S. Residents age 15 and Over, 1968-2005.

53.     CDC, NIOSH, Work-related Lung Disease Surveillance System, Figure 1-3b. Asbestosis: Age-adjusted Death Rates by County, U.S. Residents age 15 and Over, 1995-2004.

54.     CDC, NIOSH, Work-related Lung Disease Surveillance System, Table 1-10.  Asbestosis: Counties with Highest Age-adjusted Death Rates (per million population), U.S. Residents age 15 and Over, 1995-2004.

55.     CDC, NIOSH, Work-related Lung Disease Surveillance System, Figure 7-1 Malignant Mesothelioma:  Number of Deaths, Crude and Age-adjusted Death Rates, U.S. Residents age 15 and Over, 1999-2005.

56.     CDC, NIOSH, Work-related Lung Disease Surveillance System, Figure 7-3.  Malignant Mesothelioma:  Age-adjusted Death Rates by County, U.S. Residents age 15 and Over, 2000-2004.

57.     CDC, NIOSH, Work-related Lung Disease Surveillance System, Table 7-10.  Malignant Mesothelioma:   Counties with Highest Age-adjusted Death Rates (per million population), U.S. Residents age 15 and Over, 2000-2004.

58.  Transcript of proceeding in U.S. v. W.R. Grace & Co., et al, Case No. CR05-07-M-DWM, U.S. District Court for the District of Montana (Missoula Division), February 23, 2009 at 1:00 o'clock p.m., at pp.112-13.

59.  Expert Report of Suresh Moolgavkar, M.D., Ph.D., 10/3/06.

60.  Photographs of Grace / Zonolite facilities at Libby mine and mill near Libby, Lincoln County, Montana.

61.  Photographs of Grace / Zonolite screening facility, conveyer system, and loading facility on Kootenai River, Lincoln County, Montana.

62.  Grace / Zonolite correspondence, memoranda, and documentation concerning the asbestos health hazard at Libby, Lincoln County, Montana.

63.  Deposition Exhibits from the February 22, 2007 deposition of Jay Hughes.

64.  Deposition Exhibits from the June 11, 2009 deposition of Jay Hughes.

65.  Deposition Exhibits from the May 13, 2009 deposition of Richard Finke.

66.  Deposition Exhibits from the May 6, 2009 deposition of Jeffrey Posner.

67.  Grace's March 2001 Monthly Asbestos Litigation Summary.

68.  "Common Exhibits," produced by compact disk with the expert report of Terry Spear, Ph.D.

69.  All Reports of Industrial Hygiene Studies of the Zonolite Company and/or Grace & Company generated by the Division of Disease Control, Montana State Board of Health concerning asbestos, asbestos dust, and asbestos hazards at the Zonolite / Grace mine, mill, and other facilities in Libby and/or Lincoln, County,  Montana.

70.  Relevant excerpts from transcripts of testimony of Earl Lovick, deceased, from the following:

a.  Earl Lovick deposition, September 6, 1989, in *Floyd Cole, et al. v. Grace*, U. S. District Court for the District of Montana, Cause No. GD 83-13686, including exhibits.

b.  Earl Lovick trial testimony, August 23, 1990, *Johnson v. Grace*, U. S. District Court, for the District of Montana, Cause No. 88-145-M-HP, including exhibits.

      c.      Earl Lovick deposition, May 27, 1992, *Robertson, Vose, DeShazer, et al. v. Grace*, Montana Nineteenth Judicial District Court, Lincoln County, Montana, Cause Nos. DV-92-39, DV-92-40, DV-92-42, including exhibits.

      d.      Earl Lovick deposition, December 19, 1996, *Hurlbert, Skramstad, Kaeding, Riley v. Grace*, Montana Nineteenth Judicial District Court, Lincoln County, Montana, Cause Nos. DV-95-109, DV-95-127, DV-96-71, DV-96-111, including exhibits.

      e.      Earl Lovick trial testimony, April 29, 1997, *Dan Schnetter v. Grace*, Nineteenth Judicial District Court, Lincoln County, Montana, Cause No. CDV-94-74, including exhibits.

      f.      Earl Lovick trial testimony, May 20, 1997, *Lester Skramstad v. Grace*, Nineteenth Judicial District Court, Lincoln County, Montana, Cause No. DV-95-127, including exhibits.

71.     Relevant excerpts from transcripts of depositions of Jay Hughes to be used in the event he is unavailable for trial.

72.     Relevant excerpts from transcripts of depositions of Jeff Posner to be used in the event he is unavailable for trial.

73.     Relevant excerpts from transcripts of depositions of Elihu Inselbuch to be used in the event he is unavailable for trial.

74.     Relevant excerpts from transcripts of depositions of Peter Lockwood to be used in the event he is unavailable for trial.

75.     Relevant excerpts from transcripts of depositions of Mark Peterson to be used in the event he is unavailable for trial.

76.     Relevant excerpts from transcripts of depositions of John Parker to be used in the event he is unavailable for trial.

77.     Relevant excerpts from transcripts of depositions of Suresh Moolgavkar to be used in the event he is unavailable for trial.

78.     Relevant excerpts from transcripts of trial testimony of Dr. Peter Lees, given during the estimation trial of this case, to be used in the event he is unavailable for trial.

79.     Relevant excerpts from transcripts of trial testimony of Dr. Elizabeth Anderson, given during the estimation trial of this case, to be used in the event she is unavailable for trial.

80.     Relevant excerpts from transcripts of depositions for witnesses called by the Libby claimants to testify by deposition.

81.    All relevant insurance policies at issue in this case.

82.    Expert Report of Mark A. Peterson, March 2009.

83.    Deposition Exhibits from the deposition of Mark Peterson in this case.

84.    Deposition Exhibits from the deposition of Peter Lockwood in this case.

85.    Deposition Exhibits from the deposition of Elihu Inselbuch in this case.

86.    Relevant excerpts from Estimation Hearing transcript including admissions of counsel made in opening statements and other binding statements and admissions made in open court.

87.    Relevant excerpts from the opening statement in the Grace criminal trial, including admissions of counsel made in opening statements and other binding statements and admissions made in open court.

88.    Trial Exhibits from *Dan Schnetter v. Grace*, Nineteenth Judicial District Court, Lincoln County, Montana, Cause No. CDV-94-74.

89.    All responses received to discovery propounded by the Libby Claimants in this case.

90.    First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders dated as of February 27, 2009 [Docket No. 20872], including all exhibits.

91.    Debtors' Disclosure Statement for the Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders dated as of September 19, 2008 [D.I. No. 19581], including all exhibits.

### IV.    Reservation of Rights

The Libby Claimants reserve the right to introduce additional testimony and documentary evidence in rebuttal of the Plan Proponents' proof at the confirmation hearing, or in the event that any adverse witness testifies inconsistently with his deposition testimony. The Libby Claimants reserve the right to join in witness designations (by deposition as well as live) of any other party,

to call any person called to testify by any other party, to join in exhibits designated by any other party, and to join in any exhibit introduced by any other party.  Since discovery has not yet been completed, the Libby Claimants reserve the right to amend and/or supplement this pretrial submission after completion of discovery.

Dated: July 20, 2009
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, DE  19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

- and -

Daniel C. Cohn
Christopher M. Candon
**COHN WHITESELL & GOLDBERG LLP**
101 Arch Street
Boston, MA 02110
Telephone:  (617) 951-2505
Facsimile:  (617) 951-0679

*Counsel for Libby Claimants*