## Description of Plan Proponent Witness Testimony

### Dr. Laura Welch (live)

Dr. Welch is an occupational medicine doctor who has been recognized on numerous occasions by federal courts as an expert in the diagnosis, causation, and epidemiology of asbestos-related diseases. She is the lead investigator for the largest epidemiological study of asbestos-exposed workers tracked to-date. Dr. Welch will testify to the matters set forth in her expert witness reports, which include, but are not limited to, the following:

> Her opinion that the medical and exposure criteria for the TDP are medically reasonable
>
> Her role in drafting and creating the TDP's severe pleural disease category (category 4-B)
>
> That severe lung function decline as a result of pleural thickening is generally associated only with blunting of the costophrenic angle
>
> That DLCO can be reduced as a result of a variety of smoking or non-asbestos-related diseases
>
> That Dr. Whitehouse's papers and analyses do not support the Libby Claimants' assertions that individuals with "Libby pleural disease" have a probability of death or that they will suffer more severe lung function losses than what has been observed in the medical literature for persons with pleural disease outside of Libby.

### Mr. Elihu Inselbuch (live)

Mr. Inselbuch is a New York lawyer with over 40 years experience in complex commercial litigation. For almost 25 years he and his law firm have represented the asbestos claimants committee in over 20 asbestos-related bankruptcies or class actions, beginning with the Johns Manville reorganization in the 1980s. Mr. Inselbuch will testify generally about the structure of the Asbestos PI Trust and provisions of the PI Trust Agreement and TDP dealing with the Trust's governance and method of operations. This includes but is not limited to the treatment of direct and indirect PI Trust Claims under the TDP and the role of the Trustees, the

TAC, and the FCR with respect to the Trust's governance and operations.  Mr. Inselbuch will also testify about various TDP provisions that the Libby Claimants allege are unfair or discriminatory, including, but not limited to, the treatment of wrongful death and loss of consortium claims, the development of the severe pleural disease medical and exposure criteria, the elimination of punitive damages, the cap on judgments for cases against the Trust litigated in the tort system, and the use of nationwide averages in the scheduled values in the TDP.  Mr. Inselbuch will also testify about the ACC's attempts to meet the stated concerns of the Libby Claimants in the TDP.

### Mark Peterson, Ph.D., J.D. (live)

Dr. Peterson is a lawyer and social scientist who has been recognized by numerous federal district courts around the country as an expert in the estimation and valuation of asbestos personal injury claims, the projection of future asbestos personal injury claims, and the aggregate value of such claims estimated to be asserted against either an asbestos defendant in the tort system or an asbestos bankruptcy trust.  Dr. Peterson will testify to the matters set forth in his March 2009 report, including, but not limited to, the following:

Grace's liability for asbestos personal injury claims had it continued in the tort system

Grace's historical settlement and judgment averages

Grace's historical settlement criteria and practices

Trends in the values of claims settled by Grace

Trends in claim filings against Grace

Projections of future claims against Grace and the Grace Trust

A comparison of the TDP criteria to Grace's historical practices and explanation of why in many respects those criteria are more stringent than Grace's historical settlement practices

The estimated liability of the Trust if it resolves claims pursuant to the TDP as compared to the estimated liability of the Trust if it returned to the tort system as a successor to Grace

The derivation of the scheduled values in the TDP and how developments in asbestos litigation affected, and would have continued to affect, Grace's historical settlement payments on a nationwide average basis

That the Libby Claimants have misconstrued Dr. Peterson's opinions concerning the projected average settlement value of claims against Grace and that the factors that caused the increase in value of Grace nationwide likely would not have affected Libby claim values.

## Jay Hughes (live)

Mr. Hughes is Grace's longtime in-house lawyer charged with overseeing the defense and settlement of asbestos personal injury claims. He has served in this capacity since 1991. Mr. Hughes is expected to testify about his knowledge of Grace's asbestos containing products and asbestos related activities that gave rise to asbestos personal injury claims against Grace, the nature of the asbestos PI claims asserted against Grace and other parties, and Grace's defense of such claims. He is expected to testify about Grace's historical practices and settlement criteria for the defense and resolution of asbestos personal injury claims, his communications with various insurance companies about claims settlements, and his observations about the least expensive means by which to resolve asbestos personal injury claims against Grace. Mr. Hughes will compare Grace's historical settlement criteria to the medical and exposure criteria and other aspects of the TDP. Mr. Hughes is also expected to testify that Grace from time-to-time received claims from individuals who were exposed to asbestos at or around Grace-owned expansion plants or other facilities, or were otherwise exposed to asbestos from Grace in ways other than through exposure to a finished product. Mr. Hughes may also testify about potential indirect claims against the Trust. Mr. Hughes may also testify about the impact of Section 524(g) on

- 3 -

various non-Debtor entities named as defendants in lawsuits.  Finally, Mr. Hughes may also testify about Grace's non-product insurance policies.

## Hudson La Force III (live)

Mr. La Force is Senior Vice President and Chief Financial Officer of W.R. Grace & Co. Mr. La Force may offer testimony about the feasibility of the proposed Plan of Reorganization.

## Mark A. Shelnitz (live)

Mr. Shelnitz is Vice President, General Counsel and Secretary of W.R. Grace & Co.  Mr. Shelnitz may offer testimony related to the agreement reached with the General Unsecured Creditors regarding the range of interest to be charged to Grace as well as the subsequent decision by the general unsecured creditors not to honor this agreement.  Mr. Shelnitz may also testify in support of the Plan Proponents' contention that the Plan of Reorganization is proposed in good faith pursuant to the Bankruptcy Code.  Mr. Shelnitz may also offer testimony with respect to the transactions with Sealed Air and Fresenius, including, but not limited to, authenticating the Sealed Air and Fresenius deal books.

## Richard Finke (live)

Mr. Finke is the Assistant General Counsel for Litigation for W.R. Grace & Co.  Mr. Finke may testify about the history of W.R. Grace's property damage liability.  Mr. Finke may also testify in support of the Plan Proponents' contention that the Plan of Reorganization is proposed in good faith pursuant to the Bankruptcy Code.  Mr. Finke may also testify about the "best interest" test, comparing what impact liquidating the Debtors under Chapter 7 rather than reorganizing them under Chapter 11 would have on various creditors.  Mr. Finke may also testify about the impact of Section 524(g) on various non-Debtor entities named as defendants in lawsuits.  Finally, Mr. Finke may testify about the Plan's compliance with the fair and equitable

DOCS_DE:150986.1

requirements of Section 524(g), including but not limited to, the benefits provided by or on

behalf of the Settling Asbestos Insurance Companies.  Mr. Finke may testify about facts relevant

to the exculpation and release provisions of the Plan and the settlement of claims against Sealed

Air and Fresenius

## Jeff Posner (live)

Mr. Posner is an outside consultant to Grace who since 1990 has been in charge of

overseeing Grace's insurance program, which included, among other things, obtaining insurance

proceeds to reimburse Grace for payments of asbestos personal injury and property damage

claims.  He is expected to testify about Grace's historical relationship with its insurance carriers,

the various coverage-in-place/reimbursement agreements that Grace entered into with various

excess insurance companies and how the cost of any given claim paid by Grace was reimbursed

in part by insurance companies.  Mr. Posner may also testify about his understanding of the

differences between products and non-products insurance coverage for asbestos personal injury

claims within Grace's insurance program, and Grace's experience in dealing with various

insurance companies on that subject.  Mr.  Posner may also testify about the claims of third

parties against certain insurers.  Mr. Posner may also testify about insurance-related facts

relevant to the "best interest" test, comparing what impact liquidating the Debtors under Chapter

7 rather than reorganizing them under Chapter 11 would have with respect to potential insurance

recoveries.

## Dr. David Weill (live)

Dr. Weill is an Associate Professor at the Stanford School of Medicine.  Dr. Weill is the

Medical Director of the Lung and Heart-Lung Transplant Program at Stanford Hospital and is the

Director of the Adult Cystic Fibrosis Center, also at Stanford Hospital.  Dr. Weill will testify to

the matters set forth in his expert witness reports, which include, but are not limited to, the

following:

> His opinion that the medical and exposure criteria for the TDP are medically reasonable
>
> That the TDP's severe pleural disease category (category 4-B) properly differentiates between those individuals who do and do not have severe non-malignant asbestos-related pleural disease
>
> That severe lung function decline as a result of pleural thickening is generally associated only with blunting of the costophrenic angle
>
> That DLCO is a highly sensitive yet non-specific lung function test that can be reduced as a result of a variety of smoking or non-asbestos-related diseases
>
> That Dr. Whitehouse's papers and analyses do not support the Libby Claimants' assertions that individuals with "Libby pleural disease" have a probability of death or that they will suffer more severe lung function losses than what has been observed in the medical literature for persons with pleural disease outside of Libby
>
> Dr. Weill may testify regarding any other medical contention advanced by the Libby Claimants.

## Dr. Suresh Moolgavkar (live)

Dr. Moolgavkar is a physician with a Ph.D. in mathematics and a post-doctoral training

in Epidemiology and Biostatistics.  Dr. Moolgavkar has served as a Full Member of the Fred

Hutchinson Cancer Research Center, a Professor of Epidemiology, an Adjunct Professor of

Biostatistics, and an Adjunct Professor of Applied Mathematics at the University of Washington

in Seattle.  Dr. Moolgavkar will testify about the issues identified in his expert report.

Specifically, Dr. Moolgavkar may offer testimony related to the toxicity of the amphibole

asbestos fibers located in Libby, Montana.  Dr. Moolgavkar may also offer testimony regarding

the epidemiological studies conducted in Libby, Montana.  Dr. Moolgavkar may also offer

testimony regarding the epidemiological contentions advanced by the Libby Claimants

including, but not limited to, the Libby Claimants' contentions about their exposures and resulting disease.

**Dr. Craig Molgaard (by deposition)**

Dr. Molgaard is a historical epidemiologist and medical anthropologist at the University of Montana.  Dr. Molgaard has submitted an expert report on behalf of the Libby Claimants.  The Plan Proponents may designate certain portions of Dr. Molgaard's deposition that apply general principles of epidemiology to the Libby Claimants' contentions.

**Dr. B. Thomas Florence**

Dr. Florence is the President of Analysis Research Planning Corporation (ARPC).  Dr. Florence will testify about issues identified in his expert report.  Dr. Florence's opinions include, but are not limited to, the application of the TDP criteria to a sample of the personal injury claimants who submitted personal injury questionnaires (PIQs) in connection with the estimation of personal injury liability in this bankruptcy case.  Dr. Florence may also offer testimony related to solvency.

**Dr. John Parker (live)**

Dr. Parker is Professor and Chief of Pulmonary and Critical Care Medicine at West Virginia University Health Sciences Center.  Dr. Parker will testify to the matters set forth in his expert witness reports, which include, but are not limited to, the following:

His opinion that the medical and exposure criteria for the Grace TDP are medically reasonable

That there is nothing distinct or unique about the manifestation of non-malignant disease among those individuals exposed to asbestos in Libby

That severe lung function decline as a result of pleural thickening is generally associated only with blunting of the costophrenic angle

- 7 -

That DLCO is a highly sensitive yet not specific lung function test that can be reduced as a result of a variety of smoking or non-asbestos-related diseases

That Dr. Whitehouse's papers and analyses do not support the Libby Claimants' assertions that individuals with "Libby pleural disease" have a probability of death or that they will suffer more severe lung function losses than what has been observed in the medical literature for persons with pleural disease outside of Libby

Dr. Parker may also testify regarding any other medical contention advanced by the Libby Claimants.

**Dr. Sam Hammar (by stipulation/report)**

Dr. Hammar is a pathologist who has been recognized by many courts as an expert on the pathology of asbestos-related diseases. He is expected to testify to the matters set forth in his expert witness report, specifically that from the perspective of pathology, there is no difference between asbestos disease caused by exposure to Libby asbestos and asbestos disease caused by other forms of asbestos.

**Dr. William Longo (live or by stipulated report and deposition)**

Mr. Longo is a mineralogist and materials scientist who has examined and tested various Grace asbestos-containing products while working as a consultant to Grace in the 1980s. He is expected to testify to the matters set forth in his expert witness report, including, but not limited to, the fact that many of Grace's commercial construction products (e.g. Monokote-3) contained amphibole asbestos both as result of contaminated vermiculite from Libby and by virtue of the fact that the commercially added chrysotile asbestos from Canada used in Grace's products also contained tremolite, which is an amphibole.

**The Honorable Alexander Sanders, Jr. (live)**

Judge Sanders is the Property Damage Future Claimants Representative. Judge Sanders may testify that the proposed Plan meets the requirement of being both fair and equitable under Section 524(g). He may also testify about potential future liability for property damage claims.

Judge Sanders may also testify in support of the Plan Proponents' contention that the Plan of Reorganization is proposed in good faith pursuant to the Bankruptcy Code.  He may also testify about the "best interest" test, comparing what impact liquidating the Debtors under Chapter 7 rather than reorganizing them under Chapter 11 would have on various creditors.  Judge Sanders may also testify about the impact of Section 524(g) on various non-Debtor entities named as defendants in lawsuits.  Judge Sanders may also offer testimony related to the fact that the amounts, numbers, and timing of future demands against the Asbestos PD Trust cannot be determined.  Judge Sanders may also offer testimony related to the manner in which future demands against the Asbestos PD Trust will be treated compared to current claims against the trust.  Finally, Judge Sanders may offer testimony about how the Asbestos PD TDP impacts Asbestos PD Claims.

**BMC Group Witness (live or by stipulation)**

The BMC Group is the Court appointed notice agent and claims consultant.  A corporate representative of the BMC Group may testify about the results of the official vote on the Plan of Reorganization.

**Todd Maynes (live or by stipulation)**

Mr. Maynes is a tax partner in the Chicago office of Kirkland & Ellis LLP.  Mr. Maynes may offer testimony related to the creation of the Asbestos PI Trust and the Asbestos PD Trust as qualified settlement funds and other tax requirements of the Plan and the Sealed Air and Fresenius settlement agreements.

**Ted Weschler (live)**

Mr. Weschler is the Chairman of the Equity Committee.  Mr. Weschler may testify in support of the Plan Proponents' contention that the Plan of Reorganization is proposed in good faith pursuant to the Bankruptcy Code.

**Pamela Zilly (live)**

Ms. Zilly is an investment banker and partner of the Blackstone Group.  She will testify concerning various financial matters, including, but not limited to, the Plan's feasibility, the value of the warrants to be contributed to the Asbestos PI Trust, the liquidation analysis, and the value of various estate assets.

**David T. Austern (live)**

Mr. Austern was appointed by the Bankruptcy Court as the future personal injury claimants' representative in these bankruptcy cases.  Mr. Austern will testify that protecting the Asbestos Protected Parties through the Asbestos PI Channeling Injunction is fair and equitable with respect to persons who might assert asbestos personal injury Demands in light of the benefits provided and to be provided to the Asbestos PI Trust on behalf of the Asbestos Protected Parties.  Mr. Austern will also testify that the Plan and Asbestos PI TDP provide reasonable assurance that the trust will value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner.  Mr. Austern may also offer testimony to the effect that the actual amounts, numbers, and timing of future personal injury demands against the Trust cannot be determined.

**Dr. Denise Martin (live)**

Dr. Martin is a Senior Vice President at NERA Economic Consulting.  Dr. Martin may offer testimony related to the fact that the exact amounts, numbers, and timing of future demands against the Trust cannot be determined.

DOCS_DE:150986.1

**Sargent Chamberlin (trial testimony from *U.S. v. W.R. Grace, et al* criminal trial)**

Mr. Chamberlin was the Director of Purchasing for the Scotts Company.  Mr. Chamberlin may testify about the Scotts Company's treatment and use of unexpanded vermiculite product purchased from W.R. Grace as well as vermiculite purchased from other sources, and other facts relevant to Scotts' claims.

**John Kennedy (trial testimony from *U.S. v. W.R. Grace, et al* criminal trial)**

Mr. Kennedy was the General Counsel of the Scotts Company.  Mr. Kennedy may testify about the Scotts Company's treatment and use of unexpanded vermiculite product purchased from W.R. Grace as well as vermiculite purchased from other sources and other facts relevant to Scotts' claims.

**Dayton Prouty (deposition)**

Mr. Prouty is a deceased mesothelioma victim who testified about the nature of his exposure to asbestos while an invitee on the premises of Grace's Dearborn Michigan facility.

**Reservations of Rights**

The Plan Proponents reserve the right for any identified witness to testify about any subject relevant to the confirmation hearing and reserve the right to call any witness listed on other parties' witness lists.  The Plan Proponents also reserve the right to use all pleadings submitted in this case and reserve the right to call a records custodian necessary to establish the authenticity or business records foundation of any exhibit the Plan Proponents seek to introduce into evidence, if such exhibit's admissibility is not stipulated.  This witness list does not include witnesses who are wholly rebuttal or impeachment witnesses, and the Plan Proponents reserve the right to call witnesses for rebuttal or impeachment purposes.