# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al.*,<br><br>            Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>Jointly Administered<br>Related Docket Nos. 19581, 19620<br><br>Hearing Date: July 27, 2009 @ 10:30 p.m. (EST) |

## DECLARATION OF RICHARD C. FINKE IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER APPROVING SETTLEMENT AGREEMENT AND MUTUAL RELEASE WITH ARROWOOD INDEMNITY COMPANY

Pursuant to 28 U.S.C. § 1746, the undersigned declarant hereby declares as follows, under penalty of perjury:

1. I am the Assistant General Counsel - Litigation at W.R. Grace & Co. (hereinafter referred to as "Grace"). I have been employed by Grace for more than twenty years, initially as Senior Litigation Counsel. I became Assistant General Counsel - Litigation in September 2005.

2. In that capacity, during the negotiations of the Settlement Agreement between Grace and Royal which is the subject of Debtors' Motion for an Order Approving Settlement Agreement and Mutual Release with the Royal Parties [Dkt. No. 22153](the "Motion for Approval"), I consulted with Grace's outside counsel who was involved in the negotiation of that Settlement Agreement, and, on June 17, 2009, I signed the Settlement Agreement.

3. I submit this declaration in support of the Motion for Approval. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinion, based upon my experience and my discussions with Grace's outside counsel involved in the negotiation of the Settlement Agreement. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

**The Disputes with the Royal Parties**

4. Royal Indemnity Company ("Royal") issued two high-level excess policies that provided insurance coverage to W. R. Grace & Co. ("Grace").

5. In addition, Royal issued certain policies to the Zonolite Company prior to 1963, although there were disputes between Grace and Royal regarding the existence and terms of some of these policies. As described more fully in Section 2.10.2 of the Disclosure Statement, the coverage issued by Royal to Zonolite was fully settled as to all asbestos-related claims pursuant to a January 5, 1995 Settlement Agreement. Arrowood Indemnity Company, as the successor-in-interest to Royal ("Arrowood"), has been designated in each plan of reorganization filed by the Debtors, including the Plan currently on file, as a Settled Asbestos Insurance Company with respect to these previously settled policies. The January 5, 1995 Settlement Agreement did not address the two high-level late-year excess policies issued by Royal to Grace, one of which did not have an asbestos exclusion.

6. It is my understanding that Arrowood disputes the extent of its coverage obligations under the one high-level excess policy without an asbestos exclusion. In addition, as is clear from the proceedings in these bankruptcy cases, Arrowood has raised, and has indicated that it will raise, certain objections to the plan of reorganization and other matters, and Arrowood filed a Proof of Claim in the Bankruptcy Case in an unliquidated amount.[1] Arrowood also claims, in multiple filings in these bankruptcy cases, to hold certain rights of contribution,

---

[1] The objections that the Royal Parties raised to the Plan are set out, among other places, in Royal's Preliminary Objections to Debtors' Joint Plan of Reorganization (Dk. 20450); Arrowood's Objections to Debtors' Amended Joint Plan of Reorganization (Dk. 21814); Arrowood's Phase II Objections to the Non-Debtor Release and Exculpation Provisions and the Injunction Impairing its Rights of Contribution, Subrogation and Reimbursement that are Contained in the Amended Joint Plan of Reorganization (Dk. 21815); Arrowood's Phase I Trial Brief Objecting to the Amended Joint Plan's Non-Debtor Release and Exculpation Provisions and the Injunction that Impairs Arrowood's Rights of Contribution, Subrogation and Reimbursement (Dk. 21945); and Arrowood's Phase I Trial Brief Objecting to the Plan Proponents' First Amended Joint Plan of Reorganization (Dk. 21946).

indemnity, reimbursement and/or subrogation as a result of the $100 million payment Royal made in satisfaction of its obligations under the January 5, 1995 Settlement Agreement.

### The Settlement Agreement

7. On June 17, 2009, Grace and Arrowood entered into a Settlement Agreement which, subject to the approval of the Court, compromises and resolves the disputes concerning and surrounding Royal's coverage. A copy of the Settlement Agreement was annexed as Exhibit "A" to the Debtors' Motion for an Order Approving the Settlement Agreement. The Parties to the Settlement Agreement are (a) the Grace Parties and (b) the Royal Parties, both as defined in the Settlement Agreement.

8. The Settlement Agreement was the product of many hours of work on settlement-related issues and negotiations to consummate the deal among the parties. The ACC and the Future Claimants' Representative, through their counsel, were also actively involved in negotiating with Arrowood. The terms of the Settlement Agreement generated by this process are the result of protracted arm's-length negotiations.

9. As part of the negotiation of the Settlement Agreement, Grace, the ACC and the Future Claimants' Representative sought as large a cash payment from Arrowood as possible, based on, among other things, Royal's alleged liability under the high-level excess policy without an asbestos exclusion. It is my understanding that Arrowood, for its part, argued that Grace, the ACC and FCR should take into consideration the allocation profile of the high-level excess policy,[2] Arrowood's status in run-off, and the overall value of the package of consideration offered by Arrowood.

---

[2] Arrowood argued that the excess policy allegedly issued by Royal in 1983 would have been among the last to respond under a pro rata allocation and that this policy would only have been impaired by a very large number of claims given the levels at which this policy attaches. Arrowood also asserted that other coverage defenses might apply.

10.  The Royal high-level excess policy that did not contain an asbestos exclusion, Excess Policy ED102071, has a $10 million aggregate limit. The policy provides $2.6 million in coverage excess of $75 million for Layer A and $7.4 million in coverage excess of $150 million for Layer B. It is my understanding that Arrowood contends that all underlying coverage below the attachment point had to be properly exhausted before Excess Policy ED102071 might be triggered.

11.  The deal that was ultimately struck among the parties and incorporated in the Settlement Agreement obligates the Royal Parties to provide a package of consideration that includes, among other things, the payment of the Settlement Amount of $5.8 million, the withdrawal of Arrowood's objections to the Plan, the resolution of Arrowood's Proof of Claim, and compromises with respect to Arrowood's rights of contribution, indemnity, reimbursement and subrogation.

12.  Throughout the negotiation of the settlement, Arrowood made clear that it would enter into the Settlement Agreement and pay the Settlement Amount only if it was given certainty that the Royal Affiliated Companies would be released fully from, and have injunctive protection against, all *asbestos-related claims* that may be based on, or derive from, the Subject Insurance Policies, as set forth in the Settlement Agreement.

### The Best Interests of the Debtors, Their Estates and Their Creditors

13.  The payment of the Settlement Amount will increase the assets available to the Asbestos PI Trust to pay asbestos claims, remove Arrowood as an objector to Plan confirmation and resolve Arrowood's claims against the estate. The Debtors' estates and the Trust will also save the litigation costs that would be involved in litigating these matters with Arrowood. Similarly, while the Debtors believe that their claims against Arrowood and their defenses to

Arrowood's claims are meritorious, the issues in dispute are complex, and the outcome is not certain.

14. Furthermore, the Settlement Agreement provides for the immediate payment of the Settlement Amount into an Escrow Account within 30 days of the Approval Order becoming a Final Order and includes other provisions that ensure that the Trust has immediate access to the funds upon the Trust's creation. Prior to the negotiation of the Settlement Agreement, Arrowood disclosed in its Objection to the Disclosure Statement that it is in run-off, is actively regulated by the Delaware Insurance Department, no longer underwrites policies, and has no source of new insurance revenues. Arrowood also disclosed that Moody's, A.M. Best and Fitch withdrew Royal's ratings in 2005 when the company announced its intention to enter into run-off and that these ratings were below investment grade before they were withdrawn.

15. Accordingly, in the exercise of their business judgment, the Debtors believe the Settlement Agreement is fair, equitable and in the best interests of the Debtors, their estates, and their creditors.

16. I am aware that the Libby Claimants have filed objections to the Motion for Approval of the Settlement Agreement and have filed a Motion to Compel discovery from Grace and Arrowood. However, Grace has already produced for deposition three corporate-designee witnesses (including myself) who were extensively cross-examined by the Libby Claimants about the prior Grace/Royal settlement in 1995 and the Royal policies that are the subject of the current Settlement Agreement. This testimony is cited in the Debtors' and Arrowood's Objection to the Libby Claimants' Motion for Shortened Notice and Expedited Consideration of Motion to Defer at page 3 and footnote 5.

17.  The ACC and the Futures Representative are not parties to the Settlement Agreement, but have consented in writing to the Grace Parties' entry into the Agreement, which consent is a condition precedent to the effectiveness of the Agreement. The ACC delivered a signed copy of its written consent on June 26, 2009. The Futures Representative delivered a signed copy of his written consent on June 26, 2009.

IN WITNESS WHEREOF, the undersigned declares under penalty of perjury that the foregoing is true and correct to the best of his knowledge, information and belief.

Dated: July 21, 2009

**FOR W. R. GRACE & CO.**

By: *Richard C. Finke*

Name: RICHARD C. FINKE

Title: ASST. GEN. COUNSEL — LITIGATION

Sworn and subscribed before me

the 21st day of July 2009

*Diane E. Armstrong*
Notary Public

DIANE Z. ARMSTRONG
Notary Public, State of Maryland
County of Howard
My Commission Expires September 18, 2012