# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al.*,<br><br>          Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>Jointly Administered<br><br>**Re: Docket Nos. 22398 and 22477**<br><br>**Hearing Date:  July 27, 2009 @ 8:30 a.m. (ET)** |

## MEMORANDUM OF LAW OF ARROWOOD IN OPPOSITION TO THE LIBBY CLAIMANTS' MOTION TO COMPEL [DKT# 22477] AND MOTION TO DEFER [DKT# 22398]

Garvan F. McDaniel, Esq. (#4167)
BIFFERATO GENTILOTTI LLC
800 N. King Street, Plaza Level
Wilmington, DE  19801
Telephone: (302) 429-1900
Fax: (302) 429-8600

-and-

Carl J. Pernicone, Esq.
WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER, LLP
150 East 42nd Street
New York, NY 10017-5639
Telephone: (212) 490-3000

-and-

Tancred V. Schiavoni, Esq.
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2267

*Counsel to Arrowood Indemnity
Company, f/k/a Royal Indemnity Company*

NY1:1786420.7

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 3

I.     EXTENSIVE DISCOVERY HAS BEEN PROVIDED THAT EXCEED WHAT IS CALLED FOR UNDER THE MARTIN DECISION ................................................. 3

II.    THE PRIOR SETTLEMENT DRAFTS SOUGHT ARE IRRELEVANT TO THE COURT'S INQUIRY OF WHAT IS IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES ................................................................................ 5

III.   EXTRINSIC EVIDENCE IS IRRELEVANT AND NOT SUBJECT TO PRODUCTION AS A MATTER OF LAW WHEN THE PARTIES ATTACH THE SAME MEANING TO AN AGREEMENT ........................................................... 7

IV.   THE PRIOR SETTLEMENT DRAFTS SOUGHT ARE PROTECTED BY THE CONFIDENTIALITY AND PRIVILEGES PERTAINING TO SETTLEMENTS .......... 8

    A.    The Libby Claimants Seeks Documents Protected By the Settlement Privilege ............................................................................................................... 9

    B.    Disclosure Of Settlement Documents Runs Counter To The Public Policy Favoring Settlements .......................................................................................... 10

    C.    The Libby Claimants Have Failed To Demonstrate the Relevance Of Documents Relating To The Parties' Prior Settlement Negotiations ................... 11

V.    DELAY PREJUDICES ALL PARTIES, THE LIBBY CLAIMANTS KNOW THIS AND ARE SEEKING TO EXPLOIT THE SITUATION IMPROPERLY ........ 13

CONCLUSION ............................................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988 (2d Cir. 1983) ............................. 12

*Allen County v. Reilly Indus.*, 197 F.R.D. 352 (N.D. Ohio 2000) ................................................ 11

*Baby Doe v. Methacton School Dist.*, 164 F.R.D. 175 (E.D. Pa. 1995) ....................................... 14

*Block Drug Co. v. Sedona Labs, Inc.*, No. 06-350, 2007 WL 1183828 (D. Del. April 19, 2007) ........................................................................................................................ 11

*Cook v. Yellow Freight Sys.*, 132 F.R.D. 548 (E.D. Cal. 1990) .................................................... 11

*Ex parte Woollen*, 104 U.S. 300, 301 (1881) ................................................................................ 13

*Fidelity Federal Savings & Loan Assoc. v. Felicetti*, 148 F.R.D. 532 (E.D. Pa. 193) ............................................................................................................................... 11, 14

*Ford Motor Co. v. Edgewood Props.*, --- F.R.D. ---, 2009 WL 1416223 (D.N.J. May 19, 2009) ............................................................................................................................ 10

*Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620 (D. Nev. 1999) ....................................................... 8

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 322 F.3d 976, 981 (6th Cir. 2003) .................................................................................................................... 11

*In re Congoleum*, Oct. 31, 2005 Tr. at 26:21-27:2 (Dkt. No. 3223) .............................................. 7

*In re Martin*, 91 F.3d 389, 393, 389 (3d Cir. 1996) .......................................................... 3, 7, 13

*In re Neshaminy Office Building Assocs.*, 62 B.R. 798 (E.D. Pa. 1986) ....................................... 7

*In re Penn Cent. Transp. Co.*, 455 F.2d 811 (3d Cir. 1972) ........................................................ 12

*Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552 (D.N.J. 1994) ................ 6, 12, 14

*Maryland Casualty Co. v. W.R. Grace & Co.*, No. 88-04337 (S.D.N.Y. June 21, 1988) ........................................................................................................................................ 4

*Namad v. Salomon, Inc.*, 74 N.Y.2d 751 (N.Y. 1989) ............................................................. 8, 15

*Olin Corp. v. Ins. Co. of N. Am.*, 603 F. Supp. 445 (S.D.N.Y. 1985) ......................................... 11

*Rainbow v. Swisher*, 72 N.Y.2d 106 (N.Y. 1988) ......................................................................... 8

*South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 277 (N.Y. 2005) ............................................ 8, 15

*Suntrust Bank v. Blue Water Fiber, L.P.*, 210 F.R.D. 196 (ED. Mich. 2002) ............................... 8

*W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157 (N.Y. 1990) ................................................ 8, 15

*Wells v. Sears Roebuck and Co.*, F.R.D. 240 (S.D. Miss. 2001) ................................................... 8

*Williams v. First Nat. Bank*, 216 U.S. 582 (1910) ...................................................................... 12

## STATUTES

Fed. R. Civ. P. 26 .......................................................................................................................... 14

Fed. R. Civ. P. 26(b)(1) ................................................................................................................ 10

Fed. R. Evid. 408 .......................................................................................................................... 14

NY1:1786420.7

```
```

## OTHER AUTHORITIES

10-9019 *Collier on Bankruptcy* ¶ 9019,02 (15th ed. Rev.) ............................................................ 3, 7

*Federal Practice and Procedure* § 2285 (2d ed. 1994) ................................................................. 8

*Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993) ...................................................................... 13

Arrowood Indemnity Company ("Arrowood") respectfully submits this memorandum of law in opposition to the Motion to Compel Production of Documents (the "Motion to Compel") and the separate Motion to Defer (the "Motion to Defer") both filed by the Libby Claimants.

## **INTRODUCTION**

1.  The Libby Claimants' discovery complaint boils down to the fact that the Debtors and Arrowood have not produced drafts of *a prior Grace/Royal settlement agreement* (the "1995 Settlement Agreement"). Significantly, the Libby Claimants do not contend that they lack sufficient evidence on the current settlement for which the Debtors seek approval (the "Arrowood Rule 9019 Settlement"). Further, no party—not the Libby Claimants or anyone else—has challenged the good faith of the Arrowood Rule 9019 Settlement. Nor could they. This settlement was negotiated beginning to end under the auspices of, and overseen by, the Asbestos Claimants Committee ("ACC") and the FCR ("FCR").[1] Counsel for the ACC, FCR and Debtors participated in the settlement discussions and have consented to and support the Arrowood Rule 9019 Settlement.

2.  With regard to the prior 1995 Settlement Agreement, the final fully executed prior settlement agreement has been produced along with correspondence contemporaneous with the 1995 Settlement Agreement that describes the intent of the parties. The Debtors also produced for deposition three corporate designee witnesses—Jeff Posner, Jay Hughes and Richard Finke—involved in, and/or knowledgeable about, the negotiation of the 1995 Settlement Agreement, including the Grace official who signed the 1995 Settlement Agreement. Each of these

---

[1] *See* Declaration of Richard C. Finke In Support of Debtors' Motion for an Order Approving Settlement Agreement and Mutual Release with Arrowood Indemnity Company dated July 21, 2009 [Dk. 22581] at ¶8 ("The ACC and the FCR, through their counsel, were also actively involved in negotiating with Arrowood."); Arrowood has separately filed the Declaration of Tancred V. Schiavoni III, dated July 23, 2009 at ¶ 24-35 ("Sch. Decl."). These declarations are offered in opposition to Libby Claimants' Motion to Compel and separate Motion to Defer and in support of the Debtors' Approval Motion.

witnesses was extensively cross-examined about the 1995 Settlement Agreement by the Libby Claimants.

3. The Debtors also provided the Libby Claimants with the declaration of a senior officer of Grace, Mr. Finke, knowledgeable about the Arrowood Rule 9019 Settlement and he is scheduled to be deposed on July 24 by the Libby Claimants.

4. In addition, Arrowood offered to produce the business person who signed the 1995 Settlement Agreement for Royal as well as its counsel involved in the negotiation of the current Arrowood Rule 9019 Settlement Agreement for which approval is sought. When the Libby Claimants failed to follow up on either deposition, Arrowood noticed the deposition of its business person for July 17 and counsel for July 21 and invited the Libby Claimants to attend and question. The Libby Claimants responded to both notices by sending emails *declining the invitation to attend.*

5. The 1995 Settlement Agreement, the contemporaneous correspondence about the 1995 Settlement Agreement and the Grace witnesses all confirm that the 1995 Settlement Agreement releases *all asbestos related claims* including without limitation products claims and what the Libby Claimants refer to as so called non-product claims. Indeed, the Grace witnesses were unequivocal in their testimony in this respect. Of course, this is also what the 1995 Settlement Agreement itself says. This is not surprising since $100 million was paid by Royal in this prior settlement even though policy limits were $10 million or less.

6. The Debtors and Arrowood provided all of this information despite the fact that discovery of parol evidence is utterly irrelevant. The 1995 Settlement Agreement contains an integration clause showing that the contract is a clear and complete manifestation of the parties' intent on its face. It is a basic tenet of contract law that the Parol Evidence rule bars admission

of extrinsic evidence for the interpretation of fully integrated agreements. Moreover, where, as here, the parties have attached the same meaning to an agreement, that agreement is to be interpreted in accordance with that meaning.

7. What the Libby Claimants are in essence saying is that they want drafts of a prior settlement agreement (i.e., the 1995 Settlement Agreement) to try to demonstrate that the prior agreement means something other than what it says. This is nonsense. This issue has long since been resolved but the resolution of any issue that the Libby Claimants may contend remains open falls within the four corners of the document and there is no need to resort to drafts of the agreement as parol evidence.

8. The Libby Claimants cite no case law that permits a claimant in a bankruptcy case to obtain discovery of drafts of a settlement agreement between the debtor and another party. Federal courts have recognized that communications made in furtherance of settlement are protected by a general settlement privilege. These courts have applied the settlement privilege because of the public policy favoring confidential negotiations.

9. The information, documents and witnesses produced to the Libby Claimants collectively answer any questions regarding whether the Arrowood Rule 9019 Settlement should be approved under the factors articulated in *In re Martin*, 91 F.3d 389 (3d Cir. 1996). The Debtors and Arrowood should not be required to produce any additional documents in response to these requests.

**ARGUMENT**

I. **EXTENSIVE DISCOVERY HAS BEEN PROVIDED THAT EXCEEDS WHAT IS CALLED FOR UNDER THE *MARTIN* DECISION**

10. The Libby Claimants make the assertion that Debtors and Arrowood have not provided sufficient information to allow the Court to assess the Debtors' Approval Motion. They are wrong.

11. The Debtors and Arrowood have provided the Libby Claimants with the information and documents needed to evaluate the propriety of the Arrowood Rule 9019 Settlement. These materials include a copy of the fully executed settlement agreement for which approval is sought, the policies covered by the Arrowood Rule 9019 Settlement Agreement, details of the consideration to be provided and copies of the prior settlement agreements between Grace and Royal.[2] Additionally, in response to the Libby Claimants' requests, the Debtors and/or Arrowood have produced: (i) correspondence contemporaneous with the prior 1995 Settlement Agreement concerning the scope of that settlement; (ii) documents concerning the parties' course of performance under the prior 1995 Settlement Agreement and (iii) documents concerning the policies that are the subject of 1995 Settlement Agreement.[3] In addition to these documents, the Libby Claimants have access to the publicly available pleadings and exhibits in the decades-long coverage action between the Debtors and CNA.[4] *See Maryland Casualty Co. v. W.R. Grace & Co.*, No. 88-04337, (S.D.N.Y. June 21, 1988).

12. The comprehensive extent of the document discovery provided can be seen by walking through the answers provided to the Libby Claimants' document requests.[5]

---

[2] *See* Declaration of Tancred V. Schiavoni III, dated July 23, 2009 at ¶ 24-35 ("Sch. Decl.").
[3] *See id.* at ¶ 24.
[4] *See id.* at ¶ 25.
[5] *See* Sch. Decl. ¶ 26 for a detailed discussion of the documents produced.

13. The Debtors also provided a declaration of a corporate representative, Mr. Finke, that confirms the arm's length negotiation of the Arrowood Rule 9019 Settlement and explains its terms.[6] The Debtors volunteered to produce Mr. Finke for deposition and he will be deposed by the Libby Claimants on July 24.[7] Prior to this, the Debtors produced for deposition, as part of plan confirmation discovery, three corporate-designee witnesses, Messrs. Hughes, Posner and Finke, who were extensively cross-examined by the Libby Claimants over the course of three days about the prior 1995 Settlement Agreement and the Royal policies that are the subject of the current Arrowood Rule 9019 Settlement.[8]

14. On July 9, Arrowood offered to produce its counsel and the Arrowood representative who signed the 1995 Settlement Agreement and was involved in the negotiation of the Arrowood Rule 9019 Settlement. When the Libby Claimants failed to follow up on either deposition, Arrowood noticed the deposition of a corporate designate, Kemp Hooper, for July 17 and counsel, Tancred Schiavoni, for July 21.[9] The Libby Claimants and BNSF were served with notice and invited to attend and question. The Libby Claimants responded to both notices by sending emails *declining the invitation to attend*.[10]

15. This level of response far exceeds what is called for in advance of a hearing to approve a settlement.

---

[6] *See* Declaration of Richard C. Finke In Support of Debtors' Motion for an Order Approving Settlement Agreement and Mutual Release with Arrowood Indemnity Company [Dkt. No. 22581].
[7] Sch. Decl. ¶ 27.
[8] *See* Jeff Posner May 6, 2009, Deposition Tr. pages 143:12-148:12, 148:13-149:23 and 308:8-314:7 [Arrowood's Initial Deposition Designations of Testimony of Jeffrey Posner, Richard Finke, Jay Hughes and Peter Van N. Lockwood and Request for Judicial Notice, Dkt. No. 22144] (attesting to good faith and arm's length nature of the 1995 settlement); Jay Hughes June 11, 2009, Deposition Tr. pages 367:6-371:12 [Dkt. No. 22144] (confirming that "Grace had fully and finally released Royal from any further liability for asbestos-related claims under the Grace/Zonolite policies").
[9] *See* Notice Deposition of Kemp Hooper [Dkt. No. 22464] and Notice of Tancred V. Schiavoni [22465].
[10] True and correct copies of emails from the Libby Claimants stating their refusal to attend are attached as Ex. C.

**II.  THE PRIOR SETTLEMENT DRAFTS SOUGHT ARE IRRELEVANT TO THE COURT'S INQUIRY OF WHAT IS IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATE**

9.  As set forth in the Debtors' Approval Motion,[11] the Third Circuit has recognized four factors that a bankruptcy court should consider in evaluating a motion for approval of a settlement agreement: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir, 1996).  As such, a bankruptcy court should approve a settlement agreement if such agreement is both "fair and equitable" and in the best interests of the estate. 10-9019 *Collier on Bankruptcy* ¶ 9019,02 (15th ed. Rev.).  In making this determination, a bankruptcy court should avoid second-guessing the Debtors in the exercise of their business judgment and, instead, endeavor to ascertain whether the terms of the settlement agreement fall below "the lowest point in the range of reasonableness." *In re Neshaminy Office Building Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986) (citation omitted).[12]

16.  The Libby Claimants have a wealth of information available to them regarding each of the *Martin* factors.  The information, documents and witnesses produced to the Libby Claimants collectively answer any questions regarding whether the settlement should be approved under *Martin*.  The Libby Claimants' demand for drafts of a prior settlement agreement seek irrelevant information, because the focal point of any inquiry is set forth in the *Martin*

---

[11]  *See* Grace's Motion to Approve Compromise under Rule 9019 and Mutual Release with the Royal Parties [Dkt. 22153] at ¶14.
[12]  Other bankruptcy courts in the Third Circuit have deemed similar materials to provide "a sufficient factual background" for approval of an insurer settlement. *See In re Congoleum*, Oct. 31, 2005 Tr. at 26:21-27:2 (Dkt. No. 3223).

decision.[13]  The Debtors and Arrowood should not be required to produce any additional documents.

### III. EXTRINSIC EVIDENCE IS IRRELEVANT AND NOT SUBJECT TO PRODUCTION AS A MATTER OF LAW WHEN THE PARTIES ATTACH THE SAME MEANING TO AN AGREEMENT

17.    The 1995 Settlement Agreement contains an integration clause showing that the contract is a clear and complete manifestation of the parties' intent on its face.[14]  It is a basic tenet of contract law that the Parol Evidence rule bars admission of extrinsic evidence for the interpretation of fully integrated agreements.[15]  Moreover, where, as here, the parties have attached the same meaning to an agreement, that agreement is to be interpreted in accordance with that meaning.[16]  *See James v. Zurich-American Ins. Co.*, 203 F.3d 250, 255 (3d Cir. 2000) (citing Restatement 2d of Contracts, § 201(1)); *see also Philips Electronics & Pharmaceutical Industries Corp. v. Leavens*, 421 F.2d 39, 45 (3d Cir. N.J. 1970) (holding "[a] well recognized principle of contract law requires that the terms of a contract be interpreted in light of the meaning which the parties themselves have attached to them as evidenced by their subsequent

---

[13]  *See* Libby Claimants' Objection to Debtors' Motion to Approve Settlement with Royal Parties at 4–5 [Dkt. No. 22397].

[14]  *See* 1995 Settlement Agreement at § XII ("Entire Agreement") (Ex. D of the Declaration of Brad Elias In Support of Arrowood's Disclosure Statement Objections [Dkt. No. 19991]).

[15]  *See Namad v. Salomon, Inc.*, 74 N.Y.2d 751, 753 (N.Y. 1989), *see W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162 (N.Y. 1990) (finding that "[e]vidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing"); *Rainbow v. Swisher*, 72 N.Y.2d 106, 109 (N.Y. 1988) (holding that since a settlement agreement is a contract and subject to contract laws, if the agreement is "clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence.").

[16]  Where a contract is clear and unambiguous, extrinsic evidence is not admissible to interpret the contract. *Namad v. Salomon, Inc.*, 74 N.Y.2d 751, 753 (N.Y. 1989), *see W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162 (N.Y. 1990) (finding that "[e]vidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing"); *Rainbow v. Swisher*, 72 N.Y.2d 106, 109 (N.Y. 1988) (holding that since a settlement agreement is a contract and subject to contract laws, if the agreement is "clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence."). Whether a contract is ambiguous is a question of law, and extrinsic evidence may not be admitted to create an ambiguity when the contract is complete and clear. *South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 277 (N.Y. 2005).

conduct."); *Affiliated Mfrs. v. Aluminum Co. of Am.*, 1992 U.S. Dist. LEXIS 18345 (D.N.J. Nov. 16, 1992) (same).[17]

18.     Since the parties to the 1995 Settlement Agreement (the Debtors and Arrowood) attach the same meaning to the Agreement, there is no ambiguity or need to look at extrinsic evidence to interpret the 1995 Settlement Agreement.[18] *See* Restatement 2d of Contracts, §201(1) ("Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning."). The terms of the 1995 Settlement Agreement must be interpreted according to the interpretation shared by Debtors and Arrowood.

19.     In addition, the Debtors and Arrowood produced correspondence exchanged between Royal and Grace during the finalization of the 1995 Settlement Agreement—that explicitly confirm that it was the intent of the parties to release all asbestos-related claims as part of the 1995 Settlement Agreement.[19] These documents, along with the testimony of the Debtors' corporate designee witnesses,[20] are all consistent with the same interpretation of the 1995 Settlement Agreement and provide more than adequate factual support for the Debtors' Approval Motion.

20.     The Federal Rules of Civil Procedure permit discovery of evidence if it would be admissible or if the disclosure would reveal other admissible evidence. Fed. R. Civ. P. 26(b)(1). However, "[d]iscovery which can only lead to inadmissible evidence is prohibited by the plain

---

[17] Here, both parties to the 1995 Settlement Agreement agree on its terms.
[18] This is even more the case because the ACC and FCR have assented to the meaning after their own investigation. *See* Nov. 14, 2008, Hr. Tr., p. 40 line 4-16. MR. FREEDMAN: Royal Insurance, as Mr. Schiavoni indicated, we now believe we have an agreement done, and I'd like to spell out the gist of that without going into the granular detail on what it is. Grace has agreed, and the ACC and the Future claimants' representative assent that the Royal primary policies identified in the 1995 settlement agreement are fully settled. The plan proponents are revising the disclosure statement to say that and the plan proponents have filed a revised Exhibit 5, which states that pursuant to that settlement agreement, these Royal primary policies are entitled to protections afforded in the plan and the settlement agreement to the extent of the indemnities that are provided there as set forth -- THE COURT: All right.") [Dkt# 20167]
[19] *See* Sch. Decl. ¶ 25.
[20] See Sch. Decl. ¶ 29-35.

language of Rule 26." *Ford Motor Co. v. Edgewood Props.*, --- F.R.D. ---, 2009 WL 1416223, at *4 (D.N.J. May 19, 2009) (denying motion to compel production of documents related to settlement negotiations where such admission would not lead to admissible evidence). There is no need for additional discovery.

### IV.    THE DRAFTS OF THE PRIOR 1995 SETTLEMENT AGREEMENT ARE PROTECTED BY THE CONFIDENTIALITY AND PRIVILEGES PERTAINING TO SETTLEMENTS

21.     The Debtors and Arrowood made it clear that the Libby Claimant's document request was objectionable on the grounds that the requests seeks discovery of information protected by the settlement privilege and that constitute protected settlement communications. These objections are well supported by federal law, and the Libby Claimants cite no contrary authority to support overriding such protections.

### A.    The Libby Claimants Seek Protected Settlement Documents

22.     Federal courts have recognized that communications made in furtherance of settlement are protected by a general "settlement privilege." *See, e.g., Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 322 F.3d 976, 981 (6th Cir. 2003); *Allen County v. Reilly Indus.*, 197 F.R.D. 352, 353 (N.D. Ohio 2000) (applying privilege to correspondence regarding settlement agreement); *Olin Corp. v. Ins. Co. of N. Am.*, 603 F. Supp. 445, 449-50 (S.D.N.Y. 1985) (denying motion to compel settlement correspondence between counsel); *Cook v. Yellow Freight Sys.*, 132 F.R.D. 548, 554 (E.D. Cal. 1990) (denying third party's motion to compel settlement correspondence based on "a well-established privilege relating to settlement discussions"). These courts have applied the settlement privilege because of "[t]he public policy favoring secret negotiations, combined with the inherent questionability of the truthfulness of any statements made therein." *Goodyear*, 332 F.3d at 981. Specifically, these courts have

recognized that "the parties may assume disputed facts to be true for the unique purpose of settlement negotiations. The discovery of these sort of 'facts' would be highly misleading if allowed to be used for purposes other than settlement." *Cook*, 132 F.R.D. at 554.

23.     Although the Third Circuit has never directly found a settlement privilege, district courts in the Third Circuit have imposed a heightened standard for parties seeking discovery of settlement materials.[21] This rule "switch[es] the burden of proof from the party in opposition to the discovery to the party seeking the information." *Id.*; *see also Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 562 (D.N.J. 1994) (refusing to allow discovery of settlement negotiations in a simultaneous litigation due to the chilling effect such discovery would have on ongoing negotiations). As more fully set forth below, the Libby Claimants have failed to make a showing that the drafts of the 1995 Settlement Agreement that they seek will lead to admissible evidence.

24.     The drafts prepared by the parties during the negotiation of the 1995 Settlement Agreement are similarly entitled to protection. The disclosure of such materials will chill future settlements, impede negotiations, and unfairly handicap the settling parties' ability to negotiate future deals.

25.     Against this established legal authority, the Libby Claimants cite no legal authority allowing discovery of proposed settlements. Instead, the Libby Claimants rely on broad statements of the liberal boundaries of discovery standards.[22] The cases cited do not address the special treatment afforded settlement materials based on the Federal Rules.

---

[21] *See Fidelity Federal Savings and Loan Ass'n v. Felicetti*, 148 F.R.D. 532, 534 (E.D. Pa. 1993) (requiring a "particularized showing" that "the documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence"); *see also Block Drug Co. v. Sedona Labs, Inc.*, No. 06-350, 2007 WL 1183828, at *1 (D. Del. April 19, 2007) (finding that party seeking to discover settlement materials had not met its burden under the "particularized showing" requirement).

[22] *See* Libby Motion to Compel at 4–5.

### B. Disclosure of Settlement Documents Runs Counter to the Public Policy Favoring Settlements

26. Courts at all levels of the federal judiciary have followed a longstanding policy of encouraging and promoting settlements.[23] In keeping with this policy, the Advisory Committee for Rule 408 or the Federal Rules of Evidence listed the "public policy favoring the compromise and settlement of disputes" as a "more consistently impressive ground" for the exclusion of evidence relating to compromise or offers to compromise. Fed. R. Evid. 408, adv. cmte's note.

27. The Third Circuit has ruled that the policy favoring settlements also applies in the bankruptcy context. *See In re Martin*, 91 F.3d at 389 ("To minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy.'") (quoting *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)). Indeed, encouraging settlement has long been recognized as a goal of the bankruptcy laws. *See, e.g., Ex parte Woollen*, 104 U.S. 300, 301 (1881) (promotion of speedy settlement of bankruptcy estates is the "obvious policy of the law").

28. Allowing the Libby Claimants to engage in an improper and burdensome fishing expedition will inevitably chill future insurer settlements in these chapter 11 cases. Further, such precedent will discourage free and frank settlement negotiations in other cases. This Court should uphold the strong public policy promoting settlements and deny the Libby Claimants' Motion to Compel privileged and protected settlement information.

---

[23] *See, e.g., Williams v. First Nat. Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts . . ."); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 997 (2d Cir. 1983) ("As a general matter . . . courts favor the policy of encouraging voluntary settlement of disputes.") (citations omitted); *In re Penn Cent. Transp. Co.*, 455 F.2d 811, 814 n. 6 (3d Cir. 1972) ("[Settlement] agreements . . . are favored by law."), *cert denied*, 407 U.S. 915 (1972); *D.H. Overmeyer Co. v. Loflin*, 440 F.2d 1213, 1215 (5th Cir. 1971) ("Settlement agreements are highly favored in the law and will be upheld whenever possible").

### C. The Libby Claimants Have Failed to Demonstrate the Relevance of Documents Relating to the Parties' Prior Settlement Negotiations

29. To the extent that any of the drafts of the 1995 Settlement Agreement sought by the Libby Claimants are discoverable, the Libby Claimants must also show that such documents are relevant. In line with the principles underlying Rule 408 of the Federal Rules of Evidence, courts in the Third Circuit have required that the party seeking discovery of information relating to settlement negotiations must make a particularized showing that the evidence is likely to lead to the discovery of admissible evidence. *Lesal*, 154 F.R.D. at 561–62 (adopting particularized showing requirement as "most reasonable means" of reconciling conflict between principles underlying Fed. R. Evid. 408 and Fed. R. Civ. P. 26); *Fidelity Federal Savings & Loan Assoc. v. Felicetti*, 148 F.R.D. 532, 534 (E.D. Pa. 193). This requirement "place[s] the onus on the plaintiffs to show that the documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence," and thus "switch[es] the burden of proof from the party in opposition to the discovery to the party seeking the information." *Lesal*, 153 F.R.D. at 562 (citing *Fidelity*, 148 F.R.D. at 534).

30. Despite their access to the final 1995 Settlement Agreement itself, they reference no clauses from the 1995 Settlement Agreement—or any other facts—to support the proposition that non-products claims were left open under the 1995 Settlement Agreement.[24] In fact, although the Libby Claimants state that the "agreement is at best ambiguous" as to whether non-products claims were left open, they make no special showing of ambiguity in the contract.[25] Such an unsupported claim clearly does not satisfy the Libby Claimants' burden of proof. *See, e.g., Baby Doe v. Methacton School Dist.*, 164 F.R.D. 175, 176-77 (E.D. Pa. 1995) (denying

---

[24] The Libby Claimants refer only to the broad assertion that they need the requested discovery to determine whether the 1995 Settlement Agreement resolved coverage for all asbestos claims under the primary policies. Libby Motion to Compel ¶ 2.
[25] *See Id.*

discovery of settlement agreement where plaintiff had asserted relevance "without any detail or analysis whatsoever."). The Libby Claimants utterly fail to make this particularized showing.

31.     Courts will not permit discovery into private settlement negotiations where, as here, the requesting party does not substantiate the need for his request. *See Lesal*, 153 F.R.D. at 563-64 ("In the consideration of [plaintiff's] inability to make a 'particularized showing' . . . this court is unwilling to jeopardize a judicially-supervised settlement process that appears to possess a significant likelihood for benefiting many. The inequity of permitting [plaintiff's discovery into, and potential destruction of these settlement negotiations . . . is manifest."]. The Libby Claimants should not be entitled to any discovery because they have not met their burden of proof.

## V.    DELAY PREJUDICES ALL PARTIES; THE LIBBY CLAIMANTS KNOW THIS AND ARE SEEKING TO EXPLOIT THE SITUATION IMPROPERLY

11.     The delay that the Libby Claimants seek would prejudice all parties. The proceedings in the Bankruptcy Court are on a tight schedule and continue to move forward. To the extent that there is any deferment, the standstill provisions of the settlement are put in jeopardy and the parties are faced with the prospect of Arrowood and the Plan Proponents reinitiating litigation over intensely disputed issues.[26] Among other things, this includes a pending appeal in the bankruptcy case where Arrowood is a party. At the same time, the Libby Claimants would presumably use the deferment to press for even more intrusive discovery into settlement communications which could easily upset what is at best a tenuous situation as is.[27]

---

[26]   The Grace/Arrowood Settlement Agreement contains various litigation standstill provisions. *See* Grace/Arrowood Settlement Agreement Section III (I).
[27]   *See* Sch. Decl. ¶ 28.

**CONCLUSION**

32. For the foregoing reasons, Arrowood respectfully requests that this Court deny the Libby Claimants' Motion to Compel and separate Motion to Defer and grant the Debtors' Approval Motion.

Dated: July 23, 2009
       Wilmington, Delaware

By:  /s/ Garvan F. McDaniel
Garvan F. McDaniel, Esq. (#4167)
BIFFERATO GENTILOTTI LLC
800 N. King Street, Plaza Level
Wilmington, DE 19801
Telephone: (302) 429-1900
Fax: (302) 429-8600

-and-

Carl J. Pernicone, Esq.
WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER, LLP
150 East 42nd Street
New York, NY 10017-5639
Telephone: (212) 490-3000

-and-

Tancred V. Schiavoni, Esq.
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2267

*Counsel to Arrowood Indemnity Company, f/k/a Royal Indemnity Company*