## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) (Jointly Administered) |
| Debtors. | **Ref. Nos. 22490, 22491, 22499** |

### LIBBY CLAIMANTS' RESPONSE TO ARROWOOD'S MOTION FOR RELIEF AGAINST THE LIBBY CLAIMANTS BASED ON THEIR DESIGNATION OF OVER 100 WITNESSES FOR THE CONFIRMATION HEARING

The claimants injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants"),[1] by and through their counsel, Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP, hereby file this Response to Arrowood's Motion for Relief Against the Libby Claimants Based on Their Designation of Over 100 Witnesses for the Confirmation Hearing (D.I. 22491) ("Motion for Relief").

### INTRODUCTION

1.      On July 17, 2009, Arrowood Indemnity Company, f/k/a/ Royal Indemnity Company, filed the above-referenced Motion for Relief.[2]  This Response by Libby Claimants is necessary both to address the unjustified allegations made in the Motion for Relief, and to correct the misrepresentations of fact made by Arrowood.

2.      Clouded by Arrowood's allegations[3] and misrepresentations are two simple premises for the Motion for Relief.

---

[1]  As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 (D.I. 21365), as it may be amended and restated from time to time.

[2]  Arrowood also filed a related Motion for Shortened Notice and Expedited Consideration of the [Motion for Relief] (D.I. 22490), which this Court granted on July 17, 2009.  (D.I. 22499).

[3]  As an example, Arrowood blames the Libby Claimants of "failing to disclose" witnesses.  No concealment has ever occurred.  The real issue is objections to the names, allegedly too great in number, that were disclosed.

3.     First, Arrowood attacks the Libby Claimants' June 15, 2009, Final Witness List (D.I. 22125) ("Final Witness List") as inherently abusive and a violation of this Court's orders. The argument is vague and not rooted in those rulings which Arrowood claims Libby Claimants have violated.  In short, Arrowood's claim is without basis.  The Final Witness List is proper.

4.     Second, the Motion for Relief suggests that Libby Claimants have surrendered any right to present witnesses from their Final Witness List based on their failure to cooperate with Arrowood regarding its claimed desire to depose the Libby Claimants' witnesses.  This portion of the Motion for Relief, as shall be demonstrated from the documents submitted with Arrowood's Motion, is false and misrepresentative.   Moreover, even if it were factually credible—which it is not—this portion of Arrowood's claim relies on an erroneous perception of the parties' duties and otherwise lacks legal basis.

## ARGUMENT

**I.     The Libby Claimants' Final Witness List Does Not Violate Any Prior Order.**

5.     On May 14, 2009, this Court heard argument regarding, among other matters, the potential depositions of Libby Claimants who had been named in the Libby Claimants' First Supplement[4] and Second Supplement[5] to the Preliminary Designation of Witnesses to Testify in Connection with Plan Confirmation.  (D.I. 21260).  That hearing focused in relevant part[6] on whether testimony from the potential Libby Claimant deponents regarding their own medical symptoms would be relevant and admissible in the Court's evaluation of the Plan's medical criteria.  As correctly pointed out in the Motion for Relief, the Court held on May 14 that:

---

[4]   Filed April 13, 2009 (D.I. 21260) ("First Supplement").
[5]   Filed April 17, 2009 (D.I. 21301) ("Second Supplement").
[6]   Attached as Exhibit 1 is the relevant portion of the Transcript from the May 14, 2009, Hearing:  50:23—80:3.

[T]he depositions should be stricken because they are not calculated to lead to relevant or admissible evidence on the issues that will be tried before me regarding plan confirmation and that's the sole and exclusive base on which I'm making this ruling with respect to these 18 depositions. . . . I'm only addressing now the criteria, medical criteria issue in making this ruling. (Exh. 1, 75:23-76:6).

6.      Also at the May 14 hearing and in follow up to the Court's ruling, the Libby Claimants specifically raised the issue of whether such testimony from individual Libby Claimants regarding their medical symptoms would be permitted at trial.[7]  In response, and after additional argument from all the parties, the Court expressly distinguished its May 14 ruling as to discovery issues, and left open the subsequent issue of Libby Claimant testimony regarding the medical criteria at trial:

To the extent that there's an issue concerning trial, proffers have to be made at trial, before I make rulings and then I'll rule.  I've made a ruling based on the discovery issues that are pending.  You've asked me at this point, do I see a reason why I would permit your witnesses to testify.  Based on what I've heard so far, I don't.  <u>Whether something will happen at trial, I don't know, Mr. Cohn. You can preserve that proffer for trial.  I may make a different ruling then</u> if something else happens, I don't know.  (Exh. 1, 79:13-21) (emphasis added).

The Court is transparent about whether such medical testimony from individual Libby Claimants is likely to be permitted at trial.  However, it is even more clear that the Court <u>did not rule at the May hearing that medical testimony from individual Libby Claimants would be barred</u>. Implications and argument by Arrowood that naming of individual Libby Claimants for such potential purpose at trial in the Final Witness List violates this Court's rulings overreach and are simply not correct.

---

[7]  *See* Exh. 1, 76:22—77:6 ("I just wanted to clarify, your Honor, that . . . there are others who are on our witness lists . . . whose testimony we intend—or intended, to produce live at the confirmation hearing.  And I think just in order to spare them the trip and the exclusion of their testimony, that if your Honor's intention is to exclude all such testimony at the confirmation hearing, that we simply make sure we cover that in the order at this time.")

7.      The Final Witness List includes most[8] of the same names included on the Libby Claimants' initial witness lists, some of whose deposition testimony was at issue in the May 14 hearing.  Based on the above-cited portions of the Court's May 2009 ruling, Libby Claimants were certainly within their rights in filing their Final Witness List in June with those same names.[9]  Indeed, there is the express possibility that the Court would deem such testimony from the same witnesses relevant and admissible at trial.[10]  Any failure by Libby Claimants to name witnesses on the Final Witness List would have to be considered a waiver of their rights. Arrowood's attack essentially, but obviously erroneously assumes that Libby Claimants should surrender their position by not naming the witnesses at all.

## II.     Other Names Included on the Final Witness List Are Appropriate for Other Reasons That Were Not Addressed at the May Hearing.

8.      One of the Libby Claimants' objections to the Plan addresses its failure to recognize the established tort system value of their claims against Grace.  To address this issue, Libby Claimants named those individuals[11] who had settled claims against Grace prior to its 2001 bankruptcy filing on the Final Witness List.  In addition, present counsel to the Libby Claimants and previous counsel to some of the pre-filing settling individuals—Jon Heberling,

---

[8]   One witness, Eleanora Martin, who was named on the First Supplement (D.I. 21260) and whom the Libby Claimants sought to depose, died on May 15, 2009.  Attacks in the Motion for Relief on the credibility of prior representations regarding the health and ability of potential deponents to travel are beyond the scope of any present assessment of the Final Witness List.  Moreover, as noted by the Court on May 14, the issue at the hearing was relevancy (Exh. 1, 52:19-25), and not the specific health of individual witnesses, which has only been before the Court in terms of Arrowood's allegations, and never with actual evidence one way or the other.  Libby Claimants remain, if necessary, capable of demonstrating the physical and in some cases limited capacity of witnesses to travel and/or testify in these proceedings.

[9]   Because many of the witnesses named on the Final Witness List were simply repeated from the earlier filings, Arrowood's claim of surprise or prejudice from such "late filing" cannot be taken seriously.

[10]   *See* Exh. 1, 79:13-21.

[11]   37 total, all of whom had been previously disclosed, and whose medical records and proofs of settlement had been produced in discovery as part of the confirmation proceedings in this case.

Esq. and Tom Lewis, Esq.—were named and specifically designated[12] to enable the presentation of evidence on this contention, based on their personal knowledge of pre-filing settlements.

9.      Individual Libby residents were named to present evidence of their own personal settlements with Grace. All such testimony is admissible through only a limited number of sources, including the settled claimants personally. These settled claimants would be called to testify about their exposures to Grace asbestos in Libby and their medical symptoms, each critical factors that determined the value of their claims to Grace and in the tort system generally. Even if the May hearing could be interpreted as a strict ban on individual Libby Claimant testimony regarding their medical symptoms for an evaluation of the Plan's medical criteria, the testimony from these pre-filing settled individuals about their medical condition serves a different purpose. Specifically, evidence regarding these individuals' medical symptoms would have been a primary basis for the settlements. The testimony about their impairment at the time of settlement relates to the lost course of life and other general damages at issue and of value—as properly recognized by Grace pre-filing—in the tort system. Coupled with testimony about the nature of and the limited exposure they experienced in Libby to exclusively Grace asbestos, these settled individuals' medical testimony would appropriately[13] provide the necessary factual basis for the Libby Claimants' current contention that the Plan discriminates against them by paying a mere fraction of the value that the tort system and Grace itself recognizes for their claims. Through these settled individuals and other witnesses, such as their treating physician

---

[12] The Final Witness List contained footnotes for Mr. Heberling and Mr. Lewis, respectively stating that they "will be offered as a witness for the limited purpose of proving historic and existing case valuation for Libby Claimants."

[13] *See, e.g., Shoemaker v. John Hancock Mut. Life Ins. Co.*, 147 Fed.Appx. 245, 248 (3d Cir. 2005) (plaintiff is competent to testify as to his own symptoms). Although unpublished, the issue for which *Shoemaker* is cited herein is unanimously accepted. *See Smith v. Barnhart*, 2002 WL 485050 (N.D. Cal. 2002) ("A claimant's testimony concerning his own symptoms is competent evidence which must be taken into account.") (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

Dr. Whitehouse and their counsel at the time of settlement Jon Heberling or Tom Lewis, Libby Claimants would be able to offer evidence in support of their contention that the Plan is systemically discriminatory.  Without the actual witnesses named on the Final Witness List, Libby Claimants would be effectively denied an opportunity to prove this part of their case.

10.     This Court's May rulings relate to medical testimony from individual claimants as it relates to the TDP.  The Court has never indicated that Libby Claimants must prove <u>this portion</u> of their case regarding tort system valuation without witnesses.  Naming these witnesses on the Final Witness List is appropriate.  At worst, Libby Claimants are guilty of preserving the parties' right to have the question of what proof on this portion of their contentions will be allowed actually heard by the Court.  Arrowood's claim that the mere inclusion of names on the Final Witness List for an additional purpose constitutes abuse is without basis.

11.     The Motion for Relief also alleges that Libby Claimants are engaged in bad faith by naming "over 1,000 individuals" on their Final Witness List.  The real facts as described on the Final Witness List—and blatantly ignored by Arrowood in its attempt at absurdity—demonstrate that Libby Claimants have sought, but been unable to secure, a stipulation with the Plan Proponents that would permit the testimony of actual Libby Claimants on insurance matters <u>to be avoided</u>.[14]  In short, Libby Claimants have attempted for months to secure a stipulation with the Plan Proponents on this matter.  The stipulation was not in place at the time of the June

---

[14] *See* ¶ 87 of the Final Witness List, which states: "All Libby Claimants, <u>to the extent agreement is not reached on the pending draft stipulation</u> relating to facts concerning available insurance coverage for their claims."  (emphasis added).  This language is further footnoted in the Final Witness List to reflect the Libby Claimants' desire and attempt to stipulate with the Plan Proponents to facts that would obviate any need to present testimony regarding all Libby Claimants' dates of residence and their exposure paths in Libby, which constitute necessary elements of the Libby Claimants' insurance-based contentions in this case.  These facts are necessary because multiple insurers (Maryland Casualty, Arrowood, and CNA) and multiple policies, with distinct coverages, deductibles, and so on, are at issue.  The only way Libby Claimants can prove their claim and ultimately argue the legal questions under the policies is to demonstrate, as a matter of fact, such underlying evidence that would give rise to the potential coverages implicated in their contentions.

15 final witness deadline,[15] and accordingly, Libby Claimants simply reserved their rights as a contingency. Arrowood ignores the legitimate situation, that Libby Claimants either make the reservation that they did, or else surrender specific facts that are essential to their insurance contentions in this case. The Final Witness List, as written, simply preserved the Libby Claimants' ability to prove those necessary facts, hopefully in the most efficient manner possible. Libby Claimants have no interest in and never hoped to call all 950+ Libby Claimants as witnesses. Arrowood's reading to inject such an intent ignores common sense, not to mention the express and clear language of the Final Witness List.

**III.    Arrowood's Allegation That Libby Claimants Sought to Frustrate and Oppose Arrowood in Pursuing Discovery Regarding the Final Witness List is a Ridiculous Misrepresentation.**

12.    The Motion for Relief seeks to portray a great and unilateral attempt by Arrowood to "cure" with additional discovery the allegedly unlawful Final Witness List, which Libby Claimants consistently frustrated. Nothing could be further from the truth. Arrowood filed a Declaration in Support of [the Motion for Relief] (D.I. 22493) ("Hargrove Declaration"), which contains within its 120 pages of exhibits copies (often duplicated) of the correspondence on which Arrowood relies. This correspondence unequivocally reveals that in fact, Libby Claimants attempted time and again to cooperate with Arrowood in its vague and ultimately token requests.

13.    On June 19, 2009, Arrowood's counsel informally asked the Libby Claimants "to propose dates for the depositions of each of the individuals on your witness list."[16] Libby Claimants promptly replied by seeking the foremost information: specifically who among the individuals on the [Final Witness List] did Arrowood wish to depose? Rather than work toward

---

[15]    The insurance stipulation remains unsigned as of this writing. Libby Claimants are hopeful that it can be resolved in advance of the July 27, Pre-Trial Hearing, the impact of which would clearly be to effect the caveat described in ¶ 87 of the Final Witness List and remove all reliance on the "All Libby Claimants" language therein.

a resolution, Arrowood engaged in extreme obfuscation and obstructionism over the next 25(!) days by refusing to name even one individual whom it sought to depose.[17]

14.    Libby Claimants consistently pointed out that their ability to schedule "deposition dates on some unspecified number for some unidentified individuals" was not possible, and that Arrowood would need to "provide . . . specific NAMES of the individuals [it] wish[ed] to depose."[18] They told Arrowood many times that they could not "guess" or "intuit" Arrowood's intentions for depositions.[19] As stated above and reflected on the Final Witness List, Arrowood was never without the specific names of those witnesses whom Libby Claimants sought to call at trial.  It was clearly capable of designating some or even all of the 88 named individuals for depositions, but chose instead not to identify the focus of its requests until July 14.[20]  There can be no dispute on this compelling fact: Arrowood stubbornly denied numerous requests from Libby Claimants, until July 14, to name the particular witness/es it allegedly sought to depose.

15.    Libby Claimants were never unwilling to facilitate depositions for witnesses on the Final Witness List.[21]  Libby Claimants made repeated and legitimate attempts to cooperate

---

[16]    See Hargrove Declaration, Exh. D, 6/19/09 2:57 PM e-mail from Tancred Schiavoni to [group].

[17]    See Hargrove Declaration, Exh. D, 6/28/09 12:57 PM e-mail from John Lacey to Tancred Schiavoni ("It remains utterly amazing to me that you make no effort to simply solve the problem of your own making: tell me names of people you wish to depose, and depositions can be scheduled.").

[18]    See Hargrove Declaration, Exh. D, 6/24/09 11:54 AM e-mail from John Lacey to Tancred Schiavoni; see also , 6/24/09 5:37 PM e-mail from John Lacey to Tancred Schiavoni ("I am depending upon you to NAME each potential deponent that you wish . . . You will not be eliciting deposition testimony from a list, but from INDIVIDUALS. Therefore, please name the individuals.  It is the only way that I can practically comply with your request.");

[19]    See Hargrove Declaration, Exh. D, 6/24/09 5:37 PM e-mail from John Lacey to Tancred Schiavoni ("I will not guess about your intentions."); 6/24/09 6:52 PM e-mail from John Lacey to Tancred Schiavoni ("I cannot guess who you may wish to depose."); 6/28/09 12:57 PM e-mail from John Lacey to Tancred Schiavoni ("I fail to see how this language empowers or obligates me to intuit how many depositions you wish to take or which witnesses from the Libby Claimants' validly filed witness list you wish to depose.").

[20]    It must be noted that many of the individuals (see ¶ 7 above) whom Arrowood now asserts it wishes, but was denied the opportunity to depose following the Final Witness List are in fact the very same Libby Claimants whom Arrowood fought to keep from being deposed in May.

[21]    See Hargrove Declaration, Exh. D, 6/24/09 11:54 AM e-mail from John Lacey to Tancred Schiavoni ("I remain more than willing to work with you on scheduling the depositions you intend, once the above preliminary and necessary information has been provided."); see also 6/24/09 5:37 PM e-mail from John Lacey to Tancred Schiavoni

with Arrowood. Indeed, the Motion for Relief misrepresents the nature of Arrowood's own willingness to pursue a resolution in good faith. Suggestions that calls were attempted or meet and confers sought and rejected are simply false.[22] Especially if Arrowood's concerns were fundamentally about whether certain witnesses on the Final Witness List were appropriately named (see sections I and II above) and required deposing, a genuine meet and confer call could and should have been sought by Arrowood.[23] Libby Claimants would have welcomed the call.

16.     The Motion for Relief and indeed Arrowood's conduct throughout the charade of seeking depositions appears based on a faulty assumption about the parties' roles. Arrowood had the responsibility to name the particular individuals from the Final Witness List whom it sought to depose.[24] Libby Claimants had the concomitant responsibility to make witnesses available,

---

("Again, I remain willing to address your requests for depositions."); 6/24/09 6:52 PM e-mail from John Lacey to Tancred Schiavoni ("I remain willing to work with you."); 6/24/09 7:14 PM e-mail from John Lacey to Tancred Schiavoni ("Again, Tanc, I wish to cooperate. . . . we will attempt to make witnesses available for you . . . in response to your request for depositions, as soon as I learn from you WHICH witnesses you wish to depose.").

[22] *See* Hargrove Declaration, Exh. D, 6/24/09 7:14 PM e-mail from John Lacey to Tancred Schiavoni ("I do not consider your emails much of an effort to meet and confer. At the least, please schedule a telephone call prior to making such a unilateral decision. I am available."); 6/28/09 12:57 PM e-mail from John Lacey to Tancred Schiavoni ("I have offered to discuss Libby witnesses with you by phone, Tanc. You have never called. I asked you to schedule a call before you unilaterally decided to "exhaust" the meet & confer process. You never proposed a time. You vaguely referred to orders, but ignored my repeated requests to clarify or provide specific citation. You never even mentioned the notion of engaging "meet & confer" until your sixth or seventh email to me. Again, for the record and in the interests of total clarity, I remain more than willing to discuss Libby witnesses and your request for depositions. Please call me Monday am if you wish to discuss a resolution. Since you have never called me on this matter, I believe that step should occur before you take this to the Court.")

[23] Arrowood's failure is highlighted by the manner in which other parties addressed the issue of potential depositions stemming from Libby Claimants' Final Witness List. For example, the Debtors contacted Libby Claimants and expressly requested a meet and confer. The next business day the call occurred, during which a meaningful understanding of the parties' concerns and positions was gained. Instead of seeking a prompt resolution (or even making the matter ripe for a timely hearing before the Court), Arrowood beat the same broken drum for 25 days without any real effort to move toward a resolution.

[24] *See* Hargrove Declaration, Exh. D, 6/28/09 12:57 PM e-mail from John Lacey to Tancred Schiavoni ("I can only now assume--since you have yet to specify--that you are referring to par.10 of the CMO, which states in relevant part: 'Any person named on the final witness disclosure list whose identity was not previously disclosed by the party in interest calling that witness as having knowledge or information relevant to this dispute, may be deposed by the parties in interest thereafter, but in no event later than 30 days after the final witness lists are filed.' . . . The CMO says you 'may' depose newly-named witnesses. It does not say that or how I need to guess whom and how many people you wish to depose. The depositions are discretionary. If you choose to exercise your right, then please assume at least the minimum responsibility and name the people you wish to depose. If I am mistaken about how you see the CMO applying here, or if you really do have some other language that clarifies our task, please share.").

and in all respects they were committed to and performed such duty.[25]  Despite constant requests during the relevant time period, and continuing now in the Motion for Relief, Arrowood never cites specific language in the CMO or from any other authority to support its confused version of the parties' apparent duties.  Accordingly, the fact that depositions following the filing of the Final Witness List were never scheduled must be defined as a problem entirely of Arrowood's own making.

17.    Ultimately, the issue for the Court is not one of assigning fault, and Libby Claimants have no desire or need to blame Arrowood for its own obvious choices and failures in this matter.  That said, Arrowood is not entitled to the relief that it seeks in the Motion for Relief, especially not while relying upon false representations from the existing record.  Libby Claimants should not suffer any sanction regarding their right to call witnesses from the Final Witness List, much less based upon Arrowood's own failings or its allegations of non-cooperation against Libby Claimants.

**IV.    Any Deposition of Individuals Named on the Final Witness List, Including Specifically Jon Heberling, Esq. and Tom Lewis, Esq., Should Occur in Montana, Consistent With Established Practice and Courtesies in This Case.**

18.    The Motion for Relief seeks an order from this Court that Jon Heberling and Tom Lewis appear in Pittsburgh before July 27 for deposition.  The specific relief requested is not available given the Court's designation of July 27 for hearing the Motion for Relief, but the issue of where these two depositions might take place remains squarely before the Court.

19.    Jon Heberling, Esq. and Tom Lewis, Esq. are counsel for the Libby Claimants. As described above, the Final Witness List expressly and properly disclosed that Libby

---

[25]  *See, e.g.,* Hargrove Declaration, Exh. D, 7/15/09 6:01 PM e-mail from John Lacey to Tancred Schiavoni (reflecting the prompt turnaround of available dates and times for Jon Heberling and Tom Lewis to be deposed, after Arrowood "finally identif[ied] at least in some small part, the names of specific people [it] wish[ed] to depose.").

Claimants intended to have them testify as witnesses regarding the limited issue of "historic and existing case valuation for Libby Claimants." In spite of this June 15 disclosure, and in spite of the 30-day deadline for deposing witnesses newly-named on the Final Witness List,[26] neither Arrowood nor any of the other parties in this case made a specific request to depose Jon Heberling or Tom Lewis until July 14, 2009. No explanation whatsoever has been offered as to why Arrowood waited until July 14 to request these depositions. What should be obvious is that neither Libby Claimants nor Jon Heberling and Tom Lewis personally should suffer for Arrowood having wasted almost the entire 30-day window allowed by the CMO to take these (or any) depositions, in part by demanding now that urgency requires the depositions to take place in Pittsburgh or anywhere else other than Montana.

20.    All the lawyers throughout this case have consistently and properly granted witnesses subject to deposition the courtesy of coming to the place of the witness. Counsel from Montana and elsewhere has traveled to all regions of the United States in this case to take depositions at the place of the deponent. It is well-established and common in this case that counsel who choose not to travel can participate fully by phone. Never has any counsel been so demanding as to notice a deposition in the place of his or her convenience at the expense of the professional witness who would then be made to travel for such deposition. Particularly because of their status as counsel and based upon courtesies among the bar, Jon Heberling and Tom Lewis should be extended the same, if not greater courtesy.[27] Any suggestion now that they would be subjected to some new and isolated standard is unfair.

21.    As this Court and counsel is aware, Libby Claimants have <u>never</u> been represented

---

[26]  *See* ¶ 10 of CMO (D.I. 20622).

[27]  Earlier in this case, attorney witnesses Elihu Inselbuch and Peter Lockwood were respected as witnesses and therefore deposed at their respective offices.

in person and at the same time at any hearings or other proceedings in this case by both Jon
Heberling and Tom Lewis. Any assumption now that both Mr. Heberling and Mr. Lewis would
ever "conveniently" be together somewhere other than Montana prior to the September trial of
this case is false. Requiring Mr. Heberling and Mr. Lewis both to travel to separate depositions
in Pittsburgh, Delaware, or any other location far beyond Montana is not justified.

22.    Perhaps the greatest harm from Arrowood's request that these depositions occur
outside Montana is that the substantive rights of the parties, the Libby Claimants, would surely
be affected and severely prejudiced. The fact remains that all parties in this case are not equal.
The Plan Proponents and insurers have manpower and financial resources not available to Libby
Claimants. Even setting aside the loss of time for Libby Claimants' counsel, the proportional
impact of taking these depositions outside Montana is absolutely greater on the Libby Claimants
than the other parties. For example, Mr. Heberling and Mr. Lewis will require their own counsel
to be present at the deposition. Travel, and the costs associated therewith to which no witnesses
have been subjected, will be required. Egregiously, all those travel costs of Mr. Heberling, Mr.
Lewis, and their counsel would be borne by the financially-stressed and diseased asbestos
victims of Libby. Again, this kind of error is wholly exceptional and unnecessary, given the
well-established courtesies and practices that have been established in this and in all litigation.

23.    Libby Claimants have offered to facilitate these depositions. They could certainly
be arranged on sequential days to minimize travel to Montana. Conversely, Arrowood has made
no attempt to work with Libby Claimants on this matter, having filed the Motion for Relief and
demand for deposition in Pittsburgh without even so much as a call to the Libby Claimants.[28]

---

[28]    At the same time that Arrowood was filing the Motion for Relief, Libby Claimants had acknowledged
Arrowood's request and informed it of the potential of pursuing Tom Lewis's deposition in Pittsburgh, or otherwise

Accordingly, it would be inappropriate for this Court to interject a time and place of Arrowood's choosing for Mr. Heberling's and Mr. Lewis's depositions without first permitting the parties a meaningful opportunity to resolve the matter.

### <u>CONCLUSION</u>

Based upon the above, Libby Claimants respectfully request that this Court deny any and all relief sought by Arrowood in the Motion to Relief, and that it further grant any additional relief that is just and proper.

Dated: July 23, 2009
    Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____
Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, DE  19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

- and -

Daniel C. Cohn
Christopher M. Candon
**COHN WHITESELL & GOLDBERG LLP**
101 Arch Street
Boston, MA 02110
Telephone:  (617) 951-2505
Facsimile:  (617) 951-0679

_Counsel for Libby Claimants_

---

in conjunction with the Pre-Trial Hearing, since he (but not Jon Heberling) was planning to attend the Pre-Trial Hearing in person.  Obviously, Arrowood unilaterally undermined that effort with the Motion for Relief.