# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          . Case No. 01-01139(JKF)
                                .
W. R. GRACE & CO.,              . 5414 USX Tower Building
                                . Pittsburgh, PA  15222
            Debtors.            .
                                . May 14, 2009
. . . . . . . . . . . . . . . . 9:04 a.m.

TRANSCRIPT OF MOTION HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:            Kirkland & Ellis, LLP
                            By:  DAVID BERNICK, ESQ.
                                 BARBARA HARDING, ESQ.
                                 JANET BAER, ESQ.
                                 LISA ESAYIAN, ESQ.
                                 CRAIG BRUENS, ESQ.
                                 BRIAN STANSBURY, ESQ.
                            200 East Randolph Drive
                            Chicago, IL  60601


For the Debtors:            Kirkland & Ellis, LLP
                            By:  THEODORE FREEDMAN, ESQ.
                                 CHRISTOPHER GRECO, ESQ.
                                 DEANNA BOLL, ESQ.
                                 RASHAD W. EVANS, ESQ.
                                 MARC LEWINSTEIN, ESQ.
                                 MAGALI LEE, ESQ.
                            Citigroup Center, 153 East 53rd St.
                            New York, NY  10022


For the Debtors:            Pachulski, Stang, Ziehl &Jones
                            By:  JAMES O'NEILL, ESQ.
                            919 North Market Street
                            17th Floor
                            Wilmington, DE  19899-8705


Audio Operator:             Cathy Younker

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609)586-2311 Fax No.  (609) 587-3599**

1          THE COURT:  It is.

2          MR. FINCH:  No.

3          THE COURT:  Well, it's to resolve the depositions

4   that were on behalf of individuals who were going to attempt to

5   substantiate wrongful death or loss of consortium claims.

6   There's still one issue left and we have to address that issue.

7          So, I don't know how many of the witnesses were for

8   that purpose.  How many?

9          MR. COHN:  Well, unfortunately, Your Honor, this only

10  eliminates two.  There were two wrongful death claimants.  The

11  other ones, what we did, Your Honor, in an attempt to be

12  economical, is rather than depose spouses about their loss of

13  consortium claims, we were deposing the claimants themselves,

14  so that we could cover with one deponent the issue of loss of

15  consortium claim and also the issue of severity of disease.

16         THE COURT:  Okay.  Well, I don't know how the person

17  without the claim can testify to somebody else's claim, but in

18  any event, to the extent that anyone was going to testify about

19  wrongful death or loss of consortium claims, those depositions

20  are no longer necessary and are not allowed.

21         MR. COHN:  We will --

22         THE COURT:  Okay.  Now what's next?

23         MR. COHN:  All right.  So, that brings us, then, to

24  the other reason why we need these depositions, and that is on

25  the issue of severity of disease.

1            Now, the first thing, Your Honor, we need to know is

2  that while the motion has been styled a motion for a protective

3  order and objection to deposition notices, what is going on and

4  I think it did -- I think it was made clear in the argument, is

5  that really what this is all about is whether you're going to

6  exclude certain testimony from the confirmation hearing,

7  because if the testimony is not to be excluded from the

8  confirmation hearing then a fortiori, we're allowed to take

9  discovery that relates to it.  And in the case of these

10 deponents, there's also the practical concern that they are too

11 sick to travel to Pittsburgh or Wilmington and, therefore, to

12 prevent them from being deposed is as a practical matter to

13 prevent them from testifying.

14           THE COURT:  I haven't see anything that meets the

15 criteria that I established several years ago that says these

16 folks are too sick to travel.  I haven't seen it.

17           MR. COHN:  Well, in any event, Your Honor, it is not

18 a requirement to be able to take a deposition for confirmation

19 discovery purposes. It is not a requirement to establish that

20 it would meet the criteria for a perpetuation deposition.  And

21 I do need to clarify, Your Honor, these were -- the notices

22 were styled perpetuation deposition notices, that is not what

23 they are.  We are proceeding under Rule 30, it is in relation

24 to the contested matter, namely the objection to confirmation

25 of the plan, they are not -- they weren't noticed as

52

1  perpetuation depositions, Your Honor.  In a perpetuation

2  deposition what one would do is notice anyone against whom the

3  claimant might assert a claim because the whole purpose is to

4  have people come in and take the deposition now.  All we did

5  with these depositions is, we noticed people who were on the

6  plan confirmation service list.  This is not an end run around

7  your 2004 order that was --

8       THE COURT:  Then they're not too sick to be here.  If

9  they're not -- if you're not noticing them for purposes of

10  notifying everybody as to whom they may have a claim because

11  they're not so sick that they're an extremist, then they're not

12  too sick to be here.

13       I mean, I don't know how you can have it both ways.

14  Either they're too sick to travel and, therefore, you need to

15  perpetuate the testimony and everybody should have notice, or

16  else they're not too sick to be here and they can be here.

17  But, that's a different issue for travel purposes than the

18  deposition.

19       The issue for the deposition at this point, number

20  one, I'm not sure what they're going to be able to tell me that

21  will be relevant to the confirmation issue, so I'd like to know

22  that, and the second this is, why you need 18 of them.  Because

23  assuming that they have something relevant to say, somewhere in

24  there, there has to be one heck of a lot of cumulative

25  evidence.

1        MR. COHN:  The reason that they're testifying, Your

2   Honor, is because it relates directly to our argument that the

3   terms of the trust distribution procedures discriminate against

4   the Libby Claimants.

5        You might recall several hearings ago you talked

6   about Combustion Engineering, you actually took a recess and

7   brought out to the bench and read into the record the actual

8   statement from Combustion Engineering that requires

9   non-discrimination and we are arguing that the way that the

10  disease criteria had been set up in the TDP discriminates

11  against the Libby Claimants.

12       My purpose today is not to make that argument,

13  obviously, that's for another time and place.  My purpose is

14  only to demonstrate that this evidence is directly relevant to

15  that objection.

16       Now, the way that we're going to prove that objection

17  -- oh, and let me step back and just get some more specificity.

18  One element of the discrimination against the Libby Claimants

19  has to do with the disease category called severe plural

20  disease.  What we have said in our papers, we made no secret

21  about our contentions, what we've said in our papers is that if

22  you apply the medical criteria of the TDP to Libby Claimants

23  who have severe pleural disease, only 18 percent of them will

24  have claims that are -- that the TDP recognizes as being in

25  that category; only 18 percent.

54

1        People have died, Your Honor.  People have died of

2   severe pleural disease without meeting the TDP criteria for

3   severe pleural disease.  That will be the essence of our case.

4        Now, one way to prove --

5        THE COURT:  But, people have died of all sorts of

6   things without meeting particular disease categories, Mr. Cohn.

7   I mean --

8        MR. COHN:  You die of severe pleural disease without

9   meeting the medical criteria for a claim for severe pleural

10  disease under the TDP.  That certainly indicates something

11  about whether those criteria are a proper measurement of

12  whether somebody has severe pleural disease.

13       THE COURT:  But I don't know why that would

14  discriminate against Libby as opposed to anybody else in that

15  category.

16       MR. COHN:  Because only the Libby Claimants have

17  severe pleural disease, Your Honor.

18       THE COURT:  Oh, my.  You're going to give me a

19  medical expert testimony that tells me that nobody in the

20  entire world that has been subject to Grace asbestos but Libby

21  Claimants have severe pleural disease?

22       MR. COHN:  It is no one, Your Honor -- it is not that

23  no one else could because, you know, as you're aware, Your

24  Honor, the winchite asbestos that was mined in Libby went to

25  other places in the country.  And so, while the exposures there

1  were probably not as intense by and large as the Libby

2  exposures, someone could come forward and having been exposed

3  to that and might show disease symptoms that are similar to the

4  Libby Claimants but, in fact, this whole phenomenon of people

5  suffering from and dying from severe pleural disease is

6  largely, is largely a Libby phenomenon.

7         THE COURT:  But, largely doesn't make a

8  discrimination.

9         MR. COHN:  Well, sure it does, Your Honor.  If it

10  happens that -- you know, if it happens that most asbestos

11  claimants have claims in Categories A, B, C and D, and most

12  Libby Claimants have claims in Category E and the criteria for

13  Categories A, B, C and D are drawn to be inclusive and to let

14  people get paid on a free and easy basis and the criteria for

15  Category E are drawn so strictly that most people who have the

16  disease won't qualify under the medical criteria, yes, Your

17  Honor, that is discrimination.

18         And that is, in any event, the essence of our case.

19  If you want to rule today that's not discrimination, then we

20  obviously --

21         THE COURT:  No, the problem is, I don't see how it's

22  discrimination -- that that category of severe pleural disease

23  discriminates against Libby, because anyone who meets the

24  criteria, whether they live in Libby or don't live in Libby, is

25  treated in that category if they meet the medical criteria.

56

1   So, I don't see how it can discriminate against Libby claims

2   because everybody with that criteria fit within that category.

3   I'm missing something.

4           MR. COHN:  Well, and, really all I can do is say what

5   I just said, Your Honor, which is that if Libby claimants most

6   of them have a certain type of disease, they are also, by the

7   way, the highest rate of mesotheliomas in the country, but

8   since mesos are something that you see in all types of asbestos

9   disease, we're not -- we have no complaint about how the TDP

10  treats those.  But, the predominant asbestos disease is pleural

11  disease.  And it manifests itself so severely that our medical

12  testimony will be that it will progress in most cases and that

13  most people will die of severe pleural disease, which is

14  unusual in the world of asbestos disease.  And since that is

15  the type of disease that we see in Libby, our assertion is,

16  Your Honor, that the TDP in order not to discriminate against

17  Libby, needs to make provisions that are as adequate for severe

18  pleural disease as it does for the other disease categories.

19          To the extent that it is more strict in how it treats

20  severe pleural disease, to the extent that it excludes more

21  valid claims in that category than the disease criteria in

22  other categories would exclude in those categories, that is

23  discriminatory against the Libby claimants because it

24  discriminates against the type of disease that most of the

25  Libby claimants have.  That is our discrimination argument.

1        THE COURT:  Okay.  I think that maybe I'm

2 misunderstanding the way the TDP is intended to function, but

3 there are numbers of disease levels, if you don't fit within

4 the severe pleural category, you will fit within some other

5 pleural category.

6        MR. COHN:  The next one down, yes, Your Honor.

7        THE COURT:  Or possibly the next one up.  It depends

8 on -- well, maybe not.  It might depend on the diagnosis that

9 you have under certain circumstances.  Maybe you won't, based

10 on the diagnosis, go further up because the severe is the top

11 of the pleural category.

12        MR. COHN:  Correct.

13        THE COURT:  Okay.  So --

14        MR. COHN:  That's the disease they have.

15        THE COURT:  Well, that's the disease at the -- that's

16 the most severe form under this TDP of disease that anybody

17 with a pleural disease can have.

18        MR. COHN:  Okay.

19        THE COURT:  Okay.  So, if you're looking at anybody

20 in a -- any population of people with pleural diseases, the TDP

21 takes them and breaks them into traunches and says if you meet

22 this level of criteria, then you're in the low traunch, if you

23 meet this level, you're in the next high traunch.  If you meet

24 -- and so on until you get to the severe traunch level.

25        MR. COHN:  Yes.

58

1          THE COURT:  That should by, I would think, I mean I'm

2    going to need some testimony, but I've heard testimony about

3    this in other cases, so, unless something's changed over the

4    last five or six years, and it may have, that should be the

5    narrowest category of pleural diseases.

6          MR. COHN:  Well, first of all, Your Honor, you have

7    not heard testimony in other cases, I don't think.

8          THE COURT:  I have.

9          MR. COHN:  Not on this subject, Your Honor --

10         THE COURT:  I have.

11         MR. COHN:  -- because this category was created for

12   this case.

13         THE COURT:  Well, not -- I'm not talking about the

14   specific words that are used, I'm talking about how the disease

15   progresses and the pleural diseases overall.  So, not

16   specifically about this TDP, obviously, I haven't heard

17   testimony about this TDP.  It hasn't been ripe for adjudication

18   yet.

19         MR. COHN:  No, but again, Your Honor, it's important

20   to understand, this category was created -- in fact, I believe

21   the plan proponents will claim that this was created to address

22   the Libby claimants, or at least to address the Libby's

23   claimants assertions about their claims.  So, I don't believe

24   that you have seen this in other cases, Your Honor.

25         THE COURT:  All right.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. COHN:  And our assertion is, well, you know, it's

2   fine to say that you have created a disease category that is

3   designed to address severe pleural disease, but then you

4   actually have to do it because with the other disease

5   categories, you are doing it.  You've got your design criteria

6   that permit the vast majority of claims.

7          THE COURT:  Excuse me.  Okay.  Can you get her

8   number, tell her I'll call her right back.

9          UNIDENTIFIED SPEAKER:  She's going to be in a

10  conference the rest of the day.

11         THE COURT:  Oh.  Mr. Cohn, can I interrupt?

12  Apparently I need to take a phone call and it'll be very brief.

13         MR. COHN:  Of course.

14         THE COURT:  About five minutes.

15         MR. COHN:  Of course.

16         THE COURT:  All right.  We'll take a five minute

17  recess.

18                         (Recess)

19         COURT CLERK:  All rise.

20         THE COURT:  Please be seated.  I'm not sure.  Did

21  everybody have a chance to get back?  Okay.  I'm sorry, Mr.

22  Cohn, thank you for the interruption.

23         MR. COHN:  Oh, it's really no problem, Your Honor.

24  So, where we were was, I was outlining the nature of the

25  argument that we are making in our objection to plan

60

1  confirmation as to which the Libby claimant witnesses, whose

2  depositions have been noticed, will be relevant.

3        And to give you an idea, by the way, of why this

4  matters, Your Honor, the severe pleural category, you pointed

5  out that if, well, if you don't make severe pleural then you

6  can go to the next category down, the difference in the values

7  between the two categories is $50,000 at the severe pleural

8  level, $7500 at the next level down.  So, it matters hugely

9  which category your claim is treated.

10        So, our argument, in sum, Your Honor, is that the

11  medical criteria in the TDP discriminated against the Libby

12  claimants because the type of disease that most Libby claimants

13  have is treated in such a way as to exclude most of the claims,

14  whereas in other disease categories there is not this exclusive

15  effect.  In fact, an overwhelming majority of claimants in

16  other claim categories can be expected, based on experience in

17  other trusts with similar disease categories, an overwhelming

18  number can be expected to be allowed upon expedited review, and

19  never needed to pass individual review.

20        Now, the ACC -- and I don't mean to get into the

21  merits here, but it is going to be relevant to one of the

22  questions that you asked, Your Honor -- the ACC responds in

23  part to this by saying, well, it really doesn't matter whether

24  you pass muster under expedited review because you have these

25  other, in effect, appeal processes.  You can go to individual

1  review and then you can go to arbitration, et cetera.

2          And our response to that is, well, but it's

3  discrimination if what you do is, you force Libby claimants or

4  people with their type of disease, to go through these extra

5  steps and face the uncertainty, really, of whether their valid

6  claims are going to be allowed through these additional

7  processes.

8          The reason that this is important, Your Honor, is

9  because this is -- strike that, Your Honor.  The reason why we

10  need to have a large number of these witnesses, Your Honor, is

11  because it is, in fact, the very number of the witnesses that

12  is important.  To simply try and allow one person or two people

13  or three people, who have severe disease, who, you know, can't

14  get out of bed in the morning without an oxygen mask, and yet

15  are excluded by the TDP criteria from having a claim for severe

16  pleural disease.

17          The response could always be, well, but in any

18  disease category, not everybody is going to meet the disease

19  criteria, there will be outliers and we don't disagree with

20  that, Your Honor.  We do not think it would be reasonable for

21  us to stand here and argue that we have a right to have a

22  hundred percent of Libby pleural disease claims that are severe

23  to necessarily meet the criteria for allowing those claims -- I

24  keep say allowing, but I mean liquidating those claims, at the

25  severe pleural disease category, upon expedited review.  That's

62

1  not the way the TDPs are supposed to work.

2          On the other hand, when only 18 percent of the claims

3  can thread this gauntlet of hostile medical criteria that have

4  been devised for this TDP, we think that that does constitute

5  discrimination.  And, so, the testimony of these witnesses by

6  showing that claimant after claimant after claimant, whom you

7  will immediately recognize from their testimony as being in

8  severe condition, that claimant after claimant after claimant

9  is excluded by the criteria from a severe pleural disease claim

10  under the TDP.  That's important and we think relevant

11  testimony.

12          Now, I realize that the plan proponents and others

13  who are arguing against the Libby claimants on this matter,

14  take the position that this is a proper subject for expert

15  testimony.  They are certainly right that it is a proper

16  subject for expert testimony, and we are offering the testimony

17  of Dr. Whitehouse and there will be other experts as well, in

18  support of the Libby claimants' objection to plan confirmation.

19          In the case of Dr. Whitehouse, I think you may have

20  noticed that he seems to be under a certain level of attack as

21  to his credibility, his expertise and the substance of his

22  opinions.  In fact, it would appear that they are really the

23  focal point, or the battle, if you will, between the Libby

24  claimants and the plan proponents.  And under those

25  circumstances, Your Honor, we are entitled to present

1  corroborating testimony to Dr. Whitehouse.  Yes, he is -- you

2  need a qualified medical doctor to make a diagnosis, obviously.

3  You need medical testimony about whether a person has asbestos

4  disease.

5       Once you've done that, Your Honor, and the issue is

6  now the severity of the disease and whether a person ought to

7  have a claim that is liquidated at the severe pleural disease

8  level, certainly the claimant's own testimony about the

9  severity of the disease is completely relevant and it's

10  admissible.

11       THE COURT:  But, the TDP's don't put the severity of

12  the disease into fact issues such as, can you walk three steps

13  without breathing into an oxygen mask, can you walk up four

14  flights of steps, can you spend two minutes on a treadmill at

15  two miles per hour.  Those aren't the criteria, those are the

16  things that the fact witness could tell me.  The fact witness

17  can't say to me, I've got pleural scarring that is, you know,

18  so long -- that's hearsay as to that witness.

19       MR. COHN:  Your Honor, you've actually -- you're

20  making the exact point that we're trying to make here, which is

21  that if you develop medical criteria that talk about level of

22  pleural thickening or they talk about blunting of the

23  costrophenic angle, you know, et cetera, et cetera.  You

24  develop those medical criteria and when you add them all up, a

25  person who, without doubt has asbestos disease and, yes, can't

1  get out of bed without an oxygen mask or can't walk across the

2  room unassisted, yet that person is excluded from the severe

3  category, that certainly suggests there's something wrong with

4  the medical criteria for that category because obviously those

5  medical criteria.  Whatever they do, those medical criteria are

6  not measuring whether this claimant has severe disease; severe

7  disabling disease.

8      THE COURT:  Well, I think, Mr. Cohn, even that's the

9  subject of expert testimony, even that point because, you know,

10  and I'm not a medical expert so I'm just going to talk about,

11  you know, probably what we shouldn't do, but I'll talk about a

12  personal experience because I don't know how else to put it

13  into an illustration and all I'm trying to do is get to an

14  illustration.

15      You know, certain people have pain thresholds that

16  are absolutely non-existent.  You know, you can stab them with

17  needles and pens and whatever and they don't feel pain.  Other

18  people you prick them with, you know, a little splinter and

19  it's as though it's the end of the world.  Well, I don't know

20  whether in the case of somebody who has a pleural thickening

21  problem, that something like the equivalent of their pain

22  threshold requires those individuals, in some instances, to

23  need certain types of treatment that other individuals with the

24  same medical criteria would not need.  So, someone's testimony

25  that, you know, he or she can't get out of bed in the morning

65

1  without an oxygen mask, whereas someone else can, isn't the

2  medical criteria.  That's a symptom that a specific person has,

3  but that's not the medical criteria on which the categories of

4  disease in a population are going to be based.

5          I've never seen, except as anecdotal support in the

6  scientific literature, a base for saying that a disease is

7  based on somebody's symptoms.  That is evidence that somebody

8  may have a particular disease, but it is not the criteria on

9  which the disease itself is based.  I don't think the witnesses

10  --

11          MR. COHN:  Well, these are not -- you know, when

12  you're talking about the ability of someone to function without

13  an oxygen mask, that's a different -- that's certainly a

14  different matter from the subjective experience of pain.

15          THE COURT:  But, even that took a diagnosis.  You

16  don't get an oxygen mask without a diagnosis.  So, that should

17  be the criteria for that, or the testimony about that is the

18  medical base, not the witnesses' testimony.

19          MR. COHN:  But, if a bunch of people who need oxygen

20  masks, Your Honor, are being excluded from the severe pleural

21  disease categories --

22          THE COURT:  That's what the medical expert should

23  tell me.

24          MR. COHN:  That's true, Your Honor, and the medical

25  expert will, but we're offering as corroboration the experience

66

1  of the actual people who have this disease and who are being

2  excluded by the medical criteria that have been developed by

3  the plan proponents.

4         THE COURT:  I don't think that's relevant or

5  admissible because what they would try to -- what any person in

6  that circumstance would try to tell me is, that based on a

7  doctor's diagnosis that person needs a medical -- or an oxygen

8  mask in order to function.

9         MR. COHN:  No.  That's not what --

10        THE COURT:  Yes.

11        MR. COHN:  -- I'm sorry, that's not what they would

12  say.  What they would say is, I can't physically get enough air

13  into my lungs, Your Honor, to get --

14        THE COURT:  They don't know that.  They don't know

15  that.  What they know is, they feel better with an oxygen mask.

16  It's the doctor who told them they can't get the air into their

17  lungs and, therefore, this oxygen mask will help.  That's the

18  medical base.

19        MR. COHN:  I -- Your Honor, that, I would respectfully

20  submit, is just not the way that the -- strike that.  We should

21  be allowed to prove our case in the way that we wish, within

22  reason of course, to prove our case.  And we --

23        THE COURT:  Oh, I agree, but you have to be able to

24  produce relevant and admissible evidence, and I don't -- and

25  the problem that I'm addressing is whether or not that

67

1  testimony is admissible.  What that person could -- what that

2  witness could say to me is, I use an oxygen mask; period.

3  That's what the person could say; I use an oxygen mask.

4          MR. COHN:  Well, how about, I tried to get out of bed

5  without it and I was so short of breath I thought I was going

6  to die at that very moment?

7          THE COURT:  I was short of breath and I needed an

8  oxygen mask, sure.  I use an oxygen mask.  How did you get it,

9  a doctor told me I needed it.

10          MR. BERNICK:  Your Honor, this is David Bernick, I

11 don't know if I can be heard?

12          THE COURT:  When Mr. Cohn is done, Mr. Bernick.

13          MR. BERNICK:  Thank you.

14          MR. COHN:  Well, on that point, Your Honor, I am

15 done.  I, you know, the -- our papers as we note --

16          THE COURT:  You're going to have to give me some case

17 law before I authorize these depositions.  I don't believe that

18 in the plan confirmation process, that what you're attempting

19 to get to is relevant and admissible.  It may very well be for

20 damages in a trial, on a personal injury action, but that's not

21 what I'm doing in the confirmation process.

22          MR. COHN:  Well, we have -- well, no, we have cited

23 in our papers case law that says that claimants are competent

24 to testify about their own symptoms.

25          THE COURT:  Absolutely.

68

1          MR. COHN:  I do understand that the authority cited

2     by certain others about what claimants can't testify about, you

3     know, are also true, but claimants can testify about their own

4     symptoms.

5          THE COURT:  Right.  I thought I was attempting to get

6     to that.  They can say, I use an oxygen mask, I'm short of

7     breath.  I agree.

8          MR. COHN:  Right.  And that provides corroboration

9     for medical testimony which says that, yes, that person is very

10    sick, or that person is not very sick.  If you have an expert

11    --

12         THE COURT:  Why do we need it, nobody is challenging

13    it?

14         MR. COHN:  Oh, yes, they are.

15         THE COURT:  Who's challenging it?

16         MR. COHN:  Apparently, the plan proponents are taking

17    the position that the medical criteria for severe pleural

18    disease are adequately inclusive so that you'd have to be the

19    exception rather than the rule to be excluded by those criteria

20    yet actually have severe pleural disease.

21         THE COURT:  But, that's all the basis of expert

22    testimony.  It's going to require -- again, I'm just -- I'm

23    trying to do this by way of illustration not by way of findings

24    and I haven't read all the medical reports, so it's certainly

25    not an analysis of the medical experts, okay.

1          That type of testimony is going to require some

2    medical -- or, I'm sorry, some expert and not necessarily a

3    medical expert, but some expert who can say, these criteria

4    would apply to this category of person, or a person who fits

5    within this category, and another expert who is going to say,

6    but it won't apply to this category and the reason that that's

7    important is because if you add this factor or include this

8    factor that's not included in the criteria, then that is also

9    relevant to these symptoms and here's where either in the

10   medical literature or in the epidemiology studies, or in my own

11   experience in dealing with my patients, or whatever the base is

12   going to be, that's where I get the base of my information to

13   say that these criteria are wrong.

14          MR. COHN:  Yes.

15          THE COURT:  The individual can't tell me that the

16   criteria are wrong.

17          MR. COHN:  I agree the individual cannot tell you

18   that, in that broad sense, that the criteria are wrong.  What

19   the individual can do is offer corroboration to the expert who

20   is saying that the criteria are wrong by showing that they are

21   self-evidently people who are in severe condition.  The expert,

22   of course, will say it's from asbestos disease, and I don't

23   think, by the way, that there's going to be any question but

24   that these people are -- that the disease that these people are

25   suffering is asbestos disease.  But, if somebody wants to

**J&J COURT TRANSCRIBERS, INC.**

1  challenge that they can.

2       So, then you have somebody out there who actually is

3  suffering from asbestos disease and is incapacitated, and thus,

4  you know, in severe condition and yet you've got some expert

5  taking the stand -- you know, you've got two experts, one of

6  them says, well, that person is not really in severe condition

7  and one that says he is, well, you know, that helps you to

8  judge which expert is correct.

9       THE COURT:  So, then I have to judge whether any

10 particular individual person is in a severe condition, whether

11 all of the symptoms that this person has are clearly related to

12 the exposure to asbestos and not to some other condition that

13 this person may have.  So, I'm going to be trying a

14 mini-personal injury trial as to each individual in order to

15 know whether what they're telling me are their symptoms related

16 to their asbestos exposure, are not in some way related to some

17 other -- I'll use the word "undisclosed" condition like, you

18 know, diabetes, maybe they have diabetes and that doesn't come

19 out in the medical record.  How will I ever know this, Mr.

20 Cohn?

21      MR. COHN:  Well, because you'll have -- because their

22 medical records have been produced and because the other

23 claimants will have -- I'm sorry, the other parties to the case

24 will have the chance to present evidence if there really is any

25 which, of course, there won't be because that's not the

1  experience of these people.

2        THE COURT:  I don't think it's appropriate for this

3  Court to be doing mini-trials on personal injury actions.  This

4  Court has pretty broad jurisdiction to do a lot of things, but

5  the one thing, I can't try a wrongful death and personal injury

6  actions, and that's what I think you're asking me to do.

7  You're asking me, essentially, to do within the broad plan

8  confirmation process, a mini-trial, because it may or may not

9  be contested, of any individual person who is going to come in

10  and say, these are the facts of my condition.  And then

11  somebody else is going to say, oh, but they're not the facts of

12  your condition, because you say they're based on this, but

13  we've got evidence that they're based on that, that's not my

14  function.  That's not the plan confirmation function.

15        MR. COHN:  Well, this is not for the purpose of

16  claims --

17        MS. HARDING:  Your Honor -- I apologize, Mr. Cohn.

18  I'm just wondering if it might be useful to have some response

19  right now --

20        THE COURT:  No.

21        MS. HARDING:  No?  Okay.

22        THE COURT:  Let Mr. Cohn finish, please.

23        MS. HARDING:  All right.

24        THE COURT:  Go ahead.

25        MR. COHN:  Your Honor, this is not for the purpose of

1  claims allowance, the purpose is not to create a mini-trial so

2  that you could rule at the end of the day, this person has or

3  doesn't have a claim.  The whole idea is simply corroborating

4  testimony in relation to dueling experts.

5          And, you know, on the one side you're going to have

6  experts whose opinions have been purchased by the plan

7  proponents, for purpose of demonstrating that these medical

8  criteria are just fine, on the other side you're going to have

9  an expert who is not only someone who is the world's leading

10 authority on asbestos disease in Libby, but is the actual

11 treating physician.

12          THE COURT:  And been purchased by the plaintiffs for

13 that same purpose, if you're going to use those words.

14          MR. COHN:  Well, Your Honor, most of what he does is,

15 he treats patients.  This is incidental to his work of treating

16 patients.

17          THE COURT:  This is not incidental.  He's being --

18 he's not being asked to come in here to talk about the

19 treatment of his patients.  He's being asked to come in to

20 provide evidence on epidemiological matters that this Court is

21 then being asked to adjudicate in connection with the plan

22 confirmation process to figure out whether the TDP is

23 appropriately structured, both to deal with present and future

24 asbestos claims in the construct of this particular plan

25 process.

1          MR. COHN:  Agreed.

2          THE COURT:  That's what he's being asked to do.

3  He's not being asked to tell me that Person A has a particular

4  disease and has two years to live and is going to suffer a very

5  painful death, that's not what he's there to do.

6          MR. COHN:  Agreed, Your Honor, except that part of

7  the strength of this particular expert witness is the fact that

8  he has dealt with real cases, and not just a few.  He's dealt

9  with many of these cases and that's part of the strength of his

10  testimony.  And we're seeking to exploit that strength, if you

11  will, by offering corroborating testimony from people who

12  actually suffer from severe pleural disease.

13          THE COURT:  Okay.  I don't think that their testimony

14  will actually be corroborative in the issues that are relevant

15  to this Court.  That's the problem.  I think the testimony may

16  well be relevant in a -- when you get to an issue as to what

17  disease category a particular person falls within, that may be

18  the issue.  You know, somebody files a claim saying I have

19  severe asbestos disease and the trust says no, you don't, and

20  you go to an issue about whether you do or not.  At that point

21  maybe you need that witness' testimony.  That is clearly

22  relevant.  Can you get out of bed in the morning?  No, I can't.

23  I don't think that's relevant for what I need to do at this

24  stage.  I need expert testimony that supports your view that

25  the plan doesn't appropriately address the category of

74

1  claimants that you're addressing.  I don't think that the

2  individual claimants will support that effort.

3          MR. COHN:  Well, we disagree, but let's leave it at

4  that, Your Honor.  I really have nothing more to add on the

5  point.

6          THE COURT:  Okay.

7          MR. COHN:  Thank you.

8          THE COURT:  Mr. Bernick?

9          MR. BERNICK:  In light of Your Honor's comments, I'm

10 not really sure that there's anything more to be said.  I think

11 that, really, probably the rule that most clearly speaks to

12 this, and we did go through this fairly extensively in

13 connection with the criminal trial, the very same kinds of

14 issues.  The 702, 703 problem which is that the issue here is

15 the application of diagnostic criteria that is inherently an

16 expert matter, the question is, what kind material is

17 supportive or can be relied upon for expert purposes that would

18 be medical records.  The witness can't corroborate an expert

19 opinion because the witness is not in a position to apply

20 diagnostic criteria as the Court properly has perceived.  And

21 so the only remaining question is whether the testimony, the

22 personal testimony of the witness is the kind of information

23 that reasonably and customarily is relied upon by an expert in

24 the field, under Rule 702 and 703, and I think everybody would

25 say, no, because that's the medical records.

75

1    So, I just don't see that even if the narrow issue is

2    diagnostics, that this would clear the very, very basic rules

3    under 702, 703, as Your Honor has indicated.   To the extent

4    that the opinion then goes to the issue of, well, how would

5    these criteria work more generally in numbers of people that is

6    epidemiology, is going to be a very serious issue because Judge

7    Molloy in the criminal case ruled that Dr. Whitehouse could not

8    testify about those matters because he wasn't competent in

9    those matters, that's going to be a significant issue.   And all

10   these things, I think, are down the road in light of what Your

11   Honor had said, with which we would agree.

12           THE COURT:  All right.  Ms. Harding?

13           MS. HARDING:  I have nothing further, Your Honor.

14           THE COURT:  Mr. Finch?

15           MR. FINCH:  Your Honor, just for the record, I

16   disagree with much of what Mr. Cohn said about the uniqueness

17   of the Libby pleural disease and the impact of the TDP on them,

18   and whether there's discrimination or not.  However, I don't

19   think I need to address any of that, given Your Honor's clear

20   indication of which way she's going to rule on this motion.

21           THE COURT:  All right.  Anybody else have anything?

22           All right.  Yes, I am going to agree that the

23   depositions should be stricken because they are not calculated

24   to lead to relevant or admissible evidence on the issues that

25   will be tried before me regarding plan confirmation and that's

**J&J COURT TRANSCRIBERS, INC.**

1  the sole and exclusive base on which I'm making this ruling

2  with respect to these 18 depositions.  I'm, of course,

3  excluding from this ruling the prior ruling that I've already

4  made by the agreement of the parties concerning standing.  That

5  has no part of this, I'm only addressing now the criteria,

6  medical criteria issue in making this ruling.

7         So, I want to make clear on the record I'm not

8  backing off what I did before.  I'm simply supplementing as to

9  the medical criteria issue and making a separate ruling on the

10  medical criteria issue.

11         MS. HARDING:  Your Honor, I have a proposed order,

12  would you like me to bring it to your --

13         THE COURT:  Show it to Mr. Cohn because I want to

14  make sure it doesn't it --

15         MS. BAER:  It was attached.  It was the one attached.

16         THE COURT:  Oh, no, because I want to make sure it

17  excludes -- I need a separate order dealing with the --

18         MR. COHN:  Loss of --

19         MS. HARDING:  Okay.  We'll address that at a break

20  and try to put it together now.

21         THE COURT:  All right.

22         MR. COHN:  I just wanted to clarify, Your Honor, that

23  there are, in addition to the people whose depositions have

24  been noticed, there are others who are on our witness lists who

25  are people who are well enough to travel, whose testimony we

1  intend -- or intended, to produce live at the confirmation

2  hearing.  And I think just in order to spare them the trip and

3  the exclusion of their testimony, that if Your Honor's

4  intention is to exclude all such testimony at the confirmation

5  hearing, that we simply make sure we cover that in the order at

6  this time.

7          THE COURT:  At this time, Mr. Cohn, I don't see any

8  relevant issue on which they can testify because it seems to me

9  that they cannot corroborate the medical experts and that is

10  the proffer that I am getting from you as to what they would

11  testify about.

12          MR. COHN:  Yes, Your Honor, that is correct.

13          THE COURT:  All right.

14          MR. COHN:  So, yes, so I think what should probably

15  be done is to draft an order that comprehensively addresses

16  that.

17          THE COURT:  All right.

18          MR. COHN:  And I will work with the plan proponents

19  to produce such an order.  I would also like, Your Honor,

20  permission to -- because I think I need to, to protect the

21  record -- may I submit a written offer of proof within the

22  next, say, 14 days with respect to these claims?

23          THE COURT:  As long as I get it before the order is

24  entered because I don't want the order to be entered and then

25  get a proffer that's different from what I'm ruling now.  I

78

1  mean, I'm ruling based on the submissions that I have so far.

2          MR. COHN:  Yes, Your Honor, then we'll do it more

3  quickly than that.

4          MS. HARDING:  Well, Your Honor, if there's -- I don't

5  want to have to go through this again, so if there is something

6  else -- I mean, I think that we made a motion, that counsel

7  responded, we've had argument.  I don't think there should be

8  any additional submission of proof that Your Honor would have

9  to consider before issuing the order.

10          MR. FINCH:  Actually, Your Honor, I think normally

11  the way this works in the middle of the trial, if I offer a

12  piece of evidence and it's excluded, Your Honor or some other

13  judge says, no you can't do it, then after the order is

14  entered, Mr. Finch, you can't get that in, I say, Your Honor,

15  may I make an offer of proof, and the jury goes out of the room

16  and then you put on the offer of proof.  So, I think the proper

17  way to do this is for Your Honor to enter the order that says

18  he can't call these people, and then he puts in his offer of

19  proof to protect the record.

20          THE COURT:  Well, he can put in an proffer at trial,

21  I'm not at trial.  I'm not taking proffers as to trial

22  testimony now, I'll take them at trial.

23          MR. SCHIAVONI:  Judge I just --

24          MS. HARDING:  Your Honor --

25          MR. SCHIAVONI:  -- I actually was just at a

1 confirmation hearing where all 18 of my witnesses were clients,

2 so I'm sympathetic to you.  The judge wouldn't let any of them

3 -- the proffer was made in that case and it's -- how it's

4 always done in every trial, it's made before, so that the judge

5 can consider it --

6         THE COURT:  Before.  It's before the ruling, of

7 course.

8         MR. SCHIAVONI:  -- and take it into account.  The

9 record is closed on this motion.  I don't think it would be

10 appropriate for anything to come in after you rule and I don't

11 think anything should come in after argument and after the

12 briefing on this.

13         THE COURT:  To the extent that there's an issue

14 concerning trial, proffers have to be made at trial, before I

15 make rulings and then I'll rule.  I've made a ruling based on

16 the discovery issues that are pending.  You've asked me at this

17 point, do I see a reason why I would permit your witnesses to

18 testify.  Based on what I've heard so far, I don't.  Whether

19 something will happen at trial, I don't know, Mr. Cohn.  You

20 can preserve that proffer for trial.  I may make a different

21 ruling then if something else happens, I don't know.

22         MR. COHN:  Then I think I had better do that, Your

23 Honor.  So, then I take back my request to broaden the order

24 and I'll just work with Ms. Harding to create an appropriate

25 order for just the discovery issue.

1          THE COURT:  All right.

2          MR. COHN:  Thank you, Your Honor.

3          THE COURT:  That's fine.  Okay, what's next?

4          MS. HARDING:  Your Honor, agenda item Number 2 is Mr.

5  Schiavoni's motion with respect to the Whitehouse discovery.

6          MR. SCHIAVONI:  Your Honor, this motion deals with

7  the expert report that was submitted by Dr. Whitehouse, who you

8  heard some reference to in connection with the last argument.

9  I think the basic facts that support the motion are relatively

10  simple and they all flow from the case management schedule that

11  the Court set from Rule 26 and Rule, I think 36, if my rule is

12  right.

13          THE COURT:  I'm sorry, I'm having trouble hearing you

14  Mr. Schiavoni.  Cathy, can you turn that microphone up?

15          MR. SCHIAVONI:  Oh.

16          THE COURT:  No, it doesn't move.  It has to be

17  controlled from here.  We had someone who had spoke very

18  vociferously yesterday, so it was probably turned down a little

19  bit.  Okay, thank you.

20          MR. SCHIAVONI:  Judge, the very basic facts in

21  connection with this motion is, Your Honor set a case

22  management order in December, it was modified slightly in

23  January.  There was a lot of debate in December about how much

24  time should be devoted to things and whether we all consider

25  this a short amount of time or not, there was an effort to sort