IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors | ) | |
| | ) | Hearing Date: July 27, 2009 at 8:30 a.m. |
| | | Objection Deadline: July 10, 2009 |
| | | Agenda No. 6 |
| | | Dkt. Nos. 22153, 22397, 22411, 22581 |

## DEBTORS' REPLY TO LATE-FILED OBJECTION OF BNSF RAILWAY AND OBJECTION OF THE LIBBY CLAIMANTS TO DEBTORS' MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT AND MUTUAL RELEASE WITH THE ROYAL PARTIES

In response to Debtors' Motion for an Order Approving the Settlement Agreement and Mutual Release with the Royal Parties, only one party filed a timely objection, and one party filed a late objection. Neither of these objections -- filed by the Libby Claimants and BNSF, respectively -- even purport to address the undisputed standards by which this Court must judge the reasonableness of the Debtors' and Royal's settlement -- that the settlement is fair, reasonable and in the estate's interests. But in addition, neither the Libby Claimants nor BNSF provide *any* factual basis for their assertions that they have direct rights to coverage under the

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Royal policies issued to Grace and that the settlement is therefore somehow unfair to them. Absent any such evidence, their objections must be rejected.

## Background

1. Debtors filed their Motion for on Order approving the settlement on June 17, 2009 (Dkt. 22153).

2. As stated in the Debtors' Motion, before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is in the best interests of the debtor's estate. *In re Martin*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *See Martin*, 91 F.3d at 393.

3. As also stated in the Debtors' Motion -- and not disputed by BNSF and or the Libby Claimants -- the standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*

4. The Debtors demonstrated in the Motion that these standards plainly are met with respect to the settlement. The Libby Claimants' objection, and BNSF's late-filed objection, are at their core Plan confirmation objections -- not objections to the reasonableness of the settlement. BNSF's (late) objections and Libby's objections about the releases in the settlement agreement and the scope of the channeling injunction are nothing more than objections to the

treatment of all Settled Asbestos Insurance Companies under the First Amended Plan of Reorganization.

5.  But even on their merits, the objections fail to prove that the settlement should not be approved, for the following reasons.

### BNSF

6.  BNSF admits that *Grace*, not BNSF, is afforded additional insurance coverage under endorsements to two Royal policies: "Two of these policies contain a 'manuscript endorsement,' i.e. an endorsement that does not follow standard forms. [These endorsements] contain an express assumption by Royal Indemnity Company of Grace's indemnification obligation to BNSF." BNSF objection at 5, ¶ 13. BNSF did not provide copies of these endorsements with its Objection to the Settlement. The Debtors provide copies as Exhibits A and B to this Reply.

7.  Despite this admission, BNSF tries to bootstrap itself into an argument that, as a result of these endorsements that plainly provide coverage for *Grace*, BNSF somehow is an "additional insured." BNSF objection at 8, ¶ 24. For this proposition in contradiction of the endorsement's plain language, BNSF cites but one case, *Ring Power Corp. v. Amerisure Ins. Co.*, No. 08-16414, 2009 WL 1101381 (11th Cir. April 24, 2009). *Ring* is an unpublished decision of the Eleventh Circuit and is not precedential for this Court. Moreover, the policies at issue in Ring are dispositively different from the Royal policies issued to Grace. Royal's policies specifically state that Royal agreed to assume Grace's liability to BNSF, but say nothing about directly assuming BNSF's liability or insuring BNSF. Royal's policies simply do not state that BNSF is insured.

8. Moreover, although Montana law does not apply to Grace's insurance policies (as discussed below), even under Montana law (which BNSF would like to apply), where there is a conflict between the named insured and an additional insured for coverage, the Montana Supreme Court has held that any ambiguity in the policy should be resolved against the additional insured. *Travelers Ins. Co. v. American Cas. Co. of Reading, Pa.*, 441 P.2d 177, 181 (Mont. 1968)("If there is ambiguity we do not think the rule of construing the policy against the insurer is applicable. Travelers is a stranger to the policy . . . But in any case ambiguity here should be resolved in favor of the named insured and against the omnibus insured.")

9. Evidently recognizing the failure of its argument as to its purported "additional insured" status, BNSF alternatively asserts -- with no legal or factual support -- that Montana law permits BNSF to directly pursue Royal under policies issued to Grace. Leaving aside that New York law, not Montana law, permits this remedy Grace's insurance policies,[2] BNSF's assertion that Montana law applies cannot be given any weight in opposition to the Motion for Approval because BNSF has utterly failed to provide any evidence or any cases in support.

### Libby Claimants

10. Like BNSF, the Libby claimants utterly fail to address the *Martin* factors. Instead, like BNSF, the Libby claimants put forth what are really objections to the scope of the Channeling Injunction in the Plan. *See* Libby Claimants' Objection to Motion for Approval, at 11-14, ¶¶ 18-25.

11. The Libby claimants' only real objection to *this settlement* is that they somehow had "vested" rights to Royal's insurance as of 1995, when Grace and Royal originally entered into their initial settlement agreement, and that the 1995 settlement somehow did not "exhaust"

---

[2] *W. R. Grace v. Maryland Cas. Co.*, 1992 WL 142038 (S.D.N.Y. June 9, 1992)(applying New York law to Grace's primary and excess policies despite location of insured risks in multiple states).

the Royal policies. But the Libby claimants have provided *no facts to support these arguments*. Despite having ample opportunity, they have provided no evidence of what supposed "vested rights" they had in 1995, and no evidence that the payment of $100 million by Royal in 1995 did not more than fully exhaust the $10 million of coverage that Royal had issued to Grace. Absent any such *facts*, Libby Claimants' legal arguments are entitled to no weight.

WHEREFORE, for the reasons set forth in this Reply and in the Debtors' Motion, the Debtors respectfully request that the Court enter an order approving the Settlement Agreement, and granting such other and further relief as the Court deems just and proper.

Dated: July 23, 2009

KIRKLAND & ELLIS LLP
David M. Bernick
Lisa G. Esayian
300 N. LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Theodore Freedman
Citigroup Center
601 Lexington Ave.
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

# **EXHIBIT A**

SA-919

AUG 1 1 1954 ENDORSEMENT

This endorsement is attached to and hereby made part of the Policy designated below and is effective as of the date and hour indicated (standard time at the address of the named insured as stated in the Policy).

| POLICY NUMBER | NAME OF COMPANY | | EFFECTIVE DATE | | |
|---|---|---|---|---|---|
| RLG 11840 | Royal Indemnity Company | | March 12, 1954 | | |
| NAMED INSURED | | | | 12:01 A.M. | 12:00 Noon |
| Zonolite Company | | | | | |

In consideration of an additional premium charged the Company agrees to assume the liability for bodily injuries including resulting death and for damage to property, which liability the insured has assumed by virtue of the following wording contained in a contract entered into between the insured and Great Northern Railway Company, dated April 20, 1950 and supplemental agreements dated 10-12-50 and 4-25-52 in connection with suspension bridge and conveyor belt, as follows:

The applicant shall, and hereby does, release and discharge the Railway Company of and from any and all liability for damage to or destruction of the said suspension bridge and conveyor belt and all other property of the applicant located upon said premises, however such damage or destruction may occur or be caused. The applicant shall, and hereby does, further agree to indemnify and hold harmless the Railway Company of and from any and all liability, damage, recoveries, judgments, cost, expense or other charges and demands, on account of injuries to or death of one or more persons, or damage to or destruction of the property of one or more persons (including the property of the Railway Company) resulting from or during the construction, repair, maintenance or operation of said bridge and conveyor belt, or resulting from or during the use of said premises by the applicant, the applicant's agents, servants, employees, patrons or customers, or by any other persons, whether caused by the negligence of the Railway Company, its agents, servants and employees, or otherwise. The applicant further agrees to appear and defend in the name of the Railway Company any suits or actions at law brought against it on account of any such personal injuries, death, or damage to property, and to pay and satisfy any final judgment that may be rendered against the Railway Company in any such suit or action. The liability assumed by the applicant herein shall not be affected or diminished by the fact, if it be a fact, that any such suit or action brought against the Railway Company may arise in whole or in part out of the negligence of the Railway Company, its officers, agents, servants or employees, or be contributed to in whole or in part by such negligence. The foregoing language of this section 5 shall not be construed as imposing on the applicant liability for any loss or damage to persons or property which would have occurred in the absence of the construction, repair, maintenance, operation or existence of the said suspension bridge, conveyor belt
(Continued)

Nothing herein contained shall be held to waive, alter, vary or extend any of the terms or provisions of this Policy except as herein stated, nor shall this endorsement bind the Company unless countersigned by a duly authorized representative of the Company.

Countersigned by:
BENEFIT INSURANCE AGENCY

SA-920

ENDORSEMENT

This endorsement is attached to and hereby made part of the Policy designated below and is effective as of the date and hour indicated (standard time at the address of the named insured as stated in the Policy).

| POLICY NUMBER | NAME OF COMPANY | EFFECTIVE DATE | EXPIRATION |
|---|---|---|---|
| PLO 31840 | Royal Indemnity Company | March 31, 1954 | 12:01 A.M. ☒ / 12:00 Noon ☐ |

Named Insured: Zonolite Company

(Continued)    and loading dock and their appurtenances upon the property of the Railway Company.

This endorsement is issued subject to all agreements, exclusions, conditions, declarations, and other terms contained in the policy, except as modified by this endorsement.

Nothing herein contained shall be held to waive, alter, vary or extend any of the terms or provisions of this Policy, except as herein stated, nor shall this endorsement bind the Company unless countersigned by a duly authorized representative of the Company.

Countersigned by:
DETROIT INSURANCE AGENCY

_Sd Dungan_
Authorized Representative

PRESIDENT

# **EXHIBIT B**

CONTRACTUAL LIABILITY ENDORSEMENT END. NO. 11

This endorsement is issued for attachment to and is hereby made a part of the policy designated below and is effective as of the date indicated, at 12.01 A.M., standard time at the address of the named insured as stated in the policy.

| | | |
|---|---|---|
| RLG 035805 | Name of Company ROYAL INDEMNITY COMPANY | Endorsement (Month, Day, Year) Effective Date APRIL 1, 1955 |
| ZONOLITE COMPANY, ETAL | | Additional Premium $ INCLUDED |

Countersigned by DETROIT INSURANCE AGENCY

_____
Authorized Representative

It is agreed that such Contractual Liability insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability also applies to the liability assumed by the named insured under that part of a contract between the named insured and GREAT NORTHERN RAILWAY COMPANY dated APRIL 20, 1950 reading as follows:
SUPPLEMENTED BY 10-12-50 AND 4-25-52 AGREEMENTS

THE APPLICANT SHALL, AND HEREBY DOES, RELEASE AND DISCHARGE THE RAILWAY COMPANY OF AND FROM ANY AND ALL LIABILITY FOR DAMAGE TO OR DESTRUCTION OF THE SAID SUSPENSION BRIDGE AND CONVEYOR BELT AND ALL OTHER PROPERTY OF THE APPLICANT LOCATED UPON SAID PREMISES, HOWEVER SUCH DAMAGE OR DESTRUCTION MAY OCCUR OR BE CAUSED. THE APPLICANT SHALL, AND HEREBY DOES, FURTHER AGREE TO INDEMNIFY AND HOLD HARMLESS THE RAILWAY COMPANY OF AND FROM ANY AND ALL LIABILITY, DAMAGE, RECOVERIES, JUDGMENTS, COST, EXPENSE OR OTHER CHARGES AND DEMANDS, ON ACCOUNT OF INJURIES TO OR DEATH OF ONE OR MORE PERSONS, OR DAMAGE TO OR DESTRUCTION OF THE PROPERTY OF ONE OR MORE PERSONS (INCLUDING THE PROPERTY OF THE RAILWAY COMPANY) RESULTING FROM OR DURING THE CONSTRUCTION, REPAIR, MAINTENANCE OR OPERATION OF SAID BRIDGE AND CONVEYOR BELT, OR RESULTING FROM OR DURING THE USE OF SAID PREMISES
LOCATION: LIBBEY, MONTANA
(CONTINUED ON REVERSE SIDE)

The insurance afforded under this endorsement is only with respect to such and so many of the following coverages as are indicated by specific limits of liability.

| Coverages | Limits of Liability | | |
|---|---|---|---|
| Bodily Injury Liability | $ 200,000.00 | each person $ 500,000.00 | each accident |
| Property Damage Liability | $ 500,000.00 | each accident $ 500,000.00 | aggregate |

| Designation of Contract | Premium Bases | Rates | Advance Premiums |
|---|---|---|---|
| | | Bodily Injury / Property Damage | Bodily Injury / Property Damage |
| GREAT NORTHERN RAILWAY CO. DATED 4-20-50 AND SUPPLEMENTAL AGREEMENTS DATED 10-12-50 AND 4-25-52 IN CONNECTION WITH SUSPENSION BRIDGE AND CONVEYOR BELT. 0521 ONE | CONTAINS CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER MARYLAND CASUALTY CO. V. GRACE & CO. ET AL. NO. 83 7451 (SWK) (S.D.N.Y.) | 48.60  52.50 | 48.60  52.50 |
| Minimum Premiums B.I. $   P.D. $ | | Total Advance Premiums | 48.60  52.50 |

The other provisions of this endorsement are printed on the back of this sheet 0020751

FOR OFFICE USE ONLY

GCO 007476
CONFIDENTIAL SUBJECT TO
APRIL 2009 PROTECTIVE ORDER

Notwithstanding anything to the contrary contained in the contract referred to herein, it is agreed between the company and the named insured that the insurance provided [by] this endorsement does not apply

1. to injuries to persons, including death, or to damage to or destruction of property, including the loss of use thereof, which are excluded by the printed terms, conditions and exclusions of the policy or any printed amendatory endorsement, unless such terms, conditions and exclusions are specifically amended by this endorsement by wording other than that contained in the contract referred to herein;

2. to any action on a contract by a person not a party thereto;

3. to damages awarded in any arbitration proceedings
   (a) involving questions of policy coverage,
   (b) in which the company is given no part in the selection of the arbitrators and in the arbitration proceedings, or
   (c) which are not confined to disputes between the parties to the contract referred to herein;

4. to injury, sickness, disease, death or destruction due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

5. to liability for the sale, gift, distribution or use of any alcoholic beverage.

The premium with respect to which "cost" is the basis, is an estimated premium only. Upon termination of this endorsement, the earned premium shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to this insurance. If the earned premium thus computed exceeds the estimated advance premium paid, the named insured shall pay the excess to the company; if less, the company shall return to the named insured the unearned portion paid by such insured.

When used as a premium basis the word "cost" means the total cost to any indemnitee of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due.

Nothing herein contained shall be held to waive, alter, vary or extend any of the terms or provisions of the policy, except as herein stated, nor shall this endorsement bind the company unless countersigned by a duly authorized representative of the company.

*[signature]*
PRESIDENT

BY THE APPLICANT, THE APPLICANT'S AGENTS, SERVANTS, EMPLOYEES, PATRONS OR CUSTOMERS, OR BY ANY OTHER PERSONS, WHETHER CAUSED BY THE NEGLIGENCE OF THE RAILWAY COMPANY, ITS AGENTS, SERVANTS AND EMPLOYEES, OR OTHERWISE. THE APPLICANT FURTHER AGREES TO APPEAR AND DEFEND IN THE NAME OF THE RAILWAY COMPANY ANY SUITS OR ACTIONS AT LAW BROUGHT AGAINST IT ON ACCOUNT OF ANY SUCH PERSONAL INJURIES, DEATH, OR DAMAGE TO PROPERTY AND TO PAY AND SATISFY ANY FINAL JUDGMENT THAT MAY BE RENDERED AGAINST THE RAILWAY COMPANY IN ANY SUCH SUIT OR ACTION. THE LIABILITY ASSUMED BY THE APPLICANT HEREIN SHALL NOT BE AFFECTED OR DIMINISHED BY THE FACT, IF IT BE A FACT, THAT ANY SUCH SUIT OR ACTION BROUGHT AGAINST THE RAILWAY COMPANY MAY ARISE IN WHOLE OR IN PART OUT OF THE NEGLIGENCE OF THE RAILWAY COMPANY, ITS OFFICERS, AGENTS, SERVANTS OR EMPLOYEES, OR BE CONTRIBUTED TO IN WHOLE OR IN PART BY SUCH NEGLIGENCE. THE FOREGOING LANGUAGE OF THIS SECTION 8 SHALL NOT BE CONSTRUED AS IMPOSING ON THE APPLICANT LIABILITY FOR ANY LOSS OR DAMAGE TO PERSONS OR PROPERTY WHICH WOULD HAVE OCCURRED IN THE ABSENCE OF THE CONSTRUCTION, REPAIR, MAINTENANCE, OPERATION OR EXISTENCE OF THE SAID SUSPENSION BRIDGE, CONVEYOR BELT AND LOADING DOCK AND THEIR APPURTENANCES UPON THE PROPERTY OF THE RAILWAY COMPANY.

CONTAINS COVER[...]
SUBJECT TO PRO[...]
MARYLA[...] CIV[...]
GRACE [...] CO. [...]
7451 (SWK) (S.D.N.Y.)    CC30452

GCO 007477
CONFIDENTIAL SUBJECT TO
APRIL 2009 PROTECTIVE ORDER