IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

### NOTICE OF FILING REPORT OF
### DENISE NEUMANN MARTIN DATED JULY 24, 2009

PLEASE TAKE NOTICE THAT on July 24, 2009, the Debtors filed the attached *Report of Denise Neumann Martin Dated July 24, 2009*.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

DOCS_DE:151175.1

Dated: July 24, 2009

KIRKLAND & ELLIS LLP
Theodore L. Freedman
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446 - 4800
Facsimile: (212) 446 - 4900

and

PACHULSKI STANG ZIEHL & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

2

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

In re:

W.R. GRACE & CO., et al.,
Debtors

Chapter 11
Case Nos. 01-1139 through 01-1200

# REPORT OF DENISE NEUMANN MARTIN

July 24, 2009

### A. Assignment and Overview

We were asked to review the forecasts described in the September 25, 2007 Supplemental Report as well as the corresponding back-up materials of Dr. B. Thomas Florence and to establish a confidence interval around the lowest, mid-range and highest of his forecasts.[1] Using a simulation model where we vary three of the inputs to Dr. Florence's forecast, we find that the 95% confidence intervals around his lowest, mid-range and highest forecasts range from $4.6 million to $6.3 billion.

### B. Qualifications

I am a Senior Vice President of National Economic Research Associates, Inc. ("NERA"). NERA is an economic consulting firm that was established in 1961 and now employs over 600 people in 21 offices worldwide. I earned my B.A. degree *magna cum laude* in Economics from Wellesley College and my Master's and Ph.D. degrees, both in Economics, from Harvard University. At Harvard, I taught classes in economics at both the graduate and undergraduate level.

My work at NERA has included numerous testifying and consulting projects in the area of mass torts and product liability valuation. These assignments have required me to estimate the future personal injury claims likely to be brought against defendants in a variety of different litigations, including asbestos, silica, medical products, tobacco, food contamination and construction products litigation. I co-authored the reference text *Estimating Future Claims: Case Studies from Mass Tort and Product Liability* and was asked to provide Senate testimony related to proposed national tort reform. My CV is attached as Exhibit 1.

### C. Analysis of Variation in Dr. Florence's Forecast Models and Confidence Interval Estimation

Using the forecast models and data provided by Dr. Florence in the back-up materials for his September 25, 2007 Supplemental Report, we have identified several key inputs to his models, identified potential variation around these inputs, and developed a simulation model that uses this variation to generate a confidence interval around Dr. Florence's forecast estimates.

---

[1] Estimation of the Number and Value of Pending and Future Asbestos-Related Personal Injury Claims: W.R. Grace, submitted by ARPC, September 25, 2007.

1

## 1. Description of Dr. Florence's Forecast Approach

Dr. Florence used two forecast techniques: the Nicholson method and the Peto/Walker method. A brief description of each method follows, as well as a description of the specific assumptions used to generate Dr. Florence's lowest, mid-range and highest forecasts.

To generate a forecast of malignant claims using the Nicholson method, Dr. Florence followed the following steps:

1. Identified a population of workers potentially exposed to W.R. Grace asbestos-containing products;

2. Applied a dose-response relationship to project the incidence of each disease over time;

3. Estimated disease-specific "filing rates" of claimants who met certain criteria, including medical and exposure criteria, compared to the incidence estimated to have arisen over that period; and

4. Multiplied that filing rate by projected future incidence to project future claims of claimants who would meet certain criteria.

He then used a log-log regression to project non-malignant filings of claimants who would meet certain criteria as a function of the projected malignant filings of claimants who would meet certain criteria. Finally, he calculated the values of mesothelioma claims of claimants who met certain criteria, and assumed that claims for other diseases would be paid some fraction of those mesothelioma values, based on the ratio of mesothelioma/other disease claims observed in a sample of several trusts.[2]

To generate his lowest forecast estimate of $200.2 million, Dr. Florence used a Nicholson approach with a five-year calibration period of 1996-2000 to estimate historical filing rates of claimants who would meet certain criteria for each of the malignant diseases. He also assumed that claimants who did not provide medical and exposure information would not meet the criteria. To generate his mid-range forecast of $593.8 million, Dr. Florence also used a Nicholson approach with 5-year calibration period of 1996-2000. In this model, however, he

---

[2] See Supplemental Report for more details of Dr. Florence's methodology.

2

assumed that claimants who did not provide medical and exposure information would meet the criteria at the same rate as those who had provided data.[3]

To generate a forecast using the Peto/Walker method, Dr. Florence estimated an exposed population and an average exposure intensity level such that the number of predicted illnesses matched the observed historical number of claimants who met certain criteria. Once that population was estimated, he followed the same steps as in the Nicholson approach – projecting an incidence of disease; estimating a filing rate of claimants who met certain criteria over a calibration period; applying the filing rate to project future claims of claimants who would meet certain criteria; and applying average dollars to value those claims.

To generate his highest forecast estimate of $988.6 million, Dr. Florence applied the Peto/Walker method with a two-year calibration period of 1999-2000 to estimate his historical filing rate of claimants who met certain criteria. In addition, he assumed that the claimants who did not provide data would meet the criteria at the same rate as those who did provide data. Other inputs to and assumptions used in this forecast scenario are similar to the Nicholson models described above.

### 2. Measuring Variation in Selected Inputs to Dr. Florence's Models

A statistical procedure is used to estimate some of the parameters of Dr. Florence's forecast model; therefore, there are known statistical error rates associated with these parameters. For both the Nicholson and Peto/Walker models, we were able to measure the variation around three identified inputs to Dr. Florence's forecasts, and then use this statistical variation to estimate a confidence interval.

One source of variation comes from the annual filings of claimants who met certain criteria within the calibration period. It is possible to measure the statistical uncertainty in the overall forecast by evaluating the implications of this observed variation. In our simulation, we modeled this variation by randomly selecting annual claim filings of claimants who met certain criteria from the calibration period to create alternative filing rates of those claimants, sampling

---

[3] Dr. Florence ran an even number of forecasts, which results in two "mid-range" forecasts. To generate the other mid-range forecast of $347.1 million, Dr. Florence used a Peto/Walker method with a two-year calibration period (1999-2000) and assumed that claimants who did not provide medical and exposure information would not meet the criteria.

3

with replacement. For example, for each simulation in Dr. Florence's lowest forecast, we randomly selected claim filings of claimants who met certain criteria from the period 1996 to 2000 (sampling with replacement) until we had five years of data and then re-calculated the filing rate of those claimants using this simulated data.

Another source of variation comes from the exposure criteria applied to the calibration period claims. Because these exposure criteria pass-rates come from an underlying sample of claimants, variation from this sample can be incorporated into the simulation model.

A third source of variation in the inputs to Dr. Florence's models comes from the average settlement values. Dr. Florence uses the historical average value paid to a sample of mesothelioma claimants who met certain criteria to price mesothelioma claims. Taking the mean and standard deviation of the mesothelioma settlements in his sample, and assuming that the distribution of the settlements is log-normal, we generated a distribution of possible mesothelioma settlement values from which to draw for the simulation exercise. For the other disease claims, Dr. Florence generates average settlement values as a ratio to those mesothelioma values, based on the ratios observed in several trusts. Our simulation model incorporates statistical uncertainty here, as well, randomly drawing from the population of trust observations, sampling with replacement, for each simulation run.

### 3. Simulation and Results

After incorporating the statistical uncertainty around three inputs to Dr. Florence's forecasts – filing rates, exposure criteria qualification rates, and average settlement values – into our simulation model, we ran the simulation model 100,000 times based on Dr. Florence's lowest, mid-range and highest forecast models.

Based on the results of these simulations, we constructed a confidence interval around the discounted present value of each liability forecast with a standard statistical procedure. For the model that generates the lowest forecast in Dr. Florence's Supplemental Report, $200.2 million, the simulation procedure shows that 95% of the time the forecasting model would produce a forecast within the range of $4.6 million to $1.2 billion.[4] For the model that generates the mid-

---

[4] This is the 95% confidence interval based on the three sources of variation that we have measured. See the discussion below.

4

range forecast in Dr. Florence's Supplemental Report, $593.8 million, the simulation procedure shows that 95% of the time the model would produce a forecast within the range of $13.5 million to $3.5 billion.[5] For the model that generates the highest forecast in Dr. Florence's Supplemental Report, $988.6 million, the simulation procedure shows that 95% of the time the model would produce a forecast within the range of $23.6 million to $6.3 billion. See Exhibit 2.

Note that the sources of variation described above and included in the simulation model are not the only variable inputs to Dr. Florence's models. Because our simulation does not account for all the sources of uncertainty, our confidence intervals are likely to overstate the statistical precision of the forecasts. In other words, if the additional sources of variation were to be measured and incorporated into this analysis, we would expect the confidence intervals from the simulation results to be wider.

### D. Conclusion

There is statistical uncertainty around a number of the parameters used as inputs to Dr. Florence's forecast models. By incorporating the variation from three of these parameters into a simulation model, we are able to estimate a confidence interval around Dr. Florence's forecasts. Simulating a 95% confidence interval around his forecasts generates a range from $4.6 million $6.3 billion.

*Denise Neumann Martin* (signature)

Denise Neumann Martin

July 24, 2009

---

[5] The 95% confidence interval for Dr. Florence's other mid-range forecast of $347.1 million ranges from $8.2 million to $2.2 billion.

# EXHIBIT 1

# DENISE NEUMANN MARTIN
## SENIOR VICE PRESIDENT

## Education

**Harvard University**
Ph.D., Economics, 1991
M.A., Economics, 1988

**Wellesley College**
B.A., *magna cum laude*, Economics and French, 1985
Honors: Phi Beta Kappa

## Professional Experience

**NERA Economic Consulting**
2001-   Senior Vice President
Responsible for economic analysis and testimony in the areas of mass torts and product liability valuation, securities-related litigation and labor economics.

2002-   Board of Directors

1998-2000   Vice President

1994-1997   Senior Consultant

1991-1993   Senior Analyst

**Harvard University**
1986-1990   Teaching Fellow, Department of Economics
Taught courses in Microeconomics and Industrial Organization at the graduate and undergraduate levels. Assisted senior honors candidates with theses. Awarded Danforth Prize in Teaching.

1986-1990   Research Associate, Department of Economics
Projects included an investigation of the timing of international horizontal mergers, an evaluation of the effect of generic entry into the pharmaceutical market, and a comparison of technical efficiency across countries.

**Urban Systems Research and Engineering/Economica, Inc.**

Denise Neumann Martin

1987-1988    Economic Consultant
Consulted on all aspects of government agency projects, including proposals and the design of survey instruments. Provided economic forecasts and technical support.

**Federal Reserve Bank of New York**
1985-1986    Assistant Economist, International Financial Markets
Analyzed Eurobond markets, interest rate swap markets, and US commercial banks' balance sheets.

## Expert Testimony and Reports (4 years)

Expert Report, In the Superior Court of the Commonwealth of Massachusetts, Middlesex County, in the matter of *Elaine Polion and Crystal Salvas et al v. Wal-Mart Stores, Inc., et al.,* 2009.

Affidavit, In the Superior Court of New Jersey Law Division: Middlesex County, in the matter of *Congoleum Corporation v. Ace American Insurance Company, et al.,* 2009.

Declaration in the United States Bankruptcy Court for the District of Delaware, *In Re: W.R. Grace & Co., et al.,* 2009

Declaration and Deposition Testimony in the United States District Court, District of Oregon, *In Robbin Moore et al. v. Wal-Mart Stores, Inc.,* 2008/2009.

Affidavit, Second Affidavit and Expert Report In the Commonwealth of Massachusetts, Middlesex, ss. Superior Court Department, in *Atlanta International Insurance Co., et al., v. A.W. Chesterton Company,* 2008.

Affidavit, In the United States District Court for the Southern District of Texas, Galveston Division- *In Re Stacie Adcox, et al., v. Wal-Mart Stores, Inc.,* 2008.

Expert Report and Deposition Testimony, In the Chancery Court for Sullivan County at Bristol, Tennessee in the matter of *In Re: King Pharmaceuticals, Inc., Derivative Litigation,* 2008.

Affidavit and Expert Report, In the United States District Court Northern District of California, Oakland Division- *In Re Wal-Mart Stores, Inc. Wage and Hour Litigation,* 2008.

Affidavit, In the Superior Court of the State of California County of Marin, in the matter of *Overstock.com, Inc. et al., v. Gradient Analytics, Inc., et al.,* 2008.

Affidavit, In the Circuit Court for Washington County in the State of Florida, in the matter of *In Re Debra Oulette et al. v. Wal-Mart Stores, Inc.,* 2007.

Denise Neumann Martin

Declaration, Supplemental Declaration and Deposition Testimony before the United States District Court, Northern District of California, *In Re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 2007.

Declaration "*Civil Action No. G-04-633*" on appropriate sample size required to address case certification issues, 2007.

Affidavit and Rebuttal Affidavit, In the United States District Court Southern District of Florida, in *Jerry Lowry v. Andrx Corporation*, 2007.

Affidavit and Deposition Testimony, In the Ontario Superior Court of Justice in *Marvin Neil Silver and Cliff Cohen v. IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler and Francis T. Joyce*, 2007/2008.

Expert Report, In the District Court of Jefferson County – Texas in *E.I. Du Pont de Nemours and Company v. Travelers Casualty and Surety Company f/k/a Aetna Casualty and Surety Company, et al.*, 2006.

Testimony and Deposition Testimony, In the United States Bankruptcy Court for the Western District of Pennsylvania in the matter of *In Re Global Industrial Technologies, Inc., et al.*, 2006.

Expert Report and Deposition Testimony before the United States District Court Southern District of New York for the defendant in the matter of *In Re NTL Securities Litigation; Gordon Partners, et al v. George S. Blumenthal, et al.*, 2006.

Report, Second Report and Testimony before the Superior Court of the Commonwealth of Massachusetts, Middlesex County, in the matter of *In Re Salvas, et al. v. Wal-Mart Stores, Inc., et al.*, 2006.

Expert Report and Testimony, In the Court of Common Pleas of Philadelphia County, First Judicial District of Pennsylvania Civil Trial Division for the defendant in the matter of *Hummel v. Wal-Mart Stores, Inc. et al.*, 2006.

Rebuttal Report and Second Rebuttal Report before the United States District Court, Northern District of Texas, Dallas Division for the defendant in the matter of *In Re Ryan, et al. v. Flowserve Corporation, et al.*, 2006.

Testimony, In the Superior Court of the State of California in and for the County of Alameda Unlimited Jurisdiction for the defendant in the matter of *In Re: Andrea Savaglio, et al., v. Wal-Mart Stores, Inc., et al.*, Injunction Trial, 2006.

Declaration before the United States Bankruptcy Court for the District of New Jersey in the matter of *In Re G-I Holdings, Inc. et al.*, 2005.

Expert Report before the United States Bankruptcy Court for the District of New Jersey in the matter of *In Re G-I Holdings, Inc., et al. v. Ruddles A. Bennett, Jr., et al.*, 2005.

3

Denise Neumann Martin

Testimony before the Senate Judiciary Committee Hearing on *Recent Developments in Assessing Future Asbestos Claims Under the FAIR Act*, on analysis that predicted the proposed national trust would quickly go bankrupt, 2005.

Rebuttal Report and Testimony, In the Superior Court of the State of California in and for the County of Alameda Unlimited Jurisdiction for defendant in the matter of *In Re Andrea Savaglio, et al., v. Wal-Mart Stores, Inc., et al., Litigation,* 2005.

Declaration before the United States District Court of the District of Delaware on behalf of USG Corporation, et al. in the matter of *In Re USG Corporation, et al., v. Official Committee of Asbestos Personal Injury Claimants, et al.*, 2005.

Declaration before the United States District Court for the Southern District of Texas, Houston in the matter of *In Re Dynegy, Inc. Securities Litigation*, 2005.

Affidavit and Supplemental Affidavit before the United States District Court, District of Massachusetts in the matter of *In Re PolyMedica Securities Litigation,* 2004.

## Publications and Presentations (10 years)

"Wage and Hour: Advanced Topics in Litigation," presented at Law Seminars International conference on Litigating Employment Class Actions, April, 2009

"The Use of Economic Analysis in Predatory Lending Cases: Application to Subprime Loans," (co-author) NERA Monograph, November 2008.

"Forecasting Product Liability by Understanding the Driving Forces," (co-author) published in *The International Comparative Legal Guide to Product Liability,* 2006.

"Clearing Uninjured Plaintiffs from the Tort System: The Road to a Solution," (co-author), *Legal Backgrounder*, Washington Legal Foundation, Vol. 18, No. 31, 2003.

"Trends in Securities Litigation and the Impact of the PSLRA," (co-author), *Class Actions & Derivative Suits*, American Bar Association Litigation Section, Vol. 9, No. 3, Summer 1999.

"Recent Trends V: What Explains Filings and Settlements in Shareholder Class Actions?" (co-author), 1998.

July 2009

**Exhibit 2**
**95% Confidence Intervals Surrounding the Highest, Lowest**
**and Mid-Range Forecasts Presented by Dr. Florence**

*Discounted Dollars as of 2001*

| | Value of All Claims (Millions) | | |
|---|---|---|---|
| Forecast Scenario | Lower Bound | Florence Forecast[1] | Upper Bound |
| (1) | (2) | (3) | (4) |
| Highest Forecast | $ 23.6 | $ 988.6 | $ 6,312.5 |
| Mid-Range Forecast (Nicholson Approach) | 13.5 | 593.8 | 3,505.6 |
| Mid-Range Forecast (Peto/Walker) | 8.2 | 347.1 | 2,235.5 |
| Lowest Forecast | 4.6 | 200.2 | 1,189.8 |

**Notes and Sources:**
-- Data used in this analysis is from the back-up materials to the report of Dr. B. Thomas Florence of ARPC, "Estimation of the Number and Value of Pending and Future Asbestos-Related Personal Injury Claims: W.R. Grace Supplemental Report", dated September 25, 2007.
-- Confidence intervals are generated from 100,000 simulations around the Florence forecasts. These simulations incorporate variation in the filing rates (based on annual historical filings from 1996 to 2000), exposure rates and average settlement values for each disease category. Mesothelioma settlement values are assumed to be drawn from a log-normal distribution.

[1] Lowest, highest and mid-range forecast estimates provided in the back-up materials to Dr. Florence's September 25, 2007 report.