IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et. al.[1] | ) | Case No. 01-01 139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors | ) | Re: Docket Nos. 20622, 20998, 21002, |
| | ) | 21544, 22084, 22133, 22347, 22374, 22513 |

## DEBTORS' RESPONSES AND OBJECTIONS TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND BANK LENDER GROUP'S JOINT INFORMATION REQUEST CONCERNING SECTION 1129 SOLVENCY ISSUES

The Debtors, in accordance with the Court's instructions at the hearing on June 22 and

23, 2009, and the Order Regarding Further Matters Related To The Phase I Confirmation

Hearing With Respect To Class 9 Impairment, dated July 9, 2009, hereby respond to the Official

Committee Of Unsecured Creditors And Bank Lender Group's Joint Information Request

Concerning Section 1129 Solvency Issues (the "Joint Information Request").

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/Ma Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (fMa Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace 11, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (fMa Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (fMa Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (fMa Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B I1 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G I1 Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (Wa Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal 11, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (fMa GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (fMa Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (Wa British Nursing Association, Inc.), Remedium Group, Inc. (Wa Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (flk/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## **PRELIMINARY STATEMENT**

Debtors' submission concerning the solvency issues to be raised at the Phase II confirmation hearings is comprised of three sections. In Section I, below, Debtors respond and object to the specific discovery demands set forth in the Joint Information Request served on July 10, 2009, by the Official Committee Of Unsecured Creditors (the "Committee") and the Bank Lender Group (the "Lenders").

In Section II, below, Debtors respond to the Committee's and the Lenders' statement concerning their proposed proof of solvency at the Phase II Confirmation Hearings. As set forth in that Section, Debtors object to the Committee's and the Lenders' belated attempt to call Robert Frezza as "an expert witness" to testify as to Debtors' solvency at the upcoming Phase II hearings. It has been almost a year since the Committee and the Lenders had their expert, Edwin N. Ordway, Jr., attempt to justify a finding of solvency based on various proxies, such as Debtors' market capitalization and the financial information contained in the Plan. Since that time, the Committee and the Lenders have never supplemented their expert case on solvency: they did not do in response to the Court's Case Management Orders; they did not do so at the hearings on June 22 and 23, 2009; and they did not so in response to the Court's July 10, 2009 deadline for the disclosure of any additional evidence concerning solvency that the Committee and the Lenders believed was necessary to present at confirmation. Indeed, as recently as June 22, 2009, counsel for the Committee stated that "we don't intend to call any additional witnesses with respect to solvency unless they are needed in the result of a response to information put on the record by others."

Then, on July 20, 2009, when the Committee and the Lenders filed their Joint Pre-Trial Submission, they disclosed, for the first time, that they intended to call Mr. Frezza as an expert witness with respect to the Debtors' solvency at the upcoming confirmation hearing. To make

matters worse, in describing the anticipated scope of Mr. Frezza's expert testimony, the Committee and the Lenders purport to open the door to an whole new solvency analysis, notwithstanding the fact that Mr. Frezza has never submitted an expert report.

It is far too late in the day for the Committee and Lenders to switch experts and try to reopen the evidentiary record on solvency. The Committee's and the Lenders' disclosure of Mr. Frezza as an expert on solvency at this point in the proceedings is a transparent attempt at "trial by ambush." The Court should not countenance such tactics. Accordingly, Debtors respectfully request that the Court bar the Committee and the Lenders from calling Mr. Frezza as an expert on solvency at the confirmation hearings.

In Section III, below, Debtors offer their own counter-statement on the proof of solvency to be introduced at the Phase II confirmation hearings.

## I.    DEBTORS' RESPONSES AND OBJECTIONS TO THE JOINT INFORMATION REQUESTS.

In the Joint Information Request, the Committee and the Lenders requested certain information with respect to solvency. Debtors respond and object to those information requests as follows:

### REQUEST NO. 1:

The work papers and underlying back-up data relied upon to prepare the Condensed Consolidated Balance Sheets As Reported and Projected (as of December 31, 2009), which comprises the last page of Exhibit 12 to the Plan (as revised).

### RESPONSE TO REQUEST NO. 1:

Debtors object to this request because it is vague, ambiguous, overbroad, and unreasonably burdensome. For example, the request as written would require Grace to produce its entire general ledger accounting system and all supporting accounting records. Debtors further state that the Committee and the Lenders (hereinafter the "Requesting Parties") have no

legitimate need for this requested information if, as they state, the purpose of this request is to address solvency issues relevant to Plan Confirmation. Grace has already made available to the Requesting Parties--subject to the provisions of the May 14, 2009 Protective Order and other applicable Protective Orders entered in these cases--documents in its Virtual Data Room that have been provided in response to requests from prospective lenders who are conducting due diligence in connection with ongoing negotiations for exit financing. The Virtual Data Room includes similar historical and forecast information as that contained in Exhibit 12 to the Plan, and the Virtual Data Room also includes supporting documentation.

## REQUEST NO. 2:

To the extent not otherwise provided under item 1, for each balance sheet account category indicated on the Condensed Consolidated Balance Sheets As Reported and Projected:

a. a list of each sub-account along with related balances totaling to the line items set forth in the Condensed Consolidated Balance Sheets;

b. any assumptions underlying each such sub-account;

c. data demonstrating whether each line-item will be settled in cash (prepaid asset funded with cash, accrual or other cash liability) as opposed to a balance sheet adjustment account (e.g., Deferred Tax Asset or Liability account or reserve account)

d. the projected claims analyses relating to the Condensed Consolidated Balance Sheets. For such claims analysis, please provide information (i) breaking out principal from interest totaling the amounts provided in the line-items of the Condensed Consolidated Balance Sheets; (ii) as to the expected timing for the settlement of such claims (at a minimum, whether settlement of such claims are to be made within 12 months or beyond 12 months); and (iii) regarding long term claim amounts, the breakdown between amounts due within one year versus amounts due beyond one year.

## RESPONSE TO REQUEST NO. 2(a):

Debtors object to this request because it is vague, ambiguous, overbroad, and unreasonably burdensome. For example, the request as written would require Grace to create a list of over 18,000 sub-accounts and sub-balances. Debtors further state that the Requesting

Parties have no need for this information, for the reasons set forth in Debtors' objections to Request No. 1, above.

**RESPONSE TO REQUEST NO. 2(b):**

Debtors incorporate their objections and response to Request Nos. 1 and 2(a), above. The request as written would require Grace to create a list of "any assumptions underlying" each of thousands of sub-accounts.

**RESPONSE TO REQUEST NO. 2(c):**

Debtors incorporate herein their objection to Request No. 1, above. Debtors refer the Requesting Parties to the Condensed Consolidated Statements of Cash Flow as Reported and Projected in Exhibit 12 for information on the projected settlement (if any) of the balance sheet items.

**RESPONSE TO REQUEST NO. 2(d):**

Debtors incorporate herein their objection to Request No. 1, above. Debtors further state that information responsive to request (i) has been provided to the Committee's financial advisor and that additional information responsive to requests (ii) and (iii) has been made available to the Requesting Parties in the Virtual Data Room.

## II.    DEBTORS' OBJECTION TO THE COMMITTEE'S AND THE LENDERS' BELATED DESIGNATION OF MR. FREZZA AS AN EXPERT ON SOLVENCY.

Almost a year ago, the Committee and the Lenders proffered their evidentiary record, including the expert testimony, from which they argued that the Court could determine Debtors' solvency. Since then, the Committee and the Lenders have never sought to supplement their evidentiary record on solvency and, in fact, represented that they had no intention to do so. But then, on July 20, 2009, as part of their Joint Pre-Trial Submission, the Committee and the Lenders suddenly reversed course and disclosed that they intended to call Mr. Frezza to testify as an expert witness with respect to the Debtors' solvency. The Committee's and the Lenders' belated disclosure of a new expert on solvency is intolerable and should be rejected. Having

inexcusably delayed in designating Mr. Frezza as part of their proof of solvency, the Committee
and the Lenders should now be precluded from calling him as an expert on solvency at the
confirmation hearing.

The history of this issue traces back to the hearing on June 23, 2008, when the Court
made it crystal clear that the Committee and the Lenders' claim for post-petition interest,
whether at the default rate or any other rate, required a showing of Debtors' solvency:

> I think the issue is pretty clear.  The unsecured creditors, unless the
> debtor is solvent, aren't entitled to any interest.  It doesn't matter --
> default interest, not default interest.  It's no interest.  So, unless
> we're going into a solvency hearing, then I think the issue that you
> face is it's not any interest, folks, it's no interest.  So, there's a
> settlement out there that indicates at the moment that the debtor is
> willing not just to pay you interest, but more interest than the
> contract rate, but not up to the default rate.  So, I'm not sure what
> on earth it is that we're going to be going into a hearing, an
> evidentiary hearing, about unless it's solvency.

See Docket No. 19210 (Transcript of Proceedings Before The Honorable Judith K. Fitzgerald
United States Bankruptcy Court Judge) 75:15-76:1 (June 23, 2008).

In response to the Court's guidance, on August 14, 2008, the Committee and the Lenders
submitted the Declaration of their expert, Edwin N. Ordway.  (See Docket No. 19321
(Declaration of Edwin N. Ordway, Jr. in Support of the Response of the Official Committee of
Unsecured Creditors to Debtors' Objections to the Unsecured Claims Asserted Under the
Debtors' Credit Agreements Dated as of May 14, 1998 and May 5, 1999)).  Mr. Ordway sought
to refute Debtors' contention that there has not been, and cannot be, a binding determination of
Debtors' solvency because there has not been, and cannot be, a binding determination of
Debtors' asbestos liabilities.  In his Declaration, Mr. Ordway analyzed, among other things,
Debtors' market capitalization and the recovery that Debtors' equity holders stood to receive
under the plan of reorganization.  Id. at ¶¶ 7-9.  The Committee and the Lenders produced Mr.

6

Ordway for deposition on August 29, 2008. Based on Mr. Ordway's expert analysis, both the Creditors and Lenders argued that there was a sufficient evidentiary basis on which the Court could conclude that Debtors were solvent. (See, e.g., Docket No. 19478 (Pre-Trial Memorandum of the Bank Lender Group in Opposition to the Debtors' Objection to Claims Asserted under the Debtors' Credit Agreements Dated as of May 14, 1998 and May 5, 1999) pp. 17-23 (Sept. 5, 2008)).

Between the submission of Mr. Ordway's Declaration in August 2008 and June 2009, neither the Committee nor the Lenders ever sought to add any evidence, expert or otherwise, to the record on solvency. And that certainly was not for lack of opportunity. Indeed, on January 29, 2009, the Court entered the Second Amended Case Management Order (Docket No. 20622), which set a deadline of March 16, 2009 for expert reports (except for those regarding feasibility), and a deadline of April 13, 2009 for supplemental expert reports. But neither the Committee nor the Lenders produced any additional expert reports prior to either of those deadlines. On May 5, 2009, the Court entered the Third Amended Case Management Order (Docket No. 21544), which required the completion of all expert and non-expert depositions (except regarding feasibility) by June 15, 2009. Again, neither the Committee nor the Lenders ever submitted any additional expert reports by that deadline.

On June 2, 2009, the Committee filed a Motion To Modify Third Amended Case Management Order Related To The First Amended Joint Plan Of Reorganization. (See Docket No. 21959 (Motion of the Official Committee of Unsecured Creditors to Modify Third Amended Case Management Order Related to the First Amended Joint Plan of Reorganization) (June 2, 2009)). In that motion, the Committee sought, among other things, to defer the issue of solvency until after the appellate court had ruled on the Committee's appeal of the Court's May 19, 2009

Memorandum Opinion. Id. at ¶ 4 n.5 ("because the impairment issues, now on appeal, must be determined before the § 1129 issues become ripe, the solvency issued may be addressed at a later time"). On June 18, 2009, the Court denied the Committee's motion, including its request to defer the issue of solvency. (See Docket No. 22371 (Transcript of Proceedings Before the Honorable Judith K. Fitzgerald United States Bankruptcy Court Judge) (June 18, 2009)). Yet, even in response to that ruling, the Committee and the Lenders still did not seek to supplement the evidentiary record on solvency.

At the hearing before this Court on June 22, 2009, the Court specifically inquired as to the Committee's intentions to present evidence regarding solvency at the confirmation hearings. Lewis Kruger, counsel for the Committee, indicated that the Committee would present documentary evidence regarding the Debtors' solvency, particularly the plan of reorganization and records from the 2008 asbestos personal injury estimation proceedings. Mr. Kruger, however, expressly stated that "we don't intend to call any additional witnesses with respect to solvency unless they are needed in the result of a response to information put on the record by others." (See Docket No. 22294 (Transcript of Proceedings Before The Honorable Judith K. Fitzgerald United States Bankruptcy Court Judge) 130:22-131:1 (June 22, 2009) ("6/22/09 Hrg. Tr.")) (emphasis added).

Counsel for the Debtors wanted formal, written confirmation of the Committee's representation that there were no "additional witnesses with respect to solvency." Accordingly, Counsel for Debtors requested that the Court "specify a deadline by which [the Committee will] formally confirm that there is nothing else" they intend to present on solvency, and another date by which Debtors could respond. Id. at 133:5-18 (emphasis added). Counsel for both the Committee and Debtors then agreed that the Committee would have two weeks to provide a list

8

of any evidence of solvency that they wanted to introduce at the confirmation hearings, and Debtors would have two weeks to respond. Id. at 133:20-25. The Court agreed to this schedule. Id. at 134:4-11.

On July 9, 2009, the Court issued an Order Regarding Further Matters Related to the Phase I Confirmation Hearing With Respect to Class 9 Impairment (Docket No. 22374), which memorialized the parties' agreement. In that Order, the Court provided the following deadlines regarding evidence of solvency:

> 5.    The General Unsecured Creditors' Committee and the Lenders shall have until July 10, 2009 to file a statement regarding any further information that they believe is necessary to present at confirmation regarding their proof of the Debtors' solvency beyond the trial record offered by the Debtors in the asbestos personal injury estimation proceedings.
>
> 6.    The Plan Proponents shall have until July 24, 2009 to respond to the Committee and Lenders' request for information concerning the solvency issues to be raised at the Phase II confirmation hearings.

(Docket. No. 22374) (Order Regarding Further Matters Related to the Phase I Confirmation Hearing With Respect to Class 9 Impairment at ¶¶ 5-6).

As the Court's Order made clear, on July 10, 2009, the Committee and Lenders had the opportunity, once again, to add any further information that they believed was necessary to present at confirmation regarding their proof of Debtors' solvency. But they did not do so. Instead, with their filing on July 10, 2009, the Committee and the Lenders confirmed, yet again, that they had nothing new to add to the evidentiary record on solvency. Specifically, in their July 10, 2009 Joint Information Request, the Committee and the Lenders stated that their "proof of solvency will be comprised of the financial information contained in the Plan and Disclosure Statement . . . as it may be amended or supplemented in connection with the 'Phase II' confirmation hearing. In addition, the Committee and Bank Lender Group will rely upon and adopt *in toto* the Plan Proponents' completed direct case from the asbestos personal injury

9

estimation proceedings held on various days between January 14, 2008 and April 1, 2008." Joint Information Request at 1-2. In other words, nothing had changed from the way it had always been.

But on July 20, 2009, for some reason, the world changed. On that date, the Committee and Lenders filed a Joint Pre-Trial Submission for Phase II of the Confirmation Hearing[2] ("7/20/09 Pre-Trial Submission") (Docket No. 22513) in which they listed Robert Frezza as an expert witness "with respect to the Debtors' solvency based upon the financial information provided in the Plan and assuming an estimate of the Debtors' liability for asbestos personality claims in the amount advocated by the Debtors during the estimation hearings held on various days between January 14, 2008 and April 1, 2008" and, "if necessary," with respect to other issues as well. 7/20/09 Pre-Trial Submission at II(2).

The Committee's and the Lenders' belated disclosure of Mr. Frezza as an expert on solvency changes everything. Apparently, the Committee and the Lenders have jettisoned their old expert, Mr. Ordway, and plan to use a new expert, Mr. Frezza. Their new expert has never provided an expert report and has never sat for deposition, so there is no way of knowing what he would say on the issue of solvency. But as the description of Mr. Frezza's anticipated testimony makes clear, there are no longer any limits to the scope for the Committee's and the Lenders' solvency case. Instead, the Committee and the Lenders effectively are reserving the right to have Mr. Frezza testify as an expert on any and all issues relating to solvency, including, if need be, an entirely new expert analysis.

This belated attempt to designate Mr. Frezza as an all-purpose expert on solvency is intolerable and should be rejected. The Committee and the Lenders long ago produced Mr.

---

[2]    The Committee and Lenders stated that the filing was pursuant to the Court's July 7, 2009 Order Regarding Phase II Pre-Trial Proceedings.

Ordway's Declaration, produced him for deposition, and committed to his expert analysis on solvency related issues. Since then, neither the Committee nor the Lenders has ever sought to add to the evidentiary record on solvency. Instead, they repeatedly have confirmed, most recently on July 10, 2009, that there was "nothing else" in the way of evidence that they intended to present on solvency. Now is not the time to open the door to a whole new round of expert analysis on the issue of solvency. Accordingly, the Committee and the Lenders should be barred from offering Mr. Frezza as an expert on solvency at the confirmation hearings.

## III.    DEBTORS' COUNTER-STATEMENT OF PROOF CONCERNING SOLVENCY

In response to the Committee's and the Lenders' statement regarding their proposed proof of solvency, Debtors hereby submit their counter-statement concerning their proof of solvency at the confirmation hearings. To summarize, Debtors will demonstrate that in 2005, when the solvency of the Debtors was disputed and unresolved, the Debtors' proposed Chapter 11 plan called for substantial value to remain with equity. At that time, the Committee, at the behest of certain Lenders, initially demanded postpetition default interest as a condition for supporting the Debtors' plan. But after extensive arms-length negotiations with the Debtors, the Committee and its counsel agreed on behalf of their constituency to a compromise which provided postpetition interest at an agreed rate of in exchange for their support of the Debtors' plan. The agreement was renegotiated and enhanced a year later. In the intervening years, Debtors regularly have used the agreed rate in their financial statements, all of which have been reviewed with the Committee.

Debtors will also show that, as of today, nothing has changed. There has not been, and cannot be, a final and binding determination of solvency because there has not been, and cannot be, a final and binding determination of Debtors' asbestos liabilities, most notably the Asbestos

11

PI Claims. The estimation proceeding, which was designed specifically to estimate the Asbestos PI Claims, was not completed. Without a binding determination of the Asbestos PI Claims, there cannot be a final and binding determination that Debtors are solvent. And absent solvency, the Committee and the Lenders are not entitled to any postpetition whatsoever, let alone postpetition interest at the default rate.

The evidence will also show that the Committees' and the Lenders' efforts to base a solvency determination on other proxies, such as the recovery provided to Debtors' equity holders under the Plan or Debtors' market capitalization, miss the mark.

Additionally, the evidence will show that, because the extent of Debtors' asbestos liabilities has been, and still is, in dispute, the Plan's provision to pay the Lenders postpetition interest at a rate that is higher than both the federal judgment rate and the contract rate is entirely fair and equitable.

Debtors' proof concerning the solvency will consist of the following:

## Witnesses

- Mr. Richard Finke. Mr. Finke is the Assistant General Counsel for Litigation for W. R. Grace & Co. Mr. Finke may testify about the history of W. R. Grace's property damage liability relevant to a solvency analysis.

- Dr. B. Thomas Florence. Dr. Florence is the President of Analysis Research Planning Corporation ("ARPC"). Dr. Florence may testify, as he has testified previously, that his asbestos personal injury liability estimation forecasts submitted on September 3, 2007 were based solely on a specified set of assumptions.

- Dr. Denise Neumann Martin. Dr. Martin is a Senior Vice President of National Economic Research Associates, Inc. ("NERA"). Dr. Martin will testify to the range of uncertainty associated with Dr. Florence's forecasts.

- Dr. Mark Peterson. Dr. Peterson is a lawyer and social scientist who has been recognized by numerous federal district courts around the country as an expert in the estimation and valuation of asbestos personal injury claims, the projection of future asbestos personal injury claims, and the aggregate value of such claims estimated to be asserted against either an asbestos defendant in the tort system or an asbestos bankruptcy trust. Dr.

12

Peterson will testify regarding Grace's liability for asbestos personal injury claims had it continued in the tort system.

- <u>Mr. Jeff Posner.</u>  Mr. Posner is an outside consultant to Grace who since 1990 has been in charge of overseeing Grace's insurance program, which included, among other things, obtaining insurance proceeds to reimburse Grace for payments of asbestos personal injury and property damage claims.  Mr. Posner may testify about insurance-related facts relevant to a solvency analysis.

- <u>Mr. Mark A. Shelnitz.</u>  Mr. Shelnitz is Vice President, General Counsel and Secretary of W. R. Grace & Co.   Mr. Shelnitz may offer testimony related to the history of negotiations, and the consequences of, the agreement reached with the Committee regarding the range of interest to be charged to Grace as well as the subsequent decision by the general unsecured creditors not to honor this agreement.

- <u>Pamela Zilly.</u>  Ms. Zilly is a Senior Managing Director in the Restructuring and Reorganization Advisory Group of The Blackstone Group, L.P.  Ms. Zilly will testify to the matters set forth in her Affidavit dated August 14, 2008, and to the consistency between the Plan's provisions for postpetition interest and the disputed scope of Debtors' asbestos liabilities.

## Existing Record

- Debtors' June 13, 2008 Objection to the Unsecured Claims Asserted under the May 14, 1998 and May 5. 1999 Credit Agreements

  Ex. A:  Proof of Claim for 1998 Credit Agreement

  Ex. B:  Proof of Claim for 1999 Credit Agreement

  Ex. C:  Proposed Asbestos Settlement

  Ex. D:  Bench Ruling for *In re Adelphia Communications*

  Ex. E:  Bench Ruling from *In re Loral Space & Communications Ltd.*

- Debtors' September 5, 2008 Trial Brief in Support of Objection to the Unsecured Claims

  Ex. A: Letter dated Nov. 11, 2004, from D.K. Acquisition Partners L.P. to Lewis Kruger urging the Creditors' Committee to insist that Grace commit to pay the contract default rate.

  Ex. B:  Letter dated Nov. 12, 2004, from D.E. Shaw Laminar Portfolios L.L.C. to Lewis Kruger urging the Creditors' Committee to compromise by accepting "postpetition interest in excess of floating-rate LIBOR (albeit less than fixed-rate LIBOR)."

Ex. C: Email dated Nov. 9, 2004, from Mark Shelnitz to David Siegel stating that the "GUCs position after their meeting today is that they will not sign on to the Plan unless they get default interest compounded quarterly."

Ex. D: Email dated Nov. 8, 2004, from Robert Tarola to Paul Norris and various individuals at Blackstone stating: "I spoke with Tom [Maher] this morning. He stated that he is willing to compromise -- BUT the committee reps only hold a small tranch of the bank debt and the non-committee holders are posturing for a full default rate."

Ex. E: Email dated April 4, 2008, from Arlene Krieger to Mark Shelnitz giving the Creditors' Committee's "initial thoughts" on the treatment of post-petition interest in the Proposed Asbestos Settlement.

Ex. F: Excerpts from the Aug. 29, 2008 Deposition of Edwin N. Ordway

- Debtors' (Corrected) September 25, 2008 Motion to Strike the Bank Lender Groups' Surreply

- July 17, 2009 Plan Proponents' Supplemental Brief in Support of the Plan's Designation of the Lender Group as Not Impaired

## Affidavits/Declarations

- August 14, 2008 Declaration of Mark A. Shelnitz in Support of Debtors' Objection to the Unsecured Claims under Debtors' Credit Agreements

- August 14, 2008 Declaration of Robert Tarola in Support of Debtors' Objection to the Unsecured Claims under Debtors' Credit Agreements

- August 14, 2008 Affidavit of Pamela D. Zillly in Support of Debtors' Objection to the Unsecured Claims under Debtors' Credit Agreements

  o Ex. A: Bar Graph showing speculative nature of Grace's stock price establishing its poor indicator of Grace's value

- June 26, 2009 Declaration of Mark A. Shelnitz (revised)

## Deposition

- August 29, 2008 Deposition of Edwin N. Ordway

## Transcripts

- W. R. Grace June 23, 2008 Hearing Transcript

- W. R. Grace September 29, 2008 Hearing Transcript

- W. R. Grace June 22, 2009 Hearing Transcript

**Opinions**

- May 19, 2009 Opinion Denying Default Interest as a Matter of Claims Allowance

Dated: July 24, 2009
Wilmington, Delaware

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Theodore L. Freedman
Eric F. Leon
Justin S. Brooks
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900


and

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
70 W. Madison Street
Suite 2100
Chicago, IL 60602
Telephone: (312) 641-2162

and

*James E. O'Neill*

PACHULSKI, STANG, ZIEHL & JONES LLP
James E. O'Neill (Bar No. 4042)
Timothy Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

*Counsel for the Debtors and Debtors in Possession*

15