**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>Jointly Administered<br><br>Related Doc. Nos.: 22555 & 22560<br>Hearing Date: August 24, 2009 at 10:30 a.m.<br>Objection Date: August 7, 2009 at 4:00 p.m. |

**OPPOSITION TO LIBBY CLAIMANTS' MOTIONS TO STRIKE, OR
ALTERNATIVELY TO LIMIT AND ALLOW FOR REBUTTAL OF,
THE EXPERT TESTIMONY OF GARY FRIEDMAN, M.D. AND
TO STRIKE, OR ALTERNATIVELY TO LIMIT, THE EXPERT
TESTIMONY OF GAIL STOCKMAN, M.D.**

The Official Committee of Asbestos Claimants (the "Committee"), by and through its undersigned counsel, hereby submits this Opposition to the Libby Claimants' Motion to Strike, or Alternatively to Limit and Allow for Rebuttal of, the Expert Testimony of Gary Friedman, M.D. ("Libby Friedman Motion") and the Libby Claimants' Motion to Strike, or Alternatively to Limit, the Expert Testimony of Gail Stockman, M.D. ("Libby Stockman Motion").

**INTRODUCTION**

In a patent attempt to rehabilitate their own expert witness, Dr. Alan Whitehouse, the Libby Claimants have filed motions to strike, or alternatively to limit the testimony of, the Committee's rebuttal expert witnesses, Gary Friedman, M.D. and Gail Stockman, M.D., on the basis that they have failed to produce the medical records of all patients with asbestos disease that they have treated throughout their entire careers. Libby

claimants argue that this extraordinary result is mandated in order to treat them "consistently" with the Court's previous rulings regarding Dr. Whitehouse.

Despite this effort to force Drs. Friedman and Stockman into the same category as Dr. Whitehouse, the difference between these experts is clear. Dr. Whitehouse failed to produce all of the records he relied upon to formulate the opinions set forth in his expert report, while both Dr. Friedman and Dr. Stockman produced the materials they relied upon in reaching their conclusions and opinions.

## I. THE COURT HAS PROPERLY SANCTIONED THE LIBBY CLAIMANTS FOR THE FAILURE TO PRODUCE MATERIALS RELIED ON BY DR. WHITEHOUSE

On May 27, 2009, this Court entered an Order confirming a ruling from the bench, stating in relevant part:

> It is FURTHER ORDERED, that medical records ("the records") for any individual in the population of 1800 patients whose medical records have not yet been produced to the Plan Proponents or other requesting parties must be produced by May 21, 2009, regardless of whether or not such individual is a claimant in these bankruptcy proceedings. . . .Failure to produce a complete set of these medical records will bar Dr. Whitehouse from offering any expert opinion that was formed based upon reliance, in whole or in part, on the records.

Modified Order Granting in part Motion of Arrowood Indemnity Company, f/k/a Royal Indemnity Company, to Strike Whitehouse Expert Report or, Alternatively, Compel the Production of Documents and Databases on Which He Relies and for Entry of a Confidentiality Order, May 27, 2009 at 2 [D.I. 21874].

It is clear from Dr. Whitehouse's various reports and his testimony that he relied on records of 1800 patients seen by him and the CARD Clinic as the basis of his opinions.

Throughout his December 29, 2008 report, for example, he repeatedly cites a Mortality Study he conducted to support of his opinions. In that report, he states:

> A mortality study was done on patients of the Center for Asbestos Related Disease (CARD) Clinic in Libby. ***The cohort is all patients seen at CARD or by me in Spokane****, **with an asbestos-related disease diagnosis and chest films**.

Expert Report of Dr. Alan C. Whitehouse of December 29, 2008 at ¶ 31 ("Whitehouse Report") (emphasis added). In other locations in the report, he further identifies this cohort as consisting of the 1800 patients. *Id.* at ¶¶ 2, 35. He confirmed this at his deposition:

> Q.   So, there are 1800 people whose patient care over the years is relevant to your opinions in this case?
>
> A.   Yes.

Deposition of Alan C. Whitehouse, M.D., March 19, 2009 at 68:19-21.

> Q.   Okay. Just want to make sure we are clear on that. So, the diagnostic history of these 1800 people, the 2004 study, the CARD Mortality Analysis, those are the fundamental bases of your opinions, correct?
>
> A.   Yes. I guess.

*Id.* at 69:17-23.

Dr. Whitehouse also uses data from the 1800 patient cohort as the basis of numerous other conclusions and opinions in his report. For example, with respect to the Libby cohort, he states:

- "An overwhelming majority in the Libby cohort have not only pleural plaques, but also diffuse pleural thickening, a more serious form of pleural disease."

- "In the Libby cohort, interstitial disease generally becomes radiographically visible rather late in the process, and frequently is only a minor factor.

- "Disease at an early age is common in the Libby cohort. Per CARD Clinic records, 65 patients are in their 30s and 189 patients are in their 40s. This statement is based upon a total of 1,957 patients on 9/13/06."

Whitehouse Report at ¶¶ 27, 34 and 49. The above clearly contradicts the Libby Claimants' argument in footnote 4 of both motions that Dr. Whitehouse only made one reference to the 1800 patients in the Libby cohort.

The 1800 patient records ordered produced by the Court were therefore unquestionably relied upon by Dr. Whitehouse and the Court properly entered an order requiring their production.[1]

## II. THE COURT'S RULING ON DR. WHITEHOUSE DOES NOT REQUIRE DRS. FRIEDMAN AND STOCKMAN TO PRODUCE THE FILES OF EVERY PATIENT WITH ASBESTOS DISEASE THAT THEY HAVE EVER SEEN

The Libby Claimants argue that the Court should require Drs. Friedman and Stockman to produce the medical records of the thousands of patients they have treated or examined for asbestos-related disease over the course of their careers. In identical language in both the motion relating to Dr. Friedman and the motion relating to Dr. Stockman, Libby claimants demand this production because "Just as Dr. Whitehouse recognized his treatment of 1,800 Libby asbestos patients as part of the information on which he based his clinical opinions regarding Libby asbestos disease, this testimony reflects that [Dr. Friedman's/Dr. Stockman's] clinical experience with asbestos disease

---

[1] The Libby Claimants also assert that because Dr. Whitehouse is a treating physician, he is exempted from expert disclosure obligations. This argument is incorrect. Dr. Whitehouse has been paid $350 per hour to produce his reports (Whitehouse Report at ¶ 81) and is therefore required to make disclosures as a "retained or specially employed" expert pursuant to Fed. R. Civ. P. 26(a)(2)(B). In addition to being specially retained, his testimony exceeds that permitted a treating physician without disclosure. *See, e.g.*, Wreath v. U.S., 161 F.R.D. 448, 450 (D. Kan. 1995) ("when the physician's proposed opinion testimony extends beyond the facts made known to him during the course of the care and treatment of the patient and the witness is specially retained to develop specific opinion testimony, he becomes subject to the provisions of Fed.R.Civ.P. 26(a)(2)(B)").

should be considered pursuant to the Modified Order as part of the data or other information considered by [Dr. Friedman/Dr. Stockman] in forming [his/her] opinions regarding asbestos disease." Libby Friedman Motion at 5-6; Libby Stockman Motion at 6.

The Libby Claimants' simplistic argument ignores the difference between information specifically relied upon in formulating a particular expert opinion and information an expert physician acquires in developing his or her expertise. Dr. Whitehouse has specifically stated that his opinions and conclusions in this case are based on his examination and medical records of 1800 patients in the Libby cohort. Dr. Friedman did not "rely" in this same sense on the examinations of the one hundred thousand patients he has seen over a thirty-year career in arriving at his conclusions and opinions regarding Dr. Whitehouse's report and opinions. Dr. Friedman further said so his deposition:

> Again, my predominant basis for my opinions on Dr. Whitehouse or what Dr. Whitehouse has done as compared to what I believe the weight of the medical literature and the standard of practice set out by American Thoracic Society guidelines is what I've predominantly formulated the opinions in my report on. I cannot tell you that I in any way discount 35 years of experience, but I'm not relying on it and I'm not -- I don't plan to cite my personal experiences today unless I'm asked about them.

Deposition of Gary K. Friedman, M.D., June 22, 2009 at19:12-22. Similarly, Dr. Stockman acknowledged the obvious –that her experience with patients informs her opinions.

> Q. Do you think that having done so many examinations and having treated asbestos patients is important to the evaluation of your thinking about asbestos disease?

{D0158938.1 }5

> MR. WEHNER: Object to form
>
> THE WITNESS: Certainly the more experience you have in dealing with patients and looking at X-rays and the more time you've devoted to reviewing medical literature –All these things together combine to help you form your opinions.

Deposition of Gail Stockman, June 17, 2009 at 26:14-24.  To argue that all records associated with an expert's general professional background are somehow "reliance materials" leads to obviously absurd results.  No medical expert has to turn over the files of every patient he or she has ever seen or produce copies of the medical school textbooks he or she used.   An expert's experience with patients informs his or her expertise in a manner similar to the way going to medical school informs that expertise.

Unsurprisingly, the Libby Claimants cite no authority whatsoever in their motion for the proposition that an expert must disclose all documents relating to the expert's entire professional history, or that a physician offering expert testimony must open for inspection the medical records of all patients in his or her practice.   Rather, the only cases cited in the Libby Claimants' motion are routine examples of failure to disclose specific information relied on by an expert.   For example, in <u>Smith v. Botsford Gen Hosp.</u>, 419 F.3d 513, 516-517 (6th Cir. 2005), the Sixth Circuit affirmed the striking of an expert report where a physician opining about the cause of death of a particular patient did not reveal his knowledge that the patient was an alcoholic.  Similarly, in <u>Olson v. Montana Rail Link, Inc.</u>, 227 F.R.D. 550, 552 (D. Mont. 2005), the court sanctioned a party who failed to turn over specific locomotive vibration testing data expressly relied on by an expert in accordance with a pretrial schedule.   Because these cases turn on the non-disclosure of the specific material relied on by an expert, they are inapposite here.

### III. ALL REQUIRED RELIANCE MATERIAL USED BY DRS. FRIEDMAN AND STOCKMAN TO SUPPORT THEIR OPINIONS WAS AVAILABLE TO THE LIBBY CLAIMANTS

The materials Dr. Friedman relied upon in support of his conclusions are clearly set forth in his report and consist of the following: All of the patient records and related material relied upon by Dr. Friedman in support of his opinions were materials furnished by the Libby Claimants' counsel in discovery.  Dr. Friedman also reviewed the expert reports of the two Libby medical witnesses, Drs. Whitehouse and Frank, as well as the materials cited by them in their reports.  In addition, he reviewed deposition and trial testimony of Dr. Whitehouse and the medical articles written by Dr. Whitehouse.  He also reviewed publicly available medical literature.  All these materials were disclosed in his report and are available to the Libby Claimants.  *See* Expert Report of Gary K. Friedman, M.D. of April 6, 2009, attached as Exhibit 1.

Similarly, with respect to Dr. Stockman, the materials she expressly relied upon were available.  The bulk of her report is a critique of Dr. Whitehouse's report based on medical literature, available to both parties.  She also discusses three specific cases.  The Libby Claimants were provided medical records for these three cases twice, first on April 16, 2009 and again at Dr. Stockman's deposition on June 17, 2009.   Libby Claimants claimed not to have received them and made no use of them at the deposition.   The fact that in describing her "Qualifications", Dr. Stockman mentions her clinical experience in examining and treating asbestos-related disease in the Libby area does not mean that she "relied" on all materials related to that experience for the purpose of making her report.  Nor does her deposition testimony that her clinical experience with such patients was "important" prove the contrary.

When specific materials become the basis of an opinion, as when Dr. Whitehouse expressly relied on records of a cohort of 1800 patients as the basis of the opinions in his report, those records become reliance materials and must be produced. Similarly, Dr. Stockman relied on specific medical literature and specific records, and those were made available. An expert's general experience in his or her professional field is a different matter, however. While it may be important in formulating opinions; the expert's entire professional history need not be produced in expert discovery as reliance materials.

## CONCLUSION

For the foregoing reasons, the Libby Claimants' Motion to Strike, or Alternatively to Limit and Allow for Rebuttal of, the Expert Testimony of Gary Friedman, M.D. and the Libby Claimants' Motion to Strike, or Alternatively to Limit, the Expert Testimony of Gail Stockman, M.D. should be denied.

Respectfully, submitted,

Dated: August 7, 2009

**CAMPBELL & LEVINE, LLC**

*/s/ Marla Rosoff Eskin*
Mark T. Hurford (#3299)
Marla Rosoff Eskin (#2989)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900
Facsimile: (302) 426-9947
mhurford@camlev.com

-and-

**CAPLIN & DRYSDALE, CHARTERED**
Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

Peter Van N. Lockwood
Nathan D. Finch
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

*Counsel for the Official Committee
of Asbestos Personal Injury Claimants*