IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> W.R. GRACE & CO., et al., <br><br><br><br> Debtors. | ) Chapter 11 <br> ) <br> ) Case No. 01-01139 (JKF) <br> ) (Jointly Administered) <br> ) <br> ) Objection Deadline: August 7, 2009 <br> ) Hearing Date: August 24, 2009 at <br> )                    10:30 a.m. <br> ) <br> ) Relates to Docket No. 22543 |

**JOINT OPPOSITION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS AND BANK LENDER GROUP TO JOINT MOTION OF THE OFFICIAL
COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS AND THE
ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE FOR ORDER LIMITING
USE OF COURT'S FINDINGS OR CONCLUSIONS WITH RESPECT TO SOLVENCY**

The Official Committee of Unsecured Creditors of W.R. Grace & Co., et al. (the "Creditors' Committee"), and certain lenders under the Prepetition Bank Credit Facilities[1] (the "Bank Lender Group"[2]), by their respective undersigned counsel, submit this Opposition to the Joint Motion of the Official Committee of Asbestos Personal Injury Claimants (the "ACC") and the Asbestos PI Future Claimants' Representative ("FCR") (the ACC and FCR will be referred to

---

[1] The Prepetition Bank Credit Facilities include (i) that certain Credit Agreement, dated May 14, 1998, among W.R. Grace & Co. (the "Company"), W.R. Grace & Co.-Conn, The Chase Manhattan Bank, as Administrative Agent, Chase Securities Inc., as arranger, and certain Banks party thereto (the "1998 Credit Agreement"), and (ii) that certain 354-Day Credit Agreement, dated May 5, 1999, among the Company, W.R. Grace & Co.-Conn, Bank of America National Trust Savings Assoc., as documentation agent, The Chase Manhattan Bank, as administrative agent, Chase Securities Inc., as book manager, and certain Banks party thereto (as amended, the "1999 Credit Agreement", together with the 1998 Credit Agreement, the "Credit Agreements"). The Credit Agreements are attached as Exhibit A and B to the Affidavit of Charles O. Freedgood of JPMorgan Chase Bank, N.A., filed June 26, 2009 and June 30, 2009 [Docket Nos. 22279, 22306].

[2] The Bank Lender Group includes: (i) Anchorage Advisors, LLC; (ii) Avenue Capital Group; (iii) Babson Capital Management LLC; (iv) Bass Companies; (v) Caspian Capital Advisors, LLC; (vi) Catalyst Investment Management Co., LLC; (vii) Cetus Capital, LLC; (viii) DE Shaw Laminar Portfolios, LLC; (ix) Farallon Capital Management, L.L.C.; (x) Halcyon Asset Management LLC; (xi) Intermarket Corp.; (xii) JP Morgan Chase, N.A. Credit Trading Group; (xiii) Loeb Partners Corporation; (xiv) MSD Capital L.P.; (xv) Normandy Hill Capital, L.P.; (xvi) Onex Debit Opportunity Fund Ltd.; (xvii) P. Schoenfeld Asset Management, LLC; (xviii) Restoration Capital Management, LLC; and (xix) Royal Bank of Scotland, PLC. The Bank Lender Group, together with all holders of Claims under the Credit Agreements, including the previous holders of such Claims, are collectively referred to as the "Bank Lenders."

collectively as "Movants") for Order Limiting Use of Court's Findings or Conclusions with respect to Solvency, dated July 20, 2009 (Docket No. 22543; the "Motion"), and respectfully state as follows:

1. Movants ask for an order providing that any "findings or conclusions" by the Court at the upcoming confirmation hearing regarding Grace's solvency should be limited solely to the issue of whether the Bank Lenders are entitled to receive post-petition interest at the contractual default rate, and "may not be used by any other party for any other purpose . . . ." See Motion at 2. Because it would be inappropriate to restrict the purpose for which such evidence and findings may be applied by the Court before any evidence is presented at the confirmation hearings, the Creditors' Committee and Bank Lender Group oppose this Motion.

2. As previously explained in the joint pre-trial memorandum of the Creditors' Committee and the Bank Lender Group,[3] Grace's solvency is already established by (i) the Plan itself, which allows equity holders to retain all of their interests (see Joint Pre-Trial Memo at 43-44), and (ii) under Third Circuit law, by Grace's market capitalization of over $1 billion as of the date of this opposition. See In re VFB LLC v. Campbell Soup Co., 482 F.3d 624, 633 (3d Cir. 2007) (market's valuation of company is strong evidence of its solvency); Joint Pre-Trial Memo at 41-43. Yet, to the extent that the Creditors' Committee and the Bank Lender Group must present other evidence that the Debtors are solvent, we will demonstrate at the confirmation hearing that Grace is solvent based upon, among other things, that the value of Grace's assets exceed Grace's liabilities (as set forth in the Plan and Disclosure Statement), when relying upon Grace's own estimate of its asbestos personal injury liabilities (at a net present value of $468

---

[3] See Joint Pre-Trial Memorandum of the Official Committee of Unsecured Creditors and Bank Lender Group In Opposition To Confirmation Of First Amended Joint Plan Of Reorganization Under Chapter 11 of the Bankruptcy Code, dated July 13, 2009 (Docket No. 22441) (the "Joint Pre-Trial Memo").

2

million, Grace's expert's median estimate), previously presented by the Debtors on their direct case during the estimation hearing held in early 2008.

3. To the extent that the Plan Proponents are essentially compelling the Creditors' Committee and the Bank Lender Group to litigate the value of the asbestos personal injury liability in order to prove Grace's solvency, then the Plan Proponents must also accept the risks associated with that choice, *to wit*, that such evidence of Grace's solvency may be used by any party for any purpose at the confirmation hearing. Indeed, the issue to be determined at trial is confirmation of the Plan as a whole, not merely the request for payment of post-petition interest. Even if, as Movants assert, the Bank Lenders' right to post-petition interest is a "contractual dispute" between Grace and the Bank Lenders, that does not mean that the underlying evidentiary findings and conclusions on the issue of Grace's solvency can be restricted to only the post-petition interest issue. Certainly, such a restriction would be inappropriate at this early juncture, prior to the commencement of the confirmation hearing and the presentation of any evidence to the Court.

4. Tellingly, Movants have failed to explain *why* they seek to limit the use of the future "findings or conclusions" by this Court with respect to solvency, and instead ask this Court to simply accept their conclusory argument as a *fait accompli*. The reason for this failure is obvious. There is a tension between Movants' desire on the one hand to retain $1 billion in "equity value" for the Debtors' shareholders (which they can only do if the Debtors are solvent), while at the very same confirmation hearing challenge the Creditors' Committee's and Bank Lender Group's claims that the Debtors are indeed solvent. The only way that the Plan Proponents can have it both ways is through an order of the Court holding that a finding issued during the same confirmation hearing means one thing in one part of the hearing, but then such

finding is disregarded for other parts of the same hearing; a legal juggling act with no basis in law.

5. Indeed, Movants fail to provide any legal basis for restricting the use of this Court's findings regarding solvency. Movants' reliance on D'Amico v. CBS Corp., 297 F.3d 287 (3d Cir. 2002), is completely misplaced. In D'Amico, certain employees of CBS Corporation sued their former employer under the Employee Retirement Income Security Act (ERISA), alleging that there had been a partial termination of the plan that entitled the employees to benefits. The district court granted summary judgment for CBS dismissing the employees' claims for failure to exhaust administrative remedies. In affirming that decision, the Third Circuit noted that the district court's order was not a ruling on the merits, and therefore did "not preclude later litigation on the merits of properly exhausted claims." Id. at 294. Thus, in holding that "we do have authority to make clear the limited scope of the District Court's decision," the Third Circuit simply held that it had the authority to clarify the basis for the district court's ruling. Id. D'Amico in no way supports Movants' assertion that the findings and conclusions regarding Grace's solvency should be limited to the Bank Lenders' entitlement to post-petition interest and not applied otherwise to confirmation of the Plan.

6. If Movants and Grace are concerned about the potential impact of any "findings or conclusions" by this Court with respect to solvency, there is an easy fix. The Plan Proponents should simply stipulate to Grace's solvency, solely with respect to the Plan objections raised by the Creditors' Committee and the Bank Lender Group. Such a stipulation would alleviate whatever concerns Movants and Grace have with respect to the potential use at the confirmation hearing of evidentiary findings and conclusions regarding solvency and the concomitant estimation of the asbestos personal injury claims, while preserving all arguments as to the

equities of default interest in these circumstances. But since the Plan Proponents seek to put the Creditors' Committee and the Bank Lender Group to the task of proving solvency, the Plan Proponents should not be protected from any adverse ramifications of the Plan Proponents' strategic decision.

7. In sum, it would be inappropriate to limit proof regarding Grace's solvency only to the issue of the Bank Lenders' right to post-petition interest, especially in advance of the presentation of any evidence. By forcing the Creditors' Committee and the Bank Lender Group to prove solvency by presenting evidence regarding the value of the asbestos personal injury claims, the Plan Proponents accepted the risk that the findings and conclusions concerning solvency could have implications to confirmation of the Plan beyond the issue of post-petition interest. No basis exists upon which other parties should be prevented from relying on such evidence at the confirmation hearing for any other legitimate purpose.

## **CONCLUSION**

8. For the reasons set forth above, it is respectfully submitted that this Court deny the Motion in its entirety.

Dated: Wilmington, Delaware  
August 7, 2009

Respectfully submitted,

**DUANE MORRIS LLP**

*/s/ Michael R. Lastowski*
Michael R. Lastowski (DE I.D. 3892)
Richard W. Riley (DE I.D. 4052)
1100 North Market Street, Suite 1200
Wilmington, Delaware 19801-1246
Tel: (302) 657-4942
Fax: (302) 657-4901

William S. Katchen, Esquire (Admitted in NJ Only)
**DUANE MORRIS LLP**
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: (973) 424-2000
Facsimile: (973) 424-2001

-and-

**STROOCK & STROOCK & LAVAN LLP**

Lewis Kruger
Kenneth Pasquale
(Members of the Firm)
180 Maiden Lane
New York, New York 10038-4982
Tel: (212) 806-5400
Fax: (212) 806-6006

*Counsel for the Official Committee of Unsecured Creditors*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Stephen J. Shimshak
Andrew N. Rosenberg
Margaret A. Phillips
Rebecca R. Zubaty
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

-and-

**LANDIS RATH & COBB LLP**

*/s/ James S. Green*
Richard Cobb (No. 3157)
James S. Green, Jr. (No. 4406)
919 Market Street, Suite 1800
Post Office Box 2087
Wilmington, Delaware 19899
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

*Counsel for The Lender Group*