UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Re: Docket No. 22556**
**Objection Deadline: August 7, 2009 at 4:00 p.m.**
**Hearing Date:  August 24, 2009 at 10:30 a.m.**

## DEBTORS' OBJECTION TO LIBBY CLAIMANTS' MOTION TO STRIKE, OR ALTERNATIVELY TO LIMIT, THE EXPERT TESTIMONY OF JOHN PARKER, M.D.

W.R. Grace & Co. and its affiliate companies (collectively, the "Debtors") respectfully request that the Court deny the Libby Claimants' motion to strike the expert testimony of John Parker, M.D.  Dr. Parker has satisfied Federal Rule of Civil Procedure 26 by disclosing his reliance materials in connection with his expert report.  The Libby Claimants assert in this motion that, in light of the Court's prior ruling limiting the testimony of Dr. Whitehouse, Dr. Parker's testimony should also be stricken or limited until he produces all of his patient records for all his past patients with asbestos disease as well as records generated during his work for the Agency for Toxic Substances and Disease Registry (ATSDR) in Libby.  However, the documents sought by the  Plan Proponents in connection with the Motion to Strike Dr. Whitehouse are documents that Dr. Whitehouse testified, under oath, that he reviewed and relied upon in forming his opinions in this case.  Unlike Dr. Whitehouse, Dr. Parker does not purport to rely on his patients' medical records in developing an epidemiological opinion, nor did he rely or review the ATSDR records in forming his opinions in this case.  Instead, Dr. Parker, when questioned in his deposition, merely responded to a question and estimated the number of patients with asbestos disease he had treated and diagnosed in his medical practice.  Dr. Parker

also identified his past experiences examining thousands of x-rays as part of the ATSDR studies,

which he reviewed in a blinded format at the request of the ATSDR, and prior to his retention as

an expert in this matter by W.R. Grace. The Libby Claimants' motion to strike Dr. Parker's

expert testimony is yet another blatant attempt to circumvent the Court's previous production

orders, by trying to gloss over the fact that the Libby Claimants ignored their obligations under

Rule 26 and under the Court's May 27th Order. Accordingly, the Libby Claimants' attempt to

compare Drs. Whitehouse and Parker fails, and their motion to strike should be denied.

## BACKGROUND

On May 27, 2009, this Court entered the Modified Order Granting in Part Motion of

Arrowood Indemnity Company, f/k/a Royal Indemnity Company to Strike Whitehouse Expert

Report or, Alternatively, Compel the Production of Documents and Databases on Which He

Relies and for Entry of a Confidentiality Order ("May 27th Order"). The Modified Order

required (1) production of Dr. Whitehouse's medical records "for any individual in the

population of 1800 patients whose medical records have not yet been produced." (*See* May 276

Order [Dkt. No. 21874].) The May 27th Order also provided that should the Libby Claimants

fail to produce a complete set of medical records, Dr. Whitehouse would be barred "from

offering any expert opinion that was formed based upon reliance, in whole or in part, on the

records." (*Id.*)

Following the May 27th Order, the Libby Claimants sent a letter to Counsel for the

Debtors, requesting "Libby patient records reviewed in ATSDR review." (*See* Ex. A (6/30/09

Letter to B. Stansbury, N. Finch, from J. Lacey)). They now expand the scope of their request,

asking for Dr. Parker's "medical records reflecting [his] clinical treatment of patients with

asbestos disease." (Libby Claimants Mot. to Strike Expert Testimony of J. Parker, July 20, 2009,

2

("Mot. to Strike") [ Dkt. No. 22556] ¶ 9.)  Moreover, the Libby Claimants argue in their motion

that the May 27th Order places a reciprocal obligation on Dr. Parker to disclose x-rays he

reviewed as part of various ATSDR studies beginning in 2000.    Unlike Dr. Whitehouse,

however, who relied on his 1800 patient population in developing his CARD Mortality analysis,

Dr. Parker in his deposition merely refers to his past, relevant experiences as a B-reader for

ATSDR.  Moreover, Dr. Parker does not possess any x-ray readings from the ATSDR studies,

nor did he review them in connection with forming the opinions he is offering in this case.  (*See*

Ex. B (Parker Affidavit, August 6, 2009).)

## ARGUMENT

I.  **RULE 26 REQUIRES AN EXPERT TO DISCLOSE MATERIALS CONSIDERED
IN FORMING HIS OR HER OPINION.**

Federal Rule of Civil Procedure 26(a)(2)(B) mandates the production of expert reliance

materials.    Fed. R. Civ. P. 26(a)(2)(B) (made applicable by Federal Rule of Bankruptcy

Procedure 7026).    Along with an expert report, an expert must submit "the data or other

information considered by the witness in forming" his or her opinions.  *Id.*  Rule 26(a)(2)(B) was

designed to prevent litigants from arguing "that materials furnished to their experts to be used in

forming their opinions--whether or not ultimately relied upon by the expert--are privileged or

otherwise protected from disclosure when such persons are testifying or being deposed."  *See*

Fed. R. Civ. P. 26, Advisory Comm. Notes (1993 Amendments).  "Considered" as used in the

Rule refers to "any information furnished to a testifying expert that such an expert generates,

reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions,

even if such information is ultimately rejected."  *Synthes Spine Co. v. Walden*, 232 F.R.D. 460,

463 (E.D. Pa. 2005).

While "considered" under Rule 26(a)(2)(B) is broad, it is not without limits.  Where an

expert "has presented the court with affidavits or deposition testimony clearly establishing that the testifying expert witnesses never read, reviewed, or considered the subject documents in forming their opinions . . . the rationale for a broad reading of the disclosure requirements of Rule 26(a)(2) disappears." *Langboard v. U.S. Dept. of Treasury*, Civ. A. No. 06-CV-05315, 2008 WL 4748174, at *2 (E.D. Pa. Oct.22, 2008) (quoting *Amway Corp. v. P&G*, No. 1:98CV726, 2001 WL 1877268 (W.D. Mich. 2001)).    As demonstrated below, all of the documents requested by the Libby Claimants were documents that Dr. Parker reviewed prior to forming his opinions in this case, and he did not review them or rely upon them in formulating his opinions here.

## II.    DR. PARKER HAS SATISFIED THE RULE 26 EXPERT DISCLOSURE REQUIREMENTS.

Dr. Parker identified all of the relevant literature he considered and reviewed in formulating his opinions in this case. (*See generally* Parker Report, Apr. 6, 2009 at 14 (listing materials reviewed and considered).) There is no admission by Dr. Parker otherwise.

First, Dr. Parker did not "consider" the ATSDR films from Libby and specific medical records "reflecting [his] clinical treatment of patients with asbestos disease" in forming his opinion. Dr. Parker states in his affidavit that he did not possess the x-rays; thus, it would be impossible for him to review them "in connection with the formulation of his opinion." (*See* Ex. B.) Instead, Dr. Parker merely identified during his deposition his past experiences as B-reader for ATSDR. In addition, the Libby Claimants argue, incorrectly, that "Libby medical records," such as the ATSDR reads, "were examined by Dr. Parker solely in his function as an expert in this case and with the express purpose of forming and evaluating opinions regarding Libby asbestos disease." (Mot. to Strike [Dkt. No. 22556] ¶ 14.) On the contrary, Dr. Parker examined these ATSDR films for scientific purposes, and never met with counsel for the Debtors or any

4

other attorney during his analysis. Indeed, all of his work for the ATSDR in connection with his 2001 and 2002 screening activities in Libby occurred prior to his retention by Grace in this case.

By way of contrast, Dr. Whitehouse specifically testified that he relied upon the 1800 patient files in formulating his opinions in this case. (*See* Whitehouse Deposition, Mar. 19, 2009, at 68-69.) Additionally, in connection with his CARD Mortality Study, Dr. Whitehouse specifically states that all of his 1800 records initially formed the basis of the patient population from which he selected the Card Mortality records. (*Id.*) Some of the 1800 were included in the study, and others were excluded, based upon criteria established by Dr. Whitehouse and applied in his review of the 1800 records he refused to produce.

Second, the Libby Claimants attempt to analogize Dr. Parker to Dr. Whitehouse, in that both refer to their "clinical experience with asbestos disease." (Mot. to Strike [Dkt. No. 22556] ¶ 9.) Dr. Whitehouse, however, unlike Dr. Parker, did more than identify and "recognize[]" that his treatment of patients helped inform his testimony in this case. As explained above, he specifically reviewed his 1800 patient records, analyzed the records in a variety of different ways, compared his findings from this analysis to published studies, included this analysis in his Report, and stated opinions about his 1800 patient population in his Report. (*See, e.g.*, Whitehouse Expert Report, Dec. 29, 2008, at 27.) The Libby Claimants' complete failure to show any similarities between the situation involving Dr. Whitehouse's reliance materials, and the status of Dr. Parker's production of reliance materials, reveals how meritless their motion is.

Dr. Parker has provided access to the all of the articles and studies he considered in forming his opinion, and therefore has satisfied the Rule 26 expert disclosure requirements. Whereas Dr. Parker has completely fulfilled his obligations, Dr. Whitehouse has wholly failed to satisfy his obligations under Rule 26, *by his own admission*. There simply is no comparison.

5

## CONCLUSION

Because Dr. Parker has complied with Rule 26, the Debtors respectfully request that the

Court deny the Libby Claimants' motion to strike.


Dated: August 7, 2009                    Respectfully submitted,
Wilmington, Delaware
                                         KIRKLAND & ELLIS LLP
                                         David M. Bernick
                                         Theodore L. Freedman
                                         Deanna D. Boll
                                         Citigroup Center
                                         601 Lexington Avenue
                                         New York, NY  10022
                                         Telephone: (212) 446-4800
                                         Facsimile: (212) 446-4900

                                         Barbara M. Harding
                                         Brian T. Stansbury
                                         655 Fifteenth Street, N.W.
                                         Washington, D.C. 20005
                                         Telephone: (202) 879-5000
                                         Facsimile:  (202) 879-5200

                                         and

                                         THE LAW OFFICES OF JANET S. BAER, P.C.
                                         Janet S. Baer, P.C.
                                         70 W. Madison Street
                                         Suite 2100
                                         Chicago, IL 60602
                                         Telephone: (312) 641-2162

                                         and

DOCS_DE:151767.1

PACHULSKI STANG ZIEHL & JONES LLP

_____

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

*Counsel for the Debtors and Debtors in Possession*