# EXHIBIT A

November 11, 2004

BY REGULAR MAIL, FAX AND EMAIL DELIVERY

Mr. Lewis Kruger
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

    Re:    W.R. Grace & Co.

Dear Lew:

        Willkie Farr & Gallagher LLP ("WF&G") represents D.K. Acquisition Partners L.P. ("D.K."), a substantial and active unsecured creditor of W.R. Grace & Co. ("W.R. Grace"). D.K. is a lender under various credit agreements with W.R. Grace (collectively, the "Credit Agreements"). I am writing to express D.K.'s views regarding the interest rate that should be used to calculate the accrued and accruing pendency interest (i.e., interest accruing as of the date of the bankruptcy filing and prior to the effective date of the plan of reorganization) that must be provided to bank debt holders in any plan of reorganization (the "Plan") proposed in the W.R. Grace bankruptcy case. D.K. urges the official committee of unsecured creditors (the "Committee") to insist that W.R. Grace commit to pay the contract default rate, fixed as of the date of the bankruptcy filing (the "Petition Date"), as the applicable Plan rate. D.K. believes that its position is endorsed by a majority of holders of outstanding bank debt as measured in dollar amount and perhaps number.

        In instances where a chapter 11 debtor is solvent, unsecured creditors are entitled to receive post-petition interest on their claims before shareholders receive any distribution. See, e.g., In re Gaines, 178 B.R. 101, 103 (Bankr. W.D. Va. 1995). As W.R. Grace is a solvent debtor, D.K. is entitled to receive post-petition interest on its claim at a rate consistent with its full contractual entitlements under undisputed credit agreements.

    Contract Rate

        Relevant and persuasive authority supports the application of the contract rate, as opposed to the federal judgment rate, in the calculation of postpetition interest. See, e.g., In re Terry Ltd. P'ship, 27 F.3d 241, 243 (7th Cir. 1994) (noting that there is a "presumption in favor of the contract rate" when calculating post-petition interest); In re Route One W. Windsor Ltd. P'Ship, 225 B.R. 76, 86 (Bankr. D.N.J. 1998) (same); In re Dow Corning, 244 B.R. 678, 696 (Bankr. E.D. Mich.

1999) (finding that the application of the federal judgment rate was not "fair and equitable," as required by section 1129(b) of the Bankruptcy Code). Moreover, in cases where the debtor is solvent, courts have underscored the importance of creditors' contractual rights. See In re Chicago Milwaukee, St. Paul & Pac. R.R. Co., 791 F.2d 524, 528 (7th Cir. 1986) ("[I]f the bankrupt is solvent the task for the bankruptcy court is simply to enforce the creditors' rights according to the tenor of the contracts that created those rights.").

As you know, under specified conditions, the contract rate set forth in the Credit Agreements is not a fixed rate, but rather a floating or variable rate.[1] With the advent of bankruptcy, recent and relevant authority supports D.K.'s position that the applicable interest rate be fixed and determined as of the Petition Date for the purpose of calculating pendency interest. Recent rulings in the Dow Corning case provide guidance with respect to this issue. In an unpublished opinion dated March 31, 2004, the District Court for the Eastern District of Michigan (the "District Court") affirmed the bankruptcy court's ruling that the non-default contract rate should be used to calculate pendency interest. See Case No. 01-CV-71843, *March 31, 2004, Opinion and Order.* The District Court subsequently clarified that, for the purpose of determining pendency interest, "the contract rate of a contract with floating or variable rates was *'fixed'* or *set* at the specific rate in effect on the date of the filing of the petition." Case No. 01-CV-71843, *May 18, 2004, Opinion and Order Regarding Calculation of Pendency Interest Due.*[2] In reaching this conclusion, the District Court noted that fixing the contract rate as of the bankruptcy filing is consistent with the judicial practice of applying a "*set* rate". Id. The Bankruptcy Code itself commands the result reached in Dow Corning by making clear that creditors' rights are fixed as of the commencement of a bankruptcy case. See 11 U.S.C. § 502(b) ("[I]f [an] objection to a claim is a made, the court . . . shall determine the amount of such claim in lawful currency of the United States *as of the date of the filing of the petition*) (emphasis added). Bankruptcy is a procedure for enforcing pre-bankruptcy entitlements, not a mechanism to redistribute contractual entitlements to unfairly advantage common stockholders by providing the debtor with the benefits of a floating rate of interest under defaulted (and naturally mature) credit agreements.

### LIBOR vs. ABR

Pursuant to the terms of the Credit Agreements, when the borrower defaults and certain circumstances take place, the interest rate "shall be automatically converted" from LIBOR to ABR. As an event of default has occurred under the Credit Agreements, the proper contract rate for D.K. is ABR. The fact that the default occurred after the Petition Date does not alter this analysis. Numerous courts have recognized that the automatic stay in inapplicable where a contractual event occurs

---

[1] Specifically, the Credit Agreements use both the London Interbank Offer Rate (LIBOR) and the Alternate Base Rate (ABR) as benchmarks.

[2] The Official Committee of Unsecured Creditors in the Dow Corning case has filed an appeal with the Court of Appeals for the Sixth Circuit based on, inter alia, the District Court's conclusion that the non-default interest rate would apply. The authorities cited below would support the Committee's appellate position.

automatically (i.e., without an affirmative act by the non-debtor party). See, e.g., In re Gull Air, Inc., 890 F.2d 1255, 1261 (1st Cir. 1989); In re Trigg, 630 F.2d 1370. 1374-75 (10th Cir. 1980).

Default Rate Interest

Although we recognize the existence of contrary authority, in a recent trend, courts have approved the contract default rate when the debtor is solvent. See, e.g., In re 139-141 Owners Corp., 313 B.R. 364 (S.D.N.Y. 2004); Vanderveer Estates Holdings, Inc., 283 B.R. 122, 134 (E.D.N.Y. 2002) ("The developing consensus is a presumption in favor of the contract default rate subject to equitable considerations... If a debtor is solvent, there is much more leeway to grant the default rate because other creditors will not be injured."); In re Liberty Warehouse Associates Ltd. P'Ship, 220 B.R. 546 (Bankr. S.D.N.Y. 1998), (holding that the application of the contract default rate was equitable because the debtor was solvent and would be able to pay allowed unsecured claims in full irrespective of the rate at which pendency interest was paid).

In addition to debtor solvency, courts will also look to the default rate's reasonableness in absolute terms and in relation to the non-default rate. See Vanderveer Estates, 283 B.R. at 134; In re Ace-Texas, Inc., 217 B.R. 719 (Bankr. D. Del. 1998). In Vanderveer Estates, the court found that a default interest rate of 12.56%, and a differential of 5% between the default and non-default rate, was "well within the range of default rates that have been allowed as reasonable..." 283 B.R. at 134; see also In re Ace-Texas, 217 B.R. at 723-24 (noting that courts have accepted default rates that are more than three points higher than non-default rates).

In the instant case, a bankruptcy court will likely view the application of the contract default rate as appropriate and equitable. First, W.R. Grace is solvent. Second, as set forth in the Credit Agreements, there is a 2% differential between the default rate and the non-default rate. Based on the caselaw, such differential falls well within the range of reasonableness required for its approval. Third, W.R. Grace chose to accrue, rather than seek authority to pay, interest in a case where the market capitalization of its equity rose from $100,000,000, in April, 2001, to $990,000,000 as of November 2004.

Compound Interest

Additionally, D.K. is entitled to compound interest (i.e., interest on overdue interest payments). Whether compound interest may be awarded to a creditor is a matter of state law. Ruskin v. Griffiths, 269 F.2d 827, 830-32 (2d Cir. 1959); see also In re Marfin Ready Mix Corp., 220 B.R. 148 (Bankr. E.D.N.Y. 1998). The Ruskin court noted that "where there is a contractual provision, *valid under state law*, providing for interest on unpaid instal[l]ments of interest, the bankruptcy court will enforce the contractual provision with respect to both instal[l]ments due before and instal[l]ments due after the petition was filed." Id. (emphasis added). The Credit Agreements are governed by New York state law. Section 5-527 of the New York General Obligations Law provides that in the case of

CC-JPM-0000011

loans, provisions providing for "compound interest shall be enforceable." NY Gen. Oblig. L. §5-527. Accordingly, D.K. is entitled to compound interest under the Credit Agreements.

### Conclusion

Lew, our approach is simple. There is ample case law support for adopting a firm negotiating posture that seeks pendency interest for lenders at the ABR default rate, fixed as of the Petition Date. Indeed, a demand for compound contract default rate interest is not a stretch. If concessions ultimately have to be made, we can discuss what an appropriate fall back position should be in the broader context of overall plan negotiations and relative shifts in distributive value. In no event will D.K. tolerate -- and in fact will oppose -- a plan that reallocates distributable value by providing for pendency interest at a floating LIBOR rate.

I will try to speak with you prior to the next Committee meeting, which I understand will be held tomorrow morning.

Sincerely,


Marc Abrams

cc:  Conor Bastable
     Anthony Yoseloff