# EXHIBIT B

Case 01-01139-AMC    Doc 22732-2    Filed 08/08/09    Page 1 of 3


# D E Shaw & Co

39th Floor, Tower 45  
120 West Forty-Fifth Street  
New York, NY 10036

(212) 478-0000  
FAX (212) 478-0100

November 12, 2004

Lewis Kruger, Esq.  
Stroock & Stroock & Lavan LLP  
180 Maiden Lane  
New York, NY 10038-4982

Dear Lewis:

As you know, D. E. Shaw Laminar Portfolios L. L. C. ("Laminar") is likely the largest holder of W. R. Grace & Co. ("Grace") bank debt. Because Laminar also holds a significant equity position in Grace, it has been unable to join the Official Committee of Unsecured Creditors (the "Committee"). Given the impending deadline for filing a plan imposed by Judge Fitzgerald, we thought it would be useful to share our thoughts with you.

The recent national election results have substantially increased the likelihood of asbestos reform legislation emerging from the 109th Congress. We have discussed the issue with 12 different Senators and staffers for many more and believe that legislators on both sides of the aisle share our view that this issue is one which can and should be a legislative priority. More importantly, the backdrop of impending legislation presents an opportunity to reach a conclusion to the Grace bankruptcy which is more than satisfactory to all commercial constituencies.

In this context, we believe that every avenue to reach agreement among the Debtor, the Committee and the equity committee should be aggressively pursued. Through our involvement in cases like Owens Corning, we have seen what can happen when one constituency is seen by the court to be the obstacle to resolution. Such an agreement would leave the asbestos creditors in precisely that position and create significant positive momentum toward resolution.

While we have not had access to confidential information, it is our belief, based on our conversations with Grace management, that Grace would consider proposing a plan, supported by the equity committee, which would provide that bank creditors would receive post-petition interest in excess of floating-rate LIBOR (albeit less than fixed-rate LIBOR). We believe that such a compromise, in which bank lenders would receive in excess of 120% of par on their claims, is eminently reasonable and we would strongly encourage the Committee to support it.

We certainly believe that if the issue were fully litigated, lenders have a good likelihood of success in arguing that they are entitled to post-petition interest at no less than fixed-rate LIBOR (yielding a recovery in the neighborhood of 129% of par). We are also mindful of the risk that by signing on

CC-JPM-0000014

Page 2

to a compromise plan at this stage, we raise the possibility of being cut back further in the event legislation does not occur and a protracted legal battle with the tort claimants continues. That said, the price of the aforementioned compromise is well worth paying to achieve unity, isolate the tort claimants and achieve unprecedented momentum toward a speedy and favorable settlement.

Please feel free to distribute this letter to the members of the Committee. Marc Sole and I are both available at any time to discuss our views further with you or Committee members or provide whatever assistance you may need.

Best regards,

Max Holmes
Managing Director

Cc:  Paul Norris
     Chairman and Chief Executive Officer
     W. R. Grace & Co.

     R. Ted Weschler
     Peninsula Capital Advisors LLC