IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Requested Objection Deadline:  August 17, 2009 at 4:00 P.M.** |
| | ) | **Requested Hearing Date:  August 24, 2009 @ 10:30** |

**DEBTORS' MOTION FOR AN ORDER APPROVING THE SETTLEMENT
AGREEMENT BY AND BETWEEN W.R. GRACE & CO., ET AL.
AND THE SCOTTS COMPANY LLC**

W.R. Grace & Co., *et al.* (collectively, the "Debtors") hereby submits this motion (the "Motion") for entry of an order approving a settlement agreement (the "Settlement Agreement") by and between the Debtors and The Scotts Company LLC ("Scotts"). A copy of the Settlement Agreement is attached as <u>Exhibit A</u>.[2] In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] A fully executed copy of the Settlement Agreement will be filed with the Court in advance of the hearing on the Motion.

### Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion is proper under 28 U.S.C. § 1408.

2. The statutory predicates for this Motion include sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 the Federal Rules of Bankruptcy Procedure.

### Background

3. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. Scotts is a marketer of branded consumer lawn and garden products. Scotts is presently a named defendant in several state court actions alleging asbestos-related bodily injury claims against Scotts based upon allegations concerning the Libby vermiculite ore that W.R. Grace sold to Scotts. As such, Scotts alleges that it has and may in the future have common law indemnification and contribution claims against the Debtors. Additionally, Scotts alleges that it is entitled to insurance coverage under the Debtors' general liability insurance policies.

5. On September 2, 2004, Scotts filed an adversary proceeding in the Bankruptcy Court (Adv. Pro. No. 04-55083) (the "Scotts Adversary") against the Debtors and certain of the Debtors' insurance carriers, seeking, among other things, declaratory relief with respect to its alleged entitlement under the Debtors' general liability insurance policies. The Scotts Adversary has been temporarily stayed by the Bankruptcy Court.

6.      In November 2006, Scotts filed a proof of claim alleging, among other things, that it may have post-confirmation common law indemnification, contribution or other state law claims against one or more of the Debtors.

7.      On February 27, 2009, the Plan Proponents[3] filed the Plan, which contemplates, among other things, that any contribution, indemnification and/or other state law Claims asserted against the Debtors by Scotts for reimbursement, indemnification, subrogation or contribution on account of damages Scotts may have paid or may pay to plaintiffs for death, bodily injury, sickness, disease, or other personal injuries to the extent caused or allegedly caused by exposure to asbestos or asbestos-containing products for which the Debtors have liability are Asbestos PI Claims.  Pursuant to the Plan, such Asbestos PI Claims will be enjoined and channeled to the Asbestos PI Trust.  *See* Plan, Art. 8.

8.      On the Effective Date, all Claims against the Debtors shall be discharged and all Asbestos PI Claims, including any such claims that Scotts may have against the Debtors or against any other Asbestos Protected Party (including any Settled Asbestos Insurance Company) will be enjoined and channeled to the Asbestos PI Trust.  *See id*.

9.      Scotts filed an objection to confirmation of the Plan, asserting as follows:  a) Scotts contended that the Plan improperly enjoins claims and demands of nondebtors against other nondebtors on the alleged basis that such nondebtors have not made a substantial financial contribution to the Asbestos PI Trust as required under Section 524(g)(4)(B) of the Bankruptcy Code; b) Scotts asserted that that the Asbestos Entity Injunction improperly enjoins claims against nonsettling Asbestos Insurance Entities and fails to channel or otherwise treat such

---

[3] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Amended Joint Plan of Reorganization, filed February 27, 2009 (as it may be amended from time to time, the "Plan").

claims; c) Scotts alleged that the Bankruptcy Court lacks subject matter jurisdiction to issue the Channeling Injunction, the Asbestos Entity Injunction or Releases; and d) Scotts contended that the Plan impermissibly classifies claims within the same class that are not substantially similar.

## The Settlement Agreement

10. To avoid protracted litigation, the Debtors and Scotts have agreed to a settlement as outlined in the attached Settlement Agreement.

11. The Committee, the Futures Representative, the Equity Committee, the Sealed Air Indemnified Parties, and the Fresenius Indemnified Parties as defined in the Settlement Agreement have either already consented to the Settlement Agreement in writing or shall provide such written consent on or before the entry of Approval Order for such Settlement Agreement to be effective (among other things).

12. Pursuant to the Settlement Agreement, the parties have agreed to, among other things, the following terms and conditions:[4]

    (a) **Settlement Payment**:  Following the occurrence of the Effective Date, the Asbestos PI Trust shall pay to Scotts $1,800,000.00.

    (b) **Treatment of Scotts' claims:**  Any Asbestos PI Claim for contribution and indemnity that Scotts may have now or in the future shall be treated as a Class 6 claim under the Plan. On the Effective Date, Scotts' contribution and indemnity claims against the Debtors or any other Asbestos Protected Party shall be channeled to the Asbestos PI Trust for processing under the Asbestos PI TDP.

    (c) **Scotts' Release of Insurance Rights:**  Scotts releases:  (i) any and all rights, title or interest of Scotts to (a) any Asbestos Insurance Policy, (b) any Asbestos In-Place Insurance Coverage, (c) any Asbestos Insurance Reimbursement Agreement, and (d) any Asbestos Insurance Settlement Agreement, and including the proceeds of each of the foregoing (a) - (d) (defined in the Settlement Agreement as the "Released Coverage"); (ii) all past, present and future claims,

---

[4] The following summary of the Settlement Agreement is provided for the convenience of the Court and parties in interest. To the extent that there are any discrepancies between this summary and the Settlement Agreement, the terms and language of the Settlement Agreement shall govern.

demands, and causes of action related to or based on the Released Coverage against any insurer under the Released Coverage.

(d) **Releases by the Debtors and Scotts:** The Debtors (including the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties) and Scotts release each other (defined in the Settlement Agreement as the Scotts Released Parties and the Debtors Released Parties) from any and all claims each may have, had or claim to have against each other arising directly or indirectly from any act, omission, event or transaction occurring on or prior to the Effective Date.

## Relief Requested

13. By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Settlement Agreement, which has been executed by the parties, and, by its terms, will become effective upon the approval of this Court.

## Basis for Relief

14. This Court has statutory authority to authorize and approve the Debtors' entry into the Settlement Agreement pursuant to sections 105 and 363(b)(l) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). A settlement of claims and causes of action by a debtor in possession constitutes a use of property of the estate. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.*

15. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or

settlement." Fed.R.Bankr.P. 9019(a). Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is in the best interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *See Martin*, 91 F.3d at 393.

16. The standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should only be rejected if they fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The standards set forth above are plainly met in this case.

### The Settlement Agreement Is A Sound Exercise of the Debtors' Business Judgment

17. The Settlement Agreement is in the best interests of the Debtors, their estates, and their creditors. The Settlement Agreement is the product of a rigorous arms-length, good faith negotiation process, is fair and reasonable, and is clearly within the Debtors' sound business

judgment. Without a settlement, litigation with Scotts would continue for months or years, causing the Debtors and/or the Asbestos PI Trust to incur significant additional attorneys' fees and expenses, thereby depleting the limited assets available for paying claims. The Settlement Agreement also provides much needed certainty for the Debtors with respect to Scotts' claims at a crucial time in these Chapter 11 cases as the Debtors prepare for confirmation of the Plan and the conclusion of these Chapter 11 cases.

18. Pursuant to the Settlement Agreement, the Debtors will receive a release from Scotts, which will preclude future claims and any future liability of the Debtors with respect to Scotts.

19. The Settlement Agreement also provides assurance to the creditors that any potential liabilities alleged by Scotts are fully addressed and permanently resolved at a relatively minimal cost to the Debtors' estates. The Settlement Agreement also removes Scotts as an objector to confirmation of the Plan.

20. For all of the foregoing reasons, the Debtors submit that the Settlement Agreement is fair and reasonable and in the best interest of the Debtors, their creditors and their estates, and thus the Debtors should be authorized to enter into the Settlement Agreement.

### Notice

21. Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, (iv) the Asbestos PI Future Claimants' Representative, (v) the Asbestos PD Future Claimants' Representative, and (v) those parties that requested papers under Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the Settlement Agreement, and granting such other and further relief as the Court deems just and proper.

Dated:  August 8, 2009

KIRKLAND & ELLIS LLP
David M. Bernick
Lisa G. Esayian
300 N. LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

and

Theodore Freedman
Citigroup Center
601 Lexington Avenue
New York, New York  10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES LLP

___/s/  James E. O'Neill_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession