# Exhibit A

## SETTLEMENT AGREEMENT BY AND BETWEEN
## W.R. GRACE & CO. AND THE SCOTTS COMPANY LLC

# SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (this "Agreement") is made and entered into as of August ____, 2009 (the "Execution Date") by (i) The Scotts Company LLC, an Ohio limited liability company, on behalf of itself and on behalf of its Affiliates and subsidiaries (individually and collectively "Scotts"), and (ii) W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co: Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (a/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company (individually and collectively, the "Debtors").  Each of Scotts and each of the Debtors is referred to herein as a "Party" and collectively as the "Parties."  Capitalized terms used herein are defined in Article I below.

WHEREAS, on or about April 4, 2001, the  Debtors filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code in the United States District Court for Delaware, In re W.R. Grace & Co., et al., No. 01-01139 (JKF), and they continue to operate their businesses as debtors and debtors-in-possession; and

WHEREAS, the Debtors, the Committee, the Futures Representative, and the Equity Committee appointed in the Bankruptcy Case are co-proponents of the Joint Plan of Reorganization (capitalized terms used herein are defined in Article I below); and

WHEREAS, Scotts has raised certain objections in the Bankruptcy Case to the Joint Plan of Reorganization; and

WHEREAS, the Parties, subject to the terms and conditions of this Agreement, now wish fully and finally to compromise and resolve the disputes between or among them, including those arising in the Bankruptcy Case.

NOW, THEREFORE, in consideration of the premises and of the mutual agreements and covenants hereinafter set forth, and for other good and valuable future consideration, the sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

**1.01    Certain Definitions.**  As used in this Agreement, the following terms have the following meanings, and if not otherwise defined in this Agreement, capitalized terms in this Agreement shall have the meaning so ascribed in the Joint Plan of Reorganization:

"Affiliate" of a Person means any other Person directly or indirectly Controlling or Controlled by or under direct or indirect common Control with the first Person.

"Agreement" has the meaning set forth in the preamble.

"Approval Motion" has the meaning set forth in Section 4.01.

"Approval Order" means an order of the Bankruptcy Court, to be entered in the Bankruptcy Case, in substantially the form attached hereto as Exhibit A, with only such modifications as to which the Parties have consented in writing, which order shall, among other things:  (1) approve this Agreement and the compromise and settlement memorialized herein; and (2) authorize the Debtors to perform under this Agreement in accordance with its terms.

"Asbestos Protected Party" has the meaning given to such term in the Joint Plan of Reorganization.

"Bankruptcy Case" means In re W.R. Grace & Co., et al., No. 01-1139 (JKF) and the other bankruptcy cases that are jointly administered under Case No. 01-00139, including any appeals of decisions in the Bankruptcy Case.

"Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware and, to the extent it exercises jurisdiction over the Bankruptcy Case, the United States District Court for the District of Delaware.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

"Committee" means the Official Committee of Asbestos Personal Injury Claimants appointed in the Bankruptcy Case.

"Control", "Controlling" or "Controlled" means the possession, directly or indirectly, through one or more intermediaries, of the following: (a) in the case of a corporation, more than 50% of the outstanding voting securities thereof; (b) in the case of a limited liability company, partnership, limited partnership or joint venture, the right to more than 50% of the distributions therefrom (including liquidating distributions); (c) in the case of any other Entity, more than 50% of the economic or beneficial interest therein; or (d) in the case of any Entity, the power or authority, through ownership of voting securities, by contract or otherwise, to direct the management, activities or policies of such Entity.

"Debtors" has the meaning set forth in the preamble.

"Debtor Released Parties" has the meaning given to such term in Section 2.03.

"Effective Date" means the effective date of the Joint Plan of Reorganization.

"Entity" means any corporation, limited liability company, general partnership, limited partnership, venture, trust, business trust, unincorporated association, estate or other entity.

"Equity Committee" means the Official Committee of Equity Security Holders.

"Execution Date" has the meaning set forth in the preamble.

"Final Order" means an order or judgment (including any modification or amendment thereof) that remains in effect and has not been reversed, vacated, stayed, or amended and as to which the time to appeal or seek review, rehearing or writ of certiorari has expired and as to which no appeal or petition for review, reconsideration, rehearing or certiorari has been taken or, if taken, no longer remains pending.

"Fresenius Indemnified Parties" has the meaning given to such term in the Joint Plan of Reorganization.

"Futures Representative" means David Austern, the Asbestos PI Future Claimants' Representative appointed, for each Debtor, by orders of the Bankruptcy Court dated May 24, 2004, and any successor to him.

"Insurance Contributor" has the meaning given to such term in the Joint Plan of Reorganization.

"Joint Plan of Reorganization" means the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009, including all exhibits thereto, or any other plan of reorganization of the Debtors, as the same may be amended from time to time.

"Party" and "Parties" have the meanings set forth in the preamble.

"Person" means any individual or Entity.

"Plan Proponents" means the Debtors, the Committee, the Futures Representative, and the Equity Committee.

"Released Coverage" has the meaning give to such term in Section 2.01.

"Reorganized Debtors" has the meaning given to such term in the Joint Plan of Reorganization.

"Scotts" has the meaning set forth in the preamble.

"Scotts Released Parties" has the meaning given to such term in Section 2.02.

"Sealed Air Indemnified Parties" has the meaning given to such term in the Joint Plan of Reorganization.

"Settlement Payment" has the meaning given to such term in Section 3.01.

"TDP" means the WRG Asbestos PI Trust Distribution Procedures.

"Trust" means the WRG Asbestos PI Trust to be established pursuant to the Joint Plan of Reorganization.

### 1.02    Construction.

Whenever the context requires, the gender of all words used in this Agreement includes the masculine, feminine, and neuter.  Each defined term stated in the singular shall include the plural and each defined term stated in the plural shall include the singular. Unless otherwise specified herein, all references to Articles and Sections refer to articles and sections of this Agreement, and all references to Exhibits and Schedules are to exhibits and schedules attached hereto, each of which is made a part hereof for all purposes.  Where any provision in this Agreement refers to action to be taken by any Person, or which such Person is prohibited from taking, such provision will be applicable whether such action is taken directly or indirectly by such Person, including actions taken by or on behalf of any Affiliate of such Person.  The words "includes" or "including" shall mean "including without limitation."

## ARTICLE II
## RELEASES

### 2.01    Release of Insurance Rights.

Effective upon Scotts' receipt of the Settlement Payment and subject to the terms and conditions of this Agreement, Scotts, on behalf of itself and on behalf of its Affiliates, subsidiaries, officers, directors, predecessors, successors and assigns, hereby forever terminates, waives, releases and otherwise relinquishes: (i) any and all right, title or interest of Scotts or any of its Affiliates in or to (a) any Asbestos Insurance Policy or any other insurance policy under which any Insurance Contributor has or had insurance coverage, (b) any Asbestos In-Place Insurance Coverage, (c) any Asbestos Insurance Reimbursement Agreement, and (d) any Asbestos Insurance Settlement Agreement, and including the proceeds of the foregoing (a)-(d)

(the "Released Coverage"), and (ii) all past, present and future claims, demands, and causes of action of any nature whatsoever, including past, present or future claims or demands for defense costs and expenses (including attorneys' fees), whether based on contract, tort, statutory or other legal or equitable theory of recovery, whether known or unknown, suspected or claimed, under, related to or based upon the Released Coverage against any insurer under the Released Coverage (but only with respect to such Released Coverage); *provided, however,* that nothing in this Section 2.01 shall be deemed to affect or release (i) Scotts' rights or obligations under any insurance policies issued to or purchased by Scotts, its predecessors, or any of its current or former Affiliates, (ii) the Parties' rights and obligations under this Agreement or the enforceability of this Agreement, or (iii) any Asbestos PI Claim under common law for contribution or indemnification that Scotts may have now or in the future, which shall be treated as set forth in Section 4.07.

**2.02    Release by the Debtors.**

Effective upon Scotts' receipt of the Settlement Payment and subject to the terms and conditions of this Agreement, each of the Debtors, on behalf of itself and on behalf of its present Affiliates, subsidiaries, officers, directors, partners, principals, members, predecessors, successors, assigns, the Sealed Air Indemnified Parties, and the Fresenius Indemnified Parties, hereby releases and forever discharges Scotts and its past and present Affiliates, subsidiaries, officers, directors, partners, principals, members, predecessors, successors, and assigns (collectively, the "Scotts Released Parties"), from any and all claims which the Debtors have, had or claims to have against any or all of the Scotts Released Parties arising directly or indirectly from any act, omission, event or transaction occurring on or prior to the Effective Date; *provided, however*, that nothing in this Section 2.02 shall be deemed to affect or release (i) the Parties' rights and obligations under this Agreement or the enforceability of this Agreement or (ii) any defenses, counterclaims and/or cross-claims that the Debtors may have to any common law claims preserved for Scotts pursuant to Section 2.01, Section 2.03 and Section 4.07, which defenses, counterclaims and/or cross-claims shall be assigned to and may be asserted by the Trust from and after the Effective Date.

**2.03    Release by Scotts.**

Effective upon Scotts' receipt of the Settlement Payment and subject to the terms and conditions of this Agreement, Scotts, on behalf of itself and on behalf of its Affiliates, subsidiaries, officers, directors, partners, principals, members, predecessors, successors and assigns, hereby releases and forever discharges Debtors and their past and present Affiliates (including the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties), subsidiaries, officers, directors, partners, principals, members, predecessors, successors, and assigns (collectively, the "Debtor Released Parties"), from any and all claims which Scotts has, had or claims to have against any or all of the Debtor Released Parties arising directly or indirectly from any act, omission, event or transaction occurring on or prior to the Effective Date; *provided, however*, that nothing in this Section 2.03 shall be deemed to affect or release (i) the Parties' rights and obligations under this Agreement or the enforceability of this Agreement or (ii) any claims and defenses preserved for Scotts pursuant to Section 2.01 and Section 4.07.

### 2.04    Waiver under State Statutory Laws.

Scotts knowingly and intentionally waives any protection afforded to it by any New York or Delaware counterpart, if any, to California Civil Code §1542, which California Civil Code provision provides that:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Scotts agrees that this Agreement is intended to cover all claims or possible claims arising out of or related to those matters referenced or impliedly covered in the release set forth in <u>Section 2.01</u>, whether the same are known, unknown or hereafter discovered or ascertained, and the provisions of any New York or Delaware counterpart, if any, to California Civil Code §1542 (or any other similar applicable state or federal statute or common law principle) are hereby expressly waived.  Scotts expressly acknowledges that it has been advised by its counsel of the contents and effect of such provisions if they exist, and with such knowledge it hereby expressly waives whatever benefits it may have pursuant to such provisions.

### 2.05    Representations and Warranties regarding Released Claims.

Scotts represents and warrants to the other Parties that it is the sole and lawful owner of all right, title and interest in and to every claim that it purports to release in <u>Section 2.01</u> of this Agreement and that it has not previously assigned or transferred, either by act or operation of law or otherwise, to any Person, any such claim purported to be released by it under <u>Section 2.01</u> of this Agreement.

## ARTICLE III
## TRUST PAYMENT AND OBLIGATIONS

### 3.01    Payment by the Trust.

The Trust shall pay to Scotts, by wire transfer of immediately available funds, the sum of One Million Eight Hundred Thousand United States Dollars (US$1,800,000.00) as soon as practicable following the occurrence of the Effective Date (but in any event not later than the earlier of fifteen days after the funding of the Trust or ninety days after the Effective Date) (the "<u>Settlement Payment</u>").  The Settlement Payment shall be made to the account set forth on <u>Exhibit B</u> attached to this Agreement (or such other account as to which Scotts has given the Trust prior written notice).  The Settlement Payment shall not be disallowed, reduced or subordinated for any reason whatsoever, and is accordingly not subject to any offset or reduction for any reason, and neither the Parties nor the Trust shall take any action that is inconsistent with the foregoing.

**3.02    Trust Bound.**

Upon the occurrence of the Effective Date, the Trust shall be bound by, and entitled to enforce, this Agreement as if a party hereto, without any further action of any Party, and the Approval Order and the order confirming the Joint Plan of Reorganization shall so provide.

**3.03    Claimant Information.**

If, after the Effective Date, a Person asserts or continues to assert a claim, demand or other cause of action against Scotts concerning or relating to the Debtors' vermiculite, then, upon the reasonable request of Scotts made to the Trust in writing, the Trust will provide Scotts with information concerning whether the Person has asserted or submitted a claim for payment against or to the Trust and/or whether any payments have been or are to be made to the Person making such claim including the amount of such payment.  Scotts shall keep all such information confidential and shall not disclose the same to any Person except (i) its representatives and professionals with a need to know such information and who are informed of the confidential nature of such information or (ii) if and to the extent reasonably required to defend against the claim that gave rise to the request for such information.  Nothing contained in this Section 3.03 shall be construed to limit or otherwise restrict Scotts' ability to conduct discovery pursuant to applicable civil rules.


# ARTICLE IV
## BANKRUPTCY-RELATED OBLIGATIONS

**4.01    Approval Order.**

As soon as practicable after the Execution Date, the Debtors will file a motion seeking entry of the Approval Order (the "Approval Motion"), and the Parties shall use their reasonable best efforts promptly to obtain entry of the Approval Order as a Final Order as soon as reasonably possible.  Scotts, at its own expense, will cooperate with the Debtors in obtaining the Approval Order.

**4.02    Notices.**

The Debtors shall serve notice of the hearing on the Approval Motion on the parties and in the manner prescribed by Fed. R. Bankr. P. 2002(a) and Del. Local Bankr. R. 9006-1.  In addition, Scotts, in its discretion and at its sole cost and expense, may, but shall not be required to, cause a notice of the hearing on the Approval Motion to be mailed or published, as it deems desirable.

**4.03    Plan Provisions.**

The Debtors will insure that the Joint Plan of Reorganization is consistent with the terms of this Agreement and does not materially and adversely affect the settlement embodied in this Agreement.  Further, the Debtors shall reference and incorporate the Approval Order in its order confirming the Joint Plan of Reorganization.  The Debtors shall cause any order(s) confirming

the Joint Plan of Reorganization to provide for the Trust obligation to make the Settlement Payment; to provide that the Plan Proponents are otherwise bound by and shall perform under this Agreement; and to provide such other provisions reasonably acceptable to Scotts as may be necessary to cause the Trust, the Plan Proponents and any other party in interest to be bound by the requirement that the Settlement Payment be made to Scotts.

### 4.04    No Rejection.

Pending the occurrence of the Effective Date, no Party will seek to reject or to compel rejection of this Agreement as an executory contract in the Bankruptcy Case or any other bankruptcy case of any Party.

### 4.05    No Further Objections.

From and after the Execution Date and in the absence of a Termination as set forth in Section 5.01, Scotts (i) will suspend prosecution of all of its objections to the Joint Plan of Reorganization (including all documents related to the implementation of the Joint Plan of Reorganization), to confirmation of the Joint Plan of Reorganization, or to the Debtors', Committee's or Futures Representative's motions or applications pending in the Bankruptcy Case (including any appeals of decisions in the Bankruptcy Case); (ii) except as provided in Section 4.07, will suspend prosecution of its proof of claim; (iii) will take no further actions of any nature (including filing new objections to the Joint Plan of Reorganization (including any documents related to the implementation of the Joint Plan of Reorganization) and initiating or taking discovery) that may hinder, delay or oppose actions of the Debtors, the Committee or the Futures Representative in the Bankruptcy Case, including actions to confirm any plan of reorganization; and (iv) will not oppose the entry of an order or orders confirming the Joint Plan of Reorganization or affirming the entry of such confirmation order(s).

### 4.06    Stay of Scotts' Objections.

Upon the Approval Order becoming a Final Order, Scotts shall stay prosecution of its objections to the Joint Plan of Reorganization (including all documents related to the implementation of the Joint Plan of Reorganization), to confirmation of the Joint Plan of Reorganization, or to the Debtors', Committee's or Futures Representative's motions or applications pending in the Bankruptcy Case not otherwise inconsistent with this Agreement (including any appeals of decisions in the Bankruptcy Case), and in the absence of a Termination as set forth in Section 5.01, any such objections shall be deemed withdrawn.

### 4.07    Treatment.

Each of the Parties agrees that any Asbestos PI Claim for contribution and indemnity that Scotts may have now or in the future shall be treated as a Class 6 claim under the Joint Plan of Reorganization.  Under the Joint Plan of Reorganization, on the Effective  Date, Scotts' contribution and indemnity claims against the Debtors or any other Asbestos Protected Party (in its capacity as such) shall be channeled to the Trust for processing under the TDP (subject to all applicable defenses, counterclaims or cross-claims, and subject to all applicable defenses,

counterclaims or cross-claims in response thereto). The Parties agree that this Section 4.07 constitutes an exception to the releases set forth in Section 2.01 and Section 2.03.

**4.08    Reservation of Rights.**

Scotts reserves its rights, notwithstanding any other provision of this Agreement, to object and be heard in the Bankruptcy Case (i) in response to any opposition to entry of the Approval Order, and (ii) to the extent that any objector to the Joint Plan of Reorganization or other Person, including, but not limited to, the Plan Proponents, takes any action inconsistent with this Agreement that materially and adversely affects the interests of Scotts under this Agreement.

**ARTICLE V**
**TERMINATION OF AGREEMENT**

**5.01    Termination.**

Subject to Section 5.02, this Agreement shall terminate and become null and void upon the occurrence of any of the following events:

(i)    The entry of an order by the Bankruptcy Court denying approval of this Agreement or entry of an order approving this Agreement that is not the Approval Order except as otherwise consented to by Scotts;

(ii)    The entry of an order dismissing the Bankruptcy Case prior to the Effective Date of the Joint Plan of Reorganization;

(iii)    The entry of an order by the Bankruptcy Court converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code prior to payment of the Settlement Payment;

(iv)    The entry by the Bankruptcy Court of an order confirming, or the occurrence of the Effective Date of, a Joint Plan of Reorganization that materially or adversely affects the settlement embodied in this Agreement except as otherwise consented to by Scotts;

(v)    A Joint Plan of Reorganization is proposed or otherwise submitted that materially or adversely affects the settlement embodied in this Agreement except as otherwise consented to by Scotts; or

(vi)    The Approval Order is not entered prior to or at the commencement of the Confirmation Hearing.

**5.02    Effect of Termination.**

Upon the termination of this Agreement as provided in Section 5.01, this Agreement shall have no further force or effect without any action of any Party, and no Party shall have any

further obligation hereunder; *provided however* that termination shall not relieve any Party then in breach of this Agreement from liability in respect of such breach; and *provided further* that this Section 5.02, Section 6.02 and Section 7.08 shall survive such termination. Without limiting the generality of the foregoing, upon such termination:

(i)      The Trust shall have no obligation to make any payments to Scotts;

(ii)     The releases set forth in Article II shall have no force or effect;

(iii)    Scotts may renew prosecution of its objections, of any claims or demands it may otherwise have, including any Asbestos PI Claim, and of its proof of claim, which shall be deemed to be preserved and in which event any filing deadlines shall be deemed to have been tolled; and

(iv)    Scotts will be deemed to have reserved its rights and objections in connection with confirmation-related proceedings and proceedings concerning the assertion by Scotts of claims in the Bankruptcy Case.

**ARTICLE VI**
**REPRESENTATIONS AND WARRANTIES; SETTLEMENT**

**6.01      Representations and Warranties of Each Party.**

Each Party hereby represents and warrants to each other Party that:

(i) such Party has full power and authority to enter into this Agreement and to perform its obligations hereunder (subject to Bankruptcy Court approval as to the Debtors);

(ii) the execution, delivery and performance of this Agreement do not conflict with such Party's organizational documents or any other agreement or arrangement to which such Party is a party or by which it is or its assets are bound or any law, regulation or order to which such Party is subject; and

(iii) the execution and delivery of, and the performance of the obligations contemplated by, this Agreement have been approved by duly authorized representatives of such Party, and by all other necessary actions of such Party.

**6.02      Settlement.**

Each Party agrees and acknowledges that this Agreement is a compromise settlement of each Party's disputed claims, and that the sums and covenants given in consideration of this Agreement, as well as the execution of this Agreement, shall not be construed to be an admission of liability on the part of any Party with respect to the disputed matters set forth above nor shall this Agreement be deemed an admission or concession by any Party of liability, culpability, or wrongdoing. Scotts' entry into this Agreement does not constitute an endorsement of any plan of reorganization for the Debtors or a statement of position of any kind as to whether any such plan of reorganization as proposed or confirmed is lawful or unlawful. Settlement negotiations leading up to this Agreement and all related discussions and negotiations shall be deemed to fall

within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions.  Except as necessary with respect to the Approval Motion, any evidence of the terms of this Agreement or negotiations or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except in (i) an action or proceeding to enforce the terms of this Agreement, or (ii) as otherwise directed by any court of competent jurisdiction.

## ARTICLE VII
## MISCELLANEOUS PROVISIONS

### 7.01    Parties to Bear Own Costs and Attorneys' Fees.

Each Party will bear its own costs and expenses, including attorneys' fees, incurred by it in the negotiation of this Agreement and the transactions and other agreements contemplated hereby.

### 7.02    Entire Agreement.

This Agreement represents and contains the entire agreement and understanding among the Parties with respect to the subject matter of this Agreement, and supersedes any and all prior oral and written agreements and understandings relating thereto.  No Person other than the Parties, the Scotts Released Parties, the Debtor Released Parties, the Committee, the Futures Representative and the Trust shall have any legally enforceable rights or benefits under this Agreement.  The Parties, the Scotts Released Parties, the Committee, the Futures Representative and the Trust are intended third-party beneficiaries of this Agreement.  This Agreement may not be amended or modified, and no provision hereof may be waived, except by a written agreement (i) signed by each Party and (ii)(a) prior to the Effective Date, consented to by the Committee and the Futures Representative, and (b) after the Effective Date, consented to by the Trust.

### 7.03    Advice of Counsel.

Each Party acknowledges and represents that it has sought and obtained the legal advice of its own chosen attorneys and that the terms of this Agreement have been completely read and are fully understood and voluntarily accepted by it.

### 7.04    Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall be deemed one and the same instrument.  For purposes of this Agreement, facsimile signatures including signatures sent by email in pdf format will also constitute originals.

### 7.05    Binding Effect.

This Agreement will be binding on and inure to the benefit of the Parties and their respective heirs, legal representatives, successors and permitted assigns, including, after the Effective Date, the Reorganized Debtors, the Asbestos Protected Parties (in their capacity as

such) and the Trust.  This Agreement may not be assigned by any Party (i) prior to the Effective Date, without the prior written consent of the other Parties, the Committee and the Futures Representative, and (ii) after the Effective Date, without the prior written consent of the other Parties and the Trust.

**7.06    Governing Law.**

This Agreement is governed by and will be construed in accordance with the laws of the State of New York, excluding any conflict-of-laws rule or principle (whether under the laws of New York or any other jurisdiction) that might refer the governance or the construction of this Agreement to the law of another jurisdiction.

**7.07    Submission to Jurisdiction.**

(a)    The Parties agree to submit all disputes relating to this Agreement to the Bankruptcy Court.

(b)    If the Bankruptcy Court refuses to exercise jurisdiction over any such dispute, the Parties may submit such dispute to any court of competent jurisdiction and, in such case, the Parties hereby irrevocably submit to the non-exclusive jurisdiction of any county, federal or state court located within the State of New York over any dispute arising out of or relating to this Agreement or any of the transactions contemplated hereby and each Party hereby irrevocably agrees that all claims in respect of such dispute or any suit, action, or proceeding related thereto may be heard and determined in such courts.  The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

**7.08    Severability.**

If any provision of this Agreement or its application to any Person or circumstance is held invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other Persons or circumstances will not be affected thereby, and such provision will be enforced to the greatest extent permitted by law.

**7.09    Construction.**

This Agreement was negotiated among the Parties hereto at arm's length and in good faith, with each Party receiving advice from independent legal counsel.  It is the intent of the Parties that no part of this Agreement be construed against any of the Parties hereto because of the identity of the drafter.

**7.10    Notices**.

All notices, demands, or other communications that any Party desires or is required to give shall be given in writing and shall be deemed to have been given if hand delivered, faxed,

emailed (as a .pdf attachment), or if mailed by United States first-class mail, postage prepaid, to the Persons, and at the addresses, noted below, or such other address as any such Person may designate in writing from time to time:

If to the Debtors:

W. R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044
Attn: General Counsel
Telephone: (410) 531-4000
Facsimile: (410) 531-4545

With a copy to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attn: Theodore L. Freedman
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and
Pachulski, Stang, Ziehl, & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Attn: Laura Davis Jones/James E. O'Neill
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

If to Scotts:

Vincent Brockman, Esq.
General Counsel
The Scotts Company LLC
14111 Scottslawn Road
Marysville, Ohio 43041
Telephone: (937) 644-7550
Facsimile: (937) 644-7568

With a copy to:

Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, Ohio 43215
Attn: Tiffany Strelow Cobb
Telephone: (614) 464-6400
Facsimile: (614) 719-4663

If to the Committee:

Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
Attn: Peter Lockwood

<table>
<tr><td></td><td>Telephone:  (202) 862-5000<br>Facsimile:  (202) 862-3301</td></tr>
</table>

Telephone:  (202) 862-5000
Facsimile:  (202) 862-3301

and

Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY  10152
Attn:  Elihu Inselbuch
Telephone:  (212) 319-7125
Facsimile:  (212) 644-6755

With a copy to:                              Anderson Kill & Olick, PC
                                             1251 Avenue of the Americas
                                             New York, NY  10020
                                             Attn:  Robert M. Horkovich
                                             Telephone:  (212) 278-1322
                                             Facsimile:  (212) 278-1733

If to the Futures Representative:            David T. Austern
                                             3110 Fairview Park Drive
                                             Suite 200
                                             Falls Church, VA 22042-0683
                                             Telephone:  (703) 205-0835
                                             Facsimile:  (703) 205-6249

With a copy to:                              Orrick, Herrington & Sutcliffe LLP
                                             1152 15th Street, N.W.
                                             Washington, D.C. 20005-1706
                                             Attn:  Roger Frankel
                                             Telephone:  (202) 339-8400
                                             Facsimile:  (202) 339-8500

**7.11    Further Assurances.**

In connection with this Agreement and the transactions contemplated thereby, each Party will execute and deliver any additional documents and instruments and perform any additional acts that may be reasonably necessary or appropriate to effectuate and perform the provisions of this Agreement and such transactions.

**7.12    Effectiveness of this Agreement.**

Notwithstanding any provision herein to the contrary, this Agreement shall not be effective until consented to in writing by the Committee, the Futures Representative, the Equity Committee, the Sealed Air Indemnified Parties, and the Fresenius Indemnified Parties which consent shall be provided on or before the entry of Approval Order.

IN WITNESS WHEREOF, the undersigned Parties have executed this Settlement Agreement as of the Execution Date.

**FOR EACH OF THE DEBTORS (conditioned upon the entry of the Approval Order)**

By: _____

Name: _____

Title: _____

**THE SCOTTS COMPANY LLC (conditioned upon the entry of the Approval Order)**

By: _____

Name: _____

Title: _____

**<u>Exhibit A</u>**

**Form of Approval Order**