UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                        . Case No. 01-01139 (JKF)
                              .
W. R. GRACE & CO.,            .
                              . 5414 U.S. Steel Tower
                              . 600 Grant Street
                              . Pittsburgh, PA 15222
          Debtors.           .
                              . July 30, 2009
. . . . . . . . . . . . . . . 11:57 a.m.

TRANSCRIPT OF TELEPHONIC MOTION HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:              Kirkland & Ellis, LLP
                              By:  DAVID BERNICK, ESQ.
                                   BARBARA HARDING, ESQ.
                                   JANET BAER, ESQ.
                                   LISA ESAYIAN, ESQ.
                                   CRAIG BRUENS, ESQ.
                                   BRIAN STANSBURY, ESQ.
                              200 East Randolph Drive
                              Chicago, IL  60601

                              Kirkland & Ellis, LLP
                              By:  THEODORE FREEDMAN, ESQ.
                                   CHRISTOPHER GRECO, ESQ.
                                   DEANNA BOLL, ESQ.
                                   RASHAD W. EVANS, ESQ.
                                   MARC LEWINSTEIN, ESQ.
                                   MAGALI LEE, ESQ.
                              Citigroup Center
                              153 East 53rd St.
                              New York, NY  10022

Audio Operator:               Cathy Younker


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609)586-2311 Fax No. (609) 587-3599**

**APPEARANCES (Contd'):**

For the Debtors:                Pachulski, Stang, Ziehl &Jones
                                By:  JAMES O'NEILL, ESQ.
                                        KATHLEEN MAKOWSKI, ESQ.
                                919 North Market Street
                                17th Floor
                                Wilmington, DE  19899-8705

                                Reed Smith LLP
                                By:  JAMES RESTIVO, ESQ.
                                435 Sixth Avenue
                                Pittsburgh, PA  15219

For Official Committee:   Caplin & Drysdale, Chartered
of Asbestos Personal     By:  PETER LOCKWOOD, ESQ.
Injury Claimants:          BERNARD BAILOR, ESQ.
                                NATHAN FINCH. ESQ.
                                WALTER SLOCOMBE, ESQ.
                                JAMES WEHNER, ESQ.
                                One Thomas Circle, NW
                                Washington, D.C.  20005

                                Caplin & Drysdale, Chartered
                                By:  RITA TOBIN, ESQ.
                                375 Park Avenue
                                New York, NY  10152

For the Unsecured        Stroock & Stroock & Lavan
Creditors' Committee:    By:  KENNETH PASQUALE, ESQ.
                                  ARLENE KRIEGER, ESQ.
                                LEWIS KRUGER, ESQ.
                                180 Maiden Lane
                                New York, NY  10038-4982

For Official Committee    Duane Morris LLP
of Unsecured Creditors:  By:  MICHAEL LASTOWSKI, ESQ.
                                1100 North Market Street, Ste 1200
                                Wilmington, DE  19801-1246

For the Property          Bilzin Sumberg Baena Price &
Damage Committee:        Axelrod, LLP
                                  By:  MATTHEW KRAMER, ESQ.
                                  TARA TREVORROW, ESQ.
                                200 South Biscayne Boulevard
                                Suite 2500
                                Miami, FL  33131

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (Contd'):**

| | |
|---|---|
| For the Ad Hoc Committee of Equity Sec. Holders: | Dewey & LeBoeuf, LLP<br>By:  JENNIFER WHITENER, ESQ.<br>125 West 55th Street<br>New York, NY  10019 |
| For the Future Claimants Representatives: | Orrick, Herrington & Sutcliffe, LLP<br>By:  ROGER FRANKEL, ESQ.<br>     KATE ORR, ESQ.<br>RICHARD WYRON, ESQ.<br>Washington Harbour<br>3050 K Street, N.W.<br>Washington, D.C.  20007 |
| For Maryland Casualty and Zurich Intl.: | Connelly Bove Lodge & Hutz, LLP<br>By:  JEFFREY WISLER, ESQ.<br>The Nemours Building<br>1007 North Orange Street<br>Wilmington, DE  19899 |
| | Eckert Seamans Cherin & Mellott, LLC<br>By:  EDWARD LONGOSZ, II, ESQ.<br>     LAURA STOVER, ESQ.<br>1747 Pennsylvania Avenue, N.W.<br>Suite 1200<br>Washington, D.C.  20006 |
| For Sealed Air: | Skadden, Arps, Slate, Meagher & Flom, LLP<br>By:  DAVID TURETSKY, ESQ.<br>     JAN BAKER, ESQ.<br>One Rodney Square<br>Wilmington, DE  19801 |
| Co-counsel to Libby Claimants: | Cohn, Whitesell & Goldberg, LLP<br>By: DANIEL C. COHN, ESQ.<br>    CHRISTOPHER CANDON, ESQ.<br>101 Arch Street<br>Boston, MA  02110 |
| | Lewis, Slovak & Kovacich<br>By:  JON HEBERLING, ESQ.<br>     TONY LEWIS, ESQ.<br>725 Third Avenue North<br>Great Falls, MT  59403 |

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (Contd'):**

For the Bank Lenders:        Landis Rath & Cobb, LLP
                                         By:  RICHARD S. COBB, ESQ.
                                              KERRI KING MUMFORD, ESQ.
                                              JAMES GREEN, JR., ESQ.
                                         919 Market Street
                                         Wilmington, DE  19801

                                         Paul Weiss Rifkind Wharton
                                           & Garrison, LLP.
                                         By: DANIEL BELLER, ESQ.
                                             SARAH HARNETT, ESQ.
                                             MARGARET PHILLIPS, ESQ.
                                             REBECCA ZUBATY, ESQ.
                                         1285 Avenue of the Americas
                                         New York, NY  10019

For Continental
Casualty Company:                        Ford, Marrin, Esposito,
                                         Witmeyer & Gleser, LLP
                                         By: ELIZABETH DeCRISTOFARO, ESQ.
                                         Wall Street Plaza, 23rd Floor
                                         New York, NY  10005-1875

For Official Committee                   Dies & Hile, LLP
of Asbestos Property                     By:  MARTIN DIES, ESQ.
Damage Claimants:                        1601 Rio Grande, Suite 330
                                         Austin, TX  78701

                                         LECG
                                         By:  ELIZABETH DEVINE, ESQ.

For Various Claimant                     Stutzman, Bromberg, Esserman &
Firms:                                      Plifka
                                         By:  DAVID J. PARSONS, ESQ.
                                              SANDER L. ESSERMAN, ESQ.
                                         2323 Bryan Street
                                         Suite 2200
                                         Dallas, TX  75201

For Firemen's Fund:                      Stevens & Lee, P.C.
                                         By:  JOHN DEMMY, ESQ.
                                         1105 North Market Street, 7th Fl.
                                         Wilmington, DE  19801

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (Contd'):**

For Fireman's Fund:            Stevens & Lee
                               By:  DAVID R. BEANE, ESQ.
                               111 North Sixth Street
                               Reading, PA  19603

For Owens-Illinois:            McCarter & English
                               By: KATHARINE MAYER, ESQ.
                               Renaissance Centre, 405 N. King St.
                               Wilmington, DE  19801

For Asbestos Property          Scott Law Group
Damage Claimants:              By:  DARRELL SCOTT, ESQ.
                               1001 East Main Street, Suite 500
                               Sevierville, TN  37864

For National Union Fire        Zeichner Ellman & Krause, LLP
Insurance Co.:                 By:  MATTHEW RUSSELL, ESQ.
                                    ROBERT GUTTMANN, ESQ.
                                    MICHAEL DAVIS, ESQ.
                               575 Lexington Avenue
                               New York, NY  10022

For the Future                 Orrick, Herrington & Sutcliffe, LLP
Claimants                      By:  DEBRA FELDER, ESQ.
Representatives:                    JOSHUA CUTLER, ESQ.
                                    JONATHAN GUY, ESQ
                               Washington Harbour
                               3050 K Street, N.W.
                               Washington, D.C.  20007 For

For Federal Insurance          Cozen O'Connor
Company:                       By:  JACOB C. COHN, ESQ.
                                    ILAN ROSENBERG, ESQ.
                               1900 Market Street
                               Philadelphia, PA  19103

                               Cozen O'Connor
                               By:  JEFFREY WAXMAN, ESQ.
                               Chase Manhattan Centre
                               1201 North Market Street
                               Wilmington, DE  19801

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (Contd'):**

| | |
|---|---|
| For Allstate Insurance: | Cuyler Burk, LLP<br>By:  ANDREW K. CRAIG, ESQ.<br>Parsippany Corporate Center<br>Four Century Drive<br>Parsippany, NJ  07054 |
| For W.R. Grace: | W.R. Grace<br>By: WILLIAM CORCORAN, ESQ.<br>    MARK SHELNITZ, ESQ.<br>    PAUL NORRIS, ESQ.<br>7500 Grace Drive<br>Columbia, MD  21044 |
| For State of Montana<br>Department of<br>Environmental Quality: | Womble Carlyle Sandridge & Rice<br>By:  FRANCIS MONACO, ESQ.<br>     MATTHEW WARD, ESQ.<br>222 Delaware Avenue<br>Suite 1501<br>Wilmington, DE  19801 |
| For State of Montana: | Christensen, Moore, Cockrell,<br>  Cummings & Axelberg, P.C.<br>By:  DALE R. COCKRELL, ESQ.<br>Two Medicine Building<br>160 Heritage Way, Suite 104<br>Kalispell, MT  59904 |
| For Official Committee<br>of Asbestos Personal<br>Injury Claimants: | Anderson Kill & Olick<br>By:  ROBERT M. HORKOVICH, ESQ.<br>1251 Avenue of the Americas<br>New York, NY  10020-1186<br><br>Campbell & Levine<br>By:  MARK T. HURFORD, ESQ.<br>800 North King Street<br>Suite 300<br>Wilmington, DE  19701 |
| For CNA: | Goodwin Procter, LLP<br>By:  DANIEL GLOSBAND, ESQ.<br>     BRIAN MUKHERJEE, ESQ.<br>Exchange Place<br>Boston, MA  02109-2881 |

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (Contd'):**

| | |
|---|---|
| For CNA: | Goodwin Procter, LLP<br>By:  MICHAEL S. GIANNOTTO, ESQ.<br>901 New York Avenue, NW<br>Washington, DC |
| For Grace Certain<br>Cancer Claimants: | Montgomery, McCracken, Walker<br>  & Rhoads, LLP<br>By:  NATALIE D. RAMSEY, ESQ.<br>300 Delaware Avenue, Ste. 750<br>Wilmington, DE  19801 |
| For David T. Austern,<br>the Future Claimants'<br>Representative: | Phillips, Goldman & Spence, P.A.<br>By:  JOHN C. PHILLIPS, ESQ.<br>1200 North Broom Street<br>Wilmington, DE  19806 |
| | Tre Angeli, LLC<br>By:  JOSEPH RADECKI, ESQ. |
| For David T. Austern: | Piper Jaffray & Co.<br>By:  JASON SOLGANICK |
| For the Property<br>Damage Committee: | Ferry Joseph & Pearce, P.A.<br>By:  THEODORE TACCONELLI, ESQ.<br>824 Market Street, Suite 19899<br>Wilmington, DE  19899 |
| For Ford, Marin,<br>Esposito, Witmeyer<br>& Gleser: | Ford, Marrin, Esposito, Witmeyer &<br>  Gleser<br>By:  SHAYNE SPENCER, ESQ.<br>Wall Street Plaza<br>New York, NY  10005 |
| For Official Committee<br>of Asbestos Property<br>Damage Claimants: | Brandi Law Firm<br>By: THOMAS BRANDI, ESQ.<br>      TERENCE D. EDWARDS, ESQ.<br>44 Montgomery St., Suite 1050<br>San Francisco, CA  94104 |
| For the State of CA,<br>Dept. of Gen. Services: | Hahn & Hessen, LLP<br>By:  CHRISTINA J. KANG, ESQ.<br>488 Madison Avenue, 14th Fl.<br>New York, NY  10022 |

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (Contd'):**

| | |
|---|---|
| For Baron & Budd, et al.: | Hogan Firm Attorneys at Law<br>By:  DANIEL K. HOGAN, ESQ.<br>1311 Delaware Avenue<br>Wilmington, DE  19801 |
| For the PD Committee: | Speights & Runyan<br>By:  DANIEL SPEIGHTS, ESQ.<br>     ALAN RUNYAN, ESQ.<br>     MARION FAIREY, ESQ.<br>200 Jackson Avenue, East<br>Hampton, SC  29924 |
| For Anderson Memorial Hospital: | Kozyak, Tropin & Throckmorton, PA<br>By:  JOHN KOZYAK, ESQ.<br>     DAVID L. ROSENDORF, ESQ.<br>2525 Ponce de Leon, 9th Floor<br>Miami, FL |
| For Scotts Company: | Vorys, Sater, Seymour & Pease, LLP<br>By:  TIFFANY COBB, ESQ.<br>     ROBERT J. SIDMAN, ESQ.<br>52 East Gay Street<br>Columbus, OH  43216 |
| For Official Committee of Asbestos Property Claimants: | Richardson Patrick Westbrook & Brickman, P.C.<br>By:  EDWARD J. WESTBROOK, ESQ.<br>174 East Bay Street<br>Charleston, SC  29401 |
| | Hamilton, Rabinovitz & Alschuler<br>By:  FRANCINE RABINOVITZ, ESQ.<br>26384 Carmel Rancho Lane, Suite 202<br>Carmel, CA  93923 |
| | Conway Del Genio, Gries & Co, LLC<br>By:  GREGORY BOYER, ESQ. |
| | Lieff, Cabraser, Heinmann & Bernstein<br>By:  ELIZABETH J. CABRASER, ESQ.<br>275 Battery Street, Suite 3000<br>San Francisco, CA  94111 |

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (Contd'):**

| | |
|---|---|
| For Official Committee<br>of Asbestos Property<br>Claimants: | Pryor Cashman LLP<br>By:  RICHARD LEVY, ESQ.<br>410 Park Avenue<br>New York, NY  10022 |
| | Riker, Danzig, Scherer, Hyland<br>  & Perretti, LLP<br>By:  CURTIS PLAZA, ESQ.<br>One Speedwell Avenue<br>Morristown, NJ  07962 |
| For W.R. Grace: | WILLIAM SPARKS, ESQ.<br><br>DAVID SIEGEL<br>PAUL NORRIS<br>RICHARD FINKE<br>STUART KOVENSKY |
| For Lehman Brothers: | Lehman Brothers<br>By:  ANDREW CHAN |
| For Dow Jones<br>News Wires: | Dow Jones News Wires<br>By:  PEG BRICKLEY |
| For Citadel Investment<br>Group: | Citadel Investment Group<br>By:  ASHOK VASVANI |
| For Murray Capital<br>Management | Murray Capital Management, Inc.<br>By:  MARTI MURRAY |
| For ERISA: | Lowenstein Sandler PC<br>By:  IRA LEVEE, ESQ.<br>65 Livingston Avenue<br>Roseland, NJ  07068 |
| For Morgan Stanley<br>Senior Funding, Inc.: | Katten, Muchin, Rosenman LLP<br>By:  NOAH HELLER, ESQ.<br>     MERRITT PARDINI, ESQ.<br>     JEFF FRIEDMAN, ESQ.<br>575 Madison Avenue<br>New York, NY |

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (Contd'):**

For Morgan Stanley
Senior Funding, Inc.:        Edwards Angell Palmer & Dodge LLP
                                By: ROBERT CRAIG MARTIN, ESQ.
                                919 North Market Street
                                Wilmington, Delaware 19801

For Her Majesty the
Queen in Right of
Canada:                 Office of the Attorney General
                                By:  JACQUELINE DAIS-VISCA, ESQ.

For Bank of America:       Richards, Layton & Finger, P.A.
                                By:  JASON MADRON, ESQ.
                                One Rodney Square
                                920 N. King Street
                                Wilmington, DE 19899

For PD/FCR:               ALAN RICH, ESQ.

For Loan Maker/Long Acre:  Pepper Hamilton
                                By:  JAMES C. CARIGNAN, ESQ.
                                500 Grant Street, 50th Floor
                                Pittsburgh, PA

For Seaton Ins. Co.:       Drinker Biddle & Reath, LLP
                                By:  MICHAEL F. BROWN, ESQ.
                                    JEFFREY BOERGER, ESQ.
                                One Logan Square
                                18th & Cherry Streets
                                Philadelphia, PA  19103

For Arrowwood Indemnity
f/k/a Royal Indemnity:     Wilson, Elser, Moskowitz, Edelman
                                  & Dicker, LLP
                                By: CARL PERNICONE, ESQ.
                                New York, NY 10019

                                Bifferato, Gentilotti, Biden
                                & Balick, LLC
                                By:  GARVAN McDANIEL, ESQ.
                                800 N. King Street
                                Wilmington, DE  19899

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (Contd'):**

| | |
|---|---|
| For Arrowwood Indemnity f/k/a Royal Indemnity: | O'Melveney & Meyers, LLP<br>By:  TANCRID SCHIAVONI, ESQ.<br>Times Square Tower, 7 Times Square<br>New York, NY  10036 |
| For JD Capital: | JD Capital<br>By:  RYAN DUFFY, ESQ.<br>     TAI CURION |
| For the Equity Committee: | Kramer, Levin, Naftalis & Frankel, LLP<br>By:  DOUGLAS MANNAL, ESQ.<br>     DAVID BLABEY, ESQ.<br>1177 Avenue of the Americas<br>New York, NY  10036<br><br>Kramer Levin Naftalis & Frankel<br>By:  GREGORY HOROWITZ, ESQ.<br>919 Third Avenue<br>New York, NY  10022 |
| For the Blackstone Group: | The Blackstone Group<br>By:  BRIAN BRESNAHAN |
| For the U.S. Trustee: | United States Trustee Department<br>By:  DAVID KLAUDER, AUSA<br>833 Chestnut Street<br>Suite 500<br>Philadelphia, PA  19107 |
| For Fair Harbor Capital LLC: | Fair Harbor Capital, LLC<br>By:  FRED GLASS |
| For Fresenius Medical Care Holdings, Inc.: | McDermott, Will & Emery<br>By:  DAVID S. ROSENBLOOM, ESQ.<br>227 West Monroe Street<br>Chicago, IL  60606 |
| For Century Indemnity: | White & Williams, LLP<br>By:  JOSEPH GIBBONS, ESQ.<br>1800 One Liberty Place<br>Philadelphia, PA  19103 |

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (Contd'):**

For Loeb Partners:              Paul Weiss Rifkind Wharton
                                   & Garrison, LLP.
                                By:  ANDREW ROSENBERG, ESQ.
                                1285 Avenue of the Americas
                                New York, NY  10019

For Kaneb Pipe Line             Fulbright & Jaworski
Operating Partnership,          By:  STEVE PEIRCE, ESQ.
et al.:                         300 Convent Street
                                Suite 2200
                                San Antonio, TX  78205

                                Smith, Katzenstein & Furlow, LLP
                                By:  KATHLEEN MILLER, ESQ.
                                800 Delaware Avenue
                                Wilmington, DE  19899

                                Gilbert & Renton, Inc.
                                By:  ROBERT GILBERT

For Bloomberg, LLP              Bloomberg, LLP
                                By:  STEVEN H. CHURCH

For Travelers:                  Simpson, Thacher & Bartlett
                                By: ELISA ALCABES, ESQ.
                                   MARY BETH FORSHAW, ESQ.
                                425 Lexington Avenue
                                New York, NY  10017

For Anderson Hospital:          BUD FERRY, ESQ.

For Certain London Market       Mendes & Mount, LLP
Companies:                      By:  ALEXANDER MUELLER, ESQ.
                                750 Seventh Avenue
                                New York, NY  10019-6829

                                Tucker Arensberg, P.C.
                                By:  MICHAEL A. SHINER, ESQ.
                                1500 One PPG Place
                                Pittsburgh, PA  15222

**J&J COURT TRANSCRIBERS, INC.**

APPEARANCES (Contd'):

For Everest Reinsurance          Marks, O'Neill, O'Brien &
Co. & McKinley Ins. Co.:            Courtney, P.C.
                                 By:   JOHN D. MATTEY, ESQ.
                                       BRIAN KASPRZAK, ESQ.
                                 913 North Market St., Suite 800
                                 Wilmington, DE  19801

                                 Crowell & Moring, LLP
                                 By: MARK D. PLEVIN, ESQ.
                                     LESLIE A. EPLEY, ESQ.
                                     LESLIE DAVIS, ESQ.
                                 1001 Pennsylvania Avenue, NW
                                 Washington, DC  20004

For Borrowers Committee:         Zuckerman Spaeder LLP
                                 By:  VIRGINIA GULDI, ESQ.
                                 1800 M. Street, N.W. Suite 1000
                                 Washington, D.C.  20036

For SNSF Railway Co:             Pepper Hamilton, LLP
                                 By:  LINDA CASEY, ESQ.
                                 3000 Two Logan Square
                                 18th & Arch Streets
                                 Philadelphia, PA  19103

                                 Pepper Hamilton, LLP
                                 By: JOHN H. SCHANNE, ESQ.
                                 Suite 5100
                                 1313 Market Street
                                 Wilmington, DE 19899

For Fee Auditor:                 Warren H. Smith & Associates, PC
                                 By:  WARREN H. SMITH, ESQ.
                                      BOBBIE RUHLANDER, ESQ.
                                 325 North St. Paul, Suite 1250
                                 Dallas, TX  75201

For Hartford Financial           Wilmer, Cutler, Pickering, Hale
Service Group:                      & Dorr LLP
                                 By:  NANCY MANZER, ESQ.
                                 399 Park Avenue
                                 New York, NY  10022


                    **J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (Contd'):**

For Serengeti:               Vinson & Elkins, LLP
                             By:  ARI BERMAN, ESQ.
                             Trammell Crow Center
                             2001 Ross Avenue, Suite 3700
                             Dallas, TX  75201

For RBS Greenwich Capital:   RBS Greenwich Capital
                             By:  JEFFREY FARKAS, ESQ.

For Garlock Sealing          Morris James, LLP
Technologies:                By: BRETT FALLON, ESQ.
                             500 Delaware Avenue, Suite 1500
                             Wilmington, DE  19801

                             Robinson, Bradshaw & Hinson
                             By:  RICHARD C. WORF, ESQ.
                             101 North Tyron Street, Suite 1900
                             Charlotte, NC

For General Insurance:       Sonnenschein Nath & Rosenthal LLP
                             By:  ROBERT MILLNER, ESQ.
                             Sears Tower, Suite 7800
                             233 S. Wacker Drive
                             Chicago, IL

For Goldman Sachs & Co.:     Goldman Sachs & Company
                             By:  ALEXANDER THAIN

                             - - -

1          UNIDENTIFIED MALE SPEAKER:  Hello.

2          COURT CLERK:  Hi, this is Cathy.

3                    (Pause)

4          COURT CLERK:  The Judge is ready to begin.

5          THE COURT:  Good afternoon.  This is the matter of

6    W.R. Grace, Bankruptcy Number 01-1139.  I have list of

7    participants, everyone is participating by phone.

8          Elisa Alcabes, Janet Baer, Bernard Bailor, Daniel

9    Beller, David Bernick, David Blabey, Deanna Boll, Michael

10   Brown, James Carignan, Linda Casey, Richard Cobb, Tiffany Cobb,

11   Daniel Cohn, Jacob Cohn, Andrew Craig, Michael Davis, Elizabeth

12   DeCristofaro, John Demmy, Brett Fallon, Nathan Finch, Richard

13   Finke, Mary Beth Forshaw, Roger Frankel, Theodore Freedman,

14   Jeff Friedman, Michael Giannotto, Daniel Glosband, James Green,

15   Robert Guttmann, Jonathan Guy, Barbara Harding, Robert

16   Horkovich, Mark Hurford, Stuart Kovensky, John Kozyak, Arlene

17   Krieger, Peter Lockwood, Edward Longosz, Kathleen Makowski,

18   Nancy Manzer, Robert Craig Martin, Kathleen Miller, Robert

19   Millner, Francis Monaco, Alex Mueller, Kerri Mumford, James

20   O'Neill, Kate Orr, Merritt Pardini, Kenneth Pasquale, Steven

21   Peirce, Carl Pernicone, Margaret Phillips, John Phillips, Mark

22   Plevin, Joseph Radecki, Alan Rich, Andrew Rosenberg, I'm not

23   sure what the first name is, I think it's Ilan Rosenberg, David

24   Rosendorf, Alan Runyan, Michael Shiner, Walter Slocombe, Jason

25   Solganick, Daniel Speights, Shayne Spencer, Brian Stansbury,

**J&J COURT TRANSCRIBERS, INC.**

1  Theodore Tacconelli, Alexander Thain, Tara Trevorrow, David

2  Turetsky, Matthew Ward, James Wehner, Jennifer Whitener,

3  Jeffrey Wisler, Richard Worf, Richard Wyron and Rebecca Zubaty.

4          Mr. Bernick, Ms. Baer, who's --

5          MR. BERNICK:  Yes, it's David Bernick, thank you,

6  Your Honor, for Grace.

7          There have been a series of conferences that we've

8  had on a variety of issues and I think that a lot of progress

9  has been made and the order in which I think at least we would

10 like to proceed is by taking up, following pretty much the

11 sequence that we followed during the hearing the other day and

12 taking up first discrete issues and then closing off with the

13 generic issues that are associated with the case management

14 order and I know that the Libby people also want to talk about

15 order of proof, as they've indicated in the call that just

16 concluded.  Mr. Lewis has some things to take up there.

17         So, our proposal would be to basically follow through

18 in the same order, and the same items that occupied the agenda

19 during the omnibus and then get to, at the end, the case

20 management order and the order of proof to the extent that the

21 Libby people want to talk about that.  That would be our

22 proposal.

23         We have circulated, I think to Your Honor, and

24 everybody else, the amended, fourth amended case management

25 order that we're proposing.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  Yes, sir, go ahead.

2          MR. BERNICK:  Okay.  With respect to what was item

3   four, which was the deposition of Mr. Shelnitz, I think where

4   we left at at the hearing was that we were going to have an

5   order issued by Your Honor that would, essentially, cross

6   reference the transcript, for the guidance that Your Honor

7   offered about the scope of that deposition.

8          Mr. Speights is not prepared, doesn't want to have an

9   order, but we, frankly, don't care all that much, so it's

10  really up to Your Honor.  We're prepared to proceed with the

11  deposition under the guidance of the transcript without the

12  need for an order, but at the end of the day that's up to Your

13  Honor to determine.  So, we just wanted to let you know where

14  it stood.

15         THE COURT:  All I need is something on the record

16  that adjudicates this matter so that it's concluded and I can

17  terminate it on the docket sheet.  So, I do need either a

18  withdrawal of the motion or I need some form of order.  If it's

19  just an order that says the matter was addressed on the record,

20  that's sufficient, but I need something.

21         MR. BERNICK:  I don't know if Mr. Speights is on,

22  that's fine with us.

23         MR. SPEIGHTS:  I don't mind that type of order, Your

24  Honor, and I will not go into -- if we can just have that type

25  of order, I will not go into what developed it and that would

**J&J COURT TRANSCRIBERS, INC.**

1  be fine.

2          MR. BERNICK:  Then we'll circulate it to you, Dan,

3  and we'll get it done, Your Honor.

4          THE COURT:  All right.

5          MR. BERNICK:  Nothing further on item six.  Item five

6  was the first of the Libby issues, which I think we probably

7  just ought to proceed in that order.

8          With respect to item five, that related to

9  reconsideration of Your Honor's order with regard to the

10  medical files and the commitment that we made there was to

11  provide a clarifying order which confirmed that Your Honor's

12  prior order, as to which reconsideration was sought, did not

13  address or did not preclude testimony by Mr. Whitehouse as a

14  treating physician, Dr. Whitehouse as a treating physician.  We

15  just haven't gotten around to drafting that order, but we will.

16  I don't think that there's any issue or controversy on that.

17          THE COURT:  All right.

18          MR. BERNICK:  That then brought us to the remainder

19  of the Libby items.  And without getting into the pretrial

20  schedule which would affect the <u>Daubert</u> brief and the order of

21  proof, I think that there were three remaining areas, maybe

22  two, three remaining areas.  Let me take up the easiest one

23  first, which is the Libby claimants' request to file some

24  supplemental objections to the plan.

25          There were four such supplemental objections, three

**J&J COURT TRANSCRIBERS, INC.**

1 of them related to the medical criteria.  We don't have an

2 objection to their supplementing their objections, in that

3 regard, because we've gone back and determined that the issues

4 that are raised by those objections previously were raised and

5 have been the subject of discovery.  So, there's really no

6 prejudice and we will agree to the filing of those supplemental

7 objections.

8          The fourth objection was an objection that was

9 triggered by the Fresenius settlement.  The Fresenius

10 settlement basically requires the inclusion of language about

11 the effect of receiving benefits under the trust and the

12 ability to make claims or take other action with respect to

13 Fresenius.  That is -- we don't believe that that objection is

14 timely, it's way out of time, and there's really no excuse for

15 lack of -- for the lack of timeliness there, so we continued to

16 object to that fourth supplemental objection.

17          I don't know if the ACC or the FCR has anything

18 further to add to that.

19          THE COURT:  The ACC?

20                    (No audible response)

21          THE COURT:  Okay, Creditors' Committee?

22          UNIDENTIFIED MALE SPEAKER:  No, Your Honor.

23          UNIDENTIFIED MALE SPEAKER:  Nothing for the FCR, Your

24 Honor.

25          MR. FINCH:  Your Honor, I do have something to say.

1 | The ACC does have something to say, Your Honor.

2 |          THE COURT:  All right.

3 |          MR. FINCH:  Basically, the reason this is incredibly

4 | out of time is that Mr. --

5 |          THE COURT:  Mr. Finch.

6 |          MR. FINCH:  -- Heberling and through his lawyer, Mr.

7 | Cohn, have been members of the ACC since its inception.  We

8 | settled the case with Fresenius in 2003, they were provided

9 | with the settlement agreements, the settlement was up for

10 | approval by the Court.  Every settlement agreement that has

11 | been approved by the Court has the same provisions in it that

12 | the Libby claimants now complain about.  It was up in 2003, it

13 | was up in 2005.  The very first draft of the plan that was

14 | filed with the Court has these same provisions in it.  As you

15 | well know, that draft was filed sometime, the joint plan

16 | between the debtor and the current plan proponents, was

17 | sometime in late 2008, so there's absolutely no excuse for them

18 | not raising this objection until after the deadline for making

19 | a plan confirmation objection.

20 |          THE COURT:  All right.

21 |          MR. BERNICK:  We would join in those arguments, Your

22 | Honor.

23 |          THE COURT:  Anyone else before I turn to Mr. Cohn?

24 |                    (No audible response)

25 |          THE COURT:  Okay.  Mr. Cohn.

1                MR. COHN:  Hello, Your Honor, good morning, or good

2    afternoon.  Can you hear me?

3                THE COURT:  Yes, sir, thank you.

4                MR. COHN:  Okay, thank you.  There are two issues

5    that are really here and they need to be separated.  The first

6    is the issue as to whether this is timely asserted as a plan

7    objection and we would submit that's the only issue.  The

8    question of whether it's a valid plan objection or whether the

9    objection went away by reason of this Court's earlier order

10   approving the Fresenius settlement, is a whole other matter and

11   we're not seeking to have that adjudicated right now, and it's

12   not appropriate for adjudication, because that goes to whether

13   it's a proper -- whether the objection should be sustained.

14   But as to whether it may be asserted, Your Honor, as to that,

15   we have been consistent in asserting this objection.

16               In fact, I think you would probably even recall the

17   argument that was made as far back as the disclosure statement

18   stage when we raised the issue as to whether a plan may

19   properly include a requirement that claimants were to, in order

20   to receive a distribution from the trust, whether as a

21   condition for that distribution, they could be required to give

22   a release.  And you said as to the claimants who had not voted

23   in favor of the plan, that you thought that was an improper

24   provision.

25               So, you'll recall that this has been in our plan

1 objection since we first raised plan objections at the

2 disclosure stage of the case.  And we've had to file several

3 objections since then and it's been there, and really, Your

4 Honor, through error on our part, it just got left out of this

5 final submission which is our final objection.  And we promptly

6 discovered the error, made this motion for this to be allowed

7 and would respectfully request that it be allowed on the basis

8 that it really only resulted in several days of delay and no

9 prejudice from anybody's perspective since this issue has been

10 before the Court ever since last fall.

11         THE COURT:  When was the deadline to file and when

12 did you file this objection?

13         MR. COHN:  We filed the supplement on July 10th.

14         MS. BAER:  Your Honor, the objection deadline under

15 the CMO was May 20th.

16         MR. COHN:  Well --

17         THE COURT:  Okay, Mr. Cohn, that's nearly two

18 months.

19         MR. COHN:  No, but I'm sorry, Your Honor, I just

20 don't think that that is --

21         MR. BERNICK:  Dan, I'm losing you, or is -- are you

22 still there?

23         MR. COHN:  I apologize, I'm not speaking because,

24 unfortunately, you know, we were on the telephone until right

25 up until the court hearing, until this hearing, Your Honor,

1  with Grace trying to work out some of these issues and I did

2  not have a chance to --

3         MR. BERNICK:  Maybe, Your Honor, rather than taking

4  time, unless you've got -- do you have it right there now,

5  Dan?

6         MR. COHN:  I do not.

7         MR. BERNICK:  Yes.  Because --

8         MR. COHN:  I'll probably just come back to this in a

9  little while, Your Honor.

10        MR. BERNICK:  Yeah, yeah, well, I wouldn't have a

11 problem with that if we just want to move it to the back end.

12        THE COURT:  That's fine.

13        MR. BERNICK:  Okay.  So, the remaining Libby issues,

14 then, are as follows.  We have the question of the timing of

15 expert discovery and I think where we've come out, we have

16 talked about this, but as to the timing of expert discovery,

17 Your Honor will recall that there was discussion on Monday of

18 the -- what we believe to be the late receipt of x-rays and

19 HRCT scans relating to Dr. Whitehouse's testimony and also the

20 supplemental expert report of Dr. Moolgavkar.

21        There was further -- the problem of essentially

22 getting closure with respect to what materials experts would

23 rely upon in furnishing those materials to us.  So, where we've

24 come out is as follows.  That we will agree to the

25 supplementation that they can, in fact, supplement the

1  Moolgavkar report, that we will agree not to raise, on

2  timeliness grounds, an objection to the submission of the x-ray

3  material in the HRCT scans, that they will agree to make Dr.

4  Moolgavkar available for a supplemental deposition on a timely

5  basis, so it doesn't affect the Daubert briefing, which means

6  that the deposition -- we'd need a transcript with respect to

7  the deposition, you know, at least by, say the 10th of August,

8  which means that the deposition has to take place fairly

9  promptly.  That they would further agree that the record --

10 that is that no further reliance materials will be furnished or

11 used beyond those reliance materials that were furnished to the

12 plan proponents as of Monday of this week and no further

13 opinions will be offered or worked on.  That we, in turn, will

14 respond, through our experts, to these materials as well as any

15 other materials that Dr. Whitehouse testified to some things in

16 his deposition, that we will do so by of a supplemental expert

17 report for our experts, it's probably just going to be Dr.

18 Weill or maybe Dr. Moolgavkar, and that we will then timely

19 make Dr. Weill available for his deposition and we're shooting

20 to get that done sometime in the next couple or three weeks.

21      So, that with that agreement in place, effectively,

22 the discovery with respect to medical issues, insofar as Libby

23 will be concerned, will be subject to an agreed schedule and

24 will come to a conclusion with the deposition of Dr. Weill,

25 which we hope will take some time by mid- August.

1              THE COURT:  Okay.  Mr. Cohn.

2              MR. HEBERLING:  This is Jon Heberling in Montana, I

3  think I'll respond on that.

4              THE COURT:  All right.

5              MR. HEBERLING:  That is agreeable and as we also have

6  just gotten a large report from Dr. Weill and that's not part

7  of this agreement, we have to review it and see, you know, if

8  we can even make a response and what position we'll take, but

9  as to Dr. Weill responding to the new material from Dr.

10  Moolgavkar, the agreement is just fine.

11              MR. BERNICK:  Well, that's -- Your Honor, with due

12  respect, we just got done with a telephone call and that was

13  never raised and its not appropriate.  Dr. Weill's work has

14  continued because the other side's work has continued, and if

15  there's going to be an effort to preclude the use of Dr.

16  Weill's report, then we will be filing a motion to strike,

17  based upon the fact that the materials that Dr. Weill has had

18  to respond to were late produced.  His deposition was

19  specifically postponed --

20              MS. HARDING:  And, David, I believe that the Libby

21  claimants had agreed, had already agreed --

22              THE COURT:  Pardon me, pardon me.

23              MS. HARDING:  -- to Dr. Weill's report.

24              THE COURT:  Ms. Harding, are you on a -- wait.

25              MR. BERNICK:  No, no, no, no, no.

1          THE COURT:  Folks, I'm not going to participate in

2    this back and forth, I'm sorry.  Ms. Harding, are you on a

3    speaker phone?  Anybody who is speaking, please pick up the

4    handset, do not use the speaker phone.  And I'm not going to

5    participate in this back and forth.  If you folks need time to

6    continue the negotiation about this, then we'll terminate the

7    call and you go forward and do it.  I spent nearly two and a

8    half hours with you on a case management order last week and

9    I'm not getting into it again.  As far as I'm concerned, you

10   can live and die by the case management order.

11         MS. HARDING:  I apologize, Your Honor.  I was on a

12   speaker phone and I apologize for interrupting.  I just wanted

13   to make sure that all parties recalled that the Libby claimants

14   had already agreed to the late filing of Dr. Weill's report to

15   respond to Dr. Whitehouse.

16         MR. HEBERLING:   No, the Libby claimants did not

17   agree to that, it's a 561 page report, we just got last Friday

18   and it's very extensive, something that they've been working on

19   for years and we can't possibly respond very quickly.  So, we

20   have a major problem and we reserve the right to make a motion

21   regarding that report.

22         MR. BERNICK:  Well, Your Honor, we don't need to go

23   back and forth, but that report was sent to them on Friday, it

24   is not 500 pages long, it's just a lot of backup.  And this is

25   a matter of tremendous urgency because literally the whole

1 schedule now is affected by the lateness of the work that Dr.

2 Whitehouse has done.  And so, if we can't reach agreement, then

3 we're going to, respectfully, request the Court to have an

4 expedited hearing on this matter because literally the whole

5 schedule is going to come apart.

6        We specifically discussed with them the additional

7 work that Dr. Weill was doing in light of the Libby claimants'

8 ongoing work, and that I was prepared to address that at the

9 hearing with a whole time line of how late it's been, and I was

10 prepared to address it.  But, I don't know what else to say.

11 We've got a major, major problem and it's not one of our

12 creations.

13        THE COURT:  Well --

14        MR. HEBERLING:  Dr. Weill's report goes to pulmonary

15 function test results that they obtained back in 2006 and later

16 than that.  And it's very, very extensive, it's very late.  It

17 doesn't relate to any of the recently submitted materials which

18 were film, so we do have a major disagreement and I think we're

19 going to have to talk about it.

20        MR. BERNICK:  Okay, well, and I disagree with the

21 predicate statements, Your Honor, but the fact of the matter

22 remains that this is now a major issue.

23        THE COURT:  All right.  Well, I don't know what you

24 want me to do about it at this point.  I don't have any

25 motions.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. BERNICK:  I don't think there's anything to be --

2     I think there's probably, at the end of this call, first of

3     all, we no longer have any kind of agreement, with respect to

4     either the supplemental objection, because the supplemental

5     objection is dealt with, in part, in Dr. Weill's report.  So,

6     we're going to have to withdraw our agreement on the

7     supplemental objection, that is not timely filed, and we will

8     insist on adherence to the case management order which did say

9     May the 20th.

10          We will further be moving to preclude any and all

11    testimony by Dr. Whitehouse that's outside the four corners of

12    his reports, which will have the effect of, basically,

13    mitigating the need to do most of -- do some of the due work

14    that we would have to do and we'll have to put that on.

15          And with respect to the agreement that we have, I

16    think, on -- I'm not sure that there's anything else that's

17    affected by it, I think that that would be that, but I think we

18    just take that up at the end of the call and have a further

19    discussion at that point, which will then mean that the next

20    issue to discuss with respect to the Libby claimants has to do

21    -- or the remaining issues, have to do with individual

22    discovery from individual claimants.

23          And the first issue there is, Mr. Cohn indicated to

24    the Court that they want to have a record on the basis of which

25    they can make their arguments that claimants have vested rights

1  in the non-product policies.  And I think where we have come

2  out on that is that the Libby claimants want to makes sure that

3  those policies are in evidence at the time of the confirmation

4  hearing, and they further -- we further propose that in lieu of

5  -- that is, Grace further proposed, that in lieu of having a

6  bunch of claimants come in and testify live, that they could

7  submit declarations from five or six claimants and we would not

8  stipulate to their admissibility, nor would we object on

9  hearsay grounds to their using declarations.  That's something

10 that developed at the end of our call just a few minutes ago

11 and I don't know that the FCR has had an opportunity to focus

12 on that, but that would be our proposal for resolving this

13 issue.

14          THE COURT:  Okay.  FCR have a position first?

15          MR. GUY:  We concur with the debtors, Your Honor.

16          THE COURT:  Mr. Guy?

17          MR. GUY:  Yes, Your Honor, we concur with the

18 debtors.

19          THE COURT:  All right.  The ACC?

20          MR. BERNICK:  Nate, you've got to take yourself off

21 mute.

22          THE COURT:  Mr. Finch?

23                  (No audible response)

24          THE COURT:  Anybody for the ACC?

25          MR. LOCKWOOD:  Your Honor, it's Peter Lockwood.  It's

1  fine with the ACC.

2          THE COURT:  Okay.  Anybody have an objection to it?

3                     (No audible response)

4          THE COURT:  Okay, Mr. Cohn?

5          MR. COHN:  Yes, Your Honor, that was what was

6  discussed.  I'm not sure, I don't think that the number of five

7  or six is necessarily right, but it is going to be a number

8  more like five or six than the thousands that we were talking

9  about.  But, we'll use his representative example as opposed to

10  trying to be comprehensive.

11         MR. BERNICK:  Yes.  And, again, the agreement not to

12  object is not an adoption of -- this is solely for purposes of

13  their asserting their claim of rights and policies.  It is not

14  in any way, shape or form an agreement that these declarations

15  are admissible for purposes of establishing what their actual

16  exposure was.  We are clear on that, Dan?

17         MR. COHN:  I am not clear on that, at all.

18         MR. LEWIS:  Well, this is Tom Lewis.  I was -- Your

19  Honor, good morning.  We did agree to that, but I did not

20  understand, Mr. Bernick, are you saying you reserve your right

21  to object to that?

22         MR. BERNICK:  No, I'm saying, I don't want it used

23  for purposes, for example, of addressing other issues, like

24  whether the settlements were -- you know, what the value of the

25  settlements were.  This is purely for purposes of establishing

**J&J COURT TRANSCRIBERS, INC.**

1 their vested rights or making their vested rights argument with

2 respect to insurance policies.

3 　　　　MR. LEWIS:  That was our agreement and we'll honor

4 that agreement.

5 　　　　THE COURT:  All right, that's fine.

6 　　　　MR. BERNICK:  Okay?  Okay.  The next thing, Your

7 Honor, was individual claimant testimony.  Your Honor indicated

8 that they would be permitted to call four or five witnesses to

9 testify -- claimants to testify regarding their settlements.

10 　　　　THE COURT:  No, what I think I said is, that they're

11 to produce that many for deposition, that I was reserving

12 whether or not it was relevant, but I didn't want to foreclose

13 that issue now.

14 　　　　MR. BERNICK:  Right.  Okay, fine.  So, they've agreed

15 to identify them by Monday, which is fine with us.  There is

16 not an agreement as to the scope of what they would testify to,

17 and maybe Your Honor simply will reserve on that after the

18 depositions are done.  There is agreement that they will talk

19 about their settlements, but there is disagreement on whether

20 they will also get into the work conditions.

21 　　　　Your Honor will recall that that's something that we

22 objected to, for a variety of reasons.  I'm happy to have that

23 ride so that Your Honor can determine that later on.  The only

24 thing that I'll flag, though, is that, you know, to the extent

25 that they are permitted to talk about their work conditions, we

1 would then need to call witnesses in response, and that's part

2 of the problem, is that we then end up having a mini-proceeding

3 on what their work conditions really were.

4         THE COURT:  I thought that what I said was that I

5 thought that was appropriate for expert testimony, that that

6 would be something that would be factored into whether or not

7 the class is appropriately treated overall, that any specific

8 individual's work history would be part of the claim that they

9 may submit, perhaps, to the trust, but I don't understand how

10 that's relevant to what I need to determine.  I think it's

11 going to be the subject of expert testimony, and that would be

12 one factor that the experts may consider.

13         MR. BERNICK:  Okay.  That's fine with us.

14         MR. LEWIS:  There's one other thing we agreed to,

15 that those people would be -- this is Mr. Lewis again, Your

16 Honor, I apologize.  We agreed that those people would be made

17 available during the week of the 17th of August and that was

18 before Mr. Bernick got on the phone call and I believe that was

19 acceptable to everybody.

20         MR. BERNICK:  Well, then I certainly would not get in

21 the way.  Barbara, is that okay?

22         MS. HARDING:  Yeah, I couldn't -- did Tom say the

23 20th of August, before the 20th August?  I couldn't understand

24 what you said, Tom.

25         MR. LEWIS:  I said during the week of August 17th.

1          MS. HARDING:  During the week of -- yes, that's fine.

2          MR. LEWIS:  So, we'd give enough room in there so to

3   accommodate people's schedules.

4          MS. HARDING:  Right.

5          MR. BERNICK:  Okay.  That's fine.  And so that's

6   really kind of more or less a status report to Your Honor on

7   that, but we've got agreement on that.

8          With respect to the issue then, of the settlements,

9   and lawyer testimony and the related question of production of

10  documents, relating to settlements, that, of course, is going

11  to implicate the same kinds of privilege issue that Your Honor

12  will recall consumed an enormous amount of time in connection

13  with the estimation case.

14         Your Honor will remember that we had the deposition

15  of Peter Krause and the back and forth on that and, again,

16  consistent with my prior dealings with Mr. Lewis, he's been

17  very thoughtful on this and says that they're considering what

18  their position is with respect to the testimony of lawyers and

19  the production of documents, and they're not really prepared to

20  address that today and he's asked to have until the close of

21  business on Tuesday to let us know what his position is.  And

22  we think that that is a reasonable -- well, we're anxious to

23  get the thing resolved because days count, we understand that

24  if there's any way to obviate this issue, that would be

25  desirable.

1          So, at least from the debtors' point of view, we're

2    comfortable with the idea that we'll know, (a) what lawyers are

3    going to testify, (b) what they're going to testify about, and

4    (c) with respect to the production of documents, what their

5    position is on that.  And then finally, I forgot to say, it is

6    our view that these individuals that are going to be deposed,

7    should be deposed on the east coast because they are lawyers

8    who have submitted to the jurisdiction of the court, and that's

9    also something that I'm presuming that they're going to be

10   taking up internally.  So, we're comfortable with the idea of

11   their getting back to us on those issues by the close of

12   business on Tuesday.  Obviously, if the matter is not resolved,

13   then we're probably going to need a little bit of Your Honor's

14   time to deal with it on a prompt basis, because it affects the

15   immediate schedule.

16          THE COURT:  All right, that's fine.

17          MR. BERNICK:  Is that okay with the Libby claimants

18   and everybody else?

19          MR. LEWIS:  Yes, Your Honor, that is satisfactory

20   with us.  There are privilege issues involved, particularly

21   with respect to pending claims, that causes concern and so we

22   need to rethink that.  We had originally thought, and I don't

23   want to take a lot of the Court's time, we had originally

24   thought we could testify about fairly benign subjects

25   concerning the amounts of the settlement and what we provided

**J&J COURT TRANSCRIBERS, INC.**

1  W.R. Grace as a basis for the settlement, but I think our

2  disclosure, our witness disclosure, does go beyond that and it

3  may trigger privilege considerations, and so we will rethink

4  that and we will advise by the close of business day on

5  Tuesday, if that's satisfactory to the Court.

6            THE COURT:  That's fine.

7            MR. BERNICK:  Okay.  So, I think that that's all on

8  Libby, with the exception of what we've just talked about,

9  which we are going to have to come back to at the foot of

10  docket here.  And I was going to propose then talking about

11  Item 11 on the agenda, which was discovery with respect to the

12  lenders next.  Is there anything else, though?  I want to make

13  sure that there's nothing else insofar as the Libby folks are

14  concerned, that we have to talk about, other than the matters

15  we've just discussed and the pretrial order.

16            MR. GUY:  Your Honor, this is Jonathan Guy for the

17  FCR.

18            THE COURT:  Go ahead.

19            MR. GUY:  Our point with the Libby claimants is

20  simply that they have these claims, we cannot agree to the

21  validity of any of the claims, but I don't think any of that is

22  being affected by anything that Mr. Bernick has said, at all.

23            THE COURT:  All right.

24            MR. HEBERLING:  And this is John Heberling in

25  Montana.  We do have other Libby issues in the context of the

1 pretrial conference discussion.  Presumably, that takes place

2 later?  We're talking about motions right now, right?

3         MR. BERNICK:  Yes.  As I said at the outset, Mr.

4 Herberling, our proposal was to go through the items of the

5 agenda that were different, other than the pretrial order, and

6 leave the pretrial order till the end.  We haven't finished

7 yet.

8         MR. HEBERLING:  Okay.  I was not on at that time,

9 sorry.

10        MR. BERNICK:  Sorry.

11        MR. LEWIS:  To be -- we had difficulty getting on the

12 conference call so we missed the beginning of pretrial and I

13 think that prompted Mr. Heberling's question, by way of

14 explanation to the Court.

15        THE COURT:  Okay, that's fine.  Thank you.

16        MR. BERNICK:  With respect to the lenders, the

17 remaining issue outstanding there was discovery and we've got

18 agreement with respect to today from Mr. Shelnitz's deposition,

19 Ms. Zilly's deposition.  The remaining issues relate to three

20 witnesses.  Mr. Freedgood, you remember, Your Honor will

21 remember that Mr. Freedgood had a declaration in connection

22 with the impairment, the Phase 1 proceedings.  They have agreed

23 to make Mr. Freedgood available for a deposition.  The only

24 issue really there is timing, and I've sent a further proposal

25 to Mr. Pasquale, but because I haven't heard back, I'm prepared

1  to let that ride, but we do need to have him deposed soon.  So,

2  I'm not going to burden the Court with a discussion on the

3  logistics Mr. Freedgood's deposition.

4         With respect, however, to the other two witnesses, we

5  do, apparently, have a different view.  Your Honor will recall

6  that in connection with the objection process; that is, our

7  objection to their claimed entitlement to default interest,

8  that that matter, in the course of being litigated as an

9  objection last year, really encompassed all issues.  That is to

10 say, the briefs covered all issues, including solvency,

11 including the reasonableness of the interest rate.  It's in the

12 plan.

13        In connection with that litigation, they identified a

14 couple of different experts, including Mr. Ordway.  Mr. Ordway

15 submitted a declaration and his deposition was taken.

16        We've received no expert report, no other declaration

17 with respect to the issue of solvency and the reasonableness of

18 the plan interest rate, other than Mr. Ordway's declaration.

19        At the time that the issue came up about the scope of

20 Phase II, the statement was made, I think at the very first

21 time that that issue came up, Your Honor asked -- we asked what

22 the scope of the testimony or the evidence would be, and Mr.

23 Kruger indicated to the Court, stated to the Court, that they

24 wanted to use the record of the estimation proceeding as it was

25 at the time that it was suspended and nothing further.  And we

1  asked for written confirmation of that.  The written

2  confirmation came through and there was no indication that

3  anybody else would be addressing solvency, other than -- or

4  we'd be addressing anything other than Mr. Ordway.  There were

5  fact witnesses, obviously.

6        We then received the pretrial order submission from

7  the lenders, but for the first time indicated that Mr. Frezza

8  now was going to address solvency and we had a very active

9  discussion before the omnibus proceeding on Monday, about the

10  scope of Mr. Frezza's testimony because I was concerned about

11  the impact that this late disclosure would have.  And we

12  reached agreement at that time that Mr. Frezza would submit an

13  expert report by Monday and Your Honor will recall that I said,

14  this is only -- we're agreeable to this only because they've

15  described informally what the scope of Mr. Frezza's opinion

16  would be and it's handleable.

17        We've just learned that Mr. Frezza is now also going

18  to be addressing the reasonableness of the interest rate and

19  this is different from what was described on Monday and it now

20  raises a very significant issue about whether, in fact, we're

21  going to be able to complete our work in response to Mr. Frezza

22  in time for, first of all, anything that overlaps with Phase I,

23  because we're scheduled to argue impairment in Phase I at the

24  omnibus on August the 24th, and further, that we can get Ms.

25  Zilly's work done.  She's scheduled to be deposed on the 20th.

1          So, I relied pretty carefully on the representations

2 that were made about the scope of Mr. Frezza's testimony on

3 Monday, and it's now changed.  That's issue one.  They've

4 indicated the report will come in on Monday and then I can see

5 what's there, and that I no longer have any real assurance of

6 what it's going to contain because the picture has changed over

7 time.

8          I'm happy to have Mr. Frezza's report come in on

9 Monday to see what it covers, but this could affect the

10 schedule or Ms. Zilly's deposition at the completion of her

11 work and I want to flag that to the Court and to say that we're

12 not agreeable to simply taking Mr. Frezza's opinion on Monday

13 and saying, well, everything is okay, and let's march forward

14 at confirmation.  We'll just have to see what the report says.

15 And that's kind of a status report on that.  I can't really say

16 anything else.

17          The related question is Mr. Ordway.  Mr. Ordway was

18 deposed, they apparently have decided that Mr. Ordway is not

19 satisfactory to them, so they've got Mr. Frezza from the same

20 firm addressing, effectively, the same issues.  And, we don't

21 believe that that's appropriate.  We believe that Mr. Ordway

22 made very significant statements in his deposition.  So we want

23 to put Mr. Ordway's testimony before the Court.  They've

24 refused to call him live.  So, we either subpoena him, or we're

25 going to use the deposition.

1          I don't know if there's any remaining objection to

2  our using the deposition in the event that he's beyond the

3  subpoena power of the Court.  So, I'll simply ask that

4  question.

5          THE COURT:  I don't know who you're asking the

6  question of.

7          MR. BERNICK:  I'm asking the question of the lenders'

8  counsel, Mr. Pasquale, Mr. Cobb, anybody else who is on for the

9  lenders.

10          MR. PASQUALE:  Your Honor, it's Ken Pasquale for the

11  committee.  I'm sorry, I hear an echo, can you hear me, Your

12  Honor?

13          THE COURT:  Yes.  Thank you.

14          MR. PASQUALE:  Okay.  First of all, I'm quite

15  surprised Mr. Bernick is raising any of these issues on this

16  morning's call since we have been in discussions about

17  scheduling and all of the issues and to raise it now, when

18  we've not finished our conferring on it, I think is -- I'm

19  quite surprised.

20          That said, Mr. Frezza's report will be filed on

21  Monday, that was the agreement mentioned in court earlier in

22  the week.  If it contains, and I specifically wrote to Mr.

23  Bernick this morning saying we would consider the point that he

24  raised and has now described to the Court, if it includes

25  information beyond what we discussed last week, we've already

1 told Mr. Bernick it will be nothing new, it will be exactly the

2 same information he's seen before.  So, how that impacts the

3 schedule is beyond me, but we'll cross that bridge next week.

4 As to Mr. Ordway, he did not previously testify to

5 solvency.  The record is clear on that.  Mr. Bernick can, of

6 course, subpoena Mr. Ordway if he wants him at trial.  We have

7 -- we will not be calling him at trial, and our point is, we

8 will not produce him now for a deposition because the dates for

9 all 1129 issues have long passed.  I mean, what's good for the

10 goose is good for the gander.

11 Mr. Bernick can try his case anyway he pleases and we

12 will cooperate, as we need to, and take positions as we need

13 to, but I'm just quite surprised any of this is before the

14 Court today.

15 MR. BERNICK:  Capstone is the financial advisor, I

16 understand it, to the committee.

17 MR. PASQUALE:  That's correct.

18 MR. BERNICK:  Okay.  So he subjected him and he's

19 submitted for deposition and the financial advisor to the

20 committee is subject to the jurisdiction of the court.  So, I

21 mean, I don't even want to have to subpoena him.  I'm just

22 simply saying, we're going to use his deposition if you're not

23 agreeable to that, then you should produce him.

24 MR. PASQUALE:  Your Honor, Mr. Bernick can try his

25 case any way he wants and the rules are the rules.  We're not

1 -- you want him live, he'll be there live.

2        MR. BERNICK:  No, I -- then I would like the Court to

3 order Mr. Ordway to submit to a deposition so that we don't

4 have to go through the process of filing subpoenas and motions,

5 to get the testimony from the committee's own financial

6 advisor.

7        MR. PASQUALE:  Well, Your Honor --

8        THE COURT:  Well, if they're not going to produce him

9 as a witness, I mean, if they're not producing him as a

10 witness, why do they need to submit him for a deposition?

11        MR. BERNICK:  Because we believe that his testimony

12 is -- the testimony of their financial advisor on this issue is

13 highly germane.

14        THE COURT:  Well, then subpoena him.

15        MR. BERNICK:  We don't have to subpoena their

16 financial advisor.

17        THE COURT:  Well, then you can subpoena him.

18        MR. PASQUALE:  I don't even need -- Your Honor, it's

19 Ken Pasquale, I don't a subpoena.  If Mr. Bernick is telling me

20 he wants him in court for the confirmation hearing, we will

21 make efforts to have him there.

22        MR. BERNICK:  Thank you very much.

23        MR. PASQUALE:  But this is separate from a deposition

24 and I should add, Your Honor, that Mr. Ordway was already

25 deposed on the same --

**J&J COURT TRANSCRIBERS, INC.**

1          MR. BERNICK:  I'm not --

2          MR. PASQUALE:  Let me finish, Mr. Bernick.  Was

3 already deposed on these issues.  The deposition from the prior

4 proceeding can be used now.  The issue that we've had, Your

5 Honor, is that Mr. Bernick wants to use the deposition, but

6 would not agree that the report on which he was questioned at

7 that deposition should also be included in the record presented

8 to the Court.

9          MR. BERNICK:  Of course.  It's a declaration, it's a

10 self-serving declaration and it's hearsay.

11          MR. PASQUALE:  Well, that's the basis of the dispute,

12 Your Honor.

13          MR. BERNICK:  Well, you know, Your Honor, if they're

14 prepared to either produce him live, or have the deposition

15 come in, we then can argue about whether the declaration comes

16 in.  I'm satisfied that they're undertaking to have him appear

17 live or to have his deposition be available and we'll take up

18 the issue of declaration later on.

19          THE COURT:  All right, look.  This is not the time, I

20 think, for me to be making rulings about who can testify and to

21 what.  I thought we were going to be addressing scheduling

22 orders?

23          MR. BERNICK:  Yes.  Yes, Your Honor, that's true and

24 the only reason that these things have been raised is that the

25 scheduling is down to some very, very specific things and we're

1  now at the end of that list.  But that's the only reason.  We

2  have been very diligent in trying to reach out to all

3  constituencies who have issues, in advance of this call, in

4  order to get resolution of these matters and I'm not being

5  critical at all of Mr. Pasquale, because he's been very

6  responsive and very timely.  But that's the reason why there

7  have been other issues that have come up here, where we

8  appeared to be having negotiations because not all the

9  constituencies were prepared to make commitments before this

10  call commenced, and I apologize for that, Your Honor.

11          THE COURT:  Okay.

12          MR. PASQUALE:  Your Honor, I do -- it's Ken Pasquale,

13  again.  I do want to respond to one other thing Mr. Bernick

14  said and that's in discussing Mr. Freedgood's deposition. I did

15  propose a date later in August.  Mr. Freedgood is on vacation

16  for most of the month.  Mr. Bernick requested that we try to

17  set that up for early next week and I am trying to arrange

18  that, I just don't know if that's going to be feasible, but I

19  am trying.

20          That said, from some of the communications with Mr.

21  Bernick, I get the impression he's intending to use that

22  deposition at the impairment argument, that the Court set

23  earlier this week.  And, I just wanted to raise the point that

24  that argument is just argument, and whether or not the

25  Freedgood deposition takes place in time, we would object to

1  any additional evidence being presented in that argument.  That

2  record is closed.

3         MR. BERNICK:  The fact of the matter is, I'm fine --

4  I'm fine -- Freedgood is being deposed for purposes of Phase

5  II.  But I didn't want to be in a position where if Freedgood

6  were to be deposed in connection with Phase II, his testimony

7  at that deposition could be used to say that whatever gets said

8  in the arguments at the omnibus, has been altered by Mr.

9  Freedgood's testimony.  If you're prepared to have the

10 deposition only be usable for Phase II, I'm prepared to have

11 the record rest where it is, Your Honor, which is with his

12 declaration for purposes of impairment.

13        THE COURT:  I think the record is closed with respect

14 to the evidence.  I don't recall setting anything further for

15 an evidentiary hearing.

16        MR. BERNICK:  Right.

17        MR. PASQUALE:  Thank you, Your Honor.

18        MR. BERNICK:  Okay.  Well, we're agreeable to that.

19        So, then I think that leaves us with the case

20 management order.  Your Honor should have a copy of the case

21 management order.  There are a couple -- there's only, I think,

22 one change, or a couple changes that are pertinent to the same

23 issue that stem from discussions that have taken place since

24 this order was transmitted to Your Honor.

25        If you take a look at Page 2 -- do you have that

1 order there, proposed order, Your Honor?

2          THE COURT:  I have a black line version.

3          MR. BERNICK:  Okay.  Well, I can work with the black

4 line here.

5          THE COURT:  I have the other but -- oh, okay, I do

6 have the other, too, Mr. Bernick.

7          MR. BERNICK:  Yeah, it may be just a little bit

8 easier because I don't think the black line is going to be

9 germane to  you.

10          THE COURT:  All right, okay.

11          MR. BERNICK:  If you take a look at Page 2,

12 two-thirds of the way down you have Daubert motions, August the

13 14th.  And with respect to the Daubert motions, the Libby

14 folks, we have agreed, would get more time to respond than what

15 is currently provided.  So, we will stay with the August 14th

16 date for Daubert motions, sticks, but on the next page on the

17 opposition to the Daubert motions, which you see is August the

18 28th, we're agreeable that the Libby claimants can submit their

19 opposition on September the 3rd.  And then we will, because

20 that's the date for our reply that you see later on, the reply

21 as to the Libby claimants will be submitted as soon as we can,

22 in time for the argument which is set for the 8th.  And I don't

23 know how else to do it.  The Libby people are concerned, we

24 think that they got plenty of time as it is, but in an effort

25 to get this resolved, we've tried to give them more time on

1 responding to our motion.  So we would probably drop a footnote

2 from the August 28th date and the September 3rd date to

3 indicate the Libby claimants have until September the 3rd for

4 their opposition if it --

5          THE COURT:  Well, I mean, that's fine, except for the

6 fact that I'm not sure if I get, you know, a hundred page

7 opposition, for example, and then get a reply, just so we're

8 all looking at the calendar dates, the 3rd is Thursday, this

9 hearing is to start on the 8th which is Tuesday, and the 7th is

10 a holiday.

11          MR. BERNICK:  Yes.  Your Honor is -- we understand

12 that and we raised exactly the same point, but the Libby people

13 are of the view that they don't -- there are four witnesses

14 that are at issue, Dr. Frank, Dr. Molgaard, Dr. Whitehouse and

15 then there's one more, who is the last one, Barb, I can't

16 remember?

17          MS. HARDING:  Dr. Spear.

18          MR. BERNICK:  Dr. Spear.  And, I know that we're

19 going to have -- well, the motion is going to pertain to at

20 least three of the four.  Those are the only ones.  But -- and

21 they've all been deposed.

22          The Libby people, though, say that they'd like to

23 have our Daubert motions earlier, so that they have more time

24 to respond to them.  I can't get the Daubert motions earlier

25 because the Daubert motions also will depend upon our work,

1 which gets back to the same issue that we were talking about

2 before.  And there's just an enormous amount -- the trial

3 briefs are due on the 7th, so we literally have a week of

4 running room between the trial briefs and the Daubert motions.

5 I could get the Libby Daubert motions maybe by the 12th of

6 August, but they wanted the Daubert motions the early part of

7 August, which is just not feasible.  That's the conundrum that

8 we're in.

9          I'm happy, Your Honor, if we do the Daubert motions

10 with respect to Libby by say, the 12th of August.  And they

11 could then respond by the 28th of August, which is two weeks,

12 we would stick by the schedule.  So, that's an offer to try to

13 resolve this.  But we can't move our date for our motion up any

14 earlier than that.

15          THE COURT:  Okay.  Mr. Cohn.

16          MR. COHN:  Yes, Your Honor.  We can -- that would not

17 be enough time, although we do appreciate that Mr. Bernick is

18 willing to file the motion two days earlier, because what that

19 would let us do is to move up the deadline for our reply two

20 days earlier, which would be September 1st.  And then in that

21 case, his reply would be probably feasible on September 4th,

22 which is a Friday, and then that just allows two more days for

23 the whole process to --

24          MR. BERNICK:  Your Honor, this is really -- Your

25 Honor, why don't you just tell us what you want and we'll do

1 it?  I don't want to negotiate --

2        THE COURT:  I don't know what's wrong with the

3 schedule the way it is.

4        MR. COHN:  What's wrong with the schedule is, is that

5 Grace has been working for years, really, on these <u>Daubert</u>

6 motions and they now want to dump them on us in the middle of

7 August, give us only two weeks to respond, which is not -- it's

8 just not possible to -- that's just not a fair time to respond,

9 given the importance of the expert witnesses to our case.  The

10 other things that are --

11       THE COURT:  You already have their reports and know

12 what they're going to say.  I mean, I don't know all of the

13 particulars because I haven't seen any, but I can certainly

14 imagine what part of the debtors' objection on the <u>Daubert</u>

15 standards are going to be and what the Libby response is going

16 to be.  I mean, this isn't unlike the other issues that have

17 come up with respect to expert testimony and especially with

18 respect to Dr. Whitehouse already.

19       MR. BERNICK:  I mean, the fact of the matter is, a)

20 we haven't been working on the <u>Daubert</u> motions, for this case,

21 for years, but we did work on the <u>Daubert</u> motions in connection

22 with Dr. Whitehouse, in connection with the criminal case, and

23 very many of exactly the same issues are present here.  So,

24 this is really a question of updating things.  There's not some

25 -- this is not new information.  Dr. Whitehouse is not an

1  epidemiologist, can't testify to epidemiology.  That's the

2  essence of it.

3           And Dr. Frank can't solve that problem for him and

4  Dr. Molgaard has basically admitted that he can't solve the

5  problem either.  So, this is not like it's rocket science.

6           MR. HEBERLING:  Well, we -- this is Jon Heberling in

7  Montana.  We suggested that, perhaps, the Daubert motions come

8  in stages.  Since the Dr. Whitehouse issues have been on the

9  table for a considerable period of time, perhaps you could file

10  that motion next week and we could work on it and respond.

11           MR. BERNICK:  No, we can't because we can't even get

12  a resolution with you on what our witnesses say in response.

13           MR. HEBERLING:  Dr. Whitehouse has published two

14  articles in descriptive epidemiology and I feel like I have to

15  respond a little bit.  And the epidemiology of studies is

16  thoroughly discussed by Dr. Molgaard and we can respond on

17  that, but we have to know what Grace is arguing before we can

18  respond.  So, we really need more time, you know.  We're just

19  Libby and we don't have a lot of resources here.  We need more

20  time.

21           THE COURT:  All right.  If the debtor can produce the

22  Daubert motions by August 12th, if you can do them on a --

23  well, there isn't much time between now and August 12th anyway,

24  if you can get any of them filed sooner, and to the extent that

25  they're actually done sooner, that would be helpful, but the

**J&J COURT TRANSCRIBERS, INC.**

1  outside deadline is August 12th.  I will accept a brief --

2  pardon me, a response to those motions from Libby by September

3  1st, which I think should be sufficient time, if the debtor can

4  do these August 12th, that gives you three full weeks.  So,

5  September 1st, and then whenever the debtor can get yours in,

6  can you do it by the 4th?  If not, I'm not going to see --

7         MR. BERNICK:  I -- you know, we'll just make happen

8  whatever we can make happen, Your Honor.  We'll work with those

9  dates.

10        THE COURT:  All right, as to Libby only, then, those

11 will be the dates for the Daubert motions.

12        MR. BERNICK:  Right.  Now with respect to everything

13 else, we had a fairly lengthy call yesterday to -- actually it

14 was quite efficient, everybody was very responsive to go

15 through these dates.  Your Honor has seen them.  You know,

16 there's obviously a carve-out for paragraph four that talks

17 about what the schedule does not cover, but the sequence of

18 matters in the schedule is pretty straightforward. It's the

19 traditional thing.  We have -- essentially it's driven by trial

20 briefs on August the 7th, which is the date that we're working

21 -- have been working with.

22        We have the exhibits to be exchanged by the 10th of

23 August and a footnote that indicates the process that will be

24 followed, that got extensive discussion and I think was --

25 worked out well.  And then you can see that, you know, get

1 | deposition designations, <u>Daubert</u> motions, counters to the
2 | designations and the like.

3 | We're still aiming at the same format for the
4 | submission of deposition designations to the Court, which is
5 | that Your Honor will get one transcript marked up with
6 | different colors to indicate whose designating what and also
7 | the objections, and that's kind of a paperwork nightmare, but
8 | it will, I think, greatly alleviate the burden on the court of
9 | trying to figure out who's designated what.

10 | And, then from that point forward, you know, I think
11 | it's really just very, you know, it's just basically following
12 | upon all those things.

13 | The order of witnesses would estimate a time for
14 | direct examination at the end of August, I'll come back to that
15 | in connection with -- well, we'll come back to that in a
16 | moment.

17 | Paragraph four is a carve-out that basically says
18 | there are other matters that are not really covered by the
19 | schedule. You've heard about Romanette I, which is discovery
20 | regarding solvency. We've worked through that separately.
21 | Romanette II deals with the issue that we just went back over
22 | and apparently have a problem with, but this Romanette doesn't
23 | resolve the issue of the completion of the Libby discovery, it
24 | simply says it's carved out. So, it's not addressed in this
25 | order, you know, Romanette II to IV is basically -- the

1  foreging schedule doesn't apply to this issue.

2  So, I don't think that that should change and I don't think

3  that Mr. Cohn had any issue with it yesterday.

4          Responses to any testimony offered by Heberling and

5  Thomas Lewis, same thing.  And, then we've got a bunch of

6  miscellaneous depositions that are scheduled, that are also

7  carved out and these are all -- they are being scheduled and

8  they are going to be proceeding.  Again, the deposition of

9  David Weill, we have to talk about and the like.

10          So, to the extent that the deposition designations

11  are due -- are necessary for depositions that are taken after

12  August the 10th, we can't follow the schedule that's set forth

13  at the table.  You see that Romanette V essentially says that

14  they just have -- the deposition designations have to be done

15  so that in any event the materials are submitted to you by the

16  August 25 date, which is the overall schedule.  And I think

17  that that's pretty much it.

18          With respect to the order of proof, we specified that

19  any submission to the Court is due on August the 31st.  That is

20  not to suggest that no work is being done on that.  The status

21  of that briefly, and I know that Mr. Lewis may want to address

22  this as well, is that we made a general proposal in court the

23  other day that Your Honor saw.  It proceeds by way of subject

24  matter and kind of leaves the more general stuff to the end.

25  That proposal has not been adopted by the other constituencies

1  at this point.  The plan proponents themselves need to figure

2  out exactly what we want to do.  We've received some other

3  proposals from other parties, including the express line

4  proposal which we can say right now that we don't want to do.

5  The express line proposal is, like the express line at the

6  supermarket where if you have less than ten items you go

7  through fast and while that might be convenient for the people

8  who are dealing with that, it will, to the extent that it

9  happens, create a major problem in getting this thing done.

10  So, we disagree with that, but we understand that it's a

11  proposal that's out there.

12          So, where we're at, and what we've said to everybody

13  on the call, and I think it's still the sensible way to

14  proceed, is that with respect to the order of proof, that we

15  have further opportunity to meet and confer in the next couple

16  of weeks, to see to what extent we can reach agreement.

17          And so, we would ask that the date in here of August

18  31 remain in place, which is not to say that we can't report

19  earlier, but it is to say that we ain't going to do it today,

20  and I think it's going to take some time to get done.

21          THE COURT:  All right.  What --

22          UNIDENTIFIED MALE SPEAKER:  Your Honor --

23          THE COURT:  My question, Mr. Bernick is, whether or

24  not the time to get an agreement with respect to the order of

25  proof shouldn't be before the next omnibus, so that in the

1  event that there is an issue, we can take it up at the next

2  omnibus.  I'm a little bit concerned about getting a report due

3  August 31st, frankly.  Even the CMO hasn't been negotiated too

4  easily.  So, it seems to me --

5          MR. BERNICK:  Okay.  So, we can put that down.

6  August -- I think that that's the 24th, Your Honor.

7          THE COURT:  Yes.

8          MR. BERNICK:  Yes, that's fine.  So, the order of

9  witnesses with estimated time of direct examination, August 24.

10         MR. LEWIS:  May it please the Court, this is Tom

11 Lewis.  May I be heard briefly on this matter?

12         MR. SPEIGHTS:  Your Honor, before Mr. Lewis is heard,

13 I just want to make it clear that there are, at least I have

14 objections to the CMO, we might also want to be heard on the

15 order of proof as well.  I'm happy to go before or after Mr.

16 Lewis, but before we get too far afield from the CMO, I want to

17 tell you that I do have some objections to it.

18         THE COURT:  To the order of proof, Mr. Speights, I'm

19 sorry, I couldn't hear you.

20         MR. SPEIGHTS:  I have objections both to the CMO and

21 to the schedule on the order of proof, although what you just

22 said may help alleviate my concerns about the order of proof.

23 But I do want to be heard on the proposed CMO.

24         THE COURT:  Okay.  Well, I think we should do that

25 first, before I get to the order of proof, so go ahead, Mr.

1 Speights.

2        MR. SPEIGHTS:  Thank you, Your Honor, and on behalf

3 on Anderson Memorial Hospital, I do object to the CMO.  I want

4 to take 30 seconds of history, I want to tell you what's wrong

5 with the CMO and tell you how it affects Anderson.

6        Just by way of history, Your Honor knows that the CMO

7 was negotiated back in November and was first entered back in

8 December, but did not apply to PD and then I objected to it

9 when it was later applied to PD and my objection was overruled

10 and I certainly understand that.  But the dates that are set

11 forth here -- and by the way let me say that this proposed CMO

12 came in by e-mail on Friday night, I think at 7:04 p.m., so

13 this is a very new document.  It was not on the agenda for

14 Tuesday, but I understand that the debtor wants some additional

15 dates and I'm happy to address those.  But this proposed CMO

16 also without any motion, proposes to change one or more of the

17 dates that had been in the previous CMO which has been amended

18 from time to time.

19        So, that's just history, you know.  We got a new CMO

20 on Friday night, after dealing with the CMO and all its

21 amendments since last November.

22        Secondly, Your Honor, I want to explain my concern.  I

23 was very interested to hear Mr. Bernick's concern about late

24 disclosures and late depositions, and how the debtor needs to

25 be protected and have more time once that occurs.  And built

into this CMO are protections for the debtors and I appreciate that.

Without giving you a detailed line item history of Anderson's frustration in dealing with the debtors' disclosures, essentially, Your Honor, back in May, we noticed the deposition of Mr. Shelnitz and we noticed the deposition of Dr. Florence, which we perceive as two important witnesses on the issue of disparate treatment and the issue of whether the plan was proposed on good faith.

With respect to Dr. Florence, I noticed him for June, the debtor, on its own, or in consultation with other parties, changed the deposition to July 5. I objected but I re-noticed his deposition for July 5, and then without consulting with me, the debtors, perhaps in agreement with others, changed the deposition to August 11. Consequently, I still have not had the opportunity to take Dr. Florence's deposition, I'm scheduled to do so on August 11th.

Then we get to Mr. Shelnitz, who as Your Honor knows, I view as a crucial witness on these issues. The debtors filed a motion for protective order, withdrew him from his 30(b)(6) designation, but then on -- a week or so before the hearing before you on Tuesday, they listed Mr. Shelnitz as a witness on a variety of subjects, including good faith.

So, I came to Wilmington and argued Mr. Shelnitz. During that hearing, Mr. Bernick represented that they had,

that morning, withdrawn Mr. Shelnitz to testify about good

faith.  When I challenged that, Mr. Bernick said no, they had

not done that yet, after being corrected by one of their

colleagues.  I went upstairs after the hearing and I found out

that, in fact, he had filed a supplement at 8:16 that morning,

in which he had reaffirmed that Mr. Shelnitz would be called as

a witness on good faith, both in the brief itself and the

attached witness list.

Now, I'm not saying that, Your Honor, to try to stir

up Mr. Bernick, he doesn't need stirring up, I'm sure.  I'm

saying that to show Your Honor that Anderson has, in good

faith, tried to get his discovery out of the way so it can

decided on what witnesses and what documents it needs to use.

Now, Mr Shelnitz is being -- I was told that Mr.

Shelnitz would not be available for depositions before August

18.  In fact, he was made available August 18 or 19 and I chose

August 19, out of the convenience of several people, some of

whom might be involved the next day in taking a deposition in

the northeast.

The reality of that, however, Your Honor, is that I'm

not going to have my disclosure, my discovery from the debtors

that I have been trying to get since May, until those two

depositions on August 11 and August 19th.

Now, specifically with respect to this new proposed

CMO, I want to tell you how that impacts what Anderson's

**J&J COURT TRANSCRIBERS, INC.**

1 position is.  Many of these provisions, obviously, are of no

2 consequence to them.

3        The fifth item down deals with the exchange of

4 exhibits which Mr. Bernick now has in there for August 10,

5 2009.  This is not a new item, this is an old item that the

6 debtors have now proposed be moved up by two weeks.  This item

7 has been provided for since the November or December 2008 CMO.

8 In May, it said the exhibits would be exchanged on August 25.

9        In addition, Your Honor, when you entered your order

10 of July 7, 2009, an order regarding Phase II pretrial

11 proceedings, you specifically provided for the identification

12 of exhibits, which I certainly understand, but you also

13 specifically provided, "the actual exhibits shall not be

14 submitted until the date set forth in the current case

15 management order".  And, Your Honor, the date set forth in the

16 current case management order was August 28 -- or August 25,

17 excuse me.  And I would object to moving that date up.  And I'm

18 not just objecting for technical reasons, but that's what the

19 CMO has provided for months, I'm objecting because I want to

20 take my two depositions.  If I get to take my two depositions

21 on the 11th and the 19th, I will meet the deadline of August

22 25th and I will know exactly what it is I'm trying to prove and

23 I may even be able to withdraw some exhibits.  Perhaps Mr.

24 Shelnitz will agree to some of the positions I'm taking.

25        In any event, I could be placed in the position of

**J&J COURT TRANSCRIBERS, INC.**

1 wanting to supplement our exhibit list for the same reason Mr.

2 Bernick explained today.  When you have late disclosures,

3 you've got to always leave that opportunity there, because you

4 don't know what the witness is going to say or the new

5 disclosures are going to say.

6           In addition, Your Honor, there are other deadlines

7 here that were in the original CMO, that I would, either by

8 having those changed to the 25th, or by certainly a recognition

9 that we may have to supplement, be protected on for the same

10 reasons that Mr. Bernick wants protection, we want protection,

11 we will live by the original CMO, but we want to state for the

12 record that once we take those two depositions, we may be

13 placed in the position of having to supplement.

14           THE COURT:  Okay.  Well what's the reason why the

15 August 25th date has been moved up?

16           MR. SPEIGHTS:  I don't know, Your Honor, but we

17 object to it being moved up.

18           MR. BERNICK:  Mr. Speights does know because he was

19 part of a conference call yesterday where this was all gone

20 over in detail.  It's relatively simple.

21           We have over 700 exhibits and it is critical that we

22 have enough time to go through all the exhibits, lodge

23 meaningful objections and understand what they are.  If we wait

24 until August the 25th, or literally on the eve of trial, and it

25 has the effect of creating not only last minute work, but of

61

1 complicating the task, I think for the Court.  So, for just

2 purely logistical reasons, number one, we thought that because

3 all the exhibits were to have been listed in the pretrial

4 submission, there's no reason not to have them circulated

5 amongst counsel what is now literally a month later.  That's

6 number one.  Number two.

7       In the course of looking through the pretrial exhibit

8 lists, there are many exhibits that we can figure out, in a

9 sense, that are not new, but there are other exhibits that we

10 can't figure out, in part, because they have very amorphous

11 titles and this actually includes exhibits that have been

12 listed by Anderson Memorial.

13       They listed declarations for a Mr. Lehman (phonetic)

14 and a Mr. Salomon (phonetic).  Mr. Salomon used to work for

15 Speights and Runyan, Mr. Lehman apparently is some ethics

16 expert.  And, they've listed these declarations.  There ere

17 other exhibits that have been listed by other parties that are

18 also ambiguous.  We can't figure out what they are, they may be

19 a stalking horse for expert work, or for testimony that we need

20 to know about now.  And for that reason as well, we ask that

21 the date be put down for August the 10th, so we don't have

22 surprises where there's new expert work or where there's new

23 actual testimony that's now being submitted in the form

24 purportedly of an exhibit.

25       We don't think that those exhibits are appropriate,

**J&J COURT TRANSCRIBERS, INC.**

1  we don't think that they're admissible, but we also don't want

2  to be in a position where somebody has argued or can argue that

3  somehow we're on notice of the fact of what their testimony is

4  going to be unless we actually do have notice.

5          So, for all those reasons, it's very, very important

6  that he have this August the 10th date.

7          Now, what Mr. Speights says about Mr. Florence and

8  Mr. Shelnitz is not really any kind of excuse.  Mr. Shelnitz's

9  documents to the extent that there are documents that are

10 germane to his testimony, and remember this is all subject to

11 Your Honor's guidance, that we're not going to be getting into

12 negotiation strategy or litigation strategy, they've been

13 produced.  If he wants to use them with Mr. Shelnitz, he can

14 disclose them as part of the overall exhibit list, he certainly

15 has them and if he has them, there's no reason why they can't

16 be listed on August the 10th and if he learns something

17 miraculously new, about a new document, I hate to say this,

18 this is the same thing that we went through in class

19 certification, once there's a deposition, once there's any kind

20 of discovery, the string never ends for Anderson Memorial.

21         So, we want the August 10th date to stick with

22 respect to Mr. Florence -- Dr. Florence -- Mr. Florence, that

23 would fit Mr. Florence.  He is only in Phase II for an

24 extremely limited purpose.  He's in Phase II to the extent that

25 we have an analysis that was done by him that's specific to

1  Libby, it's got nothing to do with Anderson Memorial, and he's

2  in Phase II as a rebuttal witness for matters relating to

3  estimation.

4        If Mr. Speights wants to take his deposition to

5  somehow establish discriminatory treatment, he's effectively

6  using Mr. Florence as his expert.  That is not an appropriate

7  use of Mr. Florence.  He's not Mr. Speights's expert, he's only

8  been tendered as an expert in this case, not as a fact witness

9  and he's only been tendered as an expert with respect to

10  estimation matters none of which included Mr. Speights.

11        So, I don't know what the rationale is for asking for

12  special treatment by virtue of Dr. Florence's deposition, but

13  that is why we have August the 10th, it is a critical date in

14  this process.

15        MR. SPEIGHTS:  Your Honor, this so transparent.

16  Number one, I'm in the position of simply wanting the Court to

17  keep in place an order that it's had in place now since last

18  December and which, as late as July 7, said that would stay in

19  place.  I'm not the one trying to change the case management

20  order on this point.  This is the last Friday night e-mail

21  where Grace is trying to move a deadline up two weeks.  And

22  what in reality is going on, they could add an Anderson

23  footnote just like they had a Libby footnote, concerning this

24  particular deadline, if nobody else objects, what Mr. Bernick

25  is doing and it's clear, he wants to accelerate his discovery

**J&J COURT TRANSCRIBERS, INC.**

64

1  against me, while at the same time he has delayed producing

2  witnesses for deposition which I've tried to take since May,

3  especially Mr. Shelnitz, which has been lifted as a witness for

4  the debtor.  And even Tuesday when I wanted it, he's not

5  available until August 19th or August 18.  I mean, all I want

6  is Your Honor to enforce this deadline that's there, and we

7  will comply with the deadline.  I have some other issues on the

8  language that he's now proposing, new language that he's

9  proposing, but I'm the one who's saying, we've got a deadline,

10  why cannot the debtor live with the deadline that it convinced

11  the Court it could live with and has lived with up until Friday

12  night at 7:04 p.m.?

13          THE COURT:  Well, it seems to me that Anderson is in

14  a somewhat unique position to other claimants in the case and,

15  frankly, Mr. Speights, I'm not aware that anybody else has an

16  objection to the change in that exchange of documents.  Does

17  anybody?

18          MR. BROWN:  Your Honor, this is Michael Brown.  I

19  don't have any objection to it, but one of the things that I

20  was thinking about, because we may have an interest in the

21  Shelnitz deposition, is if we could, after that deposition,

22  supplement to the extent that there were any exhibits that were

23  used in that deposition when we do the deposition designations

24  for that deposition.

25          THE COURT:  Well, that --

**J&J COURT TRANSCRIBERS, INC.**

1      MR. BERNICK:  This is all -- this is all -- we're now

2  going to get the list.  Shelnitz -- the whole idea of deposing

3  Shelnitz is a very -- this is the first I've now heard of it,

4  is a very, very dubious proposition and we have --

5      THE COURT:  Well, Mr. Bernick, it seems to me that to

6  the extent that a witness is going to be deposed after the

7  document production deadline and new documents show up, they

8  have to have an opportunity to submit them to the extent they

9  think they're relevant to their cases and that applies to the

10  debtor, too.  So, either move the Shelnitz deposition to before

11  August the 10th or else I'm going to permit a supplemental

12  designation of documents for any witness whose deposition is

13  after that initial deadline because I don't know how else to

14  take account of it.

15      MR. BERNICK:  I understand that, Your Honor, but it's

16  pretty simple in the sense that, you know, this is a Field of

17  Dreams.  If that exception is created, that will be a license

18  for people to come in after the deposition and say, oh, well,

19  he said this and now I want X.  The fact of the matter is that

20  Mr. Shelnitz's documents, the documents that are relevant to

21  this entire case from Grace, have been produced and nobody has

22  taken the position they haven't been produced.

23      THE COURT:  I think I said new documents, to

24  supplement.  So that the deadline as I see it can be August the

25  10th and parties can supplement with new documents to the

1 extent that the deposition, somehow or other, generates a new

2 document and that deposition is taken after August the 10th.

3 So, I think the deadline can be August the 10th, with the right

4 to supplement that will apply to all parties, including the

5 debtor.

6          MR. BERNICK:  Well, but then are we talking about all

7 the witnesses or Mr. Shelnitz?  I mean, there are a variety of

8 witnesses, all of whom are going to be after August the 10th.

9          THE COURT:  Well, it seems to me that it applies to

10 any witness.  If a witness is shown a new document or generates

11 a new document or whatever and that happens after the

12 production of document deadline, then you have to be able to

13 explain what that is going to be about.  But I don't expect it

14 to be the case in chief for all parties, with all documents.

15 If you've got the documents now, they're to be disclosed now

16 and this is for supplements, to take care of witnesses whose

17 depositions are after August the 10th and it's limited to that

18 purpose.

19          So, for example, if it's Mr. -- let's say Dr. Weill,

20 for example, just to pick a person, if Dr. Weill has three new

21 documents, and a party wants to use them, they may, but that is

22 not leave to go back and produce all of the documents that Dr.

23 Weill would otherwise have already had in his possession and

24 accounted for, it's only to deal with new documents that are

25 shown to the witness, or produced by the witness after that

**J&J COURT TRANSCRIBERS, INC.**

1 time.  And that does not include expert reports.  I don't

2 consider a report to be document.

3          MR. BERNICK:  So this is confined -- when you say new

4 documents, these are documents that have not been produced in

5 discovery to date.

6          THE COURT:  That's -- well, yes.  Because otherwise

7 if you already have them, you ought to be able to meet the

8 August 10th deadline.  But to the extent that there is

9 something new that develops, then you can supplement by August

10 25th.  You can always withdraw exhibits, that's not the issue.

11          MR. BERNICK:  That's fine.

12          MR. SPEIGHTS:  Your Honor, I --

13          MR. BROWN:  Your Honor, can I just ask a question on

14 that because I don't know the answer, and that is that there

15 was a rather lengthy exhibit list submitted by the plan

16 proponents and I don't know whether all of those documents

17 have, in fact, been made available in the data room or

18 otherwise.  And where I would see supplementation possibly is

19 in using documents that are on the proponents' exhibit list at

20 the deposition and then, perhaps, supplementing our own exhibit

21 list to include such documents.

22          MR. BERNICK:  Well, if the documents haven't been

23 produced to you all, then, obviously, they don't fall within

24 what I think I just described as being new documents.  They

25 would be new documents.  That is what I've suggested and I

1  think Court has expressed concurrence with, is that the new

2  documents are documents that have not been produced in

3  discovery.

4           MR. BROWN:  To the extent there are any.

5           MR. BERNICK:  To the extent that there are any.  If

6  we produce a new document, whether it's on the pretrial list or

7  not, if we produce a new document, then after August the 10th,

8  then, obviously, if somebody wants to use it, I think what the

9  Court is saying, is that they should be permitted to use it.

10          THE COURT:  That's what I'm saying.  If you already

11 have it, I think you can list it by August 10, but to the

12 extent that a deposition generates something that you need to

13 supplement and that deposition is after the document production

14 deadline, it seems to me a reasonable request to have time to

15 supplement after the deposition.  Mr. Speights?

16          MR. SPEIGHTS:  I understand your views on it, Your

17 Honor, and I appreciate that and just -- and moving forward

18 with the CMO --

19          MR. BERNICK:  Before we move forward --

20          MR. SPEIGHTS:  -- it's related to that.

21          MR. BERNICK:  Well --

22          MR. SPEIGHTS:  If you look at the CMO on Page 4, Your

23 Honor, at little iii --

24          THE COURT:  Okay.

25          MR. SPEIGHTS:  -- and Mr. Bernick has built in what I

1  was arguing is reasonable and I think others have been arguing,

2  and I think which the Court just recognized, he proposed that

3  the case management order and the above schedule do not

4  address, under this section, responses to any testimony offered

5  by Jon Heberling and Thomas Lewis, after their depositions.  I

6  understand why Mr. Bernick put it in, for his protection, I

7  think that is the general rule and I think that's what Your

8  Honor is articulating and I appreciate that and I'll move onto

9  the next point after Mr. Bernick responds to this.

10       MR. BERNICK:  The problem with Mr. Speights, and

11  going to what we just talked about, he has got these two

12  declarations and the declaration of an expert witness would be

13  an expert report.  Don't have any expert report for that

14  witness and, therefore, the declaration would be an improper

15  expert report to begin with.  But it looks like those are

16  essentially placeholders to disclose, by way of exhibit,

17  through a declaration, the testimony of people who should be

18  listed, in the case of Lehman, as an expert and have an expert

19  report.  And I'm not aware of one.  And in the case of Mr.

20  Salomon, it's historical information.

21       Those are documents that if they exist, should be

22  produced and I don't want -- what I'm concerned about is that

23  somehow it'll turn out that they don't exist until after Mr.

24  Shelnitz's deposition and they are declarations that respond to

25  Mr. Shelnitz's deposition and then we're going to be in the

1  position where we can't take their depositions, when they've

2  not been timely disclosed.

3      THE COURT:  But let me stop.  A declaration is not a

4  document, I'm talking about physical documents, things that are

5  going to be shown to a witness and used in the course of a

6  deposition, so that if there is some new document that pops up,

7  that someone hasn't seen, or wants to supplement as the result

8  of a deposition taken after August the 10th, it seems to me

9  they have the right to use them.  A declaration is not a

10  document in that sense, it's a form of testimony and this isn't

11  applicable to testimony, what I've just said, it's applicable

12  to documentary exhibits.

13      MR. BERNICK:  Well, that's -- I understand that, but

14  that's really, in the sense, the problem, is that because their

15  witness lists flags this problem, which is that we're getting,

16  by way of disclosure to us, through exhibits, what really is

17  testimony and probably expert opinion, and now that the issue

18  has been flagged, I don't think that that's right.  I don't

19  think that's consistent with the pretrial orders and I don't

20  think that -- I guess I would ask that to the extent that we --

21  I think what Your Honor has determined, is that we see those by

22  August the 10th, if not sooner, so that we can determine

23  whether we need motion practice with respect to what these

24  people -- what Mr. Speights purports to be doing through these

25  people.  I don't want to be ambushed by a Salomon or a Lehman,

1 now on the strength of the fact that Mr. Shelnitz was just

2 deposed and he said X and, therefore, Mr. Salomon is going to

3 say Y and Mr. Lehman is going to say Z.

4             THE COURT:  Well, if you --

5             MR. SPEIGHTS:  But, Your Honor --

6             THE COURT:  -- look, to the extent that they're

7 expert witnesses, they have to produce reports.  So, to the

8 extent that you're going to call someone as an expert, I'm not

9 going to consider a declaration to be an expert report, there

10 has to be a report.

11             MR. SPEIGHTS:  Your Honor --

12             THE COURT:  Yes, Mr. Speights.

13             MR. SPEIGHTS:  Mr. Bernick forgets the basic rule

14 here that he has the burden of proof.  He has the burden of

15 proof of showing good faith.  He has the burden of proof of

16 showing there has not been disparate treatment. I've been

17 trying since May to get those two critical witnesses'

18 depositions so I can determine what it is that the debtors are

19 going to say in support of, to prove, that this plan is

20 submitted in good faith and the plan does not provide for

21 disparate treatment.  It's as simple as that, Your Honor, and I

22 can respond when I get those two depositions.  I've tried to

23 play the game a little bit of predicting what he might say and

24 listing things in the abstract, but I'm hopeful that when I

25 take those two depositions, I will have to produce far less,

1 than more, regarding these issues.

2        THE COURT:  Okay.  Folks, I've made a ruling, I'm

3 done with this issue.  To the extent that the documents exist,

4 they're to be produced August 10th.  To the extent that

5 something new develops, that requires additional documents,

6 they can be supplemented by August the 25th for witnesses whose

7 depositions are after August the 10th.  The solution to this

8 problem, Mr. Bernick, if you don't want the supplementation, is

9 to get the depositions scheduled before August the 10th, and

10 then you'll have everything you need by August the 10th.

11        To the extent that someone is going to try to produce

12 a declaration of a witness after a deposition and that's going

13 to generate additional discovery, it seems to me that there is

14 built into this rule, the outside date by which depositions

15 have to be taken and it'll have to be complied with.  If the

16 declarations are produced and the witnesses aren't available in

17 a time that complies with this discovery order, then they won't

18 be permitted to testify.

19        MR. BERNICK:  Your Honor, that will now be another

20 opening which you just said for Mr. Speights, because the

21 deadlines for the disclosures of all these things, including

22 expert reports, including witnesses, a description of what

23 they're going to say, has long since passed.

24        THE COURT:  Yes, it has passed and I'm not reopening

25 this for additional expert reports.  I want that very clear.  I

1 am not reopening this for additional expert reports.

2          MR. BERNICK:  Okay.  So, Mr. Speights then had

3 another issue on the pretrial order, I think.

4          MR. SPEIGHTS:  Paragraph ten, Your Honor, and I think

5 that once we take Mr. Shelnitz and take Mr. Florence, hopefully

6 things will be clarified and if we want to ask for anything

7 else, we'll make the appropriate motion, Your Honor.

8          Paragraph ten --

9          THE COURT:  Mr. Speights, you're very faint.  Could

10 you either speak up or are you still on a speaker phone?

11          MR. SPEIGHTS:  Your Honor, I'm not on a speaker

12 phone.  Can you hear me?

13          THE COURT:  Yes, but you're kind of faint.  If you

14 could just speak up, that would be helpful.

15          MR. SPEIGHTS:  Thank you, Your Honor.  I said I

16 understand where the Court is and, hopefully, the depositions

17 of Mr. Shelnitz and Mr. Florence will make my life a lot easier

18 and, hopefully, I won't have to make any motions, seeking any

19 additional relief from the Court.  We'll just see where it

20 heads.

21          I did want to bring up paragraph ten, about the

22 attorneys representing the Asbestos PI Committee and

23 representing members of the PI Committee and etcetera.  Do you

24 have that in front of you, Your Honor?

25          THE COURT:  Yes, I do.


**J&J COURT TRANSCRIBERS, INC.**

1          MR. SPEIGHTS:  I would ask that that be amended to

2  include not just the PI Committee and the Official Committee of

3  Unsecured Creditors, but all official committees and all

4  claimants' counsel and not be limited to just those.

5          THE COURT:  Mr. Bernick.

6          MR. BERNICK:  Yes, I think that this language,

7  actually, is from the prior order, but be that as it may, I

8  don't know what this would even apply to.  I don't think that

9  any other lawyers have been identified as witnesses, with the

10  exception of Lewis and Heberling, so I don't know if Mr.

11  Speights is preserving an option for the PD Committee, I don't

12  think that anyone from the PD Committee has been identified.

13          MR. SPEIGHTS:  Well, whether they have or have not, I

14  don't understand the distinction to providing the protection of

15  lawyers for the unsecured committee or the ACC or for claimants

16  and not provided for all lawyers whose testimony might be

17  required in this case.

18          THE COURT:  Well, that seems to me to be fair.  If a

19  lawyer is going to testify, I'm not, frankly, I'm not really

20  sure why lawyers would be testifying that often, unless they're

21  designated in some capacity, for example, as a 30(b)(6) witness

22  or else testifying in some expert capacity, not related to

23  legal issues.  So, I mean, they're not going to be fact

24  witnesses, so, I'm a little unclear, but I don't have any

25  problem with extending that protection. I think what I'm

1  concerned with is the relevance.

2          MR. SPEIGHTS:  Thank you, Your Honor.  That's all I

3  have at this time.  I do want to comment on the other issue of

4  it, but my friend from Montana, Mr. Lewis wanted to go first on

5  that, if it's acceptable.

6          THE COURT:  All right.  Just a minute.  Does anybody

7  have a problem with paragraph ten including any lawyer who may

8  have to testify?  This, of course, is not a relevance

9  determination, it is simply saying that you're not precluded

10  from testifying by virtue of the fact that you represent a

11  committee, a committee member or a person of interest in the

12  case?

13          MR. WORF:  Your Honor, this is Richard Worf for

14  Garlock Sealing Technologies.

15          THE COURT:  Yes, sir.

16          MR. WORF:  Our witnesses are lawyers as well.  They

17  are individuals who try cases for Garlock in the tort system,

18  so they will be fact witnesses.  But I would like for them to

19  be subject to paragraph 11 to the extent that protection is

20  necessary as well.

21          THE COURT:  I think it's paragraph ten.

22          MR. BERNICK:  Yes.  I don't -- I think that they're

23  -- I'm not sure, with respect to this issue, I don't have a

24  problem, I don't have a problem with including lawyers

25  generally, except that the difficulty is that as soon you have

1 lawyers testify, you have massive waiver issues.  So, if

2 Garlock is intendant upon having its attorneys testify, then --

3 and I don't know that you -- I guess you've listed them --

4          MR. WORF:  We have.

5          MR. BERNICK:  -- yeah, we need to know this is the

6 issue of whether they really are going to testify because then

7 we're going to have some very significant discovery of their

8 files.  So, I'm jut alerting you to that and given the schedule

9 here, I just think we need to know very soon.

10          MR. WORF:  Well, we've been in a discussion with the

11 plan proponents about how and, you know, what our witnesses are

12 going to testify to and what the protocol for that is going to

13 be.  And those discussions are ongoing and I assume that the --

14          MR. BERNICK:  That's fine.  This paragraph is really

15 not designed to deal with lawyers, generally, it's designed to

16 deal with the potential conflict, I guess, between lawyers

17 testifying in the case, who also represent -- who do represent

18 a committee and, therefore, have obligations that run to the

19 committee.

20          THE COURT:  That's really the problem.

21          MR. LOCKWOOD:  It's really -- this is Peter Lockwood,

22 Your Honor.  This is really addressing the lawyer as witness

23 problem --

24          THE COURT:  Yes, it is.

25          MR. LOCKWOOD:  -- where people like myself that were

1  made 30(b)(6) witnesses, could theoretically be disqualified

2  from being an advocate in the confirmation proceeding, or

3  disqualified as a 30(b)(6) witness because they're acting in a

4  dual capacity.  I don't really think the Garlock situation is

5  even raised by this, unless the Garlock witnesses are proposed

6  to be presented by Garlock as their counsel, who would be

7  representing Garlock at the confirmation hearing as opposed to

8  simply testifying at the confirmation hearing.

9          MR. WORF:  They are not, we have distinct counsel for

10 those two functions.  So, I think --

11         MR. LOCKWOOD:  I think paragraph ten addresses that

12 issue, then.

13         MR. WORF:  Okay.

14         THE COURT:  Well, all paragraph ten is intended to do

15 is what Mr. Lockwood just said, and I'm not going to interpret

16 it to do anything but that.  It's simply not saying -- let me

17 put it affirmatively.  The paragraph is intended to address the

18 fact that by virtue of calling trial counsel as a witness,

19 trial counsel is not disqualified from continuing as trial

20 counsel.  That's all it's intended to do, that's the only way

21 I'm going to use it and, perhaps, it ought to make it clear

22 that that's -- well, it is clear, it says you're not precluded

23 from testifying by virtue of representing, and it can be

24 expanded to say a party in interest in the case.

25         MR. BERNICK:  At the confirmation hearing.

1          THE COURT:  At the confirmation hearing.  This only

2  applies to the confirmation hearing.

3          MR. BERNICK:  Yes, that's right.

4          MR. WORF:  With that clarification, Garlock is fine

5  with it.

6          THE COURT:  Okay.  What next?

7          MR. RICH:  Your Honor, this is Alan Rich for the

8  Property Damage FCR and before we get back to Libby, I had an

9  issue that is, at least relates to a similar part of the CMO

10  that we were just discussing with Mr. Speights, so I thought,

11  perhaps, this might be an appropriate time to speak up.

12          THE COURT:  All right.

13          MR. RICH:  You haven't heard a lot from me, that's

14  because, you know, the plan proponents and the PD FCR engaged

15  in some very intense negotiations and have reached agreements

16  to the PD FCR's satisfaction on most issues.

17          At this point, we still have not satisfied ourselves

18  as to the feasibility of the plan, and the plan proponents are

19  well aware of our position that, you know, we approach

20  feasibility the same way we've been approaching the other

21  issues in the case, with an open mind, in good faith, and

22  wanting to reach some resolution and satisfy ourselves as we

23  must, given our fiduciary obligations, that the plan is

24  feasible.

25          We do have a problem with the way this schedule has

1  played out and is set up now insofar as the feasibility expert

2  reports and expert depositions are concerned.  It may very well

3  be, frankly, Your Honor, by the end of the day, you know, we're

4  satisfied and this all becomes moot, but we don't know that

5  yet.

6       Right now there is an expert deadline on rebuttal and

7  supplemental reports of August the 7th.  The first feasibility

8  deposition, and that is of Mr. LaForce (phonetic), doesn't

9  occur till the 6th and the last one now is occurring on August

10 20th and that deposition had actually been set on the 13th of

11 August, but was moved a week, a few weeks ago, or a couple

12 weeks ago.

13      So, the problem that the PD FCR has is that the

14 deadline for a report, if you wanted to make one, is several

15 weeks before the depositions need to be taken, so that we know

16 whether we need one.  It seems to be completely backwards in

17 that regard.  I think the debtor recognizes that, at least as

18 to the Unsecured Creditors' Committee because they've carved

19 out the UCC's feasibility expert report, if there is one, in

20 paragraph four, Romanette IV, V, and given them until at least

21 a few days, at least, after Pamela Zilly's deposition, to make

22 that report.

23      And, what I requested of the debtors, and have not

24 heard a response yet, and that could be just due to the press

25 of business, is that we be included in that carve-out, that the

1 UCC currently enjoys, Your Honor.

2      MR. BERNICK:  Yes, that's fine.  Zilly's report was

3 submitted last Friday, so, it's already available.  I don't

4 know why we can't have expert reports to respond to the Zilly's

5 report prior to that time.

6      MR. RICH:  Well, I -- certainly, David, Mr. Bernick,

7 I did consider that.  I've read and studied the report and

8 there are a number of issues that I think need to be fleshed

9 out before, in my view, in the report, and in the backup for

10 the report, before we can make a decision on whether we even

11 need an expert report.

12      MR. BERNICK:  This is totally traditional, if you

13 have an expert report, and then a response to the expert report

14 before the deposition.

15      THE COURT:  Yes, that is traditional, and I'm not

16 sure why the -- if you're going to have an expert report

17 contest the other expert, you should know that.  The purpose of

18 the depositions was to get them done after the expert reports

19 were submitted so that everyone had the availability of the

20 report and then you can do supplementals.  So, I'm missing the

21 point, too.

22      MR. RICH:  Well, the point is, Your Honor, is this.

23 In the interest of -- since, of course, the debtor is paying

24 for all this, our position is, if the deposition goes a certain

25 way and we have a fuller understanding of some of the issues

1  that she's talking about and the backup and we're satisfied, we

2  won't need an expert.  But --

3        MR. BERNICK:  Well, yeah, that's fine.  You know, I

4  prepared -- you know, the expert report, if it cost a little

5  bit of money, it's more important to find out where the PD FCR

6  is on this issue.  We did this with respect to the general

7  unsecureds because, frankly, we've have a pretty candid

8  dialogue with the general unsecureds on feasibility and they

9  know the marketplace and they know the issues and we felt that

10 it was appropriate because of all the discovery that's pending,

11 vis-a-vis, the general unsecureds.  We never had any such sense

12 out of the PD FCR, I don't know why the PD FCR has unique

13 considerations here and we would like to see an expert report

14 of the PD FCR, on a timely basis, before we commence with the

15 deposition, in part, so that Ms. Zilly can respond to issues

16 that are raised, if there are any issues.  I'd as soon take her

17 deposition than have an expert report that for the first time

18 states that there are problems that she didn't have the

19 opportunity to address.

20       MR. RICH:  Well, speaking directly to that point, I

21 do not think that there is a sufficient time period between her

22 order, which was produced last week, and August 7th to go out,

23 hire an expert, have them do all -- him or her, do all the

24 financial analysis necessary and produce a report by August

25 7th, that's unreasonable.

1        MR. BERNICK:  Well, Your Honor, this is not -- you

2    don't go retain an expert after an expert report is submitted

3    for the first time.  If the PD FCR had any issues or concerns

4    about this, at all, feasibility is not a new issue, it's been

5    called out in the plan forever, and they should have retained

6    an financial analyst to deal with these issues.

7        The question of feasibility is going to be driven by

8    the post confirmation financial position of the debtor.  That's

9    something that is ascertainable on the basis of the filings

10   that have occurred already, everybody is all focused on this,

11   and has been focused on this.  It's purely a question of what

12   the opinions are.  It's not like there's some kind of new

13   revelation that's going to take place.

14       MR. RICH:  Well, I mean, it is, certainly, an odd

15   proposition to expect someone to have an expert to rebut an

16   expert before you get that first expert's report.

17       MR. BERNICK:  It's done every day, in every piece of

18   litigation that I know, that you identify experts --

19       THE COURT:  Okay, gentlemen, enough, please.  Can we

20   just -- do you want to negotiate this on your own?  I've

21   already said I'm really not sure what on earth it is that we're

22   doing here.  I gave you dates, proposed dates in court.  From

23   my point of view, I think you can live or die by them.  It

24   seems to me to be a reasonable perspective, I don't know --

25   you're negotiating changes, that's up to you.  If you want to

1 do it and agree to it, fine, otherwise, I'm happy with the

2 dates that I worked out.

3          MR. BERNICK:  Okay, that's fine.  We're satisfied

4 with it, too.

5          THE COURT:  So you --

6          MR. RICH:  Do I understand that Your Honor is not

7 going to require that the PD FCR be given the same indulgence

8 as the UCC as far as the report deadline goes?

9          THE COURT:  I think you can have that same indulgence

10 if the UCC is going to get it.  What I don't understand is why

11 the UCC is getting it, but okay, if you want to work it out,

12 the two committees can have it.  The issues are totally

13 different, Mr. Rich.  The PD FCR has a much different role in

14 this case than the general Unsecured Creditors Committee and

15 the feasibility -- well the feasibility concern, of course, is

16 always there, but the way the plan is structured, the claims

17 treatment is significantly different.

18          MR. RICH:  Oh, absolutely, absolutely.

19          THE COURT:  I don't really understand why the PD

20 Committee, if it has -- not committee but the FCR, to the

21 extent he has some issue, isn't out there with an expert

22 already.

23          MR. RICH:  I understand, Your Honor.

24          THE COURT:  Mr. Bernick is quite correct, this has

25 been an issue from day one in this case and this case is the

1  oldest running case in the history of man, probably.  Not

2  quite, but close.

3          MR. RICH: No, no, I've got one that's older.

4          THE COURT:  Yes.  I actually had one what was 21

5  years.  I decided that the life in being rule ought to apply

6  and we should put the funds in a party fund and not worry --

7  everybody was dead.  The debtor was dead, the trustee was dead,

8  everyone had died.  But anyway, that's a story for another day.

9          MR. RICH:  Thank you, Your Honor.

10         THE COURT:  All right.  So, yes, you can have that

11  same carve-out, the FCR can have that same carve-out, but to

12  the extent you're going to get an expert, don't expect to have

13  this order changed, it won't be changed.  I'm not extending

14  these deadlines.  I'm not even sure why they need to be

15  extended as it is.

16         MR. RICH:  Thank you, Your Honor.

17         THE COURT:  All right.  Who else has issues with the

18  case management order?

19         MR. COHN:  Your Honor, Daniel Cohn, for the Libby

20  claimants.  This will probably not turn out to be an issue, but

21  we've heard references to a possible postponement of the date

22  that has been scheduled for the Pamela Zilly deposition.  That

23  deposition deals with not only feasibility but also with best

24  interest.  We've been told that she is the person who prepared

25  or is primarily responsible for the preparation of the best

1 interest analysis and the Libby claimants need to question her

2 on that issue and, in fact, the reason why you see paragraph

3 4g, a reference to the right of the Libby claimants to file a

4 trial brief on best interest of creditors being extended to

5 August 25, is because Grace declined to produce Ms. Zilly

6 within a period that would have permitted us to file the trial

7 brief on that issue, on a timely basis.

8         So, the only reason that I make this statement here

9 is that the August 25th deadline needs to be extended

10 concomitantly with any postponement, any further postponement

11 that there might be in the Pamela Zilly --

12         THE COURT:  I don't intend to -- Mr. Cohn, I'm not

13 extending any deadlines.  So, Ms. Zilly's deposition is to be

14 conducted in a time that will permit the Libby claimants to get

15 the brief filed by August 25th.  I am not extending these

16 deadlines.  It's already pushed up too far and too close to the

17 trial time so that I'm probably not going to have a chance to

18 read all of this.  And the whole purpose, I think, for your

19 filing briefs, is so that I can read it.  I'm not really sure

20 what good it does to file a bunch of paper that the Court

21 doesn't see.  And this is it, I am not extending these

22 deadlines.  It's too close to the trial as it is.

23         MR. BERNICK:  Your Honor, that's fine.  We're totally

24 on board with that.  But these dates were set before we knew

25 that Mr. Frezza was now going to be addressing a new issue.

1 And I'm not -- I don't want to be a predictor of doom and

2 gloom, we don't know what Mr. Frezza is going to say.  We just

3 don't.  We've heard representations, they've now changed, and

4 we'll have to see what happens on Monday, but this thing has an

5 impact on what Mr. Frezza can testify to.

6           THE COURT:  When is --

7           MR. PASQUALE:  I don't know what -- what is -- excuse

8 me, it's Ken Pasquale for the committee.  What -- how does Mr.

9 Frezza play into what we're now discussing?

10          MR. BERNICK:  Because Pam Zilly --

11          THE COURT:  Pardon me, that's an issue -- pardon me.

12 You folks can discuss this issue on your own time not on mine.

13 My ruling is simply that these dates are the dates. Produce Ms.

14 Zilly in time that the Libby claimants can meet this deadline

15 and if that means, you know -- when is her deposition scheduled

16 now?

17          MR. BERNICK:  It's now se for the 20th.

18          THE COURT:  Well, then that's plenty of time.  If you

19 get the Zilly report -- if you get the Frezza report on Monday,

20 that's the 17th, she's got four days.  If she needs time to do

21 a supplemental, fine.  I am not changing these deadlines.

22          MR. BERNICK:  Well, Your Honor, I appreciate that,

23 but we don't know what Frezza is going to say and we don't know

24 what the implications of it are.  We just don't.  It is they

25 who have not had an expert report from Mr. Frezza, that's the

1 problem.  They don't have a report for Frezza.  And we asked

2 for it earlier.  You know, it was they who said, no, we need

3 them till next Monday.

4         THE COURT:  Well, then why do you need another week

5 to get that report done?

6         MR. BERNICK:  That's what I asked.

7         THE COURT:  Mr. Pasquale --

8         MR. PASQUALE:  Excuse me, Your Honor?  Another week

9 from when, Your Honor?  We're serving the report on Monday.

10         THE COURT:  Oh, this coming Monday.

11         MR. PASQUALE:  Yes.

12         THE COURT:  Oh, I'm sorry, I thought it was on the

13 10th.  You're serving him on the 3rd.  That's plenty of time

14 for Ms. Zilly to get ready.

15         MR. PASQUALE:  And Mr. Bernick said -- I'm sorry,

16 Your Honor.  Mr. Bernick said in court earlier this week that

17 Ms. Zilly would respond on the 10th.

18         MR. BERNICK:  Your Honor, this is just plain wrong.

19 I told the Court that we had had a conversation, it was

20 represented to me in the conversation that all that Mr. Frezza

21 was going to do was to take the Florence estimate for personal

22 injury and --

23         THE COURT:  Yes, I heard all this.  Folks, I'm not

24 doing this again.  Stop.  I'm not doing it again.  I heard all

25 of that.  If the report is being produced on the 3rd, Ms. Zilly

1  has plenty of time between then and the 20th to make whatever

2  modifications are necessary so that her deposition can take

3  place on the 20th as scheduled, and that gives the Libby

4  claimants that weekend, essentially, to file the brief.  I'm

5  not cutting it any shorter than that.  Next issue.

6          MR. BERNICK:  I really --

7          THE COURT:  Next issue.

8          MR. FINCH:  Your Honor, may I -- this is Nathan Finch

9  from the ACC, may I be heard on something at the risk of

10 incurring --

11         THE COURT:  If it's on another issue.

12         MR. FINCH:  Well, it's -- actually, it's a hole that

13 I've just identified in the schedule and that if the Libby

14 claimants file a trial brief on the best interest analysis on

15 August 25th.  Shouldn't the plan proponents get a right to file

16 a response to that?

17         THE COURT:  You're going to have to file responses

18 after the trial because there is no way I'm -- I'm going to be

19 hard pressed to have, let alone read the Libby brief by the

20 time it comes in.  And you know you're going to file post trial

21 submissions anyway.  So --

22         MR. FINCH: Just as long as we have -- just as long as

23 it's clear that we have the right to respond to their best

24 interest of creditors' analysis at some point.

25         THE COURT:  Wait, You have the right to reply,

1  limited to five pages, I believe.  So, do it by the 28th.

2         MR. FINCH:  Well, no -- Your Honor, as the schedule

3  is currently set, we got their trial brief on July the 13th and

4  they expressly reserved their best interest of creditors'

5  argument.  We get the right to file a response to their brief

6  on August the 7th, which we will do with respect to all of the

7  arguments that they made in their trial brief.  They have

8  reserved this one argument.  I don't know how many pages

9  they're going to use to write their best interest argument.

10        THE COURT:  Not any.

11        MR. FINCH:  If it's ten pages, we can respond.

12        THE COURT:  Because I'm limiting briefs.  We haven't

13 discussed that yet.  We'll discuss it right now.  How many

14 pages does each party need to do trial briefs?  I would suggest

15 not more than 30.

16        MR. BERNICK:  Your Honor, the Libby claimants filed a

17 hundred page trial brief.

18        THE COURT:  I know they did.  I'm suggesting not more

19 than 30 pages.

20        MR. LOCKWOOD:  But, Your Honor --

21        MR. BERNICK:  -- have engaged the plan proponents,

22 which is the Equity Committee, the debtors and the FCR and the

23 ACC.  I think -- I would suggest that if we had a joint plan

24 proponents' trial brief that it might be appropriate that we

25 get more than 30 pages.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. LOCKWOOD:  Well, Your Honor, Peter Lockwood.  In

2   particular, the Libby claimants' brief may be a hundred pages,

3   but all the other objectors, there are like 33 objector trial

4   briefs and many of them are 20 or 30 pages long.  I mean,

5   there's hundreds of pages --

6          THE COURT:  It's not necessary.

7          MR. LOCKWOOD:  -- of trial briefs that --

8          THE COURT:  I know, and it's not necessary.  And, it

9   seems to me everybody can cull down what they've done to 30

10  pages.  An awful lot of this stuff is duplicative, there are

11  string cites, there are cases that are probably -- I'm not

12  going to say they're not relevant, but they are definitely,

13  allegedly, duplicative because they're string cited, the

14  arguments are repeated in multiple sections, that's not the way

15  to do a trial brief.

16         MR. LOCKWOOD:  Are you saying that the people that

17  have already filed trial briefs, have to go back and if so,

18  what -- is the 30 pages for each insurance company and each

19  co-defendant and each objector?

20         THE COURT:  No, it seems to me that the positions of

21  the parties, particularly the insurers for the most part, have

22  very similar issues worked out and they can identify who is

23  going to take the lead on which issue.  I don't need to read

24  the same brief from 18 different insurance companies, when

25  their issues are the same.  There are some issues that are not

**J&J COURT TRANSCRIBERS, INC.**

1 the same and, therefore, have to be expanded upon or stated by

2 the individual insurer, but most of these exhibits and briefs,

3 and trial briefs, repeat the same positions and the same cases

4 and cite the same analysis from one brief to the next.  I don't

5 need 18 briefs that tell me the same thing, I need one.

6          MR. GUY:  Your Honor, this is Jonathan Guy for the

7 FCR.  May I be heard quickly?

8          THE COURT:  Yes, sir.

9          MR. GUY:  Your Honor, thank you for being patient

10 with us.  There are 25 briefs from the objectors, at least 25

11 briefs from the objectors, and I concur that they are

12 repetitive.  Maybe the best thing for the plan proponents to do

13 because we have been working on our briefs in response and

14 trying to trim it down, is that we get back to you shortly on

15 what we think we can do in terms of the absolute minimum number

16 of pages.  As Mr. Lockwood and Mr. Bernick and others have

17 commented, there are -- notwithstanding the fact that you can

18 aggregate the responses to the insurers and certainly we're not

19 going to respond line by line to each individual insurer,

20 repeating arguments, but there are different responses to folks

21 like Anderson and Garlock and Libby, that would require much

22 more than the 30 pages, but obviously we will trim it down as

23 much as we can and, perhaps in a couple of days we can get back

24 to you with what would be a consolidated page limit for the

25 plan proponents.

**J&J COURT TRANSCRIBERS, INC.**

1        THE COURT:  All right, that's fine, Mr. Guy because

2   you're quite correct, the 30 pages for the plan proponents to

3   respond to everybody's briefs that well exceed 30 pages, and

4   are duplicative, probably isn't going to be enough and you do

5   have different issues to address.  But I do not want to see

6   hundred page briefs coming in from anybody other than the plan

7   proponents.  The issues don't warrant briefs that are that

8   long.

9        And so to the extent that there's going to be -- the

10  Libby claimants filing a brief on best interest analysis,

11  you've already exceeded your page limit, so I expect it to be

12  reasonable, short and to the point.  And I don't want anything

13  duplicative stated.  I don't need to read the same sentence 15

14  times.  I get it the first time, generally.  And if I don't,

15  I'll ask about it.

16        MR. BERNICK:  That's fine, Your Honor.  We appreciate

17  that and we will communicate with the Court.  Maybe if we could

18  try to find out if there are any other objections to the

19  schedule, and I think we have two remaining matters, one is the

20  order of proof, although that may not be a remaining matter,

21  given the fact that Your Honor has now set a new date for that,

22  but I don't know what the Libby claimants would have to say,

23  and then we have the Libby claimant issue that we put to the

24  bottom of the discussion.

25        THE COURT:  All right.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. SPEIGHTS:  Your Honor, this is Dan Speights

2     again, on behalf of Anderson.  I did intend to a make the same

3     argument, essentially the same argument that Mr. Rich made and

4     I assume I don't have to make that, that your ruling as to Mr.

5     Rich's argument, would apply equally to Anderson?

6          THE COURT:  No, I'm not sure it does.  Everybody has

7     participated in this case to the, except for the Property

8     Damage Future Claims Rep. from the outset.  He came into the

9     case late, so I have a little more sympathy for that position

10    than I do from anyone else.  If you've got an expert report,

11    you submit it on time, according to the last case management

12    order, if it's out of time, it's out of time.  That's it.  I'm

13    not reopening this.

14         MR. SPEIGHTS:  I understand that, Your Honor.  Thank

15    you.

16         MR. HEBERLING:  Your Honor, Jon Heberling in Montana.

17    We earlier made an objection to the trial date based upon not

18    having received contentions from the plan proponents.  We

19    simply want to preserve that objection in the record at this

20    time.

21         THE COURT:  I'm sorry, Mr. Heberling, to continue

22    what, I didn't hear you.

23         MR. HEBERLING:  We made an objection earlier to the

24    trial date, on the basis that we had not received contentions

25    from the plan proponents.  We still have not received the

1 contentions and we simply want to preserve that objection in

2 the record.

3         THE COURT:  Okay, and that's fine, it's preserved.

4         MR. BERNICK:  I don't know if Your Honor would

5 inquire if there are any other matters we need to take up on

6 the schedule, save the order of proof and then the Libby issue

7 that was reserved, or should we move onto that?

8         THE COURT:  Does anyone have anything else with

9 respect to the case management order, specifically not talking

10 about the order of trial?

11         MR. WORF:  Your Honor, this is Richard Worf, for

12 Garlock, again.

13         THE COURT:  Yes.

14         MR. WORF:  And we -- it sounds like the other party,

15 I forget who it was, but we also are relatively new to this

16 case.  We have tendered our witnesses for deposition and are in

17 the process of scheduling that.  I don't -- because like I

18 said, our witnesses are trial counsel who have trials scheduled

19 and, you know, have complicated schedules and we're just

20 working this out right now, I don't think that all of them will

21 be able to be deposed by August 25th.

22         THE COURT:  They'll have to be.  They'll have to be,

23 trial starts September 3rd.  So, tell them to make it work.

24         MR. WORF:  Well, I don't know how --

25         THE COURT:  There's a month.  There's an entire

1  month.  They can certainly -- if it has to be done on a

2  Saturday, do it on a Saturday.  They can do it between now and

3  then.

4          MR. WORF:  Okay.  Well, we'll try to do it, Your

5  Honor.  But I just wanted to make that clear to the Court.

6          MR. LOCKWOOD:  Well, as long as we're making things

7  clear to the Court, Your Honor, this is Peter Lockwood, number

8  one, Garlock has been a co-defendant of Grace in the tort

9  system since prior to the petition date and they were notified

10  of Grace's bankruptcy and the idea that they're a late arrival,

11  they may be a late arrival, but they're a late arrival by their

12  own choice.

13          Secondly, if you read their pretrial submission,

14  they've listed five trial lawyers and their description of the

15  testimony of the five trial lawyers is identical for each one

16  of the five trial lawyers.  We may very have an objection at

17  trial on the grounds of cumulative and repetition.  So, they

18  might want to take -- (indiscernible - malfunction with phone

19  connection) in determining whether or not they need to have all

20  these people deposed.

21          MR. BERNICK:  Well, that's really -- aren't they

22  supposed to -- isn't Garlock supposed to make up its mind about

23  who they're actually going to call?

24          MR. WORF:  We have made up our mind.  We made up our

25  mind and we're calling all six people who are on our list.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  Mr. Worf, if you expect to produce six

2  witnesses to tell me the same thing, I can tell you that's not

3  going to happen.  I may hear it from two witnesses, after that,

4  that's enough.  Cumulative evidence is not required in federal

5  court and I'm not going to have this trial tied up while six

6  people repeat the same evidence that two of them could say.

7  So, that applies to everybody.  No more than two witnesses on

8  any one point and I may not even hear two witnesses on any one

9  point.

10          MR. WORF:  I know, Your Honor, but just to add to the

11  gentleman's point, they're all different states and all have

12  different testimony to offer.  It's not duplicative.

13          MR. LOCKWOOD:  Well, all I know is how it was

14  described in the pretrial submission, Your Honor.  I'd invite

15  you to read it for yourself.  I believe you will see that it is

16  word for word identical as described in the pretrial

17  submissions.

18          THE COURT:  In any event, that's my ruling.

19          MR. BERNICK:  Thank you, Your Honor.  That would take

20  us then, if they're -- I mean, but I don't want to cut anything

21  off, I guess --

22          THE COURT:  Go ahead.

23          MR. BERNICK:  Well, no, I don't want to -- if there

24  are any other people who want to speak to the schedules.

25          THE COURT:  Oh, on the CMO, anybody else?

1                    (No audible response)

2          THE COURT:  Okay, Mr. Bernick.

3          MR. BERNICK:  Yeah.  On the order of proof, I think

4  it's really -- I've made my little speech on that, I don't know

5  whether the Libby claimants or Mr. Speights, I never want to

6  leave him out, have anything further to add with respect to

7  order of proof if we've now changed the date, the due date for

8  that to the omnibus which is August 24.

9          MR. LEWIS:  Your Honor, this is Tom Lewis, I want to

10  be heard very briefly on this and I will keep it brief.

11          As I understood the proposal by Mr. Bernick, he had

12  an order of proof in which he listed the various objectors and

13  Libby was to go first.  That's not the issue I have.  The issue

14  I have is, whether the plan proponents go first as they have

15  the burden to prove their plan.

16          THE COURT:  Oh, yes, his recitation at the hearing

17  indicated that the debtor would be putting on its proof.  He

18  was attempting to articulate which issues may be less general,

19  I should say more specific, and then which would be more

20  general, and to incorporate in that how the debtor would

21  present its evidence and who would go first in terms of their

22  cases.  Of course, the debtor has the burden of proof.

23          MR. LEWIS:  Right.  The only thing is, I think many

24  people in that room left with the impression that the objectors

25  would have to put on their proof and then the plan proponents

1 would then punch holes in those objections.  And so I think you

2 clarified that and I have nothing further to say.

3        MR. BERNICK:  Well, the order of proof is not

4 designed to affect the burden of proof, period.  That's all --

5 I mean, I'm not suggesting where the burden of proof is or is

6 not to any particular issue.  That is not addressed by the

7 order of proof.  All the order of proof does is with respect to

8 the evidence, as the evidence will come in by subject matter,

9 it does not address the burden of proof.

10        MR. LEWIS:  Well, that's not what I'm talking about.

11        MR. BERNICK:  Well, I don't understand.

12        MR. LEWIS:  I'm talking about who goes first, who is

13 going to present their evidence first --

14        MR. BERNICK:  That will be dictated by the issue that

15 is raised with respect to a particular subject matter.

16        MR. LEWIS:  Well, I've never been involved in a trial

17 where the party that has the burden of proof doesn't put on a

18 prima facie case.

19        MR. BERNICK:  Well, the question --

20        MR. LEWIS:  Let me -- please let me finish, sir.

21 I've not interrupted you at any time, and my remarks are

22 addressed to the Court, not to you.

23        Your Honor, I've never been involved in a trial

24 before where the party that has the burden of proof does not go

25 forward first and put on a prima facie case and this would be

1 an extraordinary event if that occurred here.  I'm not a

2 bankruptcy lawyer, I don't claim to be, but my understanding is

3 that they should go first.

4        THE COURT:  Mr. Lewis, the debtor will have -- the

5 plan proponents, not necessarily the debtor and plan supporters

6 will have to put on their basic case first.  Whether they do it

7 by a live witness, however, is not a foregone conclusion.  To

8 the extent that the elements of 1129 or 524(g) are not

9 contested, I will accept proffers or I will accept declarations

10 by way of the direct case with the witness available for cross

11 examination if that's appropriate.  I'm not going to have a

12 trial on issues that are not contested.

13        MR. LEWIS:  Well, I'm not asking for that, Your

14 Honor.

15        MR. BERNICK:  To be clear, and Tom this is designed

16 to answer your question.  The idea of breaking it down by

17 subject matter is not to change the burden of proof, but the

18 burden of proof can vary by issue.  So, yes, the plan

19 proponents have the burden of proof with respect to

20 establishing compliance with the code, but when it comes to

21 individual subject matters, it may be that when it comes to

22 individual subject matters, the unique issue that's presented

23 by a subject matter will be driven by the objection and in the

24 case of an objection on a unique issue, it may be that the

25 objector has the burden of proof, and I'm just not addressing

1 that, I'm just saying that what we're proposing is to do is by

2 subject matter so that the Court has everything before it on

3 the subject matter at the same time.  It doesn't change the

4 burden  of proof and it doesn't change the order in which the

5 evidence is presented with respect to that subject matter.

6         MR. LEWIS:  Well, I want to be more -- are you

7 finished, Mr. Bernick?

8         MR. BERNICK:  Yeah.

9         MR. LEWIS:  Your Honor, I want to address it more

10 particularly.  We have medical experts here, on both sides, and

11 we have to schedule those witnesses, they're difficult to get

12 to trial.  Who presents the medical proof first to establish

13 that this is a good faith plan and that it complies with all

14 the requirements of the bankruptcy court?  That's my question

15 to you.

16         MR. BERNICK:  Because with respect to --

17         MR. LEWIS: Your Honor, I was addressing it to the

18 Court, not to you, Mr. Bernick.

19         MR. BERNICK:  Okay, fine, Your Honor.  If you'd like,

20 I can answer that question.

21         THE COURT:  To the extent that there is a burden of

22 proof that's on the debtor, in terms of meeting compliance with

23 the bankruptcy code, the debtor and the plan proponents and

24 supporters will have to put that prima facie case on first,

25 subject to objection.  I'm not sure that the medical criteria

1  -- Mr. Lewis, I don't mean to duck this question, I'm just not

2  exactly sure what you're asking.

3        To the extent this plan confirmation process does not

4  involve direct medical criteria, there may not be such proof

5  unless Libby raises it by way of an objection, and somebody

6  rebuts.  There are experts who have been listed, who will opine

7  about the fact that the plan and the trust distribution

8  procedures do comport with what the bankruptcy code requires

9  and encompassed within that there are epidemiological studies,

10 there are statistical studies, there are all sorts of things,

11 so I'm not, I don't think I understand the question.

12       MR. LEWIS:  Well I -- and it's unfair for me to ask

13 for an advisory ruling and that's not my intention, Your Honor.

14 I think I understand well enough.  I just want to advise the

15 Court that it will be the Libby claimants' contention but as to

16 all prima facie issues, we contend that the plan proponents

17 must put their prima facie proof on first, or be subject to

18 dismissal on those issues, where they do not submit adequate

19 proof.  That will be our position at trial, and I don't expect

20 a ruling on that, I'm just advising the Court.

21       MR. BERNICK:  Your Honor, and this is why we've

22 reached out specifically to Mr. Lewis and the people at Libby.

23       MR. LEWIS:  I didn't hear that, sir, I couldn't hear

24 that.

25       MR. BERNICK:  I'm sorry.  Your Honor, and this is why

**J&J COURT TRANSCRIBERS, INC.**

1  -- and we have specifically reached out to counsel for the

2  Libby claimants, we believe it's important to have a dialogue

3  beginning soon, so that these matters can be discussed in

4  advance, because this is a complicated matter and, you know,

5  the Libby people can take whatever position they want.  I think

6  that the only way really that this trial can proceed in a

7  smooth fashion, is if there's a pre-detailed dialogue in

8  advance and we try to work this out.

9            THE COURT:  Okay.

10           MR. LEWIS:  I don't object to that, Your Honor.

11           THE COURT:  All right.

12           MR. BROWN:  Your Honor, this is Michael Brown for One

13  Beacon.  I have, I guess, what amounts to a couple of

14  questions on what Mr. Bernick just mentioned.  I thought he had

15  said at the outset of this hearing that there was not a

16  consensus among the plan proponents on the issue of order of

17  proof and that that was still under discussion.  I don't know

18  whether that was -- whether I misunderstood that or not, or

19  whether there's going to be a proposal that's going to be

20  circulated on this subject.

21           MR. BERNICK:  What I've said, and I've now said it

22  three times and you were on the call yesterday and I

23  specifically said it again.  I said specifically, as I said in

24  court, what was presented by debtor the other day, was the

25  debtors' concept for what made sense.  The plan proponents had

1  not yet (indiscernible), that we were working on that and that

2  as soon as we had consensus, we would reach out to the other

3  constituencies to let them know what our proposal was, that

4  that would be done informally in order to get it done promptly

5  and that we would have, as I think I said specifically

6  yesterday, a series of meet and confers in an effort to try to

7  get everybody reading off the same page.  That's what I said

8  before and my position hasn't changed.

9       MR. BROWN:  Okay.  Your Honor, the second issue was,

10  I think, pertains to one of your comments and that is to the

11  extent that the plan proponents are going to present any

12  portion of their case by way of declaration or proffer, that

13  raises the issue as to when those declarations or proffers

14  would be made to the objecting parties.

15       MR. BERNICK:  Our position is that we will be

16  presenting -- we believe that the rules of evidence apply,

17  we'll be presenting our witnesses live, unless it's indicated

18  that they'll be presented by way of deposition and that only if

19  we do intend to proceed by way a declaration, that'll be taken

20  up on an individual basis with respect to whatever party is

21  affected and with respect to the insurers, I don't know that

22  there will be any declaration, but it's our burden to establish

23  that dialogue in the first instance.  If we would exceed --

24  what we'd basically be asking for is an agreement that the

25  declaration would be admissible, notwithstanding, the hearsay

1  rule.

2        So, you can presume that if we haven't asked for

3  agreement as to a declaration, we are proceeding by way of live

4  testimony or by way of deposition as is appropriate under the

5  rules of evidence.

6        We expect the same thing out of everybody else.

7  We're not -- we're going to be relying on -- there's been an

8  active discussion at the outside with the general unsecureds on

9  this issue and I don't mean to be revisiting any of that

10 discussion.

11        THE COURT:  Okay.  What's next?

12        MR. BERNICK:  I think the only thing that's next -- I

13 don't know if Mr. Speights wanted to address the order of

14 witnesses.  He said he --

15        MR. SPEIGHTS:  I do want to address it, thank you,

16 Your Honor.  I appreciate very much your moving this ultimate

17 discussion on order of proof to the August 24 omnibus hearing

18 and I certainly will be glad to participate in all of the meet

19 and confers so that we can attempt to reach some agreement on

20 it.  However, in the event we cannot reach agreement, I

21 certainly would believe it would be helpful to Your Honor, at

22 the August 24 hearing, and I know it would be helpful to me, if

23 the debtors or the plan proponents would file something a few

24 days before the August 24 hearing, so that we don't get it the

25 night before in an e-mail or have it revealed to us the first

1  time on the board there.  We need to reflect on the ultimate

2  decision of the plan proponents on how they wish to prove their

3  case at confirmation.  So, I would request that they be

4  required to tell us, hopefully, they'll tell us a lot in their

5  pretrial brief which is due on August 7, but certainly a few

6  days before the August 24 hearing.

7         MR. BERNICK:  I'll say it and I'll say it again, Your

8  Honor, we intend to reach out to all constituencies in getting

9  -- including Mr. Speights, well in advance of August 24.  And

10 it is not productive, I think at this time, to be setting

11 deadlines on who is going to do what when, it's our burden to

12 do that on a timely basis so that the matter can be taken up on

13 August the 24th.

14        THE COURT:  Well, I think what Ms. Speights is asking

15 for is that, let's say by -- the 24th is a Monday, say by the

16 preceding Thursday, the 20th, that the debtor actually file its

17 prospective order, not necessarily every witness in order, but

18 like if you're going to go by subject matter, for example,

19 present the same type of thing that you presented on Monday of

20 this week, but file it on Thursday so that everybody can see it

21 and figure out how that will impact their case and their

22 witnesses.  Mr. Speights, is that what you're asking for?

23        MR. SPEIGHTS:  Absolutely, Your Honor.

24        MR. BERNICK:  Yes, but the difficulty is,

25 particularly the difficulty with respect to Mr. Speights, is

1  that this falls into the same category as his statement

2  regarding the proposed CMO which was submitted last Friday.  It

3  was submitted last Friday because there were a lot of different

4  things that had to be done in order to make it sufficient and

5  after that time we then actively -- we not only circulated it,

6  but we actively set up a process for talking it through.

7       What happened at the end of the day is, after we got

8  done with the whole process, Mr. Speights basically will take

9  whatever position he wants and then says, gee, I didn't get it

10  until late.  The fact of the matter is, that when it comes to

11  the order of proof, we will let Mr. Speights know, like all

12  other people will know, what the plan proponents' position is,

13  well in advance.  The problem is, that as we engaged in a

14  dialogue with all the different people who are out there, that

15  will change.  So to have a deadline that's artificially set,

16  says well, by X period of time before August the 24th, this

17  must be in, all that will happen is that in the days leading up

18  to the 24th, it'll change.

19       So, Mr. Speights is going to get the plan proponents

20  proposal long before a few days before August the 24th.  But to

21  actually have it formally filed, as the plan proponent's

22  proposal, doesn't really accomplish anything because that just

23  begins the process of there being a discussion which will

24  include Mr. Speights.  There's not going to be any mystery

25  here.

1          MR. SPEIGHTS:  I'm not -- I'm -- frankly, Your Honor,

2   I'm just not satisfied with that.  I don't understand what the

3   problem is (indiscernible).

4          THE COURT:  Pardon me.  Mr. Speights, I'm sorry,

5   somebody has either hung up the phone or done something that's

6   put a feedback on and I can't hear you it's so loud.  Will all

7   of you, please, put your mute buttons on.

8          Now, Mr. Speights, I apologize, would you repeat what

9   you just said?

10         MR. SPEIGHTS:  I still would like what Your Honor

11  proposed.  I understand if they file something on Thursday

12  night on how they wish to proceed, they may negotiate some more

13  and want to change it around some, but I'd like to have some

14  notice, a fair opportunity to see what it is they've finally

15  come up with, out of all these discussions, before I walk in

16  the courtroom.

17         THE COURT:  Yes. I think, Mr. Speights, that's not a

18  bad idea.  And I understand that it may change, in fact.

19  Frankly, I reserve the right to determine how the case has to

20  proceed at some point in time, in order to control the trial

21  process, not which witnesses people are going to call and so

22  forth.  But to a certain extent that order is my determination

23  to make and I will reserve it.

24         So, it seems to me that if the plan proponents can

25  file their agreed upon -- whatever they've agreed upon,

1  assuming they've agreed upon something by August 20, that's

2  great, and otherwise, the debtor should do it, not anyone else.

3  I don't want any responses filed, nothing, I just want the

4  debtor to file its proposed trial process and I do not mean

5  witness by witness.  I mean, either by category or by element,

6  or by issue or whatever it is that the debtor, however the

7  debtor wishes to proceed.

8          MR. BERNICK:  Okay.  That's fine.  Will do.

9          THE COURT:  Okay.

10          MR. BERNICK:  I think that that then leaves us with

11  the last issue which kind of morphed into a bunch of issues,

12  and let me try to provide some perspective on this.

13          MR. WARD:  Mr. Bernick, if you're moving onto the

14  Libby issues, this is Matthew Ward on behalf of the State of

15  Montana, I had one more issue on the order of proof, Your

16  Honor, if that's okay.

17          THE COURT:  Yes, sir, go ahead.

18          MR. WARD:  I didn't know if Your Honor or Mr.

19  Bernick, either one, could suggest regarding opening statements

20  and closing statements.  We certainly would like the

21  opportunity to make at least a closing statement at the trial,

22  if Your Honor is amicable to us doing so.

23          THE COURT:  Well, I hadn't really gotten to that

24  point. What I've done in a recent case that went on for about

25  12 days, was ask the parties to submit their proposed findings

1  -- findings of fact and conclusions of law after the record was

2  done, not for responses by anyone, but simply so that I had an

3  understanding of what issues they were going to argue in their

4  closing statements and then I scheduled the closing statements

5  after that document was filed, and then after the closing

6  arguments, provide an opportunity for everybody to respond to

7  everyone else's and, frankly, that has worked pretty well.

8         It has narrowed the issues down, it's taken some very

9  complex testimony and put it into a logical fashion and it

10 requires everybody to go through the record to say, here is a

11 cite to the point I want to argue, so that I don't get

12 arguments that are not based on the record.  So, that's what

13 I'm thinking about doing, Mr. Ward, but we're not there yet.

14        But in any event, will you have the opportunity to

15 make a closing statement?  Yes.  I just don't know if it'll be

16 immediately at the end of the trial, or whether it will be with

17 the process that I've just described.  You folks can add that

18 to your list of issues to discuss and we'll talk about it on

19 August 24th.

20        MR. WARD:  Thank you very much, Your Honor.  I

21 appreciate it.

22        THE COURT:  And as to openings, Mr. Bernick, what's

23 the plan proponents' view about openings?

24        MR. BERNICK:  You know, I don't -- I mean, I'm

25 frankly where the Court is on that.  It's not been at the top

1  of my list to try to figure out the trial logistics because

2  there are so many other things.  I'm just generally inclined,

3  because we have these extensive trial briefs, and we're going

4  to have an order of proof, I'm not sure I see much point to the

5  opening at all.  And, so, probably my predilection is that in

6  order to fully and efficiently utilize the time the Court has

7  made available to us, and to avoid what will then become a

8  massive quarrel over who gets how much time in opening and how

9  long is the whole thing going to take, my preference would be

10 not to have openings and simply to start with the -- the ACC

11 certainly agrees with that.

12         THE COURT:  I agree with that, Mr. Bernick.  It seems

13 to me that what can be done is, in the trial briefs, I'm sure

14 I'm going to understand your positions, either of the debtors

15 as proponent or the objectors on the issues.  So, I really

16 don't see the need for openings.  You can put it in the trial

17 briefs and if you need, you know, an extra, not more than three

18 pages, to tell me, fine and I mean per party in this instance.

19 Okay.  Anything else on the CMO or the order of trial, pardon

20 me?

21         MR. HEBERLING:  This Jon Heberling in Montana.  We

22 have a problem, in that we can only bring in Dr. Frank on

23 September 10th and we'd like the permission to call him out of

24 order, if necessary.

25         MR. BERNICK:  Yes.  They've raised this with us,

1  informally.  And, informally, we have responded and we have

2  said that we will consider that in the broader context of

3  what's happening at trial.  We're also extraordinarily

4  sensitive to, (a) breaking the order of proof, (b) opening the

5  door to what will then be a whole series of requests for

6  accommodations, not only by witnesses, but by lawyers, so I had

7  thought that would be enough for Mr. Heberling, in that we will

8  continue that dialogue.  I don't think it's appropriate to

9  raise this issue piecemeal and I would urge the Court not to

10 consider it piecemeal because of its ramifications.  I still

11 have not heard, and I'm not inviting it now, for an account of

12 why it is that Dr. Frank needs to be elsewhere and exactly what

13 the conflict is.  But, I'm not inviting that now.  I just think

14 that we ought to take this up on an informal basis first.

15          THE COURT:  Well, I agree with that.  And I will

16 consider any such requests at the trial if you can't work it

17 out, but I agree, you should try to resolve that issue

18 informally and discuss what the need is for that purpose,

19 before you bring it here.

20          MR. HEBERLING:  Okay.  Thank you very much, Your

21 Honor.

22          MR. BERNICK:  That brings us back to the Libby issue

23 that deals with the timing of discovery and the Weill report

24 and the like.  And this has a lot of ramifications because part

25 of the Libby's -- of the position that's taken by the Libby

claimants, has to do with their contention that there's a
unique disease, or unique disease process or unique disease
presentation in Libby, Montana, and that's a data driven
proposition, and there are many disciplines that are involved.

I think that the only thing really of relevance here,
without reciting the very long history, is that Libby has taken
issue -- the Libby claimants have taken issue with the TDP and
what the impact of the TDP is, in light of what they believe to
be the unique circumstances of Libby claimants.

That proposition has been advanced by Dr. Whitehouse
and on the basis of Dr. Whitehouse's work, also -- in part of
the basis of Dr. Whitehouse's work, by Dr. Frank and by Dr.
Moolgavkar.  The core of the data is -- let me put more
precisely.  The data aspect of the proposition comes through
Dr. Whitehouse; that is, Dr. Frank relies upon the data
analysis and at least the data from Dr. Whitehouse, as does Dr.
Moolgavkar.  So, Dr. Whitehouse really is the source of data
that drives the equation.  And he's also the source of the
clinical analysis that drives the equation, but Dr. Frank has
also looked at and reviewed what Dr. Whitehouse has done.

So, this gets back down to a proposition that Your
Honor is very familiar with from the estimation proceeding,
which is that there's a huge importance to what data is
furnished and when it's furnished, and in what form.  And this
is not -- this is not proven to be any easier in the context of

1  Libby.

2       Now, there's some data that's been published in

3  articles.  That is not the subject that we're taking up here.

4  The subject that we're taking up is the data that has not been

5  published, and the data that has not been published regarding

6  the Libby claimants falls into two categories.  There is the

7  data that's been gathered by the CARD Clinic, which is a clinic

8  in Libby that's seen many people from Libby, and there's the

9  data that's been gathered by the ATSDR as part of its survey.

10 The ATSDR did a survey of people in Libby in 2000, added a lot

11 of data.  They published a paper, but the underlying data is

12 what's necessary in order to address the very specific issues

13 that are posed here.  That data has been available for a long

14 time.

15      Dr. Whitehouse, in his work, has turned out a whole

16 series of reports, supplements, supplemental material to the

17 supplements.  We have never taken the position of complaining

18 about any of that, even though some of the information, a lot

19 of the information and analysis of the information, was

20 produced subsequent to the date for the expert reports.

21 Instead, we let all of the information that Dr. Whitehouse

22 used, up through the time of his deposition, be used in

23 connection with his deposition.  We took no position that said

24 he was precluded on relying on something because the reliance

25 materials had been produced too late, and I could go through

1 chapter and verse on that.

2      This now converges on the famous 1800 people, because
3 the CARD mortality data is a subset of 1800 people who have
4 been seen at the CARD Clinic.  Your Honor is familiar with the
5 1800 through the argument that we had the other day.

6      Your Honor is also familiar that the 1800 has not all
7 been produced.  That only 950 of them have been produced and
8 that production, I might add, did not take place in a timely
9 fashion either.  That took a lot of time to accomplish.

10      Dr. Whitehouse, in his last deposition, not only
11 tried to change his opinion from 1800 to 950, but he then
12 offered a further opinion for the first time, which is that he
13 could actually extrapolate from 79 people, within the 950, to
14 the 950 and that the 950 were representative of the Libby
15 population.  That came out for the first time in his
16 deposition.  I was there, and together with Mr. Finch, I took
17 it.

18      In light of that testimony, as well as the fact that
19 a lot of information had been produced late, we took the
20 position and told the Libby people specifically that Dr. Weill
21 needed more time to complete his work.  We did not take the
22 position that Dr. Whitehouse should be foreclosed from
23 testifying to those matters.  And Dr. Weill has, in fact, done
24 his work, in order to respond to the notion that either the
25 extrapolation is appropriate or that any of the CARD data

1  really is representative of the Libby population in a medical,

2  scientific sense of representative.  He has done an analysis

3  not only of the CARD data, which he analyzes in his report, but

4  he's also done an analysis of the ATSDR's data, in order to

5  demonstrate that the CARD data is not representative, that the

6  ATSDR data shows things that are completely different from it

7  and that any effort by Dr. Whitehouse to extrapolate from his

8  personal experience with 79 people out of thousands of people,

9  and these 79 people are all people who have passed away, so

10  their exposures and their diagnoses are old, as opposed to the

11  Libby population today, which has more recent exposures and

12  they're still alive.  So, the ATSDR data is 2000 data.  People

13  who died already go back during a much earlier period of time.

14          So, all that's required in the analysis by Dr. Weill.

15  He's done it on an expedited basis, this is all since, or is a

16  -- this is all in response to, in a need to respond to what Dr.

17  Whitehouse has said, in part, for the first time in his

18  deposition in June.  He's now done all that work and he

19  submitted a report that analyzes the data.  The data has been

20  available, the data is certainly available, but the position is

21  a new position and just like in any statistical model, and Your

22  Honor knows this from estimation, it is a labor intensive

23  process to actually work with this data and come up with

24  analyses.  So, we've now done that in response to Mr.

25  Whitehouse's analysis -- Dr. Whitehouse's analysis.  That is

1 the Weill report.

2       To the extent that Dr. Weill continues to work, it is
3 because their work has also continued.  They've now got the new
4 x-rays and HRCTs.  They've now got new issues that they've
5 raised and as a consequence, we have had to do more work and
6 that is the issue that I raised this morning, is that we're
7 even prepared to allow their new theories to come in, provided
8 that Dr. Weill has the opportunity to respond.

9       So, when Mr. Heberling says, well, that's okay, but
10 now this recent report, which is responsive to what Dr.
11 Whitehouse did before, prior to, and in his deposition, can't
12 come in, it throws the whole thing out.  It's just not
13 workable, it's completely going back on the sequence that we
14 followed here.  So, it's all that Dr. Weill can do to keep up
15 with the changing target that Dr. Whitehouse has represented.
16 He is a changing target.  In his deposition he said brand new
17 things and we did not object, we said, okay, we'll respond to
18 it.  We've now responded to it.

19       And I just don't know what more it is that we can do.
20 Now, if they want, in some fashion, to say that Dr. Weill's
21 analysis of the ATSDR data is flawed and they want to make Dr.
22 Whitehouse available for a further deposition with regard to
23 the ATSDR data, I suppose we can work that in.  But, to take
24 the position that, well, none of this counts any more, well,
25 then fine, then nothing that Dr. Whitehouse testified to in his

1 deposition counts either, and we'll move to preclude everything

2 that postdates his last, you know, formal expert report.  But,

3 this is not progress.  We've tried to accommodate Dr.

4 Whitehouse's continuing work, and for Mr. Heberling to say,

5 well, no, but you now can't respond to his continuing work, is

6 not a workable solution.

7        So, my proposal is, in order to continue to advance

8 this ball, that we stick with the proposal that we made this

9 morning.  The proposal that we made this morning is that the

10 record of what has been submitted as reliance materials is

11 fixed as of Monday of this week, as well as expert work.  That

12 the only exception to that, we would say, and I make this by

13 way of a proposal, is if Dr. Whitehouse, and only Dr.

14 Whitehouse, wants to respond to the ATSDR data, which he has,

15 it's been available to him the whole time, you know, if they

16 want to give us a timely response to that, and we can take his

17 deposition in time for the <u>Daubert</u> briefing, you know, we would

18 accept that.  But, in terms of anything else, we just can't get

19 from here to there.

20        THE COURT:  Okay.  Who is addressing this for Libby?

21        MR. HEBERLING:  This is Jon Heberling in Montana.

22        THE COURT:  Go ahead.

23        MR. HEBERLING:  Well, this is very difficult to argue

24 because we just got the Weill report last Friday and, frankly,

25 last evening was the first time I looked at it. It involved

1  printing it out, it's 561 pages of data, and I -- we are

2  considering making a motion regarding Dr. Weill, but we are not

3  prepared to discuss it with the Court in the context of some

4  proposal which might become an order.  So, we have great

5  difficulty in that regard.

6  　　　　Mr. Bernick made a key statement, I wrote it down, he

7  says that Dr. Weill's work was all in response to what Dr.

8  Whitehouse said, for the first time in June.

9  　　　　MR. BERNICK:  I didn't say that, that is absolutely

10  incorrect.  I didn't say that.  Fine.

11  　　　　MR. HEBERLING:  Dr. -- I didn't interrupt you, David.

12  　　　　MR. BERNICK:  Sure.

13  　　　　MR. HEBERLING:  Dr. Weill's work, as I see it in the

14  report, is hundreds of pages of analysis of individual

15  patients' pulmonary function tests.  This was -- this is in

16  response to a request for production in 2006, where they

17  obtained most of the Libby clinic records on pulmonary function

18  tests and they've been working on this analysis for a long

19  time.  And I grant that it is very labor intensive, and it must

20  have taken a long time.  But, this is the kind of thing that

21  they should have filed back in December, as an expert report.

22  It has nothing to do with the Dr. Whitehouse deposition.

23  　　　　I also see a lengthy analysis of the ATSDR numbers.

24  ATSDR did screenings in Libby in 2000 and 2001.  There's a

25  paper published on plural abnormalities, showing 18 percent of

1 the people had plural abnormalities and that's in the Libby

2 population, not the CARD Clinic population, but the whole Libby

3 population.

4       There were also lung tests done, but nothing has ever

5 been published on that.  Grace obtained it by a special court

6 order, I think through the criminal case, we've never received

7 that data.  So, Dr. Whitehouse has never had an opportunity to

8 even look at it and we simply can't respond to something that

9 is over 500 pages, in a matter of a couple of weeks.

10       Then there's the statement that Dr. Whitehouse

11 presented new theories at his deposition.  I think they're -- -

12 the CARD mortality study was done based upon everyone who had

13 been seen at CARD who had died.  So, that's a general study.

14 There were 186 deaths in the patient population and 110 were

15 due to asbestos disease.  That's what the testimony will be.

16       In the March report, we supplied a further statement

17 because Dr. Frank had done his own measurements by that time,

18 and we said it is also observed -- this is in the Whitehouse

19 report, Pages 28, Paragraph 32 -- it is also observed that the

20 CARD patients, once diagnosed, have a probability of death by

21 asbestos related disease.  So, that is not new information at

22 the June deposition.

23       So, I think the short of this is that there are a lot

24 of problems here.  We're not prepared to argue a motion

25 regarding Dr. Weill at this time.  We need time to review the

1  data and see what really is there.  I haven't read his full

2  report yet.  So, I was not prepared to discuss this, I think

3  this will have to be a matter for further discussion.  This was

4  certainly not the issue of our being able to file a motion

5  regarding the Weill report, it was not discussed with Mr.

6  Bernick this morning.

7          The other issues regarding Dr. Moolgavkar and

8  supplementing repots, to the extent necessary, by their

9  witnesses and so forth, in response to the new material filed

10 with our motion regarding Dr. Moolgavkar, that was discussed,

11 but our opportunity to file a motion regarding Dr. Weill's

12 report was not discussed.  So, I'll leave it with that.  There

13 are more incorrect things that Mr. Bernick said, but I don't

14 want to take too much of the Court's time.

15         MR. BERNICK:  Your Honor, let me just --

16         THE COURT:  Well, I think what I'm hearing is, you

17 folks don't have an agreement with respect to any variance of

18 Libby issues from the general schedule, even though this

19 general schedule carves out Libby issues.  All I can say is, go

20 see if you can do them, and if not, then I guess you're going

21 to have to submit your own individual versions and I'll pick

22 one.  I'm not going to have another hearing on this matter.  It

23 seems to me that we've been at this now for two hours and this

24 duplicates the two hours, pretty much, that we've already spent

25 on this issue, two and a half hours, a couple of days ago.

1 Frankly, that's enough.

2      You folks have a trial to go through, and if you

3 can't come to an agreement about how it's going to happen, then

4 you'll live with my ruling.  I think you'd probably be happy

5 with your own.  So, my suggestion is, you try to resolve it.

6      MR. BERNICK:  Your Honor, we'll certainly try to do

7 that.  But, in fairness, really to both sides on this, this was

8 an issue that was raised on Monday, but we did not have the

9 time to address.  And it is a very central issue and, you know,

10 it clearly -- it doesn't go simply to the dates here, it goes

11 to the whole question of the timeliness of the work that's been

12 done, and I'll say this generally, by both sides.

13      So, certainly we'll try to reach agreement, that's

14 not really been achievable, heretofore, and we're talking about

15 something that is central.  So, you know, I don't -- I'm happy

16 to have a further dialogue.  I don't think that Mr. Heberling

17 understands what happened at the Whitehouse deposition,

18 understands the evidence.

19      THE COURT:  Folks, it's enough.  I'm not going into

20 this any more. You'll either come to an agreement or you'll

21 each file something.  I'll give you a date by which to file

22 your own prospective orders.  And I can tell you this, I'm not

23 going to reopen discovery and I'm not going to extend the time

24 for submitting expert reports.  So, if you can't come to an

25 agreement about this, it's going to be much easier for me

**J&J COURT TRANSCRIBERS, INC.**

1 because the expert reports submitted by the deadline will be

2 it, and there won't be supplements, by anybody.

3          MR. BERNICK:  Well, but Your Honor, the difficulty

4 is, is that our expert report was deferred in light of Dr.

5 Whitehouse's testimony which took place in June.  So, the

6 effect of what Your Honor is saying, if I understand it,

7 basically is to say, Dr. Whitehouse got away with it because he

8 testified in June and we didn't object to it and now our

9 expert's work in response to Dr. Whitehouse is, as a whole --

10          THE COURT:  No, I think what I said --

11          MR. HEBERLING:  No, that's --

12          THE COURT:  -- I don't think that's what I said.

13 That's not what I intended to say.

14          MR. HEBERLING:  And that's not correct, either.

15          MR. BERNICK:  Well -- but what is it that Your Honor

16 intended to say, then?  I'm not --

17          THE COURT:  I intended to say that you folks ought to

18 work this out.  To the extent that there is new information

19 that's been presented, I've already said that if the

20 information is as a result of the new case management order and

21 depositions taken after August 10th, that you can have a time

22 to supplement.  If the same thing happened before, then be

23 reasonable with each other and give each other a time to

24 supplement so that you can get on with the issues that you

25 really want to try.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. BERNICK:  Thank you.  That's all we have today.

2          THE COURT:  I'm not sure about this proposed order,

3    Mr. Bernick, that I've been submitted -- that Ms. Baer sent

4    here.

5          MR. BERNICK:  We need to amend it and re-circulate it

6    and tender it to Your Honor, in light of things that you've

7    decided today.

8          THE COURT:  Okay.  That's fine.  Now, if you and the

9    Libby folks can't work out some supplement, when do you intend

10   to submit your competing orders with respect to that, and I'll

11   just do an order?

12         MR. BERNICK:  Yes.  I think that really this has a

13   carve-out.  Remember Paragraph 4, Romanette ii?

14         THE COURT:  Yes.

15         MR. BERNICK:  And the carve-out, I think, speaks to

16   the issue, I'm just wondering if it speaks completely to it,

17   because -- I guess it does, because there are still -- they've

18   moved to supplement their objections.  We've objected to that

19   -- to supplement their objections.   We've now objected to

20   that.  I would suggest that Your Honor not rule on that until

21   we see if we can work something out, but that's not addressed

22   here, in this order and not affected, I think, by the order.

23         Your Honor, they have a motion to -- they have a late

24   report for Dr. Moolgavkar, we'll move to strike that report,

25   that's not really, I think, affected here.  So, I don't see

1 that there is anything in the order that can't go forward.  The

2 Libby thing will just have to be -- we'll have to battle that

3 out, I guess and then think about what its implications are for

4 what the Court enters here.

5        What I guess I'm saying is, I think Your Honor should

6 enter this case management order in the fashion that's

7 consistent with what you've found today.  And there's already a

8 carve-out for Libby and we'll see if we can work out Libby, and

9 if we can't, then Your Honor will have to rule on it and then

10 determine, basically, how to fit it in the context of what's

11 taking place.

12        MR. LEWIS:  Yes, Libby agrees with that and the CMO

13 can certainly be filed and signed as of today.  And specific

14 motions have been made to strike various witnesses or file a

15 late supplemental report, and those motions can be heard on --

16 at the time of the omnibus hearing on August 24th, if we can't

17 work out the motions before that.

18        MR. BERNICK:  I'm not agreeable to August 24th,

19 that's very late, but I'm certainly agreeable to the idea that

20 the motions can be filed and they can be heard.

21        THE COURT:  Okay.  I don't know that you're going to

22 get a hearing before me prior to August 23rd, Mr. Bernick, so I

23 hope you are able to work things out.

24        MR. BERNICK:  But, see that -- I understand that,

25 Your Honor, but, again, the Libby folks don't want the

1  confirmation hearing to take place on time.  And --

2         THE COURT:  Well, it's not going to be continued.  I

3  think I've ruled that.

4         MR. BERNICK:  I understand that.

5         MR. LEWIS:  This is Tom Lewis.  I don't understand

6  why Mr. Bernick makes comments like this.  What really happened

7  this morning at the meet and confer, Your Honor, is that Mr.

8  Bernick appeared late for the -- and we didn't have enough time

9  to discuss the issue and, furthermore, Dr. Weill's report was

10 not discussed during that meet and confer mainly because he

11 wasn't there, I presume.  It wasn't discussed --

12        MR. BERNICK:  Your Honor, I object to all this.  This

13 is a meet and confer, that's all.

14        THE COURT:  Gentlemen, I object to all of it, too.

15 Just stop.  I mean, this is like the pot calling the kettle

16 black.  You folks ought to be able to come up with an agreement

17 concerning your trial witnesses and how they're going to be

18 produced.  This just makes absolutely no sense to me that you

19 can't work out an issue concerning an expert report and how to

20 deal with it in the context of a trial.  Your experts certainly

21 can deal with each other in the context of the trial.

22        MR. LEWIS:  But, the point I was making, Your Honor,

23 was only that it wasn't discussed, and I am all for trying to

24 work it out.  I am going to do -- we are going to do our best

25 to comply with what the Court wants us to do here, and if we

1 can't work it out, we'll proceed with the motions and I thank

2 you for your ruling.  Thank you.

3        THE COURT:  Okay.  If you can't work out the timing

4 of these issues, I would like to get competing orders submitted

5 from you so that I have an opportunity to understand what it is

6 that you're still fighting about and, yes, we'll continue it

7 until August 24th, if I can't do an order in the meantime, but

8 if I can do an order, having listened to all of this, I'm not

9 going to have another argument on this on August 24th.

10        MR. BERNICK:  When would you like the orders?

11        MR. LEWIS:  When would you like to have the proposed

12 order?

13        THE COURT:  Well, how much time do you need to

14 actually try to work this out?

15        MR. BERNICK:  We're happy to work it out immediately,

16 but I know that Mr. Heberling has represented that he's still

17 making his way through all the data.  So, I don't know how long

18 --

19        MR. LEWIS:  Oh, I think we can work this out within

20 -- Jon, do you think we can get this done within 48 hours,

21 despite our position on this, and try to work something out?

22 I'm talking to Mr. Heberling.

23        MR. HEBERLING:  Well, we can certainly try.

24        MR. LEWIS:  Well, 72 hours, let's give a deadline.

25 We have responsibilities here to get these things done and we

1 need to make commitments, it seems to me.

2          THE COURT:  Okay.  Why don't I expect to get

3 competing orders if you can't do a consensual order, by August

4 the 10th.  I will expect to get a consensual order from you by

5 August the 7th.

6          MR. BERNICK:  That's fine.

7          MR. LEWIS:  That's fine with us, Your Honor.  Thank

8 you.

9          MR. HEBERLING:  Thank you, Your Honor.

10          MR. BERNICK:  I appreciate all the time, Your Honor,

11 this morning and what we'll do is, we'll turn around the case

12 management order, circulate it, and see if we can't submit it

13 to the Court on certification.

14          THE COURT:  Okay.  This issue that I just addressed

15 about the competing orders is with respect to Number 13, the

16 leave of Libby -- the motion of Libby claimants to file

17 supplements?

18          MR. BERNICK:  Yes, it is, but it goes beyond that.

19 That's one thing, is the supplemental objections.  The other

20 thing that, though, it relates to is what you see as Paragraph

21 4 of the case management order, which is basically the question

22 of the timing of expert discovery.

23          THE COURT:  Right.  I think the case management

24 order, as it currently stands, gives you enough flexibility to

25 negotiate something specific with the Libby claimants.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. BERNICK:  Right.

2          THE COURT:  So, I don't see a problem with the case

3    management order as it's structured.  I just need to make sure

4    that we have the other pieces of it pinned down.  And it's

5    those pieces that I'm looking for to come in, hopefully, by a

6    consensual order on August 7th, if not competing orders on

7    August 10.

8          MR. BERNICK:  Yeah, that's fine.  But, the only part

9    I think of the agenda for the omnibus that this really emanates

10   from is -- the only part that overlaps, is Item 12, or maybe

11   it's 13, whatever the supplemental objections item was.

12         THE COURT:  That's 13.

13         MR. BERNICK:  Right.  But, that's not commensurate

14   with all the issues that we have, but that is the only thing, I

15   think, on the agenda that directly relates to this.

16         THE COURT:  Okay.  Item 13 is going to be continued

17   till August the 24th, only if I cannot do an order in the

18   meantime that addresses this request to supplement.

19         I can assure the Libby claimants that to the extent

20   that any party, not just the plan proponents, but anybody,

21   needs an effort to either examine the entities on behalf of the

22   supplemental claims, if I grant leave to supplement, I'm also

23   going to grant leave for the other parties to supplement based

24   on these supplements.  So, work it out, please.

25         MR. LEWIS:  Thank you, Your Honor.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. BERNICK:  Thank you, Your Honor.  I appreciate

2   all the time, I know that all the parties do.

3          THE COURT:  All right, we're adjourned, thank you.

4          MR. BERNICK:  Thank you, bye.

5                        * * * * *

6                  **C E R T I F I C A T I O N**

7          I, ELAINE HOWELL, court approved transcriber, certify

8   that the foregoing is a correct transcript from the official

9   electronic sound recording of the proceedings in the

10  above-entitled matter, and to the best of my ability.

11

12  /s/ Elaine Howell                         Date: August 7, 2009

13  ELAINE HOWELL

14  J&J COURT TRANSCRIBERS, INC.

15

16

17

18

19

20

21

22

23

24

25  (JL/CR)

**J&J COURT TRANSCRIBERS, INC.**