**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

EXHIBIT

Acc 36(b)(b)-1

5-1-09            LV

PENGAD 800-631-6989

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 01-01139 JKF |
| W.R. GRACE & CO., *et al.*, | : | (Jointly Administered) |
| | : | |
| Debtors. | : | Related Docket No. 21241 |

## AMENDED NOTICE OF DEPOSITION OF ASBESTOS PI COMMITTEE PURSUANT TO RULE 30(B)(6)

PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil

Procedure and Rules 7030 and 9014 of the Federal Rules of Bankruptcy Procedure, OneBeacon

America Insurance Company ("OneBeacon"), Seaton Insurance Company ("Seaton"),

Government Employees Insurance Company ("GEICO"), and Columbia Insurance Company

f/k/a Republic Insurance Company ("Columbia"), through their undersigned counsel, will take

the deposition of the **Official Committee of Asbestos Personal Injury Claimants** (the

"Committee"), c/o Peter Van N. Lockwood, Esq., Caplin & Drysdale, Chartered, One Thomas

Circle N.W., Suite 1100, Washington, DC 20005.  By agreement, the deposition will commence

on **May 1, 2009**, beginning at **9:30 a.m.**, at Caplin & Drysdale, Chartered, One Thomas Circle

N.W., Suite 1100, Washington, DC 20005, and will continue from day to day thereafter until

complete.  The deposition will proceed before an officer authorized by law to administer oaths

and will be recorded by stenographic means.  You are hereby invited to attend and examine the

witness.

Pursuant to Rule 30(b)(6), the Committee shall designate one or more officers, directors,

managing agents, or other persons who consent to testify on their behalf as to all facts and other

information known or reasonably available to the Committee relating to the matters set forth in

Attachment A.  For each person designated to testify as to any matter set forth in Attachment A,

the Committee is requested to produce at the deposition all documents which the person has

reviewed in preparing to testify with respect to the matters as to which the person is designated

to testify, and, unless already made available in discovery, all other documents relating to the

matters set forth in Attachment A.

Dated: April 23, 2009

/s/ David P. Primack
Warren T. Pratt (DE Bar I.D. #4334)
David P. Primack (DE Bar I.D. #4449)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street, Suite 1000
Wilmington, DE 19801-1243
Telephone: (302) 467-4200
Facsimile: (302) 467-4201

- and -

Michael F. Brown (*pro hac vice*)
Jeffrey M. Boerger (*pro hac vice*)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile: (215) 988-2757

Counsel for OneBeacon America Insurance
Company, Seaton Insurance Company,
Government Employees Insurance
Company, and Columbia Insurance
Company f/k/a Republic Insurance
Company

## ATTACHMENT A

DEFINITIONS

1.    "Plan" means the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009.

2.    The following terms have the meanings ascribed to them in the Plan:

      a.  "Asbestos Insurance Entity"

      b.  "Asbestos Insurance Entity Injunction"

      c.  "Asbestos Insurance Rights"

      d.  "Asbestos Insurance Transfer Agreement"

      e.  "Asbestos PI Channeling Injunction"

      f.  "Asbestos PI Claim"

      g.  "Asbestos PI FCR"

      h.  "Asbestos PI TAC"

      i.  "Asbestos PI Trust"

      j.  "Asbestos PI Trustee"

      k.  "Asbestos PI Trust Agreement"

      l.  "Asbestos PI Trust Distribution Procedures"

      m.  "Bankruptcy Code"

      n.  "Class"

      o.  "Debtors"

      p.  "Exhibit Book"

q.  "General Unsecured Claim"

r.  "Indirect PI Trust Claim"

s.  "Plan Documents

t.  "Settled Asbestos Insurance Company"

3.  "BNSF" means BNSF Railway Company, or any predecessor of BNSF Railway Company, including without limitation, the Great Northern Railway Company, the Burlington Northern Railroad Company, and The Burlington Northern & Santa Fe Railway Company.

4.  "Document" or "documents" shall have the meaning set forth in Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, the original and non-identical copy of any written, electronic, recorded, or graphic matter, however produced or reproduced, including, without limitation, any correspondence, memoranda, notes, meeting minutes, telegrams, reports, transcripts, e-mails, or telephone conversations or any other writings or documentary material of any nature whatsoever, together with any attachments thereto and enclosures therewith, and any other retrievable matter (whether encarded, taped or encoded, electrostatically or otherwise), in the possession, custody, or control, of you, your agents, employees, counsel, or other representatives.  Non-identical copies, drafts, and identical copies with handwriting are separate "documents" within the meaning of that term.

5.  "Kaneb" means Kaneb Pipe Line Operation Partnership, L.P. and/or Support Terminal Services, Inc.

6.  "Libby Claimants" means the claimants who allege personal injuries due to exposure to asbestos from the Debtors' operations in Lincoln County, Montana.

7.  "Non-Settled Asbestos Insurance Company" means any Asbestos Insurance Entity other than a Settled Asbestos Insurance Company.

8.    "Scotts" means The Scotts Company, LLC.

## SUBJECT MATTER OF TESTIMONY

A.      Classification and treatment of Indirect PI Trust Claims, including "Indemnified Insurer TDP Claims" and "Insurance-Related TDP Claims" as those terms are used in Sections 5.13 and 5.12 respectively of the Asbestos PI Trust Distribution Procedures.

B.      Bases for the classification of certain contractual indemnity claims held by Settled Asbestos Insurance Companies as Class 6 Asbestos PI Claims.

C.      Bases for the classification and treatment of non-asbestos-related contractual indemnity claims held by Settled Asbestos Insurance Companies as Class 9 General Unsecured Claims.

D.      Scope and operation of the Asbestos PI Channeling Injunction.

E.      Scope and operation of the Asbestos Insurance Entity Injunction and Successor Claim Injunction.

F.      Scope and operation of Section 7.15 of the Plan entitled, "Insurance Neutrality," and any other purported insurance neutrality provisions in the Plan or Plan Documents.

G.      Operation of the Asbestos PI Trust Agreement and Asbestos PI Trust Distribution Procedures.

H.      Bases for Settled Asbestos Insurance Company designations appearing in Exhibit 5 to the Exhibit Book.

I.      Scope and bases for releases and exculpation provisions in the Plan.

J.      The scope, operation, and necessity of the findings of fact, conclusions of law, orders, and decrees set forth in Section 7.7 of the Plan.

K.      The impact of the Plan and Plan Documents on the claims asserted, threatened, or that may later be asserted by Scotts, BNSF, the Libby Claimants, and/or Kaneb against the Debtors and/or any Asbestos Insurance Entity.

L.      The criteria used to select the Asbestos PI Trustees and the Asbestos PI TAC.

M.      The business background, experience, and qualifications of the individuals selected to be the Asbestos PI Trustees and the members of the Asbestos PI TAC.

N.      The respective powers and authority conferred upon the Asbestos PI Trustees, Asbestos PI TAC, and the Asbestos PI FCR under the Plan and Plan Documents including, but not limited to, the Asbestos PI Trust Agreement, Asbestos PI Trust Distribution Procedures, and the Asbestos Insurance Transfer Agreement.

O.      The respective roles of the Asbestos PI Trustees, Asbestos PI TAC, and the Asbestos PI FCR in the evaluation, handling, defense and settlement/resolution of Asbestos PI Claims under the Plan and Plan Documents.

P.      The role, if any, of the Asbestos Insurance Entities in the evaluation, handling, defense and settlement/resolution of Asbestos PI Claims under the Plan and Plan Documents.

Q.      The scope of the Asbestos Insurance Rights that are to be transferred or assigned to the Asbestos PI Trust pursuant to the Asbestos Insurance Transfer Agreement, and any other Plan Documents.

R.      The impact of the Plan and Plan Documents on the respective rights and duties of the Debtors and Asbestos Insurance Entities under the Asbestos Insurance Policies.

S.      The impact of the Plan and Plan Documents on subsequent coverage litigation between the Asbestos PI Trust (or the Debtors) and Asbestos Insurance Entities including, but not limited to, Non-Settled Asbestos Insurance Companies.

T.      The nature and value of the Asbestos PI Trust Assets to be used to fund the Asbestos PI Trust.

U.      The Plan's compliance with Section 524(g) of the Bankruptcy Code, as well as other applicable provisions of the Bankruptcy Code.

V.      Any other topic identified in a Rule 30(b)(6) Deposition Notice served by any Asbestos Insurance Entity on the Official Committee of Asbestos Personal Injury Claimants.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

**EXHIBIT**
ACC 3016)6 -2
5-1109
(X)

In re:                                          :        Chapter 11
                                                :
W.R. GRACE & CO., *et al.*,                     :        Case No. 01-1139 (JKF)
                                                :        Jointly Administered
                    Debtors-in-possession.      :
                                                :
                                                :

## OBJECTIONS OF THE OFFICIAL COMMITTEE
## OF ASBESTOS PERSONAL INJURY CLAIMANTS TO RULE 30(B)(6)
## NOTICES OF DEPOSITION SERVED BY CERTAIN PLAN OBJECTORS

Pursuant to Federal Rules of Civil Procedure 26 and 30, and Federal Rules of Bankruptcy

Procedure 3020(b)(1), 7026, 7030, and 9014, the Official Committee of Asbestos Personal Injury

Claimants ("**ACC**"), by and through its undersigned counsel, hereby objects as follows to the

Rule 30(b)(6) notices of deposition (collectively, "**Notices**") served on the ACC by OneBeacon

America Insurance Company, Seaton Insurance Company, Government Employees Insurance

Company, Columbia Insurance Company f/k/a Republic Insurance Company, Fireman's Fund

Insurance Company, Allianz S.p.A., f/k/a Riunione Adriatica di Scurta, the Libby Claimants,

Maryland Casualty Company, Zurich Insurance Company, and Zurich International (Bermuda)

Ltd.:

1.      The ACC objects to the Notices to the extent they seek Rule 30(b)(6) testimony

regarding legal conclusions, information prepared in anticipation of litigation, information

obtained by or on behalf of counsel for the ACC in preparation for trial, information protected by

the attorney-client privilege, information protected by the common-interest privilege,

information protected by Federal Rule of Evidence 408, and/or information otherwise beyond the

permissible scope of discovery as set forth in the Federal Rules of Civil Procedure, the Federal

Rules of Evidence, the Federal Rules of Bankruptcy Procedure, or the rules of this Court.

{D0150983.1 }

2.    The ACC further objects to the Notices to the extent they seek testimony and information protected by the work product doctrine. *See* Hickman v. Taylor, 329 U.S. 495, 511 (1947) (finding that the work product doctrine excludes from disclosure attorney statements, memos, correspondence, briefs, and mental impressions obtained or prepared by an attorney in anticipation of litigation); In re Grand Jury (Impounded), 138 F.3d 978, 981 (3d Cir. 1998); Tobacco & Allied Stocks, Inc. v. Transamerica Corp., 16 F.R.D. 537, 541-43 (D. Del. 1954) (stating that "pre-trial discovery does not call for the elicitation of contentions, opinions or legal conclusions of an attorney").

3.    The ACC also objects to the Notices to the extent they seek testimony that would disclose communications in connection with negotiations of a plan of reorganization or draft plan documents.  Courts in numerous asbestos-related bankruptcies have prohibited discovery into, and the disclosure of, such information.  *See* In re Federal-Mogul Global, Inc., Case No. 01-10578 (JKF) (Bankr. D. Del. Feb. 26, 2007) (Hr'g Tr. at 31) (finding that draft plan documents are not properly discoverable); In re Pittsburgh Corning Corp., Case No. 00-22876 (JKF) (Bankr. W.D. Pa. Feb. 19, 2004) (Hr'g Tr. at 64-66) (finding that drafts of plan documents are not discoverable); In re ACandS, Inc., No. 02-12687 (RJN) (Bankr. D. Del. Sept. 30, 2003) (Hr'g Tr. at 42-45) (denying discovery into plan negotiations on the grounds that such discovery is irrelevant to the issue of good faith in proposing the plan); In re Babcock & Wilcox Co., No. 00-10992 (JAB) (Bankr. E.D. La. Aug. 20, 2003) (Hr'g Tr. 84) (denying insurers' motion to compel discovery on draft plan of reorganization documents and confidential plan of reorganization negotiations); In re Combustion Eng'g, Case No. 03-10495 (JKF) (Bankr. D. Del. May 2, 2003) (Hr'g Tr. at 301) (observing that "drafts generally are not relevant to anything"); In re Eagle-

Picher Indus., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) (finding that creditors were not entitled to drafts of proposed plans of reorganization).

4.      The ACC expressly reserves all other claims of privilege.

5.      Subject to and without waiving any of its objections, the ACC designates the following witness pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure: Peter Lockwood.  The ACC will make Mr. Lockwood available for deposition on all topics designated by any plan objector for no longer than a total of eight (8) hours, on either May 1, 2009, or May 4, 2009.

**[Signature of counsel on following page]**

**CAMPBELL & LEVINE, LLC**

*/s/ Marla R. Eskin*
Marla R. Eskin (No. 2989)
Mark T. Hurford (No. 3299)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900
Telefax: (302) 426-9947
meskin@camlev.com
mhurford@camlev.com

**CAPLIN & DRYSDALE, CHARTERED**
Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone: (212) 319-7125
Telefax: (212) 644-6755

Peter Van N. Lockwood
Nathan D. Finch
Jeffrey A. Liesemer
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000
Telefax: (202) 429-3301

*Counsel for the Official Committee
of Asbestos Personal Injury Claimants*

Date: April 17, 2009

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

W.R. GRACE & CO., *et al.*,

               Debtors in Possession.

:
:
:
:
:
:
:

Chapter 11

Case No. 01-01139 (JKF)
Jointly Administered

## <u>CERTIFICATE OF SERVICE</u>

I, Marla Rosoff Eskin, of Campbell & Levine, LLC, hereby certify that on April 17, 2009 I caused a copy of the foregoing to be served upon the individuals on the attached service list via first-class mail.

Date: April 17, 2009

*/s/ Marla Rosoff Eskin*
Marla Rosoff Eskin (No. 2989)

**W.R. Grace 2002 Service List**

Laura Davis Jones, Esquire
James O'Neill, Esquire.
Pachulski, Stang, Ziehl, & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705

William H. Sudell, Jr., Esquire
Eric D. Schwartz, Esquire
Morris, Nichols Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

Mark D. Collins, Esquire
Deborah E. Spivak, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19899

Jeffrey C. Wisler, Esquire
Michelle McMahon, Esquire
Connolly Bove Lodge & Hutz LLP
1220 Market Street, 10th Floor
Wilmington, DE 19899

Carmella Keener, Esquire
Rosenthal, Monhait, Gross & Goddess, P.A.
919 Market Street, Suite 1401
Wilmington, DE 19899

Kathryn Sallie, Esquire
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE 19899

Joseph Grey, Esquire
Stevens & Lee
1105 N. Market St. – Ste 700
Wilmington, DE 19801-1270

Francis A. Monaco, Jr., Esquire
Womble Carlyle
222 Delaware Avenue, 15th Floor
Wilmington, DE 19801

Mark S. Chehi, Esquire
Kevin Brady, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
Wilmington, DE 19801

Robert Jacobs, Esquire
Jacobs & Crumplar, PA
Two East 7th Street
Wilmington, DE 19801

Kathleen M. Miller, Esquire
Smith, Katzenstein & Furlow LLP
The Corporate Plaza
800 Delaware Ave., 7th Floor
Wilmington, DE 19899

Theresa K.D. Currier, Esquire
Buchanan Ingersoll & Rooney, P.C.
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801

David Klauder, Esquire
Office of the United States Trustee
844 King St., 2nd Floor
Wilmington, DE 19801

William D. Sullivan, Esquire
Sullivan Hazeltine Allinson
4 East 8th Street, Suite 400
Wilmington, DE 19801

Michael R. Lastowski, Esquire
Duane Morris LLP
1100 N. Market Street, Suite 1200
Wilmington, DE 19801

Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
824 N. Market Street, Suite 904
Wilmington, DE 19801

J. Douglas Bacon, Esquire
David S. Heller, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL 60606

D. J. Baker, Esquire
Sheila Birnbaum, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

Nancy Worth Davis, Esquire
Ness, Motley, Loadhold, Richardson & Poole
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465

Securities & Exchange Commission
15th & Pennsylvania Ave. N.W.
Washington, DC 20020

District Director
IRS
409 Silverside Road
Wilmington, DE 19809

Securities & Exchange Commission
Atlanta Regional Office Branch/Reorganization
3475 Lenox Road, NE, Suite 100
Atlanta, GA 30326-1232

Secretary of Treasurer
P.O. Box 7040
Dover, DE 19903

Secretary of State
Division of Corporations
Franchise Tax
P.O. Box 7040
Dover, DE 19903

James D. Freeman, Esquire
Jerel L. Ellington, Esquire
U.S. Department of Justice
Environmental Enforcement Section
1961 Stout Street – 8th Floor
Denver, CO 80294

Martin J. Bienenstock, Esquire
Judy G.Z. Liu, Esquire
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

David S. Rosenbloom, Esquire
Jeffrey E. Stone, Esquire
Lewis S. Rosenbloom, Esquire
McDermott, Will & Emery
227 West Monroe Street
Chicago, IL 60606-5096

Brad Rogers, Esquire
Office of the General Counsel
Pension Benefit Guaranty Corp
1200 K. Street, N. W.
Washington, D.C. 20005-4026

Pamela Zilly
Richard Shinder
David Blechman
Michael Alexander
The Blackstone Group
345 Park Avenue
New York, NY 10154

Patrick L. Hughes, Esquire
Haynes & Boone LLP
1 Houston Center
1221 McKinney, Suite 2100
Houston, TX 77010

Elio Battista, Jr., Esquire
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801-4226

David S. Heller, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL 60606

Stephen H. Case, Esquire
Nancy L. Lazar, Esquire
David D. Tawil, Esquire
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Jan M. Hayden, Esquire
William H. Patrick, Esquire
Heller, Draper, Hayden, Patrick & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6103

Joseph F. Rice, Esquire
Ness, Motley, Loadholt, Richardson & Poole
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465

Attn.: Meridee Moore & Kirsten Lynch
Farallon Capital Management LLC
One Maritime Plaza
Suite 1325
San Francisco, CA 94111

John M. Klamann, Esquire
Klamann & Hubbard
7101 College Blvd., Suite 120
Overland Park, KS 66210

Hamid R. Rafatjoo, Esquire
Pachulski, Stang, Ziehl, & Jones LLP
10100 Santa Monica Boulevard
Los Angeles, CA 90067-4100

Charles E. Boulbol, Esquire
26 Broadway, 17th Floor
New York, NY 10004

Matthew Grimshaw, Esquire
Rutan & Tucker
611 Anton Boulevard
Suite 1400
Costa Mesa, California 92626-1931

Steven T. Baron, Esquire
Member
Silber Pearlman, LLP
2711 North Haskell Avenue, 5th Floor, LLP
Dallas, TX 75204

Bankruptcy Administration
IOS Capital, Inc.
1738 Bass Road
P.O. Box 13708
Macon, GA 31208-3708

W.J. Winterstein, Jr., Esquire
John J. Winter, Esquire
William M. Aukamp, Esquire
Eleven Penn Center, 29th Floor
1835 Market Street
Philadelphia, PA 19103

Richard S. Cobb, Esquire
Megan N. Harper, Esquire
Landis Rath & Cobb LLP
919 Market Street, Suite 600
Wilmington, DE 19801

Margery N. Reed, Esquire
Duane Morris LLP
4200 One Liberty Place
Philadelphia, PA 19103-7396

Elizabeth S. Kardos, Esquire
Gibbons, Del Deo, Dolan, Griffinger
 & Vecchione, PC
One Riverfront Plaza
Newark, NJ 07102-5497

Thomas J. Noonan, Jr.
c/o R & S Liquidation Company
Five Lyons Mall PMB #530
Basking Ridge, NJ 07920-1928

James A. Sylvester, Esquire
Intercat, Inc.
P.O. Box 412
Sea Girt, NJ 08750

Alan R. Brayton, Esquire
Brayton & Purcell
222 Rush Landing Road
Novato, CA 94945

Jonathan W. Young, Esquire
T. Kellan Grant, Esquire
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive, Suite 3000
Chicago, IL 60606-1229

Steven J. Johnson, Esquire
Gibson, Dunn & Crutcher LLP
1530 Page Mill Road
Palo Alto, CA 94304-1125

Russell W. Budd, Esquire
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219

Shelby A. Jordan, Esquire
Nathaniel Peter Holzer, Esquire
Jordan, Hyden, Womble & Culbreth, P.C.
500 N. Shoreline Blvd., Suite 900
Corpus Christi, TX 78471

Charlotte Klenke, Esquire
Schneider National, Inc.
P.O. Box 2545
3101 S. Packerland
Green Bay, WI 54306

Courtney M. Labson, Esquire
The Mills Corporation
Legal Department
1300 Wilson Boulevard, Suite 400
Arlington, VA 22209

Ira S. Greene, Esquire
Squadron, Ellenoff, Plesent & Sheinfeld, LLP
551 Fifth Avenue
New York, NY 10176-0001

Joseph T. Kremer, Esquire
Lipsitz, Green, Fahringer, Roll, Salisbury
 & Cambria, LLP
42 Delaware Avenue, Suite 300
Buffalo, NY 14202

Paul M. Matheny, Esquire
The Law Offices of Peter G. Angelos, P.C.
5905 Harford Road
Baltimore, MD 21214

Paul D. Henderson, Esquire
Paul D. Henderson, P.C.
712 Division Avenue
Orange, TX 77630

Michael J. Urbis, Esquire
Jordan, Hyden, Womble & Culbreth, P.C.
500 N. Shoreline Blvd., Suite 900
Corpus Christi, TX 78471

David B. Siegel
W.R. Grace and Co.
7500 Grace Drive
Columbia, MD 21044

Mary A. Coventry
Sealed Air Corporation
Park 80 East
Saddle Brook, NJ 07663

David Bernick, Esquire
Lisa G. Esayian, Esquire
Samuel L. Blatnick, Esquire
Kirkland & Ellis
300 North LaSalle
Chicago, IL 60654

Elizabeth J. Cabraser, Esquire
Richard M. Heimann, Esquire
Lieff Cabraser Heimann & Bernstein LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111

Derrick Tay, Esquire
Meighen Demers
Suite 1100, Box 11, Merrill Lynch Can.Tower
Sun Life Center, 200 Kint Street West
**Toronto, Ontario M5H 3T4**
**CANADA**

Evelyn J. Meltzer
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709

Scott L. Baena, Esquire
Bilzin Sumberg Dunn Baena Price
  & Axelrod LLP
First Union Financial Center
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131

Edward W. Westbrook, Esquire
Robert M. Turkewitz, Esquire
Richardson, Patrick, Westbrook & Brickman
174 East Bay Street
Charleston, SC 29401

Elihu Inselbuch, Esquire
Rita Tobin, Esquire
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Peter Van N. Lockwood, Esquire
Nathan D. Finch, Esquire
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005

Todd Meyer, Esquire
Kilpatrick Stockton
1100 Peachtree Street
Atlanta, GA 30309

Bernice Conn, Esquire
Robins, Kaplan, Miller & Ciresi LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067

Cindy Schultz
Ingersoll-Rand Fluid Products
One Aro Center
P. O. Box 151
Bryan, OH 43506

Peter A. Chapman, Esquire
572 Fernwood Lane
Fairless Hills, PA 19030

Michael B. Schaedle, Esquire
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103

Hal Pitkow, Esquire
The Falls at Lambertville
351 South Main Street
Lambertville, NJ 08530

Alan B. Rich, Esq.
Elm Place
1401 Elm Street, Suite 4620
Dallas, TX 75201

Mr. Thomas Moskie
Bankers Trust Company
Four Albany Street, 4th Floor
New York, NY 10006

Charles E. Gibson, III, Esquire
Gibson Law Firm
447 Northpark Drive
Ridgeland, MS 39157-5109

John P. Dillman, Esquire
Linebarger Heard Goggan Blair
Graham Peña & Sampson, LLP
P. O. Box 3064
Houston, TX 77253-3064

Steven J. Kherkher, Esquire
Laurence G. Tien, Esquire
Williams Kherkher Hart & Boundas, LLP
8441 Gulf Freeway, Suite #600
Houston, TX 77017

Steven T. Hoort, Esquire
Ropes & Gray
One International Place
Boston, MA 02110-2624

Patrick J. Reilly, Esquire
Cole, Schotz, Meisel, Forman & Leonard, P.A.
1000 N. West Street
Suite 1200
Wilmington, DE 19801

Paul M. Baisier, Esquire
SEYFARTH SHAW
1545 Peachtree Street, Suite 700
Atlanta, GA 30309

William S. Katchen, Esquire
Duane, Morris LLP
744 Broad Street, Suite 1200
Newark, NJ 07102-3889

Sander L. Esserman, Esquire
Stutzman, Bromberg, Esserman & Plifka
2323 Bryan Street
Suite 2200
Dallas, TX 75201-2689

Delta Chemical Corporation
2601 Cannery Avenue
Baltimore, MD 21226-1595

Paul D. Henderson, Esquire
Dies, Dies & Henderson
1009 W. Green Avenue
Orange, TX 77630

Tara L. Lattomus, Esquire
Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801

Todd C. Meyers, Esquire
Kilpatrick Stockton, LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4530

Peter S. Goodman, Esquire
Andrews & Kurth LLP
450 Lexington Avenue, 15th Floor
New York, New York 10017

Brad N. Friedman, Esquire
Rachel S. Fleishman, Esquire
Milberg Weiss Bershad Hynes & Learch
One Pennsylvania Plaza
New York, NY 10019

Lewis Kruger, Esquire
Robert Raskin, Esquire
Strook & Strook & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982

C. Randall Bupp, Esquire
Plastiras & Terrizzi
24 Professional Center Parkway
Suite 150
San Rafael, CA 94903

Thomas J. Noonan, Jr.
Herman's Sporting Goods in Liquidation
C/o R&S Liquidation Company, Inc.
5 Lyons Mall PMB #530
Basking Ridge, NJ 07920-1928

William E. Frese, Esquire
Attn: Sheree L. Kelly, Esquire
80 Park Plaza, T5D
P.O. Box 570
Newark, NJ 07101

Scott W. Wert, Esquire
Foster & Sear, L.L.P.
817 Greenview Drive
Grand Prairie, TX 75050

Rosa Dominy
Bankruptcy Administration
IOS Capital, Inc.
1738 Bass Road
P.O. Box 13708
Macon, GA 31208-3708

State Library of Ohio
c/o Michelle T. Sutter
Revenue Recovery
101 E. Town Street, Second Floor
Columbus, OH 43215

Dorine Vork, Esquire
Stibbe, P.C.
350 Park Avenue
New York, New York 10022

Jonathan H. Alden, Esquire
Assistant General Counsel
3900 Commonwealth Boulevard, MS 35
Tallahassee, Florida 32399-3000

Credit Lyonnais
1301 Avenue of the Americas
New York, New York 10019-0602

Randall A. Rios, Esquire
Floyd Isgur Rios & Wahrlich, P.D.
700 Louisiana, Suite 4600
Houston, TX 77002

Anton Volovsek
Rt2 – Box 200 #42
Kamiah, Idah 83536-9229

Paul G. Sumers, Esquire
TN Attorney General's Office, Bankr. Unit
P.O. Box 20207
Nashville, TN 37202-0207

General Counsel
Enron Energy Services
1400 Smith Street
EB 0889
Houston, TX 77002

Harry Lee, Esquire
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036

Thomas O. Bean, Esquire
Eric P. Magnuson, Esquire
Nutter, McClennen & Fish, LLP
World Trade Center West
155 Seaport Blvd.
Boston, MA 02210

Allan M. McGarvey, Esquire
Jon L. Heberling, Esquire
Roger M. Sullivan, Esquire
McGarvey Heberling Sullivan & McGarvey
745 South Main
Kalispell, MT 59901

Neil Berger, Esquire
Togut Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, NY 10119

Deirdre Woulfe Pacheo, Esquire
Wilentz Goldman & Spitzer
P.O. Box 10
Woodbridge Center Drive
Woodbridge, NJ 07095

John G. Stoia, Jr., Esquire
Timothy G. Blood, Esquire
Lerach Coughlin Stoia Geller Rudman & Robbins
LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

Philip Bentley, Esquire
Gary M. Becker, Esquire
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

Jacob C. Cohn, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Ralph R. Mabey, Esquire
Penrod W. Keith, Esquire
LeBoeuf Lamb Greene & MacRae LLP
1000 Kearns Building
Salt Lake City, UT 84101

James Sottile, Esquire
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036-5802

Richard S. Lewis, Esquire
Cohen Milstein Hausfeld & Toll, PLLC
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005

Marsha A. Penn, Esquire
P.O. Box 3725
Houston, TX 77253

Darrell W. Scott, Esquire
The Scott Law Group, P.S.
926 W. Sprague Avenue, Suite 583
Spokane, WA 99201

Thomas M., Esquire
Hagens Berman Sobol Shapiro LLP
One Main Street
4th Floor
Cambridge, MA 02142

Robert J. Dehney, Esquire
Morris Nicholas Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19899

David Pastor, Esquire
Edward L. Manchur, Esquire
Gilman & Pastor LLP
225 Franklin Street
16th Floor
Boston, MA 02110

Thomas G. Macauley, Esquire
Zuckerman Spaeder LLP
919 Market Street, Suite 990
PO Box 1028
Wilmington, DE 19899

Mark Minuti, Esquire
Saul Ewing LLP
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899

Thomas G. Whalen, Esquire
Stevens & Lee
1105 North Market Street, 7th Floor
Wilmington, DE 19801

Mr. Mark Hankin
HanMar Associates, M.L.P.
P.O. Box 26767
Elkins Park, PA 19027

Attn: Ted Weschler
Peninsula Capital, L.P.
404B East Main Street, 2nd Floor
Charlottesville, VA 22902

Jordan N. Malz, Esquire
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017

Richard D. Trenk, Esquire
Henry M. Karkowski, Esquire
Trenk, DiPasquale, Webster, Della Fera & Sodono P.C.
347 Mt. Pleasant Avenue
Suite 300
West Orange, New Jersey 07052-3317

Vahe Melkonian, Pres.
Newco Management Company LLC
6320 Canoga Avenue, Suite 1430
Woodland Hills, CA 91367

Christopher R. Momjian, Esquire
Senior Deputy Attorney General
Office of the Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107

Janet M. Weiss, Esquire
Gibson Dunn & Crutcher LLP
200 Park Avenue.
New York, NY 10166

Joseph L. Schwartz, Esquire
Curtis M. Plaza, Esquire
Craig T. Moran, Esquire
Riker Danzig Scherer Hyland & Perretti LLP
Headquarters Plaza, 1 Speedwell Avenue
Morristown, NJ 07962

Mr. Harvey Schultz
The Schultz Organization
900 Route 9 North
Woodbridge, NJ 07095

Charles L. Finke, Assistant Attorney General
Brad Rogers, Attorney
Pension Benefit Guarantee Corporation
Office of the General Counsel
1200 K Street, NW
Washington, DC 20005-4026

Richard A. O'Halloran, Esquire
BURNS, WHITE & HICKTON, LLC
531 Plymouth Road, Suite 500
Plymouth Meeting, PA 19462

W. Wallace Finlator, Jr.
Assistant Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602-0629

Daniel C. Cohn, Esquire
Christopher M. Candon, Esquire
Cohn & Whitesell LLP
101 Arch Street, Suite 1605
Boston, MA 02110

Steven K. Kortanek, Esquire
Joanne B. Wills, Esquire
Klehr, Harrison, Harvey, Branzburg & Ellers
919 Market Street, Suite 1000
Wilmington, DE 19801

William P. Bowden, Esquire
Amanda M. Winfree, Esquire
Ashby & Geddes, P.A.
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

Jeffrey L. Roelofs, Esquire
Anderson & Kreiger, LLP
43 Thorndike Street
Cambridge, MA 02141

John V. Fiorella, Esquire
Archer & Greiner, P.C.
1300 North Market Street
Suite 700
Wilmington, DE 19801

Thomas Tew, Esquire
Tew Cardenas L.L.P.
Four Seasons Tower, 15th Floor
1441 Brickell Avenue
Miami, Florida 33131-3407

James E. Wimberley, Esquire
McPherson, Monk, Hughes, Bradley & Wimberley, L.L.P.
3120 Central Mall Drive
Port Arthur, TX 77642

Marc Abrams, Esquire
Willkie, Farr & Gallagher
787 Seventh Avenue
New York, NY 10019-6099

Citadel Investment Group, L.L.C.
Attn: S. Jay Novatney
131 South Dearborn Street, 36th Floor
Chicago, IL 60603

Kirk A. Patrick III, Esquire
Donohue Patrick
1500 Bank One Centre-North Tower
PO Box 1629
Baton Rouge, LA 70821-1629

Anne McGinness Kearse, Esquire
Motley Rice LLC
28 Bridgeside Blvd.
PO Box 1792
Mt. Pleasant, SC 29465

Roger W. Hammond
Kforce Inc.
1001 East Palm Avenue
Tampa, FL 33605

Mr. Eugene Paul Sullivan
29-B Plaza Delas Flores
Freehold, NJ 07728

Todd C. Schiltz, Esquire
Wolf, Block, Schorr and Solis-Cohen LLP
Wilmington Trust Center
1100 N. Market Street, Suite 1001
Wilmington, DE 19801

Bruce D. Levin, Esquire
Peter B. McGlynn, Esquire
Bernkopf Goodman LLP
125 Summer Street, Suite 1300
Boston, MA 02110

Frederick P. Furth, Esquire
Michael P. Lehmann, Esquire
Christopher L. Lebsock, Esquire
The Furth Firm LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104

John C. Phillips, Jr., Esquire
Phillips, Goldman & Spence, P.A.
1200 N. Broom Street
Wilmington, DE 19806

Roger Frankel, Esquire
Richard H. Wyron, Esquire
Orrick, Herrington & Sutcliffe LLP
The Washington Harbour
3050 K Street, NW, Ste 200
Washington, DC 20007

Robert J. Sidman, Esquire
Tiffany Strelow Cobb, Esquire
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43215

Justin Shrader, Esquire
Shrader & Associates, L.L.P.
1021 Main Street, Ste. 1450
Houston, TX 77002

Sean Allen
BMC Group
720 Third Avenue, 23rd Floor
Seattle, WA 98104

M. David Minnick, Esquire
Michael P. Ellis, Esquire
Pillsbury Winthrop Shaw Pittman LLP
50 Fremont Street
San Francisco, CA 94105-2228

Gerald F. George, Esquire
Pillsbury Winthrop Shaw Pittman LLP
50 Fremont Street
San Francisco, CA 94105-2228

Thomas A. Spratt, Jr., Esquire
Pepper Hamilton, LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103

Steven T.Davis
Obermayer Rebmann Maxwell & Hippel LLP
3 Mill Road, Suite 306A
Wilmington, DE 19806

D. Alexander Barnes, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, Pa 19103-1895

Steven J. McCardell, Esquire
Jared Inouye, Esquire
Duham Jones & Pinegar
111 E. Broadway, Suite 900
Salt Lake City, UT 84111

John Waters, Esquire
Iowa Department of Revenue
Collections Section
P.O. Box 10457
Des Moines, Iowa 50306

Yves Lauzon
Michel Belanger
Lauzon Belanger, Inc.
286, rue St-Paul Quest, Bureau 100
Montreal Quebec

Daniel K. Hogan, Esquire
The Hogan Firm
1311 Delaware Avenue
Wilmington, DE 19806

David A. Hickerson, Esquire
M. Jarrad Wright, Esquire
Weil, Gotshal & Manges, LLP
1300 Eye Street N.W., Suite 900
Washington, D.C. 20005

Ralph I. Miller, Esquire
Weil, Gotshal & Manges, LLP
200 Cresent Court, Suite 300
Dallas, TX 75201

Neil B. Glassman, Esquire
Steven M. Yoder, Esquire
Kathryn D. Sallie, Esquire
The Bayard Firm
222 Delaware Avenue, Ste 900
Wilmington, DE 19801

Steven J. Mandelsberg, Esquire
Christina J. Kang, Esquire
Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022

Tobey M. Daluz, Esquire
Leslie C. Heilman, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801

Pryor Cashman LLP
Attn: Richard Levy, Jr., Esquire
410 Park Avenue
New York, NY 10022-4441

Jacqueline Dais-Visca, Esquire
Business Law Section
Ontario Regional Office
Suite 2400, Box 34
The Exchange Tower
130 King Street West
Toronto, Ontario M5X 1K6

Peter D. Keisler, Esquire
Assistant Attorney General
Department of Justice, Civil Division
Ben Franklin Station
P.O. Box 875
Washington, DC 20044-0875

Katherine White, Esquire
Sealed Air Corporation
20 Riverfront Boulevard
Elmwood Park, NJ 07407

Garvan F. McDaniel, Esquire
Bifferato Gentilotti & Balick, L.L.C.
800 King Street, 1st Floor
Box 2165
Wilmington, DE 19801

John Kevin Welch, Esquire
Office of Legal Services
Fifth Floor, Capital Plaza Tower
Frankfort, KY 40601

John F. Dickinson, Jr., Esquire
Deputy Attorney General
Department of Law & Public Safety
Division of Law
Richard J. Hughes Justice Complex
P.O. Box 093
Trenton, NY 08625-0093

Elihu E. Allinson, Esq.
Sullivan Hazeltine Allinson LLP
4 East 8th Street, Suite 400
Wilmington, DE 19801

Anthony Petru, Esquire
Quynh L. Nguyen, Esquire
Hildebrand McLeod & Nelson LLP
350 Frank H. Ogawa Plaza, 4th Floor
Oakland, CA 94612

Daniel A. Speights, Esquire
Speights & Runyan
200 Jackson Avenue, East
P.O. Box 685
Hampton, SC  29924

Christopher D. Loizides
Loizides, PA
1225 King Street, Suite 800
Wilmington, DE 19801

John W. Kozyak
David L. Rosendorf
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon, 9th Floor
Coral Gables, FL 33134

*W R GRACE & CO NEW*

*Filing Date: 04/06/08*

UNITED STATES

SECURITIES AND EXCHANGE COMMISSION

WASHINGTON, DC 20549

FORM 8-K

CURRENT REPORT PURSUANT

TO SECTION 13 OR 15(D) OF THE

SECURITIES EXCHANGE ACT OF 1934

Date of report (Date of earliest event reported) April 6, 2008

W. R. GRACE & CO.

(Exact Name of Registrant as Specified in Its Charter)

Delaware

(State or Other Jurisdiction of Incorporation)



EXHIBIT
Acc 30(6)(6)3
5-7-09

1-13953                           65-0773649
(Commission File Number)          (IRS Employer Identification No.)
7500 Grace Drive                                      21044

Columbia, Maryland
(Address of Principal Executive Offices) (Zip Code)

DEPOSITION
EXHIBIT
#12
3/30/09 ASB

(410) 531-4000

(Registrant's Telephone Number, Including Area Code)


(Former Name or Former Address, if Changed Since Last Report)


Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):


o    Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)


o    Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)


o    Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))


o    Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))


------------------------------------------------------------------------

W. R. GRACE & CO.


FORM 8-K

CURRENT REPORT

Item 7.01.                     Regulation FD Disclosure.

On April 6, 2008, W. R. Grace & Co., on behalf of itself and its subsidiaries and affiliates that are debtors in the Chapter 11 cases, (the "Company") entered into an agreement in principle (the "Agreement") with the Official Committee of Asbestos Personal Injury Claimants, the Future Claimants Representative and the Official Committee of Equity Security Holders, all parties-in-interest in the Company's Chapter 11 case, that would settle all present and future asbestos-related personal injury claims against the Company on the terms and conditions set forth therein.  Certain terms and conditions of the Agreement are described in the press release attached hereto as Exhibit 99.1.  The description of the terms and conditions of the Agreement is qualified in its entirety by reference to the provisions of the Agreement attached hereto as Exhibit 99.2.

The information furnished pursuant to this Item 7.01, including Exhibit 99.1 and Exhibit 99.2, shall not be deemed to be "filed" for purposes of Section 18 of the Securities Exchange Act of 1934, as amended, (the "Exchange Act"), or otherwise subject to the liabilities of such section, nor shall such information be deemed incorporated by reference in any filing under the Securities Act of 1933, as amended, or the Exchange Act, except as shall be expressly set forth by specific reference in such a filing.

Item 9.01.                     Financial Statements and Exhibits.

(d)  Exhibits

99.1                           Press Release

99.2                           Term Sheet for Resolution of Asbestos Personal Injury Claims dated as of April 6, 2008

SIGNATURES


Pursuant to the requirements of the Securities Exchange Act of 1934, the
Registrant has duly caused this report to be signed by the undersigned,
thereunto duly authorized.



W. R. GRACE & CO.
(Registrant)
By /s/ Mark A. Shelnitz
Mark A. Shelnitz
Secretary


Dated:  April 7, 2008


3

Filing Date: 04/06/08

Exhibit 99.1


Grace News #2919



Media Relations:            Investor Relations:
William Corcoran            Bridget Sarikas
T +1 410.531.4203          T +1 410.531.4194
Ewilliam.corcoran@grace.com Ebridget.sarikas@grace.com


### GRACE ANNOUNCES SETTLEMENT OF ASBESTOS PERSONAL INJURY CLAIMS


COLUMBIA, Maryland, April 7, 2008 -- W. R. Grace & Co. (NYSE: GRA) today announced an agreement in principle that would settle all present and future asbestos-related personal injury claims. The agreement, reached with the Official Committee of Asbestos Personal Injury Claimants, the Future Claimants Representative and the Official Committee of Equity Security Holders, requires the following assets to be paid into a trust to be established under Section 524(g) of the United States Bankruptcy Code:


.        Cash in the amount of $250 million;


.        Warrants to acquire 10 million shares of Grace common stock at an exercise price of $17.00 per share, expiring one year from the effective date of a plan of reorganization;


.        Rights to proceeds under Grace's asbestos-related insurance coverage;


.        The value of cash and stock under the litigation settlement agreements with Sealed Air Corporation and Fresenius Medical Care Holdings, Inc.; and

Deferred payments at $110 million per year for five years beginning in 2019, and $100 million per year for ten years beginning in 2024; the deferred payments would be obligations of Grace backed by 50.1% of Grace's common stock to meet the requirements of Section 524(g).

The agreement in principle contemplates the filing of a plan of reorganization and related documents with the Bankruptcy Court.  The plan will be subject to approval of its co-proponents, exit financing, and Bankruptcy Court and District Court approvals.

"This agreement in principle is a very important step in emerging from Chapter 11," said Fred Festa, Grace's Chairman, President and Chief Executive Officer. "In this challenging global marketplace, we need to be able to focus all of our efforts on increasing shareowner value and continued improvement in our core businesses. The agreement and the Plan of Reorganization that will be based on it will be good for our shareholders, customers, creditors, and our employees. A lot of work remains to be done before we can confirm a Plan of Reorganization, but I am optimistic we will be successful in reaching that goal by the end of this year or early in 2009."

1

------------------------------------------------------------------------------

"Also, I want to point out that the Plan of Reorganization will preserve all employee benefits. During the seven years we have been in Chapter 11, our people have nearly doubled Grace's sales and dramatically improved the core businesses. We look forward to final approval of our Plan of Reorganization when we can once again operate without the constraints of Chapter 11," said Festa.

\*    \*    \*    \*    \*

Grace is a leading global supplier of catalysts and other products to petroleum refiners; catalysts for the manufacture of plastics; silica-based engineered and specialty materials for a wide-range of industrial applications; sealants and coatings for food and beverage packaging, and specialty chemicals, additives and building materials for commercial and residential construction. With annual sales of more than $3.1 billion, Grace has about 6,500 employees and operations in over 40 countries.  For more information, visit Grace's web site at www.grace.com.

\*    \*    \*    \*    \*

This announcement contains forward-looking statements, that is, information related to future, not past, events. Such information generally includes the words "believes," "plans," "intends," "targets," "will," "expects," "anticipates," "continues" or similar expressions. For these statements, Grace claims the protection of the safe harbor for forward-looking statements contained in the Private Securities Litigation Reform Act of 1995. Grace is subject to risks and uncertainties that could cause actual results to differ materially from those projected in the forward-looking statements or that could cause other forward-looking information to prove incorrect. Factors that could cause actual results to materially differ from those contained in the forward-looking statements include: Grace's bankruptcy, plans of reorganization proposed by Grace and others, Grace's legal proceedings (especially the Montana criminal proceeding and environmental proceedings), the cost and availability of raw materials and energy, Grace's unfunded pension liabilities, costs of environmental compliance, risks related to foreign operations, especially, security, regulation and currency risks and those factors set forth in Grace's most recent Annual Report on Form 10-K, quarterly report on Form 10-Q and current reports on Form 8-K, which have been filed with the Securities and Exchange Commission and are readily available on the Internet at www.sec.gov. Reported results should not be considered as an indication of future performance. Readers are cautioned not to place undue reliance on forward-looking statements, which speak only as of the date thereof. Grace undertakes no obligation to publicly release any revisions to the forward-looking statements contained in this announcement, or to update them to :eflect events or circumstances occurring after the date of this announcement.

###

Corporate Communications

W. R. Grace & Co.-Conn.

7500 Grace Drive

Columbia, MD 21044

2

Exhibit 99.2

W. R. GRACE & CO., et al.
CASE NO. 01-1139 (JFK)


TERM SHEET FOR RESOLUTION OF
ASBESTOS PERSONAL INJURY CLAIMS



This Term Sheet sets forth certain of the principal terms and conditions under which the Debtors, the Official Equity Security Committee, the Official Committee of Personal Injury Claimants ("ACC") and the Future Claimants Representative ("FCR") in the above-captioned Chapter 11 cases are prepared to file a plan of reorganization ("Plan") as co-proponents providing for the resolution of all asbestos personal injury claims and liabilities, including without limitation all asbestos personal injury claims pending at the filing date of the Chapter 11 cases and those arising subsequent thereto (collectively, "Asbestos PI Claims"). This Term Sheet also sets forth the proposed treatment of other key classes of claims asserted in the Chapter 11 cases. This Term Sheet has been produced for settlement purposes only and is subject to the provisions of Rule 408 of the Federal Rules of Evidence.


I.                Treatment of Claims

A.                Asbestos PI Trust

All Asbestos PI Claims will be channeled to a trust (the "Asbestos PI Trust") that is established in accordance with Section 524(g) of the United States Bankruptcy Code. The Asbestos PI Trust will pay claims from trust assets in accordance with a trust agreement and trust distribution procedures established by the ACC and FCR in connection with the Plan.

1.                Funding of Asbestos PI Trust at Emergence. On the Effective Date of the Plan, the Asbestos PI Trust shall receive the following, each of which shall be a condition to the Plan becoming effective:

a.                Cash Payment: $250 million, plus, if the Effective Date occurs after December 31, 2008, interest from January 1, 2009 to the Effective Date accrued at the same rate applicable to Grace's senior debt.

b.                Insurance: the assignment by W. R. Grace & Co.-Conn. ("Grace") and all of its affiliates to the Asbestos PI Trust, of all insurance policies and all insurance proceeds available for payment of Asbestos PI Claims, effective as of the Effective Date, including without limitation:

i.                Any such proceeds from the date hereof of all settlements with insurance companies, and all interest accrued thereon;

--------------------------------------------------------------------------
ii.                Any proceeds of the settlement with Equitas held in escrow with all interest accrued thereon;

iii.                Any proceeds of all settlements with all insurance companies

*8*

under coverage in place agreements or installment payment arrangements where payment has not yet occurred;

iv.        Assignment of and the right to recover on all outstanding insurance policies potentially applicable to personal injury claimants; and

v.         The right to recover from all insolvent insurance estates as to which Grace or its affiliates has made a claim and the proceeds of all payments received by Grace or its affiliates from those insolvent estates after the date hereof, and all interest accrued thereon.

Provided however that Grace is in the process of examining its policies and the foregoing will not affect Grace's separate coverages, if any, for losses not arising from asbestos personal injury claims.

The ACC and FCR (or, after the Effective Date, the Asbestos PI Trust) shall control (and Grace shall cooperate in connection with) any negotiations or legal proceedings related to the underlying policies or settlement agreements applicable to Asbestos PI Claims.

c.         Warrant:  a warrant for 10 million shares of W. R. Grace & Co. ("Parent") common stock, exercisable at $17 per share, and expiring one year after the Effective Date.

d.         Cryovac, Inc. Payment: The consideration contemplated by the Sealed Air Settlement Agreement.

e.         Fresenius Medical Care Payment:  The proceeds of the payment contemplated by the Fresenius Settlement Agreement.

2.         Deferred Payment Obligations:  Grace shall make additional payments to the Asbestos PI Trust over a 15 year period as follows:  five annual payments of $110 million commencing on January 2, 2019; and 10 annual payments of $100 million commencing on January 2, 2024.  Such payment obligations shall be subordinate to any bank debt or bonds outstanding and shall be guaranteed by Parent or any successor ultimate parent entity of Grace.  Such guaranty shall be secured by an obligation of Parent to issue to the Asbestos PI Trust, in the event an additional payment is not made, the number of shares of Parent common stock which, when

2

-----------------------------------------------------------------------------

added to the number of shares of common stock issued and outstanding as of the Effective Date, shall constitute 50.1% of the voting shares of Parent as of the Effective Date (such number of shares shall be equitably adjusted for stock splits, stock dividends, recapitalizations, corporate reorganizations or changes in control of Parent after the Effective Date).

B.         Other Classes

1.         Administrative Claims: 100% of allowed amount in cash.

2.         Priority Tax Claims: 100% of allowed amount in cash.

3.         Priority Non-Tax Claims: 100% of allowed amount in cash.

4.         Secured Claims: 100% of allowed amount either in cash or by reinstatement.

5.         Unsecured Employee Claims (post-retirement health and special pension): 100% of allowed amount by reinstatement.

6.         Workers Compensation Claims: 100% by reinstatement.

7.         Allowed General Unsecured Claims: 100% of allowed amount plus

*Filing Date: 04/06/08*

post-petition interest as follows: (i) for holders of pre-petition bank credit facilities, post-petition interest at the rate of 6.09% from the filing date through December 31, 2005 and thereafter at floating prime, in each case compounded quarterly; and (ii) for all other unsecured claims, interest at 4.19%, compounded annually, or if pursuant to an existing contract, interest at the non-default contract rate.

8.        Allowed Environmental Claims: 100% of allowed amount in cash.

9.        Traditional Asbestos Property Damage Claims:  100% of allowed amount in cash for settled claims.  The Plan shall set forth procedures for the allowance of all Asbestos PD Claims that are disputed as of the Effective Date.

10.       ZAI Claims: Unless the Plan Proponents agree otherwise as to the treatment of ZAI Claims, the court shall estimate, for purposes of allowance and distribution, any liability on account of ZAI Claims prior to or in connection with the confirmation of the Plan.  ZAI Claims shall be paid 100% of their allowed amount up to the amount of the court's estimate.

II.                              Channeling Injunctions.  The Plan shall contain injunctions under Sections 524(g) and Section 105(a) of the Bankruptcy Code to protect the Debtors, Cryovac, Sealed Air, Fresenius, their affiliates, officers, directors and employees, and other parties in interest and certain insurers.  The Plan shall also contain such provisions, injunctions and releases

3

-------------------------------------------------------------------

(i) as are necessary to comply with the terms of the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement; and (ii) to the full extent permitted by law, to indemnify, and release all of Grace's officers, directors, employees and professionals, and the members of all official committees, the FCR and their professionals, from any liability on account of claims against Grace, or arising in or in connection with these Chapter 11 cases.  The foregoing injunctions, indemnifications and releases shall be at least as extensive as, and consistent with, the injunctions, indemnifications and releases provided for under Grace's Amended Plan currently filed in the Chapter 11 Cases to the extent such latter injunctions, indemnifications and releases are not inconsistent with this Term Sheet.

III.            Resolution of Outstanding Issues.  The parties agree to cooperate in seeking a resolution of outstanding issues material to or not otherwise resolved in connection with the confirmation of a plan of reorganization.

IV.            Binding Effect.  This Term Sheet has been approved by all necessary corporate or organizational action of the Board of Directors of

Parent and Grace, the ACC, the FCR and the Equity Committee, and shall be binding upon the parties and each of their respective successors and assigns to the fullest extent permitted by applicable law.  The parties shall use their best efforts to incorporate the terms of this Term Sheet into a mutually agreeable plan of reorganization to be filed with the Bankruptcy Court as soon as possible.

V.            Confidentiality.


The parties shall treat all negotiations regarding this Term Sheet as confidential.  Neither the contents nor the existence of this Term Sheet shall be disclosed by any party, either orally or in writing, except to its directors, officers, employees, legal counsel, financial advisors, accountants and clients on a confidential basis until the Debtors have issued a press release announcing the terms and conditions contained herein.  Notwithstanding the foregoing, the parties agree that this Term Sheet or the terms of this Term Sheet may be disclosed to the Official Committee of Unsecured Creditors and the Official Committee of Asbestos Property Damage Claimants.  Grace will provide counsel to the ACC and counsel to the FCR an opportunity to review and comment on any press release relating to this Term Sheet prior to its issuance.

4

----------------------------------------------------------------------


AGREED TO AND ACCEPTED BY:
Dated: April 6, 2008
THE DEBTORS:
W. R. GRACE & CO., on behalf of itself and its subsidiaries and affiliates that are Debtors in the Chapter 11 cases
By:                                  /s/ Fred Festa
Name:                                Fred Festa
Title:                               Chairman, President and Chief Executive
                                     Officer
THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS
By:                                  /s/ R. Ted Weschler
Name:                                R. Ted Weschler
Title:                               Chair of the Committee
THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS:
CAPLIN & DRYSDALE, CHARTERED, on behalf of and in its capacity as counsel to the ACC
By:                                  /s/ Elihu Inselbuch
Name:
                                                    Elihu Inselbuch
THE FUTURE CLAIMANTS REPRESENTATIVE:
ORRICK, HERRINGTON & SUTCLIFFE LLP, on behalf of and in its capacity as counsel to the FCR
By:                                  /s/ Roger Frankel
Name:
                                                    Roger Frankel

5

----------------------------------------------------------------------



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.**, *et al.*[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |
| | ) | |
| | ) | |
| | ) | |

## EXHIBIT 6 TO EXHIBIT BOOK
## ASBESTOS INSURANCE TRANSFER AGREEMENT

**EXHIBIT 6**

Attached.

---

[1]    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.),
W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon,
Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc.,
Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC
(f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a
Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC
Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities
Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary
Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe,
Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc.
(f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace
Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.
R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe
Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai
Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH,
Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings
Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA
Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental
Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin &
Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country
Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

REMAINDER OF EXHIBIT OMITTED
SEE EXHIBIT 6 TO EXHIBIT BOOK
(D.I. 20874)



EXHIBIT

Acc 3666)-5
5-1-09      VK

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.,** *et al.* | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |
| | ) | |

## FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF <u>EQUITY SECURITY HOLDERS DATED FEBRUARY 27, 2009</u>

REMAINDER OF EXHIBIT OMITTED
SEE FIRST AMENDED JOINT PLAN
(D.I. 20872)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.**, *et al.*[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |
| | ) | |
| | ) | |
| | ) | |

### EXHIBIT 19 TO EXHIBIT BOOK
### RETAINED CAUSES OF ACTION SCHEDULE

**EXHIBIT 19**

Attached.

---

[1]   The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.),
W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon,
Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc.,
Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC
(f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a
Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC
Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities
Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary
Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe,
Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc.
(f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace
Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.
R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe
Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai
Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH,
Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings
Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA
Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental
Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin &
Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country
Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

REMAINDER OF EXHIBIT OMITTED
SEE EXHIBIT 19 TO EXHIBIT BOOK
(D.I. 20874)



EXHIBIT

Acc 30(6&)-7

5-1-09   lk

## SETTLEMENT AGREEMENT

This Agreement ("Agreement") is made and entered into by and between, on the one hand, W. R. GRACE & CO.-CONN. and W. R. GRACE & CO. and, on the other hand, COMMERCIAL UNION INSURANCE COMPANY as successor in interest to EMPLOYERS' COMMERCIAL UNION INSURANCE COMPANY OF AMERICA and EMPLOYERS' COMMERCIAL UNION INSURANCE COMPANY, and AMERICAN EMPLOYERS' INSURANCE COMPANY.

### RECITALS

WHEREAS, the Party Insurers issued or are alleged to have issued certain liability insurance policies to Grace, which Policies are more particularly described below; and

WHEREAS, Grace has been, is and expects to be in the future, a defendant in numerous Asbestos-Related Claims and lawsuits asserted by or on behalf of persons alleging (1) personal injury, bodily injury, sickness, disease and/or death as a result of exposure to asbestos, and (2) damages for injury or damage to buildings and property allegedly caused by asbestos or asbestos-containing materials; and

WHEREAS, certain disputes and differences have arisen between Grace and the Party Insurers as to their respective rights and obligations as to the administration, defense, payment and disposition of the Asbestos-Related Claims, and Grace and the Party Insurers wish to settle those disputes and differences in accordance with the terms of this Agreement; and

WHEREAS, one or more of the Party Insurers are parties to various actions involving claims by Grace or others against one or

1

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

more of the Party Insurers relating to Asbestos-Related Claims; and

WHEREAS, Grace and the Party Insurers have entered into this Agreement solely to resolve their disputes concerning coverage for Products Claims and Asbestos-Related Claims, to afford the Party Insurers final and complete repose with respect to their alleged obligations under or by virtue of the Policies for Products Claims and Asbestos-Related Claims, and to avoid, among other things, the uncertainty and expense attendant to such disputes and the related litigation; and

WHEREAS, by virtue of this Agreement, neither Grace nor the Party Insurers admit or concede in any way the validity of the positions or arguments advanced by the other or by any third party;

NOW, THEREFORE, in consideration of the mutual covenants and subject to the terms and conditions herein contained, Grace and the Party Insurers hereby agree as follows:

## I.  DEFINITIONS

1.0  <u>Agreement</u> shall mean this settlement agreement entered into by Grace and the Party Insurers.

1.1  <u>Grace</u> means W. R. Grace & Co.-Conn. and/or W. R. Grace & Co., their respective predecessors-in-interest and successors-in-interest.

1.2  <u>Indemnitor</u> means W. R. Grace & Co. and W. R. Grace & Co.-Conn. and their respective successors-in-interest.

1.3  <u>Party Insurers</u> means Commercial Union Insurance Company as successor in interest to Employers' Commercial Union Insurance

2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

Company of America and Employers' Commercial Union Insurance Company, and American Employers' Insurance Company and their respective predecessors-in-interest, and successors-in-interest, divisions, subdivisions, departments, subsidiaries, parents, agents, employees, officers, affiliates, assigns and companies or corporations owned, controlled or under common control or ownership with the Party Insurers.

1.4  <u>Party and/or Parties</u> shall mean Grace and the Party Insurers.

1.5  <u>Policy or Policies</u> means the insurance policies, issued or alleged by Grace to have been issued, to or for the benefit of Grace by the Party Insurers, which policies are listed in Exhibit "A". The Party Insurers represent and warrant that they are unaware of any other contracts of insurance they issued or are alleged to have issued to Grace except those listed in Exhibit "A". Grace represents and warrants that it is unaware of having purchased any comprehensive general liability insurance from the Party Insurers except those policies listed in Exhibit "A". To the extent the World Auxiliary Insurance Corporation could be considered contained within the definition of "Party Insurers", which the Party Insurers specifically deny, Grace's representation and warranty specifically excludes any and all contracts of insurance issued by the World Auxiliary Insurance Corporation.

1.6  <u>Aggregate Product Limits</u> means the total aggregate limits of liability contained within the Policies of the Party Insurers for all personal injury claims, bodily injury claims, property damage claims and advertising liability claims included within the "products - completed operations hazards" definitions. For

3

purposes of this Agreement, any claim for occupational disease shall be included within the definition of Aggregate Product Limits.

1.7  <u>Bodily Injury Claim Plaintiff</u> means any entity, person, assignee, executor or administrator who has, at any time, threatened, asserted or filed any claim, right, demand, lawsuit, cause of action or proceeding arising out of personal injury, bodily injury, employer's liability or advertising liability involving any entity, person, assignee, executor or administrator who does so in the future.

1.8  <u>Building Damage Claim Plaintiff</u> means any entity, person, assignee, executor or administrator who has, at any time, threatened, asserted or filed any claim, right, demand, lawsuit, cause of action or proceeding arising out of alleged property damage or advertising liability involving or relating to asbestos in buildings or any entity, person, assignee, executor or administrator who does so in the future. By agreeing to this term, the Party Insurers seek to resolve their dispute with Grace and do not acknowledge that any Asbestos-Related Claims arising from buildings, other structures or property involve property damage.

1.9  <u>Asbestos-Related Claim</u> means a claim brought by a Bodily Injury Claim Plaintiff or a Building Damage Claim Plaintiff for advertising liability, personal injury, bodily injury, employer's liability, sickness or disease and/or death at any time as a result of exposure or alleged exposure to asbestos or asbestos-containing products and/or a claim arising from asbestos- containing products in buildings, other structures, or property and/or a claim arising

4

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000004

from injury or damage to buildings, other structures or property caused or allegedly caused by asbestos or asbestos-containing products. "Asbestos-Related Claim" shall also include any claim for unfair competition and/or invasion of right or privacy either committed or alleged to have been committed in any publication or video or audio transmission and arising out of Grace's advertising activities concerning the mining, distribution and/or sale of asbestos and asbestos-containing products. "Asbestos-Related Claim" shall also include any claim for conspiracy, concert of action, intentional tort, fraud, misrepresentation, gross negligence and/or punitive damages, fines or penalties arising from the mining, distribution, and/or sale of asbestos and asbestos-containing products.

1.10    Products Claims means all claims which allege personal injury, bodily injury, property damage or advertising liability that fall within the Aggregate Product Limits in each of the Policies. "Products Claims" shall also include any claim for extra-contractual damages, whether statutory or common law, asserted by Grace and/or its assignees and/or judgment creditor/garnishors that alleges misconduct, bad faith, unfair claims practices, violations of an insurance code or other statutory scheme, or any other alleged wrongdoing of the Party Insurers in connection with or relating in any respect to the performance by the Party Insurers of their alleged obligations under or by virtue of any of the Policies concerning any claim which alleges personal injury, bodily injury, property damage or

5

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000005

advertising liability that falls within the Aggregate Product Limits.

1.11 <u>Effective Date</u> means the date both Grace and the Party Insurers exchange executed Agreements.

1.12 <u>Coverage Actions</u> shall mean those actions involving claims between Grace and the Party Insurers relating to insurance coverage for Products Claims and/or Asbestos-Related Claims. These actions include, but are not limited to:

(1) <u>Maryland Casualty Company v. W. R. Grace & Co., et al.</u>, No. 88 Civ. 2613 (SWK), filed in the United States District Court for the Southern District of New York;

(2) <u>Moore, ex rel. State of Mississippi v. The Flintkote Co., et al. v. Maryland Casualty Co., et al.</u>, No. 89-5138(2), filed in the Circuit Court of Jackson County Mississippi;

(3) <u>Independent School District 197, et al. and W. R. Grace & Co.-Conn. v. Accident & Casualty Insurance of Winterthur, et al.</u>, No. 19-C4-88-007950, filed in the District Court of the County of Dakota, Minnesota;

(4) <u>W.R. Grace & Co.-Conn. v. Admiral Insurance Co., et al.</u>, No. 91-048251, filed in the District Court of Harris County, Texas;

(5) <u>Dayton Independent School District, et al. v. United States Mineral Products Co. and W. R. Grace & Co.-Conn. v. Admiral Insurance Co., et al.</u>, No. B-87-00507, filed in the United States District Court for the Eastern District of Texas, Beaumont;

(6) <u>W. R. Grace & Co.-Conn. v. Admiral Insurance Company, et al.</u>, No. BC 050432, filed in the Superior Court of the County of Los Angeles, California; and

(7) <u>American Employers Insurance Company, et al. v. W. R. Grace & Co.-Conn., et al.</u>, No. 6241-92, filed in the Supreme Court of the State of New York, County of New York.

1.13 <u>Confidential Documents and Information</u> means those documents, transcripts, writings, photographs and that information

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000006

so designated pursuant to any case management order or protective order entered, stipulated or agreed to in any of the Coverage Actions. Documents may be designated as "Confidential Documents and Information" by the Parties after execution of this Agreement by identifying such document, transcript, writing, photograph or information in writing to a Party and by designating that such document, transcript, writing, photograph and/or information is a "Confidential Document and Information".

## II.   SCOPE OF AGREEMENT

2.0  It is the intention of the Parties to resolve, terminate and cancel any and all obligations, alleged or actual, past, present, future, known or unknown, that the Party Insurers had or may have had under the Policies with respect to Products Claims and Asbestos-Related Claims.

2.1  This Agreement is the product of informed negotiations between the Parties assisted by counsel and involves compromises of previously stated legal positions.  This Agreement does not necessarily reflect the view of any of the Parties as to rights and obligations with regard to matters outside of this Agreement.  For all other purposes and in all other matters, each Party reserves all previously held positions and all other rights and privileges.

2.2  This Agreement is intended to confer rights, benefits and obligations only upon Grace and the Party Insurers, and is not intended to confer any right, benefit or obligation upon any other person.  No person other than Grace or the Party Insurers shall

7

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000007

have any legally enforceable right under this Agreement.

2.3  The Party Insurers and Grace request all courts to take notice of the underlying scope and purpose of this Agreement and to accord the Parties and their representatives full privilege and protection with respect to the disclosure of their actions, statements, documents, papers and other materials relating to this Agreement, including its development and implementation.

2.4  This Agreement is the entire agreement between Grace and the Party Insurers relating to coverage for Products Claims and Asbestos-Related Claims under the Policies.  All antecedent or contemporaneous extrinsic representations, warranties or collateral provisions concerning the negotiation and preparation of this Agreement are intended to be discharged and nullified.

2.5  This Agreement is not a contract of insurance and the Parties agree that it shall not be interpreted according to the rules of construction applicable to insurance contracts.  In particular, with respect to interpretation of this Agreement, the Parties waive any benefits from the principles of contra proferentum or other principles which would result in the interpretation of any ambiguities against a Party.  No Party shall be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement shall be construed against any Party on the basis of the Party's identity as an insurance company or as the drafter of any part of this Agreement.

2.6  Grace hereby represents and warrants to the Party

8

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

Insurers as follows:

(a)  Grace is a corporation, duly organized, validly existing and in good standing under the laws of its jurisdictions of incorporation with full corporate power and authority to enter into this Agreement and perform its obligations hereunder.

(b)  The execution and delivery of this Agreement by Grace and the performance by Grace of its obligations hereunder have been duly authorized by the Board of Directors of Grace and by all other necessary corporate action of Grace.

(c)  This Agreement has been duly executed and validly delivered by Grace and constitutes a valid and binding obligation of Grace enforceable against Grace in accordance with its terms.

(d)  The execution and delivery of this Agreement by Grace and the performance by Grace of its obligations hereunder will not violate any provision of its charter or by-laws or any consent or order of any governmental authority by which it may be bound.

(e)  Grace has read this entire Agreement and knows the contents hereof and that the terms hereof are contractual and not in any way a recital; Grace has executed this Agreement as its own free act.

(f)  In making this Agreement, Grace has obtained the advice of legal counsel.

2.7   The Party Insurers, jointly and severally, hereby represent and warrant to Grace as follows:

(a)  Each of the Party Insurers is a corporation, duly

9

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000009

organized, validly existing and in good standing under the laws of
its jurisdiction of incorporation with full corporate power and
authority to enter into this Agreement and perform its obligations
hereunder.

(b)   The execution and delivery of this Agreement by the
Party Insurers and the performance by the Party Insurers of their
obligations hereunder have been duly authorized by all persons with
necessary authority to act on behalf of the Party Insurers.

(c)   This Agreement has been duly executed and validly
delivered by each of the Party Insurers and constitutes a valid and
binding obligation of each of the Party Insurers enforceable
against the Party Insurers in accordance with its terms.

(d)   The execution and delivery of this Agreement by each
of the Party Insurers and the performance by the Party Insurers of
their respective obligations hereunder will not violate any
provisions of the charter or by-laws of any of the Party Insurers
or any consent or order of any governmental authority by which any
of the Party Insurers may be bound.

(e)   Each of the Party Insurers has read this entire
Agreement and knows the contents hereof and that the terms hereof
are contractual and not in any way a recital; each of the Party
Insurers has executed this Agreement as its own free act.

(f)   In making this Agreement, each of the Party Insurers
has obtained the advice of legal counsel.

2.8   Each Party agrees as to its own breach of any warranty
expressly stated in this Agreement to indemnify and hold harmless

10

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000010

the other Parties.

III.   CANCELLATION OF COVERAGE; SETTLEMENT PAYMENTS

3.0  Upon the Effective Date of this Agreement, Grace hereby agrees to the cancellation of all insurance coverage for Products Claims and Asbestos-Related Claims under the Policies in exchange for payments by the Party Insurers to Grace in the aggregate amount of Eighty-One Million, Two Hundred Thousand Dollars ($81,200,000) as provided in Section 3.1.

3.1  (a)   Within three (3) business days after the Effective Date, the Party Insurers shall make a settlement payment to Grace in the amount of Twenty-Five Million Dollars ($25,000,000).

(b)   Within  three  (3)  business  days  after  the anniversary  of  the  Effective  Date  in  each  year  through  1999, commencing in 1994 and ending in 1999, the Party Insurers shall make a settlement payment to Grace, as follows:

| | | |
|---|---|---|
| (i) | 1994 – | Ten Million Dollars ($10,000,000) |
| (ii) | 1995 – | Ten Million Dollars ($10,000,000) |
| (iii) | 1996 – | Nine Million Fifty  Thousand Dollars ($ 9,050,000) |
| (iv) | 1997 – | Nine Million Fifty Thousand Dollars ($ 9,050,000) |
| (v) | 1998 – | Nine Million Fifty Thousand Dollars ($ 9,050,000) |
| (vi) | 1999 – | Nine Million Fifty Thousand Dollars ($ 9,050,000) |

11

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

(c)  In the event that the anniversary of the Effective Date falls on a holiday or weekend day, the anniversary date and all obligations of payment attendant thereto shall be deemed to fall on the next business day.  If the Party Insurers fail to make all or any portion of any payment to Grace provided for in this Section on or before the due date thereof, the Party Insurers shall pay interest to Grace on the unpaid amount of that particular payment for the period commencing on the date such amount was due and ending on the actual date of payment at a rate of interest equal to five percentage points over the rate of interest of the then prevailing prime rate as announced by the main office of Citibank N.A. in New York, New York.

3.2  All settlement payments to Grace under Section 3.1 shall be made by wire transfer to Grace's account at ~~Morgan Guaranty~~ Chemical Bank ~~Trust Company~~ (ABA Number ~~021000238~~ 021000128, Account Number ~~090-04-901~~ 016001257, further identified as W. R. Grace & Co.  account) or to such other account as may be specified by Grace in a written notice to the Party Insurers in accordance with Section 9.2.

3.3  The Party Insurers shall not have the right to seek contribution or indemnity from other insurers of Grace for settlement payments made to Grace under Section 3.1.  The Parties recognize that various excess insurers other than the Party Insurers have available remaining aggregate limits for contracts of insurance which may underlie the Policies.  Nothing in this section is intended to preclude or limit in any way the Party Insurers' rights to pursue recovery from their reinsurers, if any, for some

12

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000012

or all settlement payments made to Grace under Section 3.1.

3.4  The Parties also acknowledge that Grace's acceptance of the payments provided in Section 3.1 is in full satisfaction of the Party Insurers' obligations with respect to Products Claims and Asbestos-Related Claims under the Policies, notwithstanding the amount of the Aggregate Product Limits for all of the Policies.

3.5 It is the intention of the Parties that such settlement payments by the Party Insurers shall not be construed as constituting a set-off for other insurers under contracts of insurance issued by such other insurers which may underlie the Policies.

3.6 The liability of the Party Insurers for the payments to be made to Grace pursuant to this Section shall be joint and several.

## IV.  DISMISSALS AND RELEASES

4.0  Concurrently with the exchange of executed Agreements by all Parties, Grace shall deliver to the Party Insurers executed dismissals with prejudice of the claims brought by Grace and shall use all reasonable efforts to obtain executed dismissals with prejudice of the claims brought by Grace's assignees and/or judgment creditor/garnishors in the Coverage Actions with respect to any and all allegations or claims against the Party Insurers for declaratory relief, damage or other relief relating to the application of insurance to the investigation, settlement, defense or indemnification of claims set forth in the various applicable pleadings in the Coverage Actions.  Said dismissals with prejudice

13

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000013

shall include all claims by Grace and/or its assignees and/or judgment creditor/garnishors for extra-contractual damages including, but not limited to, liens of garnishors, bad faith tort claims, and statutory claims for damages, punitive or actual, for the alleged failure of the Party Insurers to defend, settle or handle any Products Claim and/or Asbestos-Related Claim under the Policies. The Party Insurers will file and serve said dismissals with prejudice. Said dismissals with prejudice shall indicate that the Parties will bear their own attorneys' fees and costs incurred prior to the filing and service of said dismissals with prejudice in connection with the Coverage Actions. Grace shall file all documents necessary to satisfy and cancel any and all judgments of record against the Party Insurers, release all supersedeas bonds and dismiss all appeals related to the Coverage Actions.

4.1 Concurrently with the exchange of executed Agreements by all Parties, the Party Insurers shall deliver to Grace executed dismissals with prejudice of the applicable Coverage Actions with respect to any and all allegations or claims against Grace or the other insurers in said Coverage Actions or for declaratory relief, damage or other relief. Grace will file and serve said dismissals with prejudice. Said dismissals with prejudice shall indicate that the Parties will bear their own attorney's fees and costs incurred prior to the filing and service of said dismissals with prejudice in connection with the Coverage Actions. The Party Insurers shall also take all necessary steps to dismiss all appeals related to the Coverage Actions.

14

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000014

4.2   Except for the obligations set forth in this Agreement, Grace releases and forever discharges the Party Insurers of and from any and all actions, causes of action in law or in equity, suits, debts, liens, contracts, indemnity and defense obligations, agreements, promises, liabilities, claims, demands, losses, costs or expenses of any kind or nature, known or unknown, fixed or contingent, direct or indirect, which Grace now has or may have against the Party Insurers in any way relating to Products Claims and/or Asbestos-Related Claims under the Policies.

4.3   Except as to the obligations set forth in this Agreement, the Party Insurers hereby release and forever discharge Grace of and from any and all actions, causes of action in law or in equity, suits, debts, liens, contracts, indemnity and defense obligations, agreements, promises, liabilities, claims, demands, losses, costs or expenses of any kind or nature, known or unknown, fixed or contingent, direct or indirect, which the Party Insurers now have or may have against Grace in any way relating to  Products Claims and/or Asbestos-Related Claims under the Policies.

## V.   INDEMNIFICATION

5.0   The Indemnitor shall indemnify and hold the Party Insurers harmless at all times from and after the Effective Date from and against any and all liability, loss, cost or expense whenever arising   (except as otherwise provided in Section 5.1(a)(ii)) imposed upon or incurred by any Party Insurer as a result of any known or unknown, past, pending, future, or

15

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000015

threatened claims, rights, demands, lawsuits, causes of action or proceedings that are asserted, initiated or continued by Grace or any person or entity not a party to this Agreement against such Party Insurer in any way relating to Products Claims and/or Asbestos-Related Claims under the Policies.

5.1    (a)(i)    After receipt by a Party Insurer of notice of any complaint or the commencement or continuation of any action or proceeding with respect to which indemnification is being sought hereunder, such Party Insurer shall notify Grace in accordance with Section 9.2 and as soon as practicable in writing of such complaint or of the commencement or continuation of such action or proceeding and shall thereafter tender the defense thereof to Grace.    Should Grace fail to obtain executed dismissals with prejudice of the claims brought by Grace's assignees and/or judgment-creditor/garnishors in any Coverage Action, Grace is deemed to have notice of the continuation of the Coverage Action and a tender of the defense by the Party Insurers of the Coverage Action.

(ii) Any failure by such Party Insurer to so notify Grace or to so tender the defense of such action or proceeding will relieve    the Indemnitor from any indemnification obligation with respect thereto.

(b)    After Grace receives any notice pursuant to Section 5.1(a)(i),    the Indemnitor shall promptly determine whether it will respond to that notice and assume the

16

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

defense of a Party Insurer named in a complaint or the commencement or continuation of any action.

(c)    (i)    If the Indemnitor so elects, the Indemnitor will assume the defense of such action or proceeding. The Indemnitor and the Party Insurers shall mutually agree upon a choice of counsel to represent the Party Insurers (which may not include counsel presently representing either Grace or the Indemnitor), and the Indemnitor shall assume the payment of the fees and disbursements of such counsel. The Indemnitor will consult with and allow the Party Insurers complete control over the positions asserted in the interpretation of the language of the Policies, and will consult with the Party Insurers in the defense of any notice of any complaint or the defense of the commencement or continuation of any action.

(ii)    The Indemnitor and the Party Insurers will consult to the extent practicable about all decisions to be made, either procedural or substantive, by counsel retained on behalf of the Party Insurers pertaining in any material manner to the Party Insurers. The Indemnitor will have such time as is practicable to review each matter and to present its views to the Party Insurers. The Party Insurers will make reasonable efforts to accommodate the litigation suggestions of the Indemnitor before directing counsel to take any action.

17

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000017

In the event the Parties are unable to agree, the final decision with respect to the defense of the Party Insurers, either procedural or substantive, with the exception of settlement or compromise of the action, will rest with the Party Insurers. The Indemnitor will not dispute any decision of the Party Insurers that is lawful and that is reasonably made within the discretion of the Party Insurers.

(iii)  The Indemnitor shall keep the involved Party Insurer apprised in a timely manner of all significant developments in such defense and shall provide the Party Insurer, at the Party Insurer's request, status reports that advise the Party Insurer of such developments.

(iv) Any settlement or compromise made by the Indemnitor on behalf of any Party Insurer shall not require that Party Insurer's approval, but shall provide that it is not an admission of liability by the Party Insurer, is without precedent beyond the scope of the matters addressed by such compromise or settlement. The Indemnitor shall give notice and provide reasonable and timely disclosure as soon as is practicable to the Party Insurers of any proposed settlement or compromise. The Party Insurers shall have such time as is practicable to review the proposed settlement or compromise and to present their views to the Indemnitor. The Indemnitor will make reasonable efforts to accommodate the Party

18

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

Insurers before agreeing to any settlement or compromise. The Party Insurers will not dispute any decision that was lawful and that was reasonably made within the discretion of the Indemnitor. The Indemnitor shall use best efforts to keep such settlement or compromise confidential.

(v)    In any action or proceeding in which the Indemnitor assumes the defense of a Party Insurer, such Party Insurer will have the right to participate in such litigation and to retain its own counsel at such Party Insurer's own expense.

(d)   (i)  If the Indemnitor fails, or declines, to assume the defense of the action or proceeding in a timely manner, then such Party Insurer may employ and exclusively direct counsel to represent or defend it in any such action or proceeding, and the Indemnitor will pay the reasonable fees and disbursements of such counsel; provided, however, that the Indemnitor shall not be required to pay the fees and disbursements of more than one law firm  for all Party Insurers in any jurisdiction in any single action or proceeding.

(ii) If the Party Insurers settle any such claims without previously obtaining the Indemnitor's consent, which consent shall not be unreasonably withheld, then the Indemnitor shall be relieved of any obligation to indemnify the Party Insurers for such settlement. The Party Insurers shall use best efforts to keep such

19

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

settlement or compromise confidential.

(e)  Nothing herein shall constitute any waiver of each Party Insurer's attorney-client privilege, which privilege shall extend only to such counsel retained to represent the particular Party Insurer and shall not extend to the Indemnitor or its counsel unless specifically waived by the Party Insurer in writing with reference to a particular attorney-client communication.

5.2  The Party Insurers and the Indemnitor shall cooperate reasonably with each other to protect their respective interests with respect to claims for which the Indemnitor may be liable for indemnification under Article V.

5.3  If the Indemnitor has assumed the defense of any action or proceeding, the Party Insurers shall comply in a timely manner with the Indemnitor's appointed counsel's requests for access to documentation or information requested by the Indemnitor's appointed counsel for purposes of defense. The Indemnitor shall cooperate with the Party Insurers to avoid taking any positions in such litigation which are adverse to the general business interests of the Party Insurers.

5.4  If the Indemnitor has failed or declined to assume the defense of any action or proceeding, the Indemnitor shall comply in a timely manner with any Party Insurer's requests for access to documentation or information requested by that Party Insurer for purposes of such defense.

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000020

## VI.   RESERVATION OF RIGHTS

6.0  Nothing in this Agreement, nor in any aspect of its implementation or negotiation, shall be construed or asserted by any person as admissible or relevant in any case or proceeding as giving rise to or creating any waiver or estoppel of the Party Insurers or Grace with respect to any of their rights under any Policies, or as constituting or evidencing either an interpretation by the Party Insurers or Grace of any portion of any Policies or a course of performance (or non-performance) thereunder.   Except as otherwise provided under this Agreement, all of the Party Insurers' and Grace's rights, duties and privileges under the provisions, exclusions, conditions, endorsements and other terms of the Policies issued to Grace are hereby preserved.

6.1  No Party may assign this Agreement or any of its rights, benefits or obligations hereunder without the prior written consent of the other Parties hereto, which consent shall not be unreasonably withheld. All rights of action for any breach of this Agreement are hereby reserved to Grace and the Party Insurers. All actions taken and statements made by the Parties or their representatives relating to their participation in this Agreement, including its development and implementation, are taken and made in the context of privileged settlement negotiations, shall be without prejudice or value as precedent and shall not be taken as the standard by which other matters may be judged or against which other matters may be compared.   This Agreement is the product of arm's length negotiations.   It is the compromise of disputed

21

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000021

claims, and it is not intended to be, nor shall it be construed as, an admission of coverage or a policy interpretation or evidence of any Party's conduct or response to claims of any kind, including by way of example and without limitation, Asbestos-Related Claims. Neither this Agreement nor any statement made by any Party in negotiating, executing or performing this Agreement shall be used in court, or formal or informal dispute resolution proceedings, or otherwise, to create or interpret any obligation by any Party under any insurance policy, including but not limited to the Policies. The Party Insurers do not admit coverage by entering into this Agreement and enter into it for business reasons and in the spirit of compromise.

6.2   Nothing in this Agreement is intended to create any rights in any person or entity as to any Policy or alleged policy or certificate of insurance. Neither this Agreement nor any part hereof may be used as evidence or in any other manner in any litigation, dispute resolution or other proceeding, to create, prove, or interpret the respective rights, duties or obligations of Grace and the Party Insurers or any of them. This restriction shall not apply to any litigation or proceeding brought to enforce or defend the terms of this Agreement. This Agreement shall be deemed to fall within the protection afforded compromises and offers to compromise by Rule 408 of the Federal Rules of Evidence and similar state law provisions.

6.3   The cancellation of insurance coverage for Products Claims and Asbestos-Related Claims under the Policies shall not

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000022

affect the alleged rights and alleged obligations of Grace and the Party Insurers, if any, under the Policies with respect to insurance coverage for other claims that do not constitute Products Claims or Asbestos-Related Claims.

6.4  Neither the terms of this Agreement nor its negotiation, execution, or any action in performance of this Agreement shall be invoked by any of the Parties hereto or their attorneys or agents in any proceeding for the purpose of attempting to establish or prove the acceptance by the Party Insurers or Grace of any particular interpretation of any insurance policy with respect to any claim.

## VII.  CONFIDENTIALITY

7.0  This Agreement and all matters relating to its existence, terms, negotiations and implementation are confidential.  This Agreement and the implementation of its terms are to be disclosed pursuant only to an order of court or by written agreement by all the Parties except that:

(a)  the Agreement may be disclosed to the reinsurers of the Party Insurers provided that the entity to which disclosure is made is advised that the disclosure is subject to this confidentiality provision and agrees to be bound;

(b)  the Agreement may be disclosed in any action to enforce its terms;

(c)  to the extent necessary to obtain insurance coverage from an entity other than a Party Insurer, the Agreement may

23

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000023

be disclosed, provided that the entity to which disclosure is made is advised that the disclosure is subject to this confidentiality provision and agrees to be bound;

(d) any Party may make copies of this Agreement available to its accountants, to its counsel, to its lenders or underwriters and to counsel for such lenders or underwriters, provided, that the entity to which disclosure is made is advised that the disclosure is subject to this confidentiality provision and agrees to be bound; and

(e) any Party may make reference to or describe this Agreement to the extent that such disclosure is required to comply with any government, regulatory or accounting/auditing requirement applicable to a Party, but shall not make available a copy of the Agreement nor shall the reporting Party identify any other Parties to this Agreement. In the event that either a governmental agency or any other entity requests a copy of the Agreement or requests the identity of the other Parties to the Agreement, the Party to whom the request is made shall, prior to disclosure, and as soon as practicable, notify all other Parties to permit a Party(ies) the opportunity to participate in opposing such request. The Parties must agree upon the wording of any press release or governmental or public filing relating to this Agreement. The Parties shall limit any responses to press or public inquiry to the information contained within the above-mentioned press release.

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000024

7.1 (a) Except as expressly set forth in Section 7.0, in the event that any entity not a Party shall seek disclosure of this Agreement from any Party, the Party from whom disclosure is sought shall notify the other Parties. The Parties shall confer and, if all Parties consent, the Parties may provide this Agreement to an entity not a Party under such terms and conditions as the Parties shall designate.

(b) Where one or more Parties object to disclosure of the Agreement to the entity not a Party, the objecting Party shall be responsible for taking all necessary actions to prevent disclosure of this Agreement to the entity not a Party. The costs associated with the prevention of disclosure of this Agreement shall be borne equally by the Parties and each Party shall take such steps as are necessary to aid the objecting Party in attempting to prevent disclosure of this Agreement to an entity not a Party.

7.2 Except as expressly set forth in Section 7.0, in any action in which a Party has been ordered to produce this Agreement, related communications and drafts, the producing Party shall seek a protective order limiting the use of this Agreement, related communications and drafts, to the particular purpose of the pending litigation in which it is produced and take all steps necessary to bar the disclosure to any entity not a Party.

7.3 Except as expressly set forth in Section 7.0, any Party which has produced Confidential Documents and Information may require the other Parties to return all specifically designated

25

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000025

Confidential Documents and Information in their possession, as well as in the possession of their counsel, retained experts, and/or consultants, including all copies. In lieu of returning all·such Confidential Documents and Information, the Party from whom the Confidential Documents and Information has been requested may certify in writing that all such requested Confidential Documents and Information have been destroyed.

7.4  The provisions of this Article VII shall also apply to the files, records, papers and documents generated in connection with any dispute resolution pursuant to Section 8.0.

## VIII.   ARBITRATION

8.0  The Parties agree to resolve any dispute which arises regarding the terms of this Agreement or the implementation thereof (a "Dispute") by way of binding arbitration in accordance with the Center for Public Resources Rules for Non-Administered Arbitration of Business Disputes (the "Rules") and the provisions of this Section.

(a)  In the event any Dispute arises that the Parties are unable to resolve by agreement, any Party to such Dispute shall have the right to commence binding arbitration of such Dispute under this Section 8.0 by sending written notice to the other Parties in accordance with Section 9.2 demanding such arbitration. Such notice shall briefly describe the Dispute as well as the relief sought by the Party demanding arbitration.  Promptly following receipt of any such notice, the Parties shall attempt to

26

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000026

agree upon the selection of an arbitrator (the "Arbitrator") to resolve such Dispute. If the Parties have not agreed upon the selection of the Arbitrator by the fifteenth day following delivery of the notice demanding arbitration, then any Party may request the Center for Public Resources to select the Arbitrator, provided that any Arbitrator selected by the Center for Public Resources shall be conclusive and binding on the Parties.

(b)   All arbitrations under this Section 8.0 shall be conducted in accordance with the Rules and the Parties shall faithfully abide by the Rules and abide by and perform any award rendered by the Arbitrator.   All such arbitrations shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1-16 and judgment upon the award may be entered by any court having jurisdiction thereof.  Any such arbitration shall be conducted in New York, New York.

IX.   MISCELLANEOUS PROVISIONS

9.0   This Agreement shall become binding upon each Party from and after the Effective Date.

9.1   (a)   Grace   acknowledges   that,   notwithstanding   the cancellation of coverage under the Policies for Products Claims and Asbestos-Related Claims pursuant to this Agreement, the Party Insurers may require information concerning Products Claims and Asbestos-Related Claims for purposes of establishing their rights with respect to their reinsurers. Grace shall cooperate reasonably with the Party Insurers for such purposes by providing to the Party

27

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000027

Insurers on a continuing basis non-privileged information about the progress and resolution of the litigation of Products Claims and Asbestos-Related Claims as well as access to non-privileged documentation with respect thereto, including but not limited to the right to audit individual claim files at a mutually agreed upon location.

(b)   From and after the Effective Date, Grace agrees to obtain, if reasonably possible, and make available to the Party Insurers, information and documentation concerning:

(i)   exposure to asbestos and asbestos-containing products and diagnosis, death, first claim and filing of all Asbestos-Related Claims against Grace of each Bodily Injury Claim Plaintiff;

(ii)   installation of asbestos-containing materials in buildings by Building   Damage Claim Plaintiffs with Asbestos-Related Claims against Grace as well as knowledge of the presence of asbestos products and/or the existence of asbestos requiring remediation and/or encapsulation in buildings owned, leased or occupied by Building Damage Claim Plaintiffs with Asbestos-Related Claims against Grace; and

(iii) other Products Claims.

(c)   Upon reasonable notice, Grace shall allow the Party Insurers to review all books and records maintained by Grace and/or those entities under its control to ascertain and establish the amount of payment of defense costs and costs of judgments and settlements of Products Claims and Asbestos-Related Claims.

28

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000028

9.2  All notifications, notices, bills, demands, payments, accounting or other communications which any Party desires or is required to give to another Party, shall be given in writing and shall be deemed to have been given as if hand delivered, sent by Certified U.S. Mail, Federal Express or overnight equivalent or by courier service, addressed to the Party or Parties at the address set forth below or such other address as a Party may designate in writing from time to time by notice to the other Parties in accordance with this Section:

    If to Grace:

        W.R. Grace & Co.
        One Town Center Road
        Boca Raton, Florida    33486-1010
        ATTENTION:    Secretary

    If to the Party Insurers:

        Commercial Union Insurance Co.
        Executive Offices  B10-09
        One Beacon Street
        Boston, MA 02108-3100
        ATTENTION:  Mr. Joseph Dalton, AVP

9.3  This Agreement may be amended, modified, superseded or canceled, and any of the terms hereof may be waived, only by a written instrument which specifically states that it amends, modifies, supersedes or cancels this Agreement, executed by each and all of the Parties.

9.4  In the case of a waiver, the Party waiving compliance may unilaterally execute a written instrument evidencing its waiver. The failure of any Party at any time or times to require performance of any provision of this Agreement shall in no manner

29

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000029

affect the right at a later time to enforce the same. No waiver by any Party of any condition, or of any breach of any term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach, or a waiver of any other condition or of any breach of any other term, covenant or warranty.

9.5   The article headings contained in this Agreement are for convenient reference only and shall not in any way affect the meaning or interpretation of this Agreement.

9.6   This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

9.7   This Agreement shall be construed in accordance with the laws of the state of New York. However, nothing contained herein shall be an admission by the Parties of the law or laws applicable to the interpretation of the Policies.

IN WITNESS WHEREOF, this Agreement has been read and signed by the duly authorized officers of the Parties, effective as of the Effective Date.

W. R. GRACE & CO.

WITNESS
Jeffrey M. Posner

By _____

Robert H. Beber
Senior Vice President

One Tower Center Bridgewater NJ FC
ADDRESS
Date 5/7/93

Date 5/7/93

30

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

W. R. GRACE & CO. - CONN.

By _____

WITNESS
Jeffrey M. Posner

ADDRESS
Date _5/7/53_

Robert H. Beber
Senior Vice President

Date _5/7/53_


COMMERCIAL    UNION    INSURANCE
COMPANY AS SUCCESSOR IN
INTEREST    TO    EMPLOYERS'
COMMERCIAL    UNION    INSURANCE
COMPANY    OF    AMERICA    AND
EMPLOYERS'    COMMERCIAL    UNION
INSURANCE COMPANY

By _____

WITNESS
Harvey G. Lewis

ADDRESS
Date _5/10/93_

Richard A. Jordan
Senior Vice President

Date _5/10/93_


AMERICAN EMPLOYERS' INSURANCE
COMPANY

By _____

WITNESS
Harvey G. Lewis

ADDRESS
Date _5/10/93_

Richard A. Jordan
Senior Vice President

Date _5/10/93_

31

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000031

# SETTLEMENT AGREEMENT

## EXHIBIT "A"

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000032

Insurance Policies Issued Or Alleged To Have Been Issued

| Insurance Company | Policy No. | Coverage Period |
|---|---|---|
| American Employers' Insurance Company | A15-2127-51 | October 20, 1962 through October 20, 1965 |
| | A15-8138-001 | January 27, 1965 through October 20, 1965 |
| | A16-8220-001 | October 20, 1965 through October 20, 1968 |
| | A16-8220-002 | October 20, 1965 through October 20, 1968 |
| | A16-8220-003 | October 20, 1968 through June 30, 1971 |
| | A16-8220-004 | October 20, 1968 through June 30, 1971 |
| Employers' Commercial Union Insurance Company (of America) | EY-8220-005 | June 30, 1971 through June 30, 1974 |
| Employers' Commercial Union Insurance Company (of America) | EY-8220-006 | June 30, 1971 through June 30, 1974 |

14323

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000033



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------- X
In re:                                           §   Chapter 11
                                                 §
W. R. GRACE & CO., <u>et al.</u>,                §   Case No. 01-01139 (JKF)
                                                 §
                    Debtors.                     §   Jointly Administered
------------------------------------------------- X
THE SCOTTS COMPANY,                              §
                                                 §
                    Plaintiff,                   §
                                                 §
            v.                                   §
                                                 §   Adv. Pro. No. _____
AMERICAN EMPLOYERS                               §
INSURANCE COMPANY; BOSTON OLD                    §
COLONY INSURANCE COMPANY; CONTINENTAL            §
CASUALTY COMPANY; EMPLOYERS COMMERCIAL           §
UNION N/K/A ONEBEACON AMERICA                    §
INSURANCE COMPANY; MARYLAND                      §
CASUALTY COMPANY; UNIGARD                        §
INSURANCE COMPANY,                               §
                                                 §
        – and –                                  §
                                                 §
W. R. GRACE & CO., et al., Debtors.[1]           §
                                                 §
        Defendants.                              §
                                                 §

## COMPLAINT FOR DECLARATORY AND OTHER RELIEF

---

[1]     The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc.), E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Plaintiff The Scotts Company ("Plaintiff" or "Scotts"), by and through its counsel, alleges as follows:

## Introduction

1.    This is an insurance coverage action for declaratory relief, pursuant to United States Bankruptcy Rule 7001.

2.    Plaintiff seeks declaratory and other relief with respect to the liability insurance policies sold to W. R. Grace & Co. (the "Debtors" or "W. R. Grace") by the Insurance Defendants (all defendants except for the Debtors are collectively referred to as the "Insurance Defendants"). The policies obligate the Insurance Defendants to provide coverage to Plaintiff for asbestos-related liabilities that have arisen or may arise in connection with W. R. Grace vermiculite sold by Scotts.

3.    The Insurance Defendants' duties under the policies include the obligations to defend, investigate, and indemnify Plaintiff with respect to asbestos-related bodily injury claims asserted against Plaintiff in multiple jurisdictions (the "BI Actions").

## The Parties

4.    The Scotts Company is an Ohio corporation with its principal place of business in Marysville, Ohio. Scotts is referred to herein as "Plaintiff."

5.    Defendant American Employers Insurance Company ("American Employers") is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

6.    Defendant Boston Old Colony Insurance Company ("Boston Old") is a Massachusetts corporation with its principal place of business in Chicago, Illinois.

7.    Defendant Continental Casualty Company ("Continental Casualty") is an

2

Illinois corporation with its principal place of business in Chicago, Illinois.

8.    Defendant Employers Commercial Union n/k/a OneBeacon America Insurance Company ("Employers Commercial") is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

9.    Defendant Maryland Casualty Company ("Maryland Casualty") is a Swiss corporation with its principal place of business in Schaumburg, Illinois.

10.    Defendant Unigard Insurance Company ("Unigard") is a Washington corporation with its principal place of business in Bellevue, Washington.

11.    Each of the foregoing Insurance Defendants is and, at all time relevant hereto was, engaged in the business of selling liability insurance.

12.    Defendant W. R. Grace & Co., et al. ("W. R. Grace") purchased liability insurance policies from the foregoing Insurance Defendants and has claimed an interest in the proceeds of such policies.

13.    Upon information and belief, W. R. Grace purchased liability insurance policies from other insurers. To the extent those policies extend coverage to Plaintiff for the BI Actions, Plaintiff will seek leave to join those insurers, once their identity is known.

## Jurisdiction

14.    Jurisdiction over this adversary proceeding is proper pursuant to 28 U.S.C. § 1134 and 28 U.S.C. § 157.

15.    Venue over this adversary proceeding is proper pursuant to 28 U.S.C. § 1409.

16.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

3

**Procedural History**

17.    On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

18.    On January 22, 2002, this Court entered an order (the "Injunction Order") that stays and enjoins actions "for which there <u>may</u> be coverage under the Insurance Policies," which Insurance Policies are defined in the Injunction Order as "those insurance policies that may provide coverage for asbestos-related claims asserted against the Debtors." <u>See</u> Exhibit A, Injunction Order, p. 3 at ¶¶ 9, 10.b. (emphasis added).  The Injunction Order further stays and enjoins actions "against Insurance Carriers alleging coverage for asbestos-related liabilities." <u>Id.</u>, at ¶ 10.d.

19.    On July 22, 2004, this Court entered an Order Denying the Expedited Motion of the Scotts Company for an Order (I) Enforcing the Debtors' Preliminary Injunction and Automatic Stay to Enjoin Prosecution of Certain Asbestos-Related Actions against The Scotts Company and (II) Finding all such Actions Commenced Post-Petition Void *Ab Initio* (the "July 2004 Order").  <u>See</u> Exhibit B, July 2004 Order.

20.    In its July 2004 Order, this Court prohibited "[t]he Insurance Carriers as to which Scotts makes a claim on shared insurance . . . from paying those claims <u>until the issue of coverage is litigated in an appropriate forum</u>." <u>Id.</u>, at ¶ 2 (emphasis added).

21.    In response to this Court's July 2004 Order, Plaintiff hereby seeks to litigate the issue of coverage in this forum.

**Nature of Causes of Action**

22.     Many of the Insurance Policies addressed by the Injunction Order extend

coverage to vendors of W. R. Grace's products, including Plaintiff (the "Shared Insurance

Policies"). A list of the Shared Insurance Policies of which Plaintiff is presently aware is

attached to the Injunction Order as Exhibit B.[2] (See Exhibit A hereto).

23.     The Shared Insurance Policies include, but are not limited to, the

following:

(a)     The Maryland Casualty Company Primary Policies (1967-73). Maryland
Casualty Company issued two, three-year primary-layer policies of
comprehensive general liability insurance to W. R. Grace. The first
policy, policy no. 31-278301, covers the period from June 30, 1967 to
June 30, 1970. The second policy, policy no. 31R-911051, covers the
period from June 30, 1970 to June 30, 1973. Both policies extend
coverage to "Any person or organization (herein referred to as 'vendor'), as
an Insured, but only with respect to the distribution or sale in the regular
course of the vendor's business of the named insured's products . . . ."

(b)     The Umbrella Policies above the Maryland Casualty Primary Policies
(1967-73). During the period of the Maryland Casualty Company Primary
Policies referenced above, W. R. Grace purchased first-layer umbrella
policies from American Employers Insurance Company (policy nos. A16-
8220-001 and A16-8220-003) and Employers Commercial Union
Insurance Company (policy no. EY-8220-005). All three umbrella
policies afford coverage to "any other person or organization who is an
additional Insured under any underlying policy of insurance . . . ."
Plaintiff qualifies as an insured under these umbrella policies, because it is
an additional insured under the Maryland Casualty Company Primary
Policies.

(c)     The Excess Policies above the Maryland Casualty Primary Policies (1967-
73). Upon information and belief, the upper-layer excess liability policies
sold to W. R. Grace for this period contain provisions specifying that those
policies "follow form" to the terms of the underlying umbrella policy.
Thus, the upper-layer excess policies issued to W. R. Grace likely follow
form to the terms of the umbrella policy issued by American Employers or

---

[2]      Because of the voluminous nature of the Shared Insurance Policies, complete copies of those policies have not been
attached to this Complaint. Exhibit B to the Injunction Order contains a list of the Shared Insurance Policies, the policy numbers,
and the effective dates of said policies.

Employers Commercial Union.  Because Plaintiff qualifies as an insured under the umbrella policies, it also qualifies as an insured under W. R. Grace's upper-layer excess policies.

(d)    The Continental Casualty Insurance Company Primary Policies (1973-79). In addition to the primary policies issued by Maryland Casualty, Continental Casualty Insurance Company sold two, three-year primary policies to W. R. Grace, covering the period from June 30, 1973 to June 30, 1976 (policy no. 902-36-70), and from June 30, 1976 to June 30, 1979 (policy no. 248-3440).  Upon information and belief, both Continental Casualty policies contain the identical "additional insured" language found in the Maryland Casualty policies.  As a result, Plaintiff is as an additional insured under the Continental Casualty policies as a vendor of W. R. Grace's vermiculite products.

(e)    The Umbrella Policies above the Continental Casualty Primary Policies (1973-79).  The first-layer umbrella policies during this period were issued by Employers Commercial Union, Unigard Mutual, and various London-based insurers.  The Employers Commercial Union policy is the same policy that was issued during the period of the Maryland Casualty primary policies, and affords coverage to "any other person or organization who is an additional Insured under any underlying policy of insurance . . . ."  The Unigard policy, policy no. 1-2517, contains identical language.  Upon information and belief, the umbrella policies issued by the London-based insurers contain similar language.  To the extent that Plaintiff is as an insured under the primary-layer Continental Casualty policies, it is also an insured under the first-layer umbrella policies.

(f)    The Excess Policies above the Continental Casualty Primary Policies (1973-79).  Plaintiff is also an insured under the excess policies purchased by W. R. Grace during this period.  For example, Boston Old Colony issued an excess policy of insurance to W. R. Grace, policy no. LX 2 666 569, covering the period from June 30, 1974 to June 30, 1977.  The policy is part of a quota share layer of $25 million which attaches at $75 million. An endorsement to the policy states that the "policy is hereby amended to follow all the terms, conditions, definitions and exclusions of the first umbrella policy (Insurer - Unigard Mutual Insurance Company, policy no. 1-2517) and all renewal and replacements thereof."  Because Plaintiff qualifies as an insured under the Unigard policy, it likewise qualifies as an insured under the Boston Old Colony policy.  Moreover, upon information and belief, all of the other policies sharing this excess layer contain comparable, if not identical, language, as do the other upper-layer excess policies purchased by W. R. Grace from June 30, 1973 to June 30, 1979.

6

24.    Beginning in approximately 1960 and continuing for some forty years, Plaintiff purchased vermiculite from W. R. Grace for resale to customers.  Most of the vermiculite that W. R. Grace sold to Plaintiff from the early 1960s until 1980 came from the W.R. Grace mine at Libby, Montana ("Libby").  It was ultimately determined that some of the Libby vermiculite that W. R. Grace sold to Plaintiff may have contained asbestos.

25.    In the BI Actions, Plaintiff is currently defending asbestos-related bodily injury claims arising out of the W. R. Grace vermiculite Plaintiff sold in the marketplace. Seventy-six of these BI Actions involving approximately 4,192 plaintiffs were filed following the Petition Date.

26.    In connection with the BI Actions, Plaintiff has incurred expenses and will continue to expend substantial amounts of money (the "Defense Expenses") in defense of claims alleging bodily injury to third parties arising out of the W. R. Grace vermiculite sold by Scotts.

27.    Because the allegations against Plaintiff in the BI Actions are premised on the purported asbestos found in the W. R. Grace vermiculite sold by Plaintiff, Plaintiff has a right to coverage under these Shared Insurance Policies.

28.    Plaintiff hereby tenders the BI Actions to the Insurance Defendants for defense and indemnity in accordance with the terms of their respective insurance policies.

**COUNT ONE**
**(Declaratory Judgment against all Insurance Defendants)**

29.    The averments of paragraphs 1 through 28 hereof are incorporated by reference as if herein set forth at length.

30.    Pursuant to the terms of their respective policies, each Insurance Defendant is obligated, *inter alia*, to defend Plaintiff, to pay Plaintiff's defense costs, including the costs of investigation, and to indemnify Plaintiff in connection with claims by third parties

7

alleging liability of the Plaintiff for damages because of bodily injury incurred in connection with W. R. Grace products sold by Plaintiff.

     31.    The claimants in the BI Actions allege that such bodily injuries as hereinabove described occurred during some part of the policy years during which the Shared Insurance Policies were in effect.

     32.    All conditions precedent to recovery under the Shared Insurance Policies referenced in Exhibit B have been satisfied or waived.

     33.    An actual controversy currently exists among Plaintiff and the Insurance Defendants with respect to their duties and obligations under the Shared Insurance Policies in that Plaintiff contends:

     (a)    Each Insurance Defendant has a duty to provide Plaintiff with a full defense and to pay all defense costs incurred in connection with the BI Actions in which bodily injury potentially occurred during its respective policy period;

     (b)    Each Insurance Defendant has a duty to indemnify Plaintiff for all sums that Plaintiff may be obligated to pay as damages in the BI Actions in which bodily injury occurred during its respective policy period; and

     (c)    In the event that more than one of the Insurance Defendants owes Plaintiff defense and/or indemnity, Plaintiff is entitled to select the insurance policy and policy years which will be accessed to provide such defense and/or indemnity payments.

     34.    Upon information and belief, each Insurance Defendant disputes one or more of Plaintiff's contentions set forth in the immediately preceding paragraph.

     35.    Declaratory relief from this Court will resolve some or all of said disputes and controversies.

     36.    Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaration by this Court of its rights and the Insurance Defendants' duties.  A judicial declaration is necessary to

determine Plaintiff's rights and the Insurance Defendants' duties regarding the Shared Insurance Policies and their applicability to the BI Actions.  Pursuant to 28 U.S.C. § 2202, this Court may also grant further necessary or proper relief as it deems appropriate.

WHEREFORE, Plaintiff demands judgment in its favor against the Insurance Defendants:

(1)    requiring each Insurance Defendant to defend and to indemnify Plaintiff against all liability, loss, or expense caused by reason of the claims hereinabove described;

(2)    granting Plaintiff specific performance of the contracts of insurance issued by the Insurance Defendants;

(3)    declaring and adjudging the rights and obligations of the parties under the respective insurance policies issued to W. R. Grace with respect to past and future liabilities of Plaintiff arising from claims allegedly based upon the events hereinabove described;

(4)    for costs of suit;

(5)    for counsel fees; and

(6)    for such other and further relief, including any appropriate equitable relief, as the Court may deem just and proper.


Dated: September 2, 2004

MORRIS, NICHOLS, ARSHT & TUNNELL

William H. Sudell, Jr. (#0463)
Donna L. Culver (#2983)
1201 North Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
Phone:  (302) 658-9200
Facsimile:  (302) 658-3989

and

9

Robert J. Sidman (Ohio Bar #0017390)
William J. Pohlman (Ohio Bar #0040912)
Tiffany Strelow Cobb (Ohio Bar #0067516)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43215
Phone:  (614) 464-6400
Facsimile:  (614) 719-4663

Attorneys for Plaintiff
The Scotts Company

425728v3

G = Grace's proportionate share of liability for asbestos claims
S = Scotts' proportionate share of liability for asbestos claims
L = Litigation costs incurred by Settled Asbestos Insurance Companies
  in coverage litigation with Scotts





IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE



In re:                           )      Chapter 11
                                 )
W. R. GRACE & CO., *et al.*[1]   )      Case No. 01-01139 (JKF)
                                 )      Jointly Administered
        Debtors.                 )
                                 )
                                 )
                                 )
                                 )


## EXHIBIT 2 TO EXHIBIT BOOK
## ASBESTOS PI TRUST AGREEMENT

**EXHIBIT 2**

Attached.

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.),
W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon,
Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc.,
Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC
(f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a
Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC
Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities
Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary
Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe,
Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc.
(f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace
Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.
R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe
Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai
Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH,
Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings
Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA
Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental
Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin &
Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country
Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

REMAINDER OF EXHIBIT OMITTED
SEE EXHIBIT 2 TO EXHIBIT BOOK
(D.I. 20874)

EXHIBIT

$Acc30(6X6)-11$

$5-1-09$    $Lt$

PENGAD 800-631-6989

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **W. R. GRACE & CO.,** *et al.*[1] | ) Case No. 01-01139 (JKF) |
| | ) Jointly Administered |
| **Debtors.** | ) |
| | ) |
| | ) |
| | ) |

**EXHIBIT 4 TO EXHIBIT BOOK
TRUST DISTRIBUTION PROCEDURES**

**EXHIBIT 4**

Attached.

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

REMAINDER OF EXHIBIT OMITTED
SEE EXHIBIT 4 TO EXHIBIT BOOK
(D.I. 20874)

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE



| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.,** *et al.*[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## EXHIBIT 10 TO EXHIBIT BOOK
## COOPERATION AGREEMENT

**EXHIBIT 10**

Attached.

---

[1]   The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

REMAINDER OF EXHIBIT OMITTED
SEE EXHIBIT 10 TO EXHIBIT BOOK
(D.I. 20874)