# EXHIBIT A

1       IN THE UNITED STATES BANKRUPTCY COURT
        FOR THE DISTRICT OF DELAWARE
2   _____X
    In Re:                      Chapter 11
3

4                               Case No.

5                               01-01139 JKF
    W.R. Grace & Co., et al.,
6
                                (Jointly
7           Debtors.           Administered)
    _____X
8

9       * * * CONFIDENTIAL * * *

10              —    —    —

11          May 13, 2009

12              —    —    —

13      DEPOSITION of RICHARD FINKE, held

14  at the offices of Kirkland & Ellis, 655

15  Fifteenth Street, N.W., Washington, DC,

16  commencing at 9:32 A.M., on the above

17  date, before Lisa Lynch, a Registered

18  Merit Reporter, New Jersey Certified Court

19  Reporter, License No. XI00825, and

20  Certified Realtime Reporter

21              —    —    —

22      MAGNA LEGAL SERVICES, LLP

23      7 Penn Center, 8th Floor
            1635 Market Street
24          Philadelphia, PA  19103

## Page 2

```
1   A P P E A R A N C E S :
2
3   DRINKER BIDDLE & REATH, LLP
    BY:  MICHAEL F. BROWN, ESQUIRE
    One Logan Square
4   18th and Cherry Streets
    Philadelphia, Pennsylvania 19103-6996
5   (brownmf@dbr.com)
    Representing OneBeacon America Insurance
6   Company, Seaton Insurance Company,
    Government Employees Insurance Company,
7   Columbia Insurance Company f/k/a Republic
    Insurance Company
8
9   CAPLIN & DRYSDALE, CHARTERED
    BY:  JEFFREY A. LIESEMER, ESQUIRE
10  One Thomas Circle NW
    Suite 1100
11  Washington, DD 20005
    202.862.7801
12  (jal@capdale.com)
    Representing Grace, Official Committee of
13  Asbestos Personal Injury Claimants ("ACC")
14
15  KIRKLAND & ELLIS, LP
    BY:  BARBARA M. HARDING, ESQUIRE
         THEODORE L. FREEDMAN, ESQUIRE
16  655 Fifteenth Street, N.W.
    Washington, DC  20005-5793
17  202.879.5081
    (barbara.harding@kirkland.com)
18  (tfreedman@kirkland.com)
    Representing the Debtors
19
20  THE LAW OFFICES OF JANET S. BAER, P.C.
    BY:  JANET S. BAER, ESQUIRE
21  70 West Madison Street
    Suite 2100
22  Chicago, Illinois 60602
    jbaer@jsbpc.com
23  Representing W.R. Grace
24
```

## Page 3

```
1   A P P E A R A N C E S : (continued)
2   SIMPSON THACHER & BARTLETT, LLP
    BY:  ELISA ALCABES, ESQUIRE
3   425 Lexington Avenue
    New York, New York 10017-3954
4   212.455.2846
    (ealcabes@stblaw.com)
5   Representing Travelers Casualty and Surety
    Company
6
7   VORYS, SATER, SEYMOUR AND PEASE, LLP
    BY:  WILLIAM J. POHLMAN, ESQUIRE*
8        PHILIP DOWNEY, ESQUIRE*
    (*VIA TELECONFERENCE)
9   52 East Gay Street
    Columbus, Ohio 43215
10  614.464.8349
    (wjpohlman@vorys.com)
11  Representing The Scotts Company, LLC
12
    LEWIS, SLOVAK & KOVACICH, PC
13  BY:  TOM L. LEWIS, ESQUIRE
    P.O. Box 2325
14  723 Third Avenue
    Great Falls, Montana 59403
15  406.761.5595
    tom@lsklaw.net
16  Representing the Libby Claimants
17
    SPEIGHTS & RUNYAN
18  BY:  DANIEL H. SPEIGHTS, ESQUIRE*
    (*VIA TELECONFERENCE)
19  200 Jackson Avenue East
    P.O. Box 685
20  Hampton, South Carolina 29924
    803.943.4444
21  (dspeights@speightsrunyan.com)
    Representing Anderson Memorial Hospital
22
23
24
```

## Page 4

```
1   A P P E A R A N C E S : (continued)
2   MENDES & MOUNT, LLP
    BY:  ALEXANDER MUELLER, ESQUIRE
3   750 Seventh Avenue
    New York, New York 10019
4   212.261.8296
    (alexander.mueller@mendes.com)
5   Representing London Market Companies
6
    FORD MARRIN ESPOSITO & WITNEYER & GLESER
7   BY:  ELIZABETH M. DeCRISTOFARO, ESQUIRE*
    (*VIA TELECONFERENCE)
8   Wall Street Plaza
    New York, New York 10005-1875
9   212.269.4900
    Representing Continental Casualty Company
10  and Continental Insurance Company
11  BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
    BY:  MATTHEW I. KRAMER, ESQUIRE*
12  (*VIA TELECONFERENCE)
    200 South Biscayne Boulevard
13  Suite 2500
    Miami, Florida 33131-5340
14  305.450.7246
    (mkramer@bilzin.com)
15  Representing Property Damage Committee
16
    STROOCK & STROOCK & LAVAN, LLP
17  BY:  ARLENE G. KRIEGER, ESQUIRE*
         LEWIS KRUGER, ESQUIRE*
18  (*VIA TELECONFERENCE)
    180 Maiden Lane
19  New York, New York 10038-4982
    212.806.5400
20  (akrieger@stroock.com)
    Representing Official Committee of
21  Unsecured Creditors
22
23
24
```

## Page 5

```
1   A P P E A R A N C E S : (continued)
2
    CROWELL & MORING, LLP
3   BY:  MARK D. PLEVIN, ESQUIRE
         NOAH S. BLOOMBERG, ESQUIRE
4   1001 Pennsylvania Avenue, N.W.
    Washington, DC 20004-2595
5   202.624.2913
    (mplevin@crowell.com)
6   (nblomberg@crowell.com)
    Representing Fireman's Fund Insurance
7   (Surety Bond)
8   STEVENS & LEE, P.C.
9   BY:  MARNIE E. SIMON, ESQUIRE
    1818 Market Street, 29th Floor
10  Philadelphia, Pennsylvania 19103-1702
    215.751.2885
11  (mes@stevenslee.com)
    Representing Fireman's Fund Insurance
12
13  LAW OFFICES OF ALAN B. RICH
    BY:  ALAN B. RICH, ESQUIRE
14  Elm Place, Suite 4620
    1401 Elm Street
15  Dallas, Texas 75202
    214.744.5100
16  (arich@alanrichlaw.com)
    Representing Property Damage PCR
17
18  CONNOLLY BOVE LODGE & HUTZ, LLP
    BY:  JEFFREY C. WISLER, ESQUIRE
19  The Nemours Building
    1007 North Orange Street
20  P.O. Box 2207
    Wilmington, Delaware 19899
21  302.888.6528
    (jwisler@cblh.com)
22  Representing Maryland Casualty
23
24
```

Page 6

1  A P P E A R A N C E S : (continued)
2  ECKERT SEAMANS CHERIN & MELLOTT, LLC
   BY:  EDWARD J. LONGOSZ, II, ESQUIRE
3  1747 Pennsylvania Avenue, N.W.
   12th Floor
4  Washington, DC 20006
   202.659.6619
5  (elongosz@eckertseamans.com)
   Representing Maryland Casualty and Zurich
6
7  WILEY REIN, LLP
   BY:  RICHARD A. IFFT, ESQUIRE
8  1776 K Street NW
   Washington, DC 20006
9  202.719.7170
   (rifft@wileyrein.com)
10 Representing Maryland Casualty and Zurich
11
   COZEN O'CONNOR
12 BY:  JACOB C. COHN, ESQUIRE
   1900 Market Street
13 Philadelphia, Pennsylvania 19103-3508
   215.665.2147
14 (jcohn@cozen.com)
   Representing Federal Insurance Company
15
16 ORRICK HERRINGTON & SUTCLIFFE, LLP
   BY:  PERI N. MAHALEY, ESQUIRE
17 Columbia Center
   1152 15th Street, N.W.
18 Washington, DC 20005-1706
   202.339.8516
19 (pmahaley@orrick.com)
   Representing PI Future Claimants'
20 Representative
21
   CUYLER BURK, P.C.
22 BY:  ANDREW CRAIG, ESQUIRE
   4 Century Drive
23 Parsippany, New Jersey 07054
   973.734.3200
24 (acraig@cuyler.com)

Page 7

1  A P P E A R A N C E S : (continued)
2  O'MELVENY & MEYERS LLP
   BY:  TANCRED SCHIAVONI, ESQUIRE*
3  (*VIA TELEPHONE)
   7 Times Square
4  New York, New York 10036
   212.326.2267
5  (tschiavoni@omm.com)
   Representing Arrowood Indemnity Company
6
7  WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
   BY:  KEVIN J. MANGAN, ESQUIRE*
8  (*VIA TELECONFERENCE)
   222 Delaware Avenue
9  Suite 1501
   Wilmington, Delaware 19801
10 302.252.4361
   (kmangan@wcsr.com)
11 Representing State of Montana
12
   PEPPER HAMILTON, LLP
13 BY: LINDA J. CASEY, ESQUIRE*
   (*VIA TELECONFERENCE)
14 3000 Two Logan Square
   Philadelphia, Pennsylvania 19103
15 215.981.4000
   (caseyl@popperlaw.com)
16 Representing BNSF Railway Company
17 KRAMER LEVIN NAFTALIS & FRANKEL, LLP
   BY:  SARAH SCHINDLER-WILLIAMS, ESQUIRE*
18 (*VIA TELECONFERENCE)
   1177 Avenue of the Americas
19 New York, New York 10036
   212.715.9515
20 (SSchindlerWilliams@kramerlevin.com)
   Representing the Equity Committee
21
22
23
24

Page 8

1              INDEX
            EXAMINATION
2
   Witness Name              Page
3  RICHARD FINKE
4    BY MR. BROWN           12,333
5    BY MS. ALCABES         129
6    BY MR. LEWIS           187
7    BY MR. PLEVIN          265
8    BY MR. WISLER          285
9    BY MR. COHN            289
10   BY MR. MANGAN          296
11   BY MR. DOWNEY          305, 371
12   BY MR. SCHIAVONI       343
13   BY MR. SPEIGHTS        347
14
15           EXHIBITS
   EXHIBIT    DESCRIPTION        ID
16
17 Exhibit 1  Notice of Deposition of   16
            Debtors Pursuant to Rule
18          30(b)(6)
19 Exhibit 2  Document entitled W.R.     16
            Grace/Confirmation Hearing
20          30(b)(6) Deposition Notice
21 Exhibit 3  SEC Form 8-K              25
22 Exhibit 4  Exhibit 6 to Exhibit Book, 41
            Asbestos Insurance
23          Transfer Agreement
24 Exhibit 5  Exhibit 19 to Exhibit     53
            Book, Retained Causes of

Page 9

1            EXHIBITS
   EXHIBIT    DESCRIPTION        ID
2
3  Exhibit 6  Exhibit 2 to Exhibit Book, 55
            Asbestos PI Trust Agreement
4
   Exhibit 7  Exhibit 4 to Exhibit Book, 55
5            Trust Distribution
            Procedures
6
   Exhibit 8  First Amended Joint Plan  70
7            of Reorganization
8  Exhibit 9  Exhibit 5 to Exhibit Book, 92
            Schedule of Settled
9            Asbestos Insurers Entitled
            to 524(g) Protection
10
   Exhibit    Settlement Agreement      98
11 10         Bates stamped OB 1 through
            33
12
   Exhibit    Travelers/Allstate       135
13 11         30(b)(6) deposition notice
14 Exhibit    Travelers 30(b)(6)        136
   12         supplemental deposition
15          notice
16 Exhibit    Grace/Aetna Asbestos      149
13           Settlement Agreement dated
17          May 22, 1996
18 Exhibit    Exhibit 25 to Exhibit     178
14           Book, CMO for Class 7A
19          Asbestos PD Claims
20
21
22
23
24

Page 262

1  calls for a legal analysis, a legal
2  conclusion as to any specific
3  policy or provision of a policy.
4  To the extent that you understand
5  and don't have to provide those, I
6  think you can answer.
7       MS. DeCRISTOFARO:  Join the
8  objection.
9       THE WITNESS:  Now can I
10 have the question back?
11      MS. HARDING:  Sorry.
12      THE WITNESS:  It's okay.
13      (The reporter reads the
14 pending question.)
15      A.   I believe they do not.
16      Q.   Okay.  The next subject of
17 inquiry which I alluded to in response to
18 an objection is found at page 15, number
19 nine, bases for designation under the Plan
20 of certain asbestos insurance asbestos --
21 as settled asbestos insurance companies.
22 Do you see that?
23      A.   Yes.
24      Q.   I think we discussed that

Page 263

1  enough.  Let's go to number one under --
2  oh, no, it's CNA.  Right here.  Just about
3  done.
4       One more question I have to ask you
5  and I've just got to find the right
6  document.
7       Would you go to Exhibit 4, which is
8  Exhibit 6 to the Exhibit Book, and it's
9  entitled Asbestos Insurance Transfer
10 Agreement.
11      A.   Okay.
12      Q.   And this relates to the
13 work comp and Part B coverage I discussed
14 earlier.  Does this document, Exhibit 6 to
15 the Exhibit Book and Exhibit 4 to this
16 deposition, purport to transfer work comp
17 and Part B liability coverage under
18 workers' compensation policies to the
19 Trust?
20      MS. HARDING:  Object to
21 form and I don't know that this was
22 part of the designation and to the
23 extent that you know...
24      MR. LEWIS:  It was asked

Page 264

1  about by another attorney and I'm
2  just asking a follow-up question
3  and I'd like to do that without --
4  without the wait because I have to
5  catch an airplane.
6       MS. HARDING:  No, no, I
7  just don't know if he knows the
8  answer, so --
9       A.   No, my understanding is
10 that it does not transfer workers' comp
11 coverage.
12      MR. LEWIS:  That's all I
13 have.  Thank you, sir.
14      THE WITNESS:  Thank you.
15      MS. HARDING:  Let's take a
16 ten-minute break.
17      (Recess taken.)
18 EXAMINATION BY
19 MR. PLEVIN:
20      Q.   Mr. Finke, my name is Mark
21 Plevin.  I'm from Crowell & Moring and I
22 represent Fireman's Fund Insurance Company
23 with respect to issues regarding the
24 supercedeas bond that Fireman's Fund

Page 265

1  posted for the Edwards case and the later
2  indemnity agreement.  Do you have a
3  general understanding of what I'm talking
4  about?
5       A.   Yes, a general
6  understanding.
7       Q.   Okay.  If I could ask you
8  to look at what I've been told is Exhibit
9  2 to your deposition, which is the witness
10 designations, and ask you to turn to pages
11 four and five, do you see there that it
12 refers to a deposition notice filed by
13 Fireman's Fund Insurance Company re:
14 surety bond issues?
15      A.   Yes.
16      Q.   And do you see that there
17 are 12 topics and that you are listed as
18 the designated witness for 10 of the 12
19 topics?
20      A.   Yes.
21      Q.   Are you prepared today to
22 testify about each of those 10 topics next
23 to your name?
24      A.   Could I consult with

Page 266

1  counsel for a minute?
2      Q.    Sure.
3          (Off the record.)
4      A.    The answer is yes, I am.
5      Q.    Okay.  Mr. Finke, I'd like
6  to first go through some of the background
7  for the bond.  Do you understand that
8  there was a lawsuit in Texas against Grace
9  brought by five plaintiffs known
10 collectively as the Edwards case?
11     A.    Yes.
12     Q.    And that after trial in
13 that case a judgment was rendered in favor
14 of the plaintiffs?
15     A.    Yes.
16     Q.    And that there was an award
17 of compensatory damages against Grace
18 jointly and severally with Pittsburgh
19 Corning Company?
20     A.    Yes, that's my
21 understanding.
22     Q.    Also that there was an
23 award of punitive damages against Grace?
24     A.    Yes.

Page 267

1      Q.    And that the court also
2  awarded post-judgment interest at the rate
3  of, I think, the Texas statutory rate
4  which I believe is about 12 percent?
5      A.    That sounds familiar,
6  although I think that's right but I --
7      Q.    Are you having a problem
8  with the exact percentage or the fact that
9  there was post-judgment interest?
10     A.    Yeah, the exact percentage
11 I'm not aware of.
12     Q.    Okay.  But you are aware
13 that there was --
14     A.    I'm just generally aware
15 that there was, yes, interest running.
16     Q.    And Grace appealed that
17 judgment to the Texas Court of Appeals,
18 correct?
19     A.    Yes.
20     Q.    In doing so, Grace felt
21 that the trial had been infected with
22 errors as set forth in the brief that
23 Grace filed in the Court of Appeals?
24     A.    Yes.

Page 268

1      Q.    And their brief was
2  something that Grace's counsel was
3  authorized to file on Grace's behalf?
4      A.    Yes.
5      Q.    Are you familiar with the
6  fact that the appellees never responded to
7  Grace's opening appellate brief because of
8  the automatic stay that followed from
9  Grace's bankruptcy filing?
10     A.    Again, I was not aware of
11 that or, if I was, I've forgotten it.  I
12 do recall that the appeal -- the timing of
13 the appeal coincided with the filing of
14 the Chapter 11 petition.
15     Q.    Are you aware that the
16 appeal is still undecided by the Texas
17 Court of Appeals?
18     A.    Correct.
19     Q.    And that the Texas Court of
20 Appeals abated the appeal in view of the
21 pendancy of the bankruptcy case?
22         MS. HARDING:  Object to the
23     form in terms of abated.  But if
24     you know the answer, go ahead.

Page 269

1      A.    I was not aware of that.
2      Q.    In order to appeal the
3  judgment of the trial court to the Texas
4  Court of Appeals, Grace obtained a
5  supercedeas bond, correct?
6      A.    Yes.
7      Q.    And the purpose of the
8  supercedeas bond was to ensure that the
9  plaintiffs/appellees would be paid in the
10 event that they prevailed in the appeal,
11 correct?
12     A.    Yes.
13     Q.    The supercedeas bond was
14 issued on Grace's behalf by Fireman's Fund
15 Insurance Company, correct?
16     A.    Yes.
17     Q.    And in connection with the
18 issuance of the supercedeas bond,
19 Fireman's Fund required that Grace enter
20 into an indemnity agreement with Fireman's
21 Fund, correct?
22     A.    Yes, that's my
23 understanding.
24     Q.    And in rough summary,

Page 270

1  subject of course to the terms of the
2  indemnity agreement, it provides that, to
3  the extent Fireman's Fund pays under the
4  supercedeas bond, Grace will reimburse
5  Fireman's Fund up to the amount of the
6  bond?
7      A.   Yes, I understand that.
8      Q.   Okay.  Are you aware that
9  Fireman's Fund filed a proof of claim that
10  is a contingent claim for any amounts that
11  it is entitled to under the indemnity
12  agreement from Grace in the event that
13  Fireman's Fund pays on the supercedeas
14  bond?
15      A.   That's my understanding,
16  yes.
17      Q.   Has Grace classified that
18  claim by Fireman's Fund under its Plan, to
19  your knowledge?
20      A.   My understanding --
21          MS. HARDING:  Object to
22  form but go ahead.
23          THE WITNESS:  Sorry.
24      A.   My understanding is that

Page 271

1  that is still under discussion and
2  consideration at Grace.
3      Q.   Okay.  If I were to tell
4  you that Fireman's Fund was sent a ballot
5  to vote in Class 6 as an indirect asbestos
6  PI claim, would that surprise you?
7      A.   No, from the standpoint
8  that the bond was issued in connection
9  with an asbestos personal injury case and
10  trial.
11      Q.   Can you identify any other
12  claim that you know of that has been
13  classified by Grace as a Class 6 claim
14  that is based on a contract such as the
15  indemnity agreement between Fireman's Fund
16  and Grace?
17      A.   Let's see.
18          MS. HARDING:  You're asking
19  if he can recall, if he knows?
20          MR. PLEVIN:  If he knows.
21      A.   There is a claim by, I
22  believe, National Union concerning -- it's
23  not a supercedeas bond or appeal bond but
24  a bond to secure a settlement with some

Page 272

1  asbestos personal injury claimants.  I
2  believe the claim they filed based on that
3  bond has been classified as a Class 6.
4      Q.   Was the -- was there an
5  adversary proceeding in the bankruptcy
6  case concerning the allowance and
7  classification of the National Union bond
8  claim?
9      A.   I believe there was.
10      Q.   And was there a settlement
11  approved by the Bankruptcy Court?
12      A.   I believe there was a
13  settlement.  I honestly can't remember
14  right now if it was approved by the
15  Bankruptcy Court.  It wouldn't surprise me
16  if it was but I just don't recall.
17      Q.   Okay.  And as far as you
18  recall, does the settlement between
19  National Union and Grace provide for how
20  the National Union bond claim would be
21  classified?
22      A.   That I don't know.
23      Q.   Your best recollection and
24  understanding as you sit here today is

Page 273

1  that the National Union bond claim is
2  classified as a Class 6 claim?
3      A.   That is my understanding,
4  yes.
5      Q.   Assuming that's the case,
6  can you think of any other contractual
7  claim that has been classified as Class 6
8  besides the Fireman's Fund claim and the
9  National Union claim?
10      A.   Well, when you say
11  "contractual," I don't have a specific
12  claim in mind, but any contractual
13  indemnification claim that is based on an
14  asbestos personal injury claim would be
15  classified as Class 6.
16      Q.   But you can't think of any
17  particular claim as you sit here today
18  that fits that --
19      A.   No.
20      Q.   -- category other than the
21  Fireman's Fund claim?
22      A.   That's correct.
23          MS. HARDING:  Are you
24  asking for a specific entity's

Page 274

1  claim?
2          MR. PLEVIN:  Yes.
3          MS. HARDING:  Is that what
4  you meant?
5          MR. PLEVIN:  Or any
6  specific proof of claim.
7      Q.    Now, you said that in
8  response to one of my earlier questions
9  that the classification of the Fireman's
10 Fund claim was under consideration.
11     A.    Yes.
12     Q.    What did you mean by
13 that?
14         MS. HARDING:  Well, object
15     to form and to the extent it calls
16     for attorney-client privilege or
17     work product, joint interest
18     privilege, I instruct the witness
19     not to answer. But to the extent
20     that it doesn't, you can answer.
21     A.    I think beyond saying that
22 it is under discussion and under
23 consideration, I don't know that there's
24 anything I could add to that that wouldn't

Page 275

1  disclose privileged communication.
2      Q.    Okay.  And pursuant to your
3  counsel's instruction, you don't intend to
4  disclose privileged information, do you?
5      A.    That's correct.
6      Q.    Okay.  During the pendancy
7  of the bankruptcy case, were any premiums
8  due in order to keep the bond in effect
9  and in place?
10     A.    That I do not know.
11     Q.    Do you know whether during
12 the pendancy of the bankruptcy case there
13 were any drawdowns -- well, let me
14 withdraw that question and step back and
15 ask a foundational question.
16         Are you aware that a portion of the
17 bond is secured by a letter of credit
18 issued by Wachovia Bank on behalf of
19 Grace?
20     A.    Yes.
21     Q.    Do you know the amount of
22 the bond when -- rather, the amount of the
23 letter of credit when it was first
24 issued?

Page 276

1      A.    I believe it was about --
2  around 13 million dollars.
3      Q.    Do you know if any part of
4  that letter of credit has been drawn down
5  during the bankruptcy case either to pay
6  premiums on the bond or for any other
7  purpose?
8      A.    My understanding is that it
9  was drawn down in the amount of
10 approximately two million dollars to pay
11 for premiums.
12     Q.    Has Wachovia made a claim
13 against Grace for the portion that it paid
14 under the letter of credit?
15     A.    I don't know.
16         MS. HARDING:  Object to
17     form.  Go ahead.
18     A.    I don't know.
19     Q.    Do you know when the
20 drawdown of approximately two million
21 dollars occurred?
22     A.    No, I don't.
23     Q.    Does Grace contend that the
24 drawdowns were improper in any way?

Page 277

1          MS. HARDING:  Object to
2      form.  And to the extent it calls
3      for privileged communications or
4      work product -- I'm not saying it
5      does.  I'm just saying to the
6      extent it does...
7          THE WITNESS:  Yeah.
8      A.    I don't know the answer.
9      Q.    Focusing on the indemnity
10 agreement between Fireman's Fund and Grace
11 that relates to the supercedeas bond, does
12 Grace contend that the indemnity agreement
13 is unenforceable for any reason?
14         MS. HARDING:  Same
15     objection.
16     A.    Yeah, I don't -- I don't
17 know what positions we have taken, if any,
18 with respect to the Fireman's Fund claim.
19 No, I don't know.
20     Q.    Let me move it off
21 contentions and ask whether you're aware
22 of any facts that suggest that the
23 indemnity agreement is not enforceable
24 according to its terms.

Page 278

1     A.    No, I'm not aware of any
2  facts.
3     Q.    Can you explain to me why,
4  to the extent the Fireman's Fund claim is
5  classified in Class 6, it is in fact
6  classified in Class 6?
7         MS. HARDING:  Object to
8     form.  It calls for a legal
9     conclusion or a legal analysis,
10    but -- and to the extent that it
11    might call for privileged
12    communications or work product,
13    object on that point as well.
14        But to the extent you can
15    answer without divulging those...
16    A.    I believe there is a
17 provision in the Plan under which arguably
18 any claim based on a bond, you know,
19 securing an asbestos-related liability
20 could be classified as a Class 6 claim,
21 but my brief attempts to find that
22 provision right now have not been
23 successful.  So I could take the time now
24 if you want to take a break or I could

Page 279

1  look for it later, but --
2     Q.    I think that answer is
3  sufficient and let me see if I can just
4  summarize it:  That you believe there's a
5  provision in either the -- are you
6  looking at the Plan or the TDPs?
7     A.    I'm looking at the Plan
8  right now.
9     Q.    So you believe there's a
10 provision in the Plan that says something
11 to the effect that a bond claim that
12 secures an asbestos PI claim or appeal is
13 a Class 6 claim?
14    A.    Yes.
15    Q.    Okay.  Is there any other
16 reason you are aware of or can think of
17 why the Fireman's Fund bond claim would be
18 classified as a Class 6 claim?
19    A.    No, that's -- that's all
20 that comes to mind, to my mind.
21    Q.    As a -- withdrawn.
22        To the extent the Fireman's Fund
23 claim does end up being classified as a
24 Class 6 claim, would it be a claim that

Page 280

1  would be channeled to the Trust for
2  payment?
3     A.    Yes.
4     Q.    And as a claim channeled to
5  the Trust, would it be subject to the
6  payment percentage?
7     A.    Yes, that's my
8  understanding.
9     Q.    Are you generally familiar
10 with the concept of setoff?
11    A.    Generally, yes.
12    Q.    What is your understanding
13 of the concept of setoff?
14    A.    That a --
15        MS. HARDING:  Well, are you
16    asking him kind of generally as a
17    lawyer his understanding of the
18    concept setoff?
19        MR. PLEVIN:  I asked what
20    his understanding was.
21        MS. HARDING:  Okay.  To the
22    extent that it doesn't reveal
23    attorney-client privilege or work
24    product...

Page 281

1         THE WITNESS:  Right.
2     A.    That a claimant can either
3  reduce his liability on a separate claim
4  by setting off the amount owed on -- on
5  the first claim.  I'm not articulating it
6  well, but...
7     Q.    All right.  Are you aware,
8  Mr. Finke, of the fact that Fireman's Fund
9  issued certain liability insurance
10 policies to W.R. Grace?
11    A.    Yes.
12    Q.    And do you know that W.R.
13 Grace is making claim against Fireman's
14 Fund for coverage under those policies?
15        MS. HARDING:  Object to
16    form but go ahead.
17    A.    I did not know that.
18    Q.    Okay.  Let me represent to
19 you that Grace is in fact making a claim
20 against Fireman's Fund for coverage under
21 those policies.
22    A.    Okay.
23    Q.    And that discussions are
24 going on between the two companies about

Page 282

1  that.
2       When Grace entered into the
3  indemnity agreement with Fireman's Fund
4  with respect to the bond, was Grace
5  entering into that on its own account or
6  on behalf of somebody else as a fiduciary,
7  trustee or other representative?
8       MS. HARDING:  Object to
9  form.  Attorney-client privilege,
10      work product.  To the extent that
11      you can answer without revealing
12      those...
13      A.   I'm not personally aware of
14  the circumstances in which Grace entered
15  into that indemnification agreement, but I
16  will add I'm not aware of any
17  circumstances as to whether it would have
18  entered into it on another's behalf.
19      Q.   Does the -- if the Plan is
20  confirmed, does Grace have a position one
21  way or the other as to whether it should
22  continue with the Edwards appeal to the
23  extent that issue is not resolved
24  consensually among the parties to the

Page 283

1  bankruptcy case?
2       MS. HARDING:  Object to
3       form and calls for speculation.
4       And to the extent it calls for
5       attorney-client privilege or work
6       product communications, I instruct
7       the witness not to answer.
8       Otherwise, you can answer.
9       A.   I will say that, yeah,
10  Grace believes it has a very strong
11  position on the appeal and that the appeal
12  should be pursued.
13      Q.   Okay.  I think this may be
14  my last question, Mr. Finke.
15      At the time of the negotiations
16  relating to the Plan, was Grace aware of
17  the Edwards appeal, the supercedeas bond
18  issued by Fireman's Fund and the indemnity
19  agreement between Fireman's Fund and
20  Grace?
21      A.   Yes.
22      Q.   And were those items in
23  fact the subject of discussion among Grace
24  and other parties with whom it negotiated

Page 284

1  the Plan?
2       MS. HARDING:  Object to
3       form.  And to the extent that it
4       calls for attorney-client
5       privilege, work product, joint
6       interest claims, instruct the
7       witness not to answer.
8       A.   I can't answer that
9  question.
10      Q.   And is the reason you can't
11  answer it because you don't have knowledge
12  about it or because of your counsel's
13  instruction?
14      A.   Because of my counsel's
15  instructions.
16      MR. PLEVIN:  I have no
17      further questions.  Thank you.
18      (Off the record.)
19  EXAMINATION BY
20  MR. WISLER:
21      Q.   Good afternoon, Mr. Finke.
22  My name is Jeffrey Wisler and I represent
23  Maryland Casualty Company and Zurich in
24  these bankruptcy cases.

Page 285

1       You've been designated by Grace to
2  testify on its behalf as to the 17 topics
3  identified by Maryland Casualty in its
4  30(b)(6) deposition notice.  Is that
5  correct?
6       A.   Yes, I believe so.
7       Q.   And you testified earlier
8  that you've reviewed the deposition
9  transcript -- the transcript from Mr.
10  Lockwood's deposition.  Is that correct?
11      A.   Yes, that is correct.
12      Q.   Is there any testimony
13  given by Mr. Lockwood during his
14  deposition relating to those 17 Maryland
15  Casualty topics to which you as the
16  designated Grace representative
17  disagree?
18      (The witness reviews the document.)
19      A.   No, I don't recall any.
20      Q.   Same question as to Mr.
21  Posner.  You listened in on his
22  deposition?
23      A.   Correct.
24      Q.   Is there any testimony he

Page 334

1  settlement agreement in front of you
2  involving Commercial Union?
3        A.    Yes.
4        Q.    And there was a contractual
5  indemnity provision in there?  Do you
6  recall that?
7        A.    Yes.
8        Q.    And we had a discussion as
9  to what type of claim that was and you
10 indicated that that was an insurer
11 indemnified TDP claim?
12             MR. LIESEMER:  Object to
13       the form.
14       Q.    Do you recall that?
15             MS. HARDING:  Object to
16       form and to the question to the
17       extent that it's maybe mixing
18       apples and oranges; I'm not sure.
19       I'm just confused.
20       A.    I believe -- I don't think
21 I identified it as such.  I think I might
22 have agreed that it fit the definition
23 that's in the TDP.
24       Q.    Yes.  I thought you said

Page 335

1  that's what it was, but maybe I'm wrong.
2        A.    Okay, maybe I'm wrong.  At
3  this hour, it could go either way.
4        Q.    Well, I'm not sure what to
5  make of that.  Maybe I should go fishing
6  here.
7        What I'm driving at, is to the
8  extent that settled asbestos insurance
9  entities have contractual indemnity claims
10 against Grace under their respective
11 settlement agreements, those are
12 classified as Class 6 claims, are they
13 not?
14       A.    Yes.
15             MR. LIESEMER:  Object to
16       form.
17       Q.    That's why my client, One
18 Beacon, got a Class 6 ballot, I presume?
19       A.    Yes.
20       Q.    And that's why my other
21 client, Seaton, got a Class 6 ballot,
22 correct?
23       A.    Yes.
24             MS. HARDING:  Object to

Page 336

1        form.  To the extent you know,
2        but...
3        Q.    So would those be examples
4  of other contractual indemnity claims in
5  response to Mr. Plevin's question to you
6  of earlier today that are classified as
7  Class 6 claims?
8        A.    Yes, I believe they would
9  be.
10       Q.    Okay.  And I think you
11 mentioned -- you reiterated here just a
12 moment ago that the classification of the
13 Fireman's Fund Insurance Company
14 contractual indemnity claim was something
15 that was under discussion, I think was the
16 term you used.
17       A.    Yes, sir.
18       Q.    Is that also true of the
19 contractual indemnity claims held by
20 settled asbestos insurance companies?
21             MS. HARDING:  Object to
22       form.
23       A.    Not to my knowledge.
24       Q.    With respect to the

Page 337

1  Fireman's Fund Insurance Company claim,
2  when you say it's under discussion, do you
3  mean to suggest that it may be classified
4  differently than Class 6?
5              MS. HARDING:  Object to the
6        extent that it calls for
7        attorney-client, work product or
8        joint interest communications.  If
9        you can answer without divulging
10       those, go for it.
11       A.    Yeah, I think that follows
12 from that, that it's some aspect that's
13 under discussion.
14       Q.    Is one of the other
15 classifications being considered Class
16 9?
17       A.    I don't feel I can answer
18 that.
19       Q.    Different subject.
20       Earlier today I was asking you a
21 series of questions regarding Section 7.15
22 in the Plan.  That's the insurance
23 neutrality provision.  We had a lengthy
24 discussion about 7.15 and its interaction



## WR Grace / Confirmation Hearing 30(b)(6) Deposition Notice

### Witness Designations

| Dep Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| Anderson Memorial Hospital | The interpretation of the sales information attached to Anderson Memorial Hospital's ZAI Proof of Claim Form, including billing registers, and all information contained therein | Richard Finke |
| Travelers and Allstate | 1. The treatment of the Travelers 1992 Agreement under the Revised Joint Plan | Richard Finke |
| | 2. The treatment of the Travelers 1996 Agreement under the Revised Joint Plan | Richard Finke |
| | 3. The treatment of the Allstate 1994 Agreement under the Revised Joint Plan | Richard Finke |
| | 4. The treatment of the Allstate 1996 Agreement under the Revised Joint Plan | Richard Finke |
| | 5. The provisions of the Revised Joint Plan that relate to Asbestos Insurance Settlement Agreements, including, without limitation, Sections 1.1(14), 1.1(16), 1.1(200), 7.7, 7.13, 7.15, 8.4.1, 9.1 and Exhibit 6 (Asbestos Insurance Transfer Agreement) | Richard Finke |
| | 6. The provisions of the Revised Joint Plan that relate to Asbestos Insurance Reimbursement Agreements, including, without limitation, Sections 1.1(9), 1.1(16), 7.2.2(d)(iv), 7.7, 7.13, 7.15, 9.1 and Exhibit 6 (Asbestos Insurance Transfer Agreement) | Richard Finke |
| | 7. The provision of the Revised Joint Plan that relate to Indirect PI Trust Claims, including, without limitation, Section 1.1(138) and Exhibit 4 (Trust Distribution Procedures) | Richard Finke |
| | **SUPPLEMENTAL NOTICE** | |
| | 1. The provisions of the Revised Joint Plan that relate to Asbestos PD Claims and Indirect PD Trust Claims, including, without limitation, Sections 1.1(18), 1.1(137), 3.1.7, Exhibit 3 (Asbestos PD Trust Agreement), and Exhibit 25 (Class 7A CMO) Trust Distribution Procedures | Richard Finke |
| | 2. The classification of Travelers as a Class 7A creditor and solicitation of Class 7A claims | Richard Finke |

1459752_1

| Dep Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | 3. The treatment and/or payment, pursuant to the Revised Joint Plan, of claims for indemnification arising under the Travelers 1992 Agreement arising from Asbestos PD Claims | Richard Finke |
| | 4. The treatment and/or payment, pursuant to the Revised Joint Plan, of claims for indemnification arising under the Travelers 1996 Agreement arising from Asbestos PD Claims | Richard Finke |
| OneBeacon, Seaton, GEICO, Columbia | A. Classification and treatment of Indirect PI Trust Claims, including "Indemnified Insurer TDP Claims" and "Insurance-Related TDP Claims" as those terms are used in Sections 5.13 and 5.12 respectively of the Asbestos PI Trust Distribution Procedures | Richard Finke |
| | B. Bases for the classification of certain contractual indemnity claims held by Settled Asbestos Insurance Companies as Class 6 Asbestos PI Claims | Richard Finke |
| | C. Bases for the classification and treatment of non-asbestos-related contractual indemnity claims held by Settled Asbestos Insurance Companies as Class 9 General Unsecured Claims | Richard Finke |
| | D. Scope and operation of the Asbestos PI Channeling Injunction | Richard Finke |
| | E. Scope and Operation of the Asbestos Insurance Entity Injunction and Successor Claim Injunction | Richard Finke |
| | F. Scope and operation of Section 7.15 of the Plan entitled, "Insurance Neutrality", and any other purported insurance neutrality provisions in the Plan or Plan Documents | Richard Finke |
| | G. Operation of the Asbestos PI Trust Agreement and Asbestos PI Trust Distribution Procedures | Jay Hughes |
| | H. Bases for Settled Asbestos Insurance Company designations appearing in Exhibit 5 to the Exhibit Book | Richard Finke |
| | I. Scope and bases for releases and exculpation provisions in the Plan | Richard Finke |
| | J. The scope, operation, and necessity of the findings of fact, conclusions of law, orders, and decrees | Richard Finke |

2

| Dep. Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | set forth in Section 7.7 of the Plan | Richard Finke |
| | K. The impact of the Plan and Plan Documents on the claims asserted, threatened, or that may later be asserted by Scotts, BNSF, the Libby Claimants, and/or Kaneb against the Debtors and/or any Asbestos Insurance Entity | Richard Finke |
| | L. The criteria used to select the Asbestos PI Trustees and the Asbestos PI TAC | Richard Finke |
| | M. The business background, experience, and qualifications of the individuals selected to be the Asbestos PI Trustees and the members of the Asbestos PI TAC | Richard Finke |
| | N. The respective powers and authority conferred upon the Asbestos PI Trustees, Asbestos PI TAC, and the Asbestos PI FCR under the Plan and Plan Documents including, but not limited to , the Asbestos PI Trust Agreement, Asbestos PI Trust Distribution Procedures, and the Asbestos Insurance Transfer Agreement | Richard Finke |
| | O. The respective roles of the Asbestos PI Trustees, Asbestos PI TAC, and the Asbestos PI FCR in the evaluation, handling, defense and settlement/resolution of Asbestos PI Claims under the Plan and Plan Documents | Richard Finke |
| | P. the role, if any, of the Asbestos Insurance Entities in the evaluation, handling, defense and settlement/resolution of Asbestos PI Claims under the Plan and Plan Documents | Richard Finke |
| | Q. The scope of the Asbestos Insurance Rights that are to be transferred or assigned to the Asbestos PI Trust pursuant to the Asbestos Insurance Transfer Agreement, and any other Plan Documents | Richard Finke |
| | R. The impact of the Plan and Plan Documents on the respective rights and duties of the Debtors and Asbestos Insurance Entities under the Asbestos Insurance Policies | Richard Finke |
| | S. The impact of the Plan and Plan Documents on subsequent coverage litigation between the Asbestos PI Trust (or the Debtors) and Asbestos Insurance Entities including, but not limited to, Non- | Richard Finke |

3

| Dep Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | Settled Asbestos Insurance Companies | |
| | T. The nature and value of the Asbestos PI Trust Assets to be used to fund the Asbestos PI Trust | Hudson La Force |
| | U. The Plan's compliance with Section 524(g) of the Bankruptcy Code, as well as other applicable provisions of the Bankruptcy Code | Richard Finke |
| Fireman's Fund Insurance Co. (re Surety Bond Issues) | 1. The classification and treatment of the Proofs of Claim under the Plan (including, to the extent applicable, the TDPs) | Richard Finke |
| | 2. The classification and treatment of the Supersedeas Bond Claim under the Plan (including, to the extent applicable, the TDPs) | Richard Finke |
| | 3. The extent to which the claims asserted in the Proofs of Claim are "Pre-Petition Liquidated Claims" subject to treatment under § 5.2 of the TDPs | Richard Finke |
| | 4. The extent to which the Supersedeas Bond Claim is "Pre-Petition Liquidated Claim" | Richard Finke |
| | 5. The actual, expected, and/or intended effect of excluding Indirect PI Trust Claims that are Pre-Petition Liquidated Claims from § 5.6 of the TDPs | Richard Finke |
| | 6. The meaning and operation of § 5.2 of the TDPs in respect of Pre-Petition Liquidated Claims | Richard Finke |
| | 7. The meaning of the phrase "provided there is no supersedeas bond associated with such verdict or judgment…" in § 5.2(a)(ii) of the TDPs, as well as how this phrase works in relation to § 5.2(b) of the TDPs | Richard Finke |
| | 8. The extent to which the Supersedeas Bond Claim is an Indirect PI Trust Claim, a Class 6 Claim, or a Class 9 Claim | Richard Finke |
| | 9. Debtors' contentions, if any, regarding whether FFIC may setoff any obligations it may owe to Grace under liability insurance policies issued or allegedly issued by FFIC to W.R. Grace & Co., et | Richard Finke |

4

| Dep Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | a1., against Grace's obligations to FFIC under the Special Surety Indemnification Agreement, and the bases for any such contentions | |
| | 10. Debtors' pre-petition payment or funding for the payment of Asbestos Claims, such as judgments, settlements, and litigation costs, from sources other than liability insurance | Jay Hughes |
| | 11. The actual, expected, and/or intended impact, if any, of Plan Confirmation on the Special Surety Indemnification Agreement, the Supersedeas Bond, and the Supersedeas Bond Claim, including whether or not Reorganized Debtors will retain the Debtors' obligations under the Special Surety Indemnification Agreement and who, if not Reorganized Debtors, will succeed to or assume such obligations | Richard Finke |
| | 12. The actual, expected, and/or intended impact, if any, of Plan Confirmation on W.R. Grace & Co. v. Aaron Clifton Edwards, et al., No. 06-00-00112-CV (Tex. App., 6th Appellate Dist.), and the claims asserted in the Proofs of Claim | Jay Hughes |
| Fireman's Fund Insurance Co. and Allianz | 1. The drafting, negotiation, scope and operation of the Plan, the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures, including efforts to (i) involve Asbestos Insurance Entities in the negotiation and/or drafting of the Plan, the Asbestos PI Trust Distribution Procedures, or the Asbestos PI Trust Agreement, or (ii) obtain the consent of the Asbestos Insurance Entities to the Plan, the Asbestos PI Trust Distribution Procedures, and the Asbestos PI Trust Agreement | Richard Finke |
| | 2. The scope and operation of the Asbestos Insurance Entity Injunction and Successor Claims Injunction | Richard Finke |
| | 3. The scope and operation of the Asbestos PI Channeling Injunction, including but not limited to, the effect of the Asbestos PI Channeling Injunction on claims against Settled Asbestos Insurance Companies | Richard Finke |
| | 4. The bases for designating an Asbestos Insurance Entity as a Settled Asbestos Insurance Company | Richard Finke |
| | 5. The selection, qualification, and experience of the proposed Asbestos PI Trustees and the proposed | Richard Finke |

| Dep Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | Asbestos PI Trust Advisory Committee members | |
| | 6. Compensation or other financial arrangements between or among any of the proposed Asbestos PI Trustees, Asbestos PI Trust Advisory Committee members or members of the Asbestos PI Committee in respect of the negotiation, drafting or contemplated operation of the Asbestos PI Trust | Richard Finke |
| | 7. The value of the Warrants | Hudson La Force |
| | 8. The meaning and operation of Section 7.15 of the Plan, including the interaction of Section 7.15 with Sections 8.1.1, 7.13, 7.7(uu), and 7.7(tt) and the Asbestos Insurance Transfer Agreement | Richard Finke |
| | 9. The meaning of the phrase "any defense that the Plan or any of the Plan Documents do not comply with the Bankruptcy Code" in Section 1.1(16) (definition of "Asbestos Insurer Coverage Defenses") | Richard Finke |
| | 10. The impact, if any, of Plan Confirmation on Non-Settled Asbestos Insurance Companies, including:<br>a) Whether and to what extent the Reorganized Debtors retain the Debtors' obligations under Asbestos Insurance Policies;<br>b) Whether the Asbestos PI Trust assumes the obligations of the Debtors under the Asbestos Insurance Policies;<br>c) The application of the exculpation provision of Section 11.9 of the Plan;<br>d) Whether the Plan will act as a settlement or judgment that will immediately trigger a payment obligation under the Asbestos Insurance Policies issued by the Non-Settled Asbestos Insurance Companies;<br>e) Whether the Non-Settled Asbestos Insurance Companies' indemnity obligations will be triggered due to the establishment of title Asbestos PI Trust and transfer of assets to the Trust;<br>f) Whether the Non-Settled Asbestos Insurance Companies' indemnity obligations for any Asbestos PI Claim will accrue or be triggered prior to the payment of an Asbestos PI Claim by Asbestos PI Trust;<br>g) Whether and how the Plan and Plan Documents can be used in subsequent Asbestos Insurance Actions or other proceedings by the Asbestos PI Trust or the Debtors against Non-Settled Asbestos | Richard Finke |

| Dep Notice Filed by | Topic of Deposition | Designated Witness |
| --- | --- | --- |
| | Insurance Companies; | |
| | h) The role, if any, the Non-Settled Asbestos Insurance Companies will have in the evaluation, defense, allowance, or settlement of Asbestos PI Claims channeled to or submitted to the Asbestos PI Trust; | |
| | i) Whether, and to what extent, the Non-Settled Asbestos Insurance Companies will be responsible for paying all or part of any Asbestos PI Claim resolved by the Asbestos PI Trust pursuant to the Asbestos PI Trust Distribution Procedures or for indemnifying the Asbestos PI Trust for any payment it makes on account of Asbestos PI Claims | |
| | 11. The Debtors' duties and obligations with respect to any Asbestos Insurance Policies upon the transfer of the Asbestos Insurance Rights to the Asbestos PI Trust | Richard Finke |
| | 12. The meaning and scope of the definition of Indirect PI Trust Claims, including whether, and to what extent, claims by Asbestos Insurance Entities for indemnification and/or contribution from Debtors for claims asserted against them, such as, by illustration, the Libby Claimants, or The Scotts Company, LLC, or BNSF Railway Company (or its predecessors) | Richard Finke |
| | 13. The treatment of Indirect PI Trust Claims by the Plan and the Plan Documents | Richard Finke |
| | 14. The basis for classification and treatment of an Asbestos Insurance Entity's Asbestos Claims against the Debtors for indemnification arising from contract or otherwise as Class 6 Asbestos PI Claims | Richard Finke |
| Maryland Casualty Co, Zurich Insurance Co, and Zurich International | 1. The scope of protection provided to Settled Asbestos Insurance Companies by the Asbestos PI Channeling Injunction and the scope of Debtors' indemnity obligations under the respective Asbestos Insurance Settlement Agreements | Richard Finke |
| | 2. The viability of the Plan if the Court upholds any objections to the application of the Asbestos PI Channeling Injunction to one or more of the Settled Asbestos Insurance Companies | Richard Finke |
| | 3. The Plan's treatment of any Settled Asbestos Insurance Companies who are found by the Court to have discrete, unsettled coverage under an otherwise settled policy | Richard Finke |

| Dep Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | 4. The intended scope of Debtors' indemnity obligations under the MCC Settlement Agreements | Richard Finke |
| | 5. The Plan Proponents' position that Settled Asbestos Insurance Companies are not creditors | Richard Finke |
| | 6. The impact of the Plan and Plan Documents on the claims asserted, threatened, or that may later be asserted by Scotts, BNSF, and/or the Libby Claimants, against the Debtors and/or any Asbestos Insurance Entity | Richard Finke |
| | 7. The bases for the classification of certain indemnity claims arising from contract or otherwise, against the Debtors held by Settled Asbestos Insurance Companies as Class 6 Asbestos PI Claims | Richard Finke |
| | 8. The classification and treatment under the Plan of Asbestos Insurance Entities' claims against the Debtors for indemnification arising from contract or otherwise which are not Indirect PI Trust Claims | Richard Finke |
| | 9. The scope and operation of the Asbestos PI Channeling Injunction, including but not limited to, the effect of the Asbestos PI Channeling Injunction on claims against Settled Asbestos Insurance Companies | Richard Finke |
| | 10. The Plan's compliance with section 524(g) of the Bankruptcy Code | Richard Finke |
| | 11. The meaning and scope of the indirect PI Trust Claims, including whether, and to what extent, claims by Asbestos Insurance Entities for indemnification and contribution deriving from claims against them, such as those by the Libby Claimants, Scotts, BNSF are Indirect PI Trust Claims | Richard Finke |
| | 12. The treatment of Indirect PI Trust Claims under the Plan, the Asbestos PI Trust Distribution Procedures, and the other Plan Documents, including but not limited to, the treatment of an Asbestos Insurance Entity's claims against the Debtors for indemnification arising from a pre-bankruptcy petition settlement agreement | Richard Finke |
| | 13. The scope of Section 524(g) of the Bankruptcy Code on claims against Settled Asbestos Insurance | Richard Finke |

8

| Dep Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | Companies | |
| | 14. The scope and operation of the Asbestos Insurance Entity Injunction and Successor Claims Injunction | Richard Finke |
| | 15. The meaning of the phrase "any defense that the Plan or any of the Plan Documents do not comply with the Bankruptcy Code" in Section 1.1(16)(definition of "Asbestos Insurer Coverage Defenses") | Richard Finke |
| | 16. The meaning and operation of the insurer neutrality provision of Section 7.15 of the Plan, including the interaction of Section 7.15 of the Plan with Sections 8.1.1, 7.7, 7.13, 7.7(uu), and 7.7(tt) of the Plan and the Asbestos Insurance Transfer Agreement | Richard Finke |
| | 17. The Plan's treatment of Asbestos Insurance Reimbursement Agreements | Richard Finke |
| Libby Claimants | Plan | |
| | 1. Development of Plan among plan proponents, including negotiations, other discussions between or within the plan proponents, and preparation of documents, including drafts. | Richard Finke |
| | 2. Funding of the Asbestos PI Trust, including value at time of negotiation of assets to be used to fund the Asbestos PI Trust. | Hudson La Force |
| | 3. Current value of assets to be used to fund the Asbestos PI Trust. | Hudson La Force |
| | 4. Projected value at scheduled Confirmation Hearing of assets to be used to fund the Asbestos PI Trust. | Hudson La Force |
| | Asbestos PI Trust | |
| | 1. Development of the TDP, including negotiations, other discussions between or within the plan proponents, and preparation of documents, including drafts. | Jay Hughes |

| Dep. Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | 2. TDP's in other cases used as models, points of reference or in any other way utilized in the development of the TDP ("Other TDPs"). | Jay Hughes |
| | 3. Liquidation of claims under Other TDPs. | Jay Hughes |
| | 4. Process by which the Asbestos PI Trust will liquidate claims. | Jay Hughes |
| | 5. Disease categories under the TDP. | Jay Hughes |
| | 6. The "Severe Pleural" disease category under the TDP. | Jay Hughes |
| | 7. Provisions of the TDP concerning "Extraordinary Claims." | Jay Hughes |
| | **Injunctions** | |
| | 1. The Asbestos PI Channeling Injunction. | Richard Finke |
| | 2. Development of Asbestos PI channeling Injunction among plan proponents, including negotiations, other discussions between or within the plan proponents, and preparation of documents, including drafts. | Richard Finke |
| | 3. Injunctions in other cases similar to the Asbestos PI Channeling Injunction used as models, points of reference or in any other way utilized in the development of the Asbestos PI Channeling Injunction ("Other Channeling Injunctions"). | Richard Finke |
| | 4. Litigation concerning scope of Other Channeling Injunctions. | Richard Finke |
| | 5. Scope and operation of the Asbestos PI Channeling Injunction, including the effect, if any, on actions by Libby Claimants against parties other than the Debtors, including but not limited to BNSF, the State of Montana and Maryland Casualty Company, for their own allegedly tortious conduct ("Libby Claimants' Independent Actions"). | Richard Finke |
| | 6. Necessity of, or benefit to plan proponents or Asbestos PI Trust from, the Asbestos PI Channeling | Richard Finke |

| Dep Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | Injunction (including consideration supplied to any of the plan proponents by those protected by the Asbestos PI Channeling Injunction). | |
| | 7. The Asbestos Insurance Entity Injunction. | Richard Finke |
| | 8. Development of Asbestos Insurance Entity Injunction among plan proponents, including negotiations, other discussions between or within the plan proponents, and preparation of documents, including drafts. | Richard Finke |
| | 9. Injunctions in other cases similar to the Asbestos Insurance Entity Injunction used as models, points of reference or in any other way utilized in the development of the Asbestos Insurance Entity Injunction ("Other Insurance Entity Injunctions"). | Richard Finke |
| | 10. Litigation concerning scope of Other Insurance Entity Injunctions. | Richard Finke |
| | 11. Scope and operation of the Asbestos Insurance Entity Injunction, including the effect, if any, on Libby Claimants' Independent Actions. | Richard Finke |
| | 12. Necessity of, or benefit to plan proponents or Asbestos PI Trust from, the Asbestos Insurance Entity Injunction (including consideration supplied to any of the plan proponents by those protected by the Asbestos Insurance Entity Injunction). | Richard Finke |
| | 13. The Successor Claims Injunction. | Richard Finke |
| | 14. Development of Successor Claims Injunction among plan proponents, including negotiations, other discussions between or within the plan proponents, and preparation of documents, including drafts. | Richard Finke |
| | 15. Injunctions in other cases similar to the Successor Claims Injunction used as models, points of reference or in any other way utilized in the development of the Successor Claim Injunction ("Other Successor Claims Injunctions"). | Richard Finke |

11

| Dep Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | 16. Litigation concerning scope of Other Successor Claims Injunctions. | Richard Finke |
| | 17. Scope and operation of the Successor Claims Injunction, including the effect, if any, on Libby Claimants' Independent Actions. | Richard Finke |
| | 18. Necessity of, or benefit to plan proponents or Asbestos PI Trust from, the Successor Claims Injunction (including consideration supplied to any of the plan proponents by those protected by the Successor Claims Injunction). | Richard Finke |
| | 19. Release and exculpation provisions of the Plan (the "Releases and Exculpations"). | Richard Finke |
| | 20. Development of The Releases and Exculpations among plan proponents, including negotiations, other discussions between or within the plan proponents, and preparation of documents, including drafts. | Richard Finke |
| | 21. Injunctions in other cases similar to the Releases and Exculpations used as models, points of reference or in any other way utilized in the development of the Releases and Exculpations ("Other Releases and Exculpations"). | Richard Finke |
| | 22. Litigation concerning scope of Other Releases and Exculpations. | Richard Finke |
| | 23. Scope and operation of the Releases and Exculpations, including the effect, if any, on Libby Claimants' Independent Actions. | Richard Finke |
| | 24. Necessity of, or benefit to plan proponents or Asbestos PI Trust from, the Releases and Exculpations (including consideration supplied to any of the plan proponents by those protected by the Releases and Exculpations). | Richard Finke |
| | 25. The plan's compliance with Section 524(g) of the Bankruptcy Code. | Richard Finke |
| | Liquidation Analysis | |

12

| Dep Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | 1. Liquidation analysis contained in Exhibit Book as Exhibit 8 (the "Liquidation Analysis") | Hudson La Force |
| | 2. Development of Liquidation Analysis among plan proponents, including negotiations, other discussions between or within the plan proponents, and preparation of documents. | Hudson La Force |
| | 3. Projections, assumptions, calculations and sources of information utilized in preparing Liquidation Analysis. | Hudson La Force |
| | 4. Any changes in, or changes in the validity of, any such projections, assumptions, calculations and sources of information, through the present date. | Hudson La Force |
| | Claims History | |
| | 1. Grace claims history concerning Asbestos PI Claims. | Jay Hughes |
| | 2. Grace's settlement practices and verdict history for Asbestos PI Claims. | Jay Hughes |
| | 3. Grace's settlement practices and verdict history for punitive damage claims. | Jay Hughes |
| | 4. Grace's settlement practices and verdict history for wrongful death claims. | Jay Hughes |
| | 5. Grace's settlement practices and verdict history for claims resulting from exposure to Grace's asbestos in Lincoln County, Montana. | Jay Hughes |
| | 6. Grace's settlement practices and verdict history for claims resulting from exposure outside of Lincoln County, Montana, to Grace's asbestos originating in Lincoln County, Montana. | Jay Hughes |
| | Rights of BNSF | |
| | 1. Claims of Burlington Northern Santa Fe Railroad and affiliates ("BNSF") against the Debtors. | Jay Hughes |
| | 2. Proofs of claim filed by BNSF. | Jay Hughes |

13

| Dep Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | 3. Any rights of indemnification by BNSF against the Debtors, and any agreements pertaining thereto. | Jay Hughes |
| | 4. Any rights of contribution by BNSF against the Debtors. | Jay Hughes |
| | 5. Any insurance covering BNSF for Libby Claimants' Independent Actions against BNSF. | Jay Hughes |
| | Rights of the State of Montana | |
| | 1. Claims of the State of Montana against the Debtors. | Jay Hughes |
| | 2. Proofs of claim filed by the State of Montana. | Jay Hughes |
| | 3. Any rights of indemnification by the State of Montana against the Debtors, and any agreements pertaining thereto. | Jay Hughes |
| | 4. Any rights of contribution by the State of Montana against the Debtors. | Jay Hughes |
| | 5. Any insurance covering the State of Montana for Libby Claimants' Independent Actions against the State of Montana. | Jay Hughes |
| | Rights of Maryland Casualty Company | |
| | 1. Claims of the Maryland Casualty Company, including affiliates ("MCC") against the Debtors. | Jay Hughes |
| | 2. Proofs of claim filed by MCC. | Jay Hughes |
| | 3. Any rights of indemnification by MCC against the Debtors, and any agreements pertaining thereto. | Jay Hughes |
| | 4. Any rights of contribution by MCC against the Debtors. | Jay Hughes |
| | 5. Any insurance covering MCC for Libby Claimants' Independent Actions against MCC. | Jay Hughes |

14

| Dep Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | **Insurance** | |
| | 1. Grace's insurance policies (whether owned by Grace or purchased for another entity), coverage issues and settlements with insurers. | Jay Hughes |
| | 2. Grace's insurance coverage for products/completed operations, including terms thereof, aggregate caps, and defenses to and limitations on such coverage. | Jay Hughes |
| | 3. Projected value of the Asbestos Insurance Rights constituting products/completed operations coverage. | Jay Hughes |
| | 4. Projected aggregate liquidated amount of the Asbestos PI Claims (including future claims) covered by products/completed operations insurance. | Jay Hughes |
| | 5. Grace's insurance coverage for premises/non-completed operations, including terms thereof, aggregate caps, and defenses to and limitations on such coverage. | Jay Hughes |
| | 6. Projected value of the Asbestos Insurance Rights constituting premises/non-completed operations coverage. | Jay Hughes |
| | 7. Projected aggregate liquidated amount of the Asbestos PI Claims (including future claims) covered by premises/non-completed operations insurance. | Jay Hughes |
| | 8. Settlements with Grace insurers. | Jay Hughes |
| | 9. Bases for designation under the Plan of certain Asbestos Insurance Entities as Settled Asbestos Insurance Companies. | Richard Finke |
| CNA | 1. The meaning and operation of the insurer neutrality provision of Section 7.15 of the Plan, including the interaction of Section 7.15 of the Plan with Sections 8.1.1, 7.13, 7.7(uu), and 7.7(tt) of the Plan and the Asbestos Insurance Transfer Agreement. | Richard Finke |
| | 2. The treatment of Indirect PI Trust Claims under the Plan, the Asbestos PI Trust Distribution Procedures, and the other Plan Documents, including but not limited to, the treatment of an Asbestos | Richard Finke |

15

| Dep. Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | Insurance Entity's claims against the Debtors for indemnification arising from a pre-bankruptcy petition settlement agreement. | |
| | 3. The meaning and scope of Indirect PI Trust Claims, including whether, and to what extent, claims by Asbestos Insurance Entities for indemnification and contribution deriving from claims against them, such as those by the Libby Claimants, Scotts, and BNSF, are Indirect PI Trust Claims. | Richard Finke |
| | 4. The basis for classification and treatment of an Asbestos Insurance Entity's Asbestos Claims against the Debtors for indemnification arising from contract or otherwise as Class 6 Asbestos PI Claims. | Richard Finke |
| | 5. The classification and treatment under the Plan of Asbestos Insurance Entities' claims against the Debtors for indemnification arising from contract or otherwise which are not Indirect PI Trust Claims. | Richard Finke |
| | 6. The scope and operation of the Asbestos PI Channeling Injunction, including but not limited to, the effect of the Asbestos PI Channeling Injunction on claims against Settled Asbestos Insurance Companies. | Richard Finke |
| | 7. The scope and operation of the Asbestos Insurance Entity Injunction and Successor Claims Injunction. | Richard Finke |
| | 8. The meaning of the phrase "any defense that the Plan or any of the Plan Documents do not comply with the Bankruptcy Code" in Section 1.1.(16) (definition of "Asbestos Insurer Coverage Defenses") | Richard Finke |
| | 9. The drafting, negotiation, scope and operation of the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures, including efforts to obtain the consent of the Asbestos Insurance Entities to the Plan, the Asbestos PI Trust Distribution Procedures, and the Asbestos PI Trust Agreement, or to involve them in drafting the Asbestos PI Trust Agreement. | Richard Finke |
| | 10. The selection, qualification, and experience of the Asbestos PI Trustees and Asbestos PI Trust Advisory Committee members. | Richard Finke |

16

| Dep Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | 11. Any compensation or other financial arrangements between each Asbestos PI Trustee and any Asbestos PI Trust Advisory Committee member or member of the Asbestos Claimants Committee on the one hand, and the Asbestos PI Trust. | Richard Finke |
| | 12. The bases for designating an Asbestos Insurance Entity as a Settled Asbestos Insurance Company. | Richard Finke |
| | 13. The Plan's treatment of Asbestos Insurance Reimbursement Agreements. | Richard Finke |
| | 14. The valuation of the Warrants, including, but not limited to, the use of any valuation model or similar valuation tool. | Hudson La Force |
| | 15. The impact, if any, of Plan Confirmation on Non-Settled Asbestos Insurance Companies, including:<br>a. Whether and to what extent the Reorganized Debtors retain the Debtors' obligations under Asbestos Insurance Policies;<br>b. Whether the Asbestos PI Trust assumes the obligations of the Debtors under the Asbestos Insurance Policies;<br>c. The application of the exculpation provision of Section 11.9 of the Plan;<br>d. Whether the Plan will act as a settlement or judgment that will immediately trigger a payment obligation under the Asbestos Insurance Policies issued by the Non-Settled Asbestos Insurance Companies;<br>e. Whether the Non-Settled Asbestos Insurance Companies' indemnity obligations will be triggered due to the establishment of the Asbestos PI Trust and transfer of assets to the Trust;<br>f. Whether the Non-Settled Asbestos Insurance Companies' indemnity obligations for any Asbestos PI Claim will accrue or be triggered prior to the payment of an Asbestos PI Claim by Asbestos PI Trust;<br>g. Whether and how the Plan and Plan Documents can be used in subsequent Asbestos Insurance Actions or other proceedings by the Asbestos PI Trust or the Debtors against Non-Settled Asbestos Insurance Companies;<br>h. The role, if any, the Non-Settled Asbestos Insurance Companies will have in the evaluation, defense, allowance, or settlement of Asbestos PI Claims channeled to or submitted to the Asbestos PI | Richard Finke |

17

| Dep Notice Filed by | Topic of Deposition | Designated Witness |
|---|---|---|
| | Trust, | |
| | i. Whether, and to what extent, the Non-Settled Asbestos Insurance Companies will be responsible for paying all or part of any Asbestos PI Claim resolved by the Asbestos PI Trust pursuant to the Asbestos PI Trust Distribution Procedures or for indemnifying the Asbestos PI Trust for any payment it makes on account of Asbestos PI Claims. | |
| | 16. The Debtors' duties and obligations with respect to any Asbestos Insurance Policies upon the transfer of the Asbestos Insurance Rights to the Asbestos PI Trust. | Richard Finke |
| | 17. The treatment of workers compensation obligations as unimpaired, general unsecured claims that are to be liquidated and paid in full. | Richard Finke |
| London Market Companies | 1. The treatment of the London Market Companies 1995 Agreement under the Revised Joint Plan. | Richard Finke |
| | 2. The treatment of the London Market Companies 1996 Agreement under the Revised Joint Plan. | Richard Finke |
| | 3. The provisions of the Revised Joint Plan that relate to Asbestos Insurance Reimbursement Agreements, including, without limitation, Sections 1.1(9), 1.1(16), 7.2.2(d)(iv), 7.7, 7.13, 7.15, 9.1 and Exhibit 6 (Asbestos Insurance Transfer Agreement). | Richard Finke |
| | 4. The provisions of the Revised Joint Plan that relate to Indirect PI Trust Claims, including, without limitation, Sections 1.1(138) and Exhibit 4 (Trust Distribution Procedures). | Richard Finke |

18