# EXHIBIT C

```
 1      IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE DISTRICT OF DELAWARE
 2                       -  -  -

 3
      In Re:                    : Chapter 11
 4                              :
                                : Case No.
 5    W.R. GRACE & CO., et al, : 01-01139 JKF
                                :
 6                              : (Jointly
              Debtors           : Administered)
 7

 8                       -  -  -

 9           Friday, May 15, 2009

10                       -  -  -

11              Oral deposition of DAVID T.

12    AUSTERN, ESQUIRE, taken pursuant to

13    notice, was held at the offices of ORRICK

14    HERRINGTON & SUTCLIFFE, LLP, Columbia

15    Center, 1152 15th Street, N.W.,

16    Washington, DC  20005-1706, commencing at

17    10:07 a.m., on the above date, before

18    Lori A. Zabielski, a Registered

19    Professional Reporter and Notary Public

20    in and for the Commonwealth of

21    Pennsylvania.
                         -  -  -
22           MAGNA LEGAL SERVICES
                Seven Penn Center
23              1635 Market Street
                    8th Floor
24       Philadelphia, Pennsylvania 19103
```

## Page 2

```
1   APPEARANCES:
2
3   DRINKER BIDDLE & REATH, LLP
    BY:  MICHAEL F. BROWN, ESQUIRE
4   One Logan Square
    18th & Cherry Streets
5   Philadelphia, Pennsylvania  19103-6996
    215.988.2988
6   (brownmf@dbr.com)
    (jeffrey.boerger@dbr.com)
7   Representing OneBeacon America Insurance
    Company, Seaton Insurance Company,
8   Government Employees Insurance Company,
    Columbia Insurance Company f/k/a Republic
9   Insurance Company
10
11  ORRICK HERRINGTON & SUTCLIFFE, LLP
    BY:  JONATHAN P. GUY, ESQUIRE
12     ROGER FRANKEL, ESQUIRE
       JOSHUA M. CUTLER, ESQUIRE
13  Columbia Center
    1152 15th Street, N.W.
14  Washington, DC  20005-1706
    202.339.8427
15  (jguy@orrick.com)
    Representing Future Claimants
16  Representative
17
18  CAPLIN & DRYSDALE, CHARTERED
    BY:  JEFFREY A. LIESEMER, ESQUIRE
19  One Thomas Circle, NW
    Suite 1100
20  Washington, DC  20005
    202.862.5000
21  (jal@capdale.com)
    Representing Grace, Official Committee of
22  Asbestos Personal Injury Claimants
    ("ACC")
23
24
```

## Page 4

```
1   APPEARANCES (continued)
2
3   VORYS, SATER, SEYMOUR AND PEASE, LLP
    BY:  WILLIAM J. POHLMAN, ESQUIRE*
4      TIFFANY STRELOW COBB, ESQUIRE*
       (*VIA TELECONFERENCE)
5   52 East Gay Street
    Columbus, Ohio  43215
6   614.464.8322
    (wjpohlman@vorys.com)
7   (tsccobb@vorys.com)
    Representing The Scotts Company, LLC
8
9
    COHN WHITESELL & GOLDBERG, LLP
10  BY:  CHRISTOPHER M. CANDON, ESQUIRE
    101 Arch Street
11  Boston, Massachusetts 02110
    617.951.2505
12  (candon@cwg11.com)
    Representing the Libby Claimants
13
14
    SPEIGHTS & RUNYAN
15  BY:  DANIEL H. SPEIGHTS, ESQUIRE*
       (* VIA TELECONFERENCE)
16  200 Jackson Avenue East
    P.O. Box 685
17  Hampton, South Carolina  29924
    803.943.4444
18  (dspeights@speightsrunyan.com)
    Representing Anderson Memorial Hospital
19
20
    TUCKER ARENSBERG, P.C.
21  BY:  MICHAEL A. SHINER, ESQUIRE*
       (*VIA TELECONFERENCE)
22  1500 One PPG Place
    Pittsburgh, Pennsylvania  15222
23  412.594.5586
    (mshiner@tuckerlaw.com)
24  Representing Certain London Market
```

## Page 3

```
1   APPEARANCES (continued)
2
3   KIRKLAND & ELLIS, LLP
    BY:  THEODORE L. FREEDMAN, ESQUIRE*
4      (*VIA TELECONFERENCE)
    Citigroup Center
5   153 East 53rd Street
    New York, New York  10022-4611
6   212.446.4800
    (theodore.freedman@kirkland.com)
7   Representing the Debtors
8
9   THE LAW OFFICES OF JANET S. BAER, P.C.
    BY:  JANET S. BAER, ESQUIRE
10  70 West Madison Street
    Suite 2100
11  Chicago, Illinois  606002
    312.641.2162
12  Representing the Debtors
13
14  SIMPSON THACHER & BARTLETT, LLP
    BY:  ELISA ALCABES, ESQUIRE
15     KAREN E. ABRAVANEL, ESQUIRE*
       (*VIA TELECONFERENCE)
16  425 Lexington Avenue
    New York, New York  10017-3954
17  212.455.3133
    (ealcabes@stblaw.com)
18  (kabravenel@stblaw.com)
    Representing Travelers Casualty and
19  Surety Company
20
21
22
23
24
```

## Page 5

```
1   APPEARANCES (continued)
2
3   BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
    BY:  MATTHEW I. KRAMER, ESQUIRE*
4      (*VIA TELECONFERENCE)
    200 South Biscayne Boulevard
5   Suite 2500
    Miami, Florida  33131-5340
6   305.450.7246
    (mkramer@bilzin.com)
7   Representing Property Damage Committee
8
9   STROOCK & STROOCK & LAVAN, LLP
    BY:  DANIEL J. HARRIS, ESQUIRE*
10     (*VIA TELECONFERENCE)
    180 Maiden Lane
11  New York, New York  10038-4982
    212.806.5400
12  (djharris@stroock.com)
    Representing Official Committee of
13  Unsecured Creditors
14
15  CROWELL & MORING, LLP
    BY:  MARK PLEVIN, ESQUIRE
16     NOAH S. BLOOMBERG, ESQUIRE
    1001 Pennsylvania Avenue NW
17  Washington, DC  20004-2595
    202.624.2913
18  (mplevin@crowell.com)
    (nbloomberg@crowell.com)
19  Representing Fireman's Fund Insurance
    (Surety Bond)
20
21
    STEVENS & LEE, P.C.
22  BY:  JOHN D. DEMMY, ESQUIRE
    1818 Market Street, 29th Floor
23  Philadelphia, Pennsylvania  19103-1702
    215.751.2885
24  (jdd@stevenslee.com)
```

## Page 6

```
 1  APPEARANCES (continued)
 2
 3  ALAN B. RICH LAW OFFICES
    BY:  ALAN B. RICH, ESQUIRE
 4  Elm Place, Suite 4620
    1401 Elm Street
 5  Dallas, Texas  75202
    214.744.5100
 6  (arich@alanrichlaw.com)
    Representing Property Damage FCR
 7
 8
    CONNOLLY BOVE LODGE & HUTZ, LLP
 9  BY:  JEFFREY C. WISLER, ESQUIRE
    The Nemours Building
10  1007 North Orange Street
    P.O. Box 2207
11  Wilmington, Delaware  19899
    302.88.6528
12  (jwisler@cblh.com)
    Representing Maryland Casualty
13
14
    ECKERT SEAMANS CHERIN & MELLOTT, LLC
15  BY:  EDWARD J. LONGOSZ, II, ESQUIRE
    1747 Pennsylvania Avenue, NW
16  12th Floor
    Washington, DC  20006
17  202.659.6619
    (elongosz@eckertseamans.com)
18  Representing Maryland Casualty and Zurich
19
20  COZEN O'CONNOR
    BY:  JACOB C. COHN, ESQUIRE
21  1900 Market Street
    Philadelphia, Pennsylvania  19103-3508
22  215.665.2147
    (jcohn@cozen.com)
23  Representing Federal Insurance Company
24
```

## Page 7

```
 1  APPEARANCES (continued)
 2
 3  CUYLER BURK, P.C.
    BY:  STEFANO V. CALOGERO, ESQUIRE
 4  Parsippany Corporate Center
    Four Century Drive
 5  Parsippany, New Jersey  07054
    973.734.3200
 6  (scalogero@cuyler.com)
    Representing Allstate Insurance Company
 7
 8
    GOODWIN PROCTER, LLP
 9  BY:  BRIAN H. MUKHERJEE, ESQUIRE*
    (*VIA TELECONFERENCE)
10  901 New York Avenue, N.W.
    Washington, DC  20001
11  202.346.4124
    (bmukherjee@goodwinprocter.com)
12  Representing CNA Insurance
13
14  WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
    BY:  KEVIN J. MANGAN, ESQUIRE*
15  (*VIA TELECONFERENCE)
    222 Delaware Avenue
16  Suite 1501
    Wilmington, Delaware  19801
17  302.252.4361
    (kmangan@wcsr.com)
18  Representing State of Montana
19
20  PEPPER HAMILTON, LLP
    BY:  LINDA J. CASEY, ESQUIRE*
21  (*VIA TELECONFERENCE)
    3000 Two Logan Square
22  Philadelphia, Pennsylvania  19103
    215.981.4000
23  (caseyl@pepperlaw.com)
    Representing BNSF Railway Company
24
```

## Page 8

```
 1              - - -
 2           I N D E X
 3              - - -
 4
 5  Testimony of:
 6      DAVID T. AUSTERN, ESQUIRE
 7
 8  By Mr. Brown          Page  12, 242
 9  By Ms. Alcabes        Page  95
10  By Mr. Candon         Page  123, 251
11  By Mr. Demmy          Page  164
12  By Mr. Cohn           Page  173
13  By Mr. Plevin         Page  192
14  By Ms. Cobb           Page  207
15  By Ms. Casey          Page  219
16  By Mr. Mangan         Page  221
17  By Mr. Speights       Page  222
18
19
20
21
22
23
24
```

## Page 9

```
 1              - - -
 2           E X H I B I T S
 3              - - -
 4  NO.    DESCRIPTION          PAGE
 5  Austern-1
       Amended Notice of Deposition
 6     Of David T. Austern       31
    Austern-2
 7     Exhibit 2 to Exhibit Book
 8     Asbestos PI Trust Agreement  32
    Austern-3
 9     First Amended Joint Plan of
10     Reorganization            43
    Austern-4
11     Exhibit 6 to Exhibit Book
12     Asbestos Insurance Transfer
       Agreement                 80
13
    Austern-5
14     Exhibit 4 to Exhibit Book
       Trust Distribution Procedures 90
15
    Austern-6
16     Exhibit 10 to Exhibit Book
       Cooperation Agreement     92
17
    Austern-7
18     Notice of Deposition of
       David Austern             95
19
    Austern-8
20     Debtors' Disclosure Statement
       for the First Amended Joint
21     Plan of Reorganization...  118
    Austern-9
22     Notice of Deposition of
23     David T. Austern          124
24
```

Page 190

1      Q.    How many meetings did you
2  personally attend in the course of
3  negotiating the TDPs?
4            MR. GUY:  Meetings with who?
5            MS. BAER:  Objection.
6  BY MR. COHN:
7      Q.    I guess with the ACC would
8  be the other involved party that wasn't
9  your counsel.
10     A.    I am sorry.  Are you
11 eliminating this to negotiating the TDP?
12     Q.    Yes.
13     A.    I would have to guess.
14 Somewhere between eight and 12.
15     Q.    Was there discussion of
16 whether or not to permit the insurers to
17 be involved in the processing of claims?
18           MR. LIESEMER:  Objection.
19           MR. GUY:  Objection.
20           You can answer -- well, you
21 know what?  I will defer to these
22 guys.
23           MS. BAER:  Can you read back
24 the question?

Page 191

1            (The reporter read from the
2  record as requested.)
3            MS. BAER:  Objection.
4            MR. LIESEMER:  Objection.
5            MR. GUY:  But do you want
6  the witness to answer?
7            MS. BAER:  To the extent the
8  witness would have to reveal
9  discussions about negotiations of
10 the various Plan documents, I
11 would object.
12           If you can answer without
13 revealing that kind of
14 information, then I won't object.
15           THE WITNESS:  I don't think
16 I can.
17           MR. COHN:  So you are
18 instructing?
19           MR. GUY:  Yes.
20           MR. DEMMY:  Can I ask a
21 clarifying question?  Who is
22 instructing the witness not to
23 answer?
24           MR. GUY:  I am instructing,

Page 192

1  as counsel for the FCR,
2  Mr. Austern not to answer the
3  question because the other Plan
4  proponents are raising
5  confidentiality issues with regard
6  to settlement discussions, and I
7  am adhering to that request.
8            And as the Court has stated
9  many times, negotiations are not
10 relevant and, therefore, would not
11 be admissible at the Plan
12 confirmation hearing.
13           MR. COHN:  We disagree.
14           MR. GUY:  Understood.
15           MR. COHN:  I think I tested
16 your tolerance to where I am going
17 to get instructions not to answer.
18 I think I will stand down now and
19 let Mr. Plevin question.
20           - - -
21           EXAMINATION
22           - - -
23 BY MR. PLEVIN:
24     Q.    Good afternoon, Mr. Austern.

Page 193

1      A.    Good afternoon.
2      Q.    Just so we are straight, I
3  represent Fireman's Fund Insurance
4  Company in this case only with respect to
5  issues concerning Fireman's Fund's proof
6  of claim and the indemnity agreement
7  between Fireman's Fund and Grace and the
8  supersedeas bond that Fireman's Fund
9  posted with respect to a case in Texas
10 that I want to ask you some questions
11 about.
12           Let me start, first of all,
13 by asking if you are generally familiar
14 with the Edwards case in Texas?
15     A.    Yes.
16     Q.    Can you tell me what you
17 know about that case in general?
18     A.    Mr. Reaud, R-E-A-U-D, I
19 think --
20     Q.    Correct spelling.  I don't
21 know if the pronunciation is right.
22     A.    -- has a judgment on appeal
23 in an asbestos personal injury claim
24 against Grace in a number of millions of

Page 194

1  dollars.  I think that's what I know --
2  which was stayed, of course, because of
3  the bankruptcy.
4       Q.   And in which the appeal was
5  stayed?
6       A.   The appeal was stayed.
7       Q.   And I will represent to you
8  that there were five plaintiffs who are
9  part of that judgment.
10      But your understanding then
11  is that there was a judgment in the trial
12  court, correct?
13      A.   Correct.
14      Q.   Which was appealed?
15      A.   Correct.
16      Q.   And that the appellate
17  proceedings were stayed by the Grace
18  bankruptcy?
19      A.   Correct.
20      Q.   Do you know that as part of
21  the appellate proceedings, Fireman's Fund
22  posted a supersedeas bond to enable Grace
23  to go forward on the appeal without
24  Grace's assets being immediately at risk

Page 195

1  for execution by the plaintiffs?
2       A.   I have been told that.
3       Q.   Do you understand that in
4  connection with the issuance of the
5  supersedeas bond, Fireman's Fund and
6  Grace entered into an indemnity agreement
7  pursuant to which Grace agreed to
8  indemnify Fireman's Fund for any amounts
9  that Fireman's Fund paid pursuant to the
10  bond?
11      A.   I have been told that.
12      Q.   And do you know that
13  Fireman's Fund has filed a proof of claim
14  seeking to recover from Grace's estate
15  any and all amounts that Fireman's Fund
16  might be obligated to pay under the
17  supersedeas bond?
18      A.   I have been told that.
19      Q.   Do you have a view as to the
20  likelihood of success on Grace's appeal
21  or the strength of Grace's position on
22  appeal?
23      MR. GUY:  Objection, seeks a
24  legal conclusion.

Page 196

1       MS. BAER:  Objection.  It
2  also seeks attorney-client
3  communication.
4       MR. LIESEMER:  Same
5  objection.
6       MR. GUY:  To the extent you
7  can answer without revealing
8  communications with your
9  counsel --
10      MR. PLEVIN:  Let me just be
11  certain that I did not ask him for
12  any communications.  I didn't ask
13  him what anybody told him or what
14  he said to anybody.  I asked him
15  if he has a view.
16      He is a party to the
17  bankruptcy as the Future
18  Claimants' Representative, and he
19  either has a view or he doesn't.
20  If he has a view, I intend to ask
21  him what his view is and what the
22  basis for it is.
23      And if the point then is
24  that he can only say it based on

Page 197

1  counsel, that would be the proper
2  time to make that objection.
3       MR. GUY:  I actually don't
4  think you can, because what you
5  are trying to elicit is expert
6  testimony from a lawyer about a
7  merits of a case that's pending in
8  court.  And that testimony would
9  be barred on a 701 F.R.E.  I don't
10  think you can ask that.  It would
11  not be admissible in the
12  bankruptcy case.
13      If you can explain to me how
14  Mr. Austern's view about the
15  merits of a legal case would be
16  admissible before Judge
17  Fitzgerald, I would be happy to
18  hear it.  Maybe you can try it
19  another way.
20      MR. PLEVIN:  I am trying to
21  think of what the other way would
22  be.
23      MR. GUY:  There is no good
24  way.

Page 198

1    MR. PLEVIN:  Let me
2    reiterate my view that Mr. Austern
3    is a party to the case, and -- all
4    right.  Let me see if I can get to
5    the point of demonstrating the
6    relevance in this fashion.
7    MR. GUY:  I will tell you
8    what.  If I could talk to my
9    client for two seconds, I think we
10    can cut through this.
11    MR. PLEVIN:  Sure.
12    (There was a discussion held
13    off the record at this time.)
14    MR. GUY:  You may answer the
15    question as long as there is an
16    express understanding that you are
17    not going to argue that there is
18    any kind of waiver of privilege in
19    the answer.
20    MR. PLEVIN:  That's
21    acceptable.
22    THE WITNESS:  I believe
23    there is a question on the floor.
24    BY MR. PLEVIN:

Page 199

1    Q.   Yes.  And I believe the
2    question on the floor is whether you have
3    an opinion as to the likelihood of
4    success on appeal or the strength of
5    Grace's position on appeal in the Edwards
6    matter?
7    A.   No.
8    MS. BAER:  Objection to the
9    extent you are requesting
10    communications among the
11    co-proponents and therefore the
12    codefendants.
13    MR. LIESEMER:  And I join
14    the objection.
15    MR. PLEVIN:  And I will
16    reiterate that I was not asking
17    him about any communications.  I
18    was asking him about his own view.
19    BY MR. PLEVIN:
20    Q.   And your answer,
21    Mr. Austern?
22    A.   I have no view.
23    Q.   Do you have a view as to the
24    proper classification under the Plan of

Page 200

1    the proof of claim filed by Fireman's
2    Fund that I described a moment ago?
3    MS. BAER:  Objection as to
4    form.
5    MR. GUY:  Objection.
6    You may answer.
7    THE WITNESS:  No.
8    BY MR. PLEVIN:
9    Q.   Do you have an
10    understanding, Mr. Austern, as to what
11    the rights of the Edwards plaintiffs
12    would be under the Plan in the TDPs in
13    the event that the judgment that they
14    currently hold were to be reversed by
15    either the Texas Court of Appeals or the
16    Texas Supreme Court?
17    MS. BAER:  Objection, form.
18    MR. LIESEMER:  Same
19    objection.
20    MR. PLEVIN:  What was the
21    objection?
22    MS. BAER:  Form.
23    THE WITNESS:  You are asking
24    me, do I have a view of what they

Page 201

1    would do?
2    BY MR. PLEVIN:
3    Q.   What their rights would be
4    under the Plan.
5    A.   I assume their rights would
6    be to file a personal injury claim with
7    the Trust.
8    Q.   As opposed to taking their
9    case back to a trial court, if it were
10    remanded for a new trial and retrying the
11    case in the trial court?
12    MS. BAER:  Objection.  Now
13    you are asking for a legal
14    conclusion.
15    MR. LIESEMER:  Objection,
16    speculation, hypothetical.
17    THE WITNESS:  I don't know.
18    My understanding of the Plan is
19    they got to file a Personal Injury
20    Trust claim.
21    BY MR. PLEVIN:
22    Q.   If there is a reversal?
23    A.   Yes.
24    Q.   Do you understand,

Page 202

1  Mr. Austern, the concept of set-off in
2  bankruptcy?
3      A.   I understand set-off
4  generally as a proposition.  I am not
5  sure I would apply it -- I don't know
6  that I know enough bankruptcy law to
7  apply it to bankruptcy.
8      Q.   Okay.  What is your
9  understanding of the concept of set-off?
10     A.   Well, if I owe you $10,000
11 and I have to pay Mr. Guy because you owe
12 him some money, I can set-off from what I
13 paid Mr. Guy what I owe you.
14         MR. PLEVIN:  Can you read
15     that answer back?
16         (The reporter read from the
17     record as requested.)
18 BY MR. PLEVIN:
19     Q.   Are you aware, Mr. Austern,
20 that Grace has made claims for insurance
21 coverage against Fireman's Fund under
22 liability insurance policies issued by
23 Fireman's Fund?
24     A.   Yes.

Page 203

1      Q.   And that the insurance
2  coverage claims Grace has made at least
3  include, if not -- they are not limited
4  to claims for coverage of asbestos
5  personal injury claims?
6      A.   I am sorry.  Can you say
7  that again?
8      Q.   I got a little tied up
9  there.
10         Grace is seeking coverage
11 from Fireman's Fund under the Fireman's
12 Fund insurance coverage policies for
13 asbestos personal injury claims asserted
14 against Grace, correct?
15     A.   Yes.
16     Q.   Do you have a view as to
17 whether in the event that Fireman's Fund
18 is obligated to pay insurance coverage to
19 Grace, Fireman's Fund would be able to
20 reduce that obligation by any amount that
21 Grace is obligated to pay under the
22 indemnity agreement?
23         MR. GUY:  Objection.  I
24     don't see how he can answer that

Page 204

1  question without getting into a
2  legal analysis.  He is here as a
3  fact witness.
4          But, again, let me talk to
5  my client, and I think we can
6  resolve it with the answer.
7          MS. BAER:  We join in the
8  objection.
9          (There was a discussion held
10 off the record at this time.)
11         THE WITNESS:  I have no
12 view.
13 BY MR. PLEVIN:
14     Q.   Do you have a concern that
15 if the Edwards appeal were to be --
16 withdrawn.
17         Do you have a concern that
18 if the Edwards judgment were to be
19 affirmed on appeal and Fireman's Fund
20 paid money to Edwards and then made a
21 claim against Grace for the amount paid,
22 that that would in some way reduce the
23 amount of money coming into the Trust
24 from the Fireman's Fund insurance policy?

Page 205

1          MR. LIESEMER:  Objection to
2  the form.
3          MS. BAER:  Objection.
4          MR. GUY:  Objection to form.
5          THE WITNESS:  Mr. Plevin, I
6  have any concern that the activity
7  might reduce the amount of
8  insurance coming into the Grace
9  Trust.  And I understand this is
10 approximately $6 million.  And if
11 Fireman's Fund were to reduce its
12 payment or be entitled to reduce
13 its payment under the Fireman's
14 Fund policy for asbestos personal
15 injury to the Trust and it would
16 reduce it by $6 million, yes, I
17 have a concern.
18 BY MR. PLEVIN:
19     Q.   And I am sure this has been
20 established on the record long before I
21 came here, but let me just ask this
22 question for foundational purposes.
23         You are an attorney,
24 Mr. Austern?

1        A.    Yes.
2        Q.    And you have practiced law
3   for how many years?
4        A.    45.
5              MR. PLEVIN:  Thank you.  I
6   have no further questions.
7              MR. CALOGERO:  I have no
8   questions.
9              MR. WISLER:  Maryland
10  Casualty has no questions.
11             MR. GUY:  Are there any
12  insurers on the phone who have
13  questions?
14             Scotts?  BNSF?  Do you have
15  any questions?
16             MS. COBB:  Yes.  This is
17  Tiffany Cobb on behalf of The
18  Scotts Company, LLC, with Vorys,
19  Sater, Seymour and Pease.  Can you
20  hear me?
21             MR. GUY:  Yes.  Hi, Tiffany.
22             - - -
23             EXAMINATION
24             - - -

1   BY MS. COBB:
2        Q.    Mr. Austern, in your
3   capacity as the Asbestos PI Future
4   Claimants' Representative, what fiduciary
5   duties do you owe?
6              MR. GUY:  Tiffany, we
7   covered that earlier in the
8   deposition.  Were you listening
9   in?
10             MS. COBB:  I was.
11             MR. GUY:  I just don't want
12  to have a lot of duplicity in the
13  questioning.  I will allow this
14  one.
15             THE WITNESS:  I have a
16  fiduciary duty to future
17  claimants.
18  BY MS. COBB:
19       Q.    But what are the duties?
20       A.    Essentially to make sure
21  there is sufficient funds, that when they
22  file claims they will be treated the same
23  or similarly to present claimants.
24       Q.    In your capacity as the FCR,

1   who specifically do you view as your
2   punitive clients?
3        A.    Future claimants.
4        Q.    Okay.  And in your capacity
5   as the FCR then, do you owe a fiduciary
6   duty to asbestos PI claimants as defined
7   in the Plan who hold future demands
8   against any entity that is addressed in
9   the definition of an asbestos PI
10  claimant?
11       A.    Can you repeat the last part
12  of that.  Against whom?
13       Q.    Sure.  Against any entity
14  that is addressed in the definition of
15  asbestos PI claimant?
16       A.    Yes.
17       Q.    In your capacity as the FCR,
18  do you owe a fiduciary duty to indirect
19  PI Trust claimants who hold future
20  demands against the Debtors?
21       A.    Yes.
22       Q.    In your capacity as the FCR,
23  do you owe a fiduciary duty to
24  insurance-related claimants who hold

1   future demands against any settled
2   insurance company?
3        A.    I think I would have to go
4   back and look at the definition of those
5   people.
6        Q.    Okay.  Then let's do that.
7   If you would, please, look at Exhibit-5
8   which is the TDP, and if you would please
9   look at Section 5.12.
10       A.    I am looking at it, but give
11  me a moment.
12       Q.    Sure.
13       A.    Okay.  What was the
14  question?
15       Q.    In your capacity as the FCR,
16  do you owe a fiduciary duty to
17  insurance-related claimants who hold
18  future demands against any settled
19  insurance companies?
20       A.    I don't know.  I would have
21  to think about that.  I realize they
22  could be indirect claimants, at least I
23  think they could be indirect claimants.
24  So I would have to think about that.  I