# EXHIBIT C-1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - -

In Re:                        : Chapter 11
                              :
                              : Case No.
W.R. GRACE & CO., et al,      : 01-01139 JKF
                              :
                              : (Jointly
            Debtors           : Administered)


- - -

Friday, May 1, 2009

- - -

Oral deposition of PETER VAN
N. LOCKWOOD, ESQUIRE, taken pursuant to
notice, was held at the offices of CAPLIN
& DRYSDALE, One Thomas Circle N.W., Suite
1100, Washington, DC  20005, commencing
at 9:43 a.m., on the above date, before
Lori A. Zabielski, a Registered
Professional Reporter and Notary Public
in and for the Commonwealth of
Pennsylvania.


- - -

MAGNA LEGAL SERVICES
Seven Penn Center
1635 Market Street
8th Floor
Philadelphia, Pennsylvania 19103

```
 1          form.

 2                THE WITNESS:

 3          Hypothetically, probably yes.  It

 4          would be more difficult, but,

 5          hypothetically, yes.  You could

 6          have -- we have had some plans

 7          that had coverage in place

 8          agreements with insurers, for

 9          example, that we felt satisfied

10          524(g).  But you have to get the

11          insurers' agreement to have a

12          coverage in place agreement.

13   BY MR. BROWN:

14          Q.    Okay.  Let's go now to

15   condition (r) -- I am sorry.  Condition

16   (s).

17          A.    Yes.

18          Q.    Now, for purposes of my

19   question, I want you to assume that when

20   I use the term "settled asbestos

21   insurance companies," I want you to

22   assume that those that are pre-petition.

23          A.    Okay.

24          Q.    And my question is a very
```



```
 1    general one, because I have heard
 2    different views, and that is, what
 3    benefits are being provided by or on
 4    behalf of settled asbestos insurance
 5    companies listed on Exhibit-5?
 6              A.      It is the position of the
 7    ACC that Grace is paying close to
 8    $3 billion of value to the Trust on
 9    behalf of not only itself but a variety
10    of other protected parties, including
11    Non-Debtor affiliates and, in this
12    particular case, settled asbestos
13    insurers.
14              And it is doing so on behalf
15    of settled asbestos insurers because
16    those insurers have indemnity claims
17    against Grace, which are being, if they
18    hypothetically could ever occur, are
19    being channelled to the Trust as a means
20    of protecting Grace against such -- well,
21    let me back up.
22              The purpose of putting
23    settled asbestos insurers in here is not
24    to provide a gratuitous asbestos insurers
```




1    because we think they are nice folks.

2              Q.    I didn't think so.

3              A.    Settled asbestos insurers,

4    by definition, are insurers that have

5    indemnity rights against Grace.

6              Q.    They have also paid a lot of

7    money?

8              A.    And they paid a lot of money

9    in the past.   But the past money -- money

10   is fungible.   The past money went into

11   Grace's coffers, went out or didn't go

12   out, et cetera.   But they are not being

13   asked for any new money.

14              But Grace has an economic

15   interest in not having asbestos PI claims

16   brought against those insurers that could

17   then trigger an indemnity obligation of

18   Grace to the insurer against which that

19   asbestos PI claim was asserted.   They

20   have an economic interest in preventing

21   that.

22              So the deal is channel any

23   such claim that might give rise to the

24   asbestos indemnity claim to the Trust,

1    and in exchange for that, part of what

2    Grace is paying you is to get rid of

3    asbestos PI claims which include indirect

4    asbestos PI claims for indemnity or

5    direct asbestos PI claims for indemnity.

6         Q.    Okay.

7         A.    And that's the basis.

8         Q.    I think you said at the very

9    beginning of either the last question or

10   the one before that Grace was

11   contributing 3 million?

12        A.    Billion.

13        Q.    That's what I thought.

14   Okay.  I just wanted to make sure I had

15   the number correct.

16        A.    I mean, that's our view of

17   the approximate amount of what they were

18   contributing at the time we made the

19   deal, I guess would be a better way to

20   put it.  There are other people that

21   might value it differently.

22             Some of things that were

23   worth more at the time the deal was made

24   are worth less today but hopefully will

1    what the scope of the injunction is

2    that's in your client's Plan.

3         A.    I described, I thought, in

4    some detail what I thought the scope of

5    the injunction is.  But if you want to

6    turn to the injunction provisions and ask

7    me specific questions about their scope,

8    I am sure you will do that.

9         Q.    We will get to the

10   injunction.

11        A.    I am sure you will do that.

12        Q.    Does this language that we

13   are referring to here under 7.13 the

14   underscored language release claims that

15   BNSF or the Libby claimants might have or

16   might choose to assert against settled

17   asbestos insurance companies?

18             MR. FINCH:  Objection to

19   form, calls for legal conclusion.

20             MS. HARDING:  Same

21   objection.

22             THE WITNESS:  I think those

23   are the same.  Those claims are

24   channelled to the Trust, and I

1    don't believe the intendment of

2    this paragraph is to sort of mean

3    that the claims vanish, if that's

4    what you mean by release.

5         What I believe the

6    intendment of this claim is is

7    that this provision is that it's

8    sort of a belt-and-suspenders

9    piece of channelling injunction.

10   BY MR. BROWN:

11        Q.    So the claims are both

12   enjoined, channelled, and then released?

13        A.    Against the

14   asbestos-protected parties but not

15   against the Trust, for example.

16        What I can't tell from your

17   question is whether you are sort of

18   insinuating that somehow or another the

19   release has the effect of freeing the

20   Trust from liability for these claims,

21   which I don't believe it does.

22        Q.    What's the consideration for

23   the release insofar as it pertains to the

24   Sealed Air indemnified parties and the

```
 1                    If that's true -- but it
 2    still has to arise -- Scotts has to have
 3    been negligent in, if you will,
 4    re-selling a Grace product, and so the
 5    underlying exposure would be to the Grace
 6    product.
 7                    As the Plan is drafted, if
 8    you look at the definition of asbestos
 9    personal injury claim and sort of trace
10    that through to what winds up going into
11    the Trust, it would not cut off the fact
12    that somebody who was selling a Grace
13    product had some sort of additional basis
14    for the liability of that product.  They
15    were being sued as a result.
16                    So the answer is that,
17    unless the court says that claim cannot
18    be channelled to the Trust, it is
19    channelled to the Trust.
20         Q.    Okay.  Let's go to Section
21    8.25, Asbestos PI Channelling Injunction.
22         A.    I have it.
23         Q.    I am sorry.  I am just
24    looking at my notes here.
```

1          I am correct, am I not, that

2     the asbestos PI channelling injunction,

3     among other claims, enjoins any claims

4     that BNSF has against settled asbestos

5     insurance companies that arise from

6     asbestos PI claims?

7          A.     Generally stated, I believe

8     that to be correct.

9          Q.     Are there any exceptions

10    about when you are aware?

11         A.     Again, I would have to parse

12    the definitions to see whether there

13    might be some hypothetical possibility of

14    a claim that wouldn't be covered.  But to

15    the extent that BNSF is asserting against

16    settled insurers claims that are based on

17    asbestos-related injuries arising from

18    Grace vermiculite that somehow or another

19    BNSF was involved with and held liable

20    for, those claims are channelled to the

21    Trust.

22         Q.     Okay.  And are the claims

23    that the Libby claimants have asserted or

24    could assert against the settled asbestos

1    insurance companies relating to asbestos

2    PI claims, are they, too, enjoined and

3    channelled pursuant to the asbestos PI

4    channelling injunction?

5          A.    Yes.   The Libby claimants

6    are no different from any other asbestos

7    personal injury claimant as far as this

8    injunction is drafted.

9          Q.    Okay.   And the claims that

10   the settled asbestos insurance companies

11   have, contractual or otherwise, that

12   arise from asbestos PI claims against the

13   Debtors, Non-Debtor affiliates, Sealed

14   Air, the Sealed Air indemnified parties,

15   and the Fresenius indemnified parties are

16   all enjoined under this asbestos PI

17   channelling injunction as well, correct?

18         A.    I refuse to accept the

19   proposition that there can be any such

20   claims, because the claims against you

21   that would give rise to those indemnity

22   claims are all enjoined, and so you

23   are -- it's a catch-22.   If the claims

24   could be asserted against you, it would

1   be because there is no 524(g) injunction.

2              If there is no 524(g)

3   injunction, there is no Trust.  There is

4   no -- so the Trust hasn't -- there is

5   nothing -- there is no place to channel

6   them.  If there is no 524(g) channelling

7   injunction, this Plan doesn't exist.  You

8   are back to square one.  You got

9   indemnity claims against Grace.

10       Q.    But, Mr. Lockwood, just a

11   few moments ago, you put some

12   qualifications on the scope of the

13   channelling injunction as applied to the

14   Scotts action.

15       A.    Yeah, because those claims

16   were claims to be an additional insured,

17   and the asbestos personal injury -- you

18   can be an additional insured with respect

19   to asbestos claims and with respect to

20   non-asbestos claims.

21              The channelling injunction

22   deals with asbestos claims.  The claims

23   you have recited for BNSF and Libby are

24   asbestos claims.  There is no dispute to

```
1              Q.    I think we are talking past
2    each other.   Let's just move on.
3              Let's go to Section 8.4,
4    which is the Asbestos Insurance Entity
5    Injunction.
6              A.    I have it.
7              Q.    What is the purpose of this
8    injunction?
9              A.    The purpose of this
10   injunction --
11             MS. HARDING:    Object to
12        form.
13             THE WITNESS:    Excuse me?
14             MS. HARDING:    I just object
15        to form.
16             THE WITNESS:    From the ACC's
17        perspective, the purpose of this
18        injunction is to protect the
19        insurance assets being transferred
20        to the Trust from being
21        intercepted, if you will, or --
22             MR. FINCH:    Looted.
23             THE WITNESS:    -- looted or
24        pillaged, or whatever, by claims
```

1       from claimants, direct action type

2       claims.

3              This is intended to be a

4       communal asset for the benefit of

5       the present of future claimants in

6       the Trust, and allowing individual

7       claimants to go around the back

8       door, if you will, and bring

9       claims against the insurers whose

10      coverage was being assigned for

11      the communal benefit of the Trust

12      would be inequitable, in our view,

13      and that's the purpose of this

14      injunction.

15  BY MR. BROWN:

16          Q.    Okay.  You are aware that

17  Scotts and BNSF have asserted certain

18  rights under certain asbestos insurance

19  policies, correct?

20          A.    Correct.

21          Q.    Does this injunction enjoin

22  those two entities from pursuing coverage

23  for asbestos-related claims under the

24  settled asbestos insurance policies or

1    frankly under any asbestos insurance

2    policies?

3                 MR. FINCH:    Object to form,

4         compound.

5                 THE WITNESS:    Not if what we

6         are suing for is not based upon or

7         arising out of an asbestos PI

8         claim against the Debtors or any

9         asbestos insurance rights.

10                If they are asserting -- you

11        have to look at the definition of

12        asbestos PI claim; you have to

13        look at the definition of asbestos

14        insurance rights.

15                The asbestos insurance

16        rights are the rights of the

17        Debtor.    They are not the rights

18        of Scotts or BNSF.    So you have --

19        and asbestos PI claims are

20        personal injury claims arising out

21        of exposure to Grace products.

22                So it would depend upon,

23        again, the type of claim that was

24        being asserted by Scotts or BNSF.

1          BNSF, for example, purports to
2     have, at least in one instance, I
3     think it's Royal, claims issued
4     directly to it by Royal that were
5     somehow procured by Grace but
6     which don't cover Grace.  I don't
7     believe that this injunction would
8     preclude suits by BNSF on that
9     sort of insurance claim.
10  BY MR. BROWN:
11          Q.    Would the prior injunction
12  enjoin that type of claim?
13          A.    The asbestos personal
14  injury?
15          Q.    Yes.
16          A.    No, because those policies
17  are not within the definition -- they are
18  not covered in Exhibit-5, and so Royal
19  wouldn't be an asbestos-protected party
20  with respect to those policies.
21                We are now talking about
22  non-settled coverage here, aren't we?
23  Wasn't that what your question was?
24          Q.    I don't know.  This was your

```
 1              form, and speculation and legal

 2              conclusion.

 3                   MR. FINCH:  Same set of

 4              objections.

 5                   THE WITNESS:  Well,

 6              moreover, when you say it doesn't

 7              affect the other property

 8              interest, I don't know the answer

 9              to that.  I am not competent to

10              answer that question, frankly.  I

11              am already skating on the edge of

12              my competence, and I think that

13              one takes me past it.

14  BY MS. COBB:

15         Q.    Okay.  Peter, I would like

16  to ask you a few questions about the

17  non-settled insurance companies as

18  defined in the Plan.

19         A.    Okay.

20         Q.    What contributions have the

21  non-settled insurance companies made to

22  the Plan?

23                MR. FINCH:  Objection, asked

24         and answered.
```

```
 1                        THE WITNESS:   As far as I
 2                know, none.
 3   BY MS. COBB:
 4        Q.    If the non-settled insurance
 5   companies are not making a contribution
 6   to the Plan, would you agree then that
 7   they are not entitled to 524(g)
 8   protection?
 9               MS. HARDING:  Object to
10          form.
11               THE WITNESS:  Well, if they
12          are not making a contribution and
13          nobody else is making a
14          contribution on their behalf, then
15          I would agree that under the
16          statute, it would be hard to see
17          how they would be entitled to
18          protection under Section 524(g).
19   BY MS. COBB:
20        Q.    Are the non-settled
21   insurance companies getting a benefit
22   from the asbestos insurance entity
23   injunction to the extent that the claims
24   against them are enjoined by that
```

```
 1          it, because the state action you

 2          are describing is an action

 3          against an insurance company, but

 4          you seem to be contemplating some

 5          tort claim against somebody else.

 6  BY MS. COBB:

 7          Q.    Beyond the asbestos

 8  insurance entity injunction, are there

 9  any other protections in the Plan for the

10  non-settling insurance company?

11              MR. FINCH:  Object to form.

12              MS. HARDING:  Object to the

13          form.

14              THE WITNESS:  Not that I am

15          aware of.

16  BY MS. COBB:

17          Q.    What is the consideration

18  given by the non-settling insurance

19  companies for the Section 105 asbestos

20  insurance entity injunction protection?

21          A.    I believe I already answered

22  that, and the answer was none.  That

23  injunction is for the benefit of the

24  Trust and its beneficiaries and not for
```

1    the benefit of the asbestos insurance

2    entity even though they may, as a prior

3    answer of mine stated, receive some

4    collateral benefit from it in their

5    minds.

6         Q.    I just have a couple of

7    questions about the Trust Distribution

8    Procedures.  And I apologize since I am

9    attending by phone, can you please remind

10   me what the ACC exhibit number is?

11              MR. FINCH:  11.

12              MS. COBB:  I am sorry.

13         What?

14              MR. FINCH:  It's ACC

15         Exhibit-11.

16              MS. COBB:  It is ACC

17         Exhibit-11, for the record.

18              THE WITNESS:  And it's Plan

19         Exhibit-4.  I have that exhibit,

20         Tiffany.

21   BY MS. COBB:

22         Q.    You do.  Okay.

23              Looking at ACC Exhibit-11,

24   can you tell me what happens to common

IN THE UNITED STATES BANKRUPTCY COURT
   FOR THE DISTRICT OF DELAWARE

          -   -   -

In Re:                      : Chapter 11
                            :
                            : Case No.
W.R. GRACE & CO., et al,    : 01-01139 JKF
                            :
                            : (Jointly
             Debtors        : Administered)


          -   -   -

        Monday, May 4, 2009

          -   -   -

        Continuation of oral

deposition of PETER VAN N. LOCKWOOD,

ESQUIRE, taken pursuant to notice, was

held at the offices of CAPLIN & DRYSDALE,

One Thomas Circle N.W., Suite 1100,

Washington, DC  20005, commencing at

12:05 p.m., on the above date, before

Lori A. Zabielski, a Registered

Professional Reporter and Notary Public

in and for the Commonwealth of

Pennsylvania.
          -   -   -
        MAGNA LEGAL SERVICES
          Seven Penn Center
         1635 Market Street
              8th Floor
   Philadelphia, Pennsylvania 19103

Page 518

1  litigation concerning the applicability
2  of and injunction similar to the Asbestos
3  Insurance Entity Injunction in any other
4  case?
5        MR. WISLER:  Can you repeat
6     that?  I didn't hear you, Dan.
7  BY MR. COHN:
8     Q.   Are you aware of any
9  litigation concerning the scope of the
10  asbestos or an injunction similar to the
11  Asbestos Insurance Entity Injunction in
12  any other case?
13     A.   The only litigation that I
14  am aware of that's remotely similar --
15  and I don't profess to know all the
16  litigation that might be floating around
17  out there -- is actually litigation over
18  an entity that is closer to the Asbestos
19  Permanent Channelling Injunction.  And
20  it's the Travelers injunction that's
21  presently before the United States
22  Supreme Court.  To be more specific, it's
23  the Manville injunction that Travelers is
24  litigating about.

Page 519

1     Q.   Has Maryland Casualty
2  Company paid or agreed to pay any money
3  or other consideration in order to be
4  covered by the Asbestos PI Channelling
5  Injunction?
6     A.   Well, that depends on how
7  you use the term "pay."
8        The basis, which I take it
9  which is what you are asking for, for
10  Maryland Casualty being a protected party
11  to this Plan is that in the past,
12  Maryland Casualty Company has paid a lot
13  of money to Grace and entered into a
14  settlement agreement with Grace which
15  releases that coverage and which Grace
16  indemnifies it against claims.
17        As I testified, I believe,
18  on Friday, Grace, as part of this deal,
19  Grace has had two positions that it has
20  taken that we have -- we being the
21  committee and its representative --
22  accepted.  Number one is a claim for
23  indemnity from a settled insurer based on
24  claims against that insurer that are

Page 520

1  asbestos personal injury claims against
2  or arising out of Grace is something that
3  has to be channelled to the Trust because
4  it fits within the definition of an
5  asbestos personal injury claim under
6  524(g), and that in order that Grace be
7  protected from such indemnity claims, the
8  roughly $3 billion that Grace and various
9  related parties are paying to this Plan
10  is, in part, on behalf of those settled
11  insurers.
12        So if the question means, is
13  Maryland Casualty Company paying
14  something over and above what Grace is
15  paying, the answer is not to my
16  knowledge.
17     Q.   Is there a benefit to the
18  Grace Bankruptcy Estate or to the
19  Asbestos PI Trust from having the
20  Asbestos PI Channelling Injunction
21  protect Maryland Casualty Company?
22        MR. FINCH:  Object to that
23     question to the extent that it
24     calls for speculation.

Page 521

1        Mr. Wisler:  Could you read
2     the question back, please?
3        MR. SCHIAVONI:  Objection to
4     form; objection, calls for waiver;
5     objection, calls for legal
6     conclusion.
7        MR. FINCH:  I disagree that
8     it calls for waiver.
9        But you can answer.
10        THE WITNESS:  Could you
11     reread the question?
12        MR. COHN:  Let's go off the
13     record for a second.
14        (There was a discussion held
15     off the record at this time.)
16        (The reporter read from the
17     record as requested.)
18        Mr. Wisler:  I object to
19     form.
20        THE WITNESS:  Yes.
21  BY MR. COHN:
22     Q.   What is that benefit?
23        MR. FINCH:  You can answer
24     the question to the extent that it

Page 522

1  doesn't reveal privileged or work
2  product information.
3      THE WITNESS:  The benefit to
4  the Grace Estate is that it
5  eliminates potential claims by
6  Maryland Casualty Company against
7  the Debtor and its Estate.  That's
8  the benefit.
9  BY MR. COHN:
10     Q.  Is there any agreement
11 between Grace and Maryland Casualty
12 Company which requires Grace to indemnify
13 Maryland Casualty Company for its own
14 misconduct?
15     MR. FINCH:  Objection to the
16 extent that calls for a legal
17 opinion.  And object to the extent
18 that there is information
19 responsive to this question that's
20 privileged, I instruct you not to
21 answer if it would reveal
22 privileged communications.
23     If you can answer the
24 question without revealing

Page 523

1  privileged communications, you can
2  do so --
3      MR. SCHIAVONI:
4  Mr. Lockwood, I think --
5      MR. FINCH:  Tank, let me
6  finish.
7      MR. SCHIAVONI:  Oh, I am
8  sorry.
9      MR. FINCH:  But I still
10 object to the extent that it calls
11 for a legal opinion.
12     MS. BAIER:  I also object.
13 You have asked Mr. Lockwood
14 whether he knows about -- you
15 haven't asked him about whether he
16 knows.  You asked him is there an
17 agreement between Grace and
18 Maryland Casualty Company.  I
19 object to the form.  You are now
20 asking Mr. Lockwood to get into
21 the head of W.R. Grace.
22     MR. SCHIAVONI:  I am sorry,
23 Mr. Finch.  I didn't mean to
24 interrupt you before.

Page 524

1      Mr. Schiavoni for Arrowood.
2  We join your objection, and we
3  would also say this is outside the
4  scope of the designation and that
5  Mr. Lockwood doesn't have to
6  answer every single question no
7  matter what it is.  This is not in
8  the designation.
9      MR. FINCH:  Can we hear back
10 the question?
11     (The reporter read from the
12 record as requested.)
13     THE WITNESS:  In my
14 understanding, there is an
15 agreement between Grace and
16 Maryland casualty company which
17 contains indemnification
18 provisions.  I am not in a
19 position to express an opinion on
20 what the scope of that
21 indemnification is, much less
22 whether or not Grace and Maryland
23 Casualty agree on what the scope
24 of that indemnification is.

Page 525

1  BY MR. COHN:
2      Q.  Is it the position of the
3  Asbestos PI Committee that if the
4  indemnification provisions are construed
5  to protect Maryland Casualty from its own
6  misconduct, that such provisions would be
7  enforceable?
8      MR. FINCH:  Object to form,
9  calls for a legal conclusion.
10     THE WITNESS:  It actually
11 calls for speculation.
12     MR. FINCH:  That, too.
13     THE WITNESS:  In addition.
14     The committee's
15 understanding of the way this Plan
16 works, which is what expresses the
17 committee's position, is that it's
18 a legal question which, assuming
19 that a dispute on this subject
20 arises at some point in the
21 future, will be determined by
22 litigation over, A, what exactly
23 is the basis for the claim against
24 Maryland Casualty, legal and

Page 550

1  Linda Casey.  I am with Pepper Hamilton.
2  I represent BNSF Railway Corporation.
3          Mr. Lockwood, are you aware
4  that BNSF asserts that Grace purchased
5  insurance policies that named BNSF as the
6  at that name insurer upon which Grace was
7  not also a named insured?
8          MR. FINCH: Object to form,
9  foundation.
10         THE WITNESS: I believe I
11  recall seeing Grace make such an
12  assertion.
13         MS. BAIER: Objection.
14         THE WITNESS: I am not sure,
15  frankly, however, whether it was
16  Grace that made the assertion or
17  BNSF made the assertion.  I know
18  somebody has made the assertion.
19  BY MS. CASEY:
20     Q.  Okay.  The follow-up
21  question I have on that is, is it the
22  ACC's position that as to settled
23  insurance companies, settled asbestos
24  insurance companies, to the extent that

Page 551

1  they had, in fact, issued policies to be
2  in BNSF where BNSF is the named insurer,
3  that the channelling injunction will
4  enjoin BNSF post-confirmation from
5  asserting coverage claims against the
6  settled asbestos insurance company under
7  those policies?
8          MR. FINCH: Objection --
9          MS. BAIER: Objection to
10  form.
11         MR. PERNICONE: Objection.
12         MR. FINCH: -- form,
13  speculation.
14         To the extent you can
15  answer the question without
16  revealing privileged
17  communications or work product,
18  you can do so.
19         MR. SCHIAVONI: This is
20  Schiavoni. I object to form, and
21  I also object to this being
22  outside the scope of the
23  designation, and calling for a
24  legal conclusion.

Page 552

1          THE WITNESS: As I hear the
2  question and as I interpret the
3  Plan, an insurance policy
4  purchased by Grace for BNSF, which
5  did not provide coverage to Grace,
6  only provided coverage to BNSF,
7  claims by BNSF would not be
8  enjoined unless Grace had somehow
9  or another indemnified that
10  settled insurer against claims by
11  BNSF.
12         And then in that
13  hypothetical situation, since I
14  haven't seen the policies and have
15  no idea what, if any,
16  indemnifications they have in
17  them, there might be a situation
18  in which if the claim by BNSF
19  against that policy was an
20  asbestos personal injury claim and
21  Grace had indemnified that insurer
22  against that claim, then under
23  those circumstances, as I
24  understand the Plan, that claim

Page 553

1  might well be channelled to the
2  Trust.  But, as I said before, I
3  have no idea whether any such
4  indemnification provision exists
5  or not.
6  BY MS. CASEY:
7     Q.  I am not sure if I
8  understand your answer.
9          The claim that BNSF would
10  have against the insurer would be
11  channelled or the claim the insurer would
12  have against Grace for indemnification
13  would be channelled, or both?
14         MS. BAIER: Objection as to
15  form. It's a hypothetical,
16  speculative question.
17         MR. SCHIAVONI: Also, I
18  think it calls for speculation
19  given the nature of the answer
20  that was given.
21         THE WITNESS: Well, it
22  clearly calls for speculation.
23         The answer is, in theory,
24  both; in reality, only the first,

Page 554

1   as my colloquy with Mr. Brown on
2   Friday, I believe, expressed,
3   which is that if the claim were,
4   in fact, an asbestos personal
5   injury claim that was indemnified
6   by Grace, then the claim by BNSF
7   against the insurer would be
8   enjoined.
9        Once the claim is enjoined,
10  there will be no opportunity for
11  the insurer to in turn. Have an
12  indemnity claim against Grace.
13       If the claim is somehow or
14  another not enjoined, then it
15  wouldn't be channelled to the
16  Trust because the only basis on
17  which it could not be enjoined was
18  that it was not an asbestos
19  personal injury claim in the first
20  place. And the Trust picks up
21  indemnity liabilities with respect
22  to Grace for claims that arise out
23  of asbestos personal injury
24  claims.

Page 556

1   scenario, but I cannot flatly say
2   that there is no conceivable
3   combination of facts that might
4   preclude that result from taking
5   place.
6        BNSF is suing, by
7   hypothesis, for coverage of a
8   claim against BNSF. What is that
9   claim? If somehow or another that
10  claim fell within the definition
11  of asbestos personal injury claim,
12  as defined in the Plan, which I
13  don't know whether it would or
14  wouldn't, but theoretically it
15  might, and if BNSF were held
16  liable on that asbestos personal
17  injury claim, brought a suit
18  against that insurer on the
19  separate policy, the insurer
20  somehow or another produces what
21  seems to me to be highly unlikely,
22  which is an indemnity from Grace,
23  saying that not only did we
24  purchase this insurance policy for

Page 555

1        But, again, I have no idea
2   what kind of claims we are talking
3   about here, so this is purely at a
4   theoretical level of how the Plan
5   would work on unspecified facts
6   and unspecified contractual
7   undertakings.
8   BY MS. CASEY:
9        Q.  Let me ask it a different
10  way then.
11       Is it the ACC's position
12  that the Plan under any circumstances can
13  enjoin BNSF from asserting its contract
14  rights against the insurers where Grace
15  purchased the policy but has not been a
16  beneficiary under the policy?
17            MR. FINCH: Objection, form.
18            MS. DeCRISTOFARO: Objection
19  to form.
20            MR. SCHIAVONI: Objection to
21  form, calls for a legal
22  conclusion, calls for speculation.
23            THE WITNESS: It is very
24  hard for me to imagine that

Page 557

1   BNSF's benefit but we gave the
2   insurer an indemnity that it would
3   never have to pay any money on the
4   policy, then it's possible that
5   that claim could wind up being
6   enjoined because it gave rise to
7   an indemnity or would give rise to
8   an indemnity claim against Grace
9   for an asbestos personal injury
10  claim.
11       The problem is it is so
12  inconceivable to me that Grace
13  could give an indemnity to an
14  insurer for a policy that didn't
15  cover Grace but was purchased for
16  BNSF and which hypothesis had
17  never been exhausted. I can't
18  imagine how that could come about.
19       So you are forcing me, when
20  you give me these hypotheticals,
21  to dream up scenarios under which
22  the hypothetical might possibly
23  apply, no matter how unrealistic
24  the scenario appears to me to be.

Page 558

1    And that scenario to me appears to
2    be extraordinarily unrealistic, if
3    not impossible.
4    BY MS. CASEY:
5        Q.   I would like you to turn to
6    Exhibit ACC Exhibit-11.
7            MR. FINCH:  The TDP?
8            MS. CASEY:  Yes, the TDP.
9            THE WITNESS:  Okay.  I have
10   it.
11   BY MS. CASEY:
12       Q.   And specifically 5.12.
13       A.   I have it.
14       Q.   Okay.  5.12 by its terms
15   applies to claims that BNSF and others
16   would have against settled asbestos
17   insurance companies.  Let me ask an
18   initial question.
19           It is the ACC's position
20   that the Asbestos Insurance Entity
21   Injunction also enjoins asbestos claims
22   as defined by the Plan from being
23   asserted against unsettled asbestos
24   insurance companies, correct?

Page 559

1        A.   In general, that's true.
2    The language is very specific as to what
3    kind of claims that it enjoins against
4    non-settled insurers, but subject to the
5    caveat that you have to look at the
6    definition to know exactly which kind of
7    claims you are talking about, yes.
8        Q.   Does the TDP have a
9    provision by which BNSF Railway can
10   assert its enjoined claims against the
11   unsettled asbestos insurance companies?
12           MR. SCHIAVONI:  Objection to
13   form.
14           THE WITNESS:  At the moment,
15   I can't think of anything.
16   BY MS. CASEY:
17       Q.   Okay.  My final questions
18   concern the contribution that Grace is
19   allegedly providing to the Plan on behalf
20   of the insurance companies for the
21   benefit of the 524(g) injunction.
22           I understand the cash
23   portion -- at least I understand the
24   argument that the ACC is present

Page 560

1    regarding cash portion.  I am not sure I
2    understand the basis for saying that the
3    channelling of the indemnification claims
4    constitutes a substantial contribution to
5    the Plan or a benefit to the Plan, to the
6    asbestos claimants.
7            Can you explain how that
8    constitutes a benefit?
9            MR. FINCH:  Objection,
10   mischaracterizes prior testimony.
11           THE WITNESS:  I don't
12   believe I testified that that was
13   a benefit to the Trust.
14           The channelling of the
15   claims, the indemnity claims,
16   against Grace, I testified was a
17   benefit to the Grace Estate.
18           The statute, in general,
19   says that a protected party has to
20   have something contributed on its
21   behalf to the Trust in exchange
22   for the injunction.  That's a very
23   broad paraphrase to the statute.
24           So the protection for the

Page 561

1    settled insurance company is the
2    injunction.  The benefit to the
3    Trust, which if it, in effect,
4    purchases that protection, is the
5    Grace contribution, which Grace is
6    making on behalf of itself and
7    multiple other entities.
8    BY MS. CASEY:
9        Q.   The cash contribution?
10       A.   Well, the entirety of its
11   contribution.  There is cash; there is
12   notes; there is warrant; there is
13   insurance; and there is the Grace
14   Estate's claim against Fresenius and
15   Sealed Air.
16           You will recall that
17   Fresenius and -- the committee -- the two
18   committees, the PI and the PD committees,
19   brought claims against Sealed Air and
20   Fresenius on behalf of the Grace Estate.
21   So when those claims were settled, they
22   were not only settled by the entities
23   against which they were brought, namely,
24   Sealed Air and Fresenius, but, to the

Page 562

1   extent that the proceeds of those
2   settlements wind up in the Grace Trust as
3   opposed to the Grace Estate for
4   distribution to other people, they are a
5   settlement part of Grace's contribution
6   to the Trust.
7       Q.   Has the ACC attempted to
8   apportion or value those portions of the
9   contributions made by Grace that are upon
10  Grace's behalf versus upon the insurer's
11  behalf?
12      MR. FINCH:  You can answer
13  that yes or no.
14      THE WITNESS:  Well, I will
15  answer it no and add I am not sure
16  how anybody could go about doing
17  that.  It's what is known as a
18  lump sum deal.
19      MS. CASEY:  I have no
20  further questions.
21      MR. SCHIAVONI:  Actually,
22  could we let Mr. Speights from
23  South Carolina go first.
24      MR. FINCH:  You are up, Dan.

Page 563

1        - - -
2       EXAMINATION
3        - - -
4   BY MR. SPEIGHTS:
5       Q.   Mr. Lockwood, were you
6   involved in the negotiation of the 524 --
7   strike that.
8       Were you involved in the --
9       MS. BAIER:  Dan, can you
10  speak up or come closer to the
11  phone or something?
12      THE WITNESS:  Nobody can
13  hear you.
14      MR. SPEIGHTS:  I picked up
15  the phone.  I am not on speaker.
16      MR. FINCH:  Now we can hear
17  you.
18      THE WITNESS:  That's better.
19      MR. FINCH:  That's better.
20  BY MR. SPEIGHTS:
21      Q.   Let me start over again.
22  Mr. Lockwood, were you involved in the
23  negotiation of the 524(g) statute?
24      A.   Me personally?

Page 564

1       MR. FINCH:  Objection,
2   foundation.
3   BY MR. SPEIGHTS:
4       Q.   Yes, you personally.
5       A.   No.
6       Q.   Was your law firm?
7       MR. FINCH:  Objection, form,
8   foundation, relevance.
9       THE WITNESS:  It depends on
10  how you define negotiations when
11  it comes to dealing with a
12  congressional enactment.  My
13  partner, Mr. Inselbuch, to my
14  knowledge, had at least one
15  meeting with Senator Heflin on the
16  subject of the statute.
17      What other discussions,
18  either in committee or outside
19  committee or whatever,
20  Mr. Inselbuch might have been
21  involved with, I really don't
22  know.  But he's being deposed on
23  June 12th, and I guess you could
24  ask him.

Page 565

1   BY MR. SPEIGHTS:
2       Q.   Would you agree with me that
3   the 524(g) statute always refers to the
4   word "Trust" in singular rather than
5   plural?
6       A.   I would have to go back and
7   look at the statute to be sure of that.
8   If you tell me it does, I am not going to
9   argue with you about it.
10      Q.   Well, I am actually not
11  going to tell you anything.  But if you
12  don't recall without looking at the
13  statute, I certainly would accept that
14  answer.
15      A.   I do not specifically recall
16  without looking at the statute.
17      Q.   Do you recall any bankruptcy
18  that was contested and provides for two
19  asbestos trusts, two or more asbestos
20  trusts?
21      A.   Do you mean a bankruptcy
22  where the Plan proposed to create two
23  trusts, and somebody said there could
24  only be one and that was the contest and

Page 634

1 the same position and give the
2 same instruction.
3     If you ask about questions
4 that Libby claimants have taken in
5 papers filed in the court, for
6 example, in a Disclosure Statement
7 objections and the bullet point
8 Plan objections and the
9 committee's responses made to that
10 in open court, I will permit
11 Mr. Lockwood certainly to answer
12 those questions.
13     But anything that gets into
14 communications with between the
15 Libby claimants with the rest of
16 the ACC or counsel for the ACC
17 about their respective views of
18 insurance coverage, I am going to
19 take the position as privileged.
20     And so I think you have to
21 do it on a question-by-question
22 basis, but that's my general
23 position.
24 BY MR. SCHIAVONI:

Page 635

1     Q.   Okay. Mr. Lockwood, I just
2 have one other brief topic. And here is
3 the first question on that: Does the
4 Plan purport to release claims that may
5 exist between insurers and Non-Debtors?
6     MR. FINCH: Objection, form,
7 broad, vague.
8     THE WITNESS: Phrased as
9 broadly as you have, I think the
10 answer is yes.
11     MR. SCHIAVONI: Okay. Thank
12 you. I have no further questions.
13     MR. FINCH: Is there anyone
14 else in the room who has
15 questions?
16     MR. BROWN: I have some
17 follow-ups.
18     MR. FINCH: Is there anyone
19 else on the telephone who has not
20 asked questions yet who has
21 questions?
22     (No response.)
23     MR. FINCH: Hearing no
24 affirmative response, I will let

Page 636

1 you have follow-up until we run
2 out of time.
3     (There was a discussion held
4 off the record at this time.)
5     (There was a break from 3:55
6 p.m. to 4:03 p.m.)
7     - - -
8     EXAMINATION
9     - - -
10 BY MR. BROWN:
11     Q.   Mr. Lockwood, just a couple
12 of follow-ups. The court reporter is
13 actually going to read back a question
14 and answer. I think it's probably easier
15 to do that, and then I will ask my
16 follow-up question. It was end of
17 Mr. Wisler's questioning of you.
18     A.   Okay.
19     (The reporter read from the
20 record as requested.)
21 BY MR. BROWN:
22     Q.   And after that,
23 Mr. Lockwood, Mr. Wisler asked you a
24 follow-up as to what type of claim it

Page 637

1 would be.
2     And is it correct that the
3 ACC does not have a position on what type
4 of claim it would be if it's not a Class
5 6 claim?
6     A.   Well, the ACC doesn't, as
7 such, have positions on hypothetical
8 questions. So, yes, the ACC doesn't have
9 a position on that issue. The ACC --
10 well, I will leave it at that.
11     Q.   On Friday, Mr. Cohn asked
12 you a question, who drafted the TDP.
13 That was the question, and you gave an
14 answer which I am happy to show you the
15 full answer. But I WANT to repeat a
16 portion of your answer. You said: "The
17 participants that did it were basically
18 counsel for the ACC, counsel for the FCR,
19 and members of the ACC itself in terms of
20 reviewing and commenting on things, and
21 the FCR himself."
22     When you said the ACC
23 itself, what did you mean?
24     A.   I meant --