

Δ π EXHIBIT __2__
Deponent Posner
Date 5-6-07 Rptr. UL
WWW.DEPOBOOK.COM

# JEFFREY M. POSNER

2333 North State Road 7, Suite B, Margate, Florida 33063
Telephone: (954) 590-3454 • Fax: (954) 590-3455 • Email: jmposner@bellsouth.net

## SUMMARY OF QUALIFICATIONS

Insurance and risk management professional with more than 30 years of experience in the insurance, claims, brokerage and risk management areas. Extensive expertise in the development and implementation of highly sophisticated risk management programs, insurance policy interpretation, insurer and broker custom and practice, claims handling custom and practice as well as the management of all insurance aspects of complex coverage litigation including allocation and exhaustion analysis. Negotiated $1 billion of insurance settlements related to asbestos and environmental litigation.

## PROFESSIONAL EXPERIENCE

**JM Posner, Inc.,** Margate, Florida                                          **1999 to Present**
*Principal and Founder*

- Purchase domestic and international insurance polices for large commercial risks.  Manage risk management and claim handling programs on an outsourced basis including formulating and implementing insurance and self-insurance strategies on a national and international basis.
- Develop and implement strategies to settle and resolve complex coverage litigation including conducting settlement negotiations and performing coverage analysis.
- Provide litigation support for complex coverage litigation in the areas of financial and insurance policy exhaustion analysis and allocation of claims to multiple policy years using state of the art computer models.
- Provide expert witness testimony on a broad range of issues involving disputes between policyholders and insurers including insurer and brokerage related issues, claims handling issues, bad faith and policy interpretation issues.
- Conduct reviews and audits of corporate insurance programs to meet the needs of policyholders both in terms of cost and quality of protection.
- Represent policyholders in insurance- related transactions, e.g., the purchasing and implementation of commercial insurance programs.  Conduct insurance-related due diligence for acquisitions and divestitures.

**W. R. Grace & Co.,** Boca Raton, Florida                                  **1982 to 1999**
*Assistant Vice President, Director of Corporate Risk Management  (1988-1999)*

- Managed worldwide risk management programs with annual costs exceeding $50 million while continuously redesigning programs to reduce costs and improve overall operating efficiencies.
- Managed all aspects of insured and self-insured claims handling programs, which included negotiating and settling claims and negotiating and resolving claim's handling issues.
- Determined risks to be insured and self-insured and developed alternative risk financing solutions; negotiated and purchased domestic and international policies covering a broad range of exposures including general and products liability, workers' compensation, first party property, director's & officer's liability and medical malpractice; managed captive insurance company and served as Chairman of the Board.
- Directed all aspects of insurance- related coverage litigation including negotiating approximately $1 billion of insurance settlements related to asbestos and environmental litigation; developed settlement and other resolution strategies; performed financial analysis for balance sheet and P&L purposes; implemented a computer allocation system to allocate costs utilizing different triggers and acted as company witness at depositions and trials.

- Managed all insurance and risk management aspects of acquisitions and divestitures including the design and implementation of insurance procedures' agreements.

*Assistant Director of Corporate Risk Management*  (1987 - 1988)

**JEFFREY M. POSNER**

Page Two

*Risk Analyst* (1986 - 1987)

*Assistant Claims Manager* (1982 - 1986)

**Marsh & McLennan, Inc.,** New York, New York                              1980 - 1982

*Senior Accounts Representative (Licensed NYS Insurance Broker)*

- Worked as senior claim broker for major Fortune 500 clients, which involved resolution of coverage disputes with insurers.
- Negotiated with insurance carriers to ensure adequate and proper reserve amounts.
- Designed, negotiated and implemented claim handling procedures.
- Conducted claim audits to ensure compliance with established procedures.

**Reliance Insurance Co.,** New York, New York                              1975 - 1980

*Claims Supervisor and Suit Adjuster*

- Supervised general liability, product liability, auto liability, employer's liability and commercial property cases from inception to conclusion. Reviewed policies in conjunction with claims and authorized and/or denied coverage.  Authorized large settlements and supervised a staff of adjusters.
- Managed litigation unit and supervised cases on court docket including management of outside counsel and the negotiation and supervision of fees.
- Served as arbitrator to resolve inter-company disputes.

**Liberty Mutual Insurance Co.,** Forest Hills, New York                      1973 - 1975

*Field Claims Representative and Suit Adjuster*

- Investigated general liability, product liability and auto liability claims.
- Negotiated and settled litigated and non-litigated claims.
- Served as company's representative in Civil Court, Queens County.

## EDUCATION

Fairleigh Dickinson University
Teaneck, New Jersey
Bachelor of Science Degree in Business Management (May 1973)

## PROFESSIONAL DESIGNATIONS

Associate in Risk Management
Insurance Institute of America

## PUBLICATIONS

Resolving The Long Tail Claim, February 2000, Mealey's Conference Handouts
Duty To Defend: Getting What You Pay For, Co-Author, February 2003, Risk Management Magazine.

FILED

2001 JUN -1 PM 1:51

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO., et al.,**[1] | ) | **Case No. 01-01139 (JJF)** |
| | ) | **(Jointly Administered)** |
| | ) | |
| **Debtors.** | ) | |

Δ π EXHIBIT __3__
Deponent _Posner_
Date _5-6-07_ Rptr. _LL_
WWW.DEPOBOOK.COM

### AFFIDAVIT UNDER 11 U.S.C. 327(e)

STATE OF _Florida_ )
                                       ) ss:
COUNTY OF _Broward_ )

_Jeffrey Posner_ , being duly sworn, upon his/her oath, deposes and says:

1.    I am ~~a partner~~ *President* of _JM Posner Inc_ , located at

_8730 N.W. 54st Coal Gans Fl 33067_ (the "Firm").

2.    The Debtors have requested that the Firm provide ~~legal~~ *Insurance or Risk Management* services to the

Debtors, and the Firm has consented to provide such services.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

3.     The Firm may have performed services in the past and may perform services in the future, in matters unrelated to these chapter 11 cases, for persons that are parties-in-interest in the Debtors' chapter 11 cases.

4.     As part of its customary practice, the Firm is retained in cases, proceedings and transactions involving many different parties, some of whom may represent or be employed by the Debtors, claimants and parties-in-interest in these chapter 11 cases. The Firm does not perform services for any such person in connection with these chapter 11 cases, or have any relationship with any such person, their attorneys or accountants that would be adverse to the Debtors or their estates.

5.     Neither I nor any principal of or professional employed by the Firm has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principals and regular employees of the Firm.

6.     Neither I nor any principal of or professional employed by the Firm, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates.

7.     The Debtors owe the Firm $ _0_ for prepetition services.

8.     The Firm is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Affidavit.

Executed on [ May 11 ], 2001.

Sworn to and subscribed before me
this 11th day of May , 2001


Notary Public
My Commission expires: _____

Chuny Wong
Commission # CC 944089
Expires July 25, 2004
Bonded Thru
Atlantic Bonding Co., Inc.



## SETTLEMENT AGREEMENT

This Agreement ("Agreement") is made and entered into by and between, on the one hand, W. R. GRACE & CO.-CONN. and W. R. GRACE & CO. and, on the other hand, COMMERCIAL UNION INSURANCE COMPANY as successor in interest to EMPLOYERS' COMMERCIAL UNION INSURANCE COMPANY OF AMERICA and EMPLOYERS' COMMERCIAL UNION INSURANCE COMPANY, and AMERICAN EMPLOYERS' INSURANCE COMPANY.

### RECITALS

WHEREAS, the Party Insurers issued or are alleged to have issued certain liability insurance policies to Grace, which Policies are more particularly described below; and

WHEREAS, Grace has been, is and expects to be in the future, a defendant in numerous Asbestos-Related Claims and lawsuits asserted by or on behalf of persons alleging (1) personal injury, bodily injury, sickness, disease and/or death as a result of exposure to asbestos, and (2) damages for injury or damage to buildings and property allegedly caused by asbestos or asbestos-containing materials; and

WHEREAS, certain disputes and differences have arisen between Grace and the Party Insurers as to their respective rights and obligations as to the administration, defense, payment and disposition of the Asbestos-Related Claims, and Grace and the Party Insurers wish to settle those disputes and differences in accordance with the terms of this Agreement; and

WHEREAS, one or more of the Party Insurers are parties to various actions involving claims by Grace or others against one or

1

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

more of the Party Insurers relating to Asbestos-Related Claims; and

WHEREAS, Grace and the Party Insurers have entered into this Agreement solely to resolve their disputes concerning coverage for Products Claims and Asbestos-Related Claims, to afford the Party Insurers final and complete repose with respect to their alleged obligations under or by virtue of the Policies for Products Claims and Asbestos-Related Claims, and to avoid, among other things, the uncertainty and expense attendant to such disputes and the related litigation; and

WHEREAS, by virtue of this Agreement, neither Grace nor the Party Insurers admit or concede in any way the validity of the positions or arguments advanced by the other or by any third party;

NOW, THEREFORE, in consideration of the mutual covenants and subject to the terms and conditions herein contained, Grace and the Party Insurers hereby agree as follows:

## I. DEFINITIONS

1.0 <u>Agreement</u> shall mean this settlement agreement entered into by Grace and the Party Insurers.

1.1 <u>Grace</u> means W. R. Grace & Co.-Conn. and/or W. R. Grace & Co., their respective predecessors-in-interest and successors-in-interest.

1.2 <u>Indemnitor</u> means W. R. Grace & Co. and W. R. Grace & Co.-Conn. and their respective successors-in-interest.

1.3 <u>Party Insurers</u> means Commercial Union Insurance Company as successor in interest to Employers' Commercial Union Insurance

2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

Company of America and Employers' Commercial Union Insurance Company, and American Employers' Insurance Company and their respective predecessors-in-interest, and successors-in-interest, divisions, subdivisions, departments, subsidiaries, parents, agents, employees, officers, affiliates, assigns and companies or corporations owned, controlled or under common control or ownership with the Party Insurers.

1.4   Party and/or Parties shall mean Grace and the Party Insurers.

1.5   Policy or Policies means the insurance policies, issued or alleged by Grace to have been issued, to or for the benefit of Grace by the Party Insurers, which policies are listed in Exhibit "A". The Party Insurers represent and warrant that they are unaware of any other contracts of insurance they issued or are alleged to have issued to Grace except those listed in Exhibit "A". Grace represents and warrants that it is unaware of having purchased any comprehensive general liability insurance from the Party Insurers except those policies listed in Exhibit "A". To the extent the World Auxiliary Insurance Corporation could be considered contained within the definition of "Party Insurers", which the Party Insurers specifically deny, Grace's representation and warranty specifically excludes any and all contracts of insurance issued by the World Auxiliary Insurance Corporation.

1.6   Aggregate Product Limits means the total aggregate limits of liability contained within the Policies of the Party Insurers for all personal injury claims, bodily injury claims, property damage claims and advertising liability claims included within the "products – completed operations hazards" definitions. For

3

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

purposes of this Agreement, any claim for occupational disease shall be included within the definition of Aggregate Product Limits.

1.7 <u>Bodily Injury Claim Plaintiff</u> means any entity, person, assignee, executor or administrator who has, at any time, threatened, asserted or filed any claim, right, demand, lawsuit, cause of action or proceeding arising out of personal injury, bodily injury, employer's liability or advertising liability involving any entity, person, assignee, executor or administrator who does so in the future.

1.8 <u>Building Damage Claim Plaintiff</u> means any entity, person, assignee, executor or administrator who has, at any time, threatened, asserted or filed any claim, right, demand, lawsuit, cause of action or proceeding arising out of alleged property damage or advertising liability involving or relating to asbestos in buildings or any entity, person, assignee, executor or administrator who does so in the future. By agreeing to this term, the Party Insurers seek to resolve their dispute with Grace and do not acknowledge that any Asbestos-Related Claims arising from buildings, other structures or property involve property damage.

1.9 <u>Asbestos-Related Claim</u> means a claim brought by a Bodily Injury Claim Plaintiff or a Building Damage Claim Plaintiff for advertising liability, personal injury, bodily injury, employer's liability, sickness or disease and/or death at any time as a result of exposure or alleged exposure to asbestos or asbestos-containing products and/or a claim arising from asbestos- containing products in buildings, other structures, or property and/or a claim arising

4

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

from injury or damage to buildings, other structures or property caused or allegedly caused by asbestos or asbestos-containing products. "Asbestos-Related Claim" shall also include any claim for unfair competition and/or invasion of right or privacy either committed or alleged to have been committed in any publication or video or audio transmission and arising out of Grace's advertising activities concerning the mining, distribution and/or sale of asbestos and asbestos-containing products. "Asbestos-Related Claim" shall also include any claim for conspiracy, concert of action, intentional tort, fraud, misrepresentation, gross negligence and/or punitive damages, fines or penalties arising from the mining, distribution, and/or sale of asbestos and asbestos-containing products.

1.10 <u>Products Claims</u> means all claims which allege personal injury, bodily injury, property damage or advertising liability that fall within the Aggregate Product Limits in each of the Policies. "Products Claims" shall also include any claim for extra-contractual damages, whether statutory or common law, asserted by Grace and/or its assignees and/or judgment creditor/garnishors that alleges misconduct, bad faith, unfair claims practices, violations of an insurance code or other statutory scheme, or any other alleged wrongdoing of the Party Insurers in connection with or relating in any respect to the performance by the Party Insurers of their alleged obligations under or by virtue of any of the Policies concerning any claim which alleges personal injury, bodily injury, property damage or

5

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000005

advertising liability that falls within the Aggregate Product Limits.

1.11 <u>Effective Date</u> means the date both Grace and the Party Insurers exchange executed Agreements.

1.12 <u>Coverage Actions</u> shall mean those actions involving claims between Grace and the Party Insurers relating to insurance coverage for Products Claims and/or Asbestos-Related Claims. These actions include, but are not limited to:

(1) <u>Maryland Casualty Company v. W. R. Grace & Co., et al.</u>, No. 88 Civ. 2613 (SWK), filed in the United States District Court for the Southern District of New York;

(2) <u>Moore, ex rel. State of Mississippi v. The Flintkote Co., et al. v. Maryland Casualty Co., et al.</u>, No. 89-5138(2), filed in the Circuit Court of Jackson County Mississippi;

(3) <u>Independent School District 197, et al. and W. R. Grace & Co.-Conn. v. Accident & Casualty Insurance of Winterthur, et al.</u>, No. 19-C4-88-007950, filed in the District Court of the County of Dakota, Minnesota;

(4) <u>W.R. Grace & Co.-Conn. v. Admiral Insurance Co., et al.</u>, No. 91-048251, filed in the District Court of Harris County, Texas;

(5) <u>Dayton Independent School District, et al. v. United States Mineral Products Co. and W. R. Grace & Co.-Conn. v. Admiral Insurance Co., et al.</u>, No. B-87-00507, filed in the United States District Court for the Eastern District of Texas, Beaumont;

(6) <u>W. R. Grace & Co.-Conn. v. Admiral Insurance Company, et al.</u>, No. BC 050432, filed in the Superior Court of the County of Los Angeles, California; and

(7) <u>American Employers Insurance Company, et al. v. W. R. Grace & Co.-Conn., et al.</u>, No. 6241-92, filed in the Supreme Court of the State of New York, County of New York.

1.13 <u>Confidential Documents and Information</u> means those documents, transcripts, writings, photographs and that information

6

**CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER**

so designated pursuant to any case management order or protective order entered, stipulated or agreed to in any of the Coverage Actions. Documents may be designated as "Confidential Documents and Information" by the Parties after execution of this Agreement by identifying such document, transcript, writing, photograph or information in writing to a Party and by designating that such document, transcript, writing, photograph and/or information is a "Confidential Document and Information".

## II.  SCOPE OF AGREEMENT

2.0  It is the intention of the Parties to resolve, terminate and cancel any and all obligations, alleged or actual, past, present, future, known or unknown, that the Party Insurers had or may have had under the Policies with respect to Products Claims and Asbestos-Related Claims.

2.1  This Agreement is the product of informed negotiations between the Parties assisted by counsel and involves compromises of previously stated legal positions.  This Agreement does not necessarily reflect the view of any of the Parties as to rights and obligations with regard to matters outside of this Agreement.  For all other purposes and in all other matters, each Party reserves all previously held positions and all other rights and privileges.

2.2 This Agreement is intended to confer rights, benefits and obligations only upon Grace and the Party Insurers, and is not intended to confer any right, benefit or obligation upon any other person.  No person other than Grace or the Party Insurers shall

7

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

have any legally enforceable right under this Agreement.

2.3  The Party Insurers and Grace request all courts to take notice of the underlying scope and purpose of this Agreement and to accord the Parties and their representatives full privilege and protection with respect to the disclosure of their actions, statements, documents, papers and other materials relating to this Agreement, including its development and implementation.

2.4  This Agreement is the entire agreement between Grace and the Party Insurers relating to coverage for Products Claims and Asbestos-Related Claims under the Policies.  All antecedent or contemporaneous extrinsic representations, warranties or collateral provisions concerning the negotiation and preparation of this Agreement are intended to be discharged and nullified.

2.5  This Agreement is not a contract of insurance and the Parties agree that it shall not be interpreted according to the rules of construction applicable to insurance contracts.  In particular, with respect to interpretation of this Agreement, the Parties waive any benefits from the principles of contra proferentum or other principles which would result in the interpretation of any ambiguities against a Party.  No Party shall be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement shall be construed against any Party on the basis of the Party's identity as an insurance company or as the drafter of any part of this Agreement.

2.6  Grace hereby represents and warrants to the Party

8

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

Insurers as follows:

(a)   Grace is a corporation, duly organized, validly existing and in good standing under the laws of its jurisdictions of incorporation with full corporate power and authority to enter into this Agreement and perform its obligations hereunder.

(b)   The execution and delivery of this Agreement by Grace and the performance by Grace of its obligations hereunder have been duly authorized by the Board of Directors of Grace and by all other necessary corporate action of Grace.

(c)   This Agreement has been duly executed and validly delivered by Grace and constitutes a valid and binding obligation of Grace enforceable against Grace in accordance with its terms.

(d)   The execution and delivery of this Agreement by Grace and the performance by Grace of its obligations hereunder will not violate any provision of its charter or by-laws or any consent or order of any governmental authority by which it may be bound.

(e)   Grace has read this entire Agreement and knows the contents hereof and that the terms hereof are contractual and not in any way a recital; Grace has executed this Agreement as its own free act.

(f)   In making this Agreement, Grace has obtained the advice of legal counsel.

2.7   The Party Insurers, jointly and severally, hereby represent and warrant to Grace as follows:

(a)   Each of the Party Insurers is a corporation, duly

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000009

organized, validly existing and in good standing under the laws of its jurisdiction of incorporation with full corporate power and authority to enter into this Agreement and perform its obligations hereunder.

(b)   The execution and delivery of this Agreement by the Party Insurers and the performance by the Party Insurers of their obligations hereunder have been duly authorized by all persons with necessary authority to act on behalf of the Party Insurers.

(c)   This Agreement has been duly executed and validly delivered by each of the Party Insurers and constitutes a valid and binding obligation of each of the Party Insurers enforceable against the Party Insurers in accordance with its terms.

(d)   The execution and delivery of this Agreement by each of the Party Insurers and the performance by the Party Insurers of their respective obligations hereunder will not violate any provisions of the charter or by-laws of any of the Party Insurers or any consent or order of any governmental authority by which any of the Party Insurers may be bound.

(e)   Each of the Party Insurers has read this entire Agreement and knows the contents hereof and that the terms hereof are contractual and not in any way a recital; each of the Party Insurers has executed this Agreement as its own free act.

(f)   In making this Agreement, each of the Party Insurers has obtained the advice of legal counsel.

2.8  Each Party agrees as to its own breach of any warranty expressly stated in this Agreement to indemnify and hold harmless

10

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000010

the other Parties.

### III.   CANCELLATION OF COVERAGE; SETTLEMENT PAYMENTS

3.0   Upon the Effective Date of this Agreement, Grace hereby agrees to the cancellation of all insurance coverage for Products Claims and Asbestos-Related Claims under the Policies in exchange for payments by the Party Insurers to Grace in the aggregate amount of Eighty-One Million, Two Hundred Thousand Dollars ($81,200,000) as provided in Section 3.1.

3.1   (a)   Within three (3) business days after the Effective Date, the Party Insurers shall make a settlement payment to Grace in the amount of Twenty-Five Million Dollars ($25,000,000).

(b)   Within three (3) business days after the anniversary of the Effective Date in each year through 1999, commencing in 1994 and ending in 1999, the Party Insurers shall make a settlement payment to Grace, as follows:

| | | |
|---|---|---|
| (i) | 1994 - | Ten Million Dollars ($10,000,000) |
| (ii) | 1995 - | Ten Million Dollars ($10,000,000) |
| (iii) | 1996 - | Nine Million Fifty Thousand Dollars ($ 9,050,000) |
| (iv) | 1997 - | Nine Million Fifty Thousand Dollars ($ 9,050,000) |
| (v) | 1998 - | Nine Million Fifty Thousand Dollars ($ 9,050,000) |
| (vi) | 1999 - | Nine Million Fifty Thousand Dollars ($ 9,050,000) |

11

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000011

(c)  In the event that the anniversary of the Effective Date falls on a holiday or weekend day, the anniversary date and all obligations of payment attendant thereto shall be deemed to fall on the next business day.  If the Party Insurers fail to make all or any portion of any payment to Grace provided for in this Section on or before the due date thereof, the Party Insurers shall pay interest to Grace on the unpaid amount of that particular payment for the period commencing on the date such amount was due and ending on the actual date of payment at a rate of interest equal to five percentage points over the rate of interest of the then prevailing prime rate as announced by the main office of Citibank N.A. in New York, New York.

3.2  All settlement payments to Grace under Section 3.1 shall be made by wire transfer to Grace's account at ~~Morgan Guaranty Trust Company~~ *Chemical Bank* (ABA Number ~~021000238~~ *021000128*, Account Number ~~090-04-901,~~ *015001257* further identified as W. R. Grace & Co. account) or to such other account as may be specified by Grace in a written notice to the Party Insurers in accordance with Section 9.2.

3.3  The Party Insurers shall not have the right to seek contribution or indemnity from other insurers of Grace for settlement payments made to Grace under Section 3.1.  The Parties recognize that various excess insurers other than the Party Insurers have available remaining aggregate limits for contracts of insurance which may underlie the Policies.  Nothing in this section is intended to preclude or limit in any way the Party Insurers' rights to pursue recovery from their reinsurers, if any, for some

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000012

or all settlement payments made to Grace under Section 3.1.

3.4 The Parties also acknowledge that Grace's acceptance of the payments provided in Section 3.1 is in full satisfaction of the Party Insurers' obligations with respect to Products Claims and Asbestos-Related Claims under the Policies, notwithstanding the amount of the Aggregate Product Limits for all of the Policies.

3.5 It is the intention of the Parties that such settlement payments by the Party Insurers shall not be construed as constituting a set-off for other insurers under contracts of insurance issued by such other insurers which may underlie the Policies.

3.6 The liability of the Party Insurers for the payments to be made to Grace pursuant to this Section shall be joint and several.

## IV.  DISMISSALS AND RELEASES

4.0 Concurrently with the exchange of executed Agreements by all Parties, Grace shall deliver to the Party Insurers executed dismissals with prejudice of the claims brought by Grace and shall use all reasonable efforts to obtain executed dismissals with prejudice of the claims brought by Grace's assignees and/or judgment creditor/garnishors in the Coverage Actions with respect to any and all allegations or claims against the Party Insurers for declaratory relief, damage or other relief relating to the application of insurance to the investigation, settlement, defense or indemnification of claims set forth in the various applicable pleadings in the Coverage Actions.  Said dismissals with prejudice

13

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000013

shall include all claims by Grace and/or its assignees and/or judgment creditor/garnishors for extra-contractual damages including, but not limited to, liens of garnishors, bad faith tort claims, and statutory claims for damages, punitive or actual, for the alleged failure of the Party Insurers to defend, settle or handle any Products Claim and/or Asbestos-Related Claim under the Policies. The Party Insurers will file and serve said dismissals with prejudice. Said dismissals with prejudice shall indicate that the Parties will bear their own attorneys' fees and costs incurred prior to the filing and service of said dismissals with prejudice in connection with the Coverage Actions. Grace shall file all documents necessary to satisfy and cancel any and all judgments of record against the Party Insurers, release all supersedeas bonds and dismiss all appeals related to the Coverage Actions.

4.1   Concurrently with the exchange of executed Agreements by all Parties, the Party Insurers shall deliver to Grace executed dismissals with prejudice of the applicable Coverage Actions with respect to any and all allegations or claims against Grace or the other insurers in said Coverage Actions or for declaratory relief, damage or other relief. Grace will file and serve said dismissals with prejudice. Said dismissals with prejudice shall indicate that the Parties will bear their own attorney's fees and costs incurred prior to the filing and service of said dismissals with prejudice in connection with the Coverage Actions. The Party Insurers shall also take all necessary steps to dismiss all appeals related to the Coverage Actions.

14

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

4.2  Except for the obligations set forth in this Agreement, Grace releases and forever discharges the Party Insurers of and from any and all actions, causes of action in law or in equity, suits, debts, liens, contracts, indemnity and defense obligations, agreements, promises, liabilities, claims, demands, losses, costs or expenses of any kind or nature, known or unknown, fixed or contingent, direct or indirect, which Grace now has or may have against the Party Insurers in any way relating to Products Claims and/or Asbestos-Related Claims under the Policies.

4.3  Except as to the obligations set forth in this Agreement, the Party Insurers hereby release and forever discharge Grace of and from any and all actions, causes of action in law or in equity, suits, debts, liens, contracts, indemnity and defense obligations, agreements, promises, liabilities, claims, demands, losses, costs or expenses of any kind or nature, known or unknown, fixed or contingent, direct or indirect, which the Party Insurers now have or may have against Grace in any way relating to Products Claims and/or Asbestos-Related Claims under the Policies.

## V.   INDEMNIFICATION

5.0  The Indemnitor shall indemnify and hold the Party Insurers harmless at all times from and after the Effective Date from and against any and all liability, loss, cost or expense whenever arising   (except as otherwise provided in Section 5.1(a)(ii)) imposed upon or incurred by any Party Insurer as a result of any known or unknown, past, pending, future, or

15

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000015

threatened claims, rights, demands, lawsuits, causes of action or proceedings that are asserted, initiated or continued by Grace or any person or entity not a party to this Agreement against such Party Insurer in any way relating to Products Claims and/or Asbestos-Related Claims under the Policies.

5.1  (a)(i)  After receipt by a Party Insurer of notice of any complaint or the commencement or continuation of any action or proceeding with respect to which indemnification is being sought hereunder, such Party Insurer shall notify Grace in accordance with Section 9.2 and as soon as practicable in writing of such complaint or of the commencement or continuation of such action or proceeding and shall thereafter tender the defense thereof to Grace.  Should Grace fail to obtain executed dismissals with prejudice of the claims brought by Grace's assignees and/or judgment-creditor/garnishors in any Coverage Action, Grace is deemed to have notice of the continuation of the Coverage Action and a tender of the defense by the Party Insurers of the Coverage Action.

(ii) Any failure by such Party Insurer to so notify Grace or to so tender the defense of such action or proceeding will relieve the Indemnitor from any indemnification obligation with respect thereto.

(b)  After Grace receives any notice pursuant to Section 5.1(a)(i),  the Indemnitor shall promptly determine whether it will respond to that notice and assume the

16

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000016

defense of a Party Insurer named in a complaint or the commencement or continuation of any action.

(c)   (i)   If the Indemnitor so elects,  the Indemnitor will assume the defense of such action or proceeding. The Indemnitor and the Party Insurers shall mutually agree upon a choice of counsel to represent the Party Insurers (which  may  not  include  counsel  presently representing either Grace or the Indemnitor),  and  the Indemnitor shall assume  the payment of the fees and disbursements of  such  counsel.   The Indemnitor will consult with and allow the Party Insurers complete control over the positions asserted in the interpretation of the language of the Policies, and will consult with the Party Insurers in the defense of any notice of any complaint  or  the  defense  of  the  commencement  or continuation of any action.

(ii)   The Indemnitor and the Party Insurers will consult to the extent practicable about all decisions to be made, either procedural or substantive, by counsel retained on behalf of the Party Insurers pertaining in any  material  manner  to  the  Party  Insurers.   The Indemnitor will have such time as is practicable to review each matter and to present its views to the Party Insurers.   The Party Insurers will make reasonable efforts to accommodate the litigation suggestions of the Indemnitor before directing counsel to take any action.

17

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000017

In the event the Parties are unable to agree, the final decision with respect to the defense of the Party Insurers, either procedural or substantive, with the exception of settlement or compromise of the action, will rest with the Party Insurers. The Indemnitor will not dispute any decision of the Party Insurers that is lawful and that is reasonably made within the discretion of the Party Insurers.

(iii) The Indemnitor shall keep the involved Party Insurer apprised in a timely manner of all significant developments in such defense and shall provide the Party Insurer, at the Party Insurer's request, status reports that advise the Party Insurer of such developments.

(iv) Any settlement or compromise made by the Indemnitor on behalf of any Party Insurer shall not require that Party Insurer's approval, but shall provide that it is not an admission of liability by the Party Insurer, is without precedent beyond the scope of the matters addressed by such compromise or settlement. The Indemnitor shall give notice and provide reasonable and timely disclosure as soon as is practicable to the Party Insurers of any proposed settlement or compromise. The Party Insurers shall have such time as is practicable to review the proposed settlement or compromise and to present their views to the Indemnitor. The Indemnitor will make reasonable efforts to accommodate the Party

18

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

Insurers before agreeing to any settlement or compromise. The Party Insurers will not dispute any decision that was lawful and that was reasonably made within the discretion of the Indemnitor. The Indemnitor shall use best efforts to keep such settlement or compromise confidential.

(v)   In any action or proceeding in which the Indemnitor assumes the defense of a Party Insurer, such Party Insurer will have the right to participate in such litigation and to retain its own counsel at such Party Insurer's own expense.

(d)  (i)   If the Indemnitor fails, or declines, to assume the defense of the action or proceeding in a timely manner, then such Party Insurer may employ and exclusively direct counsel to represent or defend it in any such action or proceeding, and the Indemnitor will pay the reasonable fees and disbursements of such counsel; provided, however, that the Indemnitor shall not be required to pay the fees and disbursements of more than one law firm for all Party Insurers in any jurisdiction in any single action or proceeding.

(ii) If the Party Insurers settle any such claims without previously obtaining the Indemnitor's consent, which consent shall not be unreasonably withheld, then the Indemnitor shall be relieved of any obligation to indemnify the Party Insurers for such settlement. The Party Insurers shall use best efforts to keep such

19

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

settlement or compromise confidential.

(e)  Nothing herein shall constitute any waiver of each Party Insurer's attorney-client privilege, which privilege shall extend only to such counsel retained to represent the particular Party Insurer and shall not extend to the Indemnitor or its counsel unless specifically waived by the Party Insurer in writing with reference to a particular attorney-client communication.

5.2  The Party Insurers and the Indemnitor shall cooperate reasonably with each other to protect their respective interests with respect to claims for which the Indemnitor may be liable for indemnification under Article V.

5.3  If the Indemnitor has assumed the defense of any action or proceeding, the Party Insurers shall comply in a timely manner with the Indemnitor's appointed counsel's requests for access to documentation or information requested by the Indemnitor's appointed counsel for purposes of defense.  The Indemnitor shall cooperate with the Party Insurers to avoid taking any positions in such litigation which are adverse to the general business interests of the Party Insurers.

5.4  If the Indemnitor has failed or declined to assume the defense of any action or proceeding, the Indemnitor shall comply in a timely manner with any Party Insurer's requests for access to documentation or information requested by that Party Insurer for purposes of such defense.

20

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000020

## VI.   RESERVATION OF RIGHTS

6.0  Nothing in this Agreement, nor in any aspect of its implementation or negotiation, shall be construed or asserted by any person as admissible or relevant in any case or proceeding as giving rise to or creating any waiver or estoppel of the Party Insurers or Grace with respect to any of their rights under any Policies, or as constituting or evidencing either an interpretation by the Party Insurers or Grace of any portion of any Policies or a course of performance (or non-performance) thereunder.   Except as otherwise provided under this Agreement, all of the Party Insurers' and Grace's rights, duties and privileges under the provisions, exclusions, conditions, endorsements and other terms of the Policies issued to Grace are hereby preserved.

6.1  No Party may assign this Agreement or any of its rights, benefits or obligations hereunder without the prior written consent of the other Parties hereto, which consent shall not be unreasonably withheld.  All rights of action for any breach of this Agreement are hereby reserved to Grace and the Party Insurers.  All actions taken and statements made by the Parties or their representatives relating to their participation in this Agreement, including its development and implementation, are taken and made in the context of privileged settlement negotiations, shall be without prejudice or value as precedent and shall not be taken as the standard by which other matters may be judged or against which other matters may be compared.  This Agreement is the product of arm's length negotiations.   It is the compromise of disputed

21

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000021

claims, and it is not intended to be, nor shall it be construed as, an admission of coverage or a policy interpretation or evidence of any Party's conduct or response to claims of any kind, including by way of example and without limitation, Asbestos-Related Claims. Neither this Agreement nor any statement made by any Party in negotiating, executing or performing this Agreement shall be used in court, or formal or informal dispute resolution proceedings, or otherwise, to create or interpret any obligation by any Party under any insurance policy, including but not limited to the Policies. The Party Insurers do not admit coverage by entering into this Agreement and enter into it for business reasons and in the spirit of compromise.

6.2 Nothing in this Agreement is intended to create any rights in any person or entity as to any Policy or alleged policy or certificate of insurance. Neither this Agreement nor any part hereof may be used as evidence or in any other manner in any litigation, dispute resolution or other proceeding, to create, prove, or interpret the respective rights, duties or obligations of Grace and the Party Insurers or any of them. This restriction shall not apply to any litigation or proceeding brought to enforce or defend the terms of this Agreement. This Agreement shall be deemed to fall within the protection afforded compromises and offers to compromise by Rule 408 of the Federal Rules of Evidence and similar state law provisions.

6.3 The cancellation of insurance coverage for Products Claims and Asbestos-Related Claims under the Policies shall not

22

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000022

affect the alleged rights and alleged obligations of Grace and the Party Insurers, if any, under the Policies with respect to insurance coverage for other claims that do not constitute Products Claims or Asbestos-Related Claims.

6.4  Neither the terms of this Agreement nor its negotiation, execution, or any action in performance of this Agreement shall be invoked by any of the Parties hereto or their attorneys or agents in any proceeding for the purpose of attempting to establish or prove the acceptance by the Party Insurers or Grace of any particular interpretation of any insurance policy with respect to any claim.

## VII.  CONFIDENTIALITY

7.0  This Agreement and all matters relating to its existence, terms, negotiations and implementation are confidential.  This Agreement and the implementation of its terms are to be disclosed pursuant only to an order of court or by written agreement by all the Parties except that:

(a)  the Agreement may be disclosed to the reinsurers of the Party Insurers provided that the entity to which disclosure is made is advised that the disclosure is subject to this confidentiality provision and agrees to be bound;

(b)  the Agreement may be disclosed in any action to enforce its terms;

(c)  to the extent necessary to obtain insurance coverage from an entity other than a Party Insurer, the Agreement may

23

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000023

be disclosed, provided that the entity to which disclosure is made is advised that the disclosure is subject to this confidentiality provision and agrees to be bound;

(d) any Party may make copies of this Agreement available to its accountants, to its counsel, to its lenders or underwriters and to counsel for such lenders or underwriters, provided, that the entity to which disclosure is made is advised that the disclosure is subject to this confidentiality provision and agrees to be bound; and

(e) any Party may make reference to or describe this Agreement to the extent that such disclosure is required to comply with any government, regulatory or accounting/auditing requirement applicable to a Party, but shall not make available a copy of the Agreement nor shall the reporting Party identify any other Parties to this Agreement.  In the event that either a governmental agency or any other entity requests a copy of the Agreement or requests the identity of the other Parties to the Agreement, the Party to whom the request is made shall, prior to disclosure, and as soon as practicable, notify all other Parties to permit a Party(ies) the opportunity to participate in opposing such request.  The Parties must agree upon the wording of any press release or governmental or public filing relating to this Agreement.  The Parties shall limit any responses to press or public inquiry to the information contained within the above-mentioned press release.

24

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

7.1    (a)    Except as expressly set forth in Section 7.0, in the event that any entity not a Party shall seek disclosure of this Agreement from any Party, the Party from whom disclosure is sought shall notify the other Parties. The Parties shall confer and, if all Parties consent, the Parties may provide this Agreement to an entity not a Party under such terms and conditions as the Parties shall designate.

(b)    Where one or more Parties object to disclosure of the Agreement to the entity not a Party, the objecting Party shall be responsible for taking all necessary actions to prevent disclosure of this Agreement to the entity not a Party.    The costs associated with the prevention of disclosure of this Agreement shall be borne equally by the Parties and each Party shall take such steps as are necessary to aid the objecting Party in attempting to prevent disclosure of this Agreement to an entity not a Party.

7.2    Except as expressly set forth in Section 7.0, in any action in which a Party has been ordered to produce this Agreement, related communications and drafts, the producing Party shall seek a protective order limiting the use of this Agreement, related communications and drafts, to the particular purpose of the pending litigation in which it is produced and take all steps necessary to bar the disclosure to any entity not a Party.

7.3    Except as expressly set forth in Section 7.0, any Party which has produced Confidential Documents and Information may require the other Parties to return all specifically designated

25

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000025

Confidential Documents and Information in their possession, as well as in the possession of their counsel, retained experts, and/or consultants, including all copies. In lieu of returning all·such Confidential Documents and Information, the Party from whom the Confidential Documents and Information has been requested may certify in writing that all such requested Confidential Documents and Information have been destroyed.

7.4  The provisions of this Article VII shall also apply to the files, records, papers and documents generated in connection with any dispute resolution pursuant to Section 8.0.

## VIII.  ARBITRATION

8.0  The Parties agree to resolve any dispute which arises regarding the terms of this Agreement or the implementation thereof (a "Dispute") by way of binding arbitration in accordance with the Center for Public Resources Rules for Non-Administered Arbitration of Business Disputes (the "Rules") and the provisions of this Section.

(a)  In the event any Dispute arises that the Parties are unable to resolve by agreement, any Party to such Dispute shall have the right to commence binding arbitration of such Dispute under this Section 8.0 by sending written notice to the other Parties in accordance with Section 9.2 demanding such arbitration. Such notice shall briefly describe the Dispute as well as the relief sought by the Party demanding arbitration.  Promptly following receipt of any such notice, the Parties shall attempt to

26

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000026

agree upon the selection of an arbitrator (the "Arbitrator") to resolve such Dispute.   If the Parties have not agreed upon the selection of the Arbitrator by the fifteenth day following delivery of the notice demanding arbitration, then any Party may request the Center for Public Resources to select the Arbitrator, provided that any Arbitrator selected by the Center for Public Resources shall be conclusive and binding on the Parties.

(b)   All arbitrations under this Section 8.0 shall be conducted in accordance with the Rules and the Parties shall faithfully abide by the Rules and abide by and perform any award rendered by the Arbitrator.   All such arbitrations shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1-16 and judgment upon the award may be entered by any court having jurisdiction thereof.   Any such arbitration shall be conducted in New York, New York.

## IX.   MISCELLANEOUS PROVISIONS

9.0   This Agreement shall become binding upon  each Party from and after the Effective Date.

9.1  (a)   Grace  acknowledges  that,  notwithstanding  the cancellation of coverage under the Policies for Products Claims and Asbestos-Related Claims pursuant to this Agreement, the Party Insurers may require information concerning Products Claims and Asbestos-Related Claims for purposes of establishing their rights with respect to their reinsurers. Grace shall cooperate reasonably with the Party Insurers for such purposes by providing to the Party

27

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000027

Insurers on a continuing basis non-privileged information about the progress and resolution of the litigation of Products Claims and Asbestos-Related Claims as well as access to non-privileged documentation with respect thereto, including but not limited to the right to audit individual claim files at a mutually agreed upon location.

(b)   From and after the Effective Date, Grace agrees to obtain, if reasonably possible, and make available to the Party Insurers, information and documentation concerning:

(i)   exposure to asbestos and asbestos-containing products and diagnosis, death, first claim and filing of all Asbestos-Related Claims against Grace of each Bodily Injury Claim Plaintiff;

(ii)   installation of asbestos-containing materials in buildings by Building   Damage Claim Plaintiffs with Asbestos-Related Claims against Grace as well as knowledge of the presence of asbestos products and/or the existence of asbestos requiring remediation and/or encapsulation in buildings owned, leased or occupied by Building Damage Claim Plaintiffs with Asbestos-Related Claims against Grace; and

(iii) other Products Claims.

(c)   Upon reasonable notice, Grace shall allow the Party Insurers to review all books and records maintained by Grace and/or those entities under its control to ascertain and establish the amount of payment of defense costs and costs of judgments and settlements of Products Claims and Asbestos-Related Claims.

28

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000028

9.2  All notifications, notices, bills, demands, payments, accounting or other communications which any Party desires or is required to give to another Party, shall be given in writing and shall be deemed to have been given as if hand delivered, sent by Certified U.S. Mail, Federal Express or overnight equivalent or by courier service, addressed to the Party or Parties at the address set forth below or such other address as a Party may designate in writing from time to time by notice to the other Parties in accordance with this Section:

If to Grace:

> W.R. Grace & Co.
> One Town Center Road
> Boca Raton, Florida   33486-1010
> ATTENTION:   Secretary

If to the Party Insurers:

> Commercial Union Insurance Co.
> Executive Offices   B10-09
> One Beacon Street
> Boston, MA 02108-3100
> ATTENTION:  Mr. Joseph Dalton, AVP

9.3  This Agreement may be amended, modified, superseded or canceled, and any of the terms hereof may be waived, only by a written instrument which specifically states that it amends, modifies, supersedes or cancels this Agreement, executed by each and all of the Parties.

9.4  In the case of a waiver, the Party waiving compliance may unilaterally execute a written instrument evidencing its waiver. The failure of any Party at any time or times to require performance of any provision of this Agreement shall in no manner

29

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000029

affect the right at a later time to enforce the same. No waiver by any Party of any condition, or of any breach of any term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach, or a waiver of any other condition or of any breach of any other term, covenant or warranty.

9.5  The article headings contained in this Agreement are for convenient reference only and shall not in any way affect the meaning or interpretation of this Agreement.

9.6  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

9.7  This Agreement shall be construed in accordance with the laws of the state of New York. However, nothing contained herein shall be an admission by the Parties of the law or laws applicable to the interpretation of the Policies.

IN WITNESS WHEREOF, this Agreement has been read and signed by the duly authorized officers of the Parties, effective as of the Effective Date.

W. R. GRACE & CO.

WITNESS
Jeffrey M. Posner

One Town Center Boca Raton Fla.
ADDRESS
Date 5/7/93

By
Robert H. Beber
Senior Vice President

Date 5/7/93

30

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000030

W. R. GRACE & CO. - CONN.

By _____

WITNESS
Jeffrey M. Posner

ADDRESS
Date_____5/7/93_____

Robert H. Beber
Senior Vice President

Date_____5/7/93_____

COMMERCIAL    UNION    INSURANCE
COMPANY AS SUCCESSOR IN
INTEREST    TO    EMPLOYERS'
COMMERCIAL    UNION    INSURANCE
COMPANY    OF    AMERICA    AND
EMPLOYERS'    COMMERCIAL    UNION
INSURANCE COMPANY

WITNESS
Harvey G. Lewis

ONE BEACON ST., BOSTON MASS.
ADDRESS
Date 5/10/93

By _____
Richard A. Jordan
Senior Vice President

Date 5/10/93

AMERICAN EMPLOYERS' INSURANCE
COMPANY

WITNESS
Harvey G. Lewis

ONE BEACON ST., BOSTON, MASS.
ADDRESS
Date 5/10/93

By _____
Richard A. Jordan
Senior Vice President

Date 5/10/93

31

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000031

# SETTLEMENT AGREEMENT

# EXHIBIT "A"

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000032

### Insurance Policies Issued Or Alleged To Have Been Issued

| Insurance Company | Policy No. | Coverage Period |
|---|---|---|
| American Employers' Insurance Company | A15-2127-51 | October 20, 1962 through October 20, 1965 |
| | A15-8138-001 | January 27, 1965 through October 20, 1965 |
| | A16-8220-001 | October 20, 1965 through October 20, 1968 |
| | A16-8220-002 | October 20, 1965 through October 20, 1968 |
| | A16-8220-003 | October 20, 1968 through June 30, 1971 |
| | A16-8220-004 | October 20, 1968 through June 30, 1971 |
| Employers' Commercial Union Insurance Company (of America) | EY-8220-005 | June 30, 1971 through June 30, 1974 |
| Employers' Commercial Union Insurance Company (of America) | EY-8220-006 | June 30, 1971 through June 30, 1974 |

14323

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000033

RECEIVED

JAN 7 1997

HARVEY G. LEWIS



Δ π EXHIBIT  *16*
Deponent *Fosner*
Date *5-6-07* Rpt *CC*
WWW.DEPOBOOK.COM

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release of all claims and policy obligations with respect to Hatco-Related Environmental Claims (as defined in Section 2(C)) (this "Agreement") is entered into on this *17th* day of *December,* 1996 by and between Grace, as defined in Section 2(A), and American Employers' Insurance Company and Employers Commercial Union Insurance Company (collectively referred to herein as "Commercial Union," as defined in Section 2(B)), collectively referred to as the "Parties."

### RECITALS

WHEREAS, Commercial Union issued or is alleged to have issued various policies of umbrella or excess liability insurance to Grace (the "Policies"), as defined in Section 2(D);

WHEREAS, Grace has asserted that, pursuant to the Policies, Commercial Union is responsible to defend and indemnify Grace for the Hatco-Related Environmental Claims ("Hatco=Related Environmental Claims"), as defined in paragraph 2(C) below, arising out of the Hatco Site, located in Fords, New Jersey ("Hatco Site");

114621.1

1

**FILE COPY**

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

WHEREAS, W.R. Grace & Co. -- Conn., a Connecticut Corporation is the successor to the named insured under the Policies that owned and operated a chemical company at the Hatco Site;

WHEREAS, Commercial Union denies any obligation to pay under the Policies for the defense of or to indemnify Grace in connection with any Hatco-Related Environmental Claims arising out of the Hatco Site;

WHEREAS, the dispute between Grace and Commercial Union is the subject of a third-party complaint filed by Grace against a number of insurance companies, including Commercial Union in pending litigation entitled Hatco Corp. v. W.R. Grace & Co. -- Conn., et al., No. 89-1031, filed in the United States District Court for the District of New Jersey ("Pending Litigation");

WHEREAS, the Parties to this Agreement believe that it is in their mutual interest to reach a full and final amicable resolution of the rights and obligations of the Parties under the Policies with respect to any and all Hatco-Related Environmental Claims arising out of the Hatco Site, without admission of liability by any Party or any further adjudication of any issue of

114821.1

2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000035

fact or law, and to resolve past, present or future disputes relating to Commercial Union's obligations to Grace under the Policies with respect to any and all Hatco-Related Environmental Claims arising out of the Hatco Site.

## AGREEMENT

NOW THEREFORE, in consideration of the mutual covenants, agreements and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1.   The foregoing recitals are incorporated herein as if fully set forth in the text of this Agreement.

I.   **DEFINITIONS**

2.   (A)  As used in this Agreement, "Grace" shall mean W.R. Grace & Co. -- Conn., a Connecticut Corporation; W.R. Grace & Co., a New York Corporation, which has changed its name to Fresenius National Medical Care Holdings, Inc.; W.R. Grace & Co. -- Del., a

114821.1

3

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000036

Delaware Corporation; and their respective predecessors and successors.

(B) As used in this Agreement, "Commercial Union" shall mean Commercial Union Insurance Company, American Employers' Insurance Company, and Employers Commercial Union Insurance Company of America, and their respective predecessors and successors.

(C) "Hatco-Related Environmental Claims" shall mean the claims, whether sounding in tort, contract, equity, nuisance, invasion of privacy, trespass, negligence, strict liability or any statutory or common law cause of action of any sort, involving alleged, actual, threatened or potential pollution or contamination or exposure to smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquids or gases, petroleum, including crude oil or any fraction thereof, natural gas, natural gas liquids, liquified natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and synthetic gas), waste materials or other irritants, contaminants, or pollutants, or any form of toxic or hazardous substance or material including without limitation, any "hazardous substance" as that term is defined in 42 U.S.C. §9601 which are the subject of the Pending Litigation and arising out of or relating to

114821.1

4

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

the Hatco Site, with the exception of claims concerning the Kin-Buc Landfill and any other landfill or disposal area where waste from the Hatco Site was, or was alleged to have been transported, but otherwise including but not limited to (1) any past, present and/or future claim, demand, action, suit, arbitration or mediation demand or statutory or regulatory obligation, proceeding and/or notice of partial or total responsibility, Potentially Responsible Party ("PRP") notice made, asserted or filed, whether at law or in equity, against Grace by Hatco; (2) any past, present and/or future claim, demand, action, suit, arbitration or mediation demand or statutory or regulatory obligation, proceeding and/or notice of partial or total responsibility, Potentially Responsible Party ("PRP") notice made, asserted or filed, whether at law or in equity against Grace by any federal, state, or local authority or other environmental agencies and/or private parties for environmental liabilities, at and/or arising from and/or in connection with the Hatco Site, whether presently known, unknown, or unknowable, involving actual, alleged, threatened, or potential personal injury, bodily injury, or property damage, or injury to property or damage to natural resources, including but not limited to those provided by 42 U.S.C. §9601(6), et seq. (including but not limited to costs incurred and sums expended, or which may in the future be

114821.1

5

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

incurred or expended for investigation, removal, distribution, treatment, or containment) involving actual, alleged, threatened or potential personal injury or bodily injury that was caused at any time by conduct related to direct exposure to the Hatco Site; and (3) any third-party claim for injury to property or damage to natural resources, as defined above, involving pollution, contamination, or other injurious environmental condition that was caused at any time by conduct related to the cleanup and remediation of the Hatco Site.

(D) "Policy or "Policies" means the insurance policies, issued or alleged by Grace to have been issued to or for the benefit of Grace by Commercial Union, which are set forth below. Commercial Union represents and warrants that it is unaware of any other contracts of insurance issued or alleged to have been issued to Grace except those listed below. Grace represents and warrants that it is unaware of having purchased any comprehensive general liability insurance from Commercial Union except those Policies listed below:

| Company | Policy No. | Policy Period |
|---|---|---|
| American Employers' Insurance Company ("AEIC") | A15-2127-51 | 10/20/62 - 10/20/65 |

114821.1

6

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000039

| AEIC | A16-8220-001 | 10/20/65 - 10/20/68 |
|------|--------------|---------------------|
| AEIC | A16-8220-002 | 10/20/65 - 10/20/68 |
| AEIC | A15-8138-001 | 01/27/65 - 10/20/65 |
| AEIC | A16-8220-003 | 10/20/68 - 06/30/71 |
| AEIC | A16-8220-004 | 10/20/68 - 06/30/71 |
| Employers' Commercial Union Insurance Company (of America) | EY-8220-005 | 06/30/71 - 06/30/74 |
| Employers' Commercial Union Insurance Company (of America) | EY-8220-006 | 06/30/71 - 06/30/74 |

Commercial Union does not admit to the applicability of any or all of the Policies to any claims, including but not limited to Hatco-Related Environmental Claims presented by Grace to Commercial Union.

(E)  "Effective Date" means the last date any signatory hereto executes this Agreement.

II.  SETTLEMENT AMOUNT TO BE PAID BY COMMERCIAL UNION

3.  Commercial Union shall pay to W.R. Grace & Co. -- Conn. the sum of Twelve Million Dollars ($12,000,000) (the "Settlement Amount").  Payment of the Settlement Amount shall be made by

114821.1

7

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000040

Commercial Union to W.R. Grace & Co. -- Conn. in the following sums and on the following dates: the sum of Four Million Dollars ($4,000,000) on January 15, 1997; the sum of Six Million Dollars ($6,000,000) on January 15, 1998; and the sum of Two Million Dollars ($2,000,000) on January 15, 1999.

## III. RELEASES AND RESERVATIONS

4.    (A) Grace hereby fully and forever releases and discharges Commercial Union from any and all past, present and future actions, causes of action in law or in equity, suits, debts, liens, contracts, promises, claims, losses, liabilities, obligations, duties and responsibilities, known or unknown, fixed or contingent, direct or indirect, that have been or could have been or might be in the future asserted against Commercial Union with respect to Hatco-Related Environmental Claims arising under any and all of the Policies, from the beginning of time forward to the end of the world, as if the Policies never existed with respect to Hatco-Related Environmental Claims. A complete extinguishment and termination of the Policies with respect to Hatco-Related Environmental Claims, and any and all rights and obligations thereunder with respect to Hatco-Related Environmental Claims is

114821.1

8

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000041

hereby effected, provided, however, that the aforesaid release and discharge with respect to any claim involving actual, alleged, threatened or potential personal injury (other than damage to real estate released above) or bodily injury that was caused at any time by conduct related to direct exposure to or conditions at the Hatco Site shall be limited to the aggregate sum of Five Million ($5,000,000), which sum shall have been paid by way of settlement or judgment of said personal injury (other than damage to real estate released above) or bodily injury claims.

(B)  Grace hereby further releases and discharges Commercial Union from any and all claims for compensatory, punitive, exemplary or statutory damages relating to or based upon any allegations of bad faith, unfair claim practice, unfair trade practice or other acts or state of affairs or failure to act in connection with the investigations, handling, adjustment, litigation, defense or settlement of any and all Hatco-Related Environmental Claims arising out of or relating to the Pending Litigation under the Policies.

(C)  Grace expressly assumes the risk that the alleged costs of the Hatco-Related Environmental Claims may be greater than

114821.1

9

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000042

Grace currently realizes, that the alleged costs may increase in amount or in severity over time and that the costs and/or claims may be progressive, cumulative, unknown and/or unforeseeable, and that there may be hidden, unknown and unknowable damages or costs. Grace nevertheless waives, surrenders, and abandons any rights under the Policies with respect to such costs or liabilities in connection with Hatco-Related Environmental Claims in the Pending Litigation, except as provided in Paragraph 4 (A) herein.

(D)   Because it is the intention of the Parties that this Agreement operate as and constitute a full release and extinguishment of the Policies with respect to Hatco-Related Environmental Claims, except as provided in Paragraph 4 (A) herein, Grace expressly waives any and all rights it may have under any statute, code or ordinance which may limit or restrict the effect of a general release as to claims which the releasor does not know or suspect to exist in his favor at the time of the execution of the release.

IV.   DISMISSAL WITH PREJUDICE

5.   Grace will dismiss, with prejudice, and without costs, its prosecution of its claims against Commercial Union in the

114821.1

. 10

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000043

Pending Litigation.    Grace agrees to file a stipulation of dismissal with prejudice of the third-party complaint against Commercial Union in the Pending Litigation within thirty (30) days of the Effective Date.  Grace and Commercial Union shall bear their own past costs and attorneys' fees incurred in connection with the Pending Litigation and the filing of the stipulation of dismissal with prejudice.  The Parties further agree that they will bear their respective costs, expenses and fees, including those of their counsel, in connection with the negotiations for and execution of this Agreement.

V.    COVENANT NOT TO SUE

6.    Commercial Union hereby covenants not to sue or otherwise to seek to recover the Settlement Amount paid to Grace made under this Agreement from Hatco Corp. or any other insurance company that wrote insurance coverage for Grace, to the extent that such other parties do not sue or otherwise seek to recover from Commercial Union any monies paid to Grace or expenses incurred by such other parties for Hatco-Related Environmental Claims, provided, however, that said covenant shall not preclude the right of Commercial Union to pursue recovery from its reinsurers, if any, for some or all of the Settlement Amount.

114821.1

11

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

## VI.    INDEMNIFICATION, HOLD HARMLESS AND DEFENSE

7.    (A)    From and after the Effective Date, except for W.R. Grace & Co., a New York Corporation, which had changed its name to Fresenius National Medical Care Holdings, Inc., Grace as defined herein shall, at the option of Grace, defend Commercial Union and shall indemnify and hold Commercial Union harmless at the sole expense of Grace from and against any and all liability, loss, costs or expenses, imposed upon Commercial Union as a result of any claims, demands, lawsuits, causes of action or proceedings that are asserted, initiated or continued by any person or entity against Commercial Union and that are based upon the Policies and Hatco-Related Environmental Claims except as otherwise provided in this Paragraph 7. The matters for which Grace is obligated pursuant to this Paragraph 7 to indemnify and hold harmless Commercial Union, or for which Grace has an option to defend Commercial Union, are hereinafter referred to as "Indemnifiable Claims."

(B)    Grace shall have no obligation to indemnify and hold Commercial Union harmless from and against any and all liability as a result of any claims, demands, law suits, causes of action or proceedings that are asserted, initiated or continued by any person

114821.1

12

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000045

or entity against Commercial Union for personal injury (other than damage to real estate released above) or bodily injury and that are based upon the Policies and Hatco-Related Environmental Claims.

(C)   Grace's obligation to indemnify and hold harmless Commercial Union, or Grace's option to defend Commercial Union, for Indemnifiable Claims with respect to the Policies shall be subject to an aggregate limit equal to the Settlement Amount.   Once Grace has paid any liabilities for Indemnifiable Claims of Commercial Union in an amount equal to the Settlement Amount, Grace shall not be obligated to indemnify and hold harmless Commercial Union for further Indemnifiable Claims with respect to the Policies.   Grace is under no obligation, under this Agreement or otherwise, to assume the defense of an Indemnifiable Claim.

(D)(1)    After receipt by Commercial Union of notice of any complaint or the commencement or continuation of any action or proceeding with respect to which indemnification is being sought hereunder, Commercial Union shall notify Grace in accordance with Section 18 and as soon as practicable in writing of such complaint or of the commencement or continuation of such action or proceeding and shall thereafter tender the defense thereof to Grace.

114821.1

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER                                     OB-000046

(D)(2)    Any failure by Commercial Union to notify Grace of such action or proceeding will relieve Grace from any indemnification obligation with respect thereto.

(E)  After Grace receives any notice pursuant to Section 7(D)(1), Grace shall promptly determine whether it will respond to that notice and assume the defense of Commercial Union named in a complaint or the commencement or continuation of any action.

(F)(1)    If Grace so elects, Grace will assume the defense of such action or proceeding.  Grace and Commercial Union shall mutually agree upon a choice of counsel to represent Commercial Union (which may not include counsel presently representing either Grace or Commercial Union), and Grace shall assume the payment of the fees and disbursements of such counsel.  Grace will consult with and allow Commercial Union complete control over the positions asserted in the interpretation of the language of the Policies, and will consult with Commercial Union in the defense of any notice of any complaint or the defense of the commencement or continuation of any action.

114821.1

14

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

(F)(2)    Grace and Commercial Union will consult to the extent practicable about all decisions to be made, either procedural or substantive, pertaining in any material manner to any Indemnifiable Claim. The Parties will make reasonable efforts to accommodate the litigation suggestions of each other before directing counsel to take any action. The Parties will not dispute any decision that each makes which is lawful and is reasonably made in their discretion.

(F)(3)    The Parties shall keep each other apprised in a timely manner of all significant developments in the defense of Commercial Union in any indemnifiable claim and shall upon reasonable request supply each other with status reports.

(F)(4)    Any settlement or compromise made by Grace on behalf of Commercial Union shall provide that it is not an admission of liability by Commercial Union and is without precedent to Commercial Union.  Grace shall provide reasonable and timely disclosure as soon as is practicable to Commercial Union of any proposed settlement or compromise.  Commercial Union shall have such time as is practicable to review the proposed settlement or compromise and to present its view to Grace. Any settlement of the

114821.1

15

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

Indemnifiable Claims in the amount of or less than the Settlement Amount may be made by Grace without Commercial Union's consent. Any settlement greater than the Settlement Amount may be made by Grace only with Commercial Union's consent, which shall not be unreasonably withheld. Grace shall use best efforts to keep such settlement or compromise confidential.

(F)(5)    If Grace declines to assume the defense of any Indemnifiable Claims, then Commercial Union shall employ counsel to defend against such Indemnifiable Claims, and Commercial Union shall pay the fees and disbursements of such counsel. Commercial Union shall provide reasonable and timely disclosure as soon as is practicable to Grace of any proposed settlement or compromise and Grace shall have such time as is practicable to review the proposed settlement or compromise and to present its view to Commercial Union. Any settlement of the Indemnifiable Claims may be made by Commercial Union only with Grace's consent, which shall not be unreasonably withheld. Commercial Union shall keep such settlement or compromise confidential.

(F)(6)    In any action or proceeding in which Grace assumes the defense of Commercial Union, Commercial Union will have the

114821.1

16

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000049

right to participate in such litigation and to retain its own counsel at Commercial Union's own expense.

(G)   If Commercial Union settles any such claims without previously obtaining Grace's consent, which consent shall not be unreasonably withheld, then Grace shall be relieved of any obligation to indemnify Commercial Union for such settlement. Commercial Union shall use best efforts to keep such settlement or compromise confidential.

(H)   Nothing herein shall constitute any waiver of Commercial Union's attorney-client privilege, which privilege shall extend only to such counsel retained to represent Commercial Union and shall not extend to Grace or its counsel unless specifically waived by Commercial Union in writing with reference to a particular attorney-client communication.

(I)   Commercial Union and Grace shall cooperate reasonably with each other to protect their respective interests with respect to claims for which Grace may be liable for indemnification under Section 7.

114321.1

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000050

(J)  If Grace has assumed the defense of any action or proceeding, Commercial Union shall comply in a timely manner with Grace appointed counsel's requests for access to documentation or information requested by Grace appointed counsel for purposes of defense.  The Parties shall cooperate with each other to avoid taking any positions in such litigation which are adverse to thier respective general business interests.

(K)  If Grace has failed or declined to assume the defense of any action or proceeding, Grace shall comply in a timely manner with Commercial Union's requests for access to documentation or information requested by Commercial Union for purposes of such defense.

(L)  Commercial Union and Grace shall cooperate reasonably with each other with respect to Indemnifiable Claims.  If Grace has assumed the defense of any action or proceeding, Commercial Union shall comply in a timely manner with Grace's appointed counsel's request for access to documentation or information requested by Grace's appointed counsel for purposes of defense.  If Grace has declined to assume the defense of any action or proceeding, Grace shall comply in a timely manner with Commercial Union's requests

114621.1

18

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000051

for access to documentation or information pertaining to such defense.

## VII. CONFIDENTIALITY OF AGREEMENT

8.    Except as expressly provided in Paragraph 8 (A), (B), (C), (D) and (E), this Agreement and all matters relating to its existence, terms, negotiations and implementation shall be kept strictly confidential.  This Agreement and the implementation of its terms are to be disclosed pursuant only to an order of court or by written agreement by all the Parties, except that:

(A)  The Agreement may be disclosed provided that the entity making a disclosure provides at least 30 days written notice prior to disclosure, setting forth the information proposed to be disclosed, the statute, tribunal or other legal authority requiring disclosure and the circumstances pursuant to which disclosure is proposed to be made, along with a request to consent to such disclosure.  Further, the entity to which disclosure is made must be advised that the disclosure is subject to this confidentiality provision and agrees to be bound.

114821.1

19

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000052

(B) No part of this Agreement, its existence, terms, negotiation, development, implementation or performance shall be admissible or used in any manner in any litigation, claims or other proceeding, provided, however, that such evidence may be offered in any action seeking solely to enforce its terms or in connection with any litigation between Commercial Union and any of its reinsurers.

(C) To the extent necessary to obtain insurance coverage for a Hatco-Related Environmental Claim from an entity other than Commercial Union, the Agreement may be disclosed, provided that the entity to which disclosure is made is advised that the disclosure is subject to this confidentiality provision and agrees to be bound.

(D) Any party may make copies of this Agreement available to its accountants, to its counsel, to its lenders, underwriters or reinsurers and to counsel for such lenders, underwriters or reinsurers, provided, that the entity to which disclosure is made is advised that the disclosure is subject to this confidentiality provision and agrees to be bound.

114821.1

20

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000053

(E)   Any Party may make reference to or describe this Agreement to the extent that such disclosure is required to comply with any court, governmental agency, regulatory, arbitration tribunal or accounting/auditing requirement or otherwise required by law applicable to a party, but shall not make available a copy of the Agreement nor shall the reporting Party identify any other Parties to this Agreement.  In the event that either a governmental agency or any other entity requests a copy of the Agreement or requests the identity of the other Parties to the Agreement, the Party to whom the request is made shall, prior to disclosure, and as soon as practicable, notify all other Parties to permit a Party(ies) the opportunity to participate in opposing such request.

8.1 (A)   Except as expressly set forth in Paragraph 8, where one or more Parties object to disclosure of the Agreement to the entity not a Party, the objecting Party shall be responsible for taking all necessary actions to prevent disclosure of this Agreement to the entity not a Party.  The costs associated with the prevention of disclosure of this Agreement shall be borne by the objector to the disclosure.

114821.1

21

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000054

8.2  Except as expressly set forth in Paragraph 8, in any action in which a Party has been ordered to produce this Agreement, related communications and drafts, the producing Party shall seek a protective order limiting the use of this Agreement, related communications and drafts, to the particular purpose of the pending litigation in which it is produced and take all steps necessary to bar the disclosure to any entity not a Party.

8.3  Except as expressly set forth in Paragraph 8, any Party which has produced Confidential Documents and Information may require the other parties to return all specifically designated Confidential Documents and Information in their possession, as well as in the possession of their counsel, retained experts, and/or consultants, including all copies.  In lieu of returning all such Confidential Documents and Information, the Party from whom the Confidential Documents and Information has been requested may certify in writing that all such requested Confidential Documents and Information have been destroyed.

VIII.    RESERVATION OF RIGHTS

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER                                    OB-000055

9.    Commercial Union reserves all of its rights, without limitation, to deny or dispute coverage to Grace on any and all grounds for any and all claims for coverage which are not released in this Agreement.

10.    Grace reserves all of its rights, without limitation, to enforce coverage provided by Commercial Union on any and all grounds for any and all claims for coverage which are not released in this Agreement.

## IX.  SETTLEMENT NOT AN ADMISSION

11.    Grace acknowledges that Commercial Union disputes coverage under the Policies with respect to Hatco-Related Environmental Claims.  Grace recognizes that Commercial Union's payment of the Settlement Amount is to be made in compromise of disputed coverage demands and is not, and cannot be construed as an admission by Commercial Union that any defense, indemnity or other coverage or obligation to pay exists under any of the Polices, or that Commercial Union has any other obligation of any nature whatsoever (other than those arising under this Agreement) with respect to Hatco-Related Environmental Claims.  Except as otherwise

114821.1

23

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

stated herein, with respect to rights and obligations regarding all matters outside the scope of this Agreement or asserted by any person not a party to this Agreement, the Parties reserve all positions and all other rights, defenses and privileges concerning such matters.

12. The Parties agree that none of the terms of this Agreement, nor any aspect of its negotiation or performance shall be used in any manner by any person in any future action or proceeding as evidence of the rights, duties or obligations of the Parties under the Policies.

## X.    APPLICATION OF AGREEMENT ONLY TO THE PARTIES

13. This Agreement is intended to confer rights and benefits only upon the Parties hereto, and not upon any other party or entity; no party or entity other than the Parties hereto shall have any legal enforceable rights under this Agreement. Any right of action for breach of this Agreement is reserved to the Parties only.

114821.1

24

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000057

14. This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, this Agreement does not reflect upon the Parties' views as to their rights and obligations with respect to matters or persons outside the scope of this Agreement. No part of this Agreement, it negotiations, development, implementation, or performance may be used in any manner as evidence of the rights, duties, or obligations of Grace or Commercial Union with respect to matters, persons or entities outside the scope of this Agreement.

## XI.   ASSISTANCE AND COOPERATION

15. Each of the Parties further agrees that it will execute and deliver to the other Party all instruments and do such further acts and things as the other Party may reasonably request when they are necessary to effectuate the purposes of this Agreement.

16. Should any person or entity not a party hereto challenge the validity of this Agreement, or any term thereof, the Parties shall provide to each other such cooperation and assistance as the other Party may reasonably request in order to resist such a challenge.

114821.1

25

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000058

## XII. EXECUTION

17.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall be deeded one and the same instrument.  This Agreement consists of 33 typewritten pages, inclusive of signature pages.

## XIII.    NOTICE

18.  Any statements, communications, or notices to be provided pursuant to this Agreement shall be sent to the attention of the persons indicated below until such time as notice of any change of person to be notified or change of address is forwarded to the Parties hereto:

> (a)    W.R. Grace & Co. --- Conn.
> One Town Center Road
> Boca Raton, Florida 33486
> Attn:    Secretary
>
> with a copy to: Director of Corporate Risk
> Management
>
> (and copy to)
>
> Anthony J. Marchetta, Esquire
> Pitney, Hardin, Kipp, Szuch

114821.1

26

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000059

P.O. Box 1945
Morristown, NJ 07962-1945

(b)   Commercial Union Insurance Company
One Beacon Street
Boston, MA  02108
Attn:  Harvey G. Lewis

(and copy to)

James W. Christie, Esquire
Christie, Pabarue, Mortensen
and Young
A Professional Corporation
1880 JFK Boulevard
10th Floor
Philadelphia, PA  19103


## XIV. PARTIAL INVALIDITY

19.  If any provision of this Agreement, or the application of
any term or provision, is held to be illegal, invalid, or
unenforceable under present or future laws, such provisions shall
be fully severable.  In such event: (a) the Agreement shall be
construed and enforced as if such illegal, invalid, or
unenforceable provision has never comprised a part of the
Agreement; (b) the remaining provisions of the Agreement shall
remain in full force and effect and shall not be affected by the
illegal, invalid, or unenforceable provisions, or by its severance
from this Agreement, unless the effect of severance of such

114521.1

27

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000060

provision shall conclusively make continued performance under this Agreement impossible; and (c) in lieu of such illegal, invalid, or unenforceable provision, there shall be added automatically as part of this Agreement a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and as may be legal, valid, or enforceable.

## XV. REMEDY FOR BREACH

20. If any Party to this Agreement contends that any other Party has materially breached the terms of the Agreement, such Party shall give the other Party to this Agreement notice thereof by certified mail. The Party which contends that the Agreement has been materially breached shall give the other Party ten (10) days from the date of the notice to cure the alleged breach before taking any legal action and the Party to whom written notice of a breach has been given shall not take any legal action under this Agreement within that ten day period. However, the failure of a Party to object to one or more breaches or violations of this Agreement shall not constitute a waiver or limitation upon the right of such Party to object to any other breach or violation of this Agreement.

114821.1

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000061

## XVI. ENTIRE AGREEMENT AND AMENDMENTS TO AGREEMENT

21.   This Agreement is the complete and entire agreement of the Parties and may not be modified, changed, contradicted, added to, or altered in any way by any previous or concurrent written or oral agreements or any subsequent oral agreements.  No amendments or variations of the terms of this Agreement shall be valid unless made in writing and signed by both Parties.

## XVII.      NO CONSTRUCTION AGAINST EITHER PARTY

22.   This Agreement was negotiated at arms-length with all Parties receiving advice from independent legal counsel.  The Parties read this entire Agreement and know the contents hereof, that the terms hereof are contractual and not merely recitals, and that they have signed this Agreement of their own free act.  It is the intent of the Parties that no part of this Agreement be construed against any of the Parties because of the identity of the drafter or the fact that Commercial Union is an insurance company.

## XVIII.     REPRESENTATION AND WARRANTIES

I14821.1

29

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000062

23. Grace represents that as of the date of execution of this Agreement, (a) it is not aware of any Hatco-Related Environmental Claim being made against the subject Policies by any entity formerly owned by, related or affiliated with Grace, and on whose behalf Grace does not have the authority to bind to this Agreement, and (b) it is not aware of any Hatco-Related Environmental Claim that is going to be made or that is contemplated being made by any entity formerly owned by, related to, or affiliated with Grace against the subject Policies after execution of this Agreement.

24. No Party shall assign transfer, convey or sell, or purport to assign, transfer, convey or sell to any entity or person, any cause of action, chose in action, or part thereof, arising out of or connected with the matters released herein, without first obtaining the written consent of the other Parties; provided, however, that this sentence shall not prohibit any assignment by a Party by merger, consolidation, operation of law or to a Party who succeeds to all or substantially all of such Party's assets. Subject to the foregoing, this Agreement shall extend to and be binding upon the successors and assigns of the Parties hereto.

114821.1

30

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000063

25.   The Parties represent, warrant and agree that they (a) are the sole and lawful owners of all right, title, and interest in and to every claim or matter released herein; (b) have not assigned or transferred or purported to or attempted to assign or transfer to any person or entity any claim or other matter released herein; and (c) have taken all necessary corporate and internal legal actions to duly approve the making and performance of this Agreement and that no further corporate or other internal approval is necessary.

26.   The making and performance of this Agreement will not violate any provision of law or of its respective articles of incorporation, charter or by-laws.

27.   The article headings contained in this Agreement are for convenient reference only and shall not in any way affect the meaning or interpretation of this Agreement.

28.   Each of the Parties represents, warrants and certifies that the person signing this Agreement on its behalf is authorized to execute this Agreement, and that this Agreement constitutes a valid and binding obligation.

114821.1

31

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000064

IN WITNESS WHEREOF, THIS AGREEMENT HAS BEEN READ AND SIGNED IN
DUPLICATE ORIGINALS BY THE DULY AUTHORIZED REPRESENTATIVES OF THE
PARTIES:

W.R. GRACE & CO. — CONN.

By: _~AVP_                         Date: _12/17/96_
  Name and Title
  W.R. Grace & Co. — Conn.
  One Town Center Road
  Boca Raton, Florida 33486

Witness: _Kay Hitter_             Date: _12/17/96_

Address: _1360 SW 1 St Boca FL 33486_

SWORN to and SUBSCRIBED
before me this _17th_ day
of _DECEMBER_ , 1996.

_Jody Crossman_
Notary Public

> JODY M. CROSSMAN
> MY COMMISSION # CC 294590
> EXPIRES: June 14, 1997
> Bonded Thru Notary Public Underwriters

W.R. GRACE & CO. — DEL.

By: _~AVP_                         Date: _12/17/96_
  Name and Title
  W.R. Grace & Co. — Del.
  One Town Center Road
  Boca Raton, Florida 33486

Witness: _Kay Hitter_             Date: _12/17/96_

Address: _1360 SW 1 St Boca FL 33486_

SWORN to and SUBSCRIBED
before me this _17th_ day
of _DECEMBER_ , 1996.

_Jody Crossman_
Notary Public

> JODY M. CROSSMAN
> MY COMMISSION # CC 294590
> EXPIRES: June 14, 1997
> Bonded Thru Notary Public Underwriters

**CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER**

114821.1

32

OB-000065

W.R. GRACE & CO. (a New York Corporation,
which has changed its name to Fresenius
National Medical Care Holdings, Inc.)

By: _~~~~~~~~~~~ AVP        Date: 12/17/96
      Name and Title
      W.R. Grace & Co. -- Conn.
      One Town Center Road
      Boca Raton, Florida 33486

      Attorney-in-Fact for
      W.R. Grace & Co. (a New York Corporation,
      which has changed its name to Fresenius
      National Medical Care Holdings, Inc.)

Witness: _Nay Hatti_        Date: 12/17/96

Address: _1360 SW 1 St  Boca  FL  33486_

SWORN to and SUBSCRIBED
before me this 17th day
of DECEMBER , 1996.

_Jody Crossman_
[Notary Public]

> JODY M. CROSSMAN
> MY COMMISSION # CC 294590
> EXPIRES: June 14, 1997
> Bonded Thru Notary Public Underwriters

COMMERCIAL UNION INSURANCE COMPANY

By: _Harvey G. Lewis_        Date: 12/13/96
      Harvey G. Lewis, Vice President

Witness: _Brian Nolen_       Date: 12/13/96

Address: _29 Meridian St, Malden Ma._

SWORN to and SUBSCRIBED
before me this 13th day
of    December , 1996.

_Michael F. Lincoln_
Notary Public

        MICHAEL F. LINCOLN
          Notary Public
   My Commission Expires Dec. 20, 1996

**CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER**

OB-000066



Δ π EXHIBIT 17
Deponent _Posen_
Date 5-6-09 Rptr. _U_
WWW.DEPOBOOK.COM

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release of all claims and policy obligations ("Agreement") is entered into on this 7 day of October, 1998 by and between Grace (as defined in Section I.A.) and Commercial Union (as defined in Section I.B.).

WHEREAS, Commercial Union issued or is alleged to have issued various policies of insurance to Grace ("Policies", as hereinafter defined);

WHEREAS, Grace has made Claims for insurance coverage under the Policies;

WHEREAS, Grace filed a third-party complaint against Commercial Union in an action entitled Maryland Casualty Co. v. W. R. Grace & Co., No. 88 Civ. 4337 (JSM), venued in the Southern District of New York, which case was consolidated with a second action, Unigard Security Ins. Co. v. W. R. Grace & Co. - Conn., No. 97 Civ. 8941 (JSM), also venued in the Southern District of New York;

WHEREAS, it is in the mutual best interest of Grace and Commercial Union to reach a full and final amicable resolution of their rights and obligations under the Policies with respect to any and all Claims, without admission of liability by either Grace or Commercial Union, or any further adjudication of any issue of

**CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER**

fact or law, and to resolve all past and present disputes, and avoid all future disputes, relating to Commercial Union's and Grace's rights and obligations under the Policies;

NOW THEREFORE, in consideration of the mutual covenants, agreements and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, Commercial Union and Grace agree as follows:

I.   DEFINITIONS

A.   "Grace" means W.R. Grace & Co., a Delaware Corporation, and all its subsidiaries, predecessors in interest, successors in interest, assigns, and all other persons, corporations, and entities claiming a right as a named insured, additional named insured, or other insured under the Policies, to the extent Grace has the legal capacity to bind such persons, corporations and entities to obligations arising under this Agreement.

B.   "Commercial Union" means Commercial Union Insurance Company, CGU, American Employers' Insurance Company, and Employers Commercial Union Insurance Company, and their respective predecessors-in-interest, successors-in-interest and assigns.

C.   "Claim" and "Claims" mean any and all past, present and future claims or demands for coverage under the Policies, whether

2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000068

known or unknown, fixed or contingent, direct or indirect, that have been, could have been, are, or may in the future be, asserted, in whatever fashion, including but not limited to claims, promises, orders, requests, actions, causes of actions, cross-claims, third-party claims, counter-claims, directives, decrees, demands, proceedings, suits, Potentially Responsible Party notices and/or notices of partial or total responsibility. "Claim" and "Claims" include every and all coverages afforded or allegedly afforded under the Policies, including but not limited to coverage or alleged coverage for property damage, bodily injury, personal injury, advertising liability, operations liability, products liability, medical monitoring, natural resources damage, eviction liability, occupational disease, maritime, and workers' compensation. "Claim" and "Claims" do not include those claims that are the subject of the "Settlement Agreement and Release" dated December 17, 1996 entered into between Grace and Commercial Union in the case captioned Hatco Corp. v. W.R. Grace & Co. - Conn., No. 89-1031, venued in the United States District Court for the District of New Jersey, nor those claims that are the subject of the "Settlement Agreement" dated May 7, 1993 entered into between Grace and Commercial Union in various cases, including but not limited to Maryland Casualty Company v. W.R. Grace & Co., et al., No. 88 Civ. 2613 (SWK), venued in the United States District Court for the Southern

3

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000069

District of New York; <u>Moore, ex. rel. State of Mississippi v. The</u>

<u>Flintkote Co., et al. v. Maryland Casualty Co., et al.</u>, No. 89-

5138(2), venued in the Circuit Court of Jackson County,

Mississippi; <u>Independent School District 197, et al. and W.R.</u>

<u>Grace & Co. - Conn. v. Accident & Casualty Insurance of</u>

<u>Winterthur, et al.</u>, No. 19-C4-88-007950, venued in the District

Court of the County of Dakota, Minnesota; <u>W.R. Grace & Co. -</u>

<u>Conn. v. Admiral Insurance Co., et al.</u>, No. 91-048251, venued in

the District Court of Harris County, Texas; <u>Dayton Independent</u>

<u>School District, et al. v. United States Mineral Products Co. and</u>

<u>W.R. Grace & Co. - Conn. v. Admiral Insurance Co., et al.</u>, No. B-

87-00507, venued in the United States District Court for the

Eastern District of Texas, Beaumont; <u>W.R. Grace & Co. - Conn. v.</u>

<u>Admiral Insurance Company, et al.</u>, No. BC 050432, venued in the

Superior Court of the County of Los Angeles, California; and

<u>American Employers Insurance Company, et al. v. W.R. Grace & Co. -</u>

<u>Conn., et al.</u>, No. 6241-92, venued in the Supreme Court of the

State of New York, County of New York.

D.   "Policy" and "Policies" mean all insurance policies

issued or allegedly issued by Commercial Union to or for the

benefit of Grace prior to and including the date of execution of

the Agreement.  "Policy" and "Policies" does not include any

insurance policies issued to any corporation or entity that was

formerly a subsidiary of Grace, or in which Grace otherwise held a

4

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

controlling interest, but had ceased to be a subsidiary of Grace,
or in which Grace ceased holding a controlling interest, prior to
the effective date of the policy.    Commercial Union and Grace
represent and warrant that they are unaware of any other contracts
of insurance issued or alleged to have been issued to Grace prior
to the date of execution of this Agreement, except those Policies
listed below:

| Company | Policy No. | Policy Period |
|---|---|---|
| American Employers' Insurance Company ("AEIC") | A15-2127-51 | 10/20/62 - 10/20/65 |
| AEIC | A16-8220-001 | 10/20/65 - 10/20/68 |
| AEIC | A16-8220-002 | 10/20/65 - 10/20/68 |
| AEIC | A15-8138-001 | 01/27/65 - 10/20/65 |
| AEIC | A16-8220-003 | 10/20/68 - 06/30/71 |
| AEIC | A16-8220-004 | 10/20/68 - 06/30/71 |
| Employers Commercial Union Insurance Company | EY-8220-005 | 06/30/71 - 06/30/74 |
| Employers Commercial Union Insurance Company | EY-8220-006 | 06/30/71 - 06/30/74 |

Commercial Union does not admit the applicability of any or all of
the Policies to any Claims.

    E.    "Pending Litigation" means Maryland Casualty Co. v. W.R.
Grace & Co., No. 88 Civ. 4337 (JSM) venued in the Southern
District of New York, as consolidated with Unigard Security Ins.

5

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

<u>Co. v. W.R. Grace & Co. - Conn.</u>, No. 97 Civ. 8941 (JSM), also venued in the Southern District of New York.

F.  "Effective Date" means the last date any signatory hereto executes this Agreement.

G.  "Party" means Grace or Commercial Union, as applicable.

H.  "Parties" means Grace and Commercial Union.

II.  <u>SETTLEMENT AMOUNT TO BE PAID BY COMMERCIAL UNION</u>

Commercial Union shall pay to Grace the sum of Fifty-Seven Million Six Hundred Thousand Dollars ($57,600,000) ("Settlement Amount"). Payment of the Settlement Amount shall be made by Commercial Union to Grace within thirty (30) business days after actual receipt by Commercial Union of this Agreement, as executed by Grace.  Payments are to be received from Commercial Union by either check or wire transfer.

III.  <u>RELEASES AND RESERVATIONS</u>

A.  Grace hereby fully and forever releases and discharges Commercial Union from any and all rights, obligations and liabilities of any kind related to Claims arising under any or all of the Policies, from the beginning of time forward to the end of

6

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000072

the World, as if the Policies never existed.   The Policies, including all rights, obligations and liabilities associated with the Policies, are completely extinguished and terminated as to Claims.

B.   Commercial Union hereby fully and forever releases and discharges Grace from any and all rights, obligations and liabilities of any kind related to Claims arising under any or all of the Policies, from the beginning of time forward to the end of the World, as if the Policies never existed.   The Policies, including all rights, obligations and liabilities associated with the Policies, are completely extinguished and terminated as to Claims.

C.   Grace releases and discharges Commercial Union from any and all compensatory, punitive, exemplary or statutory damages, and equitable or extra-contractual relief, relating to or based upon any allegations of bad faith, fraud, misrepresentation, unfair claim practice, unfair trade practice or other acts or state of affairs, or failure to act, in connection with the investigations, handling, adjustment, litigation, defense or settlement arising out of or relating to the Policies.

D.   Commercial Union releases and discharges Grace from any and all compensatory, punitive, exemplary or statutory damages, and equitable or extra-contractual relief, relating to or based

250380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000073

upon any allegations of bad faith, fraud, misrepresentation, or other acts or state of affairs, or failure to act, in connection with the investigations, handling, adjustment, litigation, defense or settlement arising out of or relating to the Policies.

E. Grace expressly assumes the risk that the alleged costs of its past, present, and/or future liability may be greater than Grace currently realizes, that the alleged costs may increase in amount or in severity over time and that the costs and/or claims may be progressive, cumulative, unknown and/or unforeseeable, and that there may be hidden, unknown and unknowable damages or costs. Grace nevertheless waives, surrenders, and abandons any rights under the Policies.

 (Initial - CU)

_____ (Initial - Grace)

F. It is the intention of Commercial Union and Grace that this Agreement operate as and constitute a full release and extinguishment of the Policies, and Grace expressly waives any and all rights it may have, (whether by statute, code, ordinance, regulation, or otherwise) that limit or restrict the effect of a general release as to Claims which Grace does not know or suspect to exist at the time of the execution of the release. However, the Parties agree that this Agreement does not relieve Commercial Union from its obligations under the "Settlement Agreement and

8

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000074

Release" dated December 17, 1996, entered into between Grace and Commercial Union in the case captioned <u>Hatco Corp. v. W. R. Grace & Co.--Conn.</u>, No. 89-1031, and the "Settlement Agreement" dated May 7, 1993 entered into between Grace and Commercial Union as referenced in Section I.C., and payments due pursuant to this Agreement are in addition to the payments due pursuant to these other two agreements.

_____    (Initial - CU)

_____    (Initial - Grace)

## IV.   <u>DISMISSAL WITH PREJUDICE</u>

Within ten (10) days after payment of the Settlement Amount by Commercial Union to Grace pursuant to Section II of this Agreement, Grace shall file a motion to dismiss Commercial Union with prejudice, and without costs, from the Pending Litigation. Grace and Commercial Union shall bear their own respective costs, expenses and fees (including but not limited to attorneys' fees), in connection with the Pending Litigation, the negotiations for and execution of the Agreement, and the filing of the motion to dismiss Commercial Union.

## V.   <u>COVENANT NOT TO SUE</u>

Commercial Union hereby covenants not to sue or otherwise to seek to recover the Settlement Amount paid to Grace, from any

9

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

entity that currently is a successor of Grace, or any other entity or company that issued insurance to or for the benefit of Grace, to the extent that such successor(s) or other companies do not sue or otherwise seek to recover any money or obtain other relief from Commercial Union.   This covenant shall not preclude Commercial Union's right to pursue recovery from its reinsurers (if any), for some or all of the Settlement Amount.

VI.   INDEMNIFICATION, HOLD HARMLESS AND DEFENSE

   A.   From and after the Effective Date, Grace shall, at its own expense, defend Commercial Union and shall indemnify and hold Commercial Union harmless against any and all liability, loss, costs or expenses, imposed upon Commercial Union as a result of any Claims that are asserted, initiated or continued by any person or entity against Commercial Union and that are based upon the Policies.

   B.   After receipt by Commercial Union of notice of any Claim, Commercial Union shall notify Grace in accordance with Section XII as soon as practicable, in writing, of such notice, and shall thereafter tender the Claim to Grace.

   C.   After Grace receives any notice pursuant to Section VI.B., Grace shall promptly take all necessary actions to defend, indemnify and hold Commercial Union harmless.

10

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000076

D.   Grace and Commercial Union shall mutually agree upon a choice of counsel to represent Commercial Union.   Grace will consult with, and allow Commercial Union complete control over, the positions asserted in the interpretation of the language of the Policies, and will consult with Commercial Union in the defense of any Claim.

E.   Grace and Commercial Union will consult to the extent practicable about all decisions related to a material matter.   The Parties will make reasonable efforts to accommodate the litigation suggestions of each other before directing counsel to take any action.   The Parties will not dispute any decision made by the other, which is lawful and is reasonably made in their discretion.

F.   The Parties shall keep each other apprised in a timely manner of all significant developments in the defense of Commercial Union for any Claim.   Upon reasonable request Grace will supply Commercial Union with status reports.

G.   Any settlement or compromise made by Grace on behalf of Commercial Union shall provide that it is not an admission of liability by Commercial Union and is without precedent to Commercial Union.   Prior to entering into any settlement or compromise, Grace shall provide reasonable and timely disclosure to Commercial Union.   Commercial Union shall have such time as is practicable to review the proposed settlement or compromise and to

11

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000077

present its view to Grace.   Pursuant to Section VII, Grace shall use best efforts to keep such settlement or compromise confidential.

H.   Commercial Union and Grace shall cooperate reasonably with each other to protect their respective interests with respect to Claims, and shall make all reasonable efforts to avoid taking positions in such litigation that are adverse to, or inconsistent with, their general business and corporate interests and positions.

I.   Commercial Union shall comply in a timely manner with Grace's requests for access to documentation or information pertaining to Policy defenses.

## VII. CONFIDENTIALITY OF AGREEMENT

A.   This Agreement and all matters related to its existence, terms, negotiations, consideration, and performance, are strictly confidential.   Grace and Commercial Union shall take all measures reasonably necessary to preserve the strict confidentiality of this Agreement, and all matters related to its existence, terms, negotiations, consideration, and performance, including but not limited to the following:

12

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000078

1.    Restricting access to only those persons and entities with a need for such information for some legitimate business purpose;

2.    Restricting duplicates, abstracts, and derivative works to only those necessary for some legitimate business purpose; and

3.    Employing all reasonable efforts to maintain strict confidentiality, including efforts commensurate with those employed for the protection of the Parties' own trade secrets, and other confidential business information.

B.    The Agreement, and matters related to its existence, terms, negotiations, consideration, and performance, may be revealed only under the following circumstances:

1.    Where a Party is or may be ordered to produce the Agreement, or matters related to its existence, terms, negotiation, consideration, and performance, as part of a judicial or other proceeding, the Party who is or may be compelled to disclose such information shall take all due measures at its own expense to oppose such disclosure. Furthermore, the Party who is or may be compelled to disclose such information shall notify the other Party in writing as soon as the possibility of such disclosure becomes evident (e.g., filing of motion to compel). Such notice shall include all relevant information available to

13

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000079

the Party that may be compelled to disclose.

2.   Any Party may describe and/or make reference to
this Agreement to the extent that such disclosure is required to
comply with any statute, rule or other requirement of any
government or governmental agency or other authority.   Without
limiting the foregoing, the Parties agree that Grace may describe
and/or make reference to this Agreement in a press release, an
Annual Report on Form 10-K or any other report or filing that, on
advice of counsel, Grace is required to make with the Securities
and Exchange Commission ("SEC") pursuant to the Securities Act of
1933, as amended, or the Securities Exchange Act of 1934, as
amended, and in any financial statements and/or related notes
included or incorporated by reference in any such report or
filing; provided, however, that (1) Grace will not identify
Commercial Union in any such press release; (2) Grace will not
identify Commercial Union in any report or filing without
notifying Commercial Union prior to the issuance of any filing or
report, and shall take any comments rendered in response thereto
into account prior to such issuance; (3) Grace agrees that a copy
of this Agreement shall not be filed as an exhibit to any press
release; (4) Grace agrees that a copy of the Agreement shall not
be filed as an Exhibit to any report or filing unless Grace is
required to do so by the SEC.  If so required, Grace agrees (1) to
consult with Commercial Union and to take into account their views

14

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

in connection with any objection by Grace to any such request by the SEC and (2) to seek confidential treatment by the SEC of such portions of the Agreement as Grace may deem appropriate in the circumstances. Nothing in this Section VII shall bar Commercial Union from making an independent application to the SEC to maintain the confidentiality of this Agreement.

3. The Agreement may be disclosed by Grace and Commercial Union to counsel, lenders, auditors, accountants, underwriters or reinsurers (including counsel for such entities) when necessary for a legitimate business purpose. Prior to such disclosure the person or entity to which disclosure shall be made shall agree in writing to be bound by the terms of Section VII of this Agreement.

C. Where a Party has produced this Agreement, and/or information related to its existence, terms, negotiations, consideration, or performance, as part of a judicial or other proceeding, the producing Party at its own expense shall seek a protective order or other document restricting the use of the materials to be produced, to the particular purpose of the litigation in, or other matter for, which it is produced. The producing Party shall take all steps necessary to bar the disclosure of the materials to anyone not involved in the litigation or matter.

15

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000081

D.   As part of any disclosure of the Agreement or matters related to its existence, terms, negotiations, consideration, and performance, the Party making the disclosure shall make all due effort to require the receiving entity to return all copies of the Agreement and all matters related to its existence, terms, negotiations, consideration and performance, when the use of such materials is at an end, or alternately, to certify in writing that such material has been destroyed.

VIII.  SETTLEMENT NOT AN ADMISSION

A.   Grace acknowledges that Commercial Union disputes coverage under the Policies with respect to Claims.   Grace recognizes that Commercial Union's payment of the Settlement Amount is made in compromise of disputed coverage demands and is not, and cannot be construed as, an admission by Commercial Union that any defense, indemnity or other coverage or obligation to pay exists under any of the Policies, or that Commercial Union has any other obligation of any nature whatsoever (other than those arising under the Agreement) with respect to Claims.

B.   The Agreement and its negotiation and performance shall not be used in any manner by any person or entity in any future action or proceeding as evidence of the rights, duties or obligations of Grace or Commercial Union under the Policies.

16

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER
OB-000082

IX.   APPLICATION OF AGREEMENT ONLY TO THE PARTIES

A.   This Agreement is intended to confer rights and benefits only upon Grace and Commercial Union, and not upon any other person or entity, and no person or entity other than Grace and Commercial Union shall have any enforceable rights under this Agreement.   Any right of action for breach of this Agreement is reserved to Grace and Commercial Union.

B.   This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions.   Accordingly, this Agreement does not reflect upon the Parties' views as to their rights and obligations with respect to the Claims, the Policies, or matters, persons or entities outside the scope of this Agreement.   This Agreement and its negotiation and performance shall not be used in any manner as evidence of the rights, duties, or obligations of Grace or Commercial Union with respect to the Claims, the Policies, or matters, persons or entities outside the scope of this Agreement.

X.   ASSISTANCE AND COOPERATION

A.   Grace and Commercial Union agree that they will execute and deliver to the other Party all instruments and do such further acts and things as the other Party may reasonably request in order

17

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000083

to effectuate the purposes of this Agreement.

B.   Should any person or entity not a party hereto challenge the validity of this Agreement, or any term thereof, Grace and Commercial Union shall provide to each other such cooperation and assistance as the other Party may reasonably request in order to resist such a challenge.

XI.   NOTICE REGARDING CORPORATE EXISTENCE

A.   Grace shall notify Commercial Union of any voluntary dissolution of Grace.  Such notice shall be given within thirty days after the adoption of any resolution or other action of the Board of Directors to dissolve the corporation, but in no circumstance shall such disclosure be required to be made prior to the first date on which Grace, in the opinion of counsel for Grace, is obligated to notify such governmental regulators or Grace stockholders, which ever first occurs.  Should Grace be subject to involuntary dissolution or receivership, Grace shall notify Commercial Union of such action no later than thirty days after formal service of process in such proceeding is served on Grace.

B.   Grace shall notify Commercial Union of any material change in the corporate form or ownership of Grace.  Such notice shall be given within thirty days after the adoption of any

18

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000084

resolution, or other action of the Board of Directors, changing such corporate form, but in no circumstance shall such disclosure be required to be made prior to the first date on which Grace, in the opinion of counsel for Grace, is obligated to so notify the relevant governmental regulators or Grace stockholders, which ever first occurs.

XII. <u>EXECUTION</u>

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall be deemed one and the same instrument. This Agreement consists of twenty six (26) typewritten pages, inclusive of signature pages.

XIII. <u>NOTICE</u>

Any statements, communications, or notices to be provided pursuant to this Agreement shall be sent to the attention of the persons indicated below:

For Grace:

(a)  W.R. Grace & Co. -- Conn.
     1750 Clintmoore Road
     Boca Raton, Florida 33487-2707
     (561) 362 - 2000 (Telephone)
     (561) 362 - 1883 (Facsimile)
     Attn: Secretary

19

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER                OB-000085

with a copy to: Director, Corporate Risk
Management

For Commercial Union:

(b)   Commercial Union Insurance Company
      100 Summer Street
      Boston, MA  02110
      (Street Address)

      P.O. Box 9545
      Boston, MA  02205-9545
      (Mailing Address)
      (617) 725-6000 (Telephone)
      (617) 725-6153 (Facsimile)
      Attn:  Mr. James J. McKay

Such addresses may be changed by providing notice pursuant to this
Section.  Notice of change of address is effective only upon
actual receipt.

## XIV.   PARTIAL INVALIDITY

If any provision of this Agreement, or the application of any

term  or  provision,  is  held  to  be  illegal,  invalid,  or

unenforceable under present or future laws, such provision shall

be fully severable.  In such event: (1) the Agreement shall be

construed  and  enforced  as  if  such  illegal,  invalid,  or

unenforceable  provision  has  never  comprised  a  part  of  the

Agreement; (2) the remaining provisions of the Agreement shall

remain in full force and effect and shall not be affected by the

illegal, invalid, or unenforceable provision, or by its severance

from this Agreement, unless the effect of severance of such

20

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

provision shall conclusively make continued performance under this Agreement impossible; and (3)  in lieu of such illegal, invalid, or unenforceable provision, there shall be added automatically as part of this Agreement a provision as similar in intent to such illegal, invalid, or unenforceable provision as may be possible and as may be legal, valid, and enforceable.

## XV.   REMEDY FOR BREACH

If any Party to this Agreement contends that any other Party has materially breached the terms of the Agreement, such Party shall give the other Party to this Agreement notice thereof by certified mail.  The Party contending that the Agreement has been materially breached shall give the other Party twenty (20) days from the date of the actual receipt of notice to cure the alleged breach, before taking any legal action.  The Party to whom written notice of a breach has been given shall not take any legal action under this Agreement within that twenty (20) day period.  However, the failure of a Party to object to one or more breaches or violations of this Agreement shall not constitute a waiver or limitation upon the right of such Party to object to any other breach or violation of this Agreement.

21

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000087

XVI.  ENTIRE AGREEMENT AND AMENDMENTS TO AGREEMENT

This Agreement is the complete and entire agreement of the Parties and may not be modified, changed, contradicted, added to, or altered in any way by any previous or concurrent written or oral agreements or any subsequent oral agreements.  No amendment or variation of this Agreement shall be valid unless made in writing and signed by the Parties.

XVII.  NO CONSTRUCTION AGAINST EITHER PARTY

This Agreement was negotiated at arms-length with all Parties receiving advice from independent legal counsel.  The Parties read this entire Agreement and know the contents hereof, that the terms hereof are contractual and not merely recitals, and acknowledge that they have signed this Agreement of their own free act.  It is the intent of the Parties that no part of this Agreement be construed against any of the Parties because of the identity of the drafter or the fact that Commercial Union is an insurance company.

XVIII.  CHOICE OF LAW

This Agreement shall be construed and interpreted in accordance with, and be governed by, the laws of the State of New York, without regard to principles of conflicts of law.

22

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000088

## XIX.  REPRESENTATION AND WARRANTIES

A.    Grace represents that as of the date of execution of this Agreement, (a) it is not aware of any claim being made against the Policies by any entity formerly owned, controlled, related to, succeeding to Grace's interest, or affiliated with Grace, and whom Grace does not have the authority to bind to this Agreement, and (b) it is not aware of any claim that is going to be made or that is contemplated being made against the Policies after execution of this Agreement, by any entity formerly owned by, related to, succeeding to Grace's interest, or affiliated with Grace. Grace acknowledges that if any entity formerly owned, controlled, related to, succeeding to Grace's interests, or affiliated with Grace makes a Claim under the Policies, Grace shall defend, indemnify and hold Commercial Union harmless pursuant to Section VI.

B.    No Party shall assign, transfer, convey or sell, or purport to assign, transfer, convey or sell to any person, persons, or entity, any cause of action, chose in action, or part thereof, arising out of or connected with the matters released herein, without first obtaining the written consent of the other Party; provided, however, that this sentence shall not prohibit any assignment by a Party by merger, consolidation, operation of

23

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000089

law or other transaction that results in the succession of all or substantially all of such Party's assets. Subject to the foregoing, this Agreement shall extend to and be binding upon the successors and assigns of the Parties.

C. The Parties represent, warrant and agree that they (a) are the sole and lawful owners of all right, title, and interest in and to every Claim or matter released herein; (b) have not assigned or transferred or purported to or attempted to assign or transfer to any person or entity any claim or other matter released herein; and (c) have taken all necessary actions to duly approve the making and performance of the Agreement and that no further approval is necessary.

D. The making and performance of the Agreement will not violate any provision of law, or of the respective articles of incorporation, charters, or by-laws of the Parties.

E. The headings contained in the Agreement are for convenient reference only and shall not in any way alter the meaning or interpretation of the Agreement. The recitals set forth in the Agreement are fully incorporated into and form a part of the Agreement.

258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000090

F.    Each of the Parties represents, warrants and certifies that the person signing the Agreement on its behalf is authorized to execute the Agreement, and that the Agreement constitutes a valid and binding obligation.

IN WITNESS WHEREOF, THE AGREEMENT HAS BEEN READ AND SIGNED IN DUPLICATE ORIGINALS BY THE DULY AUTHORIZED REPRESENTATIVES OF THE PARTIES:

W.R. GRACE & CO.

By: _____    Date: 10/7/98

Name (Print): Vice President & Treasurer

Title: Paul McMahon

Witness: Ellen Walsh    Date: 10/7/98

SWORN to and SUBSCRIBED before me this 7th day of October, 1998.

_____
Notary Public



258380.2

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000091

COMMERCIAL UNION INSURANCE COMPANY

By: _James J. McKay_____    Date: _10/2/98_____
    Mr. James J. McKay
    Environmental Claim Division

Witness: _____    Date: _10-2-98____

SWORN to and SUBSCRIBED
before me this 2nd day
of October  1998.

_____
    Notary Public
My Commission Expires: May 12, 2000

26

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000092