# **EXHIBIT 4**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

-------------------------------------

CHAPTER 11

IN RE:

W.R. GRACE & CO., et al.,

     Debtors.


Case No. 01-1139 (JFK)

Jointly Administered

-------------------------------------


DEPOSITION OF

Professor James B. Shein

May 14, 2009

Chicago, Illinois

Lead:  Peter Van N. Lockwood, Esquire

Firm:  Caplin & Drysdale, Chartered



FINAL COPY

JANE ROSE REPORTING 1-800-825-3341

US District Court - Delaware                 FINAL - May 14, 2009
Chapter 11 - W.R. Grace                      Professor James Shein

Page 2

APPEARANCES:


ON BEHALF OF THE OFFICIAL COMMITTEE OF

PROPERTY DAMAGE CLAIMANTS

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

BY:  MATTHEW KRAMER, Esq.

   (Via Telephonic Connection)

   200 S. Biscayne Boulevard

   Suite 2500

   Miami, Florida 33131-5340

   305.374.7580

   305.374.7593 (Fax)

   mkramer@bilzin.com

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 3

APPEARANCES:  (Continued)


ON BEHALF OF THE UNSECURED CREDITORS
COMMITTEE
STROOCK, STROOCK & LAVAN
BY:  DANIEL J. HARRIS, Esq.
   (Via Telephonic Connection)
   180 Maiden Lane
   New York, New York  10038-4982
   212.806.5400
   212.806.7936 (Fax)
   djharris@stroock.com


ON BEHALF OF THE FUTURE CLAIMANTS COMMITTEE
ORRICK HERRINGTON & SUTCLIFFE
BY:  KATHLEEN ORR, Esq.
   (Via Telephonic Connection)
   Columbia Center
   1152 15th Street, N.W.
   Washington, D.C. 20005-1706
   202.339.8400
   202.339.8500 (Fax)
   korr@orrick.com

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 4

APPEARANCES:  (Continued)


ON BEHALF OF THE DEBTOR W.R. GRACE

KIRKLAND & ELLIS LLP

BY:  DOUGLAS G. SMITH, Esq.

   300 North LaSalle Street

   Chicago, Illinois  60654

   312.862.3374

   312.862.2200 (Fax)

   douglas.smith@kirkland.com


ON BEHALF OF THE ASBESTOS CLAIMANTS COMMITTEE

CAPLIN & DRYSDALE

BY:  PETER VAN N. LOCKWOOD, Esq.

   One Thomas Circle, NW

   Suite 1100

   Washington, DC  20005

   202.862.5000

   202.429.3301 (Fax)

   pvnl@capdale.com

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 5

APPEARANCES:


ON BEHALF OF CONTINENTAL CASUALTY COMPANY

GOODWIN PROCTER

BY:  MICHAEL S. GIANNOTTO, Esq.

   901 New York Avenue, N.W.

   Washington, D.C.  20001

   202.346.4000

   202.346.4444 (Fax)

   mgiannotto@goodwinprocter.com


ON BEHALF OF THE PROPERTY DAMAGE FUTURE

CLAIMANTS' REPRESENTATIVE

   ALAN B. RICH, Esq.

   Elm Place

   1401 Elm Street

   Suite 4620

   Dallas, Texas  75202

   (214) 744-5100

   (214) 744-5101 (Fax)

   arich@arichlaw.com

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 6

APPEARANCES:  (Continued)


ON BEHALF OF MARYLAND CASUALTY and ZURICH

ECKERT SEAMANS CHERIN & MELLOTT, LLC

BY:  LAURA G. STOVER, Esq.

1747 Pennsylvania Avenue, NW

12th Floor

Washington, DC  20006

202.659.6629

202.659.6699 (Fax)

lstover@eckertseamans.com


ON BEHALF OF ALLSTATE

CUYLER, BURK, P.C.

BY:  EDGAR M. WHITING, Esq.

(Via Telephonic Connection)

Parsippany Corporate Center

Third Floor

Four Century Drive

Parsippany, New Jersey 07054

973.734.3200

973.734.3201 (Fax)

ewhiting@cuyler.com

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 7

APPEARANCES:  (Continued)


ON BEHALF OF ONE BEACON AMERICA INSURANCE

COMPANY, DRINKER BIDDLE REAL ESTATE, SETON

INSURANCE COMPANY, GEICO, REPUBLIC INSURANCE

COMPANY

DRINKER BIDDLE & REATH

BY:  WARREN PRATT, Esq.

    (Via Telephonic Connection)

    1100 N. Market Street

    Wilmington, Delaware  19801-1254

    302.467.4224

    302.467.4201 (Fax)

    warren.pratt@dbr.com

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace               Professor James Shein

Page 8

APPEARANCES:  (Continued)


ON BEHALF OF TRAVELERS
SIMPSON THACHER & BARTLETT, LLP
BY:  MINDY LOK, Esq.
   (Via Telephonic Connection)
   425 Lexington Avenue
   New York, New York  10017-3954
   212.455.7976
   212.455.2502 (Fax)
   mlok@stblaw.com



ON BEHALF OF CONTINENTAL CASUALTY COMPANY
FORD MARRIN ESPOSITO WHITMEYER & GLESER,
L.L.P.
BY:  SHAYNE W. SPENCER, Esq.
   (Via Telephonic Connection)
   Wall Street Plaza
   23rd Floor
   New York, New York 10005-1875
   212.269.4900
   212.344.4294  (Fax)
   smspencer@fmew.com

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 9

APPEARANCES:  (Continued)


ON BEHALF OF FEDERAL INSURANCE
COZEN O'CONNOR
BY:  ILAN ROSENBERG, Esq.
   1900 Market Street
   Philadelphia, Pennsylvania  19103
   215.665.2000
   215.665.2013 (Fax)
   irosenberg@cozen.com




JANE ROSE REPORTING
   Cindy Conforti, Court Reporter
   80 Fifth Avenue
   New York, New York  10011
   800.825.3341
   janerose@janerosereporting.com

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 10

INDEX

May 14, 2009

WITNESS                 EXAMINATION

JAMES B. SHEIN

    By Mr. Lockwood:        11
    By Mr. Smith:           145
    By Mr. Rich:            165
    By Mr. Kramer:          171

Page 11

1            (Exhibit 1 marked.)

2            (Exhibit 2 marked.)

3            (Witness duly sworn.)

4            JAMES B. SHEIN,

5    called as a witness herein, having been

6    first duly sworn, was examined and testified

7    as follows:

8                  EXAMINATION

9    BY MR. LOCKWOOD:

10        **Q.  Could you identify yourself for the**

11    **record, sir.**

12        A.  I'm Jim or James Shein, S-H-E-I-N.

13        **Q.  And you're here today in the W.R. Grace &**

14    **Company, et al. bankruptcy case, and in that case,**

15    **sir, have you rendered an expert report?**

16        A.  I did.

17        **Q.  And I'm going to hand you what I've marked**

18    **as Shein Exhibit 1 and ask you if that is your**

19    **expert report that you have so rendered?**

20        A.  It certainly looks like it.  I'd say yes.

21        **Q.  I'm going to be asking you questions about**

22    **that report today, sir.**

23        **Have you ever been deposed?**

24        A.  Yes.

25        **Q.  So you're familiar with the process and**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 12

1    the ground rules?
2        A.  I am.
3        Q.  I would make one request.
4            If I ask you a question and you don't
5    understand it, would you please tell me that, and
6    I'll try and rephrase it to make it more
7    understandable?
8        A.  Of course.
9        Q.  I think what I'll probably do is mostly
10   just go through the report itself, so to clear out
11   some background, in the first paragraph of your
12   report --
13       A.  Do you mind if I refer to it along with
14   you?
15       Q.  Absolutely.  I'm not trying to test your
16   recollection of what you wrote.
17       A.  That's good.  At my age it's important to
18   have a little crib sheet.  Okay.
19       Q.  You refer in the first paragraph to an
20   Exhibit A which is attached to your report which
21   is labeled the curriculum vitae, and in the
22   interest of shortening this, is Exhibit A an
23   accurate summary insofar as it goes of the
24   experience and education and professional work
25   that you have done that you felt was appropriate

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 13

1    to set out as a basis for the report that you
2    rendered in this case?
3        A.   Yes, I did think that.
4        Q.   I'm going to ask you a few questions about
5    it if I could, so would you please turn to Exhibit
6    A.
7        A.   Okay.
8        Q.   You're presently at the Kellogg School of
9    Management at Northwestern University; is that
10   correct?
11       A.   That's correct.
12       Q.   On page 2 of your curriculum vitae you
13   spell out your title and your -- or titles, two of
14   them and courses that you taught there, and those
15   indicate that you taught essentially, well, that
16   you were a professor of, quote, management and
17   strategy; is that correct?
18       A.   That's correct.
19       Q.   You don't teach any courses in law at the
20   Kellogg School I take it?
21       A.   That's correct.
22       Q.   Your resume indicates that prior to
23   teaching at Kellogg you also taught at the Loyola
24   University of Chicago; is that correct?
25       A.   That's correct.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 14

1      Q.  You've been teaching at Kellogg since
2  2002, correct?
3      A.  That's right.
4      Q.  And then before that you taught at Loyola
5  from 1994 to 2001?
6      A.  That's correct.
7      Q.  It indicates under the Loyola entry that
8  you taught both in the graduate school of business
9  and in the school of law; is that correct?
10      A.  That's correct.
11      Q.  And in the school of law the courses you
12  indicate that you taught were, quote, Business
13  Concepts For Lawyers, closed quote, and, quote,
14  New Venture Creation, closed quote.
15      Could you describe for us just sort of
16  generally what those two courses were?
17      A.  Yes, those courses were the business
18  concepts where lawyers took them through the main
19  aspects of business.
20      In other words, the goal was to teach
21  business concepts to people who were about to go
22  and advise businessmen, and so we took them
23  through marketing concepts, finance, things like
24  that.
25      Q.  Was corporation law encompassed within

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 15

1    that course or?

2        A.   No.

3        **Q.   And what about new venture creation?**

4        A.   That's where I actually had the students

5    put together business plans for a new business

6    idea, and it was solely devoted to the business

7    aspect, not the legal aspect.

8        **Q.   Now, during the time that you have been**

9    **teaching at first Loyola and then Kellogg, your**

10   **resume indicates that you also from 1997 to the**

11   **present have been counsel to McDermott, Will &**

12   **Emery here in Chicago; is that correct?**

13       A.   That's correct.

14       **Q.   And in your capacity as counsel at that**

15   **firm, would you regard yourself as practicing law**

16   **or advising lawyers on business matters such as**

17   **the ones you described yourself teaching?**

18       A.   More the latter.

19       **Q.   And while you've been at McDermott, Will &**

20   **Emery, and I don't want to get into anything**

21   **confidential here, but just as sort of a broad**

22   **question, have you participated in the firm's**

23   **representation of Honeywell?**

24       A.   No.

25       **Q.   Turning back to the first page of your**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 16

1    **resume, the summary in the fourth bullet point, it**
2    **states, quote:**
3         **Deemed and, subquote, expert on corporate**
4    **governance, subquote, by a federal court, closed**
5    **quote.**
6         **Could you tell us, sir, what that refers**
7    **to?**
8       A.   That refers to something that a judge said
9    in a case in California where a number of expert
10   reports were presented to the Court, and the judge
11   went through and said:
12        This one's not an expert, this one isn't
13   an expert, this one is, and then when she got to
14   Shein, she said:
15        This one is an expert on governance.
16      **Q.   And what was that case?**
17      A.   Thorpe.
18      **Q.   Thorpe Insulation?**
19      A.   Yes.
20      **Q.   And did you in fact testify in that case?**
21      A.   No.
22      **Q.   Why not?**
23      A.   Because I was stopped from testifying by
24   an objection that the insurance carriers who had
25   submitted these expert reports didn't have

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace              Professor James Shein

Page 17

1    standing in the case.
2        **Q.   And the Court agreed with that objection?**
3        A.   Yes.
4        **Q.   Or sustained it I guess.**
5        A.   Or sustained.
6        **Q.   Okay.  And is that the only time that you**
7    **could have testified or sought to testify in a**
8    **court?**
9        A.   No.
10       **Q.   Within the last four years have you**
11   **testified in other court proceedings?**
12       A.   No.
13       **Q.   How extensively I guess prior to the last**
14   **four years have you testified in court?**
15       A.   I think three times in my career.
16       **Q.   And are you able to give a general**
17   **description of in what capacity you testified**
18   **those three times or do you need to do it one by**
19   **one?**
20       A.   Two times was in my capacity as CEO of a
21   company, one of which was the fact that a customer
22   didn't pay us, and the other one was a few weeks
23   after I arrived at a company it went into
24   bankruptcy, and, of course, I was deposed as well
25   as testifying in court as to the company and its

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 18

1    history and current situation.

2         The only other time was as an expert

3    witness in dispute of bondholders against Itel

4    Corporation.

5    **Q.   And what was the subject matter?  Were**

6    **you -- well, strike that.**

7         **And were you proffered as an expert**

8    **witness in that case?**

9    A.   Yes.

10   **Q.   In what field?**

11   A.   It basically dealt with conflicts that

12   arose with the company and a subsidiary where the

13   supposedly money was being moved around in a way

14   that hurt the bondholders.

15   **Q.   And the substance of your testimony on**

16   **that subject was what?**

17   A.   Twofold, both as an industry expert as

18   well as an expert on governance in those kinds of

19   situations.

20   **Q.   I mean if you could just sort of generally**

21   **describe it.  I mean what was the substance of**

22   **your testimony as opposed to the sort of areas in**

23   **which you were testifying?**

24   A.   I'm trying to summarize.

25   **Q.   Well, if it would help you, I could**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 19

1    **rephrase it and ask you what issues you were**
2    **testifying about.**
3        A.   First of all, had to testify as to the
4    structures between the two entities and how monies
5    flowed.
6            I spent a great deal of time testifying on
7    how monies flowed in particular that showed
8    therefore as proof that that conflict was not only
9    there but violated.
10       **Q.   And the conflict that you referred to in**
11   **that last answer was what?**
12       A.   Again, between the sub -- the way the
13   parent governed the sub.
14       **Q.   So it was some sort of -- the issue**
15   **involved whether the parent had in some way or**
16   **another wrongfully exploited the sub or?**
17       A.   Yes.
18       **Q.   In paragraph 2 of your report, you**
19   **indicate that you have --**
20           MR. GIANNOTTO:  We're back to the regular
21   report now?
22           MR. LOCKWOOD:  Yes.  I'm sorry.
23   BY MR. LOCKWOOD:
24       **Q.   Returning to Shein Exhibit 1 and moving**
25   **away from the appendix thereto, actually, it's the**

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 20

1    first page of the report unnumbered and paragraph
2    2 thereof, you state quote:
3         I have researched, written and taught
4    courses and seminars on fiduciary duties and
5    organizational behavior of trustees, officers and
6    directors of public companies, private entities
7    and not-for-profit organizations, closed quote.
8         The courses that you refer to in that,
9    were they courses at the two universities that we
10   discussed earlier, Loyola and Kellogg, or did they
11   include courses elsewhere as well?
12      A.   That's primarily the two that you
13   mentioned.
14      Q.   What about the seminars.  When did you
15   conduct them or participate in them?
16      A.   All over.  At Kellogg, different ones that
17   are mentioned in my CV, and, in particular,
18   sometimes where they're not mentioned in there
19   where I was asked to come and talk internally to
20   companies or to even consulting firms who deal
21   with companies.
22      Q.   You referenced in that last answer your
23   resume in identifying places where the seminars
24   were, and turning back to your resume, there's
25   several pages under a caption entitled Speeches

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 21

1      and Executive Education, paren, Selected, closed

2      paren.  Is that the material that you were

3      referring to?

4         A.   Yes.

5         Q.   Without going through them one by one,

6      which would be a tedious job indeed, is it

7      possible to generalize as to whether or not in the

8      seminars that you referred to in paragraph 2 and

9      also the list that we're looking at in Exhibit A

10     that you were lecturing on business topics or

11     legal topics or both?

12        A.   Business topics.

13        Q.   In paragraph three of your expert

14     report --

15        A.   Back to --

16        Q.   Back to the front.  Sorry to jump around

17     on you.

18        A.   That's all right.

19        Q.   You've stated that you reviewed the WRG

20     Asbestos Pi Trust Agreement, which you then define

21     as The Trust Agreement, and the WRG Asbestos PI

22     Trust Distribution Procedures, which you then

23     define as TDP.

24            I'm going to hand you the second and

25     hopefully the only other premarked exhibit that

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 22

1    I'm going to have marked here today, and for the
2    folks on the phone, the document itself is
3    captioned Exhibit Book to First Amended Joint Plan
4    of Reorganization and Disclosure Statement as of
5    February 27, 2009.
6        For the convenience of the witness I have
7    posted a couple of Post-It type notes on two of
8    the exhibits that are contained in this Shein
9    Exhibit 2, the first one being Exhibit 2 to
10   Exhibit Book, Asbestos Pi Trust Agreement, and the
11   second one being Exhibit 4 to Exhibit Book, Trust
12   Distribution Procedures, and I'm going to hand you
13   this Professor Shein, and I'm going to ask you
14   whether the Exhibit 2 and the Exhibit 4 that I
15   just referred to were the documents that you
16   reviewed as you recite in paragraph 3 of your
17   expert report.
18       A.   They look to be the same.
19       Q.   Feel free to keep that in front of you
20   because when we get further in your report you
21   make references to either the Trust agreement or
22   the TDP and specific sections, and I'll be asking
23   you questions about some of that, and, again,
24   rather than attempting to probe your memory, it
25   will probably expedite matters if you feel free to

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 23

1     just look at anything that is referenced.

2          Skipping over to paragraph 6 of your

3     report, it's under a heading called Powers of the

4     TAC.

5          I believe back in paragraph 3 of the

6     report you define the term TAC as the Asbestos PI

7     Trust Advisory Committee, correct?

8       A.   Yes.

9       Q.   So using that definition, you state in

10    this paragraph, quote:

11          Virtually all significant decisions by the

12    trustees under the Trust agreement require consent

13    by or consultation with the TAC and the asbestos

14    PI Futures Claimants' Representative, the Futures

15    Representative.

16          The TAC therefore will be able to

17    influence, and potentially control, the

18    administration of the Trust, including amending

19    the procedures for reviewing and paying claims of

20    PI claimants, some but not all of whom are or will

21    become clients of the TAC members.

22          To the extent that you ever considered

23    particular provisions of -- well, let me back up.

24    That's not well phrased.

25          Your report goes on and in later

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 24

1    paragraphs discusses a number of specific

2    provisions in the Trust agreement.

3         Is it fair that virtually all significant

4    decisions by the trustees under the Trust

5    agreement sentence is intended as just sort of a

6    descriptive lead-in to the more specific

7    provisions of the Trust agreement that you talk

8    about later or is it basically intended to

9    encompass every single place in the Trust

10   agreement where there is a consent or a

11   consultation right spelled out in the document?

12       A.   Basically it's the ones that I wanted to

13   point out going through.

14       Q.   So we can look at those particular

15   provisions that you referred to to understand what

16   the basis is for this general statement at the

17   beginning of paragraph 6, is that fair?

18       A.   That's fair.

19       Q.   And, similarly, the statement about the

20   TAC being able to influence and potentially

21   control the administration of the Trust, is that

22   again a sort of general lead-in statement to a

23   more specific discussion of particular provisions

24   that form the basis for the opinion or conclusion

25   expressed in that sentence?

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 25

1      A.   That's true, but looking at both

2    sentences, when you look at those two documents

3    taken as a whole, you still come to the same

4    conclusion.

5      **Q.   But to the extent that there were**

6    **particular provisions that you felt were**

7    **significant in supporting these conclusions you've**

8    **generally attempted to refer to those in the body**

9    **of your report?**

10     A.   As far as those that jumped out at me,

11   yes.

12     **Q.   In paragraph 7 you state in the first**

13   **sentence:**

14        **There are a large number of matters that**

15   **the TAC and the futures representative must**

16   **consent to before the trustees can take action**

17   **including (but not limited to), and then you have**

18   **a colon, and you list a number of specific**

19   **matters.**

20        **When you use the phrase "must consent to,"**

21   **are you intending to say that absent such consent**

22   **the trustees can in no way take action?**

23     A.   I just read it that consent's required.

24     **Q.   Well, now I'm going to direct your**

25   **attention to specific provisions in the document.**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 26

1       A.  Okay.

2          Q.  Would you take a look at the Trust

3       agreement, and, in particular, would you turn to

4       Section 5.7 of that document which is on page 32.

5       A.  Okay.

6          Q.  Have you read the provisions of Section

7       5.7 in connection with your preparation of this

8       report?

9       A.  I believe I did.

10         Q.  And you'll see that Subsection A deals

11      with the consultation process, and Subsection B

12      deals with the consent process, correct?

13      A.  That's what it says.

14         Q.  Now, dealing with the statement that you

15      made a few sentences ago about the consent

16      requirement in paragraph 7 of your report, did you

17      look at subparagraph B(2) of this document?

18      A.  I believe I did.

19         Q.  Well, first, when you said that the

20      trustees must consent to actions before the

21      trustee can take them, did you --

22         MR. GIANNOTTO:  Objection to form.  You

23      said the trustees must consent to the trustee.

24         MR. LOCKWOOD:  I'm sorry.  I misspoke.

25      Thank you.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 27

1    BY MR. LOCKWOOD:

2        Q.   In looking at the sentence where it says

3    that the TAC and futures representative must

4    consent to --

5        A.   I'm sorry.  Where are you?

6        Q.   Well, I was going back to paragraph 7 of

7    your report.

8        A.   Oh.

9        Q.   And the colloquy that we had had earlier

10   about it wherein you said that the TAC in

11   particular had to consent to things in order that

12   the trustees could carry them out, and my question

13   is did you or do you intend in your report to say

14   that the TAC has absolute discretion to deny its

15   consent to anything that the trustees propose that

16   requires their consent?

17       A.   I think it's clear that they can say:

18            You don't have our consent.

19       Q.   Well, do you see the second sentence of

20   subparagraph 2, 5.7(b)(2) to be specific which

21   states quote:

22            The TAC may not withhold its consent

23   unreasonably, closed quote.

24            Did you somehow or another interpret the

25   TDP as giving them absolute discretion or is there

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 28

1      some limitation on their power to withhold consent

2      contained in the words that I just read to you?

3          A.   I read it as though they had effective

4      veto power wherever it said consent because there

5      is no test or definition here of what's

6      unreasonable.

7              Given that the TAC has these powers

8      surrounding the trustee, I don't see the trustee

9      being able to do much as far as saying that's

10     unreasonable.

11         Q.   Well, would you turn next to subparagraph

12     3 of Section 5.7(b)(3).

13         A.   Okay.

14         Q.   Did you read that subparagraph when you

15     were preparing your report?

16         A.   I assume so.

17         Q.   Did you see the provisions there for

18     resolving any dispute if the TAC proposed to

19     withhold its consent to an action proposed by the

20     trustees?

21         A.   I'm sure I read it.

22         Q.   Well, reading it now, would you agree with

23     me that if you read subparagraph 5.7(b)(2) and

24     5.7(b)(3) together that in fact the trustees can

25     challenge the TAC's refusal to consent to actions

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace              Professor James Shein

Page 29

1   that the trustees propose to take?

2      A.   They may have a legal right to do so.  I

3   doubt they would.

4      Q.   And you doubt that because of what?

5      A.   Because the trustee power of the TAC over

6   the trustee for everything from who's the trustee

7   to compensation for the trustee to just how many

8   years they could work together, I seriously doubt

9   that the trustee is going to challenge the TAC.

10     Q.   And have you at any time prior to today --

11   let me strike that.  I'll start over again.

12         Are you aware that the Trust provisions in

13   this document are generally similar, if not

14   identical, to the provisions of various other

15   asbestos bankruptcy trusts that have been

16   established in the last 10 or 20 years?

17     A.   I understand that that is similar.

18     Q.   And, in particular, that the provisions

19   we've just been looking at are kind of standard

20   provisions in trust agreements in asbestos

21   bankruptcy trusts?

22         MR. GIANNOTTO:  Object to form.

23         You can answer.

24         THE WITNESS:  Okay.

25         If I understand your question, yes.

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 30

1    BY MR. LOCKWOOD:

2       **Q.   And as part of your background and**

3    **experience in which you just testified about your**

4    **belief of what the trustees would or wouldn't do,**

5    **do you know anything about how the various trusts**

6    **with these kind of provisions in them have in fact**

7    **operated over the years?**

8       A.  No.

9       **Q.   So your opinion in this matter is based on**

10   **some judgment by you of human behavior?**

11      A.   That's part of it.

12      **Q.   And what's the rest of it?**

13      A.   That this thing is designed with what I

14   would describe as perverse incentives to not treat

15   everybody equally.

16      **Q.   And just to be complete about this**

17   **particular topic that we are talking about, I take**

18   **it you also have read Section 7.13 of the Trust**

19   **agreement which is referred to in Section**

20   **5.7(b)(3)?**

21         MR. GIANNOTTO:  What page is that?

22         MR. LOCKWOOD:  It's on page 46.

23         MR. GIANNOTTO:  Thank you.

24         THE WITNESS:  Yes.

25   BY MR. LOCKWOOD:

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 31

1     Q.   And that provides specifically, does it

2   not, for dispute resolution of disputes that could

3   arise as a result of the consent provisions set

4   forth in Section 5.7(b) in the case of the TAC of

5   this trust agreement?

6     A.   It does have that.

7     Q.   So if I understand you correctly, you're

8   basically of the view that 5.7(b)(2) and (3) and

9   7.13 are in effect window dressing.

10    A.   That's a good description.

11    Q.   And, as I said earlier, you're aware of no

12  instances in which any trustees have ever invoked

13  similar provisions in similar trust agreements to

14  actually compel TACs to agree to things that they

15  didn't want to agree to.

16    A.   Not in asbestos cases, no.

17    Q.   And just to be absolutely sure, you're

18  unaware of that because you've made no effort to

19  learn anything about it, inquire into it or

20  otherwise become knowledgeable about it.

21    A.   No, because -- the answer's no.

22    Q.   Moving to paragraph 11?

23    A.   Of which --

24    Q.   Of your report.

25        At the end of that you make the general

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 32

1    statement, quote:

2         **The choice of certain claimants' outside**

3    **counsel as TAC members will create incentives for**

4    **unfair and unequal treatment, closed quote.**

5         **Are the incentives that you refer to there**

6    **spelled out in subsequent portions of your report?**

7    A.   I believe so.

8    **Q.   In paragraph 13 of your report you start**

9    **out by saying, quote:**

10        **Based upon my review of the Bankruptcy**

11   **Rule 2019 statements filed by the proposed members**

12   **of the TAC or their law firms attached as Appendix**

13   **B, you understand various things.**

14        **Could you tell us generally what the scope**

15   **of your review of the bankruptcy 2019 statements**

16   **was that you refer to in that language?**

17   A.   I wasn't looking at the bankruptcy rule

18   itself, the purpose of doing that.

19        My purpose of doing that was I asked

20   Mr. Giannotto in fact, I said:

21        I'm going through here understanding that

22   the people who are involved in this are also

23   plaintiffs' counsel for quite a few asbestos

24   litigants.

25        I said:

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 33

1        How do I know that?  And so he sent me the

2   2019 statements to answer that question.

3        **Q.   And just so the record is clear on this,**

4   **the 2019 statements that you referred to are**

5   **listed in Exhibit B to your expert report in**

6   **paragraphs 4, 5, 6 and 7; is that correct?**

7        A.   I believe so, yes.

8        **Q.   And you were able to identify the law**

9   **firms referenced in those four paragraphs as being**

10  **the proposed members of the TAC by looking at the**

11  **last page of the Trust agreement which is Exhibit**

12  **2 to the exhibit book.**

13       A.   Where are you?

14       **Q.   The last page -- right there to your left.**

15       **Is that how you identified those four law**

16  **firms as being the proposed TAC?**

17       A.   Yes.

18       **Q.   Okay.  Now, when you looked at those 2019**

19  **statements, what exactly did you look for?  And by**

20  **that I meant did you look to see how many**

21  **claimants each one of the law firms represented**

22  **that were set forth in the 2019 statements?**

23       A.   Basically.

24       **Q.   Did you do anything more such as trying to**

25  **identify what kind of claims those claimants were**

US District Court - Delaware                   FINAL - May 14, 2009
Chapter 11 - W.R. Grace                        Professor James Shein

Page 34

1      asserting?

2         A.   No.

3         Q.   Is it fair to say that as a general

4      proposition the number of claimants represented by

5      each of the four firms that you were looking at

6      were in the hundreds?

7         A.   No.

8         Q.   As you sit here can you recall how many

9      claimants each one of the four firms represented?

10        A.   No, but I believe it was considerably

11     more.

12        Q.   More than hundreds.

13        A.   Yes.

14        Q.   Thousands.

15        A.   I believe so, but I hate to say without

16     having that in front of me.

17        Q.   So it was a lot.

18        A.   Yes.  "A lot" is a good term.

19        Q.   Do you know anything about the four firms

20     other than their names as set forth in the Trust

21     agreement?

22        A.   No.

23        Q.   And, in particular, do you know whether --

24     strike that.

25            And, in particular, do you know what kinds

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace               Professor James Shein

Page 35

1    of claims the claimants that they represent have?

2        A.   No.

3        Q.   And, in particular, you don't know, for

4    example, whether one or more of the firms

5    specializes in representing people with various

6    types of malignant diseases such as mesothelioma

7    or lung cancer as compared with others of the

8    firms represent more nonmalignancy claims.  You

9    don't know anything about that.  Is that fair?

10       A.   That's correct.

11       Q.   And so you have made no investigation to

12   determine whether or not the spectrum of claims

13   represented by any or all of the TAC members is

14   sort of representative of the spectrum of claims

15   that are going to be presented to this Trust?

16       A.   No, not specifically.

17       Q.   When you say "not specifically," have you

18   done so generally?

19       A.   I assume that they represented people who

20   would take from the Trust.

21       Q.   And that given the large number of the

22   claimants they represent, did you make any

23   assumption about whether or not the nature of

24   those claims was representative of the nature of

25   the claims that would be presented by the entire

US District Court - Delaware             FINAL - May 14, 2009
Chapter 11 - W.R. Grace                  Professor James Shein

Page 36

1    universe of claimants that would make claims

2    against the Trust?

3       A.   To see if the demographics of theirs,

4    their subset match the total pop?

5       Q.   Not the demographics, but the types of

6    claims, the diseases, the exposure to W.R. Grace

7    products, things of that nature.

8       A.   No.

9       Q.   In paragraph 14 of your report you state

10   that the members of the TAC must act as

11   fiduciaries to all trust beneficiaries,

12   parentheses, all present and future PI claimants,

13   closed parentheses, not merely present PI

14   claimants, paren, as specified in the Trust

15   agreement, closed paren.

16        Just so this is clear, you're saying that

17   in your opinion the TAC has some sort of fiduciary

18   obligation to future claimants; is that correct?

19      A.   If they have the power they have over what

20   happens to a finite pie, yes.

21      Q.   But you also understand that the Trust

22   agreement purports to create the TAC as a

23   representative of present claimants and the future

24   claimants' representative as the representative of

25   future claimants; is that correct?

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 37

1    A.  I understand it is.

2      **Q.  And so notwithstanding that division of**

3    **responsibilities that's set forth in the Trust**

4    **agreement, you nevertheless are of the view that**

5    **the TAC has fiduciary duties to the future**

6    **claimants, and I guess presumably the future**

7    **claimants' representative has fiduciary**

8    **obligations to the present claimants?**

9      A.  I don't know if I made that -- if I

10   thought about that.

11     **Q.  About the futures representative.**

12     A.  Right.

13     **Q.  But you did think about the present**

14   **claimants.**

15     A.  Yes.

16     **Q.  Do you have any knowledge or opinion as to**

17   **what the purpose was of distinguishing in the**

18   **Trust document itself between the TAC as**

19   **representative of present claimants and the future**

20   **claimants' representatives as the representative**

21   **of future claimants?**

22     A.  I assumed that was the legal structure.

23     **Q.  But do you have any view as to why that**

24   **legal structure was created?**

25       MR. GIANNOTTO:  Objection as to form.

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace               Professor James Shein

Page 38

1          You can answer.
2          THE WITNESS:  Right.  I don't purport to
3     be a legal expert on this.
4     BY MR. LOCKWOOD:
5        Q.  Well, you are an expert on corporate
6     governance, right?
7        A.  Okay.
8        Q.  And in that capacity -- well, strike that.
9          You also purport to be an expert on
10    governance of trusts if I understand it; is that
11    correct?
12       A.  Yes.
13       Q.  Is it your opinion that as a matter of
14    either corporate or trust law there is something
15    improper about trying to limit -- well, let me
16    back up.  I'm getting ahead of myself.
17          We have three categories of trust
18    fiduciaries in this Trust, don't we?  Trustees,
19    the TAC and the futures representative.
20       A.  Yes.
21       Q.  The trustees have fiduciary obligations to
22    everybody, correct?
23       A.  Correct.
24       Q.  I mean all the Trust beneficiaries,
25    correct?

US District Court - Delaware               FINAL - May 14, 2009
Chapter 11 - W.R. Grace                    Professor James Shein

Page 39

1     A.  Correct.
2        Q.   The TAC purports to have fiduciary duties
3     only to present claimants under the agreement,
4     correct?
5     A.  Correct.
6        Q.   And the futures representative purports to
7     have only fiduciary duties to the future
8     claimants, correct?
9     A.  Correct.
10       Q.   Are you saying that that division of
11    responsibility between the TAC and the futures
12    representative in this document is in some manner
13    or another is in consistent with corporate or
14    trust law?
15    A.  I don't know.  I don't know what the trust
16    law is.
17       Q.   Well, okay, let's assume then -- since
18    you're an expert I can ask you hypotheticals.
19       Let's assume the trust law in the context
20    of this kind of a trust.
21    A.  Um-hmm.
22       Q.   Would permit you to have separate
23    fiduciaries for these two categories of Trust
24    beneficiaries.
25       Is it your opinion that, notwithstanding

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 40

1     **that, the TAC would have a fiduciary duty to**
2     **future claimants that extends beyond what the**
3     **Trust document itself purports to create?**
4        A.  Yes.
5        **Q.   And why is that?**
6        A.   Because they effectively are stepping in
7     the shoes of the trustee by ordering control of
8     the trustee.
9        **Q.   And since we try and keep this in an**
10    **orderly fashion, with respect to your reference to**
11    **their control of the trustee, is it fair that**
12    **subsequent portions of this report identify the**
13    **nature and scope of the control that you're just**
14    **referring to?**
15          MR. GIANNOTTO:  Objection as to form.
16          You may answer.
17          THE WITNESS:  I believe it's all through
18    the report.
19    BY MR. LOCKWOOD:
20       **Q.   We'll come to that then.**
21       **In the discussion contained in paragraphs**
22    **14 through 17 of your report, is it fair to say**
23    **that you view there's a conflict of interest on**
24    **the part of TAC because, on the one hand, you view**
25    **them as having fiduciary obligations to all Trust**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 41

1      beneficiaries, and, on the other hand, because
2      they or their law firms represent individual
3      claimants against the Trust, they have a
4      potentially conflicting set of fiduciary duties to
5      the individual claimants that they or their firms
6      represent?
7          A.  I think it's more than potentially.
8          Q.  Putting aside the word "potentially," that
9      is the conflict between duties to Trust
10     beneficiaries as a whole and duties to individual
11     clients for whom they serve as counsel presenting
12     claims to the Trust.
13         A.  Yeah, this is a conflict.
14         Q.  Is the nature of the conflict as you see
15     it described in paragraph 16 of your report?
16         A.  I believe so.  It may be mentioned
17     elsewhere.
18         Q.  But this paragraph 16 is sort of the
19     fundamental conflict that you see?
20         MR. GIANNOTTO:  Object.  Objection as to
21     form.
22         You may answer.
23         THE WITNESS:  Again, it may be throughout
24     here, but, yeah, it does talk about it here.
25     BY MR. LOCKWOOD:

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 42

1          Q.   Now, you understand I take it that the
2     purpose of the Trust is to pay claims that are
3     qualified to be paid under the Trust agreement and
4     the TDP, correct?
5          A.   I believe so, yes.
6          Q.   And so that there's no necessary conflict
7     -- strike that.
8              Given that fact, is it, is it fair to say
9     your view of the conflict is not so much that the
10    TAC member law firms are presenting claims to the
11    Trust, but, rather, that they may be presenting
12    claims to the Trust that are in some manner or
13    another not entitled to payment, and thereby their
14    payment would in some manner or another dilute the
15    amounts available to pay other valid claims?
16         A.   I think that's a good summary.
17         Q.   And the conflict with the TAC arises
18    because in your view the TAC has some sort of role
19    in the Trust agreement under which they have a
20    duty to make sure that nonmeritorious claims do
21    not get paid?
22         A.   That's correct.
23         Q.   You're aware that the trustees, the TAC
24    and the futures representative take the Trust
25    documents as they find them when they actually

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 43

1    **come into their respective offices, and that they**

2    **don't have any initial role in rewriting them.**

3          MR. GIANNOTTO:  Objection as to form.

4          THE WITNESS:  I'm not sure what you mean.

5    BY MR. LOCKWOOD:

6       **Q.   Well, okay.  I'll rephrase it.**

7       A.   You got a couple of (indicating.)

8       **Q.   These Trust documents that you see before**

9    **you.**

10      A.   Um-hmm.

11      **Q.   That you opined about, as of today they're**

12   **not operative, correct?**

13      A.   That's correct.

14      **Q.   And they will not become operative until**

15   **the W.R. Grace bankruptcy plan is approved by the**

16   **Court and is implemented.**

17      A.   That's correct.

18      **Q.   And, indeed, neither the TAC nor the**

19   **trustees have yet signed the Trust agreement, and**

20   **nor are they as yet undertaking any duties under**

21   **the Trust documents, correct?**

22      A.   I would assume that's correct.

23      **Q.   Do you understand that when it comes time**

24   **to execute the Trust agreement and the TDPs as a**

25   **result of the fact that they're embedded in a**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 44

1    bankruptcy plan, those documents themselves in the

2    form that you're looking at them will be binding

3    on the Trust.

4        A.   I would assume so.

5        Q.   And that the only way that the trustees,

6    the TAC and the futures representative can somehow

7    or another change that would be to go through the

8    process for amending the Trust documents.

9        A.   I believe so.

10       Q.   Okay.  Starting with the existing trust

11   documents and ignoring the amendment process, what

12   is your understanding of the role that the TAC has

13   in determining whether individual claims are or

14   are not recognized as meritorious or valid?

15       A.   I think I described several places in my

16   report.

17       Q.   Well, this one I'm going to ask you from

18   memory because I don't remember which places

19   you're referring to.

20           What role does the TAC have that, and you

21   can feel free to turn to your report to reference

22   it.

23           What role does the TAC have in individual

24   claims resolution in this Trust agreement?

25       A.   Well, they have it effectively, well, I've

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 45

1    been looking at my report, by the very fact that
2    they have say-so in the definitions of what claims
3    are acceptable.
4          I believe they have influence on the
5    paperwork that's needed, influence on amounts that
6    get paid for the different levels of how much the
7    claimants will receive.
8          If you want I'll go through this whole
9    thing, but there's really a number of ways that
10   can influence it.
11      **Q.   Well, let's talk about some of the ones**
12   **you just mentioned.**
13          **When you say "influence on the amounts**
14   **that can be paid," are you talking about the**
15   **provisions in the Trust Distribution Procedures**
16   **which is Exhibit 4 to Shein Exhibit 2 that lists**
17   **specifically the values that are applicable to**
18   **what are called expedited review claims?**
19      A.   Well, if you want, I'll just go through my
20   report.  That might be easier.
21      **Q.   Well, okay.**
22      A.   I mean even starting with where they have
23   consent can begin to affect these things, such as
24   the amendment of the Trust agreement, changing the
25   disease levels, the average levels -- values of

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 46

1   the criteria, determining payment percentages,

2   developing the exposure criteria, requiring the

3   claimants to provide additional kinds of medical

4   devices -- excuse me, or not developing methods

5   for auditing the reliability of that, establishing

6   binding and nonbinding arbitration procedures,

7   creating as well as changing the proof of claim

8   forms even, determining whether a claimant

9   including their clients must have previously filed

10  a personal injury claim, disclosing information to

11  comply with an obligation under an insurance

12  policy, you know, limiting or suspending normal

13  order of payments, changing ratios, changing the

14  form of release all can affect things, and then --

15      **Q.   Now, at the risk of interrupting you**

16  **before, because I don't want you to go through**

17  **30 -- the entire document.**

18      A.   But it almost takes that to show the huge

19  power and influence --

20      **Q.   Well, we'll go through this in more**

21  **detail, but looking at the ones you just read,**

22  **which I take it were referencing paragraph 7 of**

23  **your expert report?**

24      A.   That's correct.

25      **Q.   First, how many of the things that you've**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 47

1    listed does the TAC take as a given when the Trust
2    is first formed and can only and would only be
3    changed by amendment?
4        A.   A number of them.
5        Q.   For example, changing the disease levels,
6    which is the second bullet point, by definition
7    they have to change those.
8        A.   Correct.
9        Q.   And until and unless they do or try to,
10   they take them as they find them, correct?
11       A.   Or they can consult with a trustee and
12   they get changed.
13       Q.   But until they make a change they take
14   them as they exist, and they apply generically to
15   everybody.
16           MR. GIANNOTTO:  Objection to form.
17   BY MR. LOCKWOOD:
18       Q.   Correct?
19       A.   It's -- it sounds like correct.
20       Q.   And redetermining the payment percentage,
21   you start with an initial payment percentage, and
22   that applies to everybody until it's changed,
23   correct?
24           MR. GIANNOTTO:  Objection as to form.
25           THE WITNESS:  It sounds correct.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 48

1    BY MR. LOCKWOOD:

2    **Q.   And if you redetermined the payment**

3    **percentage, that redetermination applies to all**

4    **claimants, not just the claimants of the TAC**

5    **members, correct?**

6    A.   Right.  But getting back to your earlier

7    statement, if they have a certain subset that they

8    tend to represent, they could change that

9    influence more to their -- they could influence

10   the change to benefit their clients the way this

11   is set up.

12   **Q.   So you're of the view that the trustees**

13   **urged by the TAC could set up differential payment**

14   **percentages such as one category of claims would**

15   **get paid a different percentage than another**

16   **category of claims?**

17   A.   It appears they have that power.

18   **Q.   And you're stating that because of your**

19   **legal expertise in reading these documents and**

20   **looking at the statutory framework in which they**

21   **were created and which they will be enforced in**

22   **the future?**

23   A.   No.

24   **Q.   So what's the basis for your assumption or**

25   **your statement that you can have differential**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 49

1    **payment percentages?**
2        A.   Because the incentives set up, and looking
3    at this as a whole, the influence they have could
4    get those changes made.  Why put those incentives
5    in there?
6        **Q.   So you would read these Trust documents**
7    **as, for example, the TAC consisting of four law**
8    **firms could exert influence on a trustees' and**
9    **ignoring the futures representatives' role compel**
10   **the amendment of this document in a matter that**
11   **would say hypothetically:**
12           **The clients of the four law firms get paid**
13   **a hundred percent, and everybody else gets paid 15**
14   **percent.**
15       A.   I doubt they'd state it that exact way,
16   but effect would be the same.
17       **Q.   The effect if they were able to do it?**
18       A.   The effect if they were able to do it.
19       **Q.   And you're asserting that in your judgment**
20   **they would be able to do it.**
21       A.   Right, and why have it built that way that
22   it could happen?
23       **Q.   Well, I'm not here to answer questions,**
24   **but, if you want to have colloquy, in my opinion**
25   **as a lawyer they couldn't do it, which is why I'm**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 50

1    **pressing you on the basis for your opinion that**
2    **they could.**
3        A.   Okay.  But that's what the lawyers are I'm
4    going to sure end up arguing the legal side.
5        **Q.   Well, so let's make it absolutely clear.**
6            **You're not here in rendering your expert**
7    **report to testify about your interpretation of the**
8    **legal rights and relationships that are created by**
9    **the Trust agreement.**
10       A.   That's correct.
11       **Q.   And not to define a point on it, but your**
12   **fundamental view here is that because the members**
13   **of the TAC represent clients that get paid fees**
14   **for the claims that those clients are paid on by**
15   **the Trust that that creates an economic incentive,**
16   **and, indeed, a fiduciary obligation on the part of**
17   **those lawyers to prefer the interest of their**
18   **individual clients in every regard to the**
19   **interests of the Trust beneficiaries that they do**
20   **not represent.**
21           MR. GIANNOTTO:  Can I just object?
22           I think your question -- you said it
23   created a fiduciary duty to benefit their own
24   clients.  I think the question was kind of screwed
25   up.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 51

1      MR. LOCKWOOD:  I believe Professor Shein

2   has opined already both in this report and in his

3   testimony that it is his opinion that the TAC

4   members as lawyers have fiduciary obligations to

5   maximize the recovery of their own clients from

6   the Trust; is that correct?

7      MR. GIANNOTTO:  I'm sorry.  I

8   misunderstood your question.  I stand corrected.

9   BY MR. LOCKWOOD:

10   **Q.  Is that correct?**

11   A.  Assuming I understand your question, I'd

12   say it's correct.

13   **Q.  And they have a competing set of fiduciary**

14   **duties, as you view it, to all the claimants as a**

15   **whole including the vast number that they do not**

16   **represent individually, correct?**

17   A.  That's correct.

18   **Q.  And the incentivization that you find in**

19   **these documents to prefer one over the other**

20   **arises out of the fact that with respect to their**

21   **own clients they earn fees if the clients' claims**

22   **which would otherwise be rejected by the Trust are**

23   **paid by the Trust, correct?**

24   A.  Would you rephrase?  You dipped into...

25   **Q.  Well, your report uses in describing**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 52

1    conflicts talk about the incentive on the part of

2    the Trust firms for their individual clients to

3    have the Trust administer it so that unqualified

4    claims, your word, of their clients, are paid.

5       A.  Could be paid.

6       Q.  Could be paid.  No, not could be paid.

7    Isn't it would be paid?

8       A.   They have an incentive to have that

9    happen.

10      Q.   Right.  And so in part at least the

11   question of whether that incentive creates a

12   genuine as opposed to a theoretical conflict of

13   interest on their part depends on whether they

14   could implement that incentive, doesn't it?

15      A.   I think that conflict is there, not,

16   not -- I think that conflict is there from the

17   start.

18      Q.   Let me rephrase the question then.

19         Supposing the document somehow or another

20   didn't give the TAC powers to favor their own

21   clients, then the theoretical conflict between

22   representing individual clients and representing

23   the community of clients -- of claimants as a

24   whole would not exist, would it?

25      A.   It would still be there.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 53

1      **Q.  It would be there because there would be**
2 **an incentive to perform something that was**
3 **impossible to perform?**
4      A.  Why did the change you made make it
5 impossible to perform?  You lost me.
6      **Q.  I was hypothesizing that a trust document**
7 **could be created in which the powers of the TAC**
8 **were such that no matter what the incentives were**
9 **to favor their client's claims over the claims of**
10 **other they simply lacked the power to accomplish**
11 **that.  That's a hypothetical.**
12      A.  If that power was removed, yes.
13      **Q.  And so at bottom, in order to determine**
14 **the materiality of the supposed conflict of**
15 **interest here --**
16      A.  Let me back up for a second here.
17      The power and the incentive would have to
18 be gone.
19      **Q.  Well, if you get rid of the power, why**
20 **does the incentive matter?**
21      A.  It depends on how you get rid of the
22 power.
23      **Q.  Well, I mean, look, if I'm the treasurer**
24 **of a company and have power over the check-writing**
25 **capacity, I have an incentive to embezzle money**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 54

1    from the company, don't I?

2        A.   Yes.

3        Q.   Indeed, everybody in the universe that has

4    any measure of control over funds that don't

5    belong to them has an incentive, the way you use

6    it, to take those funds for their own benefit,

7    don't they?

8            MR. GIANNOTTO:  Objection to form.

9            THE WITNESS:  There is that potential

10   conflict.

11   BY MR. LOCKWOOD:

12       Q.   And so we have laws to prevent people from

13   acting on those incentives, don't we?

14       A.   Yes.

15       Q.   And in the case of trusts where money is

16   entrusted to the care of people who might steal

17   it, we have trust law and other documents aimed at

18   making sure that the incentive to misappropriate

19   it is either eliminated entirely or reduced to the

20   maximum extent feasible.  Is that fair?

21       A.   It sounds fair.

22       Q.   So the ability of the TAC to actually act

23   on the incentive to favor their own clients is

24   dependent on the opportunities that the Trust

25   documents provide for them to actually accomplish

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 55

1    **that favoritism; isn't that correct?**
2        A.   I guess what I'm saying is it's correct
3    that they have the incentive to do it, and it may
4    be perfectly legal.
5        **Q.   I'm asking you about the opportunity to**
6    **act on the incentive, and I'm trying to find out**
7    **whether you agree or disagree with the proposition**
8    **that in order to determine whether a conflict of**
9    **interest is material, one needs in the real world**
10   **to determine what the opportunities to act under**
11   **the conflict of interest are?**
12       A.   I think I understand what you're asking,
13   and I would say yes.
14       **Q.   So going back to your list in paragraph 7,**
15   **let's back up a little bit about how the Trust**
16   **agreement purports to work.**
17           **First, these provisions that you referred**
18   **to earlier and that are contained in paragraph 7**
19   **are provisions where the trustees are the parties**
20   **for the Trust who initiate the action and then**
21   **seek consent from the TAC, correct?**
22       A.   For these particular things, yes.
23       **Q.   Did you see anything in the Trust**
24   **agreement that gave the TAC some power to initiate**
25   **and seek to compel the trustees to make changes in**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 56

1    the Trust documents?

2        A.   Well, they only seek to have it done.

3        Q.   What I'm trying to focus on is let's

4    assume hypothetically that the TAC would like to

5    see a change in the disease levels, your second

6    bullet point in paragraph 7.

7            How under the Trust agreement do you

8    believe they could compel the trustees to make

9    such a change if they were the ones that were

10   initiating it, the idea to making it?

11       A.   First of all, they certainly have the

12   power to ask for that.  That would be the starting

13   point.

14       Q.   Anybody could walk in off the street and

15   ask the trustees to do something, can't they?

16       A.   In theory.

17           But then with this cumulative power that I

18   go through in my entire report, it's tough for the

19   trustee to say no.

20       Q.   Putting aside for the moment what you

21   identify later in your report as influence by the

22   TAC over the trustees through changes in

23   compensation and replacement, which presumably you

24   enumerate because they are provisions which, in

25   your view, would cause the trustees to want to

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 57

1    **curry favor with the TAC for their own economic**
2    **incentives, putting those aside for the moment and**
3    **looking at all the other provisions relating to**
4    **consent and consultation, is there anything about**
5    **the other provisions that you can think of that**
6    **gives the TAC some form of power or control over**
7    **the trustees such as to have the trustees**
8    **compelled to accept a proposed -- a change**
9    **initiated by the TAC in the Trust documents?**
10        A.  I think I talk about them in my report.
11        **Q.   Well, could you identify for me then what**
12    **provision that doesn't involve the trustee's**
13    **compensation or the trustee's remaining in office**
14    **that you think gives the TAC some form of power to**
15    **compel the trustees to agree to changes in the**
16    **Trust documents that TAC wants to make based on**
17    **whatever incentives the TAC members have?**
18        A.  Give me some time to go through this?
19        **Q.  Certainly.**
20        A.  Of course.  So you're completely taking
21    out vacancies, removals that can be removed,
22    you're taking out comp.
23        **Q.  I'm taking out those --**
24        A.  You're taking out all those issues.
25        **Q.  I'm putting them aside for the moment and**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 58

1     **asking you apart from those types of what I'll**
2     **call economic incentives to the trustees, are**
3     **there any provisions that you can identify in the**
4     **Trust documents or have identified in your report**
5     **from the Trust documents that give TAC the power**
6     **to initiate action and compel the trustees to**
7     **accept it?**
8        A.   If I understand the question, and trying
9     to read through the report quickly so as to not
10    hold everyone up, I would say the answer is yes,
11    they still can make the trustee's life miserable
12    simply by not approving things that the trustee
13    wants to change.
14         The TAC has a first priority lien for what
15    they're owed if they're sued for anything under
16    the exculpation clauses, and there sits the
17    trustee with somebody who's going to take not only
18    potentially for someone else's, you know, for a
19    certain subset of clients, but also even for
20    exculpation for somebody's breach of their
21    fiduciary duties, and that boxes in a trustee.
22       **Q.   So, again, using as a shorthand reference**
23    **the matters discussed in paragraph 9 of your**
24    **report, as the summary of things that you've**
25    **identified in the report that directly affect the**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 59

1    economic interests of the trustees in ways that

2    you -- well, let me rephrase the question.

3         Does paragraph 9 of your report identify

4    the provisions of the Trust agreement that give

5    the TAC some sort of power that you think will

6    influence trustees to agree potentially to things

7    that the TAC wants to do as a way of sort of

8    currying favor with them to protect the trustee's

9    own economic interests?

10    A.    That may be the worst of them, yes.

11    Q.    And apart from what I'll call the

12    paragraph 9 items, you're saying, if I understood

13    your last answer, that while you can't identify

14    any provision in the Trust agreement that

15    specifically allows the TAC to tell the trustees

16    to accept a change in the Trust documents, the

17    general power of the TAC to be obstructive through

18    exercising other consent or consultation rights is

19    a power mechanism, if I may use that phrase, that

20    you could see influencing the trustees to accept

21    initiatives from the TAC that they might otherwise

22    not be interested in accepting.

23    A.    That's one way.

24         MR. GIANNOTTO:  Peter, I'm sorry.  When

25    you get to some logical break, if we could take a

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace               Professor James Shein

Page 60

1    short break.
2          MR. LOCKWOOD:  Yeah, we can do it right
3    now.
4                (Whereupon a recess was had from
5                12:10 p.m. to 12:18 p.m.)
6    BY MR. LOCKWOOD:
7       **Q.   I now want to direct your attention,**
8    **Professor Shein, to paragraph 9 of your report**
9    **which we talked about generally earlier.**
10          **With respect to the control that you feel**
11   **that the TAC has over the trustees, is it fair to**
12   **say that paragraph 9 represents your**
13   **identification of instances where the economic**
14   **interests of the individual trustees are in some**
15   **sense under the control of the TAC?**
16      A.   Certainly can influence it, yes.
17      **Q.   Have you in paragraph 9 attempted to**
18   **identify all the sort of personal economic factors**
19   **in the Trust documents that in your view would**
20   **cause the trustees to seek to go along with**
21   **initiatives that the TAC might propose?**
22          MR. GIANNOTTO:  Objection to form.
23          THE WITNESS:  I don't understand what you
24   mean by "personal."  I don't know the personal --
25   BY MR. LOCKWOOD:

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 61

1       **Q.  Well --**
2       A.   Money interests of anybody.  Individual I
3    mean.
4       **Q.   Let me rephrase it then.**
5          **Why did you quick the three bullet point**
6    **items under paragraph 9 to use to illustrate areas**
7    **in which the TAC had powers that would permit them**
8    **to exercise some form of influence or control**
9    **other the trustees.**
10      A.   Because I read them in the documents.
11      **Q.   And why would the -- well, let's go**
12   **through them one by one.**
13         **The first one is consent to a change in**
14   **trustee compensation.  That essentially says that**
15   **the trustees might want to curry favor with the**
16   **TAC because if they wanted to get more money the**
17   **TAC might prevent them from doing so.**
18      A.   That could happen under the documents.
19      **Q.   But from the perspective of a trustee**
20   **being willing to accede to the wishes of the TAC,**
21   **the incentive from the trustee's side to do what**
22   **the TAC says is the trustee's own desire to get**
23   **more money for being a trustee, correct?**
24      A.   Potential is there, yes.
25      **Q.   Now, the second bullet point talks about**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 62

1    the TAC's role in the event there is a vacancy in
2    the position of the trustee.
3         Could you explain what it is about that
4    provision that you think would cause trustees to
5    be more inclined to accede to the TAC's wishes on
6    trust matters?
7      A.   Well, if there's a vacancy, and somebody
8    knows that the TAC gave them their blessing in
9    order to get on, the trustee could feel beholden
10   to the TAC for the job.
11     Q.   And the extent to which that trustee would
12   feel beholden to the TAC would depend on how
13   attractive the job of being a trustee was to that
14   individual?
15     A.   I assume if it wasn't attractive they
16   wouldn't say "I'll take it."
17     Q.   Well, you've already stated in your report
18   and elsewhere that the trustees have their own
19   independent fiduciary duties to everybody.
20     A.   Yes.
21     Q.   That's a beneficiary of the Trust, right?
22     A.   Yes.
23        MR. GIANNOTTO:  By "everybody" you mean
24   all beneficiaries, right?
25        MR. LOCKWOOD:  Excuse me?

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 63

1          MR. GIANNOTTO:  By "beneficiaries" you
2    mean all beneficiaries of the Trust.
3          MR. LOCKWOOD:  All beneficiaries.
4          THE WITNESS:  I assume you mean that.
5          MR. GIANNOTTO:  Okay.
6    BY MR. LOCKWOOD:
7      **Q.   And you're also positing scenarios in**
8    **which the TAC members are proposing things that a**
9    **totally neutral trustee would be reluctant to go**
10   **along, with if not reject, because they would**
11   **favor the individual interests of some subset of**
12   **trusts -- of Trust beneficiaries represented by**
13   **that TAC member, correct?**
14     A.   I'm saying it could happen.  I doubt it
15   would be presented that way.
16     **Q.   In evaluating any proposed action to**
17   **change the Trust documents, the trustees in the**
18   **exercise of their fiduciary duties would have to**
19   **take into account the impact of that action on all**
20   **the Trust beneficiaries, right?**
21     A.   It should.
22     **Q.   And your whole concept of the conflict of**
23   **interest here with the TAC presupposes something**
24   **that the TAC members want the trustees to do for**
25   **the purpose of discriminatorily benefitting the**

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace               Professor James Shein

Page 64

1    **TAC member's clients at the expense of the**
2    **beneficiaries as a whole, doesn't it?**
3        A.   I'm saying that could happen under these
4    documents.
5        **Q.   It not only could happen, you're saying**
6    **that there are incentives in this structure for**
7    **the TAC members to make it happen, aren't you?**
8        A.   That there are incentives there, yes.
9        **Q.   And, indeed, that's why you believe that**
10   **these incentives should be removed from these**
11   **documents, correct?**
12       A.   Yes.
13       **Q.   And so it's not just theoretical**
14   **incentives you're talking about.**
15           **You're talking about incentives that in**
16   **some real world sense you think could cause the**
17   **TAC members on the one hand to propose**
18   **discriminatory changes or actions, and, on the**
19   **other hand, to cause the trustees to accept them,**
20   **correct?**
21       A.   Yes, that could happen.
22       **Q.   Your report isn't just some sort of**
23   **exercise in economic theory, is it?**
24       A.   That's correct.
25       **Q.   It's intended to tell the reader that you**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 65

1    think this is a bad document because bad things
2    will happen under this document or at least are
3    more likely to happen under this document that
4    under some different document that didn't have
5    these incentives in it, correct?
6                (Whereupon a brief interruption
7                 was had in the deposition
8                 proceedings.)
9         MR. LOCKWOOD:  Somebody's talking into
10   their cell phone.  It's showing up in the
11   deposition room.
12        THE REPORTER:  The people that are on the
13   phone need to mute their phones.  Thank you.
14        MR. LOCKWOOD:  Please mute your phone if
15   you're going to talk on it.
16        Could you read back the question?
17        THE REPORTER:  "It's intended to tell the
18   reader that you think that this is a bad document
19   because bad things will happen under this document
20   or at least are more likely to happen under this
21   document that..."
22        THE WITNESS:  Especially the more likely
23   part, yes, it could happen.
24   BY MR. LOCKWOOD:
25        Q.   Right.  Not just could, but are

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 66

1    **sufficiently likely to warrant your in effect**
2    **telling a Court that the Court should force**
3    **changes in the document to make sure that the bad**
4    **things don't happen, correct?**
5      A.  Yes.
6      **Q.   So with respect to the second bullet point**
7    **in paragraph 9, you're saying that you think it is**
8    **reasonably likely that a potential trustee would**
9    **think that the position of trustee of this Trust**
10   **is sufficiently desirable that if the TAC members**
11   **had to agree to his or her appointment to that**
12   **position, and did so, that thereafter the trustee**
13   **would feel sufficiently grateful to those people**
14   **for having agreed to his or her appointment that**
15   **that trustee would act against the fiduciary**
16   **duties of all of the Trust beneficiaries and in**
17   **favor of the fiduciary interests of an individual**
18   **TAC member's individual clients.**
19       MR. GIANNOTTO:  Objection.  That misstates
20   his prior testimony.
21       You may answer.
22       THE WITNESS:  Could you read the question.
23       THE REPORTER:  "So with respect to the
24   second bullet point in paragraph 9, you're saying
25   that you think it is reasonably likely that a

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 67

1    potential trustee would think that the position of

2    trustee of this Trust is sufficiently desirable

3    that if the TAC members had to agree to his or her

4    appointment to that position, and did so, that

5    thereafter the trustee would feel sufficiently

6    grateful to those people for having agreed to his

7    or her appointment that that trustee would act

8    against the fiduciary duties of all of the Trust

9    beneficiaries and in favor of the fiduciary

10   interests of an individual TAC member's individual

11   clients."

12        THE WITNESS:  Okay.  It's a long sentence.

13   BY MR. LOCKWOOD:

14      **Q.  It's a very long sentence.**

15          **If you don't feel you can answer it as**

16   **phrased, I'll rephrase it.**

17      A.   Well, I'll be happy to tell you what I

18   think, which is that if they get the job, the TAC

19   has approved it, I think they'll feel, one,

20   grateful to it.

21        I'm assuming that they wouldn't take it

22   again unless they felt it was attractive, and,

23   very importantly, once they got there, all these

24   other things would then contribute to them being

25   influenced.

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 68

1          Q.   The third bullet point in paragraph 9
2     identifies the possibility that the trustee could
3     be removed for good cause at the recommendation of
4     the TAC and the futures representative with the
5     approval of the bankruptcy court for failing to
6     comply with the consent and consultation
7     requirements with the TAC, and it is your opinion
8     that because of the possibility that if a trustee
9     did not comply with specific provisions of the
10    Trust agreement which purport to bind the trustee
11    in the first place, that the trustee would be so
12    beholden -- strike that -- would be so influenced
13    to curry favor with the TAC members to prevent
14    that theoretical possibility of him being removed
15    for good cause that he would agree to in effect
16    subordinate his fiduciary obligations to the Trust
17    beneficiaries as a whole to the interests of the
18    claimants represented by the TAC members.
19         A.   That's another long sentence.
20              Could you repeat that?
21              THE REPORTER:  "The third bullet point in
22    paragraph 9 identifies the possibility that the
23    trustee could be removed for good cause at the
24    recommendation of the TAC and the futures
25    representative with the approval of the bankruptcy

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 69

1    court for failing to comply with the consent and
2    consultation requirements with the TAC, and it is
3    your opinion that because of the possibility that
4    if a trustee did not comply with specific
5    provisions of the Trust agreement which purport to
6    bind the trustee in the first place, that the
7    trustee would be so beholden -- strike that --
8    would be so influenced to curry favor with the TAC
9    members to prevent that theoretical possibility of
10   him being removed for good cause that he would
11   agree to in effect subordinate his fiduciary
12   obligations to the Trust beneficiaries as a whole
13   to the interests of the claimants represented by
14   the TAC members."
15        THE WITNESS:  If I understand that
16   sentence, yes.
17   BY MR. LOCKWOOD:
18      **Q.   Now, in all of these three bullet point**
19   **provisions of paragraph 9, the futures rep is also**
20   **required to participate in the consent process, in**
21   **the consultation-for-vacancy process and in the**
22   **removal process, correct?**
23      A.   I believe so.
24      **Q.   Do you view the futures representative as**
25   **having conflicts of interest with the trustees and**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 70

1    **the Trust beneficiaries of a similar sort as the**

2    **conflicts you identify for the TAC?**

3        MR. GIANNOTTO:  Objection, asked and

4    answered.

5        You may answer.

6        THE WITNESS:  Not to my knowledge.

7    BY MR. LOCKWOOD:

8      **Q.  So the TAC would in effect have to enlist**

9    **the futures representative in any proposal to**

10   **favor individual TAC member client interests over**

11   **the interests of the whole, wouldn't it?**

12     A.  Say again.

13     **Q.  In order to accomplish any of the actions**

14   **or consent requirements identified in the three**

15   **bullet points of paragraph 9, wouldn't the TAC**

16   **have to enlist the futures representative to go**

17   **along with what the TAC wanted in order to be able**

18   **to actually utilize those provisions?**

19     A.  Well, some of them are "or" not "and."

20     **Q.  Well, which ones are "or"?**

21     A.  Well, certainly, the -- in order to change

22   comp and that kind of thing TAC be obstreperous on

23   its own, and, in the vacancy, the TAC can -- a

24   majority of the TAC or the futures representative

25   can veto, so the TAC can effectively act on its

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 71

1    own.
2         The recommendation could come from the
3    TAC.  I have to look back to the documents whether
4    it's the futures representative must always agree
5    at the removal of the trustee, but you've got
6    enough in there that shows that the TAC can act on
7    its own.
8       **Q.  Well, first, let's take the third bullet**
9    **point and direct your attention to Section 4.2(c)**
10   **of the Trust agreement which is Exhibit 2.**
11        MR. GIANNOTTO:  Page?
12        THE WITNESS:  Page 22 of Exhibit 2.
13   BY MR. LOCKWOOD:
14      **Q.  Yes.  This is the removal of the TAC**
15   **provision.**
16        **It's clear that it has to be both the TAC**
17   **and the futures representative, is it not?**
18      A.   It says you consult with both, but then
19   it's unanimous vote of the remaining trustees
20   unless a majority of the TAC or futures
21   representatives vetos --
22      **Q.  I'm sorry.**
23      A.   -- so the TAC can still act on its own.
24   Am I in the right place?
25      **Q.  I'm not sure?**

JANE ROSE REPORTING
1-800-825-3341  janerosereporting.com

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace               Professor James Shein

Page 72

1     A.  Oh, I'm sorry.  I'm on 4.3.
2     **Q.  Look at 4.2(c).**
3     A.  Sorry about that.
4     **Q.  Which is the removal provision.**
5     A.  Okay.
6     **Q.  Which is the third bullet point.**
7     A.  Okay.
8     **Q.   That's got to be both the TAC and the**
9     **futures representative, correct?**
10    A.   That's correct, and I think I even said it
11    that way in my report.
12    **Q.   Right.  So on that one the trustees don't**
13    **have to worry about currying favor with the TAC to**
14    **avoid removal unless they're worried that somehow**
15    **or another the same incentives that motivate the**
16    **TAC motivate the futures representative.**
17    A.   Futures representative could have a
18    different bone to pick with the trustee.
19    **Q.   Since we're talking about conflicts of**
20    **interest that the TAC members have that you want**
21    **to see eliminated, what is the significance of the**
22    **fact that the futures rep might have a, quote,**
23    **different bone to pick with the trustee in your**
24    **analysis?**
25    A.   But I'm going back to your discussion of,

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 73

1    you know, how they could work together, one having

2    one incentive, and the other having the conflicts

3    that causes it.

4        **Q.   Well, is it not the case that almost by**

5    **definition the futures representative isn't going**

6    **to have any structural incentives to approve plan**

7    **actions or changes that benefit a subset of the**

8    **present claimants that are represented by that TAC**

9    **member?**

10       A.   Depends on where they are and what their

11   conflicts are.

12       **Q.   Well, to your knowledge, are there any**

13   **futures -- well, strike that.**

14          **To your knowledge does the futures rep in**

15   **the W.R. Grace case represent plaintiffs with**

16   **claims against the Trust?**

17       A.   Not that I know of.

18       **Q.   So if such a futures rep doesn't represent**

19   **plaintiffs with claims against the Trust, then**

20   **that futures rep won't be subject to the same kind**

21   **of conflicting incentives to favor nonmeritorious**

22   **claims that you assert the TAC is subject to,**

23   **correct?**

24       A.   I have no idea if they have other

25   conflicts.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 74

1       **Q.  I'm just asking you whether they have that**
2   **kind of conflict if they don't represent**
3   **plaintiffs.**
4       A.   If they don't want to represent
5   plaintiffs, they wouldn't have a plaintiffs'
6   conflict.
7       **Q.  And they wouldn't in and of itself have**
8   **any reason to support favoritism for the clients**
9   **represented by TAC members, would they?**
10      A.   If they didn't represent any of those same
11  people, no.
12      **Q.  In the vacancy --**
13      A.   Where are you?
14      **Q.  The vacancy in the position of a trustee,**
15  **the second bullet point of 9.**
16      A.   Yes.
17      **Q.  They have got to consult with -- the**
18  **trustees have to consult with both the TAC and the**
19  **futures representative, correct?**
20      A.   Yes.
21      **Q.  And if the TAC exercises a, quote, veto,**
22  **closed quote, is it not the case that the**
23  **selection then becomes that of the bankruptcy**
24  **court under Section 4.3(a) of the Trust agreement?**
25      A.   I believe so.

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 75

1      Q.   And if the TAC doesn't veto a nominee,
2   then that means -- and a nominee fills the
3   vacancy, that means that the trustees have
4   approved that candidate, the TAC has approved that
5   candidate, and the FCR has approved that
6   candidate, correct?
7      A.   I'd have to work my way through the
8   documents to answer that.
9      Q.   Well, just read Section 4.3(a) to yourself
10  and tell me whether you think that the way it's
11  worded for a trustee vacancy to be filled, the
12  reigning trustees, the TAC and the FCR all have to
13  agree to it.
14     A.   I believe that's true.
15     Q.   So that means that the newly appointed
16  trustee would feel grateful to the other trustees
17  and the futures rep, at least as much as he or she
18  would feel grateful to the TAC for this plum job
19  opportunity, correct?
20     A.   You could phrase it that way.
21     Q.   Is the answer yes?
22     A.   Yes, the answer would be yes.
23     Q.   So that gets us to the change in the
24  trustee compensation, and there under Section
25  2.2(f)(9) of the Trust agreement which is page 11

JANE ROSE REPORTING
1-800-825-3341  janerosereporting.com

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 76

1      of Exhibit 2.

2          A.   Exhibit 2 or Exhibit --

3          Q.   Exhibit 2, yes.  It's the Trust agreement.

4      Both the -- well, strike -- let me start over.

5              Here this bullet point, as we discussed

6      before, you've identified because you believe that

7      trustees would want to be compensated more than

8      cost-of-living increases potentially, and that in

9      order to make it happen or more likely to happen,

10     they would be motivated to accede to proposals by

11     the TAC to favor TAC clients over Trust

12     beneficiaries at large, correct?

13         A.   If you change the word "would" to "could,"

14     I'd agree with you.

15         Q.   Okay.  Could.

16             But, again, when we say "could," we're not

17     saying theoretical possibility.  We're saying

18     because of the structure of these documents

19     there's some reasonable possibility that that

20     could happen.

21         A.   Yeah, these things could happen.

22         Q.   Right.  Now, first, it's true that under

23     this provision they also have to get the consent

24     of the futures representative, correct?

25         A.   Yes.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 77

1          Q.   And if the futures representative thought

2     that the trustees were being sort of traded with

3     by the TAC in the sense of the TAC telling the

4     trustees:

5          Hey, we'll give you a big raise if you

6     agree to some special claims-handling process for

7     my clients, wouldn't the futures representative

8     and his fiduciary obligations to future claimants

9     be motivated or incentivized to veto any

10    compensation change that was being subject to that

11    sort of dealing?

12        A.   I doubt it would ever be phrased that way.

13        Q.   Well, apart from it would be phrased that

14    way, wouldn't the futures rep have to make an

15    independent judgment about whether a compensation

16    increase was or was not appropriate?

17        A.   I believe the futures rep should.

18        Q.   And the futures rep should also be

19    motivated not to go along with changes in the

20    Plan, in the Trust procedures that would benefit

21    TAC member clients differentially from other Trust

22    members, correct?

23        A.   Only if it would affect the future

24    claimants.

25        Q.   Well, wasn't your original hypothesis in

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 78

1    **this entire report that the TAC would be motivated**
2    **to have unqualified claims of their clients paid**
3    **and that that would have the effect of somehow or**
4    **another diluting potential recoveries of everybody**
5    **else which would include the futures?**
6        A.   It could dilute strictly other present
7    claimants too that are nonclients of the TAC.
8        **Q.   And how could it possibly do that?  What**
9    **sort of action could do that?**
10       A.   Changing procedures for present claimants.
11   I doubt that every claim that comes in is crystal
12   clear of the present claimants of what category
13   they fall in.  I doubt it's crystal clear that
14   everyone that comes in has the same amount of
15   evidence behind it.
16           I don't -- admittedly, I'm not a medical
17   expert, but I doubt it's all coming in in black
18   and white, so there's judgment calls all along the
19   way to be made.
20       **Q.   So, but I thought we had already**
21   **established that the TAC members as such do not**
22   **participate in the resolution of individual**
23   **claims?**
24       A.   I believe they're there for advice and
25   consent.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 79

1      Q.   On individual claims resolution?

2      A.   I'd have to look back at the documents

3    again.

4      Q.   Well, I can't ask you to reread all the

5    documents, but so far in your report and

6    otherwise, I haven't seen any reference by you to

7    participation by the TAC as an entity in the

8    resolution of individual claims, and, at least as

9    you sit here right now, you can't remember

10   anything like that, correct?

11     A.   That's correct.

12     Q.   Now, to follow up on that, you've read the

13   TDP, correct, as part of your analysis leading up

14   to this report?

15     A.   That's correct.

16     Q.   And so I take it you're aware that there

17   are initially two different claims resolution

18   procedures in the TDPs, one called expedited

19   review and the other called individual review.

20   You're aware of that?

21     A.   Yes.

22     Q.   And you're aware that the expedited review

23   is simply a matrix under which there's specified

24   criteria for exposure and disease and specified

25   values, and if you submit documentation meeting

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace                Professor James Shein

Page 80

1    these criteria, you're entitled to an offer in the
2    amount set fourth in the matrix, correct?
3       A.   Um-hmm.
4          THE REPORTER:  I do need a yes or no, sir.
5          THE WITNESS:  Yes.  I'm sorry.  I'm sorry.
6          THE REPORTER:  That's okay.
7    BY MR. LOCKWOOD:
8       Q.   With respect to expedited review,
9    therefore, there's no possibility short of
10   changing the expedited review criteria that the
11   clients of a TAC member could get treated any
12   different from the clients of anybody else, is
13   there?
14      A.   Sure, there is.
15      Q.   And how is that?
16      A.   Well, when you say there were documents, I
17   didn't see anything that exactly described whether
18   a document is a go/no go kind of decision, a
19   black-and-white part, and it can be that the TAC
20   members, say:
21          Well those documents are correct.  It
22   meets all the terms, and can influence, as I said
23   before, the trustees in these other ways to say:
24          Yes, that document meets it.  These folks
25   over here that aren't part of our group documents

US District Court - Delaware                 FINAL - May 14, 2009
Chapter 11 - W.R. Grace                      Professor James Shein

Page 81

1    aren't quite right.

2       **Q.  Is it your understanding that the way in**

3    **which this trust is set up to operate the trustees**

4    **are individually going to be reviewing claims**

5    **under expedited review to see whether the**

6    **documents you just described do or do not comply**

7    **with the expedited review criteria?**

8       A.  Well, they have a duty to make sure it's

9    done.

10      **Q.  Do you know how these sorts of trusts**

11   **actually operate as they now exist?**

12      A.  Internally, the others?  No.

13      **Q.  Are you aware of the fact that as a**

14   **general proposition all of these trusts have what**

15   **are called Claims Resolution Facilities in which**

16   **they have various people that process the claims**

17   **and determine the conformity of them, and the**

18   **trustees are like boards of directors and/or maybe**

19   **chief executive officers that just supervise this?**

20      MR. GIANNOTTO:  Object to the form.

21      THE WITNESS:  I don't know how those

22   exist.

23   BY MR. LOCKWOOD:

24      **Q.  Well, if you don't know how the W.R. Grace**

25   **Trust is expected to process claims, then how**

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                    Professor James Shein

Page 82

1    could you possibly hypothesize that the trustees
2    would have such an involvement in them that they
3    would be motivated to or could give special
4    treatment to the claims represented by TAC
5    members?
6        A.   I'd have to look at the details.
7        Q.   The TAC operates as a multimember group,
8    doesn't it?
9        A.   I believe so.
10       Q.   Indeed, we established earlier there were
11   like four members of the TAC, correct?
12       A.   That's what the documents show, yes.
13       Q.   And as far as you know, each member of the
14   TAC has their own clients as compared with being
15   shared with other members of the TAC, correct?
16       A.   The last phrase threw me.
17       Q.   Well, you don't understand the TAC members
18   to all share the same clients, do you?
19       A.   I assume not.
20       Q.   And so to the extent that one TAC member
21   has a client or some clients who, to use your
22   phrase, are putting forth unqualified claims to
23   the Trust to be paid, what incentive do you posit
24   that the other TAC members have to support that
25   such as to cause the trustees to violate their

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 83

1    **fiduciary duties to the claimants as a whole in**
2    **the processing of those claims?**
3        A.   Again, a long sentence, but, if I
4    understand it, first of all, let me pull out that
5    last phrase, which is what they do with each other
6    may not cause, it may not be a given that would
7    cause the trustee to violate their fiduciary
8    duties as they see it.
9        Let's start with the important part, which
10   is what would have them not objecting to each
11   other I think was what you're starting with, which
12   is:
13       I don't object to yours, you don't object
14   to mine.  That's very human behavior.
15   **Q.   So you posit a situation in which the TAC**
16   **members as a group sort of conclude that as**
17   **compared with all the other lawyers out there and**
18   **the other clients that make up the universe of**
19   **present claimants that the four TAC members get**
20   **together, identify among themselves categories of**
21   **claims that would otherwise be noncompensable**
22   **under this thing, enter into an agreement that**
23   **basically says:**
24       **We're going to try and force the trustees**
25   **to pay these unqualified claims, and if your**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 84

1    **claims are a little different from my claims and**
2    **don't have the same deficiencies, you'll agree**
3    **that I get to submit a different kind of**
4    **unqualified claim from the one that you're asking**
5    **for payment on.**
6        A.   I doubt that that specific conversation
7    would take place.
8        **Q.   But what you're saying is the substance of**
9    **that conduct communicated, however it's**
10    **communicated, is reasonably possible to take place**
11    **in your view.**
12        A.   Yes.
13        **Q.   And the basis for that hypothesis is what?**
14        A.   I assume we're talking about human beings,
15    one.
16            Two, I assume these folks are in it for
17    money, and if what they do is legal, I think it's
18    just human nature that they do it.  There's just
19    too many perverse incentives in this.
20        **Q.   What would make you believe that**
21    **conspiring among the TAC members to get the**
22    **trustees to pay unqualified claims under the Trust**
23    **agreement is, to your phrase, quote, legal, closed**
24    **quote?**
25        A.   Well, I assume they aren't going to be

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 85

1      violating the law.  If there's an incentive there

2      and they take it, and it's written into the

3      documents, the kind of incentives that are here,

4      and they're not violating any law, and if they're

5      not violating the Trust agreement, it's human

6      nature to take those incentives.

7          **Q.   Doesn't your definition of an unqualified**

8      **claim encompass the notion that the claim is not**

9      **permissible to be paid under the Trust documents?**

10         A.   It could be a matter of either not

11     permissible or more likely in any of the gray

12     areas in terms of being permissible or is it in,

13     you know, this category or a higher category.

14     Life is not black and white as much as a legal

15     document would purport it to be.

16         **Q.   So you said in a different category, so if**

17     **a claimant comes in with a claim that only meets**

18     **the requirements for let's say Category 2 claims**

19     **and his lawyer conspires with the other TAC**

20     **members to try and compel the trustees to treat it**

21     **as a Category 3 claim, that's not violating the**

22     **Trust agreement.**

23         A.   Because I suspect, given the number of

24     these that are coming in, there's going to be

25     quite a few of them that aren't clearly -- it's

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 86

1    probably 2 1/2 versus a 3.  Could it be a 2, could
2    it be a 3 therefore?  Which way do we round?
3        **Q.   And the decision of this by the trustees**
4    **is going to be implemented by saying that this**
5    **intermediate category for the clients of TAC**
6    **member X will be paid, but the same intermediate**
7    **category for everybody else won't be paid.**
8        A.   I'm just saying that the incentive is to
9    pay certain ones and not others.
10        **Q.   I hate to sound like a broken record, but**
11    **I thought we had agreed earlier that incentive had**
12    **to be coupled with opportunity before bad things**
13    **could happen, isn't that true?**
14        A.   Yes.
15        **Q.   And I'm asking you do you know of anything**
16    **in this Trust document that presents the**
17    **opportunity for the TAC members to do this middle**
18    **category gets bumped up for my claims but left**
19    **down at the lower category for everybody else's**
20    **claims that you just posited in a previous answer?**
21        A.   Well, it's everything from that, you know,
22    they can influence what medical evidence is
23    needed, they can influence anything for the
24    proof-of-claim forms, the kind of things that I've
25    got throughout my report.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 87

1     **Q.  But the medical evidence and the**
2     **proof-of-claim forms apply to all present**
3     **claimants, don't they?**
4         A.  True, but they have their forms that they
5     use, and they're saying:
6             Well, you didn't use the right form.
7         **Q.  Do you have any experience about claims**
8     **resolution at all in terms of the forms and**
9     **proof-of-claims and processing?**
10        A.  For bankruptcy, yes.
11        **Q.  No, no, no.  For asbestos trusts.**
12        A.  I'm sorry.  No.
13        **Q.  For any kind of trust?**
14        A.  Yes, but not for asbestos.
15        **Q.  Okay.  What kind of trusts do you have**
16    **personal experience with observing the processing**
17    **of tort claims?**
18        A.  Probably the closest that I've had is when
19    I was on the board, pension board for a steel
20    company where we had all these disability claims
21    that came in.
22        **Q.  And your experience with that was that --**
23        A.  It was incredibly gray areas.  We debated
24    forever as to whether or not the person really was
25    disabled or not.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 88

1     **Q.   So in that facility, you, as a trustee,**
2     **were personally and directly involved with the**
3     **resolution of the claim that was being considered;**
4     **is that correct?**
5        A.   Well, there were intermediaries.  We were
6     the final decider.
7     **Q.   Are you aware of anything in this trust**
8     **agreement that creates a structure under which the**
9     **trustees would be the final decider of individual**
10    **claim resolution similar to what you just**
11    **described?**
12       A.   Their decisions could certainly affect
13    that, yes.
14    **Q.   Decisions about individual claims or**
15    **decisions about broad categories of claims?**
16       A.   But by the decisions of the individual
17    claims can affect the -- the broad category rather
18    can influence the individual.
19    **Q.   So what you're saying is that if a TAC**
20    **member had some individual claims that might not**
21    **qualify, that would motivate him to get the**
22    **trustees to amend the document in some way or**
23    **another so that all claims of that sort would get**
24    **better treatment as opposed to just his own**
25    **specific clients' claims.**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 89

1       A.  If I understand the hypothetical, yes.

2        Q.  And the trustees would not -- well, and

3    the trustees would not pass on that proposal using

4    their own fiduciary judgment, but, rather, they

5    would be influenced to come up with a different

6    result because of the control and influence that

7    you say the TAC members have over the trustees in

8    the various ways you identify in your report?

9       A.  It could happen.

10          MR. GIANNOTTO:  Do you want lunch?

11          MR. LOCKWOOD:  Yeah.  How about if we take

12   a lunch break.

13          MR. GIANNOTTO:  How long of a break for

14   the people on the phone so they know?

15          We're off the record by the way.

16              (Whereupon a discussion was had

17               off the record.)

18              (Whereupon a recess was had from

19               1:06 p.m. to 1:55 p.m.)

20          MR. LOCKWOOD:  Folks on the phone?

21          MS. ORR:  I'm ready.

22          MR. LOCKWOOD:  Okay.  We're about to get

23   restarted here.

24          A MALE TELEPHONE VOICE:  Sure.

25   BY MR. LOCKWOOD:

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 90

1      Q.   In paragraph 21 of your report, you --

2    page 7, you state in the first sentence:

3          The terms of the Trust agreement create a

4    situation in which the TAC members will likely be

5    violating conflict-of-interest rules applicable to

6    attorneys throughout the country.

7          Do you purport to be an expert on the

8    conflict-of-interest rules applicable to lawyers

9    throughout the country?

10    A.   An expert, no.  With knowledge, yes.

11      Q.   Well, have you done any research as to

12    whether or not any Court or bar association has

13    ruled that the structure employed in the W.R.

14    Grace TDP, which is utilized in multiple other

15    trusts, violates any states' conflict-of-interest

16    rules?

17          MR. GIANNOTTO:  Object to form.

18          THE WITNESS:  Has there actually been a

19    court ruling on that?

20    BY MR. LOCKWOOD:

21      Q.   Or a bar association opinion?

22    A.   On those specific kinds of trusts, not to

23    my knowledge.

24      Q.   Are you aware of whether anybody has ever

25    filed a complaint with a state bar association

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 91

1    asserting that the role of the TAC in an existing

2    trust violates the conflict rules of that state?

3        A.  I'm not aware of any.

4        Q.   Have you made any effort to compare the

5    role of the TAC members in the Trust context with

6    the role of members of the asbestos claimants

7    committee in this bankruptcy?

8        A.  No.

9        Q.   Are you aware that there is an Official

10    Committee of Asbestos Claimants' Creditors in the

11    W.R. Grace bankruptcy?

12        A.  Yes.

13        Q.   Are you aware that the individual members

14    of that committee have designated their personal

15    injury lawyers as their sort of attorneys in fact

16    for acting on their behalf in the committee

17    activities?

18        A.   Knowing the connection between the members

19    of the --

20        Q.  I'll break it down.

21            I'll represent to you that the members of

22    the Asbestos Claims Committee in this case are

23    individual claimants, and the question is:

24            Are you aware that those individual

25    claimants have designated their personal attorneys

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 92

1    to act as their agents in fact on their behalf in

2    committee activities?

3        A.  No, but I'm not surprised.

4        Q.  Are you aware that in bankruptcy an

5    official committee has fiduciary obligations to

6    act in the interest of all of the creditor

7    interests that are represented on that committee?

8        A.  I believe it's supposed to work that way,

9    yes.

10       Q.  Isn't it the case that the same conflict

11   of interest exists for a creditors' committee that

12   has individual members with individual interests

13   that is also acting on behalf of all creditors

14   with varying interests?

15       A.  If I understand the question, yes.

16       Q.  To your knowledge has anybody ever

17   suggested, or, indeed, have you ever suggested

18   that such committees operate under disabling

19   conflicts of interest under state

20   conflict-of-interest laws?

21       MR. GIANNOTTO:  Are you asking him if

22   anyone has or if he has, which one?

23       MR. LOCKWOOD:  Either.

24       THE WITNESS:  I'm sorry.  Would you start

25   that again.

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 93

1    BY MR. LOCKWOOD:

2        **Q.  Well, have you ever opined that**

3    **conflicts-of-interest rules that you assert are**

4    **violated by the TAC here because of the conflicts**

5    **between the individual interests of the TAC and**

6    **the collective interests of the constituency it**

7    **represents apply to unsecured creditors' committee**

8    **in bankruptcy cases?**

9        A.  It could happen.

10       **Q.  The question I asked you is have you ever**

11   **so opined.**

12       A.  No.

13       **Q.  Have you ever even considered the issue**

14   **prior to today?**

15       A.  Yes.

16       **Q.  And what conclusions did you draw or what**

17   **actions did you take upon that consideration?**

18       A.  Conclusions I drew was there's that

19   temptation there, but the actions I did was other

20   than to mention that to my students or in seminars

21   that these things exist, and you have to deal with

22   them.

23       **Q.  When you say "you have to deal with them,"**

24   **does that include accepting the proposition that**

25   **in certain types of contexts conflicts of interest**

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 94

1  **between the individual interests of a member of a**
2  **group and the collective interest of the member of**
3  **the group can't be eliminated as a practical**
4  **matter?**
5      A.  Well, it's probably never eliminated.  The
6  question is is are there mechanisms or ways you
7  could deal with it.
8      **Q.  Well, here I take it the way you would**
9  **propose to deal with the conflicts you've**
10 **identified here is by preventing personal injury**
11 **lawyers who help asbestos claimants from being**
12 **members of a TAC?**
13     A.  That's probably the cleanest way.
14     **Q.  What is your understanding of the function**
15 **of a TAC in a case like this?**
16     A.  The things that are set out in the
17 documents.
18     **Q.  But why not just have a trust with**
19 **trustees and no TAC and no futures representative?**
20     A.  I think you could have a TAC, and you can
21 have a futures representative.  The point is to
22 eliminate the conflicts, not to eliminate the
23 positions.
24     **Q.  Well, what I'm asking you is what your**
25 **understanding of the rationale, if you will, is**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 95

1    **for having a TAC and a futures rep to look over**
2    **the shoulder of trustees in the first place is.**
3       A.   Because there's two different groups who
4    can take from that trust, and you're effectively I
5    assume putting on representative of the two most
6    important groups.
7       **Q.   So if you accepted the notion that you**
8    **just expressed, then are you saying that when you**
9    **select people to represent the interests of**
10   **present claimants, it would be the conflicts that**
11   **you have identified are so severe that you would**
12   **be better off picking people that have no**
13   **involvement in or experience of asbestos tort**
14   **litigation on the TAC in preference to people that**
15   **do.**
16      A.   If they don't have the -- if that's the
17   only way to get rid of a conflict, but I'm sure
18   there's other qualified smart people who can get
19   up to speed fast.
20      **Q.   Do you think you would be a good TAC**
21   **member?**
22      A.   I'd probably randomly choose quite a few
23   of my fellow professors to be good TAC members.
24      **Q.   And that's because you know all sorts of**
25   **professors that are familiar with the prosecution**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 96

1   and evaluation of asbestos personal injury cases
2   in the state tort systems?
3       A.   Because I think they can come up to speed
4   very fast.
5       Q.   Let's break it down a little bit.
6           Putting aside for a moment the learning
7   curve on law professors who have never practiced
8   as a litigator in a tort case in a tort system.
9       A.   I'm not talking about law professors.  I'm
10  talking about business professors.
11      Q.   Oh, business professors.  Better yet.  Who
12  aren't even lawyers.
13      A.   That aren't even lawyers.
14      Q.   And putting aside the learning curve for
15  those folks?
16      A.   Um-hmm.
17      Q.   If we ignore what you identified as the
18  conflict problems and just sort of focus solely on
19  who would be the most capable, informed, qualified
20  person to represent the interests of personal
21  injury claimants against a trust that's supposed
22  to be liquidating and valuing their claims, would
23  you actually say that your hypothetical, a smart
24  business professor, would be preferable to a
25  hypothetical equally smart personal injury lawyer?

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 97

1      A.   If it was a personal injury lawyer who had

2   nothing to do with any claimants in this case,

3   then I could go with that.

4       **Q.   So it's a trade-off.**

5          **The experience or expertise of the**

6   **asbestos personal injury claimants in dealing with**

7   **claims resolution which includes settlements and**

8   **litigation and what have you on the one hand, and**

9   **the conflict if you will between their interests**

10   **in the collective and their interests in**

11   **individual claimants.  Is that fair?**

12      THE WITNESS:  Want to read that one back

13   to me?

14          (Whereupon the record was read as

15          requested.)

16      THE WITNESS:  Could you rephrase that?

17   BY MR. LOCKWOOD:

18      **Q.   Well, what I'm positing is there's a**

19   **reason to have asbestos plaintiffs' lawyers on the**

20   **committee because of knowledge and experience, and**

21   **there's a reason that you posit not to have them**

22   **on there, and if you don't put them on there**

23   **because of the conflicts, then you lose the**

24   **knowledge and the experience, and that's what I**

25   **characterize as is that a trade-off.  You can't**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 98

1    **have both.**

2        A.   Why can't you have both?

3        **Q.   Because what asbestos personal injury**

4    **lawyers are you aware of that practice in state**

5    **and federal courts --**

6        A.   Well, could be --

7        **Q.   -- that wouldn't have clients who have**

8    **claim against W.R. Grace?**

9        A.   Why couldn't it be somebody from the

10    medical that understands about, you know, all

11    these medical issues?  Why do they have to be a

12    lawyer?  Why do they have to be a personal jury

13    lawyer?  Why do they have to be a personal injury

14    lawyer who has clients in this case?  I mean

15    there's other expertise you can bring to bear.

16        **Q.   That goes back to the question I asked you**

17    **earlier of what role you thought the TAC was**

18    **institutionally created to perform here.  I don't**

19    **think you told me that you thought the role was to**

20    **be doctors.**

21        A.   No.  It was to be, you know, advice and

22    consent kind of things, and then what I'm saying

23    is other people out here in the universe who could

24    do advice and consent without being asbestos tort

25    lawyers.

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 99

1       **Q.  So, for example --**
2           A.   Asbestos tort lawyers with large groups of
3       takers in this case.
4           **Q.  Let's back up a second.**
5               **The principal conflict that you identified**
6       **in your report and have talked about is the**
7       **incentive on the part of the individual claimant**
8       **lawyers to have unqualified claims paid by the**
9       **Trust, right?**
10          A.   To favor their people whether it's
11      qualified or using our, you know, they really fall
12      in the 2.5 category or it's to given it's a finite
13      pot to find ways, do we reject others that might
14      otherwise take because they're in the gray zone,
15      but they're not their clients.  There's a lot of
16      different levers here.
17          **Q.  An all of those issues relate to the Trust**
18      **deciding whether, and, if so, how much to agree to**
19      **pay per claims, correct?**
20          A.   Effectively.
21          **Q.  You're aware that the Trust assumes the**
22      **liability of a debtor as it exists in the tort**
23      **system.**
24          A.   I think that's the way this case is
25      supposed to work.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 100

1      **Q.   Right.  So in order to know whether the**
2      **trustees are fulfilling their job of making sure**
3      **the claims are compensable in the tort system, are**
4      **liquidated and paid in appropriate amounts, you**
5      **have to know how that process works in the state**
6      **tort systems, don't you, because that's what the**
7      **Trust is supposed to be replicating?**
8          A.   Yeah, do they have to have a knowledge of
9      the tort law itself to do this?
10          Given the way the Trust is set up, it's
11     supposed to be taking it out I thought of the tort
12     system and put into this instead.
13     **Q.   In determining whether -- well, let's go**
14     **back to the two categories that we talked about**
15     **earlier, expedited review, and individual review.**
16         **Are you aware that the Trust is set up in**
17     **such a manner that it requires that any case which**
18     **would be viable against the debtor in the state**
19     **court tort system is sent to the Trust in the**
20     **first place?**
21         A.   Yes.
22     **Q.   And, secondly, that the Trust has to**
23     **evaluate it and determine whether it's valid under**
24     **applicable state law?**
25         A.   It's valid under the procedures set up in

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 101

1    the Trust distribution, the TDP, not

2    necessarily -- I mean it may be the TDP was set up

3    to match state law, but I didn't see anything in

4    there that says somebody has to constantly refer

5    to the law itself.

6       **Q.   Well, what kind of claims do you think are**

7    **subject to individual review as opposed to**

8    **expedited review under the Trust Distribution**

9    **Procedures?**

10      A.   Based on the rules they set up.

11      **Q.   And do the rules they set up, is that a**

12   **claim that doesn't qualify for expedited review**

13   **but asserts that it's compensable under state law**

14   **is to be evaluated by the Trust under individual**

15   **review?**

16      A.   Um-hmm.

17      **Q.   You understand that's the way it's**

18   **supposed to work?**

19      A.   Yes.

20      **Q.   So if you have a TAC that's supposed to be**

21   **determining -- well, let's back up.**

22      **Expedited review is a relatively formulaic**

23   **process, isn't it, under the Trust Distribution**

24   **Procedures?**

25      A.   Relatively.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 102

1    **Q.   Individual review, you have to look at the**
2    **particulars of the individual claim both on the**
3    **facts and the law, right?**
4        A.  Um-hmm.
5            THE REPORTER:  I'm sorry.  I do need a yes
6    or no.
7            THE WITNESS:  Yes.
8    BY MR. LOCKWOOD:
9        **Q.   Other than changes in the expedited review**
10   **process which we've discussed earlier.**
11       A.  Um-hmm.
12       **Q.   What necessity do you see for a TAC in**
13   **evaluating whether individual claims do or don't**
14   **get paid under expedited review?**
15           MR. GIANNOTTO:  Did you say attack or a
16   TAC?
17   BY MR. LOCKWOOD:
18       **Q.   The TAC.**
19       A.  I'm sorry.
20       **Q.   In other words, as you understand the way**
21   **the process works.**
22       A.  Yes.
23       **Q.   The TAC as an entity, collective entity,**
24   **has what role in evaluating how expedited review**
25   **is carried out by the claims handling people**

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 103

1      **employed by the Trust?**
2          A.   Supposedly once it's set up it should
3      operate on a standalone basis.
4          **Q.   On the other hand, determining whether the**
5      **trustees are appropriately liquidating and valuing**
6      **claims in individual review for which there aren't**
7      **criteria established in the TDP, in order to**
8      **evaluate how the trustees are doing that, don't**
9      **you have to know what the comparable experience in**
10     **terms of validity and value in the state law tort**
11     **system are?**
12         A.   No, because the members of the TAC, they
13     all can hire their own, you know, they have got
14     the ability to hire their own lawyers to answer
15     those questions, not as individuals, but as those
16     people with fiduciary duties.  They have the right
17     to hire their own lawyers.
18             I mean it even says, for example, they can
19     hire their own law firms.
20         **Q.   I have a feeling my question was not well**
21     **phrased in light of that answer.**
22         A.   I'm sorry.
23         **Q.   In determining whether or not present**
24     **claimants' claims are being handled in the**
25     **collective sense in an appropriate fashion, aren't**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 104

1    the trustees' activities in dealing with
2    individual review claims important?  Isn't that a
3    major subject of what a TAC would be expected to
4    look at?
5        A.   Yes.
6        Q.   And aren't people who have active
7    knowledge of how the state tort law system works
8    as to determining validity and value of claims the
9    best qualified people to evaluate how the trustees
10   are performing that function?
11       A.   Yes.  Either they or their advisers or
12   other outside lawyers that they're allowed to use,
13   again, subject to nobody in that chain having a
14   conflict.
15       Q.   Just the final -- just to put "paid" to
16   this, it's your view that the conflicts that
17   you've identified on the part of the TAC in the
18   context of the Trust agreement and the TDP are so
19   serious in a real-world sense that nobody on the
20   TAC should be a plaintiff's lawyer whose firm
21   submits claims to the Trust.
22       A.   That's correct.
23       Q.   And to the extent that there are trusts
24   out there that have been approved by bankruptcy
25   courts that have adopted that structure, they

Page 105

1    shouldn't have done so.

2        A.   In my opinion, that's correct.

3        Q.   And to the extent that there are asbestos

4    claimants' committees in bankruptcy cases, such as

5    Grace, where the members of those committees with

6    respective responsibilities for the entire

7    constituency also represent people who have

8    individual claims that are going to be affected by

9    the bankruptcy plan, you would similarly be of the

10   opinion that they should not be on asbestos

11   committees because of the same kind of conflict.

12       A.   Well, then you would not have an unsecured

13   creditors' committee anyplace.

14       Q.   I wouldn't disagree with that.

15           So under those circumstances, the

16   practical necessity of living with the conflicts

17   overrides the conflict-of-interest problem that we

18   have been talking about here today?

19       A.   I think it's set up that way by law.

20       Q.   Do you think the law requires an asbestos

21   creditors' committee to be comprised of asbestos

22   personal injury lawyers?

23       A.   No.  You asked me about committees in

24   general, and I said creditors' committees

25   typically have that kind of -- it's designed to

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 106

1    have that kind of inherent --

2    **Q. Are creditors' committees by law prevented**

3    **from having the creditor put his lawyer on the**

4    **committee?**

5    A. Not that I know of.

6    **Q. Are creditors' committees comprised of**

7    **people from time to time whose claims the validity**

8    **of which the debtor disputes?**

9    A. Don't know.

10    **Q. Do you know of any law that would make**

11    **someone who has a disputed but large claim**

12    **disqualified from serving on the creditors'**

13    **committee?**

14    A. I don't know. It may influence the U.S.

15    trustees' decision.

16    **Q. I'm asking you whether you know of legal**

17    **prohibition on that.**

18    A. No, I don't.

19    **Q. I may have asked you this, and if so, I**

20    **apologize, but do you -- I did ask that. Take**

21    **that back.**

22    **In paragraph 22 of your report you refer**

23    **to the Delaware Lawyers Rules of Professional**

24    **Conduct.**

25    **What expertise do you have on the subject**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 107

1   **of the duties and obligations created by the**

2   **Delaware Lawyers Rules of Professional Conduct?**

3       A.   I basically referred to those rules as a

4   gut check, because, as I continue to say in there,

5   it's normal in most states -- that I do have

6   knowledge of that it is normal in most states.

7   Certainly have run into it enough as a business

8   person, and, as a gut check I checked -- I admit I

9   checked the Delaware rules to make sure I wasn't

10  coming from level field on that, and, sure enough,

11  Delaware rules fit right into what I knew.

12      **Q.   Beyond the general principal that you**

13  **state in the second sentence of paragraph 22,**

14  **you're not purporting to state how the Delaware**

15  **Rules of Professional Conduct apply to the TAC**

16  **members of this case, are you?**

17      A.   What I'm saying is the Delaware rules fit

18  right into what I did say, which is you can't

19  represent a client if it's directly adverse to

20  another client.  I knew that as a business person.

21      That's why they used to come to me for

22  waivers and things like that.

23      **Q.   And it's your opinion that the interests**

24  **of the individual clients of a TAC member are**

25  **directly adverse to the interests of the claimants**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 108

1    that that TAC member doesn't represent?

2        A.  I'm sorry.  Say again.

3        Q.  It's your opinion that in some manner and

4    other, the clients of a TAC member are directly

5    adverse to all the other claimants against the

6    Trust that the TAC member doesn't represent?

7        A.  In other words, this is his signed-up

8    clients versus --

9        Q.  Versus everybody else that the TAC has

10   fiduciary duties to.

11        I'm asking -- you talked about directly

12   adverse.  I'm asking you is it your legal opinion

13   or some other kind of opinion that the mere fact

14   that there's a group of clients he represents that

15   have claims against the Trust and a group of other

16   clients he doesn't represent against the Trust,

17   that those interests are, quote, directly adverse

18   within the meaning of conflict-of-interest rules?

19        A.  I believe they are.

20        Q.  Apart from your belief that they are, what

21   sort of research into the question of direct

22   adversity have you undertaken for purposes of

23   rendering your opinion in this case?

24        A.  Only to read the rules of professional

25   conduct was the additional research.

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace               Professor James Shein

Page 109

1      Q.   And, as far as you know, the judge in this
2  case could read those rules with the same level of
3  attention that you've read them.
4      A.   Probably.
5      Q.   In paragraph 23 the first sentence of your
6  opinion says.
7          An attorney may not have a pecuniary
8  interest adverse to any clients.  Do you see that?
9      A.   Yes.
10     Q.   If a personal injury lawyer takes a case
11  on a contingent fee, are there circumstances under
12  which the interests of the lawyer and the client
13  are adverse in the pecuniary interest sense?
14     A.   Under normal circumstances maybe not.
15     Q.   I didn't ask about normal.  I asked about
16  are there some such as, for example, when a lawyer
17  gets a very quick offer to settle a case for a
18  modest amount of money that he hasn't done any
19  work on and the client might be interested in
20  getting more money by doing more work and taking
21  more risk that he wouldn't get any, is there a
22  pecuniary -- are the interests under that
23  hypothetical state of affairs pecuniarily adverse?
24     A.   I don't think so.
25     Q.   Are you aware of literature discussing the

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                          Professor James Shein

Page 110

1  **conflicts-of-interest rules applying to lawyers in**
2  **which considerable debate is undertaken about**
3  **whether or not there are or are not adverse**
4  **economic interests created by contingency fees for**
5  **lawyers?**
6      A.   Oh, I have a feeling that's been debated
7  all over the place.
8      **Q.   But you have researched the issue and**
9  **concluded that you can make a statement that, on**
10 **the one hand, an attorney may not have a pecuniary**
11 **interest adverse to any clients, and under no set**
12 **of circumstances could contingent fees be regarded**
13 **as in conflict with that general assertion?**
14     MR. GIANNOTTO:  Objection.  That's not
15 what he said.
16     You can answer.
17     THE WITNESS:  Could you repeat that?
18 BY MR. LOCKWOOD:
19     **Q.   You're making a flat statement in the**
20 **first sentence here that an attorney may not have**
21 **a pecuniary interest adverse to any clients.  That**
22 **statement admits, as it's written, of no**
23 **exceptions, correct?**
24     A.   As written.
25     **Q.   And, therefore, you have considered and**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 111

1    arrived at the opinion that contingent-fee
2    representations cannot create adverse pecuniary
3    interest between clients and lawyers; is that
4    correct?
5        A.  No, I don't -- I'm not saying that.
6        **Q.   Are you saying that if and when they do,**
7    **it's a violation of the Code of Professional**
8    **Responsibility or the Rules of Professional**
9    **Conduct?**
10       A.   Just because they're getting contingency
11   fees?
12       **Q.   And because that creates the potential for**
13   **adversity in issues like when and for how much**
14   **cases should be settled.**
15       A.   No.  If it were a standalone case, no.
16       **Q.   No, meaning that that would or would not**
17   **be precluded by your prohibition against adverse**
18   **pecuniary interests?**
19       A.   If it were a standalone case, no.
20       **Q.   It would not.**
21       A.   In other words, I assume by now we have no
22   more contingency fees allowed.
23       **Q.   We have contingent fees in every state in**
24   **the nation.**
25       A.   That's what I mean.

JANE ROSE REPORTING
1-800-825-3341  janerosereporting.com

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 112

1          In other words, if it was against the
2    rules, they'd be gone.  I'm agreeing with you.
3        **Q.   So it's either an unrecognized exception**
4    **to your general statement here or it's not what**
5    **you're talking about when you render the general**
6    **statement.**
7        A.   I think you're making the assumption that
8    if you have a contingency fee, okay, that it's
9    adverse to the client, and I don't think it's seen
10   that way.
11       **Q.   I agree it's not generally seen that way.**
12           **The question is whether or not it is**
13   **invariable the way your sentence is read.  Anyway,**
14   **never mind.  I'm not going to...**
15           **You talk in paragraph 24 about indirect PI**
16   **claimants including insurance companies who might**
17   **be held liable to persons for asbestos injuries**
18   **and who, absent the bankruptcy, would have had**
19   **claims for indemnification or contribution against**
20   **Grace.  What claims are you talking about?**
21       A.   That's where -- and I notice I start with
22   "as I understand it," I was asked to assume for
23   that particular paragraph that the insurance
24   carriers could have claims, excuse me, into the
25   Trust because they have these indirect claims

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                      Professor James Shein

Page 113

1    they'll be held liable to, and that they would

2    have gone for indemnification or some kind of

3    claim now against Grace.

4         Later on they talk about ones where

5    similarly they settled with Grace, and Grace had

6    indemnified them, so now that Grace effectively

7    owes the insurance carriers pursuant to asbestos

8    injury, all those claims could very well go into

9    the Trust instead to be handled, and that was my

10   point there, and, just like with any other kind of

11   claims that aren't represented by the TAC lawyers,

12   they had an incentive to pay their clients and not

13   those claims coming in either.  That was only my

14   point there.

15        **Q.  So this is just a subset of all the**

16   **claimants against the Trust who aren't represented**

17   **by TAC members.**

18        A.  Effectively, yes.

19        **Q.  There's nothing unique about this subset**

20   **from the other unrepresented by TAC member**

21   **claimants that you're identifying here.**

22        A.  I don't understand -- I admit I don't know

23   the details of the chain how those claims would

24   arise.  I did take that as an assumption, but

25   you're right.  The point being that once they're

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 114

1    they're, there's the same danger.

2        **Q.   And, indeed, you have, as you said, no**

3    **personal knowledge as to the existence, nature and**

4    **scope of any such claims or, for that matter,**

5    **whether they're wholly contingent at this point in**

6    **time.**

7        A.   No, but if -- my point being that if they

8    end up existing and they have the right to take

9    under the pot, problems can occur.

10       **Q.   Okay.  You discuss in paragraph 25 and 26**

11   **two sections of the TDP, Sections 5.6 and 5.13.**

12       **Are you purporting in paragraph 25 to be**

13   **addressing claims by insurers that are supposedly**

14   **subject to Section 5.6 or are you simply talking**

15   **about whatever claims are covered by Section 5.6**

16   **without regard to who holds them?**

17       A.   Anything that's covered in 5.6.  You want

18   me to look at 5.6?

19       **Q.   Yes.  That's in Exhibit 4.  It's on page**

20   **35 to 37.**

21       MR. GIANNOTTO:  Do you want him to read

22   it?

23   BY MR. LOCKWOOD:

24       **Q.   Well, I have a question which is you say**

25   **that the claims shall be processed in accordance**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 115

1    **with procedures to be developed and implemented by**
2    **the trustees, and I'm trying -- oh, I see.**
3    MR. GIANNOTTO:  It's on the last --
4    BY MR. LOCKWOOD:
5    **Q.  It's the last paragraph on page 37.**
6    MR. GIANNOTTO:  Are people still on the
7    phone or is something going on?
8    MS. ORR:  I'm still on the phone but every
9    five seconds, there's like three beeps.
10    A MALE TELEPHONE VOICE:  Same here.
11    (Whereupon a discussion was had
12    off the record.)
13    (Whereupon a recess was had from
14    2:17 p.m. to 2:22 p.m.)
15    BY MR. LOCKWOOD:
16    **Q.  So the concern that you express in Section**
17    **25 is again another notion that because some of**
18    **the TAC members have individual claims that would**
19    **be, what, their recoveries would be prospectively**
20    **diluted if appropriate procedures for liquidating**
21    **indirect PI claims were adopted by the trustees**
22    **and therefore inappropriate procedures should be**
23    **adopted instead?**
24    A.  I don't think they'd ever label them that
25    way.  They just say:

US District Court - Delaware               FINAL - May 14, 2009
Chapter 11 - W.R. Grace                    Professor James Shein

Page 116

1        Here's, you know, everybody agrees on
2   procedures, and because of the incentives it could
3   affect one group more than another.  Otherwise,
4   why put in procedures?
5        MR. GIANNOTTO:  Can I just interject?
6        You said something like Section 25.
7   You're referring to paragraph 25 of his expert
8   report when you said Section 25.
9        MR. LOCKWOOD:  I'm sorry.  If I said
10   section, I meant paragraph of the report.
11        THE WITNESS:  I assumed that.
12   BY MR. LOCKWOOD:
13     **Q.   At the moment, however, you have no**
14   **knowledge or information concerning what sort of**
15   **procedures will or won't or might or might not be**
16   **adopted for dealing with indirect asbestos PI**
17   **claims.**
18     A.  That's correct.
19     **Q.   And, again, you haven't looked at any**
20   **other trusts that have language identical to this**
21   **to see what procedures were adopted by those**
22   **trusts and whether or not indirect PI trust**
23   **claimants determined that they were or were not**
24   **unfair.**
25     A.  That's correct.

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace              Professor James Shein

Page 117

1        **Q.   And you have no idea of whether the**
2   **magnitude of indirect PI trust claims that will be**
3   **submitted to the Grace trust is sufficiently great**
4   **in dollar amount that it would make a meaningful**
5   **difference in the funds available to pay TAC**
6   **members' clients' claims?**
7        A.   That's correct.
8        **Q.   In paragraph 26 of your report you address**
9   **Section 5.13, and you assert that the members of**
10  **the TAC will have an incentive to cause the**
11  **trustees to reject contractual indemnity claims of**
12  **the settled asbestos insurance companies.**
13       **Can I assume from a prior answer that this**
14  **reference to contractual indemnity claims of the**
15  **settled asbestos insurance companies is something**
16  **that you were told existed by somebody as opposed**
17  **to having some independent knowledge of whether**
18  **they do, will or will not exist?**
19       A.   Well, they certainly are defined in
20  everything in the Plan and in the -- all the
21  documents, so I have to assume they exist.
22       **Q.   You're assuming that they, that they exist**
23  **because they're defined in the Plan as opposed to**
24  **having any personal knowledge of that?**
25       A.   That's correct.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 118

1      And the other thing, I was asked, as I
2  said earlier, to assume that these would be
3  legitimate claims.
4      **Q.  But, again, as with claims under Section**
5  **5.6, you have no personal knowledge as to how the**
6  **claims will arise?**
7      A.  I think you can figure that out from the
8  documents how they arise.
9      **Q.  Have you tried to do that?**
10     A.  Yes.  Seems to me they arise -- answer's
11  yes.
12     **Q.  Okay.  Maybe you can explain it to me**
13  **since I've had some difficulty figuring out how**
14  **they arise.**
15     **Have you, have you sought to ascertain**
16  **that the claims would arise only if claims against**
17  **the settled asbestos insurers were not effectively**
18  **channeled to this trust even though the injunction**
19  **purports to channel them to the Trust in the first**
20  **place?**
21     MR. GIANNOTTO:  I'm going to object.  He's
22  not been put forth as an expert.
23     MR. LOCKWOOD:  Well, he just told me that
24  he's -- he just testified that he has some reason
25  to believe that these claims exist.

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace               Professor James Shein

Page 119

1          THE WITNESS:  Because you refer to them in
2     the document.
3          MR. LOCKWOOD:  If he assumes they exist
4     because you told him, that's fine, but that's not
5     the answer I got.
6          THE WITNESS:  No, it is.  I told you
7     earlier that I was asked to assume that.
8     BY MR. LOCKWOOD:
9        Q.  Okay.
10          MR. GIANNOTTO:  Want me testimony on them?
11     I'm not going to give it to you.
12          MR. LOCKWOOD:  You've already had my
13     testimony on them.  That would probably be fair.
14     BY MR. LOCKWOOD:
15        Q.  And, again, apart from assuming that they
16     will exist, you have no idea whether they would
17     ever actually come to pass in an amount that, if
18     successful, would have anything more than a de
19     minimis effect on the recovery of TAC member
20     claims?
21        A.  That's correct.
22        Q.  In Section or Article 3 of your report you
23     address exculpation and indemnity provisions.
24        A.  Um-hmm.
25        Q.  In the very first sentence of paragraph 29

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 120

1    **you say that these provisions will significantly**

2    **immunize members of the TAC from any liability**

3    **resulting from negligent breach of fiduciary**

4    **duties to the Trust or to their individual**

5    **clients.**

6           **Could you direct me to the specific**

7    **provision that you contend would immunize TAC**

8    **members from negligent breach of fiduciary duties**

9    **to their individual clients?**

10       A.   Well, let's look first at the Plan.  Do

11   you have a copy of the Plan?

12       **Q.   You do.  It's Exhibit 1.**

13       A.   Thank you.

14       **Q.   It's the first document in the --**

15       A.   Yeah, I believe it's Section 11 toward the

16   back.

17       **Q.   11.9.**

18       A.   Good guess.

19       **Q.   Page 116.  Is that what you're referring**

20   **to?**

21       A.   Yes.  Yes.  Basically it lists all the

22   people that will have or incur any liability to

23   any entity for any act or omission in connection

24   arising out of the cases, including the Plan, the

25   settlements, okay, and then it goes on to, you

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace               Professor James Shein

Page 121

1    know, refer to those documents, and you could make

2    a case that these documents fit into that.

3        **Q.   What documents are you talking about that**

4    **it refers to?**

5        A.   It refers to the Plan.

6        **Q.   What claim would --**

7        A.   Again, it refers to the committee itself.

8        **Q.   The committee is not the TAC, is it?**

9        A.   I'm sorry.  Yes.  The Trust Advisory

10   Committee.  They just didn't use TAC there.

11       **Q.   The -- I thought you were referring to the**

12   **PI committee.**

13       A.   No.

14       **Q.   I apologize.**

15       A.   It's okay.  They're separately mentioned.

16       **Q.   Let's back up.**

17           **When you say "liability to an individual**

18   **client," what kind of claim do you think an**

19   **individual client would have against an individual**

20   **TAC member that would be described as an act based**

21   **on an act or omission in connection with or**

22   **arising out of the Chapter 11 cases including the**

23   **negotiation of this plan, pursue the confirmation**

24   **of this plan, consummation of this plan,**

25   **administration of this plan, et cetera?**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 122

1      A.   Or the property to be distributed under
2   this plan.
3           That in turn was being distributed under
4   the Trust, so I don't think it's that big a jump
5   to go to that.
6      **Q.   So it's your interpretation of this**
7   **provision that the TAC is immunized for**
8   **postconsummation mishandling of individual claim**
9   **submissions by claimants to the Trust?**
10     A.   Say that again.
11     **Q.   Well, I mean I'm trying to figure out**
12  **whether this -- you're saying that this provision**
13  **in effect would bar a malpractice claim against a**
14  **TAC member for somehow mishandling a claim on**
15  **behalf of a client that was submitted to the Trust**
16  **after the Trust is up and running.**
17     A.   Well, that's certainly going to be with
18  regard to the fiduciary duties of the Trust it
19  seems to me, and, if we go to the Trust itself, to
20  the indemnification portion, 23, 24 actually, I
21  mean you've got here the trustee as a member of
22  the TAC not be liable to the Trust or any
23  individual holding a claim or to any other person
24  except for such individual's own breach of trust
25  committed in bad faith or willful

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 123

1    misappropriation.

2        That's a pretty high standard to prove

3    willful and bad faith.  Doesn't that go to what

4    somebody's thinking about?  That's a tough one,

5    and you're saying to any individual holding an

6    asbestos claim.

7    **Q.  So is that --**

8    A.  Go ahead.

9    **Q.  No.  No.**

10   A.  It seems to me it just splits off the

11   whole malpractice claim between the individual and

12   the lawyer.

13   **Q.  So your --**

14   A.  If the lawyers on the TAC.  I'm sorry.

15   **Q.   Right.  So your interpretation of this is**

16   **that when a member of the TAC is not acting in his**

17   **capacity as a TAC member but is acting in his**

18   **capacity as the individual lawyer submitting a**

19   **claim to the Trust, two roles that you've already**

20   **identified in your report as separate and**

21   **different.**

22   A.  Um-hmm.  Well, then if the lawyer --

23   **Q.  That this exculpation applies to both**

24   **capacities, both as a TAC member and as a**

25   **individual claimant's lawyer submitting a claim to**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 124

1     **the Trust.**
2         A.   I read this that indeed that blurs the two
3     roles, and it cuts off.  Because they're a member
4     of one they get a free pass as a member of the
5     other.
6         **Q.   So if I told you that to my knowledge you**
7     **were the first person with a law degree that has**
8     **ever read this provision that way, would that**
9     **affect in any way, shape or form your view of the**
10    **scope of this provision?**
11        A.   Maybe I should be proud.
12        **Q.   Well, at a minimum what you are telling me**
13    **is this is your interpretation of this document.**
14        A.   Yes.  When I look at that, the whole issue
15    of indemnification -- go on to 4.6, the
16    indemnification portion, so you take the
17    exculpation, you take the lead-in on the -- where
18    was I.  On 23?  You take 4.4, 4.6 of this document
19    coupled with 11.9 of the Plan, and, yes, that's a
20    conclusion I reached.  That effectively changes
21    people's behavior.
22        **Q.   This is an important distinction, so let's**
23    **first talk about it in theoretical terms.**
24            **Certainly one could have a provision that**
25    **said:**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 125

1          In your capacity, and when acting as a

2   member of the Trust Advisory Committee, you will

3   only be liable under certain circumstances and be

4   indemnified for any such liability.

5       A.  Yeah, that could be put in there.

6       Q.  And you could also theoretically have a

7   provision that said:

8          And, in addition, we've got a special rule

9   for TAC members compared with all other lawyers

10  that submit claims to this trust that when the TAC

11  member submits claims on behalf of his clients to

12  the Trust, that TAC member shall not have any

13  negligent malpractice liability to the client

14  whose claims he's mishandling.  That would

15  theoretically be a different provision, right?

16      A.  I think the first one you mentioned given

17  who is the TAC, that's what happens.

18      Q.  You think a lawyer who submits a claim to

19  the Trust on behalf of client X is acting as a TAC

20  member when he submits that claim?

21      A.  No.  I assume not.

22      Q.  So I come back.

23          If he was exculpated for liability for

24  mishandling that claim, that would be different

25  from being exculpated from liability for some act

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 126

1    **he took in his official capacity as a TAC member.**

2        A.   If they were two different people, yeah.

3        **Q.   Even if it's the same person.**

4        A.   No, because you don't have to give a pass

5    to the person who does it as an individual lawyer

6    for his individual client because you've already

7    given a pass -- under these documents it seems to

8    me and all these sections put together, you're

9    already giving him a pass as a member of the TAC.

10       **Q.   With all due respect I asked you if you**

11   **could theoretically have two different positions,**

12   **one that dealt with official acts as a TAC member,**

13   **and one that dealt with acts as a lawyer**

14   **submitting claims.**

15       **Theoretically forget what you think this**

16   **document says --**

17       A.   I don't think so.  I don't think so.

18       I don't think you can give a free pass to

19   somebody on the committee -- you can't get a

20   blessing from your client.  I could never get my

21   lawyer to say -- I don't think I could have gotten

22   him to say:

23       We're going to waive -- I'm sorry.  He

24   couldn't have gotten me as a business person to

25   waive malpractice claims against him.

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace               Professor James Shein

Page 127

1     Q.  But you're saying that you think this
2   document does.
3     A.  Yes.
4     Q.  And that's your legal interpretation as a
5   lawyer reading a contract document.
6     A.  No.
7     Q.  What is it?
8     A.  I take all these things put together,
9   studying with the behavior of people, and I say:
10        I think that's all cut off.  Now, you guys
11   can debate the legal end, which is probably going
12   to happen anyway, but, you know, I believe from a
13   behavioral standpoint that's really what's
14   happening here.  You can all debate later.
15     Q.  I'm having trouble understanding what you
16   mean by "from a behavior standpoint" because you
17   have legal training, do you not?
18     A.  I do.
19     Q.  You understand that the obligations
20   created by written documents are legal questions,
21   right, of what the document means?
22     A.  If it gets to that point, yes, but usually
23   it's business people who are looking, reading
24   these things and behaving in a certain way.
25     Q.  This provision applies to lawyers, doesn't

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                          Professor James Shein

Page 128

1    **it?**

2      A.  Well, it's --

3      **Q.  Not business people.**

4      A.  Yes, as though, the, you know, indemnify

5    and defend the trustees and the member of the TAC.

6    Now those could very easily be business people.

7      **Q.  The members of the TAC --**

8      A.  Could be business people.

9      **Q.  But we've already established that they're**

10   **not, haven't we?**

11     A.  But we have established the fact that they

12   have to act in a certain way, lawyers or not.

13     **Q.  So bottom line is you believe using**

14   **whatever legal, nonlegal, psychological expertise**

15   **you may have that the Section 4.4 of the Trust**

16   **agreement, as informed by Section 4.6, and Section**

17   **11.9 of the Plan is intended to and does exculpate**

18   **the lawyers serving on a TAC from malpractice**

19   **liability to their individual clients --**

20     A.  Yes.

21     **Q.  -- in the process of submitting claims to**

22   **the Trust?**

23       MR. GIANNOTTO:  I'm going to object.  He

24   didn't testify anything about anyone's intent to

25   draft this.  He testified as to what he thought it

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 129

1   meant.
2       THE WITNESS:  Could happen.  And this is
3   what it meant.
4   BY MR. LOCKWOOD:
5       **Q.   Let me rephrase the question in light of**
6   **the objection.**
7       A.   Sorry.
8       **Q.   Your testimony is that you believe and**
9   **have asserted in an expert report that Section 4.4**
10  **of the Trust agreement in conjunction with Section**
11  **4.6 of the Trust agreement and Section 11.9 of the**
12  **Plan have the effect of exculpating TAC members**
13  **from malpractice liability based on negligence to**
14  **their individual clients for acts committed in the**
15  **course of submitting individual claims to the**
16  **Trust once it's up and running, correct?**
17      A.   If I understand the question, yes.
18      **Q.   Okay.  In the second sentence of paragraph**
19  **29 you state --**
20      MR. GIANNOTTO:  We're back to the report
21  again, right, just for the record?
22      MR. LOCKWOOD:  Absolutely.  You're
23  absolutely right.  Absolutely right.
24  BY MR. LOCKWOOD:
25      **Q.   In the second sentence of paragraph 29 of**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 130

1    your report, Professor Shein, you state that:

2           There is no effective means for the

3    trustees to remove a TAC member for breach of

4    fiduciary duty without the consent of the TAC

5    itself.

6           Are you aware that the Plan provides for

7    retained jurisdiction by the bankruptcy court over

8    the Trust?

9      A.  Yes.

10     Q.  Are you intending to state that the

11   trustees could not file a petition with the

12   bankruptcy court seeking removal of a TAC member

13   for breach of fiduciary duty by that TAC member?

14     A.  I assume the judge has certain retained

15   jurisdiction.

16     Q.  And why would that petition for removal

17   for breach of fiduciary duty of a TAC member not

18   be a, quote, effective means, closed quote, for

19   the trustees to remove a TAC member?

20     A.  I think I spell it out in paragraph 10 of

21   my report.

22     Q.  Let's turn to Section 5.3(c) of the Trust

23   agreement, which you cite in the first bullet

24   point in paragraph 10 of your report.

25          MR. GIANNOTTO:  It's page 29 of the Trust

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 131

1    agreement.
2         THE WITNESS:  Okay.
3    BY MR. LOCKWOOD:
4       **Q.   Is it your testimony that you read Section**
5    **5.3(c) to say that this is the only mechanism**
6    **under which a TAC member may be removed?**
7       A.   This is the mechanism I was referring to
8    in 5.3(c).
9       **Q.   And we can agree that it is a mechanism**
10   **for removing a TAC member, correct?**
11      A.   Yes.
12      **Q.   My question to you is is it the only**
13   **mechanism for removing a TAC member in the sense**
14   **that given the bankruptcy court's retained**
15   **jurisdiction over the Trust, theoretically at**
16   **least, the trustees could petition for removal on**
17   **the basis of conduct that's not addressed in**
18   **Section 5.3(c), which I don't believe talks about**
19   **fiduciary, breach of fiduciary duty.**
20      A.   In theory they could go to the bankruptcy
21   court for anything.
22      **Q.   And you think that the bankruptcy court in**
23   **the event of a showing by the trustees that there**
24   **in fact had occurred a material breach of**
25   **fiduciary duty by a TAC member would interpret**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 132

1       these documents to say:

2               No, no, no.  Even despite that you cannot

3       remove that -- I cannot remove that person because

4       Section 5.3(c) is the only mechanism for doing so,

5       and it requires the consent of the TAC, and the

6       TAC hasn't agreed.

7           A.   Judge could do anything he or she wants.

8           Q.   Surely you don't mean that the way you

9       stated it.  Within the bounds of the law or

10      something modifying that statement?

11          A.   All right.  I'll go with that.

12          Q.   The exculpation clause that you've

13      referred to, both Section 11.9 of the Plan and

14      Section 4.4 of the Trust agreement, permit removal

15      in the case of gross negligence or willful

16      misconduct, correct?

17          A.   Where are you referring to?  I'm sorry.

18      Specifically.

19          Q.   Well, in 4.4 --

20          A.   Of?

21          Q.   -- of the Trust agreement it says there

22      shall be no liability.

23          A.   You want to let me find it?

24              MR. GIANNOTTO:  It's page 23 of the Trust

25      agreement.

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 133

1          THE WITNESS:  All right.  I'm there.

2    Where are you?

3    BY MR. LOCKWOOD:

4       **Q.   Section 4.4.**

5       A.  Okay.

6       **Q.   The exculpation there excludes an**

7    **individual's own breach of trust committed in bad**

8    **faith or willful misappropriation, correct?**

9       A.  Yes.

10      **Q.   And Section 11.9 of the Plan --**

11         MR. GIANNOTTO:  Page 116.

12         THE WITNESS:  Give me a second.  Okay.

13   BY MR. LOCKWOOD:

14      **Q.   Contains a similar exception at the end of**

15   **the first long sentence that says:**

16         **So long as in each case such action or**

17   **failure to act did not constitute gross negligence**

18   **or willful misconduct.**

19      A.  Um-hmm.

20      **Q.   The conflict-of-interest problems that**

21   **your report addresses, as you have stated in the**

22   **report, involved breaches of fiduciary duty by the**

23   **TAC member towards the Trust, correct?**

24      A.  I think there's enough gray areas it could

25   be done without proving any breach of fiduciary

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 134

1    duties.
2        **Q.   You think you could have a TAC member**
3    **trying to get special treatment for claims of his**
4    **clients vis a vis other people, and that would be**
5    **done negligently?  It wouldn't be done**
6    **intentionally?**
7        A.   You have to prove that the problem is the
8    proof.
9        **Q.   The first thing you have to prove is that**
10   **there was a fact of trying to prefer the**
11   **individual clients over the interest of the**
12   **clients globally in order to have a breach of duty**
13   **at all, don't you --**
14       A.   Well, that --
15       **Q.   -- under your hypothesis.**
16       A.   Well, that plus somebody willing to stand
17   up and raise that red flag.
18       **Q.   Right.**
19       A.   You need both.
20       **Q.   Right.  But once that red flag has been**
21   **raised, if the conduct has in fact been shown, it**
22   **will have been shown to be intentional, won't it,**
23   **by that claimant, by that TAC member?  He's not**
24   **doing it in his sleep.**
25       A.   You'd have to show I assume, again, I

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 135

1    don't know if this is getting into legal

2    arguments, but I'm assuming that you'd have to

3    show that there was an intent not only to do the

4    best for theirs, but to hurt somebody else.

5        **Q.   So why don't these exculpation clauses**

6    **leave the TAC members open for the type of**

7    **liability for conduct that you've posited would be**

8    **the acting out if you will of the conflict of**

9    **interest?**

10       A.   Because I think all these things combined

11   cuts all that off.

12       **Q.   But there's the exclusion for intentional**

13   **conduct.  You think all these -- I mean I'm not**

14   **talking about all these provisions.**

15           **What I'm trying to focus on is what you**

16   **have testified is the basis for your**

17   **conflict-of-interest opinion in this case.**

18       A.   Um-hmm.

19       **Q.   Which is the preference by a TAC member of**

20   **his individual client interests over the interests**

21   **of the collective group of claimants that he is**

22   **supposed to be serving as a TAC member.**

23       A.   Not the --

24       **Q.   And if, if that's intentional conduct,**

25   **then haven't we established that the Trust**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 136

1    agreement and the Plan don't exculpate that TAC
2    member for that conduct?
3        A.  No.
4        Q.  Okay.  Why not?
5        A.  Let's go back to your first part of that
6    question.  All right.  I didn't say it's going to
7    happen.  I said it could happen.
8        Q.  Okay.  But if it doesn't happen, no harm,
9    no foul.
10       A.  Agreed.  Agreed.
11       Q.  Okay.  So now we posit it does happen.
12       A.  Okay.  And based --
13       Q.  How is it not -- how is it exculpated?
14       A.  Well, I said the combination of those
15   three things together, okay, makes it very hard to
16   attack any of these people, plus add in the fact
17   of everything else I've said in my report, it
18   makes it very hard for anybody to take that other
19   part we just agreed was important which is who's
20   going to raise the red flag.
21       Q.  Do you know how many lawyers who aren't on
22   the TAC represent claimants against this Trust?
23       A.  I'm afraid to ask.
24       Q.  If I suggested hundreds, would you have
25   any reason to disagree with that?

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 137

1      A.  None whatsoever.
2        **Q.  If I suggested to you if the word got**
3   **around to some one or more of the hundreds of**
4   **plaintiffs' lawyers that TAC members were getting**
5   **their clients better treatment than everybody**
6   **else's clients that there might be somebody around**
7   **who would, quote, raise a red flag?**
8      A.  Could happen.
9        **Q.  With respect to the exculpation for**
10  **negligence, is it your testimony that that**
11  **exculpation exceeds the bounds of what Delaware**
12  **Statutory Trusts are permitted to do for trust**
13  **fiduciaries?**
14     A.  I don't know.  I didn't look at the
15  Delaware Statutory Trust.
16       **Q.  What about the Delaware General**
17  **Corporation -- well, let me back up.**
18         **You in your resume indicated that much of**
19  **what you've done in the area of conflicts and**
20  **ethics had to do with regular business**
21  **corporations, correct?**
22     A.  And not-for-profits and, you know, pension
23  funds, other forms where there's fiduciaries.
24       **Q.  Right.  And many corporations,**
25  **particularly business corporations, are**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 138

1    incorporated in Delaware, right?

2       A.  Yes.

3       **Q.  Is it your understanding that Delaware law**

4    **prohibits exculpation and indemnity for corporate**

5    **directors and officers for negligent acts in their**

6    **capacity as such officers and directors?**

7       A.  I have not looked at that code.

8       **Q.  So your opinions on the subject of the**

9    **inappropriateness of the exculpation for negligent**

10   **conduct are not based on something about your**

11   **views about what the law requires but are based on**

12   **your views about the way people ought to run their**

13   **railroads?**

14      A.  Yeah, since I used to be in the railroad

15   business, yes.

16      **Q.  Gee, I didn't know what.  What a great**

17   **guess.**

18      A.  Could we take a break sometime shortly?

19      **Q.  Yeah, certainly.  I'm actually getting**

20   **closed to being finished.**

21      **Five-minute break.**

22         **(Whereupon a recess was had from**

23         **2:58 p.m. to 3:04 p.m.)**

24   **BY MR. LOCKWOOD:**

25      **Q.  In paragraph 34 of your expert report in**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 139

1    the last sentence, you state that you understand

2    that this trust agreement was drafted at least in

3    part by the asbestos claimant's attorneys that

4    included the TAC members or members of their law

5    firms.  From whom or where did you obtain this

6    understanding?

7        A.  I believe it was from Mike Giannotto next

8    to me.

9        Q.  And apart from what Mr. Giannotto told you

10   on that subject, and I think this is a little bit

11   repetitive of what we talked about earlier, but

12   with respect to the particular provisions that

13   we've been discussing here today, you know, it's

14   fair to say as a personal matter nothing of

15   whether those provision were copied from trust

16   agreements in other cases that were previously

17   approved by bankruptcy courts?

18       A.  I have no way to know.

19       Q.  So -- okay.

20           What understanding, if any, did you have

21   as to the size of the Asbestos Claimants'

22   Committee that you were told drafted in whole or

23   in part this in terms of the number of lawyers

24   that were on the committee compared with the

25   number of lawyers that are on this TAC?

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 140

1    A.  I don't know.

2        Q.   So you don't know, for example, whether

3    the TAC members were a minority of the members of

4    the ACC.

5    A.  That's correct.

6        Q.   Nor do you know what role, if any, the

7    Future Claimants' Representative had in drafting

8    these provisions.

9    A.  That's correct.

10       Q.   In paragraph 36 you assert in the second

11   sentence, again, of your report, in the second

12   sentence:

13       Members of the TAC who have obligations to

14   existing clients with claims against the Trust and

15   other members of their law firms must be

16   disqualified because these obligations conflict

17   with their fiduciary duties under the Trust

18   agreement.

19       In saying they must be disqualified, is it

20   fair to say that you are not purporting to

21   represent a -- to state that this disqualified

22   must occur because of some legal principle that is

23   binding here?

24   A.  That's correct.

25       Q.   And that, rather, they must be

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 141

1    disqualified because of the analysis and opinions

2    that you have expressed earlier in this opinion

3    results in your personal view which you would hope

4    that the Court would agree with, that under these

5    circumstances this shouldn't be permitted?

6        A.   This shouldn't be permitted because

7    there's too much incentive for mischief.

8        Q.   And is the same about not being an opinion

9    of what the law requires and expressing your

10    personal views because of the factors stated

11    previously in your report apply to the conclusions

12    that you state in paragraph 37 of your expert

13    report?

14        A.   That's correct.

15        Q.   Are you aware that the Plan and the

16    documents that we have discussed in the Trust

17    agreement and the TDP are being sent out for a

18    vote by the W.R. Grace creditors?

19        A.   I would assume they would be.

20        Q.   And are you aware that there is a class of

21    creditor comprising the asbestos personal injury

22    claimants of Grace that will vote on this plan?

23        A.   That's what the Plan said.

24        Q.   And that the Plan -- strike that.

25            And that of the tens of thousands of

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 142

1    potential voters are you aware that the vast

2    majority of them are not represented by the four

3    members of the TAC?

4       A.  I have no way of knowing that.

5      Q.  Phrased differently, you have no way of

6    knowing that the TAC members' clients represent a

7    majority of the voters.

8       A.  Either direction.

9      Q.  Your opinions discuss the potential for

10    conflicts of interest that you've identified on

11    the part of the TAC members.

12       What significance would you attribute, if

13    any, to the fact that -- strike that.

14       Assuming that an overwhelming majority of

15    the votes on this plan coming from claimants not

16    represented by TAC members was in favor of this

17    Plan, what, if any, significance would you ascribe

18    to that?

19       A.  Not much.  The incentive for mischief is

20    there.

21      Q.  So you don't in terms of the trade-off

22    that we discussed earlier between the experience

23    of having asbestos -- start over.

24       Start over again.

25       As we discussed earlier, there's a

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 143

1    potential trade-off between tort law experience on

2    the one hand and possible conflict incentives on

3    the other or actual conflict incentives and

4    possible conduct based on that instead of on the

5    other, and, in your view, the beneficiaries of the

6    Trust are not entitled to decide which of the two

7    trade-offs they would prefer.

8        A.  I don't think it's an either/or.

9        Q.   Well, whether you think it's either/or,

10   let's put it this way:

11        Since it's not a secret that the TAC

12   members represent individual claimants, and since

13   other personal injury lawyers will be reviewing

14   these documents in terms of advising their clients

15   as to how to vote or, indeed, in many instances,

16   voting for their clients, is it your view that the

17   non-TAC claimants are not entitled to decide that

18   they would prefer the experience represented by

19   these TAC members over what you think, and they

20   may think are the conflict-of-interest problems

21   that arise from that?

22       A.  I have no way to know what they think.

23       Q.   Voting for the Plan would not in your view

24   evidence what they think about that?

25       A.  I don't think they have much choice other

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 144

1  than that.

2  **Q.  They could vote down the Plan if they**

3  **thought the conflicts were serious, couldn't they?**

4  A.  But they may think, again, may, neither of

5  us know for sure, they may think that this is, you

6  know:

7  Otherwise, I've got a ten year court

8  battle on my hands, and I'll take the lesser of an

9  evil in that I don't want the evil on one side of

10  the ten year court battle that I may or may not

11  win or a lottery chance over here that -- whether

12  or not people will behave.

13  **Q.  What is the ten year court battle that you**

14  **were hypothesizing?**

15  A.  If this whole thing were to crater because

16  enough people voted against it.

17  **Q.  Well, you're aware that you can't get any**

18  **plan confirmed without the statutorily mandated**

19  **votes.**

20  A.  Rights.

21  **Q.  So there's no litigation about confirming**

22  **a plan that didn't get the requisite amount of**

23  **votes, right?**

24  A.  Yeah.

25  **Q.  So if this plan got voted down because**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 145

1    **people didn't like this conflict-ridden trust**
2    **agreement that you claim exists here, what sort of**
3    **ten-year litigation are you hypothesizing would**
4    **occur as a result of that as opposed to, for**
5    **example, rewriting the Plan to make sure that the**
6    **next time around people voted for it?**
7       A.   That's a good idea.  Rewrite it now.
8       **Q.   A stitch in time saves nine, is that what**
9    **we're talking about?**
10      A.   Be better.
11         MR. LOCKWOOD:  I don't have any further
12   questions.
13         MR. GIANNOTTO:  Do you have any questions
14   for debtor?
15         MR. SMITH:  Maybe I'll just do a few.  You
16   want to take a minute.
17         MR. LOCKWOOD:  Let me get my stuff out of
18   your way.
19                  EXAMINATION
20   BY MR. SMITH:
21      **Q.   What were the date of the degrees you've**
22   **received, for example, your law degree, your**
23   **business school degree?**
24      A.   Oh, boy.  Let's see.  Back in the stone
25   age.

US District Court - Delaware                 FINAL - May 14, 2009
Chapter 11 - W.R. Grace                      Professor James Shein

Page 146

1          MR. GIANNOTTO:  Is that not on the report?

2          THE WITNESS:  No.

3     BY MR. SMITH:

4          **Q.  What was the date of your law degree?**

5          A.  Law degree was 1997.

6          **Q.  Okay.  And after you graduated from law**

7     **school, you immediately started working at**

8     **McDermott, Will & Emery; is that right?**

9          A.  Yes, as counsel.

10         **Q.  And would the opinions you're giving in**

11    **this case be similar to the type of work you did**

12    **at McDermott?**

13         A.  Not really.

14         **Q.  Okay.  And your business school degree**

15    **before that, do you have any recollection of about**

16    **when that was?**

17         A.  Sounds like it was more -- longer than it

18    was.

19         **Q.  I didn't mean this to be a difficult**

20    **exam-type question.**

21         A.  I got the, let's see, my undergrad was

22    '64, my MBA was '66 and my doctorate was '68.

23    That's 19, not 18.

24         **Q.  Okay.  And before you were teaching as a**

25    **professor at Northwestern, you were listed as an**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 147

1      adjunct professor; is that correct?

2          A.  That's right.

3          Q.  What's the distinction in the type of

4      position you have now?

5          A.  One's part time, one's full time.

6          Q.  Okay.  And how did it come about that you

7      were teaching full time?

8          A.  I was asked to.

9          Q.  Okay.  Are you a tenured track professor?

10         A.  No.

11         Q.  Okay.  There's no possibility you could be

12     eligible for tenure?

13         A.  There is if I'm willing to undertake a

14     tremendous part of my life in researching.

15         Q.  Okay.  But you don't have tenure and

16     you're not willing to undertake the research to

17     get tenure; is that right?

18         A.  That's correct.

19         Q.  And the Loyola law degree, were you

20     working full time while you were getting that?

21         A.  No.

22         Q.  Okay.  Were you in law school full time at

23     that time?

24         A.  Yes, but I was working part time.

25         Q.  Have you ever worked for any of the

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 148

1    **lawyers in this case before?**

2    A.  No.

3    **Q.  Okay.  How did you get retained in the**

4    **case?**

5    A.  Mr. Giannotto called me.

6    **Q.  Okay.  How did he find out about you?**

7    MR. GIANNOTTO:  Objection, lack of

8    foundation.

9    THE WITNESS:  I have no idea.

10   BY MR. SMITH:

11   **Q.  Okay.  You list some documents that you've**

12   **considered, such as the Trust agreement and things**

13   **like that in your report.  Who provided you with**

14   **those documents?**

15   A.  I think I got some on-line or -- and then

16   I asked Mr. Giannotto to send me copies.

17   **Q.  Okay.  Were the majority of the documents**

18   **you've relied on provided by the lawyers in this**

19   **case?**

20   A.  I think so, yes.

21   **Q.  Okay.  And in order to render your**

22   **opinions in this case, is it fair to say that you**

23   **had to interpret various legal documents that are**

24   **at issue in the case?**

25   A.  I guess "interpret" is the right word.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 149

1        Q.   Okay.  And, in addition, in order to
2    render your opinions in this case, you had to
3    interpret various rules and statutory provisions
4    you cite in your report; is that right?
5        A.   Right.  Well, wait.  Wait.  You know, when
6    you say I had to -- use your words again.
7        Q.   Well, why don't I ask another question.
8            Is it fair to say that ultimately these
9    Plan documents, the Trust documents will be
10   interpreted by the Court.  Is that fair to say?
11       A.   Everything's going to get interpreted by
12   the Court.
13       Q.   Okay.  And the Court may disagree with the
14   interpretations that you've given to the
15   documents, right?
16       A.   Well, I hope the Court sees them in a new
17   light from a business and behavioral standpoint
18   instead of just a legal standpoint because all
19   these documents may be perfectly legal --
20       Q.   That's not what I'm asking.  I was sitting
21   here today, and I heard, would it be fair to say,
22   there were a lot of disagreements about
23   interpretation of the documents between yourself
24   and Mr. Lockwood.  Would that be fair to say?
25       A.   I think the disagreement wasn't an

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 150

1    interpretation of the documents.  I think it is a

2    difference in the interpretation of people's

3    behavior.

4        **Q.  Well, you and Mr. Lockwood, for example,**

5    **disagreed about whether malpractice claims might**

6    **be barred under certain provisions in the various**

7    **documents, right?**

8        A.  Right.

9        **Q.  Okay.  And there were some other instances**

10   **where you and Mr. Lockwood disagreed on various**

11   **interpretations of the documents you reviewed,**

12   **right?**

13       A.  There were a few --

14       MR. GIANNOTTO:  I'm going to object.  I

15   mean Mr. Lockwood was asking questions.  He wasn't

16   giving interpretations, but go ahead, you can

17   answer.

18       THE WITNESS:  Yeah, I don't think we

19   disagreed on interpretation I guess is really

20   true.  You know, he asked me a lot of questions,

21   and I told you how I thought these things affect

22   behavior.

23   BY MR. SMITH:

24       **Q.  Okay.  But that's --**

25       A.  Or could.  How these things could affect

Page 151

1   behavior.  I'm not attributing, you know, bad

2   thoughts, bad ideas, evil things in anybody's

3   mind.  I'm just saying temptation is there.

4        **Q.  Okay.  So you would agree that the**

5   **interpretation placed on all of the Plan documents**

6   **by the claimants and the debtor is the correct**

7   **interpretation?**

8        A MALE TELEPHONE VOICE:  Objection to the

9   form lack of foundation.

10        MR. GIANNOTTO:  Object --

11        A MALE TELEPHONE VOICE:  Objection.

12        THE REPORTER:  Wait.  Wait.  Who objected?

13        THE WITNESS:  Absolutely not.

14   BY MR. SMITH:

15        **Q.  So there is a disagreement between**

16   **yourself and the --**

17        A.  No.

18        **Q.  -- debtors and the claimants regarding**

19   **interpretation of these documents.**

20        A.  No.

21        **Q.  I'm just trying to get a yes-or-no answer**

22   **on this.  Can you tell me --**

23        MR. GIANNOTTO:  There is no yes or no.

24   BY MR. SMITH:

25        **Q.  You can't tell me whether you disagree**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 152

1   **with the debtor's and the claimants'**

2   **interpretation of the Plan documents?**

3           MR. GIANNOTTO:  Objection --

4           THE WITNESS:  When did you kill --

5           MR. GIANNOTTO:  Wait.  Wait.  I'm going to

6   object.

7           There's been no saying here what their

8   interpretation of anything is.  How can he agree

9   or disagree with it?  Mr. Lockwood asked

10  questions --

11          MR. SMITH:  We don't need a speaking

12  objection.

13  BY MR. SMITH:

14    **Q.   If you want to make your plane, let's get**

15  **going.  I just want a yes-or-no answer.  Do you**

16  **agree --**

17          MR. GIANNOTTO:  He can't answer it yes or

18  no.  He did not give an interpretation.

19  BY MR. SMITH:

20    **Q.   Okay.  Do you know what the interpretation**

21  **of the Plan documents you've reviewed is given by**

22  **the debtors and the claimants?**

23    A.   All I know is specifically that this

24  thing, the impact of these, not the

25  interpretation, the impact --

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 153

1       Q.   You're answering a different question.
2           I'm asking you do you know what the debtor
3    and the claimants' interpretation of all of these
4    plans documents you've reviewed is?
5       A.   No.
6       Q.   Okay.  You didn't familiarize yourself
7    with that in preparing your opinions.
8       A.   I assume the documents say what the
9    documents say, and I'm taking saying what the
10   impact of those documents are.
11      Q.   But you would agree with me that
12   ultimately the Court is going to interpret all of
13   the documents that you reviewed and relied upon
14   for your opinions.
15      A.   Interpret as to legality, but I'm not sure
16   without it being pointed out that they will
17   interpret or been asked to interpret the impact of
18   them.
19      Q.   Okay.  So you're offering some opinions
20   regarding impact of documents that you don't think
21   the Court's going to make rulings on?
22      A.   Again --
23          MR. GIANNOTTO:  Object.  That's not what
24   he said.
25          If you can understand what he said, answer

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 154

1    it.
2          THE WITNESS:  As best as I understand the
3    question, the Court is probably going to rule on
4    the legality.
5    BY MR. SMITH:
6       Q.  Okay.
7       A.  I am asking the Court to look at:
8          Wait a minute.  You got to look past the
9    legality sometimes and see what the impact of any
10   perverse incentives are that may be legal, but,
11   really, under good governance practices shouldn't
12   be allowed to go on.
13      Q.  Okay.  So you agree with me that the
14   Court's going to make determinations regarding
15   interpretation of the documents you've relied on,
16   right?
17      A.  The Court will interpret the legality of
18   those documents.
19      Q.  Okay.  And also the Court's going to
20   interpret what those documents mean, is that fair?
21      A.  From a legal standpoint, yes.
22      Q.  Okay.  Now, you're not holding yourself
23   out as an expert on a medical expert on asbestos
24   disease, right?
25      A.  That's correct.

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 155

1          Q.   And you're not an expert on what claims
2      have merit or don't have merit?
3          A.   That's correct.
4          Q.   And you're not an expert on medical
5      criteria that might be used in paying claims.
6          A.   No.
7          Q.   And you're not I suppose holding yourself
8      out as an expert on the interpretation of legal
9      documents.
10         MR. GIANNOTTO:  I'm going to object.  I
11     don't even know what that means.
12         Each of these documents are legal
13     document, and he's read them and said what he
14     thinks they said.  If the point you're making --
15         MR. SMITH:  You're making a speaking
16     objection.
17         MR. GIANNOTTO:  I understand because we
18     can't understand what you're talking about.
19         MR. SMITH:  He didn't say that.  You said
20     that.
21     BY MR. SMITH:
22         Q.   Are you holding yourself out as an expert
23     on this case on interpretation of legal documents?
24         MR. GIANNOTTO:  And I'm going to object
25     because that question makes no sense.

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 156

1          If you can understand it, answer it.

2          THE WITNESS:  I'm not interpreting

3     anything.

4          What I'm saying is I read these documents

5     and I say:

6          This is the mischief it could cause.

7     BY MR. SMITH:

8       **Q.   Okay.  So you're not holding yourself out**

9     **as an expert on the interpretation of legal**

10    **documents, correct?**

11      A.   That's correct.

12      **Q.   Okay.**

13      A.   If I understand your question.

14      **Q.   Now, you're not a psychologist, correct?**

15      A.   I have a Ph.D. in organizational behavior,

16    which we had to get into a lot of psychology and

17    sociology under a business setting.

18      **Q.   Okay.  Are you holding yourself out as an**

19    **expert in psychology?**

20      A.   Only as that part of the motivational part

21    in a business setting.

22      **Q.   Have you ever done any empirical research**

23    **where you've collected data from subjects**

24    **regarding human behavior?**

25      A.   Yes.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 157

1      Q.  What was that?

2      A.  For my dissertation.

3      Q.  And since your dissertation have you ever

4   done any empirical research on human behavior?

5      A.  No, having read substantial amounts.

6      Q.  Have you ever published any research on

7   human behavior in a peer review publication?

8      A.  No.

9      Q.  You've never held yourself out as an

10   expert in litigation on Trust procedures, correct?

11      A.  That's correct.

12      Q.  And you've never held yourself out as an

13   expert in litigation on trust governance, correct?

14      MR. GIANNOTTO:  I'm going to object.  I

15   don't know what "litigation on trust governance"

16   as opposed to "trust governance" means.

17   BY MR. SMITH:

18      Q.  In a lawsuit have you ever held yourself

19   out as an expert on trust governance before?

20      A.  No.

21      MR. GIANNOTTO:  Wait, wait, wait, wait.

22   I'm going to object to that.  He already testified

23   that he --

24      MR. SMITH:  You're telling us what his

25   testimony is, not objecting.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 158

1        MR. GIANNOTTO:  He's already testified
2   that he was held as an expert in the Thorpe case.
3   If that's what you mean by "trust governance," I
4   don't know what you mean by "trust governance."
5        MR. SMITH:  Okay.  Fine.  You don't know
6   what I mean.
7        MR. GIANNOTTO:  Neither does anyone else.
8   BY MR. SMITH:
9      **Q.  Are you holding yourself out as an expert**
10  **on asbestos trusts?**
11     A.   Only as to what I've testified here and in
12  the Thorpe case.
13     **Q.  Well, the Thorpe case, did that involve an**
14  **asbestos trust?**
15     A.  Yes.
16     **Q.  Oh, it did?  Okay.**
17        **Well, you've never published anything in**
18  **any kind of scholarly journal on asbestos trusts,**
19  **have you?**
20     A.  No.
21     **Q.  Okay.  And you know though that there's**
22  **been a lot of experience with asbestos trusts,**
23  **correct?**
24     A.  Yes.
25     **Q.  In fact, there have been asbestos trusts**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 159

1    around for decades.

2        A.  I understand that.

3        **Q.   And do you know what the first asbestos**

4    **trust was?**

5        A.  Are you going to tell me?

6        **Q.   No.  I'm asking you.**

7        A.  No.

8        **Q.   Can you identify any other asbestos trust**

9    **that exists other than the proposed one for Grace?**

10       A.   Thorpe.

11       **Q.   Any other asbestos trusts?**

12       A.   Armstrong, all the ones I read about in

13   addition.

14       **Q.   Do you know how many asbestos trusts are**

15   **in existence?**

16       A.   No.

17       **Q.   Can you identify any instance in which an**

18   **expert has been allowed in court to give testimony**

19   **such as yours regarding the propriety of an**

20   **asbestos trust?**

21       MR. GIANNOTTO:  I'm going to object.

22   That's just so irrelevant to anything.

23       Go ahead if you know anything.

24       THE WITNESS:  No, I don't know why I would

25   know.

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 160

1   BY MR. SMITH:

2       **Q.   Okay.  Can you identify any expert who**

3   **shares your opinions regarding the Grace trust?**

4           MR. GIANNOTTO:  Object.

5           THE WITNESS:  I have not tried.

6   BY MR. SMITH:

7       **Q.   And can you identify any expert that**

8   **shares your opinions regarding the structure of**

9   **the Grace trust or any similarly structured trust?**

10          MR. GIANNOTTO:  I'm going to object.

11          Go ahead.

12          THE WITNESS:  I cannot off the top of my

13  head.

14  BY MR. SMITH:

15      **Q.   Okay.  Other than that insurance case**

16  **where there was an issue about standing, have your**

17  **opinions ever been barred in part or in whole by**

18  **any Court?**

19          MR. GIANNOTTO:  Hold on a second.  He did

20  not testify his opinion was barred.  He held that

21  the insurance companies could not raise the issue

22  because the insurance companies lacked standing.

23  There was no testimony that the Court said he

24  couldn't testify because he wasn't qualified to

25  testify.  In fact, he testified the Court said he

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 161

1    was qualified.

2    BY MR. SMITH:

3        **Q.   Have your opinions -- my only question is**

4    **have your opinions ever been the subject of any**

5    **attempt to bar your opinions?**

6        A.   Yeah, they just -- in the Thorpe case.

7        **Q.   In the Thorpe case.**

8        A.   Because of the standing of the proponent

9    which was the insurance carriers.

10       **Q.   But has there ever been any litigation**

11   **saying that your particular expert opinions should**

12   **be excluded by a court?**

13       A.   Yeah, the Thorpe case.

14       **Q.   Well, see, your lawyer's made a**

15   **distinction here between the standing of the**

16   **people you were working for in the Thorpe case and**

17   **actually challenging the substance of your**

18   **opinions or whether you should be allowed to**

19   **testify.**

20       **Has there ever been any litigation**

21   **challenging you personally, your ability to**

22   **testify or seeking to bar your specific opinions**

23   **you were offering?**

24       A.   Barring me because I'm me?

25       **Q.   Yeah, or the opinions that you're**

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 162

1    offering?

2        A.   Yeah.  Nobody's ever done that before.

3        Q.   Okay.  And was the Thorpe case the only

4    case in which you've testified as an expert?

5            MR. GIANNOTTO:  I object.  He didn't say

6    testify.

7            MR. LOCKWOOD:  I object.

8            He didn't testify.  He tried to.

9            MR. SMITH:  Oh, yeah, that's right.  I've

10   been confused by all these objections.  That's my

11   excuse.  I'm sticking with it.

12   BY MR. SMITH:

13       Q.   How many cases have you testified as an

14   expert in?

15       A.   The only other one I believe was Itel.

16       Q.   Okay.  So there was one case in which you

17   actually testified as an expert, right?

18       A.   Yes, which is probably good.  I'm not a

19   professional expert.

20       Q.   Do you agree that there's a body of law

21   governing corporate governance?

22       A.   Yes.

23       Q.   And there's a body of law governing trust

24   governance?

25       A.   Yes.

US District Court - Delaware                 FINAL - May 14, 2009
Chapter 11 - W.R. Grace                      Professor James Shein

Page 163

1    **Q.  And do you know what law on trust**
2    **governance the Court will apply in this case?**
3        A.  I'm told from the documents it's Delaware.
4        **Q.  Okay.  Do you identify any Trust**
5    **procedures in your expert report that you believe**
6    **would be superior to the Trust procedures proposed**
7    **for Grace?**
8        MR. GIANNOTTO:  Object, reports speaks for
9    itself.
10       THE WITNESS:  I don't understand that.
11   You lost me.
12   BY MR. SMITH:
13       **Q.  Have you identified any procedures that**
14   **you believe should be implemented to replace the**
15   **Trust procedures that have been proposed for**
16   **Grace?**
17       MR. GIANNOTTO:  Object, same grounds, the
18   document speaks for itself.
19       THE WITNESS:  Big problem is just who
20   those people are.
21   BY MR. SMITH:
22       **Q.  Yeah.  Is that your only objection to the**
23   **Trust procedures, who the individuals involved**
24   **are?**
25       A.  It's the conflicts that exist.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 164

1     Q.  Okay.
2     A.  Which arise because of individuals.
3     Q.  So that's a yes?
4     A.  If I understand the question, that's a
5  yes.
6     Q.  Okay.  You've never been asked to
7  participate in the design of an asbestos trust,
8  correct?
9     A.  That's correct.
10    Q.  And you've never been sought out as an
11  expert on asbestos trust design.
12    A.  That's correct.
13    Q.  Can you identify any instance in which
14  similar Trust procedures to those proposed here
15  have been found to be improper in any way?
16    A.  Not without looking at case law which I
17  haven't looked at at all.
18    Q.  So the answer is you're not aware of any
19  such instance.
20    A.  I didn't look at case law.
21    Q.  So you're not aware of it, right?
22    A.  Yeah.  I can't be if I didn't look at the
23  cases.  When you say "finding," I assume you mean
24  a legal finding.
25    Q.  And you're not aware of any instance in

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 165

1    which the sort of Trust procedures that you
2    critique in your report have actually resulted in
3    the sorts of problems you identify in your report,
4    are you?
5       A.  I told the gentleman next to you that I
6    was not aware of that.
7          Q.  All right.
8          MR. GIANNOTTO:  He's referring to Mr.
9    Lockwood.
10         MR. SMITH:  I think that might be it for
11   me, too.
12         MR. GIANNOTTO:  Mr. Rich, do you have any
13   questions.
14         MR. RICH:  I have a couple of questions, I
15   just can't help myself.  I've been listening
16   quietly all day long.
17                    EXAMINATION
18   BY MR. RICH:
19      Q.  I believe you told Mr. Lockwood that if
20   the TAC members were personal injury lawyers that
21   did not have clients with claims against W.R.
22   Grace that you wouldn't have any problem with them
23   being TAC members; is that right?
24      A.  I'm assuming they'd have no other
25   conflicts.

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                         Professor James Shein

Page 166

1       **Q.   Correct.  So you would be okay with that?**
2       A.  Probably.
3       **Q.   Why wouldn't you be okay with that?**
4       A.  Well, it's factual.  I mean legally all
5   the stuff's okay --
6       **Q.   I'm asking you --**
7       A.  -- it's factual that drives me nuts.
8       **Q.   I'm asking you to assume for the purpose**
9   **of the question the fact that the lawyers serving**
10  **on the TAC do not have clients with claims against**
11  **W.R. Grace.**
12      **Under those circumstances would you be**
13  **okay with those people as TAC members?**
14      A.  I think I would be.
15      **Q.   Okay.  So if then --**
16      A.  Let me clarify.
17      **Q.   Okay.**
18      A.  That they aren't beholden in some other
19  way to any of the players.
20      **Q.   Okay.**
21      A.  In other words, they're objective.
22      **Q.   All right.  Would it be fair to state then**
23  **that the crux of your problem with this**
24  **arrangement is that you believe that there is a**
25  **potential conflict of interest when a TAC member**

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace               Professor James Shein

Page 167

1   **has a client who has a claim against W.R. Grace?**

2       A.   Yes, that's the starting point, you're

3   right.

4       **Q.   Okay.  If you again assume for me that a**

5   **TAC member who has clients with claims against**

6   **W.R. Grace is faithful to his fiduciary**

7   **obligations to the Trust, under those**

8   **circumstances would you have problems with the TAC**

9   **members?**

10      A.   I'd sure hate to figure out what

11  "faithful" meant in your descriptor.

12      **Q.   They complied with their fiduciary**

13  **obligations.**

14      A.   We talked about before with Mr. Lockwood,

15  the gentleman to your left, that, you know, it

16  doesn't change.  The incentives are there to do

17  mischief sooner or later.  Why have them in there

18  in the first place?  I don't understand what

19  you're getting at.

20      **Q.   Your answer does not assume the assumption**

21  **I asked you to assume, so I'm going to ask you**

22  **again.**

23      A.   Okay.

24      **Q.   If you assume that the TAC member with a**

25  **client who has a claim against W.R. Grace complies**

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 168

1      **with his or her fiduciary obligations to the**
2      **Trust, do you have any problem with that person**
3      **being a TAC member?**
4          MR. PRATT:  Objection to form.
5          It's Warren Pratt.  I think the question's
6      incomplete.
7      BY MR. RICH:
8          **Q.  You can answer.**
9          A.  I honestly don't understand.
10         **Q.  You honestly don't understand that I'm**
11     **asking you to assume that a TAC member is**
12     **completely faithful to his fiduciary obligations**
13     **to the Trust.  Do you have a problem making that**
14     **assumption?**
15         A.  Yeah, I guess maybe that's where it is.  I
16     have a problem making that assumption.
17         **Q.  Okay.  And that's because lawyers can't**
18     **possibly comply with their fiduciary obligations**
19     **with clients or others or what's the basis?  Is it**
20     **prejudice against lawyers?  What is it?**
21         A.  I'd have to be prejudiced I guess against
22     myself then.
23         **Q.  Well, it wouldn't be the first time.**
24         A.  All I'm saying here is I guess that's an
25     "if," and I guess I can't believe that that

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 169

1    temptation wouldn't stay there.

2         Back up for just a second.  I'm not saying

3    that they're going to do anything.  Okay.  I'm

4    just saying the temptation is there to do it.

5       **Q.   Well, I'm asking you to assume that they**

6    **can control these base urges.**

7         **If you assume that they can control their**

8    **urges, assume that that is a fact, that they will**

9    **indeed control their urges, do you still have a**

10   **problem with them being TAC members?**

11      A.   So there's a wizard behind the curtain who

12   can do that.

13      **Q.   I don't believe that that's necessary.  I**

14   **think that we all can control our urges, but if**

15   **you think otherwise, that's your prerogative.**

16      A.   Given that huge leap of faith, I suppose

17   it could be done.  I'd have to think more about

18   it.

19         MR. RICH:  Okay.  That's all I have.

20         MR. GIANNOTTO:  Is there anyone on the

21   phone other than an insurance company

22   representative that has any questions?

23         Does the FCR have any questions?

24         MS. ORR:  No, I do not.

25         MR. GIANNOTTO:  Okay.  There's no one else

US District Court - Delaware                    FINAL - May 14, 2009
Chapter 11 - W.R. Grace                          Professor James Shein

Page 170

1    on the phone other than the FCR and people

2    representing insurance companies?

3              (No response.)

4         MR. GIANNOTTO:  Okay.  I'll take that as a

5    nobody else.

6         Can we just take two minutes so I can look

7    over my notes, and then we'll come back?

8              (Whereupon a discussion was had

9               off the record.)

10   BY MR. GIANNOTTO:

11      **Q.  This is Mike Giannotto representing**

12   **Continental.**

13        **Dr. Shein, we've talked a lot today about**

14   **your report.  Do you still agree with the**

15   **conclusions and opinions expressed in that report?**

16     A.  Yes.

17        MR. GIANNOTTO:  That's all the questions I

18   have.

19        Does any other insurer have any questions?

20              (No response.)

21        MR. GIANNOTTO:  Anybody else have any

22   questions?

23              (No response.)

24

25

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 171

1           EXAMINATION
2    BY MR. KRAMER:
3       **Q.   This is Matt Kramer.  I have one question,**
4    **Professor, and I apologize if this topic has been**
5    **asked and answered.  If so, you can just tell me**
6    **that, and I'll be happy to read the transcript.**
7         **If you believe that the TAC was biased in**
8    **any way in favor of the personal injury claimants**
9    **who are making claims against the Trust, and,**
10   **nevertheless, an insurance company would have the**
11   **right to dispute any claim approved by the TAC in**
12   **separate coverage litigation, would there still be**
13   **an issue as to the bias of the TAC if the**
14   **insurance carrier ultimately had the right to**
15   **contest any approved-of claim?**
16      A.  I still don't like it.
17      **Q.  And why not?**
18      A.  Again, why start with incentives for
19   misbehaving?  Just the fact that we are police
20   doesn't mean that, okay, then robbers can go rob.
21   I'm not saying these people are going to be
22   robbing anything.  Let me clarify.
23        But, again, just -- never mind.  I said my
24   piece.
25        MR. KRAMER:  Thank you.

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace               Professor James Shein

Page 172

1         MR. GIANNOTTO:  Anybody else?

2              (No response.)

3         MR. GIANNOTTO:  We would like to read it

4    and sign it.  Thank you.

5         Thank you very much.  Thanks everybody on

6    the phone.

7         THE REPORTER:  Before anybody hangs up, if

8    anybody needs a copy besides Mr. Kramer, can you

9    just let me know?

10             (No response.)

11        THE REPORTER:  Thank you.

12             (Whereupon, the deposition was

13              concluded at 3:53 p.m.)

14             (The exhibits were retained by the

15              court reporter.)

16

17

18

19

20

21

22

23

24

25

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 173

1              C E R T I F I C A T E

2     STATE OF ILLINOIS

3     COUNTY OF COOK

4              I, Cynthia J. Conforti, a Federal

5     Certified Realtime Reporter and Notary Public

6     within and for the State of Illinois, do hereby

7     certify:

8              That JAMES B. SHEIN, the witness whose

9     deposition is hereinbefore set forth, was duly

10    sworn by me and that such deposition is a true

11    record of the testimony given by the witness.

12             I further certify that I am not related

13    to any of the parties to this action by blood or

14    marriage, and that I am in no way interested in

15    the outcome of this matter.

16             IN WITNESS WHEREOF, I have hereunto set

17    my hand this 19th day of May, 2009,

18

19

20

21             _____

22

23

24

25

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace               Professor James Shein

---

Page 174

1           ACKNOWLEDGEMENT OF JAMES B. SHEIN

2                I, JAMES B. SHEIN,

3    do hereby certify that I have read the foregoing

4    pages and that the same is a correct transcription

5    of the answers given by me to the questions

6    therein propounded, except for the corrections or

7    changes in form or substance, if any, noted in the

8    attached Errata Sheet.

9

10   _____

11

12   Signed this_____day of_____, 2009.

13

14                ---

15           E R R A T A

16                ---

17   PAGE    LINE    CHANGE     REASON THEREFOR

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____

---

US District Court - Delaware          FINAL - May 14, 2009
Chapter 11 - W.R. Grace              Professor James Shein

Page 175

```
 1              ---
 2           ERRATA
 3              ---
 4    PAGE   LINE   CHANGE     REASON THEREFOR
 5    _____
 6    _____
 7    _____
 8    _____
 9    _____
10    _____
11    _____
12    _____
13    _____
14    _____
15    _____
16    _____
17    _____
18    _____
19    _____
20    _____
21    _____
22    _____
23    _____
24    _____
25    _____
```

US District Court - Delaware                FINAL - May 14, 2009
Chapter 11 - W.R. Grace                     Professor James Shein

Page 176

1               NOTICE TO READ AND SIGN
2
3        A copy of this deposition transcript is being
4    provided to counsel for the witness by JANE ROSE
5    REPORTING for signature.
6
7
8
9
10
11    _____
12            JANE ROSE REPORTING
13              74 5th Avenue
14          New York, New York,  10011
15            1-800-325-3341
16
17
18
19
20
21
22
23
24
25

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein

Page 177

1           INDEX OF EXHIBITS
2
3
4    DEPOSITION EXHIBITS
5    NUMBER/DESCRIPTION                IDENTIFIED
6
7        SHEIN EXHIBIT 1.........................11
8    Expert Report of James B. Shein
9    (9 pages)
10
11       SHEIN EXHIBIT 2.........................11
12   Exhibit Book To First Amended
13   Joint Plan of Reorganization and
14   Disclosure Statement as of
15   February 27, 2009
16   with attached Exhibit 1 through 33
17
18
19
20
21
22
23
24
25

Case 01-01139-AMC    Doc 22809-5    Filed 08/14/09    Page 179 of 195

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein
Page 178

**A**

**ability** 54:22 103:14
161:21
**able** 17:16 23:16 24:20
28:9 33:8 49:17,18
49:20 70:17
**absent** 25:21 112:18
**absolute** 27:14,25
**absolutely** 12:15
31:17 50:5 129:22
129:23,23 151:13
**ACC** 140:4
**accede** 61:20 62:5
76:10
**accept** 57:8 58:7 59:16
59:20 64:19
**acceptable** 45:3
**accepted** 95:7
**accepting** 59:22 93:24
**accomplish** 53:10
54:25 70:13
**account** 63:19
**accurate** 12:23
**ACKNOWLEDGEM...**
174:1
**act** 36:10 54:22 55:6
55:10 66:15 67:7
70:25 71:6,23 92:1,6
120:23 121:20,21
125:25 128:12
133:17
**acting** 54:13 91:16
92:13 123:16,17
125:1,19 135:8
**action** 25:16,22 28:19
55:20 58:6 63:16,19
78:9 133:16 173:13
**actions** 26:20 28:25
64:18 70:13 73:7
93:17,19
**active** 104:6
**activities** 91:17 92:2
104:1
**acts** 126:12,13 129:14
138:5
**actual** 143:3
**add** 136:16
**addition** 125:8 149:1
159:13
**additional** 46:3 108:25
**address** 117:8 119:23
**addressed** 131:17
**addresses** 133:21
**addressing** 114:13
**adjunct** 147:1
**administer** 52:3
**Administered** 1:11
**administration** 23:18
24:21 121:25

**admit** 107:8 113:22
**admits** 110:22
**admittedly** 78:16
**adopted** 104:25
115:21,23 116:16,21
**adverse** 107:19,25
108:5,12,17 109:8
109:13,23 110:3,11
110:21 111:2,17
112:9
**adversity** 108:22
111:13
**advice** 78:24 98:21,24
**advise** 14:22
**advisers** 104:11
**advising** 15:16 143:14
**Advisory** 23:7 121:9
125:2
**affairs** 109:23
**affect** 45:23 46:14
58:25 77:23 88:12
88:17 116:3 124:9
150:21,25
**afraid** 136:23
**age** 12:17 145:25
**agents** 92:1
**ago** 26:15
**agree** 28:22 31:14,15
55:7 57:15 59:6
66:11 67:3 68:15
69:11 71:4 75:13
76:14 77:6 84:2
99:18 112:11 131:9
141:4 151:4 152:8
152:16 153:11
154:13 162:20
170:14
**agreed** 17:2 66:14
67:6 86:11 132:6
136:10,10,19
**agreeing** 112:2
**agreement** 21:20,21
22:10,21 23:12 24:2
24:5,7,10 26:3 30:19
31:5 33:11 34:21
36:15,22 37:4 39:3
42:3,19 43:19,24
44:24 45:24 50:9
55:16,24 56:7 59:4
59:14 68:10 69:5
71:10 74:24 75:25
76:3 83:22 84:23
85:5,22 88:8 90:3
104:18 128:16
129:10,11 130:23
131:1 132:14,21,25
136:1 139:2 140:18
141:17 145:2 148:12
**agreements** 29:20

31:13 139:16
**agrees** 116:1
**ahead** 38:16 123:8
150:16 159:23
160:11
**aimed** 54:17
**al** 1:7 11:14
**ALAN** 5:16
**allowed** 104:12 111:22
154:12 159:18
161:18
**allows** 59:15
**ALLSTATE** 6:14
**amend** 88:22
**Amended** 22:3 177:12
**amending** 23:18 44:8
**amendment** 44:11
45:24 47:3 49:10
**AMERICA** 7:4
**amount** 78:14 80:2
109:18 117:4 119:17
144:22
**amounts** 42:15 45:5
45:13 100:4 157:5
**analysis** 72:24 79:13
141:1
**and/or** 81:18
**answer** 19:11 20:22
29:23 33:2 38:1
40:16 41:22 49:23
58:10 59:13 66:21
67:15 70:5 75:8,21
75:22 86:20 103:14
103:21 110:16
117:13 119:5 150:17
151:21 152:15,17
153:25 156:1 164:18
167:20 168:8
**answered** 70:4 171:5
**answering** 153:1
**answers** 174:5
**answer's** 31:21 118:10
**anybody** 56:14 61:2
80:12 90:24 92:16
136:18 170:21 172:1
172:7,8
**anybody's** 151:2
**anyone's** 128:24
**anyplace** 105:13
**anyway** 112:13 127:12
**apart** 58:1 59:11 77:13
108:20 119:15 139:9
**apologize** 106:20
121:14 171:4
**APPEARANCES** 2:1
3:1 4:1 5:1 6:1 7:1
8:1 9:1
**appears** 48:17
**appendix** 19:25 32:12

**applicable** 45:17 90:5
90:8 100:24
**applies** 47:22 48:3
123:23 127:25
**apply** 47:14 87:2 93:7
107:15 141:11 163:2
**applying** 110:1
**appointed** 75:15
**appointment** 66:11,14
67:4,7
**appropriate** 12:25
77:16 100:4 103:25
115:20
**appropriately** 103:5
**approval** 68:5,25
**approve** 73:6
**approved** 43:15 67:19
75:4,4,5 104:24
139:17 171:11
**approved-of** 171:15
**approving** 58:12
**arbitration** 46:6
**area** 137:19
**areas** 18:22 61:6 85:12
87:23 133:24
**arguing** 50:4
**arguments** 135:2
**arich@arichlaw.com**
5:23
**arises** 42:17 51:20
**arising** 120:24 121:22
**Armstrong** 159:12
**arose** 18:12
**arrangement** 166:24
**arrived** 17:23 111:1
**Article** 119:22
**asbestos** 4:14 21:20
21:21 22:10 23:6,13
29:15,20 31:16
32:23 87:11,14 91:6
91:10,22 94:11
95:13 96:1 97:6,19
98:3,24 99:2 105:3
105:10,20,21 112:17
113:7 116:16 117:12
117:15 118:17 123:6
139:3,21 141:21
142:23 154:23
158:10,14,18,22,25
159:3,8,11,14,20
164:7,11
**ascertain** 118:15
**ascribe** 142:17
**aside** 41:8 56:20 57:2
57:25 96:6,14
**asked** 20:19 32:19
70:3 93:10 98:16
105:23 106:19
109:15 112:22 118:1

119:7 126:10 147:8
148:16 150:20 152:9
153:17 164:6 167:21
171:5
**asking** 11:21 22:22
55:5,12 58:1 74:1
84:4 86:15 92:21
94:24 106:16 108:11
108:12 149:20
150:15 153:2 154:7
159:6 166:6,8
168:11 169:5
**aspect** 15:7,7
**aspects** 14:19
**assert** 73:22 93:3
117:9 140:10
**asserted** 129:9
**asserting** 34:1 49:19
91:1
**assertion** 110:13
**asserts** 101:13
**association** 90:12,21
90:25
**assume** 28:16 35:19
39:17,19 43:22 44:4
56:4 62:15 63:4
82:19 84:14,16,25
95:5 111:21 112:22
117:13,21 118:2
119:7 125:21 130:14
134:25 141:19 153:8
164:23 166:8 167:4
167:20,21,24 168:11
169:5,7,8
**assumed** 37:22
116:11
**assumes** 99:21 119:3
**assuming** 51:11 67:21
117:22 119:15 135:2
142:14 165:24
**assumption** 35:23
48:24 112:7 113:24
167:20 168:14,16
**attached** 12:20 32:12
174:8 177:16
**attack** 102:15 136:16
**attempt** 161:5
**attempted** 25:8 60:17
**attempting** 22:24
**attention** 25:25 60:7
71:9 109:3
**attorney** 109:7 110:10
110:20
**attorneys** 90:6 91:15
91:25 139:3
**attractive** 62:13,15
67:22
**attribute** 142:12
**attributing** 151:1

Case 01-01139-AMC    Doc 22809-5    Filed 08/14/09    Page 180 of 195

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein
Page 179

**auditing** 46:5
**available** 42:15 117:5
**Avenue** 5:7 6:6 8:7
  9:20 176:13
**average** 45:25
**avoid** 72:14
**aware** 29:12 31:11
  42:23 79:16,20,22
  81:13 88:7 90:24
  91:3,9,13,24 92:4
  98:4 99:21 100:16
  109:25 130:6 141:15
  141:20 142:1 144:17
  164:18,21,25 165:6
**AXELROD** 2:6

---
**B**

**B** 1:16 5:16 10:7 11:4
  26:11 32:13 33:5
  173:8 174:1,2 177:8
**back** 15:25 19:20
  20:24 21:15,16 23:5
  23:23 27:6 38:16
  48:6 53:16 55:14,15
  65:16 71:3 72:25
  79:2 97:12 98:16
  99:4 100:14 101:21
  106:21 120:16
  121:16 125:22
  129:20 136:5 137:17
  145:24 169:2 170:7
**background** 12:11
  30:2
**bad** 65:1,1,18,19 66:3
  86:12 122:25 123:3
  133:7 151:1,2
**BAENA** 2:6
**bankruptcy** 1:1 11:14
  17:24 29:15,21
  32:10,15,17 43:15
  44:1 68:5,25 74:23
  87:10 91:7,11 92:4
  93:8 104:24 105:4,9
  112:18 130:7,12
  131:14,20,22 139:17
**bar** 90:12,21,25
  122:13 161:5,22
**barred** 150:6 160:17
  160:20
**Barring** 161:24
**BARTLETT** 8:4
**base** 169:6
**based** 30:9 32:10
  57:16 101:10 121:20
  129:13 136:12
  138:10,11 143:4
**basically** 18:11 24:8
  24:12 31:8 33:23
  83:23 107:3 120:21

**basis** 13:1 24:16,24
  48:24 50:1 84:13
  103:3 131:17 135:16
  168:19
**battle** 144:8,10,13
**BEACON** 7:4
**bear** 98:15
**beeps** 115:9
**beginning** 24:17
**behalf** 2:4 3:3,15 4:4
  4:14 5:4,14 6:3,14
  7:4 8:3,14 9:4 91:16
  92:1,13 122:15
  125:11,19
**behave** 144:12
**behaving** 127:24
**behavior** 20:5 30:10
  83:14 124:21 127:9
  127:16 150:3,22
  151:1 156:15,24
  157:4,7
**behavioral** 127:13
  149:17
**beholden** 62:9,12
  68:12 69:7 166:18
**beings** 84:14
**belief** 30:4 108:20
**believe** 23:5 26:9,18
  32:7 33:7 34:10,15
  40:17 41:16 42:5
  44:9 45:4 51:1 56:8
  64:9 69:23 74:25
  75:14 76:6 77:17
  78:24 82:9 84:20
  92:8 108:19 118:25
  120:15 127:12
  128:13 129:8 131:18
  139:7 162:15 163:5
  163:14 165:19
  166:24 168:25
  169:13 171:7
**belong** 54:5
**beneficiaries** 36:11
  38:24 39:24 41:1,10
  50:19 62:24 63:1,2,3
  63:12,20 64:2 66:16
  67:9 68:17 69:12
  70:1 76:12 143:5
**beneficiary** 62:21
**benefit** 48:10 50:23
  54:6 73:7 77:20
**benefitting** 63:25
**best** 104:9 135:4 154:2
**better** 88:24 95:12
  96:11 137:5 145:10
**beyond** 40:2 107:12
**bias** 171:13
**biased** 171:7
**BIDDLE** 7:5,8

**big** 77:5 122:4 163:19
**BILZIN** 2:6
**bind** 68:10 69:6
**binding** 44:2 46:6
  140:23
**Biscayne** 2:9
**bit** 55:15 96:5 139:10
**black** 78:17 85:14
**black-and-white** 80:19
**blessing** 62:8 126:20
**blood** 173:13
**blurs** 124:2
**board** 87:19,19
**boards** 81:18
**body** 25:8 162:20,23
**bondholders** 18:3,14
**bone** 72:18,23
**book** 22:3,10,11 33:12
  177:12
**bottom** 53:13 128:13
**Boulevard** 2:9
**bounds** 132:9 137:11
**boxes** 58:21
**boy** 145:24
**breach** 58:20 120:3,8
  122:24 130:3,13,17
  131:19,24 133:7,25
  134:12
**breaches** 133:22
**break** 59:25 60:1
  89:12,13 91:20 96:5
  138:18,21
**brief** 65:6
**bring** 98:15
**broad** 15:21 88:15,17
**broken** 86:10
**built** 49:21
**bullet** 16:1 47:6 56:6
  61:5,25 66:6,24 68:1
  68:21 69:18 70:15
  71:8 72:6 74:15 76:5
  130:23
**bumped** 86:18
**BURK** 6:15
**business** 14:8,12,17
  14:19,21 15:5,5,6,16
  21:10,12 96:10,11
  96:24 107:7,20
  126:24 127:23 128:3
  128:6,8 137:20,25
  138:15 145:23
  146:14 149:17
  156:17,21
**businessmen** 14:22
**B(2)** 26:17

---
**C**

**C** 173:1,1
**California** 16:9

**call** 58:2 59:11
**called** 11:5 23:3 45:18
  79:18,19 81:15
  148:5
**calls** 78:18
**cancer** 35:7
**candidate** 75:4,5,6
**capable** 96:19
**capacities** 123:24
**capacity** 15:14 17:17
  17:20 38:8 53:25
  123:17,18 125:1
  126:1 138:6
**Caplin** 1:20 4:15
**caption** 20:25
**captioned** 22:3
**care** 54:16
**career** 17:15
**carried** 102:25
**carrier** 171:14
**carriers** 16:24 112:24
  113:7 161:9
**carry** 27:12
**case** 1:10 1:14,14
  13:2 16:9,16,20 17:1
  18:8 31:4 54:15 73:4
  73:15 74:22 91:22
  92:10 94:15 96:8
  97:2 98:14 99:3,24
  100:17 107:16
  108:23 109:2,10,17
  111:15,19 121:2
  132:15 133:16
  135:17 146:11 148:1
  148:4,19,22,24
  149:2 155:23 158:2
  158:12,13 160:15
  161:6,7,13,16 162:3
  162:4,16 163:2
  164:16,20
**cases** 31:16 93:8 96:1
  105:4 111:14 120:24
  121:22 139:16
  162:13 164:23
**CASUALTY** 5:4 6:3
  8:14
**categories** 38:17
  39:23 83:20 88:15
  100:14
**category** 48:14,16
  78:12 85:13,13,16
  85:18,21 86:5,7,18
  86:19 88:17 99:12
**cause** 56:25 60:20
  62:4 64:16,19 68:3
  68:15,23 69:10
  82:25 83:6,7 117:10
  156:6
**causes** 73:3

**cell** 65:10
**Center** 3:19 6:18
**Century** 6:20
**CEO** 17:20
**certain** 32:2 48:7
  58:19 86:9 93:25
  125:3 127:24 128:12
  130:14 150:6
**certainly** 11:20 56:11
  57:19 60:16 70:21
  88:12 107:7 117:19
  122:17 124:24
  138:19
**Certified** 173:5
**certify** 173:7,12 174:3
**cetera** 121:25
**chain** 104:13 113:23
**challenge** 28:25 29:9
**challenging** 161:17,21
**chance** 144:11
**change** 44:7 47:7,13
  48:8,10 53:4 56:5,9
  57:8 58:13 59:16
  61:13 63:17 70:21
  75:23 76:13 77:10
  167:16 174:17 175:4
**changed** 47:3,12,22
**changes** 49:4 55:25
  56:22 57:15 64:18
  66:3 73:7 77:19
  102:9 124:20 174:7
**changing** 45:24 46:7
  46:13,13 47:5 78:10
  80:10
**channel** 118:19
**channeled** 118:18
**Chapter** 1:4 121:22
**characterize** 97:25
**Chartered** 1:20
**check** 107:4,8
**checked** 107:8,9
**check-writing** 53:24
**CHERIN** 6:4
**Chicago** 1:18 4:8
  13:24 15:12
**chief** 81:19
**choice** 32:2 143:25
**choose** 95:22
**Cindy** 9:19
**Circle** 4:17
**circumstances** 105:15
  109:11,14 110:12
  125:3 141:5 166:12
  167:8
**cite** 130:23 149:4
**claim** 46:7,10 78:11
  84:4 85:8,8,17,21
  88:3,10 98:8 101:12
  102:2 106:11 113:3

Case 01-01139-AMC   Doc 22809-5   Filed 08/14/09   Page 181 of 195

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein
Page 180

121:6,18 122:8,13
122:14,23 123:6,11
123:19,25 125:18,20
125:24 145:2 167:1
167:25 171:11,15
**claimant** 46:8 85:17
99:7 134:23
**claimants** 2:5 3:15
4:14 5:15 23:14,20
32:2 33:21,25 34:4,9
35:1,22 36:1,12,14
36:18,23,24,25 37:6
37:7,8,14,19,20,21
39:3,8 40:2 41:3,5
45:7 46:3 48:4,4
51:14 52:23 68:18
69:13 73:8 77:8,24
78:7,10,12 83:1,19
87:3 91:6,10,23,25
94:11 95:10 96:21
97:2,6,11 103:24
105:4 107:25 108:5
112:16 113:16,21
116:23 122:9 135:21
136:22 139:21 140:7
141:22 142:15
143:12,17 151:6,18
152:1,22 153:3
171:8
**claimant's** 123:25
139:3
**claims** 23:19 33:25
35:1,8,12,14,24,25
36:1,6 41:12 42:2,10
42:12,15,20 44:13
44:24 45:2,18 48:14
48:16 50:14 51:21
52:4 53:9,9 73:16,19
73:22 78:2,23 79:1,8
79:17 81:4,15,16,25
82:4,22 83:2,21,25
84:1,1,22 85:18
86:18,20 87:7,17,20
88:14,15,17,20,23
88:25 91:22 96:22
97:7 99:8,19 100:3
101:6 102:13,25
103:6,24 104:2,8,21
105:8 106:7 108:15
112:19,20,24,25
113:8,11,13,23
114:4,13,15,25
115:18,21 116:17
117:2,6,11,14 118:3
118:4,6,16,16,25
119:20 125:10,11,14
126:14,25 128:21
129:15 134:3 140:14
150:5 155:1,5

165:21 166:10 167:5
171:9
**claims-handling** 77:6
**clarify** 166:16 171:22
**class** 141:20
**clause** 132:12
**clauses** 58:16 135:5
**cleanest** 94:13
**clear** 12:10 27:17 33:3
36:16 50:5 71:16
78:12,13
**clearly** 85:25
**client** 70:10 82:21
107:19,20 109:12,19
112:9 121:18,19
122:15 125:13,19
126:6,20 135:20
167:1,25
**clients** 23:21 41:11
46:9 48:10 49:12
50:13,14,18,24 51:5
51:21,21 52:2,4,21
52:22,23 54:23
58:19 64:1 66:18
67:11 74:8 76:11
77:7,21 78:2 80:11
80:12 82:14,18,21
83:18 86:5 88:25
98:7,14 99:15
107:24 108:4,8,14
108:16 109:8 110:11
110:21 111:3 113:12
117:6 120:5,9
125:11 128:19
129:14 134:4,11,12
137:5,6 140:14
142:6 143:14,16
165:21 166:10 167:5
168:19
**client's** 53:9
**closed** 14:13,14 16:4
20:7 21:1 27:23 32:4
36:13,15 74:22
84:23 130:18 138:20
**closest** 87:18
**code** 111:7 138:7
**collected** 156:23
**collective** 93:6 94:2
97:10 102:23 103:25
135:21
**colloquy** 27:9 49:24
**colon** 25:18
**Columbia** 3:19
**combination** 136:14
**combined** 135:10
**come** 20:19 25:3 40:20
43:1 71:2 89:5 96:3
107:21 119:17
125:22 147:6 170:7

**comes** 43:23 78:11,14
85:17
**coming** 78:17 85:24
107:10 113:13
142:15
**committed** 122:25
129:14 133:7
**committee** 2:4 3:4,15
4:14 23:7 91:7,10,14
91:16,22 92:2,5,7,11
93:7 97:20 105:13
105:21 106:4,13
121:7,8,10,12 125:2
126:19 139:22,24
**committees** 92:18
105:4,5,11,23,24
106:2,6
**communicated** 84:9
84:10
**community** 52:23
**comp** 57:22 70:22
**companies** 20:6,20,21
112:16 117:12,15
160:21,22 170:2
**company** 5:4 7:5,6,7
8:14 11:14 17:21,23
17:25 18:12 53:24
54:1 87:20 169:21
171:10
**comparable** 103:9
**compare** 91:4
**compared** 35:7 82:14
83:17 125:9 139:24
**compel** 31:14 49:9
55:25 56:8 57:15
58:6 85:20
**compelled** 57:8
**compensable** 100:3
101:13
**compensated** 76:7
**compensation** 29:7
56:23 57:13 61:14
75:24 77:10,15
**competing** 51:13
**complaint** 90:25
**complete** 30:16
**completely** 57:20
168:12
**complied** 167:12
**complies** 167:25
**comply** 46:11 68:6,9
69:1,4 81:6 168:18
**comprised** 105:21
106:6
**comprising** 141:21
**concept** 63:22
**concepts** 14:13,18,21
14:23
**concern** 115:16

**concerning** 116:14
**conclude** 83:16
**concluded** 110:9
172:13
**conclusion** 24:24 25:4
124:20
**conclusions** 25:7
93:16,18 141:11
170:15
**conduct** 20:15 84:9
106:24 107:2,15
108:25 111:9 131:17
134:21 135:7,13,24
136:2 138:10 143:4
**confidential** 15:21
**confirmation** 121:23
**confirmed** 144:18
**confirming** 144:21
**conflict** 19:8,10 40:23
41:9,13,14,19 42:6,9
42:17 52:12,15,16
52:21 53:14 54:10
55:8,11 63:22 74:2,6
91:2 92:10 95:17
96:18 97:9 99:5
104:14 105:11
110:13 135:8 140:16
143:2,3 166:25
**conflicting** 41:4 73:21
**conflicts** 18:11 52:1
69:25 70:2 72:19
73:2,11,25 92:19
93:4,25 94:9,22
95:10 97:23 104:16
105:16 137:19
142:10 144:3 163:25
165:25
**conflicts-of-interest**
93:3 110:1
**conflict-of-interest**
90:5,8,15 92:20
105:17 108:18
133:20 135:17
143:20
**conflict-ridden** 145:1
**conformity** 81:17
**Conforti** 9:19 173:4
**confused** 162:10
**conjunction** 129:10
**connection** 2:8 3:7,18
6:17 7:10 8:6,18
26:7 91:18 120:23
121:21
**consent** 23:12 24:10
25:16,20,21 26:12
26:15,20,23 27:4,11
27:15,16,18,22 28:1
28:4,19,25 31:3
45:23 55:21 57:4

59:18 61:13 68:6
69:1,20 70:14 76:23
78:25 98:22,24
130:4 132:5
**consent's** 25:23
**considerable** 110:2
**considerably** 34:10
**consideration** 93:17
**considered** 23:22 88:3
93:13 110:25 148:12
**consistent** 39:13
**consisting** 49:7
**conspires** 85:19
**conspiring** 84:21
**constantly** 101:4
**constituency** 93:6
105:7
**constitute** 133:17
**consult** 47:11 71:18
74:17,18
**consultation** 23:13
24:11 26:11 57:4
59:18 68:6 69:2
**consultation-for-va...**
69:21
**consulting** 20:20
**consummation**
121:24
**contained** 22:8 28:2
40:21 55:18
**Contains** 133:14
**contend** 120:7
**contest** 171:15
**context** 39:19 91:5
104:18
**contexts** 93:25
**Continental** 5:4 8:14
170:12
**contingency** 110:4
111:10,22 112:8
**contingent** 109:11
110:12 111:23 114:5
**contingent-fee** 111:1
**continue** 107:4
**Continued** 3:1 4:1 6:1
7:1 8:1 9:1
**contract** 127:5
**contractual** 117:11,14
**contribute** 67:24
**contribution** 112:19
**control** 23:17 24:21
40:7,11,13 54:4 57:6
60:10,15 61:8 89:6
169:6,7,9,14
**convenience** 22:6
**conversation** 84:6
**COOK** 173:3
**copied** 139:15
**copies** 148:16

Case 01-01139-AMC    Doc 22809-5    Filed 08/14/09    Page 182 of 195

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein
Page 181

copy 1:24 120:11
  172:8 176:3
corporate 6:18 16:3
  38:5,14 39:13 138:4
  162:21
corporation 14:25
  18:4 137:17
corporations 137:21
  137:24,25
correct 13:10,11,17,18
  13:21,24,25 14:2,6,9
  14:10 15:12,13 23:7
  26:12 33:6 35:10
  36:18,25 38:11,22
  38:23,25 39:1,4,5,8
  39:9 42:4,22 43:12
  43:13,17,21,22
  46:24 47:8,10,18,19
  47:23,25 48:5 50:10
  51:6,10,12,16,17,23
  55:1,2,21 61:23
  63:13 64:11,20,24
  65:5 66:4 69:22 72:9
  72:10 73:23 74:19
  75:6,19 76:12,24
  77:22 79:10,11,13
  79:15 80:2,21 82:11
  82:15 88:4 99:19
  104:22 105:2 110:23
  111:4 116:18,25
  117:7,25 119:21
  129:16 131:10
  132:16 133:8,23
  137:21 140:5,9,24
  141:14 147:1,18
  151:6 154:25 155:3
  156:10,11,14 157:10
  157:11,13 158:23
  164:8,9,12 166:1
  174:4
corrected 51:8
corrections 174:6
correctly 31:7
cost-of-living 76:8
counsel 15:11,14 32:3
  32:23 41:11 146:9
  176:4
country 90:6,9
COUNTY 173:3
couple 22:7 43:7
  165:14
coupled 86:12 124:19
course 12:8 15:1
  17:24 57:20 129:15
courses 13:14,19
  14:11,16,17 20:4,8,9
  20:11
court 1:1 9:19 16:4,10
  17:2,8,11,14,25

43:16 66:2,2 68:5
69:1 74:24 90:12,19
100:19 130:7,12
131:21,22 141:4
144:7,10,13 149:10
149:12,13,16 153:12
154:3,7,17 159:18
160:18,23,25 161:12
163:2 172:15
courts 98:5 104:25
139:17
court's 131:14 153:21
154:14,19
coverage 171:12
covered 114:15,17
COZEN 9:5
crater 144:15
create 32:3 36:22 40:3
90:3 111:2
created 37:24 48:21
50:8,23 53:7 98:18
107:1 110:4 127:20
creates 50:15 52:11
88:8 111:12
creating 46:7
creation 14:14 15:3
creditor 92:6 106:3
141:21
creditors 3:3 91:10
92:11,13 93:7
105:13,21,24 106:2
106:6,12 141:18
crib 12:18
criteria 46:1,2 79:24
80:1,10 81:7 103:7
155:5
critique 165:2
crux 166:23
crystal 78:11,13
cumulative 56:17
current 18:1
curriculum 12:21
13:12
curry 57:1 61:15 68:13
69:8
currying 59:8 72:13
curtain 169:11
curve 96:7,14
customer 17:21
cut 127:10
cuts 124:3 135:11
CUYLER 6:15
CV 20:17
Cynthia 173:4

_____

D

Dallas 5:20
DAMAGE 2:5 5:14
danger 114:1

DANIEL 3:6
data 156:23
date 145:21 146:4
day 165:16 173:17
174:12
DC 4:19 6:8
de 119:18
deal 19:6 20:20 93:21
93:23 94:7,9
dealing 26:14 77:11
97:6 104:1 116:16
deals 26:10,12
dealt 18:11 126:12,13
debate 110:2 127:11
127:14
debated 87:23 110:6
debtor 4:4 99:22
100:18 106:8 145:14
151:6 153:2
debtors 1:8 151:18
152:22
debtor's 152:1
decades 159:1
decide 143:6,17
decider 88:6,9
deciding 99:18
decision 80:18 86:3
106:15
decisions 23:11 24:4
88:12,14,15,16
Deemed 16:3
defend 128:5
deficiencies 84:2
define 21:20,23 23:6
50:11
defined 117:19,23
definition 23:9 28:5
47:6 73:5 85:7
definitions 45:2
degree 124:7 145:22
145:23 146:4,5,14
147:19
degrees 145:21
Delaware 1:2 7:12
106:23 107:2,9,11
107:14,17 137:11,15
137:16 138:1,3
163:3
demographics 36:3,5
deny 27:14
depend 62:12
dependent 54:24
depends 52:13 53:21
73:10
deposed 11:23 17:24
deposition 1:15 65:7
65:11 172:12 173:9
173:10 176:3 177:4
describe 14:15 18:21

30:14
described 15:17 41:15
44:15 80:17 81:6
88:11 121:20
describing 51:25
description 17:17
31:10
descriptive 24:6
descriptor 167:11
design 164:7,11
designated 91:14,25
designed 30:13
105:25
desirable 66:10 67:2
desire 61:22
despite 132:2
detail 46:21
details 82:6 113:23
determinations
154:14
determine 35:12 53:13
55:8,10 81:17
100:23
determined 116:23
determining 44:13
46:1,8 100:13
101:21 103:4,23
104:8
developed 115:1
developing 46:2,4
devices 46:4
devoted 15:6
difference 117:5 150:2
different 20:16 45:6
48:15 65:4 72:18,23
79:17 80:12 84:1,3
85:16 89:5 95:3
99:16 123:21 125:15
125:24 126:2,11
153:1
differential 48:13,25
differentially 77:21
differently 142:5
difficult 146:19
difficulty 118:13
dilute 42:14 78:6
diluted 115:20
diluting 78:4
dipped 51:24
direct 25:24 60:7 71:9
108:21 120:6
direction 142:8
directly 58:25 88:2
107:19,25 108:4,11
108:17
directors 20:6 81:18
138:5,6
disability 87:20
disabled 87:25

disabling 92:18
disagree 55:7 105:14
136:25 149:13
151:25 152:9
disagreed 150:5,10,19
disagreement 149:25
151:15
disagreements 149:22
disclosing 46:10
Disclosure 22:4
177:14
discretion 27:14,25
discriminatorily 63:25
discriminatory 64:18
discuss 114:10 142:9
discussed 20:10
58:23 76:5 102:10
141:16 142:22,25
discusses 24:1
discussing 109:25
139:13
discussion 24:23
40:21 72:25 89:16
115:11 170:8
disease 45:25 47:5
56:5 79:24 154:24
diseases 35:6 36:6
dispute 18:3 28:18
31:2 171:11
disputed 106:11
disputes 31:2 106:8
disqualified 106:12
140:16,19,21 141:1
dissertation 157:2,3
distinction 124:22
147:3 161:15
distinguishing 37:17
distributed 122:1,3
distribution 21:22
22:12 45:15 101:1,8
101:23
DISTRICT 1:2
division 37:2 39:10
djharris@stroock.c...
3:12
doctorate 146:22
doctors 98:20
document 22:2 24:11
25:25 26:4,17 29:13
37:18 39:12 40:3
46:17 49:10 52:19
53:6 65:1,2,3,4,18
65:19,21 66:3 80:18
80:24 85:15 86:16
88:22 119:2 120:14
124:13,18 126:16
127:2,5,21 155:13
163:18
documentation 79:25

Case 01-01139-AMC    Doc 22809-5    Filed 08/14/09    Page 183 of 195

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein
Page 182

documents 22:15 25:2
42:25 43:8,21 44:1,8
44:11 48:19 49:6
51:19 54:17,25 56:1
57:9,16 58:4,5 59:16
60:19 61:10,18
63:17 64:4,11 71:3
75:8 76:18 79:2,5
80:16,21,25 81:6
82:12 85:3,9 94:17
117:21 118:8 121:1
121:2,3 126:7
127:20 132:1 141:16
143:14 148:11,14,17
148:23 149:9,9,15
149:19,23 150:1,7
150:11 151:5,19
152:2,21 153:4,8,9
153:10,13,20 154:15
154:18,20 155:9,12
155:23 156:4,10
163:3
doing 32:18,19 61:17
103:8 109:20 132:4
134:24
dollar 117:4
doubt 29:3,4,8 49:15
63:14 77:12 78:11
78:13,17 84:6
DOUGLAS 4:6
douglas.smith@kir...
4:11
Dr 170:13
draft 128:25
drafted 139:2,22
drafting 140:7
draw 93:16
dressing 31:9
drew 93:18
DRINKER 7:5,8
Drive 6:20
drives 166:7
Drysdale 1:20 4:15
due 126:10
duly 11:3,6 173:9
duties 20:4 37:5 39:2
39:7 41:4,9,10 43:20
51:14 58:21 62:19
63:18 66:16 67:8
83:1,8 103:16 107:1
108:10 120:4,8
122:18 134:1 140:17
duty 40:1 42:20 50:23
81:8 130:4,13,17
131:19,25 133:22
134:12
D.C 3:21 5:8

**E**

E 173:1,1 174:15
earlier 20:10 27:9
31:11 48:6 55:18
60:9 82:10 86:11
98:17 100:15 102:10
118:2 119:7 139:11
141:2 142:22,25
earn 51:21
easier 45:20
easily 128:6
ECKERT 6:4
economic 50:15 57:1
58:2 59:1,9 60:13,18
64:23 110:4
EDGAR 6:16
education 12:24 21:1
effect 31:9 49:16,17
49:18 66:1 68:15
69:11 70:8 78:3
119:19 122:13
129:12
effective 28:3 130:2
130:18
effectively 40:6 44:25
70:25 95:4 99:20
113:6,18 118:17
124:20
effort 31:18 91:4
either 22:21 38:14
54:19 85:10 92:23
104:11 112:3 113:13
142:8
either/or 143:8,9
eligible 147:12
eliminate 94:22,22
eliminated 54:19
72:21 94:3,5
ELLIS 4:5
Elm 5:17,18
else's 58:18 86:19
137:6
embedded 43:25
embezzle 53:25
Emery 15:12,20 146:8
empirical 156:22
157:4
employed 90:13 103:1
encompass 24:9 85:8
encompassed 14:25
enforced 48:21
enlist 70:8,16
enter 83:22
entire 35:25 46:17
56:18 78:1 105:6
entirely 54:19
entities 19:4 20:6
entitled 20:25 42:13
80:1 143:6,17
entity 79:7 102:23,23

120:23
entrusted 54:16
entry 14:7
enumerate 56:24
equally 30:15 96:25
Errata 174:8 175:2
Especially 65:22
ESPOSITO 8:15
Esq 2:7 3:6,17 4:6,16
5:6,16 6:5,16 7:9 8:5
8:17 9:6
Esquire 1:19
essentially 13:15
61:14
established 29:16
78:21 82:10 103:7
128:9,11 135:25
establishing 46:5
ESTATE 7:5
et 1:7 11:14 121:25
ethics 137:20
evaluate 100:23 103:8
104:9
evaluated 101:14
evaluating 63:16
102:13,24
evaluation 96:1
event 62:1 131:23
everybody 30:15
38:22 47:15,22
49:13 54:3 62:19,23
78:4 86:7,19 108:9
116:1 137:5 172:5
Everything's 149:11
evidence 78:15 86:22
87:1 143:24
evil 144:9,9 151:22
ewhiting@cuyler.com
6:24
exact 49:15
exactly 33:19 80:17
EXAMINATION 10:5
11:8 145:19 165:17
171:1
examined 11:6
example 35:4 47:5
49:7 99:1 103:18
109:16 140:2 145:5
145:22 150:4
exam-type 146:20
exceeds 137:11
exception 112:3
133:14
exceptions 110:23
excluded 161:12
excludes 133:6
exclusion 135:12
exculpate 128:17
136:1

exculpated 125:23,25
136:13
exculpating 129:12
exculpation 58:16,20
119:23 123:23
124:17 132:12 133:6
135:5 137:9,11
138:4,9
excuse 46:4 62:25
112:24 162:11
execute 43:24
executive 21:1 81:19
exercise 61:8 63:18
64:23
exercises 74:21
exercising 59:18
exert 49:8
exhibit 11:1,2,18
12:20,22 13:5 19:24
21:9,25 22:3,9,9,10
22:11,11,14,14 33:5
33:11,12 45:16,16
71:10,12 76:1,2,2,3
114:19 120:12 177:7
177:11,12,16
exhibits 22:8 172:14
177:1,4
exist 47:14 52:24
81:11,22 93:21
117:18,21,22 118:25
119:3,16 163:25
existed 117:16
existence 114:3
159:15
existing 44:10 91:1
114:8 140:14
exists 92:11 99:22
145:2 159:9
expected 81:25 104:3
expedite 22:25
expedited 45:18 79:18
79:22 80:8,10 81:5,7
100:15 101:8,12,22
102:9,14,24
expense 64:1
experience 12:24 30:3
87:7,16,22 95:13
97:5,20,24 103:9
142:22 143:1,18
158:22
expert 11:15,19 16:3,9
16:12,13,15,25 18:2
18:7,17,18 21:13
22:17 33:5 38:3,5,9
39:18 46:23 50:6
78:17 90:7,10 116:7
118:22 129:9 138:25
141:12 154:23,23
155:1,4,8,22 156:9

156:19 157:10,13,19
158:2,9 159:18
160:2,7 161:11
162:4,14,17,19
163:5 164:11 177:8
expertise 48:19 97:5
98:15 106:25 128:14
explain 62:3 118:12
exploited 19:16
exposure 36:6 46:2
79:24
express 115:16
expressed 24:25 95:8
141:2 170:15
expressing 141:9
extends 40:2
extensively 17:13
extent 23:22 25:5
54:20 62:11 82:20
104:23 105:3

**F**

F 173:1
Facilities 81:15
facility 88:1
fact 16:20 17:21 28:24
30:6 32:20 42:8
43:25 45:1 51:20
72:22 81:13 91:15
92:1 108:13 128:11
131:24 134:10,21
136:16 142:13
158:25 160:25 166:9
169:8 171:19
factors 60:18 141:10
facts 102:3
factual 166:4,7
failing 68:5 69:1
failure 133:17
fair 24:3,17,18 34:3
35:9 40:11,22 42:8
54:20,21 60:11
97:11 119:13 139:14
140:20 148:22 149:8
149:10,21,24 154:20
166:22
faith 122:25 123:3
133:8 169:16
faithful 167:6,11
168:12
fall 78:13 99:11
familiar 11:25 95:25
familiarize 153:6
far 25:10 28:9 79:5
82:13 109:1
fashion 40:10 103:25
fast 95:19 96:4
favor 52:20 53:9 54:23
57:1 59:8 61:15

Case 01-01139-AMC    Doc 22809-5    Filed 08/14/09    Page 184 of 195

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein
Page 183

63:11 66:17 67:9
68:13 69:8 70:10
72:13 73:21 76:11
99:10 142:16 171:8
**favoritism** 55:1 74:8
**Fax** 2:13 3:11,23 4:10
4:21 5:10,22 6:10,23
7:14 8:10,23 9:10
**FCR** 75:5,12 169:23
170:1
**feasible** 54:20
**February** 22:5 177:15
**federal** 9:4 16:4 98:5
173:4
**fee** 109:11 112:8
**feel** 22:19,25 44:21
60:10 62:9,12 66:13
67:5,15,19 75:16,18
**feeling** 103:20 110:6
**fees** 50:13 51:21 110:4
110:12 111:11,22,23
**fellow** 95:23
**felt** 12:25 25:6 67:22
**fiduciaries** 36:11
38:18 39:23 137:13
137:23
**fiduciary** 20:4 36:17
37:5,7 38:21 39:2,7
40:1,25 41:4 50:16
50:23 51:4,13 58:21
62:19 63:18 66:15
66:17 67:8,9 68:16
69:11 77:8 83:1,7
89:4 92:5 103:16
108:10 120:3,8
122:18 130:4,13,17
131:19,19,25 133:22
133:25 140:17 167:6
167:12 168:1,12,18
**field** 18:10 107:10
**Fifth** 9:20
**figure** 118:7 122:11
167:10
**figuring** 118:13
**file** 130:11
**filed** 32:11 46:9 90:25
**filled** 75:11
**fills** 75:2
**final** 1:24 88:6,9
104:15
**finance** 14:23
**find** 42:25 47:10 51:18
55:6 99:13 132:23
148:6
**finding** 164:23,24
**fine** 119:4 158:5
**finished** 138:20
**finite** 36:20 99:12
**firm** 1:20 15:15 104:20

**firms** 20:20 32:12 33:9
33:16,21 34:5,9,19
35:4,8 41:2,5 42:10
49:8,12 52:2 103:19
139:5 140:15
**firm's** 15:22
**first** 11:6 12:11,19
15:9,25 19:3 20:1
22:3,9 25:12 26:19
46:25 47:2 55:17
56:11 58:14 61:13
68:11 69:6 71:8
76:22 83:4 90:2 95:2
100:20 109:5 110:20
118:19 119:25
120:10,14 124:7,23
125:16 130:23
133:15 134:9 136:5
159:3 167:18 168:23
177:12
**fit** 107:11,17 121:2
**five** 115:9
**Five-minute** 138:21
**flag** 134:17,20 136:20
137:7
**flat** 110:19
**Floor** 6:7,19 8:20
**Florida** 2:11
**flowed** 19:5,7
**focus** 56:3 96:18
135:15
**folks** 22:2 80:24 84:16
89:20 96:15
**follow** 79:12
**follows** 11:7
**force** 66:2 83:24
**FORD** 8:15
**foregoing** 174:3
**forever** 87:24
**forget** 126:15
**form** 24:24 26:22
29:22 37:25 40:15
41:21 43:3 44:2
46:14 47:16,24 54:8
57:6,14 60:22 61:8
81:20 87:6 90:17
124:9 151:9 168:4
174:7
**formed** 47:2
**forms** 46:8 86:24 87:2
87:4,8 137:23
**formulaic** 101:22
**forth** 31:4 33:22 34:20
37:3 82:22 118:22
173:9
**foul** 136:9
**found** 164:15
**foundation** 148:8
151:9

**four** 6:20 17:10,14
33:9,15 34:5,9,19
49:7,12 82:11 83:19
142:2
**fourth** 16:1 80:2
**framework** 48:20
**free** 22:19,25 44:21
124:4 126:18
**front** 21:16 22:19
34:16
**fulfilling** 100:2
**full** 147:5,7,20,22
**function** 94:14 104:10
**fundamental** 41:19
50:12
**funds** 54:4,6 117:5
137:23
**further** 22:20 145:11
173:12
**future** 3:15 5:14 36:12
36:18,23,25 37:5,6
37:19,21 39:7 40:2
48:22 77:8,23 140:7
**futures** 23:14,14 25:15
27:3 37:11 38:19
39:6,11 42:24 44:6
49:9 68:4,24 69:19
69:24 70:9,16,24
71:4,17,20 72:9,16
72:17,22 73:5,13,14
73:18,20 74:19
75:17 76:24 77:1,7
77:14,17,18 78:5
94:19,21 95:1

───────────────

**G**

**G** 4:6 6:5
**Gee** 138:16
**GEICO** 7:6
**general** 17:16 24:16
24:22 31:25 34:3
59:17 81:14 105:24
107:12 110:13 112:4
112:5 137:16
**generalize** 21:7
**generally** 14:16 18:20
25:8 29:13 32:14
35:18 60:9 112:11
**generically** 47:14
**gentleman** 165:5
167:15
**genuine** 52:12
**getting** 38:16 48:6
109:20 111:10 135:1
137:4 138:19 147:20
167:19
**Giannotto** 5:6 19:20
26:22 29:22 30:21
30:23 32:20 37:25

40:15 41:20 43:3
47:16,24 50:21 51:7
54:8 59:24 60:22
62:23 63:1,5 66:19
70:3 71:11 81:20
89:10,13 90:17
92:21 102:15 110:14
114:21 115:3,6
116:5 118:21 119:10
128:23 129:20
130:25 132:24
133:11 139:7,9
145:13 146:1 148:5
148:7,16 150:14
151:10,23 152:3,5
152:17 153:23
155:10,17,24 157:14
157:21 158:1,7
159:21 160:4,10,19
162:5 163:8,17
165:8,12 169:20,25
170:4,10,11,17,21
172:1,3
**give** 17:16 52:20 57:18
58:5 59:4 77:5 82:3
119:11 126:4,18
133:12 152:18
159:18
**given** 28:7 35:21 42:8
47:1 83:6 85:23
99:12 100:10 125:16
126:7 131:14 149:14
152:21 169:16
173:11 174:5
**gives** 57:6,14
**giving** 27:25 126:9
146:10 150:16
**GLESER** 8:15
**globally** 134:12
**go** 12:10 14:21 44:7
45:8,19 46:16,20
56:18 57:18 60:20
61:11 63:9 70:16
77:19 80:18 97:3
100:13 113:8 122:5
122:19 123:3,8
124:15 131:20
132:11 136:5 150:16
154:12 159:23
160:11 171:20
**goal** 14:20
**goes** 12:23 23:25
98:16 120:25
**going** 11:17,21 13:4
21:5,24 22:1,12,13
24:13 25:24 27:6
29:9 32:21 35:15
44:17 50:4 55:14
58:17 65:15 72:25

73:5 81:4 83:24
84:25 85:24 86:4
105:8 112:14 115:7
118:21 119:11
122:17 126:23
127:11 128:23 136:6
136:20 149:11
150:14 152:5,15
153:12,21 154:3,14
154:19 155:10,24
157:14,22 159:5,21
160:10 167:21 169:3
171:21
**good** 12:17 31:10
34:18 42:16 68:3,15
68:23 69:10 95:20
95:23 120:18 145:7
154:11 162:18
**GOODWIN** 5:5
**gotten** 126:21,24
**governance** 16:4,15
18:18 38:6,10
154:11 157:13,15,16
157:19 158:3,4
162:21,24 163:2
**governed** 19:13
**governing** 162:21,23
**go/no** 80:18
**Grace** 1:7 4:4 11:13
36:6 43:15 73:15
81:24 90:14 91:11
98:8 105:5 112:20
113:3,5,5,6 117:3
141:18,22 159:9
160:3,9 163:7,16
165:22 166:11 167:1
167:6,25
**graduate** 14:8
**graduated** 146:6
**grateful** 66:13 67:6,20
75:16,18
**gray** 85:11 87:23
99:14 133:24
**great** 19:6 117:3
138:16
**gross** 132:15 133:17
**ground** 12:1
**grounds** 163:17
**group** 80:25 82:7
83:16 94:2,3 108:14
108:15 116:3 135:21
**groups** 95:3,6 99:2
**guess** 17:4,13 37:6
55:2 120:18 138:17
148:25 150:19
168:15,21,24,25
**gut** 107:4,8
**guys** 127:10

Case 01-01139-AMC    Doc 22809-5    Filed 08/14/09    Page 185 of 195

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein
Page 184

**H**

**hand** 11:17 21:24
22:12 40:24 41:1
64:17,19 97:8 103:4
110:10 143:2 173:17
**handled** 103:24 113:9
**handling** 102:25
**hands** 144:8
**hangs** 172:7
**happen** 49:22 52:9
61:18 63:14 64:3,5,7
64:21 65:2,3,19,20
65:23 66:4 76:9,9,20
76:21 86:13 89:9
93:9 127:12 129:2
136:7,7,8,11 137:8
**happening** 127:14
**happens** 36:20 125:17
**happy** 67:17 171:6
**hard** 136:15,18
**harm** 136:8
**HARRIS** 3:6
**hate** 34:15 86:10
167:10
**head** 160:13
**heading** 23:3
**heard** 149:21
**held** 112:17 113:1
157:9,12,18 158:2
160:20
**help** 18:25 94:11
165:15
**hereinbefore** 173:9
**hereunto** 173:16
**HERRINGTON** 3:16
**Hey** 77:5
**high** 123:2
**higher** 85:13
**hire** 103:13,14,17,19
**history** 18:1
**hold** 58:10 160:19
**holding** 122:23 123:5
154:22 155:7,22
156:8,18 158:9
**holds** 114:16
**honestly** 168:9,10
**Honeywell** 15:23
**hope** 141:3 149:16
**hopefully** 21:25
**huge** 46:18 169:16
**human** 30:10 83:14
84:14,18 85:5
156:24 157:4,7
**hundred** 49:13
**hundreds** 34:6,12
136:24 137:3
**hurt** 18:14 135:4
**hypothesis** 77:25
84:13 134:15

**hypothesize** 82:1
**hypothesizing** 53:6
144:14 145:3
**hypothetical** 53:11
89:1 96:23,25
109:23
**hypothetically** 49:11
56:4
**hypotheticals** 39:18

**I**

**idea** 15:6 56:10 73:24
117:1 119:16 145:7
148:9
**ideas** 151:2
**identical** 29:14 116:20
**identification** 60:13
**identified** 33:15 58:4
58:25 70:14 76:6
94:10 95:11 96:17
99:5 104:17 123:20
142:10 163:13 177:5
**identifies** 68:2,22
**identify** 11:10 33:8,25
40:12 56:21 57:11
58:3 59:3,13 60:18
70:2 83:20 89:8
159:8,17 160:2,7
163:4 164:13 165:3
**identifying** 20:23
113:21
**ignore** 96:17
**ignoring** 44:11 49:9
**ILAN** 9:6
**Illinois** 1:18 4:8 173:2
173:6
**illustrate** 61:6
**immediately** 146:7
**immunize** 120:2,7
**immunized** 122:7
**impact** 63:19 152:24
152:25 153:10,17,20
154:9
**implement** 52:14
**implemented** 43:16
86:4 115:1 163:14
**important** 12:17 83:9
95:6 104:2 124:22
136:19
**importantly** 67:23
**impossible** 53:3,5
**improper** 38:15
164:15
**inappropriate** 115:22
**inappropriateness** 138:9
**incentive** 50:15 52:1,8
52:11,14 53:2,17,20
53:25 54:5,18,23

55:3,6 61:21 73:2
82:23 85:1 86:8,11
99:7 113:12 117:10
141:7 142:19
**incentives** 30:14 32:3
32:5 49:2,4 53:8
54:13 57:2,17 58:2
64:6,8,10,14,15 65:5
72:15 73:6,21 84:19
85:3,6 116:2 143:2,3
154:10 167:16
171:18
**incentivization** 51:18
**incentivized** 77:9
**inclined** 62:5
**include** 20:11 78:5
93:24
**included** 139:4
**includes** 97:7
**including** 23:18 25:17
46:9 51:15 112:16
120:24 121:22
**incomplete** 168:6
**incorporated** 138:1
**increase** 77:16
**increases** 76:8
**incredibly** 87:23
**incur** 120:22
**indemnification**
112:19 113:2 122:20
124:15,16
**indemnified** 113:6
125:4
**indemnify** 128:4
**indemnity** 117:11,14
119:23 138:4
**independent** 62:19
77:15 117:17
**INDEX** 10:1 177:1
**indicate** 13:15 14:12
19:19
**indicated** 137:18
**indicates** 13:22 14:7
15:10
**indicating** 43:7
**indirect** 112:15,25
115:21 116:16,22
117:2
**individual** 41:2,5,10
44:13,23 50:18 52:2
52:22 60:14 61:2
62:14 63:11 66:17
66:18 67:10,10
70:10 78:22 79:1,8
79:19 88:9,14,16,18
88:20 91:13,23,24
92:12,12 93:5 94:1
97:11 99:7 100:15
101:7,14 102:1,2,13

103:6 104:2 105:8
107:24 115:18 120:4
120:9 121:17,19,19
122:8,23 123:5,11
123:18,25 126:5,6
128:19 129:14,15
134:11 135:20
143:12
**individually** 51:16
81:4
**individuals** 103:15
163:23 164:2
**individual's** 122:24
133:7
**industry** 18:17
**influence** 23:17 24:20
45:4,5,10,13 46:19
48:9,9 49:3,8 56:21
59:6 60:16 61:8
80:22 86:22,23
88:18 89:6 106:14
**influenced** 67:25
68:12 69:8 89:5
**influencing** 59:20
**information** 46:10
116:14
**informed** 96:19 128:16
**inherent** 106:1
**initial** 43:2 47:21
**initially** 79:17
**initiate** 55:20,24 58:6
**initiated** 57:9
**initiating** 56:10
**initiatives** 59:21 60:21
**injunction** 118:18
**injuries** 112:17
**injury** 46:10 91:15
94:10 96:1,21,25
97:1,6 98:3,13
105:22 109:10 113:8
141:21 143:13
165:20 171:8
**inquire** 31:19
**insofar** 12:23
**instance** 159:17
164:13,19,25
**instances** 31:12 60:13
143:15 150:9
**institutionally** 98:18
**Insulation** 16:18
**insurance** 7:4,6,6 9:4
16:24 46:11 112:16
112:23 113:7 117:12
117:15 160:15,21,22
161:9 169:21 170:2
171:10,14
**insurer** 170:19
**insurers** 114:13
118:17

**intend** 27:13
**intended** 24:5,8 64:25
65:17 128:17
**intending** 25:21
130:10
**intent** 128:24 135:3
**intentional** 134:22
135:12,24
**intentionally** 134:6
**interest** 12:22 40:23
50:17 52:13 53:15
55:9,11 63:23 69:25
72:20 92:6,11,19
93:25 94:2 109:8,13
110:11,21 111:3
134:11 135:9 142:10
166:25
**interested** 59:22
109:19 173:14
**interests** 50:19 59:1,9
60:14 61:2 63:11
66:17 67:10 68:17
69:13 70:10,11 92:7
92:12,14 93:5,6 94:1
95:9 96:20 97:9,10
107:23,25 108:17
109:12,22 110:4
111:18 135:20,20
**interject** 116:5
**intermediaries** 88:5
**intermediate** 86:5,6
**internally** 20:19 81:12
**interpret** 27:24 131:25
148:23,25 149:3
153:12,15,17,17
154:17,20
**interpretation** 50:7
122:6 123:15 124:13
127:4 149:23 150:1
150:2,19 151:5,7,19
152:2,8,18,20,25
153:3 154:15 155:8
155:23 156:9
**interpretations** 149:14
150:11,16
**interpreted** 149:10,11
**interpreting** 156:2
**interrupting** 46:15
**interruption** 65:6
**invariable** 112:13
**investigation** 35:11
**invoked** 31:12
**involve** 57:12 158:13
**involved** 19:15 32:22
88:2 133:22 163:23
**involvement** 82:2
95:13
**irosenberg@cozen....**
9:11

Case 01-01139-AMC    Doc 22809-5    Filed 08/14/09    Page 186 of 195

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein
Page 185

**irrelevant** 159:22
**issue** 19:14 93:13
  110:8 124:14 148:24
  160:16,21 171:13
**issues** 19:1 57:24
  98:11 99:17 111:13
**Itel** 18:3 162:15
**items** 59:12 61:6

**J**

**J** 3:6 173:4
**James** 1:16 10:7 11:4
  11:12 173:8 174:1,2
  177:8
**JANE** 1:25 9:18 176:4
  176:12
**janerose@janerose...**
  9:23
**Jersey** 6:21
**JFK** 1:10
**Jim** 11:12
**job** 21:6 62:10,13
  67:18 75:18 100:2
**Joint** 22:3 177:13
**Jointly** 1:11
**journal** 158:18
**judge** 16:8,10 109:1
  130:14 132:7
**judgment** 30:10 49:19
  77:15 78:18 89:4
**jump** 21:16 122:4
**jumped** 25:10
**jurisdiction** 130:7,15
  131:15
**jury** 98:12

**K**

**KATHLEEN** 3:17
**keep** 22:19 40:9
**Kellogg** 13:8,20,23
  14:1 15:9 20:10,16
**kill** 152:4
**kind** 29:19 30:6 33:25
  39:20 50:24 70:22
  73:20 74:2 80:18
  84:3 85:3 86:24
  87:13,15 98:22
  101:6 105:11,25
  106:1 108:13 113:2
  113:10 121:18
  158:18
**kinds** 18:18 34:25 46:3
  90:22
**KIRKLAND** 4:5
**knew** 107:11,20
**know** 30:5 33:1 34:19
  34:23,25 35:3,9 37:9
  39:15,15 46:12
  58:18 60:24 73:1,17

**label** 115:24
**labeled** 12:21
**lack** 148:7 151:9
**lacked** 53:10 160:22
**Lane** 3:8
**language** 32:16
  116:20
**large** 25:14 35:21
  76:12 99:2 106:11
**LaSalle** 4:7
**LAURA** 6:5
**LAVAN** 3:5
**law** 13:19 14:9,11,25
  15:15 32:12 33:8,15
  33:21 38:14 39:14
  39:16,19 41:2 42:10
  49:7,12 54:17 85:1,4
  96:7,9 100:9,24
  101:3,5,13 102:3
  103:10,19 104:7
  105:19,20 106:2,10
  124:7 132:9 138:3
  138:11 139:4 140:15
  141:9 143:1 145:22
  146:4,5,6 147:19,22
  162:20,23 163:1
  164:16,20

**L**

**laws** 54:12 92:20
**lawsuit** 157:18
**lawyer** 49:25 85:19
  96:25 97:1 98:12,13
  98:14 104:20 106:3
  109:10,12,16 123:12
  123:18,22,25 125:18
  126:5,13,21 127:5
**lawyers** 14:13,18
  15:16 50:3,17 51:4
  83:17 90:8 91:15
  94:11 96:12,13
  97:19 98:4,25 99:2,8
  103:14,17 104:12
  105:22 106:23 107:2
  110:1,5 111:3
  113:11 123:14 125:9
  127:25 128:12,18
  136:21 137:4 139:23
  139:25 143:13 148:1
  148:18 165:20 166:9
  168:17,20
**lawyer's** 161:14
**Lead** 1:19
**leading** 79:13
**lead-in** 24:6,22 124:17
**leap** 169:16
**learn** 31:19
**learning** 96:6,14
**leave** 135:6
**lecturing** 21:10
**left** 33:14 86:18 167:15
**legal** 15:7 21:11 29:2
  37:22,24 38:3 48:19
  50:4,8 55:4 84:17,23
  85:14 106:16 108:12
  127:4,11,17,20
  128:14 135:1 140:22
  148:23 149:18,19
  154:10,21 155:8,12
  155:23 156:9 164:24
**legality** 153:15 154:4,9
  154:17
**legally** 166:4
**legitimate** 118:3
**lesser** 144:8
**let's** 39:17,19 45:11
  50:5 55:15 56:3
  61:11 71:8 83:9
  85:18 96:5 99:4
  100:13 101:21
  120:10 121:16
  124:22 130:22 136:5
  143:10 145:24
  146:21 152:14
**level** 107:10 109:2
**levels** 45:6,25,25 47:5
  56:5
**levers** 99:16

**Lexington** 8:7
**liability** 99:22 120:2,22
  121:17 125:4,13,23
  125:25 128:19
  129:13 132:22 135:7
**liable** 112:17 113:1
  122:22 125:3
**lien** 58:14
**life** 58:11 85:14 147:14
**light** 103:21 129:5
  149:17
**limit** 38:15
**limitation** 28:1
**limited** 25:17
**limiting** 46:12
**line** 128:13 174:17
  175:4
**liquidated** 100:4
**liquidating** 96:22
  103:5 115:20
**list** 21:9 25:18 55:14
  148:11
**listed** 33:5 47:1 146:25
**listening** 165:15
**lists** 45:16 120:21
**literature** 109:25
**litigants** 32:24
**litigation** 95:14 97:8
  144:21 145:3 157:10
  157:13,15 161:10,20
  171:12
**litigator** 96:8
**little** 12:18 55:15 84:1
  96:5 139:10
**living** 105:16
**LLC** 6:4
**LLP** 2:6 4:5 8:4
**Lockwood** 1:19 4:16
  10:9 11:9 19:22,23
  26:24 27:1 30:1,22
  30:25 38:4 40:19
  41:25 43:5 47:17
  48:1 51:1,9 54:11
  60:2,6,25 62:25 63:3
  63:6 65:9,14,24
  67:13 69:17 70:7
  71:13 80:7 81:23
  89:11,20,22,25
  90:20 92:23 93:1
  97:17 102:8,17
  110:18 114:23 115:4
  115:15 116:9,12
  118:23 119:3,8,12
  119:14 129:4,22,24
  131:3 133:3,13
  138:24 145:11,17
  149:24 150:4,10,15
  152:9 162:7 165:9
  165:19 167:14

**logical** 59:25
**LOK** 8:5
**long** 67:12,14 68:19
  83:3 89:13 133:15
  133:16 165:16
**longer** 146:17
**look** 22:18 23:1 24:14
  25:2 26:2,17 33:19
  33:20 53:23 71:3
  72:2 79:2 82:6 95:1
  102:1 104:4 114:18
  120:10 124:14
  137:14 154:7,8
  164:20,22 170:6
**looked** 33:18 116:19
  138:7 164:17
**looking** 21:9 25:1 27:2
  29:19 32:17 33:10
  34:5 44:2 45:1 46:21
  48:20 49:2 57:3
  127:23 164:16
**looks** 11:20
**lose** 97:23
**lost** 53:5 163:11
**lot** 34:17,18 99:15
  149:22 150:20
  156:16 158:22
  170:13
**lottery** 144:11
**lower** 86:19
**Loyola** 13:23 14:4,7
  15:9 20:10 147:19
**lstover@eckertsea...**
  6:11
**lunch** 89:10,12
**lung** 35:7
**L.L.P** 8:16

**M**

**M** 6:16
**magnitude** 117:2
**Maiden** 3:8
**main** 14:18
**major** 104:3
**majority** 70:24 71:20
  142:2,7,14 148:17
**making** 54:18 56:10
  100:2 110:19 112:7
  155:14,15 168:13,16
  171:9
**MALE** 89:24 115:10
  151:8,11
**malignant** 35:6
**malpractice** 122:13
  123:11 125:13
  126:25 128:18
  129:13 150:5
**management** 13:9,16
**mandated** 144:18

Case 01-01139-AMC    Doc 22809-5    Filed 08/14/09    Page 187 of 195

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein
Page 186

manner 39:12 42:12
42:14 100:17 108:3
marked 11:1,2,17 22:1
Market 7:11 9:7
marketing 14:23
marriage 173:14
MARRIN 8:15
MARYLAND 6:3
match 36:4 101:3
material 21:2 55:9
131:24
materiality 53:14
matrix 79:23 80:2
Matt 171:3
matter 18:5 30:9 38:13
49:10 53:8,20 85:10
94:4 114:4 139:14
173:15
matters 15:16 22:25
25:14,19 58:23 62:6
MATTHEW 2:7
maximize 51:5
maximum 54:20
MBA 146:22
McDermott 15:11,19
146:8,12
mean 18:20,21 38:24
43:4 45:22 53:23
60:24 61:3 62:23
63:2,4 98:14 101:2
103:18 111:25
122:11,21 127:16
132:8 135:13 146:19
150:15 154:20 158:3
158:4,6 164:23
166:4 171:20
meaning 108:18
111:16
meaningful 117:4
means 75:2,3,15
127:21 130:2,18
155:11 157:16
meant 33:20 116:10
129:1,3 167:11
measure 54:4
mechanism 59:19
131:5,7,9,13 132:4
mechanisms 94:6
medical 46:3 78:16
86:22 87:1 98:10,11
154:23 155:4
meeting 79:25
meets 80:22,24 85:17
MELLOTT 6:4
member 42:10 63:13
70:10 73:9 77:21
80:11 82:13,20 86:6
88:20 94:1,2 95:21
107:24 108:1,4,6

113:20 119:19
121:20 122:14,21
123:16,17,24 124:3
124:4 125:2,11,12
125:20 126:1,9,12
128:5 130:3,12,13
130:17,19 131:6,10
131:13,25 133:23
134:2,23 135:19,22
136:2 166:25 167:5
167:24 168:3,11
members 23:21 32:3
32:11 33:10 35:13
36:10 48:5 50:12
51:4 57:17 63:8,24
64:7,17 66:10 67:3
68:13,18 69:9,14
72:20 74:9 77:22
78:21 80:20 82:5,11
82:15,17,24 83:16
83:19 84:21 85:20
86:17 89:7 90:4 91:5
91:6,13,18,21 92:12
94:12 95:23 103:12
105:5 107:16 113:17
115:18 117:6,9
120:2,8 125:9 128:7
129:12 135:6 137:4
139:4,4 140:3,3,13
140:15 142:3,6,11
142:16 143:12,19
165:20,23 166:13
167:9 169:10
member's 64:1 66:18
67:10
memory 22:24 44:18
mention 93:20
mentioned 20:13,17
20:18 41:16 45:12
121:15 125:16
mere 108:13
merely 36:13
merit 155:2,2
meritorious 44:14
mesothelioma 35:6
methods 46:4
mgiannotto@good...
5:11
Miami 2:11
MICHAEL 5:6
middle 86:17
Mike 139:7 170:11
mind 12:13 112:14
151:3 171:23
MINDY 8:5
mine 83:14
minimis 119:19
minimum 124:12
minority 140:3

minute 145:16 154:8
minutes 170:6
misappropriate 54:18
misappropriation
123:1 133:8
misbehaving 171:19
mischief 141:7 142:19
156:6 167:17
misconduct 132:16
133:18
miserable 58:11
mishandling 122:8,14
125:14,24
misspoke 26:24
misstates 66:19
misunderstood 51:8
mkramer@bilzin.com
2:14
mlok@stblaw.com
8:11
modest 105:14
modifying 132:10
moment 56:20 57:2,25
96:6 116:13
money 18:13 53:25
54:15 61:2,16,23
84:17 109:18,20
monies 19:4,7
motivate 72:15,16
88:21
motivated 76:10 77:9
77:19 78:1 82:3
motivational 156:20
moved 18:13
moving 19:24 31:22
multimember 82:7
multiple 90:14
mute 65:13,14

_____

**N**

N 1:19 4:16 7:11
names 34:20
nation 111:24
nature 35:23,24 36:7
40:13 41:14 84:18
85:6 114:3
necessarily 101:2
necessary 42:6
169:13
necessity 102:12
105:16
need 17:18 65:13 80:4
102:5 134:19 152:11
needed 45:5 86:23
needs 55:9 172:8
negligence 129:13
132:15 133:17
137:10
negligent 120:3,8

125:13 138:5,9
negligently 134:5
negotiation 121:23
neither 43:18 144:4
158:7
neutral 63:9
never 94:5 96:7
112:14 126:20 157:9
157:12 158:17 164:6
164:10 171:23
nevertheless 37:4
171:10
new 3:9,9 5:7 6:21 8:8
8:8,21,21 9:21,21
14:14 15:3,5 149:16
176:14,14
newly 75:11
nine 145:8
Nobody's 162:2
nominee 75:1,2
nonbinding 46:6
nonclients 78:7
noncompensable
83:21
nonlegal 128:14
nonmalignancy 35:8
nonmeritorious 42:20
73:21
normal 46:12 107:5,6
109:14,15
North 4:7
Northwestern 13:9
146:25
Notary 173:5
noted 174:7
notes 22:7 170:7
notice 112:21 176:1
notion 85:8 95:7
115:17
notwithstanding 37:2
39:25
not-for-profit 20:7
not-for-profits 137:22
number 16:9 24:1
25:14,18 34:4 35:21
45:9 47:4 51:15
85:23 139:23,25
NUMBER/DESCRIP...
177:5
nuts 166:7
NW 4:17 6:6
N.W 3:20 5:7

_____

**O**

object 9:22 41:20
50:21 81:20 83:13
83:13 90:17 118:21
128:23 150:14

151:10 152:6 153:23
155:10,24 157:14,22
159:21 160:4,10
162:5,7 163:8,17
objected 151:12
objecting 83:10
157:25
objection 16:24 17:2
26:22 37:25 40:15
41:20 43:3 47:16,24
54:8 60:22 66:19
70:3 110:14 129:6
148:7 151:8,11
152:3,12 155:16
163:22 168:4
objections 162:10
objective 166:21
obligation 36:18 46:11
50:16
obligations 37:8 38:21
40:25 51:4 68:16
69:12 77:8 92:5
107:1 127:19 140:13
140:16 167:7,13
168:1,12,18
observing 87:16
obstreperous 70:22
obstructive 59:17
obtain 139:5
occur 114:9 140:22
145:4
occurred 131:24
offer 80:1 109:17
offering 153:19 161:23
162:1
office 57:13
officers 20:5 81:19
138:5,6
offices 43:1
official 2:4 91:9 92:5
126:1,12
oh 27:8 72:1 96:11
110:6 115:2 145:24
158:16 162:9
okay 12:18 13:7 17:6
26:1,5 28:13 29:24
33:18 38:7 39:17
43:6 44:10 45:21
50:3 63:5 67:12 72:5
72:7 76:15 80:6
87:15 89:22 112:8
114:10 118:12 119:9
120:25 121:15
129:18 131:2 133:5
133:12 136:4,8,11
136:12,15 139:19
146:6,14,24 147:6,9
147:11,15,22 148:3
148:6,11,17,21

Case 01-01139-AMC    Doc 22809-5    Filed 08/14/09    Page 188 of 195

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein
Page 187

149:1,13 150:9,24
151:4 152:20 153:6
153:19 154:6,13,19
154:22 156:8,12,18
158:5,16,21 160:2
160:15 162:3,16
163:4 164:1,6 166:1
166:3,5,13,15,17,20
167:4,23 168:17
169:3,19,25 170:4
171:20
**omission** 120:23
121:21
**once** 67:23 103:2
113:25 129:16
134:20
**ones** 15:17 20:16
24:12 45:11 46:21
56:9 70:20 86:9
113:4 159:12
**one's** 16:12 147:5,5
**on-line** 148:15
**open** 135:6
**operate** 81:3,11 92:18
103:3
**operated** 30:7
**operates** 82:7
**operative** 43:12,14
**opined** 43:11 51:2
93:2,11
**opinion** 24:24 30:9
36:17 37:16 38:13
39:25 49:24 50:1
51:3 68:7 69:3 90:21
105:2,10 107:23
108:3,12,13,23
109:6 111:1 135:17
141:2,8 160:20
**opinions** 138:8 141:1
142:9 146:10 148:22
149:2 153:7,14,19
160:3,8,17 161:3,4,5
161:11,18,22,25
170:15
**opportunities** 54:24
55:10
**opportunity** 55:5
75:19 86:12,17
**opposed** 18:22 52:12
88:24 101:7 117:16
117:23 145:4 157:16
**order** 27:11 46:13
53:13 55:8 62:9
70:13,17,21 76:9
100:1 103:7 134:12
148:21 149:1
**ordering** 40:7
**orderly** 40:10
**organizational** 20:5

156:15
**organizations** 20:7
**original** 77:25
**ORR** 3:17 89:21 115:8
169:24
**ORRICK** 3:16
**ought** 138:12
**outcome** 173:15
**outside** 32:2 104:12
**overrides** 105:17
**overwhelming** 142:14
**owed** 58:15
**owes** 113:7
**O'CONNOR** 9:5

**P**
**page** 13:12 15:25 20:1
26:4 30:21,22 33:11
33:14 71:11,12
75:25 90:2 114:19
115:5 120:19 130:25
132:24 133:11
174:17 175:4
**pages** 20:25 174:4
177:9
**paid** 42:3,21 45:6,14
48:15 49:12,13
50:13,14 51:23 52:4
52:5,6,6,7 78:2
82:23 85:9 86:6,7
99:8 100:4 102:14
104:15
**paperwork** 45:5
**paragraph** 12:11,19
19:18 20:1 21:8,13
22:16 23:2,5,10
24:17 25:12 26:16
27:6 31:22 32:8 36:9
41:15,18 46:22
55:14,18 56:6 58:23
59:3,12 60:8,12,17
61:6 66:7,24 68:1,22
69:19 70:15 90:1
106:22 107:13 109:5
112:15,23 114:10,12
115:5 116:7,10
117:8 119:25 129:18
129:25 130:20,24
138:25 140:10
141:12
**paragraphs** 24:1 33:6
33:9 40:21
**paren** 21:1,2 36:14,15
**parent** 19:13,15
**parentheses** 36:12,13
**Parsippany** 6:18,21
**part** 30:2,11 40:24
50:16 52:1,10,13
65:23 79:13 80:19

80:25 83:9 99:7
104:17 136:5,19
139:3,23 142:11
147:5,14,24 156:20
156:20 160:17
**participate** 20:15
69:20 78:22 164:7
**participated** 15:22
**participation** 79:7
**particular** 19:7 20:17
23:23 24:14,23 25:6
26:3 27:11 29:18
30:17 34:23,25 35:3
55:22 112:23 139:12
161:11
**particularly** 137:25
**particulars** 102:2
**parties** 55:19 173:13
**pass** 89:3 119:17
124:4 126:4,7,9,18
83:25 84:22 86:9
99:19 113:12 117:5
**paying** 23:19 155:5
**payment** 42:13,14
46:1 47:20,21 48:2
48:13 49:1 84:5
**payments** 46:13
**pecuniarily** 109:23
**pecuniary** 109:7,13,22
110:10,21 111:2,18
**peer** 157:7
**Pennsylvania** 6:6 9:8
**pension** 87:19 137:22
**people** 14:21 32:22
35:5,19 54:12,16
65:12 66:13 67:6
74:11 81:16 89:14
95:9,12,14,18 98:23
99:10 102:25 103:16
104:6,9 105:7 106:7
115:6 120:22 126:2
127:9,23 128:3,6,8
134:4 136:16 138:12
144:12,16 145:1,6
161:16 163:20
166:13 170:1 171:21
**people's** 124:21 150:2
**percent** 49:13,14
**percentage** 47:20,21
48:3,15
**percentages** 46:1
48:14 49:1
**perfectly** 55:4 149:19
**perform** 53:2,3,5
98:18
**performing** 104:10
**permissible** 85:9,11
85:12

**permit** 39:22 61:7
132:14
**permitted** 137:12
141:5,6
**person** 87:24 96:20
107:8,20 122:23
124:7 126:3,5,24
132:3 168:2
**personal** 46:10 60:18
60:24,24 87:16
91:14,25 94:10 96:1
96:20,25 97:1,6 98:3
98:12,13 105:22
109:10 114:3 117:24
118:5 139:14 141:3
141:10,21 143:13
165:20 171:8
**personally** 88:2
161:21
**persons** 112:17
**perspective** 61:19
**perverse** 30:14 84:19
154:10
**Peter** 1:19 4:16 59:24
131:16
**petition** 130:11,16
**Philadelphia** 9:8
**phone** 22:2 65:10,13
65:14 89:14,20
115:7,8 169:21
170:1 172:6
**phones** 65:13
**phrase** 25:20 59:19
75:20 82:16,22 83:5
84:23
**phrased** 23:24 67:16
77:12,13 103:21
142:5
**Ph.D** 156:15
**Pi** 21:20,21 22:10 23:6
23:14,20 36:12,13
112:15 115:21
116:16,22 117:2
121:12
**pick** 72:18,23
**picking** 95:12
**pie** 36:20
**piece** 171:24
**place** 5:17 24:9 68:11
69:6 71:24 84:7,10
95:2 100:20 110:7
118:20 167:18
**placed** 151:5
**places** 20:23 44:15,18
**plaintiffs** 32:23 73:15
73:19 74:3,5,5 97:19
137:4
**plaintiff's** 104:20
**plan** 22:3 43:15 44:1

73:6 77:20 105:9
117:20,23 120:10,11
120:24 121:5,23,24
121:24,25 122:2
124:19 128:17
129:12 130:6 132:13
133:10 136:1 141:15
141:22,23,24 142:15
142:17 143:23 144:2
144:18,22,25 145:5
149:9 151:5 152:2
152:21 177:13
**plane** 152:14
**plans** 15:5 153:4
**players** 166:19
**Plaza** 8:19
**please** 12:5 13:5 65:14
**plum** 75:18
**plus** 134:16 136:16
**point** 16:1 24:13 47:6
50:11 56:6,13 61:5
61:25 66:6,24 68:1
68:21 69:18 71:9
72:6 74:15 76:5
94:21 113:10,14,25
114:5,7 127:22
130:24 155:14 167:2
**pointed** 153:16
**points** 70:15
**police** 171:19
**policy** 46:12
**pop** 36:4
**portion** 122:20 124:16
**portions** 32:6 40:12
**posit** 82:23 83:15
97:21 136:11
**posited** 86:20 135:7
**positing** 63:7 97:18
**position** 62:2 66:9,12
67:1,4 74:14 147:4
**positions** 94:23
126:11
**possibility** 68:2,8,14
68:22 69:3,9 76:17
76:19 80:9 147:11
**possible** 21:7 84:10
143:2,4
**possibly** 78:8 82:1
168:18
**postconsummation**
122:8
**posted** 22:7
**Post-It** 22:7
**pot** 99:13 114:9
**potential** 54:9 61:24
66:8 67:1 78:4
111:12 142:1,9
143:1 166:25
**potentially** 23:17

Case 01-01139-AMC    Doc 22809-5    Filed 08/14/09    Page 189 of 195

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein
Page 188

24:20 41:4,7,8 58:18
59:6 76:8
**power** 28:1,4 29:5
36:19 46:19 48:17
53:10,12,17,19,22
53:24 55:24 56:12
56:17 57:6,14 58:5
59:5,17,19
**powers** 23:3 28:7
52:20 53:7 61:7
**practical** 94:3 105:16
**practice** 98:4
**practiced** 96:7
**practices** 154:11
**practicing** 15:15
**Pratt** 7:9 168:4,5
**precluded** 111:17
**prefer** 50:17 51:19
134:10 143:7,18
**preferable** 96:24
**preference** 95:14
135:19
**prejudice** 168:20
**prejudiced** 168:21
**premarked** 21:25
**preparation** 26:7
**preparing** 28:15 153:7
**prerogative** 169:15
**present** 15:11 36:12
36:13,23 37:8,13,19
39:3 73:8 78:6,10,12
83:19 87:2 95:10
103:23
**presented** 16:10 35:15
35:25 63:15
**presenting** 41:11
42:10,11
**presently** 13:8
**presents** 86:16
**pressing** 50:1
**presumably** 37:6
56:23
**presupposes** 63:23
**pretty** 123:2
**prevent** 54:12 61:17
68:13 69:9
**prevented** 106:2
**preventing** 94:10
**previous** 86:20
**previously** 46:9
139:16 141:11
**PRICE** 2:6
**primarily** 20:12
**principal** 99:5 107:12
**principle** 140:22
**prior** 13:22 17:13
29:10 66:20 93:14
117:13
**priority** 58:14

**private** 20:6
**probably** 12:9 22:25
86:1 87:18 94:5,13
95:22 109:4 119:13
127:11 154:3 162:18
166:2
**probe** 22:24
**problem** 105:17 134:7
163:19 165:22
166:23 168:2,13,16
169:10
**problems** 96:18 114:9
133:20 143:20 165:3
167:8
**procedures** 21:22
22:12 23:19 45:15
46:6 77:20 78:10
79:18 100:25 101:9
101:24 115:1,20,22
116:2,4,15,21
157:10 163:5,6,13
163:15,23 164:14
165:1
**proceedings** 17:11
65:8
**process** 11:25 26:11
26:12 44:8,11 69:20
69:21,22 77:6 81:16
81:25 100:5 101:23
102:10,21 128:21
**processed** 114:25
**processing** 83:2 87:9
87:16
**PROCTER** 5:5
**products** 36:7
**professional** 12:24
106:23 107:2,15
108:24 111:7,8
162:19
**professor** 1:16 13:16
22:13 51:1 60:8
96:24 130:1 146:25
147:1,9 171:4
**professors** 95:23,25
96:7,9,10,11
**proffered** 18:7
**prohibition** 106:17
111:17
**prohibits** 138:4
**proof** 19:8 46:7 134:8
**proof-of-claim** 86:24
87:2
**proof-of-claims** 87:9
**property** 2:5 5:14
122:1
**proponent** 161:8
**proposal** 70:9 89:3
**proposals** 76:10
**propose** 27:15 29:1

60:21 64:17 94:9
**proposed** 28:18,19
32:11 33:10,16 57:8
63:16 159:9 163:6
163:15 164:14
**proposing** 63:8
**proposition** 34:4 55:7
81:14 93:24
**propounded** 174:6
**propriety** 159:19
**prosecution** 95:25
**prospectively** 115:19
**protect** 59:8
**proud** 124:11
**prove** 123:2 134:7,9
**provide** 46:3 54:25
**provided** 148:13,18
176:4
**provides** 31:1 130:6
**proving** 133:25
**provision** 57:12 59:14
62:4 71:15 72:4
76:23 120:7 122:7
122:12 124:8,10,24
125:7,15 127:25
139:15
**provisions** 23:23 24:2
24:7,15,23 25:6,25
26:6 28:17 29:12,14
29:18,20 30:6 31:3
31:13 45:15 55:17
55:19 56:24 57:3,5
58:3 59:4 68:9 69:5
69:19 70:18 119:23
120:1 135:14 139:12
140:8 149:3 150:6
**psychological** 128:14
**psychologist** 156:14
**psychology** 156:16,19
**public** 20:6 173:5
**publication** 157:7
158:17
**published** 157:6
158:17
**pull** 83:4
**purport** 38:2,9 68:10
69:5 85:15 90:7
**purporting** 107:14
114:12 140:20
**purports** 36:22 39:2,6
40:3 55:16 118:19
**purpose** 32:18,19
37:17 42:2 63:25
166:8
**purposes** 108:22
**pursuant** 113:7
**pursue** 121:23
**put** 15:5 49:4 97:22
100:12 104:15 106:3
116:4 118:22 125:5

126:8 127:8 143:10
**putting** 41:8 56:20
57:2,25 82:22 95:5
96:6,14
**pvnl@capdale.com**
4:22
**P.C** 6:15
**p.m** 60:5,5 89:19,19
115:14,14 138:23,23
172:13

___

**Q**

**qualified** 42:3 95:18
96:19 99:11 104:9
160:24 161:1
**qualify** 88:21 101:12
**question** 12:4 15:22
27:12 29:25 33:2
50:22,24 51:8,11
52:11,18 58:8 59:2
65:16 66:22 91:23
92:15 93:10 94:6
98:16 103:20 108:21
112:12 114:24 129:5
129:17 131:12 136:6
146:20 149:7 153:1
154:3 155:25 156:13
161:3 164:4 166:9
171:3
**questions** 11:21 13:4
22:23 49:23 103:15
127:20 145:12,13
150:15,20 152:10
165:13,14 169:22,23
170:17,19,22 174:5
**question's** 168:5
**quick** 61:5 109:17
**quickly** 58:9
**quietly** 165:16
**quite** 32:23 81:1 85:25
95:22
**quote** 13:16 14:12,13
14:13,14 16:2,5 20:2
20:7 23:10 27:21,23
32:1,4,9 72:22 74:21
74:22 84:23,24
108:17 130:18,18
137:7

___

**R**

**R** 173:1 174:15,15
**railroad** 138:14
**railroads** 138:13
**raise** 77:5 134:17
136:20 137:7 160:21
**raised** 134:21
**randomly** 95:22
**rationale** 94:25
**ratios** 46:13

**reached** 124:20
**read** 25:23 26:6 28:2,3
28:14,21,23 30:18
46:21 49:6 58:9
61:10 65:16 66:22
75:9 79:12 97:12,14
108:24 109:2,3
112:13 114:21 124:2
124:8 131:4 155:13
156:4 157:5 159:12
171:6 172:3 174:3
176:1
**reader** 64:25 65:18
**reading** 28:22 48:19
127:5,23
**ready** 89:21
**real** 7:5 55:9 64:16
**really** 45:9 87:24 99:11
127:13 146:13
150:19 154:11
**Realtime** 173:5
**real-world** 104:19
**reason** 74:8 97:19,21
118:24 136:25
174:17 175:4
**reasonable** 76:19
**reasonably** 66:8,25
84:10
**REATH** 7:8
**recall** 34:8
**receive** 45:7
**received** 145:22
**recess** 60:4 89:18
115:13 138:22
**recite** 22:16
**recognized** 44:14
**recollection** 12:16
146:15
**recommendation** 68:3
68:24 71:2
**record** 11:11 33:3
86:10 89:15,17
97:14 115:12 129:21
170:9 173:11
**recoveries** 78:4
115:19
**recovery** 51:5 119:19
**red** 134:17,20 136:20
137:7
**redetermination** 48:3
**redetermined** 48:2
**redetermining** 47:20
**reduced** 54:19
**refer** 12:13,19 20:8
25:8 32:5,16 101:4
106:22 119:1 121:1
**reference** 40:10 44:21
58:22 79:6 117:14
**referenced** 20:22 23:1

Case 01-01139-AMC    Doc 22809-5    Filed 08/14/09    Page 190 of 195

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein
Page 189

33:9
**references** 22:21
**referencing** 46:22
**referred** 19:10 21:8
  22:15 24:15 30:19
  33:4 55:17 107:3
  132:13
**referring** 21:3 40:14
  44:19 116:7 120:19
  121:11 131:7 132:17
  165:8
**refers** 16:6,8 121:4,5,7
**refusal** 28:25
**regard** 15:15 50:18
  114:16 122:18
**regarded** 110:12
**regarding** 151:18
  153:20 154:14
  156:24 159:19 160:3
  160:8
**regular** 19:20 137:20
**reigning** 75:12
**reject** 63:10 99:13
  117:11
**rejected** 51:22
**relate** 99:17
**related** 173:12
**relating** 57:3
**relationships** 50:8
**relatively** 101:22,25
**release** 46:14
**reliability** 46:5
**relied** 148:18 153:13
  154:15
**reluctant** 63:9
**remaining** 57:13 71:19
**remember** 44:18 79:9
**removal** 69:22 71:5,14
  72:4,14 130:12,16
  131:16 132:14
**removals** 57:17
**remove** 130:3,19
  132:3,3
**removed** 53:12 57:21
  64:10 68:3,14,23
  69:10 131:6
**removing** 131:10,13
**render** 112:5 148:21
  149:2
**rendered** 11:15,19
  13:2
**rendering** 50:6 108:23
**Reorganization** 22:4
  177:13
**rep** 69:19 72:22 73:14
  73:18,20 75:17
  77:14,17,18 95:1
**repeat** 68:20 110:17
**repetitive** 139:11

**rephrase** 12:6 19:1
  43:6 51:24 52:18
  59:2 61:4 67:16
  97:16 129:5
**replace** 163:14
**replacement** 56:23
**replicating** 100:7
**report** 11:15,19,22
  12:10,12,20 13:1
  19:18,21 20:1 21:14
  22:17,20 23:3,6,25
  25:9 26:8,16 27:7,13
  28:15 31:24 32:6,8
  33:5 36:9 40:12,18
  40:22 41:15 44:16
  44:21 45:1,20 46:23
  50:7 51:2,25 56:18
  56:21 57:10 58:4,9
  58:24,25 59:3 60:8
  62:17 64:22 72:11
  78:1 79:5,14 86:25
  89:8 90:1 99:6
  106:22 116:8,10
  117:8 119:22 123:20
  129:9,20 130:1,21
  130:24 133:21,22
  136:17 138:25
  140:11 141:11,13
  146:1 148:13 149:4
  163:5 165:2,3
  170:14,15 177:8
**reporter** 9:19 65:12,17
  66:23 68:21 80:4,6
  102:5 151:12 172:7
  172:11,15 173:5
**REPORTING** 1:25 9:18
  176:5,12
**reports** 16:10,25 163:8
**represent** 35:1,8,22
  41:2,6 48:8 50:13,20
  51:16 73:15,18 74:2
  74:4,10 91:21 95:9
  96:20 105:7 107:19
  108:1,6,16 136:22
  140:21 142:6 143:12
**representation** 15:23
**representations** 111:2
**representative** 5:15
  23:14,15 25:15 27:3
  35:14,24 36:23,24
  36:24 37:7,11,19,20
  38:19 39:6,12 42:24
  44:6 68:4,25 69:24
  70:9,16,24 71:4,17
  72:9,16,17 73:5
  74:19 76:24 77:1,7
  94:19,21 95:5 140:7
  169:22
**representatives** 37:20

49:9 71:21
**represented** 33:21
  34:4,9 35:13,19
  63:12 68:18 69:13
  73:8 74:9 82:4 92:7
  113:11,16 142:2,16
  143:18
**representing** 35:5
  52:22,22 170:2,11
**represents** 60:12 93:7
  108:14
**REPUBLIC** 7:6
**request** 12:3
**requested** 97:15
**require** 23:12
**required** 25:23 69:20
**requirement** 26:16
**requirements** 68:7
  69:2 70:14 85:18
**requires** 27:16 100:17
  105:20 132:5 138:11
  141:9
**requiring** 46:2
**requisite** 144:22
**reread** 79:4
**research** 90:11 108:21
  108:25 147:16
  156:22 157:4,6
**researched** 20:3 110:8
**researching** 147:14
**resolution** 31:2 44:24
  78:22 79:1,8,17
  81:15 87:8 88:3,10
  97:7
**resolving** 28:18
**respect** 40:10 51:20
  60:10 66:6,23 80:8
  126:10 137:9 139:12
**respective** 43:1 105:6
**response** 170:3,20,23
  172:2,10
**responsibilities** 37:3
  105:6
**responsibility** 39:11
  111:8
**rest** 30:12
**restarted** 89:23
**result** 31:3 43:25 89:6
  145:4
**resulted** 165:2
**resulting** 120:3
**results** 141:3
**resume** 132:15 110
  16:1 20:23,24
  137:18
**retained** 130:7,14
  131:14 148:3 172:14
**Returning** 19:24
**review** 32:10,15 45:18

79:19,19,22 80:8,10
  81:5,7 100:15,15
  101:7,8,12,15,22
  102:1,9,14,24 103:6
  104:2 157:7
**reviewed** 21:19 22:16
  150:11 152:21 153:4
  153:13
**reviewing** 23:19 81:4
  143:13
**Rewrite** 145:7
**rewriting** 43:2 145:5
**Rich** 5:16 10:11
  165:12,14,18 168:7
  169:19
**rid** 53:19,21 95:17
**right** 14:3 21:18 24:11
  29:2 33:14 37:12
  38:2,6 48:6 49:21
  52:10 60:2 62:21,24
  63:20 65:25 71:24
  72:12 76:22 79:9
  81:1 87:6 99:9 100:1
  102:3 103:16 107:11
  107:18 113:25 114:8
  123:15 125:15
  127:21 129:21,23,23
  132:11 133:1 134:18
  134:20 136:6 137:24
  138:1 144:23 146:8
  147:2,17 148:25
  149:4,5,15 150:7,8
  150:12 154:16,24
  162:9,17 164:21
  165:7,23 166:22
  167:3 171:11,14
**rights** 50:8 59:18
  144:20
**risk** 46:15 109:21
**rob** 171:20
**robbers** 171:20
**robbing** 171:22
**role** 42:18 43:2 44:12
  44:20,23 49:9 62:1
  91:1,5,6 98:17,19
  102:24 140:6
**roles** 123:19 124:3
**room** 65:11
**ROSE** 1:25 9:18 176:4
  176:12
**ROSENBERG** 9:6
**round** 86:2
**rule** 32:11,17 125:8
  154:3
**ruled** 90:13
**rules** 12:1 90:5,8,16
  91:2 93:3 101:10,11
  106:23 107:2,3,9,11
  107:15,17 108:18,24

109:2 110:1 111:8
  112:2 149:3
**ruling** 90:19
**rulings** 153:21
**run** 107:7 138:12
**running** 122:16 129:16

——————————

**S**
**S** 2:9 5:6
**saves** 145:8
**saying** 28:9 32:9 36:16
  39:10 55:2 59:12
  63:14 64:3,5 66:7,24
  76:17,17 84:8 86:4,8
  87:5 88:19 95:8
  98:22 107:17 111:5
  111:6 122:12 123:5
  127:1 140:19 151:3
  152:7 153:9 156:4
  161:11 168:24 169:2
  169:4 171:21
**says** 26:13 27:2 61:14
  61:22 71:18 83:23
  101:4 103:18 109:6
  126:16 132:21
  133:15
**say-so** 45:2
**scenarios** 63:7
**scholarly** 158:18
**school** 13:8,20 14:8,9
  14:11 145:23 146:7
  146:14 147:22
**scope** 32:14 40:13
  114:4 124:10
**screwed** 50:24
**SEAMANS** 6:4
**second** 21:24 22:11
  27:19 47:6 53:16
  56:5 61:25 66:6,24
  74:15 99:4 107:13
  129:18,25 133:12
  140:10,11 160:19
  169:2
**secondly** 100:22
**seconds** 115:9
**secret** 143:11
**section** 26:4,6 28:12
  30:18,19 31:4 71:9
  74:24 75:9,24
  114:14,15 115:16
  116:6,8,10 117:9
  118:4 119:22 120:15
  128:15,16,16 129:9
  129:10,11 130:22
  131:4,18 132:4,13
  132:14 133:4,10
**sections** 22:22 114:11
  114:11 126:8
**see** 26:10 27:19 28:8

Case 01-01139-AMC    Doc 22809-5    Filed 08/14/09    Page 191 of 195

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein
Page 190

28:17 33:20 36:3
41:14,19 43:8 55:23
56:5 59:20 72:21
80:17 81:5 83:8
101:3 102:12 109:8
115:2 116:21 145:24
146:21 154:9 161:14
seek 55:21,25 56:2
60:20
seeking 130:12 161:22
seen 79:6 112:9,11
sees 149:16
select 95:9
Selected 21:1
selection 74:23
seminars 20:4,14,23
21:8 93:20
send 148:16
sense 60:15 64:16
77:3 103:25 104:19
109:13 131:13
155:25
sent 33:1 100:19
141:17
sentence 24:5,25
25:13 27:2,19 67:12
67:14 68:19 69:16
83:3 90:2 107:13
109:5 110:20 112:13
119:25 129:18,25
133:15 139:1 140:11
140:12
sentences 25:2 26:15
separate 39:22 123:20
171:12
separately 121:15
serious 104:19 144:3
seriously 29:8
serve 41:11
serving 106:12 128:18
135:22 166:9
set 13:1 31:3 33:22
34:20 37:3 41:4
48:11,13 49:2 51:13
80:2 81:3 94:16
100:10,16,25 101:2
101:10,11 103:2
105:19 110:11 173:9
173:16
SETON 7:5
setting 156:17,21
settle 109:17
settled 111:14 113:5
117:12,15 118:17
settlements 97:7
120:25
severe 95:11
shape 124:9
share 82:18

shared 82:15
shares 160:3,8
SHAYNE 8:17
sheet 12:18 174:8
Shein 1:16 10:7 11:4
11:12,18 16:14
19:24 22:8,13 45:16
51:1 60:8 130:1
170:13 173:8 174:1
174:2 177:7,8,11
shoes 40:7
short 60:1 80:9
shortening 12:22
shorthand 58:22
shortly 138:18
shoulder 95:2
show 46:18 82:12
134:25 135:3
showed 19:7
showing 65:10 131:23
shown 134:21,22
shows 71:6
side 50:4 61:21 144:9
sign 172:4 176:1
signature 176:5
signed 43:19 174:12
signed-up 108:7
significance 72:21
142:12,17
significant 23:11 24:3
25:7
significantly 120:1
similar 29:13,17 31:13
31:13 70:1 88:10
133:14 146:11
164:14
similarly 24:19 105:9
113:5 160:9
simply 53:10 58:12
79:23 114:14
SIMPSON 8:4
single 24:9
sir 11:11,15,22 16:6
80:4
sit 34:8 79:9
sits 58:16
sitting 149:20
situation 18:1 83:15
90:4
situations 18:19
size 139:21
Skipping 23:2
sleep 134:24
smart 95:18 96:23,25
Smith 4:6 10:10
145:15,20 146:3
148:10 150:23
151:14,24 152:11,13
152:19 154:5 155:15

155:19,21 156:7
157:17,24 158:5,8
160:1,6,14 161:2
162:9,12 163:12,21
165:10
smspencer@fmew....
8:24
sociology 156:17
solely 15:6 96:18
somebody 58:17 62:7
98:9 101:4 117:16
126:19 134:16 135:4
137:6
somebody's 58:20
65:9 123:4
sooner 167:17
sorry 19:22 21:16
26:24 27:5 51:7
59:24 71:22 72:1,3
80:5,5 87:12 92:24
102:5,19 103:22
108:2 116:9 121:9
123:14 126:23 129:7
132:17
sort 14:15 15:21 18:20
18:22 19:14 24:5,22
35:14 36:17 41:18
42:18 59:5,7 60:18
64:22 70:1 77:2,11
78:9 83:16 88:23
91:15 96:18 108:21
116:14 145:2 165:1
sorts 81:10 95:24
165:3
sought 17:7 118:15
164:10
sound 86:10
sounds 47:19,25
54:21 146:17
speaking 152:11
155:15
speaks 163:8,18
special 77:6 82:3
125:8 134:3
specializes 35:5
specific 22:22 24:1,6
24:23 25:18,25
27:20 68:9 69:4 84:6
88:25 90:22 120:6
161:22
specifically 31:1 35:16
35:17 45:17 59:15
132:18 152:23
specified 36:14 79:23
79:24
spectrum 35:12,14
Speeches 20:25
speed 95:19 96:3
spell 13:13 130:20

spelled 24:11 32:6
SPENCER 8:17
spent 19:6
splits 123:10
stand 51:8 134:16
standalone 103:3
111:15,19
standard 29:19 123:2
standing 17:1 160:16
160:22 161:8,15
standpoint 127:13,16
149:17,18 154:21
start 29:11 32:8 47:21
52:17 76:4 83:9
92:24 112:21 142:23
142:24 171:18
started 146:17
starting 44:10 45:22
56:12 83:11 167:2
state 20:2 23:9 25:12
36:9 49:15 90:2,25
91:2 92:19 96:2 98:4
100:5,18,24 101:3
101:13 103:10 104:7
107:13,14 109:23
111:23 129:19 130:1
130:10 139:1 140:21
141:12 166:22 173:2
173:6
stated 21:19 62:17
132:9 133:21 141:10
statement 22:4 24:16
24:19,22 26:14 32:1
48:7,25 110:9,19,22
112:4,6 132:10
177:14
statements 32:11,15
33:2,4,19,22
states 1:1 16:2 27:21
90:15 107:5,6
stating 48:18
statutorily 144:18
statutory 48:20 137:12
137:15 149:3
stay 169:1
steal 54:16
steel 87:19
stepping 40:6
sticking 162:11
stitch 145:8
stone 145:24
stopped 16:23
STOVER 6:5
strategy 13:17
street 3:20 4:7 5:18
7:11 8:19 9:7 56:14
strictly 78:6
strike 18:6 29:11
34:24 38:8 42:7

68:12 69:7 73:13
76:4 141:24 142:13
STROOCK 3:5,5
structural 73:6
structure 37:22,24
64:6 76:18 88:8
90:13 104:25 160:8
structured 160:9
structures 19:4
students 15:4 93:20
studying 127:9
stuff 145:17
stuff's 166:5
sub 19:12,13,16
subject 18:5,16 73:20
73:22 77:10 101:7
104:3,13 106:25
114:14 138:8 139:10
161:4
subjects 156:23
submissions 122:9
submit 79:25 84:3
125:10
submits 104:21
125:11,18,20
submitted 16:25 117:3
122:15
submitting 123:18,25
126:14 128:21
129:15
subordinate 68:16
69:11
subparagraph 26:17
27:20 28:11,14,23
subquote 16:3,4
Subsection 26:10,11
subsequent 32:6
40:12
subset 36:4 48:7
58:19 63:11 73:7
113:15,19
subsidiary 18:12
substance 18:15,21
84:8 161:17 174:7
substantial 157:5
successful 119:18
sued 58:15
sufficiently 66:1,10,13
67:2,5 117:3
suggested 92:17,17
136:24 137:2
Suite 2:10 4:18 5:19
SUMBERG 2:6
summarize 18:24
summary 12:23 16:1
42:16 58:24
superior 163:6
supervise 81:19
support 74:8 82:24

Case 01-01139-AMC    Doc 22809-5    Filed 08/14/09    Page 192 of 195

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein
Page 191

**supporting** 25:7
**suppose** 155:7 169:16
**supposed** 53:14 92:8
  96:21 99:25 100:7
  100:11 101:18,20
  135:22
**supposedly** 18:13
  103:2 114:13
**Supposing** 52:19
**sure** 28:21 31:17
  42:20 43:4 50:4
  54:18 66:3 71:25
  80:14 81:8 89:24
  95:17 100:2 107:9
  107:10 144:5 145:5
  153:15 167:10
**Surely** 132:8
**surprised** 92:3
**surrounding** 28:8
**suspect** 85:23
**suspending** 46:12
**sustained** 17:4,5
**SUTCLIFFE** 3:16
**sworn** 11:3,6 173:10
**system** 96:8 99:23
  100:3,12,19 103:11
  104:7
**systems** 96:2 100:6
**S-H-E-I-N** 11:12

**T**

**T** 173:1,1 174:15
**TAC** 23:4,6,13,16,21
  24:20 25:15 27:3,10
  27:14,22 28:7,18
  29:5,9 31:4 32:3,12
  33:10,16 35:13
  36:10,17,22 37:5,18
  38:19 39:2,11 40:1
  40:24 42:10,17,18
  42:23 43:18 44:6,12
  44:20,23 47:1 48:4
  48:13 49:7 50:13
  51:3 52:20 53:7
  54:22 55:21,24 56:4
  56:22 57:1,6,9,14,16
  57:17 58:5,16 59:5,7
  59:15,17,21 60:11
  60:15,21 61:7,16,17
  61:20,22 62:8,10,12
  63:8,13,23,24 64:1,7
  64:17 66:10,18 67:3
  67:10,18 68:4,7,13
  68:18,24 69:2,8,14
  70:2,8,10,15,17,22
  70:23,24,25 71:3,6
  71:14,16,20,23 72:8
  72:13,16,20 73:8,22
  74:9,18,21 75:1,4,12
**takers** 99:3
**takes** 46:18 109:10
**talk** 20:19 24:7 41:24
  45:11 52:1 57:10
  65:15 112:15 113:4
  124:23
**talked** 60:9 99:6
  100:14 108:11
  139:11 167:14
  170:13

  75:18 76:11,11 77:3
  77:3,21 78:1,7,21
  79:7 80:11,19 82:4,7
  82:11,14,15,17,20
  82:24 83:15,19
  84:21 85:19 86:5,17
  88:19 89:7 90:4 91:1
  91:5 93:4,5 94:12,15
  94:19,20 95:1,14,20
  95:23 98:17 101:20
  102:12,16,18,23
  103:12 104:3,17,20
  107:15,24 108:1,4,6
  108:9 113:11,17,20
  115:18 117:5,10
  119:19 120:2,7
  121:8,10,20 122:7
  122:14,22 123:14,16
  123:17,24 125:9,10
  125:12,17,19 126:1
  126:9,12 128:5,7,18
  129:12 130:3,4,12
  130:13,17,19 131:6
  131:10,13,25 132:5
  132:6 133:23 134:2
  134:23 135:6,19,22
  136:1,22 137:4
  139:4,25 140:3,13
  142:3,6,11,16
  143:11,19 165:20,23
  166:10,13,25 167:5
  167:8,24 168:3,11
  169:10 171:7,11,13
**TACs** 31:14
**TAC's** 28:25 62:1,5
**take** 13:20 25:16,22
  26:2,21 29:1 30:17
  35:20 42:1,24 46:22
  47:1,10,13 54:6
  58:17 59:25 62:16
  63:19 67:21 71:8
  79:16 84:7,10 85:2,6
  89:11 93:17 94:8
  95:4 99:14 106:20
  113:24 114:8 124:16
  124:17,18 127:8
  136:18 138:18 144:8
  145:16 170:4,6
**taken** 25:3

**talking** 30:17 45:14
  64:14,15 65:9 72:19
  84:14 96:9,10
  105:18 112:5,20
  114:14 121:3 135:14
  145:9 155:18
**talks** 61:25 131:18
**taught** 13:14,15,23
  14:4,8,12 20:3
**TDP** 21:23 22:22 27:25
  42:4 79:13 90:14
  101:1,2 103:7
  104:18 114:11
  141:17
**TDPs** 43:24 79:18
**teach** 13:19 14:20
**teaching** 13:23 14:1
  15:9,17 146:24
  147:7
**tedious** 21:6
**TELEPHONE** 89:24
  115:10 151:8,11
**Telephonic** 2:8 3:7,18
  6:17 7:10 8:6,18
**tell** 12:5 16:6 32:14
  59:15 64:25 65:17
  67:17 75:10 151:22
  151:25 159:5 171:5
**telling** 66:2 77:3
  124:12 157:24
**temptation** 93:19
  151:3 169:1,4
**ten** 144:7,10,13
**tend** 48:8
**tens** 141:25
**tenure** 147:12,15,17
**tenured** 147:9
**ten-year** 145:3
**term** 23:6 34:18
**terms** 80:22 85:12
  87:8 90:3 103:10
  124:23 139:23
  142:21 143:14
**test** 12:15 28:5
**testified** 11:6 17:7,11
  17:14,17 30:3
  118:24 128:25
  135:16 157:22 158:1
  158:11 160:25 162:4
  162:13,17
**testify** 16:20 17:7 19:3
  50:7 128:24 160:20
  160:24,25 161:19,22
  162:6,8
**testifying** 16:23 17:25
  18:23 19:2,6
**testimony** 18:15,22
  51:3 66:20 119:10
  119:13 129:8 131:4

  137:10 157:25
  159:18 160:23
  173:11
**Texas** 5:20
**THACHER** 8:4
**Thank** 26:25 30:23
  65:13 120:13 171:25
  172:4,5,11
**Thanks** 172:5
**theirs** 36:3 135:4
**theoretical** 52:12,21
  64:13 68:14 69:9
  76:17 124:23
**theoretically** 125:6,15
  126:11,15 131:15
**theory** 56:16 64:23
  131:20
**THEREFOR** 174:17
  175:4
**thereof** 20:2
**thereto** 19:25
**they'd** 49:15 112:2
  115:24 165:24
**thing** 30:13 45:9 70:22
  83:22 118:1 134:9
  144:15 152:24
**things** 14:23 27:11
  31:14 32:13 36:7
  45:23 46:14,25
  55:22 58:12,24 59:6
  63:8 65:1,19 66:4
  67:24 76:21 86:12
  86:24 93:21 94:16
  98:22 107:22 127:8
  127:24 135:10
  136:15 148:12
  150:21,25 151:2
**think** 12:9 13:3 17:15
  27:17 37:13 41:7
  42:16 44:15 50:22
  50:24 52:15,16
  55:12 57:5,10,14
  59:5 62:4 64:16 65:1
  65:18 66:7,9,25 67:1
  67:18,19 72:10
  75:10 83:11 84:17
  94:20 95:20 96:3
  98:19 99:24 101:6
  105:19,20 109:24
  112:7,9 115:24
  118:7 121:18 122:4
  125:16,18 126:15,17
  126:17,18,21 127:1
  127:10 130:20
  131:22 133:24 134:2
  135:10,13 139:10
  143:8,9,19,20,22,24
  143:25 144:4,5
  148:15,20 149:25

  150:1,18 153:20
  165:10 166:14 168:5
  169:14,15,17
**thinking** 123:4
**thinks** 155:14
**third** 6:19 68:1,21 71:8
  72:6
**Thomas** 4:17
**Thorpe** 16:17,18 158:2
  158:12,13 159:10
  161:6,7,13,16 162:3
**thought** 37:10 77:1
  78:20 86:11 98:17
  98:19 100:11 121:11
  128:25 144:3 150:21
**thoughts** 151:2
**thousands** 34:14
  141:25
**three** 17:15,18 21:13
  38:17 61:5 69:18
  70:14 115:9 136:15
**threw** 82:16
**time** 15:8 17:6 18:2
  19:6 29:10 43:23
  57:18 106:7,7 114:6
  145:6,8 147:5,5,7,20
  147:22,23,24 168:23
**times** 17:15,18,20
**title** 13:13
**titles** 13:13
**today** 11:13,22 22:1
  29:10 43:11 93:14
  105:18 139:13
  149:21 170:13
**told** 36:18 99:9 117:16
  118:23 119:4,6
  124:6 139:9,22
  150:21 163:3 165:5
  165:19
**top** 160:12
**topic** 30:17 171:4
**topics** 21:10,11,12
**tort** 87:17 95:13 96:2,8
  96:8 98:24 99:2,22
  100:3,6,9,11,19
  103:10 104:7 143:1
**total** 36:4
**totally** 63:9
**tough** 56:18 123:4
**track** 147:9
**traded** 77:2
**trade-off** 97:4,25
  142:21 143:1
**trade-offs** 143:7
**training** 127:7
**transcript** 171:6 176:3
**transcription** 174:4
**TRAVELERS** 8:3
**treasurer** 53:23

**treat** 30:14 85:20
**treated** 80:11
**treatment** 32:4 82:4
  88:24 134:3 137:5
**tremendous** 147:14
**tried** 118:9 160:5
  162:8
**trouble** 127:15
**true** 25:1 75:14 76:22
  86:13 87:4 150:20
  173:10
**trust** 21:20,21,22
  22:10,11,21 23:7,12
  23:18 24:2,4,7,9,21
  26:2 29:12,20 30:18
  31:5,13 33:11 34:20
  35:15,20 36:2,11,14
  36:21 37:3,18 38:14
  38:17,18,24 39:14
  39:15,19,20,23 40:3
  40:25 41:3,9,12 42:2
  42:3,11,12,19,24
  43:8,19,21,24 44:3,8
  44:10,24 45:15,24
  47:1 49:6 50:9,15,19
  51:6,22,23 52:2,3
  53:6 54:17,24 55:15
  55:20,23 56:1,7 57:9
  57:16 58:4,5 59:4,14
  59:16 60:19 62:6,21
  63:2,12,17,20 66:9
  66:16 67:2,8 68:10
  68:16 69:5,12 70:1
  71:10 73:16,19
  74:24 75:25 76:3,11
  77:20,21 81:3,25
  82:23 84:22 85:5,9
  85:22 86:16 87:13
  88:7 90:3 91:2,5
  94:18 95:4 96:21
  99:9,17,21 100:7,10
  100:16,19,22 101:1
  101:8,14,23 103:1
  104:18,21 108:6,15
  108:16 112:25 113:9
  113:16 116:22 117:2
  117:3 118:18,19
  120:4 121:9 122:4,9
  122:15,16,18,19,22
  122:24 123:19 124:1
  125:2,10,12,19
  128:15,22 129:10,11
  129:16 130:8,22,25
  131:15 132:14,21,24
  133:7,23 135:25
  136:22 137:12,15
  139:2,15 140:14,17
  141:16 143:6 145:1
  148:12 149:9 157:10

157:13,15,16,19
  158:3,4,14 159:4,8
  159:20 160:3,9,9
  162:23 163:1,4,6,15
  163:23 164:7,11,14
  165:1 167:7 168:2
  168:13 171:9
**trustee** 26:21,23 28:8
  28:8 29:5,6,6,7,9
  40:7,8,11 47:11
  56:19 58:12,17,21
  61:14,19,23 62:2,9
  62:11,13 63:9 66:8,9
  66:12,15 67:1,2,5,7
  68:2,8,10,11,23 69:4
  69:6,7 71:5 72:18,23
  74:14 75:11,16,24
  83:7 88:1 122:21
**trustees** 20:5 23:12
  24:4 25:16,22 26:20
  26:23 27:12,15
  28:20,24 29:1 30:4
  31:12 38:18,21
  42:23 43:19 44:5
  48:12 49:8 55:19,25
  56:8,15,22,25 57:7,7
  57:15 58:2,6 59:1,6
  59:15,20 60:11,14
  60:20 61:9,15 62:4
  62:18 63:17,24
  64:19 69:25 71:19
  72:12 74:18 75:3,12
  75:16 76:7 77:2,4
  80:23 81:3,18 82:1
  82:25 83:24 84:22
  85:20 86:3 88:9,22
  89:2,3,7 94:19 95:2
  100:2 103:5,8 104:1
  104:9 106:15 115:2
  115:21 117:11 128:5
  130:3,11,19 131:16
  131:23
**trustee's** 57:12,13
  58:11 59:8 61:21,22
**trusts** 29:15,21 30:5
  38:10 54:15 63:12
  81:10,14 87:11,15
  90:15,22 104:23
  116:20,22 137:12
  158:10,18,22,25
  159:11,14
**try** 12:6 40:9 47:9
  83:24 85:20
**trying** 12:15 18:24
  33:24 38:15 55:6
  56:3 58:8 115:2
  122:11 134:3,10
  135:15 151:21
**turn** 13:5 26:3 28:11

44:21 122:3 130:22
**turning** 15:25 20:24
**two** 13:13 14:16 17:20
  19:4 20:9,12 22:7
  25:2 39:23 79:17
  84:16 95:3,5 100:14
  114:11 123:19 124:2
  126:2,11 143:6
  170:6
**Twofold** 18:17
**type** 22:7 135:6 146:11
  147:3
**types** 35:6 36:5 58:1
  93:25
**typically** 105:25

---

**U**

**ultimately** 149:8
  153:12 171:14
**Um-hmm** 39:21 43:10
  80:3 96:16 101:16
  102:4,11 119:24
  123:22 133:19
  135:18
**unanimous** 71:19
**unaware** 31:18
**undergrad** 146:21
**understand** 12:5
  24:15 29:17,25 31:7
  32:13 36:21 37:1
  38:10 42:1 43:23
  51:11 55:12 58:8
  60:23 69:15 82:17
  83:4 89:1 92:15
  101:17 102:20
  112:22 113:22
  127:19 129:17 139:1
  153:25 154:2 155:17
  155:18 156:1,13
  159:2 163:10 164:4
  167:18 168:9,10
**understandable** 12:7
**understanding** 32:21
  44:12 81:2 94:14,25
  127:15 138:3 139:6
  139:20
**understands** 98:10
**understood** 59:12
**undertake** 147:13,16
**undertaken** 108:22
  110:2
**undertaking** 43:20
**unequal** 32:4
**unfair** 32:4 116:24
**unique** 113:19
**UNITED** 1:1
**universe** 36:1 54:3
  83:18 98:23
**universities** 20:9

**University** 13:9,24
**unnumbered** 20:1
**unqualified** 52:3 78:2
  82:22 83:25 84:4,22
  85:7 99:8
**unreasonable** 28:6,10
**unreasonably** 27:23
**unrecognized** 112:3
**unrepresented** 113:20
**unsecured** 3:3 93:7
  105:12
**urged** 48:13
**urges** 169:6,8,9,14
**use** 25:20 54:5 59:19
  61:6 82:21 87:5,6
  104:12 121:10 149:6
**uses** 51:25
**usually** 127:22
**utilize** 70:18
**utilized** 90:14
**U.S** 106:14

---

**V**

**vacancies** 57:21
**vacancy** 62:1,7 70:23
  74:12,14 75:3,11
**valid** 42:15 44:14
  100:23,25
**validity** 103:10 104:8
  106:7
**value** 103:10 104:8
**values** 45:17,25 79:25
**valuing** 96:22 103:5
**Van** 1:19 4:16
**various** 29:14 30:5
  32:13 35:5 81:16
  89:8 148:23 149:3
  150:6,10
**varying** 92:14
**vast** 51:15 142:1
**venture** 14:14 15:3
**versus** 86:1 108:8,9
**veto** 28:4 70:25 74:21
  75:1 77:9
**vetos** 71:21
**viable** 100:18
**view** 31:8 37:4,23
  40:23,24 42:9,18
  48:12 50:12 51:14
  56:25 60:19 69:24
  84:11 104:16 124:9
  141:3 143:5,16,23
**views** 138:11,12
  141:10
**violate** 82:25 83:7
**violated** 19:9 93:4
**violates** 90:15 91:2
**violating** 85:1,4,5,21
  90:5

**violation** 111:7
**virtually** 23:11 24:3
**vis** 134:4,4
**vitae** 12:21 13:12
**VOICE** 89:24 115:10
  151:8,11
**vote** 71:19 141:18,22
  143:15 144:2
**voted** 144:16,25 145:6
**voters** 142:1,7
**votes** 142:15 144:19
  144:23
**voting** 143:16,23

---

**W**

**W** 8:17
**wait** 149:5,5 151:12,12
  152:5,5 154:8
  157:21,21,21,21
**waive** 126:23,25
**waivers** 107:22
**walk** 56:14
**Wall** 8:19
**want** 15:20 31:15 45:8
  45:19 46:16 49:24
  56:25 60:7 61:15
  63:24 72:20 74:4
  76:7 89:10 97:12
  114:17,21 119:10
  132:23 144:9 145:16
  152:14,15
**wanted** 24:12 61:16
  70:17
**wants** 57:16 58:13
  59:7 132:7
**warrant** 66:1
**Warren** 7:9 168:5
**warren.pratt@dbr.c...**
  7:15
**Washington** 3:21 4:19
  5:8 6:8
**wasn't** 32:17 62:15
  77:25 107:9 149:25
  150:15 160:24
**way** 18:13 19:12,15
  25:22 44:5 48:10
  49:15,21 54:5 59:7
  59:23 63:15 72:11
  75:7,10,20 77:12,14
  78:19 81:2 86:2
  88:22 89:15 92:8
  94:8,13 95:17 99:24
  100:10 101:17
  102:20 105:19
  112:10,11,13 115:25
  124:8,9 127:24
  128:12 132:8 138:12
  139:18 142:4,5
  143:10,22 145:18

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - May 14, 2009
Professor James Shein
Page 193

164:15 166:19 171:8
173:14
**ways** 45:9 59:1 80:23
89:8 94:6 99:13
**weeks** 17:22
**went** 16:11 17:23
**we'll** 40:20 46:20 77:5
170:7
**we're** 19:20 21:9 72:19
76:16,17 83:24
84:14 89:15,22
126:23 129:20 145:9
**we've** 29:19 102:10
125:8 128:9 139:13
170:13
**whatsoever** 137:1
**WHEREOF** 173:16
**white** 78:18 85:14
**WHITING** 6:16
**WHITMEYER** 8:15
**wholly** 114:5
**willful** 122:25 123:3
132:15 133:8,18
**willing** 61:20 134:16
147:13,16
**Wilmington** 7:12
**win** 144:11
**window** 31:9
**wishes** 61:20 62:5
**withhold** 27:22 28:1
28:19
**witness** 10:5 11:3,5
18:3,8 22:6 29:24
30:24 38:2 40:17
41:23 43:4 47:25
54:9 60:23 63:4
65:22 66:22 67:12
69:15 70:6 71:12
80:5 81:21 90:18
92:24 97:12,16
102:7 110:17 116:11
119:1,6 129:2 131:2
133:1,12 146:2
148:9 150:18 151:13
152:4 154:2 156:2
159:24 160:5,12
163:10,19 173:8,11
173:16 176:4
**wizard** 169:11
**word** 41:8 52:4 76:13
137:2 148:25
**worded** 75:11
**words** 14:20 28:2
102:20 108:7 111:21
112:1 149:6 166:21
**work** 12:24 29:8 55:16
73:1 75:7 92:8 99:25
101:18 109:19,20
146:11

**worked** 147:25
**working** 146:7 147:20
147:24 161:16
**works** 100:5 102:21
104:7
**world** 55:9 64:16
**worried** 72:14
**worry** 72:13
**worst** 59:10
**wouldn't** 30:4 62:16
67:21 70:11,15 74:5
74:7 77:7,14 98:7
105:14 109:21 134:5
165:22 166:3 168:23
169:1
**WRG** 21:19,21
**written** 20:3 85:2
110:22,24 127:20
**wrongfully** 19:16
**wrote** 12:16
**W.R** 1:7 4:4 11:13 36:6
43:15 73:15 81:24
90:13 91:11 98:8
141:18 165:21
166:11 167:1,6,25

X

**X** 86:6 125:19

Y

**yeah** 41:13,24 60:2
76:21 89:11 100:8
120:15 125:5 126:2
138:14,19 144:24
150:18 161:6,13,25
162:2,9 163:22
164:22 168:15
**year** 144:7,10,13
**years** 17:10,14 29:8,16
30:7
**yes-or-no** 151:21
152:15
**York** 3:9,9 5:7 8:8,8,21
8:21 9:21,21 176:14
176:14

Z

**zone** 99:14
**ZURICH** 6:3

0

**01-1139** 1:10
**07054** 6:21

1

**1** 11:1,18 19:24 120:12
177:7,16
**1-800-325-3341**

176:15
**1-800-825-3341** 1:25
**1/2** 86:1
**1:06** 89:19
**1:55** 89:19
**10** 29:16 130:20,24
**10005-1875** 8:21
**10011** 9:21 176:14
**10017-3954** 8:8
**10038-4982** 3:9
**11** 1:4 10:9 31:22
75:25 120:15 121:22
177:7,11
**11.9** 120:17 124:19
128:17 129:11
132:13 133:10
**1100** 4:18 7:11
**1152** 3:20
**116** 120:19 133:11
**12th** 6:7
**12:10** 60:5
**12:18** 60:5
**13** 32:8
**14** 1:17 10:3 36:9
40:22
**1401** 5:18
**145** 10:10
**15** 49:13
**15th** 3:20
**16** 41:15,18
**165** 10:11
**17** 40:22
**171** 10:12
**1747** 6:6
**18** 146:23
**180** 3:8
**19** 146:23
**19th** 173:17
**1900** 9:7
**19103** 9:8
**19801-1254** 7:12
**1994** 14:5
**1997** 15:10 146:5

2

**2** 11:2 13:12 19:18
20:2 21:8 22:9,9,14
27:20 33:12 45:16
71:10,12 76:1,2,3
85:18 86:1,1 177:11
**2.2(f)(9)** 75:25
**2.5** 99:12
**2:17** 115:14
**2:22** 115:14
**2:58** 138:23
**20** 29:16
**200** 2:9
**20001** 5:8
**20005** 4:19

**20005-1706** 3:21
**20006** 6:8
**2001** 14:5
**2002** 14:2
**2009** 1:17 10:3 22:5
173:17 174:12
177:15
**2019** 32:11,15 33:2,4
33:18,22
**202.339.8400** 3:22
**202.339.8500** 3:23
**202.346.4000** 5:9
**202.346.4444** 5:10
**202.429.3301** 4:21
**202.659.6629** 6:9
**202.659.6699** 6:10
**202.862.5000** 4:20
**21** 90:1
**212.269.4900** 8:22
**212.344.4294** 8:23
**212.455.2502** 8:10
**212.455.7976** 8:9
**212.806.5400** 3:10
**212.806.7936** 3:11
**214** 5:21,22
**215.665.2000** 9:9
**215.665.2013** 9:10
**22** 71:12 106:22
107:13
**23** 109:5 122:20
124:18 132:24
**23rd** 8:20
**24** 112:15 122:20
**25** 114:10,12 115:17
116:6,7,8
**2500** 2:10
**26** 114:10 117:8
**27** 22:5 177:15
**29** 119:25 129:19,25
130:25

3

**3** 22:16 23:5 28:12
31:8 85:21 86:1,2
119:22
**3:04** 138:23
**3:53** 172:13
**30** 46:17
**300** 4:7
**302.467.4201** 7:14
**302.467.4224** 7:13
**305.374.7580** 2:12
**305.374.7593** 2:13
**312.862.2200** 4:10
**312.862.3374** 4:9
**32** 26:4
**33** 177:16
**33131-5340** 2:11
**34** 138:25

**35** 114:20
**36** 140:10
**37** 114:20 115:5
141:12

4

**4** 22:11,14 33:6 45:16
114:19
**4.2(c)** 71:9 72:2
**4.3** 72:1
**4.3(a)** 74:24 75:9
**4.4** 124:18 128:15
129:9 132:14,19
133:4
**4.6** 124:15,18 128:16
129:11
**425** 8:7
**46** 30:22
**4620** 5:19

5

**5** 33:6
**5th** 176:13
**5.13** 114:11 117:9
**5.3(c)** 130:22 131:5,8
131:18 132:4
**5.6** 114:11,14,15,17,18
118:5
**5.7** 26:4,7
**5.7(b)** 31:4
**5.7(b)(2)** 27:20 28:23
31:8
**5.7(b)(3)** 28:12,24
30:20

6

**6** 23:2 24:17 33:6
**60654** 4:8
**64** 146:22
**66** 146:22
**68** 146:22

7

**7** 25:12 26:16 27:6
33:6 46:22 55:14,18
56:6 90:2
**7.13** 30:18 31:9
**74** 176:13
**744-5100** 5:21
**744-5101** 5:22
**75202** 5:20

8

**80** 9:20
**800.825.3341** 9:22

9

**9** 58:23 59:3,12 60:8

60:12,17 61:6 66:7
66:24 68:1,22 69:19
70:15 74:15 177:9
**901** 5:7
**973.734.3200** 6:22
**973.734.3201** 6:23