Exhibit 99.2

W. R. GRACE & CO., et al.
CASE NO. 01-1139 (JFK)


TERM SHEET FOR RESOLUTION OF
ASBESTOS PERSONAL INJURY CLAIMS


This Term Sheet sets forth certain of the principal terms and conditions under which the Debtors, the Official Equity Security Committee, the Official Committee of Personal Injury Claimants ("ACC") and the Future Claimants Representative ("FCR") in the above-captioned Chapter 11 cases are prepared to file a plan of reorganization ("Plan") as co-proponents providing for the resolution of all asbestos personal injury claims and liabilities, including without limitation all asbestos personal injury claims pending at the filing date of the Chapter 11 cases and those arising subsequent thereto (collectively, "Asbestos PI Claims"). This Term Sheet also sets forth the proposed treatment of other key classes of claims asserted in the Chapter 11 cases. This Term Sheet has been produced for settlement purposes only and is subject to the provisions of Rule 408 of the Federal Rules of Evidence.


I.          Treatment of Claims

A.          Asbestos PI Trust

All Asbestos PI Claims will be channeled to a trust (the "Asbestos PI Trust") that is established in accordance with Section 524(g) of the United States Bankruptcy Code. The Asbestos PI Trust will pay claims from trust assets in accordance with a trust agreement and trust distribution procedures established by the ACC and FCR in connection with the Plan.

1.          Funding of Asbestos PI Trust at Emergence. On the Effective Date of the Plan, the Asbestos PI Trust shall receive the following, each of which shall be a condition to the Plan becoming effective:

a.          Cash Payment: $250 million, plus, if the Effective Date occurs after December 31, 2008, interest from January 1, 2009 to the Effective Date accrued at the same rate applicable to Grace's senior debt.

b.          Insurance: the assignment by W. R. Grace & Co.-Conn. ("Grace") and all of its affiliates to the Asbestos PI Trust, of all insurance policies and all insurance proceeds available for payment of Asbestos PI Claims, effective as of the Effective Date, including without limitation:

i.          Any such proceeds from the date hereof of all settlements with insurance companies, and all interest accrued thereon;

-------------------------------------------------------------------------
ii.          Any proceeds of the settlement with Equitas held in escrow with all interest accrued thereon;

iii.          Any proceeds of all settlements with all insurance companies

under coverage in place agreements or installment payment arrangements where payment has not yet occurred;

iv.          Assignment of and the right to recover on all outstanding insurance policies potentially applicable to personal injury claimants; and

v.          The right to recover from all insolvent insurance estates as to which Grace or its affiliates has made a claim and the proceeds of all payments received by Grace or its affiliates from those insolvent estates after the date hereof, and all interest accrued thereon.

Provided however that Grace is in the process of examining its policies and the foregoing will not affect Grace's separate coverages, if any, for losses not arising from asbestos personal injury claims.

The ACC and FCR (or, after the Effective Date, the Asbestos PI Trust) shall control (and Grace shall cooperate in connection with) any negotiations or legal proceedings related to the underlying policies or settlement agreements applicable to Asbestos PI Claims.

c.          Warrant:  a warrant for 10 million shares of W. R. Grace & Co. ("Parent") common stock, exercisable at $17 per share, and expiring one year after the Effective Date.

d.          Cryovac, Inc. Payment: The consideration contemplated by the Sealed Air Settlement Agreement.

e.          Fresenius Medical Care Payment:  The proceeds of the payment contemplated by the Fresenius Settlement Agreement.

2.          Deferred Payment Obligations:  Grace shall make additional payments to the Asbestos PI Trust over a 15 year period as follows:  five annual payments of $110 million commencing on January 2, 2019; and 10 annual payments of $100 million commencing on January 2, 2024.  Such payment obligations shall be subordinate to any bank debt or bonds outstanding and shall be guaranteed by Parent or any successor ultimate parent entity of Grace.  Such guaranty shall be secured by an obligation of Parent to issue to the Asbestos PI Trust, in the event an additional payment is not made, the number of shares of Parent common stock which, when

2

----------------------------------------------------------------

added to the number of shares of common stock issued and outstanding as of the Effective Date, shall constitute 50.1% of the voting shares of Parent as of the Effective Date (such number of shares shall be equitably adjusted for stock splits, stock dividends, recapitalizations, corporate reorganizations or changes in control of Parent after the Effective Date).

B.          Other Classes

1.          Administrative Claims: 100% of allowed amount in cash.

2.          Priority Tax Claims: 100% of allowed amount in cash.

3.          Priority Non-Tax Claims: 100% of allowed amount in cash.

4.          Secured Claims: 100% of allowed amount either in cash or by reinstatement.

5.          Unsecured Employee Claims (post-retirement health and special pension): 100% of allowed amount by reinstatement.

6.          Workers Compensation Claims: 100% by reinstatement.

7.          Allowed General Unsecured Claims: 100% of allowed amount plus

post-petition interest as follows: (i) for holders of pre-petition bank credit facilities, post-petition interest at the rate of 6.09% from the filing date through December 31, 2005 and thereafter at floating prime, in each case compounded quarterly; and (ii) for all other unsecured claims, interest at 4.19%, compounded annually, or if pursuant to an existing contract, interest at the non-default contract rate.

8.          Allowed Environmental Claims: 100% of allowed amount in cash.

9.          Traditional Asbestos Property Damage Claims: 100% of allowed amount in cash for settled claims. The Plan shall set forth procedures for the allowance of all Asbestos PD Claims that are disputed as of the Effective Date.

10.         ZAI Claims: Unless the Plan Proponents agree otherwise as to the treatment of ZAI Claims, the court shall estimate, for purposes of allowance and distribution, any liability on account of ZAI Claims prior to or in connection with the confirmation of the Plan. ZAI Claims shall be paid 100% of their allowed amount up to the amount of the court's estimate.

II.                                    Channeling Injunctions. The Plan shall contain injunctions under Sections 524(g) and Section 105(a) of the Bankruptcy Code to protect the Debtors, Cryovac, Sealed Air, Fresenius, their affiliates, officers, directors and employees, and other parties in interest and certain insurers. The Plan shall also contain such provisions, injunctions and releases

3

--------------------------------------------------------------------------------

(i) as are necessary to comply with the terms of the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement; and (ii) to the full extent permitted by law, to indemnify, and release all of Grace's officers, directors, employees and professionals, and the members of all official committees, the FCR and their professionals, from any liability on account of claims against Grace, or arising in or in connection with these Chapter 11 cases. The foregoing injunctions, indemnifications and releases shall be at least as extensive as, and consistent with, the injunctions, indemnifications and releases provided for under Grace's Amended Plan currently filed in the Chapter 11 Cases to the extent such latter injunctions, indemnifications and releases are not inconsistent with this Term Sheet.

III.        Resolution of Outstanding Issues. The parties agree to cooperate in seeking a resolution of outstanding issues material to or not otherwise resolved in connection with the confirmation of a plan of reorganization.

IV.         Binding Effect. This Term Sheet has been approved by all necessary corporate or organizational action of the Board of Directors of

Parent and Grace, the ACC, the FCR and the Equity Committee, and shall be binding upon the parties and each of their respective successors and assigns to the fullest extent permitted by applicable law. The parties shall use their best efforts to incorporate the terms of this Term Sheet into a mutually agreeable plan of reorganization to be filed with the Bankruptcy Court as soon as possible.

V.              Confidentiality.

The parties shall treat all negotiations regarding this Term Sheet as confidential. Neither the contents nor the existence of this Term Sheet shall be disclosed by any party, either orally or in writing, except to its directors, officers, employees, legal counsel, financial advisors, accountants and clients on a confidential basis until the Debtors have issued a press release announcing the terms and conditions contained herein. Notwithstanding the foregoing, the parties agree that this Term Sheet or the terms of this Term Sheet may be disclosed to the Official Committee of Unsecured Creditors and the Official Committee of Asbestos Property Damage Claimants. Grace will provide counsel to the ACC and counsel to the FCR an opportunity to review and comment on any press release relating to this Term Sheet prior to its issuance.

4

---------------------------------------------------------------------

AGREED TO AND ACCEPTED BY:
Dated: April 6, 2008
THE DEBTORS:
W. R. GRACE & CO., on behalf of itself and its subsidiaries and affiliates that are Debtors in the Chapter 11 cases
By:
Name:                           /s/ Fred Festa
                                Fred Festa
Title:                          Chairman, President and Chief Executive
                                Officer
THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS
By:                             /s/ R. Ted Weschler
Name:                           R. Ted Weschler
Title:                          Chair of the Committee
THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS:
CAPLIN & DRYSDALE, CHARTERED, on behalf of and in its capacity as counsel to the ACC
By:                             /s/ Elihu Inselbuch
Name:                                               Elihu Inselbuch
THE FUTURE CLAIMANTS REPRESENTATIVE:
ORRICK, HERRINGTON & SUTCLIFFE LLP, on behalf of and in its capacity as counsel to the FCR
By:                             /s/ Roger Frankel
Name:                                               Roger Frankel

5

---------------------------------------------------------------------



## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF <u>EQUITY SECURITY HOLDERS DATED FEBRUARY 27, 2009</u>**

REMAINDER OF EXHIBIT OMITTED
SEE FIRST AMENDED JOINT PLAN
(D.I. 20872)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE



In re:                              )       Chapter 11
                                    )
W. R. GRACE & CO., *et al.*[1]      )       Case No. 01-01139 (JKF)
                                    )       Jointly Administered
              Debtors.              )
                                    )
                                    )
                                    )

**EXHIBIT 2 TO EXHIBIT BOOK
ASBESTOS PI TRUST AGREEMENT**

**EXHIBIT 2**

Attached.

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B.Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

REMAINDER OF EXHIBIT OMITTED
SEE EXHIBIT 2 TO EXHIBIT BOOK
(D.I. 20874)

EXHIBIT
Aecso(6X6)-11
5-1-09  LB

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                )   Chapter 11
                                      )
W. R. GRACE & CO., *et al.*[1]         )   Case No. 01-01139 (JKF)
                                      )   Jointly Administered
            Debtors.                   )
                                      )
                                      )
                                      )

EXHIBIT 4 TO EXHIBIT BOOK
TRUST DISTRIBUTION PROCEDURES

EXHIBIT 4

Attached.

---

[1]    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.),
W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon,
Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc.,
Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC
(f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a
Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC
Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities
Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary
Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe,
Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc.
(f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace
Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.
R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe
Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai
Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH,
Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings
Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA
Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental
Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin &
Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country
Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

# REMAINDER OF EXHIBIT OMITTED
# SEE EXHIBIT 4 TO EXHIBIT BOOK
# (D.I. 20874)

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE



In re:

W. R. GRACE & CO., et al.[1]

Debtors.

)
)
)
)
)
)
)
)
)
)

Chapter 11

Case No. 01-01139 (JKF)
Jointly Administered

## EXHIBIT 10 TO EXHIBIT BOOK
## COOPERATION AGREEMENT

**EXHIBIT 10**

Attached.

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

# REMAINDER OF EXHIBIT OMITTED
# SEE EXHIBIT 10 TO EXHIBIT BOOK
# (D.I. 20874)



EXHIBIT
*Att 50(6)(6) - 17*
5-4-09

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |
|  | Ref. No. 20622 |

### NOTICE OF DEPOSITION OF ASBESTOS PI COMMITTEE
### PURSUANT TO RULE 30(b)(6)

PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil Procedure and Rules 7030 and 9014 of the Federal Rules of Bankruptcy Procedure, the claimants injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants"),[1] through their undersigned counsel, will take the deposition of the Official Committee of Asbestos Personal Injury Claimants (the "Committee"), c/o Peter Van N. Lockwood, Esq., Caplin & Drysdale, Chartered, One Thomas Circle N.W., Suite 1100, Washington, DC 20005. By agreement, the deposition will commence on May 1, 2009, beginning at 9:30 a.m., at Caplin & Drysdale, Chartered, One Thomas Circle N.W., Suite 1100, Washington, DC 20005, and will continue from day to day thereafter until complete. The deposition will proceed before an officer authorized by law to administer oaths and will be recorded by audio, video and/or stenographic means. You are hereby invited to attend and examine the witness.

Pursuant to Rule 30(b)(6), the Committee shall designate one or more officers, directors, managing agents, or other persons who consent to testify on their behalf as to all facts and other information known or reasonably available to the Committee relating to the matters set forth in

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [D.I. 21365], as it may be amended and restated from time to time.

393.001-25957.doc

DKT. NO. 21454
DT. FILED 4/28/09

Attachment A. For each person designated to testify as to any matters set forth in Attachment A, the Committee is requested to produce at the deposition all documents which the person has reviewed in preparing to testify with respect to the matters as to which the person is designated to testify, and, unless already made available in discovery, all other documents relating to the matters set forth in Attachment A.

Dated: April 28, 2009.
    Wilmington, Delaware

LANDIS RATH & COBB LLP

_(signature)_

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Daniel C. Cohn
Christopher M. Candon
COHN WHITESELL & GOLDBERG LLP
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2505
Facsimile: (617) 951-0679

_Counsel for Libby Claimants_

393.001-25957.doc

## ATTACHMENT A

### I. DEFINITIONS

To the extent not defined in the Section II hereof, the following definitions shall apply for purposes of this deposition notice:

1. "Plan" means the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants Representative, and the Official Committee of Equity Security Holders dated February 27, 2009

2. The following terms have the meanings ascribed to them in the Plan:

    a. "Asbestos Insurance Entity"

    b. "Asbestos Insurance Entity Injunction"

    c. "Asbestos Insurance Rights"

    d. "Asbestos PI Channeling Injunction"

    e. "Asbestos PI Claim"

    f. "Asbestos PI Trust"

    g. "Asbestos PI Trust Distribution Procedures"

    h. "Bankruptcy Code"

    i. "Confirmation Hearing"

    j. "Debtors"

    k. "Exhibit Book"

    l. "Plan Proponents"

    m. "Settled Asbestos Insurance Companies"

393.001-25957.doc

3.    "Document" or "documents" shall have the meaning set forth in Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, the original and non-identical copy of any written, electronic, recorded, or graphic matter, however produced or reproduced, including without limitation, any correspondence, memoranda, notes, meeting minutes, telegrams, reports, transcripts, e-mails, or telephone conversations or any other writings or documentary material of any nature whatsoever, together with any attachments thereto and enclosures therewith, and any other retrievable matter (whether encarded, taped or encoded, electrostatically or otherwise), in the possession, custody, or control, of you, your agents, employees, counsel, or other representatives. Non-identical copies, drafts, and identical copies with handwriting are separate "documents" within the meaning of that term.

4.    The "Libby Claimants" shall mean the claimants injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants").[1]

## II.  SUBJECTS OF INQUIRY

Plan

1.    Development of Plan among Plan Proponents, including negotiations, other discussions between or within the Plan Proponents, and preparation of documents, including drafts.

2.    Funding of the Asbestos PI Trust, including value at time of negotiation of assets to be used to fund the Asbestos PI Trust.

3.    Current value of assets to be used to fund the Asbestos PI Trust.

4.    Projected value at scheduled Confirmation Hearing of assets to be used to fund the Asbestos PI Trust.

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [D.I. 21365], as it may be amended and restated from time to time.

2

<u>Asbestos PI Trust</u>

1.    Development of the Asbestos PI Trust Distribution Procedures, including negotiations, other discussions between or within the Plan Proponents, and preparation of documents, including drafts.

2.    Asbestos Personal Injury trust distribution procedures in other cases used as models, points of reference or in any other way utilized in the development of the Asbestos PI Trust Distribution Procedures ("Other TDPs").

3.    Liquidation of claims under Other TDPs.

4.    Process by which the Asbestos PI Trust will liquidate claims.

5.    Disease categories under the Asbestos PI Trust Distribution Procedures.

6.    The "Severe Pleural" disease category under the Asbestos PI Trust Distribution Procedures.

7.    Provisions of the Asbestos PI Trust Distribution Procedures concerning "Extraordinary Claims."

<u>Injunctions</u>

1.    The Asbestos PI Channeling Injunction.

2.    Development of Asbestos PI Channeling Injunction among Plan Proponents, including negotiations, other discussions between or within the Plan Proponents, and preparation of documents, including drafts.

3.    Injunctions in other cases similar to the Asbestos PI Channeling Injunction used as models, points of reference or in any other way utilized in the development of the Asbestos PI Channeling Injunction ("Other Channeling Injunctions").

4.    Litigation concerning scope of Other Channeling Injunctions.

393.001-25957.doc

3

5. Scope and operation of the Asbestos PI Channeling Injunction, including the effect, if any, on actions by Libby Claimants against parties other than the Debtors, including but not limited to BNSF, the State of Montana and Maryland Casualty Company, for their own allegedly tortious conduct ("Libby Claimants' Independent Actions").

6. Necessity of, or benefit to Plan Proponents or Asbestos PI Trust from, the Asbestos PI Channeling Injunction (including consideration supplied to any of the Plan Proponents by those protected by the Asbestos PI Channeling Injunction).

7. The Asbestos Insurance Entity Injunction.

8. Development of Asbestos Insurance Entity Injunction among Plan Proponents, including negotiations, other discussions between or within the Plan Proponents, and preparation of documents, including drafts.

9. Injunctions in other cases similar to the Asbestos Insurance Entity Injunction used as models, points of reference or in any other way utilized in the development of the Asbestos Insurance Entity Injunction ("Other Insurance Entity Injunctions").

10. Litigation concerning scope of Other Insurance Entity Injunctions.

11. Scope and operation of the Asbestos Insurance Entity Injunction, including the effect, if any, on Libby Claimants' Independent Actions.

12. Necessity of, or benefit to Plan Proponents or Asbestos PI Trust from, the Asbestos Insurance Entity Injunction (including consideration supplied to any of the Plan Proponents by those protected by the Asbestos Insurance Entity Injunction).

13. The Successor Claims Injunction.

14.   Development of Successor Claims Injunction among Plan Proponents, including negotiations, other discussions between or within the Plan Proponents, and preparation of documents, including drafts.

15.   Injunctions in other cases similar to the Successor Claims Injunction used as models, points of reference or in any other way utilized in the development of the Successor Claim Injunction ("Other Successor Claims Injunctions").

16.   Litigation concerning scope of Other Successor Claims Injunctions.

17.   Scope and operation of the Successor Claims Injunction, including the effect, if any, on Libby Claimants' Independent Actions.

18.   Necessity of, or benefit to Plan Proponents or Asbestos PI Trust from, the Successor Claims Injunction (including consideration supplied to any of the Plan Proponents by those protected by the Successor Claims Injunction).

19.   Release and exculpation provisions of the Plan (the "Releases and Exculpations").

20.   Development of the Releases and Exculpations among Plan Proponents, including negotiations, other discussions between or within the Plan Proponents, and preparation of documents, including drafts.

21.   Injunctions in other cases similar to the Releases and Exculpations used as models, points of reference or in any other way utilized in the development of the Releases and Exculpations ("Other Releases and Exculpations").

22.   Litigation concerning scope of Other Releases and Exculpations.

23.   Scope and operation of the Releases and Exculpations, including the effect, if any, on Libby Claimants' Independent Actions.

393.001-25957.doc

24. Necessity of, or benefit to Plan Proponents or Asbestos PI Trust from, the Releases and Exculpations (including consideration supplied to any of the Plan Proponents by those protected by the Releases and Exculpations).

25. The Plan's compliance with Section 524(g) of the Bankruptcy Code.

Liquidation Analysis

1. Liquidation analysis contained in Exhibit Book as Exhibit 8 (the "Liquidation Analysis")

2. Development of Liquidation Analysis among Plan Proponents, including negotiations, other discussions between or within the Plan Proponents, and preparation of documents.

3. Projections, assumptions, calculations and sources of information utilized in preparing Liquidation Analysis.

4. Any changes in, or changes in the validity of, any such projections, assumptions, calculations and sources of information, through the present date.

Claims History

1. The Debtors' claims history concerning Asbestos PI Claims.

2. The Debtors' settlement practices and verdict history for Asbestos PI Claims.

3. The Debtors' settlement practices and verdict history for punitive damage claims.

4. The Debtors' settlement practices and verdict history for wrongful death claims.

5. The Debtors' settlement practices and verdict history for claims resulting from exposure to the Debtors' asbestos in Lincoln County, Montana.

6. The Debtors' settlement practices and verdict history for claims resulting from exposure outside of Lincoln County, Montana, to the Debtors' asbestos originating in Lincoln County, Montana.

Rights of BNSF

1.  Claims of Burlington Northern Santa Fe Railroad and affiliates ("BNSF") against the
    Debtors.

2.  Proofs of claim filed by BNSF.

3.  Any rights of indemnification by BNSF against the Debtors, and any agreements
    pertaining thereto.

4.  Any rights of contribution by BNSF against the Debtors.

5.  Any insurance covering BNSF for Libby Claimants' Independent Actions against BNSF.

Rights of the State of Montana

1.  Claims of the State of Montana against the Debtors.

2.  Proofs of claim filed by the State of Montana.

3.  Any rights of indemnification by the State of Montana against the Debtors, and any
    agreements pertaining thereto.

4.  Any rights of contribution by the State of Montana against the Debtors.

5.  Any insurance covering the State of Montana for Libby Claimants' Independent Actions
    against the State of Montana.

Rights of Maryland Casualty Company

1.  Claims of the Maryland Casualty Company, including affiliates ("MCC") against the
    Debtors.

2.  Proofs of claim filed by MCC.

3.  Any rights of indemnification by MCC against the Debtors, and any agreements
    pertaining thereto.

4.  Any rights of contribution by MCC against the Debtors.

5. Any insurance covering MCC for Libby Claimants' Independent Actions against MCC.

<u>Insurance</u>

1. The Debtors' insurance policies (whether owned by the Debtors or purchased for another entity), coverage issues and settlements with insurers.

2. The Debtors' insurance coverage for products/completed operations, including terms thereof, aggregate caps, and defenses to and limitations on such coverage.

3. Projected value of the Asbestos Insurance Rights constituting products/completed operations coverage.

4. Projected aggregate liquidated amount of the Asbestos PI Claims (including future claims) covered by products/completed operations insurance.

5. The Debtors' insurance coverage for premises/non-completed operations, including terms thereof, aggregate caps, and defenses to and limitations on such coverage.

6. Projected value of the Asbestos Insurance Rights constituting premises/non-completed operations coverage.

7. Projected aggregate liquidated amount of the Asbestos PI Claims (including future claims) covered by premises/non-completed operations insurance.

8. Settlements with the Debtors' insurers.

9. Bases for designation under the Plan of certain Asbestos Insurance Entities as Settled Asbestos Insurance Companies.