IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., et al.,<br><br>                  Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>(Jointly Administered)<br><br>**Objection Date: August 28, 2009 @ 4:00 p.m.**<br>**Hearing Date: September 8, 2009 @ 11:00 a.m.**<br>**Related Docket No.:  21902** |

**PLAN PROPONENTS' MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF GEORGE L. PRIEST**

The Plan Proponents[1] respectfully request that the Court exclude the testimony of George L. Priest and strike his expert report.  Simply stated, Mr. Priest is not qualified as an "expert" for the purpose for which he was retained – "to address the economic effects and implications of various features of the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code."[2]  Mr. Priest's background and limited knowledge regarding economics, bankruptcy, insurance, and even this case render his expert testimony inadmissible under Federal Rule of Evidence 702.  For these reasons, and those set forth more fully below, the Court should preclude Mr. Priest from testifying and offering opinions as an expert in this matter.

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings given to them in the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated February 27, 2009 [D.I. 20872].

[2] In connection with Phase I, the Plan Proponents moved to strike Dr. Priest's report and testimony.  See Joint Motion in Limine to Strike the Expert Reports and Testimony of George L. Priest and James B. Shein, May 28, 2009 [D.I. 21902].  At the hearing on June 18, 2009, the motion was argued and the Court questioned whether Dr. Priest's testimony would be of any assistance, but ultimately reserved decision on the motion.  The Plan Proponents' incorporate herein the substantive arguments regarding the admissibility of Dr. Priest's report and testimony made in that previous motion and argument.

{D0159482.1 }

I.  **FACTS**

On March 31, 2009, Mr. Priest issued an expert report in the form of a declaration. <u>Ex. A</u>, attached hereto (hereinafter, "Expert Rep."). In his report, Mr. Priest purports to opine on "the economic effects and implications of various features of the First Amended Joint Plan of Reorganization." Expert Rep., Decl. ¶ 18. However, as demonstrated during his deposition on May 7, 2009 (and even in his expert report), Mr. Priest is not qualified to serve as an expert in this matter.

    A.    **<u>Mr. Priest Is Not An Expert In Economics</u>**

- Mr. Priest does not have any degree in economics. Instead, he has a law degree. <u>Ex. B</u>, attached hereto (hereinafter, "Priest Dep."), at 22:6-24, 23:1-4.

- Mr. Priest does not teach economics. <u>Id.</u> at 22:22-23.

- Mr. Priest does not teach a class in the Economics Department at Yale. Instead, he teaches at the Law School. <u>Id.</u> at 22:22-24; Expert Rep., Appendix I at 1.

    B.    **<u>Mr. Priest Is Not An Expert In Insurance</u>**

- Mr. Priest does not have any professional degrees, licenses, or titles in the field of insurance. Priest Dep. at 24:18-22.

- Aside from isolated "assignments" that were "more practical," Mr. Priest has only academic experience in the field of insurance. <u>Id.</u> at 25:1-16.

- Mr. Priest has not worked as an employee for an insurance company. <u>Id.</u> at 25:21-23.

- Mr. Priest has never worked as an underwriter. <u>Id.</u> at 25:24, 26:1-8.

    C.    **<u>Mr. Priest Is Not An Expert In Bankruptcy</u>**

- Mr. Priest has never published any articles primarily dealing with bankruptcy. Expert Rep., Appendix I at 1-12.

- Mr. Priest has never published any articles primarily dealing with the impact of bankruptcies on insurance company rights. <u>Id.</u>

- Mr. Priest has never taught bankruptcy. Id. at 1, 13.

- Mr. Priest has done no work advising insurance companies on regulatory issues that relate to asbestos bankruptcy matters. Priest Dep. at 217:7-11.

D.   **Mr. Priest Has No Non-Academic Experience Except Consulting**

- Since graduating law school in 1973, Mr. Priest has had no employment or experience outside the academic community except consulting. Expert Rep., Decl. ¶¶ 1-16 and Appendix I and II.

E.   **Mr. Priest Lacks Even Basic Knowledge About This Case**

- Mr. Priest has examined no evidence concerning this case. Priest Dep. at 179: 3-15.

- Mr. Priest has no specific facts about W.R. Grace & Co.'s ("Grace") position at the point it entered into bankruptcy. Id. at 88:17-20.

- Mr. Priest has never reviewed any claims or underwriting files in connection with this case. Expert Rep., Appendix III.

## II.   STANDARD FOR ADMISSION OF EXPERT OPINION AND TESTIMONY

Mr. Priest's opinions must meet the standard of evidentiary reliability enunciated in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-92 (1993) and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). Under this standard, this Court is obliged to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho, 526 U.S. at 137.

In Daubert, the Supreme Court explained that judges are to serve as gate keepers in determining the admissibility of purported expert opinions under Federal Rule of Evidence 702 to prevent the introduction of opinions reached without proper scientific foundation. See also In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 743 (3d Cir. 1994). Under Daubert, the court's gate keeping role is encouraged because when "[f]aced with a proffer of expert scientific testimony . . .

{D0159482.1 }

3

. the trial judge must determine at the outset, pursuant to Rule 104(a) whether the expert is offering an opinion as to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert, 509 U.S. at 592; see also Oddi v. Ford Motor Co., 234 F.3d 136, 144 (3d Cir. 2000). Thus, to be admissible, expert opinions must be based on reliable and scientifically valid methodology that fits with the facts of the case. Daubert, 509 U.S. at 597.[3]

In the Third Circuit, to be admissible, expert opinions must come from a qualified expert witness, be based on reliable methods, and "fit" the facts of the case. Paoli, 35 F.3d at 741-43; see also U.S. v. Mathis, 264 F.3d 321, 335 (3rd Cir. 2001). The linchpin of the Daubert/Paoli analysis, however, is an evaluation of the "relevance and reliability" of the proposed opinion. Daubert, 509 U.S. at 595; see also U.S. v. Downing, 753 F.2d 1224, 1226 (3d Cir. 1985). In assessing the reliability requirement, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief." Paoli, 35 F.3d at 742 (citing Daubert, 509 U.S. at 590); see also Bradshaw v. Capacity of Texas, Inc., 2003 WL 21973321 at *1 (E.D. Pa. 2003) (same).

In determining whether purported expert opinion satisfies the "reliability" requirement, courts consider the following factors: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether

---

[3] It is well-established that the gate keeping role recognized in Daubert is not limited simply to scientific testimony, but also applies to any case where the testimony reflects "technical or other specialized knowledge." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999)("gate keeping" requirement "applies to all expert testimony"); Elcock v. Kmart Corp., 233 F.3d 734, 744 (3rd Cir. 2000) (gate keeping function applied to non-scientific experts such as economists); Oddi, 234 F.3d at 146; Fisher v. Walsh Parts & Serv. Co., Inc., 277 F. Supp. 2d 496, 505 (E.D. Pa. 2003).

the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. Paoli, 35 F.3d at 742 n. 8; see also Kerrigan v. Maxon Indus., Inc., 223 F. Supp. 2d 626, 637 (E.D. Pa. 2002).

These factors do not comprise a rigid test, but rather make up a flexible inquiry into the overall reliability of a proffered expert's methodology. Paoli, 35 F.3d at 742 (in assessing reliability, a court need not rely exclusively on the list and may take into account other relevant factors); see also Kumho Tire, 526 U.S. at 150 (citing U.S. v. Downing, 753 F.2d at 1242) (holding that these factors do not constitute a "definitive checklist"); Elcock, 233 F.3d at 746 ("Kumho Tire makes clear that this list is non-exclusive and that each factor need not be applied in every case").

Although the factors to be applied in assessing a purported expert's opinion are flexible, particularly in cases that do not involve scientific testimony, the test for reliability is nevertheless an "exacting" one. Weisgram v. Marley Co., 528 U.S. 440, 442 (2000) (since Daubert, "parties relying on expert evidence have had notice of the exacting standards of reliability such evidence must meet"); see also Total Containment, Inc. v. Dayco Prods., Inc., 2001 WL 1167506, at *3 (E.D. Pa. 2001) (same). Accordingly, a purported expert will be held to the intellectual rigor of his field. Kumho Tire, 526 U.S. at 152; see also Elcock, at 744 (same); Hamilton v. Emerson Elec. Co., 133 F. Supp. 2d 360, 369 (M.D.Pa. 2001) (same).

## III. ANALYSIS

Here, certain insurance companies have proffered the opinion of Law Professor George Priest, the gist of which is that the First Amended Joint Plan of Reorganization "severely affect[s] the rights of Grace's insurers and the economic function of their insurance policies."

{D0159482.1 }

5

Expert Rep., Decl. ¶ 18.  However, when Daubert and its progeny are applied to Mr. Priest's opinion, it is apparent that his proffered opinion is inadmissible because it fails to meet the reliability requirements established by Rule 702.

As a threshold matter, Mr. Priest is simply unqualified to testify as an expert in this matter.  He is not an expert in economics, insurance, or bankruptcy – the fields at issue in this proceeding.  See supra at 2-3.  He is a lawyer.  Legal opinions are not expert testimony.  See e.g., United States v. Leo, 941 F.2d 181, 196 (3d Cir. 1991) ("not permissible for a witness to testify as to the governing law").  Application of law to facts falls within the purview of the trier of fact, not an expert witness.  See In re Initial Public Offering Sec. Litig., 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law").

Furthermore, Mr. Priest did not perform any particular analysis with respect to Grace, and therefore, his opinions are both unreliable and irrelevant with respect to this proceeding.  For example, Mr. Priest did not consider whether the handling of the Trust claims under the Trust's distribution procedures would produce less favorable economic outcomes for the insurance companies than if Grace had not gone into bankruptcy and continued to handle claims with its insurance companies as before.  Priest Dep. at 136:15-24, 137:1-3.  He further testified that he has no knowledge concerning how Grace was handling the tort claims against it as of the date it declared bankruptcy, and that he has no factual basis for comparing the provisions in the TDP matrix with the criteria and values utilized by Grace and its insurance companies for settling claims prior to the bankruptcy petition.  Priest Dep. at 34:17-22, 35:1-2, 143:2-12.  Mr. Priest even admitted that he was "just making economic assumptions about the generalities of insurer conduct and the generalities of insured's conduct and the economic incentives … associate[d]

with those generalities." Id. at 179:6-15.  While the insurance companies may argue that there is nothing to dispute regarding economics as a field of study, the problem lies with Mr. Priest's unreliable application and methodology.

In addition to being unreliable and irrelevant, Mr. Priest's opinions are not even consistent.  Mr. Priest states in his Expert Report that "[t]he more realistic resolution of these issues is to include Grace's insurers in the working out of the distribution of remaining Grace assets – including its insurance assets – toward the equitable settlement of the asbestos claims against Grace." Expert Rep., Decl. ¶ 55.  In his deposition, however, he concedes that sometimes "litigation is the appropriate way to resolve cases" and admits that he has no personal knowledge or ability to describe what that settlement would be or the likelihood that the parties could agree to it.  Priest Dep. at 162:12-13; 163:2-7.  Considering Mr. Priest's ill-suited qualifications to serve as an expert in this proceeding as well as his demonstrably unreliable and irrelevant opinions, the Court should preclude Mr. Priest from serving as an expert witness and exclude his expert report.

### IV.    CONCLUSION

For the aforementioned reasons, the Plan Proponents respectfully request that this Court exclude Mr. Priest's expert report and proposed testimony.

Dated: August 14, 2009  
Wilmington, Delaware

Respectfully submitted,

KIRKLAND & ELLIS LLP  
David M. Bernick, P.C.  
Theodore L. Freedman  
Lisa G. Esayian  
601 Lexington Avenue  
New York, NY  10022  
Telephone: (212) 446-4800  
Facsimile: (212) 446-4900

Barbara Harding
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*and*

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
70 W. Madison Street
Suite 2100
Chicago, IL 60602
Telephone: (312) 641-2162

*and*

PACHULSKI, STANG, ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James E. O'Neill (Bar No. 4042)
Timothy Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
jo'neill@pszjlaw.com

*Counsel for the Debtors and Debtors in Possession*


CAMPBELL & LEVINE, LLC

*/s/ Mark T. Hurford*
Mark T. Hurford (No. 3299)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone:  (302) 426-1900
Facsimile:  (302) 426-9947
mhurford@camlev.com

*and*

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

Peter Van N. Lockwood
Nathan D. Finch
James P. Wehner
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone:  (202) 862-5000
Facsimile:  (202) 429-3301

*Counsel for the Official Committee*
*of Asbestos Personal Injury Claimants*

ANDERSON KILL & OLICK, P.C.
Robert M. Horkovich
Mark Garbowski
Robert Y. Chung
1251 Avenue of the Americas
New York, NY  10020
Telephone:  (212) 278-1000
Facsimile:  (212) 278-1733

*Insurance Counsel for the Official Committee of*
*Asbestos Personal Injury Claimants*


PHILIPS, GOLDMAN & SPENCE, P.A.

*/s/John C. Philips*
John C. Philips (Bar No. 110)
1200 North Broom Street
Wilmington, DE 19806
Telephone:  (302) 655-4200
Facsimile:  (302) 655-4210
jcp@pgslaw.com

*and*

ORRICK, HERRINGTON & SUTCLIFFE LLP
Roger Frankel
Richard H. Wyron
Jonathan P. Guy
1152 15th Street, NW

{D0159482.1 }

9

Washington, DC 20005
Telephone: (202) 339-8400
Facsimile: (202) 339-8500

*Counsel for David T. Austern,*
 *Asbestos PI Future Claimants' Representative*


SAUL EWING LLP

*/s/ Teresa K.D. Currier*_____
Teresa K.D. Currier (Bar No. 3080)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Telephone:  (302) 421-6800
Facsimile:  (302) 421-6813
tcurrier@saul.com

*and*

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Philip Bentley
David E. Blabey, Jr.
1177 Avenue of the Americas
New York, NY 10022
Telephone:  (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee*
*of Equity Security Holders*