*Execution*

6.04. <u>Consent and Approvals</u>.    No consent, waiver, approval, order, Permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Authority is required on the part of Buyer in connection with the execution and delivery of this Agreement or the Transaction Documents, the consummation of the Transactions or the compliance by Buyer with any of the provisions hereof or thereof.

6.05. <u>Binding Effect</u>.  This Agreement constitutes and, when executed and delivered at the Closing, each of the Transaction Documents to be executed by Buyer will constitute, a valid and legally binding obligation of Buyer, enforceable in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium, fraudulent transfer and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles (whether in equity or at law).

6.06. <u>Sufficient Funds</u>.  Buyer has (or has access to through its wholly-owned Subsidiaries) on the date hereof and will have on the Closing Date and Deferred Payment Date, as the case may be, sufficient funds to consummate the Transactions and to meet its obligations under this Agreement.

6.07. <u>Brokers</u>.  No Person has acted directly or indirectly as a broker, finder or financial advisor for Buyer in connection with the negotiations relating to the transactions contemplated by this Agreement, and no Person is entitled to any fee or commission or like payment in respect thereof based in any way on any agreement, arrangement or understanding made by or on behalf of Buyer.

6.08. <u>Litigation</u>.  There are no (a) Proceedings pending or, to Buyer's Knowledge, threatened against Buyer or (b) orders to which Buyer is subject that, in each case, individually or in the aggregate, could reasonably be expected to prevent Buyer from performing its obligations under this Agreement or the Transaction Documents or prevent or materially delay the consummation of the Transactions.

*Execution*

## Article 7.

### Buyer's Investigation

7.01. <u>Investigation</u>. Buyer has conducted its own investigation and has made its own evaluation of the Business, the Transferred Assets and the Transferred Liabilities.

7.02. <u>Financial Information</u>. As part of its investigation, Buyer has been given certain financial statements, forecasts, projections, opinions and other material prepared or furnished by the Seller Group or their representatives with respect to the Business and the Transferred Assets (the "<u>Due Diligence Information</u>"). There are uncertainties inherent in attempting to make projections and forecasts, formulate opinions and prepare other business information; Buyer is familiar with such uncertainties, and except to the extent set forth in <u>Article 5</u> of this Agreement, is not relying on any of the Due Diligence Information. Except for the specific representations and warranties in <u>Article 5</u>, neither Seller nor any other member of the Seller Group shall have any liability of any kind to Buyer or any other Buyer Entity with respect to any of the Due Diligence Information.

7.03. <u>No Additional Representations</u>. The representations and warranties made by Seller in <u>Article 5</u> are in lieu of and are exclusive of all other representations and warranties, including any implied warranties, regarding the Business, the Transferred Assets or the Transferred Liabilities. The Seller hereby disclaims any such other representations and warranties, including any implied warranties, notwithstanding the delivery or disclosure to Buyer of any documentation or other information (including without limitation any financial projections). Buyer acknowledges that it has not relied upon any representations and warranties, including any implied warranties, promises, inducements or statements of intention relating to the Transactions made by Seller or any Affiliate or related Person that is not set forth in this Agreement, notwithstanding the delivery or disclosure to Buyer of any documentation or other information (including any financial projections or other supplemental data). None of the representations or warranties made by Seller in this Agreement is or shall be construed or deemed to be made with respect to any Excluded Asset or Excluded Liability or any contract, note or other instrument or document constituting, evidencing or relating to any Excluded Asset or Excluded Liability.

*Execution*

## Article 8.

### Covenants of Seller and Buyer

8.01. <u>Bankruptcy Court Actions</u>.

(a)     Unless Seller receives a Third-Party Bid (as hereinafter defined), Seller shall use commercially reasonable efforts to have the Bankruptcy Court approve the Sale Order and obtain any other approvals or consents from the Bankruptcy Court that may be reasonably necessary to consummate the Transactions.

(b)     Buyer shall use commercially reasonable efforts to assist Seller in obtaining approval of the Sale Order, including providing testimony as required at any hearing before the Bankruptcy Court.

(c)     Notwithstanding anything to the contrary set forth in this Agreement, Seller shall be free to take any action with respect to any offer that it may receive prior to the entry of the Sale Order for a sale of the Business and/or the Transferred Assets to a Third-Party (a "<u>Third-Party Bid</u>") including, providing information to, negotiating with and signing an agreement with a Third-Party regarding a Third-Party Bid, filing a motion with the Bankruptcy Court to approve the sale contemplated by a Third-Party Bid, recommending that such approval be granted and closing the sale contemplated by a Third-Party Bid.

8.02. <u>Notices to Third Parties</u>.  Buyer and Seller shall cooperate to make all other filings and to give notice to all Third Parties that may reasonably be required to consummate the Transactions.

8.03. <u>Commercially Reasonable Efforts</u>.  In making commercially reasonable efforts as required under any provision of this Agreement, no Party shall be required to undertake extraordinary or unreasonable measures, make any payment (other than for reasonable legal fees, unless otherwise provided) that it is not presently contractually required to make, divest any assets, make any change in the conduct of its business or that of the Business, accept any limitation on the future conduct of its business, enter into any other agreement or arrangement with any Person that it is not presently contractually required to enter into, accept any significant modification to its obligations under any existing agreement or arrangement that is to continue

*Execution*

after the Closing, except as contemplated by this Agreement or the Transaction Documents, or agree to any of the foregoing.

8.04. <u>Waiver of Bulk Sales Law Compliance</u>. Buyer hereby waives compliance by Seller with the requirements, if any, of <u>Article 6</u> of the Uniform Commercial Code as in force in any state in which Transferred Assets are located and all other laws applicable to bulk sales and transfers, to the extent applicable to the Transactions ("<u>Bulk Sale Laws</u>"). Seller agrees that any Sale Order submitted to the Bankruptcy Court hereunder shall contain a provision absolving Buyer from any liability under any Bulk Sale Laws.

8.05. <u>Mail or Other Communications Received After Closing</u>. On and after the Closing Date, each Party may receive and open all mail or other communications addressed to the other Party and deal with the contents thereof in its discretion to the extent that such mail or other communications and the contents thereof relate to the Business or the Transferred Assets. Each Party agrees to keep and cause to be kept confidential the contents of, and to deliver or cause to be delivered promptly to the other Party, all other mail or communications received by such Party which are addressed to the other Party.

8.06. <u>Taxes.</u>

(a)    Seller shall be responsible for the preparation and filing of all Tax Returns, applicable to the Business and the Transferred Assets, in each case attributable to taxable years or periods or portions thereof ending on the day preceding the Closing Date.

(b)    Buyer shall be responsible for the preparation and filing of all Tax Returns, applicable to the Transferred Assets that are attributable to taxable years, periods or portions thereof beginning on the Closing Date.

(c)    After the Closing Date, Seller and Buyer will, and will cause their respective Affiliates to: (i) assist in all reasonable respects the other Party in preparing any Tax Returns which such other Party is responsible for preparing and filing; (ii) cooperate in all reasonable respects in preparing for any audits of, or disputes with taxing authorities regarding, any Tax Returns concerning the Transferred Assets or the Business; (iii) make available to the other Party and to any taxing authority as reasonably requested by the other Party all information, Records,

*Execution*

and documents relating to Taxes concerning the Transferred Assets or the Business; (iv) provide timely notice to the other Party in writing of any pending or threatened Tax audits or assessments relating to Taxes concerning the Transferred Assets or the Business for taxable periods for which the other Party may have a liability under this Agreement; and (v) furnish the other Party with copies of all correspondence received from any taxing authority in connection with any Tax audit or information request with respect to any such taxable period.

8.07. <u>Listing, Testing and Code Agency Approvals</u>. Seller shall use commercially reasonable efforts (at the sole cost of Buyer), and Buyer shall cooperate with such efforts, to transfer to Buyer, or otherwise qualify Buyer under, all Code Testing Approvals effective on the Closing Date or as soon as practicable thereafter. If this Agreement is terminated prior to Closing, Buyer shall use commercially reasonable efforts (at the sole cost of Buyer), to terminate the transfer or qualification of Buyer under all Code Testing Approvals and, if necessary, to transfer to Seller, or otherwise qualify Seller under, all Code Testing Approvals as soon as practicable after the termination of this Agreement. The obligations of Buyer in the preceding sentence shall survive the termination of this Agreement.

### Article 9.

### Conduct of Business Prior to the Closing

Seller agrees that except as otherwise consented to by Buyer, from the date of this Agreement until the Closing, Seller shall conduct the Business only in the ordinary course of business and consistent with prior practice.

### Article 10.

### Conditions Precedent to Buyer's Obligations

All obligations of Buyer under this Agreement are subject, at Buyer's option, to the fulfillment prior to or at the Closing, of each of the following conditions:

10.01. <u>Accuracy of Representations and Warranties</u>. Each and every representation and warranty of Seller contained herein that is qualified as to materiality shall be true and correct in all respects at and as of the Closing Date, and each of the representations and warranties of Seller contained herein that is not so qualified shall be true and correct in all material respects with the

*Execution*

same force as if made on and as of the Closing Date, except for: (i) changes that have not had and could not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect; and (ii) those representations and warranties that address matters only as of a particular date.

10.02. <u>Performance of Covenants and Agreements</u>.  Seller shall have performed, or complied with, in all material respects all of the covenants and agreements required to be performed, or complied with, by Seller at or prior to the Closing Date pursuant to this Agreement.

10.03. <u>Permits, Consents, etc.</u>

(a)    There shall be no material consent, approval or authorization of, or declaration to or filing with, any Governmental Authority required in connection with the Transactions that has not been accomplished or obtained and which may not be accomplished or obtained after the Closing Date without penalty or other adverse consequences to the Buyer Entities.

(b)    No Law shall have been enacted by a Governmental Authority that prohibits the consummation of the Transactions contemplated by this Agreement, and no judgment, order, decree or injunction enjoining or preventing the consummation of the Transactions contemplated by this Agreement shall be in effect.

10.04. <u>Litigation</u>.  No Proceeding, including any proceeding before the Bankruptcy Court, shall have been instituted (and remain pending on the Closing Date) against any Seller Entity or Buyer Entity that questions, or reasonably could be expected to lead to subsequent questioning of, the validity or legality of this Agreement, the Transaction Documents or the Transactions which, if successful, would materially adversely affect the right of the Buying Companies to consummate the Transactions or to continue the Business substantially as currently operated or that might involve material liability on the part of any Buyer Entity.

10.05. <u>Certificates of Seller</u>.

*Execution*

(a)     Seller shall have delivered to Buyer a certificate of Seller, dated the Closing Date, signed by the President or any Vice President of Seller certifying that the conditions set forth in Sections 10.01 and 10.02 have been satisfied.

(b)     Seller shall have delivered to Buyer a certificate of Seller, dated the Closing Date, signed by the Secretary or an Assistant Secretary of Seller, certifying:  (i) that the Transaction Documents to which Seller is a party have been duly authorized, executed and delivered by Seller; and (ii) the incumbency of the officers executing and delivering the Transaction Documents on behalf of Seller.

(c)     Buyer shall have received a certificate of good standing of the Seller in its jurisdiction of organization.

10.06. Bankruptcy Court Approval.  The Sale Order shall have been entered.

## Article 11.

## Conditions Precedent to Seller's Obligations

All obligations of Seller under this Agreement are subject, at Seller's option, to the fulfillment prior to or at the Closing, of each of the following conditions:

11.01. Accuracy of Representations and Warranties.  Each and every representation and warranty of Buyer contained herein that is qualified as to materiality shall be true and correct in all respects at and as of the Closing Date, and each of the representations and warranties of Buyer contained herein that is not so qualified shall be true and correct in all material respects with the same force as if made on and as of the Closing Date, except for:  (i) changes which have not had and could not reasonably be expected to have, individually or in the aggregate, a material adverse effect upon the ability of the Buyer to consummate the Transactions; and (ii) those representations and warranties that address matters only as a particular date.

11.02. Performance of Covenants and Agreements.  Buyer shall have performed, or complied with, in all material respects, all of the covenants and agreements required to be performed, or complied with, by Buyer at or prior to the Closing Date pursuant to this Agreement.

*Execution*

11.03. Permits, Consents, etc.

(a)     There shall be no material consent, approval or authorization of, or declaration to or filing with, any Governmental Authority required in connection with the Transactions which has not been accomplished or obtained and which may not be accomplished or obtained after the Closing Date without penalty or other material adverse consequences to the Seller Group.

(b)     No Law shall have been enacted by a Governmental Authority that prohibits the consummation of the Transactions contemplated by this Agreement, and no judgment, order, decree or injunction enjoining or preventing the consummation of the Transactions contemplated by this Agreement shall be in effect.

11.04. Litigation.   No Proceeding, including any proceeding before the Bankruptcy Court, shall have been instituted (and remain pending on the Closing Date) against any Seller Entity or Buyer Entity that questions, or reasonably could be expected to lead to subsequent questioning of, the validity or legality of this Agreement, the Transaction Documents or the Transactions which, if successful, would materially adversely affect the right of any of the Selling Companies to consummate the Transactions or might involve material liability on the part of any Seller Entity.

11.05. Certificates of Buyer.

(a)     Buyer shall have delivered to Seller a certificate of Buyer, dated the Closing Date, signed by the President or a Vice President of Buyer, certifying that the conditions set forth in Sections 11.01 and 11.02 have been satisfied.

(b)     Buyer shall have delivered to Seller a certificate of Buyer, dated the Closing Date, signed by the Secretary or an Assistant Secretary of Buyer, certifying: (i) that resolutions of the Board of Directors of Buyer authorizing the Transactions and the execution, delivery and performance of the Transaction Documents to which Buyer is a party have been duly adopted and have not been amended but remain in full force and effect as of the Closing Date; (ii) that the Transaction Documents to which Buyer is a party have been duly authorized, executed and delivered by Buyer; (iii) the incumbency of the officers executing and delivering the Transaction

*Execution*

Documents on behalf of Buyer; and (iv) the adoption of authorizing resolutions with respect to the Transactions.

(c)     Seller shall have received a certificate of good standing of the Buyer in its jurisdiction of organization.

11.06. <u>Bankruptcy Court Approval</u>.  The Sale Order shall have been entered.

## Article 12.

### Termination

12.01. <u>Rights to Terminate</u>.

(a)     This Agreement may be terminated at any time prior to the Closing by mutual written agreement of Seller and Buyer.

(b)     This Agreement may be terminated by Buyer or Seller if the Sale Order has not been entered by September 30, 2009.

(c)     This Agreement may be terminated by Buyer or Seller if the Bankruptcy Court enters an order approving competitive bidding procedures for the Transferred Assets.

(d)     This Agreement may be terminated by Buyer if any of the conditions in <u>Article 10</u> are not capable of being satisfied by September 30, 2009.

(e)     This Agreement may be terminated by Seller if any of the conditions in <u>Article 11</u> are not capable of being satisfied by September 30, 2009.

(f)     This Agreement may be terminated by either Party if the Closing does not occur by September 30, 2009 (provided that no Party may terminate if the failure to close is the result of a breach of the Sale Agreement by that Party).

(g)     Subject to <u>Section 8.01(c)</u>, this Agreement may be terminated by either Party if the Bankruptcy Court approves an order authorizing the sale of the Transferred Assets to another Person.

*Execution*

12.02. Consequences of Termination. Each Party's right of termination under Section 12.01 is in addition to any other rights it may have under this Agreement or otherwise, and the exercise of such right of termination will not be an election of remedies. The provisions of, and obligations of the Parties, under this Section 12.02, Section 13.07 and Section 15.01 and Article 16 and Article 17 and the obligations of Buyer under Section 8.07 shall survive any termination of this Agreement. In addition, if this Agreement is terminated because of a breach of this Agreement by the non-terminating Party or because one or more of the conditions to the terminating Party's obligations under this Agreement is not satisfied as a result of the non-terminating Party's failure to comply with its obligations under this Agreement, the terminating Party's right to pursue all legal remedies will survive such termination unimpaired.

## Article 13.

## Indemnification

13.01. Definitions. As used in this Agreement:

(a)     "Claim" means any claim, demand or Proceeding, including any proceeding before the Bankruptcy Court.

(b)     "Damages" means, subject to Section 13.07, any and all penalties, fines, damages, liabilities, losses or costs, including, in each case, Litigation Expenses (except as otherwise provided in this Article 13), less the amount of any proceeds actually received by any Indemnified Party under any insurance policy. "Damages" shall include Damages actually incurred by a Seller Entity or Buyer Entity on whose behalf a Party makes an Indemnification Claim, pursuant to any valid legal obligation (existing as of the date of this Agreement) of such Seller Entity or Buyer Entity to indemnify a director, officer or employee of such Seller Entity or Buyer Entity (each a "Related Person") in respect of a Third-Party Claim only if such Seller Entity or Buyer Entity has valid legal rights (existing as of the date of this Agreement) in respect of its obligations in respect of a Third-Party Claim against such Related Person no less favorable to such Seller Entity or Buyer Entity than Indemnifying Party's rights set forth in this Article 13 and such rights are assigned to Indemnifying Party.

(c)     "Direct Claims" means Claims other than Third-Party Claims.

*Execution*

(d)    "Indemnification Claim" means a Claim for indemnification under this Agreement, including without limitation, a Claim for indemnification for a Third-Party Claim.

(e)    "Indemnified Party" means a Party seeking indemnification under this Agreement.

(f)    "Indemnifying Party" means a Party against whom indemnification under this Agreement is sought.

(g)    "Litigation Expenses" means reasonable attorneys' fees and other costs and expenses incident to Proceedings, demands or investigations respecting, or the prosecution or defense of, a Claim.

(h)    "Third-Party Claim" means a Claim by any Person, other than Seller Entities or Buyer Entities, which could give rise to a right of indemnification under this Article 13.

13.02. Seller's Indemnification.

(a)    Subject to the terms and limitations of this Article 13, Seller shall indemnify Buyer against any Damages actually incurred by the Buyer Entities (collectively, the "Buyer Indemnitees") that are caused by or arise out of:  (i) the failure of Seller to perform and fulfill any covenant or agreement to be performed by it under this Agreement; (ii) any breach of any representation or warranty of Seller set forth in Article 5; and (iii) any of the Excluded Liabilities, including without limitation, Excluded Liabilities related to Environmental Matters and Tax.

(b)    The representations and warranties of Seller set forth in Article 5 shall survive the Closing and, except for Section 5.03 (Authorization) and Section 5.18 (Brokers), shall expire and be of no further force and effect at 5:00 p.m. U. S. Eastern Time on the eighteen (18) month anniversary of the Closing Date.  The representations and warranties of Seller set forth in Sections 5.03 and 5.18 shall survive until the expiration of the relevant statute of limitations as it may be tolled or extended.

13.03. Buyer's Indemnification.

*Execution*

(a)    Subject to the terms and limitations of this Article, Buyer shall indemnify Seller against any Damages actually incurred by the Seller Entities (collectively, the "Seller Indemnitees") which are caused by or arise out of: (i) the failure of any Buying Company to perform or fulfill any provision or agreement to be performed or fulfilled by it under this Agreement; (ii) any inaccuracy in any representation or breach of any warranty of Buyer set forth in Article 6; (iii) the failure of any Buyer Entity subsequent to the Closing to perform or fulfill its or any Seller Entity's obligations under any contract, agreement or obligation included in the Transferred Liabilities; (iv) any of the Transferred Liabilities, including without limitation, Transferred Liabilities related to Environmental Matters and Tax; and (v) subject in addition to the terms and conditions set forth in Section 14.11, the Removal and/or the Disposal.

(b)    The representations and warranties of Buyer set forth in Article 6 shall survive the Closing and, except for Section 6.02 (Authorization) and Section 6.07 (Brokers), shall expire and be of no further force and effect at 5:00 p.m. U. S. Eastern Time on the eighteen (18) month anniversary of the Closing Date. The representations and warranties of Buyer set forth in Sections 6.02 and 6.07 shall survive until the expiration of the relevant statute of limitations as it may be tolled or extended.

13.04. Limitations.

(a)    Buyer shall not assert any Indemnification Claim on behalf of any Buyer Indemnitee (a "Buyer's Claim"), and Seller shall not be liable, with respect to the breach of any representation or warranty in Article 5 unless: (i) Buyer has notified Seller in writing in accordance with Section 16.01 within the applicable survival period, if any, set forth in Section 13.02(b); (ii) such Buyer's Claim gives rise to Damages (excluding Litigation Expenses for purposes of the threshold set forth in this clause (ii) only) in excess of $5,000; and (iii) the aggregate amount of all Buyer's Claims asserted under clause (ii) shall exceed $20,000, and then only with respect to the excess of such aggregate Buyer's Claims over said $20,000. The limits specified in clauses (ii) and (iii) of the preceding sentence shall not apply to Buyer's Claims with respect to the breach by Seller of any representation or warranty in Sections 5.03 and 5.18. In no event shall the aggregate amount of Buyer's rights to indemnification with respect to all Buyer's Claims under Section 13.02(a)(ii) exceed ten percent (10%) of the Purchase Price.

*Execution*

(b)    Seller shall not assert any Claim for indemnification on behalf of any Seller Indemnitee (a "Seller's Claim"), and Buyer shall not be liable, with respect to the breach of any representation or warranty in Article 6, unless: (i) Seller has notified Buyer in writing in accordance with Section 16.01 within the applicable survival period, if any, set forth in Section 13.03(b); (ii) such Seller's Claim gives rise to Damages (excluding Litigation Expenses for purposes of the threshold set forth in this clause (ii) only) in excess of $5,000; and (iii) the aggregate amount of all Seller's Claims asserted under clause (ii) shall exceed $20,000, and then only with respect to the excess of such aggregate Seller's Claims over said $20,000. The limits specified in clauses (ii) and (iii) of the preceding sentence shall not apply to Seller's Claims with respect to the breach by Buyer of any representation or warranty in Sections 6.02 and 6.07. In no event shall the aggregate amount of Seller's rights to indemnification with respect to all Seller's Claims under Section 13.03(a)(ii) exceed ten percent (10%) of the Purchase Price.

(c)    The dollar thresholds set forth in this Section 13.04 relating to breaches of representations and warranties have been negotiated for the special purpose of the provisions to which they relate, and are not to be taken as evidence of the level of "materiality" for purposes of any statutory or common law which may be applicable to the Transactions under which a level of materiality might be an issue.

13.05. Defense of Third-Party Claims.

(a)    Buyer shall notify Seller in writing promptly after learning of any Third-Party Claim for which Buyer intends to seek indemnification on behalf of any Buyer Indemnitee from Seller under this Agreement, or to have taken into account for purposes of the dollar thresholds in Section 13.04. Seller shall notify Buyer in writing promptly after learning of any Third-Party Claim for which Seller intends to seek indemnification on behalf of any Seller Indemnitee from Buyer under this Agreement, or to have taken into account for purposes of the dollar thresholds in Section 13.04. It shall be a necessary condition of any rights to indemnification or payment with respect to any Third-Party Claim, or for such Third-Party Claim to be taken into account for purposes of the dollar thresholds under Section 13.04, that the Indemnified Party notify the Indemnifying Party prior to the time when Indemnifying Party's ability to contest the Third-Party Claim would be materially impaired by lack of notice but in no event more than ten (10)

*Execution*

days after any Seller Indemnitee, if Seller is the Indemnified Party, or any Buyer Indemnitee, if Buyer is the Indemnified Party, has notice of the Third-Party Claim. If Buyer does not give such notice of a Third-Party Claim, it shall be deemed to have waived as to itself and all Buyer Indemnitees all rights to indemnification or payment with respect to such Third-Party Claim. If Seller does not give such notice of a Third-Party Claim, it shall be deemed to have waived as to itself and all Seller Indemnitees all rights to indemnification or payment with respect to such Third-Party Claim.

(b)    Indemnifying Party shall have the right to undertake the defense of a Third-Party Claim of which Indemnified Party has notified Indemnifying Party, by providing written notice to Indemnified Party not later than sixty (60) days after receipt by Indemnifying Party of Indemnified Party's notice of the Claim, or such shorter period required to take any action or make any reply or answer timely, that it desires to undertake the defense of such Claim. Failure on the part of Indemnifying Party to so notify Indemnified Party that it will undertake such defense shall be deemed to be a waiver of Indemnifying Party's right to undertake such defense. If Indemnifying Party undertakes the defense of any Third-Party Claim, it shall control the investigation and defense thereof and Indemnified Party shall fully cooperate with Indemnifying Party with respect to such investigation and defense and, subject to Indemnifying Party's control rights, Indemnified Party may participate in such investigation and defense, solely at its own expense. If Indemnifying Party does not undertake the defense of a Third-Party Claim, then Indemnified Party shall control such investigation and defense and, subject to Indemnified Party's control rights, Indemnifying Party may participate in such investigation and defense, solely at its own expense.

(c)    The Parties shall make available to each other, their counsel and other representatives, all information, documents, employees, representatives and agents reasonably available to them which relate to any Third-Party Claim, and otherwise cooperate as may reasonably be required in connection with the investigation and defense thereof.

13.06. Unsuccessful Indemnification Claims; Damages. If an Indemnified Party makes an Indemnification Claim against an Indemnifying Party, to the extent it is determined that such Indemnifying Party is not liable pursuant to this Agreement to indemnify such Indemnified Party

*Execution*

for such Indemnification Claim, Indemnified Party shall indemnify such Indemnifying Party for Damages incurred by such Indemnifying Party arising from such Indemnification Claim, including without limitation, Litigation Expenses incurred by such Indemnifying Party in defending against such Indemnification Claim or incurred by such Indemnifying Party in connection with any related Third-Party Claim pursuant to Section 13.05.

13.07. No Consequential or Lost Profit Damages; Exclusive Remedy. Seller shall not seek or be entitled to on behalf of any Seller Indemnitee, and Buyer shall not seek or be entitled to on behalf of any Buyer Indemnitee, any incidental, indirect or consequential damages or damages for lost profits in any Indemnification Claims that are Direct Claims under this Article, except as shall be paid to a Person, other than Seller Indemnitees or Buyer Indemnitees, pursuant to a Third-Party Claim, nor shall Seller, on behalf of any Seller Indemnitee or Buyer, on behalf of any Buyer Indemnitee accept payment of any award or judgment against any Party for such indemnification to the extent that such award or judgment includes such Seller Indemnitee's or Buyer Indemnitee's incidental, indirect or consequential damages or damages for lost profits. Each of Seller, on behalf of itself and each Seller Indemnitee, and Buyer, on behalf of itself and each Buyer Indemnitee, acknowledges and agrees that its sole and exclusive remedy following the Closing Date with respect to any and all Claims relating to this Agreement, the Transactions, the Transferred Assets and the Business (other than Claims for fraud or requesting equitable relief), shall be pursuant to the indemnification provisions set forth in this Agreement.

13.08. Characterization of Indemnity Payment for Tax Purposes. All amounts payable under Sections 13.02 or 13.03 shall be treated for all Tax purposes as adjustments to the Purchase Price, except as otherwise required by Law.

## Article 14.

## Post-Closing Matters

14.01. Mutual Cooperation.

(a)     After the Closing, each Party shall, and shall cause its Subsidiaries to, cooperate with the other Party and its Subsidiaries as reasonably requested by such other Party in connection with the prosecution or defense of any claims or other matters relating to the

*Execution*

Business. Such cooperation shall include the furnishing of testimony and other evidence, permitting access to employees and providing information regarding the whereabouts of former employees.

(b)    Seller and Buyer shall use commercially reasonable efforts to obtain any certificate or other document from any Governmental Authority or other Person as may be necessary to mitigate, reduce or eliminate any Tax that could be imposed (including, any Tax with respect to the Transactions).

14.02. <u>Preservation of Files and Records</u>.  For a period of three (3) years after the Closing, Buyer shall preserve all files and records in its possession relating to the Business and the Transferred Assets prior to the Closing, allow Seller access to such files and records and the right to make copies and extracts therefrom upon three (3) Business Days notice, at any time during normal business hours, and not dispose of any thereof.

14.03. <u>Reports</u>.  Buyer shall provide such assistance as Seller may reasonably request at Seller's expense for Seller's preparation of financial, Tax and other reports and statements relating to the Business for periods prior to the Closing Date.  Seller shall provide such assistance as Buyer may reasonably request at Buyer's expense for Buyer's preparation of financial, Tax and other reports and statements relating to the Business for periods after the Closing Date.

14.04. <u>Renewal of Guaranteed Items</u>.  Without the prior written consent of Seller, Buyer shall not, and shall not permit any other Buyer Entity to, renew or extend the term of, increase its obligations under, or transfer to a Third-Party, any lease, loan, contract or other obligation for which Seller or any other Seller Entity is liable as guarantor, original tenant, primary obligor or otherwise, unless all obligations of any member of the Seller Group with respect thereto are thereupon terminated by documentation satisfactory in form and substance to Seller.

14.05. <u>"Grace" and "Grace Construction Products" Names</u>.

(a)    The Buyer Entities shall have no right to use the "Grace" and/or "Grace Construction Products" names or other Seller Marks.  Buyer shall indicate whenever selling finished goods manufactured by Buyer that are packaged in packaging raw materials that contain

*Execution*

a Seller Mark that the Seller Mark is a company name, product name, logo or trademark of Seller.

(b)    After the Closing Date, Buyer may distribute or otherwise use catalogs and sales, marketing and promotional materials that contain Seller Marks solely in connection with the operation of the Transferred Assets; provided however, that Buyer shall:  (i) wherever practical, remove or cover any Seller Marks or Seller contact information on such materials; or (ii) to the extent that it is not practical to remove or cover a Seller Mark or Seller contact information on such materials, indicate in writing on such materials that any products or services included in such materials are offered for sale by Buyer with Buyer's contact information and that any Seller Mark on such materials is a company name, product name, logo or trademark of Seller.  After the date that is one hundred eighty (180) days after the Closing Date, Buyer shall cease to distribute or use catalogs and sales, marketing and promotional materials or other written materials that contain Seller Marks and shall destroy all such materials in its possession.

(c)    Seller owns and shall continue to own all Seller Marks, and Buyer shall have no claim or right in the Seller Marks.  Seller and its Affiliates shall retain all rights in the Seller Marks, and shall be entitled to all uses of the Seller Marks that existed prior to this Agreement, as well as to any and all future uses of the Seller Marks anywhere throughout the world.  Buyer and its Affiliates shall not register the Seller Marks or any other marks or names similar to the Seller Marks in its own name or have any other Person register the Seller Marks, or use the Seller Marks except under the circumstances provided in Section 14.05(a), above.

14.06. <u>Intercompany Agreements</u>.  Any contracts, licenses, agreements, commitments or other arrangements between any other Seller Entity and Seller related to the Business, whether written or oral, and whether express or implied, pursuant to which Seller or any other Seller Entity provides management, administrative, legal, financial, accounting, data processing, insurance, technical support or other services to the Business, or the use of any assets of any Seller Entity, or pursuant to which any rights, privileges or benefits are accorded to Seller related to the Business, shall terminate as of the Closing.  After the Closing, none of the Buyer Entities shall have any rights under any similar contract, license, agreement, commitment or arrangement with Seller or any other Seller Entity.

*Execution*

14.07. Covenant Not To Compete.

(a)     As a material inducement to Buyer to enter into this Agreement and to consummate the Transactions contemplated hereby, on behalf of the Seller Group, Seller agrees to the covenants and agreements set forth in this Section 14.07 for the benefit of Buyer Group.

(b)     No member of the Seller Group at any time from and after the Closing Date and through the fifth (5th) anniversary of the Closing Date (the "Noncompetition Term"), without the prior written consent of Buyer, shall directly or indirectly engage in the manufacture and sale of the Products and the products of Buyer set forth on Schedule 14.07(b) (collectively with the Products, the "Scheduled Products") in the Western Hemisphere, Europe, the Middle East, Australia, Asia and the Far East; or (ii) acquire control of more than one percent (1%) of the then-outstanding voting equity interests in a publicly-traded entity engaged in the manufacture and sale of the Scheduled Products in such region; provided however that the foregoing shall not apply to:  (A) the manufacture or sale of the Scheduled Products in such region in connection with Seller's efforts to liquidate Unsalable Inventory; (B) the manufacture or sale of the Scheduled Products in such region by a business acquired by Seller after the Closing Date if, in the year prior to such acquisition, its net sales of such products in such region were less than the lesser of:  (1) $0.5 million, or (2) ten percent (10%) of the net sales of the entire acquired business; or (C) the manufacture or sale of the Scheduled Products in such region by a unit of a business acquired by Seller after the Closing Date if Seller divests such unit within one (1) year after its acquisition.

(c)     The Parties agree and stipulate that the agreements and covenants contained in this Section 14.07 are fair and reasonable in light of all of the facts and circumstances of the relationship between Buyer and Seller; however, Buyer and Seller are aware that in certain circumstances courts have refused to enforce certain agreements not to compete.  Therefore, in furtherance of, and not in derogation of the provisions of this Section 14.07, Buyer and Seller agree that in the event a court should decline to enforce the provisions of Section 14.07, that Section 14.07 shall be deemed to be modified or reformed to restrict the Seller Group's competition with Buyer and its Affiliates to the maximum extent, as to time, geography and business scope, which the court shall find enforceable; provided, however, in no event shall the

*Execution*

provisions of Section 14.07 be deemed to be more restrictive to the Seller Group than those contained herein. Notwithstanding the provisions of this Agreement or the other Transaction Documents, Seller is expressly permitted to take any actions deemed necessary or advisable by Seller in its sole discretion to liquidate any Unsalable Inventory.

    14.08. Nonsolicitation.

    (a)    Seller, on behalf of the Seller Group, agrees that without the written consent of Buyer, at any time from and after the Closing Date and through the second anniversary of the Closing Date (the "Nonsolicitation Term") the Seller Group will not directly or indirectly through the actions of any other Person, whether for its own benefit or for that of another Person: (i) directly to solicit for employment any individual who came to the attention of Seller Group as a result of the Transactions and who as of the Closing Date was an employee of Buyer; or (ii) take any action, or advise or assist any Person in taking any action, that would interfere with or damage the relationships between Buyer and Persons that were customers, distributors, manufacturer's representatives and suppliers of the Business during the twelve (12) months prior to the Closing Date. As used in this Section 14.08, the term "solicit" shall not include, without limitation, general advertising for applicants for a position, engaging a recruiting firm to search for and screen prospects for a position (so long as no Seller Entity has instructed such recruiting firm to specifically seek employees of Buyer), or solicitation of an individual who contacts a Seller Entity or recruiting firm on his or her own initiative.

    (b)    Buyer, on behalf of the Buyer Group, agrees that the Buyer Group will not (and will not permit any of its Affiliates to), at any time during the Nonsolicitation Term, directly or indirectly through the actions of any other Person, whether for its own benefit or for that of another Person solicit for employment any individual (other than, following the Closing, the Business Executive and Persons whose employment with Seller is terminated by Seller other than for cause) who came to the attention of Buyer Group as a result of the Transactions and who as of the Closing Date was an employee of Seller; provided however, that notwithstanding the foregoing, until the Closing Date, Seller may conduct negotiations with the Business Executive regarding possible employment of the Business Executive after the Closing but may not hire or otherwise retain the services of the Business Executive.

*Execution*

14.09. <u>Confidentiality</u>. Seller, on behalf of the Seller Group, acknowledges that during the course of their ownership of the Transferred Assets they have acquired highly specialized and technical knowledge with respect to the Business and the Transferred Assets, including, but not limited to, product designs, formulations, vendors, customers, distributors, product designs, manufacturing processes, manufacturer's representatives and distributors (the "<u>Confidential Information</u>"). Confidential Information excludes information that is or becomes available to the public other than as a result of a disclosure by the Seller Group in violation of this <u>Section 14.09</u>. Seller and the Seller Group recognize that the integrity and value of the Transferred Assets is dependent upon the confidentiality of the Confidential Information and that the protection of the Confidential Information against unauthorized disclosure or use is of critical importance to Buyer. Seller, on behalf of the Seller Group, agrees that, during the Noncompetition Term, Seller Group shall treat the Confidential Information in accordance with Seller Group's internal procedures relating to the protection of internal confidential information. If any member of the Seller Group is subpoenaed, or is otherwise required by Law to testify concerning any Confidential Information, Seller agrees (if and to the extent permitted by Law) to notify Buyer upon receipt of a subpoena so that Buyer may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. If such waiver or such protective order or other remedy is not obtained, the Seller Group shall furnish only that portion of the Confidential Information that it is advised by its legal advisers is legally required and shall exercise commercially reasonable efforts (at the sole cost of Buyer) to obtain reliable assurance that confidential treatment shall be accorded the Confidential Information. In any event, the Seller Group will not oppose action by Buyer or any of its Affiliates to obtain an appropriate protective order or other reliable assurance that confidential treatment shall be accorded the Confidential Information. Notwithstanding the foregoing, nothing in this Agreement shall prevent Seller Group from disclosing or otherwise using Confidential Information in defending against any Buyer Claim pursuant to <u>Article 13</u>.

14.10. <u>Obligations For Accounts Receivable And Inventory After Closing</u>.

(a)    In the event that Seller or any of its Affiliates receives any payment relating to any of the Transferred Accounts Receivable on or after the Closing Date, it shall be immediately (but in no event more than thirty (30) days after receipt) paid over to Buyer. In the event that

*Execution*

Buyer or any of its Affiliates receives any payment relating to any account receivable that either is not included in the Transferred Accounts Receivable or is included in Uncollectible Accounts Receivable, it shall be immediately (but in no event more than thirty (30) days after receipt) paid over to Seller.

(b)     From the Closing Date until the date which is one hundred eighty (180) days after the Closing Date, Buyer shall use commercially reasonable efforts to collect the Transferred Accounts Receivable and utilize the Transferred Inventory.  For purposes of this Section 14.10, such "commercially reasonable efforts" shall prevent Buyer from selling any products of Buyer (other than Transferred Inventory) that meet the same end-use as the Products remaining in the Transferred Inventory to any Person that is set forth on the customer list included in the Transferred Assets pursuant to Section 2.01(e) unless such Person was a customer of Buyer during the twelve (12) months prior to the Closing Date.

14.11. Removal/Disposal of Transferred Assets.

(a)     Starting on the Closing Date, Buyer shall complete the removal of all Transferred Assets from the Plant and all Transferred Inventory that is not located at the Plant, from the Seller facility at which such Transferred Inventory is located (the "Removal") no later than thirty (30) days after the Closing Date (the "Removal Date").  Buyer shall conduct the Removal in a manner that does not disrupt Seller's operations and Buyer shall ensure that Buyer and any Persons retained by Buyer to conduct the Removal on Buyer's behalf (the "Movers") comply with all procedures and safety requirements of Seller (that have been provided to Buyer prior to the commencement of the Removal) and all applicable Laws, including without limitation, all Environmental Laws, in connection with the Removal.  Buyer shall ensure that the Movers are covered by insurance that in coverage and amount is reasonable for the industry.

(b)     If Buyer fails to complete the Removal with respect to all or any portion of the Transferred Assets within fourteen (14) days after the Removal Date, at the sole option of Seller, exercisable at any time prior to the completion of the Removal by Buyer, Seller may convert to its own use, dispose of, or sell such Transferred Assets (the "Disposal").  Seller shall keep the proceeds or benefit from any use or sale of the Transferred Assets, without any offset or claim by Buyer for such proceeds or benefit, and Seller shall invoice Buyer and Buyer shall pay Seller for

*Execution*

any disposal, decommissioning or removal costs related thereto. All invoices under this Section 14.11 shall be due and payable within ten (10) days of receipt. Seller shall charge and Buyer shall pay interest for any late payments at the Specified Rate determined as of the date the invoice is due. Charging such interest shall not constitute a waiver of Buyer's failure to pay on time or an election of remedies.

(c)    If Buyer fails to complete the Removal by the Removal Date, Seller shall invoice Buyer and Buyer shall pay Seller in advance a monthly storage fee of ten thousand dollars ($10,000.00) (the "Storage Fee"), and shall continue to pay such Storage Fee every month thereafter until the Removal or Disposal is completed.

(d)    In connection with the Removal of all or any portion of the Transferred Assets, Buyer may prepare a written plan setting forth in reasonable detail the manner in which Buyer and/or the Movers intend to conduct the Removal (a "Removal Plan") and submit that Removal Plan to Seller for approval. If, with respect to the Transferred Assets or any portion thereof, Seller has approved a Removal Plan, Buyer shall indemnify Seller from all Damages, including without limitation, Third-Party Claims, arising from or relating to: (i) Buyer's or the Movers' failure to conduct the Removal in accordance with the Removal Plan; (ii) otherwise caused by the negligence, gross negligence, recklessness or willful misconduct of Buyer or the Movers in conducting the Removal; and (iii) any Claim brought by any Buyer Indemnitee, any Related Person of any Buyer Indemnitee, the Movers or any director, officer or employee or Affiliate of the Movers. If, with respect to the Transferred Assets or any portion thereof, Seller has not approved a Removal Plan, Buyer shall indemnify Seller from all Damages arising from or relating to the Removal, including without limitation, Third-Party Claims. Buyer shall indemnify Seller from all Damages arising from or relating to the Disposal, including without limitation, Third-Party Claims. Seller shall invoice Buyer and Buyer shall pay Seller for any Damages for which it is liable under this Section 14.11(d).

### Article 15.

### Expenses

15.01. Expenses. Except as otherwise expressly provided herein, Seller and Buyer shall each pay its own expenses in connection with this Agreement and the Transactions.

*Execution*

15.02. <u>Transfer Taxes</u>.  Seller will pay any stamp duty, sales, transfer, value added, gross receipts, excise, recording, registration or similar Tax or closing costs applicable to this Agreement, the transfer to the Buying Companies of the Transferred Assets pursuant to this Agreement, any other Transaction Document or the Transactions.

15.03. <u>Property Prorations</u>.  The following prorations relating to the Transferred Assets shall be made at Closing:

(a)     All personal property Taxes and assessments, whether general or special, and all *ad valorem* and other Taxes levied with respect to the Transferred Assets or any other tangible asset included in the Transferred Assets for any taxable period that includes any period before the Closing Date and ends after the Closing Date shall be prorated on a calendar-year basis, with Seller being liable for such Taxes attributable to the days in the calendar year prior to the Closing Date and Buyer being liable for such Taxes attributable to days in the calendar year on or after the Closing Date.

(b)     If any of the foregoing proration amounts cannot be determined as of the Closing Date due to final invoices not being issued as of the Closing Date, Seller and Buyer shall prorate such items as and when the actual invoices are issued to the appropriate Party.  The Party owing amounts to the other by means of such prorations shall pay the same within thirty (30) days after delivery of a written request by the paying Party.

## Article 16.

### Notices

16.01. <u>Notices</u>.  All notices, requests, demands and other communications required or permitted to be given under this Agreement or any of the other Transaction Documents shall be deemed to have been duly given if in writing and delivered personally or by private delivery service, delivered by facsimile transmission, or delivered by first-class, postage prepaid, registered or certified mail, addressed as follows:

*Execution*

If to Seller:

> W. R. Grace & Co.-Conn.
> 7500 Grace Drive
> Columbia, Maryland 21044
> Attention: Corporate Secretary
> Fax: (410) 531-4545
> Confirmation:  (410) 531-4362

If to any of the Buying Companies:

> The RectorSeal Corporation
> 2601 Spenwick Drive,
> Houston, Texas  77055
> Attention: Corporate Secretary
> Fax:  (713) 263-7577
> Confirmation:  (713) 263-8001

Any Buying Company may change the address to which such communications are to be directed to it by giving written notice to Seller in the manner provided above.  Seller may change the address to which such communications are to be directed to it by giving written notice to Buyer in the manner provided above.

## Article 17.

## General

17.01. Entire Agreement.   This Agreement, together with the other Transaction Documents and the Confidentiality Agreement, sets forth the entire agreement and understanding of the Parties and related Persons with respect to the subject matter hereof and supersedes all prior agreements, arrangements and understandings relating thereto.

17.02. Governing Law.   This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to conflicts-of-laws principles that would require the application of any other law.

17.03. Submission to Jurisdiction.   Each Party hereby irrevocably submits in any proceeding arising out of or relating to this Agreement or any of the Transaction Documents to which it is or will be a party, or any of its obligations hereunder or thereunder, to the jurisdiction of the Bankruptcy Court or, after the Chapter 11 Cases is closed, any federal or state court in the

*Execution*

State of Delaware, and waives any and all objections to such jurisdiction that it may have under the laws of the State of Delaware or any other jurisdiction.

17.04. Third-Party Beneficiaries. This Agreement is for the sole benefit of the Parties and their permitted successors and assigns, and nothing herein expressed or implied will give or be construed to give to any Person, other than the Parties and such permitted successors and assigns, any legal or equitable rights hereunder.

17.05. Assignment; Successors.

(a)    This Agreement, and those Transaction Documents that do not have their own provisions governing assignment, may not be assigned in whole or part by either Party without the prior written consent of the other Party.

(b)    This Agreement shall be binding upon the Parties and their successors and permitted assigns.

17.06. Amendments and Waivers. This Agreement may be amended, superseded or canceled, and any of the terms hereof may be waived, only by a written instrument specifically referring to this Agreement and specifically stating that it amends, supersedes or cancels this Agreement or waives any of its terms, executed by Seller and Buyer. Failure of any Party to insist upon strict compliance with any of the terms of this Agreement in one or more instances shall not be deemed to be a waiver of its rights to insist upon such compliance in the future, or upon compliance with other terms hereof.

17.07. Counterparts. This Agreement may be executed in two or more counterparts, each of which counterparts may be signed by any one or all of the Parties. Each such counterpart shall be an original, but all such counterparts shall constitute but one agreement.

17.08. Time is of the Essence. With regard to all dates for payments and notices set forth or referred to in this Agreement, time is of the essence.

17.09. Attorney's Fees. Should any litigation be commenced between the Parties concerning this Agreement, the Transactions, the Transferred Assets and the Business (other than litigation pursuant to Article 13), the Party prevailing in such litigation shall be entitled, in

*Execution*

addition to such other relief as may be granted, to a reasonable sum as and for attorney's fees, which sum shall be determined by the court in such litigation or in a separate action brought for that purpose.

[Signatures Next Page]

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first above written.

**W. R. GRACE & CO.-CONN.**          **THE RECTORSEAL CORPORATION**


By: _____          By: _____

      Name:  D. Andrew Bonham                Name:  David M. Smith
      Title:  President, Grace                Title:  President
            Construction Products

## BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT

This Bill of Sale and Assignment and Assumption Agreement (this "Agreement") is made as of September [  ], 2009, by and between W. R. Grace & Co.-Conn., a Connecticut corporation ("Seller") and The RectorSeal Corporation, a Delaware corporation ("Buyer, and collectively with Seller, the "Parties" and each, a "Party")

This Agreement is being delivered pursuant to the Asset Purchase Agreement dated August 18, 2009 (the "Sale Agreement"), by and between Seller and Buyer, as approved by an order of the United States Bankruptcy Court for the District of Delaware dated September [   ], 2009. Capitalized terms used but not defined herein are used with the definitions given them in the Sale Agreement.

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

1.    (a)    Seller does hereby sell, assign, transfer, convey and deliver to Buyer free and clear of all Liens (other than Permitted Liens) to the maximum extent permissible under section 363 of the Bankruptcy Code, and Buyer does hereby purchase, acquire and accept from Seller, all of the right, title and interest of Seller in, to and under any and all of the Transferred Assets.

(b)    Buyer does hereby assume and shall be liable for, and shall pay, perform and discharge, the Transferred Liabilities.

2.    This Agreement is subject to the terms and conditions of the Sale Agreement. Neither the representations and warranties nor the rights and remedies of either Party under the Sale Agreement shall be deemed to be enlarged, modified or altered in any way by this Agreement.

**[Signatures Next Page]**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first above written.

**W. R. GRACE & CO.-CONN.**                    **THE RECTORSEAL CORPORATION**

By: _D. Andrew Bonham_                          By: _____
    Name:  D. Andrew Bonham                          Name:  David M. Smith
    Title:  President, Grace Construction              Title:  President
        Products

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first above written.

**W. R. GRACE & CO.-CONN.**                    **THE RECTORSEAL CORPORATION**

By: _____                 By: _____
     Name:  D. Andrew Bonham                           Name:  David M. Smith
     Title:  President, Grace                              Title:  President
           Construction Products

# EXHIBIT A

## BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT

This Bill of Sale and Assignment and Assumption Agreement (this "Agreement") is made as of September [  ], 2009, by and between W. R. Grace & Co.-Conn., a Connecticut corporation ("Seller") and The RectorSeal Corporation, a Delaware corporation ("Buyer, and collectively with Seller, the "Parties" and each, a "Party")

This Agreement is being delivered pursuant to the Asset Purchase Agreement dated August 18, 2009 (the "Sale Agreement"), by and between Seller and Buyer, as approved by an order of the United States Bankruptcy Court for the District of Delaware dated September [   ], 2009. Capitalized terms used but not defined herein are used with the definitions given them in the Sale Agreement.

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

1.      (a)      Seller does hereby sell, assign, transfer, convey and deliver to Buyer free and clear of all Liens (other than Permitted Liens) to the maximum extent permissible under section 363 of the Bankruptcy Code, and Buyer does hereby purchase, acquire and accept from Seller, all of the right, title and interest of Seller in, to and under any and all of the Transferred Assets.

(b)      Buyer does hereby assume and shall be liable for, and shall pay, perform and discharge, the Transferred Liabilities.

2.      This Agreement is subject to the terms and conditions of the Sale Agreement.  Neither the representations and warranties nor the rights and remedies of either Party under the Sale Agreement shall be deemed to be enlarged, modified or altered in any way by this Agreement.

**[Signatures Next Page]**

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**W. R. GRACE & CO.-CONN.**　　　　**THE RECTORSEAL CORPORATION**


By: _____　　By: _____
　　　Name:  D. Andrew Bonham　　　　　Name:  David M. Smith
　　　Title:  President　　　　　　　　　Title:  President
　　　Grace Construction Products

# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Docket No. _____** |
| | ) | **9/21/09 Agenda Item No. __** |

**ORDER (A) APPROVING THE AGREEMENTS BY AND BETWEEN
W. R. GRACE & CO.-CONN. AND THE RECTORSEAL CORPORATION;
(B) AUTHORIZING THE SALE OF CERTAIN ASSETS OF W. R. GRACE & CO.-
CONN.'S FIRESTOPPING AND ABATEMENT BUSINESS TO THE RECTORSEAL
CORPORATION, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS; (C) AUTHORIZING THE ASSUMPTION AND
ASSIGNMENT TO THE RECTORSEAL CORPORATION OF CERTAIN
EXECUTORY CONTRACTS; AND (D) GRANTING CERTAIN RELATED RELIEF**

This matter coming on to be heard on the motion[2] dated August 18, 2009 [Docket No.

_____] (the "Sale Motion") of W. R. Grace & Co.-Conn., as debtor and debtor in possession (the

"Selling Debtor" and together with the other above-captioned debtors, the "Debtors") for entry of

an order (i) approving the Asset Purchase Agreement, dated August 18, 2009 between the Selling

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn, A-1 Bit &, Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc, Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp, Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]  Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Sale Agreement (as defined below) and the Sale Motion, and to the extent of any inconsistency, the Sale Agreement shall govern.

Debtor and The RectorSeal Corporation (the "<u>Buyer</u>") appended hereto as <u>Exhibit A</u> (the "<u>Sale Agreement</u>" and, together with all related exhibits, attachments and ancillary agreements, the "<u>Agreements</u>");[3] (ii) authorizing the sale of certain assets (the "<u>Acquired Assets</u>") to the Buyer free and clear of all Liens, claims, and other interests in accordance with the terms and conditions set forth in the Sale Agreement; (iii) authorizing the assumption by the Selling Debtor and the assignment to the Buyer of certain related executory contracts (the "<u>Transferred Contracts</u>"); (iv) taking effect immediately by virtue of this Court waiving the 10-day stay under Bankruptcy Rules 6004(h) and 6006(d); and (v) granting certain related relief (collectively, the "<u>Sale Order</u>"); the Selling Debtor having executed the Sale Agreement; all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and it appearing that the Court has jurisdiction over this matter; the Court having reviewed and considered the Sale Motion and the objections thereto, if any; it appearing that the relief requested in the Sale Motion and approval of the Sale to Buyer of the Acquired Assets, including the Selling Debtor's assumption and assignment to Buyer of the Transferred Contracts, is in the best interests of the Selling Debtor, its affiliates, their estates, creditors and other parties in interest; and based on the Sale Motion and the record in these cases; and after due deliberation thereon; and good cause appearing therefore, it is hereby

FOUND AND DETERMINED THAT:[4]

### Jurisdiction, Final Order and Statutory Predicates

A.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(h)(2) and this Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 over the Sale Motion

---

[3]   Due to their voluminous and/or confidential and proprietary nature, the exhibits and schedules to the Sale Agreement are intentionally omitted from <u>Exhibit</u> A, but are included for the purposes of applicability of this Sale Order, by this reference.

[4]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the

and each of the transactions contemplated by the Agreements (collectively, the "Sale"). Venue of this proceeding and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.    The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363(b), (f), (m) and (n), and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. as amended (the "Bankruptcy Code"), Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1(b) and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

### Notice of the Sale and Cure Amounts

D.    Actual written notice of the Sale Hearing, the Sale Motion, the Sale and the assumption and assignment of the Transferred Contracts, and a reasonable opportunity to object or to be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested parties and entities, including, but not limited to; (i) the U.S. Trustee;

---

following findings of fact constitute conclusions of law, they are adopted as such.    To the extent any of the following

(ii) counsel to the Committees and the FCRs; (iii) counsel to the administrative agents for the Debtors' prepetition lenders; (iv) counsel to the Debtors' postpetition lenders; (v) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (vi) the Buyer and its counsel; (vii) all persons or entities known or reasonably believed to have asserted a Lien on any of the Acquired Assets; (viii) federal, state and local taxing authorities who have a reasonably known interest in the relief requested by this Motion, including the Internal Revenue Service; (ix) the U.S. Environmental Protection Agency and the Pension Benefit Guaranty Corporation; (x) the counterparty to each of the Transferred Contracts; (xi) all persons or entities known or reasonably believed to have expressed an interest in acquiring assets of the Selling Debtor that are the subject of the Sale Agreement; and (xii) the United States Attorneys for the Districts of Delaware, Pennsylvania and Maryland.

E.    As evidenced by the certificate of service previously filed with the Court, (i) proper, timely, adequate and sufficient notice of the Sale Motion, the Sale Hearing, and the Sale, including, without limitation, the assumption and assignment of the Transferred Contracts, has been provided in accordance with sections 102(1), 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Sale Motion, the Sale Hearing or the Sale, including, without limitation, the assumption and assignment of the Transferred Contracts and the proposed cure amounts, is or shall be required.

F.    As part of the Sale Motion, the Selling Debtor has served notice of the Cure Amounts (as such term is defined below), if any, upon each non-Debtor counterparty to the

---

conclusions of law constitute findings of fact, they are adopted as such.

Transferred Contracts that the Selling Debtor seeks to assume and assign to the Buyer on the Closing Date. The service of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a Cure Amount for the respective Transferred Contracts. Non-Debtor counterparties to the Transferred Contracts have had an opportunity to object to the Cure Amount, if any, set forth in the notice.

G.    The disclosures made by the Selling Debtor concerning the Agreements, the Sale, and the Sale Hearing were good, complete and adequate.

### Good Faith of Buyer

H.    The Buyer is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

I.    The Sale Agreement and each of the other Agreements was negotiated, proposed and entered into by the Selling Debtor, on the one hand, and the Buyer, on the other hand, without collusion, in good faith, and from arm's length bargaining positions. Neither the Selling Debtor nor the Buyer has engaged in any conduct that would cause or permit all or any part of the Sale or any obligation of the Selling Debtor under the Agreements to be avoided under section 363(n) of the Bankruptcy Code.

J.    The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby, and otherwise have proceeded in good faith in all respects in connection with this proceeding in that: (a) the Sale Agreement provides that Seller is free to take any action with respect to any offer that it may receive prior to the entry of the Sale Order for a sale of the business and/or the Acquired Assets to a third party; (b) all payments to be made by the Buyer and other agreements

or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (c) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (d) no common identity of directors or controlling stockholders exists between the Buyer, on the one hand, and the Debtors, on the other hand; and (e) the negotiation and execution of the Sale Agreement and other Agreements related thereto was at arm's-length and in good faith. The Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale.

### Highest and Best Offer

K.    The Selling Debtor has thoroughly and effectively marketed the Acquired Assets for sale in an appropriate manner that was designed to maximize the value received by the Selling Debtor for the Acquired Assets.

L.    The consideration provided by the Buyer pursuant to the terms of the Agreements: (i) is fair and reasonable, (ii) is the highest and otherwise best offer for the Acquired Assets, and (iii) will provide a greater recovery for the Selling Debtor's estate than would be provided by any other available alternative.

M.    The Selling Debtor's determination that the Agreements constitute the highest and best offer for the Acquired Assets, including the Transferred Contracts, constitutes a valid and sound exercise of the Selling Debtor's business judgment pursuant to section 363(b) of the Bankruptcy Code.

N.    Approval of the Sale Motion and the Agreements and the consummation of the Sale contemplated thereby at this time are in the best interests of the Selling Debtor, its affiliates, their creditors, their estates and other parties in interest.

O.     The Selling Debtor has demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

P.     No consents or approvals, other than those expressly provided for in the Sale Agreement, are required for the Selling Debtor to consummate such Sale.

## No Fraudulent Transfer

Q.     The Purchase Price constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

## Validity of Transfer

R.     The Sale has been duly and validly authorized by all necessary corporate action of the Selling Debtor, which has full corporate power and authority to execute and deliver the Sale Agreement and each of the other Agreements. Except as expressly set forth therein, no further consents or approvals are required for the Selling Debtor to consummate the Sale contemplated by the Agreements.

S.     On the date of closing of the Sale Agreement (the "Closing Date"), the Selling Debtor's transfer of the Acquired Assets, including its assumption and assignment to the Buyer of the Transferred Contracts, will be a legal, valid and effective transfer that, except for the "Transferred Liabilities" and any "Permitted Liens" (each as defined in the Sale Agreement), will vest the Buyer with all of the Debtors' rights, title, and interests in the Acquired Assets free and clear of all liens, claims, encumbrances, mortgages, Liens (as defined in the Sale Agreement), security interests, conditional sale or other retention agreements, pledges, rights,

guarantees, judgments, demands, easements, charges, defects, options, ownership interests, liabilities, obligations, interests, taxes, levies, charges, assessments, defenses, setoffs, recoupments, title retention contracts, leases, subleases, agreements, commitments, options to purchase, rights of first refusal and restrictions of all kinds, and any other claims or encumbrances of whatever kind or nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Interests"), including but not limited to those (i) arising under doctrines of successor liability, (ii) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal or termination of the Debtors' or the Buyer's interest in such assets or contracts, or any similar rights and/or (iii) that relate to taxes arising under or out of, in connection with, or in any way relating to the operation or use of the Acquired Assets prior to the Closing Date (including, without limitation, any and all liens which may arise under any state and federal law statute by reason of the Debtors' or Buyer's failure to comply with any other applicable statute relating to bulk or bulk sales laws).

T.    The Buyer would not have entered into the Sale Agreement and would not consummate the Sale contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the transfer of the Acquired Assets were not, except for the Transferred Liabilities and any Permitted Liens, free and clear of all Interests of any kind or nature whatsoever, or if the Buyer would, or in the future could, be liable for any of the Interests.

### Section 363(f) is Satisfied

U.    The Selling Debtor may sell the Acquired Assets free and clear of all Interests (other than Permitted Liens and Transferred Liabilities) because, in each case, one or

more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those non-Debtor parties with Interests in the Acquired Assets who did not object, or who withdrew their objections, to the Sale Agreement, the Sale or the Sale Motion are deemed to have consented pursuant to sections 363(f)(2) and 365 of the Bankruptcy Code. Those non-Debtor parties with Interests in the Acquired Assets who did object fall within one or more of the other subsections of sections 363(f) and 365 of the Bankruptcy Code and are not entitled to adequate protection or are adequately protected by having their Interests, if any, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim an interest.

V.      Except as expressly set forth in the Sale Agreement, the transfer of the Acquired Assets to the Buyer shall in no way impose any liability or obligation upon the Buyer for Interests related to the Debtors' operation of its businesses or use of the Acquired Assets. The Buyer shall not be deemed, as a result of any action taken in connection with the purchase of the Acquired Assets or the assignment of the Transferred Contracts, to: (i) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Transferred Liabilities and any obligations arising under the Transferred Contracts from and after the Closing Date as expressly stated in the Sale Agreement); or (ii) have, *de facto* or otherwise, merged with or into any of the Debtors. The Buyer is not acquiring or assuming any liability, warranty or other obligation of the Debtors, except as expressly set forth in the Sale Agreement with respect to the Transferred Liabilities.

W.      Except for the Transferred Liabilities, the transfer of the Acquired Assets to the Buyer, including the Selling Debtor's assumption and assignment to the Buyer of the Transferred Contracts, will not subject the Buyer to any liability whatsoever with respect to the

operation of the Debtors' businesses prior to the Closing Date or by reason of such transfer under the laws of the United States, any state, territory or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including, without limitation, any theory of antitrust, successor or transferee liability.

### Assumption and Assignment of the Transferred Contracts

X.    The Selling Debtor has demonstrated that it is an exercise of its sound business judgment to assume and assign the Transferred Contracts in connection with the consummation of the Sale, and the Selling Debtor's assumption and assignment to the Buyer of the Transferred Contracts is in the best interests of the Selling Debtor, its affiliates, their estates and their creditors. The Transferred Contracts being assigned to the Buyer are an integral part of the Acquired Assets purchased by the Buyer and, accordingly, the assumption and assignment of the Transferred Contracts is reasonable, enhances the value of the Selling Debtor's estate and does not constitute unfair discrimination.

Y.    Pursuant to and in accordance with the Sale Agreement, the Selling Debtor and/or the Buyer have (i) cured any default existing prior to the date hereof under each of the Transferred Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Transferred Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code; and (iii) provided adequate assurance of its future performance of and under the Transferred Contracts, within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

## Compelling Circumstances for an Immediate Sale

Z.      To maximize the value of the assets and recovery to the Selling Debtor's estate, it is essential that the Sale occur within the time constraints set forth in the Sale Agreement. Time is of the essence in consummating the Sale.

## Other

AA.      The Sale does not constitute a *de facto* plan of reorganization or liquidation or an element of such a plan for any of the Debtors, as it does not and does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies or extend debt maturities.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

### General Provisions

1.      The relief requested in the Sale Motion is granted and approved, and the Sale contemplated thereby is approved as set forth in this Sale Order.

2.      All objections to the entry of this Sale Order or the relief provided herein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

**Approval of the Agreements**

3.      The Agreements, and all of the terms and conditions thereof, are hereby approved.

4.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Selling Debtor is authorized and directed to consummate the Sale in accordance with the terms and conditions of the Agreements.

5.      The Selling Debtor is authorized and directed to execute and deliver, and empowered to perform under, consummate and implement the Agreements, including all instruments and documents that may be reasonably necessary or desirable to implement the Sale as contemplated by the Sale Agreement, and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer or reducing to possession, the Acquired Assets, including the Transferred Contracts, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Sale Agreement. Any amounts that become payable by the Selling Debtor pursuant to the Agreements shall (a) constitute administrative expenses of the Selling Debtor's estates; (b) be paid by the Selling Debtor without further order of this Court and in the time and manner provided for in the Agreements; and (c) not be discharged, modified, or otherwise affected by any plan of reorganization or liquidation for the Debtors.

6.      The terms and provisions of this Sale Order shall be binding in all respects upon the Selling Debtor, its affiliates, their estates, all known or unknown creditors of, and all known or unknown holders of equity interests in, the Debtors, any holders of Interests against, in or on all or any portion of the Acquired Assets, all non-Debtor parties to the Transferred

Contracts, the Buyer and all successors and assigns of the Buyer, and any trustees, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases. This Sale Order and the Agreements shall inure to the benefit of the Selling Debtor, its affiliates, their estates, their creditors, the Buyer, its affiliates, and their respective successors and assigns. The Agreements shall not be subject to rejection.

### Transfer of the Acquired Assets

7.     Pursuant to sections 105(a), 363(f) and 365 of the Bankruptcy Code, the Selling Debtor is authorized to transfer the Acquired Assets on the Closing Date (the "Closing"). Such assets shall be transferred to the Buyer and shall constitute a legal, valid, binding and effective transfer of such assets and, upon the Selling Debtor's receipt of the Purchase Price, shall be, free and clear of all Interests (other than Permitted Liens and Transferred Liabilities), with all such Interests of any kind or nature whatsoever to attach to the net proceeds of the Sale ultimately attributable to the property against or in which such Interests are held with the same validity, priority, force and effect that they now have, subject to any claims and defenses the Selling Debtor may possess with respect thereto.

8.     Except as expressly permitted or otherwise specifically provided by the Sale Agreement or this Sale Order, all persons and entities holding Interests in the Acquired Assets (other than Permitted Liens and Transferred Liabilities), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the Transferred Contracts, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Acquired Assets or the Transferred Contracts to the Buyer, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer, its successors or assigns,

property or assets, such persons' or entities' Interests.  On the Closing Date, each creditor and holder of any Interest is authorized and directed to execute such documents and take all other actions as may be necessary to release Interests (other than Permitted Liens and Transferred Liabilities) on the Acquired Assets, if any, as provided for herein.

9.    The transfer of the Acquired Assets, including the Transferred Contracts, to the Buyer pursuant to the Sale Agreement constitute a legal, valid and effective transfer of such assets and contracts, and shall vest the Buyer with all right, title and interest of the Selling Debtor in and to such assets and contracts free and clear of all Interests of any kind or nature whatsoever.

**Assumption by Selling Debtor and Assignment to the Buyer of the Transferred Contracts**

10.    Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Selling Debtor's assumption and assignment to the Buyer of the Transferred Contracts, is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

11.    The Selling Debtor is hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer, effective upon the Closing, the Transferred Contracts free and clear of all Interests of any kind or nature whatsoever, and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Transferred Contracts to the Buyer.

12.    The Transferred Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Transferred Contract that prohibits, restricts or conditions such

assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Selling Debtor shall be relieved from any further liability with respect to the Transferred Contracts after such assignment to and assumption by the Buyer.

13. The Selling Debtor may assume and assign each of the Transferred Contracts in accordance with, sections 363 and 365 of the Bankruptcy Code, and any provisions in any of the Transferred Contracts that prohibits, restricts or conditions the assignment of such Transferred Contract, or allow the party to such Transferred Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assumption or assignment of such Transferred Contract constitute unenforceable anti-assignment provisions which are void and of no force and effect.

14. All other requirements and conditions under section 363 and 365 of the Bankruptcy Code for the assumption and assignment to the Buyer of each of the Transferred Contracts have been satisfied. Upon Closing, in accordance with sections 363 and 365, the Buyer shall be fully and irrevocably vested in all right, title and interest of each of the Transferred Contracts.

15. As of the Closing Date, each of the Transferred Contracts will be in full force and effect and not subject to termination or cancellation by the non-Debtor party thereto based upon any act, omission or failure that may have occurred or arisen prior to the Closing.

16. All defaults or other obligations of the Selling Debtor under any Transferred Contract arising or accruing prior to the date of this Sale Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by the Selling Debtor upon payment at the Closing

of the Sale or as soon thereafter as practicable of the cure amount, if any, set forth on <u>Exhibit B</u> hereto with respect to those Transferred Contracts set forth on <u>Exhibit B</u> (the "<u>Cure Amounts</u>"). After the payment of the relevant Cure Amounts, neither the Selling Debtor nor the Buyer shall have any further liabilities to the non-Debtor parties to the Transferred Contracts other than the Buyer's obligations under the Transferred Contracts that become due and payable on or after the Closing Date.   There shall be no rent accelerations, assignment fees, increases (including advertising rates) or any other fees charged to Buyer or the Selling Debtor as a result of the assumption and assignment of the Transferred Contracts.

17.    Except for the obligation of the Selling Debtor and/or Buyer to pay the Cure Amounts, if any, each non-Debtor party to a Transferred Contract hereby is forever barred, estopped and permanently enjoined from asserting against the Selling Debtor or the Buyer, or the property of any of them, any default existing as of the date of the Sale Hearing; or, against the Buyer, any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtors.  Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all parties to the Transferred Contracts are forever barred and permanently enjoined from raising or asserting against the Selling Debtor or the Buyer any assignment fee, default, breach or claim or pecuniary loss or condition to assignment, arising under or related to the Transferred Contracts existing as of the Closing Date or arising by reason of the Closing.

## Additional Sale Provisions

18.    On the Closing Date of the Sale, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests, if any, in the Acquired Assets, including the Transferred Contracts, as such Interests may have been recorded or may otherwise exist.

19.    This Sale Order (a) shall, be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing with respect to the Selling Debtor, the Acquired Assets or the Transferred Contracts prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall he binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and all other persons and entities who may he required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or contracts.

20.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein.

21.    Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Sale Agreement.

22.    If any person or entity, that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Liens with respect to the Debtors, the Acquired Assets or the Transferred Contracts shall not have delivered to the Selling Debtor and the Buyer prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens

which the person or entity has with respect to the Selling Debtor, the Acquired Assets, the Transferred Contracts, or otherwise, then (a) the Selling Debtor is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such assets and contracts, and (b) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens and termination of all Interests in the Acquired Assets and Transferred Contracts of any kind or nature whatsoever.

23.    All entities who are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Buyer on the Closing Date.

24.    Except for the Transferred Liabilities, the Buyer shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Debtors' businesses or the Transferred Contracts. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Sale Agreement, the Buyer shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, (1) liabilities on account of any taxes arising, accruing or payable under, out of, in connection with or in any way relating to the operation of the Debtors' businesses prior to the Closing Date and (2) liabilities based on any theory of

antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity.

25.    Under no circumstances shall the Buyer be deemed a successor of or to the Debtors for any Interest against or in the Debtors, the Debtors' businesses or Transferred Contracts of any kind or nature whatsoever. Except for the Transferred Liabilities, the sale, transfer, assignment and delivery of the Acquired Assets, including the Transferred Contracts, shall not be subject to any Interests, and Interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Selling Debtor. Except for persons holding Transferred Liabilities or Permitted Liens (but only to the extent of such Transferred Liabilities or Permitted Liens), all persons holding Interests against or in the Debtors or the Acquired Assets or Transferred Contracts of any kind or nature whatsoever (including, but not limited to, the Selling Debtor and/or its successors (including any trustee)), creditors, employees, unions, former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and the successors and assigns of each of the foregoing) shall be, and hereby are, forever barred, estopped and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests of any kind or nature whatsoever against the Buyer, its property, its successors and assigns or the Acquired Assets or Transferred Contracts, as an alleged successor or otherwise, with respect to any Interest of any kind or nature whatsoever such person or entity had, has or may have against or in the Debtors, their estates, officers, directors, shareholders or the Acquired Assets or Transferred Contracts. Following the Closing Date, no holder of an Interest in the Debtors shall interfere with the Buyer's title to or use and

enjoyment of the Acquired Assets or the Transferred Contracts based on or related to such Interest, or any actions that the Debtors may take in their chapter 11 cases.

### Additional Provisions

26.     This Court retains exclusive jurisdiction over any matter or dispute arising from or relating to the implementation of this Sale Order as well as to enforce and implement the terms and provisions of the Agreements, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Buyer, (b) resolve any disputes arising under or related to the Agreements, except as otherwise provided therein, (c) interpret, implement, and enforce the provisions of this Sale Order and (d) protect the Buyer against any Interest in the Debtors, the Acquired Assets or the Transferred Contracts, of any kind or nature whatsoever, attaching to the proceeds of the Sale.

27.     Nothing contained in any plan confirmed in these cases or any order of this court confirming such plan shall conflict with or deviate from the provisions of the Sale Agreement or the terms of this Sale Order.

28.     The transactions contemplated by the Sale Agreement are undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale as to the Buyer except to the extent such authorization is duly stayed pending such appeal prior to such consummation. The Buyer is a buyer in good faith of the Acquired Assets, including the Transferred Contracts, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

29.     The consideration provided by the Buyer under the Sale Agreement (a) constitutes, and shall be deemed to constitute, reasonably equivalent value and fair consideration, and (b) is fair and reasonable and may not be avoided under section 363(n) or any other provision of the Bankruptcy Code, or otherwise.

30.     The terms and provisions of the Agreements and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Selling Debtor, its affiliates, their estates, the Buyer and its affiliates, successors and assigns, and shall be binding in all respects upon any affected third parties including, but not limited to, all persons asserting Interests in such assets and contracts to be sold or assigned to the Buyer pursuant to the Agreements, notwithstanding any subsequent appointment of any trustee(s) or similar party under any chapter of the Bankruptcy Code, as to which trustee(s) or similar party such terms and provisions likewise shall be binding.

31.     The failure specifically to include any particular provision of an Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreement and each of the Agreements be authorized and approved in their entirety.  Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent.

32.     The Sale Agreement and any other Agreement may be modified, amended or supplemented by the parties thereto, in a writing signed by all parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

33.     Notwithstanding Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Sale Order shall not be stayed for 10 days after the entry of the Sale Order and shall be effective and enforceable immediately upon entry.


Dated:_____, 2009

                                                    _____
                                                    Judith K. Fitzgerald
                                                    United States Bankruptcy Judge

# **Exhibit B**

Schedule 5.13
Transferred Contracts

| Description | Counterparty | Cure Amount |
|---|---|---|
| A private label supply agreement dated December 2008. | Company A | $0 |
| A purchase agreement dated January 4, 2007 concerning silicone firestop sealants. | Company B | $0 |
| A private label supply agreement dated October 15, 2001. | EGS-Nelson | $0 |
| A private label supply agreement dated November 1, 2005. | Company C | $0 |
| A confidential disclosure agreement dated August 5, 2009. | Empire Blend Products Inc. | $0 |
| A confidential disclosure agreement dated August 5, 2009. | Concrete Sealant Incorporated | $0 |
| Informal tolling relationship. | Empire Blend Products Inc. | $0 |
| Informal tolling relationship. | Applied Power & Coatings | $0 |
| Informal tolling relationship. | American Sealants, Inc. | $0 |
| Informal tolling relationship. | Developmental Enterprises Corp. | $0 |
| Informal tolling relationship. | Concrete Sealant Incorporated | $0 |
| A license agreement dated September 28, 1999. | Berlin Company Limited | $0 |
| A marketing and manufacturing/license agreement dated October 4, 1993. | Chemische Fabrik Grunau GmbH | $0 |
| A supply/license agreement dated February 22, 1994. | Chemische Fabrik Grunau GmbH | $0 |
| A private label supply agreement dated January 30, 2009. | Company D | $0 |
| A private label agreement dated October 21, 1997. | UBA Tec | $0 |
| A distribution agreement dated May 14, 2008. | Company E | $0 |

K&E 15442459.6