**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**


In re:                                        Chapter 11

**W.R. Grace & Co., et al.**                  Case No. 01-01139 (JKF)

                    Debtors.                  Jointly Administered

**THIRTY-THIRD QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM APRIL 1, 2009 THROUGH JUNE 30, 2009**


Name of Applicant                             **Stroock & Stroock & Lavan LLP**

Authorized to Provide
Professional Services to:                     **Official Committee of Unsecured Creditors**

Date of Retention:                            **April 12, 2001**

Period for which compensation and             **April 1, 2009 – June 30, 2009**
reimbursement is sought

Amount of Compensation sought as              **$654, 188.75**
actual, reasonable and necessary:

Amount of Expense Reimbursement sought        **$16,935.11**
as actual, reasonable and necessary:

Fees and Expenses of the Asbestos Issues
Expert:

This is an: ☒ interim ☐ final application

This is the thirtieth quarterly application filed.

**Attachment A**

**Monthly Interim Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02-04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

|  |  | Payment Requested |  | Payment Approved |  |
|---|---|---|---|---|---|
| July 2, 2002 D.I.2324 | 05/01/02 – 05/31/02 | $74,910.75 | $2,9154.43 (Stroock) $43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002 D.I.2495 | 06/01/02 – 06/30/02 | $73,096.75 | $2,054.05 (Stroock) $114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002 D.I.2720 | 07/01/02 – 07/31/02 | $90,903.27 | $1,250.79 (Stroock) $11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002 D.I.2898 | 08/01/02 – 08/31/02 | $93,151.25 | $11,539.51 (Stroock) $5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002 D.I.2981 | 09/01/02 - 09/30/02 | $96,613.25 | $15,567.77 (Stroock) $771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002 D.I.3129 | 10/1/02 – 10/31/02 | $68,404.00 | $2,956.54 (Stroock) $1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003 D.I.3286 | 11/1/02 – 11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003 D.I.3349 | 12/1/02 – 12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003 D.I.3552 | 1/1/03 – 1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003 D.I.3626 | 2/1/03 – 2/28/03 | $76,313.00 | $2,022.78 (Stroock) $1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003 D.I.3718 | 3/1/03 – 3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003 D.I. 3850 | 4/1/03 – 4/30/03 | $60,269.00 | $814.02 (Stroock) $2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003 D.I. 3983 | 5/1/03 – 5/31/03 | $111,990.50 | $691.84 (Stroock) $3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003 D.I. 4152 | 6/1/03 – 6/30/03 | $43,824.00 | $1,220.42 (Stroock) $61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003 D.I. 4381 | 7/1/03 – 7/31/03 | $79,090.50 | $2,301.33 (Stroock) $14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 30, 2003 D.I. 4512 | 8/1/03 – 8/31/03 | $69,927.00 | $1,164.19 (Stroock) $12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003 D.I. 4625 | 9/1/03 – 9/30/03 | $69,409.50 | $1,076.94 (Stroock) $10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003 D.I. 4843 | 10/1/03 – 10/31/03 | $96,980.50 | $3,800.45 (Stroock) $42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004 D.I. 4976 | 11/1/03 – 11/30/03 | $66,428.50 | $1,225.38 (Stroock) $30,463.00 (Navigant f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004 D.I. 5056 | 12/1/03 – 12/31/03 | $52,321.50 | $924.99 (Stroock) $27,005.00 (Navigant f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004 D.I. 5309 | 1/1/04 – 1/31/04 | $65,980.50 | $1,917.93 (Stroock) $47,654.57 (Navigant f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004 D.I. 5406 | 2/1/04 – 2/29/04 | $90,421.50 | $3,636.48 (Stroock) $35,492.50 (Navigant f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004 D.I. | 3/1/04 – 3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004 D.I. 5803 | 4/1/04 – 4/30/04 | $99,136.00 | $3,518.96 (Stroock) $1,515.00 (Navigant February) $49,667.00 (Navigant March) $80,307.11 (Navigant April) | $79,308.80 | $135,008.07 |
| July 2, 2004 D.I. 5917 | 5/1/04 – 5/31/04 | $134,324.50 | $2,409.97 (Stroock) $78,360.05 (Navigant May) | $107,459.60 | $80,770.02 |
| August 2, 2004 D.I. 6105 | 6/1/04 – 6/31/04 | $120,501.00 | $1,831.49 (Stroock) $62,625.00 (Navigant June) | $96,400.80 | $64,456.49 |
| September 9, 2004 D.I. 6341 | 7/1/04 – 7/31/04 | $72,394.00 | $3,461.84 (Stroock) $40,427.50 (Navigant July) | $57,915.20 | $43,889.34 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 23, 2004<br>D.I. 6444 | 8/1/04 – 8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004<br>D.I 6625 | 9/1/04 – 9/30/04 | $83,903.50 | $1,535.61 (Stroock)<br>$27,142.00 (Navigant August) | $67,122.80 | $28,677.61 |
| December 3, 2004<br>D.I. 7086 | 10/1/04 – 10/31/04 | $200,155.50 | $1,368.18 (Stroock)<br>$ 24,659.00 (Navigant September) | $160,124.40 | $26,027.18 |
| January 7, 2005<br>D.I. 7481 | 11/1/04 – 11/30/04 | $218,608.50 | $14,019.09 (Stroock)<br>$25,102.80 (Navigant October)<br>$27,972.34 (Navigant November) | $174,886.80 | $67,094.23 |
| February 2, 2005<br>D.I. 7667 | 12/1/04 – 12/31/04 | $235,503.70 | $10,442.92 (Stroock)<br>$62,687.97 (Navigant December) | $188,402.96 | $73,130.89 |
| March 15, 2005<br>D.I. 8026 | 1/1/05 – 1/31/05 | $187,168.00 | $4,411.55 (Stroock)<br>$15,686.00 (Navigant January) | $149,734.40 | $20,097.55 |
| April 1, 2005<br>D.I. 8155 | 2/1/05 – 2/28/05 | $108,180.25 | $8,102.85 (Stroock)<br>$18,303.37 (Navigant February) | $86,544.20 | $26,406.22 |
| April 29, 2005<br>D.I. 8305 | 3/1/05 – 3/31/05 | $56,941.25 | $287.23 (Stroock)<br>$6,114.86 (Navigant March) | $45,553.00 | $6,402.09 |
| June 6, 2005<br>D.I. 8562 | 4/1/05- - 4/30/05 | $127,695.00 | $3,531.45 (Stroock)<br>$20,129.06 (Navigant April) | $102,156.00 | $23,660.51 |
| June 28, 2005<br>D.I. 8704 | 5/1/05- 5/31/05 | $98,569.00 | $4,871.74 (Stroock) | $78,855.20 | $858.21 |
| August 3, 2005<br>D.I. 9135 | 6/1/05- 6/30/05 | $114,903.75 | $4,871.74 (Stroock)<br>$34,075.28 (Navigant June) | $91,923.00 | $38,947.02 |
| September 8, 2005<br>D.I. 9356 | 7/1/05 – 7/31/05 | $117,780.75 | $2,088.44 (Stroock)<br>$2,211.00 (Navigant) | $94,224.60 | $4,299.44 |

4

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| October 4, 2005<br>D.I. 9565 | 8/1/05 –<br>8/31/05 | $106,796.25 | $5,046.99 (Stroock)<br>$18,550.00 (Navigant) | $85,437.00 | $23,596.99 |
| November 1, 2005<br>D.I. 10951 | 9/1/05 –<br>9/30/05 | $67,697.50 | $1,399.68 (Stroock)<br>$11,197.50 (Navigant) | $54,158.00 | $12,597.18 |
| November 29, 2005<br>D.I. 11202 | 10/1/05 –<br>10/31/05 | $98,216.75 | $1,611.30 (Stroock)<br>$11,582.50 (Navigant) | $78,573.40 | $13,193.80 |
| January 9, 2006<br>D.I. 11507 | 11/1/05 –<br>11/30/05 | $104,348.00 | $2,847.45 (Stroock)<br>$71,598.50 (Navigant) | $83,478.40 | $74,445.95 |
| January 30, 2006<br>D.I. 11655 | 12/1/05 –<br>12/31/05 | $96,855.00 | $1,379.53 (Stroock)<br>$20,317.49 (Navigant) | $77,484.00 | 21,697.02 |
| March 1, 2006<br>D.I. 11921 | 1/1/06 –<br>1/31/06 | $73.383.00 | $1,810.85 (Stroock)<br>$14,124.01 (Navigant) | $58.706.40 | $15,934.86 |
| March 28, 2006<br>D.I. 12134 | 2/1/06 –<br>2/28/06 | $105,083.75 | $1,434.62 (Stroock)<br>$25,971.70 (Navigant) | $84.067.00 | $27,406.32 |
| May 2, 2006<br>D.I. 12354 | 3/1/06 –<br>3/31/06 | $145,189.50 | $2,512.81 (Stroock)<br>$25,838.37 (Navigant) | $116,151.60 | $28,351.18 |
| May 31, 2006   DI.<br>12558 | 4/1/2006 –<br>4/30/2006 | $116,817.00 | $2,141.42 (Stroock)<br>$7,425.00 (Navigant) | $93,453.60 | $9,566.42 |
| July 6, 2006<br>D.I. 12748 | 5/1/2006 –<br>5/31/2006 | $121,304.50 | $1,838.71 (Stroock)<br>$17,493.75 (Navigant) | $97,043.60 | $19,332.46 |
| August 1, 2006<br>D.I. 12899 | 6/1/2006 –<br>6/30/2006 | $94,856.50 | $1,869.66 (Stroock)<br>$38,548.75 (Navigant) | $75,885.20 | $40,418.41 |
| August 30, 2006<br>D.I. 13117 | 7/1/2006 –<br>7/31/2006 | $97,397.25 | $496.76 (Stroock)<br>$30,280.00 (Navigant) | $77,917.80 | $30,776.76 |
| October 2, 2006<br>D.I. 13336 | 8/1/2006 –<br>8/31/2006 | $131,856.25 | $98.34 (Stroock)<br>$98,317.50 (Navigant) | $105,485.00 | $98,415.84 |
| November 2, 2006<br>D.I. 13559 | 9/1/2006 –<br>9/30/2006 | $150,960.00 | $4,147.01 (Stroock)<br>$91,179.11 (Navigant) | $120,768.00 | $95,326.12 |
| November 29, 2006<br>D.I. 13838 | 10/1/06 –<br>10/31/06 | $196,223.50 | $915.14 (Stroock)<br>$147,374.20 (Navigant) | $156,978.89 | $148,289.34 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| January 12, 2007 D.I. 14292 | 11/1/06 – 11/30/06 | $188,638.00 | $3,370.16 (Stroock) $133,438.70 (Navigant) | $150,910.40 | $136,808.86 |
| January 29, 2007 D.I. 14415 | 12/1/06 – 12/31/06 | $99,832.00 | $5,752.89 (Stroock) $55,245.22 (Navigant) | $79,865.60 | $60,998.11 |
| March 8, 2007 D.I. 14810 | 1/1/07 – 1/31/07 | $77,582.00 | $962.06 (Stroock) $90,474.74 (Navigant) | $62,065.60 | $91,436.80 |
| April 10, 2007 D.I. 15132 | 2/1/07 – 2/28/07 | $119,140.50 | $3,092.88 (Stroock) $77,301.25 (Navigant) | $95,312.40 | $80,394.13 |
| May 1, 2007 D.I. 15457 | 3/1/07 – 3/31/07 | $135,228.00 | $6,635.25 (Stroock) $104,674.53 (Navigant) | $108,182.40 | $111,309.78 |
| June 22, 2007 D.I. 16136 | 4/1/07 – 4/30/07 | $177,646.00 | $815.81 (Stroock) $173,437.45 (Navigant) | $142,116.80 | $174,253.26 |
| July 17, 2007 D.I. 16309 | 5/1/07 – 5/31/07 | $205,937.25 | $6,405.01 (Stroock) $162,431.03 (Navigant) | $164,749.80 | $168,836.04 |
| August 10, 2007 D.I. 16528 | 6/1/07 – 6/30/07 | $225,650.50 | $5,929.97 (Stroock) $200,294.81 (Navigant) | $180,520.40 | $206,224.78 |
| September 14, 2007 D.I. 16822 | 7/1/07 – 7/31/07 | $157,268.50 | $4,021.65 (Stroock) $208,116.54 (Navigant) | $125,814.80 | $212,138.19 |
| October 1, 2007 D.I. 16959 | 8/1/07 – 8/31/07 | $145,866.50 | $3,354.61 (Stroock) $210,152.54 (Navigant) | $116,693.20 | $213,507.15 |
| November 16, 2007 D.I. 17394 | 9/1/07 – 9/30/07 | $206,908.50 | $3,056.89 (Stroock) | $165,526.80 | $3,056.89 |
| December 5, 2007 D.I. 17548 | 10/1/07 – 10/31/07 | $288,976.50 | $22,324.58 (Stroock) $325,509.63 (Navigant) | $231,181.20 | $303,185.05 |
| January 11, 2008 D.I. 17803 | 11/1/07 – 11/30/07 | $249,372.50 | $32,780.40 (Stroock) $162,394.93 (Navigant) | $199,498.00 | $195,175.33 |
| February 1, 2008 D.I. 17957 | 12/1/07 – 12/31/07 | $116,522.50 | $57,717.92 (Stroock) $47,444.43 (Navigant) | $93,218.00 | $105,162.35 |
| March 4, 2008 D.I. 18202 | 1/1/08 – 1/31/08 | $201,472.50 | $3,282.80 (Stroock) $86,070.26 (Navigant) | $161,178.00 | $89,353.06 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| April 5, 2008<br>D.I. 18450 | 2/1/08 –<br>2/29/08 | $195,491.00 | $5,922.25 (Stroock)<br>$73,924.16 (Navigant) | $156,392.80 | $79,846.41 |
| April 29, 2008<br>D.I. 18639 | 3/1/08 –<br>3/31/08 | $275,659.00 | $11,217.17 (Stroock)<br>$69,201.53 (Navigant) | $220,527.20 | $80,418.70 |
| June 4, 2008<br>D.I. 18862 | 4/1/08<br>4/30/08 | $298,888.00 | $10,143.60 (Stroock)<br>$38,800.00 (Navigant) | $239,110.40 | $48,943.60 |
| July 1, 2008<br>D.I. 19032 | 5/1/08<br>5/31/08 | $138,683.50[1] | $3,649.95 (Stroock) | $110,946.80[2] | $3,649.95 |
| August 4, 2008<br>D.I. 19224 | 6/1/08<br>6/30/08 | $213,559.00 | $12,357.78 (Stroock)<br>$96.84 (Navigant) | $170,847.20 | $12,454.62 |
| September _, 2008<br>D.I. 19516 | 7/1/08<br>7/31/08 | $206,087.50 | $6,717.13 (Stroock)<br>$259.90 (Navigant) | $164,870.00 | $6,977.03 |
| September 30, 2008<br>D.I. 19653 | 8/1/08<br>8/31/08 | $212,928.50 | $2,326.65 (Stroock) | $170,342.80 | $2,326.65 |
| November 6, 2008<br>D.I. 19949 | 9/1/08<br>9/30/08 | $226,486.50 | $2,844.77 (Stroock) | $181,189.20 | $2,844.77 |
| December 2, 2008<br>D.I. 20168 | 10/1/08<br>10/31/08 | $270,097.00 | $10,611.52 (Stroock) | $216,077.60 | $10,611.52 |
| December 30, 2008<br>D.I. 20384 | 11/1/08<br>11/30/08 | $184,642.00 | $5,870.24 (Stroock) | $147,713.60 | $5,870.24 |
| February 3, 2009<br>D.I. 20654 | 12/1/08-<br>12/31/08 | $102,648.50 | $4,017.80 (Stroock) | $82,118.80 | $4,017.80 |
| March 3, 2009<br><br>D.I. 20906 | 1/1/09<br>1/31/09 | $114,525.00 | $2,458.44 (Stroock) | $91,620.00 | $2,458.44 |
| March 30, 2009<br>D.I. 21152 | 2/1/08<br>2/28/09 | $141,569.00 | $1,627.89 (Stroock) | $113,255.20 | $1,627.89 |
| April 29, 2009<br>D.I. 21475 | 3/01/09<br>3/31/09 | $181,006.75 | $3,270.02 (Stroock) | $144,805.40 | $3,270.02 |

---

[1]    See paragraph 10 herein.

[2]    See paragraph 10 herein.

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| May 29, 2009<br>D.I. 21910 | 4/01/09<br>4/30/09 | $187,588.50 | $1,545.41 (Stroock) | $150,070.80 | $1,545.41 |
| July 1, 2009<br>D.I. 22310 | 5/01/09<br>5/31/09 | $227,989.00 | $9,428.79 (Stroock) | $182,391.20 | 9,428.79 |
| August 6, 2009<br>D.I. 22709 | 6/01/09<br>6/30/09 | $238,611.25 | $5,960.91 (Stroock) | | |

**Quarterly Fee Applications**

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01- 6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43* | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[3] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[4] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |

---

[*]   These amounts relate to the Committee's Asbestos Issues Expert.

[3]   Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[4]   Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 20, 2003<br>D.I. 3815<br>(Eighth) | 1/1/03 – 3/31/03 | $224,358.50 | $9,424.04<br>$1,077.80* | $224,615.50[5] | $9,424.04<br>(Stroock)[3]<br>$1,077.80<br>(Chambers)[3] |
| August 29, 2003<br>D.I. 4357<br>(Ninth) | 4/1/03 – 6/30/03 | $215,903.50 | $2,726.28<br>$67,628.50* | $215,903.50[6] | $2,726.28<br>(Stroock)[4]<br>$67,628.50<br>(Chambers)[4] |
| December 5, 2003<br>D.I. 4778<br>(Tenth) | 7/1/03 – 9/30/03 | $218,222.00 | $4,339.46<br>$36,865.19* | $218,222.00[7] | $4,339.46<br>(Stroock)[5]<br>$36,865.19<br>(Chambers)[5] |
| March 2, 2004<br>D.I. 5212<br>(Eleventh) | 10/1/03 – 12/31/03 | $215,718.50 | $5,950.82<br>$100,349.50* | $215,718.50[8] | $5,922.67<br>(Stroock)[6]<br>$100,349.50<br>(Chambers)[6] |
| May 18, 2004<br>D.I. 5597<br>(Twelfth) | 1/1/04 – 3/31/04 | $254,857.00 | $9,965.36<br>$83,147.07* | $254,857.00[9] | $9,965.36<br>(Stroock)[7]<br>$83,147.07<br>(Navigant)[7] |
| August 26, 2004<br>D.I. 6269<br>(Thirteenth) | 4/1/04 – 6/30/04 | $353,629.50 | $7,760.42<br>$272,474.16* | $353,629.50[10] | $7,760.42<br>(Stroock)[8]<br>$272,474.16<br>(Navigant)[8] |

---

[5]    Court Order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[6]    Amended Court Order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[7]    Court Order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[8]    Court Order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[9]    Court Order dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[10]    Court Order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| November 10, 2004<br>D.I. 6871<br>(Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08<br>$67,569.50* | $226,702.50[11] | $6,705.08<br>(Stroock)[9]<br>$67,569.50<br>(Navigant)[9] |
| February 22, 2005<br>D.I. 7851<br>(Fifteenth) | 10/1/04 – 12/31/04 | $653,133.20 | $25,830.19<br>$140,422.11* | $648,355.70[12] | $25,830.19<br>(Stroock)[10]<br>$140,422.11<br>(Navigant)[10] |
| May 16, 2005<br>D.I. 8468<br>(Sixteenth) | 1/1/05- 3/31/05 | $352,289.50 | $12,746.23<br>$40,104.23* | $349,644.00 | $12,746.23<br>(Stroock)[13]<br>$40,104.23<br>(Navigant) |
| August 19, 2005<br>D.I. 9225<br>(Seventeenth) | 4/1/-5 – 6/30/05 | $340,821.25 | $9,261.40<br>$54,204.34* | $340,096.25[14] | $9,261.40<br>(Stroock)<br>$54,204.34<br>(Navigant) |
| November 18, 2005<br>D.I. 11118<br>(Eighteenth) | 7/1/05 – 9/30/05 | $291,843.50 | $8,534.71<br>$31,958.50* | $291,843.50[15] | $8,534.71<br>(Stroock)<br>$31,958.50<br>(Navigant) |
| February 15, 2006<br>D.I. 11798<br>(Nineteenth) | 10/1/05 – 12/31/05 | $299,419.75 | $5,838.28<br>$103,498.49* | $299,419.75[16] | $5,838.69<br>(Stroock<br>$103,498.49<br>(Navigant) |

[11]   Court Order dated March 22, 2005 approved fees in the amount of $226,702.50 and expenses in the amount of $74,274.58.

[12]   Court Order dated June 29, 2005 approved fees in the amount of  $648,335.70 and expenses in the amount of $166,252.30.

[13]   Court  Order dated September 27, 2005 approved fees in the amount of $349,644.00 and expenses in the amount of $52,850.46.

[14]   Court Order dated December 19, 2005 approved fees in the amount of $340,096.25 and expenses in the amount of $63,465.74.

[15]   Court Order dated March 24, 2006 approved fees in the amount of $291,843.50 and expenses in the amount of $40,493.21.

[16]   Court Order dated June 16, 2006 approved fees in the amount of $299,419.75 and expenses in the amount of $109,337.18.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 26, 2006 D.I. 12533 (Twentieth) | 1/1/2006 – 3/31/2006 | $323,566.25 | $5,758.28 $65,934.98* | $323,451.25[17] | $5,758.28 (Stroock) $64,810.58 (Navigant) |
| August 17, 2006 D.I. 13006 (Twenty-First) | 4/1/2006 – 6/30/2006 | $332,978.00 | $5,849.79 $63,467.50* | $332,978.00[18] | $5,849.70 (Stroock) $63,467.50 (Navigant) |
| November 29, 2006 D.I. 13835 (Twenty-Second) | 7/1/2006 – 9/30/2006 | $380,213.50 | $4,742.11 $219,776.61* | $380,213.50[19] | $4,742.11 (Stroock) $219,776.61 (Navigant) |
| March 1, 2007 D.I. 14717 (Twenty-Third) | 10/1/2007 – 12/31/07 | $484,693.50 | $10,038.19 $336,058.12* | $484,693.50[20] | $10,038.19 (Stroock) $336,058.12 (Navigant) |
| June 4, 2007 D.I. 15949 (Twenty-Fourth) | 1/1/07 - 3/31/07 | $331,950.50 | $10,690.15 $272,450.52* | $331,950.50[21] | $10,690.15 (Stroock) $272,450.52 (Navigant) |
| August 30, 2007 D.I. 16710 (Twenty-Fifth) | 4/1/2007 - 6/30/2007 | $609,233.75 | $13,150.79 $536,163.29* | $609,233.75[22] | $13,150.79 (Stroock) $536,163.29 (Navigant) |

---

[17] Court Order dated September 25, 2006 approved fees in the amount of $323,451.25 and expenses in the amount of $71,130.16.

[18] Court Order dated December 18, 2006 approved fees in the amount of $332,978.00 and expenses in the amount of $69,317.29.

[19] Court Order dated May 3, 2007 approved fees in the amount of $380,213.50 and expenses in the amount of $224,518.72.

[20] Court Order dated June 20, 2007 approved fees in the amount of $484,693.50 and expenses in the amount of $346,096.31.

[21] Court Order dated September 24, 2007 approved fees in the amount of $331,950.50 and expenses in the amount of $283,140.67.

[22] Court order dated December 13, 2007 approved fees in the amount of $609,233.75 and expenses in the amount of $549,314.08.

|  | Payment Requested | | Order Approving Amount of: | |
| --- | --- | --- | --- | --- |
| December 12, 2007<br>D.I. 17625<br>(Twenty-Sixth) | 7/1/2007 –<br>9/30/2007 | $510,043.50 | $10,433.15<br>$418.269.08* | $508,758.50[23] | $10,433.15<br>(Stroock)<br>$418,269.08<br>(Navigant) |
| March 5, 2008<br>D.I. 18222<br>(Twenty-Seventh) | 10/1/07 –<br>12/31/07 | $654,871.50 | $112,822.90<br>$535,348.99* | $654,871.50[24] | $112,650.85<br>(Stroock)<br>$535,348.99<br>(Navigant) |
| May 27, 2008<br>D.I. 18789<br>(Twenty-Eighth) | 1/1/08<br>3/31/08 | $672,622.50 | $20,422.22<br>$229,195.95* | $672,622.50[25] | $20,422.22<br>(Stroock)<br>$229,195.95<br>(Navigant) |
| August 27, 2008<br>D.I. 19386<br>(Twenty-Ninth) | 4/1/08<br>6/30/08 | $653,130.50 | $26,151.33<br>$38,896.84 | $653,130.50[26] | $26,151.33<br>(Stroock)<br>$38,896.84<br>(Navigant) |
| December 5, 2008<br>D.I. 20207<br>(Thirtieth) | 7/1/08 –<br>9/30/08 | $645,502.50 | $11,888.55<br>$259.90 | $645,092.50[27] | $11,888.55<br>(Stroock)<br>$259.90<br>(Navigant) |
| March 9, 2009<br>D.I. 20950<br>(Thirty-First) | 10/01/08<br>12/31/08 | $557,387.50 | $20,499.56 | $557,387.50[28] | $20,499.56 |
| June 1, 2009<br>D.I. 21937 | 1/01/09<br>3/31/09 | $437,100.75 | $7,356.35 |  |  |

[23] Court order dated March 12, 2008 approved fees in the amount of $508,758.50 and expenses in the amount of $428,702.23.

[24] Court order dated June 23, 2008 approved fees in the amount of $654,871.50 and expenses in the amount of $647,999.84.

[25] Court order dated October 1, 2008 approved fees in the amount of $672,622.50 and expenses in the amount of $249,618.17.

[26] Court order dated December 17, 2008 approved fees in the amount of $653,130.50 and expenses in the amount of $65,048.17.

[27] Court order dated April 1, 2009 approved fees in the amount of $645,092.50 and expenses in the amount of $12,148.45.

[28] Court order dated July 7, 2009 approved fees in the amount of $557,387.50 and expenses in the amount of $20,499.56.

**WR GRACE & CO**
**ATTACHMENT B**
**APRIL 1, 2009 - JUNE 30, 2009**

|  | Hours | Rate | Amount | No. of Years in Position |
|---|---|---|---|---|
| **Partners** |  |  |  |  |
| Kruger, Lewis | 82.4 | $ 995 | $  81,988.00 | 39 |
| Pasquale, Kenneth | 185.6 | 825 | 153,120.00 | 9 |
|  |  |  |  |  |
| **Associates** |  |  |  |  |
| Harris, Daniel J. | 66.9 | 325 | 21,742.50 | 1 |
| Keppler, Abbey L. | 5.5 | 675 | 3,712.50 | 22 |
| Krieger, Arlene G. | 534.2 | 675 | 360,585.00 | 24 |
|  |  |  |  |  |
| **Paraprofessionals** |  |  |  |  |
| Cromwell, Marlon E. | 2.2 | 235 | 517.00 | 1 |
| Holzberg, Ethel H. | 72.0 | 275 | 19,800.00 | 36 |
| Magzamen, Michael S. | 1.0 | 295 | 295.00 | 3 |
| Mohamed, David | 188.9 | 180 | 34,002.00 | 19 |
| Wojcik, Mark R. | 0.4 | 295 | 118.00 | 3 |
|  |  |  |  |  |
| **Sub Total** | **1,139.1** |  | **$ 675,880.00** |  |
| **Less 50% Travel** | **(28.8)** |  | **(21,691.25)** |  |
| **Total** | **1,110.3** |  | **$ 654,188.75** |  |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| W. R. GRACE & CO., et al.[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## THIRTY-THIRD QUARTERLY FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM APRIL 1, 2009 THROUGH JUNE 30, 2009

Strook & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

accordance with the Administrative Fee Order (defined below) for interim allowance of

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## INTRODUCTION

1.        By this application (the "Application"), Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from April 1, 2009 through June 30, 2009 (the "Compensation Period") in the aggregate amount of $654,188.75 representing 874.6 hours of professional services and 264.5 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $16,935.11.

2.        Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## BACKGROUND

3.        On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code and has continued in the management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  Pursuant to an order of the Court, the Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.

4.        The Debtors operate a worldwide specialty chemicals and materials business and employ approximately 3860 full and part-time employees.  On a consolidated basis, for the fiscal

year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues.  The

Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales

are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor

subsidiaries and affiliates.

     5.      On April 12, 2001, the United States Trustee formed the Committee.  During the

first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its

counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter

11 cases.  The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP

(n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel.  On December 3, 2003, the

United States Trustee filed a second amended notice of appointment of the Committee.  On July

10, 2006, the United States Trustee filed a third amended notice of appointment of the

Committee.

     6.      The United States Trustee also appointed two separate official committees to

represent the interests of claimants asserting asbestos-related personal injury claims (the "ACC")

and asbestos-related property damage claims (the "PD Committee") against the Debtors

(collectively, the "Asbestos Claim Committees").  On June 18, 2001, the United States Trustee

appointed an official committee to represent the interests of equity security holders of the

Debtors (the "Equity Committee").

     7.      By order dated May 24, 2004, the Court authorized the appointment of a legal

representative for future asbestos personal injury claimants (the "PI FCR").  By order dated

---

[2]    The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

October 20, 2008, the Court authorized the appointment of a legal representative for future

asbestos property damage claimants (the "PD FCR").

8.      By application dated May 1, 2001, Stroock sought Court approval for its retention

as counsel to the Committee nunc pro tunc to April 12, 2001.  The Court signed an order

approving Stroock's retention as counsel to the Committee on May 30, 2001.

9.      This is the thirty-third quarterly interim application Stroock has filed with the

Court for an allowance of compensation and reimbursement of expenses for services rendered to

the Committee.  This Application is submitted pursuant to the terms of the Administrative Order

Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement

of Expenses for Professionals and Official Committee Members, approved by the Court on

May 3, 2001 as amended by order dated April 17, 2002 (collectively, the "Administrative Fee

Order").

10.      In accordance with the procedures established by the Administrative Fee Order,

Stroock had, at the time of filing this Application, received payment from the Debtors for 80% of

the fees and 100% of Stroock's expenses requested, and not objected to, in the April 2009 and

May 2009 fee statements.  Stroock has not received payment for the fees and expenses requested

in the in the June 2009 fee statement for which a certificate of no objection has not yet been

filed.  Applicant has received no other payments and no promises for payment from any source

for services rendered in connection with these cases for the months encompassing this

Compensation Period other than as immediately set forth above.  There is no agreement or

understanding between the Applicant and any other person (other than members of Stroock) for

the sharing of compensation to be received for the services rendered in these cases.

11.    As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

12.    Since being retained by the Committee, Stroock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates.  The variety and complexity of these cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

13.    Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee.  Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Stroock's practice, and are presented in compliance with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2006.  A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period is annexed hereto as Exhibit "B".  In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

14.     Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection.  A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D".

15.     Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

16.     The following summary of the services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B".  Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

**Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003**

17.     As reflected in prior compensation applications, in mid-November 2004, the Debtors filed a reorganization plan and numerous related pleadings including their motion seeking the estimation of asbestos claims and the establishment of a schedule and procedures for carrying out the estimations (the "Estimation Motion"), and their motion to establish post-confirmation litigation protocols for liquidating asbestos claims.

18.     The Court subsequently approved a form of case management order to govern the pre-confirmation estimation of asbestos personal injury claims (the "PI CMO") and several

amendments thereto (the "Amended PI CMOs") and the related form of questionnaire (the

"Questionnaire") to be used by asbestos personal injury claimants who had commenced pre-

petition litigation against the Debtors (the "PI Pre-Petition Litigation Claimants"), and two case

management orders for property damage claims (as amended, the "PD CMOs"); one to govern

the Debtors' claims objection process and the other to govern the pre-confirmation estimation of

property damage claims ("PD Claims").  The Amended PI CMOs established pre-trial dates and

deadlines and trial dates to govern the estimation of asbestos personal injury claims (the "PI

Estimation").  At least 35 expert and fact witness depositions were held prior to the

commencement of the PI Estimation trial in prior compensation periods.

19.    On April 7, 2008, the Debtors informed the Court that they had reached an

agreement with the ACC, the PI FCR and the Equity Committee (collectively, the "Plan

Proponents") on a resolution of the Debtors' present and future asbestos liabilities (the

"Proposed PI Resolution") and made public a term sheet (the "Term Sheet") setting forth terms

of such parties' proposed treatment of classes of claims and equity holders to be embodied in a

plan of reorganization to be filed with the Court.  As a result of the Proposed PI Resolution of the

Debtors' asbestos personal injury liabilities (the "Proposed Asbestos Resolution"), the PI

Estimation trial was suspended, subject to being restarted if the Proposed PI Resolution fell apart

or a plan embodying the Term Sheet was not confirmed.  The Debtors and the Plan Proponents

filed a plan (the "Plan") embodying the Term Sheet and related disclosure statement (the

"Disclosure Statement") on September 19, 2008.

20.    During the prior compensation periods, the Court approved a US ZAI class

settlement agreement (the US ZAI Class Settlement") and certified a class of US ZAI Claimants

comprised of those claimants that had timely filed proofs of claim.  During this Compensation

period, Stroock reviewed the several appeals filed by Anderson Memorial to orders issued by the

Bankruptcy Court, including one denying its motion to certify a worldwide class and a state wide

class action, and Anderson Memorial's response to the Debtors' objection to the US ZAI class

proof of claim filed by Anderson Memorial.  Stroock has expended 0.3 hours on this category for

a fee of $202.50.

### Business Operations -- Category 0013

21.      During this Compensation Period, Stroock attended to Capstone's draft report to

the Committee on the Debtors' business plan review and first quarter 2009 operations and

discussed the same with Capstone.  In addition, during this Compensation Period, Stroock

provided comment on Capstone's draft reports to the Committee on the Debtors' motion seeking

authorization to implement a long-term incentive program for key employees for the 2009-2011

period and a motion seeking approval for an extended employment agreement with the Debtors'

current CEO, Fred Festa.  Stroock also reviewed during this Compensation period the Debtors'

motion to retain Seale & Associates as a financial advisor to the debtors.  Stroock reviewed the

motion and retention agreement and with Capstone prepared and requested additional

information on this matter from the Debtors' representatives.  Stroock has expended 8.7 hours on

this category for a fee of $6,350.50.

### Case Administration -- Category 0014

22.      As reported in prior monthly compensation applications, these chapter 11 cases

were reassigned to District Court Judge Alfred Wolin in November 2001 and referred to

Bankruptcy Court Judge Judith Fitzgerald, and then reassigned to District Court Judge Ronald L.

Buckwalter following Judge Wolin's recusal from these cases.

23.     During this Compensation Period, Stroock continued to closely monitor the items on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each of the increasing number of pending adversary proceedings and appeals, to ensure that the Committee was fully informed about all pending motions, adversary proceedings and appeals and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable.  Stroock continued to engage Debtors' counsel and Capstone on an on-going basis with respect to pending matters and information requests.  Stroock also attended to the numerous pleadings, objections, witness statements and other pre-trial submissions filed in connection with Phase I confirmation hearings.  Stroock has expended 216.9 hours on this category for a fee of $45,977.00.

### Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015

24.     As reported in prior compensation applications, the Debtors filed an objection to the proofs of claim filed by the agent bank on behalf of holders of bank debt under the Debtors' two $250 million pre-petition Credit Agreements, focusing on the bank debt holders' unsecured claims for post-petition interest at the default rate (the "Debtors' Objection").  The Committee, which includes in its constituency the holders of bank debt, filed a response in opposition to the Debtors' Objection and participated in discovery, in other pleadings and at hearings with certain bank debt holders (the "Bank Lender Group") in opposing the Debtors' Objection.

25.     During the Compensation Period, the Court issued a memorandum decision and order (the "PPI Decision") on the Debtors' Objection.  Stroock attended to the PPI Decision, discussed with the Committee the Court's rulings and impact on the treatment of Class 9 claims under the Plan and on confirmation, and discussed the Decision with counsel for the Bank Lender Group.  The Committee took an appeal from the PPI Decision and attended to the

preparation of a statement of issues and designation of items for the record.  Separately, Stroock

prepared a motion to modify the 3d Amended CMO to seeking to postpone the upcoming Class 9

impairment hearing given the then pending appeal, and a related scheduling motion (collectively,

the "modification motions").  Stroock also attended to the Debtors' counter-designations and

response in opposition to the modification motions.  Stroock's services relating to these matters

are also reflected in Category 0036, Plan and Disclosure Statement, and Category 0017, The

Creditors' Committee.

26.     In addition, during this Compensation Period, Stroock attended to the brief

submitted by the New Jersey Dept of Environmental Protection (the "NJDEP") to the Third

Circuit on the NJDEP's appeal from the District Court's affirmance of Judge Fitzgerald's order

denying leave for the NJDEP to file a late proof of claim.  Stroock also discussed with the

Debtors' counsel the terms of a potential settlement with the NJDEP under consideration.  The

Debtors also filed a notice seeking authority for a settlement they reached resolving

environmental claims asserted against the Debtors' estates by AII Acquisition Corp.  Stroock

reviewed the proposed settlement, requested and obtained additional information regarding the

settlement from Debtors' counsel and prepared a memorandum for the Committee discussing the

settlement.  Stroock has expended 41.0 hours on this category for a fee of $32,249.00.

### Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017

27.     During this Compensation Period, Stroock communicated with the members of

the full Committee through memoranda, telephone and conference calls.  In order to keep the

Committee fully informed of all of the pending matters in these cases, and thus enable the

Committee to take informed positions on those issues, Stroock reviewed and summarized the

motions, other pleadings and notices filed by the Debtors and other parties in interest in these

cases and the objections and responses filed, raised issues the Committee should be aware of, made recommendations to the Committee concerning appropriate actions to be taken with regard to the pleadings and communicated with members of the Committee regarding the positions to be taken. In addition, Stroock engaged counsel and other representatives for the Debtors, and other parties and movants, as applicable, with the Committee's questions, concerns and comments, negotiated whenever and to the extent possible consensual resolutions of outstanding issues and acceptable forms of proposed orders, stipulations and settlement agreements.

28.     As reflected in the Application, during this Compensation Period, Stroock rendered substantial services in connection with confirmation of the Plan and in connection with the Court's PPI Decision and the appeal taken therefrom. Certain of the services rendered by Stroock in connection with these matters are also reflected in Category 0036. They include, Stroock's preparation of pleadings and discovery requests on behalf of the Committee including, the Committee's (i) objection to confirmation of the Plan, (ii) the separate preliminary and final witness disclosures for Phase I matters, and the witness disclosure for Phase II matters, (iii) the request to the Debtors for the production of documents regarding Plan feasibility, (iv) the motion to postpone consideration of Class 9 impairment issues and the related scheduling motion, and (v) appeal of the PPI Decision and preparation of the statement of issues and designation of items for the appellate record.

29.     In addition, during this Compensation Period, Stroock prepared memoranda to the Committee discussing the omnibus and confirmation – related hearings held before Judge Fitzgerald and the rulings issued by the Court, and a number of the depositions taken during this compensation period. In addition to Plan-related matters, the matters addressed in these memoranda included (i) the Court's final approval of the US ZAI Class Settlement and Class

11

Certification, (ii) the testimony and rulings made by Judge Molloy and the 9th Circuit Court of

Appeals in the Libby criminal trial and the verdicts of acquittal handed down, and (iii)

memoranda addressing a number of settlements resolving environmental claims.

30.     Through its correspondence and communication with the Committee, Stroock has

assisted the Committee in fulfilling its statutory duties to make informed decisions and express

the Committee's views regarding the issues which arise in these cases, to participate in those

proceedings and matters and in the confirmation of a plan providing appropriate treatment for the

creditors represented by the Committee.  Stroock has expended 91.4 hours on this category for a

fee of $61,994.00.

### Fee Application, Applicant -- Category 0018

31.     During this Compensation Period, Stroock prepared its fee statements for the

months of March 2009, April 2009 and May 2009 and related notices, affidavits of service and

certifications of no objection where applicable.  Stroock also prepared its Thirty-Second

Quarterly Fee Application covering the period from January 1, 2009 through March 31, 2009

(the "prior compensation application"), including a narrative section summarizing the services

rendered during that period by Stroock and numerous fee and expense schedules, as required by

the Administrative Fee Order entered by the Court.  Stroock has expended 64.0 hours on this

category for a fee of $25,750.00.

### Creditor Inquiries -- Category 0019

32.     During this Compensation Period, Stroock responded to inquiries from unsecured

creditors with respect to the status of these cases, Class 9 treatment under the Plan, the

confirmation process and schedule, the Court's PPI Decision, and the Libby criminal trial, its

ultimate verdicts and its impact on these cases.  Stroock has expended 18.5 hours on this category for a fee of $15,021.50.

### Fee Application, Others -- Category 0020

33.    During this Compensation Period, Stroock prepared notices, affidavits of service and certifications with respect to Capstone's monthly fee statements for the months of January 2009, February 2009, March 2009 and April 2009 and with respect to Capstone's 21st quarterly interim fee application.  Stroock also attended to fee applications of other professionals retained in these cases.  Stroock has expended 15.3 hours on this category for a fee of $5,674.50.

### Employee Benefits, Pension – Category 0021

34.    During this Compensation Period, Debtors filed a motion seeking approval for a proposed settlement of the purported Evans and Siamis class action suits, which asserted violations of ERISA against the Grace Board of Directors and certain officers and directors in connection with the Grace Savings and Investment Plan.  Stroock reviewed the motion, the settlement agreement and related information and prepared a memoranda on this matter for the Committee.  Stroock has expended 13.0 hours on this category for a fee of $8,775.00.

### Environmental Matters/Regulations/Litigation -- Category 0022

35.    During the prior compensation period, the Debtors filed a motion and separate notice, pursuant to the omnibus claim settlement procedures established in these cases, seeking approval for five stipulations resolving claims for environmental response costs filed by five entities relating to federal Superfund sites.  Stroock reviewed the pleadings and proposed settlements, the related Multi-Site Settlement Agreement and requested and obtained additional information from the Debtors regarding the terms of the settlements.  During this Compensation

13

Period, Stroock communicated further with Debtors' counsel regarding these settlements and the proposed settlement with AII Acquisition Corp.  Stroock has expended 0.4 hours on this category for a fee of $270.00.

### Litigation (Non-Bankruptcy/General) – Category 0032

36.    During this Compensation Period, the Government's criminal trial against Grace and five of its former officers and employees relating to Grace's actions in Libby, Montana (the "Libby criminal trial") commenced and concluded with acquittal verdicts for all defendants. Stroock reviewed trial reports, press releases and articles, pleadings filed by the parties and rulings made by the Montana District Court and the Ninth Circuit Court of Appeals, and prepared extensive memoranda for the Committee on the trial.  Stroock has expended 70.3 hours on this category for a fee of $50,757.50.

### Travel – Non Working -- Category 0035

37.    Stroock's fees in this category during this Compensation Period relate to Stroock attorneys traveling (i) to and from Wilmington, DE for an omnibus hearing before Judge Fitzgerald on April 1, 2009, (ii) to and from Pittsburgh, PA for (a) the pre-trial hearing before Judge Fitzgerald on June 18, 2009, at which the Court heard argument on the Committee's modification motions and (b) the two-day Phase I confirmation hearing on June 22, 2009 and June 23, 2009 at which the Court heard argument on Committee's Class 9 impairment and solvency issues and (iii) to and from Washington, DC to attend the May 1, 2009 deposition of Peter Lockwood, in connection with confirmation.  Stroock has expended 57.5 hours on this category for a fee of $43,382.50 for which Stroock is seeking payment in the amount of $21,691.25.

**Plan and Disclosure Statement -- Category 0036**

38.      As reported in the prior compensation applications, in September 2008, the

Debtors filed a plan of reorganization embodying the Proposed PI Resolution and the Term Sheet

the Debtors reached with the Plan Proponents.  Stroock reviewed the drafts of the Plan and

related exhibits, the Disclosure Statement and the solicitation–related materials (collectively, the

"Plan Documents") focusing on those terms and provisions affecting the treatment of general

unsecured creditors in Class 9, and communicated with the Committee and Capstone regarding

these documents.  Before the end of the prior compensation period, the Court approved the

Disclosure Statement.

39.      During this Compensation Period, extensive pre-confirmation discovery and

briefing commenced and the Phase I confirmation hearings specifically addressing Class 9

impairment issues took place.  Consequently, as reflected in the time detail in this Application,

Stroock rendered extensive services in this category during this Compensation Period.  Stroock

prepared a number of briefs, motions, and discovery-related requests and responses on behalf of

the Committee, certain of which were done jointly with counsel for the Bank Lender Group,

including the preparation of a joint final objection and a separate joint trial brief in opposition to

confirmation of the Plan.  Stroock also attended to the briefs and other pleadings filed by the

Plan Proponents in support of confirmation and in opposition to objectors to the Plan, and

attended to certain of the objections, briefs and discovery demands and responses filed by other

parties in these cases.  Stroock also prepared for and attended approximately ten depositions and

numerous conference calls with all parties in interest addressing pre-trial and confirmation

issues, and reviewed all relevant expert reports and rebuttal reports.  Stroock also attended to the

PPI Decision issued by the Court and its impact on Plan confirmation and conducted case law

research on all confirmation issues of relevance to Class 9 creditors, including impairment and

solvency issues, and prepared for all calls and Court hearings.  As reflected in this category and

elsewhere in this Application, Stroock communicated with the Committee and Capstone on these

matters and with counsel for the Bank Lender Group as appropriate.  Stroock expended 464.1

hours on this category for a fee of $318,918.50.

### Hearings -- Category 0037

40.     During this Compensation Period, Judge Fitzgerald held hearings on seven days;

one of which took place in Wilmington, DE, three of which took place in Pittsburgh, PA, and the

others were held telephonically.  Substantially all of the matters considered or discussed during

these hearings related to the settlements to be embodied in the Plan, Phase I confirmation issues,

including those held by the Committee, and/or the confirmation schedule and process.  Stroock

reviewed each of the agenda notices and all relevant pleadings, orders, settlements and Plan-

related documents in advance of these hearings, attended the hearings, and prepared for and

advocated the Committee's positions, as appropriate.  After the hearings, Stroock, as reflected

elsewhere in this Application, prepared memoranda informing the Committee of the arguments

made at the hearings and, where applicable, the Court's rulings.  Stroock expended 70.6 hours on

this category for a fee of $55,669.00.

### Employment Applications – Others – Category 0040

41.     During the prior compensation period, the Debtors filed a motion seeking to retain

financial advisors to assist them in selling their equipment business.  During this Compensation

Period, Stroock communicated with Debtors' counsel seeking additional information and

materials, which it reviewed.  Stroock also communicated with Debtors' counsel regarding

certain modifications to be made to the proposed form of order approving the retention.  Stroock

expended 3.5 hours on this category for a fee of $2,362.50.

### Relief From Stay Proceedings – Category 0041

42.     During the prior compensation period, Kaneb Pipeline Operating Partnership filed

two motions for relief from the stay; one seeking to continue the prosecution of its cross-appeal

with one of the Debtors in an environmental liability action pending in Texas and the other

seeking to pursue insurance coverage with respect to environmental liabilities relating to a fuel

pipeline site in Georgia.  During this Compensation Period, Stroock reviewed Kaneb's responses

to the Debtors' objections to the stay relief motions and communicated with the Committee

about these matters.  Stroock expended 0.5 hours on this category for a fee of $337.50.

### Tax Issues – Category 0047

43.     During this Compensation Period, the Debtors' filed a motion seeking approval

for a settlement of disputes relating to the carryback of certain specified liability losses they had

with the Internal Revenue Service.  Stroock reviewed the motion, discussed it with Capstone and

reviewed Capstone's draft memorandum for the Committee on this matter.  Stroock expended

3.1 hours on this category for a fee of $2,188.50.


### FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

44.     The factors to be considered in awarding attorneys fees have been enumerated in

In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547

F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts.  Stroock

respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

The Time and Labor Required.  The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch.  Occasionally, Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends.  The services rendered by Stroock were performed efficiently, effectively and economically.

The Novelty and Difficulty of Questions.  Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered.  In this case, as in many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

The Skill Requisite to Perform the Legal Services Properly.  Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the

resolution of issues, are and will continue to contribute to the

maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of
the Case.  Due to the size of Stroock's insolvency department, Stroock's

representation of the Committee has not precluded its acceptance of new

clients.  However, the volume of the matters needing attention on a

continuing basis has required several of the attorneys to commit

significant portions of their time to these cases.

The Customary Fee.  The fee sought herein is based upon Stroock's

normal hourly rates for services of this kind.  Stroock respectfully submits

that the fee sought herein is not unusual given the magnitude and

complexity of these cases and the time expended in attending to the

representation of the Committee, and is commensurate with fees Stroock

has been awarded in other cases, as well as with fees charged by other

attorneys of comparable experience.

Whether the Fee is Fixed or Contingent.  Pursuant to §§ 330 and 331 of

the Bankruptcy Code, all fees sought by professionals employed under

§ 1103 of the Code are contingent pending final approval by this Court,

and are subject to adjustment dependent upon the services rendered and

the results obtained.

Time Limitations Imposed by Client or Other Circumstances.  As already

indicated, Stroock has attended to the various issues arising in these cases.

19

Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

The Amount Involved and Results Obtained.  Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

The Experience, Reputation and Ability of the Attorneys.  Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Flushing Hospital and Medical Center, Planet Hollywood International, Anchor Glass Container Corporation, Beloit Corporation in the Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings. Stroock's experience enables it to perform the services described herein

20

competently and expeditiously.  In addition to its expertise in the area of

corporate reorganization, Stroock has already frequently called upon the

expertise of its partners and associates in the litigation, ERISA, tax,

environmental and intellectual property law areas to perform the wide

ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case.  These cases are not undesirable, but as

already indicated, have required a significant commitment of time from

several of the attorneys assigned hereto.

Nature and Length of Professional Relationship.  As described above,

Stroock has been actively rendering services on behalf of the Committee

as necessary and appropriate from April 12, 2001 through to the present.

## ALLOWANCE OF COMPENSATION

45.    The professional services rendered by Stroock required a high degree of

professional competence and expertise so that the numerous issues requiring evaluation and

determination by the Committee could be addressed with skill and dispatch and have, therefore,

required the expenditure of substantial time and effort.  It is respectfully submitted that the

services rendered to the Committee were performed efficiently, effectively and economically,

and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole

and the Debtors' estates.

46.    With respect to the level of compensation, § 330 of the Bankruptcy Code

provides, in pertinent part, that the Court may award to a professional person (including

attorneys for a creditors' committee): "Reasonable compensation for actual necessary services

21

rendered by [such] . . . professional person.  11 U.S.C. § 330.  Section 330 further states that the court should take into consideration, <u>inter</u> <u>alia</u>, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title.  <u>Id.</u> The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

47.    The total time spent by Stroock attorneys and paraprofessionals during the Compensation Period for which Stroock seeks payment was 1,139.1 hours.  Such services have a fair market value of $654,188.75.  The work involved, and thus the time expended, was carefully assigned in light of the experience, expertise and familiarity with the issues in these cases required for a particular task.

48.    As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time.  Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

49.    In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $16,935.11 for which Stroock respectfully requests reimbursement in full.  The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters.  Stroock has endeavored to minimize to the fullest extent possible those expenses incurred to enable Stroock to devote time beyond normal office

hours to matters that imposed extraordinary time demands.  Attached hereto as Exhibit "D" is a summary chart reflecting each category of disbursement for which Stroock seeks reimbursement.

50.     Stroock's billing rates do not include charges for photocopying, telephone and telecopy toll charges, computerized research, travel expenses, "working meals", secretarial overtime, postage and certain other office services, because the needs of each client for such services differ.  Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it.  Stroock has endeavored to minimize these expenses to the fullest extent possible.

51.     Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions.  Stroock does not charge for incoming facsimiles.

52.     No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

53.     Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

54.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order:

23

the allowance of compensation for professional services rendered to the Committee during the period from April 1, 2009 through and including June 30, 2009 in the amount of $654,188.75, for which Stroock seeks payment; the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from April 1, 2009 through and including June 30, 2009 in the amount of $16,935.11; authorizing and directing the Debtors to pay to Stroock each of the amounts set forth in (a) (b) and (c) of this WHEREFORE clause (to the extent not already paid pursuant to the Administrative Fee Order); and granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
        August 18, 2009

                              STROOCK & STROOCK & LAVAN LLP

                              _____
                              Lewis Kruger
                              Kenneth Pasquale
                              Members of the Firm
                              180 Maiden Lane
                              New York, New York 10038-4982
                              (212) 806-5400

                              Co-Counsel for the Official Committee of
                              Unsecured Creditors of W. R. Grace & Co., et al.