# REBUTTAL TO THE SUPPLEMENTAL EXPERT REPORT OF DR. CRAIG MOLGAARD

## Suresh H. Moolgavkar, M.D., Ph.D.

Dr. Molgaard's supplemental report was apparently occasioned by the public health emergency declared by the EPA at Libby. It is important to keep in mind, however, that the EPA declaration was not based on any new scientific evidence of imminent danger at Libby. In fact, the scientific information has been available for quite some time. The central scientific issue at Libby continues to be the magnitude of the risk, if any, to residents who were not exposed as Grace workers or as household contacts of Grace workers, of asbestos-associated disease from exposure to contaminated vermiculite. As discussed in my previous reports, the only scientifically defensible information on this issue comes from the series of occupational cohort studies of the Grace workers and from the mortality study conducted by ATSDR in 2002.

In his supplemental expert report, Dr. Molgaard continues to display a misunderstanding of fundamental epidemiologic principles. This misunderstanding is exemplified by his discussion of elevated rates of mesothelioma and asbestosis in Lincoln County, Montana. He says, "[t]he NIOSH mortality rates provide better epidemiologic evidence than fiber potency calculations, because if exposure to asbestos contaminated vermiculite did not cause these rates, then what did?" To suggest that the age-adjusted mortality rates provide better evidence of associations between exposure to Libby fiber and disease than the results of properly conducted analytic epidemiologic studies with exposure information on individuals is simply absurd for the following reasons.

First, age-adjusted mortality rate calculations in specific areas, such as Lincoln County, are used as surveillance tools to identify areas that may have high mortality rates from specific diseases. If increased mortality rates are found, then further analytic epidemiology studies need to be conducted to determine why the rates are elevated. In Lincoln County, there are several possible reasons for elevation in the rates of asbestosis and mesothelioma. The most obvious, of course, is exposure to contaminated vermiculite. But, the critical question here is whether the increase in the rates is attributable entirely to increased risk among those occupationally exposed as Grace workers and their household contacts or whether there is an increased risk in the community from environmental exposure. This question can only be addressed by further studies. The ATSDR mortality study investigated this question in a report published in 2002, and concluded that there was no evidence at that time of a general environmental increase in the risk of asbestos-related disease in Lincoln County.

Second, residents of Lincoln County were exposed to asbestos in occupations outside the Grace operations (Peipins et al., 2003). Therefore, vermiculite contaminated with Libby fiber was not the only source of asbestos exposure in Lincoln County.

Finally, as stressed in my previous reports, a properly conducted analytic epidemiology study with estimation of the potency of Libby fiber is a requisite step in estimating the

risks associated with specific levels of exposure, including environmental exposure, to Libby fiber. An example will make this clear. We know that the risk of lung cancer is elevated among cigarette smokers. However, without an estimate of the lung cancer potency of cigarettes it is impossible to estimate the risk associated with a specific level of smoking. Similarly, age-adjusted mortality analyses cannot be used to estimate the level of risk associated with a specific exposure to Libby fiber. These conclusions follow from elementary epidemiologic principles.

An estimate of potency of Libby fiber is also a requisite first step in estimating the future burden of disease in Lincoln County. Estimation of the future burden of disease in Lincoln County associated with exposure to Libby fiber is not possible with age-adjusted mortality analyses.

Another problem is that age-adjusted mortality analyses of rare diseases, such as mesothelioma and asbestosis, are particularly unreliable in establishing the magnitude of risk. One reason is that the statistics are based on small numbers. Referring to the WoRLD document relied on by Dr. Molgaard, the National Institute of Occupational Safety and Health (NIOSH)[1] cautioned, "[s]tatistics in many tables and figures in this report are based on small numbers. Readers are cautioned that these can be unstable."

In addition, for asbestosis and, to a lesser extent, for mesothelioma, there is a real problem of diagnostic bias. Since both diseases are known to be strongly associated with asbestos exposure[2], it is highly likely that these diseases are over-diagnosed in areas like Lincoln County where there is acute public awareness of potential asbestos exposure. Conversely, these diseases could be under-diagnosed in areas of the country where awareness of asbestos exposure is low. The problem is of particular concern with asbestosis, which is a type of pneumoconiosis. While a diagnosis of pneumoconiosis can be based on objective radiographic diagnostic criteria, a diagnosis of asbestosis requires, in addition, a history of 'sufficient' exposure to asbestos (footnote 1). In an area like Lincoln County where awareness of possible exposure is very high, pneumoconiosis is very likely to be labeled as asbestosis with minimal evidence of asbestos exposure. In fact, NIOSH (see footnote 1) recognizes the role of social and political factors in the diagnoses of occupational diseases in the WoRLD document relied upon by Dr. Molgaard, saying, " [d]ata that depend, either directly or indirectly, on physician reporting or recording of occupational disease diagnoses can be influenced significantly by the physician's ability or willingness to suspect and evaluate a relationship between work and health. These, in turn, are influenced by evolving medical/scientific information, and by the legal, political, and social environment."

---

[1] http://www2a.cdc.gov/drds/WorldReportData/html/Limitations.html
[2] In fact, a diagnosis of asbestosis requires a history of significant asbestos exposure. Commenting on the diagnosis of asbestosis, the American Thoracic Society (Am J Respir Crit Care Med, 170:691-715, 2004) says, " To diagnose this disorder, one must establish the presence of pulmonary fibrosis and determine whether an exposure has occurred that is of sufficient duration, latency, and intensity to be causal." The requirement of sufficient exposure to asbestos to be causal is highly subjective and likely to be interpreted differently by different physicians and in different areas of the country.

Another factor likely to bias diagnosis in Lincoln County is the ongoing litigation. In a 2004 study[3], conducted to determine whether chest radiographic interpretations by physicians retained by attorneys representing persons alleging respiratory changes from occupational exposure to asbestos would be confirmed by independent consultant readers, the authors reported that initial B readers selected by plaintiffs' counsel interpreted study radiographs as positive for parenchymal abnormalities (ILO small opacity profusion category of 1/0 or higher) in 95.9% of 492 cases. Six independent consultant readers classified the films as 1/0 or higher in 4.5% of 2,952 readings. "Statistical tests of these and other comparable data from the study showed highly significant differences between the interpretations of the initial readers and the findings of the consultants". The authors concluded, "the magnitude of the differences between the interpretations by initial readers and the six consultants is too great to be attributed to interobserver variability."

For the reasons discussed above, age-adjusted mortality studies of mesothelioma and asbestosis in Lincoln County are, at best, a poor approach to quantifying the impact of Libby fiber on human health. They cannot be used to estimate either the level of risk for specific exposures or the future burden of Libby-fiber-associated disease in Lincoln County. All they show is that the risk is elevated in Lincoln County, a conclusion with which I concur. They do not show that risk among individuals not occupationally exposed is increased. Dr. Molgaard admitted in his deposition that the Whitehouse studies also cannot be used to estimate risk for specific exposures or to estimate the future burden of disease in Lincoln County.

In this report as in the last, Dr. Molgaard continues to ignore the many occupational cohort studies of Libby fibers that look directly at multiple disease end points. In addition to the age-adjusted mortality analyses, he continues to rely instead on a cross-sectional study, not of disease, but of radiographic abnormalities that may have little relevance to disease in the population. The limitations of the radiographic study that Dr. Molgaard relies on have been thoroughly discussed in my earlier reports. In fact, in his deposition, Dr. Molgaard conceded that the studies he relies on, including the radiographic study and the Whitehouse studies, belong to the category of descriptive studies and cannot be used to draw any inferences regarding causal associations.

As in his May 2009 report, Dr. Molgaard continues to be obsessed with formal definitions. He uses the term ecoepidemiology to describe some of the studies conducted at Libby. It is true that the basic age-adjusted mortality analyses could be considered to have an ecologic design. It is widely recognized that the ecologic design has serious limitations[4], some of which I have discussed above in this report. But, at the end of the day, what is important is not how specific studies are labeled, but whether they can provide answers to important questions about the toxicity of Libby fibers and information that can be used to estimate the future burden of asbestos-related disease in the population of Lincoln County. Dr. Molgaard ignores every study that can provide this information. The age-adjusted mortality analyses he relies on in his supplemental report

---

[3] JN Gitlin, LL Cook, OW Linton, E Garrett-Mayer. Academic Radiology, 11:843-856, 2004.

[4] KJ Rothman, S Greenland: Modern Epidemiology, Second Edition, Lippincott - Raven, 1998.

simply cannot provide the necessary information to estimate either the level of risk associated with specific exposures or the future burden of Libby-fiber-associated disease in the population of Lincoln County.

Dated, August 19, 2009

Suresh H. Moolgavkar, M.D., Ph.D.

**References**

American Thoracic Society (Am J Respir Crit Care Med, 170:691-715, 2004)

ATSDR.. 2002. Mortality in Libby, Montana, 1979-1998.  Libby Asbestos Site, Libby, Lincoln County, Montana.  Agency for Toxic Substances and Disease Registry.  Atlanta, GA.

JN Gitlin, LL Cook, OW Linton, E Garrett-Mayer. Academic Radiology, 11:843-856, 2004.

Peipins LA, Lewin M, Campolucci, Lybarger JA, Miller A, Middleton D, Weis C, Spence M, Black B, Kapil V. Radiographic abnormalities and exposure to asbestos-contaminated vermiculite in the community of Libby, Montana, USA.  Environ Health Perspect 111:1753-1759. 2 Am J Ind Med 2003.

KJ Rothman, S Greenland: Modern Epidemiology, Second Edition, Lippincott - Raven, 1998.

National Institute for Occupational Safety & Health, Work-RElated Lung Disease (WoRLD) Surveillance System, Limitations,
http://www2a.cdc.gov/drds/WorldReportData/html/Limitations.html