```
 1   the placement of the coverage.
 2        A.   That is my recollection.
 3        Q.   Based on your understanding
 4   of insurance coverage -- and I want to
 5   talk a little bit about specifically how
 6   coverage applies in the context of
 7   asbestos personal injury claims -- that's
 8   something that you've dealt with for many
 9   years, right?
10        A.   Yes.
11        Q.   In fact, you've held
12   yourself out as an expert capable of
13   providing expert testimony on those
14   subject matters, right?
15        A.   Correct.
16        Q.   What -- explain for me what
17   your understanding is of how an aggregate
18   limit applicable to products coverage
19   would apply in the context of asbestos
20   personal injury claims.
21             MS. ESAYIAN:  Objection to
22   form, and calls for a legal
23   conclusion.
24             MR. SCHIAVONI:  Outside the
```

[Margin annotation: AR's OBJ: LF / S / ET — bracketing lines 16–24]

AR's OBJ:
LF
S
ET

1 scope of the deposition.
2 　　　　MS. DeCRISTOFARO:
3 　　Objection.
4 　　A.　　Well, if a policy has an
5 aggregate on it, generally speaking, these
6 policies are annual aggregates and it
7 represents the maximum amount of money
8 that a policy must pay in an annual period
9 for products claims under that policy.
10 　　Q.　　I've seen in some of your
11 prior testimony that you've made
12 distinctions between products claims and
13 premises claims.  Do you recall that?
14 　　A.　　Yes, I do.
15 　　　　MS. DeCRISTOFARO:
16 　　Objection.
17 　　Q.　　Can you explain the
18 difference to your understanding between
19 products coverage and premises coverage?
20 　　　　MR. SCHIAVONI:
21 　　Objection.
22 　　　　MS. DeCRISTOFARO:
23 　　Objection.
24 　　A.　　Generally speaking,

AR'S OBJ:
LF
S
ET

1  products coverage provides coverage for
2  claims arising out of the sale or
3  manufacture of a policyholder's products
4  and there's some other caveats to that but
5  basically that's the general idea.
6  Premises coverage is coverage for
7  non-products type claims such as slip and
8  falls or claims arising out of the
9  operations of a business not
10 necessarily -- not from their products.
11          Q.    Do you recall with
12 reference to the Royal Indemnity policies
13 that we've been talking about issued to
14 the Zonolite Company whether there were
15 ever any aggregate limits applicable to
16 bodily injury claims not limited to
17 products coverage?
18                MR. SCHIAVONI:  Objection
19 to form.  No foundation.  You've
20 already elicited from the witness
21 that some of the policies are
22 missing so I also object that it's
23 vague and ambiguous as to what
24 policies you're talking about.

AR's OBJ:
LF
S
ET

1   A.   My --
2           MR. SCHIAVONI: Are you
3   asking the witness to conjure up
4   what the terms are to missing
5   policies?
6           MR. KOVACICH: I'm asking
7   the witness what he recalls about
8   the coverages in those policies
9   that he was familiar with from his
10  work on behalf of W.R. Grace.
11          MR. SCHIAVONI: He can't
12  testify about policies he didn't
13  see and he wasn't there when they
14  were placed so all you can get is
15  interpretation. It's a best
16  evidence objection.
17          MR. KOVACICH: You can make
18  an objection to the form of the
19  question and the witness can answer
20  the question.
21  A.   My recollection with
22  respect to the policies that I've seen and
23  that we had is that there was no aggregate
24  for bodily injury/operations claims but

AR's OBJ
LF
ET
S

1  there was -- there were aggregates under
2  the policies for products claims.
3      Q.    And there were also
4  aggregates under the policies for property
5  damage claims, right?
6      A.    There are aggregates under
7  the policies for products property damage
8  claims, and I'm looking at this one here
9  particularly and it says, you know,
10 aggregate operations.  So there was an
11 aggregate for property damage
12 operations.

AR's OBJ:
LF
BE

13     Q.    Do you recall whether there
14 were any deductibles applicable to any of
15 the coverages in the Royal Indemnity
16 policies issued to the Zonolite Company?
17          MS. ESAYIAN:  Objection to
18     form.
19          MR. SCHIAVONI:  Objection,
20     no foundation, best evidence, calls
21     for a legal conclusion.
22     A.    To the best of my
23 recollection, there were no deductibles or
24 at least if there was an issue about it,

AR's OBJ:
LF
BE

1   it never surfaced. They had to be very
2   minor but I don't recall there being any
3   deductibles under the Royal policies that
4   I had seen. Again, I'm speaking from
5   recollection. The policies say what they
6   say. That's my best recollection.
7           MS. DeCRISTOFARO: Off the
8       record.
9           (Discussion off the
10      record.)
11          MR. KRAMER: I have a quick
12      question. Is this portion of the
13      transcript or deposition deemed
14      confidential for any purpose?
15          MS. ESAYIAN: Every portion
16      is so far unless somebody -- the
17      agreement at the beginning is
18      unless somebody takes it out of
19      that restriction, the whole thing
20      is confidential.
21          MR. KRAMER: Okay, thank
22      you.
23  BY MR. KOVACICH:
24      Q.   Mr. Posner, you testified

```
1   earlier that one of the other things that
2   you did on behalf of Grace for a number of
3   years was negotiate settlements with
4   insurance carriers.  Do you recall that?
5         A.    Yes, I do.
6         Q.    Do you recall a settlement
7   between W.R. Grace and Royal Indemnity?
8         A.    Yes, I do.
9         Q.    Did you participate in the
10  negotiation of that settlement?
11        A.    Yes, I did.
12        Q.    Did you participate in
13  providing information to Royal Indemnity
14  in order to justify the demands that W.R.
15  Grace was making for purposes of
16  negotiating that settlement?
17        A.    Yes, I did.
18        Q.    What information do you
19  recall providing to Royal Indemnity for
20  that purpose?
21              MR. SCHIAVONI:  Objection,
22  Rule 408.
23        A.    I mean, I don't have a
24  specific recollection but the kinds of
```

1    information that I would have provided
2    would have been payment information with
3    respect to the amount of money that Grace
4    had expended to defend and settle asbestos
5    property damage and asbestos personal
6    injury claims.
7            Q.    Do you recall how much
8    Royal Indemnity paid pursuant to that
9    settlement?
10                   MS. ESAYIAN:    Objection.
11           The settlement is subject to a
12           confidentiality provision which
13           applies to -- which neither Grace
14           nor Royal can violate so he can't
15           answer that question.
16                   MR. KOVACICH:    I believe
17           the settlement agreement has been
18           produced in these proceedings with
19           the amount of the settlement
20           unredacted.
21                   MS. ESAYIAN:    I'm not aware
22           of that.
23                   MR. COHN:    Should we go off
24           the record a second and discuss

1           this?
2                    (Off the record.)
3    BY MR. KOVACICH:
4       Q.    Mr. Posner, do you recall
5    how much Royal paid in the settlement with
6    W.R. Grace that we were talking to before
7    the break?
8                    MS. ESAYIAN:  Just before
9    you answer that question, I want to
10   just make it clear on the record
11   that my understanding is that, on
12   behalf of W.R. Grace, we don't
13   object to that question and my
14   understanding is that for purposes
15   of this deposition which is
16   protected by the confidentiality
17   order, Royal does not object to the
18   question in the sense of they're
19   not going to object that it's
20   violating any confidentiality
21   provision in the settlement
22   agreement.
23                   MR. SCHIAVONI:  That's
24   right, for purposes of today.