```
 1         A.    Yes, I remember the
 2   amount.
 3         Q.    And what was the amount?
 4         A.    100 million dollars.
 5         Q.    Do you recall how the
 6   parties arrived at that figure?
 7         A.    Well, like anything else, I
 8   mean, there was a negotiation and we
 9   ultimately agreed on that number, if
10   that's your question.  To my recollection,
11   we asked for more, they offered less, and
12   we ultimately agreed on 100 million.
13         Q.    With the information that
14   you provided to Royal prior to the
15   settlement about claims, did you provide
16   information for purposes of arguing that
17   premises coverage applied in excess of the
18   aggregate limits prior to that
19   settlement?
20               MS. ESAYIAN:  Objection to
21         form and you can answer if you
22         can.
23         A.    I had considered that fact
24   when arriving at the settlement.
```

```
 1        Q.    Was that part of the
 2   negotiations with Royal?
 3        A.    To my recollection, yes.
 4        Q.    Did you provide information
 5   to Royal regarding claims brought by
 6   individuals alleging exposure to asbestos
 7   in Libby, Montana?
 8        A.    I don't recall
 9   specifically, but I will tell you that at
10   the time what was driving -- what was
11   really driving the big dollars in the
12   settlement was the fact that Grace had
13   gotten a favorable ruling in New York
14   against Royal on the property damage
15   claims and a lot of the dollars that Grace
16   was expending at the time the settlement
17   was done was for the defense of asbestos
18   property damage claims so that was a very
19   large component of the driver behind the
20   dollars that were paid at the time.  To
21   the best of my recollection, the personal
22   injury claims were a lot smaller in
23   comparison to the property damage
24   claims.
```

```
1    Continental Casualty so you need to define
2    for me which one.
3            Having said that, I can't tell you,
4    sitting here, whether I signed one or both
5    of them or neither of them.  I'd have to
6    look at the agreements to see if it's
7    actually my signature on there -- on
8    them.
9        Q.    Unfortunately, I have not
10   yet received copies of any of the
11   settlement agreements with any of the
12   insurers through discovery yet so I have
13   not been able to identify them any better
14   than that.
15            Was it your understanding as the
16   representative of Grace that either of
17   those two settlement agreements purported
18   to resolve issues surrounding the
19   policy -- any policy that may have been
20   issued to -- on behalf of BNSF?
21                MS. DeCRISTOFARO:  Object
22       to form.
23       A.    No, the settlements between
24   Grace and CNA, to my recollection, only
```

AR's OBJ: AFNE

```
 1   involve the policies that CNA had issued
 2   directly to Grace.
 3        Q.   Is it your understanding
 4   whether any of the terms of the settlement
 5   agreement, either of the two settlement
 6   agreements with Continental Casualty
 7   Company, included an obligation on the
 8   part of Grace to indemnify Continental
 9   Casualty Company for any claims BNSF may
10   make under policies issued directly to
11   BNSF?
12             MS. DeCRISTOFARO:
13   Objection to form.
14             MR. HORKOVICH:  Objection
15   to form.
16             MS. ESAYIAN:  Could you
17   read that question back?
18             (The reporter reads the
19   pending question.)
20             MS. ESAYIAN:  Objection to
21   form.  It's compound and it's
22   almost unintelligible.  You can
23   answer if you can.
24        Q.   Do you understand the
```



1  question? Would you like me to rephrase
2  it?
3         A.    No, I understand. Yeah,
4  there was no obligation -- according to my
5  recollection, there was no obligation for
6  Grace to indemnify Continental Casualty
7  for any claims made under policies issued
8  to BNSF. The only obligation relates to
9  policies issued to Grace.
10        Q.    Were any of -- let me
11 rephrase that.
12              Are you aware of claims made by
13 BNSF or others under the policies issued
14 by Continental Casualty to Grace for
15 rights as additional assureds or for
16 defense coverages under those policies?
17              MR. HORKOVICH: Objection
18        to form.
19              MS. DeCRISTOFARO:
20        Objection to form.
21        A.    Well, I think -- I think
22 BNSF is making claims today. I'm aware
23 that there's an issue. Other than that,
24 I'm not aware of claims.

```
 1        A.    The way you phrase that,
 2   it's confusing me.  I think you said "on
 3   behalf of Grace to BNSF".
 4             MS. ESAYIAN:  Yeah, I'm
 5        going to object to the form of the
 6        question.  You want to try to
 7        rephrase it?
 8        Q.    Is it your understanding
 9   that the settlement agreement -- the two
10   settlement agreements between Royal and
11   Grace purported to resolve or in any way
12   deal with any insurance policies that may
13   have been issued by Royal to BNSF and
14   purchased by Grace?
15             MR. HORKOVICH:  Objection
16        to form.
17             MR. SCHIAVONI:  Objection,
18        no foundation, calls for a legal
19        conclusion and incomplete
20        hypothetical.
21             MR. HORKOVICH:  Objection
22        to form.
23        A.    The Royal settlement
24   agreement, to my knowledge, you know, only
```

1  ==involved policies that were issued by==
2  ==Royal to the Zonolite Company.==
3      Q.    And Maryland Casualty
4  Company, were you responsible for
5  settlement agreements between Grace and
6  its predecessors, Maryland Casualty
7  Company?
8      A.    Well --
9           MR. LONGOSZ:  Grace's
10          predecessor -- objection to form.
11     A.    I was responsible for
12 Grace.  I don't know about the
13 predecessors.  I was objecting on behalf
14 of Grace.
15     Q.    Have you seen any insurance
16 policies issued by Maryland Casualty
17 Company on behalf of BNSF -- to BNSF that
18 were purchased by Grace?
19     A.    Not that I recall, unless
20 something was produced recently.
21     Q.    How many settlement
22 agreements were entered into between Grace
23 and Maryland Casualty Company?
24          MS. ESAYIAN:  Asbestos or

```
 1          all settlement agreements?
 2              MS. CASEY:
 3          Asbestos-related.
 4          A.    I think there were two
 5   asbestos-related settlement agreements
 6   with Maryland Casualty.
 7              Q.    Is it your understanding
 8   that either one of those two asbestos
 9   settlement agreements with Maryland
10   Casualty purported to deal with any
11   policies Maryland Casualty may have issued
12   to BNSF that were purchased by Grace?
13          A.    Those settlement
14   agreements, to my knowledge, did not
15   pertain to any policies that may have been
16   issued by Maryland to BNSF.
17              Q.    Are you aware whether Grace
18   informed BNSF or otherwise invited BNSF to
19   join into the settlement discussions with
20   any of the three insurers we've been
21   talking about, Maryland Casualty, Royal
22   Indemnity, or Continental Casualty?
23              A.    I'm aware that we did not
24   invite BNSF to participate in the
```

```
 1    settlement discussions.
 2         Q.   And was BNSF informed of
 3    the terms of the settlement before it was
 4    entered into?
 5              MS. ESAYIAN:  Which
 6    settlements?
 7              MS. CASEY:  The
 8    settlements with the three
 9    insurance companies, Maryland
10    Casualty, Royal Indemnity and
11    Continental Casualty.
12         A.   No, they were not.
13              MS. CASEY:  I'm not sure if
14         this -- well, I'll just ask the
15         question.  You guys object.
16         Q.   While negotiating the
17    settlements with any of the insurers upon
18    which Grace has entered into a settlement
19    agreement concerning the asbestos
20    coverage, did BNSF calculate the value, if
21    any, owed to additional assureds?
22              MS. ESAYIAN:  You mean
23         Grace?
24              MS. CASEY:  I'm sorry.
```