# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

——————————————————————X

In Re:                          Chapter 11

                                Case No.
                                01-01139 JKF

W.R. Grace & Co., et al.,

                                (Jointly
            Debtors.            Administered)

——————————————————————X


\* \* \* CONFIDENTIAL \* \* \*

—    —    —

May 13, 2009

—    —    —

DEPOSITION of RICHARD FINKE, held
at the offices of Kirkland & Ellis, 655
Fifteenth Street, N.W., Washington, DC,
commencing at 9:32 A.M., on the above
date, before Lisa Lynch, a Registered
Merit Reporter, New Jersey Certified Court
Reporter, License No. XI00825, and
Certified Realtime Reporter

—    —    —

MAGNA LEGAL SERVICES, LLP

7 Penn Center, 8th Floor

1635 Market Street

Philadelphia, PA   19103

```
 1   A P P E A R A N C E S:
 2
     DRINKER BIDDLE & REATH, LLP
 3   BY:   MICHAEL F. BROWN, ESQUIRE
     One Logan Square
 4   18th and Cherry Streets
     Philadelphia, Pennsylvania 19103-6996
 5   (brownmf@dbr.com)
     Representing OneBeacon America Insurance
 6   Company, Seaton Insurance Company,
     Government Employees Insurance Company,
 7   Columbia Insurance Company f/k/a Republic
     Insurance Company
 8
 9   CAPLIN & DRYSDALE, CHARTERED
     BY:   JEFFREY A. LIESEMER, ESQUIRE
10   One Thomas Circle NW
     Suite 1100
11   Washington, DD 20005
     202.862.7801
12   (jal@capdale.com)
     Representing Grace, Official Committee of
13   Asbestos Personal Injury Claimants ("ACC")
14
     KIRKLAND & ELLIS, LP
15   BY:   BARBARA M. HARDING, ESQUIRE
           THEODORE L. FREEDMAN, ESQUIRE
16   655 Fifteenth Street, N.W.
     Washington, DC  20005-5793
17   202.879.5081
     (barbara.harding@kirkland.com)
18   (tfreedman@kirkland.com)
     Representing the Debtors
19
20   THE LAW OFFICES OF JANET S. BAER, P.C.
     BY:   JANET S. BAER, ESQUIRE
21   70 West Madison Street
     Suite 2100
22   Chicago, Illinois 60602
     jbaer@jsbpc.com
23   Representing W.R. Grace
24
```

```
 1    A P P E A R A N C E S: (continued)
 2    SIMPSON THACHER & BARTLETT, LLP
      BY:  ELISA ALCABES, ESQUIRE
 3    425 Lexington Avenue
      New York, New York 10017-3954
 4    212.455.2846
      (ealcabes@stblaw.com)
 5    Representing Travelers Casualty and Surety
      Company
 6
 7    VORYS, SATER, SEYMOUR AND PEASE, LLP
      BY:  WILLIAM J. POHLMAN, ESQUIRE*
 8         PHILIP DOWNEY, ESQUIRE*
      (*VIA TELECONFERENCE)
 9    52 East Gay Street
      Columbus, Ohio 43215
10    614.464.8349
      (wjpohlman@vorys.com)
11    Representing The Scotts Company, LLC
12
      LEWIS, SLOVAK & KOVACICH, PC
13    BY:  TOM L. LEWIS, ESQUIRE
      P.O. Box 2325
14    723 Third Avenue
      Great Falls, Montana 59403
15    406.761.5595
      tom@lsklaw.net
16    Representing the Libby Claimants
17
      SPEIGHTS & RUNYAN
18    BY:  DANIEL H. SPEIGHTS, ESQUIRE*
      (*VIA TELECONFERENCE)
19    200 Jackson Avenue East
      P.O. Box 685
20    Hampton, South Carolina 29924
      803.943.4444
21    (dspeights@speightsrunyan.com)
      Representing Anderson Memorial Hospital
22
23
24
```

```
 1    A P P E A R A N C E S:(continued)
 2   MENDES & MOUNT, LLP
     BY:  ALEXANDER MUELLER, ESQUIRE
 3   750 Seventh Avenue
     New York, New York 10019
 4   212.261.8296
     (alexander.mueller@mendes.com)
 5   Representing London Market Companies
 6
     FORD MARRIN ESPOSITO & WITNEYER & GLESER
 7   BY:  ELIZABETH M. DeCRISTOFARO, ESQUIRE*
     (*VIA TELECONFERENCE)
 8   Wall Street Plaza
     New York, New York 10005-1875
 9   212.269.4900
     Representing Continental Casualty Company
10   and Continental Insurance Company
11
     BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
12   BY:  MATTHEW I. KRAMER, ESQUIRE*
     (*VIA TELECONFERENCE)
13   200 South Biscayne Boulevard
     Suite 2500
14   Miami, Florida 33131-5340
     305.450.7246
15   (mkramer@bilzin.com)
     Representing Property Damage Committee
16
17   STROOCK & STROOCK & LAVAN, LLP
     BY:  ARLENE G. KRIEGER, ESQUIRE*
18        LEWIS KRUGER, ESQUIRE*
     (*VIA TELECONFERENCE)
19   180 Maiden Lane
     New York, New York 10038-4982
20   212.806.5400
     (akrieger@stroock.com)
21   Representing Official Committee of
     Unsecured Creditors
22
23
24
```

```
 1    A P P E A R A N C E S: (continued)
 2
      CROWELL & MORING, LLP
 3    BY:   MARK D. PLEVIN, ESQUIRE
            NOAH S. BLOOMBERG, ESQUIRE
 4    1001 Pennsylvania Avenue, N.W.
      Washington, DC 20004-2595
 5    202.624.2913
      (mplevin@crowell.com)
 6    (nbloomberg@crowell.com)
      Representing Fireman's Fund Insurance
 7    (Surety Bond)
 8
      STEVENS & LEE, P.C.
 9    BY: MARNIE E. SIMON, ESQUIRE
      1818 Market Street, 29th Floor
10    Philadelphia, Pennsylvania 19103-1702
      215.751.2885
11    (mes@stevenslee.com)
      Representing Fireman's Fund Insurance
12
13    LAW OFFICES OF ALAN B. RICH
      BY:   ALAN B. RICH, ESQUIRE
14    Elm Place, Suite 4620
      1401 Elm Street
15    Dallas, Texas 75202
      214.744.5100
16    (arich@alanrichlaw.com)
      Representing Property Damage PCR
17
18    CONNOLLY BOVE LODGE & HUTZ, LLP
      BY:   JEFFREY C. WISLER, ESQUIRE
19    The Nemours Building
      1007 North Orange Street
20    P.O. Box 2207
      Wilmington, Delaware 19899
21    302.888.6528
      (jwisler@cblh.com)
22    Representing Maryland Casualty
23
24
```

```
 1    A P P E A R A N C E S: (continued)
 2    ECKERT SEAMANS CHERIN & MELLOTT, LLC
      BY:   EDWARD J. LONGOSZ, II, ESQUIRE
 3    1747 Pennsylvania Avenue, N.W.
      12th Floor
 4    Washington, DC 20006
      202.659.6619
 5    (elongosz@eckertseamans.com)
      Representing Maryland Casualty and Zurich
 6
 7    WILEY REIN, LLP
      BY:   RICHARD A. IFFT, ESQUIRE
 8    1776 K Street NW
      Washington, DC 20006
 9    202.719.7170
      (rifft@wileyrein.com)
10    Representing Maryland Casualty and Zurich
11
      COZEN O'CONNOR
12    BY:   JACOB C. COHN, ESQUIRE
      1900 Market Street
13    Philadelphia, Pennsylvania 19103-3508
      215.665.2147
14    (jcohn@cozen.com)
      Representing Federal Insurance Company
15
16    ORRICK HERRINGTON & SUTCLIFFE, LLP
      BY:   PERI N. MAHALEY, ESQUIRE
17    Columbia Center
      1152 15th Street, N.W.
18    Washington, DC 20005-1706
      202.339.8516
19    (pmahaley@orrick.com)
      Representing PI Future Claimants'
20    Representative
21
      CUYLER BURK, P.C.
22    BY:   ANDREW CRAIG, ESQUIRE
      4 Century Drive
23    Parsippany, New Jersey 07054
      973.734.3200
24    (acraig@cuyler.com)
```

```
 1    A P P E A R A N C E S: (continued)
 2    O'MELVENY & MEYERS LLP
      BY:  TANCRED SCHIAVONI, ESQUIRE*
 3    (*VIA TELEPHONE)
      7 Times Square
 4    New York, New York 10036
      212.326.2267
 5    (tschiavoni@omm.com)
      Representing Arrowood Indemnity Company
 6
 7    WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
      BY:  KEVIN J. MANGAN, ESQUIRE*
 8    (*VIA TELECONFERENCE)
      222 Delaware Avenue
 9    Suite 1501
      Wilmington, Delaware 19801
10    302.252.4361
      (kmangan@wcsr.com)
11    Representing State of Montana
12
      PEPPER HAMILTON, LLP
13    BY: LINDA J. CASEY, ESQUIRE*
      (*VIA TELECONFERENCE)
14    3000 Two Logan Square
      Philadelphia, Pennsylvania 19103
15    215.981.4000
      (caseyl@pepperlaw.com)
16    Representing BNSF Railway Company
17    KRAMER LEVIN NAFTALIS & FRANKEL, LLP
      BY:  SARAH SCHINDLER-WILLAIMS, ESQUIRE*
18    (*VIA TELECONFERENCE)
      1177 Avenue of the Americas
19    New York, New York 10036
      212.715.9515
20    (SSchindlerWilliams@kramerlevin.com)
      Representing the Equity Committee
21
22
23
24
```

```
 1                          INDEX
                         EXAMINATION
 2
    Witness Name                         Page
 3  RICHARD FINKE
 4      BY MR. BROWN                     12,333
 5      BY MS. ALCABES                   129
 6      BY MR. LEWIS                     187
 7      BY MR. PLEVIN                    265
 8      BY MR. WISLER                    285
 9      BY MR. COHN                      289
10      BY MR. MANGAN                    296
11      BY MR. DOWNEY                    305, 371
12      BY MR. SCHIAVONI                 343
13      BY MR. SPEIGHTS                  347
14
15                        EXHIBITS
    EXHIBIT    DESCRIPTION                      ID
16
    Exhibit 1  Notice of Deposition of    16
17             Debtors Pursuant to Rule
               30(b)(6)
18
    Exhibit 2  Document entitled W.R.      16
19             Grace/Confirmation Hearing
               30(b)(6) Deposition Notice
20
    Exhibit 3  SEC Form 8-K                      25
21
    Exhibit 4  Exhibit 6 to Exhibit Book, 41
22             Asbestos Insurance
               Transfer Agreement
23
    Exhibit 5  Exhibit 19 to Exhibit       53
24             Book, Retained Causes of
```

```
 1                      EXHIBITS
     EXHIBIT      DESCRIPTION                  ID
 2
 3   Exhibit  6   Exhibit 2 to Exhibit Book,  55
                  Asbestos PI Trust Agreement
 4
     Exhibit  7   Exhibit 4 to Exhibit Book,  55
 5                Trust Distribution
                  Procedures
 6
     Exhibit  8   First Amended Joint Plan     70
 7                of Reorganization
 8   Exhibit  9   Exhibit 5 to Exhibit Book,  92
                  Schedule of Settled
 9                Asbestos Insurers Entitled
                  to 524(g) Protection
10
     Exhibit      Settlement Agreement         98
11   10           Bates stamped OB 1 through
                  33
12
     Exhibit      Travelers/Allstate          135
13   11           30(b)(6) deposition notice
14   Exhibit      Travelers 30(b)(6)          136
     12           supplemental deposition
15                notice
16   Exhibit      Grace/Aetna Asbestos        149
     13           Settlement Agreement dated
17                May 22, 1996
18   Exhibit      Exhibit 25 to Exhibit       178
     14           Book, CMO for Class 7A
19                Asbestos PD Claims
20
21
22
23
24
```

```
 1                    DEPOSITION SUPPORT INDEX
 2
 3
    Direction to Witness Not To Answer
 4  Page    Line        Page    Line
     30      2           37      12
 5   37     17           39       8
     39     15          369       1
 6
    Request For Production of Documents
 7  Page    Line        Page    Line
    (None)
 8
    Stipulations
 9  Page    Line        Page    Line
    (None)
10
    Questions Marked
11  Page    Line        Page    Line
    (None)
12
13                  —     —     —
14
15
16
17
18
19
20
21
22
23
24
```

```
 1    to pay 150 million dollars of its stock

 2    into the Trust and that the holding was

 3    that the confirmation of that Plan

 4    required the insurer to immediately pay

 5    UNR the value of that stock.  And my

 6    question to you is:  Is it the intention

 7    of the insurer neutrality Plan provision

 8    in this Plan to protect the insurers from

 9    such a result in this case?

10            A.    I believe that it is

11    Grace's intent, yes.

12            MR. COHN:  Okay, I have no

13            other questions.

14            MR. BROWN:  I have a couple

15            of follow-ups.

16            MS. HARDING:  Anybody on

17            the phone that has questions?

18            MR. KRAMER:  I know Dan

19            Speights will have questions.

20            MR. DOWNEY:  I have

21            questions.  This is Phil Downey for

22            Scotts but I'm happy to wait my

23            turn.

24            MR. COHN:  If I may suggest
```

 1              that PD be held to the end?

 2                   MS. HARDING:  Yeah, so

 3              we'll wait for PD folks to the end.

 4              Are there insurers on the phone

 5              that have any questions?  Any

 6              insurers on the phone?  No?

 7                   MR. MANGAN:  I may have

 8              questions.  This is Kevin Mangan on

 9              behalf of the State of Montana.

10                   MS. HARDING:  Okay, great.

11    EXAMINATION BY

12    MR. MANGAN:

13         Q.    Good afternoon, Mr. Finke.

14    Can you hear me all right on the phone?

15         A.    Yes.

16         Q.    Okay, great.

17         Are you aware the State of

18    Montana's filed a claim for contribution

19    and indemnification against Grace?

20         A.    Yes.

21         Q.    And in this bankruptcy,

22    obviously?

23         A.    Yes.

24         Q.    And a proof of claim.

```
 1              How is the State classified under
 2      the Plan?
 3                   MS. HARDING:  Object to
 4              form.  Go ahead, to the extent you
 5              know.
 6              A.    As a Class 6 indirect PI
 7      Trust claim.
 8              Q.    What is the basis for that
 9      classification?
10              A.    Well --
11                   MS. HARDING:  I'm just
12              going to object to the extent that
13              it calls for attorney-client
14              privilege or work product
15              communications.  To the extent you
16              can answer without divulging that,
17              then go forward.  And to the extent
18              that -- I do agree that it's broad
19              and I'm not sure I understand what
20              he's asking about, but if you do,
21              Richard, go ahead.
22              A.    My answer is going to be
23      the definition of indirect PI Trust claim
24      in the Plan.
```

1          Q.     Is it your position that

2     contribution and indemnification claims

3     fit within the indirect PI definition?

4          A.     Yes.

5          Q.     Mr. Lewis had asked you a

6     series of questions with regard to the

7     treatment of Libby claimants' claims under

8     the Plan and their claims specifically as

9     to Maryland Casualty, the State of Montana

10    and Burlington Northern.  Do you recall

11    that questioning?

12         A.     Yes.

13         Q.     I believe you testified --

14    and obviously correct me if I'm wrong --

15    that the Libby claimants' claims against

16    the State that give rise to the State's

17    claims against the debtors for

18    indemnification or contribution go into

19    the Trust.

20              MS. HARDING:  Object to

21         form.

22         Q.     Is that your testimony?

23         A.     That the Montana -- that

24    the State of Montana's claims for

```
 1   indemnification would be channeled to the

 2   Trust, yes.

 3          Q.    And you also testified that

 4   the State does not get the benefit of the

 5   524(g) injunction?

 6          A.    That's correct.

 7          Q.    Sir, you testified that to

 8   the extent there was independent conduct,

 9   those claims would not go into the Trust.

10   Is that correct?

11              MS. HARDING:  Object to

12          form and I think it's -- it doesn't

13          properly characterize the extent

14          and -- extent of everything that

15          you said but to the extent you can

16          answer, go ahead.

17          Q.    If you want to clarify what

18   you testified to earlier as far as

19   independent conduct not going to the

20   Trust, I'd appreciate it.

21          A.    Right.  I believe I

22   testified that it is our understanding

23   that to the extent the State of Montana's

24   liable to Libby claimants based on causes
```

```
 1    of action that are separate and

 2    independent from any Grace liability, that

 3    the -- that the State's liability would

 4    not be -- or the State would not have

 5    recourse to the PI Trust for that

 6    liability.

 7            Q.    What do you mean by

 8    separate and independent liability from

 9    Grace's liability?

10            MS. HARDING:  Object to

11            form.  It think calls for

12            speculation.  But to the extent you

13            can answer, go ahead.

14            A.    Well, in this instance,

15    it's my recollection -- although I haven't

16    gone back to look at the decision, it is

17    my recollection that the Supreme Court of

18    Montana found that the State had an

19    independent duty to at least some of the

20    Libby claimants and that with respect to

21    the State of Montana, that's what I had in

22    mind.

23            Q.    You had in mind the

24    Montana's Supreme Court decision?
```

```
 1           A.    Yes.

 2           Q.    As you sit here today as a

 3   representative of the estate, how do you

 4   define independent conduct on the part of

 5   the State of Montana?

 6                 MS. HARDING:  Object to

 7            form and object to the extent that

 8            it calls for legal analysis and

 9            legal conclusion.  I think it's an

10            improper question but -- and it's

11            overly broad.  To the extent you

12            can answer, go ahead.  And if you

13            can't answer, I would caution you

14            not to speculate, so...

15           A.    Conduct that, you know, for

16   which Grace has no liability and which is

17   not derivative of any Grace liability.

18           Q.    Let me follow up with:

19   What do you mean by derivative on the part

20   of Grace?

21                 MS. HARDING:  Same

22            objection.

23           A.    I'm sure --

24                 MS. HARDING:  I just want
```

```
 1              to object to the extent that it

 2              calls for a legal conclusion under

 3              Montana law so --

 4         A.    And I'll add I'm sure

 5    there's a better way to articulate it but

 6    I really don't have an explanation better

 7    at this point.

 8         Q.    And do you believe that it

 9    relates to what would be --

10         A.    Could you repeat the

11    question, please?

12         Q.    -- derivative under Montana

13    law?

14              MS. HARDING:  Can you just

15              restate the question, please?

16         Q.    Sure.   That was

17    inarticulate.   I apologize.

18              I was asking you what did you mean

19    by derivative liability and I believe your

20    answer was you couldn't articulate that.

21    Is that fair to say?

22         A.    Yes.  Sitting here, I

23    really don't feel comfortable trying to

24    articulate it.
```

1          Q.    If we wanted to find out

2    what derivative liability is, where would

3    you look?

4          A.    I would --

5               MS. HARDING:   Object to

6          form.

7          A.    I would want to conduct

8    some legal research on it.

9          Q.    Mr. Finke, I believe you

10   had testified earlier in the line of

11   questioning from Mr. Lewis as to the

12   benefits the Plan proponents received from

13   the channeling injunction and one of those

14   benefits you articulated to be it enabled

15   the debtors to apply uniform standards to

16   similar claims to avoid inequities of the

17   tort system.  Is that a fair

18   characterization of your earlier

19   testimony?

20         A.    Yes, that was one of the

21   reasons.

22         Q.    Okay.  Do you consider the

23   State of Montana's contribution and

24   indemnity claims similar to other claims

 1    that would be funneled into this Trust?

 2                    MS. HARDING:  Object to

 3            form.

 4            A.    Yes.

 5            Q.    On what basis do you make

 6    that answer, sir?

 7                    MS. HARDING:  Object to the

 8            extent it calls for a legal

 9            conclusion or attorney-client

10            privilege or work product

11            communications.  To the extent that

12            it doesn't, you can try to

13            answer.

14            A.    To the extent that they

15    arise out of asbestos PI claims.

16            Q.    Is there any other basis

17    that you claim that the contribution and

18    indemnification claims of the State is

19    similar to other claims funneled into the

20    Trust?

21                    MS. HARDING:  Object to the

22            extent it calls for a legal

23            conclusion and analysis and --

24            A.    Not that I can think of.

```
 1                    MR. MANGAN:  Thank you, Mr.
 2           Finke.  That's all the questions I
 3           have right now.
 4                    MS. HARDING:  Is there
 5           somebody else on the phone that
 6           wanted to ask questions?
 7                    MR. DOWNEY:  Yes, this is
 8           Phil Downey on behalf of Scotts.
 9           Would I be next?
10                    MS. HARDING:  Yes, sure.
11  EXAMINATION BY
12  MR. DOWNEY:
13           Q.    Good afternoon, Mr. Finke.
14  My name is Phil Downey.  I'm counsel for
15  The Scotts Company.  Can you hear me
16  okay?
17           A.    Yes, I can.
18           Q.    Do you need to take a
19  break?  If not, we can press on.
20           A.    No, this is fine.
21           Q.    Most of my questions are
22  going to be on Section 5.12 of the Trust
23  Distribution Procedures and trying to get
24  some clarification on that.  Do you have
```

1    that document in front of you, sir?

2            A.    I'm looking for it.  Okay,

3    I have it.

4            Q.    And, for the record, so

5    it's identified, is that marked as a

6    particular exhibit?

7            A.    Yes, this is marked as

8    Finke Exhibit 7 and it's the Trust

9    Distribution Procedures which are Exhibit

10   4 to the Exhibit Book.

11           Q.    Okay.  And on page 47 is

12   where I understand we'll find Section

13   5.12.

14           A.    Correct.

15           Q.    And if you take a look at

16   the first paragraph there, that's where

17   most of my questions are going to be

18   derived.  Have you seen that before?

19           A.    Yes, I have.

20           Q.    And it defines there a term

21   called "insurance-related TDP claim" and

22   then it says "such a claim that is

23   channeled -- that is channeled to the PI

24   Trust shall be reviewed, processed and, if