## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Docket Nos. 22351 and 22557** |

### ANDERSON MEMORIAL HOSPITAL'S PRE-TRIAL SUBMISSION (AMENDED)

Anderson Memorial Hospital ("Anderson") hereby files its Pre-trial Submission (Amended) pursuant to the Order regarding Phase II Pretrial Procedures, dated July 7, 2009 [Doc. 22351]. As will be set forth in a separate comprehensive Motion to Compel to be filed shortly, Anderson's ability to present its objections at the Confirmation Hearing has been frustrated by the Debtors' discovery abuses and uncertainties about the manner and order of proof. Nevertheless, as a result of recent depositions the Plan Proponents finally permitted Anderson to conduct (months after Anderson's requests), and the Plan Proponents' position taken earlier today regarding the order and manner of proof at the confirmation hearing, Anderson can now clarify to some extent what evidence it intends to present, and add and withdraw certain witnesses and documents, even though the Plan Proponents still have not identified what they will and will not present to meet their burden of proof regarding certain issues raised by Anderson.

## I.    INTRODUCTION

1.    Anderson has filed Objections to Confirmation of Debtors' First Amended Joint Plan ("Objections"), in which it asserts, *inter alia*:

> The Debtors' Plan cannot be confirmed because it violates the fundamental tenet of "equality of treatment" required of any bankruptcy plan, it fails to afford creditors in the same class the same treatment, it improperly classifies creditors who are subjected to disparate treatment in the same class, it improperly releases

third parties, it is not proposed in good faith, and it does not comply with the requirements of the Bankruptcy Code.[1]

2.    Although the Debtors ("Grace") told this Court at the beginning of this bankruptcy that Anderson's 1992 lawsuit would be returned to the tort system,[2] Grace's First Amended Joint Plan ("Plan") proposes that *only* Anderson and its witnesses must travel over 600 miles for a nonjury trial by the Bankruptcy Court.  At the same time, according to Grace, a "substantial" number of traditional PD claims that are "likely" to be filed after the Effective Date, will have the opportunity to return to the tort system;[3] present and future personal injury ("PI") claims will be determined by a trust in accordance with procedures written by the personal injury ("PI") attorneys and interpreted by Trustees of their choice and later have the opportunity to return to the tort system; and present and future Zonolite Attic Insulation ("ZAI") claims will be determined in accordance with procedures written by ZAI's class counsel.

3.    On May 29, 2009, Anderson noticed the deposition of Grace's General Counsel, Mark Shelnitz.  Mr. Shelnitz was the person at Grace "primarily responsible" for the restructuring effort. [Deposition of Richard Finke (September 30, 2008) (Doc. 21259) at 171]. Mr. Shelnitz also has had more involvement in Grace's decisions regarding the litigation against and the proposed treatment of PD claims in general and Anderson in particular than any other Grace official.  Apparently Mr. Shelnitz, or someone to whom he reported, approved and/or promoted Grace's 2005 decision to smear S&R and therefore all other property damage claimants through a series of *ex parte* and false attacks to gain some advantage with this Court,

---

[1] [Doc. 21782 at 1].

[2] [Doc. 587 at 47].

[3] Grace's expert, Dr. Denise Martin, has opined in her report that "Grace Is Likely To Be Subject To Substantial Future Property Damage Demands" [Doc. 21033 at 4].  According to Dr. Martin, "more than 140,000 steel-frame building projects are estimated to have occurred over the period from 1959 through 1973," and "more than 324,000 construction projects involving the types of buildings in which acoustical plaster would have been used are estimated to have occurred over the period from 1940 through 1973." [Id. at 6].

personally attending the primary hearing where this effort was advanced, and the disposition of PD claims was converted from a concise estimation proceeding to an objections proceeding, without due notice to Anderson or other PD claimants. [Hearing (July 19, 2005) (Doc. 9105)]. Mr. Shelnitz was also a member of the Grace team which negotiated the Plan with the PI Committee and Equity (PD was excluded). Mr. Shelnitz was also the senior Grace representative who negotiated the ZAI settlement with Ed Westbrook and Darrel Scott, who represented several ZAI claimants, rather than the PD Committee, which represented all ZAI claimants. In summary, Mr. Shelnitz is the one Grace official in a position to explain Grace's justification for the disparate treatment of Anderson in the Plan. Nevertheless, Grace filed a Motion for Protective Order preventing Anderson from taking the deposition until August 19, 2009, that Grace itself later listed Mr. Shelnitz as a witness and despite the fact that Grace's CFO, Hudson Laforce, referred a number of issues to Mr. Shelnitz during his deposition. At his deposition, however, Grace instructed Mr. Shelnitz not to answer a number of Anderson's questions regarding all of these topics. Anderson is now in the process of preparing a motion to compel dealing with Grace's instructions. Anderson supplements this Pre-Trial Submission in part based on what it learned at Mr. Shelnitz's deposition, but reserves its right to further supplement this Pre-Trial Submission if the Court directs Grace to respond to these questions.

4.     In addition, on May 21, 2009, Anderson noticed the deposition of Dr. Thomas Florence to be taken on June 2, 2009, before the expiration of non-feasibility Phase II discovery. Dr. Florence is an important witness to demonstrate the disparity between the treatment of asbestos PI and PD claims. In addition, Dr. Florence was the senior project manager on a 1995 projection of Grace's PD liabilities. However, Grace informed Anderson that it would not go forward with Dr. Florence's deposition as noticed, but would make Dr. Florence available on July 8, 2009. Anderson then re-noticed Dr. Florence's deposition for July 8, 2009. Thereafter,

without prior consultation with Anderson, Grace changed the deposition until August 11, 2009. Anderson supplements this Pre-Trial Submission in part based on what it learned at Dr. Florence's deposition.

5.       Finally, in accordance with the Court's Third Amended Case Management Order Related to the First Amended Plan of Reorganization, trial briefs and final plan objections regarding feasibility issues are not due until August 25, 2009.  Although the Plan Proponents still have not produced all of their feasibility documents, Anderson recently has taken the depositions of several witnesses dealing in whole or in part with feasibility issues on dates chosen by the Plan Proponents.  In addition, Anderson noticed the date of the Chair of the Equity Committee for August 10, 2009, but that deposition has been changed at the request of the deponent to September 1, 2009.  In addition, Grace has filed a supplemental report of one of its PD experts (whose deposition Anderson previously took), and Anderson has noticed her deposition, which has now been set for September 2, 2009.  Therefore, this Pretrial Statement may be significantly modified after the completion of this discovery, and Anderson reserves the right to identify additional issues at that point.  Anderson also reserves the right to join in any issues identified by other parties.

## II.    STATEMENT OF ISSUES

1.       Whether the Plan fails to provide for "equality among creditors," particularly with respect to the treatment of the Anderson claims.

2.       Whether the Plan fails to provide for the same treatment for each claim or interest of a particular class, unless the holder of the claim has agreed to less favorable treatment, as required by 11 U.S.C. § 1123(a)(4), particularly with respect to the treatment of the Anderson claims.

3.      Whether the Plan's classification scheme is improper because claimants in the same class (Class 7) are subject to disparate treatment.

4.      Whether the solicitation of votes for Class 7 is invalid because claims subject to disparate treatment have been classified together.

5.      Whether the solicitation of votes for Class 6 is invalid because the Court never established a claims bar date for Personal Injury Claims, and accordingly has not determined the universe of potentially allowable Class 6 Claims.

6.      Whether reliance on Class 6 as an impaired accepting class for purposes of confirmation is improper because of the invalidity of the solicitation of Class 6 claims.

7.      Whether the Asbestos PD Trust proposed in the Plan satisfies the requirements of 11U.S.C. § 524(g).

8.      Whether it is improper to channel Property Damage claims and demands to a § 524(g) trust where all resolved Property Damage claims will be paid on the effective date, and the Plan Proponents contend that no unresolved Property Damage claims and demands will ultimately be allowed.

9.      Whether it is improper to channel Property Damage claims and demands to a § 524(g) trust where the Plan Proponents contend that such claims and demands will be unimpaired under the Plan.

10.      Whether the multiple-trust structure of the Plan is prohibited by 11 U.S.C. § 524(g).

11.      Whether the Plan, notwithstanding the Plan Proponents' contentions, impairs Class 7A claims, including by (a) failing to pay interest on such claims, notwithstanding the Plan's preservation of valuable equity interests; and (b) altering the means by which Anderson may pursue its claim post-confirmation.

12.    Whether the Plan Proponents failed to properly solicit the votes of impaired Class 7A claimants for purposes of confirmation of the Plan, rather than exclusively for purposes of 11 U.S.C. § 524(g).

13.    Whether Anderson's claims should be separately classified due to the disparate treatment of the claims; and if so, whether the Plan does not unfairly discriminate and is fair and equitable with respect to such claims.

14.    Whether the Plan fails to provide US ZAI claimants who opt out of the US ZAI Class Settlement with a meaningful opportunity to opt out of the US ZAI Class.

15.    Whether ZAI opt-outs should be separately classified from Class 7B for purposes of voting and treatment under the Plan, including being permitted to pursue their claims outside of the ZAI Trust Distribution Procedures.

16.    Whether the release and exculpatory provisions in Sections 8.8.7 and 11.9 of the Plan are overbroad and improper under applicable standards.

17.    Whether the Plan was not filed in good faith under 11 U.S.C. § 1129(a)(3).

## III.    LIST OF WITNESSES

1.    David T. Austern (by deposition).  Anderson may publish that portion of Mr. Austern's deposition taken by Anderson's counsel regarding the history of the Plan and the FCR's position regarding PD claims.

2.    William M. Ewing.  Anderson may call Mr. Ewing on the issue of feasibility, but it cannot make that decision until it is made aware of what testimony and other evidence Grace will introduce in attempting to meet its burden of establishing Plan feasibility.

3.    Richard Finke (by deposition).  Anderson may publish portions of Mr. Finke's deposition taken by Anderson's counsel dealing with the history and treatment of Anderson prior to and during the bankruptcy and general asbestos property damage issues.

4.    B. Thomas Florence (by deposition).  Anderson may publish that portion of Dr. Florence's deposition taken by Anderson's counsel and counsel for the Creditors' Committee.

5.    John P. Freeman.  Anderson has not made a decision on whether to call Mr. Freeman pending the deposition of Mr. Shelnitz.  If Mr. Freeman testifies, he may testify regarding Grace's actions against Anderson and its counsel before and during the bankruptcy.

6.    W. D. Hilton, Jr. (live or by deposition).  Mr. Hilton may testify as to the processing of Anderson's claims in the Celotex Bankruptcy.

7.    Jay Hughes (by deposition).  Anderson may publish that portion of Mr. Hughes' deposition taken by Anderson's counsel regarding data bases and indices to Grace's documents.

8.    Elihu Inselbuch (by deposition).  Anderson may publish portions of Mr. Inselbuch's deposition taken by Anderson's counsel regarding negotiations and the operation of the Trust Distribution Procedures.

9.    Hudson LaForce.  It is anticipated that Mr. LaForce will testify live at the Phase II confirmation hearing, although if he does not do so, Anderson reserves the right to call Mr. LaForce by deposition recently taken.

10.   Peter Lockwood (by deposition).  Anderson may publish portions of Mr. Lockwood's deposition taken by Anderson's counsel regarding the development of the Bankruptcy Plan in regard to asbestos claims, including the history of negotiations and the ACC's position on certain provisions of the Plan regarding PD claims.

11.   Denise Neumann Martin, Ph.D. (by deposition).  Anderson's understanding is that Dr. Martin will testify at the confirmation hearing, and if that is correct, Anderson does not intend to publish any portions of her deposition, although it may use the same for cross-examination.

12.   Mark A. Peterson (by deposition).  Anderson's understanding is that Dr. Peterson will testify at the confirmation hearing, and if that is correct, Anderson does not intend to publish any portions of his deposition, although it may use the same for cross-examination.

13.   Jeffrey Posner (by deposition).  Anderson may publish portions of Mr. Posner's deposition taken by Anderson's counsel regarding reserves in general and specifically for Anderson and the treatment of property damage insurance under the plan.

14.   Daniel Rourke(by deposition).  In light of Dr. Florence's deposition testimony, Anderson may publish portions of his 2002 deposition (in two volumes) in the Sealed Air litigation dealing with property damage issues.

15.   Darrell W. Scott (by deposition).  Anderson may publish portions of Mr. Scott's deposition dealing with the negotiation and treatment of ZAI claims.

16. Mark Shelnitz (live or by deposition). Anderson reserves the right to publish portions of Mr. Shelnitz's deposition after the Court hears Anderson's soon to be filed motion to compel.

17. Gibson Solomons. Anderson has not made a decision on whether to call Mr. Solomons pending a ruling on its soon to be filed motion to compel. If Mr. Solomons testifies, he may testify regarding statements made by Grace's counsel about its purpose in attacking Speights & Runyan.

18. Edward J. Westbrook (by deposition). Anderson may publish portions of Mr. Westbrook's deposition dealing with the negotiation and treatment of ZAI claims.

19. Pamela Zilly. It is anticipated that Ms. Zilly will testify live at the Phase II confirmation hearing, although if she does not do so, Anderson reserves the right to call Ms. Zilly by deposition recently taken.

Anderson reserves the right to call any witness listed by any other party, any witness identified in further discovery, any witness to refute or explain matters revealed in subsequent discovery or argument, and any witness it identifies in connection with feasibility. Anderson also reserves the right to call any party (including its counsel) as a witness. Anderson also reserves the right for any identified witness to testify about any subject relevant to the confirmation hearing and reserves the right to call any witness listed on other parties' witness lists. Anderson also reserves the right to use all pleadings submitted in this case and reserves the right to call a records custodian necessary to establish the authenticity or business records foundation of any exhibit Anderson seeks to introduce into evidence, if such exhibit's admissibility is not stipulated. Anderson's witness list does not include witnesses who are wholly rebuttal or impeachment witnesses, and Anderson reserves the right to call witnesses for rebuttal or impeachment purposes. Finally, Anderson reserves the right to present evidence on issues not addressed in this Pre-Trial Statement if the issues become relevant to the Court or to Plan Confirmation.[4]

## IV. LIST OF EXHIBITS

In addition to those items already a part of the record in this case, including the record in the Bankruptcy Court, the District Court, and the Court of Appeals, Anderson may offer the following exhibits:

| NO. | DATE | DESCRIPTION |
|-----|------|-------------|
| AMH-1 | 1984 | Dupre, J.S., Mustard, J.F. and Uffen, R.J. (Editors) Report of the Royal Commission on Matters of Health and Safety Arising from the Use of Asbestos in Ontario |

---

[4] Anderson has withdrawn certain witnesses (and withdrawn or not marked certain exhibits) in reliance upon Grace's representations as set forth in the email of Grace's counsel, James Restivo, dated July 14, 2009, and listed below.

| AMH-2 | 01/09/84 | Excerpt of Hearing in the <u>Greenville Schools</u> case. |
| AMH-3 | 06/07/84 | Memo to the Grace Team |
| AMH-4 | 02/00/88 | <u>EPA Study of Asbestos-Containing Materials in Public Buildings - A Report to Congress</u> |
| AMH-5 | 06/01/88 | EPA Final Report entitled "Assessing Asbestos Exposure in Public Buildings" (GSA Building Study) |
| AMH-6 | | Asbestos in Public and Commercial Buildings: Supplementary Analysis of Selected Data Previously Considered by the Literature Review Panel by HEI-AR (Health Effects Institute-Asbestos Research) |
| AMH-7 | | "Exposure to Airborne Asbestos in Buildings." R.J. Lee, D.R. Van Orden, M. Corn, K.S. Crump (Results of air sampling in 315 buildings). <u>Regulatory Toxicology and Pharmacology</u>. |
| AMH-8 | 06/28/89 | Harvard University, <u>Summary of Symposium on Health Aspects of Exposure to Asbestos in Buildings,</u> Proteau, M.D. |
| AMH-9 | 06/29/89 | <u>The New England Journal of Medicine</u> article titled, "Asbestos-Related Disease" B. T. Mossman, Ph.D., and J. Bernard L. Gee, M.D. |
| AMH-10 | 01/19/90 | "Asbestos: Scientific Developments and Implications for Public Policy." B.T. Mossman, J. Bignon, M. Corn, A. Seaton, and J.B.L. Gee <u>Science</u> 247, 294-301 |
| AMH-11 | 1990 | Article entitled "The Safe Buildings Alliance: For Whose Safety?" published in the July/August 1990 issue of <u>Asbestos Abatement</u> |
| AMH-12 | 07/00/90 | <u>Managing Asbestos In Place: A Building Owner's Guide to Operation and Maintenance Program for Asbestos-Containing Materials</u> (U.S. E.P.A.) (Green Book) |
| AMH-13 | 09/07/90<br>09/18/90<br>09/27/90 | Green Book cover letters addressed to "Interested Party School Official Training Provider from Michael M. Stahl |
| AMH-14 | 12/00/90 | Federal Register, 40 C.F.R. Part 61, "National Emission Standards for Hazardous Air Pollutants; Asbestos NESHAP" prepared by the U.S. EPA |
| AMH-15 | 12/20/90 | Letter from Michael M. Stahl, Director Environmental EPA Assistance Division, EPA, to Harold J. Engel |

| | | |
|---|---|---|
| AMH-16 | 1991 | Asbestos in Public and Commercial Buildings: A Literature Review and Synthesis of Current Knowledge.   Health Affects Institute - Asbestos Report. |
| AMH-17 | 1991 | "Airborne Concentrations of Asbestos in 71 School Building" M. Corn, R.J. Lee, D.R. Van Orden, M. Corn, K.S. Crump. Regulatory Toxicology and Pharmacology |
| AMH-18 | 00/06/91 | American Industrial Hygiene Association (AIHA). Association News and Information news release entitled, "AIHA Statement on the Removal of Asbestos-Containing Materials From Buildings." Attached is AM Ind Hyg Assoc.J article entitled the same. |
| AMH-19 | 02/11/91 | Letter from Robert McNally, Chief, Assistant Programs Development Branch, Environmental Assistance Division EPA, to School Schneider |
| AMH-20 | 04/02/91 | William K. Reilly of U.S. Environmental Protection Agency re "The Facts About Asbestos-In-Buildings" - An Advisory to the Public, dated 03/06/91; EPA An Advisory to the Public Asbestos in Buildings, 56 Fed. Reg. 13, 472 |
| AMH-21 | 08/07/91 | JAMA Asbestos Removal - Council on Science Affairs article titled, "Asbestos Removal, Health Hazards, and the EPA" |
| AMH-22 | 09/25/91 | BOMA press release entitled, "BOMA International Welcomes Research Findings" |
| AMH-23 | 1992 | "Airborne Asbestos Levels in Buildings: Maintenance Worker and Occupant Exposures." B. Price, K.S. Crump, and E.C. Baird, III |
| AMH-24 | 1992 | "Exposure Inferences from Airborne Asbestos Measurements in Buildings." B. Price and K.S. Crump.  IAQ 92 Environments for People |
| AMH-25 | 1992 | Gaensler, E.A., "Asbestos Exposure in Buildings," Clinics in Chest Medicine |
| AMH-26 | 02/12/92 | Mortgage Bankers Association of America "Issue Paper - Asbestos Standards" |
| AMH-27 | 07/30/92 | Letter from Linda J. Fisher, Assistant Administrator to Ms. Marlene E. Marschal, Minnesota Department of Health |
| AMH-28 | 10/05/93 | Federal Register, Vol. 58, No. 191, Environmental Protections Agency 40 C.F.R. Part 61, entitled "Asbestos NESHAP Clarification of Intent" pages 51784-51785. |

| | | |
|---|---|---|
| AMH-29 | | Anderson's Certification Briefs in the South Carolina Circuit Court 1998-2001 |
| AMH-30 | | Grace's Certification Briefs in the South Carolina Circuit Court 1998-2001 |
| AMH-31 | 03/25/99 | W.R. Grace's Trial Brief in <u>W.R. Grace & Co.-Conn. v. State of North Dakota and Heidi Heitkamp, Attorney General for the State of North Dakota</u>, State of North Dakota, District Court, County of Burleigh, South Central Judicial District, Case No. 94-C-2079 |
| AMH-32 | 09/2000 | Transcript of the proceedings and exhibits entered into evidence on Anderson's Motion to Certify in the Court of Common Pleas for Hampton County in September 2000 |
| AMH-33 | 04/–/01 | United States Trustee's File relating to the formation of the Asbestos Property Damage Committee |
| AMH-34 | 2002 | Bar Date Pleadings from <u>In Re: Federal-Mogul Global, Inc., Debtors,</u> Chapter 11, Case No. 01-10578 (JKF) (U.S. Bankruptcy Court, District of Delaware) |
| AMH-35 | 07/03/02 | Complaint filed in <u>In Re: The Celotex Corporation and Carey Canada Inc./Asbestos Settlement Trust v. Anderson Memorial Hospital.,</u> Bankr.M.D.Fla., Case Nos. 90-10016-8B1/Adv. No. 02-521 |
| AMH-36 | 2003 | Bar Date Pleadings from <u>In Re: U.S. Mineral Products Company, Debtors,</u> Chapter 11, Case No. 01-2471-JKF (U.S. Bankruptcy Court, District of Delaware) |
| AMH-37 | 02/06/04 | Joint Motion of the Legal Representative and Trust Advisory Committee to Intervene in Adversary Proceeding No. 02-521, <u>In Re: The Celotex Corporation and Carey Canada Inc./ Asbestos Settlement Trust v. Anderson Memorial Hospital.,</u> Bankr. M.D.Fla., Case Nos. 90-10016-8B1/Adv. No. 02-521 |
| AMH-38 | 08/16/05 | Affidavit of John Freeman |
| AMH-39 | 08/20/06 | Affidavit of Gibson Solomons |
| AMH-40 | 04/21/08 | Order on Asbestos Settlement Trust's Motion Seeking Instructions Regarding Payment of Fifty-two Asbestos Property Damage Claims Submitted by Anderson Memorial Hospital, <u>In Re: The Celotex Corporation and Carey Canada Inc./ Asbestos Settlement Trust v. Anderson Memorial Hospital.,</u> Bankr.M.D.Fla., Case Nos. 90-10016-8B1/Adv. No. 02-521 |

| | | |
|---|---|---|
| AMH-41 | | Emails to and from Debtors and their counsel including Email from James Restivo dated July 14, 2009 |
| AMH-42 | 10/24/95 | W.R. Grace BI and PD Cost Estimates: 1995 to 2039 |
| AMH-43 | 10/07/96 | Celotex Asbestos Property Damage Claims Resolution Procedures |
| AMH-44 | | Zonolite invoice to Byars Machine Co. (Finke March 30, 2009 Deposition Exhibit # 2) |
| AMH-45 | | Zonolite invoice to Columbia Plastering Co. (Finke March 30, 2009 Deposition Exhibit # 3) |
| AMH-46 | | Zonolite invoice to Ranger Construction Co. (Finke March 30, 2009 Deposition Exhibit # 4) |
| AMH-47 | | Zonolite invoice to Columbia Plastering Co. (Finke March 30, 2009 Deposition Exhibit # 5) |
| AMH-48 | | Zonolite invoice to C. W. Kirkland Plastering Co. (Finke March 30, 2009 Deposition Exhibit # 6) |
| AMH-49 | | Zonolite invoice to Bank of America Corp. (Finke March 30, 2009 Deposition Exhibit # 7) |
| AMH-50 | 03/04/05 | E-mail from Richard Finke to Dan Speights with attached document (Finke March 30, 2009 Deposition Exhibit # 8) |
| AMH-51 | 03/17/05 | E-mail from Dan Speights to Richard Finke, with attached document (Finke March 30, 2009 Deposition Exhibit # 9) |
| AMH-52 | 04/07/05 | E-mail from Dan Speights to Richard Finke (Finke March 30, 2009 Deposition Exhibit # 10) |
| AMH-53 | 06/27/01 | Debtors' Memorandum in Support of Motion for Entry of Case Management Order, Motion to Establish Bar Date, Motion to Approve Claim Forms, and Motion to Approve Notice Program (Finke March 30, 2009 Deposition Exhibit # 11) |
| AMH-54 | | Tom Florence August 11, 2009 Deposition Exhibit # 3, Estimation of the Number and Value of Pending and Future Asbestos Related Personal Injury Claims, W.R. Grace, Supplemental Report |
| AMH-55 | 06/01/09 | Hudson La Force August 6, 2009 Deposition Exhibit 3, document entitled "W.R. Grace & Co. And Subsidiaries Five Year Financial Model dated June 1, 2009" |

| | | |
|---|---|---|
| AMH-56 | | Daniel Rourke deposition exhibits from the depositions taken June 20, 2002 and July 11, 2002 |
| AMH-56(A) | 06/12/95 | Exhibit 1 to Rourke Deposition - Letter Report from B. Thomas Florence to Marc Wolinsky dated June 12, 1995 |
| AMH-56(B) | 06/12/95 | Exhibit 2 to Rourke Deposition - Memorandum and Revised Draft of Asbestos Presentation from Marc Wolinsky to Robert Beber et al. dated June 12, 1995 |
| AMH-56( C) | 01/30/96 | Exhibit 4 to Rourke Deposition- Letter Report from B. Thomas Florence of KPMG Peat Marwick to Marc Wolinsky dated January 30, 1996 |
| AMH-56(D) | 03/10/97 | Exhibit 6 to Rourke Deposition - Letter from J.W. Hughes, Jr. to Daniel L. Rourke dated March 10, 1997 and attached Letter from J.W. Hughes, Jr. to Daniel Rourke dated March 19, 1997 |
| AMH-56(E) | 08/12/97 | Exhibit 9 to Rourke Deposition - Letter Report from B. Thomas Florence and Daniel L. Rourke to Marc Wolinsky dated August 12, 1997 |
| AMH-56(F) | 08/13/97 | Exhibit 16 to Rourke Deposition - Presentation concerning Solvency - August 14 Meeting of Board of Directors W.R. Grace & Co., dated August 13, 1997 |
| AMH-56(G) | 08/14/98 | Exhibit 19 to Rourke Deposition - Estimate of the Number of Future Claims to be Filed with W.R. Grace & Co. For Compensation for Injuries Arising From Asbestos Exposure and Estimates of the Costs Associated with the Resolution of the Claims, prepared by ARPC and dated August 14, 1998 |
| AMH-56(H) | 12/01/95 | Exhibit 21 to Rourke Deposition - W.R. Grace BI and PD Future Cost Estimates dated December 1, 1995 |
| AMH-56(I) | 06/12/95 | Exhibit 22 to Rourke Deposition - Letter from Edward R. Lerstad ("W.R. Grace & Co.") to Daniel Rourke dated June 12, 1995 |
| AMH-56(J) | 1992 | Exhibit 24 to Rourke Deposition - Summary Table of Square Feet, Hours of Operation and Age of Building, 1992 |
| AMH-56(K) | 1992 | Exhibit 25 to Rourke Deposition - Summary Table of Square Feet, Hours of Operation and Age of Building, 1992 |
| AMH-56(L) | | Exhibit 26 to Rourke Deposition - Grace Survey Response |
| AMH-56(M) | 08/10/95 | Exhibit 27 to Rourke Deposition - Letter from Daniel Rourke to Robert H. Beber dated August 10, 1995 |

| | | |
|---|---|---|
| AMH-56(N) | | Exhibit 28 to Rourke Deposition - EPA's 1984 Asbestos Survey Data |
| AMH-56(O) | 02/29/88 | Exhibit 29 to Rourke Deposition - Litigation Opt Outs dated February 29, 1988 |
| AMH-56(P) | | Exhibit 30 to Rourke Deposition - Estimated Number of Buildings Existing in 1992 and built between 1950 and 1974 by principal use and ownership |
| AMH-56(Q) | 06/13/95 | Exhibit 31 to Rourke Deposition - Memo from Marc Wolinsky to B. Thomas Florence dated June 13, 1995 with list of 27 lawsuits with favorable disposition due to statutory defense (sic) |
| AMH-57 | | Handwritten Note "Bye Bye Denver" (Darrell Scott April 22, 2009 Deposition Exhibit # 1) |
| AMH-58 | 11/21/08 | Term Sheet for Resolution of U.S. Zonolite Attic Insulation Claims (Darrell Scott April 22, 2009 Deposition Exhibit # 2) |
| AMH-59 | 02/27/09 | Debtors' Disclosure Statement for the First Amended Plan of Reorganization Excerpt (Darrell Scott April 22, 2009 Deposition Exhibit # 4) |
| AMH-60 | | Debtors' Disclosure Statement for the First Amended Plan of Reorganization Excerpt (Darrell Scott April 22, 2009 Deposition Exhibit # 5) |
| AMH-61 | 01/02/09 | E-mail from Dan Speights to Ed Westbrook re: Grace ZAI (Westbrook April 24, 2009 Deposition Exhibit # 1) |
| AMH-62 | | Debtors' Disclosure Statement Excerpt (Westbrook April 24, 2009 Deposition Exhibit # 2) |

Anderson reserves the right to use all pleadings submitted in this case and reserve the right to call a records custodian necessary to establish the authenticity or business records foundation of any exhibit Anderson seeks to introduce into evidence, if such exhibit's admissibility is not stipulated.    The witness list does not include witnesses who are wholly rebuttal or impeachment witnesses, and Anderson reserves the right to call witnesses for rebuttal or impeachment purposes.    Anderson reserves the right to amend or supplement this list after discovery is completed and after the Court rules on all discovery motions.

DATED:  August 24, 2009

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE  19801
Telephone:     (302) 654-0248
Facsimile:      (302) 654-0728
E-mail:          loizides@loizides.com

Daniel A. Speights (SC Fed. ID No. 4252)
C. Alan Runyan (SC Fed ID No.3683)
SPEIGHTS & RUNYAN
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC  29924
Telephone:     (803) 943-4444
Facsimile:      (803) 943-4599

- and -

John W. Kozyak
David L. Rosendorf
KOZYAK TROPIN & THROCKMORTON PA
2525 Ponce de Leon, 9th Floor
Coral Gables, FL  33134
Telephone:     (305) 372-1800
Facsimile:      (305) 372-3508

*Counsel for Anderson Memorial Hospital*