50

as security for the Obligations or for the obligations of any Guaranteeing Party under its Guarantee or any property subject thereto.

12.5 Guarantee Absolute and Unconditional. Each Guaranteeing Party waives any and all notice of the creation, renewal, extension or accrual of any of the Obligations and notice of or proof of reliance by the Administrative Agent or any Bank upon its Guarantee or acceptance of its Guarantee; the Obligations, and any of them, shall conclusively be deemed to have been created, contracted or incurred in reliance upon the Guarantees; and all dealings between the Borrowers and the Parent, on the one hand, and the Administrative Agent and the Banks, on the other, shall likewise be conclusively presumed to have been had or consummated in reliance upon the Guarantees. Each Guaranteeing Party waives diligence, presentment, protest, notice of intent to accelerate, notice of acceleration, demand for payment and notice of default or nonpayment to or upon any Guaranteed Party or such Guaranteeing Party with respect to the Obligations. The Guarantees shall be construed as a continuing, absolute and unconditional guarantee of payment without regard to (a) the validity or enforceability of this Agreement, any Note, any other Loan Document, any of the Obligations or any collateral security therefor or guarantee or right of set-off with respect thereto at any time or from time to time held by the Administrative Agent or any Bank, (b) any defense, offset or counterclaim (other than a defense of payment or performance) which may at any time be available to or be asserted by any of the Guaranteed Parties against the Administrative Agent or any Bank or (c) any other circumstance whatsoever (with or without notice to or knowledge of any of the Guaranteed Parties or such Guaranteeing Party) which constitutes, or might be construed to constitute, an equitable or legal discharge of any of the Guaranteed Parties for the Obligations of such Guaranteed Party, or of such Guaranteeing Party under its Guarantee, in bankruptcy or in any other instance. When the Administrative Agent is pursuing its rights and remedies hereunder against any Guaranteeing Party, the Administrative Agent or any Bank may, but shall be under no obligation to, pursue such rights and remedies as it may have against its Guaranteed Party or any other Person or against any collateral security or guarantee for the Obligations or any right of offset with respect thereto, and any failure by the Administrative Agent or any Bank to pursue such other rights or remedies or to collect any payments from such Guaranteed Party or such other Person or to realize upon any such collateral security or guarantee or to exercise such right of offset or any release of such Guaranteed Party or such other Person or of any such collateral security, guarantee or right of offset, shall not relieve such Guaranteeing Party of any liability under its Guarantee, and shall not impair or affect the rights and remedies, whether express, implied or available as a matter of law, of the Administrative Agent and the Banks against such Guaranteeing Party.

12.6 Reinstatement. Each Guarantee shall continue to be effective, or be reinstated, as the case may be, if at any time payment, or any part thereof, of any of the Obligations of any Guaranteed Party thereunder is rescinded or must otherwise be restored or returned by the Administrative Agent or any Bank upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of such Guaranteed Party or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, such Guaranteed Party or any substantial part of any of its property, or otherwise, all as though such payments had not been made.

51

12.7 Payments. Each Guaranteeing Party hereby agrees that the Obligations will be paid to the Administrative Agent for the benefit of the Administrative Agent and the Banks, as the case may be, without set-off or counterclaim in Dollars or Alternative Currency, as appropriate, in immediately available funds at the office of the Administrative Agent, c/o Loan and Agency Services Group (Clearing Account No. 144810547) located at One Chase Manhattan Plaza, 8th Floor, New York, New York 10081.

SECTION 13. MISCELLANEOUS

13.1 Amendments and Waivers; Replacement of Banks. (a) Neither this Agreement, any Note, any other Loan Document, nor any terms hereof or thereof may be amended, supplemented or modified except in accordance with the provisions of this subsection. With the written consent of the Majority Banks, the Administrative Agent, the Parent and the Company may, from time to time, enter into written amendments, supplements or modifications hereto and to the Notes, if any, and the other Loan Documents for the purpose of adding any provisions to this Agreement or the Notes, if any, or the other Loan Documents or changing in any manner the rights of the Banks, the Parent or of the Borrowers hereunder or thereunder or waiving, on such terms and conditions as the Administrative Agent may specify in such instrument, any of the requirements of this Agreement or the Notes, if any, or the other Loan Documents or any Default or Event of Default and its consequences; provided, however, that no such waiver and no such amendment, supplement or modification shall (i) reduce the amount or extend the maturity of any Loan or Note or any installment thereof, or reduce the rate or extend the time of payment of interest thereon, or reduce any fee payable to any Bank hereunder, or change the amount of any Bank's Commitment, in each case without the consent of the Bank affected thereby, or (ii) amend, modify or waive any provision of this subsection or reduce the percentage specified in the definition of Majority Banks, or consent to the assignment or transfer by the Parent or any Borrower of any of its rights and obligations under this Agreement and the other Loan Documents, or amend, modify or waive any provision of Section 12, in each case without the written consent of all the Banks, or (iii) amend, modify or waive any provision of Section 11 without the written consent of the then Administrative Agent. Any such waiver and any such amendment, supplement or modification shall apply equally to each of the Banks and shall be binding upon the Parent, the Borrowers, the Banks, the Administrative Agent, all future holders of the Notes, if any, and all future obligees under the Loans. In the case of any waiver, the Parent, the Borrowers, the Banks and the Administrative Agent shall be restored to their former position and rights hereunder and under the outstanding Loans or Notes, if any, and any other Loan Documents, and any Default or Event of Default waived shall be deemed to be cured and not continuing; but no such waiver shall extend to any subsequent or other Default or Event of Default, or impair any right consequent thereon.

(b) Notwithstanding anything to the contrary contained in subsection 13.1(a), so long as no Default or Event of Default has occurred and is continuing the Borrowers and the Parent shall be permitted in their discretion (but, if any Revolving Credit Loans are then outstanding, with the consent of the Majority Banks (which consent shall not be unreasonably withheld)) to amend this Agreement to replace one or more Banks without the consent of any

Bank to be so replaced pursuant to this subsection 13.1(b) (a "Replaced Bank") and to provide for (w) the termination of the Commitments of such Replaced Bank, (x) the addition to this Agreement of one or more other banking institutions, or an increase in the Commitments of one or more of the other Banks (with the consent of such other Banks), so that the total Commitments after giving effect to such amendment shall be in the same amount as the total Commitments immediately before giving effect to such amendment, (y) if any Loans are outstanding at the time of such amendment, the making of such additional Loans by such new financial institutions or other Bank or Banks, as the case may be, as may be necessary to repay in full the outstanding Loans of such Replaced Bank together with interest thereon and all accrued fees and indemnities with respect thereto immediately before giving effect to such amendment and (z) such other modifications to this Agreement as may be necessary to effect the replacement of such Replaced Bank.

(c) Notwithstanding anything to the contrary contained in paragraph (a) or (b) of this subsection 13.1, if as a result of a change in any Requirement of Law after the date hereof any Borrower or the Parent has become obligated to, or reasonably believes that it will become obligated to pay to any Bank any increased amount pursuant to subsection 5.11, 5.12 or 5.13, and such Bank shall not have waived payment of such increased amounts, then the Borrowers and the Parent may, if no Default or Event of Default has occurred and is continuing and payment of any such increased amounts as have become due has been made or appropriately provided for, upon five Business Days' notice to the Administrative Agent and such Bank, amend this Agreement, without the consent of any Bank or the Administrative Agent, to replace any one or more of the Banks to which such increased amounts have become payable or would become payable and to provide for the matters referred to in clauses (w), (x), (y) and (z) of subsection 13.1(b), and such replaced Bank or Banks shall be deemed to be Replaced Banks for purposes of such clauses.

13.2 Notices. All notices, requests and demands to or upon the respective parties hereto to be effective shall be in writing (including by telecopy), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made on receipt, addressed as follows in the case of the Company, the Parent and the Administrative Agent, as set forth in paragraph 5 of the Notice of Additional Borrower relating to any Borrower other than the Company, in the case of such other Borrower, and as set forth in Schedule I in the case of the other parties hereto, or to such other address as may be hereafter notified by the respective parties hereto and any future holders of the Notes, if any, or any future obligees under the Loans:

```
The Company:          W. R. Grace & Co.-Conn
                      1750 Clint Moore Road
                      Boca Raton, Florida  33487-2707
                      Attention:  Treasurer
                      Telecopy:   (561) 362-1944
                      Telephone:  (561) 362-1941
```

53

| | |
|---|---|
| The Parent: | W. R. Grace & Co.<br>1750 Clint Moore Road<br>Boca Raton, Florida  33487-2707<br>Attention:  Treasurer<br>Telecopy:  (561) 362-1944<br>Telephone: (561) 362-1941 |
| The Administrative Agent: | The Chase Manhattan Bank<br>270 Park Avenue, 38th Floor<br>New York, New York  10017<br>Attention:  Peter Dedousis<br>Telecopy:  (212) 270-7935<br>Telephone: (212) 270-4062 |
| With a copy to: | Loan and Agency Services Group<br>One Chase Manhattan Plaza, 8th Floor<br>New York, New York  10081<br>Attention:  Margaret Swales<br>Telecopy:  (212) 552-5662<br>Telephone: (212) 552-7472 |
| The Book Manager: | Chase Securities Inc.<br>270 Park Avenue, 5th Floor<br>New York, New York  10017<br>Attention:  John Kuhn<br>Telecopy:   (212) 270-1063<br>Telephone:  (212) 270-1656 |

    13.3 No Waiver; Cumulative Remedies. No failure to exercise and no delay in exercising, on the part of the Administrative Agent or any Bank, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law.

    13.4 Survival of Representations and Warranties. All representations and warranties made hereunder and in any document, certificate or statement delivered pursuant hereto or in connection herewith shall survive the execution and delivery of this Agreement and the Notes, if any.

    13.5 Payment of Expenses and Taxes. The Company agrees (a) to pay or reimburse the Administrative Agent for all its out-of-pocket costs and expenses incurred in connection with the development, preparation and execution of, and any amendment, supplement

54

or modification to, this Agreement and any Notes and the other Loan Documents and any other documents prepared in connection herewith or therewith, and the consummation and administration of the transactions contemplated hereby and thereby, including, without limitation, the fees and disbursements of counsel to the Administrative Agent, (b) to pay or reimburse each Bank and the Administrative Agent for all its costs and expenses incurred in connection with the enforcement or preservation of any rights under this Agreement, any Notes, the other Loan Documents and any such other documents, including, without limitation, fees and disbursements of counsel to the Administrative Agent and to the several Banks, and (c) to pay, indemnify, and hold each Bank and the Administrative Agent harmless from, any and all recording and filing fees and any and all liabilities with respect to, or resulting from any delay in paying, stamp, excise and other transactional taxes, if any, which may be payable or determined to be payable in connection with the execution and delivery of, or consummation or administration of any of the transactions contemplated by, or any amendment, supplement or modification of, or any waiver or consent under or in respect of, this Agreement, any Notes, the other Loan Documents and any such other documents, and (d) to pay, indemnify, and hold each Bank and the Administrative Agent harmless from and against any and all other liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever with respect to the execution, delivery and performance by the Loan Parties, and administration and enforcement by the Administrative Agent and the Banks of this Agreement, any Notes and the other Loan Documents and any such other documents (all the foregoing, collectively, the "indemnified liabilities"), provided, that the Company shall have no obligation hereunder to the Administrative Agent or any Bank with respect to indemnified liabilities arising from (i) the gross negligence or willful misconduct of the Administrative Agent or any such Bank, (ii) legal proceedings commenced against the Administrative Agent or any such Bank by any security holder or creditor thereof arising out of and based upon rights afforded any such security holder or creditor solely in its capacity as such, or (iii) legal proceedings commenced against the Administrative Agent or any such Bank by any other Bank or by any Transferee (as defined in subsection 13.6). The agreements in this subsection shall survive repayment of the Loans or Notes, if any, and all other amounts payable hereunder.

13.6 Successors and Assigns; Participations; Purchasing Banks.

(a) This Agreement shall be binding upon and inure to the benefit of the Parent, the Borrowers, the Banks, the Administrative Agent, all future holders of the Notes, if any, all future obligees under the Loans and their respective successors and assigns, except that neither the Parent nor any Borrower may assign or transfer any of its rights or obligations under this Agreement without the prior written consent of each Bank.

(b) Any Bank may, in the ordinary course of its commercial banking business and in accordance with applicable law, at any time sell to one or more banks or other entities ("Participants") participating interests in any Loan owing to such Bank, any Note held by such Bank, any Commitments of such Bank or any other interest of such Bank hereunder and under the other Loan Documents. In the event of any such sale by a Bank of participating interests to a Participant, such Bank's obligations under this Agreement to the other parties to this Agreement

55

shall remain unchanged, such Bank shall remain solely responsible for the performance thereof, such Bank shall remain the holder of any such Note, if any, and the obligee under any such Loan for all purposes under this Agreement and the other Loan Documents, and the Parent, the Borrowers and the Administrative Agent shall continue to deal solely and directly with such Bank in connection with such Bank's rights and obligations under this Agreement and the other Loan Documents. The Parent and each of the Borrowers agrees that if amounts outstanding under this Agreement and the Loans or the Notes, if any, are due or unpaid, or shall have been declared or shall have become due and payable upon the occurrence of an Event of Default, each Participant shall be deemed to have the right of set-off in respect of its participating interest in amounts owing under this Agreement and any Loan or Note to the same extent as if the amount of its participating interest were owing directly to it as a Bank under this Agreement or any Loan or Note, provided that such Participant shall only be entitled to such right of set-off if it shall have agreed in the agreement pursuant to which it shall have acquired its participating interest to share with the Banks the proceeds thereof as provided in subsection 13.7. The Parent and each of the Borrowers also agrees that each Participant shall be entitled to the benefits of subsections 5.11, 5.12, 5.13 and 13.5 with respect to its participation in the Commitments and the Loans outstanding from time to time; provided, that no Participant shall be entitled to receive any greater amount pursuant to such subsections than the transferor Bank would have been entitled to receive in respect of the amount of the participation transferred by such transferor Bank to such Participant had no such transfer occurred.

(c) Any Bank may, in the ordinary course of its commercial banking business and in accordance with applicable law, at any time sell to any Bank or any affiliate thereof and, with the consent of the Company and upon notice to the Administrative Agent, to one or more additional banks or financial institutions ("Purchasing Banks") all or any part of its rights and obligations under this Agreement and the Loans or the Notes, if any, pursuant to a Commitment Transfer Supplement, substantially in the form of Exhibit H, executed by such Purchasing Bank, such transferor Bank (and, in the case of a Purchasing Bank that is not then a Bank or an affiliate thereof, by the Company and the Administrative Agent) and delivered to the Administrative Agent for its acceptance and recording in the Register. Upon such execution, delivery, acceptance and recording, from and after the Transfer Effective Date determined pursuant to such Commitment Transfer Supplement, (x) the Purchasing Bank thereunder shall be a party hereto and, to the extent provided in such Commitment Transfer Supplement, have the rights and obligations of a Bank hereunder with a Commitment as set forth therein, and (y) the transferor Bank thereunder shall, to the extent provided in such Commitment Transfer Supplement, be released from its obligations under this Agreement (and, in the case of a Commitment Transfer Supplement covering all or the remaining portion of a transferor Bank's rights and obligations under this Agreement, such transferor Bank shall cease to be a party hereto). Such Commitment Transfer Supplement shall be deemed to amend this Agreement to the extent, and only to the extent, necessary to reflect the addition of such Purchasing Bank and the resulting adjustment of Commitment Percentages arising from the purchase by such Purchasing Bank of all or a portion of the rights and obligations of such transferor Bank under this Agreement and the Loan or the Notes, if any. On or prior to the Transfer Effective Date determined pursuant to such Commitment Transfer Supplement, the relevant Borrower, at its own expense, if the Purchasing Bank so requests, shall execute and deliver to the Administrative Agent in exchange for any

Case 01-01139-AMC    Doc 22958-5    Filed 08/25/09    Page 7 of 8

56

surrendered Revolving Credit Note and Bid Loan Note a new Revolving Credit Note and Bid Loan Note to the order of such Purchasing Bank in an amount equal to the Commitment assumed by it pursuant to such Commitment Transfer Supplement and, if the transferor Bank has retained a Commitment hereunder, new Notes to the order of the transferor Bank in an amount equal to the Commitment retained by it hereunder. Such new Notes shall be dated the Closing Date and shall otherwise be in the form of the Notes replaced thereby. Any Notes surrendered by the transferor Bank shall be returned by the Administrative Agent to the Company marked "cancelled".

(d) The Administrative Agent shall maintain at its address referred to in subsection 13.2 a copy of each Commitment Transfer Supplement delivered to it and a register (the "Register") for the recordation of the names and addresses of the Banks and the Commitment of, and principal amount of the Loans owing to, each Bank from time to time. The entries in the Register shall be conclusive, in the absence of manifest error, and the Parent, the Borrowers, the Administrative Agent and the Banks may treat each Person whose name is recorded in the Register as the owner of the Loan recorded therein for all purposes of this Agreement. The Register shall be available for inspection by the Parent, the Borrowers or any Bank at any reasonable time and from time to time upon reasonable prior notice.

(e) Upon its receipt of a Commitment Transfer Supplement executed by a transferor Bank and Purchasing Bank (and, in the case of a Purchasing Bank that is not then a Bank or an affiliate thereof, by the Company and the Administrative Agent) together with payment to the Administrative Agent of a registration and processing fee of $3,500, the Administrative Agent shall (i) promptly accept such Commitment Transfer Supplement (ii) on the Transfer Effective Date determined pursuant thereto record the information contained therein in the Register and give notice of such acceptance and recordation to the Banks and the Company.

(f) The Parent and the Borrowers authorizes each Bank to disclose to any Participant or Purchasing Bank (each, a "Transferee") and any prospective Transferee any and all financial information in such Bank's possession concerning such Borrower and its affiliates which has been delivered to such Bank by or on behalf of the Parent, the Company or such Borrower pursuant to this Agreement or which has been delivered to such Bank by or on behalf of the Parent, the Company or such Borrower in connection with such Bank's credit evaluation of such Borrower and its affiliates prior to becoming a party to this Agreement.

(g) If, pursuant to this subsection, any interest in this Agreement or any Note is transferred to any Transferee which is organized under the laws of any jurisdiction other than the United States or any state thereof, the transferor Bank shall cause such Transferee, concurrently with the effectiveness of such transfer, (i) to represent to the transferor Bank (for the benefit of the transferor Bank, the Administrative Agent, the Parent and the Borrowers) that under applicable law and treaties no taxes will be required to be withheld by the Administrative Agent, the Parent, the Borrowers or the transferor Bank with respect to any payments to be made to such Transferee in respect of the Loans, (ii) to furnish to the transferor Bank (and, in the case of any Purchasing Bank registered in the Register, the Administrative Agent, the Parent and the

Company) either U.S. Internal Revenue Service Form 4224 or U.S. Internal Revenue Service Form 1001 (wherein such Transferee claims entitlement to complete exemption from U.S. federal withholding tax on all interest payments hereunder) and (iii) to agree (for the benefit of the transferor Bank, the Administrative Agent, the Parent and the Company) to provide the transferor Bank (and, in the case of any Purchasing Bank registered in the Register, the Administrative Agent, the Parent and the Company) a new Form 4224 or Form 1001 upon the expiration or obsolescence of any previously delivered form and comparable statements in accordance with applicable U.S. laws and regulations and amendments duly executed and completed by such Transferee, and to comply from time to time with all applicable U.S. laws and regulations with regard to such withholding tax exemption.

(h) Nothing herein shall prohibit any Bank from pledging or assigning any Note to any Federal Reserve Bank in accordance with applicable law.

13.7 Adjustments; Set-off.

(a) If any Bank (a "benefitted Bank") shall at any time receive any payment of all or part of its Revolving Credit Loans, or interest thereon, or receive any collateral in respect thereof (whether voluntarily or involuntarily, by set-off, pursuant to events or proceedings of the nature referred to in Section 10(f), or otherwise), in a greater proportion than any such payment to or collateral received by any other Bank, if any, in respect of such other Bank's Revolving Credit Loans, or interest thereon, such benefitted Bank shall purchase for cash from the other Banks such portion of each such other Bank's Loan, or shall provide such other Banks with the benefits of any such collateral, or the proceeds thereof, as shall be necessary to cause such benefitted Bank to share the excess payment or benefits of such collateral or proceeds ratably with each of the Banks; provided, however, that if all or any portion of such excess payment or benefits is thereafter recovered from such benefitted Bank, such purchase shall be rescinded, and the purchase price and benefits returned, to the extent of such recovery, but without interest. Each Borrower agrees that each Bank so purchasing a portion of another Bank's Loan may exercise all rights of payment (including, without limitation, rights of set-off) with respect to such portion as fully as if such Bank were the direct holder of such portion.

(b) In addition to any rights and remedies of the Banks provided by law, each Bank shall have the right, without prior notice to the Parent and the Borrowers, any such notice being expressly waived by the Parent and the Borrowers, to the extent permitted by applicable law, upon any amount not being paid when due and payable by any Borrower hereunder or under the Notes (whether at the stated maturity, by acceleration or otherwise) to set-off and appropriate and apply against such amount any and all deposits (general or special, time or demand, provisional or final), in any currency, and any other credits, indebtedness or claims, in any currency, in each case whether direct or indirect, absolute or contingent, matured or unmatured, at any time held or owing by such Bank or any branch or agency thereof to or for the credit or the account of the Parent or such Borrower. Each Bank agrees promptly to notify the Parent, the Borrowers and the Administrative Agent after any such set-off and application made by such Bank, provided that the failure to give such notice shall not affect the validity of such set-off and application.

CC-BLG000133