1 question?

2 Q    Yes.  You would agree that a risk assessor should report
3 the range of uncertainty when she reports her conclusions?
4 A    That's generally a good practice, but they should focus on
5 what is the best estimate for sure.  They may discuss the
6 uncertainty around that estimate, yes.
7 Q    And, would you agree, sir, that a risk assessor who uses
8 average cumulative exposures to draw conclusions about
9 individual exposures must report to be scientifically accurate
10 and scientifically reasonable, the variations from the average?
11 A    I think I answered that.  If we're interested in, what is
12 most likely a probable for the group, the average is the most
13 likely.  I don't know how else to say that.
14 Q    Should, or should not the risk assessor report the
15 variations in the context of that question?
16          MR. BERNICK:  Objection, variations in what?  Under
17 what circumstances?  Are you talking about statistical tests of
18 variations?  I mean, this, again, is completely unfair and,
19 Your Honor, I submit --
20
21          THE COURT:  Counsel, you simply have a disagreement
22 with this witness.  This witness thinks that you need to apply
23 the average, you don't think so, you're not going to get this
24 witness to change his mind, he's not changing his testimony,
25 could we please move on to something else?

J&J COURT TRANSCRIBERS, INC.

CC-BLG000809


Rodricks - Cross/Rasmussen                                        257

1     MR. RASMUSSEN:  Yes.  It's my last question, Your
2  Honor and I'm not asking about the -- I'm not asking him to
3  change his mind about the average, but I'm asking him a
4  different question.  Whether somebody who is relying on the
5  average should report the variations from the average.
6     THE COURT:  And he's already told you that the
7  average is the most likely, he thinks that should be applied.
8  He's answered that question.
9     MR. RASMUSSEN:  But he hasn't answered the question
10 of whether it's scientifically reasonable and proper to report
11 the average without reporting the variations.
12    MR. BERNICK:  Who reporting?  Who reporting? Are we
13 talking about an industrial hygienist?
14    MR. RASMUSSEN:  I'm talking about a risk assessor, as
15 the question said, Mr. Bernick.
16    THE COURT:  All right.  Would you please repeat the
17 question?
18 Q   Would you agree that a risk assessor, risk assessor, who
19 uses average cumulative exposures to draw conclusions about
20 individual exposures, should report the variations from the
21 average in order to have a scientifically useful piece of work?
22    MR. BERNICK:  Variations in what?
23    MR. RASMUSSEN:  The exposures.
24    THE COURT:  Average cumulative exposures.  I believe
25 that's the same question that was asked before, but in the

CC-BLG000810

1  event that I took inaccurate notes, I'll permit this question
2  to be asked again.  Sir, if you could answer this question.
3           THE WITNESS:  Okay.  I'll try it a slightly different
4  way.  You have a distribution, you want to assess the group
5  risk for one thing, the group, the best measure of the exposure
6  for that group, on the long term is the average.  So, whether
7  it is reported by the industrial hygienist or not, the risk
8  assessor would use the average as the most likely exposure for
9  the group.
10          If you had some data specific to an individual, which
11 said that individual for some reason is outside that
12 distribution or one end or the other, you could look at that
13 separately.  But I think you'd have to have data for the
14 individual, you couldn't just assume that that individual is at
15 one point or another.  Because you don't know where that
16 individual is on the distribution and it could be -- that's why
17 the average is the best, most probable estimate.
18 Q    For the group, but not for an individual --
19          MR. BERNICK:  Objection, objection.
20          THE WITNESS:  And it is for the individual, too.
21          MR. BERNICK:  Objection to the form of the question.
22          THE WITNESS:  I'm sorry.  It is for the individual
23 as well.
24 Q    Well, let me ask you one final question about the
25 individual.  You would agree that to assess risk to an

1  individual, one needs to deal with a known potential
2  variability in exposures, wouldn't you?
3          MR. BERNICK:  Objection to the form of the question.
4  I think we're in industrial hygiene again.  Your Honor, this is
5  going to be, right now, for the last half hour, we're
6  establishing a precedent for this case that's going to blow nay
7  notion of time limits --
8          THE COURT:  No, we're not because we're five minutes
9  over, so we're going to be leaving.  So, is this your last
10 question?  You told me --
11         MR. RASMUSSEN:  Yes, yes.
12         THE COURT:  -- all right, you may answer this
13 question.  This is the last question that the gentleman has for
14 you.
15         THE WITNESS:  You're asking about an individual where
16 we have some data and you're going to look at the data you have
17 over time, for the individual and there will be variable in the
18 day to day, you want to assess the risks for the individual,
19 the average exposure.  If cumulative long term exposure is what
20 matters, same answer, it's the average, even though there are
21 ups and downs from day to day, the risk determinant is the
22 average.
23 Q    But that's only true if they're doing the same job.
24         MR. BERNICK:  Objection.  We've now got another
25 question.

J&J COURT TRANSCRIBERS, INC.

CC-BLG000812

1       THE COURT: Sustained.
2       THE WITNESS: Well, okay, you changed the going in
3  assumption.
4  Q    But it is only true if you're doing the same job.
5       MR. BERNICK: This is discourteous to the Court.
6  This arguing --
7       MR. RASMUSSEN: It's not a game, Mr. Bernick, we're
8  trying to get the truth. It's an important issue.
9       THE COURT: Pardon me, pardon me, gentlemen. You
10 will speak to me, not to each other.
11      MR. RASMUSSEN: Okay. Your Honor, I respectfully
12 suggest that this is a very important question, it goes to an
13 issue that has caused the elimination of thousands of claims
14 from this case.
15      THE COURT: This gentleman has answered every
16 question you've asked him, he has not varied in his approach,
17 he has been consistent that regardless of whether he's looking
18 at populations, at groups, or at individuals, he's going to
19 apply an average. You have made no points other than that, and
20 that is the end of this discussion. Do you have any questions,
21 other than this area, to ask this witness?
22      MR. RASMUSSEN: No, that concludes my examination.
23      THE COURT: All right. Mr. Bernick, do you have
24 anything on redirect?
25      MR. BERNICK: I have no questions of this witness.

                    J&J COURT TRANSCRIBERS, INC.

CC-BLG000813

1    THE COURT: All right, you're excused sir, thank you.
2    THE WITNESS: Thank you.
3    THE COURT: We are adjourned until whenever we meet
4 again, at nine o'clock.
5    MR. BERNICK: Thank you very much for staying late
6 and thanks to your court staff as well, Your Honor.
7                              *****
8                          **CERTIFICATION**
9    WE, TAMMY DeRISI, MARY POLITO, PATRICIA REPKO & ELAINE
10 HOWELL, court approved transcribers, certify that the foregoing
11 is a correct transcript from the official electronic sound
12 recording of the proceedings in the above-entitled matter and
13 to the best of our ability.
14
15 /s/ Tammy DeRisi
16 TAMMY DeRISI
17
18 /s/ Mary Polito
19 MARY POLITO
20
21 /s/ Patricia Repko
22 PATRICIA REPKO
23 /s/ Elaine Howell                Date: January 20, 2008
24 ELAINE HOWELL
25 J&J COURT TRANSCRIBERS, INC.

J&J COURT TRANSCRIBERS, INC.

CC-BLG000814