1 would not have been able to defend themselves through
2 aggressive litigation, that they had overwhelming liability and
3 that any and all things that could ever have been tried they
4 tried.  They didn't work and so Grace was essentially in the
5 soup.  And he offers the opinion that things have not really
6 changed all that much since that time per his own observation.
7          So we have not taken his deposition as a fact
8 witness.  And the reason that we didn't do that was -- or that
9 we took that decision was that Mr. Krause was propounded as
10 being the test case for the fact witness so Mr. Krause's
11 deposition was taken.
12          So we come before the Court in connection with Mr.
13 Snyder with the basic proposition that we should not burden Mr.
14 Snyder with the necessity of appearing in this court.  And the
15 reason for that -- and for that matter testifying as a fact
16 witness.  But the matter that we have actually raised today is
17 his testimony as an expert.
18          And the reason for that is that Mr. Snyder really has
19 nothing to say as an expert that is either a) -- is other than
20 either a) opinions on what the law is.  And we don't believe
21 it's appropriate for any expert to come in and talk about what
22 the law is.  That's for Your Honor to decide.  And Number 2 to
23 revisit on an anecdotal basis his forays and his battles in the
24 asbestos tort system on behalf of other clients by way of
25 saying that's support his testimony as an expert but the same

1  thing is true of Grace. We don't believe that that, that is
2  the latter, is proper expert testimony no way, shape or form.
3           Mr. Snyder, of course, has reviewed certain documents
4  that relate to Grace, but he has not lived through the process
5  himself, he is not conversant in the process as he would be as
6  a fact witness, and the question then becomes as an expert does
7  he now develop the capacity to take this incredible detailed
8  history of what he did for these two companies and transpose it
9  onto Grace, a different company to talk about what would have
10 happened if Grace never went into Chapter 11. And the answer
11 to that is clearly no. And this then gets to what I hope will
12 be a fairly succinct presentation. T.J., do you have slide 20
13 and 21?
14           T.J.: For?
15           MR. BERNICK: I think it's probably for the omnibus
16 show. Okay, we'll just do it on ELMO. That's all right. The
17 first thing to notice about Mr. Snyder is that his testimony in
18 this -- he testifies in the area of basically how people
19 behaved in the tort system. Claiming behavior. And that may
20 strike the Court as being a little bit familiar because that is
21 almost exactly the same subject matter that Dr. Peterson
22 testifies about. And for that matter Dr. Biggs test -- Ms.
23 Biggs testifies about. That is what the claiming behavior has
24 been and what it will be.
25           Now, when it comes to claiming behavior we know that

CC-BLG002091

1  that is a fairly extended process.  We say that they're both
2  pre and post bankruptcy.  There are many different variables
3  that drive it and the like, and we take issue with Dr. Peterson
4  because he attempts to create trends without actually doing the
5  work to find out what happens to the variables in the past and
6  will they continue going forward in the future.  So we say with
7  Dr. Peterson who confronts exactly the same testimony but on
8  the basis of data and -- of questionable value, but data and on
9  the basis of some kind of procedure we take issue with whether
10 his process really rises to the level of being sufficiently
11 systematic and consistent and reliable that it's scientific and
12 that it passes Daubert.
13         We show that it doesn't have predictive value.  We
14 show that it's not dependent upon an object of analysis but
15 instead assumptions that he makes that drive, the performance
16 of his model.  But be that as it may Dr. Peterson confronts
17 exactly the same subject matter, but at least purports to bring
18 to bear a systematic approach.  The same thing cannot be said
19 of Mr. Snyder.  Mr. Snyder does no systematic review of
20 gathering of data.  Does no systematic analysis of data,
21 quantifies absolutely nothing.  So he's taking the same subject
22 matter and he's actually taking a step down rather than a step
23 up or a step even sideways.
24         And his testimony at the deposition was quite clear
25 about this.  No systematic method.  He believes himself to have

1  observed asbestos filing trends and very claim values over time
2  while comparing these trends and values to the phenomenon
3  within the tort system.  And the key, he does not use a
4  systematic effort not to collect data.  This is right out of
5  his deposition.  Why?  I asked him well, how is it that you're
6  really different from Dr. Peterson?  And the answer is that he
7  also likes to talk about the law and economics of the law
8  within the mass tort context.  And he uses his method to reach
9  conclusion about the behavior of lawyers and parties based upon
10 his opinion of the economic consequences of decision.
11         So he likes to talk also about economics which is
12 what Dr. Peterson does, but he has no economic structure that
13 he brings to bear.  So what does it mean when he says, well,
14 I'm talking about the economics?  And the answer is you know
15 what, I know what makes people tick.  I know what they're
16 motivations are.  That is exactly his words is that he knows
17 what the actual motivations are.  And yet -- we then asked
18 well, what's the test?  What's the objective test of whether
19 you know other people's motivations?
20         And he says, and this is very telling -- I wish we
21 had it on video -- a very telling question because he says you
22 know what I've given serious thought to what works and what
23 does not work in this litigation because he's, a) attempted to
24 understand the tort system, b) applied creative solutions, and
25 c) tested the limits of the motivations of the players and the

CC-BLG002093