whether the settlement was binding and he wanted to put me on the stand in that dispute and an arbitrator was deciding whether there was a binding settlement or not, I could testify about my course of dealing with the defense counsel, the people who represented the bus company that ran over Mr. Inselbuch, and without waiving any kind of privilege that would exist between the two of us, that's just black letter privilege law.

And so Mr. Bernick's assertion or suggestion that if Mr. Krause testifies as to what Grace told him, he is waiving the privilege and/or Grace needs the -- his privilege documents to cross examine that, that's just false. The scope of the testimony is what did Grace say to you? What did Grace -- what evidence did you put -- what materials did you put into evidence in a trial against Grace? The cross examination of that, the scope of that cross examination is cabined by the scope of the direct and it doesn't open the door.

THE COURT: Well, the trial issues, I think, are somewhat different because to the extent that there is a trial, there's going to be a record. The issue is settlements, I think. Because the settlement criteria are the different issue because you're talking now about a back and forth that occurred and if the issue is what were the criteria and Grace has some different view about what the criteria were, the issue is how do I cross examine on the criteria? And if the point is Mr. Krause says the criteria were A, B, C, and the issue is well,

259

1  in every case did you meet those criteria, and let me see that
2  you did in order to settle --
3              MR. FINCH: He's certainly not going to say in every
4  case he met those criteria. In some of those cases he didn't
5  meet the criteria and he didn't get any money. The point is
6  that the criteria were the criteria. We are just putting on
7  his testimony solely to show at the end of the day when the
8  parties had a meeting of the minds and agreed to resolve a
9  mesothelioma case or lung cancer case prior to trial, that
10 generally speaking it was on the basis of some proof of
11 exposure to a Grace product and proof that the guy had
12 mesothelioma and not anything other than that. That's the
13 thrust of the testimony and how that came to be in terms of the
14 internal motivations or what people were thinking when they
15 said things to each other is not, a) within the scope of that
16 direct; or, b) implicated by the direct.
17             I think, Your Honor, that there just -- there's
18 absolutely no basis for --
19             THE COURT: Well, if that's --
20             MR. BERNICK: Your Honor, I --
21             THE COURT: You know, if that's what it's going to be
22 limited to on the meso issues, I'm not sure you need a witness.
23             MR. BERNICK: Let me make a suggestion.
24             MR. FINCH: Well, we haven't got any evidence in the
25 record of it so far and Grace hasn't agreed to stipulate to

1  that. And there are areas of his testimony that go obviously
2  beyond that which would include the putting into evidence in
3  cases involving Grace at trial as to which there can't be a
4  privileged --
5          THE COURT: Well, let's --
6          MR. BERNICK: Of course, there is because if the
7  purpose is to show what actually happened at trials that went
8  to verdict, we have a record of what happened at trials that
9  went to verdict. I'm not sure what the relevance of that is to
10 like 99.999 percent of the settlements, but that can be easily
11 made a matter of record in the case. That is not the purpose
12 for Mr. Krause testifying. He wants to go beyond the four
13 corners of the trial records and make comments on how that
14 related to the settlement process and it's the settlement
15 process that creates all these problems. It's the reason why
16 we moved under Rule 408. If all they want to do is to get into
17 evidence what would be in evidence if you had a contract case,
18 which is the contract, the settlement contract, well, the
19 contract is the contract. The settlement document is the
20 settlement document. Nobody can quarrel about what's in the
21 four corners of the document. But here the purpose of the
22 proffer is different. It is not to show what the deal was. It
23 is then to tee up the circumstances leading up to the deal,
24 including their assertion that the criteria were different so
25 that that ought to call into doubt the criteria that we now

1   argue for even though the context is entirely different. That
2   Grace agreed to those criteria. That Grace indeed proposed
3   those criteria. As soon as you get beyond the four corners of
4   the contract, which is the settlement agreement, there's going
5   to be massive dispute about what occurred and why it occurred.
6   They may say, oh, it's hunky-dory. Grace will say, as they
7   already have said in deposition -- that we were over a barrel.
8   We didn't have any choice in the system. This is the way that
9   it worked.
10          So you can't have it both ways. If you want the
11  settlements, we don't need a witness for the settlements. The
12  settlements are the settlements. But if you want to go beyond
13  the four corners of the settlements, the place at issue, the
14  circumstances under which those settlements arose, you can't
15  cut it so finely. You've got to let the stuff come in and --
16          MR. FINCH: Your Honor --
17          MR. BERNICK: -- that's where we have the problem.
18          MR. FINCH: -- may I respond to that?
19          In a breach of contract case, let's assume that the
20  Court finds that a contract is ambiguous. Then extrinsic
21  evidence of the contract would be relevant and admissible
22  testimony.
23          THE COURT: Oh, sure, but these settlements aren't
24  ambiguous and nobody is contending that they are.
25          MR. FINCH: No, but the -- I'm not contending that

CC-BLG002174

1  they are either, but the point is that you could -- if -- I'm
2  using it for as an example -- that if you were fighting about
3  the meaning of the contract, which here we're not fighting
4  about the meaning of the contract, you could put on testimony
5  from the people who negotiated the contract to describe what
6  they said to each other without waiving the privilege as to
7  each of them as their clients if it was lawyers that negotiated
8  the deal.
9           MR. BERNICK: Not if the terms at issue were
10 negotiated by the lawyers.
11          THE COURT: I think you're going to be getting into a
12 problem.
13          Mr. Finch, look, to the extent that Mr. Krause is a
14 fact witness, I'm going to let you call him. But to the extent
15 that there is an issue that involves a privilege and he asserts
16 it, I'm going to strike the testimony.
17          MR. FINCH: I understand that. That's fine, Your
18 Honor.
19          THE COURT: So I would suggest -- and, you know, if
20 it takes a voir dire, I'm not going to get the whole way
21 through his direct if it's going to be an issue where he's
22 going to testify for four hours and then the first question is
23 going to involve striking his testimony. So if there's going
24 to be a voir dire right at the outset, we're going to do it
25 then because I'm not going to listen for four hours or however

1  long to the testimony and then find out that it's all going to
2  be stricken.
3          MR. FINCH: Your Honor, I wasn't planning to proffer
4  Mr. Krause as an expert.
5          THE COURT: I understand. I understand that. But
6  the problem is this, if there is going to be an objection that
7  indicates some privilege issue and Mr. Krause is going to
8  assert that he will not answer a question on cross as a result
9  of an assertion of a privilege, we're going to find that out up
10 front. We are not going to go through hours of testimony only
11 to find out at the end that I'm going to be striking a whole
12 day's worth of testimony. I'm not going to do that.
13         So I suggest --
14         MR. FINCH: Understood, Your Honor.
15         THE COURT: I suggest that you sit down with Mr.
16 Krause and work out the list of questions and you show them to
17 Mr. Bernick in advance because otherwise -- I'm serious, I know
18 this is an unusual request.
19         MR. FINCH: No, the reason that I smiled, Your Honor,
20 is that I had considered that very thing in advance of this
21 hearing and decided not to do it because upon looking at my
22 questions, they were -- some of them were rather inartfully
23 drawn because I dictated them to one of my partners in a car on
24 the way home. So they're not the most crystal-clear. But I
25 think that that may be a way to proceed.

J&J COURT TRANSCRIBERS, INC.

CC-BLG002176

1    THE COURT: Well, all right. I'm not suggesting that
2 you can't modify a question, you know, period. But
3 nonetheless, it seems to me that to the extent that you know in
4 advance that this issue is going to come up -- and I think it
5 will -- we might as well know early on in the process where
6 it's coming so that the first time it's going to come up we can
7 address the issue.
8    MR. FINCH: Thank you, Your Honor.
9    MR. BERNICK: And again, we will obviously make our
10 best effort to try to make this work. Those questions though
11 not only have to be assessed against the backdrop of the
12 anticipated cross examination, they now have to be assessed
13 against the backdrop of whether the same information as to
14 which they're now going to allow questions to be asked were the
15 subject of instructions not to answer at the deposition and
16 document requests that were not responded to.
17    In other words, that they now say, oh, well, gee,
18 we'll let you get into X. We took Mr. Krause's deposition. We
19 did conduct the discovery in advance with the Court's approval
20 and pursuant to a process that the Court agreed, and the
21 documents haven't been produced.
22    MR. FINCH: Your Honor --
23    THE COURT: Well -- wait. The issue may be that at
24 this point in time Mr. Krause knows what those questions are.
25 He has certainly had an opportunity by now to consult with

CC-BLG002177

1  clients to find out whether there is a concern about an
2  attorney/client privilege as to any of those questions.  Mr.
3  Finch, you are to contact him to find out whether he has made
4  that inquiry of his clients.  If not, he is ordered to make
5  that inquiry of his clients and find out whether, in fact, his
6  clients are asserting that attorney/client privilege.  It is
7  after all -- or work product to the extent that's what it is --
8  it is after all the client's privilege, not his.  Therefore, he
9  will find out whether the client wishes to assert that
10 privilege and if the client wishes to assert it, whether or not
11 the client will waive it.  And if that means 3,000 clients,
12 he's to contact them all.  So that when we get to this issue at
13 trial, we have an indication of what this is.  That's an order.
14 He's to do it before he's called as a witness.  It is the
15 client's privilege, not his.
16             MR. FINCH:  We'll do our best, Your Honor.
17             THE COURT:  All right.
18             MR. BERNICK:  I think that that's all we had this
19 afternoon.
20             MR. FINCH:  Your Honor, in light of the ruling with
21 respect to --
22             THE COURT:  No.  You must get the scheduling fixed
23 because I don't trust you folks not to do it.  So unless you're
24 going to, you know, under oath tell me that you'll get a
25 scheduling order done by tomorrow.  If you tell me you'll get

CC-BLG002178

1  it done by tomorrow and I can trust you, I'll let you go.
2      MR. FINCH: You mean the schedule -- the only
3  question is we'd like a minute to confer with ourselves and
4  call witnesses re their availability. I'm pretty sure Mr.
5  Snyder is available on the 9th of -- what month are we in?
6      MR. BERNICK: Find out if he's going to be available
7  thereafter.
8      MR. FINCH: Yeah. I understand. But before we go
9  lock ourselves in a room with the other side, can we have a
10 short period of time --
11     THE COURT: Oh, sure.
12     MR. FINCH: -- to discuss it among ourselves and then
13 try to reach some --
14     THE COURT: So you want two days instead of one day.
15     MR. FINCH: No. I fully intend to leave here this
16 evening. I don't think this should take that long.
17     THE COURT: Oh, all right. Yes, that's fine.
18     MR. BERNICK: We'll be in the same town also, I
19 think, tomorrow.
20     UNIDENTIFIED SPEAKER: We'll be in Washington
21 tomorrow.
22     MR. BERNICK: I'm sorry?
23     UNIDENTIFIED SPEAKER: We'll be in Washington.
24     THE COURT: Look, Friday is fine if you can get it
25 done by Friday. That's when Mr. Bernick, I think, was asking

CC-BLG002179

1  so that they can prepare. That's all right with me.
2           MR. FINCH: We'll certainly get it done by Friday.
3           THE COURT: All right. That's fine with me. If you
4  can get it done by Friday. But I do expect that I will get a
5  scheduling order submitted -- or a schedule, I should say,
6  submitted by Friday. I don't need it in the form of an order.
7           MR. FINCH: I appreciate Your Honor's guidance on
8  that.
9           THE COURT: That's a promise by everybody, correct?
10          MR. FINCH: Yes. Yes, Your Honor.
11          THE COURT: All right. Okay. We're adjourned.
12          MR. FINCH: Thank you, Your Honor.
13          THE COURT: Thank you.
14          MR. BERNICK: These are the slides --
15          THE COURT: All right. Thank you. Mr. Finch, I've
16 been given copies of the slides with the one deleted that I
17 said had not been shown or if it had I had not seen.
18                        * * * * *

# C E R T I F I C A T I O N

We, ELAINE HOWELL, PATRICIA REPKO, TAMMY DeRISI, KIMBERLY UPSHUR and PATRICIA A. KONTURA, court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of our ability.

/s/ Elaine Howell

ELAINE HOWELL


/s/ Patricia Repko

PATRICIA REPKO


/s/ Tammy DeRisi

TAMMY DeRISI


/s/ Kimberly Upshur

KIMBERLY UPSHUR


/s/ Patricia A. Kontura

PATRICIA A. KONTURA

J&J COURT TRANSCRIBERS, INC.

April 7, 2008

J&J COURT TRANSCRIBERS, INC.