# Exhibit Long H

**Long00164**

B10 (Official Form 10) (4/98)

| UNITED STATES BANKRUPTCY COURT  DISTRICT OF DELAWARE | | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor: W.R. Grace & Co. | Case Number: 01-1139 | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>National Union Fire Insurance Company of Pittsburgh, Pa., | ( ) Check box if you are aware that anyone else has filed a proof of claim relating to your claim<br>Attach copy of statement giving particulars | |
|---|---|---|
| Name and address where notices should be sent:<br><br>Michael S. Davis, Esq.<br>Zeichner Ellman & Krause LLP<br>575 Lexington Avenue<br>New York, New York 10022<br>Telephone Number: (212) 223-0400 | ( x ) Check box if you have never received any notices from the bankruptcy court in this case<br><br>( ) Check box if you address differs from the address on the envelope sent to you by the court | THIS SPACE IS FOR COURT USE ONLY |
| Account or other number by which creditor identifies debtor:<br>See Attachment | Check here ( ) replaces<br>If this claim ( ) amends a previously filed claim, dated:_____ | |

| 1. **Basis for Claim** | |
|---|---|
| ( ) Goods sold<br>( ) Services performed<br>( ) Money loaned<br>( ) Personal injury/wrongful death<br>( ) Taxes<br>( X ) Other __See Attachment__ | ( ) Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>( ) Wages, salaries, and compensation (fill out below)<br>Your SS#: _____ _____ _____<br>Unpaid compensation for services performed<br>from _____ to _____<br>        (date)                (date) |

| 2. **Date debt was incurred: See Attachment** | 3. **If court judgment, date obtained: N/A** |
|---|---|

4. Total Amount of Claim at Time Case Filed:  $46,971,746. plus unliquidated amounts  * Subject to Adjustment

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below

( ) Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 5. **Secured Claim.** | 6. **Unsecured Priority Claim.** |
|---|---|
| ( x ) Check this box if your claim is secured by collateral (including a right of setoff)<br>Brief Description of Collateral:<br>( ) Real Estate    ( ) Motor Vehicle<br>    ( x ) Other __See attachment and Exhibit C__<br><br>Value of Collateral:          More than $46,971,746.<br>          See Exhibit C<br><br>Amount of arrearage and other charges at time case filed<br>included in secured claim, if any: $_____ | ( ) Check this box if you have an unsecured priority claim<br>Amount entitled to priority _____<br>Specify the priority of the claim:<br>( ) Wages, Salaries, or commissions (up to $4300),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U S C § 507(a)(3)<br>( ) Contributions to an employee benefit plan - 11 U S C § 507(a)(4)<br>( ) Up to $1950 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U S C § 507(a)(6)<br>( ) Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U S C § 507(a)(7)<br>( ) Taxes or penalties owed to governmental units - 11 U S C §507(a)(8)<br>( ) Other Specify applicable paragraph of 11 U S C § 507(a)(___)<br>*Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment |

| 7. Credits: The amounts of all payments on this claim has been credited and deducted for making this proof of claim | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| 8. Supporting Documents: *Attach copies of supporting documents.* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien<br>DO NOT SEND ORIGINAL DOCUMENTS If documents are not available, explain If the documents are voluminous, attach a summary<br>9. Date - Stamped Copy: To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | |

| Date<br><br>March 27, 2003 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>_Michael S Davis, Attorney for Claimant_ | WR Grace     BF.39.156 7772<br>        00009553<br>SR=564 |
|---|---|---|

*Penalty for presenting fraudulent claim* Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571

**REC'D MAR 2 8 2003**

Long00165

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------ X

IN RE:                                   :
                                         :   Chapter 11
W.R. GRACE & CO., et al.,                :
                                         :
            Debtors.                     :   Case No. 01-01139-JKF
                                         :   (Jointly Administered)
------------------------------------ X

## Attachment to Proof of Claim

This proof of claim is filed on behalf of National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") that provided Settlement Agreement Bonds and other Surety Bonds (the "Bonds") to W.R. Grace & Co. and W.R. Grace & Co. Conn. (the "Debtors"). Pursuant to the Bonds, the Debtors entered into Continuing Agreements of Indemnity for Miscellaneous Surety Bonds (the "Indemnity Agreements") and are obligated to reimburse National Union for any payments and expenses that arise under the Bonds. Copies of certain of the Bonds and the Indemnity Agreements are attached as Exhibit A.

On or about January 17, 2002, the Debtors commenced Adversary Proceeding No. 02-01657 (the "Adversary Proceeding") against National Union. A copy of the complaint is attached hereto as Exhibit B. The Adversary Proceeding relates to the Bonds and the Indemnity Agreements. In response, National Union filed an Answer, Counterclaims, and Amended Third-Party and Joinder Complaint for

Declaratory Judgment and Injunctive Relief (the "Counterclaims"), a copy of which is attached as Exhibit C.

National Union hereby asserts a claim for reimbursement of any unreimbursed payments of National Union may incur pursuant to the Bonds in amounts up to the following:

| | |
|---|---|
| Bond ESD7311060 | $11,055,650 |
| Bond ESD7311061 | $ 3,943,500 |
| Bond ESD7310985 | $31,772,596 |
| Total | $46,771,746 |

plus any and all expenses National Union may incur pursuant to the Bonds. In addition, National Union claims reimbursement of all legal fees, expert fees and related costs incurred by National Union in an amount not less than $200,000, which amounts continue to accrue.

The amount of National Union's claim set forth on this proof of claim is partially liquidated and partially unliquidated and is subject to further and future adjustment. As such, National Union reserves the right to, from time to time, amend the amounts of this proof of claim.

Further documentation supporting this proof of claim is voluminous and may contain confidential and privileged materials.

2

Long00167

To the extent National Union holds any cash or other collateral as security for its claim, regardless of whether such cash or collateral is property of the Debtors' estates, National Union asserts a secured claim and/or a right of setoff and reserves its rights to collect against same by recoupment and/or setoff. Alternatively or in addition, to the extent National Union holds an interest in any property of the Debtors, National Union asserts a security interest in same. National Union's rights to setoff are set out in the counterclaims included in Exhibit C, which are incorporated herein.

National Union reserves the right to amend, update, supplement, modify, increase, or otherwise further liquidate this proof of claim from time to time for any reason necessary to accurately reflect the amount or nature of the claims being asserted. To the extent National Union may have rights against other related debtors of which it is not presently aware, or such other related debtors claim rights to, or interests in, the Bonds and/or the Indemnity Agreements, this proof of claim should be deemed filed in each separate case. National Union further reserves (i) the right to assert separate requests for payment of administrative expense or other priority claims under section 503(a) of the Bankruptcy Code against Debtors if, as and when the Bonds and/or the Indemnity Agreements are determined to be executory contracts within the meaning of section 365 of the Bankruptcy Code; (ii) the right to request adequate protection of its interests in the Bonds, the

3

Long00168

Indemnity Agreements, and/or otherwise; (iii) the right to assert any claims which may arise in any subsequent litigation regarding any aspect of the Bonds, the Indemnity Agreements, or otherwise; and/or (iv) the right to assert any such claims which are otherwise warranted under the circumstances.

This proof of claim shall not be deemed to be a waiver of, and is without prejudice to, any and all of National Union's rights, claims and/or defenses of any nature whatsoever under the Bonds, the Indemnity Agreements, the Bankruptcy Code, and/or any otherwise applicable law.

410119 01/2888-007/MGM

4

Long00169

# Exhibit A

**Long00170**

ꞥny                 Bond No. *ESD 7311060*

## SETTLEMENT AGREEMENT BOND

KNOW ALL MEN BY THESE PRESENTS, That we, W. R. GRACE & CO. – CONN. (hereinafter called "Principal"), as Principal, and National Union Fire Insurance of Pittsburgh, PA, a Corporation organized and existing under the laws of the State of Pennsylvania (hereinafter called "Surety"), as Surety, are held and firmly bound unto the Settling Plaintiffs, as such term is defined in the Agreement (as defined below), by and through Reaud, Morgan & Quinn, Inc. ("RMQ") and Environmental Litigation Group, P.C. , as Obligees (hereinafter collectively called "Obligees"), in the penal sum of $38,475,770 and no/100 Dollars, good and lawful money of the United States of America, for the payment of which, well and truly to be made, we bind ourselves, our heirs, administrators, executors, successors and assigns, jointly and severally, firmly by these presents.

The liability of the Surety to the Obligees, or either of them, shall in no event exceed the penal sum.

WHEREAS, the Principal and the Obligees have entered into the Confidential Settlement Agreement for the Alabama Cases, as amended, in the form attached as Exhibit A hereto (the "Agreement"), which provides for certain payments to be made by the Principal to RMQ in trust for the Settling Plaintiffs for the purposes set forth therein.

WHEREAS, the Principal is required to provide the Obligees certain collateral that said payments be made within the terms of the said Agreement.

NOW, THEREFORE, if during the term of this bond, the Principal shall make said payments to the Obligees as required, this bond shall be null and void; otherwise to remain in full force and effect.

PROVIDED, HOWEVER, That:

1. This bond is effective as of the date of the Agreement, but shall apply only to the payments scheduled to be made on January 15, 2001 in the amount of $17,690,400, on January 15, 2002 in the amount of $9,729,720 and on January 15, 2003 in the amount of $11,055,650, which amounts constitute the aggregate amount of $38,475,770, and not to include the initial payment in the amount of $21,484,380. The Surety's liability under this bond shall terminate as of the date of final payment under the Agreement.

2. During the term of this bond, the Surety may terminate its liability by giving written notice to the Obligees and the Principal at least sixty (60) days prior to the effective termination date. If the Obligees has not been provided with a replacement bond or other assurance or cash collateral in accordance with the terms of the Agreement, upon demand by the Obligees within 5 business days prior to the effective termination date of this bond the Surety shall forfeit to Obligees the penal sum of this Bond as set forth above, less actual payments to the Obligees.

3. In no event shall the Surety's liability exceed the penal amount of this bond less scheduled payments to the Obligees.

SIGNED, SEALED AND DATED this 23rd day of October, 2000.

W. R. GRACE & CO. – CONN.              National Union Fire Insurance of Pittsburgh, PA
(Principal)                           (Surety)

By: _Robert M. Tarola_              By: _Haywood L. Willis_
ROBERT M. TAROLA                Haywood L. Willis, Attorney-In-Fact
SR. VP & CFO

F:\wp\wow-Men Word processing\rich\bonds\Office - Settlement Agreement Bond - 10-5-00

01/16/2002 10:13 FAX 312 861 2200 1      KIRKLAND&ELLIS EO                                   ☑087

American Home Assurance Company                                    POWER OF ATTORNEY

National Union Fire Insurance Company of Pittsburgh, Pa.

Principal Bond Office: 70 Pine Street, New York, NY 10270          No. 14-E-C&I-GROUP

**KNOW ALL MEN BY THESE PRESENTS:**

That American Home Assurance Company, a New York corporation, and National Union Fire Insurance Company of Pittsburgh, Pa., a Pennsylvania corporation, does each hereby appoint

—Robert E. Staples, Kenneth Cornell, Haywood L. Willis, Susan Radwanski, Vivian Mattox, Tracy Boone, Sharon Melton; of Philadelphia, Pennsylvania—

its true and lawful Attorney(s)-in-Fact, with full authority to execute on its behalf bonds, undertakings, recognizances and other contracts of indemnity and writings obligatory in the nature thereof, issued in the course of its business, and to bind the respective company thereby.

IN WITNESS WHEREOF, American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, Pa. have each executed these presents

this 5ᵗʰ day of June, 2000.

 

Lawrence W. Carlstrom, Senior Vice President
National Union Fire Insurance Company of Pittsburgh, Pa
Vice President, American Home Assurance Company

**STATE OF NEW YORK   }**
**COUNTY OF NEW YORK }ss.**

On this 5th day of June, 2000, before me came the above-named officer of American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, Pa., to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seals of said corporations thereto by authority of his office.

JOSEPH P. ROZZOLIO
Notary Public, State of New York
No. 01RO5152754
Qualified in Westchester County
Term Expires Jan. 31, 20__

**CERTIFICATE**

Excerpts of Resolutions adopted by the Boards of Directors of American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, Pa. on May 18, 1976:

"RESOLVED, that the Chairman of the Board, the President, or any Vice President be, and hereby is, authorized to appoint Attorneys-in-Fact to represent and act for and on behalf of the Company to execute bonds, undertakings, recognizances and other contracts of indemnity and writings obligatory in the nature thereof, and to attach thereto the corporate seal of the Company, in the transaction of its surety business."

"RESOLVED, that the signatures and attestations of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company when so affixed with respect to any bond, undertaking, recognizance or other contract of indemnity or writing obligatory in the nature thereof;

"RESOLVED, that any such Attorney-In-Fact delivering a secretarial certification that the foregoing resolutions still be in effect may insert in such certification the date thereof, said date to be not later than the date of delivery thereof by such Attorney-in-Fact."

I, Elizabeth M. Tuck, Secretary of American Home Assurance Company and of National Union Fire Insurance Company of Pittsburgh, Pa. do hereby certify that the foregoing excerpts of Resolutions adopted by the Boards of Directors of these corporations, and the Powers of Attorney issued pursuant thereto, are true and correct, and that both the Resolutions and the Powers of Attorney are in full force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the facsimile seal of each corporation



this 23rd day of October, 2000.

Elizabeth M. Tuck, Secretary

65166 (4.99)

National Union Fire Insurance Company
of Pittsburgh, Pa.
Executive Offices
70 Pine Street
New York, NY 10270

# FINANCIAL STATEMENT
## as of DECEMBER 31, 1999

| Assets | | Liabilities | |
|---|---|---|---|
| Bonds......................................... | $ 2,681,180,892 | Reserve for Losses and Loss Expense.. $ | 5,490,058,870 |
| Stocks......................................... | 6,060,644,012 | Reserve for Unearned Premiums.......... | 1,920,749,321 |
| Collateral Loans............................ | | Reserve for Expenses, Taxes, | |
| Cash & Short-Term Investments........ | 110,449,115 | Licenses and Fees.......................... | 16,730,602 |
| Agents' Balances or Uncollected Premiums.... | 2,844,841,826 | Provision for Reinsurance.................. | 373,415,393 |
| Funds Held by Ceding Reinsurers......... | 149,680,968 | Funds Held Under Reinsurance | |
| Reinsurance Recoverable on Loss Payments.. | 858,225,157 | Treaties........................................ | 241,952,823 |
| Equities & Deposits in Pools & Associations.. | 175,977,787 | Other Liabilities.............................. | 1,324,252,344 |
| Other Admitted Assets..................... | 2,568,653,883 | Capital Stock................................. | 4,478,750 |
| | | Surplus........................................ | 5,872,207,037 |
| | | | |
| TOTAL ASSETS | $15,243,853,340 | TOTAL POLICYHOLDERS' | |
| | | SURPLUS .......... | 5,876,685,787 |
| | | | |
| | | TOTAL LIABILITIES AND | |
| | | POLICYHOLDERS' SURPLUS | $ 15,243,853,340 |

Bonds and stocks are valued in accordance with the basis adopted by the National Association of Insurance Commissioners. Securities carried at $697,745,207 in the above statement are deposited as required by law.

## CERTIFICATE

ELIZABETH M. TUCK, Secretary and ROBERT J. BEIER, Comptroller of National Union Fire Insurance Company, of Pittsburgh, Pa. being duly sworn each for himself, deposes and says that they are above described officers of the said Company and that on the 31st day of December, 1999, the Company actually possessed the assets set forth in the foregoing policyholders and creditors, except as hereinbefore indicated, and that the foregoing statement is correct exhibit of such assets and liabilities of said Company on the 31st day of December, 1999, according to the best of their information, knowledge and belief respectively.

Secretary                                                Comptroller

STATE OF NEW YORK          } SS.:
COUNTY OF NEW YORK

On this 30th Day of March, 2000, before me came the above
named officers of National Union Fire Insurance Company, of
Pittsburgh, Pa. to me known to be the individuals and officers
described herein, and acknowledge that they executed the
foregoing instrument and affixed the seal of said corporation

MIRIAM TAYLOR
Notary Public, State of New York
No. 02TA5036885
Qualified in Bronx County
Commission Expires Feb. 14, 2002

31079 (3/00)

Long00173

01/18/2002 10:13 FAX 312 861 2200 1     KIRKLAND&ELLIS HO                           ☑069

Bond No. ESD 7311061

### SETTLEMENT AGREEMENT BOND

KNOW ALL MEN BY THESE PRESENTS, That we, W. R. GRACE & CO. – CONN. (hereinafter called "Principal"), as Principal, and National Union Fire Insurance of Pittsburg, PA, a Corporation organized and existing under the laws of the State of Pennsylvania (hereinafter called "Surety"), as Surety, are held and firmly bound unto the Settling Plaintiffs, as such term is defined in the Agreement (as defined below), by and through Reaud, Morgan & Quinn, Inc. ("RMQ"), as Obligees (hereinafter collectively called "Obligee"), in the penal sum of $13,723,380 and no/100 Dollars, good and lawful money of the United States of America, for the payment of which, well and truly to be made, we bind ourselves, our heirs, administrators, executors, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, the Principal and the Obligee have entered into the Confidential Settlement Agreement for the Texas Cases, as amended, in the form attached as Exhibit A hereto (the "Agreement"), which provides for certain payments to be made by the Principal to RMQ in trust for the Settling Plaintiffs for the purposes set forth therein.

WHEREAS, the Principal is required to provide the Obligee certain collateral that said payments be made within the terms of the said Agreement.

NOW, THEREFORE, if during the term of this bond, the Principal shall make said payments to the Obligee as required, this bond shall be null and void; otherwise to remain in full force and effect.

PROVIDED, HOWEVER, That:

1.  This bond is effective as of the date of the Agreement, but shall apply only to the payments scheduled to be made on January 15, 2001 in the amount of $6,309,600, on January 15, 2002 in the amount of $3,470,280 and on January 15, 2003 in the amount of $3,943,500, which amount shall constitute the aggregate amount of $13,723,380, and not to include the initial payment in the amount of $7,887,000. The Surety's liability under this bond shall terminate as of the date of final payment under the Agreement.

2.  During the term of this bond, the Surety may terminate its liability by giving written notice to the Obligee and the Principal at least sixty (60) days prior to the effective termination date. If the Obligee has not been provided with a replacement bond or other assurance or cash collateral in accordance with the terms of the Agreement, upon demand by the Obligee within 5 business days prior to the effective termination date of this bond the Surety shall forfeit to Obligee the penal sum of this Bond as set forth above, less actual payments to the Obligee.

3.  In no event shall the Surety's liability exceed the penal amount of this bond less scheduled payments to the Obligee.

SIGNED, SEALED AND DATED this 23rd day of October, 2000.

W. R. GRACE & CO. – CONN.                    National Union Fire Insurance of Pittsburgh, PA
(Principal)                                   (Surety)

By: _____                  By: _____
ROBERT M. TAROLA                             Haywood L. Willis, Attorney-In-Fact
SR. VP ! CFO

L:\...\bond\Grace - Settlement Agreement Bond - 10-1-00

Long00174

01/16/2002 10:13 FAX 312 861 2200 1    KIRKLAND&ELLIS HO    ☒070

American Home Assurance Company

National Union Fire Insurance Company of Pittsburgh, Pa.

Principal Bond Office: 70 Pine Street, New York, NY 10270

POWER OF ATTORNEY

No 14-E-C&I-GROUP

**KNOW ALL MEN BY THESE PRESENTS:**

American Home Assurance Company, a New York corporation, and National Union Fire Insurance Company of Pittsburgh, Pa., a Pennsylvania corporation, does each hereby appoint

—Robert E. Staples, Kenneth Cornell, Haywood L. Willis, Susan Radwanski, Vivian Mattox, Tracy Boone, Sharon Melton: of Philadelphia, Pennsylvania—

its true and lawful Attorney(s)-in-Fact, with full authority to execute on its behalf bonds, undertakings, recognizances and other contracts of indemnity and writings obligatory in the nature thereof, issued in the course of its business, and to bind the respective company thereby.

IN WITNESS WHEREOF, American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, Pa. have each executed these presents

this 5th day of June, 2000.



Lawrence W. Carlstrom, Senior Vice President
National Union Fire Insurance Company of Pittsburgh, Pa
Vice President, American Home Assurance Company

STATE OF NEW YORK    }
COUNTY OF NEW YORK  }ss.

On this 5th day of June, 2000, before me came the above-named officer of American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, Pa... to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seals of said corporations thereto by authority of his office.

JOSEPH D. NOZZUOLO
Notary Public, State of New York
No. 31-NO3492751
Qualified in New York County
Term Expires Jan. 31, 2002

**CERTIFICATE**

Excerpts of Resolutions adopted by the Boards of Directors of American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, Pa. on May 18, 1976:

"RESOLVED, that the Chairman of the Board, the President, or any Vice President be, and hereby is, authorized to appoint Attorneys-in-Fact to represent and act for and on behalf of the Company to execute bonds, undertakings, recognizances and other contracts of indemnity and writings obligatory in the nature thereof, and to attach thereto the corporate seal of the Company, in the transaction of its surety business:

"RESOLVED, that the signatures and attestations of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company when so affixed with respect to any bond, undertaking, recognizance or other contract of indemnity or writing obligatory in the nature thereof;

"RESOLVED, that any such Attorney-In-Fact delivering a secretarial certification that the foregoing resolutions still be in effect may insert in such certification the date thereof, said date to be not later than the date of delivery thereof by such Attorney-In-Fact."

I, Elizabeth M. Tuck, Secretary of American Home Assurance Company and of National Union Fire Insurance Company of Pittsburgh, Pa. do hereby certify that the foregoing excerpts of Resolutions adopted by the Boards of Directors of these corporations, and the Powers of Attorney issued pursuant thereto, are true and correct, and that both the Resolutions and the Powers of Attorney are in full force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the facsimile seal of each corporation

this 23rd day of October 2000

 

Elizabeth M. Tuck, Secretary

Long00175

National Union Fire Insurance Company
of Pittsburgh, Pa.
Executive Offices
70 Pine Street
New York, NY 10270

# FINANCIAL STATEMENT
## as of DECEMBER 31, 1999

| Assets | | Liabilities | |
|---|---|---|---|
| Bonds | $ 2,681,180,892 | Reserve for Losses and Loss Expense $ | 5,490,058,870 |
| Stocks | 6,050,644,012 | Reserve for Unearned Premiums | 1,820,749,321 |
| Collateral Loans | • | Reserve for Expenses, Taxes, | |
| Cash & Short-Term Investments | 110,449,115 | Licenses and Fees | 16,739,802 |
| Agents' Balances or Uncollected Premiums | 2,644,841,526 | Provision for Reinsurance | 373,415,393 |
| Funds Held by Ceding Reinsurers | 143,680,988 | Funds Held Under Reinsurance | |
| Reinsurance Recoverable on Loss Payments | 858,225,157 | Treaties | 241,952,823 |
| Equities & Deposits in Pools & Associations | 175,977,787 | Other Liabilities | 1,324,252,344 |
| Other Admitted Assets | 2,558,853,863 | Capital Stock | 4,478,750 |
| | | Surplus | 5,872,207,037 |
| **TOTAL ASSETS** | **$15,243,853,340** | **TOTAL POLICYHOLDERS'** | |
| | | **SURPLUS** | 5,876,685,787 |
| | | **TOTAL LIABILITIES AND** | |
| | | **POLICYHOLDERS' SURPLUS** | **$ 15,243,853,340** |

Bonds and stocks are valued in accordance with the basis adopted by the National Association of Insurance Commissioners. Securities carried at $697,745,207 in the above statement are deposited as required by law.

## CERTIFICATE

ELIZABETH M. TUCK, Secretary and ROBERT J. BEIER, Comptroller of National Union Fire Insurance Company, of Pittsburgh, Pa. being duly sworn each for himself, deposes and says that they are above described officers of the said Company and that on the 31st day of December, 1999, the Company actually possessed the assets set forth in the foregoing policyholders and creditors, except as hereinbefore indicated, and that the foregoing statement is correct exhibit of such assets and liabilities of said Company on the 31st day of December, 1999, according to the best of their information, knowledge and belief respectively.

_Elizabeth M. Tuck_ Secretary

Comptroller

STATE OF NEW YORK
COUNTY OF NEW YORK } SS.:

On this 30th Day of March, 2000, before me came the above named officers of National Union Fire Insurance Company, of Pittsburgh, Pa. to me known to be the individuals and officers described herein, and acknowledge that they executed the foregoing instrument and affixed the seal of said corporation

MIRIAM TAYLOR
Notary Public, State of New York
No. 02TA6036886
Qualified in Bronx County
Commission Expires Feb. 14, 2002

31079 (3/00)

#4

## SURETY BOND

Date Bond Executed: September 19, 2000

Effective Date: September 19, 2000

Principal:  W.R. Grace & Co. - Conn., Grace Davison Business Unit, 4000 North Hawthorne Street, Chattanooga, TN 37406
          (Legal name and business address of applicant or licensee)

Type of Organization: Corporation
State of Incorporation: CT

Surety(ies): American Home Assurance Company    70 Pine Street, New York, NY  10270
             (Name(s) and business address(es)
License Number: S-3506-E9  Grace Davison, a business unit of W.R. Grace & Co. -Conn., 4000 North Hawthorne Street,
Chattanooga, TN 37406
 (name, address, and reclaiming cost for each facility guaranteed by this bond – list amounts separately)

Bond Amount:  $31,772,596.00

Total Penal Sum of Bond:  $31,772,596.00

Surety's Bond Number:  ESD7310985

KNOW ALL PERSONS BY THESE PRESENTS, That we, the Principal and Surety(ies) hereto are firmly bound to the Tennessee Department of Health and Environment (hereinafter called Department), in the above penal sum for the payment of which we bind ourselves, our heirs, executors, administrators, successors and assigns jointly and severally; provided that, where the Surety(ies) are corporations acting as co-sureties, we the Sureties, bind ourselves in such sum "jointly and severally" only for the purpose of allowing a joint action or actions against any or all of us, and for all other purposes each Surety binds itself, jointly and severally with the Principal, for the payment of such sum only as is set forth opposite the name of such Surety, but if no limit of liability is indicated, the limit of liability shall be the full amount of the penal sum.

WHEREAS said Principal is required, under the Tennessee Radiological Health Act, as amended, to have a license in order to receive, possess, store and use radioactive material at the facility identified above, and WHEREAS said Principal is required to provide financial assurance for reclaiming as a condition of the license;

NOW, THEREFORE, the conditions of this obligation are such that if the Principal shall faithfully perform reclaiming, whenever required to do so, of each facility for which this bond guarantees funds for reclaiming, to the satisfaction of the Commissioner, Tennessee Department of Health and Environment in accordance with acceptable practices for protection of health and safety pursuant to all applicable laws, statutes, rules and regulations, as such laws, statutes, rules and regulations may be amended.
OR, if the Principal shall provide alternate financial assurance as specified in 1200-2-10- 12(4), and obtain the written approval of such assurance from the Director, Division of Radiological Health, (hereinafter called Director), within 90 days after the date notice of cancellation is received by both the Principal and the Director from the Surety(ies), then this obligation shall be null and void, otherwise it is to remain in full force and effect.

The Surety(ies) shall become liable on this bond obligation only when the Principal has failed to fulfill the conditions described above.

Upon notification by the Director that the Principal has been found in violation of the reclaiming requirements of the Department, for a facility for which this bond guarantees funds for performance of reclaiming, the Surety(ies) shall forfeit the reclaiming cost amount guaranteed for the facility to the Department as directed by the Director.

Upon notification by the Director that the Principal has failed to provide alternate financial assurance as specified in 1200—2—10—12(4), and obtain written approval of such assurance from the Director during the 30 days following receipt by both the Principal and the Director of a notice of cancellation of the bond, the Surety(ies) shall forfeit funds in the amount guaranteed for the facility(ies) to the Department as directed by the Director.

The Surety(ies) hereby waive(s) notification of amendments to licenses, applicable laws, statutes, rules and regulations and agrees that no such amendment shall in any way alleviate its(their) obligation on this bond

Long00177

The liability of the Surety(ies) shall not be discharged by any payment or succession of payments hereunder, unless and until such payment or payments shall amount in the aggregate to the penal sum of the bond, but in no event shall the obligation of the Surety(ies) hereunder exceed the amount of said penal sum.

The Surety(ies) may cancel the bond by sending notice of cancellation by certified mail to the Principal and to the Director, provided, however, that cancellation shall not occur during the 180 days beginning on the date of receipt of the notice of cancellation by both the Principal and the Director, as evidenced by the return receipt

The Principal may terminate this bond by sending written notice to the Surety(ies), provided, however, that no such notice shall become effective until the Surety(ies) receive(s) written authorization for termination of the bond by the Director

> IN WITNESS WHEREOF, the Principal and
> Surety(ies) have executed this SURETY BOND
> and have affixed their seals on the date set forth above

The persons whose signatures appear below hereby certify that they are authorized to execute this surety bond on behalf of the Principal and Surety(ies) and that the wording of this surety bond is identical to the wording specified in 1200—2—10— 12(4)(j)1  as such regulation was constituted on the date this bond was executed.


### PRINCIPAL

Signature(s) _____

Name(s) _____

Title(s) _____

(Corporate Seal)


### CORPORATE SURETY(IES)

American Home Assurance Company, 70 Pine Street, New York, NY 10270

State of Incorporation:  NY

Liability Limit: $282,977,000

Signature: _____

Name and Title:  Tracy Boone, Attorney In Fact

Corporate Seal:

(For every co-surety, provide signature(s), corporate seal and other information in the same manner as for Surety above.)

Bond Premium: $301,540.00

01/16/2002 10:14 FAX 312 861 2200 1        KIRKLAND&ELLIS HO                                    ☒072



A&U Insurance Company
American Home Assurance Company
Granite State Insurance Company
Illinois National Insurance Company
The Insurance Company of the State of Pennsylvania
National Union Fire Insurance Company of Pittsburgh, PA
New Hampshire Insurance Company
Commerce and Industry Insurance Company
Commerce and Industry Insurance Company of Canada

**American International Companies**
Principal Bond Office
175 Water Street, 6th Floor
New York, N.Y. 10038

## CONTINUING AGREEMENT OF INDEMNITY MISCELLANEOUS SURETY BONDS

THIS AGREEMENT is made by the undersigned for the continuing benefit of AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, Illinois National Insurance Company, The Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Pa, New Hampshire Insurance Company, Commerce and Industry Insurance Company, Commerce and Industry Insurance Company of Canada (hereinafter referred to collectively as the "SURETY") for the purpose of saving each and all of them harmless and indemnifying each and all of them from all loss and expense in connection with any Bonds executed on behalf of any one or more of the following persons, firms or corporations:

__W. R. Grace & Co. and W. R. Grace & Co.-Conn.,__     (hereinafter referred to as Applicant).

### WITNESSETH,

WHEREAS, the Applicant is required to provide two Surety Bonds in the amount of $13,723,380 (Thirteen million, seven hundred twenty three thousand, three hundred eighty dollars) to the Settling Plaintiffs acting through Reaud, Morgan & Quinn, Inc., and $38,475,770 (Thirty eight million, seven hundred twenty three thousand, three hundred eighty dollars) to the Settling Plaintiffs acting through Reaud, Morgan & Quinn, Inc. and Environmental Litigation Group, P.C.; and shall mean either or both of said Surety Bonds; and

WHEREAS, upon the express condition that this instrument be executed, the Surety has executed or procured the execution of the Bonds, and the Surety may continue the Bonds and may forebear cancellation of the Bonds;

NOW, THEREFORE, in consideration of the execution of the Bonds or the forbearance of cancellation of the Bonds and as an inducement to such execution or forbearance, the Undersigned agree and bind themselves, their successors and assigns, jointly and severally, as follows:

FIRST: To pay to the Surety in advance upon the execution of the Bonds the initial premium computed in accordance with the rates currently charged by the Surety at the time the Bonds are executed and the Undersigned will also pay all renewal or additional premiums computed and such rates until proof is furnished satisfactory to the Surety of its discharge from all liability under the Bonds.

SECOND: To indemnify, and keep indemnified, and hold and save harmless the Surety against all demands, claims, loss, costs, damages, expenses and attorneys' fees whatever, and any and all liability therefore, sustained or incurred by the Surety by reason of executing or procuring the execution of the Bonds, or renewal or continuation thereof; or sustained or incurred by reason of making any investigation on account thereof, prosecuting or defending any action brought in connection therewith, obtaining a release therefrom, recovering or attempting to recover any salvage in connection therewith or enforcing by litigation or otherwise any of the agreements herein contained. Payment of amounts due Surety hereunder together with legal interest shall be payable upon demand.

THIRD: That if Surety shall be required or shall deem it necessary to set up a reserve in any amount to cover any claim, demand, liability, expense, suit, order, judgment or adjudication under or on the Bonds or for any other reason whatsoever, to immediately upon demand deposit with Surety an amount of money sufficient to cover such reserve and any increase thereof, at anytime, in payment or compromise of any liability, claims, demands, judgment, damages, fees and disbursements or other expenses; and the Undersigned, in the event of their failure to comply with such demand, hereby authorize and empower any attorney of any court of record of the United States or any of its territories or possessions, to appear for them or any of them in any suit by Surety and to confess judgment against them or any of them for any sum or sums of money up to the amount of the Bonds with costs, interest and reasonable attorneys' fees; such judgment, however, to be satisfied upon the payment of any and all such sums as may be found due by the Undersigned to Surety under the terms of this agreement. The authority to confess judgment as set forth herein shall not be exhausted by any one exercise thereof, but may be exercised from time to time and more than one time until all liability of the Undersigned to Surety shall have been paid in full.

FOURTH: All collateral security held by or assigned to the Surety with respect to the Bonds may be used by the Surety at anytime in payment of any claim, loss or expense which the Undersigned have agreed to pay hereby . The Surety may sell or realize upon any or all such collateral security, at public or private sale, with or without notice to the Undersigned or any of them, and with the right to be purchaser itself at any public sale, and shall be accountable

Long00179

01/16/2002 10:14 FAX 312 861 2200 1          KIRKLAND&ELLIS HO                                    @073



to the Undersigned only for such surplus or remainder of such collateral security or the proceeds thereof as may be in the Surety's possession after it has been fully indemnified as in this agreement provided. The Surety shall not be liable for decrease in value or loss or destruction in value or damage to such security, however caused.

FIFTH: The Surety shall have the right, at its option and in its sole discretion:

(a)    To deem this Agreement breached should the Applicant become involved as Debtor in any agreement or proceeding of liquidation, receivership, or bankruptcy, voluntarily or involuntarily.

(b)    To adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds , unless the Undersigned shall request in writing the Surety to litigate such claim or demand, or defend such suit, or appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered with interest, costs and attorneys' fees.

All damage, loss or expense of any nature which the Surety may incur under section FIFTH shall be borne by the Undersigned.

SIXTH: Each of the Undersigned expressly consent that in the event of any action against the Surety arising out of its execution of the Bonds which is not handled pursuant to the provisions of Section FIFTH subparagraph (b), the Surety shall have the right to apply to the Court in which such action is brought for an order making any one or more of them defendants and hereby further consent to the granting of such application for making such order and agree to become parties defendant.

SEVENTH: The Surety shall have the exclusive right for itself and for the Undersigned to decide and determine whether any claim, demand, suit or judgment upon the Bonds shall, on the basis of liability, expediency or the Undersigned (except as provided in Section FIFTH (b) hereof); and any loss, costs, charges, expense or liability thereby sustained or incurred, as well as any and all disbursements on account of costs, expenses, and attorneys' fees, deemed necessary or advisable by the Surety, shall be borne and paid immediately by the Undersigned, together with legal interest. In the event of any payment, settlement, compromise or investigation, an itemized statement of the payment, loss, costs, damages, expenses or attorneys' fees, sworn to by any officer of the Surety or the voucher or vouchers or other evidence of such payment, settlement or compromise shall be prima facie evidence of the fact and extent of the liability of the Undersigned to the Surety in any claim or suit hereunder and in any and all matters arising between the Undersigned and the Surety.

EIGHTH: The Surety may furnish copies of any and all statements, agreements and financial statements and any information which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.

NINTH: Other than any notice required under the terms of the Bonds, the Undersigned hereby waive all notice of any default or any other act or acts giving rise to any claim under either of the Bonds, and waive notice of any and all liability of the Surety under the Bonds  or any and all liability on the part of the Undersigned to the effect and end, that each of the Undersigned shall be and continue liable to the Surety hereunder notwithstanding any notice of any kind to which the Undersigned might have been or be entitled other than under the terms of the Bonds..

Long00180

TENTH: The Surety shall have every right and remedy which a personal surety without compensation would have, including the right to secure its discharge from the suretyship, and nothing herein contained shall be considered or construed to waive, abridge or diminish any right or remedy which the Surety might have if this instrument were not executed. Separate suits may be brought hereunder as causes of action may accrue, and the pendency or termination of any such suit shall not bar any subsequent action. The Surety shall be notified immediately by the Undersigned of any claim or action which may result in a claim against the Surety, such notice to be given by registered mail to the Surety at its Home Office. In the event of legal proceedings against the Surety, upon or on account of any said Bonds, the Surety may apply for a court order making any or all of the Undersigned parties defendants, and such Undersigned hereby consents to the granting of such application and agrees to become such a party defendant and to allow judgment, in the event of judgment against the Surety in respect of amounts to which the Surety is entitled to indemnity hereunder, to be rendered also against such Undersigned in like amount and in favor of the Surety, if the Surety so desires.

ELEVENTH: The Surety shall have the absolute right to cancel the Bonds in accord with any cancellation provision contained therein, to procure its release from the Bonds in accordance with its terms; and the Surety is hereby released from any liability for expense, cost of damage alleged to be sustained by the Undersigned by reason of such cancellation or release of bond obligation.

TWELFTH: This Agreement shall, in all its terms and agreements, be for the benefit of and protect any person or company joining with the Surety in executing the Bonds, or either of them or either of them as the request of the Surety the Bonds , or either of them as well as any company or companies assuming co-suretyship or reinsurance thereon.

THIRTEENTH: The Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of the Bonds. Failure to execute, or defective execution, by any party, shall not affect the validity of this obligation as to any other party executing the same and each such other party shall remain fully bound and liable hereunder. Invalidity of any portion or provision of this Agreement by reason of the laws of any state or for any other reason shall not render the other provisions or portion hereof invalid. Execution of any application for any Bond by the Applicant, or of any other indemnity agreement by any Undersigned for the Applicant shall in no way abrogate, waive or diminish any rights of Surety under this Agreement.

FOURTEENTH: Each of the Undersigned expressly recognizes and covenants that this Agreement is a continuing obligation applying to and indemnifying the Surety as to the Bonds until this Agreement shall be canceled in the manner hereinafter provided. Any of the Undersigned may notify the Surety at its Home Office, of such Undersigned's withdrawal from this Agreement; such notice shall be sent by certified or registered mail and shall state when, not less than thirty days after receipt of such notice by the Surety, such withdrawal shall be effective. Such withdrawal by any Undersigned shall in no way affect the obligation of any other Undersigned who has given no such notice of termination.

FIFTEENTH: The rights of indemnification of each Surety signatory to this Agreement shall be individual and not joint with those of the other signatory Sureties as respects the Bonds and shall be enforceable against the Undersigned as to the Bonds.

Signed, sealed, and dated this sixteenth day of October, 2000,

Company Name: W. R. Grace & Co.
Employer Identification Number: 65-0773649
Address: 7500 Grace Drive
             Columbia, MD 21044

Attest: _Marto Shelmof_    By: _Tola f M. Tasle_
(Please Print or Type Name and Title below)    (Please Print or Type Name and Title below)    (Corporate Seal)

Company Name: W.R. Grace & Co.-Conn.
Employer Identification Number: 13-5114230
Address: 7500 Grace Drive
             Columbia, MD 21044

Attest: _Marto Shelmof_    By: _Tola f M. Tasle_
(Please Print or Type Name and Title below)    (Please Print or Type Name and Title below)    (Corporate Seal)

Long00181



AIU Insurance Company
American Home Assurance Company
Granite State Insurance Company
Illinois National Insurance Company
The Insurance Company of the State of Pennsylvania
National Union Fire Insurance Company of Pittsburgh, PA
New Hampshire Insurance Company
Commerce and Industry Insurance Company
Commerce and Industry Insurance Company of Canada

**American International Companies**
Principal Bond Office
175 Water Street, 8th Floor
New York, N.Y. 10038

## CONTINUING AGREEMENT OF INDEMNITY MISCELLANEOUS SURETY BONDS

**THIS AGREEMENT** is made by the undersigned for the continuing benefit of AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, Illinois National Insurance Company, The Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Pa, New Hampshire Insurance Company, Commerce and Industry Insurance Company, Commerce and Industry Insurance Company of Canada (hereinafter referred to collectively as the "SURETY") for the purpose of saving each and all of them harmless and indemnifying each and all of them from all loss and expense in connection with any Bonds executed on behalf of any one or more of the following persons, firms or corporations:

   W.R. Grace & Co. and W.R. Grace & Co. - Conn.      (hereinafter referred to as Applicant).

### WITNESSETH.

WHEREAS, the Applicant is required to provide a Surety Bond in the amount of $31,772,596.00  (Thirty one million, seven hundred seventy two thousand, five hundred and ninety six dollars) to the Tennessee Department of Environment and Conservation (the "Bond"); and

WHEREAS, upon the express condition that this instrument be executed, the Surety has executed or procured the execution of, the Bond and the Surety may continue the Bond and may forebear cancellation of the Bond;

NOW, THEREFORE, in consideration of the execution of any the Bond or the forbearance of cancellation of the Bond and as an inducement to such execution or forbearance, the Undersigned agree and bind themselves, their, successors and assigns, jointly and severally, as follows:

FIRST: To pay to the Surety in advance upon the execution of the Bond the initial premium computed in accordance with the rates currently charged by the Surety at the time the Bond is executed and the Undersigned will also pay all renewal or additional premiums computed and such rates until proof is furnished satisfactory to the Surety of its discharge from all liability under the Bond.

SECOND: To indemnify, and keep indemnified, and hold and save harmless the Surety against all demands, claims, loss, costs, damages, expenses and attorneys' fees whatever, and any and all liability therefore, sustained or incurred by the Surety by reason of executing or procuring the execution of the Bond, or renewal or continuation thereof, or sustained or incurred by reason of making any investigation on account thereof, prosecuting or defending any action brought in connection therewith, obtaining a release therefrom, recovering or attempting to recover any salvage in connection therewith or enforcing by litigation or otherwise any of the agreements herein contained. Payment of amounts due Surety hereunder together with legal interest shall be payable upon demand

THIRD: That if Surety shall be required or shall deem it necessary to set up a reserve in any amount to cover any claim, demand, liability, expense, suit, order, judgment or adjudication under or on any Bond or Bonds or for any other reason whatsoever, to immediately upon demand deposit with Surety an amount of money sufficient to cover such reserve and any increase thereof, at anytime, in payment or compromise of any liability, claims, demands, judgment, damages, fees and disbursements or other expenses; and the Undersigned, in the event of their failure to comply with such demand, hereby authorize and empower any attorney of any court of record of the United States or any of its territories or possessions, to appear for them or any of them in any suit by Surety and to confess judgment against them or any of them for any sum or sums of money up to the amount of the Bond with costs, interest and reasonable attorneys' fees; such judgment, however, to be satisfied upon the payment of any and all such sums as may be found due by the Undersigned to Surety under the terms of this agreement. The authority to confess judgment as set forth herein shall not be exhausted by any one exercise thereof, but may be exercised from time to time and more than one time until all liability of the Undersigned to Surety shall have been paid in full.

FOURTH: All collateral security held by or assigned to the Surety with respect to the Bond may be used by the Surety at anytime in payment of any claim, loss or expense which the Undersigned have agreed to pay hereby. The Surety may sell or realize upon any or all such collateral security, at public or private sale, with or without notice to the Undersigned or any of them, and with the right to be purchaser itself at any public sale, and shall be accountable to the Undersigned only for such surplus or remainder of such collateral security or the proceeds thereof as may be

Long00182

in the Surety's possession after it has been fully indemnified as in this agreement provided. The Surety shall not be liable for decrease in value or loss or destruction of or damage to such security, however caused.

FIFTH: The Surety shall have the right, at its option and in its sole discretion:

    (a)    To deem this Agreement breached should the Applicant become involved as Debtor in any agreement or proceeding of liquidation, receivership, or bankruptcy, voluntarily or involuntarily.

    (b)    To adjust, settle or compromise any claim, demand, suit or judgment upon the Bond unless the Undersigned shall request in writing the Surety to litigate such claim or demand, or defend such suit, or appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered with interest, costs and attorneys' fees.

    All damage, loss or expense of any nature which the Surety may incur under section FIFTH shall be borne by the Undersigned.

SIXTH: Each of the Undersigned expressly consent that in the event of any action against the Surety arising out of its execution of such Bond or Bonds which is not handled pursuant to the provisions of Section FIFTH subparagraph (b), the Surety shall have the right to apply to the Court in which such action is brought for an order making any one or more of them defendants and hereby further consent to the granting of such application for making such order and agree to become parties defendant.

SEVENTH: The Surety shall have the exclusive right for itself and for the Undersigned to decide and determine whether any claim, demand, suit or judgment upon said Bond or Bonds shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and its determination shall be final, conclusive and binding upon the Undersigned (except as provided in Section FIFTH (b) hereof); and any loss, costs, charges, expense or liability thereby sustained or incurred, as well as any and all disbursements on account of costs, expenses, and attorneys' fees, deemed necessary or advisable by the Surety, shall be borne and paid immediately by the Undersigned, together with legal interest. In the event of any payment, settlement, compromise or investigation, an itemized statement of the payment, loss, costs, damages, expenses or attorneys' fees, sworn to by any officer of the Surety or the voucher or vouchers or other evidence of such payment, settlement or compromise shall be prima facie evidence of the fact and extent of the liability of the Undersigned to the Surety in any claim or suit hereunder and in any and all matters arising between the Undersigned and the Surety.

EIGHTH: The Surety may furnish copies of any and all statements, agreements and financial statements and any information which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.

NINTH: Other than any notice required under the terms of the Bond, the Undersigned hereby waive all notice of any default or any other act or acts giving rise to any claim under the Bond, and waive notice of any and all liability of the Surety under the Bond or any and all liability on the part of the Undersigned to the effect and end, that each of the Undersigned shall be and continue liable to the Surety hereunder notwithstanding any notice of any kind to which the Undersigned might have been or be entitled other than under the terms of the Bond.

TENTH: The Surety shall have every right and remedy which a personal surety without compensation would have, including the right to secure its discharge from the suretyship, and nothing herein contained shall be considered or construed to waive, abridge or diminish any right or remedy which the Surety might have if this instrument were not executed. Separate suits may be brought hereunder as causes of action may accrue, and the pendency or termination of any such suit shall not bar any subsequent action. The Surety shall be notified immediately by the Undersigned of any claim or action which may result in a claim against the Surety, such notice to be given by registered mail to the Surety at its Home Office. In the event of legal proceedings against the Surety, upon or on account of any said Bond or Bonds, the Surety may apply for a court order making any or all of the Undersigned parties defendants, and such Undersigned hereby consents to the granting of such application and agrees to become such a party defendant and to allow judgment, in the event of judgment against the Surety, in respect of amounts to which the Surety is entitled to indemnity hereunder, to be rendered also against such Undersigned in like amount and in favor of the Surety, if the Surety so desires.

ELEVENTH: The Surety shall have the absolute right to cancel the Bond in accord with any cancellation provision contained therein, to procure its release from the Bond in accordance with its terms; and the Surety is hereby released from any liability for expense, cost of damage alleged to be sustained by the Undersigned by reason of such cancellation or release of bond obligation.

TWELFTH: This Agreement shall, in all its terms and conditions, be for the benefit of and protect any person or company joining with the Surety in executing the Bond, or any of them or executing at the request of the Surety the Bond, or any of them as well as any company or companies assuming co-suretyship or reinsurance thereon.

THIRTEENTH: The Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of the Bond. Failure to execute, or defective execution, by any party, shall not affect the validity of this obligation as to any other party executing the same and each such other party shall remain fully bound and liable hereunder. Invalidity of any portion or provision of this Agreement by reason of the laws of any state or for any other reason shall not render the other provisions or portion hereof invalid. Execution of any application for any Bond by the Applicant, or of any other indemnity agreement by any Undersigned for the Applicant shall in no way abrogate, waive or diminish any rights of Surety under this Agreement.

Long00183

FOURTEENTH: Each of the Undersigned expressly recognizes and covenants that this Agreement is a continuing obligation applying to and indemnifying the Surety as to the Bond until this Agreement shall be canceled in the manner hereinafter provided.   Any of the Undersigned may notify the Surety at its Home Office, of such Undersigned's withdrawal from this Agreement; such notice shall be sent by certified or registered mail and shall state when, not less than thirty days after receipt of such notice by the Surety, such withdrawal shall be effective. Such withdrawal by any Undersigned shall in no way affect the obligation of any other Undersigned who has given no such notice of termination.

FIFTEENTH: The rights of indemnification of each Surety signatory to this Agreement shall be individual and not joint with those of the other signatory Sureties as respects the  Bond and shall be unforceable against the Undersigned as to the Bond.

Signed, sealed, and dated this ___14th___ day of ___September___ ,20_00_.

> Company Name: W.R. Grace & Co.
> Employer Identification Number: 65 - 0773649
> Address:  7500 Grace Drive
>                  Columbia, MD 21044

Attest: _Mark q Shelnitz_          By: _Robert M. Tarola_                          (Corporate Seal)
(Please Print or Type Name and Title below)        (Please Print or Type Name and Title Below)
Corporate Secretary               S.V.P.  + CFo
Mark A. Shelnitz                  Robert M. Tarola

> Company Name: W.R. Grace & Co.- Conn.
> Employer Identification Number: 13 - 5114230
> Address: 7500 Grace Drive
>                 Columbia, MD 21044

Attest: _Mark a. Shelnitz_          By: _Robert M. Tarola_                          (Corporate Seal)
(Please Print or Type Name and Title Below)        (Please Print or Type Name and Title Above)
Corporate Secretary               SVP  +  CFo
Mark A. Shelnitz                  Robert M. Tarola

Long00184

# Exhibit B

Long00185

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

| | | |
|---|---|---|
| W. R. GRACE & CO.-CONN. | ) | Adversary Proceeding |
| | ) | |
| | ) | Adv. Pro. No. 02-____ (JKF) |
| Plaintiff, | ) | |
| v | ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA, | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiff W. R. Grace & Co. - Conn., as debtor and debtor in possession in the above-

captioned chapter 11 case (the "Plaintiff" or "Grace"), by its undersigned attorneys, alleges for its

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Long00186

complaint, upon knowledge as to its own acts and upon information and belief as to all other matters,

as follows:

## INTRODUCTION

1.    This is an adversary proceeding brought pursuant to Fed. R. Bankr. P. 7001(7) and

(9) and Fed. R. Bankr. P. 7065, for a judgment:

    (i)    enjoining the National Union Fire Insurance Company of Pittsburgh, PA. ("Defendant") as issuer of two surety bonds, from paying to the law firm of Reaud, Morgan & Quinn, Inc. ("RMQ"), the January 15, 2002 Installment payment described in the Confidential Settlement Agreement For Texas Cases entered into between Plaintiff and RMQ (the "Texas Protocol"); and

    (ii)    declaring that Defendant and Plaintiff do not have obligations to pay the January 15, 2002 installment described in the Texas Protocol (the "January 15, 2002 Installment") to RMQ; and

    (iii)    declaring that if Defendant does pay to RMQ the January 15, 2002 installment, described in the Texas Protocol, such payment did not result from Plaintiff's obligation under the Texas Protocol, and Defendant cannot draw upon (a) the letter of credit obtained by Plaintiff as partial collateral for the indemnity obligations of Plaintiff with respect to the Bonds in excess of its contractual amount (the "Letter of Credit"); or (b) any other unrelated letter of credit obtained by Plaintiff or its affiliates under the Texas Protocol; and

    (iv)    declaring that the contractual amount of the Letter of Credit is $5,639,830; and

    (v)    enjoining Defendant from drawing upon (i) the Letter of Credit in excess of its contractual amount, or (ii) any other letter of credit obtained by Plaintiff or its affiliates for the benefit of Defendant and used by Defendant to pay, or obtain reimbursement for payment of the January 15, 2002 installment under the Texas Protocol.

## THE PARTIES

2.    Plaintiff is a debtor and debtor in possession in this adversary proceeding. Plaintiff

is a corporation existing under the laws of Connecticut, with its headquarters located in the State of

Maryland.

2

Long00187

3.    Defendant is, upon information and belief, a corporation existing under the laws of the State of Pennsylvania, with its principal place of business in New York, New York.

### JURISDICTION AND VENUE

4.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

5.    This adversary proceeding has been brought in accordance with Fed. R. Bankr. P. 7001(7) and (9) and Fed. R. Bankr. P. 7065.

6.    Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. § 1409.

7.    This matter is a core proceeding pursuant to 28 U. S.C. § 157(b)(2).

### FACTUAL ALLEGATION

8.    On April 2, 2001, Plaintiff filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). Most prepetition asbestos claims brought against Grace were resolved through settlement, rather than litigation.

9.    In an effort to alleviate the financial burdens associated with litigating asbestos claims, counsel for Grace would often negotiate settlement procedures with plaintiffs' counsel. In the course of their negotiations, Grace and plaintiffs' counsel generally would agree, *not* to actual settlements of particular claims, but to so-called "protocols" for resolving the particular law firm's claims.

10.    On or about September 21, 2000, RMQ and Grace negotiated the Texas Protocol (a copy of which is attached as Ex. A to Hughes Aff.). On or about August 25, 2000, RMQ, Environmental Litigation Group, P.C. ("ELG") and Grace negotiated the terms of a document

3

Long00188

entitled a "Confidential Settlement Agreement for Alabama Cases," (the "Alabama Protocol", a copy

of which is attached as Ex. B to Hughes Aff.). Although styled as "settlement agreements," the plain

language of the Protocols show that they were merely non-binding frameworks in which RMQ (and,

in the case of the Alabama Protocol, ELG) and Grace agreed to work together to try to resolve

asbestos claims -- in other words: agreements to agree. The Protocols specify that, if certain

conditions are met, Grace will pay settlement installments to RMQ or ELG in periodic

"installments."

11.     In particular, the Protocols provided frameworks in which to resolve the asbestos

claims of certain "eligible" RMQ and ELG clients. (Texas Protocol at 2, ¶3; Alabama Protocol at

2, ¶3). According to the Texas Protocol, for example, a claimant is "eligible" -- though not required

-- to participate:

> "(i) who, as of May 19, 2000, is a plaintiff in a pending lawsuit in any
> court (state or federal) in any jurisdiction wherein any claim is being
> asserted against W. R. Grace for monetary damages for any asbestos
> -related disease, injury or death; (ii) who is represented by RMQ; (iii)
> who is not already a party to or otherwise subject to a prior settlement
> with W. R. Grace; and (iv) whose case against W. R. Grace had not
> been tried to verdict as of May 19, 2000." (*Id.*)[2]

12.     The terms of the Protocols make clear that Grace is not obliged to pay any RMQ or

ELG claimant (or RMQ or ELG on behalf of any claimant) unless and until Grace receives at least

the following documentation (referred to as "Qualifying Materials") from eligible claimants:

> "(i) competent medical evidence that the Settling Plaintiff ... has or
> had an asbestos-related disease or injury ...; (ii) a standard release
> prepared by RMQ and executed by the Settling Plaintiff ...; [and
> (iii)] "Exposure Evidence" in the form of ... a work history sheet for

---

[2] The Alabama Protocol outlines similar criteria, except that the claimant must be represented by both RMQ and ELG

4

Long00189

> each Settling Plaintiff showing that such plaintiff worked for some
> period of time at . . . plants at which W. R. Grace agrees that its
> asbestos-containing products were used" (Texas Protocol at 4-5, ¶6)[3]

13.     RMQ has not submitted sufficient Qualifying Materials from eligible claimants,

however, to trigger the January 15, 2002 payment obligation on the part of Grace under the Texas

Protocol. (*See* Hughes Aff. ¶ 13). The Texas Protocol provides that "[t]he settlement installments

. . .shall be payable on the designated payment dates *only if* RMQ has submitted Qualifying

Materials to W.R. Grace no later than 60 days prior to such payment date from Settling Plaintiffs

whose settlement amount equals or exceeds the amount of installment due on such payment date."

(Texas Protocol at 5, ¶7, emph. added). The January 15, 2002 installment amount is $3,470,280.

(*Id.* at 3-4, ¶5). RMQ has not fulfilled this condition. In fact, Grace has specifically communicated

to RMQ the deficiencies in its submissions. (*See* 1/18/01 letter from J. Hughes to G. Morgan,

attached as Ex. C to Hughes Aff.). In particular, thousands of the submitted claimants were not

"eligible" because they "were subject to a prior settlement with W.R. Grace " (*See id.*; *see also* Texas

Protocol at 2, ¶3). Consequently, under contract law, Grace is not obligated to pay RMQ clients the

January 15, 2002 installment payment described in the Texas Protocol.

14.     Pursuant to the terms of the two Protocols, Grace caused National Union to issue two

surety bonds numbered ESD7311060 and ESD7311061 (collectively, the "Bonds") as security for

certain of the installment payments under the protocol by Grace to RMQ and ELG claimants under

the Protocols. (*See* Bonds, attached as Ex. D to Hughes Aff.). Grace's obligations to indemnify

National Union for any payments made under the Bonds were partially collateralized by the Letter

of Credit issued by Bank of America, N.A. for the benefit of National Union (see letter of credit,

---

[3] *See also* Alabama Protocol at 4-5, ¶6

Long00190

attached as Ex. E to Hughes Aff.), which is currently in the amount of approximately $5.6 million. Although National Union issued two separate bonds to cover the Texas and Alabama Protocols, both bonds were partially collateralized by only *the* Letter of Credit. By the nature of the surety relationship, Defendant is jointly and severally liable with Plaintiff as principal obligor and not required to make any payments as to which Plaintiff is not legally obliged.

15.     In a letter agreement dated October 13, 2000, between Grace and National Union, the parties agreed that the collateral for the Bonds would be maintained at 20% of National Union's outstanding liability at any given time. (*See* 10/13/00 letter from R. Tarola to National Union, attached as Ex. F to Hughes Aff.). Accordingly, Grace notified National Union on January 18, 2001 and again on January 31, 2001, that the Letter of Credit securing the payment of the Bonds should be reduced from approximately $10.4 million to approximately $5.6 million, as National Union's then (and current) liability had been reduced to approximately $28.2 million (from approximately $52.2 million) after the January 15, 2001 installment of $24 million was paid by the Plaintiff in accordance with the Protocols. (*See* 1/18/01 and 1/31/01 letters from M. Hunter to A. Stillwell attached as Ex. G to Hughes Aff). As of the date hereof, National Union has not executed the amendment to the Letter of Credit reducing its principal amount. Although National Union has refused to execute the amendment, Grace believes that a reduction of the principal amount of the collateral has occurred automatically by the terms of the October 13, 2000 letter agreement and that National Union has no right to draw more than the approximately $5.6 million amount under the Letter of Credit.

16.     Moreover, National Union has stated to Grace that, in the event the Letter of Credit issued specifically as security for the Bonds is insufficient to satisfy National Union's exposure

6

Long00191

under the Bonds, National Union may draw upon certain other unrelated letters of credit issued by Grace's lenders for the benefit of National Union in unrelated matters.

## COUNT I
### DECLARATION REGARDING PLAINTIFF'S AND DEFENDANT'S OBLIGATIONS UNDER THE TEXAS PROTOCOL

17.     Plaintiff repeats and realleges paragraphs 1 through 16 as if fully set forth herein.

18.     Because RMQ had not submitted and sufficient Qualifying Materials for eligible claimants pursuant to the terms of the Texas Protocol, neither Defendant nor Plaintiff has any obligation to pay RMQ the January 15, 2002 Installment described in the Texas Protocol.

19.     If Defendant were to pay RMQ the January 15, 2002 Installment, such payment did not result from Grace's obligation under the Texas Protocol, and Defendant cannot draw upon the Letter of Credit.

## COUNT II
### DECLARATION REGARDING THE CONTRACTUAL AMOUNT OF THE LETTER OF CREDIT AND THE VALIDITY OF OTHER LETTERS OF CREDIT

20.     Plaintiff repeats and realleges paragraphs 1 through 19 as if fully set forth herein.

21.     Under the clear and express terms of the October 13, 2000 letter agreement between Plaintiff and Defendant, the contractual amount of the Letter of Credit is $5,639,830 and not $10,439,830. If Defendant pays to RMQ or ELG the January 15, 2002 Installment under either the Texas or Alabama Protocol, Defendant may not draw upon the Letter of Credit in excess of $5,639,830.

22.     Defendant's rights to reimbursement under the Bonds is limited to the Letter of Credit.  Therefore, Defendant cannot draw upon any other unrelated letters of credit for reimbursement if its payment to either RMQ or ELG under the Bonds.

7

Long00192

## COUNT III
## TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION, 11 U.S.C. § 105(a)

23.    Plaintiff repeats and realleges paragraphs 1 through 22 as if fully set forth herein.

24.    If Defendant National Union pays to RMQ the January 15, 2002 Installment described in the Texas Protocol, Plaintiff will suffer irreparable harm.

25.    National Union's payment to RMQ will set in motion a series of events which would be virtually impossible to "undo", and would irreparably harm Grace. In particular, if National Union pays RMQ under the Texas Protocol, National Union can – and presumably will – draw upon the Letter of Credit to secure its payment under the surety bonds.

26.    National Union can draw on the Letter of Credit without first seeking authority from Grace. Thus, absent injunctive relief, Grace will have no recourse to pre-emptively stop National Union from drawing on those funds. If National Union draws on any of the letters of credit, it is unlikely that Grace would ever be able to recoup such funds, as to do so would require the impractical and costly unwinding of a series of transactions.

27.    In particular, National Union would have to agree to, and affirmatively seek to have RMQ refund the payments that National Union had made to RMQ. Even if National Union would agree to take such action, the hurdles barring success would be nearly insurmountable, as RMQ may have already dispersed the funds to thousands of individual asbestos claimants throughout the country.

28.    Plaintiff asserts that: (i) it is likely to succeed on the merits of its claim at the final hearing; (ii) as a result of Defendant's potential conduct, Plaintiff will suffer irreparable harm and its ability to successfully reorganize under the Bankruptcy Code in this Chapter 11 Case will be

8

Long00193

threatened; (iii) Defendant will not suffer any harm if the relief sought by Plaintiff is granted; and

(iv) the public interest favors granting the requested relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the entry of an order:

      a.    enjoining the Defendant from paying to RMQ the January 15, 2002 Installment described in the Texas Protocol; and

      b.    declaring that Defendant and Plaintiff do not have any obligations to pay to RMQ the January 15, 2002 Installment described in the Texas Protocol; and

      c.    declaring that if Defendant does pay to RMQ the January 15, 2002 Installment, such payment did not result from Plaintiff's obligation under the Texas Protocol, and Defendant cannot draw upon the Letter of Credit in excess of its contractual amount (or any other letter of credit issued on the Defendant's behalf), to pay the January 15, 2002 Installment; and

      d.    declaring that the contractual amount of the Letter of Credit is $5,639,830; and

      e.    declaring that Defendant cannot draw upon any unrelated letter of credit for the reimbursement of its payment to RMQ or ELG in accordance with the Bonds; and

      f.    enjoining Defendant from drawing upon any unrelated letters of credit issued by Plaintiff's lenders to recover funds used to pay the January 15, 2002 Installments described in the Texas and Alabama Protocols; and

9

Long00194

g.   awarding Plaintiff such other and further relief as the Court deems just and
     equitable.

Dated: January 17, 2002          KIRKLAND & ELLIS
                                 David M. Bernick
                                 James H.M. Sprayregen
                                 James W. Kapp III
                                 Janet S. Baer
                                 Samuel A. Schwartz
                                 200 East Randolph Drive
                                 Chicago, Illinois 60601
                                 (312) 861-2000


                                      and

                                 PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

                                 *David W Carickhoff Jr.*

                                 Laura Davis Jones (Bar No. 2436)
                                 David W. Carickhoff, Jr. (Bar No. 3715)
                                 919 North Market Street, 16th Floor
                                 P.O. Box 8705
                                 Wilmington, DE 19899-8705 (Courier 19801)
                                 Telephone: (302) 652-4100
                                 Facsimile:  (302) 652-4400

                                 Co-Counsel for the Debtors and Debtors in Possession

10

Long00195

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-1139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| W. R. GRACE & CO.- CONN. | ) | Adversary Proceeding |
| | ) | |
| | ) | Adv. Pro. No. 00-____ (JKF) |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA, | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFICATION

STATE OF FLORIDA         )

COUNTY OF PALM BEACH)

I, Jay Hughes, being duly sworn, depose and say that I am the Senior Litigation

Counsel of W. R. Grace & Co.-Conn., and that I have read the Complaint filed in the above-

referenced matter, dated January 17, 2002, that I know the contents thereof, and that said Complaint

is true to the best of my knowledge, except as to matters stated therein to be alleged on information

and belief, and as to those matters, I am informed and believe that they are true.

_____
                                                                        Jay Hughes

SWORN AND SUBSCRIBED before me this *17* day of January, 2002   *Personally known*

*Valerie Perez*
Notary Public
My Commission Expires:   *11/11/02*

Valerie Perez
My Commission CC787501
Expires November 11, 2002

# Exhibit C

**Long00197**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------X

IN RE:                                          :
W.R. GRACE & CO., et al.,                       :    Chapter 11
                                                :
        Debtors.                                :
                                                :    Case No. 01-01139-JKF
                                                :    (Jointly Administered)
_____         :
W.R. GRACE & CO.-CONN.,                          :
                                                :
        Plaintiff,                              :    Adv. Pro. No. 02-01657
                                                :
             v                                  :
NATIONAL UNION FIRE INSURANCE                    :
COMPANY OF PITTSBURGH, PA.,                      :
                                                :
        Defendant.                              :
                                                :
                                                :
_____         :
NATIONAL UNION FIRE INSURANCE                    :    Related Pleadings: D.I.:
COMPANY OF PITTSBURGH, PA.,                      :    1,2,3,4,7
                                                :
        Third Party and Joinder                 :
        Plaintiff,                              :
                                                :
             v                                  :
REAUD, MORGAN & QUINN, INC. and                  :
ENVIRONMENTAL LITIGATION                         :
GROUP, P.C.,                                     :
                                                :
        Third Party and Joinder                 :
        Defendants.                             :
                                                :
                                                :
-------------------------------------------------X

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S ANSWER, COUNTERCLAIMS AND AMENDED THIRD-PARTY AND JOINDER COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

1

Long00198

Defendant National Union Fire Insurance Company of Pittsburgh, PA. ("National Union"), by its undersigned attorneys, Ashby & Geddes and Zeichner Ellman & Krause LLP, answers the verified complaint of plaintiff W.R. Grace & Co.–Conn. ("Grace" or the "Debtor") (the "Grace Complaint"), and alleged counterclaims, and third-party and joinder claims, upon information and belief, as follows:

### ANSWER TO THE COMPLAINT OF GRACE

1.      National Union denies the allegations contained in paragraphs 1, 14, 15, 16, 19, 21, 22, 24, 25, 26, 27 and 28 of the Grace Complaint except that it refers to any documents referenced therein for their contents and refers any questions of law to the Court.

2.      As respects paragraphs 4 and 7 of the Grace Complaint, National Union denies that this Court has jurisdiction over a letter of credit or its proceeds. As respects all other claims for relief asserted in the Grace Complaint or in this Answer, National Union asserts that this Court does have jurisdiction as a core proceeding.

3.      National Union does not have knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 8 and 9 of the Grace Complaint.

4.      National Union admits the allegations contained in paragraphs 2, 3, 5, 6, 10, 11, 12, 13 and 18 of the Grace Complaint.

2

Long00199

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

5.    The Second and Third Counts of the Grace Complaint fail to state causes of action against National Union upon which relief can be granted with respect to the letters of credit as referenced in the Grace Complaint.

### SECOND AFFIRMATIVE DEFENSE

6.    The letters of credit as referenced in the Grace Complaint are independent contractual obligations which are not property of the Debtors' estates.  Proceeds of letters of credit are also not property of the Debtors' estates.

7.    Therefore, the Court lacks subject matter jurisdiction to grant the relief requested in the Second and Third Counts of the Grace Complaint with respect to the letters of credit.

### FACTS ALLEGED IN CONNECTION WITH COUNTERCLAIMS, THIRD-PARTY AND JOINDER CLAIMS

8.    On information and belief, on or about September 21, 2000, defendant Reaud, Morgan & Quinn, Inc. ("RMQ") and Grace negotiated the terms of a document entitled "Confidential Settlement Agreement for Texas Cases" (the "Texas Protocol").  On or about August

3

Long00200

25, 2000, RMQ, defendant Environmental Litigation Group, P.C. ("ELG")
and Grace negotiated the terms of a document entitled "Confidential
Settlement Agreement for Alabama Cases," (the "Alabama Protocol" and
together with the Texas Protocol the "Protocols").

9.    Although styled as "settlement agreements," Grace
has now alleged in the Grace Complaint in this action -- and shown
with the affidavit of Jay Hughes (the "Hughes Affidavit") -- that the
Alabama Protocol and the Texas Protocol (together the "Protocols") were
merely non-binding frameworks in which RMQ (and, in the case of the
Alabama Protocol, ELG) and Grace agreed to work together to try to
resolve asbestos claims. In short, the Protocols are merely agreements
to agree. Grace further shows that the Protocols specify that, if certain
conditions are met, Grace was to pay settlement installments to RMQ or
ELG in periodic "installments," but if the condition for any particular
installment is not met, then that installment is not due.

10.    Grace has further shown with the Hughes Affidavit
that the Protocols provided frameworks in which to resolve the asbestos
claims of certain "eligible" RMQ and ELG clients. (Texas Protocol at 2,
¶3; Alabama Protocol at 2, ¶3). According to the Texas Protocol, for
example, a claimant is "eligible" -- though not required -- to participate:

> "(i) who, as of May 19, 2000, is a plaintiff in a
> pending lawsuit in any court (state or federal)

4

Long00201

in any jurisdiction wherein any claim is being asserted against W. R. Grace for monetary damages for any asbestos-related disease, injury or death; (ii) who is represented by RMQ; (iii) who is not already a party to or otherwise subject to a prior settlement with W. R. Grace; and (iv) whose case against W. R. Grace had not been tried to verdict as of May 19, 2000." (Id.)

11.    The terms of the Protocols specify that Grace is not obligated to pay any RMQ or ELG claimant (or RMQ or ELG on behalf of any claimant) unless and until Grace receives at least the following documentation (referred to as "Qualifying Materials" from eligible claimants:

"(i) competent medical evidence that the Settling Grace. . . has or had an asbestos-related disease or injury. . .; (ii) a standard release prepared by RMQ and executed by the Settling Grace. . .; [and (iii)] "Exposure Evidence" in the form of . . . a work history sheet for each Settling Grace showing that such plaintiff worked for some period of time at . . . plants at which W. R. Grace agrees that its asbestos-containing products were used" (Texas Protocol at 4-5, ¶6)

12.    Grace has shown that RMQ has not submitted sufficient Qualifying Materials from eligible claimants to trigger the January 15, 2002 payment obligation on the part of Grace under the Texas Protocol. The Texas Protocol provides that "[t]he settlement installments . . .shall be payable on the designated payment dates only if RMQ has submitted Qualifying Materials to W.R. Grace no later than

5

60 days prior to such payment date for Settling Plaintiffs whose aggregate settlement amount equals or exceeds the amount of the installment due on such payment date." (Texas Protocol at 5, ¶7) Grace has unambiguously shown that RMQ has not fulfilled this condition and that Grace has communicated to RMQ the deficiencies in its submissions. Consequently, Grace is not obligated to pay RMQ clients the January 15, 2002 installment payment described in the Texas Protocol.

13.    Partial payments of installments are not required under the terms of the Protocols. Either the entire amount of the installment must be satisfied in full by submission of Qualifying Materials, or the installment is not required to be paid.

14.    On information and belief, RMQ has not and is not able to submit sufficient Qualifying Material to require payment of the January 15, 2003 installment provided for in the Texas Protocol.

15.    On information and belief, RMQ and ELG have not and are not able to submit sufficient Qualifying Material to require payment of the January 15, 2003 installment provided for in the Alabama Protocol.

16.    By the nature of the surety relationship, National Union is not obligated to make any payments as to which Grace is not legally obliged.

6

Long00203

17.    Pursuant to the terms of the two Protocols, Grace caused National Union to issue two surety bonds numbered ESD7311060 and ESD7311061 (collectively, the "Bonds") purportedly as security for certain of the installment payments under the Protocols.   Accordingly, National Union has been provided with a letter of credit (the "Letter of Credit") in the amount of $10,439,830 as security for the Bonds.   National Union also holds another $6 million letter of credit arising from another transaction.

18.    On October 13, 2000, Grace and National Union entered into a letter agreement (the "October 13 Letter") which, according to Grace, imposes certain limits upon the letter of credit security for the Bonds.

19.    On October 16, 2000, Grace and National Union entered into a Continuing Agreement of Indemnity (the "Continuing Indemnity") whereby the parties agreed in part that:

> [I]f Surety shall be required or shall deem it necessary to set up a reserve in any amount to cover any claim, demand, liability, expense, suit order, judgment or adjudication under or on any Bond or Bonds or for any other reason whatsoever, to immediately upon demand deposit with Surety an amount of money sufficient to cover such reserve and any increase thereof, at anytime, in payment or compromise of any liability, claims, demands, judgment, damages, fees and disbursements or other expenses... (See Hughes Affidavit, Exhibit D, Continuing Indemnity, p. 1, ¶ 3).

7

Long00204

(Hereinafter the "Reserve Demand Clause.")

## FIRST COUNTERCLAIM

20.    National Union repeats and realleges paragraphs 1 – 19 as if fully set forth herein.

21.    Grace relies on the October 13 Letter to assert that National Union agreed to limit letter of credit security for the Bonds to twenty percent of its exposure, and to reduce such security as and when exposures were reduced.    This contention, however, is inconsistent with the Reserve Demand Clause.

22.    The intention and meaning of the October 13 Letter and the Continuing Indemnity, when read together, is that so long as no draw upon the Bonds is reasonably expected (no "reserve" is anticipated), the twenty percent limit concerning letter of credit security may apply, but once the draw becomes reasonably expected, full cash security would be provided and the Letter of Credit or any other cash or letter of credit held by National Union may be retained or drawn as may be required or permitted by the Reserve Demand Clause.

23.    Therefore, the Court should issue a declaratory judgment that the Reserve Demand Clause supersedes the October 13 Letter, that no obligation exists on the part of National Union to reduce

8

its letter of credit security, and that National Union may draw the Letter of Credit, or any other letter of credit provided by Grace that National Union may hold, to fund the obligations of Grace arising under the Bonds, as provided for in the Reserve Demand Clause.

## SECOND COUNTERCLAIM

24.    National Union repeats and realleges paragraphs 1 – 23 as if fully set forth herein.

25.    National Union and Grace entered into an agreement (the "1995 Agreement"), dated on or about November 20, 1995 pursuant to which National Union and other companies related to National Union agreed to pay upon the terms and conditions specified in such agreement as much as $417,557,428 to Grace, to reimburse Grace for certain payments Grace might thereafter make to asbestos claimants.

26.    Of that amount, $143,750,000 was to be paid by National Union.   At this time, more than $30,000,000 of National Union's obligations under this agreement have not fallen due and remain unpaid to Grace.

27.    Under Section 553(a) of the Bankruptcy Code, Grace's bankruptcy filing "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the [bankruptcy] case."

9

Long00206

28.   Because the debts under the 1995 Agreement arose prior to Grace's Ch. 11 filing, more than $30,000,000 of National Union's obligations thereunder are available for setoff.

29.   The Court should issue an order modifying the automatic stay of Section 362 of the Bankruptcy Code to permit National Union to offset any and all obligations of Grace arising out of the Bonds against National Union's obligations under the 1995 Agreement.

### THIRD COUNTERCLAIM

30.   National Union repeats and realleges paragraphs 1 – 29 as if fully set forth herein.

31.   A surety that pays the obligation of a principal to an obligee obtains all the rights of both the principal and the obligee with respect to the obligation paid.  Accordingly, a surety has a right to recover from the principal and to equitably subrogate to the principal's rights with respect to any rights or property of any kind related to the bonded transaction.

32.   On information and belief, Grace has millions of dollars of insurance coverage (in addition to the National Union coverage available for setoff) that is available to pay the same obligations as are payable under the Bonds.  As surety, National Union

10

is entitled to the benefit of such insurance directly from the insurers as soon as any such insurer becomes obligated to pay such insurance obligation.

33.    The Court should issue an affirmative injunction requiring Grace to take all steps reasonable or necessary to assert claims against its insurance carriers and to assign the resulting proceeds to National Union in order to reimburse National Union for any payments it may make or expenses it may incur pursuant to the Bonds.

### FOURTH COUNTERCLAIM

34.    National Union repeats and realleges paragraphs 1 – 33 as if fully set forth herein.

35.    A surety that pays the obligation of a principal to an obligee obtains all the rights of both the principal and the obligee with respect to the obligation paid.  Accordingly, a surety has a right to recover from the principal and to equitably subrogate to the principal's rights with respect to any rights or property of any kind related to the bonded transaction.

36.    On information and belief, Grace has millions of dollars of insurance coverage (in addition to the National Union coverage available for setoff) that is available to pay the same

11

Long00208

obligations as are payable under the Bonds.  As surety, National Union is entitled to the benefit of such insurance directly from the insurers.

37.   The Court should issue an order modifying the automatic stay to permit National Union to take all steps reasonable or necessary to assert claims against Grace's insurance carriers and to receive, recover and hold the resulting proceeds in order to reimburse National Union for any payments it may make or any expenses it may incur pursuant to the Bonds.

### FIFTH COUNTERCLAIM

38.   National Union repeats and realleges paragraphs 1 – 37 as if fully set forth herein.

39.   Pursuant to the Continuing Indemnity Grace is obligated to reimburse National Union for all its attorneys' fees and other expenses that arise in connection with the Bonds.  By virtue of the letters of credit it holds and its rights arising from insurance coverages, National Union is fully secured for all of Grace's obligations arising in connection with the Bonds.

40.   The Court should issue a declaration that National Union is fully secured with respect to any and all of Grace's obligations arising in connection with the Bonds, and that National Union may

12

Long00209

utilize such security to satisfy Grace's obligations arising under or in connection with the Bonds.

## SIXTH COUNTERCLAIM AND
## FIRST AMENDED THIRD-PARTY AND JOINDER CAUSE OF ACTION

41.    National Union repeats and realleges paragraphs 1-40 as if fully set forth herein.

42.    On information and belief, because RMQ had not submitted and cannot submit sufficient Qualifying Materials for eligible claimants pursuant to the terms of the Texas Protocol, neither National Union nor Grace has any obligation to pay RMQ the January 15, 2002 Installment described in the Texas Protocol.

## SEVENTH COUNTERCLAIM AND
## SECOND AMENDED THIRD-PARTY
## AND JOINDER CAUSE OF ACTION

43.    National Union repeats and realleges paragraphs 1 – 42 as if fully set forth herein.

44.    On information and belief, because RMQ had not submitted and cannot submit sufficient Qualifying Materials for eligible claimants pursuant to the terms of the Texas Protocol, neither National Union nor Grace has any obligation to pay RMQ the January 15, 2003 Installment described in the Texas Protocol.

13

Long00210

## EIGHTH COUNTERCLAIM AND
## THIRD AMENDED THIRD-PARTY AND JOINDER CAUSE OF ACTION

45.    National Union repeats and realleges paragraphs 1 – 44 as if fully set forth herein.

46.    On information and belief, because RMQ and ESL have not submitted and cannot submit sufficient Qualifying Materials for eligible claimants pursued to the terms of the Alabama Protocol, National Union has no obligation to pay RMQ or ESL the January 15, 2003 installment described in the Alabama Protocol.

## NINTH COUNTERCLAIM AND
## FOURTH AMENDED THIRD-PARTY
## AND JOINDER CAUSE OF ACTION

47.    National Union repeats and realleges paragraphs 1 – 46 as if fully set forth herein.

48.    An agreement to agree is not a binding contract. National Union is only obligated to pay upon the Bonds to the extent that Grace is actually obligated pursuant to the Protocols.

## TENTH COUNTERCLAIM AND
## FIFTH AMENDED THIRD-PARTY AND JOINDER CAUSE OF ACTION

49.    National Union repeats and realleges paragraphs 1 – 48 as if fully set forth herein.

14

Long00211

50.    National Union has not received a full, proper and complete demand for payment under either the Alabama or the Texas Protocols accompanied by any Qualifying Materials required by such protocols. Unless and until National Union receives such material and such a demand, National Union has no obligation to pay upon either Bond.

51.    National Union further submits that it has no obligation to make payment upon either Bond until it has had a fair and reasonable opportunity to examine such Qualifying Materials, at least equal to the opportunity afforded to Grace under the Protocols.

### ELEVENTH COUNTERCLAIM AND
### SIXTH AMENDED THIRD-PARTY AND JOINDER CAUSE OF ACTION

52.    National Union repeats and realleges paragraphs 1 – 51 as if fully set forth herein.

53.    Grace filed its petition in these cases on April 2, 2001. Any document prepared or submitted by RMQ or ELG, or any other act by RMQ or ELG after that date which was intended to form an agreement to collect on the Protocols, was a violation of § 362(a)(6) of the Bankruptcy Code and is void.

15

Long00212

## SEVENTH AMENDED THIRD-PARTY
## AND JOINDER CAUSE OF ACTION

54.    National Union repeats and realleges paragraphs 1 –
53 as if fully set forth herein.

55.    If Third-Party Defendants RMQ and ESL commence
an action in any court other than this court there is a risk of
inconsistent results and harm to the interests of National Union and to
the estates of the Debtors

WHEREFORE, National Union requests the entry of an order:

a.    Upon the second and third causes of action in the
Grace Complaint, dismissing any claim for relief
against National Union with respect to any letters of
credit; and

b.    Upon the first cause of action of the Grace Complaint
and upon the sixth counterclaim and first amended
third-party and joinder cause of action declaring that
National Union and Grace do not have any obligation
to pay to RMQ the January 15, 2002 Installment
described in the Texas Protocol; and

c.    Upon the first counterclaim declaring that nothing in
the October 13 Letter prevents National Union from
drawing upon the Letter of Credit or upon any other
letter of credit National Union may hold; and

d.    Upon the second counterclaim modifying the stay of
Section 362 of the Bankruptcy Code to permit
National Union to setoff any funds due to Grace
under the 1995 Agreement against any obligations
Grace owes to National Union in connection with the
Bonds; and

16

Long00213

e.   Upon the third counterclaim requiring Grace to take all steps reasonable or necessary to assert claims against its insurance carriers and to assign to resulting proceeds to National Union in order to reimburse National Union in connection with the Bonds; and

f.   Upon the fourth counterclaim modifying the automatic stay of Section 362 of the Bankruptcy Code to permit National Union to take all action reasonable or necessary to pursue insurance recoveries from other insurers; and

g.   Upon the fifth counterclaim declaring that National Union is fully secured for its claims arising under or in connection with the Bonds and that it may recover all legal fees, expenses and interest due it from such security; and

h.   Upon the seventh counterclaim and the second amended third-party and joinder cause of action declaring that National Union and Grace do not have any obligations to pay to RMQ the January 15, 2003 Installment described in the Texas Protocol; and

i.   Upon the eighth counterclaim and the third amended third-party and joinder cause of action declaring that National Union and Grace do not have any obligations to pay to RMQ and/or ESL the January 15, 2003 Installment described in the Alabama Protocol; and

j.   Upon the ninth counterclaim and the fourth amended third-party and joinder cause of action declaring that National Union is only obligated to pay upon the Bonds to the extent that Grace is actually obligated pursuant to the Protocols; and

k.   Upon the tenth counterclaim and the fifth amended third-party and joinder cause of action declaring that National Union has no obligation to pay upon its Bonds until a proper demand is made, accompanied by the requisite documents, and National Union has

17

Long00214

had an adequate opportunity to determine, in this court if necessary, that such documents create a binding obligation subject to the Bonds; and

l.     Upon the eleventh counterclaim and the sixth amended third-party and joinder cause of action declaring that any act performed or documents submitted by RMQ or ELG seeking payment upon the Bonds that purported to create after April 2, 2001 a contractual obligation of any of the Debtors is void; and

m.     Upon the seventh amended third-party and joinder cause of action enjoining RMQ and ELG from commencing or continuing an action concerning the subject matter of this action in any court other than this court; and

n.     Awarding National Union the costs, disbursements and legal fees incurred in connection with the Bonds and this action; and

o.     Awarding National Union such other and further relief as the Court deems just and equitable.

Dated:   March 12, 2002

ASHBY & GEDDES

_____
William P. Bowden (#2553)
Ricardo Palacio (#3765)
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

18

Long00215

ZEICHNER ELLMAN & KRAUSE LLP
Michael S. Davis, Esq.
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 233-0400
Facsimile: (212) 753-0396
E-mail: mdavis@zeklaw.com

Co-Counsel for National Union Fire
Insurance Company of Pittsburgh,
Pa.

384234.01/2888-007/MSD

19

Long00216

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2002 I caused one copy of the foregoing National Union

Fire Insurance Company of Pittsburgh, PA's Answer, Counterclaims, and Amended Third-

Party and Joinder Complaint for Declaratory Judgment and Injunctive Relief to be served on

the persons below in the manner indicated.

**HAND DELIVERY**
David Carickoff, Esq.
Pachulski Stang Ziehl Young & Jones
919 N. Market Street, 16th Floor
Wilmington, DE 19899

**U.S. MAIL and FACSIMILE**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 E. Randolph Drive
Chicago, IL 60601
Facsimile: 312-861-2200

**U.S. MAIL and FACSIMILE**
Keavin D. McDonald, Esq.
Wilshire Scott & Dyer
4550 One Houston Center
1221 McKinney
Houston, TX 77010-2011
Facsimile: 713-651-0020

**U.S. MAIL and FACSIMILE**
Glen W. Morgan, Esq.
Reaud Morgan & Quinn, Inc.
801 Laurel Street
Beaumont, TX 77720
Facsimile: 409-833-8236

**U.S. MAIL**
Environmental Litigation Group, P.C.
C/O Managing Partner/Principal
3529 7th Avenue South
Birmingham, AL 35222

Ricardo Palacio

93945.1