substantially consistent with your business travel obligations immediately prior to the Change in Control of the Company.

(iv) The failure by Grace, without your consent, to pay to you any portion of your then current compensation, or the failure by Grace (and/or any trust of which Grace is the grantor) to pay to you any portion of an installment of deferred compensation under any deferred compensation program of Grace within seven days of the date such deferred compensation is due.

(v) The failure by Grace to continue in effect any compensation plan or program in which you participate immediately prior to the Change in Control of the Company which is material to your total compensation, including but not limited to Grace's incentive compensation, stock incentive and deferred compensation plans or programs or any substitute plans or programs adopted prior to such Change in Control of the Company, unless an equitable arrangement (embodied in an ongoing substitute or alternative plan or program) has been made with respect to such plan or program, or the failure by Grace to continue your participation therein (or in such substitute or alternative plan or program) on a basis not materially less favorable, both in terms of the amount of benefits provided and the level of your participation relative

-10-

CC-BLG002576

Exhibit 10.17

to other participants, as existed at the time of such Change in Control of the Company.

(vi) The failure by Grace to continue to provide you with benefits substantially similar to those enjoyed by you under any of the Retirement Arrangements or Insurance Plans in which you were participating at the time of the Change in Control of the Company, the taking of any action by Grace that would directly or indirectly materially reduce any of such benefits or deprive you of any material fringe benefit enjoyed by you at the time of the Change in Control of the Company, or the failure by Grace to provide you with the number of paid vacation days to which you are entitled on the basis of your years of service with Grace in accordance with Grace's normal vacation policies in effect at the time of the Change in Control of the Company.

(vii) The failure of the Company to obtain a satisfactory agreement from any successor corporation to assume and agree to perform this Agreement, as contemplated in Section 6.

(viii) Any purported termination of your employment which is not effected pursuant to a Notice of Termination satisfying the requirements of Subsection (d) below (and, if applicable, the requirements of Subsection (b) above). For

-11-

CC-BLG002577

purposes of this Agreement, no such purported termination shall be effective.

Your right to terminate your employment pursuant to this Subsection shall not be affected by your incapacity due to physical or mental illness. Your continued employment shall not constitute consent to, or a waiver of rights with respect to, any circumstances constituting Good Reason hereunder.

(d) Notice of Termination. Any purported termination of your employment by Grace or by you following a Change in Control of the Company shall be communicated by a Notice of Termination to the other party hereto in accordance with Sections 1(m) and 7.

(e) Date of Termination, Etc. "Date of Termination" shall mean
(i) if your employment is terminated for Disability, 30 days after Notice of Termination is given (provided that you shall not have returned to the full-time performance of your duties during such 30-day period), and (ii) if your employment is terminated pursuant to Subsection (b) or (c) above or for Retirement or for any reason (other than Disability), the date specified in the Notice of Termination (which, in the case of a termination pursuant to Subsection (b) above shall not be less than 30 days, and in the case of a termination pursuant to Subsection (c) above shall not be less than 15 nor more than 60 days,

-12-

CC-BLG002578

Exhibit 10.17

respectively, after the date such Notice of Termination is given); provided that if within 15 days after any Notice of Termination is given, or, if later, prior to the Date of Termination (as determined without regard to this proviso), the party receiving such Notice of Termination notifies the other party that a dispute exists concerning the termination, the Date of Termination shall be the date on which the dispute is finally determined, either by mutual written agreement of the parties, by a binding arbitration award, or by a final judgment, order or decree of a court of competent jurisdiction (which is not appealable or with respect to which the time for appeal therefrom has expired and no appeal has been perfected); provided further that the Date of Termination shall be extended by a notice of dispute only if such notice is given in good faith and the party giving such notice pursues the resolution of such dispute with reasonable diligence. Notwithstanding the pendency of any such dispute, the Company will continue to pay, or cause a subsidiary to pay, you your full compensation in effect when the notice giving rise to the dispute was given (including, but not limited to, base salary) and continue you as a participant in all compensation plans and programs, Retirement Arrangements and Insurance Plans in which you were participating when the notice giving rise to the dispute was given, until the dispute is finally resolved in accordance with this

-13-

CC-BLG002579

Subsection. Amounts paid under this Subsection are in addition to all other amounts due under this Agreement and shall not be offset against or reduce any other amounts due under this Agreement.

4. Compensation During Disability and upon Termination. Following a Change in Control of the Company, upon termination of your employment or during a period of disability you shall be entitled to the following benefits:

(a) Disability; Retirement. During any period that you fail to perform your full-time duties with Grace as a result of incapacity due to physical or mental illness, you shall continue to receive your full base salary at the rate in effect at the commencement of any such period, plus all other amounts to which you are entitled under any compensation plan or program of Grace in effect during such period, until your employment is terminated for Disability pursuant to Section 3(a). Thereafter your benefits shall be determined under the Retirement Arrangements, Insurance Plans and other compensation plans and programs then in effect in accordance with the terms of such plans and programs (without regard to any amendment to such plans and programs made subsequent to a Change in Control of the Company and on or prior to the Date of Termination).

If your employment shall be terminated by your Retirement, or by reason of your death, the Company shall pay, or

-14-

CC-BLG002580

Exhibit 10.17

cause a subsidiary to pay, you your full base salary through the Date of Termination or the date of your death plus all other amounts to which you are entitled under any compensation plan or program of Grace. Thereafter your benefits shall be determined in accordance with the Retirement Arrangements, Insurance Plans and other compensation plans and programs then in effect in accordance with the terms of such plans and programs (without regard to any amendment to such plans and programs made subsequent to a Change in Control of the Company and on or prior to the Date of Termination). As used herein, "Retirement" shall mean termination of employment and retirement under a Retirement Plan but shall not include termination of employment for Good Reason or involuntary retirement by reason of the failure of the Company to approve your continued employment after you reach normal retirement age.

(b) Cause; Voluntary Termination. If your employment shall be terminated by the Company for Cause or by you other than for Good Reason, Disability, Retirement or death, the Company shall pay, or cause a subsidiary to pay, you your full base salary through the Date of Termination at the rate in effect at the time the Notice of Termination is given, plus all other amounts to which you are entitled under any compensation plan or program of Grace at the time such payments are due, and the Company shall have no

-15-

CC-BLG002581

further obligations to you under this Agreement except as provided in Subsection
(g) below.

(c) Involuntary Termination. If your employment shall be terminated by you for Good Reason, or by the Company other than for Cause or Disability, you shall be entitled to the benefits provided below:

(i) The Company shall pay, or cause a subsidiary to pay: (A) you your full base salary and vacation pay accrued (but not taken) through the Date of Termination at the rate in effect at the time Notice of Termination is given; (B) you your total "targeted" annual incentive compensation award (under the annual incentive compensation program of the Company) for the calendar year immediately preceding the year in which the Date of Termination occurs, but only if you have not received such an award for such preceding calendar year; (C) you a pro-rata portion of your total "targeted" annual incentive compensation award (under the annual incentive compensation program of the Company) for the calendar year in which the Date of Termination occurs (determined by reference to your base salary and salary grade on the day before the Date of Termination), calculated by multiplying such total "targeted" award by a fraction of which the numerator is the number of days in such calendar year prior to your Date of

-16-

CC-BLG002582

Termination, and the denominator is 365; (D) you all other amounts to which you are entitled under any compensation plan or program of Grace at the time such payments are due; and (E) an independent, third-party outplacement service provider to provide you (at your request) with outplacement services that are the same as (or substantially similar to) outplacement services offered to Company officers under the termination program of the Company instituted during 1997.

(ii) In lieu of any further salary payments to you for periods subsequent to the Date of Termination: A Severance Payment equal to 3.00 multiplied by the sum of (a) your annual base salary in effect on the day immediately preceding the Date of Termination plus (b) an amount equal to your total "targeted" annual incentive compensation award (under the annual incentive compensation program of the Company) for the calendar year in which the Date of Termination occurs (determined by reference to your base salary and salary grade on the day before the Date of Termination). Notwithstanding the foregoing, if you have attained age 62 prior to the Date of Termination, the Severance Payment payable to you under this Section 4(c)(ii) shall be reduced (but not below zero) by multiplying such Severance Payment by a fraction of which the numerator is equal to the number of whole calendar months that

-17-

CC-BLG002583

Exhibit 10.17

have elapsed since the calendar month immediately preceding the month in which your 62nd birthday occurs (i.e., the first calendar month counted is the calendar month in which you attain age 62) but prior to the Date of Termination (i.e., the last calendar month counted is the calendar month ending immediately prior to the calendar month in which the Date of Termination occurs), and the denominator is 36 (which, of course, reflects the number of months from age 62 to age 65, the normal retirement age under the W. R. Grace & Co. Retirement Plan for Salaried Employees).

(iii) For a 24-month period following the Date of Termination, the Company shall arrange to provide you with basic life and health insurance benefits substantially similar to those you are receiving under Insurance Plans immediately prior to the Notice of Termination, and with salary continuance benefits similar to those which you would receive under the Executive Salary Protection Plan had you continued to be employed at the date of your death less the amount of your Severance Payment hereunder. Benefits otherwise receivable by you pursuant to this paragraph shall be reduced to the extent comparable benefits are actually received by you during the 24-month period following the Date of Termination,

-18-

CC-BLG002584

and any such benefits actually received by you shall be reported by you to the Company. Thereafter your benefits shall be determined in accordance with the Insurance Plans as in effect at the Date of Termination (without regard to any amendment to such plans made subsequent to a Change in Control of the Company and on or prior to the Date of Termination). Notwithstanding the foregoing, benefits otherwise receivable by you pursuant to this paragraph shall cease on the first day of the calendar month following the month in which your 65th birthday occurs (your "65th birthdate month"), unless you are not entitled to receive retiree medical coverage from the Company as of the first day of the calendar month following your 65th birthdate month, in which case such benefits shall continue to be provided under the terms of this paragraph (iii) for the remainder of the 24-month period following the Date of Termination.

(d) Excise Tax. (i) Whether or not you are entitled to any Other Payments, the Severance Payment calculated and payable under Section 4(c)(ii) (after any adjustment necessary to satisfy the requirements of the last sentence of Section 4(c)(ii)) shall be reduced (but not below zero) by the amount necessary to avoid the imposition of the Excise Tax with regard to the Severance Payment and/or Other Payments;

-19-

CC-BLG002585

provided that such reduction shall only be effective if, as calculated in accordance with this Agreement, the total amount of the Severance Payment, as so reduced, plus Other Payments (together, the "Reduced Payment") would be greater than the total amount of the Severance Payment, without regard to any such reduction, plus Other Payments (together, the "Full Payment"), after reducing the amount of both the Reduced Payment and the Full Payment by the total of all applicable federal, state, local and foreign taxes (including, but not limited to, the Excise Tax).

(ii) The applicable federal, state, local and foreign taxes shall be those taxes that, in the opinion of the Tax Advisor, will be imposed upon you as a result of the receipt or enjoyment of the Severance Payment and/or Other Payments and shall be calculated based upon the highest possible marginal tax rates that could be applicable to you for the year in which you receive the Severance Payment, unless you inform the Tax Advisor that a different marginal tax rate is applicable with respect to you for any such tax for that year.

(iii) The calculations necessary to effectuate the provisions of this Section 4(c) shall be performed by the Tax Advisor prior to the date the Severance Payment is made to you pursuant to Section 4(e). All issues with regard to those

-20-

CC-BLG002586

calculations that are not specifically provided for by this Agreement shall be decided in a manner that provides you with the greatest net after-tax benefit with respect to the Severance Payment and Other Payments, taking into consideration the above-mentioned applicable federal, state, local and foreign taxes.

(e) Payment Of Severance Payment.

-21-

CC-BLG002587

Exhibit 10.17

(i) The Severance Payment to which you are entitled shall be paid to you not later than the fifth day following your Date of Termination, provided, however, that if the amount of such payment cannot be fully determined on or before such day, the Company shall pay to you on such day an estimate, as determined in good faith by the Tax Advisor, of the amount of such payment and shall pay the remainder of such payment (together with interest from such fifth day to the date of such payment at a rate of interest per annum equal to the prime rate of interest announced by Morgan Guaranty Trust Company of New York from time to time plus 2 percentage points) as soon as the amount thereof can be determined but in no event later than the thirtieth day after your Date of Termination. In the event that the amount of the estimated payment exceeds the amount subsequently determined to have been due, such excess shall be payable by you to the Company, without interest, on the fifth day after demand by the Company.

(ii) The Company also shall pay to you all legal fees and expenses incurred by you as a result of your termination of employment (including all such fees and expenses, if any, incurred in contesting or disputing any such termination, in seeking to obtain or enforce any right or benefit provided by

-22-

CC-BLG002588

this Agreement or in connection with any tax audit or proceeding to the extent attributable to the application of Section 4999 of the Code to any payment or benefit provided hereunder). Such payments shall be made at the later of the times specified in paragraph (i) above, or within five days after your request for payment accompanied with such evidence of fees and expenses incurred as the Company reasonably may require.

(f) No Mitigation. You shall not be required to mitigate the amount of any payment provided for in this Section 4 by seeking other employment or otherwise, nor shall the amount of any payment or benefit provided for in this Section 4 be reduced by any compensation earned by you as the result of employment by another employer, by retirement benefits, by offset against any amount claimed to be owing by you to the Company, or otherwise, except as provided in Section 4(c)(iii) above.

(g) Retirement Benefits. In addition to all other amounts payable to you under this Section 4, you shall be entitled to receive all benefits payable to you under all Retirement Arrangements.

(h) Tax Advisor. Each calculation necessary to effectuate the provisions of Section 4 shall be performed by the Tax Advisor within the appropriate time periods specified herein

-23-

CC-BLG002589

Exhibit 10.17

for such calculation or, absent such specification, prior to the date the Severance Payment is made to you pursuant to Section 4(e) above. All issues with regard to those calculations that are not specifically provided for by this Agreement shall be decided in a manner that provides you with the greatest After-Tax Total Payment. Any determination by the Tax Advisor shall be binding upon you and the Company.

5. Relationship to Other Agreements and Plans. To the extent that any provision of any other agreement between Grace and you shall limit, qualify or be inconsistent with any provision of this Agreement, then for the purposes of this Agreement (while this Agreement remains in effect) the provision of this Agreement shall control and such provision of such other agreement shall be deemed to have been superseded, and to be of no force or effect, as if such other agreement had been formally amended to the extent necessary to accomplish such purpose. The Severance Payment shall not be considered to be compensation for the purpose of any Retirement Arrangements, Insurance Plans or compensation plans of Grace.

-24-

CC-BLG002590

6. Successors.

(a) Successors to the Company.

The Company shall require any successor (whether direct or indirect, by purchase or merger, consolidation or otherwise) to all or substantially all of the business and/or assets of the Company to expressly assume and agree to perform this Agreement in the same manner and to the same extent that the Company would have been required to perform it if no such succession had taken place. Failure of the Company to obtain such assumption and agreement prior to the effectiveness of any such succession shall be a breach of this Agreement and shall entitle you to compensation from the Company in the same amount and on the same terms as you would be entitled hereunder if you terminate your employment for Good Reason following a Change in Control of the Company, except that for purposes of implementing the foregoing, the date on which any such succession becomes effective shall be deemed the Date of Termination (provided you shall have delivered a Notice of Termination to the Company). As used in this Agreement, "Company" shall mean the Company as hereinbefore defined and/or any successor to the Company's business and/or assets as aforesaid which assumes and agrees to perform this Agreement by operation of law or otherwise.

-25-

CC-BLG002591

Exhibit 10.17

(b) Your Successors. This Agreement shall inure to the benefit of and be enforceable by your personal or legal representatives, executors, administrators, successors, heirs, distributees, devisees and legatees. If you should die while any amount would still be payable to you hereunder if you had continued to live, all such amounts, unless otherwise provided herein, shall be paid in accordance with the terms of this Agreement to your devisee, legatee or other designee or, if there is no such designee, to your estate.

7. Notices. Notices and all other communications provided for in this Agreement shall be in writing and shall be deemed to have been duly given when delivered or mailed by United States registered or certified mail, return receipt requested, postage prepaid, addressed to the respective addresses set forth on the first page of this Agreement, provided that all notices to the Company shall be directed to the attention of the Board with a copy to the Secretary of the Company, or to such other address as either party may have furnished to the other in writing in accordance herewith, except that notice of change of address shall be effective only upon receipt.

8. Governing Law. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of New York.

-26-

CC-BLG002592

Exhibit 10.17

9. Validity. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.

10. Arbitration. Any dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Such arbitration, whether commenced by you or the Company, shall be conducted in either the city and state in which you reside, the city and state in which the Company maintains its principal offices or the city and state in which you were employed at the time the dispute or controversy arose, as designated by you. Any arbitration pursuant to this provision shall be conducted before an arbitrator to be selected by the Company from a list of three arbitrators to be provided by you to the Company. All expenses, including attorneys fees, which you incur as a result of the arbitration and/or the dispute or controversy giving rise to the arbitration shall be paid directly by the Company. In the event that you are entitled to, or believe that you are entitled to, compensation pursuant to Section 4, the Company shall pay you such compensation unless and until directed to cease such payments pursuant to an award issued in accordance with this Section.

-27-

CC-BLG002593

Exhibit 10.17

Judgment may be entered on an award issued pursuant to this Section in any court of competent jurisdiction. In the event that the Company seeks to stay an arbitration sought under this Section 10, it shall post a bond, or provide similar security, in an amount equal to any unpaid compensation which is due you, or claimed to be due you, pursuant to Section 4.

11. General. No provision of this Agreement may be modified, waived or discharged unless such waiver, modification or discharge is agreed to in writing and signed by you and such officer as may be specifically designated by the Board or its Compensation, Employee Benefits and Stock Incentive Committee or any successor to such Committee. No waiver by either party hereto at any time of any breach by the other party hereto of, or compliance with, any condition or provision of this Agreement to be performed by such other party shall be deemed a waiver of similar or dissimilar provisions or conditions at the same or at any prior or subsequent time.

No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by either party which are not expressly set forth in this Agreement.

-28-

CC-BLG002594

Exhibit 10.17

The section and subsection headings contained in this Agreement are for convenient reference only, and shall not in any way affect the meaning or interpretation of this Agreement.

Any payments provided for hereunder shall be paid net of any applicable withholding required under federal, state, local or foreign law. The obligations of the Company under Section 4 shall survive the expiration of the term of this Agreement.

12. Counterparts. This Agreement may be executed in several counterparts, each of which shall be deemed to be an original but all of which together will constitute one and the same instrument. If this letter sets forth our agreement on the subject matter hereof, kindly sign and return to the Secretary of the Company the enclosed copy of this letter which will then constitute our agreement on this subject. By your signing this Agreement, you agree that, as of the date hereof, this Agreement supersedes any

-29-

CC-BLG002595

Exhibit 10.17

and all prior agreements between you and the Company setting forth your severance benefits in the event of a Change in Control of the Company.

Sincerely,

**W. R. GRACE & CO.**

By
W. Brian McGowan
Senior Vice President

**Agreed to** _____, 20__


Name: _____

-30-

EXHIBIT 10.19

**GRACE**

W. R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

November 6, 2002

Mr. Paul J. Norris
W. R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

Dear Paul:

As you and the Compensation Committee have discussed, this letter agreement concerns your continued employment with W. R. Grace & Co. - Conn. (the "Company").

The Board is pleased that you have agreed to continue your employment with the Company until at least the expiration of the "Initial Term" of your employment agreement with the Company, dated January 1, 2001 (the "2001 Employment Agreement"). As you know, the Initial Term of the 2001 Employment Agreement will expire on December 31, 2002.

In addition, this letter amends the 2001 Employment Agreement as specified below, in accordance with section 26(b) of the 2001 Employment Agreement.

If you agree with the terms of this letter and the amendments specified below, please sign this letter where indicated and return a signed original copy to me.

**Amendments To The 2001 Employment Agreement**

Effective January 1, 2003, the 2001 Employment Agreement is hereby amended as follows:

Section 2 is amended by adding the following after subsection (b):

"c) Notwithstanding any other provision of this Agreement to the contrary, Executive shall be entitled to provide prior notice on any date on or after January 1, 2003 specifying his date of resignation of employment with the Company (in accordance with the provisions of this sentence), with a last date of employment effective as of any date on or after June 30, 2003; provided that Executive has delivered to the Chairman of the Compensation Committee of the Company's Board of Directors a written notice

CC-BLG002597

Page 2

November 6, 2002

specifying the effective date of Executive's last date of employment at least 180 calendar days prior to the effective date specified as his last date of employment.

"d) Notwithstanding any other provision of this Agreement to the contrary, the Executive shall be entitled to the following benefits, if the Executive resigns in a manner that complies with the requirements of Section 2(c), or if the Executive terminates his employment with the Company on the basis of Constructive Discharge, or if the Executive's employment terminates as a result of his death or Disability, or if the Executive is terminated by the Company for any reason other than for Cause:

o A pro-rated award under the Company's Annual Incentive Compensation Program under Section 3(b);

o A lump sum cash supplemental pension payment under Section 7;

o Residential relocation assistance under Section 10; and

o A pro-rated payment of the cash component of any award made to Executive under any Company Long Term Incentive Program, calculated and paid in accordance with the provisions of Section 3(g) below.

"Notwithstanding any other provision of this Agreement to the contrary, the Executive shall not be entitled to any of the benefits specified above in this Section 2(d), if the Executive's employment with the Company is terminated for Cause, or terminates under any other circumstances, except those circumstances specified above in this Section 2(d)."

The fourth sentence of Section 3(b) is amended to read as follows:

"Subject to Section 2(d), for the calendar year in which Executive's employment with the Company terminates, Executive or his beneficiary shall receive an award under the Annual Incentive Compensation Program at the time that Executive would have received such award had his employment with the Company not terminated, in an amount equal to the product of (i) the award to which Executive would be entitled by operation of the Annual Incentive Compensation Program for performance in the year of Executive's employment termination, as if his employment had not terminated, and (ii) a fraction, the numerator of which is the number of days in the current fiscal year through Executive's employment termination date, and the denominator of which is 365.

Section 3(f) is amended in its entirety to read as follows:

"f) Executive shall become entitled to receive, and shall receive: (i) on December 31, 2003, for services rendered for the 2003 calendar year, a retention bonus in an amount

CC-BLG002598

November 6, 2002

that is equal to Executive's annual base salary (as of October 31, 2002) multiplied by a percentage that is two-times the "Executive Retention Bonus Percentage" (as defined below) applicable to the 2003 calendar year; and (ii) on December 31, 2004, for services rendered for the 2004 calendar year, a retention bonus in an amount that is equal to Executive's annual base salary (as of October 31, 2002) multiplied by a percentage that is two-times the Executive Retention Bonus Percentage applicable to the 2004 calendar year." The payments described in clause (i) and clause (ii) of the immediately preceding sentence are each referred to separately as a "Retention Bonus." If Executive's employment is terminated by the Company for Cause or by Executive other than on the basis of Constructive Discharge (including following a Change in Control), death or Disability, Executive shall not receive the Retention Bonus applicable to the calendar year in which Executive's last date of employment with the Company occurs. If Executive's employment is terminated by Executive on the basis of Constructive Discharge (including following a Change in Control), death or Disability, or by the Company without Cause, the Company shall pay to Executive a portion of the Retention Bonus applicable to the calendar year in which Executive's last date of employment with the Company occurs, which is equal to the product of (i) the amount of such Retention Bonus to which Executive would be entitled as if his employment had not terminated and (ii) a fraction, the numerator of which is the number of days in the applicable calendar year through Executive's employment termination date, and the denominator of which is 365. The Company shall make such payment within five business days of such termination. (In no event shall Executive be entitled to receive a Retention Bonus applicable to any calendar year commencing after the date Executive's employment with the Company terminates for any reason.)

"The "Executive Retention Bonus Percentage" means the greatest percentage of annual base salary authorized for any senior executive of the Company (not including the Executive) as a retention payment for the applicable calendar year, in accordance with an order of the United States Bankruptcy Court."

Section 3 is amended by adding the following after subsection (f):

"g) Subject to Section 2(d), upon termination of employment with the Company, Executive or his beneficiary shall receive a cash payment under each Long-Term Incentive Program award (an "LTIP Award") made to Executive, calculated and paid under the terms of this Section 3 (g). With respect to each such LTIP Award, Executive will receive a cash payment at the time that Executive would have received such payment had his employment with the Company not terminated. Each such payment shall be in an amount equal to the product of (i) the cash payment to which Executive would be entitled by operation of the applicable LTIP Award, as if his employment had not terminated and (ii) a fraction, the numerator of which is the number of days in the applicable LTIP Award performance period through Executive's employment termination date, and the denominator of which is 1095. (The Executive's rights and

CC-BLG002599

November 6, 2002

obligations regarding any stock option portion of any LTIP Award shall be governed by the provisions of the applicable Company Stock Option Plan.)

"h) Immediately upon Executive providing notice that he will resign his employment (or upon the sooner of the date the Company notifies Executive that he is to be terminated or the date Executive's employment with the Company actually terminates, if either such date occurs before Executive provides a notice of resignation), Executive shall cease to be eligible for any subsequent awards under any Company Long-Term Incentive Program."

The first sentence of Section 7(a) is amended to read as follows:

"Except as otherwise provided below, and subject to Section 2(d), Executive shall receive a supplemental pension from the Company, which considers all of Executive's prior years of actual service (i) with W. R. Grace & Co. from February 1968 to May 1969 and from February 8, 1971 to August 5, 1981, and (ii) with AlliedSignal from August 1989 to October 1998 (the "Prior Years of Service"), as if such service had been continuous service with the Company."

The first sentence of Section 7(e) is amended to read as follows:

"e) Notwithstanding anything to the contrary in this Agreement or in any plan or program relating to Executive's retirement benefits (but subject to Section 2(d)), the Company shall, immediately after the date of Executive's termination of employment with the Company, but in no event later than 30 business days after such date, pay to Executive, in a lump sum (such lump sum determined, except to the extent otherwise set forth in Section 7 (b), in accordance with the methodology and assumptions specified under the Grace Salaried Retirement Plan), all supplemental retirement benefits payable to Executive by the Company (including pursuant to the supplemental pension arrangement and the SERP), whether or not payable pursuant to a plan of the Company."

The first sentence of Section 10 is amended to read as follows:

"Subject to Section 2(d), and subject to the restrictions set forth in this
Section 10, the Company shall, upon written request from Executive received by the Company after the date of Executive's termination of employment with the Company, provide to Executive all relocation assistance described in the Headquarters Office Relocation Policy (the "Policy") for current employees in effect as of the date of this Agreement (copy attached hereto)."

CC-BLG002600

November 6, 2002

**Effective Date Of Amendments**

The amendments to the 2001 Employment Agreement that are specified above shall be effective January 1, 2003.

**Non-Amended Provisions Of The 2001 Employment Agreement**

The provisions of the 2001 Employment Agreement that are not amended by this letter agreement (including, but not limited to, the provisions of Section 10, "Relocation Assistance", other than the first sentence of that Section) shall remain in effect as provided by the terms of the 2001 Employment Agreement.

Agreed:

**W. R. Grace & Co.**

_____

**W. R. Grace & Co. - Conn.**

_____
_____
**Date**

Agreed:

_____
Paul J. Norris

_____
Date

**GRACE**

Paul J. Norris
Chairman, President & Chief Executive
Officer

W. R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

Voice: (410) 531-4406
Fax: (410) 531-4414
email: paul.j.norris@grace.com

September 13, 2002

To:

PERSONAL AND CONFIDENTIAL

Dear :

In order to continue Grace's successful operating performance in the Chapter 11 environment, it is important to retain key employees by providing compensation programs that are valued and compete with our industry peers. Therefore, Grace has proposed, and the Court has approved, a special retention program for selected key employees.

I am pleased to inform you that you have been selected to participate in this retention program for 2003. The total amount of your retention payment will be [ ]% of your base earnings. You will receive payment in one lump sum installment on December 26, 2003 (based on earnings from January 1 - December 31, 2003). The terms applicable to the supplemental payments are more specifically described in the attachment to this letter.

I realize that cash is not the only reason why an employee should stay with an organization. At Grace, you should expect to continue to receive opportunities to experience personal growth, to upgrade your skills, and to engage in challenging, satisfying work.

Your commitment to Grace's Vision and Values is appreciated. Thanks.

Sincerely,

**Paul J. Norris**

**GRACE Personnel Policies**

**Annual Incentive Compensation Program Policy No. xx.xx**

**PURPOSE:**
The Annual Incentive Compensation Program (AICP) is the bonus program for regular non-sales salaried employees in Bands 1-4. Grace offers the AICP program as a way to share in the company's financial success.

The AICP program was designed to support:
1. The focus of employees on achieving financial performance targets
2. The concept of measurements as a way to improve performance
3. A "pay for performance" philosophy.

**SCOPE:**

This policy covers all regular salaried employees in Bands 1-4 who are not eligible to participate in other incentive plans and whose individual performance rated is "good" or higher. Except as specified below, employees must be actively employed by GRACE through the payout date, which will typically be made in March. Awards will be prorated for employees who did not work for GRACE for the full year.

**POLICY:**

Each Business Unit's pool will be funded based on the Business Unit's financial performance as measured by its Pre-Tax Earnings from Core Operations performance versus target.

Each year employees eligible for the AICP receive a letter informing them of their target award percentage range for the current year. The band that an employee's job is assigned to determines the target award percentage range. The following table has the target award percentage ranges for each band:

| Band | Target Incentive as a % of Salary |
|------|-----------------------------------|
| 1 | CEO - set by BOD |
| 2 | 50%-85% |
| 3 | 30%-65% |
| 4 | 10%-25% |

It is expected that any employee whose performance is rated at the "Needs Improvement" or "Unsatisfactory" performance level will not receive an AICP incentive and their funds will be distributed to the employees' with the highest ratings. The target awards are adjusted based on the Business Unit performance, then multiplied by the employee's base salary as of the end of the performance year for active employees.

CC-BLG002603

The year-end salary for non-US employees is converted to US dollars based on the average exchange rate for the year. Their AICP award recommendation, which is initially determined in US dollars during the process, is then converted to a percent of salary. This percent is applied to their salary in local currency and the payment is made through their country's payroll system in local currency. Awards may be further adjusted to accommodate factors such as the performance of the participant's product-line and region against financial performance and individual performance. The total of AICP bonuses paid by each Business Unit's must conform to its annual AICP budget.

## NEW HIRES/PROMOTIONS

New hires may be considered for prorated awards in the AICP program if they have more than three months' service.

An employee who is promoted from one eligible position to a higher-graded eligible position will have his/her award calculated and determined on the basis of the higher-graded position, irrespective of when the promotion was effective (the actual award reflecting individual performance should take timing into account).

In the case of employees entering the program from sales-incentive eligible jobs, their eligibility will commence when the employee becomes ineligible to participate in a sales incentive program as a result of the job change.

## DEMOTIONS/DECREASES IN SALARY GRADE

An employee whose position is decreased from the AICP program to the PFP program will be paid in accordance with the PFP program guidelines.

## TERMINATIONS OF EMPLOYMENT

Employees whose employment terminates prior to the date on which awards are normally paid may receive an award (usually provided by terms of a written agreement) if employment terminates for any of the following reasons, provided they had more than three months' service in an AICP eligible position:

o Retirement under a plan of the Company, or a subsidiary
o Death
o Disability
o Divestment
o Other termination of employment by the Company not for cause

Awards in such cases are to be prorated if employment terminated prior to the end of the year in which services were performed.

Policy No: #### Last Modified: January 2002

CC-BLG002604

## |X| W. R. GRACE & CO., A DELAWARE CORPORATION
## U.S. SUBSIDIARIES
### 12/31/2002

|X|  Chapter 11 Filing - April 2, 2001

| | SUBSIDIARY NAME | STATE OF INCORPORATION |
|---|---|---|
| |X| | A-1 Bit & Tool Co., Inc. | DE |
| | Advanced Refining Technologies Management, Inc. | DE |
| | Advanced Refining Technologies LLC | DE |
| |X| | Alewife Boston Ltd. | MA |
| |X| | Alewife Land Corporation | MA |
| |X| | Amicon, Inc. | DE |
| | AP Chem Incorporated | MD |
| |X| | CB Biomedical, Inc. | DE |
| |X| | CCHP, Inc. | DE |
| |X| | Coalgrace, Inc. | DE |
| |X| | Coalgrace II, Inc. | DE |
| | Construction Products Dubai, Inc. | DE |
| |X| | Creative Food 'N Fun Company | DE |
| |X| | Darex Puerto Rico, Inc. | DE |
| |X| | Del Taco Restaurants, Inc. | DE |
| |X| | Dewey and Almy, LLC | DE |
| |X| | Ecarg, Inc. | NJ |
| |X| | Five Alewife Boston Ltd. | MA |
| |X| | G C Limited Partners I, Inc. | DE |
| |X| | G C Management, Inc. | DE |
| |X| | GEC Management Corporation | DE |
| |X| | GN Holdings, Inc. | DE |
| |X| | GPC Thomasville Corp. | DE |
| |X| | Gloucester New Communities Company, Inc. | NJ |
| |X| | Grace A-B Inc. | DE |
| |X| | Grace A-B II Inc. | DE |
| | Grace Asia Pacific, Inc. | DE |
| | Grace Chemicals, Inc. | DE |
| |X| | Grace Chemical Company of Cuba | IL |
| | Grace Collections, Inc. | DE |
| |X| | Grace Culinary Systems, Inc. | MD |
| |X| | Grace Drilling Company | DE |

CC-BLG002605

| | | |
|---|---|---|
| |X| | Grace Energy Corporation | DE |
| |X| | Grace Environmental, Inc. | DE |
| |X| | Grace Europe, Inc. | DE |

CC-BLG002606

| | SUBSIDIARY NAME | STATE OF INCORPORATION |
|---|---|---|
| | Grace Germany Holdings, Inc. | DE |
| X | Grace H-G Inc. | DE |
| X | Grace H-G II Inc. | DE |
| X | Grace Hotel Services Corporation | DE |
| X | Grace International Holdings, Inc. | DE |
| | Grace Management Services, Inc. | DE |
| X | Grace Offshore Company | LA |
| X | Grace PAR Corporation | DE |
| X | Grace Petroleum Libya Incorporated | DE |
| | Grace Receivables Purchasing, Inc. | DE |
| X | Grace Tarpon Investors, Inc. | DE |
| X | Grace Ventures Corp. | DE |
| X | Grace Washington, Inc. | DE |
| X | W. R. Grace Capital Corporation | NY |
| X | W. R. Grace & Co.-Conn. | CT |
| X | W. R. Grace Land Corporation | NY |
| X | Gracoal, Inc. | DE |
| X | Gracoal II, Inc. | DE |
| X | Guanica-Caribe Land Development Corporation | DE |
| X | Hanover Square Corporation | DE |
| X | Homco International, Inc. | DE |
| | Ichiban Chemical Co., Inc. | DE |
| X | Kootenai Development Company | MT |
| X | L B Realty, Inc. | DE |
| X | Litigation Management, Inc. | DE |
| X | Monolith Enterprises, Incorporated | DC |
| X | Monroe Street, Inc. | DE |
| X | MRA Holdings Corp. | DE |
| X | MRA Intermedco, Inc. | DE |
| X | MRA Staffing Systems, Inc. | DE |
| X | Remedium Group, Inc. | DE |
| | Separations Group, The | CA |
| X | Southern Oil, Resin & Fiberglass, Inc. | FL |
| X | Water Street Corporation | DE |

2

CC-BLG002607

## EXHIBIT 21

### NON-U.S. SUBSIDIARIES

**COUNTRY/**
**SUBSIDIARY NAME**

**ARGENTINA**

W. R. Grace Argentina S.A.

WRG Argentina, S.A.

**AUSTRALIA**

Grace Australia Pty. Ltd.

**BELGIUM**

Grace N.V.

Grace Silica N.V.

**BRAZIL**

Grace Brasil Ltda.

Grace Davison Ltda.

PEADCO-Engenharia, Comercio Industria Ltda.

**CANADA**

GEC Divestment Corporation Ltd.

Grace Canada, Inc.

W. R. Grace Finance (NRO) Ltd.

**CHILE**

Grace Quimica Compania Limitada

**CHINA - PEOPLE'S REPUBLIC OF**

Grace China Ltd.

**COLOMBIA**

Grace Colombia S.A.

W. R. G. Colombia S.A.

**CUBA**

Envases Industriales y Comerciales, S.A.

Papelera Camagueyana, S.A.

**DENMARK**

Grace A/S

**FRANCE**

CC-BLG002608

Etablissements Pieri S.A.

Societe Civile Beau-Beton

W. R. Grace S.A.

**GERMANY**

Advanced Refining Technologies GmbH

Grace Darex GmbH

Grace GP G.m.b.H.

Grace Holding G.m.b.H.

Grace Management GP G.m.b.H.

Grace Silica GmbH

3

CC-BLG002609

**COUNTRY/**
**SUBSIDIARY NAME**

**GREECE**

Grace Hellas E.P.E.

**HONG KONG**

W. R. Grace (Hong Kong) Limited

W. R. Grace Southeast Asia Holdings Limited

**HUNGARY**

Grace Ertekesito Kft.

**INDIA**

W. R. Grace & Co. (India) Private Limited

**INDONESIA**

PT. Grace Specialty Chemicals Indonesia

**IRELAND**

Amicon Ireland Limited

Grace Construction Products (Ireland) Limited

Trans-Meridian Insurance (Dublin) Ltd.

**ITALY**

W. R. Grace Italiana S.p.A.

**JAPAN**

Advanced Refining Technologies K.K.

Grace Chemicals K.K.

Grace Japan Kabushiki Kaisha

**KOREA**

Grace Korea Inc.

**MALAYSIA**

W. R. Grace (Malaysia) Sendiran Berhad

W. R. Grace Specialty Chemicals (Malaysia) Sdn. Bhd.

**MEXICO**

Grace Container, S. A. de C. V.

W. R. Grace Holdings, S. A. de C. V.

**NETHERLANDS**

CC-BLG002610

Amicon B.V.

Denac Nederland B.V.

Storm van Bentem en Kluyver B.V.

W. R. Grace B.V.

**NETHERLANDS ANTILLES**

W. R. Grace N.V.

**NEW ZEALAND**

Grace (New Zealand) Limited

**PHILIPPINES**

W. R. Grace (Philippines), Inc.

**POLAND**

Grace Sp. z o.o.

**RUSSIA**

Darex CIS LLC

**SINGAPORE**

W. R. Grace (Singapore) Private Limited

**SOUTH AFRICA**

Grace Davison (Proprietary) Limited

W. R. Grace Africa (Pty.) Limited

4

CC-BLG002611

**COUNTRY/**
**SUBSIDIARY NAME**

**SPAIN**

Grace, S.A.

Pieri Especialidades, S.L.

**SWEDEN**

Grace AB

Grace Catalyst AB

Grace Sweden AB

**SWITZERLAND**

Pieri S.A.

**TAIWAN**

W. R. Grace Taiwan, Inc.

**THAILAND**

W. R. Grace (Thailand) Limited

**UNITED KINGDOM**

A.A. Consultancy & Cleaning Company Limited

Cormix Limited

Borndear 1 Limited

Borndear 2 Limited

Borndear 3 Limited

Chasmbridge Limited

Darex UK Limited

Emerson & Cuming (Trading) Ltd.

Emerson & Cuming (UK) Ltd.

Grace Construction Products Limited

Pieri U.K. Limited

Servicised Ltd.

W. R. Grace Limited

**VENEZUELA**

Grace Venezuela, S.A.

Inversiones GSC, S.A.

CC-BLG002612

5

CC-BLG002613

EXHIBIT 24

## POWER OF ATTORNEY

The undersigned hereby appoints ROBERT M. TAROLA, MARK A. SHELNITZ, and DAVID B. SIEGEL as his true and lawful attorneys-in-fact for the purpose of signing the Annual Report on Form 10-K of W. R. GRACE & CO. for the year ended December 31, 2002, and all amendments thereto, to be filed with the Securities and Exchange Commission. Each of such attorneys-in-fact is appointed with full power to act without the other.

```
                                    /s/ John F. Akers
                                    ---------------------------
                                        John F. Akers
```

```
        Dated:  March 6, 2003
```

CC-BLG002614

EXHIBIT 24

## POWER OF ATTORNEY

The undersigned hereby appoints ROBERT M. TAROLA, MARK A. SHELNITZ, and DAVID B. SIEGEL as his true and lawful attorneys-in-fact for the purpose of signing the Annual Report on Form 10-K of W. R. GRACE & CO. for the year ended December 31, 2002, and all amendments thereto, to be filed with the Securities and Exchange Commission. Each of such attorneys-in-fact is appointed with full power to act without the other.

```
                                        /s/ H. Furlong Baldwin
                                        ----------------------------
                                               H. Furlong Baldwin
```

Dated:  March 6, 2003

CC-BLG002615

EXHIBIT 24

## POWER OF ATTORNEY

The undersigned hereby appoints ROBERT M. TAROLA, MARK A. SHELNITZ, and DAVID B. SIEGEL as his true and lawful attorneys-in-fact for the purpose of signing the Annual Report on Form 10-K of W. R. GRACE & CO. for the year ended December 31, 2002, and all amendments thereto, to be filed with the Securities and Exchange Commission. Each of such attorneys-in-fact is appointed with full power to act without the other.

```
                                        /s/ Ronald C. Cambre
                                        ----------------------------
                                              Ronald C. Cambre
```

```
       Dated:  March 6, 2003
```

CC-BLG002616

**EXHIBIT 24**

## POWER OF ATTORNEY

The undersigned hereby appoints ROBERT M. TAROLA, MARK A. SHELNITZ, and DAVID B. SIEGEL as his true and lawful attorneys-in-fact for the purpose of signing the Annual Report on Form 10-K of W. R. GRACE & CO. for the year ended December 31, 2002, and all amendments thereto, to be filed with the Securities and Exchange Commission. Each of such attorneys-in-fact is appointed with full power to act without the other.

/s/ Marye Anne Fox
-----------------------------
Marye Anne Fox

Dated:  March 6, 2003

CC-BLG002617

EXHIBIT 24

## POWER OF ATTORNEY

The undersigned hereby appoints ROBERT M. TAROLA, MARK A. SHELNITZ, and DAVID B. SIEGEL as his true and lawful attorneys-in-fact for the purpose of signing the Annual Report on Form 10-K of W. R. GRACE & CO. for the year ended December 31, 2002, and all amendments thereto, to be filed with the Securities and Exchange Commission. Each of such attorneys-in-fact is appointed with full power to act without the other.

/s/ John J. Murphy
-----------------------------
        John J. Murphy

Dated:  March 6, 2003

CC-BLG002618

EXHIBIT 24

## POWER OF ATTORNEY

The undersigned hereby appoints ROBERT M. TAROLA, MARK A. SHELNITZ, and DAVID B. SIEGEL as his true and lawful attorneys-in-fact for the purpose of signing the Annual Report on Form 10-K of W. R. GRACE & CO. for the year ended December 31, 2002, and all amendments thereto, to be filed with the Securities and Exchange Commission. Each of such attorneys-in-fact is appointed with full power to act without the other.

/s/ Thomas A. Vanderslice
------------------------------
   Thomas A. Vanderslice

Dated:  March 6, 2003

CC-BLG002619

EXHIBIT 99.1

## CERTIFICATION UNDER SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 (18 U.S.C. Section 1350), the undersigned certifies that (1) this Annual Report of W. R. Grace & Co. (the "Company") on Form 10-K for the year ended December 31, 2002, as filed with the Securities and Exchange Commission on the date hereof (this "Report"), fully complies with the requirements of Sections 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended, and (2) the information contained in this Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

```
/s/ Paul J. Norris
-----------------------------  ,
Chairman, President and Chief
Executive Officer

Date: March 13, 2003
```

CC-BLG002620

EXHIBIT 99.2

## CERTIFICATION UNDER SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 (18 U.S.C. Section 1350), the undersigned certifies that (1) this Annual Report of W. R. Grace & Co. (the "Company") on Form 10-K for the year ended December 31, 2002, as filed with the Securities and Exchange Commission on the date hereof (this "Report"), fully complies with the requirements of Sections 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended, and (2) the information contained in this Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

```
/s/ Robert M. Tarola
---------------------------------
Senior Vice President and
Chief Financial Officer

Date: March 13, 2003
```

CC-BLG002621