4.3.1.9 CLASS 9: GENERAL UNSECURED CLAIMS

Class 9 consists of all General Unsecured Claims against the Debtors.

Each Holder of an Allowed General Unsecured Claim shall be paid the Allowed Amount of its General Unsecured Claim on the GUC Distribution Date. Such payment shall be either (i) in full, plus post-petition interest, such payment to be 85% in cash and 15% in Parent Common Stock, such Parent Common Stock being subject to, among other things, the transactions described in Section 7.2.2 of the Plan, and the Management Stock Incentive Plan, or (ii) upon such other less favorable terms as may be mutually agreed upon between the Holder of

58

EXHIBIT 99.1

an Allowed General Unsecured Claim and the Reorganized Debtors. Notwithstanding the foregoing, each Holder of a Claim which by operation of the Fresenius Settlement Agreement is an obligation for Indemnified Taxes promptly shall be paid in full in cash as such Fresenius Indemnified Taxes become due and payable.

Post-petition interest shall accrue from the Petition Date through the date of payment and shall be (i) for the Holders of Claims under the Debtors' pre-petition bank credit facilities, at a rate of 6.09% per annum, compounded quarterly, (ii) for the Holders of Claims who, but for the Filing of the Chapter 11 Cases would be entitled under a contract or otherwise to accrue or be paid interest on such Claim in a non-default (or non-overdue payment) situation under applicable non-bankruptcy law, the rate provided in the contract between a Debtor(s) and the Claimant or such rate as may otherwise apply under applicable non-bankruptcy law, or (iii) for all other Holders of Class 9 Claims, at a rate of 4.19% per annum (the federal judgment rate as of the Petition Date), compounded annually.(18)

The Parent Common Stock paid to the Holders of Allowed General Unsecured Claims in accordance with Section 3.1.9(b) of the Plan shall be valued at the average of the closing prices on The New York Stock Exchange for the trading days within the thirty (30) calendar days immediately preceding the GUC Distribution Date. The trading price on the GUC Distribution Date could be higher or lower than such average. The Parent Common Stock may be subject to material price volatility and may trade up or down after the GUC Distribution Date.

The Debtors estimate the total of all Allowed General Unsecured Claims to be approximately $1,175 million as of September 30, 2004.(19) This amount consists of $500 million of principal and approximately $121 million of accrued interest under the Debtors' pre-petition bank credit facilities, approximately $223 million of environmental Claims, approximately $14 million of amounts drawn under drawn letters of credit (including accrued interest), $36 million of accounts payable including accrued interest, $87 million of asbestos Claims subject to pre-petition judgments or agreements (including accrued interest), $10 million of

----------

(18) In consideration for the treatment provided to Class 9 Claims, the Unsecured Creditors' Committee has agreed to be a Plan Proponent of the Debtors' Amended Joint Plan filed on or about January 13, 2005 as the same may be amended from time to time with the consent of the Unsecured Creditors' Committee (the "Plan"). The Unsecured Creditors' Committee and the Debtors have agreed that the Unsecured Creditors' Committee has the right to withdraw as a Plan Proponent on the occurrence of any of the following circumstances: (i) failure of the Court to approve the Disclosure Statement incorporating the Plan no later than November 30, 2005; (ii) determination by the Court that the Plan is not confirmable and the failure to file an amended Plan within 60 days; (iii) determination by the Court that the Debtors are insolvent; (iv) termination of the Debtors' exclusive period; (v) withdrawal of the Plan by the Plan Proponents and the failure of the Plan Proponents to file a new Plan within 60 days; or (vi) failure of the Plan to become effective on or before January 1, 2007. This agreement does not commit any member of the Unsecured Creditors' Committee or any creditor to vote for the Plan. The parties intend to memorialize their agreement in a plan support agreement. In consideration for the treatment provided to Class 9 Claims, certain substantial Claimants have also agreed to support the Plan.

(19) This figure is consistent with the Debtors' books and records and includes the Debtors' estimates for certain Claims that are disputed, which Claims may ultimately be determined to be significantly higher or lower.

59

EXHIBIT 99.1

insurance and other Claims, and $198 million of other unliquidated liabilities (including $72 million of unliquidated environmental), which are conservatively estimated to be Class 9 Claims when and if Allowed. These unliquidated liabilities are not projected to be Allowed General Unsecured Claims at the

Class 9 is impaired as Class 9 Claimants are to received 15% of the Allowed Amount of their Claims in the form of stock, the value of which may be volatile and cannot be guaranteed. The Debtors are soliciting the votes of Holders of the General Unsecured Claims in Class 9 to accept or reject the Plan in the manner and to the extent provided in the Confirmation Procedures Order.

#### 4.3.1.10 CLASS 10. EQUITY INTERESTS IN THE PARENT

Class 10 consists of Equity Interests in the Parent. On the Effective Date, Holders of Class 10 Equity Interests in the Parent shall retain such interests; provided that such Equity Interests shall: (i) be subject, among other things, to the transactions described in Section 7.2.2 of the Plan, and the Management Stock Incentive Plan and (ii) be restricted as described in Section 7.1.1 of the Plan. Class 10 is impaired. The Debtors are soliciting the votes of Holders of the Allowed Equity Interests in the Parent in Class 10 to accept or reject the Plan in the manner and to the extent provided in the Confirmation Procedures Order.

#### 4.3.1.11 CLASS 11. EQUITY INTERESTS IN THE DEBTORS OTHER THAN THE PARENT

Class 11 consists of Equity Interests in the Debtors other than the Parent. The Plan leaves unaltered the legal, equitable, and contractual rights to which each such Equity Interest entitles the Holder of such Equity Interest. Class 11 is unimpaired. The Holders of the Equity Interests in the Debtors other than the Parent in Class 11 are deemed to have voted to accept the Plan and, accordingly, their separate vote will not be solicited.(20)

### 4.3.2 EFFECT OF ASBESTOS PI CLAIMANT ELECTING VARIOUS OPTIONS

#### 4.3.2.1 CASH-OUT OPTION

If an Asbestos PI Claimant elects the Cash-Out Option, (i) his election is irrevocable, (ii) his Claim will be treated under the terms of the PI-SE TDP or PI-AO TDP, as applicable, and (iii) he shall be precluded, pursuant to the Asbestos Channeling Injunction, the Asbestos Insurance Entity Injunction and the Released Matters Injunction, from seeking any further recovery against an Asbestos Protected Party, any Asbestos Insurance Entity or any Entity released under any provision of the Plan on account of such Claim.

----------
(20) The Equity Committee and the Debtors have agreed that the Equity Committee has the right to withdraw as a Plan Proponent if the Plan does not become effective on or before January 1, 2007.

EXHIBIT 99.1

#### 4.3.2.2 LITIGATION OPTION AND CANADIAN LITIGATION OPTION

If an Asbestos PI Claimant elects, or is deemed to elect, the Litigation Option or the Canadian Litigation Option as applicable, (i) his Claim will be litigated against the Asbestos Trust and (ii) he shall be precluded, pursuant to the Asbestos Channeling Injunction, the Asbestos Insurance Entity Injunction and the Released Matters Injunction, from seeking any further recovery against an Asbestos Protected Party, any Asbestos Insurance Entity or any Entity released under any provision of the Plan on account of such Claim.

#### 4.3.2.3 REGISTRY OPTION

If an Asbestos PI-AO Claimant chooses the Registry Option, he shall (i) register his name on the Registry, (ii) be precluded, pursuant to the Asbestos Channeling Injunction, the Asbestos Insurance Entity Injunction and the Released Matters Injunction, from seeking any further recovery against an Asbestos Protected Party, any Asbestos Insurance Entity or any Entity released under any provision of the Plan, (iii) have the statute of limitations be deemed to be tolled to the extent that such Claimant becomes an Asbestos PI-SE Claimant and (iv) be entitled to seek further recovery, in accordance with the provisions of the Plan, against the Asbestos Trust if such Holder becomes an Asbestos PI-SE Claimant.

### 4.4 MODIFICATION OR WITHDRAWAL OF THE PLAN

Article 4 of the Plan sets forth the Debtors' right to modify, amend or withdraw the Plan, and/or the Plan Documents and the effect of any such withdrawal.

### 4.5 PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS AND ASBESTOS CLAIMS GENERALLY

#### 4.5.1 OBJECTIONS TO CLAIMS (OTHER THAN ASBESTOS CLAIMS); PROSECUTION OF DISPUTED CLAIMS

Section 5.1 of the Plan sets forth the right of the Debtors or Reorganized Debtors, as applicable, the United States Trustee and any other party-in-interest to object to the allowance of any Administrative Expense

CC-BLG003060