59. "BY-LAWS" shall mean the by-laws of any of the specified Debtors, as amended as of the Effective Date or thereafter.

60. "CANADIAN AFFILIATES" shall mean Grace Canada, Inc. and Sealed Air (Canada) Co.

61. "CANADIAN CLAIM" shall mean any Claim or Demand against any of the Debtors or the Canadian Affiliates relating to exposure or use of asbestos products in Canada.

62. "CANADIAN COURT" shall mean the Ontario Superior Court of Justice, Ontario Court of Appeal or the Supreme Court of Canada.

63. "CANADIAN LITIGATION OPTION" shall mean one of the treatment options available to be chosen by the Holder of an Asbestos PI Claim that is a Canadian Claim in Section 3.2 of the Plan.

64. "CANADIAN LITIGATION PROCEDURE" shall mean the procedures to be approved by the Canadian Court for the adjudication of Canadian Claims (other than for Holders of Canadian Claims who elect the Cash-Out Option) and designated by the Canadian Court as the "Canadian Litigation Procedure" for purposes of the Plan.

65. "CANADIAN PROCEEDINGS" shall mean the proceedings commenced by Grace Canada Inc. pursuant to Section 18.6 of the Companies' Creditors Arrangement Act (Canada) bearing court file number 01-CL-4081.

9

EXHIBIT 99.2

66. "CAPITAL STOCK" shall mean, with respect to: (i) any corporation, any share, or any depositary receipt or other certificate representing any share, of equity interest in that corporation; and (ii) any other Entity, any share, membership, or percentage interest, unit of participation, or other equivalent (however designated) in or of equity interest in that Entity.

67. "CASE MANAGEMENT MOTION" shall mean a motion Filed or to be Filed with the Court in the Chapter 11 Cases, which will seek, among other things, to establish the procedural framework for the post-Confirmation Date adjudication of Asbestos Claims.

68. "CASE MANAGEMENT ORDER" or "CMO" shall mean the contemplated order by which the relief sought in the Case Management Motion shall be effectuated.

69. "CASH-OUT OPTION" shall mean one of the treatment options available to be chosen by the Holders of Asbestos PI Claims, as described in Section 3.2 of the Plan.

70. "CERTIFICATE OF INCORPORATION" or "ARTICLES OF INCORPORATION" shall mean the Certificate or Articles of Incorporation or equivalent document of any of the Debtors, as applicable, as amended as of the Effective Date or thereafter.

71. "CHAPTER 11 CASES" shall mean the cases commenced by the Filing, on the Petition Date, by the Debtors of voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

72. "CLAIM" shall mean a claim (as defined in Bankruptcy Code Section 101(5)) against a Debtor or either of the Canadian Affiliates, including any right to: (i) payment from any of the Debtors or the Canadian Affiliates, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtors or the Canadian Affiliates, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

73. "CLAIMANT" shall mean the Holder of a Claim.

74. "CLAIMS MATERIALS" shall mean the Claims materials prepared by the Asbestos Trust for use by Claimants as described in Section 5.3.2 of Plan.

75. "CLASS" shall mean any group of Claims or Equity Interests classified by the Plan pursuant to Bankruptcy Code Section 1122(a)(1).

76. "CLINICALLY SEVERE ASBESTOSIS" shall mean a Claim that meets the Medical/Exposure Criteria for Disease Level II under the PI-SE TDP.

77. "CMO" shall mean the Case Management Order.

78. "CONFIRMATION DATE" shall mean the date the clerk of the District Court enters on the docket an order entering or affirming the Confirmation Order.

79. "CONFIRMATION HEARING" shall mean the hearing that the Court conducts to consider confirmation of the Plan pursuant to Bankruptcy Code Section 1129,

CC-BLG003103

as such hearing may be adjourned or continued from time to time.

80.  "CONFIRMATION ORDER" shall mean the order(s) entered by the District Court on the Confirmation Date confirming the Plan.

10

EXHIBIT 99.2

81.  "CONFIRMATION PROCEDURES ORDER" shall mean the order(s) of the Bankruptcy Court (i) approving procedures relating to the solicitation and tabulation of votes with respect to the Plan; and (ii) providing or establishing the basis for calculating the amount of any Claim or Equity Interest for voting purposes.

82.  "CONTINGENT CLAIM" shall mean any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened, or been triggered, as of the date on which such Claim is sought to be estimated or an objection to such Claim is Filed, whether or not such event is within the actual or presumed contemplation of the Holder of such Claim and whether or not a relationship between the Holder of such Claim and a Debtor or either of the Canadian Affiliates now or hereafter exists or previously existed.

83.  "COURT" shall mean either the Bankruptcy Court or the District Court, as appropriate.

84.  "DEBTOR IN POSSESSION" or "DEBTORS IN POSSESSION" shall mean one or more of the Debtors, each in its capacity as a debtor in possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

85.  "DEBTORS" or "GRACE" shall mean, collectively, W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

86.  "DEBTORS' PAYMENT" shall mean the consideration delivered on the thirty-first (31st) day after the Effective Date, by or on behalf of the Debtors or the Reorganized Debtors, on account of the Asbestos Claims to the Asbestos Trust pursuant to Section 7.2.2 of the Plan. The Debtors' Payment shall be comprised of:

(a)  the positive difference, if any, between the Asbestos Trust Aggregate Fund and the Sealed Air Payment, with such difference to be funded by:

(i)  Warrants in an amount sufficient to fund the Asbestos PI-AO Class Fund; and

(ii)  Parent Common Stock valued at the average of the closing prices on The New York Stock Exchange for the trading days within the thirty (30) calendar days beginning on the Effective Date, such Parent Common Stock being subject to, among other things, the transactions described in Section 7.2.2 of the Plan; and

(b)  additional Warrants in an amount such that, upon the payment of the Sealed Air Payment and the Debtors' Payment into the Asbestos Trust, the Parent Common Stock and Warrants (if exercised)

11

CC-BLG003104

EXHIBIT 99.2

that make up the Debtors' Payment would constitute the majority of the issued and outstanding voting shares of the Reorganized Parent.

For purposes of determining the Debtors' Payment, the Sealed Air Common Stock shall be valued at the average of the closing prices on The New York Stock Exchange for the trading days within the thirty (30) calendar days beginning on the Effective Date.

87. "DEMAND" shall mean a present or future demand for payment that (i) was not a Claim in the Chapter 11 Cases prior to the Effective Date; (ii) arises out of the same or similar conduct or events that gave rise to the Claims addressed by the Asbestos Channeling Injunction; and (iii) pursuant to the Plan, shall be dealt with by the Asbestos Trust.

88. "DISALLOWED" shall mean (a) with respect to a Claim or Equity Interest, disallowed in its entirety by a Final Order of the Bankruptcy Court, District Court, or another court of competent jurisdiction; or (b) with respect to an Asbestos PI Claim whose Holder elects the Cash-Out Option, determined not to be entitled to a payment pursuant to the terms of the PI-SE TDP or PI-AO TDP, as applicable.

89. "DISCLOSURE STATEMENT" shall mean the disclosure statement relating to the Plan, including all exhibits, appendices and schedules thereto, approved by order of the Bankruptcy Court in connection with the Plan pursuant to Bankruptcy Code Section 1125, together with any amendments and supplements thereto.

90. "DISEASE LEVELS" shall mean the asbestos-related disease levels specified in Section 5.2(a)(3) of the PI-SE TDP.

91. "DISPUTED CLAIM" shall mean a Claim that is neither Allowed nor Disallowed.

92. "DISTRIBUTION" shall mean the payment, distribution, or assignment under the Plan by the Reorganized Debtors of property or interests in property to: (i) any Holder of an Allowed Claim (other than an Asbestos Claim) or Allowed Equity Interest; and (ii) the Asbestos Trust.

93. "DISTRICT COURT" shall mean the United States District Court for the District of Delaware.

94. "EFFECTIVE DATE" shall mean the first Business Day after the date on which all of the conditions precedent to the effectiveness of the Plan specified in Section 7.7 thereof shall have been satisfied or waived or, if a stay of the Confirmation Order is in effect on such date, the first Business Day after the expiration, dissolution, or lifting of such stay.

95. "ENCUMBRANCE" shall mean with respect to any property or asset (whether real or personal, tangible or intangible), any mortgage, lien, pledge, charge, security interest, assignment as collateral, or encumbrance of any kind or nature in respect of such property or asset (including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction) to secure payment of a debt or performance of an obligation.

96. "ENTITY" shall mean any person, individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, the United States Trustee or any Governmental Unit or any political subdivision thereof.

97. "EQUITY COMMITTEE" shall mean the Official Committee of Equity Security Holders appointed in the Chapter 11 Cases.

98. "EQUITY INTEREST" shall mean any interest in any of the Debtors pursuant to an "equity security" within the meaning of Bankruptcy Code Section 101(16).

12

EXHIBIT 99.2

99. "ESTIMATED AMOUNT" shall mean (except with respect to Asbestos Claims) the estimated dollar value of an unliquidated Claim, Disputed Claim, or Contingent Claim pursuant to Bankruptcy Code Section 502(c); provided that, in the event the Court shall estimate one or more unliquidated Claims, Disputed Claims, or Contingent Claims for purposes of allowance, such estimate shall constitute and represent the maximum amount in which such Claims may ultimately become Allowed Claims.

100. "ESTIMATION MOTION" shall mean a motion Filed or to be Filed with the Court in the Chapter 11 Cases, which seeks, among other things, to:

    (a)    implement procedures to be used in establishing the amount of the Asbestos PI-SE Class Fund, the Asbestos PI-AO Class Fund, the Asbestos PD Class Fund, and the Asbestos Trust Expenses Fund;

    (b)    establish the Asbestos PI-SE Class Fund, the Asbestos PI-AO Class Fund, the Asbestos PD Class Fund, and the Asbestos Trust Expenses

CC-BLG003105

(c)  set the Asbestos PI Pre-petition Litigation Bar Date.

101. "ESTIMATION ORDER" shall mean the order by which the Court would establish the Asbestos PI-SE Class Fund, the Asbestos PI-AO Class Fund, the Asbestos PD Class Fund, and the Asbestos Trust Expenses Fund, pursuant to the Estimation Motion.

102. "ESTIMATION PROCEDURES ORDER" shall mean the order by which the Court would implement procedures to be used in establishing the amount of the Asbestos PI-SE Class Fund, the Asbestos PI-AO Class Fund, the Asbestos PD Class Fund, and the Asbestos Trust Expenses Fund; and set the Asbestos PI Pre-petition Litigation Bar Date, both pursuant to the Estimation Motion. A proposed form of Estimation Procedures Order is Exhibit A to the Estimation Motion.

103. "EXHIBIT BOOK" shall mean the exhibits to the Disclosure Statement or the Plan, as filed contemporaneously with the Disclosure Statement and Plan, as such exhibits may be amended, supplemented, or modified from time to time.

104. "EXIT FINANCING" shall mean such financing agreement(s) or commitment(s) as the Debtors shall obtain to provide the Reorganized Debtors with appropriate credit availability.

105. "EXPEDITED REVIEW" shall mean a review pursuant to the Expedited Review Process.

106. "EXPEDITED REVIEW PROCESS" shall mean the process employed to liquidate Asbestos PI-SE Cash-Out Claims, as set forth in Section 5.2(a) of the PI-SE TDP and the process employed to liquidate Asbestos PI-AO Cash-Out Claims, as set forth in Section 5.2(a) of the PI-AO TDP.

107. "FCR" shall mean Future Claimants' Representative.

108. "FEV1" shall mean forced expiratory volume (1 second), which is the maximal volume of air expelled in 1 second during performance of the spirometric test for forced vital capacity.

109. "FIFO" shall have the meaning set forth in Section 2.1 of each of the TDPs.

110. "FIFO PAYMENT QUEUE" shall have the meaning set forth in Section 5.1(c) of the PI-SE TDP, Section 5.1(c) PI-AO TDP, or Section 5.1 of the PD-TDP, as applicable.

111. "FIFO PROCESSING QUEUE" shall have the meaning set forth in Section 5.1(a)(1) of the PI-SE TDP, as applicable.

112. "FILE" or "FILED" shall mean file or filed with the Court in the Chapter 11 Cases.

13

EXHIBIT 99.2

113. "FINAL ORDER" shall mean an order as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing by all Entities possessing such right, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or from which reargument or rehearing was sought or certiorari has been denied, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order.

114. "FINANCIAL INFORMATION" shall mean the historical, proforma and prospective financial information included as, or incorporated by reference into, Exhibit 4 to the Disclosure Statement entitled "W. R. Grace & Co. and Subsidiaries, Historical, Proforma and Prospective Financial Information."

115. "FRAUDULENT CONVEYANCE ADVERSARY PROCEEDINGS" shall mean those certain Adversary Proceedings commenced by the Asbestos PD Committee and the Asbestos PI Committee on behalf of the Debtors' Estates against Sealed Air and Fresenius, identified as case nos. 02-2210 and 02-2211.

116. "FRESENIUS" shall mean Fresenius Medical Care Holdings, Inc. and National Medical Care, Inc.

117. "FRESENIUS INDEMNIFIED PARTIES" shall mean Fresenius and each of their respective present and former subsidiaries, parents, affiliates, officers, directors, employees, partners, trustees, shareholders, beneficiaries, agents, attorneys, predecessors, successors, and assigns, including Fresenius Medical Care AG and Fresenius AG, but not including the Debtors,

the Reorganized Debtors and Sealed Air.

118. "FRESENIUS INDEMNIFIED TAXES" shall mean all Taxes for or attributable to Tax Periods ending on or before December 31, 1996 other than NMC Indemnified Taxes, all as defined in the Fresenius Settlement Agreement, which is attached as part of Exhibit 13 in the Exhibit Book.

119. "FRESENIUS PAYMENT" shall mean the $115,000,000 consideration to be paid by Fresenius to the Debtors pursuant to the terms of the Fresenius Settlement Agreement.

120. "FRESENIUS SETTLEMENT AGREEMENT" shall mean that certain settlement agreement and release of claims dated February 6, 2003 by and among the Parent, Grace-Conn., Fresenius, the Asbestos PI Committee, and the Asbestos PD Committee, in the form attached as Exhibit 13 in the Exhibit Book, as such agreement may be amended from time to time.

121. "FRESENIUS SETTLEMENT ORDER" shall mean the Order Authorizing, Approving and Implementing Settlement Agreement By and Among Plaintiffs, the Official Committee of Asbestos Property Damage Claimants And the Official Committee of Asbestos Personal Injury Claimants, the Debtors, And Defendants Fresenius Medical Holdings, Inc. and National Medical Care, Inc., entered by the District Court on June 25, 2003 in the Fraudulent Conveyance Adversary Proceedings, attached as part of Exhibit 13 in the Exhibit Book.

122. "FUTURE CLAIMANTS' REPRESENTATIVE" or "FCR" shall mean David T. Austern (or any court-appointed successor), appointed as the legal representative for future asbestos-related personal injury Claimants in the Chapter 11 Cases for the purpose of protecting the interests of persons that may subsequently assert Demands channeled to the Asbestos Trust.

123. "FVC" shall mean forced vital capacity, which is the maximal volume of air expired with a maximally forced effort from a position of maximal inspiration.

124. "GENERAL UNSECURED CLAIM" shall mean any Claim in the Chapter 11 Cases that is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Secured Claim, Unsecured Pass-Through Employee

14

EXHIBIT 99.2

Related Claim, Workers' Compensation Claim, Intercompany Claim, Asbestos PI-SE Claim, Asbestos PI-AO Claim, or Asbestos PD Claim.

125. "GLOSSARY" shall mean this Glossary of Terms for the Plan Documents, as this document may be modified from time to time.

126. "GRACE" shall mean the Debtors.

127. "GRACE-CONN." shall mean W. R. Grace & Co.-Conn., one of the Debtors in these Chapter 11 Cases.

128. "GRACE EXPOSURE" shall have the meaning as set forth in Section 5.4(b)(3) of the PI-SE TDP and Section 5.4(b)(2) of the PI-AO TDP.

129. "GUC DISTRIBUTION DATE" shall mean: (a) when used with respect to a General Unsecured Claim that is Allowed prior to the Effective Date, the Effective Date or as soon as practicable thereafter; and (b) when used with respect to a General Unsecured Claim that is not Allowed prior to the Effective Date, the first Business Day of the next calendar quarter after the date upon which the Claim becomes Allowed, unless the Claim becomes Allowed within fifteen (15) Business Days before the first Business Day of such next calendar quarter, in which case the Distribution Date shall be the first Business Day of the next succeeding calendar quarter.

130. "HOLDER" shall mean any Entity holding any Claim or Equity Interest and, with respect to a vote on the Plan, shall mean the beneficial holders on the voting record date or any authorized signatory who has completed and executed a Ballot or on whose behalf a Master Ballot has been properly completed and executed.

131. "ILO GRADE" shall mean the radiological ratings for the presence of lung changes as determined from a chest x-ray, all as established from time to time by the International Labor Organization.

132. "INDIVIDUAL REVIEW PROCESS" shall mean the individual review process described in Section 5.2(b) of the PI-SE TDP or 5.2(b) of the PI-AO TDP, as applicable.

133. "INITIAL DISTRIBUTION DATE" shall mean: (i) a date within the first sixty (60) days after the Effective Date selected by the Reorganized Debtors, or (ii) such later date as the Bankruptcy Court may establish, upon request by the Reorganized Debtors, for cause shown.

134. "INTERCOMPANY CLAIM" shall mean: (a) any Claim that arose prior to the Effective Date by: (i) any Debtor against any other Debtor, or (ii) a Non-Debtor Affiliate against any Debtor; or (b) any claim that arose prior

CC-BLG003107

to the Effective Date by any Debtor against any Non-Debtor Affiliate.

135. "IRC" shall mean the Internal Revenue Code of 1986, as amended, and any applicable regulations (including temporary and proposed regulations) promulgated thereunder by the United States Treasury Department.

136. "IRS" shall mean the United States Internal Revenue Service.

137. "LIBOR" shall mean London InterBank Offered Rate.

138. "LITIGATION OPTION" shall mean one of the treatment options available to be chosen by Holders of Asbestos PI Claims, as described in Section 3.2 of the Plan.

139. "MANAGEMENT STOCK INCENTIVE PLAN" shall mean the W. R. Grace Stock Incentive Plans under which stock options exercisable for up to 8.2 million shares of Parent Common Stock have been issued to the management of Grace and the Non-Debtor Affiliates, which options will remain outstanding under the

15

EXHIBIT 99.2

Plan, and any additional stock incentive plans which may be implemented on or after the Effective Date subject to approval by the Parent's Board of Directors.

140. "MARCH 2003 BAR DATE" shall mean March 31, 2003, the last day for Filing a proof of Claim relating to pre-petition (i) Asbestos PD Claims (excluding ZAI Claims), (ii) non-Asbestos Claims (including all governmental claims, and all derivative asbestos claims and asbestos-related claims for contribution, indemnity, reimbursement or subrogation), and (iii) Asbestos Medical Monitoring Claims.

141. "MARCH 2003 BAR DATE ORDER" shall mean the Court's order, dated April 22, 2002, which established the March 2003 Bar Date.

142. "MASTER BALLOT" shall mean a Ballot, which is cast by a representative, on behalf of a Holder or Holders of Equity Interests, pursuant to the terms and guidelines established in the Plan Documents.

143. "MEDICAL/EXPOSURE CRITERIA" shall mean the medical/exposure criteria for each Disease Level set forth in Section 5.2(a)(3) of the PI-SE TDP, or the medical/exposure criteria for a Qualified PI-AO Cash-Out Claim set forth in Section 5.2(a)(3) of the PI-AO TDP, as applicable.

144. "MESOTHELIOMA" shall mean malignant mesothelioma diagnosed on the basis of the findings of a board certified pathologist.

145. "MONOKOTE-3" or "MK-3" shall mean a fireproofing product used on steel structural components to prevent or delay the steel from collapsing in the event of a building fire.

146. "NON-DEBTOR AFFILIATE" shall mean each of the Entities designated as such in Exhibit 9 in the Exhibit Book including the Canadian Affiliates.

147. "NON-SETTLING ASBESTOS INSURANCE COMPANY" shall mean any Asbestos Insurance Entity that is not a Resolved Asbestos Insurance Company or a Settled Asbestos Insurance Company.

148. "PARENT" shall mean W. R. Grace & Co., a Delaware corporation, the first named Debtor in the caption of the Chapter 11 Cases and ultimate parent holding company of all of the other Debtors and Non-Debtor Affiliates.

149. "PARENT COMMON STOCK" shall mean the common stock, par value $0.01 per share, of the Parent or, if after the Effective Date, of the Reorganized Parent.

150. "PD ACCOUNT" shall mean the account established by the Trustees under the Asbestos Trust Agreement into which the Asbestos PD Class Fund shall be placed and from which Allowed Asbestos PD Claims shall be paid as soon as practicable after the Effective Date, as further described in the Asbestos Trust Agreement and the PD TDP.

151. "PD TRUST DISTRIBUTION PROCEDURES" or "PD TDP" shall mean the procedures, in the form attached as Exhibit 8 in the Exhibit Book, to be implemented by the Trustees pursuant to the terms and conditions of the Plan and the Asbestos Trust Agreement, to pay Allowed Asbestos PD Claims as set forth in such procedures.

152. "PETITION DATE" shall mean April 2, 2001, the date on which the Debtors Filed their petitions for relief commencing the Chapter 11 Cases.

153. "PI-AO ACCOUNT" shall mean the account established by the Trustees under the Asbestos Trust Agreement into which the Asbestos PI-AO Class Fund shall be placed and from which Allowed Asbestos PI-AO Claims shall be paid as soon as practicable after the Effective Date, as further described in the Asbestos Trust Agreement and the PI-AO TDP.

CC-BLG003108

EXHIBIT 99.2

154. "PI-AO TRUST DISTRIBUTION PROCEDURES" or "PI-AO TDP" shall mean the procedures, in the form attached as Exhibit 7 in the Exhibit Book, to be implemented by the Trustees pursuant to the terms and conditions of the Plan and the Asbestos Trust Agreement, to liquidate, determine, and pay Allowed Asbestos PI-AO Claims as set forth in such procedures.

155. "PI-SE ACCOUNT" shall mean the account established by the Trustees under the Asbestos Trust Agreement into which the Asbestos PI-SE Class Fund shall be placed and from which Allowed Asbestos PI-SE Claims shall be paid as soon as practicable after the Effective Date, as further described in the Asbestos Trust Agreement and the PI-SE TDP.

156. "PI-SE TRUST DISTRIBUTION PROCEDURES" or "PI-SE TDP" shall mean the procedures, in the form attached as Exhibit 6 in the Exhibit Book, to be implemented by the Trustees pursuant to the terms and conditions of the Plan and the Asbestos Trust Agreement, to liquidate, determine, and pay Allowed Asbestos PI-SE Claims as set forth in such procedures.

157. "PLAN" shall mean the Joint Plan of Reorganization under chapter 11 of the Bankruptcy Code dated as of November 13, 2004, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules to the foregoing, as the same may be in effect from time to time.

158. "PLAN DOCUMENTS" shall mean the Plan, the Plan Supplement, the Disclosure Statement, the Glossary, and all exhibits in the Exhibit Book, either in their present form or as each may be amended, supplemented, or otherwise modified from time to time.

159. "PLAN PROPONENTS" shall mean the Debtors, the Unsecured Creditors Committee and the Equity Committee.

160. "PLAN SUPPLEMENT" shall mean a supplement of Plan related documents, as amended from time to time, which shall include: (i) the Certificate of Incorporation of the Parent, as to be amended pursuant to the Plan; (ii) the By-Laws of the Parent, as to be amended pursuant to the Plan; (iii) an opinion of counsel regarding whether the Asbestos Trust qualifies as a "qualified settlement fund" pursuant to Section 468B of the IRC; (iv) the list of rejected contracts as of the Effective Date; (v) the list of letters of credit, surety bonds, guaranties, and certain indemnity agreements not to be assumed pursuant to Section 9.2 of the Plan; (vi) the Management Stock Incentive Plan; (vii) a list of certain key members of current management who shall continue with the Reorganized Debtors; (viii) a list of the Resolved Asbestos Insurance Companies, which list may be supplemented, at the sole discretion of the Reorganized Debtors, by Filing a notice with the Bankruptcy Court; (ix) a list of the Settled Asbestos Insurance Companies; and (x) a list of Allowed General Unsecured Claims as of the Effective Date.

161. "PRE-PETITION LAWSUIT" shall mean any lawsuit that was filed against any of the Debtors before the Petition Date.

162. "PREVIOUSLY SETTLED/ADJUDICATED ASBESTOS CLAIM" shall mean any Claim based on a Final Order or a pre-petition settlement that is enforceable by a Debtor or Debtors and by the Claimant, if such Claim would constitute an Asbestos PD Claim or Asbestos PI Claim but for the Final Order or settlement.

163. "PRIORITY CLAIM" shall mean any Claim (other than an Administrative Expense Claim or Priority Tax Claim) to the extent such Claim is entitled to priority in right of payment under Bankruptcy Code Section 507.

164. "PRIORITY TAX CLAIM" shall mean a Claim that is of a kind specified in Bankruptcy Code Sections 502(i) or 507(a)(8).

165. "PROFESSIONAL" shall mean an Entity (i) employed pursuant to a Final Order in accordance with Bankruptcy Code Sections 327, 328, 363, 524(g)(4)(B)(i) and/or 1103 and to be compensated for services rendered prior to the Confirmation Date, pursuant to Bankruptcy Code Sections 327, 328, 329, 330 and 331, or (ii) for which

EXHIBIT 99.2

compensation and reimbursement have been allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 503(b)(4).

166. "PULMONARY FUNCTION TESTING" shall mean spirometry testing that is (i) in material compliance with the quality criteria established by the American Thoracic Society and (ii) performed on equipment which is in material

compliance with the standards of the American Thoracic Society for technical quality and calibration.

167. "QSF" shall mean a qualified settlement fund as defined by Treasury Regulation Section 1.468B-1 et seq.

168. "QUALIFIED ASBESTOS PI-AO CASH-OUT CLAIM" shall mean an Asbestos PI-AO Cash-Out Claim that meets the Medical/Exposure Criteria set forth in Section 5.2(a)(3) of the PI-AO TDP.

169. "QUARTERLY TAX DISTRIBUTION DATE" shall mean the first Business Day of each calendar quarter following the Initial Distribution Date; provided that the first Quarterly Tax Distribution Date following the Initial Distribution Date shall be no less than ninety (90) days following such Initial Distribution Date.

170. "RECOGNITION ORDER" shall mean the order of the Canadian Court in the context of the Canadian Proceedings recognizing the Confirmation Order and giving effect to the Plan in Canada including the injunctions outlined therein.

171. "REGISTRY" shall mean a list to be maintained by the Asbestos Trust for those Holders of Asbestos PI-AO Claims who choose the Registry Option.

172. "REGISTRY OPTION" shall mean one of the treatment options available to be chosen by the Holder of an Asbestos PI-AO Claim, as described in Section 3.2 of the Plan.

173. "RELEASED MATTERS INJUNCTION" shall mean the injunction described in Section 8.4 of the Plan.

174. "REORGANIZED DEBTOR," "REORGANIZED DEBTORS" or "REORGANIZED GRACE" shall mean the Debtor(s) from and after the Effective Date.

175. "REORGANIZED PARENT" shall mean the Parent from and after the Effective Date.

176. "REPRESENTATIVES" shall mean, with respect to any Entity, the past and present directors, officers, employees, accountants (including independent registered public accountants), advisors, attorneys, consultants, or other agents of that Entity, or any other representatives or professionals of that Entity or of any of those directors, officers, employees, accountants (including independent registered public accountants), advisors, attorneys, consultants, or other agents.

177. "RESOLVED ASBESTOS INSURANCE COMPANY" shall mean each of the Asbestos Insurance Entities that has entered into an Asbestos Insurance Settlement Agreement with the Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, or any of them or their predecessors pursuant to which such Asbestos Insurance Entity has fully performed all of its obligations that have arisen or that ever might arise under such Asbestos Insurance Settlement Agreement and which is listed on a list to be included in the Plan Supplement but only with respect to the portion of the Asbestos Insurance Policy (scheduled immediately therewith on a list to be included in the Plan Supplement) that is affected by any such Settlement Agreement.

178. "RETAINED CAUSES OF ACTION" shall mean the actual and potential causes of action that the Reorganized Debtors shall retain, on and after the Effective Date, on behalf of the Debtors, to commence and pursue, as appropriate, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases, whether such causes of action accrued before or after the Petition Date, including the actions listed on Exhibit 11 in the Exhibit Book.

18

EXHIBIT 99.2

179. "SCHEDULED VALUE" shall mean each Scheduled Value available under the PI-SE TDP and PI-AO TDP, respectively, to those Claimants who elect the Cash-Out Option and who are determined to meet the applicable Medical/Exposure Criteria under the procedures set forth in the PI-SE TDP or PI-AO TDP, respectively.

180. "SCHEDULES" shall mean the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors in Possession with the Bankruptcy Court, as required by Bankruptcy Code Section 521 and the Bankruptcy Rules, as such schedules and statements may be amended by the Debtors in Possession from time to time in accordance with Bankruptcy Rule 1007.

181. "SEALED AIR" shall mean Sealed Air Corporation and Cryovac, Inc.

182. "SEALED AIR COMMON STOCK" shall mean the voting common stock, par value $0.10 per share, of Sealed Air.

183. "SEALED AIR INDEMNIFIED PARTIES" shall mean Sealed Air Corporation, Cryovac, Inc. and all of their parent corporations, subsidiary corporations, joint ventures, Affiliates, and sister corporations, and any

and all of their past, present and future agents, servants, officers, directors, employees, successors, assigns, heirs, executors, administrators, legal representatives, beneficiaries, insurers (but solely to the extent of coverage procured by Sealed Air Corporation (after March 31, 1998) or Cryovac, Inc. (after such date) of any liabilities of Sealed Air for Asbestos Claims), or any of them, including any Entity acting on behalf of or at the direction of any them, but specifically excluding (i) the Debtors, (ii) all Non-Debtor Affiliates, (iii) Fresenius (to the extent of any and all claims, damages or debts arising out of the Fresenius Transaction as defined in the Sealed Air Settlement Agreement), and (iv) any and all insurers of the Debtors or the Non-Debtor Affiliates to the extent that they have provided coverage for Asbestos Claims now or hereafter asserted or which could have been asserted at any time against the Debtors or the Non-Debtor Affiliates.

184. "SEALED AIR PAYMENT" shall mean the payment delivered, on or as soon as practicable following the Effective Date, for and on behalf of Sealed Air to the Asbestos Trust pursuant to the terms of the Sealed Air Settlement Agreement. The Sealed Air Payment shall consist of: (i) five hundred twelve million five hundred thousand dollars ($512,500,000) in cash, plus interest thereon from December 21, 2002 until the Effective Date, at a rate of 5.5% per annum compounded annually and (ii) nine million (9,000,000) shares of Sealed Air Common Stock (subject to adjustment as provided in the Sealed Air Settlement Agreement).

185. "SEALED AIR SETTLEMENT AGREEMENT" shall mean that certain agreement, in the form attached as Exhibit 12 in the Exhibit Book, dated November 10, 2003 and Filed with the Bankruptcy Court on November 26, 2003, as amended to address the Debtors' objections thereto, or otherwise.

186. "SEC" shall mean the United States Securities and Exchange Commission.

187. "SECOND HAND CLAIM" has the meaning specified in Section 5.3(a) of the PI-SE TDP or PI-AO TDP, as applicable.

188. "SECURED CLAIM" shall mean a Claim that is: (i) secured by a lien (as such term is defined in Bankruptcy Code Section 101(37)) on property in which the Debtors have an interest, which lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, or (ii) entitled to setoff under Bankruptcy Code Section 553, to the extent of (A) the value of the Claimant's interest in the Debtor's interest in such property or (B) the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code Section 506(a).

189. "SSECURITIES ACT" shall mean the Securities Act of 1933, as amended.

190. "SETTLED ASBESTOS INSURANCE COMPANY" shall mean any Asbestos Insurance Entity (other than a Resolved Asbestos Insurance Company) that has entered into an Asbestos Insurance Settlement Agreement with the

19

EXHIBIT 99.2

Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, or any of them or their predecessors, as of the Effective Date, pursuant to which such Asbestos Insurance Entity must still perform its obligations under such Asbestos Insurance Settlement Agreement and which is listed on a list to be included in the Plan Supplement, but only with respect to any Asbestos Insurance Policy scheduled immediately therewith.

191. "SETTLORS" shall have the meaning ascribed to it on page 1 of the Asbestos Trust Agreement.

192. "SIGNIFICANT OCCUPATIONAL EXPOSURE" shall have the meaning set forth in Section 5.4(b)(2) of the PI-SE TDP.

193. "TAC" shall mean the Trust Advisory Committee.

194. "TDPS" shall mean the Trust Distribution Procedures.

195. "TERMINATION DATE" shall have the meaning ascribed to it in Section 8.2 of the Asbestos Trust Agreement.

196. "THIRD PARTY INDEMNIFICATION/CONTRIBUTION CLAIM" shall mean an Asbestos Claim that is asserted against one or more Debtors, the Canadian Affiliates and/or the Asbestos Trust based upon theories of contribution or indemnification under applicable law. A Third Party Indemnification/Contribution Claim shall be an Asbestos PI-SE Claim if and to the extent that it arises from the payment or other satisfaction of a Claim that would have been an Asbestos PI-SE Claim if it had not been paid or otherwise satisfied. A Third Party Indemnification/Contribution Claim shall be an Asbestos PI-AO Claim if and to the extent that it arises from the payment or other satisfaction of a Claim that would have been an Asbestos PI-AO Claim if it had not been paid or otherwise satisfied. A Third Party Indemnification/Contribution Claim shall be an Asbestos PD Claim if and to the extent that it arises from the payment or other satisfaction of a Claim that would have been an Asbestos PD Claim if it had not been paid or otherwise satisfied.

CC-BLG003111

197. "TLC" shall mean total lung capacity, which is the total volume of air in the lung after maximal inspiration.

198. "TRUST ADVISORY COMMITTEE" or "TAC" shall mean the Trust Advisory Committee established pursuant to the terms of the Plan and having the powers, duties and obligations set forth in the Asbestos Trust Agreement.

199. "TRUST BY-LAWS" shall mean the by-laws of the Asbestos Trust, as authorized under Section 3.1(c)(viii) of the Asbestos Trust Agreement.

200. "TRUST DISTRIBUTION PROCEDURES" or "TDPS" shall mean, collectively, the PI-SE TDP, the PI-AO TDP, and the PD TDP.

201. "TRUSTEE" shall mean any individual confirmed by the Court to serve as a trustee of the Asbestos Trust, pursuant to the terms of the Plan, the Confirmation Order and the Asbestos Trust Agreement, or who subsequently may be appointed pursuant to the terms of the Asbestos Trust Agreement.

202. "UNKNOWN CAUSES OF ACTION" shall mean any Retained Causes of Action of which the Debtors and the Canadian Affiliates are unaware at the time Exhibit 11 in the Exhibit Book is filed, and are therefore not listed on that Exhibit.

203. "UNLIQUIDATED CLAIM" shall mean: (i) any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be fixed, or (ii) any Claim for which no Allowed Amount has been determined.

204. "UNSECURED CREDITORS' COMMITTEE" shall mean the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to Bankruptcy Code Section 1102.

20

EXHIBIT 99.2

205. "UNSECURED PASS-THROUGH EMPLOYEE RELATED CLAIMS" shall mean all Claims (including accrued but unpaid pension Claims from the Petition Date) for compensation and benefits related to the Debtors' employment of their current and former employees. Workers' Compensation Claims are not included within the Class of Unsecured Pass-Through Employee Related Claims.

206. "VOTING AGENT" shall mean Bankruptcy Management Corporation, the party to whom all Ballots and/or Master Ballots should be submitted.

207. "VOTING DEADLINE" shall mean, 4:00 P.M. Eastern Time on April 1, 2005, which is the deadline by which anyone seeking to cast a Ballot or Master Ballot must submit such Ballot and/or Master Ballot, so that it is received by the Voting Agent.

208. "VOTING RECORD DATE" shall mean two (2) Business Days after the entry of the Disclosure Statement Order.

209. "WARRANTS" shall mean the redeemable restricted warrants to purchase Parent Common Stock at an exercise price of $0.01 per share, issued to the Asbestos Trust for the benefit of the Holders of Asbestos PI-AO Claims and exercisable in accordance with the Plan Documents, pursuant to a warrant agreement substantially in the form of Exhibit 15 in the Exhibit Book.

210. "WORKERS' COMPENSATION CLAIMS" shall mean any Claim: (i) for benefits under a state-mandated workers' compensation system, which a past, present, or future employee of the Debtors or their predecessors is receiving, or may in the future have a right to receive and/or (ii) for reimbursement brought by any insurance company or state agency as a result of payments made to or for the benefit of such employees under such a system and fees and expenses incurred under any insurance policies or laws or regulations covering such employee claims.

211. "WRG ASBESTOS TRUST" shall mean the Asbestos Trust.

212. "WRG ASBESTOS TRUST AGREEMENT" shall mean the Asbestos Trust Agreement.

213. "ZAI" shall mean Zonolite Attic Insulation, which is a loose-fill, non-roll vermiculite product primarily used in home attic insulation, that may contain naturally occurring asbestos.

214. "ZAI CLAIMS" shall mean: (i) a Claim, Demand, or remedy, including all related claims, debts, obligations, or liabilities for compensatory (including general, special, and consequential damages) and punitive damages, (ii) a cross-claim, contribution claim, subrogation claim, reimbursement claim or indemnity claim, or (iii) any debt, liability, or obligation of one or more of the Debtors or any other Asbestos Protected Party, including the Canadian Affiliates (whether or not such Claim, Demand, remedy, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; whether or not the facts of or legal bases therefor are known or unknown; and whether in the nature of or sounding in tort, or under contract, warranty, guarantee,

CC-BLG003112

contribution, joint and several liability, subrogation, reimbursement or indemnity, or any other theory of law, equity, or admiralty)), for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly property damage, including the cost of removal, abatement, or diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, by the ZAI sold, manufactured, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present Affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present Affiliates, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable). ZAI Claims are included within the Class of Asbestos PD Claims.

Other Terms/Interpretation

21

EXHIBIT 99.2

(a) Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the other genders.

(b) When used in a Plan Document, the term "Claim" shall be broadly construed to include all manner and type of Claim, whenever and wherever such Claim may arise, and shall include Asbestos PI-SE Claims, Asbestos PI-AO Claims, and Asbestos PD Claims.

(c) Any reference in a Plan Document to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions shall mean that such document shall be substantially in such form or substantially on such terms and conditions.

(d) Any reference in a Plan Document to an existing document or exhibit in the Exhibit Book Filed or to be Filed shall mean the document or exhibit as it may have been or may be amended, modified or supplemented.

(e) Any reference to an Entity as a Holder of a Claim shall include that Entity's successors, assigns and affiliates.

(f) The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to a Plan Document as a whole and not to any particular section, subsection, or clause contained in a Plan Document.

(g) The word "including" (and, with correlative meaning, the forms of the word "include") shall mean including, without limiting the generality of any description preceding that word; and the words "shall" and "will" are used interchangeably and have the same meaning.

(h) Unless otherwise indicated herein, all references to dollars are to United States dollars.

(i) An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require.

(j) The descriptive headings contained in Plan Documents are included for convenience of reference only and are not intended to be a part of and shall not affect in any way the meaning or interpretation of Plan Documents.

(k) All references in Plan Documents to sections, articles, and exhibits are references to sections, articles and exhibits of or to Plan Documents unless otherwise specified.

(l) Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by a Plan Document, the provisions of Bankruptcy Rule 9006(a) shall apply.

(m) The rules of construction set forth in Bankruptcy Code Section 102 shall apply.

22

CC-BLG003113