## Krieger, Arlene G.

| | |
|---|---|
| **From:** | Krieger, Arlene |
| **Sent:** | Friday, February 18, 2005 10:16 AM |
| **To:** | 'Janet Baer' |
| **Cc:** | Kruger, Lewis; Pasquale, Ken |
| **Subject:** | W. R. Grace |
| **Attachments:** | PLAN SUPPORT AGREEMENT(v5).DOC |

Date: February 18, 2005

Jan,

Attached is our proposed Plan Support Agreement between the Debtors and the Committee.

Arlene



PLAN SUPPORT
GREEMENT(v5).DOC

1

CC-SSL-0000047

TRIAL EXHIBIT 30
CC-BLG004174-004186

CC-BLG004174

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| W.R. GRACE & CO., et al. | ) | **Case No. 01-01139 (JKF)** |
| | ) | Jointly Administered |
| Debtors. | ) | |

## PLAN SUPPORT AGREEMENT

This Plan Support Agreement (the "Support Agreement") dated as of February   , 2005 is entered into by and among W.R. Grace & Co., by and on behalf of itself and its affiliates (collectively the "Debtors"), which are debtors and debtors-in-possession in chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware, and the Official Committee of Unsecured Creditors (the "Creditors' Committee") of the Debtors. The Debtors and the Creditors' Committee and any subsequent person that becomes a party hereto in accordance with the terms hereof are referred to herein as the "Party" or "the Parties".

### RECITALS

WHEREAS, on April 2, 2001, the Debtors filed voluntary petitions for relief in the United States District Court for the District of Delaware under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, on April 12, 2001, the United States Trustee for the District of Delaware appointed the Creditors' Committee to represent the interests of non-asbestos general unsecured claims against the Debtors (the "General Unsecured Claims"); and

WHEREAS, on November 13, 2004, the Debtors filed their (a) Plan of Reorganization [Docket No. 6895] (the "Plan"); (b) Disclosure Statement for Debtors' Plan of Reorganization Pursuant to Chapter 11 of the United States Code [Docket No. 6986] (the "Disclosure

SSL-DOCS1 1535375v5

CC-SSL-0000048

CC-BLG004175

Statement") and (c) a number of Plan and Disclosure Statement-related exhibits (collectively, the "Plan Documents"); and

WHEREAS, the Debtors and the Creditors' Committee have engaged in negotiations over, among other provisions, the treatment of Class 9 Claims in the Plan and over the Creditors' Committee becoming a co-proponent of an amended plan of reorganization; and

WHEREAS, in consideration for the treatment provided to Class 9 Claims in the Debtors' Amended Joint Plan of Reorganization dated January 13, 2005 and filed with the Bankruptcy Court on January 13, 2005 [Docket No. 7560] (the "Joint Plan") and other modifications to the Plan agreed to by the Debtors and the Creditors' Committee and embodied in the Joint Plan, the Creditors' Committee agreed to be a co-proponent of the Joint Plan subject to the Parties' agreement on the Creditors' Committee's right to withdraw as a co-proponent from the Joint Plan on the occurrence of certain circumstances (the "Support Termination Events"); and

WHEREAS, by that certain letter dated January 12, 2005 (the "Letter Agreement"), the Parties agreed to the Support Termination Events; and

WHEREAS, on January 13, 2005 the Debtors' filed the Joint Plan, the Amended Disclosure Statement for the Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code dated January 13, 2005 [Docket No. 7559] (the "Amended Disclosure Statement") and related plan documents (the "Amended Plan Documents"); and

WHEREAS, the Parties desire to have the Amended Disclosure Statement approved and the Joint Plan (as such plan is amended with the consent of the Creditors' Committee hereinafter, the "Joint Plan") confirmed by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and by the United States District Court for the District of Delaware

SSL-DOCS1 1535375v5

CC-SSL-0000049

CC-BLG004176

(the "District Court"), as applicable, as expeditiously as possible and the Joint Plan to become effective as soon as possible; and

WHEREAS, footnote 18 of the Amended Disclosure Statement sets forth the Support Termination Events and the Parties' intention to further memorialize their agreement in a plan support agreement to be filed with the Court.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Amendment or Modification of the Amended Joint Plan. The Creditors' Committee acknowledges that the Debtors may amend, alter or modify the Joint Plan from time to time prior to obtaining confirmation of the Joint Plan, so long as such amendments, alterations or modifications that affect any interest of Class 9 Claims are done with the prior consent of the Creditors' Committee, and that the Debtors consult with the Creditors' Committee prior to making any other amendments, alterations or modifications to the Joint Plan. Each of the Parties agrees to negotiate in good faith any amendments, alterations or modifications necessary to achieve confirmation and consummation of the Joint Plan.

2.      Approval of the Amended Disclosure Statement and Confirmation of the Joint Plan. The Parties shall seek to obtain approval of a Disclosure Statement embodying the Joint Plan no later than November 30, 2005 in accordance with the Bankruptcy Code and on terms consistent with the Joint Plan and this Agreement. The Creditors' Committee shall cooperate in the Joint Plan confirmation process. The Parties shall take all reasonable actions to achieve timely confirmation and consummation of the Joint Plan.

SSL-DOCS1 1535375v5

CC-SSL-0000050

CC-BLG004177

3.    <u>Creditors' Committee Support of the Joint Plan</u>.  So long as no Support Termination Event has occurred and the Creditors' Committee has not withdrawn as a co-proponent of the Joint Plan, and subject to the terms of this Agreement, the Creditors' Committee shall:  (i) fully support the Joint Plan, (ii) support in all material respects the Joint Plan, (iii) recommend that all Class 9 Claims entitled to vote do so in favor of the Joint Plan, (iv) support all approvals and required orders concerning the Joint Plan, (v) support the extension of the Debtors' exclusive period to file an amended Joint Plan and solicit acceptances to the Joint Plan under Section 1121 of the Bankruptcy Code, and (vi) express support for the Joint Plan in response to inquiries from holders of Class 9 Claims regarding the same.  In addition, except as permitted or contemplated by this Agreement, and so long as no Support Termination Event has occurred and the Creditors' Committee has not withdrawn as a co-proponent of the Joint Plan, the Creditors' Committee will not (i) object to confirmation of the Joint Plan or otherwise commence any proceeding to oppose the Joint Plan or approval of the Amended Disclosure Statement, or any Court orders to be prepared in connection therewith, or other documents or agreements to be executed or implemented therewith, each of which orders, documents and agreements shall be consistent in all material respects with the Joint Plan, Amended Disclosure Statement and related Amended Plan Documents and this Agreement, (ii) consent to support any plan of reorganization or liquidation for the Debtors other than the Joint Plan; or (iii) take any other action not required by law that is inconsistent with, or that would materially delay, confirmation or consummation of the Joint Plan.

4.    <u>Treatment of General Unsecured Claims</u>.  The Joint Plan classifies General Unsecured Claims in Class 9.  The Treatment of Class 9 Claims as set forth in Section 3.1.9(b) of the Joint Plan is as follows:

-4-

CC-SSL-0000051

CC-BLG004178

"Each Holder of an Allowed General Unsecured Claim shall be paid the Allowed Amount of its General Unsecured Claim on the GUC Distribution Date. Such payment shall be either (i) in full, plus post-petition interest, such payment to be 85% in cash and 15% in Parent Common Stock, such Parent Common Stock being subject to, among other things, the transactions described in Section 7.2.2 of this Plan, and the Management Stock Incentive Plan, or (ii) upon such other less favorable terms as may be mutually agreed upon between the Holder of an Allowed General Unsecured Claim and the Reorganized Debtors. Notwithstanding the foregoing, each Holder of a Claim which by operation of the Fresenius Settlement Agreement is an obligation for Indemnified Taxes promptly shall be paid in full in cash as such Fresenius Indemnified Taxes become due and payable.

Post-petition interest shall accrue from the filing date through the date of payment and shall be (i) for the Holders of the Debtors' pre-petition bank credit facilities, at a rate of 6.09% per annum, compounded quarterly, (ii) for the Holders of Claims who, but for the Filing of the Chapter 11 Cases would be entitled under a contract or otherwise to accrue or be paid interest on such Claim in a non-default (or non-overdue payment) situation under applicable non-bankruptcy law, the rate provided in the contract between a Debtor(s) and the Claimant or such rate as may otherwise apply under applicable non-bankruptcy law, or (iii) for all other Holders of Claims, at a rate of 4.19% per annum (the federal judgment rate as of the Petition Date), compounded annually.

The Parent Common Stock paid to the Holders of Allowed General Unsecured Claims in accordance with this Section 3.1.9(b) shall be valued at the average of the closing prices on The New York Stock Exchange for the trading days within the thirty (30) calendar days immediately preceding the GUC Distribution Date."

SSL-DOCS1 1535375v5

CC-SSL-0000052

CC-BLG004179

For so long as the Creditors' Committee's obligations under this Agreement have not terminated, the Debtors agree not to seek to modify, alter or amend the Joint Plan in any manner that adversely affects the treatment of General Unsecured Claims or other provisions of the Joint Plan agreed to by the Parties. The Debtors reserve the right to modify, alter or amend the treatment of General Unsecured Claims or any of the other provisions of the Joint Plan agreed to by the Parties after the Creditors' Committee's obligations under this Agreement have terminated. Without limiting in any manner the reservation of rights, claims, remedies and defenses set forth in paragraph 5 below, the Creditors' Committee reserves all of its rights to file any pleading asserting any bases in respect of any or all of such modifications, alterations or amendments made by the Debtors.

5.    Reservation of Rights, Claims, Remedies and Defenses. Each Party expressly acknowledges and agrees that, except as provided specifically herein, nothing in this Agreement is intended to, or does, in any manner waive, limit, impair or restrict the ability of the Creditors' Committee to protect and to preserve all of its rights, claims, remedies, defenses and interests, including, without limitation, with respect to claims against the Debtors or its full participation in the Debtors' bankruptcy process and in any proceedings therein. Each Party further expressly acknowledges and agrees that by entering into this Agreement, the Creditors' Committee does not waive any of its respective legal rights, claims or causes of action against the Debtors and any of their affiliates or any defenses that the Creditors' Committee may have in connection with any claim objection, avoidance action, adversary proceeding or other action or legal proceeding that the Debtors or their affiliates may bring. Without limiting the generality of any of the foregoing, the Debtors expressly agree and acknowledge that nothing herein is intended to, or does in any manner waive, limit, impair or restrict the ability of the Creditors' Committee to take

SSL-DOCS1 1535375v5

CC-SSL-0000053

CC-BLG004180

any action it believes appropriate regarding approval of the Sealed Air Settlement Agreement, including to object to or otherwise oppose such approval on any basis, and all such rights are fully preserved.

6.    <u>Individual Committee Members</u>.  Each Party expressly acknowledges and agrees that this Agreement is not binding upon each individual member of the Creditors' Committee (each, a "Committee Member") and shall in no way be deemed or construed to waive, limit, restrict, or impair the ability of each Committee Member to protect and to preserve its rights, claims, causes of action, remedies, defenses and interests against the Debtors and any of their affiliates, or preclude each Committee Member from taking any and all actions or positions, whether adverse to the Debtors or not in the bankruptcy cases and in any proceedings therein including, but not limited to, as concerns the Joint Plan, the Amended Disclosure Statement, any of the Amended Plan Documents, or the Sealed Air Settlement Agreement.

7.    <u>Not A Solicitation or Voting Lock-Up Agreement</u>.  This Agreement is not and shall not be deemed to be a solicitation for consents to the Joint Plan or a lock-up agreement to vote for the Joint Plan.  This Agreement does not commit and shall not be deemed to commit any or all Committee Members or any creditor to vote for the Joint Plan.

8.    <u>Support Termination Events</u>.  The Creditors' Committee may, but shall not be required to, withdraw as a co-proponent of the Joint Plan if any of the following circumstances occurs:

   a.  Failure of the Bankruptcy Court to approve not later then November 30, 2005 the Amended Disclosure Statement, as the same may be amended from time to time to incorporate the Joint Plan;

SSL-DOCS1 1535375v5

CC-SSL-0000054

CC-BLG004181

b. The Bankruptcy Court or District Court determines that the Joint Plan is not confirmable and an amended Joint Plan is not filed by the Debtors and the Creditors' Committee within 60 days thereafter;

c. The Bankruptcy Court or District Court determines that the Debtors are insolvent;

d. The Debtors' exclusive periods to file a plan or solicit acceptances to a plan is terminated;

e. The Joint Plan is withdrawn by the Debtors and the Creditors' Committee and the Parties fail to file an amended Joint Plan within 60 days thereafter; and

f. Failure of the Joint Plan to become effective on or before January 1, 2007.

9. <u>Termination of Obligations</u>. The obligations of a Party hereunder shall terminate and be of no further force and effect as follows:

a. With respect to the Creditors' Committee: In the event a Support Termination Event occurs and the Creditors' Committee withdraws as a co-proponent of the Joint Plan, or the Debtors' breach their obligations under this Agreement.

b. With respect to the Debtors: In the event the Creditors' Committee withdraws as a co-proponent of the Joint Plan, or the Creditors' Committee breaches its obligations under this Agreement.

Upon termination of their respective obligations under this Agreement, no Party shall have any continuing liability or any continuing obligation to any other Party hereunder.

10. <u>Breach of Obligations</u>. It is understood and agreed by each of the Parties hereto that money damages are waived and that such damages would not be a sufficient remedy for any material breach of any provision of this Agreement by any Party and each non-breaching Party

SSL-DOCS1 1535375v5

CC-SSL-0000055

CC-BLG004182

shall be entitled to specific performance and other injunctive relief as the sole and exclusive remedy for any such breach of this Agreement, without the necessity of securing or posting a bond or other security in connection with such remedy.

11.  Administrative Expense Claims. It is understood and agreed by each of the Parties hereto that all fees, liabilities, damages and costs, including reasonable legal fees and expenses, incurred by the Committee or a Committee Member in connection with any claim, action, lawsuit or proceeding, brought by a person or entity not a Party hereto in respect of the Committee's being a co proponent of the Joint Plan and/or the Committee's being a Party to this Agreement shall be administrative expenses of the Debtors' estates.

12.  Representatives and Warranties. Each of the Parties represents and warrants to each of other parties that the following statements are true, correct and complete as of the date hereof.

> a.  It has all requisite power and authority to enter into this Agreement and to carry out the transactions contemplated by, and perform its respective obligations, under this Agreement.
>
> b.  The execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary action on its part.

13.  Effectiveness; Amendments. This Agreement shall not become effective and binding on a Party unless and until a counterpart signature page to this Agreement has been executed and delivered by such Party. Once effective, this Agreement may not be modified, amended or supplemented with respect to a Party except in a writing signed by such Party.

14.  Governing Law; Jurisdiction. This Agreement shall be governed by and construed in accordance with the internal laws of Delaware. By its execution and delivery of this Agreement, each of the Parties hereto hereby irrevocably and unconditionally agrees for itself that the

SSL-DOCS1 1535375v5

CC-SSL-0000056

CC-BLG004183

Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of or in connection with this Agreement.

15.  Notices.  All notices and consents hereunder shall be in writing and shall be deemed to have been duly given upon receipt if personally delivered by courier service, messenger, telecopy, or by certified or registered mail, postage prepaid return receipt requested, to the following address, or such other addresses as may be furnished hereafter by notice in writing, to the following parties:

> If to the Creditors' Committee to:
>
> Stroock & Stroock & Lavan LLP
> 180 Maiden Lane
> New York, NY 10038
> Attn: Lewis Kruger
>
> Telephone: 212-806-5400
> Facsimile: 212-806-6006
>
> If to the Debtors:
>
> W. R. Grace & Co.
> 7500 Grace Drive
> Columbia, MD 21044
> Attn: David B. Siegel
>
> Telephone: 410-531-4000
> Facsimile: 410-
>
> with a copy to:
>
> Kirkland & Ellis
> 200 East Randolph Drive
> Chicago, IL 60601
> Attn: Janet S. Baer
>
> Telephone: 312-861-2000
> Facsimile: 312-861-2200

16.  Headings.  The headings of the subparagraphs and the subparagraphs of this Agreement are inserted for convenience only and shall not affect the interpretation hereof.

-10-

CC-SSL-0000057

CC-BLG004184

17.  <u>Successors and Assigns</u>.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective permitted successors, assigns, heirs, executors, administrators and representatives.

18.  <u>Prior Negotiations</u>.  This Agreement supersedes all prior negotiations with respect to the subject matter hereof, but does not supersede the Letter Agreement, the Joint Plan dated January 13, 2005, the related Amended Disclosure Statement or the Amended Plan Documents.

19.  <u>Counterparts</u>.  This Agreement, and any modifications, amendments, supplements or waivers in respect hereof may be executed in one or more counterparts by manual or facsimile signature, each of which shall be deemed an original and all of which shall constitute one and the same Agreement.

20.  <u>Third Party Beneficiaries</u>.  Except for the Committee Members who are intended beneficiaries of paragraphs 6 and 7 of this Agreement, this Agreement shall be intended solely for the benefit of the Parties, and no other person or entity shall have any right, benefit, priority or interest under or because of the existence of this Agreement.

**IN WITNESS WHEREOF**, each of the parties has caused this Agreement to be executed and delivered by a person so authorized as of the date first written above.

W.R. Grace & Co., by and on behalf of itself, and the other
Debtors


By:_____
        Its:


The Official Committee of Unsecured Creditors


-11-

CC-SSL-0000058

CC-BLG004185

By:_____
      Its: Chairman

SSL-DOCS1 1535375v5

CC-SSL-0000059

CC-BLG004186