**Krieger, Arlene G.**

| | |
|---|---|
| **From:** | Janet Baer [jbaer@kirkland.com] |
| **Sent:** | Wednesday, March 16, 2005 12:14 PM |
| **To:** | Krieger, Arlene |
| **Cc:** | Lori Sinanyan |
| **Subject:** | Plan support agreement |
| **Attachments:** | Plan Support Agreement from A. Krieger at Stroock (LS Comments).DOC; Redline.doc |

 

Plan Support    Redline.doc (94 KB)
Agreement from A...

Arlene, attached please find our markup to the Plan Support Agreement draft that you sent to us last month.
I've attached a clean and a blackline comparison.
Please do not hesitate to call me or Lori with any questions.


----- Forwarded by Lori Sinanyan/Los
Angeles/Kirkland-Ellis on 03/15/2005 04:35 PM -----

(See attached file: Plan Support Agreement from A.
Krieger at Stroock (LS Comments).DOC)
(See attached file: Redline.doc)

Janet S. Baer
Kirkland & Ellis LLP
312-861-2162
312-660-0362 (fax)
200 E. Randolph
Chicago, IL 60601

<font size=2 face="monospace,courier">
********************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee.  It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful.  If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
********************************************************
</font>

CC-SSL-0000060

TRIAL EXHIBIT 31
CC-BLG004187-004215                                                    CC-BLG004187

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| W. R. GRACE & CO., et al. | ) | **Case No. 01-01139 (JKF)** |
| | ) | **Jointly Administered** |
| Debtors. | ) | |

### PLAN SUPPORT AGREEMENT[1]

This Plan Support Agreement (the "Support Agreement") dated as of March ___, 2005 is entered into by and between W. R. Grace & Co., by and on behalf of itself and its affiliates (collectively the "Debtors"), which are debtors and debtors-in-possession in chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware, and the Official Committee of Unsecured Creditors (the "Creditors' Committee") of the Debtors.  The Debtors and the Creditors' Committee and any subsequent person that becomes a party hereto in accordance with the terms hereof are referred to herein as the "Party" or "the Parties."

### RECITALS

**WHEREAS**, on April 2, 2001, the Debtors filed voluntary petitions for relief in the United States District Court for the District of Delaware ("Bankruptcy Court") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"); and

**WHEREAS**, on April 12, 2001, the United States Trustee for the District of Delaware appointed the Creditors' Committee to represent the interests of non-asbestos general unsecured claims (the "General Unsecured Claims") against the Debtors; and

**WHEREAS**, on November 13, 2004, the Debtors filed their (a) Plan of Reorganization [Docket No. 6895] (the "Plan"); (b) Disclosure Statement for Debtors' Plan of Reorganization

---

[1]    We were not aware that this Agreement was going to be filed.

K&E 10221508.2

CC-SSL-0000061

CC-BLG004188

Pursuant to Chapter 11 of the United States Code [Docket No. 6986] (the "Disclosure

Statement") and (c) a number of Plan and Disclosure Statement-related exhibits (collectively, the

"Plan Documents"); and

WHEREAS, the Debtors and the Creditors' Committee have engaged in negotiations

over, among other provisions, the treatment of Class 9 Claims[2] in the Plan and over the

Creditors' Committee becoming a co-proponent of an amended plan of reorganization; and

WHEREAS, in consideration for the treatment provided to Class 9 Claims in the

"Debtors' Amended Joint Plan of Reorganization" dated January 13, 2005 and filed with the

Bankruptcy Court on January 13, 2005 [Docket No. 7560] (the "Amended Plan") and other

modifications to the Plan agreed to by the Debtors and the Creditors' Committee and embodied

in the Amended Plan, the Creditors' Committee agreed to be a co-proponent of the Amended

Plan subject to the Parties' agreement on the Creditors' Committee's right to withdraw as a co-

proponent from the Amended Plan on the occurrence of certain circumstances (the "Support

Termination Events"); and

WHEREAS, by that certain letter dated January 12, 2005 (the "Letter Agreement"), the

Parties agreed to the Support Termination Events; and

WHEREAS, on January 13, 2005 the Debtors' filed the Amended Plan, the "Amended

Disclosure Statement for the Amended Joint Plan of Reorganization Pursuant to Chapter 11 of

the United States Bankruptcy Code" dated January 13, 2005 [Docket No. 7559] (as may be

further amended, the "Amended Disclosure Statement") and related plan documents (as may be

further amended, the "Amended Plan Documents"); and

---

[2]    Terms not otherwise defined herein shall have the meaning set forth in the Joint Plan.

KAE 10221508.2

CC-SSL-0000062

CC-BLG004189

WHEREAS, the Parties desire to have the Amended Disclosure Statement approved and the Amended Plan (as such plan is amended with the consent of the Creditors' Committee hereinafter, the "Joint Plan") confirmed by the Bankruptcy Court and by the United States District Court for the District of Delaware (the "District Court"), as applicable, as expeditiously as possible and the Joint Plan to become effective as soon as possible; and

WHEREAS, footnote 18 of the Amended Disclosure Statement sets forth the Support Termination Events and the Parties' intention to further memorialize their agreement in a plan support agreement to be filed with the Court.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    <u>Amendment or Modification of the Amended Joint Plan</u>.  The Creditors' Committee acknowledges that the Debtors may amend, alter or modify the Joint Plan from time to time prior to obtaining confirmation of the Joint Plan, so long as such amendments, alterations or modifications that affect any interest of Class 9 Claims are done with the prior consent of the Creditors' Committee, and that the Debtors consult with the Creditors' Committee prior to making any other amendments, alterations or modifications or adding supplements to the Joint Plan.  Each of the Parties agrees to negotiate in good faith any amendments, alterations or modifications necessary to achieve confirmation and consummation of the Joint Plan.

2.    <u>Approval of the Amended Disclosure Statement and Confirmation of the Joint Plan</u>.  The Parties shall seek to obtain approval of a disclosure statement embodying the Joint Plan no later than April 30, 2006[3] in accordance with the Bankruptcy Code and on terms consistent with

---

[3]    In light of the timing on the estimation hearings, we believe that this date would be more appropriate.

K&E 10221503.2

CC-SSL-0000063

CC-BLG004190

the Joint Plan and this Support Agreement. The Creditors' Committee shall cooperate in the Joint Plan confirmation process. The Parties shall take all reasonable actions to achieve timely confirmation and consummation of the Joint Plan.

3.    <u>Creditors' Committee Support of the Joint Plan</u>. So long as no Support Termination Event has occurred and the Creditors' Committee has not withdrawn as a co-proponent of the Joint Plan, and subject to the terms of this Support Agreement, the Creditors' Committee shall: (i) fully support the Joint Plan,[4] (ii) issue a letter recommending that all holders of Class 9 Claims entitled to vote do so in favor of the Joint Plan, (iii) support all approvals and required orders concerning the Joint Plan, (iv) support the extension of the Debtors' exclusive period to file an amended Joint Plan and solicit acceptances to the Joint Plan under Section 1121 of the Bankruptcy Code, (v) express support for the Joint Plan in response to inquiries from holders of Class 9 Claims regarding the same, and (vi) agree to permit disclosure in the Amended Disclosure Statement and any filings by the Debtors with the Securities & Exchange Commission of the contents of this Support Agreement.

In addition, except as permitted or contemplated by this Support Agreement, and so long as no Support Termination Event has occurred and the Creditors' Committee has not withdrawn as a co-proponent of the Joint Plan, the Creditors' Committee will not (i) object to confirmation of the Joint Plan or otherwise commence any proceeding, or take any other action, to oppose or alter the Joint Plan or oppose approval of the Amended Disclosure Statement, or any Court orders to be prepared in connection therewith, or other documents or agreements to be executed or implemented therewith, each of which orders, documents and agreements shall be consistent in all material respects with the Joint Plan, Amended Disclosure Statement and related Amended

---

[4]    Clause (ii) seemed redundant of (i), so deleted.

K&E 10221508.2

CC-SSL-0000064

CC-BLG004191

Plan Documents and this Support Agreement, (ii) agree to, consent to, provide any support to, participate in the formulation of, or vote for any plan of reorganization or liquidation for the Debtors other than the Joint Plan; or (iii) take any other action not required by law that is inconsistent with, or that would materially delay, confirmation or consummation of the Joint Plan.

4.    Treatment of General Unsecured Claims.  The Joint Plan classifies General Unsecured Claims in Class 9.  The Treatment of Class 9 Claims as set forth in Section 3.1.9(b) of the Joint Plan is as follows:

"Each Holder of an Allowed General Unsecured Claim shall be paid the Allowed Amount of its General Unsecured Claim on the GUC Distribution Date.  Such payment shall be either (i) in full, plus post-petition interest, such payment to be 85% in cash and 15% in Parent Common Stock, such Parent Common Stock being subject to, among other things, the transactions described in Section 7.2.2 of this Plan, and the Management Stock Incentive Plan, or (ii) upon such other less favorable terms as may be mutually agreed upon between the Holder of an Allowed General Unsecured Claim and the Reorganized Debtors.  Notwithstanding the foregoing, each Holder of a Claim which by operation of the Fresenius Settlement Agreement is an obligation for Fresenius[5] Indemnified Taxes promptly shall be paid in full in cash as such Fresenius Indemnified Taxes become due and payable.

Post-petition interest shall accrue from the filing date through the date of payment and shall be (i) for the Holders of Claims under[6] the Debtors' pre-petition bank credit facilities, at a rate of 6.09% per annum, compounded quarterly, (ii) for the Holders of Claims who, but for the

---

[5]    The 1/13/05 version doesn't include this word but that was a typo.  I have included here.

[6]    The 1/13/05 version doesn't include this word but that was a typo.  I have included here.

KAR 10221508.2

CC-SSL-0000065

CC-BLG004192

Filing of the Chapter 11 Cases would be entitled under a contract or otherwise to accrue or be paid interest on such Claim in a non-default (or non-overdue payment) situation under applicable non-bankruptcy law, the rate provided in the contract between a Debtor(s) and the Claimant or such rate as may otherwise apply under applicable non-bankruptcy law, or (iii) for all other Holders of Claims, at a rate of 4.19% per annum (the federal judgment rate as of the Petition Date), compounded annually.

The Parent Common Stock paid to the Holders of Allowed General Unsecured Claims in accordance with this Section 3.1.9(b) shall be valued at the average of the closing prices on The New York Stock Exchange for the trading days within the thirty (30) calendar days immediately preceding the GUC Distribution Date."

For so long as the Creditors' Committee's obligations under this Support Agreement have not terminated, the Debtors agree not to seek to modify, alter or amend the Joint Plan in any manner that adversely affects the treatment of General Unsecured Claims or other provisions of the Joint Plan agreed to by the Parties. The Debtors reserve the right to modify, alter or amend the treatment of General Unsecured Claims, including but not limited to the rate of interest paid, or any of the other provisions of the Joint Plan agreed to by the Parties after the Creditors' Committee's obligations under this Support Agreement have terminated. Without limiting in any manner the reservation of rights, claims, remedies and defenses set forth in paragraph 5 below, the Creditors' Committee reserves all of its rights to file any pleading asserting any bases in respect of any or all of such modifications, alterations or amendments made by the Debtors.

5.      Reservation of Rights, Claims, Remedies and Defenses. Each Party expressly acknowledges and agrees that, except as provided specifically herein, nothing in this Support Agreement is intended to, or does, in any manner waive, limit, impair or restrict the ability of the

K&E 10221508.2

CC-SSL-0000066

CC-BLG004193

Debtors or the Creditors' Committee to protect and to preserve all of its rights, claims, remedies, defenses and interests, including, without limitation, with respect to claims against the other or the full participation of the Creditors' Committee in the Debtors' bankruptcy process and in any proceedings therein. Each Party further expressly acknowledges and agrees that by entering into this Support Agreement, the Parties do not intend to waive, limit, impair or restrict any of their respective legal rights, claims or causes of action against the Debtors and any of their affiliates or any defenses that the Creditors' Committee may have in connection with any claim objection, avoidance action, adversary proceeding or other action or legal proceeding that the Debtors or their affiliates may bring. Without limiting the generality of any of the foregoing, the Debtors expressly agree and acknowledge that nothing herein is intended to, or does in any manner waive, limit, impair or restrict the ability of the Creditors' Committee to take any action it believes appropriate regarding approval of the Sealed Air Settlement Agreement, including to object to or otherwise oppose such approval on any basis, and all such rights are fully preserved.

6.    <u>Individual Committee Members</u>.  Each Party expressly acknowledges and agrees that this Support Agreement is not binding upon each individual member of the Creditors' Committee (each, a "Committee Member") and shall in no way be deemed or construed to waive, limit, restrict, or impair the ability of each Committee Member to protect and to preserve its rights, claims, causes of action, remedies, defenses and interests against the Debtors and any of their affiliates, or preclude each Committee Member from taking any and all actions or positions, whether adverse to the Debtors or not in the bankruptcy cases and in any proceedings therein including, but not limited to, as concerns the Joint Plan, the Amended Disclosure Statement, any of the Amended Plan Documents, or the Sealed Air Settlement Agreement.

-7-

CC-SSL-0000067

CC-BLG004194

7.  <u>Not A Solicitation or Voting Lock-Up Agreement</u>. This Support Agreement is not and shall not be deemed to be a solicitation for consents to the Joint Plan or a lock-up agreement to vote for the Joint Plan.  The acceptance of the holders of General Unsecured Claims will not be solicited until such Claimants have received the Amended Disclosure Statement and related ballot, as approved by the Bankruptcy Court.  This Support Agreement does not commit and shall not be deemed to commit any or all Committee Members or any creditor to vote for the Joint Plan.

8.  <u>Support Termination Events</u>. The Creditors' Committee may, but shall not be required to, withdraw as a co-proponent of the Joint Plan if any of the following circumstances occurs:

    a.  The Bankruptcy Court fails to approve the Amended Disclosure Statement on or before April 30, 2006;

    b.  The Bankruptcy Court or District Court determines that the Joint Plan is not confirmable and an amended Joint Plan is not filed within 60 days thereafter;

    c.  The Bankruptcy Court or District Court determines that the Debtors are insolvent;

    d.  The Debtors' exclusive periods to file a plan or solicit acceptances to a plan is terminated;

    e.  The Debtors and the Creditors' Committee withdraw the Joint Plan and the Parties fail to file a new plan within 60 days thereafter; and[7]

    f.  The Joint Plan fails to become effective on or before January 1, 2007.

9.  <u>Termination of Obligations</u>. The obligations of a Party hereunder shall terminate and be of no further force and effect as follows:

---

[7] Joint Plan as a defined term already includes concept of amendments so struck the word "joint".

K&E 10221508.2

-8-

CC-SSL-0000068

CC-BLG004195

a.  With respect to the Creditors' Committee:  In the event a Support Termination Event occurs and the Creditors' Committee withdraws as a co-proponent of the Joint Plan, or the Debtors breach their obligations under this Support Agreement.

b.  With respect to the Debtors:  In the event the Creditors' Committee withdraws as a co-proponent of the Joint Plan, or the Creditors' Committee breaches its obligations under this Support Agreement.

Upon termination of their respective obligations under this Support Agreement, no Party shall have any continuing liability or any continuing obligation to any other Party hereunder.

10.  <u>Breach of Obligations</u>.  It is understood and agreed by each of the Parties that money damages are waived and that such damages would not be a sufficient remedy for any material breach of any provision of this Support Agreement by any Party and each non-breaching Party shall be entitled to the sole and exclusive remedy of specific performance and injunctive or other equitable relief for any such breach of this Support Agreement, without the necessity of securing or posting a bond or other security in connection with such remedy.

11.  <u>Administrative Expense Claims</u>.  It is understood and agreed by each of the Parties that all fees, liabilities, damages and costs, including reasonable legal fees and expenses, incurred by the Creditors' Committee or a Committee Member in connection with any claim, action, lawsuit or proceeding brought by a person or entity not a Party hereto in respect of the Creditors' Committee being a co-proponent of the Joint Plan and/or the Creditors' Committee being a party to this Support Agreement shall be administrative expenses of the Debtors' estates; provided however that in the event of intentional misconduct by the Creditors' Committee or a Committee Member, such party will not be entitled to administrative expenses.

K&E 10221508.2

CC-SSL-0000069

CC-BLG004196

12.  <u>Representatives and Warranties</u>. Each of the Parties represents and warrants to each of other Parties that the following statements, as applicable, are true, correct and complete as of the date hereof.

    a.  It has all requisite power and authority to enter into this Support Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Support Agreement.

    b.  The execution and delivery of this Support Agreement and the performance of its obligations hereunder have been duly authorized by all necessary action on its part (other than the approval of the Bankruptcy Court in the case of the Debtors).

    c.  This Support Agreement is a legally valid and binding obligation, enforceable in accordance with its terms.

13.  <u>Effectiveness; Amendments</u>. This Support Agreement shall not become effective and binding on a Party unless and until a counterpart signature page to this Support Agreement has been executed and delivered by such Party. Once effective, this Support Agreement may not be modified, amended or supplemented with respect to a Party except in a writing signed by such Party.

14.  <u>Governing Law; Jurisdiction</u>. This Support Agreement shall be governed by and construed in accordance with the internal laws of Delaware without regard to any conflict of law provisions that would require the application of the law of any other jurisdiction. By its execution and delivery of this Support Agreement, each of the Parties hereby irrevocably and unconditionally agrees for itself any legal action, suit or proceeding against it with respect to any matter under or arising out of or in connection with this Support Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, may be brought in

-10-

K&E 10221508.2

CC-SSL-0000070

CC-BLG004197

the Bankruptcy Court. By execution and delivery of this Support Agreement, each of the Parties hereto hereby irrevocably accepts and submits itself to the exclusive jurisdiction of each such court, generally and unconditionally, with respect to any such action, suit or proceeding.

15.   Notices. All notices and consents hereunder shall be in writing and shall be deemed to have been duly given upon receipt if in writing and delivered by courier service, messenger, telecopy, or by certified or registered mail (postage prepaid return receipt requested) to the following address or telecopier numbers, or such other addresses or telecopier numbers as may be furnished hereafter by notice in writing, to the following parties:

> If to the Creditors' Committee to:
>
> Stroock & Stroock & Lavan LLP
> 180 Maiden Lane
> New York, NY  10038
> Attn:  Lewis Kruger
> Telephone: 212-806-5400
> Facsimile: 212-806-6006
>
> If to the Debtors:
>
> W. R. Grace & Co.
> 7500 Grace Drive
> Columbia, MD 21044
> Attn:  Secretary
> Telephone: 410-531-4000
> Facsimile: 410-531-4367
>
> with a copy to:
>
> Kirkland & Ellis
> 200 East Randolph Drive
> Chicago, IL 60601
> Attn:  Janet S. Baer
> Telephone: 312-861-2000
> Facsimile: 312-861-2200

16.   Headings. The headings of the subparagraphs and the subparagraphs of this Support Agreement are inserted for convenience only and shall not affect the interpretation hereof.

-11-

K&E 10221908.2

CC-SSL-0000071

CC-BLG004198

17.  <u>Successors and Assigns</u>.  This Support Agreement is intended to bind and inure to the benefit of the Parties and their respective permitted successors, assigns, heirs, executors, administrators and representatives.

18.  <u>Several, Not Joint, Obligations</u>.  The agreements, representations and obligations of the Committee Members under this Agreement are, in all respects, several and not joint.

19.  <u>Prior Negotiations</u>.  This Support Agreement supersedes all prior negotiations with respect to the subject matter hereof, including the Letter Agreement, and constitutes the complete agreement between the Parties with respect to the subject matter hereof, but does not supersede, the Joint Plan, the related Amended Disclosure Statement or the Amended Plan Documents.

20.  <u>Counterparts</u>.  This Support Agreement, and any modifications, amendments, supplements or waivers in respect hereof may be executed in one or more counterparts by manual or facsimile signature, each of which shall be deemed an original and all of which shall constitute one and the same agreement.

21.  <u>Third Party Beneficiaries</u>.  Except for the Committee Members who are intended beneficiaries of paragraphs 6 and 7 of this Support Agreement, this Support Agreement shall be solely for the benefit of the Parties, and no other person or entity shall have any legal or equitable right, benefit, priority or interest under or because of the existence of this Support Agreement.

KAE 10221508 2

CC-SSL-0000072

CC-BLG004199

**IN WITNESS WHEREOF,** each of the Parties has caused this Support Agreement to be executed and delivered by a person so authorized as of the date first written above.

W. R. Grace & Co., by and on behalf of itself, and the other Debtors

By:_____
     Its:


The Official Committee of Unsecured Creditors


By:_____
     Its:  Chairman

-13--

K&E 10221306 2

CC-SSL-0000073

CC-BLG004200

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| W. R. GRACE & CO., et al. | ) | **Case No. 01-01139 (JKF)** |
| | ) | **Jointly Administered** |
| Debtors. | ) | |

## PLAN SUPPORT AGREEMENT[1]

This Plan Support Agreement (the "Support Agreement") dated as of ~~February~~ March

___, 2005 is entered into by and ~~among~~between W. R. Grace & Co., by and on behalf of itself

and its affiliates (collectively the "Debtors"), which are debtors and debtors-in-possession in

chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware, and

the Official Committee of Unsecured Creditors (the "Creditors' Committee") of the Debtors.

The Debtors and the Creditors' Committee and any subsequent person that becomes a party

hereto in accordance with the terms hereof are referred to herein as the "Party" or "the Parties.".

## RECITALS

WHEREAS, on April 2, 2001, the Debtors filed voluntary petitions for relief in the

United States District Court for the District of Delaware ("Bankruptcy Court") under Chapter

11 of Title 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, on April 12, 2001, the United States Trustee for the District of Delaware

appointed the Creditors' Committee to represent the interests of non-asbestos general unsecured

claims ~~against the Debtors~~ (the "General Unsecured Claims") against the Debtors; and

---

[1] ~~We were not aware that this Agreement was going to be filed.~~

~~SSL-DOCS1 1535376v5~~

~~KAE 1535169.1KAE 1521159.3~~

CC-SSL-0000074

CC-BLG004201

WHEREAS, on November 13, 2004, the Debtors filed their (a) Plan of Reorganization [Docket No. 6895] (the "Plan"); (b) Disclosure Statement for Debtors' Plan of Reorganization Pursuant to Chapter 11 of the United States Code [Docket No. 6986] (the "Disclosure Statement") and (c) a number of Plan and Disclosure Statement-related exhibits (collectively, the "Plan Documents"); and

WHEREAS, the Debtors and the Creditors' Committee have engaged in negotiations over, among other provisions, the treatment of Class 9 Claims[2] in the Plan and over the Creditors' Committee becoming a co-proponent of an amended plan of reorganization; and

WHEREAS, in consideration for the treatment provided to Class 9 Claims in the "Debtors' Amended Joint Plan of Reorganization" dated January 13, 2005 and filed with the Bankruptcy Court on January 13, 2005 [Docket No. 7560] (the "~~Joint~~Amended Plan") and other modifications to the Plan agreed to by the Debtors and the Creditors' Committee and embodied in the ~~Joint~~Amended Plan, the Creditors' Committee agreed to be a co-proponent of the ~~Joint~~Amended Plan subject to the Parties' agreement on the Creditors' Committee's right to withdraw as a co-proponent from the ~~Joint~~Amended Plan on the occurrence of certain circumstances (the "Support Termination Events"); and

WHEREAS, by that certain letter dated January 12, 2005 (the "Letter Agreement"), the Parties agreed to the Support Termination Events; and

WHEREAS, on January 13, 2005 the Debtors' filed the ~~Joint~~Amended Plan, the "Amended Disclosure Statement for the Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code" dated January 13, 2005 [Docket No. 7559]

---

[2]    ~~Terms not otherwise defined herein shall have the meaning set forth in the Joint Plan.~~

CC-SSL-0000075

CC-BLG004202

(~~as may be further amended,~~ the "Amended Disclosure Statement") and related plan documents (~~as may be further amended,~~ the "Amended Plan Documents"); and

WHEREAS, the Parties desire to have the Amended Disclosure Statement approved and the ~~Joint~~Amended Plan (as such plan is amended with the consent of the Creditors' Committee hereinafter, the "Joint Plan") confirmed by the ~~United States~~ Bankruptcy Court ~~for the District of Delaware (the "Bankruptcy Court")~~ and by the United States District Court for the District of Delaware (the "District Court"), as applicable, as expeditiously as possible and the Joint Plan to become effective as soon as possible; and

WHEREAS, footnote 18 of the Amended Disclosure Statement sets forth the Support Termination Events and the Parties' intention to further memorialize their agreement in a plan support agreement to be filed with the Court.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    Amendment or Modification of the Amended Joint Plan.  The Creditors' Committee acknowledges that the Debtors may amend, alter or modify the Joint Plan from time to time prior to obtaining confirmation of the Joint Plan, so long as such amendments, alterations or modifications that affect any interest of Class 9 Claims are done with the prior consent of the Creditors' Committee, and that the Debtors consult with the Creditors' Committee prior to making any other amendments, alterations or modifications **or adding supplements** to the Joint Plan.  Each of the Parties agrees to negotiate in good faith any amendments, alterations or modifications necessary to achieve confirmation and consummation of the Joint Plan.

CC-SSL-0000076

CC-BLG004203

2.  **Approval of the Amended Disclosure Statement and Confirmation of the Joint Plan.**
The Parties shall seek to obtain approval of a ~~D~~disclosure S~~t~~atement embodying the Joint Plan
no later than ~~November~~**April** 30, ~~2005~~**2006**[3] in accordance with the Bankruptcy Code and on
terms consistent with the Joint Plan and this **Support** Agreement. The Creditors' Committee
shall cooperate in the Joint Plan confirmation process. The Parties shall take all reasonable
actions to achieve timely confirmation and consummation of the Joint Plan.

**3.**  *Creditors' Committee Support of the Joint Plan. So long as no Support Termination*
*Event has occurred and the Creditors' Committee has not withdrawn as a co-proponent of the*
*Joint Plan, and subject to the terms of this Support Agreement, the Creditors' Committee shall:*
*(i) fully support the Joint Plan*[4] **(ii) issue a letter recommending that all holders of Class 9**
**Claims entitled to vote do so in favor of the Joint Plan, (iii) support all approvals and required**
**orders concerning the Joint Plan, (iv) support** ~~the Joint Plan, (v) support~~ **the extension of the**
**Debtors' exclusive period to file an amended Joint Plan and solicit acceptances to the Joint Plan**
**under Section 1121 of the Bankruptcy Code, (v) express support for the Joint Plan in response to**
**inquiries from holders of Class 9 Claims regarding the same, and (vi) agree to permit**
**disclosure in the Amended Disclosure Statement and any filings by the Debtors with the**
**Securities & Exchange Commission of the contents of this Support Agreement.**

~~3.     Creditors' Committee Support of the Joint Plan. So long as no Support~~
~~Termination Event has occurred and the Creditors' Committee has not withdrawn as a co-~~
~~proponent of the Joint Plan, and subject to the terms of this Agreement, the Creditors'~~

---

[3]  **In light of the timing on the estimation hearings, we believe that this date would be more appropriate.**
[4]  **Clause (ii) seemed redundant of (i), so deleted.**

CC-SSL-0000077

CC-BLG004204

~~Committee shall: (i) fully support the Joint Plan, (ii)~~ support in all material respects the Joint

~~Plan, (iii) recommend that all Class 9 Claims entitled to vote do so in favor of the Joint Plan, (iv)~~

~~support all approvals and required orders concerning~~ the Joint Plan, (v) support ~~the extension of~~

~~the Debtors' exclusive period to file an amended Joint Plan and solicit acceptances to the Joint~~

~~Plan under Section 1121 of the Bankruptcy Code,~~ and ~~(vi) express support for the Joint Plan in~~

~~response to inquiries from holders of Class 9 Claims regarding the same.~~ In addition, except as

permitted or contemplated by this **Support** Agreement, and so long as no Support Termination

Event has occurred and the Creditors' Committee has not withdrawn as a co-proponent of the

Joint Plan, the Creditors' Committee will not (i) object to confirmation of the Joint Plan or

otherwise commence any proceeding**, or take any other action,** to oppose **or alter** the Joint

Plan or **oppose** approval of the Amended Disclosure Statement, or any Court orders to be

prepared in connection therewith, or other documents or agreements to be executed or

implemented therewith, each of which orders, documents and agreements shall be consistent in

all material respects with the Joint Plan, Amended Disclosure Statement and related Amended

Plan Documents and this **Support** Agreement, (ii) **agree to,** consent to**, provide any** support **to,**

**participate in the formulation of, or vote for** any plan of reorganization or liquidation for the

Debtors other than the Joint Plan; or (iii) take any other action not required by law that is

inconsistent with, or that would materially delay, confirmation or consummation of the Joint

Plan.

    4.    <u>Treatment of General Unsecured Claims</u>.  The Joint Plan classifies General Unsecured

Claims in Class 9.  The Treatment of Class 9 Claims as set forth in Section 3.1.9(b) of the Joint

Plan is as follows:

CC-SSL-0000078

CC-BLG004205

"Each Holder of an Allowed General Unsecured Claim shall be paid the Allowed Amount of its General Unsecured Claim on the GUC Distribution Date. Such payment shall be either (i) in full, plus post-petition interest, such payment to be 85% in cash and 15% in Parent Common Stock, such Parent Common Stock being subject to, among other things, the transactions described in Section 7.2.2 of this Plan, and the Management Stock Incentive Plan, or (ii) upon such other less favorable terms as may be mutually agreed upon between the Holder of an Allowed General Unsecured Claim and the Reorganized Debtors. Notwithstanding the foregoing, each Holder of a Claim which by operation of the Fresenius Settlement Agreement is an obligation for **Fresenius**[5] Indemnified Taxes promptly shall be paid in full in cash as such Fresenius Indemnified Taxes become due and payable.

Post-petition interest shall accrue from the filing date through the date of payment and shall be (i) for the Holders of **Claims under**[6] the Debtors' pre-petition bank credit facilities, at a rate of 6.09% per annum, compounded quarterly, (ii) for the Holders of Claims who, but for the Filing of the Chapter 11 Cases would be entitled under a contract or otherwise to accrue or be paid interest on such Claim in a non-default (or non-overdue payment) situation under applicable non-bankruptcy law, the rate provided in the contract between a Debtor(s) and the Claimant or such rate as may otherwise apply under applicable non-bankruptcy law, or (iii) for all other Holders of Claims, at a rate of 4.19% per annum (the federal judgment rate as of the Petition Date), compounded annually.

---

[5]    The 1/13/05 version doesn't include this word but that was a typo. I have included here.

[6]    The 1/13/05 version doesn't include this word but that was a typo. I have included here.

SSL-DOCS1-1635375v5

-6-

-6-

KAE 10021508.1KAE 10221508.2

CC-SSL-0000079

CC-BLG004206

The Parent Common Stock paid to the Holders of Allowed General Unsecured Claims in accordance with this Section 3.1.9(b) shall be valued at the average of the closing prices on The New York Stock Exchange for the trading days within the thirty (30) calendar days immediately preceding the GUC Distribution Date."

For so long as the Creditors' Committee's obligations under this **Support** Agreement have not terminated, the Debtors agree not to seek to modify, alter or amend the Joint Plan in any manner that adversely affects the treatment of General Unsecured Claims or other provisions of the Joint Plan agreed to by the Parties. The Debtors reserve the right to modify, alter or amend the treatment of General Unsecured Claims**, including but not limited to the rate of interest paid,** or any of the other provisions of the Joint Plan agreed to by the Parties after the Creditors' Committee's obligations under this **Support** Agreement have terminated. Without limiting in any manner the reservation of rights, claims, remedies and defenses set forth in paragraph 5 below, the Creditors' Committee reserves all of its rights to file any pleading asserting any bases in respect of any or all of such modifications, alterations or amendments made by the Debtors.

5.    Reservation of Rights, Claims, Remedies and Defenses.  Each Party expressly acknowledges and agrees that, except as provided specifically herein, nothing in this **Support** Agreement is intended to, or does, in any manner waive, limit, impair or restrict the ability of the **Debtors or the** Creditors' Committee to protect and to preserve all of its rights, claims, remedies, defenses and interests, including, without limitation, with respect to claims against the ~~Debtors~~**other** or ~~its~~**the** full participation **of the Creditors' Committee** in the Debtors' bankruptcy process and in any proceedings therein. Each Party further expressly acknowledges and agrees that by entering into this **Support** Agreement, the ~~Creditors' Committee does~~**Parties**

CC-SSL-0000080

CC-BLG004207

do not intend to waive, limit, impair or restrict any of itstheir respective legal rights, claims or causes of action against the Debtors and any of their affiliates or any defenses that the Creditors' Committee may have in connection with any claim objection, avoidance action, adversary proceeding or other action or legal proceeding that the Debtors or their affiliates may bring. Without limiting the generality of any of the foregoing, the Debtors expressly agree and acknowledge that nothing herein is intended to, or does in any manner waive, limit, impair or restrict the ability of the Creditors' Committee to take any action it believes appropriate regarding approval of the Sealed Air Settlement Agreement, including to object to or otherwise oppose such approval on any basis, and all such rights are fully preserved.

6.    Individual Committee Members.  Each Party expressly acknowledges and agrees that this Support Agreement is not binding upon each individual member of the Creditors' Committee (each, a "Committee Member") and shall in no way be deemed or construed to waive, limit, restrict, or impair the ability of each Committee Member to protect and to preserve its rights, claims, causes of action, remedies, defenses and interests against the Debtors and any of their affiliates, or preclude each Committee Member from taking any and all actions or positions, whether adverse to the Debtors or not in the bankruptcy cases and in any proceedings therein including, but not limited to, as concerns the Joint Plan, the Amended Disclosure Statement, any of the Amended Plan Documents, or the Sealed Air Settlement Agreement.

7.    Not A Solicitation or Voting Lock-Up Agreement.  This Support Agreement is not and shall not be deemed to be a solicitation for consents to the Joint Plan or a look-up agreement to vote for the Joint Plan.  ThisThe acceptance of the holders of General Unsecured Claims will not be solicited until such Claimants have received the Amended Disclosure Statement

CC-SSL-0000081

CC-BLG004208

**and related ballot, as approved by the Bankruptcy Court. This Support** Agreement does not commit and shall not be deemed to commit any or all Committee Members or any creditor to vote for the Joint Plan.

8. <u>Support Termination Events</u>. The Creditors' Committee may, but shall not be required to, withdraw as a co-proponent of the Joint Plan if any of the following circumstances occurs:

    a. ~~Failure of the~~**The** Bankruptcy Court **fails** to approve ~~not later than November 30, 2005~~ the Amended Disclosure Statement~~, as the same may be amended from time to time to incorporate the Joint Plan~~ **on or before April 30, 2006**;

    b. The Bankruptcy Court or District Court determines that the Joint Plan is not confirmable and an amended Joint Plan is not filed ~~by the Debtors and the Creditors' Committee~~ within 60 days thereafter;

    c. The Bankruptcy Court or District Court determines that the Debtors are insolvent;

    d. The Debtors' exclusive periods to file a plan or solicit acceptances to a plan is terminated;

    e. The ~~Joint Plan is withdrawn by the~~ Debtors and the Creditors' Committee **withdraw the Joint Plan** and the Parties fail to file ~~an amended Joint Plan~~**a new plan** within 60 days thereafter; and[7]

    f. ~~Failure of the~~**The** Joint Plan **fails** to become effective on or before January 1, 2007.

9. <u>Termination of Obligations</u>. The obligations of a Party hereunder shall terminate and be of no further force and effect as follows:

---

[7] ~~Joint Plan as a defined term already includes consent of amendments so struck the word "Joint".~~

CC-SSL-0000082

CC-BLG004209

a.  With respect to the Creditors' Committee:  In the event a Support Termination Event occurs and the Creditors' Committee withdraws as a co-proponent of the Joint Plan, or the Debtors' breach their obligations under this **Support** Agreement.

b.  With respect to the Debtors:  In the event the Creditors' Committee withdraws as a co-proponent of the Joint Plan, or the Creditors' Committee breaches its obligations under this **Support** Agreement.

Upon termination of their respective obligations under this **Support** Agreement, no Party shall have any continuing liability or any continuing obligation to any other Party hereunder.

10.  **Breach of Obligations**.  It is understood and agreed by each of the Parties hereto that money damages are waived and that such damages would not be a sufficient remedy for any material breach of any provision of this **Support** Agreement by any Party and each non-breaching Party shall be entitled to *the sole and exclusive remedy of* specific performance and other injunctive **or other equitable** relief as *the sole and exclusive remedy* for any such breach of this **Support** Agreement, without the necessity of securing or posting a bond or other security in connection with such remedy.

11.  **Administrative Expense Claims**.  It is understood and agreed by each of the Parties hereto that all fees, liabilities, damages and costs, including reasonable legal fees and expenses, incurred by the **Creditors'** Committee or a Committee Member in connection with any claim, action, lawsuit or proceeding, brought by a person or entity not a Party hereto in respect of the **Creditors'** Committee's being a co-proponent of the Joint Plan and/or the **Creditors'** Committee's being a Pparty to this **Support** Agreement shall be administrative expenses of the

SSL-DOCS1-1536375v5

YAB 1823:1408-1KAY 1821:1813.2

CC-SSL-0000083

CC-BLG004210

Debtors' estates; **provided however that in the event of intentional misconduct by the Creditors' Committee or a Committee Member, such party will not be entitled to administrative expenses.**

12. <u>Representatives and Warranties</u>. Each of the Parties represents and warrants to each of other p~~P~~arties that the following statements**, as applicable,** are true, correct and complete as of the date hereof.

    a. It has all requisite power and authority to enter into this <u>Support</u> Agreement and to carry out the transactions contemplated by, and perform its respective obligations~~,~~ under**,** this <u>Support</u> Agreement.

    b. The execution and delivery of this <u>Support</u> Agreement and the performance of its obligations hereunder have been duly authorized by all necessary action on its part **(other than the approval of the Bankruptcy Court in the case of the Debtors).**

    **c. This Support Agreement is a legally valid and binding obligation, enforceable in accordance with its terms.**

13. <u>Effectiveness; Amendments</u>. This <u>Support</u> Agreement shall not become effective and binding on a Party unless and until a counterpart signature page to this <u>Support</u> Agreement has been executed and delivered by such Party. Once effective, this <u>Support</u> Agreement may not be modified, amended or supplemented with respect to a Party except in a writing signed by such Party.

14. <u>Governing Law; Jurisdiction</u>. This <u>Support</u> Agreement shall be governed by and construed in accordance with the internal laws of Delaware **without regard to any conflict of**

CC-SSL-0000084

CC-BLG004211

law provisions that would require the application of the law of any other jurisdiction. By its execution and delivery of this ~~Support~~ Agreement, each of the Parties ~~hereto~~ hereby irrevocably and unconditionally agrees for itself ~~that the Bankruptcy Court shall have~~any legal action, suit or proceeding against it with respect to any matter under or *arising out of or in connection with this* ~~Agreement~~ Support Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, may be brought in the Bankruptcy Court. By execution and delivery of this Support Agreement, each of the Parties *hereto* hereby irrevocably accepts and submits itself to the exclusive jurisdiction of ~~all matters *arising out of or in connection with this* Agreement~~each such court, generally and unconditionally, with respect to any such action, suit or proceeding.

15. <u>Notices.</u>  All notices and consents hereunder shall be in writing and shall be deemed to have been duly given upon receipt if ~~personally~~in writing and delivered by courier service, messenger, telecopy, or by certified or registered mail~~,~~ (postage prepaid return receipt requested~~,~~) to the following address or telecopier numbers, or such other addresses or telecopier numbers as may be furnished hereafter by notice in writing, to the following parties:

> If to the Creditors' Committee to:
>
> Stroock & Stroock & Lavan LLP
> 180 Maiden Lane
> New York, NY 10038
> Attn: Lewis Kruger
> Telephone: 212-806-5400
> Facsimile: 212-806-6006
>
> If to the Debtors:
>
> W. R. Grace & Co.
> 7500 Grace Drive
> Columbia, MD 21044

CC-SSL-0000085

CC-BLG004212

Attn: ~~David B. Siegel~~
<u>Secretary</u>
Telephone: 410-531-4000
Facsimile: 410-~~531-4367~~

with a copy to:

Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601
Attn: Janet S. Baer
Telephone: 312-861-2000
Facsimile: 312-861-2200

16.    <u>Headings</u>. The headings of the subparagraphs and the subparagraphs of this <u>Support</u> Agreement are inserted for convenience only and shall not affect the interpretation hereof.

17.    <u>Successors and Assigns</u>. This <u>Support</u> Agreement is intended to bind and inure to the benefit of the Parties and their respective permitted successors, assigns, heirs, executors, administrators and representatives.

<u>**18.    Several, Not Joint. Obligations.  The agreements, representations and obligations of the Committee Members under this Agreement are, in all respects, several and not joint.**</u>

<u>19.</u>    ~~18.~~<u>Prior Negotiations</u>. This <u>Support</u> Agreement supersedes all prior negotiations with respect to the subject matter hereof, ~~but does not supersede~~<u>including</u> the Letter Agreement, ~~the Joint Plan dated January 13, 2005,~~<u>and constitutes the complete agreement between the Parties with respect to the subject matter hereof, but does not supersede, the Joint Plan,</u> the related Amended Disclosure Statement or the Amended Plan Documents.

<u>20.</u>    ~~19.~~<u>Counterparts</u>. This <u>Support</u> Agreement, and any modifications, amendments, supplements or waivers in respect hereof may be executed in one or more counterparts by

CC-SSL-0000086

CC-BLG004213

.

manual or facsimile signature, each of which shall be deemed an original and all of which shall constitute one and the same ~~A~~agreement.

**21.** ~~20.~~ Third Party Beneficiaries. Except for the Committee Members who are intended beneficiaries of paragraphs 6 and 7 of this ~~Support~~ Agreement, this ~~Support~~ Agreement shall be ~~intended~~ solely for the benefit of the Parties, and no other person or entity shall have any ~~legal or equitable~~ right, benefit, priority or interest under or because of the existence of this ~~Support~~ Agreement.

~~SSL-DOCS1 1535375v5~~

~~KAE 10031691.1KAE 10331561.1~~

CC-SSL-0000087

CC-BLG004214

**IN WITNESS WHEREOF**, each of the pParties has caused this Support Agreement to be executed and delivered by a person so authorized as of the date first written above.

W. R. Grace & Co., by and on behalf of itself, and the other Debtors

By:_____
     Its:

The Official Committee of Unsecured Creditors

By:_____
     Its:  Chairman

CC-SSL-0000088

CC-BLG004215