**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| _____ | ) | Chapter 11 |
| In re | ) | |
| | ) | Case No. 01-01139 (JKF) |
| W.R. GRACE & CO., *et al.,* | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | **Hearing Date: Sept. 29, 2009, 10:30 a.m. EDT** |
| _____ | ) | **Objection Deadline: Sept. 11, 2009, 5:00 p.m. EDT** |

**BRIEF IN SUPPORT OF FIREMAN'S FUND INSURANCE COMPANY'S MOTION
FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW COMPLETION OF
DEBTORS' STATE COURT APPEAL FROM THE <u>EDWARDS</u> JUDGMENT AND FOR
RELATED RELIEF**

John D. Demmy (DE Bar No. 2802)
STEVENS & LEE, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone:  (302) 425-3308
Telecopier:  (610) 371-8515
Email:  jdd@stevenslee.com

Leonard P. Goldberger
Marnie E. Simon
STEVENS & LEE, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA  19103-1702
Telephone:  (215) 751-2864/2885
Telecopier:  (610) 371-7376/8505
Email:  lpg@stevenslee.com
Email:  mes@stevenslee.com

Mark D. Plevin
Leslie A. Davis
Tacie H. Yoon
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  (202) 624-2500
Telecopier:  (202) 628-5116
Email:  mplevin@crowell.com
Email:  ldavis@crowell.com
Email:  tyoon@crowell.com

Attorneys for Fireman's Fund Insurance Company

Dated:  August 25, 2009

# TABLE OF CONTENTS

**Page**

**TABLE OF CONTENTS** .................................................................................. i

**TABLE OF AUTHORITIES** ........................................................................... ii

**FACTUAL BACKGROUND** ...........................................................................5

     A.    The Supersedeas Bond Fireman's Fund Posted To Secure
           Grace's Appeal Of The Edwards Judgment...................................5

     B.    Fireman's Fund's Surety Claim Against Grace ...........................7

     C.    Fireman's Fund's Right To Setoff ............................................11

**ARGUMENT** ................................................................................................12

I.    The Three-Prong Balancing Test Supports Granting Relief From The
     Automatic Stay So That The Edwards Appeal Can Proceed ................................13

     A.    Grace Will Not Be Greatly Prejudiced If The Edwards Appeal
           Proceeds ..................................................................................13

     B.    Fireman's Fund Will Suffer Great Prejudice Unless The Stay Is
           Lifted To Permit The Edwards Appeal To Proceed...................17

     C.    The Edwards Appeal Has A High Probability Of Success On
           The Merits................................................................................22

II.    Granting Relief From The Stay To Permit The Edwards Appeal To
     Proceed Is Consistent With The Policies Underlying § 362..................................23

III.    The Stay Should Also Be Lifted So That Fireman's Fund Can Pursue
     Its Contractual Remedies Against Grace  ............................................................29

**CONCLUSION** .............................................................................................31

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                                       **Page**

Admiral Oriental Line v. United States, 86 F.2d 201 (2d Cir. 1936) ..................................2

American Airlines, Inc. v. Continental Airlines, Inc.
   (In re Continental Airlines, Inc.), 152 B.R. 420 (D. Del. 1993) ......................12, 16, 25

American Surety Co. of New York v. Lewis State Bank,
   58 F.2d 559 (5th Cir. 1932) ...........................................................................................1

Borey v. National Union Fire Ins. Co. of Pittsburgh, PA,
   934 F.2d 30 (2d Cir. 1991)....................................................................................30, 31

Commercial Money Center, Inc. v. Illinois Union Ins. Co., 508 F.3d 327
   (6th Cir. 2007)...............................................................................................................2

Fireman's Fund Ins. Co. of Newark, N.J. v. Keating,
   753 F. Supp. 1146 (S.D.N.Y. 1990)............................................................................30

Hohol v. Essex Indus., Inc. (In re Hohol), 141 B.R. 293 (M.D. Pa. 1992).......................13

Hondo Oil & Gas Co. v. Texas Crude Operator, Inc., 970 F.2d 1433 (5th Cir. 1992)........2

In re Bohack Corp., 599 F.2d 1160 (2d Cir. 1979)...........................................................19

In re DBSI, Inc., 407 B.R. 159 (Bankr. D. Del. 2009) .....................................................24

In re Enron Corp., 306 B.R. 465 (Bankr. S.D.N.Y. 2004).................................................25

In re Keene Corp., 171 B.R. 180 (Bankr. S.D.N.Y. 1994) ........................................ *passim*

In re Rocchio, 125 B.R. 345 (Bankr. D.R.I. 1991) ...........................................................20

In re The SCO Group, Inc., 395 B.R. 852 (Bankr. D. Del. 2007) ............................. *passim*

In re Ware Window Co., 2003 WL 21786015 (Bankr. E.D. Pa. July 28, 2003) ...............13

International Bus. Mach. v. Fernstrom Stor. & Van Co.
   (In re Fernstrom Stor. & Van Co.), 938 F.2d 731 (7th Cir. 1991)...............................16

Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.),
   141 B.R. 574 (Bankr. D. Del. 1992) ..............................................................22, 23, 24

Johns-Manville Corp. v. The Asbestos Litig. Group (In re Johns-Manville Corp.),
   26 B.R. 420 (Bankr. S.D.N.Y. 1983), *aff'd in part,*

40 B.R. 219 (S.D.N.Y. 1984), and *rev'd in part on other grounds*,
41 B.R. 926 (S.D.N.Y. 1984) ......................................................................16

Kronemyer v. American Contractors Indem. Co. (In re Kronemyer),
405 B.R. 915 (9th Cir. B.A.P. 2009) ...........................................28

Mazzeo v Lenhart (In re Mazzeo), 167 F.3d 139 (2d Cir. 1999) .......................25

Metz v. Poughkeepsie Sav. Bank, FSB (In re Metz), 165 B.R. 769
(Bankr. E.D.N.Y. 1994) ...............................................................26, 27

Milwaukie Constr. Co. v. Glen Falls Ins. Co., 367 F.2d 964 (9th Cir. 1966)....................30

OMNA Med. Partners, Inc. v. Carus Healthcare, P.A.
(In re OMNA Med. Partners, Inc.), 2000 WL 33712302
(Bankr. D. Del. June 12, 2000) .....................................................13

Peerless Ins. Co. v. Rivera, 208 B.R. 313 (D.R.I. 1997) .....................................13

Prindle v. Countryside Manor, Inc. (In re Countryside Manor, Inc.), 188 B.R. 489
(Bankr. D. Conn. 1995)................................................................19, 20

Safeco Ins. Co. v. Schwab, 739 F.2d 431 (9th Cir. 1984) ...............................5, 30

St. Croix Condominium Owners v. St. Croix Hotel, 682 F.2d 446 (3d Cir. 1982) ...........23

Sonnax Indus., Inc. v. Tri Component Prods. Corp.
(In re Sonnax Indus., Inc.), 907 F.2d 1280 (2d Cir. 1990) ...........................24

United States v. Perry (In re Perry), 26 B.R. 599 (Bankr. E.D. Pa. 1983).........................20

Wedgewood Inv. Fund Ltd. v. Wedgewood Realty Group, Ltd.
(In re Wedgewood), 878 F.2d 693 (3d Cir. 1989) .......................................23

**STATE CASES**

American Alloy Steel, Inc. v. Armco, Inc., 777 S.W.2d 173
(Tex. App.-Houston [14th Dist.] 1989, no writ) .............................................2

Cates Construction, Inc. v. Talbot Partners, 980 P.2d 407 (Cal. 1999) ..............................1

Doster v. Continental Cas. Co., 105 So.2d 83 (Ala. 1958) ................................29

Escrow Agents Fidelity Corp. v. Abelman, 5 Cal. Rptr.2d 698 (Cal. App. 1992) ............30

Mid-Century Insurance Co. v. Boyte, 80 S.W.3d 546 (Tex. 2002).....................................6

National Surety Corp. v. Barth, 89 A.2d 104 (N.J. Super., Ch. Div.),
   *aff'd*, 95 A.2d 145 (N.J. App. 1953) ...........................................................29

W.R. Grace & Co. v. Edwards, *et al.*, Opinion dated April 13, 2001,
   No. 06-00-00112-CV (Tex. App. April 13, 2001) .......................................7

**FEDERAL STATUTES**

11 U.S.C. § 362................................................................................... *passim*

11 U.S.C. § 502(b) ....................................................................................8

11 U.S.C. § 502(e) ............................................................................. *passim*

11 U.S.C. § 502(j) ...................................................................................28

11 U.S.C. § 553(a) ..................................................................................11

11 U.S.C. § 1141(d) ................................................................................18

28 U.S.C. § 1334(c) ................................................................................13

**RULES**

Texas Rule of Appellate Procedure 24.1 ..........................................................6

Texas Rule of Appellate Procedure 38.3 ........................................................15

Texas Rule of Appellate Procedure 39.1 ........................................................15

Texas Civil Procedure Code Annotated § 51.001................................................6

**OTHER**

74 Am. Jur. 2d Suretyship § 1 (2009).............................................................1

H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 341 (1977),
   U.S. Code Cong. & Admin. News 1978, p. 5787 .......................................13

Krebs, "Sureties' Equitable Remedies:  The Writ of Quia Timet and Injunctive Relief,"
   available at http://www.forcon.com/papers/ssfcc/1998/09Krebs.pdf
   (last visited Aug. 25, 2009).........................................................................2

Restatement (Third) Of Suretyship & Guaranty (1996), § 1 .............................1

Restatement (Third) Of Suretyship & Guaranty (1996), § 37 ...........................2

When W.R. Grace & Co. and W.R. Grace & Co.-Conn. (together, "Grace") commenced this Chapter 11 case, they were in the midst of appealing a Texas state court judgment against them in five consolidated asbestos personal injury cases (collectively, "Edwards").  At Grace's request, Fireman's Fund issued a pre-petition supersedeas bond (the "Bond") in excess of $43 million on Grace's behalf in connection with that appeal, to preclude the Edwards plaintiffs from executing their judgment against Grace's assets while the appeal was pending.  In connection with issuance of the Bond, Fireman's Fund and Grace entered into an Indemnity Agreement under which Grace agreed to indemnify Fireman's Fund for any and all loss Fireman's Fund might suffer under the Bond.

By issuing the Bond, Fireman's Fund is entitled to suretyship status.  In suretyship, the risk of loss remains with the principal (here, Grace) while the surety (here, Fireman's Fund) merely lends its credit to guarantee payment if the principal defaults on its obligation.[1]  Because sureties place themselves at risk to pay their principals' debts, based on the principals' promise that the surety will not suffer actual loss, sureties such as Fireman's Fund have long been deemed "favorite[s] of equity."[2]  Accordingly, longstanding suretyship law entitles Fireman's Fund to recourse against Grace, to cause Grace (the principal obligor) either to perform the underlying

---

[1]     See Restatement (Third) Of Suretyship & Guaranty  (1996) (the "Restatement"), § 1 ("a secondary obligor has suretyship status whenever: (a) pursuant to contract (the 'secondary obligation'), an obligee has recourse against a person (the 'secondary obligor') or that person's property with respect to the obligation (the 'underlying obligation') of another person (the 'principal obligor') to that obligee; and (b) to the extent that the underlying obligation or the secondary obligation is performed the obligee is not entitled to performance of the other obligation; and (c) as between the principal obligor and the secondary obligor, it is the principal obligor who ought to perform the underlying obligation or bear the cost of performance"); 74 Am. Jur. 2d Suretyship § 1 (2009), citing Cates Construction, Inc. v. Talbot Partners, 980 P.2d 407 (Cal. 1999).

[2]     American Surety Co. of New York v. Lewis State Bank, 58 F.2d 559, 560 (5th Cir. 1932).

obligation – *i.e.*, payment of any judgment to the Edwards plaintiffs – or to bear the cost of performance – *i.e.*, by placing Fireman's Fund, as surety, "in funds" upon its request, to ensure that any payment on the underlying obligation is made with Grace's funds, not the surety's funds.[3]

Because it is entitled to recourse against Grace, Fireman's Fund filed a proof of claim against Grace (the "Surety Claim") in the bankruptcy case, seeking payment, pursuant to both the Indemnity Agreement and Fireman's Fund's common law right of indemnification,[4] of all amounts Fireman's Fund pays under the Bond.

But Grace's Plan improperly treats the Surety Claim. Instead of providing for payment, in full, of any amounts that Fireman's Fund may pay under the Bond, the Plan improperly classifies the Surety Claim as a Class 6 indirect asbestos claim, entitled to only cents on the dollar. The Surety Claim – a strict contract claim – should instead be classified as a Class 9 general unsecured claim together with other similar contractual and financial claims, or

---

[3]    *See* Krebs, "Sureties' Equitable Remedies: The Writ of Quia Timet and Injunctive Relief," available at http://www.forcon.com/papers/ssfcc/1998/09Krebs.pdf (last visited Aug. 25, 2009) at 7 ("Sureties customarily include 'collateral deposit' clauses in their indemnity agreements, requiring the principal and any indemnitors to 'place the surety in funds' under certain circumstances"); Restatement § 37 at Comment a ("Suretyship status gives the secondary obligor both the right to have the principal obligor bear the cost of performance owed to the obligee and several mechanisms of recourse against the principal obligor to effectuate that right. The existence of this right and these mechanisms is a fundamental component of the secondary obligor's bargain"); Admiral Oriental Line v. United States, 86 F.2d 201, 204 (2d Cir. 1936) (Judge Learned Hand stating that "before paying the debt a surety may call upon the principal to exonerate him by discharging it; he is not obliged to make inroads into his own resources when the loss must in the end fall upon the principal"); Commercial Money Center, Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 341 (6th Cir. 2007) (holding that a suretyship confers rights of recourse to a surety against the principal obligor).

[4]    *See*, *e.g.*, Hondo Oil & Gas Co. v. Texas Crude Operator, Inc., 970 F.2d 1433, 1441 (5th Cir. 1992) ("courts recognize an implied right of indemnification when an agency or surety relationship exists"), citing American Alloy Steel, Inc. v. Armco, Inc., 777 S.W.2d 173, 175 (Tex. App.-Houston [14th Dist.] 1989, no writ).

otherwise treated as a claim that is unimpaired and entitled to payment in full.  The Plan also

purports to cut off Fireman's Fund's setoff rights, which should allow it to reduce any amounts it

owes for insurance coverage under pre-petition insurance policies it issued to Grace by the full

amount of the Surety Claim.  Fireman's Fund objected to confirmation of the Plan on these

grounds, among others.  In their recent confirmation brief, Plan Proponents argued that Fireman's

Fund has no right to setoff because its liability under the Bond is allegedly contingent, since the

<u>Edwards</u> judgment is on appeal, and that if the Surety Claim were placed in Class 9 it would be

subject to disallowance as contingent under § 502(e)(1)(B) of the Bankruptcy Code.

 Fireman's Fund now seeks relief from the automatic stay to permit the <u>Edwards</u>

appeal to proceed.  Doing so will conclusively determine, without any further litigation in this

Court, the amount of Fireman's Fund liability under the Bond.  Either Fireman's Fund's liability

will be fixed in an amount certain, removing any contingency allegedly affecting the Surety

Claim, or Fireman's Fund will be relieved entirely of any liability under the Bond, thus

extinguishing the Surety Claim against Grace.  That alone should be compelling enough to grant

the relief requested.

 As a result, "cause" exists to lift the stay to permit the <u>Edwards</u> appeal to proceed.

First, Grace will not suffer any prejudice if the appeal proceeds, no matter how it turns out;

indeed, it will directly benefit.  If the <u>Edwards</u> judgment is affirmed, then Fireman's Fund – not

Grace – will pay the judgment pursuant to the Bond (subject, of course, to the terms of the Bond).

If, on the other hand, the <u>Edwards</u> judgment is reversed or vacated, the claimants would assert

their claims against the Trust – not Grace.  Either way, Grace would not be affected.

 Second, a decision in the appeal will facilitate the administration of Grace's estate

by fixing the amount of both the <u>Edwards</u> judgment and Fireman's Fund's Surety Claim.

Completing the appeal will also fix the amount of Wachovia Bank's proof of claim No. 3068 with

respect to the letter of credit it issued to secure Grace's obligations under the Indemnity Agreement. Moreover, resolving the Surety Claim and any related setoff issues may assist Fireman's Fund and the Plan Proponents in negotiating a settlement of the parties' disputes concerning insurance coverage under the Fireman's Fund liability policies, since the amount of any setoff would be determined.

Third, continuing to stay the appeal would unduly prejudice Fireman's Fund. Specifically, the Plan Proponents contend that because the Surety Claim is presently contingent, Fireman's Fund has no enforceable right to setoff its coverage obligations against Grace's obligations under the Indemnity Agreement. The Plan Proponents have also asserted that the Surety Claim is subject to being disallowed under § 502(e)(1)(B) and discharged if Fireman's Fund's claim remains contingent and is not channeled to the Trust. Although Fireman's Fund disputes Plan Proponents' contentions, it nevertheless faces a serious risk that the alleged mere contingency of its claim provides a basis for the wholesale elimination of its contractual right to recovery. In that event, Grace would reap the benefits of the Bond – payment of up to $43 million – while entirely evading its reciprocal contractual obligation to repay that amount, in full, to Fireman's Fund. That result would be unjust, and flies in the face of longstanding principles of suretyship law.

Relief from stay should, therefore, be granted in order to resolve the uncertainty regarding the Edwards appeal and Fireman's Fund's Surety Claim.

As noted above and in Fireman's Fund's plan objections, the Plan is designed to require Fireman's Fund, not Grace, to bear the cost of any final judgment in favor of the Edwards plaintiffs. That turns suretyship law on its head. The Indemnity Agreement that Grace signed when it procured the Bond from Fireman's Fund allows Fireman's Fund to establish a reserve to cover any payment it may be required to make, and to demand that Grace collateralize such

reserve by depositing a sum of money with Fireman's Fund sufficient to fund the entire reserve.[5]

Should Grace fail to do so, the Indemnity Agreement empowers Fireman's Fund to sue Grace and

to authorize any attorney in America to confess judgment against Grace.[6]   The purpose of such

provisions – which courts readily enforce via specific performance[7] – is to ensure that a surety

like Fireman's Fund is not required to put its own funds at risk to pay the principal's obligation.

To uphold the contractual intent of Fireman's Fund and Grace, the Court should also lift the stay

to allow Fireman's Fund to pursue its contractual remedies – including by filing suit against

Grace, if necessary, confessing judgment on Grace's behalf and executing against Grace's assets

– so that Fireman's Fund is not placed at risk of being required to perform its end of the bargain

while Grace refuses to provide its reciprocal performance.

## **FACTUAL BACKGROUND**

A.    **The Supersedeas Bond Fireman's Fund Posted To Secure Grace's
       Appeal Of The <u>Edwards</u> Judgment**

In April, 2000, Grace suffered a judgment in Texas state court under which the

<u>Edwards</u> plaintiffs were awarded compensatory damages against Grace totaling $21 million,

punitive damages against Grace in the amount of $21.5 million, and post-judgment interest at the

rate of 12 percent per annum.[8]   Interest accrued to date on the compensatory damages portion of

---

[5]    Indemnity Agreement, ¶ 3 (Exhibit 3 to the Declaration of Richard Kowalczyk (the "Kowalczyk Decl."), which is Exh. E (Parts 1 and 2) to the accompanying Declaration Of Leslie A. Davis In Support Of Fireman's Fund Insurance Company's Motion For Relief From The Automatic Stay To Allow Completion Of Debtors' State Court Appeal from The <u>Edwards</u> Judgment ("Davis Decl.").

[6]    *Id.*, ¶ 22.

[7]    *See, e.g.*, <u>Safeco Ins. Co. v. Schwab</u>, 739 F.2d 431, 433 (9th Cir. 1984) ("Sureties are ordinarily entitled to specific performance of collateral security clauses").

[8]    *See* Final Judgment, <u>Edwards, *et al.* v. Pittsburgh Corning Corp., *et al.*</u>, No. B-150,896-J (Tex. Dist. Ct., Jefferson Cty., 60th Judicial Dist.), §§ II-V (Exhibit 3 to the Kowalczyk Decl.

(continued…)

the judgment amounts to approximately $22 million.  Grace timely appealed the judgment.

Under Texas law, a judgment creditor may immediately begin execution against a judgment debtor's assets, notwithstanding the pendency of an appeal, unless collateral is posted to secure payment of the judgment in the event the appeal is unsuccessful and the judgment debtor fails to satisfy the judgment.[9]  In order to stay execution of the judgment against its assets while it appealed, Grace sought and obtained the Bond from Fireman's Fund.  The Bond is a supersedeas bond in the amount of $43,038,931.91.

As an express precondition to its willingness to issue the Bond, Fireman's Fund required that Grace enter into the Indemnity Agreement, pursuant to which Grace is obligated to reimburse Fireman's Fund for 100 percent of any payment Fireman's Fund makes under the Bond.  The Indemnity Agreement states, in pertinent part:

> The Indemnitors [Grace] will indemnify the Surety [Fireman's Fund] against any and all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur by reason of, or in consequence of the execution of such Bonds and any renewal, continuation or successor thereof, including but not limited to sums paid or liabilities incurred in enforcing the terms hereof, in procuring or attempting to procure release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.[10]

Consistent with the principle that Grace, and not Fireman's Fund, is the primary

---

(…continued)

The compensatory damage portions of the judgment were awarded jointly and severally against Grace and Pittsburgh Corning Co., which filed for bankruptcy before the appeal.

[9]     *See* Mid-Century Ins. Co. of Texas v. Boyte, 80 S.W.3d 546, 548 (Tex. 2002) ("Parties become judgment debtor and judgment creditor at the entry of the trial court's judgment, not when all appeals are finalized"); Tex. R. App. P. 24.1 (setting forth the manner in which a judgment debtor can suspend enforcement of a judgment, including by "filing with the trial court clerk a good and sufficient bond" or "making a deposit with the trial court clerk in lieu of a bond"); Tex. Civ. Proc. Code § 51.001 (defining "security" as "a bond or deposit posted, as provided by the Texas Rules of Appellate Procedure, by a judgment debtor to suspend execution of the judgment during appeal of the judgment").

[10]     Indemnity Agreement at ¶ 2, attached at Exh. 3 to the Kowalczyk Decl.

obligor to the Edwards plaintiffs, the Indemnity Agreement also permits Fireman's Fund to establish a reserve to cover "any liability, claim asserted, suit or judgment under any such Bond" and, if Fireman's Fund establishes such a reserve, to require Grace to "immediately upon demand . . . deposit with the Surety a sum of money equal to such reserve and any increase thereof as collateral security on such Bond."[11]  Fireman's Fund has the right to use that deposit for the payment of any liability under the Bond.

Grace has never contended that the Indemnity Agreement is unenforceable.  In fact, Grace concedes that it is not aware of any facts suggesting that the Indemnity Agreement is unenforceable, and thus does not contend that the Indemnity Agreement is unenforceable.[12]

On April 13, 2001, after learning of Grace's bankruptcy filing and the consequent automatic stay, the Texas Court of Appeals suspended the appeal, and entered an order stating that "for administrative purposes this case is abated and will be treated as closed."[13]  At that time, Grace had already filed its opening appellate brief, but no other proceedings had taken place.  The appeal remains abated.

### B.    Fireman's Fund's Surety Claim Against Grace

On March 27, 2003, Fireman's Fund timely filed its proof of claim in this bankruptcy case, asserting the Surety Claim.[14]  The proof of claim asserts an unsecured claim for the full amount of the Bond, $43,038,931.91, which is the maximum amount that Grace could be

---

[11]    *Id*. at ¶ 3.

[12]    *See* Transcript of May 13, 2009 Deposition of Richard Finke ("Finke Dep.") at 277:20-278:2, Exh. A to the Davis Decl.  *See also id*. at 283:15-21.

[13]    Opinion, W.R. Grace & Co. v. Edwards, No. 06-00-00112-CV (Tex. App. April 13, 2001), attached as Exh. 4 to the Kowalczyk Decl.

[14]    *See* Kowalczyk Decl., Exh. 3.

obligated to pay to Fireman's Fund pursuant to the Indemnity Agreement, should Fireman's Fund

incur any loss as a result of furnishing the Bond.  The proof of claim also asserts a secured claim

based on a $13 million letter of credit provided by Wachovia Bank to secure Grace's obligations

to Fireman's Fund under the Indemnity Agreement, including the payment of premiums.

Fireman's Fund has already drawn approximately $1.8 million on the letter of credit due to

Grace's failure to pay premiums owed on the Bond, leaving collateral of approximately

$11,204,000 available.  No one has objected to Fireman's Fund's proof of claim, hence the claim

is deemed allowed.[15]

   The amount of Fireman's Fund's Surety Claim depends on (i) the <u>Edwards</u>

judgment becoming final after being affirmed on appeal and (ii) Grace then failing to pay the

judgment.  Grace, of course, would be the primary obligor on any final judgment in favor of the

<u>Edwards</u> plaintiffs; Fireman's Fund, as the surety under the Bond, is only a secondary obligor,

obligated to pay only if Grace fails to do so.  The purpose of the Indemnity Agreement is to

ensure that the obligation to pay the judgment ultimately remains with Grace, where it belongs.

   The amount of Grace's obligation to Fireman's Fund under the Indemnity

Agreement is presently unliquidated, because it is uncertain how much, if anything, Fireman's

Fund may be required to pay under the Bond.  Grace could owe Fireman's Fund as much as

$43,038,931.91, if (i) the appeal is reinstated on the docket of the Texas Court of Appeals, (ii) the

trial court's judgment in favor of appellees is affirmed (both in the Texas Court of Appeals and in

any subsequent proceedings before the Texas Supreme Court), (iii) Grace fails to pay the final

judgment, and (iv) Fireman's Fund is required to pay the judgment pursuant to the Bond.  The

amount Grace would then owe Fireman's Fund would be the full amount paid by Fireman's Fund

---

[15] *See* 11 U.S.C. § 502(b).

under the Bond (*i.e.*, the amount of the judgment and accrued post-judgment interest (but likely excluding punitive damages), up to the face amount of the Bond), less whatever remaining collateral Fireman's Fund is able to draw under the Wachovia letter of credit.

However, if Grace were to prevail on appeal (either because the judgment is reversed on the merits, or because the case is remanded for a new trial due to procedural irregularities or for other reasons), then the existing judgment would be vacated and Fireman's Fund would be released from any obligation under the Bond.  In that event, the Edwards plaintiffs would be required under the Plan (if it is confirmed) to submit their claims to the Trust for resolution under the TDPs, and they would lose any claim to post-judgment interest.[16]

Because, in the words of Grace's Rule 30(b)(6) witness, the Edwards trial "had been infected with errors,"[17] the likelihood of Grace's appeal succeeding is very high.  Indeed, "Grace believes it has a very strong position on the appeal."[18]  Grace's appellate brief sets forth 14 separate grounds requiring that the judgment be either reversed and rendered in favor of Grace, reversed and remanded for a new trial, or remitted to reduce the damage award.  Those issues include the following:

- The 69-member jury panel from which the twelve jurors were ultimately selected included 31 people who were plaintiffs in an asbestos action, were related to or otherwise connected with persons with asbestos claims, or had themselves been screened for asbestos-related disease.  Grace's motion to strike the panel was

---

[16]    *See, e.g.*, Transcript of May 4, 2009 Deposition of Peter Van N. Lockwood ("Lockwood Dep.," Exh. B to the Davis Decl.) at 613:14-614:20; Transcript of May 15, 2009 Deposition of David Austern ("Austern Dep.," Exh. C to the Davis Decl.) at 200:9-201:20.

[17]    Finke Dep. at 267:20-24.

[18]    *Id*. at 283:10-11.

improperly denied.

- One person who was seated as a juror failed to reveal during voir dire that she and her husband were working with an attorney and actively preparing to file an asbestos personal injury lawsuit against Grace. That juror and her husband actually filed their lawsuit **during the _Edwards_ trial**. When this fact was brought to the court's attention during the trial, the court improperly refused to excuse the juror from the panel.

- Plaintiffs failed to prove exposure to any Grace product. The plaintiffs, who worked at a U.S. Steel plant in Alabama, were all unable to identify a single Grace product that they used or handled. The plaintiffs did not produce any invoices, bills of lading, or other records showing that any Grace product was sold or shipped to the U.S. Steel plant where they worked.

- The court erroneously refused to admit evidence presented by Grace which would have shown the plaintiffs' employer's knowledge of asbestos hazards, conditions in the workplace such as warning signs, and practices such as requiring the use of respirators, dust controls, and air monitoring, all of which was relevant to prove potential negligence on the part of the plaintiffs' employer, rather than by Grace.

- The court improperly consolidated the claims of five plaintiffs with different types of medical claims, including a wrongful death claim, a lung cancer case, and three non-malignancy cases. The consolidation resulted in a confusing mix of burdens of proof and also improperly included punitive damages issues relating to the wrongful death case with solely compensatory damage issues relating to the four injury actions.[19]

---

[19]    *See* Brief of Appellant W.R. Grace & Co., filed in <u>W.R. Grace & Co. v. Edwards, *et al.*</u>, No. 06-00-00112-CV (Tex. App.), Exh. 5 to the Kowalczyk Decl.

If Grace is successful on the appeal in any respect, Fireman's Fund would be discharged of any liability under the Bond, and its Surety Claim under the Indemnity Agreement would be extinguished, thus eliminating any further potential liability of Grace to Fireman's Fund under the Indemnity Agreement. A ruling reversing the judgment and rendering judgment in favor of Grace would also eliminate any liability of the estate to the Edwards plaintiffs.

### C.    Fireman's Fund's Right To Setoff

Pre-petition, Fireman's Fund issued comprehensive general liability insurance policies to Grace that Grace now asserts provide coverage for its liability to asbestos bodily injury claimants. Grace seeks to apply the proceeds of the Fireman's Fund policies, if any, to fund its proposed § 524(g) trust. Grace's claims to the insurance proceeds are pre-petition claims because the policies were issued long before Grace filed for bankruptcy.

Fireman's Fund's Surety Claim against Grace under the pre-petition Indemnity Agreement is also a pre-petition claim. Accordingly, Fireman's Fund has an absolute right under § 553(a) of the Bankruptcy Code to use the amount of Grace's unsatisfied payment obligation under the Indemnity Agreement as an offset to reduce the amount of insurance policy proceeds that Fireman's Fund may be obligated to pay under the policies it issued to Grace.

Plan Proponents contend that Fireman's Fund has no right to setoff because its obligation under the Bond allegedly is contingent.[20] Plan Proponents further contend that if the Surety Claim is not channeled to the Asbestos PI Trust and remains contingent, it is subject to

---

[20]    *See* Plan Proponents' Main Brief In Support Of Plan Confirmation (Dkt. No. 22733) at 140 ("FFIC's Surety Claim will remain contingent until FFIC pays, which it may never do, the *Edwards* judgment pursuant to the Bond. Prior to that time, FFIC does not have a right of setoff under applicable state law") (footnotes and citations omitted). Fireman's Fund disagrees with Plan Proponents' contention.

being disallowed under § 502(e)(1)(B) of the Bankruptcy Code and discharged, "leaving FFIC with no claim to setoff against its obligations to the Debtors."[21]  The uncertainty created by Plan Proponents' contentions itself warrants relief from the stay so that Fireman's Fund can fix its liability, if any, under the Bond.

## ARGUMENT

Section 362(d)(1) of the Bankruptcy Code requires a court to grant relief from the automatic stay upon a showing of "cause."[22]  The Code does not define "cause" and "[t]here is no rigid test for determining whether sufficient cause exists to modify an automatic stay."[23] Therefore, "courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay."[24]  As Judge Gross of this Court recently explained:

This Court has developed a three-prong balancing test to determine whether to grant relief from the stay:

1.    Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;

2.    Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and

3.    The probability of the creditor prevailing on the merits.

This Court has also considered general policies underlying the automatic stay when deciding whether to grant a motion to lift the stay.[25]

---

[21]    *Id*. at 140-41 (citations omitted).

[22]    11 U.S.C. § 362(d)(1).

[23]    American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 152 B.R. 420, 424 (D. Del. 1993).

[24]    In re The SCO Group, Inc., 395 B.R. 852, 856 (Bankr. D. Del. 2007).

[25]    *Id.* at 857 (citation omitted).

Applying this balancing test to the circumstances here conclusively establishes that "cause" exists to lift the stay so that the Edwards appeal can proceed.[26]

## I.    The Three-Prong Balancing Test Supports Granting Relief From The Automatic Stay So That The Edwards Appeal Can Proceed

### A.    Grace Will Not Be Greatly Prejudiced If The Edwards Appeal Proceeds

The first part of the three-part balancing test examines "[w]hether any great prejudice to either the bankrupt estate or the debtor will result" if the stayed lawsuit proceeds.[27] "In all of the cases addressing relief from the stay under § 362(d)(1) to allow the commencement or continuation of non-bankruptcy litigation, the overriding consideration is whether the debtor's estate or the debtor will be prejudiced if the litigation is permitted in another forum.  Absent a showing of prejudice, relief has generally been granted."[28]

---

[26]    The Edwards appeal involves state law issues of alleged liability that are wholly unrelated to bankruptcy law.  Under 28 U.S.C. § 1334(c), such non-core issues are most appropriately adjudicated in state court, and bankruptcy courts routinely lift the automatic stay to permit the adjudication of non-core claims in state court.  See, e.g., Hohol v. Essex Indus., Inc. (In re Hohol), 141 B.R. 293, 298 (M.D. Pa. 1992) (court granted relief from the automatic stay, noting that "the resolution of the Common Pleas action involves issues of state law, unrelated to bankruptcy law, with which the state courts are familiar"); Peerless Ins. Co. v. Rivera, 208 B.R. 313, 314 (D.R.I. 1997) (granting lift-stay motion to permit an insurer to proceed with a state court declaratory judgment action regarding insurance coverage); OMNA Med. Partners, Inc. v. Carus Healthcare, P.A. (In re OMNA Med. Partners, Inc.), 2000 WL 33712302, at *3 (Bankr. D. Del. June 12, 2000) (modifying automatic stay to allow parties to proceed with state court litigation because "the issues [raised] are simply contract interpretation issues and are, by the terms of the contract, governed by Texas law").  See also H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 341 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6297 ("It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere").

[27]    SCO Group, 395 B.R. at 857.

[28]    In re Ware Window Co., 2003 WL 21786015, at *3 (Bankr. E.D. Pa. July 28, 2003).  See also Hohol, 141 B.R. at 298 ("'Where neither prejudice to the bankruptcy estate nor interference with the bankruptcy proceeding is demonstrated, the desire of the stayed party to proceed in another forum is sufficient cause to warrant lifting the automatic stay'").

Here, Debtors will not be prejudiced – "greatly" or otherwise – if the stay is lifted so that the Edwards appeal is allowed promptly to proceed to final resolution.  This is true regardless of how the Texas Court of Appeals rules.  At the end of the day, Grace is nothing more than a bystander that is completely unaffected by the outcome of the appeal since, absent a significant modification to the Plan and/or reclassification of the Surety Claim, Grace itself will not be prejudiced by the outcome of the Edwards appeal.

Specifically, Grace will certainly not be prejudiced if its appeal is successful and the Edwards judgment is vacated or reversed, in whole or in part.  In that circumstance, Fireman's Fund would be discharged from any obligation under the Bond, Grace would have no obligation to Fireman's Fund under the Indemnity Agreement, and the Edwards claimants would, just like all other asbestos PI claimants, assert their claims against the Trust pursuant to the TDP – not against Grace.  Thus, Grace would not be called upon to pay anything to any party if the Edwards judgment is vacated or reversed – a direct benefit to Grace.

Grace will also not be prejudiced if the Edwards judgment is affirmed.  In that circumstance, the Plan provides that Fireman's Fund is to pay the judgment under the Bond.  That would fix the amount of the Surety Claim against Grace under the Indemnity Agreement. Fireman's Fund would then assert that it is entitled to reduce the amount of any obligation it has under its liability policies by setting off the amount owed to it by Grace under the Indemnity Agreement.  But that invocation of setoff rights by Fireman's Fund would not directly impact Grace because, under the Plan, Grace is transferring to the Trust all of its insurance rights, including its rights to any insurance proceeds paid by Fireman's Fund.[29]  Thus, it is the Trust, not

---

[29]    *See* Plan § 7.2.2(d).

Grace, that would be affected by any setoff asserted by Fireman's Fund.  If the Trust were somehow able to defeat Fireman's Fund's setoff claim, then – according to Plan Proponents – Fireman's Fund's claim would be a Class 6 claim payable by the Trust, not by Grace.

There is only one scenario under which Grace might be called upon to pay Fireman's Fund:  if the <u>Edwards</u> judgment is affirmed and Fireman's Fund succeeds in persuading this Court that its claim is a Class 9 general unsecured claim, payable by Grace.   But Grace cannot plausibly claim that it would be "greatly prejudiced" by the prospect of being required to honor its contractual obligations according to the terms of its Plan and the classification requirements of the Bankruptcy Code.  It surely has no right to have the <u>Edwards</u> appeal stayed indefinitely just so that it can argue that the Surety Claim should be disallowed as "contingent" pursuant to § 502(e)(1)(B) of the Code.[30]

The fact that Grace might incur some attorneys' fees to complete the <u>Edwards</u> appeal does not warrant a finding that lifting the stay will "greatly prejudice" Grace.  Because Grace has already filed its opening appellate brief, the only additional costs Grace might incur will be for an optional reply brief (unless the Texas court elects to decide the case before a reply brief is filed[31]) and oral argument (if permitted by the Texas court).[32]  Incurring those minimal

---

[30]     *See also* Section III, below.

[31]     Tex. R. App. P. 38.3 provides:  "The appellant may file a reply brief addressing any matter in the appellee's brief.  However, the appellate court may consider and decide the case before a reply brief is filed."

[32]     Tex. R. App. P. 39.1 provides:  "A party who has filed a brief and who has timely requested oral argument may argue the case to the court unless the court, after examining the briefs, decides that oral argument is unnecessary for any of the following reasons:  (a) the appeal is frivolous; (b) the dispositive issue or issues have been authoritatively decided; (c) the facts and legal arguments are adequately presented in the briefs and record; or (d) the decisional process would not be significantly aided by oral argument."

costs does not constitute "great prejudice," particularly for a company with Grace's resources.  As the Delaware district court noted in <u>Continental Airlines</u>, where the resolution of stayed litigation "would involve, at most, the filing of a motion with briefs and perhaps oral argument," such expense "does not, by itself, justify denying [the movant's] requested relief from the automatic stay."[33]

Further supporting the conclusion that lifting the stay will not greatly prejudice Grace is the line of cases holding that lift-stay relief should be granted on an essentially routine basis where a judgment creditor wants a debtor to proceed with a bonded appeal.  For example, in deciding to grant asbestos claimants lift-stay relief so that the debtor would be required to prosecute a bonded appeal, the <u>Johns-Manville</u> court stated:  "Where a plaintiff seeks modification of the automatic stay imposed by 11 U.S.C. § 362 solely to establish the liability of the debtor to permit the plaintiff to proceed against a surety, insurer, or other third party, cause exists for granting this relief."[34]  Similarly, the Seventh Circuit has stated, "debtor-defendants suffer little prejudice when they are sued by plaintiffs who seek nothing more than declarations of liability that can serve as a predicate for a recovery against insurers, sureties, or guarantors."[35]

---

[33]     <u>Continental Airlines</u>, 152 B.R. at 425.  *See also* <u>In re Keene Corp.</u>, 171 B.R. 180, 185 (Bankr. S.D.N.Y. 1994) (an asbestos debtor's anticipated litigation costs, if the stay were lifted to permit a pre-petition appeal filed by the debtor to proceed, do not "rise to the level of 'great prejudice'").

[34]     <u>Johns-Manville Corp. v. The Asbestos Litig. Group (In re Johns-Manville Corp.)</u>, 26 B.R. 420, 432 (Bankr. S.D.N.Y. 1983), *aff'd in part*, 40 B.R. 219 (S.D.N.Y. 1984), and *rev'd in part on other grounds*, 41 B.R. 926 (S.D.N.Y. 1984).  *See also* <u>Keene</u>, 171 B.R. at 184 ("This Court is not prepared to hold that a judgment creditor will always make out a *prima facie* case of 'cause' merely by alleging that the debtor posted a supersedeas bond to stay the enforcement of his or her non-final judgment, although this will frequently be the case").

[35]     <u>International Bus. Mach. v. Fernstrom Stor. & Van Co. (In re Fernstrom Stor. & Van Co.)</u>, 938 F.2d 731, 736 (7th Cir. 1991).

The fact that it is the surety here, and not the judgment creditor, who is seeking lift-stay relief to permit a bonded appeal to proceed should not make any difference in concluding that Grace will not suffer great prejudice if the stay is lifted; indeed, it weighs strongly in favor of a finding of even less prejudice to Debtors.

> **B.    Fireman's Fund Will Suffer Great Prejudice Unless The Stay Is Lifted To Permit The <u>Edwards</u> Appeal To Proceed**

While Grace will not suffer any prejudice if the stay is lifted to permit the <u>Edwards</u> appeal to be resolved, Fireman's Fund will suffer significant prejudice if the stay remains in place. Specifically, Fireman's Fund faces the risk that its Surety Claim will be disallowed and discharged under Code § 502(e)(1)(B), if its liability under the Bond for the <u>Edwards</u> judgment is determined to be contingent, yet it would still have to pay under the Bond if the <u>Edwards</u> judgment is later affirmed. Given that payment in full under the Indemnity Agreement was an agreed precondition of Fireman's Fund's issuance of the Bond, Fireman's Fund should not be called upon to fully perform under the Bond without any assurance that Grace will perform its concurrent obligations under the Indemnity Agreement.

First, maintaining the stay will prejudice Fireman's Fund by ensuring that the amount of its liability under the Bond, and hence the amount of its Surety Claim against Grace, remains undetermined. That alleged contingency is at the heart of Plan Proponents' arguments that the Plan may be confirmed despite Fireman's Fund's objection that Plan eradicates its setoff rights: Plan Proponents argue that Fireman's Fund has no current right to setoff because it has not yet paid the <u>Edwards</u> judgment under the Bond.[36] Further, in response to Fireman's Fund's

---

[36]    *See* Plan Proponents' Main Brief In Support Of Plan Confirmation (Dkt. No. 22733) at 140 ("FFIC's Surety Claim will remain contingent until FFIC pays, which it may never do, the *Edwards* judgment pursuant to the Bond. Prior to that time, FFIC does not have a right of setoff

(continued…)

argument that the Surety Claim should be reclassified as a Class 9 claim and paid in full, instead

of being treated as a Class 6 claim that will be channeled to the Trust, Plan Proponents argue that

because the Surety Claim is allegedly presently contingent, "it would be disallowed under section

502(e)(1)(B) and discharged under section 1141(d)(1)(A) leaving FFIC with no claim to setoff

against its obligations to the Debtors."[37]

        Plan Proponents' arguments highlight the importance of allowing the Edwards

appeal to proceed in order to eliminate both the alleged contingency affecting the Surety Claim

and the prejudice FFIC will suffer if the Surety Claim is not allowed.  Grace has benefited for

years from the protection afforded by the Bond against execution of the Edwards judgment.  It

continues to rely on the Bond, and expects that if the Edwards judgment is affirmed, Fireman's

Fund will pay it.  To obtain the Bond, Grace promised in the Indemnity Agreement to indemnify

Fireman's Fund for all amounts paid under the Bond.  Given this, Grace should not be permitted

to insist that the Bond remain in effect indefinitely while, at the same time, it purports to eliminate

one of Fireman's Fund's lawful avenues of recovery under the Indemnity Agreement by keeping

the stay in place in order to defeat Fireman's Fund right to setoff.  Any attempt by Grace to

prevent Fireman's Fund from eliminating the alleged contingency that is purportedly affecting its

rights is highly inequitable and should be soundly rejected.

        To avoid just such inequity, in the Indemnity Agreement Grace authorized

Fireman's Fund, "in its sole discretion," "to take such . . . steps as the Surety [Fireman's Fund]

---

(…continued)

under applicable state law") (footnotes and citations omitted).  Fireman's Fund disputes Plan
Proponents' contention.

[37]     *Id*. at 141 (citations omitted).

may deem necessary or proper to obtain release from liability from any such Bond."[38]  This language reasonably may be construed as requiring Grace to consent to this lift-stay motion because that is a step that Fireman's Fund wishes to take to obtain release from its liability under the Bond.

The analysis and decision of the bankruptcy court in Countryside Manor, while not directly on point, is nevertheless instructive regarding the prejudice that Fireman's Fund may suffer if the stay is continued.[39]  In Countryside Manor, the court lifted the automatic stay to permit creditors to file a post-petition counterclaim in a lawsuit the debtor had filed against them pre-petition in state court.  The Countryside Manor court began by noting that "the counterclaim, as described, clearly qualifies as an offset of a mutual debt."[40]  Observing the "significant purpose of the allowance of setoffs in the bankruptcy context 'based upon long-recognized rights of mutual debtors,'" the court held that "[r]efusal to lift the stay prejudices the [creditors] and is inequitable because they will be unable to assert their claim in state court."[41]  The court then quoted a Second Circuit opinion which had explained that "[t]he statutory remedy of set off should be enforced. . . .  [T]he court has an equitable duty to grant a setoff when a debtor moves outside the confines of the bankruptcy court in an attempt to reap the benefits but circumvent the burdens in another forum."[42]  The court also found that "Debtor has established no hardship to the

---

[38]    Indemnity Agreement, ¶ 6(c), Exh. 3 to the Kowalczyk Decl.

[39]    Prindle v. Countryside Manor, Inc. (In re Countryside Manor, Inc.), 188 B.R. 489, 491 (Bankr. D. Conn. 1995).

[40]    Id. at 491.

[41]    Id.

[42]    Id., quoting In re Bohack Corp., 599 F.2d 1160, 1165, 1168 (2d Cir. 1979).

Debtor's estate if the [creditors] are allowed to liquidate the counterclaim in the state court."[43]

The amount of the creditors' claims in <u>Countryside Manor</u>, like the Surety Claim here, were undetermined because the state court had yet to rule on them.  Indeed, they had not even been asserted yet.  The bankruptcy court nevertheless recognized that the defendants' contingent right to setoff justified relief from the stay.  By seeking to have the <u>Edwards</u> appeal proceed to its conclusion, Fireman's Fund is simply trying to liquidate its Surety Claim and preserve its right to setoff or, if Grace's appeal is successful, be relieved of its obligations under the Bond.  The uncertainty relating to Fireman's Fund's claim, and its potential adverse impact on Fireman's Fund's setoff rights, constitutes prejudice that justifies lifting the stay.[44]

Second, Fireman's Fund is entitled to adequate protection of its setoff claim, but it is clear from Plan Proponents' attempts to hamper or eliminate Fireman's Fund's right to recovery on the Surety Claim that such adequate protection is not forthcoming.  Accordingly, Fireman's Fund is entitled to lift-stay relief.  "Under the Bankruptcy Code, a right of setoff is similar to a secured claim."[45]  If a secured claim or right of setoff is not adequately protected, the Court is required to grant relief from stay.[46]  Because the Plan Proponents' confirmation arguments and the Plan itself establish that Fireman's Fund will be significantly prejudiced if it is

---

[43]     *Id.*

[44]     *See* <u>SCO Group</u>, 395 B.R. at 859 (finding prejudice supporting entry of a lift-stay order where "without a ruling on the Liability Issues [in pending federal district court litigation], Novell's rights in these bankruptcy cases remains undetermined and the value of Novell's claim will remain a troubling issue for the Court, Novell and Debtors").

[45]     <u>United States v. Perry (In re Perry)</u>, 26 B.R. 599, 600 (Bankr. E.D. Pa. 1983).

[46]     *Id.*, citing 11 U.S.C. § 362(d).  Section 362(d)(1) states that the court "shall grant relief from stay . . . [f]or cause, including lack of adequate protection").  *See also* <u>In re Rocchio</u>, 125 B.R. 345, 347 (Bankr. D.R.I. 1991) (a debtor's failure to provide adequate protection or adequate assurance of future performance constitutes "cause" under § 362(d)(1) for relief from the automatic stay).

forced to continue performing its obligations under the Bond under these circumstances, the stay should be lifted in order to provide Fireman's Fund with adequate protection.

Third, the stay should be lifted to the extent that the Indemnity Agreement is an executory contract. Because Grace cannot provide Fireman's Fund with adequate assurance of its future performance under the Indemnity Agreement, Fireman's Fund is entitled to have the stay lifted under § 362(d)(1). Grace recently argued, in connection with seeking this Court's approval of a stipulation with Travelers, that certain indemnity contracts backing appeal bonds issued by Travelers are executory contracts that it may assume.[47] Grace asserted that assuming the Travelers indemnity contracts was "beneficial to the Debtors' estates because it assured that certain bonds issued by Travelers would remain posted to back the various obligations of the Debtors which require such Bonds."[48] The Fireman's Fund Bond and related Indemnity Agreement are no different than the Travelers bond and indemnity contracts that Grace seeks to assume. Grace apparently wishes to assume the Bond and Indemnity Agreement at issue here, since the Plan requires the Edwards plaintiffs to seek recovery from the Bond before they are permitted to seek recovery from the Trust.[49] But Grace cannot assume those contracts without first providing Fireman's Fund with adequate assurance that Grace will perform its obligations to

---

[47]    *See* Stipulation Regarding Treatment Of Certain Claims Of The St. Paul Companies, Inc., Travelers Casualty And Surety Company Of America And Certain Of Their Affiliates And Subsidiaries Under The Plan (Dkt. No. 22745), at 1.

[48]    Motion Of The Debtors For Entry Of An Order Approving Stipulation Regarding Treatment Of Certain Claims Of The St. Paul Companies, Inc., Travelers Casualty And Surety Company Of America And Certain Of Their Affiliates And Subsidiaries Under The Plan (Dkt. No. 22745) at 6.

[49]    TDP § 5.2(b) ("Holders of Pre-Petition Liquidated Claims that are secured by letters of credit, appeal bonds, or other security or sureties shall first exhaust their rights against any applicable security or surety before making a claim against the PI Trust").

Fireman's Fund under the Indemnity Agreement. Plan Proponents' arguments that seek to reduce or eliminate Fireman's Fund's recovery on its Surety Claim demonstrate that Grace has not provided the required adequate assurance of its performance. Relief from the stay should therefore be granted so that the Edwards appeal can be completed, thereby eliminating the alleged contingency that forms the basis of Plan Proponents' arguments that Grace is excused from fully performing under the Indemnity Agreement.

Simply stated, Fireman's Fund will be greatly prejudiced if Grace is able to demand that Fireman's Fund perform under a $43 million bond at the same time it is seeking to (i) relegate the Surety Claim to Class 6 cents-on-the-dollar status, (ii) eradicate Fireman's Fund's setoff rights under the Plan, (iii) argue that Fireman's Fund has no setoff rights because its liability to the Edwards claimants under the Bond is allegedly presently contingent, and (iv) threaten Fireman's Fund with disallowance of its Surety Claim because it is allegedly contingent yet, at the same time, denying FFIC the opportunity to liquidate it. Lifting the stay of the Edwards appeal so that Fireman's Fund's liability under the Bond can either be fixed or extinguished is necessary to avoid such prejudice.

### C.    The Edwards Appeal Has A High Probability Of Success On The Merits.

The final prong of the three-part balancing test examines whether the proposed litigation for which stay relief is requested has some likelihood of success on the merits. This inquiry is intended to protect debtors from being forced to engage in frivolous litigation. Given that limited purpose, "the required showing is very slight."[50]

---

[50]    Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.), 141 B.R. 574, 578 (Bankr. D. Del. 1992). *See also* SCO Group, 395 B.R. at 859 ("Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case").

The "likelihood of success" element is easily satisfied here. Grace's opening appellate brief sets forth 14 separate issues demonstrating that the trial which led to entry of the Edwards judgment was infected with errors justifying reversal. By its own words, Grace has made clear that it has a very strong position on appeal, and that the appeal should be pursued.[51] Moreover, a Texas appellate specialist retained by Fireman's Fund has opined that "there is a 60-70% chance that Grace will obtain some relief on appeal, either in the form of a reversal and rendition of judgment or, more likely, a reversal and remand for new trial."[52] If Grace obtains any relief on appeal, then Fireman's Fund will be relieved of any liability under the Bond.

On these facts alone, there is sufficient basis for finding a likelihood of success on the merits of the appeal.

## II.    Granting Relief From The Stay To Permit The Edwards Appeal To Proceed Is Consistent With The Policies Underlying § 362

Section 362 was designed to provide a breathing spell for debtors to promote the possibility for a successful reorganization. Congress enacted the automatic stay provision "'to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.'"[53] The automatic stay, however, is "not meant to be indefinite or absolute"[54] or to shield a debtor from all

---

[51]    *See* Finke Dep. at 283:10-12 (Grace's Rule 30(b)(6) designee testifying that "Grace believes it has a very strong position on appeal and that the appeal should be pursued").

[52]    *See* Davis Decl., Exh. F (Declaration of Mike A. Hatchell In Support Of Motion By Fireman's Fund Insurance Company Pursuant To Bankruptcy Rule 3018 For Temporary Allowance Of Proof Of Claim No. 15175 (Dkt. No. 21788), ¶ 6). *See also id.* ¶¶ 7-10.

[53]    SCO Group, 395 B.R. at 856, quoting St. Croix Condominium Owners v. St. Croix Hotel, 682 F.2d 446, 448 (3d Cir. 1982).

[54]    Rexene Prods. Co., 141 B.R. at 576, citing Wedgewood Inv. Fund Ltd. v. Wedgewood
(continued…)

litigation.[55]  In deciding whether lifting the automatic stay to allow pending non-bankruptcy

litigation to proceed is consistent with the policies underlying the automatic stay, Delaware

bankruptcy courts also examine the factors set out by the Second Circuit in Sonnax Industries,

which include:

    1.    whether relief would result in a partial or complete resolution of the issues;

    2.    lack of any connection with or interference with the bankruptcy case;

    3.    whether the other proceeding involves the debtor as a fiduciary;

    4.    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

    5.    whether the debtor's insurer has assumed full responsibility for defending it;

    6.    whether the action primarily involves third parties;

    7.    whether litigation in another forum would prejudice the interests of other creditors;

    8.    whether the judgment claim arising from the other action is subject to equitable subordination;

    9.    whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor;

    10.   the interests of judicial economy and the expeditious and economical resolution of litigation;

    11.   whether the parties are ready for trial in the other proceeding; and

    12.   impact of the stay on the parties and the balance of the harms.[56]

_____

(…continued)

Realty Group, Ltd. (In re Wedgewood), 878 F.2d 693, 697 (3d Cir. 1989).

[55]    Id. ("cause may be established by a single factor such as 'a desire to permit an action to proceed . . . in another tribunal'").

[56]    See SCO Group, 395 B.R. at 857, quoting Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1287 (2d Cir. 1990); In re DBSI, Inc., 407 B.R. 159, 167 (Bankr. D. Del. 2009) (denying relief from stay after applying 3-part test under Rexene and considering applicable Sonnax factors).

A movant seeking relief from the stay need not satisfy all of these factors, and courts have been clear that not all of the factors are implicated in every case.[57]  In this case, granting relief from the automatic stay to allow the completion of the <u>Edwards</u> appeal will not interfere with any of the policies underlying § 362.

First, there is no threat that Fireman's Fund will obtain preferential treatment as a creditor if the stay is lifted.  Indeed, if Grace prevails, as it believes it should, and the <u>Edwards</u> judgment is either reversed completely or vacated and remanded to the trial court for further proceedings, then Fireman's Fund will be released from its obligations under the Bond and, concomitantly, its Surety Claim against Grace will be eliminated.  Nor would the <u>Edwards</u> claimants obtain preferential treatment over other creditors if Grace's appeal is successful; just like other Asbestos PI Claimants, they would be required under the Plan (if it is confirmed) to submit their claims to the Trust for resolution pursuant to the TDPs, and they would lose any claim to post-judgment interest.[58]  If, on the other hand, the judgment in favor of the <u>Edwards</u> claimants is affirmed, then the Surety Claim will be liquidated and would simply offset any obligations Fireman's Fund's has under its insurance policies.  Thus, Fireman's Fund "is not attempting to obtain payment from [debtor] to the detriment of other creditors."[59]

Second, as discussed above, allowing the appeal to proceed poses no genuine risk that Grace's assets will be depleted as a result of the legal expenses associated with the remaining

---

[57]    *See* <u>Mazzeo v. Lenhart (In re Mazzeo)</u>, 167 F.3d 139, 143 (2d Cir. 1999), <u>In re Enron Corp.</u>, 306 B.R. 465, 476 (Bankr. S.D.N.Y. 2004).  *See also* <u>Keene</u>, 171 B.R. at 183 ("Only those factors relevant to a particular case need be considered, [citation omitted], and the Court need not assign them equal weight").

[58]    *See, e.g.*, Lockwood Dep. at 613:14-614:20; Austern Dep. at 200:9-201:20.

[59]    <u>Continental Airlines</u>, 152 B.R. at 426.

steps to be taken in the appeal.

Third, lifting the automatic stay will not interfere with the orderly administration of this case or Debtors' efforts to reorganize. Indeed, the contrary is true – the administration of the case and the interests of Grace's other creditors will benefit from a complete resolution of the Edwards appeal, since the Surety Claim will either be eliminated or liquidated in another court. Similarly, whether the Edwards judgment will be paid by the Bond or, instead, the Edwards claimants will be required to pursue their claim against the Trust will be determined. In addition, completing the appeal and fixing Fireman's Fund's liability – or lack thereof – under the Bond will eliminate the contingency surrounding Wachovia's claim against Grace with respect to the letter of credit supporting the Indemnity Agreement.

Lifting the stay will satisfy other relevant Sonnax factors, as follows:

Factor 1: Resolution of the appeal will completely resolve whether Fireman's Fund must pay under the Bond and, in turn, fix the Surety Claim and the amount of Fireman's Fund's setoff right against Grace's claim for insurance proceeds.[60]

Factor 2: Only state law issues are at issue in the appeal.

Factor 4: The Texas Court of Appeals is unquestionably the proper court to resolve the state law issues involved in the appeal. Indeed, "[t]o resolve this dispute in this Court would be to render [this Court] an appellate court," which it "should not

---

[60]     See, e.g., Metz v. Poughkeepsie Sav. Bank, FSB (In re Metz), 165 B.R. 769, 772 (Bankr. E.D.N.Y. 1994) (lifting stay to allow a bank to proceed with its pre-petition state court appeal against the debtor, and noting that debtor's estate would "benefit" from lifting the stay because the result of the appeal being completed "will be a reduction of Movant's deficiency claim such that it will be eliminated if Debtor prevails upon appeal, or the claim will be rendered liquidated and non-contingent if Movant prevails. Indeed, since relief from the stay would result in a complete resolution of the issues, the interruption [of the bankruptcy case] is actually warranted").

be," since bankruptcy courts may not act as appellate courts for state court proceedings.[61]

Factor 10:  Resolution of the appeal will promote judicial economy and facilitate the orderly administration of the estate by fixing both Fireman's Fund's Surety Claim and Wachovia's claim as it pertains to the Letter of Credit; and

Factor 11:  All that remains to be done by Grace in the appeal is the preparation of an optional reply brief (unless the Texas court issues its ruling without waiting for a reply brief, which it may do under the applicable rules) and oral argument (if allowed by the Texas court).

Under similar circumstances, courts have routinely granted lift-stay relief so that claims could be liquidated in litigation outside of the bankruptcy court.

In Keene, for example, the court granted stay relief to Richter, an asbestos plaintiff/judgment creditor whose judgment was secured by a supersedeas bond, so that the debtor's pre-petition appeal would proceed.  The court found that "cause" existed to lift the stay because Richter's "right to collect the proceeds of the supersedeas bond depends upon her ability to obtain a final judgment against Keene.  Further, it is not likely that she could recover the balance of her claim from the estate.  Thus, the bond is her only means to receive full payment."[62] In addition, the court observed that "the prosecution of the appeals will expedite the resolution of Richter's claim, and presents the only means by which Keene can recover its collateral for the benefit of all creditors."[63]  The court explained:

---

[61]    *Id.* at 771.

[62]    Keene, 171 B.R. at 184.

[63]    *Id.*

[I]f Keene prevails, Richter will be divested of any interest in the appeal bond, and subject to the terms of the security agreement between Keene and the bank that issued the standby letter of credit that backed the Richter bond, all rights in Keene's collateral will revert to Keene's estate. Although a court will not grant relief from the stay absent "extraordinary circumstances," simply to liquidate an unsecured claim, the existence of a judgment claim secured directly by a supersedeas bond and indirectly by the debtor's property meets this high threshold. Richter has, therefore, also demonstrated under the relevant *Sonnax* factors that relief from the stay will lead to a complete resolution of the issues concerning the amount of Richter's claim and Keene's interest in its underlying collateral, and result in judicial economy through the expeditious and economical determination of their dispute.[64]

In Kronemyer, a surety that provided fiduciary bonds for the debtor, the guardian of a minor's estate, was granted stay relief with respect to a surcharge proceeding in state court challenging the guardian's final accounting. The surety would be liable under its bonds to pay any surcharge imposed on the guardian, and then would have a claim against the debtor for reimbursement.[65] The surety in Kronemyer had filed a contingent proof of claim in the bankruptcy, but its claim had been disallowed pursuant to § 502(e)(1)(B).[66] The Bankruptcy Appellate Panel affirmed the bankruptcy court's lift-stay order because the surcharge proceeding was "ready for prompt determination," the issues were "unique to the guardianship proceeding, and thus squarely within the expertise of the State Court," and "resolution of the Surcharge Request would assist the bankruptcy court in determining whether [the surety] has a claim against Mr. Kronemyer," even though the surety's claim had already been disallowed as contingent.[67]

---

[64]    *Id.* at 185 (citations omitted).

[65]    Kronemyer v. American Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 921 (9th Cir. B.A.P. 2009).

[66]    *Id.* at 918, 919 & n.5.

[67]    *Id.* at 921-22. The Bankruptcy Appellate Panel noted that, under § 502(e)(2), a claim for reimbursement that becomes fixed after the commencement of the case shall be treated as having been fixed before the date of the filing of the petition. *See id.* at 922. *See also* § 502(j) (a claim that has been disallowed may be reconsidered for cause).

Similarly here, Fireman's Fund's claim against Grace will not be fixed until the
Edwards appeal is completed.  Permitting the appeal to proceed will also fix the amount of
Wachovia's claim against Grace as it relates to the Letter of Credit issued to secure Grace's
obligations under the Bond and the Indemnity Agreement.  Because the appeal presents issues of
state law, the Texas state court is plainly best positioned to decide those issues.  Thus, as in
Kronemyer, relief from the stay should be granted here to permit the Edwards appeal to move
forward to completion.

III.    **The Stay Should Also Be Lifted So That Fireman's Fund Can Pursue Its Contractual
        Remedies Against Grace**

The relationship of surety and principal is an unusual one in the law.  In essence,
the surety agrees to make itself absolutely liable to satisfy an obligation of the principal, but
without assuming the principal's debt.  Because the obligation remains that of the principal, the
law bends over backwards to protect sureties from having to expend their own funds.

Thus, instead of paying the principal's liability, a surety can obtain a court order
compelling the principal to pay an undisputed debt that is backed by the surety – including an
order seizing principal's funds to pay the debt, or diverting funds owed to the principal by a third
party to ensure that the debt is paid.[68]  Indeed, where a surety becomes concerned about whether
the principal will pay a potential liability, it can obtain a court order, under the ancient writ of
*quia timet*, seizing the principal's funds, appointing a receiver, directing payment to
subcontractors, or requiring the principal to deposit collateral to cover the surety's anticipated

---

[68]    *See, e.g.*, Doster v. Continental Cas. Co., 105 So.2d 83, 84-86 (Ala. 1958); National
Surety Corp. v. Barth, 89 A.2d 104, 108 (N.J. Super., Ch. Div.), *aff'd*, 95 A.2d 145 (N.J. App.
1953).

loss.[69]  At all times, the goal is to protect the surety from being required to expend its own funds to satisfy the principal's obligation.

Here, the Indemnity Agreement provides a contractual basis for this panoply of rights.  For example, paragraph 3 of the Indemnity Agreement provides that Fireman's Fund can establish a reserve for its potential payment under the Bond and require Grace to fund the entire reserve as collateral security:

> If the Surety shall set up a reserve to cover any liability, claim asserted, suit or judgment under such Bond, the Indemnitors will, immediately upon demand and whether or not the Surety shall have made any payment therefore, deposit with the Surety a sum of money equal to such reserve and any increase thereof as collateral security on such Bond, and such sum and any other money or property which shall have been or shall hereafter be pledged as collateral security on any such Bond shall be available, in the discretion of the Surety, as collateral security on all Bonds coming within the scope of this instrument or any other indebtedness of the Indemnitors to the Surety.

Paragraph 22 of the Indemnity Agreement backs up this reserve provision by giving Fireman's Fund the right not only to sue Grace for failure to collateralize any reserve established by Fireman's Fund but, further, the right to confess judgment on behalf of Grace in such a suit:

> In the event the Indemnitors fail to comply with such demand as stated in Item 3 of this Indemnity Agreement, Indemnitors hereby authorize and empower any attorney of any court of record of the United States or any of its territories or possessions, to appear for them . . . in any suit by Surety and to confess judgment against them . . . for any sum or sums of money up to the amount of any or all Bond or Bonds; with costs, interest and attorney's fees . . . .

---

[69]    *See, e.g.*, Borey v. National Union Fire Ins. Co. of Pittsburgh, PA, 934 F.2d 30, 32 (2d Cir. 1991) ("Quia timet is the right of the surety to demand that the principal place the surety 'in funds' when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the obligor"); Escrow Agents Fidelity Corp. v. Abelman, 5 Cal. Rptr.2d 698 (Cal. App. 1992); Milwaukie Constr. Co. v. Glen Falls Ins. Co., 367 F.2d 964, 966-67 (9th Cir. 1966); Fireman's Fund Ins. Co. of Newark, N.J. v. Keating, 753 F. Supp. 1146, 1155 (S.D.N.Y. 1990).

Courts readily grant specific performance of demands by sureties that principals place the surety "in funds" by posting sufficient collateral to pay the underlying obligation.[70]

In this case, Fireman's Fund would suffer severe prejudice if it were at risk of havig to pay the Edwards judgment without being assured of full reimbursement by Grace.  The very nature of the suretyship relationship is such that Fireman's Fund should never be required to bear that risk.  Yet Grace and the other Plan Proponents have structured a Plan and classification scheme that is designed to force Fireman's Fund to pay any final judgment in Edwards, but receive either no payment or mere pennies on the dollar in reimbursement.  That does not comport with the transaction the parties entered into.  It would be inequitable and unjust, contrary to the parties' contractual intent, and an affront to suretyship law, to allow Grace to demand up to $43 million in performance by Fireman's Fund, yet seek to evade its contractual obligations to fully reimburse Fireman's Fund's performance.

To avoid that travesty, lift-stay relief is necessary to permit Fireman's Fund to (i) set a reserve as permitted by the Indemnity Agreement, (ii) demand that Grace place Fireman's Fund "in funds" to the full extent of the reserve, (iii) file suit against Grace in any court of appropriate jurisdiction should Grace fail to fully fund the reserve, (iv) confess judgment against Grace, and (v) to execute on any such judgment.

## CONCLUSION

For the reasons stated above, this Court should lift the automatic stay to permit the Edwards appeal to proceed, to allow Fireman's Fund to pursue its contractual remedies as described above, and to take such other steps as may be appropriate to require Grace to honor its

---

[70]    See, e.g., Safeco Ins. Co. v. Schwab, 739 F.2d at 433 ("Sureties are ordinarily entitled to specific performance of collateral security clauses"); Borey, 934 F.2d at 33.

contractual obligations under the Indemnity Agreement.

Dated:  August 25, 2009                                          Respectfully submitted,


                                                                 */s/ John D. Demmy*
                                                                 John D. Demmy (DE Bar No. 2802)
                                                                 STEVENS & LEE, P.C.
                                                                 1105 North Market Street, 7th Floor
                                                                 Wilmington, DE 19801
                                                                 Telephone:  (302) 425-3308
                                                                 Telecopier:  (610) 371-8515
                                                                 Email:  jdd@stevenslee.com

                                                                 Mark D. Plevin
                                                                 Leslie A. Davis
                                                                 Tacie H. Yoon
                                                                 CROWELL & MORING LLP
                                                                 1001 Pennsylvania Avenue, N.W.
                                                                 Washington, D.C. 20004
                                                                 Telephone:  (202) 624-2500
                                                                 Telecopier:  (202) 628-5116
                                                                 Email:  mplevin@crowell.com
                                                                 Email:  ldavis@crowell.com
                                                                 Email:  tyoon@crowell.com

                                                                 Leonard P. Goldberger
                                                                 Marnie E. Simon
                                                                 STEVENS & LEE, P.C.
                                                                 1818 Market Street, 29th Floor
                                                                 Philadelphia, PA  19103-1702
                                                                 Telephone:  (215) 751-2864/2885
                                                                 Telecopier:  (610) 371-7376/8505
                                                                 Email:  lpg@stevenslee.com
                                                                 Email:  mes@stevenslee.com

                                                                 Attorneys for Fireman's Fund Insurance
                                                                 Company

8828549.03