# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
_____X
In Re:                          Chapter 11

                                Case No.
                                01-01139 JKF
W.R. Grace & Co., et al.,

                                (Jointly
         Debtors.               Administered)
_____X

    * * * CONFIDENTIAL * * *

           — — —

       May 13, 2009

           — — —

    DEPOSITION of RICHARD FINKE, held at the offices of Kirkland & Ellis, 655 Fifteenth Street, N.W., Washington, DC, commencing at 9:32 A.M., on the above date, before Lisa Lynch, a Registered Merit Reporter, New Jersey Certified Court Reporter, License No. XI00825, and Certified Realtime Reporter

           — — —

    MAGNA LEGAL SERVICES, LLP

      7 Penn Center, 8th Floor
         1635 Market Street
         Philadelphia, PA  19103

Page 2

```
 1   A P P E A R A N C E S:
 2
     DRINKER BIDDLE & REATH, LLP
 3   BY: MICHAEL F. BROWN, ESQUIRE
     One Logan Square
 4   18th and Cherry Streets
     Philadelphia, Pennsylvania 19103-6996
 5   (brownmf@dbr.com)
     Representing OneBeacon America Insurance
 6   Company, Seaton Insurance Company,
     Government Employees Insurance Company,
 7   Columbia Insurance Company f/k/a Republic
     Insurance Company
 8
 9   CAPLIN & DRYSDALE, CHARTERED
     BY: JEFFREY A. LIESEMER, ESQUIRE
10   One Thomas Circle NW
     Suite 1100
11   Washington, DD 20005
     202.862.7801
12   (jal@capdale.com)
     Representing Grace, Official Committee of
13   Asbestos Personal Injury Claimants ("ACC")
14
     KIRKLAND & ELLIS, LP
15   BY: BARBARA M. HARDING, ESQUIRE
         THEODORE L. FREEDMAN, ESQUIRE
16   655 Fifteenth Street, N.W.
     Washington, DC 20005-5793
17   202.879.5081
     (barbara.harding@kirkland.com)
18   (tfreedman@kirkland.com)
     Representing the Debtors
19
20   THE LAW OFFICES OF JANET S. BAER, P.C.
     BY: JANET S. BAER, ESQUIRE
21   70 West Madison Street
     Suite 2100
22   Chicago, Illinois 60602
     jbaer@jsbpc.com
23   Representing W.R. Grace
24
```

Page 3

```
 1   A P P E A R A N C E S: (continued)
 2   SIMPSON THACHER & BARTLETT, LLP
     BY: ELISA ALCABES, ESQUIRE
 3   425 Lexington Avenue
     New York, New York 10017-3954
 4   212.455.2846
     (ealcabes@stblaw.com)
 5   Representing Travelers Casualty and Surety
     Company
 6
 7   VORYS, SATER, SEYMOUR AND PEASE, LLP
     BY: WILLIAM J. POHLMAN, ESQUIRE*
 8       PHILIP DOWNEY, ESQUIRE*
     (*VIA TELECONFERENCE)
 9   52 East Gay Street
     Columbus, Ohio 43215
10   614.464.8349
     (wjpohlman@vorys.com)
11   Representing The Scotts Company, LLC
12
     LEWIS, SLOVAK & KOVACICH, PC
13   BY: TOM L. LEWIS, ESQUIRE
     P.O. Box 2325
14   723 Third Avenue
     Great Falls, Montana 59403
15   406.761.5595
     tom@lsklaw.net
16   Representing the Libby Claimants
17
     SPEIGHTS & RUNYAN
18   BY: DANIEL H. SPEIGHTS, ESQUIRE*
     (*VIA TELECONFERENCE)
19   200 Jackson Avenue East
     P.O. Box 685
20   Hampton, South Carolina 29924
     803.943.4444
21   (dspeights@speightsrunyan.com)
     Representing Anderson Memorial Hospital
22
23
24
```

Page 4

```
 1   A P P E A R A N C E S:(continued)
 2   MENDES & MOUNT, LLP
     BY: ALEXANDER MUELLER, ESQUIRE
 3   750 Seventh Avenue
     New York, New York 10019
 4   212.261.8296
     (alexander.mueller@mendes.com)
 5   Representing London Market Companies
 6
     FORD MARRIN ESPOSITO & WITNEYER & GLESER
 7   BY: ELIZABETH M. DeCRISTOFARO, ESQUIRE*
     (*VIA TELECONFERENCE)
 8   Wall Street Plaza
     New York, New York 10005-1875
 9   212.269.4900
     Representing Continental Casualty Company
10   and Continental Insurance Company
11
     BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
12   BY: MATTHEW I. KRAMER, ESQUIRE*
     (*VIA TELECONFERENCE)
13   200 South Biscayne Boulevard
     Suite 2500
14   Miami, Florida 33131-5340
     305.450.7246
15   (mkramer@bilzin.com)
     Representing Property Damage Committee
16
17   STROOCK & STROOCK & LAVAN, LLP
     BY: ARLENE G. KRIEGER, ESQUIRE*
18       LEWIS KRUGER, ESQUIRE*
     (*VIA TELECONFERENCE)
19   180 Maiden Lane
     New York, New York 10038-4982
20   212.806.5400
     (akrieger@stroock.com)
21   Representing Official Committee of
     Unsecured Creditors
22
23
24
```

Page 5

```
 1   A P P E A R A N C E S: (continued)
 2
     CROWELL & MORING, LLP
 3   BY: MARK D. PLEVIN, ESQUIRE
         NOAH S. BLOOMBERG, ESQUIRE
 4   1001 Pennsylvania Avenue, N.W.
     Washington, DC 20004-2595
 5   202.624.2913
     (mplevin@crowell.com)
 6   (nbloomberg@crowell.com)
     Representing Fireman's Fund Insurance
 7   (Surety Bond)
 8
     STEVENS & LEE, P.C.
 9   BY: MARNIE E. SIMON, ESQUIRE
     1818 Market Street, 29th Floor
10   Philadelphia, Pennsylvania 19103-1702
     215.751.2885
11   (mes@stevenslee.com)
     Representing Fireman's Fund Insurance
12
13   LAW OFFICES OF ALAN B. RICH
     BY: ALAN B. RICH, ESQUIRE
14   Elm Place, Suite 4620
     1401 Elm Street
15   Dallas, Texas 75202
     214.744.5100
16   (arich@alanrichlaw.com)
     Representing Property Damage PCR
17
18   CONNOLLY BOVE LODGE & HUTZ, LLP
     BY: JEFFREY C. WISLER, ESQUIRE
19   The Nemours Building
     1007 North Orange Street
20   P.O. Box 2207
     Wilmington, Delaware 19899
21   302.888.6528
     (jwisler@cblh.com)
22   Representing Maryland Casualty
23
24
```

Page 6

```
 1   A P P E A R A N C E S: (continued)
 2   ECKERT SEAMANS CHERIN & MELLOTT, LLC
     BY:  EDWARD J. LONGOSZ, II, ESQUIRE
 3   1747 Pennsylvania Avenue, N.W.
     12th Floor
 4   Washington, DC 20006
     202.659.6619
 5   (elongosz@eckertseamans.com)
     Representing Maryland Casualty and Zurich
 6
 7   WILEY REIN, LLP
     BY:  RICHARD A. IFFT, ESQUIRE
 8   1776 K Street NW
     Washington, DC 20006
 9   202.719.7170
     (rifft@wileyrein.com)
10   Representing Maryland Casualty and Zurich
11
     COZEN O'CONNOR
12   BY:  JACOB C. COHN, ESQUIRE
     1900 Market Street
13   Philadelphia, Pennsylvania 19103-3508
     215.665.2147
14   (jcohn@cozen.com)
     Representing Federal Insurance Company
15
16   ORRICK HERRINGTON & SUTCLIFFE, LLP
     BY:  PERI N. MAHALEY, ESQUIRE
17   Columbia Center
     1152 15th Street, N.W.
18   Washington, DC 20005-1706
     202.339.8516
19   (pmahaley@orrick.com)
     Representing PI Future Claimants'
20   Representative
21
     CUYLER BURK, P.C.
22   BY:  ANDREW CRAIG, ESQUIRE
     4 Century Drive
23   Parsippany, New Jersey 07054
     973.734.3200
24   (acraig@cuyler.com)
```

Page 7

```
 1   A P P E A R A N C E S: (continued)
 2   O'MELVENY & MEYERS LLP
     BY:  TANCRED SCHIAVONI, ESQUIRE*
 3   (*VIA TELEPHONE)
     7 Times Square
 4   New York, New York 10036
     212.326.2267
 5   (tschiavoni@omm.com)
     Representing Arrowood Indemnity Company
 6
 7   WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
     BY:  KEVIN J. MANGAN, ESQUIRE*
 8   (*VIA TELECONFERENCE)
     222 Delaware Avenue
 9   Suite 1501
     Wilmington, Delaware 19801
10   302.252.4361
     (kmangan@wcsr.com)
11   Representing State of Montana
12
     PEPPER HAMILTON, LLP
13   BY: LINDA J. CASEY, ESQUIRE*
     (*VIA TELECONFERENCE)
14   3000 Two Logan Square
     Philadelphia, Pennsylvania 19103
15   215.981.4000
     (caseyl@pepperlaw.com)
16   Representing BNSF Railway Company
17   KRAMER LEVIN NAFTALIS & FRANKEL, LLP
     BY:  SARAH SCHINDLER-WILLAIMS, ESQUIRE*
18   (*VIA TELECONFERENCE)
     1177 Avenue of the Americas
19   New York, New York 10036
     212.715.9515
20   (SSchindlerWilliams@kramerlevin.com)
     Representing the Equity Committee
21
22
23
24
```

Page 8

```
 1              INDEX
              EXAMINATION
 2
     Witness Name              Page
 3   RICHARD FINKE
 4     BY MR. BROWN           12,333
 5     BY MS. ALCABES          129
 6     BY MR. LEWIS            187
 7     BY MR. PLEVIN           265
 8     BY MR. WISLER           285
 9     BY MR. COHN             289
10     BY MR. MANGAN           296
11     BY MR. DOWNEY          305, 371
12     BY MR. SCHIAVONI        343
13     BY MR. SPEIGHTS         347
14
15             EXHIBITS
     EXHIBIT    DESCRIPTION            ID
16
     Exhibit 1  Notice of Deposition of  16
17     Debtors Pursuant to Rule
       30(b)(6)
18
     Exhibit 2  Document entitled W.R.   16
19     Grace/Confirmation Hearing
       30(b)(6) Deposition Notice
20
     Exhibit 3  SEC Form 8-K             25
21
     Exhibit 4  Exhibit 6 to Exhibit Book, 41
22     Asbestos Insurance
       Transfer Agreement
23
     Exhibit 5  Exhibit 19 to Exhibit    53
24     Book, Retained Causes of
```

Page 9

```
 1             EXHIBITS
     EXHIBIT    DESCRIPTION            ID
 2
 3   Exhibit 6  Exhibit 2 to Exhibit Book, 55
       Asbestos PI Trust Agreement
 4
     Exhibit 7  Exhibit 4 to Exhibit Book, 55
 5     Trust Distribution
       Procedures
 6
     Exhibit 8  First Amended Joint Plan  70
 7     of Reorganization
 8   Exhibit 9  Exhibit 5 to Exhibit Book, 92
       Schedule of Settled
 9     Asbestos Insurers Entitled
       to 524(g) Protection
10
     Exhibit    Settlement Agreement     98
11   10   Bates stamped OB 1 through
       33
12
     Exhibit    Travelers/Allstate       135
13   11    30(b)(6) deposition notice
14   Exhibit    Travelers 30(b)(6)       136
     12    supplemental deposition
15         notice
16   Exhibit    Grace/Aetna Asbestos     149
     13    Settlement Agreement dated
17         May 22, 1996
18   Exhibit    Exhibit 25 to Exhibit    178
     14    Book, CMO for Class 7A
19         Asbestos PD Claims
20
21
22
23
24
```

Page 10

1  DEPOSITION SUPPORT INDEX
2
3
   Direction to Witness Not To Answer
4  Page Line   Page Line
    30   2      37   12
5   37   17     39   8
    39   15     369  1
6
   Request For Production of Documents
7  Page Line   Page Line
   (None)
8
   Stipulations
9  Page Line   Page Line
   (None)
10
   Questions Marked
11 Page Line   Page Line
   (None)
12
13          _ _ _

Page 11

1  R I C H A R D  F I N K E,
2      having been sworn by the Notary
3      Public of the States of New York
4      and New Jersey, was examined and
5      testified as follows:
6              _ _ _
7  EXAMINATION BY
8  MR. BROWN:
9      Q.  Good morning, Mr. Finke.
10 My name is Michael Brown. I represent One
11 Beacon, Seaton, Geico and Republic for the
12 objecting insurance companies in the Grace
13 bankruptcy. You've been deposed several
14 times before, correct?
15     A.  Yes, I have.
16     Q.  Okay. So we can dispense
17 with the formalities of what a
18 deposition's all about?
19     A.  Yes, we can.
20     Q.  Okay.
21         MS. HARDING: Michael,
22     would you mind if I made a quick
23     statement on the record?
24         MR. BROWN: Sure.

Page 12

1         MS. HARDING: I just wanted
2     to make a statement on the record
3     that the debtors have designated
4     Mr. Finke to answer certain
5     appropriate questions related to
6     certain 30(b)(6) topics.
7         As we've indicated, Mr.
8     Finke will be available for seven
9     hours today. We've also designated
10    Mr. Hughes and Mr. LaForce to
11    answer other 30(b)(6) topic
12    questions. We are hoping and
13    expecting that the parties seeking
14    to ask questions have coordinated
15    so that we can end in seven hours
16    and we think it's a reasonable
17    expectation.
18        The debtors have reviewed
19    the deposition of Mr. Lockwood and
20    agree, in essence, with Mr.
21    Lockwood's answers with respect to
22    how the Plan operates and so we
23    think and are very hopeful that
24    there will not be a need to go

Page 13

1  further than seven hours to get to
2  the appropriate inquiry as to how
3  the Plan operates. So I just
4  wanted to get that on the record.
5      MR. BROWN: Okay.
6  Actually, that's helpful. Maybe I
7  could follow up with a question for
8  Mr. Finke.
9      Q.  Mr. Finke, have you
10 reviewed Mr. Lockwood's Rule 30(b)(6)
11 deposition transcript?
12     A.  Yes, I have.
13     Q.  Okay. Is there anything
14 that you read in that transcript that you
15 disagreed with?
16     A.  No, nothing of substance.
17     Q.  Okay. How about anything
18 not of substance?
19     A.  There are a few occasions,
20 I think, where I either would have worded
21 something differently or where I think Mr.
22 Lockwood may have been either in error --
23 might have been in error depending on
24 whether he was -- depending on the

Page 266

1 counsel for a minute?
2    Q.   Sure.
3         (Off the record.)
4    A.   The answer is yes, I am.
5    Q.   Okay. Mr. Finke, I'd like
6 to first go through some of the background
7 for the bond. Do you understand that
8 there was a lawsuit in Texas against Grace
9 brought by five plaintiffs known
10 collectively as the Edwards case?
11   A.   Yes.
12   Q.   And that after trial in
13 that case a judgment was rendered in favor
14 of the plaintiffs?
15   A.   Yes.
16   Q.   And that there was an award
17 of compensatory damages against Grace
18 jointly and severally with Pittsburgh
19 Corning Company?
20   A.   Yes, that's my
21 understanding.
22   Q.   Also that there was an
23 award of punitive damages against Grace?
24   A.   Yes.

Page 267

1    Q.   And that the court also
2 awarded post-judgment interest at the rate
3 of, I think, the Texas statutory rate
4 which I believe is about 12 percent?
5    A.   That sounds familiar,
6 although I think that's right but I --
7    Q.   Are you having a problem
8 with the exact percentage or the fact that
9 there was post-judgment interest?
10   A.   Yeah, the exact percentage
11 I'm not aware of.
12   Q.   Okay. But you are aware
13 that there was --
14   A.   I'm just generally aware
15 that there was, yes, interest running.
16   Q.   And Grace appealed that
17 judgment to the Texas Court of Appeals,
18 correct?
19   A.   Yes.
20   Q.   In doing so, Grace felt
21 that the trial had been infected with
22 errors as set forth in the brief that
23 Grace filed in the Court of Appeals?
24   A.   Yes.

Page 268

1    Q.   And their brief was
2 something that Grace's counsel was
3 authorized to file on Grace's behalf?
4    A.   Yes.
5    Q.   Are you familiar with the
6 fact that the appellees never responded to
7 Grace's opening appellate brief because of
8 the automatic stay that followed from
9 Grace's bankruptcy filing?
10   A.   Again, I was not aware of
11 that or, if I was, I've forgotten it. I
12 do recall that the appeal -- the timing of
13 the appeal coincided with the filing of
14 the Chapter 11 petition.
15   Q.   Are you aware that the
16 appeal is still undecided by the Texas
17 Court of Appeals?
18   A.   Correct.
19   Q.   And that the Texas Court of
20 Appeals abated the appeal in view of the
21 pendency of the bankruptcy case?
22        MS. HARDING: Object to the
23   form in terms of abated. But if
24   you know the answer, go ahead.

Page 269

1    A.   I was not aware of that.
2    Q.   In order to appeal the
3 judgment of the trial court to the Texas
4 Court of Appeals, Grace obtained a
5 supercedeas bond, correct?
6    A.   Yes.
7    Q.   And the purpose of the
8 supercedeas bond was to ensure that the
9 plaintiffs/appellees would be paid in the
10 event that they prevailed in the appeal,
11 correct?
12   A.   Yes.
13   Q.   The supercedeas bond was
14 issued on Grace's behalf by Fireman's Fund
15 Insurance Company, correct?
16   A.   Yes.
17   Q.   And in connection with the
18 issuance of the supercedeas bond,
19 Fireman's Fund required that Grace enter
20 into an indemnity agreement with Fireman's
21 Fund, correct?
22   A.   Yes, that's my
23 understanding.
24   Q.   And in rough summary,

Page 274

1  claim?
2       MR. PLEVIN:  Yes.
3       MS. HARDING:  Is that what
4    you meant?
5       MR. PLEVIN:  Or any
6    specific proof of claim.
7    Q.  Now, you said that in
8  response to one of my earlier questions
9  that the classification of the Fireman's
10 Fund claim was under consideration.
11   A.  Yes.
12   Q.  What did you mean by
13 that?
14      MS. HARDING:  Well, object
15   to form and to the extent it calls
16   for attorney-client privilege or
17   work product, joint interest
18   privilege, I instruct the witness
19   not to answer.  But to the extent
20   that it doesn't, you can answer.
21   A.  I think beyond saying that
22 it is under discussion and under
23 consideration, I don't know that there's
24 anything I could add to that that wouldn't

Page 275

1  disclose privileged communication.
2    Q.  Okay.  And pursuant to your
3  counsel's instruction, you don't intend to
4  disclose privileged information, do you?
5    A.  That's correct.
6    Q.  Okay.  During the pendency
7  of the bankruptcy case, were any premiums
8  due in order to keep the bond in effect
9  and in place?
10   A.  That I do not know.
11   Q.  Do you know whether during
12 the pendency of the bankruptcy case there
13 were any drawdowns -- well, let me
14 withdraw that question and step back and
15 ask a foundational question.
16      Are you aware that a portion of the
17 bond is secured by a letter of credit
18 issued by Wachovia Bank on behalf of
19 Grace?
20   A.  Yes.
21   Q.  Do you know the amount of
22 the bond when -- rather, the amount of the
23 letter of credit when it was first
24 issued?

Page 276

1    A.  I believe it was about --
2  around 13 million dollars.
3    Q.  Do you know if any part of
4  that letter of credit has been drawn down
5  during the bankruptcy case either to pay
6  premiums on the bond or for any other
7  purpose?
8    A.  My understanding is that it
9  was drawn down in the amount of
10 approximately two million dollars to pay
11 for premiums.
12   Q.  Has Wachovia made a claim
13 against Grace for the portion that it paid
14 under the letter of credit?
15   A.  I don't know.
16      MS. HARDING:  Object to
17   form.  Go ahead.
18   A.  I don't know.
19   Q.  Do you know when the
20 drawdown of approximately two million
21 dollars occurred?
22   A.  No, I don't.
23   Q.  Does Grace contend that the
24 drawdowns were improper in any way?

Page 277

1       MS. HARDING:  Object to
2    form.  And to the extent it calls
3    for privileged communications or
4    work product -- I'm not saying it
5    does.  I'm just saying to the
6    extent it does...
7       THE WITNESS:  Yeah.
8    A.  I don't know the answer.
9    Q.  Focusing on the indemnity
10 agreement between Fireman's Fund and Grace
11 that relates to the supercedeas bond, does
12 Grace contend that the indemnity agreement
13 is unenforceable for any reason?
14      MS. HARDING:  Same
15   objection.
16   A.  Yeah, I don't -- I don't
17 know what positions we have taken, if any,
18 with respect to the Fireman's Fund claim.
19 No, I don't know.
20   Q.  Let me move it off
21 contentions and ask whether you're aware
22 of any facts that suggest that the
23 indemnity agreement is not enforceable
24 according to its terms.

Page 278

1  A.  No, I'm not aware of any
2 facts.
3  Q.  Can you explain to me why,
4 to the extent the Fireman's Fund claim is
5 classified in Class 6, it is in fact
6 classified in Class 6?
7      MS. HARDING:  Object to
8   form.  It calls for a legal
9   conclusion or a legal analysis,
10   but -- and to the extent that it
11   might call for privileged
12   communications or work product,
13   object on that point as well.
14      But to the extent you can
15   answer without divulging those...
16  A.  I believe there is a
17 provision in the Plan under which arguably
18 any claim based on a bond, you know,
19 securing an asbestos-related liability
20 could be classified as a Class 6 claim,
21 but my brief attempts to find that
22 provision right now have not been
23 successful.  So I could take the time now
24 if you want to take a break or I could

Page 279

1 look for it later, but --
2  Q.  I think that answer is
3 sufficient and let me see if I can just
4 summarize it:  That you believe there's a
5 provision in either the --  are you
6 looking at the Plan or the TDPs?
7  A.  I'm looking at the Plan
8 right now.
9  Q.  So you believe there's a
10 provision in the Plan that says something
11 to the effect that a bond claim that
12 secures an asbestos PI claim or appeal is
13 a Class 6 claim?
14  A.  Yes.
15  Q.  Okay.  Is there any other
16 reason you are aware of or can think of
17 why the Fireman's Fund bond claim would be
18 classified as a Class 6 claim?
19  A.  No, that's -- that's all
20 that comes to mind, to my mind.
21  Q.  As a -- withdrawn.
22      To the extent the Fireman's Fund
23 claim does end up being classified as a
24 Class 6 claim, would it be a claim that

Page 280

1 would be channeled to the Trust for
2 payment?
3  A.  Yes.
4  Q.  And as a claim channeled to
5 the Trust, would it be subject to the
6 payment percentage?
7  A.  Yes, that's my
8 understanding.
9  Q.  Are you generally familiar
10 with the concept of setoff?
11  A.  Generally, yes.
12  Q.  What is your understanding
13 of the concept of setoff?
14  A.  That a --
15      MS. HARDING:  Well, are you
16   asking him kind of generally as a
17   lawyer his understanding of the
18   concept setoff?
19      MR. PLEVIN:  I asked what
20   his understanding was.
21      MS. HARDING:  Okay.  To the
22   extent that it doesn't reveal
23   attorney-client privilege or work
24   product...

Page 281

1      THE WITNESS:  Right.
2  A.  That a claimant can either
3 reduce his liability on a separate claim
4 by setting off the amount owed on -- on
5 the first claim.  I'm not articulating it
6 well, but...
7  Q.  All right.  Are you aware,
8 Mr. Finke, of the fact that Fireman's Fund
9 issued certain liability insurance
10 policies to W.R. Grace?
11  A.  Yes.
12  Q.  And do you know that W.R.
13 Grace is making claim against Fireman's
14 Fund for coverage under those policies?
15      MS. HARDING:  Object to
16   form but go ahead.
17  A.  I did not know that.
18  Q.  Okay. Let me represent to
19 you that Grace is in fact making a claim
20 against Fireman's Fund for coverage under
21 those policies.
22  A.  Okay.
23  Q.  And that discussions are
24 going on between the two companies about

Page 282

1  that.
2      When Grace entered into the
3  indemnity agreement with Fireman's Fund
4  with respect to the bond, was Grace
5  entering into that on its own account or
6  on behalf of somebody else as a fiduciary,
7  trustee or other representative?
8          MS. HARDING: Object to
9      form. Attorney-client privilege,
10     work product. To the extent that
11     you can answer without revealing
12     those...
13     A.   I'm not personally aware of
14 the circumstances in which Grace entered
15 into that indemnification agreement, but I
16 will add I'm not aware of any
17 circumstances under which it would have
18 entered into it on another's behalf.
19     Q.   Does the -- if the Plan is
20 confirmed, does Grace have a position one
21 way or the other as to whether it would
22 continue with the Edwards appeal to the
23 extent that issue is not resolved
24 consensually among the parties to the

Page 283

1  bankruptcy case?
2          MS. HARDING: Object to
3      form and calls for speculation.
4      And to the extent it calls for
5      attorney-client privilege or work
6      product communications, I instruct
7      the witness not to answer.
8      Otherwise, you can answer.
9      A.   I will say that, yeah,
10 Grace believes it has a very strong
11 position on the appeal and that the appeal
12 should be pursued.
13     Q.   Okay. I think this may be
14 my last question, Mr. Finke.
15     At the time of the negotiations
16 relating to the Plan, was Grace aware of
17 the Edwards appeal, the supercedeas bond
18 issued by Fireman's Fund and the indemnity
19 agreement between Fireman's Fund and
20 Grace?
21     A.   Yes.
22     Q.   And were those items in
23 fact the subject of discussion among Grace
24 and other parties with whom it negotiated

Page 284

1  the Plan?
2          MS. HARDING: Object to
3      form. And to the extent that it
4      calls for attorney-client
5      privilege, work product, joint
6      interest claims, instruct the
7      witness not to answer.
8      A.   I can't answer that
9  question.
10     Q.   And is the reason you can't
11 answer it because you don't have knowledge
12 about it or because of your counsel's
13 instruction?
14     A.   Because of my counsel's
15 instructions.
16         MR. PLEVIN: I have no
17     further questions. Thank you.
18         (Off the record.)
19 EXAMINATION BY
20 MR. WISLER:
21     Q.   Good afternoon, Mr. Finke.
22 My name is Jeffrey Wisler and I represent
23 Maryland Casualty Company and Zurich in
24 these bankruptcy cases.

Page 285

1      You've been designated by Grace to
2  testify on its behalf as to the 17 topics
3  identified by Maryland Casualty in its
4  30(b)(6) deposition notice. Is that
5  correct?
6      A.   Yes, I believe so.
7      Q.   And you testified earlier
8  that you've reviewed the deposition
9  transcript -- the transcript from Mr.
10 Lockwood's deposition. Is that correct?
11     A.   Yes, that is correct.
12     Q.   Is there any testimony
13 given by Mr. Lockwood during his
14 deposition relating to those 17 Maryland
15 Casualty topics to which you as the
16 designated Grace representative
17 disagree?
18     (The witness reviews the document.)
19     A.   No, I don't recall any.
20     Q.   Same question as to Mr.
21 Posner. You listened in on his
22 deposition?
23     A.   Correct.
24     Q.   Is there any testimony he

Page 374

1  recess to confer.
2      MR. BROWN:  Can you give us
3  two minutes?
4      MS. HARDING:  We'll try to
5  make it fast.
6      MR. LIESEMER:  Might even
7  be 10.
8      (Recess taken.)
9      MS. HARDING:  No further
10 questions.
11     (Time noted: 6:32 PM)
12          _ _ _

Page 375

1              CERTIFICATE
2
3
4      I HEREBY CERTIFY that the
5  witness was duly sworn by me and
6  that the deposition is a true
7  record of the testimony given by
8  the witness
9
10
11 _____
12     Lisa Lynch, RMR, CCR, CRR, CLR
13     Registered Merit Reporter
14     Certified Court Reporter
15     Certified Realtime Reporter
16     Certified LiveNote Reporter
17     Dated:  May 14, 2008
18
19     (The foregoing
20 certification of this transcript does not
21 apply to any reproduction of the same by
22 any means, unless under the direct control
23 and/or supervision of the certifying
24 reporter.)

Page 376

1         INSTRUCTIONS TO WITNESS
2
3      Please read your deposition over
4  carefully and make any necessary
5  corrections.  You should state the reason
6  in the appropriate space on the errata
7  sheet for any corrections that are made.
8      After doing so, please sign the
9  errata sheet and date it.
10     You are signing same subject to the
11 changes you have noted on the errata
12 sheet, which will be attached to your
13 deposition.
14     It is imperative that you return
15 the original errata sheet to the deposing
16 attorney within thirty (30) days of
17 receipt of the deposition transcript by
18 you.  If you fail to do so, the deposition
19 transcript may be deemed to be accurate
20 and may be used in court.

Page 377

1              ------
2            E R R A T A
3              ------
4  PAGE  LINE  CHANGE
5  ____  ____  _____
6  ____  ____  _____
7  ____  ____  _____
8  ____  ____  _____
9  ____  ____  _____
10 ____  ____  _____
11 ____  ____  _____
12 ____  ____  _____
13 ____  ____  _____
14 ____  ____  _____
15 ____  ____  _____
16 ____  ____  _____
17 ____  ____  _____
18 ____  ____  _____
19 ____  ____  _____
20 ____  ____  _____
21 ____  ____  _____
22 ____  ____  _____
23 ____  ____  _____
24 ____  ____  _____