IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Re: Docket No. 20872 |

## ANDERSON MEMORIAL HOSPITAL'S OBJECTIONS TO CONFIRMATION OF DEBTORS' FIRST AMENDED JOINT PLAN REGARDING FEASIBILITY

Anderson Memorial Hospital ("Anderson") by and through counsel, in supplement to the objections it has already filed, submits these objections to confirmation of the Debtors' First Amended Plan of Reorganization ("Plan") regarding feasibility. Particularly in light of the Debtors' obstruction of Anderson's efforts to obtain discovery and the fact that discovery is still ongoing, Anderson reserves the right to supplement or amend these objections.

As is true of all of the elements of 11 U.S.C. § 1129(a), the Debtors bear the burden of proof on feasibility, and must competent evidence sufficient to meet their burden that the Plan is feasible: i.e., that under 11 U.S.C. § 1129(a)(11), that "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." From the evidence that has been seen to date through discovery, Anderson submits that the Debtors will be unable to satisfy that burden. The Debtors' Plan purports to provide for payment in full of all PD Claims, but provides no assurance of the ability to do so, because: (1) the Debtors make no meaningful estimate of the total amount of allowed PD Claims and Demands that will have to be satisfied by the Trust; (2) the Debtors fail to account for the possible effect of allowance of the Anderson class claims; and (3) the Debtors fail to provide sufficient evidence of necessary financing for the Plan. These failures jeopardize not only the payment of Anderson's claims but all claims against the Debtors.

Feasibility Objections.DOC

## DISCUSSION

At the heart of 1129(a)(11) is the requirement that the plan proponent demonstrate the substantial likelihood of its ability to perform and satisfy its obligations under the plan. For asbestos cases, the paradigm for the quantum of evidence that is required to establish feasibility is set forth in Kane v. Johns-Manville Corp., 843 F.2d 636, 649-50 (2d Cir. 1988). There, the feasibility requirement was satisfied where:

> the evidence submitted by the Debtor ... provides a reasonable estimation, based upon known present claimants and reasonable extrapolations from past experience and epidemiological data, of the number and amount of asbestos-related claims that the AH Trust will be required to satisfy. The Debtor has also established that the Trust will, in fact, meet this burden.

As set forth in Johns-Manville, there are two key components to this proof: (1) the estimated claims to be satisfied by the trust; and (2) the trust's ability to satisfy them. These two key components have been reiterated in subsequent asbestos bankruptcies. *See, e.g.*, In re Nat'l Gypsum Co., 139 B.R. 397, 405, fn. 19 (N.D. Tex. 1992) ("Estimation of unliquidated and contingent claims 'is essential prior to the hearing on confirmation of a plan, in order for the court to evaluate the feasibility of the plan without delaying the confirmation process."); In re Combustion Engineering, Inc., 391 F.3d 190, 248 (3d Cir. 2005), citing 140 Cong. Rrec. S4521-01, S4523 (Apr. 20, 1994) (statement of Senator Heflin) ("When an asbestos-producing company goes into bankruptcy and is faced with present and future asbestos-related claims, the bankruptcy court can set up a trust to pay the victims. The underlying company funds the trust with securities and the company remains viable. Thus, the company continues to generate assets to pay claims today and into the future. In essence, the reorganized company becomes the goose that lays the golden egg by remaining a viable operation and maximizing the trust's assets to pay claims.").

Here, the Debtors are unable to satisfy their burden, because they have not presented an estimate of the total claims and demands that are to be satisfied through the PD Trust. On one hand, the Debtors in the Plan and Disclosure Statement contend that they will not be subject to **any** liability on any Unresolved PD Claims or Demands and therefore have made no estimate; yet on the other hand, their own expert Denise Martin – in order to satisfy the predicate for obtaining relief under 11 U.S.C. § 524(g) – opines that Grace "is likely to be subject to substantial future property damage demands similar to those covered under Class 7A, Class 7B and Class 8," though she makes no effort to quantify or estimate them.

This would seem to be something of a conundrum. In order to skirt their obligation to present evidence of the estimated anticipated PD Claims and Demands and the ability to satisfy them, the Debtors resort to the naked assumption that there will be no such Claims or Demands other than the settled claims to be paid on the Effective Date; yet to obtain the relief they seek under § 524(g) (including the injunctions essential for the Sealed Air and Fresenius settlements) the Debtors must affirmatively represent that they in fact **will** be subject to substantial future demands.[1] As it stands, the Debtors have failed to present evidence of either a reliable estimate of the future obligations of the PD Trust, or of the ability to meet such obligations, and cannot satisfy either of the two prongs required to demonstrate feasibility.[2] The burden on the Debtors to satisfy both components of the required proof is heightened by the fact that the proposed

---

[1] The availability of §524(g) relief is subject to question for at least two reasons that are evident on the face of the Debtors' Plan: first, the Debtors' failure to estimate any amount for future PD demands would suggest that they in fact do **not** anticipate being subject to "substantial future demands;" and second, the Debtors' proposed means of dealing with such demands under the Plan is to simply send them back to the tort system to be litigated, which would suggest that the "pursuit of such demands outside the procedures prescribed by such plan" would **not** be "likely to threaten the plan's purpose to deal equitably with claims and future demands." The failure to satisfy the §524(g) requirements is all the more glaring in light of the fact that the Plan proposes to pay such claims in full as they are allowed. In such a scenario, it is unclear why relief under §524(g) is warranted; yet that raises an entirely different feasibility issue: the Sealed Air and Fresenius settlements, which are essential funding sources for the Plan, are contingent upon obtaining a §524(g) injunction (but that alone is clearly not sufficient justification for the relief sought).

[2] Anderson repeatedly has been stymied in its efforts to obtain discovery regarding the Debtors' estimate of its potential exposure on either unresolved or future PD Claims and demands.

Feasibility Objections.DOC                     3

treatment of PD claims is to provide payment in full of such claims (as distinguished from a "pot" plan).

More specifically as to Anderson, it appears that the Debtors have not at all accounted for the possibility that the Anderson class claims may ultimately be allowed. The failure to address this possibility precludes confirmation of the Plan. This was precisely the holding in In re Harbin, 486 F.3d 510 (9th Cir. 2007). In Harbin, a creditor sued the debtor on a breach of contract claim. The jury found in favor of the creditor, but the court set aside the verdict and ruled in favor of the debtor. The creditor appealed the trial court ruling. The creditor filed a proof of claim in the bankruptcy case, which the bankruptcy court disallowed, noting that the creditor could seek to reinstate the claim should he prevail on the appeal. Id. at 514.

The debtor sought to confirm a Chapter 11 plan while the appeal was pending. The bankruptcy court found the plan feasible because allowed claims were to be paid in full, notwithstanding the creditor's objection that the plan failed to reserve an allowance for his claim should he prevail on appeal and that the debtor lacked sufficient assets to satisfy the claim if it were allowed. Id. at 514-15.

The Ninth Circuit held:

> To be feasible for purposes of section 1129(a)(11), a plan must take into account the possibility that a potential creditor may, following confirmation, recover a large judgment against the debtor. ... [A] bankruptcy court cannot adequately determine a plan's feasibility for purposes of section 1129(a)(11) without evaluating whether a potential future judgment may affect the debtor's ability to implement its plan. ... A bankruptcy court's failure to consider such a possibility in discharging its duties under section 1129(a)(11) is clear error.

Id. at 517, citing Matter of Pizza of Hawaii, Inc., 761 F.2d 1374 (9th Cir. 1985) (citations omitted). The court specifically rejected the notion that such consideration could be avoided because the claim was on appeal at the time of confirmation:

> [T]he bankruptcy court's obligation to evaluate the effect of a pending claim on the feasibility of a plan does not hinge on whether the claim is pending in the state trial court rather than in the state appellate court.

Id. at 518. Finally, the court further rejected the notion that such consideration could be avoided because the bankruptcy court had conditionally disallowed the claim:

> [Creditor's] claim could significantly affect the plan's feasibility in the future. For example, the bankruptcy court held that [Creditor's] claim was not being discharged, and [Creditor] could move to have his claim reinstated if he prevailed on appeal. ... Because [Creditor]'s claim could affect the feasibility of [Debtor's] plan notwithstanding the bankruptcy court's conditional disallowance of the claim, the bankruptcy court was still obliged to consider the claim under section 1129(a)(11).

Id.

The posture of the creditor's claim in Harbin at the time of confirmation is identical to the status of the Anderson class claims here. The Debtors have failed to – and cannot – demonstrate that the Anderson class claims, if ultimately allowed after appeal, could be satisfied under the Plan structure that they have proposed, and as a result cannot satisfy their burden of proving feasibility under 11 U.S.C. § 1129(a)(11).

There are other contingencies that could likewise impair the Debtors' ability to satisfy their obligations under the Plan which Anderson submits that they are equally unprepared to address, including the resolution of the interest rate dispute with certain unsecured creditors.

Finally, Anderson submits that the Debtors' proof with respect to the availability of exit financing necessary for the Plan will be inadequate to demonstrate feasibility. *Compare* In re Global Ocean Carriers Ltd., 251 B.R. 31 (Bankr. D. Del. 2000) (burden of proof as to feasibility would be satisfied by evidence that exit financiers had issued commitment letters and/or agreed to term sheets which are detailed and contingent only upon final documentation, confirmation of the plan, and no materially adverse changes occurring; but for fact that debtors valuation of its assets was insufficient to support the financing).

## CONCLUSION

For all of the foregoing reasons, and those expressed in Anderson's prior pleadings, the Court should deny confirmation of the Debtors' Plan.

DATED: August 25, 2009

_____
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728
E-mail:        loizides@loizides.com

Daniel A. Speights (SC Fed. ID No. 4252)
C. Alan Runyan (SC Fed ID No.3683)
SPEIGHTS & RUNYAN
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC  29924
Telephone:    (803) 943-4444
Facsimile:    (803) 943-4599

- and -

John W. Kozyak
David L. Rosendorf
KOZYAK TROPIN & THROCKMORTON PA
2525 Ponce de Leon, 9th Floor
Coral Gables, FL  33134
Telephone:    (305) 372-1800
Facsimile:    (305) 372-3508

*Counsel for Anderson Memorial Hospital*