**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | (Jointly Administered) |

**SUPPLEMENTAL TRIAL BRIEF OF LIBBY CLAIMANTS
IN OPPOSITION TO CONFIRMATION OF FIRST AMENDED
JOINT PLAN OF REORGANIZATION, ADDRESSING BEST
INTERESTS OF CREDITORS TEST UNDER 11 U.S.C. § 1129(A)(7)**

Claimants injured by exposure to asbestos from the Debtors' operations in Lincoln County, Montana (the "Libby Claimants"),[1] by and through their counsel, Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP, submit this Supplemental Trial Brief in support of their Objection to the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders dated as of February 27, 2009 (the "Plan") [D.I. 20872].

### Introduction

On July 13, 2009, the Libby Claimants filed their Trial Brief in this matter [D.I. 22439] (the "Trial Brief"), setting forth their arguments in support of their objection to confirmation of the Plan.  As noted in the Trial Brief, in return for the Libby Claimants' agreement to the Plan Proponents' request to defer certain depositions related to the Libby Claimants' objection to confirmation of the Plan, the Plan Proponents agreed that the Libby Claimants could defer their Trial Brief objection based on Section 1129(a)(7) of the Bankruptcy Code until after such

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [D.I. 22784], as it may be amended and restated from time to time.

discovery was completed.  Having substantially completed such discovery, the Libby Claimants

file this supplement to the Trial Brief, addressing the "best interest of creditors" requirement for

confirmation of the Plan under Section 1129(a)(7) of the Bankruptcy Code.

In accordance with this Court's admonition to avoid duplicative pleadings, the Libby

Claimants are not restating the background information, arguments and legal authority

previously provided in their Plan Objection[2] and their Trial Brief, but incorporate such

information, arguments and authority by reference.  Capitalized terms used and not defined

herein shall have the meanings ascribed to them in the Trial Brief.

### Summary of Argument

The Plan Proponents will be unable to satisfy the requirement of Section 1129(a)(7)

because:

- The Plan Proponents cannot demonstrate that recoveries by Asbestos PI Claimants will be greater under the Plan than under a Chapter 7 liquidation of the Debtors;

- At least some of the Libby Claimants would receive more in a Chapter 7 liquidation than they are permitted to receive under the Plan, because the allowed amount of their claims in Chapter 7 would not be capped at substantially less than their tort system values; and

- The rights of the Libby Claimants in Chapter 7 to pursue non-products insurance ensures that many Libby Claimants will receive a greater recovery in Chapter 7 than under the Plan, which extinguishes their insurance rights.

---

[2] Libby Claimants' Objection to the First Amended Joint Plan of Reorganization dated May 20, 2009 [Docket No. 21811].

{393.001-W0002376.}

**A.    The Plan Proponents Cannot Demonstrate that Recoveries by Asbestos PI Claimants Under The Plan Will Be Greater than Recoveries by Asbestos PI Claimants Under Chapter 7**

The Plan Proponents have projected that Asbestos PI Claimants will recover 25 to 35 percent of the allowed amount of their claims under the Plan.[3]  To satisfy the Section 1129(a)(7) requirement for Plan confirmation, the Plan Proponents must show that this recovery exceeds the recovery that would be attained under Chapter 7 by each Asbestos PI Claimant that has not accepted the Plan.  For the reasons set forth below, the Plan Proponents will be unable to meet their burden of proof.[4]

There are three principal factors that would determine the dividend to general unsecured creditors in a Chapter 7 case of the Debtors: (1) the amount of cash available for distribution; (2) the allowed amount of Asbestos PD Claims; and (3) the allowed amount of Asbestos PI Claims entitled to receive distributions.  The Plan Proponents' estimate of these three factors is as follows:

| Plan Proponents' Chapter 7 Scenarios ($ billions) | | |
|---|---|---|
| | **Low-End Available Cash** | **High-End Available Cash** |
| Cash Available for Distribution[5] | $2.211 | $3.371 |
| General Unsecured Claims: | | |
| Non-Asbestos | .999 | .999 |
| Asbestos PD[6] | 4 to 6 | 4 to 6 |
| Asbestos PI[7] | 4.7 to 6.2 | 4.7 to 6.2 |
| Total | $9.7 to 13.2 | $9.7 to 13.2 |
| Dividend (%) | 16.75 to 22.8 | 25.5 to 34.7 |

---

[3] TDP § 4.2.

[4] Apart from the substantive deficiencies in their position described in this brief, the Plan Proponents are precluded from introducing expert testimony concerning compliance with Section 1129(a)(7) , by reason of having failed to file an expert report on this subject.  The Libby Claimants are filing a motion in limine to place this issue before the Court.

[5] Exhibit 8 to Exhibit Book [D.I. 20874].

[6] Plan Proponents' Main Brief in Support of Plan Confirmation [D.I. 22733] ("PP Main Brief") at Section VI.C.4 (p. 46).

[7] Id. at p. 45.

The Plan Proponents contend that available cash would most likely be toward the low end of the range, principally because the Plan Proponents assert that Sealed Air and Fresenius, who together have agreed to pay $1.068 billion under the Plan to settle Grace's fraudulent transfer claims against them and to obtain the benefits of the Section 524(g) channeling injunction under the Plan, would most likely pay zero in a Chapter 7 case.[8]  This assertion is not credible.  While the Plan Proponents suggest that the entire $1.068 billion of settlement payments by Sealed Air and Fresenius are attributable to the value of the Section 524(g) injunction that will be available under the Plan but not in Chapter 7, this position defies logic as well as history.  Sealed Air and Fresenius did not simply volunteer to pay more than a billion dollars.  They were sued for the recovery of fraudulent transfers, suffered adverse rulings in the litigation, and then decided to settle for an amount less than the potential judgment in favor of the Debtors' estate.  For the same reasons, they will be willing to settle with a Chapter 7 trustee.  It is absurd to suggest, as does the Plan Proponents' proposed expert Pamela D. Zilly,[9] that the Chapter 7 trustee would choose not to pursue the fraudulent transfer claims against Sealed Air and Fresenius.  The Plan Proponents will be unable to establish that cash available for distribution to general unsecured creditors will be limited to the low-end value of $2.211 billion.

Equally lacking in credibility is the Plan Proponents' assertion that in a Chapter 7 case, Asbestos PD Claims would be allowed in the range of $4 to 6 billion.  This amount includes $149 million of Non-ZAI PD Claims, a figure that this Court will likely accept.  The balance of Asbestos PD Claims hypothesized by the Plan Proponents—in other words, essentially the full $4 to 6 billion—consists of ZAI PD Claims.  In the face of the adverse ruling in the ZAI science trial, it is unlikely that any ZAI PD Claims would be allowed in a Chapter 7 case.  The Plan

---

[8] PP Main Brief at Section VI.C.2.
[9] Deposition of Pamela D. Zilly, August 20, 2009, pp. 152, 177-80.

4

Proponents will be unable to establish a worst-case scenario for Asbestos PD Claims exceeding $65 million in the aggregate.  The Plan Proponents themselves acknowledge that the value of ZAI PD Claims is no more than $3,000 to $5,000 per claimant.[10]  In this Chapter 11 case, after a program of notice far more extensive than a Chapter 7 trustee would undertake, only 16,218 ZAI PD Claims were submitted by the applicable bar date.[11]  An average liability of $4,000 per ZAI PD Claim would equate to a total of approximately $65 million.  When this amount is added to the Non-ZAI PD Claims of $149 million, the resulting total estimate of Asbestos PD Claims in a Chapter 7 Case is $214 million—not the scare-tactic range of $4 to 6 billion asserted by the Plan Proponents in their brief.

Nor will the Plan Proponents' estimate of $4.7 to 6.2 billion of Asbestos PI Claims in a Chapter 7 case withstand scrutiny at trial.  This figure represents the Debtors' total liability for present and future Asbestos PI Claims forecast by the ACC's expert, Mark Peterson.  The Debtors forecast their total liability for Asbestos PI Claims to be far less: $468 million.[12]  Even the Future Claims Representative, aligned with the ACC, estimated the Debtors' total liability for Asbestos PI Claims to be $3.8 billion.[13]  If the estimation trial had been pursued to a conclusion, it is doubtful that this Court would have found the asbestos liability to be at the top end of the range, but more likely someplace toward the middle.

Whichever estimate this Court chose to utilize as a starting point, it is necessary to subtract future claims.  The Plan Proponents themselves, utilizing Dr. Peterson's high-end estimate of $4.7 to $6.2 billion as the starting point for analysis, acknowledge that the Debtors'

---

[10] PP Main Brief at Section VI.C.4 (p. 46).
[11] Disclosure Statement at Section 2.7.3.
[12] PP Main Brief at 45 (median value).
[13] Supplemental Expert Report of Jennifer Biggs dated September 25, 2007.

aggregate liability for Asbestos PI Claims *asserted through 2009* is approximately $3 billion.[14] The Plan Proponents may be able to prove that additional Asbestos PI Claims would be asserted and allowed in time for payment by a Chapter 7 trustee.  For the sake of analysis, the Libby Claimants will assume that a Chapter 7 trustee would need to make distributions on account of $4 billion of allowed Asbestos PI Claims.

Once the foregoing adjustments to allowed Asbestos PD Claims and allowed Asbestos PI Claims are accounted for, the expected distribution to Asbestos PI Claimants in Chapter 7 compares favorably to the expected distribution under the Plan:

| Adjusted Chapter 7 Scenarios ($ billions) | | |
|---|---|---|
| | **Low-End Available Cash** | **High-End Available Cash** |
| Cash Available for Distribution | $2.211 | $3.371 |
| General Unsecured Claims: | | |
|     Non-Asbestos | .999 | .999 |
|     Asbestos PD | .214 | .214 |
|     Asbestos PI | 4.0 | 4.0 |
| Total | 5.213 | 5.213 |
| Estimated Dividend (%) | 42.4 | 64.6 |

As these figures demonstrate, even the worst-case distribution in a Chapter 7 case—*i.e.*, accepting the Plan Proponents' unrealistic assumption that the Chapter 7 trustee would obtain no proceeds whatsoever from the fraudulent-transfer claims against Sealed Air and Fresenius—will likely exceed 42%.  This contrasts with a best-case distribution of 35% to Asbestos PI Claimants under the Plan.

It might seem counter-intuitive that Asbestos PI Claimants could possibly do better under Chapter 7 than under a Chapter 11 plan.  After all, Grace's business will likely be worth less in

---

[14] PP Main Brief at Section VI.C.4 (p. 45), where Plan Proponents state that Asbestos PI liability through 2009 is estimated to be over $2.828 billion.

Chapter 7, and it may be fair to apply at least some discount to the outcome of the Sealed Air/Fresenius litigation. These factors surely favor Chapter 11. But other factors favor Chapter 7. In Chapter 7 Grace's creditors would save the "cost" of leaving as much as $821 million on the table for Grace's stockholders.[15] And in Chapter 7 the Asbestos PI constituency would save the cost of subordinating their claims to the payment of 100 percent plus interest to commercial creditors and 100 percent without interest to Asbestos PD Claims—a cost of $1.237 billion compared to payment of those claims at the same 30% rate (without interest) that Asbestos PI Claims will be paid. Finally, as noted, the Asbestos PI Claims base will be substantially lower in Chapter 7 because future demands would not be paid. These factors favoring Chapter 7 for Asbestos PI Claimants outweigh the factors favoring Chapter 11 for other creditors, and explain why Asbestos PI Claimants would receive a greater percentage distribution under Chapter 7 than under the Plan.

In sum, the Plan Proponents will fail to meet their burden at the confirmation hearing to prove that non-assenting Asbestos PI Claimants will receive at least as great a recovery under the Plan as under Chapter 7.

>    **B.    At Least Some Libby Claimants Would Recover More in Chapter 7 than Under the Plan Because The Allowed Amount of Their Claims Would Not Be Capped at Substantially Less Than Their Tort System Values**

The TDP establishes maximum allowed claim amounts for Asbestos PI Claims based on specified exposure and medical criteria.[16] As explained in the Trial Brief, the TDP criteria and claims resolution procedures subject the claims of many Libby Claimants to liquidation in

---

[15] Disclosure Statement at Section 2.11.2.6.
[16] Trial Brief at Section V.C.

amounts significantly less than the amounts at which such claims would be resolved in the tort system by settlement or verdict.[17]

In Chapter 7, Asbestos PI Claimants would be entitled to allowance of their valid claims at their full tort system value, whether through settlement with the Chapter 7 trustee or alternatively through litigation.  As demonstrated in the Trial Brief, many Libby Claimants have an expected claim allowance, based on tort system value, of far more than the capped amount of their claim under the TDP.  For example, the typical Libby Claimant with pleural disease who is impaired but not severe (lung function between 65% and 80%) will be compensated under the Plan based on a TDP-determined amount of from $7,500 to $60,000, compared with the established prepetition tort system value of $550,200 evidenced by the Debtors' pre-bankruptcy history of verdicts and settlements.[18]  *Even accepting the Plan Proponents' projected Chapter 7 distribution percentage of about 20%*, this Libby Claimant would receive a distribution of $110,000 in Chapter 7[19] compared with a maximum of $21,000 under the Plan.[20]  The typical Libby Claimant with pleural disease who is unimpaired (lung function greater than 80%) will have TDP-determined claim allowances of just $2,500 to $20,000, compared to a tort system value of $271,170.[21]  Once again, even accepting the Plan Proponents' projected Chapter 7 distribution percentage of about 20%, this Libby Claimant would receive a distribution of about $54,000 in Chapter 7[22] compared with a maximum of $7,000 under the Plan.[23]  In sum, by reason of the artificial and unfair caps placed on their claims by the TDP, many Libby Claimants would do better under Chapter 7 even if the distribution percentage were lower than under the TDP.

[17] Trial Brief at pp 52-57.
[18] See Trial Brief at p. 54.
[19] 20% of $550,200.
[20] 35% of the maximum TDP liquidated amount of $60,000.
[21] Id. at p. 55.
[22] 20% of $271,170.
[23] 35% of the maximum TDP liquidated value of $20,000.

{393.001-W0002376.}

C.    **The Libby Claimants' Right to Pursue Insurance in a Chapter 7 Liquidation Ensures that Many Libby Claimants Will Recover More in Chapter 7 than Under the Plan, Which Extinguishes Their Insurance Rights**

The Plan contains channeling injunctions under Section 524(g) that enjoin any direct action by the Libby Claimants against Royal Indemnity Company, Maryland Casualty Company, or CNA on account of the Libby Claimants' claims against the Debtors insured by such insurers.[24]    While the Libby Claimants contend that these injunctions are impermissibly overbroad, it is clear that under the Plan as proposed, the Libby Claimants will not retain their direct action rights against the insurers.  Thus, under the Plan, the Libby Claimants will receive from a combination of the Debtors and their insurers (through the Asbestos PI Trust) a total of from 25 to 35 percent of the liquidated amount of their claims.

In Chapter 7, by contrast, the Libby Claimants' recovery would not be limited to the Chapter 7 distribution made by the bankruptcy trustee.  The Libby Claimants would also be entitled to obtain recoveries directly from Grace's insurers.  This is because, as is typical for tort claimants in a Chapter 7 case, the Libby Claimants would be entitled to relief from the automatic stay to pursue the Debtors' insurance.  The only rationale for barring direct pursuit of insurance—which is that it would be unfair to permit the insurance to be exhausted by claimants who won the "race to the courthouse"—does not apply to the type of insurance available for Libby Claims.  As explained in the Libby Claimants' Plan Objection, Libby Claims have access to unsettled non-products insurance which was written without an aggregate limit and therefore is not subject to exhaustion.[25]    When the value of insurance recoveries is added to the distribution from the Chapter 7 trustee, many of the Libby Claimants will do better under Chapter 7 than under the Plan, which purports to extinguish their insurance rights.

---

[24] Such actions are enjoined not only by the Asbestos PI Channeling Injunction under § 8.2.1 of the Plan but also by the Asbestos Insurance Entity Injunction under § 8.4.1 of the Plan.

[25] See discussion at Section IV.G.1 and G.3 of the Libby Claimants' Plan Objection.

9

## Conclusion

For the foregoing reasons, the Libby Claimants submit that the Plan Proponents will be unable to establish that the Plan complies with Section 1129(a)(7) of the Bankruptcy Code, and that consequently confirmation of the Plan must be denied.

Dated: August 25, 2009           **LANDIS RATH & COBB LLP**
       Wilmington, Delaware

                                        */s/ Kerri K. Mumford*
                                        Adam G. Landis (No. 3407)
                                        Kerri K. Mumford (No. 4186)
                                        919 Market Street, Suite 1800
                                        Wilmington, DE  19801
                                        Telephone:  (302) 467-4400
                                        Facsimile:  (302) 467-4450

                                            - and -

                                        Daniel C. Cohn
                                        Christopher M. Candon
                                        **COHN WHITESELL & GOLDBERG LLP**
                                        101 Arch Street
                                        Boston, MA 02110
                                        Telephone:  (617) 951-2505
                                        Facsimile:  (617) 951-0679

                                        *Counsel for Libby Claimants*

{393.001-W0002376.}