# EXHIBIT "A"

PAC 658006v.1

(Rev. 4-1-75)

THIS AGREEMENT, made between
SOUTHERN RAILWAY COMPANY, a Virginia corporation, its successors and assigns,

hereinafter styled Railroad, party of the first part; and ~~XXXXXGRACEXXCHEMXCAL~~ ~~xxMarylandxcorporationxx~~ and (aur 1974
W. R. Grace & Co., a Connecticut Corporation,

hereinafter styled Industry, party of the second part;

W I T N E S S E T H:

THAT the PARTIES HERETO agree as follows:

A. Railroad will————————————operate, to afford Industry facilities for the receipt and shipment of carload freights of Industry over the lines of Railroad in accordance with lawfully published tariffs, an industrial track described as follows:

A double-ended side track, at NATKA, South Carolina, 1678 feet, more or less, in length, measured between the switch points thereof, located substantially as shown in red and green on print of Drawing No. TB-80-0185, dated June 27, 1980, annexed hereto and made a part hereof. Said double-ended side track being hereinafter referred to as "track" or "industrial track".

Railroad, moreover, hereby grants unto Industry the right or license to construct, maintain and use (a) two double swing gates across said industrial track; (b) two overhead canopies over said industrial track; and (c) a shed over said industrial track; all at the locations shown on said annexed print. Said overhead canopies and said shed being hereinafter sometimes together referred to as "Facility".

B. Said track is to be————————————operated upon and subject to the terms and conditions set out in Exhibit "A" hereto annexed and made a part hereof.

This agreement shall be effective as of the __1st__ day of __June__, 19__80__. Either party hereto may terminate this agreement by __sixty__ ( 60 ) days' written notice to the other of election so to do.

IN WITNESS WHEREOF, the parties hereto have executed this agreement in __duplicate__, each part being an original, as of the __15th__ day of __December__, 19 __80__.

In presence of:

_____
As to Railroad.

SOUTHERN RAILWAY COMPANY,
By

_____
Vice President.

In presence of:

W. R. GRACE & CO.,
~~XXXXXCHEMICALXCOMPANYX~~ aur 1974
By                                JwH

D. K. Crawford
_____
As to Industry.

_____
Vice President.

JMJ:jat        7-30-80
      33458

2883-228

EXHIBIT "A"

1. Industry will acquire and hereby guarantees to Railroad full right and lawful authority to maintain and operate any portion of said industrial track which may be located beyond the limits of the right of way of Railroad, or upon or across any public highway.

2. Title to the rails, materials and fixtures in the portion of said track extending between survey stations 1 + 43 and 15 + 27 thereon, is vested in Industry, and title to that portion of said industrial track extending from the southerly switch point thereof to survey station 1 + 43 thereon and that portion of said track extending from survey station 15 + 27 thereon to the northerly switch point thereof, is and shall remain vested in Railroad. Railroad shall have entire control of said track and the operation thereof, and may use the same as well for the business of third persons, not parties hereto, as for that of Industry; provided that such use of said portion of track owned by Industry for the benefit of third persons shall not unreasonably interfere with the business of Industry.

3. Industry will, at the cost and expense of Industry, maintain the portion of said industrial track owned by Industry, as aforesaid, in good condition and repair and in all respects in accordance with the reasonable requirements of Railroad looking to the safe and convenient operation of engines and cars on said track; it being understood that Railroad will maintain the portion of said track owned by Railroad, as aforesaid. Upon request of Industry, Railroad will assist Industry in locating a qualified railroad contractor to perform, for the account of Industry, that portion of the maintenance work for which Industry is responsible under this paragraph; provided, that Railroad shall not be responsible for the performance of any such contractor to perform such maintenance work shall relieve Industry of Industry's primary obligation to maintain its portion of said track.

4. Industry agrees, except as to the existing structures shown and depicted on said annexed print, to observe and be bound by the rules of Railroad for standard clearances; that is to say, Industry agrees to maintain and preserve an overhead space of 22 feet measured perpendicularly from the top of the rail (except that overhead clearance where wire lines extend over said track shall be such as may be prescribed by Railroad) and a space 20 feet in width, measured 10 feet on each side from the center line of said track (except that side clearances where platforms, and doorway for track entering building, are involved shall be such as may be prescribed by Railroad), provided, however, that all side clearances for said track must be increased one and one-half (1-1/2) inches for every degree of curvature therein, which space shall be kept clear of any obstruction whatever including, but not limited to, all structures, facilities or property of Industry which are or may be placed or erected above or parallel to said track; provided, however, that as to said existing structures where standard clearances do not obtain, the clearances for said track may be limited or restricted to the dimensions shown on said annexed print; provided, further that Industry shall place and maintain, at its cost and expense, warning signs, satisfactory to Railroad, at conspicuous places on each of said structures to the effect that such structures will not clear man on side or on top of car.

Notwithstanding any other provision of this agreement, Industry shall indemnify and save harmless Railroad, and any associated, controlled or affiliated corporation, from and against the consequences of any loss of life, personal injury or property loss or damage which may result from or be attributable to any limited or restricted clearances for said industrial track, whether or not negligence of Railroad may have caused or contributed to such loss, injury or damage.

5. The liability of the parties to this agreement, as between themselves, for death, personal injury and property loss and damage, which occurs by reason of, or arises out of, or is incidental to, the construction, operation, maintenance, use, presence or removal of the track covered by this agreement and the right of way therefor, shall be determined in accordance with the following provisions:

(a) Industry shall be solely responsible for, and shall bear all cost, expense and liability resulting from loss of or damage to property by fire;

(b) Industry shall be solely responsible for, and shall bear all cost, expense and liability resulting from death, personal injury, and loss and damage to property, caused solely by the negligence of Industry, or of the agents or employees of Industry, or by the violation by Industry or its agents or employees of the terms of this agreement, or by the negligence of Industry concurring with the negligence of a third party;

(c) Except as provided in subparagraph (a) above, Railroad shall be solely responsible for and shall bear all cost, expense and liability resulting from death, personal injury, and property loss and damage, caused

**2883-228**

solely by the negligence of Railroad, or of the agents or employees of Railroad, or by the negligence of Railroad concurring with the negligence of a third party;

(d) Except as provided in subparagraph (a) above, Railroad and Industry shall be jointly responsible for and shall bear equally all cost, expense and liability resulting from death, personal injury, and property loss and damage, caused by their joint and concurring negligence;

(e) Notwithstanding anything contained in this agreement, and irrespective of the sole, joint, or concurring negligence of Railroad, Industry shall assume sole responsibility for and shall indemnify and save harmless and defend Railroad from and against all claims, actions, or legal proceedings arising, in whole or in part, from the failure of Industry to comply with any clearance requirements set forth in this agreement. In this connection it is specifically understood that knowledge on the part of Railroad of a violation of any such clearance requirements, whether such knowledge is actual or implied, shall not constitute a waiver and shall not relieve Industry of its obligations to indemnify Railroad for losses and claims resulting from any such violation;

(f) Each of the parties hereto, for the liability imposed upon such party by this agreement, shall indemnify and hold entirely harmless the other party hereto;

(g) Knowledge on the part of Railroad of a continuing violation of the terms of this agreement by Industry shall constitute neither negligence nor acquiescence on the part of Railroad, and shall in no event relieve Industry of any of the responsibilities imposed upon Industry hereunder; and

(h) The term "Railroad", as used in this paragraph, shall include not only Railroad specifically named in the first sentence of this agreement, but also all of the corporate affiliates of Railroad so named.

6. Cars shall not be moved to or from said industrial track except by Railroad. Industry will provide and furnish, at its own cost and expense, and keep ready for use at all times in a convenient place, a metal sign (or signs) at least 12 inches by 15 inches, reading "STOP"—"Men at Work", the letters in the word "STOP" to be at least four (4) inches high, and the letters in the words "Men at Work" at least two (2) inches high, and the color of which shall be white with blue background, which said sign(s) shall be used (1) whenever work is being done or activity performed in or about any car or series of cars, either by men and/or equipment; (2) whenever any car or series of cars is being loaded or unloaded either by hand or by the use of any mechanical means or device without regard to whether said mechanical means or device is connected to said car or series of cars; (3) whenever any work is being done or activity performed on or about the tracks themselves by men and/or equipment without regard to whether any car or series of cars is located on the tracks at the time the work is being done or the activity is being performed; and (4) at any other time when Industry employees and/or Industry equipment are engaged in such activity that the movement of cars could cause injury or damage to employees and/or equipment. If Industry loads or unloads to or from rail tank cars placed on said track by Railroad, said sign(s) shall be of the size and coloring specified herein, provided, however, that said sign(s) shall read "STOP"—"Tank Car Connected" and shall be maintained in place until the car is disconnected from any mechanical means or device used in connection with the loading or unloading thereof, including, but not limited to, any hose, pipe, conveyor belt or coupling of any type; it being understood and agreed that tank cars must not be left connected to any such mechanical means or device, as above defined, except when loading or unloading is going on and while a competent person is present and in charge. If the commodity loaded or unloaded into or from said rail tank cars is defined as hazardous or flammable in the regulations of the United States Department of Transportation, it is further understood and agreed that (a) brakes must be set and wheels blocked on all cars being loaded or unloaded and (b) smoking is to be prohibited in loading or unloading areas and "No Smoking" sign(s), satisfactory to Railroad, are to be posted in conspicuous locations approved by Railroad in loading or unloading areas, said sign(s) to be provided at the cost and expense of Industry. Industry agrees to keep the premises around and about said track clean

2883-228

and free of undergrowth and dead grass, and waste paper, trash or any other flammable or unsightly matter.

If any of the aforesaid situations are present necessitating the use of the aforesaid sign(s), the placement of which shall be solely the responsibility of Industry, said sign(s) shall be conspicuously displayed to give necessary warning as follows:

(a) On each end of the car involved or on the outermost end of the end car in a series of cars; or,

(b) Alternatively on the tracks beyond the end of the car involved or on the tracks beyond the outermost end of the end car in a series of cars; or,

(c) If no car or series of cars is involved on the tracks themselves at a location beyond the limits of any work being done or activity performed;

(d) Provided, that if the track involved is a "dead end" track sign(s) need only be deployed in the manner stated above to cover the direction from which train movement might occur.

7. Notwithstanding any other provision of this agreement, Industry will, moreover, indemnify and save harmless Railroad, and any associated, controlled, or affiliated corporation, from and against any loss of or damage to any cars of Railroad or cars of other railroad companies in use by Railroad, while being moved by Industry upon said industrial track, and from and against any loss of life, personal injury and any property loss or damage which may occur during or which result from the movement of said cars by Industry, as aforementioned, whether or not negligence on the part of Railroad may have caused or contributed to such loss, damage, injury or death.

8. All carload shipments consigned to Industry for delivery on said industrial track shall be deemed to have been fully and completely delivered as soon as the car containing such shipment shall have been placed on the industrial track and detached from the engine or train by which it was moved. Railroad shall not be liable as common carrier, nor as bailee, for any property loaded into any car on said industrial track until said car is attached or coupled to the engine or train by which it is to be moved from said industrial track towards its destination, or until a bill of lading shall have been issued to Industry therefor, and until said car is so attached or coupled up, or a bill of lading is issued therefor, the said car and its contents shall be deemed and held to be in the possession of Industry so far as liability therefor is concerned.

9. Notwithstanding any other provision hereof, Industry agrees to comply entirely at its own expense with all requirements imposed by any governmental agency, state, federal or local, with respect to clearances, walkways, specification and condition or maintenance of that part of the subject track which is owned or maintained by Industry.

10. The provisions of this agreement shall inure to the benefit of, and shall be binding upon, any other railroad company now operating or which may hereafter operate over or upon the track covered by this agreement, and shall also be binding upon any third party who, as successor or assignee of Industry or with the consent of Industry, may use said track, or who may enter upon the premises served by said track; it being understood and agreed that Industry will promptly furnish to Railroad notice, in writing, of any such use or entry by any such third party. Industry hereby guarantees the strict performance of the terms of this agreement by any such third party until the use of said track by such third party shall have been covered by the execution of an appropriate agreement with Railroad. This contract is not assignable or transferable by Industry except with the written consent of Railroad, signed by an executive officer.

11. Upon the termination of this agreement Railroad may discontinue the operation of said industrial track and remove its property and fixtures therefrom; and Industry shall take up and remove from the right of way or property of Railroad the track materials in any portion of said track owned by Industry and located on Railroad right of way or property, the work of taking up said track materials to be done, if Railroad elects, by the forces

2883-228

- 4 -

of Railroad, but at the expense of Industry. Notwithstanding any other provision hereof, if Industry shall fail to comply with any of its covenants in this agreement contained, Railroad shall have the right forthwith to discontinue operation of said industrial track, without liability to Industry, until Industry shall have complied with all of said covenants.

12. Industry will construct, maintain and renew, at its sole cost, said double swing gates across said track at the location indicated on said annexed print; said gates to be of such design and specification as may be prescribed by Railroad, to be equipped with Railroad's standard switch lock, so applied that said gates may be locked from the outside, and to be constructed in such manner as to provide, when opened, an unobstructed space on each side of the center line of said track of not less than ten feet and a total clearance of not less than twenty feet. Industry shall also provide a substantial device on each side of said track to which the wings of said gates may be fastened and made stationary parallel, or substantially parallel, with said track when railroad equipment is moving through the gateway; each of said devices to be so arranged that when the wings of said gates are fastened thereto the distance between the side of each wing and the center line of said track will not be less than ten feet in the clear.

Notwithstanding any other provisions of this agreement, Industry will assume full responsibility for the safe and proper maintenance and use of said gates, and, except for loss, damage or injury caused solely by the negligence of Railroad, Industry will indemnify and save harmless Railroad, and any associated, controlled or affiliated corporation, from and against the consequences of any property loss or damage, loss of life or personal injury whatever accruing from or by reason of the construction, maintenance or use of said gates or by reason of the presence of the same across said track, whether or not negligence of Railroad may have contributed to such loss, injury or damage.

13. Industry will construct, and maintain said Facility at all times during the life of this agreement, at its sole cost and expense, in strict accord with plans and specifications (if any) shown and noted on said annexed print and such other specifications as may be reasonably prescribed by Railroad, and, moreover, in all respects in accordance with the requirements of Railroad; it being understood that the work of constructing and maintaining said Facility shall, at all times during its progress, be subject to the inspection and supervision, and upon its completion to the approval, of the duly authorized representative of Railroad.

14. Industry will maintain said Facility at all times during the life of this agreement in such condition that said Facility or the use thereof by Industry shall not be or become an obstruction to, or interfere with, the safe and proper maintenance of said industrial track, or railroad operations upon said track, or endanger life or limb of employees of Railroad or other persons on or about said track.

15. Said Facility shall be maintained at the location indicated upon said annexed print, and shall not be relocated without the consent, in writing, of Railroad.

16. Industry proposes to construct, maintain and use said Facility with full cognizance of the risk of loss of life, personal injury and property loss or damage which may be caused by or result from railroad operations on said industrial track at the location of said Facility, or which may accrue from or by reason of the construction, installation, maintenance, presence or use of said Facility by Industry; and Industry covenants that said Facility shall be constructed, maintained and used solely at the risk of Industry and that neither Railroad, nor any associated, controlled or affiliated corporation, shall assume any responsibility in the premises; Industry hereby specifically agreeing, notwithstanding any other provision of this agreement, to indemnify and save harmless Railroad, and any associated, controlled or affiliated corporation, from and against the consequences of any and all such loss, injury or damage, whether or not negligence of Railroad may have caused or contributed to such loss, injury or damage.

2883-228