Trial Testimony Designations for:
*In Re: W. R. Grace & Co., et al.*
(U.S. Bankr. Ct., Dist. of Delaware, Case No. 01-1139)
March 31, 2008

### Deposition Designation Key

Arrowood = Arrowood Indem. Co. f/k/a Royal Indem. Co. (Light Green)

BNSF = BNSF Railway Co. (Pink)

Certain Plan Objectors "CPO" = Government Employees Insurance Co.; Republic Insurance Co. n/k/a Starr Indemnity and Liability Co.; OneBeacon America Insurance Co.; Seaton Insurance Co.; Fireman's Fund Insurance Co.; Allianz S.p.A. f/k/a Riunione Adriatica Di Sicurta; and Allianz SE f/k/a Allianz Aktiengesellschaft; Maryland Casualty Co.; Zurich Insurance Co.; and Zurich International (Bermuda) Ltd.; Continental Casualty Co. and Continental Insurance Co. and related subsidiaries and affiliates; Federal Insurance Co.; and AXA Belgium as successor to Royal Belge SA (Orange)

CNA = Continental Cas. Co & Continental Ins. Co. (Red)

FFIC = Fireman Funds Ins. Co. (Green)
FFIC SC = Fireman Funds Ins. Co. "Surety Claims" (Green)

GR = Government Employees Ins. Co.; Republic Ins. Co. n/k/a Starr Indemnity and Liability Co.

Libby = Libby Claimants (Black)

OBS = OneBeacon America Ins. Co. and Seaton Ins. Co. (Brown)

PP = Plan Proponents (Blue)

Montana = State of Montana (Magenta)

Travelers = Travelers Cas. and Surety Cos. (Purple)

UCC & BLG = Unsecured Creditors' Committee & Bank Lenders Group (Lavender)

| | |
|---|---|
| AFNE = Assume Fact Not in Evidence | L = Leading |
| AO = Attorney Objection | LA = Legal Argument |
| BE = Best Evidence | LC = Legal Conclusion |
| Cum. = Cumulative | LPK - Lacks Personal Knowledge |
| Ctr = Counter Designation | LO = Seeking Legal Opinion |
| Ctr-Ctr = Counter-Counter | NT = Not Testimony |
| ET = Expert Testimony | Obj: = Objection |
| F = Foundation | R = Relevance |
| 408 = Violation of FRE 408 | S = Speculative |
| H = Hearsay | UP = Unfairly Prejudicial under Rule 403 |
| IH - Incomplete Hypothetical | V = Vague |

```
              UNITED STATES BANKRUPTCY COURT
                   DISTRICT OF DELAWARE


IN RE:                    .    Case No.  01-1139 (JKF)
                          .
W.R. GRACE & CO.,         .
et al.,                   .    USX Tower - 54th Floor
                          .    600 Grant Street
                          .    Pittsburgh, PA 15219
            Debtors.      .
                          .    March 31, 2008
. . . . . . . . . . . . . ..   8:44 a.m.


                   TRANSCRIPT OF TRIAL
         BEFORE HONORABLE JUDITH K. FITZGERALD
          UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:          Kirkland & Ellis, LLP
                          By:  DAVID BERNICK, ESQ.
                          200 East Randolph Drive
                          Chicago, IL  60601

For the Equity            Kramer Levin Naftalis & Frankel
Committee:                By:  GREGORY HOROWITZ, ESQ.
                          919 Third Avenue
                          New York, NY  10022

For the                   Stroock & Stroock & Lavan
Unsecured Creditors'      By:  KENNETH PASQUALE, ESQ.
Committee:                180 Maiden Lane
                          New York, NY  10038-4982




Audio Operator:           Cathy Younker

Proceedings recorded by electronic sound recording, transcript
           produced by transcription service.
```

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net

(609)586-2311     Fax No. (609) 587-3599

10

Libby

PP
obj.
R;
LA

1     MR. FINCH:  Nathan Finch for the Asbestos Claims
2 Committee.
3     MR. INSELBUCH:  Elihu Inselbuch for the Asbestos
4 Creditors Committee.
5     MR. MULLADY:  Raymond Mullady for the FCR.
6     MR. ANSBRO:  Good morning, Your Honor, John Ansbro
7 for the FCR.
8     THE COURT:  Wait.  Sorry.  Okay.  Thank you.  Good
9 morning.
10    MR. FRANKEL:  Good morning, Your Honor, Roger Frankel
11 for the FCR.
12    THE COURT:  Okay.  Start with the arguments.
13    MR. BERNICK:  Good morning, Your Honor.  I think the
14 first order of business is the argument with respect to the
15 Rule 408 motion that was filed by the ACC and the FCR.  So I
16 guess they'll be --
17    MR. INSELBUCH:  Do you want me to go first?
18    MR. BERNICK:  By all means.
19         (Pause)
20    THE COURT:  Good morning.
21    MR. INSELBUCH:  Good morning, Your Honor.  Elihu
22 Inselbuch for the Asbestos Creditors Committee.  As you are
23 aware the 408 issue has been the subject of motions in limine
24 that have been filed before Your Honor earlier.  We made this
25 motion because in the course of Dr. Florence's testimony today

11

*Libby*

1  we anticipate that a 408 issue will come up. And we raise the
2  issue again now only to seek Your Honor's confirmation that
3  whatever your ruling will be with respect to 408 it will apply
4  equally to the witnesses that we present and the witnesses that
5  the debtor presents. As a matter of what's sauce for the goose
6  is sauce for the gander.
7          Now, to begin, I would ask that the Court remember
8  why we're here in the first place. This is not a contest where
9  we are trying to establish liability for any claim at all nor
10 for claims in the aggregate. This is an estimation in the aid
11 of plan confirmation in order to determine what amount of funds
12 needs to be set aside to fund a trust which by definition has
13 liabilities that can't be specifically determined. Because
14 that's the language of the bankruptcy code.
15         In order to be fair not only to those claimants who
16 would come before that trust to seek compensation ultimately
17 for their claims, but also to all the other constituencies in
18 this bankruptcy. Because if we were to over fund that trust we
19 would be taking the money from other constituencies. If we're
20 to under fund that trust we would be unfair to the claimants
21 who would have to come to receive their compensation from that
22 court -- from that trust.
23         And, in fact, as Your Honor said on December 5th,
24 2006 at Page 58, "It seems to me that the estimation is to do
25 two things. It's to try to figure out how many claims of a

*PP obj: R: LA*

J&J COURT TRANSCRIBERS, INC.

Libby

PP
obj:
R;
LA

1  particular type are currently pending, and to use that and
2  whatever other information the experts will use to extrapolate
3  out what the demands against the debtor will be in the future."
4  So it's to look at in absolute terms a number of claims that
5  are likely to be filed. And my eminent colleague said that's
6  correct. The Court went on to say, "Okay. Then it is to
7  figure out what the value of those claims is so that we know
8  what the debtor has to put into a fund in order to pay those
9  claims."
10         So I don't think that there's any real question that
11 the estimation is not here to determine liability. Now, Grace
12 in doing it's calculation of what that estimation should show
13 has put together a presentation which says what we must look at
14 -- what the Court should look at is the cases that were pending
15 and unresolved as of the date of the bankruptcy and look at
16 those and put them -- what we call, we Grace, call liability
17 filters and determine which of those claims would satisfy our
18 liability filters and then use that number of claims as
19 basically part of the formula from which they then would
20 develop how many claims there ultimately will be.
21         Interestingly enough once they do that they would
22 value all of the claims based upon value amounts, settlement
23 amounts that come from the settlement history. We on the other
24 hand, although you haven't seen the presentation as yet, but of
25 course, Your Honor, has been inundated, shall I say, with

Libby

PP Obj: R; LA

1  expert reports and other materials telling you what this case
2  will ultimately show do the calculation in a different way.  In
3  a way that's been done in all the other cases where we have
4  also presented the need for estimating 524(g) trust values by
5  looking at the settlement history not to determine what the
6  liability was, because in fact in 98 percent of all the cases
7  or more this debtor never went to judgment.  It resolved it's
8  claims.  It resolved it's claims.  In effect it bought its
9  peace from these claims.  Some of them I'm sure it thought it
10 had good defenses.  Some of it it had lesser defenses to.  But
11 its way of solving its problem was to resolve those claims for
12 money and make them go away.
13         Our concept of how we estimate the future, what would
14 have occurred had there not been a bankruptcy is to say we look
15 at what they did in the past, we make whatever adjustments need
16 to be made for changes in the system that we were in and then
17 we say this will be replicated going forward.  And that's why
18 we look at these materials, and that' what they're for.
19         Now, when you estimate things normally you would look
20 to comparable things.  The Court is familiar with estimation.
21 I mean, oftentimes you have to estimate the value of a plot of
22 real estate.  Well, you look for a comparable piece of real
23 estate, look at what it sold for and then you would -- and if
24 you looked at a few comparables you satisfy yourself that
25 somewhere in that mix of values you'll have a fair estimate for

25

Libby

PP
Obj:
R;
F;
H;
LA;
LPK

1 made here at the outset that's more or less a play on words
2 rather than a substantive analysis. Both the ACC and the FCR
3 have urged strenuously over time that the purpose of this
4 proceeding is not a "determination of liability." And that is
5 correct. We are not ruling or the Court is not being asked to
6 rule on the liability of Grace with respect to any individual
7 claimant. But that's not to say that liability is irrelevant
8 to this proceeding. It is not to say that liability is not the
9 touchstone of this proceeding. It is.
10          This is an estimation of liability. It's not an
11 estimation of any other thing. It is an estimation of what
12 Grace's obligation to pay will be. An obligation to pay under
13 the rules comes down to allowability, and allowability is
14 determined on the basis of actual legal liability under state
15 law. So the touchstone of the estimation is in fact liability.
16 They can't get around it. This is something that we briefed in
17 the trial briefs that were submitted in the beginning of the
18 case, and it remains so today. It is their preference rather
19 than to estimate the liability by reference to actual facts of
20 liability to use the settlements as a proxy as they have done
21 in the past. That is their decision.
22          But then they have to wrestle with whether it
23 comports with the rules. If in fact the prior settlements are
24 not being used as evidence of liability then they are
25 irrelevant to the standard that brings us here today which is

35

Libby

1   will come out of this estimation allowed.  We couldn't begin to
2   allow future claims.  We can't be allowing either Mr. A's claim
3   or Mr. B's claim because at least for the future claims we
4   don't even know who they are.  And in fact if we were in that
5   mold, if we were actually going to litigate the legal liability
6   with respect to any of those claims, with all due respect to
7   this Court, we would have to be in the District Court because
8   everyone of these claimants would be entitled to a jury trial.
9           I'm puzzled by what Mr. Bernick was writing over
10  there.  I wonder whether he would also argue that if you had
11  another litigant, if they were not in bankruptcy, if they were
12  in the tort system and they had all of this pile of settlements
13  in the past and some new litigant came in to try a case against
14  Grace that litigant isn't entitled apparently to the policies
15  of 408.  That litigant didn't settle anything.  That litigant
16  wasn't party to the settlement.  Could they offer the
17  settlement values from other cases against that litigant?  I
18  think not.  I think it wouldn't be probative.
19          We're not here saying that they can't use settlement
20  values because they're using a merits based argument.  We're
21  saying simply that if all of that information that resides in
22  that history which we submit is the best evidence of what would
23  happen in the future with all of the unknown cases that might
24  arise in the future, if we can't use that then they shouldn't
25  be able to either irrespective of what their theory is.  The

PP obj: R; LA