IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | * | |
| W.R. GRACE & CO., et al., | * | Chapter 11 |
| Debtors. | * | Case No. 01-01139 (JKF) (Jointly Administered) |
| | * | Related Docket Nos. 21020, 21902, 22052, 22819, 22809, 22415 |
| | * | |

---------------------------------------------------------x

## OPPOSITION TO THE PLAN PROPONENTS' MOTION TO EXCLUDE OR LIMIT THE TESTMONY OF JAMES B. SHEIN PURSUANT TO *DAUBERT* AND RULES 702 AND 703 OF THE FEDERAL RULES OF EVIDENCE

Certain of the Objecting Insurers submit this opposition to the Plan Proponents' Motion to Exclude or Limit Testimony of James B. Shein ("Motion") [Docket No. 22809].[1]  Professor Shein is being offered as an expert in proper organizational governance to opine on whether the structure of the Asbestos PI Trust creates the potential for abuse and jeopardizes the accomplishment of its primary goal — the fair and equitable treatment of claimants — given that members of the Trust Advisory Committee ("TAC") will be representing individual claimants

---

[1]  The testimony of Professor Shein is proffered by the following Objecting Insurers (in that capacity or as creditors herein):  OneBeacon America Insurance Company, Seaton Insurance Company, Government Employees Insurance Company, and Republic Insurance Company; Federal Insurance Company; Zurich Insurance Company and Zurich International (Bermuda) Ltd.; Continental Casualty Company and Continental Insurance Company and affiliated companies; Fireman's Fund Insurance Company (and possibly other related companies) and Allianz S.p.A., f/k/a Riunione Adriatica Di Sicurta and Allianz SE, f/k/a Allianz Aktiengellschaft.

before the Trust on a contingent fee basis.[2]  For reasons set forth below, the Plan Proponents'
Motion should be denied.

## I.    PROFESSOR SHEIN'S QUALIFICATIONS AND PROPOSED TESTIMONY

To understand why the Plan Proponents' Motion to exclude Professor Shein's testimony
should be denied, one must first understand what Professor Shein's opinions are and his
qualifications for rendering those opinions.  Accordingly, we first summarize Professor Shein's
qualifications and then his proffered testimony before turning to explaining why the Plan
Proponents' arguments for excluding Professor Shein should be rejected.

### A.    Professor Shein's Qualifications

Professor Shein has a Doctorate in BA Organization Behavior from Indiana University.[3]
That field of study focuses on how organizations operate and, among other things, what
motivates persons running such organizations to do or not do things that will accomplish the
overall goal of the organization and be fair to all stakeholders.

Since 2005, Professor Shein has served as Professor of Management and Strategy at the
Kellogg School of Business at Northwestern University.  Previously, from 1994 to 2001, he
served as an Adjunct Professor at the Graduate School of Business at Loyola University of
Chicago.  Shein Report ¶ 1 and Shein CV at 2.  As a professor at those graduate business
schools, Professor Shein has "researched, written and taught courses and seminars on fiduciary
duties and organizational behavior of trustees, officers and directors of public companies, private

---

[2] References to the "Trust," "Trust Agreement," "TAC," "TDP," "Trust Agreement," and
"FCR" are, respectively, to the Asbestos PI Trust, Asbestos PI Trust Agreement, Asbestos PI
Trust Advisory Committee, Asbestos PI TDP, Asbestos PI Trust Agreement, and Asbestos PI
Future Claimants' Representative, as all are defined in Plan § 1.1.

[3] A copy of Professor Shein's Report ("Shein Report"), along with his Curriculum Vitae
("Shein CV") is appended as Exhibit A.

entities, and not-for-profit organizations." *Id.* ¶ 2. His business courses focus on how organizational structures should be designed and operated to achieve accountability and fairness to all stakeholders and on the adverse consequences that can result when organizations are not properly structured, such as when they have built-in conflicts of interest that create incentives for directors, officers or trustees to act contrary to the best interests of the entire organization. In those courses, he and his students review case studies of corporations, non-profits, and pension funds with the goal of learning how, as a matter of good business practice, to structure entities and provide incentives to governing boards and trustees to ensure fairness to all stakeholders (*i.e.*, shareholders in the case of corporations and beneficiaries in the case of non-profits and pension funds). In that context, he has also studied the problems that can arise when conflicts of interests are ignored or when managers and fiduciaries are provided with perverse incentives.

Professor Shein has also advised corporations, pension funds, and not-for-profit companies on such corporate governance principles, including the "checks and balances needed to protect stakeholders"; and he has "also chaired governance committees for several for-profit and not-for-profit entities." *Id.* In addition, he has first-hand experience in running corporations and overseeing pension funds, where he has observed both appropriate corporate and trust governance procedures and the untoward consequences that can result when good organizational governance principles are not followed.[4]

For these reasons, in another asbestos bankruptcy case,[5] he was determined by the Court to be an "expert on corporate governance" in connection with testimony proffered by insurers

---

[4] *E.g.*, Shein CV at l; Deposition of James B. Shein, May 14, 2009 ("Shein Dep.") 87:15-25. Excerpts from Professor Shein's Deposition are attached as Exhibit B.

[5] *In re Thorpe Insulation Co.*, No. 2:07-19271-BB (Bankr. C.D. Cal.).

concerning whether the asbestos bankruptcy trust proposed in that case (which was in all relevant respects identical to the Asbestos PI Trust at issue here) satisfied good governance principles.[6]

**B.      Professor Shein's Proposed Testimony**

Contrary to implications contained in the Plan Proponents' motion, Professor Shein is *not* being offered as a legal expert in this case.  He will not opine as to whether the TAC members have legally impermissible conflicts of interests that preclude them from serving as Trustees. Rather, as stated, Professor Shein is being proffered as an expert in good organizational governance, and in particular whether the Asbestos PI Trust is properly structured to achieve its goals that all claimants be treated fairly and equitably.

The thrust of Professor Shein's opinion is that "the structure of the Trust creates a potential for abuse" and places the Trustees and Trust Advisory Committee in a position "to act contrary to the governing principle in the Trust Agreement that all claimants be treated fairly and equitably in connection with claims made against the Trust and that the Trust not deplete its assets by paying undeserving claims."  Shein Report ¶ 5.  *See also* Shein Dep. 30.

This is so, Professor Shein will testify, because the members of the TAC are all prominent asbestos plaintiffs' attorneys who will be representing thousands, if not tens of thousands, of claimants seeking recoveries from the Trust, and will be receiving contingency fees from their clients for their work in this regard.  As such, they will have duties of loyalty to those clients, as well as a financial incentive, to ensure that the claims of their individual clients

---

[6] Shein Dep. 15:25 to 16:19.  As Professor Shein testified at his deposition, he was ultimately not allowed to testify in the *Thorpe* case, based upon the Court's ruling that the insurers lacked standing to raise the issues as to which his testimony was directed. *Id.* at 16:20 to 17:3.  Here, of course, Professor Shein is being proffered by insurers not only in their capacity as insurers, but also by several insurers in their capacity as creditors with claims that are to be channeled to the Asbestos PI Trust under the Plan.

are paid — even if the merits of those clients' claims may be dubious. Yet, at the same time, as TAC members, they will be able to exercise significant influence, if not control, over the operation of the Trust;[7] and, in that capacity, the TAC members will have duties of loyalty to all Trust beneficiaries (or, at a minimum, to all present PI Trust Claimants) to ensure, among other things, that the Trust as a whole is properly operated, that all claimants are treated fairly, and that claims that lack merit are not paid.

Professor Shein will testify, based upon his experience and education, that this situation creates a conflict in the duties of the TAC members to different constituencies with the result that the overall goal of the Trust — *i.e.*, to treat all claimants fairly and equitably — will be jeopardized. To take one concrete example of the conflicts that can arise, "pursuant to the Plan and the Trust Agreement, claims may be made to the Trust on behalf of Indirect PI Claimants, including insurance companies who might be held liable to persons for asbestos injuries, and

---

[7] As Professor Shein explains, the consent of the TAC is required before there can be any change of significance to the Trust or TDP. For example, the TAC (along with the FCR) must consent, *inter alia*, to:

- amendments to the PI Trust Bylaws, the Trust Agreement, and the TDP (Trust Agreement §§ 2.2(f)(xi), (xii));

- changes in the Claim Payment Ratio between amounts paid (i) for claims for severe asbestosis, severe disabling pleural disease, and cancer and (ii) claims for asbestosis or pleural disease (Trust Agreement § 2.2(f)(ii); TDP § 2.5);

- amendments to the Medical/Exposure Criteria for payable claims (Trust Agreement § 2.2(f)(iii); TDP § 5.3(a)(3)); and

- requirements that claimants to provide additional kinds of medical evidence (Trust Agreement § 2.2f(v); TDP § 7.1). Shein Report ¶ 7.

Moreover, the TAC also can exercise significant influence over the Trust in other respects. The Trustees must consult with the TAC concerning the general implementation and administration of the Trust and TDP (Shein Report ¶ 8; Trust Agreement §§ 2.1(f), 2.1(c)(vii)). In addition, the TAC, along with the FCR, also has the authority to influence the Trustees' compensation, seek the removal of a Trustee, and influence who is chosen as a replacement. (Shein Report ¶ 9; Trust Agreement §§ 2.2(f)(ix), 4.3, 4.2(c)).

who (absent the bankruptcy) would have had claims for indemnification or contribution against Grace." *Id.* ¶ 25. However, "[t]he members of the TAC have an incentive to ensure that their clients' claims are paid and that Indirect PI Trust claims are not paid." *Id.* While Professor Shein has not studied whether trusts established in other asbestos bankruptcies have actually led to such results, he will testify, based upon his education and experience in evaluating pension funds, not-for-profit entities, and corporations that have had such built-in conflicts of interest, that such conflicts do lead to situations where the overall goal of fairness to all stakeholders is jeopardized.

Professor Shein will further testify that these conflicts are exacerbated by the broad exculpatory provisions in the Plan and Trust Agreement. *Id.* ¶¶ 29-30 (citing Plan § 11.9; Trust Agreement § 4.4). Under the Trust Agreement, the TAC may not be held liable to the Trust or to any asbestos claimant of the Trust, or to any other person, other than for breach of trust committed in bad faith or for willful misappropriation. *Id.* ¶ 30 (citing Trust Agreement § 4.4). As Professor Shein will testify, "[e]xculpatory clauses are generally not looked at with favor in the area of corporate governance — particularly when there is evidence of overreaching or abuse of duties by a fiduciary." *Id.* ¶ 34. "One measure of overreaching is when the fiduciary drafts the trust documents providing for his own exculpation" (*id.*), and the evidence in this case will show that the Trust Agreement was drafted, at least in part, by the asbestos claimants' attorneys that included the TAC members or members of their law firms.

In Professor Shein's opinion, good governance requires that "[m]embers of the TAC who have obligations to existing clients with claims against the Trust, and other members of their law firms … be disqualified because these obligations conflict with their fiduciary duties under the Trust Agreement." *Id.* ¶ 36. Furthermore, "[t]he exculpation and indemnification provisions in

the Plan and Trust Agreement should also not be allowed because they shift the costs and risks of misconduct by the Trustees, the TAC members and Futures Representative to the Trust beneficiaries, and permit the dissipation of Trust assets." *Id.* ¶ 37.  In short, "[t]he Trust Agreement effectively eliminates the checks and balances needed for fair and impartial corporate or entity governance." *Id.*  He does not urge the elimination of the TAC:  "The point is to eliminate the conflicts, not to eliminate the positions" (*id.* at 94:21-23), by providing for disinterested TAC members.  *Id.* at 95:7-23.

As Professor Shein made clear in his deposition, he is not attempting to assert legal opinions.  Rather, he "looks past the legality … [to] see what the impact of any perverse incentives are that may be legal, but, really, under good governance practices shouldn't be allowed to go on."  Shein Dep. at 154:8-12.

## II.    THE MOTION TO EXCLUDE THE TESTIMONY OF PROFESSOR SHEIN SHOULD BE DENIED.

Applying *Daubert*'s gatekeeper requirement, the Third Circuit has stated:  "Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact."  *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008).  The Third Circuit has construed the second requirement as meaning that that "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable."  *Id.* (internal quotes omitted).  Rule 703 also requires that an expert base opinions on facts or data that are "reasonably relied upon" by experts in the particular field in forming opinions.  "Rule 703's reliability standard is similar to Rule 702's reliability requirement, i.e., there must be good grounds on which to find the data reliable."  *In re TMI Litigation*, 193 F.3d 613, 697 (3d Cir. 1999) (internal quotes omitted).

The Plan Proponents make three arguments why Professor Shein's testimony should be excluded:  (i) "Dr. Shein has no experience with or knowledge of asbestos trusts whatsoever" (Motion at 3); (ii) "Dr. Shein relies on subjective judgment rather than any identifiable method" (Motion at 5); and (iii) "Dr. Shein's legal conclusions and 'behavioral' interpretations of the plan documents will not assist the Court (Motion at 6).[8]  As we now show, the Plan Proponents' arguments should be rejected.

### A.    Professor Shein's Possesses the Specialized Expertise Necessary to Render His Opinions.

The Third Circuit has repeatedly "interpreted Rule 702's qualification requirement liberally," and has "held that a broad range of knowledge, skills, and training qualify an expert." *Pineda v. Ford Motor*, 520 F.3d at 244 (internal quotes omitted).  The Plan Proponents give lip service to this principle (Motion at 3), but then proceed to ignore it by asserting a qualification requirement entirely of their making, namely, that Professor Shein is not qualified unless he has hands-on experience with asbestos personal injury trusts.  They argue that Professor Shein lacks "specialized expertise" on the ground that he "never participated in the design of an asbestos trust" and "knows nothing about the law firms with which the proposed TAC members are associated or their clients."  Motion at 4.  But, as one of the cases cited by the Plan Proponents stated, "[t]he law does not insist on such narrow qualifications," *Primavera Falmilienstifung v.*

---

[8]  The Plan Proponents attach as Exhibit 2 to their Motion the previously filed Joint Motion in Limine to Strike the Expert Reports of George L. Priest and James B. Shein [Docket No. 21902], which they filed on May 28, 2009, and which was never ruled upon.  The Plan Proponents seek to "incorporate herein the substantive arguments regarding the admissibility of Dr. Shein's report and testimony made in their previous motion and argument."  Motion at 2 n.3.  The Court should deny this request.  If the Plan Proponents have an argument to make, they should make it in one motion, instead of asking the Court to flip back and forth through this Motion and the one previously filed.  In the event, however, the Court reviews those previously filed arguments, we respectfully ask that it also review the Objection to that Motion, which is attached as Exhibit C.

*Askin*, 130 F. Supp. 2d 450, 523, *reconsideration granted in part*, 137 F. Supp. 2d 438 (S.D.N.Y. 2001); and Professor Shein is more than qualified to give expert opinion on whether the "structure of the Trust creates potential for abuse."

Professor Shein has a Ph.D. in the subject matter in which he is being proffered as an expert — organizational behavior and governance.  He is a professor at one of the Nation's preeminent business schools where he has taught courses on corporate governance and how to design organizational structures so that they further the organization's goals.  Shein Report ¶ 2. As summarized above on pp. 2-4, he has advised corporations, pension funds, and not-for-profits on corporate governance principles, including the necessary checks and balances to protect stakeholders.  *Id.*  He and his students review case studies to learn how, as a matter of sound business practice, to structure entities and to provide incentives to ensure fairness to all stakeholders.  He has studied the problems that can arise when conflicts of interest are ignored and mangers and fiduciaries are provided with perverse incentives to put the interests of one group of beneficiaries over the interests of another.  And he has been recognized by another Bankruptcy Court as an expert in the very same field in which he is being proffered here.

The Plan Proponents' cherry-picked quotes from a 172-page deposition, such as those set out at pages 3 to 4 of the Motion, cannot change the fact that Professor Shein is qualified to testify.  The Plan Proponents, for example, quote on page 3 of the motion Professor Shein's acknowledgement that he has not studied how other asbestos personal injury trusts have worked, but they omit the next set of questions as to the bases of his opinions:

> Q.  So your opinion in this matter is based on some judgment by you of human behavior?
> A.  That's part of it.
> Q.  And what's the rest of it?

A.  That this thing is designed with what I would describe as perverse incentives
to not treat everybody equally.

Shein Dep. at 30:9-15.  Similarly, with respect to the quotation on page 4 of the motion,

Professor Shein would of course "have to look the details" of the Trust and TDP as a basis for

"hypothesiz[ing]  that the trustees … would be motivated to … give special treatment to the

claims represented by the TAC."  Shein Dep. at 83:1-6.  That is, in fact, exactly what he has done

in forming his views in this case.  Moreover, while Professor Shein on page 87 of his deposition

acknowledged having no personal experience with claims resolution by asbestos trusts, he has, as

described above, studied the operation of corporations, not-for-profits, and pension funds, and

has served as fiduciary to pension funds.  Accordingly, he well aware of the adverse effects that

can flow when perverse incentives are provided to decision makers.  Shein Report ¶ 2, Shein

Dep. 87:15 to 88:6; 137:18-23.

Nor, contrary to the Plan Proponents' assertion (at 4), does it matter that Professor Shein

does not know anything in particular about the four law firms represented on the TAC, other than

the fact that they will be representing numerous claimants to the Trust on a contingent fee basis

and will have a financial incentive to favor the claims of their clients over the claims of other

claimants to the Trust.  This, as a matter of good organization governance, is what creates factual

conflicts that lead to favoritism of one set of claimants over another.  Shein Report ¶ 5; Shein

Dep. at 30:14-15.

In closely analogous settings, the Third Circuit has rejected the same sort of contention

on expert qualifications as made here regarding Professor Shein's qualifications.   Thus, in

*Pineda v. Ford Motor*, an engineer was ruled qualified to opine that there should have been a

warning, even though he was not a "warnings expert."  520 F.3d at 245.  Similarly, in *Schneider

v. Fried*, 320 F.3d 396 (3d Cir. 2003), the Court of Appeals ruled that the proffered cardiologist

had been improperly excluded on the erroneous ground that "he was not an expert in the sub-specialty about which he opined." The Court stated that the doctor had "ample experience advising interventional cardiologists about which drugs to prescribe patients undergoing angioplasties" and that "his academic background and teaching position … also demonstrate that he is highly knowledgeable about cardiology." *Id.* at 406-07. *Accord Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) (district court erred in restricting treating physician's opinion "based on a requirement that the witness practice a particular specialty ….").

The sole case cited by the Plan Proponents in support of their position is *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110 (3d Cir. 1987). In that case, the Court of Appeals held that it was error to allow a sales representative to opine on the cause of a tractor fire when the sales representative was not an engineer, had no experience with designing construction machinery, and "no experience in determining the cause of equipment fires." *Id.* at 114. Clearly, it takes but a very short leap to conclude, as the Third Circuit did in *Aloe*, that the salesman was not qualified to opine on the cause of the fire at issue in that case. In contrast, here Professor Shein is testifying about a subject in which he has genuine expertise. The case at bar is not even in the same universe as *Aloe Coal* so far as expert credentials are concerned; and the Plan Proponents' attacks on Professor Shein's qualifications are baseless.

### B.     Professor Shein's Methodology Is Reliable.

The Plan Proponents next assert that Professor Shein's methodology is based on "no discernable method" and "his own subjective views." Motion at 5. This contention, too, is misguided. The applicable test, as the Supreme Court has stated, "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Professor Shein will testify that organizational behavior is a well-established academic field and that his work for the Objecting Insurers in this case is based on the "same level of intellectual rigor" that is expected of experts in the field of organizational behavior. That is sufficient to satisfy the reliability requirements of Rules 702 and 703, for "the standard for determining reliability is not that high" *In re TMI Litigation*, 193 F.3d 613, 665 (3d Cir. 1999) (internal quotes omitted). Parties do not "have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *Id.* (footnote omitted). Professor Shein's view as to how organizational structures are affected by human nature is reliable and supported by examples from other organizations.[9]

### C.    Professor Shein's Opinions Will Assist the Court.

Professor Shein's testimony is directly relevant to assisting the Court rule on the merits of the challenge by the Objecting Insurers to the structure of the Trust and TDP that creates conflicts of interest for TAC members. As shown, for instance, in CNA's Phase II Trial Brief [Docket No. 22415, at 17-19], Sections 1123(a)(4) and 524(g) of the Code require that the Asbestos PI Trust be structured so as to provide the equality of treatment to claimants. Central to this Court's determination of whether the Asbestos PI Trust here will satisfy that principle is whether the fiduciaries of the Trust may have incentives that may lead them to favor one class of

---

[9] If any view is unreliable, it is the Plan Proponents' view that the TAC members will act in a totally disinterested fashion. That view is at odds with the prior instances of overreaching documented the cases cited in CNA's Phase II Trial Brief at 10-11 & n.15 [Docket No. 22415]. In addition, see the recent opinion in *In re Congoleum Corp.*, – F. Supp. 2d –, 2009 WL 2514172, at *2 n.5 (D.N.J. Aug. 17, 2009), where the Court quoted from a state court finding that "'The Claimants' Agreement was the product of negotiations by conflicted counsel' because '[Gilbert, Heintz & Randolph, LLP ("GHR") ] colluded with [Joseph] Rice and [Perry] Weitz to create a framework that would provide Congoleum with both the insurance money and also protect against the asbestos liability, while having the insurance companies … bear the costs.'"

claimants over another class of claimants. Therefore, aside from whether the members of the TAC have inappropriate conflicts of interest as a legal matter, it is relevant to this case, as a factual matter, whether the fiduciaries to the Trust have conflicts that may or will lead to favoritism in the administration of the Trust such that the Trust fiduciaries must be changed to ensure that the Trust satisfies the requirements of Sections 1123(a)(4) and 524(g).

The Plan Proponents assert that Professor Shein's opinion is not "helpful because it offers legal conclusions …" and because "Dr. Shein's 'behavioral' interpretation is no more than speculation about the future motivations of the parties …." Motion at 6, 8. Neither contention is correct. First, Professor Shein is *not* providing the Court with a legal opinion. Professor Shein made clear at his deposition that he was not testifying as a "legal expert," but rather as "an expert on corporate governance …." Shein Dep. 38:2-11. He freely acknowledged that "[e]verything's going to get interpreted by the Court," but hoped that "the Court sees them in a new light from a business and behavioral standpoint instead of just a legal standpoint …." *Id.* at 149:11-19. The central thrust of Professor Shein's opinion is that it would be bad policy as a matter of trust governance, even if otherwise lawful, to approve a Plan where the TAC members have conflicting loyalties, yet will possess great influence over the Trust. That is, Professor Shein is opining whether the Trust is structured in such a way as to accomplish its goals, not whether it violates any legal requirement.

To be sure, in rendering his opinions, Professor Shein had to read the Trust Agreement and understand what it says to determine whether the Trust Agreement satisfied good governance standards. He also cited provisions from the Delaware Lawyers' Rules of Professional Conduct and Delaware Trust Code. But in doing so, he is not attempting to usurp

the Court's function to decide legal issues;[10] rather, as all expert witnesses do, he was reviewing

the relevant materials in order to provide a background for his opinion that the TAC members

will owe loyalties to two different constituencies.[11]

Equally misguided is the Plan Proponents' claim that "Dr. Shein's 'behavioral

interpretation' is no more than speculation about the future motivations of the parties …."

Motion at 8.  They state that this "Court is as capable of judging human nature as Dr. Shein."  *Id.*

These snide assertions are little more than attempts to denigrate the study of organizational

---

[10] None of the cases cited by the Plan Proponents (Motion at 6-7) support their Motion. In *Cryovac, Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 364 (D. Del. 2006), the expert was rendering impermissible legal opinions on whether certain alleged contracts were contracts at all.  In *Primavera Falmilienstifung v. Askin*, 130 F. Supp. 2d 450, 528-29, *reconsideration granted in part*, 137 F. Supp. 2d 438 (S.D.N.Y. 2001), the expert was retained to render opinions "identical to the legal terms defining elements of the counts in this case." Professor Shein is not rendering any opinion analogous to the obvious legal opinions at issue in those cases.  Finally, the Second Circuit in *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991), actually upheld a law professor's testifying as an expert witness when the professor did not opine "whether Bilzerian's actions violated the securities laws," but instead gave "general background on federal securities regulation …."  If relevant at all to this case, *Bilzerian* supports the admission of Professor Shein's testimony.

[11] In any event, there is no hard-and-fast rule that expert testimony based in part on legal concepts is invariably impermissible.  As the Tenth Circuit stated:  "We do not exclude all testimony regarding legal issues.  We recognize that a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible."  *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988).  In that regard, the Third Circuit has on several occasions upheld the admission of expert testimony that touches upon the law.  *See Berckeley Investment Group, Ltd. v. Colkitt*, 455 F.3d 195, 216-18 (3d Cir. 2006) (upholding the admission of expert testimony concerning the custom of the securities industry to support the defendant's claim that it lacked the necessary *scienter* because it reasonably believed that its actions were lawful); *United States v. Leo*, 941 F.2d 181, 197 (3d Cir. 1991) (upholding admission of expert testimony concerning the custom and practice of the defense industry under the Armed Services Procurement Act because it "was relevant both to explain the practice of the industry … and to establish what someone with Leo's extended background in the industry probably would know."); *First National State Bank of N.J. v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981) (upholding admission of the testimony of Homer Kripke, "acknowledged as … a foremost expert on the Uniform Commercial Code[] to testify as to trade usage 'in light of the clear unambiguous nature of the documents' …" in a case arising under the UCC).

behavior, even though it is a recognized area of academic research. Contrary to the Plan Proponents' unsupported view, learning from the study of organizational behavior can be of assistance to this Court in assessing whether it should approve a Trust with built-in conflicts of interests. As the Seventh Circuit stated in *Tyus v. Urban Search Management*, 102 F.3d 256, 263 (7th Cir. 1997), the expert testimony of social scientists can be of assistance to triers of fact by supporting or sometimes even debunking "commonly accepted explanations for behavior …."

## CONCLUSION

The Plan Proponents' Motion to Exclude or Limit Testimony of James B. Shein Pursuant to *Daubert* and Rules 702 and 703 of the Federal Rules of Evidence should be denied.

August 28, 2009                                                  Respectfully submitted,

[*Signature block on following pages*]

DRINKER BIDDLE & REATH LLP

By: /s/ Warren T. Pratt
Warren T. Pratt (*Bar No. 4334*)
David P. Primack (*Bar No. 4449*)
1100 N. Market Street, Suite 1000
Wilmington, DE 19801-1254
Telephone: 302-467-4200
-- and --
Michael F. Brown (*pro hac vice*)
Jeffrey M. Boerger (*pro hac vice*)
One Logan Square
Philadelphia, PA 19103-6996
Telephone: 215-988-2700

*Counsel for Government Employees Insurance
Company, Republic Insurance Company, Seaton
Insurance Company, and OneBeacon America
Insurance Company*

STEVENS & LEE, P.C.

By: /s/ John D. Demmy
John D. Demmy (*Bar No. 2802*)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
-- and --
Leonard P. Goldberger
Marnie E. Simon
1818 Market Street, 29th Floor
Philadelphia, PA 19103-1702
Telephone: (215) 751-2864/2885

*Counsel for Fireman's Fund Insurance
Company, Allianz S.P.A., f/k/a Riunione
Adriatica Di Sicurta, and Allianz SE, f/k/a
Allianz Aktiengesellschaft*

ROSENTHAL, MONHAIT & GODDESS,
P.A.

By: /s/ Edward B. Rosenthal
Edward B. Rosenthal (*Bar No. 3131*)
P.O. Box 1070
Wilmington, Delaware 19899
Telephone: (302) 656-4433x6
Facsimile: (302) 658-7567

GOODWIN PROCTER LLP
Daniel M. Glosband (*pro hac vice*)
Brian H. Mukherjee (*pro hac vice*)
Goodwin Procter LLP
Exchange Place
Boston, Massachusetts 02109
Telephone: (617) 570-1000
-- and --
Michael S. Giannotto (*pro hac vice*)
Frederick C. Schafrick (*pro hac vice*)
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 346-4000

FORD MARRIN ESPOSITO WITMEYER
& GLESER, L.L.P.
Elizabeth DeCristofaro (*pro hac vice*)
Wall Street Plaza, 23rd Floor
New York, New York 10005-1875
Telephone: (212) 269-4900

WILDMAN, HARROLD, ALLEN &
DIXON LLP
Jonathan W. Young
Jeff Chang
225 West Wacker Drive
Chicago, Illinois 60606-1229
Telephone:  (312) 201-2662

*Counsel for Continental Casualty Company,
Transportation Insurance Company
and their American insurance affiliates*

CONNOLLY BOVE LODGE & HUTZ LLP

By: /s/ *Jeffrey C. Wisler*
Jeffrey C. Wisler (*Bar No. 2795*)
Marc J. Phillips (*Bar No. 4445*)
1220 Market Street
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141

Of Counsel:
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
Edward J. Longosz, II
Laura G. Stover
1747 Pennsylvania Avenue, N.W.,
Suite 1200
Washington, DC 20006
Telephone: (202) 659-6600

WILEY REIN LLP
Richard A. Ifft
Karalee C. Morell
1776 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 719-7170

*Counsel for Zurich Insurance Company and*
*Zurich International (Bermuda) Ltd.*

COZEN O'CONNOR

By: /s/ *Barry Klayman*
Barry M. Klayman (*Bar No. 3676*)
1201 N. Market Street
Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2035
-- and --
William P. Shelley (PA ID 40875)
Jacob C. Cohn (PA ID 54139)
Ilan Rosenberg (PA ID 89668)
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2000

*Counsel for Federal Insurance Company*