IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W.R. GRACE & CO., *et al.*, | : | Case No. 01-01139 (JKF) |
| | : | |
| Debtors. | : | Related Docket No. 22815 |

**OBJECTIONS OF CERTAIN OBJECTING INSURERS
TO MOTION *IN LIMINE* OF PLAN PROPONENTS TO
EXCLUDE TESTIMONY OF PROFESSOR GEORGE L. PRIEST**

Certain Objecting Insurers object as follows to the Plan Proponents' Motion *in Limine* to Exclude the Testimony of Professor George L. Priest ("Motion") [Docket No. 22815].[1]

**THE PROPOSED TESTIMONY OF PROFESSOR PRIEST**

George L. Priest is a Professor of Law and Economics at Yale Law School.[2] His background includes the study and knowledge of insurance, the regulation of insurance, and insurance practices. He has taught and published in the fields of insurance and the economics of insurance for many years. Many of his articles have appeared in economics journals; others, in insurance journals. Priest Report ¶ 4. For many years, he has conducted a regular course on economics subjects, including insurance, for federal appellate judges and bankruptcy judges in a federal judicial instruction program managed by George Mason University. *Id.* ¶ 10. He has presented testimony on insurance and other economics subjects at trial, in deposition, or by expert report in many courts. *Id.* ¶ 13.

---

[1] The testimony of Professor Priest is proffered by the following Objecting Insurers: Government Employees Insurance Company, Republic Insurance Company n/k/a Starr Indemnity & Liability Company, and Seaton Insurance Company; Federal Insurance Company; Zurich Insurance Company and Zurich International (Bermuda) Ltd.; Fireman's Fund Insurance Company (and possibly other related companies) and Allianz S.p.A., f/k/a Riunione Adriatica Di Sicurta and Allianz SE, f/k/a Allianz Aktiengellschaft.

[2] A copy of Professor Priest's Report ("Priest Report") is attached hereto as Exhibit A.

Professor Priest has studied and written extensively on the economic determinants of the terms of property/casualty insurance policies. Priest Report ¶ 14. In particular, he has studied how insurance policies are structured to provide appropriate incentives to insurers and to policyholders toward the reduction of losses. *Id*. His expertise is based on (a) his study and research for over 35 years of the economic principles of risk transfer, (b) his study over the same period of the customs and practices in the field of insurance and his understanding of the bases upon which insurance can be offered, (c) his years of teaching economic principles of insurance, in particular property/casualty insurance, and the regulation of the property/casualty insurance industry, and (d) his study of the history of the development of commercial general liability policies, umbrella and excess policies, as well as of the economic basis for the allocation of rights and responsibilities in such policies. *Id*. ¶15.

Professor Priest addresses the economic effects and implications of various features of Grace's Plan of Reorganization. Priest Report ¶ 18. He explains how the terms of the Plan, along with the Asbestos PI Trust Agreement, Asbestos Insurance Transfer Agreement, and Trust Distribution Procedures, fundamentally upset the economic structure of the Debtors' insurance policies and overturn central contractual rights established in those policies in ways that severely impact the economic ability of the Insurers to manage the financial risks that they assumed in issuing the policies. *Id*. ¶ 19. He explains in detail the economic structure of liability insurance, the economic relationships among insurers, the policyholder, and liability claimants, and the economic significance of the terms contained in modern liability insurance policies, including Grace's policies. *Id*. ¶¶ 20-32. He explains the economic structure of insurance in the context of policyholder bankruptcy, especially an asbestos bankruptcy. *Id*. ¶¶ 33-38.

Professor Priest then addresses the problematic features of Grace's Plan, from the standpoint of economics. Priest Report ¶¶ 39-55. In particular, from an economic standpoint, the procedures under the Plan for the resolution of asbestos claims violate the central allocation of rights and responsibilities in Grace's insurance policies. *Id*. ¶ 42-51. That problem is not cured by the "Insurance Neutrality" provision of the Plan. *Id*. ¶¶ 52-55. Professor Priest concludes, for the economic reasons set forth in his report, that the provisions of the Plan and associated documents "substantially overturn the economic structure of incentives created by Grace's insurance policies to the severe economic prejudice of the insurers." *Id*. ¶ 56.

## ARGUMENT

### I. THE COURT SHOULD HEAR THE TESTIMONY OF PROFESSOR PRIEST AND THEN DETERMINE ITS ADMISSIBILITY.

"The primary purpose of the *Daubert* filter is to protect juries from being bamboozled by technical evidence of dubious merit …." *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003), *aff'd on other grounds*, 403 F.3d 1331 (Fed. Cir. 2005); *see also Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1301 (Fed. Cir. 2000); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).

In a bankruptcy case, "the court's gatekeeping role is necessarily different. Where the gatekeeper and the factfinder are one and the same — that is, the judge — the need to make such decisions prior to hearing the testimony is lessened." *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006). As a result, "the court can hear the evidence and make its reliability determination during, rather than in advance of, trial.… [W]here the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." *Id.*

Rather than address the Plan Proponents' Motion *in limine*, which fails as shown below, it makes eminent sense for the Court to hear the testimony of Professor Priest and then determine whether to exclude it or to give it such weight as the Court determines it is worth.

## II. THE MOTION TO EXCLUDE PROFESSOR PRIEST'S TESTIMONY SHOULD BE DENIED ON THE MERITS.

The Plan Proponents contend that Professor Priest is unqualified to testify as an expert in this case. They also contend that his proffered opinion "is inadmissible because it fails to meet the reliability requirements established by Rule 702." Motion at 6. Neither contention has merit.

### 1. Professor Priest Is Eminently Qualified to Testify.

Professor Priest is eminently qualified to testify as an expert here. As the Third Circuit has stated, "Qualification refers to the requirement that the witness possess specialized expertise. *We have interpreted this requirement liberally*, holding that 'a broad range of knowledge, skills, and training qualify as expert.'" *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (emphasis added; citation omitted). Professor Priest possesses special expertise and knowledge concerning the economics of insurance, which satisfies the governing evidentiary standard.

Professor Priest is not proffered to provide legal opinions. He testified repeatedly at his deposition that he is not offering legal opinions but rather his observations and opinions from the standpoint of economics. Deposition of George B. Priest, May 7, 2009 ("Priest Dep.") 21:12-16 ("the opinion ... presented here is an economic opinion based on my understanding of custom and practice in the industry but it is not in any respect a legal opinion"); 22:2-5 ("there are no legal opinions given here. I meant to write a report that was based on economics or custom and practice only"); 63:9-12 ("this is not a legal opinion and is not meant to address legal claims. It's trying to explain economic incentives and the economic structure"); 75:11-19 ("What I am trying

to explain here is the economic basis for the assignment of responsibilities in the way that the policy assigns them").[3]

There is no rule that expert testimony based partly on legal precepts is invariably impermissible. Professor Priest's proffered testimony fits well within the precedents allowing expert testimony that touches upon the law. *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988) ("a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible"); *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1246 (10th Cir. 2000) (there is no "per se rule" against "expert testimony which happens to touch upon the law").

The Third Circuit has on several occasions upheld the admission of expert testimony that touches upon the law. In *Berckeley Investment Group, Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006), the Court upheld the admission of expert testimony concerning the custom of the securities industry to support the defendant's claim that it lacked the necessary *scienter* because it reasonably believed that its actions were lawful. *Id.* at 216-18. Similarly, in *United States v. Leo*, 941 F.2d 181 (3d Cir. 1991), the Court upheld admission of expert testimony concerning the custom and practice of the defense industry under the Armed Services Procurement Act because it "was relevant both to explain the practice of the industry … and to establish what someone with Leo's extended background in the industry probably would know." *Id.* at 197. In *First National State Bank of N.J. v. Reliance Elec. Co.*, 668 F.2d 725 (3d Cir. 1981), the Court upheld the admission of the testimony of Homer Kripke, "acknowledged as … a foremost expert on the Uniform Commercial Code[] to testify as to trade usage 'in light of the clear unambiguous nature

---

[3]   Excerpts from Professor Priest's Deposition are attached as Exhibit B.

of the documents' …" in a case arising under the UCC. *Id*. at 731. Professor Priest's proposed expert testimony fits squarely within these precedents and is therefore admissible.

### 2. Professor Priest Satisfies the Evidentiary Standard of Reliability.

The Plan Proponents contend that Professor Priest's opinions "are both unreliable and irrelevant with respect to this proceeding." Motion at 6. None of the assertions made in support of that contention are valid. All of them go to the merits of whether the Court should accept Professor Priest's opinion that Grace's Plan and associated documents "substantially overturn the economic structure of incentives created by Grace's insurance policies to the severe economic prejudice of the insurers" (Priest Report ¶ 56) — not to whether his opinion is reliable. However, admissibility is not determined by whether an opinion that is reliable is ultimately accepted by the trier of fact.

Professor Priest's observations and conclusions are based on the economic principles of risk transfer and the economic principles of insurance, his study of the customs and practices in the field of insurance, and his study of the history of the development of commercial general liability policies, umbrella and excess policies, as well as the economic basis for the allocation of rights and responsibilities in such policies, as fully explained in his report. Priest Report ¶ 15. The Plan Proponents do not contend that the field of economics is unreliable. They simply disagree with Professor Priest's observations and conclusions. That disagreement does not bar his expert testimony.

The Plan Proponents complain that Professor Priest has not reviewed any evidence as to how Grace was handling claims in the tort system before bankruptcy. Motion at 6-7. Such history is irrelevant to Professor Priest's observations concerning the economic effects and implications of Grace's Plan and his economic opinion that "the exclusion of insurers from the process of claims settlement will invariably affect settlement results." Priest Report ¶ 49.

Whether his observations and conclusions are correct is ultimately for the Court to determine, after they have been admitted into evidence. "The evidentiary requirement of reliability is lower than the merits standard of correctness." *See In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994). The evidentiary requirement is satisfied here.

## CONCLUSION

The Plan Proponents' Motion *in Limine* to Exclude the Testimony of Professor George L. Priest should be denied.

Dated: August 28, 2009                                                                 Respectfully submitted,

| | |
|---|---|
| DRINKER BIDDLE & REATH LLP | COZEN O'CONNOR |
| /s/ *David P. Primack* | /s/ *Barry Klayman* |
| Warren T. Pratt (4334) | Barry M. Klayman (DE No. 3676) |
| David P. Primack (4449) | 1201 N. Market Street |
| 1100 N. Market Street, Suite 1000 | Suite 1400 |
| Wilmington, DE 19801-1254 | Wilmington, DE 19801 |
| Telephone: 302-467-4200 | Telephone: (302) 295-2035 |
| | Facsimile: (215) 701-2209 |
| - and - | |
| | - and - |
| Michael F. Brown (*pro hac vice*) | |
| Jeffrey M. Boerger (*pro hac vice*) | William P. Shelley (PA ID 40875) |
| One Logan Square | Jacob C. Cohn (PA ID 54139) |
| Philadelphia, PA 19103-6996 | Ilan Rosenberg (PA ID 89668) |
| Telephone: 215-988-2700 | 1900 Market Street |
| | Philadelphia, PA 19103 |
| *Attorneys for Government Employees Insurance Company, Republic Insurance Company n/k/a Starr Indemnity & Liability Company, and Seaton Insurance Company* | Telephone: (215) 665-2000 |
| | Facsimile: (215) 665-2013 |
| | *Attorneys for Federal Insurance Company* |

| STEVENS & LEE, P.C. | CONOLLY BOVE LODGE & HUTZ LLP |
|---|---|
| */s/ John D. Demmy.* | */s/ Jeffrey C. Wisler* |
| John D. Demmy (DE Bar No. 2802) | Jeffrey C. Wisler (#2795) |
| 1105 North Market Street | Marc J. Phillips (#4445) |
| 7th Floor | The Nemours Building |
| Wilmington, DE 19801 | 1007 N. Orange Street |
| Telephone: (302) 425-3308 | P.O. Box 2207 |
| Facsimile: (610) 371-8515 | Wilmington, DE 19899 |
| Email: jdd@stevenslee.com | Telephone: (302) 658-9141 |
|  | Facsimile: (302) 658-0380 |
| -and- |  |
|  | OF COUNSEL: |
| Leonard P. Goldberger |  |
| Marnie E. Simon | ECKERT SEAMANS CHERIN & |
| (Members of the PA Bar) | MELLOTT, LLC |
| 1818 Market Street | Edward J. Longosz, II |
| 29th Floor | Gabriella Cellarosi |
| Philadelphia, PA 19103-1702 | 1747 Pennsylvania Avenue, N.W. |
| Telephone: (215) 751-2864/2885 | Suite 1200 |
| Facsimile: (610) 371-7376/8505 | Washington, D.C. 20006 |
| Email: lpg@stevenslee.com | Telephone: (202) 659-6600 |
| Email: mes@stevenslee.com | Facsimile: (202) 659-6699 |
|  |  |
| *Attorneys for Fireman's Fund Insurance Company and Allianz S.p.A., f/k/a Riunione Adriatica Di Sicurta, and Allianz SE, f/k/a Allianz Aktiengesellschaft* | WILEY REIN LLP |
|  | Richard A. Ifft |
|  | Karalee C. Morell |
|  | 1776 K Street, N.W. |
|  | Washington, D.C. 20006 |
|  | Telephone: (202) 719-7170 |
|  | Facsimile: (202) 719-7049 |
|  |  |
|  | *Attorneys for Zurich Insurance Company and Zurich International (Bermuda) Ltd.* |