# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case Nos. 01-1139 through 01-1200 |
|     Debtors. | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS and OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS OF W. R. GRACE & CO., suing in behalf of the Chapter 11 Bankruptcy Estate of W. R. GRACE & CO., et al., | ) ) ) ) ) ) ) ) | |
|     Plaintiffs, | ) | |
| -against- | ) | Adv. No. 02-_____ |
| FRESENIUS MEDICAL CARE HOLDINGS, INC. and NATIONAL MEDICAL CARE, INC. | ) ) ) ) | |
|     Defendants. | ) | |

## ORIGINAL COMPLAINT

Plaintiffs, by their attorneys, McKool Smith, P.C., Caplin & Drysdale, Chartered, Bilzin Sumberg Dunn Baena Price & Axelrod LLP, Campbell & Levine, and Ferry, Joseph & Pearce, P.A. allege for their complaint, on knowledge as to their own acts, and on information and belief as to all other matters, as follows:

EXHIBIT OS-8

ORIGINAL COMPLAINT-PAGE 1

000001

XXX-000154

## NATURE OF THE ACTION

1. This is an action to set aside fraudulent transfers by W.R. Grace & Co.-Conn. ("Grace-Conn."). Various businesses owned and operated by Grace-Conn. manufactured and sold asbestos products. Those products have been responsible for severe personal injuries and tens of thousands of deaths. As a result, Grace-Conn. is a defendant in thousands of lawsuits (now stayed) filed by individuals and survivors of individuals exposed to its asbestos products. Grace-Conn. also faces extensive liabilities for asbestos property damage, and is a defendant in state and national class actions (also currently stayed) alleging liability for an attic insulation product containing asbestos known as "Zonolite."

2. The alleged fraudulent transfers that are the subject of this action involve the transfer by Grace-Conn. in 1996 of one of its most valuable and profitable operating businesses, National Medical Care, Inc. (the "Health Care Business" or "NMC") to its then parent, W.R. Grace & Co., n/k/a Fresenius Medical Care Holdings, Inc. ("Fresenius" or "Grace-1996"), for wholly inadequate and insufficient consideration (collectively the "Transfers").

3. The Transfers were calculated to place the value of the Health Care Business beyond the reach of Grace-Conn.'s asbestos victims and other creditors.

4. On April 2, 2001, W.R. Grace & Co., f/k/a W.R. Grace Specialty Chemicals Inc. ("Grace") and Grace-Conn. were two of a number of related debtors that filed a voluntary petition for reorganization under chapter 11 of title 11 of the United States Code. The reorganization cases are referred to herein as the "Bankruptcy Cases," and title 11 is referred to

ORIGINAL COMPLAINT-PAGE 2

as the "Bankruptcy Code". No trustee has been appointed in the Bankruptcy Cases, and the debtors, including Grace-Conn., continue to manage their property as debtors-in-possession pursuant to 11 U.S.C. § 1107.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1334(b).

6. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and 1409(c).

## PARTIES

7. Plaintiffs, the Official Committee of Asbestos Personal Injury Claimants and the Official Committee of Asbestos Property Damage Claimants of Grace ("Plaintiffs" or the "Asbestos Committees"), are committees of creditors appointed by the United States Trustee pursuant to 11 U.S.C. § 1102(a). The Asbestos Committees are made up of persons and entities that assert tort claims against Grace and Grace-Conn. by reason of personal injuries, wrongful death or property damage caused by asbestos-containing products.

8. Pursuant to its "Order re Fraudulent Conveyance Proceedings" (the "Authorizing Order"), this Court has authorized the Asbestos Committees, as representatives of Grace's bankruptcy estate, to prosecute and enforce any and all claims arising from the Transfers.

9. The Asbestos Committees bring this action pursuant to 11 U.S.C. § 544(b) and other applicable law for the purpose of avoiding the Transfers, recovering the property transferred or the value of such property for the benefit of the debtors' estates and creditors, and subjecting defendants to liability for asbestos claims against the debtors.

ORIGINAL COMPLAINT-PAGE 3

10.     Defendant Fresenius Medical Care Holdings, Inc. ("Fresenius" or "Grace-1996") is a New York corporation with its principal place of business in Lexington, Massachusetts.

11.     Defendant National Medical Care, Inc. ("NMC") is a Delaware corporation with its principal place of business in Lexington, Massachusetts.

## FACTUAL ALLEGATIONS

### Asbestos Disease and Litigation

12.     Experts estimate that at least 21 million American workers have been exposed to "significant" amounts of asbestos at the workplace since 1940. Millions of others have been exposed through environmental contact or contact with relatives who have worked with the products. Because of the toxic effects of asbestos exposure, literally tens of thousands of people fall ill or die from asbestos-related diseases every year. In legal terms, asbestos exposure has translated into hundreds of thousands of lawsuits.

13.     Asbestos litigation has been on going for four decades, and as a result of this litigation numerous companies have been forced into bankruptcy. Raymark Industries, Forty-Eight Insulations, Unarco, Standard Asbestos, Johns-Manville Corporation, Eagle-Picher Industries, and Celotex Corporation, just to name a few, all declared bankruptcy due to asbestos liability prior to the Transfers. Prior to 1996, the risks and liabilities associated with asbestos were widely known and served as the incentive and motivation for the Transfers.

### The Transfers; Lack of Reasonably Equivalent Value

14.     Prior to the Transfers, Grace-1996 was a publicly traded corporation, owning as its sole asset 100% of the stock of Grace-Conn. Grace-Conn., in turn, was an operating company

with divisions engaged in, among other things, construction and performance chemicals, can sealants, packaging and the Health Care Business.

15. The value of all of these businesses was available to satisfy the claims of all persons and entities who had demanded or would demand in the future compensation for personal injuries, wrongful death, or property damage attributed to asbestos or asbestos-containing products. (This Complaint refers to such persons as "Asbestos Claimants" and to their asbestos-related claims as "Asbestos Claims".)

16. Not later than 1996, Grace-1996 and its management embarked on a plan and course of conduct to "enhance shareholder value" by systematically stripping Grace-Conn. of valuable assets and placing those assets beyond the reach of Asbestos Claimants, thereby enriching the parent company and its public stockholders at the expense of such creditors. After the Transfers, in 1998, Grace-Conn. was divested of its packaging business in a transfer and spin-off pursuant to the continuing plan and course of conduct. The Transfers related to the Health Care Business are the focus of the instant Complaint.[1]

17. The Health Care Business was a profitable and valuable business at the beginning of 1996. It contributed significantly to Grace-Conn.'s revenues and profits, and was viewed in the market place as one of the substantial contributors to Grace-1996's stock value.

18. In September, 1996, Grace-1996 consummated the Transfers that were designed to "free" the Health Care Business from the taint of Grace-Conn.'s asbestos liabilities, and thus

---

[1] Plaintiffs have also filed an action against Sealed Air Corporation, f/k/a W.R. Grace & Co., to set aside a fraudulent transfer by Grace-Conn. in 1998 of Grace-Conn.'s former packaging subsidiary, Cryovac, Inc. (the "Sealed Air Transfer").

ORIGINAL COMPLAINT-PAGE 5

enable Grace-1996's stockholders to realize significant excess value and returns at the expense and to the detriment of Grace-Conn.'s creditors.

19. The Transfers proceeded as follows:

- Before the transactions, NMC was a wholly owned subsidiary of Grace-Conn., which in turn was a wholly owned subsidiary of the parent company, Grace-1996.

- Grace-1996 caused Grace-Conn. to contribute the stock of NMC to its parent Grace-1996, thus making Grace-Conn. and NMC wholly owned subsidiaries of Grace-1996. At the time of the Transfers, the NMC stock had a fair value in excess of $4 billion.

- In purported exchange for the Transfers, Grace-1996 caused NMC to borrow the approximate sum of $2.263 billion that NMC contributed as a "dividend" to Grace-Conn. (the "Dividend").

- Grace-1996 then caused Grace-Conn. to use the Dividend, in part, to pay various obligations, including debts related to the business of NMC.

- Grace-1996 then transferred the stock of Grace-Conn. to a newly formed subsidiary, Grace Holding Company, Inc. ("Grace-1998");

- Grace-1996 then spun off to its shareholders the new subsidiary, Grace-1998, as a totally separate company. Grace-1998 then changed its name to "W.R. Grace & Co."

- The preceding transactions left Grace-1996 with NMC as its sole asset. Grace-1996 then merged with a New York. subsidiary of Fresenius Medical Care AG, a German company, with Grace-1996 as the surviving company. Grace-1996, the merged

ORIGINAL COMPLAINT-PAGE 6

entity, was renamed Fresenius Medical Care Holdings, Inc ("Grace 1996" or "Fresenius"). In connection with the merger, the shares of Grace-1996 prior to the merger were cancelled and Grace 1996's shareholders effectively received 44.8% of the ownership (through American Depositary Receipts) of Fresenius Medical Care, AG ("Fresenius AG").

20.  The distribution of the stock of post-merger Grace-1996 between the shareholders of pre-merger Grace-1996 and the shareholders of Fresenius AG was based on valuations performed by financial advisors for Grace-1996 that valued the business of NMC on a stand-alone basis from approximately $ 3.15 billion to approximately $ 4 billion.

21.  Prior to the Transfers, Grace-1996 received a public offer from Baxter Health Care for the acquisition of NMC that was valued at $3.8 billion.

22.  As a result of the Transfers, Grace-Conn. was stripped of assets worth no less than $3.15 billion and as much as $4 billion or more. Grace-Conn. received a $2.263 billion dividend from NMC and Grace-Conn. was left with full responsibility for liabilities to Asbestos Claimants who would otherwise have had recourse to the value of NMC.

23.  Not surprisingly, Grace-1996 acknowledged in its 1996 S-4 that the Transfers might constitute a fraudulent transfer in a section entitled "Fraudulent Transfer and Related Considerations":

> "Under applicable law, the NMC Distribution would
> constitute a 'fraudulent transfer' if (a) New Grace or Grace
> Chemicals is insolvent, (b) the effect of the NMC
> Distribution would render New Grace or Grace Chemicals
> insolvent, (c) the NMC Distribution would leave New
> Grace or Grace Chemicals unreasonably small capital, or
> (d) New Grace or Grace Chemicals intended to incur, or

ORIGINAL COMPLAINT-PAGE 7

> believed it would incur, debts beyond its ability to pay as such debts mature . . . Grace believes that, based on the factors considered in connection with the NMC Distribution, the NMC Distribution will not be a fraudulent transfer and will be made out of surplus in accordance with applicable law. There is no certainty, however, that a court would reach the same conclusion in determining that New Grace and Grace Chemicals have satisfied the applicable standards. In this regard, it should be noted that Grace Chemicals has had, and is expected to continue to have significant liabilities arising out of asbestos-related litigation and claims . . . If, in a lawsuit filed by an unpaid creditor or a representative of unpaid creditors or a trustee in bankruptcy, a court were to find that, at the time the NMC Distribution was consummated or after giving effect thereto, either New Grace or Grace Chemicals, as the case may be, (a) was insolvent, (b) was rendered insolvent by reason of the NMC Distribution, (c) was engaged in a business or transaction for which its remaining assets constituted unreasonably small capital, or (d) intended to incur, or believed it would incur, debts beyond its ability to pay as such debts matured, then such court might require FNMC or NMC to fund certain liabilities of New Grace or Grace Chemicals, as the case may be, for the benefit of New Grace's or Grace Chemicals' creditors. The same consequences would also apply were a court to find that the NMC Distribution was not made out of the surplus of Grace Chemicals."

1996 S-4, p. 29.

24. Grace-1996 represented that the newly formed Grace-1998 would be adequately capitalized and claimed that the Transfers were not fraudulent. Yet, Grace-1996 admitted in its SEC filing that "there is no certainty, however, that a court would reach the same conclusion." 1996 S-4, p. 29.

### Grace-Conn.'s Asbestos Liabilities and Insufficient Reserves

25. As of the date of the Transfer, it was obvious that Grace-Conn. faced tremendous exposure as a result of its asbestos liabilities. Grace-1998's consolidated accrual for asbestos

ORIGINAL COMPLAINT-PAGE 8

liabilities at December 31, 1996, was $994.1 million. Grace-1998 Form 10-K dated December 31, 1996, p. 10 (the "1996 10-K"). This reserve took into account the pending asbestos-related personal injury and property damage claims as well as asbestos-related personal injury claims expected to be filed through 2001, but simply ignored all Asbestos Claims expected to be filed thereafter. The reserve grossly understated the extent of Grace-Conn.'s actual asbestos liabilities.

26. Indeed, according to the Grace Form 10-K filed with the SEC on April 2, 2001 (the "2001 10-K), as of December 31, 2000, Grace-Conn. was a defendant in approximately 61,395 asbestos related lawsuits, involving 124,907 claims for personal injury.

27. In that same Form 10-K, Grace noted that judgments had been entered against it in seven (7) asbestos-related property damage lawsuits for a total of $60.3 million and that it had settled 53,607 asbestos-related personal injury lawsuits for a total of approximately $1.25 billion. It also increased its accrual for asbestos liabilities as of December 31, 2000 to $1.1 billion, notwithstanding its payment of in excess of $500 million in judgments and settlements since its December, 1996 estimate. Grace's reserve, moreover, did not take into account a certified class action filed on behalf of all owners of homes containing Grace-Conn.'s Zonolite Attic Insulation in the State of Washington and a multi-district national class action filed against it that are pending in the federal district court of Massachusetts.

28. At the time of the Transfers, or as a result of the carrying out of the Transfers, Grace-Conn. was insolvent by reason of its massive liabilities if its Zonolite liability was of the order of magnitude alleged in the litigation now pending.

### The Asbestos Committees are Armed with All Causes of Action Belonging to Grace Conn. and All Avoidance Powers Derived From its Creditors

29.     Pursuant to the Authorizing Order, the Asbestos Committees have standing to prosecute and enforce all claims belonging to pre-petition Grace-Conn. arising from the Transfers. Pursuant to the Authorizing Order and the strong-arm powers inhering in the debtor-in-possession (*see* 11 U.S.C. §§ 544(b), 1107(a)), the Asbestos Committees also have standing to assert the rights of any and all creditors of Grace-Conn. to avoid the Transfers.

30.     For purposes section 544(b) of the Bankruptcy Code and applicable law governing transfers by debtors, the Asbestos Claimants were all creditors of Grace-Conn. regardless of whether their respective claims were matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.

31.     Pursuant to section 544(b) of the Bankruptcy Code, plaintiffs "may avoid any *transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title* [title 11 of the United States Code] . . . ." 11 U.S.C. § 544(b). There exist one or more unsecured creditors holding an allowable claim within the meaning of section 544(b) who, subject only to the automatic stay of bankruptcy, have the right to avoid the Transfer under applicable nonbankruptcy law, including but not limited to the Uniform Fraudulent Conveyance Act as in force in several States, the Uniform Fraudulent Transfer Act as in force in the majority of States, and subchapter D of chapter 76 of the United States Code, 28 U.S.C. § 3301 *et seq.* The Asbestos Committees, as representatives of the bankruptcy estates of Grace and Grace-Conn., wield here all avoidance rights derived from those creditors.

<u>**COUNT I**</u>

**Constructive Fraudulent Transfer**

32.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 31.

ORIGINAL COMPLAINT-PAGE 10

33. Under applicable law, a transfer is fraudulent as to a present creditor if it was made by the debtor without receiving a reasonably equivalent value in exchange for the transfer, and the debtor was insolvent at that time or became insolvent as a result of the transfer.

34. Grace-Conn. did not receive reasonably equivalent value in exchange for the Transfers. At the time of the Transfers, Grace-Conn. was insolvent within the meaning of applicable law, or became insolvent as a result of the Transfers, to the extent that its Zonolite liabilities are of the range of magnitude alleged in litigation now pending.

35. Accordingly, the Transfers were fraudulent as to Grace-Conn.'s creditors, without regard to Grace-Conn.'s actual intent.

## COUNT II

### Constructive Fraudulent Transfer

36. Plaintiffs repeat and reallege all of the allegations of paragraphs 1 through 31.

37. Under applicable law, a present or future creditor may recover for a transfer made without receiving a reasonably equivalent value in exchange for the transfer if the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

38. At all times from and after the Transfers, Grace-Conn. was engaged in a business for which the assets left in its hands were unreasonably small to the extent that the Zonolite claims are in the range of magnitude as alleged in the Bankruptcy Cases.

39. Accordingly, pursuant to applicable law, the Transfers were fraudulent as to Grace-Conn.'s creditors, again without regard to Grace-Conn.'s actual intent.

## COUNT III

ORIGINAL COMPLAINT-PAGE 11

### Constructive Fraudulent Transfer

40. Plaintiffs repeat and reallege all of the allegations of paragraphs 1 through 31.

41. Under applicable law, a present or future creditor may recover for a transfer made without receiving a reasonably equivalent value in exchange for the transfer if the debtor believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

42. When Grace-Conn. made the Transfers, it believed, or reasonably should have believed that it would incur debts beyond its ability to pay as they mature based on its knowledge of the continuing plan to divest Grace-Conn. assets, and what it knew, or should have known, of the underlying facts and circumstances giving rise to the increased asbestos claims, including Zonolite.

43. Accordingly, pursuant to applicable law, the Transfers were fraudulent as to Grace-Conn.'s creditors, again without regard to actual intent.

### COUNT IV

### Transfer Made With Intent to Hinder, Delay or Defraud

44. Plaintiffs repeat and reallege all of the allegations of paragraphs 1 through 31.

45. Under applicable law, a transfer is fraudulent as to present or future creditors if the debtor made the transfer with actual intent to hinder, delay or defraud any creditor of the debtor.

46. The Transfers were made with actual intent to hinder, delay, or defraud present and future creditors of Grace-Conn., including the Asbestos Claimants. In each Transfer, the transferee shared in that intent.

ORIGINAL COMPLAINT-PAGE 12

47.  Such intent is apparent from, *inter alia,* the direct and natural consequence of the Transfers in prejudicing the rights of Asbestos Claimants by means of the unjust diminution in the property of Grace-Conn., and from the following "badges of fraud": (i) The Transfers were to insiders; (ii) the public stockholders of Grace-1996 retained indirect ownership of the transferred property before and after the Tranfers; (iii) the Transfers and the role of various entities in connection therewith were obscured by the inordinately complex steps by which the scheme was carried out, including without limitation the proliferation of entities named "W.R. Grace & Co." and the renaming of Grace-1996 as "Fresenius Medical Care Holdings, Inc."; (iv) before the Transfers were made, Grace-Conn. and affiliates had been sued in tens of thousands of asbestos-related cases and expected to be sued in tens of thousands of additional asbestos-related cases in the future; (v) the value of the consideration received by Grace-Conn. in the Transfers was not reasonably equivalent to the value of the property transferred; and (vi) Grace-Conn. was insolvent at the time of the Transfers or became insolvent shortly thereafter to the extent that the Zonolite liabilities are of the order of magnitude as alleged in litigation now pending.

48.  Accordingly, pursuant to applicable law, the Transfers were fraudulent as to Grace-Conn.'s creditors.

## COUNT V

### Successor Liability

49.  Plaintiffs repeat and reallege all of the allegations of paragraphs 1 through 31.

50.  The Transfers and related steps were undertaken for the fraudulent purpose of escaping Asbestos Claims.

ORIGINAL COMPLAINT-PAGE 13

51. There is no just reason to respect the integrity of the Transfers or related steps. On the contrary, respecting such transactions would unjustly elevate form over substance and allow the improper purpose of these transactions to succeed by placing assets of Grace-Conn. beyond the reach of Asbestos Claimants.

52. Accordingly, Fresenius and NMC have succeeded by operation of law to unlimited liability for Asbestos Claims against Grace-Conn. or Grace.

## COUNT VI
### Piercing the Corporate Veil

53. Plaintiffs repeat and reallege all of the allegations of paragraphs 1 through 31.

54. In the Transfers and related steps, Grace-Conn. and NMC were subject to Grace-1996's pervasive domination and control. Grace-Conn., and NMC lacked any separate mind, will or existence of their own, and acted as the mere instrumentalities, agents and alter egos of Grace-1996.

55. The Transfers were effectuated for the fraudulent and improper purpose of knowingly and intentionally enhancing the interests of Grace-1996's shareholders at the expense and to the unjust detriment of the Asbestos Claimants.

56. Grace-Conn., Grace, and Asbestos Claimants who are creditors of those entities have suffered injury and unjust loss as a proximate result of the misconduct of Grace-1996 and the wrongful exercise of domination and control in the Transfers and related steps.

57. In the interest of substantial justice, the corporate veils separating Grace-1996 and NMC from Grace-Conn. and Grace should be pierced and disregarded, and Defendants should be subjected to unlimited liability for the Asbestos Claims against Grace-Conn. or Grace.

## COUNT VII

### Breach of Fiduciary Duty

58.   Plaintiffs repeat and reallege all of the allegations of paragraphs 1 through 31.

59.   As the sole shareholder of Grace-Conn., Grace-1996 owed a fiduciary duty to its subsidiary corporation. As an incident of that fiduciary duty, Grace-1996 bears the burden of proving that any challenged transaction between itself and Grace-Conn. met the test of good faith and inherent fairness from the viewpoint of Grace-Conn.

60.   In the exercise of control over Grace-Conn. as the only shareholder of that corporation, Grace-1996 caused the Transfers to occur.

61.   The Transfers violated Grace-1996's fiduciary duty and unjustly enriched Grace-1996, and its successors at the expense of Grace-Conn. and its creditors. Grace-1996 received the NMC stock subject to a duty to make full restitution of the value of that property and all proceeds thereof, and to pay damages to Grace-Conn. to the extent that the value of that property or its proceeds have been dissipated or re-transferred.

## COUNT VIII

### Avoidance of Transfer to Insiders
### Received in Breach of Fiduciary Duty

62.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 31.

63.   At the time of the Transfers, the directors and officers of Grace-1996 were subject to fiduciary duties toward the creditors of Grace-Conn. because (i) Grace-Conn. was insolvent or was rendered insolvent by the Transfers, or, in the alternative, (ii) if not actually insolvent immediately before or immediately after the Transfers, Grace-Conn. was operating in the vicinity

ORIGINAL COMPLAINT-PAGE 15

of insolvency if the Zonolite liability was of the order of magnitude as alleged in litigation now pending.

64. The fiduciary duty owed to creditors obligated Grace-Conn. and its officers and directors to refrain from preferring insiders over unrelated creditors in the disposition of Grace-Conn.'s property.

65. The Transfers and related steps violated the applicable fiduciary duty.

66. By reason of the Transfers, Fresenius has been unjustly enriched.

67. Having received the proceeds of the Transfers as a direct and proximate result of a breach of fiduciary duty, Fresenius holds those proceeds subject to a duty to make full restitution thereof.

## COUNT X

### (Punitive Damages)

68. Plaintiffs repeat and reallege all of the allegations of paragraphs 1 through 31.

69. In respect of the Transfers and related steps, Fresenius acted in a willful, wanton, and reckless manner and in callous disregard of the rights of Grace-Conn.'s asbestos victims. The misconduct rises to such a high level of moral culpability as to justify the imposition of punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demands judgment against Defendants for the benefit of the estates and creditors of Grace-Conn. and Grace, and pray that the Court grant each of the following remedies:

a. avoidance of the Transfer pursuant to 11 U.S.C. § 544(b) or other applicable law;

b. recovery of all stock and assets received by Defendants in the Transfers, or a money judgment for the value thereof, pursuant to 11 U.S.C. § 550(a) or other applicable law;

c. a money judgment pursuant to 11 U.S.C. § 550(a) or other applicable law for dissipation of the transferred property after the Transfers, including without limitation any decline in the value of such property between the time of the Transfers and the time of final judgment;

d. a money judgment pursuant to 11 U.S.C. § 550(a) or other applicable law for all consequential and incidental damages and expenses incurred by Grace-Conn. or Grace with respect to, or as a result of, the Transfers;

e. a declaratory judgment that Defendants bear unlimited liability as successors to the liabilities of Grace-Conn. and Grace for Asbestos Claims;

f. a declaratory judgment that the corporate veils separating Grace-1996 and NMC from Grace-Conn. and Grace are pierced and disregarded such that Defendants bear unlimited liability for Asbestos Claims against Grace-Conn. or Grace;

g. an award of punitive damages according to proof;

h. an award of prejudgment interest;

i. an award of reasonable attorneys' fees; and

j. such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury for all issues so triable.

Dated: March 18, 2002    Respectfully submitted,

FERRY, JOSEPH & PEARCE, P.A.

By: /s/Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899

ORIGINAL COMPLAINT-PAGE 17

000017

XXX-000170

(302) 575-1555
-and-

BILZIN SUMBERG DUNN BAENA
PRICE & AXELROD, LLP
Scott L. Baena
Robert W. Turken
First Union Financial Center
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131

Counsel for The Official Committee of
Asbestos Property Damage Claimants
-and-

CAMPBELL & LEVINE, LLC

By: /s/Matthew G. Zaleski, III
Matthew G. Zaleski, III (No. 3557)
1201 N. Market Street, 15th Floor
Wilmington, DE 19801
(302) 426-1900

-and-

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
Rita C. Tobin
399 Park Avenue, 27th Floor
New York, NY 10022
(212) 319-7125

-and-

CAPLIN & DRYSDALE, CHARTERED
Peter Van N. Lockwood
Trevor W. Swett
Nathan D. Finch
One Thomas Circle, N.W.
Washington, D.C. 20005
(202) 862-5000

Attorneys for the Official Committee
Of Asbestos Personal Injury Claimants

-and-

ORIGINAL COMPLAINT-PAGE 18

McKOOL SMITH, P.C.
Lewis T. LeClair
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000

Proposed Counsel for Plaintiffs

ORIGINAL COMPLAINT-PAGE 19