Effective Time which shall remain unchanged and unaffected by the STS Merger, except that Article 1 of the Certificate of Incorporation of the surviving corporation shall be amended at the STS Effective Time to read as follows:

"The name of the Corporation is Support Terminal Services, Inc."

(iv) The persons who are the directors of NSTS at the STS Effective Time shall continue as directors of the surviving corporation until their respective successors are duly elected and qualified.

(v) The persons who are officers of NSTS at the STS Effective Time shall continue as such officers of the surviving corporation until the Board of Directors of the surviving corporation shall otherwise determine.

(vi) The capital stock of each of the constituent corporations shall be treated as follows:

(A) The shares of capital stock of NSTS issued and outstanding immediately prior to the STS Effective Time, and all rights in respect thereof, shall be unaffected by the STS Merger.

(B) In lieu of and in exchange for the issued and outstanding shares of capital stock of STS held by GEC immediately prior to the STS Effective Time, OLP shall pay to GEC consideration as set forth in Section 2.05.

(b)  At the STS Effective Time the constituent corporations shall become a single corporation and NSTS shall continue to

KPOP 0063

16

exist as the surviving corporation and shall thereupon and there-
after possess all the rights, privileges, immunities and
franchises, as well of a public as of a private nature, and be
subject to all the liabilities and obligations of each of the
constituent corporations; all property, real, personal, and mixed,
belonging to each of the constituent corporations shall be vested
in NSTS without further act or deed and without any transfer or
assignment having occurred, and all debts due on whatever account,
and all other choses in action, and all and every other interest,
of or belonging to or due to each of the constituent corporations
shall thenceforth be taken and deemed to be vested in NSTS (not
pursuant to contract but by operation of law), without further act
or deed and without any transfer or assignment having occurred.

(c)  In the manner prescribed by Section 228 of the DGCL,
GEC as the sole stockholder of STS, and OLP as the sole stockholder
of NSTS, hereby approve this Agreement as the agreement of merger
for the STS Merger as required by Section 251(c) of the DGCL.

2.05  Consideration.    (a)  Upon delivery of this
Agreement, OLP has paid GEC a down payment of $2,500,000 (the "Down
Payment") in immediately available United States funds to an
account previously designated by GEC, and GEC hereby acknowledges
receipt of such payment. If the Closing occurs in accordance with
the terms and provisions hereof, the Down Payment plus interest at
the LIBOR Based Rate for the number of days from and including the
date hereof, to and excluding the Closing Date, shall be credited
against what OLP owes to GEC at the Closing pursuant to Section

KPOP 0064

**000112**

XXX-001190

17

4.02(h). If the condition contained in Section 11.10 has not been satisfied, and all the other conditions set forth in Article 11 have been satisfied or satisfaction thereof tendered, and OLP declines to close the transaction contemplated by this Agreement, then upon termination of this Agreement, notwithstanding any other term or provision hereof, GEC shall be entitled to retain the Down Payment (and any interest accrued thereon) in its entirety and OLP shall have no further liability under this Agreement or the Ancillary Agreements or any other documents or agreements related hereto or thereto except for breaches, if any, by OLP of its covenants and agreements set forth in this Agreement and Ancillary Agreements and any other documents or agreements related hereto or thereto. If this Agreement is terminated other than in the circumstances described in the immediately preceding sentence, then GEC shall reimburse OLP for the Down Payment, with interest at the LIBOR Based Rate for the number of days from and including the date hereof to and excluding the date of reimbursement; provided that such right to reimbursement shall not affect any liability or obligation that OLP has to GEC as a result of any breach by OLP of the covenants and agreements contained in this Agreement.

(b) In lieu of and in exchange for the STI Shares and the STS Shares, OLP shall pay to GEC the Purchase Price in the manner described in Section 4.02(h) and Article 5; provided that the payment for the STI Shares shall be deemed to be a payment to STS that was distributed to GEC.

KPOP 0065

18

## ARTICLE 3

### Closing Date: Termination

3.01    <u>Scheduled Closing Date</u>.    The "Scheduled Closing Date" shall be a date agreed upon by GEC and OLP in writing, which date shall be no later than the 30th business day following the fulfillment or waiver of the conditions set forth in Sections 11.03 and 12.03, unless GEC and OLP shall agree to a different Scheduled Closing Date in an amendment to this Agreement executed and delivered in accordance with Section 17.07.    For purposes of this Article, "business day" shall mean a day which is not a Saturday or Sunday, nor a day on which banks are generally closed in the City of Dallas.

3.02    <u>Termination</u>.    (a)    This Agreement may be terminated at any time prior to the Closing by mutual written agreement of the parties.

(b) If the conditions set forth in Sections 11.03 and 12.03 have not all been fulfilled or waived by the party entitled to waive such conditions on or before 60 days after the date hereof, unless the parties shall agree otherwise in an amendment to this Agreement executed and delivered in accordance with Section 17.07, then either GEC or OLP may terminate this Agreement by giving notice to the other, in the manner provided in Section 16.01, at any time prior to the fulfillment or waiver of all such conditions.

(c) If for any reason the Closing shall not have been consummated on or before the Scheduled Closing Date, either GEC or

KPOP 0066

000114

XXX-001192

OLP shall have the right to terminate this Agreement at any time thereafter by giving at least three days' advance notice of such termination to the other.

(d)  The termination of this Agreement, whether in accordance with any of the preceding provisions of this Agreement or otherwise, shall not affect the rights of either GEC or OLP against the other for breach of any covenant or agreement contained in this Agreement; provided, however, that upon termination in accordance with the preceding provisions of this Section, the parties shall be released from any and all liability for breach of any of the representations and warranties contained in Article 6 or Article 7.

(e)  OLP and GEC hereby agree that the provisions of this Section 3.02, Article 13 (as it relates to breach of covenants but not as it relates to breach of representations and warranties), and Sections 2.05(a), 15.01, 15.03 and 15.04 shall survive any termination of this Agreement.

### ARTICLE 4

### Actions at Closing; Discharge of Certain Obligations; Further Assurances

4.01  Closing.  The Closing shall take place at 10:00 a.m. local time at the offices of Vinson & Elkins, L.L.P. at Dallas, Texas, or at such other time and place as the parties hereto shall agree in writing.

4.02  Actions at the Closing.  At the Closing the following actions shall take place in the order in which they appear below:

KPOP 0067

20

(a) GEC shall cause to be filed with the State Corporation Commission of Virginia the appropriate documents to effect the STV Merger.

(b) GEC shall cause to be executed, acknowledged and filed with the Secretary of State of Delaware a certificate of ownership and merger to effect the STP Merger pursuant to Section 253 of the DGCL.

(c) [This section is intentionally left blank.]

(d) GEC and OLP shall cause to be executed, acknowledged and filed with the Secretary of State of Delaware a certificate of merger to effect the STI Merger pursuant to Section 251 of the DGCL.

(e) STS shall deliver to OLP certificates representing the STI Shares, duly endorsed in blank or together with executed stock powers duly endorsed in blank.

(f) GEC and OLP shall cause to be executed, acknowledged and filed with the Secretary of State of Delaware a certificate of merger to effect the STS Merger pursuant to Section 251 of the DGCL.

(g) GEC shall deliver to OLP certificates representing the STS Shares, duly endorsed in blank or together with executed stock powers duly endorsed in blank.

(h) OLP shall deliver to GEC (i) $63,680,000, representing GEC's and OLP's estimate of the Purchase Price (the "Estimated Purchase Price"), minus (ii) the $2,500,000 down payment and interest thereon described in Section 2.05(a), in immediately

KPOP 0068

000116

XXX-001194

21

available United States funds by wire transfer to an account designated by GEC.

(i) [This section is intentionally left blank.]

(j) GEC shall deliver to OLP any minute books and stock transfer books and corporate seals of the Corporations that are not then in the possession of the Corporations.

(k) GEC shall deliver to OLP the certificate and opinion of counsel described in Sections 11.06 and 11.07.

(l) OLP shall deliver to GEC the certificate and opinion of counsel described in Sections 12.06 and 12.07.

(m) Transfer of custody of product inventory shall take place as provided in the schedule to this Section.

4.03    Effectiveness of Closing.  No action to be taken or delivery to be made at the Closing shall be effective until all of the actions to be taken and deliveries to be made at the Closing are complete; provided that the mergers described in Sections 4.02(a) through (f) shall take place in the order set forth in Section 4.02.

4.04    Discharge of Certain Intercompany Liabilities.
(a) Except for the Surviving Intercompany Accounts, any amounts owed by any Grace Entity to any Corporation, or by any Corporation to any Grace Entity, shall be deemed paid and discharged, effective upon the occurrence of the Closing, except as may be otherwise provided in the Ancillary Agreements.

(b)   All obligations of the Corporations to reimburse Grace for checks written by the Corporations in the ordinary course

KPOP 0069

000117

XXX-001195

22

of business prior to the Closing Date, and honored by Grace, shall be deemed paid and discharged, effective as of the Closing. All funds in the Corporation's depository accounts and imprest accounts on the Closing Date shall be the property of Grace, except for a disbursement account and an imprest payroll account to be opened by STS, each of which shall have a balance of $1,000.00 at the Closing and signatories designated by OLP.

4.05   <u>Further Assurances</u>.  At any time and from time to time from and after the Closing, each of GEC and OLP shall, at the request of the other, take all such actions as the other shall reasonably request in order to fully carry out the transactions contemplated by this Agreement.

### ARTICLE 5

<u>Adjustment of Purchase Price; Other Post-Closing Adjustments</u>

5.01   <u>Procedure</u>.  As of the close of business on the Closing Date, representatives of GEC and OLP shall cooperate to close the books of the Corporations to the extent required to establish the Working Capital Amount as provided in Section 5.02 for the purpose of determining the Purchase Price.  OLP shall make reasonably available to GEC the services of the Corporations' employees and shall provide GEC with reasonable access to facilities for such purposes.  GEC and OLP each shall be permitted to have its representatives and advisors observe the closing of the books and the other actions to be taken pursuant to this Article.

5.02   <u>Preparation of Closing Statement</u>.  As soon as practicable after the Closing Date, but in no event later than

KPOP 0070

23

thirty days after the closing of the books of the Corporation (subject to reasonable extension for unforeseen circumstances), GEC shall prepare and deliver to OLP a consolidated statement of working capital (the "Closing Statement") of the Corporations as of the close of business on the Closing Date, setting forth the Working Capital Amount.  The "Working Capital Amount" shall be equal to the dollar value of the consolidated current assets of the Corporations less the dollar value of the consolidated current liabilities of the Corporations, except that all cash accounts (other than petty cash and the accounts described in the exception to the second sentence of Section 4.04(b)) and those current assets and current liabilities which are to be discharged pursuant to Section 4.04, or retained or assumed by any Grace Entity as of the Closing Date in accordance with any of the Ancillary Agreements, shall be excluded from the calculation of the Working Capital Amount.  The Closing Statement shall be prepared on a going concern basis using the Grace Accounting Principles and the same levels of materiality, account classifications and procedures as used to prepare the unaudited consolidated balance sheet as of November 30, 1992 of the Corporations prepared on a legal entity basis (the "Legal Entity Balance Sheet"), a complete copy of which is attached to the schedule to this Section.  If OLP does not object to the Working Capital Amount shown on the Closing Statement, by written notice to GEC within 45 days after receipt by OLP of the Closing Statement, setting forth objections thereto in reasonable detail,

KPOP 0071

24

then the Working Capital Amount set forth on the Closing Statement shall be deemed conclusive and binding on the parties.

5.03    Dispute Resolution.    (a) If OLP does so object to the Working Capital Amount shown on the Closing Statement, then GEC and OLP shall promptly endeavor to agree upon the proper amount of the Working Capital Amount.

(b)    If a written agreement determining the Working Capital Amount has not been reached within 30 days after GEC's receipt of OLP's notice of objection to the Closing Statement, then either party may, by notice to the other, submit for determination to Ernst & Young (the "Arbitrator") what adjustments, if any, must be made in the Closing Statement in order for the Working Capital Amount to be determined in accordance with the provisions of this Agreement.    Any such determination by the Arbitrator shall be conclusive and binding on the parties.

5.04    Fees and Expenses of Arbitrator.    The fees and expenses of the Arbitrator shall be shared by GEC and OLP or borne by GEC or OLP as follows.    If the Working Capital Amount as determined by the Arbitrator is between the Working Capital Amounts proposed by GEC and OLP, respectively, then GEC and OLP shall each bear that portion of such fees and expenses equal to the total fees and expenses multiplied by a fraction, the numerator of which shall be the difference between the Working Capital Amount as determined by the Arbitrator and the Working Capital Amount as proposed by GEC and OLP, respectively, and the denominator of which shall be the difference between the Working Capital Amount as proposed by GEC

KPOP 0072

25

and the Working Capital Amount as proposed by OLP. If the Working Capital Amount as determined by the Arbitrator is not between the Working Capital Amounts proposed by GEC and OLP, respectively, then the party whose proposed Working Capital Amount differs most from the Working Capital Amount proposed by the Arbitrator shall bear all of the fees and expenses of the Arbitrator. Nothing herein shall be construed to (a) authorize or permit the Arbitrator to determine any question or matter whatever under or in connection with this Agreement except the determination of what adjustments, if any, must be made in the amounts set forth on the Closing Statement delivered by GEC in order for the Working Capital Amount to be determined in accordance with the provisions of this Agreement, or (b) require the Arbitrator to follow the rules or procedures of the American Arbitration Association.

5.05  <u>Adjusting Payment</u>. Promptly after determination of the Working Capital Amount, whether by notice without objection as provided in Section 5.02, by written agreement between GEC and OLP as provided in Section 5.03(a), or pursuant to the dispute resolution procedures described in Section 5.03(b), an adjusting payment shall be made by GEC to OLP or by OLP to GEC in accordance with this Section. If the Purchase Price exceeds the Estimated Purchase Price, then OLP shall promptly pay to GEC an amount equal to such excess in immediately available funds. If the Estimated Purchase Price exceeds the Purchase Price, then GEC shall promptly pay to OLP an amount equal to such excess in immediately available funds. If the adjusting payment made pursuant to this Section 5.05

26

exceeds $100,000, the payor under this Section 5.05 shall, at the same time such adjusting payment is made, pay interest to payee under this Section 5.05 at the LIBOR Based Rate for the number of days from and including the Closing Date to and excluding the date of payment.

5.06    Transactions with Grace Entities.  From and after the Closing, any amounts which are owed by any Grace Entity to any of the Corporations, or are owed by any of the Corporations to a Grace Entity, for transportation or storage services provided in the ordinary course of business (collectively, the "Surviving Intercompany Accounts"), shall be paid in cash by such Corporation to such Grace Entity, or by such Grace Entity to such Corporation, as the case may be, in accordance with past practice (but not to exceed a reasonable period of time for payment).

ARTICLE 6

Representations and Warranties by GEC

The representations and warranties set forth in this Article as to the knowledge of the GEC Executives are as to the actual present personal knowledge, awareness and good faith belief of such individuals at the date of this Agreement and as of the Closing Date for purposes of Sections 11.01 and 11.06.  For purposes of this Agreement, "GEC Executives" means Donald E. Grimm (President), Lawrence G. Besson (Senior Vice President and Chief Financial and Administrative Officer), Frank L. Ryan II (Vice President-Finance), Ralph R. Mills (Vice President-Controller) and James Roderick Clark (Vice President-Development); and "Corporation

KPOP 0074

27

Executives" means Fred T. Johnson (President), Ned L. Hoover
(Executive Vice President), Ronald D. Scoggins (Senior Vice
President), Philip J. Lewis (Vice President-Finance) and Arthur
(Lee) Ellis (Vice President-Operations).

GEC hereby represents and warrants to OLP and the OLP
Corporations as follows:

6.01   Incorporation.   (a)   GEC is a corporation duly
organized, validly existing and in good standing under the laws of
the State of Delaware with full corporate power and authority to
enter into this Agreement and the Ancillary Agreements and perform
its obligations hereunder and thereunder.

(b)  Each of the Corporations is a corporation duly orga-
nized, validly existing and in good standing under the laws of its
jurisdiction of incorporation, with full corporate power and
authority to enter into this Agreement and the Ancillary Agreements
to which it is a party and operate its business as currently
conducted.   The schedule to this Section sets forth (i) the
jurisdiction of incorporation of each Corporation and (ii) the
jurisdictions where each Corporation is authorized or otherwise
qualified to do business as a foreign corporation.

6.02   Authorization.   The execution and delivery of this
Agreement and the Ancillary Agreements by those of GEC and the
Corporations that are respectively parties thereto, and the perfor-
mance by GEC and the Corporations of their respective obligations
hereunder and thereunder, have been duly and validly authorized by
all necessary corporate action of GEC and the Corporations.   This

KPOP 0075

000123

XXX-001201

28

Agreement and the Ancillary Agreements to which they are
respectively parties have been duly executed and validly delivered
by GEC and the Corporations and are legally binding on those of GEC
and the Corporations that are respectively parties hereto and
thereto.

6.03  <u>No Conflict or Consents</u>.  The execution and
delivery of this Agreement and the Ancillary Agreements to which
they are respectively parties by GEC and the Corporations, and the
performance by GEC and the Corporations of their respective obliga-
tions hereunder and thereunder, do not (a) conflict with their
respective corporate charters or by-laws, or (b) result in any
breach of any of the provisions of, or constitute a default
under, any statute, law, rule, regulation, judgment, order, decree,
writ or injunction of any court or Governmental Authority, or any
agreement, understanding or restriction, to which any of GEC and
the Corporations is a party or by which it or any of its assets are
bound, which breach or default would adversely affect the ability
of GEC or the Corporations to perform its obligations under this
Agreement.  Except as set forth on the schedule to this Section and
except for compliance with HSR, and except for the permits,
licenses, filings, notices and consents to be obtained pursuant to
Sections 9.03 and 9.04, the execution and delivery by each of GEC
and the Corporations of this Agreement and the Ancillary Agreements
to which it is a party, and its performance of its obligations
hereunder and thereunder, will not require it to obtain or make any
waiver, consent, notice, approval or authorization of, or filing

KPOP 0076

000124

XXX-001202

29

with, any third party or Governmental Authority, other than the
filings contemplated by this Agreement.

       6.04   <u>Capitalization</u>. (a) The schedule to this Section
sets forth the authorized, issued and outstanding capital stock of
each of the Corporations.

       (b)   GEC is the sole record and beneficial owner of all
the STS Shares; STS is the sole record and beneficial owner of all
the STI Shares and the STP Shares; and STP is the sole record and
beneficial owner of all the STV Shares, in each case free and clear
of all claims, liens, security interests, pledges, options, encum-
brances, charges, agreements, voting trusts and proxies or other
restrictions.

       (c)   The issued and outstanding shares of the capital
stock of each of the Corporations have been duly and validly issued
and are fully paid and nonassessable.

       (d)   There are no rights, subscriptions, warrants,
options, conversion rights, commitments or agreements of any kind
binding on GEC or any of the Corporations that are outstanding or
in effect to purchase or otherwise acquire (i) the capital stock
of any Corporation or (ii) any obligations of any kind convertible
into or exchangeable for any shares of capital stock of any
Corporation, or pursuant to which GEC or any of the Corporations
may be obligated to issue, sell, purchase or redeem any shares of
capital stock or other securities of any Corporation.

       6.05   <u>Financial Statements</u>.  GEC has delivered to OLP
and the schedule to this Section contains complete copies of the

KPOP 0077

000125

XXX-001203

30

following consolidated financial statements of the Corporations
(the "Management Reports"): (a) unaudited balance sheets as of
December 31, 1989, 1990, and 1991 and unaudited income statements
for each of the three years ended December 31, 1989, 1990, and
1991; and (b) unaudited balance sheets as of November 30, 1991 and
1992 and unaudited income statements for each of the eleven months
ended November 30, 1991 and 1992. The Management Reports have been
prepared by the accounting staffs of the Corporations in the
regular course of business for purposes of reporting the financial
position and results of operations of the Corporations to the
management of GEC and Grace. Except as set forth in the schedule
to this Section, the Management Reports have been prepared in
accordance with the Grace Accounting Principles and fairly present
in all material respects, in accordance with the Grace Accounting
Principles, the consolidated financial condition and results of
operations of the Corporations for the dates and periods covered
by the Management Reports, subject to normal recurring year-end
adjustments. GEC has delivered to OLP and the schedule to this
Section contains a statement setting forth a reconciliation of the
differences between the Legal Entity Balance Sheet and the
corresponding balance sheet in the Management Reports. Except as
set forth on the schedule to this Section, the Legal Entity Balance
Sheet was prepared using the same levels of materiality, account
classifications and procedures as used to prepare such
corresponding balance sheet.

KPOP 0078

000126

XXX-001204

31

6.06    <u>Litigation and Claims</u>.  Except as set forth in the schedule to this Section, and except for matters relating to Environmental Laws (which matters are covered by Section 6.11), there are no claims, actions, suits or proceedings, judgments, orders, writs, or injunctions of any court or Governmental Authority pending or presently in effect or, to the knowledge of the GEC Executives, after consultation with the Corporation Executives, threatened against GEC or any Corporation which would reasonably be expected to (i) adversely affect the ability of GEC to execute, deliver or perform its obligations under this Agreement or (ii) have an adverse effect on the business, financial condition or results of operations of the Corporations.

6.07    <u>Labor and Employment</u>.  The schedule to this Section sets forth a list of (a) all collective bargaining or other agreements with labor unions to which any Corporation is a party, and (b) all written employment agreements to which any Corporation is a party which will remain in effect after the Closing.  GEC has delivered to OLP true and complete copies of all such agreements. Except as set forth on the schedule to this Section, there is no unfair labor practice complaint against the Corporations relating to any of their employees pending or, to the knowledge of the GEC Executives, after consultation with the Corporation Executives, threatened before the National Labor Relations Board or any strike, lockout, material dispute, slowdown or stoppage pending against the Corporations.

KPOP 0079

000127

XXX-001205

32

6.08  <u>Insurance</u>. The schedule to this Section describes the property and casualty and all other insurance coverage maintained by or on behalf of each Corporation. Such policies are in full force and effect as of the date hereof.

6.09  <u>Contracts</u>. The schedule to this Section lists all contracts and agreements to which any Corporation is a party (a) which cannot be canceled upon notice of one year or less and under which it is reasonably expected that such Corporation will make expenditures or obtain receipts of more than $100,000 for the current fiscal year, or (b) under which it is reasonably expected that such Corporation will make expenditures or obtain receipts of more than $250,000 for the current fiscal year (collectively, the "Contracts"). GEC has heretofore delivered to OLP true and complete copies of all the Contracts, all of which are currently in full force and effect and no Corporation is in default under any Contract. The schedule to this Section also lists all contracts and agreements to which any Corporation is a party that contain currently effective provisions for indemnification of or by any Corporation for environmental matters, excluding contracts and agreements for purchase or sale of goods or services in the ordinary course of business. GEC has heretofore delivered to OLP true and complete copies of all such contracts and agreements containing such indemnification provisions, which provisions are in full force and effect, subject to applicable statutes of limitation, and no Corporation is in default under any such

KPOP 0080

XXX-001206

33

provision, in a manner such that the result of the default would be to adversely affect the ability of such Corporation to enforce its rights under such indemnity.

      6.10    <u>Employees; Benefit Plans</u>.  (a) Schedule 6.10 sets forth the name of each employee benefit plan, as such term is defined in Section 3(3) of ERISA, which currently benefits employees of a Corporation or in which a Corporation is a participating employer (individually, a "Plan" and collectively, the "Plans").  The Corporations do not have any outstanding liability with respect to, or arising out of, any employee benefit plan, as such term in defined in Section 3(3) of ERISA, which formerly benefited, but does not currently benefit, employees of a Corporation or in which a Corporation was, but is not currently, a participating employer.

      (b)    None of the Corporations contribute to, or have had an obligation to contribute to, a multiemployer plan within the meaning of Section 3(37) of ERISA.

      (c)    Except as set forth in the schedule to this Section: (i) the Plans have been maintained in compliance in all material respects with the applicable provisions of ERISA and the Internal Revenue Code of 1986, as amended (the "Code"); (ii) each Plan intended to be qualified under Section 401(a) of the Code satisfies in all material respects the requirements of such Section; (iii) no act, omission or transaction has occurred which would result in imposition on the Corporations of a civil penalty or tax for a prohibited transaction (as such term is defined in either Section

KPOP 0081

000129

XXX-001207

406 of ERISA or Section 4975 of the Code); (iv) no accumulated funding deficiency, whether or not waived, within the meaning of Section 302 of ERISA or Section 412 of the Code has been incurred with respect to any Plan; (v) no lien imposed under Section 412(n) of the Code exists in favor of any Plan under any property belonging to the Corporations; and (vi) no Plan which is subject to Title IV of ERISA has been terminated and no event or condition exists which presents a material risk of termination of any Plan by the Pension Benefit Guaranty Corporation ("PBGC").

(d)  With respect to any employee benefit plan, within the meaning of Section 3(3) of ERISA, which is not listed in the schedule to this Section but which is sponsored, maintained or contributed to, or has been sponsored, maintained or contributed to within five years prior to the Closing Date, by any corporation, trade, business or entity under common control with the Corporations, within the meaning of Section 414(b), (c) or (m) of the Code or Section 4001 of ERISA ("Commonly Controlled Entity"): (i) no withdrawal liability, within the meaning of Section 4201 of ERISA, has been incurred, which withdrawal liability has not been satisfied; (ii) no liability to the PBGC has been incurred by any Commonly Controlled Entity, which liability has not been satisfied; (iii) no accumulated funding deficiency, whether or not waived, within the meaning of Section 302 of ERISA or Section 412 of the Code has been incurred; and (iv) all contributions (including installments) to such plan required by Section 302 of ERISA and Section 412 of the Code have been timely made.

000130

XXX-001208

35

6.11 <u>Environmental Compliance</u>.  Except as set forth in
the schedule to this Section: (a) the Operations and business of
the Corporations are in compliance with all, and the Corporations
have no liability with respect to any, Environmental Laws; and (b)
there are no claims, actions, suits or proceedings, judgments,
orders, writs, or injunctions of any court or Governmental
Authority pending or presently in effect or, to the knowledge of
the GEC Executives, after consultation with the Corporation
Executives, threatened against GEC or any Corporation relating to
Environmental Laws, which would reasonably be expected to (i)
adversely affect the ability of GEC to execute, deliver or perform
its obligations under this Agreement or (ii) have an adverse effect
on the business, financial condition or results or operations of
the Corporations.

6.12 <u>Operation in Ordinary Course</u>.  Except as set forth
in the schedule to this Section or in the ordinary course of
business or otherwise in accordance with the Corporations' normal
business practices, since December 31, 1991, none of the
Corporations has disposed of, or suffered an uninsured casualty
loss with respect to, any of its assets whose fair market value at
the time of such disposition or loss was greater than $100,000.

6.13 <u>Absence of Liens and Encumbrances</u>.  Except as
described in the schedule to this Section, all the assets included
in the balance sheet as of November 30, 1992 in the Management
Reports (other than those assets sold or otherwise disposed of by
the Corporations in the ordinary course of business or otherwise

KPOP 0083

000131

XXX-001209

36

in accordance with the Corporations' normal business practices since such date) are owned or held by the Corporations free and clear of all liens, mortgages, security interests, pledges or other encumbrances of any nature whatsoever, except for (i) those for taxes not yet due and payable, (ii) those of record as of the date hereof (the "Recorded Liens"), (iii) mechanic's, materialmen's and similar liens securing obligations which are not overdue by more than 30 days or which are being contested in good faith, (iv) those which have been disclosed in this Agreement or the schedules to this Agreement, or (v) those which will have been released on or prior to the Closing Date.

6.14   Liabilities.  Except (i) as set forth or reflected in the balance sheet as of November 30, 1992 in the Management Reports, (ii) as disclosed in this Agreement, the schedule to this Section or the other schedules hereto, (iii) for liabilities incurred since the date of such balance sheet in the ordinary course of business, and (iv) for liabilities which will have been satisfied on or prior to the Closing Date, the Corporations have no liabilities that would be required to be reflected on or described in the notes to a consolidated balance sheet of the Corporations as of the dates this representation is made (including the date covered by the condition to Closing in Section 11.01) had such balance sheet been prepared in accordance with generally accepted accounting principles.

6.15   Trademarks and Tradenames; Intellectual Property.

KPOP 0084

37

The Corporations use the unregistered trademarks and tradenames set forth in the schedule to this Section. No other trademarks and tradenames are material to the business of the Corporations. Except for licenses associated with goods and services used by the Corporations, no third-party intellectual property is material to the business of the Corporations.

6.16   Compliance with Applicable Law. Except as described in the schedule to this Section, and except with respect to environmental compliance, which is addressed in Section 6.11 above, the Corporations are in compliance in all material respects with all laws, rules, regulations, ordinances, orders, judgments and decrees applicable to the Operations and business as presently conducted and, to the knowledge of the GEC Executives, after consultation with the Corporation Executives, GEC has not received any notification that any of the Corporations is not presently in compliance therewith in any material respect.

6.17   Customers. The schedule to this Section sets forth a list which includes all current customers of the Corporations that have paid $250,000 or more to the Corporations in the current fiscal year to date.

6.18   Real Property. Exhibit A lists the real property, including tanks and pipeline rights of way and easements, owned by the Corporations (the "Owned Real Property") or leased by the Corporations (the "Leased Real Property"). GEC has heretofore furnished OLP with true and complete copies of the leases for the Leased Real Property (the "Real Property Leases"). Except as set

KPOP 0085

000133

XXX-001211

38

forth_in Exhibit A, the Real Property Leases are in full force and effect and no default exists with respect to any thereof.

6.19    <u>Property, Licenses and Permits</u>.    Except as set forth in the schedule to this Section, the Corporations (a) own or have the right to use the real (including rights of way and easements) and personal property, and (b) hold the licenses and permits; in each case that are necessary to operate the Operations as currently conducted.

6.20    <u>Grace and Grace-Conn</u>.    Grace is a holding company and has no substantial operations other than those conducted by Grace-Conn. and its subsidiaries.    The assets, pretax income and net worth of Grace-Conn. and its consolidated subsidiaries are substantially equivalent to those of Grace and its consolidated subsidiaries.

6.21    <u>Consents</u>.    The schedule to Section 6.09 and Exhibit A to this Agreement identify which of the Contracts or leases listed therein require by their explicit terms consent to a change of control or merger or the assignment of such Contract or lease of or by the Corporation which is a party thereto.

6.22    <u>Personal Property</u>.    The schedule to this Section sets forth a list of the personal property having a book value in excess of $2,500 that is owned by the Corporations as of the date set forth on the schedule, which list is true and correct as of such date.

6.23    <u>Taxes</u>.    Except as set forth in the schedule to this Section, (a) all returns (including without limitation,

KPOP 0086

000134

XXX-001212

39

income, franchise, sales and use, excise, severance, property, gross receipts, payroll and withholding tax returns and information returns), deposits and reports (all such returns, deposits and reports herein referred to collectively as "Tax Returns" or singularly as a "Tax Return") of or relating to any Tax that are required to be filed or deposited (taking into account all extensions) on or before the date hereof for, by, on behalf of or with respect to any of the Corporations, including, but not limited to, those relating to the income, business, operations or property of any of the Corporations, have been filed or deposited with the appropriate federal, state, local and foreign authorities on or before the date hereof, and all Taxes shown to be due and payable on such Tax Returns have been paid in full on or before the date hereof; and (b) None of the Tax Returns described in Section 6.23(a) are now under audit by any federal, state, local or foreign authority and there are no agreements, waivers or other arrangements providing for an extension of time with respect to the assessment or collection of any Tax or deficiency of any nature against any of the Corporations or with respect to any such Tax Return; and there are no suits or other judicial or administrative proceedings or claims pending with respect to any such Tax Return.

KPOP 0087

000135

XXX-001213

40

## ARTICLE 7

### Representations and Warranties by OLP

OLP hereby represents and warrants to GEC as follows:

7.01    Incorporation. OLP is a limited partnership duly organized, validly existing and in good standing under the laws of the State of Delaware, with full partnership power and authority to enter into this Agreement and the Ancillary Agreements and to perform its obligations hereunder and thereunder. Each of the OLP Corporations is a corporation duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation, with full corporate power and authority to enter into this Agreement and the Ancillary Agreements to which it is a party and to perform its obligations hereunder and thereunder.

7.02    Authorization. The execution and delivery of this Agreement and the Ancillary Agreements to which they are respectively parties by OLP and the OLP Corporations, and the performance by OLP and the OLP Corporations of their respective obligations hereunder and thereunder, have been duly and validly authorized by all necessary action of OLP and all necessary corporate action of the General Partner and of the OLP Corporations. This Agreement and the Ancillary Agreements to which they are respectively parties have been duly executed and validly delivered by OLP and the OLP Corporations and are legally binding on those of OLP and the OLP Corporations that are respectively parties hereto and thereto.

KPOP 0088

**000136**

XXX-001214

41

7.03  **No Conflict**.  The execution and delivery of this Agreement and the Ancillary Agreements to which they are respectively parties by OLP and the OLP Corporations, and the performance by OLP and the OLP Corporations of their respective obligations hereunder and thereunder, do not (a) conflict with the certificate or agreement of limited partnership, as amended, of OLP, or the corporate charters or by-laws of the OLP Corporations or (b) result in the breach of any of the provisions of, or constitute a default under, any statute, law, rule, regulation, judgment, writ, order, decree or injunction of any court or Governmental Authority, or any agreement, understanding or restriction, to which any of OLP or the OLP Corporations is a party or by which it or any of its assets is bound, which breach or default would reasonably be expected to adversely affect its ability to perform its obligations under this Agreement.  Except in connection with compliance with HSR, the execution and delivery by each of OLP and the OLP Corporations of this Agreement and the Ancillary Documents to which it is a party, and its performance of its obligations hereunder and thereunder, will not require it to obtain or make any waiver, consent, notice, approval or authorization of, or filing with, any third party or Governmental Authority other than the filings contemplated by this Agreement.

### ARTICLE 8

### Disclaimer of Additional and Implied Warranties

8.01  **Investigation and Evaluation**.  OLP acknowledges that (a) OLP and its directors, officers, attorneys, accountants

KPOP 0089

000137

XXX-001215

42

and advisors have been given the opportunity to examine to the full extent deemed necessary and desirable by OLP all books, records and other information with respect to the Corporations, the Properties, the Facilities and the Operations, (b) OLP has taken full responsibility for determining the scope of its investigations of the Corporations, the Properties, the Facilities and the Operations, and for the manner in which such investigations have been conducted, and has examined the Corporations, the Properties, the Facilities and the Operations to OLP's full satisfaction, (c) OLP is fully capable of evaluating the adequacy and accuracy of the information and material obtained by OLP in the course of such investigations, (d) OLP has not relied on GEC with respect to any matter in connection with OLP's evaluation of the Corporations, the Properties, the Facilities and the Operations, except as set forth in the Agreement (including its Exhibits and schedules) and (e) GEC is making no representations or warranties, express or implied, of any nature whatever with respect to the Corporations, the Properties, the Facilities or the Operations, other than the representations and warranties of GEC specifically set forth in Article 6, AND WITH RESPECT TO PERSONAL PROPERTY AND EQUIPMENT OF THE CORPORATIONS, GEC EXPRESSLY DISCLAIMS AND NEGATES ANY IMPLIED OR EXPRESS WARRANTY OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSES, AND OF CONFORMITY TO MODELS OR SAMPLES OF MATERIALS. Nothing in this Section 8.01 shall be deemed to limit OLP's remedies under Section 13.03.

KPOP 0090

000138

XXX-001216

43

8.02  Forecasts. Projections. etc.  OLP acknowledges that (a) OLP has taken full responsibility for evaluating the adequacy, completeness and accuracy of various forecasts, projections, opinions and similar material heretofore furnished by GEC, the Corporations or their representatives to OLP in connection with OLP's investigations of the Corporations, the Properties, the Facilities and the Operations and (b) there are uncertainties inherent in attempting to make projections and forecasts and render opinions, that OLP is familiar with such uncertainties, and that OLP is not relying on any projections, forecasts or opinions (other than legal opinions) furnished to it by GEC, the Corporations or any affiliate thereof or any of their representatives.  Nothing in this Section 8.02 shall be deemed to limit OLP's remedies under Section 13.03.

8.03  Effect of Contemplated Transactions.  Except as expressly set forth in Section 6.21 and Section 13.03(a)(ii) (as it relates to Section 6.21), (i) OLP acknowledges that it has taken full responsibility for evaluating whether the transactions contemplated by this Agreement require consent, approval or notice under any lease or other agreement to which any of the Corporations is a party, and (ii) GEC shall have no liability for the failure to obtain or give any such consent, approval or notice.

KPOP 0091

44

## ARTICLE 9

### Covenants of GEC and OLP

9.01  <u>Access and Inquiry</u>.  Between the date of this Agreement and the Closing Date, OLP shall have reasonable access to the Facilities and will, upon request, be permitted to contact and make reasonable inquiry of GEC's and the Corporations' personnel regarding the Operations.  GEC shall make available to OLP all books, records, relevant purchasing and other financial data and files of GEC and the Corporations relating to the Operations to the extent reasonably requested by OLP.  OLP agrees that the terms of the Confidentiality Agreement shall apply to information gained by OLP pursuant to the foregoing and/or previously made available to OLP to the same extent as if OLP were a party thereto and bound by the confidentiality provisions thereof.

9.02  <u>Hart-Scott-Rodino Act</u>.  As promptly as practicable after the date of this Agreement, GEC and OLP shall file appropriate Notification and Report Forms under the HSR Act with respect to this Agreement and the transactions contemplated hereby. GEC and OLP shall cooperate to coordinate such filings, and to make reasonable efforts to respond to any governmental request or inquiry with respect thereto; but neither GEC, OLP nor any of their respective affiliates shall be required to make any payment (other than for reasonable legal fees and, with respect to OLP, for the filing fee required to be made by the acquiring entity under the HSR Act) that it is not presently contractually required to make,

KPOP 0092

45

divest any assets (including but not limited to assets of any of the Corporations), make any change in the conduct of its business or that of any Corporation, accept any limitation on the future conduct of its business or that of any Corporation, enter into any other agreement or arrangement with any person that it is not presently contractually required to enter into, accept any significant modification in any existing agreement or arrangement, or agree to any of the foregoing.

9.03   Permits and Licenses.   As soon as practicable after the date hereof, GEC shall cooperate with OLP to identify and secure any and all federal, state and local permits and licenses required for the Corporations to operate (in the same manner as presently operated) the Facilities under ownership of OLP.

9.04   Notices to Third Parties.   GEC and OLP shall cooperate to make all other filings and to give notice to and obtain consents from all third parties that may reasonably be required to consummate the transactions contemplated by this Agreement (including the continuation of the Operations in the hands of OLP and NSTI as currently conducted and the maintenance in effect in the hands of OLP and NSTI of agreements and leases to which the Corporations are party).

9.05   Material Adverse Effect Notice.   GEC has instructed the Corporation Executives to give GEC prompt notice of any event or events that become known to them and individually or in the aggregate have a Material Adverse Effect; and GEC will

KPOP 0093

46

promptly notify OLP of any such event or events which become known to any GEC Executive prior to the Closing Date.

9.06    <u>Reasonable Efforts</u>. Each of OLP and GEC will use its Reasonable Efforts to consummate the Closing under this Agreement.

9.07    <u>Tax Matters</u>. (a) GEC will file or deposit, or cause to be filed or deposited, all Tax Returns of or relating to any Tax that are required to be filed or deposited (taking into account all extensions) on or before the Closing Date for, by, on behalf of or with respect to any of the Corporations, including, but not limited to, those relating to the income, business, operations or property of any of the Corporations, with the appropriate federal, state, local and foreign authorities on or before the Closing Date, and GEC will pay, or cause to be paid, in full all Taxes shown to be due and payable on such Tax Returns on or before the Closing Date; and

(b)    GEC will prepare and file all required Tax Returns for all periods ending on or before the Closing Date, which Tax Returns will include as required, the income, business, operations and property of each of the Corporations for the periods ending on or before the Closing Date on a basis consistent with past practice of the Grace Entities and the Corporations and in accordance with all applicable laws and regulations.

KPOP 0094

000142

XXX-001220

47

## ARTICLE 10

### Conduct of Business Prior to the Closing

Except as otherwise consented to by OLP, from the date of this Agreement until the Closing:

10.01  <u>Operation in Ordinary Course</u>.  GEC shall cause the Corporations to conduct the Operations only in the ordinary course of business or otherwise in accordance with the Corporation's normal business practices in all material respects.

10.02  <u>Disposition of Assets</u>.  GEC shall not permit any of the Corporations, other than in the ordinary course of business or otherwise in accordance with the Corporations' normal business practices, to sell, lease (as lessor), transfer, mortgage, pledge, encumber, license (as licensor), or otherwise dispose of, any asset (tangible or intangible) material to the Operations.

10.03  <u>Material Agreements</u>.  GEC shall not permit any of the Corporations, other than in the ordinary course of business, (i) to enter into any agreement with third parties material to the Operations, (ii) to modify, extend or terminate any existing material agreements, (iii) to create, incur or assume any indebtedness for borrowed money or to guarantee or otherwise become liable for the obligations of any other person or to make any loans or advances to any other person, nor (iv) to increase the compensation of any employee of the Corporations.

10.04  <u>Business Organization and Customer Relations</u>.

KPOP 0095

000143

XXX-001221

48

GEC shall cause the Corporations to use reasonable efforts to preserve the Corporations' business organization and satisfactory relations with customers, suppliers and employees.

10.05  Dividends.  GEC shall not permit the declaration or payment of any dividend in respect of, or the repurchase or redemption of any of, the capital stock of STS or the STS Subsidiaries.

## ARTICLE 11

### Conditions Precedent to the Obligations of OLP

All obligations of OLP under this Agreement are subject, at OLP's option, to the fulfillment prior to or at the Closing, of each of the following conditions:

11.01  Accuracy of Representations and Warranties.  Each and every representation and warranty of GEC under this Agreement shall be true and accurate in all material respects as of the date hereof and as of the Closing, except for changes in the ordinary course of business between the date of this Agreement and the Closing, none of which alone or in the aggregate has a Material Adverse Effect.

11.02  Performance of Covenants and Agreements.  GEC shall have performed in all material respects at or prior to the Closing all of the covenants and agreements required to be performed by GEC at or prior to the Closing in accordance with this Agreement.

11.03  Hart-Scott-Rodino Act.  All waiting periods under the HSR Act applicable to the transactions contemplated by this

KPOP 0096

49

Agreement shall have expired, by passage of time or by valid early
termination by the FTC or the DOJ; no representative of either the
FTC or the DOJ shall be taking the position that any of such
waiting periods has not commenced to run or has not expired for any
reason; and no representative of either the FTC or the DOJ shall
have requested a delay of the Closing for a period which has not
expired, which request has not been withdrawn.

11.04    __Permits, Consents, etc.__    There shall be no
material permit, consent, approval or authorization of, or
declaration to or filing with, any Governmental Authority or other
person or entity required in connection with the transactions
contemplated by this Agreement (including the continuation of the
Operations in the hands of OLP and NSTI as currently conducted and
the maintenance in effect in the hands of OLP and NSTI of
agreements and leases to which the Corporations are a party) which
has not been accomplished or obtained and which may not be
reasonably accomplished or obtained after the Closing.

11.05    __Litigation__.    No colorable action, suit or
proceeding by any third person (including but not limited to any
Governmental Authority) or investigation or inquiry by any
Governmental Authority shall have been instituted or threatened
against GEC or OLP or any of their respective affiliates that
questions the validity or legality of this Agreement, the Ancillary
Agreements or the transactions contemplated hereby or thereby
which, if successful, would materially adversely affect the right
of OLP to consummate the transactions contemplated by this

KPOP 0097

000145

XXX-001223

50

Agreement or to continue the Operations substantially as currently operated.

11.06 <u>Certificate of GEC</u>. GEC shall have delivered to OLP a certificate of GEC signed by the President or any Vice President of GEC certifying that (i) each and every representation and warranty of GEC under this Agreement was true and accurate in all material respects as of the date hereof and is true and accurate in all material respects as of the Closing, except for changes in the ordinary course of business between the date of this Agreement and the Closing, none of which alone or in the aggregate has a Material Adverse Effect; and (ii) GEC has performed in all material respects at or prior to the Closing all of the covenants and agreements required to be performed by GEC at or prior to the Closing in accordance with this Agreement.

11.07 <u>Opinion of GEC's Counsel</u>. GEC shall have delivered to OLP an opinion of its General Counsel, dated the Closing Date, in the form of <u>Exhibit B</u>.

11.08 <u>No Material Adverse Effect</u>. Since the date of this Agreement, no event or events shall have occurred that, individually or in the aggregate, have had a Material Adverse Effect.

11.09 <u>Recorded Liens</u>. As of the Closing, there shall be no Recorded Lien that adversely affects the ability of OLP to conduct the Operations after the Closing, the release of which would require costs and expenses of more than $10,000; provided that with respect to any such Recorded Lien, GEC shall be deemed

KPOP 0098

000146

XXX-001224

51

to have satisfied the foregoing condition if it shall elect in writing to have the costs and expenses of release of such Lien deemed Damages indemnifiable under Section 13.03(a), whereupon such costs and expenses shall be so indemnifiable.

11.10  <u>Financing</u>.  The financing for OLP's payment of the Estimated Purchase Price shall have been consummated.

## ARTICLE 12

## <u>Conditions Precedent to the Obligations of GEC</u>

All obligations of GEC under this Agreement are subject, at GEC's option, to the fulfillment prior to or at the Closing, of each of the following conditions:

12.01  <u>Accuracy of Representations and Warranties</u>.  Each and every representation and warranty of OLP under this Agreement shall be true and accurate in all material respects as of the date hereof and as of the Closing.

12.02  <u>Performance of Covenants and Agreements</u>.  OLP shall have performed in all material respects at or prior to the Closing all of the covenants and agreements required to be performed by OLP at or prior to the Closing in accordance with this Agreement.

12.03  <u>Hart-Scott-Rodino Act</u>.  All waiting periods under the HSR Act applicable to the transactions contemplated by this Agreement shall have expired, by passage of time or by valid early termination by the FTC or the DOJ; no representative of either the FTC or the DOJ shall be taking the position that any of such waiting periods has not commenced to run or has not expired for any

KPOP 0099

52

reason; and no representative of either the FTC or the DOJ shall
have requested a delay of the Closing for a period which has not
expired, which request has not been withdrawn.

12.04 <u>Permits, Consents, etc</u>.    There shall be no
material permit, consent, approval or authorization of, or
declaration to or filing with, any Governmental Authority or other
person or entity required in connection with the transactions
contemplated by this Agreement (including the continuation of the
Operations as currently conducted and maintenance in effect of
agreements and leases to which the Corporations are a party) which
has not been accomplished or obtained and which may not be
reasonably accomplished or obtained after the Closing, and which
could reasonably be expected to cause any Grace Entity to incur any
liability.

12.05 <u>Litigation</u>.    No colorable action, suit or
proceeding by any third person (including but not limited to any
Governmental Authority) or investigation or inquiry by any
Governmental Authority shall have been instituted or threatened
against GEC or OLP or any of their respective affiliates that
questions the validity or legality of this Agreement, the Ancillary
Agreements or the transactions contemplated hereby or thereby
which, if successful, would materially adversely affect the right
of GEC to consummate the transactions contemplated hereby or would
involve possible material liability on the part of GEC or any of
its subsidiaries or affiliates.

KPOP 0100

000148

XXX-001226

53

12.06  _Certificate of OLP_.  OLP shall have delivered to GEC a certificate of OLP signed by the President or a Vice President of OLP certifying that: (i) each and every representation and warranty of OLP under this Agreement was true and accurate in all material respects as of the date hereof and is true and accurate in all material respects as of the Closing; and (ii) OLP has performed in all material respects at or prior to the Closing all of the covenants and agreements required to be performed by OLP at or prior to the Closing in accordance with this Agreement.

12.07  _Opinion of OLP's Counsel_.   OLP shall have delivered to GEC an opinion of Stephen M. Hoffner, Esq., General Counsel for OLP, dated the Closing Date, in the form of _Exhibit C_.

### ARTICLE 13

### Indemnification: Survival of Representations

13.01  _Definitions_.  As used in this Article:

(a)   "Damages" means any and all penalties, fines, damages, liabilities, losses, expenses, payments, settlements or costs (including, without limitation, Litigation Expenses incident to Third Party Claims, but excluding consequential damages and damages for lost profits), on an after-tax basis and net of any correlative insurance proceeds realized or to be realized by the indemnified party.

(b)   "Direct Claims" means claims other than Third Party Claims.

KPOP 0101

000149

XXX-001227

54

(c)    "Environmental Claims" means claims for indemnification against GEC under this Article for breach of Section 6.11.

(d)    "General Claims" means claims for indemnification against GEC under this Article other than Environmental Claims.

(e)    "Litigation Expenses" means reasonable attorneys' fees and other costs and expenses incident to proceedings or investigations respecting, or the prosecution or defense of, a claim.

(f)    "Third Party Claims" means any and all claims, demands, suits, actions or proceedings by any person or entity, or Governmental Authority, other than OLP or GEC or their respective affiliates, which could give rise to a right of indemnification under this Article.

13.02  Indemnification by OLP.    (a)  Subject to the terms, conditions and limitations of this Article, OLP shall indemnify all of the Grace Entities and save and hold all of the Grace Entities harmless from and against any Damages caused by or arising out of (i) the failure of OLP to perform or fulfill any agreement or covenant to be performed or fulfilled by it under this Agreement or any Ancillary Agreement, or (ii) any inaccuracy in any representation or breach of any warranty of OLP set forth in Article 7 or any Ancillary Agreement, or in the certificate referred to in Section 12.06.

(b)  The representations and warranties of OLP set forth in Article 7 shall survive the Closing.

KPOP 0102

000150

XXX-001228

55

(c) Subject to the terms, conditions and limitations of this Article, OLP shall indemnify and hold harmless all of the Grace Entities from and against any and all Damages caused by or arising out of obligations or liabilities of any of the Corporations for which any of the Grace Entities is liable, except obligations or liabilities which constitute a breach of any representation or warranty of GEC in Article 6 or any Ancillary Agreement or the certificate described in Section 11.06 (without reference for this purpose to the exception contained in clause (i) of Section 11.06).

13.03  Indemnification by GEC.  (a) Subject to the terms, conditions and limitations of this Article, GEC shall indemnify OLP (and, while they are controlled by OLP or any affiliate of Kaneb Services, Inc., the OLP Corporations) and save and hold OLP (and, while they are controlled by OLP or any affiliate of Kaneb Services, Inc., the OLP Corporations) harmless from and against any Damages caused by or arising out of (i) the failure of GEC to perform or fulfill any agreement or covenant to be performed or fulfilled by it under this Agreement, or (ii) any inaccuracy in any representation or breach of any warranty of GEC in Article 6 or any Ancillary Agreement or the certificate described in Section 11.06 (without reference for this purpose to the exception contained in clause (i) of Section 11.06).

(b) The representations and warranties of GEC set forth in sections 6.01 through 6.04 and 6.20 shall survive the Closing. The representations and warranties set forth in Sections 6.05

KPOP 0103

000151

XXX-001229

56

through 6.10, 6.12 through 6.19, 6.21 and 6.22 shall survive the Closing but shall expire and be of no further force and effect on the second anniversary of the Closing Date, the representations and warranties set forth in Section 6.11 shall survive the Closing but shall expire and be of no force and effect on the fifth anniversary of the Closing Date, and the representations and warranties set forth in Section 6.23 shall survive the Closing but shall expire and be of no force and effect 20 days after the expiration of all applicable statutes of limitation (including all extensions thereof); except in each case with respect to claims OLP has asserted against GEC in writing, setting forth with reasonable specificity the nature of such claims, on or before the applicable expiration date.

        (c)   GEC shall have no liability for or in connection with any provision of Section 10.01 or 10.04, it being the intention of the parties that the effect of any nonperformance thereof be limited to nonfulfillment of the conditions set forth in Section 11.02.

        13.04  **Limitations**.   (a) None of OLP and the OLP Corporations (i) may assert a General Claim unless the condition, event, occurrence, action or omission which gives rise to such General Claim gives rise to Damages in excess of $7,500; and (ii) may assert any General Claim unless and until the aggregate amount of General Claims that may be asserted under clause (i) of this subsection shall exceed $1,000,000, and then only with respect to the excess of such General Claims over said $1,000,000.

                                              KPOP 0104

000152

XXX-001230

57

(b) None of OLP and the OLP Corporations may assert an Environmental Claim unless the occurrence at a location which gives rise to such Environmental Claim gives rise to Damages in excess of $100,000, and then only with respect to the excess of such Environmental Claim over said $100,000. OLP and the OLP Corporations shall be indemnified by GEC for 60%, and only 60% of the amount by which any Environmental Claim exceeds said $100,000; provided that in no event shall GEC be required to indemnify OLP and the OLP Corporations for more than $10,000,000 (that is, 60% of an aggregate of $16,666,667 of Environmental Claims in excess of such $100,000 limit) of Environmental Claims in the aggregate. For purposes of this subsection, "occurrence" shall mean any condition, event, action or omission which took place prior to the Closing and which constitutes a breach of Section 6.11. For purposes of this subsection, repeated occurrences arising from a single cause shall be deemed to be a single occurrence. For purposes of this subsection, separate occurrences that cause indivisible harm or require indivisible remedial action shall also be deemed to be a single occurrence if such harm or remedial action cannot reasonably be allocated among such separate occurrences.

(c) The dollar threshold and limitations set forth in this Section have been negotiated for the special purposes of the provisions in which they appear, and are not to be taken as evidence of the level of "materiality" for purposes of any statutory or common law which may be applicable to the transactions

KPOP 0105

000153

XXX-001231

58

contemplated by this Agreement under which a level of materiality might be an issue.

(d)    The indemnification under Section 13.03 and the Guaranty Agreement shall be the sole remedy of OLP and its affiliates, including, after the Closing, the Corporations, against GEC and its affiliates for Damages with respect to any inaccuracy in or breach of any representation, warranty, covenant or agreement contained in this Agreement or any other agreement or document (other than the Ancillary Agreements, which shall not be subject to this limitation) related hereto or thereto (including the certificates described in Section 11.06), whether such claims are brought under this Article 13 or otherwise.

(e)   The indemnification under Section 13.02 shall be the sole remedy of GEC and its affiliates against OLP and its affiliates for Damages with respect to any inaccuracy in or breach of any representation, warranty, covenant or agreement contained in this Agreement or in the Ancillary Agreements or any other agreement or document related hereto or thereto (including the certificate described in Section 12.06), whether such claims are brought under this Article 13 or otherwise.

13.05   <u>Defense of Third Party Claims</u>.  Any claims for indemnification by the OLP Corporations shall be made only on their behalf by OLP.  OLP shall notify GEC in writing promptly after learning of any Third Party Claim.  It shall be a necessary condition of any claim by OLP for indemnification under this Article with respect to any Third Party Claim, that OLP tender the

KPOP 0106

000154

XXX-001232

59

defense thereof (including control over all negotiation, trial, appeal or other proceedings) to GEC, provided that GEC shall keep OLP reasonably informed at GEC's expense regarding such defense. If OLP does not so notify and tender such defense within 30 days of learning of such Third Party Claim, OLP's right to indemnification hereunder shall not be impaired except to the extent that GEC shall have been prejudiced by such failure and except that GEC shall not be liable for any expenses incurred during the period in which OLP failed to give notice. GEC may undertake such defense by notice to OLP not later than 30 days after receipt of a notice that the defense is tendered to it. Failure by GEC to so notify OLP that it will undertake such defense shall be deemed to be a waiver of GEC's right to undertake such defense. If GEC undertakes defense of any Third Party Claim, OLP shall cooperate with GEC and its counsel in the investigation and defense thereof, and may participate (at its own expense) in such investigation and defense, but GEC shall retain control of the negotiation, tactics, trial, appeals and other matters and proceedings related thereto. If GEC does not undertake the defense of any Third Party Claim, OLP shall permit GEC, at its own expense, to participate in the investigation and defense thereof, but OLP shall control such investigation and defense. OLP and GEC agree to make available to each other, their counsel and other representatives, all information and documents available to them which relate to any Third Party Claim, and to render to each other such assistance as may reasonably be required in order to ensure

KPOP 0107

000155

XXX-001233

60

the proper and adequate defense of such Third Party Claim. Except pursuant to a final judgment rendered thereon, OLP shall not pay or settle any Third Party Claim, whether or not any action or proceeding has been commenced thereon, without the prior written consent of GEC, which consent shall not be unreasonably withheld or delayed by GEC.  If OLP pays or settles any Third Party Claim prior to a judgment thereon without such consent, OLP shall be deemed to have waived all rights to indemnification or payment with respect to such Third Party Claim, unless such consent is unreasonably withheld or delayed.

13.06  Consequential and Lost Profit Damages.  Neither party shall seek consequential damages or damages for lost profits in any claim for indemnification under this Article, nor shall it accept payment of any award or judgment to the extent that such award or judgment includes consequential damages or damages for lost profits.

13.07  Indemnification Payments.  Payments of amounts owed under this Article 13 shall be made within ten days after final determination thereof.

ARTICLE 14

Cooperation in Various Matters

14.01  Mutual Cooperation. Each party to this Agreement shall cooperate with the other party, which cooperation shall include the furnishing of testimony and other evidence, permitting access to employees and providing information regarding the

KPOP 0108

000156

XXX-001234

61

whereabouts of former employees, as reasonably requested by such other party in connection with the prosecution or defense of any claims by third parties or Governmental Authorities or other matters (other than claims against each other) relating to the Corporations or the Operations.

14.02 <u>Preservation of OLP's Files and Records</u>. For a period of seven years after the Closing, OLP shall use reasonable efforts to preserve all files and records in OLP's or the Corporations' possession relating to the Corporations and the Operations that are less than seven years old, shall allow GEC reasonable access to such files and records and the right to make copies and extracts therefrom at any time during normal business hours, and shall not dispose of any thereof, provided that commencing four years after the Closing, OLP may give GEC written notice of its intention to dispose of any part thereof, specifying the items to be disposed of in reasonable detail. GEC may, within a period of sixty days after receipt of any such notice, notify OLP of GEC's desire to retain one or more of the items to be disposed of. OLP shall, upon receipt of such a notice from GEC, deliver to GEC, at GEC's expense, the items specified in OLP's notice to GEC which GEC has elected to retain.

14.03 <u>Preservation of GEC's Files and Records</u>. For a period of seven years after the Closing, GEC shall use reasonable efforts to preserve all files and records in GEC's possession relating to the Corporations and the Operations that are less than seven years old, shall allow OLP reasonable access to such files

KPOP 0109

XXX-001235

62

and records and the right to make copies and extracts therefrom at any time during normal business hours, and shall not dispose of any thereof, provided that commencing four years after the Closing, GEC may give OLP written notice of its intention to dispose of any part thereof, specifying the items to be disposed of in reasonable detail.  OLP may, within a period of sixty days after receipt of any such notice, notify GEC of OLP's desire to retain one or more of the items to be disposed of.  GEC shall, upon receipt of such a notice from OLP, deliver to OLP at OLP's expense, the items specified in GEC's notice to OLP which OLP has elected to retain.

14.04  <u>Preparation of Reports, etc</u>.  GEC and OLP shall cooperate and cause their employees and those of the Corporations to cooperate in the timely preparation of financial and other reports and statements relating to the Corporations and the Operations, for periods ending on or prior to the Closing Date, in accordance with the reasonable request of the party responsible for the preparation of the report in question.

14.05  <u>Amendment of Guaranteed Agreements, etc</u>.  Without the prior written consent of GEC, which consent may be granted or refused at GEC's discretion, OLP shall not and shall not permit any of the Corporations to amend, modify or extend the term of any lease or other agreement listed in the schedule to this Section, at any time during which any GEC Entity has a guaranty obligation with respect to such lease or other agreement.

KPOP 0110

63

## ARTICLE 15

### Expenses; Termination of Services; Broker's Fees; Guaranty Agreement

15.01    **Expenses.** Each party to this Agreement shall pay all expenses incurred by it in connection with the preparation, authorization, execution and performance of this Agreement and the Ancillary Agreements (except as may be provided elsewhere herein), including, but not limited to, all fees and expenses of agents, representatives, counsel and accountants engaged by it, except that OLP shall be solely responsible for (a) the cost of obtaining title insurance with respect to the Properties, (b) any sales, use, transfer and similar taxes and all recording and similar fees applicable to the transactions contemplated by this Agreement, and (c) the costs and expenses incurred in connection with obtaining all permits and licenses required by OLP or any of the Corporations to operate the Operations and the Facilities after the Closing.

15.02    **Termination of GEC Services.** All contracts, agreements, commitments or other arrangements, whether written or oral, and whether express or implied, pursuant to which GEC or any of its affiliates provides legal, financial, accounting, insurance or other services to the Corporations or the Operations shall be terminated as of the Closing except as provided under the Ancillary Agreements. OLP shall execute and deliver to GEC, at GEC's request, documents necessary or desirable to release GEC and any such affiliate from any obligations with respect to such terminated contracts, agreements, commitments and arrangements and to otherwise confirm such termination.

KPOP 0111

000159

XXX-001237

64

15.03  **Broker's Fees**. Each party to this Agreement shall hold the other party harmless with respect to any broker's, finder's or other similar agent's fee with respect to the transactions contemplated hereby claimed by any broker, finder or similar agent engaged, employed by or otherwise acting on behalf of the indemnifying party.

15.04  **Guaranty Agreement**.  Contemporaneously with the execution of this Agreement, Grace-Conn has executed and delivered to OLP the Guaranty Agreement.

### ARTICLE 16

### Notices

16.01  **Procedure and Addresses**.  All notices, requests, demands and other communications required or permitted to be given hereunder shall be deemed to have been duly given effective upon receipt if in writing and delivered personally or by facsimile transmission or courier service, at the following addresses:

If to GEC or any of the Corporations:

    Grace Energy Corporation
    Two Galleria Tower
    Suite 1500
    13455 Noel Road
    Dallas, Texas 75240-6681
    Attention:  Chief Counsel
    Facsimile number:    (214) 772-0215
    Confirmation number: (214) 770-0200

    With a copy to:

    W. R. Grace & Co.
    One Town Center Road
    Boca Raton, Florida  33486-1010
    Attention: Secretary
    Facsimile number:    (407) 362-1635
    Confirmation number: (407) 362-1645

KPOP 0112

**000160**

XXX-001238

65

If to OLP or any of the OLP Corporations:

    Kaneb Pipe Line Operating Partnership, L.P.
    2400 Lakeside Boulevard
    Suite 600
    Richardson, Texas    75082
    Attention:  Edward D. Doherty
    Facsimile number:    (214) 699-1894
    Confirmation number: (214) 699-4047

With a copy to:

    Kaneb Services, Inc.
    2400 Lakeside Boulevard
    Suite 600
    Richardson, Texas    75082
    Attention:  Stephen M. Hoffner, Esq.
    Facsimile number:    (214) 699-1894
    Confirmation number: (214) 699-4047

16.02  Change of Notice Address.  Any party may change the address to which such communications are to be directed to it by giving written notice to the other party in the manner provided in Section 16.01.

## ARTICLE 17

### General

17.01  Entire Agreement.  This Agreement, the Ancillary Agreements, the Guaranty Agreement, and the other agreements, documents and instruments being delivered at the Closing set forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby and supersede all prior agreements, arrangements and understandings relating to the subject matter hereof, whether written or oral.

17.02  No Other Representations, etc.  No representation, promise, inducement or statement of intention relating to the transactions contemplated by this Agreement has been made by or on

KPOP 0113

XXX-001239

66

behalf of any party hereto which is not set forth in this Agreement, the Guaranty Agreement or the Ancillary Agreements.

17.03 <u>Headings</u>. The Article and Section headings contained in this Agreement are for convenient reference only, and shall not in any way affect the meaning or interpretation of this Agreement.

17.04 <u>Governing Law</u>. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, excluding the conflict of laws provisions thereof that would otherwise require the application of the law of any other jurisdiction.

17.05 <u>Counterparts; Telecopy Execution and Delivery</u>. (a) This Agreement may be executed in multiple counterparts (including counterparts executed by one party), each of which shall be an original, but all of which shall constitute a single agreement.

(b) A facsimile, telecopy or other reproduction of this Agreement may be executed by one or more parties hereto, and an executed copy of this Agreement may be delivered by one or more parties hereto by facsimile or similar instantaneous electronic transmission device pursuant to which the signature of or on behalf of such party can be seen, and such execution and delivery shall be considered valid, binding and effective for all purposes. At the request of any party hereto, all parties hereto agree to execute an original of this Agreement as well as any facsimile, telecopy or other reproduction hereof.

KPOP 0114

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date first above written.

Attest: _A. H. Riddleberger_

GRACE ENERGY CORPORATION

By _Frank L. Ryan_

KANEB PIPE LINE OPERATING PARTNERSHIP, L.P.

Attest: _[signature]_

By KANEB PIPE LINE COMPANY, general partner

By _Douglas M. Emm_

Attest: _A. H. Riddleberger_

SUPPORT TERMINAL SERVICES, INC.

By _[signature]_

Attest: _A. H. Riddleberger_

STANTRANS, INC.

By _[signature]_

Attest: _A. H. Riddleberger_

STANDARD TRANSPIPE CORP.

By _[signature]_

KPOP 0115

000163

XXX-001241

# EXHIBIT K8

Letter from Dept. of Justice (without attachments)

**000164**

**XXX-001242**



**U.S. Department of Justice**

Environment and Natural Resources Division

---

Environmental Enforcement Section
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611

Telephone (202) 514-2277
Facsimile (202) 616-2427
Facsimile (202) 514-0097

By Federal Express

### FOR SETTLEMENT PURPOSES – COVERED BY F.R.E. 408

October 30, 2008

Gerard G. Pecht, Esq.
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095

Re:    United States v. Nustar Terminal Services, Inc. (f/k/a Support Terminal Services, Inc.), et al.

In regard to the United States' claim against Nustar Terminals Services, Inc. (f/k/a Support Terminal Services, Inc.) ("STS"), under Mass. Gen. L., ch. 21E, regarding U.S. response actions relating to Fuel Spill-12 from the Standard Transmission pipeline at the Massachusetts Military Reservation, enclosed is a copy of an itemized cost summary and accompanying cost documents.  The itemized cost summary contains several components, including itemized cost summaries for past costs incurred by the Air Force Center for Environmental Excellence ("AFCEE costs") and other past costs incurred by the United States ("Non-AFCEE costs").  An estimate of future costs relating to Fuel Spill-12, with the supporting basis, is also included.  The cost documents, which include contracts, delivery orders, statements of work, vouchers/invoices, payment information, audits, and periodic reports, are contained in the enclosed DVD.

In the letter of September 6, 2001, from Charles Sullivan, Jr., Esq., Fulbright & Jaworski, on behalf of STS to the United States, it is stated, at p. 5, that "STS respectfully declines to reimburse the Claimants for any response costs that have been or will be incurred in remediating Fuel Spills 12 and 13 at the MMR."

If, nevertheless, STS is interested in settling this matter, the United States requests that STS make a serious settlement offer, involving the payment by STS of a substantial percentage of the U.S. response costs, on or before December 31, 2008.

The United States also hereby reiterates its requests for the documents referred to in items number 3 through 10 in the attached letter dated June 21, 2002, previously sent to you.  The United States also requests a copy of the full GEC and KPOP Bates numbered document sets from the State court litigation.  As stated previously, the United States would be willing to pay for the copying cost.  Please provide these documents by December 31, 2008.

Sincerely,

*Elizabeth Yu*

Elizabeth Yu
Attorney, Environmental Enforcement Section

cc:   Major Philip B. Bandy

**000165**



U.S. Department of Justice

Environment and Natural Resources Division

---

Environmental Enforcement Section
P.O. Box 7611
Washington, DC 20044-7611

Telephone (202) 514-2277
Facsimile (202) 353-0296

**PRIVILEGED - FOR SETTLEMENT
PURPOSES ONLY**

June 21, 2002

Gerard G. Pecht, Esq.
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095

Dear Mr. Pecht:

    Re:   United States v. Support Terminal Services, Inc., et al. (D. Mass.)

Following up our meeting in May, this letter is to request certain documents, as specified below.

1. Insurance policies and related insurance documents of W.R. Grace, Grace Energy Corporation, and/or its subsidiaries (referred to by Martin Pentz).

2. Support Terminal Services insurance policies pertaining to special coverages and related documents (referred to by Martin Pentz).

3. Information on Samson Hydrocarbons' participation in partnerships, as indicated in documents filed with the SEC (referred to by you).

4. The "Stipulations" document, filed on April 16, 1999, in the State court case (Grace Energy Corp. v. Kaneb Pipe Line, et al.), referred to in the May 22, 1999, letter of Judge Haynes (item # 45 in your Appendix to Chronology, attached to your March 25, 2002 letter), on the third page (Bates # 003955).

5. Any other documents containing fact stipulations filed in the State court case.

6. The "Defendants' letter to the Court," dated 4/20/2000, and the "Plaintiff's letter to the Court," dated 4/20/2000, that are referred to in the Order Clarifying Partial Summary Judgment in the State court case (item #47 in the Appendix to Chronology), on page 2 (Bates # 008158).

7. Any other summary judgment opinions rendered in the State court case besides the Partial Summary Judgment dated July 2, 1999 (item #46 in the Appendix to Chronology).

8. A copy of the entire Post Trial Hearing, dated June 9, 2000, in the State court case (excerpt attached as item #51 in the Appendix to Chronology).

9.  If you or Support Terminal Services has a copy executed on behalf of the Air Force,
a copy of the Agreement dated 4/8/63 between the Air Force and Standard
Transmission Corp. (copy executed on behalf of Standard Transmission
is in the DFSC documents transmitted to you previously, document stamped
DFSC 0023 to DFSC 0026).

10.  A copy of the documents referred to in the deposition of Fred Johnson (two
volumes), in the State court case, that were not given exhibit numbers,
but instead referred to by their Bates numbers.    A list of the Bates numbers
for these documents is attached hereto.[1]

Please provide a copy of these documents in the next few weeks.

Sincerely,

*Elizabeth Yu*

Elizabeth Yu
Attorney, Environmental Enforcement Section

cc:  Carrie Greco, Esq.
Timothy Evans, Esq.
Henry Byers, Esq.
John McCarthy, Esq.
Thomas Boer, Esq.

---

[1]    We would actually prefer to get a copy of the full GEC and KPOP Bates numbered document
sets. We would be willing to pay for the xeroxing cost.

- 2 -

000167

XXX-001245

Bate-stamped documents referred to in Fred Johnson deposition (Texas case)

GEC# documents

236-238
247-249
254-255
286
490
504
555
669-671
1025
1084-1086
1327
1559
2529
2756-2765
2791
2848
3050
3053
3058
3094-3105
3234-3242
3312
3319
3334
3424
3453
3575
3769-3770
3776-3778
3787
4571
4612
4624-4625
4631
4638
4642
4666
4672
4681
4683
4701

000168

XXX-001246

GEC# documents, continued

4708
4710-4711
4715-4727
4967
5024-5033
5280
5332

KPOP# documents

739
926
1149
1175-1177
1196
1422-1423
1438-1439
1449-1454
1462-1464
1466-1467
1478-1498
1505-1506
1510-1517
1587
1598-1601
1610
1612-1622
1682
1685-1686
1688
1701
1726
1729
1869
2123
2161-2164
2173-2189
2195
2197-2205
2207-2209
2212
2214
2216-2219
2229-2230
2917-2924

Miscellaneous

GRA 1701
DEC 2308

# EXHIBIT K9

000171

XXX-001249

## THE GEC POLICIES
### June 30, 1971 – June 30, 1988

### PRIMARY LIABILITY POLICIES

**Continental Casualty Company (CNA)**
CCP 902-36-70 (6/30/73-6/30/76): Tab 1 (Bates Nos. GEC 029630 - GEC 029746)
CCP 248-3440 (6/30/76-6/30/83): Tab 2 (Bates Nos. GEC 029747 - GEC 030020)
CCP 248-3440 (6/30/83-6/30/88): Tab 3 (Bates Nos. GEC 030188 - GEC 030301)

### EXCESS/UMBRELLA LIABILITY POLICIES

**Admiral Insurance Company**
75 DD 0164 (SCX 0369) (6/30/75-6/30/76): Tab 10D (Bates Nos. GEC 025038 - GEC 025045)

**American Employers' Insurance Company**
EY-8220-005 (6/30/71-6/30/74): Tab 4 (Bates Nos. GEC 024585 - GEC 024629)

**California Union Insurance Company**
ZCX 0001391 (Cover Sheet 34078) (6/30/75-6/30/76): Tab 11D (Bates Nos. GEC 025070 - GEC 025071)

**Central National Insurance Company of Omaha**
CNU 12-33-83 (6/30/75-6/30/76): Tab 10C (Bates Nos. GEC 025032 - GEC 025037)

**Continental Casualty Company (CNA)**
RDX 893-68-33 (8/9/73-6/30/74): Tab 6B (Bates Nos. GEC 024648 - GEC 024649)
RDX 033 915 66 45 (6/30/74-6/30/77): Tabs 8, 12 and 15 (Bates Nos. GEC 024736 - GEC 024742, GEC 025072 -- GEC 025078, and GEC 025408 – GEC 025414)
RDX 178-45-29 (6/30/84-6/30/85): Tab 29D (Bates Nos. GEC 028842 - GEC 028852)

**First State Insurance Company**
922099 (6/30/75-6/30/76): Tab 11C (Bates Nos. GEC 025063 - GEC 025069)

**Gerling-Konzern**
01/49/99/6282 (6/30/78-6/30/79): Tab 19D (Bates No. GEC 026197)

**Granite State Insurance Company**
6178-0491 (6/30/78-6/30/79): Tab 19C (Bates Nos. GEC 026189 - GEC 026196)
6179-1383 (6/30/79-6/30/80): Tab 21C (Bates Nos. GEC 026615 - GEC 026622)
6480-5013 (6/30/80-6/30/81): Tab 22C (Bates Nos. GEC 027050 - GEC 027058)
6481-5220 (6/30/81-6/30/82): Tab 23A (Bates Nos. GEC 027464 - GEC 027472)
6482-5442 (6/30/82-6/30/83): Tab 25C (Bates Nos. GEC 028005 - GEC 028015)

XXX-001250

6483-5666 (6/30/83-6/30/84): Tab 27B (Bates Nos. GEC 028402 - GEC 028411)
6484-5867 (6/30/84-6/30/85): Tab 29A (Bates Nos. GEC 028819 - GEC 028824)

**Home Insurance Company**
HEC 9 91 99 45 (6/30/71-6/30/74): Tab 5 (Bates Nos. GEC 024630 - GEC 024638)

**Insurance Company of North America (INA)**
XCP 37 45 (6/30/71-6/30/74): Tab 6A (Bates Nos. GEC 024639 - GEC 024647)

**Lexington Insurance Company**
550-63-39 (6/30/77-6/30/78): Tab 18B (Bates Nos. GEC 025776 - GEC 025784)
5510442 (6/30/78-6/30/79): Tab 19B (Bates Nos. GEC 026179 - GEC 026188)
5514585 (6/30/79-6/30/80): Tab 21B (Bates Nos. GEC 026604 - GEC 026614)
5540469 (6/30/80-6/30/82): Tab 22B (Bates Nos. GEC 027042 - GEC 027049)

**Lloyd's**
76 DD 1594C (6/30/76-6/30/79): Tab 13A (Bates Nos. GEC 026053 - GEC 026098)
76 DD 1595C (6/30/76-6/30/79): Tabs 14A1 and 14A2 (Bates Nos. GEC 025379 - GEC 025400, and GEC 026115 - GEC 026136)
77 DD 1631C (6/30/77-6/30/78): Tab 18A (Bates Nos. GEC 025740 - GEC 025775)
78 DD 1417C (6/30/78-6/30/79): Tab 19A (Bates Nos. GEC 026137 - GEC 026178)
79 DD 1633C (6/30/79-6/30/82): Tab 20A (Bates Nos. GEC 026497 - GEC 026549)
79 DD 1634C (6/30/79-6/30/80): Tab 21A (Bates Nos. GEC 026554 - GEC 026603)
80 DD 1643C (6/30/80-6/30/82): Tab 22A (Bates Nos. GEC 027017 - GEC 027041)
KYO 17582 (6/30/82-6/30/85): Tab 24A (Bates Nos. GEC 028307 - GEC 028360)
KYO 17782 (6/30/82-6/30/85): Tabs 25A1, 25A2 and 25A3 (Bates Nos. GEC 027963 - GEC 027995, GEC 028373 - GEC 028391, and GEC 028794 - GEC 028818)

**New Hampshire Insurance Company**
5175-0444 (6/30/75-6/30/76): Tab 10B (Bates Nos. GEC 025025 - GEC 025031)
5175-0445 (6/30/75-6/30/76): Tab 11B (Bates Nos. GEC 025056 - GEC 025062)

**Northbrook Excess and Surplus Insurance Company**
63-001-170 (6/30/75-6/30/76): Tab 9 (Bates Nos. GEC 024988 - GEC 025014)
63-001-171 (6/30/75-6/30/76): Tab 10A (Bates Nos. GEC 025015 - GEC 025024)
63-001-172 (6/30/75-6/30/76): Tab 11A (Bates Nos. GEC 025046 - GEC 025055)
63-002-048 (6/30/76-6/30/79): Tabs 13B1, 13B2 and 13B3  (Bates Nos. GEC 025356 - GEC 025378, GEC 025715 - GEC 025730, and GEC 026099 - GEC 026114)
63-005-793 (6/30/79-6/30/82): Tabs 20B1 and 20B2 (Bates Nos. GEC 026550 - GEC 026553, and GEC 027007 - GEC 027016)
63-005-794 (6/30/79-6/30/80): Tab 21D (Bates Nos. GEC 026623 - GEC 026629)
63-006-854 (6/30/80-6/30/81): Tab 22D (Bates Nos. GEC 027059 - GEC 027063)
63-008-153 (6/30/81-6/30/82): Tab 23B (Bates Nos. GEC 027473 - GEC 027483)

**Pacific Employers Group**
XMO 01 72 04 (6/30/84-6/30/85): Tab 28 (Bates Nos. GEC 028785 - GEC 028793)

2

XXX-001251

XCC 01 22 83 (6/30/84-6/30/85): Tab 29B (Bates Nos. GEC 028825 - GEC 028831)
XMO 017211 (6/30/85-6/30/86): Tab 30 (Bates Nos. GEC 029337 - GEC 029344)
XCC 012315 (6/30/85-6/30/86): Tab 31 (Bates Nos. GEC 029358 - GEC 029360)

**Prudential Reinsurance Company**
DXC 901145 (6/30/76-6/30/77): Tab 14B (Bates Nos. GEC 025401 - GEC 025407)
DXC DX 0250 (6/30/77-6/30/78): Tab 17 (Bates Nos. GEC 025731 - GEC 025739)
DXC DX 0251 (6/30/77-6/30/78): Tab 18C (Bates Nos. GEC 025785 - GEC 025794)

**Transit Casualty Company**
SCU 955-565 (6/30/80-6/30/81): Tab 22E (Bates Nos. GEC 027064 - GEC 027069)
SCU 955-978 (6/30/81-6/30/82): Tab 23C (Bates Nos. GEC 027484 - GEC 027492)
UMB 950-239 (6/30/82-6/30/85): Tabs 24B and 26 (Bates Nos. GEC 027951 - GEC 027962, and GEC 028361 - GEC 028372)
SCU 956-259 (6/30/82-6/30/83): Tab 25B (Bates Nos. GEC 027996 - GEC 028004)
SCU 956-535 (6/30/83-6/30/84): Tab 27A (Bates Nos. GEC 028392 - GEC 028401)
SCU 956-881 (6/30/84-6/30/85): Tab 29C (Bates Nos. GEC 028832 - GEC 028841)

**Unigard Mutual Insurance Company**
1-2517 (6/30/74-6/30/75): Tab 7 (Bates Nos. GEC 024722 - GEC 024735)

3

**THE GEC POLICIES**
**CHRONOLOGICALLY, BY LAYER**
**June 30, 1971 – June 30, 1988**

| Primary Layer | Disk, Tab # | Primary Policies |
|---|---|---|
| 6/30/73 – 6/30/76 | Tab 1 | Continental Casualty CCP 902-36-70 (GEC 029630 – GEC 029746) |
| 6/30/76 – 6/30/83 | Tab 2 | Continental Casualty CCP 248-3440 (GEC 029747 – GEC 030020) |
| 6/30/83 – 6/30/88 | Tab 3 | Continental Casualty CCP 248-3440 (GEC 030188 – GEC 030301) |

| Excess Layers | Disk, Tab # | Excess Policies |
|---|---|---|
| | | **6/30/71-6/30/74** |
| First Layer Excess | Tab 4 | American Employers  EY-8220-005 (5M) (GEC 024585 – GEC 024629) |
| Second Layer Excess | Tab 5 | Home Insurance  HEC 9 91 99 45 (5M) (GEC 024630 – GEC 024638) |
| Third Layer Excess | Tab 6A Tab 6B | INA  XCP 37 45 (10M) (GEC 024639 – GEC 024647) Continental Casualty  RDX 893-68-33 (10M) (8/9/73-6/30/74) (GEC 024648 – GEC 024649) |
| | | **6/30/74 – 6/30/75** |
| First Layer Excess | Tab 7 | Unigard Mutual Insurance Company  1-2517  (10M) (GEC 024722 – GEC 024735) |
| Second Layer Excess | Tab 8 | Continental Casualty RDX 033 915 66 45  (10M) (GEC 024736 – GEC 024742) |
| | | **6/30/75-6/30/76** |
| First Layer Excess | Tab 9 | Northbrook  63-001-170  (1M) (GEC 024988 – GEC 025014) |

| Excess Layers | Disk, Tab # | Excess Policies |
|---|---|---|
| Second Layer Excess | Tab 10A | Northbrook  63-001-171  (1.5M) (GEC 025015 – GEC 025024) |
| | Tab 10B | New Hampshire 5175-0444 (1M) (GEC 025025 – GEC 025031) |
| | Tab 10C | Central National  CNU 12-33-83  (1M) (GEC 025032 – GEC 025037) |
| | Tab 10D | Admiral  75 DD 0164 (SCX 039)  (0.5M) (GEC 025038 – GEC 025045) |
| Third Layer Excess | Tab 11A | Northbrook  63 001 172  (3.5M) (GEC 025046 – GEC 025055) |
| | Tab 11B | New Hampshire  5175-0445  (0.625M) (GEC 025056 – GEC 025062) |
| | Tab 11C | First State  922099  (0.625M) (GEC 025063 – GEC 025069) |
| | Tab 11D | California Union  ZCX 0001391 (0.25M) (Bowring  Cover Note 34078) (GEC 025070 – GEC 025071) |
| Fourth Layer Excess | Tab 12 | Continental Casualty  RDX 033 915 66 45  (10M) (GEC 025072 – GEC 025078) |
| **6/30/76-6/30/77** | | |
| First Layer Excess | Tab 13A | Lloyd's  76 DD 1594C  (4M) (GEC 026053 – GEC 026098) |
| | Tab 13B1 | Northbrook  63-002-048  (1M) (GEC 025356 – GEC 025378) |
| Second Layer Excess | Tab 14A1 | Lloyd's  76 DD 1595C  (4M) (GEC 025379 – GEC 025400) |
| | Tab 14B | Prudential Re  DXC 901145  (1M) (GEC 025401 – GEC 025407) |
| Third Layer Excess | Tab 15 | Continental Casualty RDX 033 915 66 45  (10M) (GEC 025408 – GEC 025414) |
| **6/30/77-6/30/78** | | |
| First Layer Excess | Tab 13A | Lloyd's 76 DD 1594C  (4M) (GEC 026053 – GEC 026098) |
| | Tab 13B2 | Northbrook  63-002-048  (1M) (GEC 025715 – GEC 025730) |
| Second Layer Excess | Tab 14A1 | Lloyd's  76 DD 1595C  (5M) (GEC 025379 – GEC 025400) |
| Third Layer Excess | Tab 17 | Prudential Re  DXC DX 0250  (5M) (GEC 025731 – GEC 025739) |

2

2

| Excess Layers | Disk, Tab # | Excess Policies |
|---|---|---|
| Fourth Layer Excess | Tab 18A | Lloyd's 77 DD 1631C (8M) (GEC 025740 – GEC 025775) |
| | Tab 18B | *Lexington 550-63-39 (914mm as specified in Lloyd's 77 DD 1631C) (GEC 025776 – GEC 025784) |
| | Tab 18C | Prudential Re  DXC DX 0251  (2M) (GEC 025785 – GEC 025794) |
| **6/30/78-6/30/79** | | |
| First Layer Excess | Tab 13A | Lloyd's  76 DD 1594C (4M) (GEC 026053 – GEC 026098) |
| | Tab 13B3 | Northbrook 63-002-048 (1M) (GEC 026099 – GEC 026114) |
| Second Layer Excess | Tab 14A2 | Lloyd's  76 DD 1595C (5M) (GEC 026115 – GEC 026136) |
| Third Layer Excess | Tab 19A | Lloyd's  78 DD 1417C (9M) (GEC 026137 – GEC 026178) |
| | Tab 19B | *Lexington 5510442 (773,100 as specified in Lloyd's 78 DD 1417C) (GEC 026179 – GEC 026188) |
| | Tab 19C | Granite State  6178-0491  (5M) (GEC 026189 – GEC 026196) |
| | Tab 19D | Gerling Konzern  01/49/99/6282  (1M) (GEC 026197) |
| **6/30/79-6/30/80** | | |
| First Layer Excess | Tab 20A | Lloyd's  79 DD 1633C (4M) (GEC 026497 – GEC 026549) |
| | Tab 20B1 | Northbrook 63-005-793 (1M) (GEC 026550 – GEC 026553) |
| Second Layer Excess | Tab 21A | Lloyd's  79 DD 1634C (7.5M) (GEC 026554 – GEC 026603) |
| | Tab 21B | *Lexington 5514585 (803,250 as specified in Lloyd's 79 DD 1634C) (GEC 026604 -- GEC 026614) |
| | Tab 21C | Granite State  6179-1383  (3.75M) (GEC 026615 – GEC 026622) |
| | Tab 21D | Northbrook 63-005-794 (3.75M) (GEC 026623 – GEC 026629) |
| **6/30/80-6/30/81** | | |
| First Layer Excess | Tab 20A | Lloyd's  79 DD 1633C (4M) (GEC 026497 – GEC 026549) |
| | Tab 20B2 | Northbrook 63-005-793 (1M) (GEC 027007 – GEC 027016) |

3

000177

XXX-001255

| Excess Layers | Disk, Tab # | Excess Policies |
|---|---|---|
| Second Layer Excess | Tab 22A | Lloyd's  80 DD 1643C  (11.25M) (GEC 027017 – GEC 027041) |
| | Tab 22B | *Lexington  5540469  (1,201,500 as specified by Lloyd's 80 DD1643C) (GEC 027042 – GEC 027049) |
| | Tab 22C | Granite State  6480-5013  (4M) (GEC 027050 – GEC 027058) |
| | Tab 22D | Northbrook  63-006-854  (3.75M) (GEC 027059 – GEC 027063) |
| | Tab 22E | Transit  SCU 955-565  (1M) (GEC 027064 – GEC 027069) |
| **6/30/81-6/30/82** | | |
| First Layer Excess | Tab 20A | Lloyd's 79 DD 1633C  (4M) (GEC 026497 – GEC 026549) |
| | Tab 20B2 | Northbrook  63 005 793  (1M) (GEC 027007 – GEC 027016) |
| Second Layer Excess | Tab 22A | Lloyd's  80 DD 1643C  (11.25M) (GEC 027017 – GEC 027041) |
| | Tab 22B | *Lexington  5540469  (1,201,500 as specified by Lloyd's 80 DD 1643C) (GEC 027042 – GEC 027049) |
| | Tab 23A | Granite State  6481-5220  (4M) (GEC 027464 – GEC 027472) |
| | Tab 23B | Northbrook  63 008 153  (3.75M) (GEC 027473 – GEC 027483) |
| | Tab 23C | Transit  SCU 955-978  (1M) (GEC 027484 – GEC 027492) |
| **6/30/82-6/30/83** | | |
| First Layer Excess | Tab 24A | Lloyd's  KYO 17582  (4M) (GEC 028307 – GEC 028360) |
| | Tab 24B | Transit  UMB  950-239  (1M) (GEC 027951 – GEC 027962) |
| Second Layer Excess | Tab 25A1 | Lloyd's  KYO 17782  (11.25M) (GEC 027963 – GEC 027995) |
| | Tab 25B | Transit  SCU 956-259  (4.75M) (GEC 027996 – GEC 028004) |
| | Tab 25C | Granite State  6482-5442  (4M) (GEC 028005 – GEC 028015) |

000178

XXX-001256

| Excess Layers | Disk, Tab # | Excess Policies |
|---|---|---|
| **6/30/83-6/30/84** | | |
| First Layer Excess | Tab 24A | Lloyd's  KYO 17582  (4M) (GEC 028307 – GEC 028360) |
| | Tab 26 | Transit UMB 950-239  (1M) (GEC 028361 – GEC 028372) |
| Second Layer Excess | Tab 25A2 | Lloyd's KYO 17782  (11.25M) (GEC 028373 – GEC 028391) |
| | Tab 27A | Transit  SCU  956-535  (4.75M) (GEC 028392 – GEC 028401) |
| | Tab 27B | Granite State  6483-5666  (4M) (GEC 028402 – GEC 028411) |
| **6/30/84-6/30/85** | | |
| First Layer Excess | Tab 24A | Lloyd's  KYO 17582  (4M) GEC 028307 – GEC 028360 |
| | Tab 26 | Transit  UMB 950-239  (0.75M) (GEC 028361 – GEC 028372) |
| | Tab 28 | Pacific  XMO 01 72 04  (0.25M) (GEC 028785 – GEC 028793) |
| Second Layer Excess | Tab 25A3 | Lloyd's KYO 17782  (11.25M) (GEC 028794 – GEC 028818) |
| | Tab 29A | Granite State  6484-5867  (4.75) (GEC 028819 – GEC 028824) |
| | Tab 29B | Pacific  XCC 01 22 83  (1.75M) (GEC 028825 – GEC 028831) |
| | Tab 29C | Transit  SCU 956-881  (1.25M) (GEC 028832 – GEC 028841) |
| | Tab 29D | Continental Casualty RDX 178-45-29  (1M) (GEC 028842 – GEC 028852) |
| **6/30/85 – 6/30/86** | | |
| First Layer Excess | Tab 30 | Pacific  XMO 017211  (1M) (GEC 029337 – GEC 029344) |
| Second Layer Excess | Tab 31 | Pacific  XCC 012315  (1M) (GEC 029358 – GEC 029360) |

5

5

000179

XXX-001257

# EXHIBIT K10

XXX-001258

h & M. nan, Inc. | C4A    10/8/73 UAIL...

## COMMERCIAL CASUALTY POLICY

### DECLARATIONS

**CNA insurance**

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW
IA black insurance company, herein called the company)
Continental Control / 310 S. Michigan Ave / Chicago, IN 60604

| PERMIT NO | BRANCH | PHLFIX | POLICY NUMBER |
|---|---|---|---|
| 35975 | 020 | CCP | 902-36-70 |

[X] CONTINENTAL CASUALTY COMPANY
[ ] NATIONAL FIRE INSURANCE COMPANY of Hartford
[ ] AMERICAN CASUALTY COMPANY of Reading, Pa.
[ ] TRANSPORTATION INSURANCE COMPANY
[ ] TRANSCONTINENTAL INSURANCE COMPANY
[ ] VALLEY FORGE INSURANCE COMPANY
[ ] CNA CASUALTY OF CALIFORNIA

NAMED INSURED & ADDRESS (Number & Street, Town, County & State)
W.R. Grace & Co. and/or any Subsidiary
Organization, Company, including
Subsidiaries of a Subsidiary Company,
owned controlled or coming under the
active management of W.R. Grace & Co.
1114 Avenue of the Americas
New York, New York
BUSINESS OF INSURED:  Chemical Manufacturing

[ ] INDIVIDUAL   [ ] PARTNERSHIP   [X] CORPORATION
[ ] JOINT VENTURE  [ ] OTHER

The premium for this policy is
subject to Retrospective Adjustment
in accordance with the rating plan
endorsed hereon.

2. Policy Period:
6-30-73    To 6-30-76    12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE INSURED AS STATED HEREIN.

THIS DECLARATIONS PAGE IS ISSUED IN CONJUNCTION WITH AND FORMS A PART OF THE
COMMERCIAL CASUALTY POLICY

3. Audit Period: Annual, unless otherwise stated.

4. The insurance afforded is only with respect to the following Coverage Part(s) indicated by specific premium charge(s).

| ADVANCE PREMIUMS | COVERAGE PART(S) | ADVANCE PREMIUMS | COVERAGE PART(S) |
|---|---|---|---|
| S  531,539 NS 206,079 | Comprehensive General Liability Insurance | $ | Completed Operations and Products Liability Insurance |
| S  371,000 NS 50,400 | Comprehensive Automobile Liability Insurance | $ | Comprehensive Personal Insurance |
| Included | Automobile Medical Payments Insurance | $ | Farmer's Comprehensive Personal Insurance |
| Included | Protection Against Uninsured Motorists Insurance | $ | Garage Insurance |
| Included | Automobile Physical Damage Insurance | $ | Owners' and Contractors' Protective Liability Insurance |
| $ | Contractual Liability Insurance | $ | Premises Medical Payments Insurance |
| $ | Manufacturers' and Contractors' Liability Insurance | $ | Protection Against Uninsured Motorists Insurance |
| $ | Owners', Landlords' and Tenants' Liability Insurance | $ | Schedule Automobile Liability Insurance |
| Included | Personal Injury Liability Insurance | $ | Automobile Medical Payments Insurance |
| $ | | $ | Protection Against Uninsured Motorists Insurance |
| $ | Form numbers of endorsements attached at issuance included | | |
| S  902,539 NS 256,479 | Total Advance Premium for this policy. | | |

| | | | |
|---|---|---|---|
| $ If Policy Period more than one year: | | | |
| Gross Premium | $ | Discount | $  Net Premium |
| Premium is payable: | | | |
| On effective date of Policy | $ | 1st Anniversary | 2nd Anniversary |

This declarations page is issued in conjunction with... ...stated above by an advance premium and if ... (declarations, schedules) and endorsement(s) disc... stated herein.

During the past three years no insurer has cancelled insu... ...issued to the named insured, simil...

"ABSENCE OF AN ENTRY MEANS "NO EXCEPTION"."

G-31995-A                    Countersigned...                    Authorized Agent

WRG    0198

GEC 029630

000181

XXX-001259

POLICY NO.
CCP 9023670

Named Insured:    W. R. Grace & Co. and/or any Subsidiary,
Organization, Company, including
Subsidiaries of a Subsidiary Company,
owned, controlled or coming under the
active management of W. R. Grace & Co.

Address:    1114 Avenue of The Americas, New York,
New York

Policy Period:    From June 30, 1973 to June 30, 1976
12:01 A.M. standard time at the address
of the Named Insured as stated herein.

Limits of Liability: Personal Injury: $1,000,000 each occurrence
2,000,000 aggregate
products

Property Damage:  1,000,000 each occurrence
2,000,000 aggregate
products

## CONTINENTAL CASUALTY COMPANY

### A Stock Insurance Company Herein Called the Company

In consideration of the payment of the premium, and subject to
all of the terms of this policy, agrees with the Named Insured
as follows:

1.    Coverage A - Personal Injury Liability, Automobile
Coverage B - Property Damage Liability, Automobile
Coverage C - Personal Injury Liability, other than Automobile
Coverage D - Property Damage Liability, other than Automobile

- 1 -

WRG  0199

GEC 029631

The Company will pay on behalf of the Insured all sums
which the Insured shall become legally obligated to pay
as damages including liability assumed under contract
because of:

> Personal Injury or ✓
>
> Property Damage or ✓
>
> Advertising Offense ✓

to which this insurance applies, caused by an occurrence
and arising out of all operations of the Insured, including
but not limited to those operations as stated in the
schedules attached hereto. As respects the insurance
afforded by this policy, the Company shall have the right
and duty to defend any suit against the insured seeking
damages on account of such Personal Injury or Property
Damage, even if any of the allegations of the suit are
groundless, false or fraudulent and may make such
investigation and settlement of any claim or suit as it
deems expedient.

### Exclusions

This insurance does not apply:

(A) Except with respect to operations performed by
independent contractors and except with respect to
liability assumed by the insured under a contract as
defined herein, to Personal Injury or Property Damage
arising out of the ownership, maintenance, operation,
use, loading or unloading of any aircraft owned or
operated by or rented or loaned to the Named Insured:

- 2

GEC 029632

WRG    0200

000183

XXX-001261

In any case in which the Company elects not to investigate,
settle or defend, the insured, under the supervision of the
Company, shall make or cause to be made such investigation
and defense as are reasonably necessary and, subject to
prior authorization by the Company, will effect to the
extent possible such settlement or settlements as the
Company and the insured deem prudent.  The Company shall
reimburse the insured for the reasonable costs of such
investigation, settlement of defense.

### Supplementary Payments

The Company will pay in addition to the applicable limit
of liability:

(A) All expenses incurred by the Company, all costs taxed
    against the insured in any suit defended by the Company
    and all interest on the entire amount of any judgment
    therein which accrues after entry of the judgment
    and before the Company has paid or tendered or deposited
    in court that part of the judgment which does not
    exceed the limit of the Company's liability thereon;

(B) Premiums on appeal bonds required in any such suit,
    premiums on bonds to release attachments in any such
    suit for an amount not in excess of the applicable
    limit of liability of this policy, and the cost of
    bail bonds required of the insured because of accident
    or traffic law violation arising out of the use of any
    vehicle to which this policy applies, not to exceed
    $250 per bail bond, but the Company shall have no
    obligation to apply for or furnish any such bonds;

- 11 -

WRG      0209

GEC 029638

000184

XXX-001262

(B) If the claim is made or suit is brought against the
    Insured, the Insured shall as soon as practicable
    forward to the Company every demand, notice, summons
    or other process received by him or his representative.

(C) The Insured shall cooperate with the Company and upon
    the Company's request, assist in making settlements,
    in the conduct of suits and in endorsing any right of
    contribution or indemnity against any person or
    organization who may be liable to the Insured because
    of injury or damage with respect to which insurance
    is afforded under this policy; and the Insured shall
    attend hearings and trials and assist in securing
    and giving evidence and obtaining the attendance of
    witnesses.  The Insured shall not, except at his own
    cost, voluntarily make payment, assume any obligation
    or incur any expense other than for such immediate
    medical and surgical relief to others at the time of
    the accident.

5.   Action Against the Company

     No action shall lie against the Company unless, as a
     condition precedent thereto, there would have been full
     compliance with all of the terms of this policy, nor
     until the amount of the Insured's obligation to pay shall
     have been finally determined either by judgment against the
     Insured after actual trial or by written agreement of the
     Insured, the claimant and the Company.

- 18 -

GEC 029644

000185

XXX-001263

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the Insured to determine the Insured's liability. Bankruptcy or Insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

6. <u>Other Insurance</u>

The insurance afforded by this policy is primary insurance, except when stated to apply in excess or contingent upon the absence of other insurance. When this insurance is primary and the Insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance. With respect to a hired automobile or non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the Insured.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than stated in the applicable contribution provisions

- 19 -

GEC 029645

000186

XXX-001264

# EXHIBIT K11

000187

XXX-001265

**CNA**
CNA Plaza
Chicago, Illinois 60685

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW
(A stock insurance company, herein called the company)

☑ Continental Casualty Company
☐ National Fire Insurance Company of Hartford
☐ American Casualty Company of Reading, Pa.

☐ Transportation Insurance Company
☐ Transcontinental Insurance Company
☐ Valley Forge Insurance Company

## COMMERCIAL CASUALTY POLICY

DECLARATIONS

POLICY NO. CCP 2483440

ITEM 1.    NAMED INSURED:    W. R. GRACE & CO. AND/OR ANY SUBSIDIARY,
ORGANIZATION, OR COMPANY, INCLUDING SUB-
SIDIARIES OF A SUBSIDIARY COMPANY, OWNED,
CONTROLLED OR COMING UNDER THE ACTIVE
MANAGEMENT OF W. R. GRACE & CO.

ADDRESS:    1114 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK

BUSINESS OF THE NAMED INSURED:    CHEMICALLY BASED PRODUCTS &
SERVICES

THE NAMED INSURED IS:    CORPORATION

ITEM 2.    POLICY PERIOD: JUNE 30, 1976 TO JUNE 30, 1979    *See endt 44*
12:01 A.M. STANDARD TIME AT THE ADDRESS
OF THE NAMED INSURED AS STATED HEREIN.

ITEM 3.    THE LIMIT OF THE COMPANY'S LIABILITY AGAINST EACH SUCH COVERAGE
SHALL BE AS STATED HEREIN, SUBJECT TO ALL THE TERMS OF THE
POLICY HAVING REFERENCE THERETO.

| COVERAGES | LIMITS OF LIABILITY | ADVANCE PREMIUM |
|---|---|---|
| A.  PERSONAL INJURY LIABILITY OTHER THAN AUTOMOBILE | $1,000,000. EACH OCCURRENCE<br>$2,000,000. AGGREGATE PRODUCTS | INCLUDED |
| B.  PROPERTY DAMAGE LIABILITY OTHER THAN AUTOMOBILE | $1,000,000. EACH OCCURRENCE<br>$2,000,000. AGGREGATE PRODUCTS | INCLUDED |
| C.  PERSONAL INJURY LIABILITY AUTOMOBILE | $1,000,000. EACH OCCURRENCE | INCLUDED |
| D.  PROPERTY DAMAGE LIABILITY AUTOMOBILE | $1,000,000. EACH OCCURRENCE | INCLUDED |
| | TOTAL ADVANCE PREMIUM | 2,238,972. |

ITEM 4.    AUDIT PERIOD: ANNUAL

*Amended to 4,000,000 C/S/L aggregate*
*ef: 6/2/87*

COUNTERSIGNED BY

LICENSED RESIDENT A...

238-A (1)

*see endt #59*

GEC 029747

WRG    0319

000188

XXX-001266

CONTINENTAL CASUALTY COMPANY
A STOCK INSURANCE COMPANY, HEREIN CALLED THE COMPANY)
HOME OFFICE - CHICAGO, ILLINOIS

AGREES WITH W. R. GRACE & CO., IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM,
IN RELIANCE UPON THE STATEMENTS IN THE DECLARATIONS MADE A PART HEREOF AND SUBJECT
TO ALL THE TERMS OF THE POLICY:

INSURING AGREEMENT

I.   COVERAGE A -   PERSONAL INJURY LIABILITY, OTHER THAN AUTOMOBILE
     COVERAGE B -   PROPERTY DAMAGE LIABILITY, OTHER THAN AUTOMOBILE
     COVERAGE C -   PERSONAL INJURY LIABILITY, AUTOMOBILE
     COVERAGE D -   PROPERTY DAMAGE LIABILITY, AUTOMOBILE

-2-

25838-A (2)

WRG    0320

GEC 029748

000189

XXX-001267

THE COMPANY WILL PAY ON BEHALF OF THE INSURED ALL SUMS
WHICH THE INSURED SHALL BECOME LEGALLY OBLIGATED TO PAY
AS DAMAGES INCLUDING LIABILITY ASSUMED UNDER CONTRACT
BECAUSE OF:

> PERSONAL INJURY OR
> PROPERTY DAMAGE OR
> ADVERTISING OFFENSE

TO WHICH THIS INSURANCE APPLIES, CAUSED BY AN OCCURRENCE
AND ARISING OUT OF ALL OPERATIONS OF THE INSURED, INCLUDING
BUT NOT LIMITED TO THOSE OPERATIONS AS STATED IN THE
SCHEDULES ATTACHED HERETO.  AS RESPECTS THE INSURANCE
AFFORDED BY THIS POLICY, THE COMPANY SHALL HAVE THE RIGHT
AND DUTY TO DEFEND ANY SUIT AGAINST THE INSURED SEEKING
DAMAGES ON ACCOUNT OF SUCH PERSONAL INJURY OR PROPERTY
DAMAGE, EVEN IF ANY OF THE ALLEGATIONS OF THE SUIT ARE
GROUNDLESS, FALSE OR FRAUDULENT AND MAY MAKE SUCH INVESTI-
GATION AND SETTLEMENT OF ANY CLAIM OR SUIT AS IT DEEMS
EXPEDIENT.

## EXCLUSIONS

THIS INSURANCE DOES NOT APPLY:

(A)  EXCEPT WITH RESPECT TO OPERATIONS PERFORMED BY
     INDEPENDENT CONTRACTORS AND EXCEPT WITH RESPECT TO
     LIABILITY ASSUMED BY THE INSURED UNDER A CONTRACT AS
     DEFINED HEREIN, TO PERSONAL INJURY OR PROPERTY DAMAGE
     ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OPERATION,
     USE, LOADING OR UNLOADING OF ANY AIRCRAFT OWNED OR
     OPERATED BY OR RENTED OR LOANED TO THE NAMED INSURED;

(B)  TO ANY OBLIGATION TO WHICH THE INSURED OR ANY CARRIER
     AS HIS INSURER MAY BE HELD LIABLE UNDER ANY WORKMEN'S
     COMPENSATION, UNEMPLOYMENT COMPENSATION OR DISABILITY
     BENEFITS LAW, OR UNDER ANY SIMILAR LAW;

(C)  UNDER COVERAGE A AND C TO BODILY INJURY TO ANY EMPLOYEE
     OF THE INSURED ARISING OUT OF AND IN THE COURSE OF HIS
     EMPLOYMENT BY THE INSURED; BUT THIS EXCLUSION DOES NOT
     APPLY TO LIABILITY OF OTHERS ASSUMED BY THE INSURED
     UNDER CONTRACT;

-3-

G-25838-A (2)

GEC 029749

WRG    0321

000190

XXX-001268

      (IV) PRODUCTS WHICH AFTER DISTRIBUTION OR SALE BY THE
           NAMED INSURED HAVE BEEN LABELED OR RELABELED OR USED
           AS A CONTAINER, PART OR INGREDIENT OF ANY OTHER THING
           OR SUBSTANCE BY OR FOR THE VENDOR.

   (2) THE INSURANCE DOES NOT APPLY TO ANY PERSON OR ORGANIZATION, AS
      INSURED, FROM WHOM THE NAMED INSURED HAS ACQUIRED SUCH PRODUCTS
      OR ANY INGREDIENT, PART OR CONTAINER, ENTERING INTO, ACCOMPANY-
      ING OR CONTAINING SUCH PRODUCTS.

(F) EMPLOYEE ORGANIZATIONS OF THE NAMED INSURED'S EMPLOYEES OTHER THAN
   LABOR UNIONS BUT THIS INSURANCE WILL BE EXCESS OVER AND WILL NOT
   CONTRIBUTE IF ANY OTHER VALID AND COLLECTIBLE INSURANCE IS AVAILABLE
   TO SUCH ORGANIZATIONS.

## IV.  LIMITS OF LIABILITY

REGARDLESS OF THE NUMBER OF (1) INSUREDS UNDER THIS POLICY, (2) PERSONS
OR ORGANIZATIONS WHO SUSTAIN PERSONAL INJURY OR PROPERTY DAMAGE, (3)
CLAIMS MADE OR SUITS BROUGHT ON ACCOUNT OF PERSONAL INJURY OR PROPERTY
DAMAGE, OR (4) AUTOMOBILES TO WHICH THIS POLICY APPLIES, THE COMPANY'S
LIABILITY IS LIMITED AS FOLLOWS:

   THE TOTAL LIABILITY OF THE COMPANY FOR ALL DAMAGES INCLUDING FOR
   CARE AND LOSS OF SERVICES BECAUSE OF PERSONAL INJURY SUSTAINED BY
   ONE OR MORE PERSONS AS THE RESULT OF ANY ONE OCCURRENCE SHALL NOT
   EXCEED THE LIMIT OF PERSONAL INJURY LIABILITY STATED IN THE DECLARA-
   TIONS AS APPLICABLE TO "EACH OCCURRENCE".

   THE TOTAL LIABILITY OF THE COMPANY FOR ALL DAMAGES BECAUSE OF ALL
   PROPERTY DAMAGE SUSTAINED BY ONE OR MORE PERSONS OR ORGANIZATIONS
   AS THE RESULT OF ANY ONE OCCURRENCE SHALL NOT EXCEED THE LIMIT OF
   PROPERTY DAMAGE LIABILITY STATED IN THE DECLARATIONS AS APPLICABLE
   TO "EACH OCCURRENCE".

   SUBJECT TO THE ABOVE PROVISIONS RESPECTING "EACH OCCURRENCE", THE
   LIMITS OF PERSONAL INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY
   STATED IN THE DECLARATIONS AS "AGGREGATE" ARE RESPECTIVELY THE
   TOTAL LIABILITY OF THE COMPANY FOR ALL DAMAGES BECAUSE OF PERSONAL
   INJURY AND PROPERTY DAMAGE INCLUDED WITHIN THE COMPLETED OPERATIONS
   AND THE PRODUCTS HAZARDS.

FOR THE PURPOSE OF DETERMINING THE LIMIT OF THE COMPANY'S LIABILITY, ALL
PERSONAL INJURY AND PROPERTY DAMAGE ARISING OUT OF CONTINUOUS OR REPEATED
EXPOSURE TO SUBSTANTIALLY THE SAME GENERAL CONDITIONS SHALL BE CONSIDERED AS
ARISING OUT OF ONE OCCURRENCE.

IT IS FURTHER UNDERSTOOD AND AGREED THAT THE COMPANY'S LIMITS OF LIABILITY
NOTWITHSTANDING THE LIMIT OF LIABILITY STATED ON THE DECLARATIONS PAGE ARE:

-7-

G-35838-A (2)

GEC 029753

WRG    0325

000191

XXX-001269

(1)    ADVERTISING OFFENSE - $250,000 EACH OCCURRENCE,

(2)    UNDER COVERAGE B - $200,000 EACH CLAIM AND $200,000 AGGREGATE FOR
       INJURY TO OR DESTRUCTION OF PROPERTY ARISING FROM GRADUAL POLLUTION
       OR CONTINUOUS DISCHARGE, LEAKAGE, OR OVERFLOW OF SMOKE, FUMES, WASTE
       OR OTHER MATERIALS.

(3)    UNDER COVERAGE B - $200,000 EACH OCCURRENCE AND $200,000 AGGREGATE
       ARISING FROM INJURY TO OR DESTRUCTION OF PROPERTY IN THE CARE,
       CUSTODY OR CONTROL OF THE INSURED OR PROPERTY AS TO WHICH THE INSURED
       FOR ANY PURPOSE IS EXERCISING PHYSICAL CONTROL.

INASMUCH AS THIS POLICY IS WRITTEN TO COVER MORE THAN ONE INSURED, IT IS
UNDERSTOOD AND AGREED THAT ALL OF THE TERMS AND CONDITIONS, INSURING
AGREEMENTS AND ENDORSEMENTS WITH THE EXCEPTION OF LIMITS OF LIABILITY
SHALL OPERATE IN THE SAME MANNER AS IF THERE WERE A SEPARATE POLICY OF
INSURANCE COVERING EACH INSURED.

V.    POLICY TERRITORY:

      THIS INSURANCE APPLIES TO PERSONAL INJURY OR PROPERTY DAMAGE WHICH OCCURS
      DURING THE POLICY PERIOD FOR CLAIMS MADE, OR OPERATIONS, OR PRODUCTS
      ORIGINATING WITHIN THE U.S.A., ITS TERRITORIES OR POSSESSIONS, THE PANAMA
      CANAL ZONE, THE REPUBLIC OF PANAMA OR CANADA.

      IF CLAIM IS MADE OR SUIT IS BROUGHT ELSEWHERE THAN WITHIN THE UNITED
      STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS OR CANADA, THE COMPANY
      SHALL HAVE THE RIGHT BUT NOT THE DUTY TO INVESTIGATE AND SETTLE SUCH
      CLAIMS AND DEFEND SUCH SUITS.

      IN ANY CASE IN WHICH THE COMPANY ELECTS NOT TO INVESTIGATE, SETTLE OR
      DEFEND, THE INSURED, UNDER THE SUPERVISION OF THE COMPANY, SHALL MAKE
      OR CAUSE TO BE MADE SUCH INVESTIGATION AND DEFENSE AS ARE REASONABLY
      NECESSARY AND, SUBJECT TO PRIOR AUTHORIZATION BY THE COMPANY, WILL EFFECT
      TO THE EXTENT POSSIBLE SUCH SETTLEMENT OR SETTLEMENTS AS THE COMPANY AND
      THE INSURED DEEM PRUDENT.   THE COMPANY SHALL REIMBURSE THE INSURED FOR THE
      REASONABLE COSTS OF SUCH INVESTIGATION, SETTLEMENT OR DEFENSE.

                      SUPPLEMENTARY PAYMENTS

      THE COMPANY WILL PAY IN ADDITION TO THE APPLICABLE LIMIT OF LIABILITY:

      (A)   ALL EXPENSES INCURRED BY THE COMPANY, ALL COSTS TAXED AGAINST THE
            INSURED IN ANY SUIT DEFENDED BY THE COMPANY AND ALL INTEREST ON THE
            ENTIRE AMOUNT OF ANY JUDGMENT THEREIN WHICH ACCRUES AFTER ENTRY OF
            THE JUDGMENT AND BEFORE THE COMPANY HAS PAID OR TENDERED OR DEPOSITED
            IN COURT THAT PART OF THE JUDGMENT WHICH DOES NOT EXCEED THE LIMIT
            OF THE COMPANY'S LIABILITY THEREON;

                              -3-

G-35838-A (2)

GEC 029754

WRG    0326

000192

XXX-001270

(3) PREMIUMS ON APPEAL BONDS REQUIRED IN ANY SUCH SUIT, PREMIUMS ON BONDS TO RELEASE ATTACHMENTS IN ANY SUCH SUIT FOR AN AMOUNT NOT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY OF THIS POLICY, AND THE COST OF BAIL BONDS REQUIRED OF THE INSURED BECAUSE OF ACCIDENT OR TRAFFIC LAW VIOLATION ARISING OUT OF THE USE OF ANY VEHICLE TO WHICH THIS POLICY APPLIES, BUT TO EXCEED $250 PER BAIL BOND, BUT THE COMPANY SHALL HAVE NO OBLIGATION TO APPLY FOR OR FURNISH ANY SUCH BONDS;

(C) REASONABLE EXPENSE INCURRED BY THE INSURED, IN CONNECTION WITH BODILY INJURY TO WHICH THIS INSURANCE APPLIES, FOR SUCH IMMEDIATE MEDICAL AND SURGICAL RELIEF TO OTHERS AS SHALL BE IMPERATIVE AT THE TIME OF THE OCCURRENCE;

(D) REASONABLE EXPENSES INCURRED BY THE INSURED AT THE COMPANY'S REQUEST, INCLUDING ACTUAL LOSS OF EARNINGS OR SALARY NOT TO EXCEED $50 PER DAY IN ASSISTING THE COMPANY IN THE INVESTIGATION OR DEFENSE OF ANY CLAIM OR SUIT.

## DEFINITIONS

WHEN USED IN THIS POLICY (INCLUDING ENDORSEMENTS FORMING A PART HEREOF):

ADVERTISING OFFENSE - INCLUDES LIBEL, SLANDER, DEFAMATION, INFRINGEMENT OF COPYRIGHT, TITLE OR SLOGAN, PIRACY, UNFAIR COMPETITION, IDEA MISAPPROPRIATION OR INVASION OF RIGHTS OF PRIVACY, ARISING OUT OF THE NAMED INSURED'S ADVERTISING ACTIVITIES, ANY ADVERTISEMENT, PUBLICITY ARTICLES, BROADCAST OR SIMILAR ACTIVITY;

AUTOMOBILE - "AUTOMOBILE" MEANS A LAND MOTOR VEHICLE, TRAILER OR SEMI-TRAILER DESIGNED FOR TRAVEL ON PUBLIC ROADS (INCLUDING ANY MACHINERY OR APPARATUS ATTACHED THERETO), BUT DOES NOT INCLUDE MOBILE EQUIPMENT;

CONTRACT - MEANS ANY CONTRACT ENTERED INTO BY THE NAMED INSURED;

MOBILE EQUIPMENT - MEANS A LAND VEHICLE (INCLUDING ANY MACHINERY OR APPARATUS ATTACHED THERETO), WHETHER OR NOT SELF-PROPELLED, (1) NOT SUBJECT TO MOTOR VEHICLE REGISTRATION, OR (2) MAINTAINED FOR USE EXCLUSIVELY ON PREMISES OWNED BY OR RENTED TO THE NAMED INSUREDS, INCLUDING THE WAYS IMMEDIATELY ADJOINING OR (3) DESIGNED FOR USE PRINCIPALLY OFF PUBLIC ROADS, OR (4) DESIGNED OR MAINTAINED FOR THE SOLE PURPOSE OF AFFORDING MOBILITY TO EQUIPMENT OF THE FOLLOWING TYPES FORMING AN INTEGRAL PART OF OR PERMANENTLY ATTACHED TO SUCH VEHICLE: POWER CRANES, SHOVELS, LOADERS, DIGGERS AND DRILLS; CONCRETE MIXERS (OTHER THAN THE MIX-IN-TRANSIT TYPE); GRADERS, SCRAPERS, ROLLERS AND OTHER ROAD CONSTRUCTION OR REPAIR EQUIPMENT, AIR COMPRESSORS, PUMPS AND GENERATORS, INCLUDING SPRAYING, WELDING AND BUILDING CLEANING EQUIPMENT; AND GEOPHYSICAL EXPLORATION AND WELL SERVICING EQUIPMENT;

OCCURRENCE - WITH RESPECT TO COVERAGE B, "OCCURRENCE" MEANS EITHER AN ACCIDENT, EVENT OR CONTINUOUS OR REPEATED EXPOSURE TO CONDITIONS WHICH UNINTENTIONALLY CAUSES INJURY TO OR DESTRUCTION OF PROPERTY;

-4-

G-35838-A (2)

WRG    0327

000193

XXX-001271

5.  **ACTION AGAINST THE COMPANY**

NO ACTION SHALL LIE AGAINST THE COMPANY UNLESS, AS A CONDITION PRECEDENT
THERETO, THERE WOULD HAVE BEEN FULL COMPLIANCE WITH ALL OF THE TERMS OF
THIS POLICY, NOR UNTIL THE AMOUNT OF THE INSURED'S OBLIGATION TO PAY
SHALL HAVE BEEN FINALLY DETERMINED EITHER BY JUDGMENT AGAINST THE INSURED
AFTER ACTUAL TRIAL OR BY WRITTEN AGREEMENT OF THE INSURED, THE CLAIMANT
AND THE COMPANY.

ANY PERSON OR ORGANIZATION OR THE LEGAL REPRESENTATIVE THEREOF WHO HAS
SECURED SUCH JUDGMENT OR WRITTEN AGREEMENT SHALL THEREAFTER BE ENTITLED
TO RECOVER UNDER THIS POLICY TO THE EXTENT OF THE INSURANCE AFFORDED BY
THIS POLICY.  NO PERSON OR ORGANIZATION SHALL HAVE ANY RIGHT UNDER THIS
POLICY TO JOIN THE COMPANY AS A PARTY TO ANY ACTION AGAINST THE INSURED
TO DETERMINE THE INSURED'S LIABILITY.  BANKRUPTCY OR INSOLVENCY OF THE
INSURED OR OF THE INSURED'S ESTATE SHALL NOT RELIEVE THE COMPANY OF ANY
OF ITS OBLIGATIONS HEREUNDER.

6.  **OTHER INSURANCE**

THE INSURANCE AFFORDED BY THIS POLICY IS PRIMARY INSURANCE, EXCEPT WHEN
STATED TO APPLY IN EXCESS OR CONTINGENT UPON THE ABSENCE OF OTHER IN-
SURANCE.  WHEN THIS INSURANCE IS PRIMARY AND THE INSURED HAS OTHER
INSURANCE WHICH IS STATED TO BE APPLICABLE TO THE LOSS ON AN EXCESS OR
CONTINGENT BASIS, THE AMOUNT OF THE COMPANY'S LIABILITY UNDER THIS POLICY
SHALL NOT BE REDUCED BY THE EXISTENCE OF SUCH OTHER INSURANCE.  WITH
RESPECT TO A HIRED AUTOMOBILE OR NON-OWNED AUTOMOBILE, THIS INSURANCE
SHALL BE EXCESS INSURANCE OVER ANY OTHER VALID AND COLLECTIBLE INSURANCE
AVAILABLE TO THE INSURED.

WHEN BOTH THIS INSURANCE AND OTHER INSURANCE APPLY TO THE LOSS ON THE
SAME BASIS, WHETHER PRIMARY, EXCESS OR CONTINGENT, THE COMPANY SHALL
NOT BE LIABLE UNDER THIS POLICY FOR A GREATER PROPORTION OF THE LOSS
THAN STATED IN THE APPLICABLE CONTRIBUTION PROVISIONS BELOW:

(A)  CONTRIBUTION BY EQUAL SHARES.  IF ALL OF SUCH OTHER VALID AND
     COLLECTIBLE INSURANCE PROVIDES FOR CONTRIBUTION BY EQUAL SHARES,
     THE COMPANY SHALL NOT BE LIABLE FOR A GREATER PORTION OF SUCH LOSS
     THAN WOULD BE PAYABLE IF EACH INSURER CONTRIBUTES AN EQUAL SHARE
     UNTIL THE SHARE OF EACH INSURER EQUALS THE LOWEST APPLICABLE LIMIT
     OF LIABILITY UNDER ANY ONE POLICY OR THE FULL AMOUNT OF THE LOSS
     IS PAID, AND WITH RESPECT OF ANY AMOUNT OF LOSS NOT SO PAID THE
     REMAINING INSURERS THEN CONTINUE TO CONTRIBUTE EQUAL SHARES OF THE
     REMAINING AMOUNT OF THE LOSS UNTIL EACH INSURER HAS PAID ITS LIMITS
     IN FULL OR THE FULL AMOUNT OF THE LOSS IS PAID.

(B)  CONTRIBUTION BY LIMITS.  IF ANY SUCH OTHER INSURANCE DOES NOT PRO-
     VIDE FOR CONTRIBUTION BY EQUAL SHARES, THE COMPANY SHALL NOT BE
     LIABLE FOR A GREATER PORTION OF SUCH LOSS THAN THE APPLICABLE LIMIT
     OF LIABILITY UNDER THIS POLICY FOR SUCH LOSS BEARS TO THE TOTAL
     APPLICABLE LIMIT OF LIABILITY OF ALL VALID AND COLLECTIBLE INSURANCE
     AGAINST SUCH LOSS.

-13-

7-25838-A (2)

WRG    0331

000194

XXX-001272

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THAT ITEM #3
OF THE DECLARATION PAGE IS AMENDED TO READ:

| | |
|---|---|
| PERSONAL INJURY LIABILITY OTHER THAN AUTOMOBILE | $1,000,000. EACH OCCURRENCE ✓ |
| PROPERTY DAMAGE LIABILITY OTHER THAN AUTOMOBILE | $1,000,000. EACH OCCURRENCE ✓ |
| PRODUCTS AGGREGATE | $4,000,000. COMBINED PERSONAL INJURY & PROPERTY DAMAGE ✓ |

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 59 | CCP 2483440 | W. R. GRACE & CO. | 6/30/82 |



INSURANCE FROM CNA    9/20/82

Countersigned by _____
Authorized Representative

39543-A

WRG    0449

000195

XXX-001273

# EXHIBIT K12

000196

XXX-001274

**INSURANCE FROM**

**CNA**   CNA Plaza
Chicago, Illinois 60685

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW
(A stock insurance company, herein called the company)

[x] Continental Casualty Company          [ ] Transportation Insurance Company
[ ] National Fire Insurance Company of Hartford   [ ] Transcontinental Insurance Company
[ ] American Casualty Company of Reading, Pa.     [ ] Valley Forge Insurance Company

## COMMERCIAL CASUALTY POLICY

DECLARATIONS                                POLICY NO. CCP 2483440

ITEM 1.    NAMED INSURED:    W. R. GRACE & CO. AND/OR ANY SUBSIDIARY,
                            ORGANIZATION, OR COMPANY, INCLUDING SUB-
                            SIDIARIES OF A SUBSIDIARY COMPANY, OWNED,
                            CONTROLLED OR COMING UNDER THE ACTIVE
                            MANAGEMENT OF W. R. GRACE & CO.

           ADDRESS:          1114 AVENUE OF THE AMERICAS
                            NEW YORK, NEW YORK

ITEM 2.    POLICY PERIOD: JUNE 30, 1983 UNTIL CANCELED
                          12:01 A.M. STANDARD TIME AT THE ADDRESS
                          OF THE NAMED INSURED AS STATED HEREIN.

ITEM 3.    THE LIMIT OF THE COMPANY'S LIABILITY AGAINST EACH SUCH COVERAGE
           SHALL BE AS STATED HEREIN, SUBJECT TO ALL THE TERMS OF THE
           POLICY HAVING REFERENCE THERETO.

ITEM 4.    BUSINESS OF THE NAMED INSURED:   CONGLOMERATE

| COVERAGES | LIMITS OF LIABILITY | ADVANCE PREMIUM |
|---|---|---|
| A.  PERSONAL INJURY LIABILITY OTHER THAN AUTOMOBILE | $1,000,000. EACH OCCURRENCE | INCLUDED |
| B.  PROPERTY DAMAGE LIABILITY OTHER THAN AUTOMOBILE | $1,000,000. EACH OCCURRENCE | INCLUDED |
| FOR PRODUCTS LIABILITY AND/OR COMPLETED OPERATIONS, AN AGGREGATE LIMIT OF $4,000,000. COMBINED FOR COVERAGE A-B APPLIES ANNUALLY. | | |
| C.  PERSONAL INJURY LIABILITY AUTOMOBILE | $1,000,000. EACH OCCURRENCE | INCLUDED |
| D.  PROPERTY DAMAGE LIABILITY AUTOMOBILE | $1,000,000. EACH OCCURRENCE | INCLUDED |
| E.  ADVERTISERS LIABILITY | $  500,000. EACH OFFENSE | INCLUDED |

ITEM 5.    AUDIT PERIOD:   ANNUAL

                          COUNTERSIGNED BY _Harriet Lyar_
                                          LICENSED RESIDENT AGENT

G-35838-A (1)

GEC 030188

CONTINENTAL CASUALTY COMPANY
(A STOCK INSURANCE COMPANY, HEREIN CALLED THE COMPANY)
HOME OFFICE – CHICAGO, ILLINOIS

AGREES WITH W. R. GRACE & CO., IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS IN THE DECLARATIONS MADE A PART HEREOF AND SUBJECT TO ALL THE TERMS OF THE POLICY:

INSURING AGREEMENT

THE COMPANY WILL PAY ON BEHALF OF THE INSURED ALL SUMS WHICH THE INSURED SHALL BECOME LEGALLY OBLIGATED TO PAY AS DAMAGES INCLUDING LIABILITY ASSUMED UNDER CONTRACT BECAUSE OF:

I.   COVERAGE A –   PERSONAL INJURY LIABILITY, OTHER THAN AUTOMOBILE
     COVERAGE B –   PROPERTY DAMAGE LIABILITY, OTHER THAN AUTOMOBILE
     COVERAGE C –   PERSONAL INJURY LIABILITY, AUTOMOBILE
     COVERAGE D –   PROPERTY DAMAGE LIABILITY, AUTOMOBILE
     COVERAGE E –   ADVERTISERS LIABILITY

     TO WHICH THIS INSURANCE APPLIES, CAUSED BY AN OCCURRENCE AND THE COMPANY SHALL HAVE THE RIGHT AND DUTY TO DEFEND ANY SUIT AGAINST THE INSURED SEEKING DAMAGES ON ACCOUNT OF SUCH PERSONAL INJURY OR PROPERTY DAMAGE OR ADVERTISERS LIABILITY, EVEN IF ANY OF THE ALLEGATIONS OF THE SUIT ARE GROUNDLESS, FALSE OR FRAUDULENT AND MAY MAKE SUCH INVESTIGATION AND SETTLEMENT OF ANY CLAIM OR SUIT AS IT DEEMS EXPEDIENT.

EXCLUSIONS

THIS INSURANCE DOES NOT APPLY:

(A)  EXCEPT WITH RESPECT TO OPERATIONS PERFORMED BY INDEPENDENT CONTRACTORS AND EXCEPT WITH RESPECT TO LIABILITY ASSUMED BY THE INSURED UNDER A CONTRACT AS DEFINED HEREIN, TO PERSONAL INJURY OR PROPERTY DAMAGE ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OPERATION, USE, LOADING OR UNLOADING OF ANY AIRCRAFT OWNED OR OPERATED BY OR RENTED TO OR LOANED TO THE NAMED INSURED;

(B)  TO ANY OBLIGATION TO WHICH THE INSURED OR ANY CARRIER AS HIS INSURER MAY BE HELD LIABLE UNDER ANY WORKERS' COMPENSATION, UNEMPLOYMENT COMPENSATION OR DISABILITY BENEFITS LAW, OR UNDER ANY SIMILAR LAW;

(C)  UNDER COVERAGE A AND C TO BODILY INJURY TO ANY EMPLOYEE OF THE INSURED ARISING OUT OF AND IN THE COURSE OF HIS EMPLOYMENT BY THE INSURED; BUT THIS EXCLUSION DOES NOT APPLY TO (1) LIABILITY OF OTHERS ASSUMED BY THE INSURED UNDER CONTRACT OR (2) CLAIMS BROUGHT BY AN EMPLOYEE AGAINST A FELLOW EMPLOYEE WHO IS COVERED AS AN INSURED UNDER THIS POLICY;

-1-

GEC 030189

G-35838-A (2)

000198

XXX-001276

        (III) DEMONSTRATION, INSTALLATION, SERVICING OR REPAIR OPERATIONS, EXCEPT SUCH OPERATIONS PERFORMED AT THE VENDOR'S PREMISES IN CONNECTION WITH THE SALE OF THE PRODUCT, OR

        (IV) PRODUCTS WHICH AFTER DISTRIBUTION OR SALE BY THE NAMED INSURED HAVE BEEN LABELED OR RELABELED OR USED AS A CONTAINER, PART OR INGREDIENT OF ANY OTHER THING OR SUBSTANCE BY OR FOR THE VENDOR.

   (2) THE INSURANCE DOES NOT APPLY TO ANY PERSON OR ORGANIZATION, AS INSURED, FROM WHOM THE NAMED INSURED HAS ACQUIRED SUCH PRODUCTS OR ANY INGREDIENT, PART OR CONTAINER, ENTERING INTO, ACCOMPANYING OR CONTAINING SUCH PRODUCTS.

(F) EMPLOYEE ORGANIZATIONS OF THE NAMED INSURED'S EMPLOYEES OTHER THAN LABOR UNIONS BUT THIS INSURANCE WILL BE EXCESS OVER AND WILL NOT CONTRIBUTE IF ANY OTHER VALID AND COLLECTIBLE INSURANCE IS AVAILABLE TO SUCH ORGANIZATIONS.

(G) ANY JOINT VENTURE, CO-VENTURE, JOINT LEASE, JOINT OPERATING AGREEMENT OR PARTNERSHIP (HEREINAFTER CALLED "JOINT VENTURE") IN WHICH THE NAMED INSURED HAS AN INTEREST, BUT ONLY WITH RESPECT TO THE LIABILITY OF THE NAMED INSURED AS A MEMBER OR PARTNER THEREOF: EXCEPT, HOWEVER, THAT IF THE NAMED INSURED IS REQUIRED BY CONTRACT OR AGREEMENT TO PROVIDE DIRECT, PRIMARY INSURANCE FOR SUCH JOINT VENTURE, THE TERM "INSURED" SHALL INCLUDE SUCH JOINT VENTURE AND ANY MEMBER, PARTNER OR CO-VENTURER THEREOF, BUT ONLY WITH RESPECT TO HIS LIABILITY AS SUCH. THE JOINT VENTURE SHALL CEASE TO BE AN INSURED EFFECTIVE ON THE DAY THE NAMED INSURED CEASES TO DIRECTLY OR INDIRECTLY MAINTAIN AN INTEREST IN SUCH JOINT VENTURE WITH RESPECT TO ACTS OR OMISSIONS OF THE JOINT VENTURE TAKING PLACE AFTER SUCH DATE.

IV.  LIMITS OF LIABILITY

REGARDLESS OF THE NUMBER OF (1) INSUREDS UNDER THIS POLICY, (2) PERSONS OR ORGANIZATIONS WHO SUSTAIN PERSONAL INJURY OR PROPERTY DAMAGE, (3) CLAIMS MADE OR SUITS BROUGHT ON ACCOUNT OF PERSONAL INJURY OR PROPERTY DAMAGE, OR ADVERTISERS LIABILITY OR (4) AUTOMOBILES TO WHICH THIS POLICY APPLIES, THE COMPANY'S LIABILITY IS LIMITED AS FOLLOWS:

THE TOTAL LIABILITY OF THE COMPANY FOR ALL DAMAGES INCLUDING FOR CARE AND LOSS OF SERVICES BECAUSE OF PERSONAL INJURY LIABILITY SUSTAINED BY ONE OR MORE PERSONS AS THE RESULT OF ANY ONE OCCURRENCE SHALL NOT EXCEED THE LIMIT OF PERSONAL INJURY LIABILITY STATED IN THE DECLARATIONS AS APPLICABLE TO "EACH OCCURRENCE".

GEC 030193

G-35838-A (2)

000199

XXX-001277

THE TOTAL LIABILITY OF THE COMPANY FOR ALL DAMAGES BECAUSE OF ALL PROPERTY DAMAGE SUSTAINED BY ONE OR MORE PERSONS OR ORGANIZATIONS AS THE RESULT OF ANY ONE OCCURRENCE SHALL NOT EXCEED THE LIMIT OF PROPERTY DAMAGE LIABILITY STATED IN THE DECLARATIONS AS APPLICABLE TO "EACH OCCURRENCE".

SUBJECT TO THE ABOVE PROVISIONS RESPECTING "EACH OCCURRENCE", THE LIMITS OF PERSONAL INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY STATED IN THE DECLARATIONS AS "AGGREGATE" ARE RESPECTIVELY THE TOTAL LIABILITY OF THE COMPANY FOR ALL DAMAGES BECAUSE OF PERSONAL INJURY AND PROPERTY DAMAGE INCLUDED WITHIN THE COMPLETED OPERATIONS AND THE PRODUCTS HAZARDS.

THE TOTAL LIABILITY OF THE COMPANY FOR ALL DAMAGES BECAUSE OF ADVERTISERS LIABILITY SUSTAINED BY ONE OR MORE PERSONS OR ORGANIZATIONS AS THE RESULT OF ANY ONE OFFENSE SHALL NOT EXCEED THE LIMIT OF ADVERTISERS LIABILITY STATED IN THE DECLARATIONS AS APPLICABLE TO "EACH OFFENSE".

FOR THE PURPOSE OF DETERMINING THE LIMIT OF THE COMPANY'S LIABILITY, ALL PERSONAL INJURY AND PROPERTY DAMAGE ARISING OUT OF CONTINUOUS OR REPEATED EXPOSURE TO SUBSTANTIALLY THE SAME GENERAL CONDITIONS SHALL BE CONSIDERED AS ARISING OUT OF ONE OCCURRENCE.

INASMUCH AS THIS POLICY IS WRITTEN TO COVER MORE THAN ONE INSURED, IT IS UNDERSTOOD AND AGREED THAT ALL OF THE TERMS AND CONDITIONS, INSURING AGREEMENT AND ENDORSEMENTS WITH THE EXCEPTION OF LIMITS OF LIABILITY SHALL OPERATE IN THE SAME MANNER AS IF THERE WERE A SEPARATE POLICY OF INSURANCE COVERING EACH INSURED.

V.    DEDUCTIBLES:

THE COMPANY'S OBLIGATION FOR ALL COVERAGES CONTAINED IN THE POLICY SHALL BE COMPUTED BY SUBTRACTING FROM THE AMOUNT OF DAMAGES, OR THE "EACH OCCURRENCE" OR "EACH CLAIM" LIMIT OF LIABILITY, WHICHEVER IS LESS, $500,000. SINGLE LIMIT FOR ALL COVERAGE AND ALLOCATED CLAIM EXPENSE COMBINED.

SUBJECT TO THE CONDITIONS OF CLAIM SERVICE AGREEMENT 475 4775, THE COMPANY MAY PAY ANY PART OF OR ALL OF THE DEDUCTIBLE AMOUNT TO EFFECT SETTLEMENT OF ANY CLAIM OR SUIT, AND UPON NOTIFICATION OF THE ACTION TAKEN, THE NAMED INSURED SHALL PROMPTLY REIMBURSE THE COMPANY FOR SUCH PART OF THE DEDUCTIBLE AMOUNT AS HAS BEEN PAID BY THE COMPANY.

WITH RESPECT TO THE AUTOMOBILE PHYSICAL DAMAGE INSURANCE, THE APPLICATION OF THIS DEDUCTIBLE SHALL BE IN ADDITION TO AND IN EXCESS OF ANY OTHER SUB-DEDUCTIBLE CONTAINED IN THE POLICY.

ANY CLAIM PAID UNDER THE DEDUCTIBLE AMOUNT UNDER THE PROVISIONS OF CLAIM SERVICE AGREEMENT 475 4475, SHALL APPLY TOWARD THE SATISFACTION OF THE AGGREGATE LIMITS OF LIABILITY OF THIS POLICY WHERE APPLICABLE.

-6-

GEC 030194

G-35838-A (2)

000200

XXX-001278

VI. POLICY TERRITORY:

THIS INSURANCE APPLIES TO PERSONAL INJURY OR PROPERTY DAMAGE WHICH OCCURS ANYWHERE IN THE WORLD DURING THE POLICY PERIOD; PROVIDED HOWEVER, SUCH INSURANCE SHALL NOT APPLY TO DAMAGES FOR PERSONAL INJURY OR PROPERTY DAMAGE ARISING FROM OPERATIONS CONDUCTED, OR PRODUCTS ORIGINATING, OUTSIDE OF THE UNITED STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS, THE PANAMA CANAL ZONE, THE REPUBLIC OF PANAMA, OR CANADA, UNLESS THE ORIGINAL CLAIM IS MADE OR SUIT IS BROUGHT WITHIN THE UNITED STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS, OR CANADA.

IF CLAIM IS MADE OR SUIT IS BROUGHT ELSEWHERE THAN WITHIN THE UNITED STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS OR CANADA, THE COMPANY SHALL HAVE THE RIGHT BUT NOT THE DUTY TO INVESTIGATE AND SETTLE SUCH CLAIMS AND DEFEND SUCH SUITS.

IN ANY CASE IN WHICH THE COMPANY ELECTS NOT TO INVESTIGATE, SETTLE OR DEFEND, THE INSURED, UNDER THE SUPERVISION OF THE COMPANY, SHALL MAKE OR CAUSE TO BE MADE SUCH INVESTIGATION AND DEFENSE AS ARE REASONABLY NECESSARY AND, SUBJECT TO PRIOR AUTHORIZATION BY THE COMPANY, WILL EFFECT TO THE EXTENT POSSIBLE SUCH SETTLEMENT OR SETTLEMENTS AS THE COMPANY AND THE INSURED DEEM PRUDENT.  THE COMPANY SHALL REIMBURSE THE INSURED FOR THE REASONABLE COSTS OF SUCH INVESTIGATION, SETTLEMENT OR DEFENSE.

SUPPLEMENTARY PAYMENTS

THE COMPANY WILL PAY IN ADDITION TO THE APPLICABLE LIMIT OF LIABILITY:

(A) ALL EXPENSES INCURRED BY THE COMPANY, ALL COSTS TAXED AGAINST THE INSURED IN ANY SUIT DEFENDED BY THE COMPANY AND ALL INTEREST ON THE ENTIRE AMOUNT OF ANY JUDGMENT THEREIN WHICH ACCRUES AFTER ENTRY OF THE JUDGMENT AND BEFORE THE COMPANY HAS PAID OR TENDERED OR DEPOSITED IN COURT THAT PART OF THE JUDGMENT WHICH DOES NOT EXCEED THE LIMIT OF THE COMPANY'S LIABILITY THEREON;

(B) PREMIUMS ON APPEAL BONDS REQUIRED IN ANY SUCH SUIT, PREMIUMS ON BONDS TO RELEASE ATTACHMENTS IN ANY SUCH SUIT FOR AN AMOUNT NOT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY OF THIS POLICY, AND THE COST OF BAIL BONDS REQUIRED OF THE INSURED BECAUSE OF ACCIDENT OR TRAFFIC LAW VIOLATION ARISING OUT OF THE USE OF ANY VEHICLE TO WHICH THIS POLICY APPLIES, NOT TO EXCEED $250 PER BAIL BOND, BUT THE COMPANY SHALL HAVE NO OBLIGATION TO APPLY FOR OR FURNISH ANY SUCH BONDS;

(C) REASONABLE EXPENSE INCURRED BY THE INSURED, IN CONNECTION WITH BODILY INJURY TO WHICH THIS INSURANCE APPLIES, FOR SUCH IMMEDIATE MEDICAL AND SURGICAL RELIEF TO OTHERS AS SHALL BE IMPERATIVE AT THE TIME OF THE OCCURRENCE;

(D) REASONABLE EXPENSES INCURRED BY THE INSURED INCLUDING ACTUAL LOSS OF EARNINGS OR SALARY NOT TO EXCEED $100 PER PERSON PER DAY IN ASSISTING THE COMPANY IN THE INVESTIGATION OR DEFENSE OF ANY CLAIM OR SUIT.

--7--

GEC 030195

000201

XXX-001279

INJURY OR DAMAGE WITH RESPECT TO WHICH INSURANCE IS AFFORDED UNDER
THIS POLICY; AND THE INSURED SHALL ATTEND HEARINGS AND TRIALS AND
ASSIST IN SECURING AND GIVING EVIDENCE AND OBTAINING THE ATTENDANCE
OF WITNESSES.  THE INSURED SHALL NOT, EXCEPT AT HIS OWN COST,
VOLUNTARILY MAKE PAYMENT, ASSUME ANY OBLIGATION OR INCUR ANY EXPENSE
OTHER THAN FOR SUCH IMMEDIATE MEDICAL AND SURGICAL RELIEF TO OTHERS
AT THE TIME OF THE ACCIDENT.

5.  ACTION AGAINST THE COMPANY

NO ACTION SHALL LIE AGAINST THE COMPANY UNLESS, AS A CONDITION PRECEDENT
THERETO, THERE WOULD HAVE BEEN FULL COMPLIANCE WITH ALL OF THE TERMS OF
THIS POLICY, NOR UNTIL THE AMOUNT OF THE INSURED'S OBLIGATION TO PAY
SHALL HAVE BEEN FINALLY DETERMINED EITHER BY JUDGMENT AGAINST THE INSURED
AFTER ACTUAL TRIAL OR BY WRITTEN AGREEMENT OF THE INSURED, THE CLAIMANT
AND THE COMPANY.

ANY PERSON OR ORGANIZATION OR THE LEGAL REPRESENTATIVE THEREOF WHO HAS
SECURED SUCH JUDGMENT OR WRITTEN AGREEMENT SHALL THEREAFTER BE ENTITLED
TO RECOVER UNDER THIS POLICY TO THE EXTENT OF THE INSURANCE AFFORDED BY
THIS POLICY.  NO PERSON OR ORGANIZATION SHALL HAVE ANY RIGHT UNDER THIS
POLICY TO JOIN THE COMPANY AS A PARTY TO ANY ACTION AGAINST THE INSURED
TO DETERMINE THE INSURED'S LIABILITY.  BANKRUPTCY OR INSOLVENCY OF THE
INSURED OR OF THE INSURED'S ESTATE SHALL NOT RELIEVE THE COMPANY OF ANY
OF ITS OBLIGATIONS HEREUNDER.

6.  OTHER INSURANCE

THE INSURANCE AFFORDED BY THIS POLICY IS PRIMARY INSURANCE, EXCEPT WHEN
STATED TO APPLY IN EXCESS OR CONTINGENT UPON THE ABSENCE OF OTHER IN-
SURANCE.  WHEN THIS INSURANCE IS PRIMARY AND THE INSURED HAS OTHER
INSURANCE WHICH IS STATED TO BE APPLICABLE TO THE LOSS ON AN EXCESS OR
CONTINGENT BASIS, THE AMOUNT OF THE COMPANY'S LIABILITY UNDER THIS POLICY
SHALL NOT BE REDUCED BY THE EXISTENCE OF SUCH OTHER INSURANCE.  WITH
RESPECT TO A HIRED AUTOMOBILE OR NON-OWNED AUTOMOBILE, THIS INSURANCE
SHALL BE EXCESS INSURANCE OVER ANY OTHER VALID AND COLLECTIBLE INSURANCE
AVAILABLE TO THE INSURED.

THIS INSURANCE WILL BE EXCESS OF ANY OTHER VALID AND COLLECTIBLE INSURANCE
WHICH IS AVAILABLE TO ANY INSURED HEREUNDER UNDER THE TERMS OF ANY CONTRACT
ENTERED INTO BY THE NAMED INSURED OR ANY PARTNER, DIRECTOR, EXECUTIVE
OFFICER OR EMPLOYEE THEREOF AND SUCH OTHER INSURANCE IS STATED TO BE PRIMARY.

IF ANY INSURER AFFORDING OTHER INSURANCE TO THE NAMED INSURED DENIES
PRIMARY LIABILITY UNDER ITS POLICY, THE COMPANY WILL RESPOND UNDER THIS
POLICY AS THOUGH SUCH OTHER INSURANCE WERE NOT AVAILABLE.  THEREAFTER,
THE COMPANY SHALL BE SUBROGATED TO ALL RIGHTS OF THE INSURED TO SUCH
OTHER INSURANCE AND THE INSURED SHALL DO NOTHING TO PREJUDICE SUCH RIGHTS.

GEC 030200

G-35838-A (2)

000202

XXX-001280

IT IS AGREED THAT THE LIMITS OF LIABILITY ARE AMENDED AS FOLLOWS:

| COVERAGE | LIMIT | AGGREGATE |
|---|---|---|
| A. PERSONAL INJURY LIABILITY OTHER THAN AUTOMOBILE | $3,000,000. EACH OCCURRENCE | $10,000,000. BODILY INJURY AND PROPERTY DAMAGE COMBINED PER PRODUCTS AND COMPLETED OPERATIONS |
| B. PROPERTY DAMAGE LIABILITY OTHER THAN AUTOMOBILE INCLUDING CARE, CUSTODY AND CONTROL | $3,000,000. EACH OCCURRENCE | |
| C. D. PERSONAL INJURY AND PROPERTY DAMAGE LIABILITY AUTOMOBILE | $3,000,000. COMBINED SINGLE LIMIT EACH OCCURRENCE | — |
| E. ADVERTISERS LIABILITY | $1,000,000. EACH OFFENSE | — |
| . ELECTRONIC DATE DATA PROCESSORS ERRORS AND OMISSIONS | $1,000,000. EACH OCCURRENCE | $2,000,000. |
| EMPLOYEE BENEFITS LIABILITY | $1,000,000. EACH CLAIM | $2,000,000. |

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 29 | CCP 248 3440 | W. R. GRACE & CO. | 6-30-85 |

**CNA**
All the Commitments You Make®

HDF

Countersigned by _____
Authorized Representative

GEC 030259

G-39543-A

AMENDATORY ENDORSEMENT
LIMITS OF LIABIILTY

IT IS AGREED THAT THE LIMITS OF LIABILITY ARE AMENDED AS FOLLOWS:

| COVERAGE | | LIMIT | AGGREGATE |
|---|---|---|---|
| A. | PERSONAL INJURY LIABILITY OTHER THAN AUTOMOBILE | $3,000,000. EACH OCCURRENCE | $12,000,000. PERSONAL INJURY AND PROPERTY DAMAGE COMBINED FOR PRODUCTS AND COMPLETED OPERATIONS |
| B. | PROPERTY DAMAGE LIABILITY OTHER THAN AUTOMOBILE INCLUDING CARE, CUSTODY AND CONTROL | $3,000,000 EACH OCCURRENCE | |
| C. D. | PERSONAL INJURY AND PROPERTY DAMAGE LIABILITY AUTOMOBILE | $3,000,000. COMBINED SINGLE LIMIT EACH OCCURRENCE | |
| E. | ADVERTISERS LIABILITY | $3,000,000. EACH OFFENSE | |
| | ELECTRONIC DATA PROCESSORS ERRORS AND OMISSIONS | $2,000,000. EACH OCCURRENCE | $3,000,000. |
| | EMPLOYEE BENEFITS LIABILITY | $1,000,000. EACH CLAIM | $2,000,000. |

THIS ENDORSEMENT REPLACES AND SUPERSEDES ENDORSEMENT NO. 37.

his endorsement is part of your policy and takes effect on the effective date of your policy,
nless another effective date is shown below.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| REVISED 37 | CCP 248 3440 | W.R. GRACE & CO. | 6-30-86 |

1-1° °8
NA
or ᴀ.... The Commitments You Make

GEC 030272

Countersigned by _____
                          Authorized Representative

SW/035975/A:M51C7M10.DOC

G-39543A

000204

XXX-001282

AMENDATORY ENDORSEMENT
LIMITS OF LIABIILTY

IT IS AGREED THAT THE LIMITS OF LIABILITY ARE AMENDED AS FOLLOWS:

| COVERAGE | | LIMIT | AGGREGATE |
|---|---|---|---|
| A. & B. | PERSONAL INJURY & PROPERTY DAMAGE LIABILITY OTHER THAN AUTOMOBILE | $7,500,000.  COMBINED SINGLE LIMIT EACH OCCURRENCE | $12,000,000. INJURY AND PROPERTY DAMAGE COMBINED FOR PRODUCTS AND COMPLETED OPERATIONS |
| C. D. | PERSONAL INJURY AND PROPERTY DAMAGE LIABILITY AUTOMOBILE | $7,500,000. COMBINED SINGLE LIMIT EACH OCCURRENCE | |
| E. | ADVERTISERS LIABILITY | $7,500,000. EACH OFFENSE | |
| F. | ELECTRONIC DATA PROCESSORS ERRORS AND OMISSIONS | $7,500,000. EACH OCCURRENCE | $7,500,000. |
| | EMPLOYEE BENEFITS LIABILITY | $7,500,000. EACH CLAIM | $7,500,000. |

his endorsement is part of your policy and takes effect on the effective date of your policy,
nless another effective date is shown below.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 41 | CCP 248 3440 | W.R. GRACE & CO. | 6-30-87 |

-2'
NA
or All The Commitments You Make

GEC 030281

Countersigned by _____

Authorized Representative

W/035975/A:M51C7M10.TXT

G-39543A

# EXHIBIT K13

000206

XXX-001284

MARSH & McLENNAN
INCORPORATED

VOL. V, TAB 1
00304-150

70 Pine Street, New York, New York 10005 / 943-2:

OFFICE COPY OF CONFIRMATION AND BINDER

No. 8201

Date October 3, 1968

Mr. C. F. Krauter
Insurance Manager
W. R. Grace & Co.
7 Hanover Square
New York, New York

Insured   W. R. Grace & Co. etal

| AMOUNT | RATE OR PREMIUM | EFFECTIVE | EXI |
|---|---|---|---|
| F/R $140,000.00 | 10/20/68 | 6/: |

Companies, Policy Numbers, Amounts
and Signatures

American Employers Ins. Co.
Umbrella Liability

To: _____
   J. Bullock

To: Franz Ohlandt

Binding $5,000,000 excess of Primary Insurance or
$25,000 Self-Insured Retention where Primary
Insurance is not available.

Policy Form - Same as Expiring
Policy No. A1S-8220-001

Sales 1967 = $1,088,000,000 U.S.A. and Canada
      1968 = 1,400,000,000  "    "    "
      1969 = 1,700,000,000  "    "    "
      1970 = 2,000,000,000  "    "    "

Policy to be adjusted if sales exceed $3,500,000,
on major acquisitions at option of Insured - Flat
premium may be negotiated.

Bind coverage as expiring for Charterer's
Liability, Vessel "Hope" and Fidelity Coverage.

☐ Reporting Form
☐ Forms herewith
☐ Forms to come
☐ Use Company forms
☐ Copies and original

This Binder is Subject to the Terms of the
Usual Form of Policy Issued to Provide the
Type of Insurance Described. Except as Noted.

MARSH & McLENNAN, Incorporated
70 Pine St., New York   N. Y.

By   William C. Hall

FORM 12 39

WRG   0153

WRG Policies
03055

GEC 024585

000207

XXX-001285

POLICY ........ ..........                    1215 A

..................................................

(A Stock insurance company, herein called the Company)

Agrees with the Insured, named in the Declarations made a part
hereof, in consideration of the payment of the premium and in
reliance upon the statements in the Declarations and subject to
the limits of liability, exclusions, conditions and all other terms
of this policy:

## INSURING AGREEMENTS

I.  COVERAGES:  To indemnify the Insured for all sums which the
    Insured shall be obligated to pay by reason of the liability
    imposed upon him by law or liability assumed by him under
    contract or agreement for damages, and expenses, all as in-
    cluded in the definition of "ultimate net loss", because of:

    (a)  personal injuries, as hereinafter defined;

    (b)  property damage, as hereinafter defined;

    (c)  advertising liability, as hereinafter defined.

II. DEFINITIONS:

    1.  Insured.

        The unqualified word "Insured" includes the Named Insured
        and also includes:

        (a)  except with respect to liability arising out of the
             ownership, operation, maintenance, use, loading and
             unloading of automobiles, aircraft and watercraft-
             any officer, director, stockholder, or employee of
             the Named Insured, while acting within the scope of
             his duties as such, and any organization or pro-
             prietor with respect to real estate management for
             the Named Insured.  If the Named Insured is a part-
             nership, any partner therein but only with respect
             to his liability as such;

        (b)  any other person or organization who is an additional
             Insured under any underlying policy of insurance
             subject to all the limitations upon coverage under
             such policy other than the limits of the underlying
             insurer's liability;

PRODUCERS COPY

GEC 024586

000208

XXX-001286

(c) with respect to any automobile owned by the Named
Insured or hired for use by or on behalf of the
Named Insured, or to any aircraft hired for use
by or on behalf of the Named Insured, any person
while using such automobile or such aircraft and
any person or organization legally responsible
for the use thereof, provided the actual use
thereof is with the permission of the Named Insured.
The insurance afforded by this sub-division (c),
with respect to any person or organization other
than the Named Insured does not apply -

1. to any person or organization, or to any
agent or employee thereof, operating an
automobile repair shop, public garage,
sales agency, service station or public
parking place, with respect to any oc-
currence arising out of the operation
thereof;

2. to (i) any manufacturer of aircraft
engines or component parts of aircraft,
or aviation accessories, or (ii) any
aircraft sales or service or repair
organization, or (iii) any seller of
aircraft supplies, accessories, equipment
or component parts of aircraft or (iv)
any airport or hangar operator or (v) the
respective employees or agents of any of
the aforementioned with respect to any
occurrence arising out of the operations
of any of the aforementioned;

3. with respect to any hired automobile or
aircraft, to the owner or lessee thereof,
other than the Named Insured, or any
employee of such owner or lessee.

Except with respect to sub-paragraph 2 hereof, this sub-division
(c) shall not apply if it restricts the insurance granted under
sub-division (b) above.

(d) any person, organization, trustee or estate other
than as described in sub-division (a), (b) and (c)
hereof and other than as excluded in sub-paragraphs
1, 2 and 3 of sub-division (c) hereof, to the extent
that and for such limits of liability as the Named
Insured has agreed in writing prior to the happening
of any occurrence covered hereunder to provide in-
surance for such interests, but only with respect to
operations performed by or on behalf of the Named
Insured; provided, however, in no event shall such
insurance exceed the insurance otherwise provided
under this policy, including the applicable limits
of liability of this policy.

-2-

WRG Policies
03057

GEC 024587

000209

XXX-001287

09367

3.   SPECIAL CONDITIONS ...............                ......

As regards personal .......              ... ..... .... . ...
Occupational Disease ... ...          ... ... ..... of the
Insured, this polic_ ... ..           ... ... .... .....,
terms or conditions _except as regards the premium, the
amount and limits of ... .... ..... ..... ..ich respecting
"other insurance" and ...... ..... (.. .......), if any) as are
contained in or as may be ..... .... the policies of Underlying
Insurances set forth in the ....    .... ..... prior to the
happening of an occurrence for .... ..... ..im is made hereunder.

4.   LIMITS OF LIABILITY.

The Company shall only be liable for ultimate net loss in
excess of either:

(a) except as provided in sub-paragraph (b) hereof, the
    applicable limits of liability of the policies of
    underlying insurance set forth in Item 3 of the
    Declarations; or

(b) as respects each occurrence not covered by such
    underlying insurance, or where each occurrence is
    covered by such underlying insurance but in recoverable
    amounts less than the Underlying Limits set forth in
    Item 4 of the Declarations, the amount of ultimate net
    loss set forth in the Declarations as "Underlying
    Limits",

but in no event shall the Company be liable for an amount
in excess of the applicable limit of liability set forth
in Item 5 of the Declarations.

The limit of liability stated in Item 5 of the Declarations
as applicable to "each occurrence" is the total limit of the
Company's liability under this policy for ultimate net loss
as a result of any one occurrence.  Subject to the limit of
liability set forth in Item 5 of the Declarations with re-
spect to "each occurrence", the limit of liability so set
forth as "aggregate" shall be the total limit of the Company's
liability under this policy for ultimate net loss:

(1) because of all personal injury and property damage
    during each consecutive twelve months of the policy
    period, arising out of the Products-Completed
    Operations Hazards, and

(2) because of all personal injury during each con-
    secutive twelve months of the policy period sustained
    from Occupational Disease by any employee of the Insured.

In the event of reduction or exhaustion of the aggregate limits
of liability under the policies of underlying insurance by
reason of losses paid thereunder, this policy shall:

-5-

WRG Policies
03064

GEC 024594

09371

DECLARATION

POLICY OF EXCESS INSURANCE          XL 227

ITEM 1.  NAMED INSURED: ,

W. R. Grace & Co. and/or Subsidiary, Associated,
Affiliated Companies owned and/or controlled and/or
managed Companies as now or hereafter constituted.

ADDRESS:

7 Hanover Square
New York, New York 10005 /

ITEM 2.  POLICY PERIOD:

From June 30, 1971 to June 30, 1974.
12:01 A.M. Standard Time at the address
of the Named Insured as stated herein  /

ITEM 3.  UNDERLYING INSURANCE: /

(See Attached) .

ITEM 4.  UNDERLYING LIMITS:

$100,000.00 United States, its territories, possessions,
and Canada
$250,000.00 Foreign /

ITEM 5.  LIMITS OF LIABILITY - ULTIMATE NET LOSS: /

$5,000,000.00 each occurrence /
$5,000,000.00 aggregate          /

ITEM 6.  PREMIUM: /

$435,000.00 Minimum and Deposit
Adjustable at expiration at a rate of .075 per
$1,000. of Gross Sales in the United States and
Canada.

Countersigned_____
                     Authorized Agent

-12-

WRG Policies
03068

GEC 024598

000211

XXX-001289

# EXHIBIT K14

000212

XXX-001290

# THE HOME INSURANCE COMPANY
## DAILY REPORT

00403

| | RENEWING OR IN LIEU OF | | | RATE OF COMM'L | | SUBJECT TO AUDIT | | | | HEC — 9 91 99 45 |
|---|---|---|---|---|---|---|---|---|---|---|
| | HEC 9304605 | | | 10 % | YES ☐ | | NO ☐ | | | |

| CO. | ACCT. ID CODE | TRANS. CODE | STAT. STATE | REINSURANCE OR TAX LOCATION | MAJOR LINE CODE | SUB. LINE | RATE OF COMMISSION | STATISTICAL PREMIUM | IF PAID ON INSTALLMENTS | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | MONTH & YR. | COLL. PREMIUM |
| A | 07 | | | | 771 | 7 7 0 | | | | |

THE HOME INSURANCE COMPANY
EXCESS LIABILITY POLICY

**INS**

COLLECTION PREM.

KEY PUNCH

HEC — 9 91 99 45

ITEM 1. Insured's Name and Mailing Address

W. R. Grace & Co., Etal
(See Endorsement #1)
3 Hanover Square
New York, New York

METROPOLITAN OFFICE, NEW YORK
Producer

Marsh & McLennan Inc.

| 3 | | 50167 | 081 | |
|---|---|---|---|---|
| Years | Control | Producer Ac. | OPC | State Loc. |

| 6-30-71 | 6-30-74 |
|---|---|
| Inception (Mo. Day Yr.) | Expiration (Mo. Day Yr.) |

**12:01 AM** Standard Time at the address of the Named Insured as stated herein

ITEM 2. PRIMARY OR UNDERLYING INSURANCE — DESCRIPTION OF COVERAGE

$5,000,000.00 each occurrence and in the aggregate where applicable
Umbrella Liability as provided by American Employers Insurance
Company Policy Number (To Be Advised) excess of Underlying Policies
as per schedule on file with the company.

ITEM 3. EXCESS COVERAGE AFFORDED BY THIS POLICY

$5,000,000.00 each occurrence and in the aggregate where applicable
Umbrella Liability following the terms and conditions of the under-
lying policies described in Item 2 above and excess of the limits
set forth in Item 2 above.

ITEM 4. PREMIUM

$60,000.00

In Witness Whereof, the said THE HOME INSURANCE COMPANY, NEW YORK has caused these Presents to be signed by its President and attested by its Secretary, in the City of New York, and this policy is made and accepted upon the above express conditions, but shall not be valid unless countersigned by a duly Authorized Representative of the Company at place of issue.

_Hunter J. Van Len_ Secretary          _John Washburn_ President

COUNTERSIGNED BY AUTHORIZED REPRESENTATIVE

Senior Vice President          DATE 7-1-71 hg

—9725 F DR '0.69

AGENT'S OR BROKER'S COPY

GEC 024630

WRG Policies
03100

00494

## EXCESS LIABILITY POLICY

### THE HOME INSURANCE COMPANY

New York, New York

(Hereinafter called the Company)

Agrees with the Insured named in the schedule made a part hereof, in consideration of the payment of the premium and subject to all of the terms of this Policy, as follows:

As respects accidents or occurrences, whichever is applicable, taking place during the period of the Policy, the Company agrees to afford the Insured such additional insurance as the issuers of the Underlying Coverage specified in the schedule would afford the Insured by increasing the underlying limit from the limit(s) set forth under Item 2 of the Declarations to the limit(s) set forth under Items 2 and 3 of the Declarations combined provided that it is expressly agreed that liability shall attach to the Company:

(a) only after the issuers of the Underlying Coverage have paid or have been held liable to pay the full amount of the said underlying limit, and

(b) only as respects such additional amounts in excess thereof as would be payable by the issuers of the Underlying Coverage if the said underlying limit were amended as aforesaid, and

(c) in no greater amount than the limit(s) set forth under Item 3 of the Declarations ultimate net loss as respects each accident or occurrence, whichever is applicable, taking place during the period of this Policy—Subject to the limit(s) set forth under Item 3 of the Declarations ultimate net loss in the aggregate where applicable for each annual period during the currency of this Policy.

## DEFINITIONS

1. **Ultimate Net Loss.** The words "ultimate net loss" shall be understood to mean the amount payable in settlement of the liability of the Insured after making deductions for all recoveries and for other valid and collectible insurances, excepting however the policy(ies) of the Primary Insurer(s), and shall exclude all expenses and Costs.

2. **Costs.** The word "costs" shall be understood to mean interest accruing after entry of judgment, investigation, adjustment and legal expenses (excluding, however, all office expenses of the Insured, all expenses for salaried employees of the Insured and general retainer fees for counsel normally paid by the Insured).

## CONDITIONS

1. **MAINTENANCE OF UNDERLYING INSURANCE.** It is a condition of this Policy that the Underlying Coverage be maintained in full effect during the period of this Policy except for the reduction of the aggregate limits contained therein solely by payment of claims for accidents or occurrences, whichever is applicable, which take place during the period of this Policy. If the Underlying Coverage is terminated during the period of the Policy the effective date of termination of the said Underlying Coverage shall be the end of the period of this Policy.

   This Policy is subject to the same warranties, terms and conditions (except as otherwise provided herein) as are contained in or as may be added to the Underlying Coverage prior to the happening of an accident or occurrence, whichever is applicable, for which claim is made hereunder.

2. **PREMIUM.** The Insured shall pay premium to the Company as specified in the schedule.

   If the Insured terminates this Policy, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company terminates this Policy, earned premium shall be computed pro rata.

3. **NOTIFICATION OF CLAIMS.** The Insured upon knowledge of any accident or occurrence, whichever is applicable, likely to give rise to a claim hereunder shall give immediate written notice thereof to the Company.

4. **ASSISTANCE AND CO-OPERATION.** The Company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Insured but the Company shall have the right and shall be given the opportunity to associate with the Insured or the Insured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves or appears reasonably likely to involve the Company, in which event the Insured and the Company shall co-operate in all things in the defense of such claim, suit or proceeding.

5. **TERMINATION.** The Insured may terminate this Policy at any time by giving to the Company 30 days' previous notice. The Company may terminate this Policy at any time by giving to the Insured 30 days' previous notice. Any such notice shall be sent by registered mail and shall state the date upon which such termination shall become effective. The effective date of termination shall be the end of the period of this Policy.

*In Witness Whereof,* the Company has caused this Policy to be executed and attested; but this Policy shall not be valid unless countersigned on this Declaration page by a duly authorized representative of the Company.

H20493(F)  TEXT

WRG Policies
03101

GEC 024631

000214

XXX-001292

00405

NON-PREMIUM ENDORSEMENT  Endorsement No.1    -`251`

Issued by –

☒ THE HOME INSURANCE COMPANY    ☐ THE HOME INDEMNITY COMPANY

| POLICY NUMBER | NAMED INSURED |
|---|---|
| HEC 9919945 | W. R. Grace & Co., Etal |

| EFFECTIVE DATE AND TIME OF ENDORSEMENT | DATE PREPARED |
|---|---|
| 6-30-71 | 7-1-71 |

| PRODUCER | PRODUCER NO.-GPC |
|---|---|
| Marsh & McLennan Inc. | 50167-081 |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

In consideration of the premium charged, it is agreed
and understood that Insured's Name as stated in Item
#1 of the Declarations is amended to read as follows:
W. R. Grace & Co. and/or Subsidiary, Associated Affiliated
Companies owned and/or controlled and/or managed companies
as now or hereafter constituted.

WRG Policies
03102

SIGNATURE OF AUTHORIZED REPRESENTATIVE

- 23C0-PM  9/68

GEC 024632

000215

XXX-001293

# EXHIBIT K15

000216

XXX-001294

INSURANCE COMPANY OF NORTH AMERICA, PHILADELPHIA, PENNSYLVANIA

7/15 BR

Attached to and hereby made a part of
Certificate of Excess Insurance No. XCP 37 45                    **DECLARATIONS**

New York-505 Marsh & McLennan Inc. Renewing XBC 16 34 - 380094 (H)

Item 1.
Name of
Insured ——      W.R. GRACE & COMPANY

Item 2.
Address ——L     7 Hanover Square, New York, N.Y.

Item 3. Certificate Term — From: June 30, 1971
                        To:   June 30, 1974
                        12:01 A.M., standard time at the address of the insured as stated in Item 2 above.

Item 4. Primary Insurance —

| Primary Carriers | Policy Numbers | Policy Periods |
|---|---|---|
| 1) Maryland Casulty Co. | Various on file | 6/30/70-71 |
| 2) Employers Group | with company | & renewal thereof |
| 3) Home Ins. Co. | | |

Item 5. Description of Primary Insurance —

   See Endorsement #2 Attached

Item 6. Description of Excess Insurance — Comprehensive General Liability and Automobile
                        Liability
   $10,000,000. each occurrence, Bodily Injury Liability or Property Damage
   Liability or both combined, $10,000,000. aggregate where applicable
   excess of Item 5 above

Item 7. Premium —

| Estimated Policy Period Sales | Rate per $1000 Sales | Total Advance Premium |
|---|---|---|
| $6,465,510,000. | .0116 | $75,000.00 |

         Policy Period Minimum Premium $75,000.00

Item 8. attached hereto and made a part hereof:
   No. 1 — Nuclear Energy Liability Exclusion Endorsement (Form LC-1012)
   No. 2 Premium Computation Endt.   No.5 Data Processing Exclusion
   No. 3 Description of primary insurance   No. 6 LC1441
   No. 4 Architects & Engineers Errors & Omissions Endt.

GEC 024639

WRG Policies
03109

## DESCRIPTION OF PRIMARY INSURANCE ENDORSEMENT NO. 3

Comprehensive General Liability and Automobile Liability

Bodily Injury Liability Automobile
$250,000     each person
$1,000,000     each occurrence
Bodily Injury Liability
        Except Automobile
$250,000     each person
$1,000,000     each occurrence
$1,000,000     aggregate products

Property Damage Liability Automobile
$1,000,000.    each occurrence
Property Damage Liability
        Except Automobile
$1,000,000.    each occurrence
$1,000,000.    aggregate premises-
                operations
$1,000,000.    aggregate protective
$1,000,000.    aggregate products
$1,000,000.    aggregate contractual

2) Comprehensive General Liability and Automobile Liability $5,000,000. each
   occurrence Bodily Injury Liability or Property Damage Liability or both combine
   $5,000,000. aggregate where applicable, excess of Item (1) above.

3) Comprehensive General Liability and Automobile Liability $5,000,000. each
   occurrence Bodily Injury Liability or Property Damage Liability or both
   combined, $5000,000. aggregate where applicable, excess of Item (1) and
   Item (2).

Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated.

| Effective Date | | Part of Policy No. |
|---|---|---|
| JUNE 30, 1971 | at the hour specified in the policy. | XCP 37 45 |
| Issued to | | |
| W.R. GRACE, & COMPANY | | |

Authorized Agent

Not valid unless countersigned by a duly authorized agent of the
INSURANCE COMPANY OF NORTH AMERICA

C-1660

*Charles K. Cox*
President

300M 11-69 PTD. IN U.S.A.

GEC 024642

WRG Policies
03112

000218

XXX-001296

# EXHIBIT K16

**000219**

**XXX-001297**

Marsh & McLennan          10%          00421          8-2-73 X    RENEWAL OF _____

## EXCESS THIRD PARTY LIABILITY POLICY

**CNA/insurance**

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW
a stock insurance company, herein called the company.
Continental Center 310 S. Michigan Ave Chicago IL 60604

DECLARATIONS

| PRODUCER NO. | BRANCH | PREFIX | POLICY NUMBER |
|---|---|---|---|
| 035975 | 030 | RDX | 893-68-33 |

☒ CONTINENTAL CASUALTY COMPANY
☐ NATIONAL FIRE INSURANCE COMPANY of Hartford
☐ AMERICAN CASUALTY COMPANY of Reading, Pa.
☐ TRANSPORTATION INSURANCE COMPANY
☐ TRANSCONTINENTAL INSURANCE COMPANY
☐ VALLEY FORGE INSURANCE COMPANY

NAMED INSURED & ADDRESS: (Number & Street, Town, County & State)

W.R. Grace & Co., Etal. and as
Per Endorsement No. 1
1114 Avenue of the Americas
New York, New York    10036

Policy Period: (hereinafter called "this policy period")
8-9-73    To: 6-30-74    12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE INSURED AS STATED HEREIN.

### COPY OF THE EXCESS THIRD PARTY LIABILITY POLICY FORM G-40219-A

3. Schedule of Underlying Insurance: Insurer and Policy Number

1st Layer-Commercial Union      $5,000,000
2nd Layer-Home Insurance        $5,000,000

4. Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COLUMN I | | IN EXCESS OF | COLUMN II | COLUMN III | |
|---|---|---|---|---|---|
| Company Limits | | | Underlying Limits | Total Limits | Coverage |
| $ | Each Person | | $ | $ | A. Bodily Injury |
| $ | Each Occurrence | | $ | $ | Automobile |
| $ | Each Person | | $ | $ | B. Bodily Injury |
| $ | Each Occurrence | | $ | $ | Except Automobile |
| $ | Aggregate | | $ | $ | |
| $ | Each Occurrence | | $ | $ | C. Property Damage Automobile |
| $ | Each Occurrence | | $ | $ | D. Property Damage |
| $ | Aggregate | | $ | $ | Except Automobile |
| $ | Each Occurrence | | $ | $ | E. Combined Single Limit Bodily |
| $ | Aggregate | | $ | $ | Injury and Property Damage |
| $10,000,000 each occurrence | | | $10,000,000 | $20,000,000 | F. Other |
| $10,000,000 aggregate | | | $10,000,000 | $20,000,000 | |

5. Premium Computation

| Premium Basis | Estimated Exposure | Rate | Estimated Premium |
|---|---|---|---|
| Sales | To Be Determined Subject to Audit | .0116 Per $1000 Sales | Pro Rata 22,250 |

Deposit Premium: $22,250 on effective date of policy

Minimum Premium: $25,000 / Annual
$22,250 / Policy term

$_____
$_____

Audit Period  Annual

Forms numbers of Endorsement attached
at issuance include: G-40284-B

Countersigned by _____    Authorized Agent

G-40219-A

COPY          GEC 024648          WRG Policies
03118

000220

XXX-001298

00422

11334

## Named Insured

It is agreed that the Named Insured is as follows:

W.R. Grace & Co. and/or Subsidiary, Associated,
affiliated Companies owned and/or controlled
and/or managed Companies as now or hereafter
constituted.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA/INSURANCE company as indicated herein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy, and expires concurrently with said policy.

| Policy No. | |
|---|---|
| 1 | RDX 8638938 |

GEC 024649

WRG Policies
03119

000221

XXX-001299

# EXHIBIT K17

000222

XXX-001300