# ... ... Mutual Insurance Company

## Seattle, Washington 98101

**MUTUAL COMPANY**
THIS POLICY IS NON-ASSESSABLE

**DECLARATIONS**

Item 1.   Named Insured          : W. R. GRACE AND COMPANY, INC., ET AL

P. O. Address          : 114 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK

00464

Policy Number          : 1-2517

### POLICY PROVISIONS — PART A

SEE PART "B".

**ALLEN, MILLER and ASSOCIATES, INC.**

Assignment of this Policy shall not be valid except with the written consent of this Company.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such other provisions, stipulations, and agreements as may be added hereto, as provided in this Policy.

Unless otherwise provided herein, this Policy may be cancelled on the customary short rate basis by the Assured at any time by written notice or surrender of this Policy to the Company. This policy may also be cancelled, with or without the return or tender of the unearned premium, by the Company, or by the Underwriting Managers in its behalf, by delivering to the Assured or by sending to the Assured by regular mail, at the Assured's address as shown herein, not less than 10 days' written notice stating when the cancellation shall be effective, and in such case Insurers shall refund the unearned premium less the earned portion thereof on demand, subject always to the retention by Insurers hereon of any minimum premium stipulated herein, (or retention thereof previously agreed upon) in the event of cancellation either by Insurers or Assured.

Notwithstanding anything to the contrary contained herein and in consideration of the premium for which this insurance is written, it is understood and agreed that whenever an additional or return premium of $2.00 or less becomes due from or to the Assured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived and the return of such premium to the Assured will not be made, as the case may be.

In Witness Whereof, the Company has caused this Policy to be executed and attested, but this Policy shall not be void unless countersigned by a duly authorized representative of the Company.

_____
SECRETARY

_____
PRESIDENT

Signed:    JULY 22, 1974

**ALLEN, MILLER & ASSOCIATES, INC.**
Underwriting Managers

By _____
Authorized Representative

GEC 024722

WRG Policies
03188

000223

XXX-001301

09465

DECLARATIONS

POLICY NUMBER: 1-2517                    1886

ITEM 1.  NAMED INSURED:

✷        W. R. GRACE & CO. AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED
         COMPANIES OR OWNED AND CONTROLLED AND/OR MANAGED COMPANIES AS
         NOW OR HEREAFTER CONSTITUTED.

         ADDRESS:

         1114 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK

ITEM 2.  POLICY PERIOD:

         FROM JUNE 30, 1974 TO JUNE 30, 1977
         12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED
         AS STATED HEREIN

ITEM 3.  UNDERLYING INSURANCE

         (SEE ATTACHED)

ITEM 4.  UNDERLYING LIMITS:

         $100,000.00 UNITED STATES, ITS TERRITORIES, POSSESSIONS, AND
         CANADA
         $250,000.00 FOREIGN

ITEM 5.  LIMITS OF LIABILITY - ULTIMATE NET LOSS:

         $10,000,000.00 EACH OCCURRENCE
         $10,000,000.00 AGGREGATE

ITEM 6.  PREMIUM:  $590,000.

                              ALLEN, MILLER & ASSOCIATES, INC.
                              Underwriting Managers

                         BY: _____

✷ to be AMENDED

GEC 024723

WRG Policies
03189

00471

1.345

(K)  TO LIABILITY ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OPERATION,
USE, LOADING OR UNLOADING OF ANY AIRCRAFT; PROVIDED, HOWEVER, THIS
EXCLUSION SHALL NOT APPLY TO LIABILITY OF THE NAMED INSURED FOR
AIRCRAFT NOT OWNED BY SUCH INSURED.

## CONDITIONS

1.  PREMIUM.

THE PREMIUM FOR THIS POLICY SHALL BE AS STATED ON THE DECLARATIONS
PAGE.

2.  INSPECTION AND AUDIT.

THE COMPANY SHALL BE PERMITTED TO INSPECT THE INSURED'S PREMISES,
OPERATIONS, AND ELEVATORS AND TO EXAMINE AND AUDIT THE INSURED'S
BOOKS AND RECORDS AT ANY TIME DURING THE POLICY PERIOD AND ANY
EXTENSION THEREOF AND WITHIN THREE YEARS AFTER THE FINAL TERMINA-
TION OF THIS POLICY, AS FAR AS THEY RELATE TO THE PREMIUM BASIS
OR THE SUBJECT MATTER OF THIS INSURANCE.

3.  SPECIAL CONDITIONS APPLICABLE TO OCCUPATIONAL DISEASE.

AS REGARDS PERSONAL INJURY (FATAL OR NON-FATAL) BY OCCUPATIONAL
DISEASE SUSTAINED BY ANY EMPLOYEE OF THE INSURED, THIS POLICY IS
SUBJECT TO THE SAME WARRANTIES, TERMS OR CONDITIONS (EXCEPT AS
REGARDS THE PREMIUM, THE AMOUNT AND LIMITS OF LIABILITY, ANY
CONDITION RESPECTING "OTHER INSURANCE" AND THE RENEWAL AGREEMENT,
IF ANY) AS ARE CONTAINED IN OR AS MAY BE ADDED TO THE POLICIES OF
UNDERLYING INSURANCES SET FORTH IN THE DECLARATIONS PRIOR TO THE
HAPPENING OF AN OCCURRENCE FOR WHICH CLAIM IS MADE HEREUNDER.

4.  LIMITS OF LIABILITY.

THE COMPANY SHALL ONLY BE LIABLE FOR ULTIMATE NET LOSS IN EXCESS
OF EITHER:

(A) EXCEPT AS PROVIDED IN SUB-PARAGRAPH (B) HEREOF, THE APPLI-
CABLE LIMITS OF LIABILITY OF THE POLICIES OF UNDERLYING INSURANCE
SET FORTH IN ITEM 3 OF THE DECLARATIONS; OR

(B) AS RESPECTS EACH OCCURRENCE NOT COVERED BY SUCH UNDERLYING
INSURANCE, OR WHERE EACH OCCURRENCE IS COVERED BY SUCH UNDER-
LYING INSURANCE BUT IN RECOVERABLE AMOUNTS LESS THAN THE
UNDERLYING LIMITS SET FORTH IN ITEM 4 OF THE DECLARATIONS,
THE AMOUNT OF ULTIMATE NET LOSS SET FORTH IN THE DECLARATIONS
AS "UNDERLYING LIMITS",

BUT IN NO EVENT SHALL THE COMPANY BE LIABLE FOR AN AMOUNT IN
EXCESS OF THE APPLICABLE LIMIT OF LIABILITY SET FORTH IN ITEM 5
OF THE DECLARATIONS.

THE LIMIT OF LIABILITY STATED IN ITEM 5 OF THE DECLARATIONS AS
APPLICABLE TO "EACH OCCURRENCE" IS THE TOTAL LIMIT OF THE COMPANY'S
LIABILITY UNDER THIS POLICY FOR ULTIMATE NET LOSS AS A RESULT OF
ANY ONE OCCURRENCE.  SUBJECT TO THE LIMIT OF LIABILITY SET FORTH
IN ITEM 5 OF THE DECLARATIONS WITH RESPECT TO "EACH OCCURRENCE",
THE LIMIT OF LIABILITY SO SET FORTH AS "AGGREGATE" SHALL BE THE
TOTAL LIMIT OF THE COMPANY'S LIABILITY UNDER THIS POLICY FOR UL-
TIMATE NET LOSS:

(1) BECAUSE OF ALL PERSONAL INJURY AND PROPERTY DAMAGE DURING
EACH CONSECUTIVE TWELVE MONTHS OF THE POLICY PERIOD, ARISING
OUT OF THE PRODUCTS-COMPLETED OPERATIONS HAZARDS, AND

000225

XXX-001303

09472

11346

(2) BECAUSE OF ALL PERSONAL INJURY DURING EACH CONSECUTIVE TWELVE MONTHS OF THE POLICY PERIOD SUSTAINED FROM OCCUPATIONAL DISEASE BY ANY EMPLOYEE OF THE INSURED.

IN THE EVENT OF REDUCTION OR EXHAUSTION OF THE AGGREGATE LIMITS OF LIABILITY UNDER THE POLICIES OF UNDERLYING INSURANCE BY REASON OF LOSSES PAID THEREUNDER, THIS POLICY SHALL:

(1) IN THE EVENT OF REDUCTION, PAY THE EXCESS OF THE REDUCED UNDERLYING INSURANCE, AND

(2) IN THE EVENT OF EXHAUSTION, CONTINUE IN FORCE AS UNDERLYING INSURANCE.

BUT NOTHING IN THIS PARAGRAPH SHALL OPERATE TO INCREASE THE LIMITS OF THE COMPANY'S LIABILITY.

IN THE EVENT OF REDUCTION OR EXHAUSTION OF THE AGGREGATE LIMIT OR LIMITS DESIGNATED IN THE UNDERLYING POLICY OR POLICIES SOLELY BY PAYMENT OF LOSSES IN RESPECT TO ACCIDENTS OR OCCURRENCES DURING THE PERIOD OF SUCH UNDERLYING POLICY OR POLICIES, IT IS HEREBY UNDERSTOOD AND AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THIS POLICY SHALL APPLY IN EXCESS OF THE REDUCED UNDERLYING LIMIT OR, IF SUCH LIMIT IS EXHAUSTED, SHALL APPLY AS UNDERLYING INSURANCE, NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE TERMS AND CONDITIONS OF THIS POLICY.

5.    SEVERABILITY OF INTERESTS.

THE TERM "THE INSURED" IS USED SEVERALLY AND NOT COLLECTIVELY, BUT THE INCLUSION HEREIN OF MORE THAN ONE INSURED SHALL NOT OPERATE TO INCREASE THE LIMITS OF THE COMPANY'S LIABILITY.  IF MORE THAN ONE INSURED IS NAMED IN ITEM 1 OF THE DECLARATIONS, IT IS AGREED THAT THE LIMITS OF THE COMPANY'S LIABILITY SHALL NOT APPLY SEPARATELY TO EACH SUCH INSURED.

6.    NOTICE OF OCCURRENCE.

WHEN AN OCCURRENCE TAKES PLACE WHICH, IN THE OPINION OF THE INSURED, INVOLVES OR MAY INVOLVE LIABILITY ON THE PART OF THE COMPANY, PROMPT WRITTEN NOTICE SHALL BE GIVEN BY OR ON BEHALF OF THE INSURED TO THE COMPANY OR ANY OF ITS AUTHORIZED REPRESENTATIVES. SUCH NOTICE SHALL CONTAIN PARTICULARS SUFFICIENT TO IDENTIFY THE INSURED AND ALSO REASONABLY OBTAINABLE INFORMATION RESPECTING THE TIME, PLACE AND CIRCUMSTANCES OF THE OCCURRENCE.  FAILURE TO SO NOTIFY THE COMPANY OF ANY OCCURRENCE WHICH AT THE TIME OF ITS HAPPENING DID NOT APPEAR TO INVOLVE THIS POLICY BUT WHICH, AT A LATER DATE, WOULD APPEAR TO GIVE RISE TO A CLAIM HEREUNDER SHALL NOT PREJUDICE SUCH CLAIM PROVIDED SUCH NOTICE IS THEN GIVEN. IT SHALL BE AGREED THAT AWARENESS OF CLAIM BY THE CORPORATE RISK MANAGEMENT DEPARTMENT OF THE INSURED SHALL BE THE SAME AS NOTICE GIVEN THE COMPANY.

7.    ASSISTANCE AND COOPERATION OF THE INSURED.

THE COMPANY SHALL NOT BE CALLED UPON TO ASSUME CHARGE OF THE SETTLEMENT OR DEFENSE OF ANY CLAIM MADE, SUIT BROUGHT OR PROCEEDING INSTITUTED AGAINST THE INSURED BUT THE COMPANY SHALL HAVE THE RIGHT AND SHALL BE GIVEN THE OPPORTUNITY TO ASSOCIATE WITH THE INSURED OR THE INSURED'S UNDERLYING INSURERS, OR BOTH, IN THE DEFENSE AND CONTROL OF ANY CLAIM, SUIT OR PROCEEDING RELATIVE TO AN OCCURRENCE WHERE THE CLAIM OR SUIT INVOLVES OR APPEARS REASONABLY LIKELY TO INVOLVE THE COMPANY IN WHICH EVENT THE INSURED AND THE COMPANY SHALL COOPERATE IN ALL THINGS IN THE DEFENSE OF SUCH CLAIM, SUIT OR PROCEEDING.

000226

XXX-001304

# EXHIBIT K18

000227

XXX-001305

VOL. VI   TAB 2

00478

# EXCESS THIRD PARTY LIABILITY POLICY

CNA CONTINENTAL NATIONAL AMERICAN GROUP

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW:
(A stock insurance company, herein called the company)
Continental Center/310 S. Michigan Ave./Chicago, Ill. 60604

- [X] CONTINENTAL CASUALTY COMPANY
- [ ] NATIONAL FIRE INSURANCE COMPANY of Hartford
- [ ] AMERICAN CASUALTY COMPANY of Reading, Pa.
- [ ] TRANSPORTATION INSURANCE COMPANY
- [ ] TRANSCONTINENTAL INSURANCE COMPANY
- [ ] VALLEY FORGE INSURANCE COMPANY

## DECLARATIONS

| AGENCY NO. | | POLICY NUMBER |
|---|---|---|
| 035975 | RDX 033 | 915 66 45 |

NAMED INSURED & ADDRESS: (Number & Street, Town, County & State)

W.R. Grace & Co., and as
Per Endorsement No. 1
1114 Avenue of the Americas
New York, New York 10036

2. Policy Period: (hereinafter called "this policy period")   12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE INSURED AS STATED HEREIN.
   6/30/74   To: 6/30/77

3. Schedule of Underlying Insurance: Insurer and Policy Number

**Unigard Mutual Ins. Co.   $10,000,000**

4. Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COLUMN I | IN EXCESS OF COLUMN II | COLUMN III | |
|---|---|---|---|
| Company Limits | Underlying Limits | Total Limits | Coverage |
| $    Each Person | $ | $ | A. Bodily Injury |
| $    Each Occurrence | $ | $ | Automobile |
| $    Each Person | $ | $ | B. Bodily Injury |
| $    Each Occurrence | $ | $ | Except Automobile |
| $    Aggregate | $ | $ | |
| $    Each Occurrence | $ | $ | C. Property Damage Automobile |
| $    Aggregate | $ | $ | D. Property Damage |
| $    Each Occurrence | $ | $ | Except Automobile |
| $    Aggregate | $ | $ | E. Combined Single Limit Bodily Injury and Property Damage |
| $10,000,000 each occurrence | $10,000,000 | $20,000,000 | F. Other |
| $10,000,000 aggregate | $10,000,000 | $20,000,000 | |

5. Premium Computation

| Premium Basis | Estimated Exposure | Rate | Estimated Premium |
|---|---|---|---|
| Flat Charge | - | - | 90,000. |

Deposit Premium: $ 90,000   on effective date of policy    Minimum Premium: $ ___ Annual
                                                                        $ ___ Policy term

Audit Period   None

Forms numbers of Endorsement attached at Issuance include:   G-40284-E

Countersigned by _____
Licensed Resident Agent

G-40219-A

GEC 024736

WRG Policies
03202

000228

XXX-001306

00479

The company agrees with the named insured, in consideration of the payment of the premium and subject to the provisions of this policy:

# PART I — INSURING AGREEMENTS

**1. Excess Liability Indemnity**

To indemnify the insured for the amount of loss which is in excess of the applicable limits of liability of the underlying insurance inserted in column II of item 3 in the declarations; provided that this policy shall apply only to those coverages for which a limit of liability is inserted in column II; provided further that the limit of the company's liability under this policy shall not exceed the applicable amount inserted in column I.

The provisions of the immediate underlying policy are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, the amount of the limits of liability, any "other insurance" provision and any other provisions therein which are inconsistent with the provisions of this policy.

If the applicable coverage in the immediate underlying policy insures accidents rather than occurrences, then "accident" is substituted for "occurrence" in the applicable coverage of this policy.

**2. Policy Period: Termination of Underlying Insurance**

This policy applies to injury or destruction taking place during this policy period, provided that when the immediate underlying policy insures occurrences taking place during its policy period, instead of injury or destruction taking place during its policy period, then this policy likewise applies to occurrences taking place during this policy period and "occurrences" is substituted for "injury or destruction" in Part III of this policy.

If the immediate underlying policy is cancelled, this policy likewise is cancelled effective on the same date at the same time and without notice to the insureds. If the immediate underlying policy otherwise ceases to apply for reasons other than the exhaustion of an aggregate limit of liability, this policy likewise ceases to apply to this same extent on the same date at the same time and without notice to the insureds.

# PART II — DEFINITIONS

**1. Immediate Underlying Policy**

"Immediate underlying policy" means the policy of the underlying insurance which provides the layer of coverage, whether primary or excess, immediately preceding the layer of coverage provided by this policy.

**2. Loss**

"Loss" means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable, after making deductions for all recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy. "Loss" does not include investigation, adjustment, defense or appeal costs and expenses nor costs and expenses incident to any of the same, notwithstanding that the underlying insurance may provide insurance for such costs and expenses.

**3. Underlying Insurance**

"Underlying insurance" means the insurance policies listed in item 3 in the declarations and includes any renewal or replacement of such policies.

# PART III
## PROVISIONS GOVERNING THE APPLICATION OF THE AGGREGATE LIMITS OF LIABILITY

**1. Reduction of the Aggregate**

This provision applies only if this policy contains an aggregate limit of liability which applies to the occurrence.

If the "each occurrence" or "each person" limit of liability of the underlying insurance is less than as stated in column II in item 4 in the declarations because the aggregate limits of liability of the underlying insurance have been reduced, this policy becomes excess of such reduced limit of liability if such reduction is solely the result of injury or destruction occurring after the inception date of this policy and not before. Nothing contained herein shall operate to increase the limit of the company's liability.

**2. Application of the Aggregate to Separate Projects**

To the extent that the aggregate limits of liability of the underlying insurance apply separately to various operations, projects, locations, hazards or types of injury, the aggregate limits of liability of this policy likewise apply separately to such operations, projects, locations, hazards or types of injury.

**3. Application of the Aggregate to Periods of Time**

The aggregate limits of liability of this policy apply separately to each aggregate period. The first aggregate period of this policy begins on the effective date of this policy and ends on the next termination date of the aggregate period of the immediate underlying policy. Any succeeding aggregate period of this policy is concurrent with the aggregate period of the immediate underlying policy unless it is the final aggregate period. The final aggregate period of this policy begins on the termination date of the aggregate period of the immediate underlying policy immediately preceding the expiration date of this policy and ends on the expiration date of this policy.

This paragraph does not apply if the expiration date of this policy and the expiration date or anniversary date of the immediate underlying policy are identical. If this policy is a renewal of a similar policy underwritten by this company, the applicable aggregate limit of liability of this policy for the first period shall be reduced by any amounts paid or payable on account of injury or destruction taking place during the final aggregate period of the policy renewed. The final aggregate period of the policy renewed shall be determined in the same manner as the final aggregate period for this policy.

# PART IV — NUCLEAR ENERGY LIABILITY EXCLUSION

The following exclusion applies in addition to those in the immediate underlying policy.

Except with respect to automobiles registered in the State of New York, this policy does not apply:

**A.** to bodily injury or property damage

(1) with respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) the bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

As used in this exclusion:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material", "special nuclear material" and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operations by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

GEC 024737

WRG Policies
03203

000229

XXX-001307

00430.351

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

## PART V — CONDITIONS

**1. Underlying Insurance — Changes During this Policy Period**

Any change in coverage in the underlying insurance shall be promptly reported to the company and the insured shall, upon request, furnish the company with copies of such changes.

Any change in the premium for the underlying insurance shall be promptly reported to the company and the premium for this policy, subject to the minimum premium, may be adjusted in accordance with the manuals of the company then in effect.

**2. Notice of Loss; Participation in Defense by the Company**

Notice of an occurrence which appears likely to involve this policy shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. The company at its own option may, but is not required to, participate in the investigation, settlement or defense of any claim or suit against the insured.

**3. Action Against Company**

No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy.

Any person or organization or the legal representative thereof who has secured a judgment against the insured shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability. Any payments by the company under this condition 3 shall discharge the company's obligation to the insured to the extent of such payments.

Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

**4. Subrogation and Other Recoveries**

In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after the occurrence to prejudice such rights.

Because this policy affords excess coverage, the insured's right of recovery cannot always be exclusively subrogated to the company. It is, therefore, agreed that the company shall act in concert with all other interests concerned, including the insured, in the enforcement of any subrogation rights or in the recovery of amounts by any other means. The apportioning of any amounts so recovered shall follow in the principle that any interest, including the insured, that shall have paid an amount over and above any payment under this policy shall first be reimbursed up to the amount paid by such interest; the company shall then be reimbursed out of any balance then remaining up to the amounts paid as the result of loss covered under this

policy; and lastly, the insured, the interests, including the insured, of whom this coverage is in excess are entitled to claim any residue remaining. Expenses and costs necessary to the recovery of any such amounts shall be apportioned between the interests concerned, including the insured, in the ratio of their respective recoveries or, in the event of a totally unsuccessful attempt to recover, in the ratio of the respective amounts sought to be recovered.

**5. Other Insurance**

This condition does not apply with respect to the underlying insurance or excess insurance purchased specifically to be in excess of this policy.

If, with respect to a loss covered hereunder, the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder as respects such loss; provided, that if the applicable limit of liability of this policy is greater than the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured, as respects the layer of coverage afforded by this policy, a total limit of liability equal to the applicable limit of liability afforded by this policy.

**6. Cancellation**

This policy may be cancelled by the named insured by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in the declarations written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premium or minimum premium, whichever is greater, shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium or minimum premium, whichever is greater, shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**7. First Named Insured**

The insured first named in item 1 in the declarations is authorized to act on behalf of all named insureds and other insureds with respect to the giving and receiving of notice of cancellation and to receiving any return premium that may become payable under this policy. The insured first named in item 1 in the declarations is responsible for the payment of all premiums but the other named insureds jointly and severally agree to make such premium payments in full if the insured first named in item 1 fails to pay the amount due within thirty days after the company gives a written demand for payment to the insured first named in item 1.

In witness whereof, the company has caused this policy to be signed by its president and a secretary at Chicago, Illinois, but the policy shall not become valid until countersigned on the declarations page by a duly authorized representative of the company.

Continental Casualty Company
Transportation Insurance Company

National Fire Insurance Company of Hartford
Transcontinental Insurance Company

American Casualty Company of Reading, Pa.
Valley Forge Insurance Company

WRG Policies
03204

000230

XXX-001308

00483

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

☐

☐

☐

☐

## Named Insured

It is agreed that the Named Insured is as follows:

W.R. Grace & Co. and/or Subsidiary organizations, associated affiliated companies, owned, controlled and/or managed companies as now or hereinafter constituted.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| END* NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
|---|---|---|---|
| 1 | RDX 9156645 | W.R. Grace & Co. Etal | 6/30/74 |
|  |  | 7/12/74 crz |  |

CNA insurance

Blank Endorsement
3-2193-19          GEC 024741

Countersigned by _____

Authorized Agent

PRODUCER COPY

WRG Policies
03207

VOL. *VII* TAB 10

09478

## EXCESS THIRD PARTY LIABILITY POLICY

**CNA** CONTINENTAL NATIONAL AMERICAN GROUP

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW:
(A stock insurance company, herein called the company)
Continental Center/310 S. Michigan Ave./Chicago, Ill. 60604

☒ CONTINENTAL CASUALTY COMPANY
☐ NATIONAL FIRE INSURANCE COMPANY *of Hartford*
☐ AMERICAN CASUALTY COMPANY *of Reading Pa.*
☐ TRANSPORTATION INSURANCE COMPANY
☐ TRANSCONTINENTAL INSURANCE COMPANY
☐ VALLEY FORGE INSURANCE COMPANY

### DECLARATIONS

| AGENCY NO. | POLICY NUMBER |
|---|---|
| 035975 | RDX 033 915 66 45 |

NAMED INSURED & ADDRESS: (Number & Street, Town, County & State)

W.R. Grace & Co., and as
Per Endorsement No. 1
1114 Avenue of the Americas
New York, New York 10036

2. Policy Period: (hereinafter called "this policy period")    12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE INSURED AS STATED HEREIN.
   6/30/74    To: 6/30/77

3. Schedule of Underlying Insurance: Insurer and Policy Number

   **Unigard Mutual Ins. Co.   $10,000,000**

4. Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COLUMN I | | IN EXCESS OF | COLUMN II | COLUMN III | | |
|---|---|---|---|---|---|---|
| | Company Limits | | Underlying Limits | Total Limits | | Coverage |
| $ | Each Person | $ | | $ | | A. Bodily Injury |
| $ | Each Occurrence | $ | | $ | | Automobile |
| $ | Each Person | $ | | $ | | B. Bodily Injury |
| $ | Each Occurrence | $ | | $ | | Except Automobile |
| $ | Aggregate | $ | | $ | | |
| $ | Each Occurrence | $ | | $ | | C. Property Damage Automobile |
| $ | Each Occurrence | $ | | $ | | D. Property Damage |
| $ | Aggregate | $ | | $ | | Except Automobile |
| $ | Each Occurrence | $ | | $ | | E. Combined Single Limit Bodily |
| $ | Aggregate | $ | | $ | | Injury and Property Damage |
| $10,000,000 | each occurrence | $10,000,000 | | $20,000,000 | | F. Other |
| $10,000,000 | aggregate | $10,000,000 | | $20,000,000 | | |

5. Premium Computation

| Premium Basis | Estimated Exposure | Rate | Estimated Premium |
|---|---|---|---|
| Flat Charge | - | - | 90,000. |

Deposit Premium:    $ 90,000    on effective date of policy
$ _____
$ _____

Minimum Premium: $ ___ - ___ Annual
$ ___ - ___ Policy Term

Audit Period   None

Forms numbers of Endorsement
attached at Issuance include:   G-40284-E

Countersigned by _C. A. Anderson_
Licensed Resident Agent

G-40219-A

GEC 025072

WRG Policies
03530

00479

The company agrees with the named insured, in consideration of the payment of the premium and subject to the provisions of this policy:

## PART I — INSURING AGREEMENTS

**1. Excess Liability Indemnity**

To indemnify the insured for the amount of loss which is in excess of the applicable limits of liability of the underlying insurance inserted in column 4 of item 4 in the declarations; provided that this policy shall apply only to those coverages for which a limit of liability is inserted in column L; provided further that the limit of the company's liability under this policy shall not exceed the applicable amount inserted in column L.

The provisions of the immediate underlying policy are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, the amount of the limits of liability, any "other insurance" provision and any other provisions therein which are inconsistent with the provisions of this policy.

If the applicable coverage in the immediate underlying policy insures accidents rather than occurrences, then "accident" is substituted for "occurrence" in the applicable coverage of this policy.

**2. Policy Period; Termination of Underlying Insurance**

This policy applies to injury or destruction taking place during this policy period, provided that when the immediate underlying policy insures occurrences taking place during its policy period, instead of injury or destruction taking place during its policy period, then this policy likewise applies to occurrences taking place during this policy period and "occurrence" is substituted for "injury or destruction" in Part III of this policy.

If the immediate underlying policy is cancelled, this policy likewise is cancelled effective on the same date at the same time and without notice to the insureds. If the immediate underlying policy otherwise ceases to apply for reasons other than the exhaustion of an aggregate limit of liability, this policy likewise ceases to apply to this same extent on the same date at the same time and without notice to the insureds.

## PART II — DEFINITIONS

**1. Immediate Underlying Policy**

"Immediate underlying policy" means the policy of the underlying insurance which provides the layer of coverage, whether primary or excess, immediately preceding the layer of coverage provided by this policy.

**2. Loss**

"Loss" means the sums paid, as damages, in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable, after making deductions for all recoveries, salvages, and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy. "Loss" does not include investigation, adjustment, defense or appeal costs and expenses nor costs and expenses incident to any of the same, notwithstanding that the underlying insurance may provide insurance for such costs and expenses.

**3. Underlying Insurance**

"Underlying insurance" means the insurance policies listed in item 3 in the declarations and includes any renewal or replacement of such policies.

## PART III

## PROVISIONS GOVERNING THE APPLICATION OF THE AGGREGATE LIMITS OF LIABILITY

**1. Reduction of the Aggregate**

This provision applies only if this policy contains an aggregate limit of liability which applies to the occurrence.

If the "each occurrence" or "each person" limit of liability of the underlying insurance is less than as stated in column II in item 4 in the declarations because the aggregate limits of liability of the underlying insurance have been reduced, this policy becomes excess of such reduced limit of liability if such reduction is solely the result of injury or destruction occurring after the inception date of this policy and not before. Nothing contained herein shall operate to increase the limit of the company's liability.

**2. Application of the Aggregate to Separate Projects**

To the extent that the aggregate limits of liability of the immediate underlying policy apply separately to various operations, projects, locations, hazards or types of injury, the aggregate limits of liability of this policy likewise apply separately to such operations, projects, locations, hazards or types of injury.

**3. Application of the Aggregate to Periods of Time**

The aggregate limits of liability of this policy apply separately to each aggregate period. The first aggregate period of this policy begins on the effective date of this policy and ends on the next termination date of the aggregate period of the immediate underlying policy. Any succeeding aggregate period of this policy is concurrent with the aggregate period of the immediate underlying policy unless it is the final aggregate period. The final aggregate period of this policy begins on the termination date of the aggregate period of the immediate underlying policy immediately preceding the expiration date of this policy and ends on the expiration date of this policy.

This paragraph does not apply if the expiration date of this policy and the expiration date or anniversary date of the immediate underlying policy are identical. If this policy is a renewal of a similar policy underwritten by this company, the applicable aggregate limit of liability of this policy for the first period shall be reduced by any amounts paid or payable on account of injury or destruction taking place during the final aggregate period of the policy renewed. The final aggregate period of the policy renewed shall be determined in the same manner as the final aggregate period for this policy.

## PART IV — NUCLEAR ENERGY LIABILITY EXCLUSION

The following exclusion applies in addition to those in the immediate underlying policy.

Except with respect to automobiles registered in the State of New York, this policy does not apply.

A. to bodily injury or property damage

(1) with respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) the bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

As used in this exclusion:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

GEC 025073

WRG Policies
03531

000233

XXX-001311

09430.351

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste, or

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

## PART V — CONDITIONS

**1. Underlying Insurance — Changes During this Policy Period**

Any change in coverage in the underlying insurance shall be promptly reported to the company and the insured shall, upon request, furnish the company with copies of such changes.

Any change in the premiums for the underlying insurance shall be promptly reported to the company and the premium for this policy, subject to the minimum premium, may be adjusted in accordance with the manuals of the company then in effect.

**2. Notice of Loss; Participation in Defense by the Company**

Notice of an occurrence which appears likely to involve this policy shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. The company at its own option may, but is not required to, participate in the investigation, settlement or defense of any claim or suit against the insured.

**3. Action Against Company**

No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy.

Any person or organization or the legal representative thereof who has secured a judgment against the insured shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability. Any payments by the company under this condition 3 shall discharge the company's obligation to the insured to the extent of such payments.

Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

**4. Subrogation and Other Recoveries**

In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after the occurrence to prejudice such rights.

Because this policy affords excess coverage, the insured's right of recovery cannot always be exclusively subrogated to the company. It is, therefore, agreed that the company shall act in concert with all other interests concerned, including the insured, in the enforcement of any subrogation rights or in the recovery of amounts by any other means. The apportioning of any amounts so recovered shall follow in the principle that any interest, including the insured, that shall have paid an amount over and above any payment under this policy shall first be reimbursed up to the amount paid by such interest; the company shall then be reimbursed out of any balance then remaining up to the amounts paid as the result of loss covered under this policy and lastly, the interests, including the insured, of whom this coverage is in excess are entitled to claim any residue remaining. Expenses and costs necessary to the recovery of any such amounts shall be apportioned between the interests concerned, including the insured, in the ratio of their respective recoveries or, in the event of a totally unsuccessful attempt to recover, in the ratio of the respective amounts sought to be recovered.

**5. Other Insurance**

This condition does not apply with respect to the underlying insurance or excess insurance purchased specifically to be in excess of this policy.

If, with respect to a loss covered hereunder, the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder as respects such loss; provided, that if the applicable limit of liability of this policy is greater than the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured, as respects the layer of coverage afforded by this policy, a total limit of liability equal to the applicable limit of liability afforded by this policy.

**6. Cancellation**

This policy may be cancelled by the named insured by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in the declarations written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premium or minimum premium, whichever is greater, shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium or minimum premium, whichever is greater, shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**7. First Named Insured**

The insured first named in item 1 in the declarations is authorized to act on behalf of all named insureds and other insureds with respect to the giving and receiving of notice of cancellation and to receiving any return premium that may become payable under this policy. The insured first named in item 1 in the declarations is responsible for the payment of all premiums but the other named insureds jointly and severally agree to make such premium payments in full if the insured first named in item 1 fails to pay the amount due within thirty days after the company gives a written demand for payment to the insured first named in item 1.

In witness whereof, the company has caused this policy to be signed by its president and a secretary at Chicago, Illinois, but the policy shall not become valid until countersigned on the declarations page by a duly authorized representative of the company.

Continental Casualty Company
Transportation Insurance Company

National Fire Insurance Company of Hartford
Transcontinental Insurance Company

American Casualty Company of Reading, Pa.
Valley Forge Insurance Company

WRG Policies
03532

000234

XXX-001312

VOL *VIII* TAB *5*

00178

**EXCESS THIRD PARTY
LIABILITY POLICY**

CONTINENTAL NATIONAL AMERICAN GROUP

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW:
(A stock insurance company, herein called the company)
Continental Center/310 S. Michigan Ave.,Chicago, Ill. 60604

| | DECLARATIONS | |
|---|---|---|
| AGENCY NO. | | POLICY NUMBER |
| 035975 | RDX 033 | 915 66 45 |

☒ CONTINENTAL CASUALTY COMPANY
☐ NATIONAL FIRE INSURANCE COMPANY of Hartford
☐ AMERICAN CASUALTY COMPANY of Reading, Pa.
☐ TRANSPORTATION INSURANCE COMPANY
☐ TRANSCONTINENTAL INSURANCE COMPANY
☐ VALLEY FORGE INSURANCE COMPANY

NAMED INSURED & ADDRESS: (Number & Street, Town, County & State)

W.R. Grace & Co., and as
Per Endorsement No. 1
1114 Avenue of the Americas
New York, New York 10036

2. Policy Period: (hereinafter called "this policy period")   12:01 A.M., STANDARD TIME
AT THE ADDRESS OF THE INSURED AS STATED HEREIN.
   6/30/74   To: 6/30/77

3. Schedule of Underlying Insurance: Insurer and Policy Number

Unigard Mutual Ins. Co.   $10,000,000

4. Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COLUMN I | | IN EXCESS OF | COLUMN II | COLUMN III | |
|---|---|---|---|---|---|
| | Company Limits | | Underlying Limits | Total Limits | Coverage |
| $ | Each Person | | $ | $ | A. Bodily Injury Automobile |
| $ | Each Occurrence | | $ | $ | |
| $ | Each Person | | $ | $ | B. Bodily Injury Except Automobile |
| $ | Each Occurrence | | $ | $ | |
| $ | Aggregate | | $ | $ | |
| $ | Each Occurrence | | $ | $ | C. Property Damage Automobile |
| $ | Each Occurrence | | $ | $ | D. Property Damage Except Automobile |
| $ | Aggregate | | $ | $ | |
| $ | Each Occurrence | | $ | $ | E. Combined Single Limit Bodily Injury and Property Damage |
| $ | Aggregate | | $ | $ | |
| $10,000,000 | each occurrence | | $10,000,000 | $20,000,000 | F. Other |
| $10,000,000 | aggregate | | $10,000,000 | $20,000,000 | |

5. Premium Computation

| Premium Basis | Estimated Exposure | Rate | Estimated Premium |
|---|---|---|---|
| Flat Charge | — | — | 90,000. |

Deposit Premium: $ 90,000 on effective date of policy     Minimum Premium: $ ____ Annual
$ ____
$ ____     $ ____ Policy term

Audit Period  None

Forms numbers of Endorsement
attached at Issuance include:  G-40284-E

Countersigned by _____
Licensed Resident Agent

G-40219-A

GEC 025408

00479

The company agrees with the named insured, in consideration of the payment of the premium and subject to the provisions of this policy:

# PART I — INSURING AGREEMENTS

**1. Excess Liability Indemnity**

To indemnify the insured for the amount of loss which is in excess of the applicable limits of liability of the underlying insurance inserted in column II of item 4 in the declarations; provided that this policy shall apply only to those coverages for which a limit of liability is inserted in column I; provided further that the limit of the company's liability under this policy shall not exceed the applicable amount inserted in column I.

The provisions of the immediate underlying policy are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, the amount of the limits of liability, any "other insurance" provision and any other provisions therein which are inconsistent with the provisions of this policy.

If the applicable coverage in the immediate underlying policy insures accidents rather than occurrences, then "accident" is substituted for "occurrence" in the applicable coverage of this policy.

**2. Policy Period; Termination of Underlying Insurance**

This policy applies to injury or destruction taking place during this policy period, provided that when the immediate underlying policy insures occurrence taking place during this policy period, instead of injury or destruction taking place during this policy period, then this policy likewise applies to occurrences taking place during this policy period and "occurrences" is substituted for "injury or destruction" in Part III of this policy.

If the immediate underlying policy is cancelled, this policy likewise is cancelled effective on the same date at the same time and without notice to its insureds. If the immediate underlying policy otherwise ceases to apply its reasons other than the exhaustion of an aggregate limit of liability, this policy likewise ceases to apply to this same extent on the same date at the same time and without notice to the insureds.

# PART II — DEFINITIONS

**1. Immediate Underlying Policy**

"Immediate underlying policy" means the policy of the underlying insurance which provides the layer of coverage, whether primary or excess, immediately preceding the layer of coverage provided by this policy.

**2. Loss**

"Loss" means the sums paid, as damages, in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable, after making deductions for all recoveries, salvages, and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy. "Loss" does not include investigation, adjustment, defense or appeal costs and expenses costs and expenses incident to any of the same, notwithstanding that the underlying insurance may provide insurance for such costs and expenses.

**3. Underlying Insurance**

"Underlying insurance" means the insurance policies listed in item 3 in the declarations and includes any renewal or replacement of such policies.

# PART III

## PROVISIONS GOVERNING THE APPLICATION OF THE AGGREGATE LIMITS OF LIABILITY

**1. Reduction of the Aggregate**

This provision applies only if this policy contains an aggregate limit of liability which applies to the occurrence.

If the "each occurrence" or "each person" limit of liability of the underlying insurance is less than as stated in column II in item 4 in the declarations because the aggregate limits of liability in item 4 in the declarations have been reduced, this policy becomes excess of such reduced limit of liability if such reduction is solely the result of injury or destruction occurring after the inception date of this policy and not before. Nothing contained herein shall operate to increase the limit of the company's liability.

**2. Application of the Aggregate to Separate Projects**

To the extent that the aggregate limits of liability of the immediate underlying policy apply separately to various operations, projects, locations, hazards or types of injury, the aggregate limits of liability of this policy likewise apply separately to such operations, projects, locations, hazards or types of injury.

**3. Application of the Aggregate to Periods of Time**

The aggregate limits of liability of this policy apply separately to each aggregate period. The first aggregate period of this policy begins on the effective date of this policy and ends on the next termination date of the aggregate period of the immediate underlying policy. Any succeeding aggregate period of this policy is concurrent with the aggregate period of the underlying policy unless it is the final aggregate period of the immediate underlying policy. The final aggregate period of this policy begins on the termination date of the aggregate period of the immediate underlying policy immediately preceding the expiration date of this policy and ends on the expiration date of this policy.

This paragraph does not apply if the expiration date of this policy and the expiration date or anniversary date of the immediate underlying policy are identical. If this policy is a renewal of a similar policy underwritten by this company, the applicable aggregate limit of liability of this policy for the first period shall be reduced by any amounts paid or payable on account of injury or destruction taking place during the final aggregate period of the policy renewed. The final aggregate period of the policy renewed shall be determined in the same manner as the final aggregate period for this policy.

# PART IV — NUCLEAR ENERGY LIABILITY EXCLUSION

The following exclusion applies in addition to those in the immediate underlying policy.

Except with respect to automobiles registered in the State of New York, this policy does not apply:

A. to bodily injury or property damage

(1) with respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time

possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) the bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

As used in this exclusion:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under subparagraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

GEC 025409

00430.351

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

## PART V — CONDITIONS

**1. Underlying Insurance — Changes During this Policy Period**

Any change in coverage in the underlying insurance shall be promptly reported to the company and the insured shall, upon request, furnish the company with copies of such changes.

Any change in the premium for the underlying insurance shall be promptly reported to the company and the premium for this policy, subject to the minimum premium, may be adjusted in accordance with the manuals of the company then in effect.

**2. Notice of Loss, Participation in Defense by the Company**

Notice of an occurrence which appears likely to involve this policy shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. The company at its own option may, but is not required to, participate in the investigation, settlement or defense of any claim or suit against the insured.

**3. Action Against Company**

No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy.

Any person or organization or the legal representative thereof who has secured a judgment against the insured shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability. Any payments by the company under this condition 3 shall discharge the company's obligation to the extent of such payments.

Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

**4. Subrogation and Other Recoveries**

In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after the occurrence to prejudice such rights.

Because this policy affords excess coverage, the insured's right of recovery cannot always be exclusively subrogated to the company. It is, therefore, agreed that the company shall act in concert with all other interests concerned, including the insured, in the enforcement of any subrogation rights or in the recovery of amounts to any other means. The apportioning of any amounts so recovered shall follow in the principle that any interest, including the insured, that shall have paid an amount over and above any payment under this policy shall first be reimbursed up to the amount paid by such interest; the company shall then be reimbursed out of any balance then remaining up to the amounts paid as the result of loss covered under this

policy and lastly, the interests, including the insured, of whom this coverage is in excess are entitled to claim any residue remaining. Expenses and costs necessary to the recovery of any such amount shall be apportioned between the interests concerned, including the insured, in the ratio of their respective recoveries or, in the event of a totally unsuccessful attempt to recover, in the ratio of the respective amounts sought to be recovered.

**5. Other Insurance**

This condition does not apply with respect to the underlying insurance or excess insurance purchased specifically to be in excess of this policy.

If, with respect to a loss covered hereunder, the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder as respects such loss; provided, that if the applicable limit of liability of this policy is greater than the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured, as respects the layer of coverage afforded by this policy, a total limit of liability equal to the applicable limit of liability afforded by this policy.

**6. Cancellation**

This policy may be cancelled by the named insured by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in the declarations written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premium or minimum premium, whichever is greater, shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium or minimum premium, whichever is greater, shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**7. First Named Insured**

The insured first named in item 1 in the declarations is authorized to act on behalf of all named insureds and other insureds with respect to the giving and receiving of notice of cancellation and to receiving any return premium that may become payable under this policy. The insured first named in item 1 in the declarations is responsible for the payment of all premiums but the other named insureds jointly and severally agree to make such premium payments in full if the insured first named in item 1 fails to pay the amount due within thirty days after the company gives a written demand for payment to the insured first named in item 1.

In witness whereof, the company has caused this policy to be signed by its president and a secretary at Chicago, Illinois, but the policy shall not become valid until countersigned on the declarations page by a duly authorized representative of the company.

Continental Casualty Company
Transportation Insurance Company

National Fire Insurance Company of Hartford
Transcontinental Insurance Company

American Casualty Company of Reading, Pa.
Valley Forge Insurance Company

GEC 025410

000237

XXX-001315

00483

21051

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following designated insurance:

☐
☐
☐
☐

### Named Insured

It is agreed that the Named Insured is as follows:

W.R. Grace & Co. and/or Subsidiary organizations, associated affiliated companies, owned, controlled and/or managed companies as now or hereinafter constituted.

This endorsement forms a part of and is for attachment to the following described policy issued by the CNA INSURANCE company designated therein, takes effect on the effective date of said policy, unless another effective date is shown below, at the hour stated in said policy and expires concurrently with said policy.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 1 | RDX 9156645 | W.R. Grace & Co. Etal | 6/30/74 |

CNA insurance          7/12/74 crz

State Endorsement
3-01322-8

Countersigned by _____
                        Authorized Agent

**PRODUCER COPY**                          GEC 025413

# EXHIBIT K19

000239

XXX-001317

Page 1.

00685

## DECLARATIONS

Policy Number: 63-001-170

**Item 1.  Named Insured:**

W. R. Grace & Company and/or subsidiary, associated, affiliated companies or owned and controlled and/or managed companies as now hereafter constituted.

**Address:**

1114 Avenue of the Americas, New York, New York

**Item 2.  Policy Period:**

From June 30, 1975 to June 30, 1978
12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

**Item 3.  Underlying Insurance**

(See Attached)

**Item 4.  Underlying Limits**

$100,000.00 United States, its territories, possessions, and Canada
$250,000.00 Foreign

**Item 5.  Limits of Liability - Ultimate Net Loss:**

$1,000,000.00 Each Occurrence
$1,000,000.00 Aggregate

**Item 6.  Premium**

$155,000.00 Annual Minimum & Deposit adjustable at a rate of .062 per $1,000 annual gross receipts on U.S. & Canadian sales only.

Premium for 1976 - 1977 - and - 1977 - 1978 to be determined prior to next anniversary.

By: _Richard Fox_

GEC 024988

WRG Policies
03452

000240

XXX-001318

00686    Page 2

W. R. Grace & Company

Schedule of Underlying Insurance



I  General Liability                    B.I.  $1,000,000 Each Occurrence
   (Including Watercraft)               P.D.  $1,000,000 Each Occurrence

   (A)  Employee Benefits                     $250,000 Each Claim
                                              $750,000 Aggregate

   (B)  Care Custody and Control              $200,000 Each Occurrence
                                              and Aggregate

   Automobile Liability                 B.I.  $1,000,000 Each Occurrence
                                        P.D.  $1,000,000 Each Occurrence

   Products Liability                   B.I.  $1,000,000 Each Occurrence
                                              $2,000,000 Annual Aggregate

                                        P.D.  $1,000,000 Each Occurrence
                                              $2,000,000 Annual Aggregate

   Advertisers Liability                      $250,000 Each Occurrence

Oil & Gas Operations - Onshore:  up to $5 million per occurrence

Operators extra expense covering with respect insureds Drilling Operations,
workovers and producing wells up to one year after completion of drilling.

                     Offshore: up to $20 million per occurrence

II  Air craft Liability                      $10,000,000 CSL including voluntary
    (Excluding Non-Ownership)                settlements of $100,000 per person -
                                             including crew (part of and not in
                                             addition to the $10,000,000 Limit)

    (A)  Care, Custody or Control            $1,000,000 (with respect to hangers
                                             Buildings or other property or contents
                                             thereof not owned by Insured except if
                                             required by lease or other agreement of
                                             if insurance is purchased)

    (B)  Non-Ownership Hull Liability        $100,000 per occurrence and aggregate

    (C)  Aircraft Non-Ownership Liability    $10,000,000 CSL excluding voluntary pay-
                                             ments except for the operations of the
                                             Agricultural Chemicals Group of which
                                             $100,000 per person and $700,000 per
                                             accident is afforded plus $100,000 per
                                             person and $500,000 for Multi-Engine Air-
                                             craft operated by Dibogn, S.A., Faucet.
                                             S.A., of Satco and Hired by Grace y CIA

GEC 024989

WRG Policies
03453

000241

XXX-001319

00694

Page 10.



(H) To any employee with respect to personal injury to or death of another employee of the same employer injured in the course of such employment;

(I) Except with respect to occurrence taking place in the United States, its territories, or possessions, or Canada to any liability of the Insured directly or indirectly occasioned by a happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrectio military or usurped power or confisication or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority;

(J) Except with respect to operations performed by independent contractors, to liability arising out of the ownership, maintenance, operation, use loading or unloading of any watercraft; provided, however, this exclusion shall not apply to liability of the Named Insured for watercraft not owned by such Insured, or barges owned by the Insured;

(K) To liability arising out of the ownership, maintenance, operation, use, loading or unloading of any aircraft; provided, however this exclusion shall not apply to liability of the Named Insured for aircraft not owned by such Insured.

CONDITIONS

1. Premium.

   The premium for this policy shall be as stated on the declarations page.

2. Inspection and Audit.

   The company shall be permitted to inspect the Insured's premises, operations and elevators and to examine and audit the Insured's books and records at any time during the policy period and any extension thereof and within three years after the final termination of this policy, as far as they relate to the premium basis or the subject matter of this insurance.

3. Special Conditions Applicable to Occupational Disease.

   As regards personal injury (fatal or non-fatal) by occupational disease sustained by any employee of the Insured, this policy is subject to the same warranties, terms or conditions (except as regards the premium, the amount and limits of liability, any condition respecting "Other Insurance" and the renewal agreement, if any) as are contained in or as may be added to the policies of underlying insurances set forth in the declarations prior to the happening of an occurrence for which claim is made hereunder.

4. Limits of Liability.

   The company shall only be liable for ultimate net loss in excess of either:

   (A) Except as provided in sub-paragraph (B) hereof, the applicable limits of liability of the policies of underlying insurance set forth in Item 3 of the declarations; or

GEC 024997

WRG Policies
03461

000242

XXX-001320

00695    Page 11.

(B) As respects each occurrence not covered by such underlying
insurance, or where each occurrence is covered by such
underlying insurance but in recoverable amounts less than
the underlying limits set forth in Item 4 of the declarations,
the amount of ultimate net loss set forth in the declarations as
"Underlying Limits",

But in no event shall the company be liable for an amount in excess of
the applicable limit of liability set forth in Item 5 of the declarations.

The limit of liability stated in Item 5 of the declarations as applicable
to "Each Occurrence" is the total limit of the company's liability under
this policy for ultimate net loss as a result of any one occurrence.
Subject to the limit of liability set forth in Item 5 of the declarations with
respect to "Each Occurrence", the limit of liability so set forth as
"Aggregate" shall be the total limit of the company's liability under this
policy for ultimate net loss:

(1) Because of all personal injury and property damage during each
consecutive twelve months of the policy period, arising out of the
products-completed operations hazards, and

(2) Because of all personal injury during each consecutive twelve months
of the policy period sustained from occupational disease by any
employee of the Insured.

In the event of reduction or exhaustion of the aggregate limits of
liability under the policies of underlying insurance by reason of losses
paid thereunder, this policy shall:

(1) In the event of reduction, pay the excess of the reduced underlying
insurance, and

(2) In the event of exhaustion, continue in force as underlying insurance,

But nothing in this paragraph shall operate  to increase the limits of the
company's liability.

In the event of reduction or exhaustion of the aggregate limit or limits
designated in the underlying policy or policies solely by payment of losses
in respect to accidents or occurrences during the period of such underlying
policy or policies, it is hereby understood and agreed that such insurance
as is afforded by this policy shall apply in excess of the reduced underlying
limit or, if such limit is exhausted, shall apply as underlying insurance,
notwithstanding anything to the contrary in the terms and conditions of this
policy.

5.   Severability of Interests

The term "The Insured" is used severally and not collectively, but the
inclusion herein of more than one Insured shall not operate to increase the
limits of the company's liability.  If more than one Insured is named in

GEC 024998

WRG Policies
03462

000243

XXX-001321

00599    1.556

NORTHBROOK   POLICY   JACKET

## Conditions

Northbrook Insurance Company (herein after called the Company) agrees with the Named Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.

**I.    Premium Computation:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Named Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

**II.    Inspection and Audit:** The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**III.    Action Against Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. Bankruptcy or insolvency of the Insured or his estate shall not relieve the Company of any of its obligations hereunder.

**IV.    Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

**V.    Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

**VI.    Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Insured's legal representative as Insured; provided that notice of cancellation addressed to the Named Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**VII.    Cancellation:** This policy may be canceled by the Named Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing. If the Named Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**VIII.    Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Secretary and President and countersigned on the Declarations page by an authorized representative.

*Myron J. Resnick*

Secretary

GEC 025002

WRG Policies
03466

*Andrew R. Bow*

President

000244

# EXHIBIT K20

**000245**

**XXX-001323**

− 00712

# Northbrook
# Insurance Company
## Northbrook, Illinois



---

## Declarations – Special Cover Policy – Casualty

Renewal of No. __63 000 532__

**63 001 171**
Policy Number

**Item 1. Named Insured:**   W. R. Grace
(See Endorsement No. 2)

**Item 2. Address:**   1114 Avenue of the Americas
New York, New York

**Item 3. Policy Period:**   From:   June 30, 1975   To:   June 30, 1978
12:01 A.M. Standard Time at the address of the Named Insured as stated herein

**Item 4. Coverage:**   Follow Form Excess Umbrella Liability

**Item 5. Limits of Liability:**   $1,500,000 any one occurrence and in the aggregate part of
$4,000,000 any one occurrence and in the aggregate excess of
$1,000,000 any one occurrence and in the aggregate.

**Item 6. Premium:**   Advance: $39,000.   Annual Minimum:   $39,000.
Rate:   $.0158 per $1,000 Gross Receipts on U.S. and Canadian Sales

If the Policy Period is more than one year and the premium is to be paid in installments, Premium is payable on:

| __June 30, 1975__ | __To Be Determined__ | __To Be Determined__ |
|---|---|---|
| Effective Date | 1st Anniversary | 2nd Anniversary |

In the event of cancellation by the Named Insured, the Company shall receive and retain not less than                                  as the policy minimum premium.

**Item 7. Schedule of Underlying Insurance:**
See RU13 Attached

---

Agency at   Northbrook, Illinois

Countersignature Date   December 11, 19 75   Richard Fox   Agent

GEC 025015

WRG Policies
03479

000246

XXX-001324

# Northbrook Insurance Company

00713



A Stock Insurance Company, Herein Called the Company

# Excess Umbrella Coverage – Insuring Agreements

## 1. Coverage

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obliged to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Insured for damages, direct or consequential and expenses on account of:

(a) Personal Injuries, including death at any time resulting therefrom,

(b) Property Damage,

(c) Advertising Liability.

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:

Northbrook Insurance Company    $1,000,000
Policy No. 63 001 170

## 2. Limit of Liability – Underlying Limits

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a) $  1,000,000          ultimate net loss in respect of each occurrence, but

GEC 025016

(b) $  See Endorsement No. 1    in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employee of the Insured

and the Company shall then be liable to pay only the excess thereof up to a further

(c) $  1,500,000 part of $4,000,000    ultimate net loss in all in respect of each occurrence — subject to a limit of

(d) $  See Endorsement No. 1    in the aggregate for each annual period during the currency of this policy, separately in respect of Product Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employee of the Insured.

WRG Policies
03480

000247

XXX-001325

00714

# Northbrook
# Insurance Company
Northbrook, Illinois



## Endorsement

| Named Insured: W. R. Grace, etal. | Policy No.: 63 001 171 |
|---|---|
| | Endorsement No.: 1 |

In consideration of the premium charged it is understood and agreed that "Insuring Agreement"

2.  "Limit of Liability - Underlying Limits" sub paragraph (b) and (d) are deleted in their entirety and replaced by the following.

(b)  $1,000,000 In the aggregate for each annual period during the currency of this Policy.

(d)  $1,500,000 In the aggregate for each annual period during the currency part of          of this Policy.
     $4,000,000

It is further understood and agreed that "DEFINITIONS" 1 "Named Insured:" and 2 "Insured:" are deleted in their entirety and replaced by the following.

1.  Named Insured
    The words "Named Insured" shall be as stated in Item 1 of the Declarations.

2.  Insured:
    The words "Insured" includes any additional insured (not being the "Named Insured" under this Policy) included in the Underlying Insurances but not for broader coverage than is available to such additional insured under any Underlying Insurance as set out under "INSURING AGREEMENT" 1 "Underlying Umbrella Insurers And Policy Number"

In the event of additional insureds being added to the Coverage under the Underlying Insurances during the currency of this Policy, prompt notice shall be given to the Company who shall be entitled to charge an appropriate additional premium.

GEC 025017

This endorsement to take effect on the 30th    day of    June    19  75 . All other terms and conditions remain unchanged.

Countersigned: December 11, 1975

Authorized Representative

WRG Policies
03481

00715

# Northbrook
# Insurance Company
## Northbrook, Illinois



## Endorsement

Named Insured: W. R. Grace, etal.                    Policy No.: 63 001 171
                                                      Endorsement No.: 2

It is agreed that such insurance as this policy affords to the Named Insured
as shown in Item 1 of the Declarations, applies also to the additional
Insured(s) named below, subject to the following provisions:

1. The Named Insured is authorized to act for such additional Insured(s)
   in all matters pertaining to this insurance, including receipt of notice
   of cancellation; and
2. Return premium , if any shall be paid to the Named Insured; and;
3. The Named Insured shall pay the premium for the insurance afforded the
   additional Insured(s): provided, that in the event of bankruptcy, or
   insolvency of the Named Insured, each additional Insured shall be responsible
   for and shall pay to the company the premium for the insurance afforded
   such additional Insured.
4. The insurance applies with respect to the business operations of the
   additional Insured(s) in the states to which this policy applies.
5. The Named Insured delcares that all firms named in the policy as Named
   Insureds or as additional insureds are owned or financially controlled
   by the same interests.
6. It is further understood and agreed that the addition of one or more
   Insured shall not operate to increase the company's limits of liability.

### NAMES OF ADDITIONAL INSUREDS

W. R. Grace & Company and/or subsidiary, associated, affiliated companies or
owned and controlled and/or managed companies as now or hereafter constituted.

All other conditions and provisions remain unchanged.

GEC 025018

This endorsement to take effect on the   30th   day of   June   19  75  . All other terms and conditions remain
unchanged.

Countersigned:   December 11, 1975

Authorized Representative        WRG Policies
                                 03482

000249

XXX-001327

NORTHBROOK POLICY JACKET

## Conditions

Northbrook Insurance Company (herein after called the Company) agrees with the Named Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.

I.    Premium Computation: The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Named Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

II.   Inspection and Audit: The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

III.  Action Against Company: No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. Bankruptcy or insolvency of the Insured or his estate shall not relieve the Company of any of its obligations hereunder.

IV.   Subrogation: In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

V.    Changes: Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

VI.   Assignment: Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Insured's legal representative as Insured; provided that notice of cancellation addressed to the Named Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

VII.  Cancellation: This policy may be canceled by the Named Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing. If the Named Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

VIII. Terms of Policy Conformed to Statute: Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Secretary and President and countersigned on the Declarations page by an authorized representative.

WRG Policies
03488

Secretary                    GEC 025024                    President

# EXHIBIT K21

XXX-001329

00720

| | | NUMBER |
|---|---|---|
| RENEWS | | 5175-0444 |
| NEW | | |

# NEW HAMPSHIRE | INSURANCE COMPANY

MANCHESTER                                    NEW HAMPSHIRE

## C. V. STARR & CO.
### UNDERWRITING MANAGERS

SAN FRANCISCO    SEATTLE    LOS ANGELES    PORTLAND

THE INSURANCE CO. OF THE STATE OF NEW HAMPSHIRE, A STOCK COMPANY, (HEREINAFTER CALLED THE COMPANY) IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM AND OF THE STATEMENTS CONTAINED IN THE DECLARATIONS AND SUBJECT TO THE LIMITS OF LIABILITY, EXCLUSIONS, CONDITIONS AND OTHER TERMS OF THIS POLICY: DOES HEREBY INSURE

| AMOUNT | RATE | PREMIUM |
|---|---|---|
| $1,000,000.PART | | $26,000.00 |
| $4,000,000.EXCESS | | $ |
| $1,000,000.EXCESS | | $ |
| UNDERLYING | | $ |
| | | |
| | | |
| | | |
| Total | | $26,000.00 |

Assured:  W. R. GRACE & CO., ET AL

Address:  GRACE PLAZA, 1114 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036

Policy Period from   JUNE 30, 1975 TO JUNE 30, 1976
both days at 12:01 A.M.        (Standard Time) at the location(s) of the risk(s) insured and in accord with the terms and conditions of the form(s) attached.

Amount:   $1,000,000. PART OF
$4,000,000. EXCESS OF
$1,000,000. EXCESS OF UNDERLYING

Coverage:  EXCESS UMBRELLA LIABILITY

GEC 025025

Assignment of this Policy shall not be valid except with the written consent of this Company

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of is Policy, together with such other provisions, stipulations, and agreements as may be added hereto, as provided in this Policy.

Unless otherwise provided herein, this Policy may be cancelled on the customary short rate basis by the Assured at any time by written notice or surrender of this Policy to the Company. This policy may also be cancelled, with or without the return or tender of the unearned premium, by the mpany, or by the Underwriting Managers in its behalf, by delivering to the Assured or by sending to the Assured by regular mail, at the Assured's dress as shown herein, not less than 10 days' written notice stating when the cancellation shall be effective, and in such case Insurers shall refund the id premium less the earned portion thereof on demand, subject always to the retention by Insurers hereon of any minimum premium stipulated herein r proportion thereof previously agreed upon) in the event of cancellation either by Insurers or Assured.

Not withstanding anything to the contrary contained herein and in consideration of the premium for which this insurance is written, it is under-od and agreed that whenever an additional or return premium of $2.00 or less becomes due from or to the Assured on account of the adjustment of deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured ll be waived or the return of such premium to the Assured will not be made, as the case may be.

In Witness Whereof, the Company has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned by a authorized representative of the Company.

*Ellis S. Perrigo*
Secretary

WRG Policies
03489

*Lauram C Hall*
President

C. V. STARR & CO.

00721

# EXCESS UMBRELLA POLICY —

GEC 025026

Name Assured: As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company.

## DECLARATIONS

ITEM 1.  NAMED ASSURED  **W. R. GRACE & CO., ET AL**

ITEM 2.  Underlying Umbrella Policies:  NORTHBROOK INSURANCE COMPANY

ITEM 3.  Underlying Umbrella limits
(Insuring Agreement II):  $1,000,000.

ITEM  )Underlying Umbrella Aggregate Limits
(Insuring Agreement II):  $1,000,000.

ITEM 5.  Limit of Liability
(Insuring Agreement II):  $1,000,000. PART OF $4,000,000.

ITEM 6.  Aggregate Limit of Liability
(Insuring Agreement II):  $1,000,000. PART OF $4,000,000.

ITEM 7.  Notice of Occurrence (Conditions 4) to:  C. V. STARR & CO.
206 SANSOME STREET, SAN FRANCISCO, CA. 94104

## INSURING AGREEMENTS

### I. COVERAGE

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability.

(a)  imposed upon the Assured by law,
or
(b)  assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages, direct or consequential and expenses on account of:—
(i) Personal injuries, including death at any time resulting therefrom,
(ii) Property Damage
(iii) Advertising liability,

caused by or arising out of each occurrence happening anywhere in the World, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Declarations and issued by Underwriters at Lloyd's London, and certain Insurance Companies (hereinafter called the "Underlying Umbrella Insurers").

### II. LIMIT OF LIABILITY - UNDERLYING LIMITS

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:—

| | |
|---|---|
| • (as stated in Item 3 of the Declarations) | ultimate net loss in respect of each occurrence, but |
| • (as stated in Item 4 of the Declarations) | in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured. |

and the Company shall then be liable to pay only the excess thereof up to a further

| | |
|---|---|
| • (as stated in Item 5 of the Declarations) | ultimate net loss in all in respect of each occurrence- subject to a limit of |
| • (as stated in Item 6 of the Declarations) | in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured. |

NEW HAMPSHIRE INSURANCE COMPANY
~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~
~~XXXXXXXXXXXX~~

C. V. STARR & COMPANY

WRG Policies
03490

Attached to and forming part of Policy No. 5175-0444

Issued to: W. R. GRACE & CO., ET AL

Dated:  DECEMBER 1, 1975

Underwriting Managers

By _____

**000253**

# EXHIBIT K22

000254

XXX-001332

VII, 4

# THE CENTRAL NATIONAL
## INSURANCE COMPANY OF OMAHA

CNU 12-33-83

**NEW**
Renewal of Number

OMAHA, NEBRASKA

A Capital Stock Company

COMM. 15%

#21040-79
MARSH & MC LENNAN
1221 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK, 10020

## DECLARATIONS

Item 1. Named insured and address (No., Street, Town, County, State)

The named insured is:  Individual ☐  Corporation ☒  Partnership ☐

W. R. GRACE & COMPANY, ET AL (PER END. # 1)
1114 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK

CRAVENS, DARGAN & COMPA:
PACIFIC COAST
INSURANCE COMPANY UNDERWRITING MANAGE
234 BUSH STREET
SAN FRANCISCO, CALIFORNIA 94104

Item 2. Policy Period:

FROM  **JUNE 30, 1975**  TO  **JUNE 30, 1976**

12:01 A.M. standard time at the address of the named assured as stated herein.

3540 WILSHIRE BLVD.
LOS ANGELES, CALIF. 9

| 3. Premium: $ | **26,000.00** | 5. Occurrence Limit: $ | **PER END. # 3** |
| 4. Retained Limit: $ | **NOT APPLICABLE** | 6. Aggregate Limit: $ | **PER END. # 3** |

7. Schedule of Underlying Insurance Policies:

| TYPE OF POLICY | LIMITS OF LIABILITY | INSURER |
|---|---|---|
| UMBRELLA LIABILITY | $1,000,000.00 OCCURRENCE<br>$1,000,000.00 AGGREGATE | NORTHBROOK INS. CO. |

Form Numbers of Endorsements Forming Part of Policy at Issue:

ENDORSEMENTS NOS. 1, 2 & 3

Countersigned:  APRIL 16TH, 1976 BP/JS/es    at    LOS ANGELES, CALIFORNIA
CRAVENS, DARGAN & CO.

By _____
Authorized Representative

GEC 025032

WRG Policies
03496

000255

XXX-001333

## I. COVERAGE

The Company hereby agrees, subject to the limitations, terms nd conditions hereinafter mentioned, to indemnify the Insured for oll sums which the Insured shall be obligated to pay by reason of the liability,

imposed upon the Insured by law.

(b) assumed under contract or agreement by the Named Insured and/or any officer, director, stockholder, partner, or employee of the Named Insured and/or any officer, director, stockholder, partner or employee of the Named Insured, while acting in his capacity as such,

for damages, direct or consequential and expenses on account of:

(i) Personal injuries, including death at any time resulting therefrom,
(ii) Property Damage,
(iii) Advertising liability,

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 7 of the Declarations.

## II. LIMIT OF LIABILITY – UNDERLYING LIMITS

It is expressly agreed that liability shall attach to the Com-

pany only after the Underlying Umbrella insurers have ..... been held liable to pay the full amount of their respective .......... net loss liability as follows:

$ (as stated in Item 3    ultimate net loss in respect of each occur-
of the Declarations)    rence, but

$ (as stated in Item 4    in the aggregate for each annual period
of the Declarations)    during the currency of this Policy, separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Insured.

and the Company shall then be liable to pay only the excess thereof up to a further

$ (as stated in Item 5    ultimate net loss in all in respect of each
of the Declarations)    occurrence – subject to a limit of

$ (as stated in Item 6    in the aggregate for each annual period
of the Declarations)    during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Insured.

## CONDITIONS

### PRIOR INSURANCE AND NON-CUMULATION OF LIABILITY -

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess Policy issued to the Insured prior to the inception date hereof the limit of liability herein stated in Items 5 and 6 of the Declarations shall be reduced by any amounts due to the Insured on account of such loss under such prior insurance.

Subject to the foregoing paragraph and to all the other terms and conditions of this Policy in the event that personal injury or property damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy the Company will continue to protect the Insured for liability in respect of such personal injury or property damage without payment of additional premium.

### 2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE -

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the currency hereof except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of Condition C of the Underlying Umbrella Policies.

### 3. CANCELLATION -

This Policy may be cancelled by the Named Insured or by the Company or their representatives by mailing written notice to the

other party stating when, not less than thirty (30) days thereafter, cancellation shall be effective. The mailing of notice as aforesaid by the Company or their representative to the Named Insured at the address shown in this Policy shall be sufficient proof of notice, and the Insurance under this Policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Insured or by the Company or their representative shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Insured the Company shall retain the customary short rate proportion of the premium for the period this Policy has been in force. If this Policy shall be cancelled by the Company, the Company shall retain the pro rata proportion of the premium for the period this Policy has been in force. Notice of cancellation by the Company shall be effective even though the Company makes no payment or tender of return premium.

### 4. NOTICE OF OCCURRENCE -

Whenever the Insured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which, in the event that the Insured shall be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 7 of the Declarations as soon as practicable, provided however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claim.

### 5. OTHER INSURANCE -

If other valid and collectible insurance with any other Insurer is available to the Insured covering a loss also covered by this Policy, other than insurance that is in excess of the insurance afforded by this Policy the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.

Secretary

President

GEC 025033

WRG Policies
03497

IT IS HEREBY AGREED THAT UNDER DECLARATIONS - ITEM NO. 1. - NAMED INSURED
OF THE POLICY IS TO READ AS FOLLOWS:

       W. R. GRACE & COMPANY AND/OR
       SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES AND/OR
       ORGANIZATIONS, OWNED, CONTROLLED AND/OR MANAGED COMPANIES
       AS NOW OR HEREINAFTER CONSTITUTED.


    IT IS FURTHER AGREED THAT THE INCLUSION OF THE ABOVE SHALL NOT OPERATE TO
INCREASE THE LIMIT OF THE COMPANY'S LIABILITY HEREUNDER.

Nothing herein contained shall vary, alter, waive or extend any of the terms, representations, conditions or agreements of the policy
other than as above stated.

To be attached to and forming a part of Policy No. ....................... CNU 12-33-83 ....................... of the .......................

      CENTRAL NATIONAL INS. CO. OF OMAHA

Issued to .............. W. R. GRACE & COMPANY, ET AL ...............................

.................................................................... CRAVENS, DARGAN & CO.

Section No. ............... 1 ............... 6-30-75

Endorsement No. ................ Effective ...............................

GEC 025034

WRG Policies
03498

000257

XXX-001335

FU OUG SC(29- 10-7)                     GENERAL ENDORSEMENT

IT IS HEREBY AGREED THAT UNDER INSURING AGREEMENT II: LIMIT OF LIABILITY –
UNDERLYING LIMITS, WHEREVER ITEM 3 AND ITEM 4 APPEARS, IT IS AMENDED TO
READ ITEM 7.

Nothing herein contained shall vary, alter, waive or extend any of the terms, representations, conditions or agreements of the po
other than as above stated.
To be attached to and forming a part of Policy No. ............ CNU 12-33-83 ............ of the ........................

CENTRAL NATIONAL INS. CO. OF OMAHA

Issued to ............ W. R. GRACE & COMPANY, ET AL ............ CRAVENS, DARGAN & CO.
Section No. ............ 2 ............
Endorsement No. ............ Effective ............ 6-30-75 ............ A

GEC 025035

WRG Policies
03499

000258

XXX-001336

FG-60d SC(25M 10-75)                    GENERAL ENDORSEMENT

IT IS HEREBY AGREED THAT DECLARATIONS, ITEM 5 AND ITEM 6 ARE TO READ

AS FOLLOWS:

5.  OCCURRENCE LIMIT: $1,000,000.00 PART OF
$4,000,000.00 EXCESS OF UNDERLYING

6.  AGGREGATE LIMIT: $1,000,000.00 PART OF
$4,000,000.00 EXCESS OF UNDERLYING.

Nothing herein contained shall vary, alter, waive or extend any of the terms, representations, conditions or agreements of the poli
other than as above stated.

To be attached to and forming a part of Policy No. _____ CNU 12-33-83 _____ of the _____

CENTRAL NATIONAL INS. CO. OF OMAHA

Issued to _____ W. R. GRACE & COMPANY, ET AL

Section No. _____                                        CRAVENS, DARGAN & CO.

Endorsement No. ___3___    Effective_____ 6-30-75 _____                  Age

GEC 025036

WRG Policies
03500

# EXHIBIT K23

XXX-001338

07/21/95   09:16   FAX 1 212 825 0790                                    002/007
JUL-20-95 10:56 FROM: ADMIRAL INS.              ID: 609 428 3390          PAGE   2

Mike Caputo 2/3/82

Replacing ..... NEW

# ADMIRAL INSURANCE COMPANY

A TEXAS STOCK COMPANY
(herein called "ADMIRAL")

## CERTIFICATE OF EXCESS INSURANCE

## DECLARATIONS

**NAMED INSURED** W.R. Grace & Co.
Refer to Endorsement #1
**MAILING ADDRESS** 1114 Avenue of the Americas
New York, NY. 10038

PRODUCER'S NAME AND ADDRESS
AVRECO, INC.
323 West Jackson Blvd.
Chicago, IL. 60606

PRODUCER CODE 132-A   COMMISSION  20 %

POLICY PERIOD FROM  6/30/75                6/30/76

See claims file

Item 1. PRIMARY INSURANCE.

| Primary Carrier(s) | Policy Number(s) | Policy Period(s) |
|---|---|---|
| Northbrook Ins. Co. | X/X/A | 6/30/75-6/30/78 |

**CANCELLED**
6/30/76

Item 2. DESCRIPTION OF PRIMARY INSURANCE.

**Umbrella Liability**

$1,000,000 each occurrence (and in the aggregate where applicable)

Item 3. DESCRIPTION OF EXCESS INSURANCE.

**Excess-Umbrella Liability**

$500,000 (12.5%) quota-share of $1000,000 each occurrence (and in
the aggregate where applicable) excess of limits of liability as
described in Item 2.

Item 4. PREMIUM   13,000
$27,750 Minimum and Deposit
1st Anniversary (6/30/76): $18,886.88 if ****
2nd Anniversary (6/30/77): $13,520.00 if ****

Countersigned On   September 23, 1975

JERSEY INTERNATIONAL, INC.
Underwriting Managers

At Haddonfield, New Jersey 08033

By

COMPANY COPY

GEC 025038

07/21/95   09:16   FAX 1 212 825 0790                                           @003/007
JUL-20-95 10:57 FROM: ADMIRAL INS.                    ID: 609 420 3390           PAGE   3

A. WHEREAS, the primary insurers have issued to the insured policies of insurance listed in Item 1 (Primary Insurance) of the declarations (which policies, including renewals or replacements thereof on the same basis, are herein called the primary insurance) which are providing the insurance described in Item 2 (Description of Primary Insurance) of the declarations.

B. NOW, this Certificate is to indemnify the insured in accordance with the applicable insuring agreements, exclusions and conditions of the primary insurance for excess loss as specified in Item 3 (Description of Excess Insurance) of the declarations.

C. The insurance afforded by this Certificate shall follow that of the primary insurance except: (1) anything in this certificate or the primary insurance to the contrary notwithstanding, ADMIRAL shall not be obligated to assume charge of the settlement or defense of any claim or suit brought or proceeding instituted against the insured, but ADMIRAL shall have the right and be given the opportunity to associate with the insured in the defense or control of any claim, suit or proceeding which appears reasonably likely to involve ADMIRAL, in which event the insured and ADMIRAL shall cooperate in all things in the defense or control of such claim, suit or proceeding, but no obligation shall be incurred on behalf of ADMIRAL without its consent being first obtained, however, in the event that the amount of the excess loss becomes certain either through trial court judgment or agreement among the insured, the claimant and ADMIRAL, then, the insured may pay the amount of excess loss to the claimant to effect settlement and, upon submission of due proof thereof, ADMIRAL will indemnify the insured for such payment; or, ADMIRAL will, upon request of the insured, pay such amount to the claimant on behalf of the insured; (3) this insurance afforded by this Certificate shall not apply to any expenses for which insurance is provided in the primary insurance; (3) where amended by endorsement attached hereto.

D. The premium for the Certificate is the amount stated in Item 4 of the declarations and is payable upon delivery of this certificate.

E. ADMIRAL shall be furnished with copies of the primary insurance and all endorsements thereto which in any manner affect this excess insurance as soon as practicable.

F. This Certificate may be canceled by the insured by surrender thereof to ADMIRAL's authorized representative, or by mailing to ADMIRAL's authorized representative written notice stating when thereafter such cancellation shall be effective, it being agreed, however, that in the event of cancellation or termination of the primary insurance this Certificate, to the extent of such cancellation or termination, shall cease to apply at the same time without notice to the insured. This Certificate may be canceled by ADMIRAL by mailing to the first Named Insured at the address shown herein written notice stating when, not less than 30 days thereafter, such cancellation shall be effective. The mailing of notices as aforesaid shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the term of this Certificate. Delivery of such written notice either by the insured or by ADMIRAL shall be equivalent to mailing.

G. If the period of the primary insurance is not concurrent with the terms of this Certificate, it is agreed that for the purpose of determining ADMIRAL's liability for loss in excess of the aggregate limits where applicable, of the primary insurance, only loss happening during the term of this Certificate shall be included.

## NUCLEAR ENERGY LIABILITY EXCLUSION

This Certificate does not apply:

a. Under any Liability Coverage, to bodily injury or property damage:

(1) with respect to which an insured under the Certificate is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada, or would be an insured under any such Certificate but for its termination upon exhaustion of its limit of liability, or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this Certificate not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

b. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

c. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured, or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured, or

(3) the bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat;

d. As used in this Exclusion:

(1) "Hazardous properties" include radioactive, toxic, or explosive properties;

(2) "Nuclear material" means source material, special nuclear material or byproduct material;

(3) "Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

(5) "Waste" means any waste material (a) containing byproduct material and (b) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (6), (a) or (b) thereof;

(6) "Nuclear facility" means (a) any nuclear reactor, (b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing, or packaging waste; (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste; and (e) includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

## SERVICE OF SUIT
(Not Applicable in Texas or New Jersey)

It is agreed that in the event of the failure of ADMIRAL to pay any amount claimed to be due hereunder, ADMIRAL, at the request of the insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America in Canada and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and with the practice of such Court.

It is further agreed that service of process in such suit may be made upon DONALD H. CADLOCK, President of ADMIRAL, or its nominee at JEISELTINTERNATIONAL INC., Underwriting Managers, 56 Haddon Avenue, P.O. Box 850, Haddonfield, New Jersey 08033 and that in any suit instituted against any one of them upon this policy, ADMIRAL will abide by the final decision of such Court or by the final decision of the Appellate Court in the event of an appeal.

The above named is authorized and directed to accept service of process on behalf of ADMIRAL, in any such suit and/or upon the request of the insured to give a written undertaking to the insured that it or they will enter a general appearance upon ADMIRAL's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America or province of Canada, which makes provision therefore, ADMIRAL hereby designates the Superintendent, Commissioner or Director of insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IN WITNESS WHEREOF, the ADMIRAL INSURANCE COMPANY has caused this Certificate to be signed by its President and Secretary, but this Certificate shall not be valid unless countersigned on the declarations page by a duly authorized representative of ADMIRAL.

William R. Hediles                          [signature]

GEC 025039

Mike Caputo 2/3/82

**ADMIRAL ★ ★★ INSURANCE COMPANY**
A TEXAS STOCK COMPANY
(herein called "ADMIRAL")

| | |
|---|---|
| ENDORSEMENT | |
| NO. 1 TO POLICY NO. SEE 0369 | |
| EFFECTIVE DATE 6/30/73 | |

NAMED INSURED: W.R. Grace & Co.

**NAMED INSURED**

W.R. Grace & Co. and/or subsidiary organizations,
associated, affiliated companies owned, controlled
and/or managed companies as now or hereafter con-
stituted.

BY: _Frederick H. Brown_
Authorized Representative

PRODUCER COPY #2

GEC 025040

VII

No. 34077

**COVER NOTE**

C.T. BOWRING & CO. (INSURANCE) LTD.

Telegraphic Address :
Bowinsur, London, Telex 886331
Telephone : 01-283 3100

P.O. Box 145, The Bowring Building, Tower Place, London, EC3P 3BE

This is to certify that we have effected Coverage as follows:-

10th November 19 75

1612

| | |
|---|---|
| TYPE | EXCESS UMBRELLA LIABILITY. |
| FORM | WORDING AS UNDERLYING AS FAR AS APPLICABLE AMENDMENTS IF ANY TO BE AGREED BY LEADING UNDERWRITER. |
| ASSURED | W.R. GRACE AND COMPANY ET AL and/or as underlying. |
| PERIOD | 36 months at 30th June, 1975. |
| INTEREST | Umbrella Liability as underlying including Products Recall and Architects Errors and Omissions. |

00733

INSURED            12.50% of
$4,000,000 Combined Single Limit Personal Injury and Property
Damage each and every occurrence
excess of
$1,000,000 Combined Single Limit Personal Injury and Property
Damage each and every occurrence
which in turn excess of Primary Insurance
or A)  $100,000 in respect losses not covered by primary in respect
        U.S.A/Canadian operations
or B)  Foreign operations excess $250,000 self insured retention or
        primary insurances whichever the greater.

SITUATION          Worldwide.

CONDITIONS         Aggregates as Underlying.
4% Tax Clause (if applicable) - Service of Suit Clause (U.S.A.).
Accidental Seepage and Pollution Clause as underlying.

PREMIUM            12.50% of $312,000 three years (payable 1/3rd per annum) adjustable
annually at .042%Gross Sales for U.S.A. and Canada only.

INFORMATION        See Annual Report.
Coverage excludes Products Recall and Architects Errors and Omissions.

Hereon             100% ADMIRAL INSURANCE COMPANY.

GEC 025044

Messrs. Marsh & McLennan, Inc.,
1221 Avenue of Americas,
New York,
N.Y. 10020,
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

J H Sullivan

DEPARTMENTAL MANAGER

N.B.-Please examine the above carefully, and if incorrect or if you do not accept
the security please advise us immediately.

XXX-001342

Form A.1.103/1
No. 34077

**COPY**
**COVER NOTE**

C. T. BOWRING & CO. (INSURANCE) LTD.

Telegraphic Address:
Bowrinsur, London, Telex 888271
Telephone: 01-283 3100

P.O. Box 145, The Bowring Building, Tower Place, London, EC3P 3BE

··613

10th November _____ 19 75

This is to certify that we have effected Coverage as follows:-

EXCESS UMBRELLA LIABILITY.

WORDING AS UNDERLYING AS FAR AS APPLICABLE AMENDMENTS IF ANY TO BE AGREED BY LEADING UNDERWRITER.

| | |
|---|---|
| ASSURED | W.R. GRACE AND COMPANY ET AL and/or as underlying.    00734 |
| PERIOD | 36 months at 30th June, 1975. |
| INTEREST | Umbrella Liability as underlying including Products Recall and Architects Errors and Omissions. |
| SUM INSURED | 12.50% of $4,000,000 Combined Single Limit Personal Injury and Property Damage each and every occurrence excess of $1,000,000 Combined Single Limit Personal Injury and Property Damage each and every occurrence which in turn excess of Primary Insurance or A) $100,000 in respect losses not covered by primary in respect U.S.A/Canadian operations or B) Foreign operations excess $250,000 self insured retention or primary insurances whichever the greater. |
| SITUATION | Worldwide. |
| CONDITIONS | Aggregates as Underlying. 4% Tax Clause (if applicable) - Service of Suit Clause (U.S.A). Accidental Seepage and Pollution Clause as underlying. |
| PREMIUM | 12.50% of $312,000 three years (payable 1/3rd per annum) adjustable annually at .042%Gross Sales for U.S.A. and Canada only. |
| INFORMATION | See Annual Report. Coverage excludes Products Recall and Architects Errors and Omissions. |
| Hereon | 100% ADMIRAL INSURANCE COMPANY. |

Messrs. Marsh & McLennan, Inc.,
1221 Avenue of Americas,
New York,
N.Y. 10020,
U.S.A.

C. T. BOWRING & CO. (INSURANCE) LTD.

DEPARTMENTAL MANAGER

N.B.-Please examine the above carefully, and if incorrect or if you do not accept the security please advise us immediately.

GEC 025045

# EXHIBIT K24

000266

XXX-001344

# Northbrook
# Insurance Company
## Northbrook, Illinois

09735 921



## Declarations – Special Cover Policy – Casualty

Renewal of No. __63 000 533__

63 001 172
Policy Number

**Item 1. Named Insured:**  W. R. Grace
(See Endorsement No. 2)

**Item 2. Address:**  1114 Avenue of the Americas
New York, New York

**Item 3. Policy Period:**  From: June 30, 1975  To: June 30, 1978
12:01 A.M. Standard Time at the address of the Named Insured as stated herein

**Item 4. Coverage:**  Follow Form Excess Umbrella Liability

**Item 5. Limits of Liability:**  $3,500,000 any one occurrence and in the aggregate part of
$5,000,000 any one occurrence and in the aggregate excess of
$5,000,000 any one occurrence and in the aggregate.

**Item 6. Premium:**  Advance: $28,700.    Annual Minimum:    $28,700.
Rate:  .012 per $1,000 Gross Receipts on U. S. and Canadian Sales

If the Policy Period is more than one year and the premium is to be paid in installments, Premium is
payable on:

| June 30, 1975 | To Be Determined | To Be Determined |
|---|---|---|
| Effective Date | 1st Anniversary | 2nd Anniversary |

In the event of cancellation by the Named Insured, the Company shall receive and retain not less
than _____ as the policy minimum premium.

**Item 7. Schedule of Underlying Insurance:**
See RU13 Attached

Agency at    Northbrook, Illinois

Richard Fox    Agent

Countersignature Date    December 11,  19  75

GEC 025046

WRG Policies
03504

# Northbrook Insurance Company

00736



A Stock Insurance Company, Herein Called the Company

## Excess Umbrella Coverage – Insuring Agreements

### 1. Coverage

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obliged to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Insured for damages, direct or consequential and expenses on account of:

(a)  Personal Injuries, including death at any time resulting therefrom,

(b)  Property Damage,

c)  Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:

| | | |
|---|---|---|
| Northbrook Insurance Company Policy No. 63 001 171 | $1,500,000 | |
| Admiral TBA | $500,000 | |
| C.V. Starr TBA | $1,000,000 | |
| Central National TBA | $1,000,000 | |

### 2. Limit of Liability — Underlying Limits

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a)  $  4,000,000    ultimate net loss in respect of each occurrence, but     GEC 025047

(b)  $  See Endorsement No. 1    in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employee of the Insured

and the Company shall then be liable to pay only the excess thereof up to a further     WRG Policies 03505

)  $  3,500,000 part of    ultimate net loss in all in respect of each occurrence — subject to a limit of $5,000,000

(d)  $  See Endorsement No.    in the aggregate for each annual period during the currency of this policy, separately in respect of Product Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Insured.

XXX-001346

69738

# Northbrook
# Insurance Company
Northbrook, Illinois



---

# Endorsement

---

Named Insured:  W. R. Grace, etal.        Policy No.:  63 001 172
                                          Endorsement No.:  1

---

In consideration of the premium charged it is understood and agreed that
"Insuring Agreement"

2.  "Limit of Liability - Underlying Limits" sub paragraph (b) and (d)
    are deleted in their entirety and replaced by the following.

(b)  $4,000,000 In the aggregate for each annual period during the currency
             of this Policy.

(d)  $3,500,000 In the aggregate for each annual period during the currency
     part of     of this Policy.
     $5,000,000

It is further understood and agreed that "DEFINITIONS" 1 "Named Insured:"
and 2 "Insured:" are deleted in their entirety and replaced by the following.

1.  Named Insured
    The words "Named Insured" shall be as stated in Item 1 of the
    Declarations.

2.  Insured:
    The words "Insured" includes any additional insured (not being the
    "Named Insured" under this Policy) included in the Underlying Insurances
    but not for broader coverage than is available to such additional insured
    under any Underlying Insurance as set out under "INSURING AGREEMENT"
    1 "Underlying Umbrella Insurers And Policy Number"

In the event of additional insureds being added to the Coverage under the
Underlying Insurances during the currency of this Policy, prompt notice
shall be given to the Company who shall be entitled to charge an appropriate
additional premium.

GEC 025049

WRG Policies
03507

---

This endorsement to take effect on the    30th    day of    June        19    75. All other terms and conditions remain
unchanged.

Countersigned:    December 11, 1975

_Richard Fox_
Authorized Representative

000269

XXX-001347

# EXHIBIT K25

XXX-001348

00745

NUMBER
5175-0445



# NEW HAMPSHIRE INSURANCE COMPANY
### MANCHESTER
### NEW HAMPSHIRE

## C. V. STARR & CO.
### UNDERWRITING MANAGERS

#### SAN FRANCISCO    SEATTLE    LOS ANGELES    PORTLAND

THE INSURANCE CO. OF THE STATE OF NEW HAMPSHIRE, A STOCK COMPANY, (HEREINAFTER CALLED THE COMPANY) IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM AND OF THE STATEMENTS CONTAINED IN THE DECLARATIONS AND SUBJECT TO THE LIMITS OF LIABILITY, EXCLUSIONS, CONDITIONS AND OTHER TERMS OF THIS POLICY; DOES HEREBY INSURE

| AMOUNT | RATE | PREMIUM |
|---|---|---|
| 5,000. PART | | $ 5,125.00 |
| $5,000,000. EXCESS | | $ |
| $5,000,000. EXCESS | | $ |
| X UNDERLYING | | $ |
| | | |
| | | |
| | | |
| Total | | $ 5,125.00 |

**Assured:**   W. R. GRACE & CO., ET AL

**Address:**   GRACE PLAZA, 1114 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036

**Policy Period from**   JUNE 30, 1975 TO JUNE 30, 1976
both days at 12:01 A.M.   (Standard Time) at the location(s) of the risk(s) insured and in accord with the terms and conditions of the form(s) attached.

**Amount:**   $ 625,000. PART OF
$5,000,000. EXCESS OF
$5,000,000. EXCESS OF UNDERLYING

**Coverage:**   EXCESS UMBRELLA LIABILITY

GEC 025056

Assignment of this Policy shall not be valid except with the written consent of this Company

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such other provisions, stipulations, and agreements as may be added hereto, as provided in this Policy.

Unless otherwise provided herein, this Policy may be cancelled on the customary short rate basis by the Assured at any time by written notice or by surrender of this Policy to the Company. This policy may also be cancelled, with or without the return or tender of the unearned premium, by the Company, or by the Underwriting Managers in its behalf, by delivering to the Assured or by sending to the Assured by regular mail, at the Assured's address as shown herein, not less than 10 days' written notice stating when the cancellation shall be effective, and in such case Insurers shall refund the said premium less the earned portion thereof on demand, subject always to the retention by Insurers hereon of any minimum premium stipulated herein or proportion thereof previously agreed upon) in the event of cancellation either by Insurers or Assured.

Not withstanding anything to the contrary contained herein and in consideration of the premium for which this insurance is written, it is understood and agreed that whenever an additional or return premium of $2.00 or less becomes due from or to the Assured on account of the adjustment of pour premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured be waived or the return of such premium to the Assured will not be made, as the case may be.

Witness Whereof, the Company has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned by a thorized representative of the Company.

*Ellis S. Perrigo*
Secretary

WRG Policies
03514

*Lawrence C Hall*
President

000271

XXX-001349

00746

## EXCESS UMBRELLA POLICY

GEC 025057

1 Assured:  As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company.

## DECLARATIONS

| | | |
|---|---|---|
| ITEM 1. | NAMED ASSURED | W. R. GRACE & CO., ET AL |
| ITEM 2. | Underlying Umbrella Policies: | VARIOUS DOMESTIC COMPANIES |
| ITEM 3. | Underlying Umbrella limits (Insuring Agreement II): | $5,000,000. |
| ITEM 4. | Underlying Umbrella Aggregate Limits (Insuring Agreement II): | $5,000,000. |
| ITEM 5. | Limit of Liability (Insuring Agreement II): | $ 625,000. PART OF $5,000,000. |
| ITEM 6. | Aggregate Limit of Liability (Insuring Agreement II): | $ 625,000. PART OF $5,000,000. |
| ITEM 7. | Notice of Occurrence (Conditions 4) to: | C. V. STARR & CO. 206 SANSOME STREET, SAN FRANCISCO, CA. 94104 |

## INSURING AGREEMENTS

### I. COVERAGE

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability.

(a) Imposed upon the Assured by law,

or

(b) assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such.

for damages, direct or consequential and expenses on account of:-

(i) Personal injuries, including death at any time resulting therefrom,
(ii) Property Damage
(iii) Advertising liability.

caused by or arising out of each occurrence happening anywhere in the World, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Declarations and issued by Underwriters at Lloyds, London, and certain Insurance Companies (hereinafter called the "Underlying Umbrella Insurers").

### II. LIMIT OF LIABILITY - UNDERLYING LIMITS

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:-

a (as stated in Item 3 of the Declarations) ultimate net loss in respect of each occurrence, but

a (as stated in Item 4 of the Declarations) in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

and the Company shall then be liable to pay only the excess thereof up to a further

a (as stated in Item 5 of the Declarations) ultimate net loss in all in respect of each occurrence - subject to a limit of

a (as stated in Item 6 of the Declarations) in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

attached to and forming part of Policy No. 5175-0445

Issued to: W. R. GRACE & CO., ET AL

Dated:    DECEMBER 1, 1975

NEW HAMPSHIRE INSURANCE COMPANY

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

C. V. STARR & COMPANY

Underwriting Managers

WRG Policies
03515

000272

XXX-001350

# EXHIBIT K26

**000273**
**XXX-001351**

00752

No. 922099

( )

**DECLARATIONS — SPECIAL COVERAGE POLICY**

STOCK COMPANY

DAILY

Renewal of No.
NEW

\_ .S33

## FIRST STATE
### I N S U R A N C E   C O M P A N Y
**WILMINGTON, DELAWARE**

Administrative Offices: 60 Batterymarch Street, Boston, Massachusetts 02110

**Named Insured and Mailing Address**

W.R. GRACE & CO.
Grace Plaza
1114 Avenue of the Americas
New York City, New York  10036

Item 1.  Policy Period:  From  June 30, 1975          To  June 30, 1976

12:01 A.M., Standard Time at the address of the named insured as stated
herein.

Item 2.  Premium:     Advance Premium: $5125.
Rate:

Minimum Premium: $5125.
If the Policy Period is more than one year and the premium is to be paid in installments,
premium is payable on:

Effective Date                 1st Anniversary              2nd Anniversary
$  -----                        $  -----                      $  -----

Item 3.  Coverage:  **Excess Umbrella Liability**

Item 4:  Limits of Liability:   The limit of the Company's liability shall be as stated herein, subject
to all the terms of this policy having reference thereto.

$625,000. p/o $5,000,000. each occurrence and in
the aggregate excess of $5,000,000. which in turn
is excess of Primary Insurance.

Item 5.  During the past three years no insurer has cancelled insurance issued to the named in-
sured, similar to that afforded hereunder, unless otherwise stated herein.

Countersigned by: _____

Date of issue  October 1. 1975 (eoc)

GEC 025063

WRG Policies
03521

00753

## FIRST STATE INSURANCE COMPANY
### (A Stock Insurance Company, Herein Called the Company)

### EXCESS UMBRELLA POLICY
### INSURING AGREEMENTS

1. **COVERAGE**

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obliged to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Named Insured for damages, direct or consequential and expenses on account of:

(a) Personal Injuries, including death at any time resulting therefrom,

(b) Property Damage,

(c) Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

### UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:
Northbrook Insurance Company
Policy Number:  To Be Advised

2. **LIMIT OF LIABILITY - UNDERLYING LIMITS**

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a) $ 5,000,000.          ultimate net loss in respect of each occurrence, but

(b) $ 5,000,000.          in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured

and the Company shall then be liable to pay only the excess thereof up to a further

(c) $ 625,000. p/o          ultimate net loss in all in respect of each occurrence -
    $5,000,000.          subject to a limit of

(d) $ 625,000. p/o          in the aggregate for each annual period during the
    $5,000,000.          currency of this policy, separately in respect of Product
                         Liability and separately in respect of Personal Injury
                         (fatal or non-fatal) by Occupational Disease sustained
                         by any employees of the Assured.

WRG Policies
03522

GEC 025064

000275

XXX-001353

00758

ENDORSEMENT #4

It is hereby understood and agreed that the Named Insured, as
shown on the Declarations, is amended to read as follows:

W.R. Grace & Co., and/or Subsidiary, Associated
Affiliated Companies and/or Organizations, Owned,
Controlled and/or Managed Companies as Now or
Hereinafter Constituted.


This endorsement to take effect on the 30th day of June, 1975.
All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 922099 of FIRST
STATE INSURANCE COMPANY.


Issued to:  W.R. GRACE & CO., ET AL



GEC 025069

WRG Policies
03527

000276

XXX-001354

# EXHIBIT K27

XXX-001355

Form AD.1037

No. 34078

## COVER NOTE

C. T. BOWRING & CO. (INSURANCE) LTD.

Telegraphic address :
Bowinsur, London, Telex 888321
Telephone : 01-283 3100

P.O. Box 145, The Bowring Building, Tower Place, London, EC3P 3BE

This is to certify that we have effected Coverage as follows:-

VII, 9

10th November 19 75

EXCESS UMBRELLA LIABILITY.

WORDING AS UNDERLYING AS FAR AS APPLICABLE AMENDMENTS IF ANY TO BE
AGREED BY LEADING UNDERWRITER.

**ASSURED**            W.R. GRACE AND COMPANY ET AL and/or as underlying.

**PERIOD**             36 months at 30th June, 1975.

**INTEREST**           Umbrella Liability as underlying including Products Recall and
                       Architects Errors and Omissions.

**SUM INSURED**        5% of
                       $5,000,000 Combined Single Limit Personal Injury and Property
                       Damage each and every occurrence
                       excess of
                       $5,000,000 Combined Single Limit Personal Injury and Property
                       Damage each and every occurrence
                       which in turn excess of Primary Insurance
                       or A)  $100,000 in respect losses not covered by primary in respect
                              U.S.A/Canadian operations
                       or B)  Foreign operations excess $250,000 self insured retention or
                              primary insurances whichever the greater.

**SITUATION**          Worldwide.

**CONDITIONS**         Aggregates as Underlying.
                       4% Tax Clause (if applicable) - Service of Suit Clause (U.S.A).
                       Accidental Seepage and Pollution Clause as underlying.

**PREMIUM**            5% of $123,000 three years (payable 1/3rd per annum) adjustable
                       annually at .017% Gross Sales for U.S.A. and Canada only.

**INFORMATION**        See Annual Report.
                       Coverage excludes Products Recall and Architects Errors and Omissions.

**Hereon**             100% CALIFORNIA UNION INSURANCE COMPANY.

WRG Policies
03528

Messrs. Marsh & McLennan, Inc.,
1221 Avenue of Americas,
New York,                                           C. T. BOWRING & CO. (INSURANCE) LTD.
N.Y. 10020,
U.S.A.                          GEC 025070

N.B.-Please examine the above carefully, and if incorrect or if you do not accept
the security please advise us immediately.

DEPARTMENTAL MANAGER

# EXHIBIT K28

000279

XXX-001357

VOL X    TAB 1

C

00761



Insurance Policy
[Companies]

GEC 026053

WRG Policies
04542

UMBRELLA POLICY (LONDON 1971)

Named Assured:    As stated in Item 1 of the Declarations forming part hereof
~~and/or subsidiary, associated, affiliated companies or owned and controlled~~
~~companies, or now or hereafter constituted~~ and of which prompt notice has
been given to Underwriters (hereinafter called the "Named Assured").

## INSURING AGREEMENTS:

1. COVERAGE –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter
mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to
pay by reason of the liability:–

    (a)   Imposed upon the Assured by law,

or   (b)   assumed under contract or agreement by the Named Assured and/or any
          officer, director, stockholder, partner or employee of the Named Assured,
          while acting in his capacity as such,

for damages on account of:–

    (i)   Personal Injuries

    (ii)  Property Damage

    (iii)  Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world.

11. LIMIT OF LIABILITY –

Underwriters hereon shall be only liable for the ultimate net loss the excess of either:–

    (a)   the limits of the underlying insurances as set out in the attached schedule
          in respect of each occurrence covered by said underlying insurances,

or   (b)   $ 100,000.00    ultimate net loss in respect of each occurrence not
          covered by said underlying insurances,

         (hereinafter called the "underlying limits"):

and then only up to a further sum as stated in Item 2(a) of the Declarations in all in respect
of each occurrence – subject to a limit as stated in Item 2(b) of the Declarations in the
aggregate for each annual period during the currency of this Policy, separately in respect
of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational
Disease sustained by any employees of the Assured.

In the event of reduction or exhaustion of the aggregate limits of liability under said underlying
insurance by reason of losses paid thereunder, this Policy subject to all the terms, conditions
and definitions hereof shall:–

    (1)   in the event of reduction pay the excess of the reduced underlying limit

    (2)   in the event of exhaustion continue in force as underlying insurance.

The inclusion or addition hereunder of more than one Assured shall not operate to increase
Underwriters' limits of liability beyond those set forth in the Declarations.

I P O :-S4A (R/76)

GEC 026055

WRG Policies
04544

000281

XXX-001359

09.769

LOSS PAYABLE –

Liability under this policy with respect to any occurrence shall not attach unless and until the Assured, or the Assured's underlying insurers, shall have paid the amount of the underlying limits on account of such occurrence. The Assured shall make a definite claim for any loss for which the Underwriters may be liable under this policy within twelve (12) months after the Assured shall have paid an amount of ultimate net loss in excess of the amount borne by the Assured or after the Assured's liability shall have been fixed and rendered certain either by final judgment against the Assured after actual trial or by written agreement of the Assured, the claimant, and Underwriters. If any subsequent payments shall be made by the Assured on account of the same occurrence, additional claims shall be made similarly from time to time. Such losses shall be due and payable within thirty (30) days after they are respectively claimed and proven in conformity with this policy.

**K.    BANKRUPTCY AND INSOLVENCY –**

In the event of the bankruptcy or insolvency of the Assured or any entity comprising the Assured, the Underwriters shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

**L.    OTHER INSURANCE –**

If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy, other than insurance that is specifically stated to be excess of this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

**M.    SUBROGATION –**

Inasmuch as this policy is "Excess Coverage", the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to the Underwriters. It is, therefore, understood and agreed that in case of any payment hereunder, the Underwriters will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Assured) concerned, in the ratio of their respective recoveries as finally settled.

**N.    CHANGES –**

Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop Underwriters from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by Underwriters.

GEC 026061

**O.    ASSIGNMENT –**

Assignment of interest under this policy shall not bind Underwriters unless and until their consent is endorsed hereon.

WRG Policies
04550      57

**000282**

XXX-001360

09772

ATTACHING TO AND FORMING PART OF POLICY No. 76DD1594C

## DECLARATIONS:

ITEM 1.   (a)   Named Assured:-    W.R.GRACE & CO. AND/OR SUBSIDIARY, ASSOCIATED AFFILIATED COMPANIES AND/OR ORGANISATIONS, OWNED CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED

       (b)   Address of Named Assured:-

1114 Avenue of the Americas,
New York, New York 10038

ITEM 2.   Limit of Liability – as Insuring Agreement 11 :-

       (a)   Limit in all in respect of each occurrence    $  5,000,000.00

       (b)   Limit in the aggregate for each annual period where applicable    $  5,000,000.00

ITEM 3.   Policy Period:-    30th June, 1976 to 30th June, 1979 both days 12.01 a.m. local standard time

ITEM 4.   Notice of Occurrence (Condition G) to:-

National Agencies Inc.,
1221 Avenue of the Americas, New York, New York 10020, U.S.A.

ITEM 5.   Currency (Condition Q):-

U.S.$

ITEM 6.   Payment of Premium (Condition Q) to:-

National Agencies Inc.,
1221 Avenue of the Americas, New York, New York 10020, U.S.A.

ITEM 7.   Service of Process (Condition 5) upon:-

Mendes and Mount,
27 William Street,
New York, New York 10005, U.S.A.

E.P.O.354B (8/76)

Page 11 of 11

GEC 026064

WRG Policies
04553   D

000283

XXX-001361

Form A.

N. ——35446

Telex (A. Address)
Bow Mar London, Telex 888321
Telephone 01-283 7100

## COVER NOTE

C. T. BOWRING & CO. (INSURANCE) LTD.
P.O. Box 145, The Bowring Building, Tower Place, London, EC3P 3BE

00738

This is to certify that we have effected Coverage as follows:- ——5th August, 19 76

**UMBRELLA LIABILITY.**

Wording as agreed by Underwriters (Joint Venture Exclusion deleted) and including Employee Benefit following scheduled underlying only, but excluding claims resulting from E.R.I.S.A. (1974).

**ASSURED**

W.R. GRACE & COMPANY ET AL AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES OWNED CONTROL AND/OR MANAGED COMPANIES AS NOW HEREINAFTER CONSTITUTED, AND/OR ORGANIZATIONS, OWNED CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED.

**PERIOD**

36 months at 30th June, 1976.

**INTEREST**

Coverage in respect of Assureds Operations.

**SUM INSURED**

80% of $5,000,000 each occurrence (Aggregate Products and Occupational Disease) excess of
(A) The Amount Covered under Underlying Insurances as attached, or
(B) $100,000 each occurrence in respect of losses not covered by said Underlying Insurances (U.S.A. and Canada) but $250,000 in respect of foreign subsidiaries or insured primaries whichever the greater.

**SITUATION**

Worldwide.

**CONDITIONS**

N.M.A. 1687 (JOINT VENTURE COVERAGE - W.R. GRACE (JOINT VENTURE))
N.M.A. 1685, except in respect of Oil and Gas operations which subject to N.M.A. 1683 other than operations on, over, or under water which subject to N.M.A. 1684.
Service of Suit Clause (U.S.A.).
60 Days Cancellation Clause.

**PREMIUM**

80% of Minimum and Deposit $1,230,000 (Payable 1/3rd annually) adjustable annually at 0.1107 per thousand dollars gross sales.
Plus Additional Premium $50,000 annual in respect of Part II Exclusions (A) (B) (C).

Less 4% Federal Excise Tax.

**INFORMATION**

As over.

**hereon**

COMPANIES (as attached) 100.00%

National Agencies Inc.,
1221 Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

GEC 026080

C. T. BOWRING & CO. (INSURANCE) LTD.

WRG Policies
04569

DEPARTMENTAL MANAGER

WRG   0656

N.B. Please examine the above carefully, and if incorrect or if you do not accept the security please advise us immediately.

FORM A.D.135

No. 25446

60793

W. R. GRACE & CO.

SCHEDULE OF UNDERLYING INSURANCE

| COVERAGE | | LIMIT | CARRIER: |
|---|---|---|---|
| 1. | | | |
| a) | General/Products Liability (including watercraft) | B.I. $1,000,000 each occ.<br>$2,000,000 Aggregate Products only. | C.N.A. |
| | | P.D. $1,000,000 each occ.<br>$2,000,000 Aggregate Products only. | C.N.A. |
| b) | Employee Benefits | $ 250,000 each Claim<br>$ 750,000 Annual Aggregate | C.N.A. |
| c) | Care Custody & Control | $1,000,000 each Occurrence | Self Insured with C.N.A. Handling claims in first $200,000 |
| | Advertisers Liability | $ 250,000 each Occurrence | C.N.A. |
| | Automobile Liability | B.I. $1,000,000 each Occurrence | C.N.A. |
| | | P.D. $1,000,000 each Occurrence | C.N.A. |

GEC 026085

WRG Policies
04574
61

000285

XXX-001363

# EXHIBIT K29

**000286**

**XXX-001364**

Northbrook
Insurance Company
Northbrook, Illinois

**Special Cover Policy – Casualty**

STOCK COMPANY

GEC 025356

000287

XXX-001365

00398

11712

# Conditions

Northbrook Insurance Company (herein after called the Company) agrees with the Named Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy.

The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or forms issued to complete this policy.

I. Premium Computation: The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance, the unearned portion paid by such Named Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

II. Inspection and Audit: The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections, nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of, or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

III. Action Against Company: No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. Bankruptcy or insolvency of the Insured or of his estate shall not relieve the Company of any of its obligations hereunder.

IV. Subrogation: In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

V. Changes: Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

VI. Assignment: Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; however, the Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Insured's legal representative as Insured; provided that notice of cancellation addressed to the Named Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

VII. Cancellation: This policy may be canceled by the Named Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing. If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

VIII. Terms of Policy Conformed to Statute: Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Secretary and President and countersigned on the Declarations page by an authorized representative.

*Myron J. Resnick*
Secretary

*Archie R. B...*
President

GEC 025357

000288

XXX-001366

# Northbrook Insurance Company
## Northbrook, Illinois



## Declarations – Special Cover Policy – Casualty

Renewal of No. ___

**Item 1. Named Insured:** W.R. Grace & Co----- AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES AND/OR ORGANIZATIONS OWNED, CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED.

Policy Number

**Item 2. Address:** 1114 Avenue of the Americas
New York, New York

**Item 3. Policy Period:** From: June 30, 1976   To: June 30, 1979
12:01 A.M. Standard Time at the address of the Named Insured as stated herein

**Item 4. Coverage:** Umbrella Liability — IN ACCORDANCE WITH TERMS, CONDITIONS AND AGREED UPON AMENDMENTS OF 1971 WEAVERS UMBRELLA FORM.
(PRODUCTS AND OCCUPATIONAL DISEASE)

**Item 5. Limits of Liability:** $1,000,000 any one occurrence and in the aggregate part of
$5,000,000 any one occurrence and in the aggregate
EXCESS OF $10,000 SELF INS. (PRODUCTS AND OCCUPATIONAL DISEASE)

**Item 6. Premium:** Advance: $72,000 · Annual Minimum: $92,000.
Rate: $82,000, ADJUSTABLE ANNUALLY AT A RATE OF .1107 PER THOUSAND OF SALES; 10,000 FLAT ANNUAL FOR MARINE REINSURANCE — TOTAL 92,0

If the Policy Period is more than one year and the premium is to be paid in installments, Premium is payable on:

| $72,000 | $92,000 | $92,000 |
|---|---|---|
| Effective Date 6/30/76 | 1st Anniversary 6/30/77 | 2nd Anniversary 6/30/78 |

In the event of cancellation by the Named Insured, the Company shall receive and retain not less than ___ as the policy minimum premium.

**Item 7. Schedule of Underlying Insurance:**

Attached

Agency at Northbrook, Illinois

Countersignature Date _____, 19__                                    _____ Agent

GEC 025358

# EXHIBIT K30

000290

XXX-001368

COPY

*Whereas*

No. 76DD1595C

W.R. GRACE & CO. AND/OR SUBSIDIARY, ASSOCIATED AFFILIATED COMPANIES AND/OR ORGANISATIONS, OWNED, CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED
of 1114 Avenue of the Americas, New York, New York 10036 hereinafter called the Assured, have paid U.S. $83,636.00 Premium or Consideration to Us, the undersigned Assurers to ~~insure against loss as follows, viz:~~ indemnify the Assured in respect of EXCESS UMBRELLA LIABILITY.

53.03% part of 100% of 80% of the limits stated herein

LIMIT: $5,000,000 each occurrence and in the aggregate
where applicable
excess of
$5,000,000 each occurrence and in the aggregate
where applicable

during the period commencing at Thirtieth day of June, 19 76 , and ending at Thirtieth day of June, 19 79 . both days 12.01 a.m. local standard time

*Now know ye* that we the undersigned Assurers do hereby bind ourselves each *Company* for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors, Administrators and Assigns, all such loss as above stated, not exceeding the sum of

FIFTY THREE DECIMAL NOUGHT THREE PER CENT part of ONE HUNDRED PER CENT of EIGHTY PER CENT of the limits stated herein

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that in proportion to the several sums by each of us subscribed against our respective names not exceeding the several sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

*In witness whereof* I being a representative of the Leading Office which is duly authorised by the Assurers have hereunto subscribed my name on their behalf this Twenty-eighth day of June, 19 77

MLS/je

Form 316

GEC 025379

VIII, 3

COPY

**COVER NOTE**

Form AG1/CA

No. 25447

C. T. BOWRING & CO. INSURANCE LTD.

Telegraphic Address:
Bowliners, London, Telex 888271
Telephone: 01-283 3100

P.O. Box 145, The Bowring Building, Tower Place, London, EC3P 3BE

This is to certify that we have effected Coverage as follows:—                    5th August, 19    76

TYPE        EXCESS UMBRELLA LIABILITY.

FORM        Short Umbrella Excess Form as agreed by Underwriters.

ASSURED     W. R. GRACE AND CO. ET AL AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED
            COMPANIES, ~~OWNED CONTROLLED AND/OR INSURED CLAIMED TO BE/OR NON~~
            ~~AFFILIATED COMPANIES~~ AND/OR ORGANIZATIONS, OWNED CONTD
            AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER
            CONSTITUTED.

PERIOD      36 months at 30th June, 1976.

INTEREST    Coverage in respect of all of the Assured's operations.

SUM INSURED 80% of $5,000,000 each occurrence (Aggregate Products and Occupational Disease)
            excess of
                     $5,000,000 each occurrence (Aggregate Products and Occupational Disease)
            which in turn excess of
            (A) Scheduled underlying
            (B) $100,000 each occurrence Self Insured Retention (U.S.A. and Canada) or
                $250,000 for foreign exposures.

SITUATION

CONDITIONS  Seepage and Pollution Clauses as Underlying
            Service of Suit Clause (U.S.A.).
            60 Days Cancellation Clause.

            All as Underlying in respect of Conditions, Warranties, Clause and
            Exclusions attached thereto.

PREMIUM     80% of Minimum and Deposit ~~$375,000~~ 450,000. (payable 1/3rd annually) adjustable
            annually at ~~0.0338~~ 0.0405 per thousand dollars gross sales.
            Less 4% Federal Excise Tax.

INFORMATION Assureds operations are basically involved in 3 areas being:—
            (1) Chemicals which total 50% and are split 25% industrial and
                speciality goods, 75 packaging and plastics, 15% agricultural.
            (2) Consumer Products which total 45% and split 13% fashion and
                leisure, 13% consumers services, 19% packaged foods.
            (3) Natural resources being 5%.

            Estimated annual sales 1976 $3,625,000,000 1977 $3,700,000,000,
            1978 $3,800,000,000. Annual payroll $400,893,100 1976. No manufacturing,
            packaging or relabelling of pharmaceutical products by the Assured.

Hereon      COMPANIES (as attached) ~~60.12%~~ 6V.5%
            BROKERAGE
            National Agencies Inc.,
            1221 Avenue of the Americas,
            New York,
            N.Y. 10020,                          C. T. BOWRING & CO. (INSURANCE) LTD.
            U.S.A.

            N.B.—Please examine the above carefully, and if incorrect or if you do not accept
            the security please advise us immediately.

                                                 DEPARTMENTAL MANAGER

Commission 10% to you.

GEC 025382

000292

XXX-001370

COPY

No. 15441

COVER NOTE

C. T. BOWRING & CO. (INSURANCE) LTD.

London, Telex 88579

Telephone: 01-283 2100    P.O. Box 145, The Bowring Buildings, Tower Place, London, EC3P 3BE

This is to certify that we have effected Coverage as follows:—    5th August, 19—76

TYPE        EXCESS UMBRELLA LIABILITY.

            Short Umbrella Excess Form as agreed by Underwriters.

ASSURED     W. R. GRACE AND CO. ~~ET AL AND/OR SUBSIDIARY~~, ASSOCIATED, AFFILIATED
            COMPANIES, ~~OWNED CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR~~
            ~~HEREINAFTER CONSTITUTED~~   AND/OR  ORGANIZATIONS, OWNED, CONTROLLED
            AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER    CONSTITUTED.

PERIOD      36 months at 30th June, 1976.

INTEREST    Coverage in respect of all of the Assured's operations.

SUM INSURED 80% of $5,000,000 each occurrence (Aggregate Products and Occupational Disease)
            excess of
                    $5,000,000 each occurrence (Aggregate Products and Occupational Disease)
            which in turn excess of
            (A) Scheduled underlying
            (B) $100,000 each occurrence Self Insured Retention (U.S.A. and Canada) or
                $250,000 for foreign exposures.

SITUATION

CONDITIONS  Seepage and Pollution Clauses as Underlying
            Service of Suit Clause (U.S.A.).
            60 Days Cancellation Clause.

            All as Underlying in respect of Conditions, Warranties, Clause and
            Exclusions attached thereto.
                                    450,000
PREMIUM     80% of Minimum and Deposit ~~$375,000~~ (payable 1/3rd annually) adjustable
                            0.0405
            annually at ~~0.0396~~ per thousand dollars gross sales.

INFORMATION Assureds operations are basically involved in 3 areas being:-
            (1) Chemicals which total 50% and are split 28% industrial and
                speciality goods, 7% packaging and plastics, 15% agricultural.
            (2) Consumer Products which total 45% and split 13% fashion and
                leisure, 13% consumers services, 19% packaged foods.
            (3) Natural resources being 5%.

            Estimated annual sales 1976 $3,625,000,000 1977 $3,700,000,000.
            1978 $3,800,000,000. Annual payroll $400,893,100 1976. No manufacturing,
            packaging or relabelling of pharmaceutical products by the Assured.

Hereon       35.44
            ~~33.163~~ LLOYD'S

            BROKERAGE
            National Agencies Inc.,
            1221 Avenue of the Americas,
            New York,
            N.Y. 10020,                             C. T. BOWRING & CO. (INSURANCE) LTD.
            U.S.A.
                                                            [signature]
N.B.-Please examine the above carefully, and if incorrect or if you do not accept
the security please advise us immediately.
                                                    DEPARTMENTAL MANAGER

Commission 10% to you.

GEC 025384

C :PY  ADDENDUM

(LLOYD'S)

Attaching to and forming part of Cover Note/Certificate No.    35447

Re                              A/C  W. R. GRACE & COMPANY ET AL.

The following amendments and/or corrections to this Cover
Note take effect from inception:-

ASSURED:    W. R. GRACE AND COMPANY AND/OR SUBSIDIARY,
ASSOCIATED AFFILIATED COMPANIES AND/OR
ORGANISATIONS, OWNED CONTROLLED AND/OR MANAGED
COMPANIES AS NOW OR HEREINAFTER CONSTITUTED.

PREMIUM:    80% of a Minimum and Deposit of  $450,000
(payable 1/3 annually) adjustable annually
at $0.0405 per thousand dollars gross sales.

Interest hereon:-

35.44%  Lloyds Underwriters

Cover Note and Addendum issued to:-

NATIONAL BROKERAGE AGENCIES, INC
85 John Street,
New York,
New York 10038,
U. S. A.

in lieu of as formerly stated.

All other terms and conditions of the Cover Note/Certificate remaining unchanged.

Dated, London, _____4th March_____19̲77
                  jb
New York                          C. T. BOWRING & CO. (INSURANCE) LTD.

Form AD.187/188                          DEPARTMENTAL MANAGER

GEC 025387

000294

XXX-001372

EXCESS UMBRELLA POLICY (LONDON 1971)

NAMED ASSURED: As stated in Item 1 of the Declarations forming a part hereof

~~and/or subsidiary, associated, affiliated companies or owned and controlled companies~~
~~as now or hereafter constituted~~ and of which prompt notice has been given to Underwriters.
(Hereinafter called the "Named Assured").

INSURING AGREEMENTS:

I.    COVERAGE –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter
mentioned, to indemnify the Assured for all sums which the Assured shall be obligated
to pay by reason of the liability:-

    (a)    imposed upon the Assured by law,

or  (b)    assumed under contract or agreement by the Named Assured and/or any
          officer, director, stockholder, partner or employee of the Named Assured,
          while acting in his capacity as such,

for damages on account of:-

    (i)    Personal Injuries

    (ii)   Property Damage

    (iii)  Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and
arising out of the hazards covered by and as defined in the Underlying Umbrella Policies
stated in Item 2 of the Declarations and issued by the Insurers as specified thereunder
(hereinafter called the "Underlying Umbrella Insurers").

II.   LIMIT OF LIABILITY –

It is expressly agreed that liability shall attach to the Underwriters only after the Under-
lying Umbrella Insurers have paid or have been held liable to pay the full amount of their
respective ultimate net loss liability as follows:-

| | |
|---|---|
| $ (as stated in Item 3 of the Declarations) | ultimate net loss in respect of each occurrence, but |
| $ (as stated in Item 4 of the Declarations) | in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured and in respect of any other hazard subject to an aggregate limit in the Underlying Umbrella Policies |

L.P.O.355A (12/76)

Page 1 of 4

GEC 025390

and the Underwriters shall then be liable to pay only the excess thereof up to a further

| | |
|---|---|
| S. (as stated in Item 5 of the Declarations) | ultimate net loss in all in respect of each occurrence – subject to a limit of |
| S. (as stated in Item 6 of the Declarations) | in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured and in respect of any other hazard subject to an aggregate limit in the Underlying Umbrella Policies. |

### CONDITIONS:

1. **PRIOR INSURANCE AND NON CUMULATION OF LIABILITY** –

   It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

2. **MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE** –

   This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder. Should, however, any alteration be made in the premium for the Underlying Umbrella Policies during the currency of this Policy Underwriters reserve the right to adjust the premium hereon accordingly.

   It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the Policy period without reduction of coverage or limits except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of Condition C. of the Underlying Umbrella Policies.

3. **CANCELLATION** –

   This Policy may be cancelled by the Named Assured or by the Underwriters or their representatives by sending by registered mail notice to the other party stating when, not less than ~~thirty (30)~~ *sixty(60) days thereafter, cancellation shall be effective. The mailing of notice as aforesaid by Underwriters or their representatives to the Named Assured at the address shown in this Policy shall be sufficient proof of notice, and the insurance under this Policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by the Underwriters or their representatives shall be equivalent to mailing.

   If this Policy shall be cancelled by the Named Assured the Underwriters shall retain the customary short rate proportion of the premium for the period this Policy has been

L.P.O.355A (12/76)

Page 2 of 4

GEC 025391

000296

XXX-001374

ATTACHING TO AND FORMING PART OF POLICY No. 76DD1594C

## DECLARATIONS:

ITEM 1.   (a)  Named Assured:- W.R. GRACE & CO. AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES AND/OR ORGANISATIONS, OWNED CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED

   (b)  Address of Named Assured:-

1114 Avenue of the Americas,
New York, New York 10038

ITEM 2.   (a)  Underlying Umbrella Policies:-
1.2 76DD1594C
2.3 63-002-018

   (b)  Underlying Umbrella Insurers:-
1.8  Certain Insurance Companies
2.8  Northbrook Insurance Company

ITEM 3.   Underlying Umbrella Limits
(Insuring Agreement II):-                     $ 5,000,000.00

ITEM 4.   Underlying Umbrella Aggregate Limits
(Insuring Agreement II):-                     $ 5,000,000.00

ITEM 5.   Limit of Liability
(Insuring Agreement II):-                     $ 5,000,000.00

ITEM 6.   Aggregate Limit of Liability
(Insuring Agreement II):-                     $ 5,000,000.00

ITEM 7.   Policy Period:-     30th June, 1976 to 30th June, 1979
both days 12.01 a.m. local standard time

ITEM 8.   Notice of Occurrence (Condition 4) to:-

National Agencies Inc.,
1221 Avenue of the Americas,
New York, New York 10020, U.S.A.

ITEM 9:   Service of Process (Condition 6) upon:-

Mendes and Mount,
3 Park Avenue,
New York, New York 10016, U.S.A.

L.P.O.355A (12/76)

Page 4 of 4

GEC 025393

000297

XXX-001375

X 3

COPY
COVER NOTE

C. T. BOWRING & CO. (INSURANCE) LTD.

No. 35147

Telegraphic Address:
Bowlease, London, Telex 88531
Telephone: 01-283 3100

P.O. Box 145, The Bowring Building, Tower Place, London, EC3P 3BE

This is to certify that we have effected Coverage as follows:-    5th August, 19    76

TYPE    EXCESS UMBRELLA LIABILITY.

FORM    Short Umbrella Excess Form as agreed by Underwriters.

ASSURED    W. R. GRACE AND CO. ~ET AL~ AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES, ~OWNED CONTROLLED AND/AS MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED~, AND/OR ORGANIZATIONS, OWNED CONTR AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED

PERIOD    36 months at 30th June, 1976.

INTEREST    Coverage in respect of all of the Assured's operations.

SUM INSURED    80% of $5,000,000 each occurrence (Aggregate Products and Occupational Disease) excess of
$5,000,000 each occurrence (Aggregate Products and Occupational Disease) which in turn excess of
(A) Scheduled underlying
(B) $100,000 each occurrence Self Insured Retention (U.S.A. and Canada) or $250,000 for foreign exposures.

SITUATION

CONDITIONS    Seepage and Pollution Clauses as Underlying
Service of Suit Clause (U.S.A.).
60 Days Cancellation Clause.

All as Underlying in respect of Conditions, Warranties, Clause and Exclusions attached thereto.

PREMIUM    80% of Minimum and Deposit ~$375,000~ USA Ccc. (payable 1/3rd annually) adjustable annually at ~0.0338~ 0.0405 per thousand dollars gross sales.

Less 4% Federal Excise Tax.

INFORMATION    Assureds operations are basically involved in 3 areas being:-
(1) Chemicals which total 50% and are split 28% industrial and specialty goods, 7% packaging and plastics, 15% agricultural.
(2) Consumer Products which total 45% and split 13% fashion and leisure, 13% consumers services, 19% packaged foods.
(3) Natural resources being 5%.

Estimated annual sales 1976 $3,625,000,000 1977 $3,700,000,000, 1978 $3,800,000,000.  Annual payroll $400,893,100 1976.  No manufacturing, packaging or relabelling of pharmaceutical products by the Assured.

Hereon    COMPANIES (as attached) ~66.12%~  64.5%
BROKERAGE
National Agencies Inc.,
1221 Avenue of the Americas,
New York,
N.Y. 10020,
U.S.A.

C. T. BOWRING & CO. (INSURANCE) LTD.

DEPARTMENTAL MANAGER

N.B.-Please examine the above carefully, and if incorrect or if you do not accept the authority please advise us immediately.

Commission 10% to you.

WRG Policies
04604

000298

XXX-001376

COPY

No. 35447                    **COVER NOTE**

C. T. BOWRING & CO. (INSURANCE) LTD.

To    Our address
b.    Tower, London. Telex 883378
Telephone (01-283 7100                    P.O. Box 145, The Bowring Building, Tower Place, London, EC3P 3BE

This is to certify that we have effected Coverage as follows:—                    5th August, 19  76

| | |
|---|---|
| TYPE | EXCESS UMBRELLA LIABILITY. |
| | Short Umbrella Excess Form as agreed by Underwriters. |
| ASSURED | W. R. GRACE AND CO. ET AL AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES, OWNED CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREAFTER CONSTITUTED AND/OR ORGANIZATIONS, OWNED, CONTROLLED AND OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTE |
| PERIOD | 36 months at 30th June, 1976. |
| INTEREST | Coverage in respect of all of the Assured's operations. |
| SUM INSURED | 80% of $5,000,000 each occurrence (Aggregate Products and Occupational Disease) excess of $35,000,000 each occurrence (Aggregate Products and Occupational Disease) which in turn excess of (A) Scheduled underlying (B) $100,000 each occurrence Self Insured Retention (U.S.A. and Canada) or $250,000 for foreign exposures. |
| SITUATION | |
| CONDITIONS | Seepage and Pollution Clauses as Underlying Service of Suit Clause (U.S.A.). 60 Days Cancellation Clause. |
| | All as Underlying in respect of Conditions, Warranties, Clause and Exclusions attached thereto. |
| PREMIUM | 80% of Minimum and Deposit $375,000 450,000 (payable 1/3rd annually) adjustable annually at 0.0938 0.0695 per thousand dollars gross sales. |
| INFORMATION | Assureds operations are basically involved in 3 areas being:– (1) Chemicals which total 50% and are split 28% industrial and specialty goods, 7% packaging and plastics, 15% agricultural. (2) Consumer Products which total 45% and split 13% fashion and leisure, 13% consumers services, 19% packaged foods. (3) Natural resources being 5%. |
| | Estimated annual sales 1976 $3,625,000,000 1977 $3,700,000,000, 1978 $3,800,000,000. Annual payroll $400,893,100 1976. No manufacturing, packaging or relabelling of pharmaceutical products by the Assured. |
| Hereon | 35.44 33.08% LLOYD'S |

BROKERAGE

National Agencies Inc.,
1221 Avenue of the Americas,
New York,
N.Y. 10020,
U.S.A.

C. T. BOWRING & CO. (INSURANCE) LTD.

DEPARTMENTAL MANAGER

N.B.–Please examine the above carefully, and if incorrect or if you do not accept the security please advise us immediately.

Commission 10% to you.

CEC 026117

WRG Policies
04606

## EXCESS-UMBRELLA POLICY (LONDON 1971)

NAMED ASSURED: As stated in Item 1 of the Declarations forming a part hereof and/or subsidiary, associated, affiliated companies as owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to Underwriters. (Hereinafter called the "Named Assured").

### INSURING AGREEMENTS:

I.    COVERAGE –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:–

(a)   imposed upon the Assured by law,

or (b)   assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:–

(i)    Personal Injuries

(ii)   Property Damage

(iii)  Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Declarations and issued by the Insurers as specified thereunder (hereinafter called the "Underlying Umbrella Insurers").

II.    LIMIT OF LIABILITY –

It is expressly agreed that liability shall attach to the Underwriters only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:–

$ (as stated in Item 3 of the Declarations)    ultimate net loss in respect of each occurrence, but

$ (as stated in Item 4 of the Declarations)    in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured and in respect of any other hazard subject to an aggregate limit in the Underlying Umbrella Policies

L.P.O.355A (12/76)

Page 1 of 4

GEC 026123

WRG Policies
04612

000300

XXX-001378

and the Underwriters shall then be liable to pay only the excess thereof up to a further

.W. U.S.A.

S. (as stated in Item 5
of the Declarations)

ultimate net loss in all in respect of
each occurrence – subject to a limit
of

S. (as stated in Item 6
of the Declarations)

in the aggregate for each annual
period during the currency of this
Policy, separately in respect of
Products Liability and in respect of
Personal Injury (fatal or non-fatal)
by Occupational Disease sustained
by any employees of the Assured and
in respect of any other hazard subject
to an aggregate limit in the Underlying
Umbrella Policies.

CONDITIONS;

1. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY -

It is agreed that if any loss covered hereunder is also covered in whole or in part under
any other excess policy issued to the Assured prior to the inception date hereof the limit
of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by any
amounts due to the Assured on account of such loss under such prior insurance.

2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE -

This Policy is subject to the same terms, definitions, exclusions and conditions (except
as regards the premium, the amount and limits of liability and except as otherwise
provided herein) as are contained in or as may be added to the Underlying Umbrella
Policies stated in Item 2 of the Declarations prior to the happening of an occurrence
for which claim is made hereunder. Should, however, any alteration be made in the
premium for the Underlying Umbrella Policies during the currency of this Policy Under-
writers reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained
in full effect during the Policy period without reduction of coverage or limits except
for any reduction of the aggregate limits contained therein solely by payment of claims
in respect of accidents and/or occurrences occurring during the period of this Policy or
by the operation of Condition C. of the Underlying Umbrella Policies.

3. CANCELLATION -

This Policy may be cancelled by the Named Assured or by the Underwriters or their
representatives by sending by registered mail notice to the other party stating when, not
less than thirty (30) days thereafter, cancellation shall be effective. The mailing of
notice as aforesaid by Underwriters or their representatives to the Named Assured at the
address shown in this Policy shall be sufficient proof of notice, and the insurance under
this Policy shall end on the effective date and hour of cancellation stated in the notice.
Delivery of such written notice either by the Named Assured or by the Underwriters or
their representatives shall be equivalent to mailing.

*sixty(60)

If this Policy shall be cancelled by the Named Assured the Underwriters shall retain
the customary short rate proportion of the premium for the period this Policy has been

L.P.O.355A (12/76)

Page 2 of 4

GEC 026124

WRG Policies
04613

000301

XXX-001379

ATTACHING TO AND FORMING PART OF POLICY No. 76MB1594C

DECLARATIONS:

ITEM 1. (a) Named Assured:- W.R. GRACE & CO. AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES AND/OR ORGANISATIONS, OWNED, CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED

(b) Address of Named Assured:-

1114 Avenue of the Americas,
New York, New York 10036

ITEM 2. (a) Underlying Umbrella Policies:-
1.2 76MB1594C
2.3 63-002-048

(b) Underlying Umbrella Insurers:-
1.2 Certain Insurance Companies
2.3 Northbrook Insurance Company

ITEM 3. Underlying Umbrella Limits
(Insuring Agreement II):-                          $ 5,000,000.00

ITEM 4. Underlying Umbrella Aggregate Limits
(Insuring Agreement II):-                          $ 5,000,000.00

ITEM 5. Limit of Liability
(Insuring Agreement II):-                          $ 5,000,000.00

ITEM 6. Aggregate Limit of Liability
(Insuring Agreement II):-                          $ 5,000,000.00

ITEM 7. Policy Period:-         30th June, 1976 to 30th June, 1979
both days 12.01 a.m. local standard time

ITEM 8. Notice of Occurrence (Condition 4) to:-
National Agencies Inc.,
1221 Avenue of the Americas,
New York, New York 10020, U.S.A.

ITEM 9: Service of Process (Condition 6) upon:-
Mendes and Mount,
3 Park Avenue,
New York, New York 10016, U.S.A.

L.P.O.355A (12/76)

Page 4 of 4

GEC 026126

WRG Policies
04615

000302

XXX-001380

# EXHIBIT K31

000303

XXX-001381

00360

**PRUDENTIAL REINSURANCE COMPANY**

HOME OFFICE:
213 Washington Street
Newark, New Jersey 07101

**EXCESS LIABILITY POLICY**

POLICY NO.: DXC 901145

PRIOR NO.:    New

BROKER: Marsh & McLennan
1221 Avenue of the Americas
New York, New York 10020

| Code: | | Comm. 7.5 |
|---|---|---|

## DECLARATIONS

Item 1.  Insured's Name and Address
W.R. Grace & Company CO. AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED
Grace Plaza  COMPANIES AND/OR ORGANIZATIONS OWNED CONTROLLED
AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER
1114 Avenue of the Americas – New York, New York 10036    CONSTITUTES

Item 2.  Policy Period – From:    June 30, 1976    TO:  June 30, 1977
(12:01 A.M. Standard Time at the address of the Named Insured as stated herein.)

Item 3.  Coverage/Limits of Liability
This policy covers only with respect to those coverages indicated below, and shall
apply only as excess of the Underlying Limits and then only up to the amount of the
Excess Limits, shown below:

| COVERAGE | UNDERLYING LIMITS | PRUDENTIAL REINSURANCE EXCESS LIMITS |
|---|---|---|
| Excess Liability Including Architects and Engineers Errors and Omissions Coverage. | $5,000,000 each occurrence and annual aggregate as applicable, excess of various underlying primaries or Self Insured Retention. | $1,000,000 being 20% part of $5,000,000 each occurrence and annual aggregate excess of underlying limits. |

Item 4.  Premium:

A) Deposits:    $30,600.00

B) Annual Minimum:

Premium Basis:    Adjustable at rate of $.0405 per $1,000,000 Sales. [$1,000.]
Rate:

Item 5.  Schedule of Underlying Insurance:
Lloyds' London Policy CN35446 and Northbrook Insurance Company No. #63-002-045 and
various primary policies totalling underlying limits.

October 4, 1976
DATE

AUTHORIZED SIGNATURE

JJV:djm

GEC 025401

000304

XXX-001382

# EXHIBIT K32

000305

XXX-001383

00041  VOL. 9  TAB 4

# Prudential Reinsurance Company

HOME OFFICE:
213 Washington Street
Newark, New Jersey 07101

## Excess Liability Policy

Policy No.: __DIC DX 0250__

Prior No.: __New__

Broker: __Marsh & McLennan__
__1221 Avenue of the Americas__
__New York, NY 10020__

Code: __7½__

### DECLARATIONS

Item 1. Insured's Name and Address:

W. R. Grace & Company et al
Grace Plaza, 1114 Avenue of the Americas
New York, NY 10036

Item 2. Policy Period · From:  June 30, 1977       To:  June 30, 1978
(12:01 A.M. Standard Time at the address of the Named Insured as stated herein)

Item 3. Coverage/Limits of Liability.
This policy covers with respect to those coverages indicated below, and shall apply only as excess of the Underlying Limits and then only up to the amount of the PRUDENTIAL REINSURANCE EXCESS LIMITS shown below:

| COVERAGE | UNDERLYING LIMITS | PRUDENTIAL REINSURANCE EXCESS LIMITS |
|---|---|---|
| Excess Umbrella Liability | $10,000,000 each occurrence and annual aggregate where applicable, excess of various underlying primaries | $5,000,000 each occurrence and annual aggregate where applicable excess of underlying limits |

Item 4.   Premium:

A) Deposit:  $154,325.00                    B) Annual Minimum:

Premium Basis:  Flat charge
Rate:

Item 5.   Schedule of Underlying Insurance:
Lloyd's, London Umbrella Liability Policy No. (CN) 35446 and various excess and primary policies totaling underlying limits.

June 7, 1977

GEC 025731

WRG Policies
04228

000306

XXX-001384

00049

-2-

4. Policy Provision X, INSOLVENCY, is hereby added:

The insolvency or bankruptcy of the named insured shall not release the Company from the payment of damages for injury sustained or loss occasioned during the life of and within the coverage of the policy.

5. Policy Provision XI, UNSATISFIED JUDGMENTS, is hereby added:

If a judgment against the insured or his personal representative in an action brought to recover damages for an injury sustained or for loss or damage to property occasioned during the life of the policy shall remain unsatisfied at the expiration of 30 days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the Company, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against the Company under the terms of this policy for the amount of such judgment not exceeding the amount of the applicable limit of coverage under this policy.

Name of Insured **W. R. Grace & Company et.al**    Endorsement **#1**

Broker: **Marsh & McLennon** .    Effective Date  **6/7/77**

_(signature)_
Authorized Signature

GEC 025739

WRG Policies
04236

# EXHIBIT K33

000308

XXX-001386



*7 7 DD/o 31*
*Voc 9, TAE 5*

# Lloyd's Policy

**Whereas** the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called 'the Underwriters').

**Now We the Underwriters** hereby agree to insure against loss, damage or liability to the extent and in the manner hereinafter provided.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**Now know Ye** that We the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, after such loss, damage or liability is proved and the due proportion for which each of Us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this Policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE.
*General Manager*

GEC 025740

**J(A)** NMA 2002 (11.4.74)
Form approved by Lloyd's Underwriters' Non-Marine Association.
Printed by Lloyd's of London Printing Services Ltd.

FOR EMBOSSMENT
LLOYD'S
POLICY SIGNING
OFFICE
EMBOSSMENT
APPEARS HERE
ON ORIGINAL
DOCUMENT

WRG Policies
04237

XXX-001387

EXCESS UMBRELLA POLICY (LONDON 1971)

NAMED ASSURED: As stated in Item 1 of the Declarations forming a part hereof and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to Underwriters. (Hereinafter called the "Named Assured").

INSURING AGREEMENTS:

I.    COVERAGE –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:–

    (a)   imposed upon the Assured by law,

or (b)   assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:–

    (i)    Personal Injuries

    (ii)   Property Damage

    (iii)  Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Declarations and issued by the Insurers as specified thereunder (hereinafter called the "Underlying Umbrella Insurers").

II.   LIMIT OF LIABILITY –

It is expressly agreed that liability shall attach to the Underwriters only after the Under-lying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:–

    $ (as stated in Item 3     ultimate net loss in respect of each
      of the Declarations)      occurrence, but

    $ (as stated in Item 4
      of the Declarations)      in the aggregate for each annual
                        period during the currency of this

GEC 025743

WRG Policies
04240

000310

XXX-001388

and the Underwriters shall then be liable to pay only the excess thereof up to a further

$ (as stated in Item 5
of the Declarations)

ultimate net loss in all in respect of
each occurrence – subject to a limit
of

$ (as stated in Item 6
of the Declarations)

in the aggregate for each annual
period during the currency of this
Policy, separately in respect of
Products Liability and in respect of
Personal Injury (fatal or non-fatal)
by Occupational Disease sustained
by any employees of the Assured and
in respect of any other hazard subject
to an aggregate limit in the Underlying
Umbrella Policies.

## CONDITIONS:

1.    PRIOR INSURANCE AND NON CUMULATION OF LIABILITY  –

It is agreed that if any loss covered hereunder is also covered in whole or in part under
any other excess policy issued to the Assured prior to the inception date hereof the limit
of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by any
amounts due to the Assured on account of such loss under such prior insurance.

2.    MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE  –

This Policy is subject to the same terms, definitions, exclusions and conditions (except
as regards the premium, the amount and limits of liability and except as otherwise
provided herein) as are contained in or as may be added to the Underlying Umbrella
Policies stated in Item 2 of the Declarations prior to the happening of an occurrence
for which claim is made hereunder.    Should, however, any alteration be made in the
premium for the Underlying Umbrella Policies during the currency of this Policy Under-
writers reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained
in full effect during the Policy period without reduction of coverage or limits except
for any reduction of the aggregate limits contained therein solely by payment of claims
in respect of accidents and/or occurrences occurring during the period of this Policy or
by the operation of Condition C. of the Underlying Umbrella Policies.

3.    CANCELLATION  –

This Policy may be cancelled by the Named Assured or by the Underwriters or their
representatives by sending by registered mail notice to the other party stating when, not
less than sixty (60) days thereafter, cancellation shall be effective.    The mailing of

GEC 025744

WRG Policies
04241

000311

XXX-001389

## EXCESS UMBRELLA POLICY (LONDON 1971)

NAMED ASSURED: As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies
as now or hereafter constituted and of which prompt notice has been given to Underwriters.
(Hereinafter called the "Named Assured").

### INSURING AGREEMENTS:

I.  COVERAGE –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter
mentioned, to indemnify the Assured for all sums which the Assured shall be obligated
to pay by reason of the liability:–

    (a)   imposed upon the Assured by law,

or  (b)   assumed under contract or agreement by the Named Assured and/or any
          officer, director, stockholder, partner or employee of the Named Assured,
          while acting in his capacity as such,

for damages on account of:–

    (i)    Personal Injuries

    (ii)   Property Damage

    (iii)  Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and
arising out of the hazards covered by and as defined in the Underlying Umbrella Policies
stated in Item 2 of the Declarations and issued by the Insurers as specified thereunder
(hereinafter called the "Underlying Umbrella Insurers").

II.  LIMIT OF LIABILITY –

It is expressly agreed that liability shall attach to the Underwriters only after the Under-
lying Umbrella Insurers have paid or have been held liable to pay the full amount of their
respective ultimate net loss liability as follows:–

        $ (as stated in Item 3          ultimate net loss in respect of each
        of the Declarations)            occurrence, but

        $ (as stated in Item 4
                                        in the aggregate for each annual

GEC 025752

WRG Policies
04249

000312

XXX-001390

and the Underwriters shall then be liable to pay only the excess thereof up to a further

$ (as stated in Item 5 of the Declarations)  ultimate net loss in all in respect of each occurrence - subject to a limit of

$ (as stated in Item 6 of the Declarations)  in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured and in respect of any other hazard subject to an aggregate limit in the Underlying Umbrella Policies.

## CONDITIONS:

1.   PRIOR INSURANCE AND NON CUMULATION OF LIABILITY –

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

2.   MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE –

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder.   Should, however, any alteration be made in the premium for the Underlying Umbrella Policies during the currency of this Policy Underwriters reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the Policy period without reduction of coverage or limits except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of Condition C. of the Underlying Umbrella Policies.

3.   CANCELLATION –

This Policy may be cancelled by the Named Assured or by the Underwriters or their representatives by sending by registered mail notice to the other party stating when   not

GEC 025753

WRG Policies 04250

**C. T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers
**AMERICAN NON-MARINE DIVISION**

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

P.O. BOX 145.
THE BOWRING BUILDING.
TOWER PLACE.
LONDON. EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
LONDON EC3
TELEX: 882191.
Registered No. 76170 London

Please always
quote this No. **PY005277**

Date **16th August, 1977**

VAT No. 244 251779

In accordance with your instructions we have arranged cover as follows:

| | |
|---|---|
| **TYPE** | EXCESS UMBRELLA LIABILITY |
| **FORM** | Short Umbrella Excess Form as agreed by Underwriters. |
| **ASSURED** | W.R. GRACE AND CO ET AL AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES, OWNED CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED. |
| **PERIOD** | 12 months at 30th June 1977 |
| **INTEREST** | COVERAGE IN RESPECT OF ALL OF THE ASSURED'S OPERATIONS |
| **SUM INSURED** | 80% of $10,000,000 each occurrence (aggregate Products & O.D.) excess of<br>$15,000,000 each occurrence (aggregate Products & O.D.) which in turn excess of underlying as applicable |
| **CONDITIONS** | Seepage & Pollution Clauses as Underlying<br>Service of Suit Clause (U.S.A.)<br>4% Federal Exicse Tax (if applicable)<br>60 Days Cancellation Clause<br><br>Special conditions, warranties, clauses and exclusions to follow underlying umbrella. |
| **PREMIUM** | 80% of Minimum and Deposit $200,000 per annum adjustable at expiry at 0.048%o Gross Sales.<br><br>Less 4% Federal Tax |
| **INFORMATION** | As over |

Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C. T. BOWRING & CO. (INSURANCE) LTD.

Director

GEC 025759

WRG Policies
04256

Commission to you 10%

000314