# Bowring

**C.T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers
AMERICAN NON-MARINE DIVISION

P.O. BOX 145,   **TELEPHONE:** 01-283 3100

THE BOWRING BUILDING, **TELEGRAMS:** BOWINSUR
TOWER PLACE,     LONDON EC3
LONDON, EC3P 3BE  **TELEX:** 882191

(Registered Office)  Registered No. 76170 London

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

Please always
quote this No. **PY005277**

Date **16th August, 1977**

VAT No. 244 251779

In accordance with your instructions we have arranged cover as follows:

| | |
|---|---|
| **TYPE** | EXCESS UMBRELLA LIABILITY |
| **FORM** | Short Umbrella Excess Form as agreed by Underwriters. |
| **ASSURED** | W.R. GRACE AND CO ET AL AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES, OWNED CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED. |
| **PERIOD** | 12 months at 30th June 1977 |
| **INTEREST** | COVERAGE IN RESPECT OF ALL OF THE ASSURED'S OPERATIONS |
| **SUM INSURED** | 80% of $10,000,000 each occurrence (aggregate Products & O.D.) excess of $15,000,000 each occurrence (aggregate Products & O.D.) which in turn excess of underlying as applicable |
| **CONDITIONS** | Seepage & Pollution Clauses as Underlying<br>Service of Suit Clause (U.S.A.)<br>4% Federal Exicse Tax (if applicable)<br>60 Days Cancellation Clause<br><br>Special conditions, warranties, clauses and exclusions to follow underlying umbrella. |
| **PREMIUM** | 80% of Minimum and Deposit $200,000 per annum adjustable at expiry at 0.048% Gross Sales. |
| **INFORMATION** | As over |

Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

GEC 025761

*Director*

WRG Policies
04258

000315

XXX-001393

This endorsement, effective    30th June 1977                forms a part of

policy No.   5536339          Issued to    U.S. Grace and Company

by     Lexington Insurance Company
       Incorporated in the U.S.A. in 1965
       Liability of Shareholders Limited

It is hereby understood and agreed that Section 1 (c) Excess Insurance shall read
as follows:-

$914,400.00 being 11.43% of 80% of £10,000,000 each occurrence (aggregate
Products and Occupational Disease)

Excess of:

£15,000,000 each occurrence (aggregate Products and Occupational Disease)

which Is In Turn Excess Of:

Underlying Insurance.

All other terms and conditions remain unchanged.

Dated in London:  26th April, 1978.

1902301

K.J. Peacock
_____
Authorised Representative

GEC 025768

WRG Policies
04265

000316

XXX-001394



As used in this exclusion:

"hazardous properties" include radioactive, toxic or explosive properties;
"nuclear materials" means source material, special nuclear material or by-product material;
"source material", "special nuclear material" and "by-product material" have the meaning given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;
"spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation or a nuclear reactor;
"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included with the definition of nuclear facility under paragraph (a) or (b) thereof;
"nuclear facility" means
(a) any nuclear reactor;

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing the spent fuel, or (3) handling, processing or packaging waste, or

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;
"nuclear reactor" means any apparatus designed or used to sustain nuclear fission is a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

(c) to any liability of the Insured due to war, invasion, acts of foreign enemies, hostilities, (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction or damage to property by or under the order of any government or public or local authority.

## III   LIMITS OF LIABILITY

Regardless of the number of Insureds under this policy, persons or organizations who sustain injury or damage or claims made or suits brought covered hereby, the Company's limit of liability for loss excess of the Underlying Insurance shall be limited to the amount stated in Section I (c) of the Declarations as applicable to "each occurence" or "each claim"; provided, however, that the Company's liability shall be further limited to the amount stated in Section I (c) of the Declarations stated as "aggregate" with respect to loss excess of the Underlying Insurance which occurs during each annual period while this policy is in force.

## IV   INSURED'S DUTIES

The Insured named in the Declarations hereby agrees to promptly furnish the Company with a copy of the Underlying Policy and all endorsements thereto which in any way effect this excess insurance. Written notice of any loss likely to give rise to a claim hereunder shall be given to the Company by or on behalf of the Insured named in the Declarations containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances of the loss.

## V   SETTLEMENT AND DEFENSE

Anything in the Underlying Insurance to the contrary notwithstanding, the Company shall not be obligated to assume charge of the settlement or defense of any claim or suit brought or proceeding instituted against the Insured, but the Company, at its option but not being required to, shall have the right and be given the opportunity to associate with the Insured in the defense or control of any claim, suit or proceeding which appears reasonably likely to involve the Company, in which event the Insured and the Company shall cooperate in all things in the defense or control of such claim, suit or proceeding. In the event costs are incurred by the Company with respect to such claim, suit or proceeding the Company shall pay its incurred costs and such expenses incurred by the Insured with the approval of the Company.

## VI   MAINTENANCE OF UNDERLYING INSURANCE

Is a condition of this policy that the Underlying Insurance be maintained in full effect during the period of this policy except for reduction of any aggregate limit contained therein solely by payment of claims for losses which take place during the term of this cy. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in event of such failure, the Company shall only be liable to the same extent as it would have been had the Insured so maintained such Underlying Insurance except if the Underlying Policy or renewal thereof on the same basis is cancelled or expires without being renewed prior to the end of the policy period of this policy, as shown in the Declarations hereof, the effective date of termination of the Underlying Policy shall also be the end of the policy period of this policy.

GEC 025774

WRG Policies
04271

# EXHIBIT K34

**000318**

**XXX-001396**

LEXINGTON INSURANCE COMPANY
Wilmington, Delaware
(A Stock Insurance Company)
Administrative Offices: 100 Summer Street, Boston, Massachusetts

00976

IX, 6

| | | | |
|---|---|---|---|
| Named Insured | W.R. Grace and Company | Policy No.: | 55 63 59 |
| Address: | New York, New York. | Renewal of No.: | 55 34 95 |

## DECLARATIONS — FOLLOWING FORM EXCESS LIABILITY POLICY

### SECTION 1 — EXCESS INSURANCE

(a) Policy Period:  12 months
   From:  30th June 1977        To:  30th June 1978
   12:01 a.m. Standard Time at the Address of the Insured stated herein.

(b) Coverage:  Excess Umbrella Liability

(c) Limits of Liability:  As per endorsement one

(d) Premium:  $18,288.00
   Minimum Premium: $18,288.00        Rating Base: Gross Sales   Rate: 11.93 of 50% of
   Audit Period:  At anniversary                                      $.048/1000

### SECTION 2 — UNDERLYING INSURANCE

(a) Underlying Policy:  Northbrook        Coverage:        Umbrella Liability
                        Insurance Company
   Policy No.:  To be advised
   Policy Limit: $1,000,000
   Policy Period: To be advised

(b) Total limits of all underlying insurance including the underlying policy in excess of which this policy
   applies:  As per endorsement one

Endorsements Made Part of this Policy:  No.1.

Countersigned On:  26th April, 1978.
at Boston, Massachusetts 02110
   London, England.                          By: _____
                                                  Authorized Representative
                                                  E.J. Peacock.

GEC 025776

WRG Policies
04273

000319

XXX-001397

This endorsement, give   20th June 1977            forms a part of
policy No.   S506339            Issued to      W.R. Grace and Company

                                                              00987
by      Lexington Insurance Company
        Incorporated in the U.S.A. in 1965
        Liability of Shareholders Limited

It is hereby understood and agreed that Section 1 (c) Excess Insurance shall read
as follows:-

$914,400.00 being 11.43% of 80% of $10,000,000 each occurrence (aggregate
Products and Occupational Disease)

Excess of:

$15,000,000 each occurrence (aggregate Products and Occupational Disease)

Which Is In Turn Excess Of:

Underlying Insurance.


All other terms and conditions remain unchanged.



Dated in London:  26th April, 1978.




1902301                                     Authorised Representative
                              K.J. Peacock

GEC 025781

WRG Policies
04278


000320

XXX-001398

00983



As used in this exclusion:

"hazardous properties" include radioactive, toxic or explosive properties;.

"nuclear materials" means source material, special nuclear material or by-product material;

"source material", "special nuclear material" and "by-product material have the meaning given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation or a nuclear reactor;

"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included with the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor;

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing the spent fuel, or (3) handling, processing or packaging waste, or

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission is a self-supporting chain reaction or to contain a critical mass of fissionable material:

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

(c) to any liability of the Insured due to war, invasion, acts of foreign enemies, hostilities, (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction or damage to property by or under the order of any government or public or local authority.

### III  LIMITS OF LIABILITY

Regardless of the number of insureds under this policy, persons or organizations who sustain injury or damage or claims made or suits brought covered hereby, the Company's limit of liability for loss excess of the Underlying Insurance shall be limited to the amount stated in Section I (c) of the Declarations as applicable to "each occurrence" or "each claim"; provided, however, that the Company's liability shall be further limited to the amount stated in Section I (c) of the Declarations stated as "aggregate" with respect to loss excess of the Underlying Insurance which occurs during each annual period while this policy is in force.

### IV  INSURED'S DUTIES

The Insured named in the Declarations hereby agrees to promptly furnish the Company with a copy of the Underlying Policy and all endorsements thereto which in any way effect this excess insurance. Written notice of any loss likely to give rise to a claim hereunder shall be given to the Company by or on behalf of the Insured named in the Declarations containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances of the loss.

### V  SETTLEMENT AND DEFENSE

Anything in the Underlying Insurance to the contrary notwithstanding, the Company shall not be obligated to assume charge of the settlement or defense of any claim or suit brought or proceeding instituted against the Insured, but the Company, at its option but not being required to, shall have the right and be given the opportunity to associate with the Insured in the defense or control of any claim, suit or proceeding which appears reasonably likely to involve the Company, in which event the Insured and the Company shall cooperate in all things in the defense or control of such claim, suit or proceeding. In the event costs are incurred by the Company with respect to such claim, suit or proceeding the Company shall pay its incurred costs and such expenses incurred by the Insured with the approval of the Company.

### VI  MAINTENANCE OF UNDERLYING INSURANCE

It is a condition of this policy that the Underlying Insurance be maintained in full effect during the period of this policy except for reduction of any aggregate limit contained therein solely by payment of claims for losses which take place during the term of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in event of such failure, the Company shall only be liable to the same extent as it would have been had the Insured so maintained such Underlying Insurance except if the Underlying Policy or renewal thereof on the same basis is cancelled or expires without being renewed prior to the end of the policy period of this policy, as shown in the Declarations hereof, the effective date of termination of the Underlying Policy shall also be the end of the policy period of this policy.

GEC 025783

WRG Policies
04280

000321

XXX-001399

# EXHIBIT K35

**000322**

**XXX-001400**

09985                    VOL 9   TAB 7

# Prudential Reinsurance Company

## Excess Liability Policy

Policy No.: DIE DX 0251

Prior No.: New

Broker: Marsh & McLennan
1221 Avenue of the Americas
New York, NY 10020
Code: 7½

HOME OFFICE.
213 Washington Street
Newark, New Jersey 07101

## DECLARATIONS

Item 1. Insured's Name and Address:

W. R. Grace & Company et al
Grace Plaza, 1114 Avenue of the Americas
New York, NY 10036

Item 2. Policy Period - From:  June 30, 1977      To:  June 30, 1978
(12:01 A.M. Standard Time at the address of the Named Insured as stated herein)

Item 3. Coverage/Limits of Liability:
This policy covers with respect to those coverages indicated below, and shall apply only as excess of the Underlying Limits and then only up to the amount of the PRUDENTIAL REINSURANCE EXCESS LIMITS shown below:

| COVERAGE | UNDERLYING LIMITS | PRUDENTIAL REINSURANCE EXCESS LIMITS |
|---|---|---|
| Excess Umbrella Liability | $15,000,000 each occurrence and annual aggregate where applicable, excess of various underlying primaries | $2,000,000 being 20% part of $10,000,000 each occurrence and annual aggregate where applicable excess of underlying limits |

Item 4.   Premium:

A) Deposit.   $40,000                    B) Annual Minimum:

Premium Basis:  Flat charge
Rate:

Item 5.   Schedule of Underlying Insurance:

Lloyd's, London Umbrella Liability Policy No. (CX) 35446 and various excess and primary policies totaling underlying limits.

June 7, 1977

GEC 025785

WRG Policies
04282

000323

XXX-001401

# EXHIBIT K36

**000324**

**XXX-001402**

VOL. X TAB-5

# Lloyd's Policy

A/C: W.R.GRACE AND CO.



J(A)

Lloyd's, London

GEC 026137

WRG Policies
04626

A-3202

000325

XXX-001403

C. T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers
AMERICAN NON-MARINE DIVISION

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

P.O. BOX 145,                    TELEPHONE: 01-283 3100
THE BOWRING BUILDING,            TELEGRAMS: BOWINSUR
TOWER PLACE,                                LONDON EC3
LONDON, EC2P 3BE                 TELEX: 882191
(Registered Office)              Registered No. 78170 London

Please always    PY071475
quote this No.

Date    24th July, 1972

VAT No. 244 251 79

In accordance with your instructions we have arranged cover as follows:

**TYPE**        EXCESS UMBRELLA LIABILITY.

**FORM**        SHORT UMBRELLA EXCESS FORM TO BE AGREED BY UNDERWRITERS

**ASSURED**     W.R.GRACE AND CO. ET AL AND/OR SUBSIDIARY, ASSOCIATED,
                AFFILIATED COMPANIES, OWNED CONTROLLED AND/OR MANAGED AS NOW OR
                HEREINAFTER CONSTITUED.

**PERIOD**      12 MONTHS AT 30TH JUNE, 1972.

**INTEREST**    COVERAGE IN RESPECT OF ALL THE ASSURED'S OPERATIONS.

**SUM INSURED** 60% of
                $15,000,000 EACH OCCURRENCE (AGGREGATE PRODUCTS AND
                OCCUPATIONAL DISEASE)
                EXCESS OF
                $10,000,000 EACH OCCURRENCE (AGGREGATES PRODUCTS AND
                OCCUPATIONAL DISEASE)
                WHICH IN TURN EXCESS OF UNDERLYING AS APPLICABLE.

**SITUATION**

**CONDITIONS**  SEEPAGE AND POLLUTION CLAUSES AS UNDERLYING.
                SERVICE OF SUIT CLAUSE (U.S.A.)
                4% TAX CLAUSE (IF APPLICABLE).
                60 DAYS CANCELLATION CLAUSE.

                SPECIAL CONDITIONS, WARRANTIES, CLAUSES AND EXCLUSIONS TO
                FOLLOW UNDERLYING UMBRELLA.

**PREMIUM**     60% OF MINIMUM & DEPOSIT $364,000 ADJUSTABLE AT 8.2¢%o GROSS
                SALES

                Less 4% FEDERAL EXCISE TAX

**INFORMATION** As over

For the Attention of: Messrs. M. Gould/T. Massalla/T. Clarke,
Marsh & McLennan, Inc,                          C.T. BOWRING & CO. (INSURANCE) LTD.
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.
Commission to you 10%

GEC 026138

WRG Policies
04627

A-3203

000326

XXX-001404

**C. T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers
AMERICAN NON-MARINE DIVISION

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON, EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
                        LONDON EC3
TELEX: 882191
Registered No. 76170 London

Please always
quote this No. _____ PY071478
Date _____
24th July, 1978
VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

| | |
|---|---|
| **TYPE** | EXCESS UMBRELLA LIABILITY. |
| **FORM** | SHORT UMBRELLA EXCESS FORM TO BE AGREED BY UNDERWRITERS |
| **ASSURED** | W.R.GRACE AND CO. ET AL AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES, OWNED CONTROLLED AND/OR MANAGED AS NOW OR HEREINAFTER CONSTITUED. |
| **PERIOD** | 12 MONTHS AT 30TH JUNE, 1978. |
| **INTEREST** | COVERAGE IN RESPECT OF ALL THE ASSURED'S OPERATIONS. |
| **SUM INSURED** | 60% of<br>$15,000,000 EACH OCCURRENCE (AGGREGATE PRODUCTS AND OCCUPATIONAL DISEASE)<br>EXCESS OF<br>$10,000,000 EACH OCCURRENCE (AGGREGATES PRODUCTS AND OCCUPATIONAL DISEASE)<br>WHICH IN TURN EXCESS OF UNDERLYING AS APPLICABLE. |
| **SITUATION** | |
| **CONDITIONS** | SEEPAGE AND POLLUTION CLAUSES AS UNDERLYING.<br>SERVICE OF SUIT CLAUSE (U.S.A.)<br>4% TAX CLAUSE (IF APPLICABLE).<br>60 DAYS CANCELLATION CLAUSE.<br><br>SPECIAL CONDITIONS, WARRANTIES, CLAUSES AND EXCLUSIONS TO FOLLOW UNDERLYING UMBRELLA. |
| **PREMIUM** | 60% OF MINIMUM & DEPOSIT $364,000 ADJUSTABLE AT 8.20%/o GROSS SALES |
| **INFORMATION** | As over |

For the Attention of: Messrs. M. Gould/F. Nassalla/T. Clarke,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C. T. BOWRING & CO. (INSURANCE) LTD.

Direc:

GEC 026140

WRG Policies
04629

A-3205

As used in this exclusion:

"hazardous properties" include radioactive, toxic or explosive properties;;

"nuclear materials" means source material, special nuclear material or by-product material;

"source material", "special nuclear material" and "by-product material" have the meaning given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation or a nuclear reactor;

"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included with the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor;

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing the spent fuel, or (3) handling, processing or packaging waste, or

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

(c) to any liability of the insured due to war, invasion, acts of foreign enemies, hostilities, (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction or damage to property by or under the order of any government or public or local authority.

### III  LIMITS OF LIABILITY

Regardless of the number of insureds under this policy, persons or organizations who sustain injury or damage or claims made or suits brought covered hereby, the Company's limit of liability for loss excess of the Underlying Insurance shall be limited to the amount stated in Section I (c) of the Declarations as applicable to "each occurrence" or "each claim"; provided, however, that the Company's liability shall be further limited to the amount stated in Section I (c) of the Declarations stated as "aggregate" with respect to loss excess of the Underlying Insurance which occurs during each annual period while this policy is in force.

### IV  INSURED'S DUTIES

The Insured named in the Declarations hereby agrees to promptly furnish the Company with a copy of the Underlying Policy and all endorsements thereto which in any way effect this excess insurance. Written notice of any loss likely to give rise to a claim hereunder shall be given to the Company by or on behalf of the Insured named in the Declarations containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances of the loss.

### V  SETTLEMENT AND DEFENSE

Anything in the Underlying Insurance to the contrary notwithstanding, the Company shall not be obligated to assume charge of the settlement or defense of any claim or suit brought or proceeding instituted against the Insured, but the Company, at its option but not being required to, shall have the right and be given the opportunity to associate with the Insured in the defense or control of any claim, suit or proceeding which appears reasonably likely to involve the Company, in which event the Insured and the Company shall cooperate in all things in the defense or control of such claim, suit or proceeding. In the event costs are incurred by the Company with respect to such claim, suit or proceeding the Company shall pay its incurred costs and such expenses incurred by the Insured with the approval of the Company.

### VI  MAINTENANCE OF UNDERLYING INSURANCE

It is a condition of this policy that the Underlying Insurance be maintained in full effect during the period of this policy except for the reduction of any aggregate limit contained therein solely by payment of claims for losses which take place during the term of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in event of such failure, the Company shall only be liable to the same extent as it would have been had the Insured so maintained such Underlying Insurance except if the Underlying Policy are renewed thereof on the same basis ir cancelled or expires without being renewed prior to the end of the policy period of this policy, as shown in the Declarations hereof, the effective date of termination of the Underlying Policy shall also be the end of the policy period of this policy.

GEC 026144

WRG Policies
04633

A~3209

(A Stock Insurance Company)
Administrative Offices: 100 Summer Street, Boston, Massachusetts
Incorporated in the U.S.A. in 1965
Liability of Shareholders Limited

Named Insured:  W.R. Grace and Company          Policy No. : ~~5513446~~

Address:        New York                          Renewal of No.: ~~5506399~~

## DECLARATIONS — FOLLOWING FORM EXCESS LIABILITY POLICY

---

### SECTION I — EXCESS INSURANCE

(a) Policy Period: From:  30th June, 1978          To: 30th June, 1979
    (at 12.01 a.m. Standard Time      at the address of the Insured stated herein)

(b) Coverage:  Excess Umbrella Liability

(c) Limits of Liability: $773,100 being 8.59% of 60% of $15,000,000 each occurrence
                         and in the aggregate for Products and Occupational Disease

(d) Premium:   Deposit: $18,760.56     Exposure Type  :  Gross Sales
    Premium    Minimum: $18,760.56     Adjustable Rate:  8.59% of 60% of
                                                         $.082 per $1000
                                       Audit Period   :  At Expiry

---

### SECTION II — UNDERLYING INSURANCE

(a) Underlying Policy No:  To be advised

    Issued By: Various Insurance Companies

    Covering:  Umbrella Liability

    Limits of Liability: $5,000,000

    Period: 30th June, 1978     To:      30th June, 1979

(b) Total limits of all underlying insurance including the underlying policy in excess of which
    this policy applies: $10,000,000 each occurrence and in the aggregate for
                         Products and Occupational Disease which in turn Excess of
                         Underlyings as applicable.

---

Endorsements Made Part of this Policy:


. Countersigned in London, England.

  on                                          By
       11th August, 1978                         K. ...  Authorised Representative

                    ┌─────────────────┐          WRG Policies
                    GEC 026146                        04635
                                                   A-3211

000329

XXX-001407

ATTACHING TO AND FORMING PART OF POLICY No. 78DD1417C

DECLARATION

ITEM 1.  (a)  Named Assured:-  W.R.GRACE & CO. and/or Subsidiary, Associated
                                Affiliated Companies Owned Controlled and/or Managed Companies
                                or hereinafter constituted

         (b)  Address or Named Assured:-  1114 Avenue of the Americas,
                                          New York,
                                          N.Y.10036.

ITEM 2.  (a)  Underlying Umbrella Policies:-  76DD1595.

         (b)  Underlying Umbrella Insurers:-

                 Lloyds of London & Various Insurance Companies

ITEM 3.  Underlying Umbrella Limits
         (Insuring Agreement II):-                            $ 10,000,000

ITEM 4.  Underlying Umbrella Aggregate Limits
         (Insuring Agreement II):-                            $ 10,000,000

ITEM 5.  Limit of Liability
         (Insuring Agreement II):-                            $ 15,000,000

ITEM 6.  Aggregate Limit of Liability
         (Insuring Agreement II):-                            $ 15,000,000

ITEM 7.  Policy Period:-
             30th June 1978 to 30th June 1979
             both days at 12.01 A.M.Local Standard Time.

ITEM 8.  Notice of Occurrence (Condition 4) to:-
             Marsh & McLennan.Inc.,
             1221 Avenue of the Americas,
             New York,
             N.Y.10020. U.S.A.

ITEM 9:  Service of Process (Condition 6) upon:-
             Messrs Mendes & Mount.
             3 Park Avenue,
             New York,
             N.Y.10016. U.S.A.

GEC 026153

WRG Policies
04642
A-3218

000330

XXX-001408

Date...25th.September.1979.....

Policy No. .7BDD1417C..............

# THE SCHEDULE

The Insured
W.R.GRACE AND CO.AND/OR SUBSIDIARY,ASSOCIATED,AFFILIATED COMPANIES,OWNED
CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED,
1114 Avenue of the Americas,
New York, N.Y.10036.

Premium     U.S.$5,634.72.

Sum Insured   2.58% of 60% of $15,000,000 each occurrence (Aggregate Products and
              Occupational Disease)
              excess of
              $10,000,000 each occurrence (Aggregate Products and Occupational Disea
              which in turn excess of Underlying as applicable.

The Interest Insured
              Coverage in respect of All The Assureds Operations.

     U.S.A.

                            4% TAX CLAUSE

          Notice is hereby given that the Underwriters have agreed to allow for the purpose of paying the Federal Excise Tax
     4% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

          It is understood and agreed that in the event of any return of premium becoming due hereunder the Underwriters
     will deduct 4% from the amount of the return and the Assured or his agent should take steps to recover the Tax from
     the U.S. Government.

     10/5/66
     N.M.A. 1546

Insured Perils   Excess Umbrella Liability

Period of Insurance

From   30th June 1978              To   30th June 1979
       both days at 12.01 A.M.Local Standard Time.
and for such further period or periods as may be mutually agreed.

## COINSURANCE CLAUSE

     It is warranted that this Policy shall run concurrently with and be subject to the same terms
provisions, and limitations as are contained in Policy No. 7BDD1417C
issued by Lloyds of London and Various British Companies covering the identical subjec
matter and risk.

DJB/sc

GEC 026158

WRG Policies
04647
A-32__

000331

XXX-001409

and the Underwriters shall then be liable to pay only the excess thereof up to a further

S (as stated in Item 5
of the Declarations)

ultimate net loss in all in respect of
each occurrence – subject to a limit
of

S (as stated in Item 6
of the Declarations)

in the aggregate for each annual
period during the currency of this
Policy, separately in respect of
Products Liability and in respect of
Personal Injury (fatal or non-fatal)
by Occupational Disease sustained
by any employees of the Assured and
in respect of any other hazard subject
to an aggregate limit in the Underlying
Umbrella Policies.

## CONDITIONS:

1.    PRIOR INSURANCE AND NON CUMULATION OF LIABILITY :-

It is agreed that if any loss covered hereunder is also covered in whole or in part under
any other excess policy issued to the Assured prior to the inception date hereof the limit
of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by any
amounts due to the Assured on account of such loss under such prior insurance.

2.    MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE  -

This Policy is subject to the same terms, definitions, exclusions and conditions (except
as regards the premium, the amount and limits of liability and except as otherwise
provided herein) as are contained in or as may be added to the Underlying Umbrella
Policies stated in Item 2 of the Declarations prior to the happening of an occurrence
for which claim is made hereunder.   Should, however, any alteration be made in the
premium for the Underlying Umbrella Policies during the currency of this Policy Under-
writers reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained
in full effect during the Policy period without reduction of coverage or limits except
for any reduction of the aggregate limits contained therein solely by payment of claims
in respect of accidents and/or occurrences occurring during the period of this Policy or
by the operation of Condition C. of the Underlying Umbrella Policies.

3.    CANCELLATION -

This Policy may be cancelled by the Named Assured or by the Underwriters or their
representatives by sending by registered mail notice to the

GEC 026166

WRG Policies
04655

A-3231

000332

XXX-001410

ATTACHING TO AND FORMING PART OF POLICY No. 78DD1417C

DECLARATIONS

ITEM 1.  (a)  Named Assured:-        W.R.GRACE & CO. and/or Subsidiary,Associate
                Affiliated Companies Owned Controlled and/or Managed Companies
                or hereinafter constituted
         (b)  Address of Named Assured:-  1114 Avenue of the Americas,
                                          New York,
                                          N.Y.10038.

ITEM 2.  (a)  Underlying Umbrella Policies:-1.76DD1594C
                                            2.Not Known

         (b)  Underlying Umbrella Insurers:-

                Lloyds of London & Various Insurance Companies


ITEM 3.  Underlying Umbrella Limits
         (Insuring Agreement II):-                          $ 10,000,000


ITEM 4.  Underlying Umbrella Aggregate Limits
         (Insuring Agreement II):-                          $ 10,000,000


ITEM 5.  Limit of Liability
         (Insuring Agreement II):-                          $ 15,000,000


ITEM 6.  Aggregate Limit of Liability
         (Insuring Agreement II):-                          $ 15,000,000


ITEM 7.  Policy Period:-
                30th June 1978 to 30th June 1979
                both days at 12.01 A.M.Local Standard Time.
ITEM 8.  Notice of Occurrence (Condition 4) to:-

                Marsh & McLennan.Inc.,
                1221 Avenue of the Americas,
                New York,
                N.Y.10020. U.S.A.
ITEM 9:  Service of Process (Condition 6) upon:-

                Messrs Mendes & Mount.
                3 Park Avenue,
                New York,
                N.Y.10016. U.S.A.


GEC 026168

WRG Policies
04657

A-3233

# EXHIBIT K37

**000334**

**XXX-001412**

Wilmington, Delaware
(A Stock Insurance Company)
Administrative Offices: 100 Summer Street, Boston, Massachusetts
Incorporated in the U.S.A. in 1965
Liability of Shareholders Limited

X,5

01248

Named Insured: W.R. Grace and Company          Policy No. : 5519442

Address:        New York                       Renewal of No.: 5506339

### DECLARATIONS – FOLLOWING FORM EXCESS LIABILITY POLICY

#### SECTION I – EXCESS INSURANCE

(a)  Policy Period; From:  30th June, 1978          To: 30th June, 1979
     (at 12.01 a.m. Standard Time       at the address of the Insured stated herein)

(b)  Coverage:  Excess Umbrella Liability

(c)  Limits of Liability: $773,100 being 8.59% of 60% of $15,000,000 each occurrence
     and in the aggregate for Products and Occupational Disease

(d)  Premium:   Deposit: $18,760.56      Exposure Type :  Gross Sales
     Premium    Minimum: $18,760.56      Adjustable Rate: 8.59% of 60% of
                                         $.082 per $1000
                                         Audit Period :  At Expiry

#### SECTION II – UNDERLYING INSURANCE

(a)  Underlying Policy No:  To be advised

     Issued By: Various Insurance Companies

     Covering: Umbrella Liability

     Limits of Liability: $5,000,000

     Period: 30th June, 1978       To:        30th June, 1979

(b)  Total limits of all underlying insurance including the underlying policy in excess of which
     this policy applies: $10,000,000 each occurrence and in the aggregate for
                           Products and Occupational Disease which in turn Excess of
                           Underlyings as applicable.

Endorsements Made Part of this Policy:

GEC 026179

Countersigned in London, England.

on       11th August, 1978          By   K. Authorised Representative

WRG Policies
04668

000335

XXX-001413

# EXHIBIT K38

**000336**

**XXX-001414**

01258    X TAB

RENEWS

NUMBER
617C-5491

Member Of
NEW HAMPSHIRE

# ☐ GRANITE STATE INSURANCE COMPANY
# ☐ NEW HAMPSHIRE INSURANCE COMPANY
## MANCHESTER, NEW HAMPSHIRE
# C. V. STARR & CO.
### UNDERWRITING MANAGERS

SAN FRANCISCO    SEATTLE    LOS ANGELES    PORTLAND    CHICAGO

## DECLARATIONS

1. Assured:    W.R. GRACE & CO., ET AL
AS MORE FULLY DESCRIBED IN UNDERLYING POLICY/IES

   Address:    1114 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036

2. Policy Period: From   JUNE 30, 1978 TO JUNE 30, 1979
both days at   12:01 A.M.   (Standard Time) at the location(s) of the risk(s) insured and in accord with the terms and conditions of the form(s) attached.

3. Amount:    $ 5,000,000. PART OF
$15,000,000. EXCESS OF
$10,000,000.

4. Coverage:    EXCESS UMBRELLA LIABILITY

Premium: A) Provisional or deposit premium   $   121,333.00

   B) Minimum Premium   $   121,333.00

   C) Basis of Adjustment (Rate)   PRO RATA OF $0.082 OF $1,000. GROSS REVENUES

   D) Audit Period   ANNUAL

Assignment of this Policy shall not be valid except with the written consent of this Company.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such other provisions, stipulations, and agreements as may be added hereto, as provided in this Policy.

Unless otherwise provided herein, this Policy may be cancelled on the customary short rate basis by the Assured at any time by written notice or by surrender of this Policy to the Company. This Policy may also be cancelled, with or without the return or tender of the unearned premium, by the Company or by the Underwriting Managers in its behalf, by delivering to the Assured or by sending to the Assured by regular mail, at the Assured's address as shown herein, not less than 30 days written notice stating when the cancellation shall be effective, and in such case Insurers shall refund the paid premium less the earned portion thereof on demand, subject always to the retention by Insurers hereon of any minimum premium stipulated herein (or proportion thereof previously agreed upon) in the event of cancellation either by Insurers or Assured.

Not withstanding anything to the contrary contained herein and in consideration of the premium for which this insurance is written, it is understood and agreed that whenever an additional or return premium of $10.00 or less becomes due from or to the Assured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be made, as the case may be.

In Witness Whereof, the Company has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company.

*Secretary*
JG. 23, 1979 DW/SS/CM-54A

*C. V. STARR & CO.*
*UNDERWRITING MANAGERS*
President

Countersigned
CVS 1114

By _____

BROKER'S COPY

GEC 026189

WRG Policies
04677

A-2284

EXCESS UMBRELLA POLICY                                01259

Named Assured: As stated in Item 1 of the Declarations forming a part hereof.

and/or subsidiary, associate, affiliated companies or owned and controlled companies as now or hereafter constituted and of
which prompt notice has been given to the Company.

## SCHEDULE

ITEM 1.  NAMED ASSURED        W.R. GRACE & CO., ET AL
ITEM 2.  Underlying Umbrella Policies:  UNDERWRITERS AT LLOYD'S, LONDON AND/OR VARIOUS
ITEM 3.  Underlying Umbrella limits      BRITISH COMPANIES
         (Insuring Agreement II):      $10,000,000.
ITEM 4.  Underlying Umbrella Aggregate Limits
         (Insuring Agreement II):      $10,000,000.
ITEM 5.  Limit of Liability
         (Insuring Agreement II):      $ 5,000,000. PART OF $15,000,000.
ITEM 6.  Aggregate Limit of Liability
         (Insuring Agreement II):      $ 5,000,000. PART OF $15,000,000.
ITEM 7.  Notice of Occurrence (Conditions 4) to: C.V. Starr & Co.  THREE EMBARCADERO CENTER
                                         SAN FRANCISCO, CA  94111

## INSURING AGREEMENTS

### I. COVERAGE

The Company hereby agrees, subject to the limitations, terms
and conditions hereinafter mentioned, to indemnify the Assured
for all sums which the Assured shall be obligated to pay by reason
of the liability

(a) imposed upon the Assured by law,

(b) assumed under contract or agreement by the Named As-
sured and/or any officer, director, stockholder, partner or
employee of the Named Assured while acting in his capa-
city as such,

for damages, direct or consequential and expenses on account of:

(i) Personal injuries, including death at any time resulting
therefrom,

(ii) Property damage,

(iii) Advertising liability,

caused by or arising out of each occurrence happening anywhere in
the World, and arising out of the hazards covered by and as defined
in the Underlying Umbrella Policies stated in Item 2 of the Decla-
rations, (hereinafter called the "Underlying Umbrella Insurers").

### II. LIMIT OF LIABILITY - UNDERLYING LIMITS

It is expressly agreed that liability shall attach to the Company
only after the Underlying Umbrella Insurers have paid or have
been held liable to pay the full amount of their respective ultimate
net loss liability as follows:-

$  (as stated in Item 3     Ultimate net loss in respect of each
   of the Declarations)     occurrence, but

$  (as stated in Item 4     in the aggregate for each annual pe-
   of the Declarations)     riod during the currency of this
                            Policy separately in respect of
                            Products Liability and separately in
                            respect of Personal Injury (fatal or
                            non-fatal) by Occupational Disease
                            sustained by any employees of the
                            Assured.

and the Company shall then be liable to pay only the excess there-
of up to a further

$  (as stated in Item 5     ultimate net loss in all in respect of
   of the Declarations)     each occurrence subject to a limit of

$  (as stated in Item 6     in the aggregate for each annual per-
   of the Declarations)     iod during the currency of this Poli-
                            cy separately, in respect of Prod-
                            ucts Liability and separately in re-
                            spect of Personal Injury (fatal or
                            non-fatal) by Occupational Disease
                            sustained by any employees of the
                            Assured.

Attached to and forming part of Policy No.  6178-0491

Issued to:  W.R. GRACE & CO., ET AL

d:  AUG. 23, 1976 OW/SS/CW-61

22310  Rev. 1-78

☐ GRANITE STATE INSURANCE COMPANY

☐ NEW HAMPSHIRE INSURANCE COMPANY

C.V. STARR & COMPANY
Underwriting Managers

By.................................................................

GEC 026191

WRG Policies
04679

A-2285

000338

XXX-001416

# EXHIBIT K39

000339

XXX-001417

*X Tab 9*

01266

## UMBRELLA EXCESS LIABILITY POLICY

### ISSUED BY

*Insurance Stockholder Co.*

GERLING KONZERN, VERSICHERUNGS-AKTIENGESELLSCHAFT, KOELN

HEREINAFTER REFERRED TO AS "UNDERWRITERS"

POLICY NUMBER    01/49/99/6282

DECLARATIONS

ITEM 1.    NAME OF INSURED:    W.R. GRACE & COMPANY

ITEM 2.    ADDRESS:    1114 Avenue of the Americas
USA – New York, N.Y. 10038

ITEM 3.    POLICY PERIOD:    COMMENCING ON: June 30, 1978
AT 12:01 A.M. STANDARD TIME

ENDING ON:    June 30, 1979
AT 12:01 A.M. STANDARD TIME

ITEM 4.    COVERAGE:    PER FORM AND ENDORSEMENTS ATTACHED/
SUBMITTED

ITEM 5.    PREMIUM:    $  24'266 m+d adjustable at .082 per
$ 1000 sales

ITEM 6.    LIMIT OF
LIABILITY

UNDERWRITERS SHALL BE LIABLE TO PAY
FOR ONLY THE EXCESS OF LOSS OVER
$  10'000'000.–      IN ANY ONE LOSS
OR SERIES OF LOSSES ARISING OUT OF
ONE OCCURENCE AND THEN NOT MORE THAN
$  1'000'000.–      PART OF
$  15'000'000.–      ULTIMATE NET LOSS
IN RESPECT OF ANY ONE LOSS OR SERIES
OF LOSSES ARISING OUT OF ONE OCCURENCE.

GERLING - KONZERN
GEMEINE VERSICHERUNGS-AKTIENGES
DIREKTION FÜR DIE SCHWEIZ

Zurich,

DATE:    19. Juni 1978

GEC 026197

WRG Policies
04685

000340

XXX-001418

# EXHIBIT K40

000341

XXX-001419

VOL IX, TAB 1

01539

No. TGR 1029

**Whereas** W.R. GRACE AND COMPANY (as more fully described in item 1 (a) of the declarations herein) of 1114 Avenue of the Americas, New York, N.Y. 10036 hereinafter called the Assured, have paid U.S.$444,000.00 Premium or Consideration to Us, the undersigned Assurers to indemnify the Assured in respect of UMBRELLA LIABILITY as per wording attached hereto.

100% of 80% of the limits stated herein

during the period commencing at **Thirtieth** day of **June,** 19 79 , and ending at **Thirtieth** day of **June,** 19 82 .

Both days at 12.01 a.m. Local Standard Time

**Now know ye** that we the undersigned Assurers do hereby bind ourselves each **Company** for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors, Administrators and Assigns, all such loss as above stated, not exceeding ONE HUNDRED PER CENT of EIGHTY PER CENT of the limits stated herein,

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that in proportion to the several sums by each of us subscribed against our respective names not exceeding the several sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

**In witness whereof** I being a representative of the Leading Office which is duly authorised by the Assurers have hereunto subscribed my name on their behalf this **25d** day of **November** 19 80

DIRECTOR

M. S. WEAVERS (UNDERWRITING AGENCIES LT)

GEC 026497

WRG Policies
04159
5

000342

XXX-001420

01546

ATTACHING TO AND FORMING PART OF POLICY No. 79DD1633C

### DECLARATIONS:

ITEM 1.  (a)  Named Assured:—

W.R. GRACE & CO. and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted

(b)  Address of Named Assured:—

1114 Avenue of the Americas, New York, N.Y. 10036

ITEM 2.  Limit of Liability – as Insuring Agreement 11 :—

(a)  Limit in all in respect of each occurrence          U.S.$ 5,000,000

(b)  Limit in the aggregate for each annual period where applicable          U.S.$ 5,000,000

ITEM 3.  Policy Period:—    30th June, 1979 to 30th June, 1982 (both days at 12.01 a.m. Local Standard Time)

ITEM 4.  Notice of Occurrence (Condition G) to:—
Marsh & McLennan, Incorporated, 1221 Avenue of the Americas, New York, N.Y. 10020.

ITEM 5.  Currency (Condition Q):—
United States Dollars

ITEM 6.  Payment of Premium (Condition Q) to:—
Marsh & McLennan, Incorporated, 1221 Avenue of the Americas, New York, N.Y. 10020.

ITEM 7.  Service of Process (Condition S) upon:—
Messrs. Mendes and Mount, 3, Park Avenue, New York, N.Y. 10016, U.S.A.

L.P.O.354B (8/76)                                             Page 11 of 11

GEC 026504

WRG Policies
04166

000343

XXX-001421

01547

Attaching to and forming part of Policy No.7MB01623C
Issued to      W.R.GRACE & CO.

SCHEDULE OF UNDERLYING INSURANCES

COVERAGE

I.DOMESTIC GENERAL LIABILITY AND AUTOMOBILE LIABILITY.

| | LIMIT | CARRIER |
|---|---|---|
| * A) General Liability Products Liability | | |
| Bodily Injury | $1,000,000 Each Occurrence | C.N.A.of Illinois. |
| | $2,000,000 Aggregate Products Liability only | |
| Property Damage | $1,000,000 Each Occurrence | C.N.A.of Illinois. |
| | $2,000,000 Aggregate Products Liability only | |
| D.) Employee Benefits | $ 500,000 Each Claim | C.N.A.of Illinois. |
| | $ 750,000 Annual Aggregate | |
| C.) Care Custody and Control | $1,000,000 Each Occurrence | C.N.A.of Illinois, |
| D.) Advertisers Liability | $ 500,000 Each Occurrence | C.N.A.of Illinois, |
| E.) Automobile Liability | | |
| Bodily Injury | $1,000,000 Each Occurrence | C.N.A.of Illinois, |
| Property Damage | $1,000,000 Each Occurrence | C.N.A.of Illinois. |

* W.R.Grace & Co,assumes the first $500,000,of each loss within the framework of a retrospective rating plan.
The premiums indicated are for insurance excess of $500,000, up to policy limits. The combination of the $500,000,
Loss Assumption and pure insurance is equal to the limits shown above.

II   EMPLOYERS LIABILITY:

| | | |
|---|---|---|
| A) Employers' Liability Including Employers Liability as respects Occupational Disease | $ 500,000 each Employee | C.N.A.of Illinois. |
| | $ 500,000 each Accident | |
| B) Amendment of Coverage B Maritime (Jones Act) | Bodily Injury by Accident | C.N.A.of Illinois. |
| | $ 500,000 Each Employee | |
| | $ 500,000 Each Accident | |
| | Bodily Injury by Disease | |
| | $ 500,000 Each Employee | |
| | $ 500,000 Aggregate Disease | |
| | (Per State) | |

GEC 026505

WRG Policies
04167

000344

XXX-001422

Bowring

04557

## C.T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers
AMERICAN NON-MARINE DIVISION

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

P.O. BOX 145.
THE BOWRING BUILDING.
TOWER PLACE.
LONDON. EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
LONDON EC3
TELEX: 882191
Registered No. 78170 London

Please always quote this No. PY107779

Date  2nd August, 1979

VAT No. 244 2317 70

Renewing No. 35446
In accordance with your instructions we have arranged cover as follows:

**TYPE**    UMBRELLA LIABILITY INCLUDING EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974). EXCLUSIONS AS ATTACHED.

**FORM**    WORDING AS EXPIRING AS FAR AS APPLICABLE TO BE AGREED BY UNDERWRITERS.

**ASSURED**    W.R. GRACE & CO. et al and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter consituted plus joint ventures as expiring.

**PERIOD**    36 months at 30th June, 1979.

**INTEREST**    Coverage in respect of all the insureds operations.

**SUM INSURED**    80% of
$5,000,000    each occurrence (Aggregates Products and Occupational Disease)
Excess of
(A) The amount covered under underlying insurances as per schedule
(B) $100,000 each occurrence in respect of losses not covered by said underlying insurances.

**SITUATION**    Worldwide.

For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING    (INSURANCE) LTD.

Director

GEC 026525

WRG Policies
04187

000345

XXX-001423

7    Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

### W.R. GRACE & CO.
### SCHEDULE OF UNDERLYING INSURANCE

01573

| COVERAGE | LIMIT | CARRIER |
|---|---|---|

**I.  DOMESTIC GL AND AL:**

* A.) General/Products Liability — B.I. $1,000,000 Each Occurrence    C.N.A.
                                         $2,000,000 Aggregate Products
                                                    Only
                                   P.D. $1,000,000 Each Occurrence    C.N.A.
                                         $2,000,000 Aggregate Products
                                                    Only

  B.) Employee Benefits          $ 500,000 Each Claim       C.N.A.
                                 $ 750,000 Annual Aggregate

  C.) Care, Custody and Control  $1,000,000 Each Occurrence C.N.A.

  D.) Advertisers Liability      $ 500,000 Each Occurrence  C.N.A.

  E.) Automobile Liability       B.I. $1,000,000 Each Occurrence    C.N.A.

                                 P.D. $1,000,000 Each Occurrence    C.N.A.

* W.R. Grace & Co. assumes the first $500,000 of each loss within the
framework of a retrospective rating plan. The premiums indicated are for
insurance excess of $500,000 up to policy limits. The combination of the
$500,000 Loss Assumption and pure insurance is equal to the limits shown
above.

**II. EMPLOYERS LIABILITY:**

  A) Employers' Liability including  $ 500,000 Each Employee    C.N.A.
     Occupational Disease            $ 500,000 Each Accident

For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc.
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

GEC 026531

WRG Policies
04193

000346

XXX-001424

**CONTINUATION SHEET**   No. ) PY107779      01586

7

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

W.R. GRACE & CO.
SCHEDULE OF UNDERLYING INSURANCE

| COVERAGE | LIMIT | CARRIER |
|---|---|---|

I.  DOMESTIC GL AND AL:

* A.) General/Products Liability — B.I. $1,000,000 Each Occurrence — C.N.A.
$2,000,000 Aggregate Products Only
P.D. $1,000,000 Each Occurrence — C.N.A.
$2,000,000 Aggregate Products Only

B.) Employee Benefits — $ 500,000 Each Claim — C.N.A.
$ 750,000 Annual Aggregate

C.) Care, Custody and Control — $1,000,000 Each Occurrence — C.N.A.

D.) Advertisers Liability — $ 500,000 Each Occurrence — C.N.A.

E.) Automobile Liability — B.I. $1,000,000 Each Occurrence — C.N.A.

P.D. $1,000,000 Each Occurrence — C.N.A.

* W.R. Grace & Co. assumes the first $500,000 of each loss within the
framework of a retrospective rating plan. The premiums indicated are for
insurance excess of $500,000 up to policy limits. The combination of the
$500,000 Loss Assumption and pure insurance is equal to the limits shown
above.

II. EMPLOYERS LIABILITY:

A) Employers' Liability including — $ 500,000 Each Employee — C.N.A.
Occupational Disease — $ 500,000 Each Accident

For the     tion of Tom Clarke/Frank Masella,
Marsh & M     man, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.

GEC 026544

WRG Policies
04206

000347

XXX-001425

# EXHIBIT K41

000348

XXX-001426

*VOL XI, Tab 2*

 **Northbrook Excess and Surplus Insurance Company**
3 Allstate Commercial Plaza
51 West Higgins Road
South Barrington, Illinois 60010
(312) 551-2000    Telex: 28-3513, 25-3177

---

## ENDORSEMENT

---

NAME OF INSURED:  W.R. Grace and Company          POLICY NO.  63-005793
                                                  ENDORSEMENT NO.  11

---

In consideration of the premium charged, it is agreed that with respect to
the leases dated March 30, 1982 between Grace Natural Resources Corp. and
LBI Leasing Limited and between TRG Drilling Corp. and LBI Leasing Limited,
this policy is amended to include the following:

(1)  Owner as Joint Insured:
     LBI Leasing Limited
     40-66 Queen Victoria St.
     London EC4P 4EL, England

(2)  Thirty days prior notice of cancellation
     or a material change in coverage will
     be provided to LBI Leasing Limited.

---

This endorsement to take effect on the 30th day of March, 1982.
All other terms and conditions remain unchanged.

af

Countersignature Date:   November 23, 1982          *Ronald Cosentino*
                                                    Authorized Representative

RU 7-1                        GEC 026550             WRG Policies
                                                       05034

RG1-8

000349

XXX-001427



**Excess and Surplus
Insurance Company**
Northbrook, Illinois
(A Stock Insurance Company)

01592

---

**Casualty Cover Note**          Renewal of 63  NEW          Policy No. 63  005 793

---

PRODUCER
National Brokerage Agencies
85 John Street
New York, New York 10038

NAMED INSURED

W.R. Grace and Company
1114 Avenue of the Americas
New York, New York 10036

Northbrook Excess and Surplus Insurance Company, hereinafter referred to as NORTHBROOK, agrees with the Named Insured, in consideration of the premium to be paid and subject to all of the terms of this Cover Note, to bind coverage per the Terms, Conditions and limitations of the Policy of insurance in current use by NORTHBROOK.

---

Item 1 - Coverage:          **Primary Umbrella Liability**

Item 2 - Effective   From:          June 30, 1979      To:   June 30, 1982
                                    12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

Item 3 - Premium:    Annual          Annual
                     Deposit: $110,000    Minimum: $110,000
                     Rate:   $0.0185 per $1,000 sales

Item 4 - Limits of Liability:        $1,000,000 any one occurrence and in the aggregate part
                                     of $5,000,000 any one occurrence and in the aggregate
                                     (where applicable) excess of primary or $25,000 SIR.

Item 5 - Underlying Policy(ies) and Limit(s):   Per application on file with the Company.

Item 6 - Conditions:          Follow form terms and conditions London Policies

---

**CANCELLATION**
Cancellation of this Cover Note shall be in accordance with the provisions of the applicable Policy, except that if the premium is not paid
NORTHBROOK by August 24, 1979 this Cover Note may be cancelled by NORTHBROOK by mailing written notice of cancell
when, not less than ten (10) days thereafter, such cancellation shall be effective. These cancellation provisions supersede policy condit
conflict.

This Cover Note shall be terminated as of its inception by the issuance of the Policy by NORTHBROOK and the premium shall be credited thereon.

IN WITNESS WHEREOF, NORTHBROOK has caused this Cover Note to be signed by its President and Secretary and countersigned by a
authorized representative of NORTHBROOK.

Countersignature Date:  July 27, 1979          By: _____
                                                      Authorized Representative
jtg

_Myrm J. Resnick_
          Secretary                                              President

SU93-1

GEC 026551                          WRG Policies
                                    05035

# Northbrook Insurance Company
## Northbrook, Illinois

01593



# Declarations – Umbrella Liability Policy

Item 1. Named Insured: W. R. Grace and Company

Address:    1114 Avenue of the Americas
New York, New York 10036

63 005 793
Policy Number

Item 2. Limits of Liability - as insuring agreement II:

(a) $ 1,000,000    each occurrence part of $5,000,000 each occurrence

(b) $ 1,000,000    in the aggregate for each annual period where applicable part of $5,000,000 in the aggregate for each annual period where applicable

(c) $    25,000    retained limit each occurrence

Item 3. Policy Period:    From:  June 30, 1979    To:  June 30, 1982
(Beginning and ending at 12.01 A.M. Standard Time at the address of the Named Insured as stated herein)

Item 4. Computation of Premium:  $0.0185 per $1,000 sales subject to annual review

Annual
Minimum Premium: $110,000.00        Deposit Premium: $110,000.00

Item 5. Audit Reporting Period:
If the Policy Period is more than one year and the premium is to be paid in installments, Premium is payable on:

| | | |
|---|---|---|
| ~~$110,000.00~~ | ~~$110,000.00~~ | ~~$110,000.00~~ |
| Effective Date  June 30, 1979 | 1st Anniversary  June 30, 1980 | 2nd Anniversary  June 30, 198 |

In the event of cancellation by the Named Insured, the Company shall receive and retain not less than    as the policy minimum premium.

Item 6. Endorsements:
This Policy is subject to the following endorsements:

1) Special
2) M/B 121
3) RU 122
4) Special

Item 7. Schedule of Underlying Insurance: See attached schedule.

Countersignature Date    October 22   19  79        Authorized Representative

RU29-1

GEC 026552

WRG Policies
05036

000351

XXX-001429

# EXHIBIT K42

**000352**

**XXX-001430**



VOL. XI , TAB 3
79 DD 1634C

# Lloyd's Policy

**Whereas** the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called 'the Underwriters'),

**Now We the Underwriters** hereby agree to insure against loss, damage or liability to the extent and in the manner hereinafter provided.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**Now know Ye** that We the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, after such loss, damage or liability is proved and the due proportion for which each of Us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this Policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE,
*General Manager*

LLOYD'S
POLICY SIGNING
OFFICE
EMBOSSMENT
APPEARS HERE
ON ORIGINAL
DOCUMENT

T/A \ NMA 2002 (11.4.74)

GEC 026554

WRG Policies
05038

and the Underwriters shall then be liable to pay or the excess thereof up to a further

| | |
|---|---|
| \$ (as stated in Item 5 of the Declarations) | ultimate net loss in all in respect of each occurrence – subject to a limit of |
| \$ (as stated in Item 6 of the Declarations) | in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured and in respect of any other hazard subject to an aggregate limit in the Underlying Umbrella Policies. |

WRG Policies
05045

CONDITIONS:

1.   PRIOR INSURANCE AND NON CUMULATION OF LIABILITY   –

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

2.   MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE   –

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder.   Should, however, any alteration be made in the premium for the Underlying Umbrella Policies during the currency of this Policy Underwriters reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the Policy period without reduction of coverage or limits except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of Condition C. of the Underlying Umbrella Policies.

GEC 026561

3.   CANCELLATION –

This Policy may be cancelled by the Named Assured or by the Underwriters or their representatives by sending by registered mail notice to the other party stating when, no less than sixty (60) days thereafter, cancellation shall be effective.   The mailing of notice as aforesaid by Underwriters or their representatives to the Named Assured at the address shown in this Policy shall be sufficient proof of notice, and the insurance under this Policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by the Underwriters or their representatives shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Underwriters shall retain the customary short rate proportion of the premium for the period this Policy has been

000354

XXX-001432

DECLARATIONS:

| | | | |
|---|---|---|---|
| ITEM 1. | (a) | Named Assured:- | W.R. GRACE AND COMPANY and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted |
| | (b) | Address of Named Assured:- | 1114, Avenue of the Americas, New York, N.Y. 10038. |

ITEM 2.    (a)    Underlying Umbrella Policies:-    79DD1633C

(b)    Underlying Umbrella Insurers:-    CERTAIN INSURANCE COMPANIES

ITEM 3.    Underlying Umbrella Limits
(Insuring Agreement II):-                 U.S.  $ 5,000,000

ITEM 4.    Underlying Umbrella Aggregate Limits
(Insuring Agreement II):-                 U.S.  $ 5,000,000

ITEM 5.    Limit of Liability
(Insuring Agreement II):-                 U.S.  $ 15,000,000

ITEM 6.    Aggregate Limit of Liability
(Insuring Agreement II):-                 U.S.  $ 15,000,000

ITEM 7.    Policy Period:-    30th June, 1979 to 30th June, 1982
both days at 12.01 a.m. Local Standard Time

ITEM 8.    Notice of Occurrence (Condition 4) to:-
Marsh & McLennan Inc.,
1221, Avenue of the Americas,
New York, N.Y. 10020.

ITEM 9:    Service of Process (Condition 6) upon:-
Messrs. Mendes and Mount,
3, Park Avenue, New York, N.Y. 10016, U.S.A.

GEC 026563

WRG Policies
05047

**000355**

XXX-001433

LEXINGTON INSURANCE COMPA
Wilmington, Delaware
(A Stock Insurance Company)
Administrative Offices: 100 Summer Street, Boston, Massachusetts
Incorporated in the U.S.A. in 1965
Liability of Shareholders Limited

Named Insured:  W.R. Grace and Company and as       Policy No. : ___5514585_____
                per endorsement no. 1
Address:        1114 Avenue of the Americas          Renewal of No.: _5503493 & 5510442_
                New York
                New York 10038

## DECLARATIONS — FOLLOWING FORM EXCESS LIABILITY POLICY

### SECTION I — EXCESS INSURANCE

(a)  Policy Period:  From:     30th June 1979        To:   30th June 1982
     (at 12.01 a.m.                           at the address of the Insured stated herein)

(b)  Coverage:    Excess Umbrella Liability including Employee Benefit Liability
                  but excluding claims arising from Employees Retirement Income
                  Security Act (1974)

(c)  Limits of Liability:     $803,250 being 10.71% of 50% of $15,000,000 each occurr
                              and in the aggregate wherein the underlying

(d)  Deposit and Minimum                EXPOSURE TYPE:        Gross Sales
     Premium:    As per annual premium   ADJUSTMENT RATE:     10.71% of 50% of
                 payment endorsement                          $0.083 per $1000
                                         AUDIT PERIOD:        Annually

### SECTION II — UNDERLYING INSURANCE

(a)  Underlying Policy No:     To be Advised

     Issued By:     Underwriters at Lloyds London and various Insurance Companies
                    Umbrella Liability including Employee Benefit Liability but
     Covering:      excluding claims arising from Employees Retirement Income
                    Security Act (1974)
     Limits of Liability:     $5,000,000
     Period:     30th June 1979 to 30th June 1982

(b)  Total limits of all underlying insurance including the underlying policy in excess of which
     this policy applies:     $5,000,000 each occurrence and in the aggregate where
     applicable which in turn excess of various primaries or $100,000 self
     insured retention where no concurrent insurance.

Endorsements Made Part of this Policy:    No. 1

GEC 026589                                    WRG Policies
                                              05073

**C. T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers
AMERICAN NON-MARINE DIVISION

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

P.O. BOX 145.
THE BOWRING BUILDING.
TOWER PLACE,
LONDON. EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
LONDON EC3
TELEX: 882131
Registered No. 78170 London

Please always quote this No. PY107879

Date 2nd August, 1979

VAT No. 244 251 79

Renewing No. 35447
In accordance with your instructions we have arranged cover as follows:

**TYPE** — EXCESS UMBRELLA LIABILITY INCLUDING EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974).

**FORM** — SHORT EXCESS FORM TO BE AGREED BY UNDERWRITERS.

**ASSURED** — W.R. GRACE & CO. et al and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter consituted plus joint ventures as expiring.

**PERIOD** — 36 months at 30th June, 1979.

**INTEREST** — Coverage in respect of assureds operations.

**SUM INSURED** — 50% of
$15,000,000 each occurrence (Aggregate Products and Occupational Disease)
Excess of
$ 5,000,000 each occurrence (Aggregate Products and Occupational Disease)

which in turn Excess of scheduled primaries or $100,000 Self Insured Retention where no concurrent insurance.

**SITUATION** — Worldwide.

**CONDITIONS** — N.M.A. 1256/1477.
60 Days Cancellation Clause.
4% Tax Clause (if applicable).
Service of Suit Clause (U.S.A.).
Seepage and Pollution Clauses as underlying
ALL AS UNDERLYING in respect of Conditions, Warranties, Clauses and Exclusions.

For the attention of Tom Clarke/Frank Nasella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C. T. BOWRING & CO. (INSURANCE) LTD.

Direct

Commission to you 10%

GEC 026595

WRG Policies
05079

000357
XXX-001435

**C. T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers
**AMERICAN NON-MARINE DIVISION**

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

| | | |
|---|---|---|
| P.O. BOX 145, | TELEPHONE: 01-283 3100 | |
| THE BOWRING BUILDING, | TELEGRAMS: BOWINSUR | *Please always* quote this No. ___ PY107379 |
| TOWER PLACE, | LONDON EC3 | Date ___ 2nd August, 1979 |
| LONDON, EC3P 3BE | TELEX: 882191 | |
| (Registered Office) | Registered No. 78170 London | VAT No. 244 2517 79 |

Renewing No. 35447

In accordance with your instructions we have arranged cover as follows:

| | |
|---|---|
| TYPE | EXCESS UMBRELLA LIABILITY INCLUDING EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974). |
| FORM | SHORT EXCESS FORM TO BE AGREED BY UNDERWRITERS. |
| ASSURED | W.R. GRACE & CO. et al and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter consituted plus joint ventures as expiring. |
| PERIOD | 36 months at 30th June, 1979. |
| INTEREST | Coverage in respect of assureds operations. |
| SUM INSURED | 50% of $15,000,000 each occurrence (Aggregate Products and Occupational Disease)<br><br>Excess of $ 5,000,000 each occurrence (Aggregate Products and Occupational Disease)<br><br>which in turn Excess of scheduled primaries or $100,000 Self Insured Retention where no concurrent insurance. |
| SITUATION | Worldwide. |
| CONDITIONS | N.M.A. 1256/1477.<br>60 Days Cancellation Clause.<br>4% Tax Clause (if applicable).<br>Service of Suit Clause (U.S.A.).<br>Seepage and Pollution Clauses as underlying<br>ALL AS UNDERLYING in respect of Conditions, Warranties, Clauses and Exclusions. |

For the attention of Tom Clarke/Frank Masella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C. T. BOWRING & CO. (INSURANCE) LTD.

Direct

GEC 026598

WRG Policies
05082

**000358**

XXX-001436

# EXHIBIT K43

000359

XXX-001437

X1,4        .01635

## LEXINGTON INSURANCE COMPA
Wilmington, Delaware

(A Stock Insurance Company)

Administrative Offices: 100 Summer Street, Boston, Massachusetts

Incorporated in the U.S.A. in 1965

Liability of Shareholders Limited

| | | | |
|---|---|---|---|
| Named Insured: | W.R. Grace and Company and as per endorsement no. 1 | Policy No. : | 5514585 |
| Address: | 1114 Avenue of the Americas New York New York 10038 | Renewal of No.: | 5503493 & 5510442 |

### DECLARATIONS – FOLLOWING FORM EXCESS LIABILITY POLICY

---

#### SECTION I – EXCESS INSURANCE

(a) Policy Period: From: 30th June 1979    To: 30th June 1982
(at 12.01 a.m.    at the address of the Insured stated herein)

(b). Coverage: Excess Umbrella Liability including Employee Benefit Liability but excluding claims arising from Employees Retirement Income Security Act (1974)

(c) Limits of Liability: $803,250 being 10.71% of 50% of $15,000,000 each occurri and in the aggregate wherein the underlying

| | | | |
|---|---|---|---|
| (d) | Deposit and Minimum Premium: As per annual premium payment endorsement | EXPOSURE TYPE: ADJUSTMENT RATE: AUDIT PERIOD: | Gross Sales 10.71% of 50% of $0.083 per $1000 Annually |

---

#### SECTION II – UNDERLYING INSURANCE

(a) Underlying Policy No:    To be Advised

Issued By: Underwriters at Lloyds London and various Insurance Companies

Covering: Umbrella Liability including Employee Benefit Liability but excluding claims arising from Employees Retirement Income Security Act (1974)

Limits of Liability: $5,000,000

Period: 30th June 1979 to 30th June 1982

(b) Total limits of all underlying insurance including the underlying policy in excess of which
this policy applies: $5,000,000 each occurrence and in the aggregate where applicable which in turn excess of various primaries or $100,000 self insured retention where no concurrent insurance.

---

Endorsements Made Part of this Policy:    No. 1

GEC 026604

WRG Policies
05088

000360

XXX-001438

# EXHIBIT K44

000361

XXX-001439

1221 AVE. OF THE AMERICAS, NEW YORK, N. Y. 10020    CODE NO.    VOL XI TAB 5 712

01646

RENEWS

NEW

NUMBER
6179-1383

## ☒ GRANITE STATE INSURANCE COMPANY
## ☐ NEW HAMPSHIRE INSURANCE COMPANY
### MANCHESTER, NEW HAMPSHIRE

## C. V. STARR & CO.
### UNDERWRITING MANAGERS

SAN FRANCISCO    SEATTLE    LOS ANGELES    PORTLAND    CHICAGO

### DECLARATIONS

1. Assured:   W. R. GRACE & CO., ET AL
   AS MORE FULLY DESCRIBED IN UNDERLYING POLICY/IES

   Address:   1114 AVENUE OF THE AMERICAS
              NEW YORK, NEW YORK  10038

2. Policy Period: From    JUNE 30, 1979  TO  JUNE 30, 1980
   both days at  12:01 A.M.   (Standard Time) at the location(s) of the risk(s) insured and in accord with the terms and conditions of the form(s) attached.

3. Amount:   $3,750,000. PART OF $15,000,000. EXCESS OF $5,000,000. EXCESS OF UNDERLYING

4. Coverage:   EXCESS UMBRELLA LIABILITY

5. Premium: A) Provisional or deposit premium   $ 115,000.00

   B) Minimum Premium   $ 115,000.00

   C) Basis of Adjustment (Rate)   PRO-RATA OF $0.083 PER $1,000. GROSS REVENUES

   D) Audit Period   ANNUAL

Assignment of this Policy shall not be valid except with the written consent of this Company.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such other provisions, stipulations, and agreements as may be added hereto, as provided in this Policy.

Unless otherwise provided herein, this Policy may be cancelled on the customary short rate basis by the Assured at any time by written notice or by surrender of this Policy to the Company. This Policy may also be cancelled, with or without the return or tender of the unearned premium, by the Company or by the Underwriting Managers in its behalf, by delivering to the Assured or by sending to the Assured by regular mail, at the Assured's address as shown herein, not less than 30 days written notice stating when the cancellation shall be effective, and in such case Insurers shall refund the paid premium less the earned portion thereof on demand, subject always to the retention by Insurers hereon of any minimum premium stipulated herein (or proportion thereof previously agreed upon) in the event of cancellation either by Insurers or Assured.

Not withstanding anything to the contrary contained herein and in consideration of the premium for which this insurance is written, it is understood and agreed that whenever an additional or return premium of $10.00 or less becomes due from or to the Assured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be made, as the case may be.

In Witness Whereof, the Company has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company.

*Marion E. Fagin*
Secretary                                        *Carl P. Barton*
                                                 President
                                        C. V. STARR & CO.
                                        UNDERWRITING MANAGERS

Countersigned   JULY 23, 1979   DW/MC/yn     By
CVS 1114

BROKER'S COPY

GEC 026615

WRG Policies
05099

## EXCESS UMBRELLA POLICY

01647

Named Assured: As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company.

### SCHEDULE

ITEM 1. NAMED ASSURED — W. R. GRACE & CO., ET AL

ITEM 2. Underlying Umbrella Policies: BRITISH COMPANIES AND NORTHBROOK INSURANCE COMPANY

ITEM 3. Underlying Umbrella limits
(Insuring Agreement II): $5,000,000.

ITEM 4. Underlying Umbrella Aggregate Limits
(Insuring Agreement II): $5,000,000.

ITEM 5. Limit of Liability
(Insuring Agreement II): $3,750,000. PART OF $15,000,000.

ITEM 6. Aggregate Limit of Liability
(Insuring Agreement II): $3,750,000. PART OF $15,000,000.

7. Notice of Occurrence (Conditions 4) to: C.V. Starr & Co.
THREE EMBARCADERO CENTER, SAN FRANCISCO, CA  94111

### INSURING AGREEMENTS

**I. COVERAGE**

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability

(a) imposed upon the Assured by law,

(b) assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured while acting in his capacity as such.

for damages, direct or consequential and expenses on account of:

(i) Personal injuries, including death at any time resulting therefrom,

(ii) Property damage,

(iii) Advertising liability,

caused by or arising out of each occurrence happening anywhere in the World, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Declarations, (hereinafter called the "Underlying Umbrella Insurers").

**II. LIMIT OF LIABILITY - UNDERLYING LIMITS**

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective net loss liability as follows:-

$ (as stated in Item 3 of the Declarations) — Ultimate net loss in respect of each occurrence, but

$ (as stated in Item 4 of the Declarations) — in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

and the Company shall then be liable to pay only the excess thereof up to a further

$ (as stated in Item 5 of the Declarations) — ultimate net loss in all in respect of each occurrence subject to a limit of

$ (as stated in Item 6 of the Declarations) — in the aggregate for each annual period during the currency of this Policy separately, in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

Attached to and forming part of Policy No.  6179-1383

Issued to: W. R. GRACE & CO., ET AL

Dated: JULY 23, 1979

22310 Rev. 1-78

[X] GRANITE STATE INSURANCE COMPANY

[ ] NEW HAMPSHIRE INSURANCE COMPANY

C.V. STARR & COMPANY
Underwriting Managers

By......................................

GEC 026616

WRG Policies
05100

000363

XXX-001441

# EXHIBIT K45

000364

XXX-001442



**Northbrook**
**Excess and Surplus**
**Insurance Company**
Northbrook, Illinois
(A Stock Insurance Company)

VOL X  TH 2 6    01654

---

**Casualty Cover Note**    Renewal of 63 ___NEW___    Policy No. 63 _005 794_

---

**PRODUCER**
National Brokerage Agencies, Inc.
123 William Street, 25th Floor
New York, New York 10038

**NAMED INSURED**
W. R. Grace and Company
1114 Avenue of the Americas
New York, New York 10036

---

Northbrook Excess and Surplus Insurance Company, hereinafter referred to as NORTHBROOK, agrees with the Named Insured, in consideration of the premium to be paid and subject to all of the terms of this Cover Note, to bind coverage per the Terms, Conditions and limitations of the Policy of insurance in current use by NORTHBROOK.

**Item 1 - Coverage:**    Excess Umbrella Liability

**Item 2 - Effective    From:**    June 30, 1979    **To:**    June 30, 1980
12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

**Item 3 - Premium:**    Deposit: $107,335.00    Minimum: $107,335.00
Rate: $0.01936/$1,000 Sales

**Item 4 - Limits of Liability:**    $3,750,000 any one occurrence and in the aggregate part of
$15,000,000 any one occurrence and in the aggregate (where
applicable) excess of $5,000,000 any one occurrence and in
the aggregate (where applicable) excess of primary.

**Item 5 - Underlying Policy(ies) and Limit(s):**    NESCO #63 005 793
$1,000,000 any one occurrence and in the aggregate part of
$5,000,000 any one occurrence and in the aggregate (where
applicable) excess of primary.

Item 6 - Conditions:    London Policies - See below*
Follow Form terms and conditions London Policies

*$4,000,000 any one occurrence and in the aggregate (where
applicable) part of $5,000,000 any one occurrence and in
the aggregate (where applicable) excess of primary.

---

**CANCELLATION**

Cancellation of this Cover Note shall be in accordance with the provisions of the applicable Policy, except that if the premium is not received by NORTHBROOK by Aug. 24, 1979  this Cover Note may be cancelled by NORTHBROOK by mailing written notice of cancellation stating when, not less than ten (10) days thereafter, such cancellation shall be effective. These cancellation provisions supersede policy conditions if they conflict.

This Cover Note shall be terminated as of its inception by the issuance of the Policy by NORTHBROOK and the premium shall be credited thereon.

IN WITNESS WHEREOF, NORTHBROOK has caused this Cover Note to be signed by its President and Secretary and countersigned by a duly authorized representative of NORTHBROOK.

Countersignature Date: ___July 27, 1979___    By: _____
                                                    Authorized Representative

_Myron J. Resnick_
hj        Secretary                                        President

GEC 026623

WRG Policies
05107

---

**000365**

XXX-001443

**B. Maintenance of Underlying Umbrella Insurance**

01657

This policy is subject to the same terms, definitions (except for those terms defined in paragraph III), exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies listed in Section I. Coverage, prior to the happening of an occurrence for which claim is made under this policy. Any exclusion or restriction of coverage applicable to any Underlying Umbrella Policy shall also apply to this policy regardless of whether such exclusion or restriction applies to all underlying policies.

**C.** It is a condition of this policy that the Underlying Umbrella Policies or renewals or replacements thereof not more restrictive in coverage, shall be maintained in full effect during the currency of this policy, except for any reduction in the aggregate limit or limits contained therein solely by payment of claims in respect of occurrences happening during the period of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, NORTHBROOK shall only be liable to the same extent as if the Insured had complied with this condition.

The Named Insured shall give notice to NORTHBROOK as soon as practicable of any exhaustion of aggregate limits of any underlying policy.

**D. Premium**

The premium for this policy shall be computed on the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified, is an estimated premium only. The earned premium shall be computed upon termination of this policy, or at the end of each twelve month period if the policy is written for a three year term. If the earned premium is more than the advance premium paid, the Insured shall pay the excess to NORTHBROOK. If less, NORTHBROOK shall return the difference, subject to the annual minimum premium for each twelve months of the policy period and the policy minimum premium as stated in the Declarations. See Description of Terms Used as Premium Basis.

**E. Inspection and Audit**

NORTHBROOK may inspect the Insured's property and operations and audit the Insured's books and records at any time at NORTHBROOK'S option during the policy period and within three years after the final termination of this policy. These actions are solely for NORTHBROOK'S benefit and they shall not be a representation that the Insured's property and operations are safe, healthful or are in compliance with any law, rule or regulation.

**F. Notice of Occurrence**

When there is an occurrence which may result in a claim under this policy, the Insured shall notify NORTHBROOK at its Home Office address in writing as soon as possible, giving particulars sufficient to identify the Insured and available information on time, place, and circumstances of the occurrence. The Insured will also send NORTHBROOK any legal papers that relate to the occurrence.

**G. Suit Against NORTHBROOK**

No action shall lie against NORTHBROOK unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and NORTHBROOK. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join NORTHBROOK as a codefendant in any action against the Insured to determine the Insured's liability, nor shall NORTHBROOK be impleaded by the Insured or the Insured's Legal Representative. Bankruptcy or insolvency of the Insured shall not relieve NORTHBROOK of any of its obligations hereunder.

**H. Other Insurance**

Except as respects coverage written specifically as contributing insurance with this policy or to apply excess of this policy, this policy shall be excess insurance over any other insurance available to the Insured with respect to an occurrence covered hereunder.

**I. Subrogation**

In the event of any payment under this policy, NORTHBROOK shall be subrogated to all of the Insured's rights of recovery against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

The amount recovered as subrogation shall be apportioned in the inverse order of payment of ultimate net loss to the extent of the actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries.

**J. Changes**

This policy must be endorsed in writing to change any of its provisions.

**K. Assignment**

Assignment of interest under this policy shall not bind NORTHBROOK unless its consent is endorsed hereon.

**L. Cancellation**

This policy may be cancelled by the Insured by surrender thereof to NORTHBROOK or by mailing to NORTHBROOK written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by NORTHBROOK by mailing to the Insured at the address shown in this policy or last known address written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if NORTHBROOK cancels the policy because the Insured has failed to pay a premium when due, this policy may be cancelled by NORTHBROOK by mailing a written notice of cancellation to the Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by NORTHBROOK shall be equivalent to mailing.

If the Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If NORTHBROOK cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. NORTHBROOK'S check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the Insured.

**M. Sole Agent Clause**

If there is more than one Named Insured hereunder, the Named Insured first named in Item 1 of the Declarations shall be deemed to be the agent for all Named Insureds with respect to ------tice of cancellation, payment of return premium, pr----nt of unabsorbed premium deposit refunds (dividends) and in all other matters pert-------g to this insurance.

GEC 026626

WRG Policies
05110

000366

XXX-001444

# EXHIBIT K46

**000367**

**XXX-001445**

1643C

XII 3

01929



# Lloyd's Policy

**Whereas** the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called 'the Underwriters').

**Now We the Underwriters** hereby agree to insure against loss, damage or liability to the extent and in the manner hereinafter provided.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**Now know Ye** that We the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators and in respect of his due proportion only, to pay or make good to the Assured or to the Assured's Executors or Administrators or to indemnify him or them against all such loss, damage or liability as herein provided, after such loss, damage or liability is proved and the due proportion for which each of Us, the Underwriters, is liable shall be ascertained by reference to his share, as shown in the said List, of the Amount, Percentage or Proportion of the total sum insured hereunder which is in the Table set opposite the definitive number of the Syndicate of which such Underwriter is a Member AND FURTHER THAT the List of Underwriting Members of Lloyd's referred to above shows their respective Syndicates and Shares therein, is deemed to be incorporated in and to form part of this Policy, bears the number specified in the attached Table and is available for inspection at Lloyd's Policy Signing Office by the Assured or his or their representatives and a true copy of the material parts of the said List certified by the General Manager of Lloyd's Policy Signing Office will be furnished to the Assured on application.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

**LLOYD'S POLICY SIGNING OFFICE.**
*General Manager*

LLOYD'S
POLICY SIGNING
OFFICE
EMBOSSMENT
APPEARS HERE
ON ORIGINAL
DOCUMENT

T/A \ NMA 2002 (11.4.74)

GEC 027017

WRG Policies
05495

$ (as stated in Item 5
of the Declarations).

ultimate net loss in all in respect of
each occurrence – subject to a limit
of

**0195**

$ (as stated in Item 6
of the Declarations)

in the aggregate for each annual
period during the currency of this
Policy, separately in respect of
Products Liability (fatal or non-fatal)
Personal Injury (fatal or non-fatal)
by Occupational Disease sustained
by any employees of the Assured and
in respect of any other hazard subject
to an aggregate limit in the Underlying
Umbrella Policies.

CONDITIONS:

1.  PRIOR INSURANCE AND NON CUMULATION OF LIABILITY –

It is agreed that if any loss covered hereunder is also covered in whole or in part under
any other excess policy issued to the Assured prior to the inception date hereof the limit
of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by an
amounts due to the Assured on account of such loss under such prior insurance.

2.  MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE –

This Policy is subject to the same terms, definitions, exclusions and conditions (except
as regards the premium, the amount and limits of liability and except as otherwise
provided herein) as are contained in or as may be added to the Underlying Umbrella
Policies stated in Item 2 of the Declarations prior to the happening of an occurrence
for which claim is made hereunder. Should, however, any alteration be made in the
premium for the Underlying Umbrella Policies during the currency of this Policy Under-
writers reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained
in full effect during the Policy period without reduction of coverage or limits except
for any reduction of the aggregate limits contained therein solely by payment of claims
in respect of accidents and/or occurrences occurring during the period of this Policy or
by the operation of Condition C. of the Underlying Umbrella Policies.

3.  CANCELLATION –

This Policy may be cancelled by the Named Assured or by the Underwriters or their
representatives by sending by registered mail notice to the other party stating when, no
less than **sixty** (60) days thereafter, cancellation shall be effective. The mailing of
notice as aforesaid by Underwriters or their representatives to the Named Assured at the
address shown in this Policy shall be sufficient proof of notice, and the insurance under
this Policy shall end on the effective date and hour of cancellation stated in the notice.
Delivery of such written notice either by the Named Assured or by the Underwriters or
their representatives shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Underwriters shall retain
the customary short rate proportion of the premium for the period this Policy has been

L.P.O.355A (12/76)

GEC 027020

Page 2 of

WRG Policies
05498

000369

XXX-001447

ATTACHING TO / ~ FORMING PART OF POLICY    .  80DD1643C

0193

## DECLARATIONS:

| | | | |
|---|---|---|---|
| ITEM 1. | (a) | Named Assured:- | W.R. GRACE AND COMPANY and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted |
| | (b) | Address of Named Assured:- | 1114, Avenue of the Americas, New York, N.Y. 10038. |

22S25

| | | | |
|---|---|---|---|
| ITEM 2. | (a) | Underlying Umbrella Policies:- | 79DD1633C |
| | (b) | Underlying Umbrella Insurers:- | CERTAIN INSURANCE COMPANIES |

ITEM 3.    Underlying Umbrella Limits
(Insuring Agreement II):-

U.S.  $ 5,000,000

ITEM 4.    Underlying Umbrella Aggregate Limits
(Insuring Agreement II):-

U.S.  $ 5,000,000

ITEM 5.    Limit of Liability
(Insuring Agreement II):-

U.S.  $ 20,000,000

ITEM 6.    Aggregate Limit of Liability
(Insuring Agreement II):-

U.S.  $ 20,000,000

ITEM 7.    Policy Period:-       30th June, 1980 to 30th June, 1982
both days at 12.01 a.m. Local Standard Time

ITEM 8.    Notice of Occurrence (Condition 4) to:-
Marsh & McLennan Inc.,
1221, Avenue of the Americas,
New York, N.Y. 10020.

ITEM 9:    Service of Process (Condition 6) upon:-
Messrs. Mendes and Mount,
3, Park Avenue, New York, N.Y. 10016, U.S.A.

L.P.O.355A (12/76)

Page 4 of 4

GEC 027022

WRG Policies
05500

000370

XXX-001448

**Bowring**

**C. T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers
**NORTH AMERICAN NON-MARINE INSURANCE DIVISION**

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

P.O. BOX 145.
THE BOWRING BUILDING,
TOWER PLACE.
LONDON. EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
                    LONDON EC3
TELEX: 882191
Registered No. 78170 London

01943

Please always
quote this No.   PT107880

Date   16th July, 1980

VAT No. 244 2917 79

Cancelling & Replacing No. PT107879
In accordance with your instructions we have arranged cover as follows:

33841

| | |
|---|---|
| **TYPE** | EXCESS UMBRELLA LIABILITY INCLUDING EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974). |
| **FORM** | SHORT EXCESS FORM TO BE AGREED BY UNDERWRITERS. |
| **ASSURED** | W.R. GRACE & CO. et al and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter consituted plus joint ventures as expiring. |
| **PERIOD** | 24 months at 30th June, 1980. |
| **INTEREST** | Coverage in respect Assureds Operations. |

**SUM INSURED**    56.25% of
$20,000,000    each occurrence (Aggregate Products and
                       Occupational Disease)

Excess of
$ 5,000,000    each occurrence (Aggregate Products and
                       Occupational Disease)

which in turn Excess of scheduled primaries or $100,000 Self
Insured Retention where no concurrent insurance.

| | |
|---|---|
| **SITUATION** | Worldwide. |
| **CONDITIONS** | N.M.A. 1256/1477. |

60 Days Cancellation Clause.
4% Tax Clause (if applicable).
Service of Suit Clause (U.S.A.).
Seepage and Pollution Clauses as underlying
ALL AS UNDERLYING in respect of Conditions, Warranties, Clauses
and Exclusions attached thereto.

For the attention of Mr. Frank Masella,
Marsh & McLennan, Inc,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

Director

Commission to you 11%

GEC 027034

WRG Policies
05512

**000371**

XXX-001449

**C.T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers
**NORTH AMERICAN NON-MARINE INSURANCE DIVISION**

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON, EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
LONDON-EC3
TELEX: 882191
Registered No. 76170 London

Please always
quote this No.    FY107880

Date    16th July, 1980

VAT No. 244 2917 79

01949

Cancelling & Replacing No. FY107379 :
In accordance with your instructions we have arranged cover as follows:

| | |
|---|---|
| **TYPE** | EXCESS UMBRELLA LIABILITY INCLUDING EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974). |
| **FORM** | SHORT EXCESS FORM TO BE AGREED BY UNDERWRITERS. |
| **ASSURED** | W.R. GRACE & CO. et al and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter consituted plus joint ventures as expiring. |
| **PERIOD** | 24 months at 30th June, 1980. |
| **INTEREST** | Coverage in respect Assureds Operations. |

**SUM INSURED**    56.25% of
$20,000,000    each occurrence (Aggregate Products and Occupational Disease)
Excess of
$ 5,000,000    each occurrence (Aggregate Products and Occupational Disease)

which in turn Excess of scheduled primaries or $100,000 Self Insured Retention where no concurrent insurance.

**SITUATION**    Worldwide.

**CONDITIONS**    N.M.A. 1256/1477.
60 Days Cancellation Clause.
4% Tax Clause. (if applicable).
Service of Suit Clause (U.S.A.).
Seepage and Pollution Clauses as underlying
ALL AS UNDERLYING in respect of Conditions, Warranties, Clauses and Exclusions attached thereto.

For the attention of Mr. Frank Nasella.
Marsh & McLennan, Inc.
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

Director

Commission to you 11%

GEC 027040

WRG Policies
05518

# EXHIBIT K47

000373

XXX-001451

Wilmington, Delaware
(A Stock Insurance Company)
Administrative Offices: 100 Summer Street, Boston, Massachusetts
Incorporated in the U.S.A. in 1965
Liability of Shareholders Limited

✓ 2
XII, 4   01351

Named Insured:

W.R. Grace & Company and/or Subsidiary, Associated, Affiliated Companies and/or Organisations Owned, Controlled and/or Managed Companies
as now or hereafter Constituted including Joint Ventures as expiring

Policy No.: _____ 5540469

Renewal of No.: _____ 5514585

Address:

1114 Avenue of the Americas
New York, New York,
10038

## DECLARATIONS — FOLLOWING FORM EXCESS LIABILITY POLICY

### SECTION I — EXCESS INSURANCE

(a) Policy Period: From:    30th June 1980    To:    30th June 1982
(at    12.01 a.m.    at the address of the Insured stated herein)

(b) Coverage:  Excess Umbrella Liability including Employee Benefit Liability but excluding claims arising from Employee Retirement Income Security Act (1974).

(c) Limits of Liability:  $1,201,500 being 10.68% of 56.25% of $20,000,000 each and every occurrence and annual aggregate wherein the underlying.

(d) Minimum Premium: $28,235.25

Deposit Premium: $28,235.25

EXPOSURE TYPE:    Gross Sales
ADJUSTMENT RATE:   10.68% of 56.25% of $0.0835 per $1000
AUDIT PERIOD:      At anniversary

### SECTION II — UNDERLYING INSURANCE

(a) Underlying Policy No:  To be advised

Issued By:  Underwriters at Lloyds London and various Insurance Companies

Covering:  Umbrella Liability including Employee Benefit Liability but excluding claims arising from Employee Retirement Income Security Act (1974).

Limits of Liability:  $5,000,000

Period:    30th June 1979 to 30th June 1982

(b) Total limits of all underlying insurance including the underlying policy in excess of which
this policy applies:    $5,000,000 each and every occurrence and annual aggregate where applicable which in turn excess of various underlying insurance or $100,000 Self Insured Retention in respect of uninsured exposures.

Endorsements Made Part of this Policy:

Countersigned in London, England.
on    7th August 1980

By    K J Peacock

WRG Policies
05520

GEC 027042

000374

XXX-001452

# EXHIBIT K48

000375

XXX-001453

BROKER
MARSH & McLENNAN, INC.
1221 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10020

CODE NO.      LOC.   KIND   POOL   COM.
                                          7-5%

01959

RENEWS
6179-1383

NUMBER
6480-5013



☒ **GRANITE STATE INSURANCE COMPANY**
☐ **NEW HAMPSHIRE INSURANCE COMPANY**

## PACIFIC STARR of NEW YORK, INC.

### UNDERWRITING MANAGERS
#### NEW YORK

### DECLARATIONS

1. Assured:     **W. R. GRACE & CO., ET AL**
                **(AS MORE FULLY DESCRIBED IN THE UNDERLYING POLICY/IES)**

   Address:     **1114 AVENUE OF THE AMERICAS**
                **NEW YORK, NEW YORK 10038**

2. Policy Period: From      **JUNE 30, 1980** TO **JUNE 30, 1981**
   both days at      12:01 A.M. (Standard Time) at the location(s) of the risk(s) insured and in accord with the terms and con-
   ditions of the form(s) attached.

3. Amount:     $ 4,000,000.00     **PART OF**
               $20,000,000.00     **EXCESS OF**
               $ 5,000,000.00     **EXCESS OF UNDERLYING**

4. Coverage:     **EXCESS UMBRELLA LIABILITY**

5. Premium: A) Provisional or deposit premium     $ 94,000.00

   B) Minimum Premium     $ 94,000.00

   C) Basis of Adjustment (Rate)     **PRO-RATA OF $0.083 PER $1,000.00 GROSS REVENUE**

   D) Audit Period     **ANNUAL**

   E) Currency: U.S. Dollars

Assignment of this Policy shall not be valid except with the written consent of this Company.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are here-
by made a part of this Policy, together with such other provisions, stipulations, and agreements as may be added hereto, as provided in
this Policy.

Unless otherwise provided herein, this Policy may be cancelled on the customary short rate basis by the Assured at any time by
written notice or by surrender of this Policy to the Company. This Policy may also be cancelled, with or without the return or tender
of the unearned premium, by the Company or by the Underwriting Managers in its behalf, by delivering to the Assured or by sending
to the Assured by regular mail, at the Assured's address as shown herein, not less than 30 days written notice stating when the cancel-
lation shall be effective, and in such case Insurers shall refund the paid premium less the earned portion thereof on demand, subject
always to the retention by Insurers hereon of any minimum premium stipulated herein (or proportion thereof previously agreed upon)
in the event of cancellation either by Insurers or Assured.

Not withstanding anything to the contrary contained herein and in consideration of the premium for which this insurance is
written, it is understood and agreed that whenever an additional or return premium of $10.00 or less becomes due from or to the
Assured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other
reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be
made, as the case may be.

In Witness Whereof, the Company has caused this Policy to be executed and attested, but this Policy shall not be valid unless
countersigned by a duly authorized representative of the Company.

*Marion E. Fagin* Secretary          GEC 027050          *Robert B. Sanborn* President

Countersigned
1114 PSNY      **AUGUST 11, 1980** JT/CG/vel          **PACIFIC STARR OF NEW YORK, INC.**
                                                      **UNDERWRITING MANAGERS**

By_____ WRG Policies
                              05528

000376

XXX-001454

01961

## II. LIMIT OF LIABILITY - UNDERLYING LIMITS

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:-

$ (as stated in Item 3 of the Declarations)    Ultimate net loss in respect of each occurrence, but

$ (as stated in Item 4 of the Declarations)    in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

and the Company shall then be liable to pay only the excess there-of up to a further

$ (as stated in Item 5 of the Declarations).    ultimate net loss in all in respect of each occurrence-subject to a limit of

$ (as stated in Item 6 of the Declarations)    in the aggregate for each annual period during the currency of this Policy separately, in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

## CONDITIONS

### 1. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY.

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Items 5 and 6 of the Schedule shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

Subject to the foregoing paragraph, and to all the other terms and conditions of of this Policy, in the event that Personal Injury or Property Damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy the Company will continue to protect the Assured for liability in respect to such Personal Injury or Property Damage without payment of additional premium.

### 2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE-

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Schedule prior to the happening of an occurrence for which claim is made hereunder.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the currency hereof, except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of the Prior Insurance and Non Cumulation of Liability Condition of the Underlying Umbrella Policies.

### 3. CANCELLATION-

This Policy may be cancelled by the Named Assured or by the Company or their representative by mailing written notice to the

other party stating when, not less than thirty (30) days (ten [10] days for non-payment of premium) thereafter, cancellation shall be effective. The mailing of notice as aforesaid by the Company or their representative to the Named Assured at the address shown in this Policy shall be sufficient proof of notice and the Insurance under this Policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by the Company or their representative shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Company shall retain the customary short rate proportion of the premium for the period this Policy has been in force. If this Policy shall be cancelled by the Company the Company shall retain the pro rata proportion of the premium for the period this Policy has been in force. Notice of cancellation by the Company shall be effective even though the Company makes no payment or tender of return premium.

### 4. NOTICE OF OCCURRENCE-

Whenever the Assured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which in the event that the Assured shall be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 7 of the Schedule as soon as practicable, provided however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claim.

### 5. OTHER INSURANCE-

If other valid and collectible insurance with any other Insurer is available to the Assured covering a loss also covered by this Policy, other than Insurance that is in excess of the Insurance afforded by this Policy, the Insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.

GEC 027052

WRG Policies
05530

# EXHIBIT K49

000378

XXX-001456



**NESCO** Northbrook
Excess and Surplus
Insurance Company
Northbrook, Illinois

01968

# Declarations

Renewal of No. __63   005 793__                                    63   006 854
                                                                        Policy Number

Item 1. Named Insured:   W. R. Grace and Company

Item 2. Address:   1114 Avenue of the Americas
                   New York, New York 10036

Item 3. Policy Period:   From:  June 30, 1980  .  To:  June 30, 1981
                         12:01 A.M. Standard Time at the address of the Named Insured as stated herein

Item 4. Coverage:   **Excess Umbrella Liability**

Item 5. Limits of Liability:   **$3,750,000. any one occurrence and in the aggregate part of $20,000,000.
                               any one occurrence and in the aggregate (where applicable) excess of
                               $5,000,000. any one occurrence and in the aggregate (where applicable)
                               excess of Primary**

Item 6. Premium:   Advance:  $88,125.00     Annual Minimum:  $88,125.00
                   Rate:     $0.01566 per $1,000. Sales

If the Policy Period is more than one year and the premium is to be paid in installments, Premium is payable on:

__Not Applicable__        __Not Applicable__        __Not Applicable__
Effective Date            1st Anniversary           2nd Anniversary

In the event of cancellation by the Named Insured, NORTHBROOK shall receive and retain not less than
as the policy minimum premium.

RU __72-2__ (Jacket)
Countersignature Date          July 16,   19 80          _____
                                                              Authorized Representative
RU2

RU5-3                                    BROKER COPY                      WRG Policies
                                         GEC 027059                       05537

**B. Maintenance of Underlying Umbrella Insurance**                                        01970

This policy is subject to the same terms, definitions (except for those terms defined in paragraph III), exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies listed in Section I. Coverage, prior to the happening of an occurrence for which claim is made under this policy. Any exclusion or restriction of coverage applicable to any Underlying Umbrella Policy shall also apply to this policy regardless of whether such exclusion or restriction applies to all underlying policies.

**C.** It is a condition of this policy that the Underlying Umbrella Policies or renewals or replacements thereof not more restrictive in coverage, shall be maintained in full effect during the currency of this policy, except for any reduction in the aggregate limit or limits contained therein solely by payment of claims in respect of occurrences happening during the period of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, NORTHBROOK shall only be liable to the same extent as if the Insured had complied with this condition.

The Named Insured shall give notice to NORTHBROOK as soon as practicable of any exhaustion of aggregate limits of any underlying policy.

**D. Premium**

The premium for this policy shall be computed on the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified, is an estimated premium only. The earned premium shall be computed upon termination of this policy, or at the end of each twelve month period if the policy is written for a three year term. If the earned premium is more than the advance premium paid, the Insured shall pay the excess to NORTHBROOK. If less, NORTHBROOK shall return the difference, subject to the annual minimum premium for each twelve months of the policy period and the policy minimum premium as stated in the Declarations. See Description of Terms Used as Premium Basis.

**E. Inspection and Audit**

NORTHBROOK may inspect the Insured's property and operations and audit the Insured's books and records at any time at NORTHBROOK'S option during the policy period and within three years after the final termination of this policy. These actions are solely for NORTHBROOK'S benefit and they shall not be a representation that the Insured's property and operations are safe, healthful or are in compliance with any law, rule or regulation.

**F. Notice of Occurrence**

When there is an occurrence which may result in a claim under this policy, the Insured shall notify NORTHBROOK at its Home Office address in writing as soon as possible, giving particulars sufficient to identify the Insured and available information on time, place, and circumstances of the occurrence. The Insured will also send NORTHBROOK any legal papers that relate to the occurrence.

**G. Suit Against NORTHBROOK**

No action shall lie against NORTHBROOK unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and NORTHBROOK. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join NORTHBROOK as a codefendant in any action against the Insured to determine the Insured's liability, nor shall NORTHBROOK be impleaded by the Insured or the Insured's Legal Representative. Bankruptcy or insolvency of the Insured shall not relieve NORTHBROOK of any of its obligations hereunder.

**H. Other Insurance**

Except as respects coverage written specifically as contributing insurance with this policy or to apply excess of this policy, this policy shall be excess insurance over any other insurance available to the Insured with respect to an occurrence covered hereunder.

**I. Subrogation**

In the event of any payment under this policy, NORTHBROOK shall be subrogated to all of the Insured's rights of recovery against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

The amount recovered as subrogation shall be apportioned in the inverse order of payment of ultimate net loss to the extent of the actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries.

**J. Changes**

This policy must be endorsed in writing to change any of its provisions.

**K. Assignment**

Assignment of interest under this policy shall not bind NORTHBROOK unless its consent is endorsed hereon.

**L. Cancellation**

This policy may be cancelled by the Insured by surrender thereof to NORTHBROOK or by mailing to NORTHBROOK written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by NORTHBROOK by mailing to the Insured at the address shown in this policy or last known address written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if NORTHBROOK cancels the policy because the Insured has failed to pay a premium when due, this policy may be cancelled by NORTHBROOK by mailing a written notice of cancellation to the Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date of the cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by NORTHBROOK shall be equivalent to mailing.

If the Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If NORTHBROOK cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. NORTHBROOK'S check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the Insured.

**M. Sole Agent Clause**

If there is more than one Named Insured hereunder, the Named Insured first named in Item 1 of the Declarations shall be deemed to be the agent for all Named Insureds with respect to ... notice of cancellation, payment of return premium, p...ent of unabsorbed premium deposit refunds (dividends) and in all other matters per... ing to this insurance.

GEC 027061

WRG Policies
05539

# EXHIBIT K50

000381

XXX-001459

XII, 7

**TRANSIT CASUALTY COMPANY**
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI
(A stock insurance company, herein called the company)

# Declarations—Excess Umbrella Policy

SCD 955-565
Policy Number

Renewal of No. _NEW_

Item 1. Named Insured:    W. R. GRACE & COMPANY

Item 2. Address:    1114 Avenue of the Americas
New York, New York   10036

Item 3. Policy Period:    From: June 30, 1980    To: June 30, 1981
12:01 A.M. Standard Time at the address of the Named Insured as stated herein

Item 4. Limits of Liability:    $1,000,000. each occurrence and/or in the aggregate part
of $20,000,000. excess of $5,000,000. excess of underlying.

Item 5. Premium:    Advance: $23,500.    Annual Minimum: $23,500.

Rate:    5% of $.0835    Premium Basis:    Per $1,000. of Sales

When used as a premium basis:
1. "admissions" means the total number of persons. other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admission tickets. complimentary tickets or passes;
2. "cost" means the total cost to the named insured with respect to operations performed for the named insured during the policy period by independent contractors of all work let or sub-let in connection with each specific project. including the cost of all labor, materials and equipment furnished. used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor. including all fees, allowances, bonuses or commissions made, paid or due;
3. "receipts" means the gross amount of money charged by the named insured for such operations by the named insured or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the named insured collects as a separate item and remits directly to a governmental division;
4. "remuneration" means the entire remuneration earned during the policy period by proprietors and by all employees of the named insured, other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company;
5. "sales" means the gross amount of money charged by the named insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair. and includes taxes, other than taxes which the named insured and such others collect as a separate item and remit directly to a governmental division.

Countersignature Date    July 14,    19 80

T.C. 9810 A

Authorized Representative

GEC 027064

WRG Policies
05542

000382

XXX-001460

**TRANSIT CASUALTY COMPANY**
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI
(A stock insurance company, herein called the company)

# Excess Umbrella Coverage—Insuring Agreements

**1. Coverage**

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obliged to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Insured for damages, direct or consequential and expenses on account of:

(a) Personal Injuries, including death at any time resulting therefrom.

(b) Property Damage.

(c) Advertising Liability.

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

**UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:**

| Carrier | Limits |
|---|---|
| Underwriters At Lloyd's London & British Ins. Cos. (80%) Cover Note No.: PY 107779 | $5,000,000. each occurrence and/or in the aggregate excess of primary insurances. |
| Northbrook Excess & Surplus Insurance Co. (20%) | |

**2. Limit of Liability — Underlying Limits**

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a) $ 5,000,000.    ultimate net loss in respect of each occurrence, but

(b) $ 5,000,000.    in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employee of the Insured

and the Company shall then be liable to pay only the excess thereof up to a further

(c) $ 1,000,000. P/O $20,000,000.    ultimate net loss in all in respect of each occurrence — subject to a limit of

(d) $ 1,000,000. P/O $20,000,000.    in the aggregate for each annual period during the currency of this policy, separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employee of the Insured.

7/14/80
T.V. 9812 A
mcc

GEC 027065

WRG Policies
05543

000383

XXX-001461

# Conditions

Transit Casualty (herein after called the Company) agrees with the Named Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.

**I.  Premium Computation:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Named Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

**II.  Inspection and Audit:** The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**III.  Action Against Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. Bankruptcy or insolvency of the Insured or his estate shall not relieve the Company of any of its obligations hereunder.

**IV.  Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

**V.  Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

**VI.  Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Insured's legal representative as Insured; provided that notice of cancellation addressed to the Named Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**VII.  Cancellation:** This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, (except in the instance of non-payment of premium to the COMPANY not less than ten (10) days thereafter), such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the NAMED INSURED or by the COMPANY shall be equivalent to mailing. If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED. If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS; and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

**VIII.  Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Secretary and President and countersigned on the Declarations page by an authorized representative.

*Alex Steinberg*
Secretary

*W. L. Gregory*
President

GEC 027068

WRG Policies
05546

000384

XXX-001462

# EXHIBIT K51

000385

XXX-001463

| | | |
|---|---|---|
| **BROKER** | CODE NO. | LOC.   KIND   POOL   COM. |
| MARSH & CLENNAN, INC. | | VOL. 3   TA-35   10% |
| 1221 AVENUE OF THE AMERICAS | 02231 | |
| NEW YORK, NEW YORK 10020 | | **NUMBER** |
| | | 6481- 5220 |

RENEWS
6480-5013

☒ GRANITE STATE INSURANCE COMPANY
☐ NEW HAMPSHIRE INSURANCE COMPANY

# PACIFIC STARR of NEW YORK, INC.
## UNDERWRITING MANAGERS
### NEW YORK

### DECLARATIONS

1. Assured:   W. R. GRACE & CO., ET AL
   (AS MORE FULLY DESCRIBED IN THE UNDERLYING POLICY/IES)

   Address:   1114 AVENUE OF THE AMERICAS
   NEW YORK, NEW YORK 10038

2. Policy Period: From   JUNE 30, 1981 TO JUNE 30, 1982
   both days at 12:01 A.M.   (Standard Time) at the location(s) of the risk(s) insured and in accord with the terms and conditions of the form(s) attached.

3. Amount:   $ 4,000,000.   PART OF
   $20,000,000.   EXCESS OF
   $ 5,000,000.   EXCESS OF UNDERLYING

4. Coverage:   EXCESS UMBRELLA LIABILITY

5. Premium: A) Provisional or deposit premium   $ 80,000.00

   B) Minimum Premium   $ 80,000.00

   C) Basis of Adjustment (Rate) ADJ. $.0677/1,000.00 SALES

   D) Audit Period   ANNUALLY
   E) Currency: U.S. Dollars

   Assignment of this Policy shall not be valid except with the written consent of this Company.

   This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such other provisions, stipulations, and agreements as may be added hereto, as provided in this Policy.

   Unless otherwise provided herein, this Policy may be cancelled on the customary short rate basis by the Assured at any time by written notice or by surrender of this Policy to the Company. This Policy may also be cancelled, with or without the return or tender of the unearned premium, by the Company or by the Underwriting Managers in its behalf, by delivering to the Assured or by sending to the Assured by regular mail, at the Assured's address as shown herein, not less than 30 days written notice stating when the cancellation shall be effective, and in such case Insurers shall refund the paid premium less the earned portion thereof on demand, subject always to the retention by Insurers hereon of any minimum premium stipulated herein (or proportion thereof previously agreed upon) in the event of cancellation either by Insurers or Assured.

   Not withstanding anything to the contrary contained herein and in consideration of the premium for which this insurance is written, it is understood and agreed that whenever an additional or return premium of $10.00 or less becomes due from or to the Assured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be made, as the case may be.

   In Witness Whereof, the Company has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_Maria E. Fagin_ Secretary

Countersigned   AUGUST 17, 1981   JT/LM/yn
1114 PSNY

_Robert 3 Sandown_ President

PACIFIC STARR OF NEW YORK, INC.
UNDERWRITING MANAGERS

By _Gerard A Sarelli_

BROKER'S COPY

GEC 027464   WRG Policies
05930

**4. LIMIT OF LIABILITY - UNDERLYING LIMITS**

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:-

$ (as stated in Item 3 of the Declarations) — Ultimate net loss in respect of each occurrence, but

$ (as stated in Item 4 of the Declarations) — in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

and the Company shall then be liable to pay only the excess thereof up to a further

$ (as stated in Item 5 of the Declarations)— ultimate net loss in all in respect of each occurrence-subject to a limit of

$ (as stated in Item 6 of the Declarations)— in the aggregate for each annual period during the currency of this Policy separately, in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

## CONDITIONS

**1. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY-**

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Items 5 and 6 of the Schedule shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

Subject to the foregoing paragraph, and to all the other terms and conditions of of this Policy, in the event that Personal Injury or Property Damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy the Company will continue to protect the Assured for liability in respect to such sonal Injury or Property Damage without payment of additional premium.

**2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE-**

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Schedule prior to the happening of an occurrence for which claim is made hereunder.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the currency hereof, except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of the Prior Insurance and Non Cumulation of Liability Condition of the Underlying Umbrella Policies.

**3. CANCELLATION-**

This Policy may be cancelled by the Named Assured or by the Company or their representative by mailing written notice to the other party stating when, not less than thirty (30) days (ten [10] days for non-payment of premium) thereafter, cancellation shall be effective. The mailing of notice as aforesaid by the Company or their representative to the Named Assured at the address shown in this Policy shall be sufficient proof of notice and the insurance under this Policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by the Company or their representative shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Company shall retain the customary short rate proportion of the premium for the period this Policy has been in force. If this Policy shall be cancelled by the Company the Company shall retain the pro rata proportion of the premium for the period this Policy has been in force. Notice of cancellation by the Company shall be effective even though the Company makes no payment or tender of return premium.

**4. NOTICE OF OCCURRENCE-**

Whenever the Assured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which in the event that the Assured shall be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 7 of the Schedule as soon as practicable, provided however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claim.

**5. OTHER INSURANCE-**

If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this Policy, other than insurance that is in excess of the insurance afforded by this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.

GEC 027466     WRG Policies 05932

000387

XXX-001465

# EXHIBIT K52

000388

XXX-001466

**NESCO** Northbrook
Excess and Surplus
Insurance Company
Northbrook, Illinois

# Declarations

Renewal of No. 63    006  854

63    003  153 ✓
Policy Number

Item 1. Named Insured:    W.R. Grace & Co.

Item 2. Address:    Grace Plaza
1114 Avenue of the Americas
New York, New York 10036

Item 3. Policy Period:    From:    July 1, 1981    To:    July 1, 1982
12:01 A.M. Standard Time at the address of the Named Insured as stated herein

Item 4. Coverage:    Excess Umbrella Liability

Item 5. Limits of Liability:    $3,750,000. any one occurrence and in the aggregate part of $20,000,000.
any one occurrence and in the aggregate (where applicable) excess of
$5,000,000. any one occurrence and in the aggregate (where applicable)
excess of Primary. ✓

Item 6. Premium:    Advance:    $75,000.00    Annual Minimum:    $75,000.00
Rate:    $0.0120 per $1,000. Sales

If the Policy Period is more than one year and the premium is to be paid in installments, Premium is payable on:

Not applicable    Not applicable    Not applicable
Effective Date    1st Anniversary    2nd Anniversary

In the event of cancellation by the Named Insured, NORTHBROOK shall receive and retain not less than
as the policy minimum premium.

RU 72-2 (Jacket)
Countersignature Date    July 10, 19 81

Authorized Representative

RU9-3

BROKER COPY

GEC 027473

WRG Policies
05939

000389

XXX-001467

02241

**B. Maintenance of Underlying Umbrella Insurance**

This policy is subject to the same terms, definitions (except for those terms defined in paragraph III), exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies listed in Section I, Coverage, prior to the happening of an occurrence for which claim is made under this policy. Any exclusion or restriction of coverage applicable to any Underlying Umbrella Policy shall also apply to this policy regardless of whether such exclusion or restriction applies to all underlying policies.

**C.** It is a condition of this policy that the Underlying Umbrella Policies or renewals or replacements thereof not more restrictive in coverage, shall be maintained in full effect during the currency of this policy, except for any reduction in the aggregate limit or limits contained therein solely by payment of claims in respect of occurrences happening during the period of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, NORTHBROOK shall only be liable to the same extent as if the Insured had complied with this condition.

The Named Insured shall give notice to NORTHBROOK as soon as practicable of any exhaustion of aggregate limits of any underlying policy.

**D. Premium**

The premium for this policy shall be computed on the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified, is an estimated premium only. The earned premium shall be computed upon termination of this policy, or at the end of each twelve month period if the policy is written for a three year term. If the earned premium is more than the advance premium paid, the Insured shall pay the excess to NORTHBROOK, if less, NORTHBROOK shall return the difference, subject to the annual minimum premium for each twelve months of the policy period and the policy minimum premium as stated in the Declarations. See Description of Terms Used as Premium Basis.

**E. Inspection and Audit**

NORTHBROOK may inspect the Insured's property and operations and audit the Insured's books and records at any time at NORTHBROOK'S option during the policy period and within three years after the final termination of this policy. These actions are solely for NORTHBROOK'S benefit and they shall not be a representation that the Insured's property and operations are safe, healthful or are in compliance with any law, rule or regulation.

**F. Notice of Occurrence**

When there is an occurrence which may result in a claim under this policy, the Insured shall notify NORTHBROOK at its Home Office address in writing as soon as possible, giving particulars sufficient to identify the Insured and available information on time, place, and circumstances of the occurrence. The Insured will also send NORTHBROOK any legal papers that relate to the occurrence.

**G. Suit Against NORTHBROOK**

No action shall lie against NORTHBROOK unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and NORTHBROOK. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join NORTHBROOK as a codefendant in any action against the Insured to determine the Insured's liability, nor shall NORTHBROOK be impleaded by the Insured or the Insured's Legal Representative. Bankruptcy or insolvency of the Insured shall not relieve NORTHBROOK of any of its obligations hereunder.

**H. Other Insurance**

Except as respects coverage written specifically as contributing insurance with this policy or to apply excess of this policy, this policy shall be excess insurance over any other insurance available to the Insured with respect to an occurrence covered hereunder.

**I. Subrogation**

In the event of any payment under this policy, NORTHBROOK shall be subrogated to all of the Insured's rights of recovery against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

The amount recovered as subrogation shall be apportioned in the inverse order of payment of ultimate net loss to the extent of the actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries.

**J. Changes**

This policy must be endorsed in writing to change any of its provisions.

**K. Assignment**

Assignment of interest under this policy shall not bind NORTHBROOK unless its consent is endorsed hereon.

**L. Cancellation**

This policy may be cancelled by the Insured by surrender thereof to NORTHBROOK or by mailing to NORTHBROOK written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by NORTHBROOK by mailing to the Insured at the address shown in this policy or last known address written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if NORTHBROOK cancels this policy because the Insured has failed to pay a premium when due, this policy may be cancelled by NORTHBROOK by mailing a written notice of cancellation to the Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date of the cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by NORTHBROOK shall be equivalent to mailing.

If the Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If NORTHBROOK cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. NORTHBROOK'S check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the Insured.

**M. Sole Agent Clause**

If there is more than one Named Insured be    nder, the Named Insured first named in Item 1 of the    clarations shall be deemed to be the agent for all Named Insureds with respect to no.    of cancellation, payment of return premium, paym    of unabsorbed premium deposit refunds (dividends) and in all other matters pertaining to this insurance.

GEC 027475

WRG Policies
05941

# EXHIBIT K53

**000391**

**XXX-001469**

**ATTENTION** X111, 7
**PLEASE NOTE**

SEND ALL CLAIMS TO:
NATIONAL UNDERWRITING AGENCY, INC.
150 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606

**TRANSIT CASUALTY COMPANY**
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI
(A stock insurance company, herein called the company)

# Declarations—Excess Umbrella Policy

## SCU 955978

Policy Number

Renewal of No. SCU 955-565

Item 1. Named Insured:   W. R. GRACE & COMPANY

Item 2. Address:   1114 Avenue of the Americas
New York, New York  10036

Item 3. Policy Period:   From: June 30, 1981   To: June 30, 1982
12:01 A.M. Standard Time at the address of the Named Insured as stated herein

Item 4. Limits of Liability:   $1,000,000 each occurrence and/or in the aggregate part of
$20,000,000 excess of $5,000,000 excess of underlying.

Item 5. Premium:   Advance: $20,000   Annual Minimum: $20,000

Rate:  $.0601   Premium Basis:  Per $1,000 of Sales

When used as a premium basis:
1. "admissions" means the total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;
2. "cost" means the total cost to the named insured with respect to operations performed for the named insured during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;
3. "receipts" means the gross amount of money charged by the named insured for such operations by the named insured or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the named insured collects as a separate item and remits directly to a governmental division;
4. "remuneration" means the entire remuneration earned during the policy period by proprietors and by all employees of the named insured, other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company;
5. "sales" means the gross amount of money charged by the named insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the named insured and such others collect as a separate item and remit directly to a governmental division.

Countersignature Date   July 9,   19 81

Authorized Representative

T.V. 9810 A
ECC

GEC 027484

WRG Policies
05950

000392

XXX-001470

**TRANSIT CASUALTY CO......ANY**
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI
(A stock insurance company. herein called the company)

SCU 955-978

# Excess Umbrella Coverage—Insuring Agreements

**1. Coverage**

The Company hereby agrees. subject to the limitations, terms and conditions hereinafter mentioned. to indemnify the insured for all sums which the insured shall be obliged to pay by reason of the liability imposed upon the insured by law, or assumed under contract or agreement by the insured for damages. direct or consequential and expenses on account of:

(a) Personal Injuries, including death at any time resulting therefrom,

(b) Property Damage,

(c) Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

**UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:**

| Carrier | Limits |
|---|---|
| Underwriters At Lloyd's London & British Ins. Cos. (80%) Cover Note No. PY 107779 | $5,000,000 each occurrence and/or in the aggregate excess of primary insurances. |
| Northbrook Excess & Surplus Insurance Co. (20%) | |

**2. Limit of Liability — Underlying Limits**

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a) $ 5,000,000       ultimate net loss in respect of each occurrence, but

(b) $ 5,000,000       in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employee of the insured

and the Company shall then be liable to pay only the excess thereof up to a further

(c) $ 1,000,000 p/o $20,000,000       ultimate net loss in all in respect of each occurrence — subject to a limit of

(d) $ 1,000,000 p/o $20,000,000       in the aggregate for each annual period during the currency of this policy, separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employee of the insured.

07/09/81
T.V. 9812 A
mcc

GEC 027485

WRG Policies
05951

000393

XXX-001471

# Conditions

Transit Casualty (herein after called the Company) agrees with the Named Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy;

The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.

I.    **Premium Computation:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Named Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

II.    **Inspection and Audit:** The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

III.    **Action Against Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. Bankruptcy or insolvency of the Insured or his estate shall not relieve the Company of any of its obligations hereunder.

IV.    **Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

V.    **Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

VI.    **Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; it, however, the Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Insured's legal representative as Insured; provided that notice of cancellation addressed to the Named Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

VII.    **Cancellation:** This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, (except in the instance of non-payment of premium to the COMPANY not less than ten (10) days thereafter), such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the NAMED INSURED or by the COMPANY shall be equivalent to mailing. If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED. If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS; and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

VIII.    **Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Secretary and President and countersigned on the Declarations page by an authorized representative.

_Alex Steinborn_
Secretary

_W. L. Gregory_
President

GEC 027488    WRG Policies
05954

**000394**

XXX-001472

# EXHIBIT K54

000395

XXX-001473

VOL. X V  TAB. 1  02560

No. KY017582

100% of 80% of the
limits stated herein

**Whereas** W.R. GRACE AND CO. (as more fully
described herein)
of 1114 Avenue of the Americas, New York, N.Y.10036,
U.S.A.
hereinafter called the Assured, have    paid U.S.$393,400.00′
Premium or Consideration to Us, the undersigned Assurers to
~~xxxxxxxxxxxxxxxxxxxxxx~~ indemnify the Assured
in respect of UMBRELLA LIABILITY as per wording
attached hereto,

during the period commencing at the **thirtieth**        day of
**June,**                    19 **82** , and ending at the **thirtiet**
day of **June,**            19 **85** . both days at 12.01 a.m.
                              Local Standard Time

**Now know ye** that we the undersigned Assurers do hereby bind ourselves each **Company**
for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors,
Administrators and Assigns, all such loss as above stated, not exceeding ~~xxxxxxx~~ ONE HUNDRED PER
CENT of EIGHTY PER CENT of the limits stated herein

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that
in proportion to the several sums by each of us subscribed against our respective names not exceeding the several
sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or
otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

**In witness whereof** I being a representative of the Leading Office which is duly authorised by the
Assurers have hereunto subscribed my name on their behalf this        23rd                day of
**November        1983**

PSGB/rjb

GEC 028307

WRG Policies
06760

02561

## UMBRELLA POLICY (LONDON 1971)

Named Assured:    As stated in Item 1 of the Declarations forming a part hereof
~~and/or subsidiary, associated, affiliated companies as owned and controlled~~
~~companies as now or hereafter constituted~~ and of which prompt notice has
been given to Underwriters (hereinafter called the "Named Assured").

### INSURING AGREEMENTS:

1.    COVERAGE -

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter
mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to
pay by reason of the liability:-

        (a)    imposed upon the Assured by law,

or    (b)    assumed under contract or agreement by the Named Assured and/or any
officer, director, stockholder, partner or employee of the Named Assured,
while acting in his capacity as such,

for damages on account of:-

        (i)    Personal Injuries

        (ii)   Property Damage

        (iii)  Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world.

11.    LIMIT OF LIABILITY -

Underwriters hereon shall be only liable for the ultimate net loss the excess of either:-

        (a)    the limits of the underlying insurances as set out in the attached schedule
in respect of each occurrence covered by said underlying insurances,

or    (b)    $ 100,000          ultimate net loss in respect of each occurrence not
covered by said underlying insurances,

                (hereinafter called the "underlying limits"):

and then only up to a further sum as stated in Item 2(a) of the Declarations in all in respect
of each occurrence - subject to a limit as stated in Item 2(b) of the Declarations in the
aggregate for each annual period during the currency of this Policy, separately in respect
of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational
Disease sustained by any employees of the Assured.

In the event of reduction or exhaustion of the aggregate limits of liability under said
underlying insurance by reason of losses paid thereunder, this Policy subject to all the
terms, conditions and definitions hereof shall:-

        (1)    in the event of reduction pay the excess of the reduced underlying limit

        (2)    in the event of exhaustion continue in force as underlying insurance.

The inclusion or addition hereunder of more than one Assured shall not operate to increase
Underwriters' limits of liability beyond those set forth in the Declarations.

WRG Policies
06761


GEC 028308

000397

XXX-001475

ATTACHING TO AND FORMING PART OF POLICY No. KY017582

## DECLARATIONS:

ITEM 1.    (a)   Named Assured:-    W.R.GRACE & CO. and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned controlled and/or managed Companies as now or hereinafter constituted.

    (b)   Address of Named Assured:-

        1114 Avenue of the Americas,
        New York N.Y.10036.
        U.S.A.

ITEM 2.   Limit of Liability – as Insuring Agreement 11 :-

    (a)   Limit in all in respect of each occurrence   $ 5,000,000

    (b)   Limit in the aggregate for each annual period where applicable   $ 5,000,000

ITEM 3.   Policy Period:-   30th June 1982 to 30th June 1985.
                        both days at 12.01 A.M.Local Standard Time

ITEM 4.   Notice of Occurrence (Condition G) to:-
                        Marsh & McLennan,Incorporated.
                        1221 Avenue of the Americas,New York,N.Y.10036. U.S.A.

ITEM 5.   Currency (Condition Q):- United States Dollars.

ITEM 6.   Payment of Premium (Condition Q) to:-
                        Marsh & McLennan Incorporated.
                        1221 Avenue of the Americas,New York,N.Y.10036, U.S.A.

ITEM 7.   Service of Process (Condition S) upon:-
                        Messrs Mendes and Mount.
                        3 Park Avenue.
                        New York N.Y.10016
                        U.S.A.

E.P.O.354B (8/76)                                        Page 11 of 11

GEC 028318

WRG Policies
06771

000398

XXX-001476

62301

1879G/JLC

# Bowring

COVER NOTE

**C.T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE

(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR
                    LONDON EC3

TELEX: 882191

Registered No. 78170 London

Please always  KYO17582
quote this No.

19th July, 1982
Date.................................

VAT No. 244 251 77 79

In accordance with your instructions we have arranged cover as follows:

TYPE:            UMBRELLA LIABILITY INCLUDING WORKER'S COMPENSATION ACT AND
                 EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM
                 E.R.I.S.A. (1974), AS EXPIRING.

FORM:            WORDING AS EXPIRING AS FAR AS APPLICABLE TO BE AGREED BY
                 UNDERWRITERS.

ASSURED:         W.R. GRACE & COMPANY ETAL AND/OR SUBSIDIARY, ASSOCIATED,
                 AFFILIATED COMPANIES AND/OR ORGANISATIONS OWNED, CONTROLLED
                 AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED PLUS
                 JOINT VENTURES AS EXPIRING.

PERIOD:          36 months at 30th June, 1982.

INTEREST:        Coverage in respect of all of the Insured's operations.

SUM INSURED:     80% of
                 $ 5,000,000    Each Occurrence (Aggregate Products and
                                Occupational Disease)

                 EXCESS OF:-

                 A)  The amount covered under underlying insurances as per
                     schedule attached.

                 B)  $ 100,000 Each Occurrence in respect of losses not covered
                     by said underlying insurances.

SITUATION:       WORLDWIDE.

GEC 028348

For the attention of F. Nasella.
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

WRG Policies
06801

000399

XXX-001477

# EXHIBIT K55

000400

XXX-001478



UMBRELLA LIABILITY POLICY

XIV, 2

# Transit Casualty Company

3700 WILSHIRE BOULEVARD  LOS ANGELES, CALIFORNIA 90010

ST. LOUIS, MISSOURI

(A Stock insurance company, herein called the company)

## TRANSIT CASUALTY COMPANY
### LOS ANGELES, CALIFORNIA
### ST. LOUIS, MISSOURI

Agrees with the NAMED INSURED in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy;

## INSURING AGREEMENTS

**I.    COVERAGE**

To indemnify the INSURED for ULTIMATE NET LOSS, as defined hereinafter, in excess of RETAINED LIMIT, as herein stated, all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of:

A. PERSONAL INJURY, as hereinafter defined;
B. PROPERTY DAMAGE, as hereinafter defined;
C. ADVERTISING INJURY OR DAMAGE, as hereinafter defined, to which this policy applies, caused by an OCCURRENCE, as hereinafter defined, happening anywhere in the world.

**II.    UNDERLYING LIMIT—RETAINED LIMIT**

The Company shall be liable only for the ULTIMATE NET LOSS in excess of the greater of the INSURED'S:

A. UNDERLYING LIMIT—an amount equal to the limits of liability indicated beside the underlying insurance listed in the Schedule A of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the INSURED; or

B. RETAINED LIMIT—The amount specified in Item 3 I. B of the Declarations as the result of any one occurrence not covered by said underlying insurance, and which shall be borne by the INSURED.

**III.    LIMITS OF LIABILITY**

Regardless of the number of persons and organizations who are INSUREDS under this policy and regardless of the number of claims made and suits brought against any or all INSUREDS, the total limit of the Company's liability for ULTIMATE NET LOSS resulting from any one OCCURRENCE shall not exceed the amount specified in Item 3 I. of the declarations.

The Company's liability shall be further limited to the amount stated as the annual aggregate limit in Item 3 II. of the declarations on account of all OCCURRENCES during each policy year arising out of:

A. either the PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined; or

B. occupational disease by all employees of the INSURED.

In the event that the aggregate limits of liability of the underlying policies, listed in the schedule of underlying insurance, are exhausted solely as the result of OCCURRENCES taking place after the inception date of this policy, this policy shall, subject to the Company's limit of liability and to other terms of this policy, with respect to OCCURRENCES which take place during the period of this policy, continue in force as underlying insurance for the remainder of the policy year of the underlying policy or until the aggrgate limit of liability as stated in Item 3 II. is exhausted, but not for broader coverage than was provided by the exhausted underlying insurance.

In the event that the aggregate limits of liability of the underlying insurance are exhausted or reduced as the result of OCCURRENCES taking place prior to the inception date of this policy, the Company shall only be liable to the same extent as if the aggregate limits had not been so exhausted or reduced.

For the purpose of determining the limit of the Company's liability:
(a) all PERSONAL INJURY and PROPERTY DAMAGE arising out

of continuous or repeated exposure to substantially the same general conditions, and

(b) all ADVERTISING INJURY OR DAMAGE involving the same injurious material or act, regardless of the number or kind of media used, or frequency of repetition thereof, whether claim is made by one or more persons

shall be considered as arising out of one OCCURRENCE.

**IV.    DEFENSE—SETTLEMENT**

A. With respect to any OCCURRENCE not covered, as warranted, by the underlying policies listed in Schedule A hereof, whether collectible or not, or not covered by any other underlying insurance collectible by the INSURED, but covered by the terms and conditions of this policy, except for the RETAINED LIMIT stated in Item 3 L B of the Declarations, the Company shall:

(1) defend any suit against the insured alleging PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE and seeking damages therefore, even if such suit is groundless, false or fraudulent; but the COMPANY may make such investigation, negotiation or settlement of any claim or suit as it deems expedient. The INSURED shall promptly reimburse the COMPANY for any amount paid in the satisfaction of cases defended hereunder within the retained limit after making proper deduction for all recoveries and salvage collectible. but excluding all loss expense and legal expense

(2) with respect to any suit defended under the terms of this coverage, in addition to the applicable limit of liability under this policy the COMPANY shall:

(a) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds;

(b) pay all expenses incurred by the COMPANY, all costs taxed against the INSURED in any such suit and all interest accruing after the entry of judgment until the COMPANY has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the COMPANY'S liability thereon;

(c) pay reasonable expenses incurred by the INSURED at the COMPANY'S request in assisting the COMPANY in the investigation or defense of any claim or suit including actual loss of earnings not to exceed $25 per day, but the COMPANY shall not be required to reimburse the INSURED for salaries of employees of the INSURED.

In jurisdictions where the COMPANY may be prevented by law or otherwise from carrying out this agreement, the COMPANY shall pay any expense incurred with its written consent in accordance with this agreement.

B. When underlying insurance, whether or not listed in Schedule A, does apply to an OCCURRENCE, the COMPANY shall have no duty to pay defense, investigations, settlement or legal expenses covered by such underlying insurance; however, the COMPANY shall have the right and opportunity to associate with the INSURED and any underlying insurer in the defense and control of any claim or suit reasonably likely to involve the COMPANY under this policy.

T.V. 9800 A (Rev 3 82)

GEC 027951          WRG Policies
                              06412

vasion of the rights of privacy, unless arising out of advertising activities,
which occurs during the policy period.

**⬤MIUM BASIS:**

...n used as a premium basis:

"admissions" means the total number of persons, other than employees of the NAMED INSURED, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

(2) "cost" means the total cost to the NAMED INSURED with respect to operations performed for the NAMED INSURED during the policy period by independent contractors of all work let or sublet in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due.

(3) "receipts" means the gross amount of money charged by the NAMED INSURED for such operations by the NAMED INSURED or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the NAMED INSURED collects as a separate item and remits to a governmental division;

(4) "remuneration" means the entire remuneration earned during the policy period by proprietors and by all employees of the NAMED INSURED, other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company.

(5) "sales" means the gross amount of money charged by the NAMED INSURED or by others trading under his name for all

goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the NAMED INSURED and such others collect as a separate item and remit directly to a governmental division.

M. **PRODUCTS HAZARD:**
Includes PERSONAL INJURY and PROPERTY DAMAGE arising out of the INSURED's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the INSURED and after physical possession of such products has been relinquished to others.

N. **PROPERTY DAMAGE:**
The term PROPERTY DAMAGE wherever used herein means:
(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, and
(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an OCCURRENCE during the policy period.

O. **ULTIMATE NET LOSS:**
Means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the INSURED is legally liable after making deductions for all other recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy and also includes investigation, adjustment, appraisal, appeal and defense costs paid or incurred by the INSURED with respect to damages covered hereunder. "ULTIMATE NET LOSS" does not include (a) costs and expenses which an underlying insurer has paid or incurred or is obligated to pay to or on behalf of the INSURED, (b) office costs and expenses of the INSURED and salaries and expenses of employees of the INSURED or (c) general retainer fees of counsel retained by the INSURED.

## CONDITIONS

A. **Premium Computations:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be ... ted in accordance with the rates and minimum premium applicable to this policy as stated in the Declarations. If the earned ...rium thus computed exceeds the advance premium paid, the NAMED INSURED shall pay the excess to the COMPANY; if less, the COMPANY shall return to the NAMED INSURED the unearned portion paid by such INSURED. The NAMED INSURED shall maintain adequate records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the COMPANY at the end of the policy period, as the COMPANY may direct.

B. **Inspection and Audit:** The COMPANY shall be permitted but not obligated to inspect the NAMED INSURED'S property and operations at any time. Neither the COMPANY'S right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the NAMED INSURED or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The COMPANY may examine and audit the NAMED INSURED'S books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

C. **Severability of Interest:** The term "INSURED" is used severally and not collectively except with respect to Insuring Agreement II (UNDERLYING LIMITS—RETAINED LIMITS), Insuring Agreement III (LIMITS OF LIABILITY) and Condition H (Other Insurance). The inclusion in this policy of more than one INSURED shall not operate to increase the COMPANY'S total liability for all INSURED'S covered by this policy beyond the limits set forth in Item 3, 3 I B and 3 II of the Declarations.

D. **Notice of Occurrence, Claim or Legal Proceeding:** Upon the happening of an OCCURRENCE reasonably likely to involve the COMPANY hereunder, written notice shall be given as soon as practicable to the COMPANY or any of its authorized agents. Such notice shall contain particulars sufficient to identify the INSURED and the fullest information obtainable at the time.

The INSURED shall give like notice of any claim made or legal ... ...eding commenced on account of such occurrence. If legal ...edings are begun, the INSURED, when requested by the COMPA-..Y, shall forward to it each paper thereon, or a copy thereof, ...ived by the INSURED or the INSURED'S representatives, together with copies of reports of investigations made by the INSURED with respect to such claim proceedings.

E. **Action Against COMPANY:** No action shall lie against the COMPANY unless, as a condition precedent thereto, the INSURED shall have fully complied with all the terms of this policy, nor until the

amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the COMPANY.

F. **Appeals:** In the event the INSURED or the INSURED'S underlying insurer elects not to appeal a judgment in excess of the RETAINED LIMIT, the COMPANY may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the COMPANY for ULTIMATE NET LOSS exceed the amount set forth in Insuring Agreement II (UNDERLYING LIMIT—RETAINED LIMIT) and Insurance Agreement III (LIMITS OF LIABILITY) for any one OCCURRENCE plus the taxable costs, disbursements and interests incidental to such appeal.

G. **Payment of ULTIMATE NET LOSS:** Coverage under this policy shall not apply unless and until the INSURED, or the INSURED'S underlying insurer, shall be obligated to pay the amount of the UNDERLYING LIMIT or RETAINED LIMIT on account of PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE. When the amount of ULTIMATE NET LOSS has finally been determined, the COMPANY shall promptly indemnify the INSURED the amount of ULTIMATE NET LOSS falling within the terms of this policy.

H. **Other Insurance:** If other collectible insurance with any other INSURER is available to the INSURED covering a loss covered hereunder, except insurance purchased to apply in excess of the sum of the RETAINED LIMIT and LIMIT OF LIABILITY hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance. If collectible insurance under any other policy(ies) of the COMPANY is available to the INSURED, covering a loss also covered hereunder (other than underlying insurance of which the insurance afforded by this policy is in excess), the COMPANY'S total liability shall in no event exceed the greater or greatest limit of liability applicable to such loss under this or any other such policy(ies). If other collectible insurance under any policy(ies) of the COMPANY is available to the INSURED, the ULTIMATE NET LOSS as the result of any one OCCURRENCE not covered by underlying insurance shall not be cumulative.

I. **Underlying Insurance:** If underlying insurance applicable in any one OCCURRENCE is exhausted by payment of judgment or settlement on behalf of the INSURED, the COMPANY shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the INSURED resulting from the same occurrence, but only where this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another insurer.

J. **Bankruptcy and Insolvency:** In the event of the bankruptcy or insolvency of the INSURED or any entity comprising the INSURED, the

GEC 027954          WRG Policies
                                    06415

COMPANY shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolv

**K. Subrogation:** In the event of any payment under this policy, the COMPANY shall be subrogated to all the INSURED'S rights of recovery against any person or organization and the INSURED shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.
The amount recovered as subrogation shall be apportioned in the inverse order of payment of ULTIMATE NET LOSS to the extent of the actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries.

**L. Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the COMPANY from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by an endorsement issued to form a part hereof, signed by an authorized representative of the COMPANY.

**M. Assignment:** Assignment of interest under this policy shall not bind the COMPANY until its consent is endorsed hereon; if, however, the NAMED INSURED shall be adjudged bankrupt or insolvent, this policy shall cover the NAMED INSURED'S legal representative as NAMED INSURED; provided that notice of cancellation addressed to the INSURED named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**N. Sole Agent Clause:** The NAMED INSURED as stated in the DECLARATIONS shall be primarily responsible for payment of all premiums and shall act on behalf of all other INSUREDS with respect to the giving and receipt of any return premium that may become payable under this policy.

**O. Cancellation:** This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, (except in the instance of non-payment of premium to the COMPANY not less than ten (10) days thereafter), such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date

of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the NAMED INSURED or by the COMPANY shall be equivalent to mailing. If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation if effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED.

If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS; and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

**P. Maintenance of Underlying Insurance:** It is warranted by the Insured that the underlying policy(ies) listed in Schedule A, or renewals or replacements thereof not more restrictive in coverage, shall be maintained in force during the currency of this policy, except for any reduction in the aggregate limit(s) contained therein solely by payment of claims in respect of OCCURRENCES happening during the period of this policy. In the event of failure by the INSURED so to maintain such policy(ies) in force, the insurance afforded by this policy shall apply in the same manner it would have applied had such policy(ies) been so maintained in force.

**Q. Employers' Liability—Common Law Defenses:** As a condition to the recovery of any loss under this policy, with respect to personal injury to or the death of any employee arising out of and in the course of employment by the NAMED INSURED, the NAMED INSURED warrants that it has not and will not abrogate its common law defenses under any worker's compensation or occupational disease law by rejection thereof, or otherwise in the event the NAMED INSURED should, at any time during the policy period, abrogate such defenses, such insurance as is afforded with respect to such employee shall automatically terminate at the same time.

**R. Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.



**IN WITNESS WHEREOF,** the Transit Casualty Company has caused this policy to be signed by its president and secretary, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

_Alex Steinhorn_
Secretary

_W. L. Gregory_
President

GEC 027955

WRG Policies
06416

000403

XXX-001481

NO. UMB950239

STOCK COMPANY

DECLARATIONS — UMBRELLA LIABILITY POLICY

New
Renewal of No.

...sit Casualty Company

... ... BOULEVARD    LOS ANGELES, CALIFORNIA 90010

ST. LOUIS, MISSOURI

(A stock insurance company, herein called the company)



Item 1. Named Insured:    W. R. Grace & Company

Address:    1114 Avenue of the Americas
New York, New York    10036

Item 2. Policy Period: From  June 30, 1982    To:    June 30, 1983
12:01 A.M., Standard Time at the address of the Named Insured as stated herein.

Item 3. Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

I.   $See Endt #1 Single limit any one OCCURRENCE combined PERSONAL INJURY, PROPERTY DAMAGE and ADVERTISING INJURY or DAMAGE in excess of:

A.  The amount recoverable under the underlying insurance as set out in Schedule A attached or

B.  $See Endt #1 Ultimate net loss as the result of any one occurrence not covered by said underlying insurance.

II.  $See Endt #1 Limit in the aggregate for each annual period with respect to:

A.  The PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined, or

B.  Occupational Disease sustained by employees of the INSURED.

Item 4. Premium:  $95,000.

Advance Premium $95,000.    Rate        Premium Basis

Minimum Premium $95,000.    20% $.0583 per $1,000 sales

Items 5.  Warranted that, during the past three years, no insurer has cancelled insurance issued to the NAMED INSURED, similar to that afforded hereunder, unless otherwise stated herein.

Countersigned by: _____

10/04/82
T.V. 0021 A

GEC 027956

WRG Policies
06417

000404

XXX-001482

# ENDORSEMENT  W. R. GRACE & COMPANY

POLICY NO. UMB 950-239
END'T. NO. 1

Effective date: June 30, 1982

It is hereby agreed that Item 3, Limits of Liability, is completed to read as follows:

1. $1,000,000 single limit any one occurrence part of $5,000,000 single limit any one occurrence combined Personal Injury, Property Damage and Advertising Injury or Damage in excess of:

   A. the amount recoverable under the underlying insurance as set out in Schedule A attached, or

   B. $25,000 ultimate net loss as the result of any one occurrence not covered by said underlying insurance.

2. $1,000,000 single limit in the aggregate part of $5,000,000 single in the aggregate for each annual period with respect to:

   A. the Products Hazard or Completed Operations Hazard or both combined, or

   B. Occupational Disease sustained by employes of the Insured.

Countersignature Date:    October 4,    19 82

TV 9820

Authorized Representative

GEC 027957

WRG Policies
06418

**000405**

XXX-001483

UMBRELLA LIABILITY POLICY                    XV, 2



# Transit Casualty Company

3700 WILSHIRE BOULEVARD   LOS ANGELES, CALIFORNIA 90010

ST. LOUIS, MISSOURI

(A Stock insurance company, herein called the company)

---

## TRANSIT CASUALTY COMPANY
### LOS ANGELES, CALIFORNIA
### ST. LOUIS, MISSOURI

Agrees with the NAMED INSURED in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy;

### INSURING AGREEMENTS

**I.    COVERAGE**

To indemnify the INSURED for ULTIMATE NET LOSS, as defined hereinafter, in excess of RETAINED LIMIT, as herein stated, all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of:

A. PERSONAL INJURY, as hereinafter defined;
B. PROPERTY DAMAGE, as hereinafter defined;
C. ADVERTISING INJURY OR DAMAGE, as hereinafter defined, to which this policy applies, caused by an OCCURRENCE, as hereinafter defined, happening anywhere in the world.

**II.    UNDERLYING LIMIT—RETAINED LIMIT**

The Company shall be liable only for the ULTIMATE NET LOSS in excess of the greater of the INSURED'S:

A. UNDERLYING LIMIT—an amount equal to the limits of liability indicated beside the underlying insurance listed in the Schedule A of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the INSURED; or

B. RETAINED LIMIT—The amount specified in Item 3 I. B of the Declarations as the result of any one occurrence not covered by said underlying insurance, and which shall be borne by the INSURED.

**III.    LIMITS OF LIABILITY**

Regardless of the number of persons and organizations who are INSUREDS under this policy and regardless of the number of claims made and suits brought against any or all INSUREDS, the total limit of the Company's liability for ULTIMATE NET LOSS resulting from any one OCCURRENCE shall not exceed the amount specified in Item 3 I. of the declarations.

The Company's liability shall be further limited to the amount stated as the annual aggregate limit in Item 3 II. of the declarations on account of all OCCURRENCES during each policy year arising out of:

A. either the PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined; or

B. occupational disease by all employees of the INSURED.

In the event that the aggregate limits of liability of the underlying policies, listed in the schedule of underlying insurance, are exhausted solely as the result of OCCURRENCES taking place after the inception date of this policy, this policy shall, subject to the Company's limit of liability and to other terms of this policy, with respect to OCCURRENCES which take place during the period of this policy, continue in force as underlying insurance for the remainder of the policy year until the underlying policy or until the aggrgate limit of liability as stated in Item 3 II. is exhausted, but not for broader coverage than was provided by the exhausted underlying insurance.

In the event that the aggregate limits of liability of the underlying insurance are exhausted or reduced as the result of OCCURRENCES taking place prior to the inception date of this policy, the Company shall only be liable to the same extent as if the aggregate limits had not been so exhausted or reduced.

For the purpose of determining the limit of the Company's liability:

(a) all PERSONAL INJURY and PROPERTY DAMAGE arising out of continuous or repeated exposure to substantially the same general conditions, and

(b) all ADVERTISING INJURY OR DAMAGE involving the same injurious material or act, regardless of the number or kind of media used, or frequency of repetition thereof, whether claim is made by one or more persons

shall be considered as arising out of one OCCURRENCE.

**IV.    DEFENSE—SETTLEMENT**

A. With respect to any OCCURRENCE not covered, as warranted, by the underlying policies listed in Schedule A hereof, whether collectible or not, or not covered by any other underlying insurance collectible by the INSURED, but covered by the terms and conditions of this policy, except for the RETAINED LIMIT stated in Item 3 I. B of the Declarations, the Company shall:

(1) defend any suit against the insured alleging PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE and seeking damages therefore, even if such suit is groundless, false or fraudulent; but the COMPANY may make such investigation, negotiation or settlement of any claim or suit as it deems expedient. The INSURED shall promptly reimburse the COMPANY for any amount paid in the satisfaction of cases defended hereunder within the retained limit after making proper deduction for all recoveries and salvage collectible, but excluding all loss expense and legal expense

(2) with respect to any suit defended under the terms of this coverage, in addition to the applicable limit of liability under this policy the COMPANY shall:

(a) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit. but without any obligation to apply for or furnish such bonds;

(b) pay all expenses incurred by the COMPANY, all costs taxed against the INSURED in any such suit and all interest accruing after the entry of judgment until the COMPANY has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the COMPANY'S liability thereon;

(c) pay reasonable expenses incurred by the INSURED at the COMPANY's request in assisting the COMPANY in the investigation or defense of any claim or suit including actual loss of earnings not to exceed $25 per day, but the COMPANY shall not be required to reimburse the INSURED for salaries of employees of the INSURED.

In jurisdictions where the COMPANY may be prevented by law or otherwise from carrying out this agreement, the COMPANY shall pay any expense incurred with its written consent in accordance with this agreement.

B. When underlying insurance, whether or not listed in Schedule A, does apply to an OCCURRENCE, the COMPANY shall have no duty to pay defense, investigations, settlement or legal expenses covered by such underlying insurance; however, the COMPANY shall have the right and opportunity to associate with the INSURED and any underlying insurer in the defense and control of any claim or suit reasonably likely to involve the COMPANY under this policy.

GEC 028361

WRG Policies
06814

**000406**

XXX-001484

vasion of the rights of privacy, unless arising out of advertising activities,
which occurs during the policy period.

L.  ~EMIUM BASIS:

⬤

.n used as a premium basis:

"admissions" means the total number of persons, other than employees of the NAMED INSURED, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

(2) "cost" means the total cost to the NAMED INSURED with respect to operations performed for the NAMED INSURED during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due.

(3) "receipts" means the gross amount of money charged by the NAMED INSURED for such operations by the NAMED INSURED or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the NAMED INSURED collects as a separate item and remits directly to a governmental division;

(4) "remuneration" means the entire remuneration earned during the policy period by proprietors and by all employees of the NAMED INSURED, other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company,

(5) "sales" means the gross amount of money charged by the NAMED INSURED or by others trading under his name for all

M.  PRODUCTS HAZARD:

Includes PERSONAL INJURY and PROPERTY DAMAGE arising out of the INSURED's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the INSURED and after physical possession of such products has been relinquished to others.

N.  PROPERTY DAMAGE:

The term PROPERTY DAMAGE wherever used herein means:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, and

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an OCCURRENCE during the policy period.

O.  ULTIMATE NET LOSS:

Means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the INSURED is legally liable after making deductions for all other recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy and also includes investigation, adjustment, appraisal, appeal and defense costs paid or incurred by the INSURED with respect to damages covered hereunder. "ULTIMATE NET LOSS" does not include (a) costs and expenses which an underlying insurer has paid or incurred or is obligated to pay to or on behalf of the INSURED, (b) office costs and expenses of the INSURED and salaries and expenses of employees of the INSURED or (c) general retainer fees of counsel retained by the INSURED.

## CONDITIONS

A.  Premium Computations: The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be ited in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned 'ium thus computed exceeds the advance premium paid, the NAMED INSURED shall pay the excess to the COMPANY; if less, the COMPANY shall return to the NAMED INSURED the unearned portion paid by such INSURED. The NAMED INSURED shall maintain adequate records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the COMPANY at the end of the policy period, as the COMPANY may direct.

B.  Inspection and Audit: The COMPANY shall be permitted but not obligated to inspect the NAMED INSURED's property and operations at any time. Neither the COMPANY's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the NAMED INSURED or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The COMPANY may examine and audit the NAMED INSURED's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

C.  Severability of Interest: The term "INSURED" is used severally and not collectively except with respect to Insuring Agreement II (UNDERLYING LIMITS—RETAINED LIMITS), Insuring Agreement III (LIMITS OF LIABILITY) and Condition H (Other Insurance). The inclusion in this policy of more than one INSURED shall not operate to increase the COMPANY's total liability for all INSURED'S covered by this policy beyond the limits set forth in Item 3 I, 3 I B and 3 II of the Declarations.

D.  Notice of Occurrence, Claim or Legal Proceeding: Upon the happening of an OCCURRENCE reasonably likely to involve the COMPANY hereunder, written notice shall be given as soon as practicable to the COMPANY or any of its authorized agents. Such notice shall contain particulars sufficient to identify the INSURED and the fullest information obtainable at the time.

The INSURED shall give like notice of any claim made or legal c eeding commenced on account of such occurrence. If legal .eedings are begun, the INSURED, when requested by the COM-NY, shall forward to it each paper thereon, or a copy thereof, .ewed by the INSURED or the INSURED's representatives, together with copies of reports of investigations made by the INSURED with respect to such claim proceedings.

E.  Action Against COMPANY: No action shall lie against the COMPANY unless, as a condition precedent thereto, the INSURED shall have fully complied with all the terms of this policy, nor until the

goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the NAMED INSURED and such others collect as a separate item and remit directly to a governmental division.

amount of the INSURED's obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the COMPANY.

F.  Appeals: In the event the INSURED or the INSURED's underlying insurer elects not to appeal a judgment in excess of the RETAINED LIMIT, the COMPANY may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the COMPANY for ULTIMATE NET LOSS exceed the amount set forth in Insuring Agreement II (UNDERLYING LIMIT—RETAINED LIMIT) and Insurance Agreement III (LIMITS OF LIABILITY) for any one OCCURRENCE plus the taxable costs, disbursements and interests incidental to such appeal.

G.  Payment of ULTIMATE NET LOSS: Coverage under this policy shall not apply unless and until the INSURED, or the INSURED's underlying insurer, shall be obligated to pay the amount of the UNDERLYING LIMIT or RETAINED LIMIT on account of PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE. When the amount of ULTIMATE NET LOSS has finally been determined, the COMPANY shall promptly indemnify the INSURED the amount of ULTIMATE NET LOSS falling within the terms of this policy.

H.  Other Insurance: If other collectible insurance with any other INSURER is available to the INSURED covering a loss covered hereunder, except insurance purchased to apply in excess of the sum of the RETAINED LIMIT and LIMIT OF LIABILITY hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance. If collectible insurance under any other policy(ies) of the COMPANY is available to the INSURED, covering a loss also covered hereunder (other than underlying insurance of which the insurance afforded by this policy is in excess), the COMPANY's total liability shall in no event exceed the greater or greatest limit of liability applicable to such loss under this or any other such policy(ies). If other collectible insurance under any policy(ies) of the COMPANY is available to the INSURED, the ULTIMATE NET LOSS as the result of any one OCCURRENCE not covered by underlying insurance shall not be cumulative.

I.  Underlying Insurance: If underlying insurance available in any one OCCURRENCE is exhausted by payment of judgment or settlement on behalf of the INSURED, the COMPANY shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the INSURED resulting from the same occurrence, but only where this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another insurer.

J.  Bankruptcy and Insolvency: In the event of the bankruptcy or insolvency of the INSURED or any entity comprising the INSURED, the

COMPANY shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolv

K. Subrogation: In the event of any payment under this policy, the COMPANY shall be subrogated to all the INSURED'S rights of recovery against any person or organization and the INSURED shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

The amount recovered as subrogation shall be apportioned in the inverse order of payment of ULTIMATE NET LOSS to the extent of the actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries.

L. Changes: Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the COMPANY from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the COMPANY.

M. Assignment: Assignment of interest under this policy shall not bind the COMPANY until its consent is endorsed hereon; if, however, the NAMED INSURED shall be adjudged bankrupt or insolvent, this policy shall cover the NAMED INSURED'S legal representative as NAMED INSURED: provided that notice of cancellation addressed to the INSURED named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

N. Sole Agent Clause: The NAMED INSURED as stated in the DECLARATIONS shall be primarily responsible for payment of all premiums and shall act on behalf of all other INSUREDS with respect to the giving and receipt of any return premium that may become payable under this policy.

O. Cancellation: This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, (except in the instance of non-payment of premium to the COMPANY not less than ten (10) days thereafter), such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date

of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the NAMED INSURED or by the COMPANY shall be equivalent to mailing. If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata.

Premium adjustment may be made at the time cancellation if effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED.

If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS; and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

P. Maintenance of Underlying Insurance: It is warranted by the Insured that the underlying policy(ies) listed in Schedule A, or renewals or replacements thereof not more restrictive in coverage, shall be maintained in force during the currency of this policy, except for any reduction in the aggregate limit(s) contained therein solely by payment of claims in respect of OCCURRENCES happening during the period of this policy. In the event of failure by the INSURED so to maintain such policy(ies) in force, the Insurance afforded by this policy shall apply in the same manner it would have applied had such policy(ies) been so maintained in force.

Q. Employers' Liability—Common Law Defenses: As a condition to the recovery of any loss under this policy, with respect to personal injury to or the death of any employee arising out of and in the course of employment by the NAMED INSURED, the NAMED INSURED warrants that it has not and will not abrogate its common law defenses under any worker's compensation or occupational disease law by rejection thereof, or otherwise in the event the NAMED INSURED should, at any time during the policy period, abrogate such defenses such insurance as is afforded with respect to such employee shall automatically terminate at the same time.

R. Terms of Policy Conformed to Statute: Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.



IN WITNESS WHEREOF, the Transit Casualty Company has caused this policy to be signed by its president and secretary, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

_Alex Steinhorn_
Secretary

_W. S. Gregory_
President

GEC 028365

WRG Policies
06818

000408

XXX-001486

NO. UMB950239

STOCK COMPANY

## DECLARATIONS — UMBRELLA LIABILITY POLICY

New
_____
Renewal of No.

...sit Casualty Company

... RE BOULEVARD   LOS ANGELES, CALIFORNIA 90010

ST. LOUIS, MISSOURI

(A stock insurance company, herein called the company)



Item 1.  Named Insured:   W. R. Grace & Company

Address:   1114 Avenue of the Americas
New York, New York   10036

Item 2.  Policy Period: From   June 30, 1982   To:   June 30, 1983
12:01 A.M., Standard Time at the address of the Named Insured as stated herein.

Item 3.  Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

I.  $See Endt #1 Single limit any one OCCURRENCE combined PERSONAL INJURY, PROPERTY DAMAGE and ADVERTISING INJURY or DAMAGE in excess of:

A.  The amount recoverable under the underlying insurance as set out in Schedule A attached or

B.  $See Endt #1 Ultimate net loss as the result of any one occurrence not covered by said underlying insurance.

II.  $See Endt #1 Limit in the aggregate for each annual period with respect to:

A.  The PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined, or

B.  Occupational Disease sustained by employees of the INSURED.

Item 4.  Premium:   $95,000.

Advance Premium $95,000.     Rate          Premium Basis
Minimum Premium $95,000.     20% $.0585 per $1,000 Sales

Items 5.  Warranted that, during the past three years, no insurer has cancelled insurance issued to the NAMED INSURED, similar to that afforded hereunder, unless otherwise stated herein.

Countersigned by: _____

GEC 028366

WRG Policies
06819

10/04/82

# ENDORSEMENT    W. R. GRACE & COMPANY

POLICY NO. UMB 950-23
END'T. NO.  1

Effective date:  June 30, 1982

It is hereby agreed that Item 3, Limits of Liability, is completed to
read as follows:

1.  $1,000,000 single limit any one occurrence part of
$5,000,000 single limit any one occurrence combined
Personal Injury, Property Damage and Advertising
Injury or Damage in excess of:

A.  the amount recoverable under the underlying insurance
as set out in Schedule A attached, or

B.  $25,000 ultimate net loss as the result of any one
occurrence not covered by said underlying insurance.

2.  $1,000,000 single limit in the aggregate part of
$5,000,000 single in the aggregate for each annual period
with respect to:

A.  the Products Hazard or Completed Operations Hazard or
both combined, or

B.  Occupational Disease sustained by employee of the Insured.

GEC 028367

Countersignature Date:      October 4,       19 82

Authorized Representative

WRG Policies
06820

TV 9620

# EXHIBIT K56

**000411**

**XXX-001489**

No: ...........................

COPY

VOL. XIV, TAB 2

**Whereas** W.R. GRACE AND CO (as more fully described in Item 1 (a) of the declarations attached hereto) of 1114 Avenue of the Americas, New York, U.S.A. U.S.$ 141,755.83 part of hereinafter called the Assured, have paid U.S.$800,000.00 Premium or Consideration to Us; the undersigned Assurers to indemnify the Assured in respect of EXCESS UMBRELLA LIABILITY as per wording attached hereto,

91.64% of 56.25% of the limits stated herein

during the period commencing at **Thirtieth** day of **June 1983**, and ending at **Thirtieth** day of **June 1986**, both days at 12.01 A.M. Local Standard Time

**Now know ye** that we the undersigned Assurers do hereby bind ourselves each **Company** for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors, Administrators and Assigns, all such loss as above stated, not exceeding NINETY-ONE DECIMAL SIX FOUR PER CENT OF FIFTY-SIX DECIMAL TWO FIVE PER CENT of the limits stated herein,

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that in proportion to the several sums by each of us subscribed against our respective names not exceeding the several sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

**In witness whereof** I being a representative of the Leading Office which is duly authorised by the Assurers have hereunto subscribed my name on their behalf this FOURTH day of MAY 1984

GEC 027963

WRG Policies
06424

MCB/so

DIRECTOR
H. S. WEAVERS (UNDERWRITING) AGENCIES LTD.

000412

XXX-001490

NAMED ASSURED: As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to Underwriters (hereinafter called the "Named Assured").

## INSURING AGREEMENTS:

I.   COVERAGE –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:–

   (a)   imposed upon the Assured by law,

or (b)   assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:–

   (i)    Personal Injuries

   (ii)   Property Damage

   (iii)  Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Declarations and issued by the Insurers as specified thereunder (hereinafter called the "Underlying Umbrella Insurers").

II.   LIMIT OF LIABILITY –

It is expressly agreed that liability shall attach to the Underwriters only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:–

$ (as stated in Item 3 of the Declarations)   ultimate net loss in respect of each occurrence, but

$ (as stated in Item 4 of the Declarations)   in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured and in respect of any other hazard subject to an aggregate limit in the Underlying Umbrella Policies

000413

XXX-001491

of the Declarations)                    each occurrence – subject to a limit of

$ (as stated in Item 6          in the aggregate for each annual
of the Declarations)            period during the currency of this
                                Policy, separately in respect of
                                Products Liability and in respect of
                                Personal Injury (fatal or non-fatal)
                                by Occupational Disease sustained
                                by any employees of the Assured and
                                in respect of any other hazard subject
                                to an aggregate limit in the Underlying
                                Umbrella Policies.

## CONDITIONS:

1.  **PRIOR INSURANCE AND NON CUMULATION OF LIABILITY –**

    It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

2.  **MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE –**

    This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder.   Should, however, any alteration be made in the premium for the Underlying Umbrella Policies during the currency of this Policy Underwriters reserve the right to adjust the premium hereon accordingly.

    It is a condition of this Policy that the Underlying Umbrella Policies shall be maintaine. in full effect during the Policy period without reduction of coverage or limits except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of Condition C. of the Underlying Umbrella Policies.

3.  **CANCELLATION –**

    This Policy may be cancelled by the Named Assured or by the Underwriters or their representatives by sending by registered mail notice to the other party stating when, not less than thirty (30) days thereafter, cancellation shall be effective.   The mailing of notice as aforesaid by Underwriters or their representatives to the Named Assured at the address shown in this Policy shall be sufficient proof of notice, and the insurance under this Policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by the Underwriters or their representatives shall be equivalent to mailing.   .

    If this Policy shall be cancelled by the Named Assured the Underwriters shall retain the customary short rate proportion of the premium for the period this Policy has been

I.P.O.355A (12/76)              GEC 027973          WRG Policies        Page 2 of 4
                                                    06434

000414

XXX-001492

## DECLARATIONS:

ITEM 1.   (a)   Named Assured:-   W.R. GRACE AND CO. and/or Subsidiary, Associated, Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted

        (b)   Address of Named Assured:-   1114 Avenue of the Americas, New York, N.Y. 10038.

ITEM 2.   (a)   Underlying Umbrella Policies:- 79DD1633C
                                          KYO17582

        (b)   Underlying Umbrella Insurers:- Certain Insurance Companies

ITEM 3.   Underlying Umbrella Limits
(Insuring Agreement II):-               U.S $ 5,000,000

ITEM 4.   Underlying Umbrella Aggregate Limits
(Insuring Agreement II):-               U.S. $ 5,000,000

ITEM 5.   Limit of Liability
(Insuring Agreement II):-               U.S. $ 20,000,000

ITEM 6.   Aggregate Limit of Liability
(Insuring Agreement II):-               U.S. $ 20,000,000

ITEM 7.   Policy Period:- 30th June, 1982 to 30th June 1985
                  both days at 12.01 A.M. Local Standard Time

ITEM 8.   Notice of Occurrence (Condition 4) to:-

                Marsh & McLennan Inc.,
                1221 Avenue of the Americas,
                New York, N.Y. 10020.

ITEM 9:   Service of Process (Condition 6) upon:-

                Messrs Mendes and Mount.
                3 Park Avenue,
                New York, N.Y. 10016
                U.S.A.

L.P.O.355A (12/76)

Page 4 of 4

GEC 027975     WRG Policies
                              06436

**000415**

XXX-001493

18818/DJ

# Bowring

**COVER NOTE**

**C.T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers

| | |
|---|---|
| P.O. BOX 145, | TELEPHONE: 01-283 3100 |
| THE BOWRING BUILDING, | TELEGRAMS: BOWINSUR |
| TOWER PLACE, | LONDON EC3 |
| LONDON EC3P 3BE | TELEX: 882191 |
| (Registered Office) | Registered No. 76170 London |

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

Please always
quote this No. ...... KY017782 ..............

Date 19th July, 1982 ...................

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

**TYPE:**         EXCESS UMBRELLA LIABILITY INCLUDING W.C.A. AND EMPLOYEE BENEFIT
                  LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974)

**FORM:**         Short Excess Form as expiring as far as applicable amendments if
                  any to be agreed by Underwriters

**ASSURED:**      W.R. GRACE & COMPANY ET AL and/or Subsidiary, Associated,
                  Affiliated Companies, and/or Organisations owned, controlled
                  and/or managed Companies as now or hereinafter constituted plus
                  joint ventures as expiring

**PERIOD:**       36 months at 30th June, 1982

**INTEREST:**     Coverage in respect Assured's Operations

**SUM INSURED:**  56.25% of
                  $20,000,000   each occurrence (Aggregate Products and
                                Occupational Disease)

                  **EXCESS OF:-**

                  $ 5,000,000   each occurrence (Aggregate Products and
                                Occupational Disease)

                  **WHICH IN TURN EXCESS OF:-**

                  Scheduled Primaries or $100,000 Self Insured Retention where no
                  concurrent insurance

**SITUATION:**    Worldwide

GEC 027990

For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

WRG Policies
06451

000416

XXX-001494

# Bowring

COVER NOTE

**C.T. BOWRING & CO. (INSURANCE) LTD.**
Lloyd's Brokers

Please examine this document carefully
and advise us immediately if it is incorrect
or does not meet your requirements.

P.O. BOX 145,          TELEPHONE: 01-283 3100
THE BOWRING BUILDING,  TELEGRAMS: BOWINSUR
TOWER PLACE,                      LONDON EC3
LONDON EC3P 3BE        TELEX: 882191
(Registered Office)    Registered No. 78170 London

*Please always* KY017782
*quote this No.* ...........................................

*Date* ......19th July, 1982..............

VAT No. 244 251779

In accordance with your instructions we have arranged cover as follows:

| | | |
|---|---|---|
| **TYPE:** | — | EXCESS UMBRELLA LIABILITY INCLUDING W.C.A. AND EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974) |
| **FORM:** | | Short Excess Form as expiring as far as applicable amendments if any to be agreed by Underwriters |
| **ASSURED:** | | W.R. GRACE & COMPANY ET AL and/or Subsidiary, Associated, Affiliated Companies, and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted plus joint ventures as expiring |
| **PERIOD:** | | 36 months at 30th June, 1982 |
| **INTEREST:** | | Coverage in respect Assured's Operations |

**SUM INSURED:**   56.25% of
$20,000,000    each occurrence (Aggregate Products and
               Occupational Disease)

EXCESS OF:-

$ 5,000,000    each occurrence (Aggregate Products and
               Occupational Disease)

WHICH IN TURN EXCESS OF:-

Scheduled Primaries or $100,000 Self Insured Retention where no
concurrent insurance

**SITUATION:**   Worldwide

GEC 027992

For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

WRG Policies
06453

COPY

No. ............................

**Whereas** W.R. GRACE AND CO (as more fully described in Item 1 (a) of the declarations attached hereto) of 1114 Avenue of the Americas, New York U.S. 10036, hereinafter called the Assured, have paid U.S. $800,000.00 part of Premium or Consideration to Us; the undersigned Assurers to indemnify the Assured in respect of EXCESS UMBRELLA LIABILITY as per wording attached hereto,

VOL. X V, TAB 3

91.64% of 56.25% of the limits stated herein

during the period commencing at **June** 19**82** **Thirtieth** day of , and ending at **Thirtieth** day of **June** 19**85** both days at 12.01 A.M. Local Standard Time

**Now know ye** that we the undersigned Assurers do hereby bind ourselves each **Company** for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors, Administrators and Assigns, all such loss as above stated, not exceeding NINETY-ONE DECIMAL SIX FOUR PER CENT OF FIFTY-SIX DECIMAL TWO FIVE PER CENT of the limits stated herein,

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that in proportion to the several sums by each of us subscribed against our respective names not exceeding the several sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

**In witness whereof** I being a representative of the Leading Office which is duly authorised by the Assurers have hereunto subscribed my name on their behalf this FOURTH day of MAY 1984

GEC 028373

JS/SB/sc

DIRECTOR
C E WEAVERS (UNDERWRITING) AGENCIES LTD.

WRG Policies
06826

000418

XXX-001496

NAMED ASSURED: As stated in Item 1 of the Declarations forming a part hereof and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to Underwriter (Hereinafter called the "Named Assured").

### INSURING AGREEMENTS:

I.    COVERAGE –

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:–

   (a)    imposed upon the Assured by law,

or (b)    assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:–

   (i)    Personal Injuries

   (ii)   Property Damage

   (iii)  Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Declarations and issued by the Insurers as specified thereunder (hereinafter called the "Underlying Umbrella Insurers").

II.    LIMIT OF LIABILITY –

It is expressly agreed that liability shall attach to the Underwriters only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:–

$ (as stated in Item 3        ultimate net loss in respect of each
   of the Declarations)        occurrence, but

$ (as stated in Item 4        in the aggregate for each annual
   of the Declarations)        period during the currency of this
                               Policy, separately in respect of
                               Products Liability and in respect of
                               Personal Injury (fatal or non-fatal)
                               by Occupational Disease sustained
                               by any employees of the Assured and
                               in respect of any other hazard subject
                               to an aggregate limit in the Underlying
                               Umbrella Policies

GEC 028382

L.P.O.355A (12/76)

WRG Policies
06835                Page 1 of

000419

XXX-001497

of the Declarations)                    each occurrence – subject to a limit of

$ (as stated in Item 6           in the aggregate for each annual
of the Declarations)             period during the currency of this
                                 Policy, separately in respect of
                                 Products Liability and in respect of
                                 Personal Injury (fatal or non-fatal)
                                 by Occupational Disease sustained
                                 by any employees of the Assured and
                                 ~~in respect of any other hazard subject~~
                                 ~~to an aggregate limit in the Underlying~~
                                 ~~Umbrella Policies.~~

## CONDITIONS:

1.  **PRIOR INSURANCE AND NON CUMULATION OF LIABILITY** –

    It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limi of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by an amounts due to the Assured on account of such loss under such prior insurance.

2.  **MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE** –

    This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder.   Should, however, any alteration be made in the premium for the Underlying Umbrella Policies during the currency of this Policy Under-writers reserve the right to adjust the premium hereon accordingly.

    It is a condition of this Policy that the Underlying Umbrella Policies shall be maintaine in full effect during the Policy period without reduction of coverage or limits except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of Condition C. of the Underlying Umbrella Policies.

    GEC 028383

3.  **CANCELLATION** –.

    This Policy may be cancelled by the Named Assured or by the Underwriters or their representatives by sending by registered mail notice to the other party stating when, no less than ~~thirty (30)~~ sixty days thereafter, cancellation shall be effective.   The mailing of notice as aforesaid by Underwriters or their representatives to the Named Assured at th address shown in this Policy shall be sufficient proof of notice, and the insurance unde this Policy shall end on the effective date and hour of cancellation stated in the notic Delivery of such written notice either by the Named Assured or by the Underwriters or their representatives shall be equivalent to mailing.   .

    If this Policy shall be cancelled by the Named Assured the Underwriters shall retain the customary short rate proportion of the premium for the period this Policy has been

I.P.O.355A (12/76)                         WRG Policies                  Page 2 of
                                             06836

000420

XXX-001498

DECLARATIONS:

ITEM 1.  (a)  Named Assured:- W.R.GRACE AND CO. and/or Subsidiary, Associated,Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted

(b)  Address of Named Assured:- 1114 Avenue of the Americas, New York, N.Y.10038.

ITEM 2.  (a)  Underlying Umbrella Policies:- 79DD1633C
KYO17582

(b)  Underlying Umbrella Insurers:- Certain Insurance Companies

ITEM 3.  Underlying Umbrella Limits
(Insuring Agreement II):-                              U.S $  5,000,000

ITEM 4.  Underlying Umbrella Aggregate Limits
(Insuring Agreement II):-                             U.S. $  5,000,000

ITEM 5.  Limit of Liability
(Insuring Agreement II):-                             U.S. $ 20,000,000

ITEM 6.  Aggregate Limit of Liability
(Insuring Agreement II):-                             U.S. $ 20,000,000

ITEM 7.  Policy Period:- 30th June, 1982 to 30th June 1985
both days at 12.01 A.M.Local Standard Time

ITEM 8.  Notice of Occurrence (Condition 4) to:-
Marsh & McLennan Inc.,
1221 Avenue of the Americas,
New York, N.Y.10020.

ITEM 9:  Service of Process (Condition 6) upon:-
Messrs Mendes and Mount,
3 Park Avenue,
New York, N.Y.10016
U.S.A.

L.P.O.355A (12/76)              GEC 028385          WRG Policies          Page 4 of 4
                                                    06838