1001B/DJ

Bowring

COVER NOTE

C.T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR LONDON EC3
TELEX: 882191
Registered No. 76170 London

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

Please always quote this No. KY017782

Date 19th July, 1982

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

TYPE: EXCESS UMBRELLA LIABILITY INCLUDING W.C.A. AND EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974)

FORM: Short Excess Form as expiring as far as applicable amendments if any to be agreed by Underwriters

ASSURED: W.R. GRACE & COMPANY ET AL and/or Subsidiary, Associated, Affiliated Companies, and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted plus joint ventures as expiring

PERIOD: 36 months at 30th June, 1982

INTEREST: Coverage in respect Assured's Operations

SUM INSURED: 56.25% of
$20,000,000 each occurrence (Aggregate Products and Occupational Disease)

EXCESS OF:-

$ 5,000,000 each occurrence (Aggregate Products and Occupational Disease)

WHICH IN TURN EXCESS OF:-

Scheduled Primaries or $100,000 Self Insured Retention where no concurrent insurance

SITUATION: Worldwide

GEC 028389

For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

WRG Policies
06842

COPY

VOL. XVI. TAB 4

No. [illegible]

91.64% of 56.25% of the limits stated herein.

**Whereas** W.R. GRACE AND CO (as more fully described in Item 1 (a) of the declarations attached hereto) of 1114 Avenue of the Americas, New York, N.Y. 10036 hereinafter called the Assured, have paid U.S.$141,788.02 part of U.S.$900,000.00 Premium or Consideration to Us, the undersigned Assurers to ~~[illegible]~~ indemnify the Assured in respect of EXCESS UMBRELLA LIABILITY as per wording attached hereto,

during the period commencing at Thirtieth day of June 1982, and ending at Thirtieth day of June 1985. both days at 12.01 A.M. Local Standard Time

**Now know ye** that we the undersigned Assurers do hereby bind ourselves each **Company** for itself only and not the one for the other, to pay or make good to the Assured or the Assured's Executors, Administrators and Assigns, all such loss as above stated, not exceeding ~~[illegible]~~ NINETY-ONE DECIMAL SIX FOUR PER CENT OF FIFTY-SIX DECIMAL TWO FIVE PER CENT of the limits stated herein,

in all, that the Assured may sustain during the said period, within Seven Days after such loss is proved and that in proportion to the several sums by each of us subscribed against our respective names not exceeding the several sums aforesaid.

If the Assured shall make any claim knowing the same to be false or fraudulent as regards amount or otherwise, this Policy shall become void and all claim thereunder shall be forfeited.

**In witness whereof** I being a representative of the Leading Office which is duly authorised by the Assurers have hereunto subscribed my name on their behalf this FOURTH day of MAY 1984

GEC 028794

MGCB/sc

[signature]

DIRECTOR

H. & WEAVERS (UNDERWRITING) AGENCIES LTD.

WRG Policies 07237

NAMED ASSURED: As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to Underwrite (Hereinafter called the "Named Assured").

INSURING AGREEMENTS:

I. COVERAGE -

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability:- .

(a) imposed upon the Assured by law,

or (b) assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such,

for damages on account of:-

(i) Personal Injuries

(ii) Property Damage

(iii) Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policie stated in Item 2 of the Declarations and issued by the Insurers as specified thereunder (hereinafter called the "Underlying Umbrella Insurers").

II. LIMIT OF LIABILITY -

It is expressly agreed that liability shall attach to the Underwriters only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of the respective ultimate net loss liability as follows:-

$ (as stated in Item 3 of the Declarations) — ultimate net loss in respect of each occurrence, but

$ (as stated in Item 4 of the Declarations) — in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured ~~and in respect of any other hazard subject to an aggregate limit in the Underlying Umbrella Policies~~ H.S.W.(U)A. H.S.W.(U)A.

GEC 028803

of the Declarations) each occurrence – subject to a limit of

$ (as stated in Item 6 of the Declarations) in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained ~~by any~~ employees of the Assured ~~and in respect of any other hazard subject to an aggregate limit in the Underlying Umbrella Policies.~~

CONDITIONS:

1. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY -

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the lim of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by ar amounts due to the Assured on account of such loss under such prior insurance.

2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE -

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder. Should, however, any alteration be made in the premium for the Underlying Umbrella Policies during the currency of this Policy Under writers reserve the right to adjust the premium hereon accordingly.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintain in full effect during the Policy period without reduction of coverage or limits except for any reduction of the aggregate limits contained therein solely by payment of claim in respect of accidents and/or occurrences occurring during the period of this Policy o by the operation of Condition C. of the Underlying Umbrella Policies.

GEC 028804

3. CANCELLATION -

This Policy may be cancelled by the Named Assured or by the Underwriters or their representatives by sending by registered mail notice to the other party stating when, r less than ~~thirty (30)~~ sixty 60 days thereafter, cancellation shall be effective. The mailing of notice as aforesaid by Underwriters or their representatives to the Named Assured at tl address shown in this Policy shall be sufficient proof of notice, and the insurance und this Policy shall end on the effective date and hour of cancellation stated in the notic Delivery of such written notice either by the Named Assured or by the Underwriters or their representatives shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Underwriters shall retain the customary short rate proportion of the premium for the period this Policy has been

DECLARATIONS:

ITEM 1. (a) Named Assured:- W.R.GRACE AND CO. and/or Subsidiary, Associated,Affiliated Companies and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted

(b) Address of Named Assured:- 1114 Avenue of the Americas, New York, N.Y.10036.

ITEM 2. (a) Underlying Umbrella Policies:- 79DD1633C KY017582

(b) Underlying Umbrella Insurers:- Certain Insurance Companies

ITEM 3. Underlying Umbrella Limits (Insuring Agreement II):- U.S $ 5,000,000

ITEM 4. Underlying Umbrella Aggregate Limits (Insuring Agreement II):- U.S. $ 5,000,000

ITEM 5. Limit of Liability (Insuring Agreement II):- U.S. $ 20,000,000

ITEM 6. Aggregate Limit of Liability (Insuring Agreement II):- U.S. $ 20,000,000

ITEM 7. Policy Period:- 30th June, 1982 to 30th June 1985 both days at 12.01 A.M.Local Standard Time

ITEM 8. Notice of Occurrence (Condition 4) to:-

Marsh & McLennan Inc.,
1221 Avenue of the Americas,
New York, N.Y.10020.

ITEM 9: Service of Process (Condition 6) upon:-

Messrs Mendes and Mount.
3 Park Avenue,
New York, N.Y.10016
U.S.A.

Bowring

COVER NOTE

C. T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR LONDON EC3
TELEX: 882191
Registered No. 76170 London

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

Please always quote this No. KY017782

Date 19th July, 1982

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

TYPE: EXCESS UMBRELLA LIABILITY INCLUDING W.C.A. AND EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974)

FORM: Short Excess Form as expiring as far as applicable amendments if any to be agreed by Underwriters

ASSURED: W.R. GRACE & COMPANY ET AL and/or Subsidiary, Associated, Affiliated Companies, and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted plus joint ventures as expiring

PERIOD: 36 months at 30th June, 1982

INTEREST: Coverage in respect Assured's Operations

SUM INSURED: 56.25% of
$20,000,000 each occurrence (Aggregate Products and Occupational Disease)

EXCESS OF:-

$ 5,000,000 each occurrence (Aggregate Products and Occupational Disease)

WHICH IN TURN EXCESS OF:-

Scheduled Primaries or $100,000 Self Insured Retention where no concurrent insurance

SITUATION: Worldwide

GEC 028812

For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

WRG Policies
07255

# Bowring

C.T. BOWRING & CO. (INSURANCE) LTD.
Lloyd's Brokers

P.O. BOX 145,
THE BOWRING BUILDING,
TOWER PLACE,
LONDON EC3P 3BE
(Registered Office)

TELEPHONE: 01-283 3100
TELEGRAMS: BOWINSUR LONDON EC3
TELEX: 882191
Registered No. 76170 London

Please examine this document carefully and advise us immediately if it is incorrect or does not meet your requirements.

Please always quote this No. KY017782

Date 19th July, 1982

VAT No. 244 2517 79

In accordance with your instructions we have arranged cover as follows:

TYPE: EXCESS UMBRELLA LIABILITY INCLUDING W.C.A. AND EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING CLAIMS ARISING FROM E.R.I.S.A. (1974)

FORM: Short Excess Form as expiring as far as applicable amendments if any to be agreed by Underwriters

ASSURED: W.R. GRACE & COMPANY ET AL and/or Subsidiary, Associated, Affiliated Companies, and/or Organisations owned, controlled and/or managed Companies as now or hereinafter constituted plus joint ventures as expiring

PERIOD: 36 months at 30th June, 1982

INTEREST: Coverage in respect Assured's Operations

SUM INSURED: 56.25% of
$20,000,000 each occurrence (Aggregate Products and Occupational Disease)

EXCESS OF:-

$ 5,000,000 each occurrence (Aggregate Products and Occupational Disease)

WHICH IN TURN EXCESS OF:-

Scheduled Primaries or $100,000 Self Insured Retention where no concurrent insurance

SITUATION: Worldwide

For the attention of Mr F Nasella
Marsh & McLennan Incorporated,
1221, Avenue of the Americas,
New York,
N.Y. 10020
U.S.A.

C.T. BOWRING & CO. (INSURANCE) LTD.

WRG Policies
07257

GEC 028814

# EXHIBIT K57

000429

XXX-001507

ATTENTION XIV 4
PLEASE NOTE

SEND ALL CLAIMS TO:
NATIONAL UNDERWRITING AGENCY, INC.
150 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606

TRANSIT CASUALTY COMPANY
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI
(A stock insurance company, herein called the company)

# Declarations—Excess Umbrella Policy

SCU 956259
Policy Number

Renewal of No. SCU 955-978

Item 1. Named Insured: W. R. Grace & Company

Item 2. Address: 1114 Avenue of the Americas
New York, New York 10036

Item 3. Policy Period: From: June 30, 1982 To: June 30, 1983
12:01 A.M. Standard Time at the address of the Named Insured as stated herein

Item 4. Limits of Liability: $4,750,000 each occurrence and/or in the aggregate part of $20,000,000 excess of $5,000,000 excess of underlying.

Item 5. Premium: Advance: $65,313. Annual Minimum: $65,313.

Rate: 23.7% of .0350 Premium Basis: per $1,000 of sales

When used as a premium basis:

1. **"admissions"** means the total number of persons, other than employees of the **named insured**, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;
2. **"cost"** means the total cost to the **named insured** with respect to operations performed for the **named insured** during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;
3. **"receipts"** means the gross amount of money charged by the **named insured** for such operations by the **named insured** or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the **named insured** collects as a separate item and remits directly to a governmental division;
4. **"remuneration"** means the entire remuneration earned during the policy period by proprietors and by all employees of the **named insured**, other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company;
5. **"sales"** means the gross amount of money charged by the **named insured** or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the **named insured** and such others collect as a separate item and remit directly to a governmental division.

Countersignature Date August 10, 19 82

Authorized Representative

T.V. 9810 A

BCC

GEC 027996

WRG Policies
06456

TRANSIT CASUALTY COMPAN.
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI
(A stock insurance company, herein called the company)

SCU 956-239

# Excess Umbrella Coverage—Insuring Agreements

**1. Coverage**

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obliged to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Insured for damages, direct or consequential and expenses on account of:

(a) Personal Injuries, including death at any time resulting therefrom.

(b) Property Damage.

(c) Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

**UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:**

| Carrier | Limits |
|---|---|
| Underwriters at Lloyd's London & British Ins. Cos. (80%) Cover Note No. PY 107779 | $5,000,000 each occurrence and/or in the aggregate excess of primary insurances. |
| Transit Casualty Company UMB 950-239 (20%) | |

**2. Limit of Liability — Underlying Limits**

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a) $ 5,000,000. ultimate net loss in respect of each occurrence, but

(b) $ 5,000,000. in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employes of the Insured

and the Company shall then be liable to pay only the excess thereof up to a further

(c) $ 4,750,000 part of $20,000,000 ultimate net loss in all in respect of each occurrence — subject to a limit of

(d) $ 4,750,000 part of $20,000,000 in the aggregate for each annual period during the currency of this policy, separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employes of the Insured.

08/10/82

T.V. 9812 A
mcc

GEC 027997 WRG Policies 06457

# Conditions

Transit Casualty (herein after called the Company) agrees with the Named Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

**The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.**

**I. Premium Computation:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Named Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

**II. Inspection and Audit:** The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**III. Action Against Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. Bankruptcy or insolvency of the Insured or his estate shall not relieve the Company of any of its obligations hereunder.

**IV. Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

**V. Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

**VI. Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Insured's legal representative as Insured; provided that notice of cancellation addressed to the Named Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**VII. Cancellation:** This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, (except in the instance of non-payment of premium to the COMPANY not less than ten (10) days thereafter), such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficent notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the NAMED INSURED or by the COMPANY shall be equivalent to mailing. If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED. If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS; and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

**VIII. Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Secretary and President and countersigned on the Declarations page by an authorized representative.

Secretary

W. L. Gregory
President

GEC 028004

WRG Policies
06464

# EXHIBIT K58

000433

XXX-001511



BROKER
MARSH & McL. .NAN, INC.
1221 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10020

CODE NO. LOC KIND POOL COM. 10%

RENEWS 6431-5220

NUMBER 6482- 5442

☒ GRANITE STATE INSURANCE COMPANY
☐ NEW HAMPSHIRE INSURANCE COMPANY

# PACIFIC STARR of NEW YORK, INC.

UNDERWRITING MANAGERS
NEW YORK

## DECLARATIONS

1. Assured: W. R. GRACE & CO., ET AL
(AS MORE FULLY DESCRIBED IN THE UNDERLYING POLICY/IES)

Address: 1114 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10038

2. Policy Period: From JUNE 30, 1982 TO JUNE 30, 1983
both days at 12:01 A.M. (Standard Time) at the location(s) of the risk(s) insured and in accord with the terms and conditions of the form(s) attached.

3. Amount: $ 4,000,000. PART OF
$20,000,000. EXCESS OF
$ 5,000,000. EXCESS OF UNDERLYING

4. Coverage: EXCESS UMBRELLA LIABILITY

5. Premium: A) Provisional or deposit premium $ 55,000.00

B) Minimum Premium $ 55,000.00

C) Basis of Adjustment (Rate) ADJ. $.0350 PER 1,000.00 SALES

D) Audit Period NONE

E) Currency: U.S. Dollars

GEC 028005

Assignment of this Policy shall not be valid except with the written consent of this Company.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such other provisions, stipulations, and agreements as may be added hereto, as provided in this Policy.

Unless otherwise provided herein, this Policy may be cancelled on the customary short rate basis by the Assured at any time by written notice or by surrender of this Policy to the Company. This Policy may also be cancelled, with or without the return or tender of the unearned premium, by the Company or by the Underwriting Managers in its behalf, by delivering to the Assured or by sending to the Assured by regular mail, at the Assured's address as shown herein, not less than 30 days written notice stating when the cancellation shall be effective, and in such case Insurers shall refund the paid premium less the earned portion thereof on demand, subject always to the retention by Insurers hereon of any minimum premium stipulated herein (or proportion thereof previously agreed upon) in the event of cancellation either by Insurers or Assured.

Not withstanding anything to the contrary contained herein and in consideration of the premium for which this insurance is written, it is understood and agreed that whenever an additional or return premium of $10.00 or less becomes due from or to the Assured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be made, as the case may be.

In Witness Whereof, the Company has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Secretary

President

WRG Policies
06465

PACIFIC STARR OF NEW YORK, INC.
UNDERWRITING MANAGERS

Countersigned JULY 8, 1982 TD/yn
1114 PSNY

02863

# EXCESS UMBRELLA POLICY

Named Assured: As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company.

## SCHEDULE

3291

| | | |
|---|---|---|
| ITEM 1. | NAMED ASSURED | W. R. GRACE & CO., ET AL |
| ITEM 2. | Underlying Umbrella Policies: | UNDERWRITERS AT LLOYD'S, LONDON AND BRITISH COMPANIES |
| ITEM 3. | Underlying Umbrella limits (Insuring Agreement II): | $5,000,000. |
| ITEM 4. | Underlying Umbrella Aggregate Limits (Insuring Agreement II): | $5,000,000. |
| ITEM 5. | Limit of Liability (Insuring Agreement III): | $4,000,000. PART OF $20,000,000. |
| ITEM 6. | Aggregate Limit of Liability (Insuring Agreement II): | $4,000,000. PART OF $20,000,000. |
| ITEM 7. | Notice of Occurrence (Conditions 4) to: | Pacific Starr of New York, Inc.<br>99 John Street<br>New York, New York 10038 |

## INSURING AGREEMENTS

### COVERAGE

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability

(a) imposed upon the Assured by law,

or

(b) assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured while acting in his capacity as such.

for damages, direct or consequential and expenses on account of:

(i) Personal injuries, including death at any time resulting therefrom,

(ii) Property damage,

(iii) Advertising liability,

caused by or arising out of each occurrence happening anywhere in the World, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Schedule, (hereinafter called the "Underlying Umbrella Insurers").

WRG Policies 06466

Attached to and forming part of Policy No. 6482-5442

Issued to: W. R. GRACE & CO., ET AL

Dated: JULY 8, 1982

☒ GRANITE STATE INSURANCE COMPANY

☐ NEW HAMPSHIRE INSURANCE COMPANY

PACIFIC STARR OF NEW YORK, INC.
Underwriting Managers

By............

P-431-PSNY

GEC 028006

C2629

II. LIMIT OF LIABILITY - UNDERLYING LIMITS

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:-

$ (as stated in Item 3 of the Declarations) — Ultimate net loss in respect of each occurrence, but

$ (as stated in Item 4 of the Declarations) — in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured,

and the Company shall then be liable to pay only the excess ther of up to a further

$ (as stated in Item 5 of the Declarations)- — ultimate net loss in all in respect each occurrence-subject to a limit

$ (as stated in Item 6 of the Declarations) — in the aggregate for each annual pe iod during the currency of this Po cy separately, in respect of Pro ucts Liability and separately in r spect of Personal Injury (fatal non-fatal) by Occupational Disea sustained by any employees of t Assured.

## CONDITIONS

1. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY-

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Items 5 and 6 of the Schedule shall be reduced by .ny amounts due to the Assured on account of such loss under such prior insurance.

Subject to the foregoing paragraph, and to all the other terms and conditions of of this Policy, in the event that Personal Injury or Property Damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy the Company will continue to protect the Assured for liability in respect to such Personal Injury or Property Damage without payment of additional premium.

2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE-

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Schedule prior to the happening of an occurrence for which claim is made hereunder.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the currency hereof, except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of the Prior Insurance and Non Cumulation of Liability Condition of the Underlying Umbrella Policies.

3. CANCELLATION-

This Policy may be cancelled by the Named Assured or by the Company or their representative by mailing written notice to the other party stating when, not less than thirty (30) days (ten (1 days for non-payment of premium) thereafter, cancellation shall effective. The mailing of notice as aforesaid by the Company their representative to the Named Assured at the address show in this Policy shall be sufficient proof of notice and the Insuran under this Policy shall end on the effective date and hour cancellation stated in the notice. Delivery of such written noti either by the Named Assured or by the Company or their repr sentative shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Cor pany shall retain the customary short rate proportion of the pr mium for the period this Policy has been in force. If this Poli shall be cancelled by the Company the Company shall retain pro rata proportion of the premium for the period this Polic been in force. Notice of cancellation by the Company sha effective even though the Company makes no payment or te of return premium.

4. NOTICE OF OCCURRENCE-

Whenever the Assured has information from which they reasonably conclude that an occurrence covered hereunder i volves injuries or damage which in the event that the Assur shall be held liable, is likely to involve this Policy, notice shall sent as stated in Item 7 of the Schedule as soon as practicabl provided however, that failure to give notice of any occurren which at the time of its happening did not appear to involve th Policy, but which, at a later date, would appear to give rise claims hereunder, shall not prejudice such claim.

5. OTHER INSURANCE-

If other valid and collectible insurance with any other Insur is available to the Assured covering a loss also covered by th Policy, other than Insurance that is in excess of the Insurance a forded by this Policy, the Insurance afforded by this Policy shall in excess of and shall not contribute with such other insurance.

GEC 028007

WRG Policies 06467

# EXHIBIT K59

000437

XXX-001515

TRANSIT CASUALTY COMPANY
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI
(A stock insurance company, herein called the company)

SEND ALL CLAIMS TO:
NATIONAL UNDERWRITING AGENCY, INC.
150 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606

# Declarations—Excess Umbrella Policy

XV. 4

SCU 956535
Policy Number

Renewal of No. SCU 956259

Item 1. Named Insured: W. R. Grace & Company

Item 2. Address: 1114 Avenue of the Americas
New York, New York 10036

Item 3. Policy Period: From: June 30, 1983 To: June 30, 1984
12:01 A.M. Standard Time at the address of the Named Insured as stated herein

Item 4. Limits of Liability: $4,750,000 each occurrence and/or in the aggregate part of $20,000,000 excess of $5,000,000 excess underlying.

Item 5. Premium: Advance: $71,250. Annual Minimum: $71,250

Rate: 23.75% of .0350 Premium Basis: per 1,000 sales

When used as a premium basis:

1. **"admissions"** means the total number of persons, other than employees of the **named insured**, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;
2. **"cost"** means the total cost to the **named insured** with respect to operations performed for the **named insured** during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;
3. **"receipts"** means the gross amount of money charged by the **named insured** for such operations by the **named insured** or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the **named insured** collects as a separate item and remits directly to a governmental division;
4. **"remuneration"** means the entire remuneration earned during the policy period by proprietors and by all employees of the **named insured**, other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company;
5. **"sales"** means the gross amount of money charged by the **named insured** or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the **named insured** and such others collect as a separate item and remit directly to a governmental division.

Countersignature Date July 25, 1983

Richards Jr. [signature]
Authorized Representative

T.V. 9810 A
mcc

GEC 028392

WRG Policies
06845

ST. LOUIS, MISSOURI
(A stock insurance company, herein called the company)

SCU 965535

# Excess Umbrella Coverage—Insuring Agreements

**1. Coverage**

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obliged to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Insured for damages, direct or consequential and expenses on account of:

(a) Personal Injuries, including death at any time resulting therefrom.

(b) Property Damage.

(c) Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

**UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:**

| Carrier | Limits |
|---|---|
| Underwriters at Lloyd's London & British Ins. Cos. (80%) Cover Note No. KY 017582 | $5,000,000 each occurrence and/or in the aggregate excess of primary |
| Transit Casualty Company UMB 950239 (20%) | |

**2. Limit of Liability — Underlying Limits**

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a) $ 5,000,000. ultimate net loss in respect of each occurrence, but

(b) $ 5,000,000. in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employes of the Insured

and the Company shall then be liable to pay only the excess thereof up to a further

(c) $ 4,750,000 part of $20,000,000 ultimate net loss in all in respect of each occurrence — subject to a limit of

(d) $ 4,750,000 part of $20,000,000 in the aggregate for each annual period during the currency of this policy, separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employes of the Insured.

07-23-83
T.V. 9812 A
mcc

GEC 028393

WRG Policies
06846

# Conditions

**Transit Casualty** (herein after called the Company) agrees with the Named Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy;

**The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.**

I. **Premium Computation:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Named Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

II. **Inspection and Audit:** The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

III. **Action Against Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. Bankruptcy or insolvency of the Insured or his estate shall not relieve the Company of any of its obligations hereunder.

IV. **Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

V. **Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

VI. **Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Insured's legal representative as Insured; provided that notice of cancellation addressed to the Named Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

VII. **Cancellation:** This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, (except in the instance of non-payment of premium to the COMPANY not less than ten (10) days thereafter), such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficent notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the NAMED INSURED or by the COMPANY shall be equivalent to mailing. If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED. If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS; and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

VIII. **Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Secretary and President and countersigned on the Declarations page by an authorized representative.

Secretary

W. L. Gregory

WRG Policies 06853

President

GEC 028400

# EXHIBIT K60

000441

XXX-001519

06/30/83 - 06/30/84
GRANITE STATE INSURANCE
POLICY NO.: 6483-5666
LIMIT: $4M PART OF $20M XS $5M

VOL. XV, TAB S

RENEWS 6482-5442

NUMBER 6483- 5666

Members Of

☒ GRANITE STATE INSURANCE COMPANY
☐ NEW HAMPSHIRE INSURANCE COMPANY

# PACIFIC STARR of NEW YORK, INC.

UNDERWRITING MANAGERS
NEW YORK

## DECLARATIONS

1. Assured: W. R. GRACE & CO., ET AL (AS MORE FULLY DEFINED IN THE UNDERLYING POLICY/IES)

   Address: 1114 AVENUE OF THE AMERICAS NEW YORK, NEW YORK 10038

2. Policy Period: From JUNE 30, 1983 TO JUNE 30, 1984 both days at 12:01 A.M. (Standard Time) at the location(s) of the risk(s) insured and in accord with the terms and conditions of the form(s) attached.

3. Amount: $ 4,000,000. PART OF
   $20,000,000. EXCESS OF
   $ 5,000,000. EXCESS OF UNDERLYING

4. Coverage: EXCESS UMBRELLA LIABILITY

5. Premium: A) Provisional or deposit premium $ 60,000.00
   B) Minimum Premium $ 60,000.00
   C) Basis of Adjustment (Rate) FLAT
   D) Audit Period NONE
   E) Currency: U.S. Dollars

Assignment of this Policy shall not be valid except with the written consent of this Company.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such other provisions, stipulations, and agreements as may be added hereto, as provided in this Policy.

Unless otherwise provided herein, this Policy may be cancelled on the customary short rate basis by the Assured at any time by written notice or by surrender of this Policy to the Company. This Policy may also be cancelled, with or without the return or tender of the unearned premium, by the Company or by the Underwriting Managers in its behalf, by delivering to the Assured or by sending to the Assured by regular mail, at the Assured's address as shown herein, not less than 30 days written notice stating when the cancellation shall be effective, and in such case Insurers shall refund the paid premium less the earned portion thereof on demand, subject always to the retention by Insurers hereon of any minimum premium stipulated herein (or proportion thereof previously agreed upon) in the event of cancellation either by Insurers or Assured.

Not withstanding anything to the contrary contained herein and in consideration of the premium for which this insurance is written, it is understood and agreed that whenever an additional or return premium of $10.00 or less becomes due from or to the Assured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be made, as the case may be.

In Witness Whereof, the Company has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company.

[signature] Secretary [signature] President

Countersigned AUGUST 2, 1983 JG/lp
1114 PSNY

PACIFIC STARR OF NEW YORK, INC.
UNDERWRITING MANAGERS
By [signature]

GEC 028403

ORIGINAL

WRG Policies 06855

## EXCESS UMBRELLA POLICY

Named Assured: As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company.

## SCHEDULE

| | | |
|---|---|---|
| ITEM 1. | NAMED ASSURED | W. R. GRACE & CO., ET AL |
| ITEM 2. | Underlying Umbrella Policies: | UNDERWRITERS AT LLOYDS, LONDON AND BRITISH COMPANIES |
| ITEM 3. | Underlying Umbrella limits (Insuring Agreement II): | $5,000,000. |
| ITEM 4. | Underlying Umbrella Aggregate Limits (Insuring Agreement II): | $5,000,000. |
| ITEM 5. | Limit of Liability (Insuring Agreement II): | $4,000,000. PART OF $20,000,000. |
| ITEM 6. | Aggregate Limit of Liability (Insuring Agreement II): | $4,000,000. PART OF $20,000,000. |
| ITEM 7. | Notice of Occurrence (Conditions 4) to: | Pacific Starr of New York, Inc.<br>99 JOHN STREET<br>NEW YORK, NEW YORK 10038 |

## INSURING AGREEMENTS

**I. COVERAGE**

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability

(a) imposed upon the Assured by law,

or

(b) assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured while acting in his capacity as such.

for damages, direct or consequential and expenses on account of:

(i) Personal injuries, including death at any time resulting therefrom,

(ii) Property damage,

(iii) Advertising liability,

caused by or arising out of each occurrence happening anywhere in the World, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 2 of the Schedule, (hereinafter called the "Underlying Umbrella Insurers").

WRG Policies
06856

Attached to and forming part of Policy No. 6483-5666

Issued to: W. R. GRACE & CO., ET AL

Dated: AUGUST 2, 1983

GEC 028404

P-431-PSNY

☒ GRANITE STATE INSURANCE COMPANY

☐ NEW HAMPSHIRE INSURANCE COMPANY

PACIFIC STARR OF NEW YORK, INC.
Underwriting Managers

By.......................................

**II. LIMIT OF LIABILITY - UNDERLYING LIMITS**

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:-

$ (as stated in Item 3 of the Declarations) Ultimate net loss in respect of each occurrence, but

$ (as stated in Item 4 of the Declarations) in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

and the Company shall then be liable to pay only the excess thereof up to a further

$ (as stated in Item 5 of the Declarations)- ultimate net loss in all in respect of each occurrence-subject to a limit of

$ (as stated in Item 6 of the Declarations) in the aggregate for each annual period during the currency of this Policy separately, in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured.

GEC 028405

## CONDITIONS

**1. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY-**

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Items 5 and 6 of the Schedule shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

Subject to the foregoing paragraph, and to all the other terms and conditions of of this Policy, in the event that Personal Injury or Property Damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy the Company will continue to protect the Assured for liability in respect to such Personal Injury or Property Damage without payment of additional premium.

**2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE-**

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Schedule prior to the happening of an occurrence for which claim is made hereunder.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the currency hereof, except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of the Prior Insurance and Non Cumulation of Liability Condition of the Underlying Umbrella Policies.

**3. CANCELLATION-**

This Policy may be cancelled by the Named Assured or by the Company or their representative by mailing written notice to the other party stating when, not less than thirty (30) days (ten [10] days for non-payment of premium) thereafter, cancellation shall be effective. The mailing of notice as aforesaid by the Company or their representative to the Named Assured at the address shown in this Policy shall be sufficient proof of notice and the Insurance under this Policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by the Company or their representative shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Company shall retain the customary short rate proportion of the premium for the period this Policy has been in force. If this Policy shall be cancelled by the Company the Company shall retain the pro rata proportion of the premium for the period this Policy has been in force. Notice of cancellation by the Company shall be effective even though the Company makes no payment or tender of return premium.

**4. NOTICE OF OCCURRENCE-**

Whenever the Assured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which in the event that the Assured shall be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 7 of the Schedule as soon as practicable, provided however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claim.

**5. OTHER INSURANCE-**

If other valid and collectible insurance with any other Insurer is available to the Assured covering a loss also covered by this Policy, other than Insurance that is in excess of the Insurance afforded by this Policy, the Insurance afforded by this Policy shall be in excess of and shall not contribute with such [illegible] insurance.

WRG Policies 06857

# EXHIBIT K61

000446

XXX-001524

00134 Vol 10 of 7

INA

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| W.R. Grace & Co., Etal | | | 5 |
| Policy Symbol XMO | Policy Number 01 72 04 | Policy Period 6/30/84 to 6/30/85 | Effective Date of Endorsement 6/30/84 |
| Issued By (Name of Insurance Company) Pacific Employers Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

In consideration of the premium charged for this policy it is agreed that in the event of cancellation for other than non-payment of premium, sixty (60) days notice will be sent to the Insured.

GEC 028785

6/14/85

Authorized Agent

CC-1E15 Ptd. in U.S.A.

ORIGINAL

WRG Policies
07228

X ...176 T0b3

**INA** PACIFIC EMPLOYERS INSURANCE COMPANY, LOS ANGELES, CALIFORNIA

| EXCESS BLANKET CATASTROPHE LIABILITY POLICY | DECLARATIONS |
|---|---|

XMO 01 72 04

Named Insured Address: W.R. GRACE & CO., ETAL AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES AND/OR ORGANIZATIONS OWNED, CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED PLUS JOINT VENTURES AS EXPIRING
GRACE PLAZA, 1114 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK 10036

Policy Period: From 6/30/84 to 6/30/85 — 12:01 A.M., standard time at the address of the Named Insured as stated herein.

Audit Period: Annual, unless otherwise stated 5.85% RATE ON GROSS SALES

Endorsements attached to policy at inception: Nuclear Energy Liability Exclusion

LIMITS OF LIABILITY

PEIC'S LIMIT OF LIABILITY:

ITEM 1. $ 250,000. P/O 5,000,000. arising out of any one occurrence because of personal injury, property damage or advertising injury or any combination thereof.

ITEM 2. 250,000. P/O 5,000,000. arising out of all occurrences during each policy year because of the products hazard, or the completed operations hazard, or both combined.

INSURED'S RETAINED LIMIT:

Underlying Insurance, or

ITEM 3. $ 100,000. because of personal injury, property damage or advertising injury arising out of any one occurrence not within the terms of coverage of underlying insurance but within the terms of the coverage of this insurance.

PREMIUM COMPUTATION

| Estimated | Rate per | Total Advance Premium |
|---|---|---|
| $27,000. | 5.85% PER 100 GROSS SALES WHICH IS 100% OF 5,000,000. LAYER PRICE | $27,000.00 |

MINIMUM PREMIUM $ 10,000.

in the event of cancellation by the Named Insured, PEIC shall receive and retain not less than $ 10,000. as the Minimum Premium.

8/1/84

Countersigned By [signature] Authorized Agent

LD-6893 Ptd. in U.S.A.

WRG Policies 07229

GEC 028786

00130

4. **Appeals**

If the Insured or the Insured's underlying insurer elects not to appeal a judgment in excess of the retained limit, PEIC may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of PEIC for ultimate net loss exceed the amount specified in the Limits of Liability section of the Declarations plus the taxable costs, disbursements and interest incidental to such appeal.

5. **Action Against PEIC**

No action shall lie against PEIC unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and PEIC. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join PEIC as a co-defendant in any action against the Insured to determine the Insured's liability, nor shall PEIC be impleaded by the Insured or his Legal Representative. Bankruptcy or insolvency of the Insured shall not relieve PEIC of any of its obligations hereunder.

6. **Other Insurance**

If collectible insurance with any insurer is available to the Insured covering a loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance provided, however, this does not apply to insurance which is written as excess insurance over PEIC's limit of liability provided in this policy.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, PEIC shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, PEIC shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, PEIC shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

7. **Subrogation**

In the event of any payment under this policy, PEIC shall be subrogated to all the Insured's rights of recovery therefor against any person or organization; and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Any amount so recovered shall be apportioned as follows:

Any interest (including the Insured's) having paid an amount in excess of the retained limit plus PEIC's limit of liability hereunder shall be reimbursed first to the extent of actual payment. PEIC shall be reimbursed next to the extent of its actual payment hereunder. If any balance then remains unpaid, it shall be applied to reimburse the Insured or any underlying insurer, as their interest may appear. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by PEIC, it shall bear the expenses thereof.

8. **Changes**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop PEIC from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

9. **Assignment**

Assignment of interest under this policy shall not bind PEIC until its consent is endorsed hereon; if, however, the Named Insured shall die, or be adjudged bankrupt or insolvent, such insurance as is afforded by this policy shall apply (a) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (b) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

10. **Three Year Policy**

If this policy is issued for a period of three years, the limits of PEIC's liability shall apply separately to each consecutive policy year thereof.

11. **Maintenance of Underlying Policies**

The Named Insured shall maintain the underlying policies (and renewals thereof) with limits of liability as stated in Schedule A in full effect during this policy period, except for any reduction or exhaustion of the aggregate limit or limits contained in such policies solely by payment of claims arising out of occurrences which happen during this policy period. Failure of the Named Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure PEIC shall be liable only to the extent that it would have been liable had the Named Insured complied therewith.

The Named Insured shall give PEIC written notice as soon as practicable of any change in the scope of coverage or in the amount of limits of insurance under any underlying policy, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability.

12. **Cancellation**

This policy may be cancelled by the Named Insured by surrender thereof to PEIC or any of its authorized agents or by mailing to PEIC written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by PEIC by mailing to the Named Insured at the address shown in this policy written notice stating when, not less than thirty days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by PEIC shall be equivalent to mailing. If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If PEIC cancels, earned premium shall be computed pro rata. When this policy insures more than one Named Insured cancellation may be effected by the first named of such Named Insured for the account of all Insureds. Notice of cancellation by PEIC to the first Named Insured shall be deemed notice to all Insureds and payment of any unearned premium to such first named Named Insured shall be for the account of all Insureds. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

13. **Acceptance**

By acceptance of this policy, the Insured agrees that this policy embodies all agreements existing between himself and PEIC or any of its agents relating to this insurance.

**IN WITNESS WHEREOF, the PACIFIC EMPLOYERS INSURANCE COMPANY** has caused this policy to be signed by its President and a Secretary at Los Angeles, California, and countersigned on the Declarations page by a duly Authorized Agent of the Company.

DENNIS C. POULSEN, Secretary

BERNARD A. BUGE, JR., President

WRG Policies
07233

GEC 028790

# EXHIBIT K62

000450

XXX-001528

VOL. XVI , TABS ,

6484- 5867

☒ GRANITE STATE INSURANCE COMPANY
☐ NEW HAMPSHIRE INSURANCE COMPANY

# PACIFIC STARR of NEW YORK, INC.

UNDERWRITING MANAGERS
NEW YORK

## DECLARATIONS

1. Assured: W. R. GRACE & CO., ET AL

   Address: 1114 AVENUE OF THE AMERICAS
   NEW YORK, NEW YORK 10038

2. Policy Period: From JUNE 30, 1984 TO JUNE 30, 1985 both days at 12:01 A.M. (Standard Time) at the location(s) of the risk(s) insured and in accord with the terms and conditions of the form(s) attached.

3. Amount: $ 4,750,000. PART OF
   $20,000,000. EXCESS OF
   $ 5,000,000.

4. Coverage: EXCESS LIABILITY

5. Premium: A) Provisional or deposit premium $77,188.00

   B) Minimum Premium $77,188.00

   C) Basis of Adjustment (Rate) FLAT

   D) Audit Period NONE

   E) Currency: U.S. Dollars

Assignment of this Policy shall not be valid except with the written consent of this Company.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such other provisions, stipulations, and agreements as may be added hereto, as provided in this Policy.

Unless otherwise provided herein, this Policy may be cancelled on the customary short rate basis by the Assured at any time by [illegible] notice or by surrender of this Policy to the Company. This Policy may also be cancelled, with or without the return or tender of the unearned premium, by the Company or by the Underwriting Managers in its behalf, by delivering to the Assured or by sending to the Assured by regular mail, at the Assured's address as shown herein, not less than 30 days written notice stating when the cancellation shall be effective, and in such case Insurers shall refund the paid premium less the earned portion thereof on demand, subject [illegible] to the retention by Insurers hereon of any minimum premium stipulated herein (or proportion thereof previously agreed upon) [illegible] the event of cancellation either by Insurers or Assured.

[illegible] withstanding anything to the contrary contained herein and in consideration of the premium for which this insurance is [illegible] is understood and agreed that whenever an additional or return premium of $10.00 or less becomes due from or to the Assured [illegible] account of the adjustment of a deposit premium; or of an alteration in coverage or rate during the term or for any other [illegible] the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be [illegible] as the case may be.

In Witness Whereof, the Company has caused this Policy to be executed and attested, but this Policy shall not be valid unless [illegible] by a duly authorized representative of the Company.

[signature] Secretary  [signature] President

JULY 20, 1984 MB/ft

PACIFIC STARR OF NEW YORK, INC.
UNDERWRITING MANAGERS

By [signature]

ORIGINAL

GEC 028819

WRG Policies
07262

## EXCESS UMBRELLA POLICY

Named Assured: As stated in Item 1 of the Declarations forming a part hereof

and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and which prompt notice has been given to the Company.

## SCHEDULE

| | | |
|---|---|---|
| ITEM 1. | NAMED ASSURED | W. R. GRACE & CO., ET AL |
| ITEM 2. | Underlying Umbrella Policies: | LONDON |
| ITEM 3. | Underlying Umbrella limits (Insuring Agreement II): | $5,000,000. |
| ITEM 4. | Underlying Umbrella Aggregate Limits (Insuring Agreement II): | $5,000,000. |
| ITEM 5. | Limit of Liability (Insuring Agreement II): | $4,750,000. PART OF $20,000,000. |
| ITEM 6. | Aggregate Limit of Liability (Insuring Agreement II): | $4,750,000. PART OF $20,000,000. |
| ITEM 7. | Notice of Occurrence (Conditions 4) to: | Pacific Starr of New York, Inc. 99 JOHN STREET NEW YORK, NEW YORK 10038 |

## INSURING AGREEMENTS

I. COVERAGE

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability

(a) imposed upon the Assured by law,

or

(b) assumed under contract or agreement by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured while acting in his capacity as such.

for damages, direct or consequential and expenses on account

(i) Personal injuries, including death at any time resul therefrom,

(ii) Property damage,

(iii) Advertising liability,

caused by or arising out of each occurrence happening anywhe the World, and arising out of the hazards covered by and as def in the Underlying Umbrella Policies stated in Item 2 of the Sc ule, (hereinafter called the "Underlying Umbrella Insurers").

Attached to and forming part of Policy No. 6484-5867

Issued to: W. R. GRACE & CO., ET AL

Dated: JULY 20, 1984

GEC 028820

☒ GRANITE STATE INSURANCE COMPANY

☐ NEW HAMPSHIRE INSURANCE COMPANY

PACIFIC STARR OF NEW YORK INC.
Underwriting Managers

By [signature]

WRG Policies

P-431-PSNY

37

**II. LIMIT OF LIABILITY - UNDERLYING LIMITS**

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:-

| | |
|---|---|
| $ (as stated in Item 3 of the Declarations) | Ultimate net loss in respect of each occurrence, but |
| $ (as stated in Item 4 of the Declarations) | in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured. |

and the Company shall then be liable to pay only the excess there of up to a further

| | |
|---|---|
| $ (as stated in Item 5 of the Declarations)- | ultimate net loss in all in respect of each occurrence-subject to a limit of |
| $ (as stated in Item 6 of the Declarations) | in the aggregate for each annual period during the currency of this Policy separately, in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured. |

## CONDITIONS

**1. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY-**

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Items 5 and 6 of the Schedule shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

Subject to the foregoing paragraph, and to all the other terms and conditions of of this Policy, in the event that Personal Injury or Property Damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy the Company will continue to protect the Assured for liability in respect to such Personal Injury or Property Damage without payment of additional premium.

**2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE-**

This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Schedule prior to the happening of an occurrence for which claim is made hereunder.

It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the currency hereof, except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy or by the operation of the Prior Insurance and Non Cumulation of Liability Condition of the Underlying Umbrella Policies.

**3. CANCELLATION-**

This Policy may be cancelled by the Named Assured or by the Company or their representative by mailing written notice to the other party stating when, not less than thirty (30) days (ten [10] days for non-payment of premium) thereafter, cancellation shall be effective. The mailing of notice as aforesaid by the Company or their representative to the Named Assured at the address shown in this Policy shall be sufficient proof of notice and the Insurance under this Policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the Named Assured or by the Company or their representative shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Assured the Company shall retain the customary short rate proportion of the premium for the period this Policy has been in force. If this Policy shall be cancelled by the Company the Company shall retain the pro rata proportion of the premium for the period this Policy has been in force. Notice of cancellation by the Company shall be effective even though the Company makes no payment or tender of return premium.

**4. NOTICE OF OCCURRENCE-**

Whenever the Assured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which in the event that the Assured shall be held liable, is likely to involve this Policy, notice shall be sent as stated in Item 7 of the Schedule as soon as practicable provided however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claim.

**5. OTHER INSURANCE-**

If other valid and collectible insurance with any other Insurer is available to the Assured covering a loss also covered by this Policy, other than Insurance that is in excess of the Insurance afforded by this Policy, the Insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.

# EXHIBIT K63

000454

XXX-001532

..191

**INA PACIFIC EMPLOYERS INSURANCE COMPANY, LOS ANGELES, CALIFORNIA**

| CERTIFICATE OF EXCESS INSURANCE | DECLARATIONS |
|---|---|

Item 1.
Name of Insured – W.R. GRACE & CO., ETAL AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES AND/OR ORGANIZATIONS OWNED, CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED PLUS JOINT VENTURES AS EXPIRING

XCC 01 22 83

Item 2.
Address – GRACE PLAZA, 1114 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK 10036

Item 3. Certificate Term — From: 6/29/84
To: 6/29/85
12:01 A.M., standard time at the address of the insured as stated in Item 2 above.

Item 4. Primary Insurance —

| Primary Carriers | Policy Numbers | Policy Periods |
|---|---|---|
| LONDON<br>TRANSIT<br>PEIC | AS PER FILE | 6/30/84 TO 6/30/85 |

Item 5. Description of Primary Insurance — AS PER FILE

UMBRELLA LIABILITY INCLUDING WC, AND EMPLOYEE BENEFIT LIABILITY BUT EXCLUDING ERISA

Item 6. Description of Excess Insurance —

$1,750,000 PART OF $20,000,000 EXCESS OF $5,000,000 UMBRELLA EXCESS OF PRIMARY AS PER FILE

Item 7. Premium — $28,348. - SUBJECT TO RATE OF .0350 PER THOUSAND OF SALES FOR $20,000,000. LAYER.

Item 8. attached hereto and made a part hereof:
~~[illegible]~~
LD6B97 ENDT.#1

8/1/84

LD-6B98 PTD. IN U.S.A.

GEC 028825

WRG Policies
07268

# EXHIBIT K64

000456

XXX-001534

XVI, 7

**TRANSIT CASUALTY COMPANY**
**LOS ANGELES, CALIFORNIA**
**ST. LOUIS, MISSOURI**
(A stock insurance company, herein called the company)

# Declarations—Excess Umbrella Policy

SCU 956881
Policy Number

Renewal of No. SCU 956 535

Item 1. Named Insured: W. R. Grace & Company

Item 2. Address: 1114 Avenue of the Americas
New York, New York 10036

Item 3. Policy Period: From: June 30, 1984 To: June 30, 1985
12:01 A.M. Standard Time at the address of the Named Insured as stated herein

Item 4. Limits of Liability: $1,250,000 each occurrence and/or in the aggregate part of $20,000,000 excess of $5,000,000 excess underlying

Item 5. Premium: Advance: $18,750 Annual Minimum: $18,750

Rate: Flat Premium Basis:

GEC 028832

When used as a premium basis:

1. **"admissions"** means the total number of persons, other than employees of the **named insured**, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;
2. **"cost"** means the total cost to the **named insured** with respect to operations performed for the **named insured** during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or subcontractor, including all fees, allowances, bonuses or commissions made, paid or due;
3. **"receipts"** means the gross amount of money charged by the **named insured** for such operations by the **named insured** or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the **named insured** collects as a separate item and remits directly to a governmental division;
4. **"remuneration"** means the entire remuneration earned during the policy period by proprietors and by all employees of the **named insured**, other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the company;
5. **"sales"** means the gross amount of money charged by the **named insured** or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the **named insured** and such others collect as a separate item and remit directly to a governmental division.

Countersignature Date July 18, 1984

[signature]
Authorized Representative

T.V. 9810 A

WRG Policies
07275

**TRANSIT CASUALTY COMPANY**
LOS ANGELES, CALIFORNIA
ST. LOUIS, MISSOURI
(A stock insurance company, herein called the company)

W. R. GRACE & COMPANY
SCU 956 881

# Excess Umbrella Coverage—Insuring Agreements

**1. Coverage**

The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shal' be obliged to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Insured for damages, direct or consequential and expenses on account of:

(a) Personal Injuries, including death at any time resulting therefrom,

(b) Property Damage,

(c) Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

**UNDERLYING UMBRELLA INSURERS AND POLICY NUMBER:**

| Carrier | Limits |
|---|---|
| Underwriters at Lloyd's London & British Insurance Companies (80%) Cover Note Number KY 017582 | $5,000,000 each occurrence and/or in the aggregate excess of primary insurances. |
| Transit Casualty Company UMB 950 239 (15%) | |
| Pacific Employers Insurance Company Policy Number T.B.A. (5%) | |

**2. Limit of Liability — Underlying Limits**

It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:

(a) $ 5,000,000 ultimate net loss in respect of each occurrence, but

(b) $ 5,000,000 in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employes of the Insured

and the Company shall then be liable to pay only the excess thereof up to a further

(c) $ 1,250,000 part of $20,000,000 ultimate net loss in all in respect of each occurrence — subject to a limit of

(d) $ 1,250,000 part of $20,000,000 in the aggregate for each annual period during the currency of this policy, separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employes of the Insured.

7-18-84
T.V. 9812 A
dkw

GEC 028833

WRG Policies 07276

# Conditions

**Transit Casualty** (herein after called the Company) agrees with the Named Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy;

**The Insuring Agreements and any Special Provisions are contained in the separate Coverage Form or Forms issued to complete this policy.**

**I. Premium Computation:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by such Named Insured. The Named Insured shall maintain records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the Company at the end of the policy period, as the Company may direct.

**II. Inspection and Audit:** The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**III. Action Against Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. Bankruptcy or insolvency of the Insured or his estate shall not relieve the Company of any of its obligations hereunder.

**IV. Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery thereof against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

**V. Changes:** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

**VI. Assignment:** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Insured's legal representative as Insured; provided that notice of cancellation addressed to the Named Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**VII. Cancellation:** This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, (except in the instance of non-payment of premium to the COMPANY not less than ten (10) days thereafter), such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficent notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the NAMED INSURED or by the COMPANY shall be equivalent to mailing. If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED. If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS; and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

**VIII. Terms of Policy Conformed to Statute:** Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its Secretary and President and countersigned on the Declarations page by an authorized representative.

Secretary

GEC 028840

President

WRG Policies
07283

# EXHIBIT K65

000460

XXX-001538

VOL. XVI T48

L. BILITY POLICY

X

Item

DECLARATIONS

CNA/insurance

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW (A stock insurance company, herein called the company) 333 So. Wabash Ave./Chicago, Ill. 60604

- [x] CONTINENTAL CASUALTY COMPANY
- [ ] NATIONAL FIRE INSURANCE COMPANY of Hartford
- [ ] AMERICAN CASUALTY COMPANY of Reading, Pa.
- [ ] TRANSPORTATION INSURANCE COMPANY
- [ ] TRANSCONTINENTAL INSURANCE COMPANY
- [ ] VALLEY FORGE INSURANCE COMPANY

1.

| PRODUCER NO. | BRANCH | PREFIX | POLICY NUMBER |
|---|---|---|---|
| 35975 | 693 | RDX | 178 45 29 |

NAMED INSURED & ADDRESS: (Number & Street, Town, County & State)

W. R. GRACE & CO.
AND AS PER ENDORSEMENT #1
1114 AVENUE OF AMERICAS
NEW YORK, NEW YORK 10036

2. Policy Period: (hereinafter called "this policy period") 6-30-84 To: 6-30-85 12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE INSURED AS STATED HEREIN.

238

3. Schedule of Underlying Insurance: Insurer and Policy Number

SEE ENDORSEMENT #2

4. Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COLUMN I Company Limits | | IN EXCESS OF COLUMN II Underlying Limits | COLUMN III Total Limits | Coverage |
|---|---|---|---|---|
| $ | Each Person | $ | $ | A. Bodily Injury Automobile |
| $ | Each Occurrence | $ | $ | |
| $ | Each Person* | $ | $ | B. Bodily Injury Except Automobile |
| $ | Each Occurrence | $ | $ | |
| $ | Aggregate | $ | $ | |
| $ | Each Occurrence | $ | $ | C. Property Damage Automobile |
| $ | Each Occurrence | $ | $ | D. Property Damage Except Automobile |
| $ | Aggregate | $ | $ | |
| $ | Each Occurrence | $ | $ | E. Combined Single Limit Bodily Injury and Property Damage |
| $ | Aggregate | $ | $ | |
| $1,000,000. PART OF $20,000,000. | | $ 5,000,000. | $25,000,000. | F. Other COMBINED SINGLE LIMIT EACH OCCURRENCE AND AGGREGATE WHERE APPLICABLE |

5. Premium Computation

| Premium Basis | Estimated Exposure | Rate | Estimated Premium |
|---|---|---|---|
| 1984 CALENDAR YEAR GROSS SALES | TBD | .00175 | $16,250. |

Deposit Premium: $ 16,250. on effective date of policy
$ ____
$ ____

Minimum Premium: $ 16,250. Annual
$ ____ Policy term

Audit Period ANNUAL

*Absence of entry means the "each person" limit does not apply.

Countersigned by [signature] Authorized Agent

G-40219-A

WRG Policies
07285

GEC 028842

000461

XXX-001539

03209

The company agrees with the named insured, in consideration of the payment of the premium and subject to the provisions of this policy:

## PART I — INSURING AGREEMENTS

**1. Excess Liability Indemnity**

To indemnify the insured for the amount of **loss** which is in excess of the applicable limits of liability of the **underlying insurance** inserted in column II of item 4 in the declarations; provided that this policy shall apply only to those coverages for which a limit of liability is inserted in column I; provided further that the limit of the company's liability under this policy shall not exceed the applicable amount inserted in column I.

The provisions of the **immediate underlying policy** are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, the amount of the limits of liability, any "other insurance" provision and any other provisions therein which are inconsistent with the provisions of this policy.

If the applicable coverage in the **immediate underlying policy** insures accidents rather than occurrences, then "accident" is substituted for "occurrence" in the applicable coverage of this policy.

**2. Policy Period; Termination of Underlying Insurance**

This policy applies to injury or destruction taking place during this policy period; provided that when the **immediate underlying policy** insures occurrences taking place during its policy period, instead of injury or destruction taking place during its policy period, then this policy likewise applies to occurrences taking place during this policy period and "occurrences" is substituted for "injury or destruction" in Part III of this policy.

If the **immediate underlying policy** is canceled, this policy likewise is canceled effective on the same date at the same time and without notice to the insureds. If the **immediate underlying policy** otherwise ceases to apply (for reasons other than the exhaustion of an aggregate limit of liability), this policy likewise ceases to apply to the same extent on the same date at the same time and without notice to the insureds.

## PART II — DEFINITIONS

**1. Immediate Underlying Policy**

"Immediate underlying policy" means the policy of the **underlying insurance** which provides the layer of coverage, whether primary or excess, immediately preceding the layer of coverage provided by this policy.

**Loss**

"Loss" means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable, after making deductions for all recoveries, salvages and other insurances (whether recoverable or not) other than the **underlying insurance** and excess insurance purchased specifically to be in excess of this policy. "Loss" does not include investigation, adjustment, defense or appeal costs and expenses nor costs and expenses incident to any of the same, notwithstanding that the **underlying insurance** may provide insurance for such costs and expenses.

**3. Underlying Insurance**

"Underlying insurance" means the insurance policies listed in item 3 in the declarations and includes any renewal or replacement of such policies.

## PART III

## PROVISIONS GOVERNING THE APPLICATION OF THE AGGREGATE LIMITS OF LIABILITY

**1. Reduction of the Aggregate**

This provision applies only if this policy contains an aggregate limit of liability which applies to the occurrence.

If the "each occurrence" or "each person" limit of liability of the **underlying insurance** is less than as stated in column II in item 4 in the declarations because the aggregate limits of liability of the **underlying insurance** have been reduced, this policy becomes excess of such reduced limit of liability if such reduction is solely the result of injury or destruction occurring after the inception date of this policy and not before. Nothing contained herein shall operate to increase the limit of the company's liability.

**2. Application of the Aggregate to Separate Projects**

To the extent that the aggregate limits of liability of the **immediate underlying policy** apply separately to various operations, projects, locations, hazards or types of injury, the aggregate limits of liability of this policy likewise apply separately to such operations, projects, locations, hazards or types of injury.

**3. Application of the Aggregate to Periods of Time**

The aggregate limits of liability of this policy apply separately to each aggregate period. The first aggregate period of this policy begins on the effective date of this policy and ends on the next termination date of the aggregate period of the **immediate underlying policy**. Any succeeding aggregate period of this policy is concurrent with the aggregate period of the **immediate underlying policy** unless it is the final aggregate period. The final aggregate period of this policy begins on the termination date of the aggregate period of the **immediate underlying policy** immediately preceding the expiration date of this policy and ends on the expiration date of this policy.

This paragraph does not apply if the expiration date of this policy and the expiration date or anniversary date of the **immediate underlying policy** are identical. If this policy is a renewal of a similar policy underwritten by this company, the applicable aggregate limit of liability of this policy for the first period shall be reduced by any amounts paid or payable on account of injury or destruction taking place during the final aggregate period of the policy renewed. The final aggregate period of the policy renewed shall be determined in the same manner as the final aggregate period for this policy.

## PART IV — NUCLEAR ENERGY LIABILITY EXCLUSION

The following exclusion applies in addition to those in the **immediate underlying policy**.

Except with respect to automobiles registered in the State of New York, this policy does not apply:

A. to bodily injury or **property damage**

(1) with respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the **hazardous properties** of **nuclear material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. to bodily injury or **property damage** resulting from the **hazardous properties** of **nuclear material**, if

(1) the **nuclear material** (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) the bodily injury or **property damage** arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **property damage** to such **nuclear facility** and any property thereat.

As used in this exclusion:

"**hazardous properties**" include radioactive, toxic or explosive properties.

"**nuclear material**" means **source material**, **special nuclear material** or **byproduct material**;

"**source material**," "**special nuclear material**," and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

"**waste**" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph (a) or (b) thereof;

"**nuclear facility**" means

(a) any **nuclear reactor**,

GEC 028843

WRG Policies 07286

09210

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

## PART V — CONDITIONS

**1. Underlying Insurance — Changes During this Policy Period**

Any change in coverage in the underlying insurance shall be promptly reported to the company and the insured shall, upon request, furnish the company with copies of such changes.

Any change in the premium for the underlying insurance shall be promptly reported to the company and the premium for this policy, subject to the minimum premium, may be adjusted in accordance with the manuals of the company then in effect.

**2. Notice of Loss; Participation in Defense by the Company**

Notice of an occurrence which appears likely to involve this policy shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. The company at its own option may, but is not required to, participate in the investigation, settlement or defense of any claim or suit against the insured.

**3. Action Against Company**

No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy.

Any person or organization or the legal representative thereof who has secured a judgment against the insured shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability. Any payments by the company under this condition 3 shall discharge the company's obligation to the insured to the extent of such payments.

Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

**4. Subrogation and Other Recoveries**

In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after the occurrence to prejudice such rights.

Because this policy affords excess coverage, the insured's right of recovery cannot always be exclusively subrogated to the company. It is, therefore, agreed that the company shall act in concert with all other interests concerned, including the insured, in the enforcement of any subrogation rights or in the recovery of amounts by any other means. The apportioning of any amounts so recovered shall follow in the principle that any interest, including the insured, that shall have paid an amount over and above any payment under this policy shall first be reimbursed up to the amount paid by such interest; the company shall then be reimbursed out of any balance then remaining up to the amounts paid as the result of loss covered under this policy; and lastly, the interests, including the insured, of whom this coverage is in excess are entitled to claim any residue remaining. Expenses and costs necessary to the recovery of any such amounts shall be apportioned between the interests concerned, including the insured, in the ratio of their respective recoveries or, in the event of a totally unsuccessful attempt to recover, in the ratio of the respective amounts sought to be recovered.

**5. Other Insurance**

This condition does not apply with respect to the underlying insurance or excess insurance purchased specifically to be in excess of this policy.

If, with respect to a loss covered hereunder, the insured has other insurance, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder as respects such loss; provided, that if the applicable limit of liability of this policy is greater than the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured, as respects the layer of coverage afforded by this policy, a total limit of liability equal to the applicable limit of liability afforded by this policy.

**6. Cancellation**

This policy may be canceled by the named insured by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in the declarations written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premium or minimum premium, whichever is greater, shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium or minimum premium, whichever is greater, shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**7. First Named Insured**

The insured first named in item 1 in the declarations is authorized to act on behalf of all named insureds and other insureds with respect to the giving and receiving of notice of cancellation and to receiving any return premium that may become payable under this policy. The insured first named in item 1 in the declarations is responsible for the payment of all premiums but the other named insureds jointly and severally agree to make such premium payments in full if the insured first named in item 1 fails to pay the amount due within thirty days after the company gives a written demand for payment to the insured first named in item 1.

In witness whereof, the company has caused this policy to be signed by its president and a secretary at Chicago, Illinois, but the policy shall not become valid until countersigned on the declarations page by a duly authorized representative of the company.

Continental Casualty Company
Transportation Insurance Company

National Fire Insurance Company of Hartford
Transcontinental Insurance Company

American Casualty Company of Reading, Pa.
Valley Forge Insurance Company

Corporate Secretary

President

GEC 028844

WRG Policies
07287

00211

NAMED INSURED

W. R. GRACE & CO. AND/OR SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES AND/OR ORGANIZATIONS, OWNED, CONTROLLED AND/OR MANAGED COMPANIES AS NOW OR HEREINAFTER CONSTITUTED.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| *Must Be Completed* | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 1 | RDX 178 4529 |

| *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| | |

GW

INSURANCE FROM CNA

Countersigned by ____________________
Authorized Representative

G-39543-A

GEC 028845

WRG Policies 07288

G5212

SCHEDULE OF UNDERLYING INSURANCE

IT IS AGREED THAT ITEM 3 OF THE POLICY DECLARATIONS, LIMITS OF LIABILITY IS COMPLETED TO READ AS FOLLOWS:

THE COMPANY'S LIABILITY UNDER THIS POLICY IS LIMITED TO:

$1,000,000. EACH OCCURRENCE
$1,000,000. AGGREGATE WHERE APPLICABLE

WHICH IS PART OF $20,000,000. EXCESS OF $5,000,000. EXCESS OF PRIMARY AS FOLLOWS:

| | PARTICIPATION | POLICY NUMBER OR RENEWAL THEREOF |
|---|---|---|
| FIRST LAYER - $5.0 MILLION EXCESS OF PRIMARY | | |
| VARIOUS BRITISH COMPANIES | $ 4,000,000. | KYO 17582 |
| TRANSIT CASUALTY CO. | 750,000. | UMB 950239 |
| PACIFIC EMPLOYERS GROUP | 250,000. | XM 0017204 |
| | $ 5,000,000. | |
| SECOND LAYER - $20.0 MILLION EXCESS OF $5.0 MILLION | | |
| LLOYDS & VARIOUS COMPANIES | $11,250,000. | KYO 17782 |
| GRANITE STATE INS. CO. | 4,750,000. | 6484-5866 |
| PACIFIC EMPLOYERS GROUP | 1,750,000. | XCC 012283 |
| TRANSIT CASUALTY CO. | 1,250,000. | SCU 956881 |
| CONTINENTAL CASUALTY CO. | 1,000,000. | RDX 1784529 |
| | $20,000,000. | |

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 2 | RDX 178 4529 | | |

GW

Countersigned by ______________ Authorized Representative

G-39543-A

WRG Policies
07289

GEC 028846

# EXHIBIT K66

000466

XXX-001544

Service Office Number Agency Number
Montgomery & Collins, Inc.
50 California St.
San Francisco, CA. 94111

☐ New; ☒ Renewal; ☐ Rewrite of:
← Agency Name

Old Policy No.
XMO 01 72 04

EXCESS BLANKET CATASTROPHE LIABILITY POLICY

PACIFIC EMPLOYERS INSURANCE COMPANY

XMO 01 72 11

Named Insured Address
W.R. Grace & Co., Etal
Grace Plaza
1114 Avenue of the Americas
New York, New York 10036-7794

Policy Period: From 6/30/85 to 6/30/86 12:01 A.M., standard time at the address of the Named Insured as stated herein.

Audit Period: Annual, unless otherwise stated

Endorsements attached to policy at inception: Nuclear Energy Liability Exclusion

LIMITS OF LIABILITY

PEIC'S LIMIT OF LIABILITY:

ITEM 1. $ 1,000,000. p/o $5,000,000. arising out of any one occurrence because of personal injury, property damage or advertising injury or any combination thereof.

ITEM 2. $ 1,000,000. p/o $5,000,000. arising out of all occurrences during each policy year because of the products hazard, or the completed operations hazard, or both combined.

INSURED'S RETAINED LIMIT:

Underlying Insurance, or

ITEM 3. $ 100,000 because of personal injury, property damage or advertising injury arising out of any one occurrence not within the terms of coverage of underlying insurance but within the terms of the coverage of this insurance.

B Sales minimum Anyway

PREMIUM COMPUTATION

| Estimated | Rate per | Total Advance Premium |
|---|---|---|
| 1,315,405, 458 | .034 per 1000 Sales | $280,000. |

payroll

GEC 029337

MINIMUM PREMIUM $ 280,000.

in the event of cancellation by the Named Insured, PEIC shall receive and retain not less than $ 10,000. as the Minimum Premium.

9/10/85

Countersigned By

WRG Policies

0

**PERSONS OR ENTITIES INSURED**
**(continued)**

(d) any person while using, with the permission of the Named Insured, any automobile or aircraft owned by, loaned to or hired for use by or on behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual operation or other actual use is within the scope of such permission, and any officer, director or stockholder of the Named Insured with respect to the use of an automobile or aircraft not owned by the Named Insured but only while such automobile or aircraft is being used in the business of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply under this paragraph (d):

(i) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place;

(ii) to any automobile or aircraft hired by or loaned to the Named Insured, to the owner or a lessee (of whom the Named Insured is a sub-lessee) thereof other than the Named Insured, or to any agent or employee of such owner or lessee;

(iii) to any manufacturer of aircraft, aircraft engines or aviation accessories, or any aviation sales, service or repair organization or airport or hangar operator or their respective employees or agents.

GEC 029339

**RETAINED LIMIT—PEIC'S LIMIT OF LIABILITY**

R... )less of the number of (1) Insureds under this policy, (2) persons or organizations who sustain injury or damage, or (3) claims made or suits brought because of personal injury, property damage, or advertising injury, PEIC's liability is limited as follows:

With respect to personal injury, property damage or advertising injury, or any combination thereof, PEIC's liability shall be only for the ultimate net loss in excess of the Insured's retained limit defined as the greater of:

(a) an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the Insured; or

(b) the amount specified in Item 3. of the Limits of Liability section of the declarations because of personal injury, property damage or advertising injury not within the terms of the coverage of the underlying insurance listed in Schedule A:

then for an amount not exceeding the amount specified in Item 1. of .. Limits of Liability section of the declarations arising out of any one occurrence.

There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of PEIC, because of either the products hazard or the completed operations hazard, or both combined, arising out of all occurrences during each policy year shall not exceed the amount specified in Item 2. of the Limits of Liability section of the declarations.

If the aggregate limits of liability of the underlying insurance listed in Schedule A are reduced or exhausted because of personal injury, property damage or advertising injury during the period of this policy, PEIN will, subject to PEIC's limit of liability stated above, continue such coverage as is afforded by such listed underlying insurance for the remainder of the policy year of such underlying insurance in excess of the reduced or exhausted limits.

For the purpose of determining the limits of PEIC's liability, (1) all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence, and (2) with respect to advertising injury, all injury arising out of any advertisement, publicity article, broadcast or telecast or any combination thereof involving the same injurious material or act, regardless of the frequency of repetition thereof or the number or kind of media used, whether claim is made by one or more persons, shall be deemed to arise out of one occurrence.

**POLICY PERIOD, TERRITORY**

T... olicy applies to personal injury, property damage or advertising injury which occurs anywhere during the policy period.

**EXCLUSIONS**

**This policy does not apply:**

(a) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(b) to property damage to (1) property owned by the Insured, or (2) the Insured's products arising out of such products or any part of such products, or (3) work performed by or on behalf of the Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(c) to loss of use of tangible property which has not been physically injured or destroyed resulting from (1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or (2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an insured;

(d) to damages claimed for the withdrawal, inspection, repair, replacement or loss of the use of the Insured's products or work completed by or for the Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(e) to advertising injury resulting from (1) failure of performance of contract, (2) infringement of trade mark, service mark or trade name by use thereof as the trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans, (3) incorrect description of any article or commodity, or (4) mistake in advertised price;

(f) to property damage in accordance with the provisions of the property damage exclusion endorsement attached hereto;

(g) as respects parts (b), (c), and (d) of the definition of personal injury, to injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the Named Insured;

(h) as respects part (c) of the definition of personal injury, to injury arising out of any publication or utterance, if the first injurious publication or utterance of the same or similar material by or on behalf of the Named Insured was made prior to the effective date of this policy;

(i) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

WRG Policies

**5. Appeals**

If the Insured or the Insured's underlying insurer elects ... appeal a judgment in excess of the retained limit, PEIC may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of PEIC for ultimate net loss exceed the amount specified in the Limits of Liability section of the Declarations plus the taxable costs, disbursements and interest incidental to such appeal.

**Action Against PEIC**

No action shall lie against PEIC unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and PEIC. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join PEIC as a co-defendant in any action against the Insured to determine the Insured's liability, nor shall PEIC be impleaded by the Insured or his Legal Representative. Bankruptcy or insolvency of the Insured shall not relieve PEIC of any of its obligations hereunder.

**6. Other Insurance**

... collectible insurance with any insurer is available to the Insured ...uring a loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance provided, however, this does not apply to insurance which is written as excess insurance over PEIC's limit of liability provided in this policy.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, PEIC shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, PEIC shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, PEIC shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

**Subrogation**

In the event of any payment under this policy, PEIC shall be subrogated to all the Insured's rights of recovery therefor against any person or organization; and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Any amount so recovered shall be apportioned as follows:

Any interest (including the Insured's) having paid an amount in excess of the retained limit plus PEIC's limit of liability hereunder shall be reimbursed first to the extent of actual payment. PEIC shall be reimbursed next to the extent of its actual payment hereunder. If any balance then remains unpaid, it shall be applied to reimburse the Insured or any underlying insurer, as their interest may appear. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by PEIC, it shall bear the expenses thereof.

**8. Changes**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop PEIC from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**9. Assignment**

Assignment of interest under this policy shall not bind PEIC until its consent is endorsed hereon; if, however, the Named Insured shall die, or be adjudged bankrupt or insolvent, such insurance as is afforded by this policy shall apply (a) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (b) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

**10. Three Year Policy**

If this policy is issued for a period of three years, the limits of PEIC's liability shall apply separately to each consecutive policy year thereof.

**11. Maintenance of Underlying Policies**

The Named Insured shall maintain the underlying policies (and renewals thereof) with limits of liability as stated in Schedule A in full effect during this policy period, except for any reduction or exhaustion of the aggregate limit or limits contained in such policies solely by payment of claims arising out of occurrences which happen during this policy period. Failure of the Named Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure PEIC shall be liable only to the extent that it would have been liable had the Named Insured complied therewith.

The Named Insured shall give PEIC written notice as soon as practicable of any change in the scope of coverage or in the amount of limits of insurance under any underlying policy, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability.

**12. Cancellation**

This policy may be cancelled by the Named Insured by surrender thereof to PEIC or any of its authorized agents or by mailing to PEIC written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by PEIC by mailing to the Named Insured at the address shown in this policy written notice stating when, not less than thirty days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by PEIC shall be equivalent to mailing. If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If PEIC cancels, earned premium shall be computed pro rata. When this policy insures more than one Named Insured cancellation may be effected by the first named of such Named Insured for the account of all Insureds. Notice of cancellation by PEIC to the first Named Insured shall be deemed notice to all Insureds and payment of any unearned premium to such first named Named Insured shall be for the account of all Insureds. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**13. Acceptance**

By acceptance of this policy, the Insured agrees that this policy embodies all agreements existing between himself and PEIC or any of its agents relating to this insurance.

IN WITNESS WHEREOF, the PACIFIC EMPLOYERS INSURANCE COMPANY has caused this policy to be signed by its President and a Secretary at Los Angeles, California, and countersigned on the Declarations page by a duly Authorized Agent of the Company.

DENNIS C. POULSEN, Secretary

BERNARD A. BUGE, JR., President

GEC 029341

WRG Policies 07774

# EXHIBIT K67

000470

XXX-001548

Service Office Number Agency Number
Montgomery & Collins, Inc.
50 California St.
San Francisco, CA. 94111

Agency Name

New: [ ] Renewal: [X] Rewrite of: [ ]

Old Certificate No.
XCC 01 22 83

CERTIFICATE OF EXCESS INSURANCE

# PACIFIC EMPLOYERS INSURANCE COMPANY

XCC 01 23 15

Item 1. Name of Insured —
W.R. Grace & Co., Etal
Grace Plaza, 1114 Avenue of the Americas
New York, New York 10036-7794

Item 2. Address —

Item 3. Certificate Term — From: 6/30/85
To: 6/30/86
12:01 A.M., standard time at the address of the insured as stated in Item 2 above.

Item 4. Primary Insurance —

| Primary Carriers | Policy Numbers | Policy Periods |
|---|---|---|
| London | To Follow | 6/30/85 to 6/30/86 |
| PEIC | XMO 01 72 11 | 6/30/85 to 6/30/86 |

Item 5. Description of Primary Insurance — Umbrella Liability

Item 6. Description of Excess Insurance — $1,000,000. part of $15,000,000. excess of $5,000,000. Umbrella Liability excess of Primary as per file

Item 7. Premium — $76,667.

Item 8. attached hereto and made a part hereof:
No. 1 — Nuclear Energy Liability Exclusion Endorsement (Form LC-1012); LD6B97

9/10/85

LD-6B98 PTD. IN U.S.A.

GEC 029358

WRG Policies 07701