# EXHIBIT 25


W R GRACE & CO NEW                                                                                    Filing Date: 04/06/08

UNITED STATES

SECURITIES AND EXCHANGE COMMISSION

WASHINGTON, DC 20549

FORM 8-K

CURRENT REPORT PURSUANT

TO SECTION 13 OR 15(D) OF THE

SECURITIES EXCHANGE ACT OF 1934

Date of report (Date of earliest event reported) April 6, 2008

W. R. GRACE & CO.

(Exact Name of Registrant as Specified in Its Charter)

Delaware

(State or Other Jurisdiction of Incorporation)



Δπ EXHIBIT 3
Deponent FINKE
5.13.09  30(b)(6)
Date _____ Rptr. LL

                          1-13953                              65-0773649
(Commission File Number)                       (IRS Employer Identification No.)
7500 Grace Drive                                                    21044
Columbia, Maryland
(Address of Principal Executive Offices) (Zip Code)

(410) 531-4000

EXHIBIT
OS-21



DEPOSITION EXHIBIT #12

1

000001

XXX-000672

W R GRACE & CO NEW                                                                                      Filing Date: 04/06/08

---

(Registrant's Telephone Number, Including Area Code)

(Former Name or Former Address, if Changed Since Last Report)

Check the appropriate box below if the Form 8-K filing is intended to
simultaneously satisfy the filing obligation of the registrant under any of the
following provisions (see General Instruction A.2. below):

o    Written communications pursuant to Rule 425 under the Securities Act (17
CFR 230.425)

o    Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR
240.14a-12)

o    Pre-commencement communications pursuant to Rule 14d-2(b) under the
Exchange Act (17 CFR 240.14d-2(b))

o    Pre-commencement communications pursuant to Rule 13e-4(c) under the
Exchange Act (17 CFR 240.13e-4(c))

---

W. R. GRACE & CO.

FORM 8-K

---

000002

XXX-000673

W R GRACE & CO NEW                                                    Filing Date: 04/06/08

CURRENT REPORT

Item 7.01.                Regulation FD Disclosure.

On April 6, 2008, W. R. Grace & Co., on behalf of itself and its subsidiaries and affiliates that are debtors in the Chapter 11 cases, (the "Company") entered into an agreement in principle (the "Agreement") with the Official Committee of Asbestos Personal Injury Claimants, the Future Claimants Representative and the Official Committee of Equity Security Holders, all parties-in-interest in the Company's Chapter 11 case, that would settle all present and future asbestos-related personal injury claims against the Company on the terms and conditions set forth therein. Certain terms and conditions of the Agreement are described in the press release attached hereto as Exhibit 99.1. The description of the terms and conditions of the Agreement is qualified in its entirety by reference to the provisions of the Agreement attached hereto as Exhibit 99.2.

The information furnished pursuant to this Item 7.01, including Exhibit 99.1 and Exhibit 99.2, shall not be deemed to be "filed" for purposes of Section 18 of the Securities Exchange Act of 1934, as amended, (the "Exchange Act"), or otherwise subject to the liabilities of such section, nor shall such information be deemed incorporated by reference in any filing under the Securities Act of 1933, as amended, or the Exchange Act, except as shall be expressly set forth by specific reference in such a filing.

Item 9.01.                Financial Statements and Exhibits.

(d)  Exhibits

99.1                      Press Release

99.2                      Term Sheet for Resolution of Asbestos Personal Injury Claims dated as of April 6, 2008

2

3

000003

XXX-000674

SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed by the undersigned, thereunto duly authorized.

W. R. GRACE & CO.
(Registrant)
By /s/ Mark A. Shelnitz
Mark A. Shelnitz
Secretary

Dated:  April 7, 2008

3

*W R GRACE & CO NEW*  Filing Date: 04/06/08

Exhibit 99.1

Grace News #2919

Media Relations:         Investor Relations:
William Corcoran         Bridget Sarikas
T +1 410.531.4203        T +1 410.531.4194
Ewilliam.corcoran@grace.com  Ebridget.sarikas@grace.com

### GRACE ANNOUNCES SETTLEMENT OF ASBESTOS PERSONAL INJURY CLAIMS

COLUMBIA, Maryland, April 7, 2008 -- W. R. Grace & Co. (NYSE: GRA) today announced an agreement in principle that would settle all present and future asbestos-related personal injury claims. The agreement, reached with the Official Committee of Asbestos Personal Injury Claimants, the Future Claimants Representative and the Official Committee of Equity Security Holders, requires the following assets to be paid into a trust to be established under Section 524(g) of the United States Bankruptcy Code:

- Cash in the amount of $250 million;

- Warrants to acquire 10 million shares of Grace common stock at an exercise price of $17.00 per share, expiring one year from the effective date of a plan of reorganization;

- Rights to proceeds under Grace's asbestos-related insurance coverage;

- The value of cash and stock under the litigation settlement agreements with Sealed Air Corporation and Fresenius Medical Care Holdings, Inc.; and

000005

XXX-000676

Deferred payments at $110 million per year for five years beginning in 2019, and $100 million per year for ten years beginning in 2024; the deferred payments would be obligations of Grace backed by 50.1% of Grace's common stock to meet the requirements of Section 524(g).

The agreement in principle contemplates the filing of a plan of reorganization and related documents with the Bankruptcy Court. The plan will be subject to approval of its co-proponents, exit financing, and Bankruptcy Court and District Court approvals.

"This agreement in principle is a very important step in emerging from Chapter 11," said Fred Festa, Grace's Chairman, President and Chief Executive Officer. "In this challenging global marketplace, we need to be able to focus all of our efforts on increasing shareowner value and continued improvement in our core businesses. The agreement and the Plan of Reorganization that will be based on it will be good for our shareholders, customers, creditors, and our employees. A lot of work remains to be done before we can confirm a Plan of Reorganization, but I am optimistic we will be successful in reaching that goal by the end of this year or early in 2009."

1
----------------------------------------------------------------------

"Also, I want to point out that the Plan of Reorganization will preserve all employee benefits. During the seven years we have been in Chapter 11, our people have nearly doubled Grace's sales and dramatically improved the core businesses. We look forward to final approval of our Plan of Reorganization when we can once again operate without the constraints of Chapter 11," said Festa.

*  *  *  *  *

Grace is a leading global supplier of catalysts and other products to petroleum refiners; catalysts for the manufacture of plastics; silica-based engineered and specialty materials for a wide-range of industrial applications; sealants and coatings for food and beverage packaging, and specialty chemicals, additives and building materials for commercial and residential construction. With annual sales of more than $3.1 billion, Grace has about 6,500 employees and operations in over 40 countries. For more information, visit Grace's web site at www.grace.com.

\* \* \* \* \*

This announcement contains forward-looking statements, that is, information related to future, not past, events. Such information generally includes the words "believes," "plans," "intends," "targets," "will," "expects," "anticipates," "continues" or similar expressions. For these statements, Grace claims the protection of the safe harbor for forward-looking statements contained in the Private Securities Litigation Reform Act of 1995. Grace is subject to risks and uncertainties that could cause actual results to differ materially from those projected in the forward-looking statements or that could cause other forward-looking information to prove incorrect. Factors that could cause actual results to materially differ from those contained in the forward-looking statements include: Grace's bankruptcy, plans of reorganization proposed by Grace and others, Grace's legal proceedings (especially the Montana criminal proceeding and environmental proceedings), the cost and availability of raw materials and energy, Grace's unfunded pension liabilities, costs of environmental compliance, risks related to foreign operations, especially, security, regulation and currency risks and those factors set forth in Grace's most recent Annual Report on Form 10-K, quarterly report on Form 10-Q and current reports on Form 8-K, which have been filed with the Securities and Exchange Commission and are readily available on the Internet at www.sec.gov. Reported results should not be considered as an indication of future performance. Readers are cautioned not to place undue reliance on forward-looking statements, which speak only as of the date thereof. Grace undertakes no obligation to publicly release any revisions to the forward-looking statements contained in this announcement, or to update them to reflect events or circumstances occurring after the date of this announcement.

###

Corporate Communications

W. R. Grace & Co.-Conn.

7500 Grace Drive

Columbia, MD 21044

2

000007

XXX-000678

W R GRACE & CO NEW                                                                Filing Date: 04/06/08

Exhibit 99.2

W. R. GRACE & CO., et al.
CASE NO. 01-1139 (JFK)

TERM SHEET FOR RESOLUTION OF
ASBESTOS PERSONAL INJURY CLAIMS

This Term Sheet sets forth certain of the principal terms and conditions under which the Debtors, the Official Equity Security Committee, the Official Committee of Personal Injury Claimants ("ACC") and the Future Claimants Representative ("FCR") in the above-captioned Chapter 11 cases are prepared to file a plan of reorganization ("Plan") as co-proponents providing for the resolution of all asbestos personal injury claims and liabilities, including without limitation all asbestos personal injury claims pending at the filing date of the Chapter 11 cases and those arising subsequent thereto (collectively, "Asbestos PI Claims"). This Term Sheet also sets forth the proposed treatment of other key classes of claims asserted in the Chapter 11 cases. This Term Sheet has been produced for settlement purposes only and is subject to the provisions of Rule 408 of the Federal Rules of Evidence.

I.          Treatment of Claims

A.          Asbestos PI Trust

All Asbestos PI Claims will be channeled to a trust (the "Asbestos PI Trust") that is established in accordance with Section 524(g) of the United States Bankruptcy Code. The Asbestos PI Trust will pay claims from trust assets in accordance with a trust agreement and trust distribution procedures established by the ACC and FCR in connection with the Plan.

1.          Funding of Asbestos PI Trust at Emergence. On the Effective Date of the Plan, the Asbestos PI Trust shall receive the following, each of which shall be a condition to the Plan becoming effective:

a.          Cash Payment: $250 million, plus, if the Effective Date occurs after December 31, 2008, interest from January 1, 2009 to the Effective Date accrued at the same rate applicable to Grace's senior debt.

b.          Insurance: the assignment by W. R. Grace & Co.-Conn. ("Grace") and all of its affiliates to the Asbestos PI Trust, of all insurance policies and all insurance proceeds available for payment of Asbestos PI Claims, effective as of the Effective Date, including without limitation:

i.          Any such proceeds from the date hereof of all settlements with insurance companies, and all interest accrued thereon;

ii.         Any proceeds of the settlement with Equitas held in escrow with all interest accrued thereon;

ii.        Any proceeds of all settlements with all insurance companies

000008

XXX-000679

under coverage in place agreements or installment payment arrangements where payment has not yet occurred;

iv. Assignment of and the right to recover on all outstanding insurance policies potentially applicable to personal injury claimants; and

v. The right to recover from all insolvent insurance estates as to which Grace or its affiliates has made a claim and the proceeds of all payments received by Grace or its affiliates from those insolvent estates after the date hereof, and all interest accrued thereon.

Provided however that Grace is in the process of examining its policies and the foregoing will not affect Grace's separate coverages, if any, for losses not arising from asbestos personal injury claims.

The ACC and FCR (or, after the Effective Date, the Asbestos PI Trust) shall control (and Grace shall cooperate in connection with) any negotiations or legal proceedings related to the underlying policies or settlement agreements applicable to Asbestos PI Claims.

c. Warrant: a warrant for 10 million shares of W. R. Grace & Co. ("Parent") common stock, exercisable at $17 per share, and expiring one year after the Effective Date.

d. Cryovac, Inc. Payment: The consideration contemplated by the Sealed Air Settlement Agreement.

e. Fresenius Medical Care Payment: The proceeds of the payment contemplated by the Fresenius Settlement Agreement.

2. Deferred Payment Obligations: Grace shall make additional payments to the Asbestos PI Trust over a 15 year period as follows: five annual payments of $110 million commencing on January 2, 2019; and 10 annual payments of $100 million commencing on January 2, 2024. Such payment obligations shall be subordinate to any bank debt or bonds outstanding and shall be guaranteed by Parent or any successor ultimate parent entity of Grace. Such guaranty shall be secured by an obligation of Parent to issue to the Asbestos PI Trust, in the event an additional payment is not made, the number of shares of Parent common stock which, when

2

---

added to the number of shares of common stock issued and outstanding as of the Effective Date, shall constitute 50.1% of the voting shares of Parent as of the Effective Date (such number of shares shall be equitably adjusted for stock splits, stock dividends, recapitalizations, corporate reorganizations or changes in control of Parent after the Effective Date).

B. Other Classes

1. Administrative Claims: 100% of allowed amount in cash.

2. Priority Tax Claims: 100% of allowed amount in cash.

3. Priority Non-Tax Claims: 100% of allowed amount in cash.

4. Secured Claims: 100% of allowed amount either in cash or by reinstatement.

5. Unsecured Employee Claims (post-retirement health and special pension): 100% of allowed amount by reinstatement.

6. Workers Compensation Claims: 100% by reinstatement.

7. Allowed General Unsecured Claims: 100% of allowed amount plus

9

post-petition interest as follows: (i) for holders of pre-petition bank credit facilities, post-petition interest at the rate of 6.09% from the filing date through December 31, 2005 and thereafter at floating prime, in each case compounded quarterly; and (ii) for all other unsecured claims, interest at 4.19%, compounded annually, or if pursuant to an existing contract, interest at the non-default contract rate.

8.         Allowed Environmental Claims: 100% of allowed amount in cash.

9.         Traditional Asbestos Property Damage Claims: 100% of allowed amount in cash for settled claims. The Plan shall set forth procedures for the allowance of all Asbestos PD Claims that are disputed as of the Effective Date.

10.        ZAI Claims: Unless the Plan Proponents agree otherwise as to the treatment of ZAI Claims, the court shall estimate, for purposes of allowance and distribution, any liability on account of ZAI Claims prior to or in connection with the confirmation of the Plan. ZAI Claims shall be paid 100% of their allowed amount up to the amount of the court's estimate.

II.        Channeling Injunctions. The Plan shall contain injunctions under Sections 524(g) and Section 105(a) of the Bankruptcy Code to protect the Debtors, Cryovac, Sealed Air, Fresenius, their affiliates, officers, directors and employees, and other parties in interest and certain insurers. The Plan shall also contain such provisions, injunctions and releases

3

(i) as are necessary to comply with the terms of the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement; and (ii) to the full extent permitted by law, to indemnify, and release all of Grace's officers, directors, employees and professionals, and the members of all official committees, the FCR and their professionals, from any liability on account of claims against Grace, or arising in or in connection with these Chapter 11 cases. The foregoing injunctions, indemnifications and releases shall be at least as extensive as, and consistent with, the injunctions, indemnifications and releases provided for under Grace's Amended Plan currently filed in the Chapter 11 Cases to the extent such latter injunctions, indemnifications and releases are not inconsistent with this Term Sheet.

III.       Resolution of Outstanding Issues. The parties agree to cooperate in seeking a resolution of outstanding issues material to or not otherwise resolved in connection with the confirmation of a plan of reorganization.

IV.        Binding Effect. This Term Sheet has been approved by all necessary corporate or organizational action of the Board of Directors of

Parent and Grace, the ACC, the FCR and the Equity Committee, and shall be binding upon the parties and each of their respective successors and assigns to the fullest extent permitted by applicable law. The parties shall use their best efforts to incorporate the terms of this Term Sheet into a mutually agreeable plan of reorganization to be filed with the Bankruptcy Court as soon as possible.

V.         Confidentiality.

The parties shall treat all negotiations regarding this Term Sheet as confidential. Neither the contents nor the existence of this Term Sheet shall be disclosed by any party, either orally or in writing, except to its directors, officers, employees, legal counsel, financial advisors, accountants and clients on a confidential basis until the Debtors have issued a press release announcing the terms and conditions contained herein. Notwithstanding the foregoing, the parties agree that this Term Sheet or the terms of this Term Sheet may be disclosed to the Official Committee of Unsecured Creditors and the Official Committee of Asbestos Property Damage Claimants. Grace will provide counsel to the ACC and counsel to the FCR an opportunity to review and comment on any press release relating to this Term Sheet prior to its issuance.

4

---

AGREED TO AND ACCEPTED BY:
Dated: April 6, 2008
THE DEBTORS:
W. R. GRACE & CO., on behalf of itself and its subsidiaries and affiliates that are Debtors in the Chapter 11 cases
By:                                          /s/ Fred Festa
Name:                                        Fred Festa
Title:                                       Chairman, President and Chief Executive Officer
THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS
By:                                          /s/ R. Ted Weschler
Name:                                        R. Ted Weschler
Title:                                       Chair of the Committee
THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS:
CAPLIN & DRYSDALE, CHARTERED, on behalf of and in its capacity as counsel to the ACC
By:                                          /s/ Elihu Inselbuch
Name:                                                            Elihu Inselbuch
THE FUTURE CLAIMANTS REPRESENTATIVE:
ORRICK, HERRINGTON & SUTCLIFFE LLP, on behalf of and in its capacity as counsel to the FCR
By:                                          /s/ Roger Frankel
Name:                                                            Roger Frankel

5

---