SECTION 4    GRACE LTIP.

(a) The contingent awards under the Grace LTIP for Current
Performance Periods held by NMC Participants [and by the

- 10 -

<PAGE>   11
individuals listed on Schedule A hereto (which lists Grace-Conn. Participants
who are employed by Amicon, Inc. and who hold LTIP awards)] (such contingent
awards, the "LTIP Awards") shall become vested and nonforfeitable as of the
Distribution Date, and shall be adjusted and paid in accordance with this
Section 4. The value of the LTIP Awards shall be calculated in accordance with
the terms of the Grace LTIP, except that (i) the calculation of the number of
"performance units" (within the meaning of the Grace LTIP) earned for each LTIP
Award shall be based upon the assumptions specified on Exhibit A hereto, (ii)
such number of "performance units" earned with respect to each LTIP Award shall
be adjusted by multiplying such number by the pro-ration fraction specified on
Exhibit A (such adjusted "performance units" being referred to herein as the
"Final Performance Unit Award"), (iii) the value of each "performance unit" that
comprises a Final Performance Unit Award shall be equal to the value of a share
of Grace Common Stock as of the date specified on Exhibit A, and (iv) the total
value of each Final Performance Unit Award shall be payable by the NMC Group to
NMC Participants [and to the individuals listed on Schedule A], in the months of
payment specified on Exhibit A.

(b) With respect to the former employees of the NMC Group listed
on Schedule B (each of whom terminated employment with the

- 11 -

<PAGE>   12
NMC Group before the Distribution Date and has been determined by the
Grace-Conn. Group to be entitled to payments under the Grace LTIP with respect
to performance periods beginning before such termination that have not
theretofore been paid), the value of their awards shall be calculated in
accordance with Section 4(a) above, except that the Final Performance Unit Award
with respect to each such former employee shall be reduced by multiplying the
number of "performance units" credited to the former employee by the following
fraction (instead of the pro-ration fraction described in Section 4(a)):
number of calendar days completed during the "performance period" as of the
former employee's termination date, divided by 1,096. The total value of each
such Final Performance Unit Award, as so reduced, shall be payable by the NMC
Group to such former employees of the NMC Group in accordance with the months of
payment schedule described in Section 4(a) above; provided, that the NMC Group
shall have the right to reduce such amounts by up to 20% as provided in the
Grace LTIP.

(c) From and after the Distribution Date, the NMC Group shall
assume or retain, as appropriate, shall be solely responsible for, and shall
indemnify the Grace-Conn. Indemnitees against, all Indemnifiable Losses relating
to or arising out of awards payable to NMC Participants [(and to those listed on
Schedule A to Section 4(a))] pursuant to the Grace LTIP for Current Performance
Periods.

- 12 -

<PAGE>   13
(d) From and after the Distribution Date, the Grace-Conn. Group
shall retain or assume, as appropriate, shall be solely responsible for, and
shall indemnify the NMC Indemnitees against, all Indemnifiable Losses relating
to or arising out of awards payable to Grace-Conn. Participants [(except for
those persons listed on Schedule A)] pursuant to the Grace LTIP for Current
Performance Periods.

SECTION 5    NMC STOCK OPTION PLAN

(a) No later than 5 business days prior to the Distribution Date,
the NMC Group shall complete the calculation of all amounts payable to NMC
Participants, as of August 1, 1996, with respect to outstanding awards under the
1989 NMC Stock Option Plan. Such calculations shall be in accordance with the
terms of that Plan as interpreted in a manner that is mutually agreeable to the
NMC Group and the Grace-Conn. Group, and that incorporates any adjustments to
those terms that are mutually agreeable to the NMC Group and the Grace-Conn.
Group (which shall include a reasonable pro-ration of the values earned as of
the Distribution Date).

(b) NMC shall be solely responsible for all awards under the NMC
1989 Stock Option Plan, and shall indemnify the Grace-Conn. Indemnitees against
all Indemnifiable Losses relating to or arising

- 13 -

<PAGE>   14
under the NMC 1989 Stock Incentive Plan, whether arising before, on or after the
Distribution Date.

SECTION 6    GRACE-CONN. BENEFIT PLANS.

(a) With respect to any Grace-Conn. Benefit Plan that is sponsored
or maintained by Grace or any member of the NMC Group as of the date hereof,
Grace-Conn., Grace and NMC shall take, or cause to be taken, all such action as
may be necessary or appropriate in order to establish Grace Delaware,

XXX-002287

Grace-Conn. or one or more members of the Grace-Conn. Group, as appropriate, as successor to all rights, assets, duties and Liabilities arising thereunder with respect to Grace-Conn. Participants from and after the Distribution Date.

(b) From and after the Distribution Date, Grace Delaware or the Grace-Conn. Group shall assume or retain (as the case may be), shall be solely responsible for, and shall indemnify the NMC Indemnitees against, all Indemnifiable Losses arising with respect to Grace-Conn. Participants relating to or arising under any Grace-Conn. Benefit Plan, regardless of whether such Indemnifiable Losses arise from, or are related to, events occurring or circumstances existing before, on or after the Distribution Date.

(c) From and after the Distribution Date, the NMC Group shall assume or retain (as the case may be), shall be solely responsible for, and shall indemnify the Grace-Conn. Indemnitees against,

- 14 -

<PAGE>    15
all Indemnifiable Losses arising with respect to NMC Participants relating to or arising under any Grace-Conn. Benefit Plan, regardless of whether such Indemnifiable Losses arise from, or are related to, events occurring or circumstances existing before, on or after the Distribution Date.

(d) In the event that a retroactive premium increase is assessed with respect to the group life insurance policy issued by the Metropolitan Life Insurance Company that provides life insurance coverage to NMC Participants (the "MetLife Policy") for the policy year ending March 31, 1995 or the policy year ending March 31, 1996, then Grace-Conn. shall bear the cost of the portion, if any, of such premium increase that is allocable to life insurance coverage provided to employees of the Grace-Conn. Group, and Grace and NMC shall bear the remainder of the cost of such premium. Such allocation shall be determined by Grace-Conn. in a manner consistent with such allocations for prior policy years; provided, that no portion of such premium increase shall be allocated to Grace-Conn. unless the coverage provided to employees of the Grace-Conn. Group for the applicable policy period was in a deficit position, as determined by Grace-Conn. based upon the books and records kept by Metropolitan Life Insurance Company. In the event that a refund of premiums with respect to the MetLife Policy for the policy year

- 15 -

<PAGE>    16
ending March 31, 1996 is received, then Grace-Conn. shall be entitled to the portion, if any, of such refund that is allocable to life insurance coverage provided to employees of the Grace-Conn. Group and Grace shall be entitled to the remainder of such refund. Such allocation shall be determined by Grace-Conn. in a manner consistent with such allocations made in prior policy years. All determinations by Grace-Conn. regarding the MetLife Policy shall be subject to the review and approval of Grace and NMC.

SECTION 7    NMC FREE-STANDING PLANS

(a) With respect to any NMC Free-Standing Plan that is sponsored or maintained by any member of the Grace-Conn. Group as of the date hereof, Grace-Conn., Grace and NMC shall take, or cause to be taken, all such action as may be necessary or appropriate in order to establish Grace, NMC or one or more members of the NMC Group, as appropriate, as successor to all rights, assets, duties and Liabilities arising thereunder with respect to NMC Participants from and after the Distribution Date.

(b) From and after the Distribution Date, the NMC Group shall assume or retain (as the case may be), shall be solely responsible for, and shall indemnify the Grace-Conn. Indemnitees against, all Indemnifiable Losses arising with respect to NMC Participants relating to or arising under any NMC Free-Standing Plan, regardless of whether such Indemnifiable Losses arise from, or

- 16 -

<PAGE>    17
are related to, events or circumstances existing before, on or after the Distribution Date.

SECTION 8    BENEFITS FOR C.L. HAMPERS.

(a) Any amount that is payable to C.L. Hampers as an award under the Grace LTIP for either Performance Period shall be paid by NMC at the appropriate time, in accordance with the provisions of Section 4 that apply to such awards held by NMC Participants.

(b) The parties to this Agreement are aware that as of January 1, 1997 C.L. Hampers will become eligible to commence receiving a non-qualified pension benefit (the "Hampers Non-Qualified Pension Benefit") specified in section 3.5 of his employment agreement with Grace-Conn. that is dated as of April 1, 1996 (the "Hampers Employment Agreement"). The NMC Group shall either pay the Hampers Non-Qualified Pension Benefit directly to C.L. Hampers or, to the extent that the Grace-Conn. Group makes such payments to C.L. Hampers in accordance with the terms of the Hampers Employment Agreement, shall reimburse the Grace-Conn. Group for the amount of such payments made by the Grace-Conn. Group to C.L. Hampers.

(c) From and after the Distribution Date, NMC shall indemnify the

XXX-002288

Grace-Conn. Indemnitees against all Indemnifiable

- 17 -

<PAGE>  18

Losses relating to or arising with respect to the Hampers Non-Qualified Pension Benefit and with respect to C.L. Hampers' benefits under the Grace LTIP for the Current Performance Periods, whether arising before, on or after the Distribution Date.

SECTION 9    SPLIT DOLLAR PROGRAM.

Effective as of or prior to the Distribution Date, the collateral assignment of each Grace-Conn. Participant and NMC Participant who participates in the Grace split dollar life insurance program shall be assigned by Grace to Grace-Conn. (or Grace Delaware). Each NMC Participant who participates in that program shall be treated as a terminated participant under that program as of the Distribution Date, and shall have the same elections and rights as are available to any other employee who participates in that program upon termination of employment, in accordance with the terms of such program as in effect immediately before the Distribution.

SECTION 10    OTHER LIABILITIES; GUARANTEE OF OBLIGATIONS.

(a) From and after the Distribution Date, the Grace-Conn. Group shall assume or retain (as the case may be), shall be solely responsible for, and shall indemnify the NMC Indemnitees against, all Indemnifiable Losses relating to or arising out of claims made by or on behalf of any Grace-Conn. Participant, including, but not limited to, salary, wages, bonuses, incentive compensation, sever-

-18-

<PAGE>  19

ance benefits, separation pay, accrued sick, holiday, vacation, health, dental or retirement benefits, or other compensation or entitlement under applicable law or otherwise, regardless of whether such Indemnifiable Loss was incurred before, on or after the Distribution Date.

(b) From and after the Distribution Date, Grace and the NMC Group shall assume or retain (as the case may be), shall be solely responsible for, and shall indemnify the Grace-Conn. Indemnitees against, all Indemnifiable Losses relating to or arising out of claims made by or on behalf of any NMC Participant, including, but not limited to, salary, wages, bonuses, incentive compensation, severance benefits, separation pay, accrued sick, holiday, vacation, health, dental or retirement benefits, or other compensation or entitlement under applicable law or otherwise, regardless of whether such Indemnifiable Loss was incurred before, on or after the Distribution Date.

(c) From and after the Distribution Date, the NMC Group shall assume or retain (as the case may be), shall be solely responsible for, and shall indemnify the Grace-Conn. Indemnitees against, all Indemnifiable Losses relating to or arising out of claims made by or on behalf of the employees of the Grace-Conn. Group who performed services exclusively for the NMC Group prior to the

-19-

<PAGE>  20

employee's termination from the Grace-Conn. Group (including any such employee whose employment transferred from a member of the NMC Group, whether or not pursuant to the Grace-NMC Healthcare Business Restructuring Agreement), including, but not limited to, claims regarding salary, wages, bonuses, incentive compensation, severance benefits, separation pay, accrued sick, holiday, vacation, health, dental or retirement benefits, or other compensation or entitlement under applicable law or otherwise, regardless of whether such Indemnifiable Losses arise from, or are related to, events occurring or circumstances existing before, on or after the Distribution Date.

(d) Notwithstanding the foregoing, this Section 10 shall not apply to any Indemnifiable Loss that is specifically provided for elsewhere in this Agreement.

SECTION 11    TERMINATION OF PARTICIPATION.

(a) The accrual of benefits by Grace-Conn. Participants in any Pension Plan sponsored or maintained by a member of the NMC Group, and the participation of Grace-Conn. Participants in any other Benefit Plan sponsored or maintained by a member of the NMC Group, shall cease on a date that is not later than the Distribution Date, except as provided in Section 12.

(b) The accrual of benefits by NMC Participants in any Pension Plan sponsored or maintained by a member of the Grace-Conn.

-20-

<PAGE>  21

Group, and the participation of NMC Participants in any other Benefit Plan sponsored or maintained by a member of the Grace-Conn. Group, shall cease on a date that is not later than the Distribution Date, except as provided in the Grace-NMC Healthcare Business Restructuring Agreement.

XXX-002289

SECTION 12    AMICON EMPLOYEES.

        (a) As of the Distribution Date, each Grace-Conn. Participant who
is employed by Amicon, Inc. or Prochrom, Inc. (an "Amicon Employee") shall: (i)
continue to participate in the NMC Insured Welfare Plans in which the Employee
participated immediately before the Distribution Date, and (ii) commence
participation in welfare benefit plans that are maintained by one or more
members of the Grace-Conn. Group (the "Amicon Mirror Self-Insured Welfare
Plans"), where the benefit entitlement provisions of each such plan are
identical to such provisions under the corresponding NMC Self-Insured Welfare
Plan (except the NMC Long Term Disability Plan and the NMC Short Term Disability
Plan) in which the Employee participated immediately before the Distribution
Date: until such participation ceases in accordance with this Section 12(a).
In addition, the NMC Group shall permit newly hired employees of Amicon, Inc.
or Prochrom, Inc. to participate in any Insured Welfare Plan in which Amicon
Employees participated immediately before the

                                    -21-
<PAGE>    22
Distribution Date and in any Amicon Mirror Self-Insured Welfare Plan, but only
if Amicon, Inc. gives written notice to NMC of its request for such
participation, which request is given not later than 15 business days after such
participation is to begin and includes the name of such individual and of the
Welfare Plan or Plans in which such participation is to commence. NMC shall
administer each Amicon Mirror Self-Insured Welfare Plan in the same manner and
with the same degree of care as applicable to the corresponding NMC Self-Insured
Welfare Plan. The Grace-Conn. Group shall reimburse NMC, promptly upon receipt
of appropriate invoices, for all direct expenses incurred by the NMC Group after
the Distribution Date related to the participation of Amicon Employees in NMC
Insured Welfare Plans and in Amicon Mirror Self-Insured Welfare Plans (hereafter
referred to as "Continued Amicon Participation") (including, but not limited to,
any insurance premiums or medical claims associated with Continued Amicon
Participation, as determined in the reasonable judgement of NMC and its
advisors), and the Grace-Conn. Group shall fully cooperate to provide any
information necessary, as reasonably determined by NMC or its advisors, to
effectuate Continued Amicon Participation. The Continued Amicon Participation of
any Amicon Employee (or newly hired Amicon or Prochrom employee) shall cease on
December 31, 1996, or such earlier date as the Grace-Conn. Group may specify by
30

                                    -22-
<PAGE>    23
days' written notice to NMC, or such later date as may be agreed upon by the
senior officer for Human Resources of NMC, but in no event later than the date
that the Grace-Conn. Group divests all or substantially all of the stock or
assets of Amicon, Inc.

        (b) Notwithstanding Section 12(a), the senior officer for Human
Resources of NMC may terminate any Continued Amicon Participation at any time
upon written notice in accordance with the next sentence to Amicon, Inc., if, in
the reasonable judgement of that officer, the Grace-Conn. Group has failed to
fulfill the requirements specified in Section 13(a) (after being given notice of
such failure and a reasonable opportunity to cure the same), if such Continued
Amicon Participation becomes unduly burdensome to NMC, or if applicable law or
business or other circumstances provide compelling reasons to do so. Such notice
shall be given not later than 30 business days before the effective date of such
termination.

SECTION 13    INFORMATION

        The parties hereto shall, before the Distribution Date or as soon
as practicable thereafter, provide each other with all information as may
reasonably be requested and necessary to administer each NMC Free-Standing Plan,
each Grace-Conn. Benefit Plan and each Amicon Mirror Self-Insured Welfare Plan
effectively in compliance with applicable law. Such information shall be
provided

                                    -23-
<PAGE>    24
in the form requested if, at the time of such request, it exists in such form or
can readily be converted to such form. If a request would require a party
providing information to incur any expenses in order to receive advice from any
actuary, consultant or consulting firm, the information need not be provided
unless the requesting party reimburse the party providing the information for
all such expenses.

SECTION 14    PRESERVATION OF RIGHTS TO AMEND OR
              TERMINATE PLANS AND TO TERMINATE
              OR CHANGE TERMS OF EMPLOYMENT.

        No provision of this Agreement shall be construed as a limitation
on the rights of any member of the NMC Group or the Grace-Conn. Group to amend
or terminate any Benefit Plan or other Plan, program or arrangement relating to
employees (including, but not limited to, the NMC Insured Welfare Plans in which
Amicon Employees participate) provided that, no amendment shall be made to the
benefit entitlement provisions of any Amicon Mirror Self-Insured Welfare Plan
that is inconsistent with such provisions of the corresponding NMC Self-Insured

XXX-002290

Welfare Plan. No provision of this Agreement shall be construed to create a right in any employee or former employee or beneficiary or dependent of such employee or former employee under any Plan which such employee or former employee or beneficiary or dependent would not otherwise have under the terms of the Plan itself. Nothing contained in this Agreement

-24-

<PAGE>    25
shall confer upon any individual the right to remain an employee of any member of the NMC Group or the Grace-Conn. Group or restrain any member of the NMC Group or the Grace-Conn. Group from changing the terms and conditions of employment of any individual at any time following the Distribution Date.

SECTION 15    COMPLETE AGREEMENT; COORDINATION
              WITH TAX SHARING AGREEMENT.

        (a) This Agreement, together with the Distribution Agreement, the Reorganization Agreement, the Grace-NMC Healthcare Business Restructuring Agreement and any additional written agreements and interpretations entered into pursuant to those agreements, shall constitute the entire agreement between the parties hereto with respect to the subject matter hereof and shall supersede all previous negotiations, commitments and writings with respect to such subject matter.

        (b) This Agreement, and not the Tax Sharing Agreement, constitutes the sole agreement of the parties regarding responsibility for any excise taxes, penalties or similar levies that may be imposed by any taxing authority on, or with respect to, any Benefit Plan, except as otherwise specifically provided in the Tax Sharing Agreement with respect to payroll taxes.

-25-

<PAGE>    26
SECTION 16    GOVERNING LAW.

        This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, excluding the conflict of laws provisions thereof that would otherwise require the application of the law of any other jurisdiction, and except as preempted by U.S. federal law.

SECTION 17    NOTICES.

        All notices, requests, claims, demands and other communications hereunder shall be in writing and shall be given as provided in the Distribution Agreement.

SECTION 18    SUCCESSORS AND ASSIGNS; NO THIRD-PARTY
              BENEFICIARIES.

        This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their successors and permitted assigns, but neither this Agreement nor any of the rights, interests and obligations hereunder shall be assigned by any party hereto without the prior written consent of the other party (which consent shall not be unreasonably withheld). This Agreement is solely for the benefit of the parties hereto and their Subsidiaries and is not intended to confer, nor shall it confer, upon any other Persons any rights or remedies hereunder.

SECTION 19    COUNTERPARTS.

-26-

<PAGE>    27
        This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

SECTION 20    INTERPRETATION.

        The Section headings contained in this Agreement are solely for the purpose of reference, are not part of the agreement of the parties hereto and shall not in any way affect the meaning or interpretation of this Agreement.

SECTION 21    AMENDMENT OR TERMINATION.

        This Agreement may be amended, superseded or cancelled, and any of the terms hereof may be waived only by a written instrument specifically referring to this Agreement and specifically stating that it amends, supersedes, or cancels this Agreement or waives any of its terms, executed by all parties to the Distribution Agreement (or, in the case of a waiver, by the party waiving compliance). The failure of any such party at any time or times to require performance of any provision of this Agreement shall in no manner affect the right at a later time to enforce such provision. No waiver by any such party of any breach of any term contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of such breach, or waiver of any breach of any other term.

-27-

<PAGE>    28
SECTION 22    INDEMNITY PROCEDURES.

        The provisions of Article IV of the Distribution Agreement shall

XXX-002291

apply with respect to Indemnifiable Losses under this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

W. R. GRACE & CO.

By:_____

NATIONAL MEDICAL CARE, INC.

By:_____

W. R. GRACE & CO.-CONN.

By:_____

-28-

<PAGE>    29

EXHIBIT A

Assumptions To Be Used To Calculate Value Of
Grace LTIP Awards Pursuant To Section 4

To determine extent that NMC performance measure is satisfied:

94-96    Performance Period
         For 1994 and 1995, actual NMC financial results; for 1996,
         actual financial results up to the Distribution Date
         annualized for the remainder of 1996

95-97    Performance Period
         Actual NMC financial results for 1995 and 1996 up to the
         Distribution Date (and the adjustment of the "Translation
         Factor" to reflect only the NMC Business Plan through the
         Distribution Date)

Date used to determine price of Grace common stock for Grace market performance
measure:

         average of the arithmetic mean between the highest and lowest sales
         prices per share of the Grace Common Stock on the NYSE Composite Tape
         on each of the trading days during the 90-day period ending on the day
         before the Distribution Date

Pro-ration fraction by which Performance Unit Awards shall be multiplied:

94-96    Performance Period          Number of calendar days
                                     completed during the
                                     performance period as
                                     of the Distribution Date,
                                     divided by 1,096

95-97    Performance Period          Number of calendar days
                                     completed during the
                                     performance period as
                                     of the Distribution Date,
                                     divided by 1,096

-29-

<PAGE>    30

Price of Grace Common Stock for purposes of determining value of each
Performance Unit that comprises a Final Performance Unit Award, the average of
the high price and low price on the NYSE Composite Tape of the specified stock
on the specified date:

94-96    Performance Period:

         Grace Common Stock on the date that is one
         trading day before the Distribution Date

95-97    Performance Period:

         Grace Common Stock on the date that is one
         trading day before the Distribution Date

Month of Payment of Final Performance Unit Awards:

<TABLE>

XXX-002292

```
<CAPTION>
        Performance Periods              Month of Payment
        -------------------              ----------------

<S>                                      <C>
        Awards for 1994-1996             March 1997
        Performance Period

        Awards for 1995-1997             March 1998
        Performance Period
</TABLE>


                              -30-
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-10.15
<SEQUENCE>16
<DESCRIPTION>PRIMARY GUARANTEE
<TEXT>

<PAGE>   1
[Execution Copy]

                      GUARANTEE AGREEMENT
```

        AGREEMENT dated as of July 31, 1996 among FRESENIUS MEDICAL
CARE GMBH, a German corporation and the predecessor of Fresenius Medical Care AG
("FMC"), the UNITED STATES OF AMERICA ("Beneficiary"), W. R. GRACE & CO., a New
York corporation ("Grace-NY") and NATIONAL MEDICAL CARE, INC., an indirect
wholly-owned subsidiary of Grace-NY (the "Primary Guarantee").

                          Background

        A. National Medical Care, Inc. and its subsidiaries,
affiliates and divisions, including, but not limited to NMC Homecare Division,
NMC Dialysis Services Division, LifeChem, Inc., NMC Diagnostic Services, Inc.
and NMC Medical Products Division, and any divisions and subsidiaries thereof
(collectively referred to as "NMC") are the subject of an investigation being
conducted by the Office of the Inspector General of the United States Department
of Health and Human Services, the United States Department of Justice Civil
Division, the United States Attorneys for the Districts of Massachusetts and the
Southern District of Florida and others concerning possible violations of
federal laws relating to health care payments and reimbursement (the "OIG
Investigation").

        B. A qui tam action has been filed under seal in the United
States District Court for the Southern District of Florida in the name and on
behalf of Beneficiary against NMC, NMC Homecare Division, Inc., Grace-NY and W.
R. Grace & Co.-- Conn. ("Grace Chemicals") alleging, inter alia, that NMC,
Grace-NY and Grace Chemicals violated the False Claims Act,

```
<PAGE>   2
```

31 U.S.C. Sections 3729 et seq., and seeking a preliminary injunction and other
equitable relief with respect to the Reorganization, as defined below (the
"Florida Action"). The matters alleged in the Florida Action are also a subject
of the OIG Investigation.

        C. Grace-NY and Fresenius AG, a German health care
corporation, have entered into an Agreement and Plan of Reorganization dated as
of February 4, 1996 (as amended, modified or supplemented from time to time on
or before the Closing Date referred to therein, the "Reorganization Agreement")
pursuant to which Grace-NY will become a wholly-owned subsidiary of FMC. The
transactions contemplated by the Reorganization Agreement and all or any part
thereof are hereinafter referred to as the "Reorganization." The Reorganization
shall be deemed to have been consummated as of the Effective Time as defined in
the Reorganization Agreement. After consummation of the Reorganization,
Fresenius USA, Inc. will be contributed to Grace-NY.

        D. Beneficiary has (i) expressed concerns that the
Reorganization may adversely affect the financial ability of NMC to pay any
liability that it may have relating to or arising out of the OIG Investigation
and the Florida Action (the "Government Claims") and (ii) advised Grace-NY and
FMC that Beneficiary is considering its remedies with respect to the
Reorganization.

        E. Beneficiary has agreed to refrain from taking certain
action as set forth in Section 6 below if FMC and Grace-NY (jointly, the
"Guarantors") provide a guarantee and NMC provides a letter of credit with
respect to payment of the Government Claims, and the Guarantors and NMC are
willing to provide such a guarantee and letter of credit, all subject to and in
accordance with the terms and conditions set forth below.

```
<PAGE>   3
[Execution Copy]
```

Contemporaneously herewith, Grace Chemicals and Beneficiary are entering into a
separate guarantee agreement (the "Grace Chemicals Guarantee"), the execution
and delivery of which are essential elements and conditions of Beneficiary's
agreement to the terms set forth below.

        THEREFORE, it is agreed:

XXX-002293

Terms and Conditions

1. Guarantee. (a) Effective upon consummation of the Reorganization, the Guarantors jointly and severally unconditionally guarantee to Beneficiary the prompt payment when due of all obligations (the "Obligations") of NMC to Beneficiary in respect of the Government Claims. For purposes of this Agreement, an alleged liability or other obligation shall be deemed an Obligation only if (i) it is determined to be an actual liability or obligation of NMC to Beneficiary in respect of a Government Claim pursuant to an Actionable Order (as defined below) or (ii) it is agreed to be such in a writing (a "Settlement Agreement") executed by FMC, Grace-NY or NMC and Beneficiary. An "Actionable Order" is an order entered by a court of competent jurisdiction (x) that has become final and nonappealable or (y) with respect to which enforcement during the pendency of an appeal has not been stayed by the posting of a supersedeas bond (or similar bond or credit support) or otherwise by order of a court of competent jurisdiction. For purposes of this Agreement, an Obligation is due on the date (the "Obligation Due Date") when the order giving rise to such Obligation becomes an Actionable Order or when the Settlement Agreement
<PAGE>    4

giving rise to such Obligation states that such Obligation is due.

(b) As credit support for the foregoing guarantee, NMC shall deliver to Beneficiary on or before consummation of the Reorganization an irrevocable standby letter of credit (including any renewals thereof or replacements therefor, the "Letter of Credit") issued by The Chase Manhattan Bank, NationsBank, N.A. or another bank acceptable to Beneficiary and in a form acceptable to Beneficiary in the amount of $150 million, which Letter of Credit shall provide that it may be drawn immediately upon the presentation by Beneficiary to the issuer at an office located in the United States of a sight draft payable to Beneficiary or its designee in the amount of the draw and a certificate signed by Beneficiary stating that (i) Obligations in the amount of the draw have not been paid as of the Obligation Due Date (an "Obligation Payment Default") or (ii) the Letter of Credit is scheduled to expire within 30 days and as of the 30th day prior to expiration Beneficiary has not received a new Letter of Credit on the same terms. FMC shall provide Beneficiary with at least 30 days prior written notice of the expiration of the Letter of Credit unless the Letter of Credit has been renewed or replaced before the 30th day preceding its expiration. Beneficiary shall return the Letter of Credit for cancellation when all Obligations shall have been paid in full and no other Government Claims remain outstanding or it is determined, by Beneficiary or pursuant to a final and nonappealable order of a court of competent jurisdiction, that NMC does not have any liability or obligations to Beneficiary in respect of the Government Claims (the "Cancellation Date"). Delivery to Beneficiary of the Letter of Credit is an express condition to Beneficiary's agreement to the terms of this
<PAGE>    5
[Execution Copy]

Agreement.

(c) If Beneficiary draws on the Letter of Credit pursuant to clause (ii) of the first sentence of Section 1(b) above at a time when no Obligation Payment Default exists, the proceeds of such draw shall be held in an interest-bearing escrow arrangement (the "Escrow Arrangement") that will provide for (i) prompt payment of the escrowed funds to Beneficiary to the extent of any Obligation Payment Default, (ii) if the amount of the Obligations has been established by an Actionable Order or Settlement Agreement, prompt payment of escrowed funds to NMC to the extent the amount of the escrowed funds exceeds the amount of the unpaid Obligations and no other Government Claims remain outstanding and (iii) prompt payment of all then remaining escrowed funds to NMC upon the Cancellation Date. Such Escrow Arrangement will be established pursuant to an escrow agreement to be negotiated in good faith by NMC and Beneficiary and the expense of which will be borne by NMC, provided, however, that in the event NMC and Beneficiary have not executed and delivered such an escrow agreement by the time the proceeds of such draw have been received by Beneficiary or its designee, then Beneficiary shall deposit (or arrange to have deposited) such proceeds with a bank or trust company in escrow pursuant to an escrow arrangement (at the expense of NMC) that Beneficiary determines to be consistent with the immediately preceding sentence.

2. Nature of Guarantee. The guarantee of the Guarantors set forth in Section 1 hereof constitutes a guarantee of payment upon the Obligation Due Date and not collection. The
<PAGE>    6

obligation of the Guarantors hereunder shall not be affected by any event, occurrence or circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor or surety (other than payment of the Obligations). In the event that any payment by NMC of any Obligations is rescinded or must otherwise be returned for any reason whatsoever, the Guarantors shall remain liable hereunder with respect to such Obligations as if such payment had not been made. The Guarantors agree that Beneficiary may resort to either or both of them for payment of any of the Obligations, whether or not Beneficiary shall have resorted to any collateral security, or shall have proceeded against NMC or any other person or entity primarily or secondarily obligated in respect of any of the Obligations.

3. Subrogation. The Guarantors shall not exercise any rights which they may acquire by way of subrogation until all of the Obligations to Beneficiary shall have been paid in full. Subject to the foregoing, upon payment of all of the Obligations, each Guarantor shall to the extent of its payment of the Obligations be subrogated to the rights of Beneficiary against NMC, and

XXX-002294

Beneficiary agrees to take at each Guarantor's expense such steps as such
Guarantor may reasonably request to implement such subrogation.

        4. No Waiver; Cumulative Rights. No failure on the part of
Beneficiary to exercise, and no delay in exercising, any right, remedy or power
hereunder shall operate as a waiver thereof, nor shall any single or partial
exercise by Beneficiary of any right, remedy or power hereunder preclude any
other or future exercise of any right, remedy or power. Each and every right,
remedy and power hereby granted to Beneficiary or allowed it by law or other
agreement shall be cumulative and not
<PAGE>   7
[Execution Copy]

exclusive of any other, and may be exercised by Beneficiary from time to time.

        5. Waiver of Notice. Each Guarantor waives notice of the
acceptance of this guarantee, presentment, demand, notice of dishonor, protest,
notice of sale of any collateral security and all other notices whatsoever.

        6. Agreements of Beneficiary. Except as set forth in Section 7
below, Beneficiary, acting solely in its capacity as holder of the Government
Claims, agrees that (a) it shall not take any action whatsoever to impede,
prohibit, enjoin, delay or otherwise interfere with consummation of the
Reorganization on grounds that the Reorganization constitutes a fraudulent
transfer, fraudulent conveyance or other similarly avoidable transfer as to
Beneficiary, (b) upon request by FNC, NMC or Grace-NY, it shall represent to any
court presented with an attempt by the Relator in the Florida Action or any
other Relator in any other qui tam action relating in substantial part to
matters that are the subject of the Florida Action or the OIG Investigation to
impede, prohibit, enjoin, delay or otherwise interfere with consummation of the
Reorganization that the terms of this Agreement and the Grace Chemicals
Guarantee together satisfy its concerns with respect to the Reorganization as
expressed in paragraph D above, and (c) effective upon consummation of the
Reorganization, it releases and discharges Grace-NY, NMC, FMC, the financial
institutions underwriting, arranging or otherwise participating in any manner in
the Reorganization or the financings contemplated thereby or consummated in
connection therewith, all of the corporate parents,
<PAGE>   8

subsidiaries and affiliates of the foregoing persons and entities described in
this clause (c), and all of the respective shareholders, officers, directors,
investment bankers, agents, accountants and attorneys of the foregoing persons
and entities described in this clause (c) (collectively, the "Releasees") from
any and all claims, liabilities and causes of action to the effect that the
Reorganization constitutes a fraudulent transfer, fraudulent conveyance or other
similarly avoidable transfer as to Beneficiary, solely in its capacity as holder
of the Government Claims. Notwithstanding the foregoing, in the event this
Agreement, the Grace Chemicals Guarantee or the Letter of Credit (or the Escrow
Arrangement established for the proceeds thereof pursuant to Section 1(c) above)
shall become invalid or unenforceable (except to the extent that enforcement is
stayed pursuant to a bankruptcy proceeding or similar proceeding for the relief
of debtors) then the releases contained in clause 6(c) shall be deemed null and
void.

        7. Matters Not Released. (a) Beneficiary is not releasing
under this Agreement, and the releases contained in Section 6 hereof do not
include within their coverage, claims, liabilities and other obligations to (i)
Beneficiary arising under the terms of this Agreement, (ii) the Internal Revenue
Service arising under the Internal Revenue Code, (iii) the Securities and
Exchange Commission arising under any applicable securities laws, and (iv) the
Antitrust Division of the Department of Justice arising under any applicable
antitrust or trade regulation laws.

        (b) Nothing in this Agreement shall be construed to constitute
a release by any agency or instrumentality of the United States (including the
Department of Justice) that does not derive a benefit under this Agreement, the
Letter of Credit
<PAGE>   9
[Execution Copy]

(or the Escrow Arrangement established for the proceeds thereof pursuant to
Section 1(c) above) and the Grace Chemicals Guarantee.

        (c) Nothing in this Agreement shall be construed to constitute
a release from any claim, liability or obligation (criminal, civil or
administrative) arising out of or relating in any way to the OIG Investigation
and the Florida Action; although not exhaustive, specifically excluded from the
scope of the release contained in Section 6 of this Agreement are claims,
liabilities or obligations under the civil False Claims Act, 31 U.S.C. Sections
3729 et seq. (as amended), the Medicare Anti-kickback Act, 42 U.S.C. Section
1320a-7(b), the Civil Monetary Penalties Law, 42 U.S.C. Sections 1320a-7a, the
Program Fraud Civil Remedies Act, 31 U.S.C. Sections 3801-3812, Title XVIII of
the Social Security Act, 42 U.S.C. Section 1395 et seq., Sections 287, 371,
1001, 1341 and 1343 of Title 18 of the United States Code, common law theories
for breach of contract, fraud (other than the fraudulent transfer theories
described in Section 6(c)), payment by mistake of fact or unjust enrichment, or
the provisions for suspension of Medicare funds in 42 C.F.R. Section 371(a) or
(b) or exclusion from the Medicare and State health care programs in 42 U.S.C.
Section 1320a-7(b). This Agreement shall not be construed to release any entity
or individual not referred to in Section 6 above.

        8. Good Faith Negotiations. The parties hereto agree that they
will negotiate in good faith to attempt to arrive at a consensual resolution of
the Government Claims and, in the context of such negotiations, will negotiate

XXX-002295

in good faith as to the need for any structuring of the payment of any
<PAGE>    10

Obligations arising under such resolution, taking into account the ability of
FMC to pay the Obligations. Nothing herein shall be construed to obligate any
person to enter into any settlement of the Government Claims or to agree to a
structured settlement. The provisions of this Section 8 are precatory and a
statement of intent only, and (a) compliance by Beneficiary with such provisions
is not a condition or defense to the obligations of any Guarantor under this
Agreement and (b) breach of such provisions by Beneficiary cannot and will not
be raised by any Guarantor to excuse performance of its obligations hereunder.

            9. Termination of Agreement. If the Reorganization is not
consummated on or before October 1, 1996, this Agreement shall terminate and be
of no further force and effect unless all of the parties hereto agree otherwise
in writing. If the Reorganization Agreement is amended, modified or supplemented
(other than an amendment, modification or supplement that solely extends to a
date not later than October 1, 1996 the date by which consummation of the
Reorganization is required to occur) after the date of this Agreement, FMC shall
provide Beneficiary with written notice (the "Amendment Notice") describing the
nature of such amendment, modification or supplement together with a copy of all
documents constituting such amendment, modification or supplement. If
Beneficiary determines that such amendment, modification or supplement is
adverse to its interests, Beneficiary shall have the right to terminate this
Agreement and the Grace Chemicals Guarantee (but not solely this Agreement) by
delivering written notice of such termination to the Guarantors within 10
business days of Beneficiary's actual receipt of such Amendment Notice.

            10. Miscellaneous. No party to this Agreement may assign its
rights, interest or obligations hereunder to any
<PAGE>    11
[Execution Copy]

other person or entity without the prior written consent of the other parties.
This Agreement shall not be amended except in a writing signed by all of the
parties hereto. The provisions of this Agreement shall be binding upon the
parties hereto and their successors (including, in the case of FMC, Fresenius
Medical Care AG). This Agreement may be executed in counterparts, each of which
shall constitute an original and all of which shall constitute one and the same
agreement. Each Releasee which is not a party to this Agreement is a third party
beneficiary hereof solely for purposes of asserting this Agreement as a defense
in any action brought by Beneficiary in violation of Section 6(c) hereof. The
parties acknowledge and agree that Grace Chemicals is a third party beneficiary
hereof solely for purposes of enforcing, by an action in its own name against
each Guarantor, the obligation of such Guarantor under this Agreement to pay the
Obligations to Beneficiary, provided, however that no such action by Grace
Chemicals shall in any way affect, limit or delay Beneficiary's rights under the
Grace Chemicals Guarantee or Grace Chemicals' obligations thereunder. Each
signatory hereto represents and warrants that he or she is authorized to execute
and deliver this Agreement on behalf of the party for whom he or she is
purporting to act. Each party hereto represents and warrants that this Agreement
constitutes its valid and binding agreement, enforceable against such party in
accordance with its terms. This Agreement embodies the entire agreement between
Guarantors and Beneficiary. There are no promises, terms, conditions, or
obligations other than those contained in this Agreement. This Agreement
supersedes all previous communications, representations, or agreements either

<PAGE>    12

verbal or written, between Guarantors and Beneficiary. FMC, Grace-NY and NMC
represent to Beneficiary that the Reorganization Agreement provided to
Beneficiary as part of and as described in the draft proxy materials dated July
3, 1996 has not been modified, amended or supplemented except to extend the date
by which any party to the Reorganization Agreement may terminate such Agreement
from September 1, 1996 to October 1, 1996.

            11. Notices. All notices or other communications hereunder
shall be in writing, delivered in person or sent by certified or registered mail
or the equivalent (return receipt requested), at the addresses set forth below:

if to FMC:

Fresenius Medical Care AG
Borkenberg 14
61440 Oberusel, Germany
Attention:  Corporate Secretary

if to Grace-NY or NMC:

W. R. Grace & Co.-NY
c/o National Medical Care, Inc.
1601 Trapelo Road
Reservoir Place
Waltham, Massachusetts  02154
Attention:  General Counsel

with a copy to:

Ulrich Wagner, Esq.
O'Melveny & Myers
Citicorp Center
153 East 53rd Street
New York, New York  10022

XXX-002296

if to Beneficiary:

U.S. Attorney for the
  District of Massachusetts
1003 J.W. McCormack Post Office
  and Courthouse
Boston, MA  02109
Attention:  Peter Mullin, Esq.

Michael F. Hertz, Esq.
Director Commercial Litigation Branch
U.S. Department of Justice
Tenth Street and Constitution Avenue, N.W.
Room 3647
<PAGE>  13
[Execution Copy]

Washington, D.C.  20530
(or, if by mail:
P.O. Box 261
Ben Franklin Station
Washington, D.C.  20044)
Attention:  Lucy Eldridge, Esq.
              (D.J. No. 46-18-1901)

          12. Governing Law; Consent to Jurisdiction. This Agreement
shall be governed by and construed in accordance with United States of America
federal law. FMC and Grace-NY consent to the nonexclusive jurisdiction of the
United States District Courts for the District of Massachusetts and the Southern
District of Florida in any action to enforce any term of this Agreement. FMC and
Grace-NY hereby appoint the General Counsel of NMC as their agent for service of
process. In the event that NMC shall at any time fail to have a General Counsel,
FMC and Grace-NY shall promptly appoint Corporation Trust Company (or a similar
firm) as their agent for service of process and provide Beneficiary with written
notice of such appointment (or, if no agent for service of process is appointed
when required, they shall be deemed to have appointed the Secretary of the
Commonwealth of the Commonwealth of Massachusetts as such agent, and Beneficiary
shall promptly send to FMC in accordance with Section 10 above a copy of any
documents served on such Secretary as such agent).
<PAGE>  14

          IN WITNESS WHEREOF, the parties hereto have executed this
Agreement as of the date first above written.

W. R. GRACE & CO.                    UNITED STATES OF AMERICA

By:_____                 By:_____

Title:_____              Title:  Trial Attorney,
                                             Commercial Litigation
                                             Branch, Civil Division
                                             U.S. Department of Justice

                                     By:_____

                                     Title:  A.U.S.A., District of
                                             Massachusetts


FRESENIUS MEDICAL CARE GMBH,         NATIONAL MEDICAL CARE, INC.
predecessor to Fresenius
Medical Care AG

By:_____                 By:_____
Title:_____              Title:_____

</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-10.16
<SEQUENCE>17
<DESCRIPTION>SECONDARY GUARANTEE
<TEXT>

<PAGE>  1
[Execution Copy]


                    GUARANTEE AGREEMENT

          AGREEMENT dated as of July 31, 1996 between W. R. GRACE &
CO.-CONN., a Connecticut corporation ("Guarantor"), and the UNITED STATES OF
AMERICA ("Beneficiary") (the "Grace Chemicals Guarantee").


                         Background

          A. National Medical Care, Inc., a wholly-owned subsidiary of
Guarantor, and its subsidiaries, affiliates and divisions, including, but not
limited to NMC Homecare Division, NMC Dialysis Services Division, LifeChem,
Inc., NMC Diagnostic Services, Inc. and NMC Medical Products Division, and any
divisions and subsidiaries thereof (collectively referred to as "NMC") are the
subject of an investigation being conducted by the Office of the Inspector
General of the United States Department of Health and Human Services, the United
States Department of Justice Civil Division, the United States Attorneys for the
Districts of Massachusetts and the Southern District of Florida and others

XXX-002297

concerning possible violations of federal laws relating to health care payments and reimbursement (the "OIG Investigation").

B. A qui tam action has been filed under seal in the United States District Court for the Southern District of Florida in the name and on behalf of Beneficiary against NMC, NMC Homecare Division, Inc., W. R. Grace & Co. ("Grace-NY") and Guarantor alleging, inter alia, that NMC, Grace-NY and Guarantor violated the False Claims Act, 31 U.S.C. Sections 3729 et seq., and seeking a preliminary injunction and other equitable relief with
<PAGE>   2

respect to the Reorganization, as defined below (the "Florida Action"). The matters alleged in the Florida Action are also a subject of the OIG Investigation.

C. Grace-NY and Fresenius AG, a German health care corporation, have entered into an Agreement and Plan of Reorganization dated as of February 4, 1996 (as amended, modified or supplemented from time to time on or before the Closing Date referred to therein, the "Reorganization Agreement"), pursuant to which Grace-NY will become a wholly-owned subsidiary of Fresenius Medical Care AG ("FMC") and Guarantor will obtain a substantial cash distribution from NMC. The transactions contemplated by the Reorganization Agreement and all or any part thereof are hereinafter referred to as the "Reorganization." The Reorganization shall be deemed to have been consummated as of the Effective Time as defined in the Reorganization Agreement.

D. Beneficiary has (i) expressed concerns that the Reorganization may adversely affect the financial ability of NMC to pay any liability that it may have relating to or arising out of the OIG Investigation and the Florida Action (the "Government Claims") and (ii) advised Guarantor that Beneficiary is considering its remedies with respect to the Reorganization.

E. Beneficiary has agreed to refrain from taking certain action as set forth in Section 6 below if Guarantor, FMC and Grace-NY provide guarantees and NMC provides a letter of credit with respect to payment of the Government Claims, and Guarantor is willing to provide such a guarantee, all subject to and in accordance with the terms and conditions set forth below. Contemporaneously herewith, FMC, Grace-NY, NMC and Beneficiary are entering into a separate guarantee agreement (the "Primary
<PAGE>   3
[Execution Copy]

Guarantee"), the execution and delivery of which are essential elements and conditions of Beneficiary's agreement to the terms set forth below.

THEREFORE, it is agreed:

Terms and Conditions

1. Guarantee. Effective upon consummation of the Reorganization, as provided herein Guarantor unconditionally guarantees to Beneficiary the payment of all obligations (the "Obligations") of FMC to Beneficiary under the Primary Guarantee in respect of the Government Claims for acts, omissions and transactions that took place at any time up to the consummation of the Reorganization. For purposes of this Agreement, an alleged liability or other obligation shall be deemed an Obligation only if (i) it is determined to be an actual liability or obligation of NMC to Beneficiary in respect of a Government Claim pursuant to an Actionable Order (as defined below) or (ii) it is agreed to be such in a writing (a "Settlement Agreement") executed by FMC, Grace-NY or NMC and Beneficiary. An "Actionable Order" is an order entered by a court of competent jurisdiction (x) that has become final and nonappealable or (y) with respect to which enforcement during the pendency of an appeal has not been stayed by the posting of a supersedeas bond (or similar bond or credit support) or otherwise by order of a court of competent jurisdiction. For purposes of this Agreement, an Obligation is due on the date (the "Obligation Due Date") when the order giving rise to such Obligation becomes an Actionable Order or when the Settlement Agreement giving rise to such
<PAGE>   4

Obligation states that such Obligation is due.

2. Nature of Guarantee. Guarantor shall pay the Obligations only if and to the extent that (a) such Obligations have not been paid as of the Obligation Due Date and (b) Beneficiary has made demand for payment of such Obligations from FMC, has provided Guarantor with a copy of such demand and such Obligations nonetheless remain uncollected for at least 120 days after the date such copy of the demand is provided to Guarantor (which copy may be provided by first class mail and which shall be deemed provided when deposited in such mail addressed to Guarantor as specified in Section 10 below). Guarantor shall have the right to make payment under this Agreement in accordance with any payment schedule agreed to by FMC and Beneficiary without giving effect to any acceleration that may have occurred due to default so long as any such default is cured. The obligation of Guarantor hereunder shall not be affected by any event, occurrence or circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor or surety (other than payment of the Obligations). Guarantor waives any defense relating to any (i) invalidity or unenforceability of the obligations of FMC under the Primary Guarantee or (ii) breach by Beneficiary of the provisions of Section 8 of the Primary Guarantee. In the event that any payment by NMC, FMC or Grace-NY of any Obligations is rescinded or must otherwise be returned for any reason whatsoever, Guarantor shall remain liable hereunder with respect to such Obligations as if such payment had not been made.

3. Subrogation. The Guarantor shall not exercise any rights

XXX-002298

which it may acquire by way of subrogation until all of the Obligations to
Beneficiary shall have been paid in full. Subject to the foregoing, upon payment
of all of the Obligations, Guarantor shall to the extent of its payment of the
Obliga-
<PAGE>   5
[Execution Copy]

tions be subrogated to the rights of Beneficiary against NMC, FMC and Grace-NY,
and Beneficiary agrees to take at Guarantor's expense such steps as Guarantor
may reasonably request to implement such subrogation.

    4. No Waiver; Cumulative Rights. No failure on the part of
Beneficiary to exercise, and no delay in exercising, any right, remedy or power
hereunder shall operate as a waiver thereof, nor shall any single or partial
exercise by Beneficiary of any right, remedy or power hereunder preclude any
other or future exercise of any right, remedy or power. Each and every right,
remedy and power hereby granted to Beneficiary or allowed it by law or other
agreement shall be cumulative and not exclusive of any other, and may be
exercised by Beneficiary from time to time.

    5. Waiver of Notice. Guarantor waives notice of the acceptance
of this guarantee, presentment, demand, notice of dishonor, protest, notice of
sale of any collateral security and all other notices whatsoever.

    6. Agreements of Beneficiary. Except as set forth in Section 7
below, Beneficiary, acting solely in its capacity as holder of the Government
Claims, agrees that (a) it shall not take any action whatsoever to impede,
prohibit, enjoin, delay or otherwise interfere with consummation of the
Reorganization on grounds that the Reorganization constitutes a fraudulent
transfer, fraudulent conveyance or other similarly avoidable transfer as to
Beneficiary, (b) upon request by FMC, Grace-NY
<PAGE>   6

or NMC, it shall represent to any court presented with an attempt by the Relator
in the Florida Action or any other Relator in any other qui tam action relating
in substantial part to matters that are the subject of the Florida Action or the
OIG Investigation to impede, prohibit, enjoin, delay or otherwise interfere with
consummation of the Reorganization that the terms of this Agreement and the
Primary Guarantee together satisfy its concerns with respect to the
Reorganization as expressed in paragraph D above, and (c) effective upon
consummation of the Reorganization, it releases and discharges Guarantor,
Grace-NY, NMC, FMC, the financial institutions underwriting, arranging or
otherwise participating in any manner in the Reorganization or the financings
contemplated thereby or consummated in connection therewith, all of the
corporate parents, subsidiaries and affiliates of the foregoing persons and
entities described in this clause (c), and all of the respective shareholders,
officers, directors, investment bankers, agents, accountants and attorneys of
the foregoing persons and entities described in this clause (c) (collectively,
the "Releasees") from any and all claims, liabilities and causes of action to
the effect that the Reorganization constitutes a fraudulent transfer, fraudulent
conveyance or other similarly avoidable transfer as to Beneficiary, solely in
its capacity as holder of the Government Claims. Notwithstanding the foregoing,
in the event this Agreement, the Primary Guarantee or the Letter of Credit (or
the Escrow Arrangement established pursuant to the Primary Guarantee) shall
become invalid or unenforceable (except to the extent that enforcement is stayed
pursuant to a bankruptcy proceeding or other similar proceeding for the relief
of debtors) then the releases contained in clause 6(c) shall be deemed null and
void.
<PAGE>   7
[Execution Copy]

    7. Matters Not Released. (a) Beneficiary is not releasing
under this Agreement, and the releases contained in Section 6 hereof do not
include within their coverage, claims, liabilities and other obligations to (i)
Beneficiary arising under the terms of this Agreement, (ii) the Internal Revenue
Service arising under the Internal Revenue Code, (iii) the Securities and
Exchange Commission arising under any applicable securities laws, and (iv) the
Antitrust Division of the Department of Justice arising under any applicable
antitrust or trade regulation laws.

    (b) Nothing in this Agreement shall be construed to constitute
a release by any agency or instrumentality of the United States (including the
Department of Justice) that does not derive a benefit under this Agreement, the
Letter of Credit or the Escrow Arrangement (as defined in the Primary Guarantee)
and the Primary Guarantee.

    (c) Nothing in this Agreement shall be construed to constitute
a release from any claim, liability or obligation (criminal, civil or
administrative) arising out of or relating in any way to the OIG Investigation
and the Florida Action; although not exhaustive, specifically excluded from the
scope of the release contained in Section 6 of this Agreement are claims,
liabilities or obligations under the civil False Claims Act, 31 U.S.C. Sections
3729 et seq. (as amended), the Medicare-Medicaid Anti-kickback Act, 42 U.S.C. Section
1320a-7(b), the Civil Monetary Penalties Law, 42 U.S.C. Sections 1320a-7a, the
Program Fraud Civil Remedies Act, 31 U.S.C. Sections 3801-3812, Title XVIII of
the Social Security Act, 42 U.S.C. Section 1395 et seq., Sections 287, 371,
1001, 1341 and 1343 of
<PAGE>   8

Title 18 of the United States Code, common law theories for breach of contract,
fraud (other than the fraudulent transfer theories described in Section 6(c)),
payment by mistake of fact or unjust enrichment, or the provisions for
suspension of Medicare funds in 42 C.F.R. Section 371(a) or (b) or exclusion
from the Medicare and State health care programs in 42 U.S.C. Section

XXX-002299

1320a-7(b). This Agreement shall not be construed to release any entity or
individual not referred to in Section 6 above.

8. Termination of Agreement. If the Reorganization is not
consummated on or before October 1, 1996, this Agreement shall terminate and be
of no further force and effect unless the parties hereto agree otherwise in
writing. If the Reorganization Agreement is amended, modified or supplemented
(other than an amendment, modification or supplement that solely extends to a
date not later than October 1, 1996 the date by which consummation of the
Reorganization is required to occur) after the date of this Agreement, Guarantor
shall provide Beneficiary with written notice (the "Amendment Notice")
describing the nature of such amendment, modification or supplement together
with a copy of all documents constituting such amendment, modification or
supplement. If Beneficiary determines that such amendment, modification or
supplement is adverse to its interests, Beneficiary shall have the right to
terminate this Agreement and the Primary Guarantee (but not solely the Primary
Guarantee) by delivering written notice of such termination to Guarantor within
10 business days of Beneficiary's actual receipt of such Amendment Notice.

9. Miscellaneous. No party to this Agreement may assign its
rights, interest or obligations hereunder to any other person or entity without
the prior written consent of the other parties. This Agreement shall not be
amended except in a
<PAGE>   9
[Execution Copy]

writing signed by all of the parties hereto. The provisions of this Agreement
shall be binding upon the parties hereto and their successors. This Agreement
may be executed in counterparts, each of which shall constitute an original and
all of which shall constitute one and the same agreement. Each Releasee which is
not a party to this Agreement is a third party beneficiary hereof solely for
purposes of asserting this Agreement as a defense in any action brought by
Beneficiary in violation of Section 6(c) hereof. Each signatory hereto
represents and warrants that he or she is authorized to execute and deliver this
Agreement on behalf of the party for whom he or she is purporting to act. Each
party hereto represents and warrants that this Agreement constitutes its valid
and binding agreement, enforceable against such party in accordance with its
terms. This Agreement embodies the entire agreement between Guarantor and
Beneficiary. There are no promises, terms, conditions, or obligations other than
those contained in this Agreement. This Agreement supersedes all previous
communications, representations, or agreements, either verbal or written,
between Guarantor and Beneficiary. Guarantor represents to Beneficiary that the
Reorganization Agreement provided to Beneficiary as part of and as described in
the draft proxy materials dated July 3, 1996 has not been modified, amended or
supplemented except to extend the date by which any party to the Reorganization
Agreement may terminate such Agreement from September 1, 1996 to October 1,
1996.

10. Notices. All notices or other communications hereunder
shall be in writing, delivered in person or sent by
<PAGE>   10
certified or registered mail or the equivalent (return receipt requested), at
the addresses set forth below:

 if to Guarantor:

W. R. Grace & Co.-Conn.
One Town Center Road
Boca Raton, Florida  33486

Attention:  General Counsel

if to Beneficiary:

U.S. Attorney for the District of Massachusetts
1003 J.W. McCormack Post Office
  and Courthouse
Boston, MA  02109

Attention:  Peter Mullin, Esq.

Michael F. Hertz, Esq.
Director Commercial Litigation Branch
U.S. Department of Justice
Tenth Street and Constitution Avenue, N.W.
Room 3647
Washington, D.C.  20530
(or, if by mail:
P.O. Box 261
Ben Franklin Station
Washington, D.C.  20044)

Attention:  Lucy Eldridge, Esq.
            (D.J. No. 46-18-1901)

11. Governing Law. This Agreement shall be governed by and
construed in accordance with the United States of America federal law. Guarantor
consents to the non-exclusive jurisdiction of the United States District Courts
for the District of Massachusetts and the Southern District of Florida in any
action to enforce any term of this Agreement.

<PAGE>   11

XXX-002300

```
            IN WITNESS WHEREOF, the parties hereto have executed this
Agreement as of the date first above written.
```

W. R. GRACE & CO.-CONN.                UNITED STATES OF AMERICA

By:_____            By:_____
Title:_____            Title:  Trial Attorney,
                                               Commercial Litigation
                                               Branch, Civil Division
                                               U.S. Department of
                                               Justice

                                       By:_____
                                       Title:  A.U.S.A., District of
                                               Massachusetts

```
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-10.17
<SEQUENCE>18
<DESCRIPTION>LETTER AGREEMENT DATED JULY 31, 1996
<TEXT>

<PAGE>   1
```

                          W.R. GRACE & CO.
                    W. R. GRACE & CO.-CONN.
                        One Town Center Road
                        Boca Raton, Florida


                                              July 31, 1996


FRESENIUS MEDICAL CARE AG
61440 Oberursel
61343 Bad Homburg
Germany

Ladies and Gentlemen:

        Capitalized terms used in this letter without definition shall have the
meanings ascribed to such terms in the Agreement and Plan of Reorganization
dated as of February 4, 1996 by and between W. R. Grace & Co. and Fresenius AG
(the "Reorganization Agreement") and related agreements.

        In connection with the transactions contemplated by the Reorganization
Agreement and as a result of negotiations between the parties and the United
States of America, Fresenius Medical Care AG ("FMC") and Grace are entering
into a Guarantee Agreement with the United States of America attached hereto as
Annex 1 (the "FMC Guarantee") and Grace-Conn. is entering into a Guarantee
Agreement with the United States of America attached hereto as Annex 2 (the
"Grace-Conn. Guarantee").

        In connection with the respective parties entering into the FMC
Guarantee and the Grace-Conn. Guarantee, the parties hereto have agreed as
follows:

        1.      For as long as the Grace-Conn. Guarantee remains in effect, FMC,
Grace and NMC shall provide Grace-Conn. with an opportunity to remain advised
on a current basis through counsel selected by Grace-Conn. of the OIG
Investigation (as defined in the FMC Guarantee) and the Florida Action (as
defined in the FMC Guarantee), without limitation to any rights under Section
4.03 of the Distribution Agreement.

        2.      FMC (a) agrees to pay to Grace-Conn., promptly upon demand, all
amounts paid by Grace-Conn. under the Grace-Conn. Guarantee, together with
interest thereon (at the rate applicable to Fresenius Medical Care's senior
debt agreements) for the period from the date of payment of such amounts by
Grace-Conn. through the date of payment hereunder by FMC to Grace-Conn., and
(b) consents to the rights of subrogation in favor of Grace-Conn. created
pursuant to the Grace-Conn. Guarantee.

        3.      FMC agrees that Grace-Conn. is a third party beneficiary of the
FMC guarantee and that Grace-Conn. shall have the right to enforce, in its own
name against FMC and Grace, the obligation of FMC and Grace to pay the
obligations to the United States under the FMC Guarantee.

```
<PAGE>   2
```
July 31, 1996
Page 2

        4.      For the purposes of Section 4.05 of the Distribution Agreement,
the NMC Group shall include FMC and all its Affiliates.

        5.      FMC consents to the jurisdiction of the United States District
Court for the Southern District of New York to enforce the terms of this
Agreement.

        Please indicate your agreement with the foregoing by signing where

XXX-002301

indicated below.

W. R. GRACE & CO.
W. R. GRACE & CO. - CONN.

-----------------------------------
By:
Title:

AGREED AND ACCEPTED:

FRESENIUS MEDICAL CARE AG

- -----------------------------------
By:
Title:
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-11.1
<SEQUENCE>19
<DESCRIPTION>WEIGHTED AVERAGE NUMBER OF SHARES AND EARNINGS
<TEXT>

<PAGE>   1

EXHIBIT 11.1

W. R. GRACE & CO.

WEIGHTED AVERAGE NUMBER OF SHARES AND EARNINGS USED IN PER SHARE COMPUTATIONS

The weighted average number of shares of common stock outstanding were as
follows:

<TABLE>
<CAPTION>

|  | (IN THOUSANDS) | | |
|---|---|---|---|
|  | 1995 | 1994 | 1993 |
| <S> | <C> | <C> | <C> |
| Weighted average number of shares of common stock outstanding............................................... | 95,822 | 93,936 | 91,461 |

</TABLE>

Income used in the computation of earnings per share was as follows:

<TABLE>
<CAPTION>

|  | (IN THOUSANDS, EXCEPT PER SHARE) | | |
|---|---|---|---|
|  | 1995 | 1994 | 1993 |
| <S> | <C> | <C> | <C> |
| Net income................................................ | $96,897 | $102,217 | $103,772 |
| Dividends paid on preferred stocks........................... | (522) | (522) | (527) |
| Income used in per share computation of earnings and in per share computation of earnings assuming full dilution....... | $96,375 | $101,695 | $103,245 |
| Earnings per share........................................ | $ 1.01 | $ 1.08 | $ 1.12 |

</TABLE>

                                1
<PAGE>   2

W.R. GRACE & CO.

WEIGHTED AVERAGE NUMBER OF SHARES AND
EARNINGS USED IN PER SHARE COMPUTATIONS

The weighted average number of shares of common stock outstanding as
follows:

<TABLE>
<CAPTION>

|  | (IN THOUSANDS) THREE MONTHS ENDED MARCH 31, | |
|---|---|---|
|  | 1996 | 1995 |

```
<S>                                                            <C>        <C>
Weighted average number of shares of common stock outstanding....  97,888     94,137
                                                              ======     ======

</TABLE>
```

Income used in the computation of earnings per share was as follows:

```
<TABLE>
<CAPTION>
                                                          (IN THOUSANDS, EXCEPT PER
                                                                    SHARE)
                                                           THREE MONTHS ENDED
                                                                 MARCH 31,
                                                          -------------------------
                                                           1996           1995
                                                          -------        -------
<S>                                                       <C>            <C>
Net income...................................................  $26,445        $26,016
Dividends paid on preferred stocks...........................    (131)          (131)
                                                              -------        -------
Income used in per share computation of earnings and in per
  share computation of earnings assuming full dilution........  $26,314        $25,885
                                                              =======        =======
Earnings per share...........................................  $  0.27        $  0.27
</TABLE>
```

                                        2

```
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-21.1
<SEQUENCE>20
<DESCRIPTION>SUBSIDIARY LIST
<TEXT>

<PAGE>   1
```
                                                        [EXHIBIT 21.1]

                        NATIONAL MEDICAL CARE
                         Domestic Subsidiaries

Following is a list of the direct and indirect domestic subsidiaries of National
Medical Care, Inc. as of June 10, 1996. For convenience of reference I have used
the following abbreviations:

                    BMA  = Bio-Medical Applications
                    QCDC = Quality Care Dialysis Center
                    HIC  = Home Intensive Care
                    MPD  = NMC Medical Products, Inc.
                    IMC  = International Medical Care, Inc

```
<TABLE>
<CAPTION>
```

| CORPORATE NAME | STATE OF INCORPORATION |
|---|---|
| <S> | <C> |
| Advanced Integrated MedicalServices, Inc. | NJ |
| Advanced Sleep Technologies, Inc. | MD |
| Amasi Medical Group, Inc. | CA |
| Ambulatory Care Associates, Inc. | DE |
| American Home Therapies, Inc. | MD |
| American Homecare Equipment, Inc. | VA |
| Babcock Artificial Kidney Center, Inc. | MA |
| BMA Home Dialysis Services, Inc. | DE |
| BMA Management Company, Inc. | DE |
| BMA of Aquadilla, Inc. | DE |
| BMA of Alabama, Inc. | DE |
| BMA of Alameda County, Inc. | DE |
| BMA of Anacostia, Inc. | DE |
| BMA of Arecibo, Inc. | DE |
| BMA of Arizona, Inc. | DE |
| BMA of Arkansas, Inc. | DE |
| BMA of Bakersfield, Inc. | DE |
| BMA of Bayamon, Inc. | DE |

XXX-002303

```
- ---------------------------------------------------------------------
BMA of Boston, Inc.                              DE
- ---------------------------------------------------------------------
BMA of Blue Springs, Inc.                        DE
- ---------------------------------------------------------------------
BMA of Brockton, Inc.                            DE
- ---------------------------------------------------------------------
BMA of Caguas, Inc.                              DE
- ---------------------------------------------------------------------
BMA of California, Inc.                          DE
  d/b/a's
BMA of Culver City
Culver City Dialysis Services
- ---------------------------------------------------------------------
BMA of Camarillo, Inc.                           DE
- ---------------------------------------------------------------------
</TABLE>
```

                                          1

```
<PAGE>   2
<TABLE>
<CAPTION>
- ---------------------------------------------------------------------
CORPORATE NAME                            STATE OF INCORPORATION
- ---------------------------------------------------------------------
<S>                                       <C>
- ---------------------------------------------------------------------
BMA of Cape Cod, Inc.                            DE
- ---------------------------------------------------------------------
BMA of Capitol Hill, Inc.                        DE
- ---------------------------------------------------------------------
BMA of Carolina, Inc.                            DE
- ---------------------------------------------------------------------
BMA of Carson, Inc.                              DE
- ---------------------------------------------------------------------
BMA of Chicopee, Inc.                            DE
- ---------------------------------------------------------------------
BMA of Chula Vista, Inc.                         DE
- ---------------------------------------------------------------------
BMA of Clinton, Inc.                             DE
- ---------------------------------------------------------------------
BMA of Colorado, Inc.                            DE
- ---------------------------------------------------------------------
BMA of Columbia Heights, Inc.                    DE
- ---------------------------------------------------------------------
BMA of Delaware, Inc.                            DE
- ---------------------------------------------------------------------
BMA of Dover, Inc.                               DE
- ---------------------------------------------------------------------
BMA of Dublin, Inc.                              DE
- ---------------------------------------------------------------------
BMA of East Orange, Inc.                         DE
- ---------------------------------------------------------------------
BMA of Essex, Inc.                               DE
- ---------------------------------------------------------------------
BMA of Eureka, Inc.                              DE
- ---------------------------------------------------------------------
BMA of Fajardo, Inc.                             DE
- ---------------------------------------------------------------------
BMA of Fayetteville, Inc.                        DE
- ---------------------------------------------------------------------
</TABLE>
```

                                          2

```
<PAGE>   3
<TABLE>
<CAPTION>
- ---------------------------------------------------------------------
CORPORATE NAME                            STATE OF INCORPORATION
- ---------------------------------------------------------------------
<S>                                       <C>
- ---------------------------------------------------------------------
BMA of Florida, Inc.                             DE
  d/b/a's
Bio-Medical Applications of Alachua
Bio-Medical Applications of Apopka
Bio-Medical Applications of Bradenton
Bio-Medical Applications of Brandon
Bio-Medical Applications of Clearwater
Bio-Medical Applications of Deltona
Bio-Medical Applications of Duval
Bio-Medical Applications of East Orlando
Bio-Medical Applications of Gainseville
Bio-Medical Applications of Hialeah
Bio-Medical Applications of Hollywood
Bio-Medical Applications of Jacksonville
Bio-Medical Applications of Kendall
Bio-Medical Applications of Lake City
Bio-Medical Applications of Lantana
Bio-Medical Applications of Live Oak
Bio-Medical Applications of Metropolitan Miami
Bio-Medical Applications of Miami
```

XXX-002304

```
Bio-Medical Applications of Ocala
Bio-Medical Applications of Orlando
Bio-Medical Applications of Palmetto
Bio-Medical Applications of Port St. Lucie
Bio-Medical Applications of Sanford
Bio-Medical Applications of South Miami
Bio-Medical Applications of South St. Petersburg
Bio-Medical Applications of St. Petersburg
Bio-Medical Applications of Starke
Bio-Medical Applications of Tampa
Coconut Grove Artificial Kidney Center
Crystal River Kidney Center
Florida Kidney Center
Homestead Artificial Kidney Center
Inverness Dialysis Center
Jupiter Dialysis Center
Mercy Hospital Dialysis Center
N.E. Broward Artificial Kidney Center
N.W. Broward Artificial Kidney Center
Pembroke Pines Dialysis Center
- -------------------------------------------------------------------
</TABLE>


                                          3
<PAGE>    4
<TABLE>
<CAPTION>
- -------------------------------------------------------------------
CORPORATE NAME                              STATE OF INCORPORATION
- -------------------------------------------------------------------
<S>                                         <C>
- -------------------------------------------------------------------
South Florida Prison Program Broward
Correctional Institute Women's Prison
South Florida Prison Program South Florida
Reception Center
Tamarac Kidney Center
West Boca Dialysis Center
West Kendall Dialysis Center
Bonita Artificial Kidney Center
Bonita Springs Artificial Kidney Center
Naples Artificial Kidney Center
Clearwater Artificial Kidney Center
- -------------------------------------------------------------------
BMA of Framingham, Inc.                     DE
- -------------------------------------------------------------------
BMA of Fremont, Inc.                        DE
- -------------------------------------------------------------------
BMA of Fresno, Inc.                         DE
- -------------------------------------------------------------------
BMA of Georgia, Inc.                        DE
- -------------------------------------------------------------------
BMA of Glendora, Inc.                       DE
  d/b/a
Foothill Dialysis Center
- -------------------------------------------------------------------
BMA of Guayama, Inc.                        DE
- -------------------------------------------------------------------
BMA of Hayward, Inc.                        DE
- -------------------------------------------------------------------
BMA of Hillside, Inc.                       DE
- -------------------------------------------------------------------
BMA of Hoboken, Inc.                        DE
- -------------------------------------------------------------------
BMA of Humacao, Inc.                        DE
- -------------------------------------------------------------------
BMA of Illinois, Inc.                       DE
- -------------------------------------------------------------------
BMA of Indiana, Inc.                        DE
- -------------------------------------------------------------------
BMA of Irvington, Inc.                      DE
- -------------------------------------------------------------------
BMA of Jersey City, Inc.                    DE
- -------------------------------------------------------------------
BMA of Kansas, Inc.                         DE
- -------------------------------------------------------------------
BMA of Kentucky, Inc.                       DE
- -------------------------------------------------------------------
BMA of La Mesa, Inc.                        DE
- -------------------------------------------------------------------
BMA of Las Americas, Inc.                   DE
- -------------------------------------------------------------------
BMA of Long Beach, Inc.                     DE
  d/b/a
BMA Long Beach Community Hemodialysis Unit
- -------------------------------------------------------------------
BMA of Los Angeles, Inc.                    DE
  d/b/a's
South Bay Dialysis Center
South Bay Mobile Acute Dialysis
- -------------------------------------------------------------------
BMA of Los Gatos, Inc.                      DE
- -------------------------------------------------------------------
```

XXX-002305

| CORPORATE NAME | STATE OF INCORPORATION |
|---|---|
| BMA of Louisiana, Inc. | DE |
| BMA of Maine, Inc. | DE |
| BMA of Manchester, Inc. | DE |

</TABLE>

<PAGE>   5
<TABLE>
<CAPTION>

| CORPORATE NAME | STATE OF INCORPORATION |
|---|---|
| <S> | <C> |
| BMA of Maryland, Inc.<br>d/b/a<br>BMA of Leonardtown | DE |
| BMA of Massachusetts, Inc. | DE |
| BMA of Mayaguez, Inc. | DE |
| BMA of Medford, Inc. | DE |
| BMA of Michigan, Inc. | DE |
| BMA of Mission Hills, Inc.<br>d/b/a<br>Mission Hills Kidney Center | DE |
| BMA of Mississippi, Inc. | DE |
| BMA of Missouri, Inc.<br>d/b/a<br>BMA of Kansas City<br>Penn Valley Dialysis Center | DE |
| BMA of MLK, Inc. | DE |
| BMA of National City, Inc. | DE |
| BMA of New Hampshire, Inc. | DE |
| BMA of New Jersey, Inc. | DE |
| BMA of New Mexico, Inc. | DE |
| BMA of New York, Inc. | DE |
| BMA of Newington, Inc. | DE |
| BMA of North Carolina, Inc. | DE |
| BMA of North City, Inc. | DE |
| BMA of Northeast D.C., Inc. | DE |
| BMA of Oakland, Inc. | DE |
| BMA of Ohio, Inc. | DE |
| BMA of Oklahoma, Inc. | DE |
| BMA of Pennsylvania, Inc. | DE |
| BMA of Pine Brook, Inc. | DE |
| BMA of Ponce, Inc. | DE |
| BMA of Port Orange, Inc. | DE |
| BMA of Puerto Rico, Inc. | DE |
| BMA of Quincy, Inc. | DE |
| BMA of Rhode Island, Inc.<br>d/b/a's<br>Artificial Kidney Center of RI<br>Artificial Kidney Center of Warwick | DE |
| BMA of Rio Piedras, Inc. | DE |
| BMA of San Antonio, Inc.<br>d/b/a<br>Kidney Disease Clinic of San Antonio | DE |
| BMA of San German, Inc. | DE |

</TABLE>

XXX-002306

5

```
<PAGE>   6
<TABLE>
<CAPTION>
```

| CORPORATE NAME | STATE OF INCORPORATION |
| --- | --- |
| `<S>` | `<C>` |
| BMA of San Juan, Inc. | DE |
| BMA of Sarasota, Inc. | DE |
| BMA of South Carolina, Inc. | DE |
| BMA of South Queens, Inc. | DE |
| BMA of Southeast San Diego, Inc. | DE |
| BMA of Southeast Washington, Inc. | DE |
| BMA of Southeastern Massachusetts, Inc.<br>d/b/a<br>Southeastern Massachusetts Dialysis Clinic | DE |
| BMA of Springfield, Inc. | DE |
| BMA of Tarpon Springs, Inc. | DE |
| BMA of Tennessee, Inc. | DE |

```
</TABLE>
```

6

```
<PAGE>   7
<TABLE>
<CAPTION>
```

| CORPORATE NAME | STATE OF INCORPORATION |
| --- | --- |
| `<S>` | `<C>` |
| BMA of Texas, Inc.<br>d/b/a's<br>Bio-Medical Applications of Dallas Central<br>Bio-Medical Applications of Northwest Dallas<br>Bio-Medical Applications of Plano<br>Bio-Medical Applications of S. Central Dallas<br>Bio-Medical Applications of South Dallas<br>Bio-Medical Applications of Dallas South<br>Brazos Kidney Disease Center, Inc.<br>South Arlington Dialysis Center<br>Kidney Disease Clinic of Central San Antonio<br>Clear Lake Kidney Center<br>H.E.B. Dialysis Center<br>Golden Triangle Dialysis Center<br>Baytown Dialysis Facility<br>South Texas Kidney Center<br>Corsicana Dialysis Center<br>BMA East El Paso<br>Cypress Creek Dialysis Facility<br>BMA El Paso<br>Medical Arts Kidney Center<br>North Houston Dialysis Facility<br>New Braunfels Kidney Disease Clinic<br>Permian Basin Dialysis<br>Vally Hemo Dialysis Center<br>South Plains Kidney Disease Center<br>Jasper Dialysis<br>Gulf Coast Dialysis<br>Island Dialysis Center<br>Northwest Kidney Disease Center<br>West Forth Worth Dialysis Center<br>Weslaco Dialysis Center<br>Crossroads Dialysis Center of Victoria<br>Mainland Dialysis Facility<br>Rosenburg Dialysis Facility<br>Southeast Kidney Center<br>Rosedale Kidney Disease Center<br>West Houston Dialysis<br>Bio-Medical Applications of Big Springs<br>West Texas Kidney Center | DE |
| BMA of the District of Columbia, Inc. | DE |
| BMA of Torrance, Inc. | DE |
| BMA of Trenton, Inc. | DE |
| BMA of Ukiah, Inc. | DE |

XXX-002307

```
BMA of Union City, Inc.                          DE
--------------------------------------------------------------------------------
BMA of Virginia, Inc.                            DE
--------------------------------------------------------------------------------
</TABLE>
```

```
                                      7

<PAGE>   8
<TABLE>
<CAPTION>
--------------------------------------------------------------------------------
CORPORATE NAME                                   STATE OF INCORPORATION
--------------------------------------------------------------------------------
<S>                                              <C>
--------------------------------------------------------------------------------
BMA of West Virginia, Inc.                       DE
  d/b/a's
Bio-Medical Applications of Beckley
Bio-Medical Applications of Bluefield
Bio-Medical Applications of Charleston
Bio-Medical Applications of Elkins
Bio-Medical Applications of Martinsburg
Bio-Medical Applications of Morgantown
Earl J. Hager Renal Unit
Elkins Dialysis Clinic
Martinsburg Dialysis Facility
Morgantown Dialysis Facility
Raleigh Dialysis Facility
West Virginia Dialysis Facility
--------------------------------------------------------------------------------
BMA of Westwood, Inc.                            DE
--------------------------------------------------------------------------------
BMA of Whittier, Inc.                            DE
  d/b/a
Bio-Medical Community Dialysis Unit of
Whittier
--------------------------------------------------------------------------------
BMA of Wisconsin, Inc.                           DE
--------------------------------------------------------------------------------
BMA of Woonsocket, Inc.                          DE
--------------------------------------------------------------------------------
Biotrax Connecticut, Inc.                        CT
--------------------------------------------------------------------------------
Bio-Trax International, Inc.                      DE
--------------------------------------------------------------------------------
Bradley Dialysis Clinic, Inc.                    TN
--------------------------------------------------------------------------------
Clinical Diagnostic Systems, Inc.                FL
--------------------------------------------------------------------------------
Conejo Valley Dialysis, Inc.                     CA
--------------------------------------------------------------------------------
Continue Care Pharmaceuticals, Inc.              WY
--------------------------------------------------------------------------------
Continue Care of Wyoming, Inc.                   WY
--------------------------------------------------------------------------------
D Interim, Inc.                                  GA
--------------------------------------------------------------------------------
Diagnostic Management Services, Inc.             MA
--------------------------------------------------------------------------------
Dialysis Associates West, Inc.                   TN
--------------------------------------------------------------------------------
Dialysis Management Group, Inc.                  TN
--------------------------------------------------------------------------------
Dialysis Services, Inc.                          TX
--------------------------------------------------------------------------------
Erika International Sales Corporation            DE
--------------------------------------------------------------------------------
Erika of Texas, Inc.                             DE
--------------------------------------------------------------------------------
Greater S.E. Community Center for Renal          DC
Disease, Inc.
--------------------------------------------------------------------------------
Gulf Region Mobile Dialysis, Inc.               DE
--------------------------------------------------------------------------------
Gynesis Healthcare, Inc.                         DE
--------------------------------------------------------------------------------
Gynesis Healthcare for Women of Florida,         FL
Inc.
--------------------------------------------------------------------------------
Gynesis Healthcare of Maryland, Inc.             MD
--------------------------------------------------------------------------------
Gynesis Healthcare of New Jersey, Inc.           NJ
--------------------------------------------------------------------------------
</TABLE>

                                      8

<PAGE>   9
<TABLE>
<CAPTION>
--------------------------------------------------------------------------------
CORPORATE NAME                                   STATE OF INCORPORATION
--------------------------------------------------------------------------------
```

XXX-002308

| <S> | <C> |
|---|---|
| Gynesis Healthcare of New York, Inc. | NY |
| Gynesis Healthcare of Oklahoma, Inc. | OK |
| Gynesis Healthcare of Pennsylvania, Inc. | PA |
| Gynesis Healthcare of South Carolina, Inc. | SC |
| Gynesis Resources, Inc. | DE |
| Healthdyne Home Infusion Therapy, Inc. | CA |
| Healthy Options for Personal Enrichment, Inc. | GA |
| HNS Accucare, Inc. | GA |
| HNS Integrated Care Centers, Inc. | GA |
| HNS Medical Technology Services, Inc. | GA |
| HNS Michigan, Inc. | GA |
| HNS New York, Inc. | NY |
| HNS Quality Home Care, Inc. | GA |
| HNS UP Home Care, Inc. | GA |
| Home Dialysis Care, Inc. | TX |
| Home Intensive Care, Inc. d/b/a's HIC of Ft. Lauderdale HIC of Ormand Beach HIC of Tampa | DE |
| HIC of Arizona, Inc. | AZ |
| HIC of California, Inc. | CA |
| HIC of Colorado, Inc. | CO |
| HIC of Connecticut, Inc. | CT |
| HIC of Florida, Inc. | FL |
| HIC of Georgia, Inc. | GA |
| HIC of Illinois, Inc. | IL |
| HIC of Kansas, Inc. | KS |
| HIC of Las Vegas, Inc. | NV |
| HIC of Louisiana, Inc. | LA |
| HIC of Maryland, Inc. | MD |
| HIC of Massachusetts, Inc. | MA |
| HIC of Michigan, Inc. d/b/a Lifeline Medical Systems | MI |
| HIC of Missouri, Inc. | MO |
| HIC of Nevada, Inc. | NV |
| HIC of New Jersey, Inc. | NJ |
| HIC of New York, Inc. | NY |
| HIC of Northern Ohio, Inc. | OH |
| HIC of Ohio, Inc. | OH |

</TABLE>

<PAGE>   10

9

<TABLE>
<CAPTION>

| CORPORATE NAME | STATE OF INCORPORATION |
|---|---|
| <S> | <C> |
| HIC of Pennsylvania, Inc. | PA |
| HIC of Rhode Island, Inc. | RI |

XXX-002309

| CORPORATE NAME | STATE OF INCORPORATION |
|---|---|
| HIC of Tampa, Inc. | FL |
| HIC of Virginia, Inc. | VA |
| Home Nutritional Services, Inc.<br>d/b/a<br>Home Nutritional Support | CA |
| Home Nutritional Services, Inc. | NJ |
| Home Pharmacy Care of Michigan, Inc. | MI |
| Homestead Artificial Kidney Center, Inc. | FL |
| Infusions Innovations of Jacksonville, Inc. | FL |
| Infusions Innovations of Tampa, Inc. | FL |
| Interamerican Acute Dialysis Services, Inc. | FL |
| International Medical Care, Inc. | DE |
| I.V. Solutions, LTD (a LLC) | TX |
| KDNY, Inc. | DE |
| Kidney Disease and Hypertension Center, Ltd. | AZ |
| LaFollette Dialysis Center | TN |
| Lifechem, Inc.<br>d/b/a's<br>National Medical Care Medical Products<br>Division<br>National Medical Care Products Division | DE |
| Lifeline Medical Supplies, Inc. | FL |
| Lifeline Medical Systems, Inc. | CA |
| Lifeline Medical Systems, Inc. | FL |
| Medical Supply Company, Inc. | VA |
| Medi-Sure Testing, Inc. | DE |
| Med-X-Press, Inc. | DE |
| Metro Dialysis Center-Kirkwood, Inc. | MO |
| Metro Dialysis Center-Normandy, Inc. | MO |
| Metro Dialysis Center-North, Inc. | MO |

\</TABLE>

10

\<PAGE>   11
\<TABLE>
\<CAPTION>

| CORPORATE NAME | STATE OF INCORPORATION |
|---|---|
| \<S> | \<C> |
| NMC Homecare, Inc.<br>d/b/a's<br>Community Therapeutic Parentals & Nutrition, Inc.<br>Medtech Resp. Products, Inc.<br>NMC Homecare<br>Medtech of California<br>Medical Arts Parenteral Services, Inc.<br>Medtech of Colorado, Inc.<br>Infusioncare of Ft. Lauderdale<br>Center for Sleep Excellence<br>NMC Homecare Respiratory Services<br>MedTech/NMC Home Care<br>Community Alimentation Services, Inc.<br>Theranutrix, Inc.<br>Delmed Home Health Care<br>NMC Homecare, Inc.<br>Home Nutritional Care<br>Medtech of Texas, Inc. | DE |
| NMC Asia-Pacific, Inc. | DE |
| NMC China, Inc. | DE |
| NMC Diabetic Foot Care, Inc. | DE |
| NMC Diabetic Foot Care Centers Orthotics, | DE |

XXX-002310

```
Inc.
```

| Corporate Name | State |
|---|---|
| NMC Diagnostic Services, Inc.<br>d/b/a<br>Beta Diagnostics | DE |
| NMC Dialysis Services, Inc. | DE |
| NMC Dialysis Services (Romania), Inc. | DE |
| NMC Homecare of Michigan,Inc. | DE |
| NMC International, Inc. | DE |
| National Medical Care of Taiwan, Inc. | DE |
| NMC Latin America, Inc. | FL |
| NMC Management Services, Inc. | DE |
| NMC Medical Products, Inc. | DE |
| NMC Medical Services, Inc.<br>d/b/a's<br>BioTrax International of Pennsylvania<br>NMC Diagnostic Imaging Center | PA |
| NMC Services, Inc. | DE |
| NMC Services (Romania), Inc. | DE |
| NMC Ventures, Inc.<br>d/b/a<br>Sleep Diagnostic Associates | DE |

```
</TABLE>
```

```
                                        11
<PAGE>   12
<TABLE>
<CAPTION>
```

| CORPORATE NAME | STATE OF INCORPORATION |
|---|---|
| <S> | <C> |
| National Medical Care, Inc.<br>d/b/a's<br>MedTech, Inc., Division of National Medical Care Inc.<br>Cardui Respiratory Care<br>New Jersey Mobile Acute<br>Renal Care Center of Belle Glade<br>Renal Care Center of North Jacksonville<br>Renal Care Center of Okeechobee<br>Renal Care Center of Sebring<br>Renal Care Center of St. Augustine<br>Renal Care Center of Vero Beach<br>Renal Care of Wellington | DE |
| National Medical Care Home Care Service<br>Agency, Inc.<br>d/b/a<br>NMC Homecare | NY |
| Nephrology Applications of Mobile, Inc. | AL |
| North Knoxville Dialysis Center, Inc.  . | TN |
| Norlab, Inc. | MA |
| PD Solutions, Inc. | DE |
| PD Solutions of Arizona, Inc. | AZ |
| PD Solutions of California,Inc. | CA |
| PD Solutions of Georgia, Inc. | GA |
| PD Solutions of Illinois, Inc. | IL |
| PD Solutions of Louisiana,Inc. | LA |
| PD Solutions of Maryland, Inc. | MD |
| PD Solutions of Michigan, Inc. | MI |
| PD Solutions of Missouri, Inc. | MO |
| PD Solutions of Nevada, Inc. | NV |
| PD Solutions of New Jersey, Inc. | NJ |
| PD Solutions of New York, Inc. | NY |

XXX-002311

```
- --------------------------------------------------------------------
PD Solutions of Ohio, Inc.                          OH
- --------------------------------------------------------------------
PD Solutions of Pennsylvania, Inc.                  PA
- --------------------------------------------------------------------
PD Solutions of Texas, Inc.                         TX
- --------------------------------------------------------------------
PD Solutions of Virginia, Inc.                      VA
- --------------------------------------------------------------------
Park Diagnostic Imaging Center, Inc.                FL
- --------------------------------------------------------------------
Park Imaging, Inc.                                  MA
   d/b/a
BioTrax International of Massachusetts
- --------------------------------------------------------------------
Park Imaging, Inc.                                  FL
- --------------------------------------------------------------------
Park Portable X-Ray, Inc.                           MA
- --------------------------------------------------------------------
PML, Inc.                                           MA
- --------------------------------------------------------------------
</TABLE>
```

```
                                   12
<PAGE>   13
<TABLE>
<CAPTION>
- --------------------------------------------------------------------
CORPORATE NAME                          STATE OF INCORPORATION
- --------------------------------------------------------------------
<S>                                     <C>
- --------------------------------------------------------------------
Personal Care Health Services, Inc.     DE
   d/b/a's
PCHS, Inc.
NMC Homecare
- --------------------------------------------------------------------
Phoenix Consulting Services, Inc.       FL
- --------------------------------------------------------------------
Preferred Homecare of Florida,Inc.      FL
- --------------------------------------------------------------------
Preferred Homecare of New Jersey, Inc.  NJ
- --------------------------------------------------------------------
Preferred Pharmacy Services, Inc.       FL
- --------------------------------------------------------------------
Quality Care Dialysis Centers, Inc.     FL
- --------------------------------------------------------------------
QCDC of Baltimore, Inc.                 MD
- --------------------------------------------------------------------
QCDC of Boston, Inc.                    MA
- --------------------------------------------------------------------
QCDC of Creve Coeur, Inc.               MO
- --------------------------------------------------------------------
QCDC of Dallas, Inc.                    TX
- --------------------------------------------------------------------
QCDC of Greensburg, Inc.                LA
- --------------------------------------------------------------------
QCDC of Hammond, Inc.                   DE
- --------------------------------------------------------------------
QCDC of Houston, Inc.                   TX
- --------------------------------------------------------------------
QCDC of Las Vegas, Inc.                 NV
- --------------------------------------------------------------------
QCDC of Margate, Inc.                   FL
- --------------------------------------------------------------------
QCDC of Mt. Vernon, Inc.                VA
- --------------------------------------------------------------------
QCDC of New Orleans, Inc.               LA
- --------------------------------------------------------------------
QCDC of North County, Inc.              MO
- --------------------------------------------------------------------
QCDC of Patapsco, Inc.                  MD
- --------------------------------------------------------------------
QCDC of San Antonio, Inc.               TX
- --------------------------------------------------------------------
QCDC of Southern Maryland,Inc.          MD
- --------------------------------------------------------------------
QCDC of St. Augustine, Inc.             FL
- --------------------------------------------------------------------
QCDC of St. Clair Shores, Inc.          MI
- --------------------------------------------------------------------
QCDC of St. Louis, Inc.                 MO
- --------------------------------------------------------------------
QCDC of Stoneham, Inc.                  MA
- --------------------------------------------------------------------
QCDC of University City, Inc.           MO
- --------------------------------------------------------------------
QCDC of Vega Baja, Inc.                 PR
- --------------------------------------------------------------------
QCDC of Vista, Inc.                     CA
- --------------------------------------------------------------------
QCDC of Weymouth, Inc.                  MA
- --------------------------------------------------------------------
```

XXX-002312

```
<TABLE>
Renal Scientific Services, Inc.                        DE
- -------------------------------------------------------------
Renal Scientific Service of Texas, Inc.                DE
- -------------------------------------------------------------
Renal Supply (Tenn) Corporation                        NJ
- -------------------------------------------------------------
Retaw, Inc.                                            FL
- -------------------------------------------------------------
Rockwood Dialysis Center, Inc.                         VA
- -------------------------------------------------------------
S.A.K.D.C., Inc.                                       TX
- -------------------------------------------------------------
San Diego Dialysis Services, Inc.                      DE
   d/b/a
Bio-Medical Community Dialysis Unit of San
Diego
- -------------------------------------------------------------
</TABLE>
```

```
                              13
<PAGE>  14
<TABLE>
<CAPTION>
- -------------------------------------------------------------
CORPORATE NAME                             STATE OF INCORPORATION
- -------------------------------------------------------------
<S>                                        <C>
- -------------------------------------------------------------
Santa Barbara Community Dialysis Center,   CA
Inc.
- -------------------------------------------------------------
Security Health Services, Inc.             NV
- -------------------------------------------------------------
Sover Corporation                          DE
- -------------------------------------------------------------
St. Louis Regional Dialysis Center, Inc.   MO
- -------------------------------------------------------------
Tappahanock Dialysis Center, Inc.          VA
- -------------------------------------------------------------
Target Health Care, L.L.C.                 NY  *
- -------------------------------------------------------------
The Medical Accountability Group, Inc.     TX
- -------------------------------------------------------------
United Dialysis Corporation                CA
- -------------------------------------------------------------
University Kidney Center, Inc.             TX
- -------------------------------------------------------------
UKC-North, Inc.                            TX
- -------------------------------------------------------------
VMS, Ltd.                                  AZ
- -------------------------------------------------------------
Warrenton Dialysis Facility, Inc.          VA
- -------------------------------------------------------------
West End Dialysis Center, Inc.             VA
- -------------------------------------------------------------
Zenex Capital Corp.                        FL
- -------------------------------------------------------------
</TABLE>

* A Limited Liability Company whose membership interests are owned by JGC,
L.L.C. (50%) and NMC Management Services, Inc. (50%).


                              14
<PAGE>  15
                   NATIONAL MEDICAL CARE, INC.
                       Foreign Subsidiaries

Following is a list of the direct and indirect foreign subsidiaries of NMC as of
June, 1996 which are incorporated or registered in foreign jurisdictions.

<TABLE>
<CAPTION>
            CORPORATE NAME              COUNTRY OF INCORPORATION      STOCKHOLDERS
            --------------              ------------------------      ------------

<S>                                     <C>                           <C>
                                              ARGENTINA

Centro de Dialisis Ituzaingo, S.A.                               IMC 99%/BMAMC 1 share
Centro Nefrologico Bahia Blanca, S.R.L.                          IMC 95%/BMAMC 1 of 18 quotas
Diali Salta, S.A.                                                IMC 99%/BMAMC 1 share
Inere, S.A.                                                      IMC 99%/BMAMC 1 share
NMC de Argentina, S.A.                                           IMC 99%/BMAMC 1 share
                                                                 Dr. Domingos Najun 1 share
Creon, S.A.                                                      IMC 99%/BMAMC 1 share
Dialisis Medica S.A.                                             IMC 99%/BMAMC 1 share

Erika, Ltd.                                   BERMUDA             NMCMPD
NMC Holdings, Ltd.                                               Erika, Ltd.

                                              BRAZIL
Maia de Almeida Industria
  e Comercio, S.A.                                               IMC
```

| CORPORATE NAME | COUNTRY OF INCORPORATION | STOCKHOLDERS |
|---|---|---|
| NMC do Brasil Ltda. | | IMC 99%/BMAMC 1 share |
| Renal-Tec Industria, Comercio e Servicos Ltda. | | IMC |
| | CANADA | |
| National Medical Care Canada, Inc. | | IMC |
| NMC Canada Dialysis Services, Inc. | | IMC |
| Erika Laboratories, Ltd. | | NMCMPD |
| | CHINA | |
| Guangzhou Nanfang - NMC Hemodialysis Center Limited | | see note 1 |
| Shenyang Liaoning NMC Hemodialysis Center Co., Ltd. | | see note 2 |
| Shanghai Ren Ji NMC Dialysis Center | | see note 3 |
| | COLOMBIA | |
| Instituto Renal de Colombia Medirenal Ltda. | | IMC 99%/Carlos Umana 1 share |
| | CZECH REPUBLIC | |
| National Medical Care, s.r.o. | | IMC |
| | ENGLAND | |
| Renacare Limited | | Renalyte 99%/IMC 1 share |
| Renalyte Services Limited | | IMC 50%/BMAMC 50% |
| U.K. Renal Services Limited | | Renalyte |
| | FRANCE | |
| National Medical Care France | | see note 4 |
| NMC Medical Products France | | IMC |

15

<PAGE> 16

| CORPORATE NAME | COUNTRY OF INCORPORATION | STOCKHOLDERS |
|---|---|---|
| | GERMANY | |
| NMC Dialysebehandlung GmbH | | NMCDEUT |
| NMC Holding GmbH | | NMC |
| National Medical Care (Deutschland) GmbH | | NMCHOLDG |
| rena-med Medizintechnik GmbH (fka Riggers Medizintechnik GmbH) | | NMCDEUT |
| Riggers Dialysatoren GmbH | | NMCDEUT |
| Riggers Dialysatoren Produktion Thalheim GmbH | | NMCDEUT |
| *Riggers Dialysatoren Produktion Thalheim GmbH & Co., Betriebs-KG | | see note 5 |
| Riggers Medizintechnik Thalheim GmbH | | rena-med |
| | HUNGARY | |
| NMC Dializis Szolgaltato KFT | | IMC |
| NMC Vagyonkezelo KFT | | IMC |
| | ITALY | |
| National Medical Care Italiana, S.p.A. | | IMC |
| NMC Medical Products S.r.l. | | NMC-ITAL |
| | JAPAN | |
| Amicon Japan K.K. | | IMC |
| | KOREA | |
| NMC Korea Inc. | | IMC |
| | MALAYSA | |
| Renal Services (Malaysia) SDN BHD | | IMC |
| | MEXICO | |
| Erika de Reynosa, S.A. de C.V. | | Erika-TX |
| | POLAND | |
| National Medical Care Polska Sp. z.o.o. | | IMC |
| | PORTUGAL | |
| Abrandial - Clinica de Doencas Renais, Lda. | | NMC-Centro Medico |
| Ambulancias 111 - Servico de Transporte de Deontes e Sinistrades, S.A. | | NMC-Centro Medico |
| Analises Xira, Lda. | | Teixeira |
| Ascendao Afonso, Lda. | | Teixeira |
| Anamed - Laboratorio Medico, Lda | | Teixeira |
| Cal & Silveira - Analises Clinicas, Lda. | | Teixeira |
| Cancho Lda. | | NMC-Centro Medico |
| Clinica de Diagnosticos da Azambuja Dr. Fernando Teixeira, Lda. | | Teixeira |
| Clinica de Diagnosticos Dr. Fernando Teixeira, S.A. ("Teixeira") | | NMC-Centro Medico |
| Clinica de Diagnosticos de Ferreira do Alentejo, Dr. Fernando Texeira, S.A. | | NMC-Centro Medico 99%/Teixeira 20;Palma 10; Adao 10; de Matos 10 |
| CNH - Centro Nacional de Hemodialise, Lda. | | NMCHOLD 98.99%/Bernier 1.01% |
| Diagnostico Laboratorial Dra. Helena Farrajota e Dra. Iolanda Rodrigues, Lda. | | Teixeira |
| Egidial - Centro de Dialises, Lda. | | NMC-Centro Medico |
| Flaviano Gusmao, Lda. | | Teixeira |
| Gnostica - Laboratroio de Analisis Clinicas, S.A. | | Teixeira |
| Hemodial - Centro de Dialise Renal do Restelo, Lda. | | NMC-Centro Medico |
| LAC - Laboratorio de Analises Clinicas, Lda. | | Teixeira |
| Laboratorio de Analises Clinicas Dr. Jaoa Ribeiro e Dra. Maria DaGraca Cardosa, Lda. | | Teixeira |

16

<PAGE> 17

```
<TABLE>
<CAPTION>
            CORPORATE NAME                    COUNTRY OF INCORPORATION              STOCKHOLDERS
            --------------                    ------------------------             ------------

<S>                                           <C>                                  <C>
Louro & Pires, Lda.                                                                Teixeira
L.P.C. - Laboratorio de Patologia Clinica, Lda.                                    Teixeira
NMC - Centro Medico Nacional, Lda.                                                 NMCHOLD 99.3%/Chris Ford .07%
Ribadial - Clinica de Dialise de Santarem, Lda.                                    NMC-Centro Medico
Soendocrina - Sociedade de Endocrinologia, Lda.                                    Teixeira
Laboratorio de Analises Clinicas Dra. Susana Pereira Rosas, Lda.                   Teixeira
Visodial - Centro de Dialise de Viseu, Lda.                                        NMC-Centro Medico
                                              PUERTO RICO

Life Assist Medical Products Corp.                                                 NMCMPD
                                              SPAIN
Amex Canarias, S.A.                                                                NMC-Spain
Amex, S.A.                                                                         NMC-Spain
Centro de Dialisis Recoletas - Albacete, S.L.                                      NMC-Spain
Cilu, S.A.                                                                         AMEX
Compania Andaluza de Medicina Extrahospitalaria, S.A.                              NMC-Spain 70.4%/AMEX 29.6%
Corporacion Atex, S.L.                                                             NMC-Spain
Dialsun, S.A.                                                                      AMEX
Dialcentro, S.A.                                                                   NMC-Spain
Instituto de Ciencias Neurologicas, S.A.                                           NMC-Spain
Kidney, S.L.                                                                       NMC-Spain
National Medical Care of  Spain, S.A                                               IMC
Socodi Club, S.L.                                                                  NMC-Spain
                                              THAILAND
NMC Dialysis Centers
 (Thailand) Limited
                                              VENEZUELA
NMC National Medical Care de Venezuela, C.A.                                       IMC
</TABLE>


- ----------------------------------------------------------------------

Note 1    Cooperative Joint Venture: NMC China, Inc. contributes 80% of
          registered capital and appoints a majority of directors
Note 2    Cooperative Joint Venture; NMC International, Inc. contributes 64% of
          registered capital and appoints majority of dir.
Note 3    Cooperative Joint Venture: NMC China, Inc. contributes 63% of
          registered capital and appoints a majority of directors.
Note 4    IMC owns 2,494 of 2,500 shares; 1 share each owned by National Medical
          Care, Inc., NMC Medical Products, Inc., Constantine L. Hampers, M.D.,
          John Walker, Christopher Ford, Eric Prunier.
Note 5    Partnership between rena-Med Medizintechnik GmbH and Riggers
          Dialysatoren Produktion Thalheim GmbH.


NOTE THAT ALL SHARES SHOWN AS BEING OWNED BY CONSTANTINE L. HAMPERS,
M.D. ARE EXPECTED TO BE TRANSFERRED IN LIGHT OF HIS JUNE 14, 1996
RESIGNATION.

                                     17
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-23.1
<SEQUENCE>21
<DESCRIPTION>CONSENT
<TEXT>

<PAGE>   1
                                                        [EXHIBIT 23.1]

          INDEPENDENT AUDITORS' REPORT ON SCHEDULE AND CONSENT
```

The Board of Directors
Fresenius USA, Inc.

The audits referred to in our report dated February 2, 1996, included the
related financial statement schedule as of December 31, 1995, and for each of
the years in the three-year period ended December 31, 1995, included in the
joint proxy statement-prospectus. The financial statement schedule is the
responsibility of the Company's management. Our responsibility is to express an
opinion on the financial statement schedule based on our audits. In our opinion,
such financial statement schedule when considered in relation to the
consolidated financial statements taken as a whole, presents fairly in all
material respects the information set forth therein.

We consent to the use of our report included herein and to the reference to our
firm under the headings "Summary Selected Historical Financial Information of
Fresenius USA", "Selected Financial Data of Fresenius USA" and "Experts" in the
joint proxy statement-prospectus.

                         KPMG Peat Marwick LLP

XXX-002315

San Francisco, California
July 29, 1996


                              20
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-23.2
<SEQUENCE>22
<DESCRIPTION>CONSENT
<TEXT>

<PAGE>   1
                                             [EXHIBIT 23.2]

        INDEPENDENT AUDITORS' REPORT ON SCHEDULE AND CONSENT


The Board of Directors
Fresenius Aktiengesellschaft
Bad Homburg v.d. Hohe, Germany:

The audits referred to in our report dated April 25, 1996, included the related
financial statement schedule as of December 31, 1995 and 1994, and for the years
then ended, included in the joint proxy statement-prospectus. The financial
statement schedule is the responsibility of the Company's management. Our
responsibility is to express an opinion on the financial statement schedule
based on our audits. In our opinion, such financial statement schedule when
considered in relation to the combined financial statements taken as a whole,
presents fairly in all material respects the information set forth therein.

We consent to the use of our report included herein and to the reference to our
firm under the headings "Summary Selected Historical Financial Information of
Fresenius Worldwide Dialysis," "Selected Financial Data of Fresenius Worldwide
Dialysis" and "Experts" in the joint proxy statement-prospectus.

KPMG Deutsche Treuhand-Gesellschaft
Aktiengesellschaft Wirtschaftsprufungsgesellschaft

July 29, 1996
Frankfurt am Main, Germany


                              21
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-23.3
<SEQUENCE>23
<DESCRIPTION>CONSENT OF PRICE WATERHOUSE
<TEXT>

<PAGE>   1

                                          EXHIBIT 23.3

             CONSENT OF PRICE WATERHOUSE LLP

     We hereby consent to the use in the Joint Proxy Statement-Prospectus
constituting part of this Registration Statement on Form S-4 of W. R. Grace &
Co. of our report dated March 29, 1996 relating to the Special-Purpose,
Consolidated Financial Statements of W. R. Grace & Co., which appears in such
Joint Proxy-Statement Prospectus. We also consent to the application of such
report to the Financial Statement Schedule for the three years ended December
31, 1995 listed under Item 21(b) of this Registration Statement when such
schedule is read in conjunction with the Special-Purpose, Consolidated Financial
Statements referred to in our report. We also consent to the references to us
under the headings "Experts", "Summary Selected Special-Purpose, Consolidated
Financial Information of Grace" and "Grace Special-Purpose Selected Financial
Data" in such Joint Proxy Statement-Prospectus. However, it should be noted that
Price Waterhouse LLP has not prepared or certified such "Summary Selected
Special-Purpose, Consolidated Financial Information of Grace" or "Grace
Special-Purpose Selected Financial Data".

PRICE WATERHOUSE LLP

Boston, Massachusetts
July 29, 1996
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-23.4
<SEQUENCE>24
<DESCRIPTION>CONSENT OF CS FIRST BOSTON CORPORATION
<TEXT>

<PAGE>   1

XXX-002316

Exhibit 23.4

[LETTERHEAD OF CS FIRST BOSTON CORPORATION]

We hereby consent to the use of our opinion letter dated February 4, 1996 to the Board of Directors of W. R. Grace & Co. included in Appendix C to the Proxy Statement/Prospectus which forms a part of the Registration Statement on Form S-4 relating to the proposed reorganization described therein and to the references to such opinion in such Proxy Statement/Prospectus on the front cover and under the captions "Summary -- Opinions of Financial Advisors" and "Background and Reasons." In giving such consent, we do not admit that we come within the category of persons whose consent is required under Section 7 of the Securities Act of 1933, as amended, or the rules and regulations of the Securities and Exchange Commission thereunder, nor do we thereby admit that we are experts with respect to any part of such Registration Statement within the meaning of the term "experts" as used in the Securities Act of 1933, as amended, or the rules and regulations of the Securities and Exchange Commission thereunder.

                         CS FIRST BOSTON CORPORATION

</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-23.5
<SEQUENCE>25
<DESCRIPTION>CONSENT OF MERRILL LYNCH, PIERCE, FENNER & SMITH
<TEXT>

<PAGE>   1

Exhibit 23.5

[LETTERHEAD OF MERRILL LYNCH PIERCE, FENNER & SMITH INCORPORATED]

We hereby consent to the use of our opinion letter dated February 4, 1996 to the Board of Directors of W. R. Grace & Co. included in Appendix C to the Proxy Statement/Prospectus which forms a part of the Registration Statement on Form S-4 relating to the proposed reorganization described therein and to the references to such opinion in such Proxy Statement/Prospectus on the front cover and under the captions "Summary -- Opinions of Financial Advisors" and "Background and Reasons ." In giving such consent, we do not admit that we come within the category of persons whose consent is required under Section 7 of the Securities Act of 1933, as amended, or the rules and regulations of the Securities and Exchange Commission thereunder, nor do we thereby admit that we are experts with respect to any part of such Registration Statement within the meaning of the term "experts" as used in the Securities Act of 1933, as amended, or the rules and regulations of the Securities and Exchange Commission thereunder.

                         MERRILL LYNCH, PIERCE, FENNER &
                              SMITH INCORPORATED

</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-23.8
<SEQUENCE>26
<DESCRIPTION>CONSENT OF SALOMON BROTHERS INC.
<TEXT>

<PAGE>   1

Exhibit 23.8

[LETTERHEAD OF SALOMON BROTHERS INC]

We hereby consent to the use of our opinion letter dated May 8, 1996 to the Fresenius USA Independent Committee included in Appendix D to the Proxy Statement/Prospectus which forms a part of the Registration Statement on Form S-4 relating to the proposed reorganization described therein and to the references to such opinion in such Proxy Statement/Prospectus on the front cover and under the captions "Summary -- Recommendations of the Boards of Directors," "Summary -- Recommendations of the Boards of Directors -- Opinions of Financial Advisors," "Background and Reasons -- Background of the Reorganization; Reasons for the Recommendation of the Fresenius USA Board" and "Background and Reasons -- Recommendation of the Fresenius USA Independent Committee and the Board of Directors". In giving such consent, we do not admit that we come within the category of persons whose consent is required under Section 7 of the Securities Act of 1933, as amended, or the rules and regulations of the Securities and Exchange Commission thereunder, nor do we thereby admit that we are experts with respect to any part of such Registration Statement within the meaning of the term "experts" as used in the Securities Act of 1933, as amended, or the rules and regulations of the Securities and Exchange Commission thereunder.

                         SALOMON BROTHERS INC

</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-24.1
<SEQUENCE>27
<DESCRIPTION>POWERS OF ATTORNEY
<TEXT>

<PAGE>   1

XXX-002317

EXHIBIT 24.1

POWER OF ATTORNEY

    The undersigned hereby appoints ROBERT H. BEBER, PETER D. HOUCHIN and
ROBERT B. LAMM as his/her true and lawful attorneys-in-fact for the purpose of
signing a registration statement on Form S-4, and all amendments thereto, to be
filed with the Securities and Exchange Commission with respect to the issuance
of preferred stock of W. R. GRACE & CO., a New York corporation. Each of such
attorneys-in-fact is appointed with full power to act without the other.

| | | |
|---|---|---|
| Dated: | June 26, 1996 | /s/ Kathleen A. Browne |
| Dated: | June 28, 1996 | /s/ Albert J. Costello |
| Dated: | June 26, 1996 | /s/ Harold A. Eckmann |
| Dated: | June 28, 1996 | /s/ Marye Anne Fox |
| Dated: | June 26, 1996 | /s/ James W. Frick |
| Dated: | June 29, 1996 | /s/ T.A. Holmes |
| Dated: | July 26, 1996 | /s/ Peter D. Houchin |
| Dated: | July 1, 1996 | /s/ Virginia A. Kamsky |
| Dated: | June 29, 1996 | /s/ John E. Phipps |
| Dated: | June 26, 1996 | /s/ T.A. Vanderslice |

</TEXT>
</DOCUMENT>
</SEC-DOCUMENT>
-----END PRIVACY-ENHANCED MESSAGE-----

XXX-002318