(vi)  In the event that, at any time as a result of an adjustment made pursuant to Section 7(c)(i) or 7(c)(iii), the holder of any shares of Series A Preferred Stock thereafter surrendered for conversion shall become entitled to receive any shares of the Corporation or its subsidiaries, other than shares of the Common Stock, thereafter the number of such other shares so receivable upon conversion of any share of Series A Preferred Stock shall be subject to adjustment from time to time in a manner and on terms as nearly equivalent as practicable to the provisions with respect to the Common Stock contained in Sections 7(c)(i) through 7(c)(v), and the other provisions of this Section 7 with respect to the Common Stock shall apply on like terms to any such other shares.

(vii)  Whenever the Conversion Price is adjusted, as herein provided, the Corporation shall promptly file with the transfer agent for the Series A Preferred Stock a certificate of an officer of the Corporation setting forth the Conversion Price after the adjustment and setting forth a brief statement of the facts requiring such adjustment and a computation thereof.  The certificate shall be prima facie evidence of the correctness of the adjustment.  The Corporation shall promptly cause a notice of the adjusted Conversion Price to be mailed to each registered holder of shares of Series A Preferred Stock.

(viii)  In case of any reclassification of the Common Stock, any consolidation of the Corporation with, or merger of the Corporation into, any other entity, any merger of another entity into the Corporation (other than a merger that does not result in any reclassification, conversion, exchange or cancellation of outstanding shares of Common Stock of the Corporation), any sale or transfer of all or substantially all of the assets of the Corporation or any compulsory share exchange pursuant to which share exchange the Common Stock is converted into other securities, cash or other property, then lawful provision shall be made as part of the terms of such transaction whereby the holder of each share of Series A Preferred Stock then outstanding shall have the right thereafter, during the period such share shall be convertible, to convert such share only into the kind and amount of securities, cash and other property receivable upon the reclassification, consolidation, merger, sale, transfer or share exchange by a holder of the number of shares of Common Stock of the Corporation into which a share of Series A Preferred Stock would have been convertible immediately prior to the reclassification, consolidation, merger, sale, transfer or share exchange.  The Corporation, the person formed by the consolidation or resulting from the merger or which acquires such assets or which acquires the Corporation's shares, as the case may be, shall make provisions in its certificate or articles of incorporation or other constituent documents to establish such rights and to ensure that the dividend, voting and other rights of the holders of Series A Preferred Stock established herein are unchanged, except as permitted by Section 9 and applicable law.  The certificate or articles of incorporation or other constituent documents shall provide for adjustments, which, for events subsequent to the effective date of the certificate or articles of incorporation or other constituent documents, shall be as nearly equivalent as may be practicable to the adjustments provided for in this Section 7. The provisions of this Section 7(c)(viii) shall similarly apply to successive reclassifications, consolidations, mergers, sales, transfers or share exchanges.

(d) Optional Reduction in Conversion Price.  The Corporation may at its option reduce the Conversion Price from time to time by any amount for any period of time if the period is at least 20 days and if the reduction is irrevocable during the period.  Whenever the Conversion Price is so reduced, the Corporation shall mail to holders of record of the Series A Preferred Stock a notice of the reduction at least 15 days before the date the reduced Conversion Price takes effect, stating the reduced Conversion Price and the period it will be in effect.  A voluntary reduction of the Conversion Price does not change or adjust the Conversion Price otherwise in effect for purposes of Section 7(c).

8. Status of Shares.  All shares of Series A Preferred Stock that are at any time redeemed pursuant to Section 5 or converted pursuant to Section 7 and all shares of Series A Preferred Stock that are otherwise reacquired by the Corporation shall (upon compliance with any applicable provisions of the laws of the State of Delaware) have the status of authorized but unissued shares of Preferred Stock, without designation as to series, subject to reissuance by the Board of Directors as shares of any one or more other series.

9. Voting Rights.

(a)  The holders of record of shares of Series A Preferred Stock shall not be entitled to any voting rights except as hereinafter provided in this Section 9 or as otherwise provided by law.

(b)  The holders of the shares of Series A Preferred Stock (i) shall be entitled to vote with the holders of the Common Stock on all matters submitted for a vote of holders of Common Stock (voting together with the holders of Common Stock as one class), (ii) shall be entitled to a number of votes equal to the number of votes to which shares of Common Stock issuable upon conversion of such shares of Series A Preferred Stock would have been entitled if such shares of Common Stock had been outstanding at the time of the applicable vote and related record date and (iii) shall be entitled to notice of any stockholders' meeting in accordance with the Certificate of Incorporation and Bylaws of the Corporation.

(c)  If and whenever six quarterly dividends (whether or not

XXX-002482

consecutive) payable on the Series A Preferred Stock have not been paid in full or if the Corporation shall have failed to discharge its Mandatory Redemption Obligation on or after the Redemption Date, the number of directors then constituting the Board of Directors shall be increased by two and the holders of shares of Series A Preferred Stock, together with the holders of shares of every other series of preferred stock upon which like rights to vote for the election of two additional directors have been conferred and are exercisable (resulting from either the failure to pay dividends or the failure to redeem) (any such other series is referred to as the "Preferred Shares"), voting as a single class regardless of series, shall be entitled to elect the two additional directors to serve on the Board of Directors at any annual meeting of stockholders or special meeting held in place thereof, or at a special meeting of the holders of the Series A Preferred Stock and the Preferred Shares called as hereinafter provided. Whenever all arrears in dividends on the Series A Preferred Stock and the Preferred Shares then outstanding shall have been paid and dividends thereon for the current quarterly dividend period shall have been paid or declared and set apart for payment, or the Corporation shall have fulfilled its Mandatory Redemption Obligation, as the case may be, then the right of the holders of the Series A Preferred Stock and the Preferred Shares to elect such additional two directors shall cease (but subject always to the same provisions for the vesting of such voting rights in the case of any similar future arrearages in six quarterly dividends or failure to fulfill any Mandatory Redemption Obligation), and the terms of office of all persons elected as directors by the holders of the Series A Preferred Stock and the Preferred Shares shall forthwith terminate and the number of the Board of Directors shall be reduced accordingly.  At any time after such voting power shall have been so vested in the holders of shares of Series A Preferred Stock and the Preferred Shares, the secretary of the Corporation may, and upon the written request of any holder of Series A Preferred Stock (addressed to the secretary at the principal office of the Corporation) shall, call a special meeting of the holders of the Series A Preferred Stock and of the Preferred Shares for the election of the two directors to be elected by them as herein provided, such call to be made by notice similar to that provided in the Bylaws of the Corporation for a special meeting of the stockholders or as required by law.  If any such special meeting required to be called as above provided shall not be called by the secretary within 20 days after receipt of any such request, then any holder of shares of Series A Preferred Stock may call such meeting, upon the notice above provided, and for that purpose shall have access to the stock records of the Corporation.  The directors elected at any such special meeting shall hold office until the next annual meeting of the stockholders or special meeting held in lieu thereof if such office shall not have previously terminated as above provided.  If any vacancy shall occur among the directors elected by the holders of the Series A Preferred Stock and the Preferred Shares, a successor shall be elected by the Board of Directors, upon the nomination of the then-remaining director elected by the holders of the Series A Preferred Stock and the Preferred Shares or the successor of such remaining director, to serve until the next annual meeting of the stockholders or special meeting held in place thereof if such office shall not have previously terminated as provided above.

        (d)  So long as any shares of Series A Preferred Stock are outstanding:

            (i)  the Corporation shall not, without the written consent or affirmative vote at a meeting called for that purpose by holders of at least 66-2/3% of the outstanding shares of Series A Preferred Stock, voting as a single class, amend, alter or repeal any provision of the Corporation's Certificate of Incorporation (by merger or otherwise) so as to materially and adversely affect the preferences, rights or powers of the Series A Preferred Stock; provided that any such amendment, alteration or repeal to create, authorize or issue any Junior Securities or Parity Securities, or any security convertible into, or exchangeable or exercisable for, shares of Junior Securities or Parity Securities, shall not be deemed to have any such material adverse effect; and

            (ii)  the Corporation shall not, without written consent or affirmative vote at a meeting called for that purpose of at least 66-2/3% of the votes entitled to be cast by the holders of shares of Series A Preferred Stock and of all other series of Preferred Stock upon which like rights to vote upon the matters specified herein have been conferred and are exercisable, voting as a single class regardless of series, create, authorize or issue any Senior Securities, or any security convertible into, or exchangeable or exercisable for, shares of Senior Securities;

provided that no such consent or vote of the holders of Series A Preferred Stock shall be required if at or prior to the time when such amendment, alteration or repeal is to take effect, or when the issuance of any such securities is to be made, as the case may be, all shares of Series A Preferred Stock at the time outstanding shall have been called for redemption by the Corporation and the funds necessary for such redemption shall have been set aside in accordance with Sections 5 and 6.

        (e)  The consent or votes required in Sections 9(c) and 9(d) shall be in addition to any approval of stockholders of the Corporation which may be required by law or pursuant to any provision of the Corporation's Certificate of Incorporation or Bylaws, which approval shall be obtained by vote of the stockholders of the Corporation in the manner provided in Section 9(b).

        10.  No Other Rights.

        (a)  The shares of Series A Preferred Stock shall not have any relative,

XXX-002483

participating, optional or other special rights and powers except as set forth
herein or as may be required by law.

     IN WITNESS WHEREOF, the Corporation has caused this Certificate to be
duly executed on its behalf and attested by its undersigned duly authorized
officers this _____ day of _____, 1998.

                                    W. R. GRACE & CO.


                                    By:
                                       -------------------------
                                       Name:
                                       Title:

ATTEST:


- -------------------------
Name:
Title:
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-4.2
<SEQUENCE>3
<TEXT>




                                                            Exhibit 4.2

                         December 18, 1997

W. R. Grace & Co.
One Town Center Road
Boca Raton, FL 33486-1010

     Attention:      Paul McMahon
                     Vice President and Treasurer

Gentlemen:

     ABN AMRO Bank N.V., New York Branch ("ABN AMRO"), Bank of
America National Trust and Savings Association ("Bank of America"),
NationsBank N.A. ("NationsBank") and Bankers Trust Company ("BTCo")
are pleased to offer to W. R. Grace & Co. ("W. R. Grace") their respective
commitments in the amounts set forth opposite their names on their respective
signature pages hereto (or the equivalent thereof in permitted designated and
alternate currencies) as part of the One Billion Six Hundred Million United
States Dollar credit facility described herein, subject to the terms and
provisions set forth herein and in the attached summary of terms and
conditions (the "Facility"). ABN AMRO, Bank of America, NationsBank and BTCo
are herein referred to individually as an "Agent Bank" and collectively as the
"Agent Banks". All defined terms used herein and not defined herein shall have
the same meaning herein as in the attached summary of terms and conditions.

     ABN AMRO will serve as Administrative Agent and Arranger and
BancAmerica Robertson Stephens, BT Alex.Brown Incorporated, and NationsBanc
Montgomery Securities, Inc. are herein referred to individually as a
"Co-Arranger" and, collectively, the "Co-Arrangers". Each of the Agent Banks,
Arranger and Co-Arrangers will perform the customary duties under the Facility.
In addition, each of the Arranger and Co-Arrangers agrees to use its best
efforts to work with W. R. Grace to syndicate the Facility to one or more
banks or financial institutions that are reasonably satisfactory to the
Arranger, Co-Arrangers and W. R. Grace.

     The Arranger and Co-Arrangers intend to commence syndication
efforts promptly after your execution of this letter, and you agree to
assist the Arranger and Co-Arrangers in achieving a syndication that is
satisfactory to the Arranger, Co-Arrangers and you.  The syndication
efforts of the Arranger and Co-Arrangers, including contacts with and
requests for assistance from W. R. Grace and SAC, will be coordinated
among the Arranger and Co-Arrangers.  Such syndication will be accomplished
by a variety of means, including direct contact during the syndication
between senior management and advisors of W. R. Grace and its affiliates
and the proposed syndicate members.  To assist the Arranger and Co-
Arrangers in their syndication efforts, you hereby agree (i) to provide and
cause your advisors to provide the Arranger and Co-Arrangers, the Agent
Banks and the other syndicate members upon request with all information
reasonably deemed necessary by the Arranger and Co-Arrangers to complete
syndication, including but not limited to information and evaluations
prepared by W. R. Grace and its affiliates and their respective advisors,
or on their behalf, relating to the transactions contemplated hereby, (ii)
to assist ABN AMRO upon its reasonable request in the preparation of an
Information Memorandum to be used in connection with the syndication of the
Facility, (iii) to otherwise assist the Arranger and Co-Arrangers in their
syndication efforts, including by making officers of W. R. Grace and its
affiliates available from time to time to attend and make presentations
regarding the business and prospects of the Grace Packaging Business at a
meeting or meetings of lenders or prospective lenders, and (iv) to use your
best efforts to cause officers of SAC and its affiliates to be available
from time to time to attend and make presentations regarding the business

XXX-002484

and prospects of the Grace Packaging Business and SAC and its subsidiaries, taken as a whole, at a meeting or meetings of lenders or prospective lenders.

As you are aware, we have received certain historical and projected pro forma financial statements of the Grace Packaging Business and of SAC and its subsidiaries. If additional information comes to our attention which the Agent Banks, Arranger or Co-Arrangers reasonably believe has a material adverse effect on the business, assets, financial condition, or prospects of the Grace Packaging Business, taken as a whole, or the Grace Packaging Business and SAC and its subsidiaries, taken as a whole, or on the Transaction, the Agent Banks may decline to provide the financing and ABN AMRO may, in its sole discretion, suggest alternative financing amounts or structures that ensure adequate protection for the Agent Banks, Arranger and the Co-Arrangers.

You hereby represent and covenant that (i) all information, other than the Projections (as defined below), which has been or is hereafter made available to the Agent Banks, the Arranger and the Co-Arrangers by you or on your behalf in connection with the transactions contemplated hereby (the "Information") is and will (as supplemented below) be complete and correct in all material respects and does not and will not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained therein not materially misleading as of the date provided to you and (ii) all financial projections concerning the Grace Packaging Business. taken as a whole, and the Grace Packaging Business and SAC and its subsidiaries, taken as a whole, that have or are hereafter made available to the Agent Banks, the Arranger and the Co-Arrangers by you or on your behalf in connection with the transactions contemplated hereby (the "Projections") have been or will be prepared in good faith based upon reasonable assumptions. You agree to supplement the Information and the Projections from time to time until the closing date of the credit facility so that the representation and warranty in the preceding sentence is true and correct on such closing date as if the Information and Projections were provided to you on the closing date. You acknowledge that in arranging and syndicating the Facility, the Agent Banks, the Arranger and the Co-Arrangers will be using and relying on the Information and Projections without independent verification thereof. In issuing this commitment and undertaking, as the case may be, the Agent Banks, the Arranger and the Co-Arrangers are relying on the accuracy of the information furnished by you or on your behalf.

The Agent Banks will not be obligated to enter into the Facility unless and until all of the following conditions set forth herein and in the attached summary of terms and conditions have been met:

(a)  The Facility will be made available pursuant to loan and related agreements and documentation (collectively, the "Facilities Documentation"), in form and substance consistent with the attached summary of terms and conditions and otherwise satisfactory to the Agent Banks.  The Facilities Documentation shall contain such covenants, terms, conditions, representations, warranties and events of default as are consistent with the term sheet and otherwise as shall be satisfactory to ABN AMRO or as are customarily included by ABN AMRO in agreements governing transactions of the kind contemplated, or as the Agent Banks shall deem appropriate based on their investigation of the Grace Packaging Business and SAC and its subsidiaries.  It is understood that the attached terms and conditions attempt to set forth certain of the material terms and provisions of the Facility, but not necessarily all of such terms and provisions, and that the Facility as finally documented shall contain those terms and provisions customarily required by the Agent Banks for facilities and transactions of this type.  Accordingly, each of our commitments remains subject to our receipt of legal documentation in form and content satisfactory to us and to our legal counsel.

(b)  The Merger Agreement shall be in full force and effect. Any consent of the shareholders of W. R. Grace or SAC which may be required to authorize the Merger shall have been obtained.

(c)  All approvals, consents, authorizations, licenses, permits, orders, filings and declarations of and with any governmental or regulatory body, agency or authority or any person, firm, corporation or other legal entity necessary in connection with the Facility and the transactions otherwise contemplated thereby and to be obtained by you or SAC, shall have been obtained and made and be in full force and effect and all applicable waiting periods shall have expired without any action being taken by any competent authority which restrains, prevents or imposes materially adverse conditions upon, the consummation of the Merger or the incurrence of the loans under the Facility, in each case on a basis acceptable to the Agent Banks.

(d)  The execution of the Facilities Documentation and the consummation of the transactions contemplated thereby shall not violate or conflict with any law, rule or regulation or any material agreement, contract or other obligation binding upon or affecting the property of the Grace Packaging Business or SAC or any of its subsidiaries or businesses.

(e)  Except as previously disclosed to the Agent Banks no action, suit or proceeding (including, without limitation, any inquiry or investigation) shall be pending or threatened against the Grace Packaging Business or against SAC or any of its subsidiaries which could reasonably

XXX-002045

be expected to result in a material adverse effect on the Grace Packaging
Business, taken as a whole, or on the Grace Packaging Business and SAC and
its subsidiaries, taken as a whole, the financing contemplated hereby or
any documentation executed in connection therewith, and no injunction or
other restraining order shall have been issued or a hearing therefor be
pending or noticed with respect to the Facility or the transactions
contemplated hereby and thereby.

     (f)  The Agent Banks shall be satisfied as to the existing
and potential liability of the Grace Packaging Business, taken as a whole,
and the Grace Packaging Business and SAC and its subsidiaries, taken as a
whole, with respect to any environmental matters including compliance with
laws and regulations relating to environmental protection.

     (g)  The results of the Agent Banks' continued due diligence
review, analysis and testing of the assets, liabilities, commitments,
contingencies, results of operations and prospects of the Grace Packaging
Business, taken as a whole, and the Grace Packaging Business and SAC and
its subsidiaries, taken as a whole, shall be acceptable to the Agent Banks.

     (h)  There shall have been no material adverse change in the
business, financial condition, or results of operations of the Grace
Packaging Business, taken as a whole, or the Grace Packaging Business and
SAC and its subsidiaries, taken as a whole, since December 31, 1996.

     (i)  All extensions of credit under the Facility shall be in
full compliance with all applicable requirements, including, to the extent
applicable, the rules and regulations of the Board of Governors of the
Federal Reserve System.

     (j)  The Agent Banks shall be satisfied that the pro forma
financial condition of the Grace Packaging Business, taken as a whole, and
the Grace Packaging Business and SAC and its subsidiaries, taken as a
whole, after giving effect to the Transactions is substantially consistent
with the Projections provided by you or your agents to the Agent Banks.

     (k)  The Agent Banks shall have received such opinions of
counsel, officers' certificates, board resolutions and certificates of
accountants and other professionals in respect of such matters as the Agent
Banks shall reasonably request.

     (l)  There shall not have occurred and be continuing such a
material disruption in the market for syndicated bank credit facilities
generally as would, in the reasonable judgment of the Arranger and Co-
Arrangers, materially impair the syndication of the Facility.

     (m)  There shall have been no other syndications of private
debt by W. R. Grace for which Cryovac or the Grace Packaging Business
would remain liable after giving effect to the Merger or by SAC during the
syndication of the Facility which would, in the reasonable opinions of the
Arranger and Co-Arrangers, affect the successful syndication of the
Facility.

     For its commitment to the Facility, W. R. Grace agrees to pay
to each of the Agent Banks the upfront fee specified in the fee letter dated
the date hereof among the Agent Banks and W. R. Grace. W. R. Grace agrees to
pay to ABN AMRO the additional fees specified in the fee letter dated the date
hereof between W. R. Grace and ABN AMRO. The Facilities Documentation shall be
prepared by Chapman and Cutler as special counsel to ABN AMRO. The reasonable
costs and expenses of Chapman and Cutler (to be limited to a maximum amount to
be agreed upon) in connection with the preparation, execution and delivery of
this letter, the Facilities Documentation and the transactions contemplated
hereby and thereby and all other incidental out-of-pocket costs and expenses
of the Agent Banks, the Arranger and the Co-Arrangers shall be for your account
and the Arranger and the Co-Arrangers in connection with the
syndication of the Facility shall be for your account, whether or not any
portion of the Facility is made available. To the extent any fees are payable
to the banks participating in the Facility (other than to the Agent Banks),
such fees shall be for the account of W. R. Grace as shall be mutually agreed
between W. R. Grace and the Agent Banks.

     To induce the Agent Banks, the Arranger and the Co-Arrangers
to enter into this letter, W. R. Grace hereby agrees to indemnify and
hold harmless the Agent Banks, the Arranger and the Co-Arrangers and their
affiliates and each director, officer, employee, agent, attorney thereof
(each an "indemnified person") from and against any and all actions, suits,
proceedings (including any investigations or inquiries), claims, losses,
damages, liabilities or expenses of any kind or nature whatsoever which may
be incurred by or asserted against or involve the Arranger or any Agent
Bank or Co-Arranger or any such indemnified person as a result of or
arising out of or in any way related to or resulting from this letter, the
Facility or the other transactions contemplated hereby and thereby and,
upon demand, to pay and reimburse the Agent Banks, the Arranger and the Co-
Arrangers and each indemnified person for any reasonable legal or other
out-of-pocket expenses incurred in connection with investigating, defending
or preparing to defend any such action, suit, proceeding (including any
inquiry or investigation) or claim (whether or not the Agent Banks, the

XXX-002486

Arranger and the Co-Arrangers or any such indemnified person is a party to any action or proceeding out of which any such expenses arise); provided, however, W. R. Grace shall not indemnify any Agent Bank, the Arranger or Co-Arranger or any indemnified person pursuant to this paragraph against any loss, claim, damage, expense or liability resulting from its gross negligence or willful misconduct (as applicable).  The foregoing provisions of this paragraph shall be in addition to any rights that an indemnified party shall have at common law or otherwise.  Neither the Agent Banks, the Arranger, the Co-Arrangers nor any indemnified person shall be entitled to indemnity for any lost profits or consequential damages pursuant to this paragraph.

The provisions of the immediately preceding two paragraphs shall survive any termination of this letter.

This letter shall not be assignable by any party hereto without the prior written consent of the other parties, subject to the right of the Agent Banks stated above to syndicate the Facility among banks or other financial institutions acceptable to the Agent Banks and W. R. Grace, and the right of the Agent Banks to sell, transfer or assign all or any portion of, or interests or participation in, the Facility, in the case of assignments, subject to the consent of W. R. Grace.

If you are in agreement with the foregoing, please sign and return the enclosed copy of this letter no later than 5:00 p.m., New York time, on or before December 22, 1997. This letter will become effective upon your delivery to us of executed counterparts of this letter. This offer shall terminate if not so accepted by you prior to that time.

After this letter becomes effective, the commitments of the Agent Banks hereunder may be terminated in whole or in part at any time by W. R. Grace upon written notice to the Agent Banks. This commitment will terminate on April 15, 1998 unless definitive Facilities Documentation, meeting the conditions set forth herein, shall have been entered into on or prior to such date.

Prior to the receipt by the Agent Banks, the Arranger and the Co-Arranger of a counterpart of this commitment letter executed by you, this commitment letter and the contents hereof shall be treated by you as confidential and (except as required by law in the opinion of your or SAC's counsel) shall not be disclosed by you to any person other than W. R. Grace's or SAC's officers, directors, attorneys and other advisors. After such receipt this commitment letter and its respective contents shall not be disclosed by you or SAC except in furtherance of, and to other proposed participants in, the transactions contemplated by such commitment letter and, in any event, this commitment letter shall not be disclosed publicly (unless required by law in the opinion of your or SAC's counsel) without the prior written consent of the Agent Banks, except that, following your acceptance of this letter, you or SAC may make public disclosure of the existence and amount of the Agent Banks' commitments, and you or SAC may make such public disclosures of the terms and conditions hereof as you or SAC are required by law, in the opinion of your or SAC's counsel, to make.

Except as otherwise contemplated herein or as required by law or requested by any regulatory authority, each Agent Bank, the Arranger, and each Co-Arranger agrees that it will keep and cause its affiliates to keep as confidential in accordance with customary banking practices, all non-public, confidential materials of W. R. Grace and its subsidiaries and SAC and its subsidiaries (except as may be necessary to complete syndication, provided that any such materials will be provided only subject to confidentiality restrictions mutually agreed by the Agent Banks, the Arranger, the Co-Arrangers and you).

This letter may be executed in counterparts which, taken together, shall constitute an original. This letter embodies the entire agreement and understanding between the Agent Banks, the Arranger, the Co-Arrangers and you with respect to the Facilities and supersedes all prior agreements and understandings relating to the subject matter hereof.

THIS LETTER WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAWS AND ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, ACTION, SUIT OR PROCEEDING ARISING OUT OF OR CONTEMPLATED BY THIS COMMITMENT LETTER IS HEREBY WAIVED BY THE AGENT BANKS, ARRANGER, CO-ARRANGERS AND YOU. THE AGENT BANKS, THE ARRANGER, CO-ARRANGERS AND YOU HEREBY SUBMIT TO THE NON-EXCLUSIVE JURISDICTION OF THE FEDERAL AND NEW YORK STATE COURTS LOCATED IN THE CITY OF NEW YORK IN CONNECTION WITH ANY DISPUTE RELATED TO THIS COMMITMENT LETTER OR ANY MATTERS CONTEMPLATED HEREBY

Very truly yours,

Commitment: $300,000,000          ABN AMRO Bank N.V.

By:  /s/ John W. Deegan
     ---------------------------------

     Its:  Vice President
           ---------------------------------


By:  /s/ Pauline McHugh
     ---------------------------------

     Its: Vice President
          ---------------------------------

XXX-002487

```
Commitment: $250,000,000          BANK OF AMERICA NATIONAL TRUST
                                    AND SAVINGS ASSOCIATION

                                  By: /s/ Ambrish Thanawala
                                      ---------------------------------

                                    Its:  Vice President
                                          -----------------------------

Commitment: $250,000,000          BANKERS TRUST COMPANY

                                  By: /s/ Gregory P. Shefren
                                      ---------------------------------

                                    Its:  Vice President
                                          -----------------------------

Commitment: $250,000,000          NATIONSBANK N.A.

                                  By: /s/ Thomas J. Kane
                                      ---------------------------------

                                    Its:  Vice President
                                          -----------------------------

                                  BANCAMERICA ROBERTSON STEPHENS

                                  By: /s/ Annette Hanami
                                      ---------------------------------

                                    Its:  Vice President
                                          -----------------------------

                                  NATIONSBANC MONTGOMERY SECURITIES, INC.

                                  By: /s/ Charles F. Wallach
                                      ---------------------------------

                                    Its:  Vice President
                                          -----------------------------

                                  BT ALEX BROWN INCORPORATED

                                  By: /s/ Christopher Kinslow
                                      ---------------------------------

                                    Its:  Vice President
                                          -----------------------------

Accepted and Agreed to
this 22nd day of December, 1997

W. R. GRACE & CO.

By: /s/ Paul McMahon
    ---------------------------------

    Its: Vice President and Treasurer
         -----------------------------
By:
    ---------------------------------

    Its:
         -----------------------------
```

                                                    EXHIBIT A

                        W. R. GRACE & CO.

                SUMMARY OF TERMS AND CONDITIONS
        $1,600,000,000 GLOBAL REVOLVING CREDIT FACILITIES

TRANSACTION
SUMMARY:                  W. R. Grace & Co. ("W. R. Grace" or the "Company"),
                          Cryovac Acquisition Corp. ("Mergco", a subsidiary of
                          W. R. Grace) and Sealed Air Corporation ("SAC") have
                          entered into that certain Agreement and Plan of
                          Merger (the "Merger Agreement") dated as of August
                          14, 1997 attached to which is a form of
                          Distribution Agreement (the "Distribution
                          Agreement") (the transaction and events described
                          in the Merger Agreement and the Distribution
                          Agreement being herein referred to as the
                          "Transaction"). W. R. Grace and Cryovac, Inc.
                          ("Cryovac"), the subsidiary to which W. R. Grace's
                          packaging business (the "Grace Packaging Business")
                          has been or will be contributed, will borrow a
                          portion of the facilities, the proceeds of which
                          will be transferred (the "Grace Chemicals

XXX-002488

Contribution") to Grace Specialty Chemicals, Inc. ("Grace Chemicals", the subsidiary of W. R. Grace that will hold, directly or indirectly, W. R. Grace's non-packaging business), or a subsidiary thereof, as provided in the Distribution Agreement. W. R. Grace will then be recapitalized, and, among other things, will distribute the shares of Grace Chemicals to its shareholders. Immediately thereafter Mergco will merge (the "Merger") into Sealed Air Corporation ("SAC"). SAC will be the surviving corporation of such merger and will become a wholly-owned subsidiary of W. R. Grace, and W. R. Grace will change its name to Sealed Air Corporation ("New Sealed Air").

BORROWERS:                  W. R. Grace and Cryovac. After completion of the Merger W.R. Grace may, without further approval, cause SAC to be a Borrower.

At the Company's option, additional other wholly-owned direct or indirect subsidiaries (other than Grace Chemicals and its subsidiaries) may be direct borrowers ("Subsidiary Borrowers", which term also includes Cryovac and, if SAC becomes a Borrower, SAC) under the Facilities if such subsidiaries are mutually acceptable to the Company and (i) the Administrative Agent, in the case of subsidiaries being added to the Global Revolving Credit Facility for U.S. and Alternate Currency Borrowings and (ii) the Administrative Agent and the relevant Country Specific Lender, in the case of subsidiaries being added to the Global Revolving Credit Facility for Designated Currency Borrowings.

CO-OBLIGORS:                After completion of the Merger, at the option of New Sealed Air, SAC may become a co-obligor with W. R. Grace/New Sealed Air and assume joint and several liability for all of W. R. Grace's/New Sealed Air's obligations under the facilities.

GUARANTEE:                  All Borrowings will be unconditionally guaranteed by W. R. Grace, Cryovac and all material U.S. Subsidiaries other than Grace Chemicals and its subsidiaries.

ADMINISTRATIVE
AGENT:                      ABN AMRO Bank N.V. (the "Administrative Agent").

ARRANGER:                   ABN AMRO Bank N.V.

DOCUMENTATION
AGENT:                      Bankers Trust Company

CO-SYNDICATION
AGENTS:                     BancAmerica Robertson Stephens and NationsBank N.A.

AGENT BANKS:                ABN AMRO Bank N.V., Bank of America National Trust and Savings Association, Bankers Trust Company and NationsBank N.A.

CO-ARRANGERS:               BancAmerica Robertson Stephens, BT Alex.Brown Incorporated, and NationsBanc Montgomery Securities, Inc.

GLOBAL
REVOLVING CREDIT
FACILITIES:                 1) 5-year $1,000,000,000 Global Revolving Credit Facility, with a sub-limit for U.S. Dollar denominated Letters of Credit, to be determined, and a swingline facility.

                            2) 364-day $600,000,000 Global Revolving Credit Facility.

BORROWINGS:                 Borrowings will be available under either facility as follows:

                            U.S. and Alternate Currency Borrowings: Committed advances made pro rata by the Lenders based upon their available commitments to the Company and certain Subsidiary Borrowers who are approved by the Administrative Agent. Competitive bid advances in U.S. Dollars at a fixed interest rate with maturities of 1-180 days may be requested.  Bid Loans shall be deemed to effect a pro rata utilization of the Commitments of all Lenders under the applicable facility and shall not reduce the successful bidder's obligation to lend its pro rata share of the remaining undrawn Facility. Each Lender will represent that on the closing date no payments by the Borrowers under the facilities are subject to withholding taxes.  Alternate

XXX-002489

Currencies available include U.S. Dollars, Belgian Francs, British Pounds, Dutch Guilders, French Francs, Italian Lira, German Marks, Swedish Krona, Norwegian Krone, Canadian Dollars, Japanese Yen, Australian Dollars and Spanish Pesetas, and other freely transferable currencies approved by the Administrative Agent.

Designated Currency Borrowings:  The Company may, upon five Business Days notice to the Administrative Agent, request that one or more Lenders (each a "Country Specific Lender") commit, subject to a sub-limit, to make foreign currency loans to the Company or a Subsidiary Borrower directly out of such Lenders' local branch or affiliate.  A Lender may, but shall have no obligation to, make such a commitment. While in effect, any Designated Currency commitment by a Lender shall reduce dollar for dollar such Lender's available commitment.  The relevant Borrower and Country Specific Lender shall agree, among other things, on the maturity, pricing and borrowing procedures applicable to loans made by such Country Specific Lender.

Swingline Loans. The Company may request the Administrative Agent (in such capacity, the "Swingline Lender") to make Swingline Loans available to the Company in an outstanding amount not to exceed $20,000,000. All Swingline Loans will be made and maintained as Base Rate Loans or at other short term fixed rates as agreed between the Company and the Swingline Lender. Each Lender will be unconditionally obligated to reimburse the Swingline Lender for its pro rata share of all Swingline Loans made by the Swingline Lender.

| | |
|---|---|
| LETTERS OF CREDIT: | The Administrative Agent will act as the Letter of Credit Issuer (the "Issuer"). Each Lender shall be unconditionally obligated to reimburse the Issuer for its pro rata share of any drawing paid by the Issuer under any Letter of Credit and, accordingly, the Letters of Credit shall be deemed to effect a pro rata utilization of the Commitments of all Lenders under the applicable facility. |
| APPLICABLE MARGIN: | With respect to committed borrowings, the lower of the rates as set forth on the attached Pricing Grids. Letter of Credit fees shall be equal to the applicable LIBOR margin. The Applicable Margin and Letter of Credit fees will be established at closing to be effective until the delivery of the first quarter 1998 financial statements. |
| FACILITY FEE: | The lower of the rates as set forth on the attached Pricing Grids, calculated on a 365/366 day basis. |
| UTILIZATION FEE: | As set forth on the attached Pricing Grid. |
| USE OF PROCEEDS: | The initial borrowings under the facilities will be made by W. R. Grace and Cryovac, the proceeds of which will be used to fund the Grace Chemicals Contribution in an amount determined as provided in the Distribution Agreement. Borrowings shall also be available (i) to refinance outstanding indebtedness, (ii) to provide working capital, including the issuance of letters of credit, and (iii) for other general corporate purposes. |
| AMORTIZATION: | Bullet. |
| LENDERS: | A syndicate of financial institutions acceptable to the Arranger, Co-Arrangers and the Company. |
| AVAILABLE COMMITMENT: | Before maturity, the full amount of each Credit Facility may be borrowed, repaid, and reborrowed, subject to satisfaction of conditions precedent, and Company's covenant compliance and notice requirements.  Letters of Credit must expire no later than the maturity of the 5-Year $1,000,000,000 Global Revolving Credit Facility. |
| OPTIONAL COMMITMENT REDUCTIONS: | Upon notice, the Company may irrevocably either terminate the Credit Facilities or permanently reduce the Credit Facilities in minimum multiples of $10,000,000. |
| OPTIONAL PREPAYMENTS: | Any Borrower may make optional prepayments in amounts of $2,000,000 or greater, subject to payment of breakage costs and funding losses. Base |

XXX-002490

rate drawings may be repaid with same day notice.

**U.S. DOLLAR EQUIVALENT:**

The Administrative Agent shall determine the U.S. Dollar equivalent of each loan denominated in a foreign currency on the first day of the Interest Period, and as adjusted from time to time thereafter, applicable to such foreign currency loan.

**INTEREST RATES:**

Outstanding amounts shall accrue interest according to the following pricing alternatives, as selected by the Borrower:

A) Base Rate Option: Interest shall be at the Base Rate, defined as the higher of (i) the Administrative Agent's prime rate for U.S. Dollar loans and (ii) the overnight federal funds rate plus 50 basis points. Interest shall be paid quarterly in arrears and shall be calculated on the basis of the actual number of days elapsed in a year of 365/366 days.

B) Eurocurrency Option: Interest shall be determined for periods ("Interest Periods") of 1, 2, 3 or 6 months (as selected by the Borrower) and shall be at a per annum rate equal to the London Interbank Offered Rate ("LIBOR") offered to the Administrative Agent for corresponding deposits of the relevant currency, plus the Applicable Margin. Interest shall be paid at the end of each Interest Period or quarterly, whichever is earlier and shall be calculated on the basis of the actual number of days elapsed in a year of 360 days (except that any Loan denominated in Pounds Sterling and other Designated Currencies customarily computed on a 365/366 day basis in accordance with customary Eurocurrency market practice shall be computed on a 365/366 day basis).

C) Loans by Country Specific Lenders: The Company or the relevant Subsidiary Borrower and Country Specific Lender shall agree on the appropriate formula and margin for calculating and paying interest (including a default rate of interest) on loans made by such Country Specific Lender to the Company or such Subsidiary Borrower.

D) Bid Rate Loans: Interest at a fixed rate shall be determined pursuant to a competitive bid Facility. Fixed rate maturities of 1-180 days may be requested.

E) Default Interest: Amounts past due shall bear interest at 2% per annum in excess of the relevant rate, provided that a Country Specific Lender and the Company or the relevant Subsidiary Borrower may designate a different default rate to apply to loans made by such Country Specific Lender.

**CONDITIONS PRECEDENT:**

Customary for transactions of this type, including, but not limited to:

Closing:

(i)     Execution of loan documents and other documentation related to the Transaction and requisite shareholder approvals.

(ii)    Legal opinions.

(iii)   Corporate documents; Proceedings; Officer's Certificates.

(iv)    Satisfactory completion of the Agent Banks' due diligence review of the Grace Packaging Business and SAC.

(v)     No material adverse change in financial condition, business, and results of operations of the Grace Packaging Business, considered as a whole, or the Grace Packaging Business and SAC, considered as a whole.

(vi)    No material litigation relating to the Grace Packaging Business other than as previously disclosed.

(vii)   Payment of fees.

Utilizations:

XXX-002491

(i)   No Default or Potential Default.

(ii)  Accuracy of Representations and Warranties.

(iii) Timely delivery of appropriate drawing notice.

DRAWINGS:

A.  U. S. Dollar Base Rate Drawings: In minimum amounts of $2,000,000 and incremental multiples of $500,000, to be determined, with same day notice to the Administrative Agent, such notice to be received by the Administrative Agent prior to 12:00 noon (New York time).

B.  U.S. Dollar LIBOR Drawings: For Interest Periods of 1, 2, 3 and 6 months and in minimum amounts of $2,000,000 and incremental multiples of $500,000, upon three Business Days prior written notice to the Administrative Agent.

C.  Alternate Currency LIBOR Drawings: For Interest Periods of 1, 2, 3 and 6 months and in minimum amounts approximately equivalent to $2,000,000 and incremental multiples of 500,000 units of the relevant currency, upon four Business Days prior written notice to the Administrative Agent.

D.  Loans by Country Specific Lenders: As agreed between the relevant Country Specific Lender and the Company or a Subsidiary Borrower in minimum amounts approximately equivalent to $2,000,000 and incremental multiples of 500,000 units of the relevant currency.

SECURITY:

Unsecured.

REPRESENTATIONS & WARRANTIES:

Usual and customary for facilities of this type for similar borrowers including (provided that the following shall not apply to Grace Chemicals and its subsidiaries):
1.  Corporate Status.
2.  Corporate Power and Authority.
3.  No Violation.
4.  Governmental Approvals.
5.  Financial Statements; Financial Condition; Undisclosed Liabilities; etc.
6.  Litigation.
7.  True and Complete Disclosure.
8.  Use of Proceeds; Margin Requirements.
9.  Tax Return and Payments.
10. Compliance with ERISA.
11. Subsidiaries.
12. Compliance with Statutes, etc.
13. Environmental Matters.
14. Investment Company Act.
15. Public Utility Holding Company Act.
16. Patents, Licenses, Franchises and Formulas.
17. Properties.
18. Labor Relations.
19. Indebtedness.

COVENANTS:

Usual and customary for transactions of this type for similar borrowers, including the following (provided that the following shall not apply to Grace Chemicals and its subsidiaries):

Affirmative Covenants:
1.  Information Covenants.
2.  Books, Records and Inspections.
3.  Maintenance of Property, Insurance.
4.  Corporate Franchises.
5.  Compliance with Statutes.
6.  ERISA.
7.  Performance of Obligations.
8.  Payment of Taxes.
9.  Consummation of Merger within 5 days of first utilization.

Negative Covenants:
1.  Liens.
2.  Consolidation, Merger, Disposition of Assets. etc. (other than as contemplated by the Merger Agreement)
3.  Subsidiary Indebtedness.
4.  Limitation on Asset Transfers to Foreign Subsidiaries.
5.  Business.

FINANCIAL COVENANTS:

Financial covenants to be calculated on a rolling four quarter basis, with levels to be determined:
1.  Minimum EBITDA/Interest plus dividends on Preferred Stock.
2.  Maximum Total Debt/EBITDA.

XXX-002492

| | |
|---|---|
| **EVENTS OF DEFAULT:** | Usual and customary for transactions of this type for similar borrowers, including, but not limited to, the following for the Company and its subsidiaries (other than Grace Chemicals and its subsidiaries):<br>1. Failure to pay any interest or fees payable under the Credit Agreement with two day grace period or failure to pay principal when due.<br>2. Failure to meet covenants, with appropriate grace periods where applicable.<br>3. Representations or warranties false in any material respect when made.<br>4. Cross default to other material indebtedness.<br>5. Insolvency and bankruptcy.<br>6. Judgments.<br>7. Validity of Guaranty.<br>8. Change of Control (other than as a result of the Transaction).<br>9. ERISA. |
| **CAPITAL ADEQUACY & YIELD PROTECTION:** | The Definitive Credit Documentation shall contain yield protection provisions appropriate for transactions of this type, including, but not limited to, indemnity provisions relating to increased reserve requirements, changes in law or circumstances, possible future illegality of interest options, "gross up" for taxes (other than on net income), possible inability to determine market rate, capital adequacy, interest period indemnity and breakage, and increased costs, redeployment costs, and consequential loss. |
| **INDEMNIFICATION:** | Borrowers shall indemnify the Administrative Agent and the Lenders, and their respective affiliates for all reasonable costs, liabilities and expenses arising out of the Credit Facilities, except to the extent caused by gross negligence or willful misconduct of the party seeking indemnity. Borrowers shall also indemnify Lenders from any loss, cost or expense incurred as a result of a prepayment for any reason (including, without limitation, prepayments resulting from the occurrence of an event of default) on any day other than the last day of the applicable Interest Period, failure to borrow a loan after giving notice, or failure to prepay a loan after giving notice of its intent to make such a prepayment.<br><br>The Lenders shall indemnify the Administrative Agent for any loss, cost or expense the Administrative Agent may incur which arises out of the transactions described herein and which is not directly attributable to the gross negligence or willful misconduct of the Administrative Agent. |
| **ASSIGNMENTS & PARTICIPATIONS:** | The Borrowers may not assign any of their rights or obligations under the Credit Agreement. Assignments of commitments by Lenders are subject to the consents of the Company and the Administrative Agent, such consents not to be unreasonably withheld, in minimum amounts of $10,000,000. Participations shall be without restriction, provided that voting rights of participants shall be limited to changes in provisions relating to commitments, payments, interest rates, fees, collateral, guarantees and maturity. The Company shall authorize the Lenders to release confidential information to prospective assignees and participants, subject to confidentiality undertakings. |
| **DEFINITIONS:** | "EBITDA" is defined as consolidated net earnings before interest expense, depreciation, amortization, income tax expense, any non-cash contributions or accruals to deferred profit sharing and deferred compensation plans, any non-cash gains or losses on asset sales and any non-cash gains or losses resulting from the cumulative effect of changes in accounting principles. EBITDA will be calculated on a rolling four quarter basis. EBITDA shall include any acquisitions which have been owned less than one year on a pro-forma basis, as if they had been owned for the entire applicable Test Period.<br><br>Calculations of financial covenants which require a rolling four quarter period shall be modified to adjust for calculation periods as a result of the Merger. |
| **GOVERNING LAW:** | State of New York. |

XXX-002493

PRICING GRID

Pricing based on this grid shall be determined by reference to the Company's
senior unsecured long-term debt ratings as issued by S & P and Moody's. (All
spreads and fees in basis points)

364 DAY FACILITY:

| S&P/Moody's Rating | LIBOR Margin | Facility Fee | Drawn Cost* |
|---|---|---|---|
| A-/A3 or Higher | 19.0 | 6.0 | 25.0 |
| BBB+/Baa1 | 22.5 | 7.5 | 30.0 |
| BBB/Baa2 | 28.5 | 9.0 | 37.5 |
| BBB- or Baa3 | 32.5 | 12.5 | 45.0 |
| BB+/Ba1 | 45.0 | 17.5 | 62.5 |
| BB/Ba2 or lower | 55.0 | 20.0 | 75.0 |

5 YEAR FACILITY:

| S&P/Moody's Rating | LIBOR Margin | Facility Fee | Drawn Cost* |
|---|---|---|---|
| A-/A3 or Higher | 17.0 | 8.0 | 25.0 |
| BBB+/Baa1 | 20.5 | 9.5 | 30.0 |
| BBB/Baa2 | 25.0 | 12.5 | 37.5 |
| BBB- or Baa3 | 30.0 | 15.0 | 45.0 |
| BB+/Ba1 | 42.5 | 20.0 | 62.5 |
| BB/Ba2 or lower | 50.0 | 25.0 | 75.0 |

* The LIBOR Margin is calculated on the basis of a 360-day year.  The Facility
Fee is calculated on a basis of 365/366-day year.

If the ratings as issued by S& P and Moody's differ by one rating category, the
higher rating shall determine pricing.
If the ratings as issued by S& P and Moody's differ by two rating categories,
the rating which falls in the middle of the two published ratings shall
determine pricing.

Utilization Fee: An additional utilization fee of 5 basis points will be added
to the LIBOR Margin at any time that outstanding amounts under the Credit
Facilities are greater than $800,000,000.

PRICING GRID

Pricing based on this grid shall be determined by reference to a Total
Debt/EBITDA ratio for the Company calculated on rolling four quarter basis:

364 DAY FACILITY:

| Total Debt/EBITDA | LIBOR Margin | Facility Fee | Drawn/Cost* |
|---|---|---|---|
| less than  1.00X | 19.0 | 6.0 | 25.0 |
| less than  1.50X | 22.5 | 7.5 | 30.0 |
| less than  2.00X | 28.5 | 9.0 | 37.5 |
| less than  2.50X | 32.5 | 12.5 | 45.0 |
| less than  3.00X | 45.0 | 17.5 | 62.5 |
| greater than  3.00X | 55.0 | 20.0 | 75.0 |

XXX-002494

```
5 YEAR FACILITY
<CAPTION>
```

| Total Debt/EBITDA | LIBOR Margin | Facility Fee | Drawn/Cost* |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| less than 1.00X | 17.0 | 8.0 | 25.0 |
| less than 1.50X | 20.5 | 9.5 | 30.0 |
| less than 2.00X | 25.0 | 12.5 | 37.5 |
| less than 2.50X | 30.0 | 15.0 | 45.0 |
| less than 3.00X | 42.5 | 20.0 | 62.5 |
| greater than 3.00X | 50.0 | 25.0 | 75.0 |

```
</TABLE>
```

* The LIBOR Margin is calculated on the basis of a 360-day year.  The Facility Fee is calculated on a basis of 365/366-day year.

Utilization Fee: An additional utilization fee of 5 basis points will be added to the LIBOR Margin at any time that outstanding amounts under the Credit Facilities are greater than $800,000,000.

```
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-5.1
<SEQUENCE>4
<TEXT>
```

                                                        EXHIBIT 5.1


                [Wachtell, Lipton, Rosen & Katz Letterhead]
                          February 13, 1998

W. R. Grace & Co.
One Town Center Road
Boca Raton, Florida 33486

          Re:  Registration Statement on Form S-4 of
               W. R. Grace & Co.

Ladies and Gentlemen:

          We have acted as special counsel to W. R. Grace & Co., a
Delaware corporation ("Grace"), in connection with the above captioned
Registration Statement on Form S-4 (the "Registration Statement") being filed
today with the Securities and Exchange Commission (the "Commission") under the
Securities Act of 1933, as amended (the "1933 Act"), with respect to:  (1) the
shares of common stock, par value $.10 per share, of Grace ("New Sealed Air
Common Stock") and the shares of convertible preferred stock, par value $.10
per share, of Grace (the "New Sealed Air Preferred Stock," together with the
New Sealed Air Common Stock, the "New Sealed Air Shares") proposed to be
issued in connection with the recapitalization of Grace (the
"Recapitalization") upon the terms and subject to the conditions of the Form
of Distribution Agreement (the "Distribution Agreement"), to be entered into
prior to the effective time of the Merger (as defined herein), filed as
Exhibit 2.2 to the Registration Statement, by and among Grace, Packco
Acquisition Corp., a Delaware corporation and a wholly owned subsidiary of
Grace ("Packco") and Sealed Air Corporation, a Delaware corporation ("Sealed
Air"); and (2) the New Sealed Air Common Stock proposed to be issued in the
merger (the "Merger") of Packco with and into Sealed Air, upon the terms and
subject to the conditions of the Agreement and Plan of Merger (the "Merger
Agreement"), dated as of August 14, 1997, filed as Exhibit 2.1 to the
Registration Statement, by and among Grace, Sealed Air and Packco.

          In connection with this opinion, we have examined the Amended
and Restated Certificate of Incorporation and Amended and Restated By-Laws of
Grace in the respective forms contemplated to be in effect at the time that
the New Sealed Air Shares are issued, the Registration Statement and the
exhibits thereto, and we have examined originals or copies, certified or
otherwise identified to our satisfaction, of such corporate records,
agreements, certificates of public officials and of officers of Grace and
other instruments, and such matters of law and fact as we have deemed
necessary to render the opinion contained herein.

          In giving the opinion contained herein, we have with your
approval relied upon representations of officers of Grace and certificates of
public officials with respect to the accuracy of the material factual matters
addressed by such representations and certificates.  We have, with your
approval, assumed the genuineness of all signatures or instruments submitted
to us, and the conformity of certified copies submitted to us with the
original documents to which such certified copies relate.

XXX-002495

We are members of the Bar of the State of New York and we express no opinion as to the laws of any jurisdiction other than the federal laws of the United States, the General Corporation Law of the State of Delaware and the laws of the State of New York.

Based upon and subject to the foregoing, and assuming (i) the certificates representing the New Sealed Air Shares will be manually signed by one of the authorized officers of First Chicago Trust Company of New York, as transfer agent and registrar for the New Sealed Air Shares (the "Transfer Agent and Registrar"), and registered by the Transfer Agent and Registrar, (ii) the consummation of the Merger and Recapitalization as contemplated by the Merger Agreement and Distribution Agreement, respectively, and (iii) that the shares of Sealed Air common stock to be exchanged for New Sealed Air Common Stock in the Merger and that the shares of Grace common stock to be exchanged for New Sealed Air Shares in the Recapitalization have been validly issued, fully paid and non-assessable, we are of the opinion that, upon the amendment of the Amended and Restated Certificate of Incorporation of Grace to authorize a sufficient number of shares of the common and preferred stock of Grace, and upon the Merger having been approved by the stockholders of Grace and becoming effective pursuant to the General Corporation Law of the State of Delaware, all as described in the Registration Statement and any amendments thereto, the New Sealed Air Shares will be duly authorized and, when issued in the manner described in the Registration Statement and any amendments thereto, will be validly issued, fully paid, and non-assessable.

We hereby consent (i) to the filing of this opinion with the Commission as an exhibit to the Registration Statement and (ii) to the statement made in reference to our firm under the caption "LEGAL MATTERS" in the Joint Proxy Statement/Prospectus which is made a part of the Registration Statement. We do not hereby admit by giving this consent that we are in the category of persons whose consent is required under Section 7 of the 1933 Act.

Very truly yours,

/s/ Wachtell, Lipton, Rosen & Katz
- ----------------------------------
    Wachtell, Lipton, Rosen & Katz

</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-8.1
<SEQUENCE>5
<TEXT>


                              Exhibit 8.1
                    Form of Sealed Air Tax Opinion


                    _____, 1997

                    Agreement and Plan of Merger
                      Dated as of August 14, 1997
              Among W.R. Grace & Co., Packco Acquisition Corp.
                        and Sealed Air Corporation

Dear Ladies and Gentleman:

            We have acted as counsel for Sealed Air Corporation, a Delaware corporation ("Sealed Air"), in connection with the proposed merger (the "Merger") of Packco Acquisition Corp., a Delaware corporation and a wholly-owned subsidiary of W.R. Grace & Co., a Delaware corporation ("Grace"), with and into Sealed Air pursuant to an agreement and Plan of Merger dated as of August 14, 1997 (the "Merger Agreement"), among Sealed Air, Grace and Packco Acquisition Corp. Under the Merger Agreement each issued and outstanding share of Sealed Air Common Shares not owned directly or indirectly by Sealed Air or Grace will be converted into the right to receive Newco Common Shares.

            In that connection, you have requested our opinion regarding certain Federal income tax consequences of the Merger. In providing our opinion, we have examined the Merger Agreement, the Joint Proxy Statement to be dated as of [            ], and such other documents and corporate records as we have deemed necessary or appropriate for purposes of our opinion. In addition, we have assumed that (i) the Merger will be consummated in accordance with the provisions of the Merger Agreement and (ii) the representations made to us by W.R. Grace & Co.-Conn. ("Grace-Conn.") and Sealed Air in their respective letters to us dated _____, 1997, and delivered to us for purposes of this opinion are accurate and complete.

            Based upon the foregoing, in our opinion, the Merger will be treated for Federal income tax purposes as a reorganization within the meaning of Section 368(a) of the Internal Revenue Code of 1986, as amended (the "Code") and Grace and Sealed Air will each be a party to that reorganization within the meaning of Section 368(b) of the Code. Accordingly, no gain or loss will be recognized by the stockholders of Sealed Air upon their exchange of Sealed Air Common Shares for Newco Common Shares under Section 354 of the Code.

            The opinions expressed herein are based upon existing statutory, regulatory and judicial authority, any of which may be changed at any time with retroactive effect. In addition, our opinions are based solely on the documents that we have examined, the additional information that we have

obtained, and the statements contained in the letters from Grace-Conn. and
Sealed Air referred to above, which we have assumed will be true as of the
effective time of the Merger.  Our opinions cannot be relied upon if any of
the facts pertinent to the Federal income tax treatment of the Merger stated
in such documents or in such additional information is, or later becomes,
inaccurate, or if any of the statements contained in the letters from
Grace-Conn. or Sealed Air referred to above are, or later become, inaccurate.
Finally, our opinions are limited to the tax matters specifically covered
hereby, and we have not been asked to address, nor have we addressed, any
other tax consequences of the Merger or any other transactions.

         We are furnishing this opinion solely to Sealed Air Corporation
in connection with the transactions contemplated by the agreements, and it is
not to be relied upon, used, circulated, quoted, or otherwise referred to for
any other purpose or by any other party without our consent.

         We hereby consent to the filing of this opinion as an exhibit
to the Registration Statement.  In addition, we consent to the reference to us
under the captions "The Reorganization and Merger," "The Distribution and
Merger Agreement" and "Legal Matters" in the Proxy Statement/Prospectus
constituting a part of the Registration Statement.

         Very truly yours,


         Davis Polk & Wardwell

</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-8.2
<SEQUENCE>6
<DESCRIPTION>OPINION OF WACHTELL, LIPTON
<TEXT>

         [LETTERHEAD OF WACHTELL, LIPTON, ROSEN & KATZ]



                              _____, 19__




W. R. Grace & Co.
W. R. Grace & Co.-Conn.
One Town Center Road
Boca Raton, Florida  33486-1010

Ladies and Gentlemen:

         We have acted as special counsel to W. R. Grace & Co.
("Grace"), a Delaware corporation, in connection with:

         A. the distributions (the "Distributions") (a) to Grace by W.
         R. Grace & Co.-Conn. ("Grace-Conn."), a Connecticut corporation and a
         wholly-owned subsidiary of Grace, of all of the outstanding stock of
         Cryovac, Inc. ("Packco"), a Delaware corporation and a wholly owned
         subsidiary of Grace-Conn. following the contribution (the "Packco
         Contribution") of the assets and liabilities of Grace-Conn.'s packaging
         business to Packco, and (b) by Grace pro rata to the holders of its
         common stock of all the issued and outstanding common stock of Grace
         Specialty Chemicals, Inc., a Delaware corporation ("New Grace") (the
         "Grace Distribution"), following the contribution (the "New Grace
         Contribution") by Grace to New Grace of all of the outstanding stock of
         Grace-Conn.; and

         B. the merger of Packco Acquisition Corp. ("Merger Sub"), a
         Delaware corporation and a wholly-owned subsidiary of Grace, with and
         into Sealed Air Corporation, a Delaware Corporation ("Sealed Air") (the
         "Merger");and

         (iii) the recapitalization of Grace common stock
         immediately prior to the Merger;

         all of the foregoing upon the terms and conditions as set forth in the
Distribution Agreement by and among Grace, Grace-Conn. and New Grace dated as of
_____ (the "Distribution Agreement"), and the Agreement and Plan of
Merger by and among Grace, Merger Sub and Sealed Air dated as of August 14, 1997
(the "Merger Agreement", and together with the Distribution Agreement, the
"Agreements"). Reference is hereby made to Section 7.1(c) of the Merger
Agreement.

         Any capitalized term used and not defined herein has the
meaning given to it in the Tax Sharing Agreement by and among Grace, Grace-Conn.
and Sealed Air dated as of _____ (the "TSA").

         In this connection, we have reviewed: (i) the Certificate of
Incorporation and By-laws of each of Grace, Grace Conn., New Grace, Packco, and
Merger Sub, as currently in effect and as they are proposed to be amended prior
to the Distribution; (ii) the Agreements; (iii) certain resolutions adopted by
the Board of Directors of each of Grace, New Grace, Grace-Conn. and Sealed Air;
and (iv) such other documents, records and papers as we have deemed necessary or
appropriate in order to give the opinions set forth herein. For purposes of the

opinion set forth below, we have relied, with the consent of Grace and Grace-Conn. and with the consent of Sealed Air, upon the accuracy and completeness of the statements and representations (which statements and representations we have neither investigated nor verified) contained, respectively, in the Tax Matters Certificates of the officers of Grace, Grace-Conn., Packco and Sealed Air (copies of which are attached hereto and which are incorporated herein by reference), which certificates we have assumed will be complete and accurate as of the Effective Time. We have assumed the authenticity of all documents submitted to us as originals and the conformity to original documents of all documents submitted to us as copies.

We have also assumed that the transactions contemplated by the Agreements will be consummated in accordance with the provisions of the Agreements and the exhibits thereto and that the Merger will qualify as a statutory merger under the applicable laws of the State of Delaware. We have also assumed that no "5-percent shareholder", within the meaning of Section 1.367(e)-1T of the Treasury Regulations, will receive shares of New Grace in the Distribution of New Grace by Grace.

Based upon such examination and review and subject to the foregoing, it is our opinion that, under presently applicable provisions of the Internal Revenue Code of 1986, as amended (the "Code"), and the rules and regulations promulgated thereunder:

1. Each of the Distributions will be a transaction described in Section 355(a), and the Packco and New Grace Contributions will each be a reorganization described in Section 368(a)(1)(D) of the Code, and accordingly:

(a) No gain or loss will be recognized by the shareholders of Grace solely by reason of the Distributions; and

(b) Pursuant to Section 355(c) and Section 361(c), no gain or loss will be recognized by either Grace or Grace-Conn. pursuant to Section 311 of the Code solely by reason of the Distributions, the New Grace Contribution or the Packco Contribution.

2. No gain or loss will be recognized by Grace or its shareholders, solely as a result of Grace's issuance of preferred stock pursuant to the recapitalization of Grace immediately prior to the Merger.

We render no opinion as to the federal income tax consequences to the shareholders of Grace of the recapitalization of Grace immediately prior to the Grace Merger nor as to the consequences of the Distributions, the New Grace Contribution and the Merger under any other provisions of the Code (including Section 482) or state, local or foreign income tax laws.

This opinion may not be applicable to Grace shareholders who received their Grace Common Stock pursuant to the exercise of employee stock options or otherwise as compensation or who are not citizens or residents of the United States.

We are furnishing this opinion solely in connection with the transactions contemplated by the Agreements, and it is not to be relied upon, used, circulated, quoted, or otherwise referred to for any other purpose or by any other party without our consent.

We hereby consent to the filing of this opinion as an exhibit to the Registration Statement on Form S-4, including any post-effective amendments thereof, of Grace relating to the Merger. In addition, we consent to the reference to us under the captions "The Reorganization and Merger," "The Distribution and Merger Agreements" and "Legal Matters" in the Joint Proxy Statement/Prospectus, dated as of February __, 1998. In giving such consent, we do not admit that we are in the category of persons whose consent is required under Section 7 of the Securities Act of 1933, as amended.

Very truly yours,


WACHTELL, LIPTON, ROSEN & KATZ

```
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-23.1
<SEQUENCE>7
<TEXT>
```

EXHIBIT 23.1

CONSENT OF PRICE WATERHOUSE LLP

We hereby consent to the use in the Joint Proxy Statement/Prospectus constituting part of this Registration Statement on Form S-4 of W. R. Grace & Co. of our report dated November 3, 1997 relating to the Special-Purpose Combined Financial Statements of W. R. Grace & Co. and its packaging business, which appears in such Joint Proxy Statement/Prospectus. We also consent to the references to us under the headings "Experts" and "Grace Packaging Selected Special-Purpose Combined Financial Data" in such Joint Proxy Statement/Prospectus. However, it should be noted that Price

XXX-002498

Waterhouse LLP has not prepared or certified such "Grace Packaging Selected
Special-Purpose Combined Financial Data."

/s/ Price Waterhouse LLP
- -----------------------
PRICE WATERHOUSE LLP

Fort Lauderdale, Florida
February 12, 1998


                      CONSENT OF PRICE WATERHOUSE LLP

We hereby consent to the incorporation by reference in the Joint Proxy
Statement/Prospectus constituting part of this Registration Statement on Form
S-4 of our report dated February 3, 1997 appearing on
page F-3 of W. R. Grace & Co.'s Annual Report on Form 10-K for the year ended
December 31, 1996.  We also consent to the incorporation by reference of our
report on the Financial Statement Schedule, which appears on page F-2 of such
Annual Report on Form 10-K.

/s/ Price Waterhouse LLP
- -----------------------
PRICE WATERHOUSE LLP

Fort Lauderdale, Florida
February 12, 1998
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-23.2
<SEQUENCE>8
<TEXT>


                                                     Exhibit 23.2



                    Consent of KPMG Peat Marwick LLP


We consent to the use of our reports dated January 20, 1997 on the consolidated
financial statements and related schedule of Sealed Air Corporation and
subsidiaries as of December 31, 1996 and 1995, and for each of the years in the
three-year period ended December 31, 1996 incorporated by reference in the
Joint Proxy Statement/Prospectus constituting part of this registration
statement and to the reference to our firm under the heading "Experts" in such
Joint Proxy Statement/Prospectus.


 /s/  KPMG Peat Marwick LLP
- --------------------------
     KPMG Peat Marwick LLP

Short Hills, New Jersey
February 13, 1998
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-24.1
<SEQUENCE>9
<TEXT>


                                                     EXHIBIT 24.1


                    FORM OF POWER OF ATTORNEY

          The undersigned hereby appoints ROBERT H. BEBER, LARRY
ELLBERGER and ROBERT B. LAMM as his/her true and lawful attorneys-in-
fact for the purpose of signing a registration statement under the Securities
Act of 1933, and all amendments thereto, to be filed with the Securities and
Exchange Commission with respect to the issuance of securities of W.R. Grace &
Co., a Delaware corporation, in connection with a transaction between such
corporation and Sealed Air Corporation.  Each of such attorneys-in-fact is
appointed with full power to act without the other.



            -----------------------------
                 (Signature)

XXX-002499

```
--------------------------------
(Printed Name)
```

Dated:
```
--------------------
```
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-99.1
<SEQUENCE>10
<DESCRIPTION>FORM OF SEALED AIR PROXY
<TEXT>

                                             Exhibit 99.1


FORM OF SEALED AIR CORPORATION PROXY

                    THIS PROXY IS SOLICITED BY THE BOARD OF DIRECTORS

        For the Special Meeting of Stockholders of Sealed Air Corporation to be
held at 11:00 a.m. local time on March 23, 1998 at Saddle Brook Marriott, Garden
State Parkway at I-80, Saddle Brook, New Jersey 07663.

        The undersigned appoints T.J. Dermot Dunphy, William V. Hickey and H.
Katherine White, or a majority of them as shall act (or if only one shall act,
then that one) (the "Proxy Committee"), proxies with power of substitution to
vote all the common stock of Sealed Air Corporation registered in the name of
the undersigned at the Special Meeting of the Stockholders of Sealed Air
Corporation to be held on March 23, 1998 and at any adjournments. The Proxy
Committee is directed to vote as indicated on the reverse side.

                                    Change of address/comments:

                                    --------------------------------

                                    --------------------------------

                                    --------------------------------
                                    (If you have written in the
                                    above space, please mark the
                                    corresponding box on the
                                    reverse side.)

PLEASE MARK, DATE AND SIGN YOUR PROXY ON THE REVERSE
SIDE AND MAIL IN THE ENCLOSED ENVELOPE.  NO POSTAGE IS
REQUIRED.  THE PROXY COMMITTEE CANNOT VOTE YOUR
SHARES UNLESS YOU SIGN AND RETURN THIS CARD.  THIS PROXY
WILL BE VOTED AS INDICATED ON THE REVERSE SIDE.

Please let us know if you plan to attend the Special Meeting:

        I plan to attend |_|                    I do not plan to attend |_|

                    SEE REVERSE
                        SIDE


| X |   Please mark your votes as in this example.
---


   THE BOARD OF DIRECTORS RECOMMENDS A VOTE FOR PROPOSAL 1. IF NO CHOICE IS
   SPECIFIED, THIS PROXY WHEN PROPERLY SIGNED AND RETURNED WILL BE VOTED FOR
   PROPOSAL 1. PLEASE DATE AND SIGN AND RETURN PROMPTLY.


   1.  Adoption and approval of the Agreement and      FOR    AGAINST   ABSTAIN
       Plan of Merger dated as of August 14, 1997,
       among W. R. Grace & Co., Sealed Air            |  |   |   |     |   |
       Corporation and a wholly owned subsidiary of    ---      ---       ---
       W. R. Grace & Co., and the agreements that
       are exhibits thereto, as supplemented or
       modified from time to time.

       Please mark this box if you have noted a change of address or any
       comments in the space on the reverse side of this card.    |  |
                                                                    ---

   The signer hereby revokes all proxies previously given by the signer to
   vote at the Special Meeting and any adjournments and acknowledges receipt
   of the Joint Proxy Statement/Prospectus dated February 13, 1998.

   SIGNATURE(S)_____ DATE_____

   NOTE: Please sign EXACTLY as name appears on reverse side. When signing
   on behalf of a corporation, estate, trust or another stockholder, please
   give its full name and state your full title or capacity or otherwise
   indicate that you are authorized to sign.

XXX-002500

```
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-99.2
<SEQUENCE>11
<DESCRIPTION>FORM OF GRACE PROXY
<TEXT>
```

Exhibit 99.2

FORM OF GRACE PROXY

### THIS PROXY IS SOLICITED BY THE BOARD OF DIRECTORS

For the Special Meeting of Stockholders of W. R. Grace & Co., to be held at 10:00 A.M. on March 20, 1998, at Grace's headquarters at One Town Center Road, Boca Raton, Florida.

The undersigned hereby appoints Larry Ellberger and Robert B. Lamm as agents to act and vote on behalf of the undersigned at the Special Meeting of Stockholders of W. R. Grace & Co. to be held on March 20, 1998, and any adjournments or postponements. As more fully described in the Joint Proxy Statement/Prospectus for the Special Meeting, such agents (or their substitutes) are directed to vote as indicated on the reverse side.

PLEASE MARK, DATE AND SIGN YOUR PROXY ON THE REVERSE SIDE. PLEASE LET US KNOW WHETHER YOU PLAN TO ATTEND THE SPECIAL MEETING.

I PLAN TO ATTEND  |_|                    I DO NOT PLAN TO ATTEND   |_|

STOCKHOLDER QUESTIONS/COMMENTS:
- --------------------------------------------------------------------
- --------------------------------------------------------------------

(SEE REVERSE SIDE)

Please mark      | X |
your votes as in  ---
this example

THE DIRECTORS RECOMMEND A VOTE FOR PROPOSALS 1 AND 2. IF NO CHOICE IS SPECIFIED, THE SHARES WILL BE VOTED FOR PROPOSALS 1 AND 2. PLEASE DATE AND SIGN AND RETURN PROMPTLY.

| | | FOR | AGAINST | ABSTAIN |
|---|---|---|---|---|
| 1. | Approval and adoption of (a) the Agreement and Plan of Merger dated as of August 14, 1997 among W. R. Grace & Co., Sealed Air Corporation and a wholly owned subsidiary of W. R. Grace & Co., and the agreements that are exhibits thereto, as supplemented or modified from time to time, and (b) the reorganization, merger and other transactions contemplated thereby, including: | \|_\| | \|_\| | \|_\| |

    a.   the spin-off of Grace Specialty Chemicals, Inc. to Grace stockholders;
    b.   certain amendments to the Amended and Restated Certificate of Incorporation of W. R. Grace & Co.;
    c.   the recapitalization of Grace common stock; and
    d.   the issuance of common stock to Sealed Air stockholders in the merger.

| | | FOR | AGAINST | ABSTAIN |
|---|---|---|---|---|
| 2. | Approval and adoption of the amendment to W. R. Grace & Co.'s Amended and Restated Certificate of Incorporation repealing certain provisions that require a supermajority vote by Grace stockholders to amend or repeal. | \|_\| | \|_\| | \|_\| |

Date:_____  Signature:_____    Signature:_____

Please sign EXACTLY as name or names appear above. When signing on behalf of a corporation, estate, trust or another stockholder, please give its full name and state your full title or capacity or otherwise indicate that you are authorized to sign.

(See reverse side for comments)

```
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-99.3
```

XXX-002501

```
<SEQUENCE>12
<DESCRIPTION>CONSENT OF DLJ SECURITIES CORP
<TEXT>
```

[DONALDSON, LUFKIN, JENRETTE LETTERHEAD]
CONSENT OF DONALDSON, LUFKIN & JENRETTE SECURITIES CORPORATION


Board of Directors
Sealed Air Corporation
Park 80 East
Saddle Brook, New Jersey  07663

We hereby consent to the inclusion of our opinion letter, dated August
14, 1997, to the Board of Directors of Sealed Air Corporation ("Sealed Air") as
Annex C to the Joint Proxy Statement/Prospectus which forms a part of the
Registration Statement on Form S-4 relating to the merger of Sealed Air, W.R.
Grace & Co. and Packco Acquisition Corp. and to the references therein to
Donaldson, Lufkin & Jenrette Securities Corporation under the captions
"Summary-Opinion of Financial Advisor," "The Reorganization and Merger-
Background," "The Reorganization and Merger-Information and Factors Considered
by the Sealed Air Board," and "Role of Financial Advisors- Opinion of Sealed Air
Financial Advisor." In giving such consent, we do not admit that we come within
the category of persons whose consent is required under, and we do not admit
that we are "experts" for purposes of, the Securities Act of 1933, as amended,
and the rules and regulations promulgated thereunder.


New York, New York
February 13, 1998

                              DONALDSON, LUFKIN & JENRETTE
                              SECURITIES CORPORATION


                              By: /s/ Hoyt Davidson
                                  ---------------------
                                  Name: Hoyt Davidson
                                  Title: Managing Director


```
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-99.4
<SEQUENCE>13
<DESCRIPTION>CONSENT OF MERRILL LYNCH & CO.
<TEXT>
```

                                             EXHIBIT 99.4


                              CONSENT OF
                           MERRILL LYNCH & CO.


We hereby consent to the use of our name and to the description of our
opinion letter, dated August 14, 1997, under the caption "Role of Financial
Advisors; Opinion of Grace Financial Advisors" in, and to the inclusion of such
opinion letter as Annex D to, the Joint Proxy Statement/Prospectus of Sealed Air
Corporation and W. R. Grace & Co., which Joint Proxy Statement/Prospectus is
part of the Registration Statement on Form S-4 of W. R. Grace & Co. By giving
such consent, we do not thereby admit that we are experts with respect to any
part of such Registration Statement within the meaning of the term "expert" as
used in, or that we come within the category of persons whose consent is
required under, the Securities Act of 1933, as amended, or the rules and
regulations of the Securities and Exchange Commission promulgated thereunder.


                              /s/ Merrill Lynch & Co.
                              MERRILL LYNCH & CO.

New York, New York
February 13, 1998


```
</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-99.5
<SEQUENCE>14
<DESCRIPTION>CONSENT OF CREDIT SUISSE FIRST BOSTON
<TEXT>
```

XXX-002502

EXHIBIT 99.5

CONSENT OF
CREDIT SUISSE FIRST BOSTON CORPORATION

We hereby consent to the use of our name and to the description of our
opinion letter, dated August 14, 1997, under the caption "Role of Financial
Advisors; Opinion of Grace Financial Advisors" in, and to the inclusion of such
opinion letter as Annex D to, the Joint Proxy Statement/Prospectus of Sealed Air
Corporation and W. R. Grace & Co., which Joint Proxy Statement/Prospectus is
part of the Registration Statement on Form S-4 of W. R. Grace & Co. By giving
such consent, we do not thereby admit that we are experts with respect to any
part of such Registration Statement within the meaning of the term "expert" as
used in, or that we come within the category of persons whose consent is
required under, the Securities Act of 1933, as amended, or the rules and
regulations of the Securities and Exchange Commission promulgated thereunder.

/s/ Credit Suisse First Boston
Corporation

CREDIT SUISSE FIRST BOSTON CORPORATION

New York, New York
February 13, 1998

</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-99.6
<SEQUENCE>15
<DESCRIPTION>CONSENTS OF PERSONS NAMED AS FUTURE DIRECTORS
<TEXT>

Exhibit 99.6

CONSENTS OF PERSONS NAMED AS FUTURE DIRECTORS

The undersigned hereby consent to the inclusion of their names in the Joint
Proxy Statement/Prospectus constituting a part of this Registration Statement on
Form S-4 as persons to become directors of W. R. Grace & Co. ("Grace"), which
will be renamed "Sealed Air Corporation", upon consummation of the merger of
Packco Acquisition Corp., a wholly-owned subsidiary of Grace, with and into
Sealed Air Corporation.

/s/  John K. Castle
- ---------------------------------------        February 13, 1998
         John K. Castle

/s/  Lawrence Codey
- ---------------------------------------        February 13, 1998
         Lawrence Codey

/s/  T.J. Dermot Dunphy
- ---------------------------------------        February 13, 1998
         T.J. Dermot Dunphy

/s/  Charles F. Farrell
- ---------------------------------------        February 13, 1998
         Charles F. Farrell

/s/  David Freeman
- ---------------------------------------        February 13, 1998
         David Freeman

/s/  Alan H. Miller
- ---------------------------------------        February 13, 1998
         Alan H. Miller

/s/  R.L. San Soucie
- ---------------------------------------        February 13, 1998
         R.L. San Soucie

</TEXT>
</DOCUMENT>
</SEC-DOCUMENT>
-----END PRIVACY-ENHANCED MESSAGE-----

XXX-002503