IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | |

## ANDERSON MEMORIAL HOSPITAL'S MOTION TO COMPEL
## DEBTORS TO PROVIDE FULL AND COMPLETE DEPOSITION ANSWERS

Anderson Memorial Hospital ("Anderson ") hereby moves the Court for an Order compelling Debtors ("Grace") to provide full and complete responses to Anderson's deposition questions of three witnesses, to wit: Grace's Chief Financial Officer, Hudson LaForce; Grace's General Counsel, Mark Shelnitz; and Grace's feasibility expert, Pamela Zilly. As set forth below, Grace has most recently frustrated Anderson's discovery efforts by deliberately and improperly instructing these witnesses not to respond to deposition questions.

### I. BACKGROUND

By the time the Plan Proponents filed their September 19, 2008 Joint Plan of Reorganization ("Plan"), Anderson represented all present non-settled traditional PD claimants pending in this Court. Of course, in considering the feasibility of the Plan, this Court also "must evaluate the possible effect of a debtor's ongoing civil case with a potential creditor, whether that litigation is pending at the trial level or on appeal." In re Harbin, 486 F.3d 510 (9th Cir. 2007). Anderson and other traditional PD claimants have appeals pending involving thousands of buildings.

In a dialogue with the PD Committee's counsel at the January 14, 2009 omnibus hearing, the Court for the first time applied confirmation deadlines to present PD claimants (i.e. Anderson) who would later object to the Plan. Subsequently, on January 29, 2009, the Court entered its Second Amended Case Management Order ("Second Amended Plan CMO") setting

Anderson Memorial's Motion to Compel.DOCX

forth these deadlines. [Doc. 20728]. Among other things, the Second Amended Plan CMO set May 20, 2009 as the last date PD claimants could object to the still not filed First Amended Joint Plan of Reorganization ("First Amended Plan") and established June 15, 2009 as a discovery cut off for all Phase II issues except feasibility.

On March 13, 2009, Anderson filed its preliminary witness list, in which it specifically listed Grace's asbestos estimator, Dr. Tom Florence, and Grace's General Counsel, Mark Shelnitz. [Doc. 21003]. Anderson also filed its Objections to the Amended Plan on May 20, 2009, in which it asserted, *inter alia*:

> The Debtors' Plan cannot be confirmed because it violates the fundamental tenet of "equality of treatment" required of any bankruptcy plan, it fails to afford creditors in the same class the same treatment, it improperly classifies creditors who are subjected to disparate treatment in the same class, it improperly releases third parties, it is not proposed in good faith, and it does not comply with the requirements of the Bankruptcy Code. [Doc. 21782 at 1].

Thereafter, on May 21 and 29, 2009, Anderson noticed the depositions of Dr. Florence and Mr. Shelnitz. As chronicled elsewhere,[1] as a result of Grace's shenanigans, Anderson was prohibited from taking these two depositions until August 11 and 19, 2009, respectively. In addition, Grace delayed the depositions of its Chief Financial Officer, Hudson LaForce, and its Feasibility Expert, Pam Zilly – both of which were requested by other objectors at least as early as April 16, 2009 – until August 6 and 20, 2009, respectively.

## II. STATEMENT OF FACTS

In three recent depositions, Grace has instructed its corporate and expert witnesses not to answer Anderson's questions as follows:

---

[1] Anderson Memorial Hospital's Response to Debtors' Motion For a Protective Order and Objections to Anderson Memorial's Notice of Deposition of Mark Shelnitz (July 13, 2009) [DI 22436].

A.  **Feasibility**

1.  **Hudson LaForce**

Hudson LaForce, Grace's Chief Financial Officer, testified that Grace had made projections for future non-ZAI property damage claims/payments and that they came from Grace's attorneys. *Deposition of Hudson LaForce, August 6, 2009 at 15, 70 and 81*. These projections were contained in Exhibit 3, "W.R. Grace & Co. and Subsidiaries Five Year Financial Model" dated June 1, 2009. This is the only sum reserved for non-ZAI future property damage payments. *Id. at 135*. He understood what these projections pertained to and had a limited understanding of how they were determined. *Id. at 69-70, 97*. However, he was instructed not to answer:

- What it pertains to. *Id. at 69-70.*
- What it represents. *Id. at 80-81.*
- Whether it included payment for unresolved present claims (Solow and Anderson). *Id.* at 98-99.

2.  **Pamela Zilly**

Pamela Zilly, Grace's feasibility expert, testified that she did not consider what effect future asbestos property damage claims might have on the issue of plan feasibility. *Deposition of Pamela Zilly, August 19, 2009 at 40*. Instead she relied exclusively upon a the same five-year financial projection (Exhibit 3) which had been provided to her by Grace and which set forth: "on page 8 of the balance sheet, there is a number of $37.3 million, which is the estimate of the payment of property damage claims in the future." *Id. at 25, 26, 27 and 38*. She assumed that these projections were reasonable because "the company would have the best knowledge as to what the reasonableness of that number would be." *Id. at 30, 38*. She also testified that Grace's counsel, Mark Shelnitz had given her a general understanding of how this amount was calculated

or estimated. *Id. at 28-30*. She was then instructed not to answer how Grace's future property damage projection was calculated or estimated. *Id. at 29*.

### 3. Mark Shelnitz

Of the 50 instructions not to answer, 47 of them were made in the deposition of Grace's General Counsel, Mark Shelnitz. When the issue of how this projection for future asbestos property damage claims was broached, Mr. Shelnitz repeatedly was not allowed to answer anything about that issue except that he was aware of what it represented. *Deposition of Mark Shelnitz, August 20, 2009 at 142*. Instructions not to answer were made to the following questions:

- What projections were made for unresolved and future traditional property damage claims. *Id. at 129*.

- Whether the projections are in the report [Exhibit 8]. *Id.*

- What the $37.3 million figure is for. *Id. at 139*.

- Whether he knows what it is for. *Id.*

- What the elements of that $37.3 million number are. *Id. at 154-56*.

- Whether it came from inside of Grace or outside of Grace. *Id. at 156*.

- Whether the assumptions that were used in making those projections included assumptions that future property damage claims would be barred by the Statutes of Limitations or the bar date order. *Id. at 161-163*.

- What the $37.3 million figure is composed of. *Id. at 154-156*.

- Whether there are several numbers that went into that number or it represents one item. *Id.*

- What the elements of the $37.3 million amount for future traditional property damage claims are. *Id.*

- Whether the $37.3 million figure came from inside of Grace or outside of Grace. *Id.*

- Whether for purposes of the assumptions that went into the financial projections that Grace supplied to Pam Zilly, which she relied upon, and whether Grace made the assumption that future PD claims would be barred by the Statutes of Limitations or the bar date order. *Id. at 162-163.*

Mr. Shelnitz was also instructed not to answer other questions that relate as well to the issue of feasibility. Those were as follows:

- Was he aware before he became General Counsel that a reserve had been made on the Anderson Hospital by Mr. Beber. *Id. at 90.*

- Whether Grace has attempted to project future traditional PD claims. *Id. at 107-108.*

- Why Grace has not attempted to quantify future PD claims. *Id. at 107-108.*

- Whether as General Counsel for Grace, he has a belief as to the magnitude of future traditional PD claims. *Id.*

- Whether the plan is feasible. *Id.*

- What Grace's position is on the total value of the personal injury claims. *Id. at 110.*

- What Grace's position is on the total value of traditional PD claims. *Id.*

- Whether he attended a meeting in June of 2009 with lenders where feasibility of the plan was discussed. *Id. at 122.*

- Whether he has ever discussed traditional property damage claims with the lender group. *Id. at 122.*

- What the projection was that they arrived at for payment of resolved and future traditional PD claims. *Id. at 129.*

- Whether that information is in a report. *Id.*

- What portion of the $1.7 billion carried on Grace's books for asbestos liabilities to date was set aside, reserved or estimated for asbestos property damage even though Mr. LaForce stated that Mr. Shelnitz would know the answer, LaForce at 25. *Id. at 129-131.*

- Whether Grace has any projections of what liability it might have if the Court's denial of the certification of the Anderson class is reversed. *Id. at 141-142.*

- Whether Grace has projected what exposure and liabilities it might have if the property damage bar order date is reversed. *Id. at 141-142.*

B. **Good Faith**

Finally, Mr. Shelnitz was instructed not to answer questions that relate to the issue of good faith, despite the fact that in a discussion with the Court on Grace's Motion for Protective Order (which Grace later withdrew), the Court expressed the view that would be an appropriate area of inquiry.[2] Those included the following:

- The names of the people who were involved in the process of reviewing property damage claims filed in response to the bar date. *Id. at 88.*

- Was he aware before he became General Counsel that a reserve had been made on the Anderson Hospital by Mr. Beber. *Id. at 90.*

- Whether he had discussed with Mr. Finke his deposition testimony. *Id. at 91.*

- Whether he was the person who told Mr. Finke not to return the stipulation. *Id. at 94-97.*

---

[2] Transcript of Hearing (July 27, 2009) at 43-44.

Anderson Memorial's Motion to Compel.DOCX                    6

- Whether when he took over as general counsel, Grace decided to go in a different direction regarding property damage claims. *Id. at 94-97.*

- Whether he was involved in objections made to the Speights & Runyan claims in 2005. *Id. at 94-97.*

- What his involvement was in that process. *Id. at 94-97.*

- Which members of the PI Committee were involved in settlement discussions. *Id. at 94-97.*

- Whether he met with anybody other than Kirkland and Ellis at a deposition preparation meeting. *Id. at 99.*

- Whether he examined any documents during his deposition preparation other than those discussed with Mr. Pasquale. *Id. at 99.*

- Whether he was involved in the process of developing procedures for treating present traditional PD claimants and future PD claimants. *Id. at 101-102.*

- Whether he participated in the decision to make a distinction in the treatment between present traditional PD claimants and future PD claimants. *Id. at 101-102.*

- Whether he had any discussions with Judge Sanders or Alan Rich regarding the treatment of future traditional PD claims. *Id. at 103-104.*

- When was the last time he talked to Judge Sanders. *Id. at 103-104.*

- When was the last time he talked to Mr. Rich. *Id. at 104-105.*

- Who he negotiated with regarding the ZAI negotiations. *Id. at 111.*

- Whether he negotiated with the Asbestos Property Damage Committee. *Id. at 111.*

- Why he settled the ZAI claims given the Court's ruling during the science trial. *Id. at 111*.

- Whether he has investigated the statements that Mr. Solomons has made in his affidavit. *Id. at 114*.

- Whether it would have been inappropriate for Mr. Bernick to smear Mr. Speights and all property damage claimants because Mr. Bernick believed it was in Grace's best interests to do so. *Id. at 115*.

- Whether Anderson was ever mentioned in negotiations on the ZAI settlement. *Id. at 141-142*.

- Whether Anderson was ever mentioned in the negotiations of the PI settlement. *Id. at 142*.

- Whether the PI Committee encouraged Grace to make objections to S&R Claims. *Id. at 143-144*.

### III. ARGUMENT

Rule 30(c)(2) provides, *inter alia*:

> A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce the limitation ordered by the court, or to present a motion under Rule 30(d)(3).

The comments to this section in the Federal Civil Rules Handbook (2008) are as follows:

> Instruction Not to Answer
>
> Directions to a witness not to answer a question are only allowed in three narrow circumstances: to claim a privilege (i)(e) (attorney client communication); to enforce a court directive limiting the scope or length of the deposition; or to suspend the deposition for purposes of a motion under Rule 30(d)(3) relating to improper harassing conduct. Thus, it is inappropriate for counsel to instruct the witness not to answer a question on the basis of relevance, on the basis that the question has been asked and answered, is harassing, or on the basis that the question is outside the areas of inquiry identified in the notice of deposition for a Rule 30(b)(6) deposition of a party representative.

Federal Civil Rules Handbook (2008) at 714.

Anderson Memorial's Motion to Compel.DOCX                           8

Anderson has cataloged Grace's instructions as set forth above. The burden of proof is on Grace to justify its instructions. Anderson reserves the right to respond to any justification(s) Grace provides for its actions.

## IV. CONCLUSION

The Court should strike Grace's Instructions and direct Grace to produce all three witnesses for completion of their depositions at a time and location designated by Anderson.

DATED: August 28, 2009

_____
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:   (302) 654-0248
Facsimile:   (302) 654-0728
E-mail:      loizides@loizides.com

Daniel A. Speights (SC Fed. ID No. 4252)
C. Alan Runyan (SC Fed ID No. 3683)
SPEIGHTS & RUNYAN
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC  29924
Telephone:   (803) 943-4444
Facsimile:   (803) 943-4599

- and -

John W. Kozyak
David L. Rosendorf
KOZYAK TROPIN & THROCKMORTON PA
2525 Ponce de Leon, 9th Floor
Coral Gables, FL  33134
Telephone:   (305) 372-1800
Facsimile:   (305) 372-3508

*Counsel for Anderson Memorial Hospital*