# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - -

In Re:                          : Chapter 11
                                :
                                : Case No.
W.R. GRACE & CO., et al, : 01-01139 JKF
                                :
                                : (Jointly
                Debtors    : Administered)


- - -


Thursday, June 11, 2009


- - -


        Oral deposition of JAY W.
HUGHES, JR., ESQUIRE, taken pursuant to
notice, was held at the offices of
KIRKLAND & ELLIS, 665 Fifteenth Street,
NW, Washington, DC  20005, commencing at
9:07 a.m., on the above date, before Lori
A. Zabielski, a Registered Professional
Reporter and Notary Public in and for the
Commonwealth of Pennsylvania.

- - -

MAGNA LEGAL SERVICES
Seven Penn Center
1635 Market Street
8th Floor
Philadelphia, Pennsylvania 19103

```
 1   APPEARANCES:
 2
 3   LEWIS SLOVAK KOVACICH, P.C.
     BY:  TOM L. LEWIS, ESQUIRE
 4   725 Third Avenue North
     Great Falls, Montana  59401
 5   406.761.5595
     (tom@lsklaw.net)
 6   Representing the Libby Claimants
 7
 8   COHN WHITESELL & GOLDBERG, LLP
     BY:  DANIEL C. COHN, ESQUIRE
 9   101 Arch Street
     Boston, Massachusetts 02110
10   617.951.2505
     (cohn@cwg11.com)
11   Representing the Libby Claimants
12
13   KIRKLAND & ELLIS, LLP
     BY:  BARBARA M. HARDING, ESQUIRE
14   655 Fifteenth Street, N.W.
     Washington, DC  20005-5793
15   202.879.5081
     (barbara.harding@kirkland.com)
16   Representing the Debtors and Witness
17
18   KIRKLAND & ELLIS, LLP
     BY:  THEODORE L. FREEDMAN, ESQUIRE*
19       (*VIA TELECONFERENCE)
     601 Lexington Avenue
20   New York, New York  10022
     212.446.4800
21   (theodore.freedman@kirkland.com)
     Representing the Debtors
22
23
24
```

```
 1    APPEARANCES (continued)
 2
 3    THE LAW OFFICES OF JANET S. BAER, P.C.
      BY:  JANET S. BAER, ESQUIRE
 4    70 West Madison Street
      Suite 2100
 5    Chicago, Illinois  606002
      312.641.2162
 6    Representing the Debtors
 7
 8    SPEIGHTS & RUNYAN
      BY:  DANIEL H. SPEIGHTS, ESQUIRE*
 9        (*VIA TELECONFERENCE)
      200 Jackson Avenue East
10    P.O. Box 685
      Hampton, South Carolina  29924
11    803.943.4444
      (dspeights@speightsrunyan.com)
12    Representing Anderson Memorial Hospital
13
14
      DRINKER BIDDLE & REATH, LLP
15    BY:  MICHAEL F. BROWN, ESQUIRE
      One Logan Square
16    18th & Cherry Streets
      Philadelphia, Pennsylvania  19103-6996
17    215.988.2988
      (brownmf@dbr.com)
18    Representing OneBeacon America Insurance
      Company, Seaton Insurance Company,
19    Government Employees Insurance Company,
      Republic Insurance Company n/k/a Starr
20    Indemnity & Liability Company
21
22
23
24
```

```
 1    APPEARANCES (continued)
 2
 3    CAPLIN & DRYSDALE, CHARTERED
      BY:  JEFFREY A. LIESEMER, ESQUIRE
 4    One Thomas Circle N.W.
      Suite 1100
 5    Washington, DC  20005
      202.862.7801
 6    (jal@capdale.com)
      Representing Grace, Official Committee of
 7    Asbestos Personal Injury Claimants
      ("ACC")
 8
 9
      ANDERSON KILL & OLICK, P.C.
10    BY:  ROBERT M. HORKOVICH, ESQUIRE*
           (*VIA TELECONFERENCE)
11    1251 Avenue of the Americas
      New York, New York 10020
12    212.278.1322
      (rhorkorvitz@andersonkill.com)
13    Representing the ACC
14
15    SIMPSON THACHER & BARTLETT, LLP
      BY:  ELISA ALCABES, ESQUIRE*
16         (*VIA TELECONFERENCE)
      425 Lexington Avenue
17    New York, New York  10017-3954
      212.455.3133
18    (ealcabes@stblaw.com)
      Representing Travelers Casualty and
19    Surety Company
20
21    VORYS, SATER, SEYMOUR AND PEASE, LLP
      BY:  PHILIP F. DOWNEY, ESQUIRE*
22         (*VIA TELECONFERENCE)
      52 East Gay Street
23    Columbus, Ohio  43215
      330.208.1152
24    (pdowney@vorys.com)
```

```
 1    APPEARANCES (continued)
 2
 3    MENDES & MOUNT, LLP
      BY:  EILEEN T. McCABE, ESQUIRE
 4    750 Seventh Avenue
      New York, New York  10019
 5    212.261.8262
      (eileen.mccabe@mendes.com)
 6    Representing AXA Belgium as Successor to
      Royale Belge SSA
 7
 8
      MENDES & MOUNT, LLP
 9    BY:  ALEXANDER MUELLER, ESQUIRE
      750 Seventh Avenue
10    New York, New York  10019-6829
      212.261.8296
11    (alexander.mueller@mendes.com)
      Representing London Market Companies
12
13
      FORD MARRIN ESPOSITO & WITMEYER & GLESER
14    BY:  ELIZABETH M. DeCRISTOFARO, ESQUIRE
      Wall Street Plaza
15    New York, New York  10005-1875
      212.269.4900
16    Representing Continental Casualty Company
      and Continental Insurance Company
17
18
      STROOCK & STROOCK & LAVAN, LLP
19    BY:  KENNETH PASQUALE, ESQUIRE*
             (*VIA TELECONFERENCE)
20    180 Maiden Lane
      New York, New York  10038-4982
21    212.806.5400
      (kpasquale@stroock.com)
22    Representing Official Committee of
      Unsecured Creditors
23
24
```

```
 1    APPEARANCES (continued)
 2
 3    CROWELL & MORING, LLP
      BY:   NOAH S. BLOOMBERG, ESQUIRE*
 4          (*VIA TELECONFERENCE)
      1001 Pennsylvania Avenue NW
 5    Washington, DC  20004-2595
      202.624.2913
 6    (nbloomberg@crowell.com)
      Representing Fireman's Fund Insurance
 7    (Surety Bond)
 8
 9    STEVENS & LEE, P.C.
      BY:   MARNIE E. SIMON, ESQUIRE
10    1818 Market Street, 29th Floor
      Philadelphia, Pennsylvania  19103-1702
11    215.751.2885
      (mes@stevenslee.com)
12    Representing Fireman's Fund Insurance
13
14    ECKERT SEAMANS CHERIN & MELLOTT, LLC
      BY:   EDWARD J. LONGOSZ, II, ESQUIRE
15    1747 Pennsylvania Avenue, NW
      12th Floor
16    Washington, DC  20006
      202.659.6619
17    (elongosz@eckertseamans.com)
      Representing Maryland Casualty and Zurich
18
19
      WILEY REIN, LLP
20    BY:   RICHARD A. IFFT, ESQUIRE
      1776 K Street NW
21    Washington, DC  20006
      202.719.7520
22    (rifft@wileyrein.com)
      Representing Maryland Casualty and Zurich
23
24
```

```
 1    APPEARANCES (continued)
 2
 3    COZEN O'CONNOR
      BY:  JACOB C. COHN, ESQUIRE
 4    1900 Market Street
      Philadelphia, Pennsylvania  19103-3508
 5    215.665.2147
      (jcohn@cozen.com)
 6    Representing Federal Insurance Company
 7
 8    ORRICK HERRINGTON & SUTCLIFFE, LLP
      BY:  PERI N. MAHALEY, ESQUIRE
 9    Columbia Center
      1152 15th Street, N.W.
10    Washington, DC  20005-1706
      202.339.8516
11    (pmahaley@orrick.com)
      Representing Future Claimants
12    Representative
13
14    CUYLER BURK, P.C.
      BY:  STEFANO V. CALOGERO, ESQUIRE
15    Parsippany Corporate Center
      4 Century Drive
16    Parsippany, New Jersey  07054
      973.734.3200
17    (scalogero@cuyler.com)
      Representing Allstate Insurance Company
18
19
      WILSON ELSER MOSKOWITZ EDELMAN & DICKER,
20    LLP
      BY:  CARL PERNICONE, ESQUIRE
21    150 East 42nd Street
      New York, New York  10017-5639
22    212.915.5656
      (carl.pernicone@wilsonelser.com)
23    Representing Arrowood Indemnity Company
24
```

```
 1   APPEARANCES (continued)
 2
 3   O'MELVENY & MYERS, LLP
     BY:   TANCRED SCHIAVONI, ESQUIRE
 4   Times Square Tower
     7 Times Square
 5   New York, New York 10036
     212.326.2267
 6   (tschiavoni@omm.com)
     Representing Arrowood Indemnity Company
 7
 8
     WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
 9   BY:   KEVIN J. MANGAN, ESQUIRE
     222 Delaware Avenue
10   Suite 1501
     Wilmington, Delaware  19801
11   302.252.4361
     (kmangan@wcsr.com)
12   Representing State of Montana
13
14   PEPPER HAMILTON, LLP
     BY:   LINDA J. CASEY, ESQUIRE
15   3000 Two Logan Square
     Philadelphia, Pennsylvania  19103
16   215.981.4000
     (caseyl@pepperlaw.com)
17   Representing BNSF Railway Company
18
                    -   -   -
19
20
21
22
23
24
```

```
 1                    -   -   -

 2                   I  N  D  E  X

 3                    -   -   -

 4

 5   Testimony of:

 6          JAY W.  HUGHES, JR., ESQUIRE

 7
```

```
 8   By Mr. Lewis              Page   13,  424

 9   By Mr. Mangan             Page   211

10   By Ms. Casey              Page   240

11   By Mr. Brown              Page   296,  479

12   By Mr. Jacob Cohn         Page   344

13   By Ms. Simon              Page   358

14   By Ms. McCabe             Page   360

15   By Mr. Schiavoni          Page   361,  483

16   By Mr. Ifft               Page   380

17   By Ms. DeCristofaro       Page   386

18   By Ms. Alcabes            Page   388

19   By Mr. Speights           Page   397

20   By Mr. Downey             Page   418
```

```
21

22

23

24
```

```
 1                        -   -   -
 2                   E X H I B I T S
 3                        -   -   -
 4    NO.    DESCRIPTION                      PAGE
 5    Hughes-1
              Monthly Asbestos Litigation
 6            Summary - March                 86
 7    Hughes-2
              Letter dated 3/27/01 to
 8            Allan McGarvey from Terry
              MacDonald                       168
 9
      Hughes-3
10            Exhibit 4 to Exhibit Book
              Trust Distribution Procedures   211
11
      Hughes-4
12            Documents bearing Bates stamps
              GCO 000023 through 000026       242
13
      Hughes-5
14            Documents bearing Bates stamps
              GCO 000081 through 000091       254
15
      Hughes-6
16            Document bearing Bates stamp
              GCO 000174                      257
17
      Hughes-7
18            Documents bearing Bates stamps
              GCO 000111 through 000112       275
19
      Hughes-8
20            Document bearing Bates stamp
              GCO 000173                      280
21
      Hughes-9
22            Document bearing Bates stamp
              GCO 000140                      281
23
24
```

```
 1    EXHIBITS (continued)
 2
      NO.    DESCRIPTION                    PAGE
 3
      Hughes-10
 4           Documents bearing Bates stamps
             GCO 000207 through 000215    282
 5
      Hughes-11
 6           Letter dated 4/25/09 to Counsel
             from Barbara Harding with
 7           attachment                   296
 8    Hughes-12
             Exhibit 6 to Exhibit Book
 9           Asbestos Insurance Transfer
             Agreement                    299
10
      Hughes-13
11           Document bearing Bates stamp
             GCO 000219                   362
12
      Hugbhes-14
13           Documents bearing Bates stamps
             GCO 000199 through 000200    367
14
      Hughes-15
15           Exhibit 5 to Exhibit Book
             Schedule of Settled Asbestos
16           Insurers Entitled to 524(g)
             Protection                   479
17
18                    -   -   -
19
20
21
22
23
24
```

```
 1                       -   -   -

 2          DEPOSITION SUPPORT INDEX

 3                       -   -   -

 4

 5   Direction to Witness Not to Answer:

 6   Page    Line            Page      Line

 7   408     22

 8

 9

10   Request for Production of Documents:

11   Page    Line            Page      Line

12   NONE

13

14

15   Stipulations:

16   Page    Line            Page      Line

17   NONE

18

19

20   Area(s) Marked Confidential:

21   Page    Line            Page      Line

22

              (Mr. Speights dropped of

23                teleconference from:)

24   285     01      to    299       24
```

```
 1              result of -- somehow the

 2              inspections breached that duty,

 3              and they are entitled to

 4              compensation and damages as a

 5              result of the breach.

 6    BY MR. MANGAN:

 7              Q.    And do those allegations

 8    form the basis for the State's claims for

 9    contribution indemnification against

10    Grace?

11              A.    Yes, they are related to the

12    claims.

13              Q.    And will you agree with me

14    that the State of Montana has filed a

15    timely proof of claim within this

16    bankruptcy case?

17                   MS. HARDING:  Object to the

18              form.

19                   MR. LIESEMER:  Object to the

20              form.

21                   MS. HARDING:  And with

22              respect to the respect it calls

23              for a legal conclusion.

24                   If you can answer, go ahead.
```

```
 1                    THE WITNESS:  My
 2           understanding is that it had, but,
 3           again, I would be more comfortable
 4           if we could verify that.  But yes.
 5  BY MR. MANGAN:
 6           Q.   But you are aware that the
 7  State has filed a proof of claim?
 8           A.    It's my understanding that
 9  the State has filed a proof of claim.
10           Q.    How are the claims of State
11  of Montana for contribution
12  indemnification being treated under the
13  Plan?
14                    MS. HARDING:  I am just
15           going to object to the extent that
16           this witness wasn't designated for
17           that purpose.  Mr. Finke was, and
18           I think he's testified, as has
19           Mr. Lockwood and other folks.
20                    But to the extent you know,
21           go ahead.
22                    THE WITNESS:  Well, they are
23           treated as asbestos personal
24           injury claims, and within the
```

```
 1              asbestos personal injury claim,

 2              there are asbestos derivative

 3              claims.  And they would be

 4              channelled to the Trust and

 5              treated in accordance with the

 6              Trust Distribution Procedures.

 7              There are provisions of the Trust

 8              Distribution Procedures that deal

 9              with derivative asbestos claims.

10  BY MR. MANGAN:

11         Q.   Would that be Section 5.6?

12         A.   I believe so.

13         Q.   Let me mark as an exhibit or

14  it already has been marked.  Excuse me.

15  Hughes-3.  Could you take a look at that?

16         A.   Sure.

17         Q.   Could you identify what

18  Hughes-3 is, sir?

19         A.   It's Exhibit 4 to the

20  Exhibit Book, it says here, with I

21  believe the Plan, and it's a copy of the

22  Trust Distribution Procedures that are

23  part of the proposed Plan in the Grace

24  bankruptcy.
```

```
 1          Q.    Okay.  And I believe you had
 2   testified earlier that you have reviewed
 3   that in preparation of this deposition?
 4          A.    Yes.
 5          Q.    And I think you had
 6   testified to this, but I just want to be
 7   clear.  You did not draft this; is that
 8   correct?
 9          A.    Yes.
10          Q.    You only reviewed it?
11          A.    Yes.
12          Q.    And who was the draftsman of
13   this document?
14               MS. HARDING:  Object to form
15          and foundation.
16               To the extent that you know,
17          go ahead.
18               THE WITNESS:  I don't know
19          specifically who was the
20          draftsman.  I think Peter
21          Lockwood, when he testified, may
22          have provided more information
23          about that.
24   BY MR. MANGAN:
```

```
 1              Q.    Does the Plan or the TDP
 2    make any distinction between contribution
 3    indemnification claims versus personal
 4    injury, wrongful death, or property
 5    damage claims?
 6              MS. HARDING:  Object to
 7              form.  The Plan speaks for itself.
 8              To the extent that you
 9              know...
10              THE WITNESS:  Well, it
11              certainly has -- 5.6 deals with
12              indirect PI Trust claims, so there
13              is certainly some provisions that
14              recognize a difference between,
15              you know, direct claims, personal
16              injury plaintiffs and injured
17              parties, and claims that arise
18              from some sort of obligation of
19              Grace to indemnify parties or
20              contribution claims.
21    BY MR. MANGAN:
22              Q.    Would you consider Montana's
23    claims of a different nature than a
24    typical personal injury, wrongful death
```

```
 1    or property damage claim?
 2                MS. HARDING:  Objection,
 3          calls for a legal conclusion.
 4                MR. LIESEMER:  I join in the
 5          objection.
 6                THE WITNESS:  Again, I agree
 7          with those who have objected that
 8          it calls for a legal conclusion,
 9          but they are certainly different.
10          The State of Montana is the State
11          of Montana, and individual
12          claimants are individual
13          claimants.
14    BY MR. MANGAN:
15          Q.   To your understanding, are
16    the Montana claims based on different
17    acts from the types of claims which other
18    asbestos PI claims relate?
19          A.   I don't know what you mean
20    by different acts.
21                MS. HARDING:  Object the
22          form.
23                MR. LIESEMER:  Object to
24          form.
```

```
 1              MS. HARDING:  Again, I think
 2         it calls for a legal conclusion.
 3    BY MR. MANGAN:
 4         Q.    You testified earlier that
 5    you believe that claims were based on a
 6    failure to warn; is that correct?
 7              MS. HARDING:  Object to
 8         form, and I think it --
 9              THE WITNESS:  I don't think
10         I said that.
11              MS. HARDING:  I don't think
12         he said anything about a failure
13         to warn.
14              THE WITNESS:  Do you mean
15         the claims against State of
16         Montana?
17    BY MR. MANGAN:
18         Q.    Yes, sir.
19         A.    I thought I said the State,
20    in exercising its right to power to
21    regulate the operations of Grace in
22    Montana, undertook to inspect the
23    facilities, and as a result of that
24    activity, they had duties vis-a-vie the
```

```
 1    employees in that it's alleged that there
 2    is a breach of these duties, whether it
 3    be a failure to warn or other things of
 4    things.  I don't know I said anything
 5    about that.  And I don't know the
 6    details.
 7              MS. HARDING:  And I am just
 8         going to object to the extent that
 9         this witness is being asked to
10         characterize other claimants'
11         claims and issues that can be
12         readily read from a document that
13         describes the claim.
14              I don't know what relevance
15         it has to have this witness
16         characterize somebody else's
17         claims in light of the fact that
18         we are trying to get out of here.
19              But go ahead.
20              MR. MANGAN:  I will be
21         brief.
22              MS. HARDING:  I am trying to
23         let him answer everything.
24              MR. MANGAN:  Thank you.  And
```

```
 1              I just want to note that I believe
 2              he was identified with regard to
 3              claims, specifically the claims of
 4              the State of Montana and other
 5              BNSF and MCC, as well as others.
 6              So to the extent --
 7                   MS. HARDING:  Let's just go
 8              on.  He's certainly not identified
 9              to be the lawyer for anybody else
10              but W.R. Grace.
11                   MR. MANGAN:  Fair enough.
12                   MS. HARDING:  Go ahead.  I
13              am not trying to be difficult.
14     BY MR. MANGAN:
15              Q.    What is your understanding
16     how contribution indemnification claims
17     would be eventually paid pursuant to the
18     Trust?  In what form would the payment
19     take?
20                   MS. HARDING:  Object to
21              form.
22                   MR. LIESEMER:  Object to
23              form.
24                   MS. HARDING:  The document
```

```
 1              speaks for itself, and it calls
 2              for speculation.
 3                   But go ahead.
 4                   THE WITNESS:  I am not sure
 5              I understand the question.  What
 6              do you mean by what form?
 7  BY MR. MANGAN:
 8         Q.   Would contribution
 9  indemnification claims be paid through
10  cash payment or stock or some other form
11  of payment?
12         A.   I think they would be paid
13  pursuant to the Trust Distribution
14  Procedure, and I think the people are
15  paid in cash generally.
16         Q.   At what point in time
17  pursuant to the Trust Distribution
18  Procedures would a contribution
19  indemnification claim be made?
20              MS. HARDING:  Object to
21         form.  It calls for speculation.
22              THE WITNESS:  Pardon?
23  BY MR. MANGAN:
24         Q.   Within the TDP, at what
```

```
 1    point in time would payments be made to

 2    avail a contribution indemnification

 3    claim?

 4              MS. HARDING:  I am just

 5         going to object to form.  I think

 6         to the extent the document

 7         addresses that, it speaks for

 8         itself.  I am just not sure I

 9         understand the question.

10              But go ahead, if you

11         understand.

12              THE WITNESS:  I am not sure

13         I understand.  I think as a

14         general rule, it would be when the

15         indirect personal injury -- the

16         holder of the indirect personal

17         injury claim, its liability to the

18         underlying claimant and it would

19         become, for lack of a better term,

20         fixed.

21    BY MR. MANGAN:

22         Q.   Okay.  Claims under the TDP,

23    are they processed on a

24    first-in/first-out basis?
```

```
 1                  MS. HARDING:  Object to
 2           form.
 3                  THE WITNESS:  Generally,
 4           there is a first-in/first-out
 5           process, but the Trust
 6           distribution procedure describes
 7           in much more detail.  There is a
 8           lot of exceptions and different
 9           kind of -- the details of how the
10           first-in/first-out queue operates.
11   BY MR. MANGAN:
12           Q.   Is that also true for when
13   claims would be paid under the Trust?
14           A.   Again, the document speaks
15   for itself, but, yes, there are
16   differences when claims would be paid.
17           Q.   Is it fair to say that
18   claims that are, as you said, fixed
19   earlier in the process would be paid
20   earlier than other claims later in the
21   process?
22                  MR. LIESEMER:  Object to
23           form.
24                  MS. HARDING:  Object to
```

```
 1              form.
 2                   THE WITNESS:  You will have
 3              to ask the question again.
 4    BY MR. MANGAN:
 5              Q.    Is it fair to say that
 6    claims under the Trust that are made
 7    under the Trust, they could be paid at an
 8    earlier time than other claims that start
 9    in the process later?
10                   MS. HARDING:  Object to
11              form.
12                   THE WITNESS:  I think there
13              is that possibility, but, again, I
14              think the agreement in the Trust
15              Distribution Procedures in the
16              document speak for themselves.
17    BY MR. MANGAN:
18              Q.    Is it your understanding
19    that any of the claims that Montana might
20    have against the Debtor for their
21    contribution indemnification are based on
22    independent conduct on the part of the
23    State?
24                   MR. LIESEMER:  Object to the
```

```
 1              form, legal conclusion.
 2                   MS. HARDING:  Object to the
 3              form.  It calls for a legal
 4              conclusion.
 5                   THE WITNESS:  It's based on
 6              the -- they are based on the
 7              State's conduct, and I think that
 8              the Montana Supreme Court decision
 9              is probably where you -- it
10              defines that conduct and defines
11              the legal basis for the claims
12              against the State.
13  BY MR. MANGAN:
14              Q.   Does the Trust make any
15  distinction between claims that would be
16  derivative as opposed to claims that
17  might not otherwise be derivative?
18              A.   You will have to ask the
19  question again.  I am not sure I
20  understand it.
21              Q.   I will strike that.
22                   Under 5.6 of the TDP, are
23  you familiar with that section, sir?
24              A.   Generally, yes.
```

```
 1              Q.    Okay.   And that's relating

 2     to the indirect PI Trust claims?

 3              A.    Yes.

 4              Q.    Is there a provision in

 5     there that these indirect claims would

 6     proceed or process in accordance with

 7     procedures to be developed at a later

 8     point in time?

 9                    MS. HARDING:  Object to

10              form.  Is there a particular

11              language you want him to look at?

12              It would just be helpful.

13                    MR. MANGAN:  Okay.  Let me

14              go back to that in a second.

15     BY MR. MANGAN:

16              Q.    If you could turn to page 32

17     of the Trust, Section 5.4(a), that's

18     relating to extraordinary claims.

19              A.    Yes.

20              Q.    Could you tell me what are

21     the requirements for a claimant to bring

22     an extraordinary claim?

23                    MS. HARDING:  Object to

24              form.
```

```
 1                    MR. MANGAN:  Generally.
 2                    MS. HARDING:  Do you want
 3          him to -- in his own words?
 4   BY MR. MANGAN:
 5          Q.    What is your understanding
 6   of that, sir?
 7          A.    My understanding is that
 8   there are people who -- excuse me --
 9   whose exposure occurred primarily at a
10   Grace facility or that at least 75
11   percent of their asbestos exposure was
12   the result of exposure to Grace products,
13   and to some other language about Grace
14   conduct for or conduct for which Grace
15   had legal responsibility.  And then there
16   is a subgroup that also requires 95
17   percent exposure to Grace products.
18          Q.    And is one of the conditions
19   also that there would be little
20   likelihood of substantial recovery
21   elsewhere?
22          A.    Yes.
23          Q.    What is meant by that term?
24                    MS. HARDING:  Object to
```

```
1            form.
2                  MR. LIESEMER:  Objection to
3            form.
4                  MS. HARDING:  And
5            foundation.
6   BY MR. MANGAN:
7            Q.   Are you familiar with that
8   phrase and why that was put into the
9   Trust?
10           A.    Yeah.  I mean, it's
11  logically consistent with the idea that
12  seven people who have 75 percent or 95
13  percent of their exposure to asbestos
14  from Grace products or conduct for which
15  Grace had legal responsibility, therefore
16  where these are primarily Grace exposure
17  cases, the logic behind that is that
18  Grace would therefore have a higher level
19  of responsibility for claims and,
20  therefore, these people are entitled to
21  additional compensation.
22                 If claims of this group, for
23  example, have 75 to 95 percent, if it
24  develops over the course of time, have
```

 1    other sources of compensation, then it

 2    seems to me the logic for these claims

 3    being treated as extraordinary claims --

 4    an individual claim collapses, and that's

 5    why that language is there.

 6              So you don't have a series

 7    of people coming in who have already been

 8    compensated, who are receiving

 9    substantial amounts of money from other

10    parties, being able to come in and claim

11    extraordinary claim status under the TDP.

12              But, again, all of this, all

13    of this is really a question about the

14    operations of the Trust, and the Trust

15    hasn't even been formed, let alone be in

16    operation.  And I think while the Trust

17    Distribution Procedures set forth kind of

18    a roadmap of what's going to happen, some

19    of these questions and some of your

20    questions really are questions that are

21    kind of operational.  And you would have

22    to see how it operates in practice once

23    the Trust is up and running.

24         Q.    So there are a lot of issues

```
 1   that need to be ironed out with

 2   operations of this Trust?

 3               MS. HARDING:  Object to

 4         form.

 5               THE WITNESS:  There is with

 6         any contract.  I think this is a

 7         fairly detailed one in an effort

 8         to kind of govern it.  But when

 9         you are setting up a Trust or any

10         process, the document can only do

11         so much.  Some of the specific

12         issues that come up are going to

13         have to be dealt with once the

14         Trust becomes operational.

15   BY MR. MANGAN:

16         Q.   And who would be making

17   those decisions when the Trust becomes

18   operational?

19               MS. HARDING:  Object to

20         form, foundation, speculation, and

21         it's overly broad in terms of what

22         issues.

23               THE WITNESS:  The Trust.

24   BY MR. MANGAN:
```

```
 1          Q.    And the Trust is yet to be
 2    created, right?
 3          A.    Yes.
 4          Q.    If you could flip to Section
 5    5.5, sir, Secondary Exposure Claims, do
 6    you see that section?
 7          A.    Yes.
 8          Q.    Does this provision relate
 9    to family members or does it also relate
10    to people who live in the community?
11                MR. LIESEMER:  Object to
12          form.
13                MS. HARDING:  Object to
14          form.  Again, the document speaks
15          for itself.
16                THE WITNESS:  I don't think
17          it would be necessary to relate it
18          to family members.  But in
19          virtually -- in most cases, it
20          would be, because I think it's
21          dealing with situations where the
22          individual who has exposure is the
23          result of proximity to another
24          individual, spouse, and therefore
```

```
 1              it's appropriate to use the same

 2              criteria in terms of just

 3              measuring their exposure to the

 4              exposure of the person to be a

 5              related occupationally exposed

 6              person.

 7                   So it doesn't have to be a

 8              family member, but I don't think

 9              it would necessarily be applicable

10              to a community member as I read

11              it.  But, again, others may

12              differ.

13   BY MR. MANGAN:

14              Q.   Do you know what was the

15   history of this provision in the Trust?

16   Are you familiar with that.

17                   MS. HARDING:  Object to

18              form.

19   BY MR. MANGAN:

20              Q.   How did this get into the

21   Trust?

22                   MS. HARDING:  And

23              foundation.

24                   THE WITNESS:  Well, I think
```