IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) <br> Jointly Administered |
| Debtors. | **Related Docket No. 22526** |
| | **Hearing Date: Sept. 8, 2009 at 11:00 a.m. (ET)** <br> **Objection Deadline: Sept. 1, 2009 at 4:00 p.m. (ET)** |

**ARROWOOD'S OBJECTIONS TO BNSF' CONFIRMATION
HEARING EXHIBIT LIST [DKT. NO. 22526]**

Arrowood[1] hereby objects to the exhibits identified by BNSF on its final confirmation hearing exhibits. Arrowood attaches as Appendix 1 a chart that identifies Arrowood's objections to each exhibit.[2] Many of the objections fall into the following categories:

1.      <u>Extrinsic Evidence of BNSF Policies</u>:  BNSF listed a collection of notes and letters mostly from the 1950s and 1960s as confirmation exhibits. *See* BNSF 24-82. Many do not bear signatures. *See, e.g.*, BNSF 51-52, 73. Most of the documents are not on letterhead. *See, e.g.,* BNSF 24-35, 37-38. The bulk of the documents predate the creation of The BNSF Company in September 1995. *See* BNSF 24-80. BNSF's two witnesses, Mr. Burrin and Ms. McKee, testified that these documents were collected as a result of a search by counsel.[3] They

---

[1] Arrowood Indemnity Company f/k/a Royal Indemnity Company ("Arrowood").

[2] In June, 2009, the Debtors entered into a settlement agreement with Arrowood and filed a motion with the Court seeking approval of this agreement. Pursuant to Section III(J) of the Grace/Arrowood Settlement Agreement, the parties agreed that Arrowood would suspend prosecution of objections to the Plan pending entry of a final order approving the Settlement Agreement and that in the interim any filing deadlines shall be deemed to have been tolled. In accordance with, and in express reliance on, this provision, Arrowood is not prosecuting objections to the Plan. Under the Settlement Agreement, Arrowood reserved all rights to respond to positions that Objectors such as the Libby Claimants took that were contrary to the Settlement Agreement.

[3] *See* McKee Dep. Tr. 40:8 - 41:21 ("Q. You got these from a lawyer outside the company, didn't you?  A. I would assume that's true, yes, sir.").

admitted that some or all of the documents were obtained from sources outside of BNSF.[4] Neither Mr. Burrin nor Ms. McKee were involved in the search so neither could identify where any individual document came from and they refused to disclose what counsel told them about where the documents came from.[5]

After the documents were collected from outside sources, the documents were put in BNSF's files.[6] When Ms. McKee was produced for her deposition in August 2006, she testified that these documents are in BNSF's files. Technically, this may be correct. At this moment, the documents may be in BNSF's files. However, Ms. McKee and Mr. Burrin have no idea where any individual document came from.[7] Indeed, Ms. McKee readily admitted at her deposition that any individual document may have only been placed in BNSF's files recently.[8] This is readily apparent from a review of the testimony excerpts presented in the chart for exhibits BNSF 24-82 that is attached hereto as Appendix 1.

Ms. McKee nor Mr. Burrin cannot offer any testimony the chain of custody of these documents prior to their submission as exhibits in this case.[9] Ms. McKee admitted that she did

---

[4] *See* McKee Dep. Tr. 46:3-11 (Q. And am I correct that you can't identify with specificity which of the documents on Exhibit-A were obtained through that search from BNSF files as opposed to files maintained by third parties other than BNSF, because you didn't participate in that search. A. I did not participate in the search, no, sir.").

[5] *See* McKee Dep. Tr. 42:19-44:3 (Q. "Okay. And what did Mr. Roberts tell you about where the source was of the documents that are in your files and that concern this case? A. [Mr Phillips] I instruct the witness not to answer").

[6] *See* McKee Dep. Tr. 39:21-40-16 ("Q. You got these from a lawyer outside the company, didn't you. A. I would assume that's true, yes, sir").

[7] *See* McKee Dep. Tr. 45:20-46:2 ("Q. And, Ms. McKee, am I correct that the documents that are listed on Exhibit-A are in your files as a result of a search that took place before you were manager of corporate policies and records? A. Yes, sir".)

[8] *See* McKee Dep. Tr. 82:12-19 ("Q. But there is no way for you to determine that documents that are listed on Exhibit-A, that any particular document wasn't sent to corporate services for filing as recently as, say, 2004, right? A. I couldn't tell you when it was sent there for filing".)

[9] *See* McKee Dep. Tr. 63:15-19 ("Q. And it's fair to say that you can't attest to the accuracy of any of the writings that are listed on Exhibit-A; is that right? A. No, I can't today.")

not review the bulk of the documents to determine whether they were in BNSF's files.[10] She acknowledged that she does not know who most of the authors and recipients are who are listed on the documents.[11] And she admitted that she has no idea whether any of the persons listed on the documents had authority to act on behalf of their respective companies.[12] This is not surprising since neither Ms. McKee nor Mr. Burrin worked at the Great Northern Railroad Company which was the company in existence during most of the period at issue.[13]

In short, neither of BNSF's witnesses can offer testimony sufficient to authenticate BNSF 24-82. These documents are inadmissible on grounds including: Authenticity (FRE 401), Hearsay (FRE 801, 802), Lack of Foundation (FRE 602).

2.   <u>Complaints</u>.  BNSF listed as confirmation hearing exhibits a number of complaints. *See* BNSF 85-279. These exhibits constitute inadmissible hearsay under FRE 801 and 802 and should not be admitted for the truth of the matter asserted. Arrowood does not object to their use for illustrative purposes during the examination of witnesses.

*   *   *

Arrowood further objects to any exhibits that have not been individually designated and identified. Arrowood reserves the right to supplement and modify these objections and to join in the objection.

---

[10]  *See* McKee Dep. Tr. 85:5-86:14("Q. So would it be fair to say that you can't be sure that's what's actually in the file in Fort Worth based on your search of the database on Friday is, in fact, the same document as marked as BNSF Exhibit-16B, right, because all you did was look at the description, right, and not the actual document?  A.  For roughly half of these documents, I pulled the physical document. This is not one of the ones that I pulled the specific document, so that is correct.")

[11]  *See* McKee Dep. Tr. 53:7-11 ("Q. Is it fair to say that you don't know who many of the individuals are that are listed on Exhibit-A?  A.  I don't know who all of them are, no.")

[12]  *See* McKee Dep. Tr. 52:1-53:6 ("Whether they had authority to bind, I wasn't asked to know that or what the rules governing signature authority would be.")

[13]  *See* Burrin Dep. Tr. 97:3-8 ("I never worked for the Great Northern Railroad Company.") and McKee Dep. Tr. 8:16-23 ("I joined [BNSF] June 5, 2006…Prior to that, I worked for Walco International")

## **CONCLUSION**

WHEREFORE, for the reasons explained above, Arrowood respectfully objects to each of the exhibits identified on Appendix 1.

| | |
|---|---|
| Dated: September 1, 2009<br>Wilmington, Delaware | By: /s/ Garvan F. McDaniel<br>Garvan F. McDaniel, Esq. (#4167)<br>BIFFERATO GENTILOTTI LLC<br>800 N. King Street, Plaza Level<br>Wilmington, DE  19801<br>Telephone: (302) 429-1900<br>Facsimile: (302) 429-8600<br><br>-and-<br><br>Carl J. Pernicone, Esq.<br>WILSON, ELSER, MOSKOWITZ<br>EDELMAN & DICKER, LLP<br>150 East 42nd Street<br>New York, NY 10017-5639<br>Telephone: (212) 490-3000<br><br>-and-<br><br>Tancred Schiavoni, Esq.<br>O'MELVENY & MYERS LLP<br>7 Times Square<br>New York, New York<br>Telephone: (212) 326-2267<br><br>*Counsel to Arrowood Indemnity Company, f/k/a Royal Indemnity Company* |