IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Related to Docket No. 20872**

## NOTICE OF FILING OF DEBTORS' CHART SUMMARIZING FINAL OBJECTIONS TO ITS FIRST AMENDED JOINT PLAN OF REORGANIZATION

**PLEASE TAKE NOTICE** that on September 2, 2009, the Debtors filed the

attached Chart Summarizing Final Objections To Its First Amended Joint Plan of Reorganization

(the "Chart").

Dated: September 2, 2009

KIRKLAND & ELLIS LLP
Theodore L. Freedman
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
(212) 446-4800

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
70 W. Madison, Suite 2100
Chicago, IL. 60602
(312) 641-2162

- and -

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile:   (302) 652-4400

*Co-Counsel to the Debtors and Debtors in Possession*

**FINAL OBJECTIONS TO W.R. GRACE JOINT CHAPTER 11 PLAN**

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| **I.** | **PHASE I ISSUES[1]** | | |
| **A.** | **ISSUES RELATED TO THE IMPACT OF PLAN ON INSURERS AS INSURERS[2]** | | |
| 1. | Plan is not insurance neutral because it alters and impairs the insurers' contractual rights under their policies and Asbestos Insurance Reimbursement Agreements to evaluate, defend and settle PI claims and it violates contractual rights under applicable law.  Therefore, the Plan does not satisfy the requirements of 1129(a)(3).  It also violates § 1129(a)(1). | Fireman's Fund Objection (¶¶ 25-27); Phase II Br. (pp. 5-6)<br><br>GEICO Objection (¶¶ 25-30); Phase II Br. (pp. 15-18)<br><br>CNA Objection (p. 6); Phase II Br. (pp. 32-33)<br><br>Federal Objection (¶¶ 16-34)<br><br>AXA Belgium Objection | § 7.15 expressly preserves all insurers' rights.  To the extent this complaint has any validity, it has been preserved as a coverage defense, a treatment that the Third Circuit found appropriate in *Combustion Engineering*. *See* Phase I Trial Brief at 27-28.<br><br>§§ 1123(a)(5) and 524(g) and persuasive precedent dictate that the Plan does not violate any consent-to-settlement, cooperation, management-of-claims or no-action provisions. *See* Phase II Insurance Brief at 25. |

---

[1]    Under the Third Amended Case Management Order Phase I included: (i) whether the Plan improperly affects the rights of Debtors' insurers (in their capacity as insurers, but not creditors); (ii) the standing of Debtors' insurers (in their capacity as insurers, but not creditors, to litigate confirmation objections that involve issues other than those described in section (i) herein provided, however, that the Plan Proponents shall not challenge the standing of the insurers to the extent they are parties to Asbestos Insurances Reimbursement Agreements, to object to, in Phase II, the Plan's proposed treatment of the Asbestos Reimbursement Agreements under the Plan; and (iii)  the confirmation objections raised on behalf of and specific to lenders under the Pre-Petition Credit Facilities and other Class 9 creditors with respect to Impairment.

[2]    The Plan Proponents are in negotiations with the insurers with respect to revised insurance neutrality language.  These negotiations have not yet concluded.  These Objections relate to the current version of the Plan.  To the extent that the Plan Proponents and the insurers are able to reach agreement on revised insurance neutrality language, these Objections may be moot.

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | (pp. 3-4); Joinder to Fireman's Phase II Br. (p. 3) | |
| 2. | Plan is not insurance neutral in that § 7.15 of the Plan is unintelligible or otherwise confusing with respect to insurers' rights.<br><br>CNA, in particular, questions whether insurance neutrality is "swallowed" because Asbestos Insurer Coverage Defenses under § 1.1.16 of the Plan "do not include any defense that (i) the Plan or any of the Plan Documents do not comply with the Bankruptcy Code." | GEICO Objection (¶¶ 19-24); Phase II Br. (pp. 7-10)<br><br>CNA Objection (pp. 9-11)<br><br>Federal Objection (¶¶ 31-34) | The super-preemptory language of § 7.15 makes it explicitly clear that the plan shall not impair any Asbestos Insurance Entity's legal, equitable or contractual rights. *See* Phase I Trial Brief at 8-11. |
| 3. | § 7.15 of the Plan does not appear to preserve insurance neutrality because § 8.1.1 discharges all Claims of "any nature whatsoever," and § 7.13 also casts doubt on whether the Debtors obligations remain undiminished and/or are transferred to the Trust. | *Allstate Objection (pp. 4-6)[3]*<br><br>Federal Objection (¶¶ 21-23)<br><br>CNA Objection (pp. 8-13); Phase II Br. (p. 33) | Neither §§ 7.13 nor 8.1.1 or any other provision of the Plan excuse the Debtors from their obligations. *Id.* at 16. |
| 4. | To obtain insurance neutrality, the language used in *Combustion Engineering* must be mirrored. Here, the Plan is not neutral because the Asbestos Insurance | *London Objection (¶¶ 26-32)* | The Plan's insurance neutrality language mirrors *Combustion Engineering* with changes made to address the unique issues raised by |

---

[3]  Settlement agreements with Allstate, London Insurers, Scotts Company, and Travelers (solely with respect to its Solow Bond) have been reached, and their approval is pending with the Court. If these settlement agreements are approved, these objections will be withdrawn. For ease of reference, these parties' objections have been italicized and are indicated in blue font.

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | Coverage Defenses are too restrictive. | | this case. |
| 5. | Parties should not have to pay to the Trust any amount in excess of the amount actually paid by the Trust to the holder of a claim. (cites *Fuller Austin*). | AXA Belgium Objection (p. 5); Joinder to Fireman's Phase II Br. (p. 3-4) <br><br> Zurich Objection (¶ 9); Phase II Br. (p. 5) <br><br> *Allstate Phase II Br. (p. 8)* | The Plan does not purport to impose reimbursement payments on the insurance companies on the basis of the liquidated value of the claims, making this objection groundless. *See* Phase II Insurance Brief at 31; § 7.2.2(d)(iv) of Plan. |
| 6. | Plan needs to clarify that there is no acceleration of any of the Asbestos Insurance Entity obligations. (cites *UNR*). Plan Proponents' denials that this could occur are not adequate. | Federal Objection (¶ 34, fn 10) | § 7.15 of the Plan leaves the insurers' rights unaltered. There is no need to amend the Plan to provide that something that is not in the Plan is not in the Plan. |
| **B.** | **IMPAIRMENT OF CLASS 9 CREDITORS** | | |
| 1. | In order for a class to be unimpaired, every claim in the class must be unimpaired. Here, the rights of some claimants have been altered. They should all get the rate of interest that they bargained for in the contract regardless of whether it is default or non-default interest because the Debtors are solvent. | GUCs' Objection (pp. 6-8) <br><br> Morgan Stanley Objection (¶¶ 11-16); 7/17/09 Supp. Br. (p. 2. 11-14) | Class 9 creditors are not entitled to interest at the default rate because solvency cannot be proven. Phase II Lender Brief at 12-15; 42-45. Even where a debtor is solvent, the appropriate rate of postpetition interest under the law is the federal judgment rate and not any contract rate applicable outside of bankruptcy. *Id.* at 35-41. To the extent a rate is a default rate, there must also be actual defaults. PP's Supplemental Br. on Morgan Stanley at 4. |
| 2 | Grace does not and cannot challenge the Bank Lenders' right to default interest under applicable state law. | Bank Lenders Objection (¶ 37-38); Lender and | The Credit Agreements implicitly incorporate and are subject to federal bankruptcy law. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | "There is simply no federal interest or any Bankruptcy Code provision or caselaw that permits a court to rewrite a contract so as to read valid state law property rights to default interest out of a contract entirely." Nor do state law property rights vanish in Bankruptcy. A contrary holding would violate the Supreme Court's mandate in *Butner*. | GUCs Phase II Br. (pp.32-24) | § 502 of the Code expressly disallows any post-petition interest. § 726(a)(5), the singular exception for unsecured creditors, allows post-petition interest at the federal judgment rate, if, and only if, the Lenders prove Grace is solvent. Phase II Lender Brief at 15-18. In any case, there have been no cognizable defaults that would trigger an entitlement to default interest. *Id.* at 18-35. |
| 3. | Plan violates § 1124(1) by classifying the Lenders' claims as unimpaired. The Lenders are impaired as their legal, equitable, and contractual rights are altered by failure to pay them interest at the contract default rate. | Bank Lenders Objection (¶¶ 15-39); Lender and GUCs Phase II Br. (pp. 19-34) | The Bank Lenders are not impaired by the Plan. They will be paid 100% of the allowed amount of their claims plus post-petition interest in excess of the contract non-default rate and federal judgment rate. There have been no cognizable defaults that would entitle the Lenders to a default rate of interest. *Id.* at 19-35.<br><br>In any case, the Code and not the Plan dictates that the Lenders are only entitled to interest at the federal judgment rate. Under PPIE, such statutory impairment is not impairment under § 1124(1). *Id.* at 35-41. |
| 4. | Because the dispute resolution procedures under § 3.1.9(d) are not appropriate, and the Plan fails to affirmatively state it will leave the legal, equitable, and contractual rate of creditors unaltered, it is unclear that they will be able to receive the full amount of post- | GUCs' Objection (pp. 11-12) | The Plan unequivocally provides for post-petition interest on all unsecured claims. Under § 3.1.9(b)(B), claimants without contracts or settlements will receive interest at the federal judgment rate of 4.19%. They are not legally entitled to more. *Id.* at 35-41. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | petition interest. | | § 3.1.9(d) is appropriate and assures non-impairment because it allows dissatisfied claimants to challenge the interest rate. *See* Phase II Main Brief at 114-15; § 3.1.9(d). |
| 5. | Morgan Stanley is impaired because it has elected to challenge the interest rate under § 3.1.9(d) of the Plan and will thus not receive post-petition interest on the effective date. § 1124(1) of the Code does not allow this. This treatment attempts to resuscitate § 1124(3) and the abrogated holding in *New Valley*. | Morgan Stanley 7/17/09 Supp. Br. (pp. 8-11) | If Grace is proven solvent, § 1124(1) requires that Morgan Stanley receive post-petition interest but does not require it receive post-petition interest on the effective date. The repeal of § 1124(3) and abrogation of *New Valley* do not do this either. |
| 6. | Whatever rate of post-petition interest the Court determines Morgan Stanley should receive, it may not be zero under § 1124(1). | Morgan Stanley 7/17/09 Supp. Br. (pp. 13-14) | By election, Morgan Stanley will receive post-petition interest at the rate the Court determines it is entitled under the law and the facts.[4] Under § 1124(1), this receipt of post-petition interest renders them unimpaired. *See* PP's Supp. Br. on Morgan Stanley at 3-4; *see also In re USG Corp.,* Case No. 01-2094 (JFK) (Bankr. D. Del. Mar 27, 2006). (approving such a procedure) |

---

[4]   The Plan Proponents have never argued that Morgan Stanley should not receive any post-petition interest but do not presume to dictate the proper rate of post-petition interest to the Court. Nor do the Plan Proponents take the position that any interest is mandated. This judgment properly rests with the Court.

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| **II.** | **PHASE II ISSUES[5]** | | |
| **A.** | **CLASSIFICATION ISSUES AND TREATMENT OF CLAIMS** | | |
| 1. | The claims of the following creditors are misclassified as Class 6 claims in violation of § 1122 which only allows "substantially similar" claims to be classified together. In most cases, they should be Class 9 claims: <br><br>(a) Longacre's claim, purchased from National Union which is substantially dissimilar to traditional tort claims and similar to the Morgan Stanley claim, which was properly reclassified as a Class 9 claims; <br><br>(b) Montana's contribution and indemnification claims; <br><br>(c) *Scotts' PI claims and insurance claims;* <br><br>(d) MCC's indemnity and contribution claims; <br><br>(e) Seaton OneBeacon's indemnity claims, which are, in fact contract claims and broader than the Class 6 tort claims; | Longacre Objection (¶¶ 8-18); Phase II Br. (pp. 5-11) <br><br> Montana Objection (pp. 6-7); Phase II Br. (pp. 19-21) <br><br> *Scotts Objection (¶¶ 46-48); Phase II Br. (pp. 30-31)* <br><br> MCC Objection (¶ 7); Phase II Br. (pp. 6-8) <br><br> Seaton OneBeacon Objection (¶ 33); Phase II Br. (pp. 13-16, 18-20) <br><br> National Union Objection | Each of these claims is a claim for reimbursement or indemnification which, if allowed to be asserted against Grace, would revive or re-open Grace's asbestos liabilities. <br><br> Accordingly, these claims are properly channeled to the Asbestos PI Trust under 524(g), and are properly classified together in Class 6 because these claimants' rights against the estate are fundamentally different from general unsecured claimants. Namely, they only have rights against the Trust and the claims arise from asbestos liabilities. *See* Phase II Main Brief at 47-63. |

---

[5]   Pursuant to the CMO, Phase II issues address the objections of: (i) parties classified under the Plan as Holders of Indirect PI or PD Trust Claims (including insurers as Holders of Indirect PI or PD Trust Claims with respect to such Claims); (ii) the objections of the Libby Claimants and (iii) any other confirmation objections not addressed and resolved in Phase I.

To the extent an Insurer is listed in this section, that Insurer only has standing to address these issues as a creditor. The Plan Proponents continue to object to the insurers standing, as insurers, to raise these objections.

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | (f) National Union's claim 9553 because it bargained for a release of potential secured status, and the claim is a pure contract claim;<br><br>*(g) Allstate's contractual indemnification claims, which should not be classified as "Asbestos PI Claims";*<br><br>(i) Fireman Fund's Surety Claim; and<br><br>(j) BNSF's Indirect PI Trust Claims which are not substantially similar to underlying asbestos claims and should be classified separately for voting purposes<br><br>(k) Travelers' various contingent unsecured claims are improperly classified in Class 6, 7A or 9 depending on the type of indemnification secured. They should all be classified and treated the same. | (pp. 2-3); Phase II Br. (pp. 3-4)<br><br>*Allstate Objection (pp. 8-9); Phase II Br. (p. 14)*<br><br>Fireman's Fund Surety Claim Objection (pp. 10-16); Phase II Surety Claim Br. (pp. 12-18)<br><br>BNSF Objection (¶ 63)<br><br>Travelers Phase II Br. (¶¶ 26-28) | |

7

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| 2. | The ACC and PI FCR have been representing the interests of tort claimants, but no one has been representing the interest of Indirect PI Trust Claims as class 6 claims. This further suggests that it is unfair to classify such claims as Class 6 claims. | Longacre Objection (¶ 14); Phase II Br. (p. 8) National Union Phase II Br. (p. 4) | Longacre and other similarly-situated creditors have been represented by their own counsel, and have had adequate opportunity to raise their objections and have their objections heard in Grace's chapter 11 case.  Moreover, Indirect PI Trust Claims are properly classified and properly channeled to the Trust and therefore have fundamentally different rights against the estate than the general unsecured creditors.  *See* Phase II Main Brief at 47-63. Further, the purpose of the PI Trust is to, among other things "use the PI Trust's assets and income to pay the holders of all PI Trust Claims...in such a way that such holders of PI Trust Claims are treated fairly, equitably, and reasonably..." *See* Plan Exhibit 2, Section 1.2. In that regard, the PI Trustees are three individuals who are independent parties who do not represent any party in these cases. |
| 3. | Plan may discriminate against Indirect PI Trust Claims by making them subject to disallowance on the ground that they constitute Demands. | CNA Objection (p.31); Phase II Br. at 20-22 | Indirect PI Trust Claims are not subject to disallowance on such grounds under the Plan. |

8

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| 4. | Plan discriminates against Indirect PI claimants by only allowing the trust to satisfy indemnity claims at a fraction of the price required by the controlling contracts. | Travelers Objection (¶¶ 25-27); Phase II Br. (¶¶ 11-20) | There is no basis for Travelers' assertion that it will have indemnification claims, as it will be protected by the section 105 injunction. *See* Phase II Insurance Brief at 32. Moreover, Class 6 has overwhelmingly accepted the Plan and the treatment therein. *See* Phase II Main Brief at 105-06. |
| 5. | Plan does not provide for fair and equitable treatment of indemnity claims that may arise and/or be liquidated after the Effective Date; thus, it fails to comply with §§ 1123(a)(4) and 1129(a)(3). | MCC Objection (¶ 8); Phase II Br. (pp. 8-9) | Indirect PI Trust Claims will receive the same treatment under the Plan as other claims in Class 6, and therefore the Plan satisfies 1123(a)(4). *See* Phase II Main Brief at 66-69. |
| 6. | Plan may subject Indirect PI Trust Claims to disallowance under 502(e) if they are unliquidated and contingent, thereby discriminating against such claims in violation of 524(g)(2)(B)(ii)(V).<br><br>Because the Plan Proponents have sought disallowance of the MCC Claims under 502(e), the Plan unfairly discriminates against MCC in violation of § 1123(a)(4). | CNA Objection (p. 31); Phase II Br. (pp. 20-22)<br><br>MCC Objection (¶ 13); Phase II Br. (pp. 10-12) | CNA's objection is groundless. Nowhere in the Plan or the TDPs is there any process for "disallowing" such claims, or any indication that such claims will be "disallowed" on this basis. See Phase II Main Brief at 68-69. Indirect PI Trust Claims will be paid in "substantially the same manner" as Direct PI Trust Claims. *Id.* at 69.<br><br>If the Plan is confirmed and MCC's claims are channeled to the Trust, the Debtors' objection to MCC's claims will be moot. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| 7. | Class 7A should be classified as impaired under § 1124(1) because equity is retained while interest is not being paid on claims. | Anderson Memorial Objection (pp. 19-21); Phase II Br. (pp. 27-30) | Class 7A Claims will be paid 100 cents on the dollar and thus are unimpaired under the Plan. Phase II Main Brief at 107-08. Pursuant to the PD CMO, the Court will determine the allowed amount of unresolved PD claims, including whether they will be entitled to interest. *See* Plan Exhibit 25. |
| 8. | Plan violates § 1122 because it groups the Bank Lenders' claims with substantially dissimilar claims of other unsecured creditors, whose claims may or may not be entitled to default interest. | Bank Lenders Objection (¶¶ 40-45) | § 1122 requires only that claims be "substantially similar," and does not require absolute homogeneity. Class 9 consists of unsecured claims of equal rank, and the classification of the Bank Lenders' claims in Class 9 is proper. Moreover, the Bank Lenders are not entitled to default interest. *See* Phase II Lender Brief at 15-35, 46-51. |
| 9. | Libby claims are not substantially similar to other claims in their class in violation of § 1122. Because of the nature of their injuries and the insurance coverage available to them alone, they should be separately classified. | Libby Objection (pp. 49-55); Phase II Br. (pp. 57-64) | Libby's claims are substantially similar to all other Class 6 claims because they are of the same legal character: they are unsecured, non-priority claims against the Debtors' estates that arise from personal injury caused by exposure to Grace's asbestos or asbestos-containing products. Phase II Libby Brief at 59-61.<br><br>Alleged differences, such as disease severity, speak to the weight of evidence and not the legal character of the claims. *Id.* There is also no insurance coverage that is available to Libby alone. *Id.* at 61-62. There can be no |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
|  |  |  | separate classification on these bases. *Id.* |
| 10. | Plan violates § 1123(a)(4) by providing different treatment to different claims in Class 9: Banks get 6.09% interest, environmental gets 4.19% interest, contract claims get the non-default contract rate, and "other" claims get 4.19% interest.  Everyone should get the same rate. | Morgan Stanley Objection (¶¶ 7-9) | All Class 9 claimants are treated the same because they are being paid their allowed claims in full and will receive post-petition interest at the rate provided for in each claimants' contract or agreement or as required by law.  Under § 1123(a)(4) itself, equal treatment does not require equal payment. *See* Phase I Brief at 50.<br><br>But it is true that unsecured creditors are only legally entitled to receive post-petition interest at the federal judgment rate. *See* Phase II Lenders' Brief at 35-41.  Plan Proponents are willing to pay everyone this rate if the Court determines it is inappropriate for some parties to receive more. |
| 11. | Plan violates the fundamental  principle of bankruptcy law that debtors are bound by their pre-petition non-executory contracts as it abrogates Travelers' right to receive payment in full of indemnity claims. | Travelers Objection (¶¶ 23-33); Phase II Br. (pp. 11-20) | There is no basis for Travelers' assertion that it will have indemnification claims, as it will be protected by the § 105 injunction. *See* Phase II Insurance Brief at 32.  In any case, any enforceable indemnification claims would be treated as obligations of the Trust under the transferred agreements, and Travelers will receive proper payment. *Id.* |
| 12. | Plan's classification scheme amounts to improper gerrymandering to avoid having to satisfy cramdown.  Class 9 is impaired and must be "crammed down" under | Morgan Stanley Objection (¶ 10)<br><br>Bank Lenders Objection | There has been no gerrymandering.  § 1129 does not apply because all Class 9 claimants receive an appropriate rate of post-petition |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | 1129(b). | (¶ 39) | interest, and none are impaired. *See* Section I.B. Nor is there any need for gerrymandering. The "cram down" standard of § 1129 is easily satisfied as the Plan is fair and equitable and does not unfairly discriminate. *See* Section II.G. |
| 13. | Plan violates 1123(a)(4) because it provides different treatment to claims in the same class for allowance, rights versus third parties, and the terms on which claims are paid. <br><br> (a) All Creditors in Class 7 should be treated equally as *Combustion Engineering* makes clear. <br><br> (b) The criteria for treating different PI claims differently, such as disease type, is not appropriate. | Anderson Memorial Objection (pp. 12-17; Phase II Br. (pp. 20-25) | (a) Anderson Memorial is not treated any differently than other unresolved Class 7A Asbestos PD Claimants. The Plan scrupulously provides the same treatment for unresolved Class 7A Asbestos PD Claimants by subjecting them all to the same PD CMO. Phase II Main Brief at 109. <br><br> (b) Anderson does not hold any PI claims, and therefore lacks standing to make this argument. |
| 14. | Plan violates § 1123(a)(4) by providing different treatment to PI claims based on inappropriate factors such as (a) the type of disease, (b) whether the claim is based on a jury verdict, (c) whether the claim is liquidated by the Trust, (d) whether the claim is for wrongful death, and (e) whether the claim is for compensatory or punitive damages. | Libby Objection (pp. 59-66); Libby Phase II Br. (pp. 70-81) | The TDP treats all Class 6 claims the same. The TDP's medical criteria, jury verdict caps, treatment of liquidated claims, treatment of wrongful death claims, and treatment of punitive damage claims applies equally to all Asbestos PI Claimants, including the Libby Claimants. *See* TDP §§ 1.1, 5.3, 7.4., 8.2; Phase II Libby Br. at 12-16, 71-81. |
| 15. | Sealed Air and Fresenius are inappropriately granted preferential treatment under the Plan in that they get protection from asbestos claims and attorneys fees unlike other contractual indemnity claims. Thus, the Plan | Seaton OneBeacon Objection (¶ 31-32); Phase II Br. (pp. 16-18) | Sealed Air and Fresenius' treatment is pursuant to settlement agreements approved by the Court or notice to all parties, including Seaton OneBeacon. Sealed Air and Fresenius |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | violates § 1123(a)(4). | | are making substantial contributions under these settlements. Thus, the Plan complies with § 1123(a)(4). Phase II Main Brief at 108-09. |
| 16. | PD CMO discriminates against and is directed almost exclusively at Anderson. *Solow* claim goes back to state court. Other PD claims go to District Court. PI Trust provides for lessened standards of proof and evidentiary burdens. | Anderson Memorial Objection (pp. 11-12); Phase II Br. (pp. 23-24) | Anderson Memorial is not treated any differently than other unresolved Class 7A Asbestos PD Claimants. The Plan scrupulously provides the same treatment for all unresolved Class 7A Asbestos PD Claimants by subjecting them all to the same PD CMO. Phase II Main Brief at 109. |
| 17. | Plan discriminates against Montana in violation of the Montana Constitution by providing for a distribution of stock to Montana, and inflicts a taking on BNSF without just compensation in violation of the U.S. Constitution | Montana Objection (pp. 19-20); Phase II Br. (p. 35)  BNSF Objection (¶ 44); Phase II Br. (pp. 18-21) | The Plan does not call for, and the Plan Proponents have not sought, any distribution of stock to Montana on account of its purported claims. Indeed, the Share Issuance Agreement cited by Montana will only be exercised upon an Event of Default, and even then the Trust may sell stock to raise cash to pay claims. *See* Plan Exhibit 20.  BNSF has no interest as an additional insured to Grace's insurance policies, and the Plan leaves unaltered BSNF's rights under policies issued in its name. *See* Phase II Main Brief at 57-58. Amendments to the Asbestos Entity Injunction and Asbestos PI Channeling Injunction will make this clear. |
| 18. | Plan provides for no meaningful opt out option for ZAI | Anderson Memorial | Anderson Memorial is not a ZAI claimant, and |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | Claimants -- opt outs should be able to address their claims outside of the ZAI TDP. | Objection (pp. 22-23); Phase II Br. (pp. 30-31) | has no standing to make this argument. Furthermore, pursuant to the Plan, Class 7B ZAI claimants were entitled to vote and overwhelmingly voted in favor of the Plan. The concept of opt-out is not relevant to the treatment of Class 7B ZAI PD Claims. |
| 19. | Libby Claimants have the right to have their claims allowed in accordance with applicable non-bankruptcy law. The failure to so provide makes the Plan unconfirmable. | Libby Objection (pp. 72-79); Libby Phase II Br. (p. 86) | Congress intended § 524(g) trusts to serve as a legal <u>alternative</u> to the tort system and to § 502 allowance proceedings.  Once confirmed, a 524(g) plan serves as a "new contract" between the debtors and their creditors, binding all creditors to its terms whether they voted to confirm it.  *See* § 1141(a); Phase II Libby Brief at 65-66. |
| 20. | Plan violates Libby's Seventh Amendment right to Jury Trial | Libby Objection (pp. 69-72); Phase II Trial Br. (pp. 82-86) | The Class has waived the right to trial by jury, and the Libby Claimants will be deemed to have waived that right, pursuant to §§ 524(g) and 1141(a). *Id.* at 66. |
| 21. | Plan violates § 1123(a)(4) by taking away Libby's insurance rights. | Libby Objection (pp. 67-68); Phase II Br. (pp. 80-81) | The Libby Claimants have no vested rights or rights of direct action against the insurance companies and no unique rights against the non-products insurance coverage.  In any case, all Asbestos Insurance Rights will be transferred to the Trust and preserved, where they will be asserted for the benefit of all Asbestos PI Claimants. *Id.* at 53.<br><br>Moreover, no asbestos PI claimant or class of |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | | claimants should have exclusive access to insurance policies in a § 524(g) case, to the detriment of other claimants. *Id.* at 54. |
| 22. | *If the Plan alters the creditors' indemnification rights, it violates § 365. To the extent, the settlement agreements are executory and being assumed, the Plan cannot impair the claims of those who are party to the agreements and assign them to the Trust.*<br><br>*If the settlement agreements are not executory, any provision of the Plan that precludes an argument by Allstate that the Plan's treatment of Grace's indemnification obligations constitutes a breach or an anticipatory breach of the settlement agreements violates § 1129.* | *Allstate Objection (pp. 6-8); Phase II Br. (pp. 13-14)* | *Asbestos Reimbursement Agreements are not executory contracts. See Phase II Insurance Brief at 20. Thus, these claims are properly classified. Moreover, Section 7.2.2(d)(iv), which transfers rights under Asbestos Reimbursement Agreements to the Trust, is mandated by the express preemptive language in §§ 1123(a), 524(g) and is likewise authorized by § 1123(b)(3)(5). See Phase II Insurance Brief at 24-26.* |
| 23. | *As an executory contract, the Trust can only transfer London's 1995 Asbestos Settlement to the Trust if the Debtor can comply with the requirements of § 365(b) concerning assumption and assignment of executory contracts.*<br><br>*Even if not executory, this transfer violates § 365(c)(1)(A) because applicable law excuses London from having to perform if the contract is assigned to the Trust.* | *London Objection (¶¶ 12-25); Phase II Br. (pp. 13-19)* | *Id.* |
| 24. | Debtors should not be permitted to use insurance policies that are not property of the estate to fund the Trusts. | Kaneb Objection (*see* several pleadings); Phase II Br. (pp. 6-7) | The Insurance Policies being transferred to the Trust are property of the estate. To the extent that Kaneb believes it has rights in any such policies or other insurance-coverage claims, |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | | those claims may be addressed by the appropriate court in the appropriate insurance-coverage litigation.  Phase II Main Brief at 149. |
| 25. | TDP discriminates against holders of Indirect PI Trust Claims by abrogating state law rights to join Grace in litigation as the responsible (or jointly responsible) party to lawsuits such as those being pursued by Libby Claimants, Scotts, and BNSF. The TDP should be modified to adopt the procedures adopted by the Manville Trust, which were negotiated in a process that included input from co-defendants.  This would give Indirect PI Claimants the option to (a) pursue contribution claims against the Trust or TDP or (b) receive a credit against any verdict in the tort system that would treat the Trust as a settled tortfeasor. | CNA Objection (pp. 30-32)  Garlock Sealing Phase II Br. (pp. 19-20) | Holders of Indirect PI Trust Claims may pursue a claim for indemnification or contribution against the Asbestos PI Trust, which claim will be treated equally to other claims in Class 6.  Thus, the Plan does not discriminate  *See* Phase II Main Brief at 66-69. |
| 26. | The Plan should provide for reimbursement of actions brought against insurers by PI Claimants. | Certain AIU Insurers (¶¶ 3-7) | Section 5.6 of the Asbestos PI TDP provides a clear process for resolution of indemnity claims.  *See* Phase II Main Brief at 28, 64-65. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| **B.** | **ALLEGED 524(g) VIOLATIONS** | | |
| 1. | The timing established by the Plan's TDP is flawed and violates § 524(g)(2)(B) as the Trust may only settle an Indirect PI Trust claims after the Indirect Claimant has paid the Trust's liability to the Direct Claimant. Parties cannot assert contribution and indemnification claims until liability of the underlying claim of failure to warn is established. | Montana Objection (pp. 20-24); Phase II Br. (pp. 28-31)<br><br>Garlock Sealing Objection (¶¶ 16-24)<br><br>MCC Phase II Br. (pp. 8-9)<br><br>CNA Phase II Br. (pp. 22-23) | The FIFO payment mechanism applies equally to all Asbestos PI Claims.  Also, the Asbestos PI TDP provides numerous protections to ensure that Asbestos PI Claims receive similar treatment regardless of where they fall in the FIFO queue, including the Payment Percentage.  *See* Phase II Main Brief at 70. |
| 2. | The Channeling Injunction violates § 524(g)(1)(B) because it fails to cover derivative claims asserted against BNSF. | BNSF Objection (¶¶ 52-55); Phase II Br. (pp. 25-26) | Protection of third parties under a § 524(g) injunction is permissive, not mandatory.  See 11 U.S.C. § 524(g)(a)(ii) ("such injunction *may* bar any action directed against a third party . . .") (emphasis added).  Thus, the Bankruptcy Code does not require that BNSF be protected by the channeling injunction. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| 3. | The scope of the Channeling Injunction violates § 1123(a)(5) and its timing restriction impedes the rights of nonsettling insurers who would settle post-confirmation in violation of § 524(g). Federal requests that the timing restriction be eliminated. Fireman's Fund contends that the Plan is unconfirmable under § 1129(a)(1) with the restriction. | CNA Objection (pp. 23-34); Phase II Br. (pp. 23-27)<br><br>Federal Objection (¶¶ 54-61)<br><br>Fireman's Fund Objection (¶¶ 34-37); Phase II Non-Surety Br. (pp. 15-17) | § 524(g) does not require plans to provide injunctions in favor of every insurance company that settles <u>after</u> plan confirmation, and the cases cited by the parties do not hold otherwise. Phase II Main Brief at 135.<br><br>§ 1123(a)(5) is not implicated. Nothing in the Channeling injunction prevents the Plan from providing "adequate means for the plan's implementation." *See* 11 U.S.C. § 1123(a)(5).<br><br>The Plan Proponents will also submit the following amendment to the Plan's definition section that will partially resolve this issue:<br><br>**"Settled Asbestos Insurance Company"** shall mean any Asbestos Insurance Entity that has entered into an Asbestos Insurance Settlement Agreement prior to the eleventh day following the entry of the Confirmation Order by the Bankruptcy Court. |
| 4. | *To the extent that any potential third party claims against Allstate are not channeled to the Trust, Allstate's rights under the settlement agreements are further impaired. Where Allstate must reimburse Debtors for Asbestos PI Claims asserted against Debtors, the Plan must enjoin direct action by the third parties against Allstate.* | *Allstate Objection (p. 9); Phase II Br. (p. 14)* | *As discussed, the Channeling Injunction of § 8.2.1. is properly limited to Settled Asbestos Insurance Companies.*<br><br>*If Allstate was a Settled Asbestos Insurance Company, third parties would not be able to bring direct actions against it in situations where Allstate must reimburse the Debtors.* |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| 5. | The Channeling Injunction is unduly narrow in violation of § 1123(a)(5) in that it is policy specific. It should be insurer specific and co-extensive with terms of settlement. | CNA Objection (p. 25); Phase II Br. (pp. 34-36) | There is nothing in § 1123(a)(5) that remotely suggests that the Channeling Injunction needs to be insurer-specific. |
| 6. | The injunction fails to satisfy § 524(g)(4)(A)(iii) in that it enjoins BNSF's contractual rights under the policies issued to Grace, and claims asserting such rights do not "arise by reason of" the insurers "provision of insurance to the Debtors" as the provision requires. | BNSF Objection (¶¶ 31-32); Phase II Br. (pp. 17-18) | BNSF has no interest as an additional insured to Grace's insurance policies, and the Plan leaves unaltered BSNF's rights under policies issued in its name. *See* Phase II Main Brief at 57-58. In order to make this clear, Plan Proponents shall file an amendment to the Plan which adds a subsection (e) to § 8.2.2 making it clear that the Asbestos PI Channeling Injunction shall not enjoin:<br><br>**(e) BNSF from asserting any claim under any insurance policy issued to BNSF as the sole named insured.** |
| 7. | Plan improperly eliminates Federal's Contractual Indemnity Rights with respect to claims other than Asbestos PI Claims. | Federal Objection (¶¶ 62-63) | All Indirect PI Trust Claims may be channeled to a § 524(g) Trust, including indemnity claims based on contractual rights. *Id.* at 47-49. The claims need not be direct claims for personal injuries or property damage caused by asbestos, but simply need to arise from or relate to such liabilities. *Id.* at 48. Indemnity rights that are not asbestos PI Claims are preserved as Class 9 claims. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| 8. | Uncertainty in the TDP regarding the amount of distributions and procedures for distributions violates 524(g)(4).[6] | Montana Objection (pp. 24-25); Phase II Br. (pp. 33-34)<br><br>FFIC Phase II Surety Claim Br. (pp. 18-19)<br><br>MCC Phase II Br. (p. 9) | The TDP is as certain as practically possible at this juncture, given that virtually none of the Indirect PI Trust Claims have arisen yet. *See* Phase II Main Brief at 65-66. |
| 9. | Enjoining third-party actions against Settled Insurers and granting the Asbestos PI Trust the authority to settle any claims against the insurers is not "fair and equitable" under § 524(g)(4)(B) because the provision requires the injunction to be tied to value contributed, and Settled Insurers are contributing nothing to the Plan.<br><br>524(g)(4)(B) must be read to incorporate the stricter, pre-Code version of the absolute priority rule (Garlock). | BNSF Objection (¶¶ 48-51); Phase II Br. (pp. 22-23)<br><br>Garlock Phase II Br. (pp. 8-18) | § 524(g)(4)(B) requires that benefits be provided to the trust "on behalf of" any third party receiving protection under 524(g). Grace will contribute substantial value on behalf of the Settled Insurers, and therefore their inclusion under the 524(g) injunction is "fair and equitable." *See* Phase II Main Brief at 127-29.<br><br>Garlock's argument ignores the plain language of the Code-- the term "fair and equitable" in 524(g)(4)(B)(ii) is modified by the clause "in light of the benefits provided, or to be provided, to such trust on behalf of [the protected parties]." Phase II Main Brief at 130.  Moreover, the contention that "fair and equitable" under § 524(g) incorporates the pre- |

---

[6]    Note that Montana's objection appears to be an objection more properly brought under 524(g)(2)(B)(ii)(V).

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | | Code meaning is incorrect. *Id.* at 128-30. |
| 10. | In violation of § 524(g), the Trust is not a genuine trust in any meaningful sense for Class 7A. It is simply a conduit for the payment of funds by the Reorganized Debtors. There are no trust mechanisms or procedures in Plan for determining or valuing claims. Unresolved claims and future claims are simply re-directed back into litigation, the defense of which is controlled by the Reorganized Debtors. | Anderson Memorial Objection (pp. 18-19); Phase II Br. (pp. 26-27) | The Asbestos PD Trust is properly formed under Delaware law, and provides procedures for handling and paying future claims in accordance with § 524(g). *See* Phase II Main Brief at 116-17. |
| 11. | The Plan violates § 524(g)(B)(ii)(V) because it treats substantially similar present and future claims differently Anderson is prejudiced because it may not litigate claims in its chosen forum. | Garlock Sealing Objection (pp. 8-9)<br><br>Anderson Memorial Objection (p. 17); Phase II Br. (pp. 24) | The Plan and Asbestos PD CMO provide that all Class 7A claims will be resolved in the same manner, *i.e.*, pursuant to the Federal Rules of Civil Procedure. Present claims will be resolved by the Bankruptcy Court. Any Class 7A future claims will be resolved in a different forum but using the same rules. Such treatment does not constitute discrimination against Anderson under § 1123(a)(4) and does not violate § 524(g). *See* Phase II Main Brief at 109-10. |
| 12. | The Plan is not fair and equitable under § 524(g)(4)(B)(ii) because the Asbestos Insurance Entity Injunction does not allow the Libby Claimants to pursue Grace's insurers directly for non-products coverage, as to which they do not compete with other claimants. | Libby Objection (p. 80) Phase II Br. (pp. 96-98) | The Libby Claimants have no exclusive or "vested" rights in the non-products insurance coverage. They hold no right of direct action against Grace's insurance carriers. And, they are not the only ones holding "non-products claims." For these reasons, the very premises that underlie their Plan objections have no |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | | merit.  Phase II Libby Brief at 54-55. |
| 13. | §105 of the Bankruptcy Code may not be used to circumvent the requirements of § 524(g) and the holding in *Combustion Engineering*. | US Trustee Objection (¶ 11)<br><br>*Scotts's Phase II Trial Br. (pp. 26-29)*<br><br>BNSF's Phase II Br. (pp. 24-25) | The Plan is not using the general powers of § 105 to circumvent § 524(g).  The Asbestos Insurance Entity Injunction is not to benefit the non-settling Asbestos Insurance Entities, but to protect the assets of the Asbestos PI Trust.  Phase II Main Brief at 137.<br><br>In contrast to the situation in *Combustion Engineering*, the Asbestos Insurance Entity Injunction does not "achieve a result inconsistent" with § 524(g).  Instead, it carries out § 524(g), which is precisely what § 105(a) allows.  *Id.*<br><br>BNSF's Objection will also be moot because the Plan Proponents are amending the Asbestos Insurance Entity Injunction such that it will not enjoin "BNSF from asserting any claim against any insurer that is not a Settled Asbestos Insurance Company." |
| 14. | Plan violates § 524(g) in that it improperly channels Fireman Fund's Surety Claim against Grace to the Trust because § 524(g) is designed to "provide reasonable assurance that the Trust will value, and be in a position to pay, present and future claims that involved similar claims in substantially the same manner."  Fireman's Fund Surety Claim is the only claim of its type. | Fireman's Fund Surety Objection (pp. 26-28); Phase II Surety Br. (pp. 27-29) | Fireman Fund's surety claim is a claim that, if allowed to be asserted against Grace, would revive or re-open Grace's asbestos liabilities, and is therefore properly channeled under § 524(g).  § 524(g) makes no exception for "unique" claims.  *See* Phase II Main Brief at 54-56. |
| 15. | Plan overrides Fireman's Fund's rights under § 502(a) of | Fireman's Fund Non- | The Asbestos PI Trust and its treatment of |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | the Code to object to claims. Exclusive review of the claims by the Trust is improper under § 502(b). | Surety Objection (¶ 39); Phase II Non-Surety Br. (p. 18) | asbestos claims are expressly authorized by § 524(g) of the Bankruptcy Code, and there is not a single case holding that such treatment is a violation of § 502. Phase II Main Br. at 141. |
| 16. | The Plan fails to comply with the funding requirements in § 524(g). Warrants and the deferred payment agreement do not constitute "securities" under 524(g) as used by the Third Circuit in *Congoleum* as they have no value at present and no certainty of attaining value post-confirmation. Nor is the Asbestos PI Deferred Agreement a "security." | Seaton OneBeacon Objection (¶¶ 68-78); Phase II Br. (pp. 32-37) <br><br> CNA Objection (pp. 32-34); Phase II Br. (pp. 27-30) <br><br> GEICO Objection(¶¶ 54-62); Phase II Br. (pp. 29-34) <br><br> Fireman's Fund Objection (¶ 38); Phase II Non-Surety Br. (p. 14) | Warrants are clearly "securities" under 11 U.S.C. § 101(49) and may be used to fund the Trust. *See* Phase II Main Brief at 118-21. |
| 17. | The Plan purports to satisfy the majority ownership requirement by giving the Asbestos PI Trust, in conjunction with the Asbestos PD Trust, the right to obtain jointly 50.1% of the common stock. It does not. This right is conditioned on the Reorganized Debtor's default on its deferred payment obligation. By this point, the common stock would be worthless, and §524(g) is not satisfied by majority ownership only under such conditions. | CNA Objection (p. 34); Phase II Br. (p. 32) | The Plan complies with § 524(g) by granting the Trusts the right to majority ownership of Grace's voting stock upon any Event of Default. This satisfies the requirement that the Trusts own a majority of shares if "specific contingencies" which "precede the financial 'point of no return' occur. *Id.* at 121-23. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
|  |  |  |  |
| 18. | By having two trusts, the Plan violates the requirement that a Trust must own a majority of the securities of one or more of the debtors. Here, at best, the two trusts share ownership. | Seaton OneBeacon Objection (¶ 79); Phase II Br. (p. 37)<br><br>CNA Objection (pp. 34-35); Phase II Br. (30-32)<br><br>GEICO Objection (¶ 63); Phase II Br. (p. 34) | A two-trust structure is entirely consistent with the plain language and purposes of § 524(g). *Id.* at 116-18.  For this structure to be possible, contingencies providing for shared control of a debtor must satisfy section 524(g).  Moreover, under the rule of construction in 11 U.S.C. § 102(7), "the singular includes the plural. *Id.* at 123. |
| 19. | The Plan may violate 524(g)(2)(B)(ii)(I)(II) and (III) as there appears to be little or no evidence of PD future demands. | Seaton OneBeacon Objection (¶ 80); Phase II Br. (p. 37)<br><br>GEICO Objection (¶ 64); Phase II. Br. (p. 34)<br><br>Anderson Memorial Phase II Br. (p. 27) | At trial, Richard Fink, Dr. Denise Martin and Dr. Mark Peterson will show that Debtors are likely to face asbestos-related "future demands" involving property damage. *See* Phase II Main Brief at 123-24. |
| 20. | Plan violates 524(g)(2)(B)(ii)(V) in that there is no judicial oversight or insurer participation to make sure that the requirement to pay present claims and future demands that involve similar claims in substantially the same manner is satisfied. | AXA Belgium Objection (p. 4); Joinder to Fireman's Fund Phase II Br. (p. 3) | The purpose of the Asbestos PI Trust is to, among other things "use the PI Trust's assets and income to pay the holders of all PI Trust Claims...in such a way that such holders of PI Trust Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims." These claims include Future Demands.  The Trustees, who are |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | | disinterested third parties, act as fiduciaries to the Trust. *See* Plan Exhibit 2. |
| 21. | The Court lacks the statutory authority to issue an injunction under § 524(g) that would bar contract claims of Seaton and OneBeacon against Fresenius. | Seaton OneBeacon Objection (pp. 20-22); Phase II Br. (pp. 22-23) | The Court's order approving the Fresenius settlement states that the Court shall provide full 524(g) protection to Fresenius, including protection from all Asbestos-Related Claims. This order is *res judicata*, and its provisions may not be disputed at this point. See Fresenius Settlement Order, Plan Ex. 14 at 15-16. |
| C. | ASBESTOS INSURANCE REIMBURSEMENT AGREEMENT ISSUES | | |
| 1. | Plan impairs CNA's rights under the Asbestos Insurance Reimbursement Agreement. Modifications of CNA's rights are not authorized by bankruptcy law and violate otherwise applicable state law, failing to satisfy 1129(a)(1) and (3).<br><br>Hartford argues that bankruptcy courts lack the power to unilaterally modify a debtor's contractual rights and obligations, and the Plan purports to do so.<br><br>AIU argues that the Plan impermissibly re-writes its agreements with Grace. | CNA Objection (pp. 6-7, 26-28); Phase II Br. (pp. 32-34)<br><br>Hartford Phase II Br. (pp. 9-11)<br><br>AIU Phase II Br. (pp. 8-13) | The Plan Objectors' rights are not modified in violation of the law.  Under § 7.2.2.(d)(iv), the Trust assumes Debtors' payment obligations and makes payments within the framework of the TDP.  Phase II Insurance Brief at 24.<br><br>This treatment  is authorized under the clearly preemptive language of § 1123(a)(5)(B) and likewise authorized by § 1123(b)(3)(B). *Id.* at 19-24. |
| 2. | Section 5.6 of the Asbestos PI TDPs reference a definition of "Indirect PI Trust Claims" that is at odds with the Plan and excludes potential indemnity claims. It defines "Indirect PI Claims" in a manner that eliminates the reference to insurance settlement | *Allstate Objection ( p. 7; Phase II Br II. p. 10-13)*<br><br>Travelers Phase II Br. (pp. | There is no basis to believe that the Plan Objectors will have such indemnification claims given that rights to payment for the Debtors' asbestos liabilities under those agreements are transferred to the Trust. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|-----|--------------------------|-------------------|----------|
| | agreements" included in the definition of "Indirect PI Trust Claims" under § 1.1.(138) of the Plan.<br><br>As a result, indemnification obligations contained in their Asbestos Insurance Reimbursement Agreements will be treated under the Plan as Indirect PI Trust Claims. They will thus be paid only at the Trust's payment percentage, a fraction of the actual value of these claims. | 8-9) | Allstate and Travelers will, therefore, be protected by the § 105 injunction. Phase II Insurance Brief at 32.<br><br>In any case, enforceable indemnification claims will be treated as obligations of the Trust under the transferred agreements (assuming the insurers are performing under those agreements), and not as Indirect PI Trust Claims. This unsubstantiated objection has no merit. *Id.* |
| 3. | § 7.2.2(d)(iv) eviscerates all contractual rights, under the insurers' Asbestos Reimbursement Agreements. | Certain AIU Insurers Phase II Br. (pp. 8-11)<br><br>Hartford Phase II Br. (p. 4)<br><br>Travelers Phase II Br. (p. 5)<br><br>*Allstate Objection (p. 4); Phase II Br. (p. 8)*<br><br>*London Phase II Br. (p. 11)* | § 7.2.2(d)(iv) merely makes it clear that the Trust is the successor to the Debtors with respect to the Asbestos Insurance Reimbursement Agreements and must make payments the Debtors would have made under the framework of the TDP. *Id.* at 24. This transfer of rights is authorized and mandated by federal preemptive law of §§ 1123(a)(5) and 524(g) and likewise authorized by § 1123(b)(3)(B). *Id.*<br><br>Other than this narrow, legal, and necessary exception, nothing in § 7.2.2(d)(iv) strips obligations from the agreements. *Id.* |
| 4. | Parties should not have to pay to the Trust any amount in excess of the amount actually paid by the Trust to the holder of a claim. | Travelers Objection (¶¶ 36-40) Phase II Br. (¶¶ 21-25) | This Objection is groundless. The Plan does not purport to impose reimbursement payments on the Insurance Companies on the basis of the liquidated value of the claims, and |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | *Allstate Phase II Br. (p. 8)*<br><br>Hartford Phase II Br. (p. 4)<br><br>Zurich Phase II Br. (p. 5)<br><br>AXA Belgium Joinder to Fireman's Phase II Br. (pp. 3-4) | insurers will not have to pay the Trust any amount in excess of that paid by the Trust to the holder of a claim. *See* Phase II Insurance Brief at 31. |
| **D.** | **EXCULPATION, RELEASE, AND OTHER INJUNCTIONS** | | |
| 1. | The release, injunction, and exculpation language in §§ 8.8.7 and 8.8.8 of the Plan, is too broad and violates § 524(g), as it fails to meet the *Zenith* test.  It should only apply to non-debtor defendants who are making substantial financial contributions to the Trust as required by § 524(g)(4)(B).<br><br>Concerned about the alleged conflict of interest of TAC representatives, CNA recommends that the exculpation provision be clarified to provide that individuals remain liable, *inter alia*, for "bad faith, including bad faith breach of the covenant of good faith and fair dealing owed to Asbestos PI Trust beneficiaries" and "willful misappropriation."  The change allegedly incorporates the provision of 12 Del. Code § 3806(e). | US Trustee Objection (¶¶ 12-14); Phase II Br. (pp. 2-3)<br><br>Libby Objection (pp. 79-84); Phase II Br. (pp. 92, 99)<br><br>Anderson Memorial Objection (pp. 23-25); Phase II Br. (pp. 31-33)<br><br>*Scotts Objection (¶¶ 30-45)*<br><br>Seaton OneBeacon Objection (¶¶ 81-85); Phase II Br. (pp. 37-39) | Third party releases in § 8.8.7 are consensual as they only apply to "each Holder of a Claim or Equity Interest who votes in favor of this Plan." *See* Plan § 8.8.7; Phase II Main Brief at 94.<br><br>The releases are also narrowly tailored as all parties being released made substantial contributions to the reorganization or have indemnification rights from the Debtors; therefore the *Zenith* test is satisfied. *Id.* at 94-95.<br><br>The releases in § 8.8.8. represent a valid settlement of claims of the Debtors against the Released Parties pursuant to § 1123(b)(3)(A). *Id.* at 96.<br><br>Exculpation of non-debtor third parties is |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | CNA Objection (p. 22); Phase II Br. (p. 38) | commonplace where a plan does not propose to release such parties from liability for gross negligence or willful misconduct. *Id.* at 99.<br><br>The Plan Proponents will also be filing an amendment to the Plan eliminating the PI and PD TAC and Trustees from the parties receiving protection under § 11.9. The Plan Proponents will also submit an amendment to the Plan clarifying that § 8.8.8 of the Plan only releases parties "to the extent that they have served during the Chapter 11 Cases." |
| 2. | The Plan does not satisfy the minimal requirements for a non-consensual release of third-party claims. Plan injunctions also cannot abrogate express contractual rights in the absence of consideration from settled and non-settled insurers. | BNSF Objection (¶¶ 42-43); Phase II Br. (p. 21)<br><br>GEICO Phase II Br. (p. 36) | Releases with respect to Sealed Air and Fresenius were already approved by the Court, and are *res judicata. See* Plan Exhibit 23 at ¶ 5, Sealed Air Settlement Order; Plan Exhibit 14 at ¶¶ YY, AAA, Fresenius Settlement Order; Phase II Main Brief at 82-85. Moreover, all releases provided for in the Plan are valid under Third Circuit Law because they are either consensual or satisfy the requirements for non-consensual releases. *Id.* at 85-88, 94-95. |
| 3. | The releases improperly impede Fireman's Fund's rights including, without limitation, any rights to subrogation, contribution, recoupment and setoff. | Fireman's Fund Non-Surety Objection (¶ 31); Phase II Non-Surety Br. (pp. 13-14) | Releases with respect to Sealed Air and Fresenius were already approved by the Court, and are *res judicata. See* Plan Ex. 23 at ¶ 5, Sealed Air Settlement Order; Plan Ex. 14 at ¶¶ YY, AAA, Fresenius Settlement Order; Phase II Main Brief at 82-85. Moreover, all releases |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | | provided for in the Plan are valid under Third Circuit Law because they are either consensual or satisfy the requirements for non-consensual releases. *Id.* at 85-88, 94-95.<br><br>With respect to setoff, Fireman's Fund does not currently have any setoff rights. But if it develops a right to setoff, it will be preserved because the Surety Claim will be channeled to the Trust. *Id.* at 139-141. The release provisions do not change this. |
| 4. | The § 8.8.7 releases of certain non-debtors, such as Fresenius and Sealed Air, are "illegal on [their] face." | Seaton OneBeacon Objection (¶¶ 83-84); Phase II Br. (pp. 38)<br><br>GEICO Phase II Br. (p. 36)<br><br>AXA Belgium Objection (pp. 4-5)<br><br>*London Objection (¶ 41)* | Releases of Fresenius and Sealed Air were already approved by the Court which makes them *res judicata*, valid settlements. *See* Plan Ex. 23 at ¶ 5, Sealed Air Settlement Order; Plan Ex. 14 at ¶¶ YY, AAA, Fresenius Settlement Order; Phase II Main Brief at 82-85. Moreover, both Fresenius and Sealed Air contributed substantial funds to the reorganization. Phase II Main Brief at 82-88. |
| 5. | Plan is not insurance neutral because it purports to enjoin contribution claims against released third party non-debtors. | Federal Objection (¶¶ 35-37)<br><br>GEICO Objection (¶¶ 69-70)<br><br>Fireman's Fund Non- | This issue does not implicate insurance neutrality. In any case, the Plan's releases and injunctions are appropriate.<br><br>Under an amendment to the Plan, the Plan will also clarify that the Asbestos Insurance Entity Injunction will not enjoin an insurer from |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | Surety Objection (¶¶ 21-22) | asserting a contribution claim against another insurer that is not a Settled Asbestos Insurance Company. |
| 6. | Exculpation provisions are too broad as a general matter:<br><br>(a) They violate *PWS* and Third Circuit Law such as *Congoleum* and *Genesis Health*<br><br>(b) They should not apply to former directors, and officers of Non-Debtor Affiliates who should not qualify as "Representatives" or those who engage in gross negligence or willful misconduct (US Trustee, Zurich, Seaton OneBeacon).<br><br>(c) They should not apply to non-debtors such as Sealed Air and Fresenius (AXA Belgium, London)<br><br>Exculpation clause impermissibly goes beyond activities related to the prosecution of the bankruptcy case (Seaton OneBeacon)<br><br>§ 11.9 of the Plan is too broad with respect to the Trustees and TAC, and in conjunction with their conflicts of interest, violates § 1129(a)(3) of the Code. (CNA)<br><br>§ 11.9 of the Plan violates the rule against prospective waivers of malpractice claims and may violate applicable state trust law. Thus, it violates § 1129(a)(3) of the Code. | Seaton OneBeacon Objection (¶¶ 81-82); Phase II Br. (pp. 37-38)<br><br>US Trustee Objection (¶¶ 15-17); Phase II Br. (pp. 2-3)<br><br>CNA Objection (pp. 22-23); Phase II Br. (p. 38)<br><br>Fireman's Fund Objection (¶ 32)<br><br>Zurich Objection (¶ 12); Phase II Br. (pp. 6-7)<br><br>*London Objection (¶ 41)*<br><br>MCC Objection (¶ 12); Phase II Br. (pp. 12-14)<br><br>GEICO Phase II Br. (pp. 35-37)<br><br>AXA Belgium Objection (pp. 4-5); Joinder to Fireman's Phase II Br. (p. | Exculpation of non-debtor third parties is "commonplace" where a Plan does not purport to release claims for willful misconduct and acts taken in bad faith. *Id.* at 102.  § 11.9 merely states the standard of liability to be applied to claims against the Exculpated Parties, and is therefore appropriate in this case. *Id.* at 99.<br><br>An amendment that will be submitted by the Plan Proponents eliminating the PI and PD TAC and Trustees from the parties receiving protection under § 11.9 may also resolve some of the Plan Objectors' objections on these grounds. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | 3) | |
| 7. | If the Trustees, TAC, Trust Agreement and TDP are to remain as proposed, the broad exculpation and indemnification provisions should be dropped so as to give beneficiaries at least one means of promoting fairness of treatment in the trust distribution process. | Federal Objection (¶¶ 52-53) | This change is not necessary under the law because the powers of the TAC are limited and subject to judicial review, and each constituency of beneficiaries to the Trust has a legal representative as part of the trust structure.  *See* Phase II Main Brief at 74-75; Ex. 2 to Joint Plan, Asbestos PI Trust Agreement at §§ 5.7(c), 6.1, 7.13.<br><br>However, this objection may be resolved by a Plan amendment the Plan Proponents will be submitting that eliminates the PI and PD TAC and Trustees from the parties receiving protection under § 11.9. |
| 8. | The Asbestos Insurance Entity Injunction is too broad and should not be able to bar coverage or other actions against Nonsettling Asbestos Insurance Companies.  This violates § 524(g), and § 105 cannot be used to broaden application of § 524(g) | BNSF Objection (¶¶ 45-47); Phase II. Br. (p. 24)<br><br>*Scotts Objection (¶¶ 38-43)*<br><br>US Trustee Objection (¶¶ 9-11) | The Plan is not using the general powers of § 105 to circumvent § 524(g).  The Asbestos Insurance Entity Injunction is not to benefit the non-settling Asbestos Insurance Entities, but to protect the assets of the Asbestos PI Trust.  Phase II Main Brief at 137.<br><br>In contrast to the situation in *Combustion Engineering*, the Asbestos Insurance Entity Injunction does not "achieve a result inconsistent" with § 524(g).  Instead, it carries out § 524(g), which is precisely what § 105(a) allows.  *Id.*<br><br>BNSF's Objection will also be moot because |

31

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|-----|--------------------------|-------------------|----------|
| | | | the Plan Proponents are amending the Asbestos Insurance Entity Injunction such that it will not enjoin "BNSF from asserting any claim against any insurer that is not a Settled Asbestos Insurance Company." |
| 9. | The discharge under § 8.1 is inappropriately broad under §524(g) and § 1141 of the Bankruptcy Code as it bars all claims against the Reorganized Debtors in perpetuity and inappropriately bars state court proceedings with respect to Kaneb and other ongoing litigations with respect to Kaneb. | Kaneb (*see* various pleadings); Phase II Br. (pp. 3-4) | Discharge does not affect Kaneb's rights to assert defenses and counterclaims in state court proceedings, only Kaneb's direct claims against the Debtors--for which Kaneb failed to file a timely proof of claim.  Phase II Main Brief at 148. |
| 10. | § 8.7.1 purports to freeze the injunctions in place -- such as the preliminary injunction in the Chakarian case preventing Libby Claimants from pursuing claims against BNSF.  The Plan, thus, usurps the Court's function to modify or dissolve preliminary injunctions and is accordingly unconfirmable. | Libby Objection (pp. 84-85); Phase II Br. (pp. 99-100) | The Plan does not "freeze the injunctions in place."  The Plan implements a 524(g) channeling injunction that replaces the Court's preliminary injunction with respect to certain third parties, as permitted by the Bankruptcy Code. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| **E.** | **OBJECTIONS TO THE TAC AND TDP** | | |
| 1. | TAC representatives who represent Direct Claimants have actual and apparent conflicts with the interests of Indirect Claimants, and these TAC members may exercise control over the Trust, causing it to pay unmeritorious claims.<br><br>Seaton OneBeacon claims these conflicts are "irreconcilable."<br><br>Garlock and Federal ask that TAC members be neutral or that the TAC be reduced to an advisory role. Alternatively, they ask the Court to require that the TAC to have an equal number of representatives of Indirect Claimants. (Garlock, Federal) | CNA Objection (pp. 17-22); Phase II Br. (pp. 10-17)<br><br>GEICO Objection (¶¶ 40-53); Phase II Br. (pp. 24-29)<br><br>Federal Objection (¶¶ 38-51)<br><br>Garlock Sealing Objection (¶¶ 25-31)<br><br>BNSF Objection (¶ 60)<br><br>Seaton OneBeacon Objection (¶ 53-67); Phase II Br. (pp. 25-32) | There is no substantial or material risk of a conflict of interest: the TAC is a common feature of asbestos PI trusts; its representatives have limited roles and duties; duties to represent clients and claimants are compatible; and the assumption that TAC representative will pay unmeritorious claims or act unethically is legally and factually unsupported. Phase II Main Br. at 71-79. |
| 2. | Plan violates § 1129(a)(4) because the compensation to be provided to the members of the TAC by the PI Trust is not set forth in the Plan or in any of the Plan Documents. | Fireman's Fund Objection (¶ 42); Phase II Non-Surety Br. (p. 17) | § 1129(a)(4) does not require that the Plan or related documents set forth compensation. Phase II Main Brief at 114-15. Courts have expressly rejected this argument. *Id.* |
| 3. | The Plan does not satisfy §§1129(a)(5)(A)(ii) because the TAC is in a position to control the Trust, and the appointment of the TAC members is not consistent with the interests of creditors or with public policy. It also | Fireman's Fund Objection (¶ 43); Phase II Non-Surety Br. (p. 18)<br><br>Seaton OneBeacon | § 1129(a)(5) does not apply to the TAC, because its members are not "director[s], officer[s], or voting trustee[s] of the debtor" or of an affiliate or successor to the debtor. *Id.* at 113. In any case, the TAC is not in a position |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | violates § 1129(a)(3) for this reason. | Objection (¶¶ 53-64); Phase II Br. (p. 31) | to control the Asbestos PI Trust, and its function and composition is well-recognized and appropriate. *See* II.E.1. |
| 4. | TDP fails to protect the rights of Indirect PI Trust Claimholders as it has too many restrictions on allowed claims, such as not including attorneys fees and defense costs in what is considered an "allowed claim" and requiring them to obtain a full release from the underlying asbestos creditor in order to be granted an allowed claim. | BNSF Objection (¶¶ 56-58); Phase II Br. (pp. 26-27)<br><br>Montana Phase II Br. at 31-33 | Indirect PI Trust Claimants are not required to obtain a release in favor of the Trust, and valid claims for attorney fees and defense costs are expressly payable under the TDP.  Phase II Main Brief at 66, 68. |
| 5. | It is unclear how the liquidated claims of judgment creditors secured by bonds will be paid under the TDP. *If the Edwards Judgment Claims secured by the supersedeas bonds are treated as unliquidated, this strips them of their security interest and constitutes unfair and impermissible discrimination.*  They request that the italicized language be removed from 5.2(a) of the TDP, as follows:<br><br>"(ii) a jury verdict or non-final judgment in the tort system obtained prior to the Petition Date, *provided there is no supersedeas bond associated with such verdict or judgment"* | Edwards Judgment Claimants Objection (pp. 6-13) | In order to address this objection, the Plan Proponents intend to amend § 5.2(a), in pertinent part, as follows:<br><br>Processing and Payment.  As soon as practicable after the Effective Date, the PI Trust shall pay, upon submission by the claimant of the appropriate documentation, all PI Trust Claims that were liquidated . . . (ii) by a jury verdict or non-final judgment in the tort system obtained prior to the Petition Date, provided there is no letter of credit, appeal bond, supersedeas bond or other security or surety (collectively, "Security") associated with such verdict or judgment, [or] (iii) by a judgment that is final and non-appealable. . . ([together with PI Trust Claims liquidated by other specified means] **"Pre-Petition** |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | | Liquidated Claims"). |
| 6. | Medical criteria of the TDP are too lax and it compensates meritless claims.  Thus, the Plan is not proposed in good faith. | Fireman's Fund Objection (¶¶ 46-47); Phase II Non-Surety Br. (pp. 7-8) | The TDP contains a detailed structure with respect to the payment of claims based on the requirements of compliance with medical criteria and other evidence of entitlement to payment.<br><br>It both mirrors and builds upon the trust payment procedures that evolved in the *Manville* case and in numerous asbestos chapter 11 cases that have since been confirmed.  Phase II Main Brief at 27 |
| 7. | Medical criteria of the TDP provisions are discriminatory | Libby Objection (pp. 25-33); Phase II Br. (pp. 27-43; 50-57) | The medical and exposure criteria are reasonable.  In the vast majority of cases,  the expedited review process will identify and efficiently resolve claims.  For the small percentage of claimants who do not meet the criteria, the TDP provides for individual review, arbitration, mediation, and if necessary, litigation.  TDP §§  5.3(b), 5.4(a), 5.10, 5.11, 7.6, 7.7;  Phase II Libby Br. at 2-23.<br><br>The criteria are in accordance with the 2000 International Labour Organization (ILO) Guidelines, and Libby's experts agree that the TDP will identify and address the serious cases at Libby, and are unable to say that it has a biased impact in Libby that differs from its |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | | impact outside. *See* Phase II Libby Br. at 2-23. |
| 8. | The TDP is not "fair and equitable." | Garlock Sealing Phase II Br. (pp. 18-19); BNSF Phase II Br. (pp. 26-27) | 524(g)'s "fair and equitable" requirement does not extend to <u>trust distribution procedures</u>. All section 524(g) requires with regard to trust distribution procedures is that the trust "operate through mechanisms . . . that provide reasonable assurance that the trust will value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner." Phase II Main Brief at 132-33. |
| **F.** | **VIOLATIONS OF GOOD FAITH** | | |
| 1. | The Plan does not satisfy §1129(a)(3) because the TAC is in a position to control the Trust, and the appointment of the TAC members is not consistent with the interests of creditors or with public policy. | Fireman's Fund Objection (¶ 43); Phase II Non-Surety Br. (p. 18)<br><br>Seaton OneBeacon Objection (¶¶ 53-64); Phase II Br. (p. 31) | The Plan satisfies § 1129(a)(3) because it has been conceived and proposed with the "honest purpose" and "reasonable hope of success" by which "good faith" is measured. *Id.* at 34-37. Disagreements over a creditor's treatment under a plan are insufficient basis to allege bad faith.<br><br>More fundamentally, the Objection is groundless because the TAC is in no such position and has no incentives to pay unmeritorious claims. *See* Section II.E. Bad faith cannot be alleged on this ground. |
| 2. | Because the Plan violates various provisions of the Code, it was not filed in good faith and violates § 1129(a)(3). | Montana Objection (pp. 26-27); Phase II Br. (p. | The Plan does not violate any provisions of the Code. It is a model of good faith as it has as |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | 37)<br><br>*Scotts Objection (¶ 49)*<br><br>*London Objection (¶¶ 33-40)*<br><br>Fireman's Fund Non-Surety Objection (¶¶ 44-45); Phase II Non-Surety Br. (pp. 18-19)<br><br>CNA Phase II Br. (pp. 14, 17, 34, 36-37) | been specifically designed to address the unique objectives and requirements of § 524(g), allowing for a global resolution of all of Grace's asbestos liability.  The resolution set forth in the Plan enjoys overwhelming support from Claimholders and has "a reasonable hope of success," satisfying the requirements of good faith. *Id.* at 34-37. |
| 3. | Plan violates § 1129(a)(3) because it seeks to maximize value for equity at the expense of the creditors. | Travelers Objection (¶¶ 45-50)<br><br>Bank Lenders Objection (¶¶ 56-58); Phase II Joint Lender/GUCs Br. (p. 68) | The Plan does not maximize equity at the expense of creditors.  Indeed, the Plan provides the Lenders with post-petition interest in excess of the federal judgment rate which is the most to which the Lenders are legally entitled. Only then does it provide value for equity. *See* I.B.<br><br>Moreover, disagreements over a creditor's treatment under a plan are insufficient basis to allege bad faith.  Phase II Main Brief at 34-37. |
| 5. | Plan not filed in good faith and violates § 1129(a)(3) because it singles out Anderson for disparate treatment. | Anderson Memorial Objection (pp. 25-27; Phase II Br. (pp. 34-35) | Anderson has not been singled out for disparate treatment.  Anderson is treated in precisely the same manner as all other unresolved Class 7A claims.  *See* II.A.13, II.A.16.  Thus, bad faith cannot be alleged on |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | | this basis. |
| **G.** | **VIOLATIONS OF THE ABSOLUTE PRIORITY RULE AND FAIR AND EQUITABLE TEST** | | |
| 1. | The Plan violates the "absolute priority rule" and is not "fair and equitable" to Class 6 claimants as required by § 1129(b).<br><br>The Plan violates the "absolute priority rule" of § 1129(b) if *any* class votes against it (BNSF). | Fireman's Fund Objection (¶¶ 52-54); Phase II Non-Surety Br. (pp. 25-26)<br><br>Montana Objection (pp. 18-19); Phase II Br. (p. 34)<br><br>MCC Objection (¶ 10); Phase II Br. (pp. 9-10) | § 524(g) only contemplates a 75% acceptance threshold, and § 1129(b) is not applicable because its application is limited to impaired creditors whose class does not accept the Plan. Here, Class 6 has overwhelmingly voted in favor of the Plan. *See* Phase II Main Brief at 105-06. |
| 2. | Plan violates § 1129(a)(7) by providing Libby less than in a liquidation where Libby claimants could pursue insurance coverage directly from insurers outside Bankruptcy. | Libby Objection (p. 73); Phase II Br. (pp. 100-01) | The Libby Claimants have no exclusive or "vested" rights in the non-products insurance coverage. They hold no right of direct action against Grace's insurance carriers. Phase II Libby Brief at 53.<br><br>In any case, Debtors have much higher value in Chapter 11 than Chapter 7. See Plan Ex. 8. A chapter 7 trustee would most likely be forced to resolve all unsecured claims with a limited asset pool, and all unsecured claimants would receive far less than 100 cents on the dollar. Phase II Main Brief at 44-46. |
| 3. | As a non-accepting holder of an impaired claim in Class 6, Travelers is entitled to the protection of the "best interests" test of § 1129(a)(7). Plan violates this test by | Travelers Objection (¶¶ 51-54); Phase II Br. (pp. | The value of Grace is much higher under Chapter 11 than it would ever be in Chapter 7. Travelers and every other party is receiving |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | providing less of a recovery on Traveler's indemnification claim that would be available in liquidation. | 10-11). | much more than they ever could in liquidation. Phase II Main Brief at 39-44. In Chapter 7, unsecured creditors would receive far less than 100 cents on the dollar. *Id.* at 44-46. |
| 4. | The Plan violates the "best interests" requirement of § 1129(a)(7) and "fair and equitable test" and "absolute priority rule" of § 1129(b) in that Equity Interests are being retained while the Class 9 claims are not being paid in full.<br><br>In order to qualify as being "paid in full," the parties must receive the contract rate, and for the Bank Lenders, the applicable contract rate is the contract default rate. | GUCs Objection (pp. 14-18)<br><br>Bank Lenders Objection (¶¶ 46-55); GUCs/Lender Phase II Br. (pp. 49-68, 69-72)<br><br>Morgan Stanley Objection (¶¶ 17-20); 7/17/09 Supplemental Br. (pp. 10-11) | §§ 1129(a)(7) and 1129(b) are not implicated because Grace's solvency cannot be established and none of the unsecured creditors are impaired. *See* Phase II Lender Brief at 42-45.<br><br>But, where applicable, § 1129(a)(7) only requires that unsecured creditors receive post-petition interest at the federal judgment rate. *Id.* at 15-17, 46-48. The Plan pays this rate or more to all unsecured creditors.<br><br>Where applicable, § 1129(b) requires post-petition interest at the federal judgment rate, at most. There is authority that says there is no legal entitlement to post-petition interest under this provision. *Id.* at 51-53.<br><br>Because the unsecured creditors are being paid their allowed claims in full and a proper amount of post-petition interest, equity may retain an interest under 1129(b). *See* 11 U.S.C. § 1129(b); |
| 5. | While the Bank Lenders' post-petition interest under § 502(b)(2) may be disallowed as part of the "allowed pre-petition amount," this has not eliminated and has nothing | Bank Lender Objection (¶¶ 25-30); Lender and GUCs Phase II Brief | As described in II.G.4., all creditors are receiving a proper rate of post-petition interest |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | to do with a creditor's entitlement to post-petition interest which is preserved under §§ 1129(a)(7), 726(a)(5), and 1129(b). | (pp.49-67; 69-72) | under these provisions. |
| 6 | Plan does not satisfy § 1129(a)(1) because it violates §§ 1124(1), 1122(a), 1129(a)(7), 1129(b), and 1129(a)(3) | Bank Lender Objection (¶ 14) | The Plan satisfies § 1129(a)(1) because it satisfies all other provisions of the Code. Phase II Main Brief at 115-16. |
| **H.** | **JURISDICTIONAL ARGUMENTS** | | |
| 1. | The Court does not have subject matter jurisdiction over: (a) the contract claims that creditors have against Sealed Air and Fresenius as they are direct claims (Seaton OneBeacon) (b) BNSF's contractual claims against insurers because the policies Grace purchased on behalf of BNSF do not list Grace list as an insured. The Court cannot enjoin such claims. *(c) "all matters concerning the Asbestos Insurance Policies, Asbestos-In Place Insurance Coverage, Asbestos Insurance Reimbursement Agreements" as Article 10 claims. Permissive or mandatory abstention provisions set forth in 28 U.S.C. § 1334(c)(1) and (2) apply (Allstate).* | Seaton OneBeacon Objection (¶¶ 37-47); Phase II Br. (pp. 20-23) BNSF Objection (¶¶ 29-32); Phase II Br. (pp. 13-18) *Allstate Objection (pp. 9-10)* | The Successor Claims Injunction, barring claims against Sealed Air and Fresenius, is well within the Court's jurisdiction and represents a valid exercise of this Court's authority pursuant to section 105(a) of the Bankruptcy Code and established Third Circuit law. *Id.* at 89. The Plan does not enjoin BNSF from pursuing claims it has against insurers. *Id.* at 57-59. Amendments to the Asbestos Insurance Entity Injunction and Asbestos PI Channeling Injunction that will be filed expressly state that BNSF will not be enjoined from asserting any claim under any insurance policy issued to BNSF as the sole named insured. *Allstate fails to identify any elements in the Plan's retention of jurisdiction provisions that violate permissive or mandatory abstention, and there are none. The Court retains nonexclusive jurisdiction over matters* |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | | | *concerning the Asbestos Insurance Policies, Asbestos Insurance Reimbursement issues, and other insurance issues. It may abstain when appropriate. Id. at 142-44.* |
| 2. | The Court does not have subject matter jurisdiction over Fireman's Fund's coverage disputes, including adjudication of its rights against affiliates, released parties, or any other non-debtor third party.  § 7.15(e) violates § 1129(a)(3) of the Code because it attempts to confer jurisdiction over these issues. | Fireman's Fund Objection (¶ 56); Phase II Non-Surety Br. (p. 17) | This objection is groundless.  Because the Plan is insurance neutral, it does not call for the Court to adjudicate coverage disputes.<br><br>§ 7.15(e) has no bearing on this issue.  It merely recognizes that insurers will be bound by this Court's decision of issues that are not Bankruptcy Preemption Issues under the principles of *res judciata*.  But this Court will not adjudicate any such issues unless the insurers raise them, and they should not.  *See* Phase I Brief at 12-13. |
| 3. | The analysis of Section 7.2.2.(d)(iv) is a "non-core" proceeding because it implicates state-law contract claims that arise outside bankruptcy. Thus, the Court does not have jurisdiction to determine these issues . | Hartford Phase II. Br. (p. 8) | Whether § 7.2.2.(d)(iv) is authorized by the Code or whether it gives the insurers who are party to Asbestos Insurance Reimbursement Agreements a valid objection to the Plan is clearly a core matter. Phase II Insurance Brief at 26.  Moreover, administration of property of the estate are expressly "core" matters under the Code, and it is black letter law that insurance policies are rights thereunder are property of the estate. The same is true for Asbestos Insurance Reimbursement Agreements. *Id.* at 26-28. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| 4. | *Court lacks subject matter jurisdiction to issue the Channeling Injunction, the Asbestos Insurance Entity Injunction or Releases to the extent that they contain third party releases outside the scope of the Code.* | *Scotts  (¶ 44)* | *The Third Party Releases are clearly permitted under § 524(g), and the Court has jurisdiction to issue all such releases and injunctions.* |
| **I.** | **VOTING RIGHTS** | | |
| 1. | Libby is deprived of effective voting rights because it is improperly classified with other asbestos claimants and treated less favorably than these claimants. | Libby Objection (pp. 68-69); Phase II. Br. (p. 81) | This objection has no merit because Libby is properly classified and treated no less favorably than other claimants in Class 6.  *See* II.A.9, II.A.14 |
| 2. | Because Class 7A is impaired, Class 7A should be able to vote not just "for 524(g) purposes" and the voting should not be permitted by Class 7A Claimants who settled their claims and are no longer impaired. | Anderson Memorial Objection (pp. 20-21); Phase II Br. (pp. 28-30) | This Objection has no merit because Class 7A is not impaired. *See* Phase II Main Brief at 107-08. |
| **J.** | **PARTY-SPECIFIC OBJECTIONS/ISSUES** | | |
| 1. | The Plan violates § 553(a) by failing to preserve Fireman's Fund's right to set off the amounts owed to it under the Indemnity Agreement for its "Surety Claim" | Fireman's Fund Surety Objection (pp. 19-22); Phase II Surety Br. (pp. 9-12) | FFIC's right to setoff, should it arise, is adequately preserved under the Plan.  Phase II Main Brief at 139-41. |
| 2. | Fireman's Fund should be able to control the prosecution of the *Edwards* Appeal under Texas Law. | Fireman's Fund Surety Br. (pp. 24-26) | This is not a valid objection to confirmation of the Plan. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| 3. | *Appeal Bond in the <u>Solow</u> matter must be paid in full, including any fees and costs, PD Trust or Reorganized Debtors must assume General Contracts of Indemnity and Plan should preserve and reserve all of Travelers' claims and defenses against any entities in terms of these <u>Solow</u> claims.* | *Travelers/St. Paul Companies Objection (pp. 3-4)[7]* | *Travelers' claims arising from the Solow matter are properly channeled to the PD Trust under 524(g). See Phase II Main Brief at 49 n. 106. Moreover, all of Traveler's claims will be paid in full.* |
| 4. | *§ 7.2.2(d)(iv) vitiates the 1995 London Asbestos Agreement.* | *London Objection (¶ 32)* | *Section 7.2.2(d)(iv), which transfers rights under Asbestos Reimbursement Agreements to the Trust, is mandated by the express preemptive language in §§ 1123(a) and 524(g), and is likewise authorized by § 1123(b)(3)(5). See Phase II Insurance Brief at 24-26.* |

---

[7] Limited Objection and Reservation of Rights of the St. Paul Companies, filed May 27, 2009 (Dkt. 21876).

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| 5. | The Plan seeks declaratory relief through § 7.2.2(d)(iv) that the Court does not have the power to grant in the context of Plan Confirmation. It also seeks to "recover money or property" under Bankruptcy Rule 7000(1). These issues require an adversary proceeding. | Hartford Phase II Trial Brief (pp. 5-7) | Plan Proponents do not seek a declaratory judgment under Bankruptcy Rule 7000(9) or to recover money under Rule 7000(1) and instead ask the Court to rule on the appropriateness of the Plan, including § 7.2.2(d)(v). This is a core issue to be decided as part of Plan confirmation. Phase II Insurance Brief at 28-30.<br><br>Moreover, Hartford has raise several substantive objections to 7.2.2(d)(iv), arguing that they preclude confirmation, and cannot now claim the Court cannot determine these issues. *Id.* at 28. |
| 6. | Plan should explicitly reference stipulation between Tyco and the Debtors relating to the Superfund site of Blackburn & Union Privileges similar to its language in § 3.l.9(c) for the EPA Multi-Site Agreement Obligations. | Tyco/Covidien Objection (¶¶ 1-5) | Unnecessary. The stipulation among the parties outlines how the claim is treated. The Plan should not have to spell out the individual treatment of every claim. |
| 7. | Plan shouldn't affect Kaneb's rights under its Merger Agreement as that is an executory contract. | Kaneb Phase II Br. (p. 5) | The Merger Agreement is not executory. Phase II Main Brief at 148. |
| 8. | The cap on PI Claims should be lifted to take into account future claims. | Pro Se ZAI Claimant Objection (¶ 1) | The TDP provides for the payment of future claims in a similar matter as present claims as is required by § 524(g). |
| 9. | Art. 8.1 of the Plan attempts to enjoin setoff rights of taxing authorities when the state should be able to exercise setoff under state law in order to recover admin claim by applying any post-petition refund claims held | Texas Comptroller Objection (¶ 1) | The Plan does not enjoin the Texas Comptroller's post-petition setoff rights. |

44

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|-----|--------------------------|-------------------|----------|
| | by the Debtors. | | |
| 10. | Objects to 4.19% interest rate for priority tax claims. Under 1129(a)(9)(c), interest must be determined by the prevailing market rate for a loan of a term equal to the payment period, with due consideration of the quality of the security and the risk of subsequent default. Michigan Dept. of Treasury proposed revised language under which "Interest will be paid on priority tax claims at the applicable non-bankruptcy rate." | Michigan Dept. of Treasury Objection (¶¶ 3-5) | The Bankruptcy Code permits the Debtors to set the rate on such tax claims at the federal judgment rate. |
| 11. | Plan should be revised to provide that it does not modify the parties' rights under certain insurance programs with the Fresenius Indemnified Parties and the Sealed Air Indemnified Parties. Any such modification renders the Plan unconfirmable under § 1129(a)(1). | CNA Objection (p. 15); Phase II. Br. (p. 38) | The Plan does not alter or address these rights. There is no need to amend the Plan to state that this is the case. |
| 12. | Plan should be modified to clarify the post-confirmation handling of the workers' comp claims -- if the Debtors intend for CNA to continue handling the workers' comp claims in the ordinary course, the Plan injunctions need to be expressly modified for that purpose. | CNA Objection (p. 16) | Amendment is not necessary. Plan expressly provides that workers' comp. claims are left unaltered by the Plan (3.1.4(b)). |
| 13. | Phase I-Exhibit 5 does not list all of the CNA insurance settlement agreements. | CNA Objection (p. 3, fn 3) | Exhibit 5 properly reflected the agreements of settled insurers as defined in the Plan. CNA does not qualify. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| 14. | PI Channeling Injunction is improperly limited to Asbestos Insurance Policies identified in Plan Exhibit 5. It should extend to insurers with respect to claims allegedly arising out of liability policies that are the subject of an Asbestos Insurance Reimbursement Agreement listed in Plan Exhibit 6. | CNA Objection (p. 24); Phase II Br. (p. 24) | The limitation is appropriate.  The policies listed in Exhibit 5 belong to insurers who have settled prior to confirmation.  § 524(g) does not require that the channeling injunction extend to insurers settling post-confirmation. *See supra* Section II.B.3. |
| 15. | Plan violates §§ 1129(a)(1) and 1103 by dissolving the Creditors' Committee on the Effective Date in section § 11.8 of the Plan, notwithstanding pending Bank Claim litigation that may not be concluded at that time. | GUCs Objection (pp. 18-20) | The Bank Lenders are adequately represented, and there is no need for the Creditors' Committee to be retained to duplicate that representation. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|-----|--------------------------|-------------------|----------|
| **K.** | **ANTI-ASSIGNMENT** | | |
| 1. | The Plan impairs the rights of insurers as it improperly abrogates the anti-assignment provisions of their policies by assigning insurance rights of non-debtor affiliates to the Trust. | CNA Objection (pp. 6, 36-38); Phase II Br. (pp. 36-38) <br><br> Fireman's Fund Non-Surety Objection (¶¶ 16-20); Phase II Non-Surety Br. (pp.25, 27-29) <br><br> Zurich Objection (¶¶ 8, 10); Phase II Br. (pp. 4-5) <br><br> GEICO Objection (¶¶ 31-29); Phase II Br. (pp. 18-23) <br><br> Federal Objection (¶¶ 9-15) <br><br> AXA Belgium Objection (pp. 3-4); Joinder to Fireman's Phase II Br. (p. 3) | § 1123(a)(5) expressly preempts any anti-assignment clauses in the applicable polices, as recognized by *Combustion Engineering*. *See* Phase II Insurance Brief at 3-7. <br><br> Indeed, this Court has recognized several times that transfer of insurance rights to a Trust does not preclude a Plan from being confirmed. *Id.* at 2.  So has every court to consider the issue.  *Id.* at 3. <br><br> Moreover § 1123(b)(3)(b) permits the Transfer of asbestos insurance rights from policies to an a Trust. *Id.* at 14-16.  § 534(g) also impliedly preempts any anti-assignment clauses in the policies. *Id.* at 16-19. |
| 2. | There is a presumption against preemption. | GEICO Phase II Br. (p. 19) <br><br> CNA Phase II Br. (p. 38 n. 39) | To the extent a presumption against preemption exists, it does not apply when interpreting § 1123(a), which clearly provides for preemption. *Id.* at 7-8. |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| 3. | Preemption only applies to non-bankruptcy law relating to the financial condition of a debtor and not to insurance policies (cites *Pacific Gas & Elec. Co. v. California*, 350 F.3d 932 (9th Cir. 2003). | GEICO Objection (¶ 36); Phase II Br. (p. 20)<br><br>Fireman's Fund Non-Surety Objection (¶ 17); Phase II Non-Surety Br. (App. at A-1--A-4)<br><br>CNA Phase II Br. (p. 38 n.39) | The Ninth Circuit's interpretation violated basic rules of statutory construction in rendering the "notwithstanding" clause of § 1123(a) meaningless. *Id.* at 9-10.  In any case, this is clearly not the law in the Third Circuit. |
| 4. | *Combustion Engineering* only addressed whether the right to insurance *proceeds* could be assigned.  In the present case, the assignment of insurance rights is contemplated, and the Code does not allow this. | CNA Phase II Br. (p. 37) | CNA is incorrect.  Notwithstanding any semantic difference, the plan in *Combustion Engineering* transferred the right to sue insurers to the trusts, as this Plan does.  The district court, affirming this Court's decision in *Federal Mogul,* has also expressly rejected insurers' attempts to distinguish between a transfer of insurance rights and proceeds. *See* Phase II Insurance Brief at 5, n 7. |
| 5. | § 1123(a)(5) cannot preempt private contracts. | GEICO Phase II Br. (p. 19)<br><br>Fireman's Fund Phase II Non-Surety Br. (App. at A-9--A010)<br><br>CNA Phase II Br. (p. 38 n.39) | The Third Circuit, and every other court to consider the issue, has recognized that § 1123(a)(5) does preempt the terms of private contracts. *Id.* at 11-13. |
| 6. | The Plan violates §1129(a)(1) of the Bankruptcy Code | CNA Objection (pp. 37- | The Plan is confirmable under § 1129(a)(1) as |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | because it is not insurance neutral and purports to release Grace from the anti-assignment provisions of its contracts. | 39); Phase II Br. (pp. 36-38) | it is insurance neutral, and every court to consider the issue has permitted insurance rights to be transferred to a trust. |
| | **III.    Feasibility** | | |
| 1. | Plan is not feasible if Montana's claims are not dischargeable. Because its claims are not "claims" as used in the Code, confirmation would likely still need to be followed by liquidation or further reorganization of the Debtors if Montana asserts a claim for $750 million or more against Grace. | Montana Objection (pp. 25-26); Phase II Br. (pp. 36-37) | Montana's objection must fail because its claims will be channeled to the trust, and in any case it has not provided any basis for its assertion that it might have a claim for $750 million against Grace at the moment that Grace emerges from bankruptcy. *See* Feasibility Brief, filed 8/25/09 at 8-9. |
| 2. | Because the Plan is not feasible under § 1129(a)(11), it should not be confirmed under § 1129(a)(1). | MCC Objection (¶ 9)<br><br>Zurich Objection (¶ 11) | Under the Plan, Grace will emerge as a healthy company, capable of generating robust growth and profits for the foreseeable future. Thus, the Plan exceeds the requirement under 1129(a)(11) that a plan have a "reasonable chance of success." *See* Feasibility Brief, filed 8/25/09, at 3-7. |
| 3. | The Plan is not feasible because:<br><br>(a) the Plan Proponents have not provided a detailed estimation of future Class 7A Asbestos PD Claims;<br><br>b) the Plan does not account for the possibility that Anderson's claim will be upheld on appeal; and | Anderson Memorial Phase II Feasibility Br. (passim) | Anderson's arguments are without merit because:<br><br>a) 1129(a)(11) does not require that a debtor estimate all possible future liabilities--it only requires that the Plan have a "reasonable chance of success." Moreover, |

| No. | OBJECTION & CODE SECTION | OBJECTING PARTIES | RESPONSE |
|---|---|---|---|
| | c) Grace has not finalized exit financing. | | 524(g)(2)(B)(ii)(II) requires, as a pre-condition for the issuance of a 524(g) injunction, that "the actual amounts, numbers, and timing of [future asbestos claims] cannot be determined." Thus, requiring an exact estimate of such future liabilities for feasibility would render 524(g) meaningless. <br><br> b) As illustrated by Grace's financial projections, Grace could easily pay Anderson's claim if it is upheld on appeal. Therefore, this is not a valid objection to feasibility. <br><br> c) Courts in the Third Circuit have expressly rejected the proposition that exit financing must be finalized before a plan may be found to be feasible. *See e.g. In re Global Ocean Carriers*, 251 B.R. 31, 46 (D. Del. 2000). ("With respect to Arabella's assertion that the Plan is not feasible because there is not final documentation of exit financing or the Credit Lyonnais loan, we reject that position."). <br><br> At trial, Hudson LaForce and Pamela Zilly will establish that the Plan is feasible and that exit financing will be available when the Plan becomes effective. |