# EXHIBIT 10
(December 17, 1996 Agreement)

RECEIVED

JAN 7 1997

HARVEY G. LEWIS

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release of all claims and policy obligations with respect to Hatco-Related Environmental Claims (as defined in Section 2(C)) (this "Agreement") is entered into on this 17th day of December, 1996 by and between Grace, as defined in Section 2(A), and American Employers' Insurance Company and Employers Commercial Union Insurance Company (collectively referred to herein as "Commercial Union," as defined in Section 2(B)), collectively referred to as the "Parties."

## RECITALS

WHEREAS, Commercial Union issued or is alleged to have issued various policies of umbrella or excess liability insurance to Grace (the "Policies"), as defined in Section 2(D);

WHEREAS, Grace has asserted that, pursuant to the Policies, Commercial Union is responsible to defend and indemnify Grace for the Hatco-Related Environmental Claims ("Hatco-Related Environmental Claims"), as defined in paragraph 2(C) below, arising out of the Hatco Site, located in Fords, New Jersey ("Hatco Site");

114421.1

1

**FILE COPY**

CONFIDENTIAL SUBJECT TO MARCH 2000 PROTECTIVE ORDER

OB-000034

EXHIBIT
OS-2
(Rev.)

PENGAD 800-631-6989

WHEREAS, W.R. Grace & Co. -- Conn., a Connecticut Corporation is the successor to the named insured under the Policies that owned and operated a chemical company at the Hatco Site;

WHEREAS, Commercial Union denies any obligation to pay under the Policies for the defense of or to indemnify Grace in connection with any Hatco-Related Environmental Claims arising out of the Hatco Site;

WHEREAS, the dispute between Grace and Commercial Union is the subject of a third-party complaint filed by Grace against a number of insurance companies, including Commercial Union in pending litigation entitled Hatco Corp. v. W.R. Grace & Co. -- Conn., et. al., No. 89-1031, filed in the United States District Court for the District of New Jersey ("Pending Litigation");

WHEREAS, the Parties to this Agreement believe that it is in their mutual interest to reach a full and final amicable resolution of the rights and obligations of the Parties under the Policies with respect to any and all Hatco-Related Environmental Claims arising out of the Hatco Site, without admission of liability by any Party or any further adjudication of any issue of

114821.1

2

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000035

XXX-001697

fact or law, and to resolve past, present or future disputes relating to Commercial Union's obligations to Grace under the Policies with respect to any and all Hatco-Related Environmental Claims arising out of the Hatco Site.

### AGREEMENT

NOW THEREFORE, in consideration of the mutual covenants, agreements and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1.    The foregoing recitals are incorporated herein as if fully set forth in the text of this Agreement.

I.    DEFINITIONS

2.    (A)  As used in this Agreement, "Grace" shall mean W.R. Grace & Co. -- Conn., a Connecticut Corporation; W.R. Grace & Co., a New York Corporation, which has changed its name to Fresenius National Medical Care Holdings, Inc.; W.R. Grace & Co. -- Del., a

114421.1

3



CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000036

XXX-001698

Delaware Corporation; and their respective predecessors and successors.

(B) As used in this Agreement, "Commercial Union" shall mean Commercial Union Insurance Company, American Employers' Insurance Company, and Employers Commercial Union Insurance Company of America, and their respective predecessors and successors.

(C) "Hatco-Related Environmental Claims" shall mean the claims, whether sounding in tort, contract, equity, nuisance, invasion of privacy, trespass, negligence, strict liability or any statutory or common law cause of action of any sort, involving alleged, actual, threatened or potential pollution or contamination or exposure to smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquids or gases, petroleum, including crude oil or any fraction thereof, natural gas, natural gas liquids, liquified natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and synthetic gas), waste materials or other irritants, contaminants, or pollutants, or any form of toxic or hazardous substance or material including without limitation, any "hazardous substance" as that term is defined in 42 U.S.C. §9601 which are the subject of the Pending Litigation and arising out of or relating to

114821.1

4

CONFIDENTIAL SUBJECT TO MARCH 2000 PROTECTIVE ORDER

OB-000037

XXX-001699

the Hatco Site, with the exception of claims concerning the Kin-Buc Landfill and any other landfill or disposal area where waste from the Hatco Site was, or was alleged to have been transported, but otherwise including but not limited to (1) any past, present and/or future claim, demand, action, suit, arbitration or mediation demand or statutory or regulatory obligation, proceeding and/or notice of partial or total responsibility, Potentially Responsible Party ("PRP") notice made, asserted or filed, whether at law or in equity, against Grace by Hatco; (2) any past, present and/or future claim, demand, action, suit, arbitration or mediation demand or statutory or regulatory obligation, proceeding and/or notice of partial or total responsibility, Potentially Responsible Party ("PRP") notice made, asserted or filed, whether at law or in equity against Grace by any federal, state, or local authority or other environmental agencies and/or private parties for environmental liabilities, at and/or arising from and/or in connection with the Hatco Site, whether presently known, unknown, or unknowable, involving actual, alleged, threatened, or potential personal injury, bodily injury, or property damage, or injury to property or damage to natural resources, including but not limited to those provided by 42 U.S.C. §9601(6), et seq. (including but not limited to costs incurred and sums expended, or which may in the future be

114821.1

5

CONFIDENTIAL SUBJECT TO MARCH 2000 PROTECTIVE ORDER


OB-000038

XXX-001700

incurred or expended for investigation, removal, distribution, treatment, or containment) involving actual, alleged, threatened or potential personal injury or bodily injury that was caused at any time by conduct related to direct exposure to the Hatco Site; and (3) any third-party claim for injury to property or damage to natural resources, as defined above, involving pollution, contamination, or other injurious environmental condition that was caused at any time by conduct related to the cleanup and remediation of the Hatco Site.

(D) "Policy or "Policies" means the insurance policies, issued or alleged by Grace to have been issued to or for the benefit of Grace by Commercial Union, which are set forth below. Commercial Union represents and warrants that it is unaware of any other contracts of insurance issued or alleged to have been issued to Grace except those listed below. Grace represents and warrants that it is unaware of having purchased any comprehensive general liability insurance from Commercial Union except those Policies listed below:

| Company | Policy No. | Policy Period |
|---------|-----------|---------------|
| American Employers' Insurance Company ("AEIC") | A15-2127-51 | 10/20/62 – 10/20/65 |

114821.1

6


CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000039

XXX-001701

| AEIC | A16-8220-001 | 10/20/65 - 10/20/68 |
|------|--------------|---------------------|
| AEIC | A16-8220-002 | 10/20/65 - 10/20/68 |
| AEIC | A15-8138-001 | 01/27/65 - 10/20/65 |
| AEIC | A16-8220-003 | 10/20/68 - 06/30/71 |
| AEIC | A16-8220-004 | 10/20/68 - 06/30/71 |
| Employers' Commercial Union Insurance Company (of America) | EY-8220-005 | 06/30/71 - 06/30/74 |
| Employers' Commercial Union Insurance Company (of America) | EY-8220-006 | 06/30/71 - 06/30/74 |

Commercial Union does not admit to the applicability of any or all of the Policies to any claims, including but not limited to Hatco-Related Environmental Claims presented by Grace to Commercial Union.

(E) "Effective Date" means the last date any signatory hereto executes this Agreement.

II. SETTLEMENT AMOUNT TO BE PAID BY COMMERCIAL UNION

3. Commercial Union shall pay to W.R. Grace & Co. -- Conn. the sum of Twelve Million Dollars ($12,000,000) (the "Settlement Amount"). Payment of the Settlement Amount shall be made by

114821.1

7


CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000040

XXX-001702

Commercial Union to W.R. Grace & Co. -- Conn. in the following sums and on the following dates: the sum of Four Million Dollars ($4,000,000) on January 15, 1997; the sum of Six Million Dollars ($6,000,000) on January 15, 1998; and the sum of Two Million Dollars ($2,000,000) on January 15, 1999.

## III. RELEASES AND RESERVATIONS

4.    (A)  Grace hereby fully and forever releases and discharges Commercial Union from any and all past, present and future actions, causes of action in law or in equity, suits, debts, liens, contracts, promises, claims, losses, liabilities, obligations, duties and responsibilities, known or unknown, fixed or contingent, direct or indirect, that have been or could have been or might be in the future asserted against Commercial Union with respect to Hatco-Related Environmental Claims arising under any and all of the Policies, from the beginning of time forward to the end of the world, as if the Policies never existed with respect to Hatco-Related Environmental Claims.  A complete extinguishment and termination of the Policies with respect to Hatco-Related Environmental Claims, and any and all rights and obligations thereunder with respect to Hatco-Related Environmental Claims is

114521.1

8



CONFIDENTIAL SUBJECT TO MARCH PROTECTIVE ORDER

OB-000041

XXX-001703

hereby effected, provided, however, that the aforesaid release and discharge with respect to any claim involving actual, alleged, threatened or potential personal injury (other than damage to real estate released above) or bodily injury that was caused at any time by conduct related to direct exposure to or conditions at the Hatco Site shall be limited to the aggregate sum of Five Million ($5,000,000), which sum shall have been paid by way of settlement or judgment of said personal injury (other than damage to real estate released above) or bodily injury claims.

(B)  Grace hereby further releases and discharges Commercial Union from any and all claims for compensatory, punitive, exemplary or statutory damages relating to or based upon any allegations of bad faith, unfair claim practice, unfair trade practice or other acts or state of affairs or failure to act in connection with the investigations, handling, adjustment, litigation, defense or settlement of any and all Hatco-Related Environmental Claims arising out of or relating to the Pending Litigation under the Policies.

(C)  Grace expressly assumes the risk that the alleged costs of the Hatco-Related Environmental Claims may be greater than

114821.1

9



CONFIDENTIAL SUBJECT TO MARCH 2007 PROTECTIVE ORDER

OB-000042

XXX-001704

Grace currently realizes, that the alleged costs may increase in amount or in severity over time and that the costs and/or claims may be progressive, cumulative, unknown and/or unforeseeable, and that there may be hidden, unknown and unknowable damages or costs. Grace nevertheless waives, surrenders, and abandons any rights under the Policies with respect to such costs or liabilities in connection with Hatco-Related Environmental Claims in the Pending Litigation, except as provided in Paragraph 4 (A) herein.

(D)  Because it is the intention of the Parties that this Agreement operate as and constitute a full release and extinguishment of the Policies with respect to Hatco-Related Environmental Claims, except as provided in Paragraph 4 (A) herein, Grace expressly waives any and all rights it may have under any statute, code or ordinance which may limit or restrict the effect of a general release as to claims which the releasor does not know or suspect to exist in his favor at the time of the execution of the release.

IV.  DISMISSAL WITH PREJUDICE

5.  Grace will dismiss, with prejudice, and without costs, its prosecution of its claims against Commercial Union in the

114821.1

· 10

CONFIDENTIAL SUBJECT TO MARCH 2000 PROTECTIVE ORDER

OB-000043

XXX-001705

Pending Litigation.   Grace agrees to file a stipulation of
dismissal with prejudice of the third-party complaint against
Commercial Union in the Pending Litigation within thirty (30) days
of the Effective Date.  Grace and Commercial Union shall bear their
own past costs and attorneys' fees incurred in connection with the
Pending Litigation and the filing of the stipulation of dismissal
with prejudice.   The Parties further agree that they will bear
their respective costs, expenses and fees, including those of their
counsel, in connection with the negotiations for and execution of
this Agreement.

V.    COVENANT NOT TO SUE

      6.    Commercial Union hereby covenants not to sue or otherwise
to seek to recover the Settlement Amount paid to Grace made under
this Agreement from Hatco Corp. or any other insurance company that
wrote insurance coverage for Grace, to the extent that such other
parties do not sue or otherwise seek to recover from Commercial
Union any monies paid to Grace or expenses incurred by such other
parties for Hatco-Related Environmental Claims, provided, however,
that said covenant shall not preclude the right of Commercial Union
to pursue recovery from its reinsurers, if any, for some or all of
the Settlement Amount.

114821.1

- 11



CONFIDENTIAL SUBJECT TO MARCH
2005 PROTECTIVE ORDER

OB-000044

XXX-001706

## VI.  INDEMNIFICATION, HOLD HARMLESS AND DEFENSE

7.    (A)   From and after the Effective Date, except for W.R. Grace & Co., a New York Corporation, which had changed its name to Fresenius National Medical Care Holdings, Inc., Grace as defined herein shall, at the option of Grace, defend Commercial Union and shall indemnify and hold Commercial Union harmless at the sole expense of Grace from and against any and all liability, loss, costs or expenses, imposed upon Commercial Union as a result of any claims, demands, lawsuits, causes of action or proceedings that are asserted, initiated or continued by any person or entity against Commercial Union and that are based upon the Policies and Hatco-Related Environmental Claims except as otherwise provided in this Paragraph 7.  The matters for which Grace is obligated pursuant to this Paragraph 7 to indemnify and hold harmless Commercial Union, or for which Grace has an option to defend Commercial Union, are hereinafter referred to as "Indemnifiable Claims."

(B)   Grace shall have no obligation to indemnify and hold Commercial Union harmless from and against any and all liability as a result of any claims, demands, law suits, causes of action or proceedings that are asserted, initiated or continued by any person

114821.1

12

CONFIDENTIAL SUBJECT TO MARCH 2000 PROTECTIVE ORDER

OB-000045

XXX-001707

or entity against Commercial Union for personal injury (other than damage to real estate released above) or bodily injury and that are based upon the Policies and Hatco-Related Environmental Claims.

(C)  Grace's obligation to indemnify and hold harmless Commercial Union, or Grace's option to defend Commercial Union, for Indemnifiable Claims with respect to the Policies shall be subject to an aggregate limit equal to the Settlement Amount.  Once Grace has paid any liabilities for Indemnifiable Claims of Commercial Union in an amount equal to the Settlement Amount, Grace shall not be obligated to indemnify and hold harmless Commercial Union for further Indemnifiable Claims with respect to the Policies.  Grace is under no obligation, under this Agreement or otherwise, to assume the defense of an Indemnifiable Claim.

(D)(1)    After receipt by Commercial Union of notice of any complaint or the commencement or continuation of any action or proceeding with respect to which indemnification is being sought hereunder, Commercial Union shall notify Grace in accordance with Section 18 and as soon as practicable in writing of such complaint or of the commencement or continuation of such action or proceeding and shall thereafter tender the defense thereof to Grace.

114821.1

13

CONFIDENTIAL SUBJECT TO MARCH 2005 PROTECTIVE ORDER

OB-000046

XXX-001708

(D)(2)    Any failure by Commercial Union to notify Grace of such action or proceeding will relieve Grace from any indemnification obligation with respect thereto.

(E)    After Grace receives any notice pursuant to Section 7(D)(1), Grace shall promptly determine whether it will respond to that notice and assume the defense of Commercial Union named in a complaint or the commencement or continuation of any action.

(F)(1)    If Grace so elects, Grace will assume the defense of such action or proceeding.    Grace and Commercial Union shall mutually agree upon a choice of counsel to represent Commercial Union (which may not include counsel presently representing either Grace or Commercial Union), and Grace shall assume the payment of the fees and disbursements of such counsel.    Grace will consult with and allow Commercial Union complete control over the positions asserted in the interpretation of the language of the Policies, and will consult with Commercial Union in the defense of any notice of any complaint or the defense of the commencement or continuation of any action.

114321.1

· 14



CONFIDENTIAL SUBJECT TO MARCH
2000 PROTECTIVE ORDER

OB-000047

XXX-001709

(F)(2)    Grace and Commercial Union will consult to the extent practicable about all decisions to be made, either procedural or substantive, pertaining in any material manner to any Indemnifiable Claim.  The Parties will make reasonable efforts to accommodate the litigation suggestions of each other before directing counsel to take any action.  The Parties will not dispute any decision that each makes which is lawful and is reasonably made in their discretion.

(F)(3)    The Parties shall keep each other apprised in a timely manner of all significant developments in the defense of Commercial Union in any indemnifiable claim and shall upon reasonable request supply each other with status reports.

(F)(4)    Any settlement or compromise made by Grace on behalf of Commercial Union shall provide that it is not an admission of liability by Commercial Union and is without precedent to Commercial Union.  Grace shall provide reasonable and timely disclosure as soon as is practicable to Commercial Union of any proposed settlement or compromise.  Commercial Union shall have such time as is practicable to review the proposed settlement or compromise and to present its view to Grace.  Any settlement of the

114821.1

15

CONFIDENTIAL SUBJECT TO MARCH 2000 PROTECTIVE ORDER 

OB-000048

XXX-001710

Indemnifiable Claims in the amount of or less than the Settlement Amount may be made by Grace without Commercial Union's consent. Any settlement greater than the Settlement Amount may be made by Grace only with Commercial Union's consent, which shall not be unreasonably withheld. Grace shall use best efforts to keep such settlement or compromise confidential.

(F)(5)    If Grace declines to assume the defense of any Indemnifiable Claims, then Commercial Union shall employ counsel to defend against such Indemnifiable Claims, and Commercial Union shall pay the fees and disbursements of such counsel. Commercial Union shall provide reasonable and timely disclosure as soon as is practicable to Grace of any proposed settlement or compromise and Grace shall have such time as is practicable to review the proposed settlement or compromise and to present its view to Commercial Union. Any settlement of the Indemnifiable Claims may be made by Commercial Union only with Grace's consent, which shall not be unreasonably withheld. Commercial Union shall keep such settlement or compromise confidential.

(F)(6)    In any action or proceeding in which Grace assumes the defense of Commercial Union, Commercial Union will have the

114821.1

· 16



CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER                                OB-000049

XXX-001711

right to participate in such litigation and to retain its own counsel at Commercial Union's own expense.

(G)  If Commercial Union settles any such claims without previously obtaining Grace's consent, which consent shall not be unreasonably withheld, then Grace shall be relieved of any obligation to indemnify Commercial Union for such settlement. Commercial Union shall use best efforts to keep such settlement or compromise confidential.

(H)  Nothing herein shall constitute any waiver of Commercial Union's attorney-client privilege, which privilege shall extend only to such counsel retained to represent Commercial Union and shall not extend to Grace or its counsel unless specifically waived by Commercial Union in writing with reference to a particular attorney-client communication.

(I)  Commercial Union and Grace shall cooperate reasonably with each other to protect their respective interests with respect to claims for which Grace may be liable for indemnification under Section 7.

114521.1

17



(J)  If Grace has assumed the defense of any action or proceeding, Commercial Union shall comply in a timely manner with Grace appointed counsel's requests for access to documentation or information requested by Grace appointed counsel for purposes of defense.  The Parties shall cooperate with each other to avoid taking any positions in such litigation which are adverse to thier respective general business interests.

(K)  If Grace has failed or declined to assume the defense of any action or proceeding, Grace shall comply in a timely manner with Commercial Union's requests for access to documentation or information requested by Commercial Union for purposes of such defense.

(L)  Commercial Union and Grace shall cooperate reasonably with each other with respect to Indemnifiable Claims.  If Grace has assumed the defense of any action or proceeding, Commercial Union shall comply in a timely manner with Grace's appointed counsel's request for access to documentation or information requested by Grace's appointed counsel for purposes of defense.  If Grace has declined to assume the defense of any action or proceeding, Grace shall comply in a timely manner with Commercial Union's requests

114821.1

18



CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000051

XXX-001713

for access to documentation or information pertaining to such defense.

## VII. CONFIDENTIALITY OF AGREEMENT

8. Except as expressly provided in Paragraph 8 (A), (B), (C), (D) and (E), this Agreement and all matters relating to its existence, terms, negotiations and implementation shall be kept strictly confidential. This Agreement and the implementation of its terms are to be disclosed pursuant only to an order of court or by written agreement by all the Parties, except that:

(A) The Agreement may be disclosed provided that the entity making a disclosure provides at least 30 days written notice prior to disclosure, setting forth the information proposed to be disclosed, the statute, tribunal or other legal authority requiring disclosure and the circumstances pursuant to which disclosure is proposed to be made, along with a request to consent to such disclosure. Further, the entity to which disclosure is made must be advised that the disclosure is subject to this confidentiality provision and agrees to be bound.

114821.1

19



CONFIDENTIAL SUBJECT TO MARCH 2003 PROTECTIVE ORDER

OB-000052

XXX-001714

(B) No part of this Agreement, its existence, terms, negotiation, development, implementation or performance shall be admissible or used in any manner in any litigation, claims or other proceeding, provided, however, that such evidence may be offered in any action seeking solely to enforce its terms or in connection with any litigation between Commercial Union and any of its reinsurers.

(C) To the extent necessary to obtain insurance coverage for a Hatco-Related Environmental Claim from an entity other than Commercial Union, the Agreement may be disclosed, provided that the entity to which disclosure is made is advised that the disclosure is subject to this confidentiality provision and agrees to be bound.

(D) Any party may make copies of this Agreement available to its accountants, to its counsel, to its lenders, underwriters or reinsurers and to counsel for such lenders, underwriters or reinsurers, provided, that the entity to which disclosure is made is advised that the disclosure is subject to this confidentiality provision and agrees to be bound.

114821.1

20

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000053

XXX-001715

(E)  Any Party may make reference to or describe this Agreement to the extent that such disclosure is required to comply with any court, governmental agency, regulatory, arbitration tribunal or accounting/auditing requirement or otherwise required by law applicable to a party, but shall not make available a copy of the Agreement nor shall the reporting Party identify any other Parties to this Agreement.  In the event that either a governmental agency or any other entity requests a copy of the Agreement or requests the identity of the other Parties to the Agreement, the Party to whom the request is made shall, prior to disclosure, and as soon as practicable, notify all other Parties to permit a Party(ies) the opportunity to participate in opposing such request.

8.1 (A)    Except as expressly set forth in Paragraph 8, where one or more Parties object to disclosure of the Agreement to the entity not a Party, the objecting Party shall be responsible for taking all necessary actions to prevent disclosure of this Agreement to the entity not a Party.  The costs associated with the prevention of disclosure of this Agreement shall be borne by the objector to the disclosure.

114821.1

21

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000054

XXX-001716

8.2  Except as expressly set forth in Paragraph 8, in any action in which a Party has been ordered to produce this Agreement, related communications and drafts, the producing Party shall seek a protective order limiting the use of this Agreement, related communications and drafts, to the particular purpose of the pending litigation in which it is produced and take all steps necessary to bar the disclosure to any entity not a Party.

8.3  Except as expressly set forth in Paragraph 8, any Party which has produced Confidential Documents and Information may require the other parties to return all specifically designated Confidential Documents and Information in their possession, as well as in the possession of their counsel, retained experts, and/or consultants, including all copies.  In lieu of returning all such Confidential Documents and Information, the Party from whom the Confidential Documents and Information has been requested may certify in writing that all such requested Confidential Documents and Information have been destroyed.

VIII.    RESERVATION OF RIGHTS

114821.1

22

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000055

XXX-001717

9.   Commercial Union reserves all of its rights, without limitation, to deny or dispute coverage to Grace on any and all grounds for any and all claims for coverage which are not released in this Agreement.

10.   Grace reserves all of its rights, without limitation, to enforce coverage provided by Commercial Union on any and all grounds for any and all claims for coverage which are not released in this Agreement.

IX.  SETTLEMENT NOT AN ADMISSION

11.   Grace acknowledges that Commercial Union disputes coverage under the Policies with respect to Hatco-Related Environmental Claims.   Grace recognizes that Commercial Union's payment of the Settlement Amount is to be made in compromise of disputed coverage demands and is not, and cannot be construed as an admission by Commercial Union that any defense, indemnity or other coverage or obligation to pay exists under any of the Polices, or that Commercial Union has any other obligation of any nature whatsoever (other than those arising under this Agreement) with respect to Hatco-Related Environmental Claims.  Except as otherwise

114821.1

23


CONFIDENTIAL SUBJECT TO MARCH
2000 PROTECTIVE ORDER

OB-000056

XXX-001718

stated herein, with respect to rights and obligations regarding all matters outside the scope of this Agreement or asserted by any person not a party to this Agreement, the Parties reserve all positions and all other rights, defenses and privileges concerning such matters.

12.    The Parties agree that none of the terms of this Agreement, nor any aspect of its negotiation or performance shall be used in any manner by any person in any future action or proceeding as evidence of the rights, duties or obligations of the Parties under the Policies.

## X.    APPLICATION OF AGREEMENT ONLY TO THE PARTIES

13.    This Agreement is intended to confer rights and benefits only upon the Parties hereto, and not upon any other party or entity; no party or entity other than the Parties hereto shall have any legal enforceable rights under this Agreement.    Any right of action for breach of this Agreement is reserved to the Parties only.

114821.1

24


CONFIDENTIAL SUBJECT TO MARCH 2003 PROTECTIVE ORDER

OB-000057

XXX-001719

14. This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, this Agreement does not reflect upon the Parties' views as to their rights and obligations with respect to matters or persons outside the scope of this Agreement. No part of this Agreement, it negotiations, development, implementation, or performance may be used in any manner as evidence of the rights, duties, or obligations of Grace or Commercial Union with respect to matters, persons or entities outside the scope of this Agreement.

XI.   ASSISTANCE AND COOPERATION

15. Each of the Parties further agrees that it will execute and deliver to the other Party all instruments and do such further acts and things as the other Party may reasonably request when they are necessary to effectuate the purposes of this Agreement.

16. Should any person or entity not a party hereto challenge the validity of this Agreement, or any term thereof, the Parties shall provide to each other such cooperation and assistance as the other Party may reasonably request in order to resist such a challenge.

114821.1

25



CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000058

XXX-001720

## XII. EXECUTION

17.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall be deeded one and the same instrument. This Agreement consists of 33 typewritten pages, inclusive of signature pages.

## XIII.    NOTICE

18.  Any statements, communications, or notices to be provided pursuant to this Agreement shall be sent to the attention of the persons indicated below until such time as notice of any change of person to be notified or change of address is forwarded to the Parties hereto:

(a)  W.R. Grace & Co. -- Conn.
One Town Center Road
Boca Raton, Florida 33486
Attn:   Secretary

with a copy to: Director of Corporate Risk Management

(and copy to)

Anthony J. Marchetta, Esquire
Pitney, Hardin, Kipp, Szuch

114821.1

26

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000059

XXX-001721

P.O. Box 1945
Morristown, NJ 07962-1945

(b)   Commercial Union Insurance Company
One Beacon Street
Boston, MA  02108
Attn:  Harvey G. Lewis

(and copy to)

James W. Christie, Esquire
Christie, Pabarue, Mortensen
and Young
A Professional Corporation
1880 JFK Boulevard
10th Floor
Philadelphia, PA  19103


## XIV. PARTIAL INVALIDITY

19.   If any provision of this Agreement, or the application of
any term or provision, is held to be illegal, invalid, or
unenforceable under present or future laws, such provisions shall
be fully severable.  In such event: (a) the Agreement shall be
construed and enforced as if such illegal, invalid, or
unenforceable provision has never comprised a part of the
Agreement; (b) the remaining provisions of the Agreement shall
remain in full force and effect and shall not be affected by the
illegal, invalid, or unenforceable provisions, or by its severance
from this Agreement, unless the effect of severance of such

114821.1

27

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000060

XXX-001722

provision shall conclusively make continued performance under this Agreement impossible; and (c) in lieu of such illegal, invalid, or unenforceable provision, there shall be added automatically as part of this Agreement a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and as may be legal, valid, or enforceable.

## XV.   REMEDY FOR BREACH

20.  If any Party to this Agreement contends that any other Party has materially breached the terms of the Agreement, such Party shall give the other Party to this Agreement notice thereof by certified mail.  The Party which contends that the Agreement has been materially breached shall give the other Party ten (10) days from the date of the notice to cure the alleged breach before taking any legal action and the Party to whom written notice of a breach has been given shall not take any legal action under this Agreement within that ten day period.  However, the failure of a Party to object to one or more breaches or violations of this Agreement shall not constitute a waiver or limitation upon the right of such Party to object to any other breach or violation of this Agreement.

114821.1

28

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000061

XXX-001723

**XVI. ENTIRE AGREEMENT AND AMENDMENTS TO AGREEMENT**

21.   This Agreement is the complete and entire agreement of the Parties and may not be modified, changed, contradicted, added to, or altered in any way by any previous or concurrent written or oral agreements or any subsequent oral agreements.  No amendments or variations of the terms of this Agreement shall be valid unless made in writing and signed by both Parties.

**XVII.    NO CONSTRUCTION AGAINST EITHER PARTY**

22.   This Agreement was negotiated at arms-length with all Parties receiving advice from independent legal counsel.  The Parties read this entire Agreement and know the contents hereof, that the terms hereof are contractual and not merely recitals, and that they have signed this Agreement of their own free act..  It is the intent of the Parties that no part of this Agreement be construed against any of the Parties because of the identity of the drafter or the fact that Commercial Union is an insurance company.

**XVIII.    REPRESENTATION AND WARRANTIES**

114821.1

CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000062

XXX-001724

23.   Grace represents that as of the date of execution of this Agreement, (a) it is not aware of any Hatco-Related Environmental Claim being made against the subject Policies by any entity formerly owned by, related or affiliated with Grace, and on whose behalf Grace does not have the authority to bind to this Agreement, and (b) it is not aware of any Hatco-Related Environmental Claim that is going to be made or that is contemplated being made by any entity formerly owned by, related to, or affiliated with Grace against the subject Policies after execution of this Agreement.

24.   No Party shall assign transfer, convey or sell, or purport to assign, transfer, convey or sell to any entity or person, any cause of action, chose in action, or part thereof, arising out of or connected with the matters released herein, without first obtaining the written consent of the other Parties; provided, however, that this sentence shall not prohibit any assignment by a Party by merger, consolidation, operation of law or to a Party who succeeds to all or substantially all of such Party's assets.  Subject to the foregoing, this Agreement shall extend to and be binding upon the successors and assigns of the Parties hereto.

114821.1

· 30


CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000063

XXX-001725

25.  The Parties represent, warrant and agree that they (a) are the sole and lawful owners of all right, title, and interest in and to every claim or matter released herein; (b) have not assigned or transferred or purported to or attempted to assign or transfer to any person or entity any claim or other matter released herein; and (c) have taken all necessary corporate and internal legal actions to duly approve the making and performance of this Agreement and that no further corporate or other internal approval is necessary.

26.  The making and performance of this Agreement will not violate any provision of law or of its respective articles of incorporation, charter or by-laws.

27.  The article headings contained in this Agreement are for convenient reference only and shall not in any way affect the meaning or interpretation of this Agreement.

28.  Each of the Parties represents, warrants and certifies that the person signing this Agreement on its behalf is authorized to execute this Agreement, and that this Agreement constitutes a valid and binding obligation.

114821.1

31


CONFIDENTIAL SUBJECT TO MARCH 2009 PROTECTIVE ORDER

OB-000064

XXX-001726

IN WITNESS WHEREOF, THIS AGREEMENT HAS BEEN READ AND SIGNED IN
DUPLICATE ORIGINALS BY THE DULY AUTHORIZED REPRESENTATIVES OF THE
PARTIES:

W.R. GRACE & CO. -- CONN.

By: _____ AVP       Date: 12/17/96
    Name and Title
    W.R. Grace & Co. -- Conn.
    One Town Center Road
    Boca Raton, Florida 33486


Witness: _____          Date: 12/17/96

Address: 1360 SW 1 St Boca FL 33486

SWORN to and SUBSCRIBED
before me this 17ᵗʰ day
of DECEMBER , 1996.

_____
    Notary Public

JODY M. CROSSMAN
MY COMMISSION # CC 294590
EXPIRES: June 14, 1897
Bonded Thru Notary Public Underwriters

W.R. GRACE & CO. -- DEL.

By: _____ AVP       Date: 12/17/96
    Name and Title
    W.R. Grace & Co. -- Del.
    One Town Center Road
    Boca Raton, Florida 33486


Witness: _____          Date: 12/17/96

Address: 1360 SW 1 St Boca FL 33486

SWORN to and SUBSCRIBED
before me this 17ᵗʰ day
of DECEMBER , 1996.

_____
    Notary Public

JODY M. CROSSMAN
MY COMMISSION # CC 294590
EXPIRES: June 14, 1897
Bonded Thru Notary Public Underwriters

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

114821.1                    32

OB-000065

XXX-001727

W.R. GRACE & CO. (a New York Corporation,
which has changed its name to Fresenius
National Medical Care Holdings, Inc.)

By: _____ AVP          Date: 12/17/96
    Name and Title
    W.R. Grace & Co. -- Conn.
    One Town Center Road
    Boca Raton, Florida 33486

    Attorney-in-Fact for
    W.R. Grace & Co. (a New York Corporation,
    which has changed its name to Fresenius
    National Medical Care Holdings, Inc.)

Witness: _____          Date: 12/17/96

Address: 1360 SW 1 St Boca FL 33486

SWORN to and SUBSCRIBED
before me this 17th day
of DECEMBER , 1996.

_____
[Notary Public]

JODY M. CROSSMAN
MY COMMISSION # CC 294590
EXPIRES: June 14, 1997
Bonded Thru Notary Public Underwriters

COMMERCIAL UNION INSURANCE COMPANY

By: _____          Date: 12/13/96
    Harvey G. Lewis, Vice President

Witness: _____          Date: 12/13/96

Address: 29 Meridian St. Malden Mass.

SWORN to and SUBSCRIBED
before me this 13th day
of December , 1996.

_____
Notary Public

MICHAEL F. LINCOLN
Notary Public
My Commission Expires Dec. 20, 1996

CONFIDENTIAL SUBJECT TO MARCH
2009 PROTECTIVE ORDER

OB-000066

XXX-001728