JUN. 30. 2000 12:19PM    FFI  CREDIT                              NO. 4155  P. 2/5


Fireman's Fund

Specialty Surety Indemnity Agreement

KNOW ALL MEN BY THESE PRESENTS that whereas the undersigned, hereinafter called Indemnitors, have requested and do hereby request FIREMAN'S FUND INSURANCE COMPANY, THE AMERICAN INSURANCE COMPANY, NATIONAL SURETY CORPORATION, ASSOCIATED INDEMNITY CORPORATION or AMERICAN AUTOMOBILE INSURANCE COMPANY, as the case may be, any one or all hereinafter referred to as Surety, to execute or procure the execution of such bonds, undertakings, or recognizances (all of which are hereinafter included within the term "Bond or Bonds") as have been and such as may hereafter be applied for directly or through an agent, attorney or other representative or required, solely or as co-adventurer with others, by any of the Indemnitors or by any person, firm, corporation or association whose name shall, for that purpose, have been furnished to the Surety by any of the Indemnitors, it being understood and agreed that this instrument shall cover all Bonds so applied for and executed, whether or not this instrument is referred to or mentioned in connection therewith; and, whereas, the undersigned understand that the Surety expressly requires the delivery of this Indemnity Agreement as part of the consideration for the execution by the Surety of such Bonds which may hereafter be furnished, or for the refraining from cancelling said Bonds;

NOW THEREFORE, in consideration of the premises and of the execution or continuance of such Bonds, the Principals and the other Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, do hereby jointly and severally covenant and agree with the Surety, its successors and assigns, as follows:

1. The Indemnitors will pay, when due, all premiums for each of such Bonds in accordance with the Surety's regular manual rates in effect on the date such Bond becomes effective, as long as liability thereunder shall continue, and until the Surety is furnished with evidence satisfactory to the Surety of its discharge or release from the Bonds, or of all liability by reason thereof.

2. The Indemnitors will indemnify the Surety against any and all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur by reason of, or in consequence of the execution of such Bonds and any renewal, continuation or successor thereof, including but not limited to sums paid or liabilities incurred in settlement of and expenses paid or incurred in connection with claims, suits or judgments under such Bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid. The Indemnitors will indemnify the Surety against any and all liability, loss, damages, fees of attorneys, and other expenses which the Surety may sustain or incur by reason of or in consequence of reliance upon representations made by the Indemnitors regarding defenses available to Principal and/or Surety to claims made against any such Bonds.

3. If the Surety shall set up a reserve to cover any liability, claim asserted, suit or judgment under any such Bond, the Indemnitors will, immediately upon demand and whether or not the Surety shall have made any payment therefore, deposit with the Surety a sum of money equal to such reserve and any increase thereof as collateral security on such Bond, and such sum and any other money or property which shall have been or shall hereafter be pledged as collateral security on any such Bond shall be available, in the discretion of the Surety, as collateral security on all Bonds coming within the scope of this instrument or for any other indebtedness of the Indemnitors to the Surety and any such collateral security shall be held subject to the terms of the Surety's regular form of receipt of collateral, which is by reference made a part hereof. The Surety shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the undersigned would be obligated to indemnify the Surety under the terms of this Agreement. Surety shall have no obligation to invest, or to provide a return on, the deposit.

4. The Surety may at its option, file or record this Agreement or any other document executed by any or all of the Indemnitors, individually or jointly, in connection with application, issuance or execution of any Bond or Bonds, as a security agreement or as part of a financing statement or as notice of its prior interest and assignment under the provisions of the Uniform Commercial Code or any other statute or regulation of any jurisdiction or agency, but that the filing or recording of such document shall be solely at the option of the Surety and that the failure to do so shall not release or impair any of the obligations of the Indemnitors under this Agreement. Any copy of this Agreement, certified by the Surety so to be, shall be considered for purposes of filing as a financing statement, an original copy.

5. The Surety shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against the Surety or the Indemnitors or any one of them on any such Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Surety's decision thereon, if made in good faith, shall be final and binding upon the Indemnitors. An itemized statement of payment made by the Surety for any of the purposes specified herein, sworn to by an officer of the Surety, or the voucher or vouchers for such payments, shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety for such amounts, with interest.

6. The Indemnitors hereby authorize the Surety in its sole discretion to do the following: (a) from time to time to make or consent to any change in, or issue any substitute for or renewal of, any such Bond, or in any contract referred to in any such Bond, and this instrument shall apply to such substituted or changed Bond or renewal; (b) if any such Bond be given in an action or proceeding in any court, to recognize any attorney of record in such action or proceeding for any party thereto at the date of the execution of such Bond as the authorized representative of such party until the Surety shall have been fully discharged from liability under such Bonds; (c) to take such other steps as the Surety may deem necessary or proper to obtain release from liability from any such Bond.

DEFENDANT'S EXHIBIT
FFICSC Exh. 3

FFICSC000011

7. The Indemnitors hereby agree that they shall at all times, keep themselves intimately familiar with the financial condition of the Principal, as well as the status of all obligations bonded by the Surety. The Indemnitors hereby waive notice of the execution of any such Bonds or of any act, fact or information coming to the notice or knowledge of the Surety concerning or affecting its rights or liabilities under any such Bond or rights or liabilities of the Indemnitors hereunder, notice of all such being hereby expressly waived.

8. If the Surety shall procure any other company or companies to execute or join with it in executing, or to reinsure, any such Bonds, this instrument shall inure to the benefit of such other company or companies, its or their successors and assigns, so as to give to it or them a direct right of action against the Indemnitors to enforce this instrument and, in that event, the word "Surety", wherever used herein, shall be deemed to include such company or companies, as their respective interests may appear.

9. The liability of the Indemnitors hereunder shall not be affected by the failure of any party to sign any such Bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or indemnitor, nor the return or exchange of any collateral that may have been obtained; and if any party signing this instrument is not bound for any reason, this obligation shall still be binding upon each and every other party.

10. Separate suits may be brought on this Agreement and any cause of action shall not prejudice nor bar the bringing of other suits.

11. The Indemnitors waive any defense that this instrument was executed subsequent to the date of any such Bond. In the event any part of this Indemnity Agreement shall be void under the law of the place governing the construction hereof, then such part only shall be considered as deleted and the remainder of this Agreement shall endure in full force and effect.

12. The Surety, at its option, may decline to execute or participate in or procure the execution of any Bonds.

13. Wherever used in this instrument the plural term shall include the singular and the singular shall include the plural, as the circumstances require.

14. The Indemnitor, as the parent company of its United States subsidiaries, hereby agrees to submit itself to personal jurisdiction in whatever jurisdiction where loss results, for the recovery of any sums paid by the Surety as result of loss, costs, expense and attorney's fees incurred by any of the Indemnitor's subsidiaries.

15. Whereas, the Indemnitors have a substantial material and beneficial interest in the obtaining of said Bonds on behalf of various related companies, it is agreed that this Agreement shall apply to any Bonds executed on behalf of any subsidiary, affiliated partnership, joint venture or corporation of the Indemnitors, now existing or hereafter formed or acquired, and whether partially or wholly owned or controlled, as fully as if the names and signatures of such subsidiaries or affiliates appeared herein as Indemnitors and/or Principals.

16. The Indemnitors hereby waive and abandon, so far as their respective obligations under this Agreement are concerned, all rights to claim any of the property, including the respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession.

17. The obligations of the Indemnitors hereunder shall be continuous; provided, however, that any of the Indemnitors may give the Surety not less than 30 days written notice by registered mail of his desire to terminate this Agreement but any such notice of termination shall not operate, modify, bar, discharge, limit, affect, or impair his liability hereunder on or by reason of any such Bond executed prior to the termination of such 30 days.

18. The undersigned will furnish to the Surety such information as it may request from time to time concerning the financial condition of the undersigned. The Surety may at reasonable times and places and from time to time, examine and copy the books, records and accounts of the undersigned.

The Surety may obtain information concerning the affairs and operations of the undersigned and any transaction between or among the undersigned from any banks, depositories, obligees of the Bonds, credit reporting agencies or other persons, or who are hereby expressly authorized to furnish such information to the Surety.

19. If any proceeding is brought against the Surety in which the Surety desires to join any one of the undersigned by reason of the undertakings in this Agreement, each of the undersigned agrees that he will, upon written notice of the Surety to do, voluntarily appear in such proceedings and accept service of process and other papers either personally or by an attorney of the undersigned's choice. If any of the undersigned fails upon such a notice from the Surety so to appear, such undersigned hereby designates the Secretary of the State or Territory in which proceedings are pending as his agent for the service of process in any such proceedings.

With respect to any action brought by the Surety on this Agreement in a jurisdiction in which one or more of the undersigned reside, are domiciled, are doing business or are found, each of the undersigned who are not in the jurisdiction hereby designates each of the undersigned in such jurisdiction as his agent to receive on his behalf service of process in such action.

20. This writing constitutes the entirety of the Agreement between Principal, Indemnitors, and Surety regarding the execution of Bonds and handling of claims against such Bonds. It may not be added to, changed, or modified orally. No addition, change, or modification shall be effective unless specifically agreed in writing.

21. Upon request of Surety, the Indemnitors will procure the discharge of Surety from any bond, and all liability by reason thereof.

22. In the event the Indemnitors fail to comply with such demand as stated in Item 3 of this Indemnity Agreement, Indemnitors hereby authorize and empower any attorney of any court of record of the United States or any of its territories or possessions, to appear for them or any of them in any suit by Surety and to confess judgment against them or any of them for any sum or sums of money up to the amount of any or all Bond or Bonds; with costs, interest and attorney's fees; such judgment, however, to be satisfied upon the payment of any and all such sums as may be found due by the Indemnitors to Surety under the terms of this

JUN. 30. 2000... than ...  ...II liability of the Indemnitors to the Surety shall have been paid in full. Demand shall be sufficient if sent by registered or certified mail, hand delivered, or via overnight mail to the Indemnitors last known address to Surety, whether or not actually received.

IN TESTIMONY WHEREOF, the Indemnitors, intending to be legally bound hereby, have hereunder set their hands and affixed their seals this __5TH__ day of __JULY__, 19 __2000__.

W.R. GRACE & CO. - CONN.
_____ (Seal)
ROBERT M. TAROLA, SENIOR VICE PRESIDENT, CHIEF FINANCIAL OFFICER & TREASURER
P.O. Address __7500 GRACE DRIVE__
__COLUMBIA MD 21044__

W.R. GRACE & CO.
_____ (Seal)
P.O. Address __7500 GRACE DRIVE__
__COLUMBIA MD 21044__

_____ (Seal)
P.O. Address _____

_____ (Seal)
P.O. Address _____

_____ (Seal)
P.O. Address _____

_____ (Seal)
P.O. Address _____

_____ (Seal)
P.O. Address _____

_____ (Seal)
P.O. Address _____

INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____ ss:

On this _____ day of _____, 19____, before me personally came _____ to me known and known to me to be the *individual(s)* who executed the foregoing instrument, and acknowledged that ____ he ____ executed same.

_____
NOTARY PUBLIC

PARTNER(S) ACKNOWLEDGEMENT

STATE OF _____
COUNTY OF _____ ss:

On this _____ day of _____, 19____, before me personally came _____ to me known and stated that ____ he ____ is(are) *partner(s)* in the firm of _____ and acknowledged that ____ he ____ executed the foregoing instrument as the act of said firm.

_____
NOTARY PUBLIC

360775-9-92

FFICSC000013

JUN. 30, 2000 12:21PM    FFI' ~URETY                    NO. 4199    P. 5/5

## CORPORATE ACKNOWLEDGMENT(S)

STATE OF __MARYLAND__

COUNTY OF __MONTGOMERY__    ss:

On this __5TH__ day of __JULY__, 19 __2000__, before me personally came __ROBERT M. TAROLA__ to me known, who, being by me duly sworn, did depose and say that he resides in __BALTIMORE, MARYLAND__ that he is the __SENIOR VICE PRESIDENT, CHIEF FINANCIAL OFFICER AND TREASURER__ of the both __W.R. GRACE & CO. and W.R. GRACE & CO. - CONN.__ the *corporation* which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

_____
NOTARY PUBLIC
Commission expires February 3, 2000

STATE OF _____

COUNTY OF _____    ss:

On this _____ day of _____, 19 _____, before me personally came _____ to me known, who, being by me duly sworn, did depose and say that he resides in _____ that he is the _____ of the _____ the *corporation* which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

_____
NOTARY PUBLIC

STATE OF _____

COUNTY OF _____    ss:

On this _____ day of _____, 19 _____, before me personally came _____ to me known, who, being by me duly sworn, did depose and say that he resides in _____ that he is the _____ of the _____ the *corporation* which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

_____
NOTARY PUBLIC

STATE OF _____

COUNTY OF _____    ss:

On this _____ day of _____, 19 _____, before me personally came _____ to me known, who, being by me duly sworn, did depose and say that he resides in _____ that he is the _____ of the _____ the *corporation* which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

_____
NOTARY PUBLIC

FFICSC000014