No. 06-00-00112-CV

IN THE COURT OF APPEALS
FOR THE SIXTH DISTRICT OF TEXAS
TEXARKANA, TEXAS

W.R. GRACE & CO.,
Appellant

vs.

AARON CLIFTON EDWARDS, ET AL.,
Appellees

ON APPEAL FROM THE 60TH JUDICIAL DISTRICT COURT OF
JEFFERSON COUNTY, TEXAS;
TRIAL COURT CAUSE NO. B-150,896-J

**BRIEF OF APPELLANT**

Sandra F. Clark
State Bar Id. No. 04294520
Elizabeth B. Pratt
State Bar Id. No. 16239450
Mehaffy & Weber
P.O. Box 16
Beaumont, TX 77704
(409) 835-5011
(409) 835-5177 Telecopier
Attorneys for Appellants

OF COUNSEL:
Thomas M. Farrell
Solace Kirkland Southwick
Mayor, Day, Caldwell & Keeton, L.L.P.
700 Louisiana, Suite 1900
Houston, TX 77002
(713) 225-7121

**ORAL ARGUMENT REQUESTED**

MW/255275

DEFENDANT'S
EXHIBIT

FFICSC Exh. 5

FFICSC000017

No. 06-00-00112-CV

IN THE COURT OF APPEALS
FOR THE SIXTH DISTRICT OF TEXAS
TEXARKANA, TEXAS

W.R. GRACE & CO.,
Appellant

vs.

AARON CLIFTON EDWARDS, ET AL.,
Appellees

ON APPEAL FROM THE 60TH JUDICIAL DISTRICT COURT OF
JEFFERSON COUNTY, TEXAS;
TRIAL COURT CAUSE NO. B-150,896-J

**BRIEF OF APPELLANT**

Sandra F. Clark
State Bar Id. No. 04294520
Elizabeth B. Pratt
State Bar Id. No. 16239450
Mehaffy & Weber
P.O. Box 16
Beaumont, TX 77704
(409) 835-5011
(409) 835-5177 Telecopier
Attorneys for Appellants

OF COUNSEL:
Thomas M. Farrell
Solace Kirkland Southwick
Mayor, Day, Caldwell & Keeton, L.L.P.
700 Louisiana, Suite 1900
Houston, TX 77002
(713) 225-7121

**ORAL ARGUMENT REQUESTED**

MW/255275

FFICSC000018

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a), Texas Rules of Appellate Procedure, Grace sets forth below the parties to the trial court's judgment and their counsel.

### Plaintiffs/Appellees
Aaron C. Edwards
James T. Beam
Edward E. Storey
John M. Thomas
Sheila Martin, Individually and as Administratrix of the Estate of Jessie J. Williamson, Deceased, and as Representative of the Wrongful Death Beneficiaries

### Counsel for Plaintiffs/Appellees
Glen W. Morgan
Cris E. Quinn
John Werner
David Ferrell
Joseph D. Deshotel
Reaud, Morgan & Quinn
801 Laurel Street
Beaumont, Texas  77701
(409) 838-1000
(409) 833-8236  fax

### Defendants/Appellants
Pittsburgh Corning Corporation
W.R. Grace & Co.; W. R. Grace & Co.-Conn.

### Counsel for Defendant/Appellant Pittsburgh Corning Corporation
James H. Powers
Powers & Frost
909 Fannin, Suite 2600
Houston, Texas  77010
(713) 767-1555

Jeffrey S. Boyd
Thompson & Knight
98 San Jacinto, Suite 1200
Austin, Texas  78701
(512) 469-6100

MW/255275

-i-

FFICSC000019

**Counsel for Defendant/Appellant W. R. Grace & Co.**
Sandra Clark
Keith Foley
Elizabeth B. Pratt
Mehaffy & Weber
2615 Calder, Suite 800
Beaumont, Texas 77702
(409) 835-5011
(409) 835-5177 fax

Thomas M. Farrell
Solace Kirkland Southwick
Mayor, Day, Caldwell & Keeton, L.L.P.
700 Louisiana, Suite 1900
Houston, Texas 77002
(713) 225-7000
(713) 225-7047 fax

MW/255275

**FFICSC000020**

# TABLE OF CONTENTS

PAGE

Identification of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiv

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xv

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.    Grace was denied its right to a fair and impartial jury that fairly represented the
      community . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    The right to fair and impartial jurors is a fundamental right . . . . . . . . . . . . . . 6

      B.    The *Edwards* jury was impermissibly assembled . . . . . . . . . . . . . . . . . . . . . . 6

      C.    Sixty three percent of panel was improperly excused . . . . . . . . . . . . . . . . . . . 7

      D.    Deferred jurors were not shuffled into the panel as a whole . . . . . . . . . . . . . . 8

      E.    Appellant timely objected to the jury selection process . . . . . . . . . . . . . . . . . . 9

      F.    The trial was materially unfair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.   The trial court erred in failing to grant Grace's motion to strike jurors for cause
      and by improperly excusing a sitting juror . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.  The Trial Court Erred in Failing to Excuse a Juror Disqualified by Statute . . . . . . . . . 13

      A.    Juror Bertha Broussard was disqualified for bias as a matter of law . . . . . . . . . 14

MW/255275

-iii-

FFICSC000021

B.      Juror Broussard had a direct interest in the outcome of the case . . . . . . . . . . . . 16

IV      Grace is entitled to a new trial based on juror misconduct during voir dire and the trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

A.  Concealing material information is juror misconduct . . . . . . . . . . . . . . . . . . . 17

1.  Broussard's failure to disclose her imminent lawsuit was misconduct . . . . . 17

2.  The misconduct was material . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

3.  The harm from the misconduct was obvious . . . . . . . . . . . . . . . . . . . . . . . . 18

B.  Evidence of Misconduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

V.      Appellees failed to present evidence of exposure to Grace products, thus negating the jury's liability and causation findings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

A.      Appellees failed to prove exposure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI.     The trial court's erroneous exclusion of evidence of other products used at U.S. Steel-Fairfield deprived Grace of key defenses and caused rendition of an improper verdict . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

A.      Proof that injury was caused solely by third parties . . . . . . . . . . . . . . . . . . . 24

B.      The court erroneously presumed joint tort feasor status . . . . . . . . . . . . . . . . 25

VII.    The trial court's erroneous exclusion of evidence of knowledge of the employer resulted in rendition of improper verdict . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

VIII.   The trial court erred in submitting breach of warranty claims . . . . . . . . . . . . . . . . . . 30

IX.     The trial court erred in failing to grant Grace's motion for directed verdict on statute of limitations against Appellees Edwards, Thomas, and the decedent Williamson and in submitting jury instructions nos. 1, 2, 3, 4, 5 . . . . . . . . . . . . . . . . . . . . . . . . . . 32

X.      The trial court erred in denying Grace's motion to sever and in overruling Grace's Objection to Consolidation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

XI.     The jury's compensatory damage verdict is excessive and justifies remittitur or reversal for a new trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

MW/255275

FFICSC000022

XII.  The jury awarded excessive punitive damages and the trial court erred in refusing to
      remit the punitive damages awards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

    A.   Alabama law on awarding and reviewing punitive damages is
         clear and well-developed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

    B.   The trial court failed to follow Alabama law by allowing
         the jury to consider unsubstantiated and improper arguments
         regarding Grace's financial position, which resulted in
         an erroneous verdict . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

    C.   The trial court failed to follow the United States Supreme
         Court and Alabama law in refusing to remit the amount
         of punitive damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

         1.   The court erroneously ignored the substantial
              Evidence on the impact of the punitive damages
              awards on third parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

         2.   The court effectively ignored the evidence regarding
              the limited profits Grace earned . . . . . . . . . . . . . . . . . . . . . . . . . . 43

         3.   The court erroneously ignored the evidence regarding
              the amounts that these plaintiffs received in settlement
              credits, the amounts other Grace claimants have
              received in the past and the amounts Grace has reserved
              for other claimants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

         4.   The findings related to Grace's purported financial
              Condition are largely irrelevant . . . . . . . . . . . . . . . . . . . . . . . . . . 44

         5.   The court erroneously ignored the evidence that Grace
              has handled these claims in a responsible way, has
              not behaved reprehensibly, and is not deserving of
              punishment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

XIII.  The award of punitive damages violate Grace's constitutional rights. . . . . . . . . . . . . 47

XIV.  Grace is entitled to a new trial based on cumulative error . . . . . . . . . . . . . . . . . . . . . . 48

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

MW/255275

-v-

FFICSC000023

## INDEX OF AUTHORITIES

I.    **Cases**

*Allen v. Owens-Corning Fiberglas Corp.,* ......................................................... 25
    571 N.W.2d 530 (Mich. Ct. App. 1997).

*In Re Asbestos Litigation,* ........................................................................... 15
    90 F.3d 963 (5th Cir. 1996), *on remand rev'd on other grounds,* 182 F. 3d
    1013 (5th Cir. 1999).

*Babcock v. Northwest Mem. Hosp.,* ................................................................ 14
    767 S.W.2d 705 (Tex. 1989).

*Bennefield v. Aquaslide "N" Dive Corp.,* ......................................................... 31
    406 So. 2d 873 (Ala. 1981).

*BMW of N. America, Inc. v. Gore,* ............................................. 39, 44, 46, 47, 48
    517 U.S. 559 (1996).

*Cain v. Armstrong World Industries,* ......................................................... 34, 36
    785 F. Supp. 1448 (S.D. Ala. 1992).

*Campbell v. Williams,* .................................................................................. 25
    638 So. 2d 804 (Ala. 1994).

*Caudle v. Birmingham Elec. Co.,* ................................................................... 24
    22 So. 2d 417 (Ala. 1945).

*Cazalas v. Johns-Manville Sales Corp.,* ........................................................... 32
    435 So. 2d 55 (Ala. 1983).

*Childs v. Haussecker,* ................................................................................. 31
    974 S.W.2d 31 (Tex. 1998).

*City of Houston v. Harris County Outdoor Adver. Assoc.,* ................................... 36
    879 S.W.2d 322 (Tex. App. – Houston [14th Dist.] 1994, writ denied),
    cert denied, 516 U.S. 822

*Clary Corp. v. Smith,* ................................................................................. 36
    949 S.W.2d 452, 466 (Tex. App. – Fort Worth 1997, pet. denied).

FFICSC000024

*Compton v. Henrie,* .................................................................
    364 S.W.2d 179,182 (Tex. 1963). ................................................... 12, 14

*Dallas Ry. & Terminal Co. v. Farnsworth,* .................................................
    148 Tex. 584, 227 S.W.2d 1017 (1950), ............................................ 35, 36
    *overruled in part on other grounds by Levit v. Adams,* 850 S.W.2d 469 (Tex. 1993).

*Doucet v. Owens-Corning Fiberglas Corp.,* ........................................ 13, 16, 17, 18, 19
    966 S.W.2d 161 (Tex. App.–Beaumont 1998, pet. denied), *cert. denied,*
    526 U.S. 1131 (1999).

*Dresser Indus. v. Lee,* ...............................................................
    880 S.W.2d 750 (Tex. 1993). ......................................................... 28

*In re Ethyl Corp.,* ....................................................................
    975 S.W.2d 606 (Tex. 1998). ......................................................... 35

*Ex Parte Hsu,* .........................................................................
    707 So. 2d 223 (Ala. 1997). ...................................................... 40, 41

*Fibreboard Corp. v. Pool,* .............................................................
    813 S.W.2d 658 (Tex. App.–Texarkana 1991, writ denied). ......................... 19, 48

*Flanigan v. Carswell,* .................................................................
    324 S.W.2d 835 (Tex. 1959). ......................................................... 35

*Galveston H. & S.A. Ry. Co. v. Thornsberry,* ...........................................
    17 S.W. 521 (Tex. 1891). ............................................................ 16

*Garza v. Tan,* .........................................................................
    849 S.W.2d 430 (Tex. App.–Corpus Christi 1993, no writ). ....................... 12, 14

*Gaulding v. Celotex Corp.,* ............................................................
    772 S.W.2d 66 (Tex. 1989). .......................................................... 19

*Golden Eagle Archery, Inc. v. Jackson,* ................................................
    24 S.W.3d 362 (Tex. 2000). ...................................................... 17, 19

*Goode v. Shoukfeh,* ....................................................................
    943 S.W.2d 441 (Tex. 1997). ......................................................... 14

*Green Oil Co. v. Hornsby,* .............................................................
    539 So. 2d 218 (Ala. 1989). ................................................ 39, 40, 41, 46

MW/255578

FFICSC000025

*Guerra v. Wal-Mart Stores, Inc.,* ................................................................. 16
    943 S.W.2d 56 (Tex. App.–San Antonio 1997, writ denied).

*Hallett v. Houston Northwest Med. Ctr.,* ........................................................ 13
    689 S.W.2d 888 (Tex. 1985).

*Hammond v. Gadsden,* ................................................................. 39, 43, 46
    493 So. 2d 1374 (Ala. 1986).

*Johnson v. Garlock, Inc.,* ............................................................... 33
    682 So. 2d 25 (Ala. 1996).

*KMart Corp. v. Kyles,* .................................................................. 46
    723 So. 2d 572 (Ala. 1998).

*Lance, Inc. v. Ramanauskas,* ....................................................... 39, 40, 44
    731 So. 2d 1204 (Ala. 1999).

*Laney v. Celotex Corp.,* ................................................................ 25
    901 F.2d 1319 (6th Cir. 1990).

*Levit v. Adams,* ......................................................................... 36
    850 S.W.2d 469 (Tex. 1993).

*Life Ins. Co. of Ga. v. Johnson,* ..................................................... 42
    725 So. 2d 934 (Ala. 1998).

*Life Ins. Co. of Georgia v. Johnson,* ................................................ 43
    701 So. 2d 524 (Ala. 1997).

*Malone v. Foster,* ................................................................... 14, 45
    977 S.W.2d 562 (Tex. 1998).

*Mann v. Ramirez,* ................................................................. 8, 9, 10
    905 S.W.2d 275 (Tex. App.–San Antonio 1995, writ denied) (per curiam).

*Maritime Overseas Corp. v. Ellis,* ................................................. 20, 36
    971 S.W.2d 402 (Tex. 1998).

*Martinez v. Humble Sand & Gravel, Inc.,* ........................................... 31
    940 S.W.2d 139 (Tex.  App. El Paso – 1996), *aff'd sub nom., Childs v. Haussecker,* 974
    S.W.2d 31 (Tex. 1998).

FFICSC000026

*Mendoza v. Ranger Ins. Co.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9, 10, 13
    753 S.W.2d 779 (Tex. App.–Fort Worth 1988, writ denied).

*In re Murchison,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    349 U.S. 133 (1955). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Nelson Brothers, Inc. v. Busby,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    513 So. 2d 1015 (Ala. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*North American Refractory Co. v. Easter,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    988 S.W.2d 904 (Tex. App.—Corpus Christi 1999, pet. denied). . . . . . . . . . . . . . . . . . . . 45

*Ortiz v. Ford Motor Credit Co.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    859 S.W.2d 73 (Tex. App.–Corpus Christi 1993, writ denied). . . . . . . . . . . . . . . . . . . . 17, 18

*Owens Corning Fiberglass Corp. v. Malone,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    972 S.W.2d 35 (Tex. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Owens-Corning Fiberglas Corp. v. James,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    646 So. 2d 669 (Ala. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Owens-Corning Fiberglas Corp. v. Wasiak,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 45
    917 S.W.2d 883 (Tex. App.—Austin 1996), *aff'd sub nom., Malone,* 972 S.W.2d 35
    (Tex. 1998).

*Owens-Corning Fiberglas v. Martin,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    942 S.W.2d 712 (Tex. App. -- Dallas 1997, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Patterson Dental Co. v. Dunn,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    592 S.W.2d 914 (Tex. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pharo v. Chambers County,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    922 S.W.2d 945 (Tex. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Pittsburgh Corning Corp. v. Walters,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    1 S.W.3d 759 (Tex. App.–Corpus Christi 1999, pet. denied). . . . . . . . . . . . . . . . . . . . . . 45

*Pope v. Moore,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    711 S.W.2d 622 (Tex. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*Purvis v. PPG Indus., Inc.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    502 So. 2d 714 (Ala. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

MW/255578

FFICSC000027

*Redinger v. Living, Inc.,* ............................................................... 17
    689 S.W.2d 415 (Tex. 1985).

*Rhoades v. El Paso & S.W.R. & Co.,* ................................................... 16
    248 S.W. 1064 (Tex. Comm'n App. 1930, judgm't adopted).

*Sendejar v. Alice Physicians & Surgeons Hosp., Inc.,* ................................. 7
    555 S.W.2d 879 (Tex. Civ. App.–Tyler 1977, writ ref'd n.r.e.).

*Simmons v. Clemco Indus.,* ............................................................ 31
    368 So. 2d 509 (Ala. 1979).

*Skipper v. South Central Bell Tel. Co.,* .............................................. 26
    334 So. 2d 863 (Ala. 1976).

*Southern Life & Health Ins. Co. v. Whitman,* ...................................... 39, 41
    358 So. 2d 1025 (Ala. 1978).

*Sprouse v. Hawk,* .................................................................... 31
    574 So. 2d 754 (Ala. 1990).

*Stephens v. Smith,* ................................................................... 16
    208 S.W.2d 689 (Tex. Civ. App.–Waco 1948, writ ref'd n.r.e.).

*Sullemon v. U.S. Fidelity & Guar. Co.,* ............................................... 14
    734 S.W.2d 10 (Tex. App.–Dallas 1987, no writ).

*Swap Shop v. Fortune,* ................................................................ 12
    365 S.W.2d 151 (Tex. 1963).

*Tambarello v. Welch,* ................................................................. 10
    392 S.W.2d 114 (Tex 1965).

*TEIA v. Lane,* ........................................................................ 16
    251 S.W.2d 181 (Tex. Civ. App.–Fort Worth 1952, writ ref'd n.r.e.).

*Texas Employers' Ins. Assoc. v. Guerrero,* ............................................ 41
    800 S.W.2d 859 (Tex. App.–San Antonio 1990, writ denied).

*Texas Sand Co. v. Shield,* ............................................................ 41
    381 S.W.2d 48 (Tex. 1964).

*Texas Power & Light Co. v. Adams,* ................................................... 16

MW/255578

-x-

FFICSC000028

*Texas Power & Light Co. v. Adams,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
   404 S.W.2d 930 (Tex. Civ. App.–Tyler 1966, no writ).

*Texas & New Orleans R.R. Co. v. Jacks,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   306 S.W.2d 790 (Tex. Civ. App.–Beaumont 1957, writ ref'd n.r.e.).

*Turner v. Azalea Box Co.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
   508 So. 2d 253 (Ala. 1987).

*Tyson v. Johns-Manville Sales Corp.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33
   399 So. 2d 263 (Ala. 1981).

*Ulmer v. Mackey,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   242 S.W.2d 679 (Tex. Civ. App.–Fort Worth 1951, writ ref'd n.r.e.).

*United States v. Johnson,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
   319 U.S. 302 (1943).

*Vines v. Beloit Corp.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
   631 So. 2d 1003 (Ala. 1994).

*Watt v. Combs,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
   12 So. 2d 189 (Ala. 1943).

*Weidner v. Sanchez,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
   14 S.W.3d 353 (Tex. App.–Houston [14th Dist.] 2000, no pet.).

*White v. White,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   196 S.W. 508 (Tex. 1917).

## II.   Constitutions

Ala. Const. § 95 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Tex. Const. art. I, § 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16

## III.   Statutes

Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 . . . . . . . . . . . . . . . . . . . . . . . 28

1980 Ala. Acts 566, §3 (amending Ala. Code § 6-2-30 (1975)) . . . . . . . . . . . . . . . . . . . . . . . 32

FFICSC000029

Ala. Code § 6-2-30 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

Ala. Code § 6-5-410 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Ala. Code § 6-11-20 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Ala. Code § 6-11-23(a) (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Ala. Code § 6-11-23(b) (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 47

Ala. Code § 7-2-725 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

Tex. Bus. & Com. Code Ann. § 2.725 (Vernon 1998) . . . . . . . . . . . . . . . . . . . . . . . 30, 31

Tex. Gov't Code Ann. § 62.105 (Vernon 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Gov't Code Ann. § 62.105(2) (Vernon 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Tex. Gov't. Code Ann. § 62.105(4) (Vernon 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 12

Tex. Gov't Code Ann. § 62.106(a) (Vernon 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tex. Gov't Code Ann. § 62.107 (Vernon 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

## IV.    Court Rules

Tex. R. Civ. P. 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. R. Civ. P. 74 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Tex. R. Civ. P. 221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. R. Civ. P. 269 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Tex. R. Civ. P. 269(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Tex. R. Civ. P. 292 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tex. R. Civ. P. 327 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tex. R. Civ. P. 327(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

MW/255578

FFICSC000030

Tex. R. Civ. P. 327(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Tex. R. Evid. 606(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**V.   Secondary Authority**

45 C.J. 1141 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

FFICSC000031

## ISSUES PRESENTED

### ISSUE I.

GRACE WAS DENIED ITS RIGHT TO A FAIR AND IMPARTIAL JURY THAT FAIRLY REPRESENTED THE COMMUNITY

### ISSUE II.

THE TRIAL COURT ERRED IN FAILING TO GRANT GRACE'S MOTION TO STRIKE JURORS FOR CAUSE AND BY IMPROPERLY EXCUSING A SITTING JUROR

### ISSUE III.

THE TRIAL COURT ERRED IN FAILING TO EXCUSE A JUROR DISQUALIFIED BY STATUTE

### ISSUE IV.

GRACE IS ENTITLED TO A NEW TRIAL BASED ON JUROR MISCONDUCT

### ISSUE V.

APPELLEES FAILED TO PRESENT EVIDENCE OF EXPOSURE TO GRACE PRODUCTS, THUS NEGATING THE JURY'S LIABILITY AND CAUSATION FINDINGS

### ISSUE VI.

THE TRIAL COURT'S ERRONEOUS EXCLUSION OF EVIDENCE OF OTHER PRODUCTS USED AT U.S. STEEL-FAIRFIELD DEPRIVED GRACE OF KEY DEFENSES AND CAUSED RENDITION OF AN IMPROPER VERDICT

### ISSUE VII.

THE TRIAL COURT'S ERRONEOUS EXCLUSION OF EVIDENCE OF KNOWLEDGE OF THE EMPLOYER RESULTED IN RENDITION OF IMPROPER VERDICT

### ISSUE VIII.

THE TRIAL COURT ERRED IN SUBMITTING BREACH OF WARRANTY CLAIMS

MW/255578

FFICSC000032

## ISSUE IX.

THE TRIAL COURT ERRED IN FAILING TO GRANT GRACE'S MOTION FOR DIRECTED VERDICT ON STATUTE OF LIMITATIONS AGAINST APPELLEES EDWARDS, THOMAS, AND THE DECEDENT WILLIAMSON AND IN SUBMITTING JURY INSTRUCTIONS NOS. 1, 2, 3, 4, 5.

## ISSUE X.

THE TRIAL COURT ERRED IN DENYING GRACE'S MOTION TO SEVER AND IN OVERRULING GRACE'S OBJECTION TO CONSOLIDATION

## ISSUE XI.

THE JURY'S COMPENSATORY DAMAGE VERDICT IS EXCESSIVE AND JUSTIFIES REMITTITUR OR REVERSAL FOR A NEW TRIAL

## ISSUE XII.

THE JURY AWARDED EXCESSIVE PUNITIVE DAMAGES AND THE TRIAL COURT ERRED IN REFUSING TO REMIT THE PUNITIVE DAMAGE AWARDS

## ISSUE XIII.

THE AWARD OF PUNITIVE DAMAGES VIOLATES GRACE'S CONSTITUTIONAL RIGHTS

## ISSUE XIV.

GRACE IS ENTITLED TO A NEW TRIAL BASED ON CUMULATIVE ERROR

MW/255578

FFICSC000033

## STATEMENT OF THE CASE

Plaintiffs sued for personal injuries allegedly sustained as a result of exposure to asbestos-containing products manufactured by defendants W. R. Grace & Co. and W. R. Grace & Co.-Conn. ("Grace") and Pittsburgh Corning Corp. ("PCC").  Notwithstanding that the five plaintiffs had very different claims (one wrongful death, one lung cancer, and three non-malignancy), the trial court consolidated them for trial.  (C. R. R. Vol. 3, pp. 27-8).  Grace and PCC were then forced to select a jury from a venire that was improperly assembled and that was heavily biased against asbestos defendants.  (C. R. R. Vol. 3, pp. 5-8; Vol. 6, pp. 35-58).  After trial, the jury awarded compensatory damages of $22.5 million against both defendants jointly and severally and $21.5 million in punitive damages against Grace.  (C. R. R. Vol. 19, pp. 5-6; Vol. 20, p. 33) The trial court conducted a post-verdict evidentiary hearing to reassess the punitive damages award, but it refused to reverse or remit the award in spite of substantial evidence that the award was excessive.  (C. R. R. Vol. 21, pp. 79-91; Exh. Hammond 3).

FFICSC000034

## STATEMENT OF FACTS

Major errors occurring in the trial, stretching from pretrial improper consolidation and jury impaneling to post-trial rubber stamping of the jury's baseless and excessive verdict, prevented Grace from receiving the fair trial to which it has a right. Grace and approximately 90 other defendants were sued by approximately 4,000 Alabama residents in *Inez Martin, et al vs. AC&S, Inc., et al* claiming asbestos-related personal injury from exposures to asbestos while working at the U. S. Steel Plant in Fairfield, Alabama. The *Edwards* trial group of five plaintiffs was severed from *Martin.* (C. R. Vol. 1, pp. 2-5; Vol. 12, p. 154; Vol. 36, Exh. Grace - B2-1-00) Over Grace's objection, the Court consolidated these five plaintiffs for trial, including one death case and a lung cancer case with other non-malignancy cases. (C. R. R. Vol. 3, pp. 26-28) Appellees' claims against Grace and most of the other defendants were product liability claims for negligence, breach of warranty, strict liability, fraud, fraudulent suppression, conspiracy and wantonness. (C. R. Vol. 9, pp. 1267-1303) Appellees settled with or dismissed all but two of the defendants, Grace and PCC and proceeded to trial. After a judgment was entered, but before this appeal, PCC filed for protection pursuant to Chapter 11 of the United States Bankruptcy Code. Accordingly, Grace is the only appellant in this cause.

This case was called for trial on January 31, 2000, and on February 1, Grace moved to strike the jury panel. (C. R. R. Vol. 3, pp. 5-8) Thirty one of sixty nine prospective jurors either were plaintiffs in an asbestos claim, were related to or otherwise connected with individuals with asbestos claims, or had themselves been screened for an asbestos claim. The panel appeared to be a statistical aberration and Grace moved to strike the entire panel because it was overwhelmingly biased against defendants. (C. R. R., Vol. 3, pp. 5-10) The motion was denied. *See id.* at 8. Grace then moved to

MW/255578

-1-

FFICSC000035

disqualify these 31 potential jurors on the ground of their bias. *See id.* at 8-13. Appellees agreed to dismiss seven of the challenged jurors, leaving 24 out of 62 potential jurors with strong connections to asbestos claimants. Grace's motion to strike the remaining 24 jurors was denied. *See id.* at 13. Finally, Grace urged the court to permit it to conduct individual voir dire to avoid poisoning the panel with the opinions of the asbestos claimants. The motion was denied. *See id.* at 14.

During voir dire, Grace and PCC were permitted to question certain jurors individually regarding the asbestos claims that they had mentioned in their juror questionnaires. In particular, Grace questioned juror No. 15, Bertha Broussard. (C. R. R. Vol. 4, pp. 4-20) In spite of direct questions, Broussard failed to reveal that she and her husband were actively preparing to file a lawsuit against Grace and PCC among others alleging asbestos-related injury. (C. R. R. Vol. 4, pp. 12-15). Broussard and her husband indeed filed that undisclosed suit on March 6, 2000, during this trial. (C. R. Vol. 12, pp. 1632-1651). Before the jury was seated, Grace moved to strike jurors for cause, moved for new trial, for mistrial, for additional jurors, for additional strikes and for continuance. All motions were denied. (C. R. R. Vol. 4, pp. 20-39)

The jury was seated on February 2, and the parties gave opening statements on February 3. (C. R. R Vol. 4, p. 5) Having realized on February 1 during jury selection that nearly half the potential jurors had close connection with asbestos claims and that some problem with the panel had occurred, Grace immediately began an investigation to determine the source of the problem. (C. R. R. Vol. 6, pp. 34-60) On February 4, outside the presence of the jury, Grace called John S. Appleman, the District Clerk of Jefferson County, in support of a motion for mistrial. (C. R. R. Vol. 6, pp. 35-52) Through Mr. Appleman, Grace presented conclusive evidence that the entire jury selection process violated the Texas Government Code. (C.R.R. Vol. 6, pp. 35-47). Grace moved

FFICSC000036

for a mistrial, on the ground that the mandatory statutory procedures had not been followed, resulting in a biased jury panel. The motion was denied. (C.R.R. Vol. 6, p. 58).

Appellees' claims were based on alleged asbestos exposure at the U.S. Steel plant in Fairfield, Alabama. (C. R. R. Vol. 7, pp. 91, 93-5, 122-4; Vol. 10, pp. 21, 24-25, 101-2, 115-16; Vol. 11, pp. 54, 57-61; Vol. 39, Exh. WRG-A21; WRG-A24). The Court applied Alabama substantive law. Each of the appellees worked in that plant, for widely varying periods of time ranging from 1941 through 1985, *see id.*, and alleged exposure to a variety of different asbestos-containing products manufactured and sold by many defendants in addition to Grace and PCC. *See* Grace Offers of Proof John Thomas, Walter Hamner, John Dement, LeRoy Balzer, James Beam, Ed Storey, Milloy Gilliam, Lowell Harbison, Aaron Clifton Edwards. (C.R.R. Vol. 6, pp. 185-7; Vol. 12, pp. 245-254; Vol. 10, pp. 85-89, 131-32; Vol. 11, p. 148; Vol. 16, pp. 90-109; Vol. 17, p. 120) Grace also presented volumes of documentary evidence of other asbestos products to which appellees were exposed. (C. R. R. Exh. Vols. 30-PC-B thru PC-J, 37-40, 43). Nevertheless, during trial, the trial court refused to allow Grace to introduce any evidence of exposure to other asbestos-containing materials, to present any evidence of the fault of appellees' employer, or evidence of the employer's safety practices, or the employee's knowledge of asbestos. (*Id*; C.R.R. Vol. 2, p. 18-25; Vol. 6, p. 62-8; Vol. 9, pp. 4-10; Vol. 10, pp. 89-90, 131; Vol. 12, p. 254; Vol. 17, p. 120). Thus, the jury tried the case in an absolute and misleading vacuum.

The biases and prejudices which the jurors brought with them to the trial, despite Grace's efforts to exercise its right to a fair, properly assembled jury, manifested themselves in the verdict rendered. Despite the utter lack of evidence of any exposure to Grace products, the jury returned a verdict against Grace, finding that it was negligent, had sold defective products, had fraudulently

FFICSC000037

suppressed the dangerous nature of asbestos-containing products, and had engaged in fraudulent or wanton conduct. (C. R. Vol 11, p. 1438-49) The jury awarded $21,000,000.00 in actual damages (C. R. Vol. 11, pp. 1443-7) and $21,500,000.00 in punitive damages. (C. R. Vol. 11, pp. 1448, 1470) Grace brings this appeal of the jury's excessive, unsupported verdict and the trial court's erroneous ruling, which set the stage for this tainted verdict.

## SUMMARY OF THE ARGUMENT

From start to finish, the *Edwards* trial was marked by unfairness, bias and improper rulings favoring the appellees. As a result, the jury returned a verdict which is not based on the evidence, and both the compensatory and punitive damages awards are clearly excessive. The trial court's errors and the resulting harm to Grace requires that this Court reverse and render a take-nothing judgment or, alternatively, a new trial.

The jury pool from which Grace was forced to select its jury was assembled in violation of state statute and was not a cross-section of the community. *See* Tex. Gov't Code Ann. § 62.107 (Vernon 1998). Without statutory authority, personnel from the Jefferson County District Clerk's office granted exemptions to hundreds of potential jurors, so many in fact that it altered the makeup of the entire panel. Furthermore, the clerk's office failed to shuffle previously deferred jurors into the general pool, assuring that the "deferred" jurors would never be reached for a civil jury panel.

A litigant has the right to a fair and impartial jury and the right to assume that a jury will be empaneled according to statute. This panel was not. Grace proved these violations of law and moved for mistrial, but Grace's motion was denied.

The improperly assembled panel was heavily biased in favor of the plaintiffs. Almost half of the veniremembers had asbestos claims of their own or were closely connected with others who

MW/255578

-4-

FFICSC000038

had such claims. (C. R. R. Vol. 3, pp. 7, 10-11)  Grace challenged biased veniremembers for cause, and, notwithstanding that Grace had demonstrated bias as a matter of law, all challenges and motions were overruled.

One venireperson who was ultimately placed on the jury failed to reveal that she and her husband were actually on the verge of suing Grace for asbestos-related injuries.  In fact, that lawsuit was filed during the trial of this case.  The juror's failure to be completely candid constituted juror misconduct requiring a new trial, as does the trial court's erroneous decision not to remove this juror from the panel when this misconduct and bias were brought to his attention during trial.

The problem created by this juror's lack of candor highlights the trial court's error in refusing to strike for cause every juror who had or was related to someone who had an asbestos-related claim. The trial court rejected Grace's request to strike eleven jurors for that reason.  As a result, Grace was forced to use its peremptory strikes and to accept jurors that it would not have accepted, including the juror who failed to reveal her claim.  The trial court's error in refusing to strike venirepersons for cause resulted in an overwhelmingly biased jury and requires a new trial.

In addition to these significant procedural errors with the jury selection process, the trial court committed serious errors of law.  The trial court consolidated five cases for trial even though the facts and law were so different as to ensure juror confusion.  The trial court excluded evidence that the appellees were exposed to asbestos-containing products manufactured by entities other than Grace and PCC.  This ruling so skewed the evidence as to effectively direct the jury to find against Grace if the jury thought plaintiffs were exposed to asbestos.  The trial court erroneously denied Grace's motions for judgment in its favor as a matter of law, and the court  submitted the case to the jury despite the lack of evidence that any appellee was exposed to Grace products or was harmed by

MW/255578

-5-

FFICSC000039

any Grace product. The trial court erroneously submitted, over Grace's objection, a question regarding breach of warranty, even though any such claim was barred by limitations. The trial court erroneously allowed appellees to argue in the punitive damages phase of the trial that Grace's net worth was a completely unsubstantiated $600 million, although Alabama law does not permit a jury to consider net worth in its determination of punitive damages. Finally, having allowed improper arguments on punitive damages, the trial court erred in refusing to remit the punitive damages awards. Grace adduced substantial evidence that the punitive damages awards were excessive, and the trial court abused its discretion by not remitting damages based on that evidence.

## ARGUMENT AND AUTHORITIES

### ISSUE I.

### GRACE WAS DENIED ITS RIGHT TO A FAIR AND IMPARTIAL JURY THAT FAIRLY REPRESENTED THE COMMUNITY

A. **THE RIGHT TO FAIR AND IMPARTIAL JURORS IS A FUNDAMENTAL RIGHT**

Trial by jury is a fundamental right guaranteed by The Constitution of the United States and the State of Texas. The right is embodied in Article I, §15 of the Texas Constitution: "The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency." Tex. Const. art. I, § 15.

B. **THE *EDWARDS* JURY WAS IMPERMISSIBLY ASSEMBLED**

Texas courts have held that "[e]very citizen is entitled to a fair and impartial trial before an impartial jury, fairly representative of the community." *Mendoza v. Ranger Ins. Co.*, 753 S.W.2d 779, 781 (Tex. App.–Fort Worth 1988, writ denied). To accomplish this, specific statutes have been enacted granting limited authority to specific officers of the court to grant excuses for jury service

FFICSC000040

under narrow circumstances[1].

The juror gathering process followed in Jefferson County in this case, however, did not comply with such law. The process allowed unauthorized employees of the clerk's office to excuse potential jurors for non-statutory reasons resulting in a statistical anomaly weighted so heavily against Grace that a fair trial was virtually impossible. (C. R. R. Vol. 6, pp. 34-58).

## C.    SIXTY THREE PERCENT OF PANEL WAS IMPROPERLY EXCUSED

In this case, hundreds of the individuals summoned failed to appear because in violation of law, they were excused by clerk's office staff. (Vol. 6, pp. 35-47; 52-58); (C. R. R. Vol. 21, pp.18, 25-31; pp. 32-33) The individuals asserted a wide range of excuses and some presented no reason at all, most of which were not legal exemptions.[2] Consequently, the jury selection process in this

---

[1]      *See* Tex. Gov't Code §§62.106 and 62.107:
Legal exemptions include exemptions for age (the person is over 70 years of age), child care (the person has legal custody of a child or children younger than 10 years of age and the person's service on the jury requires leaving the child or children without adequate supervision), education (the person is a student of a public or private secondary school, or the person is enrolled in and in actual attendance at an institution of higher education), and care of an invalid (the person is the primary caretaker of a person who is an invalid unable to care for himself). Tex. Gov't. Code Ann. §62.106(a) (Vernon 1998).

The granting of non-statutory excuses by non-authorized personnel is in direct contravention of state statute. Tex. Gov't. Code Ann. §62.107 (Vernon 1998). Indeed, Texas courts have held that the power to excuse a potential juror rests solely with the judge in charge, as neither the court clerk nor the sheriff has such authority. *See* Sendejar v. Alice Physicians & Surgeons Hosp., Inc., 555 S.W.2d 879 (Tex. Civ. App.–Tyler 1977, writ ref'd n.r.e.); Texas & New Orleans R.R. Co. v. Jacks, 306 S.W.2d 790, 793 (Tex. Civ. App.–Beaumont 1957, writ ref'd n.r.e.); Ulmer v. Mackey, 242 S.W.2d 679 (Tex. Civ. App.–Fort Worth 1951, writ ref'd n.r.e.) (holding that district clerk has no authority to excuse jurors from the panel).

[2]                                                  Panel Excuses
Jurors who did not appear or were excused prior to date of service .............. 350
Jurors who were excused for no reason ........................................................ 95
Jurors who were excused for health reasons ............................................... 148
        (Note: 94 of these were temporary health problems or
        unknown medical reasons with no further information provided.)
Jurors who were excused for work or job-related reasons ........................... 118
Jurors who were excused for vacation or scheduled commitments............... 41
Jurors who were excused for "family reasons" ............................................ 41
Jurors who were excused for transportation difficulties ..............................   7
C. R. R. Vol. 6, pp. 23-25, 55-57; Vol. 21, pp. 49-51.

FFICSC000041

case was fraught with error resulting from the improper excuse of prospective jurors for nonstatutory reasons. *See, e.g., Mann v. Ramirez*, 905 S.W.2d 275 (Tex. App.–San Antonio 1995, writ denied) (per curiam).

It is uncontroverted that **three hundred eighty five jurors**, which amounted to **63.1 percent of the total jury pool**, were improperly excused. (C. R. R. Vol. 21, pp. 52-3 testimony of Dr. Lynne Stokes). The improperly excused jurors resulted in a selection bias and defeated the purpose of random selection. If previously deferred jurors had been properly integrated into the entire pool and improperly excused jurors had been present, then forty five of the sixty nine people sent to the 60th District Court on February 1, 2000, would have been different. (C. R. R. Vol. 21, pp. 55, 58). The jury panel was stripped of a myriad of responsible citizens who would otherwise have appeared, (*See* Scofield Affidavit, C. R. Vol.12, pp. 1653-56, Appendix B-19 and testimony of Dr. Stokes. C. R. R. Vol. 21, pp.41-69), and the obviously unfair panel and jury resulted.

D.    **DEFERRED JURORS WERE NOT SHUFFLED INTO THE PANEL AS A WHOLE**

Jurors who had been previously deferred from an earlier date to this jury panel were not integrated into the new jury list, but were placed at the back. This effectively precluded those jurors from ever being sent to a civil district court, and none were sent to this case. (C. R. R. Vol. 21, pp. 21-23, 39-40). The exclusion of deferred jurors from the jury panel added to the denial of Grace's right to a jury that is a randomly-selected cross section of the community. *See Mendoza*, 753 S.W.2d at 787. (C. R. Vol. 12, pp.1592-98).

It is an abuse of discretion for the trial court to refuse to grant a mistrial based on the district clerk's failure to comply with statutes regulating the selection of jurors, which resulted in a materially unfair trial. *See Mann*, 905 S.W.2d at 283. In *Mann*, the complaining party filed a motion

MW/255578

-8-

FFICSC000042

for mistrial, alleging that the district clerk had improperly excused members of the jury panel for nonstatutory reasons, such as "vacation," "hospital," "out of state," or for unrecorded reasons. *Id.* at 276-77. As in this case, the movant in *Mann* alleged that such misconduct deprived him of a jury composed of a representative cross-section of the community and resulted in a trial that was materially unfair.

## E.    APPELLANT TIMELY OBJECTED TO THE JURY SELECTION PROCESS

The respondent in *Mann* argued that the movant waived error by failing to object to the jury selection process prior to the time the jury was selected, as generally required by Rule 221. The *Mann* court noted that the movant did not discover potential irregularities until after such time prescribed by Rule 221, and the movant sought a mistrial immediately upon discovering the discrepancies. *Mann*, 905 S.W.2d at 280 (citing *Mendoza*). In *Mendoza*, the appellate court found that Rule 221 "puts an unreasonable and impractical burden on a party who is faced with a jury panel which is impermissibly selected." 753 S.W.2d at 780. The court concluded that the movant's assertion of his rights was timely made when the jury irregularity became apparent, since that was the first time the movant knew the basis for and had an opportunity to object to the lack of randomness of the jury panel. *See id.*

In this case, the unusual makeup of the jury panel could not be predicted or immediately recognized. Litigants have a right to assume that a jury will be empaneled according to statute. Consequently, because of the sheer number of prospective jurors on the list to be reviewed, the number of excuses to be categorized, and the time required to perform the necessary compilations, Grace did not have a reasonable opportunity to challenge the array prior to the selection of the panel. The lack of randomness of the trial court's panel was not reasonably apparent prior to that panel's

MW/255578

FFICSC000043

being sent to the 60th Court. *See Mendoza*, 753 S.W.2d at 780. Because Grace began investigating and asserted its motion for mistrial as soon as the jury panel irregularity became apparent (which was prior to the time the jury was selected), the motion was timely brought and the objection was not waived. *See Mann*, 905 S.W.2d at 280; *Mendoza* at 780. (C. R. Vol. 10, pp. 1319-22).

F.    THE TRIAL WAS MATERIALLY UNFAIR

When error occurs during the jury selection process, the resulting judgment must be reversed if the trial was "materially unfair." *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914 (Tex. 1979) (addressing allocation of peremptory strikes); *see also Tambarello v. Welch*, 392 S.W.2d 114, 117 (Tex 1965) In *Patterson*, the court held that when a trial is contested and the evidence is conflicting, "the error [in jury selection] results in a materially unfair trial without showing more." 592 S.W.2d at 521. The case before this Court was a strongly contested trial from jury selection until the judgment was entered. (C. R. R. Vol. 3, pp. 5-14; Vol. 4, pp. 20-39; Vol. 6, pp. 35-58; Vol. 7, pp. 14-17; Vol. 8, pp. 4-11; Vol. 9, p. 12; Vol. 10, pp. 5-7; Vol. 21, pp. 21-36, 46-58) (C. R. Vol. 10, pp. 1319-22; pp. 1338-39; Vol. 12, pp. 1574-1662). The result was a materially unfair trial as a matter of law. *See Mann*, 905 S.W.2d at 282.

The unauthorized exemption granted by the district clerk over time resulted in hundreds of potential jurors being improperly excused by individuals without authority to excuse them. The selection process was so flawed that it altered the makeup of the actual jury. (C.R.R. Vol. 6, pp. 35-58; Vol. 21, pp. 21-36, 46-58) (C. R. Vol. 10, pp. 1319-22; pp. 1338-39). Grace attempted at all phases of the trial beginning before the jury was seated to illustrate the devastating result of the court's ignoring its fundamental right to a fair trial (C. R. R. Vol. 3, pp. 5-16; Vol. 4, pp. 20-39; Vol. 6, pp. 35-58; Vol. 7, pp. 14-17; Vol. 8, pp. 4-11; Vol. 9, p. 12; Vol. 10, pp. 5-7; Vol. 21, pp. 21-36,

FFICSC000044

46-58) (C. R. Vol. 10, pp. 1319-22; Vol. 12, pp. 1574-1662) and to give the court ample opportunity to cure the problem before the jury was seated.

As a matter of law, the error stemming from the jury selection process resulted in a materially unfair trial, for which a mistrial should have been granted. Because Grace is entitled to receive a hearing before a fair and impartial jury, a new trial is warranted.

ISSUE II.

**THE TRIAL COURT ERRED IN FAILING TO GRANT
GRACE'S MOTION TO STRIKE JURORS FOR CAUSE
AND BY IMPROPERLY EXCUSING A SITTING JUROR**

Grace's constitutional right to a fair and impartial jury trial was further denied by the trial court's failure to grant Grace's Motion to Strike Jurors for Cause. From the final jury panel of twenty-eight potential jurors, appellant moved to strike eleven prospective jurors for cause based on their connections to asbestos-related matters, their inclination toward the appellees, bias against Grace, and bias against the subject matter of the litigation. The Court denied Grace's request to strike jurors for cause, denied Grace's request for additional strikes, for additional jurors, for continuance, and for mistrial. As a result, Grace was forced to accept objectionable jurors. (C. R. R. Vol. 4; pp. 30-40).

Specifically, Grace moved to strike Juror Nos. 3, 15, 17, 22, 28, 33, 37, 39, 41, 45, and 46 based on their bias and interest in asbestos litigation. This bias was proven from their responses to Juror Questionnaires and to voir dire questions[3].

---

[3]

Juror No. 3 Betty B. Gambrell admitted that her husband had been exposed to asbestos, had been screened by a union or plaintiff attorneys for asbestos-related condition, and that a spot was found on his lungs. She even admitted that she believed her husband had asbestosis or an asbestos-related disease and he had even hired Provost * Umphrey, a well known local firm, to represent him in this matter. (C. R. R. Vol. 3, pp. 168, 170, 192; Vol. 31, Exh. Grace-A 2-1-00, Juror No. 3, Confidential Juror Questionnaire)

FFICSC000045

The potential jurors' answers clearly show that they had probable bias and/or prejudice against asbestos litigation generally, and against Grace specifically, which disqualified them from service pursuant to § 62.105(4) of the Texas Government Code Ann. *Garza v. Tan*, 849 S.W.2d 430, 431-32 (Tex. App.–Corpus Christi 1993, no writ). This disqualification extends to bias or prejudice against the subject matter of the suit, as well as against the litigants. *See Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex. 1963); *Swap Shop v. Fortune*, 365 S.W.2d 151, 154 (Tex. 1963). After the Court refused to strike any of the eleven jurors for cause and denied all motions, Grace informed

---

Juror No. 15, Bertha Broussard, admitted that her husband had been screened for an asbestos-related condition, that he had a claim and had been in touch with the Parker law firm regarding this claim. (*See infra* Sections III and IV in main text). (C. R. R. Vol. 3, p. 194; Vol. 4, pp. 12-13; Vol. 32, Exh. Grace-A 2-1-00, Juror No. 15, Confidential Juror Questionnaire)

Juror No. 17, Sherry K. Alexander, admitted that her father-in-law had an asbestos-related lawsuit that had been settled and was represented by Provost * Umphrey and that she worked for Community Bank, owned substantially by Walter Umphrey. (C. R. R. Vol. 32, Grace-A 2-1-00 Exh., Juror No. 17 Confidential Juror Questionnaire)

Juror No. 22, Robert H. Pouncy, acknowledged that he himself had stripped insulation and had been exposed to asbestos. He further acknowledged that his brothers had also been exposed to asbestos. (C. R. R. Vol. 32, Exh. Grace-A 2-1-00, Juror No. 22, Confidential Juror Questionnaire)

Juror No. 28, Ella Broussard, had family members screened for asbestos-related disease and admitted that her husband has a pending claim. (C. R. R. Vol. 33, Exh. Grace-A 2-1-00, Juror No. 28, Confidential Juror Questionnaire)

Juror No. 33, Mark A. Sartin stated that his father is a union official who coordinates the entire asbestos screening program for the Provost*Umphrey law firms well as for the union PACE (formerly the international OCAW). (C. R. R. Vol. 3, p. 117, line 8; 213; Vol. 33, Exh. Grace-A 2-1-00, Juror No. 33, Confidential Juror Questionnaire)

Juror No. 37, Bonnie B. Downing, acknowledged that her son's father-in-law and two other friends died as a result of asbestos exposure. (C. R. R. Vol. 33, Exh. Grace-A 2-1-00, Juror No. 37, Confidential Juror Questionnaire)

Juror No. 39, Woody H. Jones, stated that he had been screened for an asbestos-related disease and his father was also screened for an asbestos-related disease and diagnosed with cancer. (C. R. R. Vol. 33, Exh. Grace-A 2-1-00, Juror No. 39, Confidential Juror Questionnaire)

Juror No. 41, Barbara J. Perez' stepfather died from asbestos exposure and had a claim that was still pending in part. Further, her mother and uncle had each been screened for asbestos disease. (C. R. R. Vol. 3, p. 204-5, lines p. 13-3, Vol. 33, Exh. Grace-A 2-1-00, Juror No. 41, Confidential Juror Questionnaire)

Juror No. 45, Helen G. Benoit's mother had a pending claim for her husband's asbestos claim. Her mother was represented by Provost * Umphrey law firm. Her husband has also been screened for asbestosis. (C. R. R. Vol. 34, Exh. Grace-A 2-1-00, Juror No. 45, Confidential Juror Questionnaire)

Juror No. 46, Lizneth D. Sparrow's husband worked in the steel mills and was exposed to asbestos, and her father-in-law has asbestosis. (C. R. R. Vol. 34, Exh. Grace-A 2-1-00, Juror No. 46, Confidential Juror Questionnaire)

FFICSC000046

the Court that after exercising its peremptory challenges, it would have to accept objectionable jurors. (C. R. R. Vol. 3, pp. 8, 13, 16; Vol. 4, pp.30-39) Grace identified the objectionable jurors and noted that after using its six peremptory strikes, and one alternate strike, Grace was forced to accept six (6) of the jurors who should have been removed for cause.  (C. R. R. Vol. 4, pp.30-39)[4]  As a result, Grace was denied its fundamental right to a fair and impartial jury.  *See, e.g., Hallett v. Houston Northwest Med. Ctr.*, 689 S.W.2d 888, 890 (Tex. 1985) ("The harm occurs only if the party uses all of his peremptory challenges and is thus prevented from striking other objectionable jurors from the list because he has no additional peremptory challenges."); *see also Mendoza*, 753 S.W.2d at 781.

The trial court further erred in excusing Juror Jerry Holman during the second week of trial without determining whether he was disabled from sitting as a juror, in contravention of the Texas Constitution and Rule 292, Tex. R. Civ. P.  (C. R. R. Vol. 8, pp. 4-11)  Grace objected to releasing Holman and moved for mistrial.  The motion was denied.  (C. R. R. Vol. 8, p. 11)  For all of these reasons, Grace should be granted a new trial.

## ISSUE III.

## THE TRIAL COURT ERRED IN FAILING TO EXCUSE A JUROR DISQUALIFIED BY STATUTE

The "constitution's reference not only to the right of trial by jury, but also to the purity of the jury, embraces the fundamental principles of impartiality and freedom from bias." *Doucet v. Owens-Corning Fiberglas Corp.*, 966 S.W.2d 161, 163 (Tex. App.–Beaumont 1998, pet. denied), *cert. denied*, 526 U.S. 1131 (1999).  A trial free of juror bias is a basic requirement of due process. *See*

---

[4]     Specifically, Grace was forced to accept Juror No.15, Juror No. 22, Juror No. 28, Juror No. 37, Juror No. 41 and Juror No. 45, as well as other jurors Grace would have stricken had the requested jurors been removed for cause.

FFICSC000047

*In re Murchison*, 349 U.S. 133 (1955); *White v. White*, 196 S.W. 508 (Tex. 1917). The right to a fair and impartial jury trial is further codified in Texas Government Code §62.105. *See Babcock v. Northwest Mem. Hosp.*, 767 S.W.2d 705, 708 (Tex. 1989). If a person is disqualified by statute, the court must excuse that person from service. *See Compton,*364 S.W.2d at 182.

## A.   JUROR BERTHA BROUSSARD WAS DISQUALIFIED FOR BIAS AS A MATTER OF LAW

The trial court erred by failing to excuse juror No. 15, Bertha Broussard, who maintained a clear bias against Grace, thus denying Grace its constitutional right to a fair trial. Broussard advised the court during voir dire that her husband had a potential asbestos claim and had taken steps to pursue such a claim by hiring an attorney. (C. R. R Vol. 4, Pages 12-15). Before the end of the *Edwards* case and while she was sitting as juror, Broussard and her husband filed an asbestos-related personal injury case against Grace. (See C. R. Vol. 12, pp. 1632-47; Appendix at B-22-23).

If a prospective juror's bias or prejudice for or against a party in a lawsuit is established as a matter of law, the trial court must disqualify that person from service. *See Malone v. Foster*, 977 S.W.2d 562, 564 (Tex. 1998); *see also Garza v. Tan*, 849 S.W.2d 430 (Tex. App.–Corpus Christi 1993, no writ). A prospective juror who is biased is disqualified, must be excused from service and may not be rehabilitated. *See Sullemon v. U.S. Fidelity & Guar. Co.*, 734 S.W.2d 10, 14 (Tex. App.–Dallas 1987, no writ).

Broussard's admission of the existence of claims by her and her husband involving the same issues as in the case at bar makes obvious her potential bias in favor of plaintiffs in an asbestos personal injury case. The Texas Supreme Court has defined bias as an "inclination toward one side of an issue rather than the other." *Goode v. Shoukfeh*, 943 S.W.2d 441, 453 (Tex. 1997). Broussard's asbestos claim, as it stood during voir dire, demonstrates a "pro plaintiff" frame of mind,

FFICSC000048

but her filing of a lawsuit between voir dire and the time she returned a $21,000,000 compensatory verdict and a $31,000,000 punitive verdict, reveals that she was clearly biased against and hostile toward the very defendants in the case she was judging, as well as biased against the subject matter of the litigation. (C. R. Vol. 11, pp. 1443-48, 1470).

Despite the adverse interest admitted by Broussard and obvious inclination toward the plaintiffs' side of the case and over strenuous objection of defendants, the trial court disregarded competent evidence of bias and failed to excuse Broussard for cause. (C. R. R. Vol. 3, p. 194; Vol. 4, pp. 12-13; Vol. 32, Exh. Grace A-2-1-00, Juror No. 15, Confidential Juror Questionnaire; C. R. Volume 12, p. 1574-1662., Grace's Motion for New Trial). On March 6, 2000, as she heard evidence and argument regarding the assessment of punitive damages, Broussard filed her lawsuit against Grace and Pittsburgh Corning alleging virtually identical liability and damages claims. (C. R. Vol. 12, pp. 1632-51, See Appendix B-22 (the *Devine* petition) Broussard was required to investigate her claims prior to filing suit. *See* Tex. R. Civ. P. 13. This investigation necessarily had to have occurred before and probably during her jury service.

A juror who files her own lawsuit with almost identical allegations against the same defendants whose liability she is being called upon to judge is by definition antagonistic toward those defendants. *See In Re Asbestos Litigation,* 90 F.3d 963, 988 (5th Cir. 1996) (citing *United States v. Johnson,* 319 U.S. 302 (1943)) (a case or controversy "requires that the parties be truly adverse"), *on remand rev'd on other grounds,* 182 F. 3d 1013 (5th Cir. 1999). Therefore, this Court should hold that Juror Broussard was biased and/or prejudiced against Grace as a matter of law. It would have been impossible for Grace to have overcome the bias of such a juror. Its defense fell not only on deaf ears, but on defiant ones.

FFICSC000049

Although there is no necessity to show injury from bias or disqualification, here the injury to Grace is obvious and the injury to Pittsburgh Corning was fatal. *See Rhoades v. El Paso & S.W.R. & Co.*, 248 S.W. 1064, 1066 (Tex. Comm'n App. 1930, judgm't adopted), Tex. Const. art. I, § 15.

**B.    JUROR BROUSSARD HAD A DIRECT INTEREST IN THE OUTCOME OF THE CASE**

A person may be disqualified from serving as a juror in a particular case if he is interested, directly or indirectly, in the subject matter of the case. *See* Tex. Gov't. Code Ann. § 62.105(2) (Vernon 1998); *Galveston H. & S.A. Ry. Co. v. Thornsberry*, 17 S.W. 521, 522 (Tex. 1891); *Guerra v. Wal-Mart Stores, Inc.*, 943 S.W.2d 56, 59 (Tex. App.–San Antonio 1997, writ denied); *Texas Power & Light Co. v. Adams*, 404 S.W.2d 930,943 (Tex. Civ. App.–Tyler 1966, no writ); *TEIA v. Lane*, 251 S.W.2d 181, 182 (Tex. Civ. App.–Fort Worth 1952, writ ref'd n.r.e.). Juror Broussard had, at best, an indirect and, at worst, a direct interest in the outcome of this case because of her own imminent asbestos claim against Grace. An adverse verdict to Grace and a large damage award would almost certainly enhance the value and validity of Broussard's claims. (C. R. R. Vol. 21, pp. 8-14) (C. R. Vol. 12, pp. 1574-1662)

Broussard's interest in this case was immediate, substantial and inextricably connected with her own asbestos claim against Grace so that statutory disqualification should have occurred. *See Doucet*, 966 S.W.2d at 164-65; *Stephens v. Smith*, 208 S. W. 2d 689 (Tex. Civ. App.–Waco 1948, writ ref'd n.r.e.)

## ISSUE IV.

## GRACE IS ENTITLED TO A NEW TRIAL BASED ON JUROR MISCONDUCT

In addition to the obvious bias of Juror Broussard against Grace and her interest in the

FFICSC000050

outcome, Broussard failed to disclose during voir dire the nature and extent of her interest. Although Broussard made vague reference during voir dire to a potential asbestos claim against unnamed defendants, she failed to disclose, although she was asked, that at that very moment she was preparing to file a lawsuit against numerous defendants including Grace. Broussard's failure to disclose amounted to juror misconduct. (C. R. R. Vol. 3, p. 194; Vol. 4, pp. 12-13; Vol. 32, Exh. Grace - A2-1-00, Juror No. 15, Confidential Juror Questionnaire)

## A. CONCEALING MATERIAL INFORMATION IS JUROR MISCONDUCT

A juror who conceals material information during voir dire that would have revealed bias is guilty of misconduct. Jury misconduct is grounds for a new trial under Rule 327(a) of the Texas Rules of Civil Procedure. To obtain a new trial on the ground of jury misconduct, the complaining party must show that (1) the misconduct occurred; (2) it was material; and (3) based on the record as a whole, the misconduct probably resulted in harm to the movant. *See Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex. 2000); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 419 (Tex. 1985); *Ortiz v. Ford Motor Credit Co.*, 859 S.W.2d 73, 76 (Tex. App.–Corpus Christi 1993, writ denied).

### 1. Broussard's Failure to Disclose Her Imminent Lawsuit Was Misconduct

In *Doucet,* the court considered an almost identical issue in an asbestos lawsuit in which plaintiffs complained that their constitutional right to a fair and impartial jury was denied because of juror misconduct. 966 S.W.2d at 162.

**Prior** to filing her lawsuit, Broussard had to have concluded that her husband had a compensable asbestos-related personal injury, that he had been exposed to asbestos-containing products manufactured by Grace in such a quantity as to be a cause of his injury, that Grace's

FFICSC000051

products were defective and unreasonably dangerous, and that Grace had engaged in misconduct rising to the level of gross negligence.[5] Her pleadings speak more loudly than her vague answers on voir dire about her prejudgment of the issues in the *Edwards* case.

### 2. The Misconduct was Material.

"If jury misconduct- - whatever form it may take-- is present, the integrity of the jury system is compromised, and a fair trial cannot be had." *Doucet* at 163. Referring to Tex. R. Civ. P. 327, the Court observed that jury misconduct was a proper ground for a motion for new trial. *See id.*

> **The determination of the materiality prong in the instant case is not a difficult one....The fact that a juror on the panel currently has, or previously had, a suit against one of the parties in the case and failed to be truthful about it is material to the jury selection process.** Moreover, the fact that the suit [the juror] filed against [the same asbestos defendant] is, like [the current plaintiffs'] suit against [the same asbestos defendant], a claim for damages for asbestos-related injuries is likewise material to that process. It is readily apparent the misconduct is material.

*Doucet* at 164 (emphasis added) (citing *Ortiz*).

### 3. The Harm From the Misconduct was Obvious

The grossly excessive verdict returned by the jury supports a finding of harm resulting from material misconduct. Broussard not only voted in favor of the plaintiffs on the issues of liability, but further voted to award compensatory and punitive damages of more than $52,000,000. (C. R. 1432-51; 1467-72). As noted in *Doucet*, the inference that should be drawn from a case involving a juror who is also a plaintiff in a separate lawsuit against the same asbestos defendant and who votes in favor of a fellow plaintiff on the same issues against the same defendant, is that the juror "would be more favorable to a plaintiff who, like himself, has a suit for an asbestos-related injury against the

---

[5]    See the *Devine* petition. (C.R. Vol. 12, p. 1632-1647)

FFICSC000052

same defendant." 966 S.W.2d at 165.

## B. EVIDENCE OF MISCONDUCT

A juror may testify as to any outside influence on the juror. *See* Tex. R. Civ. P. 327(b); Tex. R. Evid. 606(b); *Golden Eagle Archery, Inc.*, 24 S.W.3d at 370. To constitute outside influence, the source of the information must have come from outside the jury. *See* Tex. R. Civ. P. 327(b).

In the instant case, the outside source is in the form of a public record, namely the "Plaintiffs' First Amended Petition" filed March 6, 2000, expressly naming Bertha Broussard as a plaintiff against Grace. (C. R. Vol. 12, Page 1632) (C. R. R. Vol. 21, pp. 8-9; Vol. 32, Exh. Grace-A 2-1-00, Juror No. 15, Confidential Juror Questionnaire). Under Rule 327(a), a trial court may examine the record as a whole in determining the misconduct of a juror. *See Golden Eagle Archery, Inc.*, 24 S.W.3d 362; *Pharo v. Chambers County*, 922 S.W.2d 945 (Tex. 1996). From a review of the record as a whole it is clear that Grace did not stand a chance from the beginning of jury selection, and certainly not with Broussard on the jury. As a result of the misconduct of the juror, Grace must be granted a new trial.

## ISSUE V.

### APPELLEES FAILED TO PRESENT EVIDENCE OF EXPOSURE TO GRACE PRODUCTS, THUS NEGATING THE JURY'S LIABILITY AND CAUSATION FINDINGS

"A fundamental principal of traditional products liability law is that the plaintiff must prove that the defendants supplied the product which caused their injury." *Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 691 (Tex. App. – Texarkana, 1991, writ denied) (citing *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989)). Appellees have presented no evidence or, alternatively, factually insufficient evidence of any exposure to Grace asbestos products, thus entitling Grace to reversal and

FFICSC000053

rendition because of no basis for liability or causation findings. Further, there is no evidence that any appellee constituted a "user" of Grace's products, which is a necessary to recover under the Alabama Manufacturers' Extended Liability doctrine. *See Owens-Corning Fiberglas v. Martin*, 942 S.W.2d 712, 722-23 (Tex. App.–Dallas 1997, no writ); *Owens-Corning Fiberglas v. Wasiak*, 917 S.W.2d 883, 892 (Tex. App.–Austin 1996), *aff'd sub nom., Owens Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35 (Tex. 1998). Alternatively, Grace maintains that there was factually insufficient evidence indicating that any of these appellees might have been exposed to Grace's products– i.e., the jury's verdict is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

Since there is no evidence of exposure to Grace's products, the jury's answers to questions Nos. 1, 2, 3, 4, 5, 11, 12, and 13 must be disregarded and judgment rendered in favor of Grace. Grace disputes the jury's findings of wrongdoing, but the Court need not even address the lack of evidence of culpability given the lack of evidence that exposure to a Grace product caused any appellee harm. Further, any dispute over Grace's alleged failure to warn has been rendered superfluous by appellees' failure to prove exposure to a Grace product.

A.    APPELLEES FAILED TO PROVE EXPOSURE

Appellees ask the court to speculate that because Grace's products could have been used for some purposes at the plant that (1) they were in fact used; (2) they were in fact used in the areas where each appellee worked and that each appellee did inhale asbestos fibers from Grace products; and, (3) that asbestos fibers from Grace's products were inhaled in sufficient quantity and over a period of time sufficient to proximately cause the alleged asbestos-related diseases claimed. Such compound speculation is a wholly inadequate basis for entry of judgment against Grace.

MW/255578

-20-

Appellees failed in their attempt to prove that they were exposed, or sufficiently exposed, to either Monokote fireproofing spray or to Zonolite vermiculite, the only two Grace products about which they even presented argument. (C.R.R. Vol. 16, pp. 117-129).

Monokote is a cementitious fireproofing spray primarily composed of gypsum with additives of asbestos in some formulations and vermiculite. To use Monokote, personnel first mix the dry ingredients in a separate mixer. This wet "slurry" is then dumped into a hopper, is sprayed through a single hose onto the surface to be fireproofed. (C.R.R. Vol. 16, pp. 86-90, 113). The Monokote fireproofing spray and its application is completely distinct from mineral fiber spray products and gunite. (C.R.R. Vol. 16, pp. 86-90; 92-94).

None of the plaintiffs identified a Grace product, none handled a Grace product or could associate a brand name or a manufacturer with any spray products, although they had approximately 157 years combined service at U. S. Steel.(C.R.R. Vol. 10, pp. 21, 27-33, 45, 47-8) (C.R.R. Vol. 10, pp. 34, 47, 48) (C. R. R. Vol. 10, pp. 49-50) (C.R.R. Vol. 16, p. 91) (C.R.R. Vol. 10, pp. 101-102, 103, 105, 109-110) (C.R.R. Vol. 6, p. 16; Vol. 7, pp. 89, 94) (C.R.R. Vol. 7, pp. 122-23, 131) (C.R.R. Vol. 8, pp. 31, 37, 47) (C.R.R. Vol. 11, pp. 59-60)

**No plaintiff testified that he had ever mixed or applied vermiculite, or that he had been around others doing so[6].**

Appellees presented the deposition testimony of two witnesses-- Walton Hamner and Milloy Gilliam -- to try to establish evidence of exposure to Grace products. Although Hamner was never

---

[6]    Even if any appellee had presented evidence of exposure to Grace's vermiculite, the appellees failed to present any evidence of the origin of the vermiculite alleged to be used at U. S. Steel that the vermiculite in question was contaminated by tremolite asbestos or that any appellee could have been exposed to asbestos from vermiculite in sufficient quantity to be a cause of his injury. The evidence is that vermiculite was a safe product. (C. R. R. Vol. 17, p. 84).

MW/255578

-21-

FFICSC000055

responsible for ordering either product (C.R.R. Vol. 10, pp. 163-64), he testified that Monokote fireproofing spray and Zonolite vermiculite were used in the open hearth area. (C.R.R. Vol. 10, p. 142). His testimony, however, is fatally flawed because the process which he described was that of applying sprayed mineral fiber, not Monokote. (C.R.R. Vol. 10, pp. 147-149). (C.R.R. Vol. 10, p. 148). Based on the undisputed evidence, the products Hamner described, notwithstanding his convenient use of the names "Monokote" and "Zonolite," could not possibly have been Grace products.

Hamner testified that the spray was used for very limited purposes at the open hearth -- to patch the tops of ladles and to protect the bulkheads and roofs (in the 1960's) in the furnace checker chambers. (C.R.R. Vol. 10, pp. 144-46, 150-51, 155). He stated that vermiculite was mixed with water and troweled around bricks for small patching jobs in the checker chambers. (C.R.R. Vol. 10, pp. 142-43, 152-53, 156, 161). The entire bulkhead and portal areas could be treated in just 30 minutes. (C.R.R. Vol., p. 154). Repairing ladle cracks, which usually occurred only once per day, required only five minutes. (C.R.R. Vol. 10, pp. 155, 163). (C.R.R. Vol. 10, p. 164). There is absolutely no evidence that Hamner knew any of appellees or worked around any of them. The only other products he saw used for the purposes he claimed that Monokote was used for were refractory products– of which there were at least a dozen. (Exh. Vol. 43, Grace Bill - Hamner, pp. 49, 59, 60, 70-1, 77-8).

Witness Gilliam worked at U. S. Steel from 1926 until 1969. (C.R.R. Vol. 11, pp. 120, 122). He was a general supervisor in the open hearth during his last 26 years. (C.R.R. Vol. 11, p. 23). Though Gilliam claimed that Monokote was used, he, like Hamner, described the sprayed mineral fiber application process, not the Monokote process. (C.R.R. Vol. 11, pp. 128-30; 135-37). He

MW/255578

-22-

FFICSC000056

testified that the product that was used in the open hearth was mixed with water at the nozzle, where it actually sprayed out. (C.R.R. Vol. 11, pp. 137, 140). Again, the product described by Gilliam could not possibly have been Monokote because, based on the undisputed evidence, Monokote was not and cannot be applied in the manner described by Gilliam. There is no evidence that Gilliam knew any of the appellees or worked around them at any time. Gilliam could not recall what bags of Monokote looked like. (C.R.R. Vol. 11, pp. 134-35). Further, he testified that this product was applied to the furnace checker chambers when they were in use, at heats of 2200-2700 degrees. (C.R.R. Vol. 11, p. 133, 137-38) (C.R.R. Vol. 11, p. 138-39).

None of the appellees' expert witnesses testified that Monokote had been used at U. S. Steel or that it was used at all in the steel industry. Indeed, appellees' own experts agreed with Grace's expert that Monokote is a fireproofing agent used primarily on high-rise buildings. (*See* Longo, C.R.R. Vol.6, pp. 125; Dement, C.R.R. Vol. 12, pp 189-92); Balzer, C. R. R. Vol. 16, pp. 92, 105, 209)

As a practical matter, Monokote could not have been used in the open hearth. It is uncontroverted that Monokote was to be applied only to clean surfaces, not surfaces with oil, grease, dirt, loose paint, mill scale (rust), "or any other matter which may impair the bonding." (C.R.R. Vol. 16, pp. 94-95; WRG Exh. 118) If Monokote is applied to dirty surfaces, the product does not adhere. (C.R.R. Vol. 16, p. 95) It is uncontroverted that Monokote was not to be applied at high temperatures and would not be a proper product to spray on bulkheads in an open hearth furnace. (C.R.R. vol. 16, p. 95). If Monokote were sprayed on a surface with a temperature of 600 to 1,000 degrees, it would fall off or melt. (C.R.R. Vol. 16, pp. 130-31). (C.R.R. Vol. 11, pp. 127, 133; C.R.R. Vol. 11, pp. 146, 151-52, 161, 163).

MW/255578

FFICSC000057

Finally, appellees failed to produce a single invoice, bill of lading, or other record showing that any Grace product was sold to or shipped to U. S. Steel, Fairfield, Alabama. Absent proof of exposure, there is no basis for entry of judgment against Grace.

**ISSUE VI.**

**THE TRIAL COURT'S ERRONEOUS EXCLUSION OF EVIDENCE OF OTHER PRODUCTS USED AT U.S. STEEL-FAIRFIELD DEPRIVED GRACE OF KEY DEFENSES AND CAUSED RENDITION OF AN IMPROPER VERDICT**

Appellees originally sued approximately 76 product defendants (C. R. Vol. 9, pp. 1296-97, p. 1083; Vol. 9, p. 1267). Grace answered and asserted that appellees did not work with Grace products; that its products did not harm appellees; that any harm alleged would have occurred even without alleged exposure to Grace products; that any harms were caused by third parties or by appellees themselves; and that any injury was solely caused by exposure to other products. (C.R. Vol. 9, p. 1224-1237, paragraphs V, X, XVI, XX, XXV, XXVIII, XXIX, XXXII).

**A.    PROOF THAT INJURY CAUSED SOLELY BY THIRD PARTIES**

Grace was entitled to introduce evidence that would show the jury that appellees' injuries, if any, were caused exclusively by the conduct or products of third persons for whom it had no responsibility. *See, e.g., Caudle v. Birmingham Elec. Co.*, 22 So. 2d 417 (Ala. 1945). In *Caudle*, the defendant asserted that the negligence of the driver of the car in which the deceased was a passenger caused the death, not the defendant's motorman. *Id.* The Alabama Supreme Court held that Birmingham Electric could present evidence "not only that the acts of the motorman were not the cause of the collision, but in order to show that the acts of the motorman were not the cause, could show that the acts of the driver of the automobile were the cause." *Id.* at 421 (quoting 45 C.J. 1141).

MW/255578

FFICSC000058

Grace was entitled not only to introduce evidence that it was not the cause of appellees' injuries, but should have also been permitted to introduce evidence that the acts of the settled defendants **were** the cause of appellees' alleged injuries. Appellees had the burden of proving that exposure to asbestos from a Grace product proximately caused their alleged disease, and "[t]o exclude evidence of other exposures to asbestos is to force the jury to decide whether the defendant's product was a substantial factor in producing the plaintiff's injury 'in a vacuum.'" *Allen v. Owens-Corning Fiberglas Corp.*, 571 N.W.2d 530, 533 (Mich. Ct. App. 1997). One factor in deciding whether exposure to a particular product was a "substantial factor" in causing an asbestos-related injury is the number and severity of total asbestos exposures which have contributed to the injury. "A jury may consider all evidence of contributing factors to determine which, if any, were substantial factors in causing plaintiffs' injury." *Laney v. Celotex Corp.*, 901 F.2d 1319, 1321 (6th Cir. 1990). (C. R. R. Vol. 2, pp. 18-25; Vol. 6, pp. 62-8, 185-7; Vol. 9, pp. 4-10; Vol. 10, pp. 89-90, 131; Vol. 12, p. 254; Vol. 17, p. 120; Exh. Vols. 30-PC-B thru PC-J, 37-40, 43). The trial court erred in excluding testimony of exposure to other products.

While Alabama's death statute does not authorize the jury to apportion damages against tortfeasors, the Alabama Supreme Court has held that whether the wrong has resulted from the combined actions of several tortfeasors and the relative culpability of multiple defendants are factors for the jury to consider. *See Campbell v. Williams*, 638 So. 2d 804 (Ala. 1994). Therefore, for this additional reason, Grace should have been allowed to bring forth evidence regarding other defendants' culpability in the wrongful death action.

**B.    THE COURT ERRONEOUSLY PRESUMED JOINT TORT FEASOR STATUS**

The trial court invaded the province of the jury when it effectively ruled, before any evidence

MW/255578

-25-

FFICSC000059

was introduced, that Grace was a joint tort feasor.  Pursuant to Alabama law, whether a defendant is a joint tortfeasor is a question for the jury.  *See Nelson Brothers, Inc. v. Busby*, 513 So. 2d 1015, 17 (Ala. 1987); *Watt v. Combs*, 12 So. 2d 189, 96 (Ala. 1943).  Evidence that a plaintiff worked with or around similar products supplied by other sources is also relevant to counter any evidence tending to identify a defendant's product.  *See Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987).  Testimony from one plaintiff that he only recalls the brands of other manufacturers, but not the brands of the defendant, is relevant because this indicates that it is more likely that the defendant's brands were not present at the worksite.  *Id.*

By the Court's accepting appellees' position that Grace was a joint tort feasor as justification for excluding evidence of other products, the jury never had an opportunity to weigh the alleged exposure to Grace's products against the actual evidence from appellees' own testimony that they were exposed to a multitude of other asbestos products in greater quantities and for greater periods of time (C.R.R. Vol. 10, pp. 85-89, 131.32; Vol. 11, p. 148; Vol. 16, pp. 90-109; Vol. 17, p. 100, 107-9, 120; Ex. Vol. 43).  Evidence of other products and conduct of other parties was relevant in determining whether Grace was negligent.  Grace should have been permitted to show that what other defendants did (i. e. continued to manufacture and sell asbestos-containing products) was evidence that Grace acted reasonably and was neither negligent or wanton in its conduct.  *See Skipper v. South Central Bell Tel. Co.*, 334 So. 2d 863 (Ala. 1976).

Because of the trial court's erroneous ruling to exclude testimony related to all other product exposures, the jury was left with the clear– but completely wrong– impression that if appellees were indeed exposed to a spray product, that it must be Grace's product.  To the contrary, Grace established through its offer of proof of appellees' own industrial hygiene and epidemiology expert,

MW/255578

-26-

FFICSC000060

Dr. John Dement, that numerous spray products were on the market and could have easily been the products to which appellees were potentially exposed. (C.R.R. Vol. 12, pp. 245-249). Dr. Dement's testimony also established that there were many other asbestos- containing products to which appellees could have been exposed. (C.R.R. Vol. 12, pp. 249-52).

The tender of testimony from appellees Beam, Storey, Thomas, and Edwards regarding other products was denied (C. R. R. Vol. 10, pp. 85-55; Vol. 11, p. 148), along with tender of the testimony of witnesses Harbison, Hamner, Balzer, and Gilliam. (C.R.R. Vol. 10, pp. 131-32; Vol. 11, p. 148; Vol. 17, pp. 100; 107-9; Ex. Vol. 43) Grace also presented documentary evidence of thousands of other products used at U. S. Steel. (C. R. R. Volumes 37-40, 43) Grace Exhibit WRG-A1, for example, lists asbestos products appellees identified as being at U. S. Steel. (C. R. R. Exh. Vol. 37). The evidence of alternative causation is overwhelming. The trial court erred in excluding this evidence, and the error requires reversal. The exclusion of this evidence eliminated a significant defense to liability and probably resulted in an erroneous verdict.

## ISSUE VII.

### THE TRIAL COURT'S ERRONEOUS EXCLUSION OF EVIDENCE OF KNOWLEDGE OF THE EMPLOYER RESULTED IN RENDITION OF IMPROPER VERDICT

Appellees alleged under Alabama's Extended Manufacturers' Liability statute that Grace's products were defective and unreasonably dangerous and that Grace should have warned appellees' employer, U.S. Steel, of the dangers associated with the use of asbestos. If appellees' employer, as a sophisticated purchaser, allowed appellees to be injured by products that the employer knew or should have known created a risk of such injury, the employer's conduct can constitute the sole proximate cause of the appellees' alleged injuries. *See Vines v. Beloit Corp.*, 631 So. 2d 1003 (Ala.

MW/255578

-27-

FFICSC000061

1994); *see also Dresser Indus. v. Lee*, 880 S.W.2d 750 (Tex. 1993). The court explained in *Lee*:

> A defendant is entitled to try to convince the jury that not only did it not cause plaintiff's injuries, but someone else did. A void of evidence concerning the employer's conduct would leave a logical hiatus in the story presented to the jury. With no one allowed to show what part the employer's conduct played, the jury would be left to wonder whether anyone other than the defendant could have caused plaintiff's injuries.

*Lee* at 753. Because the employer's conduct related to the use of asbestos on the job is relevant to the question of whether the employer was negligent and whether such negligence was the sole cause of the appellees' alleged injuries, such evidence should have been admitted at trial. Under Alabama law, Grace was entitled to introduce evidence of U.S. Steel's conduct concerning the content or dissemination of any warnings or its failure to give warnings to its employees, regarding the use of asbestos on its premises. Where a third party such as an employer has an independent duty to warn the ultimate user, the manufacturer may rely upon the third party to perform its duty. *See Purvis v. PPG Indus., Inc.*, 502 So. 2d 714 (Ala. 1987).

Furthermore, under Alabama law, Grace is entitled to show that it had no duty to provide any warning to the appellees' employer with respect to the dangers it already knew were associated with the use of asbestos, and any duty to warn after 1971 was preempted by Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 ("OSHA"). Further, knowledge of the OSHA regulations by U.S. Steel after 1971 was sufficient as a matter of law to obviate the need for Grace to provide a warning to the appellees' employer. Therefore, Grace was entitled to introduce evidence regarding U.S. Steel's knowledge of OSHA regulations and its precautions or failure to implement precautions regarding the OSHA regulations. *See Owens-Corning Fiberglas Corp. v. James*, 646 So. 2d 669 (Ala. 1994).

MW/255578

-28-

FFICSC000062

Appellees' own expert, Dr. John Dement, testified in defendant's proffer that U.S. Steel should have known of the potential hazards of asbestos in 1962 and should have warned its employees and taken other precautions, including monitoring dust levels. U.S. Steel's lack of an industrial hygiene program would have contributed to appellees' asbestos exposure. (C.R.R. Vol. 12, pp. 252-253) This date is especially relevant because it is before Grace manufactured either product at issue here. Despite the clear relevance of this testimony, its tender was denied. (C.R.R. Vol. 12, p. 254)

Grace further tendered testimony of Dr. Leroy Balzer concerning the asbestos program in place at U. S. Steel during the relevant time periods. (C. R. R. Vol. 17, pp. 92-100) This tender was also denied. Grace's offer of proof also contained Beam's testimony that no one with U.S. Steel or his union ever gave him any information or warnings about insulation products, nor was this mentioned in safety meetings. (C.R.R. Vol. 10, p. 87; Exh. Vol. 43 - Grace Bill - Beam, pp. 98-9)) This tender was denied. (C.R.R. Vol. 10, p. 89) Again, the jury was directed to conclude that Grace was solely at fault with respect to warnings disseminated relating to the product.

Additionally, the evidence of workplace condition was relevant to exposure generally. Grace contested whether the appellees had asbestos-related diseases and whether they were exposed to sufficient quantities of asbestos dust to cause disease. The condition of the workplace was absolutely essential to determine the exposure of each person. The jury should have had the opportunity not only to consider the knowledge of U.S. Steel about hazards of asbestos, but also to consider whether it had policies in place governing use of asbestos, whether it warned its employees about asbestos, whether it specified that asbestos be used in certain products, whether it required the use of respirators in dusty areas, whether it implemented dust controls to reduce exposure to dust, whether

MW/255578

-29-

FFICSC000063

it did air monitoring in the areas appellees worked and the results of such monitoring, and whether it would have specified Monokote for use in high heat areas. (C. R. R. Vol. 17, pp. 91-108). Not only should the jury have been allowed to consider whether U. S. Steel was at fault, whether that fault constituted the sole or intervening cause of any harm, it should have been allowed to determine whether there were levels of asbestos exposure in that workplace sufficient to cause asbestos-related diseases. By excluding all evidence related to U. S. Steel, the Court directed the jury to find exposure and causation. By excluding all evidence of other products at U. S. Steel, the Court essentially directed the jury to find against Grace.

## ISSUE VIII.

## THE TRIAL COURT ERRED IN SUBMITTING BREACH OF WARRANTY CLAIMS BARRED BY LIMITATIONS

The breach of warranty claims of all appellees are barred by statutes of limitations of both Texas and Alabama. (See C. R. Vol. 11, p. 1438 and Appendix A-6). The breach of warranty claim was submitted by the trial court over Grace's objections. (C. R. R. Vol. 18, p. 17, lines 6-8). The statutes of limitations for breach of warranty for both Texas and Alabama is four years from tender of delivery of a product. *See* Ala. Code § 7-2-725 (1975); Tex. Bus. & Com. Code Ann. § 2.725 (Vernon 1998).

Appellees do not claim to have come in contact with or have been injured by any product delivered by appellants after they left employment at U.S. Steel, and although each had an obligation to file suit within four years of that date, none did[7]. Each filed suit in 1995, clearly more than four

---

[7]

| | Last Employment | Last Date to file Claim | Date Claim Filed |
|---|---|---|---|
| Jesse Williamson | 1979 | 1983 | 1995 |
| James T. Beam | 1985 | 1989 | 1995 |

MW/255578

-30-

FFICSC000064

years after his causes of action accrued. Therefore, all breach of warranty claims are time barred. *See* Tex. Bus. Com. Code Ann. § 2.725 (Vernon 1998); *Martinez v. Humble Sand & Gravel, Inc.*, 940 S.W. 2d 139 (Tex. Civ. App.–1996), *aff'd sub nom., Childs vs. Haussecher*, 974 S.W. 2d 31 (Tex. 1998).[8]

The erroneous submission of this claim was especially egregious in the Williamson case because it resulted in $3,000,000 in damages for a barred claim. Under Alabama law, the wrongful death statute supplies the only remedy in a tort action for an injury resulting in death. *See Sprouse v. Hawk*, 574 So. 2d 754 (Ala. 1990). Recovery under Alabama's wrongful death statute is limited to punitive damages. *See id.* While breach of warranty claim may be brought separate from the wrongful death, *See Bennefield v. Aquaslide "N" Dive Corp.*, 406 So. 2d 873, 879 (Ala. 1981) this action must be brought within the limitation period prescribed in Alabama Code § 7-2-725 (1975). *See Simmons v. Clemco Indus.*, 368 So. 2d 509 (Ala. 1979).

Under a breach of warranty claim, heirs can recover compensatory damages between the date of injury and the date of death. *See Bennefield* at 873. Here, however, because the breach of warranty claim is time barred, the Williamson heirs cannot recover those compensatory damages. The court erred in submitting the claims over objections of counsel, (C. R. R. Vol. 18, pp. 9-10, lines 17-1; p.

---

| | | | |
|---|---|---|---|
| Edward Storey | 1983 | 1987 | 1995 |
| Aaron Edwards | 1973 | 1977 | 1995 |
| John Thomas | 1975 | 1979 | 1995 |

(T.R. Vol. 7, p. 95, lines 8-18; p. 104, lines 17-19; Vol. 10, p. 21, lines, 10 - 24; p.21, lines 20-2; p. 24, lines 16 - 25; p. 101-101, lines 12 - 25; p. 102, lines 20 - 21; p. 110-111, lines 25 - 22; p. 54, lines 3-17 and p. 57, lines 13-24; p. 60 lines 22 - 24; Vol. 30, Exh. WRG-A21; Vol. 39, Exh. WRG-A24; Appendix A-2, A-3 and A-4)

[8]

    The result under Alabama law is the same, if this court finds this question to be a matter of substantive law. Alabama requires that all actions based on breach of warranty be brought within four years after tender of delivery. *See* Ala. Code § 7-2-725 (1975); *Simmons v. Clemco Indus.*, 368 So. 2d 509 (Ala. 1979).

FFICSC000065

17, lines 6-8) and the $3,000,000 in warranty damages for Williamson heirs should be reversed and rendered.

Appellees' breach of warranty actions fail as a matter of law, and all should be reversed.

ISSUE IX.

**THE TRIAL COURT ERRED IN FAILING TO GRANT GRACE'S MOTION FOR DIRECTED VERDICT ON STATUTE OF LIMITATIONS DEFENSE AGAINST APPELLEES EDWARDS, THOMAS, AND THE DECEDENT WILLIAMSON AND IN SUBMITTING JURY INSTRUCTIONS NOS. 1, 2, 3, 4, 5.**

Section 6-2-30 of the Code of Alabama of 1975 required appellees to bring their claims for asbestos-related personal injury within one year from the date of last exposure to a defendant's asbestos-containing products. Specifically, § 6-2-30 provides that "all actions for injury to the person not arising from contract must be commenced within one year after the cause of action has accrued." Ala. Code § 6-2-30 (1975). In 1980 the statute was amended to expand limitations with respect to latent injury cases. This amendment was applied retroactively to all pending cases as of May 19, 1980. *See* 1980 Ala. Acts 566, § 3. The Alabama Supreme Court, however, held this retroactive provision invalid under § 95 of the Alabama Constitution which provides that "the legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this state." *Tyson v. Johns-Manville Sales Corp.*, 399 So. 2d 263, 268-270 (Ala. 1981); *see also Cazalas v. Johns-Manville Sales Corp.*, 435 So. 2d 55 (Ala. 1983). The Supreme Court held that since § 6-2-30 became effective on May 19, 1980, the one-year statute of limitations in effect prior to that date applied to all actions for damages caused by exposure to asbestos prior to May 1979. *See Tyson.*

This statute created a vested right in the limitations defense. The Alabama Supreme Court quoted authority with approval in *Tyson* holding that "after a cause of action has become barred by

MW/255578

-32-

FFICSC000066

a statute of limitations the defendant has a vested right to rely on that statute as a defense, the defense in such case being considered a vested right or property which cannot be taken away." *Johnson v. Garlock, Inc.*, 682 So. 2d 25, 28 (Ala. 1996). The Alabama Supreme Court held that this vested right was a substantive right. *See Tyson*, 399 So. 2d 263; *Johnson v. Garlock, Inc.*, 682 So. 2d 25 (Ala. 1996). Texas should conclude, as Alabama has, that the limitations set forth in § 6-2-30 of the Code of Alabama (1975) is a substantive right.

Based on § 6-2-30, appellees' causes of action are barred if their exposure occurred before May 1979. The undisputed evidence is that Aaron Edwards, Edward Thomas and Jessie Williamson were not exposed to asbestos products after May of 1979, even if each is given the benefit of his last day of work at U.S. Steel-Fairfield as his most recent exposure. (C. R. R. Vol. 7, p.95, lines 8-18; p. 104, lines 17-19, 122-3; Vol. 10, pp. 101-2; 111-16; Vol. 11, pp. 1418-20; Vol. 30 Ex. WRG-A21, Vol. 39, Ex. WRG A-24) Therefore, their claims are time barred.

The trial court committed reversible error by overruling Grace's motion to dismiss the claims of appellees Edwards, Thomas, and Williamson, and by submitting Jury Questions Nos.1, 2, 3, 4, and 5. (C. R. Vol. 11, pp. 1437, 1438, 1439, 1440, 1441, 1442, 1449; Vol. 10). Due to the limitation bar, the damages awarded to Edwards, Thomas and Williamson should be reversed and rendered and a take nothing judgment entered in favor of Grace.

## ISSUE X.

## THE TRIAL COURT ERRED IN DENYING GRACE'S MOTION TO SEVER AND IN OVERRULING GRACE'S OBJECTION TO CONSOLIDATION

The trial court erred in consolidating a wrongful death claim, a lung cancer case, and three non-malignancy cases. (C. R. R. Vol. 3, pp. 27-28) Alabama law is significantly different in wrongful death actions, further, the physical conditions, the ages and, the economic situation of each

MW/255578

FFICSC000067

claimant in their case is different. The jury, however, awarded the same amount of damages in the

lung cancer case that they awarded in two non-malignancy cases (C. R. R. Vol. 11, pp. 1444-46),

and the same amount in the wrongful death case as in an unimpaired non-malignancy case. Reason

dictates that different diseases and different facts should have resulted in different results; yet the

jury made no real distinction among them. In the first instance, each of the three was awarded

$4,000,000 in compensatory damages and $5,000,000 in punitive damages (C. R. R. Vol. 11 pp.

1444-46, 1479), and in the second each was awarded $6,000,000 in Phase I. Grace was harmed by

the consolidation of the cases.

This harm is exactly what occurred in the consolidated cases in *Cain v. Armstrong World

Industries*, 785 F. Supp. 1448 (S.D. Ala. 1992). In *Cain* the jury gave the same damage awards, both

compensatory and punitive, in eight non-cancer personal injury cases as it gave in two cancer cases.

The jury also awarded the same punitive damages for the wrongful death cases. Because of different

diseases and evidence presented as to each claim, the Court concluded it was inconceivable that a

properly functioning jury could have awarded the same amount in each case. *See id.* at 1457.

Furthermore, by consolidating the wrongful death claim with the personal injury claims, the

Court consolidated a solely punitive damage claim with four compensatory damage claims. *See* Ala.

Code § 6-5-410 (1975). These punitive damages must be proven merely by a preponderance of the

evidence. *See id.* Williamson's wrongful death claim was tried along with the four personal injury

actions, therefore, the jury was required to consider and award punitive damages to one appellee

during the compensatory damage phase of the trial. Claims rising to punitive damages for living

plaintiffs are to be judged by clear and convincing evidence. The evidence presented, however, was

the same for all. This mixing of burdens of proof and of punitive issues in the compensatory phase

MW/255578

-34-

FFICSC000068

of the trial was error. The jury clearly believed that an award of punitive damages was appropriate for all appellees in Phase I, since they awarded virtually the same amounts to all living appellees in both phases.

This consolidation did not comply with Tex. R. Civ. P. 74 or the *Ethyl* case. *See In Re Ethyl Corp.*, 975 S.W.2d 606, 611 (Tex. 1998). The *Ethyl* factors are designed to assist courts in determining whether the consolidation of claims is likely to prejudice or confuse the jury. *Id.* The probability that prejudice or confusion will result may be apparent when only one factor is examined. *See id.* In other cases, no single factor may clearly indicate that prejudice or confusion is probable, but when evidence that will be presented is considered in the aggregate, the cumulative effect would result in an unacceptably high risk of prejudice or confusion. In the final analysis, the dominant consideration is whether the trial will be fair and impartial to all parties. *See id.* at 614-15.

The consolidation of the five claims was harmful. As set forth and outlined in Issue No. XI below, the appellees' claims were different in terms of alleged diseases, length of exposure, and claimed harms. Yet the jury in this case failed to distinguish among different incapacities and diseases, as is demonstrated by their damage awards. Grace is entitled to a new trial.

## ISSUE XI.

### THE JURY'S COMPENSATORY DAMAGE VERDICT IS EXCESSIVE AND JUSTIFIES REMITTITUR OR REVERSAL FOR A NEW TRIAL

The jury's verdict clearly demonstrates that it was the result of passion, prejudice, and other improper motives. Even absent a finding of passion, prejudice, or other improper motive, this Court of Appeals should order remittitur or a new trial. *See, e.g., Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986) (citing *Flanigan v. Carswell*, 324 S.W.2d 835, 841 (Tex. 1959); *Dallas Ry. & Terminal*

MW/255578

-35-

FFICSC000069

*Co. v. Farnsworth*, 148 Tex. 584, 227 S.W.2d 1017, 1022 (1950), *overruled in part on other grounds by Levit v. Adams*, 850 S. W. 2d 469 (Tex. 1993)).

"Factual sufficiency is the sole remittitur standard for actual damages. In determining whether damages are excessive, trial courts and courts of appeal should employ the same test as for any factual insufficiency question". *Pope* at 624. This court must examine all of the evidence in the record to determine whether sufficient evidence supports the damage award and should remit those portions which are so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. *See id.*; *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998); *Clary Corp. v. Smith*, 949 S.W.2d 452, 466 (Tex. App.–Fort Worth 1997, pet. denied); *City of Houston v. Harris County Outdoor Adver. Assoc.*, 879 S.W.2d 322, 334-35 (Tex. App.–Houston [14th Dist.] 1994, writ denied), *cert. denied,* 516 U.S. 822 (1995). In this case the jury's award of actual damages goes far beyond the range of any compensatory damages arguably supported by the evidence. *See, e.g., Cain v. Armstrong World Indus.*, 785 F. Supp. 1448, 1452-54 (S.D. Ala. 1992) (compensatory damage awards of $500,000 for workers with asbestosis ruled "clearly excessive" under facts analogous to present cases).

Four of the cases involve non-malignancy claims (three have virtually no impairment). While Williamson is a death case, the evidence is uncontroverted that his death occurred as a result of a several other non-asbestos-related conditions with asbestos only playing a role. The fifth case involved a diagnosis of lung cancer in 1975 with no recurrence. Despite the limited nature of the harms complained of by appellees, and the many variances among their claims, the jury awarded each appellee remarkably similar amounts.

FFICSC000070

| Edwards | | | Beam | |
|---|---|---|---|---|
| a. past | $1,000,000 | | a. past | $2,000,000 |
| b. future | $5,000,000 | | b. future | $2,000,000 |

| Storey | | | Thomas | |
|---|---|---|---|---|
| a. past | $2,000,000 | | a. past | $2,000,000 |
| b. future | $2,000,000 | | b. future | $2,000,000 |

| Williamson | |
|---|---|
| Compensatory | $3,000,000 |
| Punitives: | $1,500,000 |
| Punitives: | $1,500,000 to PCC |

(C.R.R. 1443-1447). The jury could not have based its verdict on the evidence before it; the evidence supports neither the extreme amounts, nor the uniformity. The evidence for each appellee has been summarized in the chart included as Appendix D-34. Appellees presented no evidence of past or future economic loss; no evidence of past medical cost; and no future medical except screening costs. (C. R. R. Vol. 9, pp. 57-58) Further, the sameness of the amounts awarded as compensatory damages and the amounts awarded as punitive damages demonstrate that the jury actually intended the first phase award to punish Grace, not to justly compensate appellees.

Appellees' stages in life varied widely, from Williamson, who had died seven years before at age 76, to Edwards, who was 56 years of age at trial. (C.R.R. Vol. 8, p. 42; Vol. 39, Exh. WRG-A24; Resp. to Interrog. Nos. 1 & 29; Vol. 39, Exh. WRG-20, Resp. Interrog. No. 1; Vol. 7, p. 118; Vol. 39, Exh. WRG-A23, Resp. Interrog. No. 1; Exh. WRG-A22, Resp. to Interrog. No. 1).

Each had varied smoking histories, ranging from Williamson, who smoked two packs per day for 40 years, to Edwards, who did not smoke at all. (C.R.R. Vol. 9, pp. 50-51; Vol. 8, p.40; Vol. 39, Exh. WRG-20, Resp. Interrog. No. 20; Exh. WRG-A21, Resp. Interrog. No. 20; Vol. 13, pp. 73, 82; Vol. 10, p. 126 -27).

The time spent working in the U.S. Steel-Fairfield open hearth, where alleged exposure to

MW/255578

-37-

FFICSC000071

Grace's products occurred, also varied greatly. (C.R.R. Vol. 8, p. 47; Vol. 39, Exh. WRG-20, Attach. to Interrog. No.14; Vol. 7, pp. 93-94, 122-23; Vol. 6, p. 16; Vol. 10, p. 101, 102, 115, 120-25, 130; Vol. 11, pp. 57-61, 74, 75-77).

The current physical conditions and past medical histories of each appellee also differed significantly. (C.R.R. Vol. 8, pp. 39-41, 47-48; Vol. 9, pp. 27-28, 38-41, 43, 46-52, 55-56, 59, 62, 63-66, 69-72, 92-97, 165; Vol. 10, p. 112-113; Vol. 28, Exh. Thomas R-4; Vol. 11, pp. 61-63, 70, 72-73, 78, 79; Vol. 13, pp. 58-81, 83-88; Vol. 14, pp. 47-51, 54-55, 58, 60-64, 71-73, 129, 133-136, 138, 141-151).

There was also no evidence whatsoever of any economic damages either past, present or future as to any appellee. Under these facts, even taking only appellees' own testimony and evidence into consideration, multi-million dollar verdicts for each appellee were in no way justified. Grace is entitled to a substantial reduction or a new trial before a fair, unbiased jury.

### ISSUE XII.

### THE JURY AWARDED EXCESSIVE PUNITIVE DAMAGES AND THE TRIAL COURT ERRED IN REFUSING TO REMIT THE PUNITIVE DAMAGE AWARDS

The jury awarded punitive damages in amounts that were excessive and without reasoned basis. These excessive awards were the result of the trial court's errors in allowing plaintiffs to make unsubstantiated references to Grace's purported financial status in violation of Alabama law and in allowing other improper argument in the punitive damages phase of the trial. To compound its errors, the trial court refused to remit the amount of the damages awarded, notwithstanding Grace's showing that remittitur was appropriate. Finally, the punitive damages award against Grace in this case is a violation of the United States Constitution.

MW/255578

FFICSC000072

A.    **ALABAMA LAW ON AWARDING AND REVIEWING PUNITIVE DAMAGES IS CLEAR AND WELL-DEVELOPED.**

Alabama law contains explicit provisions for both the imposition and review of a punitive damages award. Punitive damages may be awarded under Alabama law only where there is proof by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness or malice with regard to the plaintiff. *See* Ala. Code § 6-11-20 (1975). Alabama law also restricts the evidence that is admissible in support of punitive damages, and provides that the jury is not permitted to consider the defendant's financial condition. *See Lance, Inc. v. Ramanauskas*, 731 So. 2d 1204,1217 (Ala. 1999); *Green Oil Co. v. Hornsby*, 539 So. 2d 218, 222 (Ala. 1989); *Southern Life & Health Ins. Co. v. Whitman*, 358 So. 2d 1025 (Ala. 1978).

After the verdict, the trial court is required to conduct a hearing in which it must independently reassess the punitive damages awarded by the jury. No presumption of correctness may be applied to the jury's award of punitive damages. *See* Alabama Code § 6-11-23(a) (1975); *Hammond v. Gadsden*, 493 So. 2d 1374 (Ala. 1986). In *Hammond*, the court reviewed the trial court's remittitur of punitive damages by considering several factors, including the culpability of the defendant's conduct, the desirability of discouraging others from similar conduct, the impact upon the parties, and the impact on innocent third parties. *Hammond* at 1379.

Since *Hammond* additional factors that should be considered in a review of the appropriateness of an award of punitive damages have been enumerated by the United States Supreme Court, the Alabama Supreme Court, and the Alabama Legislature. *See, e.g., BMW of N. America, Inc. v. Gore,* 517 U.S. 559 (1996); *Lance, Inc. v. Ramanauskas*, 731 So. 2d 1204 (Ala. 1999); *Green Oil Co. v. Hornsby*, 539 So. 2d 218, 223-24 (Ala. 1989); Ala. Code § 6-11-23(b) (1975).

MW/255578

FFICSC000073

At the threshold, the reviewing court must consider whether the jury's verdict was based on passion or prejudice. *See Lance, Inc.*, 731 So. 2d at 1218. Even when the verdict is the result of a properly functioning jury, the punitive damage award must be reviewed to ensure that punitive damages are neither excessive nor inadequate. That review includes consideration of: 1) the nature of the harm; 2) the degree of reprehensibility of the defendant's conduct; 3) the financial gain, if any, the defendant received from the conduct at issue; 4) the financial position of the defendant; 5) the cost of the litigation; 6) the presence of other punitive damages awards; 7) the nature and amount of any other civil damages the defendant has incurred as a result of the same conduct; and 8) how the award compares to damages awarded in other similar cases.

Application of these factors to the instant case makes clear that the trial court erred in admitting evidence of Grace's financial position, in allowing improper argument in the punitive damages phase, and in failing to reduce to zero the punitive damages awarded by the jury.

**B.    THE TRIAL COURT FAILED TO FOLLOW ALABAMA LAW BY ALLOWING THE JURY TO CONSIDER UNSUBSTANTIATED AND IMPROPER ARGUMENTS REGARDING GRACE'S FINANCIAL POSITION, WHICH RESULTED IN AN ERRONEOUS VERDICT.**

During the argument on punitive damages, the trial court repeatedly allowed the jury to hear completely unsubstantiated references to Grace's purported financial condition. Grace objected to the plaintiffs' fabrications and associated arguments, but the trial court overruled Grace and allowed the improper argument. (C. R. Vol. 20, pp. 9; 17).

The trial court's error was twofold. First, Alabama law does not permit the jury to hear evidence of a defendant's wealth at any point in the proceedings because that evidence is highly prejudicial. *See Ex Parte Hsu*, 707 So. 2d 223, 225 (Ala. 1997) ("longstanding" Alabama law excludes evidence of defendant's wealth from jury's consideration); *Green Oil Co.*, 539 So. 2d at

MW/255578

-40-

222 ("in assessing punitive damages, the jury is not allowed to consider the financial position of the defendant"); *Southern Life & Health Ins. Co. v. Whitman*, 358 So. 2d 1025, 1026 (Ala. 1978) (evidence of defendant's finances highly prejudicial and not admissible). The evidence may only be admitted for the court's consideration after the verdict when it considers the propriety of the punitive damages award. *See Ex Parte Hsu*, 707 So. 2d at 225.

Second, even if the law allowed the jury to consider Grace's financial condition, the trial court should have refused to allow the plaintiffs to dream up a number and argue that the number constituted Grace's net worth. The law in Texas, Alabama, and elsewhere restricts closing argument to matters in the record. *See, e.g.*, Tex. R. Civ. P. 269(e) ("Counsel shall be required to confine the argument strictly to the evidence and to the arguments of opposing counsel"); *Texas Sand Co. v. Shield*, 381 S.W.2d 48, 57-58 (Tex. 1964) (lawyer should not have argued that opponent had also represented an infamous character not a party to the case);  *Texas Employers' Ins. Assoc. v. Guerrero*, 800 S.W.2d 859, 867 (Tex.App.-San Antonio 1990, writ denied) (discussing Tex. R. Civ. P. 269) ("The trial court's duty to police jury argument *sue sponte* has existed in Texas for 100 years"). The only evidence before the Court indicated that Grace's net worth was $156.6 million and not the $600 million that the plaintiffs conjured. (C. R. Vol. 22, Plaintiffs' Ex. 10) (not introduced into evidence). And yet, over Grace's objection, the trial court permitted the plaintiffs to tell the jury that Grace's net worth was $600 million.  (C. R. Vol. 20, pp. 3-9; 17).  The problem was then compounded by plaintiffs' baseless and improper argument that "most corporations, I think, if you just put a million and a half per case, would consider that the cost of doing business. . . . With $600 million of net worth, if after they pay the bills that's what is left, they will pay a million and a half every time." (C. R. Vol. 20 p. 17). The plaintiffs were then allowed to argue, again without any

FFICSC000075

support and over Grace's objection, that an award of $100 million against Grace "would affect their stock price less than a dollar." ( C. R. Vol. 20, p. 16).

There can be little doubt that these improper arguments were harmful to Grace. Further, the difference between the numbers awarded against Grace and PCC makes clear that the jury considered and believed the plaintiffs' fabrications regarding Grace's financial condition. (C. R. Vol. 20 pp. 33-34). That the jury awarded greater punitive damages against Grace than against PCC reflects the plaintiffs' argument that Grace was more financially sound than PCC and that to punish Grace would therefore require greater amounts[9]. (C. R. Vol. 20 p. 18). *See Life Ins. Company of Ga. v. Johnson*, 725 So. 2d 934 (Ala. 1998).

The trial court erred by refusing to sustain Grace's objections to the plaintiffs' fabrications regarding Grace's financial condition. This error was quite plainly harmful and resulted in an improper verdict. This Court should therefore reverse the judgment of the trial court as to punitive damages.

## C.    THE TRIAL COURT FAILED TO FOLLOW THE UNITED STATES SUPREME COURT AND ALABAMA LAW IN REFUSING TO REMIT THE AMOUNT OF PUNITIVE DAMAGES.

As set forth above, the trial court was required by Alabama law to independently reassess the punitive damages awarded by the jury. While the trial court in the instant case did conduct such a "*Hammond*" hearing, its findings are demonstrably erroneous, and the court erred in refusing to remit the punitive damage amount to zero, or at least to amounts substantially smaller than those awarded by the jury.

---

[9]    Morgan: "I say that because of the difference in size for every one (million) you do on Pittsburgh Corning, to have the same effect (on Grace), you have to do five (million). (C. R. R., Vol. 20, p. 18).

MW/255578

-42-

FFICSC000076

1.    **The Court Erroneously Ignored the Substantial Evidence on the Impact of the Punitive Damages Awards on Third Parties.**

In *Hammond* itself, the Alabama Supreme Court recognized that an important aspect of the assessment of punitive damages is the impact of the award on innocent third parties. *Hammond*, 493 So. 2d at 1379. In the instant case, however, the trial court did not address this element, although Grace adduced substantial evidence that an award this excessive could have a substantial impact on future asbestos claimants.

The evidence demonstrated that Grace expects 220,000 additional asbestos claims beyond those that have already been asserted. (C. R. R.; Vol. 21, Exh. 2, p. I-7). If each of those claimants received $5 million in punitive damages, Grace would have liabilities of $1.1 trillion. The impact of the damage awards on third parties is quite significant because it creates a substantial reduction in the funds available to resolve the claims of others.[10] There is no valid reason for permitting these plaintiffs to receive a windfall at the expense of 220,000 other potential claimants. The trial court's refusal to remit the punitive damages awards on this ground was error.

2.    **The Court Effectively Ignored the Evidence Regarding the Limited Profits Grace Earned.**

The profitability to the defendant of the wrongful conduct and the desirability of removing that profit are appropriate considerations in reviewing an award of punitive damages. *See Life Ins. Co. of Georgia v. Johnson*, 701 So. 2d 524, 533 (Ala. 1997). The undisputed evidence was that Grace's total profits on the products at issue was approximately $10.5 million in 1973 dollars. (C. R. R. Vol. 21, p. 52-53. Thus, the amount of profits in current dollars is in the range of $20-$30

---

[10]    Since the judgment was entered in this case, Pittsburgh Corning Corporation, Owens-Corning Fiberglas, and Armstrong World Industries, three major companies involved in asbestos-related litigation have joined approximately 28 companies seeking protection in bankruptcy.

MW/255578

FFICSC000077

million.[11] The total amount of punitive damages awarded against Grace in this case alone is $21.5 million. The discrepancy between the amount of the punitive damages and Grace's total profit is sufficient to demonstrate that the jury's assessment of punitive damages was excessive.

3.  **The Court Erroneously Ignored the Evidence Regarding the Amounts that These Plaintiffs Received in Settlement Credits, the Amounts Other Grace Claimants have Received in the Past and the Amounts Grace has Reserved for Other Claimants.**

In *BMW of N. America, Inc. v. Gore*, 517 U.S. 559, 583 (1996), the United States Supreme Court required that a review of a punitive damages award include a comparison between the amount awarded and sanctions that could be imposed for comparable misconduct. The Alabama Supreme Court has interpreted this requirement to mean that damages awarded in a given case must be compared to damages awarded in other similar cases. *See Lance, Inc.*, 731 So. 2d at 1219. Although there was ample evidence before the trial court concerning the value of these claims, the trial court did not even address this aspect of its required review.

The undisputed evidence demonstrated that Grace had in the past paid claimants who were similarly situated to the plaintiffs an average of $3300 per claim. (C. R. R. Vol. 21, p. 55 & Ex. 2, p. I-7). The testimony associated with this exhibit indicated a lower figure for average payment. This figure was arrived at by including claimants whose claims were dismissed without payment because there was no evidence of exposure. There was likewise no dispute that the average settlement credit

---

[11] | Rate of Growth | Present Value of $10.5 million in 1973 |
|---|---|
| 2% | $17.5 million |
| 2.5% | $20 million |
| 3% | $22.6 million |
| 3.5% | $25.7 million |
| 4% | $29.1 million |
| 4.5% | $33 million |

MW/255578

-44-

FFICSC000078

for each plaintiff in this case – from approximately 40 other defendants – was $500,000, or approximately $12,500 per defendant. These amounts are in stark contrast to the $5 million in punitive damages awarded by the jury in the instant. Although Grace does not argue that the settlement amounts should be directly comparable to the amounts awarded after a trial, they can certainly serve as a guidepost in determining the reasonableness of the damages awarded. Furthermore, a survey of asbestos cases tried in recent years in Texas reveals that the punitive awards in this case significantly exceed those awarded in other cases in which the injuries were more significant. *See, e.g., Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759 (Tex. App.–Corpus Christi 1999, pet. denied) (affirming $0 punitive damages awarded in a mesothelioma case, notwithstanding jury's finding of gross negligence); *North American Refractory Co. v. Easter*, 988 S.W.2d 904 (Tex. App.–Corpus Christi 1999, pet. denied) (affirming $1.5 million aggregate award for 2 mesothelioma plaintiffs and one asbestosis plaintiff); *Owens-Corning Fiberglas Corp. v. Wasiak*, 917 S.W.2d 883 (Tex. App.–Austin 1996) (applying Alabama law) (affirming $750,000 and $100,000 punitive awards to two asbestosis claimants and awards of $1.7 and $1.2 million to the representatives of two mesothelioma claimants who were not entitled to compensatory damages), *aff'd sub nom., Malone*, 972 S.W.2d 35 (Tex. 1998). Counsel for plaintiffs clearly sought punitive damages that were impermissible.[12] (Vol. 20, P. 31)

Any reasonable comparison of the punitive damage awards against Grace here and those in other cases makes clear that the jury's award in this case is excessive and that the trial court erred in refusing to order remittitur.

---

[12]    Morgan: The United States Government has taken it off and has effectively banned it (asbestos) from the face of the earth. It is gone. Now we have to do something with owners; and they must be put to death–plain and simple, put to death. (C. R. R. Vol. 20, p. 31).

FFICSC000079

4.    **The Findings Related to Grace's Purported Financial Condition are Largely Irrelevant.**

Grace's financial condition is highly relevant to the trial court's inquiry in a *Hammond* hearing. *See, e.g., Green Oil Co.*, 539 So. 2d at 223. But, instead of looking at Grace's net worth, the trial court focused on irrelevant statistics drawn from Grace's financial records in its findings of fact. There is no dispute that Grace's net worth, drawn from its most recent audited financial statements at the time of trial was $156.6 million. That is the only relevant figure. Nevertheless, the trial court was somehow persuaded by the plaintiffs to consider such irrelevant statistics as the number of Grace employees, the number of authorized but unissued shares of Grace stock, and the inclusion on Grace's balance sheet of an estimate of expected asbestos-related liabilities (which does not include an estimate of $21.5 million in punitive damages awarded to these four claimants). *See* Findings of Fact and Conclusions of Law Regarding "Hammond" Challenge to Amount of Punitive Damages, Finding No. 3. These statistics have no bearing on Grace's ability to pay the award of damages nor on the effect on Grace and its shareholders of an award of this magnitude. The trial court erred in including these statistics in its analysis, and its error is reflected in its refusal to remit the amount of punitive damages awarded.

5.    **The Court Erroneously Ignored the Evidence that Grace has Handled These Claims in a Responsible Way, has not Behaved Reprehensibly, and is not Deserving of Punishment.**

The United States Supreme Court in *Gore*, as well as the Alabama Supreme Court, indicated that an important aspect for a court's consideration in conducting review of an award of punitive damages is the degree of reprehensibility of the defendant's conduct. *Gore*, 517 U.S. at 575; *see also KMart Corp. v. Kyles*, 723 So. 2d 572, 581 (Ala. 1998). The Plaintiffs and the trial court erroneously interpreted this element of the *Hammond* analysis to require the court to look only at the conduct

MW/255578

-46-

FFICSC000080

being punished, and not also at the conduct of the company in response to claims. But, the Alabama Code required the court to consider both the nature and the extent of any effort the defendant made to remedy the wrong and the opportunity or lack of opportunity the plaintiff gave the defendant to remedy the wrong. *See* Ala. Code § 6-11-23(b) (1975). This is particularly appropriate in a situation such as the one presented here – in which the conduct is so distant in terms of time that the corporation, its management and its shareholders are entirely different from those who engaged in the conduct for which the jury found it liable.

There was ample evidence at the Hammond hearing to show that Grace has been responsible in handling the claims of those who were exposed to asbestos products manufactured by Grace. Grace has paid significant sums in settlement of claims of injury resulting from its products and is committed to continuing to do so. (*See* C. R. R. Vol. 21, Ex. 2, p. I-7). Grace's behavior in the face of these claims is not reprehensible; rather it is sound corporate practice.

Furthermore, the evidence was undisputed that the punitive damage award is designed to punish and deter conduct that occurred 25-30 years ago. Grace has an entirely different management from the one that was then in place. Grace is a publicly-held corporation whose ownership has presumably changed dramatically in those years. Thus, the punitive aspect of the award is falling on shareholders who have seen no profit from the activities for which Grace is being punished.

## ISSUE XIII.

### THE AWARD OF PUNITIVE DAMAGES VIOLATES GRACE'S CONSTITUTIONAL RIGHTS

Texas courts do not have power to supervise activities in Alabama. A punitive damages award is intended to punish conduct that has already occurred and deter future conduct. *See, e.g, Gore*, 517 U.S. at 568. Penalties must therefore be supported by Alabama's own interest in

MW/255578

-47-

FFICSC000081

protecting its own residents. *See id.* at 567. One state cannot attempt to change a party's conduct in another state by imposing punitive damages. Texas is not constitutionally permitted to impose a penalty on Grace for injuries that occurred in Alabama, and the trial court's punitive damages awards should be reversed on this ground. Furthermore, the award of punitive damages in this case was so excessive when considered by itself and when aggregated with other awards that it violates Grace's constitutional due process rights.

## ISSUE XIV.

## GRACE IS ENTITLED TO A NEW
## TRIAL BASED ON CUMULATIVE ERROR

From start to finish, Grace was deprived of a fair trial. This court of appeals has the opportunity to correct the many errors committed by the trial court. Grace is entitled to rendition based on the errors described above. Alternatively, and at the very least, Grace is entitled to a new trial based on cumulative error committed by the trial court that was reasonably calculated to cause and did in fact cause the rendition of an improper judgment. Grace's other issues are incorporated herein by reference. "Multiple errors, even if considered harmless taken separately, may result in reversal and remand for a new trial if the cumulative effect of such errors is harmful." *Weidner v. Sanchez*, 14 S.W.3d 353, 377 (Tex. App.–Houston [14th Dist.] 2000, no pet.); *see also Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 695 (Tex. App.–Texarkana 1991, writ denied).

At trial, a clearly biased jury chosen in disregard of Texas law awarded a total of $31 million in punitive damages and $21 million in compensatory damages against Grace and PCC. The record, when viewed as a whole and as referenced in Grace's other issues proves that errors were committed by the trial court, each of which justifies reversal of the adverse judgment. Taken together, these errors and the resulting unfairness leave this Court no choice but to set aside the trial court's

MW/255578

-48-

judgment and render judgment in favor of Grace.

The jury was improperly assembled and irreparably biased, despite Grace's best efforts to protect itself. Key evidence was repeatedly excluded leaving the evidence before the jury incomplete and misleading. The court, improperly consolidated the cases, submitted unsupported theories of liability and damage to the jury and refused to take any of the mitigating steps sought by Grace. The jury, guided by its own biases and self-interest and stirred to a crest of vindictive anger by appellees' *ad hominem* attacks and misrepresentations in argument, rendered a verdict based solely on emotion and bias. (C. R. R. Vol. 18, pp. 23, 24, 28, 29, 153, 162-5). The trial court refused to correct that verdict.

WHEREFORE, PREMISES CONSIDERED, appellants pray that the judgment of the trial court be entirely reversed and rendered in favor of appellants. Alternatively, appellants seek reversal and a new trial or, to the extent appropriate, remittitur. Appellants also pray for all further relief to which appellants may be entitled of any nature.

Respectfully submitted,

By: _Sandra F. Clark_

Sandra F. Clark
State Bar Id. No. 04294520
Elizabeth B. Pratt
State Bar Id. No. 16239450
P.O. Box 16
Beaumont, TX 77704
(409) 835-5011
(409) 835-5177 Telecopier

Attorneys for Appellants

MW/255578

FFICSC000083