| PRODUCER'S CODE | | | PREVIOUS POLICY NO. | POLICY PREFIX AND NUMBER |
|---|---|---|---|---|
| ETX 31-559-920 | Marsh & McLennan | | XLX XA8 14 90 '80 | XLX-153 24 74 |
| BRANCH | | | RN 9328971642 | 0 |

SEP 24 1982

| CO. | | |
|---|---|---|
| 01 02 | 01 FIREMAN'S FUND 02 THE AMERICAN 03 NATIONAL SURETY | |

R/I

ITEM 1. NAMED INSURED'S NAME AND ADDRESS (NO., STREET, TOWN, COUNTY, STATE)

W.R. Grace & Co.
1114 Avenue of the Americas
New York, N.Y. 10036

POLICY PERIOD:
6/30/82 — 6/30/83

ITEM 3. LIMIT OF LIABILITY
$4,000,000 / $4,000,000 — EACH OCCURRENCE X/O $75,000,000
AGGREGATE

ITEM 4. UNDERLYING INSURANCE LIMIT OF LIABILITY
$75,000,000 EACH OCCURRENCE
$75,000,000 AGGREGATE

ITEM 5. PREMIUM BASIS: Flat Charge
ITEM 6. ADVANCE PREMIUM: $5,000
ANNUAL MINIMUM PREMIUM: $5,000

IN THE EVENT OF CANCELLATION BY THE NAMED INSURED, THE COMPANY SHALL RESERVE AND RETAIN NOT LESS THAN $ AS THE POLICY MINIMUM PREMIUM.

ITEM 7: SCHEDULE OF UNDERLYING INSURANCE

See Endt. #1   BPIS

SEP 30 1982

FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY

The Company designated above, a stock insurance company, (herein called the Company) agrees with the Insured, named in the declarations hereof, made a part hereof, in consideration of the payment of premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

**INSURING AGREEMENTS**

1. Coverage. To indemnify the Insured for the Insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or "Umbrella" policies specified in Item 7 of the Declarations, hereafter called underlying insurance, in full force and effect at the inception of this policy, provided that the insurance for injury to or destruction of property, under this policy and underlying policies shall not apply except as respects injury to or destruction of tangible property, including loss of use thereof.

2. Limit of Liability. The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations, in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this

policy shall in the event of reduction, apply in excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy.

3. Policy Period. This policy applies only to occurrences which take place during the policy period.

**DEFINITIONS**

"Ultimate net loss" means all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage.

**CONDITIONS**

1. Maintenance of Primary Insurance. The Insured warrants and it is a condition of this policy, that at the inception of this policy, insurance afforded by the underlying policies of insurance with...

(Continued on Page Two)

| COUNTERSIGNATURE DATE | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|
| 9/23/82 hs Tax Terr. Code 08009 | |

BLANKET EXCESS LIABILITY POLICY

DEFENDANT'S EXHIBIT
FFICSC Exh. 9(k)

Certain Insurers Tr. Ex.8

C.I. - 00163

FFICSC 000235

(Continued from Preceding Page)

ing as excess over various policies of primary insurance) with combined limits of liability for said underlying insurance stated in Item 4 of the declarations, or renewals or replacements thereof not affording coverages other than those at inception of this policy, shall be maintained in full effect during the period of this policy, except for reduction of aggregate limits solely as a result of payment of claims arising out of occurrences during this policy period. If such underlying insurance is not maintained in full effect by the Insured or if there is any change in the scope of coverage under any underlying insurance, the insurance afforded by this policy shall apply in the same manner as though such underlying policies had been so maintained and unchanged.

The insurance afforded by this policy is subject to the same warranties, terms (including the terms used to describe the application of the limits of liability), conditions and exclusions as are contained in the underlying insurance on the effective date of this policy, except, unless otherwise specifically provided in this policy, any such warranties, terms, conditions or exclusions relating to premium, the obligation to investigate and defend, the amount and limits of liability, and any renewal agreement.

2. Notice of Occurrence. The Insured shall immediately advise the Company of any occurrence or disaster which will probably result in liability under this policy. The Company shall not, however, be called upon to assume charge of the settlement or defense of any claims made, or suits brought, or proceedings instituted against the Insured, but shall have the right and opportunity to be associated with the Insured in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of the policy. If the Company avails itself of such right and opportunity, the Insured and the Company shall cooperate in all respects so as to effect a final determination of the claim or claims.

3. Payment of Loss. It is a condition of this policy that the insurance afforded under this policy shall apply only after all underlying insurances has been exhausted. Upon final determination by settlement, award or verdict of the liability of the Insured, the Company shall promptly pay the Insured as the Insured shall pay, or be required to pay, the amounts of any losses falling within the terms or limits of this insurance. All losses covered under this policy shall be due and payable by the Company within 30 days after they are respectively claimed and proof of loss filed with the Company in conformity with this policy. Bankruptcy or Insolvency of the Insured shall not relieve the Company of any of its obligations hereunder.

4. Payment of Expenses. Loss expenses and legal expenses, including court costs and interest, if any, which may be incurred by the Insured with the consent of the Company in the adjustment or defense of claims, suits or proceedings shall be borne by the Company and the Insured in the proportion that each party's share of loss bears to the total amount of said loss. Loss expense hereunder shall not include salaries and expense of the Insured's employees incurred in investigation, adjustment and litigation.

5. Appeal. In the event the Insured or any underlying insurer elects not to appeal a judgment in excess of the amount of the underlying insurance, the Company may elect to appeal at its expense and shall be liable for the expenses incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in the policy plus the expenses incidental to such appeal.

6. Subrogation. In the event of any payment of this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

Any amount recovered as subrogation shall be apportioned in the inverse order of payment of loss to the extent of actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the Company, the Company shall bear the expenses thereof.

7. Premium. The premium for this policy shall be computed upon the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified is an estimated premium only. Upon termination of this policy the earned premium shall be computed and if the earned premium is more than the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

8. Cancellation. This policy may be cancelled by either party upon 30 days' notice in writing to the other stating the date cancellation shall be effective. If cancellation is at the request of the Insured, adjustment of premium shall be at short rate, and if cancelled by the Company, adjustment shall be made pro rata. However, in the event of cancellation or termination of the underlying insurance, this policy shall cease to apply at the same time without notice to the Insured. Notice shall be given by the Company to the Insured at the address shown in the declarations. Payment or tender of unearned premium is not a condition of cancellation.

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or, possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating

PAGE TWO

(Continued on Next Page)

C.I. - 00164

FFICSC 000236

(Continued from Preceding Page)

the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste, (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235, (d) any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

IN WITNESS WHEREOF, FIREMAN'S FUND INSURANCE COMPANY has caused this Policy to be signed by its President and Secretary but this Policy shall not be valid unless countersigned by a duly authorized Agent of the Company.

*[signature]*
SECRETARY

*[signature]*
PRESIDENT

FINAL PAGE

C.I. - 00165

FFICSC 000237

9828971647

SCHEDULE OF UNDERLYING INSURANCE   #1

| | |
|---|---|
| INSURED: W.R. Grace & Co. | POLICY NUMBER: S-80 XLX 153 24 74 |
| PRODUCER: Marsh & McLennan | EFFECTIVE DATE: 6/30/82 |

**$5,000,000 XS Primary**

| | |
|---|---|
| London | $ 4,000,000 |
| Transit Casualty | $ 1,000,000 |

**$20,000,000 XS $5,000,000**

| | |
|---|---|
| London | $11,250,000 |
| Transit Casualty | $ 4,750,000 |
| Granite State | $ 4,000,000 |

**$50,000,000 XS $25,000,000**

| | |
|---|---|
| London | $15,000,000 |
| A.I.U. | $ 4,000,000 |
| Hartford | $ 1,500,000 |
| Granite State | $10,000,000 |
| Transit Casualty | $14,000,000 |
| Gerling Konzern | $ 1,000,000 |
| National Union | $ 1,000,000 |
| Integrity | $ 2,000,000 |
| Guarantee | $   500,000 |

ONE OF THE
FIREMAN'S FUND INSURANCE COMPANIES
AS NAMED IN THE POLICY

PRESIDENT

COUNTERSIGNATURE OF AUTHORIZED AGENT

160001—1-66

C.I. - 00170

FFICSC 000238

3328971646

Architects, Engineers or Surveyors-Professional Liability Exclusion #2

It is agreed that this policy shall not apply to any liability arising out of any professional services performed by or for the Insured, including, but not limited to:

(a) the preparation or approval of maps, plans opinions, reports, surveys, designs or specifications and

(b) Supervisory, inspection or engineering services

| POLICY NUMBER | INSURED | EFFECTIVE |
|---|---|---|
| S-80 XLX 153 24 74 | W.R. Grace & Co. | 6/30/82 |
| | | PRODUCER |

ONE OF THE
FIREMAN'S FUND INSURANCE COMPANIES
AS NAMED IN THE POLICY

PRESIDENT

TB0009—6-65 SETS

C.I. - 00169

FFICSC 000239

3328971645

**AMENDATORY ENDORSEMENT – LIMIT OF LIABILITY** #3

| INSURED | W.R. Grace & Co. | POLICY NUMBER | XLX-153 24 74 |
|---|---|---|---|
| PRODUCER | Marsh & McLennan | EFFECTIVE DATE | 6/30/82 |

In consideration of the premium charged, it is agreed Insuring Agreement 2, Limit of Liability, is changed to read as follows:

**2. Limit of Liability.**
The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy because of (i) personal injury and property damage arising out of the completed operations hazard and products hazard combined; or (ii) advertising whenever occurring by whatever media, on account of all occurrences; or (iii) injury arising out of any hazard, other than as described in (i) and (ii), to which the underlying policy affords coverage subject to an aggregate limit and to which this policy also applies.

All other terms and conditions of the policy remain the same and unchanged.

| ONE OF THE FIREMAN'S FUND INSURANCE COMPANIES – AS NAMED IN THE POLICY | PRESIDENT | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|---|

C.I. - 00168

FFICSC 000240

3328971644

### CANCELLATION AMENDMENT ENDORSEMENT (EXCESS UMBRELLA) #4

It is hereby understood and agreed that the first (1st) sentence of Condition 8, CANCELLATION, is voided and replaced by the following:

"This policy may be cancelled by either party upon forty five (45) days thirty (30) days notice with respect to cancellation for non-payment of premium, in writing to the other, stating the date cancellation shall be effective."

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

| POLICY NUMBER | ISSUED | EFFECTIVE |
|---|---|---|
| 3-80 XLX 153 24 74 | W.R. Grace & Co. | 6/30/82 |

ONE OF THE
FIREMAN'S FUND INSURANCE COMPANIES
AS NAMED IN THE POLICY

*Myron Du Brown*
PRESIDENT

180009—5-65 SETS

C.I. - 00167

FFICSC 000241

2787.1    Endt. #5

"It is agreed that except only with respect to policy period, premium, limits of liability and architects, engineers or surveyors professional liability exclusion, this policy is hereby amended to follow all the terms, conditions, definitions and exclusions of the first layer umbrella policy (London and various British) KY017582 and all renewals and replacements thereof."

| POLICY NUMBER | INSURED | EFFECTIVE |
|---|---|---|
| 3-80 XLX 153 24 74 | W.R. Grace & Co. | 6/30/82 |

ONE OF THE
**FIREMAN'S FUND INSURANCE COMPANIES**
AS NAMED IN THE POLICY

PRODUCER: Marsh & McLennan

180009—6-65 SETS



WRG 000000352

FFICSC 000242

3328971641

## NOTICE OF CANCELLATION OR NONRENEWAL

*If this policy affords a greater period of notice than that specified in the policy contract, the provisions of this notice shall control*

| EFFECTIVE DATE OF CANCELLATION OR TERMINATION | ISSUING OFFICE | DATE MAILED |
|---|---|---|
| | MIER YANT | 12-21-82 |

*This notice applies to a policy that provides Fire Insurance coverage and you have trouble replacing it contact your agent or broker. You may be eligible for coverage thru the Fair Access to Insurance Requirements Plan (FAIR Plan), if the plan is available in your state.*

NAMED POLICY NUMBER AND NAME AND ADDRESS OF INSURED

WX 153 24 74
W R Grace and Co
1114 Ave of the Americas
New York, NY 10036

INSURER'S POLICY NUMBER AND NAME AND ADDRESS OF MORTGAGEE OR LOSS PAYEE

$5000.00

APPLICABLE PARAGRAPH IS MARKED [X]

[ ] CANCELLATION: We must tell you that your policy will be cancelled on the effective date listed in this notice at the standard time specified in your policy. Any claim originating prior to this date will not be affected by this cancellation. If you are entitled to any unearned premium that does not accompany this notice it will be refunded. We are sorry that your protection cannot be continued under this policy. If you have not discussed your continued insurance protection with your agent or broker, please contact him about other insurance plans. We are sorry that protection cannot be continued.

[ ] CANCELLATION—NONPAYMENT OF PREMIUM — Because we have not received the balance due, we must tell you that your policy will be cancelled on the effective date listed in this notice, at the standard time specified in your policy. Any claim originating prior to this date, will not be affected by this cancellation. If you are entitled to any unearned premium that does not accompany this notice it will be refunded. We are sorry that your protection cannot be continued under this policy. If the amount due is received in our office before the effective date of cancellation your policy will be fully reinstated. Please send the payment to [ ] the Company [X] your agent or broker.

[ ] NONRENEWAL: We wish to notify you that your current insurance policy will not be renewed and your coverage will end on the termination date shown above, at the standard time specified in your policy. If you have not discussed your continued insurance protection with your agent or broker, please contact him about other insurance plans. We are sorry that protection cannot be continued.

AGENT OR BROKER

Code 31 559 920
Marsh and McLennan
1221 Ave of the Americas
New York, NY 10020

[ ] FIREMAN'S FUND INSURANCE COMPANY
[ ] THE AMERICAN INSURANCE COMPANY
[ ] NATIONAL SURETY CORPORATION
[ ] ASSOCIATED INDEMNITY CORPORATION
[ ] AMERICAN AUTOMOBILE INSURANCE COMPANY

AUTHORIZED SIGNATURE

BRANCH COPY

455045—11-79

C.I. - 00171

FFICSC 000243

3328971654 C

| NEW ☐ | RENEWAL ☒ | UMBRELLA ☐ | EXCESS ☒ umbrella | OTHER ☐ |

INSURED: W.R. Grace & Co.  PERIOD: 6/30/82 TO 83
1114 Ave of the Americas  ASSIGNED #: XLX-1532474
New York, NY 10036

PRODUCER: Marsh & McLennan  ATT: Tom Evans
POLICY LIMIT: 4M Ab 75m x $75M  SIR: N/A  PREMIUM: 5,000.
ENDORSEMENTS: TOTAL NUMBER ( )  COMMISSION: 10%
same as expiring
schedule of underlying — see attached

TREATY LIMITS  3  ABA LIMITS  N/A  ABA FORM COMPLETED ☐
REQUEST COPY OF FIRST UMBRELLA  yes  FACULTATIVE REINSURANCE: YES ☒ NO ☐

FACULTATIVE RECAP

FIREMAN'S FUND RETENTION: 3,000,000

FACULTATIVE PARTICIPANTS  (QUOTA SHARE UNLESS INDICATED OTHERWISE)

| CERTIFICATES RECD. & CHECKED | CONTACT & COMPANY | ASSIGNED CERT. # | LIMIT | GROSS PREMIUM | CEDING COMMISSION |
|---|---|---|---|---|---|
|  | MU (Steve Mooney) |  | 1M | 1250 | 22.5% |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

CODING PERCENTAGES:

AUTO _____  BI _____  PD _____
ALL OL&T _____  BI _____  PD _____
CONTRACTORS _____  BI _____  PD _____
ALL OTHER M&C _____  BI  65  PD  35
ALL PRODUCTS _____  BI _____  PD _____

CLEARANCE — COMPLETED  N.Y. ☒  BRANCH ☐
UNDERWRITER: Fran LeMoine for Kevin Talty
9-20-82

C.I. - 00178

FFICSC 000244

| | | |
|---|---|---|
| 3328971655 | | |
| ENTRY INSTRUCTIONS—( & SR—CASUALTY—7-82 ) | CEDED REINSURANCE | |

Entry Transaction Number: 1
Policy Number: XLX 155 24 74
Branch: NYK 3-80
Insured: W R Grace
Total Policy Limit: 4,000,000
E & SR Treaty Limit: 3,000,000
Gross: ☒ Additional ☐ Return Premium Due
Producer's Comm: 10
Premium Allocation:
- E & SR Treaty 94-00-001, Code BE-05, or 75 % of Gross Premium to Treaty
- E & SR Surplus Treaty 95-00-042, Code 190

Ordinary Excess row (00 ALL M & C / 97776):
65/3 x 3250 1750 1267 683

Underwriter: Moore    Date: 9/20/82

Does Outside Reinsurance Apply? ☒ Yes—See Reverse Side

XR0090-7-82

C.I. - 00179

FFICSC 000245

3328971656

MORE ENTRY INSTRUCTIONS (CONTINUED FROM REVERSE SIDE)

## FACULTATIVE CEDED REINSURANCE

| | | LIABILITY (PERCENT OR DOLLARS) | PREMIUM TO REINSURER | | RLINS. COMM. |
|---|---|---|---|---|---|
| | | | B.I. | P.D. | |
| REINSURER | H.R.G. HANOVER RE GERMANY C/O ESRM INC. | 1,000,000 | 812 | 438 | 22½ |
| MAILING ADDRESS | ☐ SAN FRANCISCO ☒ NEW YORK ☐ CHICAGO | | | | |
| REINSURANCE CERT. NO. | | | | | |
| PAY PREMIUM TO REINS COMPANY | | | | | (INCLUDING TAX & BOARD) |
| | | | B.I. | P.D. | |
| REINSURER | | | | | |
| MAILING ADDRESS | | | | | |
| REINSURANCE CERT. NO. | | | | | |
| PAY PREMIUM TO: REINS. COMPANY ☐  REINS. BROKER ☐  PRODUCER ☐ | | | | | (INCLUDING TAX & BOARD) |
| | | | B.I. | P.D. | |
| REINSURER | | | | | |
| MAILING ADDRESS | | | | | |
| REINSURANCE CERT. NO. | | | | | |
| PAY PREMIUM TO REINS. COMPANY ☐  REINS. BROKER ☐  PRODUCER ☐ | | | | | (INCLUDING TAX & BOARD) |

### TO: CLAIMS (FOR CLAIMS DEPARTMENT USE ONLY)

1. IF LIABILITY CEDED BLOCK ABOVE (NOTED) INDICATES "FIRST LOSS—100% OF..." THE FACULTATIVE REINSURER HAS ASSUMED 100% OF LIMIT AND COVERAGES INDICATED. IF APPLICABLE, ALLOCATE THIS PORTION OF TOTAL POLICY LOSS FIRST, THEN PROCEED AS INDICATED BELOW.

2. DISTRIBUTE THAT PART OF THE TOTAL POLICY LOSS (RESERVE OR PAYMENTS) ALLOCATED TO THE E & SR TREATY AS FOLLOWS:

| E & SR TREATY'S (NOT E & SR SURPLUS TREATY) SHARE OF LOSS AS SHOWN UNDER CEDED REINSURANCE IN THE SPACE TITLED, "E & SR TREATY LIMIT" ON REVERSE SIDE. | LOSS ALLOCATION | |
|---|---|---|
| | FIREMAN'S FUND'S SHARE (NET TO F.F.) | REINSURANCE SHARE |
| FIRST $1,000,000 OF LOSS TO E & SR TREATY: | 50% OF LOSS | 50% OF LOSS |
| NEXT $2,000,000 OF LOSS TO E & SR TREATY: | 25% OF LOSS | 75% OF LOSS |
| NEXT $2,000,000 OF LOSS TO E & SR TREATY: | 25% OF LOSS | 75% OF LOSS |
| NEXT $5,000,000 OF LOSS TO E & SR TREATY: | 10% OF LOSS | 90% OF LOSS |

3. ALLOCATE REMAINING PORTION OF TOTAL LOSS (IF ANY) AS PER THE PERCENTAGE (OR DOLLARS) SHOWN UNDER CEDED REINSURANCE IN THE SPACE TITLED, "E & SR SURPLUS TREATY LIMIT" ON THE REVERSE SIDE AND FACULTATIVE REINSURANCE (IF SHOWN ABOVE).

ENTRY DEPARTMENT—REFER TO REVERSE SIDE FOR CODING INSTRUCTIONS.

## BLANKET EXCESS LIABILITY POLICY
## (FOLLOWING FORM)

Coverage is provided in the Company designated by number, a stock insurance Company (herein called the Company)

### DECLARATIONS

1. INSURED'S NAME AND ADDRESS (NO., STREET, TOWN, COUNTY, STATE)

| | |
|---|---|
| 01 | FIREMAN'S FUND INSURANCE COMPANY — SAN FRANCISCO, CALIFORNIA |
| 16 | THE AMERICAN INSURANCE COMPANY — PARSIPPANY, NEW JERSEY |
| 07 | NATIONAL SURETY CORPORATION — CHICAGO, ILLINOIS |
| 13 | ASSOCIATED INDEMNITY CORPORATION — SAN FRANCISCO, CALIFORNIA |
| 15 | AMERICAN AUTOMOBILE INSURANCE COMPANY — CREVE COEUR, MISSOURI |

FIREMAN'S FUND INSURANCE COMPANIES
MAIL ADDRESS
SAN FRANCISCO
CALIFORNIA

POLICY PERIOD:

ITEM 2.
INCEPTION (MO, DAY YR.)     EXPIRATION (MO, DAY YR.)
12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN.

ITEM 3.
LIMIT OF LIABILITY:
$ _____ EACH OCCURRENCE
$ _____ AGGREGATE

ITEM 4.
UNDERLYING INSURANCE LIMIT OF LIABILITY
$ _____ EACH OCCURRENCE
$ _____ AGGREGATE

ITEM 5. PREMIUM BASIS
$

ITEM 6.
ADVANCE PREMIUM: $
ANNUAL MINIMUM PREMIUM: $

IN THE EVENT OF CANCELLATION BY THE NAMED INSURED, THE COMPANY SHALL RECEIVE AND RETAIN NOT LESS THAN $ _____ THE POLICY MINIMUM PREMIUM.

ITEM 7. SCHEDULE OF UNDERLYING INSURANCE:

### FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY

The Company designated above, a stock insurance company, (herein called the Company) agrees with the Insured, named in the declarations made a part hereof, in consideration of the payment of premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

### INSURING AGREEMENTS

1. **Coverage.** To indemnify the Insured for the Insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or "Umbrella" policies specified in Item 7 of the Declarations, hereafter called underlying insurance, in full force and effect at the inception of this policy, provided that the insurance for injury to or destruction of property under this policy and underlying policies shall not apply except as respects injury to or destruction of corporeal property, including loss of use thereof.

2. **Limit of Liability.** The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy.

3. **Policy Period.** This policy applies only to occurrences which take place during the policy period.

### DEFINITIONS

"Ultimate net loss" means all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage.

### CONDITIONS

1. **Maintenance of Primary Insurance.** The Insured warrants, and it is a condition of this policy, that at the inception of this policy, insurance afforded by the underlying policies of insurance (apply-

(Continued on Page Two)

COUNTERSIGNATURE DATE _____  COUNTERSIGNATURE OF AUTHORIZED AGENT _____

PAGE ONE

5902—2-72

IV-D

C.I. - 00196

FFICSC 000247