| PRODUCER / CODE | NAME AND LOCATION | PREVIOUS POLICY NUMBER | | POLICY NUMBER |
|---|---|---|---|---|
| 1 559 920 | Marsh & McLennan | XLX 153 2474 | 3-80 | XLX- 153 22 27 |

**BLANKET EXCESS LIABILITY POLICY (FOLLOWING FORM)**
NYK

Coverage is provided in the Company designated by number, a stock insurance Company (herein called the Company)

**DECLARATIONS**
INSURED'S NAME AND ADDRESS (NO., STREET, TOWN, COUNTY, STATE)

01 FIREMAN'S FUND INSURANCE COMPANY — SAN FRANCISCO, CALIFORNIA
18 THE AMERICAN INSURANCE COMPANY — PARSIPPANY, NEW JERSEY
07 NATIONAL SURETY CORPORATION — CHICAGO, ILLINOIS
13 ASSOCIATED INDEMNITY CORPORATION — SAN FRANCISCO, CALIFORNIA
15 AMERICAN AUTOMOBILE INSURANCE COMPANY — CREVE COEUR, MISSOURI

FIREMAN'S FUND INSURANCE COMPANIES
MAIL ADDRESS SAN FRANCISCO CALIFORNIA

W.R. Grace & Co.
1114 Avenue of the Americas
New York, N.Y. 10036

POLICY PERIOD:
ITEM 2. 6/30/83    6/30/84
INCEPTION (MO. DAY YR.)    EXPIRATION (MO. DAY YR.)
12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN.

ITEM 3. LIMIT OF LIABILITY:
$4,000,000    EACH OCCURRENCE    P/O $75,000,000
$4,000,000    AGGREGATE

ITEM 4. UNDERLYING INSURANCE LIMIT OF LIABILITY
$75,000,000    EACH OCCURRENCE
$75,000,000    AGGREGATE

ITEM 5. PREMIUM BASIS
$ Flat charge

ITEM 6. ADVANCE PREMIUM: $5,000
ANNUAL MINIMUM PREMIUM: $5,000

IN THE EVENT OF CANCELLATION BY THE NAMED INSURED, THE COMPANY SHALL RECEIVE AND RETAIN NOT LESS THAN $ AS THE POLICY MINIMUM PREMIUM.

ITEM 7. SCHEDULE OF UNDERLYING INSURANCE:

See Endt #1

**FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY**

The Company designated above, a stock insurance company, (herein called the Company) agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

**INSURING AGREEMENTS**

I. Coverage. To indemnify the Insured for the Insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or "Umbrella" policies specified in Item 7 of the Declarations, hereafter called underlying insurance, in full force and effect at the inception of this policy, provided that the insurance for injury to or destruction of property under this policy and underlying policies shall not apply except as respects injury to or destruction of corporeal property, including loss of use thereof.

II. Limit of Liability. The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this

policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy.

2. Policy Period. This policy applies only to occurrences which take place during the policy period.

**DEFINITIONS**

"Ultimate net loss" means all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage.

**CONDITIONS**

1. Maintenance of Primary Insurance. The Insured warrants, and it is a condition of this policy, that at the inception of this policy, insurance afforded by the underlying policies of insurance (apply-

(Continued on Page Two)

Terr Code 06079

COUNTERSIGNATURE DATE    COUNTERSIGNATURE OF AUTHORIZED AGENT
E.T.  6/22/83

PAGE ONE    5902-2-72


**DEFENDANT'S EXHIBIT**
FFICSC Exh. 9(m)

WRG 000000332

FFICSC 000264

(Continued from Preceding Page)

ing as excess over various policies of primary insurance) with combined limits of liability for said underlying insurance stated in Item 4 of the declarations, or renewals or replacements thereof not affording coverages other than those at inception of this policy, all be maintained in full effect during the period of this policy, except for reduction of aggregate limits solely as a result of payment of claims arising out of occurrences during this policy period.

If underlying insurance is not maintained in full effect by the insured or if there is any change in the scope of coverage under any underlying insurance, the insurance afforded by this policy shall apply in the same manner as though such underlying policies had been so maintained and unchanged.

The insurance afforded by this policy is subject to the same warranties, terms (including the terms used to describe the application of the limits of liability), conditions and exclusions as are contained in the underlying insurance on the effective date of this policy, except, unless otherwise specifically provided, in this policy, any such warranties, terms, conditions or exclusions relating to premium, the obligation to investigate and defend, the amount and limits of liability, and any renewal agreement.

2. **Notice of Occurrence.** The Insured shall immediately advise the Company of any occurrence or disaster which will probably result in liability under this policy. The Company shall not, however, be called upon to assume charge of the settlement or defense of any claims made, or suits brought, or proceedings instituted against the Insured, but shall have the right and opportunity to be associated with the Insured in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of the policy. If the Company avails itself of such right and opportunity, the Insured and the Company shall cooperate in all respects so as to effect a final determination of the claim or claims.

3. **Payment of Loss.** It is a condition of this policy that the insurance afforded under this policy shall apply only after all underlying insurance has been exhausted. Upon final determination by settlement, award or verdict of the liability of the Insured, the Company shall promptly pay the Insured as the Insured shall pay, or be required to pay, the amounts of any losses falling within the terms or limits of this insurance. All losses covered under this policy shall be due and payable by the Company within 30 days after they are respectively claimed and proof of loss filed with the Company in conformity with this policy. Bankruptcy or insolvency of the Insured shall not relieve the Company of any of its obligations under.

4. **Payment of Expenses.** Loss expenses and legal expenses, including court costs and interest, if any, which may be incurred by the Insured with the consent of the Company in the adjustment or defense of claims, suits or proceedings shall be borne by the Company and the Insured in the proportion that each party's share of loss bears to the total amount of loss. Loss expense hereunder shall not include salaries and expenses of the Insured's employees incurred in investigation, adjustment and litigation.

5. **Appeal.** In the event the Insured or any underlying insurer elects not to appeal a judgment in excess of the amount of the underlying insurance, the Company may elect to appeal at its expense and shall be liable for the expenses incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in the policy plus the expenses incidental to such appeal.

6. **Subrogation.** In the event of any payment of this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

Any amount recovered as subrogation shall be apportioned in the inverse order of payment of loss to the extent of actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the Company, the Company shall bear the expenses thereof.

7. **Premium.** The premium for this policy shall be computed upon the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified is an estimated premium only. Upon termination of this policy the earned premium shall be computed and if the earned premium is more than the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

8. **Cancellation.** This policy may be cancelled by either party upon 30 days' notice in writing to the other stating the date cancellation shall be effective. If cancellation is at the request of the Insured, adjustment of premium shall be at short rate, and if cancelled by the Company, adjustment shall be made pro rata. However, in the event of cancellation or termination of the underlying insurance, this policy shall cease to apply at the same time without notice to the Insured. Notice shall be given by the Company to the Insured at the address shown in the declarations. Payment or tender of unearned premium is not a condition of cancellation.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means
(a) any nuclear reactor,
(b) any equipment or device designed or used for (1) separating

PAGE TWO

(Continued on Next Page)

(Continued from Proceding Page)

the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste, (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235, (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

IN WITNESS WHEREOF, FIREMAN'S FUND INSURANCE COMPANY has caused this Policy to be signed by its President and Secretary but this Policy shall not be valid unless countersigned by a duly authorized Agent of the Company.

*[signature]*
SECRETARY

*[signature]*
PRESIDENT

FINAL PAGE

C.I. - 00132

FFICSC 000266

| | |
|---|---|
| Schedule of Underlying | #1 |

| INSURED | POLICY NUMBER |
|---|---|
| W.R. Grace & Co. | 3-80 XIX - 153 2227 |
| PRODUCER | EFFECTIVE DATE |
| Marsh & McLennan | 6/30/83 |

**$5,000,000. XS Primary**

| London | $4,000,000. |
| Transit Casualty | $1,000,000. |

**$20,000,000. XS 5,000,000**

| London | $11,250,000 |
| Transit Casualty | 4,750,000. |
| Granite State | 4,000,000. |

**$50,000,000. XS 25,000,000.**

| London | $16,000,000. |
| A.I.U. | 4,000,000. |
| Hartford | 1,500,000. |
| Granite State | 10,000,000. |
| Transit Casualty | 14,000,000. |
| Gerling Kozern | 1,000,000. |
| National Union | 1,000,000. |
| Integrity | 2,000,000. |
| Guarantee | 500,000. |

| ONE OF THE FIREMAN'S FUND INSURANCE COMPANIES AS NAMED IN THE POLICY | PRESIDENT 10-X | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|---|

180001-1-65

WRG 000000335

FFICSC 000267

---

**ARCHITECTS, ENGINEERS OR SURVEYORS-PROFESSIONAL LIABILITY EXCLUSION    #2**

It is agreed that this policy shall not apply to any liability arising out of any professional services performed by or for the Insured, including, but not limited to:

A) The preparation or approval of maps, plans opinions, reports, surveys design or specifications and

B) Supervisory, inspection or engineering services.

| POLICY NUMBER | INSURED | EFFECTIVE |
|---|---|---|
| JO XLX - 153 2227 | W.R. Grace & Co | 6/30/83 |

| ONE OF THE FIREMAN'S FUND INSURANCE COMPANIES AS NAMED IN THE POLICY | PRODUCER |
|---|---|
| *signature* PRESIDENT | Marsh & McLennan |
| | COUNTERSIGNATURE OF AUTHORIZED AGENT |

180009—6-65 SETS

WRG 000000336

FFICSC 000268

| AMENDATORY ENDORSEMENT - LIMIT OF LIABILITY | #3 |
|---|---|

| INSURED | POLICY NUMBER |
|---|---|
| W.R. Grace & Co. | 3-80 XLX 151 2227 |
| PRODUCER | EFFECTIVE DATE |
| Marsh & McLennan | 6/30/83 |

In consideration of the premium charged, it is agreed Insuring Agreement 2, Limit of Liability, is changed to read as follows:

2. **Limit of Liability.**
The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy because of (i) personal injury and property damage arising out of the completed operations hazard and products hazard combined; or (ii) advertising whenever occurring by whatever media, on account of all occurrences; or (iii) injury arising out of any hazard, other than as described in (i) and (ii), to which the underlying policy affords coverage subject to an aggregate limit and to which this policy also applies.

All other terms and conditions of the policy remain the same and unchanged.

| ONE OF THE FIREMAN'S FUND INSURANCE COMPANIES AS NAMED IN THE POLICY | PRESIDENT | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|---|

160001-1-65

WRG 000000337

FFICSC 000269



**CANCELLATION AMENDMENT ENDORSEMENT (EXCESS UMBRELLA)    #4**

It is hereby understood and agreed that the first (1st) sentence of Condition 8, CANCELLATION, is voided and replaced by the following:

"This policy may be cancelled by either party upon sixty (60) days thirty (30) days notice with respect to cancellation for non-payment of premium, in writing to the other stating the date cancellation shall be effective."

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

| POLICY NUMBER | INSURED | EFFECTIVE |
|---|---|---|
| J-80 XLX 153 22 27 | W.R. Grace & Co. | 6/30/83 |
| ONE OF THE **FIREMAN'S FUND INSURANCE COMPANIES** AS NAMED IN THE POLICY  *Myron Du Bain* PRESIDENT   10-X | PRODUCER Marsh & McLennan COUNTERSIGNATURE OF AUTHORIZED AGENT | |

180009—8-65 SETS



WRG 000000339

FFICSC 000270

Endt. #5

"It is agreed that except only with respect to policy period, premium, limits of liability and architects, engineers or surveyors professional liability exclusion, this policy is hereby amended to follow all the terms, conditions, definitions and exclusions of the first layer umbrella policy (London and various British) KY017582 and all renewals and replacements thereof."



| POLICY NUMBER | INSURED | EFFECTIVE |
|---|---|---|
| 5-80 XLX 153 22 27 | W.R. Grace & Co. | 6/30/83 |
| ONE OF THE FIREMAN'S FUND INSURANCE COMPANIES AS NAMED IN THE POLICY | PRODUCER Marsh & McLennan | |

180009—6-65 SETS

WRG 000000338

FFICSC 000271