# EXHIBIT A

Page 449

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - -

| | |
|---|---|
| In Re: | : Chapter 11 |
|  | : |
|  | : Case No. |
| W.R. GRACE & CO., et al, | : 01-01139 JKF |
|  | : |
|  | : (Jointly |
| Debtors | : Administered) |

- - -

Monday, May 4, 2009

- - -

Continuation of oral deposition of PETER VAN N. LOCKWOOD, ESQUIRE, taken pursuant to notice, was held at the offices of CAPLIN & DRYSDALE, One Thomas Circle N.W., Suite 1100, Washington, DC  20005, commencing at 12:05 p.m., on the above date, before Lori A. Zabielski, a Registered Professional Reporter and Notary Public in and for the Commonwealth of Pennsylvania.

- - -

MAGNA LEGAL SERVICES
Seven Penn Center
1635 Market Street
8th Floor
Philadelphia, Pennsylvania 19103

Page 510

1  objections on waiver of privilege
2  restated.
3      MS. DeCRISTOFARO:
4  Objection.
5      MS. BAIER: Objection to the
6  extent it calls for a legal
7  conclusion.
8      THE WITNESS: Would you
9  reread the question?
10     (The reporter read from the
11  record as requested.)
12     MR. FINCH: Object to form.
13     MR. GUY: Jonathan Guy for
14  the FCR. Rather than entering an
15  objection every time that Nate
16  does, I am going to enter a
17  standing objection so that we
18  don't keep going round-robin each
19  time. I am adopting those
20  objections, unless I state
21  otherwise.
22     MR. COHN: That is fine with
23  the Libby claimants.
24     THE WITNESS: All I can say

Page 511

1  is the Asbestos Insurance Entity
2  Injunction is set forth in Section
3  8.4.1.1 of the Plan, and I believe
4  that it speaks for itself with
5  respect to that question. I am
6  not sure what it is that you think
7  you are asking me that is
8  ambiguous or otherwise not
9  understandable, looking at the
10  language of the injunction itself.
11     And I am reluctant to get
12  put in a position of, in effect,
13  having to paraphrase a somewhat
14  long and complicated set of
15  provisions with a yes-or-no answer
16  based on your description of the
17  provision.
18     I mean, the answer is if the
19  claim is described as one being
20  enjoined in the injunction, it's
21  enjoined; if it's not, it isn't.
22  BY MR. COHN:
23     Q. Is it the intention of the
24  Asbestos PI Committee in serving as a

Page 512

1  co-proponent of that provision of the
2  Plan, namely, the Asbestos Insurance
3  Entity Injunction, that such injunction
4  be construed to bar the assertion by
5  individual asbestos PI claimants of
6  claims against insurers for their own
7  misconduct?
8      MR. FINCH: Object to form.
9      MR. SCHIAVONI: Object to
10  form. To the extent the witness
11  is permitted to testify about the
12  intent of the committee, we will
13  have a whole host of questions.
14     MR. FINCH: Instruct the
15  witness not to answer that
16  question to the extent it reveals
17  privileged communications. To the
18  extent the asbestos committee has
19  taken a position on the matter
20  publicly through the signing on to
21  the Plan Reorganization or
22  otherwise, the witness can answer.
23     THE WITNESS: The committee
24  doesn't have any intention other

Page 513

1  than as expressed in the language
2  of the Plan provision.
3      If you are asking me -- I
4  understand what you to be asking
5  me is what my understanding of the
6  provision is. And my
7  understanding of the provision is
8  that, as a general proposition,
9  this injunction is ancillary to
10  the 524(g) injunction. The 524(g)
11  injunction describes what claims
12  are channelled to the Trust, and
13  the Plan provides for the
14  assignment of insurance to the
15  Trust. So if what you call a
16  claim for an independent wrong by
17  an insurance company is -- let me
18  back up one second.
19     The issue could come up in
20  two different ways, as I
21  understand it: One of them is
22  that a claim against an insurance
23  company has nothing to do with
24  asbestos personal injury liability

Page 514

```
 1    claims against Grace. If that's
 2    what you mean by an independent
 3    tort claim, then that claim
 4    wouldn't be channelled to the
 5    Trust.
 6         To the extent -- and it
 7    wouldn't be barred by the Asbestos
 8    Insurance Entity Injunction as
 9    such with the following
10    limitation: If Grace had settled
11    with an insurer and given the
12    insurer an indemnity, then if the
13    claim that was asserted against
14    the insurer was indemnified by
15    Grace, then one of two things
16    could happen.
17         If it was an
18    asbestos-related claim, asbestos
19    personal injury claim indemnified
20    by Grace, then the claim would be
21    channelled to the Trust by the
22    channelling injunction, and you
23    would never reach the Asbestos
24    Insurance Entity Injunction,
```

Page 515

```
 1    because the claim would never
 2    reach the insurer.
 3         But if somehow somebody
 4    tried to go around the back door,
 5    if you will, and sued the insurer
 6    directly and sort of somehow -- I
 7    don't know quite how they could do
 8    it, because under the Plan, the
 9    insurer is protected against that
10    claim. But if they somehow
11    managed to do it, then the
12    Asbestos Insurance Entity
13    Injunction -- then I guess it
14    would depend on whether or not --
15    I am having a lot of trouble with
16    this, because the Asbestos
17    Insurance Entity Injunction is
18    supposed to deal with unresolved
19    coverage. It's not intended to
20    deal with settled and resolved
21    coverage.
22         Settled and resolved
23    coverage is handled by the
24    Asbestos Permanent Channelling
```

Page 516

```
 1    Injunction in the two ways that I
 2    testified about on Friday: Either
 3    the claimant gets enjoined; or
 4    under some hypothetical of the
 5    sort that Mr. Brown was asking me
 6    about on Friday, it could
 7    theoretically be channelled either
 8    to the Trust or be a Class 9 claim
 9    against Grace, depending upon
10    whether or not it was an asbestos
11    personal injury or a non-asbestos
12    claim.
13         When you are asking me about
14    this question, are you asking me
15    about an insurer with settled
16    coverage or an insurer with
17    unsettled coverage? Because the
18    answer will differ.
19 BY MR. COHN:
20    Q.  Well, I was asking about
21    claims that had nothing to do with
22    coverage but were just claims for
23    independent wrongdoing against insurers.
24    I am not sure it makes a difference,
```

Page 517

```
 1    but --
 2         MR. SCHIAVONI: Asked and
 3    answered. I do believe we have an
 4    answer on the record.
 5         THE WITNESS: A claim about
 6    independent -- I mean, if somebody
 7    in Libby, Montana is run over by
 8    an insurer's truck on the way to
 9    work, of course, the injunction
10    doesn't bar the claimant from
11    suing that insurer. That's an
12    independent tort claim. But I
13    didn't think you were asking about
14    that sort of independent tort
15    claim. But if that's what you are
16    asking about, no, that injunction
17    doesn't bar that claim.
18 BY MR. COHN:
19    Q.  And neither would the
20    Asbestos PI Channelling Injunction?
21    A.  Of course not. It's not an
22    asbestos personal injury claim. You got
23    run over by the insurer's truck.
24    Q.  Are you aware of my
```

Page 518

1  litigation concerning the applicability
2  of and injunction similar to the Asbestos
3  Insurance Entity Injunction in any other
4  case?
5       MR. WISLER: Can you repeat
6    that? I didn't hear you, Dan.
7  BY MR. COHN:
8       Q.  Are you aware of any
9  litigation concerning the scope of the
10 asbestos or an injunction similar to the
11 Asbestos Insurance Entity Injunction in
12 any other case?
13      A.  The only litigation that I
14 am aware of that's remotely similar --
15 and I don't profess to know all the
16 litigation that might be floating around
17 out there -- is actually litigation over
18 an entity that is closer to the Asbestos
19 Permanent Channelling Injunction. And
20 it's the Travelers injunction that's
21 presently before the United States
22 Supreme Court. To be more specific, it's
23 the Manville injunction that Travelers is
24 litigating about.

Page 519

1       Q.  Has Maryland Casualty
2  Company paid or agreed to pay any money
3  or other consideration in order to be
4  covered by the Asbestos PI Channelling
5  Injunction?
6       A.  Well, that depends on how
7  you use the term "pay."
8          The basis, which I take it
9  which is what you are asking for, for
10 Maryland Casualty being a protected party
11 to this Plan is that in the past,
12 Maryland Casualty Company has paid a lot
13 of money to Grace and entered into a
14 settlement agreement with Grace which
15 releases that coverage and which Grace
16 indemnifies it against claims.
17         As I testified, I believe,
18 on Friday, Grace, as part of this deal,
19 Grace has had two positions that it has
20 taken that we have -- we being the
21 committee and its representative --
22 accepted. Number one is a claim for
23 indemnity from a settled insurer based on
24 claims against that insurer that are

Page 520

1  asbestos personal injury claims against
2  or arising out of Grace is something that
3  has to be channelled to the Trust because
4  it fits within the definition of an
5  asbestos personal injury claim under
6  524(g), and that in order that Grace be
7  protected from such indemnity claims, the
8  roughly $3 billion that Grace and various
9  related parties are paying to this Plan
10 is, in part, on behalf of those settled
11 insurers.
12         So if the question means, is
13 Maryland Casualty Company paying
14 something over and above what Grace is
15 paying, the answer is not to my
16 knowledge.
17      Q.  Is there a benefit to the
18 Grace Bankruptcy Estate or to the
19 Asbestos PI Trust from having the
20 Asbestos PI Channelling Injunction
21 protect Maryland Casualty Company?
22         MR. FINCH: Object to that
23    question to the extent that it
24    calls for speculation.

Page 521

1         Mr. Wisler: Could you read
2     the question back, please?
3         MR. SCHIAVONI: Objection to
4     form; objection, calls for waiver;
5     objection, calls for legal
6     conclusion.
7         MR. FINCH: I disagree that
8     it calls for waiver.
9         But you can answer.
10        THE WITNESS: Could you
11    reread the question?
12        MR. COHN: Let's go off the
13    record for a second.
14        (There was a discussion held
15    off the record at this time.)
16        (The reporter read from the
17    record as requested.)
18        Mr. Wisler: I object to
19    form.
20        THE WITNESS: Yes.
21 BY MR. COHN:
22      Q.  What is that benefit?
23        MR. FINCH: You can answer
24    the question to the extent that it

20 (Pages 522 to 525)

Page 522

1  doesn't reveal privileged or work
2  product information.
3       THE WITNESS: The benefit to
4  the Grace Estate is that it
5  eliminates potential claims by
6  Maryland Casualty Company against
7  the Debtor and its Estate. That's
8  the benefit.
9  BY MR. COHN:
10    Q. Is there any agreement
11 between Grace and Maryland Casualty
12 Company which requires Grace to indemnify
13 Maryland Casualty Company for its own
14 misconduct?
15      MR. FINCH: Objection to the
16 extent that calls for a legal
17 opinion. And object to the extent
18 that there is information
19 responsive to this question that's
20 privileged, I instruct you not to
21 answer if it would reveal
22 privileged communications.
23      If you can answer the
24 question without revealing

Page 523

1  privileged communications, you can
2  do so --
3       MR. SCHIAVONI:
4  Mr. Lockwood, I think --
5       MR. FINCH: Tank, let me
6  finish.
7       MR. SCHIAVONI: Oh, I am
8  sorry.
9       MR. FINCH: But I still
10 object to the extent that it calls
11 for a legal opinion.
12      MS. BAIER: I also object.
13 You have asked Mr. Lockwood
14 whether he knows about -- you
15 haven't asked him about whether he
16 knows. You asked him is there an
17 agreement between Grace and
18 Maryland Casualty Company. I
19 object to the form. You are now
20 asking Mr. Lockwood to get into
21 the head of W.R. Grace.
22      MR. SCHIAVONI: I am sorry,
23 Mr. Finch. I didn't mean to
24 interrupt you before.

Page 524

1  Mr. Schiavoni for Arrowood.
2  We join your objection, and we
3  would also say this is outside the
4  scope of the designation and that
5  Mr. Lockwood doesn't have to
6  answer every single question no
7  matter what it is. This is not in
8  the designation.
9       MR. FINCH: Can we hear back
10 the question?
11      (The reporter read from the
12 record as requested.)
13      THE WITNESS: In my
14 understanding, there is an
15 agreement between Grace and
16 Maryland casualty company which
17 contains indemnification
18 provisions. I am not in a
19 position to express an opinion on
20 what the scope of that
21 indemnification is, much less
22 whether or not Grace and Maryland
23 Casualty agree on what the scope
24 of that indemnification is.

Page 525

1  BY MR. COHN:
2     Q. Is it the position of the
3  Asbestos PI Committee that if the
4  indemnification provisions are construed
5  to protect Maryland Casualty from its own
6  misconduct, that such provisions would be
7  enforceable?
8       MR. FINCH: Object to form,
9  calls for a legal conclusion.
10      THE WITNESS: It actually
11 calls for speculation.
12      MR. FINCH: That, too.
13      THE WITNESS: In addition.
14 The committee's
15 understanding of the way this Plan
16 works, which is what expresses the
17 committee's position, is that it's
18 a legal question which, assuming
19 that a dispute on this subject
20 arises at some point in the
21 future, will be determined by
22 litigation over, A, what exactly
23 is the basis for the claim against
24 Maryland Casualty, legal and

Page 526

1  factual, that's being asserted
2  against it, if the claim is found
3  valid.
4      Maryland Casualty may well
5  litigate whether the claim is
6  enjoined, which will be another
7  context in which there would be
8  litigation over the factual and
9  legal basis for the claim.
10     That hypothetical litigation
11 as opposed to the claimant,
12 Maryland Casualty litigation,
13 would require somebody to
14 determine based on the facts and
15 the law associated with that
16 dispute whether or not the claim
17 can be channelled under 524(g) to
18 the Trust.
19     You have been asking these
20 questions about independent tort
21 liability, I am quite sure, with
22 combustion engineering in mind,
23 where phrases like "independent
24 liability" were used, and it is

Page 527

1  not the intention of the Asbestos
2  Claimants Committee to have this
3  Plan interpreted in a way that
4  would violate the strictures of
5  Section 524(g) of the code.
6      On the other hand, the
7  committee has agreed to the terms
8  of the Plan, which are what they
9  are, and if somehow or another
10 what you are calling an
11 independent tort liability is
12 indemnified by Grace and found by
13 a court to fit within the
14 definitions of asbestos personal
15 injury claims within the Plan and
16 accepted that the application of
17 those definitions under that fact
18 pattern are within the range of
19 Section 524(g), then the claim
20 might well be enjoined.
21     But, I mean, without knowing
22 the facts, the law, and the
23 future, I can't answer that
24 question.

Page 528

1  BY MR. COHN:
2      Q. Is the Asbestos PI Committee
3  aware of the objection recently filed by
4  Grace to Maryland Casualty Company's
5  claim?
6      A. Yes.
7      Q. Is it the position of the
8  Asbestos PI Committee that the objection
9  is correct and should be sustained?
10     MR. FINCH: Objection. To
11 the extent that calls for
12 privileged communications or work
13 product, I instruct you not to
14 answer.
15     MS. BAIER: Objection to the
16 extent it calls for a legal
17 conclusion by Mr. Lockwood as to
18 the validity of the claim.
19     MR. SCHIAVONI: Objection.
20 It calls for both of those things,
21 and there is no way to answer
22 without crossing one of those
23 lines. And just simply by stating
24 the objection and suggesting that

Page 529

1  Mr. Lockwood has asked to answer
2  on some other basis isn't
3  sufficient to cover.
4      MR. FINCH: To the extent
5  that the Asbestos Claimants'
6  Committee files a piece of paper
7  in court, either agreeing with the
8  objection or disagreeing with the
9  objection, it's not a privileged
10 communication. I instructed
11 him --
12     MR. SCHIAVONI: Well, if he
13 was referring to it, that would be
14 fine. But that's not what he is
15 doing, and there is no such file.
16     MR. FINCH: Mr. Schiavoni, I
17 instructed him not to answer the
18 question to the extent it would
19 require him to divulge privileged
20 or work product information.
21     If he can answer the
22 question without divulging
23 privileged or work product
24 information, he can do so. If he

22 (Pages 530 to 533)

**Page 530**

1  can't, he will say he can't answer
2  the question.
3      MR. SCHIAVONI: If the
4  answer is please refer to docket
5  number blankety-blank, then I
6  agree with you. If the answer is,
7  as the answers have been to the
8  other questions, then he's
9  obviously waived it, because there
10 is no file.
11     MR. WISLER: Objection.
12     MR. COHN: Would you like
13 the question read again?
14     THE WITNESS: No. I can
15 remember the question. Are you
16 still pressing?
17     MR. COHN: Sure.
18     THE WITNESS: The committee
19 has not filed either a joinder in
20 the objection or a response in
21 opposition to the objection, and I
22 have no idea whether the committee
23 is ever going to take a position
24 on the objection.

**Page 531**

1      MR. COHN: Thank you,
2  Mr. Lockwood. No further
3  questions. I will pass the
4  witness to whoever is next.
5      Mr. Wisler: I think
6  Maryland Casualty will be next.
7  Can we have a 15-minute break,
8  please?
9      MR. FINCH: I prefer you not
10 have a 15-minute break. I will
11 give you five minutes. I would
12 like you to come down here so we
13 can hear you better.
14     MR. WISLER: Off the record.
15     (There was a discussion held
16 off the record at this time.)
17     (There was a break from 1:37
18 p.m. to 1:56 p.m.)
19     - - -
20     EXAMINATION
21     - -
22 BY MR. WISLER:
23     Q. Mr. Lockwood, my name is
24 Jeffrey Wisler. I represent Maryland

**Page 532**

1  Casualty Company and Zurich in this
2  bankruptcy case.
3      Mr. Lockwood, what is the
4  ACC's position as to the viability of
5  this Plan if the bankruptcy court finds
6  that one or more of the settled asbestos
7  insurance companies are not entitled to
8  524(g) protection?
9      MR. FINCH: Objection, calls
10 for speculation.
11     I instruct the witness not
12 to answer the question to the
13 extent it would reveal privileged
14 or work product-protected
15 communications or information. To
16 the extent you can answer the
17 question without so doing, you can
18 do so.
19     THE WITNESS: Well, it's a
20 hypothetical question, and it
21 really is unanswerable because it
22 would depend upon what the reason
23 that the court gave for denying
24 the protection. A lot of reasons

**Page 533**

1  that the court might conceivably
2  give, if it gave such, might have
3  the effect of blowing up the Plan,
4  effectively. I mean, there would
5  be conditions to confirmation that
6  could not be satisfied nor waived.
7      On the other hand -- I don't
8  know. I haven't thought enough
9  about the permutations and
10 combinations to know whether there
11 could be some ground on which the
12 court could deny a particular
13 settled insurer the right to be a
14 protected party for some reason
15 that wouldn't apply sort of
16 generally to the Plan but which
17 could, somehow or another, either
18 the parties could waive that
19 that -- I really don't know.
20     The committee certainly
21 doesn't have a position on it,
22 because the committee, as my
23 answer has demonstrated so far,
24 hasn't thought through the

Page 534

1  hypothetical circumstances that
2  might produce the result that you
3  posit.
4  BY MR. WISLER:
5      Q.  Well, in your answer, you
6  said that there are certainly scenarios
7  where such a ruling could, I think you
8  used the word, blowup the Plan.
9          What would be some examples
10 of that?
11         MR. FINCH: Objection, form.
12         MS. BAIER: Objection, calls
13 for speculation.
14         THE WITNESS: The Plan
15 provides that a list in Exhibit-5
16 of settled insurers are entitled
17 to be protected parties under the
18 Plan. The rationale for that, as
19 I said earlier, was that they had
20 potential indemnity claims against
21 W.R. Grace.
22         If, hypothetically, the
23 court interpreted the statute to
24 say that the on-behalf-of, that

Page 535

1  Grace somehow or another couldn't
2  make a contribution on behalf of
3  those settled insurers because
4  they weren't putting in fresh
5  money into the Plan so that Grace
6  was left with no protection
7  against indemnity claims because
8  no claims against those insurers
9  were being brought, that would go
10 pretty far way to blowing up the
11 Plan. At a minimum, it would
12 require a whole renegotiation of
13 the Plan, in my opinion, as to
14 that hypothetical.
15 BY MR. WISLER:
16     Q.  Because if an insurer -- let
17 me make sure I understand what you are
18 saying.
19         You said that would go a
20 long way towards destroying the Plan. Is
21 that because, for instance, if a settled
22 asbestos insurer with indemnity rights
23 were not protected, then their indemnity
24 claims would no longer be properly listed

Page 536

1  as Class 6 claims or no longer properly
2  channelled?
3          MR. FINCH: Object to form.
4          THE WITNESS: Let me back
5  up. Under bankruptcy law, a
6  bankruptcy court doesn't have a
7  line item veto under which they
8  can exercise particular provisions
9  in the Plan that they don't like
10 but go ahead and confirm the rest
11 of it. The Plan is an integrated
12 whole. Judge Fitzgerald will
13 either confirm the Plan or she
14 will deny confirmation of the
15 Plan.
16         The scenario you posit, she
17 would deny confirmation of the
18 Plan because it purported to grant
19 protected party status to entities
20 that she said couldn't be
21 protected, for whatever reason.
22         At that point, everybody involved
23 in this bankruptcy would have to
24 sit down and figure out how to

Page 537

1  deal with the problem that was
2  created by that. And I have no
3  idea how we would deal with the
4  problem that would be created by
5  that outcome.
6          We certainly haven't -- we
7  don't -- if the question is have
8  we got a backstop Plan in the
9  hopper that we can lay on the
10 table, the answer is no.
11 BY MR. WISLER:
12     Q.  What if the ruling was not
13 so global per the example you gave, but
14 individual, to say that one settled
15 asbestos insurance company, for whatever
16 reason, had not given or provided or
17 there was not adequate consideration
18 provided on behalf of that settled
19 asbestos settled insurer?
20         MR. FINCH: Objection to
21 form, speculation.
22         MS. BAIER: Objection. He's
23 just answered that one.
24         THE WITNESS: Yeah, I don't

24 (Pages 538 to 541)

Page 538

1  understand how -- Grace's
2  consideration is a lump sum of
3  stuff, notes, cash, warrants,
4  insurance, what have you.
5       And, as I analyzed it
6  earlier, it's the committee's
7  stated position that the statute
8  allows Grace under those
9  circumstances to designate
10 insurers that it settled with and
11 have indemnity claims for
12 protection against asbestos
13 personal injury claims in the
14 future.
15      I don't know any basis on
16 which a court could say that,
17 these 12 asbestos settled insurers
18 are just okeydoke to get
19 protection under that approach,
20 but Insurer Y, for some reason or
21 another, isn't. So I can't even
22 speculate what your hypothetical
23 would entail, much less what its
24 consequences would be.

Page 539

1  BY MR. WISLER:
2       Q.  So in the ACC's view, all
3  the settled asbestos insurance companies
4  sort of ride together in terms of whether
5  they are entitled to 524(g) protection?
6       MR. FINCH: Objection,
7  mischaracterizes prior testimony;
8  object to the form.
9       MR. WISLER: If I
10 mischaracterize it, please
11 clarify.
12      THE WITNESS: The only
13 caveat I would say to that is the
14 one that we spent some time
15 dancing around with Mr. Cohn
16 earlier, that if there was some
17 sort of ruling that some certain
18 claims couldn't properly be
19 channelled against a particular
20 insurer while other claims could
21 be, i.e. his notional independent
22 tort claims versus claims that are
23 clearly asbestos PI claim that
24 says the coverage isn't exhaustive

Page 540

1  or wasn't properly settled or
2  whatever, at that point, I
3  don't -- the Plan does not purport
4  to provide blanket protection.
5       It provides protection for
6  claims that fit within the
7  definitions of the Plan, and if
8  somehow or another the court
9  determines that some particular
10 claim doesn't fit within the
11 definitions of the claims that
12 either are or legally can be under
13 524(g) channelled to the Trust,
14 then, in my opinion, that would
15 not result in the Plan failing a
16 condition of the sort I talked
17 about earlier. Whether or not
18 there could be other consequences
19 of such a ruling is a different
20 matter.
21 BY MR. WISLER:
22      Q.  Let's talk about that
23 because you just described the
24 possibility that the court could rule

Page 541

1  that some certain claims, in your words,
2  were not properly channelled.
3       Is it the ACC's position
4  that indemnity claims of a settled
5  asbestos insurance company would result
6  from those some certain claims would then
7  no longer be classified as Class 6 and
8  channelled to the Trust?
9       MR. FINCH: Objection, form.
10      MS. BAIER: Can you read
11 that over, please?
12      (The reporter read from the
13 record as requested.)
14      MS. BAIER: Objection as to
15 form.
16      THE WITNESS: If I
17 understand the question and
18 speaking at a somewhat high level
19 of generality, if a claim against
20 a settled insurer were ruled not
21 to be channelled to the Trust in
22 the first instance, because it
23 didn't fit within -- because of
24 one of two reasons: Either it

Page 542

```
 1    didn't fit within the definition
 2    or, alternatively, even though it
 3    might be read to fit within the
 4    definition, it could not be under
 5    Section 524(g) so channelled, you
 6    just weren't legally permitted to
 7    do so, and the claim went forward,
 8    and an indemnity claim were to
 9    arise out of that claim, then it
10    is the position of the ACC that
11    that indemnity claim would not be
12    a Class 6 claim, because, by
13    definition, it didn't arise out of
14    an asbestos personal injury claim.
15    It arose out of something that the
16    court had decided since it wasn't
17    channelled was, by definition, not
18    an asbestos personal injury claim.
19 BY MR. WISLER:
20    Q.  Is the ACC in agreement with
21 Exhibit-5 of the exhibit book?  Are you
22 familiar with that exhibit?
23    A.  I am generally familiar with
24 it. The ACC, as a Plan proponent, is --
```

Page 543

```
 1 if what you mean by is in agreement with
 2 it, we are sponsoring a Plan of which
 3 it's an exhibit. So I guess you could
 4 say we are in agreement with it.
 5        MR. WISLER: That's all I
 6    have. Thank you, Mr. Lockwood.
 7        MR. MANGAN: Hello. This is
 8    Kevin Mangan on the phone.
 9        MR. WISLER: One second,
10    please.
11        MR. MANGAN: Sure, Jeff.
12        MR. WISLER: I am sorry.
13    Just one follow-up. I apologize.
14 BY MR. WISLER:
15    Q.  Mr. Lockwood, in response to
16 my next-to-the-last question, you
17 testified that the claim we were
18 discussing -- and I am not going to try
19 to repeat all the words -- would not be a
20 Class 6 claim.
21        Is it the ACC's position
22 that it would then under this Plan be a
23 Class 9 claim?
24        MR. FINCH: Object to form.
```

Page 544

```
 1        You can answer.
 2        THE WITNESS: I don't know
 3    that the ACC has a position on
 4    what kind of claim it would be at
 5    that point.
 6        MR. WISLER: Okay. Thank
 7    you.
 8              - - -
 9        EXAMINATION
10              - - -
11 BY MR. MANGAN:
12    Q.  Mr. Lockwood, Kevin Mangan
13 on behalf of the State of Montana. I
14 have a few follow-up questions from
15 Mr. Cohn.
16        Specifically, I am going to
17 refer you to ACC Document 11, which is
18 Exhibit-4. It's the TDP.
19    A.  Yes, sir.
20    Q.  If you could flip to Section
21 5.7?
22    A.  Section 5.7 of the TDP.
23    Q.  Correct.
24    A.  Evidentiary Requirements?
```

Page 545

```
 1    Q.  Right. Specifically,
 2 5.7(a)(1).
 3    A.  Correct.
 4    Q.  If you could take a second
 5 and take a look at that.
 6    A.  Including the subsections
 7 (a), (b) and (c) or just the lead in
 8 (a)(1)?
 9    Q.  Just (a)(1).
10    A.  Okay.
11    Q.  You see the (a)(1) requires
12 a ten-year latency period.
13    A.  Correct.
14    Q.  The period between the first
15 exposure and diagnosis.
16        Why a ten-year latency
17 period?
18    A.  It's my understanding that
19 that is generally considered by the
20 medical profession to be the minimum
21 latency period for asbestos-related
22 diseases to manifest themselves.
23    Q.  And is that how that number
24 came up with, to the best of your
```