IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Objection Deadline: October 6, 2009 @ 4:00 p.m. |
| | ) | Hearing Date: October 13, 2009 @ 9:00 a.m. |

### DEBTORS' MOTION FOR AN ORDER APPROVING THE AMENDED SETTLEMENT AGREEMENT AND MUTUAL RELEASE WITH THE CHARTIS INSURANCE COMPANIES

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order approving the Amended Settlement Agreement And Mutual Release (the "Amended Agreement") by and between W. R. Grace & Co., on its own behalf and on behalf of the Grace Parties, and American Home Assurance Company, AIU Insurance Company, Birmingham Fire Insurance Company of Pennsylvania (now known as AIG Casualty Company), Granite State Insurance Company, Illinois National Insurance Company, Insurance Company of the State of Pennsylvania,

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA and New Hampshire Insurance Company (hereinafter collectively referred to as "the Chartis Insurance Companies" or "Chartis") (collectively "the Parties"), as identified and defined in the Amended Agreement. A copy of the Amended Agreement is attached as <u>Exhibit A</u>. In support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion is proper under 28 U.S.C. § 1408.

2. The statutory predicates for this Motion are sections 105(a), 363(b) and 524(g) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 the Federal Rules of Bankruptcy Procedure.

## Background

3. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. The Chartis Insurance Companies issued certain policies of insurance (defined in the Amended Agreement as the "Subject Policies") that provide, or are alleged to provide, insurance coverage to W.R. Grace & Co. and W.R. Grace & Co.-Conn. Grace has incurred and may incur in the future certain liabilities, expenses and losses arising out of asbestos-related claims and other claims. Disputes have arisen between Grace and Chartis regarding their respective rights and obligations arising from the Subject Policies and the 1995 and 2000

Agreements (defined below) with respect to coverage for asbestos related claims, for which Grace seeks coverage under these policies and agreements.

5.  Prior to the Petition Date, Grace and Chartis entered into two agreements dated November 20, 1995 and November 2, 2000 (collectively, "the 1995 and 2000 Agreements") concerning the application to Asbestos-Related Claims of certain policies of liability insurance issued by certain of the Chartis Insurance Companies in favor of Grace. The 1995 and 2000 Agreements resolved disputes concerning policies of liability insurance that were issued by certain of the Chartis Insurance Companies and that had inception dates prior to June 30, 1985. As of the Petition Date, certain of the Chartis Insurance Companies were obligated under the 1995 and 2000 Agreements to make certain payments in connection with Asbestos-Related Claims under the 1995 and 2000 Agreements.

6.  The Amended Agreement confers the following principal benefits on the Debtors' estate, among others:

(a) Payment by Chartis to the Trust in the cumulative amount of Seventy-Three Million Eight Hundred Ninety-Seven Thousand Five Hundred Sixteen Dollars and Eight Cents U.S. ($73,897,516.08) on a quarterly basis for fifty-four (54) total months in the amount of Four Million One Hundred Five Thousand Four Hundred Seventeen Dollars and Fifty-Six Cents U.S. ($4,105,417.56) each, beginning after the "Trigger Date" as set forth in the Amended Agreement;

(b) Payment of the substantial sum set forth in subparagraph (a) above without need for litigation to enforce the assignment by Grace to the Trust of the 1995 and 2000 Agreements or the terms of the Subject Policies;

(c) A compromise of coverage defenses that Chartis might have with respect to any individual Asbestos PI Claim, including notice, trigger of coverage, allocation and consent to settle;

(d) A mutual release from Chartis in connection with the Subject Policies and the 1995 and 2000 Agreements; and

(e) Chartis' withdrawal of all objections to confirmation of the plan of reorganization arising from or relating to the 1995 and 2000 Agreements and the Subject Policies upon the Approval Order becoming a Final Order.

7. Chartis conditioned its assent to the Amended Agreement on agreement that the Grace Parties will use their reasonable best efforts to cause the Bankruptcy Court to enter an order providing: (i) that the terms of the Amended Agreement are approved in their entirety, and that Grace is authorized to take all actions necessary to implement the terms of the Amended Agreement; (ii) that the Amended Agreement will be designated an Asbestos Insurance Settlement Agreement and that Chartis will be designated as Settled Asbestos Insurance Companies on Exhibit 5 of the Exhibit Book to the Plan; and (iii) that the Trust, upon its creation, will be bound to the provisions of the Amended Agreement with the same force and effect as if the Trust was a Party to the Amended Agreement from the Execution Date.

### Relief Requested

8. By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Amended Agreement, which has been executed by the parties, and, by its terms, will become effective upon the approval of this Court.

### Basis for Relief

9. This Court has statutory authority to authorize and approve the Debtors' entry into the Amended Agreement pursuant to sections 105 and 363(b)(1) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). A settlement of claims and causes of action by a debtor in possession constitutes a use of property of the estate. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). If a

settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.*

10. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019(a). Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed compromise is in the best interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the compromise. *See Martin*, 91 F.3d at 393.

11. The standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should only be rejected if they fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The standards set forth above are plainly met in this case.

12. The Amended Agreement is in the best interests of the Debtors, their estates, and their creditors because it allows the substantive compromises embodied in the 1995 and 2000 Settlement Agreements to remain in place and because it resolves all existing and potential future disputes between the Parties regarding their respective rights and obligations with respect to insurance coverage under the Subject Policies with respect to "Asbestos-Related Claims" and regarding their respective rights and obligations with respect to the 1995 and 2000 Agreements. If the Amended Agreement is not approved, the Trust likely would face additional burden and cost in seeking to obtain the benefits of, and enforcing Grace's rights under, the Subject Policies and the 1995 and 2000 Settlement Agreements. The Amended Agreement also removes the Chartis Insurance Companies as objectors to Plan confirmation with respect to the Subject Policies and the 1995 and 2000 Agreements.

13. For all of the foregoing reasons, the Debtors submit that the Amended Agreement is fair and reasonable and in the best interest of the Debtors, their creditors and their estates, and thus the Debtors should be authorized to enter into the Amended Agreement.

## Notice

14. Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, and (iv) those parties that requested papers under Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

6

DOCS_DE:153037.1


WHEREFORE, the Debtors respectfully request that the Court enter an order approving the Amended Agreement, and granting such other and further relief as the Court deems just and proper.

Dated: September 14, 2009

KIRKLAND & ELLIS LLP
David M. Bernick
Lisa G. Esayian
300 N. LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Theodore Freedman
Citigroup Center
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

PACHULSKI, STANG, ZIEHL, YOUNG & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

*Co-Counsel for the Debtors and Debtors in Possession*