# Exhibit A

## AMENDED SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Amended Settlement Agreement and Mutual Release ("Agreement") is made by and between W. R. Grace & Co., on its own behalf and on behalf of the Grace Parties, and American Home Assurance Company, AIU Insurance Company, Birmingham Fire Insurance Company of Pennsylvania (now known as AIG Casualty Company), Granite State Insurance Company, Illinois National Insurance Company, Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA and New Hampshire Insurance Company (hereinafter collectively referred to as "the Chartis Insurance Companies") (collectively "the Parties").

### WITNESSED THAT:

WHEREAS, certain of the Chartis Insurance Companies issued certain policies of insurance that provide, or are alleged to provide, liability insurance coverage to certain Grace Parties; and

WHEREAS, Grace and the Chartis Insurance Companies entered into agreements dated November 20, 1995 and November 2, 2000 (collectively, "the 1995 and 2000 Agreements") concerning the application to Asbestos-Related Claims of certain policies of liability insurance issued by certain of the Chartis Insurance Companies in favor of certain Grace Parties; and

WHEREAS, the 1995 and 2000 Agreements resolved disputes concerning policies of liability insurance that were issued by certain of the Chartis Insurance Companies and that had inception dates prior to June 30, 1985. This Agreement, effective on the Trigger Date, terminates the Chartis Insurance Companies' obligations under the 1995 and 2000 Agreements and also resolves obligations that any of the

NYDOCS1-929527.1

Chartis Insurance Companies may have to the Grace Parties with respect to policies issued to certain Grace Parties that have inception dates of June 30, 1985 or earlier as more fully described in the definition of Subject Policies in this Agreement; and

WHEREAS, the Grace Parties have incurred certain liabilities, expenses, and losses arising out of Asbestos-Related Claims; and

WHEREAS, certain of the Chartis Insurance Companies were obligated under the 1995 and 2000 Agreements to make certain payments in connection with Asbestos-Related Claims under the Subject Policies identified in the 1995 and 2000 Agreements; and

WHEREAS, there are or may in the future be disputes between the Parties regarding their respective rights and obligations with respect to insurance coverage under the Subject Policies with respect to Asbestos-Related Claims and regarding their respective rights and obligations with respect to the 1995 and 2000 Agreements; and

WHEREAS, on or about April 2, 2001, W. R. Grace & Co., W. R. Grace & Co-Conn., and certain other debtors filed reorganization cases pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, jointly administered as Bankruptcy Petition No. 01-01139 (JKF), et seq. (the "Chapter 11 Cases"), and Grace and such other debtors continue to operate their businesses as debtors and debtors-in-possession; and

WHEREAS, the Grace Parties anticipate that a plan of reorganization will be confirmed by the Bankruptcy Court in the Chapter 11 Reorganization Cases that the Grace Parties anticipate will provide for the establishment of one or more trusts

pursuant to Section 524(g) of the Bankruptcy Code to process and pay Asbestos-Related Claims involving Grace; and

WHEREAS, in consideration of certain monetary payments and other consideration as more fully set forth herein, the Parties intend to adopt, by way of compromise, and without (i) prejudice to or waiver of their respective positions in other matters, (ii) trial or adjudication of any issues of fact or law, or (iii) the Chartis Insurance Companies' admission of liability or responsibility under the Subject Policies or the 1995 and 2000 Agreements, a full and final settlement that releases and terminates all rights, obligations and liabilities (if any) that the Parties may owe one another with respect to Asbestos-Related Claims based on or arising under the Subject Policies or the 1995 and 2000 Agreements; and any other Claims that are subject to the products/completed operations hazard under each of the Subject Policies.

### AGREEMENTS:

NOW, THEREFORE, in full consideration of the foregoing and of the mutual promises and covenants herein contained, and intending to be legally bound hereby, subject to the entry of the Approval Order and subject to the terms and conditions set forth herein, the Parties hereby agree as follows:

### I.    Definitions

The following definitions apply to the capitalized terms wherever those terms appear throughout this Agreement or in any attachments hereto. Capitalized terms in the prefatory paragraph, recitals, this Definitions section, and in the sections below have the meanings ascribed to them therein to the extent they are not otherwise defined in this Definitions section. Capitalized terms not otherwise defined herein shall have the meanings set forth in the First Amended Joint Plan of Reorganization filed by

the Plan Proponents on or about February 27, 2009. Each defined term stated in a singular form includes the plural form, each defined term stated in plural form includes the singular form, and each defined term stated in the masculine, feminine or neuter form includes each of the masculine, feminine and neuter forms. The word "including" means "including but not limited to."

A.    1995 Agreement:   The term "1995 Agreement" means the Settlement Agreement among the Parties executed by W.R. Grace & Co.-Conn. on November 17, 1995 and executed by the Chartis Insurance Companies on November 20, 1995.

B.    2000 Agreement:   The term "2000 Agreement" means the Settlement Agreement and Mutual Release among the Parties dated November 2, 2000.

C.    Affiliate:  An "Affiliate" of an Entity shall mean another Entity that is directly or indirectly (through one or more intermediaries) controlled by the first Entity.

D.    Agreement:   The term "Agreement" means this Amended Settlement Agreement and Mutual Release, as the same may be amended or modified from time to time in accordance with its provisions.

E.    Approval Order:   The term "Approval Order" means an order of the Bankruptcy Court, in form and substance satisfactory to the Parties, approving this Agreement and the compromise and settlement memorialized herein between and among the Parties.

- 4 -

F.    Asbestos PI Claims: "Asbestos PI Claims" has the meaning set forth in the Joint Plan of Reorganization.

G.    Asbestos-Related Claims: "Asbestos-Related Claims" means Claims against a Grace Party or the Trust, or for which a Grace Party or the Trust is alleged to have responsibility, alleging bodily injury, sickness, disease and/or death or property damage as a result of exposure to asbestos or asbestos-containing materials, regardless of the theory of recovery, including, without limitation, Asbestos PI Claims, Asbestos Claims, Asbestos-Related Claims and Canadian Claims (all as defined in the Joint Plan of Reorganization).

H.    Bankruptcy Court: The term "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

I.    Business Day: The term "Business Day" means any day that is not a Saturday, a Sunday or a federal holiday in the United States of America.

J.    Chartis Insurance Companies: The term "Chartis Insurance Companies" shall mean American Home Assurance Company, AIU Insurance Company, Birmingham Fire Insurance Company of Pennsylvania (now known as AIG Casualty Company), Granite State Insurance Company, Illinois National Insurance Company, Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, and New Hampshire Insurance Company.

K.     Claim:  The term "Claim" means:

1.     "Claim" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. Section 101(5);

2.     "Demand" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. Section 524(g)(5); and

3.     any claim (whether past, present or future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, direct or indirect, matured or unmatured, liquidated or unliquidated, direct or consequential, and whether in law, equity, admiralty or otherwise), assertion of right, complaint, cross-complaint, counterclaim, affirmative defense, writ, demand, inquiry, request, directive, obligation, suit, lawsuit, action, cause of action, administrative proceeding, governmental claim or action, order, judgment, settlement, mediation, arbitration, lien and any other assertion of liability of any kind.  For the avoidance of doubt, "Claim" includes any claim:

a.     arising out of, related to, involving, resulting from or attributable to asbestos in any form and from any source, including products containing such substances, or to any other substance, product, matter or material in any form or state;

b.      any cumulative or other injury or damage, including noise induced hearing loss, arising from any activity, operation or exposure;

c.      any alleged bad faith, conspiracy, unfair claim practice, unfair trade practice, fraud or misrepresentation, or extra-contractual or tort liability, under any theory of liability whatsoever;

d.      for damages (including any damage or injury of any kind whatsoever caused by or allegedly caused by asbestos), including damages as a result of death, bodily injury, sickness, disease, emotional injury, damage to property, diminution in value or loss of use, economic loss, and punitive, exemplary, statutory damages or penalties, indemnity or defense obligations, insurance premiums (whether retrospectively rated or otherwise), deductibles, self-insured retentions, costs, expenses, contribution or subrogation; and

e.      pursuant to or under a contract, other agreement, promise, representation or warranty or pursuant to any direct action or statutory or regulatory right of action or based on tort liability.

L.      Confirmation Order:   The term "Confirmation Order" means an order entered by the Bankruptcy Court in the Chapter 11 Cases confirming the Plan, together with any order of the District Court issued pursuant to

Section 524(g)(3)(A) of the Bankruptcy Code confirming or affirming such order.

M.    District Court:  The term "District Court" means the United States District Court for the District of Delaware.

N.    Effective Date:  The term "Effective Date" has the meaning set forth in the Joint Plan of Reorganization.

O.    Entity:  The term "Entity" means any individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, including the Trust as defined in Section I.AA. herein, unincorporated organization, federal, state, local or foreign government or any political subdivision thereof, or other person or entity.

P.    Execution Date:  The term "Execution Date" means the earliest date on which this Agreement has been signed by all of the Parties.

Q.    Final Order:  "Final Order" means an order or judgment of the Bankruptcy Court, the District Court or other court of competent jurisdiction, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or

judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or has resulted in no modification of such order.

R.   Grace:   The term "Grace" means W. R. Grace & Co., a Delaware corporation.

S.   Grace Committees:   The term "Grace Committees" means the Official Committee of Asbestos Personal Injury Claimants and the Asbestos PI Future Claimants' Representative in the Chapter 11 Cases.

T.   Grace Parties:  The term "Grace Parties" means:

   1.   Grace;

   2.   W.R. Grace & Co-Conn., a Connecticut corporation;

   3.   all other debtors and debtors-in-possession in the Chapter 11 Cases;

   4.   All Subsidiaries, divisions, and Affiliates of the foregoing, including any Entity in which any of the debtors has an ownership interest of fifty percent (50%) or more;

   5.   Any predecessor, successor or assign of any of the foregoing Entities;

   6.   Any Entity that has been acquired by, merged into or combined with any of the Entities described in this Section I.T.;

   7.   Any Entity on whose behalf W. R. Grace & Co. or W. R. Grace & Co-Conn. has the power to release Claims under the Subject Policies or the 1995 and 2000 Agreements; and

8.    The directors, officers, agents, and employees of the foregoing Entities, in their respective capacities as such.

U.    Joint Plan of Reorganization:   The term "Joint Plan of Reorganization" shall mean the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative and the Official Committee of Equity Security Holders Dated February 27, 2009, including all exhibits thereto, as such plan may be modified from time to time.

V.    Plan:  The term "Plan" means a plan of reorganization filed in the Chapter 11 Reorganization Cases, provided that such plan and modifications thereto:

1.    are not inconsistent with the terms of this Agreement;

2.    do not materially and adversely affect the interests of the Chartis Insurance Companies or the Grace Parties under this Agreement; and

3.    provide for a channeling injunction pursuant to Section 524(g) of the Bankruptcy Code that is at least as broad as the Asbestos PI Channeling Injunction provided in the Joint Plan of Reorganization and that applies to the Chartis Insurance Companies.

W.    Settlement Amount:   The term "Settlement Amount" means the sum of Seventy-Three Million Eight Hundred Ninety-Seven Thousand Five Hundred Sixteen Dollars and Eight Cents U.S. ($73,897,516.08).

X.  Subject Policies:  The term "Subject Policies" means all insurance policies listed on Attachment A hereto. Notwithstanding the foregoing, Subject Policies shall not, in any event, include policies of insurance incepting on or after June 30, 1985.  In the event there are clerical errors in the Schedule, the Parties will cooperate in good faith to make technical corrections before this Agreement is approved by the Bankruptcy Court.

Y.  Subsidiary:  A "Subsidiary" of an Entity shall mean a corporation as to which the Entity possesses shares of common stock and exercises control through the voting power of such stock.

Z.  Trigger Date:  The term "Trigger Date" means the day that the last of all of the following has occurred, provided that this Agreement has not previously become null and void pursuant to its terms:

　　1.  The Approval Order becomes a Final Order;

　　2.  The Confirmation Order becomes a Final Order; and

　　3.  The occurrence of the Plan Effective Date with respect to a plan that satisfies the definition of Plan set forth in Section I.V. and written notice by Grace, the Grace Committees or the Trust to the Chartis Insurance Companies of the occurrence of such Plan Effective Date.

AA.  Trust:  The term "Trust" shall mean the "Asbestos PI Trust" as defined in the Joint Plan of Reorganization, or such other trust as may be established under Section 524(g) of the Bankruptcy Code to process and

pay Asbestos PI Claims pursuant to a plan of reorganization filed by
Grace and the Grace Committees.

## II.    Payment of the Settlement Amount

The Chartis Insurance Companies shall pay the Settlement Amount to the
Trust, as follows:

A.      Within three (3) months of the Trigger Date and every three (3) months
thereafter, for a total of fifty-four (54) months from the Trigger Date, the Chartis
Insurance Companies shall pay to the Trust the sum of Four Million One Hundred Five
Thousand Four Hundred Seventeen Dollars and Fifty-Six Cents U.S. ($4,105,417.56).
The cumulative amount to be paid on this quarterly basis by the Chartis Insurance
Companies to the Trust totals Seventy-Three Million Eight Hundred Ninety-Seven
Thousand Five Hundred Sixteen Dollars and Eight Cents U.S. ($73,897,516.08).  These
payments shall not be reduced by any charge-backs, deductibles, retrospective
premiums or adjustments or any other form of reduction.

The Chartis Insurance Companies' payment to the Trust under this
Section II. will be on the following payment schedule:

| DATE | PAYMENT |
|---|---|
| On the three-month anniversary of the Trigger Date........................ | $4,105,417.56 |
| On the six-month anniversary of the Trigger Date............................ | $4,105,417.56 |
| On the nine-month anniversary of the Trigger Date.......................... | $4,105,417.56 |
| On the twelve-month anniversary of the Trigger Date....................... | $4,105,417.56 |
| On the fifteen-month anniversary of the Trigger Date....................... | $4,105,417.56 |
| On the eighteen-month anniversary of the Trigger Date.................... | $4,105,417.56 |
| On the twenty-one-month anniversary of the Trigger Date................. | $4,105,417.56 |
| On the twenty-four-month anniversary of the Trigger Date................. | $4,105,417.56 |
| On the twenty-seven-month anniversary of the Trigger Date.............. | $4,105,417.56 |
| On the thirty-month anniversary of the Trigger Date........................ | $4,105,417.56 |
| On the thirty-three-month anniversary of the Trigger Date.................. | $4,105,417.56 |
| On the thirty-six-month anniversary of the Trigger Date.................... | $4,105,417.56 |
| On the thirty-nine-month anniversary of the Trigger Date.................. | $4,105,417.56 |

| | |
|---|---|
| On the forty-two-month anniversary of the Trigger Date………………….. | $4,105,417.56 |
| On the forty-five-month anniversary of the Trigger Date………………….. | $4,105,417.56 |
| On the forty-eight-month anniversary of the Trigger Date……………… | $4,105,417.56 |
| On the fifty-one-month anniversary of the Trigger Date………………….. | $4,105,417.56 |
| On the fifty-four-month anniversary of the Trigger Date…………………... | $4,105,417.56 |
| Total……………………………………………………………………………… | $73,897,516.08 |

Time is of the essence with respect to each and every installment payment set forth above. If the Chartis Insurance Companies fail to make timely payment in accordance with the foregoing schedule, the Chartis Insurance Companies shall pay interest to the Trust on the unpaid amount, with interest commencing on the fifth business day after payment is due and ending on the date of payment at the rate of interest per annum announced from time to time during such period by the main office of Citibank, N.A. in New York, N.Y as its "prime rate" plus three percentage points.

B.    No later than fifteen (15) calendar days after the Trigger Date, Grace, the Grace Committees or the Trust shall notify the Chartis Insurance Companies that the Trigger Date has occurred and provide the Chartis Insurance Companies instructions with respect to the payment of all portions of the Settlement Amount.

C.    The Chartis Insurance Companies shall have the right to allocate the Settlement Amount or any portion thereof solely for their own purposes, in their own books and records, to the various types and classifications of Claims released pursuant to Section III. below; provided, however, that Grace and the Trust shall not be bound by or be deemed to agree with any such allocation for any reason or purpose and the Chartis Insurance Companies' allocation shall not, in any way, limit the Trust's use or allocation of the Settlement Amount.

D.    The Settlement Amount and any and all past payments by the Chartis Insurance Companies under, arising out of, or related to or involving the Subject

Policies and the 1995 and 2000 Agreements are deemed final and irrevocable payments. The Chartis Insurance Companies' payment of the Settlement Amount is in addition to any and all payments made by the Chartis Insurance Companies to or for the benefit of the Grace Parties prior to the Execution Date.

## III.   **Releases**

    A.   <u>Release By the Grace Parties and the Trust</u>:

        Except for the obligations created by this Agreement,

        1.   Effective on the Trigger Date, the Grace Parties (on behalf of themselves and their successors and assigns, in their capacities as such) and the Trust hereby release, remise, covenant not to sue and forever discharge the Chartis Insurance Companies and their past, present and future parents, Subsidiaries, Affiliates, agents, representatives, predecessors, successors and assigns ("Chartis Insurance Companies, et al.") from and against:

        a.   any Claim based on insurance coverage for, or asserting any obligation by the Chartis Insurance Companies, et al. to pay defense costs or indemnity payments in connection with, Asbestos-Related Claims based on or arising under the Subject Policies or the 1995 or 2000 Agreements or any other agreement between the Parties relating to the Subject Policies and any other Claims that are subject to the products/completed operations hazard under each of the Subject Policies; and

     b.     any Claim based on or arising out of any alleged act, omission, representation or conduct of any sort in connection with Asbestos-Related Claims and the Subject Policies, the 1995 or 2000 Agreements or any other agreement between the Parties relating to the Subject Policies and any other Claims that are subject to the products/completed operations hazard under each of the Subject Policies, including but not limited to Claims alleging bad faith, breach of an implied warranty of good faith and fair dealing or unfair claims practices, whether under statute or common law.

2.     THE GRACE PARTIES AND THE TRUST ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH, THE CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.

3.   The Grace Parties and the Trust expressly assume the risk that acts, omissions, matters, causes or things may have occurred that they do not know or do not suspect to exist.

B.   Releases By The Chartis Insurance Companies, et al.:

Except for the obligations created by this Agreement,

1.   Effective on the Trigger Date, each of the Chartis Insurance Companies, et al. hereby releases, remises, covenants not to sue and forever discharges the Grace Parties and the Trust from and against:

a.   any Claim in connection with Asbestos-Related Claims based on or arising under the Subject Policies or the 1995 or 2000 Agreements or any other agreement between the Parties relating to the Subject Policies and any other Claims that are subject to the products/completed operations hazard under each of the Subject Policies; and

b.   any Claim based on or arising out of any alleged act, omission, representation or conduct of any sort in connection with Asbestos-Related Claims and the Subject Policies, the 1995 or 2000 Agreements or any other agreement between the Parties relating to the Subject Policies and any other Claims that are subject to the products/completed operations hazard under each of the Subject Policies.

2.   EACH OF THE CHARTIS INSURANCE COMPANIES, ET AL.
ACKNOWLEDGES THAT IT HAS BEEN ADVISED BY ITS
ATTORNEYS CONCERNING, AND IS FAMILIAR WITH, THE
CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY
WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL
CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL
RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS
OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,
WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY
AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR,"
AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR
LAW OF SIMILAR EFFECT.

3.   Each of the Chartis Insurance Companies, et al. expressly
assumes the risk that acts, omissions, matters, causes or things
may have occurred that it does not know or does not suspect to
exist.

## IV.   Release of Subrogation and Contribution Claims and Judgment Reduction Clause

### A.   Payments Made Under this Agreement

None of the Chartis Insurance Companies shall seek reimbursement of
any payments any of the Chartis Insurance Companies made to or for the benefit of any
Grace Party under this Agreement, the Subject Policies or the 1995 or 2000
Agreements, whether by way of a Claim for contribution, subrogation, indemnification or

otherwise, from anyone other than the Chartis Insurance Companies' reinsurers or retrocessionaires in their capacity as such, except as provided below. Notwithstanding the foregoing, if a third party pursues a contribution, subrogation, indemnification or similar Claim against any Chartis Insurance Company relating to any of the Subject Policies or the 1995 or 2000 Agreements, then that Chartis Insurance Company shall be free to assert such a Claim against such third party, to the extent permitted by the Plan. To the extent any Chartis Insurance Company recovers any amount from such third party, the net proceeds of such recovery (after any payment made by the Chartis Insurance Companies to such third party on its Claim and after the Chartis Insurance Companies are reimbursed from such proceeds for their fees, costs and expenses incurred in prosecuting or defending such Claims) shall be paid by the Chartis Insurance Companies promptly to the Trust. The Grace Parties and the Trust shall use reasonable best efforts to obtain from all insurers with which they settle agreements similar to those contained in this Section IV.A.

    B.    <u>Payments Received from Other Insurers</u>

In the event that the Trigger Date occurs and:

    1.    Grace or the Trust, as applicable, and/or any other Entity becomes entitled to receive a payment from one or more of the insurers other than the Chartis Insurance Companies for any Claims that have been remised, released, acquitted and forever discharged as against any of the Chartis Insurance Companies pursuant to this Agreement, and

2.    as a result of such other insurer's obligation to pay described in Section IV.B.1. above, such insurer either:

    a.    enters into a settlement with any of the Chartis Insurance Companies, which settlement has been consented to by Grace or the Trust, as applicable, and any other Entity (as applicable), requiring the Chartis Insurance Companies to reimburse some or all of the payment made or to be made by such insurer; or

    b.    obtains a final, non-appealable judicial or quasi-judicial determination or award entitling such insurer to obtain a sum certain from any of the Chartis Insurance Companies for contribution, subrogation or indemnification or other similar Claim, against any of the Chartis Insurance Companies for their alleged share or equitable share, or to enforce subrogation rights, if any, relating to such payment referenced in Section IV.B.1. above,

the Entity entitled to receive such payment shall voluntarily reduce the amount of payment to be received by it (referred to in Section IV.B.1. above) by the amount necessary to reduce or eliminate such settlement, determination or award against the Chartis Insurance Companies (referred to in Section IV.B.2. above).

To ensure that such a reduction is accomplished, the Chartis Insurance Companies shall be entitled to assert this Section IV. as a defense to any action against them for any such portion of the determination or award against the Chartis Insurance

Companies (referred to in Section IV.B.2. above) and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect the Chartis Insurance Companies from any liability for the determination or award. Grace or the Trust, as applicable, and/or any other Entity (as applicable) agrees that in any proceeding against other insurers in which Grace or the Trust, as applicable, and/or any other Entity makes a claim for insurance rights or benefits for any Claim that may give rise to the events referenced in Section IV.B.1. above, they will provide notice to the Chartis Insurance Companies of such Claim within thirty (30) days of the time Grace or the Trust, as applicable, first becomes aware that such Claim is reasonably likely to result in a Claim against the Chartis Insurance Companies and shall consent to the Chartis Insurance Companies' intervention in any such proceeding to the extent that the Chartis Insurance Companies seek to intervene to effectuate the intent of this Section IV.

## V.    **Bankruptcy Obligations**

### A.    Designation of The Chartis Insurance Companies as Settled Asbestos Insurance Companies

Grace shall designate the Chartis Insurance Companies as Settled Asbestos Insurance Companies on Exhibit 5 of the Exhibit Book to the Plan eligible for protection under Bankruptcy Code Section 524(g). The Parties agree that the designation: "The Chartis Insurance Companies as defined in the Amended Settlement Agreement and Mutual Release" is an acceptable designation for the list of Settled Asbestos Insurance Companies. Such list shall also set forth the Subject Policies identified on Attachment A hereto. However, should the Chartis Insurance Companies fail to make a payment to the Trust in the amount and by the date set out in Section

II.B., and should the Chartis Insurance Companies fail to cure that failure within thirty (30) days of notice of such failure by the Trust, then the Chartis Insurance Companies shall lose their designation as Settled Asbestos Insurance Companies eligible for protection under Bankruptcy Code Section 524(g) prospectively, unless and until such failure is cured.

B.    Trust Bound by Agreement

Effective upon the Effective Date, the Trust shall be bound by this Agreement as if it had been a Party hereto as of the Execution Date.

C.    Grace Committees' Approval

The Grace Committees shall provide written approval of this Agreement and the releases contained herein.

D.    Obligations of the Parties

Promptly following the Execution Date, Grace will prepare and file a Motion to approve this Agreement with the Bankruptcy Court, which Motion shall be in form and substance reasonably satisfactory to the Chartis Insurance Companies. The Grace Parties will use their reasonable best efforts promptly to obtain entry of the Approval Order, and promptly to obtain entry of the Approval Order as a Final Order. The Chartis Insurance Companies, at their own expense, will cooperate with the Grace Parties in obtaining the Approval Order.

The Grace Parties will use their reasonable best efforts to cause the Bankruptcy Court to enter an order providing, among other things:

1.    That the terms of this Agreement are approved in their entirety, and
      that Grace is authorized to take all actions necessary to implement
      the terms of the Agreement;

2.    That the Agreement will be designated an Asbestos Insurance
      Settlement Agreement and that Party Insurers will be designated
      Settled Asbestos Insurance Companies on Exhibit 5 of the Exhibit
      Book to the Plan; and

3.    That the Trust, upon its creation, will be bound to the provisions of
      this Agreement with the same force and effect as if the Trust was a
      Party to this Agreement from the Execution Date.

Following the Execution Date, the Chartis Insurance Companies shall suspend prosecution of all of their objections to the Joint Plan of Reorganization or to the Grace's or Grace Committees' motions or applications pending in the Chapter 11 Cases and of their proofs of claim; shall not object to or oppose confirmation of a plan of reorganization for the Grace so long as it meets the definition of Plan set forth in Section I.V. hereof, or the Chartis Insurance Companies waive the requirements of Section I.V. or any of them; shall take no other actions of any nature (including filing new objections to the Joint Plan of reorganization and initiating discovery) that may hinder, delay or oppose actions of Grace or the Grace Committees; and shall not pursue any Claims against Grace arising from the Subject Policies, the 1995 or 2000 Agreements and/or any prior payments. Except as provided below in this Section V.D., upon the Approval Order becoming a Final Order, the Chartis Insurance Companies shall withdraw all of their objections to the Joint Plan of Reorganization or plan-related documents, to

confirmation of the Joint Plan of Reorganization and to Grace's or the Grace Committees' motions or applications pending in the Chapter 11 Cases, shall withdraw their proofs of claim, and expressly consent to the assignment of Asbestos Insurance Rights as provided in the Asbestos Insurance Transfer Agreement, Exhibit 6 to the Joint Plan of Reorganization.    Such withdrawals shall be without prejudice until the occurrence of the Trigger Date, at which time such withdrawals shall be deemed to be with prejudice.

Notwithstanding anything herein to the contrary, neither this Agreement nor the Approval Order, nor any action taken in accordance with or pursuant to this Agreement or the Approval Order, shall have any effect upon:

1.    The Proof of Claims (the "New POC") dated November 19, 2008 filed by National Union Fire Insurance Company of Pittsburgh, PA and its affiliates AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, Illinois National Insurance Company, Insurance Company of the State of Pennsylvania, New Hampshire Insurance Company, Commerce and Industry Insurance Company and Commerce and Industry Insurance Company of Canada (collectively, "National Union Surety Parties") filed pursuant to a Settlement Agreement and Mutual Release (the "Surety Agreement"), dated November 17, 2007, between (i) W.R. Grace & Co. and its 61 affiliated entities who are Debtors; (ii) the National Union Surety Parties; and (iii) Reaud

Morgan & Quinn, Inc. and Environmental Litigation Group, P.C. and their respective clients as identified in the Surety Agreement.

2.    The Surety Agreement or the Order approving the Surety Agreement.

3.    Claim No. 9553, which was allowed in the total amount of $9,806,018 pursuant to the Surety Agreement and the Order approving the Surety Agreement.

For the avoidance of doubt, nothing herein shall diminish the rights or recovery of any Entity holding the New POC or Claim No. 9553 (together the "Surety Agreement Claims"), nor shall the holder of any Surety Agreement Claims be impaired in any way by this Agreement or by the Approval Order, or any action taken in accordance with or pursuant to this confirmation of the Plan.  Nothing herein or as a consequence hereof shall diminish, alter or impair any such right arising under the Surety Agreement Claims, the Surety Agreement or the Order approving the Surety Agreement, in any way.

E.    No Prejudice of the Chartis Insurance Companies' Rights under Agreement

After the Trigger Date, the Grace Parties and the Trust shall not seek to terminate, reduce or limit the scope of the Asbestos PI Channeling Injunction with respect to the Chartis Insurance Companies, except as set forth in Section V.A. above, and shall oppose any such efforts by other Entities to do so.  In addition, the Grace Parties and the Trust shall not take any other action that would prejudice the rights of the Chartis Insurance Companies under this Agreement and they shall oppose any such efforts by other Entities to do so.

## VI.   **Termination of Agreement**

### A.   Automatic Termination

After the Execution Date, this Agreement shall terminate upon the occurrence of any of the following events:

1.   The failure of the Grace Committees to consent to the Agreement within thirty (30) days of the Execution Date;

2.   The entry of an order by the Bankruptcy Court dismissing the Chapter 11 Cases or converting them into Chapter 7 cases;

3.   The entry of an order by the Bankruptcy Court denying approval of this Agreement or the entry of an order by the District Court reversing the Approval Order;

4.   The failure of a Grace plan of reorganization to be confirmed, the failure of the Confirmation Order to become a Final Order or the failure of the Effective Date to occur.

### B.   Conditions for Termination by the Chartis Insurance Companies

The Chartis Insurance Companies, at their sole option, may terminate this Agreement and render this Agreement null and void by providing written notice of termination to the Grace Parties and the Grace Committees within thirty (30) days of the occurrence of any of the below described conditions of termination:

1.   The entry of an order that becomes a Final Order stating that the Trust will not be bound to the provisions of this Agreement with the same force and effect as if the Trust was a Party to this Agreement from the Execution Date;

2.      The entry of an order that becomes a Final Order stating that Chartis Insurance Companies are not Settled Asbestos Insurance Companies or that this Agreement is not an Asbestos Insurance Settlement Agreement;

3.      The confirmation of a plan of reorganization that does not meet the definition of a Plan set forth in Section I.V.

Failure by the Chartis Insurance Companies to give timely written notice of termination following the occurrence of a condition of termination shall be deemed a permanent waiver of such condition by the Chartis Insurance Companies.

C.      Conditions for Termination by the Trust

In the event that a Chartis Insurance Company fails to make any payment to the Trust required by Section II. of this Agreement, the Trust is entitled to terminate the Agreement and declare it null and void or seek to enforce it, at its option, provided that the Trust must provide written notice to the Chartis Insurance Companies of its intent to terminate the Agreement within thirty (30) days of the date of the last payment due under Section II. or forever waive its right to terminate the Agreement on this ground.

D.      Provisions Surviving Termination

Notwithstanding anything in this Agreement to the contrary, in the event this Agreement terminates, is ineffective, and/or is null and void pursuant to this Section VI.:

1. This Agreement, other than Sections I., VI., and X. through XVIII. (which Sections shall remain in full force and effect), shall be vitiated and shall be a nullity and shall be void ab initio;

2. None of the Parties shall be bound by the terms of any Approval Order;

3. The Chartis Insurance Companies shall not be designated as Settled Asbestos Insurance Companies and shall neither seek nor receive any benefit or protection of a Settled Asbestos Insurance Company under the Plan;

4. The Parties shall have the rights, defenses and obligations under or with respect to the Subject Policies and the 2000 Agreement made applicable to the Trust, or any other agreement between the Parties relating to the Subject Policies, that they would have had absent this Agreement,

5. The releases provided in Section III. shall become null and void ab initio;

6. Any otherwise applicable statutes of limitations or repose, or other time-related limitations, shall be deemed to have been tolled for the period from the Execution Date through the date that the Agreement becomes null and void, and no Party shall assert, plead, raise or otherwise rely on or take advantage, whether actively or passively, of any time-related defense to any Claim by any other Party related to such period and if any Party breaches this

obligation, it shall be deemed to have created a new cause of action against it at the time of such breach for which it shall be liable in damages equal to the amount of damages it avoided by reason of the breach.  This covenant shall be deemed to last for the maximum time period allowed by applicable law as provided in Section XIII.

E.    No Termination for Wrongful Acts

Except as otherwise expressly provided herein, in the event that a Party asserts that any action or refusal to take action that is required by this Agreement is wrongfully taken or not taken by a Party, the Party so asserting may not claim that the Agreement is terminated, but must pursue such rights as it has to enforce the Agreement against the Party asserted to have been in breach.

**VII.    Cooperation on Document and Information Sharing**

A.    Duty of Cooperation

Following the Trigger Date, the Trust shall reasonably cooperate in obtaining and providing files, information and documents relating to Asbestos PI Claims for review by the Chartis Insurance Companies at the Chartis Insurance Companies' reasonable request and expense.  For the avoidance of doubt and without limitation of the foregoing, the Trust shall undertake all reasonable actions to cooperate with the Chartis Insurance Companies in connection with their pursuing reinsurance with respect to payments made under this Agreement, including (upon reasonable notice, at the Chartis Insurance Companies' expense other than internal costs of the Trust, and in a manner convenient to the Trust) responding to reasonable requests for information and meeting with representatives of reinsurers.

B.    Information Subject to Review

The files, information and documents subject to Section VII.A. are limited to those in the possession of the Trust.

C.    No Effect on Obligations Under This Agreement

The review permitted by Section VII.A., and any results of such a review:

1.    shall not affect the Chartis Insurance Companies' obligations to make payments under this Agreement;

2.    shall not obligate the Trust to collect any information that it is not otherwise obligated to collect; and

3.    shall not give the Chartis Insurance Companies any right to challenge the allowance or payment of any Asbestos PI Claim by the Trust.

D.    Furnishing Reports

At the sole discretion of the Trust, the obligations under Section VII.A. may be satisfied by providing the Chartis Insurance Companies' representatives on a quarterly and annual basis with a report (each, a "Report") concerning Asbestos PI Claims activity with respect to the time period that is the subject of the Chartis Insurance Companies' request for relevant files, information and documents. Notwithstanding anything to the contrary in this Section VII., the Trust shall not be required to include in any Report any information that is not required to be collected under the confirmed Plan unless such information is in fact collected. If the following information is required to be collected under the confirmed Plan (or is in fact collected), such Reports shall include:

1.      The number of total Claims filed, pending, settled, dismissed or that went to judgment, the total Indemnity Payments, and total Defense Costs paid; and

2.      With respect to each Claim resolved during the relevant period:

   a.      the Claimant's name;

   b.      the claim number

   c.      jurisdiction;

   d.      status (open or closed);

   e.      the date of first exposure as set forth in the complaint or as reflected by information reasonably available to the Trust;

   f.      the asbestos product(s) or premises for which a Grace Party is alleged to be responsible and to which the Claimant alleges exposure;

   g.      the Entity(ies) among the Grace Parties that the Claimant alleges caused his injury;

   h.      the alleged disease and the date of diagnosis;

   i.      whether there is a medical diagnosis of the alleged disease;

   j.      date of death if applicable; and

   k.      the amount of indemnity paid.

If the Trust exercises the discretion to provide Reports to the Chartis Insurance Companies pursuant to this Section VII.D., the Trust shall still be obligated, at the request of the Chartis Insurance Companies (upon reasonable notice, at the Chartis Insurance Companies' sole expense, and in a manner convenient to the Trust) to make

available to the Chartis Insurance Companies files, information and documents described in this Section VII. that relate to the Asbestos PI Claims that are the subject of the Report.

E.    Disclosure of Confidential Materials

The Chartis Insurance Companies shall not provide any report, results, files, information or documents obtained by the Chartis Insurance Companies pursuant to this Section VII. (the "Materials") to any other Entity and shall keep the Materials confidential, except that the Chartis Insurance Companies may provide the Materials to Entities identified in Section IX.D; provided, however, that prior to any such disclosure, the Persons to whom the Material is to be disclosed must agree in writing to abide by the confidentiality provisions set forth herein.  The Chartis Insurance Companies shall exercise their best efforts to maintain the confidentiality of the Materials, including seeking a confidentiality pledge from any Entity with which they share the Materials and seeking a protective order in any proceeding in which they use the Materials.

F.    Use of Confidential Materials

The Chartis Insurance Companies may use Materials solely in connection with:

1.    the Chapter 11 Cases;

2.    in any proceeding to obtain reinsurance with respect to the Settlement Amount or this Agreement; or

3.    the Chartis Insurance Companies' compliance with applicable laws or regulations.

For the avoidance of doubt, the Chartis Insurance Companies may not use the Materials to build a database of information regarding Asbestos PI Claims or Claimants for use other than in the Chapter 11 Cases or in pursuit of reinsurance for their payment of the Settlement Amount under this Agreement.

In the event disclosure of Materials is sought from the Chartis Insurance Companies pursuant to subpoena or other legal process, the Chartis Insurance Companies shall immediately notify the Trust of the request for disclosure and cooperate with the Trust in seeking a protective order regarding the Materials.

G.     No Full Social Security Numbers

Notwithstanding any of the foregoing, nothing in this Section VII. shall obligate the Trust to provide the Social Security Identification Number of any Claimant beyond the last four digits.

## VIII.   Reasonably Equivalent Value

The Parties acknowledge and agree that:

A.     This Agreement was bargained for and entered into in good faith and as the result of arm's-length negotiations.

B.     Based on their respective independent assessments, with the assistance and advice of counsel, of the Chapter 11 Cases, and other matters, the consideration exchanged by the Parties pursuant to this Agreement (including the payments made by the Chartis Insurance Companies pursuant to the 2000 Agreement, the mutual releases, the designation of the Chartis Insurance Companies as Settled Asbestos Insurance Companies, and the other benefits exchanged by the Parties) is fair and reasonable, and the settlement reflected in the Agreement constitutes a fair and

reasonable settlement of the Parties' disputes and of their respective rights and obligations relating to the Subject Policies and the 1995 and 2000 Agreements.

## IX.   **Confidentiality and Press Release**

### A.   Settlement Negotiations

Settlement negotiations leading up to this Agreement, all information exchanged between the Parties in connection with such negotiations and all related discussions (collectively, "Confidential Information") are confidential and shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions and shall not be disclosed by any Party except as permitted in this Section IX.

### B.   Protection of Confidential Information

In the event that a private litigant (other than a Party to this Agreement or the Trust), by way of document request, interrogatory, subpoena or questioning at deposition or trial, attempts to compel disclosure of Confidential Information, the Party from whom disclosure is sought shall decline to provide the requested information on the ground that this Agreement prevents such disclosure. In the event that such private litigant seeks an order from any court or governmental body to compel such disclosure, or in the event that a court, government official or governmental body (other than the Internal Revenue Service or Securities and Exchange Commission) requests or requires disclosure of Confidential Information, the Party from whom disclosure is sought promptly shall give written notice by facsimile or hand-delivery to the other Parties, and promptly shall provide copies of all notice papers, orders, requests or other documents in order to allow each Party to take such protective steps as may be

appropriate. All costs incurred by a Party in accordance with this provision shall be the sole responsibility of the Party incurring such costs.

C.   Press Releases

Any Party issuing a press release concerning this Agreement within thirty (30) days after the Execution Date shall provide the other Parties with a draft copy for comment (but not approval) no later than twenty-four (24) hours before issuance.

D.   Permitted Disclosures

Notwithstanding anything in this Section IX., nothing in this Agreement shall prevent any Party from disclosing or releasing Confidential Information in any form and at any time after the Execution Date:

1.   to reinsurers or retrocessionaires of any Chartis Insurance Company directly or through intermediaries or as otherwise necessary in connection with proceedings to obtain reinsurance with respect to the Settlement Amount or this Agreement;

2.   to outside auditors, attorneys or accountants of any Party;

3.   to the extent required by law, including, to the extent applicable, to the Internal Revenue Service, the Securities and Exchange Commission or other U.S., or other governmental authority that properly requires disclosure by a Party hereto;

4.   to the extent and in any form that such information is required to be disclosed or released to satisfy reporting requirements imposed by law, including any Federal securities laws; and

5.      as necessary in connection with the approval of this Agreement in
the Chapter 11 Cases.

## X.      **Non-Prejudice and Construction of Agreement**

### A.      Character of This Agreement

This Agreement is not a contract of insurance.  This Agreement is not
subject to rules or construction governing contracts of insurance, including the doctrine
of contra proferentum.  This Agreement is a compromise between the Parties and shall
not be construed as an admission of coverage under the Subject Policies, nor shall this
Agreement or any provision hereof be construed as a waiver, modification or retraction
of the positions of the Parties with respect to the interpretation and application of the
Subject Policies.

### B.      Scope of this Agreement

This Agreement is the product of informed negotiations and involves
compromises of the Parties' previously stated legal positions.      Accordingly, this
Agreement does not reflect upon the Parties' views as to rights and obligations with
respect to matters or Entities outside the scope of this Agreement.  This Agreement is
without prejudice to positions taken by the Chartis Insurance Companies with regard to
other insureds, and without prejudice to positions taken by Grace or the Trust with
regard to other insurers.  The Parties specifically disavow any intention to create rights
in third parties under or in relation to this Agreement.

### C.      Construction of this Agreement

This Agreement is the jointly drafted product of arm's-length negotiations
between the Parties with the benefit of advice from counsel, and the Parties agree that it

shall be so construed. As such, no Party will claim that any ambiguity in this Agreement shall, as a matter of law, be construed against the other Party.

## XI.    **Modification**

Except as expressly provided herein, no change or modification of this Agreement shall be valid unless it is made in writing and signed by the Parties. In the event that any Party is dissolved or otherwise ceases to exist, the remaining Parties may modify this Agreement without that Party's consent.

## XII.    **Integration**

### A.    Entire Agreement

This Agreement, including its Attachments, constitutes the entire agreement and understanding among the Parties with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, among the Parties with respect hereto. Except as expressly set forth in this Agreement, there are no representations, warranties, promises or inducements, whether oral, written, expressed or implied, that in any way affect or condition the validity of this Agreement or alter its terms. If the facts or law related to the subject matter of this Agreement are found hereafter to be other than is now believed by any of the Parties, the Parties expressly accept and assume the risk of such possible difference of fact or law and agree that this Agreement nonetheless shall be and remain effective according to its terms. This Agreement shall have perpetual existence except as provided herein. Upon the Approval Order becoming a Final Order, this Agreement shall also supersede all prior agreements between the Parties relating to the subject matter of this Agreement, including the 1995 and 2000 Agreements and other agreements that have been entered into by the Parties that relate to the Subject Policies

and such other agreements shall become null and void; provided, however, that if this Agreement is terminated in accordance with Section VI., any agreements between the Parties in effect immediately prior to the Execution Date, modified to take into account the Trust and the Chapter 11 Cases, shall remain in effect as between the Parties.

B.     Titles and Captions

Titles and captions contained in this Agreement are inserted only as a matter of convenience and are for reference purposes only. Such titles and captions are intended in no way to define, limit, expand or describe the scope of this Agreement or the intent of any provision hereof.

**XIII.   Governing Law**

This Agreement shall be governed by, and shall be construed in accordance with, the laws of the State of New York without regard to its choice of law rules. Nothing in this Section XIII. shall affect what law would govern the interpretation or application of the Subject Policies.

**XIV.   Representations**

Each Party represents and warrants that it has authority to execute this Agreement as its binding and legal obligation, and Grace represents and warrants that it has the authority to execute this Agreement as the binding and legal obligation of all Parties within the definition of the Grace Parties (subject, however, to the entry of an Approval Order). Each Party represents and warrants that the persons signing this Agreement on its or their behalf is authorized to execute this Agreement (subject, however, in the case of Grace to the entry of an Approval Order).

## XV.    Execution and Authority

There will be two (2) signed originals of this Agreement, which may be executed in duplicate counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument.    Each counterpart may be delivered by facsimile transmission or by e-mailing a scanned version, and a faxed or scanned signature shall have the same force and effect as an original signature.

## XVI.    Notices, Consent to Jurisdiction and Service of Suit

Unless another person is designated, in writing, for receipt of notices hereunder, any and all statements, communications or notices to be provided pursuant to this Agreement shall be in writing and sent by next Business Day courier service, with receipt or tracking number requested, postage prepaid (except as otherwise specified in this Agreement).  Such notices to the Parties shall be sent to the following:

If to the Grace Parties:

W. R. Grace & Company
7500 Grace Drive
Columbia, Maryland  21044
Attn:  Secretary
Fax:  (410) 531-4367

with a copy (which shall not constitute notice) to:

Theodore L. Freedman
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York  10022-4611
Fax:  (212) 446-4900

If to the Chartis Insurance Companies:

Al Fippinger
Asbestos Department
Chartis Claims
101 Hudson Street, 29th Floor
Jersey City, New Jersey  07302
Fax:  (201) 631-5059

with a copy to (which shall not constitute notice):

Zeickner Ellman & Krause LLP
575 Lexington Avenue, 10th Floor
New York, New York  10022
Attn:  Michael Davis, Esq.
Fax:  (866) 213-9038

Lynberg & Watkins
888 South Figueroa Street, Suite 1600
Los Angeles, California  90017
Attn:  Jeff Carlisle, Esq.
Fax:  (213) 892-2773

If to the Official Committee of Asbestos Personal Injury Claimants:

Peter Van N. Lockwood
Caplin & Drysdale
One Thomas Circle, NW
Washington, DC 20005
Fax:  (202) 429-3301

with a copy (which shall not constitute notice) to:

Robert M. Horkovich
Anderson Kill & Olick, PC
1251 Avenue of the Americas
New York, New York  10020
Fax:  (212) 278-1733

If to the Asbestos PI Future Claimants' Representative:

David T. Austern
Asbestos PI Future Claimants'
     Representative
c/o Claims Resolution Management
     Corporation
3110 Fairview Park Drive, Suite 200
Falls Church, Virginia  22042-0683
Fax:  (703) 205-6249

with a copy (which shall not constitute notice) to:

Orrick, Herrington & Sutcliffe LLP
3050 K Street, N.W., Suite 200
Washington, DC  20007-5135
Attention: Roger Frankel
Fax:  (202) 339-8500

## XVII.  <u>Binding Effect</u>

This Agreement shall be binding on and inure to the benefit of the successors and assigns of the Parties.

## XVIII.  <u>Continuing Court Jurisdiction</u>

The Parties shall not object to the Bankruptcy Court's exercising jurisdiction to resolve disputes under or concerning this Agreement, its terms and performance, whether this Agreement has or should terminate, whether modifications to the Plan disqualify it as a "Plan" as defined in Section I.V., or whether the Trigger Date has occurred.  Any Party that is concerned whether an action it or another Party takes or proposes to take under or with respect to this Agreement is consistent with or violative of its terms may request from the Bankruptcy Court an order or instructions so determining.  Any Party may seek specific performance from the Bankruptcy Court of the terms of this Agreement by another Party that refuses or fails to take actions or refrain from taking actions required by this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

**W.R. GRACE & CO. ON ITS OWN BEHALF AND ON BEHALF OF ALL PERSONS INCLUDED IN THE DEFINITION OF GRACE PARTIES**

By: _Richard C. Finke_

Name: _RICHARD C. FINKE_

Title: _ASSISTANT GENERAL COUNSEL – LITIGATION_

Date: _SEPT. 11, 2009_

**AMERICAN HOME ASSURANCE COMPANY**

By: _D. Allen Epping_

Name: _D. Allen Epping_

Title: _Complex Director_

Date: _9/11/09_

**AIU INSURANCE COMPANY**

By: _D. Allen Epping_

Name: _D. Allen Epping_

Title: _Complex Director_

Date: _9/11/09_

**BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA (NOW KNOWN AS AIG CASUALTY COMPANY)**

By: _D. Allen Epping_

Name: _D. Allen Epping_

Title: _Complex Director_

Date: _9/11/09_

**GRANITE STATE INSURANCE COMPANY**

By: _D. Allen Epping_

Name: _D. Allen Epping_

Title: _Complex Director_

Date: _9/11/09_

**ILLINOIS NATIONAL INSURANCE COMPANY**

By: _D. Allen Epping_

Name: _D. Allen Epping_

Title: _Complex Director_

Date: _9/11/09_

**INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA**

By: _O. alln tripp_

Name: _O. Allen Tippen_

Title: _Complex Director_

Date: _9/11/09_


**LEXINGTON INSURANCE COMPANY**

By: _O. alln tripp_

Name: _O. Allen Tippen_

Title: _Complex Director_

Date: _9/11/09_


**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**

By: _O. alln tripp_

Name: _O. Allen Tippen_

Title: _Complex Director_

Date: _9/11/09_


**NEW HAMPSHIRE INSURANCE COMPANY**

By: _O. alln tripp_

Name: _O. Allen Tippen_

Title: _Complex Director_

Date: _9/11/09_

Attachment A

| Insurer | Policy Number | Policy Year Beginning |
|---|---|---|
| American Home Assurance | CE351082 | 20-Oct-65 |
| American Home Assurance | CE351082 | 20-Oct-66 |
| American Home Assurance | CE351082 | 20-Oct-67 |
| American Home Assurance | WRG-1 | 20-Oct-68 |
| American Home Assurance | WRG-1 | 20-Oct-69 |
| American Home Assurance | WRG-1 | 20-Oct-70 |
| American Home Assurance | CE2691919 | 30-Jun-71 |
| American Home Assurance | CE2691919 | 30-Jun-72 |
| American Home Assurance | CE2691919 | 30-Jun-73 |
| American Home Assurance | 74DD662C | 30-Jun-74 |
| Lexington Ins. Co. | 74DD662C | 30-Jun-74 |
| American Home Assurance | CE3436358 | 30-Jun-74 |
| American Home Assurance | 74DD663C | 30-Jun-74 |
| New Hampshire Insurance | 51750444 | 30-Jun-75 |
| New Hampshire Insurance | 51750445 | 30-Jun-75 |
| American Home Assurance | 74DD662C | 30-Jun-75 |
| Lexington Ins. Co. | 74DD662C | 30-Jun-75 |
| American Home Assurance | CE3436358 | 30-Jun-75 |
| American Home Assurance | 74DD663C | 30-Jun-75 |
| Lexington Ins. Co. | 76DD1595C | 30-Jun-76 |
| Granite State Ins | SCLD80-93954 | 30-Jun-76 |
| Lexington Ins. Co. | 74DD662C | 30-Jun-76 |
| Insurance Co State of PA | 4176-7052 | 30-Jun-76 |
| American Home Assurance | CE3436358 | 30-Jun-76 |
| Lexington Ins. Co. | 76DD1595C | 30-Jun-77 |
| Lexington Ins. Co. | 77DD1631C | 30-Jun-77 |
| Insurance Co State of PA | 4177-7981 | 30-Jun-77 |
| Granite State Ins | SCLD8093266 | 30-Jun-77 |
| Lexington Ins. Co. | 77DD1632C | 30-Jun-77 |
| Natl Union Fire Pttsbrgh | 1228593 | 30-Jun-77 |
| Insurance Co State of PA | 4177-7982 | 30-Jun-77 |
| Natl Union Fire Pttsbrgh | 1228593. | 30-Jun-77 |
| Natl Union Fire Pttsbrgh | 1228593.. | 30-Jun-77 |
| Granite State Ins | SCLD80-93292 | 30-Jun-77 |
| Insurance Co State of PA | SEP 396-3996 | 30-Jun-77 |
| Lexington Ins. Co. | 76DD1595C | 30-Jun-78 |
| Granite State Ins | 61780491 | 30-Jun-78 |
| Lexington Ins. Co. | 78DD1417C | 30-Jun-78 |
| American Int'l Underwriter | 75100696 | 30-Jun-78 |
| Lexington Ins. Co. | 78DD1418C | 30-Jun-78 |
| Granite State Ins | 61780492 | 30-Jun-78 |
| Natl Union Fire Pttsbrgh | 1231895 | 30-Jun-78 |
| Granite State Ins | 6178-0493 | 30-Jun-78 |
| Natl Union Fire Pttsbrgh | 1231895. | 30-Jun-78 |
| Birmingham Fire Ins Co | SE6073371 | 30-Jun-78 |
| American Int'l Underwriter | 75100695 | 30-Jun-78 |
| Natl Union Fire Pttsbrgh | 1231895.. | 30-Jun-78 |
| Lexington Ins. Co. | 79DD1634C | 30-Jun-79 |
| Granite State Ins | 61791383 | 30-Jun-79 |
| American Int'l Underwriter | 75101107 | 30-Jun-79 |
| Lexington Ins. Co. | 79DD1635C | 30-Jun-79 |
| Granite State Ins | 61791384 | 30-Jun-79 |
| American Int'l Underwriter | 75101108 | 30-Jun-79 |
| Natl Union Fire Pttsbrgh | 9782319 | 30-Jun-79 |
| Granite State Ins | 61791385 | 30-Jun-79 |
| Granite State Ins | 61791386 | 30-Jun-79 |
| Natl Union Fire Pttsbrgh | 9782319. | 30-Jun-79 |
| American Int'l Underwriter | 75101109 | 30-Jun-79 |
| Birmingham Fire Ins Co | SE6073508 | 30-Jun-79 |
| Natl Union Fire Pttsbrgh | 9782319.. | 30-Jun-79 |
| Lexington Ins. Co. | 79DD1638C | 30-Jun-79 |
| Natl Union Fire Pttsbrgh | 9782319... | 30-Jun-79 |
| Granite State Ins | 6480-5013 | 30-Jun-80 |
| Lexington Ins. Co. | 80DD1643C | 30-Jun-80 |

| Insurer | Policy Number | Policy Year Beginning |
|---|---|---|
| Lexington Ins. Co. | 80DD1644C | 30-Jun-80 |
| American Int'l Underwriter | 75102424 | 30-Jun-80 |
| Granite State Ins | 6480-5014 | 30-Jun-80 |
| American Int'l Underwriter | 75102422 | 30-Jun-80 |
| Granite State Ins | 6480-5015 | 30-Jun-80 |
| Natl Union Fire Pttsbrgh | 9910362 | 30-Jun-80 |
| Natl Union Fire Pttsbrgh | 9910362. | 30-Jun-80 |
| Granite State Ins | 6480-5016 | 30-Jun-80 |
| Birmingham Fire Ins Co | SE6073646 | 30-Jun-80 |
| American Int'l Underwriter | 75102423 | 30-Jun-80 |
| Natl Union Fire Pttsbrgh | 9910362.. | 30-Jun-80 |
| Natl Union Fire Pttsbrgh | 9910362... | 30-Jun-80 |
| Lexington Ins. Co. | 80DD1647C | 30-Jun-80 |
| Granite State Ins | 6481-5220 | 30-Jun-81 |
| Lexington Ins. Co. | 80DD1643C | 30-Jun-81 |
| Lexington Ins. Co. | PY030181 | 30-Jun-81 |
| Granite State Ins | 6481-5221 | 30-Jun-81 |
| American Int'l Underwriter | 75-102641 | 30-Jun-81 |
| Natl Union Fire Pttsbrgh | 9602931 | 30-Jun-81 |
| Granite State Ins | 6481-5222 | 30-Jun-81 |
| American Int'l Underwriter | 75-102642 | 30-Jun-81 |
| Granite State Ins | 6481-5223 | 30-Jun-81 |
| Natl Union Fire Pttsbrgh | 9602931. | 30-Jun-81 |
| Lexington Ins. Co. | KY003382 | 01-Nov-81 |
| Natl Union Fire Pttsbrgh | 9602931.. | 30-Jun-81 |
| Birmingham Fire Ins Co | SE6073657 | 30-Jun-81 |
| Natl Union Fire Pttsbrgh | 9602931... | 30-Jun-81 |
| American Int'l Underwriter | 75-102643 | 30-Jun-81 |
| Lexington Ins. Co. | KY017782 | 30-Jun-82 |
| Granite State Ins | 6482-5442 | 30-Jun-82 |
| American Int'l Underwriter | 75102158 | 30-Jun-82 |
| Lexington Ins. Co. | KY017882 | 30-Jun-82 |
| Natl Union Fire Pttsbrgh | 9603133 | 30-Jun-82 |
| Granite State Ins | 6482-5443 | 30-Jun-82 |
| Granite State Ins | 6482-5444 | 30-Jun-82 |
| Birmingham Fire Ins Co | SE6073957 | 30-Jun-82 |
| Lexington Ins. Co. | KY017982 | 30-Jun-82 |
| Natl Union Fire Pttsbrgh | 9603133. | 30-Jun-82 |
| Natl Union Fire Pttsbrgh | 9603133.. | 30-Jun-82 |
| American Int'l Underwriter | 75102159 | 30-Jun-82 |
| Granite State Ins | 6483-5666 | 30-Jun-83 |
| Lexington Ins. Co. | KY017782 | 30-Jun-83 |
| American Int'l Underwriter | 75103044 | 30-Jun-83 |
| Lexington Ins. Co. | KY048183 | 30-Jun-83 |
| Natl Union Fire Pttsbrgh | 9607141 | 30-Jun-83 |
| Birmingham Fire Ins Co | SE6074145 | 30-Jun-83 |
| Granite State Ins | 6483-5667 | 30-Jun-83 |
| Granite State Ins | 6483-5668 | 30-Jun-83 |
| Natl Union Fire Pttsbrgh | 9607141. | 30-Jun-83 |
| Lexington Ins. Co. | KY048283 | 30-Jun-83 |
| Birmingham Fire Ins Co | SE6074146 | 30-Jun-83 |
| Birmingham Fire Ins Co | SE6074116 | 30-Jun-83 |
| Natl Union Fire Pttsbrgh | 9607141.. | 30-Jun-83 |
| Illinois National | 886-7134 | 30-Jun-83 |
| American Int'l Underwriter | 75103045 | 30-Jun-83 |
| Granite State Ins | 6484-5867 | 30-Jun-84 |
| Lexington Ins. Co. | KY017782 | 30-Jun-84 |
| American Int'l Underwriter | 75103845 | 30-Jun-84 |
| Granite State Ins | 6484-5866 | 30-Jun-84 |
| Granite State Ins | 6484-5890 | 30-Jun-84 |
| American Int'l Underwriter | 75103864 | 30-Jun-84 |
| Birmingham Fire Ins Co | SE6074318 | 30-Jun-84 |