# Exhibit A

**AGREEMENT AMENDING AND RESTATING THE ASBESTOS SETTLEMENT AGREEMENT BETWEEN W.R. GRACE & CO.-CONN. AND THE AETNA CASUALTY AND SURETY COMPANY, MADE AND ENTERED INTO ON MAY 22, 1996**

THIS AMENDED AGREEMENT (as defined below) between and among the Parties (as defined below) amends and restates the 1996 Agreement (as defined below).

**W I T N E S S E T H:**

WHEREAS, Travelers (as defined below) issued the following liability insurance policies to Grace (as defined below), which insurance policies are hereafter referenced as the "Subject Insurance Policies":

| POLICY NUMBER | POLICY PERIOD |
|---|---|
| 01 XN 150 WCA | June 30, 1971 – June 30, 1974 |
| 01 XN 607 WCA | July 17, 1974 – June 30, 1977 |
| 01 XN 608 WCA | July 17, 1974 – June 30, 1977 |
| 01 XN 1400 WCA | June 30, 1977 – June 30, 1978 |
| 01 XN 1422 WCA | June 30, 1977 – June 30, 1978 |
| 01 XN 1846 WCA | June 30, 1978 – June 30, 1979 |
| 01 XN 1847 WCA | June 30, 1978 – June 30, 1979 |
| 01 XN 2306 WCA | June 30, 1979 – June 30, 1980 |
| 01 XN 2669 WCA | June 30, 1980 – June 30, 1981 |

and

WHEREAS, Travelers issued additional liability insurance policies to Grace, with effective dates beginning on or after June 30, 1984, that contain Asbestos Exclusions and which are hereafter referenced as the "Asbestos Exclusion Insurance Policies"; and

WHEREAS, thousands of Asbestos-Related Claims (as defined below) have been filed against Grace; and

093810-0262-00880-Active.11753575.8

WHEREAS, Grace has been party to or otherwise participated in the following judicial proceedings in which coverage under the Subject Insurance Policies and certain of the Asbestos Exclusion Insurance Policies has been at issue:

1.    Maryland Casualty Co. v. W.R. Grace & Co.-Conn. et al., 88 Civ. 2613 (JSM) - Pending in the U.S. District Court for the Southern District of New York;

2.    Dayton Independent School District, et al. v. W.R. Grace & Co.-Conn. v. Admiral Insurance Co., et al. No. B-87-00507 - Dismissed;

3.    Ecolab, Inc. and W.R. Grace & Co.-Conn. v. Central National Insurance Co., et al. - Dismissed;

4.    The County of Hennepin, et al. and W.R. Grace & Co.-Conn. v. Andrew Weir Insurance Co., et al. - Dismissed;

5.    W.R. Grace & Co. v. Admiral Insurance Co., et al. - Dismissed;

6.    American Employer's Insurance, Co., et al. v. W.R. Grace, et al. - Pending;

7.    Richard P. Ieyoub, Attorney General ex rel. State of Louisiana v. W.R. Grace & Co.-Conn., et al., No. 95-3722 - Pending in the 14th Judicial District Court, Parish of Calcasieu, State of Louisiana;

the foregoing actions are hereafter collectively referenced as the "Coverage Actions"; and

WHEREAS, on or about April 2, 2001, W.R. Grace & Co. and various affiliated companies filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for Delaware, In re W.R. Grace & Co., et al., No. 01-01139 (JKF) (the "Bankruptcy Case"), and they continue to operate their businesses as debtors and debtors-in-possession; and

WHEREAS, on February 27, 2009, the Joint Plan of Reorganization (as defined below) was filed in the Bankruptcy Case which, *inter alia*, contemplates: (a) the creation of the Trust under Bankruptcy Code Section 524(g) to direct the processing, liquidation and payment of claims for bodily injury due to exposure to asbestos or asbestos-containing materials, and (b) the

creation of the Asbestos PD Trust under Bankruptcy Code Section 524(g) to direct the processing, liquidation and payment of claims for property damage arising from asbestos; and

WHEREAS, Grace contends that under the 1992 Agreement (as defined below) and the 1996 Agreement (as defined below), Travelers is obligated to provide coverage for indemnity payments made or to be made by Grace and, after its creation, the Trust (as defined below) in connection with Asbestos-Related Claims; and

WHEREAS, Travelers has filed objections in the Bankruptcy Case to confirmation of the Joint Plan of Reorganization and has filed the Travelers Proof of Claim (as defined below) in the Bankruptcy Case; and

WHEREAS, the Parties wish to fully and finally compromise Travelers objections to the Joint Plan of Reorganization and the Travelers Proof of Claim; and

WHEREAS, by virtue of this Amended Agreement, neither Grace nor Travelers admits or concedes in any way the validity of the positions or arguments advanced by the other or by any third party;

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth, intending to be legally bound, the Parties agree as follows:

## 1.    **DEFINITIONS**
As used herein, the following definitions govern the meanings attributable to the following defined terms:

1.1.    "1992 Agreement" means the agreement between W. R. Grace & Co.-Conn. and The Aetna Casualty and Surety Company dated February 20, 1992.

1.2.    "1996 Agreement" means the agreement between W. R. Grace & Co.-Conn. and The Aetna Casualty and Surety Company, made and entered into on May 22, 1996.

1.3.    "Amended Agreement" means this Amended Agreement, which amends and restates the 1996 Agreement.

1.4.    "Approval Order" means an order of the Bankruptcy Court, to be entered in the Bankruptcy Case, in form and substance satisfactory to the Parties, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, approving this Amended Agreement and the compromise and settlement memorialized herein.

1.5.    "Asbestos Insurance Policy" has the meaning set forth in the Joint Plan of Reorganization.

1.6.    "Asbestos Insurance Settlement Agreement" has the meaning set forth in the Joint Plan of Reorganization.

1.7.    "Asbestos PD Trust" has the meaning set forth in the Joint Plan of Reorganization.

1.8.    "Asbestos PI Channeling Injunction" has the meaning set forth in the Joint Plan of Reorganization.

1.9.    "Asbestos PI Claim" has the meaning set forth in the Joint Plan of Reorganization.

1.10.    "Asbestos-Related Claims" means both Bodily Injury Claims and Building Claims.

1.11.    "Bankruptcy Case" means In re W.R. Grace & Co., et al., No. 01-1139 (JKF) and the other bankruptcy cases that are jointly administered under Case No. 01-1139, including any appeals of decisions in the Bankruptcy Case.

1.12.    "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time.

1.13.   "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware and, to the extent it exercises jurisdiction over the Bankruptcy Case, the United States District Court for the District of Delaware.

1.14.   "Bell Curve Allocation Method" means the percentages set forth in Attachment B for allocating Indemnity Payments paid by the Trust for certain Asbestos-Related Claims, as specified below.

1.15.   "Bodily Injury Claim" means any and all past, present, future, known or unknown, foreseeable or unforeseeable claims for bodily injury, sickness or disease asserted by any Person against any member or members of the Grace Group or for which any member or members of the Grace Group are ultimately responsible, where such bodily injury, sickness or disease is alleged to have been caused, in whole or in part, by exposure to a Grace Product, regardless of the cause of action or theory of recovery used by the Person asserting such claim, or the theory of coverage used by any member of the Grace Group or any other Person with respect to such claim; provided, however, that any claim brought against any member(s) of the Grace Group by former Grace Group employees under any workers compensation statute, occupational disease law or law of similar import, or any claim or lawsuit brought by anyone else for contribution, indemnity or other legal relief, arising out of bodily injury suffered by current or former Grace Group employees in the course of their employment with the Grace Group, shall not be considered a Bodily Injury Claim.

1.16.   "Building Claim" means any and all past, present, future, known or unknown, foreseeable or unforeseeable claims asserted by any Person against any member or members of the Grace Group, or for which any member or members of the Grace Group are ultimately responsible, for damage to, destruction of or loss of use or diminution in value of property

arising from the presence in a building of a Grace Product, or for the removal or abatement of a

Grace Product from a building, regardless of the cause of action or theory of recovery used by

the Person asserting such claim, or the theory of coverage used by any member of the Grace

Group or any other Person with respect to such claim.

1.17.   "Class 7A CMO" has the meaning set forth in the Joint Plan of Reorganization.

1.18.   "Committee" means the Official Committee of Asbestos Personal Injury

Claimants appointed in the Bankruptcy Case.

1.19.   "Confirmation Order" means an order entered by the District Court in the

Bankruptcy Case confirming the Joint Plan of Reorganization, or affirming or reissuing the order

of the Bankruptcy Court confirming the Joint Plan of Reorganization, that

       (i)     Confirms the Joint Plan of Reorganization;

       (ii)    Has the effect of providing that the Asbestos PI Channeling

                Injunction applies to Travelers with respect to Asbestos PI Claims;

       (iii)   Specifies that Travelers is a Settled Asbestos Insurance Company;

       (iv)   Provides that this Amended Agreement shall inure to the benefit of

                the Trust and that the Trust shall become bound to the terms and

                conditions of this Amended Agreement as provided herein,

                including the releases in Section 4, and of the Approval Order

                without the need for further act or documentation of any kind

                (which may be accomplished by a provision that makes all

                insurance settlement agreements, including this Amended

                Agreement, and related approval orders, including the Approval

                Order, binding upon and inure to the benefit of the Trust); and

       (v)     Is otherwise consistent with the terms of this Amended Agreement.

1.20.    "Coverage Block" means the period from October 20, 1962 through June 30, 1985.

1.21.    "Debtors" has the meaning set forth in the Joint Plan of Reorganization.

1.22.    "Defense Costs" means all fees, expenses and costs incurred by the Grace Group in connection with defending Asbestos-Related Claims, or by the Trust in defending Bodily Injury Claims, for which any member of the Grace Group or the Trust incurs an Indemnity Payment. The Parties agree that such fees, expenses and costs shall include but are not limited to, attorneys' fees (except those of the Grace Group's in-house legal staff), costs and expenses; experts' fees, costs and expenses; court fees, costs and expenses; costs and expenses for responding to requests for production of documents; costs and expenses for storing documents produced in response to a request for production of documents or otherwise compiled in connection with defending Asbestos-Related Claims. Defense Costs shall not include the Grace Group's or the Trust's general overhead, administrative and internal expenses, or any fees, expenses and costs incurred by the Grace Group or the Trust in connection with the litigation, negotiation or resolution of insurance coverage issues.

1.23.    "Effective Date" has the meaning set forth in the Joint Plan of Reorganization.

1.24.    "Excess Insurance Policies" means all of the excess and umbrella insurance policies, including but not limited to the Subject Insurance Policies, that were issued to Grace and were in effect prior to July 1, 1985. Attachment A sets forth a schedule of all Excess Insurance Policies, including the Subject Insurance Policies.

1.25.    "Execution Date" means the first date on which both Grace and Travelers have executed this Amended Agreement.

093810-0262-00880-Active.11753575.8

1.26.    "Final Order" means an order or judgment (including any modification or amendment thereof) that remains in effect and has not been reversed, vacated, stayed or amended and as to which the time to appeal or seek review, rehearing or writ of certiorari has expired and as to which no appeal or petition for review, reconsideration, rehearing or certiorari has been taken or, if taken, remains pending.

1.27.    "Futures Representative" means David Austern, the Asbestos PI Future Claimants' Representative appointed, for each Debtor, by Order of the Bankruptcy Court dated May 24, 2004, and any successor to him.

1.28.    "Grace" means W. R. Grace & Co., and its predecessors, successors and current majority-owned subsidiaries, including, without limitation, W.R. Grace & Co.–Conn., provided, however, that any of the foregoing Persons that was not insured under the Subject Insurance Policies and/or the Asbestos Exclusion Insurance Policies shall not be included in the term "Grace."

1.29.    "Grace Group" means any and all of the following:  Grace, the past and present majority-owned subsidiaries and affiliates of Grace, the predecessors and successors of such subsidiaries and affiliates, the directors, officers, agents and employees of Grace and of such subsidiaries and affiliates, and any other Person that was insured under the Subject Insurance Policies and/or the Asbestos Exclusion Insurance Policies, and those insureds' past and present subsidiaries, affiliates, predecessors, successors, directors, officers, agents and employees; provided, however, that any of the foregoing Persons that were not insured under the Subject Insurance Policies and/or the Asbestos Exclusion Insurance Policies shall not be included in the term "Grace Group."  Without limiting the foregoing, Grace Group includes the Debtors.

1.30.    "Grace Product" means any asbestos-containing product manufactured, handled, sold or distributed by the Grace Group, or for which the Grace Group incurs liability.

1.31.    "Indemnity Payments" means the amounts paid or to be paid by or on behalf of any member of the Grace Group or the Trust in settlement of, or in satisfaction of judgments rendered in connection with Asbestos Related Claims, including without limitation, amounts paid by the Trust to holders of Asbestos PI Claims with respect to Bodily Injury Claims (but not to holders of Indirect PI Trust Claims) pursuant to the Trust Distribution Procedures. Indemnity Payments shall not include any sums within the definition of "Defense Costs." For the avoidance of doubt, Indemnity Payments shall mean the actual amounts paid by the Trust after application of any Payment Percentage as described in Section IV of the Trust Distribution Procedures.

1.32.    "Indirect PD Trust Claim" has the meaning set forth in the Joint Plan of Reorganization.

1.33.    "Indirect PI Trust Claim"  has the meaning set forth in the Joint Plan of Reorganization.

1.34.    "Joint Plan of Reorganization" means the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009, including all exhibits thereto, as such plan may be modified from time to time.

1.35.    "Martin Memorandum Opinion" means Judge Martin's Memorandum Opinion and Order, dated March 12, 1996, in Maryland Casualty Company v. W.R. Grace & Co., a copy of which is set forth in Attachment C.

1.36.    "Parties" means Grace and Travelers and, as of the Effective Date, the Trust.

1.37.    "Person" means any individual, administrator, executor or legal representative, corporation, partnership, association, trust, government unit at any level of government, agency or other entity.  Whenever the context so requires, the singular use of the term Person shall include the plural and vice versa.

1.38.    "Settled Asbestos Insurance Company" has the meaning set forth in the Joint Plan of Reorganization.

1.39.    "Travelers" means Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company, its predecessors, successors and its past and present parents (including, but not limited to, Aetna Life & Casualty Company).

1.40.    "Travelers Proof of Claim" means proof of claim number 13937, filed by Travelers in the Bankruptcy Case.

1.41.    "Triggered Policy Years (B.I.)" for a Bodily Injury Claim means every policy year beginning with the policy year in which the injured person was first exposed to a Grace Product and continuing until the earlier of (x) the date on which the person's disease first became known (i.e., the earliest of the date of diagnosis, death, claim or suit) or (y) June 30, 1985; provided, however, that insofar as any Defense Costs or Indemnity Payments for a Bodily Injury Claim are attributable to the activities of a Person that became a part of the Grace Group on or after June 30, 1971, no policy year ending prior to the date that the Person became a part of the Grace Group shall be deemed to be a Triggered Policy Year (B.I.), but the Parties acknowledge that all past and pending Asbestos-Related Claims, and all currently anticipated future Asbestos-Related Claims, are attributable to the activities of Persons that became a part of the Grace Group prior to June 30, 1971.

093810-0262-00880-Active.11753575.8

1.42.    "Trust" means the WRG Asbestos PI Trust established pursuant to the Joint Plan of Reorganization, or such other trust as may be established under Section 524(g) of the Bankruptcy Code to process and pay Asbestos PI Claims pursuant to the Joint Plan of Reorganization.

1.43.    "Trust Distribution Procedures" means the WRG Asbestos PI Trust Distribution Procedures substantially in the form attached as Exhibit 4 to the Joint Plan of Reorganization.

## 2.    INITIAL SETTLEMENT PAYMENT

2.1.    The Parties acknowledge that Travelers has paid directly to Grace the amount of $9,375,000.00 (nine million, three hundred and seventy-five thousand dollars) in June 1996, in accordance with the 1996 Agreement.

2.2.    The Parties acknowledge that Travelers has paid the amount of $496,128.75 (four hundred ninety-six thousand, one hundred twenty-eight dollars and seventy-five cents) in August 2001, in accordance with the 1996 Agreement.

## 3.    EXHAUSTION OF SUBJECT INSURANCE POLICIES

3.1.    The Parties acknowledge that the payment made by Travelers pursuant to Section 2 of the 1996 Agreement represented and is conclusively deemed for all purposes to be a full and final payment and complete exhaustion of all products liability/completed operations limits applicable to the policy years June 30, 1971 to June 30, 1972, and June 30, 1972 to June 30, 1973, contained in Subject Insurance Policy 01 XN 150 WCA.

3.2.    The Parties further agree that the payment made by Travelers under Section 2 of the 1996 Agreement did not impair, in whole or in part, the limits applicable to the policy year June 30, 1973 to June 30, 1974, contained in Policy 01 XN 150 WCA and that, upon proper showing pursuant to Sections 6, 7, 9 and 10 below, the Trust will be entitled to recover (but only

in accordance with the terms of this Amended Agreement and only to the extent the limits are

not otherwise impaired) an amount of up to the $4,503,871.25 in aggregate products

liability/completed operations limits available in that policy year under such Policy. It is agreed

that, as of the Execution Date, the applicable limit for each Travelers policy year beginning on or

after June 30, 1974 has not been impaired. Upon Travelers payment of $4,503,871.25 for policy

year June 30, 1973 to June 30, 1974 in connection with Asbestos Related Claims or other

products liability/completed operations claims, including Bodily Injury Claims under this

Amended Agreement, the Parties agree that all products liability/completed operations limits

under Policy 01 XN 150 WCA shall be fully exhausted.

### 4.    RELEASE; SATISFACTION OF OBLIGATIONS; WAIVER OF LAWS LIMITING SCOPE OF RELEASE; COVENANT NOT TO SUE; REMEDY FOR BREACH OF COVENANT

4.1.    <u>Release</u>. Grace, for itself, the Debtors and, to the extent it is legally able to bind

them, for the Grace Group, and the Trust acknowledge that, upon payment pursuant to Section 2

of the 1996 Agreement, Travelers was completely and forever released, surrendered, acquitted

and discharged from any and all past, pending, present, future, legal, equitable, fixed, contingent,

matured, unmatured, liquidated, unliquidated, foreseeable, unforeseeable, known, unknown,

suspected, unsuspected, disclosed, undisclosed, hidden or concealed claims, allegations,

demands, obligations, suits, actions, causes of action, proceedings, rights, damages, and costs of

any nature whatsoever (regardless of when such claims, allegations, demands, obligations, suits,

actions, causes of action, proceedings, rights, damages, and costs of any nature whatsoever

accrue) arising out of or in any way relating to coverage for Asbestos-Related Claims and other

products liability/completed operations claims under Policy 01 XN 150 WCA for the policy

years June 30, 1971 to June 30, 1972, and June 30, 1972 to June 30, 1973. In the event that

12 of 54

Travelers pays the products liability/completed operations aggregate limit of any other policy year under a Subject Insurance Policy, Grace, for itself, the Debtors and, to the extent it is legally able to bind them, for the Grace Group, and the Trust agree that Travelers will be fully released and discharged from any claims arising out of or in any way relating to coverage for Asbestos-Related Claims and any other claim under such Policy that is within the scope of the products liability/completed operations hazards under such Policy for such policy year. This release shall not apply to any obligations of Travelers under this Amended Agreement.

4.2.    Full Satisfaction Of Obligations. It is expressly agreed and understood by and between the Parties that Travelers obligations, if any, under the Subject Insurance Policies and Asbestos Exclusion Insurance Policies with respect to Asbestos-Related Claims will be fully satisfied by Travelers performance of its obligations under this Amended Agreement. Should any future obligation under the Subject Insurance Policies or Asbestos Exclusion Insurance Policies arise or be alleged to arise in connection with Asbestos-Related Claims, no member of the Grace Group or the Trust will assert that those obligations must be satisfied in whole or in part under the Subject Insurance Policies or the Asbestos Exclusion Insurance Policies, except in accordance with this Amended Agreement, since this Amended Agreement is a settlement of all such claims.

4.3.    Waiver Of Laws Limiting Scope Of Release. Grace, for itself, the Debtors and, to the extent it is legally able to bind them, for the Grace Group, and the Trust expressly assume the risk that there may be Asbestos-Related Claims that are unknown, unknowable, unforeseeable, unsuspected, undisclosed, hidden or concealed as to the Grace Group; that the injuries, damages, costs or liabilities sustained by it as a result of Asbestos-Related Claims may be greater than the Grace Group currently realizes; that the injuries, damages, costs or liabilities may increase in

13 of 54

amount or in severity over time; that the injuries, damages, costs or liabilities may be

progressive, cumulative, unknown, unknowable, unforeseeable, unsuspected, undisclosed,

hidden or concealed. Grace, for itself, the Debtors and, to the extent it is legally able to bind

them, for the Grace Group, and the Trust nevertheless waive, surrender and abandon any and all

rights under the Subject Insurance Policies and the Asbestos Exclusion Insurance Policies with

respect to such injuries, damages, costs and liabilities, except as set forth in this Amended

Agreement. Grace, for itself, the Debtors and, to the extent it is legally able to bind them, for the

Grace Group, and the Trust expressly waive any and all rights they may have under any statute,

code, ordinance or other law or jurisprudence which may limit or restrict the effect of a general

release as to injuries, damages, costs, liabilities or claims which, as to the releasor, are or may be

unknown, unknowable, unforeseeable, unsuspected, undisclosed, hidden or concealed at the time

of the execution of the release.

    4.4.    <u>Covenant Not To Sue Or File</u>. Subject to the terms hereof, this Amended

Agreement represents, and is intended to effectuate, the complete and final resolution of all

disputes between the Parties with respect to coverage for Asbestos-Related Claims under the

Subject Insurance Policies and the Asbestos Exclusion Insurance Policies. Therefore, without in

any way limiting the scope or effect of the releases provided in Paragraph 4.1, above, Grace, for

itself, the Debtors and, to the extent it is legally able to bind them, for the Grace Group, and the

Trust agree never to file or institute against Travelers any claim, allegation, demand, suit, action,

cause of action, or proceeding of any kind or nature whatsoever, whether at law, in equity or

otherwise, in or before any court, administrative agency, arbitral or alternative dispute resolution

panel or authority, or other tribunal wherever situated, asserting, directly or indirectly, any claim,

demand, right or cause of action of any kind or nature whatsoever, whether legal, equitable,

14 of 54

fixed, contingent, matured, unmatured, liquidated, unliquidated, foreseeable, unforeseeable,

known or unknown, suspected or unsuspected, disclosed or undisclosed, hidden or concealed,

whether on behalf of Grace, the Debtors, the Grace Group, the Trust or any Person not a

signatory to this Amended Agreement making a claim through or derived from any of the

foregoing, arising out of or in any way relating to coverage for Asbestos-Related Claims under

the Subject Insurance Policies or the Asbestos Exclusion Insurance Policies; provided, however,

that this covenant not to sue or file shall not apply to any action taken by Grace or the Trust to

enforce any obligation arising out of, or remedy any violation of, this Amended Agreement.

      4.5.    <u>Remedy For Breach Of Covenant</u>.  If any member of the Grace Group or the Trust

violates its covenant not to sue or file set forth in Paragraph 4.4, above, this Amended

Agreement may be pleaded in bar of any such claim, allegation, demand, suit, action, cause of

action or proceeding.

      4.6.    <u>Direct Action Reservation</u>.

      4.6.1.    Notwithstanding the foregoing, nothing in this Amended Agreement shall

constitute a release with respect to, or impair or affect the validity and enforceability of the

Statutory Direct Action Settlement Agreement, dated March 5, 2004 (as amended March 26,

2004) (the "Statutory Settlement"), the Hawaii Direct Action Settlement Agreement, dated

May 21, 2004 (the "Hawaii Settlement"), or the Common Law Direct Action Settlement

Agreement, dated May 21, 2004 (the "Common Law Settlement"), each as it may be

amended by the parties thereto, and each of which was the subject of the order issued in <u>In re</u>

<u>Johns-Manville Corp.</u>, 2004 WL 1876046 (Bankr. S.D.N.Y. Aug. 17, 2004) (No. 82 B

11656, 82 B 11661, 82 B 11675, 82 B 11657, 82 B 11665, 82 B 11676 (BRL), 82 B 11660,

32 B 11673), <u>aff'd in part, vacated in part</u>, In re Johns-Manville Corp., 340 B.R. 49

093810-0262-00880-Active.11753575.8

(S.D.N.Y. 2006), vacated by In re Johns-Manville Corp., 517 F.3d 52 (2d Cir. 2008), rev'd and remanded by Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195 (2009) ("Direct Action Order").

    4.6.2.   If the Statutory Settlement is not approved by a Final Order and fully funded by Travelers pursuant to its terms, then this Amended Agreement shall not affect any rights, claims or causes of action against asserted against Travelers (a) in (i) the lawsuits consolidated under In re Asbestos Unfair Trade Practices Insurance Cases, No. 02-C-700 (Circuit Court of Kanawha County, West Virginia), entitled Wise v. Travelers Indemnity Co. (Circuit court of Berkeley County, West Virginia), Wise v. OneBeacon Insurance Group (Circuit Court of Kanawha County, West Virginia), Meninger v. Travelers Indemnity Co. (Circuit Court of Kanawha County, West Virginia), and Adams v. Aetna Inc., Civil Action No. 02-C-1708 (Circuit Court of Kanawha County, West Virginia); or (ii) Cashman v. Travelers Indemnity Co., Civ. No. 02-2056-H (Superior Court of Suffolk County, Massachusetts 2002); or (b) in (i) an action which is a Statutory Direct Action Claim (as defined in the Statutory Settlement), and (ii) by any Person who would have met the criteria to receive a distribution as an Eligible Claimant (as defined in the Statutory Settlement) from funds created pursuant to the Statutory Settlement, had such settlement been finally approved and funded by Travelers; provided, however, this Paragraph 4.6.2 shall expire and become null and void if (x) the Direct Action Order becomes a Final Order and all payments by Travelers pursuant to the terms of the Statutory Settlement have been made, and/or (y) an order substantively the same in all material respects as the Direct Action Order becomes a Final Order and all payments by Travelers pursuant to the terms of the Statutory Settlement (as such may be amended by the parties thereto) have been made.

4.6.3.    If the Hawaii Settlement is not approved by a Final Order and fully funded by Travelers pursuant to its terms, then this Amended Agreement shall not affect any rights, claims or causes of action asserted against Travelers (a) in <u>Lorenzo Bachman v. Combustion Engineering, Inc.</u>, Case No. 03-00325, U.S. District Court for the District of Hawaii, and <u>George Toro v. Combustion Engineering, Inc.</u>, Case No. 03-00326, U.S. District Court for the District of Hawaii, or (b) in (i) an action brought under the statutes, laws, or regulations of Hawaii based on one or more legal theories substantially similar to those asserted in the lawsuits listed in Paragraph 4.6.3(a), and (ii) by any Person who would have met the criteria to receive a distribution as an Eligible Claimant (as defined in the Hawaii Settlement) from funds created pursuant to the Hawaii Settlement, had such settlement been finally approved and funded by Travelers; <u>provided, however,</u> this Paragraph 4.6.3 shall expire and become null and void if (x) the Direct Action Order becomes a Final Order and all payments by Travelers pursuant to the terms of the Hawaii Settlement have been made, and/or (y) an order substantively the same in all material respects as the Direct Action Order becomes a Final Order and all payments by Travelers pursuant to the terms of the Hawaii Settlement (as such may be amended by the parties thereto) have been made.

5.    **EXHAUSTION OF UNDERLYING INSURANCE COVERAGE, ALLOCATION OF PRIOR DEFENSE COSTS AND INDEMNITY CLAIMS**

5.1.    The Parties agree and acknowledge that the applicable products liability limits of the primary insurance policies issued to Grace by Continental Casualty Company (CNA), Maryland Casualty Company and Royal Indemnity Company, and any applicable products liability limits of the primary insurance policies that Grace has contended were issued to Grace by General Insurance Company of America and Travelers, have been fully and properly

17 of 54

exhausted. Grace represents and warrants, and Travelers agrees not to challenge, that for

purposes of this Amended Agreement: (i) Grace's remaining insurance coverage as of August 17,

2001 for Asbestos-Related Claims is deemed to exist only in the years, and only in the amounts,

set forth on Attachment A; (ii) the remaining insurance coverage reflected on Attachment A has

been determined after allocating to the primary insurance policies described above and the

Excess Insurance Policies the amounts paid by the Grace Group for Defense Costs and

Indemnity Payments for all Asbestos-Related Claims incurred through August 17, 2001; (iii)

Attachment A accurately allocates all Defense Costs and Indemnity Payments paid by the Grace

Group prior to August 17, 2001 with respect to Asbestos-Related Claims.

## 6.    DETERMINATION OF TRIGGERED POLICY YEARS (B.I.) AND ALLOCATION OF DEFENSE COSTS FOR BODILY INJURY CLAIMS

6.1.    Defense Costs paid after August 17, 2001 with respect to Bodily Injury Claims

shall be allocated among the Excess Insurance Policies as follows:

6.1.1.    The Trust shall determine, subject to review and audit by Travelers, the

Triggered Policy Year(s) (B.I.) for each individual injured person and all Defense Costs paid

by the Grace Group or the Trust with respect to the Bodily Injury Claims regarding such

injured person shall, as qualified by Subparagraphs 6.1.1.1 and 6.1.1.2, below, be allocated

equally among all Triggered Policy Years (B.I.).

6.1.1.1. The Parties acknowledge that law firms defending the Grace Group or the

Trust on multiple Bodily Injury Claims may submit a single bill covering

multiple cases and that the Trust will allocate such Defense Costs equally

among all open cases defended by each such law firm. Travelers agrees to

accept such allocation for purposes of this Agreement.

18 of 54

6.1.1.2. Defense Costs for a Bodily Injury Claim allocable to a Triggered Policy Year

(B.I.) shall be allocated to the lowest layer Excess Insurance Policy with

remaining products liability coverage (as reflected on Attachment A after

adjustment for Defense Costs and Indemnity Payments paid after August 17,

2001) for such Triggered Policy Year (B.I.). Upon exhaustion of the lowest

layer Excess Insurance Policy for a Triggered Policy Year (B.I.), Defense

Costs allocable to such Triggered Policy Year (B.I.) shall be allocated to the

next higher layer Excess Insurance Policy for such Triggered Policy Year

(B.I.). If the Excess Insurance Policy to which Defense Costs would be

allocated under this methodology is a Subject Insurance Policy, or if all layers

of insurance in a Triggered Policy Year (B.I.) have been exhausted in

accordance with the allocation methodology contained in this Agreement, or

(except as provided in Paragraph 9) if the Grace Group or the Trust otherwise

had no insurance coverage for Bodily Injury Claims during that policy year,

then Defense Costs allocable to such Triggered Policy Year (B.I.) shall be

reallocated equally to any remaining Triggered Policy Year(s) (B.I.) and, if

none exist, shall be borne by the Trust.

6.1.2.    The Trust shall determine the Triggered Policy Year(s) (B.I.) for each Bodily

Injury Claim based upon the best available documentation with respect to (i) the date of first

exposure by the injured person to a Grace Product, and (ii) the date of first diagnosis or

death, and based upon documentation that confirms the presence of a compensable asbestos-

related disease or injury. In the absence of other objective evidence, the Trust shall require

each injured person to provide: (a) an affidavit stating the first date of exposure to a Grace

Product which is alleged to have caused the injury or disease; (b) competent medical evidence that the injured person has sustained bodily injury, and, (c) where necessary due to the absence of objective evidence, an affidavit that states the date of diagnosis or death.

6.1.3.    The allocation of Defense Costs for Bodily Injury Claims shall reflect (i) the time on risk for each Excess Insurance Policy to which Defense Costs for a Bodily Injury Claim are to be allocated (in order to account for policies having a term of less than a full year and situations in which only a portion of a policy's term is triggered by a claim), and (ii) the participation percentage of each Excess Insurance Policy in the applicable layer of insurance coverage.

6.1.4.    In the case of a class action or consolidated case, Defense Costs shall be allocated on a claimant-by-claimant basis in accordance with the methodology contained in this Agreement to the extent the Trust possesses sufficient information to so allocate and, to the extent the Trust lacks sufficient information to allocate Defense Costs on a claimant-by-claimant basis, Defense Costs shall be calculated for the class or consolidation as a whole, rather than on a claimant-by-claimant basis, and shall be allocated, using the Bell Curve Allocation Method, to each year within the Coverage Block; provided, however, that if, for any particular year(s) within that period, (i) all layer(s) of Excess Insurance Policies have been exhausted in accordance with the allocation methodology contained in this Agreement, or (ii) the lowest unexhausted Excess Insurance Policy in a Triggered Policy Year (B.I.) is a Subject Insurance Policy, or (iii) if the Grace Group or the Trust (except as provided in Article 9) otherwise had no insurance coverage for Building Claims during that policy year, then Defense Costs allocable to such Triggered Policy Year (B.I.) shall be reallocated to all other year(s) within that period in proportion to the amounts of the respective shares of

20 of 54

Defense Costs allocable to such years under the Bell Curve Allocation Method and, if none

exists, shall be borne by the Trust.

## 7. **DETERMINATION OF TRIGGERED POLICY YEARS (B.I.) AND ALLOCATION OF INDEMNITY PAYMENTS FOR BODILY INJURY CLAIMS**

7.1.    Indemnity Payments paid after August 17, 2001, with respect to Bodily Injury

Claims shall be allocated among the Excess Insurance Policies as follows:

7.1.1.    The Trust shall determine, subject to review and audit by Travelers, the

Triggered Policy Year(s) (B.I.) for each individual injured person and all Indemnity

Payments paid by the Trust with respect to the Bodily Injury Claims regarding such injured

person shall be allocated equally among all Triggered Policy Years (B.I.).

7.1.2.    The Trust shall determine the Triggered Policy Year(s) (B.I.) for each Bodily

Injury Claim based upon the best available documentation with respect to (i) the date of first

exposure by the injured person to a Grace Product, and (ii) the date of first diagnosis or

death, and based upon documentation that confirms the presence of a compensable asbestos-

related disease or injury.  In the absence of other objective evidence, the Trust shall require

each injured person to provide: (a) an affidavit stating the first date of exposure to a Grace

Product which is alleged to have caused the injury or disease; (b) competent medical

evidence that the injured person has sustained bodily injury, and, (c) where necessary due to

the absence of objective evidence, an affidavit that states the date of diagnosis or death.

7.1.3.    Indemnity Payments for a Bodily Injury Claim allocable to a Triggered

Policy Year (B.I.) shall be allocated to the lowest layer Excess Insurance Policy with

remaining products liability coverage (as reflected on Attachment A after adjustment for

Defense Costs and Indemnity Payments paid after August 17, 2001) for such Triggered

21 of 54

Policy Year (B.I.). Upon exhaustion of the lowest layer Excess Insurance Policy for a Triggered Policy Year (B.I.), Indemnity Payments allocable to such Triggered Policy Year (B.I.) shall be allocated to the next higher layer Excess Insurance Policy for such Triggered Policy Year (B.I.). When all layers of insurance for a Triggered Policy Year (B.I.) have been exhausted, Indemnity Payments allocable to such Triggered Policy Year (B.I.) shall be borne by the Trust.

      7.1.4.    The allocation of Indemnity Payments for Bodily Injury Claims shall reflect (i) the time on risk for each Excess Insurance Policy to which Indemnity Payments for a Bodily Injury Claim are to be allocated (in order to account for policies having a term of less than a full year and situations in which only a portion of a policy's term is triggered by a claim), and (ii) the participation percentage of each Excess Insurance Policy in the applicable layer of insurance coverage.

      7.1.5.    In the case of a class action or consolidated case, Indemnity Payments shall be allocated on a claimant-by-claimant basis in accordance with the methodology contained in this Amended Agreement to the extent the Trust possesses sufficient information to so allocate and, to the extent the Trust lacks sufficient information to allocate Indemnity Payments on a claimant-by-claimant basis, Indemnity Payments shall be calculated for the class or consolidation as a whole, rather than on a claimant-by-claimant basis, and shall be allocated, using the Bell Curve Allocation Method, to each year within the period October 1957 to June 1985. When all layers of insurance for a Triggered Policy Year (B.I.) have been exhausted, all amounts allocated to that year under the Bell Curve Allocation Method shall be borne by the Trust.

093810-0262-00880-Active.11753575.8

## 8.    DETERMINATION OF TRIGGERED POLICY YEARS (P.D.) AND ALLOCATION OF DEFENSE COSTS AND INDEMNITY PAYMENTS FOR BUILDING CLAIMS:

8.1.    The Parties agree that the Trust will make no allocation of Defense Costs or

Indemnity Payments for any Building Claim to any Subject Insurance Policy or other Excess

Insurance Policy and will not seek to recover from Travelers any Defense Costs or Indemnity

Payments for any Building Claim.  For the avoidance of doubt, the Parties agree that Travelers

shall have no further obligation to make payments for Building Claims to the Grace Group or the

Trust, and no amounts shall be allocated under the Subject Insurance Policies for Building

Claims.

## 9.    GENERAL PROVISIONS REGARDING ALLOCATIONS

9.1.    It is the intent of the Parties to allocate Defense Costs and Indemnity Payments,

subject to the terms of this Paragraph 9, to the lowest layer Excess Insurance Policy in a

Triggered Policy Year (B.I.) that has products liability limits that have not been exhausted in

accordance with the terms of this Amended Agreement and/or by the proper allocation to that

policy of product liability claims that are not Asbestos-Related Claims.  Accordingly, allocation

of Defense Costs and Indemnity Payments for Bodily Injury Claims to Excess Insurance Policies

in each Triggered Policy Year (B.I.) shall be made notwithstanding either (i) the presence of

insurer insolvencies or (ii) failures or refusals by the insurers of triggered Excess Insurance

Policies to make payments in connection with such claims (for any reason including, but not

limited to, a contention by the insurer that the policy limits have been exhausted due to a prior

recovery by any member of the Grace Group or the Trust or another Person through settlement,

judgment or otherwise of amounts payable under the policy for Asbestos-Related Claims).  If

any insurer fails to reimburse the Trust for that insurer's allocation of Defense Costs or

23 of 54

Indemnity Payments as determined under this Amended Agreement, then the Trust shall be responsible for that particular allocation. Wherever the Trust is deemed to be responsible under this Amended Agreement for an insurer's allocation of any Defense Costs or Indemnity Payments, such insurer shall be deemed, for purposes of this Amended Agreement, to have paid such allocation for purposes of determining the exhaustion of policy limits of the Excess Insurance Policy to which such allocation was made. Nothing in this Amended Agreement shall be construed to limit in any way the Trust's ability to enforce its rights against any such non-paying insurer.

9.2.    Where, in accordance with the methodology contained in this Amended Agreement, an allocation of Defense Costs or Indemnity Payments is made to an Excess Insurance Policy that is not a Subject Insurance Policy, the allocation shall be treated, for purposes of this Amended Agreement, as if it will be paid under such Excess Insurance Policy up to its available limits, even if the insurer that issued such policy declines to pay the allocation established by this Amended Agreement, or has separately agreed with any member of the Grace Group or the Trust to make payments on some other basis under such Excess Insurance Policy. Travelers acknowledges that it is aware that members of the Grace Group or the Trust have entered into settlement agreements with the other insurers with regard to coverage of Asbestos-Related Claims under the Excess Insurance Policies, including a settlement with Underwriters at Lloyds/London, and that allocations of Defense Costs and Indemnity Payments under such other settlements may differ from the allocations to be made pursuant to this Amended Agreement.

9.3.    The amount of Defense Costs and Indemnity Payments paid by the Grace Group or the Trust after August 17, 2001 shall not be reduced by the amount of any proceeds or

093810-0262-00880-Active.11753575.8

recoveries that the Grace Group or the Trust may receive from other insurers under Excess

Insurance Policies, whether as a result of settlements with those insurers or otherwise.

## 10.    FUTURE PAYMENTS BY TRAVELERS TO THE TRUST

10.1.    The Parties agree that the Trust will make no allocation of Defense Costs or

Indemnity Payments for Asbestos-Related Claims to any Asbestos Exclusion Insurance Policy

and will not seek to recover any Defense Costs and/or Indemnity Payments incurred with respect

to the Asbestos-Related Claims from Travelers pursuant to an Asbestos Exclusion Insurance

Policy.

10.2.    The Parties agree that the Trust will make no allocation of Defense Costs to any

Subject Insurance Policy and will not seek to recover from Travelers any Defense Costs.

10.3.    Travelers authorizes the Trust to handle all Bodily Injury Claims.  Travelers shall

have neither the right nor the duty to assume charge of defending or handling any Bodily Injury

Claims.  The Trust shall have the right, without prior approval or consent of Travelers, to settle

any Bodily Injury Claim.

10.4.    On a quarterly basis, the Trust shall submit a report to Travelers, identifying

Defense Costs and Indemnity Payments for all Bodily Injury Claims that have been paid by the

Trust during the period covered by the report.  Said report shall identify for each Bodily Injury

Claim the name of the claimant or injured person, the Triggered Policy Year(s) (B.I.) and the

amount of any Indemnity Payments and the amount of any Defense Costs allocated thereto in

accordance with this Amended Agreement during the period covered by the report.  The report

shall further (i) sum the total Indemnity Payments allocated to each Triggered Policy Year (B.I.),

(ii) sum the total Defense Costs allocated to each Triggered Policy Year (B.I.), (iii) include an

093810-0262-00880-Active.11753575.8

updated version of Attachment A, adjusted to reflect the most current information, and (iv) specify the amount, if any, claimed to be due and owing under each Subject Insurance Policy.

10.5.    Within thirty (30) days of receipt by Travelers of a report setting forth the information specified in Paragraph 10.4, Travelers shall make any payment shown to be due to the Trust on such report.  If Travelers fails to pay its share of such payment to the Trust within sixty (60) days of such receipt, Travelers shall pay interest to the Trust on the unpaid amount thereof that is ultimately agreed or determined to be due the Trust for the period commencing on the thirty-first day after receipt of such billing and ending on the date of payment at the rate of interest announced from time to time during such period by the main office of Citibank, N.A. in New York, N.Y. as its "prime rate" plus two percentage points.  Any such interest payments shall not be counted in determining whether the aggregate limits of the Subject Insurance Policies have been exhausted and shall be in addition to such limits.  Should Travelers dispute any portion of the report, it shall pay any undisputed amounts due the Trust in accordance with this paragraph.  Travelers shall advise the Trust of any disputed items and cooperate with the Trust to resolve the dispute.  If the dispute is not promptly resolved, it will be referred to arbitration in accordance with Paragraph 19 of this Amended Agreement.  Interest as set forth in this paragraph shall continue to accrue on any disputed amounts that Travelers becomes obligated to pay.

10.6.    The Parties agree that allocations of Defense Costs and Indemnity Payments by the Trust for Bodily Injury Claims shall be presumed correct if made prior to the time when any Indemnity Payments are allocated to any of the Subject Insurance Policies.  Travelers retains the right, however, to dispute any such allocation in accordance with Paragraph 10.5.  In any such dispute, Travelers will bear the burden of proving that the allocation is erroneous.

10.7.    All payments by Travelers to the Trust shall be made in accordance with instructions provided to Travelers by the Trust concurrent with any request by the Trust for reimbursement from Travelers.

10.8.    For the avoidance of doubt, the Trust will not seek reimbursement from Travelers, and Travelers shall have no obligation to make payment to the Trust, with respect to (1) any Asbestos-Related Claims that are not Bodily Injury Claims; or (2) any Building Claims.

10.9.    Travelers shall not have the right to seek contribution or indemnity from other insurers of the Grace Group for the payments made to the Trust pursuant to this Amended Agreement, except that Travelers retains all rights to pursue any and all claims against its reinsurers and/or retrocessionaires in their capacities as such, even if such reinsurer or retrocessionaire is also an insurer of the Grace Group.  Notwithstanding the foregoing, if another insurer of the Grace Group pursues a claim sounding in contribution, subrogation, reimbursement, indemnification or otherwise against Travelers, then Travelers will be free to assert a claim sounding in contribution, subrogation, reimbursement, indemnification, reinsurance or otherwise against such other insurer, to the extent permitted by the Plan.  To the extent that Travelers recovers a judgment or settlement against such other insurer with respect to a payment made under this Amended Agreement, the net proceeds thereof (i.e. less any fees, costs and expenses incurred by Travelers in prosecuting and defending such claim) will be distributed promptly to Grace or, after the Effective Date, to the Trust.  Grace and the Trust will use their reasonable best efforts to obtain from all insurers with which they settle disputes regarding coverage for Asbestos PI Claims agreements similar to the conditions set forth in this Paragraph 10.9.

10.9.1.  Following the Effective Date, in the event that:

10.9.1.1.  any member of the Grace Group or the Trust and/or any other Person becomes entitled to receive a payment from one or more of the insurers other than Travelers for any claims that have been released and discharged as against Travelers pursuant to this Amended Agreement; and

10.9.1.2.  As a result of such other insurer's obligation to pay described in Paragraph 10.9.1.1 above, such insurer either:

    (a)  enters into a settlement with Travelers, which settlement has been consented to by any member of the Grace Group or the Trust and such other Person, requiring Travelers to reimburse some or all of the payment made or to be made by such insurer; or

    (b)  obtains a final, non-appealable judicial or quasi-judicial determination or award entitling such insurer to obtain a sum certain from Travelers for contribution, subrogation or indemnification or other similar claim, against Travelers for the latter's alleged share or equitable share, or to enforce subrogation rights, if any, relating to such payment referenced in Paragraph 10.9.1.1 above,

the Person entitled to receive such payment shall voluntarily reduce the amount of payment to be received by such Person by the amount necessary to reduce or eliminate such settlement, determination or award against Travelers.  To ensure that such a reduction is accomplished, Travelers shall be entitled to assert this Paragraph 10.9.1 as a defense to any action against it for any such portion of the determination or award against Travelers and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to

093810-0262-00880-Active.11753575.8

protect Travelers from any liability for the determination or award. In any proceeding against other insurers in which any member of the Grace Group or the Trust makes a claim for insurance rights or benefits for any claim that may give rise to the events referenced in Paragraph 10.9.1.1 above, notice will be provided to Travelers of such claim within thirty (30) days of the time any member of the Grace Group or the Trust first becomes aware that such claim is reasonably likely to result in a claim against Travelers and shall consent to Travelers intervention in any such proceeding to effectuate the intent of this Paragraph 10.9.1.

10.10.    The Trust will continue to provide Travelers with quarterly reports of new filings of Bodily Injury Claims and listings of claims paid during the quarter.

10.11.    Nothing in this Amended Agreement obligates Travelers to make payments on the Trust's behalf, as opposed to reimbursing the Trust, for monies the Trust has paid for Indemnity Payments.

## 11.    DISMISSAL OF COVERAGE ACTIONS

11.1.    The Parties acknowledge that the Coverage Actions have been dismissed with prejudice.

## 12.    COOPERATION ON DOCUMENT AND INFORMATION SHARING

12.1.    Cooperation. The Trust agrees to obtain and retain, or cause its counsel to obtain and retain, documents regarding the allocations for all Bodily Injury Claims. Travelers shall have the right at any time (including at such time(s) during which the Trust does not claim that Travelers has any existing payment obligation), upon reasonable notice and at Travelers expense, to review and obtain copies of all files of the Trust relating to the Bodily Injury Claims, including files containing the documents upon which the Trust relies in making such allocations in accordance with this Amended Agreement, and including files that might otherwise be subject

29 of 54

to the attorney-client privilege or work product doctrine. The Trust may fulfill its obligations under this Paragraph 12 by providing files in an electronic format acceptable to Travelers. The review permitted by this Paragraph 12.1, and any results of such a review shall not obligate the Trust to provide any information that it does not otherwise collect.

12.2.    Disclosure of Confidential Materials.    Travelers shall not provide any report, results, files, information or documents obtained by Travelers pursuant to this Paragraph 12 (the "Materials") to any other Person and shall keep the Materials confidential, except that Travelers may provide the Materials (i) to accountants, attorneys, auditors, other insurers, reinsurers, governmental authorities and other regulatory entities to which Travelers has a duty to report; (ii) as necessary to prove the exhaustion of the Subject Insurance Policies; (iii) to the Arbitrator in connection with a proceeding under Paragraph 19; (iv) with advance written notice to the Trust, when obligated pursuant to court order; and (v) with the prior written consent of the Trust; provided, however, that unless the disclosure of information is required by law, court order or prior contract, prior to any such disclosure, the Persons to whom the Material is to be disclosed pursuant to subparagraphs (i), (ii), (iii) and (v) shall be advised in writing of the confidentiality provisions set forth herein and Travelers shall undertake to attempt to secure such Persons' agreement to comply with such confidentiality provisions. Travelers shall exercise its best efforts to maintain the confidentiality of the Materials, including seeking a protective order in any proceeding in which it uses the Materials. In the event that disclosure of Materials is sought from Travelers pursuant to a lawful subpoena or other process, Travelers will promptly notify the Trust of the request for disclosure.

12.3.    Use of the Materials.    Travelers may use Materials solely in connection with:

    (a)    the Bankruptcy Case;

(b)     Travelers internal review and analysis;

(c)     in any proceeding to obtain reinsurance with respect to payments made pursuant to this Amended Agreement;

(d)     Travelers compliance with applicable laws or regulations; or

(e)     An arbitration proceeding pursuant to Paragraph 19.

12.4.   <u>Confidentiality Agreement</u>.  As soon as practicable following the Effective Date, Travelers and the Trust will enter into a written Confidentiality Agreement that will include the following provisions:

(a)     The Parties agree that the furnishing of Material by the Trust to Travelers will not affect the confidential nature of the Material or waive any applicable privileges or protections;

(b)     Travelers will implement adequate policies and procedures, including the erection of appropriate ethical walls, to ensure that the Material is not used in any manner other than as permitted under this Amended Agreement; and

(c)     Nothing in this Amended Agreement shall preclude Travelers from seeking information from the Trust by subpoena, discovery or other lawful means for use in connection with any policyholder other than Grace or any proceeding other than the Bankruptcy Case.

093810-0262-00880-Active.11753575.8

## 13.    **INDEMNIFICATION**

13.1.    Indemnifiable Claims.

13.1.1.  Following the Effective Date, from and after the time when Travelers has

paid to the Trust any portion of the products/completed operations aggregate limit of a

Subject Insurance Policy (other than the Subject Insurance Policy numbered 01 XN 150

WCA), the Trust shall indemnify and hold Travelers harmless from and against any and all

liability, loss, cost or expense (except as otherwise provided in the remainder of this

Paragraph 13) imposed upon or incurred by Travelers as a result of any claims, demands,

lawsuits, causes of action or proceedings that are asserted, initiated or continued by any

Person not a party to this Amended Agreement against Travelers that are based upon such

Subject Insurance Policy and constitute Asbestos PI Claims that are subject to the Asbestos

PI Channeling Injunction; provided, however, that the Trust's obligation to indemnify and

hold Travelers harmless pursuant to this Paragraph 13.1.1 shall be subject to an aggregate

limit equal to the aggregate amount reimbursed to Grace and/or the Trust by Travelers with

respect to that Subject Insurance Policy.  Once the Trust has paid or incurred liabilities,

losses, costs and expenses pursuant to this Paragraph 13.1.1 in an amount equal to the

amount paid to Grace and the Trust by Travelers with respect to a Subject Insurance Policy

(other than the policy numbered 01 XN 150 WCA), the Trust shall only be obligated to

indemnify Travelers with respect to such Subject Insurance Policy to the extent that

Travelers makes further payments to the Trust under that policy.

13.1.2.  The Trust shall indemnify and hold Travelers harmless from and against any

and all liability, loss, cost or expense (except as otherwise provided in the remainder of this

Paragraph 13) imposed upon or incurred by Travelers as a result of any claims, demands,

lawsuits, causes of action or proceedings that are asserted, initiated or continued by any Person not a party to this Amended Agreement against Travelers that are based upon Subject Insurance Policy numbered 01 XN 150 WCA and constitute Asbestos PI Claims that are subject to the Asbestos PI Channeling Injunction; provided, however, that the maximum amount that the Trust shall be required to expend to indemnify and hold Travelers harmless pursuant to this Paragraph 13.1.2 is the sum of $15,000,000, and the Trust's obligation to indemnify and hold Travelers harmless pursuant to this Paragraph 13.1.2 shall cease after the Trust has expended such sum.

13.1.3.  The Trust shall indemnify and hold Travelers harmless from and against any and all liability, loss, cost or expense (except as otherwise provided in the remainder of this Paragraph 13) imposed upon or incurred by Travelers as a result of any claims, demands, lawsuits, causes of action or proceedings that are asserted, initiated or continued by any Person not a party to this Amended Agreement, except another insurer, against Travelers that are based upon the Travelers Primary Policies that are the subject of the 1992 Agreement and constitute Asbestos PI Claims that are subject to the Asbestos PI Channeling Injunction; provided, however, that the maximum amount that the Trust shall be required to expend to indemnify and hold Travelers harmless pursuant to this Paragraph 13.1.3 is the sum of $9,500,000.00, and the Trust's obligation to indemnify and hold Travelers harmless pursuant to this Paragraph 13.1.3 shall cease after the Trust has expended such sum.

13.1.4.  The matters for which the Trust is obligated pursuant to this Paragraph 13.1 to indemnify and hold harmless Travelers are hereafter referred to as "Indemnifiable Claims." Notwithstanding anything in the foregoing to the contrary, Indemnifiable Claims shall not

include any claims within the scope of the Direct Action Reservation set forth at Paragraph 4.6 above.

13.2.    As soon as practicable after receipt by Travelers of notice of any complaint or the commencement (or for cases pending as of the date of this Amended Agreement, the continuation) of any action or proceeding that constitutes an Indemnifiable Claim, Travelers shall notify the Trust in writing of such Indemnifiable Claim and shall tender the defense thereof to the Trust. Any failure by Travelers to notify the Trust of any Indemnifiable Claim, or to tender the defense thereof to the Trust, shall relieve the Trust from any indemnification obligation with respect thereto.

13.3.    After the Trust receives any notice and tender of an Indemnifiable Claim pursuant to Paragraph 13.2, the Trust shall promptly notify Travelers whether the Trust will assume the defense of Travelers against such Indemnifiable Claim. If the Trust elects to assume the defense of such Indemnifiable Claim, the Trust shall select counsel to represent Travelers and the Trust shall assume the payment of the fees and disbursements of such counsel; provided, however, that the Trust's selection of counsel to represent Travelers shall be subject to the consent of Travelers, which consent shall not be unreasonably withheld. In any action or proceeding in which the Trust assumes the defense of Travelers, Travelers shall have the right to participate in such litigation and to retain its own counsel at Travelers own expense.

13.4.    The Trust and Travelers shall consult to the extent practicable about all decisions to be made, either procedural or substantive, pertaining in any material manner to Travelers in the defense of an Indemnifiable Claim assumed by the Trust pursuant to Paragraph 13.1. In the event the Trust and Travelers are unable to agree, the final decision with respect to the defense of Travelers, either procedural or substantive, shall rest with the Trust; provided, however, that

every decision regarding the positions to be taken on behalf of Travelers with respect to the meaning, construction and/or interpretation of any of the Subject Insurance Policies or any other Travelers insurance policy, or any term or provision thereof, shall be made by Travelers. The Trust shall keep Travelers apprised in a timely manner of all significant developments in such defense and shall provide Travelers, at its request, status reports that advise Travelers of such developments.

13.5.    Any settlement or compromise made by the Trust on behalf of Travelers shall not require Travelers approval, but shall provide that it is not an admission of liability by Travelers and is without precedent beyond the scope of the matters addressed by such compromise and settlement; provided, however, that the Trust will not settle or compromise any claim for an amount that exceeds the amount for which it will indemnify Travelers without first obtaining Travelers written approval for the settlement or compromise, which consent shall not be unreasonably withheld. The Trust shall use reasonable efforts to give timely notice to Travelers, to consider Travelers views, and to provide reasonable and timely disclosure as soon as is practicable to Travelers regarding any proposed settlement or compromise. The Trust shall use reasonable efforts to keep such settlement and compromise confidential.

13.6.    If the Trust declines to assume the defense of any Indemnifiable Claim, or fails to assume such defense in a timely manner, then Travelers may employ and exclusively direct counsel to defend against such Indemnifiable Claim, and Travelers shall be entitled to reimbursement from the Trust of all fees and disbursements of such counsel, provided, however, that the Trust shall be required to pay the fees and disbursements of the principal counsel selected by Travelers, but in no event more than one law firm in any single action or proceeding, or group of related actions or proceedings. If Travelers settles any such Indemnifiable Claim, in

35 of 54

which the Trust declines to assume Travelers defense, without previously obtaining the Trust's consent, which consent shall not be unreasonably withheld, then the Trust shall be relieved of any obligation to indemnify Travelers for such settlement. Travelers shall use reasonable efforts to keep such settlement or compromise confidential. Any dispute as to whether a matter is an Indemnifiable Claim and/or regarding the Trust's obligation to indemnify Travelers and to reimburse Travelers for its attorney's fees and disbursements shall be resolved in accordance with Paragraph 16 of this Amended Agreement.

13.7.    Nothing herein shall constitute any waiver of Travelers attorney-client privilege, which privilege shall extend only to such counsel retained to represent Travelers and shall not extend to the Trust or its counsel unless specifically waived by Travelers in writing with reference to a particular attorney-client communication.

13.8.    Travelers and the Trust shall cooperate reasonably with each other to protect their respective interests with respect to Indemnifiable Claims. If the Trust has assumed the defense of any action or proceeding, Travelers shall comply in a timely manner with its appointed counsel's reasonable requests for access to documentation or information for purposes of defense. The Trust shall cooperate with Travelers to avoid taking any positions on behalf of Travelers in such litigation which are adverse to the general business interests of Travelers. If the Trust has failed or declined to assume the defense of any action or proceeding, the Trust shall comply in a timely manner with any of Travelers requests for access to documentation or information requested by Travelers for purposes of such defense.

13.9.    For the avoidance of doubt, amounts paid by the Trust pursuant to this Paragraph 13 to or on behalf of Travelers in connection with Indemnifiable Claims shall be paid in full and

093810-0262-00880-Active.11753575.8

shall not be subject to any Payment Percentage as described in Section IV of the Trust Distribution Procedures.

13.10.    Following the Effective Date, any and all Claims or Demands by Travelers for liability, loss, cost or expense imposed upon or incurred by Travelers as a result of any claims, demands, lawsuits, causes of action or proceedings that are asserted, initiated or continued by any Person not a party to this Amended Agreement against Travelers that are based upon the Subject Insurance Policies and constitute Building Claims shall be Indirect PD Trust Claims, shall be the responsibility of the Asbestos PD Trust, and shall be handled by the Asbestos PD Trust pursuant to the Class 7A CMO procedures.  For the avoidance of doubt, if Travelers has Claims under the indemnity provisions in the 1996 Agreement that are based upon the Subject Insurance Policies and constitute Building Claims, such claims shall be Indirect PD Trust Claims which shall be paid pursuant to the procedures set forth in the Class 7A CMO.  Pursuant to the Class 7A CMO, all Allowed Asbestos PD Claims, including Indirect PD Trust Claims, will be paid in full.

## 14.    PUNITIVE DAMAGES

14.1.    Travelers shall have no obligation under the Subject Insurance Policies or otherwise to reimburse or indemnify Grace or the Trust for any amount that constitutes fines, penalties, punitive or exemplary damages, or any damages to the extent the amount is a multiple of the compensatory damages.

14.2.    For purposes of the allocation and exhaustion methodologies contained in this Amended Agreement , the Trust has not allocated, and shall not allocate, to any Excess Insurance Policy any amount that constitutes fines, penalties, punitive or exemplary damages, or any damages to the extent the amount is a multiple of the compensatory damages.

093810-0262-00880-Active.11753575.8

## 15.    **BANKRUPTCY-RELATED OBLIGATIONS**

15.1.    <u>Committee and Futures Representative Approval</u>.  By executing this Amended Agreement, Travelers confirms its receipt of the Committee's and Futures Representative's written approval of this Amended Agreement and the releases contained herein.

15.2.    <u>Approval Motion</u>.  Promptly following the Execution Date, Grace will prepare and file a motion seeking entry of the Approval Order with the Bankruptcy Court, which motion will be in form and substance satisfactory to the Parties.  Grace will use its reasonable best efforts promptly to obtain entry of the Approval Order, and promptly to obtain entry of the Approval Order as a Final Order.  Travelers, at its own expense, will cooperate with Grace in obtaining the Approval Order.

15.3.    <u>Order</u>.  Grace will use its reasonable best efforts to cause the Bankruptcy Court to enter an order providing, among other things:

        (a)    that the terms of this Amended Agreement are approved in their entirety, and that Grace is authorized to take all actions necessary to implement and effectuate the terms of the Amended Agreement;

        (b)    that this Amended Agreement will be designated an Asbestos Insurance Settlement Agreement and that Travelers will be designated a Settled Asbestos Insurance Company with respect to the claims released herein under the Subject Insurance Policies; and

        (c)    that the Trust, upon the Effective Date, will be bound by this Amended Agreement as a Party to this Amended Agreement.

15.4.    <u>Designation of Travelers as Settled Asbestos Insurance Company</u>.  Upon the Approval Order becoming a Final Order, Grace shall designate this Amended Agreement as an

38 of 54

Asbestos Insurance Settlement Agreement and Travelers as a Settled Asbestos Insurance

Company, with respect to the claims that are the subject of this Amended Agreement under the

Subject Insurance Policies, on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization.

    15.4.1.  Direct Action Reservation.

    15.4.1.1.  Notwithstanding the foregoing, no injunction sought by Grace in the

Bankruptcy Case will impair or affect the validity and enforceability of the

Statutory Direct Action Settlement Agreement, dated March 5, 2004 (as

amended March 26, 2004) (the "Statutory Settlement"), the Hawaii Direct

Action Settlement Agreement, dated May 21, 2004 (the "Hawaii Settlement"),

or the Common Law Direct Action Settlement Agreement, dated May 21, 2004

(the "Common Law Settlement"), each as it may be amended by the parties

thereto, and each of which was the subject of the order issued in In re Johns-

Manville Corp., 2004 WL 1876046 (Bankr. S.D.N.Y. Aug. 17, 2004) (No. 82

B 11656, 82 B 11661, 82 B 11675, 82 B 11657, 82 B 11665, 82 B 11676

(BRL), 82 B 11660, 32 B 11673), aff'd in part, vacated in part, In re Johns-

Manville Corp., 340 B.R. 49 (S.D.N.Y. 2006), vacated by In re Johns-Manville

Corp., 517 F.3d 52 (2d Cir. 2008), rev'd and remanded by Travelers Indem.

Co. v. Bailey, 129 S. Ct. 2195 (2009) ("Direct Action Order").

    15.4.1.2.  If the Statutory Settlement is not approved by a Final Order and fully

funded by Travelers pursuant to its terms, then the injunction sought by Grace

in the Bankruptcy Case shall not affect any rights, claims or causes of action

against asserted against Travelers (a) in (i) the lawsuits consolidated under In

re Asbestos Unfair Trade Practices Insurance Cases, No. 02-C-700 (Circuit

Court of Kanawha County, West Virginia), entitled <u>Wise v. Travelers</u> <u>Indemnity Co.</u> (Circuit court of Berkeley County, West Virginia), <u>Wise v.</u> <u>OneBeacon Insurance Group</u> (Circuit Court of Kanawha County, West Virginia), <u>Meninger v. Travelers Indemnity Co.</u> (Circuit Court of Kanawha County, West Virginia), and <u>Adams v. Aetna Inc.</u>, Civil Action No. 02-C-1708 (Circuit Court of Kanawha County, West Virginia); or (ii) <u>Cashman v.</u> <u>Travelers Indemnity Co.</u>, Civ. No. 02-2056-H (Superior Court of Suffolk County, Massachusetts 2002); or (b) in (i) an action which is a Statutory Direct Action Claim (as defined in the Statutory Settlement), and (ii) by any Person who would have met the criteria to receive a distribution as an Eligible Claimant (as defined in the Statutory Settlement) from funds created pursuant to the Statutory Settlement, had such settlement been finally approved and funded by Travelers; <u>provided, however,</u> the foregoing portion of this Paragraph 15.4.1.2 shall expire and become null and void if (x) the Direct Action Order becomes a Final Order and all payments by Travelers pursuant to the terms of the Statutory Settlement have been made, and/or (y) an order substantively the same in all material respects as the Direct Action Order becomes a Final Order and all payments by Travelers pursuant to the terms of the Statutory Settlement (as such may be amended by the parties thereto) have been made.

15.4.1.3.    If the Hawaii Settlement is not approved by a Final Order and fully funded by Travelers pursuant to its terms, then the injunction sought by Grace in the Bankruptcy Case shall not affect any rights, claims or causes of action asserted

093810-0262-00880-Active.11753575.8

against Travelers (a) in <u>Lorenzo Bachman v. Combustion Engineering, Inc.,</u> Case No. 03-00325, U.S. District Court for the District of Hawaii, and <u>George Toro v. Combustion Engineering, Inc.,</u> Case No. 03-00326, U.S. District Court for the District of Hawaii, or (b) in (i) an action brought under the statutes, laws, or regulations of Hawaii based on one or more legal theories substantially similar to those asserted in the lawsuits listed in Paragraph 15.4.1.3(a), and (ii) by any Person who would have met the criteria to receive a distribution as an Eligible Claimant (as defined in the Hawaii Settlement) from funds created pursuant to the Hawaii Settlement, had such settlement been finally approved and funded by Travelers; <u>provided,</u> <u>however,</u> the foregoing portion of this Paragraph 15.4.1.3 shall expire and become null and void if (x) the Direct Action Order becomes a Final Order and all payments by Travelers pursuant to the terms of the Hawaii Settlement have been made, and/or (y) an order substantively the same in all material respects as the Direct Action Order becomes a Final Order and all payments by Travelers pursuant to the terms of the Hawaii Settlement (as such may be amended by the parties thereto) have been made.

15.5.    <u>No Modification of Asbestos PI Channeling Injunction.</u>  Grace and, upon its creation, the Trust covenant that, from and after the Effective Date, they will take no action to terminate, reduce or limit the scope of the Asbestos PI Channeling Injunction so as to materially and adversely affect Travelers, except in accordance with Paragraph 15.6.3 below.

093810-0262-00880-Active.11753575.8

15.6.  Procedures Relating to Default.

15.6.1.  In the event that, at any time after the Effective Date, the Trust believes that Travelers has defaulted on any payment obligation under this Amended Agreement, the Trust will provide Travelers with written notice of default.  Travelers will have ninety (90) days to cure the default or dispute the default in writing.  In the event that Travelers disputes the default in writing within ninety (90) days, the Parties shall submit the dispute to arbitration pursuant to Paragraph 19.  In the event that Travelers fails to cure the default or to dispute the default in writing within ninety (90) days, the Trust may submit the matter to arbitration in accordance with Paragraph 19.

15.6.2.  In the event that, at any time after the Effective Date, Travelers believes that the Trust has defaulted on any obligation under this Amended Agreement, Travelers will provide the Trust with written notice of default.  The Trust will have ninety (90) days to cure the default or dispute the default in writing.  In the event that the Trust disputes the default in writing within ninety (90) days, the Parties shall submit the dispute to arbitration pursuant to Paragraph 19.  In the event that the Trust fails to cure the default or to dispute the default in writing within ninety (90) days, Travelers may submit the matter to arbitration in accordance with Paragraph 19.

15.6.3.  In the event that Travelers fails to pay any final, non-appealable award within thirty (30) days after such award is entered in an arbitration pursuant to Paragraph 12.6.1 (or within such shorter period of time as the Arbitrator may order), then the Trust may withdraw the designation of Travelers as a Settled Asbestos Insurance Company.  If at any time after the Trust has withdrawn the designation of Travelers as a Settled Asbestos Insurance

093810-0262-00880-Active.11753575.8

Company, Travelers provides documentation demonstrating that it has paid the outstanding award, Travelers shall be reinstated as a Settled Asbestos Insurance Company.

15.7.    <u>Trust as Party</u>.  Upon the Effective Date, the Trust automatically and without need for further action will become a Party to this Amended Agreement.

15.8.    <u>Suspension of Bankruptcy-Related Activities</u>.  Following the Execution Date, Travelers (1) will suspend prosecution of all of its objections to the Joint Plan of Reorganization or plan-related documents, to confirmation of the Joint Plan of Reorganization, or to the Debtors', Committee's or Futures Representative's motions or applications pending in the Bankruptcy Case (including any appeals of decisions in the Bankruptcy Case); (2) will suspend prosecution of Travelers Proof of Claim; (3) will take no further actions of any nature (including filing new objections to the Joint Plan of Reorganization and initiating or taking discovery) that may hinder, delay or oppose actions of Debtors, the Committee or the Futures Representative in the Bankruptcy Case; and (4) will not oppose the entry of a Confirmation Order; provided; however, that in the event that the Bankruptcy Court does not issue an Approval Order or the Approval Order does not become a Final Order, Travelers may renew prosecution of its objections and proof of claim, in which event any filing deadlines shall be deemed to have been tolled.  From and after the Execution Date, Grace will suspend any action on the Travelers Proof of Claim.

15.9.    <u>Withdrawal of Objections and Proof of Claim</u>.  Upon the Approval Order becoming a Final Order, Travelers shall withdraw all of its objections to the Joint Plan of Reorganization or plan-related documents, to confirmation of the Joint Plan of Reorganization and to the Debtors', Committee's or Futures Representative's motions or applications pending in the Bankruptcy Case (including any appeals of decisions in the Bankruptcy Case), and expressly

43 of 54

consents to the assignment of Asbestos Insurance Rights as provided in the Asbestos Insurance

Transfer Agreement, Exhibit 6 to the Joint Plan of Reorganization, and, upon the Effective Date,

Travelers Proof of Claim will be deemed withdrawn with prejudice; provided, however, (a) the

Approval Order must be entered on or before October 1, 2009 (subject to Travelers right to

waive or extend this condition); (b) the Approval Order must become a Final Order on or before

December 31, 2009 (subject to Travelers right to waive or extend this condition); and (c) the

withdrawal of objections called for by this Paragraph 15.9 shall not apply to any objections

asserted by Travelers with respect to the St. Paul appeal bond, which objections are addressed in

the stipulation between Grace and Travelers filed in the Bankruptcy Court on August 11, 2009.

## 16.    **TERMINATION**

16.1.    After the Execution Date, this Amended Agreement shall terminate upon the

occurrence of any of the following events:

> (a)    The failure of the Committee and the Futures Representative to consent in writing to the Amended Agreement on the Execution Date; or

> (b)    The entry of an order of the Bankruptcy Court denying approval of this Amended Agreement or the entry of an order by the District Court reversing the Approval Order; or

> (c)    The failure of the Effective Date to occur; or

> (d)    The entry of an order that becomes a Final Order stating that Travelers is not a Settled Asbestos Insurance Company or that this Amended Agreement is not an Asbestos Insurance Settlement Agreement; or

> (e)    The failure of Grace to designate this Amended Agreement as an Asbestos Insurance Settlement Agreement and Travelers as a Settled Asbestos

093810-0262-00880-Active.11753575.8