**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 01-01139 (JKF)<br>Jointly Administered |

**PROFFER OF TESTIMONY FROM THE HONORABLE ALEXANDER M. SANDERS, JR., ASBESTOS PD FUTURE CLAIMANTS' REPRESENTATIVE, IN SUPPORT OF CONFIRMATION OF FIRST AMENDED JOINT PLAN OF REORGANIZATION**

Alexander M. Sanders, Jr. hereby declares as follows:

<u>BACKGROUND AND QUALIFICATIONS</u>

1.      By an Order of the Bankruptcy Court dated October 20, 2008, later made nunc pro tunc as of September 22, 2008, I was appointed as the legal representative for future asbestos-related property damage claimants or holders of demands (the "Asbestos PD FCR").

2.      I submit this declaration in support of confirmation of the First Amended Joint Plan of Reorganization. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinion, based upon my experience and my involvement in Grace's Chapter 11 proceedings in my role as the Asbestos PD FCR. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

3.      I am the former Chief Judge of the South Carolina Court of Appeals and former Acting Associate Justice of the South Carolina Supreme Court. Prior to serving on the bench, I was a member of the South Carolina House of Representatives and a Member of the South Carolina Senate. I was also a candidate for the United States Senate in the State of South Carolina. I am President Emeritus of the College of Charleston.

4.    I am currently a shareholder in the law firm of Sanders & Nettles, LLC in Columbia, South Carolina.

5.    I also currently serve on the boards of various entities, including, until September 11, 2009, Armstrong World Industries, Inc.

## PROPERTY DAMAGE CLAIMS AGAINST GRACE

### Traditional Property Damage Claims

6.    According to the records of the Debtors, traditional asbestos property damage claims against Grace ("Traditional Asbestos PD Claims"), claims which allege damages caused by asbestos-containing products in commercial buildings, date back to the 1970s.

7.    The Bankruptcy Court set a bar date for Traditional Asbestos PD Claims of March 31, 2003 (the "Traditional PD Claims Bar Date"). By the Traditional PD Claims Bar Date, according to the docket in this case, over 4,000 Traditional PD Claims were filed.

8.    Following the Traditional PD Claims Bar Date, the Debtors sought to either settle or seek disallowance of the Traditional Asbestos PD Claims filed by the bar date. As a result of that process, by February 27, 2009, according to the bankruptcy court's records, all but 90 Traditional Asbestos PD Claims were disallowed. Aside from those which were subsequently expunged, virtually all of these remaining Traditional Asbestos PD Claims have been resolved pursuant to Court-approved settlement agreements that are contingent upon approval of a Section 524(g) plan.

## ZAI

9.    At the time of its Chapter 11 filing, several purported class actions were filed against Grace in various jurisdictions on behalf of owners of homes allegedly containing a loose-fill attic insulation product that allegedly contained some asbestos, manufactured by Grace and

commonly known as Zonolite Attic Insulation ("ZAI").  In these suits, the claimants were seeking property damages and other relief, including removal of ZAI from their homes.

10.     During the course of the Chapter 11 case, the Debtors asked the Court to set a litigation track for ZAI. Before setting a track for the ZAI litigation, the Court determined that it first needed to understand what these claims represented and directed litigation aimed at determining "whether ZAI posed an unreasonable risk of harm."  In order to assure that the ZAI claimants were adequately represented in the litigation, the Court appointed special counsel to represent the ZAI Claimants.  The litigation that ensued, referred to as the "Science Trial," was vigorously pursued by all parties.    Ultimately, on December 14, 2006, the Court issued an Opinion holding that, although ZAI contained asbestos and could release asbestos fibers when disturbed, there is no unreasonable risk of harm from ZAI.

11.     Following the Science Trial Opinion, important questions remained with respect to ZAI.  The Debtors suggested that the Court engage in common issue litigation in order to resolve legal issues, and they requested and obtained a bar date for ZAI claims.  In the spring of 2008, Grace and representatives of the ZAI Claimants also agreed to the appointment of a ZAI mediator, but mediation was not successful.

### GENESIS OF THE JOINT PLAN

12.     On April 6, 2008, the Debtors, the Asbestos PI Committee, the Asbestos PI FCR, and the Equity Committee entered into a term sheet respecting settlement of the Debtors' current and future liability on account of asbestos personal injury claims and began developing the Joint Plan. This term sheet contemplated that the Debtors and other key constituencies involved in the Joint Plan, including Sealed Air and Fresenius, would, pursuant to the Joint Plan receive the protection of a channeling injunction issued under Section 524(g) with respect to both Asbestos

-3-

Personal Injury and Asbestos Property Damage Claims.   One of the key elements of the term

sheet and later the Joint Plan is that the Joint Plan is to be funded in large part by Sealed Air and

Fresenius in accordance with settlements among the Official Committee of Personal Injury

Claimants, the Official Committee of Property Damage Claimants, Sealed Air, Fresenius and the

Debtors, which settlements were approved by the Court.   These settlements also require that in

return for these funds Sealed Air and Fresenius will pay to fund the Joint Plan, they will receive

protection from present and future Asbestos PI and Asbestos PD Claims pursuant to a channeling

injunction issued under Section 524(g).

13.    My appointment as the Asbestos PD FCR was sought in order to permit the

parties to address the interests of holders of future Asbestos PD Claims as required by Section

524(g). The Debtors approached me with respect to serving as the PD FCR in September of

2008, and this Court approved me as the PD FCR on October 20, 2008.

## DUE DILIGENCE AND NEGOTIATION

14.    Although prior to the time I began acting as the PD FCR the Plan Proponents had

filed a First Amended Joint Plan of Reorganization (the "Plan") on September 19, 2008, the

treatment of Property Damage Claims in the Plan was not finally decided.  Since September 22,

2008, I have been actively involved, with the advice and assistance of my counsel Alan Rich, in

a thorough examination of the property damage claims, including ZAI Claims, that have been

asserted against the Debtors, certain key settlements with third parties including Fresenius and

Sealed Air and the nature of the Debtors' discontinued Zonolite and Monokote businesses. I also

met with several of the Debtors' key officers and advisors. In addition, my counsel participated

in all discovery regarding Plan confirmation matters.  This was all done with the view of

negotiating the terms and conditions of an amended plan that would permit me to support the

- 4 -

entry of a channeling injunction under section 524(g) which treated the holders of future property damage claims against Grace fairly and equitably.

## THE PLAN'S TREATMENT OF ASBESTOS PD CLAIMS

15.    The Plan provides that all holders of future property damage claims and demands, if any (the "Asbestos PD Claims") will be paid through a Trust established under section 524(g) (the "Asbestos PD Trust").

### Treatment of Traditional Asbestos PD Claims (Class 7A)

16.    Class 7A consists of the Traditional Asbestos PD Claims, that is to say, all Asbestos PD Claims against the Debtors other than US ZAI PD Claims and Canadian PD ZAI Claims.  Under the Joint Plan, all current and future claims in Class 7A will be paid the full amount of their allowed claims.

17.    I participated in extensive negotiations with the Debtors with respect to the Joint Plan's treatment of future Traditional Asbestos PD Claims, and I had a significant role in drafting the operative legal documents that establish that treatment.  These include the Class 7A Case Management Order (the "Class 7A CMO") with respect to future claims, the PD Trust Agreement, the Class 7A Deferred Payment Agreements, and the provisions of the Plan concerning future Traditional Asbestos PD Claims.

18.    The Plan provides that each holder of a Traditional Asbestos PD Claim that is unresolved prior to the Plan's effective date shall be resolved pursuant to the Class 7A CMO. Under the Class 7A CMO, traditional PD Claims in Class 7A that were filed by the PD Bar Date and have been resolved through settlements or otherwise as of the Effective Date will be paid in cash in full by the Asbestos PD Trust on the Effective Date.  Class 7A Claims that are not settled or allowed as of the Effective Date and any Class 7A Claims presently on appeal that are later

- 5 -

remanded to the Bankruptcy Court will also be resolved pursuant to the procedures of the Class 7A CMO and will be paid in full the allowed amount of their claims by the Asbestos PD Trust. These procedures assure that all such Traditional Asbestos PD Claims will be treated in substantially the same manner in accordance with Section 524(g).

19.     Pursuant to the Class 7A CMO, future Traditional Asbestos PD Claims which are not subject to the Traditional PD Claims Bar Date will be resolved through lawsuits that may be commenced in this Federal District Court or any other Federal District Court that has jurisdiction. The Asbestos PD Trust is required to pay all allowed or settled future Traditional Asbestos PD Claims in full. Accordingly, future holders of Asbestos PD Claims will receive payment by the Asbestos PD Trust of 100% of their allowed claim, the same treatment as received by current claimants.

20.     Upon the Effective Date, the Asbestos PD Trust will receive a Class 7A Initial Payment which will consist of an amount in Cash equal to the sum of approximately $112 million, which consists of $93 million to pay in full amounts due under signed, court-approved PD Settlement Agreements and approximately $19 million in preliminary (not yet Court-approved) PD Settlement Agreements. The Class 7A Initial Payment will be largely funded by Sealed Air and Fresenius pursuant to their settlement agreements.

21.     Pursuant to the Class 7A Deferred Payment Agreement, Reorganized Grace will have continuing obligations to fund the Asbestos PD Trust so that the Trust can pay claimants an amount equal to the amount of all Asbestos PD Claims that were resolved in a manner requiring payment by the PD Trust, plus payment to the Trust of its administrative expenses. The Class 7A Deferred Payment Agreement is secured by 50.1% of the stock of Reorganized W.R. Grace

& Co.-Conn., as well as a guaranty by its parent, Reorganized W. R. Grace & Co., as set forth in the Plan and related Plan Documents.

## Treatment of ZAI claims (Class 7B)

22.    Class 7B represents all US ZAI PD Claims. US ZAI PD Claims will be paid pursuant to the ZAI TDP. I took a significant role in negotiating the settlement with current ZAI Claimants which forms the platform for the treatment of Class 7B under the Plan. I also assumed a key role in drafting the ZAI TDP, working closely with the Debtors and the class counsel to the ZAI Claimants. Under the ZAI TDP, the Debtors, Sealed Air, and Fresenius will make certain payments directly to the PD Trust on the Effective Date for payment of valid US ZAI PD Claims. In particular, on the Effective Date of the Joint Plan, the PD Trust will receive $30 million in cash, plus interest accrued at the same rate applicable to the Debtors' senior Exit Financing, from April 1, 2009 to the Effective Date, on account of US ZAI PD Claims to be transferred equally by Cryovac, Inc. and Fresenius directly the Asbestos PD Trust for the benefit of holders of US ZAI PD Claims and Demands in Class 7B. Pursuant to the Class 7B Deferred Payment Agreement, the Reorganized Debtors will make an additional $30 million payment three years after confirmation and, commencing five years after confirmation, will continue to make additional contingent payments of $8 million per year to the Asbestos PD Trust for US ZAI PD Claims for up to ten of the next twenty years that the fund falls below $10 million (i.e., a fund that can replenish ten times at $8 million each for a total future replenishment of $80 million), making the total cash outlay by Grace a minimum of $60 million and a maximum of $140 million. The Class 7B Deferred Payment Agreement is secured by 50.1% of the stock of Reorganized W. R. Grace & Co.-Conn and a guaranty by its parent, Reorganized W.R. Grace & Co., as is set forth in the Plan and Related Documents.

23.    Just as the treatment of Traditional Asbestos PD Claims under the Plan has been designed to satisfy Section 524(g)'s requirements, the ZAI TDP is structured so as to satisfy Section 524(g)'s requirements by providing mechanisms by which all valid current and future US ZAI PD Claims in Class 7B shall be treated and paid on substantially similar terms.

## THE ASBESTOS PD CHANNELING INJUNCTION

24.    The Joint Plan explicitly provides for the entry of a channeling injunction pursuant to section 524(g) of the Bankruptcy Code to implement the treatment of Asbestos PD Claims set forth in the Joint Plan. As a result, the Joint Plan specifies that the sole recourse of a holder of an Asbestos PD Claims or a future Asbestos PD Demand against the Asbestos Protected Parties as defined in the Joint Plan shall be to the Asbestos PD Trust.

25.    In my opinion, the Asbestos PD Channeling Injunction is fair and equitable to holders of future Asbestos PD Demands in light of the significant benefits provided to the Asbestos PD Trust on behalf of the parties who are receiving its protection, namely the Asbestos Protected Parties.

26.    In my opinion, the Joint Plan treats future holders of Traditional PD claims or demands and future holders of US ZAI claims or demands fairly and equitably and on terms substantially similar to the current Traditional PD Claims and current U.S. ZAI Claims, respectively, by providing mechanisms by which all valid current and future claims shall be treated and paid on substantially similar terms. I am also of the opinion, based upon my due diligence as described in Paragraph 14 above, the discovery undertaken and testimony provided in the case, and the initial and subsequent payments described in Paragraph 22 above, that holders of future PD claims or demands are reasonably assured of receiving the payments contemplated by the Joint Plan.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  September __, 2009

Alexander M. Sanders, Jr.