IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Re: Docket No. 22962 and |
| | ) | 9/29/09 Agenda Item No.: 10 |

# DEBTORS' BRIEF IN OPPOSITION TO FIREMAN'S FUND INSURANCE COMPANY'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

## PRELIMINARY STATEMENT

On March 28, 2000, a Texas court entered a judgment against W. R. Grace & Co. ("Grace") for $39,427,617.78 in an asbestos personal injury case (the "Edwards Case"). Grace filed a timely appeal from this judgment (the "Appeal"), and the prosecution of the Appeal has been stayed since Grace filed its chapter 11 cases on April 2, 2001. More than eight years after the stay took effect, and in the midst of a complex and lengthy process to confirm the First Amended Joint Plan of Reorganization (the "Plan"), a motion has been filed to lift the automatic

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

stay to allow the Appeal to proceed.[2] The lift-stay motion was filed -- not by the Edwards claimants -- but by Fireman's Fund Insurance Company ("FFIC"), a surety that posted a supersedeas bond to guarantee the judgment against Grace.[3]

Allowing the Appeal to proceed at this time would place the Debtors' estates at serious risk. Notably, FFIC asserts that it has a right to set off amounts owed under its liability policies issued to Grace against any amount that it is required to pay on the supersedeas bond that it issued to back the Edwards judgment. If FFIC is correct in asserting that it has such rights, and if the Appeal is affirmed, this would result in a dollar-for-dollar reduction in the value of the Debtors' estates of over $30 million.

In determining whether to lift the stay so that litigation can proceed against the Debtors, this Court has held that the moving party bears the "heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief."[4] Here, FFIC can make no such showing. With respect to the Appeal, lifting the stay in the midst of the confirmation process would place the Debtors' estates at risk of a substantial loss in value, and would cause a serious "distraction from the reorganization process."[5] By contrast, as explained in further detail *infra*, any purported prejudice to FFIC by leaving the stay in place is highly speculative, and is premised on numerous

---

[2] *See* Brief in Support of Fireman's Fund Ins. Co.'s Motion for Relief from the Automatic Stay to Allow Completion of Debtors' State Court Appeal from the Edwards Judgment and for Related Relief, August 25, 2009 [Dkt. 22962].

[3] *See generally id.* In order to procure the surety bond issued by FFIC, Wachovia issued a $13 million letter of credit with Grace as the applicant and FFIC as the beneficiary.

[4] *In re W. R. Grace & Co.*, No. 01-01139, 2007 WL 1129170, at *3 (Bankr. D. Del. April 13, 2007).

[5] *Id.*

false assumptions. Finally, FFIC's audacious request that the stay be lifted so that it may convert its contingent, unliquidated claim into a secured claim is plainly illegal and cannot form the basis for a proper request for stay relief.

## LEGAL STANDARDS

It is universally recognized that "[t]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws."[6] Congress intended that the automatic stay would "prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor."[7] These three central policies underlying the automatic stay apply "even when it is clear that another party will ultimately be responsible for payment [of a debt] as the result of a supersedeas bond."[8]

A creditor may move for relief from the stay, and the moving creditor bears the burden of showing "cause" for relief.[9] While the Bankruptcy Code does not define the term "cause," courts in the Third Circuit apply a three-factor balancing test to determine whether cause exists to lift the stay to allow litigation to proceed.[10] This test inquires whether:

---

[6] *See, eg., Assoc. of St. Croix Condominium Owners v. St. Croix Hospital Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) (quoting legislative history).

[7] *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *St. Croix Condominium Owners v. St. Croix Hotel,* 682 F.2d 446, 448 (3d Cir.1982)); *In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009).

[8] *Borman*, 946 F.2d at 1036.

[9] 11 U.S.C. § 362(d)(1); *In re Micro Design, Inc.*, 120 B.R. 363, 369 (E.D. Pa. 1990).

[10] *Eg., In re Rexene Prod. Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992).

1. Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;

2. the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship of the debtor, and

3. the creditor has a probability of prevailing on the merits.[11]

In applying these standards, this Court has found that the balance of equities favors the debtor when lifting the stay would cause "a distraction from the reorganization process."[12] Moreover, prejudice to a creditor must be tangible, and "[m]ere speculation about highly contingent possibilities of future prejudice does not demonstrate that lifting the stay is necessary . . . to prevent undue prejudice that would otherwise result."[13]

## ARGUMENT

I. **FIREMAN'S FUND CANNOT SATISFY THE HEAVY BURDEN OF PROVING THAT THE BALANCE OF HARDSHIPS TIPS SIGNIFICANTLY IN FAVOR OF GRANTING RELIEF WITH RESPECT TO THE EDWARDS JUDGMENT**

Applying the three-factor test for cause, it is clear that FFIC cannot meet the "heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief."[14] Specifically, lifting the stay to allow the Appeal to go forward would place the Debtors' estates at risk of a potential dollar-for-dollar reduction in value in excess of

---

[11] *Id.*

[12] *In re W. R. Grace & Co.*, 2007 WL 1129170, at *3.

[13] *380544 Canada, Inc. v. Aspen Tech., Inc.*, No. 07-1204, 2007 WL 2049738, at *3 (S.D.N.Y. July 18, 2007); *In re Refco*, No. 05-8626, 2006 WL 2337212, at *3 (S.D.N.Y. Aug. 8, 2006).

[14] *In re W. R. Grace & Co.*, 2007 WL 1129170, at *3; *In re Micro Design*, 120 B.R. at 369; *In re FRG*, 114 B.R. at 80.

$30 million, and would cause a significant distraction from the reorganization process. By contrast, FFIC has yet to pay a penny on its supersedeas bond, and allowing the stay to remain in place will cause no prejudice to FFIC. Finally, as FFIC agrees, the Edwards claimants have a relatively small chance of prevailing on the merits, because the trial in which the judgment in their favor was rendered was "infected with errors."[15]

FFIC reaches the untenable conclusion that there will be no prejudice to the Debtors if the appeal on a $43 million judgment -- which has been stayed for eight years -- is suddenly allowed to go forward in the midst of an extremely complex and demanding confirmation process. Moreover, FFIC jumps through numerous hoops to manufacture an argument that it will be prejudiced by the continuation of the stay, but fails to demonstrate that it will suffer any actual harm if the stay is not lifted. Finally, in arguing that "the *creditor* has a probability of prevailing on the merits," FFIC reverses the relevant inquiry. Instead of arguing, as required by the correct test, that the Edwards plaintiffs have a probability of success, FFIC argues that the *Debtor* has an excellent chance of prevailing on the merits, while the *creditors* in the action for which the stay is sought to be lifted have a correspondingly poor chance of prevailing. Thus, the chances of FFIC being prejudiced by allowing the Appeal itself to reach completion on the same schedule as all other stayed claims in these cases -- namely after the effective date of the Plan -- are by FFIC's own argument, remote.

### (a) *Contrary to FFIC's Contentions, Lifting the Stay at this Time Would Greatly Prejudice Grace*

The prejudice to Grace if the Appeal were allowed to proceed would be unnecessary and severe. Grace, which is currently managing the estate as the debtor in possession, has a duty to

---

[15] Brief in Support of FFIC's Motion for Relief from the Automatic Stay, at 9-10.

5

protect and conserve the assets of the estate, which assets include insurance policies issued by FFIC. Allowing the Appeal to proceed would place these assets at serious risk. If the Appeal is upheld and FFIC (i) draws down the Wachovia letter of credit; and (ii) is successful in asserting setoff rights against certain FFIC insurance policies, the value of the estate's assets could be reduced by over $30 million.

Moreover, the timing of FFIC's motion clearly poses maximum burden on the Debtors. Grace is currently in the midst of a lengthy and highly complex confirmation process. At issue in the Appeal is a matter in which Grace and the Asbestos PI Trust could have substantial exposure on a claim that has been pending for eight years. Requiring Grace to focus significant attention and resources on this matter at this time would be highly prejudicial to the Debtors, impairing both the Debtors' ability to successfully reorganize and to prosecute the Edwards appeal. And it would be to no useful end -- there is simply no realistic prospect that the Edwards litigation will reach a prompt conclusion if the stay is lifted.

FFIC bears the "heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief."[16] In applying this standard in this very case, this Court has held that lifting the stay on a matter that would cause "a distraction from the reorganization process" would prejudice the debtor such that granting stay relief would be inappropriate.[17] For example, in considering a motion to lift the stay to allow the State of Montana to join Grace as a defendant in actions filed against it, this Court found prejudice to the Debtors based in part on the fact that

---

[16] *In re W. R. Grace & Co.*, 2007 WL 1129170, at *3; *In re Micro Design*, 120 B.R. 363, 369 (E.D. Pa. 1990); *In re FRG, Inc.*, 114 B.R. at 80.

[17] *In re W. R. Grace & Co.*, 2007 WL 1129170, at *3.

lifting the stay would require key legal personnel Mark Shelnitz, Jay Hughes, and Richard Finke to assist counsel in litigating the actions.

Now, as then, these very same Grace lawyers are essential to the Debtors' reorganization efforts, and their time is substantially occupied with matters relating to Grace's reorganization.[18] In particular, as established in the declaration of Richard Finke, attached as <u>Exhibit A</u>, Grace's legal resources will continue to be substantially focused on reorganization regardless of the outcome of the Confirmation Hearing.[19] If the Plan is confirmed, preparation for proceedings before the District Court will be necessary, as required under § 524(g) of the Bankruptcy Code, as well as litigating any appeals.[20] Also, Grace's in-house lawyers would need to spend significant time working to consummate the Plan and take the Plan effective by the Effective Date.[21] If the Plan is not confirmed, extensive negotiations and re-drafting will be necessary, and will occupy the great majority of the time and attention of Grace's legal staff.[22] Also, Mark Shelnitz, Richard Finke, and Jay Hughes each have significant non-bankruptcy duties and responsibilities on top of their restructuring activities that are not stayed and cannot be deferred.[23]

---

[18] *See* Exhibit A, Declaration of Richard C. Finke in Support of Debtors' Brief in Opposition to Fireman's Fund Insurance Company's Motion for Relief from the Automatic Stay, at ¶¶ 5, 6.

[19] *Id.* at ¶ 6.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

Allowing the Appeal to proceed would divert the attention of these key employees to a matter which could be resolved after the Plan is consummated.[24] Prosecution of the Appeal would require a significant investment of resources. Among other things, Grace filed its initial brief in the matter over eight years ago.[25] Litigating the Appeal will certainly require re-evaluating that brief to determine whether further briefing would be necessary.[26] Moreover, Grace's personnel would need to assess the status of the Appeal, determine whether further briefing is required, assist outside counsel with preparation for oral argument, evaluate implications of the Appeal for any issues in this bankruptcy case, and evaluate the possibility of settlement in lieu of pursuing the Appeal.[27] Moreover, if further appeals are taken following disposition of the Appeal, additional work will be required.[28] Likewise, if a new trial is ordered, extensive oversight and preparation would be required to prepare to re-try the matter.[29]

FFIC cites several cases for the proposition that a debtor is not prejudiced when the stay is lifted to allow a case against a surety, insurer, or third party to proceed.[30] But FFIC neglects to mention the exception to this principle -- that even in cases involving sureties courts have found that the debtor is nonetheless prejudiced by lifting the stay if the debtor shares an "identity of interests" with the third party against which the action may proceed, such that "the debtor may

---

[24] *See id.* at ¶ 9.

[25] *Id.* at ¶ 7.

[26] *Id.*

[27] *Id.* at 8.

[28] *Id.*

[29] *Id.*

[30] *See* Brief in Support of FFIC's Motion for Relief from the Automatic Stay, at 16.

be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."[31] Here, the Debtor is in fact the "real party defendant" in the Edwards case.[32] Moreover, the "identity of interests" exception applies in this case because of FFIC's alleged indemnification rights against Grace.

A central policy underlying the automatic stay is to "avoid interference with the orderly liquidation or rehabilitation of the debtor."[33] Under Third Circuit law, this policy applies with equal force "even when it is clear that another party will ultimately be responsible for payment [of a debt] as the result of a supersedeas bond."[34] FFIC's untimely motion seeks relief that would place the Debtors' estates at risk of a substantial loss in value, and would interfere with the orderly reorganization of the debtor by causing a distraction from the reorganization process. Accordingly, FFIC's motion to lift the stay should be denied.

### (b) Any Prejudice to FFIC From the Continuation of the Stay is Highly Speculative

Contrary to the various assertions in its brief, FFIC is simply not prejudiced by a continued stay of the Appeal. Under the Plan, FFIC's surety claim will be channeled to the Asbestos PI Trust and treated as a Class 6 Claim. As such, its claim will not be subject to allowance or disallowance until the Edwards appeal is decided. When that happens, if the Appeal is decided in favor of the Edwards claimants, FFIC will retain all of its rights against the

---

[31] *In re Fernstrom Storage and Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991) (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1988)).

[32] *See id.*

[33] *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *St. Croix Condominium Owners v. St. Croix Hotel,* 682 F.2d 446, 448 (3d Cir.1982)); *In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009).

[34] *Borman*, 946 F.2d at 1036.

Wachovia letter of credit along with its setoff rights, if any, against the FFIC policies. Thus, whether the Appeal is decided sooner or later is of no consequence to FFIC.

The principal case cited by FFIC, *In re Kronemyer*, is readily distinguishable. While *Kronemyer* did involve a lift-stay motion filed by a surety to liquidate its claim, lifting the stay did not interfere with any reorganization proceedings because the case had already been converted to a chapter 7 before the motion was made.[35] Thus, FFIC has failed to cite any persuasive authority for the proposition that a creditor in its position is prejudiced by allowing the stay to continue.

        *(i)*     *FFIC's Desire to Be Classified in Class 9 Does Not Warrant Stay Relief*

FFIC proceeds on the assumption that the Plan must classify its claim in Class 9, thereby making it subject to disallowance under Bankruptcy Code section 502(e)(1). In making this argument, FFIC attempts to bootstrap its own arguments about classification to manufacture artificial prejudice. The Debtors have <u>not</u> proposed classification of FFIC's claim in Class 9, and FFIC fails to explain why it should be heard to propose treatment different from that accorded under the Plan, and then argue that a possible consequence of the treatment that *it has itself* proposed would be "prejudicial" so as to merit stay relief. It is also unclear that FFIC will ever have a claim based on its surety bond. FFIC will only have such a claim against Grace to the extent that: i) the Edwards judgment is upheld in whole or in part; ii) FFIC pays the Edwards judgment; and iii) the amount paid by FFIC exceeds the amount that it is able to recover against the Wachovia letter of credit.[36] Thus, FFIC's allegations of purported prejudice depend on the

---

[35] *See In re Kronemyer*, 405 B.R. 915, 918 (9th Cir. B.A.P. 2009).

[36] *See* Brief in Support of FFIC's Motion for Relief from the Automatic Stay, at 8.

occurrence of three separate contingencies, plus the re-classification of its claim into Class 9. As such, FFIC's arguments amount to no more than "[m]ere speculation about highly contingent possibilities of future prejudice," and should be rejected.[37]

> (ii) *FFIC's Indemnity Agreement Does Not Require Grace to Consent to Lift the Stay*

FFIC also argues that a particular provision of its indemnity contract may be construed to require Grace to consent to its lift-stay motion. This provision purportedly authorizes FFIC to "take such steps . . as the Surety may deem necessary or proper to obtain release from liability from any such Bond."[38] As a preliminary matter, this language simply does not require Grace, as a debtor in possession, to consent to lift the stay. Indeed, by its own words this clause does not require Grace to do anything; rather, it purports to authorize FFIC to take certain actions to obtain a release of liability under its bond. Also, FFIC's argument incorrectly assumes that a prepetition agreement to lift the stay -- even if one had been reached -- would be enforceable against Grace, as a debtor in possession, in this case. This assumption is simply false. Prepetition agreements to lift the stay are seldom enforceable, having generally been held to be either unenforceable *per se*, or enforceable only in cases where there was no prospect for a successful reorganization.[39] Here, it is clear that Grace has excellent prospects of reorganizing,

---

[37] *See 380544 Canada, Inc. v. Aspen Tech., Inc.*, No. 07-1204, 2007 WL 2049738, at *3 (S.D.N.Y. July 18, 2007); *In re Refco*, No. 05-8626, 2006 WL 2337212, at *3 (S.D.N.Y. Aug. 8, 2006).

[38] *Id.* at 19.

[39] *In the Matter of Merle*, 195 B.R. 431, 435 (Bankr. D. Neb. 1996) (rejecting Bank's argument that contractual provision required debtor to consent to lift-stay motion, and holding that "provisions in private pre-bankruptcy agreements, which purport to waive the automatic stay or provide that a debtor will not resist a motion for relief from stay, **are not enforceable, per se, as a matter of federal bankruptcy law**") (emphasis added); *Farm Credit of Cent. Florida*, 160 B.R. 870, 872-73 (M.D. Fla. 1993) (holding that prepetition agreement to lift the stay was unenforceable where debtor operated business enterprises that "employ[ed] a number of people, generate[d] substantial income, and involve[d] the types of activity for which Chapter 11 was designed").

and no agreement to consent to lift the stay, no matter how explicit, could be enforceable against Grace.

                (iii)    *FFIC's Setoff Rights, if any, Do Not Warrant Lifting the Stay*

FFIC next makes the erroneous argument that its alleged right to setoff is entitled to adequate protection. At present, FFIC has no right to setoff that would require adequate protection.[40] Moreover, FFIC cites no authority for the proposition that a right to setoff could ever be entitled to adequate protection. Section 361 of the Bankruptcy Code, which controls rights to adequate protection, states that adequate protection may be provided when required under sections 362, 363, or 364. Section 361 does not mention section 553, which preserves setoff rights in bankruptcy. This omission is perfectly logical. Adequate protection under section 361 is appropriate when the value of a secured creditor's collateral is declining due to use, sale, or lease and protection of the value of the collateral as of the petition date is necessary.[41] The value of a creditor's right to setoff, by definition, cannot decline by the debtor's use, sale, or lease, because the "collateral" is in fact cash held in the hands of the creditor itself. As such, FFIC's purported right to setoff falls outside the scope of section 361, and is not entitled to adequate protection. Indeed, even if FFIC were entitled to invoke section 361, for this very reason -- that it already holds the purported collateral at issue -- FFIC has no need for such protection.

---

[40] FFIC takes the untenable position that its setoff rights are not contingent despite openly acknowledging that its claim against Grace, if any, is subject to at least four contingencies. Brief in Support of FFIC's Motion for Relief from the Automatic Stay, at 8.

[41] *See* 11 U.S.C. § 361 (requiring adequate protection when the use, sale, or lease of property held as collateral causes the value of such collateral to decline).

### (iv) FFIC's Allegation that Its Indemnification Contract Is Executory Does Not Warrant Lifting the Stay

Finally, FFIC argues that "the stay should be lifted to the extent that the indemnity agreement is an executory contract," because Grace cannot assume this contract "without first providing FFIC with adequate assurance that Grace will perform its obligations" under the agreement.[42] Setting aside the fact that Grace has *not* attempted to assume the indemnity agreement with FFIC, section 365(b) only requires adequate assurance of performance when there has been a default under the contract.[43] Here, there has been no such default, as FFIC has not yet demanded -- and has no present right to demand -- indemnification under the agreement.

In light of the policies implemented by the stay, it is a logical and self-evident principle that "[m]ere speculation about highly contingent possibilities of future prejudice does not demonstrate that lifting the stay is necessary ... to prevent undue prejudice that would otherwise result."[44] FFIC has failed to demonstrate actual prejudice to its interests under the Plan. Rather, its arguments amount to no more than speculation and bootstrapping, and fall far short of meeting FFIC's "heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief."[45]

---

[42] Brief in Support of FFIC's Motion for Relief from the Automatic Stay, at 21.

[43] *See* 11 U.S.C. § 365(b)(1) ("**If there has been a default in an executory contract** ... the trustee may not assume the contract unless ... [the trustee provides] adequate assurance") (emphasis added).

[44] *380544 Canada, Inc. v. Aspen Tech., Inc.*, 2007 WL 2049738, at *3; *In re Refco*, 2006 WL 2337212, at *3.

[45] *In re W. R. Grace & Co.*, No., 2007 WL 1129170, at *3; *In re Micro Design*, 120 B.R. at 369; *In re FRG*, 114 B.R. at 80.

### (c) The Debtors' High Probability of Success on the Merits of the Appeal Weighs Against Lifting the Stay

The Debtors applaud FFIC's persuasive and thoroughly expounded arguments supporting the merits of the Debtors' arguments in the Edwards appeal. But like a basketball player who has scored an impressive dunk on his own basket, FFIC has failed -- albeit convincingly -- to hit the proper mark.

The relevant inquiry under the third prong is "whether the **creditor** has a probability of prevailing on the merits."[46] FFIC argues, and the Debtors agree, that Grace has a high probability of succeeding in the Appeal, and therefore the Edwards claimants have a correspondingly poor chance of prevailing on the merits.[47] But FFIC, without citing any authority for its re-invention of the law, re-casts the third prong of the test for cause under section 362(d) as inquiring "whether the **litigation** for which stay relief is requested has some likelihood of success on the merits."[48] This is simply not the proper test. Rather, as articulated above, the correct standard looks to the underlying adversary's (the creditor's) probability of success on the merits, here, the Edwards claimants, not to whether the likely outcome will be favorable to a surety or some other third party. As noted above, FFIC itself agrees that the Edwards claimants have a poor chance of success in the appeal.[49] For this reason alone, FFIC's motion to lift the stay to allow the appeal to proceed should be denied.[50]

---

[46] *Rexene*, 141 B.R. at 577 (emphasis added).

[47] *See* Brief in Support of FFIC's Motion for Relief from the Automatic Stay, at 9-10, 22-23.

[48] *See id.* at 22 (emphasis added).

[49] *See supra*, p. 5.

[50] Because FFIC has clearly failed to satisfy the prevailing three-prong test for cause, it is unnecessary to examine any further considerations. However, an analysis of the twelve factors from Second Circuit's decision in *Sonnax*

## II. FFIC'S ILLEGAL REQUEST THAT THE STAY BE LIFTED SO THAT IT MAY CONVERT A CONTINGENT AND UNLIQUIDATED CLAIM INTO A SECURED CLAIM IS IMPROPER

One of the central policies of the automatic stay is to "prevent certain creditors from gaining a preference for their claims against the debtor."[51] "[T]he transfer of any security interest that converts an unsecured creditor into a secured creditor [enables] that creditor to receive a greater percentage of its claim than other creditors in its class."[52] Thus, under core principles of bankruptcy law, any attempt by a creditor to lift the stay to seize collateral to convert a contingent and unliquidated claim into a secured claim is plainly illegal and should be rejected.

FFIC asserts that the stay should be lifted to allow it to pursue its purported contractual right to demand that Grace place it "in funds" to assure payment of its obligations. At bottom, this amounts to a request that the Court allow FFIC to seize property of the estate as collateral for its contingent and unliquidated claim, thereby converting it into a secured claim.[53] This request

---

also weighs against granting relief from the stay. *See In re SCO Group*, 395 B.R. 852, 857 (Bankr. D. Del. 1997) (citing *In re Sonnax Indus. Inc.*, 907 F.2d 1280, 1287 (2d Cir. 1990). Importantly, factors 1, 2, 3, 5, 6, 11 and 12 weigh against relief because 1) relief would be unlikely to expeditiously resolve issues raised in the Edwards appeal; 2) allowing the appeal to go forward would interfere with the Debtors' reorganization efforts; 3) the proceeding involves the debtor as a primary defendant, not as a mere fiduciary; 5) no insurer has assumed primary responsibility for the Debtors' defense; 6) the action does not primarily involve third parties, as Grace is the defendant; 11) the appeal is not ready for determination, as it has been stayed for over eight years, and recommencing the case at this point would require a full re-examination of the issues; and 12) as explained in detail *supra*, the balance of harms weighs against granting the motion.

[51] *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *St. Croix Condominium Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir.1982)); *In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009).

[52] *In re Kroh Bros. Dev. Co.*, 86 B.R. 186, 189 (W.D. Mo. 1988) (citing *Deel Rent-A-Car, Inc. v. Levine*, 16 B.R. 873, 875 (S.D. Fl. 1982)).

[53] FFIC's contingent claim will only be secured to the extent that it is able to prove setoff rights. FFIC currently has no right to setoff and it is not clear it will ever have such a right, and the Debtors expressly reserve all arguments in that regard. Also, FFIC's interest in the Wachovia letter of credit does not make FFIC a secured party for purposes of the Bankruptcy Code -- Grace, as a mere applicant for the letter of credit, has no interest in its proceeds and FFIC therefore has no security interest in any property of the estate. *See* 11 U.S.C. § 506(a)(1) (a creditor's claim is secured "to the extent of the value of such creditor's interest in the estate's interest in such property").

is clearly improper. Considering a similar request, the court in *In re Adelphia Communications* denied a creditor's motion to lift the stay.[54] In *Adelphia*, the creditor moved for stay relief, claiming that it had a right of setoff based on a disputed claim against the debtor.[55] The creditor moved to lift the stay so that it could set off or recoup an amount owed to it by the debtor against the amount that it allegedly owed.[56] Finding that the creditor had failed to show cause to lift the stay, the bankruptcy court denied stay relief, finding that it would be "highly detrimental to unsecured creditors to elevate [] unproven and unliquidated claims asserted by [the creditor] to secured status."[57] The bankruptcy court also found that the creditor lacked a valid right to setoff because its claim against the estate was disputed, and not a liability absolutely owed.[58] The district court affirmed the bankruptcy court's rulings.[59]

Here, FFIC's asserted claim is likewise unliquidated and contingent. It would be contrary to the fundamental policies underlying the automatic stay and the Bankruptcy Code to lift the stay to allow FFIC to help itself to collateral in which it currently holds no interest.[60] This analysis also squares with the proposition that a creditor that has failed to perfect its security interest before filing is not entitled to stay relief to allow it to repossess its collateral.[61]

---

[54] *In re Adelphia Commc'ns Corp.*, No. 02-Civ.-9770, 2006 WL 1559437, at *3 (S.D.N.Y. 2006).

[55] *Id.* at *1.

[56] *Id.*

[57] *Id.* at 3.

[58] *Id.* at 4.

[59] *Id.* at 6.

[60] *See Borman v. Raymark Indus., Inc.*, 946 F.2d at 1036; *In re DBSI, Inc.*, 407 B.R. at 166.

[61] *See, eg., In re Mid-Missouri Energy Corp.*, 34 B.R. 58, 60 (W.D. Mo. 1983).

A central policy of the Bankruptcy Code is "[e]quality of distribution among creditors."[62] In particular, equality is a key policy underlying the automatic stay.[63] If creditors -- sureties or otherwise -- were granted stay relief to seize property of the estate as collateral for contingent and unliquidated claims, any prospect of orderly reorganization and equality of distribution would be destroyed. Thus, FFIC's motion is contrary to well-settled law and the fundamental policies of the Bankruptcy Code, and, therefore, should be soundly rejected.

## CONCLUSION

FFIC bears the heavy burden of showing that cause exists to lift the stay.[64] FFIC's motion comes in the midst of the confirmation process, and seeks both to allow a complex, distracting, and long-stayed appeal -- to which it is not a party -- to proceed, and to allow it to seize collateral to convert its contingent and unliquidated claim into a secured claim. FFIC's latter request is wholly improper under bankruptcy law, and it has failed to demonstrate any prejudice to its interests will occur if the Appeal is not lifted at this time. Therefore, FFIC's lift-stay motion should be denied.

---

[62] *In re Combustion Eng'g*, 391 F.2d 190, 239 (3d Cir. 2004).

[63] *Borman v. Raymark Indus., Inc.*, 946 F.2d at 1036.

[64] *In re W. R. Grace & Co.*, 2007 WL 1129170, at *3; *In re Micro Design*, 120 B.R. at 369; *In re FRG*, 114 B.R. at 80.

WHEREFORE, the Debtors respectfully request entry of an order DENYING FFIC's motion to lift the stay.

A proposed order in the form requested by the Debtors is attached as Exhibit B.

Dated: September 16, 2009

Respectfully submitted,

KIRKLAND & ELLIS LLP

David M. Bernick, P.C.
Theodore Freedman
Nathaniel J. Kritzer
Citigroup Center
601 Lexington Ave.
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900


THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
70 W. Madison St.
Suite 2100
Chicago, IL 60602
Telephone: (312) 641-2162
Facsimile: (312) 641-2165

and

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Kathleen P. Makowski*
_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
joneill@pszjlaw.com
kmakowski@pszjlaw.com

*Co-Counsel for the Debtors and Debtors in Possession*