*This is Exhibit* C *referred to in the affidavit of* Orestes Pasparakis *sworn before me, this* 15th *day of* September *20*09

[signature]
A COMMISSIONER FOR TAKING AFFIDAVITS

[Indexed as: **Grace Canada Inc., Re**]

IN THE MATTER OF S. 18.6 OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36, as amended

AND IN THE MATTER OF GRACE CANADA, INC.

Ontario Superior Court of Justice [Commercial List]

Morawetz J.

Heard: September 30, 2008

Judgment: October 23, 2008

Docket: 01-CL-4081

Derrick C. Tay, Orestes Pasparakis, Jennifer Stam for Grace Canada Inc.
Keith J. Ferbers for Raven Thundersky
Alexander Rose for Sealed Air (Canada)
Michel Bélanger, David Thompson, Matthew G. Moloci for CDN ZAI Claimants
Jacqueline Dais-Visca, Carmela Maiorino for Attorney General of Canada

**Bankruptcy and insolvency — Proposal — Companies' Creditors Arrangement Act — Miscellaneous issues** — Faced with product liability suits U.S. parent of applicant G Inc. filed for Chapter 11 re-organization — G Inc. spun off subsidiary SA and provided SA with indemnities relating to asbestos liabilities arising from attic insulation — G Inc commenced proceedings under Act seeking ancillary relief to facilitate and coordinate U.S. proceedings in Canada — Several proposed class actions were commenced in Canada and by court order were enjoined and brought within restructuring process — Representative counsel were appointed to represent claimants in restructuring — Minutes of settlement were reached settling all Canadian claims — Minutes contained provisions for relief in favour of SA and Crown — Crown objected to language of release removing claim over for contribution and indemnity — Minutes were submitted for court approval — The minutes were approved — Representative counsel had been given broad powers by court order to negotiate on behalf of Canadian claimants so had authority to enter the minutes of settlement — Court had power to approve material agreements including settlement agreements before filing of any plan of compromise or arrangement — SA had contributed to settlement funds — Release not only necessary and essential but fair — Crown's release also necessary otherwise G Inc. could become indirectly liable through contribution and indemnity claims — Minutes released any claims for which Crown had right of contribution or indemnity — Since company released from claims Crown had no need to claim over — Minutes were to be approved or rejected as whole — Approval of minutes fair and reasonable especially given that company could have defended on limitation period and that U.S. bankruptcy court had determined that attic insulation did not pose unreasonable risk — Court awarded compensation to representative counsel, claims administrator and qualified expert in amount of $3,250,000.

**Cases considered by *Morawetz J.*:**

*Association des consommateurs pour la qualité dans la construction v. Canada (Attorney General)* (2005), 2005 CarswellQue 10587 (Que. S.C.) — referred to

*ATB Financial v. Metcalfe & Mansfield Alternative Investments II Corp.* (2008), 2008 CarswellOnt 3523, 43 C.B.R. (5th) 269, 47 B.L.R. (4th) 74 (Ont. S.C.J. [Commercial List]) — referred to

*ATB Financial v. Metcalfe & Mansfield Alternative Investments II Corp.* (2008), 2008 ONCA 587, 2008 CarswellOnt 4811, (sub nom. *Metcalfe & Mansfield Alternative Investments II Corp., Re)* 240 O.A.C. 245, (sub nom. *Metcalfe & Mansfield Alternative Investments II Corp., Re)* 296 D.L.R. (4th) 135, 45 C.B.R. (5th) 163, 47 B.L.R. (4th) 123 (Ont. C.A.) — referred to

*ATB Financial v. Metcalfe & Mansfield Alternative Investments II Corp.* (2008), 2008 CarswellOnt 5432, 2008 CarswellOnt 5433 (S.C.C.) — referred to

*Calpine Canada Energy Ltd., Re* (2007), 2007 CarswellAlta 1050, 2007 ABQB 504, 35 C.B.R. (5th) 1, 415 A.R. 196, 33 B.L.R. (4th) 68 (Alta. Q.B.) — considered

*Calpine Canada Energy Ltd., Re* (2007), 35 C.B.R. (5th) 27, 410 W.A.C. 25, 417 A.R. 25, 2007 ABCA 266, 2007 CarswellAlta 1097, 80 Alta. L.R. (4th) 60, 33 B.L.R. (4th) 94 (Alta. C.A. [In Chambers]) — referred to

*Canadian Red Cross Society / Société Canadienne de la Croix-Rouge, Re* (1998), 1998 CarswellOnt 3346, 5 C.B.R. (4th) 299, 72 O.T.C. 99, [1998] O.J. No. 3306 (Ont. Gen. Div. [Commercial List]) — considered

*Muscletech Research & Development Inc., Re* (2007), 30 C.B.R. (5th) 59, 2007 CarswellOnt 1029, [2007] O.J. No. 695 (Ont. S.C.J. [Commercial List]) — referred to

**Statutes considered:**

*Bankruptcy Code*, 11 U.S.C. 1982

Chapter 11 — referred to

*Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36

Generally — referred to

s. 18.6(3) [en. 1997, c. 12, s. 125] — considered

s. 18.6(4) [en. 1997, c. 12, s. 125] — considered

MOTION to seek approval of minutes of settlement.

***Morawetz J.*:**

1 Grace Canada Inc. ("Grace Canada" and with the U.S. debtors, "Grace") bring this motion to seek approval of the Minutes of Settlement ("the Minutes") in respect of claims against Grace relating to the manufacture and sale of Zonolite Attic Insulation ("ZAI") in Canada (the "CDN ZAI Claims").

2 Under the Minutes, Grace agrees to:

(a) fund a broad multimedia notice programme across Canada;

(b) establish a trust with $6.5 million for the payment of Canada ZAI property damage claims; and

(c) channel any Canadian ZAI personal injury claims to a U.S. asbestos trust which will have in excess of US$1.5 billion in funding.

3 In consideration, Grace would be discharged of any liability in connection with CDN ZAI Claims.

4 Although there was no direct opposition to the terms of the Minutes as being fair and reasonable, certain parties proposed amendments to the form of order sought by Grace.

5 Grace submits that the Minutes ought to be approved in the form submitted. Counsel submitted that Grace's significant settlement contribution is manifestly fair and reasonable, given Grace's defences to CDN ZAI Claims and, in particular, the judicial determination by the U.S. Bankruptcy Court (the "U.S. Court") that ZAI does not pose an unreasonable risk of harm.

6 Further, counsel to Grace submits that the Minutes are an important step towards the successful reorganization of Grace and with this settlement, these insolvency proceedings, which were filed in April 2001, are nearing completion.

7 W. R. Grace & Co. and its 61 subsidiaries (the "U.S. Debtors") have filed a joint Chapter 11 plan of reorganization (the "Plan") with the U.S. Court and expect to commence a confirmation hearing for the Plan in early 2009. The Plan incorporates the terms of the settlement before this Court and if confirmed, sees Grace emerging from Chapter 11 protection in 2009.

8 The chain of events that resulted in the Minutes began in 1963 with Grace's purchase of the assets of the Zonolite Company ("Zonolite"). Zonolite mined and processed vermiculite from a mine near Libby, Montana (the "Libby Mine"). Vermiculite is an insulator which apparently has no known toxic properties. However, the vermiculite ore from the Libby Mine contained impurities, including asbestiform minerals.

9 One of the products made from the U.S. Debtors' vermiculite was ZAI. ZAI was installed in attics of homes. Some ZAI contained trace amounts of asbestos.

10 In addition, 40 years ago the U.S. Debtors manufactured a product known as monokote-3 ("MK-3") which had chrysotile asbestos added during the manufacturing process.

11 Grace stopped manufacturing MK-3 in Canada by 1975 and ceased production of ZAI in 1984 and closed the Libby Mine in 1990.

12 By the 1970s, the U.S. Debtors began to be named in asbestos-related lawsuits. These included both asbestos-related personal injury claims ("PI Claims") and property damage claims relating to ZAI.

13 Due to a rise in the number of PI Claims in 2000 and 2001, the U.S. Debtors filed for protection under Chapter 11 of the *United States Bankruptcy Code* on April 2, 2001.

14 Grace Canada was incorporated in 1997. According to the affidavit of Mr. Finke, it had no direct involvement in any historic use of asbestos.

15 Rather, Grace's historic business operations in Canada were undertaken by a company now known as Sealed Air (Canada) Co./CIE ("Sealed Air Canada"). Sealed Air Canada is the successor to the Canadian companies with past involvement in the sale and distribution of ZAI and asbestos containing products such as MK-3.

16 Sealed Air Canada was spun-off from Grace in 1998 and as part of the transaction, Grace Canada and the U.S. Debtors provided certain indemnities to Sealed Air Canada and its parent, Sealed Air Corporation, relating to historic asbestos liabilities.

17 On April 4, 2001, two days after the Chapter 11 proceedings had been commenced, Grace Canada commenced these proceedings. The Canadian CCAA proceedings were commenced seeking ancillary relief to facilitate and coordinate the U.S. proceedings in Canada. An initial order was granted by this Court pursuant to s.18.6(4) of the CCAA (the "Initial Order").

18 By 2005, despite the Initial Order, 10 proposed class actions (the "Proposed Class Actions") were commenced across Canada in relation to the manufacture, distribution and sale of ZAI. Grace Canada, some of the U.S. Debtors and Sealed Air Canada were named as defendants, as was the Attorney General of Canada (the "Crown").

19 The allegations in the Proposed Class Actions include both ZAI PI Claims as well as damages for the cost of removing ZAI from homes across Canada ("CDN ZAI PD Claims").

20 On November 14, 2005, an order was issued (the "November 14th Order") enjoining the Proposed Class Actions against the U.S. Debtors, Sealed Air Canada and the Crown.

21 As a result, the Proposed Class Actions were brought within the overall restructuring process.

22 By order of February 8, 2006 (the "Representation Order"), Lauzon Bélanger S.E.N.C. ("Lauzon") and Scarfone Hawkins LLP ("Scarfone") (jointly, "Representative Counsel") were appointed to act as the single representative on behalf of all of the holders of Canadian ZAI Claims ("CDN ZAI Claimants") to advocate their interests in the restructuring process.

23 No one has taken issue with the authority of the Representative Counsel to represent all CDN ZAI Claimants in the U.S. Court, this Court or at any of the mediations. The Representation Order provided that Representative Counsel would, among other things, have authority to negotiate a settlement with Grace.

24 After a long history of negotiations, on June 2, 2008, Grace, Representative Counsel and the Crown announced to the U.S. Court that they had reached an agreement in principle that remained subject to the Crown's acceptance. The

Crown was not able to obtain firm instructions on whether to participate in the settlement.

25 On September 2, 2008, Grace and Representative Counsel signed the Minutes resolving all CDN ZAI Claims against Grace and Sealed Air Canada.

26 On April 7, 2008, the U.S. Debtors reached an agreement effectively settling all present and future PI Claims (the "PI Settlement") and under this agreement, the U.S. Debtors agreed to pay into trust various assets, including US$250 million, warrants to acquire common stock, proceeds of insurance, certain litigation and deferred payments and it estimates that the total value of the settlement is in excess of US$1.5 billion. Sealed Air Canada is making a contribution to the settlement in excess of $500 million, plus 18 million shares of stock.

27 On September 21, 2008, the U.S. Debtors filed their draft Plan with the U.S. Court and confirmation hearings are scheduled for early in 2009.

28 The Minutes contemplate a settlement of all CDN ZAI Claims, both personal injury ("CDN ZAI PI Claims") and property damage, on the following terms:

(a) Grace agrees to provide in its Plan for the creation of a separate class of CDN ZAI PD Claims and to establish the CDN ZAI PD Claims Fund, which shall make payments in respect of CDN ZAI Claims;

(b) on the effective date of Grace's Plan, Grace will contribute $6,500,000 through a U.S. PD Trust to the CDN ZAI PD Claims Fund;

(c) Grace's Plan provides that any holder of a CDN ZAI PI Claim ("CDN ZAI PI Claimant") shall be entitled to file his or her claim with the Asbestos Personal Injury Trust to be created for all PI Claims and funded in accordance with the US$1.5 billion PI Settlement;

(d) Representative Counsel shall vote, on behalf of CDN ZAI Claimants, in favour of the Plan incorporating the settlement; and

(e) Representative Counsel shall be entitled to bring a fee application within the U.S. proceedings and any such payments received would reduce the amount otherwise payable to Representative Counsel under the Settlement.

In addition, Grace has agreed to fund a broad based media notice programme across Canada and an extended claims bar procedure for CDN ZAI PD Claims and Grace has also agreed to give direct notice to any known claimant.

29 Under the Minutes, the bar date for CDN ZAI PD Claims is not less than 180 days from substantial completion of the CDN ZAI Claims Notice Program. The period for filing ZAI PD Claims in the U.S. is considerably shorter and Grace has scheduled a motion with the U.S. Court on October 20, 2008 to approve the

CDN ZAI PD Claims bar date. Grace has indicated that if granted, recognition of the U.S. order will be sought from this Court. There will be no bar date for CDN ZAI PI Claims.

30 Grace has indicated that it has contemplated that monies will be distributed out of the CDN ZAI PD Claims Fund based on a claimant's ability to prove that his or her property contained ZAI and that monies were expended to contain or remove ZAI from the property. Based on proof of ZAI in the home and the remediation measures taken by a claimant, that claimant may recover $300 or $600 per property.

31 The issues for consideration were stated by counsel to Grace as follows:

(a) Does Representative Counsel have the authority to enter into the Minutes on behalf of all CDN ZAI Claimants?

(b) Does the CCAA Court have the jurisdiction to approve the Minutes, including the relief in favour of Sealed Air Canada and the Crown?

(c) Are the Minutes fair and reasonable? In particular, is their prejudice to the key constituencies?

32 The Representation Order is clear. It gives Representative Counsel broad powers, including the ability to negotiate on behalf of CDN ZAI Claimants. No party has objected to or taken issue with the Representation Order or with the authority of Representative Counsel to represent all CDN ZAI Claims.

33 I am satisfied that Lauzon and Scarfone have the authority, as Representative Counsel, to enter the Minutes of Settlement on behalf of all CDN ZAI Claimants.

34 I am also satisfied that the CCAA Court may approve material agreements, including settlement agreements, before the filing of any plan of compromise or arrangement. See *Canadian Red Cross Society / Société Canadienne de la Croix-Rouge, Re* (1998), 5 C.B.R. (4th) 299 (Ont. Gen. Div. [Commercial List]) and *Calpine Canada Energy Ltd., Re* (2007), 35 C.B.R. (5th) 1 (Alta. Q.B.), leave to appeal denied (2007), 35 C.B.R. (5th) 27 (Alta. C.A. [In Chambers]).

35 It is noted that, in this case, the Plan will be voted on by creditors in the U.S. proceedings.

36 With respect to relief in favour of Sealed Air, Grace has agreed to indemnify Sealed Air Canada for certain liabilities in connection with ZAI. As part of the settlement, Grace seeks to ensure that the release of the CDN ZAI Claims includes a release for the benefit of Sealed Air Canada.

37 Counsel submits that such release is not only necessary and essential, but also fair given Sealed Air Canada's contribution to the PI Settlement under the Plan in excess of $500 million. I am satisfied that, in these circumstances, the release for the benefit of Sealed Air Canada is fair and reasonable.

38 The Minutes also provide a limited release in favour of the Crown. Pursuant to the Minutes, the Crown's claims for contribution and indemnity against Grace (being CDN ZAI Claims) are released. Counsel submits that the corollary is that the Crown is relieved of any joint liability it shares with Grace for CDN ZAI Claims.

39 Counsel to Grace again submits that such a release of the Crown is necessary. Otherwise, Grace could become indirectly liable through contribution and indemnity claims.

40 Counsel for Grace submits that, in certain circumstances, this Court has ordered third party releases where they are necessary and connected to a resolution of the debtor's claims, will benefit creditors generally, and are not overly broad or offensive to public policy. (See: *Muscletech Research & Development Inc., Re* (2007), 30 C.B.R. (5th) 59 (Ont. S.C.J. [Commercial List]) and *ATB Financial v. Metcalfe & Mansfield Alternative Investments II Corp.* (2008), 43 C.B.R. (5th) 269 (Ont. S.C.J. [Commercial List]), aff'd. 2008 ONCA 587 (Ont. C.A.) ("Metcalfe"), leave to appeal to S.C.C. denied. [2008 CarswellOnt 5432 (S.C.C.)])

41 Subsections 18.6(3) and (4) of the CCAA, allow the Ontario Court to make orders with respect to foreign insolvency proceedings, on such terms and conditions as the Court considers appropriate.

42 In assessing whether to grant its approval, the Court has to consider whether the Minutes are fair and reasonable in all of the circumstances.

43 It is the submission of Grace that the Minutes are fair and reasonable, and that resolutions of the CDN ZAI Claims in particular do not prejudice the Crown, CDN ZAI PD Claimants or, CDN ZAI PI Claimants.

44 Grace also submits that, given the strong defences which it believes are available, the Minutes provide a substantial compromise by Grace, considering the circumstances in which it believes it has no liability for CDN ZAI Claims.

45 Early in the insolvency proceedings, the U.S. Court held a hearing to determine, as a threshold scientific issue, whether the presence of ZAI in a home created an unreasonable risk of harm. The opinion of the U.S. Court was filed as part of the record. Grace states that the U.S. Court came to the conclusion that ZAI did not pose an unreasonable risk of harm. The background and conclusions of the U.S. Court have been summarized at paragraphs 72 to 85 of the Grace factum.

46 I have been persuaded by and accept these submissions.

47 In addition, even if ZAI had been found to pose an unreasonable risk of harm, Grace submits that it still has a complete defence to any claims under Canadian law for the reasons set out at paragraphs 86 to 97 of the factum.

48 Further, the passage of time is such that Grace submits that many cases would be dismissed outright based on the expiry of the limitation period.

49 With respect to the issue of prejudice to the Crown, on the one hand, the Crown has asserted claims against Grace. The Crown has estimated that over 2,000 homes located on military bases have been remediated to contain vermiculite attic insulation or ZAI from homes built by the Canadian military. Under the Settlement, the Crown, as a CDN ZAI Claimant, would receive $300 per unit for the sealing of ZAI. Based on the Crown's records, the Crown would potentially have a claim against the Fund for up to $660,000 and if it chose to pursue this claim, the Crown would recover approximately 50% of its remediation expenditures.

50 On the other hand, the Crown is also a defendant in the Proposed Class Actions. Through the Minutes, the Crown will release its CDN ZAI Claims against Grace, but at the same time, counsel to Grace submits that the Crown is effectively released from any joint liability it may share with Grace. Grace submits that the Crown will be relieved from all CDN ZAI Claims except those for which it is severally responsible.

51 It is with respect to the release language that the Crown takes exception.

52 The Crown acknowledges that Representative Counsel has the authority to negotiate on behalf of ZAI Claimants. However, the Crown disputes the authority of Representative Counsel to purport to negotiate away the Crown's Chapter 11 "claim over" for contribution and indemnity.

53 The Crown supports the approval of the Settlement insofar as it purports to resolve all of Grace's liability with respect to CDN ZAI PD and PI Claims, provided that the approval order expressly recognizes that the Crown's protective "claim over" for contribution and indemnity against Grace is unimpaired by the Settlement and provided that the Approval Order expressly allows the Crown to third party Grace in ZAI related actions where the Crown is sued on a several basis.

54 Counsel to the Crown submits that to interpret the authority of Representative Counsel to have the power to release the Crown's "claim over" against Grace while they simultaneously reserve the right to pursue the claims against the Crown would conflict with the clear direction in the Representation Order. They submit that CCAA Representative Counsel does not represent the Crown's interest with respect to the contribution and indemnity claim, and would be in conflict of interest with respect to the members of the group it represents if it attempted to do so. They further submit that it has always been the position of the Crown that all ZAI related damages give rise to a contribution and indemnity claims against Grace and that no independent claim lies against the Crown; hence, the Crown has and will continue to assert a contribution and indemnity claim against Grace for the totality of the damages.

55 At the hearing, the argument of the Crown was presented without the benefit of a factum. I requested and received a factum from the Crown which was then responded to by counsel to Grace and by Representative Counsel.

56 In my view, the response of Grace is a complete answer to the Crown's submissions. Counsel to Grace notes that the Crown purports to support the Order sought on the proviso that its contribution and indemnity claims against Grace are unimpaired. However, the Minutes do impair the Crown's contribution claims, and with the Order, the Crown will have no claims for contribution and indemnity against Grace.

57 It is Grace's position that Representative Counsel has the authority to resolve and release all CDN ZAI Claims, including Crown claims for contribution and indemnity. Further, in any event, there is no prejudice to the Crown as pursuant to the Minutes, CDN ZAI Claimants have agreed that they cannot pursue the Crown for claims for which Grace is ultimately responsible. Consequently, the Crown has no contribution claims to assert against Grace. Simply put, as submitted by counsel to Grace, there is nothing left.

58 The Representation Order applies to all claims "arising out of or in any way connected to damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of Zonolite attic insulation products in Canada".

59 It seems to me that the wording of the Representation Order is clear. Representative Counsel have the authority to resolve and release all CDN ZAI Claims, including Crown claims for contribution and indemnity.

60 With respect to the Release itself, the Minutes release any claims or causes of action for which the Crown has a right of contribution and indemnity. As submitted by counsel to Grace, Representative Counsel may not pursue the Crown in respect of claims for which Grace is ultimately liable.

61 Paragraph 13(b)(iii) of the Minutes provides for a release of:

> ...any claims or causes of action asserted against the Grace Parties as a result of the Canadian ZAI Claims advanced by CCAA Representative Counsel against the Crown as a result of which the Crown is or may become entitled to contribution or indemnity from the Grace Parties.

62 I accept the submission of counsel to Grace that the purpose of this provision is to protect Grace from indirect claims through the Crown. Since any claim for which Grace is ultimately liable cannot be pursued, the Crown has no need nor any ability to "claim over" against Grace.

63 The Crown also relied on an order of November 7, 2005 of Chaput J. of the Québec Superior Court in the [*Association des consommateurs pour la qualité dans la construction v. Canada (Attorney General)*, 2005 CarswellQue 10587 (Que. S.C.)] case which was one of the Proposed Class Actions. The Crown relied on the order of Chaput J. to argue that all claims against the Crown flow through Grace and that Grace is therefore ultimately responsible for any Crown liability.

64 I agree with the position being taken by Grace to the effect that this argument is misplaced. It was made quite clear at this hearing that the scope of any remaining Crown liability will need to be addressed at a future hearing.

65 Submissions were also made by counsel on behalf of Ms. Thundersky.

66 Counsel pointed out certain concerns and suggested that it was appropriate to alter the proposed form of order.

67 The first concern raised related to the issue of preservation of claims against the Crown and counsel submitted that paragraph 13(b)(iv) creates some ambiguity in this area. In my view, paragraph 13(b)(iv) of the Minutes is clear. The concluding words read as follows:

> For greater certainty, nothing contained in these Minutes shall serve to discharge, extinguish or release Canadian ZAI Claims asserted against the Crown and which claims seek to establish and apportion independent and/or several liability against the Crown.

68 I do not share counsel's concern. The issue does not require clarification. In my view, this paragraph is not ambiguous.

69 Counsel to Ms. Thundersky also raises concern that the draft order provides that all of the legal actions in Canada be "permanently stayed" until all of the actions have formally removed the Grace Parties as defendants which would not occur until the Effective Date of any approved Plan of Reorganization. In my view, this is not a significant concern. This Court retains jurisdiction over the matters before it in these proceedings and to the extent that further direction is required, the appropriate motion can be brought before me.

70 The third concern raised by counsel to Ms. Thundersky was with respect to the Asbestos PI Fund to be established in the U.S. process. Concerns were raised with respect to the uncertainty surrounding when and in what manner the eligibility criteria for the fund would be established. Counsel to Grace advised that Mr. Ferbers would have the opportunity to provide comment during the Plan process on this issue. I expect that this should be sufficient to alleviate any concerns but, if not, further direction can be sought from this Court.

71 Finally, concern was also raised with respect to the absence of a personal injury notice program. Counsel to Grace advised that this issue would be communicated to those involved in the U.S. Plan. In the circumstances, this would appear to be a pragmatic response to the concern raised by counsel to Ms. Thundersky.

72 Counsel to Ms. Thundersky acknowledged that it was difficult to propose a resolution which stayed within the four corners of the Minutes, but that Ms. Thundersky did wish to bring the foregoing concerns to the attention of the parties and the Court in the hopes that they could be taken into account.

73 Counsel to Grace and Representative Counsel are aware of these issues and will take them into account.

74 I indicated at the hearing that I was inclined to either approve the Minutes or to reject them. The Minutes are the product of extensive negotiation between the Representative Counsel and the Grace Parties. I am of the view that it is not appropriate for me to examine and evaluate the Minutes on a line-by-line basis, nor to amend or alter the agreement as reached between Representative Counsel and the Grace Parties.

75 In my view, to accept the submissions of the Crown and Ms. Thundersky would leave the Court in the position of having to reject the Minutes and refuse to approve the Settlement. Having considered all of the circumstances, I do not consider this to be an appropriate outcome.

76 I have been satisfied that the Minutes are fair and reasonable. The Minutes have been agreed to by Representative Counsel. In my view, the Minutes do not prejudice the interests of the Crown. I am also of the view that there is no prejudice to the ZAI PD Claimants who will have access to a significant fund to assist with their remediation costs. Their alternative is more litigation which, at the end of the day, would have a very uncertain outcome. I am also of the view that there is no prejudice to the ZAI PI Claimants who will have the opportunity to make a claim to the asbestos trust in the U.S. I am satisfied that the ZAI PI Claimants will be receiving treatment that is fair and equal with other PI Claimants. Further, it is noted that counsel to Grace advised that the Thundersky family are the only known ZAI PI Claimants. Their alternative is the continuation of a claim that on its face, would appear to have been statute barred in 1994.

77 I also accept the conclusions as put forth by counsel to Grace. This Settlement provides CDN ZAI PD Claimants with clear recourse to the CDN ZAI PD Claims Fund and CDN ZAI PI Claimants with recourse to the Asbestos Personal Injury Trust in situations where it is Grace's view that the Canadian claims have little or no value.

78 I am also satisfied that third party releases are, in the circumstances of this case, directly connected to the resolution of the debtor's claims and are necessary. The third party releases are not, in my view, overly broad nor offensive to public policy.

79 Counsel to Grace also submitted that Representative Counsel have been continuously active and diligent in both the U.S. and Canadian proceedings and Grace is of the view that it is appropriate that a portion of the funds paid under the settlement go towards compensation of Representative Counsel's fees. I accept this submission and specifically note that the Minutes provide for specified payments to Representative Counsel, a Claims Administrator and a qualified expert to assist in the claims process, in a total amount of approximately CDN$3,250,000.

80 In conclusion, the Minutes, in my view, represent an important component of the Plan. They provide a mechanism for the resolution of CDN ZAI Claims without the uncertainty and delay associated with ongoing litigation.

81 The Minutes are approved and an order shall issue in the form requested, as amended.

*Order accordingly.*

---

[Indexed as: **ScoZinc Ltd., Re**]

In the Matter of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 as amended

And In the Matter of a Plan of Compromise or Arrangement of ScoZinc Limited

Nova Scotia Supreme Court

D.R. Beveridge J.

Heard: December 22, 2008

Judgment: December 22, 2008

Written reasons: January 7, 2009

Docket: Hfx 305549, 2008 NSSC 398

John D. Stringer, Q.C., Ben Durnford for Applicant

**Bankruptcy and insolvency — Proposal — Companies' Creditors Arrangement Act — Application of Act** — Debtor was wholly-owned subsidiary of mining company — Debtor operated its own mine and processing facility — Commodities prices declined dramatically — Debtor was not able to pay its monthly expenses — Debtor's liabilities were about $37 million while its assets were about $31.6 million — Mining company was largest secured creditor and was owed about $23.5 million — Creditor with long-term capital leases was owed over $3 million — Trades were owed about $5.4 million — Debtor brought application for protection under Companies' Creditors Arrangement Act and for order permitting debtor-in-possession ("DIP") financing — Application granted — Stay of proceedings was granted for 30 days and DIP financing was permitted to extent of $650,000 — Debtor was far from being company that was doomed to failure — Debtor would no longer be insolvent if commodity prices rebounded — Other nearby mining properties could provide necessary ore to be processed at debtor's facility — Consequences of not granting stay were simply far too unattractive not only for current employees but for broader public interest — Creditors would benefit not only from reasonable prospect of return to solvency but also from safeguarding assets — If liquidation was ultimately required, best value could be achieved in orderly fashion — DIP financing with priority over secured creditors clearly outweighed any potential prejudice to secured creditors — Amount of DIP financing allowed at this stage was limited to amount for which secured creditors had already provided consent.

**IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC**

**Court File No: 01-CL-4081**

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Toronto

**AFFIDAVIT OF ORESTES PASPARAKIS**
**(Sworn September 15, 2009)**

**OGILVY RENAULT LLP**
Barristers & Solicitors
Suite 3800, PO Box 84
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario M5J 2Z4

**DERRICK C. TAY**
LSUC #21152A
Tel: 416.216.4832
Fax: 416.216.3930

**ORESTES PASPARAKIS**
LSUC # 36851T
Tel: 416.216.4815
Fax: 416.216.3930

Lawyers for the Applicant