IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: October 26, 2009** |
| | ) | **Objection Deadline: October 9, 2009** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO IMPLEMENT A DEFINED CONTRIBUTION RETIREMENT PLAN FOR NEW HIRES

The Debtors respectfully move this Court for the entry of an order authorizing, but not requiring, the Debtors to establish a new defined contribution retirement arrangement, to replace the current defined contribution arrangement, for eligible employees of the Debtors hired on or after January 1, 2010. Pursuant to this new arrangement, new hires eligible will not

---

1  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street,lzi.c., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remediurn Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch Nest Coal Company, H-G Coal Company.

participate in the Debtors' existing defined benefit retirement arrangement for current eligible U.S. salaried employees. The Debtors will continue, however, to maintain the existing defined benefit retirement arrangement for current U.S. eligible salaried employees and any other such employees hired on or prior to December 31, 2009. Implementation of the new defined contribution arrangement for new hires, while maintaining the existing defined benefit arrangement for current employees, will permit the Debtors to address creditors' concerns about the increasing costs of the liabilities under the Debtors' existing defined benefit arrangement, while providing both competitive retirement benefits to attract new hires and help retain current salaried employees by satisfying their existing retirement expectations. As a result, the Debtors request authority to establish a new defined contribution retirement arrangement. In further support of this motion, the Debtors state as follows:

### Jurisdiction

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). Venue of this proceeding and this motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is §§ 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code").

### Background Regarding Existing Grace Defined Benefit Retirement Arrangement

1.  Preceding the Petition Date, and continuing at this time, newly hired salaried employees of the Debtors in the United States (the "Eligible Employees")[2] automatically

---

[2] The existing defined benefit arrangement, and the proposed new defined contribution arrangement, are only applicable to the Debtors' salaried employees in the United States, and do not apply to unionized U.S. employees (who are generally covered by qualified defined benefit pension plans, other than the Salaried Retirement Plan), nor to non-U.S. employees.

commence participation in the W. R. Grace Salaried Retirement Plan (the "Salaried Retirement Plan"), effective one year after the Eligible Employees' hire date.

2. The Salaried Retirement Plan is a defined benefit pension plan, qualified under section 401(a) of the Internal Revenue Code (the "Code"), which generally provides each retired vested participant with a specific monthly pension benefit for life, calculated based on the participant's final average compensation, years of credited service with the Debtors, and other criteria specified in the Plan.

3. The benefits under the Salaried Retirement Plan are paid through a qualified retirement plan trust that, in turn, is funded by contributions from the Debtors. These contributions have been the focus of the Debtors' defined benefit pension funding motions, the last of which was approved by the Court on June 24, 2009 (the "Funding Motions").

4. As specified in the Funding Motions, the Salaried Retirement Plan is the largest defined benefit plan maintained by the Debtors, and it requires the largest amount of contributions from the Debtors.

5. As specified in the Funding Motions, the Debtors will make contributions to the Salaried Retirement Plan during 2009 of approximately $35.1 million.[3]

6. Highly paid Eligible Employees, whose benefits under the Salaried Retirement Plan are limited as a result of the application of certain compensation and benefits limits under the Code, are also entitled to monthly pension payments under the Grace Supplemental Executive Retirement Plan (the "SERP").

---

[3] Implementing the proposed defined contribution arrangement for new hires as of January 1, 2010, will not affect the amount of the minimum contributions to the Salaried Retirement Plan necessary to comply with applicable law, for the period prior to 2012. The Debtors currently expect that such implementation will begin to appreciably reduce its future contributions to the Salaried Retirement Plan by 2013 or soon thereafter.

7. The SERP is a non-qualified defined benefit retirement plan, which generally mirrors the provisions of the Salaried Retirement Plan, except that the SERP pays benefits on the portion of the compensation paid to highly paid Eligible Employees that exceeds the Code limits applicable to the Salaried Retirement Plan.[4]

### Proposed Retirement Plan Arrangements Commencing January 1, 2010

8. As indicated herein, the Debtors are proposing to establish a new retirement plan arrangement for Eligible Employees hired on or after January 1, 2010. That arrangement will include a new defined contribution retirement plan that will be qualified under section 401(a) of the Code (the "New Qualified DC Plan"), as well as a supplemental non-qualified, defined contribution plan (the "Supplemental DC Plan") that will provide defined contribution benefits attributable to the covered compensation received by highly paid Eligible Employees in excess of the Code limits applicable to the New Qualified DC Plan.

9. Current Eligible Employees (and other Eligible Employees hired before January 1, 2010) will continue to participate in, and receive credited service under, the Salaried Retirement Plan and the SERP, as appropriate, on and after January 1, 2010. These Eligible Employees will not be covered by the New Qualified DC Plan or the Supplemental DC Plan.[5]

### The New Defined Contribution Retirement Arrangement

10. At its meeting on July 1, 2009, the Debtors' Board of Directors approved the new defined contribution arrangement for Eligible Employees hired on or after January 1, 2010.

11. The provisions of the New Qualified DC Plan will include the following:

---

[4] Implementing the proposed defined contribution arrangement for new hires as of January 1, 2010, will not reduce the retirement payments under the SERP for the foreseeable future because all current SERP recipients, as well as current employees who retire in the future, will continue to be entitled to such payments.

[5] All Eligible Employees hired before and after January 1, 2010, will also be eligible to participate in the Debtors

- An account will be established for each Eligible Employee hired on or after January 1, 2010 under the New Qualified DC Plan.

- The Debtors will commence contributions to that account for such Eligible Employee as of the month following the month in which such Employee is hired.

- The Debtors will contribute an amount equal to 4% of the covered compensation[6] paid to each Eligible Employee, up to the compensation and contribution limits imposed by the Code.

- Eligible Employees will become 100% vested in their accounts under the New Qualified DC Plan, after 3 years of service with the Debtors.

- Each Eligible Employee with an account balance under the New Qualified DC Plan will be entitled to invest such balance in a range of mutual funds and other investments permitted under the Plan. The Debtors will not make investment decisions for these Eligible Employees.

- An Eligible Employee who terminates service with the Debtors at the time that he or she has a vested balance in his or her account will be entitled to receive that balance at the time, and in any of the payment forms, available under the New Qualified DC Plan.

- Forfeitures from accounts of unvested, terminated participants will be used to offset administrative fees and future contributions under the new

---

Savings & Investment ("S&I") Plan, which is qualified under Code section 401(k). That plan currently matches employee contributions at 100%, up to 6% of salary.

[6] "Covered compensation" under the new defined compensation arrangement will include base salary and regular annual bonus; which is the same approach applicable to the current defined benefit arrangement.

Qualified DC Plan.

12. The provisions of the Supplemental DC Plan will include the following:

- A "notional", unfunded account will be established under the Supplemental DC Plan, with respect to each Eligible Employee who receives covered compensation that exceeds the applicable Code limit or whose contributions are otherwise limited solely as a result of the Code's contribution limits.

- An amount equal to 4% of any covered compensation paid to an Eligible Employee, above the limits imposed by the Code, will be credited to an account under the Supplemental DC Plan for the Eligible Employee.

- The vesting provisions of the Supplemental DC Plan will be the same as those under the New Qualified DC Plan.

- The balance of the "notional" account will be credited with a specific interest rate, which will be equal to the "prime rate".

- An Eligible Employee who terminates service with the Debtors at the time that he or she has a vested balance in his or her notional account under the Supplemental DC Plan will receive that balance as a lump sum as of the month following the month of termination.[7] That balance will be paid from the general assets of the Debtors.

### Cost Of The New Defined Contribution Arrangement

13. The principle cost of implementing the new defined contribution arrangement will

---

[7] In the case of such an Eligible Employee who is a "specified employee" under Code section 409A (which generally connotes higher exective officers), such lump sum will be paid no sooner than 6 months after the

6

generally equal 4% of the covered compensation of newly hired Eligible Employees (since this is the amount that will be contributed by the Debtors to accounts for those Employees under the New Qualified DC Plan), less forfeitures.[8]

19. The Debtors do not have a targeted objective with respect to new hires during the next several years. However, at this time, the Debtors estimate that they may hire approximately 200 Eligible Employees in 2010 and 2011, with an average salary of approximately $87,000.

20. Those hiring estimates result in a projected cash cost of implementing the new defined contribution arrangement for the next two calendar years as follows:

| Year | Cash Cost, Estimate |
| --- | --- |
| 2010 | $371,000 |
| 2011 | $1,074,000 |

See Exhibit A for more details regarding this calculation.

### The Debtors' Objectives

21. The Debtors' will continue its existing defined benefit retirement arrangement for current Eligible Employees (and those hired before January 1, 2010) because such current employees continue to consider the ongoing benefit accruals under the Salaried Retirement Plan and the SERP as among the most important aspects of their employment relationship with the Debtors, as specified in the Funding Motions.[9]

---

Employee terminates.
[8] The Supplemental DC Plan will not have any cash cost to the Debtors for several years, because the accounts thereunder will be unfunded.
[9] See paragraph 12 of the Debtors' pension funding motion approved by the Court on June 24, 2009.

22. Also, as stated in the most recent Funding Motion, Debtors' current employees continue to emphasize to the Debtors' management the importance of Grace's defined benefit retirement plans.[10]

23. Nevertheless, the Debtors believe that they should minimize the increases in the liabilities under its defined benefit retirement arrangements, while still providing competitive retirement benefits to attract future employees.

24. With respect to employees recruited and hired on or after January 1, 2010, Debtors' believe that competitive retirement benefits can be provided, without accruing liabilities for them under the defined benefit arrangement, through the implementation of the New Qualified DC Plan and the Supplemental DC Plan for those employees. See Exhibit B for further information regarding the competitors of the Debtors.

### Addressing Creditors' Concerns

25. The Debtors believe that implementing the new defined contribution arrangement for new hires, and maintaining the existing defined benefit arrangement for current employees, addresses the concerns of the Debtors' creditors because these steps will (1) begin to reduce the increases in liabilities under the Debtors' defined benefit arrangement, (2) provide competitive retirement benefits to attract new hires and (3) help retain current salaried employees, as well as encourage their engagement and maintain their morale, by satisfying their retirement plan expectations.

### Basis for Relief

27. Section 105(a) of the Bankruptcy Code "permits the court to issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section

---

[10] See paragraph 14 of the Debtors' pension funding motion approved by the Court on June 24, 2009.

363(b) of the Bankruptcy Code provides, in relevant part that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business property of the estate." 11 U.S.C. § 363(b). A court has the statutory authority to authorize a debtor to use property of the estate pursuant to § 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Lionel Corp., 722 F.2d 1063, 1071(2d Cir. 1983), see also In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); Fulton State Bank v. Schipper, 993 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by "some articulated business justification"); Stephen Indus., Inc. v. McClun, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b); In re Ernst Home Ctr., Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

28. Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See Lionel Corp., 722 F.2d at 1070-71. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Res., Inc., 147 B.R. 654, 656 (S.D.N.Y. 1992). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

### The Proposed Defined Contribution Arrangement is Supported by Sound Business Judgment

29. The Debtors believe that implementing the new defined contribution arrangement

9

for new hires, and maintaining the existing defined benefit arrangement for current employees, is in the best interest of the Debtors estates and their creditors. It permits the Debtors (1) to begin reducing the increases in liabilities under the Debtors' defined benefit arrangement, (2) provides competitive retirement benefits to attract new hires, and (3) helps retain current salaried employees by ecouraging their engagement and maintaining their morale, by satisfying their retirement plan expectations.

30.    Thus, the Debtors have determined in their business judgment that implementing the new defined contribution arrangement for new hires is in the best interests of the Debtors' estates and creditors. As specified above, clear business reasons exist to justify, under section 363(b) of the Bankruptcy Code, such implementation.

## Notice

31.    Notice of this motion has been given to (i) of the Office of the United States Trustee, (ii) counsel to the Debtor-In-Possession lenders, (iii) counsel to each Official Committee appointed by the United States Trustee, (iv) counsel to each FCR, and (v) those parties that requested papers under Fed.R.Bankr.P.2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

32.    No prior Application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order substantially in the form attached hereto (i) authorizing the Debtors to establigh a new defined benefit contribution retirement arrangement to replace their current defined contribution arrangement for eligible employees hired on or after January 1, 2010 and (ii) granting such other and further relief as the Court deems just and proper.

Wilmington, Delaware
Dated: September 21, 2009

Respectfully submitted,

**KIRKLAND & ELLIS LLP**
Theodore L. Freedman
David M. Bernick, P.C.
Citigroup Center
601 Lexington Ave.
New York, New York  10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and

**THE LAW OFFICES OF JANET S. BAER P.C.**
Janet S. Baer, P.C.
Roger J. Higgins
70 West Madison Street, Suite 2100
Chicago, IL  60602
Telephone: (312) 641-2162

and

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*
_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession