## EXHIBIT A

**Form of Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Re: Docket No. _____ |
| | ) | 10/26/09 Agenda No._____ |

## ORDER AUTHORIZING THE SALE OF 5% OF THE LIMITED LIABILITY COMPANY INTERESTS OF ADVANCED REFINING TECHNOLOGIES LLC AND CERTAIN RELATED AGREEMENTS AND TRANSACTIONS

Upon consideration of the Motion of the Debtors for an Order Authorizing the Sale of 5% of The Limited Liability Company Interests of Advanced Refining Technologies LLC and Certain Related Agreements and Transactions (the "Motion"); and it appearing that the relief requested in the Motion is in the best interests of the Debtors,[2] their estates and creditors, it is hereby

---

[1]   The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]   Capitalized terms not defined in this Order shall have the meaning ascribed to them in, as the case may be, the Motion, the Agreements (as that term is defined in this Motion) or the *First Amended Joint Plan of*

FOUND AND DETERMINED THAT

1.    As evidenced by the affidavits of service filed with this Court, and based upon representations of counsel at the hearing on this matter, that adequate and sufficient notice of the Motion has been provided, and that such notice was good, sufficient and appropriate under the circumstances, and that no other or further notice is or shall be required;

2.    Good and sufficient reasons have been articulated; and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, equity holders and other parties in interest for each of:

- *The Sale*.  Pursuant to section 363(b), the sale (the "Sale") of 5% (the "Sale Asset") of the limited liability company interests ("LLC Interests") of Advanced Refining Technologies LLC ("ART") by W. R. Grace and Co.-Conn. (variously, "Grace" or "Seller") to Chevron U.S.A. Inc. (variously, "Buyer" or "Chevron"), for a sale price of $4.0 million (the "Sale Price"), pursuant to an agreement in the form attached hereto as **Exhibit A** (the "Sale Agreement");

- *LLC Amendment*.  The amendment of the Limited Liability Company Agreement of ART dated March 1, 2001, between Grace and Buyer (as heretofore amended, the "LLC Agreement") to reflect the Sale and to effectuate certain other amendments, on the terms and conditions set forth in Amendment No. 4 to the LLC Agreement, the form of which is attached hereto as **Exhibit B** (the "LLC Amendment");

- *Credit Agreement Amendment*.  Pursuant to section 363(b), amendment of the Credit Agreement dated March 1, 2001 (as heretofore amended, the "Grace-ART Credit Agreement"), between Grace and ART, to reduce the available credit line from $24.75 million to $20.25 million (the "Credit Agreement Amendment", the form of which is attached hereto as **Exhibit C** and together with the Sale Agreement and the LLC Amendment, the "Agreements"); and

- *Capital Loans*.  Pursuant to sections 364(a) and (b) and section 503(b)(1), Grace's borrowing from ART on an unsecured basis certain amounts as contemplated by the Hydroprocessing Catalyst Supply Agreement dated March 1, 2001 (as amended, the "Catalyst Supply Agreement"), between ART and Grace, to make maintenance capital expenditures in connection with Grace's performance of the Catalyst Supply Agreement, in the amounts of $8.7 million and up to $3.5 million, as evidenced by demand notes in the form of **Exhibit D-1** and **Exhibit D-2**, respectively (the

Reorganization (the "Plan") in these Chapter 11 Cases, as amended, Docket nos. 19579, 20666, 20872, 20873 and 21594.

"Notes"), and additional borrowings in 2010 and thereafter through and including 2014 in amounts not to exceed $6.0 million in any one year, on substantially the same terms and conditions as set forth in the Notes;

3.      Grace may consummate the Sale, and Buyer may acquire the Sale Asset, free and clear of any and all liens and encumbrances, and any liens or encumbrances shall attach to the proceeds of the Sale because each entity with a security interest in the Sale Asset: (i) has consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of any such interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied;

4.      The Debtors have demonstrated both a sound business purpose and good and sufficient reasons for each of the Transactions set forth in the Motion;

5.      Seller has full corporate power and authority to execute the Sale Agreement and the other Agreements and consummate the Sale and each other Transaction contemplated by the Motion and set forth in this Order;

6.      The Sale Agreement and the other Agreements were negotiated, proposed and entered into by Seller and Buyer in good faith and without collusion; and Buyer is not an "insider" of any of the Debtors as that term is defined in section 101 of the Bankruptcy Code; and neither the Debtors nor Buyer have engaged in any conduct that would cause or permit the Agreements (or the transactions contemplated therein) to be avoided or Buyer to be subjected to any claim under section 363(n) of the Bankruptcy Code;

7.      In the absence of a stay pending appeal, Buyer will be acting in good faith pursuant to section 363(m) of the Bankruptcy Code in closing the Sale at any time on or after entry of this Order, and cause has been shown as to why this Order should not be subject to the

stay provided by Fed. R. Bankr. P. 6004(g) and 6006(d), and for those reasons Buyer is entitled to all of the protections afforded section 363(m) of the Bankruptcy Code;

8.     The consideration provided by Buyer pursuant to the Sale Agreement is: (i) fair and reasonable; (ii) integral to effectuating the purposes of the Sale, which   are more proportionate funding and management of ART, elimination of possible negative tax effects on Grace from the funding of ART, and the deconsolidation of ART from Grace Parent's consolidated group for financial reporting purposes; (iii) will enhance the value of the Debtors' estates; and (iv) constitutes reasonably equivalent value and fair consideration for the Sale Asset;

9.     The Sale Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or any other law of the United States or any state, territory, possession of the United States or the District of Columbia;

10.     Grace and the other Debtors have full corporate power and authority to execute and deliver the Sale Agreement and the other Agreements and all other documents contemplated thereby, and no further consents or approvals are required for Grace and the other Debtors to consummate the transactions contemplated by the Agreements, except as otherwise set forth in the respective Agreements;

11.     The Sale of the Sale Asset to Buyer will be as of the date of closing of the Sale (the "Closing Date") a legal, valid, and effective transfer of such assets, and vests or will vest Buyer with all right, title, and interest of Grace and the other Debtors to the Sale Asset free and clear of all liens, claims or encumbrances accruing, arising or relating thereto any time prior to the Closing Date; and neither Buyer nor its affiliates, successors or assigns, as a result of any action taken in connection with the Sale: (i) is a successor to any of the Debtors; (b) has, *de facto*

or otherwise, merged with or into any of the Debtors; or (c) is a continuation or substantial continuation of any of the Debtors or any enterprise of the Debtors;

12.    This order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Fed. R. Bankr. P. 6004(h) and 6006(d), and to any extent necessary under Fed. R. Bankr. P. 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Fed. R. Bankr. P. 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein; and

13.    For purposes of section 364(b), good and sufficient reason has been articulated for entry into the Capital Loans, the claims for which are allowable under section 503(b)(1) as actual and necessary administrative expenses.

IT IS THEREFORE

ORDERED that the Motion is granted in its entirety; and it is further

ORDERED that the Agreements are approved; the Debtors are hereby authorized to enter into the Agreements and to consummate the Transactions and take all actions related thereto; and it is further

ORDERED that the Debtors are authorized to take whatever other actions may be necessary to consummate the Transactions; and it is further

ORDERED that, upon consummation of the Sale, Buyer shall acquire the Sale Asset free and clear of all liens and encumbrances for purposes of section 363(f), and any such liens and encumbrances shall attach to the proceeds of the Sale; and it is further

ORDERED that Grace may enter into the Capital Loans for years 2007-08 and 2009 immediately upon entry of this Order, and may enter into Capital Loans for each of the years

2010 through and including 2014 without further order of this Court; *provided, however,* that if the cumulative amount of Capital Loans for any single year exceeds $6 million, then the Debtors shall file a motion seeking an additional order of this Court authorizing any such Capital Loans; and it is further

ORDERED that amounts owed under the Capital Loans shall be allowable as administrative claims pursuant to section 503(b)(1); and it is further

ORDERED that Buyer is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order, the Transactions and the Agreements; and it is further

ORDERED that this Order is effective immediately upon its entry, notwithstanding Fed. R. Bankr. P. 6004(h).

Dated: _____, 2009

_____
Honorable Judith K. Fitzgerald
United States Bankruptcy Judge

# EXHIBIT A

## SALE AGREEMENT

AGREEMENT dated as of November 30, 2009, between W. R. GRACE & CO.-CONN., a Connecticut corporation, acting by and through its business unit Grace Davison ("Seller"), and CHEVRON PRODUCTS COMPANY, a division of Chevron U.S.A. Inc., a Pennsylvania corporation ("Buyer")

WHEREAS, reference is made to the Limited Liability Company Agreement dated March 1, 2001, as amended (the "LLC Agreement"), of Advanced Refining Technologies LLC, a Delaware limited liability company (the "Company");

WHEREAS, capitalized terms used but not defined herein are used with the definitions given them in the LLC Agreement;

WHEREAS, Seller wishes to selll to Buyer a portion of Seller's Company Interest equal to 5% of the aggregate Company Interests (the "Purchased Interest");

WHEREAS, an order (the "Sale Order") authorizing the transaction contemplated by this Agreement (the "Transaction"), has been entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in In re: *W. R. Grace & Co. et al., Debtors*, Chapter 11, Case Nos. 01-1139 et al. (JKF) (Jointly Administered) in the Bankruptcy Court, in which Seller is a debtor and debtor in possession, and said order has become final and non-appealable; and

WHEREAS, the sale of less than all of Seller's Company Interest contemplated by this Agreement  has been approved by a Unanimous Vote.

NOW, THEREFORE, Seller and Buyer (the "Parties") hereby agree as follows:

1.     Sale of Purchased Interest.      Seller hereby sells to Buyer, and Buyer hereby purchases from Seller, the Purchased Interest.

2.     Purchase Price.     The purchase price for the Purchased Interest (the "Purchase Price") is Four Million Dollars ($4,000,000.00).

3.     Actions at the Closing.     The closing of the Transaction (the "Closing") will take place simultaneously with the execution and delivery of this Agreement. At the Closing:

1

(i)     Buyer is delivering the Purchase Price to Seller by wire transfer in immediately available funds to the following account:

> Bank: JPMorgan Chase Bank, NA
> Bank ABA #: 021000021
> Bank SWIFT code CHASUS33
> Bank account name: W. R. Grace & Co.-Conn.
> Bank account number: 016001257
> Text message: Funds from Chevron for LLC Interest

(ii)    Unless previously delivered, Seller is delivering to Buyer a certified copy of the Sale Order.

4.     <u>Representations and Warranties of Seller</u>.  Seller hereby represents and warrants to Buyer as follows:

(a)     Seller is a corporation duly organized and validly existing under the laws of Connecticut, with full corporate power to enter into this Agreement and to perform its obligations hereunder.  Seller's execution and delivery of this Agreement, and its performance of its obligations hereunder, have been duly and validly authorized by all necessary corporate action on its part.  Seller has duly executed and validly delivered this Agreement, which is legally binding on it.

(b)     Seller's execution and delivery of this Agreement, and its performance of its obligations hereunder, will not (i) conflict with its certificate of incorporation or by-laws, (ii) other than the authorization of the Bankruptcy Court, require it to obtain any authorization, action, consent, order, approval of, or to give notice to or seek review by or make any filing, registration or qualification with, any governmental, quasi-governmental, administrative or judicial body, agency, instrumentality or authority, except for such of the foregoing as has been obtained or effected or which the failure to obtain or effect would not have a material adverse effect on its execution or delivery of this Agreement or the performance of its obligations hereunder, or (iii) result in the breach of any of the provisions of, or constitute a default under, any agreement, instrument or other document to which it is a party or by which it is bound, which breach or default would have a material adverse affect on the Transaction.

(c)     Seller is the sole record and beneficial owner of the Purchased Interest, free and clear of all liens, security interests, pledges, options, encumbrances, charges, agreements, and rights of third parties (collectively, "Liens"), other than Liens arising in favor of  (i) the Lenders under the Post-Petition Loan and Security Agreement dated as of April 1, 2001, as amended (the "Loan Agreement"), between the financial institutions named therein as the Lenders, Bank of America, N.A. as the Agent, and W. R. Grace & Co. and the subsidiaries of W. R. Grace & Co. named therein as the Borrowers, and (ii) Buyer under the LLC Agreement and (ii) the rights of Buyer under the LLC Agreement (the "Existing Liens").

2

(d)    Other than the Existing Liens, there are no securities, rights, subscriptions, warrants, options, or agreements of any kind outstanding or in effect to purchase or otherwise acquire all or part of the Purchased Interest. Other than as provided in the Loan Agreement or the LLC Agreement, Seller has not sold, granted, assigned or transferred any right or interest in the Purchased Interest to any person or other entity, which assignment or transfer is currently in force or effect.

(e)    To Seller's knowledge, no action, suit or proceeding before any court or any governmental or regulatory authority and no investigation by any governmental or regulatory authority has been commenced or is threatened against the Seller, seeking to restrain, prevent or change the Transaction or questioning its validity or seeking damages in connection with the Transaction.

5.    Representations and Warranties of Buyer. Buyer hereby represents and warrants to Seller as follows:

(a)    Buyer is a corporation duly organized, validly existing and in good standing under the laws of Pennsylvania, with full corporate power to enter into this Agreement and to perform its obligations hereunder. Buyer's execution and delivery of this Agreement, and its performance of its obligations hereunder, have been duly and validly authorized by all necessary corporate action on its part. Buyer has duly executed and validly delivered this Agreement, which is legally binding on it.

(b)    Buyer's execution and delivery of this Agreement, and its performance of its obligations hereunder, will not (i) conflict with its articles of incorporation or by-laws, (ii) require it to obtain any authorization, action, consent, order, approval of, or to give notice to or seek review by or make any filing, registration or qualification with, any governmental, quasi-governmental, administrative or judicial body, agency, instrumentality or authority, except for such of the foregoing as has been obtained or effected or which the failure to obtain or effect would not have a material adverse effect on its execution or delivery of this Agreement or the performance of its obligations hereunder, or (iii) result in the breach of any of the provisions of, or constitute a default under, any agreement, instrument or other document to which it is a party or by which it is bound, which breach or default would have a material adverse affect on the Transaction.

(c)    No action, suit or proceeding before any court or any governmental or regulatory authority and no investigation by any governmental or regulatory authority has been commenced or to its knowledge is threatened against it, seeking to restrain, prevent or change the Transaction or questioning its validity or seeking damages in connection with the Transaction.

(d)    Buyer understands that (i) the Purchased Interest has not been, and will not be, registered under the Securities Act, or under any state securities laws, and is being offered and sold in reliance upon federal and state exemptions for transactions not

3

involving any public offering, (ii) the Purchased Interest may not be offered for sale, sold, delivered after sale, transferred, pledged, or hypothecated unless qualified and registered under applicable state and federal securities laws or unless, in an opinion of counsel for Buyer satisfactory to the Company, such qualification and registration is not required, and (iii) any transfer of the Purchased Interest is further subject to other restrictions, term and conditions which are set forth in the LLC Agreement.

(e)    Buyer (i) is acquiring the Purchased Interest solely for its own account for investment purposes, and not with a view to the distribution thereof, (ii) is a sophisticated investor with knowledge and experience in business and financial matters, and (iii) has received sufficient information concerning the Company and has had the opportunity to obtain additional information as desired in order to evaluate the merits and the risks inherent in holding the Purchased Interest.

6.    Indemnification; Survival.    (a) Each Member (the "Indemnitor") shall indemnify and hold harmless the other Member from and against any and all losses, claims, damages, liabilities and expenses, including (but without limiting the generality of the foregoing) reasonable attorneys' fees and other legal expenses, arising from or out of or with respect to the Indemnitor's breach of any representation, warranty, covenant or agreement of the Indemnitor contained in this Agreement.

(b)    The representations and warranties contained in this Agreement shall survive the Closing of the Transaction and the delivery of this Agreement and any other instruments or documents delivered pursuant hereto or in connection herewith.

7.    Miscellaneous.

(a)    Further Actions.    From time to time each Party, as and when requested by the other Party, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting Party may reasonably deem necessary or desirable to carry out the intent and purposes of this Agreement and to consummate the Transaction.

(b)    Entire Agreement; Assignment.    This Agreement contains the entire agreement between the Parties with respect to the Transaction and supersedes all prior arrangements or understandings with respect thereto. This Agreement may not be assigned by either Party, and any attempted assignment in contravention of this Section 7(b) shall be deemed void and of no effect *ab initio*.

(c)    Governing Law.    This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, except for any principles of conflict of laws that would require the application of the law of a jurisdiction other than Delaware.

4

(d)    <u>Counterparts</u>. This Agreement may be signed in counterparts, each of which may be signed by one or both Parties and all of which shall constitute a single agreement.

(e)    <u>Descriptive Headings</u>. The descriptive headings of this Agreement are for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement.

(f)    <u>Waivers and Amendments</u>.  Any waiver of any term or condition, or any amendment or supplementation, of this Agreement shall be effective only if in writing and signed by the Parties.

IN WITNESS WHEREOF, the Parties have signed this Agreement as of the date first above written.

| **W. R. GRACE & CO.-CONN.** | **CHEVRON PRODUCTS COMPANY**<br>A Division of Chevron U.S.A. Inc. |
|---|---|
| By: _____ | By: _____ |
| Name: | Name: |
| Title: | Title: |

# EXHIBIT B

**FOURTH AMENDMENT
TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
ADVANCED REFINING TECHNOLOGIES LLC**

THIS **FOURTH AMENDMENT ("Amendment") TO LIMITED LIABILITY COMPANY AGREEMENT** is made as of November 30, 2009, by and between **CHEVRON PRODUCTS COMPANY**, a division of Chevron U.S.A. Inc., a Pennsylvania corporation ("Chevron"), and **W. R. GRACE & CO.-CONN.**, a Connecticut corporation, acting by and through its business unit Grace Davison ("Davison").

WHEREAS, Chevron and Davison (collectively, the "Members") entered into a Limited Liability Company Agreement, effective March 1, 2001, as heretofore amended by an agreement entitled "First Amendment to Limited Liability Company Agreement of Advanced Refining Technologies LLC" dated November 12, 2001, by a second agreement entitled "Second Amendment to Limited Liability Company Agreement of Advanced Refining Technologies LLC" dated February 4, 2004, and by a third agreement erroneously entitled "Second Amendment to Limited Liability Company Agreement of Advanced Refining Technologies LLC" dated November 2, 2006 (hereinafter collectively referred to as the "LLC Agreement"); and

WHEREAS, the Members wish further to amend the LLC Agreement.

NOW, THEREFORE, the Members hereby agree as follows:

1.      Capitalized terms used but not defined in this Amendment are used with the definitions given them in the LLC Agreement.

2.      The Members hereby acknowledge that as agreed by Unanimous Vote, Davison is permitted to sell to Chevron a portion of its Company Interest equal to 5% of the total issued and outstanding Company Interests of the Members (the "Purchased Interest").

3.      Effective upon the transfer of the Purchased Interest to Chevron, Exhibit A of the LLC Agreement shall be automatically amended to read as set forth in Exhibit A attached hereto.

4.      (a)      The definition of **Advanced Refining Technologies LP** or **ART LP** in Section 1.1 of the LLC Agreement is hereby deleted in its entirety.

        (b)      The definition of **ART Gmbh Dividends** in Section 1.1 of the LLC Agreement is hereby amended to read as follows:

**"ART Gmbh Dividends"** *means a dividend (as defined in Article 10, paragraph 4 of the US-Germany Tax Treaty) paid by Advanced Refining Technologies GmbH to the Company.*

(c)    Section 1.1 of the LLC Agreement is hereby amended to add the following definitions in alphabetical order:

**"Additional Intellectual Property"** *shall have the meaning set forth in Section 13.5(e).*

**"Directors"** *shall have the meaning such forth in Section 7.9(f).*

5.    Section 7.2 of the LLC Agreement is hereby amended to add at the end thereof the following additional sentence:

*The Chairman of the Executive Committee (the **"Chairman"**) shall be one of the Representatives.  For the calendar year 2009 the Chairman shall be Gregory E. Poling or a substitute appointed by Davison.  For the calendar year 2010 the Chairman shall be a Chevron Representative as appointed by Chevron.  In subsequent odd-numbered calendar years the Chairman shall be a Davison Representative appointed by Davison, and in subsequent even-numbered calendar years the Chairman shall be a Chevron Representative appointed by Chevron.*

6.    Section 7.9(b) of the LLC Agreement is hereby amended to read as follows:

*(b)    Titles and Number.    The elected Officers shall be the Managing Director, the Deputy Managing Director, the Secretary and Assistant Secretaries, the Director of Marketing, the Director of Supply, the Director of R&D, the Chief Financial Officer, and the Treasurer and Assistant Treasurers.    There may be elected from time to time, in accordance with Section 7.9(c), such additional Offices as the Executive Committee may desire.*

7.    Section 7.9(d) is hereby deleted in its entirety, Section 7.9(e) is hereby renamed Section 7.9(d), and a new Section 7.9(e) is hereby inserted to read as follows:

*(e)    Deputy Managing Director.    The Deputy Managing Director shall assist the Managing Director in implementing the business plan and strategies approved by the Executive Committee, and perform all duties incident to such office and such other duties as may, from time to time, be assigned to him by the Executive Committee or the Managing Director. The Deputy Managing Director may also hold one or more other Officer or other positions in the Company. If the Managing Director is an employee*

of or otherwise associated or identified with one of the Members, the Deputy Managing Director shall be a nominee of the other Member. In the absence of the Managing Director, the Deputy Managing Director shall have all of the powers and duties conferred upon the Managing Director that the Managing Director delegates (orally or in writing) to the Deputy Managing Director for performance during such absence.

8.      The first sentence of Section 7.9(f) is hereby amended to read as follows:

(f) Directors. In the absence of the Managing Director and the Deputy Managing Director, the Officers whose titles include the term "Director" (the "**Directors**") and that are designated by the Executive Committee shall, except as hereinafter provided, have all of the powers and duties conferred upon the Managing Director.

9.      In Section 7.9(g), (h) and (i), the phrase "assigned to him by the Executive Committee, the Chairman or the Managing Director" is hereby amended to read "assigned to him by the Executive Committee, the Managing Director or the Deputy Managing Director".

10.     Section 8.8 of the LLC Agreement is hereby amended to read as follows:

### 8.8    Transfer.

(a)     If any Company Interest or part thereof is sold, assigned or transferred during any accounting period, Tax Profits, Tax Losses, each item thereof and all other items attributable to the transferred interest for such period shall be divided and allocated between the transferor and the transferee by taking into account their varying interests during the period in accordance with Code Section 706(d), using any conventions permitted by law and selected by the Executive Committee.

(b)     All distributions made after the date of such transfer with respect to such transferred interest shall be allocated between the transferor and the transferee in proportion to the number of days in the period for which the distribution was made that each held the transferred interest.

11.     Section 9.2(a)(ii) of the LLC Agreement is hereby amended by increasing the Minimum Working Capital Requirements or MWCR to $60 million.

12.     (a)     Section 9.1(a)(vi) of the LLC Agreement is hereby amended in its entirety to read as follows:

(vi)    Any foreign taxes imposed on income or gain of any subsidiary of the Company that give rise to foreign tax credits under Code

> *Section 902 as a result of a dividend (as defined in the relevant tax treaty) paid by such subsidiary to the Company (and the related Section 78 gross up) shall be allocated to the Members in proportion to their respective Company Interests at the time the tax credit arises as a pass-through item to the Members of the Company.*

(b)     Effective upon the transfer of the shares of Advanced Refining Technologies GmbH from the Company to the Members, Section 9.1(a)(iii) and (iv) and all definitions in Section 1.1 of the LLC Agreement that apply only to said Section 9.1(a)(iii) and (iv), automatically shall be deleted and of no further force and effect.

13.     Section 10.3 of the LLC Agreement is hereby amended in its entirety to read as follows:

> ***10.3   Tax Returns.***   *The Tax Matters Member, on behalf of the Company, shall timely file, or shall cause to be filed, a complete and accurate version of all federal, state, local and foreign tax returns required to be filed by Company and its Affiliates. Each Member shall furnish to the Company upon the prior written request of the Tax Matters Member all pertinent information in its possession relating to the Company's and its Affiliates' operations that is necessary to enable such tax returns to be timely prepared and filed. Federal and state income tax returns will be prepared at the direction of the Members by either (i) a nationally recognized, independent accounting firm selected by the Members or (ii) the Tax Matters Member.  If the Tax Matters Member prepares the U.S. federal and state tax returns, the other Members shall have the right to review such returns at least 30 days prior to the earlier of the actual filing or the tax return extended due date as prescribed by law.  The Tax Matters Member will submit a draft of the returns to the other Members at least thirty (30) days prior to the filing of any return and, in the case of the federal partnership return, in no event later than June 30 of the year in which the return is due.  If upon review, the other Members reasonably believe that the Tax Matters Member has not prepared a complete and accurate return, then the other Members shall notify the Tax Matters Member within 20 days of receipt of such return and the Tax Matters Member shall revise the return to ensure that the tax filing is timely, complete and accurate.  The Tax Matters Member will file all tax returns on behalf of the Company.  Reasonable expenses of the Tax Matters Member incurred in carrying out these duties shall be promptly reimbursed by the Company.*

14.     Section 10.4 of the LLC Agreement is hereby amended to add clause (ix) thereto to read as follows:

> (ix)   to calculate the Research and Development tax credit using a
> methodology applicable under the law that results in the maximum
> available tax credit (in aggregate) to all Members.

15.     Section 10.5(e) of the LLC Agreement is hereby amended in its entirety to
read as follows:

> (e)   **_Furnishing Information_**.   The Members shall furnish the
> Tax Matters Member within 30 days from the receipt of the request with
> such information (including information specified in Code Sections 6230(e)
> and 6050K) as the Tax Matters Member may reasonably request to permit
> it to provide the Internal Revenue Service with sufficient information for
> purposes of Code Sections 6230(e) and 6050K.

16.     Section 13.5 of the LLC Agreement is hereby amended to add Section
13.5(e) thereto to read as follows:

> (e)   With respect to any intellectual property (other than
> trademarks) and technology owned by or licensed to the Company at the
> time of dissolution and not provided for in Section 13.5(a) through (d)
> (**_"Additional Intellectual Property"_**), the following provisions shall apply:
> (i) Additional Intellectual Property that is owned by the Company shall be
> transferred into joint ownership by the Members; and (ii) the Members
> shall use their reasonable best efforts to cause the Company's rights
> under licensed Additional Intellectual Property to be assigned jointly to the
> Members, or if such assignment cannot be obtained, then (to the extent
> permissible under applicable law and the terms of the licenses) enter into
> reasonable arrangements to provide both Members with the benefits of
> such licensed Additional Intellectual Property.

17.     The provisions of Sections 17.1, 17.3, 17.4, 17.5, 17.9 and 17.10 of the
LLC Agreement shall apply to this Amendment, except that references therein to "this
Agreement" shall be deemed to refer to this Amendment.

18.     Nothing in the LLC Agreement shall prevent the amendment and
modification of any of the exhibits and schedules attached thereto or referred to therein.

19.     Except as modified by this Amendment, all the provisions of the LLC
Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the Members have executed as of the date first set forth above, two copies of this Amendment, one such copy to be retained by each.

**CHEVRON PRODUCTS COMPANY**      **W. R. GRACE & CO.-CONN.**
A Division of Chevron U.S.A. Inc.


By: _____      By: _____
Name:      Name:
Title:      Title:

# Exhibit C

## FOURTH AMENDMENT TO CREDIT AGREEMENT

### (W. R. Grace & Co.-Conn.)

THIS FOURTH AMENDMENT TO THE CREDIT AGREEMENT ("Fourth Amendment") is entered into as of November __, 2009 ("Execution Date"), by and between **ADVANCED REFINING TECHNOLOGIES LLC**, a limited liability company organized under the laws of Delaware (the "Borrower"), and **W. R. GRACE & CO.-CONN.**, a Connecticut corporation (the "Lender")

### *WITNESSETH*

*WHEREAS*, Borrower and Lender entered into that certain Credit Agreement dated March 1, 2001, as amended by that certain First Amendment to Credit Agreement dated as of February 4, 2004, that certain Second Amendment to Credit Agreement entered into as of May 1, 2006, and that certain Third Amendment to Credit Agreement dated as of April 23, 2008 (hereinafter collectively referred to as the "Credit Agreement"), pursuant to which Lender agreed to make certain loans to Borrower;

*WHEREAS*, pursuant to Section 7.05 of the Credit Agreement, the parties hereto wish to enter into this Fourth Amendment to amend the amount of the Commitment;

*NOW, THEREFORE*, for and in consideration of the exchange of mutual promises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower and Lender agree to the amendment of the Credit Agreement as follows:

1.      The first sentence of Section 3.02 of the Credit Agreement is hereby amended to read in its entirety as follows:

> *"The Lender's Commitment shall be U.S.$20,250,000 or such lesser amount as provided in this Section 3.02."*

2.      This Fourth Amendment shall become effective on the later of (i) the Execution Date, and (ii) the date upon which the Lender shall have received written evidence of the approval of this Fourth Amendment by the Borrower's Executive Committee pursuant to Section 7.05 of the Credit Agreement .

3.      Except as otherwise expressly amended hereby, the Credit Agreement remains in full force and effect and unmodified, and except as otherwise defined herein, all capitalized terms used in this Fourth Amendment shall have the same meanings ascribed thereto in the Credit Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Fourth Amendment to the Credit Agreement to be executed by their respective duly authorized representatives as of the Execution Date.

**Advanced Refining Technologies LLC**          **W. R. Grace & Co.-Conn.**


By _____                    By _____
    Scott K. Purnell                          Name:
    Managing Director                         Title

# EXHIBIT D-1

## NON-NEGOTIABLE PROMISSORY NOTE

### 2007-2008 Maintenance Capital

US$8,700,000

November ___, 2009

Columbia, Maryland

**FOR VALUE RECEIVED, W. R. Grace & Co.-Conn.,** a Connecticut corporation having its principal offices at 7500 Grace Drive, Columbia, Maryland 21044 ("Borrower"), hereby promises to pay to **Advanced Refining Technologies LLC**, a Delaware limited liability company having its principal offices at c/o W. R. Grace & Co.- Conn., 7500 Grace Drive, Columbia, Maryland 21044 ("Lender"), the principal amount of **EIGHT MILLION SEVEN HUNDRED THOUSAND U. S. DOLLARS (US$8,700,000),** together with interest on the principal amount hereof outstanding from time to time, as more particularly set forth below, but in any event **ON DEMAND** by Lender or, upon the occurrence and during the continuance of a Member Demand Event (as defined below), by either member of Lender.

This Promissory Note evidences amounts borrowed in 2009 to fund Maintenance Capital Expenditures (as such term is defined in Section 5.5 of the Hydroprocessing Catalyst Supply Agreement effective March 1, 2001, as amended, between Lender and Borrower) in 2007 and 2008.

Interest on this Promissory Note shall be calculated based on a year of 360 days and actual days elapsed, and shall be payable monthly on the 15th day of each month (or if such day is not a Business Day, then on the next succeeding Business Day), commencing December 15, 2009, for the immediately preceding calendar month, and on the day when any principal prepayment is made with respect to the amount then prepaid.

Interest shall be calculated at the rate of interest per annum equal (to the full extent permitted by applicable law) to LIBOR (as defined below) plus 125 basis points (a basis point being equal to 1/100th of a percentage point); **_provided, however,_** that upon the occurrence and during the continuance of any default by Borrower in the scheduled payment of any amount due under this Promissory Note, which default shall continue for five Business Days after notice thereof to Borrower by Lender, or in the payment of any amount due

1

under this Promissory Note upon demand, interest shall, to the full extent permitted by law, thereafter accrue (as well after as before judgment) on such overdue amount at a rate equal to one percentage point (1%) above the rate of interest otherwise applicable herein. Interest shall be payable in respect of any principal amount hereof for the date of this Promissory Note, but not for the day on which such principal amount is repaid.

Principal will be paid in 80 equal monthly payments of $108,750.00, or in full upon demand as provided herein.  Principal payments shall be made on the 15th day on each consecutive month commencing January 15, 2010 (or if such day is not a Business Day, then on the next succeeding Business Day).

As used in this Promissory Note, the following terms shall have the following meanings:

"Business Day" shall mean a day on which banks are not required or authorized to close in New York, New York or Columbia, Maryland, U.S.A.

"Initial Interest Period" shall mean the period commencing on the date of this Promissory Note and ending on December 31, 2009.

"Interest Period" shall mean the Initial Interest Period and, thereafter, each quarterly period commencing on the first day of each subsequent calendar quarter and ending on the last day of such subsequent calendar quarter during the term of this Promissory Note.

"LIBOR" shall mean for each Interest Period the London Interbank Offered Rate for a loan of three months that appears on the Thomson One BBA LIBOR Screen at close of business on the second Business Day immediately preceding the first day of such Interest Period (the "Interest Determination Date"); *provided, however,* that (i) if no such rate appears on the Thomson One BBA LIBOR Screen on the Interest Determination Date, then LIBOR shall mean for such Interest Period the London Interbank Offered Rate for a loan of three months published in *The Wall Street Journal* on the Interest Determination Date; or (ii) if such rate appears on neither the Thomson One BBA LIBOR Screen nor in *The Wall Street Journal* on the Interest Date, then LIBOR shall mean for such Interest Period the London Interbank Offered Rate for a loan of three months and in an amount comparable to the aggregate principal amount outstanding under this Promissory Note, quoted on the Interest Determination Date by Bank of America, N.A.

"Member Demand Event" shall mean any of the following:

    (a)    default by Borrower in the payment of any amount due and

2

payable hereunder, which default has continued and is continuing uncured for a period of at least 180 days; or

(b)     Borrower shall cease doing business as a going concern; or

(c)     Borrower shall, except in connection with its currently pending case in the U.S. Bankruptcy Court for the District of Delaware, (i) voluntarily commence any proceeding or file any petition seeking relief under the United States Bankruptcy Code, as now constituted or hereafter amended, or any other federal or state bankruptcy, insolvency, receivership or similar law, (ii) apply for or consent to the appointment of a receiver, trustee, custodian, or similar official for Borrower or for a substantial part of the property or assets of Borrower, (iii) make a general assignment for the benefit of creditors, or (iv) become unable, admit in writing its inability, or fail generally to pay its debts as they become due; or

(d)     an involuntary proceeding shall be commenced or an involuntary petition shall be filed in a court of competent jurisdiction seeking (i) relief in respect of Borrower, or of a substantial part of the property or assets of Borrower, under the United States Bankruptcy Code, as now constituted or hereafter amended, or any other federal or state bankruptcy, insolvency, receivership or similar law, (ii) the appointment of a receiver, trustee, custodian, or similar official for Borrower or for a substantial part of the property or assets of Borrower, or (iii) the winding-up, liquidation or dissolution of Borrower; and such proceeding or petition shall continue undismissed for sixty (60) consecutive days; or

(e)     a voluntary or involuntary proceeding shall be (i) commenced, or (ii) petition shall be filed in a court of competent jurisdiction, seeking the winding-up, liquidation or dissolution of Lender; and such proceeding or petition shall continue undismissed for sixty (60) consecutive days; or

(f)     Borrower shall sell, assign or transfer its Company Interest to a member of Lender or any third party.

"U. S. Dollars" and US$" shall mean lawful currency of the United States of America.

All payments to the holder of this Promissory Note shall be made at the address of the holder set forth in the first paragraph of this Promissory Note, ATTENTION: Treasury Department, or at such other office or to such account as such holder from time to time may specify by notice to Borrower.

This Promissory Note is not negotiable, and is not assignable or transferable by the holder of this Promissory Note, except with the prior written consent of Borrower.

This Promissory Note may be prepaid in whole or in part, at any time and from time to time without premium or penalty, upon not less than one Business Day's notice to the holder. Each prepayment will be applied first to accrued and unpaid interest, and then to installments of principal in the reverse order of their due dates.

Borrower waives, to the extent that it may lawfully do so, presentment, protest, and all notices of whatever kind (other than a demand for payment as provided for herein and the right to return of this Promissory Note marked "canceled" against payment in full of all amounts due hereunder) in connection with payment of this Promissory Note; and Borrower agrees that the entire principal amount hereof may at any time and for any reason or no reason, in the holder's sole discretion, be declared to be immediately due and payable; and further agrees, on demand, to pay interest, to the extent permitted by applicable law, on all overdue amounts of principal and interest hereunder at the rate provided for herein. Borrower shall pay to the holder of this Promissory Note, on demand, all costs and expenses (including, without limitation, attorneys' fees and expenses) incurred by such holder in connection with enforcement and collection of this Promissory Note.

The obligation of Borrower to pay the holder of this Promissory Note shall be absolute and unconditional and the rights of such holder shall not be subject to any defense, set-off, counterclaim or recoupment by reason of any indebtedness, obligation or liability at any time owing or incurred by such holder to Borrower or otherwise.

Demand by Lender or one of its members to Borrower for payment and other notices to Borrower hereunder shall be made in writing (including facsimile transmission) or by telephone promptly confirmed in writing at the address shown following Borrower's signature hereon or at such other address as Borrower shall specify by written notice to the holder of this Promissory Note at its office address shown above (or at such other address as such holder from time to time may specify by written notice to Borrower).

Lender reserves the right to net any outstanding payments Lender may have outstanding with Borrower from any source whatsoever at any time Borrower fails to pay interest and repay principal by the due date under the terms of this Promissory Note.

No failure by the holder of this Promissory Note to assert any of its rights or take any action hereunder, nor any delay therein, shall constitute a waiver of such holders rights hereunder. The rights and remedies provided in this

4

Promissory Note are cumulative and not exclusive of any rights or remedies provided by law. No waiver of any such rights shall be effective unless made in a writing signed by the holder of this Promissory Note and then shall be effective in the particular instance and limited to the particular matter or matters referred to.

All amounts payable hereunder shall be paid in U. S. Dollars and in immediately available and freely transferable funds.

This Promissory Note shall be governed by and construed and enforced in accordance with the laws of New York. Borrower hereby irrevocably submits to the non-exclusive jurisdiction of any court of competent jurisdiction located in New York, New York for purposes of enforcement hereof and agrees that process may be served upon it in the manner specified herein for the delivery of notices or in any other manner permitted by law.

IN WITNESS WHEREOF, Borrower has caused this Promissory Note to be executed by its duly authorized officer as of the date first above written.

### W. R. GRACE & CO.-CONN.

By:_____

    Hudson La Force III
    Senior Vice President and
    Chief Financial Officer

Borrower's Address for notices:
W. R. Grace & Co.-Conn.
7500 Grace Drive
Columbia, Maryland
ATTENTION: Treasury Department
Telephone: (410) 531-4398 or (410) 531-4560
Fax: (410) 531-4461

5

# EXHIBIT D-2

## NON-NEGOTIABLE PROMISSORY NOTE

### 2009 Maintenance Capital

Up to US$3,500,000

November ___, 2009
Columbia, Maryland

**FOR VALUE RECEIVED, W. R. Grace & Co.-Conn.,** a Connecticut corporation having its principal offices at 7500 Grace Drive, Columbia, Maryland 21044 ("Borrower"), hereby promises to pay to **Advanced Refining Technologies LLC**, a Delaware limited liability company having its principal offices at c/o W. R. Grace & Co.- Conn., 7500 Grace Drive, Columbia, Maryland 21044 ("Lender"), the principal amount of **THREE MILLION FIVE HUNDRED THOUSAND U. S. DOLLARS (US$3,500,000),** or such lesser principal amount as shall from time to time be borrowed and outstanding hereunder and reflected on the grid attached hereto or in the records of the holder of this Promissory Note, together with interest on the principal amount hereof outstanding from time to time, as more particularly set forth below, but in any event **ON DEMAND**.

This Promissory Note evidences Amounts Borrowed from time to time in 2009 to fund Maintenance Capital Expenditures (as such term is defined in Section 5.5, and as such amount must be approved by Lender per Section 5.6, of the Hydroprocessing Catalyst Supply Agreement effective March 1, 2001, as amended, between Lender and Borrower).

Interest on this Promissory Note shall be calculated based on a year of 360 days and actual days elapsed, and shall be payable monthly on the 15th day of each month (or if such day is not a Business Day, then on the next succeeding Business Day), commencing December 15, 2009, for the immediately preceding calendar month, and on the day when any principal prepayment is made with respect to the amount then prepaid.

Interest shall be calculated at the rate of interest per annum equal (to the full extent permitted by applicable law) to LIBOR (as defined below) plus 125 basis points (a basis point being equal to 1/100th of a percentage point); **provided, however,** that upon the occurrence and during the continuance of any default by Borrower in the scheduled payment of any amount due under this Promissory Note, which default shall continue for five Business Days after notice thereof to Borrower by Lender, or in the payment of any amount due under this Promissory Note upon demand, interest shall, to the full extent permitted by

1

law, thereafter accrue (as well after as before judgment) on such overdue amount at a rate equal to one percentage point (1%) above the rate of interest otherwise applicable herein. Interest shall be payable in respect of any principal amount borrowed hereunder for the first day of such borrowing, but not for the day on which such principal amount is repaid.

Principal on the Total Borrowed will be paid in 96 monthly payments each equal to 1/96th of the Total Borrowed for a total repayment period of eight (8) years unless repaid in part or in full beforehand or **upon demand by Lender**. Principal repayments on the Total Borrowed shall be made on the 15th day of each consecutive month commencing February 15, 2010 (or if such day is not a Business Day then on the next succeeding Business Day).

As used in this Promissory Note, the following terms shall have the following meanings:

"Amount Borrowed" shall mean any periodic draw against this Promissory Note for Maintenance Capital Expenditures by Borrower.

"Business Day" shall mean a day on which banks are not required or authorized to close in New York, New York or Columbia, Maryland, U.S.A.

"Initial Interest Period" shall mean the period commencing on the date of this Promissory Note and ending on December 31, 2009.

"Interest Period" shall mean the Initial Interest Period and, thereafter, each quarterly period commencing on the first day of each subsequent calendar quarter and ending on the last day of such subsequent calendar quarter during the term of this Promissory Note.

"LIBOR" shall mean for each Interest Period the London Interbank Offered Rate for a loan of three months that appears on the Thomson One BBA LIBOR Screen at close of business on the second Business Day immediately preceding the first day of such Interest Period (the "Interest Determination Date"); **provided, however,** that (i) if no such rate appears on the Thomson One BBA LIBOR Screen on the Interest Determination Date, then LIBOR shall mean for such Interest Period the London Interbank Offered Rate for a loan of three months published in *The Wall Street Journal* on the Interest Determination Date; or (ii) if such rate appears on neither the Thomson One BBA LIBOR Screen nor in *The Wall Street Journal* on the Interest Date, then LIBOR shall mean for such Interest Period the London Interbank Offered Rate for a loan of three months and in an amount comparable to the aggregate principal amount outstanding under this Promissory Note, quoted on the Interest Determination Date by Bank of America, N.A.

"Total Borrowed" shall mean the sum of the Amounts Borrowed periodically under this Promissory Note the total which shall not exceed

2

the lesser of (i) the amount of the actual Maintenance Capital Expenditures for the year, and (ii) $3,500,000.

"U. S. Dollars" and US$" shall mean lawful currency of the United States of America.

All payments to the holder of this Promissory Note shall be made at the address of the holder set forth in the first paragraph of this Promissory Note, ATTENTION: Treasury Department, or at such other office or to such account as such holder from time to time may specify by notice to Borrower.

Borrower authorizes the holder of this Promissory Note to make entries in its records and on the grid attached hereto to show the date and amount of each borrowing and payment or prepayment made hereunder and the total principal amount then outstanding, and such entries shall be prima facie evidence thereof; but the failure of such holder to make any such grid entry shall not affect the repayment obligations of Borrower hereunder.

By January 31, 2010, Borrower will total the Amounts Borrowed under this Promissory Note, and will advise Lender of the Total Borrowed at the next meeting of the Executive Committee of Lender.

This Promissory Note is not negotiable, and is not assignable or transferable by the holder of this Promissory Note, except with the prior written consent of Borrower.

This Promissory Note may be prepaid in whole or in part, at any time and from time to time without premium or penalty, upon not less than one Business Day's notice to the holder. Each prepayment will be applied first to accrued and unpaid interest on the Total Borrowed, and then to installments of principal in the reverse order of their due dates.

Borrower waives, to the extent that it may lawfully do so, presentment, protest, and all notices of whatever kind (other than a demand for payment as provided for herein and the right to return of this Promissory Note marked "canceled" against payment in full of all amounts due hereunder) in connection with payment of this Promissory Note; and Borrower agrees that the entire principal amount hereof may at any time and for any reason or no reason, in the holder's sole discretion, be declared to be immediately due and payable; and further agrees, on demand, to pay interest, to the extent permitted by applicable law, on all overdue amounts of principal and interest hereunder at the rate provided for herein. Borrower shall pay to the holder of this Promissory Note, on demand, all costs and expenses (including, without limitation, attorneys' fees and expenses) incurred by such holder in connection with enforcement and collection of this Promissory Note.

The obligation of Borrower to pay the holder of this Promissory Note shall be absolute and unconditional and the rights of such holder shall not be subject to any defense, set-off, counterclaim or recoupment by reason of any

3

indebtedness, obligation or liability at any time owing or incurred by such holder to Borrower or otherwise.

Demand for payment and other notices to Borrower hereunder shall be made in writing (including facsimile transmission) or by telephone promptly confirmed in writing at the address shown following Borrower's signature hereon or at such other address as Borrower shall specify by written notice to the holder of this Promissory Note at its office address shown above (or at such other address as such holder from time to time may specify by written notice to Borrower).

No failure by the holder of this Promissory Note to assert any of its rights or take any action hereunder, nor any delay therein, shall constitute a waiver of such holders rights hereunder. The rights and remedies provided in this Promissory Note are cumulative and not exclusive of any rights or remedies provided by law. No waiver of any such rights shall be effective unless made in a writing signed by the holder of this Promissory Note and then shall be effective in the particular instance and limited to the particular matter or matters referred to.

All amounts payable hereunder shall be paid in U. S. Dollars and in immediately available and freely transferable funds.

This Promissory Note shall be governed by and construed and enforced in accordance with the laws of New York. Borrower hereby irrevocably submits to the non-exclusive jurisdiction of any court of competent jurisdiction located in New York, New York for purposes of enforcement hereof and agrees that process may be served upon it in the manner specified herein for the delivery of notices or in any other manner permitted by law.

IN WITNESS WHEREOF, Borrower has caused this Promissory Note to be executed by its duly authorized officer as of the date first above written.

**W. R. GRACE & CO.-CONN.**

By:_____

    Hudson La Force III
    Senior Vice President and
    Chief Financial Officer

Borrower's Address for notices:
W. R. Grace & Co.-Conn.
7500 Grace Drive
Columbia, Maryland
ATTENTION: Treasury Department
Telephone: (410) 531-4398 or (410) 531-4560
Fax: (410) 531-4461

4

**GRID**
**W. R. GRACE & CO.-CONN.**
**NON-NEGOTIABLE PROMISSORY NOTE**
**2009 Maintenance Capital**

| Date | Amount Borrowed | Amount Paid or Repaid | Total Amount Outstanding | Notation Made By |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **Total Borrowed** Repayment begins February 15, 2010 | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |