IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| W.R. GRACE & CO., ) | |
| *et al*., ) | Case No. 01-1139 (JFK) |
| ) | |
| Debtors. ) | Jointly-Administered |
| ) | |
| ) | Related Docket No. 23241 |

### ARROWOOD'S OBJECTION TO THE LIBBY CLAIMANTS' OFFER OF PROOF REGARDING TESTIMONY OF TERRY M. SPEAR

I, ALLEN SCHWARTZ, affirm that to the best of my knowledge the following is true under penalty of perjury:

1. I am an associate with the law firm of O'Melveny & Myers LLP, attorneys for Arrowood Indemnity Company f/k/a Royal Indemnity Company. I have reviewed Dr. Spear's December 2008 Expert Report, the CD of "Common Exhibits" produced by the Libby Claimants, and the Offer of Proof Regarding Testimony of Terry Spear, PhD, filed September 10, 2009.[1]

2. In paragraphs 4-6, Dr. Spear asserts that he would provide testimony consistent with the facts and opinions set forth in his studies regarding asbestos-containing trees in Libby, Montana. The Libby Claimants did not produce the documents supporting these asbestos-containing tree studies that Dr. Spear purports to have done in the Libby area. Arrowood

---

[1] In one of these articles, Dr. Spear allegedly conducted a study involving collection of tree bark and core samples from areas surrounding the Libby mine. *See* Ward, T.J., Spear, T., *et al.*, *Trees as Reservoirs for Amphibole Fibers in Libby, Montana*, Science of the Total Environment, vol. 367, issue 1, August 2006. In the other article, Dr. Spear allegedly conducted a study involving simulated firewood harvesting studying asbestos present in samples from (1) fibers caught in investigators' face mask filters, (2) fibers wiped from investigators' clothing, and (3) fibers wiped from tree bark samples. *See* Hart, J.F., Spear, T.M., *et al.*, *Evaluation of Asbestos Exposures During Firewood Harvesting Simulations in Libby, Montana - Preliminary Data*, Ann. Occup. Hyg., vol. 51, No. 8, November 2007.

asserted a timely objection and moved to strike Dr. Spear, on among other grounds, because the Libby Claimants did not comply with their basic expert-disclosure requirements.[2]

3.  Moreover, the Libby Claimants failed to produce any database, notes or other documents purporting to memorialize Dr. Spear's review.  Nor did they produced any database, spreadsheet or schedule that identifies with specificity the scope and nature of the population allegedly studied or the facts extracted on each claimant.

4.  The level of non-compliance was significant.  Included among the materials that the Libby Claimants failed to produce or withheld were documents supporting the studies that Dr. Spear purports to have conducted in the Libby area.  These documents include:

- Databases and spreadsheets that contain tree bark results that Dr. Spear contends that he took from test sites and control sites in the Libby area
- Databases and spreadsheets that contain the tree core results from test sites and control sites that Dr. Spear alleges that he preformed.
- Results from bark and core sample analysis performed by Wadsworth Center
- Databases and spreadsheets containing the scanning electron micrographs of amphibole fibers on bark and core samples that Dr. Spear alleges that he performed.
- Results of transmission electron microscopy analysis of bark and core samples
- Data underlying the table of averages in the firewood harvesting study.
- Spreadsheets of results from asbestos fiber collection from face masks
- Spreadsheets of results from asbestos fiber collection from clothing wipes
- Spreadsheets of results from asbestos fiber collection from bark samples
- Lists of locations of test site trees selected for the harvesting simulation
- Results from bark sample analysis by transmission electron microscopy
- All data recorded by the "data recorder" present at harvesting simulation
- Results of air and wipe sample analysis performed by DataChem Laboratories

5.  Rule 26(a)(2)(B) required the disclosure of all information that experts consider in forming their opinions and testimony, including all data or other information.  Fed. R. Civ. P. 26(a)(2)(B).[3]  This Rule imposed a duty to disclose, without awaiting formal discovery requests,

---

[2] *See* Arrowood's Joinder to Plan Proponents Motion to Exclude the Expert Report of Dr. Spear and Reply to the Libby Claimants Opposition to the Motion to Strike Dr. Spear [Dkt. No. 22485].

[3] Fed. R. Civ. P. 26 and Fed. R. Civ. P. 37 are incorporated generally by Fed. R. Bankr. P. 9014, and respectively by Fed. R. Bankr. P. 7026, and Fed. R. Bankr. P. 7037.

basic information that was needed to prepare for trial. Rule 37 imposes severe consequences for violating Rule 26. Unless the failure to produce data or other information is harmless—which is not the case here—the non-complying party is not permitted to use as evidence any testimony or information that should have been disclosed. That sanction was entirely appropriate here and provided a separate and independent ground from those asserted by the Plan Proponents for striking Dr. Spear.

6.  To the extent that Arrowood and other parties in interest were denied access to this material, they were severely prejudiced. First, it would have been difficult to refute Dr. Spear's confirmation testimony without an opportunity to examine the data supporting his opinion—or to have done so before his deposition. Second, Arrowood was precluded from preparing rebuttal opinions relating to Libby issues, which were due on April 6, 2009. Third, there was no way for Arrowood to cure the prejudice to the extent it was denied access to this discovery.

7.  Sanctions under Rule 37 "provide[] an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed." Fed R. Civ. P. 26(a)(2)(B), Advisory Committee Notes (1993). Accordingly, the Third Circuit has not hesitated to uphold decisions striking expert testimony where a party has failed to comply with this rule.[4] Rule 37 imposes severe consequences for violating Rule 26.

---

[4]  *See United State v. 68.94 Acres of* Land, 918 F.2d 389, 396–97 (3d Cir. 1990) (upholding the exclusion of plaintiff's expert when, at trial, the expert relied on data that plaintiffs had failed to disclose in accord with a pre-trial order); *Hagans v. Henry Weber Aircraft Distributors, Inc.*, 852 F.2d 60, 64 (3d Cir. 1988) (holding that the exclusion of plaintiff's substitute pilot expert was a proper sanction for the plaintiff's failure to disclosure all the bases of the original pilot expert's opinion in accordance with the district judge's pre-trial order); *Brooks*, 121 Fed. Appx. at 965 (affirming the exclusion of plaintiff's expert witness for failing to file an expert report prior to the discovery deadline, depriving defendant of a meaningful opportunity to depose him and putting defendant at a substantial disadvantage); *see also Smith v. Botsford General Hospital*, 419 F.3d 513, 516 (6th Cir. 2005) (affirming the striking of plaintiff's expert witness for failure to disclose the data and other information considered in forming his opinion); *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 282–284, 289–91 (E.D. Va. 2001) (finding that government had a duty to preserve correspondence between expert and consultants, and that destruction of such

Unless the failure to produce data or other information is harmless—which is not the case here—the non-complying party is generally not permitted to use as evidence any testimony or information that should have been disclosed. That sanction was entirely appropriate here.

8. I submit this declaration as an objection to the Libby Claimants' Offer of Proof Regarding the Testimony of Terry M. Spear, and to the extent necessary, as a counter-offer of proof.

Dated: New York, New York
September 29, 2009

/s/ Allen Schwartz_____
Allen Schwartz

---

evidence was intentional warranting sanctions for spoliation of evidence, and that an adverse inference against the expert's testimony and their credibility in general was warranted).