# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) ) W.R. GRACE & CO., <u>et al.</u>, ) ) ) Debtors. ) ) | **Chapter 11** **Case No. 01-1139 (JKF)** **(Jointly Administered)** |

**DECLARATION OF JOSEPH J. RADECKI, JR. UNDER
FED. R. BANKR. P. 2014, 2016 AND 5002 IN SUPPORT OF THE
APPLICATION OF DAVID T. AUSTERN, ASBESTOS PI FUTURE CLAIMANTS'
REPRESENTATIVE, FOR AUTHORIZATION TO EMPLOY
LINCOLN PARTNERS ADVISORS LLC AS FINANCIAL ADVISOR TO THE
<u>ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE</u>**

I, Joseph J. Radecki, Jr., state:

1. I am Managing Director of Lincoln Partners Advisors LLC ("Lincoln"), an Illinois limited liability company, which maintains offices at 400 Madison Avenue, 21st Floor, New York, New York 10017. This declaration is submitted pursuant to Fed. R. Bankr. P. 2014, 2016 and 5002, in support of the Application of David T. Austern, Asbestos PI Future Claimants' Representative, for Authorization to Employ Lincoln Partners Advisors LLC as Financial Advisor to the Asbestos PI Future Claimants' Representative (the "Application"), filed by David T. Austern, the Court-appointed legal representative for future asbestos personal injury claimants in the above-captioned cases (the "FCR" or "Mr. Austern").[1]

2. Except as otherwise provided below, the facts set forth in this declaration are based upon my personal knowledge, upon records maintained by Lincoln or by me in the ordinary course of business.

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Application.

**The Court's Prior Approval of the FCR's Financial Advisor**

3.     By Order dated September 27, 2004, the Court authorized the FCR to retain me and my team as the FCR's financial advisor in these cases. (Dkt. No. 6479). At that time, my colleagues and I were employed by CIBC World Markets ("CIBC").

4.     In February 2006, my team and I resigned from CIBC and joined PJC. At that time, the FCR, with Court approval, terminated CIBC and retained PJC as his financial advisor pursuant to an Order entered on May 8, 2006. (Dkt. No. 12378).

5.     In March 2008, I resigned from PJC and began rendering financial advisory services through Tre Angeli LLC ("Tre Angeli") of which I was the sole member and employee.

6.     After I resignation from PJC, with Court approval, the FCR retained and employed PJC and me (through my company, Tre Angeli) as co-financial advisors pursuant to separate retention agreements for an aggregate monthly fee of up to $100,000.00. (Dkt. Nos. 19190 and 19189).

**My Employment With Lincoln**

7.     I advised the FCR that I joined Lincoln as a Managing Director, effective as of September 1, 2009. I understand that the FCR wishes to continue to receive my services (through my new firm, Lincoln), effective as of September 1, 2009, pursuant to the terms and conditions set forth in the retention agreement ("Retention Agreement"), a copy of which is attached hereto as **Exhibit 1**, and has filed an Application with the Court.

8.   I understand that contemporaneously with and subject to the approval of the Application, the FCR is terminating the engagement of Tre Angeli, by consent, effective as of August 31, 2009, and is terminating the engagement of PJC effective as of October 31, 2009.[2]

**Lincoln's Qualifications and the Scope of Lincoln's Retention**

9.   I have provided financial advice to the FCR in these cases since 2004. As a result of my numerous years of experience in these cases as well as in other asbestos bankruptcy cases, I am very familiar with these cases, and with the concerns and issues important to the FCR and to asbestos personal injury claimants who may assert claims or demands in the future.

10.  Accordingly, the FCR desires to continue the engagement of me (through Lincoln) and believes that my continued services with respect to the matters described below are essential to the FCR's role in these cases.

11.  The FCR has requested that I continue to render the following services effective as of September 1, 2009, in connection with these cases:

   a.   assist the FCR in analyzing and reviewing the acts, conduct, assets, liabilities and financial condition of the Debtors;

   b.   advise the FCR with respect to a proposed restructuring of the Debtors and implementation of a trust as contemplated under Section 524(g) of the Bankruptcy Code including analyzing, negotiating and effecting a plan of reorganization or recapitalization for the Debtors, and, to the extent necessary, performing valuation analyses on the Debtors and their assets;

   c.   evaluate the financial effect of the implementation of any plan of reorganization upon the assets or securities of the Debtors; and

   d.   any other tasks as mutually agreed upon by Lincoln and the FCR.

---

[2] Pursuant to the retention agreements with PJC and Tre Angeli, the FCR may terminate the engagements by providing thirty (30) days notice. However, in order to save costs for the Debtors' estates, I agreed, subject to approval of the Application, that Tre Angeli's engagement could be terminated on less than thirty (30) days notice.

3

Subject to the Court's approval of the Application, I am willing to perform the services described above.

## Disinterestedness of Lincoln

12.     In order to prepare this declaration, I have taken various steps to determine whether any conflict of interest exists that would preclude Lincoln from serving as financial advisor and providing financial advisory services to the FCR.  In connection therewith, I reviewed Lincoln's business records to determine, among other things, (i) whether Lincoln already represents any other client in connection with the proposed new matter, (ii) whether Lincoln already represents any other client in a capacity that may be adverse to the proposed client, or where the proposed representation might be adverse to the interests of such other client, and (iii) whether Lincoln has any connections with the Debtors, their creditors and other parties identified to me as parties in interest.

13.     Based upon the review of the business records, as set forth above, I have confirmed that there are no matters in which Lincoln is, or I am, involved relating to these cases.

14.     Lincoln and I have business associations with, professional and social relationships with, or interests adverse to, creditors or parties in interest, or their attorneys, accountants or advisors; as far as I have been able to ascertain, none of these associations, relationships, or interests have any connection with these cases.  As part of our practice, Lincoln provides services in cases, proceedings and transactions throughout the United States involving many different parties, and works together with many different parties, which may include creditors or parties in interest, or attorneys, accountants or other professional firms or advisors who may represent creditors or parties in interest in these cases.

4

15. To the best of my knowledge, Lincoln is not related to any United States District Judge or United States Bankruptcy Judge for the District of Delaware or to the United States Trustee for this district or to any known employee of his office.

16. To the best of my knowledge, except as otherwise set forth herein, Lincoln does not (a) hold or represent any interest adverse to the FCR on the matters upon which Lincoln is to be retained or (b) have any connection with the Debtors, creditors, any other party in interest, their respective attorneys and retained professionals, the United States Trustee or any person employed in his office (to the extent identified to me).

**Professional Compensation**

17. Lincoln and the Future Claimants' Representative entered into a Retention Agreement, effective as of September 1, 2009, pursuant to which Lincoln will act as the Future Claimants' Representative's financial advisor if authorized by this Court. Pursuant to the May 24, 2004 Order appointing the FCR, compensation, including professional fees and reimbursement of expenses, shall be payable to the Future Claimants' Representative and his professionals from the Debtors' estates subject to approval by the Court and subject to the Administrative Compensation Order. The terms and conditions of Lincoln's retention are set forth in the Retention Agreement. See Exhibit 1.

18. Lincoln intends to apply for compensation for professional services rendered in connection with these cases, and for reimbursement of actual and necessary expenses incurred, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of this Court, including the Administrative Compensation Order. Lincoln has agreed to accept as compensation such sums as may be allowed by the Court for fees incurred for professional services and for reimbursement of reasonable and necessary expenses.

19. Pursuant to the Retention Agreement, Lincoln agreed to perform the requested services, effective as of September 1, 2009, for a cash fee of up to $50,000.00 per month for September and October 2009, and following the termination of PJC, up to $75,000.00 per month thereafter, payable monthly in arrears. In addition, the Retention Agreement provides for reimbursement of reasonable out-of-pocket expenses incurred in connection with the provision of services thereunder. Such expenses include, but are not limited to, reasonable fees and expenses of its legal counsel, travel and lodging expenses, word processing charges, messenger and duplicating services, facsimile expenses and other customary expenditures.

20. Lincoln has agreed to invoice for these expenses in a manner and at rates consistent with charges made generally to Lincoln's other clients. Both Lincoln and the FCR recognize and acknowledge that the compensation proposed has been accepted by all parties based on their understanding of the proposed transaction. The fees to be paid to Lincoln pursuant to the terms of the Retention Agreement are subject to the standard of review provided in section 328(a) of the Bankruptcy Code and are not subject to any other standard of review, under section 330 of the Bankruptcy Code or otherwise, provided, however, that the FCR may, on a monthly basis, confer with Lincoln whether any adjustment shall be made in the monthly fee based on Lincoln's activity level for such month.

21. Other than as set forth herein, no arrangement is proposed between the FCR and Lincoln for compensation to be paid in these cases.

22. Lincoln has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

23. Pursuant to the Retention Agreement, Lincoln requires that the Debtors agree to indemnify and hold harmless Lincoln and the "Indemnified Parties" as defined in Annex A to the

Retention Agreement. The indemnification provisions are identical to the provisions approved by the Court in connection with the FCR's prior employment of Tre Angeli and PJC.

\* \* \* \* \* \*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: September 30, 2009

Joseph J. Radecki, Jr.

# EXHIBIT 1



Lincoln Partners Advisors LLC
400 Madison Avenue
21st Floor
New York, NY 10017

tel   212.277.8100
fax  212.277.8101
www.lincolninternational.com

**CONFIDENTIAL**

September 30, 2009

David T. Austern
Claims Resolution Management Corporation
3110 Fairview Park Drive, Suite 200
Falls Church, VA 22042-0683

Dear Mr. Austern:

This letter confirms the agreement (the "Agreement"), effective as of September 1, 2009, between David T. Austern, the Court appointed representative for future asbestos personal injury claimants (the **"Future Representative" or "you"**) to W.R. Grace & Co. (together with its subsidiaries and affiliates, the "Company"), and Lincoln Partners Advisors LLC (**"Lincoln" or "we" or "us"**) to engage us, subject to Bankruptcy Court approval, as your financial advisor in connection with a proposed restructuring of the Company and implementation of a trust as contemplated under Section 524(g) of the Bankruptcy Code (the "Transaction"). The Future Representative will undertake to apply to the Bankruptcy Court, which has jurisdiction over the Company's chapter 11 bankruptcy proceeding, for authorization to employ Lincoln in accordance with the terms and conditions of this Agreement, with this Agreement attached as an exhibit to such application. Subject to the terms and conditions hereof, we agree to accept as compensation for the services that we render pursuant to the terms hereof such sums as may be allowed by the Bankruptcy Court for fees incurred for professional services and for reimbursement of reasonable and necessary expenses.

Notwithstanding anything to the contrary contained in this letter agreement: (a) Lincoln makes no representations or warranties about the Company's ability to (1) successfully improve its operations, (ii) maintain sufficient liquidity to operate its business or (iii) successfully complete a transaction, and (b) Lincoln makes no representation, warranty or commitment to underwrite, place or purchase any securities or provide any form of financing to the Company.

**SERVICES**

Subject to approval of the Bankruptcy Court, the Future Representative hereby retains Lincoln as the financial advisor to the Future Representative in connection with the Transaction. We agree to provide the following services during the term of our engagement:

- assist the Future Representative in analyzing and reviewing the acts, conduct, assets, liabilities and financial condition of the Company;

1



- advise the Future Representative with respect to a proposed restructuring of the Company and implementation of a trust as contemplated under Section 524(g) of the Bankruptcy Code including analyzing, negotiating and effecting a plan of reorganization or recapitalization for the Company, and, to the extent necessary, performing valuation analyses on the Company and its assets;

- evaluate the financial effect of the implementation of any plan of reorganization upon the assets or securities of the Company; and

- any other tasks as mutually agreed upon by Lincoln and the Future Representative.

It is expressly understood that Lincoln is working for and will take direction solely from the Future Representative and will share any work product with the Company only with the permission of the Future Representative.

In rendering its services to the Future Representative hereunder, Lincoln is not assuming any responsibility for the Company's underlying business decision to pursue any business strategy or to effect or not to effect any Transaction.

## FEES AND EXPENSES

In full payment for services rendered and to be rendered hereunder by Lincoln, the Company shall pay to Lincoln, in cash, subject to Bankruptcy Court approval, monthly fees (the "Monthly Fees") as follows:

(a)  a fee of up to $50,000.00 for September and October 2009 and a fee of up to $75,000.00 per month thereafter, payable monthly in arrears.

Both Lincoln and the Future Representative recognize and acknowledge that the compensation proposed has been accepted by all parties based on their understanding of the proposed Transaction. The Monthly Fee to be paid to Lincoln pursuant to the terms of this letter agreement shall be subject to the standard of review provided in Section 328(a) of the Bankruptcy Code and is not subject to any other standard of review, under section 330 of the Bankruptcy Code or otherwise, provided, however, that the Future Representative may, on a monthly basis, confer with Lincoln whether any adjustment shall be made in the Monthly Fee based on Lincoln's activity level for such month.

Subject to Bankruptcy Court approval, the Company shall periodically reimburse Lincoln promptly when invoiced for all of our reasonable out-of-pocket expenses, including, without limitation, reasonable fees and disbursements of counsel, travel and lodging expenses, word processing charges, messenger and duplicating services, and database, courier and communication costs, and other customary expenditures in



connection with the performance of our services hereunder, regardless of whether or not the Transaction occurs. Upon termination of this Agreement or completion of the Transaction, subject to Bankruptcy Court approval, the Company shall pay promptly in cash any unreimbursed expenses that have accrued as of such date.

This reimbursement obligation is in addition to the reimbursement of fees and expenses set forth below relating to attendance by us at proceedings or to indemnification and contribution as contemplated elsewhere in this Agreement.

To the extent our personnel assist in, or provide testimony in trial or deposition for any action, suit or proceeding relating to the Transaction or our engagement hereunder after the consummation of the Transaction or termination of our engagement hereunder, subject to Bankruptcy Court approval, the Company shall pay Lincoln a per diem charge, together with reimbursement of all out-of-pocket expenses and disbursements, for the services of such officers in an amount to be mutually agreed upon by the Future Representative and Lincoln prior to such assistance.

### TERM

The term of this Agreement shall commence on September 1, 2009 and terminate 30 days from the date on which the Future Representative or Lincoln, as the case may be, receives written notice from the other of termination of this engagement. Lincoln may resign at any time and the Future Representative may terminate Lincoln's services at any time, each by giving written notice to the other. If terminated, Lincoln shall be entitled to receive any fees for any monthly period which are due and owing Lincoln upon the effective date of termination; however, such amounts will be prorated for any incomplete monthly period of service. Lincoln will be entitled to reimbursement for out-of-pocket expenses as described herein, subject to Bankruptcy Court approval. Termination of Lincoln's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Lincoln and certain related persons as provided in the Indemnification and Contribution Section below and Annex A and the Other Matters Relating To Our Engagement Section below.

### LIABILITY FOR FEES AND EXPENSES

Subject to approval by the Bankruptcy Court, the Company shall be solely responsible for the payment of compensation and reimbursement of expenses to Lincoln under this Agreement. The Future Representative shall not be liable for the payment of any compensation or reimbursement of any expenses to Lincoln hereunder.

### INDEMNIFICATION AND CONTRIBUTION

Subject to approval by the Bankruptcy Court, in addition to the payment of fees and reimbursement of expenses provided for above, and regardless if any Transaction is consummated, the Company shall agree to indemnify Lincoln with regard to the matters contemplated herein, as set forth in Annex A, attached hereto, which is hereby



incorporated into this Agreement by reference and made a part of this Agreement as if fully set forth herein. Such indemnification shall survive any termination, expiration or completion of this Agreement.

### DISCLOSURE OF ADVICE AND INFORMATION

Except as required by law, this Agreement and the services, information and advice to be provided by Lincoln hereunder is for the confidential use of the Future Representative and shall not be disclosed to third parties without Lincoln's written permission.

The Future Representative shall use his reasonable efforts to have the Company furnish to Lincoln such information as Lincoln requests for purposes of performing services under this letter engagement (the "Information"). The Future Representative will use his reasonable efforts to have the Company agree and represent that all Information relating to the Company furnished to Lincoln will be accurate and complete in all material respects at the time provided, and that, if the Company is aware of any Information becoming materially inaccurate, incomplete or misleading during the engagement hereunder, the Company will promptly advise Lincoln. The Future Representative recognizes and confirms that Lincoln assumes no responsibility for the accuracy and completeness of the Information and will be using and relying upon the Information (and information available from generally recognized public sources) without assuming responsibility for independent verification or independent evaluation of any of the assets or liabilities of the Company.

You agree that we may place advertisements in mailings and financial and other newspapers and journals at our expense describing our services to you for any publicly announced or completed Transaction.

### OTHER MATTERS RELATING TO OUR ENGAGEMENT

You acknowledge that you have retained us solely to provide the services set forth in this Agreement. In rendering such services, we will act as an independent contractor, and not as an agent or otherwise, and we owe our duties arising out of this engagement solely to the Future Representative. You acknowledge that nothing in this agreement is intended to create duties to the Company's creditors or security holders or any third party in connection with our engagement hereunder, all of which are expressly waived, and we and you specifically disclaim the creation of any fiduciary relationship between, or the imposition of any fiduciary duties on, any party. No one other than the Future Representative is authorized to rely upon the engagement of Lincoln hereunder or any statements, advice, opinions or conduct by Lincoln. The Future Representative further acknowledges that Lincoln may perform certain of the services described herein through one or more of its affiliates and any such affiliates shall be entitled to the benefit of this Agreement.

The Future Representative agrees that any reference to Lincoln as financial advisor in any release or communication or materials distributed (other than in pleadings filed with a court), is subject to our prior written approval, unless such release or communication is required by law or regulation. If Lincoln resigns prior to the dissemination of any such release, communication or material, no reference shall be made therein to Lincoln.

The Future Representative represents and warrants that, subject to Bankruptcy Court approval, he has all requisite power and authority, and all necessary authorizations, to enter into and carry out the terms and provisions of this Agreement and the execution, delivery and performance of this Agreement does not breach or conflict with any agreement, document or instrument to which he is a party or bound.

The Future Representative represents and warrants to Lincoln that, to the best of his knowledge, there are no brokers, representatives or other persons which have an interest in compensation due to Lincoln from any transaction contemplated herein or which would otherwise be due any fee, commission or remuneration upon consummation of any Transaction.

The Future Representative agrees and acknowledges that Lincoln and its affiliates shall have no obligation to disclose any information acquired in connection with various investment banking, commercial banking and financial advisory relationships with, or services for, other clients and customers, to the Company or to use such information in connection with any Transaction contemplated by this Agreement.

The Future Representative agrees and acknowledges that we are not an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction. You should consult with your own advisors concerning such matters and are responsible for making your own independent investigation and appraisal of the Transaction contemplated by this Agreement, and we have no responsibility or liability to you with respect such matters.

## MISCELLANEOUS

This Agreement shall be governed by and construed in accordance with the laws of Delaware, without regard to its conflict of law principles. You and we hereby waive all right to trial by jury in any action, proceeding, or counterclaim (whether based upon contract, tort or otherwise) in connection with any dispute arising out of this Agreement or any matters contemplated by this Agreement. This Agreement embodies the entire agreement and understanding between you and us and supersedes all prior agreements and understandings relating to the subject matter of this Agreement. This Agreement may be executed in any number of counterparts. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect. This Agreement is solely for the benefit of you and us, and no other person (other than the Indemnified Persons set forth in Annex A hereto) shall acquire or have any rights by virtue of this Agreement.



If this letter correctly sets forth the understanding between us, please so indicate by signing on the designated space below and returning a signed copy to us.

Sincerely,

LINCOLN PARTNERS ADVISORS LLC

By _____
Name:  Joseph V. Radecki, Jr.
Title:    Managing Director


FUTURE REPRESENTATIVE OF W.R. GRACE & CO.

By _____
     David T. Austern

If this letter correctly sets forth the understanding between us, please so indicate by signing on the designated space below and returning a signed copy to us.

Sincerely,

LINCOLN PARTNERS ADVISORS LLC

By _____
Name: Joseph J. Radecki, Jr.
Title:    Managing Director


FUTURE REPRESENTATIVE OF W.R. GRACE & CO.

By *(signature)*
David T. Austem



## Annex A to Engagement Letter

(A)     In consideration of Lincoln's agreement to act on behalf of the Future Representative, notwithstanding any limitations set forth herein, subject to approval by the Bankruptcy Court, the Company agrees to indemnify and hold harmless Lincoln and its affiliates and their representative present and former directors, officers, employees, agents and controlling persons within the meaning of section 15 of the Securities Act of 1933, as amended (each such person, including Lincoln, an "Indemnified Party" and collectively the "Indemnified Parties") to the fullest extent permitted by law from and against any losses, claims, damages and liabilities, joint or several (collectively, the "Damages"), to which such Indemnified Party may become subject in connection with or otherwise relating to or arising from (i) any transaction or matter in any way relating to or referred to in this letter agreement or arising out of the matters contemplated by this letter agreement or the engagement of or performance of services or any involvement or alleged involvement in a Transaction (as defined in this letter agreement) by Lincoln thereunder or (ii) an untrue statement or an alleged untrue statement of a material fact or the omission or alleged omission to state a material fact necessary in order to make a statement not misleading in light of the circumstances under which it was made, and will reimburse each Indemnified Party for all fees and expenses (including the fees and expenses of counsel) (collectively, "Expenses") as incurred, subject to the provisions of paragraph (D), below, in connection with investigating, preparing, pursuing or defending any threatened or pending claim, action, proceeding or investigation (collectively, the "Proceedings") arising therefrom, whether or not such Indemnified Party is a formal party to such Proceeding; provided, that the Company will not be liable to any such Indemnified Party to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from the bad faith, gross negligence or willful malfeasance of the Indemnified Party seeking indemnification hereunder or any breach by Lincoln of this letter agreement. The Company also agrees that no Indemnified Party will have any liability (whether direct or indirect, in contract, tort or otherwise) to the Company or any person asserting claims on behalf of the Company arising out of or in connection with any transactions contemplated by this letter agreement or the engagement of or performance of services by any Indemnified Party thereunder except to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from the bad faith, gross negligence or willful malfeasance of the Indemnified Party or any breach of Lincoln of this letter agreement.

(B)     If for any reason other than in accordance with this letter agreement, the foregoing indemnity is unavailable to an Indemnified Party in respect of any Damages (including all Expenses incurred) referred to herein or insufficient to hold an Indemnified Party harmless, then the Company agrees that in lieu of indemnifying



such Indemnified Party, the Company shall contribute to the amount paid or payable by such Indemnified Party as a result of such Damages (including all Expenses incurred) (i) in such proportion as is appropriate to reflect the relative benefits to the Company and/or its stockholders on the one hand, and of the Indemnified Party on the other hand, from the services rendered under this letter agreement or (ii) if the allocation provided by clause (i) above is not permitted by applicable by law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of the Company on the one hand and of the Indemnified Party on the other. The Company agrees that for purposes of this paragraph the relative benefits to the Company and/or its stockholders and Lincoln in connection with the matters covered by this letter agreement will be deemed to be in the same proportion that the total value paid or received or to be paid or received by the Company and/or its stockholders in connection with the transactions contemplated by this letter agreement, whether or not consummated, bears to the fees paid to Lincoln under this letter agreement; provided, that in no event will the total contribution of all Indemnified Parties to all such Damages exceed the amount of fees actually received and retained by Lincoln under this letter agreement (excluding any amounts received by Lincoln as reimbursement of expenses). Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any alleged conduct relates to information provided by the Company or other conduct by the Company (or its employees or other agents) on the one hand, or by Lincoln, on the other hand.

(C) The Company agrees not to enter into any waiver, release or settlement of any Proceeding (whether or not Lincoln or any other Indemnified Party is a formal party to such Proceeding) in respect of which indemnification may be sought hereunder without the prior written consent of Lincoln (which consent will not be unreasonably withheld), unless such waiver, release or settlement (i) includes an unconditional release of Lincoln and each Indemnified Party from all liability arising out of such Proceeding and (ii) does not contain any factual or legal admission by or with respect to any Indemnified Party or any adverse statement with respect to the character, professionalism, expertise or reputation of any Indemnified Party or any action or inaction of any Indemnified Party. In the event that a cause of action is asserted against an Indemnified Party arising out of or relating to the performance of his, her or its duties as financial advisor to the Future Representative, the Indemnified Party shall have the right to choose its own counsel.

(D) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Company's chapter 11 bankruptcy cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Company's chapter 11 bankruptcy cases, Lincoln believes that it is entitled to the payment of any amounts by the Company on account of the Company's indemnification,



contribution and/or reimbursement obligations under this letter agreement or arising out of the matters contemplated by this letter agreement or the engagement of or performance of services by an Indemnified Party thereunder, including without limitation, the advancement of defense costs, Lincoln must file an application therefore with the Bankruptcy Court, and the Company may not pay any such amounts to Lincoln before the entry of an order by the Bankruptcy Court approving payment. This paragraph is intended only to specify the period of time under which the Bankruptcy Court shall have jurisdiction over any request for fees and expenses by Lincoln for indemnification, contribution or reimbursement and not to limit the duration of the Company's obligation to indemnify Lincoln.

(E) The indemnity, reimbursement and contribution obligations of the Company hereunder will be in addition to any liability which the Company may have at common law or otherwise to any Indemnified Party and will be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company or an Indemnified Party. The provisions of this Annex will survive the modification or termination of this letter agreement.