# EXHIBIT A

**Phase II Deposition Designations re Edwin Ordway**

| Witness | Plan Proponents' Designations | Plan Objector's Counters | Summary Of Designations | Objection to Designations |
|---|---|---|---|---|
| Ordway, Edwin 08/29/2008 | 6:17 - 7:16 | | Mr. Ordway has given depositions before, understands the basic rules, and understands the obligation to tell the truth. | No Objection |
| | | CC/BLG Ctr 7:17 - 8:12 | Mr. Ordway's expertise is in financial restructuring. He is an expert in and familiar with the methodologies relevant to his work in this case. | No Objection |
| | | CC/BLG Ctr 8:13 - 9:5 | Mr. Ordway confirms that Exhibit 1, his declaration, is true and accurate. | No Objection |
| | | CC/BLG Ctr 29:11 - 29:23 | In comparing the interest at issue and benefit available to stakeholders, Mr. Ordway is really comparing the interest to the value generated by Grace. This value, according to his work, is reflected in the stock price. | No Objection |
| | | CC/BLG Ctr 30:10-19 | EBITDA and revenue are reflected in Grace's equity value as market value presumably contemplates operating | No Objection |

| Witness | Plan Proponents' Designations | Plan Objector's Counters | Summary Of Designations | Objection to Designations |
|---|---|---|---|---|
| | | | performance. | |
| | | CC/BLG Ctr 30:20-31:3 | Mr. Ordway's determination that the interest at issue is de minimis considers the total value of the company and its operating performance. | No Objection |
| | | PP Ctr Ctr 31:7 - 31:15 | Equity value may reflect many things beyond operating performance, and Mr. Ordway does not provide any methodology to relate stock price to actual operating performance. | No Objection |
| | 34:24 - 35:5 | | Mr. Ordway's analysis compares debt to equity, but when just considering the debt owed, the amount of interest at issue on this debt is not de minimis | No Objection |
| | 35:6 - 35:15 | | The difference between Mr. Ordway's default interest calculation and the base interest rate is as much as 40 percent. | No Objection |
| | 35:16 - 36:2 | | In the context of the debt itself and the interest itself, this difference is not de | No Objection |

| Witness | Plan Proponents' Designations | Plan Objector's Counters | Summary Of Designations | Objection to Designations |
|---|---|---|---|---|
| | | | minimis. | |
| | 36:3 - 36:5 | | Mr. Ordway has issued solvency opinions before. | No Objection |
| | 36:18 - 36:25 | | Mr. Ordway does not express an opinion on Grace's solvency and has not done a solvency calculation in this case. | No Objection |
| | | CC/BLG Ctr 38:7 - 39:17 | Mr. Ordway identified three factors as contributing to Grace's increase in stock performance: (1) strong ongoing earnings generation, (2) creditors' support of Grace's use of cash to fund acquisitions and other business endeavors, and (3) greater benefit to equity holders from Lenders' cash than the Lenders themselves receive. | No Objection |
| | 44:9 - 44:16 | | Mr. Ordway has never quantified the contribution these three factors made to Grace's stock price | No Objection |
| | 44:17 - 44:25 | | Mr. Ordway does not claim the unsecured creditors made any contribution to Grace's stock performance beyond | No Objection |

| Witness | Plan Proponents' Designations | Plan Objector's Counters | Summary Of Designations | Objection to Designations |
|---|---|---|---|---|
| | | | supporting Grace's acquisitions and reinvestment of cash. | |
| | 48:5 - 48:12 | | Mr. Ordway does not provide any evidence that such support by the unsecured creditors has any effect on stock price | No Objection |
| | 49:7 - 49:11 | | Mr. Ordway considers the unsecured creditors' decision not to object to Grace's proposed acquisitions to be support. | No Objection |
| | | CC/BLG Ctr 49:12 - 49:22 | All of Grace's financial information was made available to the Creditors' Committee, and any issues raised with respect to reinvestment of Grace earnings were concluded to the Creditors' Committee's satisfaction. | |
| | 49:23 - 50:13 | | Mr. Ordway does not recall anyone objecting to any reinvestments, and they were accepted as appropriate under the circumstances. | No Objection |
| | 50:14 - 51:6 | | Objecting to some of these acquisitions would have been | No Objection |

| Witness | Plan Proponents' Designations | Plan Objector's Counters | Summary Of Designations | Objection to Designations |
|---|---|---|---|---|
| | | | detrimental to the value of Grace. Mr. Ordway regards the failure to get in the way of these acquisitions to be favorable contributions by the unsecured creditors. | |
| | | CC/BLG Ctr 51:7 - 51:19 | Mr. Ordway's contention that equity holders benefited from lenders' cash "substantially as compared to the lenders" has two components: (1) equity benefited and (2) the benefit was substantial | No Objection |
| | 51:20 - 52:2 | | Mr. Ordway believes that it was counsel's idea to look at whether the general unsecured creditors created a positive contribution to Grace's stock | No Objection |
| | 52:21 - 53:10 | | Mr. Ordway did not use any methodology in determining what, if any contribution, the Lenders' cash made to Grace equity | No Objection |
| | 53:21 - 54:14 | | There is no standard methodology to quantify the stock price benefit from creditors' support for acquisitions and | No Objection |

| Witness | Plan Proponents' Designations | Plan Objector's Counters | Summary Of Designations | Objection to Designations |
|---|---|---|---|---|
| | | | reinvestments. It's a question of judgment. | |
| | 54:17 - 55:16 | | Mr. Ordway did not use any standard methodology to quantify the benefit to equity holders, and his use of the word "substantial" benefit is based on judgment. He used no objective test to determine equity benefited substantially. | No Objection |
| | 59:9 - 59:20 | | Grace had substantial cash balances of about $400 million in June of 2008 after some very substantial cash payments, and Mr. Ordway does not know if Grace's cash balance was ever lower than the unpaid interest on interest. | No Objection |
| | 60:14 - 61:11 | | Mr. Ordway has not quantified or calculated how much of the unpaid interest was used for operations. | No Objection |

| Witness | Plan Proponents' Designations | Plan Objector's Counters | Summary Of Designations | Objection to Designations |
|---|---|---|---|---|
| | 61:18 - 62:15 | | Mr. Ordway maintains that cash is fungible and that the Lenders' cash not paid back during the bankruptcy must have benefited the Company but cannot be precise in the benefit to the Company | No Objection |
| | 62:16 - 62:21 | | He has not determined whether any interest on interest, which would be upwards of $100 million, was used in Grace's operations. | No Objection |
| | | CC/BLG Ctr 62:22 - 63:10 | Mr. Ordway says $91 million, the amount at issue, represents a small percentage and that each shareholder would only need to provide an immaterial $1.26 per share to pay default interest to the Lenders. | No Objection |
| | 64:5 - 64:11 | | The five percent change in shareholder value that this $1.26 per share constitutes is not immaterial in an accounting sense or under the securities laws. | No Objection |

| Witness | Plan Proponents' Designations | Plan Objector's Counters | Summary Of Designations | Objection to Designations |
|---|---|---|---|---|
| | 64:25 - 65:10 | | A permanent five percent decrease in stock of a NYSE company would be considered material. | No Objection |
| | | CC/BLG Ctr 65:16 - 65:23 | In the context of the total case and increase in stock value since the filing, it is not material. | No Objection |
| | 66:18 - 66:20 | | It would in no way be immaterial outside of a bankruptcy. | No Objection |
| | | CC/BLG Ctr 66:21 - 67:5 | Mr. Ordway says that five percent is not a lot in this bankruptcy given the money going to equity. | No Objection |
| | | CC/BLG Ctr 68:18 - 69:2 | Even though the general unsecured creditors had securities trading far below par value, Grace had an obligation to pay its debt back. | No Objection |
| | 69:14 - 69:17 | | Mr. Ordway maintains that a five percent decrease in equity value during the last week is more important than a five percent decrease during the last year or five years. | No Objection |

| Witness | Plan Proponents' Designations | Plan Objector's Counters | Summary Of Designations | Objection to Designations |
|---|---|---|---|---|
| | 69:18 - 70:3 | | Mr. Ordway justifies taking five percent from buyers who happened to buy earlier rather than later based on the "extraordinary gains" they've incurred from the beginning of the case. | No Objection |
| | 70:4 - 70:11 | | Mr. Ordway says a five percent decrease in equity is not material to those who bought Grace stock early and made a lot of money but might be material to debt or equity holders that "just got into the game." | No Objection |
| | 70:12 - 70:23 | | The $1.26 and five percent decrease in equity would be immaterial to stock holders in the context of the change in stock value since the beginning of this bankruptcy. | No Objection |
| | 70:24 - 71:4 | | The determination that this is immaterial is based on his judgment and not any standard financial or accounting convention. | No Objection |