# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

In re: W.R. GRACE & CO., et al.

_____

|  |  |  |
|---|---|---|
| STATE OF CALIFORNIA | : | |
| DEPARTMENT OF GENERAL | : | CIVIL ACTION NO. 08-863 |
| SERVICES, | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | Bankruptcy Case No. 01-1139 |
| | : | |
| W.R. GRACE & CO., *et al.*, | : | |
| | : | |
| Appellees. | : | |

_____ :

## <u>MEMORANDUM</u>

BUCKWALTER, S.J.                                                      September 29, 2009

      Currently pending before the Court is the appeal of the State of California, Department of

General Services (the "State" or "California") from the October 10, 2008 Order of the United States

Bankruptcy Court for the District of Delaware.  For the following reasons, the Order of the

Bankruptcy Court is reversed.

## I.      BACKGROUND AND PROCEDURAL HISTORY

      The Debtors, W.R. Grace ("Grace") and others (collectively "the Debtors"), initially filed

their petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code on April

2, 2001.  On March 28, 2003, prior to the bar date for the filing of property damage claims, the State

filed Sixteen Claims (the "Sixteen Claims") against the Debtors' estate, alleging property damage

from asbestos-containing materials manufactured by the Debtors.  (Appendix to Brief of Appellees

("Appellee App.") 066-260.)  Each claim involved a different building owned by the State and

sought to recover a total of over $130 million in damage.  (Id.)

Subsequently, on February 16, 2007, the Debtors moved for summary judgment to disallow

and expunge the State's claims, arguing that they were barred by the applicable statute of

limitations.  (State's Designation of Items to be Included in Record on Appeal ("State's D.I.") No. 4,

4-6.)  The motion asserted that the limitations period on those claims began running on January 29,

1990 – the date when the State filed a previous action against Grace for damages related to asbestos

abatement.  More specifically, in 1990, the State of California, together with twenty-nine other

states, sought leave to file a complaint with the United States Supreme Court against twenty-six

asbestos manufacturers, including Grace (the "Alabama action").  (Appellee App. 029-065.)   The

proposed complaint set forth the following relevant allegations:

5.  Asbestos fibers are known to be a human carcinogen.  Inhalation of the
    asbestos fibers can lead to mesothelioma, lung cancer, asbestosis, and other
    diseases that are serious, incurable, and often fatal.

6.  The Asbestos Companies knew, or should have known, of the link between
    asbestos exposure and disease.  Despite this knowledge, the Asbestos
    Companies manufactured, distributed, and marketed asbestos-containing
    building products that were installed in the States' buildings and facilities.

7.  The Asbestos Companies had a duty to provide to the States products that
    were safe for their intended uses or, in the alternative, to warn the States of
    any dangers posed by their products.

8.  The Asbestos Companies breached their duty because the products installed
    in the States' buildings and facilities were not safe for their intended uses,
    and at no time did the Asbestos Companies warn the States of the dangers
    posed by their products.

9.  There is no safe level of exposure to asbestos fibers.  All asbestos-containing
    products eventually deteriorate and release their hazardous fibers.
    Accordingly, an imminent danger exists to the health and welfare not only of
    the occupants of the States' buildings, but also of the public who visits these
    buildings.

2

10.     As sovereigns and proprietors, the States must act and have acted to protect the public health and to preserve the value and utility of state-owned properties by abating the hazards created by the manufacture, distribution, and marketing of the asbestos-containing building products of the Asbestos Companies.

11.     Abatement of the asbestos-containing products in the States' buildings has and will require a great expenditure of the States' funds.

(Appellee App. 035-36.)  Although the complaint defined itself as one for "Equitable Relief Pursuant to the Public Assistance Doctrine," the prayer for relief sought "the costs of asbestos abatement undertaken to remedy the hazards caused by the failure of the Asbestos Companies to perform their duty," as well as "such relief as is equitable and appropriate to effectuate restitution to the States."  (Id. at 037-038.)  The United States Supreme Court denied the petition for leave to file the complaint via Order dated May 14, 1990.  (State's D.I. No. 17.)

On April 9, 2007, in connection with the Debtors' motion for summary judgment based on this prior Alabama action, the Bankruptcy Court held oral argument.  Subsequently, the Honorable Judith K. Fitzgerald issued a Memorandum Opinion, dated October 10, 2008, holding that the State's claims were time-barred under both California and Delaware's three-year statute of limitations.  (Appellee App. 01-015.)  The ruling explained that:

> [in the Alabama action,] [t]he States and, therefore, [the Department of General Services] as part of the executive department of the State of California alleged more than the presence of asbestos.  They alleged that asbestos contamination existed in state-owned buildings and facilities at the time of the *Alabama* complaint.  Thus, they had actual knowledge of certain contamination and were, at the very least, on inquiry notice of any other asbestos contamination in their buildings in 1990 at the latest.  Inasmuch as the putative defendants in the *Alabama* action included W.R. Grace, it is beyond dispute that California, and therefore, DGS . . . knew that asbestos contamination was caused by Grace because the State sought to recover against Grace in the 1990 Supreme Court *Alabama* action.  Under California law, as discussed below, the statute of limitations began to run at that time.

(Appellee App. 06-08 (footnotes omitted).)

3

The State appealed the decision to this Court on March 26, 2009.  (Doc. No. 24.)  Grace

filed its Appellee Brief on April 13, 2009 (Doc. No. 26), and the State submitted a Reply Brief on

April 27, 2009.  (Doc. No. 28.)  Having thoroughly considered these submissions, the Court now

turns to a discussion of the issues at hand.

## II.      STANDARD OF REVIEW

The district court, sitting as an appellate tribunal, applies a clearly erroneous standard to

review a bankruptcy court's factual findings, and a *de novo* standard to review its conclusions of

law.  In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994).  A finding of fact is clearly erroneous if a

reviewing court has a "definite and firm conviction that a mistake has been committed."  Anderson

v. Bessemer City, 470 U.S. 564, 573 (1985).  With mixed questions of law and fact, the court must

accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but

exercises 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and

its application of those precepts to the historical facts.'" Mellon Bank, N.A. v. Metro Commc'ns,

Inc., 945 F.2d 635, 642 (3d Cir. 1991) (citing Universal Minerals, Inc. v. C.A. Hughes & Co., 669

F.2d 98, 101-02 (3d Cir. 1981)).

## III.     DISCUSSION

In its Brief on Appeal, the State sets forth three broad challenges to the Bankruptcy Court's

ruling:  (1) the Bankruptcy Court erred in concluding that the limitations laws of Delaware applied

to the Sixteen Claims; (2) the Bankruptcy Court mistakenly found that the Sixteen Claims were

barred under California law; and (3) the Bankruptcy Court erred in finding that the Sixteen Claims

were barred under Delaware law.[1]   The Court addresses each argument individually.

**A.**        **Whether the Bankruptcy Court Erred in Determining that Delaware Limitations Law Applied to the Claims**

At the forefront of this appeal stands the question of which state law governs the statute of

limitations questions.  The Bankruptcy Court declined to conclusively resolve this issue, reasoning

as follows:

> This court must apply the limitations law of the state in which it sits which, in this case is Delaware. *See In re Circle Y of Yoakum,* Texas, 354 B.R. 349, 359 (Bankr.D.Del. 2006), *citing In re PHP Healthcare Corp.*, 128 Fed. Appx. 839, 843 (3d Cir. 2005). . . . As to its state's residents, Delaware law requires application of the limitations period where the claim arose, unless Delaware's period is shorter.  10 Del.C.  §8121.  W.R. Grace is a Delaware corporation.  *See, e.g.*, Adv 01-771, Doc. N0. 1, at 6 ¶ 15.  Under Delaware law the statute of limitations for damage to real property is three years.  *Mullen v. Alarmguard of Delmarva, Inc.*, 1992 WL 114040 at *5 (Del.Super., May 20, 1992) ("the statute of limitations for the claims for damages to real property is 10 Del. C. § 8106,[2] a three-year statute of limitations"),

---

[1]   The State actually enumerates its issues on appeal as follows: 1) whether the Bankruptcy Court erred in concluding that the limitations laws of Delaware applied to the Claims; (2) whether the Bankruptcy Court erred in finding that the statute of limitations for each of the sixteen buildings underlying the Claims began to run no later than the commencement of the 1990 proceeding in the United States Supreme Court; (3) whether the Bankruptcy Court erred in relying upon the discovery rule to commence the statute of limitations as to each of the Claims; (4) whether the Bankruptcy Court erred in applying the judicial admission doctrine; and (5) whether the Bankruptcy Court erred in finding that the evidence before it established, as a matter of law, that the limitations period as to each of the Claims began to run no later than 1990. For clarity of discussion, however, the Court addresses these assertions as a subset of the broader arguments at issue.

[2]   The Delaware statute provides, in pertinent part:

(a) No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3

*reversed on other grounds* 625 A.2d 258 (Del. 1993). California's statute of limitations for damage to real property is also three years. Cal. Code. Civ. Pro. § 338(b).[3] Thus, we examine both California and Delaware law. The primary issue is when the statute begins to run. We find that under either statute of limitations, the claims of DGS are barred.

(Appellee App. 04-05 (footnotes and some citations omitted).)

This Court finds that the Bankruptcy Court's reasoning was in error. A statute of limitations is accepted "with all its accoutrements," including laws of accrual. Plumb v. Cottle, 492 F. Supp. 1330, 1336 (D. Del. 1980) (quoting Frombach v. Gilbert Assoc., 236 A.2d 363 (Del. 1967)). Thus, while the Bankruptcy Court correctly found that both Delaware and California have the same three-year limitations period, it failed to note that California's laws of accrual with respect to asbestos claims are more clearly defined by the existing jurisprudence. Accordingly, for purposes of applying the appropriate principles of accrual, resolution of the choice of law issue remains imperative.

It is well-settled that this Court must use the choice of law provisions of Delaware, the forum state, to determine the applicable state law. Klaxon Co. v. Stentor Elec. Mfg., 313 U.S. 487, 496 (1941) ("[t]he conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts."); David B. Lilly Co., Inc. v. Fisher, 18 F.3d 1112, 1117 (3d Cir. 1994). To ascertain the statute of limitations relevant to a particular action, the Court must initially rely on Delaware's borrowing statute. Lilly, 18 F.3d at 1117. The borrowing

---

years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108-8110, 8119 and 8127 of this title.

DEL. CODE ANN. tit. 10, § 8106 (2008).

[3] The California Code of Civil Procedure lists the statute of limitations for claims based on injury to real property as three years. CAL. CIV. PROC. CODE § 338(b)( 2006).

6

statute provides that:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of which ever is shorter, the time limited by the law of this State, or the time limited by the law of the state or county where the cause of action arose, for bringing an action upon such cause of action. Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of this State, the time limited by the law of this State shall apply

DEL. CODE ANN. tit. 10, § 8121.

Pursuant to its literal interpretation, this statute provides no guidance in the present case. The cause of action – property damage to the State's buildings – arose outside of Delaware and in California where the asbestos materials were installed. Because both California and Delaware law have three-year statutes of limitation, however, the first sentence of borrowing statute fails to clearly delineate which law applies. Similarly, the second sentence is inapplicable, as it provides that where the cause of action "originally accrued *in favor of a person who at the time of such accrual was a resident of this State*, the time limited by the law of this State shall apply." Id. (emphasis added). While Grace was a resident of Delaware at the time of the accrual of the cause of action, there is little doubt that the relevant cause of action – California's claims *against* Grace for asbestos property damage – did not accrue in its favor so as to require that Delaware law apply.[4]

---

[4] Aside from not fitting within the literal interpretation of the borrowing statute, this case falls outside the fundamental purpose of the statute. In Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co., Inc., 866 A.2d 1 (Del. 2005), the Delaware Supreme Court noted that "[b]orrowing statutes . . . are typically designed to address a specific kind of forum shopping scenario – cases where a plaintiff brings a claim in a Delaware court that (i) arises under the law of a jurisdiction other than Delaware and (ii) is barred by that jurisdiction's statute of limitations but would not be time-barred in Delaware, which has a longer statute of limitations." Id. at 16. In that case, the plaintiff, a Saudi Arabian company, filed a declaratory judgment action against the defendant, a Delaware resident, seeking a declaration that it had not breached its contract with defendant. Id. at 6. The defendant counterclaimed alleging a breach of contract arising under Saudi law, which imposed no limitations period, in contrast with Delaware's three-year

Having concluded that the borrowing statute fails to resolve the choice-of-law issue, the Court must turn to Delaware's general choice-of-law rules.  May v. Remington Arms Co., Inc., Civ. A. No. 08-270-94C, 2005 WL 2155229, at *2 (Del. Super. Ct. Aug. 31, 2005) (where the borrowing statute is inapplicable, the court must look to Delaware's general choice-of law rules in order to decide which state's statute of limitations applies).  The Delaware Supreme Court has adopted the "most significant relationship test," set forth in the Restatement (Second) of Conflict of Law § 145(1), for analyzing questions related to tort claims.  Lilly, 18 F.3d at 1117 (citing Travelers Indem. Co. v. Lake, 594 A.2d 38, 40 (Del. 1991)); see also Christ v. Cormick, Civ. A. No. 06-275, 2007 WL 2022053, at *6 (D. Del. Jul. 7, 2007) (noting that in tort cases, the Delaware Supreme Court has adopted the most significant relationship test for choice of law).  The "most significant relationship" is defined by the Restatement as follows:

(1) The rights and liabilities of the parties with respect to an issue in tort are

---

limitation period.  Id. at 7, 17.  Rejecting plaintiff's argument that Delaware's borrowing statute should apply, the court noted that although defendant's counterclaims arose under Saudi law where they were not time-barred, plaintiff engaged in forum-shopping by coming to Delaware to obtain an adjudication that, among other things, Delaware's statute of limitations barred defendant's counterclaims.  Id. at 17.  As such, it found that "to apply the borrowing statute to [defendant] would subvert the statute's fundamental purpose by enabling [plaintiff] to prevail on a limitations defense that would have never been available to it had the [contract] claims been brought in the jurisdiction where the cause of action arose, i.e., Saudi Arabia." Id. (footnote omitted); see also B. Lewis Prods, Inc. v. Bean, Civ. A. No. 02-93, 2005 WL 273298, at *2 (D. Del. Jan. 28, 2005) ("literal application of the statute cannot be countenanced when it would circumvent the purpose of the statute, as is the case when a plaintiff can be seen to be taking advantage of the shorter Delaware statute of limitations to deprive a defendant of claims he would otherwise have.").

Similarly, in this case, the State's claims arose almost entirely in California, with Delaware having little connection to the action.  Grace's filing for bankruptcy in Delaware effectively chose the forum for all claims against it, leaving the State no choice but to pursue its present claims here.  To now apply the Delaware borrowing statute to such claims that have no relation whatsoever to Delaware would subvert the fundamental purpose of the statute and encourage forum-shopping by debtors seeking statute of limitations protection.

determined by the local law of the state which, with respect to that issue, has the
most significant relationship to the occurrence and the parties under the principles
stated in § 6.[5]

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law
applicable to an issue include:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business
> of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect
to the particular issue.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 (1971).  For purposes of a case alleging injury

to tangible property, the place of injury is of particular importance.  Id. at cmt. f.

In this case, because the damaged buildings are in California, California is the place of

---

[5]  Section 6 states:

(1) A court, subject to constitutional restrictions, will follow a statutory directive
of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the
applicable rule of law include

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests
> of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 (1971).

injury.  Likewise, although the manufacturing of the asbestos may have occurred outside California, the actual installation of the asbestos-containing materials – and thus the conduct causing the injury – occurred in California.  Grace is a resident of Delaware, but operates and conducts business on a nationwide basis.  Finally, the State is obviously a "resident" of California and the relationship of the parties was centered in California.  Given California's substantive contacts with the parties and the particular issues involved, this Court must find that California bears the most significant relationship to the present dispute.  In turn, California limitations law, with "all its accoutrements," applies.

> **B.**   **Whether the Bankruptcy Court Erred in Deciding When the State's Asbestos Property Damage Claims Accrued and the Statute of Limitations Commenced**

The State next challenges the Bankruptcy Court's determination of the accrual date for the Sixteen Claims, thereby triggering the statute of limitations.  As noted above, the Bankruptcy Court found that, irrespective of which state's law applied, the statute of limitations accrued as of the State's 1990 filing of a petition to the United States Supreme Court seeking leave to file a Complaint in the <u>Alabama</u> action.  Although California limitations law is controlling, this Court, for the sake of comprehensiveness, considers both California and Delaware law.

> **1.**   **California Law**

In its October 10, 2008 Opinion, the Bankruptcy Court initially examined California law and found that, as of the 1990 filing of the proposed <u>Alabama</u> complaint, the State "knew that its properties were contaminated by asbestos-containing materials, even if it did not then know every particular building that was so contaminated, and it was clearly on notice to follow through." (Appellee App. 12.).  Such notice, according to the Bankruptcy Court, was sufficient to trigger the running of the statute of limitations.  (<u>Id.</u>)  To justify this finding, the Bankruptcy Court set forth

10

two separate rationales.  First, it analogized the California Court of Appeals case of <u>City of San Diego v. U.S. Gypsum Co.</u>, 35 Cal. Rptr.2d 876 (Cal. Ct. App. 1994), to hold that the State's knowledge of the asbestos-containing materials in its buildings, as evidenced by admissions in the <u>Alabama</u> complaint, "was sufficient as a matter of law to establish the elements of its cause of action under California law and to commence the running of the statute of limitations."  (Appellee App. 12.)  Second, the Bankruptcy Court found that, even if the State's admitted knowledge of the presence of asbestos did not trigger the statute of limitations, California's discovery rule put it on inquiry notice and imposed on it a duty of reasonable investigation.  (Appellee App. 12-14.)

Engaging in a *de novo* review of the Bankruptcy Court's purely legal findings, this Court notes that both rationales stand on tenuous grounds.  We discuss each individually.

> a.      **Reliance on the State's Purported Admissions in the *Alabama* Action**

As the primary basis for its finding that the State's Sixteen Claims accrued as of the filling of the <u>Alabama</u> Complaint, the Bankruptcy Court held that the State admitted its knowledge of asbestos-containing materials in its buildings in the 1990 <u>Alabama</u> action.  Relying extensively on the case of <u>City of San Diego v. U.S. Gypsum Co.</u>, <u>supra</u>, the Bankruptcy Court reasoned that such admissions made the Sixteen Claims untimely, as follows:

> The City of San Diego presented arguments similar to those propounded here by [the State].  In the *Alabama* complaint, the State sought "restitution for the costs of asbestos abatement activities" . . ., and reimbursement for costs incurred in abating contamination. . . . The court in *City of San Diego* held that because, within the statute of limitations, the City had knowledge of the substantial risk caused by inhalation of asbestos fibers, it was required to inspect its property and deal with the asbestos materials.  The court found that the City was bound by its pleadings, which asserted damages, and the defendants were entitled to rely on the City's pleadings.  The record in that case established that some, although not all, of the pleaded damages had been suffered more than three years before the City brought its action and, therefore, the statute of limitations commenced when those damages occurred.

*City of San Diego, supra*, 30 Cal. App. 4th at 583.

Furthermore, in *City of San Diego*, the court rejected the City's argument with respect to its causes of action on a building-by-building basis. Thus [the State's] argument that, regarding the 16 buildings subject to the proofs of claim at issue, it did not discover its claims until 2003 does not affect the running of the statute of limitations. [The State] argued that the statute of limitations had not lapsed when it filed its proofs of claim because the Debtors had not proven that contamination occurred in each of the buildings in question. First, that is not the standard. Even if that were the standard, the burden is on [the State] to plead *facts* to show *inability* to have made earlier discovery." *Camsi IV v. Hunter Technology Corp.*, 230 Cal.App.3d 1525, 1538 (Cal.App. 6 Dist., 1991) (emphasis in original). [The State] has not asserted an inability to have made earlier discovery and, based upon its knowledge in 1990, cannot make such an assertion now.

DGS's knowledge, as evidenced in the <u>Alabama</u> complaint, was sufficient as a matter of law to establish the elements of its cause of action under California law and to commence the running of the statute of limitations. As of 1990, DGS knew that its properties were contaminated by asbestos-containing materials, even if did not then know every particular building that was so contaminated, and it was clearly on notice to follow through. . . . Indeed, contamination was asserted as a fact in support of the request to the Supreme Court in the <u>Alabama</u> complaint. The 29 States, including the State of California, brought the motion directly to the Supreme Court because they sought to "remedy the asbestos contamination found in public buildings." Further, W.R. Grace was named in the <u>Alabama</u> complaint as a putative defendant in the event that the motion for leave to file the complaint was granted.

(Appellee App. 011-12.)

Although at first blush this reasoning appears sound, closer inquiry into California jurisprudence mandates reversal. "Under California law, the limitation period commences 'upon the occurrence of the last element essential to the cause of action.'" <u>Cal. Sansome Co. v. U.S. Gypsum</u>, 55 F.3d 1402, 1406 (9th Cir. 1995) (quoting <u>City of San Diego</u>, 35 Cal. Rptr.2d at 881). "A tort cause of action does not accrue until there is wrongdoing *and* 'actual and appreciable harm.'" <u>Id.</u> (quoting <u>CAMSI IV v. Hunter Tech.</u>, 282 Cal. Rptr. 80, 85 (Cal. Ct. App. 1991)); <u>see also</u> <u>Jolly v. Eli Lilly & Co.</u>, 751 P.2d 923, 926-27 (Cal. 1988) ("[T]he common law rule, that an action accrues on the date of injury . . . applies only as modified by the 'discovery rule.'").

"Damages are an essential element to claims in tort; accordingly, the statute of limitations does not begin to run until this element is satisfied." Cal. Dept. of Toxic Substances Control v. Payless Cleaners, Civ. A. No. 02-2389, 2007 WL 2580626, at *4 (E.D. Cal. Aug. 17, 2007) (citing San Francisco Unified Sch. Dist. v. W.R. Grace & Co.-Conn., 44 Cal. Rptr.2d 305, 309 (Cal. Ct. App. 1995)). For claims of strict liability or negligence, the compensable injury must be physical harm to persons or property, not simply economic loss. Id. (quoting SFUSD, 44 Cal. Rptr.2d at 309). The burden lies with the defendant to prove that both the complained of wrongdoing and the harm occurred outside the limitations period. Sansome, 55 F.3d at 1406.

These general principles necessarily lead to the question of what, in the context of an asbestos property damage case, constitutes actual and appreciable harm sufficient to trigger the commencement of the statute of limitations. To answer such an inquiry, this Court finds guidance in a series of California cases addressing this issue.

First, in City of San Diego, supra – the case cited extensively by the Bankruptcy Court – the Second District Court of Appeal reached the question of accrual of a property damage claim in an asbestos case. The plaintiff City of San Diego, via a complaint filed May 25, 1988, sued various defendants in tort for damages stemming from installation of asbestos in its buildings, seeking, among other things, money it spent and would spend in the future to identify and abate the asbestos danger, and for loss of use and decline in value of its property. 35 Cal. Rptr.2d at 878. In its second amended complaint, the City alleged that asbestos particles, fibers and dust had contaminated City-owned and City-leased buildings due to "normal wear, aging, abrasions, and impacts, as well as routine maintenance and repair." Id. at 878. It further asserted that the dust and fiber release occurred continuously from time of sale and installation. Id. at 881. Subsequently, the defendant

13

sought summary judgment against the City, asserting that the current claims were barred by the three year statute of limitations.  Id. at 879.  The court granted summary judgment.  Id. at 880.

On appeal, the City acknowledged that it knew, prior to May 1985, that many of its buildings contained asbestos-containing materials and knew that asbestos was a dangerous and defective product, but argued that the statute of limitations did not commence until a particular building was contaminated by a significant release of asbestos fibers or dust.  Id.  The appellate court rejected the City's argument on three grounds:  (1) since the City sought costs for "testing, inspecting, safeguarding, and abating" the asbestos in *all* of its buildings, it could not avoid the limitations bar by restricting its recovery only for those buildings that had become contaminated during the limitations period; (2) the City's allegations in its second amended complaint conceded that asbestos dust and fiber release occurred continuously from time of sale and installation, thereby meaning its claims had accrued more than three years earlier; and (3) three years and four months before the filing of this action, the City filed a claim in the bankruptcy of Johns-Manville Corporation demanding $50 million for abatement work, thereby establishing that the City suffered more than "nominal" damages beyond the three-year limitations period.  Id. at 881-882.  In reaching this conclusion, the court specifically rejected the City's argument that the statute of limitations analysis must be conducted on a building-by-building basis.  Id.

Subsequently, however, the fundamental premises of City of San Diego came under scrutiny and criticism in San Francisco Unified Sch. Dist. v. W.R. Grace & Co. ("SFUSD"), 44 Cal. Rptr.2d 305 (Cal. Ct. App. 1995).  In that matter, the plaintiff filed a tort action in July 1988 against the defendant on the grounds that, between 1968 and 1973, six of its schools were constructed using asbestos-containing products.  Id. at 1323.  The third amended complaint claimed that, sometime

after 1968 and continuing to the present, the products had deteriorated such that immediate removal was necessary, and that the release of asbestos fibers from these materials caused physical injury to its schools and posed a potential hazard to visitors.  Id.  In connection with these claims, plaintiff sought damages in the form of costs incurred to inspect the buildings, repair the damage, implement a maintenance program, and remedy the uninhabitability of its buildings.  Id.  Defendant moved for summary judgment on statute of limitations grounds.  Id. at 1324.  The trial court agreed, holding that undisputed evidence established that, as of June 1, 1980, plaintiff was aware that its schools contained potentially damaging asbestos, that this awareness was sufficient to trigger the limitations period, and that actual contamination was not required.  Id.

The First District Court of Appeal rejected these conclusions.  Engaging in a comprehensive examination of California law, it reversed the trial court on the basis that  "[p]hysical injury resulting from asbestos contamination, not the mere presence of asbestos, must have occurred before a cause of action for strict liability or negligence can accrue in an asbestos-in-building case and the limitations period commence."  Id. at 1330.  It went on to explain that:

> in an asbestos-in-building case, the mere presence of asbestos constitutes only a
> threat of future harm.  Contamination by friable asbestos is the physical injury, and
> the actual, appreciable harm that must exist before a property owner's strict liability
> or tort cause of action against an asbestos manufacturer accrues and the limitations
> period commences.

Id. [6]  Upon reaching this conclusion, the court criticized the reasoning of City of San Diego as

---

[6]  For purposes of contamination in asbestos cases, SFUSD defined "physical harm to property" as when the asbestos began to pose a risk to human health.  Id. at 1330.  In Aas v. Superior Court, however, the California Supreme Court agreed with SFUSD that mere presence of defects in a building is insufficient for a tort action based on property damage to accrue, but rejected SFUSD's suggestion that the relevant inquiry is whether there is a significant risk to human health.  12 P.3d 1125 (Cal. 2000), superseded by statute on other grounds as stated in, Rosen v. State Farm Gen. Ins. Co., 70 P.3d 351 (Cal. 2003).  In Aas, negligence and strict

"unsatisfactory" because it improperly "interpret[ed] any moneys spent that constitute more than nominal damages as the appreciable harm that triggers the commencement of the statute of limitations without considering whether any physical injury has yet occurred." Id. To the contrary, the SFUSD court found that damages sought for abatement, loss of property value, or for threat of future harm do not equate with "appreciable harm." Id. Further, it remarked that "[a]s asbestos-in-building cases are admittedly unique because of the dormant period before asbestos becomes friable, it seems reasonable to infer that contamination often arises after evidence of wrongdoing – *i.e.*, the installation of potentially dangerous asbestos – has been discovered."[7] Id. at 1333. Ultimately, the court remanded, holding that a genuine issue of material fact existed as to the dates of actual contamination in *each* of the schools. Id. at 1336.

        Thereafter, in County of Santa Clara v. Atl. Richfield Co., 40 Cal. Rptr.3d 313 (Cal. Ct. App. 2006), the California Court of Appeal for the Sixth District further limited the scope of City of San Diego. Santa Clara involved a lawsuit by a group of governmental entities acting on behalf of the State of California against a group of lead manufacturers, claiming strict product liability,

---

liability claims were brought by homeowners against the developers and contractors responsible for building their homes, alleging that "their dwellings suffer[ed] from a variety of construction defects" that threatened the health and safety of residents, but acknowledged that "many of the defects . . . ha[d] not actually caused property damage." Id. at 1128-29. That complaint sought damages for the cost of repair and the diminution in property value. Id. at 1128. The Court rejected any notion that the defects posing risk of harm to humans constituted cognizable physical injury to property. Id. at 1136.

        [7] Notably, SFUSD thoroughly discussed the status of California law and found that its holding could be completed reconciled with decisions by the California Supreme Court, id. at 1332 (citing Jolly v. Eli Lilly & Co., 245 Cal. Rptr. 658 (Cal. 1988), while the decision in City of San Diego would fly in the face of at least three California Supreme Court cases. Id. (citing Davies v. Krasna, 121 Cal. Rptr. 705 (Cal. 1975); Budd v. Nixen, 98 Cal. Rptr. 849 (Cal. 1971); Seely v. White Motor Co., 45 Cal. Rptr. 17 (Cal. 1965)).

negligence and fraud, and seeking costs of abatement of the lead paint and restitution.  Id. at 319.
The court found that the plaintiffs' causes of action had not yet accrued, and thus were not yet
actionable, because the plaintiffs only alleged the presence and need for abatement of lead paint in
their buildings, but had failed to include any allegation of physical injury to the buildings.  Id. at
337-38.  It emphasized that, "only physical injury can support a negligence or strict liability cause of
action, and the cost of repair does not constitute physical injury."  Id. at 338.

Rejecting the plaintiffs' reliance on City of San Diego, the Santa Clara court noted that the
City of San Diego decision "avoided resolving the question of *when or if* accrual had occurred for
the City's strict liability and negligence causes of action."  Id. at 338 (emphasis in original).  It went
on to explain that, "San Diego relied on the fact that the City, by asserting that asbestos
contamination was the alleged physical injury for which it sought relief and alleging that some
contamination had occurred more than three years earlier, had essentially conceded that the statute
of limitations barred its action even if contamination constituted physical injury and resulted in the
accrual of the City's causes of action."  Id.  The Santa Clara court then adopted the rulings of
SFUSD that a "'threat of future harm not yet realized . . . normally does not suffice to create a cause
of action'" and that "[p]hysical injury resulting from asbestos contamination, not the mere presence
of asbestos, must have occurred before a cause of action for strict liability or negligence can accrue
in an asbestos-in-building case and the limitations period [can] commence."[8]  Id. at 339-40 (quoting
SFUSD, 44 Cal. Rptr.2d at 309, 311); accord Sansome Co., 55 F.3d 1407 n.8

Finally, in a persuasive decision, the Eastern District of California accurately summarized

---

[8]  Notably, the Sixth District rejected SFUSD to the extent that it held, contrary to the
California Supreme Court's proclamation in Aas, that a building suffers physical injury when the
building becomes hazardous to human beings.  Santa Clara at 341.

the impact of the above jurisprudence in the case of <u>Calif. Dept. of Toxic Substances Control v.</u> <u>Payless Cleaners</u>, Civ. A. No. 02-2389, 2007 WL 2580626 (E.D. Cal. Aug. 17, 2007).  The court in that matter faced a claim by the plaintiff, an owner of a dry cleaning business, against defendants based on the release of hazardous substances, including perchloroethylene ("PCE"), from the operation of the dry cleaning machinery.  <u>Id.</u> at *1.  The claim was part of a third party complaint, submitted after the California Department of Toxic Substances Control ("DTSC") filed a cost recovery action against the plaintiff and others, alleging claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").  <u>Id.</u> at *1-2.  Third-party defendants argued that the plaintiff's third-party complaint, filed in 2003, was barred by the statute of limitations since the plaintiff had been notified in 1990 by the DTSC about the contamination.  <u>Id.</u>  The federal court, discussing <u>SFUSD</u> and <u>Santa Clara</u>, reemphasized the proposition "far from being stale, plaintiff's claims have not accrued at all, because they have not alleged, and cannot allege, the existence of a cognizable physical injury to their property."  <u>Id.</u> at *5.  Specifically, the court noted that the third-party complaint's request for lost profits and diminution of property values, as well as the cost of removing and remediating the hazardous substances were economic costs, not physical injury to property.  <u>Id.</u> at *6.  Accordingly, the court dismissed the plaintiff's claims as not yet ripe as a matter of law.

Synthesizing this jurisprudence, several basic tenets of California law become clear. Primarily, it is well-settled that mere knowledge of the *presence* of asbestos in the property at issue is insufficient to allow a tort cause of action for property damage to accrue.  Rather, there must be a showing of actual "appreciable harm" or, in other words, damage to the property.  In cases of asbestos, appreciable harm does not occur until there is "contamination" – *i.e.*, the release of

asbestos fibers – which often does not take place until significantly after installation.  Where a plaintiff admits the existence of contamination outside the limitations period, dismissal may be warranted.  Previous requests for abatement or remediation damages, however, do not equate with admission that tort damages have occurred. Where no admission of contamination exists, the party seeking dismissal on a statute of limitations defense bears the burden of proving contamination outside the limitations period.[9]

Given these principles, this Court finds that a genuine issue of material fact exists as to when the Sixteen Claims accrued[10] and that the Bankruptcy Court's contrary conclusion was erroneous on several grounds.  First, the proposed Alabama complaint indicated only that asbestos was present in the States' buildings and would require abatement – an allegation that does not equate with appreciable damage.  Unlike the complaint in City of San Diego, the Alabama complaint did not even mention the word "contamination," let alone suggest any release of asbestos had occurred such that there was actual property damage.  Indeed, the complaint specifically noted, that "[a]ll asbestos-containing products *eventually* deteriorate and release their hazardous fibers.  Accordingly, an *imminent* danger exists to the health and welfare of occupants of the States' buildings, but also of

---

[9]  The Bankruptcy Court remarked that "the burden is on [the State] 'to plead *facts* to show an *inability* to have made earlier discovery.'" (Appellee App. 012 (quoting CAMSI IV, 282 Cal. App.3d at 1530).)  The CAMSI IV court, however, actually held that once "all conditions of accrual – including harm – exist" and a plaintiff seeks to rely on the discovery rule to toll the limitations period, the plaintiff bears the burden of proving application of that rule.  CAMSI IV, 282 Cal. App.3d at 1536.  The court never shifted the burden of proving *accrual* from the defendant to the plaintiff.

[10]  "The resolution of a statute of limitations defense is typically a factual question for the trier of fact.  However, summary judgment is proper if the court can draw only one legitimate inference from uncontradicted evidence about the limitations issue."  SFUSD, 44 Cal. Rptr. at 1335-36.

the public who visits those buildings." (Appellee App. 036 (emphasis added).) Such language

undermines the existence of actual and appreciable damage sufficient to support any tort-related

claim.

Second, to the extent the Bankruptcy Court relied on statements in California's petition to

the Supreme Court to allow the filing of the complaint, as opposed to the complaint itself, its

reasoning was mistaken. The proposed <u>Alabama</u> complaint was the document designed to establish

the contours of the litigation.[11] The petition to the Supreme Court, on the other hand, was not

intended to set forth the precise harm sought to be remedied, but simply to explain why the Supreme

Court should exercise original jurisdiction over the matter. For the Bankruptcy Court to read in an

admission of "contamination" from the petition, where the complaint itself undermined any such

admission, was clearly in error.

Third, even assuming *arguendo* that the Bankruptcy Court properly relied on the petition, its

interpretation of that document as being a judicial admission of "contamination" was improper.

"Judicial admissions are formal concessions in the pleadings or stipulations by the party or its

counsel, that are binding upon the party making them." <u>Sovereign Bank v. BJ's Wholesale Club,</u>

<u>Inc.</u> 533 F.3d 162, 181 (3d Cir. 2008) (quoting <u>Parilla v. IAP Worldwide Serv., VI, Inc.</u>, 368 F.3d

269, 275 (3d Cir. 2004)). "To be binding, admissions must be unequivocal." <u>In re Teleglobe</u>

<u>Commc'ns Corp.</u>, 493 F.3d 345, 377 (3d Cir. 2007).

In <u>City of San Diego</u>, the City's allegations, set forth in the second amended complaint,

explicitly conceded that asbestos dust and fiber release had occurred continuously from the time of

---

[11]  <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957) (holding that the complaint must be
sufficient to give the defendant fair notice of what the plaintiff's claim is and the grounds upon
which it rests), <u>abrogated on other grounds by</u> <u>Bell Atl. Corp. v. Twombly</u>, 590 U.S. 544 (2007).

sale and installation of the asbestos-containing material and that the city had suffered more than

nominal damages since that time.  35 Cal. Rptr.2d at 881.  By contrast, the twenty-five page petition

in the <u>Alabama</u> action mentioned the term "contamination" four times, using it in loose fashion in

the context of a general discussion of the various states' efforts to remedy the "asbestos

contamination" in their buildings.  There was no clear and unequivocal intent to suggest a release of

fibers causing physical injury to the buildings themselves.  (Appellee App. 041, 042, 049, 050.)

Indeed, a closer reading of the petition reveals that the State used the term in a non-literal sense, to

convey only the presence of asbestos and the concern with the possible future harm to the

buildings.[12]  (<u>See</u>, <u>e.g.</u>, Appellee App. 062 (noting that asbestos companies have a duty to *prevent*

injury to others when the companies created the dangerous condition); Appellee App. 065 (noting

that the asbestos companies use of asbestos have "lessened the value and utility of the property of

the States and *threatened* irreparable harm to the health of the States.").)  As noted by the California

Court of Appeal for the Sixth District, the mere threat of future harm from the presence of a

hazardous material is not the actual and appreciable harm that forms the damage element of a strict

liability or negligence cause of action.  <u>Santa Clara</u>, 40 Cal. Rptr.3d at 340.

---

[12]  It is somewhat disingenuous for Grace to argue that the State made a judicial admission of contamination in light of Grace's own Fifteenth Omnibus Objection to the State's Sixteen Claims filed in September 2005.  In that document, Grace specifically argued, in part, that the State was not entitled to any relief until the asbestos-containing materials in the sixteen buildings became "contaminated" and that the State had not demonstrated such contamination. (State's D.I." No. 5.)  Grace further contended that, "[t]he mere presence of asbestos-containing material in a building or on a property does not create a health hazard.  Instead asbestos fibers must be in the air to pose a health risk and the fibers represent a hazard to human beings only if they are breathed into the lungs in sufficient quantities over a sufficiently long period of time to cause disease." (<u>Id.</u> at 39.)  Were the Court to truly hold the parties to their judicial admissions, it is Grace who would be likely bound by its concession that contamination had yet to be proven by the State.

Finally, the <u>Alabama</u> action never sought any type of property or other tort damages.  The

damages simply requested abatement costs and restitution, suggesting no awareness of any asbestos

contamination. (Appellee App. 037.)  As noted above, courts applying California law have

recognized that lost profits, diminution in property value, and the cost of removing hazardous

substances are economic costs – not physical injury to property, as follows:

> Testing and investigation are typically undertaken once a responsible property owner
> discovers that asbestos may be present in its building.  But the act of testing and
> investigating which discloses no contamination cannot be equated with the actual
> harm of contamination.  At best, such testing and investigation could show a threat of
> future harm.  In light of the "threat of future harm" cases and the unique analytical
> problems posed by an asbestos-in-building case, we may reasonably conclude that
> the California Supreme Court did not intend such a result.  These expenses may be
> found to have been undertaken to determine when the threat of future harm ripens
> into appreciable, actual harm for purposes of the accrual of a tort cause of action.

<u>SFUSD</u>, 44 Cal. Rptr. at 312-13.  Thus, contrary to the Bankruptcy Court's proclamation that the

money sought for abatement in the <u>Alabama</u> action was equivalent to damages sought for property

damage in the present action, (<u>see</u> Appellee App. 10), California law explicitly provides that a

request for abatement costs due to the presence of a hazardous substance does not equate with

contamination and/or resulting physical property damage from that substance.

In short, the Court respectfully disagrees with the Bankruptcy Court's finding that the State's

complaint in the <u>Alabama</u> action was an admission that it suffered property damage from asbestos in

its buildings as of the date of the filing of that complaint.  By its plain and unequivocal terms, the

<u>Alabama</u> complaint sought nothing more than abatement and restitution costs due to the presence of

asbestos in its buildings.  Although the State loosely used the term "contamination" in its petition to

file the complaint to the United States Supreme Court, nothing in either document suggested the

discovery of any release of asbestos fibers or actual property damage, such that contamination

unequivocally existed at that time.  Accordingly, the Court declines to affirm this portion of the

Bankruptcy Court's decision.[13]

**b.**   **Reliance on the Discovery Rule**

In an alternate basis for its decision, the Bankruptcy Court invoked the discovery rule to

reason that, even if a tort cause of action for asbestos contamination does not accrue until asbestos

fibers are released into the air, the State was on inquiry notice as of the <u>Alabama</u> complaint to

inspect its buildings for asbestos damage.  Specifically, it reasoned as follows:

> Although there is case law in California supporting the principle that a tort cause of
> action for negligence or strict liability with respect to asbestos contamination does
> not accrue until asbestos fibers are released into the air, *San Francisco Unified
> School Dist v. W.R. Grace & Co.*, 37 Cal.App.4th 1318, 1334 (Cal.App. 1 Dist.,
> 1995), the discovery rule applies nonetheless.

---

[13]   Grace also asserts that the State's causes of action may have accrued as of 1985 filing
by the State in the Johns-Manville Corporation's bankruptcy proceedings ("<u>Johns-Manville</u>"),
asserting $1,166,372,048.00 in damages due to asbestos-containing materials in over 9,000
buildings owned by the State.  The Bankruptcy Court declined to discuss this argument
"inasmuch as California in 1990 participated in the <u>Alabama</u> action which alleged asbestos
contamination and injury and named W.R. Grace as a putative defendant."  (Appellee App. 008
n.10.)  Thus, the 1985 filing formed no basis for the Bankruptcy Court's decision.

Nonetheless, Grace argues that this Court may take judicial notice of that public filing
and affirm the Bankruptcy Court's ruling.  A close reading of the <u>Johns-Manville</u> complaint,
however, reveals that it alleged only that many of the buildings contained significant amounts of
asbestos-containing materials, many of which were determined to be friable.  Nothing in that
complaint establishes that any of the sixteen buildings currently at issue contained asbestos, let
alone "friable" asbestos.  (Appellee App. 018.)  As noted in <u>SFUSD</u>, it is erroneous for a court
for focus on when a plaintiff was generally put on notice of asbestos in its buildings.  Rather, the
trial court must examine when the plaintiff "should reasonably have discovered that each
[building]'s contamination occurred."  44 Cal. Rptr.2d at 315.  "[T]he factual question of when
contamination occurred must be resolved on a building-by-building basis."  <u>Id.</u> at 315 n.6.

To the extent the court in <u>City of San Diego</u> declined to conduct a building-by-building
analysis, it did so on the basis that the City effectively admitted contamination for all of its
buildings by claiming continuing injury since installation and sale.  35 Cal. Rptr. at 583.  The
<u>Johns-Manville</u> complaint contained no similar admission of contamination in all of the State's
buildings.

23

* * *

In *Kisaka v. Banco Popular N. Am., Inc.*, 2007 WL 4347017 (Cal. App. 2 Dist., Dec. 13, 2007), the California Court of Appeals stated that "[o]nce the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights." *Kisaka*, at *3, quoting *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 928 (Cal. 1988). *See also Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 917 (Cal. 2005) ("under the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action.")

Moreover, under California law, a plaintiff's ignorance of the legal significance of known facts or the identity of the defendant will not delay the running of the statute. *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920 (Cal. 2005), citing *Norgart v. Upjohn Co.*, 981 P.2d 79 (Cal. 1999). "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d at 920, quoting *Norgart v. Upjohn Co.*, 981 P.2d at 83. The limitations period will begin once the plaintiff "has notice of circumstances to put a reasonable person on inquiry." *Jolly*, 751 P.2d at 927-28, quoting *Gutierrez v. Mofid*, 705 P.2d 886, 888 (Cal. 1985) (rehearing denied). Plaintiff's awareness of specific facts is not necessary to establish the claim and, once a plaintiff has suspicion of wrongdoing, as long as that suspicion exists, plaintiff has "a duty to reasonably investigate," *Jolly, supra*, 751 P.2d at 928. "[A] suspicion of wrongdoing, coupled with a knowledge of the harm and its cause, will commence the limitations period." *Id.* Thus, under California law, the statute of limitations has run.

(Appellee App. 012-14.)

      This reasoning reflects a mistaken application of the discovery rule. As noted above, the general rule of accrual under California law is that "the limitation period commences 'upon the occurrence of the last element essential to the cause of action.'" Sansome, 55 F.3d at 1406 (quoting City of San Diego, 35 Cal. Rptr.2d at 881); see also Norgart v. Upjohn Co., 981 P.2d 79, 88 (Cal. 1999) (law of accrual sets the date "as the time when the cause of action is complete with all of its elements."). The discovery rule acts as the "most important" exception to this general principle.

24

Norgart, 981 P.2d at 88.  It "assumes that the elements of accrual including harm exist, but tolls the

ruling of the statute until the plaintiff is on inquiry notice of its injury (and its wrongful cause)."

Sansome, 55 F.3d at 1406.  In other words, the discovery rule *postpones* accrual of a cause of

action until the plaintiff discovers, or has reason to discover, the cause of action."  Norgart, 981 P.2d

at 88 (emphasis added); see also Jolly, 751 P.2d at 926-27 (noting that an action accrues on the date

of injury, as modified only by the discovery rule, which "provides that the accrual date of a cause of

action is *delayed* until the plaintiff is aware of her injury and its negligent cause.") (emphasis

added).  A plaintiff who wishes to invoke the discovery rule bears the burden of pleading and

proving the facts necessary to toll the statute of limitations once it is clear that the limitations period

would have otherwise commenced.[14]  Sansome, 55 F.3d at 1406.

Contrary to the Bankruptcy Court's assumption, the discovery rule does not accelerate the

accrual of a cause of action or result in the running of statute of limitations once the plaintiff is on

notice inquiry of a suspicion of wrongdoing.  Instead, the plaintiff sustaining some injury or harm

remains a requisite to the commencement of the standard statute of limitations.  Sansome, 55 F.3d at

1406.  "If the injury occurs after the wrongdoing, the orthodox limitations period is not tolled;

rather the period never even begins to run."  Id.  Nor does the discovery rule "shift[] the burden to

the plaintiff to demonstrate the nonexistence of appreciable harm" at an earlier date.  Sansome, 55

F.3d at 1407.  The burden remains on the party raising the statute of limitations as an affirmative

defense to prove that "the complained of wrongdoing *and* harm occurred outside the limitations

---

[14]  Specifically, "[a] plaintiff . . . who intends to rely on the discovery rule to toll the
orthodox limitation period, must specifically plead facts which show (1) the time and manner of
discovery and (2) the inability to have made earlier discovery despite reasonable diligence."
CAMSI IV, 282 Cal. Rptr. at 86.

period." Id. at 1406.

Under these standards, the discovery rule has no application in the present matter. As noted

in detail above, the record before this Court contains no evidence as to when asbestos contamination

actually occurred in the sixteen buildings at issue. Although the State was certainly aware of the

existence of asbestos in their buildings as early as 1990, Grace has failed to prove that actual and

appreciable harm had occurred outside the limitations period. See SFUSD, 44 Cal. Rptr.2d at 315

(finding that mere notice of the existence of potentially dangerous asbestos does not establish when

contamination actually occurred or when plaintiff should have discovered contamination). Absent

such a showing, the cause of action for property damage never accrued and the limitations period

never began running. In turn, the discovery rule cannot be invoked to toll a statute of limitations

that never started.[15]

---

[15] Grace argues that placing the burden on it to prove the existence of actual and
appreciable harm outside the statute of limitations would ultimately require it to prove its own
liability in order show that a plaintiff had not been diligent in pursuing its claim. It goes on to
argue that California law has recognized that a plaintiff need not have a valid claim for it to be
barred by the statute of limitations. (Appellee Br. 11 (citing Jolly v. Eli Lilly & Co., 751 P.2d
923 (Cal. 1988).) This argument, however, is completely misplaced. Jolly merely held that a
plaintiff's suspicion of wrongdoing, despite her ignorance of whom to sue, triggered the statute
of limitations. Id. at 930. It did not hold that a plaintiff has the burden of proving the
nonexistence of appreciable harm on a date outside the limitations period. Indeed, as explained
above, the burden rests soundly on the party seeking to invoke a limitations defense. If Grace
truly believes no contamination has occurred, it may forego its statute of limitations argument
and seek summary judgment on other grounds.
    Grace also argues that early records would likely be lost if the State were permitted to
simply wait fifteen years to assert its claims, a concern that has been purportedly substantiated by
the State's inability to produce records regarding its abatement of the Grace product from its
buildings. Grace, however, fails to note that until contamination occurred, the State could not
have raised a property damage cause of action. Moreover, the absence of abatement documents
may simply suggest that there were no efforts made to abate the asbestos in those buildings.

2.     **Delaware Law**

In the second portion of its October 10, 2008 decision, the Bankruptcy Court found that

Delaware law similarly barred the Sixteen Claims.  Specifically, it stated:

> Delaware law regarding the inception of the statute of limitations is in accord.  *see
> Whittington v. Dragon Group, L.L.C.*, 2008 WL 4419075 *7 (Del. Ch., June 6, 2008)
> (statute of limitations is tolled only when the injury is discovered or should have
> been discovered; "[i]nquiry notice is sufficient to prove that the statute of limitations
> was not tolled for purposes of summary judgment, or that the doctrine of laches is
> applicable" and "exists when the plaintiff is 'objectively aware of the facts giving
> rise to the wrong'").  The Delaware statute of limitations begins to run when a
> claimant has actual knowledge of physical damage to property or when it is put on
> inquiry notice.  *See, e.g. Fike v. Ruger*, 754 A.2d 254 (Del.Ch. 1999), *aff'd* 752 A.2d
> 112 (Del. 2000); *Rudginski v. Pullella*, 378 A.2d 646 (Del.Super. 1977).
>
> Further, in *Whittington v. Dragon Group, L.L.C.*, 2008 WL 2316305 at *5 (Del.Ch.,
> June 6, 2008), *superseded on other grounds, Whittington v. Dragon Group, L.L.C.*,
> 2008 WL 4419075 *7 (Del.Ch., June 6, 2008), the court stated the general rule in
> Delaware to be that the cause of action accrues and the statute of limitations begins
> to run when the alleged wrongful act occurs, even if the plaintiff is "ignorant of the
> cause of action" and when the plaintiff is put on inquiry notice of the claim.  In the
> matter before us, as stated in the *Alabama* complaint, [the State] was at least on
> inquiry notice by 1990 at the latest.  Its claims are barred under Delaware law as
> well.

(Appellee App. 014-15.)

While accepting the Bankruptcy Court's summary of Delaware's accrual law, this Court

must again respectfully disagree with its conclusion.  Primarily, as discussed in detail above, the

applicable law in this matter is that of California since it is the place of the wrongdoing and injury,

the center of the parties' relationship, and the home state of one of the parties.  Accordingly, the

analysis under Delaware law is unnecessary.

Nonetheless, assuming *arguendo* that application of Delaware limitations law is proper, this

Court reaches a conclusion contrary to that of the Bankruptcy Court.  While Delaware's laws of

27

accrual are not as well-defined as those of California, they remain similar in scope.  Delaware law

holds that a "cause of action in negligence accrues at the time of the injury to the plaintiff."  Plumb

v. Cottle, 492 F. Supp. 1330, 1336 (D.C. Del.1980); Hely v. Silverhill Constr., Inc., Civ. A. No. 06-

03-030, 2009 WL 295391, at *3 (Del. Com. Pl. Feb. 5, 2009).  The "time of the injury" occurs, and

therefore the limitations period begins to run, when "the plaintiff has reason to know that a wrong

has been committed[.]"  Abdi v. NVR, Inc., Civ. A. No. 04C-08-028, 2007 WL 2363675, at *3

(Del. Super. Ct. Aug 17, 2007) (quoting S & R Assoc., L.P. v. Shell Oil Co., 725 A.2d 431, 439

(Del. Super. Ct. 1998)), aff'd, 945 A.2d 1167 (Del. 2008)).  "In other words, a cause of action only

accrues at the point when all the predicates are satisfied for a suit to be filed in regard to the

wrongful act and resulting injury."  Henlopen Station Condo. Council of Unit Owners v. Henlopen

Junction Condo. Council of Unit Owners, Civ. A. No. 97C-08-018, 2000 WL 303635, at *2 (Del.

Super. Ct. Feb. 25, 2000).  "For tort claims, the wrongful act is a tortious act causing injury, and the

cause of action accrues at the time of injury."  Certainteed Corp. v. Celotex Corp., Civ. A. No. 471,

2005 WL 217032, at *7 (Del. Ch. Jan. 24, 2005); see also Plumb, 492 F. Supp. at 1336 (noting that

plaintiff was injured when the defective lightning protection system damaged her property, not

merely when it was installed).

        Delaware law has yet to definitively address when "injury" – and thus accrual of the statute

of limitations – occurs in the rather unique context of asbestos cases.  It is well-established,

however, that where state law governs a particular issue and "when there is no decision from the

state's highest court directly on point, [the federal court is] charged with predicting how that court

would resolve the question at issue."  Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d

231, 236 (3d Cir. 2006).  "When predicting how the state's highest court would resolve the issue,

28

[the federal court] must take into consideration:  (1) what that court has said in related areas; (2) the

decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4)

decisions from other jurisdictions that have discussed the issue." Id.

        The majority of other jurisdictions to reach the issue of accrual in asbestos cases have

determined that injury occurs upon contamination of the asbestos materials and not upon discovery

of the mere presence of asbestos in a building.  See, e.g., MDU Res. Group v. W.R. Grace and Co.,

14 F.3d 1274, 1279 (8th Cir. 1994) (holding, under North Dakota law, that accrual of statute of

limitations occurs when plaintiff could have learned, with the exercise of reasonable diligence, that

its building had been contaminated by asbestos); Adams v. Arpahoe Sch. Dist. No. 28-J v. GAF

Corp., 959 F.2d 868, 872 (10th Cir. 1992) (holding, under Colorado law, that "[t]ort actions can be

maintained only where plaintiffs explicitly allege and subsequent evidence demonstrates

contamination of the building or other property as a result of fibers released from asbestos products.

In other words, only asbestos contamination constitutes a physical injury compensable under tort

laws."); Farm Credit Bank of Louisville v. U.S. Mineral Prods. Co., 864 F. Supp. 643, 650-51

(W.D. Ky. 1994) (holding that, under Kentucky law, "[a] building owner who has merely discovered

the presence of asbestos should not have a cause of action until the asbestos creates an 'injury'

through its release and contamination."); May v. AC & S, Inc., 812 F. Supp. 934, 942-43 (E.D. Mo.

1993) (holding, under Missouri law, that "contamination" is required before cause of action

accrues); State Farm Mut. Auto. Ins. Co. v. W.R. Grace & Co., 834 F. Supp. 1046, 1048 (C.D. Ill.

1992) (holding, under Illinois law, that the mere presence of asbestos in a building or an owner's

knowledge of asbestos is insufficient to trigger statute of limitations with respect to an owner's

action against manufacturer for property damages due to asbestos contamination; instead, statute of

limitations does not begin to run until owner has sufficient knowledge of asbestos contamination in building).

In light of the generally well-accepted definition of injury in asbestos property damage cases, and given the absence of controlling Delaware law on this issue, the Court finds that the Delaware Supreme Court would accrue the statute of limitations for asbestos property damage on the date of contamination.  As discussed in detail above, a genuine issue of fact remains as to when contamination occurred in the sixteen buildings at issue in this case.  Accordingly, summary judgment on statute of limitations grounds is not appropriate.

Likewise, the Bankruptcy Court's application of Delaware's discovery rule is in error.  As with California's discovery rule, Delaware's discovery rule acts to toll, not accelerate, the date of accrual.  Certainteed, 2005 WL 217032, at *7; see also Hodges v. Smith, 517 A.2d 299, 300 (Del. Super. Ct. 1986) (under the discovery rule, "injuries or conditions which are inherently unknowable *postpone* the commencement of the statute-of-limitations period until the victim discovered or should have discovered the wrong.") (emphasis added).  Thus, the concept of "inquiry notice" relied upon by the Bankruptcy Court only becomes applicable when a defendant seeks to disprove a plaintiff's argument that the discovery rule tolls the statute of limitations.  Whittington v. Dragon Group, LLC, Civ. A. No. 2291, 2008 WL 4419075, at *7 (Del. Ch. Jun 6, 2008).  A showing of inquiry notice cannot effectuate an earlier accrual date.

As set forth above, the statute of limitations could not begin running in this case until the injury – *i.e.* contamination of the buildings by the asbestos – occurred.  Absent a showing of when contamination occurred, the discovery rule has no bearing on this case.

IV.    **CONCLUSION**

While this Court is not unmindful of the enormity of the task the Bankruptcy Court faces in managing this bankruptcy action, we simply cannot affirm the dismissal of the Sixteen Claims at issue pursuant to the statute of limitations.  As explained, both California and Delaware laws provide that a tort claim for asbestos-related property damage does not accrue until injury, *i.e.* contamination, occurs.  The <u>Alabama</u> complaint and petition contained no admission by the State of any contamination in its buildings as of 1990.  Moreover, Grace has produced no other evidence that contamination of the sixteen buildings at issue occurred more than three years prior to the filing date.  Notably, this ruling does not foreclose any further attempts by the Debtor to have the Sixteen Claims dismissed on the basis of the statute of limitations.  Rather, the Court simply finds that because the Debtor bears the burden of proof in asserting the statute of limitations defense, a fact question exists as to whether the buildings suffered "appreciable harm" prior to March 28, 2000. Accordingly, the Bankruptcy Court's October 10, 2008 Order is reversed.

An appropriate order follows.