## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: October 26, 2009 at 10:30 a.m.** |
| | | **Re: Docket No. 22844** |

## DEBTORS' BRIEF IN OPPOSITION TO GLORIA MUNOZ' MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND RELATED RELIEF

### PRELIMINARY STATEMENT

On April 16, 1999, Ms. Gloria Munoz ("Munoz") filed a complaint in California state court against W. R. Grace & Co -- Conn. ("Grace -- Conn."), a debtor in these chapter 11 cases, alleging sexual harassment and other personal injury claims arising from Munoz' employment at Grace -- Conn.'s San Leandro facility between 1993 and 1998 (the "Complaint").[2]  On April 2,

---

[1] The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] *See* Motion of Gloria Munoz for Relief From The Automatic Stay and Related Relief, August 18, 2009, [Dkt. 22844], ¶¶ 10, 11.

2001, Grace – Conn., along with the above-captioned debtors and debtors in possession (collectively, the "Debtors") commenced these chapter 11 cases, and the Complaint has been stayed since that time pursuant to section 362 of the Bankruptcy Code.

More than eight years after the automatic stay took effect, and in the midst of a complex and lengthy process to confirm the First Amended Joint Plan of Reorganization (the "Plan"), a motion has been filed to lift the automatic stay to allow Munoz' Complaint to proceed. Munoz seeks to litigate the Complaint immediately in California state court and to satisfy any judgment obtained against the Debtors' estates. Lifting the stay at this time would place a significant burden on the Debtors and would place property of the Debtors' estates at risk.

In determining whether to lift the stay so that litigation can proceed against the Debtors, this Court has held that the moving party bears the "heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief."[3] Here, Munoz fails even to allege *any* discernable prejudice that would result from the continued operation of the stay. But prejudice to the Debtors would be immediate and real: lifting the stay in the midst of the confirmation process and related settlement discussions would shift the attention of Grace's legal staff away from the critical task of confirming the Plan, and would cause a serious "distraction from the reorganization process."[4]

---

[3] *In re W. R. Grace & Co.*, No. 01-01139, 2007 WL 1129170, at *3 (Bankr. D. Del. April 13, 2007).

[4] *Id.*

2

## BACKGROUND

In the Complaint, Munoz alleges that fellow employees at Grace -- Conn.'s San Leandro plant committed numerous violations of California's Fair Employment and Housing Act. The Complaint alleges seven California state law causes of action arising from those alleged incidents: sexual harassment, sex discrimination or disparate treatment, failure to maintain an environment free from harassment, retaliation, intentional infliction of emotional distress, sexual battery, and negligent infliction of emotional distress. The Complaint alleges that these violations began as early as 1995, persisted during the course of her employment at the San Leandro Facility, and involved a number of Grace -- Conn.'s employees.[5]

As of the petition date, the Munoz litigation against Grace -- Conn. remained in a very preliminary stage. While Munoz had started to give a deposition in connection with the matter, her deposition was not completed and numerous employees of Grace had not even been deposed. No further discovery has taken place since April 2, 2001, when discovery was halted due to the automatic stay, except by a limited exception made later in 2001 that allowed Munoz to receive the results of a psychological examination that she was required to undergo before the Petition Date.

On September 9, 2002, Munoz submitted a Proof of Claim against the Debtors for an unliquidated claim based on her allegations in the Complaint.[6] On August 25, 2008, the Debtors objected to Munoz' claim in the Debtors' Twenty-Fifth Omnibus Objection to Claims [Dkt. # 19369] on the basis of no liability. Munoz responded to Debtors' objection on September 17,

---

[5] *See* Complaint at ¶19, *Munoz v. W.R. Grace &Co. -- Conn., et al.*, No. 810748-2 (Cal. Super. Ct., August 16, 1999).

[6] Munoz Proof of Claim, Claim No. 1959, dated 9/9/2002.

2008 [Dkt # 19557], and a hearing on the matter was scheduled for September 29, 2008. By consent of the parties, so that they could discuss potential resolution of the claim, the hearing on the Debtors' objection to the Munoz claim has been continued each month over the course of the last year, and is currently set for a hearing on October 26, 2009. Based on the discussions that have taken place between counsel for Munoz and counsel for the Debtors, the prospect of settling the claim at this time does not appear likely.

While the above was occurring regarding Munoz' Complaint, the Debtors filed their Plan on September 19, 2008. The Plan contemplates an orderly procedure for resolving pending claims such as Munoz' during the 180 days following the effective date of the Plan. In accordance with this procedure, the Debtors intend to litigate Munoz' claim during that period.

## LEGAL STANDARDS

It is universally recognized that "[t]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws."[7] The automatic stay is intended to "prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor."[8]

A creditor may move for relief from the stay, and the moving creditor bears the burden of showing cause for relief.[9] While the Bankruptcy Code does not define the term "cause," courts

---

[7] *See, eg., Assoc. of St. Croix Condominium Owners v. St. Croix Hospital Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) (quoting legislative history).

[8] *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel,* 682 F.2d 446, 448 (3d Cir.1982)); *In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009).

[9] 11 U.S.C. § 362(d)(1); *In re Micro Design, Inc.*, 120 B.R. 363, 369 (E.D. Pa. 1990).

in the Third Circuit apply a three-factor balancing test to determine whether cause exists to lift

the stay to allow litigation to proceed.[10]  This test inquires whether:

1. Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;

2. the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship of the debtor, and

3. the creditor has a probability of prevailing on the merits.[11]

In considering a motion to lift the stay under circumstances nearly identical to those

presented here, the U.S. Bankruptcy Court in the Southern District of New York in *In re

Northwest Airlines* denied stay relief.[12]  In that case, a former employee of the debtor brought a

motion to lift the stay so that she could pursue claims for employment discrimination and

intentional infliction of emotional distress in California state court.  The motion was filed during

a "critical stage" in the debtors' chapter 11 cases, when the debtors were "dealing with

significant, time-sensitive issues that require[d] the attention of management and counsel."[13]

The court found that the debtors were party to numerous state court actions that were pending

before other courts and were stayed under § 362(a)(1), and concluded that "[d]efending against a

multitude of actions like the ones the Movant seeks to pursue would impede the Debtors'

successful emergence from chapter 11 . . . [t]o allow the automatic stay to be lifted with respect

to this action at this time would prompt similar motions and require the Debtors to spend an

inordinate amount of time and money on litigation and detract from the Debtors' attempts to

---

[10] *Eg., In re Rexene Prod. Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992).

[11] *Id.*

[12] No. 05-17930, 2006 WL 694727, at *1-*2 (Bankr. S.D.N.Y. March 13, 2006).

[13] *Id.* at 2.

restructure their business."[14]  Finding no prejudice to the movant because she sought "monetary

damages" and her claims involved "no issue of public health or safety," the court found that a

balancing of the harms weighed "strongly against lifting the automatic stay."[15]  The reasoning of

the *Northwest Airlines* case is consistent with decisions issued by this Court, which has found

that the balance of equities favors the debtor when lifting the stay would cause "a distraction

from the reorganization process."[16]

     The Third Circuit has also recognized the prejudice that an untimely lift-stay motion can

cause to a debtor.  The automatic stay is designed to "relieve pressure on the debtor by giving it

breathing room to organize its affairs free from litigation initiated to collect debts."[17]  In light of

this purpose, the Third Circuit has found that lifting the stay "impinges on the debtor's freedom

from litigation harassment" and that "[t]his adverse effect cannot be remedied on appeal at the

conclusion of the bankruptcy proceeding; by then, the injury will have been inflicted."[18]

     In balancing the hardships of the parties, courts have found that prejudice to a creditor

must be tangible, and "[m]ere speculation about highly contingent possibilities of future

prejudice does not demonstrate that lifting the stay is necessary . . . to prevent undue prejudice

that would otherwise result."[19]

---

[14] *Id.*

[15] *Id.*

[16] *In re W. R. Grace & Co.*, 2007 WL 1129170, at *3.

[17] *United States v. Nicolet*, 857 F.2d 202, 206 (3d Cir. 1988).

[18] *Id.*

[19] *380544 Canada, Inc. v. Aspen Tech., Inc.*, No. 07-1204, 2007 WL 2049738, at *3 (S.D.N.Y. July 18, 2007); *In re Refco*, No. 05-8626, 2006 WL 2337212, at *3 (S.D.N.Y. Aug. 8, 2006).

**ARGUMENT**

## I.   MUNOZ CANNOT SATISFY THE HEAVY BURDEN OF PROVING THAT THE BALANCE OF HARDSHIPS TIPS SIGNIFICANTLY IN FAVOR OF GRANTING RELIEF FROM THE AUTOMATIC STAY

Applying the three-factor test for cause, it is clear that Munoz cannot meet the "heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief."[20]  Specifically, lifting the stay to allow the suit to go forward would expose Debtors' estates to risk of a potential adverse judgment, and would cause a significant distraction from the reorganization process.  By contrast, allowing the stay to remain in place will cause no prejudice to Munoz.  Finally, Munoz has not demonstrated any probability of success on the merits in this matter.

Munoz reaches the untenable conclusion that the Debtors will not be prejudiced if her suit -- which has been stayed for over eight years -- is suddenly reinitiated in the midst of an extremely complex and demanding confirmation process.  Munoz' argument that she will be prejudiced by maintaining the status quo is based entirely on the false assumption that her claim must be liquidated before confirmation, and Munoz fails to demonstrate that she will suffer any actual harm if the stay is not lifted.  Thus, the chances of Munoz being prejudiced by allowing the suit itself to reach completion on the same schedule as all other stayed claims in these cases - after the Debtors emerge from bankruptcy - are remote at best.

---

[20] *In re W. R. Grace & Co.*, 2007 WL 1129170, at *3; *In re Micro Design, Inc.*, 120 B.R. at 369; *In re FRG, Inc.*, 114 B.R. at 80.

**(a)** *Contrary to Munoz' Contentions, Lifting the Stay at this Time Would Greatly Prejudice The Debtors*

The Debtors will face unnecessary prejudice if the Complaint is allowed to proceed. The Debtors, currently managing their estates as debtors-in-possession, have a fiduciary duty to all of their creditors to protect and conserve the assets of the estate, which duty includes diligently assessing the merit of and defending against any lawsuit brought against them.

Munoz bears the "heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief."[21]  In applying this standard in this very case, this Court has held that lifting the stay on a matter that would cause "a distraction from the reorganization process" would prejudice the debtor, such that granting stay relief would be inappropriate.[22]  For example, in considering a motion to lift the stay to allow the State of Montana to implead the Debtors as defendants in actions filed against it, this Court found prejudice to the Debtors based in part on the fact that lifting the stay would require key legal personnel to assist counsel in litigating the actions.[23]

Now, as then, the Debtors' lawyers are essential to the Debtors' reorganization efforts, and their time is substantially occupied with matters relating to the reorganization.  In particular, the Debtors' legal resources will continue to be substantially focused on reorganization regardless of the outcome of the Confirmation Hearing.  If the Plan is confirmed, preparation for proceedings before the District Court will be necessary, as required under § 524(g) of the

---

[21] *In re W. R. Grace & Co.*, 2007 WL 1129170, at *3; *In re Micro Design, Inc.*, 120 B.R. at 369; *In re FRG, Inc.*, 114 B.R. at 80.

[22] *In re W. R. Grace & Co.*, 2007 WL 1129170, at *3.

[23] *Id.* n. 8.

Bankruptcy Code, as well as litigating any appeals. Also, the Debtors' in-house lawyers would need to spend significant time working to consummate the Plan and take the Plan effective by the Effective Date. If the Plan is not confirmed, extensive negotiations and re-drafting will be necessary, and will occupy the great majority of the time and attention of legal staff. In addition, the Debtors' in-house lawyers all have significant non-bankruptcy duties and responsibilities on top of their restructuring activities that are not stayed and cannot be deferred. While the Debtors have local counsel in California to aid in representation in employment matters, defending against Munoz' Complaint will necessarily involve the time and energy of the Debtors' in-house counsel as well. Allowing the Complaint to proceed would divert the attention of the Debtors' lawyers to a matter which could be resolved after the Plan is consummated.[24]

Despite the highly prejudicial timing of her motion -- filed in the midst of the Debtors' Plan confirmation hearings -- Munoz claims that the Debtors face no prejudice because her claim "must be liquidated at some point" and to the extent the Debtors have insurance, "any recovery … will not affect the Debtor's estates."[25] Munoz' argument falls flat on both points.

Munoz asserts that because her claim will need to be liquidated "at some point," there is no prejudice to the Debtors by lifting the stay to allow her claim to immediately proceed in California state court. At bottom, this argument assumes that the Debtors should be indifferent as to whether Munoz' claim is liquidated in one-off fashion in the midst of highly complex confirmation hearings or after the Effective Date as part of an orderly, comprehensive schedule to resolve the Debtors' outstanding unliquidated liabilities. This assumption could not be further

---

[24] *See* Plan § 5.1 (providing orderly procedures for liquidation of claims after the Effective Date).

[25] Motion of Gloria Munoz for Relief From The Automatic Stay and Related Relief, August 18, 2009, [Dkt. 22844], ¶¶ 18,19.

from the truth.  Like the debtors in *Northwest Airlines*, the Debtors are in a "critical stage" of their chapter 11 cases, in which they are "dealing with significant, time-sensitive issues that require the attention of management and counsel."[26]  Granting Munoz' motion would "prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure their business."[27]  Being forced to defend against "a multitude of actions" filed in various state courts "would impede the Debtors' successful emergence from chapter 11" and would be highly prejudicial to the Debtors.[28]

Nothing in the Bankruptcy Code requires that Munoz' claim be liquidated prior to confirmation of the Plan or the Effective Date.  In fact, the Plan specifically provides that pending Plan Claims "shall be transferred to the Reorganized Debtors on the Effective Date [of the Plan]" and may be settled or litigated by the Reorganized Debtors during the 180-day period following the Effective Date of the Plan, subject to extension by the Bankruptcy Court.[29]  The purpose of this 180-day period is to afford the Debtors, once free from ongoing Plan confirmation proceedings, adequate opportunity to assess and take action on pending claims.  Forcing the Debtors to provide special treatment to Munoz' claim by lifting the stay and allowing her to jump the line would frustrate the purpose of the 180-day period prescribed under the Plan for resolution of pending claims, thereby impairing Grace -- Conn.'s ability to defend the action.  And it would be to no useful end -- there is no realistic prospect that this litigation will reach a prompt conclusion if the stay is lifted.

---

[26] *See In re Northwest Airlines*, 2006 WL 694727, at *2 (Bankr. S.D.N.Y. March 13, 2006).

[27] *Id.*

[28] *Id.*

[29] *See* Plan § 5.1.

Munoz attempts to dismiss the substantial burden the Debtors would suffer if forced to defend her lawsuit at this time by claiming that the Debtors' estate will be unaffected to the extent that it has liability insurance coverage. As a preliminary matter, this assertion is simply false. Proceeds of insurance policies are substantial property of the estate, and therefore, contrary to Munoz' assertion, any recovery against Grace's insurance policies will in fact affect the Debtors' estates.[30]

Munoz also conveniently overlooks that it is the Debtors - and not a hypothetical insurance company - that will be pulled into litigation in a totally unrelated matter during this difficult time in their chapter 11 reorganization process. Even to the extent that alleged wrongs in Munoz' Complaint fall under the Debtors' insurance coverage, Grace -- Conn. is the named defendant in her action, and the Debtors are therefore bound to defend against Munoz' Complaint, which will require significant energy and resources.

A central policy underlying the automatic stay is to "avoid interference with the orderly liquidation or rehabilitation of the debtor."[31] Munoz' untimely motion seeks relief that would place the Debtors' estates at risk of a highly consequential judgment, and would interfere with the orderly reorganization of the Debtors by causing a distraction from the reorganization process and forcing the Debtors to deviate from the orderly process for claim liquidation prescribed under the Plan. Accordingly, Munoz' motion to lift the stay should be denied.

---

[30] *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92 (2d Cir. 1988) ("Manville's insurance policies and their proceeds were 'substantial property of the Manville estate'"); *In re Congoleum Corp.*, No. 03-51524, 2008 WL 4186899, at \*5 (Bankr. D.N.J. Sept. 2, 2008) ("from the very inception of § 524(g) it was understood that insurance assets are often an important component of the assets a debtor has available to contribute to a § 524(g) trust").

[31] *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir.1982)); *In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009).

### *(b)    Munoz is Not Prejudiced by Continuation of the Stay*

Contrary to the various assertions in her brief, Munoz is not prejudiced at all by a continued stay of her suit. Munoz offers only one basis for her argument - that maintenance of the stay would require her to litigate in Delaware and lead to the bifurcation of her claims.[32] This argument simply has no weight.

As noted previously, pursuant to the Plan, all matters respecting the allowance of claims are to be addressed during the 180-day period immediately following the Effective Date.[33] The consideration before this court now is whether Munoz has demonstrated any hardship resulting from that orderly claims-allowance procedure, and whether such hardship outweighs the Debtors' overriding need to focus their resources and attention on obtaining confirmation and navigating to an Effective Date. Munoz' argument that the nature of her claim may require a trial outside the Bankruptcy Court[34] has nothing to do with whether she is prejudiced by the process for claims allowance provided by the Plan. She is not; when her currently unliquidated claim becomes subject to allowance or disallowance as contemplated by the Plan she will be fully able to raise all appropriate venue considerations, including to renew the lift-stay motion for the purpose of having her claim proceed in California.

---

[32] Motion of Gloria Munoz for Relief From The Automatic Stay and Related Relief, August 18, 2009, [Dkt. 22844], ¶¶ 18-21.

[33] Consistent with the Plan and as explained in Section II below, the Debtors are temporarily withdrawing without prejudice their objection to the Munoz claim so that the objection can be considered in the 180-day period following the Effective Date.

[34] Munoz argues that a part of her claim is a personal injury claim which precludes its liquidation in the Bankruptcy Court and requires that the stay be lifted to permit a trial in California court. Even if the assertion that her claim requires a personal injury trial is true, that does not predetermine that the right procedure for allowing her claim would be in the California court.

The principal case cited by Munoz, *In the Matter of Rexene Products Co.*[35] ("*Rexene*"), is readily distinguishable. Unlike the Debtors here, the debtor in *Rexene* moved in the District Court in Texas to have a class action case against it (the "Izzarelli Claims") transferred to the Bankruptcy Court in Delaware.[36] The court in *Rexene* based its grant of relief on the grounds of judicial economy due to a "dual litigation concern and the fact that [the U.S. District Court Judge had] already heard and decided two issues."[37] As explained above, the rationales for judicial economy offered in *Rexene* do not apply in Munoz' case.

Furthermore, the Izzarelli Claims were set for trial before the debtor in *Rexene* filed its chapter 11 petition. *Rexene*'s Motion for Summary Judgment was denied by the court less than two months after *Rexene*'s bankruptcy commenced. Less than a month later the Izzarelli claimants requested relief from the automatic stay, at which point the debtor had been in chapter 11 for less than three months. The Court emphasized the short time span between the planned trial of the Izzarelli action and claimants' application for relief from the stay as reason to lift the stay.[38]

Here, the Debtors have been in chapter 11 proceedings for over eight years. As the court stated in *Rexene*, "[t]he longer the trial is delayed, the more burdensome it is to both parties to prepare once again for trial."[39] Granting Munoz relief from the stay would force the Debtors -- currently in the midst of plan confirmation proceedings and final-hour settlement negotiations --

---

[35] 141 B.R. 574, 576 (Bankr. D. Del. 1992).

[36] *Id.* at 575.

[37] *Id.*

[38] *Id.* at 577.

[39] *Id.*

to divert resources and personnel toward preparation and execution of a defense in a case that has necessarily been put on hold for over eight years.

In *Rexene*, both the claimants and the debtor had been prepared to go to trial two months prior to Rexene's chapter 11 filing,[40] and thus the action could have been ready for trial in a matter of weeks following a lift of the stay. Munoz' Complaint is nowhere near trial. The Izzarelli claimants were willing to forego any remaining discovery and proceed to trial, a claim which Munoz has not made. The court found that trial preparation would not burden Rexene because discovery was almost complete and claimant would forego additional discovery,[41] which is clearly not the state of Munoz' case.

Thus, Munoz has failed to cite any persuasive authority for the proposition that a creditor in her position -- having already waited eight years to litigate this claim -- is prejudiced by allowing the stay to continue during the Debtors' remaining chapter 11 proceedings. In fact, Munoz fails to establish that she will suffer any hardship whatsoever. Munoz thus fails to meet her "heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief."[42]

---

[40] *Id.* at 575.

[41] *Id.* at 576.

[42] *In re W. R. Grace & Co.*, No., 2007 WL 1129170, at *3; *In re Micro Design, Inc.*, 120 B.R. at 369; *In re FRG*, 114 B.R. at 80.

    **(c)**    ***Munoz Has Not Demonstrated any Probability of Success on the Merits, as
Required to Lift the Stay***

The relevant inquiry under the third prong is "whether the creditor has a probability of

prevailing on the merits."[43]  Munoz has provided no support for the claim that she has a

probability of prevailing on the merits.  In fact, Munoz' motion fails to discuss the merits of her

case in any meaningful way.  Since there is substantial discovery left to do in this case and no

Motion for Summary Judgment or Motion to Dismiss was filed by the Debtors prior to the

automatic stay, Munoz has no credible argument that she has a probability of success.

## II.    THE DEBTORS HEREBY AGREE TO WITHDRAW THE 25TH OMNIBUS OBJECTION AS TO MUNOZ' CLAIM

As a result of the Debtors' request for the Court to deny the relief requested to lift the

stay, the Debtors hereby agree to withdraw without prejudice their objection to the Munoz claim

made in the Debtors' 25th Omnibus Objection in August 2008.  Based on the discussions that

have taken place among counsel for Munoz and counsel for the Debtors, the prospect of settling

the claim at this time does not appear likely.  Thus, while the Debtors reserve all of their rights to

reassert their claim objection at a later date – and the Debtors fully intend to do so – the Debtors

acknowledge that it does not seem prudent to continue to adjourn their objection to the Munoz

claim while postponing liquidation of the matter.  Therefore, the Debtors hereby agree to

temporarily withdraw their objection to the Munoz claim, with the intention of reasserting that

objection at a later date so that the Debtor's objection to the Munoz claim can be considered

within 180 days of the Effective Date, as provided in the Plan.

---

[43] *In re Rexene*, 141 B.R. at 577 (emphasis added).

## CONCLUSION

Munoz bears the heavy burden of showing that cause exists to lift the stay.[44]  Munoz'

motion comes in the midst of the confirmation process, and seeks to allow a distracting and long-

stayed lawsuit to proceed against Grace -- Conn.  Munoz has failed to demonstrate that any

prejudice to her interests will occur if the stay is not lifted at this time, and has made no showing

that she has any chance of prevailing on the merits of her claims.  Therefore, Munoz' lift-stay

motion should be denied, the Debtors' objection to the Munoz claim should be withdrawn, and

both parties should reserve all of their rights for a later time, after the Effective Date, when the

Munoz claim can and will be liquidated without prejudice to the Debtors.

---

[44] *In re W. R. Grace & Co.*, 2007 WL 1129170, at *3; *In re Micro Design, Inc.*, 120 B.R. at 369; *In re FRG, Inc.*, 114 B.R. at 80.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the

form of Exhibit A attached hereto, DENYING the Munoz motion to lift the stay.


Dated:  October 9, 2009                    Respectfully submitted,

                                           KIRKLAND & ELLIS LLP

                                           David M. Bernick, P.C.
                                           Theodore Freedman
                                           Christopher T. Greco
                                           Citigroup Center
                                           601 Lexington Ave.
                                           New York, New York  10022-4611
                                           Telephone:  (212) 446-4800
                                           Facsimile:  (212) 446-4900



                                           THE LAW OFFICES OF JANET S. BAER, P.C.
                                           Janet S. Baer, P.C.
                                           70 W. Madison St.
                                           Suite 2100
                                           Chicago, IL 60602
                                           Telephone:  (312) 641-2162
                                           Facsimile:  (312) 641-2165

                                           and

PACHULSKI STANG ZIEHL & JONES LLP

  /s/   James E. O'Neill
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
joneill@pszjlaw.com
kmakowski@pszjlaw.com

*Co-Counsel for the Debtors and Debtors in Possession*