## EXHIBIT B

### 2009 SETTLEMENT AGREEMENT [1]

---

[1]   Exhibit E, *Survey Plan of Conservation Restriction Area and Limited Non-Exclusive Access License Area*, has not been included due to bulk.  Any party wishing to inspect this exhibit should contact Debtors' counsel.

## SETTLEMENT AGREEMENT

This Agreement (the "Agreement") is made on this 4th day of September 2009, by, between and among the following parties on behalf of themselves and their respective successors and assigns:

- The **Town of Acton** (the "Town" or "Acton"), a Massachusetts municipal corporation, having its principal office at Town Hall, 472 Main Street, Acton MA 01720, acting by and through its **Town Manager** (the "TM") and its **Board of Selectmen** (the "BOS" or the "Selectmen") pursuant to their respective authorities under the Charter and Bylaws of the Town, the Massachusetts General Laws and applicable special legislation, regulations promulgated pursuant thereto, and all acts in addition thereto and in amendment thereof and every other power and authority them thereto enabling; and

- **W.R. Grace & Co. - Conn**. ("Grace"), a Connecticut corporation with a principal place of business at 7500 Grace Drive, Columbia, MD, 21044, acting by and through its duly authorized Senior Real Estate Counsel.

### RECITALS

WHEREAS Grace (including Grace as successor to W.R. Grace & Co. and Dewey & Almy Chemical Co.) owns real property in the Town consisting of thirteen (13) separately assessed parcels as shown on the map attached hereto as **Exhibit A**, consisting of 185.532± acres with frontage on three public ways, two of which have been sewered (collectively "Grace's Acton Property" or the "Grace Acton Property").

WHEREAS the Town has assessed sewer betterments, based on the following number of sewer betterment units ("SBUs"), on the following parcels of Grace's Acton Property, with frontage on the following sewered streets ("Grace's Bettered Property"):

### Table 1

| MAP | LOT | ACRES | SBUs | BETTERMENT | FRONTAGE |
|-----|-----|-------|------|------------|----------|
| I3 | 135 | 2.990 | 2.60 | $32,009.95 | Independence Rd. |
| I4 | 5 | 130.000 | 254.83 | $3,137,344.64 | Independence Rd. |
| I4 | 6 | 0.283 | 0.62 | $7,633.14 | Independence Rd. |
| I4 | 7 | 1.350 | 2.94 | $36,195.87 | Independence Rd. |

| MAP | LOT | ACRES | SBUs | BETTERMENT | FRONTAGE |
|-----|-----|-------|------|------------|----------|
| H3 | 251 | 8.110 | 17.66 | $217,421.44 | Parker Street |
| I3 | 4 | 9.110 | 18.85 | $232,072.15 | Parker Street |
| Total | | 151.843 | 297.5 | $3,662,677.19 | |

WHEREAS the Town did not assess any betterment against the following 33.689 acres of back land on the Grace property located north of the MBTA railroad tracks with a neck of frontage to Lawsbrook Road (Grace's Non-Bettered Property"):

### Table 2

| MAP | LOT | ACRES | SBUs | BETTERMENT | FRONTAGE |
|-----|-----|-------|------|------------|----------|
| H4 | 142 | 1.420 | 0.00 | 0.00 | Lawsbrook |
| H4 | 150 | 2.700 | 0.00 | 0.00 | Lawsbrook |
| H4 | 151-1 | 0.391 | 0.00 | 0.00 | Lawsbrook |
| H4 | 159 | 0.258 | 0.00 | 0.00 | Lawsbrook |
| H4 | 160 | 0.630 | 0.00 | 0.00 | Lawsbrook |
| I4 | 1 | 4.040 | 0.00 | 0.00 | Lawsbrook |
| I4 | 2 | 24.250 | 0.00 | 0.00 | Lawsbrook |
| Total | | 33.689 | 0.0 | 0.0 | |

WHEREAS Grace had initially challenged the validity of the Town's Sewer Assessment Bylaw as inconsistent with G.L. c. 83, § 15; however, the Superior Court found and Appeals Court confirmed the Town's Bylaw to be valid. See *W.R. Grace & Co. – Conn. v. Acton*, 62 Mass. App. Ct. 462 (2004).

WHEREAS Grace has timely petitioned the BOS for abatements of the sewer betterment assessments of the Grace Bettered Property ("Sewer Betterment Abatement Petitions").

WHEREAS, without waiving its claim to abatements, Grace has elected to pay these betterments in installments over 30 years at the Town's interest rate of 1.55% per year.[1]

WHEREAS the BOS constructively denied the Sewer Betterment Abatement Petitions, and Grace timely filed an appeal with the Middlesex Superior Court. See *W.R. Grace & Co.-*

---

[1] This rate is established pursuant to the Town's special legislation c. 340 of the Acts of 2000, and is a fraction of the interest rate on assessments established by G.L. c. 80, § 13.

*Conn.* v. *Lauren Rosenzweig, et al.* Middlesex Superior Court C. A. No. MICV-2006-01587

("Superior Court Action"). The parties' Joint Motion to Stay that appeal was allowed on May

17, 2006. On March 9, 2009, the parties filed a further Joint Motion to Continue Pre-Trial

Conference and to Continue Stay of Proceedings in light of productive settlement negotiations,

which Motion has been allowed.

WHEREAS over time Grace has paid to the Town a total of $1,107,608.56, comprised of

payments for principal, committed interest and late interest on its sewer betterments, including a

payment in the amount of $644,236.65 on November 14, 2008 to come current on its sewer

betterment payments as of that time.

WHEREAS on March 20, 2003, the Town filed a proof of claim number 4384 in Grace's

currently pending Chapter 11 case (*In re W.R. Grace et al.*, Case No. 01-01139, Bankr. D. Del.)

as a secured claim for sewer betterment improvements in an amount of "at least $2.1 million"

(the "Proof of Claim").

WHEREAS pursuant to the terms hereof, the Town and Grace agree that the Proof of

Claim shall be allowed as an administrative expense claim in Grace's Chapter 11 cases

(referenced in the preceding paragraph) in the amount of $2,162,677.19, paid pursuant to the

terms and conditions hereof, specifically Exhibit B hereto, and as secured as provided herein.

WHEREAS the parties now desire, without any admission of fact, law or liability, to

settle their differences with respect to the Sewer Betterment Abatement Petitions on the terms set

forth below.

NOW THEREFORE, for adequate consideration the receipt and sufficiency of which are

hereby acknowledged, the parties to this Agreement on behalf of themselves and their respective

successors and assigns covenant and agree as follows:

1.    **BANKRUPTCY COURT APPROVAL A PRECONDITION TO AGREEMENT TAKING EFFECT**

    **1.1**    The parties recognize that Grace is a Chapter 11 debtor in certain affiliated Chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware, identified as Case Nos. 01-1139 through 01-1200 (JKF) (Jointly Administered) (individually and together, the "Bankruptcy Cases"). Accordingly, this Agreement shall not take effect unless and until the United States Bankruptcy Court presiding over those Bankruptcy Cases shall have entered an order that provides the following: (i) approval of this Agreement and Grace's rights and obligations under this Agreement, fully and unconditionally; (ii) that this Agreement shall be binding upon any trustee appointed in the Bankruptcy Cases; (iii) that this Agreement shall (a) survive and not be modified by confirmation of any plan of reorganization in the Bankruptcy Cases; (b) any conversion of the Bankruptcy Cases to chapter 7; or (c) any dismissal of the Bankruptcy Cases; (iv) that Grace's quarterly installment payment obligations hereunder are payable as provided in this Agreement and entitled to administrative expense priority under Section 503(b) of the Bankruptcy Code in the amounts provided herein; and (v) except to the extent specifically provided herein, this Agreement shall not supersede that certain Stipulation Concerning Consolidation of Certain claims executed by the Town and Grace dated June 29, 2007.

    **1.2**    Immediately upon execution of this Agreement, the parties shall jointly move the United States bankruptcy Court to approve this Agreement pursuant to Bankruptcy Rule 9019, and to approve fully and unconditionally, without reduction or setoff, all payments and other obligations by Grace to the Town and *vice versa* required hereunder.

    **1.3**    The Effective Date of this Agreement shall be the date upon which the order entered by the United States Bankruptcy Court approving Grace's entry into this Agreement

becomes final ("Final Approval"), which shall be the next business day after the time to appeal

the order shall have expired without any appeal having been filed with respect to the order and

without any stay of the order pending appeal.

      **1.4**    In the event that (a) the Final Approval has not occurred within four (4) months

after full execution of this Agreement or such further time as the parties may agree or (b) the

United States Bankruptcy Court disapproves, or declines to approve fully and unconditionally

Grace's entry into this Agreement, or (c) the United States Bankruptcy Court takes any other

action or issues any other order that the Town or Grace believe would reduce or diminish the

benefits to either of them under this Agreement, then upon written notice by the Town to Grace

or by Grace to the Town sent within thirty (30) days after the occurrence of (a), (b) or (c)

hereinabove, this Agreement shall be null and void *ab initio* as if this Agreement had never been

executed, and without further recourse of the parties hereto.  In the event the Agreement is

approved by the United States Bankruptcy Court, the parties intend that the Town's and Grace's

rights and obligations under this Agreement shall survive Grace's Bankruptcy Cases fully and

unconditionally.

## 2.    RESOLUTION OF SEWER BETTERMENT ASSESSMENT ISSUES

### 2.1.    Abatement of Final Sewer Betterments, Quarterly Payments and Overpayment Credits.

      As of the effective date of this Agreement, retroactive to April 30, 2009 *nunc pro tunc*,

the Town shall abate sewer betterment assessments for the Grace Bettered Property as set forth

in Exhibit B.  During Grace's ownership of the Grace Bettered Property, Grace shall pay the

applicable quarterly payments.  Any overpayment credits and the remaining quarterly payments

for the sewer betterment assessment for the Grace Bettered Property shall be as set forth in

Exhibit B.  The Grace Bettered Property parcels located on the north-side of the MBTA Railroad

tracks ("Grace North") shall be considered a single parcel for the purposes of using its allocated SBUs in the future; and the Grace Bettered Property parcels located on the south-side of the MBTA Railroad tracks ("Grace South") shall be considered a single parcel for the purposes of using its allocated SBUs in the future. The payment obligations shall run with the land that constitutes Grace North and Grace South respectively according to the allocations to the parcels comprising Grace North and Grace South as set forth in Exhibit B, and shall constitute separate liens on each of the parcels comprising Grace North and Grace South accordingly.

Grace acknowledges and agrees:

- Pursuant to Chapter 340 of the Acts of 2000 and Massachusetts G.L. c. 80, §13, the unpaid balance of the assessments shall bear interest from the thirtieth day after assessments were committed to the collector at the rate of 1.55% per cent per annum;

- By Grace having chosen to apportion the sewer betterment assessment over time, pursuant to Massachusetts G. L. c. 80, §12, the Town holds a duly perfected and validly enforceable first priority lien from February 14, 2001 against (a) the Grace North parcels, individually and collectively, to secure payment of $265,409.56, plus interest and other charges as determined and allowed by Massachusetts law, and (b) the Grace South parcels, individually and collectively, to secure payment of $1,897,267.62, plus interest and other charges as determined and allowed by Massachusetts Law, as evidenced by the following:

    o Order for Construction of the Middle Fort Pond Brook Sewer System (as recorded with the Middlesex South District Registry of Deeds at Book 32363, Page 77; Book 32370, Page 507; Book 32657, Page 083; Book 44689, Page 164, and filed with the Middlesex South District Registry of the Land Court as Document No. 1162908);
    o Supplemental Order for Construction of Middle Fort Pond Brook Sewer System (as recorded with the Middlesex South District Registry of Deeds at Book 45383, Page 378);
    o Order Determining and Certifying Final Sewer Betterment Assessments for the Middle Fort Brook Pond Sewer Betterment Area (for Recorded Land) (as recorded with the Middlesex South District Registry of Deeds at Book 45383, Page 382);
    o Order Determining and Certifying Final Sewer Betterment Assessments for the Middle Fort Brook Pond Sewer Betterment Area (for Registered Land) (as filed with the Middlesex South District Registry of the Land Court as Document No. 1377528); and
    o Statements to Continue Municipal Liens (as recorded with the Middlesex South

District Registry of Deeds at Book 40104, Page 595; Book 40104, Page 596; Book 40104, Page 597; Book 40104, Page 598; Book 48145, Page 576; Book 48145, Page 577; Book 48145, Page 578; Book 48145, Page 579; and filed with the Middlesex South District Registry of the Land Court as Document Nos. 1285187, 1285186, 1423841 and 1423842).;

- Apportioned assessments will be added to the quarterly tax bill(s) for the parcels comprising Grace North and Grace South in accordance with applicable Massachusetts law; and

- Annual user fees shall be paid by the owner(s) of the parcels comprising Grace North and Grace South for actual sewer usage, calculated in accordance with Section D.10.6 of the Town's Sewer Assessment Bylaw.

Grace further acknowledges and agrees that:

- The amount of the Overpayment set forth in Exhibit B, accurately and properly reflects the total amount of any and all prior excess sewer betterment payments, committed interest, interest on late payments paid, and statutory refund interest thereon as required by Massachusetts G. L. c. 80, §5, that would be due to Grace as of April 30, 2009, based on the abatement to be implemented by this Agreement ("Overpayment").

- The Overpayment will not be refunded directly to Grace, but rather will be applied to the future quarterly sewer betterment payments for the Grace Bettered Property as they come due until the Overpayment has been exhausted, as reflected in Exhibit B; and

- The Overpayment will not accrue any interest due to Grace after April 30, 2009.

### 2.2    Future Development of Grace's Acton Property.

The 175.66289 SBUS as abated shall be allocated among the parcels comprising Grace

North and Grace South as set forth in Exhibit B hereto. The SBUs allocated to the Grace North

may only be used for development of the Grace North, and the SBUs allocated to the Grace

South may only be used for development of the Grace South. In the future, any development of

the Grace Bettered Property (to the extent it uses the Town's public sewer) cannot utilize more

than 175.66289 SBUs without Grace acquiring the right to do so pursuant to a sewer privilege

fee agreement with the Sewer Commissioners. For purposes of this calculation, an SBU will be

assumed to equal 300 gallons per day of flow as calculated by Title 5 of the state environmental

code. 310 CMR 15.00, and any development of the Grace property will be assumed to contribute its full Title 5 flow to the sewer regardless of the actual flow.

Nothing in this Agreement shall (a) limit Grace's right to develop and use Grace's Acton Property, in whole or part, by use of on-site septic system or systems, an on-site sewage treatment system or systems, or other lawful on-site sewerage solutions not involving connection to and use of the Town sewer, or (b) obligate Grace to connect to or use the Town sewer system. Nothing in this Agreement shall obligate the Town or any board, commission, or official of the Town to approve any such development of Grace's Acton Property, which shall be subject to all applicable laws, bylaws, rules and regulations. Notwithstanding the foregoing, except as required by federal or state law, the 175.66289 SBUs reserved hereunder and the basis of permitted sewage flow shall not hereafter be reduced.

3.    **CONSERVATION RESTRICTION**

3.1    Grant of Conservation Restriction.

Within thirty days of the Effective Date of this Agreement or such further time as the parties may agree, Grace will execute and deliver to the Town:

> (a) a perpetual conservation restriction (substantially in the form attached hereto as **Exhibit C** with such amendments as the parties may in writing agree) over approximately 15.3 acres of Grace's Acton Property (consisting of portions of Acton Assessor's Map I4, Parcel 2, and Map H-4, Parcel 159) (the "Conservation Restriction"), and

> (b) a Limited Non-Exclusive Access License (substantially in the form attached hereto as **Exhibit D** with such amendments as the parties may in writing agree) to permit access by the Town, or its employees, agents or representatives, to the conservation-restricted land from Laws Brook Road over property consisting of Acton Assessor's Map H-4, Parcels 151-1, 160 and 142 (the "Limited Access License").

Grace shall provide to the Town copies of any required notices sent to the United States Environmental Protection Agency and the Department of Environmental Protection regarding the

grant of this Conservation Restriction and Limited Access License. If and to the extent either agency requires for environmental protection purposes that fencing be installed around the perimeter of the Conservation Restriction area to prevent the public from entering the Conservation Restriction Area or any other abutting Grace Acton Property, Grace will install such fencing at its own cost.

After acceptance by the Town acting by and through its Board of Selectmen and Conservation Commission, Grace and the Town shall diligently and promptly take all reasonable and necessary steps to obtain the approval of the Conservation Restriction by the Massachusetts Executive Office of Energy and Environmental Affairs ("EOEEA"), including amending any provisions of the Conservation Restriction as required by EOEEA for such approval provided that such amendments are mutually acceptable to Grace and the Town and provided that each of Grace's and the Town's assent to such amendments shall not be unreasonably withheld, conditioned or delayed. Within thirty (30) days after approval of the Conservation Restriction by EOEEA, the Town shall record the Conservation Restriction and the Limited Access License at the Middlesex County Registry of Deeds (and if applicable register them at the Middlesex South Land Court Registration Office).

In the event EOEEA does not grant approval of the Conservation Restriction despite the parties' diligent efforts, (a) Grace and the Town shall agree upon any necessary mutually acceptable changes to convert the Conservation Restriction into a land use restriction with substantially the same terms and conditions as the Conservation Restriction and with a term as long as possible under applicable law (the "Land Use Restriction"), (b) Grace and the Town shall agree upon corresponding mutually acceptable changes to the Limited Access License. (c) the Town will record the Land Use Restriction and the Limited Access License at the Middlesex

County Registry of Deeds (and if applicable register them at the Middlesex South Land Court Registration Office), and (d) the parties' remaining rights and obligations under this Agreement shall remain in full force and effect.

    3.2    Location.

The location of the Conservation Restriction area (or the Land Use Restriction area as applicable) and the Limited Access License area described in Section 4.1 shall be depicted on a mutually acceptable survey plan prepared for Grace by Beals Associates, Inc. within thirty (30) days after the conclusion on the 2009 Acton Annual Town Meeting, and shall be attached hereto as **Exhibit E**. This survey plan shall be registered/recorded along with the Conservation Restriction (or with the Land Use Restriction as applicable).

    3.3    Real Estate Taxes.

The parties agree that effective July 1, 2009, the real estate taxes assessed on Acton Assessor's Map I4, Parcel 2, and Map H-4, Parcel 159, will be abated to fifty (50%) percent of the current assessed value, consistent with the effect of the Conservation Restriction and the presence of the North Lagoon on Grace's Acton Property.

**4.**    **AGREEMENT FOR JUDGMENT**

Within thirty days of the Effective Date of this Agreement, the parties shall execute and file with the Middlesex Superior Court an Agreement for Judgment in the form attached hereto as **Exhibit F**, each party waiving its rights to appeal, in the Superior Court Action.

**5.**    **NOTICES**

All notices to be given pursuant to this Agreement shall be in writing and shall be deemed given when delivered by hand or when mailed by certified or registered mail, postage prepaid, return receipt requested, to the parties hereto at the addresses set forth below, or to such

other place as a party (or its successor. assign. nominee. affiliate and designee) may from time to

time designate by written notice:

### Grace:

W.R. Grace & Co. - Conn.
Attention: Director of Real Estate
7500 Grace Drive
Columbia, MD, 21044
Attn: Director of Real Estate

With a copy to:

Louis Levine. Esq.
D'Agostine, Levine. Parra & Netburn, P.C.
268 Main Street
P.O. Box 2223
Acton, MA 01720

### Town of Acton:

Steven L. Ledoux. Town Manager
Town of Acton
472 Main Street
Acton. Massachusetts 01720

With a copy to:

Stephen D. Anderson. Esq.
Anderson & Kreiger LLP
One Canal Park, Suite 200
Cambridge MA 02141

## 6.    BINDING EFFECT OF AGREEMENT

This Agreement shall run with the land that is Grace's Acton Property and shall be

binding upon and inure to the benefit of the parties hereto and their respective heirs. executors.

administrators, members. successors, assigns, nominees. affiliates and designees. This

Agreement, or a Notice of this Agreement. shall not be recorded at the Middlesex County

Registry of Deeds or filed at the Middlesex South Land Court Registration Office; provided,

however, that the Judgment in the Superior Court Action shall be recorded at the Middlesex County Registry of Deeds and filed at the Middlesex South Land Court Registration Office.

Either party will, at any time upon fifteen (15) business days prior written notice from the other, execute, acknowledge and deliver to the other a statement in writing (i) certifying that this Agreement is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying this Agreement, as so modified, is in full force and effect) and (ii) acknowledging that there are not, to such party's knowledge, any uncured defaults on the part of the other party hereunder, or specifying such defaults if any are claimed. Any such statement may be conclusively relied upon by any prospective purchaser or encumbrancer of the Grace Acton Property. The requested party's failure to deliver such a statement within such time will be conclusively relied upon by the requesting party that (i) this Agreement is in full force and effect, without modification except as may be properly represented by the requesting party, and (ii) there are no uncured defaults in either party's performance.

## 7.    MISCELLANEOUS

### 7.1.    Governing Law.

This Agreement and the rights and obligations of the parties hereunder shall in all respects be construed as a Massachusetts contract and shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts.

### 7.2.    Authority.

Each individual signing this Agreement warrants and represents that he or they are authorized to do so. Grace shall execute and append hereto a Certificate in a form mutually acceptable to Town Counsel and Grace counsel attesting to the authority of its signatory hereto.

7.3.    <u>No Waiver</u>.

Failure of any party to this Agreement to avail itself or any of the terms, covenants and conditions of this Agreement for a period of time or at any time or times, shall not be construed or deemed to be a waiver of any of its rights hereunder.

7.4.    <u>Amendments</u>.

Except as set forth in this Agreement, no change, amendment, modification, cancellation or termination of this Agreement hereof, or any part of this Agreement, shall be valid unless all parties to this Agreement consent thereto in writing.  An extension of any deadline set forth in this Agreement shall be effective if signed either by (a) the parties hereto, or (b) their respective counsel identified in the Notice section hereof.

7.5.    <u>Counterparts</u>.

This Agreement may be executed in several counterparts and all counterparts so executed shall constitute one Agreement which shall be binding on all of the parties hereto.

7.6.    <u>Entire Agreement</u>.

This Agreement embodies the entire Agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings between the parties hereto relating to such subject matter.

7.7.    <u>No Admission</u>

This Agreement is made for settlement purposes only.  It does not constitute an admission by any party hereto for any purpose.  Except to enforce its provisions, this Agreement shall not be admissible in any court or administrative action for any other purpose.  Except as otherwise set forth in this Agreement, the parties fully reserve their legal and equitable rights.

7.8.    Enforcement

Prior to bringing any action for breach of this Agreement, the party initiating the enforcement action, shall have first (a) notified the other party of the claims for enforcement, (b) offered the other party a reasonable time, not to exceed 45 days, to cure the alleged breach of the Agreement, and (c) offered to participate in non-binding mediation presided over by Justice Rudolph Kass of the Mediation Group, if possible, in an effort to resolve those claims.

7.9.    Force Majeure.

Any delay or temporary failure to perform under this Agreement shall not constitute a breach hereof if the delay or temporary failure to perform is caused by and remains necessary as a result of an act of God, war, revolution, terrorist actions or threats, hijacking, bombing, threatened or rebellion, insurrection, or civil strife.

7.10.    Survival Provision.

The provisions of this Agreement shall survive Grace's bankruptcy proceedings.

7.11    Severability.

If any provision of this Agreement is held to be illegal, invalid, or unenforceable, that provision shall be enforced to the maximum extent permissible so as to effect the intent of the parties, and the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

7.12    Construction and Interpretation.

Each of the parties agrees that this Agreement is the result of substantial negotiations and informed input by all parties and their attorneys. Therefore, if any dispute arises over the meaning or interpretation of this Agreement, the language of this Agreement shall not be construed against or in favor of any party on the basis or theory that said party drafted or was

responsible for this Agreement or the language being interpreted.  Each party takes responsibility for negotiating and drafting this Agreement.

[INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be executed under seal on the date(s) set forth below.

**TOWN OF ACTON,**

**By its Acton Board of Selectmen,**
acting as the Selectmen and the
Sewer Commissioners of the Town of Acton

Paulina Knibbe, Chairman

Peter Berry , Vice Chairman

Lauren Rosenzweig, Clerk

Terra Friedrichs , Member

Michael Gowing, Member

## ACKNOWLEDGEMENT

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF MIDDLESEX

On this 5th day of ~~September~~ *October*, 2009, before me, the undersigned Notary Public, personally appeared each of the foregoing named members of the Board of Selectmen of the Town of Acton, acting as the Sewer Commissioners of the Town of Acton, proved to me through satisfactory evidence of identification, which was: examination of *Acton Board of Selectmen* to be the persons whose names are signed on the preceding document, and acknowledged to me that each signed it voluntarily for its stated purpose as the foregoing named members of the Board of Selectmen of the Town of Acton, acting as the Sewer Commissioners of the Town of Acton, a municipal corporation.

```
GAIL L. SAWYER
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
March 18, 2016
```

_____
Signature of Notary Public

Gail L. Sawyer
_____
Printed name of Notary

**Place Notary Seal and/or Stamp Above**

My Commission Expires March 18, 2016

A0034495.3

**And by its Town Manager,**



Steven L. Ledoux

## ACKNOWLEDGEMENT

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF MIDDLESEX

On this 5ᵗʰ day of ~~September~~ *October*, 2009, before me, the undersigned Notary Public, personally appeared each of the foregoing Steven L. Ledoux, proved to me through satisfactory evidence of identification, which was: examination of *Steven L. Ledoux* . to be the person whose name is signed on the preceding document, and acknowledged to me that he signed it voluntarily for its stated purpose as the foregoing named Town Manager of the Town of Acton, a municipal corporation.

> **GAIL L. SAWYER**
> Notary Public
> COMMONWEALTH OF MASSACHUSETTS
> My Commission Expires
> March 18, 2016

*Gail L. Sawyer*
Signature of Notary Public

*Gail L. Sawyer*
Printed name of Notary

**Place Notary Seal and/or Stamp Above**

My Commission Expires *March 18, 2016*

ADB82689.3

17

W.R. GRACE & CO. – CONN.

Name:  W. Brian McGowan
Position: Senior Vice President

STATE OF MARYLAND            )
                             ) ss.
COUNTY OF HOWARD             )

    On this _13th_ day of ~~September~~ _October_, 2009, before me, the undersigned Notary Public, personally appeared W. Brian McGowan, proved to me through satisfactory evidence of identity, which was _Drivers License_ , to be the Senior Vice Present of W.R. Grace &Co, - Conn., and the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its state purpose and with full authority to do so on behalf of the corporation.

Signature of Notary Public

_Susan M Martinez_
Printed name of Notary

My Commission Expires _11/01/09_

**Place Notary Seal and/or Stamp Above**

18

## Exhibit A

### Map depicting the Grace Acton Property



**Exhibit B**

**Allocation**

The final abatement, final betterment assessment, overpayment, and remaining quarterly payments for the Grace Bettered Property shall be as follows.

| CRITERION | SBUs | COST/SBU | AMOUNT |
|---|---|---|---|
| Challenged Betterment | 297.50 | $12,311.52 | $3,662,677.19 |
| Abatement | 121.83711 | $12,311.52 | $1,500,000.00 |
| Final Betterment After Abatement | 175.66289 | $12,311.52 | $2,162,677.19 |
| Overpayment (the total amount of any and all prior excess sewer betterment payments, committed interest, interest on late payments paid, and statutory refund interest through 4/30/09) To Be Applied to Future Quarterly Payments Until Exhausted | N/A | N/A | $293,944.16 |
| Quarterly Payments Due for Quarters 34-120 | N/A | N/A | $22,570.35 |
| Quarterly Payments 34-46 (After Application of $22,570.35 of Overpayment Per Quarter) | N/A | N/A | $0.00 |
| Quarterly Payment 47 (After Application of remaining $529.61 of Overpayment Per Quarter) | N/A | N/A | $22,040.74 |
| Quarterly Payments 48-120 | N/A | N/A | $22,570.35 |

Grace's Final Betterment After Abatement shall be allocated to Grace's Bettered Property as follows:

**Grace North:**

| MAP | LOT | ACRES | SBUs AS ABATED | FINAL SEWER BETTERMENT AFTER ABATEMENT | FRONTAGE |
|---|---|---|---|---|---|
| H3 | 251 | 8.110 | 10.42759 | $128,379.43 | Parker Street |
| I3 | 4 | 9.110 | 11.13024 | $137,030.13 | Parker Street |
| Total Grace North | | | 21.55783 | $265,409.56 | |

A0084086.3

Grace South:

| MAP | LOT | ACRES | SBUs AS ABATED | FINAL SEWER BETTERMENT AFTER ABATEMENT | FRONTAGE |
|---|---|---|---|---|---|
| I3 | 135 | 2.990 | 1.53521 | $18,900.71 | Independence Road |
| I4 | 5 | 130.000 | 150.46781 | $1,852,487.48 | Independence Road |
| I4 | 6 | 0.283 | 0.36609 | $4,507.09 | Independence Road |
| I4 | 7 | 1.350 | 1.73596 | $21,372.34 | Independence Road |
| Total Grace South | | | 154.10507 | $1,897267.62 | |

.A0004985.3

**EXHIBIT C**
**Conservation Restriction**

## CONSERVATION RESTRICTION
## TO CONSERVATION COMMISSION OF
## TOWN OF ACTON

I.      Grantor Clause:

W.R. GRACE & CO. - CONN, having an address at 7500 Grace Drive, Columbia, Maryland (on behalf of itself and as successor to W.R. Grace & Co. and Dewey & Almy Chemical Co.) (hereinafter collectively called the "**Grantor**", which term includes its successors and assigns), pursuant to Sections 31, 32, and 33 of Chapter 184 of the General Laws of Massachusetts, grants, with quitclaim covenants, to the TOWN OF ACTON, Middlesex County, a Municipal Corporation in the Commonwealth of Massachusetts, acting by and through its Conservation Commission, with an address at Town Hall, 472 Main Street, Acton, Massachusetts (hereinafter called the "**Grantee**"), in perpetuity and exclusively for conservation purposes, the following described Conservation Restriction on that certain parcel of land located off Laws Brook Road, Acton, Middlesex County, Massachusetts (herein called the "**Premises**"), and being shown as "15.3 Acres ± Conservation Restriction" as shown on the plan entitled "Plan of Land in Acton, MA, dated May 11, 2009 and prepared by Precision Land Surveying, Inc., recorded herewith with the Middlesex South District Registry of Deeds as Plan _____ of _____, Plan Book _____, Page _____, (the "Plan"). For Grantor's Title, see Certificate of Title No. 61523 filed with the Middlesex South District Registry of the Land Court in Registration Book 411, Page 1 and deed dated December 29, 1955 and recorded with the Middlesex South District Registry of Deeds in Book 8806, Page 421.

II.     Purposes:

The purposes of this Conservation Restriction are to assure that the Premises will be retained, in perpetuity, predominantly in their natural, scenic and wooded condition and to prevent any use of the Premises that will significantly impair or interfere with the conservation values of the Premises. The conservation of the Premises will yield a significant public benefit for the following reasons:

The conservation of the Premises will provide 15.3± acres of natural, wooded wildlife habitat and nature preserve, a buffer between any future development of Grantor's remaining land (described in deed(s) to Grantor filed with the Middlesex South District Registry of the Land Court in Registration Book 411, Page 1 (Certificate No. 61523) (the Premises being a part thereof) and Registration Book 382, Page 365 (Certificate No. 57292) and recorded in the Middlesex South District Registry of Deeds in Book 8358, Page 459; Book 7380, Page182; Book 7848, Page 431; Book 7405, Page 431; Book 7125, Page 507; Book 8072, Page 243; and Book 11280, Page 337 ("Grantor's Remaining Land")) and two existing residential subdivisions located on Lexington Drive and Heritage Road and additional land associated with the Lexington Drive subdivision.

{A0084991.3 }

III.  Prohibited Acts and Uses, Exceptions Thereto, and Permitted Uses:

A.  Prohibited Acts and Uses:

Subject to the exceptions set forth in paragraph B below, the following acts and uses are expressly prohibited on the Premises:

(1)  Constructing, placing or allowing to remain any building, tennis court, landing strip, mobile home, swimming pool, asphalt or concrete pavement, sign, billboard, or other advertising display, antenna, utility pole, conduit line, satellite dish, tower, or other temporary or permanent structure or facility on, above, or under, the Premises;

(2)  Mining, excavating, dredging, or removing from the Premises soil, loam, peat, gravel, sand, rock, or other mineral resource or natural deposit or otherwise making topographical changes to the area;

(3)  Placing, filling, storing, or dumping on the Premises of soil, refuse, trash, vehicle bodies or parts, rubbish, debris, junk, waste, or other substance or material whatsoever, or the installation of underground storage tanks;

(4)  Cutting, removing or otherwise destroying trees, grasses or other vegetation;

(5)  Activities detrimental to drainage, flood control, water conservation, water quality, erosion control, soil conservation, or archaeological conservation;

(6)  Storage of vehicles including motorcycles, mopeds, all-terrain vehicles, trail bikes, or any other motorized vehicles on the Premises;

(7)  The disruption, removal or destruction of any stone walls or granite fence posts on the Premises;

(8)  The use of the Premises for commercial recreation, business, residential or industrial uses inconsistent with the terms hereof; and

(9)  Any other use of the Premises or activity thereon which is inconsistent with the purpose of this Conservation Restriction or which would materially impair other significant conservation interests unless necessary for the protection of the conservation interests that are the subject of this Conservation Restriction.

B.  Reserved Rights and Exceptions to Otherwise Prohibited Acts and Uses:

The Grantor reserves the right, but not the obligation, to conduct or permit the following activities and uses on the Premises, which Grantee hereby

acknowledges do not materially impair the purposes of this Conservation Restriction or other significant conservation interests of the Premises:

(1)  <u>Recreational Activities</u>.  Hiking, cross-country skiing and other non-motorized outdoor recreational activities that do not materially alter the landscape.

(2)  <u>Vegetation Management</u>.  In accordance with generally accepted forest management practices, removing brush, selective *de minimis* pruning and cutting to prevent, control or remove hazards, disease, insect or fire damage, or to preserve the present condition of the Premises, including vistas, woods roads, fence lines and trails and meadows.

(3)  <u>Non-native or nuisance species</u>.  The removal of non-native or invasive species, the interplanting of native species, and the control of species in a manner that minimizes damage to surrounding, non-target species and preserves water quality.

(4)  <u>Composting</u>.  The stockpiling and composting of stumps, trees and brush limbs and similar biodegradable materials originating on the Premises, provided that such stockpiling and composting is in locations where the presence of such activities will not have a deleterious impact on the purposes (including scenic values) of this Restriction.

(5)  <u>Wildlife Habitat Improvement</u>.  With the prior written permission of Grantee, measures designed to restore native biotic communities, or to maintain, enhance or restore wildlife, wildlife habitat, or rare or endangered species including selective planting of native trees, shrubs and plant species.

(6)  <u>Trails</u>.  The marking, clearing and maintenance of footpaths. Trails are to be not wider than five (5) feet.

(7)  <u>Construction and Use of a Road</u>. Construction, installation, maintenance and use, for all purposes for which streets and ways are commonly used in the Town of Acton, including without limitation to pass and repass by foot and vehicle of every type and kind, a road ("Road"), including without limitation within the Road, construction, installation, maintenance and use of underground utilities together with above ground appurtenances and facilities of every name, nature and description, including without limitation, transformers, cable boxes, manholes and every other above ground appurtenance and facility necessary or desirable to construct, maintain and use the Road.  The Road shall be within the area shown as "Proposed 50' Access" on the Plan; provided, however, the Grantor may hereafter relocate and widen the Proposed 50' Access area as may be necessary to cause the Road, together with any necessary right of way, to comply with any and all applicable federal, state and local laws and

regulations if and when the Road is constructed. If the Proposed 50' Access is relocated or widened as aforesaid, the Grantor shall record a plan with the Middlesex South District Registry of Deeds and file it with the Land Court Registration Office in the Middlesex South District Registry of Deeds showing the relocated or widened Road.

(8)     Drainage. Construction, installation, maintenance and use of storm water drainage and such above and below ground drainage structures as the Grantor may elect for the use and development of the Road, together with any and all excavation and such other topographic changes as reasonably necessary for such drainage.

(9)     Subdivision. Subdivision of the Premises in which case the Grantor shall make reference to this restriction in any conveyance of all or a portion of the Premises.

(10)    Passive Land Use Requirements. Use of the Premises to meet passive land use requirements of the Town of Acton, such as area, open space, lot coverage, floor area ratio and the like as necessary or appropriate for the use and development of Grantor's Remaining Land.

(11)    Cutting. Selective cutting of trees and vegetation for fire protection, trail and access road maintenance and tick control.

(12)    Signs. Erection of signs by Grantor or Grantee identifying Grantee as holder of the restriction and to educate the public about the conservation values protected and any limitations relating to public access.

(13)    Fences and Gates. Construction, installation, maintenance, repair and replacement of appropriate controls, including fences, gates, walls, boulders and the like, for the purposes of (a) preventing access to and use of the Premises except as permitted by the Limited Non-Exclusive Access License granted hereunder , (b) preventing access between the Premises and the Grantor's Remaining Land, and/or (c) preventing or mitigating any unsafe condition associated with the Premises in relation to its surroundings such as preventing access to or across a nearby active railroad line, steep slopes, and other pre-existing, abutting conditions.

(14)    Environmental Remediation. Investigation, assessment, containment, removal, remedial or other response actions conducted by or on behalf of Grantor consistent with requirements of the United States Environmental Protection Agency ("EPA"), the Massachusetts Department of Environmental Protection ("MADEP"), or any other federal, state or local governmental authority having competent jurisdiction concerning any release or threat of release of oil, hazardous materials or hazardous substances to, beneath, at or from the Premises or any other abutting or nearby land now or formerly owned by the Grantor.

The exercise of any rights reserved or permitted under this paragraph B shall be in compliance with the then-current Zoning By-Law of the Town of Acton, the Acton Wetlands Protection Bylaw, the Wetlands Protection Act (Section 40 of Chapter 131 of the General Laws of Massachusetts), and all other applicable federal, state and local laws and regulations. The inclusion of any reserved or permitted right in this paragraph B requiring a permit from a public agency does not imply that the Grantee takes any position on whether such permit should be issued.

C.    Permitted Acts and Uses

All acts and uses not prohibited or circumscribed by paragraphs A and B are permissible.

IV.    Legal Remedies of the Grantee:

A.    Legal and Injunctive Relief.

The rights hereby granted shall include the right to enforce this Conservation Restriction by appropriate legal proceedings and to obtain injunctive and other equitable relief against any violations, including, without limitation, relief requiring restoration of the Premises to its condition prior to such violation complained of (it being agreed that Grantee may have no adequate remedy at law), and shall be in addition to, and not in limitation of, any other rights and remedies available to Grantee.

B.    Reimbursement of Costs of Enforcement

Grantor covenants and agrees to reimburse Grantee all reasonable costs and expenses (such as reasonable counsel fees) incurred in enforcing this Conservation Restriction or in taking reasonable measures to remedy or abate any violation thereof, provided that a violation of this Conservation Restriction is acknowledged by Grantor or determined by a court of competent jurisdiction to have occurred.

C.    Severability Clause

If any provision of this Conservation Restriction shall to any extent be held invalid, the remainder shall not be affected.

D.    Non-Waiver

Enforcement of the terms of this Conservation Restriction shall be at the discretion of Grantee. Any election by Grantee as to the manner and timing of its right to enforce this Conservation Restriction or otherwise exercise its rights hereunder shall not be deemed or construed to be a waiver of such rights.

E.      Disclaimer of Liability

By its acceptance of this Conservation Restriction, the Grantee does not undertake any liability or obligation relating to the condition of the Premises pertaining to compliance with and including, but not limited to, hazardous materials, zoning, environmental laws and regulations, or acts not caused by the Grantee, its agents or assigns. Without limiting the generality of the foregoing, the grant of this Conservation Restriction and the rights set forth herein shall not transfer to Grantee, and Grantee's acceptance of this Conservation Restriction and the rights set forth herein shall not impose upon Grantee, any duty, responsibility, liability or obligation whatsoever arising out of or relating to (i) any release or threat of release of oil, hazardous materials or hazardous substances to, beneath, at or from the Premises or any other land now or formerly owned by the Grantor in the Town of Acton, (ii) the environmental condition of the Premises including without limitation any surface waters and ground waters on, beneath at or from the Premises, and/or (iii) any non-compliance of the Premises with environmental laws, bylaws, rules and regulations, not caused by Grantee or its employees, agents or representatives after the recording hereof. All such matters shall remain unto the Grantor as if this Conservation Restriction and the rights set forth herein had not been granted.

F.      Acts Beyond Grantor's Control

Nothing contained in this Conservation Restriction shall be construed to entitle Grantee to bring any action against Grantor for any injury to or change in the Premises resulting from causes beyond Grantor's control, including, but not limited to, fire, flood, storm and earth movement, or from any prudent action taken by Grantor under emergency conditions to prevent, abate, or mitigate significant injury to the Premises from such causes.

V.      Limited Non-Exclusive Access License:

The Grantor hereby grants to the Grantee, or its employees, agents or representatives, the right to enter the Premises by foot upon reasonable notice and at reasonable times, between one-half hour after sunrise and one-half hour before sunset, only for the purpose of inspecting the Premises to determine compliance with or to enforce this Conservation Restriction, and for no other purposes. The Grantor also grants to the Grantee, after notice of a violation and failure of the Grantor to cure said violation, the right to enter the Premises for the purpose of taking any and all actions with respect to the Premises as may be necessary or appropriate to remedy or abate any violation hereof, including but not limited to the right to perform a survey of boundary lines.

The Premises shall NOT be open to the public.

The Grantor reserves the right to construct, install, maintain, repair and replace appropriate controls, including fences, gates, walls, boulders and the like on the Premises for the purpose of preventing access to and use of the Premises and otherwise enforcing the provisions hereof.

{A0084991.3 }                                    6

VI.    Extinguishment:

A.    Grantee's Receipt of Property Right

The Grantor and the Grantee agree that the donation of this Conservation Restriction gives rise to a real property right, immediately vested in the Grantee, with a fair market value that is at least equal to the proportionate value that this Conservation Restriction determined at the time of the gift bears to the value of the unrestricted Premises at that time.

B.    Value of Grantee's Property Right

Such proportionate value of the Grantee's property shall remain constant.

C.    Right of Grantee to Recover Proportional Value at Disposition

If circumstances arise in the future such as render the purpose of this Conservation Restriction impossible to accomplish, this restriction can only be terminated or extinguished, whether in whole or in part, by a court of competent jurisdiction under applicable law. If any occurrence ever gives rise to extinguishment or other release of the Conservation Restriction under applicable law, then the Grantee, on a subsequent sale, exchange, or involuntary conversion of the Premises, shall be entitled to a portion of the proceeds equal to the proportionate value identified above, subject, however, to any applicable law which expressly provides for a different disposition of proceeds.

D.    Grantor/Grantee Cooperation Regarding Public Action

Whenever all or any part of the Premises or any interest therein is taken by public authority under power of eminent domain or other act of public authority, then the Grantor and the Grantee shall cooperate in recovering the full value of all direct and consequential damages resulting from such action. All related expenses incurred by the Grantor and the Grantee shall first be paid out of any recovered proceeds, and the remaining proceeds shall be distributed between the Grantor and Grantee in shares equal to the proportionate value identified above. If a less than fee interest is taken, the proceeds shall be equitably allocated according to the nature of the interest taken.

E.    Allocation of Expenses upon Disposition

All related expenses incurred by the Grantor and the Grantee shall first be paid out of any recovered proceeds, and the remaining proceeds shall be distributed between the Grantor and the Grantee in shares equal to such proportionate value.

VII.  <u>Assignability:</u>

A.  <u>Running of the Burden with the Premises</u>

The burdens of this Conservation Restriction shall run with the Premises and shall be enforceable against the Grantor and the successors and assigns of the Grantor holding any interest in the Premises.

B.  <u>Execution of Instruments</u>

The Grantee is authorized to record or file any notices or instruments appropriate to assuring the perpetual enforceability of this Conservation Restriction; the Grantor, on behalf of itself and its successors and assigns, appoints the Grantee its attorney-in-fact to execute, acknowledge, and deliver any such instruments on its behalf. Without limiting the foregoing, the Grantor agrees itself to execute any such instruments upon request.

C.  <u>Running of the Benefit</u>

The benefits of this Conservation Restriction shall be in gross and shall not be assignable by Grantee, except in the following instances and from time to time:

(1)  As a condition of any assignment, Grantee shall require that the purpose of this Conservation Restriction continues to be carried out,

(2)  The assignee, at the time of the assignment, qualifies under Section 170 (b) of the Internal Revenue Code 1986, as amended, and applicable regulations thereunder, and under Section 32 of Chapter 184 of the General Laws as an eligible donee to receive this Conservation Restriction directly, and

(3)  Any assignment will comply with Article 97 of the Amendments to the Constitution of the Commonwealth of Massachusetts, as applicable.

VIII.  <u>Subsequent Transfers:</u>

The Grantor agrees to incorporate by reference the terms of this Conservation Restriction in any deed or other legal instrument by which Grantor conveys any interest in the Premises, including, without limitation, a leasehold interest and to notify the Grantee within twenty (20) days of such transfer. Failure to do so shall not impair the validity or enforceability of this Conservation Restriction. Any transfer will comply with Article 97 of the Amendments to the Constitution of the Commonwealth of Massachusetts, if applicable.

IX.  <u>Termination of Rights and Obligations:</u>

Grantor shall not be liable for violations of the terms of this Conservation restriction occurring after his or her ownership. Liability for any acts or omissions occurring prior to any transfer and liability for any transfer if in violation of this Conservation Restriction shall survive the transfer. Any new owner shall cooperate in the restoration of the

Premises or removal of violations caused by prior owner(s) and may be held responsible for any continuing violations.

X.    Estoppel Certificates:

Upon request by Grantor, Grantee shall within twenty (20) days execute and deliver to Grantor any document, including an estoppel certificate, which certifies Grantor's compliance with of any obligation of Grantor contained in this Conservation Restriction.

XI.    Effective Date:

This Conservation Restriction shall be effective when it has been executed by the Grantor, accepted by the Grantee, approved by the Selectmen of the Town of Acton the Secretary of Environmental Affairs of the Commonwealth of Massachusetts, and recorded in the Middlesex South District Registry of Deeds.

XII.    Miscellaneous:

A.    Controlling Law

The interpretation and performance of this Conservation Restriction shall be governed by the law of the Commonwealth of Massachusetts.

B.    Liberal Construction

Any general rule of construction to the contrary notwithstanding, this Conservation Restriction shall be liberally construed in favor of the grant to effect the purpose of this Conservation Restriction and the policy and purpose of Sections 31-33 of Chapter 184 of the General Laws of Massachusetts. If any provision in this instrument is found to be ambiguous, an interpretation consistent with the purpose of this Conservation Restriction that would render the provision valid shall be favored over any interpretation that would render it invalid.

C.    Pre-Existing Rights

Approval of this Conservation Restriction pursuant to Section 32 of Chapter 184 of the General Laws of Massachusetts by any municipal officials and by the Secretary of Environmental Affairs is not to be construed as representing the existence or non-existence of any pre-existing rights of the public, if any, in and to the Premises, and any such pre-existing rights of the public, if any, are not affected by the granting of this Conservation Restriction.

D.    Captions

The captions in this instrument have been inserted solely for convenience of reference and are not a part of this instrument and shall have no effect upon construction or interpretation.

E.    Entire Agreement

This instrument sets forth the entire agreement of the parties with respect to the Conservation Restriction and supersedes all prior discussions, negotiations, understandings, or agreements relating to the Conservation Restriction, all of which are merged herein.

F.    Notices

Any notice, demand, request, consent, approval or communication that either party desires or is required to give to the other shall be in writing and either served personally or sent by first class mail, postage pre-paid, addressed as follows:

| | |
|---|---|
| To Grantor: | W.R. GRACE & CO. – CONN. |
| | Attention: Director of Real Estate |
| | 7500 Grace Drive |
| | Columbia, Maryland 21044 |
| | |
| With a copy to: | Louis N. Levine, Esq. |
| | D'Agostine, Levine, Parra & Netburn, P.C. |
| | 268 Main Street |
| | P. O. Box 2223 |
| | Acton, Massachusetts 01720 |
| | |
| To Grantee: | Acton Conservation Commission |
| | Town Hall |
| | 472 Main Street |
| | Acton, Massachusetts 01720 |
| | |
| With a copy to: | Town of Acton |
| | Town Hall |
| | 472 Main Street |
| | Acton, Massachusetts 01720 |

or to such other address as any of the above parties shall designate from time to time by written notice to the other or that is reasonably ascertainable by the parties.

XIII.    Recordation:

The Grantor shall record this instrument in a timely fashion in the Middlesex South District Registry of Deeds and file it with the Land Court Registration Office in the Middlesex South District Registry of Deeds.

XIV.    Amendment:

If circumstances arise under which an amendment to or modification of this Conservation Restriction would be appropriate, Grantor and Grantee may jointly amend this Conservation Restriction; provided that no amendment shall be allowed that will affect the qualification of this Conservation Restriction or the status of the Grantee under any applicable laws, including Section 170(h) of the Internal Revenue Code of 1986, as amended, or Sections 31-33 of Chapter 184 of the General Laws of Massachusetts, and any amendment shall be consistent with the purposes of this Conservation Restriction, shall not affect its perpetual duration, shall be approved by the Secretary of Energy and Environmental Affairs and, if applicable, shall comply with the provisions of Article 97 of the Amendments to the Massachusetts Constitution, and any gifts, grants or funding requirements. Any amendment shall be recorded in the Middlesex South District Registry of Deeds.

IN WITNESS WHEREOF, the said W.R. Grace & Co. – Conn, has caused its corporate seal to be hereto affixed and these presents to be signed, acknowledged and delivered in its name and behalf by _____its _____, duly authorized this _____ day of _____, 2009.

W.R. Grace & Co. – Conn.

By:_____

STATE OF MARYLAND

_____, ss.

On this _____day of _____, 2009, before me, the undersigned notary public, personally appeared _____ (name of document signer), proved to me through satisfactory evidence of identification, which was _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose, as _____ of and on behalf of W.R. Grace & Co. - Conn.

_____

Notary Public:
My Commission expires:

{A0084991.3 }

11

## ACCEPTANCE OF GRANT

The above Conservation Restriction is accepted this _____ day of _____ 2009.

CONSERVATION COMMISSION OF
THE TOWN OF ACTON

_____

_____

_____

_____

_____

## COMMONWEALTH OF MASSACHUSETTS

_____, ss.

On this _____ day of _____, 2009, before me, the undersigned notary public, personally appeared _____
_____, proved to me through satisfactory evidence of identification, which was _____, to be the persons whose names are signed on the preceding or attached document, and acknowledged to me that they signed it voluntarily for its stated purpose, as members of and on behalf of the Conservation Commission of the Town of Acton.

_____
Notary Public:
My Commission expires:

## APPROVAL OF SELECTMEN

We, the undersigned, being a majority of the Selectmen of the Town of Acton, Massachusetts, hereby certify that at a meeting duly held on _____, 2009, the Selectmen voted to approve the foregoing Conservation Restriction to the Town of Acton acting by and through its Conservation Commission pursuant to Section 32 of Chapter 184 and Section 8C of Chapter 40 of the General Laws of Massachusetts.

BOARD OF SELECTMEN

_____
Paulina Knibbe, Chair

_____
Peter Berry, Vice Chair

_____
Lauren Rosenzweig, Clerk

_____
Terra Friedrichs

_____
Michael Gowing

## COMMONWEALTH OF MASSACHUSETTS

_____, ss.

On this ____ day of _____, 2009, before me, the undersigned notary public, personally appeared _____
_____, proved to me through satisfactory evidence of identification, which was _____, to be the persons whose names are signed on the preceding or attached document, and acknowledged to me that they signed it voluntarily for its stated purpose, as members of and on behalf of the Board of Selectmen of the Town of Acton.

_____
Notary Public:
My Commission expires:

## APPROVAL BY SECRETARY OF ENVIRONMENTAL AFFAIRS
## COMMONWEALTH OF MASSACHUSETTS

The undersigned, Secretary of Environmental Affairs of the Commonwealth of Massachusetts, hereby certifies that the foregoing Conservation Restriction to the Town of _____ has been approved in the public interest pursuant to Section 32 of Chapter 184 of the General Laws of Massachusetts.

Date: _____, 2009.


_____
Secretary of Environmental Affairs


## COMMONWEALTH OF MASSACHUSETTS

_____, ss.

On this ____day of _____, 2009, before me, the undersigned notary public, personally appeared _____, proved to me through satisfactory evidence of identification, which was _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose, as the Secretary of Environmental Affairs of the Commonwealth of Massachusetts.


_____
Notary Public:
My Commission expires:

**EXHIBIT D**
**Limited Non-Exclusive Access License**

## GRANT OF LIMITED NON-EXCLUSIVE ACCESS LICENSE

W.R. GRACE & CO. - CONN, having an address at 7500 Grace Drive, Columbia, Maryland (on behalf of itself and as successor to W.R. Grace & Co. and Dewey & Almy Chemical Co.) (hereinafter collectively called the "**Grantor**"), for nominal consideration of less than One Hundred ($100.00) Dollars grant, to the TOWN OF ACTON, Middlesex County, a Municipal Corporation in the Commonwealth of Massachusetts, acting by and through its Conservation Commission, with an address at Town Hall, 472 Main Street, Acton, Massachusetts (hereinafter called the "**Grantee**"),

The non-exclusive, irrevocable and perpetual license to pass and repass over and upon those three certain strips of land (collectively, the "**Access Strip**") in Acton, Middlesex County, Massachusetts, being shown collectively as the "Proposed Right of Way" on the plan entitled, "W.R. Grace & Company, Plan of Land in Acton, MA", dated May 11, 2009, prepared by Precision Land Surveying, Inc., to be recorded herewith ("**Plan**") solely for the purpose of accessing the land (the "**Restricted Land**") that is subject to the Conservation Restriction from the Grantor to the Grantee recorded herewith ("**Conservation Restriction**") for the purpose of enforcing the Conservation Restriction and for no other purpose, provided, however, that:

1. Use of the Access Strip by the Grantee must be upon reasonable notice to Grantor and at reasonable times between one-half hour after sunrise and one-half hour before sunset; and

2. Use of the Access Strip shall be limited to passage by foot.

Notwithstanding the grant of the aforesaid license and without limiting any other rights of the Grantor, the Grantor reserves the right to construct, install, maintain, repair and replace appropriate controls, including fences, gates, walls, boulders and the like throughout the Access Strip for the purpose of maintaining safety, preventing use of the Access Strip by vehicles and enforcing the provisions hereof and the provisions of the Conservation Restriction.

The Grantor expressly reserves the fee to the Access Strip and any and all rights of every name, nature and description in and to the Access Strip for any and all purposes whatsoever which do not prevent or negatively interfere with the rights of Grantee hereunder.

The Grantee acknowledges that the Access Strip is not part of the Conservation Restriction, is not intended to be part of the Conservation Restriction and is expressly excluded from the Conservation Restriction.

By its acceptance of this limited non-exclusive access license, the Grantee does not undertake any liability or obligation relating to the condition of the Access Strip pertaining to compliance with and including, but not limited to, hazardous materials, zoning, environmental laws and regulations, or acts not caused by the Grantee, its agents or assigns. The grant of this limited, non-exclusive access license shall not transfer to Grantee, and

Grantee's acceptance of this limited, non-exclusive access license shall not impose upon Grantee, any duty, responsibility, liability or obligation whatsoever arising out of or relating to (i) any release or threat of release of oil, hazardous materials or hazardous substances to, beneath, at or from the Access Strip or any other land now or formerly owned by the Grantor in the Town of Acton, (ii) the environmental condition of the Access Strip including without limitation any surface waters and ground waters on, beneath at or from the Access Strip, and/or (iii) any non-compliance of the Access Strip with environmental laws, bylaws, rules and regulations, not caused by Grantee or its agents or employees after the recording hereof. All such matters shall remain unto the Grantor as if this limited, non-exclusive access license had not been granted.

For Grantor's title, see deed dated November 19, 1946 and recorded with the Middlesex South District Registry of Deeds in Book 7125, Page 507; Certificate of Title No. 61523 filed with the Middlesex South District Registry of the Land Court in Registration Book 411, Page 1; deed dated June 20, 1964 and recorded in Book 11280, Page 337; and deed dated December 29, 1955 and recorded in Book 8806, Page 421.

IN WITNESS WHEREOF, the said W.R. Grace & Co. – Conn., has caused its corporate seal to be hereto affixed and these presents to be signed, acknowledged and delivered in its name and behalf by _____ its _____, duly authorized this _____ day of _____, 2009

W.R. Grace & Co. – Conn.

By:    _____

STATE OF MARYLAND

_____, ss.

On this ____ day of _____, 2009, before me, the undersigned notary public, personally appeared _____, proved to me through satisfactory evidence of identification, which was _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose as _____ of and on behalf of W.R. Grace & Co. - Conn.

_____
Notary Public:
My Commission expires:

**Exhibit E**
Survey Plan of Conservation Restriction Area and
Limited Non-Exclusive Access License Area

**Exhibit F**
**Agreement for Judgment**

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                          SUPERIOR COURT DEPARTMENT
                                       OF THE TRIAL COURT
                                       CIVIL ACTION NO. 06-1587L

W.R. GRACE & CO. – CONN.,                    )
            Plaintiff,                       )
                                             )
VS.                                          )
                                             )
LAUREN ROSENZWEIG, F. DORÉ HUNTER,           )
ANDREW MAGEE, WALTER FOSTER, and             )
PETER ASHTON, As they are the Members of     )
and Constitute the Sewer Commissioners of the )
Town of Acton, Middlesex County,             )
Massachusetts,                               )
            Defendants.                       )

## AGREEMENT FOR JUDGMENT

Now come the parties in the above entitled action and represent the following:

1.      They have entered into a Settlement Agreement dated September 4, 2009, a copy of which is attached hereto and incorporated herein as Exhibit A ("Settlement Agreement").

2.      The Settlement Agreement resolves all of the disputes in the above action, including *inter alia* providing certain abatements to the Plaintiff of the final sewer betterments which are the subject matter of this action.

THEREFORE, the parties, waiving all rights of appeal, respectfully request this Honorable Court enter Judgment in this action in the form attached hereto as Exhibit B.

Respectfully submitted,                Respectfully submitted,
TOWN OF ACTON                          W.R. GRACE & CO.-CONN.,
Members of the Sewer Commission,       By its Attorneys,
By their Attorneys,                    D'AGOSTINE, LEVINE, PARRA & NETBURN, P.C.
ANDERSON & KREIGER, LLP

By: _____        By: _____
    Stephen D. Anderson, BBO# 018700       Louis N. Levine, BBO# 296880
    Nina L. Pickering Cook, BBO# 886030    F. Alex Parra, BBO# 390315
    One Canal Park, Suite 200              268 Main Street
    Cambridge, MA  02141                   Acton, Massachusetts 01720-6223
    (617) 621-6500                         (978) 263-7777

Dated:  September __, 2009

IA00797442.3 :                         1

## AGREEMENT FOR JUDGMENT

### Exhibit A – Settlement Agreement

**[Intentionally Omitted as Exhibit to Settlement Agreement]**

## AGREEMENT FOR JUDGMENT

### Exhibit B – Proposed Judgment

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                    SUPERIOR COURT DEPARTMENT
                                 OF THE TRIAL COURT
                                 CIVIL ACTION NO. 06-1587L


W.R. GRACE & CO. – CONN.,            )
        Plaintiff,                   )
                                     )
VS.                                  )
                                     )
LAUREN ROSENZWEIG, F. DORÈ           )
HUNTER, ANDREW MAGEE, WALTER         )
FOSTER, and PETER ASHTON, As they    )
are the Members of and Constitute the Sewer  )
Commissioners of the Town of Acton,  )
Middlesex County, Massachusetts,     )
        Defendants.                  )

## JUDGMENT

        This action having come before the Court on the parties' Agreement for Judgment, it is

hereby ordered, adjudged and declared that Judgment shall enter (a) requiring the Sewer

Commissioners of the Town of Acton (the "Town") to issue the following final sewer betterment

abatement; (b) establishing the following final sewer betterment assessment; (c) determining

that the following final sewer betterment assessment is secured as provided below; (d)

liquidating the amount of W.R. Grace & Co, - Conn.'s ("Grace's") prior overpayment; and (e)

establishing the following remaining quarterly payment schedule, all in accordance with the

following Table 1 for the parcels of land listed in Table 2:

**Table 1**

| CRITERION | SBUs | COST/SBU | AMOUNT |
|---|---|---|---|
| Challenged Betterment | 297.50 | $12,311.52 | $3,662,677.19 |
| Abatement | 121.83711 | $12,311.52 | $1,500,000.00 |
| Final Betterment After Abatement | 175.66289 | $12,311.52 | $2,162,677.19 |
| Overpayment (the total amount of any and all prior excess sewer betterment payments, committed interest, interest on late payments paid, and statutory refund interest through 4/30/09) To Be Applied to Future Quarterly Payments Until Exhausted | N/A | N/A | $293,944.16 |
| Quarterly Payments Due for Quarters 34-120 | N/A | N/A | $22,570.35 |
| Quarterly Payments 34-46 (After Application of $22,570.35 of Overpayment Per Quarter) | N/A | N/A | $0.00 |
| Quarterly Payment 47 (After Application of remaining $529.61 of Overpayment Per Quarter) | N/A | N/A | $22,040.74 |
| Quarterly Payments 48-120 | N/A | N/A | $22,570.35 |

Retroactive to April 30, 2009 *nunc pro tunc*, the Town shall abate sewer betterment assessments as set forth in Table 2. The parcels located on the north-side of the MBTA Railroad tracks ("Grace North") shall be considered a single parcel for the purposes of using their allocated SBUS in the future; and the parcels located on the south-side of the MBTA Railroad tracks ("Grace South") shall be considered a single parcel for the purposes of using their allocated SBUs in the future. During Grace's ownership of the parcels comprising Grace North and Grace South, Grace shall pay the applicable quarterly payments. Said payments are secured as follows: the Town holds a duly perfected and validly enforceable first priority lien against (a) Grace North to secure payment of $265,409.56, plus interest and other charges as determined and allowed by Massachusetts law, and (b) Grace South to secure payment of $1,897,267.62, plus interest and other charges as determined and allowed by Massachusetts law. The payment obligations shall run with Grace North and Grace South respectively according to the allocations between Grace North and Grace South as set forth in Table 2, and shall constitute separate liens on each of Grace North and Grace South accordingly.

### Table 2

#### Grace North:

| MAP | LOT | ACRES | SBUs AS ABATED | FINAL SEWER BETTERMENT AFTER ABATEMENT | FRONTAGE |
|-----|-----|-------|----------------|----------------------------------------|----------|
| H3 | 251 | 8.110 | 10.42759 | $128,379.43 | Parker Street |
| I3 | 4 | 9.110 | 11.13024 | $137,030.13 | Parker Street |
| Total Grace North | | | 21.55783 | $265,409.56 | |

#### Grace South:

| MAP | LOT | ACRES | SBUs AS ABATED | FINAL SEWER BETTERMENT AFTER ABATEMENT | FRONTAGE |
|-----|-----|-------|----------------|----------------------------------------|----------|
| I3 | 135 | 2.990 | 1.53521 | $18,900.71 | Independence Road |
| I4 | 5 | 130.000 | 150.46781 | $1,852,487.48 | Independence Road |
| I4 | 6 | 0.283 | 0.36609 | $4,507.09 | Independence Road |
| I4 | 7 | 1.350 | 1.73596 | $21,372.34 | Independence Road |
| Total Grace South | | | 154.10507 | $1,897267.62 | |

A copy of this Judgment shall be recorded in the Middlesex South District Registry of Deeds and filed with the Middlesex South District Registry of the Land Court with respect to the Grace Bettered Property reflected in Table 2 herein, amending and abating to the extent expressly set forth herein any and all prior sewer betterment orders and any and all other documents heretofore filed relative to the aforesaid final sewer betterments.

For the sewer assessment title references see:

- Order for Construction of the Middle Fort Pond Brook Sewer System (as recorded with the Middlesex South District Registry of Deeds at Book 32363, Page 77; Book 32370, Page 507; Book 32657, Page 083; Book 44689, Page 164, and filed with the Middlesex South District Registry of the Land Court as Document No. 1162908);
- Supplemental Order for Construction of Middle Fort Pond Brook Sewer System (as recorded with the Middlesex South District Registry of Deeds at Book 45383, Page 378);
- Order Determining and Certifying Final Sewer Betterment Assessments for the Middle Fort Brook Pond Sewer Betterment Area (for Recorded Land) (as recorded with the Middlesex South District Registry of Deeds at Book 45383, Page 382);

- Order Determining and Certifying Final Sewer Betterment Assessments for the Middle Fort Brook Pond Sewer Betterment Area (for Registered Land) (as filed with the Middlesex South District Registry of the Land Court as Document No. 1377528); and
- Statements to Continue Municipal Liens (as recorded with the Middlesex South District Registry of Deeds at Book 40104, Page 595; Book 40104, Page 596; Book 40104, Page 597; Book 40104, Page 598; Book 48145, Page 576; Book 48145, Page 577; Book 48145, Page 578; Book 48145, Page 579; and filed with the Middlesex South District Registry of the Land Court as Document Nos. 1285187, 1285186, 1423841 and 1423842).

The remaining provisions of the parties' Settlement Agreement shall represent the

enforceable contractual obligation of the parties hereto. The Settlement Agreement shall not be

enforceable by contempt proceedings but shall be enforceable by all other applicable remedies at

law and in equity.

By the Court,

Dated: _____          _____, J.

LA00797652                                        4