# TAB 8

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                              )
                                    )    Chapter 11
W.R. GRACE & CO.,                   )
                                    )    Case No. 01-1139(JFK)
                                    )
                                    )    July 27, 2009
                    Debtors    )

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtors:<br>W.R. Grace & Co. | DAVID M. BERNICK, ESQUIRE<br>THEODORE FREEDMAN, ESQUIRE<br>KIRKLAND & ELLIS, LLP<br>601 Lexington Avenue<br>New York, NY  10022 |
| | JANET S. BAER, ESQUIRE<br>KIRKLAND & ELLIS, LLP<br>200 East Randolph Drive<br>Chicago, IL  60601 |
| For Official Committee<br>of Asbestos Property<br>Damage Claimants: | DANIEL SPEIGHTS, ESQUIRE<br>SPEIGHTS & RUNYAN<br>P.O.  Box 685<br>Hampton, SUPERIOR COURT 29924 |
| For Libby Claimants: | DANIEL C. COHN, ESQUIRE<br>COHN, WHITESELL & GOLDBERG<br>101 Arch Street<br>Boston, MA  02110 |
| Audio Operator: | JUDY FISHER |
| Transcribed by: | DIANA DOMAN TRANSCRIBING<br>P.O. Box 129<br>Gibbsboro, New Jersey  08026-129<br>(856) 435-7172<br>FAX:  (856) 435-7124<br>Email:  Dianadoman@comcast.net |

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

(Appearances continued)

| | |
|---|---|
| For Arrowood Indemnity Co.: | TANCREDI SCHIAVONI, ESQUIRE<br>O'MELVENY & MYERS<br>Times Square Tower<br>7 Times Square<br>New York, NY  10036 |
| For David Austern and PIFCR: | JONATHAN P. GUY, ESQUIRE<br>ROGER FRANKEL, ESQUIRE<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>Washington Harbour<br>3050 K Street, N.W.<br>Washington, D.C. 20007 |
| For Long Acres Master Fund, Long Acre Capital Partners, and BNSF Railway: | JAMES C. CARIGNAN, ESQUIRE<br>PEPPER, HAMILTON, LLP<br>Hercules Plaza<br>Suite 5100<br>1313 Market Street<br>Wilmington, DE  19899 |
| | LINDA J. CASEY, ESQUIRE<br>PEPPER, HAMILTON, LLP<br>3000 Two Logan Square<br>18th and Arch Streets<br>Philadelphia, PA  19103 |
| For Unsecured Creditors Committee: | KENNETH PASQUALE, ESQUIRE<br>STROOCK & STROOCK & LAVAN<br>180 Maiden Lane<br>New York, NY  10038 |
| For Morgan Stanley Senior Funding, Inc.: | CRAIG MARTIN, ESQUIRE<br>EDWARDS, ANGELL, PALMER & DODGE<br>919 North Market Street<br>15th Floor<br>Wilmington, DE 19801 |
| For Libby Claimants: | TOM L. LEWIS, ESQUIRE<br>LEWIS & SLOVAK, P.C.<br>P.O. Box 2325<br>GREAT FALLS, MT 59403 |
| For Unsecured Creditors Committee: | KENNETH PASQUALE, ESQUIRE<br>STROOCK & STROOCK & LAVAN<br>180 Maiden Lane<br>New York, NY  10038 |

1   respect to that argument.  And I suggest to you that it borders

2   on the preposterous on its face.

3          Because I'm not aware, and I suspect you're not

4   aware, of the notion that insurance companies can get --

5   officers could get sued because somebody didn't get to collect

6   on some insurance policy that they made a settlement of.

7          Thank you, Your Honor.

8          THE COURT:  Okay.  BNSF you have counsel, would you

9   like to address this issue, because I'm going to wrap this up.

10         MS. CASEY:  Your Honor, the settlement agreement

11  purports to settle, not just the excess policies that were

12  found, but to wrap in the 1995 agreement.

13         BNSF has filed objections to the plan that the

14  debtors and the parties were aware of before they entered into

15  settlement agreement, that stated that the 1995 settlement

16  agreement did not settle that portion of the endorsement that

17  has been provided to Your Honor that shows the separate policy

18  limits.

19         And that if it had, the Royal is not entitled to a

20  524(g) injunction, because it was not sufficient.  There was

21  not sufficient consideration.

22         In addition, BNSF filed an objection to the plan that

23  says that the 100.0 million dollars that was paid previously,

24  was paid to the pre-petition debtor, it was not paid to the

25  asbestos PI trust and it was not paid in exchange for the

1    release for the future claimants.

2              And, therefore, there's not -- they're not entitled

3    to the 524(g) injunction.

4              THE COURT:  Well that issue, the entitlement to the

5    524(g) injunction, I'm not addressing today.  The settlement

6    commits the debtor to propose that injunction and to do its

7    best efforts to obtain it.

8              And I think Mr. Laughlin correctly stated that the

9    condition is that if the debtor -- the plan proponents can't

10   deliver, then this settlement won't take effect.

11             It's conditioned on that.  I'm not prejudging the

12   524(g) injunction.  But I am looking to the issues concerning

13   the fairness of this settlement.

14             I don't see how BNSF has rights under these insurance

15   policies.  It has a collection action that could be brought

16   against the debtor, and the debtor in turn can then present its

17   claims over to Royal.

18             But BNSF will be treated in the plan by raising their

19   claims against the debtor, to the extent that they exist

20   anyway.  So I can't see how BNSF is in anyway jeopardized by

21   this settlement.

22             MS. CASEY:  Well let's assume that BNSF does not have

23   the rights and the question is, is the settlement fair and

24   equitable as to the parties?

25             There's been a lot -- as to the creditors.  There's

Casey - Argument                                    129

1    been a lot of statements that BNSF and Libby claimants haven't

2    provided any proof.  However, one of the things that I will say

3    is that there's a 1995 agreement that purports to have paid a

4    100.0 million dollars to release the claims.  And the parties

5    have said, there was 10 million dollar limits.

6              Well as Your Honor said, everybody's sort of

7    scratching their head and saying, well where did the 100.0

8    million dollars come from?  There's no evidence to say to this

9    Court that that 100.0 million dollars was in fact a fair and

10   equitable settlement.

11             They're asking to tie that in, to have you say that

12   it was, by saying that by giving the five and a half million,

13   or 5.8 million to the excess policy, and giving the releases

14   for the proof of claim, and getting an indemnification --

15   waiving indemnification claims partially, because the estate --

16   the trust has to use its first 5.8 million dollars to indemnify

17   Royal for any claims made against it, by actually defending the

18   channeling injunction up to the first 5.8 million dollars of

19   stuff against them.

20             So then, but there's no proof here that shows that in

21   1995 a 100.0 million dollars was a fair and equitable

22   settlement for the policies.

23             THE COURT:  Actually, I have the affidavits that

24   indicate that they were fairly negotiated, that that was the

25   was the parties' intent to settle all the policy limits and

Casey - Argument                                    130

1    that in the opinion of the people who entered into the

2    settlement, that it was a good deal.  What I don't have, is any

3    evidence to the contrary.

4            MR. SCHIAVONI:  Your Honor, I also object that this

5    is not an argument that's stated in BNSF's late filed

6    objection.

7            They assert that they have a --

8            THE COURT:  Mr. Schiavoni, if you're speaking, you

9    need to use a microphone.  Go ahead, ma'am.

10            MR. COHN:  Your Honor, the only affidavit that I have

11    seen is the affidavit that says that the 10 million dollar

12    excess policy could be fairly compromised for the 5.8 million

13    dollars.

14            If there are --

15            THE COURT:  I'm sorry, there's -- I'm sure there's a

16    declaration, but I can't tell you who, that raises the question

17    of why Arrowood would have settled for a 100.0 million dollars

18    if it was only the products coverage.

19            There is some -- I apologize, I know I read it.  I

20    just don't know whose declaration or affidavit it is.

21            UNIDENTIFIED SPEAKER:  Arrowood.

22            THE COURT:  Mr. Schiavoni's.

23                        (Pause)

24            MS. CASEY:  I apparently haven't received that, so I

25    haven't been able to look at that.

1            THE COURT:  I can't -- in taking a look at the

2    policy, the 1995 -- what the parties were attempting to settle

3    with the 10 million dollar coverage, it's a little difficult to

4    see how 100.0 million dollars in 1995, we are talking 15 years

5    ago, 100.0 million dollars, I don't know what the present value

6    of that amount would be, but I'm sure that it would be worth

7    significantly more in today's dollars than it was in 1995.

8            It's difficult to see how that isn't a fair

9    settlement on the face of what the parties are propounding the

10    settlement to be on the face of the settlement agreement.

11            MS. CASEY:  Okay.  And understanding, Your Honor,

12    that you're not determining any of the 524(g) issues today --

13            THE COURT:  I'm not.

14            MS. CASEY:  -- then I have nothing further.

15            THE COURT:  Mr. Cohn?

16            MR. COHN:  Your Honor, the rights of the Libby

17    claimants under this coverage -- let me step back.  The -- when

18    you adjudicate matters of property rights, those rights are

19    determined under state law.  That's obviously a fundamental

20    principle that we all work on -- work through here in

21    bankruptcy.

22            And the rights of the Libby claimants with respect to

23    coverage under these policies, and everybody in this room will

24    acknowledge this, are triggered by the injury and the exposure.

25    Otherwise, why would we be talking about --

1      THE COURT:  Well it's triggered by the injury and the

2   exposure in the period of time it's covered by the policy.

3      MR. COHN:  Yes.

4      THE COURT:  It's not that much of a foregone

5   conclusion.  And Mr. Bernick's correct, that was 15 years ago,

6   and Mr. Schiavoni correct that they were on policies that were

7   issued a substantially long period of time ago, I think he said

8   50 years, I -- if you're looking at a 1995 settlement of

9   policies, it was clearly before then.  And I think the policies

10   were for periods that began in the fifties.

11      MR. COHN:  That's correct, Your Honor.

12      THE COURT:  Okay.  So if none of the claims were

13   asserted at the time, and no one is here actually asserting

14   that they had a claim under that policy now, I'm being asked

15   hypothetically to determine that there is such a person.

16      But I don't have any evidence that there is such a

17   person.

18      MR. COHN:  Well, Your Honor, we have certainly

19   alleged that.

20      THE COURT:  But allegations don't suffice to show me

21   why this settlement is not fair and equitable.

22      MR. COHN:  Well, Your Honor, we'd be happy to offer

23   proof of that, because in fact it's --

24      THE COURT:  But the time to do it was with -- in

25   objection to the settlement.

Cohn - Argument                                    133

1       MR. COHN:  Well, Your Honor, in fact, one of the

2  issues that we're going to deal with a little later in this

3  hearing is the whole issue of what --

4       THE COURT:  Only if we get there.

5       MR. COHN:  Is the whole issue of what would be a way,

6  in terms of don't consume horrendous amounts of this Court's

7  time, for us to prove people's rights under these insurance

8  policies.

9       And we've actually been trying and for, you know, to

10  work on that by stipulation with the parties, have not

11  succeeded.  And I'm just telling you that really what you're in

12  effect inviting us to do and requiring us to do, is to reduce

13  claimants to say, you know, put on the stand and say, I was

14  exposed in such and such a year, and I have coverage under this

15  policy.

16       And that's -- we've been trying to avoid doing that,

17  under circumstances where we didn't need to.

18       THE COURT:  But I don't even have an affidavit that

19  says that, as counsel you know that there are those claimants,

20  without identifying who they are.

21       I have no evidence.

22       MR. COHN:  As counsel, we know.  Your Honor, you've

23  been accepting representations from other lawyers here, accept

24  that one.  We have clients who --

25       MR. BERNICK:  Can we make a process suggestion?

Cohn - Argument                                      134

1    I think that going down this road will create a mini coverage

2    issue.

3              THE COURT:  It will.  And I'm not going there.

4              MR. BERNICK:  Right.  We've got a legal issue about

5    whether if Mr. Lockwood -- any others -- if you don't have a

6    claim at the time settlement takes place, then to say that an

7    incipient claim, not even known, not even knowable, means that

8    you can't settle as of a given date, that's a legal -- I'm

9    sorry, that's a legal issue that I think Your Honor could

10   resolve.

11             I think that, with all due respect to Mr. Cohn, if he

12   wants to -- the whole matter's now before Your Honor, it's been

13   argued.  If there's something else that he wants to proffer

14   before the Court, we would object it not being timely, but I

15   think that Your Honor's in a position where we now have taken

16   up the bulk of our time this morning, given -- to good use, but

17   we really have a lot of other matters to take up --

18             THE COURT:  Mr. -- go ahead.

19             MR. COHN:  Your Honor, from a process perspective,

20   Your Honor, I actually -- I agree that what -- that what was

21   argued was an issue of law, and I would ask, for that purpose,

22   that it be -- that you accept the representation that there are

23   such people out there who would qualify, if we can leap the

24   legal hurdles that Mr. Bernick has argued.

25             But to turn around and say that, even though it's

1    really not something that could fairly be disputed, you know,

2    either there are -- there about 950 of these Libby claimants,

3    and they have claims resulting from all different periods of

4    time.

5               And, yes, Your Honor, some of them do go back to the

6    1950's.  And to rule against us on the basis that some -- that

7    these claimants don't exist who would have these rights, Your

8    Honor that --

9               THE COURT:  That's not the basis, Mr. Cohn.  That's

10   not the point.

11              MR. COHN:  Then that's fine, Your Honor, if I'm to be

12   ruled against on an issue of law, I would say, Your Honor, that

13   I don't think anybody has -- well they've come up with theories

14   and they've come up with parades of horrible's about what it is

15   that would happen if you recognized the vested rights argument.

16              The problem is, they have not come up with any law to

17   the contrary.  The law is as it was stated in our brief.  And

18   I'll rest on that, Your Honor.

19              THE COURT:  Okay.

20              MR. COHN:  Although I'm happy to answer any

21   questions.

22              THE COURT:  I don't have any.  I've read the papers,

23   I've read the submissions of the parties.  It seems to me that

24   the original discovery requests were really an effort to figure

25   out an interpretation of the 1995 settlement agreement, on the

1    theory that the settlement agreement is not clear on its face.

2         I can't support that discovery request, because I

3    think the 1995 settlement agreement is clear on its face.  It

4    is an effort by the parties, and it is supported by the

5    declarations and affidavits, and I think deposition testimony,

6    but the -- whatever was submitted, I apologize, I read a lot of

7    stuff in a hurry, and I don't remember item-by-item which came

8    in by way of deposition, or affidavit, or declaration.

9         But there is supporting factual matter on the record

10   with respect to this item that indicates that the intent of the

11   parties was to settle, both the products and the non-products.

12   And I think the agreement itself is clear, so, frankly, I don't

13   even think their intent, at this point, evidence of their

14   intent would come into the record, because it's clear.

15        Tot he extent that the agreement is not clear, there

16   is the supporting evidence that indicates that was the intent

17   of the parties to negotiate a deal.  So I don't see the need

18   for discovery on that issue.  To the extent that this vested

19   rights argument is that the Libby claimants could not -- let me

20   state it a different way.

21        That the debtors could not have settled the policies

22   out from under the Libby claimants, surely they would have to

23   know who the Libby claimants were who were contending that they

24   had vested rights, in order not to make that settlement.

25        I think everybody's argument that indicates that the

Ruling                                                                    137

1    beneficiary of the policy, or the insured, pardon me, under the

2    policy can't settle its own policies, and then figure out how

3    to deal with who would have been the beneficiaries in another

4    context, is not correct.

5         The insurance stands for the insured.  Yes, it is

6    there for beneficiaries in that it gives certain entities a

7    right to pursue insurance coverage, but the insured is the

8    debtor.

9              The debtor's the one who determines whether or not to

10   continue that insurance, not the beneficiaries under that

11   policy.

12             To the extent that there may be vested rights, maybe

13   there are.  I don't have any way of knowing that there are or

14   are not.  But I don't think that's the basis for this

15   determination.

16             I'm not aware of, but for a very, I think, odd on its

17   facts case that was cited, any indication by courts that say

18   that the insured's are not permitted to settle policies with

19   the insurance companies.

20             I'm just simply not aware of it, and I can't

21   understand how that could be the case, after all, they're the

22   contracting parties.

23             So if they want to settle their own liability, it

24   seems to me they've got the right to do that.  Particularly in

25   a bankruptcy case, where the proceeds of those policies are

Ruling                                                                 138

1    property of the estate.

2              To the extent that BNSF is contending that it is an

3    additional insured, I cannot see that it's an additional

4    insured.  Not only does the August 1955 letter indicate to the

5    contrary, but in addition, the policy itself indicates to the

6    contrary.  The additional insurance that the debtor purchased

7    was for the benefit of the debtor, to the extent that it ever

8    faced a contractual obligation to BNSF.

9              And it was not for BNSF's direct coverage.

10             So I don't see the basis for discovery.  I don't see

11   a basis to hold up a determination of the settlement on the

12   merits today.  It appears to me that, on the merits, the debtor

13   has exercised its best business judgment for the benefit of

14   this estate in settling this policy.

15             Part of my analysis is the fact that Arrowood is in

16   runoff, and that is a significant issue for collectibility in

17   the future.

18             These are high -- the two policies specifically at

19   issue are very high excess coverage policies, and it's possible

20   that by the time they were ever accessed, Arrowood would not be

21   around, nor have a successor at that time available to pay the

22   liabilities, in any event.

23             To the extent that the settlement incorporates this

24   release for the 1995 obligations, the record stands for the

25   proposition that there has been adequate consideration and

Ruling                                                        139

1    bargained for value in exchange.

2              It is a package deal.  I'm not in anyway going to try

3    to bifurcate out the components of that package.  So I see no

4    need for discovery.  I see no basis on which to deny the motion

5    to approve the settlement.

6              However, I am not predetermining the 524(g)

7    injunction issues.  So I would like an order that makes it

8    clear that I understand that the obligation is of the plan

9    proponents to pursue 524(g) relief for the Royal parties.  But

10   I am not predetermining that issue.  It's reserved for plan

11   confirmation.

12             Have I covered everything, by way of the objections

13   and motion to approve?

14             MR. COHN:  Yes, Your Honor.  Not exactly to our

15   satisfaction, but you've certainly covered it.

16             THE COURT:  Okay.  I just wanted to make sure I

17   haven't missed anything.  Because it's been a couple of hours

18   worth of argument, and I just wanted to be sure that I covered

19   all the points.

20             MR. BERNICK:  I know Your Honor's going to want to

21   take a break, and we're still with the 1:30 is the --

22             THE COURT:  Yes.

23             MR. BERNICK:  Okay.  So we have if we --

24             THE COURT:  Actually I thought it was 1:15.  But --

25             MR. BERNICK:  We'll do 1:30 --

1              THE COURT:  Yours truly, has to be outside at 1:30.

2     I'll see if I can get that changed to --

3              MR. BERNICK:  That would be terrific.

4              THE COURT:  -- a little later.  But I can't guarantee

5     it.

6              MR. BERNICK:  Well I understand that.  As I look at

7     it, and I don't mean to introduce a whole another subject for

8     discussion before we take the break, but as the debtor, with

9     some degree of at least influence over the order of

10    proceedings, there are four discrete substantive matters that

11    still need to be addressed.

12             There's the -- and the need for having them be

13    addressed, is that they bear directly on the course of

14    discovery going forward, and, therefore, the ability to adhere

15    to the schedule.

16             One is solvency.  Another -- and then there are three

17    Libby issues that are fairly discrete issues, and I think that

18    two of them are already well-known to the Court, because

19    they've been the subject of , (a) prior rulings, or (b) prior

20    commentary by the Court.

21             And the last one is their motion to supplement their

22    objections.  Those four matters, I think, can be heard about 20

23    minutes a pop.  My hope is that we can do that.  That then

24    leaves us with what we were supposed to talk about, which is

25    phase 2 pretrial order.