IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: November 23, 2009 at 10:30 a.m.** |
| | | **Objection Deadline: November 6, 2009 at 4:00 p.m.** |

**MOTION TO APPROVE STIPULATION RESOLVING CLAIMS OF STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION**

The Debtors respectfully move this Court (the "Motion") for the entry of an order (the "Settlement Order") substantially in the form attached hereto as Exhibit A approving the stipulation (the "Stipulation") and the Debtors' entry into the Stipulation, a copy of which is attached hereto as Exhibit B.[2] The Stipulation will resolve all claims that the State of New

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms not defined in this Motion shall have the meaning ascribed to them in, as the case may be, the Stipulation or the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., Et Al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009*, as thereafter amended (the "Plan").

Jersey, Department of Environmental Protection (variously, the "Claimant" or "NJDEP") asserted or otherwise could have asserted in the state court action captioned *New Jersey Department of Environmental Protection v. W. R. Grace & Co., Inc., W. R. Grace & Co.-Conn., "Grace Conn.-Successor", Jay H. Burrill and Robert J. Bettacchi*, Civ. No. L-001473-05 (Super. Ct., Mercer County, N.J.) (the "State Court Action"), commenced by the NJDEP in the Superior Court of New Jersey, Law Division - Mercer County (the "State Court"), the related adversary proceeding captioned *W. R. Grace & Co., et al. v. Campbell, et al. (In re W. R. Grace, et al., Debtor(s))* (Adversary No. 05-52724) (the "Adversary Proceeding") and the Claimant's motion for leave to file a late-filed proof of claim, captioned *Motion of the State of New Jersey, Department of Environmental Protection, For Leave to File a Late Proof of Claim* (docket nos. 15307 and 16443) (the "NJDEP Motion"). The Stipulation will also terminate all the associated—and complex—litigation, including the two appeals now lying before the United States Court of Appeals for the Third Circuit.

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for this Motion are section 105 of the Bankruptcy Code and Fed. R. Bankr. P. 9019.

## Background

### I. The Hamilton Township Site Claims

3. The gravamen of the dispute between the Debtors and the Claimant arises from substantial penalties (the "Hamilton Township Site Claims") that the Claimant has asserted in the State Court Action against two of the Debtors, W. R. Grace & Co., Inc. ("Grace"), W. R. Grace

& Co.-Conn., "Grace Conn.-Successor", a former officer, Robert J. Bettacchi ("Bettacchi") and a former employee, Jay H. Burrill ("Burrill") (collectively, the "State Court Action Defendants").[3] The Claimant also filed the NJDEP Motion in the Bankruptcy Court, seeking leave to file a late-filed proof of claim for the Hamilton Township Site Claims. As discussed below, in the complex procedural history of this matter, appeals of both these matters now lie before the Court of Appeals for the Third Circuit and its mediator, who has strongly suggested that the parties consensually settle this dispute. The Stipulation does just that: it resolves all of the Hamilton Township Site Claims, thereby terminating complex litigation which poses certain risks to the Debtors, their estates and their creditors.

4. For approximately 30 years, until 1994, Grace operated a vermiculite processing plant at the Hamilton Township Site.[4] The plant was an "industrial establishment", as that term is defined under New Jersey's Industrial Site Recovery Act ("ISRA"), N.J.S.A 13:1K-6-13. ISRA imposes a self-executing duty on owners and operators of industrial establishments to disclose hazardous materials at the site upon closing. Id.

5. In 1995, as required by ISRA, Grace submitted a report to the NJDEP regarding the environmental condition of the Hamilton Township Site (the "1995 Grace Report"). The 1995 Grace Report was prepared by an environmental consultant on behalf of Grace in connection with the Hamilton Township Site plant's 1994 closing. The report stated that the vermiculate processed at the plant did not have an asbestos content of more than one percent by

---

3 The Hamilton Township Site Claims arise from certain penalties asserted by the NJDEP in the State Court Action that are related to the asbestos remediation of the Debtors' now-closed plant located in Hamilton Township, New Jersey (the "Hamilton Township Site"). They do not include ongoing non-asbestos remediation efforts at the Site. The asbestos-related remediation claims arising from the Hamilton Township Site are the subject of proofs of claim filed by the Environmental Protection Agency.

4 The plant was opened in 1954 and operated for approximately 40 years. Grace acquired the plant in the early 1960's.

weight, which was a regulatory threshold for asbestos-containing materials. The 1995 Grace Report also stated that any hazardous substances discharged at the plant had been remediated in accordance with applicable code. In August and November 1995, based on the 1995 Grace Report, the NJDEP issued no further action letters for the Hamilton Township Site indicating that there was no need to test the soil and that no further clean-up of the Hamilton Township Site was necessary.

6. In the period from October 2000 to August 2001, the United States Environmental Protection Agency (the "EPA") sampled the soil at Hamilton Township Site and its surroundings, and found concentrations of asbestos. The EPA thereafter remediated the Hamilton Township Site.

7. On April 2, 2001 (the "Petition Date"), the Debtors commenced their respective reorganization cases by filing in the Bankruptcy Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The EPA thereafter timely filed proofs of claim against the Debtors to recover the costs arising from its remediation of the Hamilton Township Site. Those claims are not at issue in this Motion, and are not the subject of or affected by the Stipulation and the proposed Settlement Order.

## II. Procedural History of the Litigation Arising from the Hamilton Township Site Claims

8. On or about June 1, 2005, the Claimant commenced the State Court Action against the State Court Action Defendants, alleging fraud and misrepresentation arising from the submission of the 1995 Grace Report and asserting that the State Court Action Defendants were liable to the State of New Jersey for substantial penalties. Grace's bylaws potentially obligate Grace to defend Bettacchi and Burrill and indemnify them for any losses arising from the State Court Action.

9. On or about September 19, 2005, the Debtors removed the State Court Action to the United States District Court for the District of New Jersey (the "New Jersey District Court") in an action captioned *New Jersey Department of Environmental Protection v. W. R. Grace & Co., et al.* (Civ. Action No. 05-4581) (MLC) (the "New Jersey District Court Action").

10. On or about September 19, 2005, the Debtors commenced the Adversary Proceeding, seeking to enjoin the State Court Action.

11. On or about May 17, 2006, the New Jersey District Court denied without prejudice the Debtors' motion to transfer venue of the New Jersey District Court Action to the United States District Court for the District of Delaware (the "Delaware District Court"), and likewise denied without prejudice the Claimant's motion to remand the New Jersey District Court Action to the State Court. The New Jersey District Court also granted leave to the parties to reinstate the motions if settlement negotiations failed.

12. On or about April 26, 2007, the Claimant filed the NJDEP Motion in this Court seeking leave to file a late-filed proof of claim for the penalties asserted in the State Court Action.

13. On or about August 2, 2007, the Bankruptcy Court entered an *Order Denying Motion of the State of New Jersey, Department of Environmental Protection, For Leave to File a Late Proof of Claim* (docket no. 16467) (the "Late-Filed POC Order"). The Claimant subsequently commenced an appeal of the Late-Filed POC Order (the "Late-Filed POC District Court Appeal") in the Delaware District Court.

14. On or about March 11, 2008, in the Late-Filed POC District Court Appeal, the Delaware District Court issued a Memorandum and Order affirming the Bankruptcy Court's

Late-Filed POC Order. The Claimant thereafter commenced an appeal of that order (the "Late-Filed POC Third Circuit Appeal") in the Court of Appeals for the Third Circuit.

15. On or about April 1, 2008, the Bankruptcy Court entered an order denying the Claimant's motion to dismiss the Adversary Proceeding and issued declaratory and permanent injunctive relief in favor of the Debtors and a preliminary injunction in favor of Burrill and Bettacchi (the "Adversary Proceeding Order"). The Claimant thereafter commenced an appeal of the Adversary Proceeding Order (the "Injunction District Court Appeal") in the Delaware District Court.

16. On or about December 10, 2008, the New Jersey District Court "stayed and administratively terminated" the New Jersey District Court Action, with leave for the parties to reopen the action if appropriate.

17. On or about March 12, 2009, in the Injunction District Court Appeal, the District Court issued a Memorandum and Order denying the Claimant's appeal of the Adversary Proceeding Order on different grounds than those set forth in the Bankruptcy Court's Memorandum Opinion and Adversary Proceeding Order. The Bankruptcy Court had held that the automatic stay barred the State Court Action because the State Court Action was not an exercise of the Claimant's police and regulatory powers, and was therefore not subject to the Bankruptcy Code section 362(b)(4) exception to the automatic stay.

18. The Delaware District Court disagreed with the Bankruptcy Court, holding that the State Court Action was indeed an exercise of the Claimant's police and regulatory powers. But the Delaware District Court did agree on alternative grounds with the result of the Bankruptcy Court's Adversary Proceeding Order when it enjoined the State Court Action pursuant to its authority under Bankruptcy Code section 105(a). The Delaware District Court

also held that Grace had indemnification obligations to Burrill and Bettacchi, and that those indemnification obligations created "related to" jurisdiction over the State Court Action against Burrill and Bettacchi.

19. The Claimant thereafter commenced an appeal of the Delaware District Court's Memorandum and Order in the Injunction District Court Appeal (the "Injunction Third Circuit Appeal") in the Court of Appeals for the Third Circuit.

**Relief Requested**

20. Pursuant to the *Amended Order Authorizing and Approving an Omnibus Procedure for Settling Certain Claims and Causes of Action Brought by or Against The Debtors in a Judicial, Administrative, Arbitral or Other Action or Proceeding* (the "Amended Order") (Dkt. No. 936), the Debtors are authorized to settle claims that exceed $1,000,000 only upon entry of a separate order of the Court upon a motion of the Debtors served upon the necessary parties-in-interest in accordance with the Bankruptcy Code and the Bankruptcy Rules.

21. Therefore, by this Motion, the Debtors respectfully request the Bankruptcy Court enter the proposed Settlement Order substantially in the form attached hereto as Exhibit A, pursuant to section 105 of the Bankruptcy Code, Fed. R. Bankr. P. 9019 and the Amended Order. The proposed Settlement Order, if entered, will among other things:

a. Approve the terms of the Stipulation as being in the best interests of the Debtors, their estates and their creditors;

b. Authorize the Debtors' execution of the Stipulation;

c. Provide for and approve the releases and injunctions set forth in the Stipulation; and

d. Allow the Claimant a General Unsecured Claim (the "Claimant's Allowed Claim"), in the Allowed Amount of $1 million (the "Claimant's Allowed Claim Amount"),

provided, however, that: (i) the Claimant shall be entitled to interest only as set forth in the Stipulation, and shall not be allowed any pre- or post-petition interest on the Claimant's Allowed Claim for any period of time prior to the date on which the Settlement Order becomes final and non-appealable; (ii) interest on the Claimant's Allowed Claim Amount shall accrue at the rate and in the manner provided in the Plan for similarly situated General Unsecured Claims; and (iii) such interest accrual shall commence on the date on which the Settlement Order becomes final and non-appealable and continue until the date on which the Claimant receives payment in satisfaction of the Claimant's Allowed Claim.

## Basis for Relief

### A. Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019(a)

22. Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Fed. R. Bankr. P. 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

23. Courts generally favor minimizing litigation and expediting bankruptcy case administration. See Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., No. 03-10323, 2006 U.S. Dist. WL 2842462, at *3 (D. Del. Oct. 2, 2006). Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). Indeed, compromises are favored in bankruptcy. Martin, 91 F.3d at 393.

24. Before approving a settlement under Fed. R. Bankr. P. 9019, however, a court must determine that the proposed settlement is in the best interests of the debtor's estate. See id.

at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate'."). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

25. The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. at 393; see also In re Nutraquest, Inc., 434 F.3d 639 (3d Cir. 2006).

26. It is also well-settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." Key3Media Group, 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)). Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness." World Health Alternatives, 344 B.R. at 1114 (citations omitted).

**B. Application of Standards for Approval of a Settlement to the Facts of This Case**

27. The Debtors have determined that it is in their best interests and the best interests of their estates and creditors to enter into the Stipulation. The settlement set forth in the Stipulation is fair and reasonable, and is well within the reasonable range of litigation possibilities.

28. The Debtors recognize that they face certain risks in continued Bankruptcy Court and related litigation of the Hamilton Township Site Claims, even though they have been successful to date and are confident of continued success in the two sets of appeals now lying before the Court of Appeals for the Third Circuit. Indeed, the appeal of the Bankruptcy Court's Adversary Proceeding Order presents a particular risk. Although, the District Court affirmed the Bankruptcy Court's Adversary Proceeding Order in the Injunction District Court Appeal, it did so on different grounds, thereby increasing the uncertainty of the outcome of the Injunction Third Circuit Appeal. The Debtors also face the risk of an adverse outcome in the Late-Filed POC Third Circuit Appeal, even though the Delaware District Court affirmed the Bankruptcy Court's Late-Filed POC Order on all fours.

29. Moreover, the two appeals, and the underlying litigation, when taken together, are quite complex because the outcome in and effect of each appeal is so intimately connected to the outcome and effect of the other appeal. And the very outcome of these Chapter 11 cases themselves could be affected if the Claimant were to prevail in either of the two appeals in such a way that the Hamilton Township Site Claims resulted in claims against the Debtors' estates, whether in the form of Allowed General Unsecured Claims or otherwise. As the Bankruptcy Court is aware, the Plan provides that Allowed General Unsecured Claims and applicable interest will be paid in full in cash on or about the Effective Date. Therefore, a significant increase in the anticipated pool of Allowed General Unsecured Claims could endanger Plan confirmation and consummation. Such an outcome could, to say the least, adversely affect the interests of a broad range of creditor groups.

30. Moreover, even if the Claimant was not permitted to late-file a proof of claim for the Hamilton Township Site Claims, the Debtors and their creditors could face essentially the

same risk to Plan confirmation and consummation if the Court of Appeals for the Third Circuit were to vacate the Adversary Proceeding Order and allow the State Court Action to proceed. That risk could arise in one of two ways. First, the State Court Action could result in a judgment against Grace and W. R. Grace & Co.-Conn. Alternatively, even if the State Court Action were not to proceed against Grace and W. R. Grace & Co.-Conn., and proceeded only against Bettacchi and Burrill, the Debtors could still be liable for the Hamilton Township Site Claims if a final judgment were entered against Bettacchi and Burrill. That is because the Debtors' potential indemnification obligations to Bettacchi and Burrill could result in them ultimately being Allowed substantial General Unsecured Claims against the Debtors, just as if the Claimant were to be Allowed a General Unsecured Claim.

31. Finally, even if the Debtors were ultimately to prevail in the two appeals, they nonetheless face in the interim continued uncertainty about the outcome. Moreover, the Debtors would continue to have to pay for what has been to date, very expensive litigation. Continuing to face this uncertainty and these continued costs are not in the Debtors' best interests, nor are they in the best interests of their estates or their myriad creditor constituencies.

32. The Debtors therefore respectfully request the Bankruptcy Court enter the Settlement Order substantially in the form attached hereto as Exhibit A, and approve the Debtors entering the Stipulation.

**No Previous Motion**

33. No previous motion for the relief sought herein has been made to this or any other court.

**No Briefing Schedule**

34. The Debtors respectfully submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil

Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference in Rule 1001-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Rules.

**Waiver of Stay Pending Appeal**

35. To successfully implement the foregoing settlement, the Debtors seek a waiver of the notice requirements under Fed. R. Bankr. P. 6004(a) and the ten-day stay under Fed. R. Bankr. P. 6004(h).

**Notice**

36. Notice of this Motion has been given to: (i) the office of the United States Trustee; (ii) counsel to the DIP Lender; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) counsel to the Claimant. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully seek the entry of the Settlement Order substantially in the form attached hereto as Exhibit A, pursuant to section 105 of the Bankruptcy Code and Fed. R. Bankr. P. 9019: (i) approving the terms of the Stipulation as being in the best interests of the Debtors, their estates and their creditors; (ii) authorizing the Debtors' execution of the Stipulation; (iii) providing for and approving the releases and injunctions set forth in the Stipulation; (iv) Allowing the Claimant a General Unsecured Claim on the terms set forth in the Stipulation; and (v) granting such other relief as may be appropriate.

Dated: October 19, 2009

KIRKLAND & ELLIS LLP
Theodore L. Freedman
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

and

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
Roger J. Higgins
70 W. Madison St., Suite 2100
Chicago, IL 60602-4253
(312) 641-2162

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100
(302) 652-4400
Co-Counsel for the Debtors and Debtors-in-Possession