IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) Chapter 11 <br> ) <br> W. R. GRACE & CO., et al.[1] ) Case No. 01-01139 (JKF) <br> ) (Jointly Administered) <br> Debtors. ) <br> ) Hearing Date: November 23, 2009 at 10:30 a.m. <br> ) Objection Deadline: November 6, 2009 | |

**MOTION OF THE DEBTORS FOR ENTRY OF
AN ORDER APPROVING STIPULATION RESOLVING
PROOF OF CLAIM NO. 13652 OF AUSTIN QUALITY FOODS, INC.**

The Debtors respectfully move this Court (the "Motion") for the entry of an order (substantially in the form attached hereto as Exhibit A) approving the stipulation (the "Stipulation"), a copy of which is attached to the form of order as Exhibit 1, resolving proof of

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

claim no. 13652 of Austin Quality Foods, Inc. ("Austin" or the "Claimant"). In support of this Motion, the Debtors state the following:[2]

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for this Motion are section 105 of the Bankruptcy Code and Fed. R. Bankr. P. 9019.

### Background and Proofs of Claim

3. On or about March 31, 2003, the Claimant filed Proof of Claim number 13652 (the "Proof of Claim") against the Debtors relating to the alleged obligations and liabilities of the Debtors arising from environmental contamination at the property in Cary, North Carolina (the "Site"), which was the subject of a Letter of Understanding and Agreement between Claimant and Debtors, dated June 16, 1999 (the "Letter of Understanding"), relating to remediation of the Site. The Site was formerly used by the Debtors primarily for the formulation and storage of pesticides.

4. The Proof of Claim asserts an unsecured, non-priority claim arising from environmental response costs for a contingent, unliquidated amount.

5. The parties have agreed to resolve the Proof of Claim on the terms and conditions stated in the Stipulation.

---

[2] Capitalized terms not defined in this Motion shall have the meaning ascribed to them in, as the case may be, the Stipulation or the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., Et Al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009*, as thereafter amended (the "Plan").

**Relief Requested**

6. Pursuant to the *Amended Order Authorizing and Approving An Omnibus Procedure For Settling Certain Claims And Causes Of Action Brought By Or Against The Debtors In a Judicial, Administrative, Arbitral Or Other Action Or Proceeding* (the "Amended Order") (Dkt. No. 936), the Debtors are authorized to settle claims that exceed $1,000,000 only upon separate order of the Court upon a motion of the Debtors served upon the necessary parties-in-interest in accordance with the Bankruptcy Code and the Bankruptcy Rules.

7. Therefore, by this Motion, the Debtors respectfully seek the entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to section 105 of the Bankruptcy Code, Fed. R. Bankr. P. 9019 and the Amended Order: (i) approving the Debtors' execution of the Stipulation; and (ii) allowing claim 13652 as an unsecured, prepetition, non-priority claim against the chapter 11 estates of the Debtors in the total amount of $2,558,000, with no prepetition or post-petition interest on claim 13652 with respect to any period prior to the effective date of the Plan.

**Basis for Relief**

**Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019(a)**

8. Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. Pro. 9019(a).

9. Courts generally favor minimizing litigation and expediting the administration of a bankruptcy case. See Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., No. 03-10323, 2006 U.S. Dist. WL 2842462, at *3 (D. Del. Oct. 2,

2006). Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). Indeed, compromises are favored in bankruptcy. Martin, 91 F.3d at 393.

10. Before approving a settlement under Bankruptcy Rule 9019, however, a court must determine that the proposed settlement is in the best interests of the debtor's estate. See id. at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate'."). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

11. The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. at 393; see also In re Nutraquest, Inc., 434 F.3d 639 (3d Cir. 2006).

12. It is also well-settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." Key3Media Group, 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)). Under this test, a proponent must simply demonstrate that a

4

proposed settlement does not fall "below the lowest point in the range of reasonableness." World Health Alternatives, 344 B.R. at 1114 (citations omitted).

### The Court Should Approve the Stipulation

13. The Debtors have determined that entry into the Stipulation is in the best interests of the Debtors and their estates. The Stipulation is fair and reasonable, and is within the reasonable range of litigation possibilities. The Stipulation settles what was an initially proposed $4,815,000 settlement for a sum certain of $2,558,000, capping liability at a far lesser amount than initially proposed and giving the Debtors certainty with respect to liability for ongoing remediation costs at the Site.

14. The Site is situated on approximately one acre in Cary, NC. The Debtors acquired the Site from Maxwell Insecticide, which used the Site for pesticide formulation, in September 1964 and continued to blend and mix pesticides at the Site. In 1970, the Debtors ceased pesticide formulation at the Site and operated a pesticide warehouse at the Site until the Debtors sold the Site in early 1970 to Fairmont Foods, which operated a cookie factory at the Site. In the 1980s, pesticide contamination was identified at the property adjacent to the Site (the "Adjacent Property"), which had been used for a waste drum cleaning business. In 1989, Bahlsen, Inc. ("Bahlsen"), the acquiror of Fairmont Foods and the Adjacent Property, threatened to sue the Debtors for recovery of remediation costs at both the Site and the Adjacent Property. The Debtors acknowledged responsibility for the Site, but not for the Adjacent Property. On July 26, 1995, subsequent to an Administrative Order of Consent for site investigation and remediation between Bahlsen and the North Carolina Department of Environment and Natural Resources (the "NCDENR"), the Debtors received written notice that NCDENR considered Bahlsen and the Debtors to be responsible parties for contamination at the Site, the Adjacent Property and any contiguous contaminated property. On June 16, 1999, pursuant to remedial

5

assessments of both the Site and the adjacent property, the Debtors and Austin Quality Foods, successor to Bahlsen, signed the Letter of Understanding providing for the sharing of future remedial investigation and remedial action for the Site. The Debtors have spent a substantial amount of time and resources reviewing their potential liability with respect to the Site. After this review, the Debtors began negotiations with the Claimant regarding claim 13652.

15. While the Claimant sought a significantly higher settlement amount, including the possibility that the Debtors would be liable for ongoing remediation costs in the event that the costs of remediation prove to be higher than anticipated, the Debtors were able to cap their liability, including future liability, at the sum of $2,558,000. The Claimant initially proposed a settlement of $9.63 million, to be allocated equally between the Claimant and the Debtors. The Debtors disputed the assumptions and methodology employed by the Claimant in calculating the settlement proposal and, subsequent to negotiations, on July 29, 2009, the Claimant and the Debtors agreed to a lump-sum settlement of $5,116,000, of which the Debtors' share is $2,558,000. The Debtors' environmental experts believe that the settlement amount of $2,558,000 with respect to the Debtors' potential liability at the Site is a fair and reasonable settlement amount.

16. In addition, the Debtors successfully negotiated with the Claimant so that the Stipulation does not allow for any prepetition or post-petition interest, unlike other general unsecured claims as currently contemplated in the Debtors' proposed plan of reorganization. The agreement to avoid paying interest on claim 13652 prior to effective date provides an additional significant cost savings to the Debtors' estates.

17. Furthermore, the Stipulation allows the Debtors to avoid potential additional or increased obligations. The Stipulation will preclude any past, present and future claims,

liabilities, and obligations by Claimant, whether to address matters known or unknown, relating to claim 13652 and the Site and will constitute a full and final resolution of the Debtors' liability relating thereto.

18. Finally, approval of the Stipulation benefits the public. Approval of the Stipulation will support the remediation of the Site and provide additional funding for the Claimant to complete remediation of the Site. Clearly, the resolution of environmental claims at the Site and support for the remediation of sites serve the public interest.

19. For the above reasons, the Debtors believe that the Stipulation represents a reasonable settlement of claim 13652 and the Court should approve the Stipulation. The Stipulation is fair and equitable and in the best interests of the Debtors, their estates, and their creditors, and also in the public interest. In addition, the Debtors reasonably believe that the relief requested in this Motion will aid in the expeditious resolution of these Chapter 11 Cases. Accordingly, the Debtors have demonstrated a sound business justification and public interest for the execution and consummation of the Stipulation.

## No Previous Motion

20. No previous motion for the relief sought herein has been made to this or any other court.

## No Briefing Schedule

21. The Debtors respectfully submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference in Rule 1001-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

91100-001\DOCS_DE:154068.1

Delaware, the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Rules.

## Waiver of Stay Pending Appeal

22.  To successfully implement the foregoing settlement, the Debtors seek a waiver of the notice requirements under Fed. R. Bankr. P. 6004(a) and the ten-day stay under Fed. R. Bankr. P. 6004(h).

## Notice

23.  Notice of this Motion has been given to: (i) the office of the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders, (iv) counsel to each of the official committees appointed in these Chapter 11 Cases, (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) counsel to the Claimant. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[Nothing further on this page]**

WHEREFORE, the Debtors respectfully seek the entry of an order, pursuant to section 105 of the Bankruptcy Code and Fed. R. Bankr. P. 9019: (i) approving the Debtors' execution of the Stipulation; (ii) allowing claim 13652 as an unsecured, prepetition, non-priority claim against the chapter 11 estates of the Debtors in the total amount of $2,558,000, with no prepetition or post-petition interest on claim 13652 with respect to any period prior to the effective date of the Plan; and (iii) granting such other relief as may be appropriate.

Dated: October 19, 2009

KIRKLAND & ELLIS LLP
Theodore L. Freedman
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

and

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
Roger J. Higgins
70 W. Madison St., Suite 2100
Chicago, IL 60602-4253
(312) 641-2162

and

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession

9