## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO., et al.** | ) | **Case No. 01-01139 (JKF)** |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | |
| | ) | **Hearing Date: October 26, 2009** |
| | ) | |
| | ) | |

## OPPOSITION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND BANK LENDER GROUP TO DEBTORS' ORAL MOTION TO EXCLUDE TESTIMONY OF ROBERT J. FREZZA

The Official Committee of Unsecured Creditors (the "Committee") of W.R. Grace & Co. *et al.* (the "Debtors" or "Grace"), and certain lenders under the Prepetition Credit Facilities (the "Bank Lender Group"[1]), by their respective undersigned counsel, submit this response to the Debtors' oral motion, made at the confirmation hearing on September 16, 2009, to exclude the testimony of Robert J. Frezza, the Committee and Bank Lender Group's expert witness.

## PRELIMINARY STATEMENT

The liberal admissibility standard of *Daubert* and its progeny do not provide any legal basis for excluding the testimony of Mr. Frezza from the record of these confirmation proceedings. Indeed, for all the arguments raised by Grace during the hearing, the fact is that Mr. Frezza is the only witness who offered an opinion with

---

[1]    The Bank Lender Group includes (i) Anchorage Advisors, LLC; (ii) Babson Capital Management LLC; (iii) Bass Companies; (iv) Caspian Capital Advisors, LLC; (v) Catalyst Investment Management Co., LLC; (vi) Cetus Capital, LLC; (vii) DE Shaw Laminar Portfolios, LLC; (viii) Farallon Capital Management, L.L.C., (ix) Halcyon Asset Management LLC; (x) Intermarket Corp.; (xi) JP Morgan Chase, N.A. Credit Trading Group; (xii) Loeb Partners Corporation; (xiii) MSD Capital, L.P.; (xiv) Normandy Hill Capital, L.P.; (xv) Onex Debt Opportunity Fund Ltd.; (xvi) P. Schoenfeld Asset Management, LLC; (vii) Restoration Capital Management, LLC; (viii) Royal Bank of Scotland, PLC, and (xix) Visium Asset Management LLC.

respect to Grace's solvency – an issue that Grace and its co-Plan Proponents insisted that the Committee and Bank Lender Group address at trial.  Mr. Frezza's conclusion that Grace is solvent under the proposed plan on the contemplated effective date of December 31, 2009 is premised on methodology that is common and accepted in the field, as even Grace's own financial expert conceded.  Of the multiple solvency tests performed by Mr. Frezza, Grace challenges only one, and that only because it incorporates the estimate of Grace's asbestos personal injury liabilities proffered by Grace's expert during the estimation proceedings.   But none of the other analyses performed by Mr. Frezza assume that estimate, and each is instead premised upon data from Grace's financial statements as contained in the disclosure statement and information provided by Grace's financial expert.  Under each of these analyses, Mr. Frezza concludes that Grace is solvent under the terms of the proposed plan of reorganization as of the assumed effective date of that plan, December 31, 2009.  Mr. Frezza's reliance on Grace's data is not a basis for excluding his testimony; to the contrary, as the unrebutted trial testimony demonstrates, it is reasonable and appropriate in the circumstances.

Grace's attack upon Mr. Frezza's qualifications is equally unavailing.  Mr. Frezza is extremely well qualified to render a solvency opinion based upon his 25 years of experience as a Certified Public Accountant and financial advisor, the very professionals that render such opinions in the "marketplace," and upon his personal experience working with the Committee as its financial advisor in these bankruptcy cases.  It is irrelevant that Mr. Frezza does not hold himself out in that marketplace as an expert in valuation, or even in "quantification of liabilities," because neither valuation nor liability quantification was required to render his opinions of Grace's solvency, applying well-accepted methodologies for analyzing a company's solvency.

- 2 -

The issues raised by Grace as grounds for striking Mr. Frezza's testimony are, at best, arguments that go to the weight to be afforded the witness's testimony by this Court, as trier-of-fact. None of the arguments raised orally by Grace (for that is all we have, Grace having determined not to brief these issues), is sufficient to strike Mr. Frezza's testimony. As one court held:

> Accounting is not an exact science. Accountants are therefore required to make judgments about how to communicate financial information. A *Daubert* hearing is not the time to fully test the validity of those assumptions.

*In re Joy Recovery Technology Corp.*, 286 B.R. 54, 70 (N.D. Ill. 2002).

## **RELEVANT LEGAL STANDARDS**

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) the Supreme Court held, in keeping with the "liberal" standard of relevance under the Federal Rules of Evidence, that a trial judge applying Federal Rule of Evidence 702 is charged with a "gatekeeping role" to ensure that scientific expert testimony admitted as evidence at trial is "not only relevant, but reliable." *Id*. at 597, 588-89 ("a rigid 'general acceptance' requirement would be at odds with the 'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to 'opinion' testimony"). Indeed, rather than "wholesale exclusion" of scientific expert testimony "under an uncompromising 'general acceptance' test," "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. at 596. In *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court held that *Daubert* applied to all expert testimony, not merely to scientific expert testimony.

NY 72363832v3

Applying *Daubert*, the Court of Appeals for the Third Circuit explained that "Rule 702 has three major requirements: (1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact…." *Kannankeril v. Terminix Int'l Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (citing *In re Paoli R.R. Yard PCB Litigation ("Paoli")*, 35 F.3d 717, 741-42 (3d Cir. 1994)).

As to the first requirement, the Third Circuit has held that Rule 702 "mandates a policy of liberal admissibility" regarding whether an expert is qualified to render an opinion. *Paoli*, 35 F.3d at 741. Indeed, the Third Circuit has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more generalized qualifications." *Id.*; *see also Kannankeril*, 128 F.3d at 809 ("It is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate").

The *Kannankeril* court succinctly described the second requirement as follows:

> In interpreting this second requirement, we have concluded that 'an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable.' In order for the expert testimony to be 'reliable,' we have required that the testimony be based on the 'methods and procedures of science,' rather than on 'subjective belief or unsupported speculation.' Moreover, Daubert does not set up a test of which opinion has the best foundation, but rather whether any particular opinion is based on valid reasoning and reliable methodology. Admissibility decisions focus on the expert's methods and reasoning; credibility decisions arise after admissibility has been determined.

*Kannankeril,* 128 F.3d at 806 (citations omitted).

Finally, the expert testimony must "fit" and be relevant to the particular issues to aid the jury in its assessment of the case. *See Daubert*, 509 U.S. at 591 ("[e]xpert

testimony which does not relate to any issue in the case is not relevant, and [thus], non-helpful); *Paoli*, 35 F.3d 717 at 742-43 (admissibility depends upon 'the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case"). The requirement of "fit" has thus been construed as a "helpfulness standard." *Daubert*, 509 U.S. at 591-92.

**MR. FREZZA'S EXPERT TESTIMONY IS ADMISSIBLE BECAUSE HE IS QUALIFIED TO RENDER A SOLVENCY OPINION, HIS METHODOLOGY IS RELIABLE AND UTILIZED BY PROFESSIONALS IN HIS FIELD, AND HIS OPINIONS PERTAIN TO THE SOLVENCY ISSUE BEFORE THE COURT**

The Debtors lack any cognizable legal basis under *Daubert* and its progeny for excluding Mr. Frezza's expert testimony that Grace is solvent under the proposed plan of reorganization, as of the contemplated effective date of December 31, 2009.

## I.    Mr. Frezza is Qualified

Mr. Frezza is qualified to render a solvency opinion. He earned an undergraduate degree in business administration in 1983 and is a Certified Public Accountant and financial advisor with Capstone Advisory Group, with some 25 years of professional experience. (Tr. Sep. 16, 2009 at 255:12-257:21).[2] He is a member of the American Institute of Certified Public Accountants ("AICPA") and the American Institute of Restructuring Advisors. (Tr. Sep. 16, 2009 at 255:24-256:2). Mr. Frezza has first-hand experience regarding Grace since 2005, as the financial advisor to the Committee in these bankruptcy cases, with personal involvement in aspects including reviewing Grace's annual business plan, analyzing business acquisitions and divestitures and interfacing with management. (Tr. Sep. 16, 2009 at 258:17-259:2). He was previously qualified as

---

[2]    References to "Tr." are to the official confirmation trial transcript for the date indicated, by page and line numbers. Excerpts from the trial transcript dated September 16, 2009 are annexed to this Opposition collectively as Exhibit A; excerpts from the trial transcript dated October 13, 2009 are annexed to this Opposition collectively as Exhibit B.

an expert to testify at trial in the Gainey Trucking matter concerning whether a debtor was cash flow solvent, applying the company's financial forecasts. (Tr. Sep. 16, 2009 at 259:3-17). More specifically, not rebutted was Mr. Frezza's testimony that professionals with his experience – accountants and financial advisors – render solvency opinions and have done so in cases in which he has been involved. (Tr. Sep. 16, 2009 at 261:25-262:6).

The Debtors' objection to Mr. Frezza's qualifications ignores this testimony and, instead, Grace improperly and disingenuously focuses upon two unrelated and inapplicable matters – valuation and "quantification of liabilities" -- to which Mr. Frezza candidly stated he was not expert. But, Mr. Frezza did neither a valuation nor a quantification of liabilities and had no reason to do so. He performed a *solvency analysis*. This elementary but critical distinction dooms Grace's arguments.

Mr. Frezza conceded that, although he has "done much work in the field of valuation," he does not hold himself out in the marketplace as an expert in *valuation* "because in doing so it would presuppose that you are someone certified by the American Society of Appraisers, for instance, just to be clear." (Tr. Sep. 16, 2009 at 263:4; 10-16; *see also* 266:22-267:24 (Mr. Frezza's description of his professional valuation experience)). However, business valuations are appraisals that are entirely distinct from solvency opinions. Indeed, the American Society of Appraisers ("ASA"), in its Business Valuation Standards, specifically differentiates between *business valuation* opinions and *solvency* opinions:

> It is the opinion of the Business Valuation Committee that the *ASA Business Valuation Standards* and the *Uniform Standards of Professional Appraisal Practice* of the Appraisal Foundation, <u>as they apply to business valuation issues</u>, are intended to apply to appraisals that are formally developed and presented opinions of

- 6 -

value performed as the primary or ultimate objective of an appraisal engagement.  <u>These standards are not intended to apply to</u> financial consultation or advisory services where there is no expression of an opinion value, or the primary objective is not to express an opinion of value, including but not limited to … <u>solvency opinions</u> ….

ASA Business Valuation Standards, Section AO-1, "Financial Consultation and Advisory Services" at 37 (emphasis added; excerpts annexed hereto as Exhibit C; available at http://www.appraisers.org/ProfessionalStandards.aspx).  The AICPA also distinguishes between business valuations (to which the AICPA's Statement on Standards for Valuation Services ("SSVS") No. 1 applies), and solvency opinions, to which it does not. *See* AICPA Memorandum, attached as Exhibit D, at 2 (publicly available at http://fvs.aicpa.org/Resources/Laws+Rules+Standards+and+Other+Related+Guidance/AICPA+Valuation+Standard+and+Implementation+Toolkit/) ("SSVS No. 1 does not apply when the member is retained as a financial advisor in a bankruptcy-related matter to perform the complete solvency analysis and to issue a solvency opinion.  This conclusion is appropriate even if the member performs some valuation-related work as one part of the overall solvency analysis.").

Quite simply, Mr. Frezza need not be a *certified* valuation professional in order to render a solvency opinion.  Mr. Bernick was plainly wrong when he represented otherwise to this Court.  (Tr. Sep. 16, 2009 at 265:14-16; "the fact of the matter is, that in his field that certification's required.").

Grace's other contention is that Mr. Frezza is not an expert in the "quantification" of liabilities.  Mr. Frezza consistently testified at trial that he did not have any need to value or quantify liabilities in performing his solvency analysis because the proper

- 7 -

procedure in evaluating solvency is to apply the company's stated liabilities from the balance sheet.  For example, Mr. Frezza testified as follows:

> In terms of valuing liabilities, a liability from an accounting standpoint is that which is owed, and when we say an expert in valuing liability, it's sort of irrelevant from the perspective of a solvency opinion because it's based on stated liabilities.  Those stated liabilities are the stated liabilities of the company.  So, I honestly don't know what Mr. Bernick meant by an expert in valuing liabilities because –
>
> THE COURT: I'm sorry.  Just so the witness is clear, it was not about valuing liabilities, it was about quantifying liabilities.
>
> A.    Well, if that's the case, quantifying liabilities is a very basic part of financial accounting, quite frankly.

(Tr. Sep. 16, 2009 at 267:13-24).   Further, in responding to questions from the Bank Lender Group's counsel, Mr. Cobb, Mr. Frezza was unequivocal in testifying that in performing the various solvency tests (explained in more detail below), he applied accepted expert methodology, none of which involved valuing or quantifying Grace's liabilities because Grace's stated liabilities were what needed to be applied.  (Tr. Sep. 16, 2009 at 294:9-25; 295:13-296:5); s*ee In re Trans World Airlines, Inc.*, 134 F.3d 188, 196-97 (3d Cir. 1998) (holding that the face value of the company's debt should be considered in a solvency analysis and not the market value of the debt).   Significantly, none of this testimony by Mr. Frezza was in any way rebutted by Grace.

And, of course, because Mr. Frezza is qualified to render a solvency opinion based upon his "specialized knowledge" gained through "experience, training, or education,"[3] as detailed above and in the record, the fact that Mr. Frezza had not, prior to

---

[3]    Fed. R. Evid. 702.  *See McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995)(admitting expert testimony where expert was qualified by practical experience; expert's shortcomings "were properly explored on cross-examination and went to his testimony's weight and credibility – not its admissibility.").

NY 72363832v3

this engagement, issued an expert report on solvency does not provide a basis for the Court to exclude his testimony. If it did, we would never have an expert able to testify who had not previously testified as an expert, which is a ludicrous proposition. *See In re Joy Recovery*, 286 B.R. at 72 (objection that expert accounting testimony should be barred because expert had never testified in a bankruptcy case and had not published was insufficient to bar testimony under *Daubert*). This Court recognized as much during the confirmation trial when it stated that the fact that Mr. Frezza is not a professional expert "has no bearing upon this determination." (Tr. Sep. 16, 2009 at 268:22-269:7-8).

## II.    Mr. Frezza's Methodology is Reliable

There can be no dispute that Mr. Frezza's methodology is reliable and, in fact, the traditional approach used by professionals to perform solvency opinions, in and out of court. Mr. Frezza testified at length that he "performed a number of tests that are commonly done in forming an opinion on solvency." (Tr. Sep. 16, 2009 at 270:17-19). He described the "three most common tests:" the cash flow test, the adequate capital test, and the balance sheet test, and further explained that the balance sheet test includes three methods, specifically the market approach, the income approach and the cost approach. (Tr. Sep. 16, 2009 at 270:20-277:23). Mr. Frezza then testified in detail during his direct testimony that he performed each of the cash flow, adequate capital and balance sheet tests (using the market approach) in concluding that Grace is solvent under the proposed plan as of the presumed effective date, December 31, 2009. (Tr. Sep. 16, 2009 at 277-294).

Not only was this testimony not rebutted by Grace (subject to a single exception discussed below), but Grace's own financial expert, Pamela Zilly of Blackstone, affirmed that the methodology applied by Mr. Frezza is the accepted methodology for performing

a solvency analysis. Ms. Zilly testified that: "I think if you're asking me precisely in terms of a definition or a test, various tests of solvency, there are typically three tests that are put forth; a balance sheet test, an adequate capital test and whether or not the debtor has the ability to pay its debts as they come due." (Tr. Sep. 16, 2009 at 105:5-9; *see also* Tr. Sep. 16, 2009 at 118:20-120:2; AICPA Memorandum, Ex. D at 2 (describing the "three distinct solvency tests" and the "typical bankruptcy-related solvency analysis engagement").

Accordingly, there is absolutely no basis anywhere in the record to conclude that Mr. Frezza applied an improper methodology in rendering his opinion that Grace is solvent. Apparently recognizing that fact, Grace seems to be contending (based upon the one page demonstrative and transcript references distributed by Grace's counsel to the Court and Committee counsel on October 14) that because Mr. Frezza relied upon Grace's own financial and other information, this somehow detracts from the methodology he used. Of course, this would be wrong.

Mr. Frezza is the only witness who offered an opinion with respect to solvency and the only expert witness who performed a solvency analysis. Ms. Zilly, for Grace, did not perform a solvency analysis and did not offer any opinion as to whether Grace was solvent or insolvent. (Tr. Sep. 16, 2009 at 115:13-116:6). This was intended by Ms. Zilly and Grace because the very information available to them, and which formed the basis for other opinions offered at trial by Ms. Zilly, demonstrate Grace's solvency. It was left to Mr. Frezza to take this information and apply it as part of the accepted methodology used to perform a solvency analysis. This is the work that Mr. Frezza performed and that he explained in detail during his testimony before the Court. For example, Mr. Frezza plainly testified that he used Ms. Zilly's feasibility analysis "*to have*

*data available to do my own analysis.*"  (Tr. Sep. 16, 2009 at 299:11; emphasis added).

He testified (as did Ms. Zilly), that in applying the cash flow test of solvency, "the

analyses and the work performed by me and by Ms. Zilly is the identical work that would

be performed if she were to render a solvency opinion.  It's the same thing."  (Tr. Sep.

16, 2009 at 279:17-20; *see also* Tr. Sep. 16, 2009 at 138:20-25; Zilly testimony that there

is no difference between a solvency analysis and feasibility analysis as to whether a

company can pay its debts as they become due).  Mr. Frezza reiterated on redirect that:

> I used the information in the Zilly report to do my own analyses.
> To just simply restate the projections included in her report would
> have just been redundant, but I did analyze those projections.  I did
> consider those projections in the context of Grace's past
> performance that I'm well-aware of due to my participation in the
> case.  So, I did do my own analysis.  It's just – I just refer to the
> Zilly report as relying on that in terms of laying out the
> information in the report.

(Tr. Sep. 16, 2009 at 322:9-17).

Nor is it improper for an expert to rely upon information prepared by others,

including other experts.  This Court acknowledged as much during testimony of Ms. Zilly

concerning her "best interest" analysis (Tr. Oct. 13, 2009 at 118:12-17; "She did what

experts do.  She took the opinion of someone else and used it in her report.  She's

permitted to use types of material that experts in making projections would use and as I

understand it, she took the expert that was provided by counsel for the claimants.").  Ms.

Zilly likewise testified that she "relied on the company's estimate who I believe was in

the best position to know."  (Tr. Oct. 13, 2009 at 165:22-23; *see also* 116:16-19, 167:3-

9).  During Mr. Frezza's testimony, Mr. Bernick conceded that it was "not in dispute"

that, as an accountant and financial advisor, Mr. Frezza could reasonably rely upon the

information provided by Grace in its documents.  (Tr. Sep. 16, 2009 at 322:18-24).  And,

Mr. Frezza testified that he believed it reasonable and appropriate to rely upon another professional's work and that "it wouldn't be appropriate for me to create my own version of Grace's projections without, for instance, access to management or time with the company." (Tr. Sep. 16, 2009 at 330:4-13). Thus, far from being somehow inappropriate or, more aptly, a basis for excluding his testimony, Mr. Frezza's work, relying upon Grace's financial projections and other information, was essential to put the information in the framework of a solvency analysis. *See In re Joy Recovery*, 286 B.R. at 71 (expert accountant's testimony concerning company's solvency was reliable and based on proper foundation of methodology; expert did not construct a balance sheet for the company and instead utilized the company's balance sheet). In sum, Grace's argument apparently is that Mr. Frezza's work should be thrown out because it was based on Grace's own projections set forth in a disclosure statement approved by this Court. This is an untenable proposition.

Grace's emphasis at trial, and apparently in its oral motion to exclude Mr. Frezza's testimony, is that a single one of Mr. Frezza's analyses assumed a specific figure of the value of Grace's personal injury asbestos liabilities – that offered by Grace's own expert, Thomas Florence, during the estimation trial. Significantly, in testifying step-by-step to his cash flow test, adequate capital test and one of his two applications of the market approach to the balance sheet test, Mr. Frezza explained that none of those three tests for solvency were predicated, in any way, on the Florence estimate. (*See* Tr. Sep. 16, 2009 at 321:17-322:6). Mr. Bernick purported to understand this fact: "there's no issue about that." (Tr. Sep. 16, 2009 at 321:20-21).

Yet, most of Mr. Bernick's cross-examination of Mr. Frezza, and seemingly the emphasis of Grace's motion to exclude his testimony, is focused upon Mr. Frezza's

market approach to the balance sheet test that assumed the Florence estimate as a proxy for the value of the unliquidated personal injury asbestos liability.  Grace claims (in its demonstrative sheet supporting its oral motion) that the Florence estimate is a "huge unreliable assumption" that is "not the product of any methodology."  This challenge has absolutely no bearing on the admissibility of Mr. Frezza's testimony concerning the various solvency tests he applied that *did not* assume the Florence estimate.  Grace's attempt to blanket all of Mr. Frezza's testimony under this one argument is not supportable and disingenuous.

Moreover,  Grace's position is the height of hypocrisy.[4]  Grace's expert, Ms. Zilly, did exactly what Mr. Frezza is criticized for doing here when she relied upon Dr. Mark Peterson's personal injury estimate in performing her liquidation analysis.  Dr. Peterson's estimate, like that of Dr. Florence, was never adjudicated, yet Ms. Zilly relied upon his estimate -- to the exclusion of all other estimates that were previously before the Court during the estimation proceedings.  (Tr. Oct. 13, 2009 at 131:12-133:16).  At bottom, the use of these estimates in the experts' respective analyses goes to the weight to be afforded by this Court to the testimony; there is no basis to exclude the testimony based upon the expert's respective choice of a proxy for the value of the asbestos personal injury liabilities.  Indeed, there was much argument on the record, by Mr. Bernick, regarding the appropriateness of the use of a proxy in the context of Ms. Zilly's liquidation analysis.  (*See, e.g.*, Tr. Oct. 13, 2009 at  34:24; "Proxies are absolutely standard fare.").  Simply, there is no basis to exclude Mr. Frezza's testimony and

---

[4]    Adding to the hypocrisy is that Mr. Florence's estimate is the same one that Grace submitted before this Court during the estimation trial.

opinions regarding solvency as a result of a single test he performed applying the Florence estimate.

### III.     Mr. Frezza's Expert Opinions "Fit" the Issue Before the Court

There is no issue at all regarding whether Mr. Frezza's opinions that Grace is solvent "fit" the issues in the case and should be of help to the Court as finder-of-fact. However obvious it may be to everyone in the courtroom that Grace is solvent under the proposed plan as of the contemplated effective date, the issue of Grace's solvency is one that the Plan Proponents demanded the Committee and Bank Lender Group prove as part of their objections to the plan premised in 11 U.S.C. § 1129.  There can be no dispute that solvency is an issue, nor that Mr. Frezza's testimony directly addressed that issue by applying traditional, accepted methods of analyzing a company's solvency, as detailed above.

Similarly, Mr. Frezza was the only witness, expert or otherwise, that provided a solvency analysis for the Court's consideration, to address the very issue that Grace insisted the Committee and Bank Lender Group prove.  He did so, as explained above, by taking the company's financial and related information and putting it into the appropriate construct of a solvency analysis, thereby proving that Grace is solvent using data that Grace itself relies upon, the accuracy of which, of course, cannot be disputed.  The "fit" prong is plainly satisfied here.

### [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

NY 72363832v3

## CONCLUSION

For all the reasons set forth above and at the confirmation trial in these cases, it is respectfully requested that Grace's oral motion to exclude the expert testimony of Robert J. Frezza be denied in its entirety, and for such other and further relief as the Court may deem proper in the circumstances.

Dated:  October 22, 2009          Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP

Lewis Kruger
Kenneth Pasquale
(Members of the Firm)
180 Maiden Lane
New York, New York 10038
Telephone:  (212) 806-5400
Facsimile:  (212) 806-6006

          -and-


*/s/ Michael R. Lastowski*
Michael R. Lastowski, Esq. (DE I.D. No. 3892)
Richard W. Riley, Esq. (DE I.D.. No. 4052)
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone:      (302) 657-4900
Facsimile:      (302) 657-4901
E-mail:  mlastowski@duanemorris.com
          rwriley@duanemorris.com

William S. Katchen, Esquire (Admitted in NJ Only)
DUANE MORRIS LLP
One Riverfront Plaza
Newark, New Jersey 07102
Telephone:      (973) 424-2000
Facsimile:      (973) 424-2001
E-mail:  wskatchen@duanemorris.com

*Counsel for The Official Committee*
*of Unsecured Creditors of W.R. Grace & Co. et al.*

-and-

LANDIS RATH & COBB LLP

*/s/ James S. Green*
Richard Cobb (No. 3157)
James S. Green, Jr. (No. 4406)
919 Market Street, Suite 1800
Post Office Box 2087
Wilmington, Delaware  19899
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450

-and-

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Stephen J. Shimshak
Andrew N. Rosenberg
Margaret A. Phillips
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Facsimile:   (212) 757-3990

*Attorneys for The Bank Lender Group*

NY 72363832v3