# Exhibit B

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE


IN RE:                          .    Case No.  01-1139 (JKF)
                                .
W.R. GRACE & CO.,               .
et al.,                         .    USX Tower - 54th Floor
                                .    600 Grant Street
                                .    Pittsburgh, PA 15219
             Debtors.           .
                                .    October 13, 2009
. . . . . . . . . . . . . . . . .    9:06 a.m.

              TRANSCRIPT OF PLAN CONFIRMATION HEARING
               BEFORE HONORABLE JUDITH K. FITZGERALD
                 UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:           Kirkland & Ellis, LLP
                           By:  DAVID BERNICK, ESQ.
                                JANET BAER, ESQ.
                                LISA G. ESAYIAN, ESQ.
                                ELLI LEIBENSTEIN, ESQ.
                           200 East Randolph Drive
                           Chicago, IL  60601

For the Asbestos           Caplin & Drysdale, Chartered
Creditors Committee:       By:  NATHAN FINCH, ESQ.
                                PETER LOCKWOOD, ESQ.
                           One Thomas Circle, NW
                           Washington, D.C. 20005

For the Future             Orrick, Herrington & Sutcliffe, LLP
Claimants                  By:  ROGER FRANKEL, ESQ.
Representatives:                JONATHAN GUY, ESQ.
                                RICHARD WYRON, ESQ.
                                PERI MAHALEY, ESQ.
                           Washington Harbour
                           3050 K Street, N.W.
                           Washington, D.C.  20007



Audio Operator:            Cathy Younker

Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.
```

___

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail: jjcourt@optonline.net

(609)586-2311      Fax No. (609) 587-3599

1  know exactly how it's going to work.  It's what happened in
2  this case.  It's what happened in other cases, which is that
3  the PI constituency says their claims are worth X, the PD
4  constituency says their claims are worth Y, the debtor, of
5  course, says that they're not worth anything at all, and the
6  Trustee then has to determine, well, how am I going to allocate
7  the resources as between these people with dramatically
8  different kinds of claims.
9             In that context, if the -- and I don't think the fact
10 that it hasn't been done before really goes to the question
11 about whether the analysis is meritorious here.  The -- if, in
12 fact, the PD and PI constituencies were to come to the Trustee
13 and say we've agreed on the allocation, we're not going to
14 quarrel with one another regarding the relative split, the
15 Trustee would say glory hallelujah.
16            And  that is exactly what happened in this case.  The
17 85/15 split, as the Court is aware, and it was described by
18 counsel, was a split that was agreed to between the PI and PD
19 constituency in this Chapter 11 case before there was any, in a
20 sense, claim-by-claim litigation with respect to PD and before
21 there was the estimation of PI.  All that we have done -- all
22 that Ms. Zilly has done here is to look for a proxy -- a proxy
23 for what would happen in Chapter 7, and the proxy exists here.
24 <u>Proxies are absolutely standard fare.</u>  We would not have the
25 ability to actually gather data on Chapter 7s, and to the

1  or estimates have been provided by other witnesses.  So, I'm
2  not clear.  Your question was, does she have any reason to
3  assume that the number of buildings with asbestos product as
4  unknown would be different in a 7 from an 11, I'm not sure how
5  she would have the expertise to know that.  If you want to lay
6  a foundation you may lay a foundation.
7           MR. KOVACICH:  Well, Your Honor, I agree, she didn't
8  have the expertise to suggest how many claims would be filed in
9  the Chapter 7 and she did that.
10          MR. BERNICK:  No, she absolutely didn't.  That's not
11 what the document says.
12          THE COURT:  She did what experts do.  She took the
13 opinion of someone else and used it in a report.  She's
14 permitted to use types of material that experts in making her
15 projections would use and as I understand it, she took the
16 expert that was provided by counsel for the claimants.  And
17 that's what she used in the report.
18          MR. KOVACICH:  Well, she referenced what the property
19 damage claimants said at a hearing without even know what that
20 was really based on.
21          THE COURT:  That goes to the weight of her opinion
22 and those are things you'll be arguing, I understand, but I
23 don't know that she has --
24          MR. KOVACICH:  And that -- I'm sorry, Your Honor.
25          THE COURT:  -- I just don't know that she has the

1 looking at Paragraph 9, which simply says that he doesn't take
2 into account the wide range of estimates.
3 Q    The report is Tab H attach in this binder, I believe. You
4 have that?
5 A    Yes, I have it.
6 Q    If I can find it with all my sticky tabs.
7           THE COURT:  I'm sorry, it's at Tab what?
8           MR. KOVACICH:  Tab H.
9           THE COURT:  H.
10          THE WITNESS:  It's on Page 2.
11          THE COURT:  Thank you.
12 Q    On Page 5 of the report you indicate under Paragraph 14
13 Mr. Frezza's analysis is flawed for the reasons described
14 above, to wit, Mr. Frezza relies on a number that has never
15 been adjudicated, right?
16 A    That's one of three reasons I give.
17 Q    And one of the other reasons was that he ignored the
18 uncertainty associated with the wide range of liability
19 estimates that have been done, right?
20          THE COURT:  Cathy, did we lose the phone?
21          AUDIO OPERATOR:  Yes, Judge, we did.
22          THE COURT:  Can you reconnect, please.
23 A    I'm sorry, yes, that's what it --
24          THE COURT:  We need to wait until we reconnect the
25 phone, Ms. Zilly.

**J&J COURT TRANSCRIBERS, INC.**

Zilly - Cross/Kovacich                                                    132

1  (Pause)
2  THE COURT: Thank you. Would you restate your
3  question since we lost the phone, please.
4  MR. KOVACICH: Yes, Your Honor, thank you.
5  Q   In addition to the fact that Mr. Frezza relied on a number
6  that was never adjudicated you also criticized him for ignoring
7  the substantial uncertainty associated with the amount of
8  liability for asbestos PI claims, right?
9  A   Yes, that's one of the other reasons I criticized his
10 report, which was basically -- I mean, this is a solvency
11 analysis. It purports to say that Grace is solvent using a
12 certain number. And for those --
13 Q   For you to --
14 MR. BERNICK: I'm sorry, could we have the -- go
15 ahead.
16 MR. KOVACICH: I thought she was finished.
17 A   And for those purposes because it is a solvency analysis
18 there were certain criticisms of the use of that number and
19 that was one of them.
20 Q   For your best interest analysis you used only numbers that
21 were provided by Dr. Peterson for the PI liability, right?
22 A   Well, in the -- yes, Dr. Peterson's numbers with respect
23 to -- that I used for purposes of estimating claims in the
24 Chapter 7 reflected Dr. Peterson's estimates as to what he
25 believed the appropriate estimate was of asbestos PI claims.

J&J COURT TRANSCRIBERS, INC.

1  That was an estimate that was put forth for purposes of the
2  estimation hearing in the Chapter 11 through extensive
3  litigation.
4          MR. KOVACICH:  Your Honor, this is not responsive.
5          THE WITNESS:  Excuse me.
6          MR. KOVACICH:  I simply asked if she used only
7  numbers provided by Dr. Peterson.  She answered yes.  That's
8  acceptable.  And now she's giving a speech and it's not
9  responsive to the question.
10         THE COURT:  This can be straightened out if there's
11 some confusion on redirect.  Go ahead, ask your next question.
12 Q    Dr. Peterson's estimated liability much like Dr.
13 Florence's was never adjudicated, is that true?
14         MR. BERNICK:  Objection to the form of the question.
15         THE COURT:  Overruled.
16 A    No, it was not.
17 Q    I just have a couple of quick questions about this Exhibit
18 511-21.  Under your percentage payout on the bottom for the
19 Chapter 7 liquidation, in order to calculate 30 to 36 percent
20 you took the -- for the low end of that range you took the low
21 end of the range for assets and divided that by the high end of
22 the range for liabilities?
23 A    Yes.
24 Q    And then for the high end of the range you took the high
25 end assets and divided that by the low end liabilities, right?

Zilly - Cross/Rosendorf                              165

1  company.  I'm simply asking for the information that was given
2  to her by the company.
3         THE COURT:  All right.  So what is the amount of the
4  line item is the question?
5         MR. ROSENDORF:  Correct.
6         THE COURT:  All right.  The objection is overruled as
7  to that question, too.
8  A    $37.3 million for traditional asbestos property damage
9  claims.
10 Q    But you've not made any independent effort to determine if
11 that number is reasonable, correct?
12 A    I relied on --
13        MR. BERNICK:  Objection to the form of the question.
14        THE COURT:  She made no independent effort to
15 determine if it's reasonable?
16        MR. BERNICK:  Yeah, what's an independent effort to
17 determine whether it's reasonable or not?
18        THE COURT:  You restate the question, Mr. Rosenberg
19 (sic).  I --
20 Q    Did you critically evaluate that number to determine if it
21 was a reasonable projection?
22 A    I relied on the company's estimate who I believe was in
23 the best position to know.
24 Q    So you did not apply any independent expertise or
25 knowledge to determine whether or not that number was a