**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In re:                                    )
W.R. GRACE & CO., et al.,                 )           Chapter 11
                                          )
            Debtors.                      )           Case No. 01-1139 (JKF)
                                          )           (Jointly Administered)
                                          )

### SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of this 14th day of April, 2009, by and between Grace (as defined herein), acting by and through its undersigned representative, and the Claimant (as defined herein), acting by and through its duly authorized representative or counsel.

### DEFINITIONS

As used herein, the following terms shall have the meanings specified below:

   a.   "Bankruptcy" shall mean the jointly administered cases of Grace which, pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), are pending in the Court under the caption *In re W.R. Grace & Co.*, Case No. 01-1139 (JKF).

   b.   "Claimant" shall mean the asbestos property damage claimant identified on Exhibit A hereto, which timely filed a proof of claim in this Bankruptcy.

   c.   "Claimant's Counsel" shall mean Speights & Runyan.

   d.   "Claims" shall mean the asbestos property damage claim filed by the Claimant in this Bankruptcy and identified by the claim number listed in Exhibit A.

   e.   "Court" shall mean the United States Bankruptcy Court for the District of Delaware.

   f.   "Grace" or "Debtors" shall mean each of W. R. Grace & Co., W. R. Grace & Co.-Conn., and all of their affiliates and

subsidiaries that are debtors and debtors in possession in the Bankruptcy, and their successors and successors in interest.

    g. "Parties" shall mean Grace and the Claimant (each, separately, a "Party") as the parties to this Agreement.

    h. "Person" includes, without limitation, any individual, corporation, partnership, limited liability company, governmental authority, firm, association or other entity.

    i. "Settlement Amount" shall mean the amount set forth in Paragraph 1 below, in cash, without any deduction, proration, condition or offset of any nature.

Other terms defined herein shall have the meanings given in this Agreement. Any word or term used in this Agreement that is not defined herein shall have the meaning given to that word or term in the Bankruptcy Code. The rules of construction in Section 102 of the Bankruptcy Code and Rule 9001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") shall apply to the construction of this Agreement.

### RECITALS

WHEREAS, the Claimant filed the Claim in the Bankruptcy asserting that Grace is liable for property damage allegedly caused by Grace's manufacture, use or sale of asbestos containing products;

WHEREAS, Grace denied and continues to deny all allegations of liability, wrongdoing, or violations of law or breaches of duty and has asserted and continues to assert that the Claim has no substance in fact or law and that Grace has meritorious defenses to the Claim;

WHEREAS, Grace has agreed to enter into this Agreement because it is in the best interest of its chapter 11 estates to avoid further expense, inconvenience and the distraction of expensive, burdensome and protracted litigation over the Claim's merit and value;

WHEREAS, the Claimant and Grace desire to settle and resolve the Claim and have engaged in productive settlement discussions directed towards that end;

WHEREAS, the Claimant and Grace have conducted discovery and investigation into the facts of the Claim;

WHEREAS, Grace has had an opportunity to review, analyze and assess the Claim, and the Claimant has provided Grace with information and documents regarding the Claim;

WHEREAS, the Claimant contends, and Grace denies, that the monetary value of the Claim, separately and/or collectively, far exceeds the Settlement Amount, separately and/or collectively, but Grace acknowledges, nevertheless, that the aggregate allowed amount of the Claim, if liquidated in the Bankruptcy by estimation or adjudication proceedings, could significantly exceed the Settlement Amount; and

WHEREAS, Grace and the Claimant have concluded that a settlement in the amount and on the terms hereinafter set forth is fair, reasonable and adequate, and is in the best interest of the Claimant, Grace and the bankruptcy estates of the Debtors.

NOW, THEREFORE, the Parties enter into this Agreement.

### TERMS AND CONDITIONS OF THE SETTLEMENT

1. **Settlement Amount.** Pursuant to this Agreement the settled amount for the Claim shall be as set forth in Exhibit A hereto (the "Settlement Amount"). Subject to the provisions for termination of this Agreement according to its terms, the Settlement Amount represents a liquidation and allowance, pursuant to Section 502 of the Bankruptcy Code, of the Claim for all purposes of the Bankruptcy, including, but not limited to the allowance and valuation of such Claim for purposes of voting on a Chapter 11 plan of reorganization or a plan of liquidation ("Chapter 11 plan"), and receiving payment pursuant to a confirmed Chapter 11 plan. Unless and until this Agreement is terminated, if ever, for purposes of the solicitation of acceptances or rejections on any Chapter 11 plan(s) proposed in the Bankruptcy, to the extent that the Claim settled under this Agreement is eligible to vote on such plan(s) pursuant to Sections 1126 and/or 524(g) of the Bankruptcy Code: (x) each Claim shall constitute a separate allowed claim, and (y) the voting amount of the Claim shall be the Settlement Amount of the Claim as indicated on Exhibit A. This Agreement is without prejudice to the Claimant's rights to argue, assert or seek a determination from the Court that it is entitled to

vote the Claim on any particular Chapter 11 plan(s) proposed in the Bankruptcy.

2. **Treatment and Payment of Settlement Amount.** It is the intention of Grace that the Settlement Amount shall be paid to the Claimant in full, in cash, without any deduction, proration, condition or offset of any nature. Payment of the Settlement Amount shall be made not later than thirty (30) days after the effective date of the Chapter 11 plan ("Effective Date") by one of the following, as may be the case under the Chapter 11 plan: (i) the Debtors or the reorganized Debtors; (ii) an asbestos trust established pursuant to the confirmed plan of reorganization for the benefit and/or treatment of asbestos property damage claims ("PD Trust"); or (iii) any other person or entity established, appointed or designated by or under the Chapter 11 plan to make the payment of allowed asbestos property damage claims ("Paying Agent"). If payment of the Settlement Amount is to be made by a PD Trust or a Paying Agent, such entity shall be required to make timely payment as provided above of any and all funds deposited by or on account of the Debtors with such entity on account of the Settlement Amount, in cash, without any deduction, proration, condition, or offset of any kind, within the time for payment prescribed above. Grace commits to include appropriate provisions to effectuate this paragraph in any Chapter 11 plan that Grace proposes, supports or otherwise endorses in the Bankruptcy. The treatment and payment of the Claim pursuant to this paragraph shall be the "Claimant's Recovery."

3. **Payment to Be Made to Claimant's Counsel on Account of the Claimant's Settlement Amounts.** Any payment made on account of the Claim under a Chapter 11 plan shall be paid in total, without condition, to Claimant's Counsel at its address of record and solely in its capacity as Claimant's Counsel. Claimant's Counsel, in turn, shall be solely responsible to allocate and disburse the amount received between the amount due the Claimant and the amount due Claimant's Counsel.

4. **Pending Proceedings on Claims Objections Against the Claim Deemed Inactive; and Reservation of the Parties' Rights.** All

pending objections asserted by Grace against the Claim in the Thirteenth and Fifteenth Omnibus Objections (Substantive) to Asbestos Property Damage Claims, as filed in the Bankruptcy Case on September 1, 2005, respectively (Dkt. Nos. 9311 and 9315) (the "Claims Objections"), and any responses thereto filed by Claimant in response to the Claims Objections (as well as the right of the Claimant to file responses to the extent that Claimant's time or right to respond has been extended or adjourned) shall be deemed inactive and held in suspense, without prejudice. In the event that this Agreement is terminated according to its terms, the Parties shall have the rights provided in Paragraph 18 of this Agreement with respect to the further prosecution and disposition of the Claim and the Claims Objections.

5. <u>Confidentiality</u>. The terms of this Agreement shall remain confidential as long as practicable and at least until a motion for approval of this Agreement is filed with the Bankruptcy Court. Subject to Paragraph 12 below, Claimant and Debtors shall coordinate on the timing of any application to the Bankruptcy Court. Nothing herein shall preclude either Party from (a) making any public disclosure of the settlement which is determined by such Party in good faith to be required by law; or (b) disclosing the fact of this settlement as distinguished from disclosing the Settlement Amount so long as the terms of the Agreement are kept confidential as provided for in this paragraph.

6. <u>Release by Claimant</u>. Except for the rights, entitlements and obligations created by, arising under or available to Claimant with respect to this Agreement, and subject to the provisions for termination of this Agreement according to its terms: Claimant releases all asbestos-related property damage claims (including the Claim) against the Debtors, and each of them, jointly and severally, whether known or unknown, foreseen or unforeseen, liquidated, unliquidated, fixed, contingent, material or immaterial, disputed or undisputed, suspected or unsuspected, asserted or unasserted, direct or indirect, at law or in equity, that the Claimant now has or hereafter may have against Grace, from the beginning of time, and Claimant understands and acknowledges the significance of such release and waiver and hereby assumes full

responsibility for any injuries, damages or losses the Claimant may incur as a result of its execution of this Agreement.

7. **Release by Grace.** Except for the rights, entitlements and obligations created by, arising under or available to the Debtors with respect to this Agreement, and subject to the provisions for termination of this Agreement according to its terms: The Debtors, and each of them, jointly and severally, release all asbestos-related property damage claims against the Claimant and all claims that could be asserted by or on behalf of the Debtors against the Claimant under Sections 542-553 of the Bankruptcy Code, whether known or unknown, foreseen or unforeseen, liquidated, unliquidated, fixed, contingent, material or immaterial, disputed or undisputed, suspected or unsuspected, asserted or unasserted, direct or indirect, at law or in equity, that the Debtors and their bankruptcy estates now have or hereafter may have against Claimant, from the beginning of time, and the Debtors understand and acknowledge the significance of such release and waiver and hereby assume full responsibility for any injuries, damages or losses the Debtors may incur as a result of their execution of this Agreement.

## REPRESENTATIONS AND WARRANTIES

8. **Good Faith and Fairness.** Each of the Parties represents and warrants that: (a) this Agreement is entered into in good faith; (b) no conflicts of interest exist on its part; and (c) in its opinion, the Settlement Amount represents fair consideration for the claim allowed and released herein.

9. **Voluntary Agreement.** Each of the Parties represents and warrants to each other and acknowledges that it has entered into this Agreement voluntarily: (a) only after first obtaining the legal and professional advice which it believes is appropriate and necessary and determining, in its respective judgment, that the Parties' best interests are served by entering into this Agreement; and (b) without relying on any statements, representations or inducements by each other, except as expressly set forth herein.

10. <u>Authority</u>. Subject to the entry of an order of the Court approving this Agreement ("Approval Order"), each Party represents and warrants that: (a) it has taken all actions and secured the consents of all persons or entities necessary to authorize the execution of this Agreement and related documents and the performance of the acts necessary to fulfill the terms and conditions of this Agreement; and (b) it is fully authorized to enter into and execute this Agreement.

11. <u>No Prior Assignments of Claim or Claims Objections</u>. The Parties represent and warrant to the other and acknowledge that each has not assigned or transferred any claim or right it might have against the other respecting the Claim or the Claims Objections to any third party, except that Claimant has assigned a contingency fee interest in the Claim to Claimant's Counsel, and the Debtors do not and shall not object to such assignment.

### NOTICE AND APPROVAL

12. <u>Prompt Approval</u>. Grace shall promptly seek judicial approval of the settlement embodied in this Agreement by filing the necessary motion with the Court ("Approval Motion").

13. <u>Cooperation by the Parties</u>. Pending the Court's determination of the Approval Motion and consummation of this Agreement, the Parties: (a) shall act in good faith and shall use their reasonable best efforts to seek and support approval of this Agreement, and in conformity with its terms; and (b) shall not act or fail to act in a manner that will deprive the other Party of the benefits and bargains embodied in this Agreement.

### CONTRIBUTION AND INDEMNITY

14. Claimant agrees that it will indemnify Grace and hold it harmless from any asbestos-related property damage claim by a subsequent owner to whom Claimant sells the building identified on Exhibit A relating to or arising out of any building that is now the subject of any Claim or for which any Claimant could have asserted a Claim in

-7-

the Bankruptcy, if the Claimant transfers or conveys said building to any other Person.

### TERMINATION

15. **Termination Generally.** This Agreement shall terminate and shall have no further force and effect if: (a) this Agreement is disapproved in whole or in part by an order entered by the Court or by any appellate court, which disapproval shall constitute termination effective upon the docketing of such order without further notice or action by any Party, unless otherwise mutually agreed to by the Parties; or (b) either Party exercises its right of termination by giving a written notice, which termination shall be effective upon (i) the filing of the notice of termination in the docket of the Bankruptcy, and (ii) receipt of the notice of termination by counsel of record for the other Party.

16. **Claimant's Right to Terminate.** The Claimant, in its sole discretion, may terminate this Agreement in the event that either: (a) the Chapter 11 plan ultimately confirmed in the Bankruptcy does not provide Claimant with the Claimant's Recovery; (b) the Bankruptcy is dismissed or is converted to a case under Chapter 7 of the Bankruptcy Code; (c) the Court approves the solicitation of acceptances of any Chapter 11 plan pursuant to Section 1125 of the Bankruptcy Code where (i) such plan does not provide Claimant with the Claimant's Recovery, or (ii) the Claimant reasonably concludes that such plan will not provide Claimant with the Claimant's Recovery; or (d) Grace breaches this Agreement.

17. **Grace's Right to Terminate.** Grace, in its sole discretion, may terminate this Agreement in the event that: (a) the Chapter 11 plan ultimately confirmed in the Bankruptcy: (i) is not proposed, supported or otherwise endorsed by Grace, and (ii) provides Claimant with treatment of its Claim that is materially more favorable than the Claimant's Recovery under this Agreement; or (b) the Court approves the solicitation of acceptances of any Chapter 11 plan pursuant to Section 1125 of the Bankruptcy Code where: (i) Grace formally opposes or files an objection

to confirmation of such plan, *and* (ii) Grace reasonably concludes that such plan will provide Claimant with treatment of its Claim that is materially more favorable than the Claimant's Recovery under this Agreement; or (c) Claimant breaches this Agreement.

18. *Effect of Termination, and Parties' Rights Upon Termination.* If this Agreement is terminated according to its terms: (a) this Agreement thereupon shall be null and void and have no further force and effect for any purpose (except as stated herein with respect to the survival of certain terms and rights of the Parties following termination); (b) the Agreement, its contents, and all negotiations and proceedings of any nature connected therewith shall be without prejudice to the rights of the Parties which accrued on or before March 1, 2008; (c) Claimant may take any and all actions in the Bankruptcy to allow and enforce the Claim (including the estimation or adjudication of the Claim in an amount greater than the Settlement Amount), and Grace may renew its prosecution of the Claims Objections (or may prosecute an estimation proceeding respecting the Claim), in each case as if this Agreement never existed; and (d) this Agreement shall not constitute or be admissible as evidence in any respect, in any action or proceeding in the Bankruptcy or in any forum, of, among other things, the allowable amount or of the maximum amount of the Claim. Upon termination of the Agreement, neither Party shall be deemed in any way to have waived, released, compromised, discontinued, dismissed or otherwise settled any claims, rights, entitlements or defenses of any nature relating to the Claim or the Claims Objections as they existed on March 1, 2008. In any further litigation in the Bankruptcy between the Parties relating to the Claim or the Claims Objections, the Parties will confer regarding the necessary pre-trial procedures.

19. *Passage of Prior Deadlines.* In no event shall the passage of any deadlines in the Bankruptcy relating to adjudication of the Claim during the negotiation or pendency of this Agreement or the Approval Motion, or the passage of any such deadlines after entry of the Approval Order and prior to termination of the Agreement, if ever, be deemed or held to prejudice either Party.

20. <u>Survival of Provisions</u>. Paragraphs 5, 18, 19, 22 and 24 shall survive termination of this Agreement.

### MISCELLANEOUS

21. <u>Governing Law</u>. Except to the extent governed by federal bankruptcy law, this Agreement shall be construed in accordance with, and all disputes hereunder shall be governed by, the internal laws of the State of Delaware (without regard to its principles of conflicts of law) regardless of the domicile of any Party, and this Agreement will be deemed for such purposes to have been made, executed, and performed in the State of Delaware. Any disputes, controversies, or claims arising out of this Agreement, including but not limited to, the interpretation and/or enforcement thereof, shall be determined exclusively by the Court, which retains jurisdiction for those purposes. This Agreement shall be construed as if the Parties jointly prepared it, and any uncertainty or ambiguity shall not be interpreted against any one Party.

22. <u>Agreement Not Operative As A Choice of Substantive Law Respecting the Claim</u>. Nothing contained in this Agreement shall affect, constitute a determination or agreement concerning, or operate as a choice of laws or substantive provisions of law, or the application thereof, with respect to the extent, validity or amount of any Claim.

23. <u>Complete Resolution of Disputes</u>. Subject to the provisions for termination of this Agreement according to its terms, each Party represents that: (a) it understands and agrees that this Agreement is a full, final, and complete release solely with respect to the matters released herein; (b) this Agreement may be pleaded as an absolute and final bar to any suit or suits pending or which may hereinafter be filed or prosecuted by any one or more of the Parties or anyone claiming, by, through or under any one or more of the Parties in respect of any of the matters released herein; (c) no recovery on account of the matters released herein may hereafter be had by any of the Parties except to the extent of the rights created by or arising under this Agreement.

### USE OF THIS AGREEMENT

24. <u>Limitations on Use and Effect of this Agreement</u>. Except in such proceedings as may be necessary to effectuate or enforce the provisions of this Agreement, neither this Agreement, the settlement provided for herein (whether or not ultimately consummated or performed), nor any actions taken by either Party pursuant to or in connection with this Agreement, to negotiate, effectuate, consummate or carry out this Agreement, or to prosecute the Approval Motion and obtain entry of the Approval Order, shall be used, construed, offered or received by any person or entity in any action or proceeding in the Bankruptcy or in any forum for any purpose whatsoever, including, but not limited to:

a. in, or in connection with, an estimation proceeding under section 502(c) of the Bankruptcy Code;

b. as, or deemed to be, a presumption, concession or admission concerning, or as evidence of, any point of fact or law, of any alleged fault, wrongdoing or liability whatsoever, or of the truth of any allegations or statements made by the respective Party (including its professionals, experts or consultants) in the Claims Objections filed by the Debtors, any responses filed by the Claimant, or in any other pleadings, papers or documents filed with respect to the Claim, any objections to the Claims, or any other claims asserted against Grace or objections thereto; or

c. as, or deemed to be, a presumption, concession, or admission by Grace, or as evidence, that Grace's products are to be found or have been identified as present in any of the Claimant's buildings or other facilities.

### BINDING EFFECT

25. <u>Agreement Supersedes All Prior Agreement and Understandings; Amendments</u>. This Agreement supersedes all prior agreements or understandings, written or oral, among Grace and the Claimant relating to the Claim, and incorporates the Parties' entire understanding of this transaction. This Agreement may be amended or supplemented only by a written instrument signed by both of the Parties.

26. **Remedies for Breach.** In the event of a breach of this Agreement: (a) occurring after entry of the Approval Order and prior to the Effective Date, the aggrieved Party may terminate this Agreement as provided in Paragraphs 16 or 17 above, as applicable; or (b) occurring after the Effective Date, the sole and exclusive remedy of the Parties shall be to enforce the terms of this Agreement.

27. **Exhibits.** The Exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

28. **Binding Agreement.** This Agreement shall be binding upon and inure to the benefit of each of the Parties, and their respective affiliates, successors, trustees, administrators and assigns, and all other persons acting on behalf of or at the direction or control of a Party, and any Bankruptcy Code trustee that may be appointed for the Debtors under the Bankruptcy Code. To the extent that this Agreement has not been terminated according to its terms as of the Effective Date of the Chapter 11 plan ultimately confirmed in the Bankruptcy, this Agreement shall be binding upon the reorganized Debtors, any PD Trust and any Paying Agent under such plan, and all persons acting on behalf of or at the direction or control of each such entity, on and as of the Effective Date.

29. **No Waiver.** No term or condition of this Agreement shall be deemed to have been waived, nor shall there be an estoppel against the enforcement of any provision of this Agreement, except by a written instrument executed by the Party charged with such waiver or estoppels. No such written waiver shall be deemed a continuing waiver unless specifically stated therein and such waiver shall operate only as to the specific term or condition waived and not for the future or as to any other act than that specifically waived.

30. **Non-Assignability.** Except as provided in Paragraph 11 with respect to the contingency fee interest assigned to Claimant's Counsel, no Party may assign, convey, transfer, delegate or encumber any right, interest, duty or obligation arising hereby or created herein without

the express written prior consent of all the parties hereto, which consent shall not be unreasonably withheld.

31. <u>Condition to Effectiveness of Agreement.</u> The effectiveness of this Agreement is subject to the entry of the Approval Order.

32. <u>No Third Party Beneficiaries.</u> Nothing contained herein shall confer upon or give to any third person or entity other than the Parties hereto and their respective affiliates, successors, trustees, administrators or assigns, any rights or remedies under or by reason of this Agreement. Except as expressly provided in this Agreement, the Parties specifically disavow any intention to create rights in third parties under or in relation to this Agreement.

33. <u>Headings.</u> Headings, captions and titles used in this Agreement are inserted only for convenience and for reference purposes. They are not intended in any way to define, limit, expand, or describe the scope of this Agreement or the intent of any provision.

34. <u>No Effect Upon Certain Rights of Claimants Against Other Parties Liable for the Claims.</u> Nothing in this Agreement shall bar, or shall be deemed or construed to limit in any respect, Claimant's right to seek recovery from any person or entity other than the Debtors who has or may have any legal liability or responsibility with respect to asbestos or asbestos-containing materials contained in or removed from any buildings or premises underlying the Claims, so long as in seeking such recovery Claimant does not trigger or cause any contingent or indemnity claim to be triggered against the Debtors.

MAIN PLAZA, LLC

By: _Christopher P Scott_

Title: _duly authorized_

W.R. GRACE & CO., et al., Debtors and Debtors in Possession

By their counsel: _James [signature]_

APPROVED AS TO FORM:

Speights & Runyan
Counsel to the Claimant

By: _____
Daniel Speights

### EXHIBIT A: CLAIMANT AND CLAIM NUMBERS

| Claim # | Claimant Name | Building Name | Property Address | Allowed Claim Amount |
|---|---|---|---|---|
| 11009 | Main Plaza, LLC | 211 Main Street Building | 211 Main Street San Francisco, CA 94105 | $6,137,362 |