IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| W. R. GRACE & CO., et al., | § | Case No. 01-01139 (JKF) |
| | § | |
| *Debtors.* | § | Jointly Administered |

**POST-TRIAL BRIEF OF THE PROPERTY DAMAGE
FUTURE CLAIMANTS' REPRESENTATIVE**

Pursuant to this Court's Order Establishing Schedule of Post-trial Briefing and Related Matters, Alexander M. Sanders, Jr., Legal Representative for Future Asbestos-Related Property Damage Claimants and Holders of Demands (the "PD FCR"), submits his post-trial brief, and for which would show as follows:

**I.**

**INTRODUCTION**

Future claimants with traditional property damage claims and those with ZAI claims will be very well served if the Plan before this Court is confirmed. As for the future claimants with traditional property damage claims, it is rare for so large an asbestos constituency, with such substantial claims, to virtually "pass-through" a large Chapter 11 case with the only real effect on their rights being a requirement to bring their cases in a federal, rather than state, forum. Indeed, the PD FCR believes that future traditional property damage claimants may indeed be better off now than they would have been had no Chapter 11 case been filed at all. ZAI Claimants are also fortunate to have the benefits of the Plan before the Court. After suffering a near-crippling defeat in the Science Trial, with the future prospects of these claims being highly problematic at best, the ZAI settlement is remarkably generous and will serve to compensate thousands of persons

-1-

who would be unlikely to recover anything at all outside the confines of the current Plan.

To put the above observations into statutory pidgeon-holes, the PD FCR asserts and believes that: (1) pursuit of Asbestos PD Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with claims and future demands (*see* 11 U.S.C. §524(g)(2)(B)(ii)(III)); (2) it is fair and equitable to have identified each Protected Party as such under the Asbestos PD Channeling Injunction with respect to persons that might subsequently assert future demands, in light of the benefits provided, or to be provided to the PD Trust on behalf of those Protected Parties (*see* 11 U.S.C. §524(g)(4)(B)(ii)); and (3) the Asbestos PD Trust will operate through mechanisms that provide reasonable assurance that the PD Trust will value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner (*see* 11 U.S.C. §524(g)(2)(B)(ii)(V)).

## II.

### PURSUIT OF TRADITIONAL PD DEMANDS AND U.S. ZAI DEMANDS OUTSIDE THE PROCEDURES DESCRIBED BY THE PLAN IS LIKELY TO THREATEN THE PLAN'S PURPOSE TO DEAL FAIRLY AND EQUITABLY WITH THESE CLAIMS

It is close to being (if not actually being) a legal axiom in asbestos-driven Chapter 11 cases that a channeling injunction is absolutely essential to a successful reorganization. Courts have learned from past failures that simply sending hundreds of thousands of asbestos claims back to the tort system to be litigated as they were before the filing of the Chapter 11 is doomed to fail. That lesson was learned the hard way in the *Manville* case and in the first *National Gypsum* bankruptcy. Future claimants will not be treated fairly and equitably if there is simply a run on the bank; thus, some mechanisms are needed to dispose of these future claims in an orderly and manageable fashion. The Plan does that. Indeed, the Plan does that in a minimally

invasive way for future traditional PD claimants, and also does so in the more traditional manner for future ZAI Claimants. The proffer of Richard Finke established that "If the Plan is not confirmed, and the Asbestos PD Trust is not established, then...US ZAI PD Claims that were filed by the applicable Bar Date would be subject to allowance or disallowance in the Bankruptcy Court and possibly subject to the December 16, 2006 ZAI Science Opinion, while future US ZAI Claims or Demands, to the extent they are found not to be subject to the US ZAI PD Bar Date, would not be subject to Bankruptcy Court jurisdiction and instead would be resolved in the tort system."[1] In essence, for future ZAI claimants, they would be forced to engage in a race to the courthouse to attempt to secure whatever they can get, without regard to the size of the ultimate liability and thus without regard to whether or not the Reorganized Debtor could pay everyone the same 100% (plus punitive damages, if any) of their judgments over the next several decades.

As for "Future Asbestos PD Claims," absent the Plan, PD Trust Agreement and PD CMO, they "would not be subject to uniform procedures designed to determine whether they have been discharged by the Plan and the Asbestos PD Claims Bar Date," and "litigation concerning such future Asbestos PD Claims would not necessarily be asserted in a Federal District Court and accordingly be subject to the Federal Rules of Civil Procedure and Evidence."[2] These mechanisms are essential to the goal of treating the future claimants fairly and avoiding giving certain future claimants unfair advantages over other future claimants, or even to the extent relevant, over current PD claimants.

---

[1] Finke Proffer at pp. 2-3 (¶10).

[2] Id. at p.5 (¶¶21-22).

Finally, the PD FCR would be remiss if he did not stress that in many ways, a future property damage claimant will be better off under the Plan than if there were never any bankruptcy filing at all, or even if all such claims were passed-through the bankruptcy without being subject to any Plan provisions. While a future claim that is passed-through, or which is made in the hypothetical situation where there had never been a Chapter 11 filing, would certainly be entitled to be paid 100% of a judgment, and those holding such judgments would be judgment-creditors, the claimants would not be as well off as they will be under the Plan. Under the Plan, not only will they be entitled to be paid 100% of their allowed claims, but they will thereafter be quasi-*secured* creditors, given the combination of the Debtors' obligation to pay, the guaranty of those payments, and most importantly, the Stock Issuance Agreement which provides the security of 50.1% of the Reorganized Debtors' stock in the event of a payment default. By virtue of payment being more certain under the Plan than had there been no Plan at all, the future claimants are better off.

### III.

**IDENTIFYING EACH OF THE ENTITIES IN THE ASBESTOS PD CHANNELING INJUNCTION IS FAIR AND EQUITABLE, WITH RESPECT TO THE PARTIES THAT MIGHT SUBSEQUENTLY ASSERT DEMANDS, IN LIGHT OF THE BENEFITS TO BE PROVIDED TO THE ASBESTOS PD TRUST ON BEHALF OF SUCH ENTITIES**

Section 524(g) requires that identifying each debtor and each third party as a protected party under the Asbestos PD Channeling Injunction must be fair and equitable with respect to the persons that might subsequently assert such demands, in light of the benefits provided, or to be provided to such Trust on behalf of such debtor or such third party. The Plan satisfies this standard.

The PD FCR testified in his proffer that in light of the benefits provided by or on behalf of the Asbestos Protected Parties, protection of those parties under the PD Channeling Injunction is fair. Sanders Proffer at ¶25. Certainly, every party providing funds directly to the PD Trust is entitled to protection of the PD Channeling Injunction, including the Debtors, Sealed Air and Fresenious. Without this protection, there would be no PD Trust and the future claimants would have to engage in a free-for-all to get paid. Even entities which are not providing funds *directly* to the PD Trust, but are providing funds to the *PI Trust* (including the Debtors' on behalf of their non-debtor affiliates and settled insurers, insurers with asbestos insurance settlement agreements, and all of the others who are contributing to the PI Trust corpus or having contributions being made on their behaves), are entitled to protection under the PD Channeling Injunction. Absent the injunction, PD claims could be made against the Protected Parties in an unsupervised fashion outside the confines of the Plan and the PD CMO, and those Protected Parties would be able to assert indemnification claims against the Debtors, and such claims or the outcomes of such claims might even result in breaches of agreements pursuant to which the PI Trust would be receiving funds from those Protected Parties. Even absent the Intercreditor Agreement, which binds the fortunes of the two trusts together in certain circumstances, the *PD* Channeling Injunction is needed not only to make the PD Trust viable, but also is needed to avoid potential significant prejudice to the *PI* Trust and to the overall reorganization.

**IV.**

**THE PD TRUST'S OPERATION ASSURES THAT SIMILAR PRESENT AND FUTURE CLAIMS WILL BE TREATED IN SUBSTANTIALLY THE SAME MANNER**

The Asbestos PD Trust must operate through mechanisms that provide reasonable assurance that the trust will value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner. 11 U.S.C. §524(g)(2)(B)(ii)(V). While some might enjoy engaging in the Carrollian mental gymnastics needed to postulate how a Plan that pays everybody 100% of the value of their claims, without delay as those claims are successfully brought, can somehow fail this standard, the PD FCR disagrees[3] and submits that it is self-evident that such a Plan treats everyone equally in any relevant way.

As for the ZAI claimants, the ZAI TDP is structured to provide mechanisms by which all valid current and future claims will be treated and paid on substantially similar terms. Sanders Proffer at ¶23. The ZAI TDP contains all of the standard TDP provisions which provide structural mechanisms to value claims, predict the course of future claims filings, put into place appropriate payment percentages, maximum annual payments, etc. *See* ZAI TDP, Sections 1.1, 2.1, 4.1, 4.2, 4.3 (PP 277.33) (stating and implementing goal of equitable treatment and providing metrics for computation and application of the payment percentage which is designed

---

[3] Sanders Proffer at ¶18; Testimony of Judge Sanders, Transcript (9/17/2009) at 99. *See also* CMO for Class 7A PD Claims, Section II.C.4 (PP 277.25) (stating that the Asbestos PD Trust shall "pay in Cash the Allowed Amount of such Asbestos PD Claim"); Joint Plan, Section 7.3.1 (PP 277.01 REV) (stating that two goals of the Asbestos PD Trust are to pay Asbestos PD and ZAI claims in such a way that provides reasonable assurance that the Trust will value, and be in a position to pay, present claims and future demands that involve similar claims in substantially the same manner).

to achieve similar treatment between present and future claims). As such, the ZAI TDP operates in a way to assure that all ZAI Claimants are treated fairly and in a substantially similar manner.

## V.

## **CONCLUSION**

Confirming the Plan is in the best interests of the future claimants with traditional property damage claims and those with ZAI claims. Future claimants with traditional property damage claims virtually "pass-through" a large Chapter 11 case, and actually have a better chance of recovery than they would have as the result of a pure pass-through. The future ZAI Claimants are also fortunate to have the benefits of the Plan before the Court, since the results of the Science Trial make the future prospects of these claims rather bleak.

Since (1) pursuit of Asbestos PD Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with claims and future demands, (2) the Plan is fair and equitable to have identified each Protected Party as such under the Asbestos PD Channeling Injunction with respect to the persons that might subsequently assert future demands, in light of the benefits provided, or to be provided to the PD Trust on behalf of those Protected Parties, and (3) the Asbestos PD Trust will operate through mechanisms that provide reasonable assurance that the PD Trust will value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner, the Plan should be confirmed. That is the wish of the PD FCR on behalf of all future property damage claimants.

Respectfully Submitted,

_____
Alan B. Rich, Esq.
Texas Bar No. 16842350
1401 Elm Street, Suite 4620
Dallas, Texas  75202
(214) 744-5100
(214) 744-5101 [fax]
arich@alanrichlaw.com

COUNSEL TO ALEXANDER M. SANDERS, JR., LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS-RELATED PROPERTY DAMAGE CLAIMANTS AND HOLDERS OF DEMANDS

## CERTIFICATE OF SERVICE

I certify that on the 2nd day of November, 2009, this document was served by delivery through the ECF system.

_____