IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| W.R. Grace & Co., *et al.* | : | Case No. 01-01139 JKF |
| | : | |
| Debtors. | : | **Docket Reference No. 20872** |

## PHASE II POST-TRIAL BRIEF OF *CREDITORS* ONEBEACON AMERICA INSURANCE COMPANY AND SEATON INSURANCE COMPANY IN OPPOSITION TO CONFIRMATION OF AMENDED JOINT PLAN OF REORGANIZATION

Dated:  November 2, 2009

Warren T. Pratt (4334)
David P. Primack (4449)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street, Suite 1000
Wilmington, DE  19801-1254
Telephone:  302-467-4200

-- and --

Michael F. Brown (*Admitted Pro Hac*)
Jeffrey M. Boerger (*Admitted Pro Hac*)
DRINKER BIDDLE & REATH LLP
One Logan Square
Philadelphia, PA  19103-6996
Telephone:  215-988-2700

Counsel for Creditors
OneBeacon America Insurance
Company and Seaton Insurance Company

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iv

I.    INTRODUCTION ............................................................................................1

II.   THE EVIDENCE OF RECORD ......................................................................3

    A.    The Commercial Union Settlement Agreements ...................................3

        1.    The May 1993 CU Agreement.....................................................3

        2.    The October 1998 CU Agreement ...............................................4

    B.    The Unigard Settlement Agreements.....................................................5

        1.    The August 1992 Unigard Agreement.........................................5

        2.    The May 1995 Unigard Agreement .............................................6

        3.    The March 1997 Unigard Agreement ..........................................6

    C.    Both OneBeacon and Seaton Have Been Targeted By Third Parties
        Claiming Rights to Insurance Coverage Under Various Settled
        Policies That OneBeacon and Seaton Issued to Grace .........................7

        1.    The Kaneb Coverage Claims Against OneBeacon and
            Seaton........................................................................................7

        2.    Other Coverage Claims Against OneBeacon and Seaton ...........9

    D.    The Third-Party Insurance Coverage Claims Against OneBeacon
        and Seaton Give Rise to Their Respective Claims Against Grace-
        Conn And Non-Debtors Fresenius and Sealed Air Under the CU
        Settlement Agreements and Unigard Settlement Agreements...............10

        1.    Kaneb's Otis Pipeline Coverage Claim Against Seaton
            Gives Rise to Seaton's Asserted Claims Against Fresenius
            and Sealed Air Under the March 1997 Unigard Settlement
            Agreement.................................................................................10

        2.    Kaneb's Otis Pipeline Coverage Claim Against OneBeacon
            Gives Rise to OneBeacon's Asserted Contract Claim
            Against Grace-Conn Under the October 1998 CU
            Agreement.................................................................................12

3.      The Scotts "Vendor" Coverage Claims Against OneBeacon and Seaton Give Rise to the Direct Contract Claims By Each of Them Against Grace-Conn and Non-Debtor Fresenius ................................................................................13

E.      Seaton's and OneBeacon's Claims Against Non-Debtors Fresenius and Sealed Air Are Released and Enjoined Under the Plan .................................15

1.      Seaton's Kaneb-Related Claim ................................................................15

(a)      The Implicated Releases ................................................................15

(b)      The Implicated Injunction ................................................................16

2.      OneBeacon's and Seaton's Scotts-Related Claims ....................................17

(a)      The Implicated Releases ................................................................17

(b)      The Implicated Injunction ................................................................17

F.      The Classification and Treatment of OneBeacon's and Seaton's Claims Against Grace-Conn Under the Plan ............................................................18

1.      The Scotts-Related Claims ................................................................18

2.      The Potential BNSF-Related Claims ................................................................19

3.      The Kaneb-Related Claims ................................................................19

III.     ARGUMENT ................................................................................................19

A.      The Plan Proponents Bear the Burden of Establishing That Their Plan Satisfies the Requirements of the Bankruptcy Code .................................19

B.      The Plan Illegally Releases and Enjoins Seaton's Kaneb-Related Claims Asserted Against Non-Debtors Fresenius and Sealed Air .........................20

C.      The Contract Claims of OneBeacon and Seaton Against Non-Debtors Fresenius and Sealed Air Cannot Properly Be Enjoined or Channeled to the Asbestos PI Trust Under Bankruptcy Code § 524(g) ................................................................................................24

D.      The Plan Proponents' Argument That the Plan's Third-Party Releases and Injunctions in Favor of Non-Debtors Fresenius and Sealed Air Are Immune from Judicial Review Under Principles of *Res Judicata* Is Wholly Without Merit ................................................................26

IV.     OTHER ARGUMENTS INCORPORATED BY REFERENCE .....................................31

        A.     The Contract Claims of OneBeacon and Seaton Against the
               Debtors Are Not Properly Classified .....................................................32

               1.     The Contract Claims Asserted by OneBeacon and Seaton
                      Are Not Substantially Similar to the Asbestos-Related Tort
                      Claims that Dominate Class 6 .....................................................32

               2.     The Contract Claims Asserted by OneBeacon and Seaton
                      Are Treated Differently from Other Class 6 Claims..................32

               3.     All the Contract Claims Asserted by OneBeacon and
                      Seaton Should Be Classified as Class 9 General Unsecured
                      Claims Rather than as Class 6 Asbestos PI Claims ...................33

        B.     This Court Lacks Subject Matter Jurisdiction to Enjoin
               OneBeacon's and Seaton's Contract Claims Against Non-Debtors
               Fresenius and Sealed Air .....................................................................33

        C.     The Proposed TAC Members Are Burdened By Irreconcilable
               Conflicts of Interest and Should Not Be Approved By The Court .......33

               1.     The Governance Structure of the Test ........................................33

               2.     The Selection of the TAC Members and Their Dual Role ........34

               3.     The Dual Role of the TAC Members Creates an
                      Irreconcilable Conflict of Interest That Will Permeate All
                      Trust Affairs...............................................................................34

               4.     OneBeacon and Seaton Are Holders of Class 6 Asbestos PI
                      Claims With Standing to Object to the TAC's Conflicts of
                      Interest.........................................................................................35

        D.     The Plan Does Not Comply With § 524(g)'s Requirements ................35

V.      CONCLUSION...............................................................................................35

# TABLE OF AUTHORITIES

## CASES

*In re A.H. Robins Co.*,
   880 F.2d 694 (4th Cir. 1989) ....................................................................................22

*In re Combustion Eng'g, Inc.*,
   391 F.3d 190 (3d Cir. 2004)......................................................................................25

*In re Congoleum Corp.*,
   Bankr. Case No. 03-51524, 2009 Bankr. LEXIS 900 (Bankr. D.N.J.
   Feb. 26, 2009), *aff'd in part, rev'd in part*, 2009 U.S. Dist. LEXIS
   72349 (D. N.J. Aug. 17, 2009)...................................................................................20

*In re Cont'l Airlines*,
   203 F.3d 203 (3d Cir. 2000)................................................................................21, 22

*In re Coram Healthcare Corp.*,
   315 B.R. 321 (Bankr. D. Del. 2004) ....................................................................21, 22

*In re Dow Corning Corp.*,
   280 F.3d 648 (6th Cir. 2002) ....................................................................................23

*In re Drexel Burnham Lambert Group, Inc.*,
   960 F.2d 285 (2d Cir. 1992)................................................................................22, 23

*In re Frascella Enters., Inc.*,
   360 B.R. 435 (Bankr. E.D. Pa. 2007) .......................................................................20

*In re Genesis Health Ventures, Inc.*,
   266 B.R. 591 (Bankr. D. Del. 2001) .............................................................. 19-20, 22

*In re Lernout & Hauspie Speech Prods., N.V.*,
   301 B.R. 651 (Bankr. D. Del. 2003), *aff'd*, 308 B.R. 672 (D. Del.
   2004) .........................................................................................................................19

*Murray v. Hoboken Land & Improvement Co.*,
   59 U.S. (18 How.) 272 (1855) .............................................................................24, 26

*In re Nutraquest, Inc.*,
   434 F.3d 639 (3d Cir. 2006)......................................................................................29

*In re PWS Holding Corp.*,
   228 F.3d 224 (3d Cir. 2000)......................................................................................20

*Travelers Indemnity Co. v. Bailey*,
  129 S.Ct. 2195 (2009) ................................................................................................26

*In re Union Meeting Partners*,
  165 B.R. 553 (Bankr. E.D. Pa. 1994) *aff'd*, 52 F.3d 317 (3d Cir. 1995) ....................19

*United States v. Pepperman*,
  976 F.2d 123 (3d Cir. 1992)........................................................................................21

*In re Zenith Elecs. Corp.*,
  241 B.R. 92 (Bankr. D. Del. 1999) ............................................................................22

## STATUTES

U.S. Const. amend. V...............................................................................................24, 26

11 U.S.C. § 105.............................................................................................................21

11 U.S.C. § 524................................................................................................21, 24, 25

11 U.S.C. § 1129..........................................................................................................29

## I.    <u>INRODUCTION</u>

This brief focuses on the evidence presented by *creditors* OneBeacon America Insurance Company ("OneBeacon") and Seaton Insurance Company ("Seaton") during the Confirmation Hearing.  OneBeacon and Seaton have both asserted claims against the Debtors, as well as claims against non-debtors Fresenius Medical Care Holdings, Inc. f/k/a W. R. Grace & Co. (a New York corporation) ("Fresenius") and Sealed Air Corporation f/k/a W. R. Grace & Co. (a Delaware corporation) ("Sealed Air").

OneBeacon's claims arise out three settlements agreements, dating back to the 1990s, pursuant to which it is undisputed that OneBeacon fully settled <u>all</u> of its coverage obligations under several Grace insurance policies by paying Grace a total sum of $150 million.  In exchange, W.R. Grace & Co. – Conn. ("Grace-Conn"), Fresenius, and Sealed Air agreed to defend and indemnify OneBeacon against, *inter alia*, coverage claims asserted by third parties claiming coverage under the policies that were the subject of the settlement agreements.

Likewise, Seaton's claims arise out of four settlements agreements, also dating back to the 1990s, pursuant to which Seaton settled its coverage obligations under two Grace insurance policies by paying Grace a total sum of $34 million.  In exchange, Grace-Conn and Fresenius agreed to defend and indemnify Seaton against, *inter alia*, certain coverage claims asserted by third parties claiming coverage under the settled policies.  In addition, at the Confirmation Hearing, Seaton established that it has asserted claims against both Fresenius and Sealed Air under another agreement based upon misrepresentations made by them in that agreement.

Furthermore, the claims asserted by OneBeacon and Seaton against the Debtors,

Fresenius, and Sealed Air are partly liquidated and party contingent.  As OneBeacon and Seaton demonstrated at the Confirmation Hearing, certain claims have already been triggered – with OneBeacon and Seaton having already incurred legal fees and costs – by, for example, (i) the coverage claims asserted by Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. (collectively, "Kaneb") against OneBeacon and Seaton and (ii) the coverage claims asserted by The Scotts Company ("Scotts") in its 2004 Adversary Proceeding against OneBeacon and Seaton.

The claims asserted by OneBeacon and Seaton would be adversely and improperly impacted by various Plan features.  Section 8.5 of the Plan provides for an illegal § 105(a) injunction – *i.e.*, the Successor Claims Injunction.  Sections 8.8.7 and 7.13 of the Plan provide for non-consensual third-party releases of non-debtors, most notably Fresenius and Sealed Air.  If approved, these Plan provisions would illegally enjoin and release Seaton's asserted misrepresentation claims against Fresenius and Sealed Air, which claims arise from Kaneb's coverage claims against Seaton.  In addition, the Asbestos PI Channeling Injunction contained in § 8.2 of the Plan goes beyond the permissible scope of Bankruptcy Code § 524(g) insofar as it purports to enjoin the direct contractual indemnity claims that OneBeacon and Seaton have against Fresenius, which arise from Scotts' coverage claims against OneBeacon and Seaton.  In addition, if §§ 8.8.7 and 7.13 of the Plan would operate to release these Scotts-related indemnity claims, then those Plan provisions run afoul of the Third Circuit's *Combustion Eng'g* decision, as they would improperly circumvent the more specific requirements of § 524(g).  These arguments, along with the substantial evidentiary record in support of them, are the primary focus of this brief.

In addition, however, pursuant to the Court's instructions, OneBeacon and Seaton also incorporate by reference additional arguments from their Phase II Pre-Trial Brief, dated July 13, 2009, as well as one argument from the Phase II Post-Trial Brief for the CNA Companies, in lieu of repeating those arguments here.[1]

## II.    THE EVIDENCE OF RECORD

### A.    The Commercial Union Settlement Agreements.

During Phase II of the Confirmation Hearing, OneBeacon – as successor-in-interest to Commercial Union Insurance Company which, in turn, is the successor-in-interest to Employers' Commercial Union Insurance Company of America and Employers' Commercial Union Insurance Company, and American Employers' Insurance Company (collectively, "Commercial Union") – presented the uncontroverted evidence that follows with respect to the terms and current names of the parties to its prepetition Settlement Agreements.

### 1.    The May 1993 CU Agreement.

In May 1993, Commercial Union entered into a settlement agreement with "W. R. Grace & Co." and Grace-Conn  (the "May 1993 CU Agreement").  (Ex. OS-1(Rev)). The company named "W. R. Grace & Co." in May 1993 is now Fresenius, a non-debtor. (Ex. OS-46; Ex. PP 243, PP 009920-21 (¶¶ 12 and 15) and PP 009940-41 (¶¶ 7 and 10)); Ex. PP 277.01(Rev), §§ 1.1(115), 1.1(124), and 1.1(130); Trial Tr. (Sept. 15, 2009), 104-111 (Shelnitz); Ex. PP 507-2; Ex. PP 507-3; Ex. PP 507-4; Ex. PP 507-5; Ex. PP 507-

---

[1] The Plan Proponents contend that Seaton has residual asbestos-related policy obligations to the Debtors under Unigard Policy No. 1-2517.  (Ex. PP 277.05(Rev), PP 017246; OS-27(Rev), XXX-000713).  Accordingly, in its capacity as an insurer, Seaton also joins in the Phase II Post-Trial Brief of Government Employees Insurance Company and Republic Insurance Company n/k/a Starr Indemnity & Liability Company in Opposition to Confirmation of the Amended Joint Plan of Reorganization.

5(a)).  Pursuant to the May 1993 CU Agreement, Commercial Union agreed to, and did, pay Grace-Conn and Fresenius the aggregate amount of $81,200,000.  (Ex. OS-1(Rev), XXX-001673; Trial Tr. (Sept. 11, 2009), 310-11 (Posner)).  In exchange, Grace-Conn and Fresenius agreed to release Commercial Union with respect to "Products Claims" and "Asbestos-Related Claims" (as defined therein), under the Grace insurance policies listed on Exhibit "A" (the "CU Policies") to the May 1993 CU Agreement.  (Ex. OS-1(Rev), XXX-001675-77 and XXX-001694-95).  Grace-Conn and Fresenius also agreed to defend and indemnify Commercial Union with respect to any subsequent "Products Claims" and "Asbestos-Related Claims" asserted by any third parties.  (Ex. OS-1(Rev), XXX-001677-82).[2]

2.    The October 1998 CU Agreement.

In October 1998, Commercial Union entered into another settlement agreement with "W. R. Grace & Co."  (the "October 1998 CU Agreement").  (Ex. OS-3(Rev)).  The company known as "W. R. Grace & Co." in October 1998 is still called W. R. Grace & Co. today, i.e., the lead Debtor.  (Ex. PP 243, PP 009922 (¶ 19), PP 009942 (¶ 14)).  Pursuant to the October 1998 CU Agreement, Commercial Union agreed to, and did, pay W. R. Grace & Co. the aggregate amount of $57,600,000.  (Ex. OS-3(Rev), XXX-001734; Trial Tr. (Sept. 11, 2009), 317-18 (Posner)).  In exchange, W. R. Grace & Co. agreed to release Commercial Union with respect to all "Claims" (as defined therein), under the CU Policies.  (Ex. OS-3(Rev), XXX-001734-37).  It also agreed to defend and indemnify Commercial Union with respect to any subsequent "Claims" asserted by third

---

[2]  The descriptions herein of the various settlement agreements are not intended to fully describe the breadth of the releases and indemnification provisions set forth therein and should not be construed as limiting the scope of the releases or indemnity provisions.  The actual settlement agreements control.

parties.  (*Id.*, XXX-001738-40).[3]

**B.      The Unigard Settlement Agreements**

Similarly, Seaton – as the successor-in-interest to Unigard Security Insurance

Company, formerly Unigard Mutual Insurance Company – presented the uncontroverted

evidence that follows with respect to the terms and current names of the parties to its

prepetition Settlement Agreements.

1.      The August 1992 Unigard Agreement.

In August 1992, Unigard Security Insurance Company ("Unigard") entered into a

settlement agreement with Grace-Conn  (the "August 1992 Unigard Agreement").  (Ex.

OS-4(Rev)).  Pursuant to the August 1992 Unigard Agreement, Unigard agreed to, and

did, pay Grace-Conn the aggregate amount of $10,000,000.  (*Id.*, XXX-001759-60; Trial

Tr. (Sept. 11, 2009), 318 (Posner)).  In exchange, Grace-Conn agreed to release Unigard

with respect to "Products Claims" (as defined therein), under Unigard Policy No. 1-2517.

(Ex. OS-4(Rev), XXX-001760-61).  It also agreed to indemnify Unigard, and pay its

attorneys' fees and costs, with respect to any subsequent "Products Claims," again as

defined therein, asserted by any third parties relating to Unigard Policy No. 1-2517.  (*Id.*

---

[3] In December 1996, Commercial Union entered into another settlement agreement with Grace-Conn and non-debtors Fresenius and Sealed Air pursuant to which Commercial Union paid them $12 million for a specific environmental coverage site release.  (Ex. OS-2(Rev), XXX-001702-03; Trial Tr. (Sept. 11, 2009), 317 (Posner); Ex. OS-46; Ex. PP 384, 6; Ex. PP 243, PP 009920-22 (¶¶ 12, 15, and 19) and PP 009940-42 (¶¶ 7, 10, and 14); Ex. PP 277.01(Rev), §§ 1.1(115), 1.1(124), 1.1(130), 1.1(92), 1.1(152), and 1.1(192); Trial Tr. (Sept. 15, 2009), 104-114 (Shelnitz); Ex. PP 507-2; Ex. PP 507-3; Ex. PP 507-4; Ex. PP 507-5; Ex. PP 507-5(a); Ex. PP 507-7; Ex. PP 507-8).  In exchange, the Debtors and Sealed Air agreed to defend and indemnify OneBeacon against, *inter alia*, third-party coverage claims related to the site.  (Ex. OS-2(Rev), XXX-001707-14).  Although OneBeacon's indemnity rights against Fresenius and Sealed Air under this agreement would be both enjoined and released under the Plan, OneBeacon's indemnity claims under this agreement are contingent today, unlike the agreements discussed in the main body of this brief, which have been both triggered and liquidated in part by third-party insurance coverage claims already asserted against OneBeacon.

at XXX-001761-63).

    2.    <u>The May 1995 Unigard Agreement</u>.

In May 1995, Unigard entered into another settlement agreement with Grace-Conn and "W.R. Grace & Co." (the "May 1995 Unigard Agreement"). (<u>Ex. OS-5(Rev)</u>). The company then known as "W. R. Grace & Co." is now Fresenius. (<u>Ex. OS-46</u>; <u>Ex. PP 243, PP 009920-21 (¶¶ 12 and 15) and PP 009940-41 (¶¶ 7 and 10)</u>; <u>Ex. PP 277.01(Rev), §§ 1.1(115), 1.1(124), and 1.1(130)</u>; <u>Trial Tr. (Sept. 15, 2009), 104-111 (Shelnitz)</u>; <u>Ex. PP 507-2</u>; <u>Ex. PP 507-3</u>; <u>Ex. PP 507-4</u>; <u>Ex. PP 507-5</u>; <u>Ex. PP 507-5(a)</u>). Pursuant to the May 1995 Unigard Agreement, Unigard agreed to, and did, pay Grace-Conn and Fresenius the aggregate amount of $32,500,000. (<u>Ex. OS-5(Rev), XXX-001775-76</u>; <u>Trial Tr. (Sept. 11, 2009), 318 (Posner)</u>). In exchange, Grace-Conn and Fresenius agreed to release Unigard with respect to "Products Claims" and "Asbestos-Related Claims" (both as defined therein), under Unigard Policy No. 1-0589. (<u>Ex. OS-5(Rev), XXX-1176-77</u>). They also agreed to indemnify Unigard, and pay its attorneys' fees and costs, with respect to any subsequent "Products Claims" and "Asbestos-Related Claims," again as defined therein, asserted by any third parties relating to Unigard Policy No. 1-0589. (<u>*Id.*, XXX-001777-79</u>).

    3.    <u>The March 1997 Unigard Agreement</u>.

In March 1997, Unigard entered into yet another settlement agreement with Grace-Conn, "W. R. Grace & Co. (a Delaware Corporation)," and "W. R. Grace & Co. (a New York corporation which changed its name to Fresenius National Medical Care Holdings, Inc.)" (the "March 1997 Unigard Agreement"). (<u>Ex. OS-7(Rev)</u>). The company then known as "W. R. Grace & Co. (a Delaware Corporation)" is now Sealed

Air.  (Ex. PP 243, PP 009920-22 (¶¶ 12, 15, and 19) and PP 009940-42 (¶¶ 7, 10, and 14); Ex. PP-277.01(Rev), § 1.1(92), § 1.1(152), § 1.1(192); PP 384, 6; Trial Tr. (Sept. 15, 2009), 112-14 (Shelnitz); Ex. PP 507-7; Ex. PP 507-8).  The other company identified as "W. R. Grace & Co. (a New York corporation which changed its name to Fresenius National Medical Care Holdings, Inc.)" is now Fresenius.  (Ex. OS-46; Ex. PP 243, PP 009920-21 (¶¶ 12 and 15) and PP 009940-41 (¶¶ 7 and 10); Ex. PP 277.01(Rev), §§ 1.1(115), 1.1(124), and 1.1(130); Trial Tr. (Sept. 15, 2009), 104-111 (Shelnitz); Ex. PP 507-2; Ex. PP 507-3; Ex. PP 507-4; Ex. PP 507-5; Ex. PP 507-5(a)).  Pursuant to the agreement, Unigard agreed to, and did, pay Grace-Conn, Sealed Air, and Fresenius the aggregate sum of $2,000,000.  (Ex. OS-7(Rev), XXX-001806; Trial Tr. (Sept. 11, 2009), 318 (Posner)).  In exchange, Grace-Conn, Sealed Air, and Fresenius agreed to release Unigard with respect to "Environmental Claims" (as defined therein), under Unigard Policy Nos. 1-2517 and 1-0589.  (Ex. OS-7(Rev), XXX-001807-08).[4]

> **C.    Both OneBeacon and Seaton Have Been Targeted By Third Parties Claiming Rights to Insurance Coverage Under Various Settled Policies That OneBeacon and Seaton Issued to Grace.**

> 1.    The Kaneb Coverage Claims Against OneBeacon and Seaton.

At Phase II of the Confirmation Hearing, OneBeacon and Seaton established that Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc.

---

[4] In July 1996, Unigard entered into another settlement agreement with Grace-Conn and non-debtors Fresenius and Sealed Air pursuant to which Unigard paid them $2 million for a specific environmental coverage site release.  (Ex. OS-6(Rev), XXX-001790-91; Trial Tr. (Sept. 11, 2009), 318 (Posner); Trial Tr. (Sept. 15, 2009), 104-114 (Shelnitz); Ex. PP 507-2; Ex. PP 507-3; Ex. PP 507-4; Ex. PP 507-5; Ex. PP 507-5(a); Ex. PP 507-7; Ex. PP 507-8).  In exchange, they agreed to defend and indemnify Unigard against, *inter alia*, third-party coverage claims related to the site.  (Ex. OS-6(Rev), XXX-1792-94).  Again, although Seaton's indemnity rights against Fresenius and Sealed Air under this agreement would be both enjoined and released under the Plan, Seaton's indemnity claims under this agreement are contingent today, unlike the agreements discussed in the main body of this brief, which have been both triggered and liquidated in part by third-party insurance coverage claims already asserted against Seaton.

(collectively, "Kaneb") are asserting environmental insurance coverage claims against OneBeacon and Seaton.   Specifically, they demonstrated that Kaneb – claiming to be a "co-insured" of Grace – seeks insurance coverage against OneBeacon and Seaton with respect to an allegedly contaminated environmental site – namely, the Otis Pipeline site in Massachusetts.  (Ex. OS-40, XXX-001081, XXX-001091, XXX-001095-96, XXX-001103-06; Ex. OS-44, XXX-001587-89; Trial Tr. (Sept. 16, 2009), 167-71 (Brown)). The OneBeacon and Seaton policies targeted by Kaneb are CU Policy No. EY-8220-005 ($5 million) and Unigard Policy No. 1-2517 ($10 million).  (Ex. OS-40, XXX-001103-06).  According to Kaneb, the Department of Justice is seeking $70 million in damages against Kaneb with respect to the Otis Pipeline site.  (Ex. OS-44, XXX-001589).[5]

Kaneb is asserting insurance coverage claims against Seaton – again claiming to be a "co-insured" of Grace – with respect to another allegedly contaminated environmental site in Macon, Georgia.  (Ex. OS-41, XXX-001553, XXX-001555; Ex. OS-40, XXX-001249-57).  The targeted Seaton policy is Unigard Policy No. 1-2517 ($10 million), the same one targeted by Kaneb with respect to its Otis Pipeline coverage claim. (Id., XXX-001555; OS-40, XXX-001252).  According to Kaneb, it has incurred $6,250,258 in costs in connection with the Macon, Georgia site.  (Id., XXX-001554).[6]

---

[5] This Court denied, without prejudice, Kaneb's two Motions for an Order Modifying the Automatic Stay to permit Kaneb to sue OneBeacon and Seaton, among other Grace insurers, for insurance coverage.  (D.I. 22373).  It is expected, however, that Kaneb will pursue its insurance coverage claims against OneBeacon and Seaton at the first opportunity.

[6] Initially, Kaneb also targeted OneBeacon for coverage under CU Policy No. EY-8220-005 with respect to the Macon, Georgia site, but it appears Kaneb has dropped that claim.  (Compare Ex. OS-41, XXX-001555 and Ex. OS-40, XXX-001250 with Ex. OS-44, XXX-001588-89, n.6, XXX-001600).

2.    Other Coverage Claims Against OneBeacon and Seaton.

The record evidence also establishes that The Scotts Company ("Scotts") filed an Adversary Proceeding (No. 04-55083) against Grace and certain of its insurers, including OneBeacon and Seaton (identified as Unigard).  (Ex. OS-15, XXX-000371-79).  In that proceeding, Scotts claimed coverage as a purported "vendor" of Grace's alleged asbestos-contaminated vermiculite.  (Id., XXX-000375-77).  As an alleged "vendor" of Grace products, Scotts claimed that it was entitled to coverage under certain Grace insurance policies, including certain CU Policies and Unigard Policies.  (Id., XXX-000375-76).  The Adversary Proceeding is still pending, but in August 2009, Scotts entered into a settlement agreement with the Debtors pursuant to which Scotts agreed to release its coverage claims against Grace's insurers, including OneBeacon and Seaton, in exchange for a cash payment of $1.8 million from the Asbestos PI Trust.  (D.I. 22735).  The Court recently approved that settlement agreement.  (D.I. 23358).[7]

In addition to Scotts, BNSF Railway Company ("BNSF") has also asserted (or threatened) – albeit more obliquely – coverage claims against certain unidentified Grace insurers, which may or may not include OneBeacon and Seaton.  (Ex. OS-28, XXX-000729-31).  It is simply unclear from BNSF's filings whether it purports to have such claims against OneBeacon or Seaton under the CU Policies and Unigard Policies respectively.  Its coverage claims apparently arise from lawsuits and claims against BNSF "asserting injuries allegedly resulting from vermiculite mined in Libby, loaded by Grace and transported by BNSF."  (Id., XXX-000722).

---

[7] To the extent that OneBeacon and Seaton cite herein to docket entries from the main bankruptcy case, or any related adversary proceeding, that are not otherwise part of the evidentiary record, they ask the Court to take judicial notice of the existence and contents of those docket entries pursuant to Fed. R. Evid. 201.

**D.    The Third-Party Insurance Coverage Claims Against OneBeacon and Seaton Give Rise to Their Respective Claims Against Grace-Conn And Non-Debtors Fresenius and Sealed Air Under the CU <u>Settlement Agreements and Unigard Settlement Agreements</u>.**

1.    Kaneb's Otis Pipeline Coverage Claim Against Seaton Gives Rise to Seaton's Asserted Claims Against Fresenius and Sealed <u>Air Under the March 1997 Unigard Settlement Agreement</u>.

During Phase II of the Confirmation Hearing, Seaton presented evidence concerning claims it has asserted against Fresenius and Sealed Air based upon Kaneb's Otis Pipeline-related coverage claim against Seaton.  The purpose for doing so was not to litigate those claims in the context of the confirmation proceedings, but rather to establish the prima facie basis for Seaton's claims and ultimately to demonstrate, as discussed below, that Seaton's claims against non-debtors Fresenius and Sealed Air would be improperly and illegally enjoined and released under the Plan.

Seaton's asserted claims against Fresenius and Sealed Air are based upon this record evidence.  Fresenius and Sealed Air, along with Grace-Conn, are parties to the March 1997 Unigard Agreement.  (*See, e.g.*, <u>Ex. OS-7(Rev), XXX-1814-15</u>; <u>Ex. OS-46</u>; <u>Ex. PP 384, 6</u>; and <u>Ex. PP 243, PP 009920-22 (¶¶ 12, 15, and 19) and PP 009940-42 (¶¶ 7, 10, and 14)</u>; <u>Trial Tr. (Sept. 15, 2009), 104-114 (Shelnitz)</u>; <u>Ex. PP 507-2</u>; <u>Ex. PP 507-3</u>; <u>Ex. PP 507-4</u>; <u>Ex. PP 507-5</u>; <u>Ex. PP 507-5(a)</u>; <u>Ex. PP 507-7</u>; <u>Ex. PP 507-8</u>). Pursuant to that agreement, Seaton paid "Grace" $2,000,000 in exchange for Grace's release of Seaton with respect to all insurance coverage for environmental claims.  (<u>Ex. OS-7(Rev), XXX-001807</u>).  The agreement defines "Grace" as "W. R. Grace & Co. – Conn, a Connecticut corporation, W. R. Grace & Co., a New York Corporation which changed its name to Fresenius National Medical Care Holdings, Inc. [*i.e.*, Fresenius], and W. R. Grace & Co., a Delaware Corporation [*i.e.*, Sealed Air], and their respective

predecessors, successors, and subsidiary companies or corporations." (Ex. OS-7(Rev),

XXX-1804). Section V of the agreement further provides:

> Grace represents that as of the date of execution of this Agreement [*i.e.*,
> March 3, 1997], it is not aware of any Environmental Claims
> contemplated being made against the Unigard Policies by any former
> subsidiary of Grace or any other entity which may be entitled to coverage
> under the Unigard Policies.

(*Id.*, XXX-001808). This representation, Seaton asserts, was false when "Grace" made it.

Seaton makes this assertion based upon statements made by Grace Energy

Corporation ("GEC"), a Debtor and subsidiary of Grace-Conn, in a Texas state court

action that GEC filed in June 1997 against Kaneb. (Trial Tr. (Sept. 16, 2009), 169-74

(Brown); Ex. OS-40, XXX-1082). Kaneb claims to be a successor by statutory merger to

a former Grace subsidiary. (Ex. OS-40, XXX-001095). In the Third Amended Original

Petition ("Complaint"), GEC sought a declaration that Kaneb, not GEC, bore legal

responsibility for environmental liabilities arising from the Otis Pipeline site in

Massachusetts. (Ex. OS-40, XXX-001082 and XXX-001125-34). In the Complaint,

GEC admits (i) that in response to the tender by Samson Hydrocarbons Company of a

January 9, 1997 letter from the DOJ to Samson Hydrocarbons regarding expenses the

Defense Department had incurred responding to fuel spills allegedly coming from the

Otis Pipeline, "Grace . . . conducted a review of the ownership of the Otis Pipeline" and

(ii) that in April 1997, GEC met with Kaneb and its counsel to discuss its findings. (Ex.

OS-40, XXX-001130-31). Between those two dates, however, "Grace" expressly

represented to Unigard in the March 1997 Unigard Agreement that it was "not aware of

any Environmental Claims contemplated being made against the Unigard Policies by any

former subsidiary of Grace or any other entity which may be entitled to coverage under

the Unigard Policies." (Ex. OS-7(Rev), XXX-1808).  Since Kaneb claims to be the

successor to a former Grace subsidiary, Seaton has asserted that the March 1997

representation made by "Grace" – which includes Fresenius and Sealed Air – was false

when it was made because at that time, Grace was seeking to establish that a former

Grace subsidiary bore legal responsibility for the environmental liabilities associated with

the Otis Pipeline site.  (Ex. PP 239; Ex. PP 240; Trial Tr. (Sept. 16, 2009), 167-75

(Brown)).  After discovering the misrepresentation, Seaton demanded that Fresenius and

Sealed Air indemnify Seaton and pay its defense costs in connection with Kaneb's claim

for coverage against Seaton.  (Ex. PP 239; Ex. PP 240; Trial Tr. (Sept. 16, 2009) 174-75

(Brown)).

> 2.    Kaneb's Otis Pipeline Coverage Claim Against OneBeacon
>        Gives Rise to OneBeacon's Asserted Contract Claim
>        Against Grace-Conn Under the October 1998 CU Agreement.

Kaneb seeks insurance coverage under CU Policy EY-8220-005 ($5 million) with

respect to Kaneb's alleged environmental liabilities at the Otis Pipeline site.  (Ex. OS-40,

XXX-001104; Ex. OS-44, XXX-001588).  That policy is one of several CU Policies for

which Grace provided a release, and for which it also agreed to defend and indemnify

OneBeacon, under the October 1998 CU Agreement.  (Ex. OS-3(Rev), XXX-001732-40).

In accordance with its rights under the October 1998 CU Settlement Agreement,

OneBeacon has asserted a contractual indemnity claim against Grace-Conn, a portion of

which is liquidated in the amount of $33,372.61, based upon Kaneb's coverage claims

against it.  (Ex. OS-49, XXX-001844).

3.    The Scotts "Vendor" Coverage Claims Against OneBeacon
and Seaton Give Rise to the Direct Contract Claims By Each
of Them Against Grace-Conn and  Non-Debtor Fresenius.

During Phase II of the Confirmation Hearing, Seaton and OneBeacon also

presented documentary evidence concerning contractual indemnity claims that they have

asserted against Grace-Conn and Fresenius based upon Scott's "vendor" coverage claims

against OneBeacon and Seaton.  Again, the purpose for doing so was not to litigate those

claims in the context of the confirmation proceedings, but rather to establish the prima

facie basis for the claims asserted by OneBeacon and Seaton and ultimately to

demonstrate, as discussed below, that the claims against non-debtor Fresenius would be

improperly and illegally enjoined and released under the Plan.  It was also to establish

that certain of OneBeacon and Seaton's claims against Grace-Conn are improperly

classified as Class 6 Claims under the Plan.

The asserted claims against Grace-Conn and Fresenius are based upon the

following record evidence.  Fresenius, along with Grace-Conn, is a party to both the May

1993 CU Agreement and the May 1995 Unigard Agreement.  (Ex. OS-1(Rev), XXX-

001692; Ex. OS-5(Rev), XXX-001785; Ex. OS-46; Ex. PP 243, PP 009920-21 (¶¶ 12 and

15) and PP 009940-41 (¶¶ 7 and 10); Ex. PP 277.01(Rev), §§ 1.1(115), 1.1(124), and

1.1(130); Trial Tr. (Sept. 15, 2009), 104-111 (Shelnitz); Ex. PP 507-2; Ex. PP 507-3; Ex.

PP 507-4; Ex. PP 507-5; Ex. PP 507-5(a)).  Under the May 1993 CU Agreement, Grace-

Conn and Fresenius (f/k/a W. R. Grace & Co.) agreed to defend and indemnify

OneBeacon with respect to any subsequent "Products Claims" and "Asbestos-Related

Claims" asserted by third parties under the policies covered by the agreement.  (Ex. OS-

1(Rev), XXX-001677-82).  Similarly, under the May 1995 Unigard Agreement, Grace-

Conn and Fresenius (f/k/a W. R. Grace & Co.) agreed to defend and indemnify Seaton with respect to any subsequent "Products Claims" and "Asbestos-Related Claims" asserted by third parties relating to Unigard Policy No. 1-0589.  (Ex. OS-5(Rev), XXX-001777-79).  In addition, under the August 1992 Unigard Agreement, Grace-Conn agreed to defend and indemnify Seaton with respect to any subsequent "Products Claims" asserted by third parties relating to Unigard Policy No. 1-2517.  (Ex. OS-4(Rev), XXX-001761-63).  The CU Policies and Unigard Policies addressed by each of these settlement agreements are among those that were targeted by Scotts in its Adversary Proceeding. (Compare OS-1(Rev), XXX-001695; OS-4(Rev), XXX-001755; and OS-5(Rev), XXX-001771 with OS-15, XXX-000375-76, XXX-000392-418).

In accordance with its rights under the May 1993 CU Agreement, OneBeacon has asserted a contractual indemnity claim against Grace-Conn, a portion of which is liquidated in the amount of $30,466.52, based upon Scotts' coverage claims against OneBeacon.  (Ex. OS-49, XXX-001844).   Similarly, under the August 1992 Unigard Agreement and the May 1995 Unigard Agreement, Seaton has asserted a contractual indemnity claim against Grace-Conn, a portion of which is liquidated in the amount of $30,246.02, based upon Scotts' coverage claims against Seaton.  (Ex. OS-48, XXX-001842).  In addition, OneBeacon has asserted that Scotts' claims against it triggered Fresenius' obligations to defend and indemnify OneBeacon under the May 1993 CU Agreement.  (Ex. PP 238).  And, finally, Seaton has also asserted that Scotts' coverage claims against it triggered Fresenius' obligations to defend and indemnify Seaton under the May 1995 Unigard Agreement.  (Ex. 239, PP 009267-69).

E.    **Seaton's and OneBeacon's Claims Against Non-Debtors Fresenius and Sealed Air Are Released and Enjoined Under the Plan.**

1.    Seaton's Kaneb-Related Claim.

(a)    *The Implicated Releases.*

Under the Plan, Seaton's asserted misrepresentation claims against non-debtors Fresenius and Sealed Air – which arise from Kaneb's Otis Pipeline environmental coverage claim against Seaton – are to be released *without* Seaton's consent and *without* providing Seaton with any, much less fair, compensation for the release.  The Plan contains two release provisions that accomplish that result – namely, § 8.8.7 (entitled "Specific Releases by Holders of Claims or Equity Interests") and § 7.13 (entitled "No Successor Liability").  (Ex. PP 277.01(Rev), §§ 7.13and 8.8.7; Ex. PP 352, PP 017959-60, PP 017963).  The broad release contained in the first sentence of § 8.8.7 only applies to Holders of Claims and Equity Interests who voted in favor of the Plan.  (Trial Tr. (Sept. 14, 2009), 204-05 (Finke)).  That does not include Seaton.  The release contained in the second sentence of § 8.8.7, however, applies to "each Holder of a Claim or Equity Interest who receives or retains any property" under the Plan.  Such Holders are "deemed to unconditionally release the Fresenius Indemnified Parties to the same extent as the release" in the first sentence of § 8.8.7.  (Ex. PP 352, PP 017963; Trial Tr. (Sept. 14, 2009), 205-06 (Finke)).  Thus, if Seaton "receives or retains any property" under the Plan – *e.g.*, a share of the liquidated portion ($30,246.02) of its Scotts-related contractual indemnity claim against Grace-Conn, which is channeled to the Asbestos PI Trust and subject to the 25-35% Payment Percentage – Seaton will be "deemed" to have released Fresenius with respect to, for example, its Kaneb-related misrepresentation claim.  If Seaton elected to return such property to the Asbestos PI Trust in an attempt to preserve

its claims against Fresenius, it is unclear under the Plan whether the "deemed" release by Seaton would still be operative.

However, this question is immaterial because the second paragraph of § 7.13 of the Plan also purports to broadly release a wide range of claims held by non-debtors, such as Seaton and OneBeacon, against other non-debtors – most notably, Fresenius and Sealed Air; and this release, unlike those in § 8.8.7, operates regardless of whether the "releasing party" votes in favor of the Plan, or whether it receives or retains property under the Plan.  (Ex. PP 352, PP 017959-60; Trial Tr. (Sept. 14, 2009), 208-10, 216-17 (Finke)).  Section 7.13 is written in the passive voice and, therefore, it releases the Asbestos Protected Parties – including Fresenius and Sealed Air – from all claims enumerated therein irrespective of the identity of the parties holding such claims.  It also captures both asbestos-related and some non-asbestos-related claims.  (Ex. PP 352, PP 017959-60; Trial Tr. (Sept. 14, 2009), 210-11 (Finke)).  It is a difficult provision to follow; however, by its broad terms, it operates to release, *inter alia*, Seaton's asserted misrepresentation claims against non-debtors Fresenius and Sealed Air arising from Kaneb's Otis Pipeline environmental coverage claim against Seaton.  (Ex. PP 352, PP 017959-60).

### (b)        The Implicated Injunction.

Under the Plan, Seaton's asserted Kaneb-related misrepresentation claims against non-debtors Fresenius and Sealed Air will not only be released under § 8.8.7 and/or § 7.13, they will also be enjoined by the so-called "Successor Claims Injunction," which is to be issued pursuant to Bankruptcy Code § 105(a).  (Ex. PP 277.01(Rev), §§ 8.5 and 8.6; Ex. PP 352, PP 017962).  The "Successor Claims Injunction" as it originally

appeared in the Plan left some doubt as to whether those claims would be enjoined, because at least arguably they are not "based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction or Fresenius Transaction," but the Plan Proponents deleted that qualifying language from the Successor Claims Injunction in their September 4, 2009 Notice of First Set of Modifications to Joint Plan of Reorganization.  (Compare Ex. PP 277.10, § 8.5.1 with Ex. PP 352, PP 017962).  By doing so, they expanded the scope of the Successor Claims Injunction sufficiently to include – to the extent it was not already included – Seaton's Kaneb-related misrepresentation claims against Fresenius and Sealed Air.

2.    <u>OneBeacon's and Seaton's Scotts-Related Claims</u>.

(a)    <i>The Implicated Releases.</i>

Under the Plan, Seaton's and OneBeacon's asserted Scotts-related contractual indemnity claims against non-debtor Fresenius are to be released, again *without* Seaton's consent and *without* providing Seaton with any, much less fair, compensation for the release.  The two provisions of the Plan that accomplish this result are the same two that operate to release Seaton's Kaneb-related misrepresentation claims against Fresenius and Sealed Air – namely, § 8.8.7 (entitled "Specific Releases by Holders of Claims or Equity Interests") and § 7.13 (entitled "No Successor Liability").  (Ex. PP 277.01(Rev), §§ 7.13 and 8.8.7; Ex. PP 352, PP 017959-60, PP 017963).

(b)    <i>The Implicated Injunction.</i>

Under the Plan, Seaton's and OneBeacon's asserted Scotts-related contractual indemnity claims against non-debtor Fresenius will not only be released under § 8.8.7 and § 7.13, they will also be enjoined by the so-called "Asbestos PI Channeling

Injunction," which is to be issued pursuant to Bankruptcy Code § 524(g).  (Ex. PP 277.01(Rev), § 8.2).  Similarly, if BNSF asserts an "asbestos-related" coverage claim against OneBeacon or Seaton under the CU Policies or Unigard Policies respectively, and thereby triggers the contractual indemnity provisions in the May 1993 CU Agreement, the August 1992 Unigard Agreement, or the May 1995 Unigard Agreement, the resulting contractual indemnity claims by OneBeacon and Seaton against non-debtor Fresenius will likewise be enjoined by the Asbestos PI Channeling Injunction. (*Id.*).

**F.**    **The Classification and Treatment of OneBeacon's and Seaton's Claims Against Grace-Conn Under the Plan.**

1.    The Scotts-Related Claims.

Under the Plan, the asserted contractual indemnity claims that OneBeacon and Seaton have against Grace-Conn arising from Scotts' coverage claims against them are classified as Class 6 Asbestos PI Claims.[8]  (Ex. PP 277.01(Rev), § 1.1(33); Ex. OS-48; Ex. OS-49; Ex. OS-16; Ex. OS-17).  The OneBeacon and Seaton Class 6 Asbestos PI Claims are either Indirect PI Trust Claims or Indemnified Insurer TDP Claims, or perhaps both.  (Compare Ex. PP 277.01(Rev), § 1.1(138) with Ex. PP 277.04(Rev), §§ 5.6 and 5.13).  Either way, the claims are discharged as against the Debtors and channeled to the Asbestos PI Trust pursuant to the § 524(g) Asbestos PI Channeling Injunction.  (Ex. PP 277.01(Rev), §§ 8.1.1 and 8.2.1).  They are to be resolved under § 5.13 of the Asbestos PI Trust Distribution Procedures ("TDP").  (Ex. 277.04(Rev), § 5.13).  They will also be subject to the Payment Percentage, which is estimated to be between 25% and 35%.  (Ex. PP 276(Rev), 14).

---

[8] These claims arise under (i) the May 1993 CU Agreement, (ii) the October 1998 CU Agreement, (iii) the August 1992 Unigard Agreement, and (iv) the May 1995 Unigard Agreement.

2.     The Potential BNSF-Related Claims.

In the event that BNSF asserts an "asbestos-related" coverage claim against OneBeacon or Seaton under the CU Policies or Unigard Policies respectively, and thereby triggers the contractual indemnity provisions in the May 1993 CU Agreement, the August 1992 Unigard Agreement, or the May 1995 Unigard Agreement, the resulting contractual indemnity claims by OneBeacon and Seaton against Grace-Conn would be classified and treated in the same fashion as the Scotts-related claims under the Plan.

3.     The Kaneb-Related Claims.

The contractual indemnity claim that OneBeacon has against Grace-Conn under the October 1998 CU Agreement, which arises from Kaneb's Otis Pipeline-related insurance coverage claim against OneBeacon, is classified as a Class 9 General Unsecured Claim.  (Ex. PP 277.01(Rev), § 1.1(126); Ex. OS-49; Ex. OS-18).  This claim is supposed to be paid in full by the Debtors under the Plan.  (Ex. 277.01(Rev), § 3.1.9).

## III.    ARGUMENT

### A.    The Plan Proponents Bear the Burden of Establishing That Their Plan Satisfies the Requirements of the Bankruptcy Code.

"[A] plan proponent has the affirmative burden of proving that its plan satisfies the provisions of § 1129(a) by the preponderance of the evidence, even in the absence of an objection."  *In re Union Meeting Partners*, 165 B.R. 553, 574 (Bankr. E.D. Pa. 1994) *aff'd*, 52 F.3d 317 (3d Cir. 1995) (footnote omitted); *see also In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 656 (Bankr. D. Del. 2003), *aff'd*, 308 B.R. 672 (D. Del. 2004).  Moreover, courts have a mandatory, independent duty to determine whether plans meet all the requirements necessary for confirmation, even absent valid objections to confirmation.  *See Lernout & Hauspie*, 301 B.R. at 656;  *see also*, *In re Genesis Health*

*Ventures, Inc.*, 266 B.R. 591, 599 (Bankr. D. Del. 2001); *In re Congoleum Corp.*, Bankr.

Case No. 03-51524, 2009 Bankr. LEXIS 900, at *7 (Bankr. D.N.J. Feb. 26, 2009), *aff'd*

*in part, rev'd in part*, 2009 U.S. Dist. LEXIS 72349 (D. N.J. Aug. 17, 2009).

Section 1129(a)(1) of the Bankruptcy Code provides that a court may confirm a

plan only if it "complies with the applicable provisions" of Title 11.  *In re PWS Holding*

*Corp.*, 228 F.3d 224, 243 (3d Cir. 2000).  A plan is not confirmable if it fails to comply

with *any* provision in Title 11.  *See In re Frascella Enters., Inc.*, 360 B.R. 435, 441

(Bankr. E.D. Pa. 2007).  Here, the Plan fails to comply with, *inter alia*, Bankruptcy Code

§§ 1129(a)(1), 1129(a)(3), 1129(a)(5)(A)(ii), and 524(g).

### B.    The Plan Illegally Releases and Enjoins Seaton's Kaneb-Related Claims Asserted Against Non-Debtors Fresenius and Sealed Air.

The Plan contains numerous releases.  It also contains four injunctions.  It is

important to note at the outset of this argument, therefore, that Seaton is specifically

objecting to the non-consensual releases in the Plan (*i.e.*, § 8.8.7 and § 7.13) that purport

to release Seaton's claims against non-debtors, most notably Fresenius and Sealed Air.[9]

It is also objecting to the Successor Claims Injunction – which the Plan Proponents ask

this Court to issue pursuant to Bankruptcy Code § 105(a) – insofar as it enjoins Seaton's

Kaneb-related claims against Fresenius.  Seaton is not challenging the right of the

Debtors to release their own claims; nor is it challenging any of the consensual third-

party releases in the Plan.  This distinction is of vital importance because the applicable

---

[9] At the Confirmation Hearing, the Plan Proponents presented evidence to show that the releases contained in § 8.8.7 of the Plan were disclosed to holders of claims and equity interests in the cover letter that accompanied the ballot that each was provided.  (Ex. PP 505-4; Trial Tr. (Sept. 14, 2009), 176-77 (Finke)).  They presented no evidence, however, to establish the releases in § 7.13 of the Plan were so disclosed, presumably because the releases in § 7.13 will be operative regardless of whether the "releasing party" voted in favor of the Plan or whether that party receives or retains any property under the Plan.

standard is not the same.  *See, e.g., In re Coram Healthcare Corp.*, 315 B.R. 321, 335

(Bankr. D. Del. 2004).  In fact, unlike debtor releases of third parties, the Third Circuit

has not yet decided whether a Chapter 11 plan may properly provide for non-consensual

non-debtor releases and § 105(a) permanent injunctions.  *See In re Cont'l Airlines*, 203

F.3d 203, 214-15 (3d Cir. 2000).  What the Third Circuit has made clear, however, is that

if such releases and injunctions are appropriate at all, they should be reserved for

extraordinary cases.  *Id.* at 212.[10]

In addressing the legality of the Successor Claims Injunction, as well as the non-

consensual third-party releases in §§ 7.13 and 8.8.7 of the Plan, the Court should first

look to the Bankruptcy Code.  Section 524(e) of the Bankruptcy Code clearly provides

that the bankruptcy discharge of a debtor, by itself, does not operate to relieve non-

debtors of their liabilities.  *See* 11 U.S.C. § 524(e).  In fact, with the exception of

§ 524(g), the Bankruptcy Code does not explicitly authorize the release and permanent

injunction of claims against non-debtors.  *Cont'l Airlines*, 203 F.3d at 211.  Section

105(a) of the Bankruptcy Code does supplement a court's specifically enumerated

bankruptcy powers by authorizing orders that are necessary or appropriate to carry out

the provisions of the Bankruptcy Code.  *See* 11 U.S.C. § 105(a).  It is important to note,

however, that the powers conferred by §105(a) are limited in scope; that section does not

"'create substantive rights that would otherwise be unavailable under the Bankruptcy

Code.'"  *Cont'l Airlines*, 203 F.3d at 211 (quoting *United States v. Pepperman*, 976 F.2d

123, 131 (3d Cir. 1992)).  Simply stated, OneBeacon and Seaton submit that § 105(a)

---

[10] In their Main Brief in Support of Plan Confirmation, dated August 7, 2009, the Plan Proponents mistakenly cite to a five-factor test used to analyze *debtor* releases in defense of the Plan's nonconsensual third-party releases of non-debtors.  (Compare <u>D.I. 22733, 86-87</u> with *Coram*, 315 B.R. at 335).

does not provide this Court with the substantive power to issue the Successor Claims

Injunction, or the non-consensual third-party releases set forth in §§ 7.13 and 8.8.7 of the

Plan, all of which are prohibited by Bankruptcy Code § 524(e).

Faced with similar plan provisions, this Court has repeatedly refused to approve

them if objected to by the parties impacted.  *See, e.g., Coram*, 315 B.R. at 337; *Genesis*

*Health*, 266 B.R. at 609; *In re Zenith Elecs. Corp.,* 241 B.R. 92, 111 (Bankr. D. Del.

1999).  More importantly, the Third Circuit, as noted, has not yet passed judgment on

whether, or under what circumstances, non-debtor releases and permanent injunctions

might be appropriate or permissible:

> [W]e need not establish our own rule regarding the conditions under
> which non-debtor releases and permanent injunctions are appropriate or
> permissible.  Establishing a rule would provide guidance prospectively,
> but would be ill-advised when we can rule on Plaintiffs' appeal without
> doing so.  Considering the instant appeal in the context of the case law we
> have reviewed, we conclude that the provision in the . . . plan releasing
> and permanently enjoining Plaintiffs' lawsuits against the non-debtor
> D&O defendants does not pass muster under even the most flexible tests
> for the validity of non-debtor releases.  The hallmarks of permissible non-
> consensual releases – fairness, necessity to the reorganization, and specific
> factual findings to support these conclusions – are all absent here.

*Cont'l Airlines*, 203 F.3d at 214.  The case law reviewed by the Third Circuit was, of

course, decisions by other circuit courts.  As the Third Circuit observed, some circuits,

like the Ninth and Tenth, have held that non-debtor releases and permanent injunctions

are impermissible.  *Id.* at 212.  By contrast, the Third Circuit observed, "[o]ther circuits

have adopted a more flexible approach, albeit in the context of extraordinary cases."  *Id.*

Those circuits include, *inter alia*, the Second and Fourth.  *See In re Drexel Burnham*

*Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992) (involving securities class action

claims); *In re A.H. Robins Co.*, 880 F.2d 694 (4th Cir. 1989) (involving Dalkon Shield

birth control devices).  After the Third Circuit issued its *Continental Airlines* decision,

the Sixth Circuit also adopted this approach.  *See In re Dow Corning Corp.*, 280 F.3d 648

(6th Cir. 2002) (involving silicone breast implant claims).  The point here is that the

Third Circuit has not yet established any standard by which this Court must judge the

propriety of the Successor Claims Injunction, or the non-consensual releases in §§ 7.13

and 8.8.7 of the Plan.  All the Third Circuit has done is to intimate that in certain

"extraordinary cases" such plan provisions might be permissible.  This is not such a case.

In *Drexel, A.H. Robins,* and *Dow Corning*, the courts concluded that the

establishment of a trust and entry of a third-party § 105(a) injunction were appropriate to

resolve massive non-asbestos-related liabilities under circumstances where the injunction

played an important part of the debtor's reorganization plan.  *See, e.g., Drexel*, 960 F.2d

at 293.  Here, by contrast, the principal liabilities at issue are asbestos-related personal

injury and property damage claims against the Debtors, as well as non-debtors Fresenius

and Sealed Air, among others.  Those liabilities, however, are already being addressed

under the Plan pursuant to Bankruptcy Code § 524(g) – specifically, the Asbestos PI

Channeling Injunction and the Asbestos PD Channeling Injunction.

Thus, unlike the § 105(a) injunctions at issue in *Drexel, A.H. Robins,* and *Dow

Corning* – which were central to each debtor's reorganization – the § 105(a) Successor

Claims Injunction at issue here, along with the non-consensual releases in §§ 7.13 and

8.8.7 of the Plan, are mere "add-ons," the obvious purpose of which is to improperly

augment the statutory protections afforded to Fresenius and Sealed Air under Bankruptcy

Code § 524(g).  It may be that Fresenius and Sealed Air want these extra protections in

the Plan – after all, they are paying a lot to resolve their respective asbestos liabilities –

but without filing for bankruptcy themselves, that alone is not enough. *Cf.* 11 U.S.C. § 524(e). Moreover, the Plan Proponents have failed to prove that these extra protections for Fresenius and Sealed Air are necessary to the Debtors' successful reorganization, much less fair to Seaton and other parties whose substantive property rights would be stripped by them. Accordingly, this Court must deny confirmation unless the Plan Proponents remove the Successor Claims Injunction and non-consensual releases in §§ 7.13 and 8.8.7 from their Plan. To do otherwise, would violate Seaton's rights under the Fifth Amendment of the U.S. Constitution by depriving Seaton of its property, increasing its burdens, and impairing its rights without due process of law. *See* U.S. Const. amend. V; *see also Murray v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 275 (1855).

> **C.      The Contract Claims of OneBeacon and Seaton Against Non-Debtors Fresenius and Sealed Air Cannot Properly Be Enjoined or Channeled to the Asbestos PI Trust Under Bankruptcy Code § 524(g).**

The statutory authority conferred upon this Court under Bankruptcy Code § 524(g) has strict limits. *See* 11 U.S.C. § 524(g). It does not authorize this Court to issue a channeling injunction that would enjoin the direct contract claims of OneBeacon and Seaton against non-debtor Fresenius. In relevant part, § 524(g) states:

> (4)(A)(i)  Subject to subparagraph (B), an injunction described in paragraph (1) shall be valid and enforceable against all entities that it addresses.

> (ii)  Notwithstanding the provisions of section 524(e), such an injunction may bar any action directed against a third party who is identifiable from the terms of the injunction (by name or as part of an identifiable group) and *is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor* to the extent such alleged liability of such third party arises by reason of . . . .

11 U.S.C. § 524(g)(4)(A)(i) and (ii) (emphasis added).

Here, the claims at issue are the contract claims that OneBeacon and Seaton have against Fresenius under certain settlement agreements. Specifically, the Asbestos PI Channeling Injunction purports to enjoin, *inter alia*, the contractual indemnity claims that OneBeacon and Seaton have against Fresenius that arise from or are triggered by, for example, the "vendor" coverage claims that have been asserted by Scotts. With respect to those contract claims, Fresenius is not "*alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor.*" 11 U.S.C. § 524(g)(4)(A)(ii) (emphasis added). To the contrary, Fresenius' liability to OneBeacon and Seaton is a direct liability of its <u>own</u> based upon the simple fact that Fresenius is a party to the very contracts that give rise to its <u>own</u> indemnity obligations to OneBeacon and Seaton. Thus, to the extent that the Asbestos PI Channeling Injunction purports to enjoin such claims, it is illegal because it exceeds the statutory authority afforded by § 524(g).[11]

Moreover, the Third Circuit made it abundantly clear in *Combustion Eng'g* that Bankruptcy Code § 105(a) cannot be used to circumvent the more specific requirements of § 524(g). 391 F.3d at 235-38. Thus, to the extent that the Successor Claims Injunction would enjoin OneBeacon's and Seaton's Scotts-related (or BNSF-related) claims, that injunction is illegal under Third Circuit law. Similarly, pursuant to the same analysis, this Court could not properly approve the non-consensual third-party releases set forth in § 8.8.7 and § 7.13 of the Plan. Indeed, doing so would be tantamount to issuing an illegal § 105(a) injunction because it would have precisely the same effect – namely, it would bar OneBeacon and Seaton from pursuing their claims against Fresenius. Accordingly, the Court must deny confirmation unless the Plan Proponents remove these illegal

---

[11] Similarly, to the extent that the Asbestos PD Channeling Injunction would enjoin OneBeacon and Seaton's direct contract claims against Fresenius, it too is illegal.

features from the Plan.  Again, to do otherwise, would violate OneBeacon's and Seaton's

rights under the Fifth Amendment of the U.S. Constitution by depriving them of their

property, increasing their burdens, and impairing their rights without due process of law.

*See* U.S. Const. amend. V; *see also Murray*, 59 U.S. (18 How.) at 275.

> **D.     The Plan Proponents' Argument That the Plan's Third-Party
> Releases and Injunctions in Favor of Non-Debtors
> Fresenius and Sealed Air Are Immune from Judicial Review
> Under Principles of *Res Judicata* Is Wholly Without Merit.**

In an effort to shield the Successor Claims Injunction and the non-consensual

releases in §§ 7.13 and 8.8.7 of the Plan from judicial scrutiny, the Plan Proponents have

argued that these particular Plan provisions are immune from review "under principles of

*res judicata.*"  (D.I. 22733, 82-98).  The principal case they cite for that bold proposition

is *Travelers Indemnity Co. v. Bailey*, 129 S.Ct. 2195 (2009).  In addition, they also cite to

the Fresenius and Sealed Air Settlement Agreements, and the Orders approving them.

All such reliance is entirely misplaced.

*First*, in *Bailey*, the Supreme Court was faced with a *collateral* attack on the

propriety of an injunction contained in a *confirmed* plan of reorganization that had gone

effective and been consummated decades earlier.  129 S.Ct. at 2205-07.  Under those

circumstances, the Supreme Court held that *res judicata* applied, but only if the enjoined

party had been given constitutionally sufficient notice.  *Id.*  Here, in stark contrast,

OneBeacon and Seaton are directly challenging the propriety of the Successor Claims

Injunction and the Plan's non-consensual third-party releases in the context of the

confirmation proceedings.  This Court has not yet confirmed the Plan and, therefore, the

*Bailey* decision is inapposite.

*Second*, neither the Successor Claims Injunction nor the non-consensual third

party releases were issued or granted in the Settlement Agreements or the Orders

approving them.  Indeed, if they were, there would be no need to provide for them in the

Plan itself.  This is clear on the face of each Order.  The Fresenius Settlement Order, in

relevant part, provides:

> **NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**
> . . .
> 3.        Pursuant to Section 2.09 of the Settlement Agreement, the Plaintiffs are hereby authorized, empowered, and directed to use their *best efforts* to bring about the Settlement Effective Date and to cause the occurrence of all the preconditions to the obligation of the NMC Defendants to make the Settlement Payment that are set forth in Section 2.02 of the Settlement Agreement, *including*, without limitation, *seeking the injunctions and releases* under Bankruptcy Code §§ 105(a) and 524(g) for the NMC Defendants.  Pursuant to Section 2.08 of the Settlement Agreement, the Debtors are hereby authorized, empowered, and directed to use their *best efforts* to bring about the Settlement Effective Date and to cause the occurrence of all the preconditions to the obligation of the NMC Defendants to make the Settlement Payment that are set forth in Section 2.02 of the Settlement Agreement, . . ., *including*, without limitation, *seeking the benefit of the injunctions and releases* under Bankruptcy Code § 105(a).  In addition, if the Debtors and Estate Parties, in their discretion, *choose to seek* the protections of an injunction under Bankruptcy Code § 524(g), the Debtors and Estate Parties are authorized, empowered, and directed to *seek the benefit of injunctions and releases* under Bankruptcy Code § 524(g) for the NMC Defendants *to the extent such injunctions are allowable under the law* and to the extent they seek such injunctions and releases for the Debtors and the Estate Parties.

(Ex. PP 277.14(Rev), PP 017433-35) (emphasis added).  This language clearly shows that

the Court was merely authorizing the parties to use their "best efforts" to seek the

contemplated releases and injunctions.  That would not be necessary if, as the Plan

Proponents argue, the Court had already passed judgment on the legality of the releases

and injunctions when it approved the Fresenius Settlement Agreement.  The Sealed Air

Order contains a similar provision.  (Ex. PP 277.23(Rev), PP 017664).

    *Third,* and more significantly, neither the Sealed Air Order nor the Sealed Air

Settlement Agreement requires the § 105(a) Successor Claims Injunction, as recently

expanded, or the non-consensual third-party releases set forth in § 8.8.7 and § 7.13 of the

Plan.  The Order makes no mention of a § 105(a) injunction or of any releases.  (Ex. PP

277.23(Rev)).  The Settlement Agreement contemplated "an injunction under sections

524(g) and 105(a) of the Bankruptcy Code" to enjoin "Asbestos-Related Claims."  (Ex.

PP 277.22(Rev), PP 017570).  The term "Asbestos-Related Claim," as defined therein,

includes "Asbestos Claims" and "Successor Claims *based on or arising from, in whole or

in part, directly or indirectly, the Cryovac Transaction*."  (*Id.*, PP 017554) (emphasis

added).  The Plan Proponents might argue that Seaton's Kaneb-related claims against

Sealed Air are "Successor Claims," as defined in the Sealed Air Settlement Agreement,

but they are not ones that are "*based on or arising from, in whole or in part, directly or

indirectly, the Cryovac Transaction.*"  In fact, those claims are based upon the 1997

Unigard Agreement, which pre-dates the Cryovac Transaction.  This is, no doubt, the

reason why the Plan Proponents modified the Successor Claims Injunction just before the

Confirmation Hearing to delete the phrase "*based on or arising from, in whole or in part,

directly or indirectly, the Cryovac Transaction or Fresenius Transaction.*"  (Ex. PP 352,

PP 017962).  They wanted the Plan to contain a broader § 105(a) injunction than that

contemplated by the Sealed Air Settlement Agreement in order to capture Successor

Claims regardless of whether they are "*based on or arising from, in whole or in part,

directly or indirectly, the Cryovac Transaction or Fresenius Transaction.*"  In any event,

contrary to what the Plan Proponents say, the Sealed Air Settlement Agreement does not

contemplate a Successor Claims Injunction as broad as the one in the Plan.  Moreover, it

did not require any party to seek, much less have this Court grant, the non-consensual

third-party releases set forth in § 8.8.7 and § 7.13 of the Plan.  (<u>Ex. PP 277.22(Rev), PP</u>
<u>017567-75</u>).

*Fourth*, when the Court approved the Fresenius Settlement Agreement and the

Sealed Air Settlement Agreement, it did so pursuant to Fed. R. Bankr. P. 9019.  By

contrast, the Court must now judge the Plan – in its entirety – pursuant to the

requirements set forth in Bankruptcy Code § 1129.  The standards under Rule 9019 and

§ 1129 are entirely different.  *See* 11 U.S.C. § 1129; *see also*, *e.g.*, *In re Nutraquest, Inc.*,

434 F.3d 639, 644 (3d Cir. 2006).  The Successor Claims Injunction and the non-

consensual third-party releases set forth in § 8.8.7 and § 7.13 are part of the Plan and,

therefore, this Court must judge them pursuant to the requirements of § 1129.  Those Plan

provisions were not, nor could they properly have been, "pre-approved" by this Court

under the applicable Rule 9019 standards when the Court signed the Fresenius and Sealed

Air Settlement Orders back in 2003 and 2005 respectively.  Indeed, their legality must be

judged by this Court in the context of an integrated Plan that is tested against the rigorous

requirements of Bankruptcy Code § 1129.  Here, the Plan had not even been negotiated,

much less filed, when the Court approved the Settlement Agreements.

*Fifth*, since the Plan was filed earlier this year, the Plan Proponents have modified

the language in the Successor Claims Injunction, as well as §§ 7.13 and 8.8.7.  (<u>Ex. PP</u>

<u>352, PP 017959-60, PP 017962-63</u>).  Although the modifications are couched as

"technical amendments" – some made to resolve objections such as those lodged by the

U.S. Trustee – it is obvious that these Plan provisions have been substantively altered.

One such modification, as noted above, involved broadening the scope of the Successor

Claims Injunction by deleting the qualifying phrase "*based on or arising from, in whole*

*or in part, directly or indirectly, the Cryovac Transaction or Fresenius Transaction.*"

(<u>Ex. PP 352, PP 017962</u>).  If, as the Plan Proponents argue, doctrines of *res judicata*

precluded judicial review of these Plan provisions, such modifications by the Plan

Proponents would be entirely improper.  Indeed, pursuant to their own rationale, the Plan

Proponents themselves, not to mention the U.S. Trustee, would all be bound by the same

doctrines of *res judicata* that they profess should now bind OneBeacon and Seaton.

*And, sixth*, neither OneBeacon nor Seaton were parties to, or had proper and

adequate notice of, the Fresenius Settlement Agreement or the Fresenius Settlement

Order.  The Settlement Agreement was executed in March/April 2003 and the Court

approved it in June of 2003.  (<u>Ex. PP 277.13(Rev), PP 017396-400</u>; <u>Ex. PP 277.14(Rev),</u>

<u>PP 017437</u>).  Neither OneBeacon nor Seaton was aware of, much less involved in, this

bankruptcy case at that time; indeed, OneBeacon and Seaton did not file their Notice of

Appearance and Request for Notices and Service of Papers until January 4, 2005.  (<u>D.I.</u>

<u>7440</u>).  Moreover, Mark Shelnitz, Grace's Vice President, General Counsel, and

Secretary, executed a Stipulation on behalf of the Debtors relating to the timeliness of

Seaton's proof of claim, which Stipulation was later approved by this Court on

September 26, 2005.  The Stipulation provides:

> [T]he Debtors listed Unigard on their Schedule G (Executory Contracts
> and Unexpired Leases) filed on June 8, 2001, but Unigard and Claimant
> [*i.e.*, Seaton] were not provided with actual notice of the commencement
> of the Debtors' cases nor the Bar Date Order and were not independently
> aware of the Bar Date Order or the commencement of the Debtors' case
> . . . .

(<u>Ex. OS-14, XXX-000361-63</u>).  Mr. Shelnitz executed a substantially identical

Stipulation relating to the timeliness of OneBeacon's proof of claim, which was also

approved by the Court.  (*<u>Id.</u>, XXX-000368-70*).  In addition, the Debtors failed to serve

Seaton and OneBeacon with their Rule 9019 Motion seeking approval of the Fresenius

Settlement Agreement, as evidenced by its Certificate of Service.  (D.I. 16, Adv. No. 02-

2211).  Thus, it is indisputable that Seaton and OneBeacon did not receive proper and

adequate notice of the Fresenius Settlement Agreement, or the Order approving it, and,

therefore, even if *res judicata* were otherwise applicable – which it is not – the doctrine

would not apply to Seaton and OneBeacon with respect to the Fresenius Settlement

Agreement and Fresenius Order.

In short, the Plan Proponents' reliance on the "doctrines of *res judicata*" to shield

the illegal Successor Claims Injunction and the illegal non-consensual third-party releases

in § 8.8.7 and § 7.13 of the Plan from judicial scrutiny is entirely misplaced.  Therefore,

this Court must address Seaton's and OneBeacon's objections to these improper Plan

provisions on the merits.

## IV.    OTHER ARGUMENTS INCORPORATED BY REFERENCE

*Pursuant to the Court's explicit instructions, rather than repeating arguments*

*they previously briefed in detail, OneBeacon and Seaton hereby incorporate by reference*

*those portions of their Phase II Trial Brief, dated July 13, 2009, the headings of which*

*appear below.  Each main heading contains a hyper-link to the relevant portion of the*

*Phase II Trial Brief.  However, because the Phase II Trial Brief was filed before Phase II*

*of the Confirmation Hearing, the factual citations therein are not citations to the Phase II*

*trial record.  To address this issue, for each factual citation contained in those portions*

*of the Phase II Trial Brief incorporated herein, OneBeacon and Seaton are providing the*

*Court with the hyper-link to the corresponding trial record citation.  That way, if the*

*Court identifies a factual citation in the incorporated portions of the July 13, 2009 Phase*

*II Trial Brief that it wishes to review and consider, it can easily hyper-link to where that*

*fact now appears in the actual trial record.*

A.    **The Contract Claims of OneBeacon and Seaton
      Against the Debtors Are Not Properly Classified.**

(*See* Phase II Trial Brief, 13-20)

| *Pre-Trial Brief Citation* | *Corresponding Trial Record Citation* |
| --- | --- |
| Ex. "1" at 270-73, Ex. 15 thereto at OB-000015 to OB-000020 …………………………. | Ex. OS-1(Rev), XXX-001677-82 |
| Ex. "1" at 277-79, Ex. 17 thereto at OB-000076 to OB-000078 ………………………. | Ex. OS-3(Rev), XXX-001738-40 |
| Ex. "1" at 279-80, Ex. 18 thereto at SEA-000007 to SEA-000009 ……………………….. | Ex. OS-4(Rev), XXX-001761-63 |
| Ex. "1" at 280-83, Ex. 19 thereto at SEA-000023 to SEA-000025 ……………………….. | Ex. OS-5(Rev), XXX-001777-79 |
| D.I. 20872 at § 3.16(a) ………………… | Ex. PP 277.01(Rev), § 3.16(a) |
| D.I. 20872 at 11-13 …………………… | Ex. PP 277.10(Rev), § 1.1(33) |

1.    The Contract Claims Asserted by OneBeacon and
      Seaton Are Not Substantially Similar to the
      Asbestos-Related Tort Claims that Dominate Class 6.

| *Pre-Trial Brief Citation* | *Corresponding Trial Record Citation* |
| --- | --- |
| Ex. "9" ……………………………..... | Ex. OS-15 |

2.    The Contract Claims Asserted by OneBeacon and Seaton
      Are Treated Differently from Other Class 6 Claims.

| *Pre-Trial Brief Citation* | *Corresponding Trial Record Citation* |
| --- | --- |
| Ex. "13" ……………………………….. | Ex. OS-19 |
| Ex. "14" ……………………………….. | Ex. OS-20 |
| D.I. 20872, §§ 8.81, 8.83 ……………… | Ex. PP 277.01(Rev), §§ 8.81, 8.83 |

3.    All the Contract Claims Asserted by OneBeacon and Seaton
Should Be Classified as Class 9 General Unsecured
Claims Rather than as Class 6 Asbestos PI Claims.

|  *Pre-Trial Brief Citation* | *Corresponding*<br>*Trial Record Citation* |
|---|---|
| D.I. 20872, §§ 8.81, 8.83 ……………… | Ex. PP 277.01(Rev), §§ 8.81, 8.83 |

**B.    This Court Lacks Subject Matter Jurisdiction to
Enjoin OneBeacon's and Seaton's Contract Claims
Against Non-Debtors Fresenius and Sealed Air.**

(*See* Phase II Trial Brief, 20-23)

|  *Pre-Trial Brief Citation* | *Corresponding*<br>*Trial Record Citation* |
|---|---|
| Ex. "15" at 118-20 …………………… | Finke Dep. (May 13, 2009) 118-20[12] |
| Ex. "15" at 120-21 …………………… | Finke Dep. (May 13, 2009) 118-20 |

**C.    The Proposed TAC Members Are Burdened By Irreconcilable
Conflicts of Interest and Should Not Be Approved By The Court.**

(*See* Phase II Trial Brief, 25-32)

1.    The Governance Structure of the Trust.

|  *Pre-Trial Brief Citation* | *Corresponding*<br>*Trial Record Citation* |
|---|---|
| D.I. 20874, Ex. "2" thereto, § 1.1 …….... | Ex. PP 277.02(Rev), § 1.1 |
| Ex. "16" at 76-80 ……………………… | Austern Dep. (May 15, 2009), 76-80 |
| D.I. 20874, Ex. "2" thereto …………… | Ex. PP 277.02(Rev) |
| D.I. 20874, Ex. "2" thereto, at 43-50 ….. | Ex. PP 277.02(Rev), § 7.6 |
| D.I. 20874, Ex. "2" thereto, at § 5.2 …… | Ex. PP 277.02(Rev), § 5.2 |
| D.I. 20874, Ex. "2" thereto, at § 2.2(e),<br>    Ex. "4" thereto ………………… | Ex. PP 277.02(Rev), § 2.2(e) |
|     ………………… | Ex. PP 277.04(Rev) |
| D.I. 20874, Ex. "2" thereto at § 2.2(f)<br>    Ex. "4" thereto ………………… | Ex. PP 277.02(Rev), § 2.2(f) |
|     ………………… | Ex. PP 277.04(Rev) |
| D.I. 20874, Ex. "2" thereto, at §§ 2.2(f)(ix), | |

---

[12] The Plan Proponents have various objections pending to the deposition designations submitted by OneBeacon and Seaton.

|  |  |
|---|---|
| 4.2(c), and 4.3(a) ……………… | Ex. PP 277.02(Rev), §§ 2.2(f)(ix), 4.2(c), and 4.3(a) |
| D.I. 20872, §§ 8.81, 8.83 ……………… | Ex. PP 277.01(Rev), §§ 8.81, 8.83 |

In addition to incorporating the TAC conflict of interest argument from their earlier filed Phase II Trial Brief, OneBeacon and Seaton also join in that portion of the Phase II Post-Trial Brief for the CNA Companies that addresses the TAC's conflicts, including those portions of the evidentiary record cited therein.

### 2.    The Selection of the TAC Members and Their Dual Role.

| *Pre-Trial Brief Citation* | *Trial Record Citation* |
|---|---|
| D.I. 20872, § 7.2.6 …………………….... | Ex. PP 277.01(Rev), § 7.2.6 |
| D.I. 20873 No. at 53 …………………... | Ex. PP 276(Rev), 53 |
| Ex. "17" at 121-25 …………………….. | Lockwood Dep. (May 1, 2009) 121-25 |
| *Id.* at 124-25 …………………………… | Lockwood Dep. (May 1, 2009) 124-25 |
| Ex. "18" at 32 ………………………… | Ex. OS-34, RFA No. 41 |
| Ex. "17" at 199-200 …………………… | Lockwood Dep. (May 1, 2009) 199-200 |
| D.I. 12979, 20777, 20840, and 20895 … | Ex. OS-25; Ex. OS-26; |
| … | Ex. OS-24; Ex. OS-23 |
| D.I. 20874, Ex. "2" thereto, § 2.2(f)(iv) .. | Ex. PP 277.02(Rev), § 2.2(f)(iv) |

### 3.    The Dual Role of the TAC Members Creates an Irreconcilable Conflict of Interest That Will Permeate All Trust Affairs.

| *Pre-Trial Brief Citation* | *Trial Record Citation* |
|---|---|
| Ex. "17" at 213-24 ……………………… | Lockwood Dep. (May 1, 2009) 213-14 |
| Ex. "15" at 62-69 ……………………… | Finke Dep. (May 13, 2009) 62-69 |
| Ex. "19" ……………………………….. | None |
| D.I. 20872, § 11.9 …………………….... | Ex. PP 277.01(Rev), § 11.9 |
| Ex. "19" at ¶¶ 29-37 …………………… | None |
| D.I. 20874, Ex. "2" thereto at § 4.9 …… | Ex. PP 277.02(Rev), § 4.9 |
| Ex. "16" at 80 ………………………… | Austern Dep. (May 15, 2009) 80 |
| Ex. "19" ……………………………….. | None |

4.    OneBeacon and Seaton Are Holders of Class 6 Asbestos PI Claims
With Standing to Object to the TAC's Conflicts of interest.

| *Pre-Trial Brief Citation* | *Trial Record Citation* |
|---|---|
| Ex. "20" (Unpublished Opinion) ……... | None |

**D.    The Plan Does Not Comply With § 524(g)'s Requirements.**

(*See* Phase II Trial Brief, 32-37)

| *Pre-Trial Brief Citation* | *Trial Record Citation* |
|---|---|
| Ex. "17" at 126-27 …………………… | Lockwood Dep. (May 1, 2009) 126-27 |
| Ex. "21" (Cong. Rec. Excerpt) ………. | None |
| Ex. "22" (Cong. Rec. Excerpt) ………. | None |
| Ex. "23" (Cong. Rec. Excerpt) ………. | None |
| D.I. 20874, Ex. "24" thereto, at 3) ……. | Ex. PP 277.24, 3 |
| (*Id.* at 2) ……………………………… | Ex. PP 277.24, 2 |
| Ex. "15" at 24-26, Ex. "3" thereto ……. | Finke Dep. (May 13, 2009) 24-26 |
| D.I. 20874, Ex. "11" thereto, at 12-13 .. | Ex. PP 277.11, 12-13 |
| D.I. 20874, Exs. "2" and "3" thereto … | Ex. PP 277.02(Rev); |
| … | Ex. PP 277.02(Rev) |
| D.I. 20874, Ex. "26" thereto ………... | Ex. PP 277.26(Rev) |
| D.I. 20872, § 7.7(j) …………………. | Ex. PP 277.01(Rev), § 7.7(j) |
| Ex. "17" at 642-44 ………………….. | Lockwood Dep. (May 4, 2009) 642-44 |

## V.    CONCLUSION

Collectively, OneBeacon and Seaton paid the Debtors, Fresenius, and Sealed Air nearly $185 million pursuant to various settlement agreements to resolve OneBeacon's and Seaton's insurance coverage obligations.  In exchange, the Debtors, Fresenius, and Sealed Air agreed to defend and, if necessary, indemnify OneBeacon and Seaton against, *inter alia*, coverage claims asserted by third parties with respect to the insurance policies settled under those agreements.  In addition, in the March 1997 Unigard Agreement, the only one without an indemnity provision, the Debtors, Fresenius, and Sealed Air represented that they were unaware of any contemplated coverage claims against the

Unigard Policies by any former Grace subsidiaries.  That representation, Seaton asserts, was false when the Debtors, Fresenius, and Sealed Air made it.

At Phase II of the Confirmation Hearing, OneBeacon and Seaton established that they have been targeted by Kaneb and Scotts, and possibly others, for coverage under various settled CU Policies and Unigard Policies respectively.  They also demonstrated how those third-party coverage claims have triggered OneBeacon's and Seaton's asserted indemnity claims against both the Debtors and non-debtors Fresenius and Sealed Air.  And, they have demonstrated how the Plan adversely and improperly impacts these claims.  Specifically, Seaton's Kaneb-related claims against non-debtors Fresenius and Sealed Air are barred by the Plan's illegal § 105(a) Successor Claims Injunction and its illegal non-consensual third-party releases (*i.e.*, §§ 7.13 and 8.8.7).  OneBeacon's and Seaton's Scotts-related claims against Fresenius are illegally enjoined by the Asbestos PI Channeling Injunction, which exceeds the permissible bounds of Bankruptcy Code § 524(g).  Those claims also appear to be barred by §§ 7.13 and 8.8.7 of the Plan, and possibly the Successor Claims Injunction, in violation of the Third Circuit's *Combustion Eng'g* decision.  Beyond those illegal Plan features, OneBeacon and Seaton have shown that their claims against the Debtors are improperly placed in Class 6, which is impaired, as opposed to Class 9, which is not.  In addition, they have established that their Class 6 claims are channeled to the Trust, which has a TAC that is burdened by irreconcilable conflicts of interest.  And, finally, they have also demonstrated that the Trust fails to satisfy the strict funding requirements of § 524(g).

In short, the Plan is illegal and this Court must deny confirmation.


Dated:  November 2, 2009                    Respectfully submitted,

                                            /s/ David P. Primack
                                            _____
                                            Warren T. Pratt (4334)
                                            David P. Primack (4449)
                                            DRINKER BIDDLE & REATH LLP
                                            1100 N. Market Street, Suite 1000
                                            Wilmington, DE  19801-1254
                                            Telephone:  302-467-4200


                                            Michael F. Brown
                                            Jeffrey M. Boerger
                                            DRINKER BIDDLE & REATH LLP
                                            One Logan Square
                                            Philadelphia, PA  19103-6996
                                            Telephone:  215-988-2700


                                            Counsel for Creditors
                                            OneBeacon America Insurance
                                            Company and Seaton Insurance Company