**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

**HARTFORD'S POST-TRIAL BRIEF IN SUPPORT OF OBJECTIONS TO
CONFIRMATION OF FIRST AMENDED JOINT PLAN OF REORGANIZATION**

Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and New England Reinsurance Corporation (collectively, "Hartford") submit this post-trial brief in support of their objections to the confirmation of the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., *et al.*, the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders (the "Plan Proponents") Dated February 27, 2009 [Dkt. No. 20872] (the "Plan").[1]

## INTRODUCTION

Plan Proponents have designated Hartford's settlement with W.R. Grace (the "Hartford Settlement") an "Asbestos Insurance Reimbursement Agreement" within the meaning of the Plan. Section 7.2.2(d)(iv) of the Plan provides that any payment by the Asbestos PI Trust[2] of any Asbestos PI Claim under the Asbestos PI TPD will be deemed to constitute a settlement and payment "within the meaning of, *and in full compliance with,* each Asbestos Insurance Reimbursement Agreement." Plan, §7.2.2(d)(iv)(emphasis added). This provision purports to

---

[1] Following the submission of pre-trial briefs, Plan Proponents have submitted certain modifications to the Plan. Those modifications are not relevant to Hartford's objections to the Plan. *See* Notice of Second Set of Modifications to Joint Plan of Reorganization [Dkt. No. 23474].

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Plan.

grant to Plan Proponents a declaratory judgment that could be construed as eliminating any potential defenses that Hartford may have to the Trust's requests for reimbursement for any payment ever made by the Trust for Asbestos PI Claims. In its Trial Brief in Support of Objections to Confirmation of First Amended Joint Plan of Reorganization [Dkt. No. 22431] ("Trial Br."), Hartford set forth well-established case law establishing that the Bankruptcy Court does not have the power to grant the relief the Plan Proponents seek in the Plan because the request is procedurally defective, in that such relief may not be granted in the context of plan confirmation (Trial Br. at 5-7) and the bankruptcy court has no jurisdiction to issue a final determination on what is plainly a state-law contract dispute (*Id.* at 8), and substantively defective because bankruptcy law does not permit the court to unilaterally modify a debtor's contractual rights and obligations. *Id.* at 9-11.

In their Trial Brief, Plan Proponents did not challenge this well-established case law, but instead, ignoring the plain language of their own Plan, simply deny the Plan's potential effects on Hartford's (and other insurers') contractual rights. *See* Plan Proponents' Consolidated Phase II Brief Regarding Insurance Issues in Support of Confirmation of Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Dkt. No. 22728] ("PP Trial Brief"), at 23-31. Thus, Plan Proponents (1) argue, in the face of the Plan's plain language to the contrary, that Section 7.2.2(d)(iv) only voids those contractual defenses that interfere with the effective transfer of rights under the Asbestos Reinsurance Agreements, (2) deny, again in the face of the Plan's plain language, that Section 7.2.2(d)(iv) constitutes a declaratory judgment addressed by Section 7001(9), and (3) completely sidesteps the fact that the issue addressed by Section 7.2.2(d)(iv) — *i.e.* whether or not future payments by the Trust will be "in full compliance with" each Asbestos Insurance Agreement — is plainly a state law, non-core issue on which the bankruptcy court

cannot make a final determination.  *Id.* at 23-24.  Plan Proponents' arguments fail on each of these points.

I.    **Section 7.2.2(d)(iv) of the Plan Could Be Read to Void All Potential Defenses to Payment Under the Asbestos Insurance Reimbursement Agreements**

Plan Proponents' primary argument in response to Hartford's and other insurers' objections that Section 7.2.2(d)(iv) of the Plan can be read to vitiate their contractual defenses under the Asbestos Insurance Reimbursement Agreements is to argue that Section 7.2.2(d)(iv) "merely makes clear that the Asbestos PI Trust is the successor to the Debtors with respect to the Asbestos Insurance Reimbursement Agreements, and that payments by the Asbestos PI Trust under the TDPs therefore must be accorded the same status as payments by the pre-petition Debtors with respect to the Asbestos Insurance Reimbursement Agreements."  PP Trial Br. at 24.  Plan Proponents argue that the provision is appropriate because, without it, the transfer of rights under Asbestos Insurance Reimbursement Agreements may not be effective.[3]  *Id.*  Section 7.2.2(d)(iv), however, goes far beyond ensuring the effectiveness of the transfer of any rights under the Agreements.

Plan Proponents' argument ignores the plain language of Section 7.2.2(d)(iv).  Section 7.2.2(d)(iv) states not only that the Asbestos PI Trust's payment of an Asbestos PI Claim under

---

[3]    Plan Proponents suggest that the Plan may override any provisions in the Asbestos Insurance Reimbursements Agreements that interfere with the transfer of rights under the Agreement because of "the federal preemptive law . . . in Sections 1123(a)(5) and 524(g)," and are "authorized by Section 1123(b)(3)(B)."  PP Trial Br. at 24.  That argument is wrong even to the extent that the Plan seeks to override provisions in the Agreements that actually limit the assignment of the Agreements.  There is nothing in these or any other provisions of the Bankruptcy Code that provide for the preemption of such contractual provisions.  To the extent that Plan Proponents are also now arguing that Sections 1123(a)(5) and 524(g) preempt contractual defenses that have nothing to do with the transfer or assignment of rights under an agreement, i.e. that these provisions of the Bankruptcy Code effectively allow the preemption of any contractual provision that the Debtor or its assignee may find inconvenient, Hartford objects to that argument.  That there is no preemption under these sections of the Bankruptcy Code is even clearer when the argument is applied to contractual terms that do not relate in any way to the assignment of the contract.

Plan Proponents also argue that Section 524(e) "further demonstrates the necessity of Section 7.2.2(d)(iv) of the Plan to prevent Insurance Companies from attempting to rely on Grace's bankruptcy and resulting transfer to the Asbestos PI Trust to eliminate their insurance obligations."  *Id.* at 25-26.  But section 524(e) says only that the discharge of a debt of a debtor does not affect the liability of any other entity on that debt.  It does not speak to the transfer of contractual rights at all, and it certainly does not authorize the bankruptcy court to *increase* the potential liability of a contracting party by eliminating its contractual defenses.

the Asbestos PI TDP "shall be deemed to constitute settlement and payment of such claim by or on behalf of the Debtors or Non-Debtor Affiliates within the meaning of" each Asbestos Insurance Reimbursement Agreement—language which at least arguably could be said to address the effectiveness of the transfer of rights under the Agreements—but it also says—in language that is clear but that Plan Proponents would have this Court ignore—that all such payments shall be deemed to be "in full compliance with" each Asbestos Insurance Reimbursement Agreement. Plan, §7.2.2(d)(iv). That provision, which can be construed as eliminating any defense that Hartford may have under the Hartford Agreement to any request by the Trust for reimbursement of any payment under the Asbestos PI TDP, is not even arguably limited to ensure the effective transfer of the Hartford Agreement, and it is not necessary to achieve that end. What the provision does is to wipe away Hartford's contractual rights and purport to give the Trust greater rights under the Hartford Agreement than Debtors themselves had. The Bankruptcy Code does not permit this. *See* Trial Br. at 9-10 (citing cases holding that bankruptcy does not enhance debtor's rights under its contracts).

That Section 7.2.2(d)(iv) is intended to do more than just ensure the effective transfer of the Asbestos Insurance Reimbursement Agreements is also evidenced by the lack of any language in the Plan preserving insurers' defenses under the Asbestos Insurance Reimbursement Agreements. While the Plan contains specific provisions preserving coverage defenses under insurance policies and other insurance-related agreements, Asbestos Insurance Reimbursement Agreements are specifically excluded from those provisions. Thus, Section 7.15(f) of the Plan specifically preserves the defenses of insurers under Asbestos Insurance Policies, Asbestos Insurance Settlement Agreements, and Asbestos-in-Place Insurance Settlement Agreements, but it contains no provision preserving insurers' defenses under Asbestos Insurance Reimbursement

4

Agreements. There is no rational explanation for why Asbestos Insurance Reimbursement Agreements should be singled out and treated differently than any other type of insurer contract with respect to the preservation of defenses. Thus, although Plan Proponents insist that section 7.2.2(d)(iv) would eliminate only defenses that would interfere with the transfer of rights under the Asbestos Insurance Reimbursement Agreements, they have very carefully and deliberately chosen not to include any provisions that would make that clear.

**II.     Section 7.2.2(d)(iv) Constitutes a Declaration Under Rule 7001(1) and (9) That Cannot Be Issued Except Through an Adversary Proceeding**

Section 7.2.2(d)(iv) clearly states that all payments for Asbestos PI Claims made by the Asbestos PI Trust under the Asbestos PI TDPs will be deemed to be "in full compliance with" each Asbestos Insurance Reimbursement Agreement. With this provision, Plan Proponents seek to ensure the Trust's ability to collect from the insurers by obtaining a declaration that any defenses insurers may have to the Trust's demands for reimbursement simply do not apply. This constitutes a declaratory judgment relating to a proceeding to recover money. As such, it clearly falls within Rule 7001(9). *See, e.g., In re Harry C. Partridge, Jr. & Sons, Inc.* 43 B.R. 669, 672 (Bankr. S.D.N.Y. 1984) ("An action for breach of contract constitutes an adversary proceeding which must be commenced by a summons and complaint because such action is designed to recover money or property within the meaning of Bankruptcy Rule 7001(1). An action to obtain a declaratory judgment relating to such a contract dispute is expressly delineated in Bankruptcy Rule 7001(9) as an adversary proceeding, which also must be commenced by a summons and complaint pursuant to Bankruptcy Rules 7003 and 7004."). *See also In re Pyramid Energy, Ltd.*, 160 B.R. 586, 592 n.7 (Bankr. S.D. Ill. 1993) (same).[4]

---

[4]     Plan Proponents suggest that because the Trust has not yet paid any claims, "by definition it cannot be seeking 'recovery' of money or property with respect to claims it may pay in the future." PP Trial Br. at 30. But Hartford does not argue that Plan Proponents are seeking a money judgment; rather, what Plan Proponents are seeking is a declaratory judgment relating to the recovery of money, which falls within clause (9) of Rule 7001.

The Third Circuit has made clear that where "the [Bankruptcy] Rules require an adversary proceeding—which entails a fundamentally different, and heightened, level of procedural protections—to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one." In *SLW Capital, LLC v. Mansaray-Ruffin* (*In re Mansaray-Ruffin*), 530 F.3d 230, 242 (3d Cir. 2008). Relief of the nature set forth in Section 7001 cannot be achieved by placing it in a plan, *id.* at 236, and this is true even where the affected party had notice of the plan and an opportunity to object. *Id.* at 233, 237. The Plan Proponents' only response to this clear Third Circuit law is to argue that *In re Mansaray-Ruffin* involved a different clause of Rule 7001. PP Trial Brief at 30 n.31. But the Third Circuit's opinion does not rest on that distinction and its holdings as to the mandatory nature of Rule 7001 are addressed to the Rule as a whole, and not to any particular clause of the Rule. The Court's analysis in *In re Mansaray-Ruffin* with respect to Rule 7001 applies with equal force here.

**III.    The Declaration Plan Proponents Seek is Beyond the Court's Jurisdiction as it is a Non-Core Matter**

In response to Hartford's argument that the declaration that Plan Proponents seeks is, in addition to being sought in an improper procedural context, also beyond the Court's power to issue, Plan Proponents argue that "the issue presented is whether Section 7.2.2(d)(iv) is authorized by the Bankruptcy Code, or, conversely, whether its operation gives the Insurance Companies that are parties to Asbestos Reimbursement Agreements a valid objection to confirmation. This is clearly a core issue." PP Trial Br. at 26. Hartford does not disagree that whether Section 7.2.2(d)(iv) is authorized by the Bankruptcy Code clearly relates to Plan Confirmation and is a core issue. But this argument completely misses the point. In order to determine whether Section 7.2.2(d)(iv) is proper, the Court must determine whether Plan Proponents are entitled to the declaratory relief set forth in that section, i.e., whether the Trust's

payments will be in "full compliance" with the Asbestos Insurance Reimbursement Agreements. That issue is clearly a state law contract issue. It invokes no substantive rights under title 11 and could just as well have arisen outside the context of bankruptcy. Thus, it is a non-core issue on which this Court does not have the authority to issue a final determination. That the Hartford Settlement and the other Asbestos Insurance Reimbursement Agreements are property of the estate does not, as Plan Proponents suggest (PP Trial Brief at 27), change this conclusion; if it did, every single contract dispute in which a debtor was involved would be a core proceeding, and that is clearly not the law. *See Beard v. Braunstein*, 914 F.2d 434, 444-45 (3d. Cir. 1990) (finding "garden variety" contract action for unpaid rents a "non-core" matter); *In re Amatex Corp.*, 107 B.R. 856, 863 (E.D. Pa. 1989) (debtor's adversary proceeding against insurer seeking declaratory judgment of coverage for asbestos-related personal injury claims was a "non-core" proceeding), *aff'd mem.*, 908 F.2d 961 (3d Cir. 1990); *In re Lawrence Group, Inc.,* 285 B.R. 784, 788 (N.D.N.Y. 2002) (contracts claims are not rendered core simply because they involve property of the estate or because recovery would augment assets of the estate).

## CONCLUSION

For the reasons stated above and in Hartford's Trial Brief, the Court should deny confirmation of the Plan.

Respectfully submitted,

 /s/ Michael Yurkewicz
Michael Yurkewicz
**KLEHR, HARRISON, HARVEY
  BRANZBURG AND ELLERS LLP**
919 Market St., Suite 1000
Wilmington, DE  19801
Telephone:  302-426-1189
Facsimile:  302-426-9193

and

7

          Craig Goldblatt
          Nancy L. Manzer
          **WILMER CUTLER PICKERING**
           **HALE AND DORR LLP**
          1875 Pennsylvania Avenue, N.W.
         Washington, DC 20006
         Telephone: 202-663-6000
         Facsimile: 202-663-6363

         William J. Bowman
         James P. Ruggeri
         Edward B. Parks, II
         **HOGAN & HARTSON, L.L.P.**
         555 Thirteenth Street, N.W.
         Washington, DC 20004
         Telephone: 202-637-5600
         Facsimile: 202-637-5910

         *Counsel for Hartford Accident and Indemnity*
         *Company, First State Insurance Company, Twin*
         *City Fire Insurance Company, and New England*
         *Reinsurance Corporation*

Dated: November 2, 2009