**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Case No. 01-1139 (JKF) |
| W.R. GRACE & CO., *et al.*, | ) Jointly Administered |
| | ) |
| Debtors. | ) **Related to Docket Nos. 20872, 21783 and 22426** |

**MARYLAND CASUALTY COMPANY'S OPENING POST-TRIAL BRIEF
IN SUPPORT OF ITS PHASE II OBJECTIONS TO FIRST AMENDED JOINT
PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY
CODE OF W.R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF
ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE
CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE
OF EQUITY SECURITY HOLDERS DATED AS OF FEBRUARY 27, 2009**

Jeffrey C. Wisler (#2795)
Marc J. Phillips (#4445)
Kelly M. Conlan (#4786)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE  19899
(302) 658-9141 Telephone
(302) 658-0380 Facsimile

OF COUNSEL:

Edward J. Longosz, II
Gabriella Cellarosi
ECKERT SEAMANS CHERIN &
    MELLOTT, LLC
1747 Pennsylvania Avenue, N.W.
Suite 1200
Washington, DC  20006
(202) 659-6600 Telephone
(202) 659-6699 Facsimile

Richard A. Ifft
Karalee C. Morell
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
(202) 719-7170 Telephone
(202) 719-7049 Facsimile

*Attorneys for Maryland Casualty
Company*

Dated: November 2, 2009

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ......................... 1

SUMMARY OF ARGUMENT ................................................................. 3

ARGUMENT .................................................................................. 4

    I.     MCC is Fully Protected Under the First Amended Plan ........................... 4

          A.     MCC Argument ........................................................... 4

          B.     Proposed Findings of Fact and Corresponding References to the Record ...................................................... 4

          C.     Proposed Conclusions of Law ....................................... 8

    II.    To the Extent That MCC is Not Fully Protected Under the First Amended Plan, the First Amended Plan Mis-Classifies the MCC Claims ................................................................. 9

          A.     MCC Argument ........................................................... 9

          B.     Proposed Findings of Fact and Corresponding References to the Record ...................................................... 10

          C.     Proposed Conclusion of Law ....................................... 11

    III.   First Amended Plan Does Not Meet the Fair and Equitable Requirements of the Bankruptcy Code .................................... 11

          A.     MCC Argument ........................................................... 11

          B.     Proposed Findings of Fact and Corresponding References to the Record ...................................................... 11

          C.     Proposed Conclusions of Law ....................................... 12

    IV.   First Amended Plan Unfairly Discriminates Against the MCC Claims ................................................................. 13

          A.     MCC Argument ........................................................... 13

B.      Proposed Finding of Fact and Corresponding Reference
        to the Record ...................................................................................... 13

C.      Proposed Conclusions of Law ............................................................. 13

V.      First Amended Plan Contains Improper Exculpation and Release
        Provisions ...................................................................................................... 13

A.      MCC Argument ..................................................................................... 13

B.      Proposed Findings of Fact and Corresponding References
        to the Record ........................................................................................ 14

C.      Proposed Conclusions of Law ............................................................. 14

VI.     The Objections to MCC Exhibits and Designations are Without
        Merit and Should Be Overruled .................................................................... 14

A.      MCC Exhibits 4 through 11 .................................................................. 15

B.      Designation of Lockwood Deposition Testimony ....................... 16

VII.    Reservation of Rights and Joinder .......................................................... 16

CONCLUSION ........................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001) ...................... 14

*In re Zenith Elecs. Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999) ........................................ 14

**Statutes**

11 U.S.C. § 1122 .................................................................................................... 9, 13

11 U.S.C. § 1123(a)(4) ........................................................................................... 12, 13

11 U.S.C. § 1129 ........................................................................................................ 3

11 U.S.C. § 1129(a)(3) ............................................................................................... 12

11 U.S.C. § 1129(b)(2)(B)(ii) ..................................................................................... 12

11 U.S.C. § 502(e)(1)(B) ............................................................................................ 13

11 U.S.C. § 524(g) ................................................................................................... 4, 8

**Rules**

Fed. R. Civ. P. 30(b)(6) ............................................................................................. 16

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

The above-captioned debtors ("Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware ("Court") on April 2, 2001.

On or about February 27, 2009, Debtors filed the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al.*, *the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders dated as of February 27, 2009* [D.I. 20872] ("First Amended Plan").

On or about May 20, 2009, Maryland Casualty Company ("MCC") filed *Maryland Casualty Company's Objection To First Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Of W.R. Grace & Co., et al., The Official Committee Of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants' Representative, And The Official Committee Of Equity Security Holders Dated As Of February 27, 2009* [D.I. 21783].  Subsequently, on July 13, 2009, MCC filed *Maryland Casualty Company's Brief In Support Of Its Phase II Objections To First Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Of W.R. Grace & Co., et al., The Official Committee Of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants' Representative, And The Official Committee Of Equity Security Holders Dated As Of February 27, 2009* [D.I. 22426] ("MCC Pre-Trial Brief").

On September 8-11, September 14-17, and October 13 and 14, 2009, this Court held an evidentiary hearing on "Phase II" of confirmation of the First Amended Plan

("Phase II Confirmation Hearing"). At the close of the Phase II Confirmation Hearing, the Court directed the parties to file "initial post-trial briefs," followed by reply post-trial briefs. The Court further directed that legal arguments made in the pre-trial briefs not be repeated. Therefore, MCC has omitted its legal arguments from this brief and hereby incorporates the MCC Pre-Trial Brief by reference.

## SUMMARY OF ARGUMENT

The First Amended Plan, if confirmed, will create the Asbestos PI Channeling Injunction[1] which will fully and permanently protect MCC from and against any and all Asbestos PI Claims, including, *inter alia*, any and all third party claims against MCC arising from or relating to the Debtors, their products or their operations.  However, to the extent that the Asbestos PI Channeling Injunction does not fully and permanently enjoin all such third party claims against MCC, the First Amended Plan mis-classifies MCC's claims and otherwise fails to comply with various confirmation requirements of section 1129 of the Bankruptcy Code and, therefore, cannot be confirmed without modifications that resolve MCC's objections thereto.

---

[1] Capitalized terms not defined herein have the meaning defined in the First Amended Plan.

## ARGUMENT

**I.    MCC is Fully Protected Under the First Amended Plan**

### A.    MCC Argument

MCC is a Settled Asbestos Insurance Company and is, under the First Amended Plan, fully and permanently protected by the Asbestos PI Channeling Injunction from any and all Asbestos PI Claims, including, *inter alia*, any and all third party claims against MCC arising from or relating to the Debtors, their products or their operations ("Third Party Claims").[2]  This protection is authorized by 11 U.S.C. § 524(g).[3]

MCC's position is fully supported by the record in this case.  No party, including the Libby Claimants, presented <u>any</u> evidence to the contrary during the Phase II Confirmation Hearing.  Accordingly, this Court can and should adopt the following proposed findings of fact.

### B.    Proposed Findings of Fact and Corresponding References to the Record

1.    Prior to 1973, MCC issued certain general liability insurance policies ("MCC Policies") to Debtors, which policies are listed in Exhibit 5 to *Exhibit Book* for the First Amended Plan ("Plan Exhibit 5").[4]

2.    Under separate settlement agreements ("MCC Settlement Agreements"), Debtors and MCC agreed to settle litigation between them regarding insurance coverage

---

[2] *See* MCC Pre-Trial Brief, § I.

[3] *Id.*

[4] *See*, Maryland Casualty Company Exhibit No. 3, *Phase II Hearing Declaration of Albert McComas,* ¶ 3 ("McComas Declaration, ¶ __"); Plan Proponents Exhibit No. 277.05.  All references to exhibits will hereinafter be "[abbreviation of party name] Ex. [exhibit number]".

provided by the MCC Policies for, *inter alia*, asbestos-related claims for which Debtors demanded coverage.[5]

3.      Pursuant to the MCC Settlement Agreements, MCC's obligations for the defense of and indemnification for asbestos-related claims under the MCC Policies are terminated.[6]

4.      The MCC Settlement Agreements obligated the Debtors to, among other things, indemnify and hold MCC harmless from and against all future liability, loss, cost, or expense arising from asbestos-related claims ("MCC Indemnity Rights"),[7] and those obligations are ongoing.[8]

5.      MCC filed separate proofs of claim in these cases against each of the Debtors, jointly and severally, asserting both common law and contract claims ("MCC Claims") for the MCC Indemnity Rights.[9]

6.      MCC is a Settled Asbestos Insurance Company that is identifiable from the terms of the Asbestos PI Channeling Injunction.[10]

---

[5] McComas Declaration, ¶ 4; MCC Ex. 1, *Agreement between W.R. Grace & Co. – Conn. And Maryland Casualty Company*, dated September 1, 1991; MCC Ex. 2, *ACM/Aggregate Claims Settlement Agreement between W.R. Grace & Co. and Maryland Casualty Company*, dated March 18, 1996; *see also*, Testimony of Jeffrey Posner, Transcript of September 11, 2009 Phase II Confirmation Hearing, pp. 319, 320 ("9/11/09 Tr. ___ (Posner)").

[6] McComas Declaration, ¶ 6.

[7] McComas Declaration, ¶ 7; MCC Settlement Agreements; 09/11/09 Tr. 321 (Posner).

[8] 09/11/09 Tr. 321 (Posner).

[9] *See* PP Ex. 349, MCC Proof of Claim; McComas Declaration, ¶ 8; *see also*, Testimony of Jay Hughes, Transcript of September 14, 2009 Phase II Confirmation Hearing, pp. 262, 263 ("9/14/09 Tr. ___ (Hughes)").

[10] *See*, PP Ex. 277.05, pp. 8, 9.

7.    MCC is alleged to be directly or indirectly liable for the conduct of, claims against and demands upon the Debtors arising by reason of MCC's previous provision of insurance to the Debtors.[11]

8.    MCC made substantial monetary payments to the Debtors,[12] the MCC Indemnity Rights received in exchange for those monetary payments will be channeled under the First Amended Plan to the Asbestos PI Trust, and a portion of the $3 Billion Debtors are contributing to the Asbestos PI Trust is being contributed on behalf of MCC, all of which provide substantial consideration and benefit to the Estate.[13]

---

[11] *See, e.g.*, 9/14/09 Tr. 261-63 (Hughes); Complaints filed by Libby Claimants against MCC, *e.g.* Montana Exs. 99, 117; *see also, Debtors' Sur-Reply to Carol Gerard's Reply in Support of her Motion to Clarify the Scope of, or in the alternative, to Modify the Preliminary Injunction*, dated March 15, 2002 (U.S. Bankruptcy Court, D. Del., Case No. 01-01139, Adv. Pro. No. 01-771, D.I. 92), MCC Ex. 4, p. 2: "Ms. Gerard's claims against Maryland relate to Grace's asbestos liabilities at the Libby Plant, which are covered by the Maryland Policies."

[12] McComas Declaration, ¶ 5; 9/11/09 Tr. 320 (Posner); Testimony of David Austern, Transcript of September 17, 2009 Phase II Confirmation Hearing, p. 64 ("9/17/09 Tr. ____ (Austern)").

[13] *See, e.g.* Testimony of Richard Finke, Transcript of September 14, 2009 Phase II Confirmation Hearing, pp. 182-83; 9/17/09 Tr. 64 (Austern); May 4, 2009, Deposition of Peter Van N. Lockwood, pp. 519-522 ("5/4/09 Lockwood Dep. Tr. __"): "The basis, which I take it which is what you are asking for, for Maryland Casualty being a protected party to this Plan is that in the past, Maryland Casualty Company has paid a lot of money to Grace and entered into a settlement agreement with Grace which releases that coverage and which Grace indemnifies it against claims.  As I testified, I believe, on Friday, Grace, as part of this deal, Grace has had two positions that it has taken that we have . . . accepted.  Number one is a claim for indemnity from a settled insurer based on claims against that insurer that are asbestos personal injury claims against or arising out of Grace is something that has to be channeled to the Trust because it fits within the definition of an asbestos personal injury claim under 524(g), and that in order that Grace be protected from such indemnity claims, the roughly $3 billion that Grace and various related parties are paying to this Plan is, in part, on behalf of those settled insurers…. [T]he benefit to the Grace Estate is that it eliminates potential claims by Maryland Casualty Company against the Debtor and its Estate;" *see also,* May 1, 2009, Deposition of Peter Van N. Lockwood, pp. 131-32 ("5/1/09 Lockwood Dep. Tr.___"):

Q. ". . . what benefits are being provided by or on behalf of settled asbestos insurance companies listed on Exhibit - 5?"

A. "It is the position of the ACC that Grace is paying close to $3 billion of value to the Trust on behalf of not only itself but . . . settled asbestos insurers. [T]the purpose of putting settled asbestos insurers in here is not to provide a gratuitous

9.    Claims against MCC raised or asserted by the Libby Claimants arising from or relating to Debtors, their products and/or their operations, including, *inter alia*, all alleged "direct" and "independent" claims, and all claims asserted in Complaints filed in Baltimore City, Maryland, styled *Carol Gerard v. W.R. Grace and Maryland Casualty Company*, Case No. X-00-001554,[14] and in Lewis and Clark County, Montana, styled *Schull et al., v. State of Montana and Maryland Casualty Company*, Case No. CDV-2001-704,[15] and *Alfred v. Pennock v. Maryland Casualty Company*, Case No. CDV 2002-233,[16] and (collectively "Libby Claims"), are not "independent" claims; they are derivative claims, and implicate the conduct, products and operations of the Debtors.[17]

---

[sic] asbestos insurers because we think they are nice folks.  Settled asbestos insurers, by definition, are insurers that have indemnity rights against Grace."

[14] *See* Exhibit C, *Exhibits A through C to the Motion for Reconsideration of Gerard, Pennock and Schull, et al.*, dated July 6, 2002 (U.S. Bankruptcy Court, D. Del. Case No. 01-01139, Adv. Pro. No. 01-771, D.I. 111) (complaint filed by Libby Claimants alleging, e.g., that MCC "encouraged, advised, aided, supported, assisted and abetted Grace whose asbestos products and asbestos dust were substantial contributing factors to the development of Gerard's mesothelioma," ¶ 42).

[15] *See* Montana Ex. 117 (complaint filed by Libby Claimants alleging, e.g., that MCC "encouraged, advised, aided, supported, assisted and abetted Grace in its dangerously substandard operation," ¶ 84).

[16] *See* Montana Ex. 99 (complaint filed by Libby Claimants alleging, e.g., that MCC "aided and abetted Grace's course of action," ¶ 37).

[17] *See* Transcript of Hearing held on August 26, 2002 (U.S. Bankruptcy Court, D. Del., Case No. 01-01139, D.I. 2670), MCC Ex. 5, p. 15: THE COURT: "Regardless of what the documentation says or doesn't say, the question is whether or not Maryland was a volunteer, or somehow or other a principal, as opposed to an agent, in undertaking some obligation.  Now, maybe I'm missing documents.  But I got I think two binders full that were submitted to me in Pittsburgh.  I read every word of those documents.  There is nothing in the documents that were sent to me that establishes that Maryland was acting as anything other at any time than as an agent for the Debtor.  Nothing."; *see also, e.g., Debtors' Sur-Reply to Carol Gerard's Reply in Support of her Motion to Clairify the Scope of, or in the alternative, to Modify the Preliminary Injunction*, dated March 15, 2002 (U.S. Bankruptcy Court, D. Del. Case No. 01-01139, Adv. Pro. No. 01-771, D.I. 92), MCC Ex. 4, p. 2: "Indeed, Ms. Gerard's alleged 'independent' claim against Maryland for negligence involves actions that generally only Grace, not Maryland, could have taken such as: providing facilities to prevent exposure to asbestos dust; controlling asbestos dust on Grace's premises; or exercising reasonable care in the operation of the Libby Plant. Maryland could not have taken these actions independently of Grace. . . . In fact, to the extent such actions were taken, they would have been performed at Grace's direction, with Grace determining and

10.     The initiation and/or prosecution of the Libby Claims, or any other Third Party Claims, will trigger the MCC Indemnity Rights and will result in the assertion of indemnity claims by MCC against Debtors under the MCC Settlement Agreements.[18]

In light of these facts, to which no contrary evidence was admitted, this Court can and should adopt the following proposed conclusions of law.

**C.      Proposed Conclusions of Law**

1.      MCC is a Settled Asbestos Insurance Company and is, under the First Amended Plan, fully and permanently protected by the Asbestos PI Channeling Injunction from any and all Asbestos PI Claims.[19]

2.      All Third Party Claims against MCC, including the Libby Claims, are Asbestos PI Claims.

3.      MCC is permitted to be protected by the Asbestos PI Channeling Injunction under 11 U.S.C. § 524(g) because, *inter alia*: (i) MCC is a third party who is

---

controlling the scope of Maryland's work."; 9/14/09 Tr. 260-263 (Hughes); *compare* 5/4/09 Lockwood Dep. Tr. 513-14: "a claim against an insurance company [that] has nothing to do with asbestos personal injury liability claims against Grace [is an] independent tort claim….that wouldn't be channeled to the [Asbestos PI] Trust"; *Id*. at 517: "[I]f somebody in Libby, Montana is run over by an issuer's truck on the way to work…[t]hat's an independent tort claim."

[18]*See, e.g*., 9/14/09 Tr. 260-263 (Hughes); PP Ex. 349, MCC Proof of Claim; *Brief of Appellees* [Debtors], dated March 3, 2003 (U.S. District Court, D. Del. C.A. No. 02-1549, D.I. 12 ), MCC Ex. 6, p. 10: "Any claims made by the Libby Plaintiffs against MCC trigger the release and contractual indemnity clause in the Settlement Agreement."; *Id*. at p. 11: "It is Grace's asbestos dust, Grace's dust control system and Grace's maintenance thereof that have allegedly caused the Libby Plaintiff's injuries."; *Id*. at p. 25: "Maryland's alleged liability is wholly derivative of the Libby Plaintiffs' claims against Grace and implicates the indemnification rights of Maryland under the [Settlement] Agreement."

[19] During the Phase II Confirmation Hearing, BNSF's objections to the scope of the Asbestos PI Channeling Injunction were resolved. *See* Statement of BNSF counsel, Transcript of September 16, 2009 Phase II Confirmation Hearing, p. 87. Additionally, Scotts withdrew its objections to the First Amended Plan prior to the Phase II Confirmation Hearing. *See*, D.I. 22735 and 23358.

identifiable from the terms of the Asbestos PI Channeling Injunction;[20] (ii) MCC is alleged to be directly or indirectly liable for the conduct of, claims against and demands upon the Debtors arising by reason of MCC's previous provision of insurance to the Debtors;[21] and (iii) adequate consideration has been and will be provided in exchange for such protection.[22]

## II.    To the Extent That MCC is Not Fully Protected Under the First Amended Plan, the First Amended Plan Mis-Classifies the MCC Claims

### A.    MCC Argument

To the extent that the Asbestos PI Channeling Injunction is deemed not to enjoin any and all Third Party Claims, including the Libby Claims, against MCC, the First Amended Plan mis-classifies the MCC Claims as solely Class 6 Claims in violation of 11 U.S.C. § 1122.[23]

Class 6 consists only of Asbestos PI Claims.[24]  Under the First Amended Plan, all Asbestos PI Claims are channeled to the Asbestos PI  Trust and enjoined by the Asbestos PI Channeling Injunction.[25]  As Asbestos PI Claims, Third Party Claims against MCC are likewise channeled and enjoined.[26]  Accordingly, any MCC Claims for indemnity arising

---

[20] *See* § I.B.6., *supra*.

[21] *See* § I.B.7., *supra*.

[22] *See* § I.B.8., *supra*.

[23] *See* MCC Pre-Trial Brief, § II.

[24] First Amended Plan, § 3.1.6(a), PP Ex. 277.01.

[25] First Amended Plan, § 3.1.6(c), 8.1.2, PP Ex. 277.01.

[26] *Id.*

from Third Party Claims[27] will also be channeled and enjoined.  Thus, so long as Third Party Claims (including Libby Claims) are Asbestos PI Claims, the MCC Claims are properly classified as Class 6 Claims.

However, if any Third Party Claims against MCC are found to <u>not</u> be Asbestos PI Claims, then any MCC Claims for indemnity arising from such claims will <u>not</u> be Asbestos PI Claims because they will <u>not</u> have arisen from an Asbestos PI Claim.[28] Therefore, those MCC Claims are not properly classified as Class 6 Claims, and must be treated at least as favorably as Class 9 Claims.[29]

**B.    Proposed Findings of Fact and Corresponding References to the Record**

1.    The MCC Settlement Agreements obligated the Debtors to, among other things, indemnify and hold MCC harmless from and against all future liability, loss, cost, or expense arising from asbestos-related claims,[30] and those obligations are ongoing.[31]

2.    MCC filed separate proofs of claim in these cases against each of the Debtors, jointly and severally, asserting both common law and contract claims for the MCC Indemnity Rights.[32]

---

[27] Such claims would never arise because the Third Party Claims are enjoined.

[28] 5/4/09 Lockwood Dep. Tr. 541-42: "[I]f a claim against a settled insurer were ruled not to be channeled to the Trust in the first instance, because it didn't fit within—because of one of two reasons: Either it didn't fit within the definition or, alternatively, even though it might be read to fit within the definition, it could not be under Section 524(g) so channeled, you just weren't legally permitted to do so, and the claim went forward, and an indemnity claim were to arise out of that claim, then it is the position of the ACC that that indemnity claim would not be a Class 6 claim, because, by definition, it didn't arise out of an asbestos personal injury claim.  It arose out of something that the court has decided since it wasn't channeled was, by definition, not an asbestos personal injury claim."

[29] *Id.*

[30] McComas Declaration, ¶ 7; MCC Settlement Agreements; 09/11/09 Tr. 321 (Posner).

[31] 09/11/09 Tr. 321 (Posner).

3.      MCC properly and timely filed its Disputed Classification Declaration and corresponding Provisional Ballots, electing partial Class 9 treatment.[33]

In light of these facts, to which no contrary evidence was admitted, this Court can and should adopt the following proposed conclusion of law, but only to the extent that the Asbestos PI Channeling Injunction does not enjoin any and all Third Party Claims, including the Libby Claims, against MCC.

### C.      Proposed Conclusion of Law

1.      The First Amended Plan mis-classifies the MCC Claims.

## III.    First Amended Plan Does Not Meet the Fair and Equitable Requirements of the Bankruptcy Code

### A.      MCC Argument

The First Amended Plan fails to provide fair and equitable treatment to the MCC Claims, and violates the absolute priority rule of the Bankruptcy Code.[34]

### B.      Proposed Findings of Fact and Corresponding References to the Record

1.      The WRG Trust Distribution Procedures ("TDPs")[35] add unreasonable expense, time and uncertainty to the claims process, and unfairly discriminate against Indemnified Insurer Claims.[36]

---

[32] *See* PP Ex. 349, MCC Proof of Claim; McComas Declaration, ¶ 8; *see also*, 9/14/09 Tr. 262-63 (Hughes).

[33] MCC Exs. 7, 8, 9, 10.

[34] *See* MCC Pre-Trial Brief, § III.

[35] Exhibit 4 to Exhibit Book to First Amended Plan, PP Ex. 277.04.

[36] *Compare, e.g,.* treatment of Pre-Petition Liquidated Claims under Section 5.2 of the TDPs to treatment of Indemnified Insurer Claims under Section 5.13 of the TDPs.

2.      Certain Indirect PI Trust Claims are placed in a less favorable position in the FIFO queue than claims filed by Direct Claimants (as defined in the TDPs).[37]

3.      The TDPs fail to clarify the payment amount and payout percentage that Indirect PI Trust Claims may receive.[38]

4.      The TDPs fail to clarify the procedures pursuant to which Indirect PI Trust Claims will be processed.[39]

5.      The First Amended Plan impairs the rights of holders of Class 6 Claims, but leaves unaltered the legal, equitable, and contractual rights of the holders of Class 9 Claims.[40]

6.      The First Amended Plan impairs the rights of holders of Class 6 Claims, but permits holders of the Debtors' equity to retain value.[41]

In light of these facts, to which no contrary evidence was admitted, this Court can and should adopt the following proposed conclusions of law.

**C.      Proposed Conclusions of Law**

The First Amended Plan fails to provide fair and equitable treatment to the MCC Claims in accordance with sections 1123(a)(4) and 1129(a)(3) of the Bankruptcy Code, and violates the absolute priority rule of 11 U.S.C. § 1129(b)(2)(B)(ii).

---

[37] *See* PP Ex. 277.04, TDPs (*e.g.*, Post-Effective Date Direct PI Claims are placed in the FIFO queue as of the date they are filed, while Insurance-Related TDP Claims and Indemnified Insurer TDP Claims are only placed in the FIFO queue after an agreement is reached with the Asbestos PI Trust as to the amount due or after and ADR award is made).

[38] *See generally*, PP Ex. 277.04.

[39] *Id.*

[40] *Compare* § 3.1.6(d) of First Amended Plan to § 3.1.9(f) of First Amended Plan.

[41] *Compare* § 3.1.6(d) of First Amended Plan to §§ 3.1.10 and 3.1.11 of First Amended Plan.

## IV.    First Amended Plan Unfairly Discriminates Against the MCC Claims

### A.    MCC Argument

The First Amended Plan, in conjunction with the Debtors' independent actions, unfairly discriminates against the MCC Claims.[42]

### B.    Proposed Finding of Fact and Corresponding Reference to the Record

Debtors have sought to disallow the MCC Claims pursuant to section 502(e)(1)(B) of the Bankruptcy Code.[43]

In light of this fact, to which no contrary evidence was admitted, this Court can and should adopt the following proposed conclusion of law.

### C.    Proposed Conclusions of Law

The First Amended Plan, in conjunction with the Debtors' independent actions, unfairly discriminates against the MCC Claims in violation of sections 1122 and 1123(a)(4) of the Bankruptcy Code. [44]

## V.    First Amended Plan Contains Improper Exculpation and Release Provisions

### A.    MCC Argument

Sections 8.8.7 and 11.9 of the First Amended Plan are impermissible under applicable law.[45]

---

[42] *See* MCC Pre-Trial Brief, § IV.

[43] *See Libby Claimants' Request For Judicial Notice* [D.I. 23521].

[44] 5/1/09 Lockwood Dep. Tr. 73-74:

> Q: Just so I understand you, asbestos PI claims then are not subject to 502(e) disallowance under the Plan; is that correct?
>
> A.: This is correct.  They are being sent to a Trust under 524(g).  And, in my legal view, how the 524(g) Trust handles those after confirmation is not a 502 allowance process.

**B.     Proposed Findings of Fact and Corresponding References to the Record**

1.      Section 8.8.7 of the First Amended Plan purports to trigger an unconditional release of a broad scope of claims against a broad set of entities and persons.[46]

2.      Section 11.9 of the First Amended Plan purports to immunize a broad range of entities and persons from a broad spectrum of liability.[47]

In light of these facts, to which no contrary evidence was admitted, this Court can and should adopt the following proposed conclusions of law.

**C.     Proposed Conclusions of Law**

1.      Plan Proponents have not met the *Zenith*[48] factors, and the releases triggered by Section 8.8.7 are not permissible under applicable law.

2.      Plan Proponents have not met the *Genesis*[49] factors, and the exculpation proposed by Section 11.9 is not permissible under applicable law.

**VI.    The Objections to MCC Exhibits and Designations are Without Merit and Should Be Overruled**

The Plan Proponents have objected to MCC Exhibits 4 through 11 on the grounds of hearsay and relevance.[50]    The Plan Proponents also objected to the designation of Peter

---

[45] *See* MCC Pre-Trial Brief, § V.

[46] First Amended Plan, § 8.8.7, PP Ex. 277.01.

[47] First Amended Plan, § 11.9, PP Ex. 277.01.

[48] *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999).

[49] *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 607-08 (Bankr. D. Del. 2001).

[50] *See Notice of Filing Chart of Additional Exhibits Not Admitted into Evidence for which Parties Seek Admission* [D.I. 23575], Attachment, pp. 8-10.

Lockwood's deposition testimony on various grounds.[51]   The Court directed that, as necessary, such objections be addressed in post-trial briefing.   Accordingly, MCC states as follows in support of its position that all these objections should be overruled.

### A.    MCC Exhibits 4 through 11

1.    MCC Exhibits 4[52] and 6[53] are pleadings filed by the Debtors.   Their contents are not hearsay because these are the Debtors' own admissions, all parties had an opportunity to challenge the statements therein, the contested matters in which they were filed have been fully adjudicated, and the courts relied on these statements in reaching their respective decisions.   The relevance of the cited statements is obvious: the Debtors have always acknowledged that it was <u>their</u> conduct and products that resulted in the assertion of the Libby Claims against MCC, clearly establishing that the Libby Claims are Asbestos PI Claims.[54]

2.    MCC Exhibits 5[55] and 11[56] are transcripts from hearings before this Court. MCC's use of these transcripts is currently limited to statements made by the Court in the context of adjudicating contested matters.   These statements are not hearsay, and are clearly relevant to the issues addressed therein, all of which relate to confirmation.

---

[51] *See Notice of Filing of Final Charts of Depositions and Other Prior Testimony Designations* [D.I. 23576], Attachment, Lockwood 5/4/2009 Deposition Designations, Objections and Responses (Maryland Casualty Company), pp. 1-5.

[52] Cited herein at §§ I.B.7, fn.7 and I.B.9, fn. 17, *supra.*

[53] Cited herein at § I.B.10, fn. 18, *supra.*

[54] *Compare*, Plan Proponents' Proffer for the admission of PP 255, 256, 259. *Notice of Filing Chart of Additional Exhibits Not Admitted into Evidence for which Parties Seek Admission* [D.I. 23575], Attachment, pp. 10-11.

[55] Cited herein at § I.B.9, fn. 17, *supra.*

[56] Not cited herein, but MCC reserves the right to cite portions thereof in support of its position.

3.    MCC Exhibits 7-10[57] are MCC's Ballots and Disputed Classification Declaration relating to its objection to classification.  These documents are not offered for the truth of matters therein, and are, therefore, not hearsay.  Further these documents are clearly relevant to the issue of the classification of MCC Claims because they demonstrate MCC's timely and proper election of Class 9 treatment.

### B.    Designation of Lockwood Deposition Testimony

As the Rule 30(b)(6) representative for the ACC testifying at a pre-confirmation deposition, Mr. Lockwood's designated testimony concerns the scope and operation of the Asbestos PI Channeling Injunction.[58]  This testimony is relevant to confirmation, is probative, and is necessary to complete the record of the Plan Confirmation Hearing. "Legal opinion" is not a valid evidentiary objection, and the Plan Proponents are estopped from raising this objection because Mr. Lockwood was the Rule 30(b)(6) designee of the ACC.

## VII.    Reservation of Rights and Joinder

MCC hereby reserves the right to amend and/or supplement this post-trial brief based upon citations to the record made by the Plan Proponents, the Libby Claimants, or any other parties in their post-trial briefs.  In addition, MCC hereby joins arguments and citations to the record made by other parties-in-interest in their post-trial briefs to the extent such arguments and citations are consistent with MCC's interests, and the positions set forth herein.

---

[57] Cited herein at § II.B.3, fn. 33.

[58] Cited herein at §§ I.B.8, fn. 13, II.A., fn. 28, 29, IV.C., fn. 44.

## CONCLUSION

For all of the forgoing reasons, MCC respectfully requests that the Court fully adopt the proposed findings of fact and conclusions of law set forth herein, and grant MCC such further and additional relief and the Court may deem just and proper.

Dated: November 2, 2009                    CONNOLLY BOVE LODGE & HUTZ LLP

/s/ Jeffrey C. Wisler
Jeffrey C. Wisler (#2795)
Marc J. Phillips (#4445)
Kelly M. Conlan (#4786)
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE  19899
(302) 658-9141 Telephone
(302) 658-0380 Facsimile

OF COUNSEL:

Edward J. Longosz, II
Gabriella Cellarosi
Eckert Seamans Cherin & Mellott, LLC
1747 Pennsylvania Avenue, N.W.
Suite 1200
Washington, DC  20006
(202) 659-6600 Telephone
(202) 659-6699 Facsimile

Richard A. Ifft
Karalee C. Morell
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
(202) 719-7170 Telephone
(202) 719-7049 Facsimile

*Attorneys for Maryland Casualty Company*

#726115