IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | x | Chapter 11 |
| | : | |
| W. R. GRACE & CO., et al., | : | Case No.  01-1139 (JKF) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | x | |

KANEB PIPE LINE OPERATING PARTNERSHIP, L.P. AND
SUPPORT TERMINAL SERVICES, INC.'S PHASE II POST-CONFIRMATION
HEARING OPENING BRIEF

Now come Kaneb Pipe Line Operating Partnership, L.P. ("Kaneb")[1] and Support

Terminal Services, Inc. ("STS")[2] [collectively, "Kaneb Objectors"] and file this, their Phase II

Post-Confirmation Hearing[3] Opening Brief ("Kaneb Brief") and state as follows:

I.
INTRODUCTION

The Kaneb Objectors entered into a pre petition contract with one of the future debtors,

Grace Energy Corporation ("GEC"), where the Kaneb Objectors purchased several entities from

GEC.  An issue arose as to responsibility for non asbestos environmental problems in connection

with the Otis Pipeline.  GEC filed a state court declaratory judgment action over the Otis

Pipeline issue against the Kaneb Objectors, and the Kaneb Objectors filed defenses and

counterclaims.  A judgment was entered and both sides appealed.  While the appeal was pending,

this bankruptcy case was filed. The Kaneb Objectors did not file a proof of claim with respect to

---

[1] Effective March 31, 2008, Kaneb changed its name to Nustar Pipeline Operating Partnership, L.P.
[2] Effective March 31, 2008, STS changed its name to Nustar Terminal Services, Inc.
[3] The Kaneb Brief concerns the "First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co. et.al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos P.I. Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of February 27, 2009" [01-01139 Dkt. 20872], the First Set of Modifications to Joint Plan of Reorganization dated September 4, 2009 [01-01139 Dkt. 23177], and the Second Set of Modifications to Joint Plan of Reorganization dated October 12, 2009 [01-01139 Dkt. 23474 Exhibit B] (collectively, the "Plan").

the Otis Pipeline issue, and the proof of claim that the Kaneb Objectors filed with respect to another non-asbestos environmental site, the Macon, Georgia site, was disallowed by default.

The Kaneb Objectors acknowledge that the bankruptcy may disallow its claims *vis a vis* the debtors, and discharge those same claims via a chapter 11 plan. However, such a chapter 11 plan may not discharge defenses (including recoupment and setoff rights) that exist in the state court litigation. The plan does not meet the requirements of Section 105(a) to grant non-asbestos related injunctions or releases in favor of non-debtors, especially on future claims. Furthermore, the plan may not extinguish or otherwise transfer the Kaneb Objectors' separate property rights in insurance policies as a separate insured without appropriate due process and procedural protections not present in this proceeding. Finally, the plan discharge does not prohibit a nominal post discharge suit against a debtor for the purpose of establishing the debtor's liability and recovering against any liability policies the debtor may have.

## II.
## REQUEST FOR JUDICIAL NOTICE

Whenever the Kaneb Brief makes reference to a docket numbered item in this case (such as 01-1139 Dkt. 0000), the Kaneb Objectors request that the Court take judicial notice of that item as a part of the record in this case.

## III.
## REFERENCES AND LEGEND

The Kaneb Objectors make reference to the following docket items in this bankruptcy case as filings by the Kaneb Objectors concerning to the Plan, incorporates those arguments made therein:

**TABLE 1: Kaneb Filings**

| Date | Dkt. No. | Description |
|---|---|---|
| 12/22/2008 | 20307 | Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc.'s Preliminary Objection to Confirmation of the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants' Representative, and The Official Committee of Equity Security Holders (related document(s) 20204 ) |
| 05/15/2009 | 21707 | Final Objection To Confirmation Of The "First Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Of W.R. Grace & Co., et. al., The Official Committee Of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants' Representative, And The Official Committee Of Equity Security Holders Dated February 27, 2009 |
| 07/13/2009 | 22417 | Kaneb Pipe Line Operating Partnership, L.P. And Support Terminal Services, Inc.'s Trial Brief In Support Of Their Objection To Confirmation Of The First Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Of W.R. Grace & Co., Et Al, The Official Committee Of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants' Representative, And The Official Committee Of Equity Security Holders |
| 07/20/2009 | 22530 | Kaneb Pipe Line Operating Partnership, L.P. And Support Terminal Services, Inc.'s Pretrial Submissions Pursuant to Order Regarding Phase II Pre-Trial Hearings |

The Kaneb Objectors rely principally on the following exhibits from the plan confirmation hearing:

**TABLE 2: Key Exhibits**

| Exhibit | Description | Comment |
|---|---|---|
| OS-40 | Motion of Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. for an Order Modifying the Automatic Stay dated January 16, 2009 (with exhibits **K01-K067**) [01-1139 Dkt. 20538] | Admitted per stipulation dated 9/16/2009 [01-01139 Dkt. 23266] |

| OS-41 | Motion of Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. for an Order Modifying the Automatic Stay, Macon, Georgia Sale dated February 25, 2009 [01-1139 Dkt. 20846] | Admitted per stipulation dated 9/16/2009 [01-01139 Dkt. 23266] |
|---|---|---|
| OS-44 | Supplemental Memorandum of Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. in Support of Motion for Order Modifying the Automatic Stay dated April 1, 2009 [01-1139 Dkt. 21262] **FILED UNDER SEAL** | Admitted per stipulation dated 9/16/2009 [01-01139 Dkt. 23266] |

The Kaneb Objectors also refer to the Appendix of Key Excerpts as follows:

**TABLE 3: Appendix of Key Excerpts**

| Item | Excerpt | Bates Numbers |
|---|---|---|
| APP1 | Second Set of Modifications to Joint Plan of Reorganization dated October 12, 2009 [01-01139 Dkt. 23474 Exhibit B] | APP1-000001-12 |
| APP2 | Disclosure Statement; 01-01139 Dkt. 20873 Section 2.1 | APP2-000001-3 |

**TABLE 4: Compendium of Authorities**

The Kaneb Objectors also refer to the Compendium of Authorities[4] as follows:

| Item | Description | Bates Numbers |
|---|---|---|
| AUTH1 | 11 U.S.C. § 1141 | AUTH1-000001-2 |
| AUTH2 | 11 U.S.C. § 1129 | AUTH2-000001-4 |
| AUTH3 | *Holywell Corp. v. Smith*, 503 U.S. 47 (1992) | AUTH3-00001-15 |
| AUTH4 | Restatement (Second) of Judgments § 36(2) | AUTH4-000001-9 |
| AUTH5 | *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003) | AUTH5-000001-27 |
| AUTH6 | *Cross Media Mktg. Corp. v. CAB Mktg. (In re Cross Media Mktg. Corp.)*, 367 B.R. 435, 447 | AUTH6-000001-30 |

---

[4] Due to its volume, paper copies of the Compendium is not being served on parties in interest. The Compendium may be accessed through PACER records in this bankruptcy, or paper copies may be obtained upon request by contacting the counsel named below.

| Item | Description | Bates Numbers |
|------|-------------|---------------|
| | (Bankr. S.D.N.Y. 2007) | |
| AUTH7 | 11 U.S.C. § 105 | AUTH7-000001-2 |
| AUTH8 | 11 U.S.C. § 101(5), (12) | AUTH8-000001-3 |
| AUTH9 | 11 U.S.C. § 524 | AUTH9-000001-10 |
| AUTH10 | *Megafoods Stores v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031 (3d Cir. 1995) | AUTH10-000001-8 |
| AUTH11 | *In re Black, 280 B.R. 680* (Bankr. N.D. Ala. 2001) | AUTH11-000001-11 |
| AUTH12 | *In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2004) | AUTH12-000001-62 |
| AUTH13 | *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936) | AUTH13-000001-10 |
| AUTH14 | *Saul, Ewing, Remick & Saul v. Provident Sav. Bank*, 190 B.R. 771 (D. Del. 1996) | AUTH14-000001-10 |
| AUTH15 | Fed. R. Bankr. P. 7001 | AUTH15-000001-2 |
| AUTH16 | *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230 (3d Cir. Pa. 2008) | AUTH16-000001-28 |
| AUTH17 | *In re Spaulding Composites Co., Inc.*, 207 B.R. 899 (9th Cir. BAP 1997) | AUTH17-000001-15 |
| AUTH18 | *In re Circle K Corp.*, 121 B.R. 257 (Bankr. D. Ariz. 1990) | AUTH18-000001-9 |
| AUTH19 | *In re Metropolitan Mortgage & Securities Co., Inc.*, 325 B.R. 851 (Bankr. E.D. Wash. 2005) | AUTH19-000001-10 |
| AUTH20 | *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th Cir. 1993) | AUTH20-000001-9 |
| AUTH21 | *In re Conston Inc.*, 181 B.R. 769, 773 (D. Del. 1995). | AUTH21-000001-19 |

## IV.
## BACKGROUND

In 1992-93, pursuant to the STS Agreement and Plan of Merger ("**Merger Agreement**"),
Kaneb[5] purchased from future debtor Grace Energy Corporation ("**GEC**"), several entities. OS-40, p. 000003; OS-40, p. 000097[K07].

In 1997, GEC filed the action styled *Grace Energy Corporation v. Kaneb Pipe Line Operating Partnership, L.P., et al.*, in the 191st District Court in Dallas County, Texas, cause No. 97-05135-J ("**Kaneb State Court Action**"). OS-40, p. 000004; OS-40, p. 000047[K01].

The Kaneb State Court Action concerned the responsibility for the Otis Pipeline,[6] and each parties' respective rights under the Merger Agreement. OS-40, p. 000002; OS-40, p. 000048[K01]; OS-40, p. 00059[K02].

In the Kaneb State Court Action, GEC sought declaratory and contractual monetary relief, and the Kaneb Objectors filed affirmative defenses and counterclaims. OS-40, p. 000055[K01]; OS-40, p. 000058[K02].

After a jury trial, on August 30, 2000, the trial court in the Kaneb State Court Action rendered an Amended Final Judgment. OS-40, p. 000074[K03].

Both the Kaneb Objectors and GEC have filed notices of appeal of the Amended Final Judgment from the State Court Action, initiating the appeal styled Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc., Appellants and Cross-Appellees v. Grace Energy Corporation, Appellee and Cross-Appellant in the Fifth Court of Appeals District, Dallas, Appeal No. 05-00-01592-CV ("**Kaneb Appeal**"). OS-40, p. 000078[K04]; OS-40, p. 000082[K05].

---

[5] Kaneb is called "**OLP**" in the Merger Agreement.
[6] It is alleged that the Otis Pipeline had environmental problems unrelated to asbestos. OS-40, p. 000004; OS-40, p. 000006; OS-40, p. 000165[K08].

The above-captioned W.R. Grace bankruptcy case was filed on April 2, 2001.

Due to the bankruptcy filing, the appeals have been suspended by the state court. <u>OS-40, p. 000085[K06]</u>.

Kaneb's proof of claim in this bankruptcy case in connection with the Macon, Georgia site was objected to and disallowed. 01-01139 Dkts. 5527; 6007. Kaneb currently has no allowed claim in the bankruptcy case.

On October 31, 2008, the United States Department of Justice ("**DOJ**") notified NuStar Energy L.P., ("**NuStar**"), the current owner of Kaneb and STS, of the DOJ's claim against Kaneb for cleanup expenses in connection with the Otis Pipeline. <u>OS-40, p. 000165[K08]</u>.

The Kaneb Objectors sought relief from the automatic stay to pursue the Kaneb Appeal, and also to pursue the Kaneb Objector's rights with respect to insurance coverage to compensate the Kaneb Objectors for losses in connection with the Otis Pipeline and another site, the Macon, Georgia site. <u>OS-40, p. 000020</u>; <u>OS-41, p. 000001</u>. Relief from stay was denied by the court, without prejudice. 01-01139 Dkt. 22373.

**V.**
**<u>ARGUMENT AND AUTHORITIES</u>[7]**

A.    <u>Issue 1: Kaneb Not Bound Beyond Section 1141(a)</u>

*The Kaneb Objectors contend that the Plan cannot bind the Kaneb Objectors in any capacity other than as the persons described in 11 U.S.C. § 1141(a). For example, the Kaneb Objectors are not bound by the Plan in their capacities as defendants in the Kaneb State Court Action, or Appellants on defensive matters in the Kaneb Appeal. The Kaneb Objectors do not consent to the Plan generally, and do not intend to be bound to the Plan under contractual principles. To the extent that the Plan attempts to bind the Kaneb Objectors in a fashion broader*

---

[7] The Issues set forth below are stated in the Pretrial Submissions at 01-01139 Dkt. 22530.

*than that allowed by 11 U.S.C. § 1141(a), the Plan does not comply with the applicable*

*provisions of Title 11.  11 U.S.C. § 1129(a)(1)* <u>AUTH2-000001</u>.

Section 1141(a) provides:

Except as provided in [inapplicable] subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a); <u>AUTH1-000001</u>.

The Kaneb Objectors are not (a) the debtor, (b) an entity issuing securities under the plan, (c) acquiring property under the plan, (d) equity security holders in the debtor, or (d) general partners in the debtor.   While the Kaneb Objectors might arguably be a creditor with a disallowed claim, the plan could bind the Kaneb Objectors, but only in their capacity as creditor *vis-a-vis* the debtors.  *Holywell Corp. v. Smith*, 503 U.S. 47, 58-59 (1992) <u>AUTH3-000013</u> (plan could bind the IRS in its capacity as a pre petition creditor, but not in its capacity as holder of a post confirmation claim).  The Kaneb Objectors do not dispute that, if the Kaneb Objectors had an allowed claim, such allowed claim would be subject to the treatment afforded to claims in the Plan, including a discharge.  Creditors have claims in bankruptcy; but only claims, and not other rights, are discharged.  *See Holywell Corp. v. Smith*, 503 U.S. 47, 58-59 <u>AUTH3-000013</u> (1992).  A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of *res judicata* in a subsequent action in which he appears in another capacity.  *See, e.g.*, Restatement (Second) of Judgments § 36(2) (1982) <u>AUTH4-000001</u>; *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003) <u>AUTH5-000011</u> (explaining the rule of differing capacities); *Cross Media Mktg. Corp. v. CAB Mktg. (In re Cross Media Mktg. Corp.)*, 367 B.R. 435, 447 (Bankr. S.D.N.Y. 2007) <u>AUTH6-000014</u> ("In the instant

case, the Plaintiff's chapter 11 plan cannot be considered a final judgment on the merits for Defendants because Defendants are not bound by the Plan. Defendants were not creditors or a party in interest in the chapter 11 case and therefore are not bound by it.")

Particularly troubling is Section 8.5 of the Plan, the Successor Claims Injunction.[8] This is an injunction pursuant to 11 U.S.C. § 105(a).[9] All Entities are enjoined.[10] Entities are defined as all natural persons, companies, and governments.[11] The definition of Entities is not limited to those persons who may be bound by a confirmed plan under 11 U.S.C. § 1141(a) AUTH1-000001, and the Plan attempts to bind Entities in capacities other than as described in 11 U.S.C. § 1141(a) AUTH1-000001; namely, in a capacity of potential claimant or litigant against numerous nondebtors.

What actions are being enjoined? Under the Successor Claims Injunction, Entities are enjoined from making Successor Claims.[12] One type of Successor Claim is an SA Successor Claim,[13] An SA Successor Claim is defined as an SA Claim.[14] The Plan definition of SA Claim refers to the definition in the Sealed Air Settlement.[15] An SA Claim can be direct or indirect, "derivative or otherwise."[16] SA Claims do not appear to be limited to a time period; SA Claims include those "now existing or hereafter arising" that could be asserted "now or in the future."[17]

---

[8] 01-01139 Dkt. 23474 Exhibit B (Part 3) Section 8.5, p. 102; APP1-000011.
[9] 01-01139 Dkt. 23474 Exhibit B (Part 3) Section 8.5, p. 102; APP1-000011.
[10] 01-01139 Dkt. 23474 Exhibit B (Part 3) Section 8.5.1., p. 102; APP1-000011.
[11] 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.105, p 24; APP1-000004.
[12] 01-01139 Dkt. 23474 Exhibit B Section 8.5.1., p. 102; APP1-000011.
[13] 01-01139 Dkt. 23474 Exhibit B Section 8.5.1., p. 102; APP1-000011.
[14] 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.205, p.38; APP1-000010.
[15] 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.182, p. 34; APP1-000007. The Sealed Air Settlement is defined at 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.196, p. 37; APP1-0000009. The Sealed Air Settlement is found at 01-01139 Dkt. 20874 at Exhibit 22.
[16] 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.182, p. 34; APP1-000007.
[17] 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.182, p. 34; APP1-000007.

An SA Claim includes rights to equitable remedies regardless of whether there is a right to payment involved.[18]

Another type of Successor Claim is a Grace-Related Claim.[19]   The Plan definition of Grace-Related Claims refers to the definition of Grace-Related Claim in the Fresenius Settlement.[20]   Grace-Related Claims are limited to the time period from the beginning of time until the time the Fresenius Payment is made.[21]   Grace-Related Claims include claims based upon or arising out of "the conduct or operations of any business or operations of any of Grace-Conn and its parents or subsidiaries at any time" (other than the NMC business), including claims based on "environmental law."[22]   Grace-Conn is W.R. Grace & Co.-Conn., a Connecticut corporation.[23]   According to the Debtors' Disclosure Statement, Grace-Conn owns substantially all of Grace's United States assets, properties, and rights directly or through direct or indirect U.S. and non-U.S. subsidiaries.[24]   Thus, according to the definition of Grace-Related Claims, any claim (with the exception of the NMC claims) related to the operations of any of the Grace companies, regardless of whether that Grace company is a debtor in bankruptcy, and regardless of any relation to asbestos, is enjoined pursuant to 11 U.S.C. § 105(a) AUTH7-000001.

Who are the beneficiaries of the Successor Claims Injunction?  The Successor Claims Injunction protects Asbestos Protected Parties.[25]   The Debtors and the Reorganized Debtors are

---

[18] 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.182, p. 34; APP1-000007.
[19] 01-001-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.182, p. 34; APP1-000007. 01-1139 Dkt. 23474 Exhibit B (Part 3) Section 8.5, p. 102; APP1-000011.
[20] 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.136, p. 28; APP1-000006.  The Fresenius Settlement is defined at 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.123, p. 26; APP1-000004.  The Fresenius Settlement is found at 01-01139 Dkt. 20874 at Exhibit 13.
[21] 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.136, p. 28; APP1-000006.
[22] 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.136., p.28; APP1-000006.
[23] 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.130, p. 27; APP1-000005.
[24] 01-01139 Dkt. 20873 Section 2.1 p. 15; APP2-000002.
[25] 01-01139 Dkt. 23474 Exhibit B (Part 3) Section 8.5.1., p. 102; APP1-000011.

among the Asbestos Protected Parties.[26] The Kaneb Objectors certainly recognize the Debtors' right to a discharge of prepetition claims (as defined in 11 U.S.C. § 101(5)) <u>AUTH8-000002</u> pursuant to 11 U.S.C. § 1141 <u>AUTH1-000001</u> and 524 <u>AUTH9-000001</u>. But a discharge only discharges "debt" as a "personal liability." 11 U.S.C. §§ 1141(d) <u>AUTH1-000001-2</u>; 524(a)(1), 524(a)(2) <u>AUTH9-000001</u>; *see also* 11 U.S.C. § 101(5) <u>AUTH8-000002</u> and (12)("debt" means liability on claim, and "claim" is a right to payment) <u>AUTH8-000002-3</u>; *see also Holywell Corp. v. Smith*, 503 U.S. 47, 58-59 (1992) <u>AUTH3-000013</u>. The Successor Claims Injunction is a Section 105(a) injunction in addition to, and broader than, a discharge. Specifically, a discharge does not discharge defenses such as recoupment. *See, e.g., Megafoods Stores v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031, 1036 (3d Cir. 1995) <u>AUTH10-000006-7</u>; *In re Black*, 280 B.R. 680, 685-86 (Bankr. N.D. Ala. 2001) <u>AUTH11-000007-8</u>. The Kaneb Objectors have alleged recoupment rights against the Debtors unrelated to asbestos. <u>OS-40, p. 000013</u>. The Successor Claims Injunction specifically enjoins recoupment rights against any Asbestos Protected Party.[27] The Successor Claims Injunction also enjoins equitable remedies whether or not such a remedy gives rise to a right to payment.[28] The Kaneb Objectors have appealed equitable declaratory judgment findings in pre-petition state court litigation. <u>OS-40, p. 000012</u>; <u>OS-40, p. 000055[K1]</u>; <u>OS-40, p. 000078[K04]</u>. The Successor Claims Injunction also improperly enjoins future claims.[29] There is no provision in the bankruptcy code that allows a chapter 11 debtor to obtain a discharge beyond that afforded by 11 U.S.C. § 1141 <u>AUTH1-000001</u> and 524 <u>AUTH9-000001</u>. Section 105(a) of the code cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself. *See In*

---

[26] 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.50(a), (b), p.15; <u>APP1-000002</u>.
[27] 01-01139 Dkt. 23474 Exhibit B (Part 3) Section 8.5.1(d), p. 102-03; <u>APP1-000011-12</u>.
[28] 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.182, p. 34; <u>APP1-000007</u> (definition of SA Claims).
[29] 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.182, p. 34; <u>APP1-000007</u>. *Holywell Corp. v. Smith*, 503 U.S. 47, 58-59 (1992) <u>AUTH3-000013</u> (plan cannot affect creditors' post confirmation claims).

*re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) AUTH12-000048-49. The court may not use the general language of Section 105(a) to achieve a result inconsistent with the specific language of 11 U.S.C. § 1141 AUTH1-000001 and 524 AUTH9-000001. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236-37 (3d Cir. 2004) AUTH12-000049. In addition, the Successor Claims Injunction is not limited to pre petition claims and it extends to non-derivative claims.   Thus, the Successor Claims Injunction improperly affords the Debtor a broader discharge than that allowed by 11 U.S.C. § 1141 AUTH1-000001 and 524 AUTH9-000001, and therefore the Plan does not comply with the bankruptcy code.

In addition, Asbestos Protected Parties include Non-Debtor Affiliates.[30]  The Kaneb Objectors respectfully allege that the Plan Proponents have not met their burden of proof to extend a non-asbestos-related, independent and non-derivative, unlimited in time or scope, permanent injunction and releases of third party claims against each of the 124 Non-Debtor Affiliates under the *Dow Corning* factors described in *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 210 (3d Cir. 2004) AUTH12-000022-23.

Asbestos Protected Parties also include the Settled Asbestos Insurance Companies.[31]  An Asbestos Insurance Entity is only a Settled Asbestos Insurance Company to the extent provided by Section 524(g) of the bankruptcy code, in respect of any claim that arises by reason of one of the activities enumerated in Section 524(g)(4)(A)(ii) AUTH9-000003.  There seems to be no reason for, or evidence to support, a Section 105(a) injunction for Settled Asbestos Insurance Companies on top of a Section 524(g) injunction.

Finally, it is noted that it is the Plan Proponents' burden to prove to the court that at least "related to" jurisdiction exists to support each of the releases and Section 105(a) injunctions in

---

[30] 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.50(c), p. 15; APP1-000002. There are 124 Non-Debtor Affiliates listed in Exhibit 16 to the Exhibit Book.  01-01139 Dkt. 20874 at Exhibit 22.
[31] 01-01139 Dkt. 23474 Exhibit B (Part 1) Section I.1.1.50(d), p. 15; APP1-000002.

{08008}60200416.3                          - 12 -

favor of all of the non-debtor Asbestos Protected Parties.   *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936) <u>AUTH13-000006</u> (The burden of establishing federal jurisdiction rests upon the party asserting jurisdiction.); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225-26 (3d Cir. 2004) <u>AUTH12-000037-38</u> (discussing the requirements of related to jurisdiction).   Such jurisdiction cannot be manufactured by agreement. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 228 (3d Cir. 2004) <u>AUTH12-000041</u> ("Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization."). The existence of indemnity claims that are not automatic, but require the initiation of another lawsuit, are not enough to confer related to jurisdiction over claims against non-debtors. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 226 (3d Cir. 2004) <u>AUTH12-000039</u> ("We noted that other cases finding "related to" jurisdiction over actions involving non-debtors involved contractual indemnity obligations between the debtor and non-debtor that automatically resulted in indemnification liability against the debtor. *Id.* (citing cases). By contrast, we found that any judgment against Pacor in the third-party action "could not itself result in even a contingent claim against Manville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification.").

**B.    Issue 2: No Discharge of Defensive Rights**

*The Kaneb Objectors contend that the confirmation of the Plan and the Debtors' discharge does not grant a discharge beyond that available under 11 U.S.C. §§ 1141 and 524, or affect the Kaneb Objectors' ability to defend themselves (including appeal of declaratory judgment, recoupment rights, and setoff rights) in the Kaneb Appeal and in the Kaneb State Court Action, but if the Plan does have this effect, it is not confirmable because the Plan would not comply with the applicable provisions of Title 11. 11 U.S.C. § 1129(a)(1)* <u>AUTH2-000001</u>.

This issue is discussed above. The Successor Claims Injunction, the discharge, and the plan confirmation should not be interpreted to extend the Debtors' discharge to enjoin recoupment, setoff, and equitable declaratory relief.

## C.      Issue 3: No Impediment to Pursue Direct Insurance Rights

*The Kaneb Objectors contend that the Plan confirmation and the Debtors' discharge does not affect the Kaneb Objectors' ability to seek the Kaneb Objectors' own direct rights as a co-insured under insurance policies or as a successor-in-interest to and/or assignee of one or more entities possessing such rights as a co-insured.*

Kaneb has asserted independent rights, both (1) as a co-insured under the insurance policies issued to the Debtor prior to the date of Kaneb's acquisition of certain pipeline assets from the Debtors[32] and (2) as an assignee of rights under those same policies. *See, e.g.*, OS-40 at 00013-018 (Bates No. XXX-001091-96). These are separate property rights of Kaneb, not the debtor. The Successor Claims Injunction cannot be read to bar Kaneb from asserting its separate rights under these insurance policies against the Settled Asbestos Insurance Company (especially

---

[32]      Kaneb will establish in a separate coverage action that the relevant insurance policies, including those set forth in Exhibit OS-40 at 00018-471 (bates no. XXX-0001258-1549) either expressly, or by following form, broadly define "Named Insured" to include W.R. Grace and all of its subsidiary, associated, and affiliated companies. See, e.g., OS-40 at 00188 (bates no. XXX-0001266) ("Named Insured: W.R. Grace & Co. and/or any subsidiary, organization, or company, including subsidiaries of a subsidiary company, owned, controlled or coming under the active management of W.R. Grace & Co."); Exhibit OS-40 at 00464 (bates no. XXX-0001542 ("W.R. Grace & Co. and/or subsidiary, associated, affiliated companies and/or organizations, owned, controlled and/or managed companies as now or hereinafter constituted").

·  Thus, Kaneb, by virtue of its status as a successor-by-statutory-merger to a former Grace subsidiary, has rights under the liability policies that covered this subsidiary at the time it (allegedly) owned the pipeline. This includes policies effective from 1978 (the year in which Grace Petroleum Corporation internally transferred pipeline assets to a newly-created Grace subsidiary, Standard TransPipe Corporation) through 1993 (the year in which Kaneb acquired Standard TransPipe Corporation), since Standard TransPipe Corporation met the definition of a "named insured" under the policies. In addition, by reason of the alleged 1978 internal transfer of pipeline assets and liabilities from Grace to Standard TransPipe, Kaneb (as successor-by-merger to Standard TransPipe) would qualify as a co-insured and/or an assignee of rights under policies issued to GEC and its predecessors prior to the 1978 internal transfer of pipeline assets.

for coverage of non-asbestos claims), as to do so would be outside of this Court's authority to deal solely with the property and property rights of the Debtors, not third parties.

Specifically, the Kaneb Objectors contend that the Plan cannot be read to purport to transfer, decide, or otherwise affect the Kaneb Objector's separate rights under the Insurance Policies. If it were to be read in such a manner, the Plan would not be confirmable because it would not comply with the bankruptcy code or applicable law. The bankruptcy court has no jurisdiction over property that is not property of the estate. *See Saul, Ewing, Remick & Saul v. Provident Sav. Bank*, 190 B.R. 771, 776 (D. Del. 1996) AUTH14-000007. To the extent that the plan confirmation hearing is prosecuted to decide what is property of the estate versus property of the Kaneb Objectors, the proceeding is procedurally and constitutionally improper. Proceedings to determine the validity, priority, or extent of a lien or other interest in property, for the sale under section 363(h) of both the interest of the estate and of a co-owner in property for a sale, or a proceeding to obtain a declaratory judgment relating to any of the foregoing must be brought by an Adversary Proceeding, and not a plan confirmation hearing. *See* Fed. R. Bankr. P. 7001 AUTH15-000001-2; *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230, 242 (3d Cir. Pa. 2008) AUTH16-000016-17 (lien could not constitutionally be eliminated by confirmation of a chapter 13 plan; "where the Rules require an adversary proceeding -- which entails a fundamentally different, and heightened, level of procedural protections -- to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one").

For the avoidance of doubt, respectfully, the Court should clarify in any order approving the Plan that it does not enjoin Kaneb from asserting and enjoying its separate insurance rights in the Policies (whatever they may be proven to be in subsequent insurance litigation to be

conducted after the stay has lifted).  Such an order would cause no harm to any of the Debtors or other Plan Proponents.  Except for claims involving "products liability/ completed operations" (which are not involved in the Otis Pipeline case), all of the primary policies, and all or nearly all of the excess/umbrella policies, provide coverage on a "per occurrence" basis, without any "aggregate limit."  *See, e.g.*, CNA Primary Policies, <u>OS-40 at 00182</u> (bates no. XXX-0001260); at <u>00188 (bates no. XXX-0001266); at 00197 (bates no. XXX-0001275)</u>.  Therefore, payment of claims will not reduce the amounts available to Debtors or the Trusts for payment of asbestos or other claims.  *See In re Spaulding Composites Co., Inc.*, 207 B.R. 899, 907-08 (9th Cir. BAP 1997) <u>AUTH17-000012-13</u> (payment of non-debtor's claim would not impair insurer's ability to satisfy policy obligations to debtor); *cf. In re Circle K Corp.*, 121 B.R. 257, 260-61 (Bankr. D. Ariz. 1990) <u>AUTH18-000005-6</u> (policy proceeds deemed asset of estate where liability policies were "wasting" or "burning candle" policies, *i.e.*, payment of defense costs or judgments eroded or exhausted policy limits); *In re Metropolitan Mortgage & Securities Co., Inc.*, 325 B.R. 851, 857, 857 (Bankr. E.D. Wash. 2005) <u>AUTH19-000009</u> (automatic stay prohibits non-debtor action that would diminish limits available to debtor under insurance policies).

Further, the *proceeds* of the insurance policies are not assets of the debtor estate because they would not be payable to the debtor but, instead, would be payable to a non-debtor third party.  In the case of defense costs, the proceeds would be payable to Kaneb for its attorneys' fees and costs incurred in defending against the DOJ action.  In the case of indemnity, the policy proceeds would be payable to the Department of Justice in satisfaction of any settlement or judgment obtained against Kaneb in connection with the Otis Pipeline release.  Thus, the Kaneb Objectors respectfully request that the Court clarify that nothing in the Plan should be construed

Case 01-01139-AMC    Doc 23647    Filed 11/02/09    Page 17 of 20


to interfere with Kaneb's asserted separate rights, as a direct co-insured and/or as an assignee of rights, to pursue its *own* rights under the Policies.

**D.    Issue 4: No Impediment of Rights to Pursue Debtors Nominally**

*The Kaneb Objectors contend that the Plan confirmation and the Debtors' discharge does not affect the Kaneb Objectors' ability to seek recovery against the Debtors nominally in order to obtain liability insurance proceeds for environmental losses.*

Kaneb lastly seeks an order making clear that, in the event GEC is held liable for the Otis Pipeline release, nothing in the Plan would prohibit Kaneb from seeking recovery under policies that provide coverage to GEC for such liability. Kaneb's right to proceed against GEC's insurer derives from the established principle that a discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt. *In re Conston Inc.*, 181 B.R. 769, 773 (D. Del. 1995) AUTH21-000010-11.

This right to proceed against other entities includes the right to proceed against any insurers of the debtor. *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 53-54 (5th Cir. 1993) AUTH20-000004-5 (the scope of the section 524 discharge injunction does not prevent establishing the insurer's liability by proceeding against a discharged debtor).

Kaneb's right to proceed against GEC's insurers also is established by the language of the primary and umbrella insurance policies issued to GEC. These policies include provisions (either explicitly or by following form to underlying policies) that require the insurer (a) to pay claims "on behalf of" GEC, *see, e.g.,* OS-40 at 00183 (bates no. XXX-001261), and (b) to pay such claims even if GEC becomes insolvent or bankrupt. *See id.* at 00186 (bates no. XXX-001264) (typical anti-insolvency language reads as follows: "Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its legal obligations hereunder.").

It is also important to note that Debtors and/or the Trust would not be harmed by Kaneb proceeding against these policies to recover amounts nominally owed by Debtors. Except for claims involving "products liability/completed operations" (which are not involved in the Otis Pipeline case), all of the primary policies, and all or nearly all of the excess/umbrella policies, provide coverage on a "per occurrence" basis, without any "aggregate limit." *See supra.* The absence of "aggregate" limits for so-called "premises-operations" claims means that no matter how many "per occurrence" limits are paid out under the policy, the policy limits remain available to pay for other occurrences involving premises-operations claims. Thus, payment of claims relating to the Otis Pipeline release would not diminish the amount of insurance coverage available to the Trusts with respect to asbestos claims brought by future claimants.

Finally, it bears noting that the proceeds insurance of the relevant sections of the insurance policies cannot be considered part of the debtor's estate, and therefore should not be subject to the Successor Claims Injunction or any other discharge injunction. If Kaneb establishes in the Texas Court of Appeals that GEC is liable, then the insurance policies issued to GEC would require payment of proceeds "on behalf of" GEC to a non-debtor (Kaneb). Because the policy *proceeds* payable on behalf of the debtor (*i.e.*, in the event Kaneb establishes the debtor's nominal liability in the Texas Court of Appeals) would be paid to a third party other than the debtor, the law does not deem those *proceeds* to be assets of the debtor's estate:

The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor increase the bankruptcy estate. In other

words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.

> . . . [U]nder the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy. Those proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract.

*In the Matter of Edgeworth*, 993 F.2d 51, 55-56 (5th Cir. 1993) AUTH20-000009. Because the policy proceeds are not assets of the debtor estate, no harm could befall Debtors or others by clarifying that nothing in the Plan precludes nominal action against GEC or other Debtors in order to access insurance proceeds.

## VI.
## PRAYER

Wherefore, the Kaneb Objectors pray that this Court deny confirmation of the Plan, and for all other relief to which the Kaneb Objectors show themselves justly entitled.

Dated: November 2, 2009

Respectfully submitted,

SMITH, KATZENSTEIN & FURLOW LLP

Kathleen M. Miller (I.D. No. 2989)
The Corporate Plaza
800 Delaware Avenue, 10th Floor
P.O. Box 410 (Courier 19801)
Wilmington, DE 19899
Telephone: (302) 652-8400
Facsimile: (302) 652-8405
Email: kmiller@skfdelaware.com

/s/ Steve A. Peirce (*pro hac vice*)
Steve A. Peirce, Bar No. 15731200
FULBRIGHT & JAWORSKI L.L.P.
300 Convent Street, Suite 2200
San Antonio, TX 78205-3792
Telephone: (210) 224-5575
Facsimile: (210) 270-7205
Email: speirce@fulbright.com

**ATTORNEYS FOR KANEB PIPE LINE OPERATING PARTNERSHIP, L.P. AND SUPPORT TERMINAL SERVICES, INC.**