# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | x<br>: | Chapter 11 |
| W. R. GRACE & CO., et al., | :<br>: | Case No. 01-1139 (JKF) |
| Debtors. | :<br>: | (Jointly Administered) |
| | x | |

## KANEB PIPE LINE OPERATING PARTNERSHIP, L.P. AND
## SUPPORT TERMINAL SERVICES, INC.'S COMPENDIUM OF AUTHORITIES

| Item | Description | Bates Numbers |
|---|---|---|
| AUTH1 | 11 U.S.C. § 1141 | AUTH1-000001-2 |
| AUTH2 | 11 U.S.C. § 1129 | AUTH2-000001-4 |
| AUTH3 | Holywell Corp. v. Smith, 503 U.S. 47 (1992) | AUTH3-00001-15 |
| AUTH4 | Restatement (Second) of Judgments § 36(2) | AUTH4-000001-9 |
| AUTH5 | Mitchell v. Chapman, 343 F.3d 811, 819 (6th Cir. 2003) | AUTH5-000001-27 |
| AUTH6 | Cross Media Mktg. Corp. v. CAB Mktg. (In re Cross Media Mktg. Corp.), 367 B.R. 435, 447 (Bankr. S.D.N.Y. 2007) | AUTH6-000001-30 |
| AUTH7 | 11 U.S.C. § 105 | AUTH7-000001-2 |
| AUTH8 | 11 U.S.C. § 101(5), (12) | AUTH8-000001-3 |
| AUTH9 | 11 U.S.C. § 524 | AUTH9-000001-10 |
| AUTH10 | Megafoods Stores v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.), 60 F.3d 1031 (3d Cir. 1995) | AUTH10-000001-8 |
| AUTH11 | In re Black, 280 B.R. 680 (Bankr. N.D. Ala. 2001) | AUTH11-000001-11 |
| AUTH12 | In re Combustion Eng'g, Inc., 391 F.3d 190 (3d Cir. 2004) | AUTH12-000001-62 |
| AUTH13 | McNutt v. General Motors Acceptance Corp., 298 U.S. 178 (1936) | AUTH13-000001-10 |
| AUTH14 | Saul, Ewing, Remick & Saul v. Provident Sav. Bank, 190 B.R. 771 (D. Del. 1996) | AUTH14-000001-10 |
| AUTH15 | Fed. R. Bankr. P. 7001 | AUTH15-000001-2 |

| Item | Description | Bates Numbers |
|------|-------------|---------------|
| AUTH16 | SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin), 530 F.3d 230 (3d Cir. Pa. 2008) | AUTH16-000001-28 |
| AUTH17 | In re Spaulding Composites Co., Inc., 207 B.R. 899 (9th Cir. BAP 1997) | AUTH17-000001-15 |
| AUTH18 | In re Circle K Corp., 121 B.R. 257 (Bankr., D. Ariz. 1990) | AUTH18-000001-9 |
| AUTH19 | In re Metropolitan Mortgage & Securities Co., Inc., 325 B.R. 851 (Bankr., E.D. Wash. 2005) | AUTH19-000001-10 |
| AUTH20 | Houston v. Edgeworth (In re Edgeworth), 993 F.2d 51 (5th Cir. 1993) | AUTH20-000001-9 |
| AUTH21 | In re Conston Inc., 181 B.R. 769, 773 (D. Del. 1995). | AUTH21-000001-19 |

LexisNexis® *Total Research System*                      Switch Client | Preferences | Sign Out | [?] Help

| Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Cour

FOCUS™ Terms [                              ]   Search Within [Original Results (1 - 1)    ▼]  [Go →]
Advanced...

Service: **Get by LEXSTAT®**
TOC: United States Code Service: Code, Const, Rules, Conventions & Public Laws  > / . . . / >
      SUBCHAPTER III. POSTCONFIRMATION MATTERS  > § 1141. Effect of confirmation
Citation: **11 usc 1141**

*11 USCS § 1141*

Retrieve Legislative Impact®  **($)**                    ◢ **Practitioner's Toolbox**    [?] [□]

UNITED STATES CODE SERVICE
Copyright © 2009 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved.

*** CURRENT THROUGH PL 111-82, APPROVED
10/26/2009 ***

TITLE 11. BANKRUPTCY
CHAPTER 11. REORGANIZATION
SUBCHAPTER III. POSTCONFIRMATION MATTERS

**⬇ History**

**⬇ Interpretive Notes and
   Decisions**

**⬇ History; Ancillary Laws and
   Directives**

**Resources & Practice Tools**

⊕ **Related Statutes & Rules**

⊖ **Research Guide**

**Go to the United States Code Service Archive
Directory**

11 USCS § 1141

**§ 1141.  Effect of confirmation**

(a) Except as provided in subsections (d)(2) and (d)(3) of
this section, the provisions of a confirmed plan bind the
debtor, any entity issuing securities under the plan, any
entity acquiring property under the plan, and any creditor,
equity security holder, or general partner in the debtor,
whether or not the claim or interest of such creditor,
equity security holder, or general partner is impaired
under the plan and whether or not such creditor, equity
security holder, or general partner has accepted the plan.

(b) Except as otherwise provided in the plan or the order
confirming the plan, the confirmation of a plan vests all of
the property of the estate in the debtor.

Forms:
> 32 Rabkin & Johnson, Current Legal
  Forms, § 24.21, Agricultural
  Transactions and Natural
  Resources.

Commercial Law:
> 3A Debtor-Creditor Law (Matthew
  Bender), ch 33, Bankruptcy Law §§
  33.06, 33.08.

> 3A Debtor-Creditor Law (Matthew
  Bender), ch 34, Consumer
  Bankruptcy §§ 34.11, 34.13, 34.14.

> 3B Debtor-Creditor Law (Matthew
  Bender), ch 35, Assignments for
  the Benefit of Creditors § 35.02.

Bankruptcy:
> 8 Collier on Bankruptcy (Matthew
  Bender 15th ed. rev), ch 1141,
  Effect of Confirmation PP 1141.01
  et seq.

> 3 Collier Bankruptcy Manual, ch
  1141, Effect of Confirmation PP
  1141.01 et seq.

> 1 Collier Bankruptcy Practice Guide,
  ch 1, Initial Client Contact P 1.07.

                                      **⬇ More...**

(c) Except as provided in subsections (d)(2) and (d)(3) of
this section and except as otherwise provided in the plan or in the order confirming the plan,
after confirmation of a plan, the property dealt with by the plan is free and clear of all claims
and interests of creditors, equity security holders, and of general partners in the debtor.

(d)
    (1) Except as otherwise provided in this subsection, in the plan, or in the order confirming

the plan, the confirmation of a plan--

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title [11 USCS § 502(g), 502(h), or 502(i)], whether or not--

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title [11 USCS § 501];

(ii) such claim is allowed under section 502 of this title [11 USCS § 502]; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

(2) A discharge under this chapter does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title [11 USCS § 523].

(3) The confirmation of a plan does not discharge a debtor if--

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under section 727(a) of this title [11 USCS § 727(a)] if the case were a case under chapter 7 of this title [11 USCS §§ 701 et seq.].

(4) The court may approve a written waiver of discharge executed by the debtor after the order for relief under this chapter [11 USCS §§ 1101 et seq.].

(5) In a case in which the debtor is an individual--

(A) unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;

(B) at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if--

(i) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 [11 USCS §§ 701 et seq.] on such date; and

(ii) modification of the plan under section 1127 [11 USCS § 1127] is not practicable; and

(C) unless after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that--

(i) section 522(q)(1) [11 USCS § 522(q)(1)] may be applicable to the debtor; and

(ii) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) [11 USCS § 522(q)(1)(A)] or liable for a debt of the kind described in section 522(q)(1)(B) [11 USCS § 522(q)(1)(B)].

(6) Notwithstanding paragraph (1), the confirmation of a plan does not discharge a debtor that is a corporation from any debt--

(A) of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) [11 USCS § 523(a)] that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of chapter 37 of title 31 [31 USCS §§ 3721 et seq.] or any similar State statute; or

(B) for a tax or customs duty with respect to which the debtor--

(i) made a fraudulent return; or

(ii) willfully attempted in any manner to evade or to defeat such tax or such customs duty.

⌖ **History:**

(Nov. 6, 1978, P.L. 95-598, Title I, § 101, 92 Stat. 2638; July 10, 1984, P.L. 98-353, Title III, Subtitle H, § 513, 98 Stat. 387.)

LexisNexis® *Total Research System*                        Switch Client | Preferences | Sign Out | [?] Help

Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Cour

FOCUS™ Terms [                                ] Search Within [Original Results (1 - 1) ▾] [Go] →
Advanced...

Service: **Get by LEXSTAT®**
TOC:  United States Code Service: Code, Const, Rules, Conventions & Public Laws  > / . . . /  > SUBCHAPTER II. THE
      PLAN  > § 1129. Confirmation of plan
Citation: **11 USCS § 1129**

*11 USCS § 1129*

Retrieve Legislative Impact® **($)**                         ◂ **Practitioner's Toolbox**    [?] [▯]▸

                                                             ± **History**
UNITED STATES CODE SERVICE
Copyright © 2009 Matthew Bender & Company, Inc.              ± **Interpretive Notes and**
a member of the LexisNexis Group (TM)                          **Decisions**
All rights reserved.
                                                             ± **History; Ancillary Laws and**
*** CURRENT THROUGH PL 111-82, APPROVED                        **Directives**
10/26/2009 ***
                                                             **Resources & Practice Tools**
TITLE 11. BANKRUPTCY
CHAPTER 11. REORGANIZATION                                   ⊕ **Related Statutes & Rules**
SUBCHAPTER II. THE PLAN
                                                             ⊖ **Research Guide**
                                                             Commercial Law:
**Go to the United States Code Service Archive**             > 3 Debtor-Creditor Law (Matthew
**Directory**                                                  Bender), ch 31, Income
                                                               Garnishment § 31.06.
11 USCS § 1129
                                                             > 3A Debtor-Creditor Law (Matthew
§ 1129.  Confirmation of plan                                  Bender), ch 33, Bankruptcy Law §
                                                               33.08.
(a) The court shall confirm a plan only if all of the following
requirements are met:                                        > 3A Debtor-Creditor Law (Matthew
   (1) The plan complies with the applicable provisions of     Bender), ch 34, Consumer
this title [11 USCS §§ 101 et seq.].                           Bankruptcy §§ 34.11, 34.14.
   (2) The proponent of the plan complies with the          Bankruptcy:
applicable provisions of this title [11 USCS §§ 101 et seq.].
   (3) The plan has been proposed in good faith and not by   > 1 Collier on Bankruptcy (Matthew
any means forbidden by law.                                    Bender 15th ed. rev), ch 1,
   (4) Any payment made or to be made by the proponent,        Overview of Bankruptcy Law PP
by the debtor, or by a person issuing securities or            1.02, 1.03.
acquiring property under the plan, for services or for costs
and expenses in or in connection with the case, or in        > 1 Collier on Bankruptcy (Matthew
connection with the plan and incident to the case, has         Bender 15th ed. rev), ch 3,
been approved by, or is subject to the approval of, the        Jurisdiction and Powers of District
court as reasonable.                                           Courts and Bankruptcy Courts P
   (5) (A) (i) The proponent of the plan has disclosed the     3.01.
identity and affiliations of any individual proposed to serve,
after confirmation of the plan, as a director, officer, or   > 1 Collier on Bankruptcy (Matthew
voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the    Bender 15th ed. rev), ch 7,
debtor, or a successor to the debtor under the plan; and       Bankruptcy Crimes P 7.02.
   (ii) the appointment to, or continuance in, such office of such individual, is consistent    Federal Taxation:

                                                             > 2 Rabkin & Johnson, Federal,
                                                               Income, Gift and Estate Taxation
                                                               (Matthew Bender), ch 4,
                                                               Deductions: Taxes and Losses §
                                                               4.16.

                                                                         ± More...

AUTH2-000001

with the interests of creditors and equity security holders and with public policy; and

(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

(6) Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

(7) With respect to each impaired class of claims or interests--

(A) each holder of a claim or interest of such class--

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title [11 USCS §§ 701 et seq.] on such date; or

(B) if section 1111(b)(2) of this title [11 USCS § 111(b)(2)] applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan an account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

(8) With respect to each class of claims or interests--

(A) such class has accepted the plan; or

(B) such class is not impaired under the plan.

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that--

(A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title [11 USCS § 507(a)(2) or 507(a)(3)], on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B) with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title [11 USCS § 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7)], each holder of a claim of such class will receive--

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

(C) with respect to a claim of a kind specified in section 507(a)(8) of this title [11 USCS § 507(a)(8)], the holder of such claim will receive on account of such claim regular installment payments in cash--

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303 [11 USCS § 301, 302, or 303]; and

(iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b) [11 USCS § 1122(b)]); and

(D) with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8) [11 USCS § 507(a)(8)], but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

(12) All fees payable under section 1930 of title 28, as determined by the court at the

hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

(13) The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title [11 USCS § 1114], at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title [11 USCS § 1114], at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.

(14) If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

(15) In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan--

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2) [11 USCS § 1325(b)(2)]) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

(16) All transfers of property of the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

(b)

(1) Notwithstanding section 510(a) of this title [11 USCS § 510(a)], if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides--

(i) (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title [11 USCS § 363(k)], of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

(B) With respect to a class of unsecured claims--

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115 [11 USCS § 1115], subject to the requirements of subsection (a)(14) of this section.

(C) With respect to a class of interests--

(i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or

(ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

(c) Notwithstanding subsections (a) and (b) of this section and except as provided in section 1127(b) of this title [11 USCS § 1127(b)], the court may confirm only one plan, unless the order of confirmation in the case has been revoked under section 1144 of this title [11 USCS § 1144]. If the requirements of subsections (a) and (b) of this section are met with respect to more than one plan, the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm.

(d) Notwithstanding any other provision of this section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 [15 USCS § 77e]. In any hearing under this subsection, the governmental unit has the burden of proof on the issue of avoidance.

(e) In a small business case, the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121(e) [11 USCS § 1121 (e)] not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3) [11 USCS § 1121(e)(3)].

## ⌖ History:

(Nov. 6, 1978, P.L. 95-598, Title I, § 101, 92 Stat. 2635; July 10, 1984, P.L. 98-353, Title III, Subtitle H, § 512, 98 Stat. 386; Oct. 27, 1986, P.L. 99-554, Title II, Subtitle A, § 225, Subtitle C, § 283(v), 100 Stat. 3102, 3118; June 16, 1988, P.L. 100-334, § 2(b), 102 Stat. 613; Oct. 22, 1994, P.L. 103-394, Title III, § 304(h)(7), Title V, § 501(d)(32), 108 Stat. 4134, 4146.)

(As amended April 20, 2005, P.L. 109-8, Title II, Subtitle B, § 213(1), Title III, § 321(c), Title IV, § 438, Title VII, § 710, Title XII, § 1221(b), Title XV, § 1502(a)(8), 119 Stat. 52, 95, 113, 127, 196, 216.)

## ⌖ History; Ancillary Laws and Directives:

  ⬇ 1. Prior law and revision
  ⬇ 2. References in text
  ⬇ 3. Effective date of section
  ⬇ 4. Amendments

⌖ 1. Prior law and revision:
*House Judiciary Report*
Subsection (a) enumerates the requirement governing confirmation of a plan. The court is required to confirm a plan if and only if all of the requirements are met.
Paragraph (1) requires that the plan comply with the applicable provisions of chapter 11, such as section 1122 and 1123, governing classification and contents of plan.
Paragraph (2) requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure.
Paragraph (3) requires that the proponent have proposed the plan in good faith, and not by

LexisNexis® *Total Research System*                  Switch Client ⫶ Preferences ⫶ Sign Out ⫶ ?Help

Search ⫶ Research Tasks ⫶ Get a Document ⫶ *Shepard's®* ⫶ Alerts ⫶ Total Litigator ⫶ Transactional Advisor ⫶ Cour

FOCUS™ Terms [                                    ] Search Within [Original Results (1 - 1)]   ▼  Go ⇒
Advanced...

Service: **Get by LEXSEE®**
Citation: **503 U.S. 47**

*503 U.S. 47, \*; 112 S. Ct. 1021, \*\*;*
*117 L. Ed. 2d 196, \*\*\*; 1992 U.S. LEXIS 1370*

HOLYWELL CORPORATION, ET AL., PETITIONERS v. FRED STANTON SMITH, ETC., ET AL.;
UNITED STATES, PETITIONER v. FRED STANTON SMITH, ET AL.

No. 90-1361

SUPREME COURT OF THE UNITED STATES

503 U.S. 47; 112 S. Ct. 1021; 117 L. Ed. 2d 196; 1992 U.S. LEXIS 1370; 60 U.S.L.W. 4163;
92-1 U.S. Tax Cas. (CCH) P50,110; 69 A.F.T.R.2d (RIA) 682; Bankr. L. Rep. (CCH)
P74,435A; 25 Collier Bankr. Cas. 2d (MB) 1; 22 Bankr. Ct. Dec. 1028; 92 Cal. Daily Op.
Service 1493; 92 Daily Journal DAR 2450; 6 Fla. L. Weekly Fed. S 8

December 4, 1991, Argued
February 25, 1992, Decided \*

\* Together with No. 90-1484, United States v. Smith et al., also on certiorari to the same
court.

**PRIOR HISTORY:** ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT.

**DISPOSITION:** 911 F.2d 1539, reversed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Certiorari was granted to the United States Court of Appeals
for the Eleventh Circuit, which affirmed that respondent trustee had no duty to file income
tax returns or pay income tax in connection with a trust established by a bankruptcy
reorganization plan intended to pay creditors of five combined bankruptcy estates.

**OVERVIEW:** Pursuant to the bankruptcy reorganization plan of petitioner debtors, which
included four corporations and one individual, a trust was established that would liquidate
property of all five estates and distribute the proceeds to the creditors, to be administered
by respondent, a court-appointed trustee. Respondent sought a declaratory judgment that
he had no duty to file federal income tax returns or pay income tax, which was granted by
the bankruptcy court and affirmed by the district and appellate courts. The Court reversed,
holding that respondent did in fact have a duty to file tax returns and pay income tax.
With respect to the corporate debtors, the Court held that respondent was an "assignee"
of corporate property according to 26 U.S.C.S. § 6012(b)(3), who was required to file tax
returns, regardless of whether the assignment was in connection with the winding up of a
dissolving corporation. Additionally, respondent had a duty to file returns and pay taxes
with respect to the individual debtor, pursuant to 26 U.S.C.S. § 6012(b)(4), as the

AUTH3-000001

fiduciary of a non-grantor liquidating trust, because the bankruptcy estate's property never reverted to the individual.

**OUTCOME:** The decision holding that respondent trustee had no duty to file tax returns or pay income taxes in connection with a trust created by a bankruptcy reorganization plan was reversed. With respect to the corporate debtors whose property entered the trust, respondent was an assignee of corporate property required to file returns and pay taxes, and with respect to the individual debtor, respondent was the fiduciary of a non-grantor trust.

**CORE TERMS:** fiduciary, assignee, tax returns, liquidating trust, bankruptcy estates, confirmation, income tax, receiver, entity, bind, trust property, appointment, liquidate, assigned, fiscal, debtors in possession, income attributable, pay taxes, grantor trust, transferred, grantor, capital gains, distribute, appointed, postconfirmation, distributing, liquidating, manage, consolidated, ending

**LEXISNEXIS® HEADNOTES**                                                    ⊟**Hide**

Tax Law > Federal Tax Administration & Procedure > Administration > Tax Payment & Tax Return Requirements (IRC secs. 6071-6091, 6151-6167) > Place & Time for Payments 🔦
*HN1*⚓The Internal Revenue Code ties the duty to pay federal income taxes to the duty to make an income tax return. More Like This Headnote | *Shepardize:* Restrict By Headnote

Bankruptcy Law > Taxation > Postpetition Liability & Reporting 🔦
Tax Law > Federal Tax Administration & Procedure > Administration > Tax Payment & Tax Return Requirements (IRC secs. 6071-6091, 6151-6167) > General Overview 🔦
*HN2*⚓See 26 U.S.C.S. § 6012(b)(3). *Shepardize:* Restrict By Headnote

Bankruptcy Law > Taxation > Postpetition Liability & Reporting 🔦
Tax Law > Federal Tax Administration & Procedure > Administration > Tax Payment & Tax Return Requirements (IRC secs. 6071-6091, 6151-6167) > General Overview 🔦
*HN3*⚓Nothing in 26 U.S.C.S. § 6012(b)(3) suggests that the word "assignee" is limited to persons who wind up the business of a dissolving corporation. The statute does not make dissolution necessary; it applies whether the corporation transfers all or substantially all of its property. It does not require the assignee to manage the corporation's business after the transfer of property; it expressly requires the assignee to make a return whether or not the assigned property or business is being operated. More Like This Headnote | *Shepardize:* Restrict By Headnote

Bankruptcy Law > Taxation > Postpetition Liability & Reporting 🔦
Tax Law > Federal Tax Administration & Procedure > Administration > Tax Payment & Tax Return Requirements (IRC secs. 6071-6091, 6151-6167) > General Overview 🔦
*HN4*⚓See 26 U.S.C.S. § 6012(b)(4). *Shepardize:* Restrict By Headnote

Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Duties & Functions > Capacities & Roles 🔦
Bankruptcy Law > Reorganizations > Plans > Contents > Mandatory Provisions 🔦
Governments > Fiduciary Responsibilities 🔦
*HN5*⚓Under 11 U.S.C.S. § 1123(a)(5)(B), a plan may transfer all or any part of the property of a bankruptcy estate to one or more entities, whether organized before or after the confirmation of such plan. More Like This Headnote |
*Shepardize:* Restrict By Headnote

AUTH3-000002

Bankruptcy Law > Taxation > Postpetition Liability & Reporting

Governments > Fiduciary Responsibilities

HN6 26 U.S.C.S. § 6012(b)(4) applies to the fiduciary of a trust as well as the fiduciary of a bankruptcy estate.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Tax Law > Federal Taxpayer Groups > Income Taxation of Estates, Trusts & Beneficiaries > General Overview

Tax Law > State & Local Taxes > Estate & Gift Tax > General Overview

HN7 See 26 C.F.R. § 301.7701-4(d) (1991).

Governments > Fiduciary Responsibilities

Tax Law > Federal Tax Administration & Procedure > Fiduciaries & Transferees (IRC secs. 6901-6905) > General Overview

Tax Law > Federal Taxpayer Groups > Income Taxation of Estates, Trusts & Beneficiaries > General Overview

HN8 The Internal Revenue Code defines "fiduciary" as a guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person. 26 U.S.C.S. § 7701(a)(6).  More Like This Headnote | *Shepardize: Restrict By Headnote*

Governments > Fiduciary Responsibilities

Tax Law > Federal Taxpayer Groups > Income Taxation of Estates, Trusts & Beneficiaries > General Overview

Tax Law > State & Local Taxes > Estate & Gift Tax > General Overview

HN9 See 26 C.F.R. § 301.7701-6 (1991).

Governments > State & Territorial Governments > Boundaries

Tax Law > Federal Tax Administration & Procedure > Administration > Tax Payment & Tax Return Requirements (IRC secs. 6071-6091, 6151-6167) > Place & Time for Payments

Tax Law > State & Local Taxes > Estate & Gift Tax > General Overview

HN10 No tax liability becomes due under 26 U.S.C.S. § 6151 until the time required for making those returns.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Bankruptcy Law > Reorganizations > Plans > Confirmation > Cramdowns

Bankruptcy Law > Reorganizations > Plans > Postconfirmation > Effects of Confirmation

Bankruptcy Law > Taxation > Postpetition Liability & Reporting

HN11 Even if 11 U.S.C.S. § 1141(a) binds creditors of the corporate and individual debtors with respect to claims that arose before confirmation of a bankruptcy plan, it cannot bind the United States regarding taxes or any other creditor with respect to postconfirmation claims.  More Like This Headnote | *Shepardize: Restrict By Headnote*


## LAWYERS' EDITION DISPLAY                                    ⊟ **Hide**


## DECISION:

Trustee liquidating and distributing property as part of plan under Chapter 11 of Bankruptcy Code held required, as to income attributable to property, to file federal income tax returns and pay tax.

AUTH3-000003

**SUMMARY:**

Corporate debtors and an affiliated individual debtor each filed bankruptcy petitions under Chapter 11 of the Bankruptcy Code (11 USCS 1101 et seq.). The Bankruptcy Court for the Southern District of Florida consolidated the cases, and, prior to confirmation of a Chapter 11 reorganization plan, the debtors represented their own bankruptcy estates as debtors in possession. In August 1985, creditors approved a consolidated reorganization plan that placed all property of the debtors' estates into a trust, provided for appointment of a trustee to liquidate the property and distribute it to the creditors, and permitted the debtors to remain in business. The plan said nothing about whether the trustee had to file federal income tax returns with respect to income attributable to the property or had to pay any income tax due as a result of such income. The United States did not object to the plan's confirmation, and the plan took effect on October 10, 1985. One of the corporate debtors filed for the fiscal year ending July 31, 1985 a federal income tax return that included capital gains derived from the postbankruptcy sale of certain property of the debtors' estates. The debtor asked the trustee to pay the taxes owed on this income. Although the estates subsequently derived income that included capital gains and interest, neither the corporate debtors nor the trustee filed federal income tax returns for any fiscal year ending after July 31, 1985. Over the opposition of the United States and the debtors, the Bankruptcy Court granted the trustee's request for a declaratory judgment that the trustee had no duty under the federal income tax laws to file income tax returns or pay income tax (85 BR 898). The United States District Court for the Southern District of Florida, in an unreported opinion, affirmed the Bankruptcy Court judgment, and the United States Court of Appeals for the Eleventh Circuit affirmed the District Court judgment (911 F2d 1539).

On certiorari, the United States Supreme Court reversed. In an opinion by Thomas, J., expressing the unanimous view of the court, it was held that the trustee (1) had a duty to file federal income tax returns and pay income tax (a) with respect to income attributable to the corporate debtors' property, under 26 USCS 6012(b)(3), which required the assignee of the property of a corporation to file a federal income tax return concerning the property, and under 26 USCS 6151(a), which provided that the person required to file a federal income tax return had to pay the tax shown on the return to be due, because the trustee was an assignee of the corporate debtors' property under 6012(b)(3), since (i) the trustee met the usual ordinary and legal definition of the word "assignee," and (ii) 6012(b)(3) applied when a corporation transferred all or substantially all of its property and required an assignee to file a return "whether or not" the assigned property or business was being operated, and (b) with respect to income attributable to the individual debtor's property, under 26 USCS 6012(b)(4), which required the fiduciary of a trust to file a federal income tax return concerning the trust, and under 6151(a), because the trustee was the fiduciary of a trust of the individual under 6012(b)(4), since (i) the trust created by the plan fit the 26 CFR 301.7701-4(d) description of a liquidating trust, and (ii) the plan assigned the property of the individual debtor's estate to the trustee and gave the trustee powers consistent with the 26 USCS 7701(a)(6) definition of a "fiduciary"; and (2) had to perform this duty despite the plan's failure to require the trustee to file income tax returns or pay any income taxes, because 1141(a) of the Bankruptcy Code (11 USCS 1141(a)), which stated that the provisions of a confirmed plan bound any creditor, did not preclude the United States, as a creditor, from seeking payment of any taxes, since the United States was not seeking from the trustee any taxes that became due prior to the trustee's appointment, where 11 USCS 101(10) defined "creditor" as used in 1141(a) as an entity with various kinds of preconfirmation claims.

AUTH3-000004

**LAWYERS' EDITION HEADNOTES:**

[***LEdHN1]

BANKRUPTCY §168

INCOME TAXES §116

STATUTES §166

income attributable to corporate debtors' property -- filing return -- paying tax -- trustee's duties --

Headnote:[LEdHN[1A]][1A][LEdHN[1B]][1B][LEdHN[1C]][1C]

A trustee appointed--pursuant to a consolidated reorganization plan under Chapter 11 of the Bankruptcy Code (11 USCS 1101 et seq.), which plan places all property of the estates of corporate debtors and an affiliated individual debtor in trust but permits the debtors to remain in business--to liquidate the property and distribute it to creditors has, with respect to income attributable to the corporate debtors' property, a duty under 26 USCS 6012(b) (3), which requires the assignee of the property of a corporation to file a federal income tax return concerning the property, and under 26 USCS 6151(a), which provides that the person required to file a federal income tax return shall pay the tax that is shown on the return to be due, to file income tax returns and pay income tax, because the trustee is an assignee of the corporate debtors' property under 6012(b)(3), since (1) the trustee meets the usual definition of the word "assignee" in both ordinary and legal usage; and (2) rather than suggesting that the word "assignee" is limited to a person who winds up the business of a dissolving corporation or stands in the place of management in operating the day-to-day business of a distressed corporation, 6012(b)(3) (a) applies whether a corporation transfers "all" or "substantially all" of its property, and (b) expressly requires an assignee to file a return "whether or not" the assigned "property or business is being operated."

[***LEdHN2]

BANKRUPTCY §168

INCOME TAXES §88

income attributable to individual debtors' property -- filing return -- paying tax -- trustee's duties --

Headnote:[LEdHN[2A]][2A][LEdHN[2B]][2B][LEdHN[2C]][2C][LEdHN[2D]][2D]

A trustee appointed--pursuant to a consolidated reorganization plan under Chapter 11 of the Bankruptcy Code (11 USCS 1101 et seq.), which plan places all property of the estates of corporate debtors and an affiliated individual debtor in trust--to liquidate the property and distribute it to creditors has, with respect to income attributable to the individual debtor's property, a duty under 26 USCS 6012(b)(4), which requires the fiduciary of a trust to file a federal income tax return concerning the trust, and under 26 USCS 6151(a), which provides that the person required to file a federal income tax return shall pay the tax that is shown on the return to be due, to file income tax returns and pay income tax, because the trustee is the fiduciary of a trust of the individual under 6012(b)(4), since (1) the trust created by the reorganization plan clearly fits the 26 CFR 301.7701-4(d) description of a liquidating trust, for purposes of the Internal Revenue Code (26 USCS 1 et

AUTH3-000005

seq.), as an entity organized for the primary purpose of liquidating and distributing the assets transferred to it; (2) the plan assigns the property of the individual debtor's estate to the trustee and gives the trustee powers consistent with the 26 USCS 7701(a)(6) definition of a "fiduciary" as including a trustee or any person acting in any fiduciary capacity for any person, where 26 CFR 301.7701-6 specifies that "fiduciary" is a term which applies to a person, such as a trustee, who holds in trust the estate of another or receives and controls the income of another; (3) the individual debtor is not required to pay the trust's income tax under the Internal Revenue Code's "grantor trust" rules, because the debtor, having himself contributed nothing to the trust, cannot be characterized as the grantor of the trust; and (4) the restrictions on the trustee's discretion in performing the trustee's duties under the plan do not remove the trustee from coverage under 6012(b)(4), because (a) the liquidating trust is a trust under the Internal Revenue Code, and (b) the duties satisfy the Treasury regulations' description of a fiduciary.

**[\*\*\*LEdHN3]**

BANKRUPTCY §168

INCOME TAXES §116

STATUTES §162.7

income attributable to property of estate -- filing return -- paying tax -- trustee's duties --

Headnote: *LEdHN[3A]*⚓[3A]*LEdHN[3B]*⚓[3B]*LEdHN[3C]*⚓[3C]

A trustee appointed, pursuant to a consolidated reorganization plan under Chapter 11 of the Bankruptcy Code (11 USCS 1101 et seq.), to liquidate and distribute the property of the estates of corporate debtors and an affiliated individual debtor must--where the United States Supreme Court has found, with respect to income attributable to the corporate debtors' property and income attributable to the individual debtor's property, that the trustee has duties under 26 USCS 6012 and 6151 to file federal income tax returns and pay the tax that is shown on the returns to be due--perform these duties despite the reorganization plan's failure to state that the trustee has to file income tax returns or pay any income taxes due, because 1141(a) of the Bankruptcy Code (11 USCS 1141(a)), which states that the provisions of a confirmed plan bind any creditor, does not preclude the United States, as a creditor, from seeking payment of any taxes, since, even if 1141 (a) binds creditors of the corporate debtors and the individual debtor with respect to claims that arose before confirmation of the plan, it cannot bind the United States, which is not seeking from the trustee any taxes that became due prior to the trustee's appointment, or any other creditor with respect to postconfirmation claims, where 11 USCS 101(10) defines "creditor" as used in 1141(a) as an entity with various kinds of preconfirmation claims.

**[\*\*\*LEdHN4]**

BANKRUPTCY §168

INCOME TAXES §88

income attributable to property of estate -- filing return -- trustee's duties -- fiduciary of individual debtor's estate --

Headnote: *LEdHN[4]*⚓[4]

AUTH3-000006

A trustee appointed--pursuant to a reorganization plan under Chapter 11 of the Bankruptcy Code (11 USCS 1101 et seq.), which plan "declared and established" a liquidating trust containing all of the property of the bankruptcy estate of an individual debtor and vested this property in the trustee as a trustee--to liquidate the property and distribute it to creditors does not, in acting as a fiduciary under the plan, act as the fiduciary of the debtor's bankruptcy estate under 26 USCS 6012(b)(4), which requires the fiduciary of the estate of an individual under Chapter 11 to file a federal income tax return with respect to the estate, because (1) rather than simply substituting the trustee for the debtor as the fiduciary of the estate, the plan created a separate and distinct trust holding the property of the estate and gave the trustee control of this property, and (2) 11 USCS 1123(a)(5)(B) expressly authorizes a reorganization plan to transfer "all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan."

## SYLLABUS

Petitioner debtors, four affiliated corporate entities and Theodore B. Gould, filed Chapter 11 bankruptcy petitions after one of the entities defaulted on a real estate loan. The Bankruptcy Court consolidated the cases and the debtors represented their own bankruptcy estates as debtors in possession. Creditors approved a Chapter 11 plan that provided, *inter alia*, for placement of the debtors' property into a trust and appointment of a trustee to liquidate all of the trust property and to distribute it to the creditors of the various bankruptcy estates. The plan said nothing about whether the trustee had to file income tax returns or pay any income tax due, but the United States did not object to the plan's confirmation. The plan took effect in October 1985. One of the corporate debtors filed a tax return for the fiscal year ending July 31, 1985, including as income capital gains earned in the postbankruptcy sale of certain properties in its estate, but requested respondent Smith, the appointed trustee, to pay the taxes owed. Neither the corporate debtors nor Smith filed income tax returns for succeeding fiscal years, in which there was capital gains and interest income. Over the objections of the United States and the debtors, the Bankruptcy Court granted Smith's request for a declaratory judgment that he had no duty under the Internal Revenue Code (Code) to file income tax returns or pay income taxes. Both the District Court and the Court of Appeals affirmed.

*Held:* Smith is required by the Code to file income tax returns and pay taxes on the income attributable to the property of both the corporate debtors and Gould. Pp. 52-59.

(a) Smith is an "assignee" of "all" or "substantially all" of the "property . . . of a corporation" and therefore is required by § 6012(b)(3) of the Code to file returns that the corporate debtors would have filed had their property not been assigned to him. The plan transferred the corporate debtors' estates to Smith as trustee, and it is undisputed that he meets the usual definition of the word "assignee" in both ordinary and legal usage. Nothing in § 6012(b) (3) limits the definition of an "assignee" to persons who wind up a dissolving corporation or manage the day-to-day business of a distressed corporation. Pp. 52-54.

(b) With respect to the income attributable to Gould's property, Smith is required by § 6012 (b)(4) to make a return not, as the United States argues, because he is the "fiduciary" of the "estate . . . of an individual," but because he is the "fiduciary" of a "trust." Since the plan declared and established a separate and distinct trust and vested the property of Gould's estate in Smith, it did not simply substitute Smith for Gould as the fiduciary of Gould's "estate." However, the trust here -- which the plan described as a trust and created for the express purpose of liquidating Gould's estate and distributing it to creditors -- clearly fits the

AUTH3-000007

description of a liquidating trust in 26 CFR § 301.7701-4(d). Moreover, when the plan assigned the property of Gould's estate to Smith, it gave him powers consistent with the definition of "fiduciary" in § 7701(a)(6) of the Code and 26 CFR § 301.7701-6. Respondents' argument that it is Gould who must pay the trust's taxes under the Code's "grantor trust" rules is rejected. _In re Sonner, 53 B.R. 859_, distinguished. Also rejected is their contention that Smith lacked sufficient discretion in performing his duties under the plan to be a fiduciary, since the liquidating trust is a trust under the Code and Smith's duties satisfy the regulations' description of a fiduciary. Pp. 54-58.

(c) Respondents also err in asserting that Smith may ignore the duties imposed by the Code because the plan does not require him to pay taxes. Section 1141(a) of the Bankruptcy Code -- which states that "the provisions of a confirmed plan bind . . . any creditor" -- does not preclude the United States from seeking payment of any taxes. Even if § 1141(a) binds creditors with respect to claims that arose before confirmation, it does not bind them with regard to postconfirmation claims. Cf. 11 U. S. C. § 101(10). Here, the United States is not seeking taxes due prior to Smith's appointment, but is merely asserting that Smith, after his appointment, must make tax returns in the same manner as the assignee of the property of any corporation or the trustee of any trust. Pp. 58-59.

**COUNSEL:** Kent L. Jones argued the cause for the United States in No. 90-1484 and petitioners in No. 90-1361. With him on the briefs for the United States were Solicitor General Starr, Assistant Attorney General Peterson, Deputy Solicitor General Wallace, Gary D. Gray, and Francis M. Allegra. Dennis G. Lyons, Stuart E. Seigel, and Kent A. Yalowitz filed briefs for petitioners in No. 90-1361.

Herbert Stettin argued the cause for respondents in both cases. With him on the brief for respondent Smith were Louis R. Cohen, F. David Lake, Jr., and John Aramburu. Vance E. Salter, Thomas F. Noone, Edward P. Zujkowski, Mortimer M. Caplin, Walter B. Slocombe, Albert G. Lauber, Jr., Julia L. Porter, and James E. Salles filed a brief for respondent Bank of New York. Barbara E. Vicevich filed a brief for respondent Shutts & Bowen. +

+ A brief of amici curiae was filed for the State of California et al. by Mary Sue Terry, Attorney General of Virginia, H. Lane Kneedler, Chief Deputy Attorney General, K. Marshall Cook, Deputy Attorney General, Barbara M. Rose, Senior Assistant Attorney General, and Martha B. Brissette and John Patrick Griffin, Assistant Attorneys General, Daniel E. Lungren, Attorney General of California, Richard Blumenthal, Attorney General of Connecticut, Charles M. Oberly III, Attorney General of Delaware, John Payton, Corporation Counsel of the District of Columbia, Robert A. Butterworth, Attorney General of Florida, Michael J. Bowers, Attorney General of Georgia, Warren Price III, Attorney General of Hawaii, Roland W. Burris, Attorney General of Illinois, Linley E. Pearson, Attorney General of Indiana, Bonnie J. Campbell, Attorney General of Iowa, Robert T. Stephan, Attorney General of Kansas, William J. Guste, Jr., Attorney General of Louisiana, Michael E. Carpenter, Attorney General of Maine, J. Joseph Curran, Jr., Attorney General of Maryland, Scott Harshbarger, Attorney General of Massachusetts, Frank J. Kelley, Attorney General of Michigan, Hubert H. Humphrey III, Attorney General of Minnesota, Michael C. Moore, Attorney General of Mississippi, William L. Webster, Attorney General of Missouri, Marc Racicot, Attorney General of Montana, Robert J. Del Tufo, Attorney General of New Jersey, Tom Udall, Attorney General of New Mexico, Robert Abrams, Attorney General of New York, Nicholas J. Spaeth, Attorney General of North Dakota, Dave Frohnmayer, Attorney General of Oregon, Ernest D. Preate, Jr., Attorney General of Pennsylvania, James E. O'Neil, Attorney General of Rhode Island, T. Travis Medlock, Attorney General of South Carolina, Charles W. Burson, Attorney General of Tennessee, Dan Morales, Attorney General of Texas, R. Paul Van Dam, Attorney General of Utah, Mario J. Palumbo, Attorney General of West Virginia, and Victor A. Kovner, Corporation Counsel of the City of New York.

AUTH3-000008

**JUDGES:** THOMAS, J., delivered the opinion for a unanimous Court.

**OPINION BY:** THOMAS

**OPINION**

[*50]  [***202]  [**1023]  JUSTICE THOMAS delivered the opinion of the Court.

[***LEdHR1A]  LEdHN[1A]↧[1A] [***LEdHR2A]  LEdHN[2A]↧[2A] [***LEdHR3A]  LEdHN
[3A]↧[3A]These cases require us to decide whether a trustee appointed to liquidate and
distribute property as part of a Chapter 11 bankruptcy plan must file income tax returns and
pay income tax under the Internal Revenue Code.

I

Miami Center Limited Partnership borrowed money from the Bank of New York (Bank) to
develop "Miami Center," a hotel and office building complex in Miami, Florida. In August
1984, after it defaulted on the loan, MCLP and four affiliated debtors -- Holywell Corporation,
Chopin Associates, Miami Center Corporation, and Theodore B. Gould -- each filed Chapter 11
bankruptcy petitions. The Bankruptcy Court consolidated the five cases.

Prior to confirmation of a Chapter 11 plan, the debtors represented their own bankruptcy
estates as debtors in possession. See 11 U. S. C. § 1101(1). The estates of Gould and
Holywell contained two principal assets: equity in Miami Center and cash proceeds from the
postbankruptcy sale of certain real estate in Washington, D. C., known as the Washington
Properties.

In August 1985, the Bank and other creditors approved a "Consolidated Plan of
Reorganization." The plan required the debtors to give up their interests in Miami Center and
the proceeds from the sale of the Washington Properties, but otherwise permitted them to
remain in business. Part V of the plan provided:

> [**1024]  "1. A Trust is hereby declared and established on behalf of the
> Debtors . . . and an individual to be appointed by the Court . . . is designated as
> Trustee of all property of the estates of the Debtors . . ., including but not limited
> to, Miami Center [and] the Washington Proceeds . . ., to hold, liquidate, and
> distribute such Trust Property according to the terms of this Plan. The Trust shall
> be known as the 'Miami Center Liquidating Trust.'

> [*51]  "2. . . . All right, title and interest of the Debtors in and to the
> [***203]  Trust Property, including Miami Center, shall vest in the Trustee,
> without further act or deed by the Debtors . . . ." App. 41.

The plan required the trustee to liquidate and distribute all of the trust property to the
creditors of the various bankruptcy estates. It empowered the trustee to "manage, operate,
improve, and protect the Trust Property"; to "release, convey, or assign any right, title or
interest in or about the Trust Property"; and to perform other, similar actions. *Id.*, at 42. The
plan said nothing about whether the trustee had to file income tax returns or pay any income
tax due. The United States did not object to its confirmation.

AUTH3-000009

The plan took effect on October 10, 1985. The trustee appointed by the court, respondent Fred Stanton Smith, immediately sold Miami Center to the Bank in consideration for cash and cancellation of the Bank's claim. The trustee then distributed these and other assets to third-party creditors. Holywell Corporation filed a tax return for the fiscal year ending July 31, 1985. The income for this fiscal year included capital gains earned in the sale of the Washington Properties. Holywell asked the trustee to pay the taxes owed. Neither the corporate debtors nor the trustee filed federal income tax returns for any fiscal year ending after July 31, 1985. The income for these years included the capital gains earned in the sale of Miami Center and interest earned by reinvesting the proceeds.

In December 1987, the trustee sought a declaratory judgment from the Bankruptcy Court that he had no duty to file income tax returns or pay income tax under the federal income tax laws. The United States and the debtors opposed the action. The Bankruptcy Court declared that the trustee did not have to make any federal tax returns or pay any taxes. 85 B.R. 898 (SD Fla. 1988). The District Court, in an unreported opinion, and the Court of Appeals, 911 F.2d 1539 (CA11 1990), both affirmed. The United States, in No. **[*52]** 90-1484, and the debtors, in No. 90-1361, each petitioned this Court for a writ of certiorari. We granted review. 500 U.S. 941 (1991).

II

**[\*\*\*LEdHR1B]** *LEdHN[1B]*$\nearrow$[1B] **[\*\*\*LEdHR2B]** *LEdHN[2B]*$\nearrow$[2B] **[\*\*\*LEdHR3B]** *LEdHN [3B]*$\nearrow$[3B]*HN1*$\nearrow$The Internal Revenue Code ties the duty to pay federal income taxes to the duty to make an income tax return. See 26 U. S. C. § 6151(a) ("When a return of a tax is required . . . the person required to make such return shall . . . pay such tax"). We conclude in this case that the trustee must pay the tax due on the income attributable to the corporate debtors' property because § 6012(b)(3) requires him to make a return as the "assignee" of the "property . . . of a corporation." We further hold that the trustee must pay the tax due on the income attributable to the individual debtor's property because § 6012(b)(4) requires him to make a return as the "fiduciary" of a "trust." Finally, we decide that the United States did not excuse the trustee from these duties by failing to object to the plan.

A

We first consider the trustee's duties with respect to the corporate debtors. Section 6012(b) (3) provides:

    *HN2*$\nearrow$" **[\*\*\*204]**  (3) Receivers, trustees and assignees for corporations

       "In a case where a receiver, trustee in a case under title 11 of the United States Code, or assignee, by order of a court of competent jurisdiction, by operation of law or otherwise, has possession of or holds **[\*\*1025]** title to all or substantially all the property or business of a corporation, whether or not such property or business is being operated, such receiver, trustee, or assignee shall make the return of income for such corporation in the same manner and form as corporations are required to make such returns."

**[\*\*\*LEdHR1C]** *LEdHN[1C]*$\nearrow$[1C]The parties disagree about whether the trustee in this case is a "receiver," a "trustee in a case under title 11 of **[\*53]** the United States Code [*i.e.*, the Bankruptcy Code]," or an "assignee." We hold that the trustee is an "assignee" of the corporate debtors under § 6012(b)(3). Because the parties do not argue that the trustee's duties would differ under another characterization, we decline to consider whether the trustee would qualify as a receiver or bankruptcy trustee.

The plan, as noted above, transferred the corporate debtors' estates to respondent Smith as

AUTH3-000010

trustee for the Miami Center Liquidating Trust. The respondents do not dispute that the trustee meets the usual definition of the word "assignee" in both ordinary and legal usage. See Webster's Third New International Dictionary 132 (1986) (defining an "assignee" as "one to whom a right or property is legally transferred"); Black's Law Dictionary 118-119 (6th ed. 1990) (defining an "assignee" as "[a] person to whom an assignment is made" and an "assignment" as "the act of transferring to another all or part of one's property, interest, or rights"); cf. 26 CFR § 301.6036-1(a)(3) (1991) (defining an "assignee for the benefit of . . . creditors" as any person who takes possession of and liquidates property of a debtor for distribution to creditors). They argue, however, that courts have applied § 6012(b)(3) only in situations in which a person winds up the business of a dissolving corporation, see, e.g., First Nat. Bank of Greeley, Colo. v. United States, 86 F.2d 938, 942 (CA10 1936), or a person stands in the place of management in operating the day-to-day business of a distressed corporation, see, e. g., Louisville Property Co. v. Commissioner, 140 F.2d 547, 548 (CA6 1944). They conclude that § 6012(b)(3) cannot apply to the trustee in this case because he did neither. We find this argument unpersuasive.

HN3⊕Nothing in § 6012(b)(3) suggests that the word "assignee" is limited in the manner proposed by the respondents. The statute does not make dissolution necessary; it applies whether the corporation transfers "all" or "substantially all" of its property. It does not require the assignee to manage the corporation's business after the transfer of property; it [*54] expressly requires the assignee to make a return "whether or not [the assigned] property or business is being operated." Ibid. We therefore conclude that § 6012(b)(3) applies to the trustee in this case. As the assignee of "all" or "substantially all" of the property of the corporate debtors, the trustee must file the returns that the corporate debtors would have filed had the plan not assigned their property to the trustee.

[***205]  B

We next consider the trustee's duties with respect to the individual debtor, Theodore B. Gould. The parties agree that § 6012(b)(3) does not require the trustee to file a return as the "assignee" of Gould's estate because the section applies only to the assignee of the property of a corporation. Section § 6012(b)(4), however, provides:

> HN4⊕"(4) Returns of estates and trusts
>
> "Returns of an estate, a trust, or an estate of an individual under chapter 7 or 11 of title 11 of the United States Code shall be made by the fiduciary thereof."

[***LEdHR2C] LEdHN[2C]⊕[2C]The United States argues that the trustee must file under § 6012(b)(4) as the fiduciary of Gould's Chapter 11 "estate." The debtors join the United States' argument and also contend in the alternative that the trustee must file under the section as the fiduciary of a "trust." The respondents insist that the trustee is not acting as the fiduciary of either [**1026] a bankruptcy estate or a trust within the meaning of § 6012(b)(4). Accordingly, they assert, the section does not require the trustee to file a return on behalf of Gould. We agree with the debtors that the trustee must file a return because he is the fiduciary of a trust of an individual.

The parties agree that Gould originally served as the fiduciary of his own bankruptcy estate when he became debtor in possession. See 11 U. S. C. § 1107(a). At confirmation, according to the United States, the bankruptcy plan substituted the trustee for Gould but did not alter the bankruptcy [*55] estate. In other words, the United States argues, the trustee took Gould's place as the fiduciary of "an estate of an individual under chapter . . . 11." The United States points out that the Bankruptcy Code explicitly provides that a fiduciary may hold and administer property of the estate after confirmation of the plan, see 11 U. S. C. § 1123(b)(3), and that nothing prohibits the substitution of a third-party trustee for the debtor

AUTH3-000011

in possession. The United States, therefore, maintains that the trustee must file a return under § 6012(b)(4).

[***LEdHR4] LEdHN[4]⟰[4]Whether or not the Bankruptcy Code permits a plan to place a new fiduciary in charge of an estate after confirmation, as the United States contends, we do not believe that a mere substitution occurred in this case. The plan, as quoted above, "declared and established" the new Miami Center Liquidating Trust. It then vested all of the assets of Gould's estate to respondent Smith as trustee. The plan did not simply substitute the trustee for Gould as the fiduciary of the estate. Rather, it created a separate and distinct trust holding the property of the estate and gave the trustee control of this property. The Bankruptcy Code expressly permits this arrangement. See § 1123(a)(5)(B) (HN5⟰authorizing a plan to transfer "all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan"). The trustee, therefore, is not acting as the fiduciary of Gould's bankruptcy estate.

[***LEdHR2D] LEdHN[2D]⟰[2D]The trustee, nonetheless, must make a return. Section 6012(b)(4), as the debtors assert, HN6⟰applies to the fiduciary of a trust as well as the [***206] fiduciary of a bankruptcy estate. We see no way for the respondents to deny that the Miami Center Liquidating Trust is a "trust" and that respondent Smith is its "fiduciary." A Treasury Regulation states:

> HN7⟰"Certain organizations which are commonly known as liquidating trusts are treated as trusts for purposes of the Internal Revenue Code. An organization will be considered a liquidating trust if it is organized for the [*56] primary purpose of liquidating and distributing the assets transferred to it, and if its activities are all reasonably necessary to, and consistent with, the accomplishment of that purpose." 26 CFR § 301.7701-4(d) (1991).

The Miami Center Liquidating Trust clearly fits this description. The plan not only describes the entity as a trust, but also created it for the express purpose of liquidating Gould's estate and distributing it to creditors.

Respondent Smith, moreover, acted as the fiduciary of this trust. HN8⟰The Internal Revenue Code defines "fiduciary" as a "guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person." 26 U. S. C. § 7701(a)(6). A Treasury Regulation further specifies:

> HN9⟰"'Fiduciary' is a term which applies to persons who occupy positions of peculiar confidence toward others, such as trustees, executors, and administrators. A fiduciary is a person who holds in trust an estate to which another has the beneficial title or in which another has a beneficial interest, or receives and controls income of another, as in the case of receivers." 26 CFR § 301.7701-6 (1991).

The bankruptcy plan, as noted above, assigned the property of Gould's estate to the trustee and gave him powers consistent with this definition. Smith therefore acted as the [**1027] fiduciary of a trust within the meaning of § 6012(b)(4).

The respondents raise two principal objections to this conclusion. First, they argue that Gould must pay the Miami Center Liquidating Trust's income taxes under the so-called "grantor trust" rules in the Internal Revenue Code. See 26 U. S. C. §§ 671-677. They note, in particular, that Treasury Regulation § 1.677(a)-1(d) specifies that "a grantor is, in general, treated as the owner of a portion of a trust whose income [*57] is . . . applied in discharge of a legal obligation of the grantor." 26 CFR § 1.667(a)-1(d) (1991). They assert that Gould

AUTH3-000012

is the grantor of the liquidating trust and that, under this regulation, he owns the trust's income and must pay taxes on it. To support this position, the respondents cite *In re Sonner*, 53 B.R. 859 (ED Va. 1985), which applied the grantor trust provisions to a postconfirmation liquidating trust.

While we express no opinion on the results in *Sonner*, the facts are distinguishable. In *Sonner*, the property of the bankruptcy estate by the terms of the plan appears to have revested in the debtor upon confirmation. The debtor pursuant to a plan then placed some of this property in a trust created to pay his creditors. Under these circumstances, the Bankruptcy Court concluded, the debtor had created a grantor trust under Treasury Regulation **[***207]** § 1.677(a)-1(d). See *Sonner, supra*, at 860, 864. In this case, however, the property of Gould's bankruptcy estate did not revest in Gould. The plan, instead, placed all of the estate's property directly in the Miami Center Liquidating Trust. Gould himself did not contribute anything to the trust, and we thus fail to see how the respondents can characterize him as the grantor.

Second, the respondents argue that the trustee did not act as a fiduciary because he had almost no discretion in performing his duties under the plan. They assert that the trustee merely acted as a "disbursing agent" who distributed liquidated funds to the creditors. As the dissenting judge noted below, labels and characterizations cannot alter the trustee's status for the purpose of the tax law. 911 F.2d at 1547. Because the liquidating trust is a trust under the Internal Revenue Code and because respondent Smith's duties under the plan satisfy the description of a fiduciary in **[*58]** the regulations, the restrictions on the trustee's discretion do not remove him from coverage under § 6012(b)(4). *

---

**FOOTNOTES**

* The respondents also argue that the trustee does not have to pay taxes because the petitioners conceded in the Bankruptcy Court that "the trust is not a separate taxable entity." 85 B.R. 898, 900 (SD Fla. 1988). This "concession" cannot help the respondents. The petitioners asserted that the trust was not a separate taxable entity when they argued that the plan did not create a new trust but instead simply substituted the trustee for Gould as the fiduciary of the bankruptcy estate. If the respondents accept this position, which we reject above, then they would have to agree that respondent Smith has to make a return as the fiduciary of an estate.

---

C

**[***LEdHR3C]** *LEdHN[3C]* [3C]The respondents finally assert that the trustee may ignore the duties imposed by §§ 6012 and 6151 because the Chapter 11 plan does not require him to pay taxes. They note that § 1141(a) of the Bankruptcy Code states that "the provisions of a confirmed plan bind . . . any creditor" whether or not the creditor has accepted the plan. They conclude that § 1141(a) precludes the United States, as a creditor, from seeking payment of any taxes. They add that the United States should have objected to the plan if it had wanted a different result. We disagree.

The United States is not seeking from the trustee any taxes that became due prior to his appointment. See Reply Brief for United States 13, n. 16. It simply asserts that the trustee, after his appointment, must make tax returns under § 6012(b) in the same manner as the assignee of the property of any corporation or the trustee of any trust. **[**1028]** *HN10* No tax liability becomes due under § 6151 until the time required for making those returns. See *Hartman v. Lauchli*, 238 F.2d 881, 887 (CA8 1956); *Pan American Van Lines v. United States*, 607 F.2d 1299, 1301 (CA9 1979). *HN11* Even if § 1141(a) binds creditors of the corporate and individual debtors with respect to claims that arose before confirmation, we do

AUTH3-000013

not see how it can bind the United States or any other creditor with respect to postconfirmation claims. Cf. 11 U. S. C. § 101(10) [*59] (1988 ed., Supp. II) (defining "creditor" as used in § 1141(a) as an entity with various kinds of preconfirmation claims). For these reasons, the judgment of the Court of Appeals is

*Reversed*.

## REFERENCES

9 Am Jur 2d, Bankruptcy 310, 347; 33 Am Jur 2d, Federal Taxation 1986, 1987; 34 Am Jur 2d, Federal Taxation 9944

5A Federal Procedure, L Ed, Bankruptcy 9:1506

4 Federal Procedural Forms, L Ed, Bankruptcy 9:383, 9:384

6 Am Jur Proof of Facts 367, Insolvency

11 USCS 101(10), 1123(a)(5)(B), 1141(a); 26 USCS 6012(b)(3), 6012(b)(4), 6151(a), 7701 (a)(6)

Federal Tax Coordinator 2d S-2007, S-2008, S-2015, S-2017

Bankruptcy Service, L Ed, Summary 1B:68

Bankruptcy Desk Guide 3:68

L Ed Digest, Bankruptcy 168; Income Taxes 88, 89, 116, 146

L Ed Index, Bankruptcy; Income Taxes; Reorganization

Index to Annotations, Bankruptcy and Insolvency ;Income Tax

Annotation References :

Section 52(a) of the Internal Revenue Code requiring receivers, trustees in bankruptcy, or assignees operating business or property of corporations to make income tax returns and the like. 31 ALR2d 877.

Service: **Get by LEXSEE®**
Citation: **503 U.S. 47**
View: Full
Date/Time: Monday, November 2, 2009 - 11:49 AM EST

* Signal Legend:
⊜ - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◈ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
❶ - Citation information available

AUTH3-000014

* Click on any *Shepard's* signal to *Shepardize*® that case.

Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor |
Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help

**LexisNexis**®  About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

AUTH3-000015

LexisNexis® *Total Research System*

Switch Client ┊ Preferences ┊ Sign Out ┊ ? Help

Search ┊ Research Tasks ┊ Get a Document ┊ Shepard's® ┊ Alerts ┊ Total Litigator ┊ Transactional Advisor ┊ Cour

FOCUS™ Terms [                    ] Search Within [Original Results (1 - 1)    ▼] Go →

Advanced...

Service: **Get by LEXSTAT®**
TOC: Restatement 2d, Judgments - Rule Sections > /..../ > Topic 1- Parties and Persons Represented by Parties >
§ 36 Party Appearing in Different Capacities
Citation: **Judgments Second 36**

*Restatement of the Law, Second, Judgments, § 36*

Restatement of the Law, Second, Judgments
Copyright (c) 1982, The American Law Institute

Case Citations

Rules and Principles

Chapter 4 - Parties and Other Persons Affected by Judgments`

Topic 1 - Parties and Persons Represented by Parties

Restat 2d of Judgments, § 36

§ 36 Party Appearing in Different Capacities

 **(1) A party appears in his individual capacity unless, in his designation as a party or by other manifestation, it is made evident that he appears in some other capacity.**
**(2) A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.**

**COMMENTS & ILLUSTRATIONS:  Comment:**

*a. Rationale and scope.* A person, including a corporate entity, may have more than one legal capacity. A legal capacity other than one's individual capacity is by definition representative of interests of others. The rule that a person appearing in litigation in one capacity is not, generally speaking, affected thereby in another legal capacity serves to safeguard the integrity of such representative functions. A person appearing on behalf of another is required to act with complete fidelity to the interests of the beneficiary, uninfluenced by consideration of his own interest or advantage. By the same token, in appearing as a representative of another, a person should be free to take positions inconsistent with those he might assert in litigation on his own behalf or on behalf of others he represents in some other fiduciary capacity.

In the absence of contrary indication, a party appears in the capacity of asserting or defending his own interests, as stated in Subsection (1). A person appearing in a representative or official capacity is ordinarily so designated in the caption's identification of parties, e.g., "John Doe, as Executor of the Estate of Richard Roe" or "William Smith, County Assessor," but his capacity as such may be otherwise indicated. The character of a jurial entity is ordinarily designated by similar description, e.g., "Acme Co., an Illinois Corporation." A party may appear in both an individual and a representative capacity but if the duality of his capacity is not manifested he is treated as appearing only individually. Applicable law may

AUTH4-000001

require that a person appearing in two capacities disqualify himself in his representative capacity if a conflict of interest is presented.

Differentiating the capacities in which a party appears has consequences with respect to the rules of both claim preclusion (including merger, bar, and "splitting" a cause of action) and issue preclusion. With respect to claim preclusion, a judgment on a claim favorable to plaintiff appearing in one capacity does not result in the merger therein of a claimhe may have in another capacity, nor does an adverse judgment bar him from asserting such another claim. Similarly, the rules on assertion of counterclaims stated in §§ 21-22 apply only where the party in the second action appears in the same capacity in which he appeared as defendant in the first action. The rule regarding splitting a claim stated in §§ 24-26 does not prevent a party who brought an action in one capacity from bringing another action in a distinct capacity even though the claims arise out of the same transaction. With respect to issue preclusion, a party appearing in successive actions in the same capacity is subject to the rules stated in §§ 27-28 but is not precluded where the capacities in which he participated are different.

*b. Types of representatives affected.* The rules of this Section apply to any person appearing as a representative of another, whether the action is brought or defended "in the name" of the representative or in the name of the beneficiary, so long as the representative character of the participation is indicated. It thus applies alike to an executor or administrator, a trustee, receiver, or conservator, a guardian, a guardian ad litem or next friend, and a party appearing as the representative of a class. On the other hand, a transferee of property, including a chose in action, who thereafter holds himself out as the owner of the property and brings or defends a suit as such, is acting in his individual capacity. The fact that he may have some obligation to account to the transferor for the proceeds of the judgment does not alter his capacity. Similarly the characterization of a party as a "trustee" in connection with enforcement of the restitutional remedy of a constructive or resulting trust does not signify that he participates in the litigation other than in his individual capacity. The essential question is whether there is a disclosed relationship in which the party is accorded authority to appear as a party on behalf of others.

**Illustrations:**

1. A as trustee for his children brings an action to quiet title in Blackacre against B. The judgment, whether for A or B, does not preclude A from bringing an action to enforce a claim to Blackacre on his own behalf.

2. A brings an action against B to enforce a claim against Blackacre. The judgment, whether for A or B, does not preclude A from bringing an action concerning Blackacre as trustee for his children.

3. In a collision between cars driven by A and B, A is injured, B is killed, and C, who is B's wife, is also injured. A brings an action for his injuries against C as administratrix of B's estate. Judgment is for A. If C subsequently sues for her own injuries, she is not precluded from relitigating the issues determined in the first action.

4. Same facts as Illustration 3. A brings an action for his injuries against C as administratrix of B's estate and obtains judgment. Under applicable law, the claim for B's wrongful death may be brought by C as widow. If C subsequently brings an action as B's widow for his wrongful death, she is not precluded from relitigating the issues determined in the first action.

5. Same facts as Illustration 3 except that D, the child of B and C, is also injured in the collision. C brings an action for the wrongful death of B, but judgment is given for A. The judgment does not preclude C from bringing an action as D's next friend for D's injuries, nor

AUTH4-000002

is she in that capacity precluded from relitigating the issues determined in the first action.

*c. Effects of judgment under other rules.* The rule of this Section deals with the effects of difference in capacity as such. Rules in addition to those that differentiate a person's multiple capacities may result in the judgment's having effects with respect to a person who appears in litigation in different capacities. A person who appears in a representative capacity in behalf of interests that include his own individually is bound by the judgment in his individual capacity not because he is the same person who was previously a party but by virtue of his representative status in the first action. See Illustrations 6 and 7 and § 41. A person who in one capacity is party to a judgment that is preclusive on persons with interests derivative from him, is, if he has such a derivative interest in some other capacity, subject in the latter capacity to the rules governing derivative interests. See Illustrations 8 and 9. A person who appears in successive actions in different capacities may also invoke the benefits of issue preclusion against an opposing party in the first litigation in the same way that a non-party could do so. See § 29.

**Illustrations:**

6. A is trustee of a trust of which he and B are beneficiaries and the corpus of which consists of bonds. A owns similar bonds individually. A as trustee brings suit on the trust bonds and judgment goes against him on the ground that the bonds were illegally issued. A is precluded as to the issue of illegality in a subsequent action on the bonds he holds individually.

7. A, on behalf of his child B, brings an action for injuries to B in which his claim includes amounts he expended for B's medical care. An adverse judgment precludes A from suing in his own capacity to recover the medical expenditures.

8. A, the husband of B who has been killed in an accident, brings an action as B's administrator for B's wrongful death. Judgment is for the defendant. If under applicable law a spouse has a right of recovery for loss of consortium only if there is a valid claim reposing in a person to whom he is espoused, the judgment precludes A from suing individually for loss of consortium.

9. A brings an action against B as executor of the estate of C to enforce a materialman's lien on property owned by C. Judgment is for A. B is C's devisee and therefore succeeds to the property. B individually is bound by the judgment.

*d. Capacity in underlying transaction.* A person who is a fiduciary may bring or defend an action in his individual capacity in which it is asserted by or against him that, in the transaction in which the action is based, he actually acted in his fiduciary capacity. Correlatively, a fiduciary sued in his individual capacity may defend on the ground that he acted in the transaction as a fiduciary for another, rather than in his individual capacity. Determination of these transactional capacities is governed by the law applicable to the relationship in question. For res judicata purposes the determination as to his capacity in the transaction is binding on him only in the capacity in which he has participated in the litigation. However, rules of estoppel by conduct may preclude him from changing position where the effect would be to exonerate himself from individual liability. The question is whether, in all the circumstances, it is just to allow him to assert that he is not individually liable when, in prior litigation, he took a contrary position.

**Illustrations:**

10. A makes a note payable to B, the signature being "A, trustee for C." In an action by B against A individually, A defends on the ground that he was liable not personally but only as trustee. Judgment is for A. In a subsequent action by B against A as trustee for C, A is not precluded from defending on the ground that he was not liable as trustee, but was liable only

AUTH4-000003

personally.

11. Same facts as Illustration 10, except that B first sues A as trustee. A defends on the ground that the note was a personal and not a trust obligation. Judgment is for A. In a subsequent action by B against A individually, A is estopped to defend on the ground that he was not personally liable unless the circumstances justify allowing him to do so.

*e. Application to actions against officials.* A public official sued as an individual nevertheless participates in the action in his official capacity if the remedy sought is that of compelling, restraining, or making declarations concerning performance of acts in the course of his official duties, or the restitution of property over which he asserts control in virtue of his official authority. If the remedy sought is damages and the public body of which he is an official is solely responsible for paying them, the public official likewise appears in his official capacity and is in effect merely a formal party. See § 37. The determination in such circumstances is therefore binding on the governmental body of which he is an official and on his successors in office, but in accordance with the rule stated in § 36, is not binding on him personally. Where, however, the remedy is for damages that he is asserted to have a personal obligation to pay, he participates in his individual capacity.

**Illustrations:**

12. A sues B, the state treasurer, to compel B to refund taxes A alleges were unlawfully collected. If under applicable law B can be directed to refund the tax from state assets, B participates in his capacity as an official of the state and the state is bound, even if suit might not have been brought naming the state itself as defendant.

13. A sues B, a police captain, for damages for injuries sustained when C, a policeman under B's command, used unnecessary force in detaining A. A seeks recovery from B personally on the ground that B was negligent in selecting and supervising C. B participates in his individual capacity.

*f. Government agencies having distinct responsibilities.* In some circumstances, a prior determination that is binding on one agency and its officials may not be binding on another agency and its officials. The problem is analogous to that in determining the capacity in which the underlying transactions were conducted where private parties are concerned. If the second action involves an agency or official whose functions and responsibilities are so distinct from those of the agency or official in the first action that applying preclusion would interfere with the proper allocation of authority between them, the earlier judgment should not be given preclusive effect in the second action.

**Illustration:**

14. A, a city employee, sues B, the mayor of the city, to compel payment of A's salary at a rate A asserts is required by law. Judgment is for A. In a subsequent action by A for pension benefits against the state pension fund, the determinations in the prior action are not preclusive if the administration of the fund involves administrative authority and responsibility substantially distinct from that of the city.

*g. Effect on successor representative.* A judgment binding on a representative in his capacity as such, in accordance with this Section, is binding on a successor to his fiduciary office.

**REPORTERS NOTES:** (§ 80, Tent.Draft No. 2.) This Section corresponds substantially to § 80 of the first Restatement, but reflects simplifications and recognizes some intervening developments. On the score of simplification several changes have been made. The first Restatement had used both the terms "on his own account" and "in his individual capacity" to

AUTH4-000004

describe a party's litigating for himself, and the terms "for the benefit of another" and "in a representative capacity" to describe a party's litigation for another. Since there is no evident difference in meaning involved, only the terms "in his individual capacity" and "in a representative capacity" have been carried forward. Section 80(2) of the first Restatement provided that a person appearing in a representative capacity is not later bound in his individual capacity if the fact of the representative capacity was disclosed to the other party; this point is now dealt with in § 36(1).

There are two changes of substance. The first has to do with the role of the representative in a class suit compared with that of representatives such as administrators, trustees, and other "traditional" fiduciaries. The first Restatement distinguished these roles, limiting the rule of § 80 to the latter and dealing elsewhere with the representative of a class. The basis of distinction, as indicated in Comment *a* of the first Restatement, was thought to be that those who are represented in a class suit invariably "must be given an opportunity to become parties to the action," whereas other types of represented persons were thought never to have this right except through the device of a subsequent suit in equity. See also § 122, Comment *d* of the first Restatement. Neither of these propositions is wholly accurate. On the one hand, a representative of a class is now charged with duties essentially similar to those of a trustee. See §§ 41 and 42, infra. On the other hand, a beneficiary may be accorded a right of participation in non-class actions otherwise maintainable by or against his representative where there is basis for supposing the representation may be inadequate. See, e.g., Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956); Landis v. First Nat'l Bank, 20 Cal.App.2d 198, 66 P.2d 730 (1937); cf. Cascade Nat. Gas Co. v. El Paso Nat. Gas Co., 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967), on remand, 291 F.Supp. 3 (D.Utah C.D. 1968), vac., 395 U.S. 464, 89 S.Ct. 1860, 23 L.Ed.2d 474 (1969), reh. denied, 399 U.S. 937, 90 S.Ct. 2225, 26 L.Ed.2d 809 (1970); Trbovich v. United Mine Workers, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972), on remand, 344 F.Supp. 17 (D.C.D.C.1972). The similarity of class suit representatives and other types of representatives in these essential respects suggests that distinct conceptions of representative capacity are neither necessary nor useful in the analysis of these respective forms of representation.

The other change is the elimination of an exception in § 80(2) of the first Restatement. That subsection stated that a person who participated first as a representative and then in his individual capacity could not, in the latter action, "take a position in the subsequent action inconsistent with that which he took in the first action." In explaining this qualification, Comment *h* of the first Restatement said:

> "[I]f an action is brought against him as a fiduciary and in that capacity he successfully defends on the ground that in the transaction he was liable only as an individual and did not bind those for whom he was a fiduciary, the judgment in that action is decisive in a second action against him personally upon the question of the capacity in which he acted."

See also Illustration 13, first Restatement.

This position seems to be at odds with the basic premise of the rule in § 36. The fiduciary should not be inhibited from making a defense by the fact that, if he succeeds, he will subject himself to personal liability. The extent of earlier authority supporting the exception is not clear, but none has been found of more recent vintage. On the other hand, the theme of such cases as Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (notice requirements resulting from conflict of interest between fiduciary and

AUTH4-000005

beneficiary), Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940) (representative's conflict of interest vitiates effects of class suit judgment), and Crisci v. Security Insurance Co., 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967) (insurer's duties upon conflict of interest with insured), is plainly that a representative in litigation must display punctillious regard for his beneficiary's interest. No clear-cut formula seems possible by which completely to foreclose conflict of interest on the part of a fiduciary and at the same time afford the fiduciary reasonable opportunity to protect himself individually against claims of third parties. The formulation stated in Comment d requires the question to be resolved in light of the particular circumstances.

Comment a. The general proposition of this Section is well established. See generally Annot. 170 A.L.R. 1180 (1947) and, e.g., Gulak v. Yu, 295 F.Supp. 1323 (E.D.Pa.1969); Kind v. Rogers, 162 F.Supp. 197 (W.D.N.Y.1958); Rudow v. Fogel, 376 Mass. 587, 382 N.E.2d 1046 (1978); Dalton v. Suhren, 128 So.2d 456 (La.App. 1961) (on which Illustration 5 is based), American Province of the Servants of Mary Real Estate Corp. v. Metropolitan Utilities District, 178 Neb. 348, 133 N.W.2d 466 (1965); In re Sullivan's Estate, 289 N.Y. 323, 45 N.E.2d 819 (1942); Molino v. County of Putnam, 29 N.Y.2d 44, 323 N.Y.S.2d 817, 272 N.E.2d 323 (1971) (compare Illustration 4); Armstrong v. Miller, 200 N.W.2d 282 (N.D.1972) (on which Illustrations 3 and 4 are based); Farley v. Farley, 19 Utah 2d 301, 431 P.2d 133 (1967) (on which Illustrations 1 and 2 are based).

Comment b. As to various types of representative capacities, see Farley v. Farley, supra (trustee); American Nat'l Bank & Trust Co. v. Hines, 143 Ind.App. 217, 239 N.E.2d 589 (1968) (general administrator and special administrator to enforce wrongful death claim); Trapeni v. Walker, 120 Vt. 510, 144 A.2d 831 (1958) (father as next friend); Robertson v. Estate of Melton, 306 S.W.2d 811 (Tex.Civ.App.1957) (widow for survivors in wrongful death action); American Surety Co. of N.Y. v. Normandy State Bank, 237 Mo.App. 39, 167 S.W.2d 436 (1943) (corporation as statutory fiduciary for insolvent bank). The status of assignees for collection and parties in partial subrogation relationships is usually but not invariably treated as one of individual capacity rather than a representative one, depending on interpretation of the real party in interest rule. Compare §§ 37 and 41. In application of the real party in interest rule in federal courts, the question is complicated by jurisdictional considerations, especially in diversity cases. See Wright and Miller, Federal Practice and Procedure: Civil §§ 1543-1553.

The differentiation of capacities in wrongful death actions, and in actions in behalf of the adult and minor members of a family injured in a common accident, can result in opportunities to relitigate issues whose redetermination would otherwise be precluded. The differentiation is maintained, however, even where the substantial beneficiaries of the second action were parties to the prior action, see, e.g., Olson v. Linster, 259 Minn. 189, 107 N.W.2d 49 (1960); Molino v. County of Putnam, supra, and where they were able to designate the representative in such a way as to avoid identity of parties in the first and second actions, e.g., Conney v. Erickson, 251 F.Supp. 986 (W.D.Wis. 1965); American Nat'l Bank & Trust Co. v. Hines, supra. This position may stem from recognition of the peculiar role of liability insurance in such situations, see Robertson v. Estate of Melton, supra. In other situations, the courts appear inclined to determine whether there is identity or difference in capacity by examining the underlying interests represented, e.g., Werlein v. City of New Orleans, 177 U.S. 390, 20 S.Ct. 682, 44 L.Ed. 817 (1900); Jamison v. Garrett, 205 F.2d 15 (D.C.Cir. 1953); Bernhard v. Bank of America, 19 Cal.2d 807, 122 P.2d 892 (1942); Jordan v. C. A. Roberts Co., 379 Mich. 235, 150 N.W.2d 792 (1967); cf. Mpiliris v. Hellenic Lines, Ltd., 323 F.Supp. 865 (1969), aff'd 440 F.2d 1163 (5th Cir. 1971). But see Hellstern v. Hellstern, 279 N.Y. 327, 18 N.E.2d 296 (1938).

A party may, of course, appear in different capacities in the same litigation, with different outcomes, e.g., Himes v. Day, 254 Md. 197, 254 A.2d 181 (1969); cf. In re Finch's Estate, 202 Cal. 612, 262 P. 34 (1927).

AUTH4-000006

For the proposition that party participates in his individual capacity when the suit charges him with liability as a "constructive trustee," see Mosier v. Federal Reserve Bank of N.Y., 132 F.2d 710 (2d Cir. 1942); Dandini v. Dandini, 146 Cal.App.2d 193, 303 P.2d 556 (1956).

*Comment c.* That a judgment concerning a person appearing in a different capacity may have effects by reason of rules other than those operative between the same parties is recognized in principle, e.g., Nat'l Bondholders Corp. v. Seaboard Citizens Nat. Bank, 110 F.2d 138 (4th Cir. 1940) (issue preclusion); Bernhard v. Bank of America, supra (same), although sometimes the application of such rules is overlooked, see American Surety Co. of N.Y. v. Normandy State Bank, supra; Hellstern v. Hellstern, supra. Illustration 6 is drawn from Illustration 15 of the first Restatement. As to Illustration 7, see Annot. 32 A.L.R.2d 1060, 1083 (1953).

*Comment d.* Whether, in the out-of-court transaction giving rise to the litigation, a person acted as a fiduciary for another or acted in his own behalf is determined by the nature of his interests and responsibilities in the transactions in question. Ordinarily, differentiation of such roles and application of this section is dependent on determinations of fact. See Illustrations 10 and 11, drawn from Illustrations 12 and 13 of the first Restatement. There are situations, however, in which it is problematic whether two different capacities should be recognized, with consequent effects on application of the rules of preclusion. The analysis is complicated, moreover, by the long recognized rule that a trustee, executor, or similar fiduciary is treated as acting in his individual capacity for purposes of liabilities and obligations arising from transactions with third parties. Thus, a trustee who commits a tort, enters a contract, or participates in a property transaction in the course of his administration, is subject to personal liability to the other party involved. See Restatement, Second, Trusts §§ 261-265; e.g., Johnston v. Long, 30 Cal.2d 54, 181 P.2d 645 (1947). If that liability is one the trustee is deemed properly to have incurred, he is entitled to indemnity through exoneration or reimbursement from the trust estate, but not otherwise. Restatement, Second, Trusts §§ 244-248. Under these rules, the judgment in the third party's action against the trustee does not bind the trust estate; the trustee must establish his claim for indemnity by further proceedings for that purpose, in which some other representative must appear for the estate because of the trustee's conflict of interest. See § 42. On the other hand, it is recognized that in some circumstances the trustee in dealings with a third party may effectively designate his capacity as that of trustee, see Restatement, Second, Trusts § 263, cf. § 265, in which event an action on an obligation arising therefrom is properly maintained against the trustee in his capacity as such and has corresponding preclusive effects. Furthermore, some more modern authorities treat all transactions by the trustee as performed in that capacity rather than his individual capacity. See generally Vance v. Estate of Myers, 494 P.2d 816 (Alaska 1972), and references therein. See also Bogert, Handbook of the Law of Trusts 467-76 (5th ed. 1973). In any event, a proceeding to surcharge the trustee is brought against him in his individual capacity. Cf. Laramore v. Laramore, 64 So.2d 662 (Fla.1953) (judgment removing administrator determinative of his liability in subsequent action against him for damages).

On the question of estoppel against taking inconsistent positions as to the person's capacity in the out-of-court transaction, see Daluiso v. Nicassio, 41 Cal.App.2d 709, 107 P.2d 460 (1940); cf. Jordan v. C. A. Roberts Co., 379 Mich. 235, 150 N.W.2d 792 (1967).

*Comment e.* The rules concerning the capacity in which a public official participates in litigation are an aspect of the richly complex law of suits involving the government and government officials and employees. See Bator, Mishkin, Shapiro, and Wechsler, The Federal Courts and the Federal System 926-962, 1331-1423 (2d ed. 1973). A central issue is whether relief can be obtained in effect against the government but, in avoidance of the barrier of the sovereign immunity doctrine, through the device of a suit against an official. See Jaffe, Suits Against Governments and Officers, 77 Harv.L.Rev. 1, 209 (1963); Davis, Suing the Government by Falsely Pretending to Sue an Officer, 29 U.Chi.L.Rev. 435 (1962);

AUTH4-000007

e.g., Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), reh. denied, 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974), on remand, 405 F.Supp. 802 (N.D.Ill.1975), rev'd, 551 F.2d 152 (7th Cir. 1977) (official of state government). When an action may be maintained through this device, the official concerned participates in his capacity as such, with preclusive effects on the government and the official's successors. Tait v. Western Md. Ry., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405 (1933); Unimex, Inc. v. United States Dept. of Housing, 594 F.2d 1060 (5th Cir. 1979); Gunn v. United States, 283 F.2d 358 (8th Cir. 1960); Ma Chuck Moon v. Dulles, 237 F.2d 241 (9th Cir. 1956), cert. denied, 352 U.S. 1002, 77 S.Ct. 559, 1 L.Ed.2d 547 (1957); Consumer Party v. Tucker, 364 F.Supp. 594 (E.D.Pa.1973); Deason v. DeKalb County, 222 Ga. 63, 148 S.E.2d 414 (1966), conformed to, 113 Ga.App. 555, 149 S.E.2d 155 (1966); McKinney v. City of East St. Louis, 39 Ill.App.2d 137, 188 N.E.2d 341 (1963); Varnal v. Kansas City, 481 S.W.2d 575 (Mo.App. 1972); State ex rel. Wilson v. Preston, 173 Ohio St. 203, 181 N.E.2d 31 (1962) (on which Illustration 12 is based); Barry Laboratories, Inc. v. Wisconsin State Board of Pharmacy, 26 Wis.2d 505, 132 N.W.2d 833 (1965); cf. Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940); see Lerner v. Los Angeles City Board of Education, 59 Cal.2d 382, 398, 29 Cal.Rptr. 657, 666, 380 P.2d 97, 106 (1963). But see Land v. Dollar, 330 U.S. 731, 736, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); cf. United States v. Village of Little Chute, 248 F.2d 228 (7th Cir. 1957). See also 2 Davis, Administrative Law Treatise § 18.05 (1958). When the official is charged with a liability to which he himself must respond, however, he participates as an individual. See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Carter v. Carlson, 447 F.2d 358 (D.C.Cir. 1971), rev'd on other grounds sub nom., District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), reh. denied, 410 U.S. 959, 93 S.Ct. 1411, 35 L.Ed.2d 694 (1973) (on which Illustration 13 is based).

*Comment f.* On the problem of government agencies having distinct responsibilities, compare Barnett v. Develle, 289 So.2d 129 (La.1974), and Comm'rs of State Ins. Fund v. Low, 3 N.Y.2d 590, 170 N.Y.S.2d 795, 148 N.E.2d 136 (1958), with French v. Rishell, 40 Cal.2d 477, 254 P.2d 26 (1953), from which Illustration 14 is drawn. See also Note, Res Judicata and Intra-Governmental Inconsistencies, 49 Colum.L.Rev. 640 (1949).

**CROSS REFERENCES:** Digest System Key Numbers:

Judgment 689, 702, 703
Parties 1

**Legal Topics:**

For related research and practice materials, see the following legal topics:

Civil Procedure > Parties > General Overview

Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata

Service: **Get by LEXSTAT®**
TOC: Restatement 2d, Judgments - Rule Sections  > / . . . / > Topic 1- Parties and Persons Represented by Parties > **§ 36 Party Appearing in Different Capacities**
Citation: **Judgments Second 36**
View: Full
Date/Time: Monday, November 2, 2009 - 2:04 PM EST

AUTH4-000008

Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help



About LexisNexis  | Terms & Conditions  | Contact Us
Copyright ©  2009 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

AUTH4-000009

LexisNexis® *Total Research System*                    Switch Client ┊ Preferences ┊ Sign Out ┊ ? Help

Search ┊ Research Tasks ┊ Get a Document ┊ Shepard's® ┊ Alerts ┊ Total Litigator ┊ Transactional Advisor ┊ Cour

FOCUS™ Terms [                    ] Search Within [Original Results (1 - 1)  ▼] [Go ⇒]
Advanced...

Service: **Get by LEXSEE®**
Citation: **343 F.3d 811**

*343 F.3d 811, *; 2003 U.S. App. LEXIS 18797, **;*
*2003 FED App. 0325P (6th Cir.), ***; 148 Lab. Cas. (CCH) P34,751*

Joey L. Mitchell, Plaintiff-Appellant, v. Glenn Chapman, et al., Defendants-Appellees.

No. 01-5571

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

343 F.3d 811; 2003 U.S. App. LEXIS 18797; 2003 FED App. 0325P (6th Cir.); 148 Lab. Cas.
(CCH) P34,751; 84 Empl. Prac. Dec. (CCH) P41,483; 8 Wage & Hour Cas. 2d (BNA) 1817

February 7, 2003, Argued
September 11, 2003, Decided
September 11, 2003, Filed

**SUBSEQUENT HISTORY:** Rehearing, en banc, denied by Mitchell v. Chapman, 2003 U.S.
App. LEXIS 26711 (6th Cir., Dec. 23, 2003)
US Supreme Court certiorari denied by Mitchell v. Chapman, 542 U.S. 937, 124 S. Ct. 2908,
159 L. Ed. 2d 813, 2004 U.S. LEXIS 4615 (U.S., June 28, 2004)

**PRIOR HISTORY:** [**1] Appeal from the United States District Court for the Eastern
District of Kentucky at Lexington. No. 00-00179. Karl S. Forester, Chief District Judge.

**DISPOSITION:** Affirmed.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Appellant complainant sought review of a summary judgment
from the United States District Court for the Eastern District of Kentucky at Lexington
rendered in favor of appellees, the United States Postal Service (USPS) as employer and
three USPS employees, in the complainant's action under 42 U.S.C.S. § 1983 and under
the Family and Medical Leave Act (FMLA), 29 U.S.C.S. §§ 2601-2654.

**OVERVIEW:** The complainant, a letter carrier, filed the instant action after appellees
refused his request to withdraw his application for a transfer to a clerk's position based on
chronic neck pain. The court affirmed the judgment. Because the complainant's prior
action under the Rehabilitation Act and the ADA had been dismissed for failure to comply
with the condition precedent of contacting an EEO counselor within 45 days of the
allegedly discriminatory conduct, the court held that the instant action against USPS and
against the employees in their official capacities was barred by the doctrine of claim
preclusion. The court found that there was a final decision on the merits in the prior action
and that the complainant's instant claims should have been brought in the prior action.
Although the rule of differing capacities enabled the complainant to assert individual
capacity claims against the USPS employees, the court held that the district court properly
interpreted the FMLA to preclude the complainant's individual capacity claims under FMLA.

AUTH5-000001

The court also rejected the complainant's assertion that the district court should have considered his § 1983 claim in light of Bivens.

**OUTCOME:** The court affirmed the judgment.

**CORE TERMS:** individual liability, public agency, claim preclusion, individual capacity, counselor, condition precedent, indirectly, grievance, successor in interest, definition of employer, letter carrier, person engaged, commerce, official capacities, statute of limitations, summary judgment, claims asserted, fulfill, postal, Rehabilitation Act, interstate commerce, discriminatory, permanently, clerk, dash, neck, jurisdictional, disability, carrying, right to sue

**LEXISNEXIS® HEADNOTES**                                             ⊟ **Hide**

Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Time Limitations > General Overview 🔖

*HN1* �artist See 29 C.F.R. § 1614.105. *Shepardize:* Restrict By Headnote

Civil Procedure > Summary Judgment > Appellate Review > Standards of Review 🔖
Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview 🔖
Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata 🔖

*HN2* ⨪ The appeals court reviews a grant of summary judgment de novo. Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata 🔖
Civil Procedure > Appeals > Standards of Review > De Novo Review 🔖

*HN3* ⨪ The appeals court reviews the dismissal of a case on claim preclusion grounds de novo. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata 🔖

*HN4* ⨪ Claim preclusion is the doctrine by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or raising a new defense to defeat a prior judgment. It precludes not only relitigating a claim previously adjudicated; it also precludes litigating a claim or defense that should have been raised, but was not, in the prior suit. Claim preclusion only arises, however, in the presence of the following four elements: (1) where the prior decision was a final decision on the merits; (2) where the present action is between the same parties or their privies as those to the prior action; (3) where the claim in a present action should have been litigated in the prior action; and (4) where an identity exists between the prior and present actions. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview 🔖

AUTH5-000002

Governments > Federal Government > Employees & Officials
Labor & Employment Law > Discrimination > Federal Employees
*HN5* A party's exhaustion of administrative processes for filing a claim of discrimination
is a condition precedent to filing suit in the district court, rather than a
jurisdictional prerequisite. A federal employee's administrative obligation to
consult with an Equal Employment Opportunity counselor within a particular time
period is a precondition to filing suit subject to equitable tolling, waiver, and
estoppel. The distinction between a jurisdictional prerequisite and a condition
precedent is of significant analytical import because a dismissal for lack of subject
matter jurisdiction is not a dismissal on the merits for claim preclusion
purposes. More Like This Headnote | *Shepardize:* Restrict By Headnote

Administrative Law > Judicial Review > Reviewability > Exhaustion of Remedies
Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata
Governments > Legislation > Statutes of Limitations > Time Limitations
*HN6* Conditions precedent are similar to statutes of limitations. Moreover, a dismissal
for failing to comply with a statute of limitations is a decision on the merits for
claim preclusion purposes. More Like This Headnote | *Shepardize:* Restrict By Headnote

Administrative Law > Judicial Review > Reviewability > Exhaustion of Remedies
Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata
*HN7* A decision on the merits is one that signifies the "death knell" of the litigation. The
underlying principle of the "death knell" language is that a dismissal on the merits
is one that permanently forecloses a party from further advancing a claim or
defense. Not all dismissals for failing to meet a condition precedent will have this
permanently barring effect. Therefore, a dismissal for failing to file a condition
precedent is a decision on the merits only if the aggrieved party is permanently
foreclosed from fulfilling the condition. More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation
Civil Procedure > Parties > Capacity of Parties > General Overview
Civil Procedure > Remedies > Damages > Punitive Damages
*HN8* While it is clearly preferable that plaintiffs explicitly state whether a defendant is
sued in his or her "individual capacity," failure to do so is not fatal if the course of
proceedings otherwise indicates that the defendant received sufficient notice.
Harriman's "course of the proceedings" test examines the nature of the plaintiff's
claims, requests for compensatory or punitive damages, and the nature of any
defenses raised in response to the complaint, particularly claims of qualified
immunity, to determine whether the defendant had actual knowledge of the
potential for individual liability. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Rights Law > Immunity From Liability > Executive Officials
Civil Rights Law > Immunity From Liability > Local Officials > Customs & Policies
*HN9* Absolute immunity extends only to a very limited class of officials including the
President of the United States, legislators carrying out their legislative functions,
and judges carrying out their judicial functions. As most public employees do not
fall into this narrow class of officials, acts taken in the course of their official duties
may serve as the basis for individual liability claims. More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Parties > Capacity of Parties > General Overview
Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata

AUTH5-000003

*HN10*⬧In the context of claim preclusion, privity means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented. The rule of differing capacities provides that a party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity. The rule of differing capacities generally operates to allow a subsequent individual capacity suit against a governmental official even where a prior suit alleged an official capacity claim against the same official.  More Like This Headnote | *Sheterdize:* Restrict By Headnote

Admiralty Law > Arbitration > General Overview 🖼
Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act
Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Coverage & Definitions >
General Overview 🖼
*HN11*⬧A collective bargaining agreement must contain a "clear and unmistakable waiver" of an employee's Family and Medical Leave Act rights to foreclose his entitlement to a judicial forum.  More Like This Headnote | *Sheterdize:* Restrict By Headnote

Governments > Federal Government > U.S. Postal Service 🖼
Labor & Employment Law > Discrimination > Federal Employees 🖼
Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Coverage & Definitions >
Employers 🖼
*HN12*⬧United States Postal Service (USPS) employees may not allege Bivens claims arising out of their employment relationship with the USPS.  More Like This Headnote | *Sheterdize:* Restrict By Headnote

Governments > Legislation > Interpretation 🖼
*HN13*⬧Under accepted canons of statutory interpretation, the court must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous. The plain meaning of the statute controls, except in rare cases in which the literal application of the statutory language would compel an odd result or produce a result demonstrably at odds with legislative intent. The court must begin with the statute's plain language, and may resort to a review of congressional intent or legislative history only when the language of the statute is not clear.  More Like This Headnote | *Sheterdize:* Restrict By Headnote

Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Coverage & Definitions >
Employees 🖼
Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Coverage & Definitions >
Restoration of Job & Benefits 🖼
Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Remedies 🖼
*HN14*⬧The Family and Medical Leave Act (FMLA) entitles "eligible employees" to take up to 12 weeks of unpaid leave in any 12-month period for qualifying medical or family reasons. 29 U.S.C.S. § 2612(a)(1). The FMLA ensures that the employee will be restored to the same or an equivalent position upon returning to work. 29 U.S.C.S. § 2614(a)(1). The FMLA creates a private right of action entitling "eligible employees" to seek both equitable relief and money damages against any employer (including a public agency) in any federal or state court of competent jurisdiction, 29 U.S.C.S. § 2617(a)(2), should that employer interfere with, restrain, or deny the exercise of FMLA rights, 29 U.S.C.S. § 2615(a)(1). The FMLA expressly incorporates into its provisions the Fair Labor Standards Act's (FLSA), 29 U.S.C.S. §§ 201-219, definition of "employee." 29 U.S.C.S. § 2611(3). The FLSA defines "employee" as any individual employed by an

AUTH5-000004

employer and includes any individual employed by the United States Postal Service. 29 U.S.C.S. § 203(e)(1), (2)(B). An "eligible employee" under the FMLA is an "employee" who has been employed for at least 12 months by the employer with respect to whom leave is requested and for at least 1,250 hours of service with such employer during the previous 12-month period. 29 U.S.C.S. § 2611(2) (A).  More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment > Employers 🔒
Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act
Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Coverage & Definitions > Employers 🔒
*HN15*⚲See 29 U.S.C.S. § 2611(4)(A), (B).

Labor & Employment Law > Employment Relationships > At-Will Employment > Employers 🔒
Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act
Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Coverage & Definitions > Employers 🔒
*HN16*⚲The Family and Medical Leave Act (FMLA) borrows from Fair Labor Standards Act for its definition of "public agency." 29 U.S.C.S. § 203(x), which is referenced in the FMLA's definition of "employer," provides the following definition of "public agency": "Public Agency" means the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Rate Commission), a State, or a political subdivision of a State; or any interstate governmental agency. More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment > Employees 🔒
Labor & Employment Law > Employment Relationships > At-Will Employment > Employers 🔒
Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act
*HN17*⚲See 29 C.F.R. § 825.104(d).

Administrative Law > Agency Rulemaking > Rule Application & Interpretation > General Overview 🔒
Governments > Legislation > Interpretation 🔒
Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act
*HN18*⚲The Secretary of Labor has the authority to issue regulations pertaining to the Family and Medical Leave Act. 29 U.S.C.S. § 2654. Generally, the court defers to the regulations when determining how to interpret a statute, as long as the regulations present a reasonable interpretation of the statute. That is, the regulation must implement the congressional mandate in some reasonable manner. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Parties > Capacity of Parties > General Overview 🔒
Governments > Federal Government > Employees & Officials 🔒
Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act
*HN19*⚲The Family and Medical Leave Act's individual liability provision does not extend to public agencies. More Like This Headnote | *Shepardize:* Restrict By Headnote

Administrative Law > Agency Rulemaking > Rule Application & Interpretation > General Overview 🔒
Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act
Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Coverage & Definitions > Employers 🔒
*HN20*⚲29 C.F.R. § 825.104(a) provides that employers covered by Family and Medical Leave Act also include any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer, any successor in

AUTH5-000005

interest of a covered employer, and any public agency. More Like This Headnote |
*Shepardize:* Restrict By Headnote

**COUNSEL:** ARGUED: James M. Morris, MORRIS & MORRIS, Lexington, Kentucky, for
Appellant.

Sharon Swingle, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE
SECTION, Washington, D.C., for Appellees.

ON BRIEF: James M. Morris, MORRIS & MORRIS, Lexington, Kentucky, for Appellant.

Sharon Swingle, Mark B. Stern, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION,
APPELLATE SECTION, Washington, D.C., for Appellees.

**JUDGES:** Before: GILMAN and GIBBONS, Circuit Judges; ECONOMUS, District Judge. *

* The Honorable Peter C. Economus, United States District Judge for the Northern District of
Ohio, sitting by designation.

**OPINION BY:** PETER C. ECONOMUS

**OPINION**

   **[*813]   [***2]**  PETER C. ECONOMUS, District Judge.

I. OVERVIEW

The Appellant, Joey L. Mitchell ("Appellant" or "Mitchell"), appeals the district court's grant of
summary judgment to his employer, the United States Postal Service ("USPS"), and three
USPS employees, in this action alleging various civil rights claims.

Mitchell advances three arguments on appeal: (1) the district **[**2]** court misapplied the
doctrine of claim preclusion as a means to bar the claims alleged against the defendants in
the defendants' official capacities; (2) the district court should have allowed his 42 U.S.C. §
1983 claims to proceed **[*814]** under the holding of *Bivens v. Six Unknown Federal
Narcotics Agents,* 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971); and (3) the district
court erred in interpreting the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§
2601-2654 (1994), as to preclude individual liability claims asserted against federal agency
supervisors.

For the reasons that follow, we AFFIRM the decision of the district court.

   **[***3]** II. BACKGROUND

A. FACTUAL HISTORY

On July 8, 1995, Mitchell began his employ as a letter carrier at the United States Post Office
located in Paris, Kentucky (the "Paris Facility"). (J.A., 23, 166.) Prior to and throughout his
employment, Mitchell suffered from chronic neck pain arising from an injury that he
sustained while serving in the United States Navy. (J.A., 23, 54, 57-58,166.)

On November 11, 1996, Mitchell's treating physician, Dr. Ballard Wright ("Dr. Wright"),

AUTH5-000006

**[\*\*3]** certified that Mitchell's neck pain was a chronic serious illness pursuant to the FMLA. (J.A., 24, 54, 59, 166.) Dr. Wright's certification indicated that the neck injury required Mitchell's occasional absence from work. (J.A., 24, 54, 59,166.)

On February 12, 1997, Mitchell submitted a formal request to the Paris Facility Postmaster, Richard A. Derrickson ("Derrickson"), requesting a transfer from his letter carrier position to the position of clerk. (J.A., 16-17, 24, 77, 85.) Derrickson took no immediate action on the transfer request.

Several months later, on May 12, 1997, Mitchell failed to appear during his regularly scheduled shift. (J.A., 17, 24, 116.) When Mitchell returned to work the following day, his acting supervisor, Glenn Chapman ("Chapman"), verbally reprimanded Mitchell for the non-excused absence. (J.A., 17, 24, 116, 167.) Chapman indicated to Mitchell that poor attendance was a significant factor that could detrimentally impact Mitchell's transfer request. (J.A., 45, 116, 167.)

In response, Mitchell explained that his absence was the result of a re-injury to his neck that he sustained while carrying boxes of canned goods for a charity event. During the ensuing **[\*\*4]** volatile discussion, Mitchell declared his intention to designate the absence as FMLA leave and referred to Dr. Wright's prior certification. (J.A., 24, 45, 167, **[\*\*\*4]** 173.) Mitchell further informed Chapman that he would have to file for permanent disability if compelled to continue working as a letter carrier. (J.A., 40, 45, 116-17.) Ultimately, Mitchell designated the eight hours as unscheduled sick leave. (J.A., 24, 168.)

Chapman immediately alerted Derrickson to Mitchell's comments regarding the neck injury. (J.A., 77, 116-17.) In response to this information, Derrickson instructed Mitchell to receive a medical fitness-for-duty examination ("FFD Exam"). [1] (J.A., 17, 24, 78-79, 117, 169.) Derrickson additionally transferred Mitchell from letter carrier to temporary clerk duties pending the results of the FFD Exam. (J.A., 24, 78, 117, 167-68.)

**FOOTNOTES**

1 Postal regulations permitted management to order FFD Exams by a physician selected by the USPS "at any time and repeat as necessary, to safeguard the employee." (J.A., 78, 89-92.)

**[\*\*5]** On May 15, 1997, Mitchell provided to Derrickson a letter from Dr. Wright indicating that he was "medically cleared to perform his duties as a letter carrier for the U.S. Postal Service with no restrictions." (J.A., 12, 17, 24, 54, 60, 78-79, 93, 168.) Dr. Wright's letter further indicated that, "if a less physically strenuous position becomes available . . . [Mitchell **[\*815]** should] be considered for such a position so as to not exacerbate his head and neck pain." ( J.A., 54, 60, 93.) Derrickson refused to return Mitchell to the letter carrier position pending the results of the FFD Exam. (J.A., 24, 79, 168.)

On May 20, Mitchell's collective bargaining representative, the National Association of Letter Carriers, AFL-CIO (the "Union"), filed a grievance (the "Grievance") on Mitchell's behalf. The Grievance alleged violations of the FMLA and parallel provisions of the collective bargaining agreement (the "CBA") entered into between the Union and the USPS. (J.A., 17, 160, 169.)

**[\*\*\*5]** On May 23, 1997, Dr. Robert Davenport ("Dr. Davenport"), a physician under contract with the USPS, conducted a FFD Exam of Mitchell. (J.A., 13, 17, 24-25, 40, 45, 54, 61-66, 79, 169.) Dr. Davenport rendered **[\*\*6]** three determinations regarding Mitchell's condition: (1) Mitchell maintained the ability to perform letter carrier duties so long as he refrained from carrying mail with a satchel; (2) Mitchell could continue to perform clerk

AUTH5-000007

duties and maintain a low risk for injury; and (3) Mitchell should be referred to a neurosurgeon, Dr. John Gilbert ("Dr. Gilbert"), for further evaluation. (J.A., 25, 54, 66.)

That same day, the USPS denied the Grievance. (J.A., 160.) Pursuant to the CBA, the Union initiated Step 2 of the grievance procedure requesting that the USPS award Mitchell backpay, sick / annual leave, and reinstatement to letter carrier duties. (J.A., 13, 161.)

By letter dated June 9, 1997, the USPS denied the requested relief stating, "In the interest of the Grievant's health and safety, Management has taken [Mitchell] out of the situation causing him physical problems, pending further evaluation. Therefore in the absence of any contractual violation, the grievance is denied." (J.A., 161.) The Union thereafter initiated Step 3 of the grievance procedure. (J.A., 13, 162-64.)

A third physician, Dr. Gilbert, examined Mitchell on June 30, 1997 and issued a report returning Mitchell **[\*\*7]** to work duty without restrictions. (J.A., 13, 17, 25, 69, 169.) Subsequently, Naewana Nickles ("Nickles"), a USPS Occupational Health Nurse Administrator responsible for reviewing medical evaluations of USPS employees, received Dr. Gilbert's report. (J.A., 13, 25, 55.) Nickles found the report deficient in several respects and requested that Dr. Gilbert specifically address whether Mitchell could perform "all of the essential functions of a City Carrier without risk of hazard to self or others." (J.A., 13, 18, 25, 55, 70-71, 169-71.)

**[\*\*\*6]**  Dr. Gilbert responded to Nickles's request as follows:

> Based on my exam and discussion with the patient and the fact that the patient tells me that he feels he can do his job without restrictions, I feel this [sic] is not unreasonable for him to perform his job without restrictions. If the [USPS] would like a more detailed assessment of restrictions, . . . we would need to proceed with a functional capacity evaluation done by a licensed physical therapist.

> I note in your records that [Mitchell] has said that the stresses from carrying a satchel cause him problems on his neck. If this is indeed true, then I would recommend **[\*\*8]** that he not carry the satchel. However, the patient did not tell me this. He told me he felt he could do his job without restrictions. If you want to be on the safe side and if it is true that the patient feels that the satchel's giving him problems, then we need to get rid of the satchel.

(J.A., 25, 55, 72.)

Nickles ultimately reported to Derrickson that Mitchell "could continue carrying mail if [Mitchell] doesn't use [a] satchel."  **[\*816]**  (J.A., 55, 74, 79.) Derrickson did not, however, return Mitchell to full letter carrier duties. (J.A., 79.)

On August 11, 1997, Mitchell submitted a second request for transfer to a full-time clerk position. (J.A., 13, 18, 25, 80, 95.) Derrickson approved the request on August 19, 1997. (J.A., 13, 25, 80, 95.)

On August 25, 1997, Dr. Gilbert issued a supplemental report to the USPS indicating that Mitchell "can't work with a neck harness because it puts him at a high risk" for injury. (J.A., 55, 75.) Dr. Gilbert further indicated that he examined a model USPS waist harness for carrying mail that "transfers the weight from the bag from the shoulder to the waist" and  **[\*\*\*7]**  that Mitchell was at a "low risk" of injury while using the waist **[\*\*9]** harness. (J.A., 13-14, 55, 75.) Consequently, Dr. Gilbert "recommended releasing Mr. Mitchell to full duty restricted to using the harness provided to [him] by the [USPS] which transfers the weight of the bag to the waist rather than the shoulder." (J.A., 13-14, 55, 75.)

AUTH5-000008

Mitchell alleges that he attempted to withdraw his transfer request based on Dr. Gilbert's recommendation -- however, Derrickson refused the withdrawal. (J.A., 174-75.) Derrickson denies that Mitchell submitted such a request. (J.A., 80.) Mitchell's transfer to the clerk position became effective August 30, 1997. (J.A., 14, 25, 80, 96.)

B. PROCEDURAL HISTORY

*The EEO Proceedings*

Mitchell contacted an Equal Employment Opportunity ("EEO") counselor on October 30, 1997 alleging that Derrickson's refusal to return him to his letter carrier position constituted disability discrimination in violation of the FMLA and the Disabled Veterans Act. [2] (J.A., 11, 14, 25, 40, 42-46.) **[***8]** On June 6, 1998, Mitchell filed a formal EEO complaint of discrimination ("EEO Complaint) with the USPS alleging disability discrimination "based on accommodation." [3] (J.A., 12, 14, 26, 41, 47.)

**FOOTNOTES**

**2** Title twenty-nine of the Code of Federal Regulations, chapter fourteen, part 1614, establishes an extensive dispute resolution process to address a federal employee's charge of discrimination. This dispute resolution system requires "a complaining party to pursue administrative relief prior to court action, thereby encouraging more expedient, less formal, and less expensive resolution of disputes within the Federal Government and outside of court." *West v. Gibson*, 527 U.S. 212, 218-19, 144 L. Ed. 2d 196, 119 S. Ct. 1906 (1999). In particular, 29 C.F.R. § 1614.105 provides, in relevant part:

> *HN1*(a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.

> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

> (2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105 (2003). **[**10]**

**3** Twenty-nine C.F.R. § 1614.106 provides, in pertinent part:

> (a) A complaint must be filed with the agency that allegedly discriminated against the complainant.

> (b) A complaint must be filed within 15 days of receipt of the notice required by § 1614.105 (d), (e) or (f) [provisions regarding the completion of informal meetings with an EEO counselor].

AUTH5-000009

**[*817]** The USPS dismissed as untimely Mitchell's EEO Complaint, determining that Mitchell initiated contact with an EEO counselor beyond the forty-five day period provided in 29 C.F.R. 1614.105. (J.A., 12, 26, 45, 48-51.) Specifically, the USPS determined that Mitchell had not consulted with the EEO counselor until sixty-six days after the alleged discriminatory refusal to reinstate him as a mail carrier, and sixty days after the effective date of his transfer to a clerk position. (J.A., 45, 48-51.) Mitchell did not administratively appeal the USPS's decision.

**[***9]** *Mitchell I*

On November 17, 1998, Mitchell filed a complaint in the United States District Court for the Eastern District of Kentucky **[**11]** against the USPS and the Postmaster General, William Henderson ("Henderson"), alleging violations of the Rehabilitation Act of 1973, 29 U.S.C. §§ 700-796 (1994), and the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213 (1994). *See Mitchell v. Henderson ("Mitchell I"),* No. 98-469 (E.D. Ky. filed Nov. 1, 1998), at (J.A., 97 - 104). Mitchell's complaint sought relief predicated on two events: (1) the defendants' purported refusal of his request to return to letter carrier duties with the accommodation of a waist harness; and (2) his transfer to a lesser-paying clerk's position after requesting FMLA leave. *Mitchell I,* at (J.A., 97 - 104).

The district court granted summary judgment in favor of the defendants, resting its determination on Mitchell's failure to contact an EEO Counselor within forty-five days of the allegedly discriminatory conduct. (J.A., 106-12.)

*Resolution of the Grievance*

Several weeks later, on May 25, 1999, the Union and the USPS settled Mitchell's Step 3 Grievance. (J.A., 165.) The terms of the settlement awarded Mitchell backpay during the period that he served as a temporary clerk, **[**12]** as well as additional sick / vacation leave. (J.A., 165.)

*Mitchell II*

Nearly a year later, Mitchell filed a complaint in the United States District Court for the Eastern District of Kentucky against the USPS, Henderson, Chapman, Derrickson, and Nickles, where he re-asserted violations of the Rehabilitation Act and the ADA, as well as alleged additional claims pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII"), **[***10]** 42 U.S.C. §§ 2000a-2000h (1994); the FMLA; 42 U.S.C. § 1983; the Fourteenth Amendment to the United States Constitution; and the Kentucky Civil Rights Act ("KCRA"), Ky. Rev. Stat. Ann. §§ 344.010-.990. *See Mitchell v. Chapman (Mitchell II),* No. 00-179 (E.D. Ky. filed May 15, 2000), at (J.A., 6-22).

The defendants thereafter moved for the dismissal of the complaint pursuant to Fed. R. Civ. P. 12 (b)(1), (2), (3), and (6), or in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56 (b). [4] In response, Mitchell conceded that dismissal was proper as to all claims asserted against Henderson and all ADA claims. (J.A., 138-39, 143, 149.) **[**13]** The district court accordingly granted judgment in favor of **[*818]** the defendants on the conceded claims. (J.A., 28.)

**FOOTNOTES**

4 Rule 12 of the Federal Rules of Civil Procedure provides, in pertinent part:

AUTH5-000010

> If, on a motion asserting the defense numbered (6) to dismiss for failure of
> the pleading to state a claim upon which relief may be granted, matters
> outside of the pleading are presented to and not excluded by the court, the
> motion shall be treated as one for summary judgment and disposed of as
> provide in Rule 56.

Fed. R. Civ. P. 12 (b)(6). As the district court considered a series of affidavits and exhibits
attached to the motion, it converted the motion to one seeking summary judgment.

The district court further determined that the doctrine of claim preclusion rendered its
decision in *Mitchell I* as a bar to Mitchell's subsequent claims against the USPS, and all claims
asserted against Chapman, Derrickson, and Nickles in their official capacities. (J.A., 29-34.)
The district court declined, however, **[**14]** to invoke claim preclusion as to Mitchell's
individual capacity claims. (J.A., 30-32.)

The district court then considered the individual liability of Chapman, Derrickson, and Nickles.
The district court concluded that neither Title VII, the Rehabilitation Act, nor **[***11]**
Kentucky law imposed individual liability for discriminatory conduct. (J.A., 35-36.)
Consequently, the district court entered judgment in favor of the defendants on said claims.

The district court also awarded judgment to the defendants on Mitchell's individual capacity
FMLA claims. In so doing, the district court rejected Mitchell's contention that the statute
imposed individual liability on public employers. (J.A., 36-37.)

The district court further awarded judgment to the defendants on Mitchell's Section 1983
claims, reasoning: (1) federal employees do not act "under color of state law" as required by
the statute; and (2) Mitchell failed to comply with the one-year statute of limitations for
asserting Section 1983 claims. (J.A., 34-35.) Moreover, the district court held that the
Fourteenth Amendment was inapplicable to claims arising from actions of federal officials and
employees. (J.A., 35.)

Accordingly, **[**15]** the district court granted the defendants' motion for summary
judgment. The instant appeal ensued. (J.A., 39.)

III. STANDARD OF REVIEW

*HN2* This Court reviews a grant of summary judgment de novo. *See Brooks v. American
Broadcasting Cos., 932 F.2d 495, 500 (6th Cir. 1991).* Summary judgment is proper "if the
pleadings, depositions, answers to interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). When
confronted with a properly supported motion for summary judgment, the nonmoving party
must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for
trial exists "if the evidence is such that a reasonable jury could return a verdict for the
nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106
S. Ct. 2505 (1986). **[***12]**

IV. LAW AND ANALYSIS

A. Claim Preclusion

Mitchell challenges the district court's determination that the principles of claim preclusion, or
res judicata, [5] rendered the judgment in **[**16]** *Mitchell I* as a bar to **[*819]** *Mitchell
II.*
*HN3* This Court reviews the dismissal of a case on claim preclusion grounds de novo. *See*

AUTH5-000011

*Kane v. Magna Mixer Co.,* 71 F.3d 555, 560 (6th Cir. 1995) (citing *Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 582 (6th Cir. 1994)).

### FOOTNOTES

5 In *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 79 L. Ed. 2d 56, 104 S. Ct. 892 (1984), the United States Supreme Court expressed its preference for the use of the term "claim preclusion," rather than the more traditionally utilized term "res judicata." *Migra,* 465 U.S. at 77 n.1. Res judicata generally includes two separate concepts - claim preclusion and issue preclusion. Claim preclusion, or true res judicata, refers to effect of a prior judgment in foreclosing a subsequent *claim* that has never been litigated, because of a determination that it should have been advanced in an earlier action. *Id.* Issue preclusion, on the other hand, refers to the foreclosure of an issue previously litigated. *Id.*

[**17]   $^{HN4}$Claim preclusion is the doctrine by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or raising a new defense to defeat a prior judgment. *See Montana v. United States,* 440 U.S. 147, 153, 59 L. Ed. 2d 210, 99 S. Ct. 970 (1979). It precludes not only relitigating a claim previously adjudicated; it also precludes litigating a claim or defense that should have been raised, but was not, in the prior suit. *See Stern v. Mascio,* 262 F.3d 600, 608 (6th Cir.2001) (citing *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 918 F.2d 658, 660-61 (6th Cir.1990)). Claim preclusion only arises, however, in the presence of the following four elements: (1) where the prior decision was a final decision on the merits; (2) where the present action is between the same parties or their privies as those to the prior action; (3) where the claim in a present action should have been litigated in the prior action; and (4) where an identity [***13] exists between the prior and present actions. *See Kane,* 71 F.3d at 560.

Here, the central dispute involves the first [**18] three elements of claim preclusion - whether there was a final decision on the merits, whether the two actions were filed against the same parties or their privies, and whether the claims in *Mitchell II* should have been brought in *Mitchell I.* 6 The Court shall address each element in turn.

### FOOTNOTES

6 Mitchell concedes the fourth element - whether there is an identity between the claims asserted in *Mitchell I* and *Mitchell II.* Identity of causes of action means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chem. Co. v. Kulick,* 656 F.2d 1224, 1227 (6th Cir.1981). It is undisputed that the complaints in *Mitchell I* and *Mitchell II* allege identical facts, differing only in the introductory paragraphs.

1. Decision on the Merits

The district court determined that its judgment in *Mitchell I* resting on Mitchell's failure to fulfill a condition precedent to suit -- specifically, Mitchell's failure to pursue informal [**19] resolution with an EEO counselor within forty-five days of an alleged discriminatory act -- constituted a decision on the merits for claim preclusion purposes. In reaching this conclusion, the district court acknowledged the lack of precedent from this Court regarding whether a dismissal for failing to fulfill a condition precedent is a decision on the merits. 7 (J.A., 29.) In the absence of controlling authority, the district court reasoned: (1) the deadline for consulting with an EEO counselor was similar to a statute of [***14] limitations; 8 (2) a dismissal on statute of limitations grounds was an adjudication on the

AUTH5-000012

merits for claim preclusion purposes; [9] and (3) a dismissal of plaintiff's claims for failure to contact an EEO counselor therefore was a final decision on the merits for claim preclusion purposes. (J.A., 29-30.)

---

**FOOTNOTES**

7 See *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998) ("Rivers urges that a dismissal for failure to satisfy a condition precedent should not be considered an adjudication on the merits for claim preclusion purposes . . . We need not decide this question today."). **[**20]**

8 Citing *Boddy v. Dean*, 821 F.2d 346, 350 (6th Cir. 1987).

9 Citing *Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 (6th Cir. 1978).

---

The district court's analysis rests on sound legal authority. It is well-established that **HN5**a party's exhaustion of administrative **[*820]** processes for filing a claim of discrimination is a condition precedent to filing suit in the district court, rather than a jurisdictional prerequisite. See *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 71 L. Ed. 2d 234, 102 S. Ct. 1127 (1982) (holding that the administrative provisions requiring an employee to pursue a charge of discrimination with the EEOC are conditions precedent to suit subject to waiver, tolling and estoppel); *see also Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 95, 112 L. Ed. 2d 435, 111 S. Ct. 453 (1990) (extending *Zipes* to administrative requirements for federal employees bringing suits against federal agencies). This Court has held that a federal employee's administrative obligation to consult with an EEO counselor within a particular time period is a precondition **[**21]** to filing suit subject to equitable tolling, waiver and estoppel. See *Boddy*, 821 F.3d at 350 (citing *Zipes*, 455 U.S. 385, 71 L. Ed. 2d 234, 102 S. Ct. 1127). The distinction between a jurisdictional prerequisite and a condition precedent is of significant analytical import because a dismissal for lack of subject matter jurisdiction is not a dismissal on the merits for claim preclusion purposes. See *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 916 (6th Cir. 1986) ("Normally, Rule 12(b)(6) judgments are dismissals on the merits and Rule 12(b)(1) dismissals are not.") (Citation omitted).

**[***15]** It further is well-established that **HN6**conditions precedent are similar to statutes of limitations. See *Truitt v. County of Wayne*, 148 F.3d 644, 646-47 (6th Cir. 1998) ("We hold that [an administrative condition precedent requiring a plaintiff to file suit within ninety days of receiving a right to sue letter from the EEOC] is not a jurisdictional requirement but, instead, is a timing requirement similar to a statute of limitations, subject to waiver, estoppel and equitable tolling."). Moreover, a dismissal for failing to comply with a statute of limitations **[**22]** is a decision on the merits for claim preclusion purposes. See *Nathan v. Rowan*, 651 F.2d 1223, 1226 (6th Cir. 1981). Therefore, the district court did not make an impermissible leap in analogizing a dismissal for failing to fulfill a condition precedent to a dismissal arising from a failure to comply with the statute of limitations.

*The limitations of the district court's approach*

While the district court reached the correct conclusion -- that is, a dismissal predicated on a federal employee's failure to consult with an EEO counselor within forty-five days is a decision on the merits for claim preclusion purposes -- the accuracy of district court's rationale requires further explanation. The specific condition precedent addressed by the district court is readily akin to dismissal for failing to comply with a statute of limitations. In either context, whether the plaintiff fails to consult with the EEO counselor within forty-five days of the discriminatory event, or whether the plaintiff fails to file suit within the statutorily prescribed period, the party is permanently foreclosed from meeting the condition or

AUTH5-000013

statutory requirement. Simply, the party is unable **[\*\*23]** to rewind the clock, fulfill the condition / file the action within the requisite time period, and proceed to an adjudication of his or her claim. However, there are certain condition precedents where, although the party may not have fulfilled the condition prior to filing suit in the district court, he or she may return to the administrative process, fulfill the **[\*\*\*16]** condition, and re-file the civil action. ¹⁰ Therefore, not all decisions finding **[\*821]** that a plaintiff failed to fulfill a condition precedent are readily comparable to a finding that a party failed to comply with the statute of limitations.

---

**FOOTNOTES**

**10** For example, 29 C.F.R. § 1614.407 (a) requires an aggrieved party to file suit within ninety days of receiving notice of the EEOC's final action or dismissal of a complaint. When the administrative process is complete, the EEOC issues to the aggrieved party a "right to sue letter" and the party thereafter has ninety days in which to file a civil action. See 29 C.F.R. § 1614.109. Where the plaintiff files suit prior to receiving the right to sue letter, the district court is compelled to dismiss the premature action for failure to exhaust administrative remedies. See Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 560 (6th Cir. 2000). It is well-settled that the ninety day right to sue provision is an administrative condition precedent, rather than a jurisdictional prerequisite. See Truitt, 148 F.3d at 646-47. Consequently, the court should dismiss the action pursuant to Rule 12 (b)(6), for failure to state a claim, rather than Rule 12 (b)(1), for lack of subject matter jurisdiction. Under the district court's analysis, such a dismissal would be on the merits for claim preclusion purposes, notwithstanding the aggrieved party's ability to return to the administrative process, await a right to sue letter, and subsequently re-file the action.

---

**[\*\*24]** It is the potential overreaching of the district court's reasoning that warrants an express limitation. This Court repeatedly has cautioned that ᴴᴺ⁷⁺a decision on the merits is one that signifies the "death knell" of the litigation. See Wilkins v. Jakeway, 183 F.3d 528, 534 (6th Cir. 1999) ("This is a death knell for Plaintiff's [False Claims Act] claims against the Defendants, in their individual capacities, and is essentially a decision on the merits."); Rogers, 798 F.2d at 916 ("Where a statutory right is being pursued, however, and the defense raised is that the plaintiff or defendant does not come within the purview of the statute, the judicial acceptance of this defense, . . . is the death knell of the litigation and has the same effect as a dismissal on the merits."). The underlying principle of this "death knell" language is that a dismissal on the merits is one that permanently forecloses a party from further advancing a claim or defense.

**[\*\*\*17]** Here, the district court's determination that Mitchell failed to meet with an EEO counselor within the requisite time period permanently foreclosed Mitchell's Rehabilitation Act claim. Mitchell **[\*\*25]** could not, and will forever remain unable, to meet with an EEO counselor within forty-five days of the discriminatory act as required by 29 C.F.R. § 1614.105. However, not all dismissals for failing to meet a condition precedent will have this permanently barring effect. Therefore, a dismissal for failing to file a condition precedent is a decision on the merits only if the aggrieved party is permanently foreclosed from fulfilling the condition. As Mitchell was permanently foreclosed from fulfilling the requirements of 29 C.F.R. § 1614.105, the district court correctly determined that its decision in Mitchell I was a decision on the merits.

Mitchell nevertheless asserts that as the judgment in Mitchell I was not one on the merits because the district court relied on a "technicality" (Final Br. of Appellant, at 14) and, or, a "procedural defect" (Final Br. of Appellant, at 15). In support of his contention, Mitchell relies on Wilkins, 183 F.3d 528, where a prior panel of this Court stated: "Although the district

AUTH5-000014

court's dismissal was framed in terms of a Rule 12(b)(6) dismissal on the merits, in actuality, **[\*\*26]** the court's determination that the individual defendants were not 'employers' under the [False Claims Act] was jurisdictional because it did not go to the merits of Plaintiff's suit." *Wilkins,* 183 F.3d at 534.

Mitchell erroneously interprets the foregoing statements as requiring a judgment to reach the merits of a particular claim in order to have a preclusive effect. The patent deficiency in Mitchell's assertion, as demonstrated *supra,* is that dismissals for failing to comply with "technicalities" such as a statute of limitations **[\*822]** constitute decisions on the merits. Moreover, Mitchell misplaces his reliance on *Wilkins* as there the Court addressed the preclusive effect of a judgment in the context of a party's failure to establish a jurisdictional prerequisite. In contrast, *Mitchell I* addressed a failure to fulfill a condition **[\*\*\*18]** precedent. As discussed *supra,* there is a significant distinction between a dismissal for a failure to fulfill a jurisdictional prerequisite and a dismissal for a failure to fulfill a condition precedent. As such, *Wilkins* is inapposite to the matter *sub judice.*

The instant appeal falls squarely within this **[\*\*27]** Court's precedent establishing that a decision on the merits is one that permanently forecloses a party from advancing a claim or defense. As *Mitchell I* permanently foreclosed Mitchell from asserting claims pursuant to the Rehabilitation Act as a result of Mitchell's failure to meet with an EEOC counselor during the requisite period, the dismissal was a decision on the merits for claim preclusion purposes.

2. Same Parties or Privies

The second element of claim preclusion operates to bar successive claims among the same parties or their privies. The district court expressly determined that its decision in *Mitchell I* barred all claims against the USPS because the USPS was a named party to the prior action. (J.A., 30-31.) Similarly, the district court determined that its judgment in *Mitchell I* barred all claims alleged against Chapman, Derrickson, and Nickles in their official capacities because a suit against a public employee in his or her official capacity is a suit against the agency itself. (J.A., 30-31); *see also Kentucky v. Graham,* 473 U.S. 159, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985); *Monell v. Dep't. of Social Servs.,* 436 U.S. 658, 690 n. 55, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). **[\*\*28]** Neither party disputes the district court's determinations in these respects.

*The Appellees' attempt to extend claim preclusion to Mitchell's individual capacity claims*

The Appellees nevertheless urge this Court to extend the preclusive effect of *Mitchell I* to the individual capacity claims asserted against Chapman, Derrickson, and Nickles. (Final Br. of Appellees, at 23-31.) In support of their **[\*\*\*19]** contention, the Appellees initially assert that the district court erred in construing the complaint in *Mitchell II* as alleging individual capacity claims. (J.A., 27-30.)

In *Moore v. City of Harriman,* 272 F.3d 769 (6th Cir. 2001), this Court stated [HN8+]"while it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity,' failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." *Id.* (Internal citation and quotation marks omitted). *Harriman's* "course of the proceedings" test examines "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to **[\*\*29]** the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." *Harriman,* 272 F.3d at 772 n.1 (citations omitted).

The Appellees acknowledge that the caption of the complaint identifies Chapman, Derrickson, and Nickles as subject to suit in their official and individual capacities. (J.A., 27-30.) The Appellees contend, however, that the allegations of the complaint demonstrate that all of the

AUTH5-000015

alleged conduct committed by Chapman, Derrickson, and Nickles occurred while the defendants acted in their official capacities as postal service employees. (J.A., 27-30.) Consequently, the Appellees argue that this "official conduct" cannot give rise to individual liability claims.

   **[*823]**   In *Hafer v. Melo*, 502 U.S. 21, 116 L. Ed. 2d 301, 112 S. Ct. 358 (1991), the United States Supreme Court rejected the argument advanced by the Appellees that "officials may not be held liable in their personal capacity for actions they take in their official capacity." *Hafer*, 502 at 27. The Court reasoned that such a theory "would absolutely immunize state officials from personal liability **[**30]** for acts within their authority and necessary to fulfilling governmental responsibilities." *Hafer*, 502 U.S. at 28. The Court further reasoned that such **HN9** absolute **[***20]** immunity extends only to a very limited class of officials, "including the President of the United States, legislators carrying out their legislative functions, and judges carrying out their judicial functions." *Hafer*, 502 U.S. at 28. As most public employees, including the Appellees, do not fall into this narrow class of officials, acts taken in the course of their official duties may serve as the basis for individual liability claims. [11] Therefore, the Appellees' argument is without merit.

---

**FOOTNOTES**

[11] In addition, the unique waiver of sovereign immunity applicable to actions against the USPS allows for official capacity claims against USPS employees. *See* 39 U.S.C. § 401 ("The Postal Service shall have the following general powers - (1) to sue and be sued in its official name."). Therefore, USPS employees are not cloaked with absolute immunity for their actions.

---

   **[**31]**   The Appellees alternatively assert that the judgment in *Mitchell I* precludes the individual capacity claims because Chapman, Derrickson, and Nickles were in privity with the USPS. (J.A., 22-27.) **HN10** In the context of claim preclusion, "privity . . . means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *Sanders Confectionery Prods., Inc. v. Heller*, 973 F.2d 474, 481 (6th Cir. 1992). The Appellees fail to acknowledge, however, that the rule of differing capacities provides that "[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." *Restatement Second of Judgments* § 36(2) (1982). The rule of differing capacities generally operates to allow a subsequent individual capacity suit against a governmental official even where a prior suit alleged an official capacity claim against the same official. *See Wilkins*, 183 F.3d at 534-35 (recognizing the distinction between individual and official capacity claims **[**32]** and applying the rule of differing capacities -- albeit without explicitly referring to the rule); *see also Warnock v. Pecos County*, 116 F.3d 776 **[***21]** (5th Cir. 1997) (holding that a prior suit against a municipality does not bar a later suit against local officials in their individual capacity); *Conner v. Reinhard*, 847 F.2d 384, 395 (7th Cir.) (holding that a prior suit against a municipality does not bar a subsequent suit against officials individually because official capacity and personal capacity suits involve different legal theories and defenses), *cert. denied*, 488 U.S. 856, 109 S. Ct. 147, 102 L. Ed. 2d 118 (1988); *Headley v. Bacon*, 828 F.2d 1272, 1277-79 (8th Cir. 1987) (distinguishing privity between a governmental entity and officials sued in their individual capacities). *See also Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 188 (5th Cir.1990) ("Res judicata does not apply when the parties appear in one action in a representative capacity and in a subsequent action in an individual capacity.").

The rule of differing capacities therefore **[**33]** enables Mitchell to assert individual capacity claims against Chapman, Derrickson, and Nickles.

AUTH5-000016

[*824]  3. Was Or Should Have Been Litigated In The Prior Action

The central purpose of claim preclusion is to prevent the "relitigating of issues that were or could have been raised in [a prior] action." *Federated Dep't Stores, Inc., v. Moitie*, 452 U.S. 394, 398, 69 L. Ed. 2d 103, 101 S. Ct. 2424 (1981). The district court determined that Mitchell could have brought his Title VII, FMLA, 42 U.S.C. § 1983, Fourteenth Amendment, and KCRA claims in *Mitchell I*. The record supports the district court's finding.

It is undisputed that Mitchell was aware of all of the facts giving rise to his claims at the time he filed *Mitchell I*.  [***22]  Indeed, Mitchell expressly alleged disability discrimination [12] and violations of the FMLA in both his Grievance and his EEO charge filed prior to *Mitchell I*. (J.A., 42, 160.)

---

**FOOTNOTES**

12 Mitchell brought his Title VII claim on the basis of disability discrimination. Under Title VII, it is unlawful for an employer to discharge or otherwise discriminate against an individual with respect to "compensation, terms, conditions or privileges of employment on the basis of the individual's race, color, religion, sex or national origin." *See* 42 U.S.C. § 2000e-2(a). Title VII does not address disability discrimination.

---

[**34]  In an effort to explain his failure to assert all of his potential claims, Mitchell alleges he refrained from filing a FMLA action in *Mitchell I* because that claim was the subject of the Grievance. [13] As the district court noted, Mitchell fails to cite any provision of the CBA requiring him to submit FMLA claims to binding arbitration prior to initiating a civil action. (J.A., 33.) Assuming *arguendo*, that the CBA mandates binding arbitration, it is well-established that [HN11] the CBA must contain a "clear and unmistakable waiver" of Mitchell's FMLA rights to foreclose his entitlement to a judicial forum. *See Bratten v. SSI Servs., Inc.,* 185 F.3d 625, 631-632 (6th Cir. 1999) (citing *Wright v. Universal Maritime Serv. Corp.,* 525 U.S. 70, 82, 142 L. Ed. 2d 361, 119 S. Ct. 391 (1998)); *Plumley v. Southern Container, Inc.,* 303 F.3d 364 (1st Cir. 2002) (applying the "clear and unmistakable" waiver standard to FMLA claims); *Rogers v. New York University,* 220 F.3d 73 (2d Cir. 2000) (same). Mitchell fails to demonstrate any provision of the CBA containing a clear and unmistakable waiver of his statutory claims. Consequently,  [**35]  Mitchell fails to provide a sufficient justification for failing to file his statutory claims. [14]  [***23]

---

**FOOTNOTES**

13 Mitchell provides no explanation as to his failure to assert the other claims alleged in *Mitchell II*.

14 It must be acknowledged, however, that the stringent timing requirements of 29 C.F.R. § 1614.101, *et seq.*, present potential perils for a party alleging multiple claims in separate administrative fora. Here, Mitchell was required to file *Mitchell I* within ninety days of his receipt of the right to sue letter, dated August 19, 1999. Admittedly, Mitchell's FMLA Grievance was pending in Step 3 of the grievance procedure during this period. The appropriate course of action in this scenario was for Mitchell to timely file his civil action, alert the district court as to the pendency of the FMLA Grievance, and request a stay of the judicial proceedings while awaiting the resolution of the grievance. *See Churchill v. Star Enters.,* 183 F.3d 184, 192 (3d Cir. 1999) ("Attorneys should organize litigation that they are pursuing to avoid claim preclusion."). Upon resolution of the grievance, Mitchell could request the court to lift the stay and seek leave to amend his complaint in order to allege the FMLA action. To do otherwise, creates the very risk presented herein of

---

AUTH5-000017

obtaining a partial, yet preclusive, judgment.

**[\*\*36]**  4. Conclusions regarding claim preclusion

The doctrine of claim preclusion thereby renders the district court's judgment in *Mitchell I* as a bar to the claims asserted against the USPS, as well as the claims **[\*825]** alleged against Chapman, Derrickson, and Nickles in their official capacities. Claim preclusion does not, however, extend to the individual capacity claims asserted against Chapman, Derrickson, and Nickles because of the rule of differing capacities. As the district court correctly noted, Mitchell was not barred from arguing the merits of his individual capacity claims alleged pursuant to Title VII, the Rehabilitation Act, the KCRA, the FMLA, 42 U.S.C. § 1983, and the Fourteenth Amendment. 15  **[\*\*\*24]**

**FOOTNOTES**

15 Mitchell wisely fails to present any argument on appeal with respect to his Title VII, the Rehabilitation Act, or KCRA claims. *See Wathen v. GE*, 115 F.3d 400, 404-05 n.6 (6th Cir. 1997) (reaffirming that Title VII does not provide for individual liability and the KCRA does not impose individual liability); *Hiler v. Brown*, 177 F.3d 542 (6th Cir. 1999) (holding that the Rehabilitation Act does not impose individual liability). Consequently, these claims are considered abandoned for the purposes of appeal. *See Enertech v. Mahoning County Comm'rs*, 85 F.3d 257 (6th Cir. 1996).

**[\*\*37]**  B. Mitchell's 42 U.S.C. § 1983 and Fourteenth Amendment Claims

Mitchell asserts that the district court should have considered his 42 U.S.C. § 1983 and Fourteenth Amendment claims in light of *Bivens*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999.

Mitchell's argument requires little analysis. In *Bivens*, the Supreme Court recognized a right to recover damages against federal officials who violate an individual's constitutional rights. *See Bivens*, 403 U.S. at 395. Mitchell did not allege a *Bivens* claim in *Mitchell II*; rather, he averred claims pursuant to Section 1983. There lacks any authority in support of Mitchell's blanket proposition that a court must convert a Section 1983 claim asserted against federal officials to one asserting *Bivens* violations. Assuming *arguendo*, that this Court were to place such a requirement on the district courts, Mitchell's claim nevertheless fails. *Bivens* claims have a one year statute of limitations under Kentucky law. *See McSurely v. Hutchison*, 823 F.2d 1002 (6th Cir. 1987). As the district court acknowledged, Mitchell filed **[\*\*38]** his Section 1983 claim (or the purported *Bivens* action) nearly three years past the limitations period. (J.A., 34.)

Furthermore, it is well-settled that $^{HN12}$USPS employees may not allege *Bivens* claims arising out of their employment relationship with the USPS. *See Harper v. Frank*, 985 F.2d 285, 290 (6th Cir. 1993). *See also Turner v. Holbrook*, 278 F.3d 754 (8th Cir. 2002); *Pipkin v. United States Postal Serv.*, 951 F.2d 272, 275 (10th Cir. 1991). Consequently, Mitchell's purported *Bivens* claim fails as a matter of law.

C. FMLA Individual Liability for Public Agency Employers

Mitchell's final assertion on appeal is that the district court erroneously interpreted the FMLA as to preclude individual liability claims against public agency employers. The issue of whether the FMLA provides for individual liability against **[\*\*\*25]** a public employer is a matter of first impression for this Court.

AUTH5-000018

*HN13* "Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, **[\*\*39]** meaningless or superfluous." See *Lake Cumberland Trust, Inc. v. United States Environmental Protection Agency, 954 F.2d 1218, 1222 (6th Cir. 1992)* (citation omitted). The plain meaning of the statute controls, except in rare cases in which the literal application of the statutory language would compel an odd result or produce **[\*826]** a result demonstrably at odds with legislative intent. See *Public Citizen v. United States Dep't of Justice, 491 U.S. 440, 105 L. Ed. 2d 377, 109 S. Ct. 2558 (1989)*. We must begin with the statute's plain language, and may resort to a review of congressional intent or legislative history only when the language of the statute is not clear. See *Hoffman v. Comshare, Inc. (In re Comshare Inc. Sec. Litig.), 183 F.3d 542, 549 (6th Cir. 1999)* (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 64 L. Ed. 2d 766, 100 S. Ct. 2051 (1980)*).

Turning to the statute, *HN14* the FMLA entitles "eligible employees" to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons. See *29 U.S.C. § 2612(a)(1)*. The statute ensures that the employee will be restored **[\*\*40]** to the same or an equivalent position upon returning to work. See *29 U.S.C. § 2614(a)(1)*.

The statute creates a private right of action entitling "eligible employees" to seek both equitable relief and money damages "against any employer (including a public agency) in any Federal or State court of competent jurisdiction," 29 U.S.C. § 2617(a)(2), should that employer "interfere with, restrain, or deny the exercise of" FMLA rights, 29 U.S.C. § 2615(a)(1).

**[\*\*\*26]** The FMLA expressly incorporates into its provisions the Fair Labor Standards Act's ("FLSA"), 29 U.S.C. §§ 201-219 (1994), definition of "employee." See 29 U.S.C. § 2611(3) ("The terms 'employ', 'employee', and 'State' have the same meanings given such terms in subsections (c), (e), and (g) of section 203 of this title [the FLSA]."). The FLSA defines employee as "any individual employed by an employer" and includes "any individual employed by the United States Postal Service." 29 U.S.C. § 203 (e)(1) & (2)(B). An "eligible employee" under the FMLA is an "employee" who "has **[\*\*41]** been employed for at least 12 months by the employer with respect to whom leave is requested . . .; and for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).

The FMLA defines "employer" as follows:

> *HN15* (4) Employer
>
> (A) In general
>
> The term "employer" -
>
> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or proceeding calendar year;
>
> (ii) includes --
>
> (I) any person who acts, directly or indirectly, in the interest of an employer to any employees of such employer; and

AUTH5-000019

(II) any successor in interest of the employer;

(iii) includes any "public agency", as defined in section 203(x) of this title; and **[\*\*\*27]**

(iv) includes the General Accounting Office and the Library of Congress.

(B) Public agency.

For purposes of subparagraph (A) (iii), a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce.

29 U.S.C. § 2611. **[\*\*42]** 16

---

**FOOTNOTES**

16 *HN16* The FMLA again borrows from FLSA for its definition of "public agency." Title 29 U.S.C. § 203(x), which is referenced in the FMLA's definition of "employer," provides the following definition of "public agency":

(x) "Public Agency" means the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Rate Commission), a State, or a political subdivision of a State; or any interstate governmental agency.

29 U.S.C. § 203 (x).

---

**[\*827]** The issue of whether the FMLA imposes individual liability turns on an interpretation of the term "employer." Of particular pertinence, the FMLA defines an "employer," in part, as "any person who acts, directly or indirectly, in the interest of the employer." 29 U.S.C. § 2611(4)(A)(ii)(I). This language mirrors the FLSA's definition of employer. *Compare* 29 U.S.C. § 2611 **[\*\*43]** (4)(A)(ii)(I) *with* 29 U.S.C. § 203(d) ("Employer includes any person acting directly or indirectly in the interest of any employer in relation to an employee and includes a public agency, but does not include a labor agency . . . ."). This is not a coincidence. The applicable regulations indicate:

*HN17* An "employer" [under the FMLA] includes any person who acts directly or indirectly in the interest of an employer to any of the employer's employees. The **[\*\*\*28]** definition of "employer" in section 3(d) of the Fair Labor Standards Act (FLSA), 29 U.S.C. 203(d), similarly includes any person acting directly or indirectly in the interest of an employer in relation to an employee. As under the FLSA, individuals such as corporate officers "acting in the interest of an employer" are individually liable for any violations of the requirements of the FMLA.

29 C.F.R. § 825.104 (d); 17*see also Chandler v. Specialty Tires of Am.*, 283 F.3d 818, 827 (6th Cir. 2002) (recognizing that the provisions of the FMLA generally mirror those provided in the FLSA) (citation omitted). This Court has interpreted **[\*\*44]** the FLSA's "any person who acts, directly or indirectly, in the interest of the employer" language to impose individual liability on private-sector employers. *See United States DOL v. Cole Enters., Inc.*, 62 F.3d 775 (6th Cir. 1995); *Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994). The presence of identical language in the FMLA tends to support a similar finding. *See Darby v. Bratch*, 287

AUTH5-000020

F.3d 673, 681 (8th Cir. 2002) (comparing the FMLA and FLSA definitions of "employer" and determining that each statute imposes individual liability); *see also Cantley v. Simmons*, 179 F. Supp. 2d 654, 655-58 (S.D. W. Va. 2002) ("Individual liability is permitted under the FMLA."); *Brunelle v. Cyro Indus.*, 225 F. Supp. 2d 67, 82 (D. Me. 2002) (holding that individual liability under the FMLA arises from a similar definition of employer under the FLSA); *Richardson v. CVS Corp.*, 207 F. Supp. 2d 733, 741-44 (E.D. Tenn. 2001) (finding that the majority of the courts have found "that **[\*\*\*29]** individuals can be subject to liability under the FMLA"); *Morrow v. Putnam*, 142 F. Supp. 2d 1271, 1275-76 (D. Nev. 2001) **[\*\*45]** (holding that individual liability exists under the FMLA); *Longstreth v. Copple*, 101 F. Supp. 2d 776, 780 (N.D. Iowa) (same); *Carter v. Refrigeration Sales Corp.*, 49 F. Supp. 2d 1028, 1030 (N.D. Ohio 1999) (recognizing that the majority of courts extend individual liability in FMLA claims); *Meara v. Bennett*, 27 F. Supp. 2d 288, 290 (D. Mass. 1998) ("Although the court has not been able to locate any Court of Appeals decisions addressing the issue of individual liability under the recently enacted FMLA, the decisional law developing **[\*828]** at the district court level appears to favor individual liability."); *Bryant v. Delbar Prods., Inc.*, 18 F. Supp. 2d 799, 807-09 (M.D. Tenn. 1998) (noting that "the majority of courts have determined that the FMLA extends individual liability to those who control a plaintiff's ability to take a leave of absence"); *Mercer v. Borden*, 11 F. Supp. 2d 1190, 1190 (C.D. Cal. 1998) ("Since the definition of 'employer' in the FMLA is identical to the definition of 'employer' in the [Fair Labor Standards Act], the Court holds that individuals are potentially subject to liability **[\*\*46]** under the FMLA. The plain language of the FMLA compels this result."); *Rupnow v. TRC, Inc.*, 999 F. Supp. 1047, 1048 (N.D. Ohio 1998) ("The weight of authority favors individual liability for a supervisor where the 'supervisor exercises sufficient control over the plaintiff's ability to take protected leave.'"); *Stubl v. T.A. Systems, Inc.*, 984 F. Supp. 1075, 1083 (E.D. Mich. 1997) ("Although reasonable arguments could be made that the policy rationale underlying the Title VII decisions finding no individual liability should dictate the same result under the FMLA, the plain language of the statute and the regulations mandate otherwise."); *Waters v. Baldwin County*, 936 F. Supp. 860, 863 (S.D. Ala. 1996) (finding that "employer" as used in the FMLA parallels "employer" in the FLSA; therefore, individual liability exists under the FMLA); *Knussman v. Maryland*, 935 F. Supp. 659, 664 (D. Md. 1996) ("Liability of individual defendants in their individual capacities is not foreclosed under the FMLA."); *Johnson v. A.P. Prod., Ltd.*, 934 F. Supp. 625 (S.D. **[\*\*\*30]** N.Y. 1996) (holding that "employer" in the **[\*\*47]** FMLA mirrors that used in the FLSA which imposes individual liability); *Freemon v. Foley*, 911 F. Supp. 326 (N.D. Ill. 1991) (same). **18**

## FOOTNOTES

**17** *HN18*⊼The Secretary of Labor has the authority to issue regulations pertaining to the FMLA. *See* 29 U.S.C. § 2654. Generally, we defer to the regulations when determining how to interpret a statute, as long as the regulations present a reasonable interpretation of the statute. *See Intermet Corp. & Subsidiaries v. Commissioner*, 209 F.3d 901, 904 (6th Cir. 2000). That is, the regulation must "implement the congressional mandate in some reasonable manner." *United States v. Correll*, 389 U.S. 299, 307, 19 L. Ed. 2d 537, 88 S. Ct. 445 (1967).

**18** *But see Carter v. Uniform Rental Serv. Of Culpepper, Inc.*, 977 F. Supp. 753, 759 (W.D. Va. 1997) (following Title VII case law and finding no individual liability under the FMLA); *Frizzell v. Southwest Motor Freight, Inc.*, 906 F. Supp. 441 (E.D. Tenn. 1995) (analogizing the FMLA to Title VII and rejecting individual liability under the FMLA).

**[\*\*48]** However, the narrow issue before this Court is whether the FMLA imposes individual liability on *public agency* employers. The FMLA's definition of "employer" segregates the specific provision regarding individual liability (i.e., the "directly or indirectly"

AUTH5-000021

clause), *see* 29 U.S.C. § 2611(4)(A)(ii)(I) (hereinafter the "individual liability provision"), from the specific provision addressing "public agency" employers, *see* 29 U.S.C. § 2611(4)(A)(iii) (hereinafter the "public agency provision"). The Court of Appeals for the Eighth Circuit has determined that this separation is of little interpretative import, noting that it did not see "'why public officials should be exempted from liability while managers in the private sector are not.'" *Darby*, 287 F.3d at 681 (quoting *Morrow*, 142 F. Supp. 2d at 1275). In contrast, the Court of Appeals for the Eleventh Circuit has determined that the FMLA does not impose individual liability on employees of public agencies. *See Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999).

Notwithstanding the guidance from these decisions, we respectfully **[\*\*49]** note that neither *Darby* nor *Wascura* attempt a textual analysis of the FMLA. The court in *Darby* limited its reasoning to the general proposition that public and private employers should not be treated separately under the statute. *See Darby*, 287 F.3d at 681. The *Wascura* court concluded that it was constrained by a prior decision of that court that did not extend individual liability under the FLSA to public agency employers. *See Wascura*, 169 F.3d at 686 (citing *Welch v. Laney*, 57 F.3d 1004 (11th Cir. 1995)). By **[\*\*\*31]** addressing the issue in terms of the FLSA, the Eleventh Circuit **[\*829]** avoided the potential interpretive dilemma posed in 29 U.S.C. § 2611(4).

Similarly, the district courts have resolved the issue with conflicting results. *See Morrow*, 142 F. Supp. 2d at 1273 (allowing FMLA suit against individual postal supervisors); *Keene v. Rinaldi*, 127 F. Supp. 2d 770, 776 (holding no governmental individual liability under the FMLA); *Kilvitis v. County of Luzerne*, 52 F. Supp. 2d 403, 412 (allowing FMLA suit against district justice in individual capacity); **[\*\*50]** *Meara*, 27 F. Supp. 2d at 291 (allowing FMLA suit against the district attorney in his individual capacity); *Knussman*, 935 F. Supp. at 664 (allowing FMLA individual capacity suit against officers in state highway patrol); *Freemon*, 911 F. Supp. at 330-31 (allowing FMLA supervisory liability claim against state hospital employee); *Frizzell*, 906 F. Supp. at 449 (determining no supervisory liability for public officials under the FMLA).

Our independent examination of the FMLA's text and structure reveals that the statute does not impose individual liability on public agency employers. Three factors compel this conclusion.

First, the section defining "employer," 29 U.S.C. § 2611(4)(A), explicitly separates the individual liability provision and public agency provision into two distinct clauses. Section 2611(4)(A) [19] commences with "'The term employer -- '", and follows with four clauses addressing what the term "employer" "means" and "includes." *See* 29 U.S.C. § 2611(4)(A). The use of an em dash following "employer" indicates that clauses (i), (ii), (iii), and (iv) modify **[\*\*51]** the term **[\*\*\*32]** "employer." [20] Therefore, the plain text of the statute provides the following definition of "employer":

> (1) An employer means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of the 20 or more calendar workweeks in the current or proceeding calendar year. *See* 29 U.S.C. § 2611 (4)(A)(i).

> (2) An employer includes any person who acts directly or indirectly in the interest of an employer to any of the employees of such employer; and an employer includes any successor in interest of an employer. *See* 29 U.S.C. § 2611 (4)(A)(ii).

> (3) An employer includes any "public agency" as that term is defined in the FLSA. *See* 29 U.S.C. § 2611 (4)(A)(iii).

AUTH5-000022

(4) An employer includes the General Accounting Office and the Library of Congress. [21] *See* 29 U.S.C. § 2611 (4)(A)(iv).

---

**FOOTNOTES**

[19] All further citations to "Section" shall refer to Title 29 of the United States Code. [**52]

[20] Throughout the FMLA, the use of the em dash indicates that the provisions following the em dash modify the immediately preceding provision or term. *See, e.g.,* 29 U.S.C. § 2601(a) & (b); § 2611(2)(A) & (B), (6), (11), (12); § 2612(b)(2),(e)(2), (f); § 2613(b); § 2614(a), (c)(2), (3); § 2615(b); § 2617; § 2618; § 2632.

[21] Congress added Section 2611(4)(A)(iv) several years following the enactment of the FMLA. *See* Pub.L. 104-1, § 202(c)(1)(A) (1995).

---

The relationship between "employer" and clauses (i) -(iv) is not in contention. Rather, it is the purported interrelationship among clauses (i)-(iv) that yields conflicting views regarding whether the FMLA imposes individual liability on public agency employers. *Compare Keene,* 127 F. Supp. 2d at 775 (explaining how Congress separated the [***33] individual liability provision from the public agency provision in an effort to clarify the "commingling" of public agency and private employers evident in the FLSA) *with Morrow,* 142 F. Supp. 2d at 1273 (interpreting [**53] the individual liability provision and public agency [*830] provision as inter-related.) An examination of Section 2611(4)(A)'s text and structure demonstrates that the individual liability provision and public agency provision are separate and distinct.

As noted earlier, the FMLA introduces related provisions through the use of the em dash. In accordance with this practice, Section 2611(4)(A) implements the em dash into its definition of employer. *See* 29 U.S.C. § 2611(4)(A). Similarly, Section 2611(4)(A)(ii) utilizes the em dash to establish a relationship between the individual liability provision and the provision addressing successors in interest. *See* 29 U.S.C. § 2611(4)(A)(ii). Notwithstanding this repeated and consistent use of the em dash, Section 2611(4)(A) lacks any punctuation demonstrating an inter-relationship between clauses (ii)-(iv). Indeed, the separation of otherwise related concepts (i.e., what the term "employer" "includes") into distinctly enumerated clauses compels an interpretation that treats each clause in an independent manner. This is particularly the case in light of clause (ii)'s inclusion of an em dash preceding [**54] the individual liability provision and successor in interest provision. *See* 29 U.S.C. § 2611 (4)(A)(ii). It stands to reason that if clauses (ii) - (iv) are similarly inter-related, the text of the statute would likewise provide punctuation or analogous language linking the clauses. In the absence of such guidance, and in accordance with the plain text's separation of the clauses into distinct provisions, the structure of Section 2611(4)(A) patently demonstrates that the individual liability provision and public agency provision are separate and distinct.

The text of Section 2611(4)(A) further compels an interpretation that separates the individual liability provision from the public agency provision. The straightforward interpretation advanced *supra,* demonstrates that the term [***34] employer "means" what is included in clause (i) and "includes" what is provided in clauses (ii), (iii), and (iv). On the other hand, the commingling of clauses (i)-(iv) into the term "employer" yields an interpretation that renders other provisions of the statute superfluous, as well as creates several oddities.

Initially, an interpretation that commingles clauses [**55] (i) and (ii) into the definition of

AUTH5-000023

employer presents little difficulty. For instance: "The term employer means any person engaged in interstate commerce . . . who employees 50 or more employees . . .; and includes any person who acts directly or indirectly in the interest of any person engaged in interstate commerce who employs 50 or more employees . . .; and any successor in interest of any person engaged in interstate commerce . . . who employs fifty or more employees . . . ." ( [22] ) See 29 U.S.C. § 2611(4)(A)(i) & (ii). However, when the public agency provision is introduced into an interpretation with clauses (i) and (ii), the statute provides --"the term employer means any person engaged in interstate commerce . . . who employees 50 or more employees . . .; and includes any person who acts directly or indirectly in the interest of any person engaged in interstate commerce . . .who employs 50 or more employees . . .; and any successor in interest of any person engaged in interstate commerce . . . who employs fifty or more employees; and includes any public agency engaged in interstate commerce . . . who employs 50 or more employees . . .; and includes [**56] any person who acts directly or indirectly, in the interest of the public agency engaged in interstate commerce . . . who employs fifty or more employees; and any successor [*831] in interest of the public agency . . .engaged in interstate commerce . . . who employs fifty or more employees . . . ." See 29 U.S.C. 2611(4)(A)(i),(ii), & (iii). [***35]

---

**FOOTNOTES**

22 This interpretation underlies our prior determination that the FMLA extends individual liability to private-sector employers.

---

Beyond the obvious redundancy in this interpretation, the commingling of clause (i) and (ii) with the public agency provision renders superfluous Section 2611(4)(B). See 29 U.S.C. 2611 (4)(B) ("[A] public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce."). In addition, it is well-settled that a public agency does not have to meet the 50 employee requirement to be considered an employer under the statute. See 29 C.F.R. § 825.104(a) [**57] ("Public agencies are covered employers without regard to the number of employees employed."). Consequently, an interpretation commingling clauses (i), (ii), and (iii) into the FMLA's definition of employer cannot be sustained. See Lake Cumberland Trust, 954 F.2d at 1222.

The result is similarly untenable when the interpretation aggregates clause (iv) with clauses (i) and (ii). [23] The result yields the following: "The term employer means any person engaged in interstate commerce . . . who employs 50 or more employees . . .; and includes any person who acts, directly or indirectly, in the interest of any person in interstate commerce . . . who employs fifty or more employees. . .; and includes a successor in interest of any person engaged in interstate commerce . . . who employs fifty or more employees . . .; and includes the General Accounting Office and the Library of Congress; and includes a successor in interest of the General Accounting Office and the Library of Congress." See 29 U.S.C. § 2611(4)(A)(i), (ii), & (iv). This interpretation implies that the FMLA extends specific protection to employees of the GAO and the Library of Congress [**58] from future successors in interest. While the Court would at least consider, albeit skeptically, an interpretation of the FMLA that included protections against a successor in interest of [***36] public agencies in general, [24] it is an exercise in absurdity to consider that the FMLA sought to protect employees of two long-standing federal entities from threats posed by any future successors in interest. [25] Accordingly, we must reject an interpretation that creates such a result. See Lake Cumberland Trust, 954 F.2d at 1222.

---

**FOOTNOTES**

23 A plain text interpretation of the statute would require commingling (i), (ii), (iii), and (iv). In the interests of convenience and brevity, the Court shall proceed with its analysis

AUTH5-000024

of (iv) by omitting (iii) as the difficulties of clause (iii) have been previously discussed.

24 Notwithstanding the relatively unique factual scenario addressing successive public entities, the *Morrow* court successfully endeavored to provide a specific instance where an FMLA suit was allowed against the Federal Deposit Insurance Corporation as a successor in interest to the Resolution Trust Corporation. *See Morrow*, 142 F. Supp. 2d at 1273 (citing *Rhoads v. FDIC*, 956 F. Supp. 1239, 1254 ( D. Md. 1997)). **[**59]**

25 The Library of Congress, established in 1800, is the nation's oldest federal cultural institution. The Budget and Accounting Act of 1921, 42 Stat. 20, created the GAO.

A third factor also undermines an interpretation of employer that extends the individual liability provision to public agencies. A definition of employer that incorporates the individual liability provision and public agency provision into a single clause is substantially similar to, if not identical, to the FLSA's definition of employer. *Cf.* 29 U.S.C. § 203 (d) ("Employer includes any person acting directly or indirectly in the interest of any employer in relation to an employee and includes a public agency, . . ."). As discussed *supra*, the FMLA adopts several of the FLSA's provisions. However, in each instance where the FMLA adopts a provision of the FLSA, the FMLA refers **[*832]** directly to the FLSA, rather than provides a restatement of the FLSA's provision. The court in *Keene* explained the significance of the FMLA's modification of the FLSA's "employer":

> In 1974 Congress merely engrafted **[**60]** "Public Agency" into the FLSA by adding to an existing definition for private employers. This did create an ambiguous situation concerning the liability of public agency employees. But, in the FMLA, Congress explicitly took "Public **[***37]** Agency" out of the private employer definition and disconnected it from liability based on a person acting directly or indirectly in the interest of an employer. Therefore, a better way to view the situation is that the FMLA corrected the ambiguity of the FLSA, as opposed to letting the ambiguity of the FLSA control the interpretation of the FMLA.

*Keene*, 127 F. Supp. 2d at 775. ( 26 ) This rationale is entirely persuasive in light of the FMLA's text and framework.

**FOOTNOTES**

26 The Keene court's analysis of the legislative history of the FLSA's public agency provision is in accord with prior decisions of the United States Supreme Court, as well as the decisions of this Court. *See, e.g., Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 83 L. Ed. 2d 1016, 105 S. Ct. 1005 (1985); *Marshall v. Owensboro-Daviess County Hosp.*, 581 F.2d 116 (6th Cir. 1978).

**[**61]** We therefore conclude that $^{HN19}$➔the FMLA's individual liability provision does not extend to public agencies. Three factors emanating from the text and framework of the statute support this conclusion. First, Section 2611(4)(A) segregates the provision imposing individual liability from the public agency provision. Second, an interpretation that commingles the individual liability provision with the public agency provision renders certain provisions of the statute superfluous and results in several oddities. Finally, as evidenced by other provisions of the statute, the FMLA distinguishes its definition of employer from that provided in the FLSA by separating the individual liability and public agency provisions.

AUTH5-000025

We note in passing that several factors extending beyond the plain text of the statute support our conclusion against individual liability for public employers. First, our interpretation is in accord with the regulations propounded by the Secretary of Labor. Title twenty nine C.F.R. § 825.104(a) *HN20* provides that "employers covered by FMLA also include any person acting, directly or indirectly, in the interest of a **[***38]** covered employer to any of the employees of the employer, **[**62]** any successor in interest of a covered employer, and any public agency." 29 C.F.R. § 825.104(a). The regulation's express separation between public agency and the "directly or indirectly" language supports our similar interpretation of Section 2611(4)(A). In addition, the example of individual liability provided in the regulations exclusively pertains to the corporate setting, thereby evincing an intent to limit such liability to the private sector. See 29 C.F.R. § 825.104 (d) ("As under the FLSA, individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of the FMLA."). In that same vein, we note that this Court has never extended individual liability to public employees under the FLSA. [27] Consequently, in addition **[*833]** to the text and structure of the statute, the regulations interpreting the FMLA and this Court's lack of precedent to the contrary, compel the conclusion that the FMLA does not impose individual liability on public agency employers.

**FOOTNOTES**

[27] In *Wong-Opasi v. Tennessee State Univ.*, Nos. 99-5658, 99-5660, 2000 U.S. App. LEXIS 21242, filed Aug. 16, 2000, this Court addressed, *inter alia*, an FLSA claim asserted against administrators of a state college and ultimately concluded that the claim lacked merit. As an unpublished opinion, the decision is not binding precedent. *See Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002). Moreover, in light of the ultimate disposition of the case, the issue of individual liability for public agency employers was of little relevance. Simply, this Court has not addressed a textual analysis of whether the FLSA imposes individual liability on public agency employers.

**[**63]** Accordingly, we conclude that the district court correctly interpreted the FMLA as to preclude Mitchell's individual capacity claims under the statute.

V.

For the foregoing reasons, the decision of the district court granting summary judgment in favor of the defendants is AFFIRMED.

Service: **Get by LEXSEE®**
Citation: **343 F.3d 811**
View: Full
Date/Time: Monday, November 2, 2009 - 11:50 AM EST

* Signal Legend:

- Warning: Negative treatment is indicated

[Q] - Questioned: Validity questioned by citing refs

⚠ - Caution: Possible negative treatment

✦ - Positive treatment is indicated

[A] - Citing Refs. With Analysis Available

[i] - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

AUTH5-000026

Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor |
Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help

 LexisNexis®

About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

AUTH5-000027

LexisNexis® *Total Research System*                     Switch Client | Preferences | Sign Out | [?] Help

Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Cour

FOCUS™ Terms [                                    ] Search Within [ Original Results (1 - 1)    ] [▼] [Go →]
Advanced...

Service: **Get by LEXSEE®**
Citation: **367 B.R. 435**

*367 B.R. 435, \*; 2007 Bankr. LEXIS 1369, \*\**

In re: CROSS MEDIA MARKETING CORPORATION, ET AL., Debtors. In re: CROSS MEDIA
MARKETING CORPORATION and MEDIA OUTSOURCING, INC., Plaintiffs, v. CAB MARKETING,
INC. d/b/a COMMUNITY READING CLUB OF CANTON and CAROL BOLAK, Defendants.

Chapter 11, Case No. 03-13901 (BRL) (Jointly Administered), Adv. Pro. No. 05-03060(MG)

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

367 B.R. 435; 2007 Bankr. LEXIS 1369

April 25, 2007, Decided

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, debtors in a chapter 11 case, brought an adversary
proceeding against defendants, a marketing company and a former employee of the
company, alleging that defendants, inter alia, misappropriated customer lists and other
trade secrets, engaged in unfair competition through deceptive marketing, and tortiously
interfered with existing and prospective business relations. The matter was pending
decision following trial.

**OVERVIEW:** The proceeding presented a thicket of legal issues that had to be cleared
away before the merits of the claims could be reached. The court determined that (1) it
had "related to" subject matter jurisdiction under 28 U.S.C.S. § 1334(b) over the post-
confirmation adversary complaint, (2) the claims asserted in the adversary complaint were
not barred by res judicata or any equitable defenses, (3) debtors had standing to pursue
the claims asserted in the adversary complaint, (4) debtors' motion to amend the
adversary complaint to conform to the pretrial order and to the evidence presented at trial
was granted, and (5) New York law was applicable to all claims and defenses. Reaching
the merits, the court concluded that debtors failed to prove any of its claims by a
preponderance of the evidence. The court examined each claim in turn, but the overriding
conclusion was that debtor failed to establish that the former employee, or in the case of
the activities of the partnership for which she may have been chargeable, that she, or
anyone else acting on behalf of the partnership, took or converted any of debtor's trade
secrets or corporate opportunities in the form of its customer lists.

**OUTCOME:** Defendants were entitled to have judgment entered in their favor on all claims
asserted against them.

**CORE TERMS:** media, customer, magazine, customer lists, partnership, renewal, partner,

AUTH6-000001

subscription, entity, reorganized, res judicata, trade secrets, affirmative defenses, misappropriation, pretrial, misappropriated, amend, dealer, failed to prove, confirmed, contacted, causes of action, marketing, tortious, preponderance, disclosure statement, unfair, credit card, avoidance, fiduciary

## LEXISNEXIS® HEADNOTES                                                        ⊟ **Hide**

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview 🔳

*HN1* ⚓ A court has an obligation to inquire sua sponte into its subject matter jurisdiction. More Like This Headnote | *Shepardize: Restrict By Headnote*

Bankruptcy Law > Practice & Proceedings > Jurisdiction > General Overview 🔳

*HN2* ⚓ A bankruptcy court's jurisdiction does not diminish post confirmation if the debtor, pursuant to a liquidating plan, seeks to commence litigation to collect the debtor's assets for the benefit of its creditors. More Like This Headnote | *Shepardize: Restrict By Headnote*

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview 🔳
Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Affirmative Defenses > General Overview 🔳

*HN3* ⚓ Under Fed. R. Civ. P. 8(c), made applicable by Fed. R. Bankr. P. 7008, parties are required to raise affirmative defenses, such as estoppel and res judicata, in the pleadings. Fed. R. Civ. P. 8(c). It is a generally accepted principle that a party's failure to plead such affirmative defenses results in the waiver of those defenses. However, the U.S. Court of Appeals for the Second Circuit recognizes an exception to this waiver when the affirmative defense was initially unavailable, is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party. Courts have been willing to accommodate the defendant where the defense of res judicata was not available at the pleading stage. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Affirmative Defenses > General Overview 🔳

*HN4* ⚓ See Fed. R. Civ. P. 8(c).

Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Affirmative Defenses > General Overview 🔳

*HN5* ⚓ Any delay in asserting an affirmative defense for a significant period of time will almost invariably result in some "prejudice" to the nonmoving party. The proper standard is one that balances the length of the delay against the resulting prejudice. More Like This Headnote

Bankruptcy Law > Reorganizations > Plans > General Overview 🔳
Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata 🔳

*HN6* ⚓ Res judicata precludes parties from re-litigating claims if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same claim. Furthermore, in the bankruptcy context, a court must also consider whether an independent judgment in a separate proceeding would impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan. More Like This Headnote

Bankruptcy Law > Reorganizations > Plans > Postconfirmation > Effects of Confirmation 🔳

AUTH6-000002