Revision of the Bankruptcy Act: Hearings Before the Committee on the Judiciary of the House of Representatives, 75th Cong., 1st Sess. on H.R. 6439, Serial 9, at 180-82). The Court concluded § 203 was meant to apply to creditors "whose selfish purpose was to obstruct a fair and feasible reorganization in the hope that someone would pay them more than the ratable equivalent of their proportionate part of the bankrupt assets." *Id. at 211*. *See also In re Figter Ltd.*, 118 F.3d at 639 ("If a person seeks to secure some untoward advantage over other creditors for some ulterior motive, that will indicate bad faith. But that does not mean that creditors are expected to approach reorganization plan votes with a high degree of altruism[.]") (internal citation omitted).

This issue is also remanded for further consideration.

### [**149]  [*248]  VII. Going Concern Requirement: Section 524(g)(2)(B)(i)(II)

Section 524(g)(2)(B)(i)(II) provides that the asbestos personal injury trust must be "funded in whole or in part by the securities of 1 or more debtor involved in such plan and by the obligation of such debtor or debtors to make future payments, including dividends." The implication of this requirement is that the reorganized debtor must be a going concern, such that it is able to make future payments into the trust to provide an "evergreen" funding source for future asbestos claimants. [69] Both the Bankruptcy Court and the District Court found the reorganized Combustion Engineering would engage in business operations after consummation of the Plan. The Bankruptcy Court found Combustion Engineering "had a continuing real estate business . . . . [and] is continuing in business post-confirmation." *In re Combustion Eng'g*, 295 B.R. at 485. The District Court likewise overruled a challenge to the § 524(g) channeling injunction after concluding "the reorganized Combustion Engineering will have a real estate business in which it will own and lease properties."

#### FOOTNOTES

[69] *See* 140 Cong. Rec. S4521-01, S4523 (Apr. 20, 1994) (statement of Senator Heflin) ("When an asbestos-producing company goes into bankruptcy and is faced with present and future asbestos-related claims, the bankruptcy court can set up a trust to pay the victims. The underlying company funds the trust with securities and the company remains viable. Thus, the company continues to generate assets to pay claims today and into the future. In essence, the reorganized company becomes the goose that lays the golden egg by remaining a viable operation and maximizing the trust's assets to pay claims.")

[**150] The record demonstrates the following facts. Combustion Engineering's post-confirmation business operations would be, at most, minimal. Combustion Engineering would emerge from Chapter 11 with no employees, no products or services, and in a cash neutral position. Its sole business activity would relate to the ownership of an environmentally contaminated piece of real estate in Connecticut (a so-called "brown field") and related lease activities. [70]

#### FOOTNOTES

[70] But there are additional factors here. One is the significant financial contributions to the Asbestos PI Trust by non-debtors ABB Limited, Basic and Lummus. From the claimants' perspective, it may make little economic difference whether the source of future funds comes from the debtor or a third-party, so long as a sufficient and reliable pool of assets remains available to pay their claims.

AUTH12-000061

> Counterposed against this is the fact that the Asbestos PI Trust is a closed fund, raising a possible concern should it hold insufficient funds to pay all allowed claims against it.

**[\*\*151]** Although it is debatable whether Combustion Engineering could satisfy § 524(g)(2)(B)(i)(II), it does not appear that the Certain Cancer Claimants raised this issue. They are the only parties, however, with standing to do so. While the Objecting Insurers argue that § 524(g)(2)(B)(i)(II) is not satisfied, they do not have standing to raise this matter. Therefore, we need not address it.

### VIII. Conclusion

For the foregoing reasons, we will vacate the order of the District Court confirming Combustion Engineering's Plan of Reorganization and remand to the District **[\*249]** Court for proceedings consistent with this opinion.

Service: **Get by LEXSEE®**
Citation: **391 F.3d 190**
View: Full
Date/Time: Monday, November 2, 2009 - 11:40 AM EST

\* Signal Legend:
⊛ - Warning: Negative treatment is indicated
🅀 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✦ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅘 - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help

 **LexisNexis®**   About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

AUTH12-000062

**LexisNexis®** *Total Research System*        Switch Client ┊ Preferences ┊ Sign Out ┊ ② Help

┊Search┊Research Tasks┊Get a Document┊Shepard's®┊Alerts┊Total Litigator┊Transactional Advisor┊Cour

FOCUS™ Terms [                    ] Search Within [Original Results (1 - 1)     ▼] [Go →]
Advanced...

Service: **Get by LEXSEE®**
Citation: **298 U.S. 178**

*298 U.S. 178, \*; 56 S. Ct. 780, \*\*;*
*80 L. Ed. 1135, \*\*\*; 1936 U.S. LEXIS 705*

McNUTT, GOVERNOR OF INDIANA, ET AL. v. GENERAL MOTORS ACCEPTANCE CORP.

No. 709

SUPREME COURT OF THE UNITED STATES

298 U.S. 178; 56 S. Ct. 780; 80 L. Ed. 1135; 1936 U.S. LEXIS 705

April 1, 1936, Argued
May 18, 1936, Decided

**PRIOR HISTORY:** APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF INDIANA.

APPEAL from a decree of the District Court of three judges which enjoined the enforcement of
a statute regulating the business of purchasing contracts arising out of retail instalment
sales.

**DISPOSITION:** Reversed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Respondent corporation filed an action to restrain the
enforcement of 1935 Ind. Acts 231 (Act). The corporation claimed that the Act deprived it
of its property without due process of law and denied it equal protection in violation of the
Fourteenth Amendment. The United States District Court for the Southern District of
Indiana granted a permanent injunction. Petitioners, the Governor of Indiana and
associated individuals, appealed.

**OVERVIEW:** The Governor of Indiana and associated individuals challenged whether the
matter in controversy exceeded $ 3,000 so as to give the district court subject matter
jurisdiction under 28 U.S.C.S. § 41. On appeal, the Court held that the corporation's bill
should have been dismissed under the Act of 1875 because there was no showing that the
district court had jurisdiction. The district court did not make an adequate finding as to its
jurisdiction and there was no evidence to support the corporation's bill. The principle that
jurisdiction was to be tested by the value of the right to be protected against interference
did not apply. The corporation did not show that it could not obtain a license to proceed
with its operations, and the value or net worth of the corporation's business transacted in
Indiana was not involved except to the extent that it could have been affected by the
incidence of the Act. Thus, the particular allegations of the corporation's bill failed to set
forth any facts showing what, if any, curtailment of business and consequent loss the
enforcement of the Act would have involved to prove that the amount in controversy
exceeded the $ 3,000 minimum amount.

AUTH13-000001

**OUTCOME:** The Court reversed the permanent injunction and remanded the case to the district court with directions to dismiss the bill of complaint for want of jurisdiction.


**CORE TERMS:** jurisdictional facts, jurisdictional amount, burden of proof, citizenship, want of jurisdiction, question of jurisdiction, traversed, retail, demurrer, license, decree, suits in equity, controversy exceeds, net worth, jurisdictional questions, installment sales, finance charges, direct appeal, plea in abatement, injunction, maximum, retail sellers, installment contracts, common law, burden of proving, preponderance of evidence, general allegation, question arises, exclusive of interest, nature of things


### LEXISNEXIS® HEADNOTES                                    ⊟ **Hide**

Civil Procedure > Jurisdiction > Diversity Jurisdiction > General Overview 🗐
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Amount in Controversy 🗐

*HN1* ⬇ The jurisdiction of the district court in a civil action is limited by statute to one where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $ 3,000, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or (b) is between citizens of different States, or (c) is between citizens of a State and foreign States, citizens or subjects. 28 U.S.C.S. § 41(1). More Like This Headnote | *Shepardize:* Restrict By Headnote


Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Amount in Controversy 🗐

*HN2* ⬇ 28 U.S.C.S. § 80 explicitly charges the district courts with the duty of enforcing the amount in controversy jurisdictional limitations. More Like This Headnote | *Shepardize:* Restrict By Headnote


Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview 🗐
Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation 🗐

*HN3* ⬇ It is incumbent upon a plaintiff properly to allege the jurisdictional facts, according to the nature of the case. More Like This Headnote | *Shepardize:* Restrict By Headnote


Civil Procedure > Equity > General Overview 🗐
Civil Procedure > Removal > Postremoval Remands > Jurisdictional Defects 🗐
Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation 🗐

*HN4* ⬇ The Act of 1875, which places upon a trial court the duty of enforcing the statutory limitations as to jurisdiction by dismissing or remanding the cause at any time when the lack of jurisdiction appears, applies to both actions at law and suits in equity. The trial court is not bound by the pleadings of the parties, but may, of its own motion, if led to believe that its jurisdiction is not properly invoked, inquire into the facts as they really exist. More Like This Headnote | *Shepardize:* Restrict By Headnote


### LAWYERS' EDITION DISPLAY                                    ⊟ **Hide**


### LAWYERS' EDITION HEADNOTES:

**[\*\*\*LEdHN1]**

AUTH13-000002

PLEADING, §109

sufficiency of averments to show jurisdictional amount. --

Headnote: *LEdHN(1)*↧[1]

Allegations of a bill in a suit to restrain enforcement of a state statute providing for the regulation of the business of purchasing contracts arising out of retail instalment sales, including provisions for licenses, for classification of contracts, and for fixing maximum finance charges, as to the extent of the complainant's business in the state, are insufficient to show that the matter in controversy involves the amount necessary to give a Federal court jurisdiction, since they relate only to the value of the right to transact business and not to the value of the right to transact it free of the regulation in question, which is to be measured by the loss, if any, which would follow the enforcement of the rules prescribed.

**[\*\*\*LEdHN2]**

EVIDENCE, §278

burden of proof -- existence of jurisdictional amount. --

Headnote: *LEdHN(2)*↧[2]

The burden of proving that the requisite jurisdictional amount is involved in a suit in a Federal court is on the one who asserts it, and not on the one who challenges the jurisdiction of the court.

**[\*\*\*LEdHN3]**

COURTS, §243

REMOVAL OF CAUSES, §154

statute requiring dismissal of suit where jurisdiction is not established -- scope. --

Headnote: *LEdHN(3)*↧[3]

The provision of the Act of March 3, 1875 (18 Stat. at L. 472, chap. 137, 5, Judicial Code, 37, U. S. C. A. title 28, 80), which provides that if in any suit commenced in or removed to a Federal district court it shall appear to the satisfaction of the court that such suit does not really and substantially involve a dispute or controversy properly within its jurisdiction, or that the parties to such suit have been improperly or collusively made or joined for the purpose of creating a case cognizable or removable, the court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, applies to both actions at law and suits in equity.

**[\*\*\*LEdHN4]**

COURTS, §245

REMOVAL OF CAUSES, §92

inquiry sua sponte into question of jurisdiction. --

AUTH13-000003

Headnote: *LEdHN(4)* ⤓[4]

Under the Act of March 3, 1875 (18 Stat. at L. 472, chap. 137, 5, Judicial Code, 37, U. S. C. A. title 28, 80), which provides that if in any suit commenced in or removed to a Federal district court it shall appear to the satisfaction of such court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within its jurisdiction, or that the parties thereto have been improperly or collusively made or joined for the purpose of creating a case cognizable or removable, the court shall proceed no further therein, the court is not bound by the pleadings of the parties, but may of its own motion, if led to believe that its jurisdiction is not properly invoked, inquire into the facts.

### SYLLABUS

1. In a suit in the District Court to enjoin, as unconstitutional, the enforcement of a state statute requiring the plaintiff to obtain a license for his business and otherwise subjecting the business to regulation, the value in controversy, in the absence of a showing that the plaintiff cannot obtain the license or is prevented by the statute from prosecuting the business, is not the value or net worth of the business but the value of the right to be free from the regulation; and this may be measured by the loss, if any, that would follow the enforcement of the rules prescribed. P. 181.

2. Under § 5 of the Act of March 3, 1875, Jud. Code, § 37, 28 U. S. C. 80, a plaintiff in the District Court must plead the essential jurisdictional facts and must carry throughout the litigation the burden of showing that he is properly in court; if his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof; and even where they are not so challenged, the court may insist that the jurisdictional facts be established by a preponderance of evidence or the case be dismissed. Pp. 182, 189.

3. In a suit for an injunction in the District Court, the allegation of the jurisdictional amount may be traversed by answer. P. 189.

4. In a case in the District Court, the allegation of jurisdictional amount had been traversed, yet no adequate finding on the issue of fact was made by the court and no evidence to support the allegation was introduced. *Held* that the bill should be dismissed for want of jurisdiction. P. 190.

**COUNSEL:** Mr. Joseph W. Hutchinson, Assistant Attorney General of Indiana, and Mr. Leo M. Gardner, with whom Mr. Philip Lutz, Jr., Attorney General, was on the brief, for appellants.

Messrs. John Thomas Smith and Phillip W. Haberman, with whom Messrs. Duane R. Dills, Stanley B. Ecker, and Paul Y. Davis were on the brief, for appellee.

**JUDGES:** Hughes, Van Devanter, McReynolds, Brandeis, Sutherland, Butler, Roberts, Cardozo; Stone took no part in the consideration or decision of this case.

**OPINION BY:** HUGHES

### OPINION

AUTH13-000004

[*179]  [**780]  [***1135]  MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Respondent, General Motors Acceptance Corporation of Indiana, brought this suit to restrain the enforcement  [***1136]  of Chapter 231 of the Acts of 1935 of the General Assembly of Indiana. That Act provides for the regulation of the business of purchasing contracts arising out of retail installment sales, including provisions for licenses, for classifications of contracts, and for fixing maximum "finance charges."  [**781]  The validity of the Act was challenged as depriving respondent of its property without due process of law and denying it the equal protection of the laws in violation of the Fourteenth Amendment of the Federal Constitution. An interlocutory injunction was sought and, upon hearing by three judges (28 U. S. C. 380), a final decree was entered, upon findings of facts and conclusions of law, granting a permanent injunction. No opinion was rendered. The case comes here by direct appeal.

The question arises whether the matter in controversy exceeds the sum or value of $ 3,000, exclusive of interest and costs, so as to give the District Court jurisdiction. Jud. Code, § 24 (1), 28 U. S. C. 41 (1). The complaint alleged that the requisite amount was involved and this  [*180]  allegation was denied by the answer. On the argument in this Court, leave was given to file an additional brief upon the question of jurisdiction and respondent has submitted its brief accordingly.

[***LEdHR1]  LEdHN(1)✥[1]Respondent points to the allegations of its bill that the "net worth" of its business exceeds $ 50,000; that in 1934 it purchased retail installment contracts in Indiana aggregating in excess of $ 7,000,000; that the value of such purchases for the first six months of 1935 was in excess of $ 4,000,000; and that during 1934 respondent purchased in Indiana approximately 23,000 installment sales contracts from more than 500 retail dealers. These allegations were sustained by the findings of the District Court. The bill also alleged that respondent maintained offices in Indiana for which it paid yearly an aggregate rental of $ 13,147; that it employed on the average 85 employees whose aggregate annual salaries amounted to about $ 150,000. Respondent also refers to its allegations that the Act limits the amount which respondent "may receive as its gross profit for the purchase of an installment contract to a sum not exceeding the maximum 'finance charge' which may be fixed by the Department of Financial Institutions," -- by prohibiting respondent "from purchasing any retail installment contracts at a less price than the unpaid balance thereon"; that the Act limits the amount which may be given by respondent "to retail sellers out of the gross 'finance charge' received from retail buyers under installment sale contracts" sold to respondent, by requiring the Department "to fix this maximum amount without regard to any differentiation as between contracts sold to licensees by retail sellers with recourse against such sellers, and contracts sold by retail sellers without recourse against them; and that in other respects the statute imposes burdensome requirements which impair the "efficiency of the operations and earnings" of respondent.

[*181]  Respondent invokes the principle that jurisdiction is to be tested by the value of the object or right to be protected against interference. Hunt v. New York Cotton Exchange, 205 U.S. 322; Bitterman v. Louisville & Nashville R. Co., 207 U.S. 205; Berryman v. Whitman College, 222 U.S. 334; Glenwood Light Co. v. Mutual Light Co., 239 U.S. 121; Healy v. Ratta, 292 U.S. 263. But in the instant case, the statute does not attempt to prevent respondent from conducting its business. There is no showing that it cannot obtain a license and proceed with its operations. The value or net  [***1137]  worth of the business which respondent transacts in Indiana is not involved save to the extent that it may be affected by the incidence of the statutory regulation. The object or right to be protected against unconstitutional interference is the right to be free of that regulation. The value of that right may be measured by the loss, if any, which would follow the enforcement of the rules prescribed. The particular allegations of respondent's bill as to the extent or value of its business throw no light upon that subject. They fail to set forth any facts showing what, if

AUTH13-000005

any, curtailment of business and consequent loss the enforcement of the statute would involve. The bill is thus destitute of any appropriate allegation as to jurisdictional amount save the general allegation that the matter in controversy exceeds $ 3,000. That allegation was put in issue and the record discloses neither finding nor evidence to sustain it.

[***LEdHR2] *LEdHN(2)*[2]In the absence of any showing in the record to support that general allegation, the question is upon which party lay the [**782] burden of proof. Respondent contends that the burden of proving the lack of jurisdiction rests upon the party challenging the jurisdiction and cites decisions of this Court to that effect. The question is thus sharply presented.

[*182] *HN1*The jurisdiction of the District Court in a civil suit of this nature is definitely limited by statute to one -- "where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $ 3,000, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or (b) is between citizens of different States, or (c) is between citizens of a State and foreign States, citizens or subjects." Jud. Code, § 24 (1), 28 U. S. C. 41 (1).

Further, the Act of March 3, 1875, c. 137, § 5 (18 Stat. 472) as now applied to the District Courts *HN2*(Jud. Code, § 37, 28 U. S. C. 80), explicitly charges those courts with the duty of enforcing these jurisdictional limitations. The provision in its present form is as follows:

"If in any suit commenced in a District Court, or removed from a state court to a District Court of the United States, it shall appear to the satisfaction of the said District Court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said District Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this chapter, the said District Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just."

*HN3*It is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case. "Where the law gives no rule, the demand of the plaintiff must furnish one; but where the law gives the rule, the legal cause of action, and not the plaintiff's demand, must be regarded." Wilson v. Daniel, 3 Dall. 401, 407, 408; [*183] Barry v. Edmunds, 116 U.S. 550, 560; Vance v. Vandercook Co. (No. 2), 170 U.S. 468, 481; Lion Bonding Co. v. Karatz, 262 U.S. 77, 85, 86. Where the pleadings properly alleged the jurisdictional facts, as for example, with respect to diversity of citizenship and jurisdictional amount, it was necessary at common law, and before the passage of the Act of 1875, to raise the issue of want of jurisdiction by plea in abatement. And where the jurisdictional [***1138] issue was thus raised, the burden of proof was upon the defendant. The objection was waived by pleading to the merits. De Wolf v. Rabaud, 1 Pet. 476, 498; Sheppard v. Graves, 14 How. 505, 510; De Sobry v. Nicholson, 3 Wall. 420, 423; Farmington v. Pillsbury, 114 U.S. 138, 143. In equity, the defense could be presented by plea or demurrer but not by answer. Livingston's Executrix v. Story, 11 Pet. 351, 393; De Sobry v. Nicholson, supra; Hunt v. New York Cotton Exchange, 205 U.S. 322, 333. Demurrers and pleas were abolished by Rule 29 of the Equity Rules promulgated in 1912. 226 U.S., appendix p. 8.

By the Conformity Act of 1872 (17 Stat. 197; R. S. 914; 28 U. S. C. 724) all defenses in civil actions at law were made available to a defendant in the federal courts under any form of plea, answer or demurrer which would have been open to him under like pleading in the courts of the State within which the federal court was held. In that view we decided that where, under the Nebraska Code of Civil Procedure, the answer took the place of all pleas at

AUTH13-000006

common law, in abatement or to the merits, the allegation of the citizenship of the parties, which was properly made in the petition and put in issue by the answer, must be proved by the plaintiff. And where the record showed "no proof or finding upon this essential point" the judgment was reversed for want of jurisdiction. _Roberts v. Lewis, 144 U.S. 653, 656-658._ See, to **[\*184]** the same effect, _W. L. Wells Co._ v. _Gastonia Cotton Co., 198 U.S. 177, 182._

**[\*\*\*LEdHR3]** _LEdHN(3)_⚓[3] **[\*\*\*LEdHR4]** _LEdHN(4)_⚓[4]_HN4_⚓The Act of 1875, in placing upon the trial court the duty of enforcing the statutory limitations as to jurisdiction by dismissing or remanding the cause at any **[\*\*783]** time when the lack of jurisdiction appears, applies to both actions at law and suits in equity. The trial court is not bound by the pleadings of the parties, but may, of its own motion, if led to believe that its jurisdiction is not properly invoked, "inquire into the facts as they really exist." _Wetmore v. Rymer, 169 U.S. 115, 120; Gilbert v. David, 235 U.S. 561, 567; North Pacific Steamship Co. v. Soley, 257 U.S. 216, 221._ This Court has had occasion to consider the application of the statute under varying conditions. See _Barry v. Edmunds, supra; Morris_ v. _Gilmer_, 129 U.S. 315; _Deputron v. Young_, 134 U.S. 241; _Anderson v. Watt_, 138 U.S. 694, 701; _Wetmore v. Rymer, supra; Steigleder v. McQuesten_, 198 U.S. 141, 143; _Gilbert v. David, supra; North Pacific Steamship Co. v. Soley, supra; Broad-Grace Arcade Corp. v. Bright, 284 U.S. 588._

In _Anderson v. Watt, supra_, a suit in equity, the Court said that under the Act of 1875 "the objection to the jurisdiction upon a denial of the averment of citizenship is not confined to a plea in abatement or a demurrer, but may be taken in the answer, and the time at which it may be raised is not restricted." In _Wetmore v. Rymer, supra_, an action of ejectment, after a verdict and judgment for the plaintiff, the trial court set them aside and entertained defendant's motion to dismiss for want of jurisdiction, giving leave to both parties to file affidavits showing the value of the land in controversy. Upon consideration of the evidence, the trial court decided that the **[\*\*\*1139]** jurisdictional amount was not involved. This Court disagreed with that conclusion. Speaking of the effect of **[\*185]** the Act of 1875, the Court observed that the statute did not prescribe any particular mode in which the question of jurisdiction was to be brought to the attention of the court, nor how, when raised, it should be determined. The Court said: "When such a question arises in an action at law its decision would usually depend upon matters of fact, and also usually involves a denial of formal, but necessary, allegations contained in the plaintiff's declaration or complaint. Such a case would be presented when the plaintiff's allegation that the controversy was between citizens of different States, or when, as in the present case, the allegation that the matter in dispute was of sufficient value to give the court jurisdiction was denied. -- In such cases, whether the question was raised by the defendant or by the court on its own motion, the court might doubtless order the issue to be tried by the jury." But "the questions might arise in such a shape that the court might consider and determine them without the intervention of a jury" and "it would appear to have been the intention of Congress to leave the mode of raising and trying such issues to the discretion of the trial judge."

In _Gilbert v. David, supra_, an action at law in the federal court in Connecticut, the question arose with respect to the citizenship of the plaintiff -- which was put in issue by defendants' answer. Later, defendants moved to dismiss the cause for want of jurisdiction. Plaintiff then moved to strike that motion from the files upon the ground that it was an irregular method of raising the question and because the matter was already in issue under the pleadings. Taking that view, the trial court directed the trial to proceed upon the question of jurisdiction, and upon hearing the testimony the court found that both parties were citizens of Connecticut and dismissed the action. The judgment was affirmed by this Court. The Court said: "Under the former practice, **[\*186]** before the passage of the Act of 1875 . . . it was necessary to raise the issue of citizenship by a plea in abatement, when the pleadings properly averred the citizenship of the parties. . . . The objection may be made now by answer before answering to the merits, or it may be made by motion. . . . It may be raised by a general denial in the answer, where the state practice permits of that course. _Roberts v. Lewis, 144_

AUTH13-000007

U.S. 653. In the State of Connecticut, under the form of denial contained in this answer, the answer raised the issue. . . . Moreover, the parties to the suit regarded the matter as at issue under the pleadings, and it was so held by the court. . . . The question was properly before the court." The Court further held that while the question might have been **[**784]** submitted to the jury, the trial court was not bound to take that course and that it was its privilege to dispose of the issue upon the testimony. From the citation of _Roberts v. Lewis, supra_, it is apparent that the Court considered that the burden of proof upon the issue of citizenship was upon the plaintiff, and it also appeared from the record that the plaintiff assumed that burden upon the trial.

In _North Pacific Steamship Co._ v. _Soley, supra_, the suit was in equity and the question was whether the jurisdictional amount was involved. The plaintiff's allegation to that effect was denied by the answer. Upon hearing the evidence offered by the complainant, and that of the defendant, the trial court held that the jurisdictional amount was not involved and dismissed the suit. On direct appeal to this Court, under the former practice where jurisdictional questions alone were presented, the Court said: "The objection that jurisdiction to entertain the suit did not exist is one which may be taken by **[***1140]** answer. _Anderson v. Watt, 138 U.S. 694_. Indeed, under § 37 it is the duty of the court, when it shall appear to its satisfaction that the suit does not really and substantially **[*187]** involve the necessary amount to give it jurisdiction, to dismiss the same, and this the court may do whether the parties raise the question or not. In the present case the issue was raised by answer, and, therefore, it became necessary for the court to determine the question of jurisdiction upon the facts presented, and when brought directly here, it is the duty of this court to review the decision upon the testimony as one presenting a jurisdictional question." The Court then considered the facts and sustained the ruling of the District Court.

The question of the burden of proof was considered by this Court in _Chase v. Wetzlar, 225 U.S. 79_. That was a suit in equity in the federal court in New York to enforce "equitable liens upon or claims to the title of personal property," and jurisdiction depended on the presence of the property within the district. 18 Stat. 472; Jud. Code, § 57; _28 U. S. C. 118_. The allegation of the bill that the property was within the district was traversed by the plea, which was held to be "sufficient in law and form," and to which a general replication was filed. The case was heard upon the pleadings and the trial court ruled that the burden was upon the complainant to establish the existence of the essential jurisdictional facts which the plea traversed, and as no proof had been offered by the complainant the bill was dismissed for the lack of jurisdiction. On direct appeal this Court affirmed the decree.

As to the contention that the defendant was bound to prove the allegations of his plea, the Court observed: "The theory as to the burden of proof being on the defendant, on which this proposition proceeds, it is insisted, is sanctioned by the following decisions of this court: _Sheppard_ v. _Graves_ (1852), 14 How. 505; _De Sobry v. Nicholson_ (1865), 3 Wall. 420; _Wetmore_ v. _Rymer_ (1898), 169 U.S. 115; _Hunt_ v. _New York Cotton Exchange_ (1907), 205 U.S. 322. And a decision of the Circuit **[*188]** Court of Appeals for the Eighth Circuit in _Hill_ v. _Walker, 167 Fed. 241_, is also referred to as containing a full summary of the decided cases on the subject." The Court distinguished those cases upon the ground that none of them involved the question of jurisdiction under the statute requiring the presence of property within the district. In view of that distinction, the Court thought it unnecessary "to now consider the conflict of opinion which has sometimes arisen concerning whether the doctrine of the cases relied upon and the fundamental conception upon which those cases rested entirely harmonizes with the provision of the act of 1875 requiring a Federal court of its own motion to dismiss a pending suit when it is found not to be really within its jurisdiction -- see _Roberts_ v. _Lewis_, 144 U.S. 653, and the cases cited in the dissenting opinion in _Hill_ v. _Walker, supra_," because the Court thought that the doctrine was inapplicable to the case before it. The existence of property within the jurisdiction was deemed to be such a fundamental prerequisite to the exercise of power to render a binding decree that in no possible view could it be said that the plaintiff did not have the burden of proving the

AUTH13-000008

essential jurisdictional fact. The Court concluded its discussion of the point by saying:
" [**785] In other words, even putting aside for the sake of argument the effect on the doctrines announced in the decisions relied upon of the enactment of the act of 1875 as to the duty to dismiss to which we have referred, the burden of proof to establish that the court was vested with power to act, we think, in a case like this, in the [***1141] nature of things rested upon the complainant." *Chase v. Wetzlar, supra,* pp. 85-87.

The question which was thus suggested and put aside in *Chase* v. *Wetzlar* is definitely before us in the instant case and should be decided. The Act of 1875 prescribes a uniform rule and there should be a consistent practice in dealing with jurisdictional questions. We think that [*189] the terms and implications of the Act leave no sufficient ground for varying rules as to the burden of proof. The prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf. As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence. We think that only in this way may the practice of the District Courts be harmonized with the true intent of the statute which clothes them with adequate authority and imposes upon them a correlative duty.

[*190] Here, the allegation in the bill of complaint as to jurisdictional amount was traversed by the answer. The court made no adequate finding upon that issue of fact, and the record contains no evidence to support the allegation of the bill. There was thus no showing that the District Court had jurisdiction and the bill should have been dismissed upon that ground.

The decree is reversed and the cause is remanded to the District Court with directions to dismiss the bill of complaint for the want of jurisdiction.

*Reversed.*

MR. JUSTICE STONE took no part in the consideration and decision of this case.

Service: **Get by LEXSEE®**
Citation: **298 U.S. 178**
View: Full
Date/Time: Monday, November 2, 2009 - 11:41 AM EST

* Signal Legend:
 ● - Warning: Negative treatment is indicated
 Q - Questioned: Validity questioned by citing refs
 △ - Caution: Possible negative treatment
 ◆ - Positive treatment is indicated

AUTH13-000009



- Citing Refs. With Analysis Available
- Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor |
Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help

**LexisNexis®**

About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

AUTH13-000010

LexisNexis® *Total Research System*                    Switch Client ┊ Preferences ┊ Sign Out ┊ ? Help

Search┊Research Tasks┊Get a Document┊*Shepard's*®┊Alerts┊Total Litigator┊Transactional Advisor┊Cour

FOCUS™ Terms [                                    ] Search Within [Original Results (1 - 1)]  ▼  Go →
Advanced...

Service: **Get by LEXSEE®**
Citation: **190 B.R. 771**

*190 B.R. 771, \*; 1996 U.S. Dist. LEXIS 486, \*\**

SAUL, EWING, REMICK & SAUL, Plaintiff, v. PROVIDENT SAVINGS BANK, Defendant.

Civil Action No. 95-262 MMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

190 B.R. 771; 1996 U.S. Dist. LEXIS 486

January 5, 1996, Dated

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff law firm sought recovery from defendant bank alleging various state law causes of action involving payment on an endorsed note and mortgage. The bank sought removal to federal court citing 28 U.S.C.S. § 1334 as the basis for federal jurisdiction. The law firm sought to remand the action back to state court on the grounds that there was no federal subject matter jurisdiction over the dispute.

**OVERVIEW:** The court found that the bank provided interim financing for a mortgage banker that converted funds from a particular mortgage for its own use. The law firm was the bank's closing agent for this mortgage and the note and mortgage were assigned to the bank prior to discovery of the fraud and the mortgage bank's Chapter 11 filing. The court held that under 28 U.S.C.S. § 1334, a federal district court had jurisdiction over an action that was related to a bankruptcy proceeding if its outcome could alter the debtor's rights and impact the bankruptcy estate. However, actions pertaining to property acquired after the bankruptcy estate was created did not invoke a district court's "related to " jurisdiction. The court held that because the bank's security interest in the note and mortgage ripened into legal title after the endorsement and recordation of the assignment, the instruments were not part of the bankruptcy estate when the bankruptcy action was commenced and there was no "related to" jurisdiction. The court also rejected the bank's claim of jurisdiction under 28 U.S.C.S. § 157 because § 157 was not a jurisdictional grant, but an itemization of bankruptcy court core proceedings.

**OUTCOME:** The court held that it did not have jurisdiction and remanded the case to state court.

**CORE TERMS:** mortgage, bankruptcy estate, mortgage loan, residential, escrow account, bankruptcy case, oral argument, jurisdictional, commencement, invoke, forwarded, investors, blank, mortgage banker, causes of action, matter jurisdiction, security interest, declaratory judgment, exclusive jurisdiction, discretionary, abstention, removal, endorsed,

AUTH14-000001

recorded, law firm, property interests, bankruptcy proceeding, inter alia, petition to remove, civil proceedings

## LEXISNEXIS® HEADNOTES                                                      ⊟ **Hide**

Bankruptcy Law > Practice & Proceedings > Jurisdiction > Core Proceedings 🔲
Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview 🔲
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions >
Exclusive Jurisdiction 🔲

*HN1*⚡The jurisdictional grant to federal district courts over bankruptcy matters is found at 28 U.S.C.S. § 1334, which provides, in pertinent part that, except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11. Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. A bankruptcy court may, by reference from a district court, hear cases arising under title 11 or arising in a case under title 11, including those deemed "core" proceedings as defined at 28 U.S.C.S. § 157(b). More Like This Headnote | *Shepardize: Restrict By Headnote*

Bankruptcy Law > Estate Property > Content 🔲
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions >
General Overview 🔲

*HN2*⚡The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. If the dispute is between non-parties and has only a slight effect on the bankruptcy estate, "related to" jurisdiction has been held to be improper. Therefore, disputes between parties other than the debtor generally do not invoke the court's "related to" jurisdiction of 28 U.S.C.S. § 1334 unless the action would have some effect on the bankruptcy estate. However, if the civil action pertains to the property of the bankruptcy estate, courts have found "related to" jurisdiction. The only property interests of a debtor that become part of the estate are those that exist at the time of the commencement of the case. 11 U.S.C.S. § 541. More Like This Headnote | *Shepardize: Restrict By Headnote*

Bankruptcy Law > Case Administration > Examinations of Debtors 🔲
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions >
General Overview 🔲
Torts > Business Torts > Commercial Interference > Contracts > General Overview 🔲

*HN3*⚡Actions pertaining to property acquired after the bankruptcy estate has been created do not invoke the "related to" jurisdiction of a district court under 28 U.S.C.S. § 1334. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions >
General Overview 🔲

*HN4*⚡Property which is liquidated before or after the creation of the bankruptcy estate no longer belongs to the estate, and a dispute arising out of such property cannot invoke the "related to" jurisdiction of a district court under 28 U.S.C.S. § 1334. More Like This Headnote | *Shepardize: Restrict By Headnote*

AUTH14-000002

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview 🔍

Contracts Law > Negotiable Instruments > Negotiation > Indorsement > Blank Indorsements 🔍

HN5⊻A court has "related to" jurisdiction over property under 28 U.S.C.S. § 1334 only when the property is part of the bankruptcy estate.  More Like This Headnote

**COUNSEL:** [**1] Thomas J. Capano, Esq., and Mark Minuti, Esq., of Saul, Ewing, Remick & Saul, Wilmington, Delaware; attorneys for plaintiff.

Francis J. Murphy, Esq., and Jonathan L. Parshall, Esq., of Murphy, Welch & Spadaro, Wilmington, Delaware; Of Counsel: Walter E. Thomas Jr., Esq., of Stern, Lavinthal Norgaard & Daly, Livingston, New Jersey; attorneys for defendant.

**JUDGES:** Murray M. Schwartz, Senior District Judge

**OPINION BY:** Murray M. Schwartz

**OPINION**

[*772] OPINION

Dated: January 5, 1996

Wilmington, Delaware

Murray M. Schwartz, Senior District Judge

## I. Introduction

The motions presently before the Court arise out of a series of transactions involving a note and mortgage on residential property, the funds for which were converted by a mortgage banker now in Chapter 11. The substantive dispute centers upon the parties' respective rights in the note and mortgage relating to the property. Title and interest in the note and mortgage, however, are not at issue in the present motions, and the mortgage banker is not a party to this dispute.

Plaintiff law firm, Saul, Ewing, Remick & Saul ("Saul, Ewing") sued defendant bank, Provident Savings Bank ▾("Provident") in Delaware Chancery [**2] Court, alleging various state law causes of action. The defendant, citing 28 U.S.C. § 1334 as the basis for federal jurisdiction, removed the action to federal court, with an eye towards transferring the case to the District of New Jersey, where defendant has pending an Adversary Proceeding against the mortgage banker in the New Jersey Bankruptcy Court. Plaintiff has filed a motion to remand the action back to the Delaware Chancery Court, arguing, *inter alia,* that this Court lacks subject matter jurisdiction over the dispute and that the defendant's removal was untimely. Defendant has opposed this motion and has alternatively filed a motion pursuant to Bankruptcy Rule 9006(b) to extend the time in which to file the removal petition. The motions before the Court present the following issues: (1) whether the Court has jurisdiction under 28 U.S.C. § 1334; (2) whether defendant's petition to remove was timely filed; (3) the propriety of discretionary remand and/or abstention; and (4) whether defendant's failure to timely petition for removal constitutes excusable neglect.

AUTH14-000003

## II. Facts

Before describing the facts which lead up to the present dispute, it is necessary to identify **[\*\*3]** the parties involved in and related to this action. Pinnacle Mortgage Investment Company ("Pinnacle") is a Pennsylvania corporation, engaged in the business of mortgage banking. Docket Item ("D.I.") 6 at A-100. **[\*773]** Pinnacle's business was to enter into residential mortgage loan transactions with home purchasers and then sell the closed mortgage loans to investors. *Id.* Pinnacle is now in Chapter 11 in the New Jersey Bankruptcy Court, and is not a party to this proceeding. Provident is a New Jersey bank which, for the two years prior to this dispute, provided interim financing for Pinnacle's mortgage loan transactions pursuant to a Warehouse Loan Agreement ("Loan Agreement") dated December 14, 1992. *Id.* Saul, Ewing is a Pennsylvania law partnership whose partners include lawyers licensed to practice in the State of Delaware. *Id.* William Ward ("Ward") is an attorney licensed to practice law in the State of Delaware, and is a partner at Saul, Ewing. *Id.* at A-101. Ward, at all times relevant to this action, acted as agent for Provident in connection with certain residential mortgage closings. *Id.* Gary P. and Jane M. Bennett (the "Bennetts") are Delaware residents who borrowed **[\*\*4]** money for a residential mortgage from Pinnacle (the "Bennett Mortgage," or "Bennett Mortgage Loan"). *Id.*

Under the loan Agreement, Provident financed Pinnacle's mortgage loans for the interval of time between Pinnacle's closing of mortgage loans with the residential borrower and the sale of the closed mortgage loans to investors in the secondary mortgage market, such as FHLMC ("Freddie Mac"). *Id.* at A-4, A-101. Provident financed the loans by crediting Pinnacle's account at Provident with the amount of mortgage proceeds by a check made payable to Pinnacle, and Pinnacle, in turn, would draw a check on its account payable to the mortgagor and the closing agent. *Id.* Provident would be repaid the monies advanced and loaned to Pinnacle plus interest when permanent buyers or investors of each Pinnacle loan purchased the loan and forwarded the funds to Provident. *Id.* at A-4. The transaction between Pinnacle and Provident was structured in such a way that the note and mortgage, payable to Pinnacle, were to be endorsed in blank. The note and mortgage were then forwarded to Provident and held as security until such time as the note and mortgage were sold to investors. *Id.* **[\*\*5]** at A-101.

Ward agreed to act as agent for Provident in connection with the closing for the Bennett Mortgage, which occurred on October 31, 1994. *Id.* The agency arrangement was created by an Agency Agreement, executed by Ward and Provident, which provided, among other things, that "Provident Savings Bank has been granted a security interest in, among other things, the Note and Mortgage to be executed at the time of settlement." *Id.* at A-102. The transaction between Provident and Saul, Ewing turned sour when, unbeknownst to Saul, Ewing, who was relying on Pinnacle's check, Pinnacle converted the funds for its own use, leaving insufficient funds in its account at Provident to cover the check. Ward completed the closing of the Bennett property and issued checks to third parties. *Id.* at A-103. Ward made disbursements to the parties by withdrawal from the Saul, Ewing escrow account. ¹ *Id.* The executed note, endorsed in blank, and an assignment of the mortgage were then forwarded to Provident. *Id.* When Saul, Ewing, after disbursing $ 150,057.44 of its own escrow funds as Provident's agent, presented Pinnacle's check drawn on Pinnacle's account at Provident, Provident **[\*\*6]** refused to honor the check, due to insufficient funds. *Id.* at A-104. On or about November 2, 1994, after the Bennett closing, Provident filled in its name on the blank endorsement on the note and mortgage, thereby consummating an assignment in its favor. The assignment was then duly recorded with the Chester County Recorder's Office on November 15, 1994. ² *Id.*

## FOOTNOTES

1 Counsel for Saul, Ewing explained at oral argument that the law firm has, in connection

AUTH14-000004

with its real estate practice, an escrow account whereby the proceeds for some twenty to twenty-five residential or commercial loans are disbursed to the mortgagors. Funds deposited in this escrow account are not traceable to any particular loan. Thus, the Bennett check was forwarded to Saul, Ewing, deposited in the communal escrow account, and commingled with its contents. When the Bennett check bounced, the money for the Saul, Ewing escrow account had already been paid to third parties, which had the effect of taking money from the account which was designated for some other loan. Saul, Ewing covered the shortfall.

2 Saul, Ewing's complaint in Chancery Court alleges that the assignment was duly recorded with the Recorder of Deeds in and for New Castle County on or about November 2, 1994. *See* D.I. 6 at A-104, P 22. At oral argument, the parties submitted a copy of the recorded assignment, and the date stamp indicated that the recordation occurred on November 15, 1994. This distinction is not relevant to the Court's analysis. However, the Court has noted this distinction in order to address Provident's belief that the Court may not consider factual allegations other than those alleged in the complaint. Whether or not the Court may consider factual allegations other than those alleged in the complaint is an issue the Court need not decide. Paragraph 22 of Saul, Ewing's complaint does, in fact, allege an assignment of the note and mortgage in Provident's favor. *See id.*

**[\*\*7]  [\*774]** Provident filed an action against Pinnacle, Ward, and various other closing agents in the United States District Court for the District of New Jersey on November 9, 1994, *see Provident Sav. Bank v. Pinnacle Mortgage Investment Corp.,* C.A. No. 94-5357 (D.N.J.) seeking damages and a declaration that the note and mortgage are valid and/or that it holds a valid lien on the instruments. D.I. 5 at 8. Over Provident's objection, the action was transferred to the United States District Court for the Eastern District of Pennsylvania. *Id.* at 3. On February 17, 1995, Ward filed a motion to dismiss the action as it pertained to him. D.I. 6 at A-26.

On February 2, 1995, at 4:17 p.m., Provident and two other Pinnacle creditors filed an involuntary petition against Pinnacle in the New Jersey Bankruptcy Court. *See In re Pinnacle Mortgage Investment Corp.,* Case No. 95-10608 (Bankr. D.N.J.). On that same day, at 4:29 p.m., Saul, Ewing filed its complaint against Provident and Pinnacle in Delaware Chancery Court, seeking (1) a preliminary and permanent injunction against Provident from transferring or encumbering the note and mortgage; (2) a declaratory judgment that Saul, Ewing is the **[\*\*8]** rightful holder of the note and mortgage and/or that the note and mortgage are invalid; (3) a declaratory judgment that Provident holds the note and mortgage in constructive trust for the benefit of Saul, Ewing; and (4) damages. *See Saul, Ewing, Remick & Saul v. Provident Sav. Bank,* C.A. No. 14013 (Del. Ch. Feb. 16, 1995). A copy of the complaint was sent to Provident on or about February 20, 1995, attached as an exhibit to Saul, Ewing's motion to dismiss the Pennsylvania action. D.I. 5 at 9. Provident formally accepted service of the complaint on March 13, 1995. *Id.*

Provident then filed an Adversary Proceeding in the New Jersey Bankruptcy Court on March 22, 1995, *see Provident Sav. Bank. v. Pinnacle Mortgage Investment Corp.,* Adv. Pro. No. 95-1091 (Bankr. D.N.J.), seeking, *inter alia,* a declaratory judgment that the note and mortgage are valid. *Id.* at 9. On April 24, 1995, Ward moved to dismiss the Adversary Proceeding as it pertained to him for lack of subject matter jurisdiction. *Id.* On June 5, 1995, a hearing was held on Ward's motion. The court denied the motion, finding that it had subject matter jurisdiction under 28 U.S.C. § 1334.

Meanwhile, Provident **[\*\*9]** failed to respond to the Saul, Ewing complaint in the Delaware action, and Saul, Ewing moved for an entry of default judgment on April 3, 1995. *Id.* A hearing on the motion was held on April 25, 1995 before the Honorable Myron T. Steele of

AUTH14-000005

the Delaware Chancery Court. *Id.* at 9-10. At oral argument, Vice Chancellor Steele entered an order requiring Provident to file an affidavit explaining why it had failed to respond to the complaint and to file an answer and supporting brief. D.I. 6 at A-153-54. On April 27, 1995, Provident filed its petition to remove this action. D.I. 1. Saul, Ewing has moved to remand the action back to the Chancery Court, one of the motions presently before the Court. D.I. 4.

### III. Analysis

#### A. Motion to Remand

Before addressing the issue of whether the Court should grant Saul, Ewing's motion to remand, the Court must first determine whether it has bankruptcy jurisdiction over the matter in the first instance. **HN1** The jurisdictional grant to federal district courts over bankruptcy matters is found at 28 U.S.C. § 1334, which provides, in pertinent part:

> (a) Except as provided in subsection (b) of this section, the district court **[**10]** shall have original and exclusive jurisdiction of all cases under title 11.
>
> **[*775]** (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

A bankruptcy court may, by reference from a district court, hear cases arising under title 11 or arising in a case under title 11, including those deemed "core" proceedings as defined at 28 U.S.C. § 157(b). The more frequently litigated issue under § 1334(b), however, and that which is in dispute in the present case, is whether an action is "related to" a case under title 11. The Third Circuit Court of Appeals has formulated a test to determine whether an action is "related to" a bankruptcy proceeding for the purposes of establishing jurisdiction under 28 U.S.C. § 1334:

> **HN2** The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* **[**11]** . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984) (citations omitted) (emphasis in original); *In re Selig,* 135 Bankr. 241, 244 (Bankr. E.D. Pa. 1992). If the dispute is between non-parties and has only a slight effect on the bankruptcy estate, "related to" jurisdiction has been held to be improper. *See In re P.D.S. Dev. Corp.,* 103 Bankr. 93, 95 (Bankr. S.D.N.Y. 1989) (effect of substituting one creditor of the debtor for another is insufficient for "related to" jurisdiction). For example, numerous courts have held that disputes between creditors as to the priorities of their claims against the debtor are not within the scope of bankruptcy court jurisdiction. *See Selig,* 135 Bankr. at 245-46 ("Merely because a debtor's affairs are a prominent aspect of the history between non-debtors does not provide "related to" jurisdiction to a bankruptcy court over that dispute."); *see also In re Crystal Mfg. &* **[**12]** *Packaging, Inc.,* 60 Bankr. 816, 818-19 (Bankr. N.D. Ill. 1986); *In re Alexander,* 49 Bankr. 733, 737 (Bankr. D.N.D. 1985); *In re Dr. C. Huff Co.,* 44 Bankr. 129, 134-35 (Bankr. W.D.

AUTH14-000006

Ky. 1984); *In re Guimond Farms, Inc.,* 10 Bankr. 177, 179 (Bankr. D. Mass. 1981). Therefore, disputes between parties other than the debtor generally do not invoke the court's "related to" jurisdiction of § 1334 unless the action would have some effect on the bankruptcy estate.

However, if the civil action pertains to the property of the bankruptcy estate, courts have found "related to" jurisdiction. It is this form of "related to" jurisdiction that Provident seeks to establish. With certain exceptions not relevant here, the only property interests of a debtor that become part of the estate are those that exist at the time of the commencement of the case. *See* 11 U.S.C. § 541 revision notes and legislative reports ("The commencement of a bankruptcy case creates an estate."); *see also In re Bobroff,* 766 F.2d 797, 803 (3d Cir. 1985) (same). Thus, if Provident can establish that the civil action relates to property of the bankruptcy estate, "related to" jurisdiction might be proper.

This **[\*\*13]** Court is informed by decisions of the Third Circuit Court of Appeals which have addressed the issue *sub judice,* i.e. whether the property before the Court should be deemed part of the Pinnacle bankruptcy estate so as to invoke this Court's "related to" jurisdiction. Because the bankruptcy estate is created at the moment the petition is filed, the Court must examine when the debtor first gained or lost its interest in the property in dispute. The Third Circuit Court of Appeals has held that *HN3* actions pertaining to property acquired *after* the bankruptcy estate has been created does not invoke the "related to" jurisdiction of a district court. In *Bobroff,* 766 F.2d 797, the property at issue was various tort causes of action for malicious prosecution, defamation and interference with contractual relations, arising out of pending proceedings in Bankruptcy Court. *Id.* at 800. The court found that the property did not relate to the bankruptcy case because the causes of action did **[\*776]** not accrue, and thereby become property interests, until after the case was commenced. *Id.* at 803. Therefore, there was no bankruptcy court jurisdiction over the property.

The Third Circuit Court **[\*\*14]** of Appeals has also held that *HN4* property which is liquidated before or after the creation of the bankruptcy estate no longer belongs to the estate, and a dispute arising out of such property cannot invoke the "related to" jurisdiction of a district court. In *In re Hall's Motor Transit Co.,* 889 F.2d 520 (3d Cir. 1989), the property forming the basis of the dispute had previously belonged to the debtor, but had been sold to a third party bidder after the commencement of bankruptcy proceedings. *Id.* at 521. Central Transit, the subsequent buyer of the property, sought declaratory and other relief arising out of condemnation proceedings against the property. *Id.* Central Transit brought the action in bankruptcy court, alleging that the right to use the property in its desired manner was a right belonging to the estate from which the property was derived, and thus the dispute related to property of the bankruptcy estate. *Id.* at 522. The court rejected Central Transit's contention, and found that the passing of the property from the estate removed all claims appurtenant to the property from its jurisdiction.

> Central Transit obtained the property from Hall's in a sale **[\*\*15]** permitted by the bankruptcy trustee and affirmed by the bankruptcy court after the rezoning had occurred. Consequently, the property passed from Hall's estate to Central Transit and, moreover, out of the bankruptcy court's jurisdiction. The bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate.

*Id.* Similarly, in *Selig,* 135 Bankr. 241, certain bonds and securities of the debtor in which the defendant bank had a security interest were found not to be part of the debtor's estate. *Id.* at 245. Because the property had been liquidated by the bank eighteen months prior to the commencement of the bankruptcy case, it had been removed from the estate.

The Property in issue therefore clearly does not appear to be, to have ever been,

AUTH14-000007

or to have any possibility of becoming, property of the Debtors' estate.
Therefore. . . the Property is outside of the scope of bankruptcy court jurisdiction.
Litigation concerning the Property is, therefore, . . . not "related to" the Debtors'
bankruptcy case.

*Id.* at 245.

As the discussion above indicates, *HN5* a court has "related to" jurisdiction over **[\*\*16]**
property only when the property is part of the bankruptcy estate. Without deciding the
parties' respective interests in the instruments in the case *sub judice,* it is clear that
Provident's security interest in the blank endorsed note and mortgage ripened into legal title
by virtue of the endorsement in its favor and subsequent recordation of the assignment. As
of November 15, 1994, whatever interest Pinnacle had in the note and mortgage was legally
extinguished. The property at stake was therefore not part of the bankruptcy estate at the
time the bankruptcy action was commenced, on February 2, 1995. Since the property in
dispute was not part of the bankruptcy estate on that date, "related to" jurisdiction is lacking.

Provident argues in the alternative that jurisdiction can be found at 28 U.S.C. § 157.
Provident argues that § 157(b)(2)(K), determination of the validity, extent and priority of
competing liens; § 157(b)(2)(E), proceedings to turn instruments over to court; and § 157
(b)(2)(H), transfer of instrument by fraudulent conveyance, are all invoked in this case, and
therefore provide the court with jurisdiction as "core" proceedings. *Id.* This argument is
without **[\*\*17]** merit. 28 U.S.C. § 157 is not a jurisdictional grant to the district courts, but
rather, an "itemization" of the types of proceedings which constitute "core" proceedings
appropriate for resolution by the bankruptcy court. Provident cites no authority for the
proposition that the district court's jurisdiction is established by this list of "core"
proceedings. In fact, Bankruptcy Judge Wizmur had previously rejected the **[\*777]** same
argument urged by Provident in an earlier proceeding. ³ As one court explained:

> Subdivision (b)(2) of section 157 then contains a non-exclusive, descriptive
> listing of "core" proceedings. It is this Court's firm conviction that, although
> drafted in declaratory form, this subdivision is only descriptive of the types of
> matters which generally will arise under or arise in a case under title 11.

*In re Nanodata Computer Corp.,* 52 Bankr. 334, 341 (Bankr. W.D.N.Y. 1985). Since § 157(b)
merely lists types of proceedings appropriate for resolution under a district court's § 1334
jurisdictional grant, Provident's argument is circular and therefore meritless. The Court
concludes that it lacks jurisdiction to hear this matter under 28 U.S.C. § 1334 **[\*\*18]** since
the dispute does not relate to a case under title 11, and therefore, this case must be
remanded to Delaware Chancery Court. ⁴

## FOOTNOTES

3 Judge Wizmur, United States Bankruptcy Judge for the District of New Jersey, heard
oral argument on William Ward's motion to dismiss on June 5, 1995. *In re Pinnacle
Mortgage Investment Corp.,* Bankruptcy No. 95-10608 (June 5, 1995). With respect to
Provident's assertion that § 157 confers jurisdiction upon the district court, Judge Wizmur
remarked, "Forgetting about [§ ] 157, which I agree with you doesn't grant jurisdiction,
it's merely a procedural recitation of how the bankruptcy court should resolve matters
over which it has jurisdiction. We're, of course, guided by 28 U.S.C. § 1334." Transcript
of Proceedings.

4 Saul, Ewing also urges this Court to remand pursuant to 28 U.S.C. § 1452(b) and/or
abstain from accepting jurisdiction over this dispute pursuant to 28 U.S.C. § 1334(c)(1)
and Bankruptcy Rule 5011(b). D.I. 5 at 18. Since the Court finds that jurisdiction is

AUTH14-000008

lacking under 28 U.S.C. § 1334 and will remand, it will not reach the abstention or discretionary remand arguments.

**[\*\*19]** In reaching this conclusion, the Court is mindful of the ruling of Judge Wizmur in the Adversary Proceeding in the Bankruptcy Court for the United States District Court for the District of New Jersey. *See Provident Sav. Bank. v. Pinnacle Mortgage Investment Corp.,* Adv. Pro. No. 95-1091 (Bankr. D.N.J.). Judge Wizmur, ruling from the bench on Ward's Motion to Dismiss the Adversary Proceeding as it pertains to him, found that jurisdiction was proper under 28 U.S.C. § 1334.

> Let me agree from the standpoint that I think the resolution of claims, as well as the threshold contention that as a threshold matter the mortgage and note that we're dealing with here constitutes an interest of the debtor under [11 U.S.C. § ] 541, does offer this court the jurisdictional reach, certainly under *Celotex,* which adopted the *Pacor* criteria to adjudicate the matter, from the standpoint of a discretionary abstention.

Transcript of Proceedings. This Court has reached the opposite conclusion, having had the luxury of time in which to research the issue. As a result, the Court respectfully disagrees with Judge Wizmur. At any rate, this Court, of course, is not bound by a decision **[\*\*20]** of another federal court other than the United States Supreme Court and the Third Circuit Court of Appeals.

## B. Motion to Extend Time

The second motion before the Court is Provident's motion, pursuant to Bankruptcy Rule 9006 (b)(1) to extend time to remove the action *nunc pro tunc* to April 27, 1995. D.I. 9. Because the Court is without bankruptcy jurisdiction, this motion will be dismissed as moot.

## IV. Conclusion

Because this action does not relate to the property of a bankruptcy estate, this Court has no jurisdiction under 28 U.S.C. § 1334. Therefore, the case will be remanded to Chancery Court. Provident's motion to extend time will be dismissed as moot. An order setting forth these conclusions will issue.

Service: **Get by LEXSEE®**
Citation: **190 B.R. 771**
View: Full
Date/Time: Monday, November 2, 2009 - 11:42 AM EST

\* Signal Legend:
🔴 - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✦ - Positive treatment is indicated
(A) - Citing Refs. With Analysis Available
(i) - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

AUTH14-000009

Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector

History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help

**LexisNexis**®

About LexisNexis  | Terms & Conditions  | Contact Us

Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

AUTH14-000010

FOCUS™ Terms [                              ]  Search Within  Original Results (1 - 1)  [▼]  [Go →]
Advanced...

Service: **Get by LEXSTAT®**
TOC: United States Code Service: Code, Const, Rules, Conventions & Public Laws > / ... / >
PART VII. ADVERSARY PROCEEDINGS > Rule 7001. Scope of Rules of Part VII
Citation: **Fed. R. Bankr. P. 7001**

*USCS Bankruptcy R 7001*

Retrieve Legislative Impact® **($)**                          ◄ **Practitioner's Toolbox**   [?] [☐]◄
UNITED STATES CODE SERVICE
Copyright © 2009 Matthew Bender & Company, Inc.,      ⬇ **History**
a member of the LexisNexis Group (TM)
All rights reserved.                                 ⬇ **Interpretive Notes and**
                                                        **Decisions**
*** CURRENT THROUGH CHANGES RECEIVED OCTOBER
26, 2009 ***                                         ⬇ **History; Ancillary Laws and**
                                                        **Directives**
FEDERAL RULES OF BANKRUPTCY PROCEDURE AND
OFFICIAL BANKRUPTCY FORMS                          **Resources & Practice Tools**
PART VII. ADVERSARY PROCEEDINGS
                                                     ⊕ **NITA Commentary**

                                                     ⊕ **Related Statutes & Rules**

**Go to the United States Code Service Archive**     ⊖ **Research Guide**
**Directory**                                        Federal Procedure:
                                                     > 14 Moore's Federal Practice
USCS Bankruptcy R 7001                                  (Matthew Bender 3d ed.), ch 81,
                                                        Applicability of the Rules in
                                                        General; Removed Actions § 81.07.
                                                     Commercial Law:
                                                     > 1 Debtor-Creditor Law (Matthew
⌁ **NITA Commentary:**                                  Bender), ch 12, Student Loans and
                                                        Trade School Abuses § 12.06.
Review expert commentary from The National Institute for   > 3 Debtor-Creditor Law (Matthew
Trial Advocacy                                          Bender), ch 30, Attachment §
                                                        30.01.
Review Court Orders which may amend this Rule.       > 3A Debtor-Creditor Law (Matthew
                                                        Bender), ch 33, Bankruptcy Law §§
Rule 7001.  Scope of Rules of Part VII                  33.04, 33.06, 33.08, 33.09.
                                                     Bankruptcy:
An adversary proceeding is governed by the rules of this   > 10 Collier on Bankruptcy (Matthew
Part VII. The following are adversary proceedings:      Bender 15th ed. rev), ch 7001,
   (1) a proceeding to recover money or property, other    Scope of Rules of Part VII PP
than a proceeding to compel the debtor to deliver property   7001.01 et seq.
to the trustee, or a proceeding under § 554(b) or § 725 of   > 1 Collier Bankruptcy Practice Guide,
the Code, Rule 2017, or Rule 6002;                      ch 17, Venue P 17.05.
   (2) a proceeding to determine the validity, priority, or   > 1 Collier Bankruptcy Practice Guide,
extent of a lien or other interest in property, other than a    ch 18, Consolidation and Joint
proceeding under Rule 4003(d);                          Administration P 18.08.
   (3) a proceeding to obtain approval under § 363(h) for the sale of both the interest of the   ⬇ More...
estate and of a co-owner in property;
   (4) a proceeding to object to or revoke a discharge;
   (5) a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter

13 plan;
    (6) a proceeding to determine the dischargeability of a debt;
    (7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;
    (8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination;
    (9) a proceeding to obtain a declaratory judgment relating to any of the foregoing; or
    (10) a proceeding to determine a claim or cause of action removed under 28 U.S.C. § 1452.

⌐ **History:**

(Amended Aug. 1, 1987; Aug. 1, 1991; Dec. 1, 1999.)

⌐ **History; Ancillary Laws and Directives:**

Other provisions

**Notes of Advisory Committee.** The rules in Part VII govern the procedural aspects of litigation involving the matters referred to in this Rule 7001. Under Rule 9014 some of the Part VII rules also apply to contested matters.

These Part VII rules are based on the premise that to the extent possible practice before the bankruptcy courts and the district courts should be the same. These rules either incorporate or are adaptations of most of the Federal Rules of Civil Procedure. Although the Part VII rules of the former Bankruptcy Rules also relied heavily on the Fed. R. Civ. P., the former Part VII rules departed from the civil practice in two significant ways: a trial or pretrial conference had to be scheduled as soon as the adversary proceeding was filed and pleadings had to be filed within periods shorter than those established by the Fed. R. Civ. P. These departures from the civil practice have been eliminated.

The content and numbering of these Part VII rules correlates to the content and numbering of the Fed. R. Civ. P. Most, but not all, of the Fed. R. Civ. P. have a comparable Part VII rule. When there is no Part VII rule with a number corresponding to a particular Fed. R. Civ. P., Parts V and IX of these rules must be consulted to determine if one of the rules in those parts deals with the subject. The list below indicates the Fed. R. Civ. P., or subdivision thereof, covered by a rule in either Part V or Part IX.

| F.R.Civ.P. | Rule in Part V or IX |
|---|---|
| 6 | 9006 |
| 7(b) | 9013 |
| 10(a) | 9004(b) |
| 11 | 9011 |
| 38,39 | 9015(a)-(e) |
| 47-51 | 9015(f) |
| 43,44,44.1 | 9017 |
| 45 | 9016 |
| 58 | 9021 |
| 59 | 9023 |
| 60 | 9024 |
| 61 | 9005 |
| 63 | 9028 |
| 77(a),(b),(c) | 5001 |
| 77(d) | 9022(d) |

LexisNexis® *Total Research System*                    Switch Client ⁞ Preferences ⁞ Sign Out ⁞ ? Help

Search ⟍ Research Tasks ⟍ Get a Document ⟍ Shepard's® ⟍ Alerts ⟍ Total Litigator ⟍ Transactional Advisor ⟍ Cour

FOCUS™ Terms [                               ] Search Within [Original Results (1 - 1)    ▼] [Go →]
Advanced...

Service: **Get by LEXSEE®**
Citation: **530 F.3d 230**

*530 F.3d 230, \*; 2008 U.S. App. LEXIS 13351, \*\*;*
*Bankr. L. Rep. (CCH) P81,265*

IN RE: JANICA MANSARAY-RUFFIN, Debtor; SLW CAPITAL, LLC v. JANICA MANSARAY-
RUFFIN; WILLIAM C. MILLER, Janica Mansaray-Ruffin, Appellant

No. 05-4790

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

530 F.3d 230; 2008 U.S. App. LEXIS 13351; Bankr. L. Rep. (CCH) P81,265

December 13, 2007, Argued
June 24, 2008, Filed

**PRIOR HISTORY:  [\*\*1]**
On Appeal from the United States District Court for the Eastern District of Pennsylvania.
(D.C. Civil No. 04-cv-03703). District Judge: Honorable Eduardo C. Robreno.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Appellant lienholder appealed from the United States District
Court for the Eastern District of Pennsylvania which affirmed the denial of the lienholder's
motion to dismiss. At issue was whether a debtor in a Chapter 13 bankruptcy case
successfully invalidated a lien on her property by providing for it as an unsecured claim in
her confirmed plan, without initiating an adversary proceeding as required by the Federal
Rules of Bankruptcy Procedure.

**OVERVIEW:** Debtor argued that she successfully invalidated the lien on her property
without an adversary proceeding. Debtor maintained that a secured creditor could not
have its lien "ride through" bankruptcy unaffected if the debtor filed an unsecured claim on
its behalf. She therefore proposed that the proof of claim that she filed was a proper
affirmative action to invalidate the lienholder's lien. She cited no authority for this
proposition and the court could find none. Thus, the proof of claim that debtor filed on
behalf of the lienholder did not invalidate the lienholder's lien. The appellate court held
that the adversary proceeding rule, Fed. R. Bankr. P. 7001, was mandatory and
established a right to specific process that had to be afforded. The lienholder had the due
process right to assume that, unless debtor commenced the adversary proceeding
required by the Bankruptcy Rules and served it with a complaint and a summons, its lien
could not be invalidated. Whatever actual knowledge the lienholder may have had
regarding the plan's treatment of its lien did not eliminate this right and neither did the
provisions of 11 U.S.C.S. § 1327.

**OUTCOME:** The appellate court affirmed the district court's holding that the lienholder's
lien was not invalidated and passed through debtor's bankruptcy unaffected.

AUTH16-000001

**CORE TERMS:** confirmation, adversary proceeding, confirmed, notice, mortgage, secured claim, finality, proof of claim, invalidate, revoke, bind, Bankruptcy Rules, reorganization, summons, unsecured claim, secured creditor, preclusive effect, post-confirmation, invalidated, confirming, bankruptcy proceedings, student loan, unaffected, revocation, mandatory, objected, claimant, binding, bankruptcy case, property interest

## LEXISNEXIS® HEADNOTES                                                ⊟ **Hide**

Bankruptcy Law > Practice & Proceedings > General Overview 🔳
*HN1* ↧ The United States Supreme Court prescribes rules of practice and procedure for bankruptcy cases. 28 U.S.C.S. § 2075. The rules are not to abridge, enlarge, or modify any substantive right.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview 🔳
*HN2* ↧ Fed. R. Bankr. P. 7001(2) sets forth matters that may only be resolved through an "adversary proceeding," including the determination of the validity, priority, or extent of a lien or other interest in property. An adversary proceeding is essentially a self-contained trial - still within the original bankruptcy case - in which a panoply of additional procedures apply. Fed. R. Bankr. P. 7001 - 7087.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > Commencement 🔳
Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss 🔳
Civil Procedure > Pleading & Practice > Pleadings > Complaints > General Overview 🔳
*HN3* ↧ Many of Bankruptcy procedures derive in whole or in part from the Federal Rules of Civil Procedure, giving an adversary proceeding all the trappings of traditional civil litigation. For example, Fed. R. Bankr. P. 7003 adopts wholesale Fed. R. Civ. P. 3 and thus requires the filing of a complaint to commence an adversary proceeding. Adopting and modifying portions of Fed. R. Civ. P. 4, Fed. R. Bankr. P. 7004 requires the service of a summons and a copy of the complaint. Fed. R. Bankr. P. 7012 provides that the defendant has 30 days to file an answer after the issuance of the summons and makes Fed. R. Civ. P. 12(b) - (h) applicable in its entirety, thus allowing, inter alia, all of the Rule 12(b) defenses, motions for a more definite statement, and judgments on the pleadings. Moreover, an adversary proceeding offers the parties the same opportunity for discovery as traditional civil litigation, and the rules regarding voluntary and involuntary dismissals, default judgments, and summary judgment are identical as well. Fed. R. Bankr. P. 7026-7037, 7041, 7055-7056.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > Causes of Action 🔳
*HN4* ↧ See Fed. R. Bankr. P. 7001.

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > Causes of Action 🔳
*HN5* ↧ The Federal Rules of Bankruptcy Procedure are binding and courts must abide by them unless there is an irreconcilable conflict with the Bankruptcy Code. The three concepts included in Fed. R. Bankr. P. 7001(2) - validity, priority, and extent - all pertain in some way to the basis of the lien itself. Fed. R. Bankr. P. 3012 advisory committee's note. The "validity" of a lien refers to its "legal force."  More Like This Headnote

Bankruptcy Law > Claims > Types > Secured Claims & Liens > General Overview 🔳
Bankruptcy has traditionally afforded special status to liens, allowing them to pass

AUTH16-000002

*HN6*±through bankruptcy unaffected. As the United States Court of Appeals for the Fourth Circuit explains: The general rule is that liens pass through bankruptcy unaffected. A bankruptcy discharge extinguishes only in personam claims against the debtor(s), but generally has no effect on an in rem claim against the debtor's property. For a debtor to extinguish or modify a lien during the bankruptcy process, some affirmative step must be taken toward that end. Unless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation. More Like This Headnote

Bankruptcy Law > Claims > Types > Secured Claims & Liens > General Overview
Bankruptcy Law > Individuals With Regular Income > Plans > Contents

*HN7*±The Bankruptcy Code states that a plan may include any other appropriate provision not inconsistent with the Code. 11 U.S.C.S. § 1322(b)(11). However, the United States Court of Appeals for the Third Circuit has previously considered whether a provision in a plan can invalidate a lien - which would run afoul of the Federal Rules of Bankruptcy Procedure but not any specific provision of the Bankruptcy Code itself - and have ruled that this substantive catch-all provision does not leave courts free to disregard the Federal Rules of Bankruptcy Procedure. More Like This Headnote | *Shepardize:* Restrict By Headnote

Bankruptcy Law > Practice & Proceedings > General Overview

*HN8*±As a general matter, the Bankruptcy Code defines the creation, alteration or elimination of substantive rights but the Bankruptcy Rules define the process by which these privileges may be effected. More Like This Headnote

Bankruptcy Law > Claims > Types > Secured Claims & Liens > General Overview
Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > Causes of Action

*HN9*±It is appropriate that the Federal Rules of Bankruptcy Procedure permit lien invalidation to occur only through litigation in an adversary proceeding - and not through a provision in a plan - for the invalidation of a lien on the property of the debtor held by a specific creditor is a matter of particularly great consequence, in terms of the applicable legal principles and the practical result. An adversary proceeding provides the lienholder with greater procedural protection, requiring a complaint and a summons, providing for an answer and discovery, and generally concluding only after trial or a dispositive motion. In contrast, the Federal Rules of Bankruptcy Procedure establish less exacting requirements for the confirmation of a bankruptcy plan, a process which entails virtually none of the procedural safeguards of an adversary proceeding. More Like This Headnote |
*Shepardize:* Restrict By Headnote

Bankruptcy Law > Case Administration > General Overview
Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation > General Overview
Bankruptcy Law > Practice & Proceedings > Contested Matters

*HN10*±Under Fed. R. Bankr. P. 2002, parties in interest, including creditors, must receive notice by mail at least 25 days before both the deadline for filing objections to the plan and the date of the required confirmation hearing. Crucially, plan confirmation does not require the filing of a complaint or the service of a summons. Moreover, in the Chapter 13 context, the notice sent need not even include a full copy of the proposed plan; rather, a summary of the plan can suffice. Fed. R. Bankr. P. 3015(d). Therefore, as the United States Court of Appeals for the Tenth Circuit has put it, confirmation does not require specific notice of a plan provision's effect on a particular creditor, nor does it require notice to be served in any particular manner or upon any particular person. In

AUTH16-000003

addition, an objection to the confirmation of a Chapter 13 plan is a "contested matter," governed by Fed. R. Bankr. P. 9014. Fed. R. Bankr. P. 3015(f). Contested matters are more informal than adversary proceedings, are initiated by motion (not by a complaint), and, unless the court directs otherwise, do not require a responsive pleading. Fed. R. Bankr. P. 9014.  More Like This Headnote

Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation > Effects 🖫
HN11✛The Bankruptcy Code does provide that the terms of a confirmed plan are binding. 11 U.S.C.S. § 1327. Under § 1327, a confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation > General Overview 🖫
HN12✛It is well settled law that a confirmed plan is final.  More Like This Headnote

Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation > Effects 🖫
HN13✛See 11 U.S.C.S. § 1327.

Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation > Effects 🖫
HN14✛11 U.S.C.S. § 1325(a)(5) is not mandatory. Thus, while case law does note the importance of finality, it recognizes that the policy of finality must yield to the principle that a plan cannot violate a mandatory provision of the Bankruptcy Code.  More Like This Headnote

Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation > Effects 🖫
HN15✛A court cannot defer to a Chapter 13 confirmation order on res judicata grounds if it would result in a denial of due process in violation of the Fifth Amendment of the United States Constitution.  More Like This Headnote

Bankruptcy Law > Claims > Types > Secured Claims & Liens > General Overview 🖫
Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection 🖫
HN16✛The level of process due to a party prior to the deprivation of a property interest, such as a lien, is highly dependent on the context. As the United States Supreme Court has repeatedly emphasized, the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. Thus, process that may be constitutionally sufficient in one setting may be insufficient in another.  More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection 🖫
HN17✛Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.  More Like This Headnote

Bankruptcy Law > Case Administration > Notice 🖫
Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation > Effects 🖫
Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata 🖫
HN18✛The United States Court of Appeals for the Third Circuit has refused to treat confirmed bankruptcy plans as res judicata with respect to the claims of creditors who do not receive notice that is sufficient under the circumstances - even where adherence to the plain language of the relevant statute would have made the

AUTH16-000004

confirmed plan binding on all creditors.  More Like This Headnote

Bankruptcy Law > Case Administration > Notice
Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection
HN19 A creditor's actual knowledge regarding the bankruptcy proceedings does not
eliminate due process concerns.  More Like This Headnote

Bankruptcy Law > Case Administration > Notice
Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection
HN20 The fact that a creditor knows of the initiation of reorganization proceedings does
not of itself place a burden on the creditor to file an appearance or claim in the
proceeding before receiving notice to do so. A creditor has every right to assume
that he will be sent all the notices to which he is entitled under the Bankruptcy
Code. Thus, there are statutory procedural requirements that bear directly on the
level of process due to a party in a particular situation.  More Like This Headnote

Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation > Effects
HN21 Despite any statutory prescription of finality or any knowledge that the creditor
may have, a confirmed plan has no preclusive effect on issues that must be
raised in an adversary proceeding, if no such proceeding has been
brought.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Bankruptcy Law > Discharge & Dischargeability > Nondischarge of Individual Debts > Student Loans
Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > Causes of Action
HN22 Fed. R. Bankr. P. 7001(6) requires an adversary proceeding in order to discharge
student loan debt. Further, under 11 U.S.C.S. § 523(a)(8), student loans may
not be discharged in a Chapter 13 bankruptcy unless the debtor establishes that
continuing liability for the loan would cause him or her "undue
hardship."  More Like This Headnote

Bankruptcy Law > Case Administration > Notice
Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation > Effects
Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection
HN23 A bankruptcy court confirmation order generally is afforded a preclusive effect.
But the United States Court of Appeals for the Fourth Circuit cannot defer to such
an order if it would result in a denial of due process in violation of the Fifth
Amendment to the United States Constitution. In concluding that such a denial
would result in the situation before it, the Fourth Circuit held that where the
Bankruptcy Code and the Federal Rules of Bankruptcy Procedure specify the
notice required prior to entry of an order, due process generally entitles a party
to receive the notice specified before an order binding the party will be afforded
preclusive effect.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Bankruptcy Law > Case Administration > Notice
Bankruptcy Law > Discharge & Dischargeability > Nondischarge of Individual Debts > Student Loans
Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > Causes of Action
Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection
HN24 Discharging student loan debt through a provision in a confirmed plan, and
without the adversary proceeding required by Fed. R. Bankr. P. 7001(6), violates
a creditor's due process rights. It does not matter that the creditor did not raise
its due process challenge until four years after the plan's confirmation because
every person and entity is entitled to the prescribed level of notice for the
process to be due and only thereafter may the coercive power of the government

AUTH16-000005

be used against them. Because the debtor failed to commence an adversary proceeding and serve the creditor with a summons and a complaint, the discharge of the disputed debt in the plan could not be given effect.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Bankruptcy Law > Case Administration > Notice

Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation > Effects

Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection

HN25⚡Although the United States Court of Appeals for the Seventh Circuit recognizes the strong policy favoring finality of confirmation orders, due process entitles creditors to the heightened notice provided for by the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, and the dictates of due process trump policy arguments about finality.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation > Effects

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview

HN26⚡If an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclusive effect. Thus a Chapter 13 plan confirmed while an adversary proceeding is pending would not have res judicata effect on the adversary proceeding.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview

Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection

HN27⚡The United States Court of Appeals for the Third Circuit does not hold that the failure to adhere to every Rule of Bankruptcy Procedure implicates due process. Rather, the Third Circuit holds only that, where the Federal Rules of Bankruptcy Procedure require an adversary proceeding - which entails a fundamentally different, and heightened, level of procedural protections - to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one.  More Like This Headnote | *Shepardize: Restrict By Headnote*

**COUNSEL:** David A. Scholl, Esq. ▾ [ARGUED], Regional Bankruptcy Center of Southeastern Pennsylvania, Newtown Square, PA, Counsel for Debtor-Appellant Janica Mansaray-Ruffin.

David B. Banks, Esq. ▾ [ARGUED], Banks & Banks, Philadelphia, PA, Counsel for Plaintiff-Appellee SLW CAPITAL, LLC.

**JUDGES:** Before: RENDELL ▾, GREENBERG ▾, and VAN ANTWERPEN ▾, Circuit Judges. GREENBERG ▾, Circuit Judge, dissenting.

**OPINION**

**[*232]** OPINION OF THE COURT

RENDELL ▾, Circuit Judge.

This appeal requires us to determine whether the debtor in a Chapter 13 bankruptcy case successfully invalidated a lien on her property by providing for it as an unsecured claim in her confirmed plan, without initiating an adversary proceeding as required by the Federal Rules

AUTH16-000006

of Bankruptcy Procedure. We agree with the lienholder, as well as with the Bankruptcy Court and the District Court, that the answer to this question is no. Accordingly, we will AFFIRM.

**I.**

On November 26, 1996, Janica Mansaray-Ruffin borrowed $ 25,600 from United Companies →Lending Corporation ("United") and, as collateral for that loan, executed **[**2]** a mortgage in favor of United against her primary residence -- 5101 West Girard Avenue, Philadelphia, PA 19131. The mortgage was recorded as a first lien against the property. United later assigned the mortgage to EMC Mortgage Corporation ("EMC"), and, after the instant appeal was filed, EMC assigned the mortgage to SLW Capital, LLC ("SLW "), making SLW the proper appellee.

On February 27, 2002, Mansaray-Ruffin's counsel sent a letter to EMC, claiming that United had committed a number of violations of the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., in connection with the initial execution of the mortgage. Counsel made clear in the letter that, based on these violations, Mansaray-Ruffin was asserting "a right to rescind the transaction, pursuant to 15 U.S.C. § 1635 of TILA, which she hereby exercises." (App. 30-31.) It does not appear that EMC ever responded to this letter.

On August 13, 2002, Mansaray-Ruffin filed a voluntary Chapter 13 bankruptcy petition and a Chapter 13 reorganization plan with the United States Bankruptcy Court for the Eastern District of Pennsylvania and, in the accompanying schedules, listed EMC as a disputed secured creditor. The plan included the **[**3]** following regarding EMC:

> In addition, the Debtors shall file adversary proceedings seeking to rescind or otherwise avoid in whole or in part the secured claims arising from the mortgage [] held against her residential realty by EMC . . . . However, the Debtor does anticipate making payments on the first and larger of these loans directly to EMC outside of the Plan to protect her interests in the event that the proceedings are not entirely successful.

(Original Chapter 13 Plan of Debtor.) On August 31, 2002, EMC was mailed notice of Mansaray-Ruffin's plan, including the deadline for filing a proof of claim. EMC did not file a proof of claim -- either before or after the December 31, 2002 bar date.

On February 19, 2003, Mansaray-Ruffin filed an amended plan, a copy of which she had mailed to EMC the day before. The amended plan replaced the above-quoted language with the following:

> The Debtor planned to file a further adversary proceeding to avoid in whole **[*233]** or in part the secured claim allegedly arising from the first mortgage held against her residential realty by [EMC]. However EMC has not filed a proof of claim in this bankruptcy case. The Debtor will therefore file a proof of claim in **[**4]** the amount of $ 1000 on behalf of EMC, and will resort to an adversary proceeding against EMC only in the event that EMC successfully amends that claim and asserts a larger or a secured claim. The Debtor has been paying the regular mortgage payments to EMC outside of the plan in the event that her challenge of the claim of EMC would not be entirely successful. However, upon confirmation of this plan, in which the claim of EMC will be fixed as an unsecured claim in the amount of $ 1000 unless it is able to object to this claim, the Debtor will cease making payments to EMC, and EMC will be obliged to satisfy its mortgage against the Debtor's home upon the discharge of its debt as filed or allowed.

AUTH16-000007

(App. 34.) That same day, Mansaray-Ruffin filed an unsecured proof of claim on behalf of
EMC in the amount of $ 1,000, with the following notation: "ALLEGED MORTGAGE -
RESCINDED." (App. 32.) **1**

---

**FOOTNOTES**

**1** Although it notes in its brief that the proof of claim filed by Mansaray-Ruffin was
untimely, SLW does not argue that this should factor into our decision.

---

Neither EMC nor any other creditor filed objections to the plan, and it was confirmed on
March 25, 2003. Thereafter, however, EMC continued to send **[**5]** Mansaray-Ruffin billing
statements, as if the plan's confirmation had no effect on the mortgage. Mansaray-Ruffin
sent EMC two letters, explaining her position that, under the terms of the plan, she now owed
EMC a $ 1,000 unsecured debt (not the approximately $ 40,000 mortgage-backed balance
that EMC was asserting).

In December 2003, EMC commenced an adversary proceeding in the Bankruptcy Court by
filing a "Complaint to Determine Secured Status Pursuant to 11 U.S.C. § 506." EMC sought a
determination that, under Federal Rule of Bankruptcy Procedure 7001(2), a lien could only be
invalidated through an adversary proceeding and that, therefore, its mortgage continued
unaffected by the plan confirmation. Mansaray-Ruffin countered with a motion to dismiss,
contending that the confirmed plan was final under the Bankruptcy Code and that EMC had to
live with the consequences of not objecting to her treatment of its claim.

On May 6, 2004, the Bankruptcy Court denied Mansaray-Ruffin's motion to dismiss,
concluding that "neither the Debtor's proof of claim, filed on behalf of EMC, nor the Debtor's
amended plan, nor both taken together, are sufficient to avoid EMC's lien." (App. 2.) On July
6, 2004, **[**6]** the Court followed up its denial of the motion to dismiss by issuing an order
that "EMC shall retain its first mortgage lien on the Debtor's residence . . ., that said
mortgage shall be unaffected by the Debtor's confirmed Plan of Reorganization and that said
mortgage shall pass through the bankruptcy unaffected to the full extent of the outstanding
balance due EMC in connection with the underlying mortgage loan." (App. 4.)

On September 26, 2005, the District Court affirmed the Bankruptcy Court's order without
explanation.

**II.**

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. § 1334, the District Court had
jurisdiction pursuant to 28 U.S.C. § 158(a), and we now have jurisdiction pursuant to both
28 U.S.C. § 158(d) and 28 U.S.C. § 1291. In conducting our **[*234]** review, we use the
same standards as the District Court. In re Am. Classic Voyages Co., 405 F.3d 127, 130 (3d
Cir. 2005). Therefore, since the issues in this case are legal in nature, we review the decision
of the Bankruptcy Court de novo. Id.

**III.**

**A.**

We begin with a discussion of the applicable law governing the procedure for invalidating
liens in bankruptcy.**HN1** The United States Supreme Court prescribes rules of practice and
procedure **[**7]** for bankruptcy cases. 28 U.S.C. § 2075. The rules are not to "abridge,
enlarge, or modify any substantive right." Id. Pursuant to this authority, the Court has
promulgated the Federal Rules of Bankruptcy Procedure.

AUTH16-000008

*HN2*⊤Federal Rule of Bankruptcy Procedure 7001 sets forth matters that may only be resolved through an "adversary proceeding," including the determination of the "validity, priority, or extent of a lien or other interest in property." Fed. R. Bankr. P. 7001(2). ² An adversary proceeding is essentially a self-contained trial -- still within the original bankruptcy case -- in which a panoply of additional procedures apply. See Fed. R. Bankr. P. 7001-7087. *HN3*⊤Many of these procedures derive in whole or in part from the Federal Rules of Civil Procedure, giving an adversary proceeding all the trappings of traditional civil litigation. For example, Federal Rule of Bankruptcy Procedure 7003 adopts wholesale Federal Rule of Civil Procedure 3 and thus requires the filing of a complaint to commence an adversary proceeding. Adopting and modifying portions of Federal Rule of Civil Procedure 4, Federal Rule of Bankruptcy Procedure 7004 requires the service of a summons and a copy of the complaint.  **[**8]** Federal Rule of Bankruptcy Procedure 7012 provides that the defendant has 30 days to file an answer after the issuance of the summons and makes Federal Rule of Civil Procedure 12(b)-(h) applicable in its entirety, thus allowing, *inter alia*, all of the 12(b) defenses, motions for a more definite statement, and judgments on the pleadings. Moreover, an adversary proceeding offers the parties the same opportunity for discovery as traditional civil litigation, and the rules regarding voluntary and involuntary dismissals, default judgments, and summary judgment are identical as well. See Fed. R. Bankr. P. 7026-7037, 7041, **[*235]** 7055-7056 (making Fed. R. Civ. P. 26-37, 41, and 55-56 applicable to adversary proceedings).

---

**FOOTNOTES**

2 Rule 7001 provides in its entirety:

> *HN4*⊤An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:
>
> (1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002;
>
> (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under **[**9]** Rule 4003(d);
>
> (3) a proceeding to obtain approval under § 363(h) for the sale of both the interest of the estate and of a co-owner in property;
>
> (4) a proceeding to object to or revoke a discharge;
>
> (5) a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan;
>
> (6) a proceeding to determine the dischargeability of a debt;
>
> (7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;
>
> (8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination;
>
> (9) a proceeding to obtain a declaratory judgment relating to any of the

AUTH16-000009

foregoing; or

(10) a proceeding to determine a claim or cause of action removed under 28 U.S.C. § 1452.

*HN5* The Rules are binding and courts must abide by them unless there is an irreconcilable conflict with the Bankruptcy Code. See *In re Am. Classic Voyages Co.*, 405 F.3d at 132; *In re McKay*, 732 F.2d 44, 47-48 (3d Cir. 1984); *In re Decker*, 595 F.2d 185, 189 (3d Cir. 1979). The three concepts included in Rule 7001(2) -- validity, priority, and extent **[**10]** -- all pertain in some way to "the basis of the lien itself." Fed. R. Bankr. P. 3012 advisory committee's note. The "validity" of a lien -- which, unlike "priority" and "extent," is at the heart of the case before us -- refers to its "legal force." *American Heritage Dictionary of the English Language* (4th ed. 2004). ³ The debtor here referred to the concept of commencing an adversary proceeding against EMC in her original plan and her amended plan, but none was ever initiated.

**FOOTNOTES**

3 Other courts have defined "validity" similarly in the context of Rule 7001(2). See, e.g., *In re Hudson*, 260 B.R. 421, 433 (Bankr. W.D. Mich. 2001) (defining "validity" as "having legal strength or force" or "enforceable" (internal quotation marks omitted)); *In re Beard*, 112 B.R. 951, 955 (Bankr. N.D. Ind. 1990) (defining the "validity" of a lien as "the existence or legitimacy of the lien itself").

**B.**

Mansaray-Ruffin argues that she has successfully invalidated EMC's lien without an adversary proceeding because (1) she filed an unsecured proof of claim on EMC's behalf, (2) she treated EMC's claim as unsecured in her plan, (3) EMC failed to object to the treatment of its claim as unsecured, and (4) the Bankruptcy **[**11]** Code generally makes all confirmed plans final.

At the outset, it must be noted that*HN6* bankruptcy has traditionally afforded special status to liens, allowing them to pass through bankruptcy unaffected. See, e.g., *Long v. Bullard*, 117 U.S. 617, 620-21, 6 S. Ct. 917, 29 L. Ed. 1004 (1886). As the United States Court of Appeals for the Fourth Circuit explained:

> [T]he general rule [is] that liens pass through bankruptcy unaffected. A bankruptcy discharge extinguishes only *in personam* claims against the debtor(s), but generally has no effect on an *in rem* claim against the debtor's property. For a debtor to extinguish or modify a lien during the bankruptcy process, some affirmative step must be taken toward that end. Unless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation.

*Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 92 (4th Cir. 1995) (citations omitted).

Mansaray-Ruffin maintains that a secured creditor cannot have its lien "ride through" bankruptcy unaffected if the debtor files an unsecured claim on its behalf. (Appellant's Reply Br. 3.) She therefore proposes that the proof of claim that she **[**12]** filed was a proper

AUTH16-000010

"affirmative action" to invalidate EMC's lien. She cites no authority for this proposition and we can find none. Thus, we conclude that the proof of claim that Mansaray-Ruffin filed on behalf of EMC did not invalidate EMC's lien. [4]

### FOOTNOTES

4 In addition, we note that EMC's failure to file a proof of claim has no legal significance. Filing a proof of claim is not mandatory, and a secured creditor's failure to do so does not result in the loss of its lien. See 11 U.S.C. §§ 501(a), 506(d)(2); Cen-Pen Corp., 58 F.3d at 93-94.

[*236] Next, Mansaray-Ruffin argues that the provision in her confirmed plan treating EMC's claim as unsecured operated to invalidate EMC's mortgage lien. She relies on cases that have permitted liens to be "stripped," pursuant to § 506 of the Code, through the confirmation of a plan. See, e.g., In re Bennett, 312 B.R. 843 (Bankr. W.D. Ky. 2004); In re Dickey, 293 B.R. 360 (Bankr. M.D. Pa. 2003); In re Hudson, 260 B.R. 421 (Bankr. W.D. Mich. 2001); In re Wolf, 162 B.R. 98 (Bankr. D.N.J. 1993). The problem with Mansaray-Ruffin's reliance on these cases is that the concept of "lien stripping" is related to the valuation of collateral, not the validity of a lien, [**13] and, as she has acknowledged in her brief and at oral argument, she challenges the validity of the lien itself, not the valuation of the collateral securing it. Therefore, these cases have no bearing on whether Mansaray-Ruffin could invalidate EMC's lien by using a provision to that effect in her plan.

Mansaray-Ruffin also cites a number of cases in which a debtor successfully fixed the amount of a secured claim at an amount less than the creditor asserted by providing for such lesser amount in her plan. See In re Fesq, 153 F.3d 113 (3d Cir. 1998); In re Holmes, 225 B.R. 789 (Bankr. Colo. 1998). Like the lien-stripping cases, these cases, too, do not involve a challenge to the validity of the lien itself and thus have no bearing on whether Mansaray-Ruffin could invalidate EMC's lien by treating it as an unsecured claim in her plan.

HN7 The Bankruptcy Code does state that a plan may include "any other appropriate provision not inconsistent with" the Code. 11 U.S.C. § 1322(b)(11). However, we have previously considered whether a provision in a plan can invalidate a lien -- which would run afoul of the Rules but not any specific provision of the Code itself -- and have ruled that this "substantive [**14] catch-all provision" does not leave courts free to disregard the Rules. McKay, 732 F.2d at 48. In McKay, two debtors filed Chapter 13 bankruptcy plans, both of which provided that "Debtor avoids liens avoidable under 11 U.S.C. § 522(f)." Id. at 45. Section 522(f), which is not at issue here, allows for the avoidance of certain liens to take advantage of exemptions. Pennsylvania's Department of Public Welfare ("DPW "), a creditor of both debtors, objected to the confirmation of each plan, arguing that § 522(f) lien avoidance could not be achieved through the confirmation process because it involved the determination of the "validity, priority, or extent of a lien" and thus fell under what is now Rule 7001(2). Id. at 46. The bankruptcy court confirmed both plans, notwithstanding this objection. On appeal, we agreed with DPW and reversed, "hold[ing] that where a debtor seeks to avoid a judicial lien pursuant to 11 U.S.C. § 522(f), the adversary proceedings rules adopted by the Bankruptcy Code apply, and that the debtor thus bears the burden of filing a complaint with the bankruptcy court and servicing a copy of it on each creditor whose lien the debtor seeks to avoid." Id. at 45. McKay [**15] confirms that when an adversary proceeding is required under Rule 7001(2), courts are not free to disregard the Rule. [5]

### FOOTNOTES

5 The Bankruptcy Rules have been amended and now provide that lien avoidance pursuant to § 522(f) can be achieved by motion and no longer requires an adversary

AUTH16-000011

proceeding. See Fed. R. Bankr. P. 4003(d), 7001(2), 9014; McKay, 732 F.2d at 47 & n.8. This change, however, has no effect on McKay's relevance here.

As we have previously explained,**HN8** "'[a]s a general matter, the Code defines the creation, alteration or elimination of substantive rights but the Bankruptcy Rules define the process by which these privileges **[\*237]** may be effected.'" Fesq, 153 F.3d at 116 (alteration in original) (quoting In re Hanover Indus. Mach. Co., 61 B.R. 551, 552 (Bankr. E.D. Pa. 1986)). The Rules are there for a reason.

**HN9** It is appropriate that the Rules permit lien invalidation to occur only through litigation in an adversary proceeding -- and not through a provision in a plan -- for the invalidation of a lien on the property of the debtor held by a specific creditor is a matter of particularly great consequence, in terms of the applicable legal principles and the practical result. As discussed above, **[\*\*16]** an adversary proceeding provides the lienholder with "greater procedural protection," Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 451, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004), requiring a complaint and a summons, providing for an answer and discovery, and generally concluding only after trial or a dispositive motion.

In contrast, the Rules establish less exacting requirements for the confirmation of a bankruptcy plan, a process which entails virtually none of the procedural safeguards of an adversary proceeding. **HN10** Under Federal Rule of Bankruptcy Procedure 2002, "parties in interest," including creditors, must receive notice by mail at least 25 days before both the deadline for filing objections to the plan and the date of the required confirmation hearing. Crucially, plan confirmation does not require the filing of a complaint or the service of a summons. Moreover, in the Chapter 13 context, the notice sent need not even include a full copy of the proposed plan; rather, a summary of the plan can suffice. Fed. R. Bankr. P. 3015 (d). Therefore, as the United States Court of Appeals for the Tenth Circuit recently put it, confirmation "does not require specific notice of a plan provision's effect on a particular **[\*\*17]** creditor, nor does it require notice to be served in any particular manner or upon any particular person." In re Mersmann, 505 F.3d 1033, 1043 (10th Cir. 2007). In addition, an objection to the confirmation of a Chapter 13 plan is a "contested matter," governed by Federal Rule of Bankruptcy Procedure 9014. Fed. R. Bankr. P. 3015(f). Contested matters are more informal than adversary proceedings, are initiated by motion (not by a complaint) and, unless the court directs otherwise, do not require a responsive pleading. Fed. R. Bankr. P. 9014; In re Indian Palms Assocs., 61 F.3d 197, 204 n.11 (3d Cir. 1995).

Mansaray-Ruffin also contends that by failing to object to the plan after receiving a copy of it in the mail, EMC waived its right to challenge the plan's invalidation of its lien. While there is visceral appeal to this argument, it does not withstand scrutiny. In order for us to credit Mansaray-Ruffin's position, we would have to find that EMC's failure to object somehow constituted a waiver of Rule 7001 and all of the procedural protections that go with it (i.e., Rules 7002-7087). This, we cannot do. By way of analogy, if a plaintiff were to attempt to "commence" a civil litigation **[\*\*18]** by filing a motion with the district court and mailing a copy of it to the defendant, and the defendant were to fail to file a pleading in response, we surely would not uphold the entry of a default judgment on behalf of the plaintiff. In that situation, the plaintiff has the affirmative duty to file a complaint and to serve a summons with a copy of the complaint on the defendant. See Fed. R. Civ. P. 3-4. This duty is not lessened or negated by the defendant's inaction. Similarly, EMC's failure to object to the plan did not do away with Mansaray-Ruffin's duty to file a complaint and serve EMC pursuant to Rules 7001, 7003, and 7004. EMC had the legal right to do nothing and insist upon **[\*238]** being served with a summons and a complaint in order for its lien to be invalidated.

The only issue that remains is whether, because Mansaray-Ruffin's plan treating EMC's lien as invalid has been confirmed, it should be deemed final and controlling notwithstanding her

AUTH16-000012

failure to follow the Rules.

*HN11* The Bankruptcy Code does provide that the terms of a confirmed plan are binding. 11 U.S.C. § 1327. [6] In *In re Szostek*, we explained that, "[u]nder § 1327, a confirmation order is *res judicata* as to all issues decided **[\*\*19]** or which could have been decided at the hearing on confirmation." 886 F.2d 1405, 1408 (3d Cir. 1989). In that case, a secured creditor sought the revocation of the debtor's confirmed Chapter 13 plan because the plan failed to provide for the full recovery of the present value of its claim. In finding for the debtor, we invoked § 1327 and the *HN12* "well settled law that a confirmed plan is final." *Id.* at 1408-10. Quoting from our opinion in *In re Penn Central Transportation Co.*, 771 F.2d 762, 767 (3d Cir. 1985), we emphasized our view that:

> the purpose of bankruptcy law and the provisions for reorganization could not be realized if the discharge of debtors were not complete and absolute; that if courts should relax provisions of the law and facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated; that creditors would not participate in reorganization if they could not feel that the plan was final, and that it would be unjust and unfair to those who had accepted and acted upon a reorganization plan if the court were thereafter to reopen the plan and change the conditions which constituted the basis of its earlier acceptance.

*Szostek*, 886 F.2d at 1409 **[\*\*20]** (internal quotation marks omitted).

---

### FOOTNOTES

6 This Code section, titled "Effect of Confirmation," provides:

> *HN13* (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
>
> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
>
> (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327.

---

However, in *Szostek*, the secured creditor argued that the plan provision setting forth the amount to which it was entitled violated the Code, namely, 11 U.S.C. § 1325(a)(5), because the provision failed to require the payment of interest necessary for the secured creditor to receive the present value of the claim. We examined whether this Code provision was mandatory, stating that "[i]f the provisions of § 1325(a)(5) are mandatory, as [the creditor] **[\*\*21]** contends, then a plan cannot be confirmed if it does not meet the requirements of that section." *Id.* at 1411. We concluded that *HN14* this provision was not mandatory. *Id.* at 1412. Thus, while *Szostek* does note the importance of finality, it recognizes that the policy of finality must yield to the principle that a plan cannot violate a mandatory provision of the Code.

AUTH16-000013

We hold that the adversary proceeding Rule at issue here is mandatory and establishes a right to specific process that must be afforded. Its mandatory nature is grounded in principles of due process that trump "finality." *See In re Linkous, 990 F.2d 160, 162 (4th Cir. 1993)* *HN15*("[W]e cannot defer to [a Chapter 13 confirmation] order **[\*239]** on *res judicata* grounds if it would result in a denial of due process in violation of the Fifth Amendment of the United States Constitution.").

*HN16*The level of process due to a party prior to the deprivation of a property interest, such as a lien, is highly dependent on the context. As the Supreme Court has repeatedly emphasized, "'[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" *Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189, 196, 121 S. Ct. 1446, 149 L. Ed. 2d 391 (2001)* **[\*\*22]** (quoting *Cafeteria & Rest. Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961)*). Thus, process that may be constitutionally sufficient in one setting may be insufficient in another.

Highlighting the contextual nature of the calculus, the Court famously explained almost sixty years ago that*HN17* "[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing *appropriate to the nature of the case.*" *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950)* (emphasis added); *see also id.* at 314 ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, *under all the circumstances*, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (emphasis added)); *id.* at 314-15 ("[I]f *with due regard for the practicalities and peculiarities of the case* these conditions are reasonably met the constitutional requirements are satisfied." (emphasis **[\*\*23]** added)). [7]

### FOOTNOTES

[7] For example, it is well established that notice of bankruptcy proceedings by publication is generally sufficient to protect the procedural due process rights of unknown creditors, but not those of known creditors. *See Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 488-90, 108 S. Ct. 1340, 99 L. Ed. 2d 565 (1988); New York v. New York, N. H. & H. R. Co., 344 U.S. 293, 296, 73 S. Ct. 299, 97 L. Ed. 333 (1953); Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995).*

Accordingly, *HN18*we have refused to treat confirmed bankruptcy plans as res judicata with respect to the claims of creditors who did not receive notice that was sufficient under the circumstances -- even where adherence to the plain language of the relevant statute would have made the confirmed plan binding on all creditors. *Jones v. Chemetron Corp., 212 F.3d 199, 209-10 (3d Cir. 2000)* (finding that despite 11 U.S.C. § 1141, the analog to § 1327 in the Chapter 11 context, "[u]nder fundamental notions of procedural due process, a claimant who has no appropriate notice of a bankruptcy reorganization cannot have his claim extinguished in a settlement thereto" (citing, *inter alia, Mullane, 339 U.S.* at 314-19)); *In re Harbor Tank Storage Co., 385 F.2d 111, 114-15 (3d Cir. 1967).*

In **[\*\*24]** addition, we have indicated that *HN19*a creditor's actual knowledge regarding the bankruptcy proceedings does not eliminate our due process concerns. *Harbor Tank Storage, 385 F.2d* at 114-16. In *Harbor Tank Storage*, a known creditor filed a claim after the debtor's bankruptcy plan had already been confirmed under Chapter X of the now-

AUTH16-000014

superseded Bankruptcy Act. *Id. at 112.* The creditor argued that it should be permitted to file a post-confirmation claim because, although the debtor had published notice of the bankruptcy **[*240]** proceedings and the important dates in the local newspaper, the debtor had not mailed the creditor the various notices required by the statute. *Id.* The debtor countered that the creditor's claim should be barred because the statute made confirmed plans "'binding upon . . . all creditors'" and because the creditor had actually known about the bankruptcy proceeding and had done nothing to protect its interests until after confirmation. *Id. at 114-15* (*quoting* 11 U.S.C. § 624(1) (repealed by Pub. L. No. 95-598, 92 Stat. 2549 (1978))). According to the debtor, the creditor "should have independently checked on the progress of the proceedings, and should have filed his claim without **[**25]** waiting for notice to do so." *Id. at 115.*

We agreed with the creditor on due process grounds, explaining that <sup>HN20</sup>"the fact that a creditor knows of the initiation of reorganization proceedings does not of itself place a burden on the creditor to file an appearance or claim in the proceeding before receiving notice to do so." *Id.* We went on to state unequivocally that "a creditor has every right to assume that he will be sent all the notices to which he is entitled under the Act." *Id. at 115.* Thus, we made clear that there are statutory procedural requirements that bear directly on the level of process due to a party in a particular situation.

A number of our sister courts of appeals have concluded, based on these due process principles, that, <sup>HN21</sup>despite any statutory prescription of finality or any knowledge that the creditor may have, a confirmed plan has no preclusive effect on issues that must be raised in an adversary proceeding, if no such proceeding has been brought.

*In re Banks,* 299 F.3d 296 (4th Cir. 2002), involved a controversial debtor tactic that has come to be known as "discharge by declaration." <sup>HN22</sup>Federal Rule of Bankruptcy Procedure 7001(6) requires an adversary proceeding in order **[**26]** to discharge student loan debt. Further, under 11 U.S.C. § 523(a)(8), student loans may not be discharged in a Chapter 13 bankruptcy unless the debtor establishes that continuing liability for the loan would cause him or her "undue hardship." In *Banks,* a Chapter 13 debtor sought to discharge a portion of his student loan debt by including a provision to that effect in his plan and did not initiate an adversary proceeding. 299 F.3d at 298-99. The plan was confirmed without objection, or even an appearance at the confirmation hearing, by the creditor, and the creditor did not appeal the confirmation order. *Id. at 299.* Further, the creditor did not dispute that it received a copy of the proposed plan, a hearing notice, and the confirmation order. *Id.* Five years after plan confirmation, the bankruptcy court issued a discharge order. *Id.* When the debtor then received a statement from the creditor that still included the student loan debt, he sought a declaration from the bankruptcy court that the confirmed plan's treatment of the disputed debt was final. *Id.* The bankruptcy court agreed with the debtor. *Id.*

The United States Court of Appeals for the Fourth Circuit, however, ruled in the creditor's **[**27]** favor, finding that the debtor's failure to initiate an adversary proceeding -- complete with the complaint, summons, and service of process required by Rules 7003 and 7004 -- overrode § 1327's finality provision. *Id. at 302-03.* The court explained: <sup>HN23</sup>"We agree a bankruptcy court confirmation order generally is afforded a preclusive effect. But we cannot defer to such an order if it would result in a denial of due process in violation of the Fifth Amendment to the United States Constitution." *Id.* at 302 (footnote omitted). In concluding that such a denial would result in the situation before it, the court held that "[w] here the Bankruptcy **[*241]** Code and Bankruptcy Rules specify the notice required prior to entry of an order, due process generally entitles a party to receive the notice specified before an order binding the party will be afforded preclusive effect." *Id., quoted with approval in Baldwin v. Credit Based Asset Servicing & Securitization,* 516 F.3d 734, 737 (8th Cir. 2008).

In *In re Ruehle,* 412 F.3d 679, 684 (6th Cir. 2005), another Chapter 13 discharge-by-

AUTH16-000015

declaration case, the United States Court of Appeals for the Sixth Circuit followed *Banks*'s lead in ruling that ^HN24^"discharging student **[\*\*28]** loan debt through a provision in a confirmed plan, and without the adversary proceeding required by Rule 7001(6), violates the creditor's due process rights. It did not matter that the creditor did not raise its due process challenge until four years after the plan's confirmation because, the court explained, "[e]very person and entity is entitled to the prescribed level of notice for the process to be due and only thereafter may the coercive power of the government be used against them." *Id.* at 682, 684-85 (internal quotation marks omitted). Because the debtor failed to commence an adversary proceeding and serve the creditor with a summons and a complaint, the discharge of the disputed debt in the plan could not be given effect. *Id.* at 684-85.

In *In re Hanson*, 397 F.3d 482 (7th Cir. 2005), the court faced a slightly different situation. There, the debtor's plan did not provide for the discharge of his student loan debt, but the discharge order erroneously approved by the bankruptcy court did. *Id.* at 483-84. As in *Banks* and *Ruehle*, Rule 7001(6) was ignored and no adversary proceeding was ever initiated. *Id.* at 485. Six years after the discharge order, the creditor filed a motion in **[\*\*29]** the bankruptcy court to void it. *Id.* at 483. The bankruptcy court granted the motion, *id.*, and the United States Court of Appeals for the Seventh Circuit agreed, concluding that student loan creditors have the due process right not "to act until the service of a summons for an adversary proceeding apprises them that their property rights may be affected," *id.* at 486-87. Invoking both *Banks* and *Mullane*, it reasoned: ^HN25^"Although we recognize the strong policy favoring finality of confirmation orders, due process entitles creditors to the heightened notice provided for by the Bankruptcy Code and Rules, and the dictates of due process trump policy arguments about finality." *Id.* at 486.

In a context that did not implicate Rule 7001, the United States Court of Appeals for the Ninth Circuit has also endorsed the notion that, where an adversary proceeding is required, the preclusive effect of a confirmation order is limited. *In re Enewally*, 368 F.3d 1165, 1173 (9th Cir. 2004). In *Enewally*, a creditor held a lien on a property owned by joint chapter 13 debtors and, even though Rule 7001 did not require it, the debtors filed an adversary complaint against the creditor, seeking to modify the lien **[\*\*30]** amount based on the value of the collateral. *Id.* at 1167-68. While the adversary proceeding was pending, the bankruptcy court confirmed the debtor's plan. *Id.* at 1168. When, in the still-pending adversary proceeding, the creditor later challenged the debtors' modification of its lien, the debtors argued that § 1327 precluded the creditor from doing so. *Id.* at 1172. The Court of Appeals for the Ninth Circuit disagreed on due process grounds and explained:

> Here, during plan confirmation and modification, the bankruptcy court specifically reserved the question at issue because it had been raised via an adversary proceeding. ^HN26^"[I]f an issue must be raised through an adversary proceeding it is not part of the confirmation process **[\*242]** and, unless it is actually litigated, confirmation will not have a preclusive effect." Thus a Chapter 13 plan confirmed while an adversary proceeding was pending" would not have *res judicata* effect on the adversary proceeding.

*Id.* at 1173 (*quoting Cen-Pen Corp.*, 58 F.3d at 93-94).

Before it could be deprived of its property interest in its lien, EMC had the constitutional right to a level of process that was "appropriate to the nature of the case." *See Mullane*, 339 U.S. at 313. **[\*\*31]** As we emphasized above, our determination regarding the process due in any particular case depends on the context. A crucial piece of the context here is the existence of a binding Federal Rule of Bankruptcy Procedure directly on point that makes clear that a lien may only be invalidated through an adversary proceeding. Just as a procedural prescription in the statute guided us in determining the process due to the creditor in *Harbor Tank Storage*, 385 F.2d at 114-15, a procedural prescription in the Rules

AUTH16-000016

guides us here. In *Harbor Tank Storage*, we found that a creditor had the due process right "to assume that he w[ould] be sent all the notices to which he [wa]s entitled under the Act" before his claim could be barred. *Id.* at 115. Similarly, we now conclude that EMC had the due process right to assume that, unless Mansaray-Ruffin commenced the adversary proceeding required by the Rules and served it with a complaint and a summons, its lien could not be invalidated. Whatever actual knowledge EMC may have had regarding the plan's treatment of its lien did not eliminate this right and neither did the provisions of § 1327.

We wish to make clear, however, that [HN27]we do not hold that the failure **[**32]** to adhere to every Rule of Bankruptcy Procedure implicates due process. Rather, we hold only that, where the Rules require an adversary proceeding -- which entails a fundamentally different, and heightened, level of procedural protections -- to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one. This conclusion fits comfortably with the precedents we have discussed from our sister circuit courts. [8]

## FOOTNOTES

[8] Our dissenting colleague criticizes our failure to provide guidance as to whether EMC delayed too long -- nine months -- after confirmation before filing its adversary proceeding. We note that, although Mansaray-Ruffin complains of this delay, she has not briefed this issue or pointed to authority to support the proposition that nine months was too long and/or should have barred EMC's claim. Moreover, *Banks*, *Hanson*, and *Ruehle* all involved inaction by creditors for much longer time periods after plan confirmation.

In arguing that the Code's policy of finality should control, Mansaray-Ruffin relies on our opinion in *In re Fesq*, 153 F.3d 113 (3d Cir. 1998). She maintains that because SLW is seeking to nullify a central part of the **[**33]** confirmed plan, it is effectively asking us to revoke the Bankruptcy Court's order of confirmation, which, according to *Fesq*, is impermissible absent fraud. *Id.* at 120. In *Fesq*, the creditor held a $ 70,000 judgment lien on the debtor's home. *Id.* at 114. The debtor's Chapter 13 bankruptcy plan provided for full satisfaction of the creditor's secured claim with a single payment of $ 7,050. The plan was confirmed without objection from the creditor. *Id.* The creditor then moved to revoke the confirmation order, blaming its failure to file an objection on a computer glitch that caused its attorney to think that the deadline for filing objections was two months later than it actually was. *Id.* at 114-15. We denied the creditor's motion because, under 11 U.S.C. § 1330(a), a confirmed Chapter 13 **[*243]** plan can only be revoked on account of fraud. *Id.* at 120. We emphasized the fact that "Congress established finality as an important goal of bankruptcy law," and we explained that our holding was consistent with that goal. *Id.* at 119-20.

*Fesq*, however, never directly confronted the issue of whether an adversary proceeding was necessary. Further, *Fesq* is distinguishable from our case in two key ways. **[**34]** First, quite simply, SLW is not seeking the revocation of the Bankruptcy Court's confirmation order. Rather, it is asking us to declare that the confirmed plan did not invalidate the lien that it now holds. Second, and even more importantly, *Fesq* did not involve a determination as to the validity of the creditor's lien or any other matter for which Rule 7001 requires an adversary proceeding. Rather, it involved the fixing of the amount of the secured claim, which, like the modification of a claim to comport with the value of the collateral in the lien-stripping cases discussed above, is not the same as lien invalidation. Thus, *Fesq* does not implicate the due process concerns that animate our decision in this case, and it does not control either our reasoning or conclusion regarding the issues before us.

**IV.**

AUTH16-000017

In light of the foregoing, we conclude that the District Court properly held that EMC's lien was not invalidated and passed through Mansaray-Ruffin's bankruptcy unaffected. Accordingly, we will AFFIRM.

**DISSENT BY:** GREENBERG ▾

**DISSENT**

GREENBERG ▾, Circuit Judge, dissenting.

I dissent because it is clear that due process was met with respect to the elimination of EMC's lien notwithstanding Mansaray-Ruffin's violation **[**35]** of the Federal Rules of Bankruptcy Procedure to obtain that relief. I have reached this conclusion even though I agree with the majority that her Chapter 13 reorganization plan included a provision dealing with EMC's mortgage adopted in violation of the Rules because she did not file an adversary proceeding to avoid EMC's lien. The basis for my conclusion is that notwithstanding the Rules violation EMC had adequate notice of the impairment of its lien and an opportunity to object to that adverse treatment and, accordingly, that it received the constitutionally required due process to which it was entitled. Therefore, once the Bankruptcy Court confirmed the plan, the confirmation order bound EMC and precluded it from obtaining relief in the post-confirmation adversary proceeding that we now consider.

It is clear that Mansaray-Ruffin's plan included a provision adopted in violation of the Bankruptcy Rules. Rule 7001(2) provides that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property" is an adversary proceeding. Fed. R. Bankr. P. 7001(2). We have determined that under Rule 7001(2) a debtor must initiate an adversary proceeding to avoid **[**36]** a lien. See In re McKay, 732 F.2d 44, 45 (3d Cir. 1984) ("[W]here a debtor seeks to avoid a judicial lien pursuant to 11 U.S.C. § 522(f), the adversary proceedings rules adopted by the Bankruptcy Code apply . . . ."). Mansaray-Ruffin did not initiate an adversary proceeding to avoid EMC's lien but, instead, provided in her plan that EMC's claim would be fixed as an unsecured $ 1,000 claim upon the plan's confirmation. Because the proceedings leading to the approval of her plan did not comply with Rule 7001, if EMC had objected unsuccessfully to the confirmation of her plan during the confirmation hearing and then appealed from the confirmation order, I have no doubt but that I would have voted to reverse the order **[*244]** confirming the plan. Thus, the proceedings at the confirmation hearing could not substitute for an adversary proceeding at which Mansaray-Ruffin could challenge the validity of the lien and I do not suggest that they could do so.

EMC, of course, did not object to confirmation of the plan or appeal from the confirmation order. Instead of taking those opportunities to protect its lien, EMC, quite inexplicably, though on adequate notice that its lien was being eliminated, sat **[**37]** idle in the face of the adoption of the plan. Though I recognize that an attorney for EMC examining the plan might have believed that the plan lawfully could not adversely affect EMC's lien, I cannot understand why the attorney then would not have taken the uncomplicated step of objecting to the plan inasmuch as 11 U.S.C. § 1327(a) provides that "the provisions of a confirmed plan bind the debtor and each creditor." After all, our experience teaches us that attorneys ordinarily are careful to protect their clients' interests and an attorney could not be certain that in the light of section 1327(a) a plan would not be given preclusive effect even with respect to the elimination of EMC's lien. ⁹ But instead of objecting, almost nine months after confirmation EMC filed the adversary proceeding leading to this appeal seeking to collaterally attack the confirmed plan. Accordingly, a situation that should not have raised any significant procedural problems instead presents the divisive issue of whether the Bankruptcy Court's confirmation order binds EMC and precludes EMC from collaterally attacking the plan, even though the plan violated the Bankruptcy Rules.

AUTH16-000018

---

**FOOTNOTES**

9 Actually, as I point out below, **[\*\*38]** it is possible that EMC was acting perfectly rationally in not objecting to the plan even though the plan eliminated its lien. See infra n.6.

---

The Bankruptcy Code provides for the binding effect of confirmed plans. Under the Code:

> (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

> (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327.

In In re Szostek, 886 F.2d 1405 (3d Cir. 1989), we determined that under section 1327 a confirmed plan binds creditors even when the plan violates the Bankruptcy Code and includes unauthorized provisions. In Szostek the debtors filed a plan that proposed payments to a secured creditor but did not propose to pay interest, **[\*\*39]** i.e., present value, on the claim. Id. at 1406. The creditor in Szostek did not timely object to the plan and did not appeal from the confirmation order. Id. at 1407-08. Instead, four months after confirmation, the creditor mounted a post-confirmation challenge to the plan, arguing that the plan violated a provision of the Code by not paying the present value of his claim. Id. at 1408. Though the creditor was correct with respect to the Code violation the bankruptcy court nevertheless found that the plan was not revocable. Id. On appeal, the district court reversed that aspect of the bankruptcy court's ruling and vacated the plan confirmation order. **[\*245]** Id. The debtors then appealed to this Court.

The issue before us was whether under section 1327 the confirmation order bound the creditor even though the debtors' plan did not provide for the present value of the creditor's claim as required by 11 U.S.C. § 1325(a)(5)(B)(ii). Id. Significantly, in considering this issue we recognized that

> the purpose of bankruptcy law and the provisions for reorganization could not be realized if the discharge of debtors were not complete and absolute; that if courts should relax provisions of the law and **[\*\*40]** facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated; that creditors would not participate in reorganization if they could not feel that the plan was final, and that it would be unjust and unfair to those who had accepted and acted upon a reorganization plan if the court were thereafter to reopen the plan and change the conditions which constituted the basis of its earlier acceptance.

Id. at 1409 (quoting In re Penn Central Transportation Co., 771 F.2d 762, 767 (3d Cir. 1985)). We further stated that "if a creditor ignores the bankruptcy proceedings, he does so at his peril." Id. at 1410 (citing In re Gregory, 705 F.2d 1118, 1123 (9th Cir. 1983)). We also

AUTH16-000019

noted the "general rule" that "the acceptance of the plan by a secured creditor can be inferred by the absence of an objection." Id. at 1413. We concluded that "once the . . . plan was confirmed, it became final under § 1327 and, absent a showing of fraud under § 1330 (a), it could not be challenged . . . for failure to pay [the creditor] the present value of its claim." Id.

In an opinion citing Szostek another court set forth its meaning perfectly:

> [The secured creditor] **[\*\*41]** was not free blithely to forego its full and fair opportunity to object to the plan's plain terms. Even if issues relating to [the debtor's] liability to [the creditor] could not be finally resolved through a plan confirmation contest, . . . [the secured creditor] ignored the plan confirmation process, and its opportunity to object to confirmation, at its peril.

In re Fili, 257 B.R. 370, 372 (1st Cir. BAP 2001).

Thus, Szostek stands for the rule that "plans that would not be confirmable due to provisions that do not conform to applicable law will nonetheless be given effect if an objection is not raised prior to entry of the confirmation order." In re Bryant, 323 B.R. 635, 639 (Bankr. E.D. Pa. 2005). This principle is tempered only by considerations of procedural due process which, of course, concern the notice given creditors of the confirmation proceedings and their opportunity to object to the terms of the plan. Under the Fifth Amendment "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The fundamental requirements of due process are notice and an opportunity to respond. Martin v. Brown, 63 F.3d 1252, 1262 (3d Cir. 1995). **[\*\*42]** In Mullane v. Central Hanover Bank & Trust Co. the Supreme Court stated that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . ." 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950).

A creditor with a secured claim has a property interest and thus is entitled to due process protection before the interest may be impaired. See Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 795-800, 103 S. Ct. 2706, 2709-12, 77 L. Ed. 2d 180 (1983); see also Jones v. Chemetron Corp., 212 F.3d 199, 209-10 (3d Cir. 2000) (holding **[\*246]** that a confirmation order does not discharge a claim when the claimant did not have notice of the proceedings). Accordingly, a debtor's plan that proposes to adversely affect a creditor's secured claim will bind the creditor only if it was given notice of the proposed adverse action and had an opportunity to be heard on the appropriateness of that action. See In re Linkous, 990 F.2d 160, 162 (4th Cir. 1993).

In this case the conclusion is inescapable that the requirements of due process were met prior to the impairment of EMC's lien notwithstanding Mansaray-Ruffin's **[\*\*43]** violation of the Bankruptcy Rules in achieving relief from the lien. She mailed notice to EMC of her plan, which stated that upon confirmation EMC's claim would be fixed as an unsecured claim of $ 1,000. After receiving this notice, EMC had multiple opportunities to be heard on the appropriateness of Mansaray-Ruffin's proposed action. For instance, after Mansaray-Ruffin filed a proof of claim on behalf of EMC that stated that EMC's claim was for $ 1,000 and was unsecured, EMC could have objected to the proof of claim and presented its position to the Bankruptcy Court at a hearing. See 11 U.S.C. § 502. EMC also could have appeared at the plan confirmation hearing and objected to the plan's treatment of its property interest. See 11 U.S.C. § 1324(a). After confirmation, if its objections had been overruled, EMC could have appealed from the confirmation order to the District Court and then, if necessary, to this Court. See 28 U.S.C. § 158. Moreover, if EMC believed that the confirmation order had been procured by fraud, it could have sought revocation of the order within 180 days after the date of the entry. [10] See 11 U.S.C. § 1330.

AUTH16-000020

**FOOTNOTES**

**10** I see no basis at all for a suggestion if it had been **[\*\*44]** made that Mansaray-Ruffin or her attorney was guilty of fraud. Quite to the contrary their conduct was completely transparent. In fact, they practically begged EMC to object to the treatment of its lien by her plan.

I realize that sometimes a person will receive a notice buried in a very large and complex document and therefore understandably may overlook the notice. It might be that in such a case a court would hold that the notice, though delivered, was inadequate. But that was not the situation here as the amended plan of which EMC had notice was less than two complete pages in length and included the following paragraph:

> 4. The Debtor planned to file a further adversary proceeding to avoid in whole or in part the secured claim allegedly arising from the first mortgage held against her residential realty by EMC Mortgage Corp. ("EMC"). However, EMC has not filed a proof of claim in this bankruptcy case. The Debtor will therefore file an unsecured proof of claim in the amount of $ 1000 on behalf of EMC, and will resort to an adversary proceeding against EMC only in the event that EMC successfully amends that claim and asserts a larger or a secured claim. The Debtor has been paying **[\*\*45]** the regular mortgage payments to EMC outside of the plan in the event that her challenge of the claim of EMC would not be entirely successful. However, upon confirmation of this plan, in which the claim of EMC will be fixed as an unsecured claim in the amount of $ 1000 unless it is able to object to this claim, the Debtor will cease making payments to EMC, and EMC will be obliged to satisfy its mortgage against the Debtor's home upon the discharge of its debt as filed or allowed.

**[\*247]** App. at 34. I have quoted the plan in full as an appendix to this opinion.

But instead of availing itself of its various opportunities to be heard on the appropriateness of the plan's proposed action with respect to its lien, EMC did not take any action until almost nine months after the Bankruptcy Court confirmed the plan when it brought the adversary complaint leading to this appeal. Significantly, EMC has not contended in these proceedings that it was not aware of the plan and the plan's treatment of its lien nor has it given any explanation for its nine-month delay in challenging the plan. In these circumstances, EMC clearly was afforded due process. Because EMC received due process before its lien was impaired, **[\*\*46]** the confirmed plan binds EMC and precludes it from succeeding in this adversary proceeding even though the proceedings leading to the impairment of its lien did not comply with the Bankruptcy Rules. The critical issue is whether the procedural Rules for adoption of a plan were satisfied and they were.

I understand that my view of this case could encourage a debtor to place what the debtor believed was an unlawful lien-avoidance provision into his or her plan in the hope that an unwary creditor would be caught off-guard and not object to prevent the plan's confirmation. After all, a debtor might believe that the creditor would not pay proper attention to the unlawful provision of the plan. On the other hand is it really too much to expect a creditor receiving a plan filed on behalf of one of its debtors to examine the plan to see whether, if confirmed, it will adversely affect its lien?

In any event the controlling consideration must be that Congress by providing for the finality of confirmation orders requires that unauthorized provisions in plans be enforced. Clearly, unless and until Congress amends section 1327 to provide that confirmed plans that include

AUTH16-000021

unlawful lien-avoidance provisions **[\*\*47]** will not be accorded preclusive effect or, alternatively, expands the basis for post-confirmation objections beyond the narrow fraud grounds in section 1330, we must continue to enforce plans with such provisions as written and why should that not be so? **11** A creditor always can protect itself from an unlawful deprivation of its lien because its property interest cannot be deprived without due process which requires notice and an opportunity to be heard and such protections are adequate to protect against the unconstitutional deprivation of property. EMC has only itself to blame for the loss of its lien.

---

**FOOTNOTES**

**11** In Gay v. Creditinform, 511 F.3d 369, 395 (3d Cir. 2007), a case in which we applied the Federal Arbitration Act as Congress wrote it and upheld a contractual provision providing for arbitration even though other courts had found arbitration provisions in similar cases before them to be unconscionable, we indicated with respect to the other cases that "their reasoning if applied logically could result in a significant narrowing of the application of the FAA." We therefore were of the view that whether or not the narrowing "might be a desirable result" it was "not our function to do **[\*\*48]** so" and that "[i]f the reach of the FAA is to be confined then Congress and not the courts should be the body to do so." Inasmuch as there was not a due process notice violation in the proceedings resulting in the confirmation of the amended plan we should take the Gay approach here and hold that if there is to be a modification of section 1327 so that a confirmed plan does not always bind "each creditor" then Congress and not the courts should made the modification.

---

I realize that the majority contends that EMC did not receive due process because Mansaray-Ruffin violated the Bankruptcy Rules by not initiating an adversary proceeding to avoid its lien. Thus, according to the majority, "EMC had the due process right to assume that, unless Mansaray-Ruffin **[\*248]** commenced the adversary proceeding required by the Rules and served it with a complaint and a summons, its lien could not be invalidated."

While I certainly respect the majority's view, I nevertheless dissent because I see no escape from a conclusion that the majority is equating the requirements of constitutional due process to the requirements of the Bankruptcy Rules; thus, it effectively is using the Rules as a proxy for due process **[\*\*49]** in this case. But this linking is unjustified as a nonconstitutionally prescribed proxy can be both over- and under-inclusive with respect to satisfying constitutional requirements. See, e.g., United States v. Smith, 522 F.3d 305, 312 (3d Cir. 2008) (stating that a police officer's impoundment of a car pursuant to standardized procedures will most likely, but not always, satisfy the Fourth Amendment's "reasonableness" requirement, and that conversely, an impoundment that is contrary to a standardized procedure or in absence of a standardized procedure is not a per se Fourth Amendment violation). Therefore there may be situations, and this case certainly is one of them, where due process has been met notwithstanding a debtor's violation of the Bankruptcy Rules.

Through the Bankruptcy Code and Rules Congress and the courts have imposed stricter procedural requirements on debtors who seek to invalidate liens than does due process of law requires. By raising these standards above the floor set by the Fifth Amendment's due process clause, Congress and the courts have recognized that the invalidation of a lien "is a matter of particularly great consequence . . . ." Thus, under the Rules, a debtor **[\*\*50]** must initiate an adversary proceeding, with all of its procedural trappings, to invalidate a lien.

But these procedures are not proxies for the constitutional due process required to invalidate a lien. From a constitutional perspective, it makes no difference whether a debtor's plan

AUTH16-000022

seeks to extinguish a creditor's lien rights or simply reduce the value of the creditor's secured claim. Just because Congress has decided to require more process than the Fifth Amendment requires to deprive a creditor of a lien does not mean that the Constitution requires that enhanced process. Instead, as I stated above, all that the Constitution requires to deprive a person of property is notice and an opportunity for a hearing. And in this case, those requirements clearly were met and the majority fairly cannot say that they were not met.

In reaching my result I have taken particular note of the majority's reference, "[b]y way of analogy," to a situation in which a plaintiff seeks to commence a civil action with a motion filed with the court and mailed to a defendant. The majority indicates that we would not permit a default judgment to be entered on the basis of that procedure. I completely agree not **[\*\*51]** because due process of law precluded entry of the judgment but rather because its entry would violate procedural rules.

In any event, the majority's hypothetical situation is not in any way analogous to that here. Mansaray-Ruffin seeks merely to uphold a confirmed plan and there is not the slightest suggestion in the record that the Code's procedural notice requirements for the confirmation of her plan were not satisfied. Nothing could be clearer than the Code's provision that the "confirmed plan bind[s] the debtor and each creditor." Section 1327(a). A proper analogy to the majority's hypothetical situation would be if Mansaray-Ruffin had been seeking to enforce an order from a procedurally defective adversary proceeding but she surely is doing no such thing as she never brought an adversary proceeding to avoid the lien. I reiterate she is seeking to **[\*249]** enforce an order of confirmation. My point is not complex and is that we are not concerned with the due process aspect of the nonexistent adversary proceeding; rather we are concerned with the proceedings leading to confirmation of the plan.

Our case law compels a conclusion that due process was met in this case. In In re Fesq, the debtor **[\*\*52]** filed a Chapter 13 plan that provided for a single lump sum payment of $ 7,050 in full satisfaction of a $ 69,166.59 judgment that was a lien on the debtor's house. 153 F.3d 113, 114 (3d Cir. 1998). The creditor did not file an objection to the plan and the bankruptcy court confirmed it. Id. The debtor then filed a motion to vacate the creditor's lien, and the creditor filed a cross-motion to vacate the confirmation order. Id. The bankruptcy court granted the debtor's motion and denied the creditor's motion. Id. at 115. The creditor appealed from the order denying its motion to vacate and the district court affirmed. Id. On appeal, in affirming we based our decision on the language of section 1330(a), which states that "[o]n request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation . . ., and after notice and a hearing, the court may revoke such order if such order was procured by fraud." We noted Szostek's recognition that finality is an important goal of bankruptcy law and stated that "[r]evoking a confirmation order is a measure that upsets the legitimate expectations of both debtors and creditors. Interpreting Section 1330(a) **[\*\*53]** as a limiting provision permits such disruption in only a very narrow category of egregious cases." Fesq, 153 F.3d at 120 (footnote omitted). Accordingly, we held that "fraud is the only ground for relief available for revocation of a Chapter 13 confirmation order." Id. Because the creditor in Fesq did not assert that the confirmation order was procured by fraud, we affirmed the judgment that granted the debtor's motion to vacate the lien and denied the creditor's motion to revoke the confirmation order. Id.

The majority contends that this case is distinguishable from Fesq because " Fesq did not involve a determination as to the validity of the creditor's lien or any other matter for which Rule 7001 requires an adversary proceeding" and thus " Fesq does not implicate the due process concerns that animate our decision in this case . . . ." But the majority's conclusion cannot be correct: in Fesq we affirmed a ruling which both denied the creditor's motion to revoke the confirmation order and granted the debtor's motion to invalidate the creditor's lien. Fesq, 153 F.3d at 114-15. Thus, the result in that case is identical to the one that we should reach in this case. The same due process **[\*\*54]** concerns were present in Fesq as here and yet we found there that the debtor's plan bound the creditor.

AUTH16-000023

Moreover, even if the majority is correct that Fesq did not involve the invalidation of a lien but instead involved only the modification of the amount of a secured claim, this distinction is immaterial in a due process inquiry. In either situation, a debtor's plan adversely affects a creditor's property interest, the distinction being only of degree. I ask what, under the majority's proposed distinction, would be the proper result if Mansaray-Ruffin had stated in her plan that she valued EMC's secured claim at $ 1? Apparently the majority would find that Mansaray-Ruffin's confirmed plan bound EMC and that the lien would be satisfied upon payment of the $ 1. After all, in such a situation, Mansaray-Ruffin would not be providing in her plan that the lien would be avoided upon confirmation. And yet, the ultimate outcome in both the hypothetical scenario and this case would be the same: in both situations, **[*250]** EMC effectively would lose its lien in exchange for a fraction of its claim amount. I cannot understand how the majority can acknowledge that due process is satisfied in the hypothetical **[**55]** situation but not this case, when the procedures and outcome in both situations are identical. [12]

**FOOTNOTES**

[12] The majority does not dispute my understanding of its opinion and apparently would have permitted Mansaray-Ruffin to substantially dilute the lien by fixing its amount at one dollar in her plan. One need not be a prophet to foresee that hereafter in this Circuit debtors in bankruptcy proceedings seeking to invalidate liens in some cases effectively will eliminate them without filing adversary proceedings simply by reducing their value in their plans to a nominal amount in the hope that somnolent creditors such as EMC will not object to the reduction.

The majority also contends that Fesq is distinguishable because "quite simply, [the creditor] is not seeking the revocation of the Bankruptcy Court's confirmation order. Rather, it is asking us to declare that the confirmed plan did not invalidate the lien that it now holds." I disagree with the majority's assessment of this case. Although styled as an adversary proceeding to determine the status of the lien, EMC's case most certainly seeks to revoke the Bankruptcy Court's confirmation order to the extent that the order confirmed that Mansaray-Ruffin's **[**56]** plan avoided the lien. The majority's action, stepping in after the confirmation and finding that the lien survived the Bankruptcy Court's order, clearly annuls the order with respect to the lien. Thus, this case is not distinguishable from Fesq on that basis.

Furthermore, the majority's view will open the door to many post-confirmation challenges that attempt to undermine the provisions of confirmed plans without explicitly seeking "revocation" of those plans, a result that is not desirable because it will work against the important interest in finality that we recognized in Szostek. I ask what time constraints under the majority's ruling will limit a creditor from bringing such a post-confirmation challenge? EMC waited almost nine months after confirmation before it got around to bringing the adversary complaint in this case. How long could EMC have delayed before the majority would have concluded that it was too late for it to bring this adversary proceeding? The majority provides no guidance on this aspect of its decision. [13]

**FOOTNOTES**

[13] The majority indicates that notwithstanding my concern regarding its "failure to provide guidance as to whether EMC delayed too long -- nine months -- after **[**57]** confirmation before filing its adversary proceeding," Mansaray-Ruffin, though complaining of the delay, "has not briefed this issue or pointed to authority to support the proposition that nine months was too long and/or should have barred EMC's claim." I

AUTH16-000024

disagree with the majority because clearly Mansaray-Ruffin's briefs recite:

> EMC took no action of any kind in the case until the filing of a complaint in the Bankruptcy Court (Adversary Case No. 03-1297) on December 19, 2003. The Complaint did not seek to revoke the order confirming the Plan . . . . Indeed, it could not do so because (1) it was presently well past the 180-day time-period for seeking to revoke confirmation of a plan, even though EMC was informed of the presence and content of the confirmation order well within that time-period; and (2) [EMC] did not and could not allege the requisite fraud in procuring this order.

Appellant's Br. at 7-8 (citations omitted).

> . . . .

> From the time that she sent the letter of February 27, 2002, to EMC indicating that she rescinded the loan at issue until December 19, 2003, when the Proceeding at issue was filed, EMC failed to respond to any of the Debtor's statements that she considered the **[\*\*58]** loan to be rescinded and the mortgage loan securing it invalid. . . . The Proceeding at issue, [was] filed almost nine months after confirmation and after the contents of the Plan had been reiterated twice in letters to EMC over six months before . . . .

Id. at 13-14.

> . . . .

> The Appellee . . . cannot dispute that . . . it did not object to the confirmed plan, which was sent to it and set forth very precisely the exact treatment of the underlying claim in the plan; and that it received correspondence thereafter again describing its plan treatment which it did not in any way contest until it filed the proceeding at issue almost nine months after confirmation.

Appellant's Rep. Br. at 1.

Clearly Mansaray-Ruffin has briefed the delay argument and supported it with authority as her 180-day reference was to 11 U.S.C. § 1330 dealing with the period of revocation of a confirmation order for fraud. Obviously, the nine-month delay was very important for, as I point out above, EMC in effect was seeking to revoke the confirmation order to the extent that the order confirmed that Mansaray-Ruffin's plan avoided the lien. Thus, at the time that EMC brought these adversary proceedings its complaint could **[\*\*59]** not have been amended to be a de jure action to revoke confirmation of the amended plan and EMC was attempting to do indirectly what it could no longer do directly.

**[\*251]** The majority relies on In re McKay, 732 F.2d 44, for the proposition that Mansaray-Ruffin's plan does not bind EMC because she did not initiate a separate adversary proceeding to challenge EMC's lien. In this regard in In re McKay we reversed a bankruptcy court's orders confirming the debtors' plans that included provisions avoiding liens against them because the debtors had not initiated adversary proceedings to avoid the liens. Id. at 48.

But McKay is distinguishable from this case and is no support at all for the majority's result and in no way is inconsistent with this dissent. In McKay, the creditor objected to the

AUTH16-000025

treatment of its liens and timely appealed the orders confirming the debtors' plans, precisely what EMC did not do. Therefore, the preclusive effect afforded confirmed plans under 11 U.S.C. § 1327 did not apply and the interest in finality that we articulated in Szostek was absent. In this case, by contrast, EMC did not object or appeal from the confirmation order. Thus, section 1327 applies to bind EMC and **[**60]** the need for finality -- i.e., the need to protect the integrity of a confirmed plan against post-confirmation challenges -- outweighs any reason to permit EMC to raise a post-confirmation collateral attack on Mansaray- Ruffin's plan.

In sum, I conclude that because due process requirements were met, Mansaray-Ruffin's confirmed plan binds EMC even though the plan included a provision adopted in violation of the Bankruptcy Rules. My approach to the due process issue in this case gives proper effect to section 1327, promotes the important goal of finality of bankruptcy confirmation orders, and encourages creditors to be active participants in the bankruptcy process. Moreover, it is faithful to the reasoning in In re Szostek that we set forth almost 19 years ago that "although prior to confirmation the bankruptcy court and trustee do have a responsibility to verify that a Chapter 13 plan complies with the Bankruptcy Code provisions, after the plan is confirmed the policy favoring the finality of confirmation is stronger than the bankruptcy court's and trustee's obligations to verify a plan's compliance with the Code." 886 F.2d at 1406. For the foregoing reasons, I would reverse the District **[**61]** Court's order affirming the Bankruptcy Court's decision finding that EMC's lien survived the bankruptcy process. [14]

## FOOTNOTES

[14] I make one more point with respect to this particular adversary proceeding and Mansaray-Ruffin's bankruptcy proceedings in general. As of now EMC's lien remains valid but because it did not object to the provision of her amended plan providing for the satisfaction of its lien until it brought these proceedings Mansaray-Ruffin previously had no reason to seek to rescind or otherwise avoid the lien in whole or in part as she had indicated that she contemplated doing in her original plan. It is beyond the scope of this case before us to decide whether she might now be able to bring the adversary proceeding she originally anticipated bringing but if fairness means anything she should have the opportunity to do so as EMC by its conduct in not objecting to the amended plan led her to believe that it acquiesced in the elimination of its lien. Indeed, even though I think that it is likely that EMC merely was negligent in not challenging the amended plan it is conceivable that to avoid the challenge that Mansaray-Ruffin originally contemplated bringing to avoid its lien, when **[**62]** EMC saw in the amended plan that Mansaray-Ruffin would bring her adversary proceeding only if EMC amended the $ 1000 claim she would file on its behalf and did not assert a "larger or a secured claim" it brilliantly did not object to the treatment of its lien in the amended plan and instead bided its time in contemplation of bringing these proceedings. I point out in this regard this scenario is not farfetched as according to the amended plan Mansaray-Ruffin did prosecute an adversary proceeding against another creditor in which she successfully avoided the creditor's claim. Thus, EMC could not laugh off Mansaray-Ruffin's threat to bring an adversary proceeding to avoid its lien on the basis of the Truth in Lending Act, 15 U.S.C. §§ 1601 to 1667f, preferring instead to litigate the Truth in Lending Act issue, if necessary, in a state court foreclosure action.

**[*252]** Appendix

AMENDED CHAPTER 13 PLAN OF THE DEBTOR

1. If the Debtor's estate were liquidated under Chapter 7 of the Bankruptcy Code, unsecured creditors would not receive any payments. Those creditors will not receive less under the

AUTH16-000026

terms of this plan.

2. The Debtor shall submit to the supervision and control of the Trustee payments  **[\*\*63]** in the amount of $ 10 monthly for the first 10 months of the plan, through July, 2003, and thereafter $ 50 monthly for the final 26 months of the plan.

3. The Debtor has prosecuted an adversary proceeding which avoided the totally undersecured claim of A FBA-IB Bankcard Center.

4. The Debtor planned to file a further adversary proceeding to avoid in whole or in part the secured claim allegedly arising from the first mortgage held against her residential realty by EMC Mortgage Corp. ("EMC"). However, EMC has not filed a proof of claim in this bankruptcy case. The Debtor will therefore file an unsecured proof of claim in the amount of $ 1000 on behalf of EMC, and will resort to an adversary proceeding against EMC only in the event that EMC successfully amends that claim and asserts a larger or a secured claim. The Debtor has been paying the regular mortgage payments to EMC outside of the plan in the event that her challenge of the claim of EMC would not be entirely successful. However, upon confirmation of this plan, in which the claim of EMC will be fixed as an unsecured claim in the amount of $ 1000 unless it is able to object to this claim, the Debtor will cease making payments to EMC, **[\*\*64]** and EMC will be obliged to satisfy its mortgage against the Debtor's home upon the discharge of its debt as filed or allowed.

5. The Debtor will avoid any judicial lien held against her residential realty by Sherran Gray.

6. The Debtor shall make arrangements to pay the various claims of the City of Philadelphia ("the City") directly to the City outside the plan.

7. The claims of the Debtor's creditors are classified in this Plan as follows:

    A. Class One: Administrative claims. These claims include any unpaid attorney's fees and the Trustee's fees.

    B. Class Two: The claim of EMC. This claim shall be dealt with as described in paragraph 4 of the plan and treated as an unsecured claim.

    **[\*253]**  C. Class Three: The claim of AFBA. As noted in paragraph 3, this claim will be treated as an unsecured claim, because it is entirely undersecured and any security interest of this claimant has been avoided.

    D. Class Four: The secured claim of Sherran Gray. As noted in paragraph 5, this claim will not be paid, because it either has been or can be avoided.

    E. Class Five: The secured claims of the City & School District of Philadelphia ("the City") for real estate taxes, water and sewer, and a statutory municipal **[\*\*65]** lien. The Debtor shall make an agreement with the City outside of the plan to liquidate these claims.

    (F). Class Six: All other unsecured claims against the Debtor, in addition to the Class Two and Class Three claims, which are timely filed or ultimately allowed.

7. [15] The payments received by the Trustee from the Debtor shall be distributed first to allowed Class One claimants until they are paid in full; secondly, to any arrearages allowed to the Class Two claimant, and thirdly to Class Six claimants pro rata.

AUTH16-000027

8. Title of the property of the estate shall revest in the Debtor upon confirmation of the Plan, and the Debtor shall have the sole right to the use and possession of same.

9. Upon application, the Debtor may alter the amount and timing of payments under this plan.

10. The automatic stay shall remain in full force and effect until this case is closed.

11. Upon completion of this or any other duty confirmed plan, as amended, all claims of all creditors listed except the Class Five claims, including the Class Two, Three, and Four claims, shall be discharged, and any liens which those claimants have or had shall be void and shall be so marked on any court records.

---

**FOOTNOTES**

**15** In her plan Mansaray-Ruffin **[\*\*66]** erroneously numbered two consecutive paragraphs "7."

---

Service: **Get by LEXSEE®**
Citation: **530 F.3d 230**
View: Full
Date/Time: Monday, November 2, 2009 - 11:43 AM EST

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector

History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help

 **LexisNexis®**  About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

AUTH16-000028

LexisNexis® *Total Research System*          Switch Client ¦ Preferences ¦ Sign Out ¦ [?] Help

Search  Research Tasks  Get a Document  Shepard's®  Alerts  Total Litigator  Transactional Advisor  Cour

FOCUS™ Terms [                    ] Search Within [Original Results (1 - 1)    ] [v] [Go →]
Advanced...

Service: **Get by LEXSEE®**
Citation: **207 B.R. 899**

*207 B.R. 899, \*; 1997 Bankr. LEXIS 533, \*\*;*
*37 Collier Bankr. Cas. 2d (MB) 1610; 97 Cal. Daily Op. Service 3482*

In re: SPAULDING COMPOSITES COMPANY, INC., a New Hampshire Corporation, Debtor.
LIBERTY MUTUAL INSURANCE COMPANY, Appellant, v. OFFICIAL UNSECURED CREDITORS'
COMMITTEE OF SPAULDING COMPOSITES CO.; UNITED STATES TRUSTEE; Appellees.

BAP No. CC-94-2174-RuMeJ

UNITED STATES BANKRUPTCY APPELLATE PANEL OF THE NINTH CIRCUIT

207 B.R. 899; 1997 Bankr. LEXIS 533; 37 Collier Bankr. Cas. 2d (MB) 1610; 97 Cal. Daily
Op. Service 3482; 97 Daily Journal DAR 8534

October 23, 1996, Argued and submitted at Pasadena, California
February 26, 1997, Filed

**PRIOR HISTORY:** [\*\*1] Appeal from the United States Bankruptcy Court for the Central
District of California. Bk. No. LA 93-16711 CA, Adv. No. LA 94-02784 CA. Hon. Calvin K.
Ashland, Chief Bankruptcy Judge, Presiding.

**DISPOSITION:** Reversed.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendant insurer appealed from the order of the United
States Bankruptcy Court for the Central District of California, which enjoined the insurer
from pursuing a state court declaratory judgment action against third parties with an
interest in policies in which the Chapter 11 debtor also had an interest. The bankruptcy
court held that the state court action violated the automatic stay of 11 U.S.C.S. § 362 and
was void.

**OVERVIEW:** Plaintiff creditors' committee brought an adversary proceeding against the
insurer to void its state court action over insurance policy coverage for environmental
claims. The insurer had sought declaratory judgment against insured shareholders of the
debtor but had not named the debtor as a party, although the debtor had an interest in
some of the policies. On appeal, the court held that the creditors' committee had standing
because the debtor consented to its action as allowed by Fed. R. Civ. P. 17(a), and the
bankruptcy court ratified the action. The court found that the matter was not moot
because its outcome affected the insurer's first-filed status in other litigation, attorney fees
in pending bankruptcy litigation, and was independent of plan implementation. However,
the preliminary injunction had expired and was a moot issue. The court held that the mere
fact that the debtor had an interest in the policies did not make the policies property of the
estate. The court held that because the litigation did not include the debtor as a party and
did not expose the estate to additional liability or seek control of estate property, it was
not subject to the automatic stay.

AUTH17-000001

**OUTCOME:** The court held that a preliminary injunction had expired by its own terms and was moot. The court held that the insurer's state court lawsuit against insureds, other than the debtor, was not subject to the automatic stay and reversed the partial summary judgment of the bankruptcy court that declared the state court lawsuit to be void.

**CORE TERMS:** automatic stay, insurer, unsecured creditors', preliminary injunction, insured, lawsuit, bankruptcy estate, environmental, insurance policies, debtor-in-possession's, declaratory, void, moot, insurance coverage, estate property, exercise control, derivative, non-debtor, naming, settlement, hear, filed suit, liability policies, real party in interest, interpleader actions, injunction, pollution, notice, surety, summary judgment

### LEXISNEXIS® HEADNOTES                                                ⊟ **Hide**

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Appeals
Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > De Novo Review
Civil Procedure > Appeals > Standards of Review > De Novo Review
*HN1* The question of standing to assert a violation of the automatic stay is a legal issue subject to de novo review. More Like This Headnote | *Shepardize:* Restrict By Headnote

Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > De Novo Review
Civil Procedure > Appeals > Standards of Review > De Novo Review
Constitutional Law > The Judiciary > Case or Controversy > Mootness > General Overview
*HN2* Mootness is a jurisdictional issue which the court reviews de novo. More Like This Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Appeals
Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > De Novo Review
Civil Procedure > Appeals > Standards of Review > De Novo Review
*HN3* The scope of the automatic stay is a legal issue subject to de novo review. More Like This Headnote | *Shepardize:* Restrict By Headnote

Bankruptcy Law > Practice & Proceedings > Contested Matters
Civil Procedure > Justiciability > Standing > General Overview
Constitutional Law > The Judiciary > Case or Controversy > Standing > General Overview
*HN4* In appropriate situations the bankruptcy court may allow a party other than the trustee or debtor-in-possession to pursue the estate's litigation. More Like This Headnote | *Shepardize:* Restrict By Headnote

Bankruptcy Law > Practice & Proceedings > Contested Matters
Civil Procedure > Justiciability > Standing > General Overview
Civil Procedure > Parties > Real Parties in Interest > General Overview
*HN5* A creditor dissatisfied with the lack of action on the part of the debtor-in-possession may petition the court to compel the debtor-in-possession to act or gain court permission to institute the action itself. However, the creditor must receive court approval before instituting the proceeding and the action must be brought in the name of the bankruptcy estate as the real party in interest. More Like This Headnote | *Shepardize:* Restrict By Headnote

AUTH17-000002

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > Commencement
   Bankruptcy Law > Practice & Proceedings > Contested Matters
   Civil Procedure > Parties > Real Parties in Interest > General Overview

**HN6** Fed. R. Civ. P. 17(a), applicable in adversary proceedings by virtue of Fed. R. Bankr. P. 7017, states that no action shall be dismissed on the grounds that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed for ratification by the real party in interest.  More Like This Headnote

   Bankruptcy Law > Committees
   Bankruptcy Law > Practice & Proceedings > Contested Matters
   Civil Procedure > Parties > Capacity of Parties > General Overview

**HN7** A debtor-in-possession may stipulate to representation by an unsecured creditors' committee.  More Like This Headnote | *Shepardize:* Restrict By Headnote

   Bankruptcy Law > Claims > Allowance
   Bankruptcy Law > Committees > General Overview
   Bankruptcy Law > Practice & Proceedings > Contested Matters

**HN8** The debtor-in-possession (DIP) has an obligation to pursue all actions that are in the best interests of creditors and the estate. An unsecured creditors' committee has a close identity of interests with the DIP in this regard. Allowing the DIP to coordinate litigation responsibilities with an unsecured creditors' committee can be an effective method for the DIP to manage the estate and fulfill its duties. So long as the bankruptcy court exercises its judicial oversight and verifies that the litigation is indeed necessary and beneficial, allowing a creditors' committee to represent the estate presents no undue concerns.  More Like This Headnote | *Shepardize:* Restrict By Headnote

   Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview
   Civil Procedure > Venue > Multiparty Litigation
   Governments > Courts > Judicial Comity

**HN9** The "first-to-file" rule is an aspect of the doctrine of comity. It holds that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and the other court should abstain.  More Like This Headnote

   Bankruptcy Law > Committees > General Overview
   Bankruptcy Law > Practice & Proceedings > Contested Matters
   Bankruptcy Law > Reorganizations > Debtors in Possession > General Overview

**HN10** A creditor must seek the court's consent to represent the estate. It is judicial intervention that is crucial. While the better practice is for the plaintiff to secure approval before filing the complaint, the court will not foreclose the ability of a bankruptcy court to make its approval of the representation retroactive to the time of the filing. To hold otherwise would generate needless dismissals and re-filings.  More Like This Headnote | *Shepardize:* Restrict By Headnote

   Bankruptcy Law > Case Administration > Administrative Powers > Stays > Appeals
   Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > General Overview
   Constitutional Law > The Judiciary > Case or Controversy > Mootness > General Overview

**HN11** An appeal as moot if a party opposing a reorganization plan has failed to obtain a stay pending appeal, and the plan has been carried out to substantial culmination. However, failure to obtain a stay is not fatal in every case. It is not always impossible to grant relief simply because the plan has been consummated

AUTH17-000003

nor is it always impossible to undo a plan. Rather, the decision turns on what is practical and equitable. An appeal is not moot if a bankruptcy court can fashion effective relief on remand.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Justiciability > Mootness > General Overview
Civil Procedure > Venue > General Overview
Constitutional Law > The Judiciary > Case or Controversy > Mootness > General Overview
*HN12* A bankruptcy court order that voids a party's first-to-file status impinges upon a potentially cognizable interest.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Appeals
Bankruptcy Law > Case Administration > Administrative Powers > Stays > Remedies > Damages
Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Subordination
*HN13* If claims for attorneys' fees and for subordination of unsecured will stand or fall depending upon an appellate decision, the outcome of the appeal will have a very real effect on the proceedings below.  More Like This Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > General Overview
*HN14* See 11 U.S.C.S. § 362(a)(3). *Shepardize:* Restrict By Headnote

Bankruptcy Law > Estate Property > Contractual Rights
*HN15* A debtor's insurance policies are property of the estate.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Bankruptcy Law > Estate Property > Content
Bankruptcy Law > Estate Property > Contractual Rights
Insurance Law > Business Insurance > Directors & Officers Liability Insurance > General Overview
*HN16* On one extreme, when a debtor corporation owns a liability policy that exclusively covers its directors and officers, the proceeds of that policy are not part of the debtor's bankruptcy estate. On the other extreme, when a debtor corporation owns an insurance policy that covers its own liability vis-a-vis third parties, both the policy and the proceeds of that policy are property of the debtor's bankruptcy estate.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Bankruptcy Law > Estate Property > Content
*HN17* A debtor's interest in a portion of property does not subject the entire property to 11 U.S.C.S. § 541. A debtor's claim to property does not mean that the entire property is a part of the bankruptcy estate.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Coverage > Estate Property
Bankruptcy Law > Case Administration > Examinations of Debtors
Bankruptcy Law > Estate Property > Content
*HN18* For an action to fall within the automatic stay, the litigant must have also attempted to "exercise control" over the estate's property. There is a three part test to determine whether a creditor violates 11 U.S.C.S. § 362(a)(3). First, the court examines whether the debtor has a property right at state law. Second, the court asks whether that right is property of the estate. Third, the court determines if the property is altered in a manner contrary to the relevant provisions of 11 U.S.C.S. § 362(a).  More Like This Headnote | *Shepardize:* Restrict By Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > General Overview

AUTH17-000004

Bankruptcy Law > Estate Property > Contractual Rights 🖱
  Civil Procedure > Parties > Interpleaders > General Overview 🖱
*HN19*⚡The right to pursue an interpleader action is not affected by the fact that one of
    the claimants has filed a petition in bankruptcy. A fortiori, if an interpleader
    action that names the debtor falls outside of the stay, a suit that leaves the
    debtor out of the suit altogether also falls outside the automatic
    stay. More Like This Headnote | *Shepardize:* Restrict By Headnote

    Civil Procedure > Summary Judgment > Hearings > General Overview 🖱
    Civil Procedure > Judgments > Entry of Judgments > Stays of Proceedings > Automatic Stays 🖱
    Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions 🖱
*HN20*⚡The expiration of a preliminary injunction order by its own terms renders a
    challenge to it moot. More Like This Headnote

**COUNSEL:** Thomas W. Dressler, Esq., DRESSLER, REIN & RAYLE, Los Angeles, CA, Attorney
for Liberty Mutual Insurance Co., Appellant(s).

Dolores Yarmoff-Nelson, Esq., Westlake Village, CA, Attorney for Official Committee of
Unsecured Creditors, Appellee(s). Peter J. Herzberg, Esq., PITNEY, HARDIN, KIPP & SZUCH,
Morristown, NJ, Attorney for Caldwell Trucking Company Superfund PRP, Appellee(s).

**JUDGES:** Before: RUSSELL [1], MEYERS, and JONES, Bankruptcy Judges

[1] The Honorable David E. Russell, Chief Judge of the Eastern District Bankruptcy Court of
California, sitting by designation.

**OPINION BY:** DAVID E. RUSSELL

  **OPINION**

  **[*901] OPINION**

DAVID E. RUSSELL, Bankruptcy Judge:

**OVERVIEW**

The debtor filed a chapter 11 petition seeking protection from creditors alleging the debtor's
liability for pollution remediation costs. After the filing, the debtor's insurer filed suit in state
court to obtain a declaratory judgment of its liability to the debtor's corporate shareholders
under **[**2]** insurance policies issued to both the debtor and these corporate affiliates. The
unsecured creditors' committee then commenced an adversary proceeding claiming the
insurer's state court action violated the automatic stay. The bankruptcy court issued a
preliminary injunction prohibiting the insurer from further prosecuting the suit and later
granted partial summary judgment in favor of the committee declaring the insurer's action
void. The insurer appeals from the injunction and the judgment.

**FACTUAL BACKGROUND**

On February 26, 1993, Spaulding Composites Company, Inc. ▼, ("Spaulding"), an industrial
manufacturer, filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the
Central District of California. [2] Prior to the filing, Spaulding operated facilities in Clifton, New

AUTH17-000005

Jersey and Tonawanda, New York. Spaulding allegedly generated hazardous wastes at these two facilities and both the New York Department of Environmental Conservation and the Environmental Protection Agency filed claims with the bankruptcy court seeking compensation for pollution remediation costs. In addition, an unincorporated association of potentially responsible parties, known as the Caldwell **[**3]** Trucking Superfund Site PRP Group (the "PRPs"), filed a third environmental claim against Spaulding (the "Caldwell Site" claim).

---

**FOOTNOTES**

2 Unless otherwise indicated, all references to "chapters", "sections", and "§" are to the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq.

---

At its New Jersey facility, Spaulding contracted with Caldwell Trucking Company to remove hazardous waste, and Caldwell Trucking Company dumped the waste at the Caldwell Site. The PRPs are other companies who also contracted with Caldwell Trucking Company for waste disposal and now face joint and several liability with Spaulding for the costs of cleaning up the pollution at the Caldwell Site. They allege Spaulding is jointly liable for past and future cleanup expenses and seek contribution under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675.

From 1977 to 1994, Appellant, Liberty Mutual Insurance Company ("Liberty"), issued at least twenty-five comprehensive general liability **[**4]** policies to Spaulding and Spaulding's corporate shareholders, Nortek, Inc. ("Nortek"), and Monogram Industries, Inc. ("Monogram"). Liberty is potentially liable to its insureds for any environmental claims falling within the scope of the insurance coverage. Liberty issued ten of these policies directly to Monogram and eight directly to Nortek. Spaulding is named as an additional insured on thirteen of these policies. Liberty issued the remaining seven policies directly to Spaulding.

On May 17, 1994, Liberty filed suit against Nortek and Monogram in the Supreme Court of the State of New York seeking declaratory **[*902]** relief to establish its liability under the insurance policies. The action named only Nortek and Monogram, and sought only a determination of Liberty's liability to Nortek and Monogram. However, many of the policies at issue either included Spaulding as an additional insured or named Spaulding as the sole insured. The complaint alleged that Nortek put Liberty on notice of potential claims on February 10, 1994, and that the notice triggered Liberty's concern and consequent lawsuit. Nortek and Monogram later removed the case to the United States District Court for the Western **[**5]** District of New York (the "New York" action).

On June 24, 1994, the Official Unsecured Creditors' Committee Of Spaulding Composites Company, Inc. (the "Committee") filed an adversary complaint on behalf of the estate against Liberty. Spaulding did not join the suit, but later filed a stipulation authorizing the Committee's representation of the estate. The adversary complaint sought a declaration that Liberty's New York action was void as a violation of the automatic stay. In addition it sought attorneys' fees and subordination of Liberty's unsecured claims for unpaid policy premiums. Shortly after filing the complaint, the Committee filed a motion seeking a preliminary injunction to enjoin any further prosecution of Liberty's New York suit until the court determined its propriety. Liberty Mutual responded with a motion to dismiss the complaint. At a hearing on August 1, 1994, the bankruptcy court issued a preliminary injunction which was to last until August 29, 1994 (the date originally scheduled to hear Liberty's motion to dismiss). This hearing was subsequently continued to September 14, 1994, and the preliminary injunction order was not actually signed and filed until September **[**6]** 6, 1994.

AUTH17-000006

On August 8, 1994, the Committee filed a motion for partial summary judgment. At the hearing on September 14, 1994, the bankruptcy court denied Liberty's motion to dismiss and granted partial summary judgment declaring the New York lawsuit void as a violation of the automatic stay. Liberty timely appealed. ³

**FOOTNOTES**

₃ The parties have continued to pursue the environmental litigation. On July 25, 1994, the PRPs filed a complaint against Spaulding and its insurers in the United States District Court for the District of New Jersey. The complaint asked for a declaratory judgment of Spaulding's liability for the Caldwell Site cleanup and brought direct claims against the insurers, asserting authorization under both a settlement agreement with Spaulding and the New Jersey Spill Act. Spaulding cross-claimed against the insurers for defense and indemnification.

On July 17, 1995 the District Court of New Jersey dismissed the PRPs' direct claims against the insurers. The court also dismissed, without prejudice, Spaulding's cross-claims against the insurers because of policy prohibitions against joining the insurers in the same action where the insured's liability would be determined. However, the court expressly held that Spaulding was entitled to bring a separate action against the insurers, and, the next day, Spaulding filed suit in New Jersey Superior Court naming all of its insurers.

On August 22, 1995, Liberty filed a new declaratory action in New York state court, naming Nortek, Monogram, and Spaulding. It also filed a motion in the New Jersey Superior Court seeking to dismiss Spaulding's suit on the grounds of *forum non conveniens*. On January 5, 1996, the New Jersey Superior Court denied Liberty's motion.

On April 22, 1996, the District Court of New Jersey granted the PRPs' motion for summary judgment declaring Spaulding liable under CERCLA for response costs at the Caldwell Site.

On September 6, 1996, the New York state court dismissed Liberty's suit, deferring to the suit in the New Jersey Superior Court.

### [**7] ISSUES

Did the Committee have standing, on behalf of the estate, to pursue an adversary complaint against Liberty for violation of the automatic stay?

Is the appeal moot?

Did Liberty violate the automatic stay in the Spaulding case when it filed a lawsuit in state court against Nortek and Monogram?

### STANDARDS OF REVIEW

*HN1* The question of standing to assert a violation of the automatic stay is a legal issue subject to de novo review. In re Pecan Groves of Arizona, 951 F.2d 242, 244 (9th Cir. 1991); In re Advanced Ribbons and Office Products, Inc., 125 B.R. 259, 262 (9th Cir. BAP 1991). *HN2* Mootness is a jurisdictional issue which the court also reviews de novo. In re Arnold & Baker Farms, 85 F.3d 1415, 1419 [*903] (9th Cir. 1996), cert. denied, 136 L. Ed. 2d 607, 117 S. Ct. 681 (1997); In re Baker & Drake Inc., 35 F.3d 1348, 1351 (9th Cir. 1994). *HN3* The scope of the automatic stay is a legal issue subject to de novo review. In re Del Mission

AUTH17-000007

Ltd., 98 F.3d 1147, 1150 (9th Cir. 1996); In re Bibo, Inc., 200 B.R. 348, 350 (9th Cir. BAP 1996).

**DISCUSSION**

**A. STANDING**

As a threshold matter, Liberty challenges the Committee's standing to prosecute violations **[**8]** of Spaulding's automatic stay. Liberty contends that a cause of action premised on § 362 may be maintained only by the trustee or debtor-in-possession, citing to In re Pecan Groves, 951 F.2d 242, 245 (9th Cir. 1991), and In re Brooks, 79 B.R. 479, 481 (9th Cir. BAP 1987), aff'd on other grounds, 871 F.2d 89 (9th Cir. 1989). See also Matter of Pointer, 952 F.2d 82, 87 (5th Cir. 1992)(creditor lacks standing to use § 549 to avoid lien obtained in violation of § 362(a)); Matter of Vitreous Steel Products, 911 F.2d 1223, 1231 (7th Cir. 1990)(unsecured creditor has no standing to challenge, in its own name, an order granting relief from stay); In re American Ready Mix, Inc., 14 F.3d 1497, 1501 (10th Cir. 1994)(unsecured creditor has no standing to appeal an order of the bankruptcy court lifting the automatic stay). Whether a creditor has direct standing under § 362 poses an interesting question [4], but we need not address the issue in this case. The Committee filed suit, not in its own right, but on behalf of the estate. Consequently, it asserts derivative standing. Derivative standing poses distinct considerations.

---

**FOOTNOTES**

[4] The Ninth Circuit, in a decision subsequent to Pecan Groves and Brooks, held that actions taken in violation of the stay are void, not merely voidable. In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992). It would seem that invocation of one of the avoidance powers (powers vested in the trustee) is no longer required to undo a transfer in violation of the stay. In other words, § 362 by itself arguably gives a creditor direct standing.

In a similar vein, the case at bar was filed under chapter 11 (as opposed to chapter 7) and involves an unsecured creditors' committee (as opposed to an individual creditor), warranting an analysis of statutory standing under code sections 1109(b) and 1103(c)(5), respectively. See e.g. Matter of Pointer, 952 F.2d at 85-89 (engaging in constitutional, prudential, and statutory standing analysis); Matter of Ring, 178 B.R. 570 (Bankr. S.D.Ga. 1995)(same, reviewing Ninth Circuit authority); Matter of James Wilson Associates, 965 F.2d 160, 168-170 (7th Cir. 1992).

And finally, the Ninth Circuit itself, in In re Goodman, 991 F.2d 613, 620 (9th Cir. 1993), has granted a creditor standing to seek damages for willful violations of the stay pursuant to the bankruptcy court's civil contempt powers, a case that would need to be reconciled to Pecan Groves before we could adopt the blanket rule Liberty suggests. See also Id. at 618-620 (§ 362(h) creates standing for an "individual" creditor to seek damages for another creditor's willful violation of the stay); Matter of Vitreous Steel Products 911 F.2d at 1231 (creditor has standing to seek equitable subordination under § 510(c) for another creditor's violation of stay). We express no view on these matters.

---

**[**9]** It is well settled that *HN4* in appropriate situations the bankruptcy court may allow a party other than the trustee or debtor-in-possession to pursue the estate's litigation. Louisiana World Exposition v. Federal Ins. Co., 858 F.2d 233, 247-52 n. 19 (5th Cir. 1988) (and cases cited therein); In re STN Enterprises, 779 F.2d 901, 904 (2d Cir. 1985); In re Curry and Sorensen, Inc., 57 B.R. 824, 827-29 (9th Cir. BAP 1986). In Curry, the panel held that *HN5* a creditor dissatisfied with the lack of action on the part of the debtor-in-possession may petition the court to compel the debtor-in-possession to act or gain court permission to

AUTH17-000008