# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., et al.,[1] | Case No. 01-1139 (JKF) |
| Debtors. | Jointly Administered |
| | Re: Docket Nos. 19579, 20872, 21785 |

## THE STATE OF MONTANA'S POST-TRIAL BRIEF IN OPPOSITION TO CONFIRMATION OF THE FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

Dated: November 2, 2009

Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
Matthew P. Ward (#4471)
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Ph: (302) 252-4320

Counsel for the State of Montana

---

[1] The Debtors are the following entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals Inc.), W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), ECARG, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, LB Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc. E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

# TABLE OF CONTENTS

Page

STATEMENT OF THE CASE AND NATURE OF THE PROCEEDINGS ............................... 1

STATEMENT OF THE FACTS ................................................................................................ 1

ARGUMENT ............................................................................................................................ 3

I.     THE PLAN FAILS TO COMPLY WITH BANKRUPTCY CODE SECTION 524(g). ... 3

II.    THE PLAN FAILS TO COMPLY WITH BANKRUPTCY CODE SECTION 1122(a)
       BY CLASSIFYING CLAIMS THAT ARE NOT SUBSTANTIALLY SIMILAR
       WITHIN THE SAME CLASS ............................................................................................ 5

III.   THE PLAN VIOLATES THE ABSOLUTE PRIORITY RULE AND PROHIBITION
       ON UNFAIR DISCRIMINATION BY PROVIDING FOR FAVORABLE
       TREATMENT TO CLASSES THAT ARE EQUAL OR JUNIOR IN PRIORITY TO
       CLASS 6 ASBESTOS PI CLAIMS. .................................................................................. 5

IV.    THE TRUST DISTRIBUTION PROCEDURES FAIL TO COMPLY WITH
       BANKRUPTCY CODE SECTIONS 1123(a)(4) AND 524(g)(2)(B) BY GIVING
       DISPARATE TREATMENT TO CLAIMS WITHIN A CLASS. .................................... 7

V.     THE TRUST DISTRIBUTION PROCEDURES AND THE PLAN ARE NOT FAIR
       AND EQUITABLE FOR ADDITIONAL REASONS ...................................................... 9

VI.    THE PLAN IS INFEASIBLE. .......................................................................................... 10

VII.   THE PLAN WAS NOT PROPOSED IN GOOD FAITH. ............................................... 11

INCORPORATION BY REFERENCE AND RESERVATION OF RIGHTS ........................... 11

# TABLE OF AUTHORITIES

Page

**Cases**

In re Armstrong World Indus., Inc., 432 F.3d 507  (3d Cir. 2005)................................................. 6

In re Penn Cent. Transp. Co., 71 F.3d 1113 (3d Cir. 1995)......................................................... 10

JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.), 400 B.R. 429 (D. Del. 2009).............. 10

**Statutes**

11 U.S.C. § 1141(c) ................................................................................................................... 10

11 U.S.C. § 1141(d)(1)(A ......................................................................................................... 10

The State of Montana ("Montana"), by and through its undersigned counsel, hereby files its post-trial brief (the "Post-Trial Brief") in opposition to confirmation of the First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders (Docket No. 20872) (as such plan has been or may be modified and/or amended, the "Plan"), and in support, states as follows:

## STATEMENT OF THE CASE AND NATURE OF THE PROCEEDINGS[2]

On February 27, 2009, the Plan Proponents filed the version of the Plan that currently is up for confirmation before this Court, as well as the accompanying Disclosure Statement.

On March 9, 2009, this Court entered its order (Docket No. 20944) approving the Disclosure Statement.

On May 20, 2009, Montana filed its Brief in Opposition to Confirmation of the Plan (Docket No. 21785), and on July 13, 2009, Montana filed its Phase II Trial Brief in Opposition to Confirmation of the Plan (Docket No. 22429) (the "Phase II Brief" and, collectively, the "Pre-Trial Briefs").[3] This is Montana's Post-Trial Brief in opposition to confirmation.

## STATEMENT OF THE FACTS

On or about March 25, 2003, Montana filed proofs of claims against the Debtors for contribution and indemnification from the Debtors in at least one hundred and forty-eight (148) cases against Montana in various Montana state courts (the "State Court Actions") resulting from

---

[2] The Phase II Brief contains a more fulsome statement of the case and nature of the proceedings, as well as a more fulsome statement of the facts, each of which is incorporated herein by reference.

[3] Each capitalized term not otherwise defined herein shall have the meaning ascribed to it in the Phase II Brief.

Montana's purported failure to warn about asbestos-containing vermiculite produced by the Debtors, allegedly in violation of a governmental duty imposed under Montana law. See Montana Ex. 149.[4]

The Disclosure Statement provides that Montana's contribution and indemnification claims, if pursued, would be treated as Indirect PI Trust Claims -- a subset of the Class 6 Asbestos PI Claims that are subject to the Asbestos PI Trust. See Disclosure Statement § 2.8.1.3 ("To the extent that the State of Montana ultimately pursues its claim, it will be treated as an Indirect PI Trust Claim and will be channeled to the Asbestos PI Trust.").

While the Plan itself does not expressly discuss Montana's contribution and indemnification claims, the Plan does make it clear that Indirect PI Trust Claims are part of Class 6 Asbestos PI Claims. See Plan § 1.1.33 (defining "Asbestos PI Claim" to include an "Indirect PI Trust Claim").[5]

---

[4]    Additionally, Montana has filed proofs of claim against the Debtors in the approximate amount of $85.4 million for the cost of future and past Medicaid reimbursement. The Disclosure Statement provides that such claims will be classified as a Class 9 General Unsecured Claims to the extent that they are allowed. See Disclosure Statement § 2.8.1.3. The State of Montana Department of Environmental Quality ("MDEQ") also has filed proofs of claim against the Debtors for clean-up costs in excess of $55 million associated with the Libby, Montana site. Two of the proofs of claim were expunged. MDEQ and the Debtors have settled the remaining proofs of claim for $5,167,000, except for liabilities associated with the property in or around the Zonolite mine owned by the Debtors (OU-3), which liabilities were specifically reserved. On July 21, 2008, the Bankruptcy Court approved the settlement. Montana's contribution and indemnification claims based on its purported failure to warn are distinct from its Medicaid reimbursement claims and MDEQ's claims for clean-up costs.

[5]    Montana maintains that its claims may not fall within the Plan's express definition of "Indirect PI Trust Claim". The Plan defines "Indirect PI Trust Claim" as follows:

   "Indirect PI Trust Claim" shall mean any Claim or remedy, liability, or Demand against the Debtors, . . . that is (x)(i) held by (A) any Entity . . . who has been, is, or may be a defendant in an action seeking damages for death, bodily injury, sickness, disease, or other personal injuries (whether physical, emotional, or otherwise) to the extent caused or allegedly

2

WCSR 4147253

The Plan then provides that all Asbestos PI Claims, including Indirect PI Trust Claims (including Montana's claims, to the extent that they are permitted to be treated as Indirect PI Trust Claims, as contemplated by the Disclosure Statement), are channeled to the Asbestos PI Trust. <u>See</u> Plan § 3.1.6(c). The Plan Proponents' purported basis for channeling the Asbestos PI Claims to the Asbestos PI Trust is Bankruptcy Code section 524(g). <u>See</u> Plan §§ 1.1.42, 1.1.32.

ARGUMENT

## I. THE PLAN FAILS TO COMPLY WITH BANKRUPTCY CODE SECTION 524(g).

As set forth in more detail in the Phase II Brief, Montana maintains that the Plan fails to comply with Bankruptcy Code section 524(g), primarily for two reasons. First, Montana maintains that its contribution and indemnification claims are of a different nature (contribution and indemnification, as opposed to personal injury, wrongful death, or property damage) and based on different acts (alleged failure to warn, as opposed to production of asbestos-containing products) from the types of claims to which a section 524(g) injunction may apply. Accordingly,

> caused, directly or indirectly, by exposure to asbestos or asbestos-containing products for which the Debtors have liability or (B) any assignee or transferee of such Entity and (ii) on account of alleged liability of the Debtors for payment, repayment, reimbursement, indemnification, subrogation, or contribution of any portion of any damages such Entity has paid or may pay to the plaintiff in such action or (y) [relates to insurance or other financial assurance].
>
> Plan § 1.1.138. While Montana has been named as a defendant in various actions in which the plaintiffs are "seeking damages for death, bodily injury, sickness, disease, or other personal injuries" (and therefore its contribution and indemnification claims may technically fall within the definition of "Indirect PI Trust Claim"), the claims against Montana are based on its purported failure to warn, not based upon death, injury, sickness, or disease. Accordingly (and notwithstanding the Disclosure Statement's language to the contrary), Montana maintains that its contribution and indemnification claims do not fall within the Plan's definition of Indirect PI Trust Claims. Therefore, Montana's claims should not be classified as Class 6 Asbestos PI Claims, but should instead be classified as Class 9 General Unsecured Claims, or at a minimum should be classified in a distinct class for holders of indirect claims.

3

Montana's claims for contribution and indemnification should not be subject to the 524(g) trust. By attempting to expand the scope of section 524(g) to apply to those claims, the Plan fails to comply with the requirements of section 524(g)(2)(B), and accordingly does not comply with the "applicable provisions" of the Bankruptcy Code, as required by section 1129(a)(1). See Phase II Brief Part I.A.

Second, even if Montana's contribution and indemnification claims were of the nature to which an injunction imposed under section 524(g) might be applicable, that section only enjoins "claims" or "demands," and Montana's contribution and indemnification claims are not yet "claims" or "demands". Specifically, under Montana law, Montana does not yet have a right to payment on such claims, and such claims are not yet due, because Montana has not yet made any payment for which it seeks contribution or indemnification, Montana has not entered into any settlement on the underlying failure to warn claims, and no judgment has been entered on those underlying claims. Therefore, under the controlling law in the Third Circuit, Montana's contribution and indemnification claims are not "claims" or "demands" for purposes of the Bankruptcy Code, and consequently do not fall within the scope of section 524(g). See Phase II Brief Part I.B; see also 11 U.S.C. § 101(5) (stating that a "claim" is defined as a "right to payment").[6] Indeed, the Plan Proponents have acknowledged that "virtually none of the Indirect PI Trust Claims have arisen yet." Debtors' Chart Summarizing Final Objections to its First Amended Joint Plan of Reorganization, at p. 20 (Docket No. 23114). Therefore, the Plan

---

[6] In applying the section 101(5) definition in the context of contribution and indemnification claims, the Third Circuit Court of Appeals has determined that such claims were not "claims" for purposes of the Bankruptcy Code because a right to payment had not yet arisen. See Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.), 744 F.2d 332, 335-36 (3d Cir. 1984) (reversing district court, and concluding that the automatic stay did not apply to indemnification and contribution claims that relate to a debtor's prepetition acts but for which the claimant did not have a right to payment until after the petition date).

Proponents appear to have tacitly conceded that Montana's claims for contribution and indemnification are not yet "claims" or "demands" for purposes of the Bankruptcy Code. As a result, because a section 524(g) injunction only applies to "claims" or "demands", Montana's contribution and indemnification claims should not be subject to a 524(g) injunction.

## II. THE PLAN FAILS TO COMPLY WITH BANKRUPTCY CODE SECTION 1122(a) BY CLASSIFYING CLAIMS THAT ARE NOT SUBSTANTIALLY SIMILAR WITHIN THE SAME CLASS.

Montana further objects to the Plan because it fails to comply with Bankruptcy Code section 1122(a). Specifically, Montana's claims for contribution and indemnification are classified alongside personal injury and other claims that are not "substantially similar" to Montana's claims, as that term is used in Bankruptcy Code section 1122(a). Montana's claims have a distinct nature (contribution and indemnification, as opposed to personal injury and death) and a distinct legal effect (not subject to a section 524(g) injunction). Therefore, Montana's claims should not be classified within the same class as personal injury claims. By attempting to do so, the Plan fails to comply with Bankruptcy Code section 1122(a), which provides that a plan may place a claim in a particular class only if such claim is "substantially similar" to the other claims in that class. Instead, the Plan should be required to classify Montana's contribution and indemnification claims in a distinct class for holders of indirect claims. See Phase II Brief Part II.

## III. THE PLAN VIOLATES THE ABSOLUTE PRIORITY RULE AND PROHIBITION ON UNFAIR DISCRIMINATION BY PROVIDING FOR FAVORABLE TREATMENT TO CLASSES THAT ARE EQUAL OR JUNIOR IN PRIORITY TO CLASS 6 ASBESTOS PI CLAIMS.

Montana also objects to the Plan because it disregards the absolute priority rule and prohibition on unfair discrimination by seeking to cram down the Plan on the impaired Class 6 Asbestos PI Claims while, at the same time, leaving classes that are equal or junior in priority

5

unimpaired.  See Phase II Brief Parts III & IV.[7]  As an example, the Plan concedes that Class 6

Asbestos PI Claims are impaired.  See Plan § 3.1.6(d) ("Class 6 is impaired.").  Yet the Plan

provides that certain other classes of unsecured claims are unimpaired.  See Plan § 3.1.5(c)

(stating that Class 5 Intercompany Claims is "unimpaired"); id. § 3.1.7(c)(ii) (stating that Class

7A Asbestos PD Claims (except US ZAI PD Claims) its "unimpaired"); id. § 3.1.9(f) (stating

that Class 9 General Unsecured Claims is "unimpaired").  Perhaps more tellingly, the Plan even

provides for a distribution to holders of equity interests.  See id. § 3.1.10(b) ("On the Effective

Date, Class 10 Equity Interests in the Parent shall be retained, subject to the issuance of the

Warrant, the terms of the Share Issuance Agreement, and the Stock Trading Restrictions Term

Sheet.").  Such a result directly violates the Third Circuit Court of Appeals' ruling in In re

Armstrong World Industries, Inc., 432 F.3d 507, 518 (3d Cir. 2005) (affirming denial of

confirmation because plan violated absolute priority rule).

     As this Court recently acknowledged, the Debtors may not unfairly discriminate between

different claims of the same nature.  See 10/14/09 Tr. p. 129 (Court recognizing that "[i]f the

debtor tried to classify Libby claimants in a different class simply to pay them more through this

plan than they paid other claimants with the same disease the plan would not be confirmable.

The debtor could not do that.  It would be gerrymandering.  That plan simply wouldn't work.").

---

[7]    Montana concedes that the absolute priority rule and the prohibition on unfair
discrimination apply only in the event that the cram down regime is used.  See 11 U.S.C.
§ 1129(b).  Montana understands that the Plan Proponents no longer intend to use the
cram down regime, in light of the acceptance of the Plan by Class 6.  However, Montana
maintains that because its claims have a distinct nature (contribution and indemnification,
as opposed to personal injury and death) and a distinct legal effect (not subject to a
section 524(g) injunction) from the other claims within Class 6, Montana's claims should
be classified in a distinct class for holders of indirect claims.  See supra Part II.  Had the
Plan Proponents properly classified indirect claims within a distinct class, Montana
believes that the class would not have approved the Plan, and that the cram down regime
would have had to be utilized.

Thus, because Montana's claims (to the extent that they are "claims" as defined in the Bankruptcy Code) are general unsecured claims, and not Asbestos PI Claims, such claims should be classified in Class 9 and be afforded the same treatment as other Class 9 General Unsecured Claims, or at a minimum should be classified in a distinct class for holders of indirect claims.

## IV.  THE TRUST DISTRIBUTION PROCEDURES FAIL TO COMPLY WITH BANKRUPTCY CODE SECTIONS 1123(a)(4) AND 524(g)(2)(B) BY GIVING DISPARATE TREATMENT TO CLAIMS WITHIN A CLASS.

Additionally, the Trust Distribution Procedures that are implemented by the Plan violate Bankruptcy Code sections 1123(a)(4) and 524(g)(2)(B)(ii)(V) because those procedures will result in disparate treatment among claims within the same class.  Section 1123(a)(4) requires that a plan must provide the same treatment for all claims within a particular class.  Similarly, section 524(g)(2)(B)(ii)(V) requires a section 524(g) trust to operate through mechanisms that reasonably assure that present claims and future demands involving similar claims will be paid in substantially the same manner.  See Phase II Brief Part V.A.  Here, the Trust Distribution Procedures will result in unfair disparate treatment of Indirect PI Trust Claims (including contribution and indemnification claims) in disregard of these requirements in at least three respects.

First, the Trust Distribution Procedures may be interpreted to give disparate treatment by providing for no payment whatsoever to holders of claims for contribution and indemnification. See Phase II Brief Part V.B.  Even to the extent that the Plan does contemplate a distribution on account of indirect contribution and indemnification claims, the requirement that the contribution and indemnification claimholder must first make payment to the purportedly injured direct claimholder disregards applicable state law, which allows a tort system defendant the right to pursue contribution prior to paying a judgment or settlement to the plaintiff.  See id. Part V.B n. 11; see also Objection of Garlock Sealing Techs., LLC to Confirmation of the Plan, at Part A

(Docket No. 21795). Montana joins, incorporates herein by reference, and adopts as its own Part A of Garlock Sealing Technologies, LLC's objection.

Second, the Trust Distribution Procedures give disparate treatment by implementing a first-in, first-out timing mechanic for Class 6 Asbestos PI Claims that will result in especially negative disparate treatment against holders of contribution and indemnification claims (such as Montana) who must wait until any liability (such as on the underlying failure to warn allegations) is established before they may assert their contribution and indemnification claims. See Phase II Brief Part V.C. In fact, during the confirmation trial, David Austern, the Future Claimants Representative, acknowledged that "there is a possibility" that the Trust may not have sufficient funds to pay contribution and indemnification claims which are established at a point later in time than the direct asbestos claims. 9/17/09 Tr. p. 71 (Austern).

Third, the Trust Distribution Procedures give disparate treatment by imposing additional restrictions and requirements on holders of Indirect PI Trust Claims (including contribution and indemnification claims) that are not imposed on holders of other claims within Class 6. For example, the Trust Distribution Procedures limit the allowable amount of an Indirect PI Trust Claim to the amount paid to the underlying asbestos plaintiff, without inclusion of attorneys' fees or other defense costs; they require that for a claimant to assert a presumptively valid Indirect PI Trust Claim, it must obtain a full release from the underlying asbestos creditor; and provide for a "maximum value" for Asbestos PI Claims which could result in negative disparate treatment to holders of Indirect PI Trust Claims in the event that a judgment is entered against it in an amount in excess of the maximum value. See Phase II Brief Parts V.D.[8] For all of these reasons, in

---

[8] During the confirmation trial, Elihu Inselbuch acknowledged that a holder of an Indirect PI Trust Claim could only obtain a recovery against the Asbestos PI Trust in the "maximum amount", even if a judgment in excess of the maximum amount had been entered against the holder of the Indirect PI Trust Claim. See 9/14/09 Tr. pp. 111-12

WCSR 4147253

order for the Trust Distribution Procedures to comply with Bankruptcy Code sections 1123(a)(4) and 524(g)(2)(B), those procedures will need to be revised to eliminate the potential for disparate treatment among claims within the same class.  For this reason as well, the Court should not confirm the Plan at this time.

## V.   THE TRUST DISTRIBUTION PROCEDURES AND THE PLAN ARE NOT FAIR AND EQUITABLE FOR ADDITIONAL REASONS.

The Trust Distribution Procedures and the Plan also are unfair and inequitable in a number of respects.  First, the Trust Distribution Procedures fail to clarify the procedures pursuant to which Class 6 Asbestos PI Claims will be paid, or the percentage that claimholders in that class will receive on their claims.[9]  Second, the attorneys that are appointed as members of the trust advisory committee pursuant to the Asbestos PI Trust Agreement suffer from conflicts of interest because they also represent the underlying asbestos claimholders.  Finally, the Plan is unfair and inequitable with respect to Montana by providing for a distribution to Montana that violates the Montana Constitution.  (The Plan provides for a distribution of, among other things, stock to holders of Class 6 Asbestos PI Claims.  In circumstances such as the Debtors' bankruptcy, the Montana Constitution prohibits Montana from holding such stock.)  Before the

---

(Inselbuch) ("Q:  [W]here a judgment is rendered against a co-defendant and now has a contribution indemnification claim that exceeds the maximum allowed amount, could it have a negative impact based on how the TDP is set up currently?  A:  It can only recover up to the maximum value at the payment percentage.  Q:  Okay.  A:  If that is a negative impact, it is a negative impact.").

[9]     During the confirmation trial, the Future Claimants Representative acknowledged that the TDP lacks certainty regarding the value of the Asbestos PI Trust's assets and the amount of its liabilities.  See 9/17/09 Tr. p. 70 (Austern) ("Q:  Now, the TDP acknowledges, I think, and I'll just to speed 5 things along, under Sections 4.1 and 4.3 of the TDP that there 6 is uncertainty in connection with the value of the assets, the 7 amount of liabilities?  A:  Yes.").

WCSR 4147253

Court confirms the Plan, these unfair and inequitable provisions should be revised.  <u>See</u> Phase II

Brief Part VI.

**VI.    THE PLAN IS INFEASIBLE.**

Furthermore, in the event that Montana is successful in demonstrating that its claims are

not yet "claims" for purposes of the Bankruptcy Code, such claims may not be discharged.  <u>See</u>

Phase II Brief Part VII; <u>see also</u> 11 U.S.C. § 1141(c) (providing that after confirmation of a plan,

property of the estate is free and clear only of all "claims and interests"); <u>id.</u> § 1141(d)(1)(A)

(providing for a discharge only of "any debt that arose before the date of such confirmation"); <u>In

re Penn Cent. Transp. Co.</u>, 71 F.3d 1113, 1115 (3d Cir. 1995) (holding that under <u>Frenville</u>,

"claims for contribution and indemnity could not accrue until the [underlying] complaints were

filed" and therefore because the claimants "could not have filed [claims] during the . . .

bankruptcy, . . . their claims could not have been discharged"); <u>JELD-WEN, Inc. v. Van Brunt

(In re Grossman's, Inc.)</u>, 400 B.R. 429, 432 (D. Del. 2009) (affirming bankruptcy court's

decision that tort claims did not arise prior to the effective date, and therefore were not

discharged, citing <u>Frenville</u>).

Montana believes that consequently, the Plan is unfeasible because Montana will

continue to assert up to $750 million in non-dischargeable claims against the Debtors even after

the Plan goes effective, thereby causing the need for the Debtors' further financial

reorganization.  <u>See</u> Phase II Brief Part VII.  In fact, during the confirmation trial, the Plan

Proponents' expert witness on feasibility testified that she was, at the time of the trial, unable to

determine whether the Debtors would be able to pay such a liability within one year after

confirmation.  Specifically, in response to Montana's line of questioning, the Plan Proponents'

expert witness testified as follows:

Q: Again, assuming a 750 million dollar non-dischargeable post-confirmation judgment, would Grace have the ability to pay that one year after the effective date?
A: Well, needless to say, I have not done the analysis, but you know, it's possible they might be able to pay it based on an accrual of cash as well as additional borrowings. But, you know, again, it's totally based on two assumptions which I have not put down on a piece of paper or figured out what the ramifications of those would be.
Q: So as you sit here today you're unable to determine that?
A: I think that's a fair statement.

10/13/09 Tr. pp. 157-58 (Zilly) (emphasis added).

## VII.     THE PLAN WAS NOT PROPOSED IN GOOD FAITH.

Finally, Montana believes that the Plan fails to comply with Bankruptcy Code section 1129(a)(3) because it was not proposed in good faith. Specifically, the foundation for the Plan -- the Asbestos PI Settlement (as defined below) -- occurred without any participation from Montana and other key constituencies in the negotiations. See Phase II Brief Part VIII.[10] Montana was neither told of nor included in the negotiations leading to that "settlement", yet the Plan Proponents concede that the Asbestos PI Settlement is "the foundation for the Plan." See Disclosure Statement at p. 1.

For all of these reasons, the Court should deny confirmation of the Plan as currently proposed.

### INCORPORATION BY REFERENCE AND RESERVATION OF RIGHTS

Montana hereby incorporates by reference its previously filed objections to the Plan, including the Pre-Trial Briefs. Montana also reserves all rights to raise additional arguments and objections to the Plan or any amended plan (including, without limitation, by means of filing

---

[10]     During the confirmation trial, the Future Claimants Representative acknowledged that Montana did not participate in the negotiations that led to the Asbestos PI Settlement. See 9/17/09 Tr. p. 83 (Austern) ("Q: Has the State of Montana ever been a participant to any of these settlement discussions that led up to the plan to your knowledge? A: I didn't see you or any other representative of the State there.").

supplemental objections to the Plan), and to join, incorporate by reference, and/or adopt as its own any arguments or reservations of rights regarding the Plan or any amended plan, either at or prior to any hearing with respect to any such plan.

WHEREFORE, Montana respectfully requests that this Court (i) sustain the objections articulated in this Post-Trial Brief as well as the Pre-Trial Briefs, (ii) deny confirmation of the Plan, and (iii) grant Montana such other and further relief as it deems just and proper.

Dated:  November 2, 2009

Respectfully submitted,

Womble Carlyle Sandridge & Rice, PLLC


_____/s/ Matthew P. Ward_____
Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
Matthew P. Ward (#4471)
222 Delaware Avenue, Suite 1501
Wilmington, DE  19801
Ph: (302) 252-4320
Fax: (302) 252-4330

Counsel for the State of Montana