IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W.R. GRACE & CO., *et al*., | : | Case No. 01-1139 (JKF) |
| | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |
| | : | |
| | : | |
| | : | |

**POST-TRIAL BRIEF OF LONGACRE MASTER FUND, LTD. AND LONGACRE CAPITAL PARTNERS (QP), L.P., IN CONNECTION WITH PHASE II HEARING TO CONSIDER CONFIRMATION OF THE FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W.R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS MODIFIED THROUGH OCTOBER 12, 2009**

Dated: November 2, 2009
Wilmington, DE

PEPPER HAMILTON LLP

/s/  John H. Schanne, II
PEPPER HAMILTON LLP
David M. Fournier (No. 2812)
James C. Carignan (No. 2987)
John H. Schanne, II (No. 5260)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500

*Counsel for Longacre Master Fund, Ltd. And Longacre Capital Partners (QP), L.P.*

# TABLE OF CONTENTS

**Page**

I.   The Plan cannot be confirmed to the extent it classifies the NU Claim as a Class 6 claim because such classification is impermissible under section 1122(a) of the Bankruptcy Code.................................................................................................................................. 9

   A.   The NU Claim is similar in nature and character to Class 9 claims but is completely dissimilar from Class 6 claims. ...................................................................................... 10

   B.   Classification of the NU Claim in Class 6 would be fundamentally inconsistent with the requirements of the Court-approved Settlement Agreement........................................... 13

   C.   Debtors should be estopped from contradicting the Settlement Agreement by classifying the NU Claim in Class 6 to the detriment of Longacre. .................................................... 14

   D.   Debtors have classified a nearly identical claim in Class 9, but offers no justification for the disparate treatment of similar claims. ......................................................................... 17

II.   The Plan cannot be confirmed to the extent it classifies claim number 9553 as a Class 6 Claim because such classification would result in claims within the same class being treated differently, which is impermissible under section 1123(a)(4) of the Bankruptcy Code. ..... 19

#11645332 v3

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re 222 Liberty Assocs.*, 108 B.R. 971 (Bankr. E.D. Pa. 1990) ....................................9

*In re AOV Indus., Inc.*, 792 F.2d 1140 (D.C. Cir. 1986)..........................................10, 20

*In re Armstrong World Indus., Inc.*, 432 F.3d 507 (3d Cir. 2005)..................................14

*In re Boston Post Road Ltd. P'ship.*, 21 F.3d 477 (2d Cir. 1994) ..................................18

*In re Bryson Props., XVIII*, 961 F.2d 496 (4th Cir. 1992) ................................................9

*In re Cocoran Hosp. Dist.*, 233 B.R. 449 (Bankr. E.D. Cal. 1999) ................................18

*In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004) .....................10, 18

*Donaldson v. Bernstein*, 104 F.3d 547 (3d Cir. 1997) ....................................................14

*In re EBP, Inc.*, 172 B.R. 241 (Bankr. N.D. Ohio 1994)................................................16

*In re FINOVA Group, Inc.*, 304 B.R. 630 (D. Del. 2004) ..............................................19

*Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)*, 283 F.3d 159 (3d Cir. 164).....................14

*In re Gato Realty Trust Corp.*, 183 B.R. 15 (Bankr. D. Mass. 1995)............................12

*In re Gibbs*, 230 B.R. 471 (Bankr. D. Conn. 1999) ........................................................9

*In re Gillette Assocs., Ltd.*, 101 B.R. 866 (Bankr. N.D. Ohio 1989) ..............................9

*In re Johnston*, 21 F.3d 323 (9th Cir. 1994) ..................................................................10

*In re Listani Foods, Inc.*, 329 B.R. 491 (D. N.J. 2005) ..................................................12

*In re Mahoney Hawkes, LLP*, 289 B.R. 285 (Bankr. D. Mass. 2002) ............................12

*In re National / Northway Ltd. P'ship.*, 279 B.R. 17, 24-25 (Bankr. D. Mass 2002)....................16

*In re One Times Square Assocs. Ltd. P'ship.*, 159 B.R. 695 (Bankr. S.D.N.Y. 1993) .................16

*In re Porcelli*, 319 B.R. 8 (Bankr. M.D. Fla. 2004)........................................................12

*In re Teleglobe Commc'ns Corp.*, 493 F.3d 345 (3d Cir. 2007)......................................14

*In re US Truck Co., Inc.*, 42 B.R. 790 (Bankr. E.D. Mich. 1984) ..................................16

*In re White Horse Grain Co.*, 60 B.R. 16 (Bankr. E.D. Pa. 1986) ..................................9

**STATUTES**

11 U.S.C. §§ 1122(a) and 1123(a)(4) ........................................................................................20

Sections 1107 and 1108 of the Bankruptcy Code..........................................................................3

Section 1122(a) of the Bankruptcy Code............................................................................. passim

Section 1123(a)(4) of the Bankruptcy Code ...................................................................3, 19, 20

Chapter 11 Of The Bankruptcy Code .................................................................................. passim

#11645332 v3

Longacre Master Fund, Ltd. and Longacre Capital Partners (QP), L.P. (together, "Longacre"), hereby submit this Post-Trial Brief (the "Brief") in connection with the Hearing (the "Trial") to consider confirmation of the First Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Of W.R. Grace & Co., *et al.*, The Official Committee Of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants' Representative, And The Official Committee Of Equity Security Holders Modified Through October 12, 2009 (D.I. 23474) (the "Plan").

## PRELIMINARY STATEMENT

It is clear from the evidence at Trial that Debtors are improperly attempting to use the Plan classification process to obtain a windfall at the expense of unsecured creditors, such as Longacre, who hold liquidated, contractual reimbursement claims under surety bonds. These wrongly-classified claims represent the Debtors' contractual obligation to reimburse the creditors for settlement payments made to certain litigation plaintiffs. Longacre's claim is liquidated, fixed, non-contingent, is based upon contract and contains no component of negligence, tort or personal injury. However, seeing an opportunity to deprive creditors such as Longacre of that to which other holders of contract-based claims are to receive under the Plan, Debtors have lumped Longcare's (and others') claims into Class 6, which is designed to accommodate personal injury claims of tort claimants who had been exposed to asbestos. Knowing that Longacre's claim and other surety reimbursement claims were not large enough to sway the results of Class 6 voting on the Plan, Debtors are attempting to obtain a windfall by depriving those contractual claimants of their rightful distribution. Debtors' strategy is based upon the contrived argument that, since the reimbursement obligations upon which Longacre's claim is based relate to settlement payments that Debtors failed to make (and that Longacre paid under their surety bonds with Debtors), and since those settling litigants' claims against Debtors happen to have been for personal injury

arising from asbestos exposure, it is proper to classify Longacre's claim with unrelated tort claims.  This is a stunning position, especially given that:  (i) such classification contravenes the provisions of the Settlement Agreement pursuant to which Longacre's claim was allowed; (ii) the sureties' contractual claims are fundamentally different than the myriad Class 6 tort claims; and (iii) Debtors have properly classified in Class 9 a nearly identical claim that arose from ***the same settlement transactions from which Longacre's claim arose***.  Given these facts, together with the demonstrable similarities Longacre's claim has with Class 9 claims, the Debtors' improper classification scheme must fail.

## SUMMARY OF ARGUMENT

1.      The Plan cannot be confirmed to the extent it classifies claim number 9553 as a Class 6 Claim because such classification is impermissible under section 1122(a) of the Bankruptcy Code.

2.      The Plan cannot be confirmed to the extent it classifies claim number 9553 as a Class 6 Claim because such classification would result in claims within the same class being treated differently, which is impermissible under section 1123(a)(4) of the Bankruptcy Code.

## STATEMENT OF THE RECORD[1]

On April 2, 2001 (the "Petition Date") the above-captioned debtors and debtors-in-possession (the "Debtors") each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy Code") (*see* D.I. 1).  The Debtors are presently operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[1]      All references to the record contained herein pertain to Exhibits that have been admitted and testimony at the Trial of the Phase II Confirmation Hearing, or to the language of the Plan and Disclosure Statement.

-2-

On April 13, 2001, the Office of the United States Trustee appointed the Official Committee of Asbestos Personal Injury Claimants to represent the interests of creditors whose claims are based on injuries due to asbestos exposure.[2]  Furthermore, on May 24, 2004, the Bankruptcy Court entered the Order (D.I. 5645) appointing David T. Austern as the legal representative for the future asbestos personal injury claimants (the "Representative").[3]  The Representative has been charged in these proceedings with representing the interests of asbestos personal injury claimants whose claims have not yet been revealed.  As the Representative stated at the Trial, the Representative is ". . . the representative of future claimants that will have demands and file claims with the asbestos personal injury settlement trust.  I'm a fiduciary for those purposes and I represent their interests."  (9/9/09 Tr. p. 49, lines 22-25 (Austern)).

Subsequent to the Petition Date, National Union Fire Insurance Company of Pittsburg, PA ("National Union") filed a proof of claim in the Debtors' proceedings in the amount of $46,971,764 plus additional unliquidated amounts, which claim was assigned claim number 9553 (the "NU Claim").  (Longacre Stipulation, LONG Ex. 001 at ¶¶ 2, 20, attaching NU Claim as attachment "Long A" to Longacre Stipulation).  On November 13, 2007, Debtors and National Union entered into a Settlement Agreement And Mutual Release (the "Settlement Agreement"), reducing and allowing the NU Claim in the amount of $9,806,018 and specifying that the NU Claim was allowed and would be treated ". . . as an unsecured, pre-petition, non-priority claim."  (*Id.* at ¶¶ 3-4, 20; *see also* Settlement Agreement at A.D.I. 115 in *W.R. Grace & Co.-Conn. v. National Union Fire Ins. Co. of Pittsburgh, PA and Reaud, Morgan & Quinn, Inc.*

---

[2]    *See* Debtors' Disclosure Statement For the Plan (D.I. 20871) (the "Disclosure Statement") at § 3.2.3.1.2.

[3]    *See* Exhibit LONG Ex. 001, the Stipulation Of Facts By And Between Longacre And Debtors In Connection With Hearing To Consider Confirmation Of The Plan (D.I. 23232) (the "Longacre Stipulation"), at ¶ 20.  *See also* Disclosure Statement, § 3.2.3.3.

*and Environmental Litigation Group, P.C. (In re W.R. Grace & Co.)* (Adv. Proc. No. 02-01657)).

The Settlement Agreement, in addition to allowing the NU Claim in the fixed, liquidated amount of $9,806,018, also specifies the bases for the allowed NU Claim and the dollar amounts attributable to each respective basis.  (Longacre Stipulation, LONG Ex. 001 at ¶ 5, 20; Settlement Agreement, (Adv. Proc. No. 02-01657, A.D.I. 115)).  First, $8,639,890 of the NU Claim is based on amounts National Union was required to pay (and which amounts Debtors were required to reimburse) under surety bonds that National Union had issued to guarantee Debtors' payment obligations under settlements with certain asbestos personal injury claimants. (Longacre Stipulation, LONG Ex. 001 at ¶ 5, 20; Settlement Agreement, (Adv. Proc. No. 02-01657, A.D.I. 115)).  Second, $432,193 of the NU Claim is based upon premium payments that Debtors had failed to pay to National Union in connection with such surety bonds.  (Longacre Stipulation, LONG Ex. 001 at ¶ 5, 20; Settlement Agreement, (Adv. Proc. No. 02-01657, A.D.I. 115)).  Third, $733,935 of the NU Claim is based upon litigation expenses, including legal fees, incurred by National Union.  (Longacre Stipulation, LONG Ex. 001 at ¶ 5, 20; Settlement Agreement, (Adv. Proc. No. 02-01657, A.D.I. 115)).

Plan proponents' witness Mr. Jay Hughes confirmed the bases for the NU Claim on Longacre's cross-examination of him, during the Phase II Trial, via the following exchange:

QUESTION:  And what was that National Union claim based on?

ANSWER:  It was payments that had been made to the claimants in connection with the National Union surety bond that had been used to - - for payments with respect to the Reaud, Morgan & Quinn settlement agreement.

QUESTION:  So National Union had posted a surety bond, correct?

ANSWER:  Yes.

-4-

> QUESTION:  And that surety bond was intended to secure debtor's obligations under settlement agreements with various asbestos personal injury claimants?
>
> ANSWER:  Yes.
>
> QUESTION:  And the basis of National Union's claim was for repayments of those amounts that National Union had paid out under those surety bonds?
>
> ANSWER:  Yes.
>
> QUESTION:  Are you aware whether National Union ever issued any insurance liability policies to the debtors?
>
> ANSWER:  Not without relying on the schedules that have been produced in this case.

(9/15/09 Tr. p. 52-54 (Hughes) (omitting objections)).

The Settlement Agreement also indicates that the NU Claim is to receive post-petition interest similar to how the Plan treats "Class 9," claims providing:

> "[i]n the event that any plan or plans of reorganization that the Debtors, or any of them, may confirm in the bankruptcy cases provides for payment of interest on unsecured, pre-petition, non-priority claims, the National Union Claim in the amount allowed herein, shall bear interest at the rate provided in such plan or plans from and after the Closing Date without regard to the date from which interest accrues under the terms of such plan or plans of reorganization."

(Longacre Stipulation, LONG Ex. 001 at ¶¶ 6, 20; Settlement Agreement, (Adv. Proc. No. 02-01657, A.D.I. 115)).  The Court entered the Order Approving the Settlement Agreement on December 4, 2007, in that certain Adversary Proceeding captioned *W.R. Grace & Co.-Conn. v. National Union Fire Ins. Co. of Pittsburgh, PA and Reaud, Morgan & Quinn, Inc. and Environmental Litigation Group, P.C. (In re W.R. Grace & Co.)* (Adv. Proc. No. 02-01657) (A.D.I. 115).  (Longacre Stipulation, LONG Ex. 001 at ¶¶ 7-8, 20).

On December 13, 2007, National Union and Longacre entered into the Assignment Of Claim (the "Assignment"), pursuant to which National Union assigned all right,

-5-

title and interest in the NU Claim to Longacre, and pursuant to which Longacre is entitled to enforce all rights and benefits under the NU Claim, as the successor-in-interest to National Union. (*Id.* at ¶¶ 9, 20, attaching Assignment as "Long B" to Longacre Stipulation).

On February 27, 2009, the Debtors filed the Plan, which has been subsequently modified through and including October 12, 2009. (*Id.* at ¶ 11; *see also* D.I. 23474). The Plan classifies stakes in the Debtors into eleven classes: nine classes of creditors and two classes of equity interest holders. (Longacre Stipulation, LONG Ex. 001 at ¶ 12; Plan, p. 43-44). Class 6 includes asbestos personal injury claims, labeled "Asbestos PI Claims." (Longacre Stipulation, LONG Ex. 001 at ¶ 13; Plan at p. 44). Class 9 includes the claims of general, unsecured creditors. (Longacre Stipulation, LONG Ex. 001 at ¶ 18). According to the Plan, only Class 6 creditors and Class 7B claimants are impaired. (*Id.* at ¶ 14). Conversely, under the Plan, creditors holding Class 9 claims are proposed to receive a 100 % distribution plus post-petition interest on account of their claims. (*Id.* at ¶ 18).

The Plan's definition of 'Asbestos PI Claims,' (i.e., Class 6 claims), goes far beyond individuals who claim personal injury as a result of asbestos exposure causally related to Debtors' operations (and who may have claims on account thereof against numerous defendants in addition to Debtors). Rather, the Plan includes within such definition (thereby classifying entities falling within such definition as Class 6 claimants) "a Claim . . . or any present or future, debt, liability, or obligation . . . against . . . any of the Debtors or Asbestos Protected Parties, including . . . (y) all cross-claims, contribution claims, subrogation claims, reimbursement claims, and indemnity claims . . . whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity, or any other theory of law, equity, or admiralty), in each case for, based on, or arising

#11645332 v3

out of, resulting from, or attributable to, directly or indirectly . . . [injury resulting from asbestos exposure] . . .".  (*Id.* at ¶ 13).  As such, the Plan attempts to classify in Class 6 not only personal injury tort claims, but also any claim of any entity whose claim has any connection whatsoever with an asbestos-related injury, no matter how tangentially and no matter if the claim has nothing to do with the injury itself, but rather is a contract-based claim of an insurer that provided liability protection to Debtors.

Under the Plan, Class 6 Claims are impaired and they can only recover against assets funded into the Asbestos PI Trust, pursuant to a channeling injunction, and can obtain no further recovery from the Debtors.  (*Id.* at ¶ 14; Plan, p. 47).  That is, the Plan provides that "[t]he sole recourse of the Holder of an Asbestos PI Claim on account of such Asbestos PI Claim . . . shall be to the Asbestos PI Trust pursuant to the provisions of the Asbestos PI Channeling Injunction, the Asbestos IP Trust Agreement, and the Asbestos IP TDP." *Id.*  This treatment was confirmed by the Representative at the Trial, wherein he stated "[a]ll of Grace's asbestos personal injury liabilities are channeled to the trust and there are injunctions that protect those who might otherwise be subject to litigation based on those personal injury liabilities."  (9/17/09 Tr. p. 53, lines 22-25 (Austern)).

Debtors have identified the NU Claim as an Indirect PI Trust Claim such that the Plan classifies the NU Claim as a Class 6 claim.  (Longacre Stipulation, LONG Ex. 001 at ¶ 17).  However, Debtors have classified substantially similar claims as Class 9 claims.  On May 15, 2009, the Debtors filed under certification of counsel the Stipulation Regarding Classification Of Claims Of Morgan Stanley Senior Funding, Inc. ("Morgan Stanley") As Assignee of Certain

Claims Of Bank of America, N.A. Under The Plan (D.I. 21722).[4]  The Morgan Stanley

Stipulation classifies in Class 9 certain claims that are similar in nature, kind and character to the

NU Claim.  (Morgan Stanley Stipulation, LONG Ex. 002 at p. 2).  Indeed, the claims that

Debtors place in Class 9 pursuant to the Morgan Stanley Stipulation:  (i) arose from a

reimbursement agreement pursuant to which Debtors were obligated to make reimbursement

payments for draws by National Union on letters of credit posted by Debtors as collateral for

certain surety bonds issued in favor of the Debtors; and (ii) have been allowed pursuant to a prior

stipulation in fixed, liquidated amounts as non-priority, unsecured claims.  (Morgan Stanley

Stipulation, LONG Ex. 002 at pp. 1-3).


**[remainder of page intentionally left blank]**

---

[4]        *See* Exhibit LONG Ex. 002, the Certification Of Counsel Regarding Order Approving Stipulation
Regarding Classification Of Claims Of Morgan Stanley Senior Funding, Inc. As Assignee of Certain
Claims Of Bank of America, N.A. Under The Plan (D.I. 21722) with attached Stipulation Regarding
Classification Of Claims Of Morgan Stanley Senior Funding, Inc. As Assignee of Certain Claims Of Bank
of America, N.A. Under The Plan (the "Morgan Stanley Stipulation").

## ARGUMENT

**I.      The Plan cannot be confirmed to the extent it classifies the NU Claim as a Class 6 claim because such classification is impermissible under section 1122(a) of the Bankruptcy Code.**

The Plan cannot be confirmed in its present form because it improperly classifies the NU Claim with Class 6 claims, even though the NU Claim is an allowed, liquidated, contract-based claim in a fixed amount, liquidated through the Settlement Agreement pursuant to which Debtors have already agreed to provide post-petition interest in the same manner as is provided to holders of Class 9 claims.  Rather than placing the NU Claim in Class 6, which class is designed to channel unresolved asbestos personal injury claims into a trust with limited assets, as is currently proposed, the NU Claim should be classified with other liquidated contract-based claims in Class 9.  Debtors' proposed classification of the NU Claim is improper under section 1122(a) of the Bankruptcy Code and under the terms of the Court-approved Settlement Agreement.

Section 1122(a) provides, with certain exceptions not applicable here, " . . . a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."  11 U.S.C. § 1122(a).  Section 1122(a) requires that claims to be classified together in a plan be 'substantially similar.'  *In re 222 Liberty Assocs.*, 108 B.R. 971, 989 (Bankr. E.D. Pa. 1990); *In re White Horse Grain Co.*, 60 B.R. 16, 18 (Bankr. E.D. Pa. 1986); *In re Bryson Props., XVIII*, 961 F.2d 496, 502 (4th Cir. 1992).  Classification together of similar claims is among the most fundamental principles of Chapter 11.  *In re Gibbs*, 230 B.R. 471, 474 (Bankr. D. Conn. 1999).  Classification is a method of recognizing differences in rights of creditors calling for different treatment for such creditors' claims.  *In re Gillette Assocs., Ltd.*, 101 B.R. 866, 872 (Bankr. N.D. Ohio 1989).

#11645332 v3

To determine whether claims are 'substantially similar' or dissimilar, the courts will focus on the nature and species of the claims at issue. *In re Coram Healthcare Corp.*, 315 B.R. 321, 349 (Bankr. D. Del. 2004) (*citing In re FF Holdings Corp. & Farm Fresh, Inc.*, 1998 U.S. Dist. LEXIS 10741 *13 (D. Del. Feb. 17, 1998)). "The 'primary analysis centers upon the legal attributes of the claims and not upon the status or circumstances of the claimant. Emphasis is not upon the holder so much as it is upon that which is held.'" *Coram*, 315 B.R. at 349 (*quoting In re Northeast Dairy Coop. Fed'n. Inc.*, 73 B.R. 239, 250 (Bankr. N.D.N.Y. 1987)); *see also AOV Indus., Inc.*, 792 F.2d 1140, 1150 (D.C. Cir. 1986) ("[t]he focus of the classification is the legal character of the claim as it relates to the assets of the debtor"); *In re Johnston*, 21 F.3d 323, 327 (9th Cir. 1994) (holding that to decide whether claims are substantially similar for purposes of 1122(a), a court should evaluate nature of each claim, i.e., kind, species or character).

A.    The NU Claim is similar in nature and character to Class 9 claims but is completely dissimilar from Class 6 claims.

It is clear that the NU Claim is substantially similar to Class 9 claims and is completely dissimilar to the tort claims of individuals who have sustained personal injuries as a result of asbestos exposure. The NU Claim is strictly a contract claim. (Longacre Stipulation, LONG Ex. 001 at ¶¶ 5, 20, attaching Settlement Agreement as "Long A"). It is based upon the Debtors' obligations under surety bonds issued by National Union, including Debtors' duties to pay bond premiums and to reimburse National Union for legal expenses and for payouts that were already made in connection with the Debtors' litigation settlements. (Longacre Stipulation, LONG Ex. 001 at ¶¶ 5, 20, attaching Settlement Agreement as "Long A"). Further, the NU Claim has already been allowed in a fixed, certain dollar amount. (Longacre Stipulation, LONG Ex. 001 at ¶¶ 5, 20, attaching Settlement Agreement as "Long A"). In addition, the Settlement

-10-

Agreement provides that the NU Claim will be treated under the Plan 'as an unsecured, pre-petition, non-priority claim,' <u>and</u> that it will receive interest in the event that a Chapter 11 plan contemplates interest to unsecured creditors (as the instant Plan currently contemplates for Class 9 claimants).  (<u>Longacre Stipulation</u>, LONG Ex. 001 at ¶¶ 6, 20, attaching Settlement Agreement as "Long A").

The nature of the NU Claim stands in stark contrast to the great majority of other claims in Class 6, most of which are the direct Asbestos PI Claims, that is, tort claims based upon personal injury related to asbestos exposure.  Because the NU Claim is completely different in nature and legal character from the Asbestos PI Claims, it must be classified as a General Unsecured Claim in Class 9, in accordance with the Settlement Agreement.  The chief distinction between the NU Claim and the Asbestos PI Claims is that the NU Claim is not based upon tort, or personal injury, or asbestos exposure.  It is a *contractual* claim, based upon Debtors' reimbursement obligations under the Surety Bond issued by national Union.  Unlike the Asbestos PI Claims, there is no need to evaluate the extent of any injury, nor to attempt to assign a monetary value to it; rather, the contract-based NU Claim has already been liquidated pursuant to the Settlement Agreement.  Further, no element of negligence underlies the NU Claim.  In 'nature and legal character,' the Claim is no different than other contractual claims properly classified in Class 9.  For purposes of section 1122(a)(4), it makes no difference that the NU Claim is tangentially connected to asbestos exposure insofar as National Union originally issued the Surety Bond to guarantee Debtors' settlement payments to asbestos injury plaintiffs.  This peripheral connection does not make the NU Claim substantially similar to the tort-based claims of Asbestos PI Claimants.  Unlike those negligence-based injury claims (many of which are still unliquidated), the NU Claim is fixed, liquidated, non-contingent, and contractual in nature, and

-11-

Debtors have already agreed to pay interest on the NU Claim consistent with the Plan's treatment of Class 9 claims.

Not only is the nature and character of the NU Claim dissimilar to the Asbestos PI Claims that properly reside in Class 6, the proposed treatment of such class is completely incongruous with contract-based claims such as the NU Claim.  Under the Plan, Class 6 erects a channeling injunction and provides a procedure pursuant to which personal injury claimants, many of whom possess unliquidated claims, the amounts of which cannot presently be known, can recover only against certain trust assets in a fixed amount.  (*Id.* at ¶ 14; Plan, p. 47; 9/17/09 Tr. p. 53, lines 22-25 (Austern)).  This procedure may be practical as applied to unliquidated tort claimants where claims may lie against numerous defendants, so that distributions to other creditors are not delayed pending adjudication of the unresolved Class 6 claims.  It makes no sense, however, with respect to a contract claim such as the NU Claim, which has already been allowed in a fixed amount and which, by Debtors' agreement, has already been determined to be an unsecured, non-priority claim that is entitled to receive interest in the same manner as is contemplated for Class 9 claimants.  (Longacre Stipulation, LONG Ex. 001 at ¶¶ 5, 6, 20). Given the similarity the NU Claim shares with the other liquidated, contract-based general unsecured claims that Debtors classify in Class 9, and its dissimilarity with asbestos tort claims, the Plan violates Bankruptcy Code section 1122(a) to the extent that it places the NU Claim in Class 6 rather than Class 9.  *In re Mahoney Hawkes, LLP*, 289 B.R. 285, 294 (Bankr. D. Mass. 2002) (separate classification of unsecured claims is only justified when the legal character of the claims is such as to accord them a status different from the other unsecured creditors); *In re Gato Realty Trust Corp.*, 183 B.R. 15, 19 (Bankr. D. Mass. 1995) (same); *In re Listani Foods, Inc.*, 329 B.R. 491, 510 (D. N.J. 2005) (same); *see also In re Porcelli*, 319 B.R. 8, 10 (Bankr. M.D.

-12-

Fla. 2004) (holding that plan cannot provide for disparate treatment of claims that have identical legal rights).

      B.      Classification of the NU Claim in Class 6 would be fundamentally inconsistent with the requirements of the Court-approved Settlement Agreement.

      The NU Claim must be classified in Class 6 not only to satisfy the requirements of section 1122(a) of the Bankruptcy Code, but also to remain consistent with the terms of the Settlement Agreement that has already been approved by this Court.  The Settlement Agreement unambiguously provides that if other holders of allowed unsecured claims are receiving post-petition interest under a Plan, the NU Claim must also receive interest from and after the Closing Date under the Settlement Agreement.  (Longacre Stipulation, LONG Ex. 001 at ¶¶ 6, 20, attaching Settlement Agreement as "Long A").  As such, the Settlement Agreement clearly contemplated that the NU Claim would be treated under any Plan in the same manner as all other holders of allowed general unsecured claims.  The only way to reconcile that requirement with the Plan is for the NU Claim to be classified in Class 9.  Classification of the NU Claim in Class 6 rather than Class 9 is fundamentally at odds with the Debtors' obligations under the Settlement Agreement regarding the treatment of the NU Claim.

      Including the NU Claim within Class 6 would not only be improper under section 1122(a) and the terms of the Settlement Agreement, it also would be inequitable and unreasonable.  The interests of true Asbestos PI Claimants, that is, individuals with tort claims based on personal injury, have been represented throughout these proceedings by a Committee of Personal Injury Claimants and even an "Asbestos PI Future Claimants' Representative." (Longacre Stipulation, LONG Ex. 001 at ¶ 20; 9/9/09 Tr. p. 49, lines 22-25 (Austern)); Disclosure Statement, §§ 3.2.3.1.2, 3.2.3.3).  These appointees have not, however, represented

the interests of holders of the general unsecured claims of entities, such as National Union, that are based solely on contract.

      C.      Debtors should be estopped from contradicting the Settlement Agreement by classifying the NU Claim in Class 6 to the detriment of Longacre.

      Given Debtors' promises pursuant to the Settlement Agreement (and indeed, given the plain language of the Settlement Agreement), Debtors should be estopped from now attempting to classify the NU Claim in Class 6 instead of Class 9. "When a party asserts a position inconsistent with a position taken in a previous proceeding, the doctrine of judicial estoppel is implicated." *Donaldson v. Bernstein*, 104 F.3d 547, 555 (3d Cir. 1997) (*citing Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988)). "Judicial estoppel prevents a party from 'playing fast and loose with the courts' by adopting conflicting positions in different legal proceedings (or different stages of the same proceeding)." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 377 (3d Cir. 2007) (*citing Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir. 1990)). Judicial estoppel is appropriate where (i) there is a clear inconsistency between two positions taken by a litigant; and (ii) that such party, if such inconsistency is not estopped, can gain an unfair advantage from the inconsistency. *In re Armstrong World Indus., Inc.*, 432 F.3d 507, 517-18 (3d Cir. 2005). Similarly, the doctrine of equitable estoppel prevents a party from denying a previous representation where: (i) such party makes a representation to another party; (ii) such other party had a right to rely upon such representation; and (iii) denial of the represented fact would result in injury to the relying party. *Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)*, 283 F.3d 159, 164 (3d Cir. 164) (*citing Wheeling-Pittsburgh Steel Corp. v. McCune*, 836 F.2d 153, 162-63 (3d Cir. 1987)).

      Estopping Debtors from classifying the NU Claim in Class 6 is warranted here. In the Settlement Agreement, Debtors agreed that the NU Claim would be treated ". . . as an

unsecured, pre-petition, non-priority claim." (<u>Longacre Stipulation</u>, LONG Ex. 001 at ¶ 3-4, 20, attaching Settlement Agreement as "Long A").  Further, the Settlement Agreement provided that, in the event a Chapter 11 plan provided for the payment of interest to unsecured claims, the NU Claim would also be entitled to interest payments.  (<u>Longacre Stipulation</u>, LONG Ex. 001 at ¶ 3-4, 20, attaching Settlement Agreement as "Long A").  In exchange for the consideration that Debtors promised in the Settlement Agreement, National Union compromised its $46 million-plus NU Claim down to $9,806,018.  National Union and its assignee Longacre are entitled to hold the Debtors to their promises as set forth in the Settlement Agreement that the NU Claim would be treated under any plan as a pre-petition general unsecured claim as well as Debtors' promise to pay interest on the NU Claim.  The clear implication of these promises is that Debtors would classify the NU Claim with all other general unsecured claims.  Now, having shaved some $36 million off of the filed amount of the NU Claim, Debtors attempt to deprive the holder of the NU Claim of the benefit of bargain via classification of the NU Claim in Class 6.  Debtors' position clearly and directly contravenes their agreement in the Settlement Agreement in a transparent attempt to gain a windfall at Longacre's expense, based only upon the tangential connection Debtors allege the NU Claim has with asbestos personal injury claims.  Permitting Debtors to advantage themselves in this manner would severely harm Longacre, who would be denied the distribution to which it is entitled under the NU Claim.  In this situation, both judicial and equitable estoppel are appropriate.

        National Union (and Longacre as the purchaser of the NU Claim) were entitled to rely upon the language of the Settlement Agreement providing the NU Claim was to be treated under the Plan "as an unsecured, pre-petition, non-priority claim" including post-petition interest Given this language, National Union and Longacre had no way of knowing, and had no

reasonable basis for assuming, that the NU Claim would be lumped in with totally dissimilar tort

claims and would not be paid in full.  It would be inequitable, and fundamentally inconsistent

with the Settlement Agreement (and Debtors' representations in connection therewith), to force

Longacre to accept classification of the NU Claim into Class 6 (with the concomitant materially

reduced distribution) based upon the Debtors' unilateral decision respecting classification.  The

NU Claim is fixed and allowed, is based upon Debtors' contractual obligations, is *not* a tort

claim, and Debtors have already agreed in the Settlement Agreement to treat it as a general, pre-

petition, unsecured claim payable with interest to the extent (as is the case here) that other

unsecured claims are paid interest.  Omitting the NU Claim from Class 9, which is the class

where claims that are substantially similar are classified, and placing it in Class 6, which should

be reserved for unliquidated tort claims, is not proper.  *See, e.g., In re National / Northway Ltd.

P'ship.*, 279 B.R. 17, 24-25 (Bankr. D. Mass 2002) (deficiency claim of non-recourse

undersecured creditor was not of different legal character than other general unsecured claims

and could not be separately classified); *In re US Truck Co., Inc.*, 42 B.R. 790, 796 (Bankr. E.D.

Mich. 1984) (plan cannot be confirmed where trade claims and workers compensation claims

were in the same class, because workers compensation claims were materially dissimilar as they

were not fixed but were open-ended in character); *In re EBP, Inc.*, 172 B.R. 241, 244 (Bankr.

N.D. Ohio 1994) (tort judgment claim and claims of unsecured trade creditors are dissimilar such

that separate classification is warranted); *In re One Times Square Assocs. Ltd. P'ship.*, 159 B.R.

695, 704 (Bankr. S.D.N.Y. 1993) (plan that separately classified claims arising from rejection of

signage agreements from other unsecured claims violated section 1122 where neither nature of

creditors' business, debtors' assets nor mechanics of claims justified separate classification).

-16-

D.     Debtors have classified a nearly identical claim in Class 9, but offers no
justification for the disparate treatment of similar claims.

The Debtors' recent agreement to reclassify certain other claims from Class 6 to

Class 9 suggests that the Debtors themselves recognize the impropriety of classifying claims

such as the NU Claim in Class 6.  As noted, *supra*, the Debtors entered into the Morgan Stanley

Stipulation agreeing to classify the Morgan Stanley Claims in Class 9.  (Morgan Stanley

Stipulation, LONG Ex. 002 at pp. 1-3).  Similar to the NU Claim at issue here, the Morgan

Stanley Claims (a) are based on Debtors' contractual obligation to reimburse draws by National

Union on letters of credit posted as collateral for the NU surety bonds, and (b) have already been

allowed in fixed, liquidated amounts as unsecured claims.  *Id.*

Given the substantial similarity between the NU Claim and the Morgan Stanley

Claims, there is no rationale basis for classifying one in Class 6 and another in Class 9.  Indeed,

the basis for the Morgan Stanley Claims are Debtors' reimbursement obligations pertaining to

***the exact same settlements*** in connection with which Debtors' reimbursement obligations to

National Union arose.  (Morgan Stanley Stipulation, LONG Ex. 002 at p. 2).  The Plan purports

to include within Class 6 any and all ". . . reimbursement claims . . . for, based on, or arising out

of, resulting from, or attributable to, directly or indirectly . . .[injury resulting from asbestos

exposure] . . .".  (Longacre Stipulation, LONG Ex. 001 at ¶ 13).  If Debtors contend that this

definition applies to the NU Claim with the result that it must be classified in Class 6, it cannot

be reasonably stated that such definition would not apply equally to the Morgan Stanley Claims.

Those claims, involving the same litigation settlements as the NU Claim, clearly are

'reimbursement claims resulting from' an asbestos related injury.  That Debtors have elected to

place the Morgan Stanley Claims in Class 9 but relegate the NU Claim to Class 6 reveals the

capricious nature of their classification scheme.  The proposed disparate treatment of these

-17-

claims also indicates that Debtors' objective is not proper classification, but rather is an attempt

to gain a windfall.  Because the respective claims have substantially similar bases, and because

both are equally <u>dissimilar</u> to other claims in Class 6, they must both be classified in the same

class.

Since the NU Claim is substantially similar to other contract-based claims that are

in Class 9, Debtors must demonstrate a reasonable and proper purpose for placing it in with the

tort claims in Class 6.  *Coram*, 315 B.R. at 349 (*quoting John Hancock Mut. Life Ins. Co. v.

Route 37 Bus. Park Assocs. (In re Route 37 Bus. Park Assocs.)*, 987 F.2d 154, 158 (3d Cir.

1993)) ("Even though similar claims may be placed in separate classes, plan proponents cannot

do so when it would be unreasonable.  The Third Circuit has held that 'it seems clear that the

Code was not meant to allow [a plan proponent] complete freedom to place substantially similar

claims in separate classes.'"); *In re Cocoran Hosp. Dist.*, 233 B.R. 449, 455 (Bankr. E.D. Cal.

1999) (stating that the requisite business or economic justification for separate classification of

unsecured claims cannot consist solely of Chapter 11 debtor's wish to obtain consenting

impaired class of creditors voting in favor of the plan); *In re Boston Post Road Ltd. P'ship.*, 21

F.3d 477, 483 (2d Cir. 1994) (holding that a Chapter 11 debtor must adduce credible proof of a

legitimate reason for separate classification of similar claims).  Debtors have not offered,

because they cannot offer, any legitimate and compelling reason for including a liquidated

contractual NU Claim in Class 6 with unliquidated personal injury claims.  The Court should

deny confirmation unless the NU Claim is classified in Class 9.

#11645332 v3

## II.    The Plan cannot be confirmed to the extent it classifies claim number 9553 as a Class 6 Claim because such classification would result in claims within the same class being treated differently, which is impermissible under section 1123(a)(4) of the Bankruptcy Code.

Insofar as the Plan classifies the NU Claim as a Class 6 claim, it cannot be confirmed for failure to satisfy section 1123(a)(4) of the Bankruptcy Code.  Under the Debtors' Settlement Agreement with National Union respecting the NU Claim, the NU Claim is entitled to post-petition interest.  Specifically, the Settlement Agreement provides:

> "[i]n the event that any plan or plans of reorganization that the Debtors, or any of them, may confirm in the bankruptcy cases provides for payment of interest on unsecured, pre-petition, non-priority claims, the National Union Claim in the amount allowed herein, shall bear interest at the rate provided in such plan or plans from and after the Closing Date without regard to the date from which interest accrues under the terms of such plan or plans of reorganization."

(Longacre Stipulation, LONG Ex. 001 at ¶¶ 6, 20, attaching Settlement Agreement as "Long A").

While this agreement to pay interest on the NU Claim would comports with the treatment provided by the Plan to Class 9 claimants, who are also receiving interest, it is a substantially different treatment than that which the Plan affords other Class 6 claims, which are not receiving interest payments and are not even being paid in full.  As such, placement of the NU Claim in Class 6 would result in claims in the same class being treated differently, in violation of section 1123(a)(4) of the Bankruptcy Code.

Section 1123(a)(4) requires a Chapter 11 plan to ". . . provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest . . .".  11 U.S.C. § 1123(a)(4) (emphasis added); *see also In re FINOVA Group, Inc.*, 304 B.R. 630, 637 (D. Del. 2004).  'Unequal treatment,' as meant by section 1123(a)(4), can come from either payment of

-19-

different percentage settlements to co-class members or from equal payment tendered for unequal consideration.  *In re AOV Indus., Inc.*, 792 F.2d 1140, 1152 (D.C. Cir. 1986).

Clearly, if the NU Claim is classified in Class 6, Longacre would receive more favorable treatment on account of the NU Claim than will other Class 6 creditors.  That is, the NU Claim would be entitled to a higher distribution than would another Class 6 claim that is allowed in the exact same principal amount as the NU Claim by virtue of the Settlement Agreement's requirement of payment of interest given the treatment the Plan affords to Class 9 claims.  This result would plainly violate section 1123(a)(4).

## JOINDER AND RESERVATION OF RIGHTS

Longacre incorporates by reference its previously filed objections and memoranda of law and joins in other objectors' briefs, memoranda and objections.

## CONCLUSION

The provisions of 11 U.S.C. §§ 1122(a) and 1123(a)(4), as well as the provisions of the Settlement Agreement and general principles of estoppel and equity require that the NU Claim be classified in Class 9 of the Plan.  Otherwise, the Plan plainly cannot satisfy the Code's requirements for confirmation.  Permitting the Plan proponents to classify the NU Claim in Class 6 will have the following results:  (i) the NU Claim will receive a substantially lesser distribution than other, similar, liquidated contract claims, and will be lumped in with substantially *dissimilar* claims in Class 6, in violation of section 1122(a); (ii) the Plan will have to treat the NU Claim substantially differently than other Class 6 claims due to the requirements of the Settlement Agreement, in violation of section 1123(a)(4); (iii) the Plan proponents will be permitted to ignore principles of equity, by allowing treatment of the NU Claim in stark contravention of the treatment that has already been agreed upon pursuant to the Settlement.  Unless the NU Claim is classified in Class 9 under the Plan, the Plan cannot be confirmed.

-20-

Dated:  November 2, 2009
         Wilmington, DE

Respectfully submitted,

PEPPER HAMILTON LLP

David M. Fournier (No. 2812)
James C. Carignan (No. 4230)
John H. Schanne, II (No. 5260)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500

- and –

PEPPER HAMILTON LLP
Robert S. Hertzberg, Esq.
100 Renaissance Center, Suite 3600
Detroit, MI 48243-1157
(313) 259-7110

*Counsel to Longacre Master Fund, Ltd. and Longacre Capital Partners (QP), L.P.*

#11645332 v3