**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |

**ARROWOOD'S PHASE II POST-TRIAL BRIEF IN SUPPORT OF
THE RELIEF TO BE PROVIDED TO IT UNDER THE PLAN OF REORGANIZATION**

Garvan F. McDaniel, Esq. (#4167)
BIFFERATO, GENTILOTTI, LLC
800 N. King Street, Plaza Level
Wilmington, DE 19801
Tel: (302) 429-1900
Fax: (302) 429-8600

- and -

Carl. J. Pernicone, Esq.
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
150 East 42nd Street
New York, New York 10017
Tel: (212) 490-3000

Tancred V. Schiavoni, Esq.
Gary Svirsky, Esq.
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Tel: (212) 326-2000

*Attorneys for Arrowood Indemnity
Company f/k/a Royal Indemnity Company*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 3

    A.    Royal paid Grace $100 million under the 1995 Settlement Agreement for a full release of all asbestos-related claims, including non-products claims .................................................................. 3

    B.    The Court approved the Arrowood Settlement as fair, equitable and reasonable and in the best interest of the Estate ........................................ 4

    C.    The Libby Claimants did not submit any evidence at the Confirmation Hearing to support their objection to Arrowood receiving Section 524(g) protection .......................................................... 9

ARGUMENT .......................................................................................................................... 9

POINT I    ARROWOOD IS ENTITLED TO THE PROTECTIONS OF A SECTION 524(G) INJUNCTION .......................................................... 9

    A.    The Injunction is "Fair and Equitable" Given Royal's Contribution to the Trust .............................................................................................. 10

POINT II    THE LIBBY CLAIMANTS OBJECTIONS TO THE RELIEF THE PLAN AFFORDS TO ARROWOOD ARE BASED ON INCORRECT FACTUAL ASSERTIONS AND UNTENABLE THEORIES OF LAW ........... 12

    A.    The Libby Claimants Have No Legal or Equitable Interest in Grace's Policies ............................................................................... 12

        1.    The Court has recognized that Royal paid Grace $100 million under the 1995 Settlement Agreement for a full release of all asbestos-related claims, including non-products claims .......................................................... 13

        2.    The Libby Claimants do not have vested rights in the Grace Policies under Montana or any other law. ......................... 14

    B.    The Scope of the Proposed Injunction is Not Overly-Broad .................. 19

POINT III    BNSF HAS WITHDRAWN ITS OBJECTION TO EXTENDING SECTION 524(G) PROTECTION TO ARROWOOD ...................................... 21

CONCLUSION ...................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Cloud v. Vance,*
    97 Mich. App. 446 (Mich. Ct. App. 1980) ............................................................................ 17

*In re A. H. Robins Co.,*
    88 B.R. 755 (E.D. Va. 1988) ................................................................................................ 16

*In re Dow Corning Corp.,*
    198 B.R. 214 (Bankr. E.D. Mich. 1996) ................................................................... 16, 17, 18

*In re Forty-Eight Insulations, Inc.,*
    133 B.R. 973 (Bankr. N.D. Ill. 1991) .................................................................................. 16

*Kruzich v. Old Republic Ins. Co.,*
    188 P.3d 983 (Mont. 2008) ................................................................................................. 19

*Madar v. League Gen. Ins. Co.,*
    394 N.W. 2d 90 (Mich. Ct. App. 1986) ............................................................................. 17

*McLane v. Farmers Ins. Exch.,*
    150 Mont. 116 (Mont. 1967) ............................................................................. 15, 16, 17, 18

## STATUTES

11 U.S.C. 524(g) ............................................................................................................... passim

11 U.S.C. § 524(g)(4)(A)(ii) ............................................................................................. 9, 19

11 U.S.C. § 524(g)(4)(B)(ii) ................................................................................................... 9

Arrowood Indemnity Company f/k/a Royal Indemnity Company ("Arrowood") hereby submits this Phase II Post-Trial Brief in support of the relief to be provided to it under the Debtors' First Amended Joint Plan of Reorganization (the "Plan").

## PRELIMINARY STATEMENT

1.     On August 19, 2009, the Court approved a settlement agreement between the Debtors and Arrowood ("the Arrowood Settlement").  Under the terms of the settlement, Arrowood agreed to contribute a package of consideration including a $5.8 million payment to the Trust, terms resolving the status of its indemnification claim and other rights, and the withdrawal of various objections to the Plan.  In exchange, Grace agreed to release Arrowood from any and all obligations under the settled policies, designate Arrowood a Settled Asbestos Insurance Company, as defined in the Plan, and use its best efforts to secure Arrowood the protections of the Section 524(g) injunction to be entered in conjunction with the Plan.

2.     In approving the Arrowood Settlement, the Court found that it was fair, equitable and reasonable, and in the best interest of the Estate.  The Court also found that it was negotiated and proposed in good faith, and fell within the range of reasonableness given the possible litigation outcomes.  The Court, however, reserved for Plan confirmation the issue of whether a Section 524(g) injunction would issue with respect to Arrowood.

3.     Now that the factual record for Plan confirmation is complete, it is clear that Arrowood satisfies the four requirements of Section 524(g):  (i) it is readily identifiable as a protected party by the terms of the Plan; (ii) it is alleged to be indirectly liable for claims against the Debtors; (iii) those claims arise from its provision of insurance to the Debtors; and (iv) it has made a substantial financial contribution to the Trust such that it would be fair and equitable to grant it protection against future claims.

4.     Arrowood and the Plan Proponents have provided abundant evidence, including sworn declarations and deposition testimony, describing the significant package of consideration provided to the Trust by Arrowood.  In fact, not only has the Future Claimants' Representative expressed his full support for extending Section 524(g) protection to Arrowood, but the Court found Arrowood's contribution sufficient to justify the Debtors' consent to an injunction.  The Court also found that Arrowood would not have agreed to provide such consideration absent the promise of Section 524(g) protection.

5.     The Libby Claimants are the only party objecting to the extension of Section 524(g) protection to Arrowood.  They contend that Arrowood has not made a sufficient financial contribution to warrant such protection.[1]  But the Libby Claimants have not submitted a single piece of admissible evidence that calls into question the sufficiency of the consideration provided by Arrowood.  Nor have they provided any evidence that would call into question the Court's prior findings on this issue.  Instead, they rely solely on naked assertions that find no support in the record.

6.     In addition, the Libby Claimants have recycled and reasserted in their trial brief two of the same arguments they raised in opposition to the Arrowood Settlement.  They contend that an injunction may not issue because: (i) the 1995 settlement between Grace and Royal (the "1995 Settlement Agreement") allegedly did not settle non-products coverage, despite Grace and Royal's statements to the contrary; and (ii) they are not bound by the 1995 Settlement Agreement because they allegedly had vested rights in the Royal policies.  Neither of these

---

[1]    The Libby Claimants also challenge the first requirement of Section 524(g) with respect to Royal Parties, as defined in the Arrowood Settlement, other than Arrowood.  *See* Trial Brief of Libby Claimants in Opposition to Confirmation of First Amended Joint Plan of Reorganization, dated July 13, 2009 ("Libby Tr. Br."), at 96 [Dkt. No. 22439].  This objection is also baseless as discussed in Section II.B below.

arguments, however, provides a legitimate basis for denying Arrowood Section 524(g) protection.

7.      *First*, at the settlement approval hearing, the Court explicitly found that the 1995 Settlement Agreement unambiguously settled all asbestos-related claims—*not just products claims*.  The Libby Claimants may prefer to pretend that the hearing never occurred, but the Court's findings, adopted in its approval order, could not be clearer.

8.      *Second*, at the same hearing, the Court rejected the Libby Claimants' novel vested rights theory and correctly observed that insurance proceeds are property of the estate.  The Libby Claimants have not come forward with any new case law that would justify a change in the Court's position on this issue.  Instead, they rely solely on the same inapposite, forty-year-old case cited in their settlement opposition brief.

9.      Given the Libby Claimants failure to raise a valid objection, and BNSF's decision to withdrawn its prior objection, the Court should approve the Plan and grant Arrowood the protections afforded by Section 524(g).

## BACKGROUND

**A.    Royal paid Grace $100 million under the 1995 Settlement Agreement for a full release of all asbestos-related claims, including non-products claims.**

10.     On January 5, 1995, Grace and Royal agreed to settle any and all asbestos-related claims arising under the primary policies issued by Royal to Grace (the "1995 Settlement Agreement").[2]  Under the terms of the settlement, Royal paid Grace $100 million and Grace agreed that there was no more coverage for products claims (since the $6.0 million aggregate limits for such claims had been exhausted) and gave a broad, unconditional and all-

---

[2]   *See* Arrowood Ex. A-34 (Schiavoni Decl.) at ¶ 3.

encompassing release as to any and all past, present and future asbestos-related claims.[3]  In addition, Grace agreed to indemnify Royal for all costs, expenses, and liability in the event a third-party asserted claims under those policies.[4]

11.    Grace and Arrowood are in full agreement that they intended the 1995 Settlement Agreement to cover all asbestos-related claims, including non-products claims.  This understanding is described in the deposition testimony of Grace executives and the declarations submitted to the Court in connection with the hearings on the Arrowood Settlement and Plan confirmation.[5]  In addition, at the settlement approval hearing, the Court explicitly found that the 1995 Settlement Agreement is unambiguous on its face and covers non-products liability.  The Court stated that:

> The documents—both documents, the 1995 settlement and the 2009 agreement are pretty—I think pretty clear.  I don't see a basis for going behind what the 1995 agreement says on its face.  I don't see a reasonable construction that indicates that it does not also cover nonproducts liability.  It clearly does.[6]

12.    No evidence was presented at the confirmation hearing that calls into question the scope of the 1995 Settlement Agreement or the Court's previous findings on this issue.

**B.    The Court approved the Arrowood Settlement as fair, equitable and reasonable and in the best interest of the Estate.**

13.    In addition to the primary policies covered by the 1995 Settlement Agreement, Royal issued two high-level excess policies to Grace (the "Royal Excess Policies").[7]  One of

---

[3]    *Id.*

[4]    *Id.* at ¶ 4.

[5]    *See id.* at ¶ 3; *See* Arrowood's Dep. Designations for Phase II Confirmation Hearing  (Jeff Posner, May 6, 2009 Dep. Tr. 147:20-149:4; Jay Hughes, June 11, 2009, Dep. Tr. 367:6-371:12) (confirming that "Grace had fully and finally released Royal from any further liability for asbestos-related claims under the Grace/Zonolite policies.") [Dkt. No. 22813].

[6]    *See* Arrowood Ex. A-38 (July 27, 2009 Hr. Tr.) at 90:2-7; *see also id.* at 136:3 ("[T]he 1995 settlement agreement is clear on its face.").

[7]    See Arrowood Ex. A-58 (Hooper Decl.) at ¶¶ 3-4 ("The Debtors and Arrowood disputed the extent of Royal's obligations under the one high-level excess policy without an asbestos exclusion.  This policy is Excess Policy

those policies did not contain an asbestos exclusion and was the subject of an ongoing dispute

between Grace and Arrowood until a settlement agreement was reached on June 17, 2009 (the

"Arrowood Settlement").  While the Asbestos Claims Committee ("ACC") and the Future

Claims Representative ("FCR") were not parties to the settlement, they consented in writing to

the Debtors' entry into the agreement.[8]

14.    By motion dated June 17, 2009, and pursuant to Rule 9019, the Debtors sought

Court approval of the Arrowood Settlement.[9]  Under the terms of the settlement, Arrowood

agreed to resolve the status of its indemnification, contribution, and other rights under the 1995

Settlement Agreement, pay $5.8 million to the Trust, drop various objections to the Plan,[10] and

suspend prosecution of its proof of claim.[11]  In exchange, Grace agreed to release Arrowood

from any and all obligations under the Royal Policies, designate Arrowood a Settled Asbestos

Insurance Company, as defined in the Plan, and use its best efforts to secure Arrowood the

protection of a Section 524(g) injunction with respect to all settled policies, including those

settled in 1995.[12]

15.    The Libby Claimants and BNSF (in an untimely fashion) submitted briefs in

opposition to the Arrowood Settlement, and the Court held a settlement approval hearing on July

27, 2009.[13]

---

ED 10271, which is alleged to provide coverage between June 30, 1983 and June 30, 1984.").

[8]    *See* Arrowood Ex.A-34 (Schiavoni Decl.), at Ex. A and B.

[9]    *See* Arrowood Ex. A-39 (Debtors' Motion for an Order Approving Settlement Agreement and Mutual Release with The Royal Parties, dated June 17, 2009 [Dkt. No. 22153]).

[10]    While Arrowood agreed under Section III.I of the Arrowood Settlement to suspend its objections to the Plan, it specifically reserved it rights in Section III.L with respect to contractual indemnity claims it may have against the Debtor or others as a result of claims asserted against Royal by BNSF based on the BNSF policies or direct actions against Royal based on the BNSF policies.  Arrowood continues to reserve its right to join any Plan objection that falls within those provisions.

[11]    *See id*. at ex. A.

[12]    *Id.*

[13]    *See* Libby Claimants' Objection to Debtors' Motion to Approve Settlement with Royal Parties, dated July 10,

16.     At the settlement approval hearing, the Libby Claimants objected to the settlement based on:  (i) the purported failure of the Debtors to obtain additional consideration for the release of unresolved coverage under certain primary policies issued by Royal; (ii) the purported release of insurance coverage in which the Libby Claimants had a vested interest; and (iii) the overly-broad scope of the injunction the Debtors are required to seek at confirmation.[14]  As described in more detail in Points I and II below, the Court firmly rejected the Libby Claimants' first two contentions.[15]  As for the third, the Court reserved the issue for confirmation and found it did not pose a barrier to settlement approval.[16]

17.     BNSF's objection to the Arrowood Settlement was premised entirely on the assertion that it has property rights or other interests in policies that Arrowood allegedly issued to Grace and to which BNSF is not a party.[17]   At the approval hearing, and as described in more detail in Point III below, the Court rejected BNSF's contention as lacking any basis in law, and found that BNSF has no legal or equitable interest in the Grace Policies.  As a result, BNSF has since withdrawn its objection to the settlement.[18]

18.     Among the evidence offered in support of the Arrowood Settlement was the Declaration of Tancred Schiavoni, the attorney responsible for negotiating the settlement on Arrowood's behalf.  Mr. Schiavoni attested to the fact that "the terms of the Arrowood Rule

---

2009 [Dkt. No. 22397] (the "Libby Objections"); Objection of BSNF Railway Company to the Motion for an Order Approving Settlement Agreement and Mutual Release with the Royal Parties, dated July 13, 2009 (the "BNSF Objections") [Dkt. No. 22411].

[14]   *See* Arrowood Ex. A-38 (July 27, 2009 Hr. Tr.), at 95:22-24 (asserting that $5.8 settlement amount was calibrated only with respect to the excess policy); 93:4-95:1 (discussing vested rights theory); 103:10-104:5 (discussing the overbreadth of the proposed Section 524(g) injunction).

[15]   *Id.* at 135:22-139:5.

[16]   *Id.*  at 139:6-11.

[17]   *See* BNSF Objections at ¶¶ 16-30 [Dkt. No. 22411].

[18]   *See* Ex. A-38 (July 27, 2009 Hr. Tr.) at 128, 137, 138; *See* September 16, 2009 Hr. Tr. at 85-87.

9019 Settlement Agreement [were] the product of extensive and comprehensive arm's-length

negotiations, and they reflect[ed] true compromise on the issues by all of the parties thereto."[19]

19.     Mr. Schiavoni also explained that any possible settlement with the Debtors was

conditioned on Arrowood obtaining a release that would cover all settled policies.  He stated

that:

> Arrowood made clear that it would enter into the Arrowood Rule
> 9019 Settlement Agreement and pay the Settlement Amount only
> if it was given certainty that Arrowood and its affiliates would be
> released fully from, and have injunctive protection against, all
> asbestos-related claims that may be based on, or derive from, the
> Subject Insurance Policies, as set forth in the Arrowood Rule 9019
> Settlement Agreement.[20]

20.     This sentiment was echoed by the ACC, who confirmed at the settlement approval

hearing that:

> There has been a lot of discussion that you listened to about it's
> package deal, and certainly, Mr. Schiavoni has made it quire clear
> that whether you want to call it belt and suspenders or otherwise,
> he was adamant that he get a court approved blessing of the scope
> of the release.[21]

21.     While the Libby Claimants objected to both the scope of the release and the

amount of consideration provided by Arrowood, they failed to submit any evidence at the

approval hearing to support their position.  As noted by the ACC at the hearing:

> As an objector, if [the Libby Claimant's counsel is] going to come
> in here and assert that he's valued this package in some way
> differently from what the plan proponents valued it, which is $5.8
> million for a package of give-ups on both sides, he's got some
> obligation to tender that.  He hasn't.
>
> So all we have now is alleged opinion, alleged facts from
> somebody who's put it in a brief and making oral argument on it,
> and that's simply not enough under any rule of evidence that I'm

---

[19]  *See* Arrowood Ex.A-34 (Schiavoni Decl.), ¶ 4.

[20]  *Id.* at ¶ 9.

[21]  *Id.* at 79:23-80:3

aware of to create an issue -- a triable issue of fact or an issue of disputed fact.[22]

22.    After considering the evidence submitted by the Debtors and Arrowood, the Court found that the settlement was in the best interests of the estate and fell within the range of reasonableness for settlements of this type.  The Approval Order states:

> The relief requested in the Motion is in the best interests of the bankruptcy estate, its creditors, and the holders of Asbestos Related Claims against the bankruptcy estate and other parties-in-interest.  The Debtors have demonstrated good, sufficient and sound business purposes and justifications for the relief requested in the Motion.  The settlement and compromise with the Royal Parties embodied in the Agreement is consistent with the reasonable range of litigation outcomes if Debtors were to litigate the matters resolved pursuant to this Order. *The releases to be made by the Grace Parties pursuant to the Settlement Agreement are appropriate and should be approved. The Royal Parties would not have entered into the Settlement Agreement or any of the compromises and settlements contained therein, or agreed to withdraw their objections to the Plan and pay the Settlement Amount, without the benefit of obtaining the releases contained in the Settlement Agreement and the protections of the injunctions contained in the Plan and the Confirmation Order.*[23]

23.    Arrowood has established that the Arrowood Settlement increased the assets available to the Asbestos PI Trust, removed Arrowood as an objector to Plan confirmation, and resolved Arrowood's claims against the estate.[24]  Arrowood has also established that the Debtors' estates and the Trust saved the litigation costs that would have been involved in litigating these matters.[25]  Furthermore, Arrowood is required to make an immediate payment of

---

[22] *See* Arrowood Ex. A-38 (July 27, 2009 Hr. Tr.) at 80:21-25.

[23] *See* Arrowood Ex. A-80 (Order Pursuant to Section 105, 1107, and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure Authorizing and Approving the Debtors Entering Into the Settlement Agreement with the Royal Parties and Denying the Libby Claimants' Motion to Defer Consideration and Compel Discovery ("Approval Order")), dated August 19, 2009 [Dkt. No. 22859] (emphasis added).

[24] *See* Arrowood Ex.A-34 (Schiavoni Decl.), ¶ 22.

[25] *Id.*

$5.8 million into an escrow account within 30 days of the Approval Order becoming final, thus ensuring that the Trust will have immediate access to those funds upon its creation.[26]

**C.    The Libby Claimants did not submit any evidence at the Confirmation Hearing to support their objection to Arrowood receiving Section 524(g) protection.**

24.    Despite the Court's approval of the Arrowood Settlement and its findings regarding the sufficiency of the consideration provided by Arrowood, the Libby Claimants did not submit a single piece of admissible evidence at the confirmation hearings to support their objection to Arrowood receiving Section 524(g) protection.

25.    In contrast, Arrowood submitted numerous pieces of evidence supporting the adequacy of its contribution to the Trust.  For example, it submitted declarations by Kemp Hooper and Tancred Schiavoni attesting to the good faith, arm's-length negotiations that led to the settlement.[27]  It also submitted the declaration of Richard Finke, Grace's Assistant General Counsel, who confirmed that "Grace, the ACC and the Future Claimants' Representative sought as large a cash payment from Arrowood as possible, based on, among other things, Royal's alleged liability under the high-level excess policy without an asbestos exclusion."[28]

**ARGUMENT**

**POINT I**

**ARROWOOD IS ENTITLED TO THE PROTECTIONS
OF A SECTION 524(g) INJUNCTION**

26.    In connection with a Chapter 11 plan of reorganization, Section 524(g) permits a court to enter an injunction protecting third-parties from asbestos-related claims if four conditions are met.  *First*, the third party must be "identifiable from the terms of such injunction

---

[26]  *Id.*

[27]  *See* Arrowood Ex. A-34 (Schiavoni Decl.); Arrowood Ex. A-57 (Pernicone Decl.); Arrowood Ex. A-58 (Hooper Decl.).

[28]  *See* Arrowood Ex. A-35 (Finke Decl.), at ¶ 8.

(by name or as part of an identifiable group)." 11 U.S.C. § 524(g)(4)(A)(ii). *Second*, the third-party must be" alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor." *Id. Third*, the claims against the third-party must arise from one of four specific relationships with the debtor, including "the third party's provision of insurance to the debtor or a related party." *Id. Fourth*, the injunction must be "fair and equitable . . . in light of the benefits provided, or to be provided, to [the asbestos] trust on behalf of . . . such third party." 11 U.S.C. § 524(g)(4)(B)(ii).

27.     It is undisputed that the first three of these conditions are met with respect to Arrowood. Arrowood is readily identifiable in the Plan as a Settled Asbestos Insurance Company, and Exhibit 5 to the Plan lists the policies to which the injunction would apply. Arrowood is also alleged, by the Libby Claimants among others, to be liable for asbestos-related claims against Grace as a result of its provision of insurance.[29]   Accordingly, the only issue for Plan confirmation is whether providing Arrowood with Section 524(g) protection is fair and equitable in light of its contribution to the Plan.

**A.    The Injunction is "Fair and Equitable"
Given Royal's Contribution to the Trust.**

28.     The Arrowood Settlement obligates Arrowood to provide a package of consideration that includes a $5.8 million payment to the Trust, withdrawal of various objections to the Plan, suspension of the prosecution of Arrowood's proof of claim, and resolution of Arrowood's contribution, indemnity, reimbursement and subrogation rights under the 1995 Settlement Agreement.[30]

---

[29]  Libby Tr. Br. at 4 [Dkt. No. 22439].

[30]  *See* Arrowood Ex. A-34 (Schiavoni Decl.) at ¶ 8.

29.    The resolution of Grace's indemnification obligations under the 1995 Settlement

Agreement is especially valuable to the Estate.  The 1995 Settlement Agreement resulted in a

$100 million settlement payment to Grace, but imposed indemnification and other obligations on

the Debtors that entitled Arrowood to damages or other compensatory payments, including

restitution for the amount that any claimants may obtain, legal fees, indemnification, and other

costs and expenses incurred by Arrowood as a result of any claims tendered to Arrowood under

the Royal policies settled by the 1995 Settlement Agreement.[31]  Arrowood's agreement to

resolve those indemnification rights delivered substantial value and resulted in a direct, material,

and significant benefit to the estate—*a benefit repeatedly ignored by the Libby Claimants*.[32]

Hence, in approving the Arrowood Settlement, the Court observed that the release of the

indemnification obligation added "quite a bit of value over and above $5.8 million."[33]  The Court

further noted that:

> To the extent that the settlement incorporates this release for the
> 1995 obligations, the record stands for the proposition that there
> has been adequate consideration and bargained for value in
> exchange.  **It is a package deal**.  I'm not in anyway going to try to
> bifurcate out the components of that package.[34]

30.    The Court also found that Arrowood would not have agreed to provide this

valuable consideration if not for the promise of Section 524(g) protection:

> The Royal Parties would not have entered into the Settlement
> Agreement or any of the compromises and settlements contained
> therein, or agreed to withdraw their objections to the Plan and pay
> the Settlement Amount, without the benefit of obtaining the
> releases contained in the Settlement Agreement and the protections

---

[31] *See* Arrowood Ex. A-46 (Arrowood's Objection to Disclosure Statement), Point I(B), dated November 10, 2008 [Dkt. No. 19991].

[32] *Id.*

[33] *See* Arrowood Ex. A-38 (July 27, 2009 Hr. Tr.), at 79:10-11.

[34] *See* Arrowood Ex. A-38 (July 27, 2009 Hr. Tr.), at 138:23-139:3.

of the injunctions contained in the Plan and the Confirmation Order.[35]

31.      The significance of Arrowood's financial contribution to the Trust is amplified by its limited coverage obligations to Grace.  As the Court observed at the settlement hearing, the 1995 Settlement Agreement fully resolved Royal's coverage obligations under the primary policies issued to Grace.[36]  Thus, the only coverage allegedly remaining for future asbestos-related claims is a single high-level excess policy.[37]  The Debtors' were able to obtain significantly more consideration for the release of that policy by offering Arrowood the protections of Section 524(g) with respect to all settled policies.[38]  This is a fair and equitable bargain that benefits both parties.  Arrowood secures the finality that is so important in the context of asbestos litigation, while Grace receives additional consideration for merely strengthening a settlement it reached nearly fifteen years ago.

## POINT II

### THE LIBBY CLAIMANTS OBJECTIONS TO THE RELIEF
### THE PLAN AFFORDS TO ARROWOOD ARE BASED ON INCORRECT
### FACTUAL ASSERTIONS AND UNTENABLE THEORIES OF LAW.

**A.      The Libby Claimants Have No Legal or Equitable Interest in Grace's Policies.**

32.      In their trial brief in opposition to Plan confirmation, the Libby Claimants recycle and reassert two arguments they previously raised in connection with the Arrowood Settlement. *First*, the Libby Claimants assert that "non-products coverage against Royal Indemnity Company is  . . . unresolved because Grace's prepetition settlement with Royal is limited solely to products claims, leaving non-products coverage intact."[39]  *Second*, they assert that, if Royal's non-

---

[35]  *See* Approval Order dated August 19, 2009 [Dkt. No.  22859] (emphasis added).

[36]  *See* Arrowood Ex. A-38 (July 27, 2009 Hr. Tr.), at 138:2-; Arrowood Ex.A-34 (Schiavoni Decl.) at ¶ 30-32.

[37]  *See* Arrowood Ex.A-34 (Schiavoni Decl.) at ¶ 15.

[38]  *See id.* at ¶ 9; Arrowood Ex. A-38 (July 27, 2009 Hr. Tr.), at 138:2-3.

[39]  Libby Tr. Br., at 48.

products coverage was settled, they "are not bound to Grace's settlement because their rights against [Royal] had already vested at the time of the settlement."[40]   Both of those assertions are incorrect as a matter of fact and law, have been explicitly rejected by the Court, and are not a barrier to approval of an injunction that protects Arrowood.

> 1.    *The Court has recognized that Royal paid Grace $100 million under the 1995 Settlement Agreement for a full release of all asbestos-related claims, including non-products claims.*

33.    Under the terms of the 1995 Settlement Agreement, Royal paid Grace $100 million and Grace agreed that there was no more coverage for products claims (since the $6.0 million aggregate limits for such claims had been exhausted) and gave a broad, unconditional and all-encompassing release as to any and all past, present and future asbestos-related claims.[41]

34.    While the Libby Claimants' asserted at the settlement approval hearing that the 1995 Settlement Agreement is ambiguous, Grace and Arrowood are in full agreement that they intended the 1995 Settlement Agreement to cover all asbestos-related claims, *including non-products claims*.  This understanding is described in the uncontested testimony by Grace executives and declarations submitted to the Court and admitted into evidence in connection with settlement approval and Plan confirmation.[42]  In addition, at the settlement approval hearing, the Court explicitly found that the 1995 Settlement Agreement is unambiguous on its face and covers non-products liability:

> The documents—both documents, the 1995 settlement and the 2009 agreement are pretty—I think pretty clear.  I don't see a basis

---

[40] *Id.* at 46-47.

[41] *Id.*

[42] *See id.* at ¶ 3; *See* Arrowood's Dep. Designations for Phase II Confirmation Hearing (Jeff Posner, May 6, 2009, Dep. Tr. 147:20-149:4; Jay Hughes, June 11, 2009, Dep. Tr. 367:6-371:12 (confirming that "Grace had fully and finally released Royal from any further liability for asbestos-related claims under the Grace/Zonolite policies.") [Dkt. No. 22144].

for going behind what the 1995 agreement says on its face.  ***I don't
see a reasonable construction that indicates that it does not also
cover nonproducts liability.  It clearly does.***[43]

Accordingly, the Court denied the Libby Claimants' request for discovery on this issue.[44]

35.    In light of the Court's findings, it is clear that the Libby Claimants have no legal
or equitable interest in the Grace's Policies.  As a result, a Section 524(g) injunction preventing
the Libby Claimants from pursuing coverage under those policies would not impact their rights
in any way.  Arrowood has agreed to resolve the status of its indemnification, contribution, and
other rights under the 1995 Settlement Agreement, along with $5.8 million, in exchange for the
finality offered by a Section 524(g) injunction.  Thus, the Debtors have obtained a significant
financial contribution in exchange for simply confirming the protections of an earlier settlement,
with no prejudice to the rights of the Libby Claimants or any other third-party.

2.    *The Libby Claimants do not have vested rights in
the Grace Policies under Montana or any other law.*

36.    At the settlement approval hearing, the Libby Claimants' contended that they are
not bound by the 1995 Settlement Agreement because their rights in the primary policies had
vested at the time of injury.[45]  The Court, however, had little trouble rejecting this novel theory,
rightfully observing that it finds no support in the law:

That the debtors could not have settled the policies out from under
the Libby claimants, surely they would have to know who the
Libby claimants were who were contending that they had vested
rights, in order not to make that settlement.

I think everybody's argument that indicates that the beneficiary of
the policy, or the insured, pardon me, under the policy can't settle
its own policies, and then figure out how to deal with who would
have been the beneficiaries in another context, is not correct.

---

[43]    *See* Arrowood Ex. A-38 (July 27, 2009 Hr. Tr.) at 90:2-7; *see also id.* at 136:3 ("[T]he 1995 settlement agreement
is clear on its face.").

[44]    *Id.* at 136:2-8.

[45]    *Id.* at 93:4-95:1.

The insurance stands for the insured. Yes, it is there for beneficiaries in that it gives certain entities a right to pursue insurance coverage, but the insured is the debtor.

The debtor's the one who determines whether or not to continue that insurance, not the beneficiaries under that policy.

To the extent that there may be vested rights, maybe there are. I don't have any way of knowing that there are or are not. But I don't think that's the basis for this determination.

*I'm not aware of, but for a very, I think, odd on its facts case that was cited, any indication by courts that say that the insured's are not permitted to settle policies with the insurance companies.*

*I'm just simply not aware of it, and I can't understand how that could be the case, after all, they're the contracting parties.*

*So if they want to settle their own liability, it seems to me they've got the right to do that. Particularly in a bankruptcy case, where the proceeds of those policies are property of the estate.*[46]

37.    While the Libby Claimants again raise the vested rights argument in their trial brief, and argue that a Section 524(g) injunction cannot cut off their rights against Royal, they fail to identify a single new case that would support modifying the Court's previous findings.[47] To the contrary, the Libby Claimant's again rely on a single Montana Supreme Court decision from 1967 holding that an insurer could not rescind an automobile insurance policy because it "did not meet the requirement that [it] promptly rescind and thus has waived [its] right to void the policy *ab initio.*" *McLane v. Farmers Ins. Exch.*, 150 Mont. 116, 119 (Mont. 1967). In the narrow context where the insured had valid grounds to maintain coverage and failed to assert a defense, the court held that the insured could not "affect the rights of the plaintiff for his rights vested prior to the attempted rescission." *Id.* Essentially, the court refused to allow an automobile owner to effectively waive his insurance coverage at the expense of the party he

---

[46]  *Id.* at 136:21-138:1 (emphasis added).

[47]  *See* Libby Tr. Br., at 46-47.

injured by failing to tender a valid defense against his insurer.  *Id.*   That case, which is as the

Court described "odd on its facts," is a far cry from the current situation.  July 7, 2009 Hr. Tr.

137:16-17.

38.    Here, unlike *McLane*, it is undisputed that Grace sought, in good faith, to

maximize its coverage from Royal and successfully negotiated a *$100 million settlement*.[48]

Moreover, the Court has already found that the $100 million payment was fair and reasonable.[49]

39.    In addition, the Libby Claimants fail to acknowledge in their trial brief more

recent decisions recognizing the long accepted rule that an insured, negotiating in good faith, has

the power to settle coverage disputes.  For example, in the asbestos context, one court found that

"tort claimants have no 'legal or equitable interest' in the insurance policy in the first place, any

more than they do in other property of the estate, so that their property rights are not impaired by

a settlement of the debtor's claim to coverage."  *In re Forty-Eight Insulations, Inc.*, 133 B.R.

973, 978 (Bankr. N.D. Ill. 1991).  Other courts have similarly rejected attacks on coverage

settlements in the mass torts context.  *See*, *e.g.*, *In re A. H. Robins Co.*, 88 B.R. 755, 762 (E.D.

Va. 1988) (rejecting plaintiffs claim that debtor and its insurer improperly settled coverage

litigation and that the tort claimants were third party beneficiaries to that settlement).

40.    Nor do the Libby Claimants cite in their trial brief any persuasive non-Montana

case law supporting their theory.  In contrast, Arrowood and the Debtors have cited *In re Dow*

---

[48] The undisputed record before the Court based on the testimony of those involved is that the 1995 Settlement was negotiated at arms length and in good faith.  *See See* Arrowood's Dep. Designations for Phase II Confirmation Hearing (Jeff Posner May 6, 2009, Deposition Tr.) at 308:8-314:7 [Dkt. No. 22144]. The Libby Claimants do not contest this.  Nor have they offered any evidence that the deal that was struck was anything other then fair and equitable.  *Id.*  Royal made a $100 million payment that was more than ten times its alleged policy limits.

[49] *See* Arrowood Ex. A-38 (July 27, 2009 Hr. Tr.), at 72:14-18 ("Well, as to the 1995 settlement, there is no issue about the fairness. That's been approved. That's a done deal. I don't see any issue about fairness in that capacity, and I'm aware of the -- of the declarations, and I have read them all.").

*Corning Corp.*, 198 B.R. 214 (Bankr. E.D. Mich. 1996), where, in the mass tort context, a

bankruptcy court rejected arguments almost identical to those presented by the Libby Claimants.

41.    In *Dow Corning*, the tort claimants objected to a proposed settlement on the

ground that "each one of its constituents [had] a property interest in the Debtor's insurance

policies." *Id.* at 233.  As a result, "the Debtor [could not] compromise [those] policies by

delivering releases of the tort claimants' individual interests in the policies." *Id.*  Thus, the court

was asked to "determine whether each individual who holds an unliquidated disputed personal

injury claim against the Debtor has a property interest in one or more of the Debtor's insurance

policies which provide coverage for personal injuries." *Id.* at 233-34.

42.    While *Dow Corning* was decided under Michigan law, Michigan recognizes the

same category of third-party insurance rights identified in *McLane*.  For example, in their

settlement opposition brief, the Libby Claimants relied on *Madar v. League Gen. Ins. Co.*, 394

N.W. 2d 90, 93-94 (Mich. Ct. App. 1986), a case decided under Michigan law, which found that

"[r]ights created under an insurance policy become fixed as of the date of the accident" and

"where coverage existed at the time of the accident, no subsequent acts by the parties could void

that coverage."  The *Dow Corning* court also identified several other Michigan decisions

recognizing those rights, including *Cloud v. Vance,* 97 Mich. App. 446, 451 (Mich. Ct. App.

1980), where the court found that "plaintiff had an independent interest in the insurance policy

from the time of the accident."

43.    Notwithstanding Michigan's recognition of these so-called "vested rights," the

court concluded that those rights have two aspects:  "one which is derivative of the rights of the

Debtor in its insurance policies and another which is independent and superior to the Debtor's

rights." *Dow Corning*, 198 B.R. at 242.  The court found, however, that "enforcement of both

17

the derivative aspect and the independent aspect" was foreclosed by the court's determination

"that the settlement of the Debtor's rights in the policies were fair and equitable and made in

good faith."  *Id.*  Moreover, the court found that the "interest amounts to no more than a mere

expectation and does not rise to the level of a constitutionally protected property right."  *Id.*

44.    The court also based its decision on the fact that the Michigan decisions, like

*McLane* in Montana, each involved an insured that had "let the insurers off the hook while

receiving little or no consideration in return."  *Id.* at 240-41.  That key fact pattern stands in stark

contrast to the situation here, where Royal paid $100 million to settle Grace's coverage action.[50]

Under these circumstances, Royal can hardly be said to have been let off the hook by Grace.

45.    Importantly, the *Dow Corning* court also acknowledged the consequences of

applying the Libby Claimants "vested rights" theory beyond the narrow confines of previous

decisions.  The court found that:

> To grant an injured party more than an expectation before receipt
> of judgment would inhibit legitimate settlements.  ***An insurer
> would never be able to settle a coverage suit with its insured
> without impleading the known injured party.***  It is axiomatic that
> the more parties involved, the more difficult it is to settle.  Even
> more troubling is the situation, which exists here, where at the time
> of the proposed settlement there are injured party claimants who
> are not yet known.  ***If each unknown claimant could later sue the
> insurer and not be estopped by a fully litigated judgment against
> its insured or by a fair and equitable settlement, there would be
> no finality to litigation and no realistic likelihood of settlement***.
> Therefore, it is not surprising that there appears to be ***no case***
> where a fair and reasonable settlement entered into in good faith
> between an insurer and insured was subsequently undone by a
> court.

*Id.* at 242 (emphasis added).

46.    As Montana also recognizes a strong public policy favoring settlement, these

concerns weigh heavily against applying *McLane* so as to effectively void good faith settlements.

---

[50]  *See* Arrowood Ex.A-34 (Schiavoni Decl.) ¶¶ 3-4.

*See*, *e.g.*, *Kruzich v. Old Republic Ins. Co.*, 188 P.3d 983,992 (Mont. 2008) ("The public policy of this State is to encourage settlement and avoid unnecessary litigation.  Thus, we have stated that to encourage settlement and preserve the sanctity of . . . settlement agreements, we will reopen such agreements only 'rarely and reluctantly.'").

47.    Because the 1995 Settlement Agreement resolved all asbestos-related claims against Royal, and the Libby Claimants are bound by that settlement, a Section 524(g) injunction preventing the Libby Claimants from pursuing coverage under the settled policies is appropriate.  The Libby Claimants have no legal or equitable interest in the settled policies that would pose a barrier to an injunction, and providing Arrowood with the finality offered by Section 524(g) is fair and equitable given its previous payment of $100 million and its recent contribution of $5.8 million, along with its release of Grace's indemnification obligation.

**B.    The Scope of the Proposed Injunction is Not Overly-Broad.**

48.    In their opposition to the Arrowood Settlement, the Libby Claimants argue that, under the terms of the statute, Arrowood's parent company, Arrowpoint Capital Corp., is not entitled to Section 524(g) protection.[51]  They similarly argue that Arrowood's officers and directors are not entitled to such protection.[52]  The Libby Claimants fail, however, to cite a single case that supports this proposition.

49.    Contrary to the Libby Claimants' assertions, Arrowpoint Capital and Arrowood's officers and directors are entitled to protection under Section 524(g) because they are "identifiable by the terms of the injunction" and may be "allegedly . . . indirectly liable for" Grace's conduct.  11 U.S.C. 524(g)(4)(A)(ii).  The Libby Claimants argument that these partes have not "supplied insurance to the debtor" ignores the theory under which claims against parent

---

[51]  Libby Objections at 12-13.

[52]  *Id.*

corporations and officers and directors would necessarily proceed.  As the Court observed at the

Arrowood Settlement approval hearing:

> When the only connection that the Libby claimants have with
> Royal, is the issuance of an insurance policy.  And, of course, the
> one thing that 524(g) does protect people against, is claims based
> on the provision of insurance to the debtor.
>
> So it seems to me, we've either got a situation here in which the
> 524(g) injunction will be determined to be proper at the end of the
> day, because it applies only to the extent that it applies.
>
> And, I mean*, it's only going to enjoin claims by people who are
> suing officers and directors for insurance coverage.*  That would
> have to be -- that's the only possible claim that one could even
> theorize.

50.     While the Court did not rule on this issue at the approval hearing, its comments

reflect the reality that officers, directors, and corporate parents can only be protected by Section

524(g) to the extent they are sued for claims derived from the settled insurance policies identified

in the Plan.  This could occur, for example, where a claimant attempts to pierce the corporate veil

by arguing that a subsidiary is the alter ego of its parent.  In this circumstance, Section 524(g)

would apply because establishing that the parent issued insurance to the Debtor would be a

prerequisite for the claimant's recovery.

51.     Arrowood does not seek to protect is corporate parent or its officers and directors

from asbestos-related liability unrelated to the policies Arrowood issued to Grace.  It simply

seeks to ensure that creative plaintiffs cannot bypass the injunction by seeking to recover under

the Royal policies from another party.  This is a legitimate concern considering the creativity

plaintiffs have shown in the past in developing novel claims and causes of action in the asbestos

context.

## POINT III

## BNSF HAS WITHDRAWN ITS OBJECTION TO
## EXTENDING SECTION 524(g) PROTECTION TO ARROWOOD

52.     BNSF based its confirmation objections in part on the assertion that it has

property rights or other interests in the Grace Policies.[53]  Despite the fact that BNSF is

indisputably not a party to those policies, it asserted that "[a]s a result of the contractual

indemnity endorsement, BSNF is an 'additional insured' under the policies."[54]  BNSF also

asserted its property interest in the Grace Policies in its late-filed objection to the Arrowood

Settlement.[55]

53.     At the July 27, 2009 settlement approval hearing, the Court addressed BNSF's

argument and found that:

> "To the extent BNSF is contending that it is an additional insured,
> *I cannot see that it's an additional insured*.  Not only does the
> August 1955 letter indicate to the contrary, but in addition, the
> policy itself indicates to the contrary.  The additional insurance
> that the debtor purchased was for the benefit of the debtor, to the
> extent that it ever faced a contractual obligation to BNSF."[56]

54.     BNSF appealed the order approving the Arrowood Settlement, but has since

stipulated on the record without condition that it would withdraw its appeal when certain changes

were made to the Plan that have since been made.  This is memorialized, among other places, on

page 86 through 87 of the transcript of the proceedings on September 16, 2009:

---

[53]  *See* BNSF Tr. Br., at 18 [Dkt. No. 22410].

[54]  *Id.* at 19.

[55]  *See* BNSF Opposition, at 8.

[56]  Arrowood Ex. A-38 (July 27, 2009 Hr. Tr.), at 138:2-8 (emphasis added).

> Arrowood Counsel:  [O]ur overall understanding is that to the extent these plan modifications are accepted by the court, and the parties have consented to it, that BNSF intends to withdraw the notice of appeal that it has filed with respect to the Arrowood settlement, so it would be a net positive . . . .
>
> * * *
>
> BNSF Counsel: Yes, Your Honor. As -- with the proposed revisions the settlement agreement will result in BNSF's objections relating to the scope of the 524(g) injunction and the permissibility of the Section 105(a) injunction , it would resolve all those objections.[57]

55.     Accordingly, BNSF has withdrawn its objection to Arrowood receiving Section 524(g) protection.

## CONCLUSION

56.     For all of the foregoing reasons, the Court should overrule the Libby Claimants objections to the Plan and grant Arrowood the protections of a Section 524(g) injunction.

---

[57]  See Transcript of Sept. 16, 2009 Confirmation Hearing at 85:7-25; 86:1-4 and 86:14-25; and 87:1-16.

Dated:   November 2, 2009
         Wilmington, Delaware

                                   By: /s/ Garvan F. McDaniel
                                       Garvan F. McDaniel, Esq. (#4167)
                                       BIFFERATO, GENTILOTTI, LLC
                                       800 N. King Street, Plaza Level
                                       Wilmington, DE 19801
                                       Tel: (302) 429-1900
                                       Fax: (302) 429-8600

                                       - and -

                                       Carl. J. Pernicone, Esq.
                                       WILSON, ELSER, MOSKOWITZ,
                                       EDELMAN & DICKER, LLP
                                       150 East 42nd Street
                                       New York, New York 10017
                                       Tel: (212) 490-3000

                                       - and -

                                       Tancred V. Schiavoni, Esq.
                                       Gary Svirsky, Esq.
                                       O'MELVENY & MYERS LLP
                                       7 Times Square
                                       New York, New York 10036
                                       Tel: (212) 326-2000

                                       *Attorneys for Arrowood Indemnity
                                       Company f/k/a Royal Indemnity Company*

NY1:1796482.5