# Exhibit A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made by and among W.R. Grace & Co. ("Grace"), on behalf of itself and the Grace Parties (as defined below), and Allianz Underwriters Insurance Company, Allianz SE (formerly known as Allianz Aktiengesellschaft), Allianz S.p.A. (formerly known as Riunione Adriatica di Sicurta S.p.A.), and Fireman's Fund Insurance Company (collectively, the "Allianz Companies"), on behalf of themselves and the Allianz Parties (as defined below). Grace, the Grace Parties, the Allianz Companies, and the Allianz Parties shall be referred to collectively herein as the "Parties."

### RECITALS

WHEREAS, the Allianz Companies issued certain policies of insurance that provide, or are alleged to provide, liability insurance coverage to certain Grace Parties; and

WHEREAS, Claims have been asserted against the Grace Parties alleging injury due to exposure to asbestos and/or asbestos-containing materials ("Asbestos-Related Claims") and the Grace Parties have incurred certain liabilities, expenses, and losses arising out of such Asbestos-Related Claims; and

WHEREAS, the Grace Parties have asserted rights to insurance coverage with respect to Asbestos-Related Claims pursuant to policies of insurance issued by the Allianz Companies to certain Grace Parties, and disputes have arisen between the Grace Parties and the Allianz Companies regarding the Parties' respective rights and obligations under those policies; and

WHEREAS, on or about December 26, 1996, certain Grace Parties entered into a settlement agreement with FFIC resolving disputes with respect to obligations under certain policies of insurance enumerated therein issued by FFIC to certain Grace Parties; and

WHEREAS, in April, 2000, a judgment was entered against Grace in Texas state court in the Edwards Action, under which the Edwards Plaintiffs were awarded damages totaling $38,427,617.78, and post-judgment interest at the rate of 12 percent per annum; and

WHEREAS, to stay execution of the judgment in the Edwards Action while they appealed, Grace and W.R. Grace & Co.-Conn. sought and obtained the Edwards Bond from FFIC in the amount of $43,038,931.91; and

WHEREAS, in connection with issuing the Edwards Bond, FFIC, Grace and W.R. Grace & Co.-Conn. entered into the Edwards Indemnity Agreement; and

WHEREAS, on or about April 2, 2001, Grace, W. R. Grace & Co-Conn., and certain other debtors filed reorganization cases pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, jointly administered as Bankruptcy Case No. 01-01139 (JKF), *et seq.* (the "Bankruptcy Case"), and Grace and such other debtors continue to operate their businesses as debtors and debtors-in-possession; and

WHEREAS, on or about March 28, 2003, FFIC filed the Proof of Claim setting forth its alleged surety claim against Grace with respect to the Edwards Indemnity Agreement and the Edwards Bond; and

WHEREAS, on February 27, 2009, Grace and the other Plan Proponents filed the Joint Plan of Reorganization; and

WHEREAS, FFIC timely filed surety claim-related objections to the Joint Plan of Reorganization; and

WHEREAS, the Allianz Companies objected to the Joint Plan of Reorganization in their capacity as Grace's alleged liability insurers; and

WHEREAS, in consideration of certain monetary payments and other consideration as more fully set forth herein, the Parties intend to adopt, by way of compromise, and without (i) prejudice to or waiver of their respective positions in other matters, (ii) trial or adjudication of any issues of fact or law, or (iii) the Allianz Parties' admission of liability or responsibility under insurance policies issued to Grace Parties, a full and final settlement that, among other things, releases and terminates all rights, obligations, and liabilities (if any) that the Parties may owe one another with respect to Asbestos-Related Claims and any other Claims based on or arising under certain insurance policies issued by Allianz Parties to Grace Parties as more fully set forth in this Agreement.

NOW, THEREFORE, for good and valuable consideration, the Parties agree as follows:

**AGREEMENT**

## I.    DEFINITIONS

The following definitions apply to the capitalized terms wherever those terms appear throughout this Agreement (including the foregoing recitals) or in any attachments hereto.  Capitalized terms in this Definitions Section shall have the meanings ascribed to

them herein. Capitalized terms that are defined in the prefatory paragraph, the preceding recitals, and in the sections below have the meanings ascribed to them therein. Capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in the Joint Plan of Reorganization. Each defined term stated in a singular form includes the plural form, each defined term stated in plural form includes the singular form, and each defined term stated in the masculine, feminine or neuter form includes each of the masculine, feminine and neuter forms. The word "including" means "including but not limited to."

A.      1996 Agreement:  The term "1996 Agreement" means the settlement agreement entered into between certain Grace Parties and FFIC on or about December 26, 1996.

B.      Affiliate:  An "Affiliate" of an Entity means another Entity that is directly or indirectly (through one or more intermediaries) controlled by the first Entity.

C.      Allianz Parties:  The "Allianz Parties" means:

        1.      Each of the liability insurance companies listed on Attachment A to this Agreement;

        2.      All Subsidiaries, divisions, and Affiliates of the liability insurance companies listed on Attachment A to this Agreement, including any Entity in which any of those companies has an ownership interest of fifty percent (50%) or more;

        3.      The directors, officers, agents, attorneys, and employees of the foregoing Entities, solely in their respective capacities as such.

D. <u>Approval Order</u>: The term "Approval Order" means an order of the Court, in form and substance satisfactory to the Parties, approving this Agreement and the compromise and settlement memorialized herein, and approving the sale of the Subject Policies, free and clear of claims and interests, to the Allianz Companies pursuant to Section 363 of the Bankruptcy Code. A draft Approval Order satisfactory to the Parties is attached to this Agreement as Attachment B.

E. <u>Asbestos Claims</u>: The term "Asbestos Claims" has the meaning set forth in the Joint Plan of Reorganization.

F. <u>Asbestos PD Claims</u>: The term "Asbestos PD Claims" has the meaning set forth in the Joint Plan of Reorganization.

G. <u>Asbestos PI Channeling Injunction</u>: The term "Asbestos PI Channeling Injunction" has the meaning set forth in the Joint Plan of Reorganization.

H. <u>Asbestos PI Claims</u>: The term "Asbestos PI Claims" has the meaning set forth in the Joint Plan of Reorganization.

I. <u>Bankruptcy Court</u>: The term "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

J. <u>Claim</u>: The term "Claim" means:

    1. "Claim" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. § 101(5);

    2. "Demand" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. § 524(g)(5); and

    3. Any claim (whether past, present, or future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent,

direct or indirect, matured or unmatured, liquidated or unliquidated, direct or consequential, and whether in law, equity, admiralty, or otherwise), assertion of right, complaint, cross-complaint, counterclaim, affirmative defense, writ, demand, inquiry, request, directive, obligation, suit, lawsuit, action, direct action, cause of action, administrative proceeding, governmental claim or action, order, judgment, settlement, mediation, arbitration, lien, and any other assertion of liability of any kind or subject matter whatsoever (whether related to asbestos or not).  For the avoidance of doubt, "Claim" includes, among other things, any claim arising out of, related to, involving, resulting from, or attributable to asbestos in any form and from any source, including products containing such substances, or to any other substance, product, matter, or material in any form or state.

K.    Confirmation Order:  The term "Confirmation Order" means an order confirming the Joint Plan of Reorganization, when (and only when) issued or affirmed by the District Court in accordance with Section 524(g)(3)(A) of the Bankruptcy Code.

L.    Court:  The term "Court" means the Bankruptcy Court or the District Court, as appropriate.

M.    District Court:  The term "District Court" means the United States District Court for the District of Delaware.

N.    Edwards Action:  The term "Edwards Action" means the suit brought by the Edwards Plaintiffs against Grace and other defendants for asbestos-related personal

injuries, styled *Aaron Clifton Edwards, et al. v. Pittsburgh Corning Corp., et al.*, in the

60th Judicial District Court of Jefferson County, Texas, Cause No. B-150,896-J.

O.    Edwards Bond:  The term "Edwards Bond" means the *supersedeas* bond

No. 11127448824 with the effective date of June 30, 2000 in the amount of

$43,038,931.91, filed by Grace in the Edwards Action, with respect to which FFIC

undertook to act as surety.

P.    Edwards Indemnity Agreement:  The term "Edwards Indemnity

Agreement" means the Specialty Surety Indemnity Agreement entered into by FFIC,

Grace, and W.R. Grace & Co.-Conn dated July 5, 2000 in connection with the Edwards

Bond.

Q.    Edwards Letter of Credit:  The term "Edwards Letter of Credit" means the

Irrevocable Standby Letter of Credit No. LC870-122413 issued by Wachovia Bank, N.A.

on or about July 13, 2000 in the amount of $13,000,000.00, for the benefit of FFIC in

connection with the Edwards Bond.

R.    Edwards Plaintiffs:  The term "Edwards Plaintiffs" means Aaron C.

Edwards, James T. Beam, Edward E. Storey, John M. Thomas, and Sheila Martin,

Individually and as Administratrix of the Estate of Jessie J. Williamson, Deceased, and as

Representative of the Wrongful Death Beneficiaries.

S.    Effective Date:  The term "Effective Date" has the meaning set forth in the

Joint Plan of Reorganization.

T.    Entity:  The term "Entity" means any individual, corporation, limited

liability company, partnership, association, joint stock company, joint venture, estate,

trust, including the Trust as defined in Section I.HH herein, unincorporated organization,

federal, state, local, or foreign government or any political subdivision thereof, or other person or entity.

U.    Execution Date:  The term "Execution Date" means the earliest date on which this Agreement has been signed by all of the Allianz Companies and Grace.

V.    Extra-Contractual Claim:  The term "Extra-Contractual Claim" means any Claim against any Party, seeking any type of relief, including compensatory, exemplary, or punitive damages, on account of alleged bad faith, failure to act in good faith, violation of any duty of good faith and fair dealing, violation of any unfair claims practices act, unfair trade practices act, or similar statute, regulation, or code, or any other similar type of alleged misconduct or omission.  "Extra-Contractual Claim" does not mean Claims for insurance coverage and/or benefits under any insurance policy.

W.    FFIC:  The term "FFIC" means Fireman's Fund Insurance Company.

X.    Final Order:  The term "Final Order" has the meaning set forth in the Joint Plan of Reorganization.

Y.    Grace PI Committees:  The term "Grace PI Committees" means the Asbestos PI Committee and the Asbestos PI Future Claimants' Representative in the Bankruptcy Case.

Z.    Grace Parties:  The term "Grace Parties" means:

1.    Grace;

2.    W.R. Grace & Co-Conn., a Connecticut corporation;

3.    All other Debtors in the Bankruptcy Case;

4.      All Subsidiaries, divisions and Affiliates of the foregoing,

including any Entity in which any of the Debtors has an ownership

interest of fifty percent (50%) or more;

5.      Any Entity on whose behalf Grace or W. R. Grace & Co-Conn. has

the power to release Claims under the Subject Policies; and

6.      The directors, officers, agents, and employees of the foregoing

Entities, solely in their respective capacities as such.

AA.     Joint Plan of Reorganization:  The term "Joint Plan of Reorganization"

means the First Amended Joint Plan of Reorganization Under Chapter 11 of the

Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos

Personal Injury Claimants, the Asbestos PI Future Claimants' Representative and the

Official Committee of Equity Security Holders Dated as of February 27, 2009, including

all exhibits thereto, as such plan has been or may be modified from time to time.

BB.     Post-June 30, 1985 Policies:  The term "Post-June 30, 1985 Policies"

means any and all general liability insurance policies (whether primary, umbrella, or

excess) issued by any of the liability insurance companies listed on Attachment A to

Grace, W.R. Grace & Co.-Conn., and/or any other Debtors in the Bankruptcy Case for

policy periods beginning on or after June 30, 1985, including Allianz Underwriters, Inc.

excess umbrella liability policy No. AUX5202362, issued to W.R. Grace & Co., *et al.*,

for the period June 30, 1985 to June 30, 1986.

CC.     Proof of Claim:  The term "Proof of Claim" means the proof of claim No.

0015175 filed on or about March 28, 2003 by FFIC in the Bankruptcy Case.

DD.    Protocol:  The term "Protocol" shall refer to the Edwards Bond Release Protocol appended hereto as Attachment C.

EE.    Subject Policies:  The term "Subject Policies" means:

1.    The insurance policies listed on Attachment D hereto; and

2.    Any and all general liability insurance policies (whether primary, umbrella, or excess) issued by any of the liability insurance companies listed on Attachment A to any of the Entities identified in Sections I.Z.1, I.Z.2, I.Z.3, and I.Z.4 for policy periods beginning prior to June 30, 1985 that are not listed on Attachment D.

FF.    Subsidiary:  A "Subsidiary" of an Entity means a corporation as to which the Entity owns shares of common stock and exercises control through the voting power of such stock.

GG.    Trigger Date:  The term "Trigger Date" means the first date upon which all of the conditions precedent to the Allianz Companies' payment obligation have been met, as provided in Section II of this Agreement.

HH.    Trust:  The term "Trust" means the "Asbestos PI Trust" as defined in the Joint Plan of Reorganization, or such other trust as may be established under Section 524(g) of the Bankruptcy Code to process and pay Asbestos PI Claims pursuant to a plan of reorganization filed by Grace and the Grace PI Committees.

## II.    CONDITIONS PRECEDENT TO ALLIANZ COMPANIES' PAYMENT OBLIGATION

A.    The Allianz Companies' obligation to pay the "Settlement Amount" (as defined below) as set forth in Section III of this Agreement is conditioned upon the occurrence of all of the following conditions precedent:

1.    The receipt by the Allianz Companies of written approval of the

terms of this Agreement and the releases contained herein from the

authorized representatives of the Grace PI Committees; and

2.     The Approval Order being entered by the Court and becoming a

Final Order; and

3.     The occurrence of the Effective Date; and

4.     The release by the Edwards Plaintiffs of any and all rights or

claims they now or in the future may have under the Edwards

Bond; and

5.     Either (a) the return of the released Edwards Bond to counsel for

FFIC at the address set forth in Section XV, below, or (b) the entry

of an order by the court in the Edwards Action declaring the

Edwards Bond to be null and void and of no further force or effect.

B.     Grace will take all steps necessary to comply with the terms of the

Protocol.

C.     The Allianz Companies shall have the right, in their absolute and sole

discretion, to waive any one or more of the conditions precedent set forth in this Section

II.

## III.    PAYMENT OF SETTLEMENT AMOUNT

A.     Within thirty (30) days after both the Trigger Date has occurred and Grace

or the Trust has so notified the Allianz Companies, or within thirty (30) days after the

Effective Date has occurred, whichever is later, the Allianz Companies shall pay to the

Trust the sum of Thirty-Six Million Five Hundred Thousand United States Dollars

($36,500,000.00) (the "Settlement Amount") in immediately available funds. The Allianz Parties shall have the right to allocate the Settlement Amount among themselves.

B.     Payment of the Settlement Amount to the Trust shall be made by one or more wire transfers from the Allianz Companies that taken together total the Settlement Amount. Wire transfer(s) shall be sent in accordance with instructions to be provided to the Allianz Companies by the Trust.

C.     The portion of the Settlement Amount paid by a particular Allianz Company pursuant to this Section III shall not be indicative of, nor used or argued allegedly to demonstrate that the particular Allianz Company allegedly owed a particular amount, if anything, under the Subject Policies.

## IV.    RELEASES

A.     <u>Mutual Releases of Rights, Claims, and Obligations Under the Edwards Bond, Edwards Letter of Credit, and Edwards Indemnity Agreement</u>. Effective upon the Trigger Date, and subject to the terms of this Agreement, the Allianz Parties and the Grace Parties irrevocably and forever remise, release, covenant not to sue, and discharge each other from and with respect to:

1.     Any and all claims, rights, title, and interests they may have in or with respect to the Edwards Bond;

2.     Any and all claims, rights, title, and interests they may have in or with respect to the Edwards Letter of Credit; and

3.     Any and all claims, rights, title, and interests they may have in, or with respect to, and obligations under, the Edwards Indemnity Agreement.

Notwithstanding the foregoing, the Allianz Parties are not releasing any rights to, and Grace shall not be relieved of its obligation to pay, premiums that are currently owed or that will become due to FFIC under the Edwards Bond until such time that the Texas Court of Appeals has released the Edwards Bond, or declared the Edwards Bond to be null and void, and discharged FFIC's obligations thereunder. Notwithstanding the foregoing, nothing in this Agreement shall affect any Claim (whether direct or indirect) of Wachovia Bank, N.A. against Grace (including without limitation any Claim for any amounts drawn pursuant to the Edwards Letter of Credit or otherwise owing by Grace in connection with the Edwards Letter of Credit), the treatment of such Claims under the Joint Plan of Reorganization, or any defenses that any of the Grace Parties or the Trust may have to any such Claims.

B.      Release of Allianz Parties by Grace Parties and the Trust. Upon the Trust's receipt of payment of the Settlement Amount in accordance with Section III of this Agreement, the Grace Parties, and the Trust irrevocably and forever remise, release, covenant not to sue, and discharge the Allianz Parties, along with their predecessors in interest and successors in interest, from and with respect to:

1.      All Claims for insurance coverage and/or other obligations under, based on, or arising out of the Subject Policies, including, but not limited to, Claims based on or arising out of Asbestos Claims and/or any other subject matter; and

2.      All Extra-Contractual Claims based on or arising out of the Claims released pursuant to Section IV.B.1 above; and

3.    Any Claim for insurance coverage for Asbestos Claims under, based on, or arising out of the Post-June 30, 1985 Policies;

*provided, however,* that the releases provided for in this Section IV.B shall not relieve the Allianz Companies of any of their obligations under this Agreement. For the avoidance of doubt, and without limitation, effective upon the Trust's receipt of payment of the Settlement Amount in accordance with Section III of this Agreement, the Grace Parties and the Trust shall be deemed to have fully released and extinguished all past, present, and future Claims against the Allianz Parties under, based on, arising out of, and/or in connection with, or in relation to the Subject Policies. Effective upon the Trust's receipt of payment of the Settlement Amount in accordance with Section III of this Agreement, the Allianz Parties shall have no further obligations to the Grace Parties or the Trust based on, arising out of, and/or in connection with, or in relation to the Subject Policies.

C.    <u>Release of Grace Parties and the Trust by Allianz Parties</u>. Upon the Trust's receipt of payment of the Settlement Amount in accordance with Section III of this Agreement, the Allianz Parties remise, release, and forever discharge the Grace Parties and the Trust, along with their predecessors in interest and successors in interest, from and with respect to:

1.    All obligations under, based on, or arising out of the Subject Policies, including obligations to pay any premiums, deductibles, self-insured retentions, retrospective premiums, or other similar charges;

2.    All Extra-Contractual Claims based on or arising out of the Claims released pursuant to Section IV.C.1 above; and

3.      Any Claim relating to insurance coverage for Asbestos Claims

under, based on, or arising out of the Post-June 30, 1985 Policies;

*provided, however,* that the releases provided for in this Section IV.C shall not relieve the

Grace Parties or the Trust of any of their obligations under this Agreement, and Grace

shall not be relieved of its obligation to pay premiums that are currently owed or that will

become due to FFIC under the Edwards Bond until such time that the Texas Court of

Appeals has released the Edwards Bond, or declared the Edwards Bond to be null and

void, and discharged FFIC's obligations thereunder.

D.      Notwithstanding anything in Section IV.C above to the contrary, in the

event that a Claim for indemnification arises under the 1996 Agreement that is based on

or arises out of an Asbestos PI Claim or an Asbestos PD Claim, such Claim for

indemnification shall not be deemed released pursuant to Section IV.C above, shall be

treated as an Indirect PI Trust Claim or an Indirect PD Trust Claim, as applicable, and

shall be subject to the claims processing, approval, and payment procedures of the Joint

Plan of Reorganization and the applicable Plan Documents.  For the avoidance of doubt,

all Claims for indemnification arising under the 1996 Agreement that are not Indirect PI

Trust Claims or Indirect PD Trust Claims will be treated under the Joint Plan of

Reorganization in the same manner as any other Claims for indemnification that are not

Indirect PI Trust Claims or Indirect PD Trust Claims.

E.      Upon the Trust's receipt of payment of the Settlement Amount by the

Allianz Companies in accordance with Section III of this Agreement, the Parties hereto

intend to reserve no rights or benefits whatsoever under or in connection with the Subject

Policies, and any and all rights, duties, responsibilities, and obligations of the Parties

created by or in connection with the Subject Policies are terminated. Payment of the

Settlement Amount to the Trust by the Allianz Companies shall be deemed by the Parties

to fully and properly exhaust all limits of liability, including without limitation all per-

occurrence and aggregate limits under the Subject Policies. When effective, the releases

contained in this Section IV, subsections B and C, are intended to operate as if the

Subject Policies had never been issued by any of the Allianz Companies to any Grace

Party.

      F.     The Parties understand and acknowledge that (1) Claims that have been or

may be asserted against Grace and/or the Trust may increase or decrease in amount or in

severity over time and may include progressive, cumulative, unknown, and/or unforeseen

elements, and (2) there may be hidden, unknown, and unknowable damages, defense

expenses, or other costs related to such Claims. Each of the Parties acknowledges and

agrees that it nevertheless willingly enters into this Agreement, including the releases set

forth in this Section IV.

      G.    THE PARTIES ACKNOWLEDGE THAT THEY HAVE BEEN

ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH,

CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND

ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH

PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS

WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR

HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN

BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER

SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR

STATE STATUTE OR LAW OF SIMILAR EFFECT. THE PARTIES EXPRESSLY
ASSUME THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES, OR THINGS
MAY HAVE OCCURRED THAT THEY DO NOT KNOW OR DO NOT SUSPECT TO
EXIST.

**V.    RELEASE OF SUBROGATION AND CONTRIBUTION CLAIMS AND
JUDGMENT REDUCTION CLAUSE**

A.    <u>Payments Made Under This Agreement</u>. None of the Allianz Companies
shall seek reimbursement of any payments any of the Allianz Companies made to or for
the benefit of any Grace Party or the Trust under this Agreement, whether by way of a
Claim for contribution, subrogation, indemnification, or otherwise, from anyone other
than the Allianz Companies' reinsurers or retrocessionaires in their capacity as such,
except as provided in this Section V.A below. Notwithstanding the foregoing, if a third
party pursues a contribution, subrogation, indemnification, or similar Claim against any
of the Allianz Parties relating to the subject matter of this Agreement, then that Allianz
Party shall be free to assert such a Claim against such third party, to the extent permitted
by the Joint Plan of Reorganization. To the extent any Allianz Party recovers any amount
from such third party, the net proceeds of such recovery (after any payment made by the
Allianz Party to such third party on its Claim and after the Allianz Party is reimbursed
from such proceeds for its actually billed and paid fees, costs, and expenses incurred in
prosecuting or defending such Claim) shall be paid by the Allianz Party promptly to the
Trust. The Parties and the Trust shall use reasonable best efforts to obtain from all
insurers with which they settle agreements similar to those contained in this Section V.A.

B. <u>Payments Received From Other Insurers</u>. Following payment by the Allianz Companies of the Settlement Amount as provided in Section III of this Agreement, in the event that:

    1. Grace or the Trust, as applicable, and/or any other Entity becomes entitled to receive a payment from one or more insurers other than the Allianz Parties for any Claims that have been remised, released, and forever discharged as against any of the Allianz Parties pursuant to this Agreement; and

    2. As a result of such other insurer's obligation to pay described in Section V.B.1 above, such insurer either:

        a. enters into a settlement with any of the Allianz Parties, which settlement has been consented to by Grace or the Trust, as applicable (such consent not to be unreasonably withheld), and any other Entity (as applicable), requiring the Allianz Parties to reimburse some or all of the payment made or to be made by such insurer; or

        b. obtains a final, non-appealable judicial or quasi-judicial determination or award that such insurer is entitled to obtain a sum certain from any of the Allianz Parties for contribution, subrogation, or indemnification or other similar Claim, against any of the Allianz Parties for their alleged share or equitable share, or to enforce subrogation

rights, if any, relating to such payment referenced in Section V.B.1 above;

then Grace, the Trust, or such other Entity entitled to receive such payment shall voluntarily reduce the amount of payment to be received by it (referred to in Section V.B.1 above) or its claims against the other insurers by the amount necessary to eliminate such settlement, claim, determination, or award against the Allianz Parties (referred to in Section V.B.2 above).

To ensure that such a reduction is accomplished, the Allianz Parties shall be entitled to assert this Section V as a defense to any action against them for any such portion of the determination or award against the Allianz Parties (referred to in Section V.B.2 above) and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect the Allianz Parties from any liability for the determination or award. Grace or the Trust, as applicable, agrees that in any proceeding against insurers other than the Allianz Parties in which Grace or the Trust, as applicable, and/or any other Entity makes a claim for insurance rights or benefits for any Claim that may give rise to the events referenced in Section V.B.1 above, it will provide notice to the Allianz Parties of such Claim within thirty (30) days after the time Grace or the Trust, as applicable, first becomes aware that such Claim is reasonably likely to result in a Claim against the Allianz Parties and shall consent to the Allianz Parties' intervention in any such proceeding to the extent that the Allianz Parties seek to intervene to effectuate the intent of this Section V.

## VI.   BANKRUPTCY OBLIGATIONS

A.      Grace PI Committees' Approval.  By executing this Agreement, the Allianz Parties acknowledge receipt of written consent to the Agreement and the releases contained herein from the Grace PI Committees, in form and substance satisfactory to the Allianz Parties.  A form of written consent satisfactory to the Allianz Parties is attached to this Agreement as Attachment E.

B.      Approval Motion.  Within three (3) business days after the Execution Date, Grace shall prepare and file a motion seeking entry of the Approval Order with the Court, which motion shall be in form and substance satisfactory to the Parties.  A form of motion satisfactory to the Parties is attached to this Agreement as Attachment F.  Grace shall use its reasonable best efforts promptly to obtain entry of the Approval Order, and promptly to obtain entry of the Approval Order as a Final Order.  The Allianz Companies, at their own expense, shall cooperate with Grace in obtaining the Approval Order.

C.      Approval Order.  Grace shall use its reasonable best efforts to cause the Court to enter the Approval Order providing, among other things:

1.      That the terms of this Agreement are approved in their entirety, and that Grace is authorized to take all actions necessary to implement the terms of the Agreement;

2.      That, after entry of the Approval Order, but in no event later than within 5 (five) business days after entry of the Confirmation Order, this Agreement shall be designated in the Joint Plan of Reorganization as an Asbestos Insurance Settlement Agreement

and that (i) the Allianz Companies and (ii) the Allianz Parties, to the fullest extent that such Allianz Parties are eligible for protection under Bankruptcy Code Section 524(g), shall be designated in the Joint Plan of Reorganization as Settled Asbestos Insurance Companies with respect to Asbestos Claims under the Subject Policies, subject to the provisions of Section VI.D;

3.  That, upon the Trust's receipt of payment by the Allianz Companies of the Settlement Amount in accordance with Section III of this Agreement, the Grace Parties shall be deemed to have sold, conveyed, assigned, transferred, and delivered to the Allianz Parties, and the Allianz Parties shall be deemed to have purchased from the Grace Parties, all rights, title, and interests of the Grace Parties in and under the Subject Policies, free and clear of liens, encumbrances, and/or interests of any kind or nature whatsoever, under Section 363(f) of the Bankruptcy Code, and that the Allianz Parties shall be entitled to the protections of Section 363(m) of the Bankruptcy Code; and

4.  That the Trust, upon the Effective Date, shall be bound by this Agreement as a Party to this Agreement.

D.  <u>Designation of the Allianz Parties as Settled Asbestos Insurance Companies</u>. After entry of the Approval Order, but in no event later than within 5 (five) business days after entry of the Confirmation Order, Grace shall designate this Agreement as an Asbestos Insurance Settlement Agreement, and (i) the Allianz

Companies and (ii) the Allianz Parties, to the fullest extent that such Allianz Parties are

eligible for protection under Bankruptcy Code Section 524(g), as Settled Asbestos

Insurance Companies, with respect to Asbestos Claims under the Subject Policies on

Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization. The foregoing

sentence notwithstanding, should Grace propose modifications or amendments to the

Plan after entry of the Approval Order but before entry of the Confirmation Order, the

designations set forth in the preceding sentence shall be made at the same time as such

modifications or amendments. The amendment may set forth as conditions subsequent to

such designation that: (1) the Approval Order and Confirmation Order have become

Final Orders, and (2) the Trust shall have received the Settlement Amount in accordance

with Section III of this Agreement.

     E.    <u>Sale Pursuant to Section 363(f)</u>.  Upon the Trust's receipt of payment by

the Allianz Companies of the Settlement Amount as provided in Section III of this

Agreement, and without need for further action, the Grace Parties shall be deemed to

have sold, conveyed, assigned, transferred, and delivered to the Allianz Parties, and the

Allianz Parties shall be deemed to have purchased from the Grace Parties, all rights, title,

and interests of the Grace Parties in and under the Subject Policies, free and clear of all

liens, encumbrances, and/or interests of any kind or nature whatsoever, to the extent

permitted under Section 363(f) of the Bankruptcy Code. The Settlement Amount

represents the full purchase price of the Subject Policies, and reflects payment for

amounts that Grace and/or the Trust are or may be legally obligated to pay on account of

liability for Asbestos Claims. The Parties agree that the Settlement Amount is at least

equal to the fair value of the Subject Policies.

F.    Trust as Party.  Upon the Effective Date, the Trust automatically and without need for further action shall become a Party to this Agreement.

G.    Suspension of Bankruptcy-Related Activities.  Effective upon the Execution Date, the Allianz Companies: (1) shall suspend prosecution of all of their objections to the Joint Plan of Reorganization or plan-related documents, to confirmation of the Joint Plan of Reorganization, or to the Debtors' or Grace PI Committees' motions or applications pending in the Bankruptcy Case (including any appeals of decisions in the Bankruptcy Case); (2) shall suspend prosecution of the Proof of Claim; (3) shall suspend all action with respect to the lift-stay motion filed in connection with the Edwards Bond; (4) shall take no further actions of any nature (including filing new objections to the Joint Plan of Reorganization and initiating or taking discovery) that may hinder, delay, or oppose actions of Debtors or the Grace PI Committees in the Bankruptcy Case; and (5) shall not oppose the entry of a Confirmation Order; *provided, however,* that in the event that the Bankruptcy Court does not issue an Approval Order or the Approval Order does not become a Final Order, Allianz Companies may (a) renew prosecution of their Proof of Claim, in which event any filing deadlines shall be deemed to have been tolled with respect thereto, and (b) renew prosecution of their objections to the Joint Plan of Reorganization, to the extent practical consistent with the Court's scheduling orders, including participating at closing argument even if the Allianz Companies have not filed any post-trial brief or briefs.  Likewise, effective upon the Execution Date, Grace shall suspend any action regarding the lift-stay motion filed in connection with the Edwards Bond, the Allianz Companies' plan objections, and the Proof of Claim.  The Parties shall grant each other reasonable extensions of time and/or continuances to ensure that they

direct their attention to promptly obtaining an Approval Order that becomes a Final Order. Nothing in this Agreement shall preclude any Party from complying with any deadline established by statute, rule, or court order with respect to which the Parties cannot, working together with reasonable best efforts, obtain an extension or continuance.

If the Approval Order has not been entered, or has not become a Final Order, by the time that the Bankruptcy Court enters a Confirmation Order, the Allianz Companies shall have the right to file, or join in, any notice of appeal of the Confirmation Order, and to file, or join in, a brief seeking reversal of any Confirmation Order; *provided, however,* that the Allianz Companies shall withdraw with prejudice any such notice of appeal, joinder, brief, and/or any other related document within 3 (three) business days following the Approval Order becoming a Final Order.

H.    Withdrawal of Objections and Proof of Claim.  Upon the Approval Order becoming a Final Order, the Allianz Companies (1) shall withdraw all of their objections to the Joint Plan of Reorganization or plan-related documents, to confirmation of the Joint Plan of Reorganization, and to the Debtors' or Grace PI Committees' motions or applications pending in the Bankruptcy Case (including any appeals of decisions in the Bankruptcy Case), and (2) expressly consent to the assignment of Asbestos Insurance Rights as provided in the Asbestos Insurance Transfer Agreement, Exhibit 6 to the Joint Plan of Reorganization.  After both the Approval Order becomes a Final Order and the Effective Date occurs, the Proof of Claim will be deemed withdrawn with prejudice.

## VII.    TERMINATION

A.    After the Execution Date, this Agreement shall terminate upon the occurrence of any of the following events:

1.      The Parties, despite their reasonable best efforts working together, fail to obtain an Approval Order that becomes a Final Order;

2.      The failure of the Effective Date to occur, coupled with circumstances that make clear that the Effective Date will never be reached; or

3.      The entry of an order by the Bankruptcy Court that becomes a Final Order dismissing the Bankruptcy Case or converting it into a Chapter 7 case.

B.      After the Execution Date, the Allianz Companies shall have the option to terminate this Agreement by providing written notice of termination to Grace and the Grace PI Committees within forty-five (45) days of the occurrence of any of the following events:

1.      The failure of Grace to designate this Agreement as an Asbestos Insurance Settlement Agreement, and (i) the Allianz Companies and (ii) the Allianz Parties, to the fullest extent that such Allianz Parties are eligible for protection under Bankruptcy Code Section 524(g), as Settled Asbestos Insurance Companies, with respect to Asbestos PI Claims under the Subject Policies on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization in accordance with Section VI.D;

2.      The confirmation of a Chapter 11 plan of reorganization other than the Joint Plan of Reorganization that materially and adversely

affects the Allianz Parties' interests under or in connection with this Agreement; or

3.    The Bankruptcy Court enters one or more orders that deny the (i) the Allianz Companies and (ii) the Allianz Parties, to the fullest extent that such Allianz Parties are eligible for protection under Bankruptcy Code Section 524(g), the protections of the Asbestos PI Channeling Injunction.

C.    In the event of Grace's failure to obtain the Edwards Plaintiffs' release of any and all right or Claims that the Edwards Plaintiffs may have against the Edwards Bond by the second anniversary of the Effective Date, the Allianz Companies shall, within forty-five (45) days thereafter, notify Grace, the Trust, and the Grace PI Committees in writing, either (1) that the Allianz Companies elect to terminate this Agreement, or (2) that the Allianz Companies waive the conditions to payment set forth in Sections II.A.4 and II.A.5.

D.    In the event that this Agreement is terminated in accordance with this Section VII:

1.    This Agreement shall be of no further force and effect, and the Parties shall have no further obligations under this Agreement, except the obligations set forth in Section XIV, which shall survive termination;

2.    The releases set forth in Section IV of this Agreement shall be of no force and effect, and for the avoidance of doubt, the Allianz Companies shall have no obligation to pay the Settlement Amount;

3.     Except as otherwise provided in the 1996 Agreement, the Subject

Policies shall have the same force and effect as if this Agreement

had never existed, and the Parties shall have all of the rights,

defenses, and obligations under or with respect to the Subject

Policies, if any, that they would have had if this Agreement had

never existed;

4.     The 1996 Agreement shall remain in full force and effect; and

5.     The Edwards Bond, Edwards Indemnity Agreement, and Edwards

Letter of Credit shall have the same force and effect as if this

Agreement had never existed, and the Parties shall have all of the

rights, claims, defenses, and obligations under or with respect to

the Edwards Bond, Edwards Indemnity Agreement, and Edwards

Letter of Credit, if any, that they would have had if this Agreement

had never existed.

Notwithstanding the foregoing, in the event that termination under this Section VII

occurs after the Confirmation Order becomes a Final Order, termination of this

Agreement shall not affect the resolution of Claims and rights as determined by the

Confirmation Order.

## VIII.  DEFENSE OF ASBESTOS PI CHANNELING INJUNCTION

A.     Following the payment of the Settlement Amount by the Allianz

Companies in accordance with Section III of this Agreement, if any Entity asserts against

any of the Allianz Parties a Claim that is subject to the Asbestos PI Channeling

Injunction based on or arising under the Subject Policies (an "Allianz Channeling

Injunction Claim"), the Trust shall expend reasonable best efforts, at its own expense, to establish that such Allianz Channeling Injunction Claim is enjoined as to the Allianz Parties and channeled to the Trust pursuant to the Asbestos PI Channeling Injunction and Section 524(g) of the Bankruptcy Code.  In no event, however, shall the Trust be required to expend an amount greater than the Settlement Amount in carrying out its obligation under this Section VIII.A.  When the Trust has expended an amount equal to the Settlement Amount in defending the application of the Asbestos PI Channeling Injunction to Allianz Channeling Injunction Claims, the Trust shall have no further obligation under this Section VIII.A.  For the avoidance of doubt, this Section VIII.A. shall not obligate the Trust to retain counsel to represent the Allianz Parties or to pay the costs and expenses, including attorneys' fees, associated with such legal, consulting, or expert representation as the Allianz Parties may choose to engage in connection with any Claim against the Allianz Parties.

B.　　Within thirty (30) days of the Allianz Parties' receipt of any Claim, demand, notice, summons, or other process received by an Allianz Party that the Allianz Parties reasonably believe is an Allianz Channeling Injunction Claim, the Allianz Parties shall forward such Claim, demand, notice, summons, or other process to the Trust.  The Trust shall notify the Allianz Parties in writing within fifteen (15) business days of its receipt of notice of such Claim as to whether the Trust agrees that such Claim is an Allianz Channeling Injunction Claim.  If the Trust determines that a Claim presented by the Allianz Parties is not an Allianz Channeling Injunction Claim, the Trust shall not be obligated to undertake to defend the application of the Asbestos PI Injunction as to such Claim.  In the event of a dispute as to whether a Claim triggers the Trust's obligations

under Section VIII.A, the Trust and the Allianz Parties shall meet and confer to attempt

to resolve any such dispute.  If they are unable to resolve such dispute through meeting

and conferring, they may litigate the issue before the Bankruptcy Court, or, if the

Bankruptcy Court declines to exercise jurisdiction, before any court of competent

jurisdiction.  In the event that the Bankruptcy Court or any court of competent

jurisdiction later determines that the Claim at issue is an Allianz Channeling Injunction

Claim, the Allianz Parties shall be entitled to reimbursement from the Trust of all

reasonable expenses incurred by the Allianz Parties in defending the Claim.  If the Trust

undertakes to defend the application of the Third Party Injunction to a Claim presented by

the Allianz Parties, but a court of competent jurisdiction thereafter determines that the

Claim is not an Claim subject to the Asbestos PI Channeling Injunction and such order

becomes a Final Order, the Trust shall have no further obligation to defend the

application of the Asbestos PI Channeling Injunction to such Claim.  In the event that the

Bankruptcy Court or any court of competent jurisdiction later determines that the Claim

at issue is not an Allianz Channeling Injunction Claim, the Trust shall be entitled to

reimbursement from the Allianz Parties of all reasonable expenses incurred by the Trust

in defending the Claim.

## IX.    RIGHT OF REVIEW

A.    Following the Trust's receipt of payment of the Settlement Amount as

provided in Section III, the Allianz Companies shall have the right, at their own expense,

upon reasonable notice, at a time and place convenient to the Trust, to review records

relating to Asbestos PI Claims paid by the Trust solely for the purpose of obtaining

reinsurance for any portion of the Settlement Amount.  The Trust shall have no obligation

to create any new documents or to collect any information in connection with any such review beyond the documents or information ordinarily created or maintained by the Trust, and Allianz Companies shall not be permitted to challenge the review, determination, or payment of any Asbestos PI Claims by the Trust or the payment of any expenses or costs of the Trust. Notwithstanding any of the foregoing, the Trust shall not be obligated to provide the Social Security Identification Number of any Asbestos PI Claimant beyond the last four digits.

      B.     The Allianz Companies shall not provide any information, documents, notes, or other results of any review undertaken pursuant to Section IX.A (the "Material") to any other Entity and shall keep any and all such Material confidential, except that the Allianz Companies may provide such Material to their reinsurers or reinsurance arbitrators solely for the purpose of obtaining reinsurance for any portion of the Settlement Amount, provided that the Allianz Companies first obtain from such reinsurers or reinsurance arbitrators a written pledge to maintain the confidentiality of the Material and not to disclose such Material to any other Entity other than such reinsurers' retrocessionaires who have been likewise provided such a written pledge. In the event that disclosure of any Material in the Allianz Companies' possession is sought pursuant to subpoena or other legal process, the Allianz Companies shall immediately notify the Trust of the request for disclosure and cooperate with the Trust in seeking a protective order regarding the Material. Upon resolution of all reinsurance issues, the Allianz Companies shall, at the Trust's option, return or destroy all Material.

## X.    REPRESENTATIONS AND WARRANTIES BY THE PARTIES

Grace (subject to approval by the Court) and the Allianz Companies each represents to the other:

A.    It has the requisite power and authority to enter into this Agreement and to perform the obligations imposed on it by this Agreement;

B.    The execution and delivery of, and the performance of the obligations contemplated by, this Agreement have been approved by duly its authorized representatives, and by all other necessary actions;

C.    It has expressly authorized its undersigned representative to execute this Agreement on its behalf as its duly authorized agent; and

D.    It has conducted diligent, good faith searches for any general liability insurance policy (including primary, umbrella, and/or excess policies) issued by a liability insurance company listed on Attachment A either (i) naming Grace or W.R. Grace & Co.-Conn. or any other Debtor that has a name that begins with the word "Grace" or the phrase "W.R. Grace" as an insured or (ii) providing general liability insurance coverage to Grace or W.R. Grace & Co.-Conn. or any other Debtor that has a name that begins with the word "Grace" or the phrase "W.R. Grace" and as to which the policy term commenced prior to June 30, 1985, and it is not aware of any such insurance policy, secondary evidence of any such insurance policy, or any reason to believe such an insurance policy exists, other than the policies listed on Attachment D.  The Allianz Companies have conducted specific supplemental search efforts aimed at identifying any such policies while this Agreement was being prepared.

## XI.    ENTIRE AGREEMENT

This Agreement, along with its Attachments, constitutes a single integrated

written contract that expresses the entire agreement and understanding among the Parties.

This Agreement supersedes all prior communications and understandings between the

Parties and their representatives regarding the matters addressed by this Agreement,

except that the indemnification provisions set forth in Section VI of the 1996 Agreement

survive to the extent set forth in Section IV.D, above.  Except as explicitly set forth in

this Agreement, there are no representations, warranties, promises, or inducements,

whether oral, written, expressed, or implied, that in any way affect or condition the

validity of this Agreement or alter or supplement its terms.  Any statements, promises, or

inducements made by any Party or any agents of any Party that are not contained in this

Agreement shall not be valid or binding.

## XII.    NON-PREJUDICE AND CONSTRUCTION OF AGREEMENT

A.    This Agreement is intended to be and is a commercial accommodation

between the Parties and shall not be construed as an admission of coverage under the

Subject Policies or any other policies issued by the Allianz Parties.  Nor shall this

Agreement or any provision hereof be construed as a waiver, modification, or retraction

of the positions of the Parties with respect to the interpretation and application of the

Subject Policies, although the Parties shall nonetheless abide by the terms of this

compromise Agreement.

B.    This Agreement is the product of informed negotiations and involves

compromises of the Parties' previously stated legal positions.  Accordingly, nothing

contained in this Agreement or in any document exchanged by the Parties in the

negotiation or furtherance of this Agreement shall be construed as an admission or concession by the Allianz Companies, Grace, or the Trust that any particular theory with respect to coverage or absence of coverage is valid. This Agreement is without prejudice to the positions taken by the Allianz Parties with regard to other insureds and without prejudice to positions taken by Grace, the Asbestos PI Committees, or the Trust with regard to other insurers. The Parties specifically disavow any intention to create rights in third parties under or in relation to this Agreement, except as expressly provided herein.

C.       Neither the terms of this Agreement nor its negotiation, its execution, or any act in performance of this Agreement shall be invoked by the Parties, or their attorneys or agents, in any proceeding for the purpose of attempting to establish or prove the acceptance by the Parties of any particular interpretation of any insurance policy with respect to any Claim.

D.       The Parties agree, as an essential and integral part of this Agreement, that this Agreement and the matters contained in this Agreement are not intended to be, nor shall they be, admissible or relevant in any case or proceeding to prove the acceptance by any Party hereto of any particular theory of coverage or absence of coverage, or as evidence of any obligation that any Party hereto has or may have to anyone other than to one another.

E.       This Agreement is the jointly drafted product of arms'-length negotiations between the Parties with the benefit of advice from counsel and the Parties agree that it shall be so construed. In particular, with respect to interpretation of this Agreement, the Parties waive any benefits from the principles of <u>contra proferentem</u> or other principles that would result in the interpretation of any ambiguities against insurers. No Party shall

be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement shall be construed against any Party on the basis of that Party's identity as an insurance company or as the drafter of any part of this Agreement.

## XIII.  HEADINGS

The Section headings contained in this Agreement are for convenient reference only, and shall not in any way affect the meaning or interpretation of this Agreement.

## XIV.  CONFIDENTIALITY

A.    The Parties agree that all information relating to the negotiation of this Agreement (collectively referred to as "Information") shall be confidential and is not to be disclosed except as follows:

1.    The fact that the Parties have entered into this Agreement may be disclosed to any Entity;

2.    The Agreement and additional Information, as agreed by the parties, may be disclosed as necessary to obtain an Approval Order from the Court;

3.    The Information may be disclosed by order of court, or pursuant to a written agreement of the Parties;

4.    The Information may be disclosed by the Allianz Companies to their reinsurers and retrocessionaires solely in their capacities as such, directly or through intermediaries;

5.    Grace or the Trust may disclose the Agreement to other insurers and their representatives;

6. The Information may be disclosed to outside auditors or accountants of any Party or to the Internal Revenue Service;

7. A Party may disclose the Information to its accountants, to its counsel, to underwriters in connection with offerings of securities to be issued by such Party and to counsel for such underwriters;

8. The Information may be disclosed in any action by any Party to enforce the terms of, or its rights under, this Agreement;

*provided, however*, that a Party making disclosure of any of the Information pursuant to one of the exceptions set forth in clauses (3) through (8) above shall inform any Entity to which such disclosure is made of the confidential nature of the Information and of the understanding upon which it has been disclosed and shall use reasonable efforts to obtain the agreement of such Entity to hold the Information in confidence.

B. A Party may describe and/or make reference to this Agreement to the extent that such disclosure is required to comply with any statute, rule, or other requirement of any government or governmental agency or other authority.

C. In the event a court, litigant, or governmental body requests or requires disclosure of any Information protected by this Section XIV, the Party from whom disclosure is sought shall immediately give written notice to the other Party in order to allow each Party to take such protective steps as may be appropriate.

D. Information protected by this Section shall be deemed to fall within the protection afforded compromises and offers of compromise by Rule 408 of the Federal Rules of Evidence and similar provisions of state law or state rules of court.

## XV.  NOTICES

A.    All notices, requests, demands and other communications required or

permitted to be given under this Agreement shall be deemed to have been duly given if in

writing and delivered personally, or by registered or certified mail, return receipt

requested, or by Federal Express with signature required, addressed as follows:

| | |
|---|---|
| If to Grace: | W. R. Grace & Co.<br>7500 Grace Drive<br>Columbia, MD  21044<br>Attn: General Counsel<br>Telephone:  (410) 531-4000<br>Facsimile:  (410) 531-4545 |
| With a copy to: | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, NY  10022<br>Attn:  Theodore L. Freedman<br>Telephone:  (212) 446-4800<br>Facsimile:  (212) 446-4900 |
| If to Allianz S.p.A. (formerly known as<br>Riunione Adriatica di Sicurta S.p.A.): | Jeffrey Hayes<br>777 San Marin Drive<br>Novato, CA  94998<br>Telephone:  (415) 899-3679<br>Facsimile:  (415) 899-3663 |
| With a copy to: | Crowell & Moring LLP<br>1001 Pennsylvania Ave., NW<br>Washington, DC  20004<br>Attn:  Clifford B. Hendler and Mark D. Plevin<br>Telephone:  (202) 624-2500<br>Facsimile:  (202) 628-5116 |
| If to Allianz Underwriters Insurance Company<br>or Allianz SE: | Paul Reiss<br>Allianz Global Risks US Insurance Company<br>P.O. Box 7782<br>2350 Empire Avenue<br>Burbank, CA  91504-3350<br>Phone:  (415) 747-8313<br>Fax:  (818) 260-7203 |

With a copy to:

Crowell & Moring LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
Attn: Clifford B. Hendler and Mark D. Plevin
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

If to Fireman's Fund Insurance Company
(concerning FFIC Subject Policies):

Paul Ginnett
777 San Marin Drive
Novato, CA 94998
Telephone: (415) 899-3679
Facsimile: (415) 899-3663

With a copy to:

Crowell & Moring LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
Attn: Clifford B. Hendler and Mark D. Plevin
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

If to Fireman's Fund Insurance Company
(concerning the Edwards Bond, Edwards
Indemnity Agreement, and Edwards Letter of
Credit):

Richard Kowalczyk
777 San Marin Drive
Novato, CA 94998
Telephone: (415) 899-3679
Facsimile: (415) 899-3663

With a copy to:

Crowell & Moring LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
Attn: Mark D. Plevin and Clifford B. Hendler
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

If to the Asbestos PI Committee:

Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
Attn: Peter Lockwood
Telephone: (202) 862-5000
Facsimile: (202) 862-3301

and

Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152
Attn: Elihu Inselbuch

|                                                      | Telephone:  (212) 319-7125<br>Facsimile:  (212) 644-6755 |
|------------------------------------------------------|----------------------------------------------------------|
| With a copy to:                                      | Anderson Kill & Olick, PC<br>1251 Avenue of the Americas<br>New York, NY  10020<br>Attn:  Robert M. Horkovich<br>Telephone:  (212) 278-1322<br>Facsimile:  (212) 278-1733 |
| If to the Asbestos PI Future Claimants'<br>Representative: | David T. Austern<br>3110 Fairview Park Drive<br>Suite 200<br>Falls Church, VA 22042-0683<br>Telephone:  (703) 205-0835<br>Facsimile:  (703) 205-6249 |
| With a copy to:                                      | Orrick, Herrington & Sutcliffe LLP<br>1152 15th Street, N.W.<br>Washington, D.C. 20005-1706<br>Attn:  Roger Frankel<br>Telephone:  (202) 339-8400<br>Facsimile:  (202) 339-8500 |

B.    Any Party may change the address to which such communications are to be directed to it by giving notice to the others, in the manner provided in this Section.

## XVI.  MODIFICATION

This Agreement may be amended, modified, superseded, or canceled, and any of the terms hereof may be waived, only by a written instrument that specifically states that it amends, modifies, supersedes, or cancels this Agreement, executed by or on behalf of all of the Parties or, in the case of a waiver, by or on behalf of the Party waiving compliance.  The failure of a Party at any time or times to require performance of any provision of this Agreement shall in no manner affect the right at a later time to enforce the same.  No waiver by a Party of any condition, or of any breach of any term, covenant, representation or warranty contained in this Agreement, in any one or more instances,

shall be deemed to be or construed as a further or continuing waiver of any such condition or breach, or a waiver of any other condition or of any breach of any other term, covenant or warranty.

## XVII. EXECUTION

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument. This Agreement shall become effective as to each Party from and after the Execution Date.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement by their authorized officers or representatives.

Date: _November 8, 2009_

W.R. GRACE & CO.

Signed: _Richard C. Finke_

Name: _Richard C. Finke_

Title: _Assistant Gen. Counsel — Litigation_

Date: _____

ALLIANZ UNDERWRITERS INSURANCE COMPANY

Signed: _____

Name: _____

Title: _____

Date: _____

ALLIANZ SE (formerly known as ALLIANZ AKTIENGESELLSCHAFT)

Signed: _____

Name: _____

Title: _____

Date: _____

ALLIANZ S.p.A. (formerly known as RIUNIONE ADRIATICA DI SICURTA S.p.A.)

Signed: _____

Name: _____

Title: _____

IN WITNESS WHEREOF, the Parties have executed this Agreement by their authorized officers or representatives.

Date: _____     W.R. GRACE & CO.

                                          Signed: _____

                                          Name: _____

                                          Title: _____

Date: ____11/9/09____     ALLIANZ UNDERWRITERS
INSURANCE COMPANY

                                          Signed: _Paul m Reiss_

                                          Name: _PAUL M. REISS_

                                          Title: _Senior Claims Specialist_

Date: ____11/9/09____     ALLIANZ SE (formerly known as
ALLIANZ AKTIENGESELLSCHAFT)

                                          Signed: _Paul m Reiss_

                                          Name: _PAUL M. REISS_

                                          Title: _Senior Claims Specialist_

Date: _____     ALLIANZ S.p.A. (formerly known as
RIUNIONE ADRIATICA DI SICURTA
S.p.A.)

                                          Signed: _____

                                          Name: _____

                                          Title: _____

**IN WITNESS WHEREOF,** the Parties have executed this Agreement by their authorized officers or representatives.

Date: _____    W.R. GRACE & CO.

Signed: _____

Name: _____

Title: _____


Date: _____    ALLIANZ UNDERWRITERS
INSURANCE COMPANY

Signed: _____

Name: _____

Title: _____


Date: _____    ALLIANZ SE (formerly known as
ALLIANZ AKTIENGESELLSCHAFT)

Signed: _____

Name: _____

Title: _____


Date: __11/9/09_____    ALLIANZ S.p.A. (formerly known as
RIUNIONE ADRIATICA DI SICURTA
S.p.A.)

Signed: _Jeffrey D. Hayes_____

Name: _JEFFREY D. HAYES_____

Title: _CLAIMS SPECIALIST_____

Date: 11/9/09

FIREMAN'S FUND INSURANCE
COMPANY

Signed: _Paul Ginnett_

Name: _Paul Ginnett_

Title: _V. P._

# ATTACHMENT A

Allianz Global Risks US Insurance Company

Allianz Insurance Company

Allianz of America, Inc.

Allianz Societas Europaea

Allianz SE

Allianz Aktiengesellschaft

Allianz AG

Allianz Underwriters Insurance Company

Allianz Underwriters, Inc.

Jefferson Insurance Company

Monticello Insurance Company

Allianz of America Corporation

Allianz Global Corporate and Specialty, North America

Allianz Versicherungs AG

Allianz Versicherungs-Aktiengesellschaft, Munich

Allianz S.p.A

Riunione Adriatica di Sicurta S.p.A.

Fireman's Fund Insurance Company

Interstate National Corporation

Vintage Insurance Company

The American Insurance Company

Associated Indemnity Corporation

Allianz Cash Pool LLC

# ATTACHMENT A (continued)

American Automobile Insurance Company (except mandatory automobile policies that may not be bought back)

American Standard Lloyd's Insurance Company

Fireman's Fund County Mutual Insurance Company

Fireman's Fund Indemnity Corporation

Fireman's Fund Insurance Company of Hawaii, Inc.

Fireman's Fund Insurance Company of Louisiana

Fireman's Fund Insurance Company of Ohio

Fireman's Fund Insurance Company of Missouri

National Surety Corporation

San Francisco Reinsurance Company

Interstate Fire and Casualty Company

AGCS Marine Insurance Company

Interstate Indemnity Company

Chicago Insurance Company

Wm. H. McGee & Co., Inc.

Wm. H. McGee & Company of Puerto Rico, Inc.

Wm. H. McGee & Company (Bermuda) Ltd

Fireman's Fund Insurance Company Bermuda (SAC) Ltd

International Film Guarantors, LLC

International Film Guarantors, Ltd.

# ATTACHMENT B

# FORM OF APPROVAL ORDER

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: December 14, 2009** |
| | ) | **Objection Deadline: November 25, 2009** |
| | ) | **Agenda No. _____** |

## ORDER PURSUANT TO SECTIONS 105, 363, 1107 AND 1108 OF THE BANKRUPTCY CODE AND RULES 2002, 6004, 9014 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING THE SETTLEMENT AGREEMENT BETWEEN W.R. GRACE & CO. AND THE ALLIANZ COMPANIES

This matter having come before the Court on the Debtors' Motion (the "Motion") for an

Order Approving the Settlement Agreement ("Agreement") by and between W. R. Grace & Co.,

on its own behalf and on behalf of the Grace Parties (collectively, "Grace"), and Allianz

Underwriters Insurance Company, Allianz SE (formerly known as Allianz Aktiengesellschaft),

Allianz S.p.A. (formerly known as Riunione Adriatica di Sicurta S.p.A.), and Fireman's Fund

Insurance Company (collectively, the "Allianz Companies"), on their own behalf and on behalf

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

of the Allianz Parties, and the Court having reviewed and conducted a hearing on the Motion, the

Court hereby finds that:

a.  the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334;

b.  this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

c.  notice of the Motion was adequate under the circumstances;

d.  the compromise and settlement memorialized in the Agreement are the product of arm's-length, good faith negotiations by and between W. R. Grace & Co., on its own behalf and on behalf of the Grace Parties, and the Allianz Companies, on their own behalf and on behalf of the Allianz Parties, and are not the product of fraud or collusion; and the settlement meets the standard established by the United States Court of Appeals for the Third Circuit for approval of settlements, which requires consideration of the following factors: (1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and related expense and inconvenience; and (4) the interests of the creditors. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also Fry's Metals, Inc. v. Gibbons (In re RFE Industries, Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002);

e.  the consideration to be paid by the Allianz Companies under the Agreement is fair and reasonable and constitutes reasonably equivalent value;

f.  the transaction set forth in the Agreement pursuant to which the Allianz Parties are to acquire all rights, title, and interests of the Grace Parties in and under the Subject Policies constitutes a sale of property pursuant to Bankruptcy Code Section 363(b) and subject to the terms of Bankruptcy Code Sections 363(f) and 363(m), and the Allianz Parties are good faith buyers within the meaning of Section 363(m);

g.  the transaction contemplated by the Agreement is at arms' length and in good faith, and the consideration to be paid by the Allianz Companies is fair and adequate and constitutes reasonably equivalent value and fair consideration, such that the Agreement and sale of the Subject Policies is not subject to avoidance under Bankruptcy Code Section 363(n), and the Allianz Parties are entitled to the full protections of Section 363(m);

h.  the relief requested in the Motion is in the best interests of the bankruptcy estate; and

2

i.      the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

NOW, THEREFORE, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363, 1107 AND 1108, AND RULES 2002, 6004, 9014 AND 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      For the reasons set forth herein and on the record at the hearing, all objections to the Motion and the relief requested therein and/or granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits.  By this Order, however, the Court is not deciding at this time whether a Bankruptcy Code Section 524(g) injunction should be issued with respect to the Allianz Parties. Questions relating to Section 524(g) are reserved for the Court's ruling on plan confirmation.

3.      The Agreement, a copy of which is attached to the Motion as Exhibit A, is approved in its entirety.

4.      The Debtors shall be, and hereby are, authorized to enter into the Agreement, and are authorized to execute, deliver, implement and fully perform any and all obligations, to execute any instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Agreement and perform any and all obligations contemplated therein, including designating the Agreement as an Asbestos Insurance Settlement Agreement, and (a) the Allianz Companies and (b) the Allianz Parties, to the fullest extent that such Allianz Parties may be eligible for protection under Bankruptcy Code Section 524(g), as Settled Asbestos Insurance Companies, with respect to Asbestos PI Claims based on or arising under the Subject Policies, on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization, as provided in Section VI.D of the Agreement.  If a plan of reorganization is confirmed,

3

following the plan Effective Date, the Asbestos PI Trust, upon its creation, will be bound to the terms of the Agreement as if it were a signatory to the Agreement as of its Execution Date.

5.    Upon the Trust's receipt of payment of the Settlement Amount as provided in the Agreement, the Grace Parties shall be deemed to have sold, conveyed, assigned, transferred, and delivered, and the Allianz Parties shall be deemed to have purchased from the Grace Parties, all rights, title, and interest of the Grace Parties in and under the Subject Policies, free and clear of all liens, encumbrances, and/or interests of any kind or nature whatsoever, pursuant to Section 363(f) of the Bankruptcy Code.  The Allianz Parties shall thereafter be entitled to the protections of Sections 363(m) of the Bankruptcy Code.

6.    This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under Bankruptcy Rule 6004(h).

7.    This Court shall retain jurisdiction to interpret, implement and enforce the provisions of this Order subject to the terms of the Agreement.


Dated: _____, 2009


                                        _____
                                        The Honorable Judith K. Fitzgerald
                                        United States Bankruptcy Judge


4

# ATTACHMENT C

# EDWARDS BOND RELEASE PROTOCOL

1.    Within five (5) business days after the Effective Date, the parties to the Edwards Action shall jointly file a motion in the trial court (the "Trial Court Motion"), substantially in the form of Attachment C-1 appended hereto, or in such other substantially similar form as shall have been agreed to by FFIC and the parties to the Edwards Action. The Trial Court Motion shall seek entry of an order that:

      a.    Discharges any liability of FFIC as surety in connection with the Edwards Bond; and

      b.    Either (i) releases the Edwards Bond to Grace's counsel or (ii) states that the Edwards Bond is null and void and of no further force or effect as among the Parties with respect to the Edwards Action, the judgment against Grace in the Edwards Action, and the appeal of the judgment against Grace.

2.    To the extent that any additional documents or acts are reasonably required to be executed or performed by a Party in order to comply with the obligations contained in this Protocol, the Party in question shall promptly execute and deliver such documents and/or perform said acts in accordance with the terms hereof.

3.    Within five (5) business days of receipt by Grace's counsel of the released Edwards Bond pursuant to paragraph 1(b)(i) above, Grace's counsel shall forward the released Edwards Bond to counsel for FFIC at the address set forth below:

         Crowell & Moring LLP
         1001 Pennsylvania Ave., N.W.
         Washington, DC 20004
         Attn: Mark D. Plevin and Clifford B. Hendler
         Telephone: (202) 624-2500
         Facsimile: (202) 628-5116

# ATTACHMENT C-1

## AGREED MOTION TO VACATE EDWARDS BOND

Cause No. B-150,896-J

| | | |
|---|---|---|
| **AARON CLIFTON EDWARDS, ET AL** | § | **IN THE DISTRICT COURT** |
| **vs.** | § | **JEFFERSON COUNTY, TEXAS** |
| **PITTSBURGH CORNING CORPORATION, ET AL** | § | **60TH JUDICIAL DISTRICT** |

## AGREED MOTION TO VACATE SUPERSEDEAS BOND NO. 11127448824 AND DISCHARGE SURETY THEREON

Pursuant to Rule 24.3 of the Texas Rules of Appellate Procedure, defendants

W.R. Grace & Co. and W.R. Grace & Co.-Conn. (collectively, "Grace"), on the one hand, and

Plaintiffs Aaron C. Edwards, James T. Beam, Edward E. Storey, John M. Thomas, and Sheila

Martin, Individually and as Administratrix of the Estate of Jessie J. Williamson, Deceased, and

as Representative of the Wrongful Death Beneficiaries (collectively the "Edwards Plaintiffs"),

jointly move the Court to (i) vacate Supersedeas Bond No. 11127448824 (the "Supersedeas

Bond"), filed in this Court on July 7, 2000, and (ii) to discharge Fireman's Fund Insurance

Company ("Fireman's Fund"), the surety on the Supersedeas Bond, from any liability thereon.

As grounds for this motion, the parties state as follows:

1.     In 1995, the Edwards Plaintiffs commenced this case for asbestos-

related personal injuries against Grace and other defendants. This case proceeded to trial

before a jury, and on March 28, 2000, the Court signed a judgment for damages in favor of the

Edwards Plaintiffs and against Grace, for the total sum of $38,427,617.78, plus post-judgment

interest at the rate of 12% per annum, and all costs of suit (the "Judgment").[1]

---

[1] The Court's judgment also provides that another defendant, Pittsburgh Corning Corporation, is liable to the Edwards Plaintiffs for damages. This motion does not seek any relief with respect to that portion of the Court's judgment relating to Pittsburgh Corning.

2.     On June 23, 2000, Grace timely appealed the Judgment to the Texas Court of Appeals, Ninth District of Texas, which appeal was subsequently transferred to the Sixth District of Texas (the "Appellate Court"), Appeal No. 06-00-00112-CV (the "Appeal"), pursuant to a docket equalization order.

3.     On July 7, 2000, Grace filed the Supersedeas Bond, in the amount of $43,038,931.91, in this Court. Fireman's Fund is the surety under the Supersedeas Bond. The filing of the Supersedeas Bond, among other things, suspended enforcement of the Judgment during the pendency of the Appeal.

4.     On April 21, 2001, while the Appeal was pending, W.R. Grace & Co. and W.R. Grace & Co.-Conn., together with approximately 60 of their affiliates (collectively, the "Debtors"), commenced Chapter 11 bankruptcy cases in the U.S. Bankruptcy Court for the District of Delaware, Case No. 01-01139 (JKF) (jointly administered) (the "Bankruptcy Case"). Among other things, the commencement of the Bankruptcy Case stayed all proceedings against the Debtors pursuant to the automatic stay of 11 U.S.C. § 362, including the Appeal.

5.     On April 13, 2001, the Appellate Court issued an Opinion abating the proceedings in the Appeal as the result of the automatic stay of 11 U.S.C. § 362.

6.     The Edwards Plaintiffs filed proofs of claim in the Bankruptcy Case for the amount of the Judgment. Fireman's Fund also filed a proof of claim in the Bankruptcy Case seeking recovery of any amounts it might pay under the Supersedeas Bond.

7.     Grace and the Edwards Plaintiffs have entered into a Settlement Agreement and Mutual Release (the "Settlement Agreement") dated as of November __, 2009. A copy of the Settlement Agreement, which is filed at Docket No. __ in the Bankruptcy Case,

is attached hereto as Exhibit A. On _____, 2009, the court presiding over the Bankruptcy Case entered an order approving the Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Rule 9019 Order"). A certified copy of the Rule 9019 Order, Docket No. ___ in the Bankruptcy Case, is attached hereto as Exhibit B.

8.    Grace has also entered into a settlement agreement with Fireman's Fund[2] in the Bankruptcy Case, which has also been approved by the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. A certified copy of the Order approving the settlement between Grace and Fireman's Fund, Docket No. ___ in the Bankruptcy Case, is attached hereto as Exhibit C.

9.    Pursuant to the Settlement Agreement, as of _____, which was the Effective Date of the First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code dated February 27, 2009 (as it may be amended, supplemented, or otherwise modified from time to time, and together with its exhibits and schedules, the "Plan"), the Edwards Plaintiffs on behalf of themselves and each of their successors, heirs, assigns, agents, attorneys, family members and representatives, released all of their rights, title, and interest in and under the Supersedeas Bond, and released all rights, claims, and causes of action against Fireman's Fund in its capacity as surety with respect to the Supersedeas Bond. The Settlement Agreement obligates the Edwards Plaintiffs and Grace to take all steps necessary to discharge and release the Supersedeas Bond, and to either (a) return the Supersedeas Bond to counsel for Fireman's Fund, or (b) to obtain an order from this Court, which orders that the Supersedeas Bond is null and void and of no further force or effect as among the parties to this case, the Judgment, and the Appeal.

---

[2] Allianz Underwriters Insurance Company, Allianz SE (formerly known as Allianz Aktiengesellschaft), and Allianz S.p.A. (formerly known as Riunione Adriatica di Sicurta S.p.A.) are also parties to the settlement.

10.     The parties have agreed to bear their own attorneys' fees and/or costs in connection with this motion and the matters contained herein and in the Settlement Agreement.

WHEREFORE, Grace and the Edwards Plaintiffs respectfully request the following relief:

1.     That the Court grant this motion;

2.     That the Supersedeas Bond be vacated, and any liability and obligation of Fireman's Fund as surety, with respect to the Supersedeas Bond, be discharged;

3.     That the original Supersedeas Bond No. 11127448824, date stamped July 7, 2000, posted by Grace as principal, with Fireman's Fund as surety, either (a) be returned to counsel for Grace, so that Grace can in turn return the Supersedeas Bond to Fireman's Fund, or (b) that this Court enter an order stating that the Supersedeas Bond is null and void and of no further force or effect as among the parties to this case, the Judgment, and the Appeal; and

4.     That this Court grant such other and further relief as may be just and appropriate.

Dated:_____, 2009                    Respectfully submitted,


_____                        _____
Sandra F. Clark                                Glen W. Morgan
State Bar Id No. 04294520                       State Bar Id No. _____
Elizabeth B. Pratt                              Cris E. Quinn
State Bar Id. No. 16239450                      State Bar Id No. _____
Mehaffy & Weber                                 John Werner
P.O. Box 16                                     State Bar Id No. _____
Beaumont, TX 77704                              David Ferrell
Tel: (409) 835-5011                             State Bar Id No. _____
Fax: (409) 835-5117                             Joseph D. Deshotel
                                                State Bar Id No. _____
OF COUNSEL:                                     Reaud, Morgan & Quinn
Thomas M. Farrell                               801 Laurel Street
Solace Kirkland Southwick                        Beaumont, Texas 77701
Mayor, Day, Caldwell & Keeton, L.L.P.           Tel: (409) 838-1000
700 Louisiana, Suite 1900                       Fax: (409) 833-8236
Houston, TX 77002
Tel: (713) 225-7121                             Attorneys for Plaintiffs
Fax: (713) 225-7047

Attorneys for Defendants


9545724.03

Cause No. B-150,896-J

| | | |
|---|---|---|
| AARON CLIFTON EDWARDS, AT AL | § | IN THE DISTRICT COURT |
| vs. | § | JEFFERSON COUNTY, TEXAS |
| PITTSBURGH CORNING CORPORATION, ET AL | § | 60TH JUDICIAL DISTRICT |

## AGREED ORDER TO VACATE SUPERSEDEAS BOND NO. 11127448824 AND DISCHARGE SURETY THEREON

Pursuant to Rule 24.3 of the Texas Rules of Appellate Procedure, defendants W.R. Grace & Co. and W.R. Grace & Co.-Conn. (collectively, "Grace"), on the one hand, and plaintiffs Aaron C. Edwards, James T. Beam, Edward E. Storey, John M. Thomas, and Sheila Martin, Individually and as Administratrix of the Estate of Jessie J. Williamson, Deceased, and as Representative of the Wrongful Death Beneficiaries (collectively the "Edwards Plaintiffs") have filed an Agreed Motion To Vacate Supersedeas Bond No. 11127448824 And Discharge Surety Thereon and, in connection therewith, have submitted this Agreed Order To Vacate Supersedeas Bond No. 11127448824 and for other relief.

By the duly authorized signatures of the attorneys for the parties hereto, the parties stipulated to the Court the following:  that they have settled their disputes; and that in accordance with their Settlement Agreement, they jointly seek the entry of this Agreed Order to vacate Supersedeas Bond No. 11127448824 (the "Supersedeas Bond") and to discharge Fireman's Fund Insurance Company ("Fireman's Fund"), the surety on the Supersedeas Bond, from any liability thereon.

WHEREFORE, premises considered, the Court hereby orders as follows:

1.      The parties' Agreed Motion To Vacate Supersedeas Bond No. 11127448824 is hereby GRANTED.

2.    The Court hereby vacates Supersedeas Bond No. 11127448824 and discharges Fireman's Fund, as Surety, from any liability and obligation with respect to the Supersedeas Bond.

3.    The County Clerk of Jefferson County, Texas is ordered to release, to counsel for Grace, Supersedeas Bond No. 11127448824, date stamped July 7, 2000, posted by Grace as principal, with Fireman's Fund as Surety.

IT IS SO ORDERED.

_____
JUDGE

Date Decided: _____

APPROVED AS TO FORM AND SUBSTANCE
AND ENTRY REQUESTED:

_____
Sandra F. Clark
State Bar Id No. 04294520
Elizabeth B. Pratt
State Bar Id. No. 16239450
Mehaffy & Weber
P.O. Box 16
Beaumont, TX 77704
Tel: (409) 835-5011
Fax: (409) 835-5117

OF COUNSEL:
Thomas M. Farrell
Solace Kirkland Southwick
Mayor, Day, Caldwell & Keeton, L.L.P.
700 Louisiana, Suite 1900
Houston, TX 77002
Tel: (713) 225-7121
Fax: (713) 225-7047

Attorneys for Defendants

9545725.03

_____
Glen W. Morgan
State Bar Id No. _____
Cris E. Quinn
State Bar Id No. _____
John Werner
State Bar Id No. _____
David Ferrell
State Bar Id No. _____
Joseph D. Deshotel
State Bar Id No. _____
Reaud, Morgan & Quinn
801 Laurel Street
Beaumont, Texas 77701
Tel: (409) 838-1000
Fax: (409) 833-8236

Attorneys for Plaintiffs

US_EAST:160615276.2

- 2 -

# ATTACHMENT D

| Insurance Company Name | Policy Number | Policy Period |
|---|---|---|
| Allianz SE | H00011428 | 06/30/1977-06/30/1978 |
| Allianz SE | H0001428 | 06/30/1978-06/30/1982 |
| Allianz SE | C7300025 | 06/30/1982-06/30/1985 |
| Allianz Underwriters Ins. Co. | AUX5203042 | 06/30/1984-06/30/1985 |
| Fireman's Fund Ins. Co. | XL76937 | 01/27/1965-10/20/1965 |
| Fireman's Fund Ins. Co. | XL91085 | 05/17/1966-10/20/1968 |
| Fireman's Fund Ins. Co. | XLX1026877 | 10/20/1968-06/30/1971 |
| Fireman's Fund Ins. Co. | XLX1202930 | 06/30/1976-06/30/1977 |
| Fireman's Fund Ins. Co. | XLX1299553 | 06/30/1977-06/30/1978 |
| Fireman's Fund Ins. Co. | XLX1362955 | 06/30/1978-06/30/1979 |
| Fireman's Fund Ins. Co. | XLX1370426 | 06/30/1979-06/30/1980 |
| Fireman's Fund Ins. Co. | XLX1370427 | 06/30/1979-06/30/1980 |
| Fireman's Fund Ins. Co. | XLX1437060 | 06/30/1980-06/30/1981 |
| Fireman's Fund Ins. Co. | XLX1437061 | 06/30/1980-06/30/1981 |
| Fireman's Fund Ins. Co. | XLX1481490 | 06/30/1981-06/30/1982 |
| Fireman's Fund Ins. Co. | XLX1481491 | 06/30/1981-06/30/1982 |
| Fireman's Fund Ins. Co. | XLX1481492 | 06/30/1981-06/30/1982 |
| Fireman's Fund Ins. Co. | XLX1532474 | 06/30/1982-06/30/1983 |
| Fireman's Fund Ins. Co. | XLX1532475 | 06/30/1982-06/30/1983 |
| Fireman's Fund Ins. Co. | XLX1532227 | 06/30/1983-06/30/1984 |
| Fireman's Fund Ins. Co. | XLX1532228 | 06/30/1983-06/30/1984 |
| Fireman's Fund Ins. Co. | XLX1688067 | 06/30/1984-06/30/1985 |
| Riunione Adriatica di Sicurta SpA | EL2046 | 06/30/1977-06/30/1978 |
| Riunione Adriatica di Sicurta SpA | EL2787 | 06/30/1978-06/30/1979 |
| Riunione Adriatica di Sicurta SpA | EL794120 | 06/30/1979-06/30/1980 |
| Riunione Adriatica di Sicurta SpA | EL794416 | 06/30/1980-06/30/1981 |

# ATTACHMENT E

Pursuant to Section VI.A of the Agreement, the form of consent acceptable to the Allianz Parties is as follows:

"The Asbestos PI Committee [or the Asbestos PI Future Claimants' Representative, as appropriate] hereby consents to the Settlement Agreement between the Grace Parties and the Allianz Parties and to the releases and the other terms and conditions contained therein."

Transmission of electronic mail messages in the foregoing form by the authorized representatives of the Grace PI Committees to Clifford Hendler, Esq., Crowell & Moring, LLP, counsel for the Allianz Parties, shall constitute written consent for the purposes of Section VI.A of the Agreement.

# ATTACHMENT F

# FORM OF MOTION FOR AN ORDER APPROVING THE SETTLEMENT AGREEMENT

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Objection Deadline: November 25, 2009** |
| | ) | **Hearing Date: December 14, 2009** |

**DEBTORS' MOTION PURSUANT TO SECTIONS 105, 363, 1107 AND 1108 OF
THE BANKRUPTCY CODE AND RULES 2002, 6004, 9014 AND 9019 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
FOR AN ORDER APPROVING
THE SETTLEMENT AGREEMENT BETWEEN W.R. GRACE & CO. AND THE
ALLIANZ COMPANIES**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors")

hereby submit this motion (the "Motion") for entry of an order approving the Settlement

Agreement (the "Agreement") by and between W. R. Grace & Co., on its own behalf and on

behalf of the Grace Parties (collectively, "Grace"), and Allianz Underwriters Insurance

Company, Allianz SE (formerly known as Allianz Aktiengesellschaft), Allianz S.p.A. (formerly

known as Riunione Adriatica di Sicurta S.p.A.), and Fireman's Fund Insurance Company

---

[1]     The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

("Fireman's Fund") (collectively, the "Allianz Companies"), on their own behalf and on behalf of the Allianz Parties, as further identified and defined in the Agreement. A copy of the Agreement is attached as <u>Exhibit A</u>. In support of the Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion is proper under 28 U.S.C. § 1408.

2.      The statutory predicates for this Motion are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 the Federal Rules of Bankruptcy Procedure.

### Background

3.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.      The Allianz Companies issued certain policies of excess liability insurance (defined in the Agreement as the "Subject Policies") that provide, or are alleged to provide, insurance coverage to Grace. The lowest attachment point of any of the Subject Policies is $20 million. Grace has incurred and may incur in the future certain liabilities, expenses and losses arising out of asbestos-related claims, for which Grace seeks coverage under the Subject Policies. Disputes have arisen between Grace and the Allianz Companies regarding their

2

respective rights and obligations under the Subject Policies with respect to coverage for asbestos-related claims.

5.       Before the Petition Date, Grace and Fireman's Fund entered into two settlement agreements, the first dated September 21, 1995, and the second dated December 26, 1996, resolving coverage disputes between the parties regarding asbestos-related claims and other claims under some, but not all, of the Subject Policies.

6.       Before the Petition Date, Fireman's Fund issued a *supersedeas* bond in the amount of $43,038,931.91 (the "Edwards Bond") related to Grace's appeal of a judgment against Grace in the action styled *Aaron Clifton Edwards, et al. v. Pittsburgh Corning Corp., et al.*, in the 60th Judicial District Court of Jefferson County, Texas, Cause No. B-150,896-J (the "Edwards Action"). In connection with the issuance of the Edwards Bond, Grace and Fireman's Fund also entered into a Specialty Surety Indemnity Agreement dated July 5, 2000 (the "Edwards Indemnity Agreement") under which Grace agreed to indemnify Fireman's Fund in connection with the issuance of the Edwards Bond. In addition, a letter of credit in the amount of $13,000,000.00 was issued by Wachovia Bank, N.A. ("Wachovia") to secure Grace's obligations under the Edwards Indemnity Agreement ("Edwards Letter of Credit"). Fireman's Fund filed a proof of claim in the Chapter 11 Cases, asserting an unsecured claim in the full amount of the Edwards Bond, as well as a secured claim based on the Edwards Letter of Credit.[2]

7.       The Plan of Reorganization proposed by the Plan Proponents contemplates that Asbestos PI Claims will be enjoined and channeled to the Asbestos PI Trust (the "Trust").

---

[2]       Wachovia also filed a proof of claim against Grace, asserting, among other claims, a claim for amounts due with respect to the Edwards Letter of Credit. At this time, slightly more than $2 million has been drawn under the Edwards Letter of Credit by Fireman's Fund since the Petition Date, to satisfy annual premiums of $224,500 due to Fireman's Fund in connection with issuance of the Edwards Bond. Premiums on the Edwards Bond are now paid through June 2010.

*See* First Amended Joint Plan of Reorganization, filed February 27, 2009 (the "Plan"), Art. 8.2.1.

If established as proposed, the Trust will process and resolve Asbestos PI Claims pursuant to the

Asbestos PI Trust Distribution Procedures.[3]

        8.     The Plan further contemplates that Asbestos Insurance Rights, including

rights to coverage under the pre-June 30, 1985 Subject Policies, are to be transferred to the Trust,

to be used to fund payment of Asbestos PI Claims. *See* Plan, Art. 7.2.2(d)(ii) and (iv); Plan Ex. 6

– Asbestos Insurance Transfer Agreement.

        9.     The Allianz Companies have filed objections to the Plan on various

grounds. The proposed settlement would resolve those objections in full.

        10.     The Agreement confers the following principal benefits upon the Debtors'

estate, among others:[4]

    (a)     The payment by the Allianz Companies to the Trust of the sum of Thirty-Six Million Five Hundred Thousand U.S. Dollars ($36,500,000.00) (the "Settlement Amount") upon the Trigger Date as set forth in the Agreement.

    (b)     The payment of the substantial sum set forth in subparagraph (a) above without need for litigation to enforce the contested assignment by Grace to the Trust of rights under the Subject Policies.

    (c)     A compromise of the coverage issues and defenses that the Allianz Companies might have with respect to coverage for any individual Asbestos PI Claim.

    (d)     Upon this Court's order approving the Agreement becoming a Final Order, the Allianz Companies' withdrawal of all objections to confirmation of the plan of reorganization.

    (e)     Upon fulfillment of various conditions precedent as set forth in the Agreement, the release by the Allianz Companies of Grace from any obligations under the

---

[3]     Unless otherwise noted, capitalized terms herein have the meanings ascribed in the Plan.

[4]     The following is only a summary of the most significant terms of the Agreement and is subject in all respects to the provisions of the Agreement itself, attached as Exhibit A, which shall control in the event of any conflict. Interested parties are referred to the Agreement for a more complete understanding of its terms.

Edwards Indemnity Agreement and a release of any interest of the Allianz Companies in the Edwards Letter of Credit.

11.    The Agreement includes a complete, mutual release of all claims under the Subject Policies and is structured as a sale of property pursuant to Bankruptcy Code Section 363.

12.    The Agreement further provides that if the Plan is confirmed, the Trust, at its own expense, will seek to establish that any Asbestos PI Claims subject to the Asbestos PI Channeling Injunction that are asserted against the Allianz Parties under the Subject Insurance Policies are enjoined as to the Allianz Parties and channeled to the Trust, to the extent that such Allianz Parties are eligible for protection under Bankruptcy Code Section 524(g); provided, however, that the Trust's obligation in this respect ceases after it has spent a sum equivalent to the Settlement Amount.

13.    The Agreement was negotiated in conjunction with a resolution of claims asserted by the plaintiffs in the Edwards Action against the bankruptcy estate, in which the plaintiffs agree to release the Edwards Bond. The motion seeking this Court's approval of the settlement between the Edwards Action plaintiffs and Grace is being filed and presented for the Court's consideration contemporaneously with this Motion. The two settlements work together to eliminate Plan objections by both the Allianz Companies and the Edwards Action plaintiffs, to increase available funding for the payment of Asbestos PI Claims, and to reduce substantially the Edwards Action plaintiffs' claims against the estate, and the Trust.

14.    Under the Agreement, Fireman's Fund has agreed to release all of its claims under the Edwards Letter of Credit except that Fireman's Fund reserves the right to draw under the Edwards Letter of Credit for additional annual premiums, if any come due, until the Edwards Bond is released as contemplated by the Agreement. This Agreement and the settlement agreement with the Edwards Action plaintiffs together will have the effect, among

5

other things, of limiting the amount of potential future draws on the Edwards Letter of Credit, thus reducing potential future claims by Wachovia. The Agreement makes clear that nothing in the Agreement shall affect any claims by Wachovia against Grace, the treatment of any such claims under the Plan, or any defenses that Grace or the Trust may have to any such claims.

### Relief Requested

15.    By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Agreement, which has been executed by the parties, and, by its terms, will become effective upon the approval of this Court.

### Basis for Relief

16.    This Court has statutory authority to authorize and approve the Debtors' entry into the Agreement pursuant to sections 105 and 363(b)(1) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). A settlement of claims and causes of action by a debtor in possession constitutes a use of property of the estate. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.*

17.    Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019(a). Before approving a settlement under Bankruptcy Rule

6

9019, a court must determine that the proposed compromise is in the best interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the compromise. *See Martin*, 91 F.3d at 393.

18.     The standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should only be rejected if they fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The standards set forth above are plainly met in this case.

19.     The Agreement is in the best interests of the Debtors, their estates and their creditors because it resolves all existing and potential future disputes between the parties regarding their respective rights and obligations with respect to insurance coverage under the Subject Policies with respect to asbestos-related claims and other claims, and provides substantial monies to fund the payment by the Trust of Asbestos PI Claims. If the Agreement

7

were not approved, the Trust likely would face challenges by the Allianz Companies to the Trust's alleged entitlement to coverage under the Subject Policies, and additional burden and cost in seeking to obtain the benefits of, and enforcing Grace's rights under, the Subject Policies.

20.    In addition, the Agreement releases Grace from significant obligations under the Edwards Indemnity Agreement. The Agreement eliminates potential claims against the bankruptcy estate and/or the Trust of up to $43 million, including potential claims by Fireman's Fund and by Wachovia Bank, N.A. under the Edwards Letter of Credit. And the Agreement eliminates Fireman's Fund's objections as to the treatment and classification of its claims under the Plan and removes the Allianz Companies as objectors to Plan confirmation.

21.    Finally, the Allianz Parties are purchasing the Subject Policies in good faith and are good faith buyers within the meaning of section 363(m) of the Bankruptcy Code, and are therefore entitled to the full protections of that provision, and otherwise have proceeded in good faith in all respects in connection with this proceeding. The negotiation and execution of the Agreement, including the transaction contemplated thereby, was at arms' length and in good faith. The Debtors and the Allianz Parties have not engaged in any conduct that would permit the Agreement or the sale of the Subject Policies or the transaction contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code. The consideration provided by the Allianz Companies pursuant to the Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration.

22.    For all of the foregoing reasons, the Debtors submit that the Agreement is fair and reasonable and in the best interest of the Debtors, their creditors and their estates, and thus the Debtors should be authorized to enter into the Agreement.

8

**Notice**

23.    Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, (iv) counsel to the Asbestos PI Future Claimants' Representative and counsel to the Asbestos PD Future Claimants' Representative, and (v) those parties that requested papers under Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the Agreement, and granting such other and further relief as the Court deems just and proper.

Dated: November __, 2009

KIRKLAND & ELLIS LLP
David M. Bernick
Lisa G. Esayian
300 N. LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Theodore Freedman
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

PACHULSKI, STANG, ZIEHL, YOUNG & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

*Co-Counsel for the Debtors and Debtors in Possession*

10