**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-1139(JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

**POST TRIAL REPLY BRIEF OF BNSF RAILWAY COMPANY REGARDING CONFIRMATION OF THE FIRST AMENDED CHAPTER 11 PLAN OF W.R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS DATED FEBRUARY 3, 2009**

In support of confirmation of the Plan,[1] the Plan Proponents do not say much regarding BNSF's objections to confirmation. What they do say, however, supports the conclusion that the Plan is not confirmable.

BNSF and Grace are parties to various agreements that require Grace to fully indemnify BNSF for claims made against BNSF arising out of Grace's operations at the Libby mine, and to provide BNSF with a defense of such claims. BNSF Ex. 7A. BNSF has objected to confirmation because the Plan impermissibly discriminates against BNSF by improperly eviscerating its contractual rights to full indemnity, as well as eliminating Grace's obligation to compensate BNSF for defense costs. Although BNSF's award is improperly and significantly reduced, the Plan places BNSF in the same class as other creditors who are receiving an award that

---

[1] Capitalized terms used herein the meaning ascribed to them in the Post Trial Brief Of BNSF Railway Company Regarding Confirmation Of The First Amended Chapter 11 Plan Of W.R. Grace & Co., *et al.*, The Official Committee Of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants' Representative, And The Official Committee Of Equity Security Holders Dated February 3, 2009.

#11733843 v1

-2-

is the "rough justice" equivalent to 100% of their claim and who have, not surprisingly, voted to accept the Plan.

The Plan Proponents respond to BNSF's objection by arguing that "Indirect PI Trust Claimants receive equal treatment with direct claimants." Plan Proponents' Main Post-Trial Brief In Support Of Confirmation Of Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code ("PP Main Post Trial Brief"), at page 78. They go on to explain, "The indirect claimant will then liquidate the claim in the same manner that the [direct] claim[ant] could've liquidated the claim. And then the -- and be paid at the payment percentage just in the same way the claimant would've been paid." *Id.* (quoting 9/14/09 Tr. 44 (Inselbuch)).

This, however, is exactly the problem.

BNSF does not simply "stand in the shoes" of the direct claimant. *Id.* Significantly, BNSF has bargained-for contractual rights that are completely eliminated by relegating BNSF to no greater award then what a direct claimant would receive. Even BNSF's state law contribution rights are abrogated by the Plan.

First, BNSF has the right to receive dollar-for-dollar indemnity of defense costs from Grace. By merely placing BNSF in the shoes of the direct claimant (who do not have the right to receive defense costs), the Plan eliminates this contractual right.

Second, BNSF has the right to recover defense costs for any claim asserted against it, even if it ultimately proves to be unmeritorious. However, the Plan eliminates BNSF's right to recover defense costs in such cases.

Third, BNSF has the right to receive full indemnity; however, the TDPs eliminate BNSF's right to full indemnity.[2]

The fact that the TDPs treat BNSF as though BNSF were entitled to nothing more than the direct claimant renders the Plan uncomfirmable. The Plan simply cannot re-write BNSF's contractual rights or modify its state law contribution rights. *See* 11 U.S.C. 502(b) & 1123(a)(4); *Raleigh v. Illinois Dept. of Revenue,* 530 U.S. 15, 24-25 (2000). Doing so results in improper disallowance of otherwise legitimate and compensable claims, thereby rendering the Plan unconfirmable.

The Plan Proponents also respond to BNSF's objection that the Section 524(g) injunction should enjoin claims against BNSF because such claims are derivative of Grace's liability, are subject to indemnification agreements, and are therefore indirect attempts to recover against Grace, by stating simply that Section 524(g) protection is permissive, not mandatory. PP Post Trial Brief at page 128. This, however, exposes the fundamental unfairness of the Plan.

---

[2]  This is accomplished as follows. The TDP establishes an "extraordinary claim" that is equal to 8 times the Scheduled Value, and is available if a claimant can establish that 95% or more of its exposure was to Grace asbestos, and that it cannot recover from a third party. Asbestos PI TDP § 5.4(a). The eight times multiplier was designed specifically in relation to the Libby claims, and, according to the Debtors, reflect the pre-petition value of the claims in Libby. Plan Proponents' Phase II Post-Trial Brief In Response To Confirmation Objections Of The Libby Claimants, page 12, ¶¶ 2.7 & 2.8.

However, if a claimant recovers against BNSF, such claimant would not qualify for extraordinary claim treatment, and would be relegated to either the Scheduled Value, or some value between the Scheduled Value and the Maximum Value if the claimant could establish, in Individual Review, certain factors that increase the value of the claim.. Abestos PI TDP ¶5.4(a); 9/14 Tr. 131:13-131:3 (Inselbuch). The alleged purpose for requiring a claimant to establish that it has no likelihood of recovery from another source is apparently to ensure that Grace is paying only its several share of liability. However, any claimant who has claims against a third party, even if those claims are based, ultimately, in Grace's asbestos-related activity, is prevented from receiving Extraordinary Claim treatment.

BNSF is limited to the claim that the direct claimant could have received. Thus, BNSF will only receive the Scheduled Value, or a claim between the Scheduled Value and the Maximum Value if the claimant would have received a greater award based on the criteria set forth in the Asbestos PI TDP at ¶ 5.3(b)(2), and only if the claimant herself did not receive such an award. BNSF will never be entitled to the Extraordinary Claim value, which is the value that the Plan Proponents themselves assert is the pre-petition average settlement for Libby claims.

-4-

The Plan – negotiated and supported by the ACC and the FCR – (1) does not include the derivative claims against BNSF in the channeling injunction, thereby permitting present and future claimants to continue to press their claims against BNSF; while simultaneously (2) eliminating the majority of BNSF's rights against Grace, thereby reducing the claims against the Asbestos PI Trust and increasing the funds available to pay present and future direct claimants. If the Plan Proponents elect to exclude BNSF from the protections afforded by Section 524(g), they must face the consequences of such election, and develop a Plan that allows BNSF's contractual indemnity and state law contribution claims to be allowed in full.

## JOINDER & RESERVATION OF RIGHTS[3]

BNSF incorporates by reference its previously filed objections and briefs and joins in other objectors' trial briefs, post-trial brief, reply briefs and objections.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

---

[3] In Arrowood's Phase II Post-Trial Brief In Support Of The Relief To Be Provided To It Under The Plan Of Reorganization, it states that BNSF "has withdrawn" its objections relating to insurance policies issued by Arrowood's predecessors. This is wrong. As acknowledged by Arrowood's counsel, the "overall understanding is that *to the extent these plan modifications are accepted by the court*, and the parties have consented to it, that BNSF intends to withdraw the notice of appeal that it has filed with respect to the Arrowood settlement." Tr. 9/16/09 at 85:7-25; 86:1-4 and 86:14-25; and 87:1-16 (emphasis added). Because the Plan has been modified as agreed upon by the parties, BNSF is not pursuing its objections relating to Grace's insurance or policies issued to BNSF. However, BNSF has not withdrawn these objections, and reserves its right to renew these objections should the Plan be modified in a manner inconsistent with the settlement.

## CONCLUSION

The Plan is unconfirmable because it improperly eliminates BNSF's bargained-for contractual rights, and its trust distribution mechanisms will result in an award equal to only a fraction of the value of BNSF's claims.

| | |
|---|---|
| Dated: November 20, 2009<br>Wilmington, Delaware | PEPPER HAMILTON LLP<br><br>/s/ Evelyn J. Meltzer<br>Evelyn J. Meltzer (DE No. 4581)<br>Hercules Plaza, Suite 5100<br>1313 North Market Street<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>(Courier No. 19801)<br>Telephone: (302) 777-6500<br>Facsimile: (302) 421-8390<br><br>Counsel for BNSF Railway Company |
| Of Counsel:<br><br>Edward C. Toole, Jr.<br>Linda J. Casey<br>PEPPER HAMILTON LLP<br>3000 Two Logan Square<br>18th & Arch Streets<br>Philadelphia, PA 19103<br>Tel: (215) 981-4000<br>Fax: (215) 981-4750<br><br>Counsel for BNSF Railway Company | |