IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Case No. 01-01139 (JKF) |
| | : | |
| W. R. GRACE & CO., et al., | : | Jointly Administered |
| | : | |
| Debtors. | : | Chapter 11 |
| | : | |
| | : | Related to: D.I. 19579, 20864, 21752, |
| | : | 22374, 23567, 23664 |
| | : | |
| | : | |

## REPLY OF MORGAN STANLEY SENIOR FUNDING, INC.
## TO DEBTORS' POST-TRIAL BRIEF REGARDING BANK LENDER ISSUES

EDWARDS ANGELL PALMER & DODGE LLP
Stuart M. Brown (Bar No. 4050)
R. Craig Martin (Bar No. 5032)
919 North Market Street
15th Floor
Wilmington, Delaware 19801
(302) 777-7770

-and-

KATTEN MUCHIN ROSENMAN LLP
Jeff J. Friedman (admitted pro hac vice)
Noah Heller (admitted pro hac vice)
Merritt A. Pardini (admitted pro hac vice)
575 Madison Avenue
New York, New York 10022
(212) 940-8800

*Attorneys for Morgan Stanley
Senior Funding, Inc.*

84414088v3
WLM 519462.1

# TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................................................. ii

Preliminary Statement ............................................................................................................... 1

Statement of the Facts ............................................................................................................... 3

Argument ................................................................................................................................... 3

A.    The Debtors Misconstrue Section 502(b)(2) of the Bankruptcy Code ............................. 3

B.    The Absolute Priority Rule, Solvency, And the Payment of Postpetition Interest ............. 6

    1.    The Rationale For the Absolute Priority Rule ....................................................... 6

    2.    The Interrelationship of Solvency, the Absolute Priority Rule, and the Payment of Postpetition Interest ................................................................................. 8

    3.    The Debtors are Solvent, and Thus They Must Pay Interest at the Morgan Stanley Contract Rate ................................................................................................. 9

Incorporation of Other Post-Trial Reply Briefs ...................................................................... 11

Conclusion ............................................................................................................................... 11

84414088v3
WLM 519462.1

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Bruning v. U.S,*
   376 U.S. 358 (1964)...........................................................................................................3

*In re Armstrong World Indus., Inc.,*
   432 F.3d 507 (3d Cir. 2005)...........................................................................................7, 8

*In re Armstrong World Indus., Inc.,*
   348 B.R. 111 (D. Del. 2006)..............................................................................................9

*In re Bank of New Eng. Corp.,*
   359 B.R. 384 (Bankr. D. Mass. 2007) ...............................................................................4

*In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,*
   791 F.2d 524 (7th Cir. 1986) .............................................................................................5

*In re Consolidated Rock Prods. Co.,*
   312 U.S. 510 (1941)...........................................................................................................7

*In re Dow Corning Corp.,*
   456 F.3d 668 (6th Cir. 2006), *cert. denied,* 549 U.S. 1317 (2007) ....................................9

*In re Hanna,*
   872 F.2d 829 (8th Cir. 1989) .............................................................................................5

*In re Kham & Nate's Shoes No. 2, Inc.,*
   908 F.2d 1351 (7th Cir. 1990) ...........................................................................................7

*In re Los Angeles Lumber Prods. Co.,*
   308 U.S. 106 (1939).........................................................................................................10

*In re Millburn Peat Co., Inc.,*
   384 B.R. 510 (N.D. Ill. 2008) ............................................................................................9

*In re National Energy & Gas Transmission, Inc.,*
   492 F.3d 297 (4th Cir. 2007) .............................................................................................3

*In re New Valley Corp.,*
   168 B.R. 73 (Bankr. D.N.J. 1994) .....................................................................................2

*In re Snyder,*
   99 B.R. 885 (Bankr. C. D. Ill. 1989)..................................................................................7

84414088v3
WLM 519462.1

*In re Telegroup, Inc.*,
   281 F.3d 133 (3d Cir. 2002)..................................................................................................7

*In re Titus & McConomy, LLP*,
   375 B.R. 165 (Bankr. W.D. Pa. 2007) ....................................................................................3

*In re Toy & Sports Warehouse, Inc.*,
   37 B.R. 141 (Bankr. S.D.N.Y. 1984)....................................................................................10

*In re United Artists Theatre Co.*,
   406 B.R. 643 (Bankr. D. Del. 2009) ......................................................................................4

*In re Valley View Shopping Center, L.P.*,
   260 B.R. 10 (Bankr. D. Kan. 2001) .....................................................................................10

*Kansas City Terminal Ry. Co. v. Central Union Trust Co.*,
   271 U.S. 445 (1926)...............................................................................................................7

*Nicholas v. U.S.*,
   384 U.S. 678 (1966)...............................................................................................................4

*Northern Pacific Ry. v. Boyd*,
   228 U.S. 482 (1913)...............................................................................................................7

*Vanston Bondholders Protective Committee v. Green*,
   329 U.S. 156 (1946)...........................................................................................................4, 8

**FEDERAL STATUTES AND CONGRESSIONAL RECORD**

11 U.S.C. § 502(b) .........................................................................................................................4, 6

11 U.S.C. § 502(b)(2) ............................................................................................................ *passim*

11 U.S.C. § 1124(1) ...........................................................................................................................6

11 U.S.C. § 1129(a)(7).................................................................................................................2, 10

11 U.S.C. § 1129(b) ............................................................................................. 2, 3, 6-7, 9, 10, 11

H.R.Rep. No. 95-595 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963 ........................................7

84414088v3
WLM 519462.1

Morgan Stanley Senior Funding, Inc. ("Morgan Stanley"), by and through its undersigned counsel, submits this Reply to Debtors' Post-Trial Brief Regarding Bank Lender Issues [D.I. 23664] (the "Bank Lender Issues Brief") and in further opposition to confirmation of the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimant's Representative, and the Official Committee of Equity Security Holders, dated February 27, 2009 (the "Plan").[1]

### Preliminary Statement

The Bank Lender Issues Brief is not directed to Morgan Stanley despite the many identical objections and issues that Morgan Stanley shares with the bank lender group and that Morgan Stanley has raised with the Court. Such issues concern impairment under the Plan, entitlement to post-petition interest at the rates provided in the underlying contracts given the Debtors' solvency, and the fact that the Plan violates the absolute priority rule. Morgan Stanley has raised and briefed these issues in its objection to the Plan [D.I. 21752] (the "Plan Objection"), its supplemental brief on the issue of impairment [D.I. 22502] (the "Impairment Brief"), and in its post-trial brief [D.I. 23636] (the "Morgan Stanley Post-Trial Brief"). Although the Bank Lender Issues Brief also raises issues, particularly concerning Plan-formulation negotiations with the Official Committee of Unsecured Creditors (the "Committee") that, according to the Debtors, militate against the relief sought by the Committee and the bank lender group, those issues are inapplicable to Morgan Stanley as Morgan Stanley did not participate in Plan negotiations.

The Bank Lender Issues Brief ignores a central argument raised by Morgan Stanley and the bank lender group which will not be repeated at length here: that the Plan's attempt to create unimpairment through a cash-out of unsecured Class 9 creditors is utterly inconsistent with

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

1

Congress's repeal of former section 1124(3) and its undisputed intention in doing so to assure that the result of the decision in In re New Valley Corp., 168 B.R. 73 (Bankr. D.N.J. 1994), does not reoccur.

Ultimately, the arguments raised in the Bank Lender Issues Brief fail to justify the fundamental defects in the Plan: namely, (i) that Morgan Stanley's claim remains impaired because interest at the rate provided in Morgan Stanley's underlying agreement with the Debtors (the "Morgan Stanley Contract Rate") will not be paid in respect of Morgan Stanley's allowed claim on the Effective Date; and (ii) the Debtors cannot satisfy the applicable section 1129(b) cramdown standards as the Plan violates the absolute priority rule by permitting equity holders to retain their valuable interests when Class 9 has rejected the Plan and the holders of Allowed Claims in Class 9 are not being paid in full.

Throughout the Bank Lender Issues Brief, the Debtors take the plainly incorrect position that 11 U.S.C. § 502(b)(2) bars the payment of postpetition interest under any circumstance. Not only do the Debtors warp section 502(b)(2)'s purpose, but the argument is inconsistent with other provisions of the Bankruptcy Code, including 1129(a)(7) and, if accepted, means that every case where a solvent debtor was compelled to pay interest on an unsecured claim was incorrectly decided and violated the rights of equity interest holders to not have creditors paid more than they are owed.

The Bank Lender Issues Brief also improperly seeks to shift the burden of proof on the issue of solvency away from the Plan Proponents. Further, the Debtors argue that solvency should not be evaluated as of the effective date of the Plan, but at a time prior thereto. This cannot possibly be correct under the law and the one bankruptcy court decision they cite from the District of Kansas is distinguishable from the facts here. If the Debtors want their equity holders to retain value well in excess of $400 million, the Debtors must prove that they are solvent. Any other result inappropriately shifts the economic risks from equity holders to creditors. If the Debtors are insolvent, their equity holders cannot retain value. The Debtors' contention that if the Court cannot tell whether the Debtors are solvent or insolvent, the proper

2

solution is to allow the equity holders to retain their valuable interests and treat the matter of post-petition interest as if the Debtors are insolvent, is outrageous. Such a result is patently inconsistent with well established precedent as to the implications of the absolute priority rule when equity holders retain value. Notably, section 1129(b) does not use the words solvency or insolvency; it focuses entirely on whether equity interest holders retain or receive value on account of their equity interests as in the instant case. Nevertheless, the simple reality is that the Debtors are solvent as of the Effective Date and, accordingly, they must pay the Morgan Stanley claim in full, plus interest at the Morgan Stanley Contract Rate.

## Statement of the Facts

The relevant facts regarding Morgan Stanley's status as the holder of an Allowed Class 9 General Unsecured Claim and the evidence provided at the Confirmation Hearing are detailed in the Morgan Stanley Post-Trial Brief and thus will not be restated here. See Morgan Stanley Post-Trial Brief at pp. 3 – 9.

## Argument

A.   **The Debtors Misconstrue Section 502(b)(2) of the Bankruptcy Code**

The Debtors argue that section 502(b)(2) creates an absolute bar to the payment of postpetition interest. See Bank Lender Issues Brief at 23-24, 26. The Debtors go so far as to say "No exceptions exist under Section 502." Id. at 1. They are incorrect. The case law is clear that the section 502(b)(2)'s prohibition against the payment of unmatured postpetition interest exists for two very specific purposes – (i) administrative convenience and; (ii) avoiding unfairness as between creditors. See, e.g., In re Titus & McConomy, LLP, 375 B.R. 165, 177-78 (Bankr. W.D. Pa. 2007), citing In re National Energy & Gas Transmission, Inc., 492 F.3d 297, 301 (4th Cir. 2007), citing Bruning v. U.S., 376 U.S. 358, 362 (1964). In discussing the origins of this rule, the United States Supreme Court stated:

3

> Accrual of simple interest on unsecured claims in bankruptcy was prohibited in order that the administrative inconvenience of continuous recomputation of interest causing recomputation of claims could be avoided. Moreover, different creditors whose claims bore diverse interest rates or were paid by the bankruptcy court on different dates would suffer neither gain nor loss caused solely by delay.

Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 164 (1946). Thus, aside from the obvious benefits of administrative convenience, disallowance of postpetition interest serves to create equality as between creditors so that claims with higher interest rates do not consume a greater percentage of the debtor's limited assets where those assets are inadequate to pay all creditors in full. Nicholas v. U.S., 384 U.S. 678, 683-84 (1966). As the Supreme Court stated, this rule:

> [R]ests at the bottom on an awareness of the inequity that would result if, through the continuing accumulation of interest in the course of subsequent bankruptcy proceedings, obligations bearing relatively high rates of interest were permitted to absorb the assets of a bankrupt estate whose funds were already inadequate to pay the principal of the debts owed by the estate.

Id. See also, In re United Artists Theatre Co., 406 B.R. 643, 651 (Bankr. D. Del. 2009) (describing the rule of administrative convenience and fairness among creditors and explaining that section 502(b)(2) has its roots in section 63(a) of the former Bankruptcy Act which allowed "interest on judgments and written instruments only to the date of bankruptcy.") Section 63(a) of the Bankruptcy Act was incorporated into 11 U.S.C. § 502(b) of the Bankruptcy Code. See In re Bank of New Eng. Corp., 359 B.R. 384, 387 (Bankr. D. Mass. 2007).

Thus, section 502(b)(2) is not intended to foster equality as between creditors and equity holders. While there are equitable bases in assuring parity among similarly situated creditors and to prevent one unsecured creditor from obtaining interest on its claim at the expense of other

4

creditors, there is no compelling equitable reason to enhance the position of junior equity holders at the expense of senior creditors. It is elemental that holders of equity and holders of debt have, by virtue of choosing one form of investment over the other, selected different levels of risk with corresponding prospects for reward. Creditors do not enjoy the potential, unlimited upside that equity holders have in the profits of a company. At the same time, creditors enjoy the privilege of knowing that they will be paid in full as their contracts require before equity holders receive those profits. Yet, as detailed below in connection with the absolute priority rule, it is this very elemental allocation of risk and reward that the Debtors attempt to turn on its head by not paying their creditors the full interest to which they are entitled and reallocating that unpaid interest to equity holders. The Debtors' characterization of such a result as "fair and equitable" has no foundation in the law. There is nothing "fair" or "equitable" about denying creditors what they have contracted for with the full acquiescence of equity holders to benefit those very equity holders and the Bankruptcy Code does not provide for, let alone compel, such a result.

More importantly, however, the entire issue of section 502(b)(2) and the non-payment of unmatured interest which the Debtors have raised here is irrelevant because of the fact that the Debtors are solvent and because a solvent debtor must pay postpetition interest. See, e.g., In re Hanna, 872 F.2d 829, 830-31 (8th Cir. 1989) ("[W]hen concerns for administrative convenience and fairness are not present, postpetition interest will be 'allowed' . . . Postpetition interest is also payable out of the assets of the bankruptcy estate – if the debtor ultimately proves to be solvent – before any sums are returned to the debtor."). See also, In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 791 F.2d 524, 527-28 (7th Cir. 1986) ("The only good reason for refusing to give a creditor in reorganization all that he bargained for when he extended credit is to help other creditors, the debtor's assets being insufficient to pay all creditors in full. . . . [I]f the bankrupt is

5

solvent, the task for the bankruptcy court is simply to enforce creditors' rights according to the tenor of the contracts that created those rights.").

For much the same reason, the Debtors' argument that section 502(b)(2) always prohibits the payment of postpetition interest is inconsistent with section 1124(1) which states that, for a claim to be rendered unimpaired (as the Debtors argue Class 9 is here) the plan must "leave[] unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(1). As detailed in the Plan Objection and in the Impairment Brief, unimpairment requires payment of postpetition interest at the Morgan Stanley Contract Rate. See Impairment Brief at 8-14; Plan Objection at ¶¶ 11-16.

The Debtors' reading of 502(b) as absolute would also mean that equity could receive or retain value while paying no interest on unsecured claims senior to equity – something even the Debtors themselves make no attempt to do here. The Debtors' argument that section 502(b)(2) always prohibits the payment of postpetition interest is tantamount to saying that every case where a solvent debtor was required to pay postpetition interest to unsecured creditors is incorrect and that equity holders were deprived of value in violation of the Bankruptcy Code.

Given Class 9's rejection of the Plan and the Debtors' solvency, the Plan Proponents are left with only two options: they must either render Morgan Stanley's claims truly unimpaired by paying interest at the Morgan Stanley Contract Rate or they must satisfy the cramdown standards of 1129(b) of the Bankruptcy Code and the absolute priority rule.

**B.    The Absolute Priority Rule, Solvency, And the Payment of Postpetition Interest**

    **1.    The Rationale For the Absolute Priority Rule**

This Court has been inundated with arguments from the Debtors, the bank lender group, the Committee and Morgan Stanley on the issue of the absolute priority rule as set forth in section 1129(b) which requires the payment of the allowed claims of an unsecured class in full if

6

equity holders receive or retain any property on account of their equity interests. See In re Armstrong World Indus., Inc., 432 F.3d 507, 512-13 (3d Cir. 2005).

The Debtors' clearly hope the Court will ignore the rationale behind the rule: namely, a recognition of the differing risks assumed by creditors and equity holders. In re Telegroup, Inc., 281 F.3d 133, 139 (3d Cir. 2002) ("The rationale for the absolute priority rule rests on the different risk-return packages purchased by stockholders and general creditors"). See also, Kansas City Terminal Ry. Co. v. Central Union Trust Co., 271 U.S. 445, 455 (1926) (stating that "to the extent of their debts creditors are entitled to priority over stockholders against all the property of an insolvent corporation"); In re Consolidated Rock Prods. Co., 312 U.S. 510, 529 (1941) (quoting Kansas City Terminal Ry. Co., 271 U.S. at 454).[2]

Taking this rationale into consideration, the absolute priority rule arguments presented to this Court (i.e., technical arguments over "balance sheet" solvency vs. insolvency and entitlement to default interest) are appropriately viewed as attempts by the parties to correctly allocate risk. Ultimately, what the absolute priority rule requires is that this Court acknowledge the risks accepted by equity holders (the potential of unlimited profits in exchange for being "last in line") as opposed to the risks accepted by creditors (a fixed return as contractually bargained for in exchange for no interest in the company's profits) and account for those risks by implementing what the parties bargained for. Viewed in this manner, the fundamental unfairness

---

[2] As explained by Court of Appeals for the Seventh Circuit, the absolute priority rule came into being as a cross between the interpretation of "fair and equitable" under the Bankruptcy Act of 1898 and the rule of contract law that, because contracts give creditors priority over shareholders, a plan of reorganization must do the same. See In re Kham & Nate's Shoes No. 2, Inc., 908 F.2d 1351, 1360 (7th Cir. 1990), citing Northern Pacific Ry. v. Boyd, 228 U.S. 482 (1913). The legislative history makes clear that 11 U.S.C. § 1129(b)(2)(B) continues the absolute priority rule. See In re Snyder, 99 B.R. 885, 887 (Bankr. C. D. Ill. 1989) ("Section 1129(b)(2)(B) continues the absolute priority rule"); H.R.Rep. No. 95-595 (1977), at 413, 1978 U.S.C.C.A.N. 5963, 6369 ("That is, if the class is impaired, then they must be paid in full or, if paid less than full, then no class junior may receive anything under the plan. This codifies the absolute priority rule from the dissenting class on down.").

7

of "last in line" equity holders retaining hundreds of millions of dollars in value while at the same time giving unsecured creditors less than what they bargained for is palpable.

### 2. The Interrelationship of Solvency, the Absolute Priority Rule, and the Payment of Postpetition Interest

Standing alone, the absolute priority rule is not concerned with solvency; it is concerned with the priority of distribution of the debtor's assets. Absent agreeing to less favorable treatment, senior creditors must be paid in full before any payment is made to junior creditors or equity holders.

The Debtors state that "[t]he absolute priority rule has nothing to do with the payment of postpetition interest." See Bank Lender Issues Brief at 43. In fact, the absolute priority rule has a great deal to do with postpetition interest where – as here – the debtor is solvent. As the cases cited above make clear, there is no equitable reason that a company who bargained with creditors on behalf of its equity holders to pay interest as provided for in contracts between those creditors and the company out of the assets of the company before equity holders retained value, should not be required to pay that interest merely because the company filed for relief under the Bankruptcy Code. It then becomes a simple question of fairness to require payment of postpetition interest where equity receives or retains value. See, e.g., Vanston, 329 U.S. at 164-65 ("[W]here an estate was ample to pay all creditors and to pay interest even after the petition was filed, equitable considerations were invoked to permit payment of this additional interest."); Armstrong, 432 F.3d at 513 (holding that, under the absolute priority rule, equity holders cannot retain any interests if an impaired dissenting claims of senior creditors does not receive full payment, including postpetition interest).

In fact, in the case of a solvent debtor that has the resources to pay, making the creditor whole by paying interest – and in particular, the interest that was contractually bargained for – is

8

the essence of absolute priority and it is not "fair and equitable" to deny the creditor the benefit of its original bargain:

> [I]n solvent debtor cases, rather than considering equitable principles, courts have generally confined themselves to determining and enforcing whatever pre-petition rights a given creditor has against the debtor. . . . When a debtor is solvent, then, the presumption is that a bankruptcy court's role is merely to enforce the contractual rights of the parties, and the role that equitable principles play in the allocation of competing interests is significantly reduced.

In re Dow Corning Corp., 456 F.3d 668, 679 (6th Cir. 2006), cert. denied, 549 U.S. 1317 (2007).

### 3. The Debtors are Solvent, and Thus They Must Pay Interest at the Morgan Stanley Contract Rate

As an initial point, because the issue of solvency in this case arises out of the Plan Proponents' attempt to obtain confirmation of the Plan and application of the absolute priority rule – itself part of 1129(b)'s fair and equitable requirements – the burden of proof on the issue of solvency rests squarely with the Plan Proponents and not, as the Debtors would have this court believe, with the objecting parties. See, e.g., In re Armstrong World Indus., Inc., 348 B.R. 111, 120 (D. Del. 2006) ("In the context of a cramdown, the debtor's standard of proof that the requirements of 11 U.S.C. § 1129 are satisfied is preponderance of the evidence.") (emphasis added). See also, In re Millburn Peat Co., 384 B.R. 510, 515 (N.D. Ill. 2008) ("Debtors had the burden of proving that the plans satisfied all requirements for confirmation, including that the plans did not unfairly discriminate against the unsecured creditors and were fair and equitable."). The Debtors made no attempt to address the issue of solvency (or insolvency) other than to posit that the condition could not be determined. See 9/16 Tr. at 115-16. As the Debtors failed to satisfy their burden, the Court is left with Mr. Frezza who proved the Debtors' solvency through use of three separate, commonly- recognized tests for solvency: (i) the "cash flow" test, 9/16 Tr. at 270, 277-80; (ii) the "adequate capital" test, 9/16 Tr. at 270-72, 281; and (iii) the "balance

9

sheet" test, 9/16 Tr. at 272-75, 291. Moreover, these conclusions were not a "feasibility study in disguise" as the Debtors assert. See Bank Lender Issues Brief at 30. The fact that Mr. Frezza relied upon the Debtors' own documents does not mean that his math (effectively, the Debtors' math) was wrong.

On the issue of when solvency must be measured, the Debtors rely entirely on In re Valley View Shopping Center, L.P., 260 B.R. 10 (Bankr. D. Kan. 2001) to say that assets and liabilities must be measured before then plan goes into effect, and that equity's retention of value does not equate to solvency. See Bank Lender Issues Brief at 31, 37-38. Valley View is not binding upon this Court, is not a correct statement of the law and should not be followed. Valley View addressed solvency in the context of entitlement to interest under the "best interests of creditors" tests of 1129(a)(7) and not under the cramdown requirements of 1129(b) and the absolute priority rule. At a more basic level, however, measuring solvency from a date other than the effective date makes no sense. What date should be selected? The petition date? A confirmation hearing date that can be months or more before the effective date?

If solvency is measured before the Effective Date as the Debtors suggest, and given that most debtors have liabilities exceeding their assets, then the so-called solvent debtor exception described above is rendered meaningless. Finding that a debtor can be insolvent while assets are still distributed to or retained by existing equity holders flies in the face of absolute priority rule. See In re Toy & Sports Warehouse, Inc., 37 B.R. 141, 152 (Bankr. S.D.N.Y. 1984) ("Implicit in [the absolute priority rule] is that stockholders cannot participate in a reorganization plan unless it is established that the debtor is solvent."), citing In re Consolidated Rock Prods Co., 312 U.S. 510 (1941); In re Los Angeles Lumber Prods. Co., 308 U.S. 106 (1939).[3] The Plan should not

---

[3] The Debtors' observation that once a company emerges from chapter 11 it is solvent may or may not be true as solvency and feasibility are not necessarily the same. Nevertheless, there is an

10

confirmed with equity retaining over $400 million in value unless solvency is established. The Court should not permit the Plan Proponents to argue that because it is impossible to determine solvency, the equity holders should be permitted to retain value as if the Debtors are solvent and creditors should be treated with respect to post-petition interest as if the Debtors are insolvent.

### Incorporation of Other Post-Trial Reply Briefs

Morgan Stanley hereby incorporates, to the extent not inconsistent herewith, the reply briefs of the Committee and the Bank Lender Group.

### Conclusion

For the reasons set forth above, as well as the reasons set forth in the Plan Objection, the Impairment Brief, and in its post-trial brief, Morgan Stanley respectfully requests that this Court deny confirmation of the Plan and grant such other and further relief as is just and proper.

Dated: November 20, 2009.    Respectfully submitted,

EDWARDS ANGELL PALMER & DODGE LLP

By:  /s/ R. Craig Martin
Stuart M. Brown (Bar No. 4050)
R. Craig Martin (Bar No. 5032)
919 North Market Street
15th Floor
Wilmington, Delaware 19801
(302) 777-7770

-and-

---

retained their interests. Morgan Stanley submits that section 1129(b)'s focus is not on solvency, as such, but on who will control the debtor's equity on the effective date of the plan.

11

12

          KATTEN MUCHIN ROSENMAN LLP
          Jeff J. Friedman (admitted pro hac vice)
          Noah Heller (admitted pro hac vice)
          Merritt A. Pardini (admitted pro hac vice)
          575 Madison Avenue
          New York, New York 10022
          (212) 940-8800

*Attorneys for Morgan Stanley Senior Funding, Inc.*