IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | * | |
| W.R. GRACE & CO., et al., | * | Chapter 11 |
| Debtors. | * | Case No. 01-01139 (JKF)<br>(Jointly Administered) |
| | * | Related Docket Nos. 21794, 22415, 23567, 23646 |

--------------------------------------------------------x

## PHASE II POST-TRIAL REPLY BRIEF FOR THE CNA COMPANIES

FORD MARRIN ESPOSITO WITMEYER
  & GLESER, L.L.P.
Elizabeth DeCristofaro (*pro hac vice*)
Wall Street Plaza, 23rd Floor
New York, New York 10005-1875
Telephone: (212) 269-4900
Facsimile: (212) 344-4294

WILDMAN, HARROLD, ALLEN
  & DIXON LLP
Jonathan W. Young
Jeff Chang
225 West Wacker Drive
Chicago, Illinois 60606-1229
Telephone:  (312) 201-2662
Facsimile:  (312) 416-4524

ROSENTHAL, MONHAIT & GODDESS, P.A.
Edward B. Rosenthal (Bar No. 3131)
P.O. Box 1070
Wilmington, Delaware 19899
Telephone: (302) 656-4433x6
Facsimile: (302) 658-7567

GOODWIN PROCTER LLP
Daniel M. Glosband (*pro hac vice*)
Exchange Place
Boston, Massachusetts 02109
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
-and-
Michael S. Giannotto (*pro hac vice*)
Frederick C. Schafrick (*pro hac vice*)
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444

*Counsel for Continental Casualty Company, Transportation Insurance Company and their
American Insurance Affiliates*

# TABLE OF CONTENTS

Page #

I.    REPLY TO ARGUMENTS MADE BY PLAN PROPONENTS ...................................1

    A.    No Reply is Needed With Respect To Certain Objections Raised By CNA..........................................................................................................................1

    B.    CNA Has Standing To Raise Its Objections. ........................................................2

    C.    The Proposed Release And Successor Claims Injunction In Favor Of Sealed Air Corporation Is Impermissible................................................................4

    D.    The Plan Impermissibly Abrogates The Anti-Assignment Provisions In The CNA Policies..............................................................................................7

        1.    Nothing In Section 524(g) Requires The Assignment Of Asbestos Insurance Rights To The Trust.................................................. 7

        2.    Any Assignment Of Asbestos Insurance Rights To The Asbestos PI Trust, As A Purported Successor Or Representative Of The Debtors, Would Result In An Impermissible Abrogation Of CNA's Contractual Rights................... 8

II.   REPLY TO CERTAIN ARGUMENTS MADE BY KANEB........................................9

    A.    Kaneb's Pursuit Of Allegedly "Direct" Insurance Rights Against CNA Would Adversely Impact the Estate by Triggering The Debtors' Indemnification Obligations To CNA. ....................................................................9

III.  REPLY TO CERTAIN ARGUMENTS MADE BY THE LIBBY CLAIMANTS .......................................................................................................................12

    A.    The Court Cannot Accept The Libby Claimants' Assertions That They Have "More Valuable" Rights To Insurance Coverage Than Other Asbestos PI Claimants...........................................................................12

    B.    The Court Should Reject The Argument Of The Libby Claimants That The Asbestos PI Channeling Injunction Should Be "Clarified" So As To Allow Their "Independent" Claims Against Insurers.....................14

CONCLUSION ..........................................................................................................................16

# TABLE OF AUTHORITIES

**CASES**                                                                                                 **PAGES**

*Continental Cas. Co. v. Employers Ins. Co. of Wausau*, 60 A.D.3d 128,
    871 N.YS.2d 48 (2008)........................................................................................13

*English v. General Elec. Co.*, 496 U.S. 72 (1990).........................................................8

*Gold Fields Am. Corp. v. Aetna Cas. & Sur. Co.*, 295 A.D.2d 289, 744 N.Y.S.2d 395
    (2002).....................................................................................................................13

*In re Columbia Gas Transmission Corp.*, 219 B.R. 716 (S.D. W. Va. 1998) ...............11

*In re Congoleum Corp.*, 426 F.3d 675 (3d Cir. 2005) ...............................................2, 3

*In re Congoleum Corp.*, No. 03-51524, 2005 Bankr. LEXIS 556
    (Bankr. D.N.J. Mar. 24, 2005) ...............................................................................3

*In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000) ...........................................4, 6

*In re Jet Fla. Sys.*, 883 F.2d 970 (11th Cir. 1989) .......................................................11

*In re Wallace & Gale Co.*, 385 F.3d 820 (4th Cir. 2004) ............................................13

*Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487
    (3d Cir. 1997)..........................................................................................................9

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001).................................................8

*Maryland Cas. Co. v. Continental Cas. Co.*, 332 F.3d 145 (2d Cir. 2003) ............ 12-13

*Zonolite Co. v. United States*, 211 F.2d 508 (7th Cir. 1954) .......................................13

**STATUTES**

Bankruptcy Code:

    11 U.S.C. §  105(a) ................................................................................................6
    11 U.S.C. §  502(e) .............................................................................................1, 5
    11 U.S.C. §  524(g) ........................................................................................ *passim*
    11 U.S.C. § 524(g)(2)(B)(i)(II) ............................................................................2, 8
    11 U.S.C. § 524(g)(2)(B)(i)(III).............................................................................2
    11 U.S.C. § 524(g)(4)(A)(ii)(III) ..........................................................................14
    11 U.S.C. §  1123(b)(3)(B) ................................................................................8, 9

Pursuant to the Court's <u>Order Establishing the Schedule of Post-Trial Briefing and Related Matters [Docket No. 23567]</u>, Continental Casualty Company and Continental Insurance Company, on their own behalf and on behalf of their predecessor companies, affiliates and subsidiaries which issued insurance policies to the Debtors (individually or collectively "CNA"), submit this Post-Trial Reply Brief in support of their Objections to the Proposed First Amended Joint Plan of Reorganization (the "Plan").[1]  CNA replies to certain arguments made in the Post-Trial Briefs filed by the Plan Proponents [Docket No. 23662], Kaneb Pipeline Operating Partnership, L.P. and Support Terminal Services, Inc. (collectively, "Kaneb") [<u>Docket No. 23647</u>], and the Libby Claimants [Docket No. 23649].

## I.    REPLY TO ARGUMENTS MADE BY PLAN PROPONENTS

### A.    No Reply is Needed With Respect To Certain Objections Raised By CNA.

In CNA's <u>Phase II Trial Brief [Docket No. 22415]</u> and its <u>Phase II Post-Trial Brief [Docket No. 23644]</u>, CNA set out the legal and factual bases of its Objections to the Plan.  With respect to most of its Objections, CNA anticipated and adequately addressed in these prior submissions the arguments made by the Plan Proponents in their <u>Main Post-Trial Brief in Support of Confirmation.</u>  CNA therefore merely refers the Court to CNA's prior submissions in this case with respect to the following Objections:

- The proposed members of the Asbestos PI Trust Advisory Committee ("TAC") will have conflicts of interest that violate the Rules of Professional Conduct and applicable Delaware trust law and those conflicts directly impact CNA as a creditor with Indirect PI Trust Claims.  <u>CNA Phase II Post-Trial Brief at 7-17</u>; <u>CNA Phase II Trial Brief at 10-20.</u>

- The Court's findings must clarify that Indirect PI Trust Claims are not subject to disallowance under section 502(e) of the Bankruptcy Code on the ground that

---

[1] The Plan is <u>PP Ex. 277.01 Rev.</u>, as revised at <u>Docket No. 23474, Ex. B.</u>  Citations to the Plan are to the version as modified through October 12, 2009.  Capitalized terms not otherwise defined herein have the same meaning as used in the Plan.

they are contingent and unliquidated on the date of Plan Confirmation.  <u>CNA Phase II Post-Trial Brief at 17-19</u>; <u>CNA Phase II Trial Brief at 20-22</u>.

• The Plan discriminates against Indirect PI Trust Claims by treating them less favorably than other Asbestos PI Claims.  <u>CNA Phase II Post-Trial Brief at 19-20</u>; <u>CNA Phase II Trial Brief at 22-23</u>.

• The Plan improperly limits section 524(g) protection to insurers who settle prior to the eleventh day following entry of the Confirmation Order, instead of allowing the Court to modify the section 524(g) injunction to protect insurers who settle coverage claims post-Confirmation.  <u>CNA Phase II Post-Trial Brief at 20-22</u>; <u>CNA Phase II Trial Brief at 23-27</u>.

• The Plan fails to comply with the funding requirements of section 524(g)(2)(B)(i)(II) in that it does not give the Asbestos PI Trust an equity stake in the Reorganized Debtor.  <u>CNA Phase II Post-Trial Brief at 22-24</u>; <u>CNA Phase II Trial Brief at 27-30</u>.

• The Plan fails to satisfy the requirement of section 524(g)(2)(B)(i)(III) that the Asbestos PI Trust own more than 50% of the shares of a Debtor upon "specified contingencies."  <u>CNA Phase II Post-Trial Brief at 24-27</u>; <u>CNA Phase II Trial Brief at 30-32</u>.

• The Court's findings must clarify that <u>Plan § 7.2.2(d)(iv)</u> does not impair CNA's rights under its Asbestos Insurance Reimbursement Agreement, including its rights to full indemnity under that Agreement.  <u>CNA Phase II Post-Trial Brief at 27-29</u>; <u>CNA Phase II Trial Brief at 32-34</u>.

• The Plan's section 524(g) injunction fails to include or properly characterize all of the CNA policies encompassed by CNA's Asbestos Insurance Reimbursement Agreement and CNA's Asbestos Insurance Settlement Agreements.  <u>CNA Phase II Post-Trial Brief at 29-32</u>; <u>CNA Phase II Trial Brief at 34-36</u>.

**B.    CNA Has Standing To Raise Its Objections.**

In its Post-Trial Brief, CNA demonstrated that it has (a) standing as a creditor holding Indirect PI Trust Claims, (b) standing as an insurer, and (c) standing under the Third Circuit's decision in <u>In re Congoleum Corp.</u>, 426 F.3d 675 (3d Cir. 2005), to raise its Phase II objections to the Plan.  <u>CNA Phase II Post-Trial Brief at 1-7</u>; <i>see also</i> <u>CNA Phase II Trial Brief at 3-10</u>.

In their Post-Trial Brief, the Plan Proponents assert that the "Insurance Companies who are not creditors of the Debtors have no standing to object to the Joint Plan other than issues

related to the transfer of Asbestos Insurance Rights and Joint Plan's treatment of Asbestos Insurance Reimbursement Agreements." Plan Proponents Main Post-Trial Brief at 79. That assertion is premised on the Plan Proponents' contention that, because the "Plan is entirely 'insurance neutral'" and "because standing is determined issue by issue in the federal courts," "Insurance Companies [in their capacity as Insurance Companies] have no standing to object to the Joint Plan on any other grounds." Id. at 80. CNA demonstrated in its Phase I Trial Brief [Docket No. 21938] that these contentions are misguided. First, the Plan, as presently constructed, may not be insurance neutral.[2] CNA Phase I Trial Brief at 12-17; Phase I Insurers Post-Trial Brief at 5-16 [Docket No. 22480]. Second, as the Court held in In re Congoleum Corp., No. 03-51524, 2005 Bankr. LEXIS 556, at *9-10 (Bankr. D.N.J. Mar. 24, 2005), CNA has standing in this Court to object to Confirmation on any and all grounds if the Plan is not clearly insurance neutral. CNA Phase I Trial Brief at 6-7.

In any event, CNA's Phase II Post-Trial Brief at 3-5 establishes that CNA is in fact a creditor holding Indirect PI Trust Claims, and therefore has standing to raise and litigate its Objections to Plan Confirmation even if the Plan is insurance neutral. The Plan Proponents do not, in either their Main Brief in Support of Confirmation [Docket No. 22733] or their Main Post-Trial Brief, take issue with CNA's standing as a creditor. CNA also showed in its Phase II Trial Brief at 6-9 that, in addition to its standing as a creditor and insurer, CNA also has standing under the Third Circuit's decision in In re Congoleum Corp., 426 F.3d 675 (3d Cir. 2005) to object to the selection of TAC members who will be in violation of the Rules of Professional Conduct because they will have conflicting duties as trust fiduciaries and as lawyers

---

[2] CNA and other insurers are negotiating with the Plan Proponents to see if they can reach agreement on insurance neutrality provisions that would satisfy CNA's concerns.

3

representing, under contingency fee arrangements, individual clients who will be pursuing claims before the Trust.

### C. The Proposed Release And Successor Claims Injunction In Favor Of Sealed Air Corporation Is Impermissible.

CNA's Phase II Post-Trial Brief at 35-38 shows that the release granted to Sealed Air Corporation ("Sealed Air") under Plan § 7.13 and the Successor Claims Injunction under Plan § 8.5.1 running in favor of Sealed Air impermissibly release and enjoin independent contractual indemnification claims that CNA has against Sealed Air arising out of various settlement agreements entered into between CNA and certain Grace parties, including the predecessor to Sealed Air. CNA showed that the release and injunction do not satisfy the standards set forth by the Third Circuit in *In re Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000), for injunctive relief protecting a non-debtor (Sealed Air) from claims by another non-debtor (CNA). Among other things, CNA showed that the release and the injunction were not "fair" to CNA, because they would take away CNA's contractual indemnity rights without any recompense. CNA also adopted arguments that had been made by OneBeacon American Insurance Company and Seaton Insurance Company that this Court's prior approval of the settlement between Sealed Air and the Debtors is not *res judicata* as to CNA on this issue. CNA Phase II Post-Trial Brief at 35.

The Plan Proponents Main Post-Trial Brief at 57-58 asserts that the release and Successor Claims Injunction in favor of Sealed Air are "fair" to the creditors of the Debtor (including to insurers with contractual indemnity rights against Sealed Air) because any non-asbestos claims enjoined by the Successor Claims Injunction will be paid in full under the Plan as Class 9 Unsecured General Claims. It is, however, not at all clear — and, indeed, it is doubtful — that CNA's contractual indemnification claims against Sealed Air for non-asbestos liabilities will in fact be paid at all, much less paid in full, by the Debtor.

4

As noted in <u>CNA's Phase II Post-Trial Brief at 36</u>, Kaneb has asserted environmental coverage claims against CNA under three CNA primary insurance policies and three excess policies that were the subject of CNA's May 30, 1997 Settlement Agreement (<u>CNA Ex. 38</u>) with various Grace entities (including the predecessor to Sealed Air).  That Agreement obligates Sealed Air to indemnify CNA against environmental claims asserted by third parties claiming coverage under those policies.  The Kaneb claims at issue currently appear to total some $76 million.[3]

While CNA's claims for indemnification from Sealed Air for costs incurred by CNA to date may be classified as Class 9 claims, any future indemnification claims or any currently unliquidated or contingent indemnification claims for non-asbestos liabilities that CNA has or may have against Sealed Air (such as future indemnity claims or contingent indemnity claims based upon any coverage obligation CNA might have to Kaneb) might be subject to disallowance under section 502(e) of the Code as being contingent and unliquidated on the date of Confirmation.  Consequently, unless this Court rules that the Debtors or the Reorganized Debtors are obligated to reimburse CNA in full, pursuant to the contractual indemnity provisions in its settlement agreements with various Grace parties, for any future non-asbestos claims that might be made by persons (such as Kaneb) under the settled insurance policies (including any claims that are contingent on the date of Confirmation), the release and Successor Claims Injunction in favor of Sealed Air would eliminate a valuable property right of CNA — the right

---

[3] Kaneb asserts that it has received a demand from the Department of Justice seeking payment of $70 million in environmental clean-up costs associated with the Otis Pipeline site, and it also filed a proof of claim for $6.2 million in environmental clean-up costs associated with the Macon, Georgia site.  *See* <u>Motion of Kaneb Pipe Line Operating Partnership, L.P., and Support Terminal Services, Inc. For an Order Modifying the Automatic Stay:  Macon, Ga. Site [Ex. OS-41 at xxx-001554]</u>; <u>Reply to Debtors' Objection to Motion of Kaneb Pipe Line Operating Partnership, L.P., and Support Terminal Services, Inc. For an Order Modifying the Automatic Stay [Ex. OS-42 at xxx-001566]</u>.

to obtain indemnity from Sealed Air — without any compensation.  The release and Successor Claims Injunction can not therefore be considered "fair" to CNA.  *See* <u>CNA Phase II Post-Trial Brief at 37-38</u>; <u>CNA Final Objections at 15, 35-36 [Docket No. 21794]</u>; <u>OneBeacon and Seaton Phase II Post-Trial Brief at 23-24 [Docket No. 23637]</u>.

The Successor Claims Injunction also fails to satisfy other requirements established by the Third Circuit for a non-debtor such as Sealed Air to obtain a section 105(a) injunction against another non-debtor:  namely, that a section 105(a) injunction must be necessary to the Debtor's reorganization and that this necessity must be supported by "specific factual findings."  <u>*In re Continental Airlines*, 203 F.3d at 214</u>.   The Plan Proponents have failed to show that the Successor Claims Injunction — which applies only to non-asbestos claims — is necessary for the successful reorganization of the Debtors.  While David Austern, the FCR, and Pamela Zilly, the Debtors' expert on certain issues, testified that Sealed Air would not have put forth significant monies to settle with the Debtors without section 524(g) protection against **asbestos claims**,[4] the Plan Proponents do not point to any evidence at trial that Sealed Air would not have put forth substantial monies without section 105(a) protection from **non-asbestos claims**.[5]  Since the Plan Proponents have the burden of proof to show that enjoining CNA's claims against Sealed Air, a non-debtor, are fair and necessary to the reorganization, this absence of proof means that the Court cannot confirm the Plan as currently proposed.

---

[4]  *See* <u>9/17/09 Tr. 59: 22 to 62:25</u> (Mr. Austern); <u>9/17/09 Tr. 131: 1 to 132: 3</u> (Ms. Zilly).

[5]  CNA also adopts the arguments in the <u>OneBeacon and Seaton Phase II Post-Trial Brief at 23-24</u> and in the <u>Reply Brief of OneBeacon and Seaton</u> as to why the Successor Claims Injunction as applied to non-asbestos claims against Sealed Air fails to satisfy the standards set out in *Continental Airlines*.  CNA further adopts the arguments in the <u>Reply Brief of OneBeacon and Seaton</u> as to why *res judicata* does not preclude challenges to the Successor Claims Injunction.

In their <u>Phase II Post-Trial Brief at 24-26</u>, OneBeacon and Seaton further argue that section 524(g) does not authorize the Court to issue a channeling injunction that would enjoin the direct contractual indemnification claims of OneBeacon and Seaton against non-debtor Fresenius Medical Care Holdings, Inc. with respect to Asbestos PI Claims.  To the extent that the Court accepts this argument, CNA requests that the Court make the same ruling regarding CNA's contractual indemnification claims against Sealed Air with respect to Asbestos PI Claims.

**D.    The Plan Impermissibly Abrogates The Anti-Assignment Provisions In The CNA Policies.**

In its <u>Phase II Trial Brief at 36-38</u> and <u>Phase II Post-Trial Brief at 32-34</u>, CNA showed that the Plan, by transferring the Debtors' rights under the CNA Asbestos Insurance Policies to the Asbestos PI Trust without CNA's consent, impermissibly abrogates the anti-assignment provisions in those policies.  CNA, in those briefs, addressed the main arguments to the contrary that have been proffered by the Plan Proponents.  In their <u>Main Post-Trial Brief at 87-89</u>, the Plan Proponents raise two other arguments that they claim legitimize the Plan's transfer of Asbestos Insurance Rights to the Trust.  We now address those additional arguments for the limited purpose of preserving CNA's position for appeal.[6]

**1.    Nothing In Section 524(g) Requires The Assignment Of Asbestos Insurance Rights To The Trust.**

The Plan Proponents assert that "[e]nforcement of any contractual anti-assignment rights would … conflict with the purposes of section 524(g) of the Code" and that "on the basis of conflict preemption principles, section 524(g) also impliedly preempts the anti-assignment provisions in the Insurance Companies' policies."  <u>Plan Proponents Main Post-Trial Brief 88-89</u>. That is incorrect.  For conflict preemption to apply, the conflict must be an actual conflict, not

---

[6] As noted in <u>CNA's Phase II Trial Brief at 38</u>, CNA acknowledges that this Court has recently upheld similar assignment provisions in other cases.

merely a hypothetical or potential one. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001); *English v. General Elec. Co*., 496 U.S. 72, 79 (1990). The Plan Proponents have not pointed to any language in section 524(g) that would create an actual conflict that makes it impossible for the Debtors to comply with both the Bankruptcy Code and their contractual obligations under the CNA policies.

In this regard, contrary to the assertions of the Plan Proponents in their Main Post-Trial Brief at 88-89, nothing in section 524(g) requires that the Debtors contribute insurance rights to the Asbestos PI Trust. The only statutory funding requirement is that a section 524(g) Trust be funded "in whole or in part by the securities of 1 or more debtors involved in such plan and by the obligation of such debtor or debtors to make future payments, including dividends …." 11 U.S.C. § 524(g)(2)(B)(i)(II). Hence, the Debtors can comply with both the policies' anti-assignment provisions and the funding requirements of section 524(g).

> **2.    Any Assignment Of Asbestos Insurance Rights To The Asbestos PI Trust, As A Purported Successor Or Representative Of The Debtors, Would Result In An Impermissible Abrogation Of CNA's Contractual Rights.**

The Plan Proponents further assert that the Asbestos PI Trust is the "successor" to the Debtors with respect to Asbestos Insurance Rights and thus is the "representative" of the estate within the meaning of section 1123(b)(3)(B) of the Code. Plan Proponents Main Post-Trial Brief at 87-88. Based on this premise, the Plan Proponents assert that the transfer of Asbestos Insurance Rights to the Asbestos PI Trust does not even trigger the anti-assignment provisions in the CNA policies. *Id.* This argument, too, is without merit.

Even if section 1123(b)(3)(B) permitted the Asbestos PI Trust's "appointment" to prosecute the Debtors' claims to insurance coverage, nothing in section 1123(b)(3)(B) suggests that such an appointment could enlarge the substantive scope of those coverage claims or

8

eliminate CNA's defenses to the claims. To the contrary, "'once a property interest has passed to the estate, it is subject to the same limitations imposed upon the debtor by applicable nonbankruptcy law.'" *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 492 (3d Cir. 1997) (citation omitted). In the case of CNA's insurance policies, these limitations include a prohibition on assigning the Debtors' rights under the policies to an entirely different entity — in this case, the Asbestos PI Trust. Nothing in section 1123(b)(3)(B) — or any other provision of the Bankruptcy Code — suggests that, by being appointed as a representative of the estate, an entity can change the substantive rights and obligations contained in the insurance policies, such as by assigning to itself policy rights in violation of the terms of the policies.

Of equal importance, while the Plan transfers the rights of the Debtors under the CNA policies to the Asbestos PI Trust, as CNA has pointed out in prior submissions, it is not clear that the obligations of the Debtors under the policies remain with the Debtors, are also transferred to the Trust, or somehow evaporate upon Plan Confirmation. CNA Phase I Trial Brief at 9-14. If the Trust were the true "successor" to the Debtors under the insurance policies, then all of the obligations under the policies would necessarily be transferred to the Trust. Any assignment of Asbestos Insurance Rights to the Asbestos PI Trust, even as a purported successor or representative of the Debtors, without an assignment of the policy obligations would result in an abrogation of CNA's contractual rights. *See* CNA Phase II Trial Brief at 37-38.

## II.    REPLY TO CERTAIN ARGUMENTS MADE BY KANEB

### A.    Kaneb's Pursuit Of Allegedly "Direct" Insurance Rights Against CNA Would Adversely Impact the Estate by Triggering The Debtors' Indemnification Obligations To CNA.

In its Phase II Post-Trial Brief at 14-17, Kaneb asserts that it possesses direct rights to coverage from CNA as a co-insured under certain CNA insurance policies issued to the Debtors

9

and as an assignee of rights under those same policies.  Kaneb maintains that the Plan cannot be confirmed if it precludes Kaneb from seeking coverage under those policies for certain environmental claims that have been asserted against it, or from seeking recovery from the Debtors nominally for those environmental liabilities so that it may then in turn claim against the CNA policies.  *Id.* at 17.  The reason, according to Kaneb, is that Kaneb's assertion of any such rights would not affect the "property of the estate" since (according to Kaneb) its recoveries from CNA would not deplete the assets of the estate.  These arguments are without merit.

First, Kaneb has failed to demonstrate that it has any rights under the CNA policies issued to the Debtors.  As discussed in CNA's Phase II Post-Trial Brief at 35-36, Kaneb's environmental coverage claims against CNA purportedly arise under certain primary and excess CNA policies that are the subject of a May 30, 1997 Settlement Agreement between CNA and Grace.[7]  CNA Ex. 38.  That Agreement expressly releases and exhausts the policy limits with regard to gradual pollution claims.  *See id.* at CNA0951, 959.  Kaneb's coverage claims fall within these settled and exhausted gradual pollution limits.  *See* CNA Phase II Post-Trial Brief at 36.  The Debtors also maintain that Kaneb would have no rights under any excess policies.[8]

The Court, however, need not — and should not — make any coverage determination as to Kaneb's claims.  Even assuming that Kaneb possesses any rights under CNA's policies, Kaneb's claims would in fact adversely impact the Debtors' estate because any such claims would trigger the Debtors' indemnification obligations to CNA under the May 30, 1997 Agreement.  *See* CNA's Phase II Post-Trial Brief at p. 35-36; CNA Ex. 38 at CNA0952.  Thus, it

---

[7] *See also* Exs. OS-40 at xxx-001104; OS-41 at xxx-001562-63 (listing policies under which Kaneb asserts coverage).

[8] Debtors' Objection to Motion of Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services for an Order Modifying the Automatic Stay at 18 [Docket No. 20703].

is simply incorrect for Kaneb to assert that its pursuit of claims under the CNA policies "would cause no harm to any of the Debtors …."  Kaneb Phase II Post-Trial Brief at 16.

Kaneb's assertion (*id.* at 17-19) that it could, without adversely affecting the assets of the estate, seek recovery nominally from the Debtors post-Confirmation so that it may then in turn claim against the CNA policies fails for the same reason that Kaneb cannot proceed directly against the CNA policies as a purported co-insured — in either case, the Debtors' indemnification obligations towards CNA are triggered at the time Kaneb seeks recovery under the CNA policies.  Courts will permit a plaintiff to establish a debtor's liability so as to recover from the debtor's insurer only where there is no prejudice to the debtor or the estate.[9]  In any event, Kaneb has no claim against CNA based on its status as a purported creditor of the Debtors because the Debtors, in a settlement agreement approved by this Court, released CNA from "all liabilities … for Property Damage Pollution Claims … (as defined in the [CNA] Settlement Agreement) …."[10]

---

[9] *See*, *e.g.*, *In re Jet Fla. Sys.*, 883 F.2d 970, 975 (11th Cir. 1989) ("The analysis provided by the available case law does not hinge upon whose insurer is liable, but rather upon the condition that the debtor not be personally liable in a way that would interfere with the debtor's fresh start in economic life."); *In re Columbia Gas Transmission Corp.*, 219 B.R. 716, 720-21 (S.D. W. Va. 1998) (plaintiff not allowed to proceed with suit against debtor for limited purpose of establishing debtor's liability and recovering from debtor's excess insurer where debtor would be primarily liable for cost of litigation).

[10] *See* Debtors' Motion for an Order Approving a Settlement and Release Agreement with Continental Casualty Company at 4 [Docket No. 7619].  The Court approved the settlement on March 15, 2005.  Order Approving the Settlement Agreement and Release with Continental Casualty Company [Docket No. 8023].  The settlement resolved issues raised in pending New York coverage actions "with the exception of assertions of coverage for personal injury claims arising from Grace-related business operations in Libby, Montana …."  Motion at 4.

III.     **REPLY TO CERTAIN ARGUMENTS MADE BY THE LIBBY CLAIMANTS**

A.     **The Court Cannot Accept The Libby Claimants' Assertions That They Have "More Valuable" Rights To Insurance Coverage Than Other Asbestos PI Claimants.**

In their Post-Trial Brief at 21-24, the Libby Claimants, as they have done repeatedly in this proceeding, argue that they "possess different, and far more valuable, insurance rights than the overwhelming majority of claimants" to the Asbestos PI Trust. This argument is based upon the purported premise that the Libby Claimants' Asbestos PI Claims are covered under the "non-products" portions of the policies issued to the Debtors by CNA and other insurers, and that these policies do not contain any aggregate limits for "non-products" coverage. The Plan Proponents have responded by correctly pointing out that "much of Grace's primary-layer non-products coverage has been settled and the remainder is disputed by CNA." Plan Proponents' Phase II Post-Trial Brief in Response to Confirmation Objections of the Libby Claimants at 28 (heading) [Docket No. 23659]. Indeed, the Libby Claimants' blithe assertion that all of them have some special right to recover substantial amounts under CNA's primary policies is belied by the record before the Court. The Libby Claimants ignore numerous provisions in the policies, as well as legal issues, that would preclude any substantial recovery for the Libby Claimants, including the following:

- CNA's primary policies expressly exclude coverage for "bodily injury to any employee of the insured arising out of and in the course of his employment by the insured." CNA Exs. 19(A) at 3; 19(B) at 3; 19(C) at 1. Consequently, there is no coverage under the policies for the hundreds of claims brought by Libby Claimants who are former Grace employees. See Trial Brief of Libby Claimants in Opposition to Confirmation at 10 [Docket No. 22439] (stating that 299 of 964 Libby Claimants are former Grace employees). Thus, although the Libby Claimants assert that they are entitled to coverage, nearly a third of them would have no claim or "rights" under CNA's policies just on this basis alone.

- The Second Circuit has held that CNA's policies do *not* provide coverage for injuries arising from the long-term, gradual release of contaminants or pollutants into the air or onto land. See *Maryland Cas. Co. v. Continental Cas. Co.*, 332

12

F.3d 145 (2d Cir. 2003); *see also*, *e.g.*, <u>Gold Fields Am. Corp. v. Aetna Cas. & Sur. Co.</u>, 295 A.D.2d 289, 744 N.Y.S.2d 395 (2002).  Injury due to the long-term pollution or contamination of the town of Libby by releases of asbestos by Grace onto the land or into the atmosphere is exactly what has been alleged by the Libby Claimants.

- There are numerous ways in which the Libby Claims would be considered claims for "products" or "completed operations" coverage and thus fall under the provisions of policies that have been exhausted or settled under a 1990 Settlement Agreement (<u>CNA Ex. 32(A)</u>) (even as that agreement has been characterized by the Debtors).  *See, e.g.*, <u>In re Wallace & Gale Co.</u>, 385 F.3d 820, 834 (4th Cir. 2004); <u>Continental Cas. Co. v. Employers Ins. Co. of Wausau</u>, 60 A.D.3d 128, 871 N.YS.2d 48 (2008); *see also* <u>Tr. 9/9/09 at 37:23-38:14; 43:6-45:7</u> (Mr. Hughes testifies that exposure to vermiculite concentrate, after processing on Zonolite Mountain, was exposure to a Grace commercial product); <u>Zonolite Co. v. United States</u>, 211 F.2d 508, 512 (7th Cir. 1954) ("The vermiculite concentrate was already a commercially marketable mineral product when it started on the seven-mile journey to Libby.").

- The CNA policies provide that "[f]or the purpose of determining the limit of the Company's liability, all Personal Injury and Property Damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered arising out of one occurrence."  <u>CNA Exs. 19(A) at 9</u>; <u>19(B) at 7</u>; <u>19(C) at 6</u>.  Thus, the Libby Claims would be deemed a single occurrence, and the only recovery available to all of the Libby claimants combined would be the "per occurrence limits" of each policy ($1 million per occurrence for each policy, for a total of $3 million).  Moreover, any recovery under the 1983-1985 policy is subject to a $500,000 deductible (<u>CNA Ex. 19(C) at 6</u>).

In 2000, CNA instituted a declaratory judgment action in New York to seek a declaration that the Libby Claims were not covered and/or were subject to prior settlement agreements.  That action remains pending.[11]  This Court would be compelled to grapple with these and other coverage issues before it could even consider accepting the Libby Claimants' contention that they have some unique "insurance rights" that differentiate them from other Asbestos PI Claimants.  The Court, of course, has repeatedly stated that it will not be making coverage determinations in this proceeding.  That is the correct stance.  The proper forum to decide coverage issues is a coverage action, and there is no need or justification for the Court to resolve

---

[11] *See* <u>Tr. 9/1l/09 at 279:12-19</u> (Mr. Posner); <u>Ex. PP-276 at PP014098-99</u>.

coverage issues in this proceeding.  As the Plan Proponents demonstrate in their <u>Brief in Response to Confirmation Objections of the Libby Claimants at 28-37</u>, the Court does not need to resolve coverage issues to reject the contention of the Libby Claimants that the Plan's disposition of Grace's insurance coverage discriminates against them.

> **B.**    **The Court Should Reject The Argument Of The Libby Claimants That The Asbestos PI Channeling Injunction Should Be "Clarified" So As To Allow Their "Independent" Claims Against Insurers.**

The <u>Libby Claimants Post-Trial Brief at 4-5</u> notes in passing that the Libby Claimants are asserting "Independent Claims" against certain insurers (including CNA) for the insurers' "own [allegedly] tortious conduct" and complains that the Plan Proponents have "refused [the Libby Claimants'] request to clarify the proposed Asbestos PI Channeling Injunction to make it clear that it does not purport to enjoin Independent Claims."  The Court should reject any request by the Libby Claimants for such "clarification."  As the Plan Proponents state in their <u>Main Post-Trial Brief at 68</u>, the Libby Claimants have provided "no definition of what their 'independent claims' are, how the Insurance Injunction operates to bar them, or why barring such claims is not appropriate."  Certainly, again as the Plan Proponents state in their <u>Main Post-Trial Brief at 68</u>, the Libby Claimants have come forth with no evidence even suggesting that they have claims against insurers that are "unrelated to Debtors' liability or to asbestos coverage."

Under section 524(g)(4)(A)(ii)(III) of the Code, the key issue for purposes of enjoining a claim against an insurer is whether the insurer "is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor to the extent that such alleged liability … arises by reason of … [the insurer's] provision of insurance to the debtor …."  The Asbestos PI Channeling Injunction in <u>Plan § 8.2.1</u> enjoins Holders of Asbestos PI Claims from proceeding against Asbestos Protected Parties, including Settled Asbestos Insurance Companies.  The term "Asbestos PI Claims" is in turn defined to include claims for death, disease, bodily injury, etc.,

"caused, or allegedly caused, based on, arising or allegedly arising, from or attributable to, directly or indirectly, in whole or in part, acts or omissions of one or more of the Debtors."  See Plan § 1.1(33).   Therefore, to the extent that the Libby Claimants assert Asbestos PI Claims against Settled Insurance Companies, they are by definition seeking to hold the insurers directly or indirectly liable for the conduct of, claims against, or demands on the Debtors, and such claims are properly enjoinable under section 524(g).

Phrased differently, and as the Plan Proponents state in the Main Post-Trial Brief at 68, the Plan "enjoins direct actions against insurers only to the extent of such insurers' 'provision of insurance to the debtor or a related party,'" as authorized by section 524(g).  If an action falls within those parameters, it is enjoined; if not, it is not enjoined.  Referring to a particular Libby claim as "independent" or "non-independent" does not further this inquiry.  Nor is it relevant whether the claim is based upon some alleged "independent" duty created by State law.  Rather, the only relevant inquiry is whether the claim in question seeks to hold the insurer directly or indirectly liable for the conduct of, claims against or demands on the Debtor, or stated more succinctly, whether the claim is an Asbestos PI Claim.  A determination as to whether a particular claims falls, or does not fall, within the protection of section 524(g) can only be made upon the factual record concerning that claim — and not in the abstract as the Libby Claimants contend.  There is thus no need for any clarification of the Plan.

Furthermore, a failure to give settling insurers the full injunctive relief provided by the Code will undermine the equality of treatment that Congress attempted to build into section 524(g) trusts, because certain asbestos claimants with creative lawyers will institute additional lawsuits against insurance companies, in particular States with laws that they perceive to be beneficial, so as to recover more monies for their asbestos-related injuries than will be obtained

15

by other claimants with similar injuries. Of equal importance, as CNA has previously briefed, insurers will be less likely to settle or will settle for less if they cannot obtain the full relief injunctive relief authorized by section 524(g). *See*, *e.g.*, <u>CNA Post-Trial Brief at 21-22.</u>

For these reasons, the Court should reject any attempt by the Libby Claimants to weaken the Asbestos PI Channeling Injunction as applied to Settled Asbestos Insurance Companies.

## CONCLUSION

For the foregoing reasons, as well as those set forth in its prior briefs, CNA respectfully requests that the Court not confirm the Plan unless the Plan is modified to satisfy CNA's objections, and that the Court provide such further relief as is just and proper.

Dated:  November 20, 2009

FORD MARRIN ESPOSITO WITMEYER &
GLESER, L.L.P.
Elizabeth DeCristofaro (*pro hac vice*)
Wall Street Plaza, 23rd Floor
New York, New York 10005-1875
Telephone: (212) 269-4900
Facsimile: (212) 344-4294



WILDMAN, HARROLD, ALLEN
& DIXON LLP
Jonathan W. Young
Jeff Chang
225 West Wacker Drive
Chicago, Illinois 60606-1229
Telephone:  (312) 201-2662
Facsimile:  (312) 416-4524

ROSENTHAL, MONHAIT &
GODDESS, P.A.


By:  /s/ Edward B. Rosenthal
Edward B. Rosenthal (*Bar No. 3131*)
P.O. Box 1070
Wilmington, Delaware 19899
Telephone: (302) 656-4433x6
Facsimile: (302) 658-7567

GOODWIN PROCTER LLP
Daniel M. Glosband (*pro hac vice*)
Exchange Place
Boston, Massachusetts 02109
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
-and-
Michael S. Giannotto (*pro hac vice*)
Frederick C. Schafrick (*pro hac vice*)
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444

*Counsel for Continental Casualty Company, Transportation Insurance Company*
*and their American Insurance Affiliates*

16