# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., et al.,[1] | Case No. 01-1139 (JKF) |
| Debtors. | Jointly Administered |
| | Re: Docket Nos. 19579, 20872, 21785 |

**THE STATE OF MONTANA'S POST-TRIAL REPLY BRIEF IN OPPOSITION TO CONFIRMATION OF THE FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS**

Dated: November 20, 2009

Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
Matthew P. Ward (#4471)
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Ph: (302) 252-4320

Counsel for the State of Montana

---

[1] The Debtors are the following entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals Inc.), W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), ECARG, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, LB Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc. E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

WCSR 4241799

**TABLE OF CONTENTS**

Page

STATEMENT OF THE CASE AND NATURE OF THE PROCEEDINGS ............................... 1

ARGUMENT .......................................................................................................................... 2

I.    THE PLAN FAILS TO COMPLY WITH BANKRUPTCY CODE SECTION 524(g) BY IMPROPERLY SUBJECTING MONTANA'S REQUESTS FOR CONTRIBUTION AND INDEMNIFICATION TO THE ASBESTOS PI TRUST......................................... 2

II.   THE PLAN VIOLATES THE ABSOLUTE PRIORITY RULE AND PROHIBITION ON UNFAIR DISCRIMINATION BY PROVIDING FOR FAVORABLE TREATMENT TO CLASSES THAT ARE EQUAL OR JUNIOR IN PRIORITY TO CLASS 6 ASBESTOS PI CLAIMS. ................................................................................. 3

III.  THE TRUST DISTRIBUTION PROCEDURES FAIL TO COMPLY WITH BANKRUPTCY CODE SECTIONS 1123(a)(4) AND 524(g)(2)(B) BY GIVING DISPARATE TREATMENT TO CLAIMS WITHIN A CLASS. ...................................... 4

IV.  THE TRUST DISTRIBUTION PROCEDURES AND THE PLAN ARE NOT FAIR AND EQUITABLE BECAUSE THEY PROVIDE FOR A DISTRIBUTION TO MONTANA THAT VIOLATES THE MONTANA CONSTITUTION. .......................... 7

V.   THE PLAN IS INFEASIBLE. ...................................................................................... 8

VI.  THE PLAN WAS NOT PROPOSED IN GOOD FAITH. ................................................ 9

INCORPORATION BY REFERENCE AND RESERVATION OF RIGHTS ........................... 10

WCSR 4241799

## TABLE OF AUTHORITIES

Page

**Cases**

In re Armstrong World Indus., Inc., 432 F.3d 507 (3d Cir. 2005)....................................................4

Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.),
    744 F.2d 332 (3d Cir. 1984)...............................................................................................2, 3, 9

JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.), 400 B.R. 429 (D. Del. 2009).............2, 9

In re Penn Cent. Transp. Co., 71 F.3d 1113 (3d Cir. 1995).........................................................2, 9

**Statutes**

11 U.S.C. § 101................................................................................................................................2

11 U.S.C. § 524...............................................................................................................2, 3, 4, 10

11 U.S.C. § 1123..............................................................................................................................4

11 U.S.C. § 1129.........................................................................................................................8, 9

11 U.S.C. § 1141..............................................................................................................................9

The State of Montana ("Montana"), by and through its undersigned counsel, hereby files its post-trial reply brief (the "Post-Trial Reply Brief") in opposition to confirmation of the First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders (Docket No. 20872) (as such plan has been or may be modified and/or amended, the "Plan"), and in support, states as follows:

## STATEMENT OF THE CASE AND NATURE OF THE PROCEEDINGS[2]

On February 27, 2009, the Plan Proponents filed the version of the Plan that currently is up for confirmation before this Court, as well as the accompanying Disclosure Statement.

On March 9, 2009, this Court entered its order (Docket No. 20944) approving the Disclosure Statement.

On May 20, 2009, Montana filed its Brief in Opposition to Confirmation of the Plan (Docket No. 21785), and on July 13, 2009, Montana filed its Phase II Trial Brief in Opposition to Confirmation of the Plan (Docket No. 22429) (the "Phase II Brief" and, collectively, the "Pre-Trial Briefs").[3]  Additionally, on November 2, 2009, Montana filed its Post-Trial Brief in Opposition to Confirmation of the Plan (Docket No. 23654) (the "Post-Trial Brief").

On November 3, 2009, the Plan Proponents filed their Main Post-Trial Brief in Support of Confirmation of the Plan (Docket No. 23662) (the "Plan Proponents' Post-Trial Brief").

---

[2]  The Phase II Brief (as defined herein) contains a more elaborate statement of the case and nature of the proceedings, as well as a thorough statement of the facts, each of which is incorporated herein by reference.

[3]  Each capitalized term not otherwise defined herein shall have the meaning ascribed to it in the Phase II Brief.

WCSR 4241799

This is Montana's Post-Trial Reply Brief in opposition to confirmation and in response to the Plan Proponents' Post-Trial Brief.

**ARGUMENT**

**I. THE PLAN FAILS TO COMPLY WITH BANKRUPTCY CODE SECTION 524(g) BY IMPROPERLY SUBJECTING MONTANA'S REQUESTS FOR CONTRIBUTION AND INDEMNIFICATION TO THE ASBESTOS PI TRUST.**

As set forth in more detail in the Phase II Brief, Montana maintains that the Plan fails to comply with Bankruptcy Code section 524(g). Section 524(g) only enjoins "claims" or "demands," and Montana's requests for contribution and indemnification are not yet "claims" or "demands". See 11 U.S.C. § 101(5) (stating that a "claim" is defined as a "right to payment"). Specifically, in applying the section 101(5) definition in the context of contribution and indemnification claims, the Third Circuit Court of Appeals has determined that such claims were not "claims" for purposes of the Bankruptcy Code because a right to payment had not yet arisen. See Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.), 744 F.2d 332, 335-36 (3d Cir. 1984) (reversing district court, and concluding that the automatic stay did not apply to indemnification and contribution claims that relate to a debtor's prepetition acts but for which the claimant did not have a right to payment until after the petition date); In re Penn Cent. Transp. Co., 71 F.3d 1113, 1115 (3d Cir. 1995) (holding that under Frenville, "claims for contribution and indemnity could not accrue until the [underlying] complaints were filed" and therefore because the claimants "could not have filed [claims] during the . . . bankruptcy, . . . their claims could not have been discharged"); JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.), 400 B.R. 429, 432 (D. Del. 2009) (affirming bankruptcy court's decision that tort claims did not arise prior to the effective date, and therefore were not discharged, citing Frenville); see also Phase II Brief Part I.B (explaining definition of "claim" and "demand", and demonstrating that Montana's requests for contribution and indemnification do not fall within either category).

2

In the Plan Proponents' Post-Trial Brief, the Plan Proponents do not cite, let alone distinguish, the Frenville decision or its progeny, nor do they otherwise demonstrate how Montana's requests for contribution and indemnification are "claims" or "demands" as such terms are used in Bankruptcy Code section 524(g). Indeed, the Plan Proponents have acknowledged that "virtually none of the Indirect PI Trust Claims have arisen yet." Debtors' Chart Summarizing Final Objections to its First Amended Joint Plan of Reorganization, at p. 20 (Docket No. 23114). Therefore, the Plan Proponents appear to have tacitly conceded that Montana's claims for contribution and indemnification are not yet "claims" or "demands" for purposes of the Bankruptcy Code.

Montana continues to object to the Plan on the basis that it fails to comply with Bankruptcy Code section 524(g). Because a section 524(g) injunction only applies to "claims" or "demands", Montana's requests for contribution and indemnification should not be subject to an injunction under that section, and the Court should not confirm the Plan as currently drafted.

## II. THE PLAN VIOLATES THE ABSOLUTE PRIORITY RULE AND PROHIBITION ON UNFAIR DISCRIMINATION BY PROVIDING FOR FAVORABLE TREATMENT TO CLASSES THAT ARE EQUAL OR JUNIOR IN PRIORITY TO CLASS 6 ASBESTOS PI CLAIMS.

Montana has objected to the Plan because it disregards the absolute priority rule and prohibition on unfair discrimination by seeking to cram down the Plan on the impaired Class 6 Asbestos PI Claims while, at the same time, leaving classes that are equal or junior in priority unimpaired. See Phase II Brief Parts III & IV. As an example, Class 6 Asbestos PI Claims are impaired. See Plan § 3.1.6(d) ("Class 6 is impaired."). Yet the Plan provides that certain other classes of unsecured claims are unimpaired. See Plan § 3.1.5(c) (Class 5 Intercompany Claims is "unimpaired"); id. § 3.1.7(c)(ii) (Class 7A Asbestos PD Claims (except US ZAI PD Claims) its "unimpaired"); id. § 3.1.9(f) (Class 9 General Unsecured Claims is "unimpaired"). Perhaps

3

more tellingly, <u>the Plan even provides for a distribution to holders of equity interests</u>.  See <u>id.</u> § 3.1.10(b) ("On the Effective Date, Class 10 Equity Interests in the Parent shall be retained, subject to the issuance of the Warrant, the terms of the Share Issuance Agreement, and the Stock Trading Restrictions Term Sheet.").  Such a result directly violates the Third Circuit Court of Appeals' ruling in <u>In re Armstrong World Industries, Inc.</u>, 432 F.3d 507, 518 (3d Cir. 2005) (affirming denial of confirmation because plan violated absolute priority rule).

In the Plan Proponents' Post-Trial Brief, the Plan Proponents have ignored Montana's unfair discrimination argument altogether.  Moreover, with respect to Montana's absolute priority rule argument, the Plan Proponents have simply stated in passing, without any further elaboration whatsoever, that "[t]here has been absolutely no evidence presented during the Confirmation Hearing that the absolute priority rule has been violated."  Plan Proponents' Post-Trial Brief, at p. 8.  However, Montana's argument is legal, not evidentiary or factual, in nature, and relies exclusively on the very language in the Plan, which speaks for itself and concedes that other unsecured classes are unimpaired and that an equity class is receiving a distribution.  Montana continues to maintain that because the Plan leaves holders of Class 6 Asbestos PI Claims impaired while, at the same time, leaving other unsecured classes unimpaired, and while providing for a distribution to holders of equity interests, the Plan violates the absolute priority rule and the prohibition on unfair discrimination.

### III. THE TRUST DISTRIBUTION PROCEDURES FAIL TO COMPLY WITH BANKRUPTCY CODE SECTIONS 1123(a)(4) AND 524(g)(2)(B) BY GIVING DISPARATE TREATMENT TO CLAIMS WITHIN A CLASS.

Additionally, Montana maintains that the Trust Distribution Procedures that are implemented by the Plan violate Bankruptcy Code sections 1123(a)(4) and 524(g)(2)(B)(ii)(V) because those procedures will result in disparate treatment among claims within the same class.  <u>See</u> Phase II Brief Part V.A.

The Plan Proponents have responded to Montana's argument by maintaining simply that "the Indirect PI Trust Claimants receive equal treatment with direct claims. Indirect claimants 'step into the [ ] shoes' of direct claimants." Plan Proponents' Post-Trial Brief, at p. 78.

However, the disparity is far too obvious for the Plan Proponents to explain away in such cursory fashion. Indeed, the Trust Distribution Procedures will result in unfair disparate treatment of Indirect PI Trust Claims (including contribution and indemnification claims) in disregard of the Bankruptcy Code's requirements in at least three respects.

First, the requirement that a contribution and indemnification claimholder must first make payment to the purportedly injured direct claimholder disregards applicable state law, which allows a tort system defendant the right to pursue contribution prior to paying a judgment or settlement to the plaintiff. <u>See</u> Phase II Brief Part V.B n. 11; <u>see also</u> Objection of Garlock Sealing Techs., LLC to Confirmation of the Plan, at Part A (Docket No. 21795). The Plan Proponents have not responded to this particular disparity in any way in the Plan Proponents' Post-Trial Brief.

Second, the Trust Distribution Procedures give disparate treatment by imposing additional restrictions and requirements on holders of Indirect PI Trust Claims (including contribution and indemnification claims) that are not imposed on holders of other claims within Class 6. For example, the Trust Distribution Procedures limit the allowable amount of an Indirect PI Trust Claim to the amount paid to the underlying asbestos plaintiff, without inclusion of attorneys' fees or other defense costs; they require that for a claimant to assert a presumptively valid Indirect PI Trust Claim, it must obtain a full release from the underlying asbestos creditor; and provide for a "maximum value" for Asbestos PI Claims which could result in negative disparate treatment to holders of Indirect PI Trust Claims in the event that a judgment is entered

against it in an amount in excess of the maximum value. See Phase II Brief Parts V.D.[4] Because these requirements are imposed only on the holders of Indirect PI Trust Claims, and not other claims within Class 6, it is not true that "[i]ndirect claimants 'step into the [ ] shoes' of direct claimants," as the Plan Proponents incorrectly suggest. Plan Proponents' Post-Trial Brief, at p. 78. Nor is it true that the holder of an Indirect PI Trust Claim will "be paid at the payment percentage just in the same way the claimant would've been paid." Id. To the contrary, because of the Trust Distribution Procedures, the underlying asbestos plaintiff will have necessarily already received payment from the holder of the Indirect PI Trust Claim before the Indirect PI Trust Claim seeks indemnification or contribution from the trust. The payment to that underlying asbestos plaintiff would not have been subjected to any payout percentage or to any maximum amount. Then, the Indirect PI Trust Claim holder will seek contribution or indemnification from the Asbestos PI Trust, but will only receive contribution or indemnification at the payout percentage, whatever that percentage may be, and its recovery may even be further reduced if the payment exceeds the maximum amount. The Plan Proponents have not otherwise responded to any of these particular disparities in any way in the Plan Proponents' Post Trial Brief.

Third, the first-in, first-out timing mechanism for Class 6 Asbestos PI Claims that are implemented by the Trust Distribution Procedures will result in disparate treatment. See Phase II

---

[4] During the confirmation trial, Elihu Inselbuch acknowledged that a holder of an Indirect PI Trust Claim could only obtain a recovery against the Asbestos PI Trust in the "maximum amount", even if a judgment in excess of the maximum amount had been entered against the holder of the Indirect PI Trust Claim. See 9/14/09 Tr. pp. 111-12 (Inselbuch) ("Q: [W]here a judgment is rendered against a co-defendant and now has a contribution indemnification claim that exceeds the maximum allowed amount, could it have a negative impact based on how the TDP is set up currently? A: It can only recover up to the maximum value at the payment percentage. Q: Okay. A: If that is a negative impact, it is a negative impact.").

6

Brief Part V.C. The Plan Proponents have responded by stating that "[t]his argument ignores the fact that the FIFO queue applies equally to all claimants." Id. at p. 122. While the first-in, first-out mechanism may apply to all claimants, it will have a dramatically disparate effect among those parties. Of course it will be supported by those claimants that are able to assert their claims immediately. However, it will have a significantly negative impact on the holders of requests for contribution and indemnification (such as Montana) who must wait until any liability (such as on the underlying failure to warn allegations) is established before they may assert their requests for contribution and indemnification. Therefore, while the mechanism might apply to all claimants, it will have a disparate effect on those claimants. In fact, during the confirmation trial, David Austern, the Future Claimants Representative, acknowledged that because of the first-in, first-out mechanism, "there is a possibility" that the Trust may not even have sufficient funds to pay requests for contribution and indemnification, which are established at a point later in time than the direct asbestos claims. 9/17/09 Tr. p. 71 (Austern).

For all of these reasons, the Trust Distribution Procedures should be required to be revised to eliminate the potential for disparate treatment among claims within the same class. For this reason as well, the Court should not confirm the Plan at this time.

IV. **THE TRUST DISTRIBUTION PROCEDURES AND THE PLAN ARE NOT FAIR AND EQUITABLE BECAUSE THEY PROVIDE FOR A DISTRIBUTION TO MONTANA THAT VIOLATES THE MONTANA CONSTITUTION.**

As set forth in the Pre-Trial Briefs and the Post-Trial Brief, the Plan is unfair and inequitable with respect to Montana by providing for a distribution to Montana that violates the Montana Constitution. (The Plan provides for a distribution of, among other things, stock to holders of Class 6 Asbestos PI Claims. In circumstances such as the Debtors' bankruptcy, the Montana Constitution prohibits Montana from holding such stock.) The Plan Proponents have not responded in any way to this argument in the Plan Proponents' Post-Trial Brief.

7

## V.     THE PLAN IS INFEASIBLE.

Montana continues to maintain that if it is successful in demonstrating that its claims are not yet "claims" for purposes of the Bankruptcy Code, such claims may not be discharged. See Phase II Brief Part VII.  Consequently, Montana continues to believe that the Plan is unfeasible because Montana could assert up to $750 million in non-dischargeable claims against the Debtors even after the Plan goes effective, thereby causing the need for the Debtors' further financial reorganization.  See Phase II Brief Part VII.

In the Plan Proponents' Post-Trial Brief, the Plan Proponents allege that "Montana has provided no basis for its assertion that it might have a claim for $750 million against Grace within one year of the Effective Date."  Plan Proponents' Post-Trial Brief, at p. 16.  To the contrary, Montana specifically set forth the explanation for the possibility of such a claim in its Phase II Brief.  See Phase II Brief, at p. 6 n.4 (explaining that "[t]he plaintiffs in the State Court Actions have asserted claims that, based on their position, could total $750 million.  Specifically, there are approximately 1,000 known claimants, each of which maintains that their claims are subject to a statutory maximum of $750,000 pursuant to Mont. Code Ann. § 2-9-108(1).").

The Plan Proponents also overlook the standard for approval of confirmation set forth in Bankruptcy Code section 1129(a)(11).  That section requires a plan proponent to demonstrate that "the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor."   11 U.S.C. § 1129(a)(11).   Here, the Plan Proponents acknowledge in their post-trial brief that their expert witness testified that it was only "possible" (i.e., the expert witness did not testify that it was likely) that the reorganized debtors would be able to pay such a claim.  See Plan Proponents' Post-Trial Brief, at p. 16 ("Ms. Zilly testified that even if the Debtors were faced with a $750 million liability based on Montana's claims one year

8

after the Effective Date, it is <u>possible</u> that Grace could pay such a claim." (emphasis added) (quoting 10/13/09 Tr. pp. 157 58 (Zilly))).

More importantly, the Plan Proponents did not cite or discuss the legal authority relied upon by Montana in demonstrating that its requests for contribution and indemnification are not "claims" that may be discharged. <u>See</u> Phase II Brief Part VII; <u>see also</u> 11 U.S.C. § 1141(c) (providing that after confirmation of a plan, property of the estate is free and clear only of all "claims and interests"); <u>id.</u> § 1141(d)(1)(A) (providing for a discharge only of "any debt that arose before the date of such confirmation"); <u>In re Penn Cent. Transp. Co.</u>, 71 F.3d 1113, 1115 (3d Cir. 1995) (holding that under <u>Frenville</u>, "claims for contribution and indemnity could not accrue until the [underlying] complaints were filed" and therefore because the claimants "could not have filed [claims] during the . . . bankruptcy, . . . their claims could not have been discharged"); <u>JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.)</u>, 400 B.R. 429, 432 (D. Del. 2009) (affirming bankruptcy court's decision that tort claims did not arise prior to the effective date, and therefore were not discharged, citing <u>Frenville</u>). Specifically, in the Plan Proponents' Post-Trial Brief, the Plan Proponents do not cite, let alone distinguish, the <u>Frenville</u> decision or its progeny, nor do they otherwise demonstrate how Montana's requests for contribution and indemnification are "claims" that may be discharged.

**VI.    THE PLAN WAS NOT PROPOSED IN GOOD FAITH.**

Montana believes that the Plan fails to comply with Bankruptcy Code section 1129(a)(3) because it was not proposed in good faith. Specifically, the foundation for the Plan -- the Asbestos PI Settlement (as defined below) -- occurred without any participation from Montana and other key constituencies in the negotiations. <u>See</u> Phase II Brief Part VIII.

In the Plan Proponents' Post-Trial Brief, the Plan Proponents simply maintain that "the good faith determination does not require that every individual creditor participate in plan

9

settlement negotiations." Plan Proponents' Post-Trial Brief, at p. 9. The Plan Proponents take the position that any lack of participation by Montana in the settlement discussions was mitigated by the fact that "an overwhelming majority of Class 6 participated in the negotiation through the Asbestos Claimants' Committee, and approved the terms of the settlement by voting in favor of the Joint Plan." Id.

The Plan Proponents' response is altogether circuitous. First, as set forth above, Montana maintains that it should not be classified within Class 6 at all because its requests for contribution and indemnification are not subject to a section 524(g) injunction. See supra Part I. Therefore, the approval of the Plan by Class 6 is irrelevant to mitigate the unfairness resulting from Montana being omitted from the settlement negotiations. Second, as further set forth above, Montana maintains that the Plan's disparate treatment of different claims within Class 6 is improper. See supra Part III. Therefore, it comes as no surprise to Montana that the Plan was approved by a majority of the holders of Class 6 claims, namely, the majority that is favored within that Class, to the detriment of Montana and other so-called Class 6 claimants that do not support the Plan. Accordingly, Montana maintains that the Plan Proponents have not responded sufficiently to Montana's position that the Plan was proposed in bad faith. For this reason as well, the Court should deny confirmation of the Plan as currently proposed.

**INCORPORATION BY REFERENCE AND RESERVATION OF RIGHTS**

Montana hereby incorporates by reference its previously filed objections to the Plan, including the Pre-Trial Briefs and the Post-Trial Brief. Montana also reserves all rights to raise additional arguments and objections to the Plan or any amended plan (including, without limitation, by means of filing supplemental objections to the Plan), and to join, incorporate by reference, and/or adopt as its own, any arguments or reservations of rights regarding the Plan or any amended plan, either at or prior to any hearing with respect to any such plan.

WHEREFORE, Montana respectfully requests that this Court (i) sustain the objections articulated in this Post-Trial Reply Brief as well as the Post-Trial Brief and the Pre-Trial Briefs, (ii) deny confirmation of the Plan, and (iii) grant Montana such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: November 20, 2009 | Respectfully submitted, |
| | Womble Carlyle Sandridge & Rice, PLLC |
| | /s/ Matthew P. Ward |
| | Francis A. Monaco, Jr. (#2078) |
| | Kevin J. Mangan (#3810) |
| | Matthew P. Ward (#4471) |
| | 222 Delaware Avenue, Suite 1501 |
| | Wilmington, DE 19801 |
| | Ph: (302) 252-4320 |
| | Fax: (302) 252-4330 |
| | |
| | Counsel for the State of Montana |