IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | (Jointly Administered) |
| W.R. GRACE & CO., *et al.*, | ) | |
| | ) | Case No. 01-01139 (JKF) |
| Debtors. | ) | |
| | ) | Re: Docket No. 23567 |

ANDERSON MEMORIAL HOSPITAL'S POST-TRIAL
REPLY BRIEF REGARDING FEASIBILITY

Given the magnitude of this case, the Debtors are remarkably cavalier in their approach to perhaps the most fundamental question: whether they will actually be able to fulfill the obligations set forth in the Debtors' First Amended Plan of Reorganization ("Plan"). There has not been a single representative of the Debtors themselves who testified in support of their financial projections. The Debtors have made no effort to quantify the amount, or even the potential range, of the "pass-through" liabilities which will be the obligations of the reorganized Debtors under the Plan. Rather, the Debtors have relied exclusively on the testimony of their retained financial advisor in support of feasibility – testimony which in material respects is founded upon unsupported and unexplained assumptions and premises.

It was clear at the conclusion of the confirmation hearing that the Debtors had failed to meet their burden of demonstrating the feasibility of the Plan, and the Plan Proponents' Post-Trial Brief simply re-confirms that conclusion. This should be a concern not only to Anderson, but to every creditor who must look to the reorganized Debtors for payment, and most

importantly to the Court, which has an independent obligation to verify that the Debtors have satisfied all the requirements for confirmation.[1]

### No Evidence of Magnitude of Pass-Through Liabilities

In its initial Post-Trial Brief Regarding Feasibility [DI 23650], Anderson demonstrated that the Plan indisputably provides for certain liabilities to "pass through" the Plan, including liabilities for unresolved traditional property damage ("PD") claims and future PD demands. Under the Plan, those claims *must* be paid in full; indeed, the Debtors characterized PD claims as "unimpaired" under the Plan and did not solicit their votes on the Plan based upon that representation. As such, it was the Debtors' burden to demonstrate that they will have sufficient funds to pay, in full, all such claims. It is impossible to do so without knowing the first part of the equation: what is the potential amount of those claims? But the Debtors have not presented any such evidence, and their Post-Trial Brief provides no meaningful explanation for this failure.

Instead, the Debtors simply resort to boilerplate citations regarding the standard of proof for feasibility. *See* Plan Proponents' Post-Trial Brief [DI 23662, p. 11, fn. 22, p. 14]. The problem, though, is not that the Debtors have failed to establish that success is "inevitable" or "guaranteed." It is that they have failed to provide the Court with the basic evidence needed to reach the conclusion that the Debtors will do what they promise in the Plan: how much can they be expected to have to pay, and will it be available? Without knowing the answers to both those questions, it is impossible to know whether the Plan has a "reasonable probability of success."

The Debtors attempt to sidestep the issue by referring to certain assumptions for which they never presented any evidence. They note that Ms. Zilly "considered Grace's reserve of $37.3 million to resolve pending, unsettled Asbestos Property Damage Claims and to pay

---

[1] In accordance with the Court's scheduling order, Anderson's post-trial brief regarding all other issues particular to Anderson will be submitted on December 8, 2009, and those issues will not be addressed in this brief.

defense costs for any future property damage Demands that may be made after the Effective Date." [DI 23662, pp. 14-15]. However, no witness from the Debtors ever substantiated or explained that "reserve," and the only "source" for that information in the record is a *question* asked by Debtors' counsel, rather than any evidence presented at the confirmation hearing.[2] Indeed, Anderson was repeatedly prevented from making inquiry as to the components of that "reserve," or the methodology and assumptions underlying the "reserve," including at trial. Having prevented Anderson from obtaining discovery or otherwise inquiring as to the basis and methodology for this "reserve," the Debtors cannot now rely on it for purposes of demonstrating the feasibility of their Plan.

It is the Debtors' obligation to account for all pending unresolved claims as part of their feasibility analysis, including claims which have been disallowed but which are on appeal. In re Harbin, 486 F.3d 510 (9th Cir. 2007). It is clear that they have not done so here. With regard to Anderson, the Debtors' glib assumption that because the Bankruptcy and District Courts have already ruled against class certification, "there is no reason to believe that this ruling will be reversed on appeal" [DI 23662, p. 15] is manifestly insufficient to satisfy this requirement. No doubt the Debtors similarly presumed, right up until the time that the District Court reversed this Court's summary judgment order on statute of limitations grounds in the State of California case, that there was "no reason to believe" those claims would be reversed on appeal either.

Indeed, setting aside the Anderson class claims, the State of California claims alone are in the asserted amount of more than $130 million (an amount that is more than triple the Debtors' unexplained and unsubstantiated "reserve"). The appellate reversal of the State of California

---

[2] See Plan Proponents' Post-Trial Brief, DI 23662], p. 15, fn. 38, referring to 10/13/2009 Tr. 76 (Zilly). The referenced portion of the transcript reflects a question by Mr. Bernick, which refers to a statement given by Mr. Shelnitz that was not introduced as evidence at trial. As this Court well knows, Anderson sought to take Mr. Shelnitz's deposition with respect to these matters but was denied that opportunity on the basis of attorney-client and work product privileges. Mr. Shelnitz did not testify at trial as to these matters and was not subject to cross-examination.

claims has implications not only for those claims directly, but indirectly – and much more broadly – for the universe of potential future demands that may be asserted against the PD Trust.

With regard to future PD demands, we already know that, according to the Debtors' own expert witness, Denise Martin, the Debtors are "likely to be subject to *substantial* future property damage demands," and that "the amounts, numbers and timing of such future demands are indeterminate." [PP 206 – emphasis added]. Indeed, in order to justify the extraordinary relief provided under 11 U.S.C. § 524(g), the Debtors must demonstrate that those future demands are so substantial that the pursuit of them outside of the procedures set forth in the Plan is likely to threaten the Plan's purpose to deal equitably with present claims and future demands. Yet the Debtors have made no effort to quantify the potential range of those demands in order to demonstrate that the reorganized Debtors will be able to satisfy those obligations in full.

Ironically, the Debtors' position as to the necessity of estimating unresolved claims for purposes of confirmation has shifted over the course of this case. When the case was first filed, the Debtors filed an Informational Brief describing their intention to address their liabilities for asbestos-related claims first through litigation, and then with respect to any unresolved claims, through estimation. [PP Ex. 244] The Debtors further acknowledged, back then, that such estimation "should be completed before Grace's plan can be confirmed," citing In re MacDonald, 128 B.R. 161, 164 (Bankr. W.D. Tex. 1991) for the proposition that estimation of unliquidated and contingent claims "is essential prior to the hearing on confirmation of a plan, in order for the court to evaluate the feasibility of the plan without delaying the confirmation process"). [PP Ex. 244, p. PP010017-18].

Several years into this case in late 2004, in connection with an earlier-filed plan, the Debtors filed a Motion for Entry of an Order Seeking the Estimation of Asbestos Claims and Certain Related Relief [DI 6899]. In that motion, the Debtors asked the Court to adopt

estimation procedures for both asbestos personal injury and PD claims (including both traditional and ZAI claims) so that the "estimation procedures can be used to determine the feasibility of the Plan". Id., p. 2. The purpose of such procedures was for "determination of the requisite monetary allocations to the Asbestos Trust." Id., p. 6.

It is peculiar that now, with a Plan that purports to provide for the 100% payment of unresolved and future traditional PD claims, rather than a fixed amount to distribute to the Trust, the Debtors have abandoned that approach, contrarily insist that 11 U.S.C. § 1129(a)(11) does not require them to project unliquidated or contingent claims, and instead ask this Court to confirm a Plan that calls for the reorganized Debtors to pay unquantified "pass through" liabilities of an uncertain and unspecified range. The Debtors have failed to present sufficient evidence to quantify the magnitude or range of unresolved PD claims and future demands that ultimately may be payable by the reorganized Debtors, making it impossible to support a conclusion that the Plan is feasible.

### No Evidence of Ability to Satisfy Pass-Through Liabilities

The Plan Proponents' Post-Trial Brief further confirms that the evidence at the confirmation hearing was insufficient to demonstrate an ability to satisfy the "pass-through" liabilities. The only evidence relied upon by the Debtors in their Post-Trial Brief was Ms. Zilly's testimony that reorganized Grace could pay PD Claims of up to $1.6 billion over 25 years. [DI23662, pp. 14-15]. This testimony fails to satisfy the Debtors' burden because (1) it is not based upon any established underlying factual predicate as to the potential range of such liabilities; and (2) it is inconsistent with the structure of the payment obligations set forth in the Plan.

As noted above, the Debtors presented no competent evidence as to the anticipated amount or even the potential range of either unresolved PD claims or future PD demands. There

is no record basis for expecting these "pass through" liabilities to be $37 million, $1.6 billion, $3.7 billion, or some other amount. In the absence of evidence as to the potential magnitude of the pass-through liabilities, Ms. Zilly's testimony as to the reorganized Debtors' ability to pay $1.6 billion over 25 years is arbitrary and meaningless.

The Plan Proponents' Post-Trial Brief likewise provides no explanation for the relevance of Ms. Zilly's testimony in light of the payment structures set forth in the Plan. The Plan does not provide the means for the reorganized Debtors to stretch out their liabilities to the PD Trust over a 25 year period. To the contrary, the Plan Documents require the reorganized Debtors to fund the PD Trust every six months with the amount of all unresolved PD Claims and Future PD Demands which become allowed during the prior six-month period. Ms. Zilly's testimony accordingly does nothing to establish the Plan's feasibility. It is entirely irrelevant and lacking in probative value because it presumes a payment structure that is not available to the reorganized Debtors under the Plan.

As demonstrated in Anderson's initial Brief, Ms. Zilly acknowledged that she had not determined the amount of allowed PD claims or demands *in any particular time period* that would render the Plan unfeasible. This failure to answer this most fundamental question precludes a finding of feasibility as is necessary for confirmation of the Plan.

### No Evidence of Required Financing

Though the Plan depends on the Debtors obtaining exit financing of nearly $1 billion, the Plan Proponents essentially ask this Court to enter a confirmation order based on nothing more than the "confidence" of the Debtors' financial advisor that they will be able to obtain such financing. That is an insufficient basis for a finding of feasibility, particularly given the Debtors' apparent reversal of course as to their intention to obtain financing commitments in advance of the confirmation hearing. In cases with much less at stake, debtors are routinely required to

present much more concrete evidence that any financing required under the Plan has in fact been obtained. It is illogical to apply a more lenient standard to a case of such a greater magnitude. *Compare* In re Global Ocean Carriers Ltd., 251 B.R. 31 (Bankr. D. Del. 2000) (feasibility demonstrated by evidence that exit financiers had issued commitment letters and/or agreed to term sheets which were contingent only on final documentation, confirmation, and no adverse changes); In re Gunnison Center Apartments, LP, 320 B.R. 391, 404 (Bankr. D. Col. 2005) (where the only assurance of success of funding efforts was the principal's expressed confidence in his ability to do so, "this 'trust me' approach is insufficient to give the Court comfort that the proposed financing will come to fruition").

Any reliance on Ms. Zilly's confidence level is further undermined by the fact, as demonstrated in Anderson's initial Brief, that the financial information provided to the prospective lenders incorporated the Debtors' unsubstantiated $37 million "reserve" for all prospective PD claim liabilities – a figure which has no support in the record of the confirmation hearing. If the exit financing proposals previously obtained by the Debtors were solicited based upon unreliable information – and the Debtors have put forward no evidence to support their reliability with respect to that projection – then there is no sound basis for relying on those earlier proposals to conclude that exit financing will be available to the Debtors as required under the Plan. Since the Plan depends on exit financing, and the only evidence as to the availability of exit financing is based solely upon the personal confidence of the Debtors' financial advisor, in reliance on proposals that were solicited using unfounded assumptions, the Plan Proponents have failed to meet their burden of demonstrating the feasibility of the Plan.

## CONCLUSION

The Plan Proponents have failed to quantify the scope of the liabilities that will "pass through" to the reorganized Debtors with respect to unresolved traditional PD Claims and Future PD Demands, even though the Plan requires the reorganized Debtors to pay such claims in full. Consequently, there is a complete failure of proof with respect to feasibility, since the Plan Proponents cannot demonstrate either the amount of the liabilities expected to be dealt with under the Plan, or the ability of the reorganized Debtors to satisfy those liabilities. The Plan Proponents have also failed to present adequate evidence of a committed source for the exit financing which is necessary for the Debtors emergence from bankruptcy under the Plan, and instead ask creditors and the Court to rely solely on the unfounded confidence of their financial advisor that such financing will be available.

For all of the foregoing reasons, and those expressed in Anderson's prior pleadings, Anderson submits that the Court should find and conclude that the Debtors have failed to establish that the Plan is feasible, and accordingly confirmation must be denied.

DATED: November 20, 2009

                                                                                                        _____

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728
E-mail:    loizides@loizides.com

Daniel A. Speights (SC Fed. ID No. 4252)
C. Alan Runyan (SC Fed ID No.3683)
SPEIGHTS & RUNYAN
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC 29924
Telephone:    (803) 943-4444
Facsimile:    (803) 943-4599

- and -

John W. Kozyak
David L. Rosendorf
KOZYAK TROPIN & THROCKMORTON PA
2525 Ponce de Leon, 9th Floor
Coral Gables, FL 33134
Telephone:     (305) 372-1800
Facsimile:     (305) 372-3508

*Counsel for Anderson Memorial Hospital*