# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| W.R. Grace & Co., *et al.* | : | Case No. 01-01139 JKF |
| | : | |
| Debtors. | : | **Docket Reference No. 20872** |

## PHASE II POST-TRIAL REPLY BRIEF OF *CREDITORS* ONEBEACON AMERICA INSURANCE COMPANY AND SEATON INSURANCE COMPANY IN OPPOSITION TO CONFIRMATION OF AMENDED JOINT PLAN OF REORGANIZATION

Dated:  November 20, 2009

Warren T. Pratt (4334)
David P. Primack (4449)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street, Suite 1000
Wilmington, DE  19801-1254
Telephone:  302-467-4200

-- and --

Michael F. Brown (*Admitted Pro Hac*)
Jeffrey M. Boerger (*Admitted Pro Hac*)
DRINKER BIDDLE & REATH LLP
One Logan Square
Philadelphia, PA  19103-6996
Telephone:  215-988-2700

Counsel for Creditors
OneBeacon America Insurance
Company and Seaton Insurance Company

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

I.    INTRODUCTION ..................................................................................................1

II.    ARGUMENT .........................................................................................................2

    A.    The Plan's § 105(a) Successor Claims Injunction Coupled With
        Its Non-Consensual Third-Party Releases of Non-Debtors
        Fresenius and Sealed Air Violates Bankruptcy Code § 524(e)...............................2

        1.    The Successor Claims Injunction and the Non-
            Consensual Third Party Releases of Non-Debtors Must
            Be Analyzed Together .................................................................................2

        2.    The Plan Proponents Improperly Seek to Justify the
            Plan's Illegal § 105(a) Successor Claims Injunction
            Based Upon a Three Part Test That Has *Never* Been
            Adopted By the Third Circuit .....................................................................4

        3.    The Successor Claims Injunction, Coupled With the
            Plan's Non-Consensual, Third-Party Releases of Non-
            Debtors Fresenius and Sealed Air, Fails to Pass Muster
            Even Under the Three-Part Test Advocated By the Plan
            Proponents...................................................................................................6

            a.    "Unusual Circumstances" Do Not Exist .........................................6

            b.    The Successor Claims Injunction and Non-
                Consensual, Third-Party Releases of Non-Debtors
                Fresenius and Sealed Air Are Not "Necessary" to
                the Debtors' Reorganization ...........................................................7

            c.    The Successor Claims Injunction and Non-
                Consensual, Third-Party Releases of Non-Debtors
                Fresenius and Sealed Air Are Not "Fair" to
                Seaton and OneBeacon ..................................................................11

    B.    The Scope of Protection Afforded to Fresenius Under the Plan's
        Asbestos PI Channeling Injunction and Asbestos PD Channeling
        Injunction Exceeds That Permitted By Bankruptcy Code
        § 524(g)................................................................................................................12

    C.    OneBeacon and Seaton Are Not Barred By Principles of *Res
        Judicata* From Objecting to the Plan's Illegal Injunctions and

Illegal Non-Consensual, Third-Party Releases of Non-Debtors Fresenius and Sealed Air ...................................................................14

1.      An Objection By Seaton or OneBeacon to the Fresenius Settlement Agreement or the Sealed Air Settlement Agreement Would Have Required This Court to Issue an Improper Advisory Opinion.......................................................14

2.      Despite What the Plan Proponents Assert, the Fresenius Settlement Agreement and Fresenius Order Do Not Require That the Plan Provide for a § 524(g) Channeling Injunction ...................................................................16

3.      The Plan Proponents' Assertion that Seaton and OneBeacon Were "Unknown Creditors" When Fresenius Settled in 2003 Is False .................................................17

D.      The Plan Proponents' Basis for Classifying Certain OneBeacon and Seaton Contract Claims As Class 6 Asbestos PI Claims is Flawed...................................................................19

E.      The Testimony of the ACC's Counsel Cannot Resolve the Built-In Irreconcilable Conflicts of Interest That Will Burden Each Proposed Member of the Asbestos PI Trust's TAC...............................20

F.      The Plan Fails to Satisfy Certain Funding Requirements As Well As Other Requirements of Bankruptcy Code § 524(g).........................21

G.      Contrary to What the Plan Proponents Claim, Several Conditions to Plan Confirmation Remain in Dispute.................................22

III.    CONCLUSION.................................................................23

# TABLE OF AUTHORITIES

## CASES

*Chemetron Corp. v. Jones,*
    72 F.3d 341 (3d Cir. 1995)................................................................................19

*Coffin v. Malvern Fed. Sav. Bank,*
    90 F.3d 851 (3d Cir. 1996)................................................................................15

*In re Combustion Eng'g,*
    391 F.3d 190 (3d Cir. 2004)..........................................................................8, 10

*In re Cont'l Airlines,*
    203 F.3d 203 (3d Cir. 2000)....................................................................3-4, 5, 9

*In re Dow Corning Corp.,*
    280 F.3d 648 (6th Cir. 2002) .............................................................................5

*In re Exide Technologies,*
    303 B.R. 48 (Bankr. D. Del. 2003) .....................................................................3

*Fogel v. Zell,*
    221 F.3d 955 (7th Cir. 2000) ...........................................................................19

*In re Western Real Estate Fund, Inc.,*
    922 F.2d 592 (10th Cir. 1990) .......................................................................6, 7

*In re North American Refractories Co.,*
    2007 Bankr. LEXIS 4721 (W.D. Pa., Nov. 13, 2007) ............................................6

*In re Lowenschuss,*
    67 F.3d 1394 (9th Cir. 1995) .............................................................................6

*In re Savage Indus., Inc.,*
    43 F.3d 714 (1st Cir. 1994)..............................................................................19

## STATUTES

11 U.S.C. § 101(5) ...........................................................................................22

11 U.S.C. § 524(e) .....................................................................................4, 5, 24

11 U.S.C. § 524(g) ...........................................................................8, 12, 23, 24

11 U.S.C. § 524(g)(2)(B)(i)(II) .........................................................................21

11 U.S.C. § 524(g)(2)(B)(i)(III) .................................................................................21

11 U.S.C. § 524(g)(2)(B)(ii)(I) .................................................................................22

11 U.S.C. § 524(g)(4)(A)(ii) ...............................................................................12, 14

11 U.S.C. § 524(g)(4)(A)(ii)(I) ...........................................................................13, 22

11 U.S.C. § 524(g)(4)(A)(ii)(IV) .............................................................................13

11 U.S.C. § 1129(a)(1) ..............................................................................................24

11 U.S.C. § 1129(a)(3) ..............................................................................................24

## OTHER AUTHORITIES

13 Wright, Miller, Cooper, *Federal Practice and Procedure*, § 3529.1 (2d ed. 1984) .................15

*Black's Law Dictionary* (5th ed. 1979) ........................................................................4

## I.    __INTRODUCTION__

In their 169-page "Main Brief," the Plan Proponents take their best shot at trying to justify the Plan's numerous illegal features.  In particular, they go to great lengths in their effort to defend the Plan's illegal Successor Claims Injunction, as well as its improper non-consensual, third-party releases of non-debtors Fresenius and Sealed Air. They also vigorously defend the Plan's overly broad Asbestos PI Channeling Injunction and Asbestos PD Channeling Injunction.  Their first line of defense is to attempt to shield these illegal or overly broad provisions from this Court's scrutiny by invoking their *res judicata* argument.  This argument fails on multiple grounds.

Recognizing this undeniable fact, the Plan Proponents also attempt to defend these Plan provisions on their merits.  Here again, they fall woefully short.  Indeed, they cannot even satisfy the three-part test that they argue should govern this Court's analysis of the Plan's Successor Claims Injunction and non-consensual, third-party releases – which is the most permissive test adopted by any Circuit Court in the country, but which has not been adopted by the Third Circuit.  Their defense of the protections afforded Fresenius under the Plan's § 524(g) injunctions also misses the mark, not because Fresenius is not entitled to certain § 524(g) protections, but rather because the contract claims that OneBeacon and Seaton have against Fresenius do not properly fit within the scope of § 524(g)'s protections.

The Plan Proponents also cannot justify the improper classification of OneBeacon's and Seaton's contract claims against the Debtors.  Those claims are placed in Class 6, but should be in Class 9.  Likewise, the Plan Proponents' defense of the TAC members' improper and dominant role in Asbestos PI Trust affairs also falls short.  The

testimony of the ACC's counsel did not, and cannot, solve the built-in flaws in the

governance structure of the Asbestos PI Trust; nor did it solve the resulting irreconcilable

conflicts of interest that will burden each member of its TAC. And, finally, it is clear on

the face of the Plan itself that it does not satisfy the basic funding requirements of

§ 524(g). In short, the Plan has fatal flaws and this Court must deny confirmation.[1]

## II.    ARGUMENT

### A.    The Plan's § 105(a) Successor Claims Injunction Coupled With Its Non-Consensual Third-Party Releases of Non-Debtors Fresenius and Sealed Air Violates Bankruptcy Code § 524(e).

1.    The Successor Claims Injunction and the Non-Consensual Third-Party Releases of Non-Debtors Must Be Analyzed Together.

In their Main Brief, the Plan Proponents improperly attempt to divorce the

Court's review of the § 105(a) Successor Claims Injunction from its review of the non-

consensual, third-party releases of non-debtors Fresenius and Sealed Air (*i.e.*, Plan

§§ 7.13 and 8.8.7). (*See* Plan Proponents' Main Brief, 47-62 (discussing the Successor

Claims Injunction) and 72-75 (discussing § 8.8.7 of the Plan)). They go even further in

their attempt to shield the release in § 7.13 of the Plan from judicial scrutiny by simply

ignoring that provision altogether. It is not mentioned at all in their 169-page brief. This

is especially telling given the breadth of the release in § 7.13 (second paragraph). It is

written in the passive voice and, therefore, if approved by this Court, would bind anyone

that holds any of a variety of different types of claims against Fresenius and Sealed Air,

not just Seaton and OneBeacon. In addition, it would operate to enjoin both asbestos-

---

[1] The Plan Proponents contend that Seaton has residual asbestos-related policy obligations to the Debtors under Unigard Policy No. 1-2517. (Ex. PP 277.05(Rev), PP 017246; OS-27(Rev), XXX-001816). Accordingly, in its capacity as an insurer, Seaton also joins in the Section I.D of the Phase II Post-Trial Reply Brief for the CNA Companies (D.I. 23811).

related and non-asbestos-related claims against Fresenius and Sealed Air.  (Trial Tr.

(Sept. 14, 2009), 210-11 (Finke)).  And, unlike its companion release in § 8.8.7 of the

Plan, it applies regardless of whether the "releasing party" voted in favor of the Plan or

whether it "receives or retains" property under the Plan.  (Ex. PP 277.01(Rev), § 7.13;

Ex. PP 352, PP 017959-60).  That is, no doubt, the reason why the Debtors did not bother

to mention § 7.13 of the Plan in the cover letter that accompanied the ballot voting

instructions, even though – as Mr. Finke testified – that letter did include in bold type a

notification to creditors regarding the release in § 8.8.7 of the Plan.  (Ex. PP 505-4; Trial

Tr. (Sept. 14, 2009), 176-77 (Finke)).

In their cursory discussion of § 8.8.7, the Plan Proponents cite *In re Exide

Technologies*, 303 B.R. 48, 74 (Bankr. D. Del. 2003), for the proposition that "courts are

not required to scrutinize a release of claims by third parties when the release binds only

creditors who voted to accept a plan."  (*See* Plan Proponents Main Brief, 72 n. 264).  Of

course, the corollary of that proposition is that courts are required to scrutinize releases

that bind parties irrespective of whether they vote to accept a plan.  Since the releases in

§ 7.13 and § 8.8.7 (second sentence) of the Plan fall into this category, Seaton and

OneBeacon submit that judicial scrutiny of those releases is mandated.

Moreover, despite the Plan Proponents' attempts to divorce the analysis of these

releases from the Successor Claims Injunction, they must all be considered together by

the Court.  That is precisely the approach that the Third Circuit has already adopted:

> In summary, we find, based on the record before us, that the Bankruptcy
> Court and District Court lacked a sufficient evidentiary and legal basis to
> authorize the release and permanent injunction of Plaintiffs' claims under
> any of the standards adopted by courts that have evaluated non-debtor
> releases and permanent injunctions [*i.e.*, other circuit courts].  Under these
> circumstances, the release and permanent injunction amounted to nothing

> more than a lockstep discharge of non-debtor liability and fall squarely
> into the section 524(e) prohibition.

*See In re Cont'l Airlines*, 203 F.3d 203, 217 (3d Cir. 2000).  One reason why this combined judicial scrutiny makes perfect sense is that – unlike a consensual release – a non-consensual, third-party release of a non-debtor is not really a release at all; rather, it effectively operates just like an injunction.  A release is defined as "[t]he relinquishment, concession, or giving up of a right, *claim*, or privilege, *by the person in whom it exists or to whom it accrues*, to the person against whom it might have been demanded or enforced."  *Black's Law Dictionary*, 1159 (5th ed. 1979) (emphasis added).  Here, the releases contained in § 7.13 and § 8.8.7 (second sentence) would not be given by the actual holders of the claims involved, such as Seaton and OneBeacon, but rather they are to be imposed by the Court – just like the Successor Claims Injunction – by way of a confirmation order.  Moreover, both the injunction and the non-consensual releases have precisely the same effect; they involuntarily prohibit those with certain types of claims against Fresenius and Sealed Air from pursuing those claims.  Accordingly, the Court must scrutinize the Successor Claims Injunction and the non-consensual, third-party releases in Plan §§ 7.13 and 8.8.7 as a single package.  As discussed below, these Plan features cannot withstand judicial scrutiny because they violate the fundamental prohibition set forth in Bankruptcy Code § 524(e).

        2.       The Plan Proponents Improperly Seek to Justify the Plan's Illegal § 105(a) Successor Claims Injunction Based Upon a Three-Part Test That Has *Never* Been Adopted By the Third Circuit.

In defense of the Plan's § 105(a) Successor Claims Injunction, the Plan Proponents ask this Court to adopt a three-part test that loosely tracks the most permissive and lenient standard adopted by any Circuit Court in the country.  This test,

they argue, simply requires (1) that "unusual circumstances" exist, (2) that the § 105(a)

injunction be necessary to the debtor's reorganization, and (3) that the injunction be fair.

(*See* Plan Proponents' Main Brief, 53-58).  The Plan Proponents reject as inapplicable the

more difficult seven-part test adopted by the Sixth Circuit in *In re Dow Corning Corp.*,

280 F.3d 648, 658 (6th Cir. 2002) arguing: "[t]he Third Circuit has not adopted the *Dow*

*Corning* seven-part test."  (*See* Plan Proponents' Main Brief, 53 n.200).  That is true, but

the *Dow Corning* decision, of course, post-dates the *Cont'l Airlines* decision, which was

the last time the Third Circuit addressed the propriety of such an injunction.  Moreover, it

is clear from two unequivocal statements in the *Cont'l Airlines* decision that the Third

Circuit also has not adopted the three-part test now advocated by the Plan Proponents:

> Given the manner in which the issue has been presented to us, we need not
> establish our own rule regarding the conditions under which non-debtor
> releases and permanent injunctions are appropriate or permissible.
> …
> Because the release and permanent injunction of Plaintiffs' claims are so
> clearly invalid under any standard, we need not speculate on whether there
> are circumstances under which we might validate a non-consensual release
> that is both necessary and given in exchange for fair consideration.

203 F.3d at 213-14, 214 n. 11.  Simply stated, the Third Circuit has not yet decided

whether § 105(a) permanent injunctions and non-consensual, third-party releases for the

benefit of non-debtors are ever valid given the prohibition in Bankruptcy Code § 524(e).

Consequently, it has never established any standards or test against which such

injunctions and releases must be scrutinized; that is, assuming there could ever be

circumstances under which they might be deemed valid.  Seaton and OneBeacon submit

that the three-part test advocated by the Plan Proponents is not the proper test and will not

be adopted by the Third Circuit because it constitutes the most permissive standard used

by any Circuit Court.  The correct standard is (or should be) Bankruptcy Code § 524(e)

and under that standard the Successor Claims Injunction and the non-consensual releases in Plan §§ 7.13 and 8.8.7 (second sentence) are prohibited.  *See, e.g., In re Lowenschuss*, 67 F.3d 1394, 1402 (9th Cir. 1995); *In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 601 (10th Cir. 1990).

>       3.       The Successor Claims Injunction, Coupled With the Plan's
>                Non-Consensual, Third-Party Releases of Non-Debtors
>                Fresenius and Sealed Air, Fails to Pass Muster Even Under
>                the Three-Part Test Advocated By the Plan Proponents.

This Court should reject the three-part test advocated by the Plan Proponents. But, even if this Court were to apply that test, the Successor Claims Injunction and the Plan's non-consensual, third-party releases of non-debtors Fresenius and Sealed Air fail to pass muster.  Indeed, despite their best efforts, the Plan Proponents cannot satisfy even the first prong of that test – namely, that "unusual circumstances" exist.

>       a.       *"Unusual Circumstances" Do Not Exist.*

In an attempt to do so, however, the Plan Proponents lift a quote from *In re North American Refractories Co.*, 2007 Bankr. LEXIS 4721, at *35 (W.D. Pa. Nov. 13, 2007) ("*NARCO/GIT*") for the proposition that § 105(a) "permits a court to issue injunctive relief where 'unusual circumstances' exist, such as in cases involving 'settlement of massive liabilities against debtors and co-liable parties.'"  (*See* Plan Proponents' Main Brief, 53).  Next, they argue that "[t]he Debtors' cases involve massive *asbestos* liabilities and clearly fit within this framework."  (*Id.*) (emphasis added).  In making this argument, however, the Plan Proponents are mixing apples and oranges.

As this Court knows, the *NARCO/GIT* cases involved both massive asbestos liabilities *and* massive silica liabilities.  The former were addressed by a § 524(g) channeling injunction.  The latter were addressed by the APG Silica Trust and a § 105(a)

Silica Channeling Injunction.  *NARCO/GIT*, 2007 Bankr. LEXIS 4721, at *33-*67.  The

justification for the § 105(a) Silica Channeling Injunction was not the massive asbestos

liabilities, which were already being addressed by a § 524(g) channeling injunction, but

rather the massive silica liabilities.  *Id*.  Indeed, in applying the same three-part test

advocated by the Plan Proponents here, the *NARCO/GIT* Court made detailed and

specific findings regarding the necessity and fairness of the § 105(a) Silica Channeling

Injunction – all of those findings, however, focused exclusively on the massive silica

liabilities.  *Id*.  Those were after all the actual liabilities addressed by the § 105(a)

injunction.  Here, by contrast, the Plan Proponents are improperly attempting to bootstrap

the massive asbestos liabilities – which as in *NARCO/GIT* are already being fully

addressed by the Plan's proposed § 524(g) injunctions – into a justification for the

unrelated § 105(a) Successor Claims Injunction, which by its own terms does not apply to

any asbestos claims.  (Ex. PP 277.01(Rev), § 8.5; Ex. PP 352, PP 017962).  In short,

unlike in *NARCO/GIT*, the Plan Proponents have failed to present this Court with any

evidence of any massive liabilities of the Debtors, Fresenius, or Sealed Air that are being

addressed by the Successor Claims Injunction.  Thus, this case fails the "unusual

circumstances" prong of the Plan Proponents' three-part test.

> b.      *The Successor Claims Injunction and Non-Consensual,*
> *Third-Party Releases of Non-Debtors Fresenius and Sealed*
> *Air Are Not "Necessary" to the Debtors' Reorganization.*

Likewise, the Plan Proponents have failed to establish that the Successor Claims

Injunction, along with non-consensual, third-party releases of Fresenius and Sealed Air

contained in § 7.13 and § 8.8.7 (second sentence) of the Plan are "necessary" to the

Debtors' reorganization.

To begin with, other than Seaton's Kaneb-related misrepresentation claims against Fresenius and Sealed Air, the Plan Proponents have not identified any specific non-asbestos-related claims that are actually addressed by any of these Plan provisions. By its terms, the Successor Claims Injunction does not enjoin asbestos-related claims; it only addresses non-asbestos-related claims.  (Ex. PP 277.01(Rev), § 8.5).  The non-consensual, third-party releases of non-debtors in Plan §§ 7.13 and 8.8.7 (second sentence) do, in fact, purport to enjoin both asbestos-related and non-asbestos-related claims against Fresenius and Sealed Air, but the asbestos-related claims against Fresenius and Sealed Air are already adequately covered by the Plan's § 524(g) injunctions – namely, the Asbestos PI Channeling Injunction and the Asbestos PD Channeling Injunction.  (Ex. PP 277.01(Rev), § 7.13, § 8.8.7, § 8.2, § 8.3; Trial Tr. (Sept. 14, 2009), 210-11 (Finke)).  Moreover, even if the § 524(g) injunctions did not adequately protect Fresenius and Sealed Air, the Plan Proponents cannot properly augment the protection afforded Fresenius and Sealed Air under Bankruptcy Code § 524(g) through the use of non-consensual, third-party releases.  *See In re Combustion Eng'g*, *Inc.* 391 F.3d 190, 235-38 (3d Cir. 2004).

In their Main Brief, the Plan Proponents give short shrift to any purported "necessity" for the non-consensual, third-party releases of Fresenius and Sealed Air in §§ 7.13 and 8.8.7 (second sentence) of the Plan.  They say nothing at all to justify § 7.13 which is plainly an illegal injunction.  It purports to strip the "releasing parties," including Seaton and OneBeacon, of claims they have asserted against non-debtors Fresenius and Sealed Air without providing them with any, much less fair, consideration. (Ex. PP 277.01(Rev), § 7.13; Ex. PP 352, PP 017959-60).  In defense of the non-

consensual release of Fresenius in § 8.8.7 (second sentence) of the Plan, they say that it

protects "the Debtors' own assets and those of the Reorganized Debtors in two ways: (i)

preventing backdoor liability through indemnification rights held by third parties [*i.e.*,

Fresenius] against the Debtors; and (ii) encouraging 'vigorous and unfettered

participation' in the plan process." (*See* Plan Proponents' Main Brief, 72-73). In

addition, in defense of that release, the release in § 7.13, and the § 105(a) Successor

Claims Injunction, the Plan Proponents argue that the Debtors share "an identity of

interest" with Fresenius and Sealed Air. (*See* Plan Proponents' Main Brief, 75, 160-61).

These arguments are without merit. Indeed, they have already been made to, and rejected

by, the Third Circuit:

> Even if the D&O defendants' obligations culminating from Plaintiffs'
> class actions were indemnifiable, the fact that the reorganized Continental
> Airlines might face an indemnity claim sometime in the future, in some
> unspecified amount, does not make the release and permanent injunction
> of Plaintiffs' claims "necessary" to ensure the success of the Continental
> Debtors' reorganization.
> …
> We do not dispute that, some day in the future, the reorganized
> Continental Debtors may face litigation or experience some financial
> ramification based on liabilities of the D&Os as a result of the indemnity
> obligation . . . . However, we cannot accept the District Court's
> conclusion that a purported "identity of interest" between the Continental
> Debtors and the non-debtor D&O defendants, forged by the indemnity
> obligation . . . , established the necessity of releasing and permanently
> enjoining Plaintiffs' claims, nor does this identity of interest speak to the
> fairness of the release and permanent injunction that we construe cases
> such as *Manville*, *Drexel*, or *Robins* to require. We conclude that granting
> permanent injunctions to protect non-debtor parties on the basis of
> theoretical identity of interest alone would turn bankruptcy principles on
> their head. Nothing in the Bankruptcy Code can be construed to establish
> such extraordinary protection for non-debtor parties.

*Cont'l Airlines*, 203 F.3d at 216-17. In short, the purported "identity of interest" between

the Debtors, on the one hand, and Fresenius and Sealed Air, on the other, arising from the

Debtors' indemnity obligations, does not render the Successor Claims Injunction or the releases in Plan §§ 7.15 and 8.8.7 "necessary" to the Debtors reorganization.

It may be that Fresenius and Sealed Air made certain of the Plan's injunctions and releases conditions precedent to their obligation to fund their respective settlements, but neither they nor the Plan Proponents can manufacture "necessity" by agreement where it does not otherwise exist. *Cf. Combustion Eng'g*, 391 F.3d at 228 ("Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization"). Indeed, they could have negotiated settlements that required that they be released from any and all claims – current and future – irrespective of whether those claims have anything at all to do with the Debtors. They could have made such releases a pre-condition to their funding obligations. Indeed, taken to an extreme, Fresenius and Sealed Air could have conditioned their funding obligations, for example, on this Court issuing even broader injunctions and releases to protect them from any conceivable claim that might be asserted against them, now or in the future. But, the mere fact that they negotiated such a settlement would not render such illegal injunctions and releases "necessary" to the Debtors' reorganization.

Moreover, the Plan Proponents are confusing what Fresenius and Sealed Air have negotiated, and presumably want, with what is actually "necessary" for the Debtors to reorganize. Both the Fresenius Settlement Agreement and the Sealed Air Settlement Agreement have "fail safe" provisions. If a condition to the funding obligation of Fresenius or Sealed Air cannot be satisfied – *e.g.*, because it turns out to be illegal or otherwise improper – the agreements do not automatically fail. Each agreement, as well as the Approval Orders and Plan itself, gives the funding party the right to waive any

condition that cannot be satisfied.  (Ex. PP 277.13(Rev), §2.08, § 4.03; Ex. PP 277.22(Rev), PP 017595; Ex. PP 277.14(Rev), PP 017436;  Ex. PP 277.23(Rev), PP 017665; Ex. PP 277.01(Rev), §§ 7.7 and 7.8).  Since the Plan Proponents have failed to demonstrate the requisite "necessity" for the § 105(a) Successor Claims Injunction and the non-consensual, third-party releases in §§ 7.13 and 8.8.7 of the Plan, that is precisely what must be done here if they want the Plan confirmed.

<div style="margin-left:2em;">

c.      *The Successor Claims Injunction and Non-Consensual, Third-Party Releases of Non-Debtors Fresenius and Sealed Air Are Not "Fair" to Seaton and OneBeacon.*

</div>

The Plan Proponents attempt to satisfy the "fairness" prong of the three-part test they advocate by arguing that "[c]laims enjoined by the Successor Claims Injunction will be Class 9, General Unsecured Claims."  (*See* Plan Proponents' Main Brief, 57).  This is a complete fallacy.  The Plan specifically states: "Class 9 consists of all General Unsecured Claims *against the Debtors*."  (Ex. PP 277.01(Rev), § 3.1.9) (emphasis added).  Seaton has asserted its Kaneb-related Otis Pipeline misrepresentation claims against *non-debtors* Fresenius and Sealed Air.  By definition, therefore, Seaton's claims against Fresenius and Sealed Air are not Class 9, General Unsecured Claims under the Plan.  These third-party claims against non-debtors are, however, to be enjoined by the Successor Claims Injunction and involuntarily released under § 7.13 and § 8.8.7 (second sentence) of the Plan.  Moreover, the Plan purports to strip Seaton of its claims against Fresenius and Sealed Air without providing Seaton with any, much less fair, compensation.  Needless to say, there is nothing remotely fair about this result.

**B.**     **The Scope of Protection Afforded to Fresenius Under the Plan's Asbestos PI Channeling Injunction and Asbestos PD Channeling Injunction Exceeds That Permitted By Bankruptcy Code § 524(g).**

To be clear, OneBeacon and Seaton do not object to the Plan's Asbestos PI Injunction and its Asbestos PD Injunction insofar as they protect Fresenius against claims that may properly be enjoined by Bankruptcy Code § 524(g).  The problem with those injunctions, as crafted, is that they are overly broad and purport to enjoin claims that may not properly be enjoined under § 524(g), including the contractual indemnity claims that OneBeacon and Seaton have asserted against Fresenius under the May 1993 CU Agreement and the May 1995 Unigard Agreement.  Those are direct claims against Fresenius as a counter-party to the Settlement Agreements.  In order for any particular claim against Fresenius to properly fit within the scope of § 524(g), one requisite inquiry is whether Fresenius "is alleged to be directly or indirectly liable *for the conduct of, claims against, or demands on the debtor . . . .*" 11 U.S.C. § 524(g)(4)(A)(ii) (emphasis added).  When OneBeacon asserts a contract claim against Fresenius under the May 1993 CU Agreement, it is not alleging that Fresenius is liable "for the conduct of, claims against, or demands on the debtor."  Likewise, when Seaton asserts a contract claim against Fresenius under the May 1995 Unigard Agreement, it is not alleging that Fresenius is liable "for the conduct of, claims against, or demands on the debtor." Rather, in both cases, they are alleging that Fresenius is liable to them in its own right as a party to, and indemnitor under, the Settlement Agreements.

The Plan Proponents skip over this mandatory language in § 524(g)(4)(A)(ii). Instead they argue that the contract claims that OneBeacon and Seaton have against Fresenius may properly be enjoined because of Fresenius' "ownership of a financial

interest in the Debtor" and its "involvement in a transaction changing the corporate

structure . . . of the debtor;" this they say satisfies both § 524(g)(4)(A)(ii)(I) and (IV).

(*See* Plan Proponents' Main Brief, 134).  Next, they manufacture a motive as to why

Fresenius signed these Settlement Agreements: "Absent its financial interest in Grace-

Conn., Grace-NY [*i.e.*, Fresenius] would not have had any reason to indemnify Seaton

and OneBeacon for asbestos-related claims because Grace-NY [*i.e.*, Fresenius] would not

have any connection to Grace-Conn.'s alleged asbestos liabilities, and Grace-NY [*i.e.*,

Fresenius] had no independent asbestos liability."  (*See* Plan Proponents' Main Brief,

135).  The purported evidence to support the asserted motive comes from Mr. Shelnitz:

> Q.    At any point in time did any Grace entity hold the asbestos
>        liabilities other than the operating entity?
> A.    No.

(Trial Tr. (Sept. 15, 2009), 95 (Shelnitz)).  Any Grace entity would, of course, include

Grace-NY (*i.e.*, Fresenius), so Mr. Shelnitz's testimony appears to be that Fresenius

never had any asbestos liabilities.  If that is so, then why has Fresenius [*i.e.*, Grace-NY]

agreed to pay the Asbestos PI Trust $115 million dollars to resolve its asbestos liabilities?

And, why does the Plan provide: "On the Effective Date, without any further action of

any Entity, all liabilities, obligations and responsibilities of any Asbestos Protected Party

[which include Fresenius f/k/a Grace-NY] with respect to all Asbestos PI Claims shall be

channeled to and assumed by the Asbestos PI Trust?"  (Ex. PP 277.01(Rev), § 7.2.3).

Mr. Shelnitz's testimony does not make much sense.  Nor does it provide any evidentiary

support as to Fresenius' motive for signing the May 1993 CU Agreement and the May

1995 Unigard Agreement.  But, even if it did, Fresenius' motive for signing is irrelevant.

The only thing that matters is that Fresenius did sign and it thereby agreed on its own

behalf to indemnify OneBeacon and Seaton.  That being so, when OneBeacon and Seaton

assert their contractual indemnity claims against Fresenius they are not alleging that

Fresenius is liable "for the conduct of, claims against, or demands on the debtor."  Rather,

they are alleging that Fresenius is liable to them in its own right.  Accordingly, their

claims may not properly be enjoined or channeled because the claims fall squarely

outside the scope of § 524(g)(4)(A)(ii).

      **C.**      **OneBeacon and Seaton Are Not Barred By Principles**
                  **of *Res Judicata* From Objecting to the Plan's Illegal**
                  **Injunctions and Illegal Non-Consensual, Third-Party**
                  <u>**Releases of Non-Debtors Fresenius and Sealed Air**</u>**.**

In their opening Phase II Post-Trial Brief, OneBeacon and Seaton outlined six

different reasons why the Plan Proponents' *res judicata* argument is wholly without

merit.  Those will not be repeated here.  However, in reply to the arguments advanced by

the Plan Proponents in their Main Post-Trial Brief, there are yet additional reasons why

the *res judicata* argument fails.  Those are set forth below.

      1.      An Objection By Seaton or OneBeacon to the Fresenius Settlement
              Agreement or the Sealed Air Settlement Agreement Would
              <u>Have Required This Court to Issue an Improper Advisory Opinion</u>.

The Plan Proponents repeatedly and mistakenly argue that Seaton and OneBeacon

are collaterally attacking the Fresenius Settlement Order and the Sealed Air Settlement

Order.  This is not true.  Neither of those Orders, nor the settlements they approve, harms

Seaton or OneBeacon absent confirmation of a plan.  Indeed, absent a confirmed plan,

those Orders have no impact on Seaton or OneBeacon whatsoever.  The Fresenius

Settlement Order was issued in 2003.  The Sealed Air Settlement Order was issued in

2005.  Neither Order purports to enjoin OneBeacon or Seaton.  Likewise, neither purports

to involuntarily release any claims held or asserted by OneBeacon or Seaton against

Fresenius or Sealed Air.  Rather, it is the Plan – if confirmed – that will effect that result because it is the Plan that actually contains the injunctions and the non-consensual, third-party releases of Fresenius and Sealed Air.

"The oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions."  *Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 856 (3d Cir. 1996) (*quoting* 13 Wright, Miller, Cooper, *Federal Practice and Procedure*, § 3529.1, p. 293 (2d ed. 1984)).  Yet that is precisely what this Court would have been doing back in 2003 and 2005 if it had been asked to, and did, entertain the Plan objections now being asserted by OneBeacon and Seaton.  Back then, the Plan did not exist.  In fact, the Debtors and the ACC, among others, were still engaged in protracted disputes over a multitude of issues.  They had not negotiated a deal and there was absolutely no certainty that any plan, much less the current Plan, would ever be filed, much less confirmed.  Absent a confirmed plan, the Fresenius Settlement Agreement and the Sealed Air Settlement Agreement would become a nullity.  Indeed, they may still become a nullity if this Court denies confirmation.  Moreover, no creditors – including Seaton and Sealed Air – had any idea in 2003 or 2005 how their claims against the Debtors would be classified and treated under what was then a non-existent plan.

In short, this Court would have lacked the necessary context (*i.e.*, an integrated plan) to properly scrutinize the propriety of the Plan's injunctions and its non-consensual, third-party releases of Fresenius and Sealed Air.  More importantly, had the Court nevertheless addressed a OneBeacon or Seaton challenge to the injunctions and releases contemplated by the Settlement Agreements, the Court would have been rendering an improper advisory opinion regarding the propriety of injunctions and releases that might

never come to pass.

2.      Despite What the Plan Proponents Assert, the Fresenius
        Settlement Agreement and Fresenius Order Do Not Require
        That the Plan Provide for a § 524(g) Channeling Injunction.

Throughout their Main Brief, the Plan Proponents repeatedly and inaccurately

argue that the Fresenius Settlement Agreement and Fresenius Order require the Plan to

provide for a § 524(g) channeling injunction. (*See, e.g.*, Plan Proponents' Main Brief,

131).  Indeed, relying upon the testimony David Austern and Pamela Zilly, both of

whom profess to have read the Fresenius Settlement Agreement, they boldly assert: "The

Sealed Air and Fresenius Settlement Agreements require entry of a section 524(g)

injunction, protecting Sealed Air and Fresenius from future asbestos lawsuits." (*See* Plan

Proponents' Main Brief, 28).  Mr. Austern testified:

> Q.      Is it a condition of the settlement agreements with Sealed Air and
>         Fresenius, as far as you know, that they receive 524(g) protection.
> A.      Yes.

(Trial Tr. (Sept. 17, 2009), 60 (Austern)).  Ms. Zilly echoed the testimony of Mr.

Austern:

> Q.      Ms. Zilly, with respect to the Fresenius and Sealed Air settlements,
>         do you know whether they have conditions to them?
> A.      Yes, they have conditions.
> Q.       . . . [T]ell us whether or not any of those conditions have a
>         relationship or not to 524(g).
> A.      Both of the agreements, the Fresenius and the Sealed Air
>         agreements, have a condition that a 524(g) trust be established as
>         part of the plan and that is a condition to both of the agreements.

(Trial Tr. (Sept. 17, 2009), 129 (Zilly)).  Mr. Austern and Ms. Zilly should have read the

Fresenius Settlement Agreement more carefully before they testified at the Confirmation

Hearing.  The Fresenius Settlement Agreement specifically provided that the Debtors

might elect to "propose or support a plan of reorganization that does not provide for the

establishment of an Asbestos Trust or the issuance of an injunction pursuant to Section 524(g) of the Bankruptcy Code . . . ."  (Ex. PP 277.13(Rev), § 2.08).  That option is also apparent on the face of the Fresenius Settlement Order, which provides: "if the Debtors and Estate Parties, *in their discretion, choose to seek the protections of an injunction under Bankruptcy Code § 524(g),* the Debtors and Estate Parties are authorized, empowered, and directed *to seek* the benefit of injunctions and releases under Bankruptcy Code § 524(g) for [Fresenius] *to the extent such injunctions are allowable under the law* . . . ."  (Ex. PP 277.14(Rev), PP 017435) (emphasis added).  In short, there is nothing in the Fresenius Settlement Agreement that requires that a plan provide § 524(g) protection to Fresenius.  In 2003, it was quite possible – just as the Fresenius Settlement Agreement provides – that the Debtors might sponsor or support a plan without a § 524(g) channeling injunction.  It is absurd, therefore, for the Plan Proponents to argue that OneBeacon and Seaton were obliged then to object to a theoretical injunction that might never find its way into any plan.

        3.      The Plan Proponents' Assertion that Seaton and OneBeacon Were "Unknown Creditors" When Fresenius Settled in 2003 Is False.

The Plan Proponents also argue that OneBeacon and Seaton received proper notice of the 2003 Fresenius Settlement Agreement.[2]  They base this newly-minted argument on the curious proposition that in 2003 OneBeacon and Seaton were "unknown creditors in the Debtors' Chapter 11 Cases."  (*See* Plan Proponents' Main Brief, 59-61).  One problem with this argument is that in 2005 the Debtors – through Mark Shelnitz,

---

[2] Seaton and OneBeacon do not dispute that they received proper notice of the 2005 Sealed Air Settlement Agreement.  Even so, *res judicata* does not apply to their challenges to the illegal injunctions and releases in favor of Sealed Air for all the other reasons cited herein, as well as those in OneBeacon's and Seaton's Phase II Post-Trial Brief.

Grace's Vice President, General Counsel, and Secretary – signed a stipulation which, in part, provides:

> [T]he Debtors listed Commercial Union on their Schedule G (Executory Contracts and Unexpired Leases) filed on June 8, 2001, but Commercial Union and Claimant [*i.e.*, OneBeacon] were not provided with actual notice of the commencement of the Debtors' cases nor the Bar Date Order and were not independently aware of the Bar Date Order or commencement of the Debtors' cases.

(Ex. OS-14, XXX-000369).  Mr. Shelnitz signed a similar Stipulation on behalf of the Debtors with Seaton.  (Ex. OS-14, XXX-000362).  No party objected to either Stipulation and they were approved by Order of this Court, dated September 26, 2005.  (Ex. OS-14, XXX-000370, XXX-000363).[3]  The proposition, therefore, that OneBeacon and Seaton were somehow "unknown" to the Debtors in 2003 when the Fresenius Settlement Agreement was executed is implausible.  Indeed, it is a fanciful proposition given that in the years preceding the Petition Date, the Debtors executed three Settlement Agreements with Commercial Union and four with Unigard which collectively netted the Debtors $197.3 million in funds.  (Ex. OS-1(Rev); Ex. OS-2(Rev); Ex. OS-3(Rev); Ex. OS-4(Rev); Ex. OS-5(Rev); Ex. OS-6(Rev); Ex. OS-7(Rev)).  Six of the seven Settlement Agreements obligate the Debtors to indemnify OneBeacon or Seaton.  (*Id.*).  Thus, this Court could not reasonably accept the proposition that OneBeacon and Seaton were "unknown" to the Debtors in 2001, when the Debtors filed for bankruptcy, or in 2003 when the Fresenius Settlement Agreement was executed.  They were parties-in-interest and plainly known or reasonably ascertainable by the Debtors and, therefore, the Debtors

---

[3] Ironically, the Plan Proponents are attempting to collaterally attack this Court's September 26, 2005 Order approving the Debtors' Stipulation with Seaton claiming that they made a "mistake." (*See* Plan Proponents' Main Brief, 60 n.226).  Unlike the Plan objections raised by OneBeacon and Seaton, which are properly raised now, the Plan Proponents' attempted collateral attack on that Order actually is barred by preclusion principles.

were obligated to given them actual notice; publication notice was insufficient.  *See*

*Fogel v. Zell*, 221 F.3d 955, 963 (7th Cir. 2000); *In re Savage Indus., Inc.*, 43 F.3d 714,

720-21 (1st Cir. 1994); *cf. Chemetron Corp. v. Jones*, 72 F.3d 341 (3d Cir. 1995).

The Plan Proponents also argue that since counsel for OneBeacon and Seaton was

unaware of the Otis Pipeline claim until late 2008, and since he did not raise that claim

with the Debtors until July of 2009, it is unreasonable to expect that the Debtors could

have known that Seaton was a creditor back in 2003.  (*See* Plan Proponents' Main Brief,

60).  On the contrary, it was after all Grace Energy Corporation ("GEC") – one of the

Debtors – that filed the lawsuit against Kaneb back in June of 1997 seeking to shift

liability to Kaneb – an alleged successor to a former Grace subsidiary – for the

environmental liabilities associated with the Otis Pipeline site. (Ex. OS-40, XXX-001082

and XXX-001125-34).  It was that lawsuit filed by GEC that ultimately lead to Kaneb's

coverage claims against Seaton and OneBeacon.  In addition, the Debtors were also well

aware of representations they made to Seaton in the March 1997 Settlement Agreement.

(Ex. OS-7(Rev), XXX-001808).  In short, the Debtors either knew of the creditor status

of OneBeacon and Seaton back in 2001, or with reasonable diligence could have

ascertained their creditor status, and the Debtors cannot now claim ignorance of the Otis

Pipeline claim based upon when counsel for OneBeacon and Seaton first learned of it.

**D.** **The Plan Proponents' Basis for Classifying Certain OneBeacon and**
**Seaton Contract Claims As Class 6 Asbestos PI Claims is Flawed.**

The Plan Proponents argue that certain contract claims asserted by OneBeacon

and Seaton are properly classified as Class 6 Asbestos PI Claims, specifically Indirect PI

Trust Claims.  (*See* Plan Proponents' Main Brief, 37).  They also say that "Seaton and

OneBeacon acknowledge that any claims made against the settled policies will by

definition arise from 'asbestos-related tort claims,' against Grace, because that is the liability covered by the policies in question." (*Id.* at 46). That is false. They arise from "asbestos-related tort claims," but those claims are not claims against Grace, they are claims against non-debtor, third parties like Scotts and perhaps BNSF. It is these underlying asbestos-related tort claims against non-debtor, third parties claiming coverage under settled policies – not asbestos-related tort claims against Grace – that trigger the Debtors' indemnity obligations to OneBeacon and Seaton. This is yet another reason why it is improper for the Scotts-related contractual indemnity claims of OneBeacon and Seaton to be placed in Class 6. They are not at all similar, much less substantially similar, to the asbestos-related tort claims against the Debtors.

E.      **The Testimony of the ACC's Counsel Cannot Resolve the Built-In Irreconcilable Conflicts of Interest That Will Burden Each Proposed Member of the Asbestos PI Trust's TAC.**

The Plan Proponents – perhaps hoping it will simply go away – give the TAC conflict of interest issue short shrift in the brief. It is not going away. There is an inherent defect in the governance structure of the Asbestos PI Trust that would result in each proposed member of the TAC (*i.e.*, John Cooney, Joe Rice, Perry Weitz, and Russell Budd) having unavoidable and irreconcilable conflicts of interest, all of which has been outlined in prior briefs filed by OneBeacon and Seaton, among others. The Plan Proponents *only* answer to this fatal flaw is the testimony of the ACC's counsel – Elihu Insulbuch. Mr. Insulbuch gave it his best shot, but nothing he said at the Confirmation Hearing resolves the structural deficiencies of the Asbestos PI Trust, or the inherent conflicts of interest that each proposed member of its TAC would suffer. This is another fatal flaw in the Plan that warrants denial of confirmation.

**F.    The Plan Fails to Satisfy Certain Funding Requirements As
        Well As Other Requirements of Bankruptcy Code § 524(g).**

The Plan Proponents strain to meet several other requirements of § 524(g).  They

say, for example: "Under section 524(g)(2)(B)(i)(II), a trust must be funded 'in whole or

in part by the securities of one or more debtors' and by 'the obligation of such debtor or

debtors to make future payments."  (*See* Plan Proponents' Main Brief, 110).  They leave

out, however, an important part of § 524(g)(2)(B)(i)(II) – namely, the part that says

"including dividends" right after "future payments."  Of course, they have a reason for

this glaring omission.  In order for the Asbestos PI Trust to be receive dividends, it must

first have stock.  Under the Plan, however, the Asbestos PI Trust is not funded with any

stock and, therefore, it will receive no dividends.  This violates § 524(g)(2)(B)(i)(II).

The Plan Proponents also argue that the Asbestos PI Trust will be funded – as is

required by § 524(g)(2)(B)(i)(II) – with securities of a debtor, specifically, they point to

the Warrants and Deferred Payment Agreements.  (*See* Plan Proponents' Main Brief,

110-11).  They rely upon the definition of "securities" in Bankruptcy Code § 101(49), but

this argument fails for the reasons cited in prior briefs filed by OneBeacon and Seaton.

They also ask this Court to find: "The Asbestos PI Trust and Asbestos PD Trust

will be entitled to own, if specified contingencies occur, a majority of the voting shares of

the Reorganized Parent by the exercise of rights granted to them under the Joint Plan"

and, therefore, that the Plan complies with § 524(g)(2)(B)(i)(III).  (*See* Plan Proponents'

Main Brief, 112).  But, the Plan's two-trust structure fails to satisfy § 524(g)(2)(B)(i)(III).

There is nothing in § 524(g) that permits a debtor to establish two separate § 524(g)

trusts.  Moreover, by having a Plan with two trusts, the Plan Proponents have made it

impossible for both of them standing alone to satisfy the majority ownership requirement

of § 524(g)(2)(B)(i)(III).  Obviously, there could be no contingency pursuant to which both trusts would be entitled to own a majority of voting shares, because if one had a majority, the other could not.  This clearly violates § 524(g)(2)(B)(i)(III).

There is also a serious doubt that Grace will actually face future Asbestos PD Demands, as is required by § 524(g)(2)(B)(ii)(I).  That provision specifically requires that the debtor be "likely to be subject to substantial future demands . . . ." 11 U.S.C. § 524(g)(2)(B)(ii)(I).  This requirement is not satisfied.  The Plan itself even highlights that future Asbestos PD Demands are doubtful by the use of the phrase "if any" in § 7.7(j).  (Ex. PP 277.10(Rev), § 7.7(j); Lockwood Dep. (May 4, 2009), 642-44)).  The Plan Proponents rely upon the testimony of their expert Dr. Denise Martin to establish that  future Asbestos PD Demands are likely.  (See Plan Proponents' Main Brief, 112).  But, at the Confirmation Hearing, Dr. Martin admitted that she was not qualified to provide a legal opinion as to what constitutes a demand versus what constitutes a claim under the Bankruptcy Code.  (Trial Tr. (Oct. 13, 2009), 226 (Martin)).  OneBeacon and Seaton submit that the Asbestos PD Demands about which Dr. Martin testified, in fact, are claims under Bankruptcy Code § 101(5).  Thus, the Plan does not satisfy § 524(g)(2)(B)(ii)(I).  In short, the Plan fails to satisfy several requirements of § 524(g).

G.     **Contrary to What the Plan Proponents Claim, Several Conditions to Plan Confirmation Remain in Dispute.**

Neatly tucked in near the back of their 169-page Main Brief, the Plan Proponents have an argument heading entitled "Certain Additional Conditions to Plan Confirmation Are Not In Dispute."  (See Plan Proponents' Main Brief, 146).  They also discuss other plan conditions under headings in their brief that might suggest that such plan conditions are undisputed.  Suffice it to say that numerous plan conditions (and the Proposed

Findings that the Plan Proponents ask this Court to make to satisfy those conditions) are in fact hotly disputed for all the reasons already cited in this brief, as well as the Phase II Post-Trial Brief of OneBeacon and Seaton. Among those that remain in dispute include Plan § 7.7(r), § 7.7(s), § 7.7(u), § 7.7(v), § 7.7(w), § 7.7(x), § 7.7(y), § 7.7(z), § 7.7(ww), § 7.7(s), § 7.7(aa), § 7.7(bb), § 7.7(ff), § 7.7(ss), § 7.7(tt), and § 7.7(uu). (*See* Plan Proponents' Main Brief, 144-69). OneBeacon and Seaton submit that this Court cannot properly make the Plan Proponents' requested findings to satisfy these plan conditions because doing so would result in the approval of several illegal plan features.

### III.    CONCLUSION

Despite their best efforts, the Plan Proponents cannot justify the Plan's multiple illegal provisions. To recap just some of them, the Plan contains an illegal § 105(a) Successor Claims Injunction. It provides for illegal non-consensual, third-party releases of non-debtors Fresenius and Sealed Air (*i.e.*, § 7.13 and § 8.8.7). It has an Asbestos PI Channeling Injunction and Asbestos PD channeling Injunction that purport to enjoin claims against Fresenius – like those held by OneBeacon and Seaton – that fall well outside the scope of § 524(g). It improperly classifies certain contract claims held by OneBeacon and Seaton as Class 6 Asbestos PI Claims rather than Class 9 General Unsecured Claims. It illegally purports to effect the assignment of the Debtors' alleged remaining interests in a Seaton policy. It calls for the creation of an Asbestos PI Trust that will be controlled by TAC members burdened with irreconcilable conflicts of interest. And, it improperly provides for two § 524(g) trusts, neither of which satisfies the strict funding requirements of § 524(g). In short, the Plan violates, *inter alia*,

Bankruptcy Code §§ 1129(a)(1), 1129(a)(3), 524(e), and 524(g) and, therefore, this Court must deny confirmation.

Dated:  November 20, 2009

Respectfully submitted,

*/s/ David P. Primack*

_____

Warren T. Pratt (4334)
David P. Primack (4449)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street, Suite 1000
Wilmington, DE  19801-1254
Telephone:  302-467-4200


Michael F. Brown
Jeffrey M. Boerger
DRINKER BIDDLE & REATH LLP
One Logan Square
Philadelphia, PA  19103-6996
Telephone:  215-988-2700

Counsel for Creditors
OneBeacon America Insurance
Company and Seaton Insurance Company