# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W.R. GRACE & CO., *et al.*, | : | Case No. 01-1139 (JKF) |
| | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |
| | : | |
| | : | |
| | : | |

**POST-TRIAL REPLY BRIEF OF LONGACRE MASTER FUND, LTD. AND LONGACRE CAPITAL PARTNERS (QP), L.P., IN CONNECTION WITH PHASE II HEARING TO CONSIDER CONFIRMATION OF THE FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W.R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY <u>HOLDERS MODIFIED THROUGH OCTOBER 12, 2009</u>**

Dated: November 20, 2009
Wilmington, DE

PEPPER HAMILTON LLP

/s/ John H. Schanne II
PEPPER HAMILTON LLP
David M. Fournier (No. 2812)
James C. Carignan (No. 2987)
John H. Schanne II (No. 5260)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

*Counsel for Longacre Master Fund, Ltd. And Longacre Capital Partners (QP), L.P.*

#11737846 v3

**TABLE OF AUTHORITIES**

**Page(s)**

*In re AC&S, Inc.*, 311 B.R. 36 (Bankr. D. Del. 2004) ...................................................................1

*In re Coram Heathcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004) ...........................................1,2

*In re FF Holdings Corp. & Farm Fresh, Inc.*,................................................................................2
    1998 U.S. Dist. LEXIS 10741 * 13 (D. Del. Feb. 17, 1998)

#11737846 v3

**DISCUSSION**

Aside from the fact that classification of the NU Claim in Class 6, as Debtors propose, would run afoul of the Bankruptcy Code's confirmation requirements, such classification would also violate a more basic tenet: a Chapter 11 plan must satisfy a basic standard of 'good faith,' which demands that the Plan be "fundamentally fair" to the Debtors' creditors. *In re AC&S, Inc.*, 311 B.R. 36, 43 (Bankr. D. Del. 2004) (*citing In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001)). The Plan Proponents' true objective in classifying liquidated, contract-based claims of sureties such as the NU Claim in Class 6 is obvious: to obtain a windfall at the expense of unsecured creditors such as Longacre, even if it means directly contravening the Settlement Agreement Debtors entered into long before the Plan was even proposed. That particular Settlement Agreement expressly provided that the NU Claim would be treated under the Plan "as an unsecured, pre-petition, non-priority claim," *and* that it would receive interest in the same manner as the Plan proposes for Class 9 claims. (Longacre Stipulation, LONG Ex. 001 at ¶¶ 6, 20; Settlement Agreement, (Adv. Proc. No. 02-01657, A.D.I. 115)). Given these previous commitments in connection with the compromise of the NU Claim, Debtors should be estopped from using the classification process, in a Plan where equity holders are to retain significant value, to obtain a windfall at Longacre's expense.

The Plan Proponents argue, in their post-trial brief (the "PP PTB"), that classification of the NU Claim in Class 6 is appropriate because it falls within the Plan's definition of 'Indirect PI Trust Claim.' (Plan Proponents' PTB, pp. 45-46). However, this circular reasoning does not resolve the question of whether classification of the NU Claim complies with section 1122(a) of the Bankruptcy Code. Indeed, the Plan's definition of 'Indirect PI Trust Claim' is so broad as to arguably apply to any claim with *any conceivable association*

*whatsoever* with an asbestos-related personal injury, no matter how tangential, removed, indirect or attenuated. The relevant inquiry is <u>not</u> whether the Plan contains a definition enabling Debtors to obtain a windfall by classifying claims however they please, but rather whether the nature and character of the NU Claim is "substantially similar to other claims" in its class. 11 U.S.C. § 1122(a); *In re Coram Heathcare Corp.*, 315 B.R. 321, 349 (Bankr. D. Del. 2004) (*citing In re FF Holdings Corp. & Farm Fresh, Inc.*, 1998 U.S. Dist. LEXIS 10741 * 13 (D. Del. Feb. 17, 1998)). It is clear from the record in these proceedings that the NU Claim is 'substantially similar' to Class 9 claims, but is dissimilar to the tort claims that comprise the great majority of Class 6.

Like general, unsecured claims in Class 9, the NU Claim is based upon contractual obligations of Debtors, not negligence or tort. (<u>Longacre Stipulation</u>, LONG Ex. 001 at ¶¶ 5, 20; <u>Settlement Agreement</u>, (Adv. Proc. No. 02-01657, A.D.I. 115). Like other Class 9 claims, the NU Claim is liquidated, and has already been allowed by this Court in a fixed, certain dollar amount. (<u>Longacre Stipulation</u>, LONG Ex. 001 at ¶¶ 5, 20; <u>Settlement Agreement</u>, (Adv. Proc. No. 02-01657, A.D.I. 115). Finally, the Settlement Agreement *explicitly states* that the NU Claim is to be treated under the Plan "as an unsecured, pre-petition, non-priority claim," *and* that it will receive interest if other unsecured creditors receive interest under a plan (as the Plan proposes for Class 9 claims). (<u>Longacre Stipulation</u>, LONG Ex. 001 at ¶¶ 6, 20; <u>Settlement Agreement</u>, (Adv. Proc. No. 02-01657, A.D.I. 115)).

Ignoring these similarities to Class 9 claims, Debtors argue that the NU Claim is placed in Class 6 because it (and claims of other sureties) ". . . implicate and seek to recover the same liabilities and damages as direct claims for asbestos personal injuries asserted against Grace . . .". (<u>PP PTB</u>, p. 37-38). In fact, however, the NU Claim is starkly *dissimilar* from Class

6 claims.  Unlike the Asbestos PI Claims that comprise the great majority of Class 6, the NU Claim is not based upon tort.  This means that, unlike Class 6 claims, there is no need to establish negligence, personal injury, exposure to asbestos, nor to quantify any such injury or exposure as a dollar figure.  The NU Claim does not 'seek to recover the same liabilities and damages' as the claims for 'personal injuries.'  Rather, it is based on Debtors' *reimbursement* obligations under surety bonds and related agreements, and on the Debtors' contractual commitment, in the Settlement Agreement, to settle those contract-based claims.

These distinctions are important not only because they illustrate the dissemblance between the NU Claim and the Class 6 claims, but also because they demonstrate that the *purpose* of creating a separate class for Asbestos PI Claims in this case would not be furthered by placing the NU Claim in Class 6.  Class 6 is designed to channel the claims of personal injury claimants (many of which claims are unliquidated and cannot presently be known) into a trust with fixed assets for their recoveries.  (Longacre Stipulation, LONG Ex. 001 at ¶ 14; Plan, p. 47; 9/17/09 Tr. p. 53, lines 22-25 (Austern)).  While this procedure might be practical for unliquidated tort claimants, as to whom the Debtors may be one of numerous defendants sharing liability on the claim, in makes *no* sense for the contractual NU Claim, which has already been allowed in a fixed dollar amount and upon which the priority and interest treatment has already been agreed.  Debtors state that placing the NU Claim where it belongs, in Class 9, would ". . . open a back door to recovery against Grace, and would frustrate the purpose of section 524(g) . . ." without explanation as to how and why a liquidated contractual claim such as the NU Claim could possibly thwart the § 524(g) benefits of the Plan.  No explanation is offered because, of course, the proper classification of the NU Claim in class 9 would do nothing to thwart the effectiveness of the channeling injunction.  Debtors' real aim in violating the

-3-

Settlement Agreement by lumping the NU Claim into Class 6 is to obtain a bonus for equity holders at the expense of Longacre and other holders of surety claims.

As stated *supra*, Plan Proponents are <u>incorrect</u> that, just because the NU Claim might definitionally qualify as an 'Indirect PI Trust Claim' under the Plan, the classification of the NU Claim in Class 6 satisfies section 1122(a) of the Bankruptcy Code. The record plainly contravenes the statement in the PP PTB that ". . . any claim that falls within the Joint Plan's definition of an Indirect PI Trust Claim is properly classified in Class 6." (<u>PP PTB</u>, p. 38). To the contrary, Debtors have classified the Morgan Stanley Claims in Class 9, even though those claims also would clearly meet the Plan's definition of an 'Indirect PI Trust Claim.' (<u>Morgan Stanley Stipulation</u>, LONG Ex. 002 at pp. 1-3). Just like the NU Claim, the Morgan Stanley Claims are based upon the Debtors' contractual reimbursement obligations that arose because of Debtors' failure to pay settlement amounts to certain asbestos personal injury claimants. In fact, those reimbursement obligations upon which the Morgan Stanley Claims are based arise *from the very same settlements upon which the NU Claim is based*. (<u>Morgan Stanley Stipulation</u>, LONG Ex. 002 at p. 2). The separate classification of these substantially identical claims belies Debtors' contention that all purportedly 'Indirect PI Trust Claims' are placed in Class 6. Section 1122(a) does not permit, and this Court should not allow, Debtors to arbitrarily place substantially similar claims in different Plan classes according to their whim.

In sum, the Debtors cannot use the Plan definitions to evade Chapter 11's classification requirements, and the Plan cannot be confirmed so long as the NU Claim is classified in Class 6. Given that the NU Claim is substantially similar to other liquidated contract claims properly in Class 9, that it is *dissimilar* to the asbestos personal injury claims in Class 6, that the Debtors have already stipulated to treat the NU Claim as a general, unsecured,

non-priority claim, that such stipulation provides for payment of interest on the NU Claim similar to that being afforded to Class 9 claims under the Plan, and that Debtors have classified the Morgan Stanley Claims, which are nearly identical in nature and character to the NU Claim, in Class 9, there exists no justification for classifying (and the Plan cannot be confirmed so long as it classifies) the NU Claim outside of Class 9.  Alternatively, the Court should find that the Plan Proponents are estopped, by virtue of the Settlement Agreement, from classifying the NU Claim in any class other than Class 9.

| | |
|---|---|
| Dated:  November 20, 2009<br>          Wilmington, DE | Respectfully submitted,<br><br>PEPPER HAMILTON LLP<br><br>David M. Fournier (No. 2812)<br>James C. Carignan (No. 4230)<br>John H. Schanne II (No. 5260)<br>Hercules Plaza, Suite 5100<br>1313 N. Market Street<br>P.O. Box 1709<br>Wilmington, DE   19899-1709<br>(302) 777-6500<br><br>- and –<br><br>PEPPER HAMILTON LLP<br>Robert S. Hertzberg, Esq.<br>100 Renaissance Center, Suite 3600<br>Detroit, MI 48243-1157<br>(313) 259-7110<br><br>*Counsel to Longacre Master Fund, Ltd. and Longacre Capital Partners (QP), L.P.* |

#11737846 v3