## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al.*,<br><br>               Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>Jointly Administered |

### ARROWOOD'S PHASE II POST-TRIAL REPLY BRIEF IN SUPPORT OF
### THE RELIEF TO BE PROVIDED TO IT UNDER THE PLAN OF REORGANIZATION

Garvan F. McDaniel, Esq. (#4167)
BIFFERATO GENTILOTTI, LLC
800 N. King Street, Plaza Level
Wilmington, DE 19801
Tel: (302) 429-1900
Fax: (302) 429-8600

- and -

Carl. J. Pernicone, Esq.
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
150 East 42nd Street
New York, New York 10017
Tel: (212) 490-3000

Tancred V. Schiavoni, Esq.
Gary Svirsky, Esq.
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Tel: (212) 326-2000

*Attorneys for Arrowood Indemnity*
*Company f/k/a Royal Indemnity Company*

Arrowood Indemnity Company f/k/a Royal Indemnity Company ("Arrowood") hereby submits this Phase II Post-Trial Reply Brief in further support of the relief to be provided to it under the Debtors' First Amended Joint Plan of Reorganization (the "Plan").

## ARGUMENT

The arguments raised in the Libby Claimants' Post-Trial Brief relating to Arrowood do not require a response because they were addressed and soundly disproven in Arrowood's Phase II Post-Trial Brief. In addition, the Libby Claimants' assertions run counter to the undisputed and unchallenged evidence admitted during the confirmation hearing. Arrowood proposes the findings of fact below (lettered A through I) be adopted by the Court.

## PROPOSED FINDINGS OF FACT

Each proposed finding is followed by the admitted and uncontroverted evidence in support thereof.

A.  In light of the substantial benefits Arrowood will provide to the Trust under the 2009 Settlement Agreement, it is fair and equitable to current and future asbestos claimants for the Royal Affiliated Companies to receive the full benefits and protections of the Asbestos PI Channeling Injunction and such other benefits and protections as are afforded under the Joint Plan of Reorganization with respect to the Subject Insurance Policies.

> **The Court's oral findings:**
>
> *"To the extent that the settlement incorporates this release for the 1995 obligations, the record stands for the proposition that there has been adequate consideration and bargained for value in exchange. It is a package deal. I'm not in anyway going to try to bifurcate out the components of that package"*[1]
>
> *"The Court: I think that [release of the indemnity] adds a -- quite a bit of value over and above 5.8 million."*[2]

---

[1] Ex. A-38 (July 27, 2009 Hr. Tr.), 138:23-139:3.
[2] *Id.* at 79:2-9.

**Evidence Admitted at Hearing:**

Ex. A-34 (Decl. of T. Schiavoni), at ¶ 8 ("*The deal that was ultimately struck among the partes and incorporated into the 9019 Settlement Agreement obligates the Royal Parties to provide a package of consideration that includes, among other things, the payment of the 9019 Settlement Amount of $5.8 million; the withdrawal of Arrowood's objections to the Plan; the resolution of Arrowood's Proof of Claim; and compromises with respect to Arrowood's rights of contribution, indemnity, reimbursement and subrogation.*"); Ex. A-36 (Decl. of R. Finke), at ¶ 11 ("*The deal that was ultimately struck among the partes and incorporated into the 9019 Settlement Agreement obligates the Royal Parties to provide a package of consideration that includes, among other things, the payment of the 9019 Settlement Amount of $5.8 million; the withdrawal of Arrowood's objections to the Plan; the resolution of Arrowood's Proof of Claim; and compromises with respect to Arrowood's rights of contribution, indemnity, reimbursement and subrogation.*"); Ex. A-58 (Decl. of Kemp Hooper), at ¶ 11 ("*The deal that was ultimately struck among the partes and incorporated into the 9019 Settlement Agreement obligates the Royal Parties to provide a package of consideration that includes, among other things, the payment of the 9019 Settlement Amount of $5.8 million; the withdrawal of Arrowood's objections to the Plan; the resolution of Arrowood's Proof of Claim; and compromises with respect to Arrowood's rights of contribution, indemnity, reimbursement and subrogation.*").

B. The Trust will receive a package of consideration that includes the resolution of the Estate's indemnification obligations to Royal under the 1995 Settlement Agreement and $5.8 million of additional money. This consideration is especially meaningful given the fact that Arrowood is in runoff. The inclusion of the policies settled under the 1995 Settlement Agreement within the scope of the Asbestos PI Channeling Injunction in exchange for additional financial consideration is also fair and equitable to current and future asbestos claimants given that those claimants have no viable causes of action against Royal under the settled policies and no property or other interests in those policies.

**The Court's oral findings:**

*To the extent that the settlement incorporates this release for the 1995 obligations, the records stands for the proposition that there has been adequate consideration and bargained for value in exchange. It is a package deal.*[3]

---

[3] *Id.* at 138:23–139:2.

> *"Well, to the extent the claims are asserted against Royal under the 1995 agreement and there is an indemnity obligation on behalf of the estate for those claims, to the extent that Royal is giving up those claims, that is in everybody's best interest it seems."*[4]
>
> *"I mean, in this instance, to the extent that Arrowood is [as] high an excess carrier as it -- as it professes, and I haven't heard anything that indicates otherwise, there is no basis that Arrowood would be compelled to settle upon but for the fact that the parties want to resolve all of their -- relationship."*[5]
>
> *"So the debtor is saying Arrowood is in runoff, we don't know how long it's going to be around, we don't know for what period of time anything will be collectible. We've already received 100.0 million for the direct policies. These are very high level excess policies. They're going to pay us an additional $5.8 million, and in addition to that, not expect us to pay back against any claims that we may have to reimburse them for in the event that they ever arise under the settlement that provided the indemnity. What's not fair?"*[6]
>
> *"Part of my analysis is the fact that Arrowood is in runoff, and that is a significant issue for collectability in the future."*[7]
>
> *"These are high -- the two policies specifically at issue are very high excess coverage policies, and it's possible that by the time they were even accessed, Arrowood would not be around, nor have a successor at that time available to pay the liabilities, in any event."*[8]

**Evidence Admitted at Hearing:**

Ex. A-34 (Decl. of T. Schiavoni), at ¶ 8 ("*The deal that was ultimately struck among the partes and incorporated into the 9019 Settlement Agreement obligates the Royal Parties to provide a package of consideration that includes, among other things, the payment of the 9019 Settlement Amount of $5.8 million; the withdrawal of Arrowood's objections to the Plan; the resolution of Arrowood's Proof of Claim; and compromises with respect to Arrowood's rights of contribution, indemnity, reimbursement and subrogation.*"); Ex. A-36 (Decl. of R. Finke), at ¶ 11 ("*The deal that was ultimately struck among the partes and incorporated into*

---

[4] *Id.* at 85:22-86:1.

[5] *Id.* at 88:7-14.

[6] *Id.* at 90:21 - 91:4.

[7] *Id.* at 138:15-17.

[8] *Id.* at 138:18-22.

> *the 9019 Settlement Agreement obligates the Royal Parties to provide a package of consideration that includes, among other things, the payment of the 9019 Settlement Amount of $5.8 million; the withdrawal of Arrowood's objections to the Plan; the resolution of Arrowood's Proof of Claim; and compromises with respect to Arrowood's rights of contribution, indemnity, reimbursement and subrogation."* Ex. A-58 (Decl. of Kemp Hooper), at ¶ 11 (*"The deal that was ultimately struck among the partes and incorporated into the 9019 Settlement Agreement obligates the Royal Parties to provide a package of consideration that includes, among other thngs, the payment of the 9019 Settlement Amount of $5.8 million; the withdrawal of Arrowood's objections to the Plan; the resolution of Arrowood's Proof of Claim; and compromises with respect to Arrowood's rights of contribution, indemnity, reimbursement and subrogation."*).

C.  The Libby Claimants and BNSF have no property or other interests in the Royal policies settled under the 1995 or 2009 Settlement Agreements.

>  **The Court's oral findings:**
>
> *"[The] argument that indicates that the beneficiary of the policy, or the insured, pardon me, under the policy can't settle its own policies, and then figure out how to deal with who would have been the beneficiaries in another context, is not correct. The insurance stands for the insured. Yes, it is there for beneficiaries in that it gives certain entities a right to pursue insurance coverage, but the insured is the debtor. The debtor's the one who determines whether or not to continue that insurance, not the beneficiaries under that policy."*[9]
>
> *"To the extent BNSF is contending that it is an additional insured, I cannot see that it's an additional insured. Not only does the August 1955 letter indicate to the contrary, but in addition, the policy itself indicates to the contrary. The additional insurance that the debtor purchased was for the benefit of the debtor, to the extent that it ever faced a contractual obligation to BNSF."*[10]
>
> *"I don't see how BNSF has rights under these insurance policies. It has a collection action that could be brought against the debtor, and the debtor in turn can then present its claims over to Royal."*[11]
>
>  **Evidence Admitted at Hearing:**

---

[9] *Id.* at 136:25–137:11.

[10] *Id.* at 138:2–8.

[11] *Id.* at 128: 14–17.

>   Ex. A-57 (Decl. C. Pernicone), at ¶ 16. ("*Debtors' Senior Litigation Counsel, Jay Hughes, and I co-signed a May 5, 2006 letter sent to BNSF, stating, in relevant part, that based on '[t]he 1995 Settlement Agreement between Grace and Royal[,] . . . Royal has fully discharged and satisfied any obligations it may have owed Grace for asbestos-related claims under the Zonolite policies.' In this joint letter, both Royal and Debtors stated unequivocally that the '[a]greement reflects that, in consideration of paying Grace the sum of 100 Million, Grace fully and finally released Royal from any further liability for asbestos-related claims under the Zonolite policies.*'"); Ex. A-34 (Decl. of T. Schiavoni), at ¶ 33-34 ("*Jay Hughes, another Grace employee responsible for insurance matters, testified during his June 11, 2009 deposition that the 1995 Settlement Agreement released any and all asbestos related claims. . . . Mr. Hughes testified that he advised BNSF that they had no basis for pursuing asbestos-related claims against Royal under the Zonolite Policies*"); Ex. A-58 (Decl. of Kemp Hooper), at ¶ 18 ("*I have reviewed the Grace Polices and the agreements between Grace and BNSF that are listed on BNSF's exhibit list. These documents do not confer the status of an additional named insured or additional insured under the policies.*").

D. On August 19, 2009, the Bankruptcy Court approved a settlement agreement between the Grace Parties and the Royal Parties (the "2009 Settlement Agreement") that resolved any remaining issues related to the insurance coverage issued by Royal to Grace.

>   **The Court's oral findings:**
>
>   *"To the extent that the settlement incorporates his release for the 1995 obligations, the record stands for the proposition that there has been adequate consideration and bargained for value in exchange. It's a package deal. I'm not going to bifurcate out the components of the package. . . I see no basis on which to deny the motion to approve the settlement."*[12]
>
>   **2009 Settlement Agreement Approval Order**
>
>   "The terms of the Agreement are approved in their entirety. Subject to payment by Arrowood Indemnity Company of the Settlement Amount as provide for in the Agreement and as of the Release Date, the release of the Royal Parties shall constitute a legal, valid and effective release and shall extinguish all right, title

---

[12] Ex. A-38 (July 27, 2009 Hr. Tr.), at 138:23-139:3.

and interests of the bankruptcy estate in the Subject Insurance Policies."[13]

"The relief requested in the Motion is in the best interests of the bankruptcy estate, its creditors, and the holders of Asbestos related Claims against the bankruptcy estate and other parties-in-interest. The Debtors have demonstrated good, sufficient and sound business purposes and justification s for the relief requested in the Motion. The settlement and compromise with the Royal Parties embodied in the Agreement is consistent with the reasonable range of litigation outcomes if Debtors were to litigate the matters resolved pursuant to this Order. The releases to be made by the Grace Parties pursuant to the Settlement Agreement are appropriate and should be approved. The Royal Parties would not have entered into the Settlement Agreement or any of the compromises and settlements contained therein, or agreed to withdraw their objections to the Plan and pay the Settlement Amount, without the benefit of obtaining the releases contained in the Settlement Agreement and the protections of the injunctions contained in the Plan and the Confirmation Order."[14]

"The Agreement was negotiated and proposed, and has been entered into by the Parties, in good faith, from arm's length bargaining positions, and without collusion. . . The consideration to be realized by the bankruptcy estate pursuant to this Agreement is fair, equitable and reasonable and is in the best interest of the estate."[15]

**Evidence Admitted at Hearing:**

Ex. A-58 (Decl. of Kemp Hooper), at ¶ 7; Ex. A-34 (Decl. of Tancred V. Schiavoni), at ¶ 5 at ¶ 6; Ex. A-36 (Decl. of Richard Finke), at ¶ 7 ("*compromises and resolves the disputes concerning and surrounding Royal's coverage*"); at ¶ 8 ("*The Settlement Agreement was the product of many hours of work on settlement-related issues and negotiations to consumate the deal among the parties.*"); at ¶ 15.

E. The record before the Court demonstrated that the 1995 Settlement Agreement was negotiated in good faith and at arms'-length, and the agreement was fair to both parties.

---

[13] Ex. A-80 (Order Pursuant to Section 105, 1107, and 1108 of the Bankruptcy Code and Rules 2002, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure Authorizing and Approving the Debtors Entering Into the Settlement Agreement with the Royal Parties and Denying the Libby Claimants' Motion to Defer Consideration and Compel Discovery("Approval Order")), at ¶ 4 [Dkt. No. 22859].

[14] Id. at ¶ H.

[15] Id. at ¶ J-K.

**The Court's oral findings:**

*"Well, as to the 1995 settlement, there is no issue about the fairness . . . I don't see any issue about fairness in that capacity, and I'm aware of the -- of the declarations, I have r ead them all."*[16]

*"Actually, I have the affidavits that indicate that they were fairly negotiated, that that was the was the parties' intent to settle all the policy limits and that in the opinion of the people who entered into the settlement, that it was a good deal. What I don't have, is any evidence to the contrary."*[17]

**Evidence Admitted at Hearing:**

Arrowood' Dep. Designations for Phase II Confirmation Hearing (Jeff Posner, May 6, 2009 Dep. Tr. 310:3-310:17, *and* 310:18-312:5.); Ex. A-57 (Decl. Carl. J. Pernicone), at ¶ 4; Ex. A-34 (Decl. of Tancred V. Schiavoni), at ¶ 30.

F.  On January 5, 1995, W.R. Grace & Co. - Conn. ("Grace") and Royal Indemnity Company ("Royal") agreed to settle any and all asbestos-related claims arising under the primary policies issued by Royal to Grace (the "1995 Settlement Agreement"). Royal paid Grace $100 million and Grace agreed that there was no more coverage for products claims and gave a broad, unconditional release as to any and all past, present and future asbestos-related claims. In addition, Grace agreed to indemnify Royal for all costs, expenses, and liability in the event a third-party asserted claims under those policies.

**The Court's oral findings:**

*"The document -- both documents, the 1995 settlement and the 2009 agreement are pretty -- I think pretty clear. I don't see a basis for going behind what the 1995 agreement says on its face."*[18]

*"I think the 1995 settlement agreement is clear on its face . . . and it is supported by the declarations and affidavits, and I think deposition testimony . . ."*[19]

*"[T]here is supporting factual matter on the record with respect to this item that indicates that the intent of the parties was to settle,*

---

[16] Ex. A-38 (July 27, 2009 Settlement Hearing Transcript), at 72:14–18.

[17] *Id.* at 129:23–130:3.

[18] *See* Ex. A-38 (July 27, 2009 Settlement Hearing Transcript), at 90:2–5.

[19] *Id.* at 136:2–5.

*both the products and the non-products. And I think the agreement itself is clear . . .*"[20]

"*I don't see a reasonable construction that indicates that it does not also cover nonproducts liability. It clearly does.*"[21]

"*You can't excise out the fact that Royal has already contributed $100.0 million.*"[22]

**Evidence Admitted at Hearing:**

Arrowood's Dep. Designations for Phase II Confirmation Hearing (J. Posner, May 6, 2009 Dep. Tr. 148:13-149:4) (J. Hughes, June 11, 2009 Dep. Tr. 372:12-372:17) [Dkt. No. 22813]; Ex. A-4 (Grace-Royal 1995 Settlement) at 2 ("*Grace and Royal have entered into this Agreement to resolve and compromise their disputes concerning coverage for Asbestos-Related Claims and Products Claims.*"); Ex. A-57 (Decl. C. Pernicone), at ¶ 5 ("*negotiations were conducted at arms-length*")(" *coverage under the Zonolite Policies was fully settled and released as to all asbestos-related claims"*) at ¶ 7 ("*Royal received a releases and an indemnity from Grace. To the extent that the Plaintiffs [Libby Claimants] have causes of action, unfortunately, those causes of action are against Grace. . . .*'") at ¶ 8 (*"any coverage obligation for asbestos claims that Royal may have owed under that coverage was fully satisfied and released pursuant to the 1995 Settlement Agreement between Royal and W.R. Grace & Co."*) at ¶ 10 *("Royal settled its obligations under the Royal Policies with Grace. Grace indemnified Royal for future claims that may arise under such policies."*) Ex. A-58 (Decl. Kemp Hooper), at ¶ 4 (*"The coverage allegedly issued by Royal to Zonolite . . . was fully settled and released as to all asbestos-related claims pursuant to a Settlement Agreement dated January 5, 1995*"), at ¶ 14 ("*The agreement was intended to fully and finally settle all allegations raised in the New York Coverage Action, and specifically, Grace's claims to coverage under the Zonolite Policies for asbestos-related bodily injuries..);* Ex. A-34 (Decl. T. Schiavoni), at ¶ 3 (*"Royal was alleged to have issued certain [primary] policies to the Zonolite Company . . . [t]he coverage issued by Royal to Zonolite was fully settled and released as to asbestos-related claims pursuant to a January 5, 1995 Settlement Agreement.")*

---

[20] *Id.* at 136:9–11.

[21] *Id.* at 90:5–7.

[22] *Id.* at 92:15–22.

G. Arrowpoint Capital Corp., Arrowood Indemnity Company and Royal Indemnity Company and their respective officers and directors are entitled to the protections of the Asbestos PI Channeling Injunction to the extent they are ever alleged to be directly or indirectly liable as a result of Royal's provision of insurance to Grace, Zonolite, or their subsidiaries or affiliates.

> **Evidence Admitted at Hearing:**
>
> Ex. A-58 (Decl. Kemp Hooper), at ¶ 4 ("*Throughout the negotiation of the settlement, Arrowood made clear that it would enter into the 9019 Settlement Agreement and pay the Settlement Amount only if it was given certainty that the Royal Affiliated Companies would be fully released from and have injunctive protection against, all asbestos-related claims that may be based on, or derive from, the Subject Insurance Policies as set forth in the 9019 Settlement Agreement.*"); s*ee also* Arrowood's Phase II Post-Trial Brief in Support of the Relief to be Provided to it Under the Joint Plan of Reorganization, at 19-20.

H. Arrowpoint Capital Corp., Arrowood Indemnity Company, and Royal Indemnity Company are readily identifiable by the terms of the Asbestos PI Channeling Injunction, and their officers and directors are part of a readily identifiable group.

> **Evidence Admitted at Hearing:**
>
> Ex. A-58 (Decl. Kemp Hooper), at ¶ 4 ("*Throughout the negotiation of the settlement, Arrowood made clear that it would enter into the 9019 Settlement Agreement and pay the Settlement Amount only if it was given certainty that the Royal Affiliated Companies would be fully released from and have injunctive protection against, all asbestos-related claims that may be based on, or derive from, the Subject Insurance Policies as set forth in the 9019 Settlement Agreement.*"); s*ee also* Arrowood's Phase II Post-Trial Brief in Support of the Relief to be Provided to it Under the Joint Plan of Reorganization, at 19-20.

I. The Asbestos PI Channeling Injunction is fair and equitable with respect to these additional parties because asbestos claimants should not be permitted to sidestep the Asbestos PI Channeling injunction by asserting claims against related entities, officers, or directors under the Royal policies that Arrowood and the Debtors have agreed to settle.

> **Evidence Admitted at Hearing:**
>
> Ex. A-58 (Decl. Kemp Hooper), at ¶ 4 ("*Throughout the negotiation of the settlement, Arrowood made clear that it would enter into the 9019 Settlement Agreement and pay the Settlement Amount only if it was given certainty that the Royal Affiliated Companies would be fully released from and have injunctive*

>  *protection against, all asbestos-related claims that may be based on, or derive from, the Subject Insurance Policies as set forth in the 9019 Settlement Agreement.*"); s*ee also* Arrowood's Phase II Post-Trial Brief in Support of the Relief to be Provided to it Under the Joint Plan of Reorganization, at 19-20.

## JOINDER AND RESERVATION OF RIGHTS WITH RESPECT TO OBJECTIONS CONCERNING THE TREATMENT OF CLAIMS UNDER THE BNSF/GRACE CONTRACTUAL INDEMNITY AGREEMENT THAT CONSTITUTE RESERVED CLAIMS

Under Section III(L) of the 2009 Settlement Agreement, the Royal Parties reserved their rights, notwithstanding any other provision of this Agreement, to object and be heard in the Bankruptcy Case to protect their rights in connection with Reserved Claims as that term is defined in the Agreement. Section IV(D) defines Reserved Claims to include rights, interests and/or Claims, including any contractual indemnity Claim, that the Royal Parties may have against anyone including the Debtor, whether by way of contribution, subrogation, reimbursement, indemnity or otherwise, as a result of Claims that are asserted by BNSF against Royal based on the BNSF Policies. To the extent that BNSF asserts claims against the BNSF Policies that arise from asbestos bodily injury claims made by or on behalf of certain of the Libby Claimants against BNSF, any such claims would be subject to the contractual indemnity agreement between Grace and BNSF. Thus, Arrowood joins in the objections that BNSF asserts in its Post Trial Brief that concern the treatment of the contractual indemnity agreement between Grace and BNSF under the Plan. Arrowood's joinder is not intended to be any broader then the Reserved Claims under the Agreement.

Dated:   November 20, 2009
       Wilmington, Delaware                /s/ Garvan F. McDaniel
                                                     Garvan F. McDaniel, Esq. (#4167)
                                                     BIFFERATO GENTILOTTI, LLC
                                                     800 N. King Street, Plaza Level
                                                     Wilmington, DE 19801
                                                     Tel: (302) 429-1900
                                                     Fax: (302) 429-8600

- and -

Carl. J. Pernicone, Esq.
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
150 East 42nd Street
New York, New York 10017
Tel: (212) 490-3000

- and -

Tancred V. Schiavoni, Esq.
Gary Svirsky, Esq.
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Tel: (212) 326-2000

*Attorneys for Arrowood Indemnity Company f/k/a Royal Indemnity Company*

NY1:1798609.1