Case 01-01139-AMC    Doc 23861    Filed 11/25/09    Page 1 of 9

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W. R. GRACE & CO., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>(Jointly Administered)<br>Hearing Date: 12/14/2009 at 10:30 a.m.<br>Objection Deadline: 11/25/2009 at 4:00 p.m.<br>Re: Docket No. 23722 |

**RESPONSE OF WACHOVIA BANK, NATIONAL ASSOCIATIONTO THE MOTION OF THE DEBTORS FOR AN ORDER, PURSUANT TO SECTION 105, 363, 1107 AND 1108 OF THE BANKRUPTCY CODE AND RULES 2002, 6004, 9014 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, APPROVING THE SETTLEMENT AGREEMENT BETWEEN W.R. GRACE & CO. AND THE ALLIANZ COMPANIES**

1. Wachovia Bank, National Association ("Wachovia"), by and through its undersigned counsel, submits this response (the "Response") to the motion (the "Motion") of the Debtors and Debtors-in-possession for the entry of an order approving the Settlement Agreement by and between W.R. Grace & Co., on its own behalf and on behalf of the Grace Parties (as defined therein and collectively referred to as "Grace"), and Allianz Underwriters Insurance Company, Allianz SE (formerly known as Allianz Aktiengesellschaft), Allianz S.p.A. (formerly known as Riunione Adriatica di Sicurta S.p.A.), and Fireman's Fund Insurance Company ("Fireman's Fund") (collectively, the "Allianz Companies"), on their own behalf and on behalf of the Allianz Parties (as defined therein) (the "Settlement") [Docket No. 23722]. All capitalized terms used herein and not otherwise defined herein shall have the meanings given to such terms in the Motion. In support of this Response, Wachovia respectfully shows:

## BACKGROUND

2. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief (collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

3. This Court has jurisdiction over this matter and the parties-in-interest, properties and interests affected hereby pursuant to 28 U.S.C. §157(b) and §1334. This is a core proceeding under 28 U.S.C. §157(b)(2).

4. The statutory predicates for the relief requested in the Debtors' Motion are sections 105(a) and 363(b) of the Bankruptcy Code and Rule 9019 the Federal Rules of Bankruptcy Procedure.

5. Prior to the Petition Date, on or about June 30, 2000, Fireman's Fund issued a supersedeas bond in the amount of $43,038,931.91 (the "Edwards Bond") on behalf of Grace to secure a stay of execution pending appeal of a judgment against Grace in the action styled *Aaron Clifton Edwards, et al. v. Pittsburgh Corning Corp., et al.,* in the 60th Judicial District Court of Jefferson County, Texas, Cause No. B-150,896-J (the "Edwards Action"). In connection with the issuance of the Edwards Bond, Grace and Fireman's Fund also entered into a Specialty Surety Indemnity Agreement dated July 5, 2000 (the "Edwards Indemnity Agreement") under which Grace agreed to, *inter alia*, (i) indemnify Fireman's Fund against liabilities and losses sustained in consequence of the Edwards Bond and (ii) pay premiums owing under the Edwards Bond.

6. On or about March 28, 2003, Fireman's Fund filed a proof of claim (the "Fireman's Fund Proof of Claim") in the Chapter 11 Cases, asserting a claim against Grace in respect of the Bond and the Indemnity Agreement, a portion of which Claim was secured by the Edwards Letter of Credit (described below).

7. Also prior to the Petition Date, Wachovia from time to time issued letters of credit upon application of and for the account of one or more of the Debtors. As of the Petition Date Wachovia had issued at least thirteen such letters of credit for the benefit of various parties. Among these letters of credit was a certain Irrevocable Standby Letter of Credit in the maximum amount of $13,000,000.00 issued to Fireman's Fund to secure Grace's obligations to Fireman's Fund under the Edwards Indemnity Agreement (the "Edwards Letter of Credit"). The Edwards Letter of Credit was issued pursuant to the Application and Agreement for Standby Letter of Credit ("Letter of Credit Agreement") dated July 13, 2000, between Wachovia and W.R. Grace & Co.-Conn, a copy of which is attached hereto as Exhibit A.

8. On March 4, 2003, Wachovia filed a proof of claim in these Chapter 11 Cases asserting valid, general unsecured claims in respect of each of the letters of credit issued by it, including the Edwards Letter of Credit (the "Wachovia Proof of Claim"). No objection has been lodged against the Wachovia Proof of Claim, a copy of which is attached hereto as Exhibit B.

9. When the Wachovia Proof of Claim was filed Fireman's Fund had already twice drawn under the Edwards Letter of Credit in an aggregate amount of $449,000.00. As is recited in the Motion, during the pendency of these cases Fireman's Fund has continued to make annual draws under the Edwards Letter of Credit in respect of unpaid premiums on the Edwards Bond. As of the date of this Response Fireman's Fund has drawn an aggregate amount of $2,020,500.00 under the Edwards Letter of Credit for premiums owed pursuant to the Edwards Indemnity Agreement and unpaid by Grace. None of this amount had been reimbursed to Wachovia by any of the Debtors.

10. The proposed First Amended Joint Plan of Reorganization, filed February 27, 2009 (the "Proposed Plan"), classified all of Wachovia's claims in respect of the Debtors' obligations under letters of credit issued by Wachovia as Class 9 general unsecured claims except for those claims arising on account of draws made by Fireman's Fund under the Edwards Letter of Credit ("Edwards LC Claim"). Wachovia's Edwards LC Claim is instead separately classified under the Proposed Plan as a Class 6 Asbestos PI Claim, specifically an Indirect PI Trust Claim.[1] Under the Proposed Plan, Wachovia's Edwards LC Claim will be "resolved in accordance with the terms, provisions and procedures of the Asbestos PI Trust Agreement and the Asbestos PI TDP (unless previously allowed pursuant to an Order of the Court or agreement of the parties)." *See* Proposed Plan, Art. 3.1.6(b)(ii).

## RESPONSE TO DEBTOR'S MOTION

11. Wachovia does not concede the correctness of the placement of its Edwards LC Claim in Class 6 under the Proposed Plan, as an Indirect PI Trust Claim, rather than in Class 9, as a general unsecured claim along with all of its other letter of credit claims against the Debtors, and Wachovia reserves its rights with respect to the matters of classification and priority. The Motion presently before the Court does not address the correctness of that classification and priority but instead presumes that the Edwards LC Claim will be determined to be a Class 6 Indirect PI Claim. Accordingly, this Response is intended to protect and preserve Wachovia's rights with respect to the Edwards LC Claim as a possible Class 6 claim in the event such classification and priority is ultimately determined to be correct.

12. The Settlement and Motion each recite that the Claims of Wachovia, including the Edwards LC Claim, are not to be affected by the Settlement or its approval and implementation.

---

[1] *See* Disclosure Statement, Art. 2.7.1(b)(ii), footnote 17 and Art. 3.2.5.2.

In fact, Wachovia's Claims *are* negatively affected by the Settlement; in particular, Wachovia's Edwards LC Claim is effectively extinguished by the Settlement. Wachovia has not consented to this treatment nor does the Settlement provide any offsetting compensation or other consideration for its impairment of the Edwards LC Claim.

13.     The Settlement fails to safeguard Wachovia's Edwards LC Claim and its treatment under the Proposed Plan because, when read in conjunction with the Asbestos PI Trust Distribution Procedures (the "Asbestos PI TDP"), the releases given by Fireman's Fund in the Settlement plainly contradict and are inconsistent with the statement in the Settlement that purportedly protects Wachovia's Claims. Nothing in the statement of protective intent nullifies the detrimental impact of Fireman's Funds releases on Wachovia's ability to receive payment in respect of its Edwards LC Claim pursuant to the Asbestos PI TDP, as is explained in the following paragraphs.

14.     As noted above, the Edwards LC Claim has been classified in the Proposed Plan as a Class 6 Indirect PI Trust Claim, unlike the classification of all of Wachovia's other letter of credit claims in Class 9. This proposed classification has always been ill-fitting. Presumably, the logic for such classification was that if the Edwards Action plaintiffs, as Asbestos PI Claimants under the Proposed Plan, were to recover under the Edwards Bond, and if Fireman's Fund in consequence drew on the Edwards Letter of Credit to reimburse itself for the plaintiffs' recourse to the bond issued by it, then Wachovia's resulting claim based on the Edwards LC Claim would "indirectly" derive from the claims of Asbestos PI Claimants.[2] This reasoning,

---

[2] The portion of the "Indirect PI Trust Claim" definition in the Plan that would most closely apply to Wachovia's claim under the Edwards Letter Credit, assuming again that such claim is an indirect claim at all, is a "Claim or remedy, liability or Demand against the Debtors ... (y) held by any Entity that is a claim seeking payment, repayment, reimbursement, indemnification, subrogation, or contribution from the Debtors with respect to any insurance settlement agreement, surety bond, letter of credit or other financial assurance issued or entered into by any Entity on account of, or with respect to, Asbestos PI Claims."

however, ignores the direct claim that Wachovia has against Grace pursuant to the Letter of Credit Agreement for amounts drawn under the Edwards Letter of Credit and that this right of reimbursement is not derivative of any claim made by the Edwards Action plaintiffs, such as draws made by Fireman's Fund for unpaid premiums under the Edwards Bond.[3]

15. Notwithstanding this awkward claim classification and consequent payment mechanism, Wachovia may still recover from Grace in respect of the Edwards Letter of Credit pursuant to the Asbestos PI TDP. Under the Asbestos PI TDP, an Indirect PI Trust Claimant (here, Wachovia) is entitled to receive payment of a claim (subject to the applicable Payment Percentage, as defined therein) if, among other requirements, the Indirect Claimant can show that it has satisfied the valid claim of another claimant against the Asbestos PI Trust.[4] In other words, Wachovia can still receive treatment under the Proposed Plan similar to those of other Indirect PI Trust Claimants; provided Wachovia can show that it has satisfied the obligations of Grace to Fireman's Fund under the Indemnity Agreement for payment of bond premiums and provided Wachovia demonstrates that it has satisfied obligations the Asbestos PI Trust would otherwise have to some claimant (here Fireman's Fund) by funding draws made under the Edwards Letter of Credit. But for the Settlement, this, in theory, is how the Proposed Plan and Asbestos PI TDP would provide for payment of Wachovia's Edwards LC Claim.

16. The proposed Settlement, however, defeats Wachovia's ability to receive any distribution under the Asbestos PI Trust, despite Wachovia's having a valid, liquidated claim against the Debtors. Under the proposed Settlement Fireman's Fund would release all claims it

---

[3] The Letter of Credit Agreement provides that draws were available as required to cover "liability, loss, cost, expenses or unpaid premiums incurred by [Fireman's Fund]."

[4] Section 5.6 of the Asbestos PI TDP states, in relevant part: "Indirect PI Trust Claims asserted against the PI Trust shall be treated as presumptively valid and paid by the PI Trust subject to the applicable Payment Percentage if the holder of such claim (the 'Indirect Claimant') establishes to the satisfaction of the Trustees that (i) the Indirect Claimant has paid in full the liability and obligation of the PI Trust to the individual claimant to whom the PI Trust would otherwise have had a liability or obligation under this TDP. ..."

has against the Asbestos PI Trust and against Grace pursuant to the Edwards Bond and the Indemnity Agreement, and Fireman's Fund Proof of Claim will be deemed withdrawn with prejudice. Upon consummation of the Settlement, in other words, the Asbestos PI Trust will have no liability to or obligation to pay Fireman's Fund for any reason or in any amount. In consequence of this, Wachovia will no longer be able to point to a claim of another against the Asbestos PI Trust that it has satisfied, since the only candidate claim, that now held by Fireman's Fund, will have been extinguished. The improper classification of the Edwards LC Claim will then become fatal to Wachovia's ability to recover anything at all. Moreover, if the Settlement is approved, Wachovia will have to continue to fund draws under the Edwards Letter of Credit to pay premiums due on the Edwards Bond until that bond has been released at some unknown future date. Wachovia would thus suffer a continuing increase in its exposure on account of a claim for which it has no prospect to recover payment under the Proposed Plan and the Asbestos PI TDP. *See Official Comm. Of Unsecured Creditors v. Pardee (In re Stanwich Financial Servs., Corp.*, 377 B.R. 432, 437 (Bankr. D. Conn. 2007) (denying motion for settlement when non-settling parties would be exposed to new risks by virtue of settlement).

17.     As the Third Circuit has stated, "[W]here the rights of third parties are affected, it is not enough to evaluate the fairness of the settlement to the settling parties; the interests of such third parties must be considered." *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995) (citation omitted); s*ee In re Masters Mates & Pilots Pension Plan and IRAP Litigation*, 957 F.2d 1020, 1026 (2d Cir. 1992) ("The fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval.") (citation omitted); *Eddy v. Nat'l Union Fire Ins. Co. of Pittsburgh (In re Medical Asset Mngm't, Inc.)*, 249 B.R. 659, 663 (Bankr. W.D. Pa. 2000) ("The fairness to the settling parties of a proposed settlement agreement may not warrant its approval if

the rights of others who are not parties to the settlement agreement are unduly prejudiced."). Because of its impact on Wachovia's Edwards LC Claim the Settlement fails to meet the fair and equitable standards for evaluating settlements. The Settlement will resolve the claims of other Asbestos PI Trust Claimants, the claims of Edwards Action plaintiffs, and the claims of Fireman's Fund, but it does so at Wachovia's expense. The parties undoubtedly included in their settlement calculus the fact that Fireman's Fund had already received payment for premiums from Wachovia and could continue to do so until the Settlement is finally consummated and the Edwards Bond is released. By virtue of the Settlement the Asbestos PI Trust would receive the economic benefit of Fireman's Fund release of any further claims against the Asbestos PI Trust *and* Wachovia's payment of the premiums for the Debtors, but the Asbestos PI Trust would have no corresponding obligation to honor Wachovia's claim for premiums funded by it.

18. The Settlement additionally creates an impermissible distinction between Wachovia's Edwards LC Claim and the claims of all other Indirect PI Trust Claims placed in Class 6. If the Court approves the Settlement and if the Edwards LC Claim is determined to be a Class 6 Indirect PI Trust Claim, then Wachovia's Edwards LC Claim will essentially have no treatment under the Proposed Plan, unlike all other claims in Classes 6 and 9. This differential treatment of the Edwards LC Claim violates 11 U.S.C. § 1123 (a)(4) and 1127(f) and is fundamentally inequitable. Settlement of the claims of members of one class on the back of an individual creditor in the same class 'contravenes a basic notion of fairness.' *Eddy*, 249 B.R. at 663 (citation omitted). It also violates basic principles of subrogation: the Asbestos PI Trust cannot retain the "benefit of a release when it was on notice that the release purported to extinguish the claim of a subrogee who was not a party to it." *See Cleaveland v. Chesapeake & Potomac Tel. Co.*, 225 Md. 47, 52 (Md. 1961). The subrogation doctrine was created so that a

party could not shirk obligations to a subrogee by settling with a subrogor. *Wendy's Int'l, Inc. v. Karsko*, 94 F.3d 1010, 1014 (6th Cir. 1996).

### RELIEF REQUESTED

19. Many features of the Settlement are not problematic for Wachovia. Wachovia stands to benefit from the eventual release of the Edwards Bond and the Edwards Letter of Credit contemplated in the Settlement. But that benefit does not suffice to resolve the prejudice to Wachovia's Edwards LC Claim described in this Response. Wachovia accordingly prays that this Court deny approval of the Settlement in its present form or, alternatively, that the parties be directed to modify the Settlement in a manner that will adequately protect and provide for proper treatment of Wachovia's Edwards LC Claim.

Dated: November 25, 2009

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**

*/s/ Francis A. Monaco, Jr.*
Francis A. Monaco, Jr. (No. 2078)
222 Delaware Avenue, Suite 1501
Wilmington, Delaware 19801
Telephone:   302-252-4340
Facsimile:    302-661-7730

- and -

**MOORE & VAN ALLEN, PLLC**
Daniel G. Clodfelter
L. Caroline Hubbell Yingling
Stephen B. Gunn
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 21218
Telephone:   704-331-1000

*Attorneys for Wachovia Bank, National Association*