**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| **Debtors.** | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF CAPLIN & DRYSDALE, CHARTERED,**
**FOR THE THIRTY-THIRD INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Caplin & Drysdale, Chartered, for the Thirty-Third Interim Period</u> (the "Application").

**BACKGROUND**

1.      Caplin & Drysdale, Chartered ("Caplin & Drysdale"), was retained as national counsel to the Official Committee of Asbestos Personal Injury Claimants.  In the Application, Caplin & Drysdale seeks approval of fees totaling $1,428,760.50 and expenses totaling $216,903.42 for its services from April 1, 2009 through June 30, 2009 (the "Application Period").

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2009, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330, Issued

January 30, 1996 (the "U.S. Trustee Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served an initial report on Caplin & Drysdale based on our review, and received a response from Caplin & Drysdale, portions of which response are quoted herein.

**DISCUSSION**

3.      In our initial report, we noted that on May 14, 2009, attorneys BSB ($630), NDF ($610), JPW ($495), and JAL ($495) attended a discovery hearing. The total time spent, including preparation and non-working travel, was 36.10 hours for total fees of $15,801.75. Following are the time entries:

| | | | | |
|---|---|---|---|---|
| 05/14/09 | BSB | 3.70 | 2,331.00 | Telephone hearing (3.7);........... |
| 05/14/09 | JPW | 4.30 | 2,128.50 | Grace hearing - telephonic (4.3);........... |
| 05/13/09 | NDF | 2.10 | 1,281.00 | ...........; prepare for 5/14/ hearing (2.1). |
| 05/14/09 | NDF | 5.60 | 3,416.00 | Prepare for discovery hearing (1.5); attend discovery hearing and argue motions (4.1);........... |
| 05/14/09 | JAL | 4.80 | 2,376.00 | Appearance at court hearing on discovery motions. |
| 05/13/09 | NDF | 3.10 | 945.50 | Travel to Pittsburgh for hearing. |
| 05/13/09 | JAL | 4.00 | 990.00 | Travel from DC to Pittsburgh for tomorrow's hearing on discovery motions. |
| 05/14/09 | NDF | 4.00 | 1,220.00 | Travel back to DC. |
| 05/14/09 | JAL | 4.50 | 1,113.75 | Travel from Pittsburgh to DC following hearing on discovery motions. |
| | | 36.10 | $15,801.75 | |

Paragraph II.D.5. of the U.S. Trustee Guidelines provides: "If more than one professional from the

applicant firm attends a hearing or conference, the applicant should explain the need for multiple

attendees." Thus, we asked Caplin & Drysdale to explain why it was necessary for each attorney to

be present, as well as the role of each attorney at the hearing.  Caplin & Drysdale provided the

following response:

> You inquire in paragraph 3 of the Initial Report regarding fees related to a discovery
> hearing held in Pittsburgh on May 14, 2009, and attended, either in person or
> telephonically, by four Caplin & Drysdale attorneys, Bernard S. Bailor, Nathan D.
> Finch, Jeffery A. Liesemer and James P. Wehner.  The hearing addressed, among
> other issues, the Libby Claimant's motion to amend the case management order
> ("CMO") and the Debtors' motion for a protective order in response to Libby
> deposition notices.  Mr. Liesemer wrote a brief in response to the motion to amend
> the CMO, and assisted NDF who was the lead lawyer handling argument at the May
> 14 hearing.  Specifically, Mr. Liesemer had responsibility for addressing the merits
> of the Libby Claimants' confirmation objections, which were at the heart of the
> motion to amend.
>
> Mr. Bailor and Mr. Wehner attended the hearing telephonically.  Mr. Bailor was
> available to answer questions regarding medical witness depositions that he had been
> scheduled to take and defend.  Several issues relating to these depositions were on
> the agenda and, because he had performed the preparation for the depositions, and
> also prepared the Committee's witnesses, Mr. Bailor was the Caplin & Drysdale
> attorney best prepared to respond regarding such matters.  Similarly, Mr. Wehner was
> deposing certain Libby experts (not those deposed by Mr. Bailor), and attended to
> weigh in, if requested, regarding the status of and need for such discovery.
>
> In addition, 7.1 hours of time billed by Mr. Finch regarding the May 14 hearing
> concerned nonworking travel time and should have been billed at one-half Mr.
> Finch's usual hourly rate.  Caplin & Drysdale regrets this error, and will take a
> voluntary reduction regarding these fees.

We appreciate Caplin & Drysdale's response, but have again reviewed Mr. Finch's nonworking

travel time and have confirmed that it was properly charged at $305.00 per hour, or 50% of Mr.

Finch's regular hourly rate.  Thus, we have no objection to these fees.

       4.      In our initial report, we noted that between May 11, 2009 and June 4, 2009, attorney

TEP ($270) spent 27.30 hours for total fees of $7,371.00 on legal research regarding a "substantive legal issue."  The time entries are as follows:

| 05/11/09 | TEP | 2.90 | 783.00 | Confer with KCM re substantive legal issue (0.4); legal research re substantive legal issue (2.5). |
|----------|-----|------|--------|---|
| 05/12/09 | TEP | 7.50 | 2,025.00 | Legal research re substantive legal issue (7.2); confer with KCM re same (0.3). |
| 05/18/09 | TEP | 5.50 | 1,485.00 | Legal research re substantive legal issue. |
| 05/19/09 | TEP | 0.70 | 189.00 | Legal research re substantive legal issue (0.5); confer with JPW re same (0.2). |
| 05/26/09 | TEP | 0.30 | 81.00 | Legal research re substantive legal issue. |
| 05/27/09 | TEP | 0.70 | 189.00 | Legal research re: substantive legal issue. |
| 06/04/09 | TEP | 9.70 | 2,619.00 | Legal research re substantive legal issues . . . . |
|          |     | 27.30 | 7,371.00 | |

Thus, we asked Caplin & Drysdale to explain the subject of this research and how it was used on the case.  Caplin & Drysdale responded:

> ... Mr. Phillips researched issues relating to a potential motion to strike an expert report based on a possible failure to make required Rule 26 disclosures.  Essentially, Mr. Phillips was looking at the question of whether specific expert reports satisfied the Federal Rules of Civil Procedure.  Such research was a critical element in Caplin & Drysdale's pre-confirmation hearing preparation and, although it was eventually decided not to file a motion to strike the report, Mr. Phillips research was employed in making that decision.

We accept Caplin & Drysdale's response and have no objection to these fees.

5.    In our initial report, we noted the following time entries for professionals who billed only a small amount of time on this matter:

| 04/27/09 | CSR | 585.00 | 0.50 | 292.50 | Review debtor motion, emails re same. |
|----------|-----|--------|------|--------|---|
| 05/01/09 | KB | 320.00 | 0.60 | 192.00 | Research restitution issues. |

The foregoing professionals performed no other work on the case during the Application Period.

We scrutinize more closely the work of professionals who appear to have only fleeting involvement

with the case.[1]  Thus, we asked Caplin & Drysdale to explain how this work benefited the estate.

Caplin & Drysdale responded:

> You ask in paragraph 5 of the Initial Report regarding certain services provided by Caplin & Drysdale attorneys Christopher S. Rizek and Kirsten Burmester, respectively.  Although each attorney billed only a small amount of time during the Application period, the services that each performed were both reasonable and necessary.
>
> Mr. Rizek, a tax expert, was asked to review a motion by the Debtor regarding a settlement with the Internal Revenue Service relating to the carryback of certain liability losses.  Mr. Rizek performs such services, and reports back to the Committee, whenever a motion is filed relating to the Debtor's taxes.  Such expert review is required so that the Committee may better understand and, if necessary, respond to such a motion.
>
> Ms. Burmester was asked by Caplin & Drysdale attorney Walter B. Slocombe to research issues relating to the criminal prosecution of the Libby defendants and possible restitution of the Libby claimants.  Such research was needed to better ascertain the amounts that might be available to compensate other tort claimants, should the Libby claimants receive restitution for their injuries.

We accept Caplin & Drysdale's response with respect to Mr. Rizek, but do not believe the response

demonstrates the value to the estate of the legal research time billed by Ms. Burmester, an associate

---

[1]As stated by the court in *In re Jefsaba, Inc.,* 172 B.R. 786, 800 n. 9 (Bankr.E.D.Pa. 1994):

> Requests to compensate for services of professionals whose time is *de minimis* raises a red flag in our review.   Other than professionals with a special expertise, the fleeting involvement of bankruptcy attorneys in a case often results from a staffing inefficiency.  Given the itinerant attorney's lack of knowledge of the case, the attorney's time may be less productive than attorneys regularly assigned to the case.   When this occurs, we would expect an appropriate deduction be made to the time charged.

with no other involvement with the case.  Nor does it explain if and how the research was used.

Thus, we recommend disallowance of this time, for a reduction of $192.00 in fees.

      6.      In our initial report, we note the following meal expenses for which more information

was needed:

| | | |
|---|---|---|
| Peter Van N. Lockwood meals for travel to New York, NY, re: Client Mtg., 4/6/09 - 4/7/09 | 04/09/2009 | $117.42 |
| Nathan D. Finch - Meals for travel to New York, NY, re: Confirmation Hearing, 4/13/09 - 4/14/09 | 04/30/2009 | $96.47 |
| Petty Cash - Meals, re: Travel to New York, NY for Client Mt., 4/13/09 - 4/14/09 (PVNL) | 04/20/2009 | $56.76 |
| Nathan D. Finch - Meals for travel to/from Pittsburgh, PA, re: hearing, 5/13/09 - 5/14/09 | 05/18/2009 | $334.96 |
| Jeffrey A. Liesemer - Meals for travel to Pittsburgh, PA, re: Hearing, 5/13/09 - 5/14/09 | 06/02/2009 | $78.88 |
| Nathan D. Finch - Dinner w/ BSB & MCG while on Travel to Philadelphia, PA, re: Frank Deposition, 6/4/09 | 06/11/2009 | $189.47 |
| Nathan D. Finch - Dinner for NDF & M. Peterson (deponent) while on travel to West Lake Village, CA, re: Deposition of ACC Expert M. Peterson, 6/8/09 - 6/10/09 | 06/16/2009 | $272.32 |
| Nathan D. Finch - Dinner for Travel to New York, NY, re: Deposition Preparation Mtgs., 6/11/09 - 6/12/09 | 06/17/2009 | $67.52 |
| Nathan D. Finch - Breakfast while on Travel to Seattle, WA, re: Whitehouse Deposition, 6/15/09 - 6/17/09 | 06/22/2009 | $41.20 |
| Nathan D. Finch - Dinner w/ JMR while on Travel to Seattle, WA, re: Whitehouse Deposition, 6/15/09 - 6/17/09 | 06/22/2009 | $254.65 |

In response to our inquiry, Caplin & Drysdale provided the following information:

| **Attorney** | **Date** | **Expense** | **Breakdown** | |
|---|---|---|---|---|
| Peter Van N. Lockwood | 04/09/09 | $117.42 | Dinner for one person | |
| Nathan D. Finch | 04/30/09 | $96.47 | Dinner (4/13) (one person) | 82.28 |
| | | | Lunch (4/13) | 11.00 |
| | | | Snack (4/14) | 3.19 |
| | | | **Total** | **$96.47** |
| Peter Van N. Lockwood | 04/20/09 | $56.76 | Dinner for one person | |
| Nathan D. Finch | 05/18/09 | $334.96 | Dinner (5/13) (2 persons) | 288.61 |
| | | | Breakfast (5/14) (1 person) | 28.35 |
| | | | Snack (5/14) | 8.00 |
| | | | Lunch (5/14) | 10.00 |
| | | | **Total** | **$ 334.96** |
| Jeffrey A. Liesemer | 06/02/09 | $78.88 | Snack (5/13) | 19.23 |
| | | | Breakfast (5/14) | 27.27 |
| | | | Dinner (5/13) | 32.38 |
| | | | **Total** | **$78.88** |
| Nathan D. Finch | 06/11/09 | $189.47 | Dinner for two people | |
| Nathan D. Finch | 06/16/09 | $272.32 | Dinner for two people | |
| Nathan D. Finch | 06/17/09 | $67.52 | Dinner for one person | |
| Nathan D. Finch | 06/22/09 | $41.20 | Breakfast for one person | |
| Nathan D. Finch | 6/22/09 | $254.65 | Dinner for one person | |

It appears to us that one person can dine satisfactorily in New York for $65 for dinner, $45 for lunch, and $35 for breakfast, and in most other locales, for $55 for dinner, $35 for lunch, and $25 for breakfast.  Based on these guidelines, we accept Caplin & Drysdale's response with respect to all charges except for the following:

| | |
|---|---|
| $117.42 for dinner for one in New York | Reduce by $52.42 |
| $82.28 for dinner for one in New York | Reduce by $17.28 |
| $288.61 for dinner for two in Pittsburgh | Reduce by $178.61 |

| | |
|---|---|
| $28.35 for breakfast for one in Pittsburgh | Reduce by $3.35 |
| $27.27 for breakfast for one in Pittsburgh | Reduce by $2.27 |
| $189.47 for dinner for two in Philadelphia | Reduce by $79.47 |
| $272.32 for dinner for two in Westlake Village, CA | Reduce by $162.32 |
| $67.52 for dinner for one in New York | Reduce by $2.52 |
| $41.20 for breakfast for one in Seattle | Reduce by $16.20 |
| $254.65 for dinner for one in Seattle | Reduce by $199.65 |

Thus, for all meal charges listed in this paragraph, we recommend a reduction of $714.09 in expenses.

7.    In our initial report, we noted the following car service charge which appeared excessive:

> BostonCoach Corporation - Car Svc. to Omni William    06/24/2009    $1,033.50
> Penn Hotel in Pittsburgh, PA from Residence in
> Bethesda, MD, 5/14/09

In response to our inquiry, Caplin & Drysdale provided the following information concerning this charge:

> Mr. Finch took a Boston Coach car to Pittsburgh for a necessary court appearance.
> Mr. Finch has found that car service to Pittsburgh is not greatly more expensive, and
> is more reliable, than air travel. Further, car service transportation permits Mr. Finch
> to transport documents easily, and to work while in transit.

We found from our research of comparable air fares that in most instances the cost of a refundable economy class airline ticket purchased with three days' advance notice would have equaled or exceeded the $1,033.50 car service charge. Thus, while we would ordinarily recommend

disallowance of a car service charge for a trip of this length, in this particular instance we have no

objection to the charge.

      8.      In our initial report, we noted the following charge for movies:

> Nathan D. Finch - Movies in Hotel Room for Travel to    06/16/2009    $29.98
> West Lake Village, CA, re: Deposition of ACC Expert
> M. Peterson, 6/8/09 - 6/10/09

When we inquired about this charge, Caplin & Drysdale responded:

> The movie fees cited in ... the Initial Report were charged to the Debtors in error.
> Caplin & Drysdale apologizes for this mistake, and will take a voluntary reduction
> in the amount of $29.98 regarding these expenses.

We appreciate Caplin & Drysdale's response and recommend a reduction of $29.98 in expenses.

## CONCLUSION

      9.      Thus, we recommend approval of $1,428,568.50 in fees ($1,428,760.50 minus

$192.00) and $216,159.35 in expenses ($216,903.42 minus $744.07) for Caplin & Drysdale's

services for the Application Period.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**


By: _____
          Warren H. Smith
          Texas State Bar No. 18757050

325 North St. Paul Street, Suite 1250
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 30th day of November, 2009.


_____
          Warren H. Smith

## SERVICE LIST
### Notice Parties

**The Applicant**
Elihu Inselbuch
Rita Tobin
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
David M. Bernick
Janet S. Baer
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
James E. O'Neill
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
Wilmington, DE 19801

**Counsel to the Official Committee of Personal Injury Claimants**
Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**
Gary M. Becker
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

Teresa K.D. Currier, Esq.
Buchanan Ingersoll & Rooney
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
David Klauder
Office of the United States Trustee
844 King Street, Lockbox 35, Room 2207
Wilmington, DE 19801