1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

Case No. 01-01139

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


W. R. GRACE & CO., et al.


        Debtors.


- - - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                824 North Market Street

                3rd Floor

                Wilmington, Delaware


                November 23, 2009

                10:34 AM


B E F O R E:

HON. JUDITH K. FITZGERALD

U.S. BANKRUPTCY JUDGE

ECR OPERATOR:  NONE LISTED

2

1

2     Telephonic Status Conference of State of California Appeal

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24     Transcribed by:  Hana Copperman

25

3

1

2    A P P E A R A N C E S :

3    (ALL APPEARANCES ARE TELEPHONIC)

4

5    JANET BAER, ESQ.

6    LAW OFFICES OF JANET BAER

7    Representing:  Debtors

8

9    TRACY REA, ESQ.

10   JAMES RESTIVO, ESQ.

11   REED SMITH LLP

12   Representing:  Debtors

13

14   DAVID M. BERNICK, ESQ.

15   LISA ESAYIAN, ESQ.

16   THEODORE FREEDMAN, ESQ.

17   KIRKLAND & ELLIS LLP

18   Representing:  Debtors

19

20   KATHLEEN P. MALKOWSKI, ESQ.

21   JAMES E. O'NEILL, ESQ.

22   PACHULSKI STANG ZIEHL & JONES

23   Representing:  Debtors

24

25

4

1

2    STEVEN MANDELSBERG, ESQ.

3    HAHN & HESSEN

4    Representing:  State of California Department of General

5    Services

6

7    ARI BERMAN, ESQ.

8    VINSON & ELKINS LLP

9

10    SCOTT L. BAENA, ESQ.

11    TERRANCE EDWARDS, ESQ.

12    MATTHEW KRAMER, ESQ.

13    JAY SAKALO, ESQ.

14    BILZIN SUMBERG BAENA PRICE & AXELROD LLP

15    Representing:  Official Committee of Asbestos Property Damage

16    Claimants

17

18    JEFFREY BOERGER, ESQ.

19    MICHAEL F. BROWN, ESQ.

20    DRINKER BIDDLE & REATH LLP

21    Representing:  One Beacon and Seaton Insurance, et al.

22

23

24

25

5

1

2     THOMAS J. BRANDI, ESQ.

3     THE BRANDI LAW FIRM

4     Representing:  Official Committee of Asbestos Property Damage

5     Claimants

6

7     ELIZABETH J. CABRASER, ESQ.

8     LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

9     Representing:  Official Committee of Asbestos Property Damage

10    Claimants

11

12    LINDA J. CASEY, ESQ.

13    PEPPER HAMILTON LLP

14    Representing:  Burlington Northern Santa Fe Railway

15

16    GABRIELLA CELLAROSI, ESQ.

17    EDWARD LONGOSZ, ESQ.

18    ECKERT SEAMANS CHERIN & MELLOTT, LLC

19    Representing:  Maryland Casualty Co.

20

21

22    TIFFANY F. COBB, ESQ.

23    VORYS, SATER, SEYMOUR AND PEASE LLP

24    Representing:  Scotts Co.

25

6

1

2    GEORGE COLES, ESQ.

3    JOSEPH RADECKI, ESQ.

4    LINCOLN INTERNATIONAL LLC

5    Representing:  David T. Austern, Future Claimants

6    Representative

7

8    ANDREW K. CRAIG, ESQ.

9    CUYLER BURK, LLP

10    Representing:  Allstate Insurance Company

11

12    LESLIE A. DAVIS, ESQ.

13    MARK PLEVIN, ESQ.

14    CROWELL & MORING LLP

15    Representing:  Everest Reinsurance Company, et al.

16

17    MICHAEL S. DAVIS, ESQ.

18    ROBERT GUTTMANN, ESQ.

19    ZEICHNER ELLMAN & KRAUSE LLP

20    Representing:  National Union Fire Insurance Company

21

22    ELIZABETH DECRISTOFARO, ESQ.

23    SHAYNE SPENCER, ESQ.

24    FORD MARRIN ESPOSITO WITMEYER & GLESER, L.L.P.

25

7

1

2      ELIZABETH DEVINE, ESQ.

3      ALAN MADIAN, ESQ.

4      LECG

5      Representing:  Official Committee of Asbestos Property Damage

6      Claimants

7

8      MARTIN DIES, ESQ.

9      DIES & HILE LLP

10     Representing:  Official Committee of Asbestos Property Damage

11     Claimants

12

13     MELANIE DRITZ, ESQ.

14     WILMER CUTLER PICKERING HALE AND DORR LLP

15     Representing:  Hartford Financial Service Group, Inc.

16

17     DANIEL SPEIGHTS, ESQ.

18     ALAN RUNYAN, ESQ.

19     MARION FAIREY, ESQ.

20     SPEIGHTS & RUNYAN

21     Representing:  Official Committee of Asbestos Property Damage

22     Claimants

23

24

25

8

1

2    RICHARD FINKE, ESQ.

3    MARK SHELNITZ, ESQ.

4    W. R. GRACE & CO.

5

6    ROGER FRANKEL, ESQ.

7    JONATHAN GUY, ESQ.

8    RICHARD H. WYRON, ESQ.

9    ORRICK, HERRINGTON & SUTCLIFFE LLP

10   Representing:  David T. Austern, Future Claimants

11   Representative

12

13   MICHAEL GIANNOTTO, ESQ.

14   DANIEL GLOSBAND, ESQ.

15   GOODWIN PROCTER LLP

16   Representing:  CNA Insurance Companies

17

18   JAMES S. GREEN, JR., ESQ.

19   LANDIS RATH & COBB LLP

20   Representing:  Bank Lender Group

21

22   MATTHEW B. HARVEY, ESQ.

23   MORRIS, NICHOLS, ARSHT & TUNNELL LLP

24   Representing:  Travelers Casualty Surety Property

25

9

```
 1

 2     DANIEL K. HOGAN, ESQ.

 3     HOGAN FIRM ATTORNEYS AT LAW

 4     Representing:  Canadian ZAI Claimants and Various Law Firms

 5

 6     ROBERT M. HORKOVICH, ESQ.

 7     ANDERSON KILL & OLICK

 8     Representing:  Official Committee of Asbestos Personal Injury

 9     Claimants

10

11     MARK HURFORD, ESQ.

12     CAMPBELL & LEVINE

13     Representing:  Official Committee of Asbestos Personal Injury

14     Claimants

15

16     RICHARD IFFT, ESQ.

17     WILEY REIN LLP

18     Representing:  Zurich Insurance Company

19

20     KARALEE C. MORELL, ESQ.

21     WILEY REIN LLP

22     Representing:  Maryland Casualty

23

24

25
```

10

1

2    BRIAN L. KASPARZK, ESQ.

3    JOHN D. MATTEY, ESQ.

4    MARKS, O'NEILL, O'BRIEN & COURTNEY, P.C.

5    Representing:  Everest Reinsurance Company, et al.

6

7    ARLENE KRIEGER, ESQ.

8    STROOCK & STROOCK & LAVAN LLP

9    Representing:  Official Committee of Unsecured Creditors

10

11    MICHAEL LASTOWSKI, ESQ.

12    DUANE MORRIS, LLP

13    Representing:  Official Committee of Unsecured Creditors

14

15    PETER LOCKWOOD, ESQ.

16    WALTER SLOCOMBE, ESQ.

17    CAPLIN & DRYSDALE

18    Representing:  Official Committee of Asbestos Personal Injury

19    Claimants

20

21    DOUGLAS H. MANNAL, ESQ.

22    KRAMER LEVIN NAFTALIS & FRANKEL LLP

23    Representing:  Official Committee of Equity Security Holders

24

25

1

2    TARA MONDELLI, ESQ.

3    RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP

4    Representing:  Official Committee of Asbestos Property Damage

5    Claimants

6

7    DAVID J. PARSONS, ESQ.

8    STUTZMAN BROMBERG ESSERMAN & PLIFKA PC

9    Representing:  Various Claimants

10

11   CARL PERNICONE, ESQ.

12   WILSER, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP

13   Representing:  Royal Indemnity Company

14

15   MARGARET A. PHILLIPS, ESQ.

16   PAUL WEISS RIFKIND WHARTON & GARRISON LLP

17   Representing:  The Bank Lender Group

18

19   JOHN C. PHILLIPS, JR., ESQ.

20   PHILLIPS, GOLDMAN & SPENCE, P.A.

21   Representing:  David T. Austern, Future Claimants

22   Representative

23

24

25

12

1

2    FRANCINE RABINOVITZ, ESQ.

3    HAMILTON, RABINOVITZ & ALSHULER

4    Representing:  Official Committee of Asbestos Property Damage

5    Claimants

6

7    NATALIE D. RAMSEY, ESQ.

8    MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP

9    Representing:  Grace Certain Cancer Claimants

10

11   ALAN B. RICH, ESQ.

12   LAW OFFICE OF ALAN B. RICH

13   Representing:  Property Damage

14

15   ILAN ROSENBERG, ESQ.

16   COZEN O'CONNOR

17   Representing:  Federal Insurance Company

18

19   SAMUEL J. RUBIN, ESQ.

20   SIMPSON THACHER & BARTLETT LLP

21   Representing:  Travelers Casualty & Surety Co.

22

23

24

25

13

1

2      DARREL SCOTT, ESQ.

3      SCOTT LAW GROUP

4      Representing:  Official Committee of Asbestos Property Damage

5      Claimants

6

7      MICHAEL SHINER, ESQ.

8      TUCKER ARENSBERG

9      Representing:  AXA BELGIUM

10

11     THEODORE J. TACCONELLI, ESQ.

12     FERRY, JOSEPH & PEARCE P.A.

13     Representing:  Official Committee of Asbestos Property Damage

14     Claimants

15

16     DAVID M. TURETSKY, ESQ.

17     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

18     Representing:  Sealed Air Corp.

19

20     EDWARD J. WESTBROOK, ESQ.

21     RICHARDSON PATRICK WESTBROOK & BRICKMAN, LLC

22     Representing:  Official Committee of Asbestos Property Damage

23     Claimants

24

25

JENNIFER WHITENER, ESQ.

DEWEY & LEBOEUF LLP

JEFFREY C. WISLER, ESQ.

CONNOLLY BOVE LODGE & HUTZ LLP

Representing:  Maryland Casualty Company

1              P R O C E E D I N G S

2         THE COURT:  Good morning, everyone.  This is the

3    matter of W. R. Grace & Company, bankruptcy number 01-1139.

4    Everyone is appearing by phone.  The list of participants is

5    Scott Baena, Janet Baer, Ari Berman, David Bernick, Jeffrey

6    Boerger, Thomas Brandi, Michael Brown, Elizabeth Cabraser,

7    Linda Casey, Gabriella Cellarosi, Tiffany Cobb, George Coles,

8    Andrew Craig, Leslie Davis, Michael Davis, Elizabeth

9    DeCristofaro, Elizabeth Devine, Martin Dies, Melanie Dritz,

10   Terrance Edwards, Lisa Esayian, Marion Fairey, Richard Finke,

11   Roger Frankel, Theodore Freedman, Michael Giannotto, Daniel

12   Glosband, James Green, Robert Guttmann, Jonathan Guy, Matthew

13   Harvey, Daniel Hogan, Robert Horkovich, Mark Hurford, Richard

14   Ifft, Brian Kasparzk, Matthew Kramer, Arlene Krieger, Michael

15   Lastowski, Peter Lockwood, Edward Longosz, Alan Madian,

16   Kathleen Malkowski, Steven Mandelsberg, Douglas Mannal, John

17   Mattey, Tara Mondelli, Karalee Morell, James O'Neill, David

18   Parsons, Carl Pernicone, Margaret Phillips, John Phillips, Mark

19   Plevin, Francine Rabinovitz, Joseph Radecki, Natalie Ramsey,

20   Tracy Rea, James Restivo, Alan Rich, Ilan Rosenberg, Samuel

21   Rubin, Alan Runyan, Jay Sakalo, Darrel Scott, Mark Shelnitz,

22   Michael Shiner, Walter Slocombe, Daniel Speights, Shayne

23   Spencer, Theodore Tacconelli, David Turetsky, Edward Westbrook,

24   Jennifer Whitener, Jeffrey Wisler and Richard Wyron.  Ms. Baer?

25         MS. BAER:  Good morning, Your Honor.  Janet Baer on

1    behalf of W. R. Grace.  Your Honor, we have a pretty quick

2    agenda today.  Although it was long most matters have been

3    resolved or continued.  Agenda item number 1, Your Honor, the

4    objection to the Massachusetts Department's tax claim, that's

5    being continued, once again, to the December 14th hearing.

6           THE COURT:  Are you folks actually working toward a

7    settlement?  This has been a long pending matter.

8           MS. BAER:  It certainly has, Your Honor, and I talked

9    with the client as recently as two weeks ago.  It is a

10   complicated tax matter that is running through the tax appeals

11   process.  And the objection needed to be filed in order to get

12   the process going, but it makes no sense, frankly, to have you

13   take your time and attention on it, because it is working its

14   way through the appropriate IRS tax appeals with the

15   appropriate officers.  And so, unfortunately, it has to keep

16   getting continued, but it is very much being worked on.

17          THE COURT:  All right.

18          MS. BAER:  Thank you, Your Honor.  Your Honor, the

19   second matter on the agenda is the debtors' twenty-fifth

20   omnibus objection.  Little by little, Your Honor, we are

21   getting through those.  There are a few remaining matters that

22   we're going to try to get resolved in the next month or two.

23   The Munoz matter is actually being continued to March 22nd.

24   We'd like the rest of the pending objections still not

25   resolved to be continued to the December 14th hearing.

1        THE COURT:  All right.  That's fine.

2        MS. BAER:  Your Honor, agenda item number 3 is the

3   debtors' objection to the Maryland Casualty claim.  The

4   parties are in discussion on that matter, and we've agreed to

5   continue that one to the January 25th omnibus hearing.

6        THE COURT:  All right.

7        MS. BAER:  Agenda item number 4, Your Honor, is

8   General Insurance Company's motion to file a late proof of

9   claim.  The parties are talking with respect to that.  We're

10  doing some investigation about exactly who was served with the

11  notice of commencement and the bar date and what the

12  implications of those various services are, but the parties

13  have agreed to continue that matter to December 14th.

14       THE COURT:  All right.

15       MS. BAER:  Your Honor, agenda items 5, 6, 7 and 8 are

16  all claims, related matters that have been resolved and you

17  have entered orders on each of those.

18       THE COURT:  All right.

19       MS. BAER:  Agenda item number 9, Your Honor, was the

20  Munoz motion to lift stay that was argued at the last hearing,

21  and Your Honor indicated that that matter should go to

22  mediation.  The parties are working on an order with respect to

23  that as well as working on where the mediation will be and what

24  the process will be.  That matter is being continued until the

25  March 22nd hearing while we work that through and, hopefully,

18

1    do the mediation.

2           THE COURT:  All right.

3           MS. BAER:  Your Honor, agenda item number 10 is the

4    Fireman's Fund Company motion to lift stay.  The parties are

5    also in settlement discussions with respect to that in the

6    hopes that we can resolve it.  That matter is being continued

7    to December 14th.

8           THE COURT:  Okay.

9           MS. BAER:  And, Your Honor, the final agenda item is

10   the status on the California appeal with respect to certain

11   claims that were remanded to your court.  I understand that Ms.

12   Rea from the Reed Smith firm is on the phone, and she will be

13   addressing the status of that matter.

14          THE COURT:  All right.  Ms. Rea?

15          MS. REA:  Good morning, Your Honor.  Tracy Rea on

16   behalf of the debtors.  Your Honor, we're here to discuss how

17   to proceed with respect to the sixteen property damage claims

18   filed by the State of California Department of General Services

19   against the debtors in these proceedings.  In order to

20   determine where we should go from here it's important to review

21   where we've been on these claims.

22          As the Court will recall, in January of 2007 we had

23   627 asbestos property damage claims pending against the debtors

24   that the parties were attempting to resolve through summary

25   judgment motions and settlement negotiations.  The Department

1    of General Services sixteen property damage claims were

2    included among the 627 claims the debtors were dealing with at

3    that time.  On February 16, 2007 the debtors filed summary

4    judgment motions on several categories of claims that

5    encompassed most of the then pending 627 claims.  The

6    Department of General Services claims were subject to a summary

7    judgment motion filed by the debtors based on the uncontested

8    fact that in 1990 the Department of General Services joined in

9    a petition filed in the United States Supreme Court asserting

10    asbestos property damage claims against the debtors.  The

11    debtors argue that because DGS had asserted asbestos property

12    damage claims against them more than three years before

13    debtors' Chapter 11 petition, DGS's claims were barred by the

14    applicable three year statute of limitations.

15        The Court agreed and entered an order disallowing and

16    expunging DGS's sixteen claims on October 10, 2008.  DGS filed

17    an appeal with the District Court, and the District Court

18    reversed on September 29th of this year.  Under the legal

19    standard adopted by the District Court, which we think is

20    erroneous, debtors are now required to show that there was

21    contamination through asbestos fiber release in each of the

22    sixteen DGS buildings more than three years before debtors

23    filed their Chapter 11 cases in April of 2001.

24        The only possible way for debtors to meet that

25    standard which, again, we believe is the wrong standard, would

1   be to obtain records from DGS showing what they were doing in

2   these buildings in the 1980s and 1990s, including repairs,

3   abatements, surveys, renovations and testing.  Now, we know

4   that in 1985 DGS filed a billion dollar claim in the Johns-

5   Manville bankruptcy for asbestos property damage claims in over

6   9,000 of its buildings.  We only discovered the Manville

7   claims, now, after the Court had entered its October 10, 2008

8   order expunging the DGS claims, and that's because DGS did not

9   disclose the Manville claim on its proof of claim forms that it

10  filed in the bankruptcy.

11          In addition, DGS did not include much by way of

12  documentation with its claims form.  From what it did include,

13  it's clear that DGS was performing asbestos surveys in the

14  buildings at issue as early as 1986.  In one of the sixteen

15  buildings DGS received a recommendation in 1986 that asbestos

16  containing fireproofing had to be removed from the building at

17  a cost of over 200,000 dollars.

18          In addition, the California Department of Corrections

19  appears to have had an extensive asbestos operation and

20  maintenance program in place by at least 1990.  DGS only

21  produced the cover page of that document, however, with a few

22  of its claim forms.  So DGS clearly has additional information

23  relating to asbestos in its buildings that based between 1986

24  and 2001 that was not produced in connection with the claim

25  form.

1     The District Court's memorandum opinion specifically

2     states that it, quote, "Does not foreclose any further attempts

3     by debtors to have the sixteen claims dismissed on the basis of

4     the statute of limitations".  The District Court only reversed

5     the summary judgment finding and remanded to this Court,

6     specifically, for further proceedings.

7     In light of the new legal standard adopted by the

8     District Court and the fact that we have incomplete information

9     from DGS on the limitations issues debtors are requesting that

10    the Court set a short period for discovery, followed by a

11    status conference to set a trial date on the statute of

12    limitations issues.

13    We appreciate that the original October, 2006 property

14    damage CMO included a discovery cutoff date that passed after

15    the debtors had filed their summary judgment motion.  At that

16    time, however, there was no reason to devote the debtors'

17    resources to execute the discovery on the statute of

18    limitations issues, further than pending 627 claims.  In fact,

19    with respect to DGS, we believed we had a judicial admission of

20    contamination that proves that the statute had run.  And the

21    Court agreed with that.  It's only due to the District Court's

22    reversal that discovery is now necessary with respect to these

23    claims.  And in light of what we know from even the incomplete

24    information that DGS has given us to date we believe that

25    discovery will show that the claims are time barred, even under

22

1    the heightened and, we believe, erroneous standard that the

2    District Court recently adopted.

3         The debtors would propose that the Court set March 30,

4    2010 as a deadline for discovery on the statute of limitation

5    issues on these claims.  That would allow for approximately

6    four months of discovery.  Debtors would then further propose

7    that the Court set a status conference after March 30, 2010, as

8    the Court's schedule will allow, to discuss a statute of

9    limitation trial on the sixteen claims.

10        THE COURT:  All right.  I take it that there is no

11   further appeal of the District Court order, correct?  I mean, I

12   haven't heard that from anyone.  I haven't checked.

13        MS. REA:  That's correct.

14        THE COURT:  All right.  Okay.  Who is on on behalf of

15   the California Department, please?

16        MR. MANDELSBERG:  Your Honor, Steven Mandelsberg from

17   Hahn & Hessen.  Good morning.  We represent, as you know, the

18   State of California Department of General Services.  A few

19   points, Your Honor.  First of all, I don't want to reargue the

20   appeal or the motion papers, but a few statements of Ms. Rea

21   are simply not correct, and among them are the statements about

22   the Johns-Manville claim and discovery.  It's the state's

23   position that the U.S. District Court's decision of September

24   29th is a final and un-appealable decision.  And it's quite

25   clear that as many times as W. R. Grace refers to the standard

23

1    adopted by the District Court as being erroneous, the fact is

2    that that is now the law of the district, the laws of this

3    case.  It's un-appealed.  It's final and binding.  The District

4    Court did remand the matter for further proceedings to Your

5    Honor.  However, we don't believe that there is any showing

6    made by Grace to permit discovery several years after the last

7    CMO was issued in this case.  Your Honor will be reminded that

8    in the course of the summary judgment motion papers, and even

9    on the District Court appeal, the State of California pointed

10   out that W. R. Grace had the opportunity to ask for any of the

11   information that it's asking for now, previously.  It chose to

12   file the summary judgment motion as it did, identifying the

13   issues that it thought were dispositive.  It didn't ask for the

14   information that it says it's asking for now.  And there's no

15   excuse given for why, since the October, 2006 CMO, W. R. Grace

16   didn't then, or didn't in the interim, try to seek any

17   discovery.  It would be quite remarkable to allow discovery on

18   statute of limitations issues years after the fact when W. R.

19   Grace could have and, certainly, had no reason not to, seek

20   discovery then.  So it's a real, quite a remarkable passage of

21   time to start digging into discovery on issues that they knew

22   of and could have discovered back then.

23        In addition, Your Honor, we think that asking for a

24   schedule of March 30, 2010 for discovery is quite lengthy.  I

25   think that in the proposed CMO that was attached to the case

1    management order for the Class 7A Asbestos PD Claim both

2    parties actually reserved the right to address in any papers

3    that would be filed formally any objection to requests for

4    discovery.  So it is true that the parties preserved the right

5    to request.  W. R. Grace could request discovery on statute of

6    limitations, and the state could oppose it.  This is the first

7    time since the September 29th decision that we have had any

8    communications from W. R. Grace indicating that they were going

9    to seek discovery on these issues.  We tried to get a handle on

10   this earlier, and it was deferred for this conference.  So

11   rather than set a schedule right now, I think more

12   appropriately would be that if W. R. Grace is seeking discovery

13   on certain issues it's up to them, it's their burden, to show

14   why the Court should relieve them of the October, 2006 CMO.

15   They should file a motion to relieve themselves of that, and

16   they should establish showing, and the proper procedure would

17   be rather than to simply grant W. R. Grace's oral request at

18   this time for them to be required to establish that they have a

19   right to this discovery.

20        Moreover, Your Honor, I suggest that, of course, this

21   is something that's up to the Court and the parties, but Your

22   Honor may recall that while the summary judgment motion was

23   pending before Your Honor during the months that it was

24   pending, the Court had suggested that the parties proceed with

25   mediation, and they did proceed with mediation.  It was not

1    successful, but one of the reasons it was not successful, as

2    Your Honor, or productive, as Your Honor may recall, was that

3    the summary judgment motion was pending.  And as Your Honor may

4    remember, that mediation was held before retired Magistrate

5    Judge Diane Welsh, and as Your Honor, Mr. Restivo and Ms. Rea

6    may recall, after that mediation Judge Welsh indicated by e-

7    mail to the parties and to Your Honor on July 2, 2008 that she

8    would be happy to meet with them again after the summary

9    judgment decision had been rendered and after any appeal on

10   that decision had been rendered.

11          So I might suggest that instead of devoting further

12   time and resources to this long litigation over the State of

13   California's sixteen claims it might be useful for the parties

14   to indicate whether or not they wish to pursue the continuation

15   of that mediation session.  But whether or not that occurs, as

16   I say, I think the more appropriate procedure, rather than

17   setting a schedule now, would be to set a schedule for W. R.

18   Grace to file any motion that it wishes to, specify precisely

19   the discovery it seeks and why it couldn't and didn't seek it

20   earlier.

21          THE COURT:  Ms. Rea?

22          MS. REA:  Your Honor, as I mentioned previously, I

23   mean, a CMO was set in place at a time when there were 627

24   claims pending.  We did file a summary judgment motion based on

25   the usual admission that we believed was dispositive.  We were

1   attempting to deal with a large number of claims at that time.

2   The District Court order that just came down changes the

3   landscape in terms of what the legal standard is and what the

4   debtors are now required to do.  If you look back at the

5   documents in this case, and you look at even the State of

6   California's responses to the omnibus objections, one of their

7   responses states that air and dust sampling data is not

8   relevant to the claim.  The claims are not based on air level

9   or fibers in the property.  So DGS objected to providing air

10   and testing sampling and did not provide that information

11   because they believed it was not relevant to the claim.  This

12   District Court opinion makes it a very different landscape in

13   terms of what the statute of limitation is, and based on that

14   we believe that it's imperative that the debtor get discovery

15   on what DGS knew.  We have partial information on the claim

16   forms, but even on that information it's apparent that there

17   was a lot going on in these buildings, and, again, with respect

18   to the Manville claim, which was not disclosed on the claim

19   form, it's apparent that they were seeking a billion dollars in

20   1985 with respect to asbestos property damage claims, and the

21   debtor should be able to seek discovery on that claim.

22            THE COURT:  Well, that may --

23            MR. BERNICK:  Your Honor, this is --

24            THE COURT:  I'm sorry?

25            MR. BERNICK:  Yes, this is David Bernick.  Just a

1   historical footnote, but it's very important.  If Your Honor

2   will recall that there was considerable dialogue during the

3   course of the consolidated proceedings about the extent to

4   which building specific discovery would be appropriate.  And

5   the whole way that the litigation process was structured was to

6   work with the claim forms and the attachment to the claim

7   forms.  In that regard we were also dependent upon the

8   completeness of the responses to the questions on the claim

9   form.  Yet, obviously, we now know that the responses that were

10  provided by the state were not, in fact, complete.

11          But be that as it may, there was never an anticipation

12  that to the extent that a claim would survive the dispositive

13  motion practice, that there would be no further discovery in

14  connection with that claim.  These were dates that were set up,

15  that were designed to foster a consolidated motion practice,

16  which, in fact, did take place.  They were not designed to

17  preclude all further discovery, which, obviously, would be

18  necessary, if, and to the extent, these cases were to go to

19  trial.

20          The second fact is that whatever the situation was

21  with respect to this particular claim, it's kind of idleness to

22  suggest that somehow a motion has got to be filed to conduct

23  what the District Court has said is "parties are free to

24  pursue", which is further development of facts in connection

25  with this issue.  The remand order makes that completely clear.

28

1    So while the sentiment in favor of continued mediation is a

2    good sentiment -- there's always an opportunity to settle

3    cases -- Grace has, of the track record that we've established

4    in these cases, always pursued the settlement discussions.

5    When there's no opposition to the idea that that is always

6    appropriate, to somehow put us back to motion practice to do

7    what the District Court already has opened the door to do, is

8    just letting time pass by.  We just want to get to the

9    discovery that's necessary and, then, be in a position to raise

10   this issue, as the District Court has contemplated.

11        MR. MANDELSBERG:  Your Honor, Steven Mandelsberg for

12   the State of California Department of General Services.  I

13   think the dialogue we're having now is proof positive why the

14   Court really shouldn't and won't be able to determine or

15   request discovery based on counsel statements that I

16   respectfully suggest are rebutted by the record.

17        First of all, this business of the statements of W. R.

18   Grace that the state's responses to requests were somehow less

19   than candid or less than complete is utter hogwash.  It was

20   raised, Your Honor, at the district court level.  It was raised

21   extensively in the brief.  The District Court rejected it, as

22   did the District Court reject the notion that somehow the

23   Johns-Manville proof of claims filing provided an independent

24   or alternative basis for affirming Your Honor's summary

25   judgment decision.  So the notion that we're sitting here now,

29

1   more than two years after this summary judgment motion was

2   argued, and W. R. Grace is now saying that they didn't realize

3   what the issues were, is utter nonsense.  The issues about the

4   difference in the approval standard was a matter of sharp

5   debate, both back in April of 2007 when the motion was argued

6   before Your Honor, as well as during the briefs and motion

7   papers, as well as during the District Court appeal.  To

8   suggest that W. R. Grace didn't seek discovery because they

9   assumed that they were correct and the state was wrong about

10   the accrual standard and that therefore there would be no

11   reason to seek discovery in case they were wrong, is

12   ridiculous.

13       Moreover, the motion for summary judgment that W. R.

14   Grace counsel refers to was filed after the close of discovery.

15   There was nothing to prevent them from seeking discovery on

16   alternative issues.  The fact that they chose to file a summary

17   judgment on a single issue, the fact that they chose to

18   concentrate their efforts on litigating the fact or the

19   question as they saw it, that it was a no-brainer that the

20   state was foreclosed because of judicial admission doctrine or

21   similar principles, was their choice.  They might have sought

22   discovery elsewhere, just in case, as parties do in all cases

23   and this party has done and as W. R. Grace has done in this

24   very proceeding on any number of issues.

25       So I don't think that counsel is reciting directly the

1   history of the arguments and discovery in this proceeding, and

2   I do think that to the extent that W. R. Grace wants to seek

3   discovery now, more than three years after the CMO referring to

4   discovery on statute of limitations, and, Your Honor, after W.

5   R. Grace was perfectly content to seek discovery on other

6   issues.  Your Honor may recall that while the summary judgment

7   motion was pending as to the State of California's claims we

8   had an evidentiary product ID hearing before Your Honor.  Now,

9   W. R. Grace wasn't precluded from seeking discovery then.  They

10  understood how they could seek discovery.  They took

11  depositions of the state's experts.  So the matter proceeded on

12  alternative tracks, and certainly W. R. Grace could have done

13  so.

14       In short, Your Honor, to the extent they're seeking

15  discovery they should make a showing by motion, and, in short,

16  Your Honor, I really do suggest that since this has been the

17  issue that has bedeviled the possible resolution of this claim,

18  the Court may want to direct the parties to, before they spend

19  any more money on litigating this, to continue a mediation

20  session before Judge Welsh or before another mediator of your

21  choosing.

22       THE COURT:  Well, I agree that it should go to

23  mediation before you spend a whole lot more money looking into

24  whatever the discovery issues are.  My understanding of the

25  discovery order that I entered was that it was to facilitate,

31

1     as Mr. Bernick said, the mass resolution of issues to the

2     extent that they could be lumped together and not to foreclose

3     discovery for trial issues in the event that there was not a

4     resolution on the summary judgment statute of limitations

5     issue.

6          So, to the extent that the parties need discovery for

7     trial, in my view that was never foreclosed.  I'll have to go

8     back and take a look at the orders.  I did not do that in

9     preparation for this status conference, but that's my general

10    recollection, Mr. Mandelsberg.  But I wholly agree that before

11    you go down that road the debtor has been very successful in

12    settling nearly all property damage claims that have not been

13    disposed of by some other resolution, Court ordered resolution,

14    and it seems to me that you should return to mediation first.

15         The District Court does, indeed, say that the debtor

16    is free to re-raise these issues after some fact-based

17    analysis, and, so, I'm not exactly sure how, without discovery,

18    we're going to get to that resolution.  But I took that to mean

19    for trial purposes.  I'll look at the District Court's opinion

20    again as well.  I don't really see the two bites of the apples

21    on summary judgment motion process.  If you're going to raise

22    those issues you should raise them at one time, not seriatim.

23    So I think what will happen is if mediation is not successful

24    then I will probably open discovery for purposes of trial

25    matters and then set a scheduling conference.  But you should

1    go to mediation first.

2          So how much time and can you work out a process?

3          MR. MANDELSBERG:  Your Honor, Steven Mandelsberg from

4    Hahn & Hessen again, for the State of California Department of

5    General Services.  I know the holidays are upcoming, but I

6    would think that we should be able to get together on a

7    schedule and a mediation session within sixty days.

8          MS. REA:  And, Your Honor, this is Tracy Rea on behalf

9    of the debtors.  I have not spoken to our client with respect

10   to this concept, but, certainly, I will do so immediately, and

11   we'll try to get, obviously, with Mr. Mandelsberg in that time

12   period.

13         THE COURT:  Well, why don't I continue this hearing

14   until the -- I'm not sure.  Ms. Baer, I'm sorry, do you have

15   the January hearing date for summaries?  I managed to come with

16   the 2009 but not the 2010 list.

17         MS. BAER:  I do, Your Honor.  The January date is

18   January 25

19         THE COURT:  All right.  That's a good date.  I'll put

20   this back on the agenda for January 25th.

21         MR. MANDELSBERG:  Your Honor, Steven Mandelsberg,

22   again, from Hahn & Hessen.  Will that be for a status

23   conference?

24         THE COURT:  Yes, Mr. Mandelsberg.  I want to make sure

25   that you folks actually have come up with an acceptable

33

1    mediation order, and/or maybe we'll have done the mediation by

2    then.  I'm really not sure.  I haven't looked at this for too

3    long, and, I'm sorry, but I don't recall whether the order that

4    authorized Judge Welsh to do this terminated when it was not

5    successful.  I do recall getting the communication from here

6    indicating that she was more than willing to sit down with the

7    parties again, but I don't know if I need to do another order

8    to that effect or whether you folks can just go and make

9    arrangements with her.  If you can make arrangements and you

10   are willing to go back with her, that seems fine to me.  I

11   don't see why I need to get involved in that process, except to

12   know whether you have or haven't done it and settled.  So I

13   think if I just put this back on the January 25th agenda for a

14   status report to find out what you've been able to do between

15   now and then, that that will be fine.  So if you have not

16   finished the mediation before then then I expect to at least

17   have an order from you that will set the schedule for mediation

18   by that date.

19        MS. REA:  Yes, Your Honor.  This is Tracy Rea.  We

20   will look at that order and see if we need to submit a new

21   order or if we can simply proceed.

22        THE COURT:  Okay.

23        MR. MANDELSBERG:  Your Honor, Steven Mandelsberg

24   again.  That's fine.  I do believe that the parties made

25   submissions to Judge Welsh, so it may not be any more

34

1    complicated than simply supplementing those submissions,

2    checking the order and fixing a date.

3              THE COURT:  Okay.  Well, I will expect that if I need

4    to do some order that you folks will send me one on a

5    certification of counsel that's related to today's agenda, and

6    otherwise that you will just progress on your own to get the

7    mediation set up.  If there's some issue I'm sure I'll hear

8    from you.  So I'll do a status conference January 25th to find

9    out what the lay of the land looks like at that time, and,

10   hopefully, you'll be able to resolve this.  If not, then at

11   some point we will discuss a trial schedule.  Okay.  Any --

12             MR. MANDELSBERG:  Very well.

13             THE COURT:  Anything further today?

14             MS. BAER:  Your Honor, there's nothing further on the

15   agenda.  I believe all of the response plus trial briefs came

16   in last Friday.  Hyperlinks (ph.) are due on December 2nd, and

17   then the last briefs you'll be getting in before closing

18   arguments are the Anderson Memorial briefs due on December 8th,

19   and that's responded December 23rd.

20             THE COURT:  Okay.

21             MS. BAER:  Thank you.  Have a great Thanksgiving.

22             THE COURT:  Thank you.  You too.

23             ALL:  Thank you.  Have a great holiday.  Happy

24   Thanksgiving.

25             THE COURT:  We're adjourned.  Thank you.

35

1          (Proceedings concluded at 11:05 AM)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

36

1

2                         C E R T I F I C A T I O N

3

4      I, Hana Copperman, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7      _____

8      HANA COPPERMAN

9      AAERT Certified Electronic Transcriber (CET**D-487)

10

11     Veritext

12     200 Old Country Road

13     Suite 580

14     Mineola, NY 11501

15

16     Date: November 30, 2009

17

18

19

20

21

22

23

24

25