**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

In re:                                             Chapter 11

**W.R. Grace & Co., et al.**                       Case No. 01-01139 (JKF)

                    Debtors.                        Jointly Administered

**THIRTY-FOURTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM JULY 1, 2009 THROUGH SEPTEMBER 30, 2009**

Name of Applicant                              **Stroock & Stroock & Lavan LLP**

Authorized to Provide
Professional Services to:                      **Official Committee of Unsecured Creditors**

Date of Retention:                             **April 12, 2001**

Period for which compensation and             **July 1, 2009 – September 30, 2009**
reimbursement is sought

Amount of Compensation sought as              **$944, 248.25**
actual, reasonable and necessary:

Amount of Expense Reimbursement sought        **$44,707.82**
as actual, reasonable and necessary:

Fees and Expenses of the Asbestos Issues      **$2,812.50**
Expert:

This is an: ☒ interim ☐ final application

This is the thirty-fourth quarterly application filed.

**Attachment A**

**Monthly Interim Fee Applications**

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02-04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| July 2, 2002 D.I.2324 | 05/01/02 – 05/31/02 | $74,910.75 | $2,9154.43 (Stroock) $43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002 D.I.2495 | 06/01/02 – 06/30/02 | $73,096.75 | $2,054.05 (Stroock) $114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002 D.I.2720 | 07/01/02 – 07/31/02 | $90,903.27 | $1,250.79 (Stroock) $11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002 D.I.2898 | 08/01/02 – 08/31/02 | $93,151.25 | $11,539.51 (Stroock) $5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002 D.I.2981 | 09/01/02 - 09/30/02 | $96,613.25 | $15,567.77 (Stroock) $771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002 D.I.3129 | 10/1/02 – 10/31/02 | $68,404.00 | $2,956.54 (Stroock) $1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003 D.I.3286 | 11/1/02 – 11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003 D.I.3349 | 12/1/02 – 12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003 D.I.3552 | 1/1/03 – 1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003 D.I.3626 | 2/1/03 – 2/28/03 | $76,313.00 | $2,022.78 (Stroock) $1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003 D.I.3718 | 3/1/03 – 3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003 D.I. 3850 | 4/1/03 – 4/30/03 | $60,269.00 | $814.02 (Stroock) $2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003 D.I. 3983 | 5/1/03 – 5/31/03 | $111,990.50 | $691.84 (Stroock) $3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003 D.I. 4152 | 6/1/03 – 6/30/03 | $43,824.00 | $1,220.42 (Stroock) $61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003 D.I. 4381 | 7/1/03 – 7/31/03 | $79,090.50 | $2,301.33 (Stroock) $14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 30, 2003 D.I. 4512 | 8/1/03 – 8/31/03 | $69,927.00 | $1,164.19 (Stroock) $12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003 D.I. 4625 | 9/1/03 – 9/30/03 | $69,409.50 | $1,076.94 (Stroock) $10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003 D.I. 4843 | 10/1/03 – 10/31/03 | $96,980.50 | $3,800.45 (Stroock) $42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004 D.I. 4976 | 11/1/03 – 11/30/03 | $66,428.50 | $1,225.38 (Stroock) $30,463.00 (Navigant f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004 D.I. 5056 | 12/1/03 – 12/31/03 | $52,321.50 | $924.99 (Stroock) $27,005.00 (Navigant f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004 D.I. 5309 | 1/1/04 – 1/31/04 | $65,980.50 | $1,917.93 (Stroock) $47,654.57 (Navigant f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004 D.I. 5406 | 2/1/04 – 2/29/04 | $90,421.50 | $3,636.48 (Stroock) $35,492.50 (Navigant f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004 D.I. | 3/1/04 – 3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004 D.I. 5803 | 4/1/04 – 4/30/04 | $99,136.00 | $3,518.96 (Stroock) $1,515.00 (Navigant February) $49,667.00 (Navigant March) $80,307.11 (Navigant April) | $79,308.80 | $135,008.07 |
| July 2, 2004 D.I. 5917 | 5/1/04 – 5/31/04 | $134,324.50 | $2,409.97 (Stroock) $78,360.05 (Navigant May) | $107,459.60 | $80,770.02 |
| August 2, 2004 D.I. 6105 | 6/1/04 – 6/31/04 | $120,501.00 | $1,831.49 (Stroock) $62,625.00 (Navigant June) | $96,400.80 | $64,456.49 |
| September 9, 2004 D.I. 6341 | 7/1/04 – 7/31/04 | $72,394.00 | $3,461.84 (Stroock) $40,427.50 (Navigant July) | $57,915.20 | $43,889.34 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 23, 2004 D.I. 6444 | 8/1/04 – 8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004 D.I 6625 | 9/1/04 – 9/30/04 | $83,903.50 | $1,535.61 (Stroock) $27,142.00 (Navigant August) | $67,122.80 | $28,677.61 |
| December 3, 2004 D.I. 7086 | 10/1/04 – 10/31/04 | $200,155.50 | $1,368.18 (Stroock) $ 24,659.00 (Navigant September) | $160,124.40 | $26,027.18 |
| January 7, 2005 D.I. 7481 | 11/1/04 – 11/30/04 | $218,608.50 | $14,019.09 (Stroock) $25,102.80 (Navigant October) $27,972.34 (Navigant November) | $174,886.80 | $67,094.23 |
| February 2, 2005 D.I. 7667 | 12/1/04 – 12/31/04 | $235,503.70 | $10,442.92 (Stroock) $62,687.97 (Navigant December) | $188,402.96 | $73,130.89 |
| March 15, 2005 D.I. 8026 | 1/1/05 – 1/31/05 | $187,168.00 | $4,411.55 (Stroock) $15,686.00 (Navigant January) | $149,734.40 | $20,097.55 |
| April 1, 2005 D.I. 8155 | 2/1/05 – 2/28/05 | $108,180.25 | $8,102.85 (Stroock) $18,303.37 (Navigant February) | $86,544.20 | $26,406.22 |
| April 29, 2005 D.I. 8305 | 3/1/05 – 3/31/05 | $56,941.25 | $287.23 (Stroock) $6,114.86 (Navigant March) | $45,553.00 | $6,402.09 |
| June 6, 2005 D.I. 8562 | 4/1/05- - 4/30/05 | $127,695.00 | $3,531.45 (Stroock) $20,129.06 (Navigant April) | $102,156.00 | $23,660.51 |
| June 28, 2005 D.I. 8704 | 5/1/05- 5/31/05 | $98,569.00 | $4,871.74 (Stroock) | $78,855.20 | $858.21 |
| August 3, 2005 D.I. 9135 | 6/1/05- 6/30/05 | $114,903.75 | $4,871.74 (Stroock) $34,075.28 (Navigant June) | $91,923.00 | $38,947.02 |
| September 8, 2005 D.I. 9356 | 7/1/05 – 7/31/05 | $117,780.75 | $2,088.44 (Stroock) $2,211.00 (Navigant) | $94,224.60 | $4,299.44 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| October 4, 2005 D.I. 9565 | 8/1/05 – 8/31/05 | $106,796.25 | $5,046.99 (Stroock) $18,550.00 (Navigant) | $85,437.00 | $23,596.99 |
| November 1, 2005 D.I. 10951 | 9/1/05 – 9/30/05 | $67,697.50 | $1,399.68 (Stroock) $11,197.50 (Navigant) | $54,158.00 | $12,597.18 |
| November 29, 2005 D.I. 11202 | 10/1/05 – 10/31/05 | $98,216.75 | $1,611.30 (Stroock) $11,582.50 (Navigant) | $78,573.40 | $13,193.80 |
| January 9, 2006 D.I. 11507 | 11/1/05 – 11/30/05 | $104,348.00 | $2,847.45 (Stroock) $71,598.50 (Navigant) | $83,478.40 | $74,445.95 |
| January 30, 2006 D.I. 11655 | 12/1/05 – 12/31/05 | $96,855.00 | $1,379.53 (Stroock) $20,317.49 (Navigant) | $77,484.00 | 21,697.02 |
| March 1, 2006 D.I. 11921 | 1/1/06 – 1/31/06 | $73.383.00 | $1,810.85 (Stroock) $14,124.01 (Navigant) | $58.706.40 | $15,934.86 |
| March 28, 2006 D.I. 12134 | 2/1/06 – 2/28/06 | $105,083.75 | $1,434.62 (Stroock) $25,971.70 (Navigant) | $84.067.00 | $27,406.32 |
| May 2, 2006 D.I. 12354 | 3/1/06 – 3/31/06 | $145,189.50 | $2,512.81 (Stroock) $25,838.37 (Navigant) | $116,151.60 | $28,351.18 |
| May 31, 2006    DI. 12558 | 4/1/2006 – 4/30/2006 | $116,817.00 | $2,141.42 (Stroock) $7,425.00 (Navigant) | $93,453.60 | $9,566.42 |
| July 6, 2006 D.I. 12748 | 5/1/2006 – 5/31/2006 | $121,304.50 | $1,838.71 (Stroock) $17,493.75 (Navigant) | $97,043.60 | $19,332.46 |
| August 1, 2006 D.I. 12899 | 6/1/2006 – 6/30/2006 | $94,856.50 | $1,869.66 (Stroock) $38,548.75 (Navigant) | $75,885.20 | $40,418.41 |
| August 30, 2006 D.I. 13117 | 7/1/2006 – 7/31/2006 | $97,397.25 | $496.76 (Stroock) $30,280.00 (Navigant) | $77,917.80 | $30,776.76 |
| October 2, 2006 D.I. 13336 | 8/1/2006 – 8/31/2006 | $131,856.25 | $98.34 (Stroock) $98,317.50 (Navigant) | $105,485.00 | $98,415.84 |
| November 2, 2006 D.I. 13559 | 9/1/2006 – 9/30/2006 | $150,960.00 | $4,147.01 (Stroock) $91,179.11 (Navigant) | $120,768.00 | $95,326.12 |
| November 29, 2006 D.I. 13838 | 10/1/06 – 10/31/06 | $196,223.50 | $915.14 (Stroock) $147,374.20 (Navigant) | $156,978.89 | $148,289.34 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| January 12, 2007<br>D.I. 14292 | 11/1/06 –<br>11/30/06 | $188,638.00 | $3,370.16 (Stroock)<br>$133,438.70 (Navigant) | $150,910.40 | $136,808.86 |
| January 29, 2007<br>D.I. 14415 | 12/1/06 –<br>12/31/06 | $99,832.00 | $5,752.89 (Stroock)<br>$55,245.22 (Navigant) | $79,865.60 | $60,998.11 |
| March 8, 2007<br>D.I. 14810 | 1/1/07 –<br>1/31/07 | $77,582.00 | $962.06 (Stroock)<br>$90,474.74 (Navigant) | $62,065.60 | $91,436.80 |
| April 10, 2007<br>D.I. 15132 | 2/1/07 –<br>2/28/07 | $119,140.50 | $3,092.88 (Stroock)<br>$77,301.25 (Navigant) | $95,312.40 | $80,394.13 |
| May 1, 2007<br>D.I. 15457 | 3/1/07 –<br>3/31/07 | $135,228.00 | $6,635.25 (Stroock)<br>$104,674.53 (Navigant) | $108,182.40 | $111,309.78 |
| June 22, 2007<br>D.I. 16136 | 4/1/07 –<br>4/30/07 | $177,646.00 | $815.81 (Stroock)<br>$173,437.45 (Navigant) | $142,116.80 | $174,253.26 |
| July 17, 2007<br>D.I. 16309 | 5/1/07 –<br>5/31/07 | $205,937.25 | $6,405.01 (Stroock)<br>$162,431.03 (Navigant) | $164,749.80 | $168,836.04 |
| August 10, 2007<br>D.I. 16528 | 6/1/07 –<br>6/30/07 | $225,650.50 | $5,929.97 (Stroock)<br>$200,294.81 (Navigant) | $180,520.40 | $206,224.78 |
| September 14, 2007<br>D.I. 16822 | 7/1/07 –<br>7/31/07 | $157,268.50 | $4,021.65 (Stroock)<br>$208,116.54 (Navigant) | $125,814.80 | $212,138.19 |
| October 1, 2007<br>D.I. 16959 | 8/1/07 –<br>8/31/07 | $145,866.50 | $3,354.61 (Stroock)<br>$210,152.54 (Navigant) | $116,693.20 | $213,507.15 |
| November 16, 2007<br>D.I. 17394 | 9/1/07 –<br>9/30/07 | $206,908.50 | $3,056.89 (Stroock) | $165,526.80 | $3,056.89 |
| December 5, 2007<br>D.I. 17548 | 10/1/07 –<br>10/31/07 | $288,976.50 | $22,324.58 (Stroock)<br>$325,509.63 (Navigant) | $231,181.20 | $303,185.05 |
| January 11, 2008<br>D.I. 17803 | 11/1/07 –<br>11/30/07 | $249,372.50 | $32,780.40 (Stroock)<br>$162,394.93 (Navigant) | $199,498.00 | $195,175.33 |
| February 1, 2008<br>D.I. 17957 | 12/1/07 –<br>12/31/07 | $116,522.50 | $57,717.92 (Stroock)<br>$47,444.43 (Navigant) | $93,218.00 | $105,162.35 |
| March 4, 2008<br>D.I. 18202 | 1/1/08 –<br>1/31/08 | $201,472.50 | $3,282.80 (Stroock)<br>$86,070.26 (Navigant) | $161,178.00 | $89,353.06 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| April 5, 2008 D.I. 18450 | 2/1/08 – 2/29/08 | $195,491.00 | $5,922.25 (Stroock) $73,924.16 (Navigant) | $156,392.80 | $79,846.41 |
| April 29, 2008 D.I. 18639 | 3/1/08 – 3/31/08 | $275,659.00 | $11,217.17 (Stroock) $69,201.53 (Navigant) | $220,527.20 | $80,418.70 |
| June 4, 2008 D.I. 18862 | 4/1/08 4/30/08 | $298,888.00 | $10,143.60 (Stroock) $38,800.00 (Navigant) | $239,110.40 | $48,943.60 |
| July 1, 2008 D.I. 19032 | 5/1/08 5/31/08 | $138,683.50 [1] | $3,649.95 (Stroock) | $110,946.80 [2] | $3,649.95 |
| August 4, 2008 D.I. 19224 | 6/1/08 6/30/08 | $213,559.00 | $12,357.78 (Stroock) $96.84 (Navigant) | $170,847.20 | $12,454.62 |
| September _, 2008 D.I. 19516 | 7/1/08 7/31/08 | $206,087.50 | $6,717.13 (Stroock) $259.90 (Navigant) | $164,870.00 | $6,977.03 |
| September 30, 2008 D.I. 19653 | 8/1/08 8/31/08 | $212,928.50 | $2,326.65 (Stroock) | $170,342.80 | $2,326.65 |
| November 6, 2008 D.I. 19949 | 9/1/08 9/30/08 | $226,486.50 | $2,844.77 (Stroock) | $181,189.20 | $2,844.77 |
| December 2, 2008 D.I. 20168 | 10/1/08 10/31/08 | $270,097.00 | $10,611.52 (Stroock) | $216,077.60 | $10,611.52 |
| December 30, 2008 D.I. 20384 | 11/1/08 11/30/08 | $184,642.00 | $5,870.24 (Stroock) | $147,713.60 | $5,870.24 |
| February 3, 2009 D.I. 20654 | 12/1/08- 12/31/08 | $102,648.50 | $4,017.80 (Stroock) | $82,118.80 | $4,017.80 |
| March 3, 2009 D.I. 20906 | 1/1/09 1/31/09 | $114,525.00 | $2,458.44 (Stroock) | $91,620.00 | $2,458.44 |
| March 30, 2009 D.I. 21152 | 2/1/08 2/28/09 | $141,569.00 | $1,627.89 (Stroock) | $113,255.20 | $1,627.89 |
| April 29, 2009 D.I. 21475 | 3/01/09 3/31/09 | $181,006.75 | $3,270.02 (Stroock) | $144,805.40 | $3,270.02 |

---

[1]    See paragraph 10 herein.

[2]    See paragraph 10 herein.

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| May 29, 2009<br>D.I. 21910 | 4/01/09<br>4/30/09 | $187,588.50 | $1,545.41 (Stroock) | $150,070.80 | $1,545.41 |
| July 1, 2009<br>D.I. 22310 | 5/01/09<br>5/31/09 | $227,989.00 | $9,428.79 (Stroock) | $182,391.20 | $9,428.79 |
| August 6, 2009<br>D.I. 22709 | 6/01/09<br>6/30/09 | $238,611.25 | $5,960.91 (Stroock) | $190,889.00 | $5,960.91 |
| September 25, 2009<br>D.I. 23338 | 7/01/09<br>7/31/09 | $294,766.50 | $17,306.20 (Stroock) | $235,813.20 | 17,306.20 |
| October 5, 2009<br>D.I. 23422 | 8/01/09<br>8/31/09 | $299,544.25 | $7,237.57(Stroock)<br>$2,812.50 (Navigant) | $239,635.40 | $10,050.07 |
| November 13, 2009<br>D.I. 23759 | 9/01/09<br>9/30/09 | $349,937.50 | $20,164.05 (Stroock) | | |

**Quarterly Fee Applications**

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01-6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43[*] | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60[*] | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78[*] | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45[*] | $224,534.21[3] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75[*] | $136,886.40[4] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |

---

[*]   These amounts relate to the Committee's Asbestos Issues Expert.

[3]   Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[4]   Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 20, 2003 D.I. 3815 (Eighth) | 1/1/03 – 3/31/03 | $224,358.50 | $9,424.04 $1,077.80* | $224,615.50[5] | $9,424.04 (Stroock)[3] $1,077.80 (Chambers)[3] |
| August 29, 2003 D.I. 4357 (Ninth) | 4/1/03 – 6/30/03 | $215,903.50 | $2,726.28 $67,628.50* | $215,903.50[6] | $2,726.28 (Stroock)[4] $67,628.50 (Chambers)[4] |
| December 5, 2003 D.I. 4778 (Tenth) | 7/1/03 – 9/30/03 | $218,222.00 | $4,339.46 $36,865.19* | $218,222.00[7] | $4,339.46 (Stroock)[5] $36,865.19 (Chambers)[5] |
| March 2, 2004 D.I. 5212 (Eleventh) | 10/1/03 – 12/31/03 | $215,718.50 | $5,950.82 $100,349.50* | $215,718.50[8] | $5,922.67 (Stroock)[6] $100,349.50 (Chambers)[6] |
| May 18, 2004 D.I. 5597 (Twelfth) | 1/1/04 – 3/31/04 | $254,857.00 | $9,965.36 $83,147.07* | $254,857.00[9] | $9,965.36 (Stroock)[7] $83,147.07 (Navigant)[7] |
| August 26, 2004 D.I. 6269 (Thirteenth) | 4/1/04 – 6/30/04 | $353,629.50 | $7,760.42 $272,474.16* | $353,629.50[10] | $7,760.42 (Stroock)[8] $272,474.16 (Navigant)[8] |

---

[5]  Court Order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[6]  Amended Court Order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[7]  Court Order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[8]  Court Order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[9]  Court Order dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[10]  Court Order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| November 10, 2004 D.I. 6871 (Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08 $67,569.50* | $226,702.50[11] | $6,705.08 (Stroock)[9] $67,569.50 (Navigant)[9] |
| February 22, 2005 D.I. 7851 (Fifteenth) | 10/1/04 – 12/31/04 | $653,133.20 | $25,830.19 $140,422.11* | $648,355.70[12] | $25,830.19 (Stroock)[10] $140,422.11 (Navigant)[10] |
| May 16, 2005 D.I. 8468 (Sixteenth) | 1/1/05- 3/31/05 | $352,289.50 | $12,746.23 $40,104.23* | $349,644.00 | $12,746.23 (Stroock)[13] $40,104.23 (Navigant) |
| August 19, 2005 D.I. 9225 (Seventeenth) | 4/1/-5 – 6/30/05 | $340,821.25 | $9,261.40 $54,204.34* | $340,096.25[14] | $9,261.40 (Stroock) $54,204.34 (Navigant) |
| November 18, 2005 D.I. 11118 (Eighteenth) | 7/1/05 – 9/30/05 | $291,843.50 | $8,534.71 $31,958.50* | $291,843.50[15] | $8,534.71 (Stroock) $31,958.50 (Navigant) |
| February 15, 2006 D.I. 11798 (Nineteenth) | 10/1/05 – 12/31/05 | $299,419.75 | $5,838.28 $103,498.49* | $299,419.75[16] | $5,838.69 (Stroock $103,498.49 (Navigant) |

---

[11] Court Order dated March 22, 2005 approved fees in the amount of $226,702.50 and expenses in the amount of $74,274.58.

[12] Court Order dated June 29, 2005 approved fees in the amount of  $648,335.70 and expenses in the amount of $166,252.30.

[13] Court  Order dated September 27, 2005 approved fees in the amount of $349,644.00 and expenses in the amount of $52,850.46.

[14] Court Order dated December 19, 2005 approved fees in the amount of $340,096.25 and expenses in the amount of $63,465.74.

[15] Court Order dated March 24, 2006 approved fees in the amount of $291,843.50 and expenses in the amount of $40,493.21.

[16] Court Order dated June 16, 2006 approved fees in the amount of $299,419.75 and expenses in the amount of $109,337.18.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 26, 2006 D.I. 12533 (Twentieth) | 1/1/2006 – 3/31/2006 | $323,566.25 | $5,758.28 $65,934.98* | $323,451.25[17] | $5,758.28 (Stroock) $64,810.58 (Navigant) |
| August 17, 2006 D.I. 13006 (Twenty-First) | 4/1/2006 – 6/30/2006 | $332,978.00 | $5,849.79 $63,467.50* | $332,978.00[18] | $5,849.70 (Stroock) $63,467.50 (Navigant) |
| November 29, 2006 D.I. 13835 (Twenty-Second) | 7/1/2006 – 9/30/2006 | $380,213.50 | $4,742.11 $219,776.61* | $380,213.50[19] | $4,742.11 (Stroock) $219,776.61 (Navigant) |
| March 1, 2007 D.I. 14717 (Twenty-Third) | 10/1/2007 – 12/31/07 | $484,693.50 | $10,038.19 $336,058.12* | $484,693.50[20] | $10,038.19 (Stroock) $336,058.12 (Navigant) |
| June 4, 2007 D.I. 15949 (Twenty-Fourth) | 1/1/07 - 3/31/07 | $331,950.50 | $10,690.15 $272,450.52* | $331,950.50[21] | $10,690.15 (Stroock) $272,450.52 (Navigant) |
| August 30, 2007 D.I. 16710 (Twenty-Fifth) | 4/1/2007 - 6/30/2007 | $609,233.75 | $13,150.79 $536,163.29* | $609,233.75[22] | $13,150.79 (Stroock) $536,163.29 (Navigant) |

---

[17]  Court Order dated September 25, 2006 approved fees in the amount of $323,451.25 and expenses in the amount of $71,130.16.

[18]  Court Order dated December 18, 2006 approved fees in the amount of $332,978.00 and expenses in the amount of $69,317.29.

[19]  Court Order dated May 3, 2007 approved fees in the amount of $380,213.50 and expenses in the amount of $224,518.72.

[20]  Court Order dated June 20, 2007 approved fees in the amount of $484,693.50 and expenses in the amount of $346,096.31.

[21]  Court Order dated September 24, 2007 approved fees in the amount of $331,950.50 and expenses in the amount of $283,140.67.

[22]  Court order dated December 13, 2007 approved fees in the amount of $609,233.75 and expenses in the amount of $549,314.08.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| December 12, 2007 D.I. 17625 (Twenty-Sixth) | 7/1/2007 – 9/30/2007 | $510,043.50 | $10,433.15 $418.269.08* | $508,758.50[23] | $10,433.15 (Stroock) $418,269.08 (Navigant) |
| March 5, 2008 D.I. 18222 (Twenty-Seventh) | 10/1/07 – 12/31/07 | $654,871.50 | $112,822.90 $535,348.99* | $654,871.50[24] | $112,650.85 (Stroock) $535,348.99 (Navigant) |
| May 27, 2008 D.I. 18789 (Twenty-Eighth) | 1/1/08 3/31/08 | $672,622.50 | $20,422.22 $229,195.95* | $672,622.50[25] | $20,422.22 (Stroock) $229,195.95 (Navigant) |
| August 27, 2008 D.I. 19386 (Twenty-Ninth) | 4/1/08 6/30/08 | $653,130.50 | $26,151.33 $38,896.84 | $653,130.50[26] | $26,151.33 (Stroock) $38,896.84 (Navigant) |
| December 5, 2008 D.I. 20207 (Thirtieth) | 7/1/08 – 9/30/08 | $645,502.50 | $11,888.55 $259.90 | $645,092.50[27] | $11,888.55 (Stroock) $259.90 (Navigant) |
| March 9, 2009 D.I. 20950 (Thirty-First) | 10/01/08 12/31/08 | $557,387.50 | $20,499.56 | $557,387.50[28] | $20,499.56 |
| June 1, 2009 D.I. 21937 (Thirty-Second) | 1/01/09 3/31/09 | $437,100.75 | $7,356.35 | $433,438.75[29] | $7356.35 |

---

[23] Court order dated March 12, 2008 approved fees in the amount of $508,758.50 and expenses in the amount of $428,702.23.

[24] Court order dated June 23, 2008 approved fees in the amount of $654,871.50 and expenses in the amount of $647,999.84.

[25] Court order dated October 1, 2008 approved fees in the amount of $672,622.50 and expenses in the amount of $249,618.17.

[26] Court order dated December 17, 2008 approved fees in the amount of $653,130.50 and expenses in the amount of $65,048.17.

[27] Court order dated April 1, 2009 approved fees in the amount of $645,092.50 and expenses in the amount of $12,148.45.

[28] Court order dated July 7, 2009 approved fees in the amount of $557,387.50 and expenses in the amount of $20,499.56.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| August 19, 2009 D.I. 22869 (Thirty-Third) | 4/01/09 6/30/09 | $654,188.75 | $16,935.11 | | |

---

[29]  Court order dated September 28, 2009 approved fees in the amount of $433,438.75 and expenses in the amount of $7,356.35.

**WR GRACE & CO**

**ATTACHMENT B**

**JULY 1, 2009 - SEPTEMBER 30, 2009**

|  | Hours | Rate | Amount | No. of Years in Position |
|---|---|---|---|---|
| **Partners** | | | | |
| Kruger, Lewis | 100.3 | $ 995 | $   99,798.50 | 39 |
| Pasquale, Kenneth | 404.0 | 825 | 333,300.00 | 9 |
| Ross, Daneil A. | 22.0 | 875 | 19,250.00 | 7 |
| | | | | |
| **Associates** | | | | |
| Berg, Madelaine | 1.7 | 650 | 1,105.00 | 28 |
| Harris, Daniel J. | 22.8 | 325 | 7,410.00 | 1 |
| Jarashow, Mark S. | 83.6 | 345 | 28,842.00 | 1 |
| Keppler, Abbey L. | 1.3 | 675 | 877.50 | 16 |
| Krieger, Arlene G. | 601.3 | 675 | 405,877.50 | 24 |
| Strauss, Joseph E. | 9.1 | 610 | 5,551.00 | 8 |
| | | | | |
| **Paraprofessionals** | | | | |
| Bannister, Shawn A. | 10.9 | 275 | 2,997.50 | 3 |
| Cohen, Reuben H. | 0.4 | 240 | 96.00 | 1 |
| Cromwell, Marlon E. | 19.8 | 235 | 4,653.00 | 1 |
| Crooks, Harris | 1.5 | 230 | 345.00 | 11 |
| Garber, Russell D. | 18.7 | 210 | 3,927.00 | NA |
| Holzberg, Ethel H. | 80.6 | 275 | 22,165.00 | 36 |
| Jones, Margaret | 1.6 | 205 | 328.00 | 9 |
| Krieger, Dmitriy | 0.4 | 205 | 82.00 | 11 |
| Magzamen, Michael S. | 2.8 | 295 | 826.00 | 4 |
| Mohamed, David | 187.9 | 180 | 33,822.00 | 19 |
| Szemelynec, Kristine A. | 1.6 | 275 | 440.00 | 2 |
| Wojcik, Mark R. | 0.2 | 295 | 59.00 | 3 |
| | | | | |
| **Sub Total** | **1,572.5** | | **$  971,752.00** | |
| **Less 50% Travel** | **(34.2)** | | **(27,503.75)** | |
| **Total** | **1,538.3** | | **$  944,248.25** | |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## THIRTY-FOURTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JULY 1, 2009 THROUGH SEPTEMBER 30, 2009

Strook & Strook & Lavan LLP ("Strook" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

accordance with the Administrative Fee Order (defined below) for interim allowance of

---

[1]     The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA  Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## INTRODUCTION

1.      By this application (the "Application"), Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from July 1, 2009 through September 30, 2009 (the "Compensation Period") in the aggregate amount of $944,248.25 representing 1211.9 hours of professional services and 326.4 hours of paraprofessional services; and (ii) the reimbursement of actual and necessary expenses incurred by Stroock during the Compensation Period in connection with its rendition of such professional and paraprofessional services for the Committee in the aggregate amount of $44,707.82, as well as the professional fees of the asbestos issues expert employed by the Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert") in the amount of $2,812.50 for services rendered during the Compensation Period.

2.      Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## BACKGROUND

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code and has continued in the management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

Bankruptcy Code.  Pursuant to an order of the Court, the Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.

4.      The Debtors operate a worldwide specialty chemicals and materials business and employ approximately 3860 full and part-time employees.  On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues.  The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.      On April 12, 2001, the United States Trustee formed the Committee.  During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases.  The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP (n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel.  On December 3, 2003, the United States Trustee filed a second amended notice of appointment of the Committee.  On July 10, 2006, the United States Trustee filed a third amended notice of appointment of the Committee.

6.      The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims (the "ACC") and asbestos-related property damage claims (the "PD Committee") against the Debtors (collectively, the "Asbestos Claim Committees").  On June 18, 2001, the United States Trustee

---

[2]    The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

appointed an official committee to represent the interests of equity security holders of the Debtors (the "Equity Committee").

7.    By order dated May 24, 2004, the Court authorized the appointment of a legal representative for future asbestos personal injury claimants (the "PI FCR").  By order dated October 20, 2008, the Court authorized the appointment of a legal representative for future asbestos property damage claimants (the "PD FCR").

8.    By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001.  The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

9.    This is the thirty-fourth quarterly interim application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee.  This Application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 as amended by order dated April 17, 2002 (collectively, the "Administrative Fee Order").

10.    In accordance with the procedures established by the Administrative Fee Order, Stroock had, at the time of filing this Application, received payment from the Debtors for 80% of the fees and 100% of Stroock's expenses requested, and not objected to, in the July 2009 and August 2009 fee statements.  Stroock has not received payment for the fees and expenses requested in the September 2009 fee statement for which a certificate of no objection has not yet been filed.  In addition, Stroock has received payment from the Debtors representing the fees of

Navigant Consulting, Inc. ("Navigant"), the Asbestos Issues Expert for the Committee, sought in the August 2009 fee statement in the amount of $2,812.50.  Applicant has received no other payments and no promises for payment from any source for services rendered in connection with these cases for the months encompassing this Compensation Period other than as immediately set forth above.  There is no agreement or understanding between the Applicant and any other person (other than members of Stroock) for the sharing of compensation to be received for the services rendered in these cases.

11.     As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

12.     Since being retained by the Committee, Stroock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates.  The variety and complexity of these cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

13.     Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee.  Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Stroock's practice, and are presented in compliance

with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2006.  A compilation

showing the name of the attorney or paraprofessional, the date on which the services were

performed, a description of the services rendered, and the amount of time spent in performing the

services during the Compensation Period is annexed hereto as Exhibit "B".  In addition, Exhibit

"C" hereto contains a summary of the hours expended by each of the attorneys and

paraprofessionals during the Compensation Period, their normal hourly rates, and the value of

their services.

14.    Stroock also maintains records of all actual and necessary out-of-pocket expenses

incurred in connection with the rendition of its professional services, all of which are also

available for inspection.  A schedule of the categories of expenses and amounts for which

payment is requested is annexed hereto as Exhibit "D".

15.    Stroock respectfully submits that the professional services that it rendered on

behalf of the Committee were necessary and have directly benefited the creditor constituents

represented by the Committee and have contributed to the effective administration of these cases.

16.    The following summary of the services rendered during the Compensation Period

is not intended to be a detailed description of the work performed, as those day-to-day services

and the time expended in performing such services are fully set forth in Exhibit "B".  Rather, it is

merely an attempt to highlight certain of these areas in which services were rendered to the

Committee, as well as to identify some of the problems and issues to which Stroock was required

to direct its attention.

### Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003

17.     As reflected in prior compensation applications, in mid-November 2004, the Debtors filed a reorganization plan and numerous related pleadings including their motion seeking the estimation of asbestos claims and the establishment of a schedule and procedures for carrying out the estimations (the "Estimation Motion"), and their motion to establish post-confirmation litigation protocols for liquidating asbestos claims.

18.     The Court subsequently approved a form of case management order to govern the pre-confirmation estimation of asbestos personal injury claims (the "PI CMO") and several amendments thereto (the "Amended PI CMOs") and the related form of questionnaire (the "Questionnaire") to be used by asbestos personal injury claimants who had commenced pre-petition litigation against the Debtors (the "PI Pre-Petition Litigation Claimants"), and two case management orders for property damage claims (as amended, the "PD CMOs"); one to govern the Debtors' claims objection process and the other to govern the pre-confirmation estimation of property damage claims ("PD Claims").  The Amended PI CMOs established pre-trial dates and deadlines and trial dates to govern the estimation of asbestos personal injury claims (the "PI Estimation").  The PI Estimation trial commenced in January 2008.

19.     On April 7, 2008, the Debtors informed the Court that they had reached an agreement with the ACC, the PI FCR and the Equity Committee (collectively, the "Plan Proponents") on a resolution of the Debtors' present and future asbestos liabilities (the "Proposed PI Resolution") and made public a term sheet (the "Term Sheet") setting forth terms of such parties' proposed treatment of classes of claims and equity holders to be embodied in a plan of reorganization to be filed with the Court.  As a result of the Proposed PI Resolution of the

Debtors' asbestos personal injury liabilities (the "Proposed Asbestos Resolution"), the PI

Estimation trial was suspended, subject to being restarted if the Proposed PI Resolution fell apart

or a plan embodying the Term Sheet was not confirmed.  The Debtors and the Plan Proponents

filed a plan embodying the Term Sheet and a related disclosure statement on September 19,

2008.

      20.     In connection with the Debtors' resolution of outstanding PD Claims and the Plan

Proponents resolution of objections to the Plan, during the Compensation Period, the Debtors

filed motions seeking approval for settlements with a number of Grace's insurers regarding the

parties' respective rights and obligations under insurance policies and approval for numerous

settlements with PD Claims.  As reflected in this and in other categories in the Application,

Stroock reviewed these settlement motions, including the underlying agreement, sought and

reviewed additional information obtained from counsel for the Debtors, as applicable, and

prepared memoranda for the Committee discussing the settlements.  Stroock has expended 4.4

hours on this category for a fee of $2970.0.

### Asset Dispositions, Sales, Uses and Leases (Section 363) – Category 0009

      21.     During the Compensation Period, the Debtors filed pleadings seeking to sell,

among other assets, (i) certain assets located in Georgia formerly used in connection with the

Debtors' Darex manufacturing facility (the "Georgia Asset Sale"), (ii) the Davison division's

Membranes Business in Colorado (the "Membranes Business Transaction") and (iii) the

Construction Products' division's firestopping and abatement business based in Pennsylvania.

Stroock reviewed the pleadings, the asset purchase and other relevant sale documents, with

Capstone prepared requests for additional information from the Debtors' representatives, as

applicable, reviewed such additional materials when received and discussed each sale with

Debtors' counsel, as necessary.  Stroock has expended 44.4 hours on this category for a fee of $28,115.00

### Business Operations -- Category 0013

22.    During this Compensation Period, Stroock attended to Capstone's draft report to the Committee on the Debtors' second quarter 2009 operations.  Stroock has expended 1.1hours on this category for a fee of $742.50.

### Case Administration -- Category 0014

23.    As reported in prior monthly compensation applications, these chapter 11 cases were reassigned to District Court Judge Alfred Wolin in November 2001 and referred to Bankruptcy Court Judge Judith Fitzgerald, and then reassigned to District Court Judge Ronald L. Buckwalter following Judge Wolin's recusal from these cases.

24.    During this Compensation Period, Stroock continued to closely monitor the items on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each of the increasing number of pending adversary proceedings and appeals, to ensure that the Committee was fully informed about all pending motions, adversary proceedings and appeals and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable.  Stroock continued to engage Debtors' counsel and Capstone on an on-going basis with respect to pending matters and information requests.  Stroock also attended to the numerous briefs, pleadings, deposition transcripts and other materials circulated in connection with and in preparation for the Phase II confirmation hearing to be held in September 2009.  Stroock has expended 220.3 hours on this category for a fee of $47,529.50.

**Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015**

25.    As reported in prior compensation applications, the Debtors filed an objection to the proofs of claim filed by the agent bank on behalf of holders of bank debt under the Debtors' two $250 million pre-petition Credit Agreements, focusing on the bank debt holders' unsecured claims for post-petition interest at the default rate (the "Debtors' Objection").  The Committee, which includes in its constituency the holders of bank debt, filed a response in opposition to the Debtors' Objection and participated in discovery, in other related pleadings filed with the Court and at hearings with certain bank debt holders (the "Bank Lender Group") in opposing the Debtors' Objection.

26.    During the prior compensation period, the Court issued a memorandum decision and order (the "PPI Decision") on the Debtors' Objection.  After Stroock discussed the PPI Decision with the Committee and with counsel for the Bank Lender Group, the Committee took an appeal from the PPI Decision and attended to the preparation of a statement of issues and designation of items for the record.  During this Compensation Period, Stroock continued to follow the status of these appeals.

27.    In addition, during this Compensation Period, Stroock continued to communicate with the Debtors' counsel over the terms of a potential settlement with the New Jersey Department of Environmental Protection (the "NJDEP") under consideration and after discussing the proposal with the Committee informed the Debtors' counsel of the Committee's position on the proposal.  Stroock also rendered services in this category in connection with a number of motions filed by the Debtors seeking approval for settlements including (i) the stipulation resolving insurance coverage issues with General Insurance, (ii) an amended and restated settlement agreement with Lloyds Underwriters and (iii) the insurance policy related settlements

10

with Allstate Insurance Company and with Travelers Casualty.  General Insurance also filed a

motion for leave to file a late proof of claim.  Stroock reviewed each of these pleadings and the

underlying information and documentation, communicated with counsel regarding the relief

sought and requested and obtained additional information where applicable, in order to be able to

fully apprise the the Committee about these matters.  Stroock has expended 28.2 hours on this

category for a fee of $19,207.00.

### Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017

28.     During this Compensation Period, Stroock communicated with the members of

the full Committee through memoranda, telephone and conference calls.  In order to keep the

Committee fully informed of all of the pending matters in these cases, and thus enable the

Committee to take informed positions on those issues, Stroock reviewed and summarized the

motions, other pleadings and notices filed by the Debtors and other parties in interest in these

cases and the objections and responses filed, raised issues the Committee should be aware of,

made recommendations to the Committee concerning appropriate actions to be taken with regard

to the pleadings and communicated with members of the Committee regarding the positions to be

taken.  In addition, Stroock engaged counsel and other representatives for the Debtors, and other

parties and movants, as applicable, with the Committee's questions, concerns and comments,

negotiated whenever and to the extent possible consensual resolutions of outstanding issues and

acceptable forms of proposed orders, stipulations and settlement agreements.

29.     A focus of the discussions with the Committee during this period was the

confirmation hearing before the Court.  In addition, the memoranda Stroock prepared for the

Committee during this Compensation Period addressed, among other matters, (a) the numerous

insurance coverage-related settlements the Debtors sought approval for including (i) the proposal

to settle with the NJDEP the appeals it has pending before the Third Circuit, (ii) the amended and restated Lloyds Underwriters' settlement agreement, and (iii) the separate pleadings seeking approval for settlements with Arrowood Indemnity, Allstate Insurance, Travelers Casualty and the Scotts Company and (b) the proposed settlements of environmental claims with ICI Americas and with the City of Cambridge.

30.     Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions and express the Committee's views regarding the issues which arise in these cases, to participate in those proceedings and matters and in the confirmation of a plan providing appropriate treatment for the creditors represented by the Committee.  Stroock has expended 85.4 hours on this category for a fee of $58,378.00.

### Fee Application, Applicant -- Category 0018

31.     During this Compensation Period, Stroock prepared its fee statements for the months of May 2009, June 2009, July 2009 and August 2009 and related notices, affidavits of service and certifications of no objection where applicable.  Stroock also prepared its Thirty-Third Quarterly Fee Application covering the period from April 1, 2009 through June 30, 2009 (the "prior compensation application"), including a narrative section summarizing the services rendered during that period by Stroock and numerous fee and expense schedules, as required by the Administrative Fee Order entered by the Court.  Stroock has expended 64.0 hours on this category for a fee of $25,689.50.

### Creditor Inquiries -- Category 0019

32.    During this Compensation Period, Stroock responded to inquiries from unsecured creditors with respect to the status of these cases, the confirmation process, issues and hearings and possible settlement approaches.  Stroock has expended 4.6 hours on this category for a fee of $4,245.00.

### Fee Application, Others -- Category 0020

33.    During this Compensation Period, Stroock prepared notices, affidavits of service and certifications with respect to Capstone's monthly fee statements for the months of May 2009 and June 2009 and with respect to Capstone's 22nd quarterly interim fee application.  Stroock also attended to fee applications of other professionals retained in these cases.  Stroock has expended 8.3 hours on this category for a fee of $3,028.50.

### Employee Benefits, Pension – Category 0021

34.    During this Compensation Period, Debtors filed a motion seeking authority to implement a new defined contribution plan for their new employees commencing in January 2010.  Stroock reviewed the motion and related materials.  Stroock has expended 2.2 hours on this category for a fee of $1,485.00.

### Environmental Matters/Regulations/Litigation -- Category 0022

35.    During the Compensation Period, the Debtors sought approval for a proposed settlement with ICI Americas resolving its claims for past and future environmental remediation costs and for a proposed settlement with the City of Cambridge and other entities of environmental claims for cost recovery.  Stroock reviewed the pleadings and proposed stipulations, requested and obtained additional information from the Debtors regarding the terms

of and support for these settlements, and discussed these matters, as appropriate, with Debtors'

counsel.  Stroock has expended 8.9 hours on this category for a fee of $5,965.00.

## Travel – Non Working -- Category 0035

36.     Stroock's fees in this category during this Compensation Period relate to Stroock

attorneys traveling (i) to and from Wilmington, DE for (a ) the pre-trial confirmation hearing

before the Court on July 27, 2009, (b) an omnibus hearing before Judge Fitzgerald on August 24,

2009 and (c) a meeting with counsel for the Bank Lender Group to prepare for the then

upcoming Phase II confirmation hearing, (ii) to and from Pittsburgh, PA for the Phase II

confirmation hearing held during the weeks of September 6, 2009 and September 13, 2009 and

(iii) to and from Washington, DC to participate in the depositions of Mark Shelnitz and Robert

Tarola in August 2009, in connection with confirmation.  Stroock has expended 68.5 hours on

this category for a fee of $55,007.50, for which Stroock is seeking payment in the amount of

$27,503.75.

## Plan and Disclosure Statement -- Category 0036

37.     As reported in prior compensation applications, in September 2008, the Debtors

filed a plan of reorganization embodying the Proposed PI Resolution and the Term Sheet the

Debtors reached with the Plan Proponents.  Stroock reviewed the drafts of the plan and related

exhibits, the disclosure statement and the solicitation–related materials focusing on those terms

and provisions affecting the treatment of general unsecured creditors in Class 9, and

communicated with the Committee and Capstone regarding these documents.  The Court

approved an amended disclosure statement (the "Disclosure Statement") corresponding to the

first amended plan of reorganization dated February 27, 2009 (the "Plan") and solicitation

procedures and creditors and equity holders voted on the Plan and filed objections to

confirmation..  During the prior compensation period, Stroock prepared and filed objections to confirmation of the Plan on behalf of the Committee, and the Phase I hearing, which included Class 9 impairment issues took place.

38.    During this Compensation Period, Stroock rendered extensive services in this category during this Compensation Period in connection with Plan confirmation and the Committee's objections thereto.  Stroock prepared a number of briefs, motions, and discovery-related requests and responses on behalf of the Committee, certain of which were done jointly with counsel for the Bank Lender Group, including (i) the preparation of a joint pre-trial brief in opposition to confirmation of the Plan, (ii) a joint information request concerning 1129 solvency issues, (iii) a pre-trial submission with respect to Phase II issues, witnesses and exhibits, (iv) a request that the Court take judicial notice of certain documents and evidence, and (v) an opposition to the ACC's and PI FCR's request for an order limiting use of the Court's solvency findings or conclusions.  Stroock also attended to the briefs, pre-trial submissions and other pleadings filed by the Plan Proponents in support of confirmation and in opposition to objections to the Plan, and attended to certain of the objections, briefs pre-trial submissions and responses filed by other parties in these cases.  Stroock also prepared for and participated in numerous depositions, including defending the depositions of Lewis Kruger and Robert Frezza, the Committee's solvency expert, and taking the depositions of a number of the Plan Proponents' identified witnessses including Mark Shelnitz, Robert Tarola, Hudson LaForce, Mark Peterson Thomas Florence and Pam Zilly and prepared to defend and examine these witnesses at trial. Stroock also participated in numerous conference calls with all parties in interest addressing pre-trial evidentiary and other confirmation issues.  As reflected in this category and elsewhere in this Application, Stroock communicated with the Committee and Capstone on these matters and

with counsel for the Bank Lender Group as appropriate.  Stroock expended 798.8 hours on this category for a fee of $539,969.50.

### Hearings -- Category 0037

39.     During this Compensation Period, Judge Fitzgerald held hearings on thirteen days, eight of which were for the Phase II confirmation hearing in Pittsburgh, PA.  Omnibus hearings took place on two days in Wilmington, DE, and the other hearings were held telephonically.  Substantially all of the matters considered or discussed during these hearings also related to Plan confirmation.  Stroock reviewed each of the agenda notices and all relevant pleadings, orders, and Plan-related documents and submissions in advance of these hearings, prepared for and attended the hearings, examining and defending witnesses and addressing the Court, as appropriate.  As reflected elsewhere in the Application, Stroock discussed the hearings and the comments and rulings made by the Court with the Committee.  Stroock expended 232.3 hours on this category for a fee of $178,677.50.

### Relief From Stay Proceedings – Category 0041

40.     During this Compensation Period, Stroock reviewed the separate stay relief motions fled by Gloria Munoz and by Fireman's Fund.  Stroock expended 1.1 hours on this category for a fee of $742.50.

### FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

41.     The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts.  Stroock

16

respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

The Time and Labor Required.  The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch.  Occasionally, Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends.  The services rendered by Stroock were performed efficiently, effectively and economically.

The Novelty and Difficulty of Questions.  Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered.  In this case, as in many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

The Skill Requisite to Perform the Legal Services Properly.  Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the

resolution of issues, are and will continue to contribute to the

maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of
the Case.  Due to the size of Stroock's insolvency department, Stroock's

representation of the Committee has not precluded its acceptance of new

clients.  However, the volume of the matters needing attention on a

continuing basis has required several of the attorneys to commit

significant portions of their time to these cases.

The Customary Fee.  The fee sought herein is based upon Stroock's

normal hourly rates for services of this kind.  Stroock respectfully submits

that the fee sought herein is not unusual given the magnitude and

complexity of these cases and the time expended in attending to the

representation of the Committee, and is commensurate with fees Stroock

has been awarded in other cases, as well as with fees charged by other

attorneys of comparable experience.

Whether the Fee is Fixed or Contingent.  Pursuant to §§ 330 and 331 of

the Bankruptcy Code, all fees sought by professionals employed under

§ 1103 of the Code are contingent pending final approval by this Court,

and are subject to adjustment dependent upon the services rendered and

the results obtained.

Time Limitations Imposed by Client or Other Circumstances.  As already

indicated, Stroock has attended to the various issues arising in these cases.

18

Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

The Amount Involved and Results Obtained.  Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

The Experience, Reputation and Ability of the Attorneys.  Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Flushing Hospital and Medical Center, Planet Hollywood International, Anchor Glass Container Corporation, Beloit Corporation in the Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings. Stroock's experience enables it to perform the services described herein

19

competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Stroock has already frequently called upon the expertise of its partners and associates in the litigation, ERISA, tax, environmental and intellectual property law areas to perform the wide ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case.  These cases are not undesirable, but as already indicated, have required a significant commitment of time from several of the attorneys assigned hereto.

Nature and Length of Professional Relationship.  As described above, Stroock has been actively rendering services on behalf of the Committee as necessary and appropriate from April 12, 2001 through to the present.

## ALLOWANCE OF COMPENSATION

42.    The professional services rendered by Stroock required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

43.    With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services

20

rendered by [such] . . . professional person.  11 U.S.C. § 330.  Section 330 further states that the

court should take into consideration, inter alia, the nature, extent, and value of services

performed, as well as the cost of comparable services other than in a case under this title.  Id.

The clear Congressional intent and policy expressed in this statute is to provide for adequate

compensation in order to continue to attract qualified and competent bankruptcy practitioners to

bankruptcy cases.

44.    The total time spent by Stroock attorneys and paraprofessionals during the

Compensation Period for which Stroock seeks payment was 1,538.3 hours.  Such services have a

fair market value of $944,248.25.  The work involved, and thus the time expended, was carefully

assigned in light of the experience, expertise and familiarity with the issues in these cases

required for a particular task.

45.    As shown by this Application and supporting documents, Applicant spent its time

economically and without unnecessary duplication of time.  Attached hereto as Exhibit "C" are

summaries of the hours expended by the attorneys and paraprofessionals during the

Compensation Period, their normal hourly rates, and the value of their services.

46.    In addition, Stroock incurred actual out-of-pocket expenses in connection with the

rendition of the professional services to the Committee in the sum of $44, 707.82 for which

Stroock respectfully requests reimbursement in full.  The disbursements and expenses have been

incurred in accordance with Stroock's normal practice of charging clients for expenses clearly

related to and required by particular matters.  Stroock has endeavored to minimize to the fullest

extent possible those expenses incurred to enable Stroock to devote time beyond normal office

hours to matters that imposed extraordinary time demands.  Attached hereto as Exhibit "D" is a summary chart reflecting each category of disbursement for which Stroock seeks reimbursement.

47.    Stroock's billing rates do not include charges for photocopying, telephone and telecopy toll charges, computerized research, travel expenses, "working meals", secretarial overtime, postage and certain other office services, because the needs of each client for such services differ.  Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it.  Stroock has endeavored to minimize these expenses to the fullest extent possible.

48.    Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions.  Stroock does not charge for incoming facsimiles.

49.    Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this Application seeks payment in the aggregate amount of $2,812.50 for the fees of Navigant for the asbestos issues-related services rendered on behalf of the Committee during this Compensation Period.

50.    No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

51.    Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this

application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

52.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order: (a) the allowance of compensation for professional services rendered to the Committee during the period from July 1, 2009 through and including September 30, 2009 in the amount of $944,248.25, for which Stroock seeks payment; (b) the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from July 1, 2009 through and including September 30, 2009 in the amount of $44,707.82; (c) the payment of the fees and expenses of the Asbestos Issues Expert employed by the Committee during the period from July 1, 2009 through and including September 30, 2009 in the amount of

**[Remainder of Page Left Intentionally Blank]**

$2,812.50; and an order authorizing and directing the Debtors to pay to Stroock each of the

amounts set forth in (a), (b) and (c) of this WHEREFORE clause (to the extent not already paid

pursuant to the Administrative Fee Order); and granting such other and further relief as this

Court may deem just and proper.

Dated: New York, New York
      December 4, 2009

                       STROOCK & STROOCK & LAVAN LLP

                       Lewis Kruger
                       Kenneth Pasquale
                       Members of the Firm
                       180 Maiden Lane
                       New York, New York 10038-4982
                       (212) 806-5400
                       Co-Counsel for the Official Committee of
                       Unsecured Creditors of W. R. Grace & Co., et al.