# Exhibit A

# Settlement Agreement Between W.R. Grace & Co. and AG Insurance

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made by and between W.R. Grace & Co. ("Grace"), on behalf of itself and the Grace Parties, on the one hand, and AG de 1830 Compagnie Belge d'Assurances Générales Incendie Accidents et Risques Divers S.A., now known as AG Insurance (collectively, "AG Insurance"), on the other hand.  Grace and AG Insurance shall be referred to collectively herein as the "Parties."

## RECITALS

WHEREAS, AG Insurance issued certain policies of insurance that provide, or are alleged to provide, liability insurance coverage to certain Grace Parties; and

WHEREAS, claims have been asserted against the Grace Parties alleging injury due to exposure to asbestos and asbestos-containing materials ("Asbestos-Related Claims") and the Grace Parties have incurred certain liabilities, expenses and losses arising out of such Asbestos-Related Claims; and

WHEREAS, certain Grace Parties have asserted rights to insurance coverage with respect to Asbestos-Related Claims pursuant to policies of insurance issued by AG Insurance to certain Grace Parties, and disputes have arisen between the Grace Parties and AG Insurance regarding the Parties' respective rights and obligations under those policies; and

WHEREAS, on or about April 2, 2001, W. R. Grace & Co., W. R. Grace & Co-Conn., and certain other debtors filed reorganization cases pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, jointly administered as Case No. 01-01139 (JKF), et seq. (the "Bankruptcy Case"), and Grace and such other debtors continue to operate their businesses as debtors and debtors-in-possession; and

WHEREAS, Grace anticipates that a plan of reorganization will be confirmed by the Bankruptcy Court in the Bankruptcy Case, and that such plan will provide for the establishment of

one or more trusts pursuant to Section 524(g) of the Bankruptcy Code to process and pay Asbestos-Related Claims involving Grace; and

WHEREAS, in consideration of certain monetary payments and other consideration as more fully set forth herein, the Parties intend to adopt, by way of compromise, and without (i) prejudice to or waiver of their respective positions in other matters, (ii) trial or adjudication of any issues of fact or law, or (iii) AG Insurance's admission of liability or responsibility under insurance policies issued to the Grace Parties, a full and final settlement that releases and terminates all rights, obligations and liabilities (if any) that the Parties may owe one another under certain insurance policies issued by AG Insurance to certain Grace Parties as more fully set forth in this Agreement.

NOW, THEREFORE, for good and valuable consideration, the Parties agree as follows:

## AGREEMENT

**I.    DEFINITIONS**

The following definitions apply to the capitalized terms wherever those terms appear throughout this Agreement or in any attachments hereto.  Capitalized terms in the prefatory paragraph, recitals, this Definitions Section and in the sections below have the meanings ascribed to them therein.  Capitalized terms not otherwise defined herein shall have the meanings set forth in the Joint Plan of Reorganization.  Each defined term stated in a singular form includes the plural form, each defined term stated in plural form includes the singular form, and each defined term stated in the masculine, feminine or neuter form includes each of the masculine, feminine and neuter forms. The word "including" means "including but not limited to."

A.    Affiliate:  An "Affiliate" of an Entity means another Entity that is directly or indirectly (through one or more intermediaries) controlled by the first Entity.

B.    Approval Order: The term "Approval Order" means an order of the Court, in form and substance satisfactory to the Parties, approving this Agreement and the compromise and settlement memorialized herein.

C.    Asbestos PI Claims: The term "Asbestos PI Claims" has the meaning set forth in the Joint Plan of Reorganization.

D.    Bankruptcy Court: The term "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

E.    Confirmation Order: The term "Confirmation Order" means an order entered by the Bankruptcy Court in the Bankruptcy Case confirming the Joint Plan of Reorganization, together with any order of the District Court issued pursuant to Section 524(g)(3)(A) of the Bankruptcy Code confirming or affirming such order.

F.    Court: The term "Court" means the Bankruptcy Court or the District Court, as applicable.

G.    District Court: The term "District Court" means the United States District Court for the District of Delaware.

H.    Effective Date: The term "Effective Date" has the meaning set forth in the Joint Plan of Reorganization.

I.    Entity: The term "Entity" means any individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, including the Trust as defined in Section I.S. herein, unincorporated organization, federal, state, local or foreign government or any political subdivision thereof, or other person or entity.

J.    Execution Date: The term "Execution Date" means the earliest date on which this Agreement has been signed by all of the Parties.

K.    Extra-Contractual Claim: The term "Extra-Contractual Claim" means any claim by a Grace Party or the Trust against AG Insurance, or any claim by AG Insurance against a Grace Party

or the Trust, seeking any type of relief, including compensatory, exemplary or punitive damages, on account of alleged bad faith, failure to act in good faith, violation of any duty of good faith and fair dealing, violation of any unfair claims practices act, unfair trade practices act or similar statute, regulation or code, or any other similar type of alleged misconduct or omission. "Extra-Contractual Claim" does not mean claims for insurance coverage and/or benefits under any insurance policy.

L.   Final Order: "Final Order" means an order or judgment of the Bankruptcy Court, the District Court or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which the new trial, reargument or rehearing has been denied or has resulted in no modification of such order.

M.   Grace PI Committees: The term "Grace PI Committees" means the Asbestos PI Committee and the Asbestos PI Future Claimants' Representative in the Bankruptcy Case.

N.   Grace Parties: The term "Grace Parties" means:

   1.   Grace;

   2.   W.R. Grace & Co-Conn., a Connecticut corporation;

   3.   All other debtors and debtors-in-possession in the Bankruptcy Case;

   4.   All Subsidiaries, divisions and Affiliates of the foregoing, including any Entity in which any of the debtors has an ownership interest of fifty percent (50%) or more;

5.  Any Entity on whose behalf Grace or W. R. Grace & Co-Conn. has the power to release claims under the Subject Policies; and

6.  The directors, officers, agents and employees of the foregoing Entities, solely in their respective capacities as such.

O.  <u>Joint Plan of Reorganization</u>:  The term "Joint Plan of Reorganization" means the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative and the Official Committee of Equity Security Holders Dated as of February 27, 2009, including all exhibits thereto, as such plan may be modified from time to time.

P.  <u>Subject Policies</u>:  The term "Subject Policies" means the insurance policies listed on Attachment A hereto.

Q.  <u>Subsidiary</u>:  A "Subsidiary" of an Entity means a corporation as to which the Entity owns shares of common stock and exercises control through the voting power of such stock.

R.  <u>Trigger Date</u>:  The term "Trigger Date" means the later of the Effective Date or the date when the Approval Order becomes a Final Order.

S.  <u>Trust</u>:  The term "Trust" means the "Asbestos PI Trust" as defined in the Joint Plan of Reorganization, or such other trust as may be established under Section 524(g) of the Bankruptcy Code to process and pay Asbestos PI Claims pursuant to a plan of reorganization filed by Grace and the Grace PI Committees.

## II.  PAYMENT OF SETTLEMENT AMOUNT

A.  Within thirty (30) days of the Trigger Date, AG Insurance shall pay to the Trust the sum of Six Hundred Fifty Thousand United States Dollars ($650,000.00) (the "Settlement Amount") in immediately available funds.

B.    Payment of the Settlement Amount to the Trust shall be made in accordance with written instructions provided to AG Insurance by the Trust.

## III.    RELEASES

A.    <u>Release of AG Insurance by Grace Parties and the Trust</u>.  Upon the Trust's receipt of payment of the Settlement Amount in accordance with Section II of this Agreement, Grace, on behalf of itself and, to the extent it has the power to bind them, the Grace Parties, and the Trust, remise, release and forever discharge AG Insurance along with (i) its Subsidiaries, divisions and Affiliates, and (ii) the directors, officers, agents and employees of AG Insurance and of the Entities listed in subparagraph (i) solely in their capacities as such, with respect to:

1.    All claims for insurance coverage and/or other obligations under, based on or arising out of the Subject Policies; and

2.    All Extra-Contractual Claims arising in connection with the claims released pursuant to Section III.A.1. above;

*provided, however,* that the releases provided for in this Section III.A. shall not relieve AG Insurance of any of its obligations under this Agreement.

B.    <u>Release of Grace Parties and the Trust by AG Insurance</u>.  Effective on the Trigger Date, AG Insurance remises, releases and forever discharges the Grace Parties and the Trust with respect to:

1.    All obligations under, based on or arising out of the Subject Policies, including obligations to pay any premiums, deductibles, self-insured retentions, retrospective premiums or other similar charges; and

2.    All Extra-Contractual Claims arising in connection with the claims released pursuant to Section III.B.1. above;

*provided, however,* that the releases provided for in this Section III.B. shall not relieve the Grace

Parties or the Trust of any of their obligations under this Agreement.

C.     Upon the Trust's receipt of payment of the Settlement Amount by AG Insurance in accordance with Section II of this Agreement, the Parties hereto intend to reserve no rights or benefits whatsoever under or in connection with the Subject Policies, and any and all rights, duties, responsibilities and obligations of the Parties created by or in connection with the Subject Policies are terminated.  The releases contained in this Section III are intended to operate as if the Subject Policies had never been issued by AG Insurance to any Grace Party.  The Parties agree that payment of the Settlement Amount to the Trust fully and properly exhausts all limits of liability, including without limitation all per-occurrence and aggregate limits, of the Subject Policies.

D.     THE PARTIES ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH, CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT, WITH RESPECT TO THE SUBJECT MATTER OF THIS RELEASE.  THE PARTIES EXPRESSLY ASSUME THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES OR THINGS MAY HAVE OCCURRED THAT THEY DO NOT KNOW OR DO NOT SUSPECT TO EXIST.

IV.   **RELEASE OF SUBROGATION AND CONTRIBUTION CLAIMS AND JUDGMENT REDUCTION CLAUSE**

  A. <u>Payments Made Under This Agreement</u>. AG Insurance shall not seek reimbursement of any payment made by AG Insurance to or for the benefit of any Grace Party or the Trust under this Agreement, whether by way of a claim for contribution, subrogation, indemnification or otherwise, from anyone other than AG Insurance's reinsurers or retrocessionaires in their capacity as such, except as provided in this Section IV.A. below. Notwithstanding the foregoing, if a third party pursues a contribution, subrogation, indemnification or similar claim against AG Insurance relating to the subject matter of this Agreement, then AG Insurance shall be free to assert such a claim against such third party, to the extent permitted by the Joint Plan of Reorganization. To the extent AG Insurance recovers any amount from such third party, the net proceeds of such recovery (after any payment made by AG Insurance to such third party on its claim and after AG Insurance is reimbursed from such proceeds for its reasonable fees, costs and expenses incurred in prosecuting or defending such claim) shall be paid by AG Insurance promptly to the Trust. The Grace Parties and the Trust shall use reasonable best efforts to obtain from all insurers with which they settle agreements similar to those contained in this Section IV.A.

  B. <u>Payments Received From Other Insurers</u>. Following the Trust's receipt of payment by AG Insurance of the Settlement Amount as provided in Section II of this Agreement, in the event that:

    1. Grace or the Trust, as applicable, and/or any other Entity becomes entitled to receive a payment from one or more of the insurers other than AG Insurance for any claims that have been remised, released and forever discharged as against any of AG Insurance pursuant to this Agreement; and

    2. As a result of such other insurer's obligation to pay described in Section IV.B.1. above, such insurer either:

a.    enters into a settlement with AG Insurance, which settlement has been consented to by Grace or the Trust, as applicable, and any other Entity (as applicable), requiring AG Insurance to reimburse some or all of the payment made or to be made by such insurer; or

b.    obtains a final, non-appealable judicial or quasi-judicial determination or award entitling such insurer to obtain a sum certain from AG Insurance for contribution, subrogation or indemnification or other similar claim, against AG Insurance for its alleged share or equitable share, or to enforce subrogation rights, if any, relating to such payment referenced in Section IV.B.1. above;

the Entity entitled to receive such payment shall voluntarily reduce the amount of payment to be received by it (referred to in Section IV.B.1. above) by the amount necessary to reduce or eliminate such settlement, determination or award against AG Insurance (referred to in Section IV.B.2. above).

To ensure that such a reduction is accomplished, AG Insurance shall be entitled to assert this Section IV as a defense to any action against it for any such portion of the determination or award against AG Insurance (referred to in Section IV.B.2. above) and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect AG Insurance from any liability for the determination or award.  Grace or the Trust, as applicable, agrees that in any proceeding against insurers other than AG Insurance in which Grace or the Trust, as applicable, and/or any other Entity makes a claim for insurance rights or benefits for any claim that may give rise to the events referenced in Section IV.B.1. above, it will provide notice to AG Insurance of such claim within thirty (30) days of the time Grace or the Trust, as applicable, first becomes aware that such claim is reasonably likely to result in a claim against AG Insurance and shall consent to AG Insurance's intervention in any such proceeding to the extent that AG Insurance

seeks to intervene to effectuate the intent of this Section IV.

## V.    BANKRUPTCY OBLIGATIONS

A.    <u>Grace PI Committees' Approval</u>.  Promptly following the Execution Date, Grace shall use its reasonable best efforts to obtain the Grace PI Committees' written approval of this Agreement and the releases contained herein.

B.    <u>Approval Motion</u>.  Promptly following the Execution Date, Grace shall prepare and file a motion seeking entry of the Approval Order with the Court, which motion shall be in form and substance satisfactory to the Parties.  Grace shall use its reasonable best efforts promptly to obtain entry of the Approval Order, and promptly to obtain entry of the Approval Order as a Final Order. AG Insurance, at its own expense, shall cooperate with Grace in obtaining the Approval Order.

C.    <u>Approval Order</u>.  Grace shall use its reasonable best efforts to cause the Court to enter an Approval Order providing, among other things:

1.    That the terms of this Agreement are approved in their entirety, and that Grace is authorized to take all actions necessary to implement the terms of the Agreement;

2.    That, upon the Approval Order becoming a Final Order, this Agreement shall be designated an Asbestos Insurance Settlement Agreement, and AG Insurance shall be designated a Settled Asbestos Insurance Company, with respect to the Subject Policies, on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization;

3.    That, upon the Trust's receipt of payment by AG Insurance of the Settlement Amount in accordance with Section II of this Agreement, Grace shall be deemed to have sold, conveyed, assigned, transferred and delivered to AG Insurance, and AG Insurance shall be deemed to have purchased from Grace,

all rights, title and interests of Grace in and under the Subject Policies, free and clear of liens, encumbrances and/or interests of any kind or nature whatsoever, pursuant to Section 363(f) of the Bankruptcy Code, and that AG Insurance shall be entitled to the protections of Section 363(m) of the Bankruptcy Code; and

4.    That the Trust, upon the Effective Date, shall be bound by this Agreement as a Party to this Agreement.

D.    <u>Designation of AG Insurance as a Settled Asbestos Insurance Company</u>.  Upon the Approval Order becoming a Final Order, Grace shall designate this Agreement as an Asbestos Insurance Settlement Agreement, and AG Insurance as a Settled Asbestos Insurance Company, with respect to the Subject Policies, on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization.

E.    <u>Sale Pursuant to Section 363(f)</u>.  Upon the Trust's receipt of payment by AG Insurance of the Settlement Amount as provided in Section II of this Agreement, and without need for further action, Grace shall be deemed to have sold, conveyed, assigned, transferred and delivered to AG Insurance, and AG Insurance shall be deemed to have purchased from Grace, all rights, title and interests of Grace in and under the Subject Policies, free and clear of all liens, encumbrances and/or interests of any kind or nature whatsoever, to the extent permitted under Section 363(f) of the Bankruptcy Code.  The Parties agree that the Settlement Amount is at least equal to the fair value of the Subject Policies.

F.    <u>Trust as Party</u>.  Upon the Effective Date, the Trust automatically and without need for further action shall become a Party to this Agreement.

G.    <u>No Bankruptcy-Related Activities</u>.  Effective upon the Execution Date, AG Insurance (1) shall take no action of any nature (including filing any objection to the Joint Plan of Reorganization and initiating or taking discovery) that may hinder, delay or oppose actions of the Debtors or the Grace PI Committees in the Bankruptcy Case; and (2) shall not oppose the entry of a

Confirmation Order; *provided, however,* that in the event that the Bankruptcy Court does not issue an Approval Order, or the Approval Order does not become a Final Order, AG Insurance is not precluded by this Agreement from exercising any of its rights in connection with the Bankruptcy Case. Upon the Approval Order becoming a Final Order, AG Insurance expressly consents to the assignment of Asbestos Insurance Rights as provided in the Asbestos Insurance Transfer Agreement, Exhibit 6 to the Joint Plan of Reorganization.

## VI.    TERMINATION

A.    After the Execution Date, this Agreement shall terminate upon the occurrence of any of the following events:

1.    The entry of an order of the Bankruptcy Court denying approval of this Agreement or the entry of an order by the District Court reversing the Approval Order; or

2.    The failure of the Effective Date to occur; or

3.    The entry of an order by the Bankruptcy Court dismissing the Bankruptcy Case or converting it into a Chapter 7 case.

B.    After the Execution Date, AG Insurance shall have the option to terminate this Agreement by providing written notice of termination to Grace and the Grace PI Committees within thirty (30) days of the occurrence of either of the following events:

1.    The failure of Grace to designate this Agreement as an Asbestos Insurance Settlement Agreement, and AG Insurance as a Settled Asbestos Insurance Company, with respect to the Subject Policies, on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization in accordance with Section V.D.; or

2.    The confirmation of a Joint Plan of Reorganization that materially and adversely affects the interests of AG Insurance under this Agreement.

C.    In the event that this Agreement is terminated in accordance with this Section VI:

1.    This Agreement shall be of no further force or effect, and the Parties shall have no further obligations under this Agreement, except the obligations set forth in Section XII, which shall survive termination;

2.    The releases set forth in Section III of this Agreement shall be of no force or effect;

3.    The Subject Policies shall have the same force and effect as if this Agreement had never existed, and the Parties shall have all of the rights, defenses and obligations under or with respect to the Subject Policies, if any, that they would have had if this Agreement had never existed.

## VII.    DEFENSE OF THE ASBESTOS PI CHANNELING INJUNCTION

A.    Following the Trust's receipt of payment of the Settlement Amount by AG Insurance in accordance with Section II of this Agreement, if any Entity asserts against AG Insurance an Asbestos PI Claim subject to the Asbestos PI Channeling Injunction based on or arising under the Subject Policies ("AG Insurance Channeling Injunction Claim"), the Trust shall expend reasonable best efforts, at its own expense, to establish that such AG Insurance Channeling Injunction Claim is enjoined as to AG Insurance and channeled to the Trust pursuant to the Asbestos PI Channeling Injunction and Bankruptcy Code Section 524(g).  In no event, however, shall the Trust be required to expend an amount greater than the Settlement Amount in carrying out its obligation under this Section VII.A.  When the Trust has expended an amount equal to the Settlement Amount in defending the application of the Asbestos PI Channeling Injunction to AG Insurance Channeling Injunction Claims, the Trust shall have no further obligation under this Section VII.A.  For the avoidance of doubt, this Section VII.A. shall not obligate the Trust to retain counsel to represent AG Insurance or to pay the costs and expenses, including attorneys' fees, associated with such legal,

consulting or expert representation as AG Insurance may choose to engage in connection with any claim against AG Insurance.

B.    AG Insurance shall promptly notify the Trust in writing of any demand, notice, summons or other process received by AG Insurance that AG Insurance reasonably believes is a AG Insurance Channeling Injunction Claim. If the Trust determines that a claim presented by AG Insurance is not a AG Insurance Channeling Injunction Claim, the Trust shall promptly notify AG Insurance and shall not be required to undertake to defend the application of the Asbestos PI Channeling Injunction as to such claim. In the event of a dispute as to whether a claim triggers the Trust's obligations under Section VII.A., the Trust and AG Insurance shall meet and confer to attempt to resolve any such dispute. If they are unable to resolve such dispute through meeting and conferring, they may litigate the issue before the Bankruptcy Court, or, if the Bankruptcy Court declines to exercise jurisdiction, before any court of competent jurisdiction. If the Trust undertakes to defend the application of the Asbestos PI Channeling Injunction to a claim presented by AG Insurance, but a court of competent jurisdiction thereafter determines that the claim is not an Asbestos PI Claim subject to the Asbestos PI Channeling Injunction and such order becomes a Final Order, the Trust shall have no further obligation to defend the application of the Asbestos PI Channeling Injunction to such claim.

## VIII.  RIGHT OF REVIEW

A.    Following the Trust's receipt of payment of the Settlement Amount as provided in Section II, AG Insurance shall have the right, at its own expense, upon reasonable notice, at a time and place convenient to the Trust, to review records relating to Asbestos PI Claims paid by the Trust solely for the purpose of obtaining reinsurance for any portion of the Settlement Amount. The Trust shall have no obligation to create any new documents or to collect any information in connection with any such review beyond the documents or information ordinarily created or

maintained by the Trust, and AG Insurance shall not be permitted to challenge the review, determination or payment of any Asbestos PI Claims by the Trust or the payment of any expenses or costs of the Trust. Notwithstanding any of the foregoing, the Trust shall not be obligated to provide the Social Security Identification Number of any Asbestos PI Claimant beyond the last four digits.

       B.     AG Insurance shall not provide any information, documents, notices or other results of any review undertaken pursuant to Section VIII.A (the "Material") to any other Entity and shall keep any and all such Material confidential. Notwithstanding the foregoing, AG Insurance may provide such Material to its reinsurers or reinsurance arbitrators solely for the purposes of obtaining reinsurance for any portion of the Settlement Amount, *provided, however,* that (1) AG Insurance may furnish summaries or reports based on any review undertaken pursuant to Section VIII.A if it first obtains from such reinsurers or reinsurance arbitrators reasonable assurances that they will maintain the confidentiality of the Material and not disclose such Material to any other Entity other than such reinsurers' retrocessionaires who have likewise provided such assurances; and (2) AG Insurance may furnish copies of records reviewed pursuant to Section VIII.A only if it first obtains from such reinsurers or reinsurance arbitrators a written pledge (which requirement may be satisfied by transmission of an electronic mail message) to maintain the confidentiality of the Material and not disclose such Material to any other Entity other than such reinsurers' retrocessionaires who have likewise provided such written pledge. In the event that disclosure of any Material in AG Insurance's possession is sought pursuant to subpoena or other legal process, AG Insurance shall immediately notify the Trust of the request for disclosure and cooperate with the Trust in seeking a protective order regarding the Material. Upon resolution of all reinsurance issues, AG Insurance shall, at the Trust's option, return or destroy all Material.

## IX.    ENTIRE AGREEMENT

This Agreement, along with its Attachment A, constitutes a single integrated written contract that expresses the entire agreement and understanding between the Parties. This Agreement supersedes all prior communications and understandings between the Parties and their representatives regarding the matters addressed by this Agreement. Except as explicitly set forth in this Agreement, there are no representations, warranties, promises or inducements, whether oral, written, expressed or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms. Any statements, promises or inducements made by any Party or any agents of any Party that are not contained in this Agreement shall not be valid or binding.

## X.    NON-PREJUDICE AND CONSTRUCTION OF AGREEMENT

A.    This Agreement is intended to be and is a commercial accommodation between the Parties and shall not be construed as an admission of coverage under the Subject Policies or any other policies issued by AG Insurance. Nor shall this Agreement or any provision hereof be construed as a waiver, modification or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Policies.

B.    This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, nothing contained in this Agreement or in any document exchanged by the Parties in the negotiation or furtherance of this Agreement shall be construed as an admission or concession by AG Insurance, Grace or the Trust that any particular theory with respect to coverage is valid. This Agreement is without prejudice to the positions taken by AG Insurance with regard to other insureds and without prejudice to positions taken by Grace or the Trust with regard to other insurers. AG Insurance, Grace and the Trust specifically disavow any intention to create rights in third parties under or in relation to this Agreement, except as expressly provided herein.

C.    Neither the terms of this Agreement nor its negotiation, its execution or any act in performance of this Agreement shall be invoked by AG Insurance, Grace or the Trust, or their attorneys or agents, in any proceeding for the purpose of attempting to establish or prove the acceptance by AG Insurance, Grace or the Trust of any particular interpretation of any insurance policy with respect to any claim.

D.    The Parties agree, as an essential and integral part of this Agreement, that this Agreement and the matters contained in this Agreement are not intended to be, nor shall they be, admissible or relevant in any case or proceeding to prove the acceptance by any Party hereto of any particular theory of coverage, or as evidence of any obligation that any Party hereto has or may have to anyone other than to one another.

E.    This Agreement is the jointly drafted product of arms'-length negotiations between the Parties with the benefit of advice from counsel and the Parties agree that it shall be so construed. In particular, with respect to interpretation of this Agreement, the Parties waive any benefits from the principles of <u>contra proferentem</u> or other principles that would result in the interpretation of any ambiguities against insurers. No Party shall be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement shall be construed against any Party on the basis of that Party's identity as an insurance company or as the drafter of any part of this Agreement.

## XI.    HEADINGS

The Section headings contained in this Agreement are for convenient reference only, and shall not in any way affect the meaning or interpretation of this Agreement.

## XII.    CONFIDENTIALITY

A.    The Parties agree that all information relating to the negotiation of this Agreement (collectively referred to as "Information," except that such term does not include information that is

or becomes available other than as a result of an act or omission of any of the Parties) shall be confidential and is not to be disclosed except as follows:

1.    The fact that the Parties have entered into this Agreement may be disclosed to any Entity;

2.    The Information may be disclosed as necessary to obtain an Approval Order from the Court;

3.    The Information may be disclosed by order of court, or pursuant to a written agreement of the Parties;

4.    The Information may be disclosed by AG Insurance to its reinsurers, directly or through intermediaries;

5.    Grace or the Trust may disclose the Information to other insurers and their representatives;

6.    The Information may be disclosed to outside auditors or accountants of any Party or to the Internal Revenue Service;

7.    A Party may disclose the Information to its accountants, to its counsel, to underwriters in connection with offerings of securities to be issued by such Party and to counsel for such underwriters; and

8.    The Information may be disclosed in any action by any Party to enforce the terms of this Agreement;

*provided, however*, that a Party making disclosure of any of the Information pursuant to one of the exceptions set forth in clauses (3) through (7) above shall inform any Entity to which such disclosure is made of the confidential nature of the Information and of the understanding upon which it has been disclosed and shall use reasonable efforts to obtain the agreement of such Entity to hold the Information in confidence.

B.    A Party may describe and/or make reference to this Agreement to the extent that such disclosure is required to comply with any statute, rule or other requirement of any government or governmental agency or other authority.

C.    In the event a court, litigant or governmental body requests or requires disclosure of any Information protected by this paragraph, the Party from whom disclosure is sought shall immediately give written notice to the other Party in order to allow each Party to take such protective steps as may be appropriate.

D.    Information protected by this Section shall be deemed to fall within the protection afforded compromises and offers of compromise by Rule 408 of the Federal Rules of Evidence and similar provisions of state law or state rules of court.

## XIII.  NOTICES

A.    All notices, requests, demands and other communications required or permitted to be given under this Agreement shall be deemed to have been duly given if in writing and delivered personally, mailed first-class postage prepaid, or by registered or certified mail, or transmitted by facsimile, addressed as follows:

If to Grace:

W. R. Grace & Co.
7500 Grace Drive
Columbia, MD  21044
Attn: General Counsel
Telephone:  (410) 531-4000
Facsimile:  (410) 531-4545

With a copy to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022
Attn:  Theodore L. Freedman
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

If to AG Insurance:

Luc Detrez, Esq.
Yves Hendrickx, Esq.

<table>
<tr><td></td><td>AG Insurance<br>Bd E Jacqmain, 56<br>1000 Brussels,<br>Belgique<br>Telephone: 32(0)2 664 0705<br>Facsimile: 32(0)2 664 8099</td></tr>
<tr><td>With a copy to:</td><td>Mendes & Mount, LLP<br>750 Seventh Avenue<br>New York, NY 10019-6829<br>Attn: Thomas J. Quinn<br>Telephone: (212) 261-8345<br>Facsimile: (212) 261-8750</td></tr>
<tr><td>If to the Asbestos PI Committee:</td><td>Caplin & Drysdale, Chartered<br>One Thomas Circle, NW, Suite 1100<br>Washington, DC 20005<br>Attn: Peter Lockwood<br>Telephone: (202) 862-5000<br>Facsimile: (202) 862-3301</td></tr>
</table>

and

Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152
Attn: Elihu Inselbuch
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

<table>
<tr><td>With a copy to:</td><td>Anderson Kill & Olick, PC<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Attn: Robert M. Horkovich<br>Telephone: (212) 278-1322<br>Facsimile: (212) 278-1733</td></tr>
<tr><td>If to the Asbestos PI Future Claimants'<br>Representative:</td><td>David T. Austern<br>3110 Fairview Park Drive<br>Suite 200<br>Falls Church, VA 22042-0683<br>Telephone: (703) 205-0835<br>Facsimile: (703) 205-6249</td></tr>
<tr><td>With a copy to:</td><td>Orrick, Herrington & Sutcliffe LLP<br>1152 15th Street, N.W.<br>Washington, D.C. 20005-1706<br>Attn: Roger Frankel</td></tr>
</table>

Telephone: (202) 339-8400
Facsimile: (202) 339-8500

B.      Any Party may change the address to which such communications are to be directed to it by giving notice to the others, in the manner provided in this Section.

## XIV.   MODIFICATION

This Agreement may be amended, modified, superseded or canceled, and any of the terms hereof may be waived, only by a written instrument that specifically states that it amends, modifies, supersedes or cancels this Agreement, executed by or on behalf of all of the Parties or, in the case of a waiver, by or on behalf of the Party waiving compliance. The failure of a Party at any time or times to require performance of any provision of this Agreement shall in no manner affect the right at a later time to enforce the same. No waiver by a Party of any condition, or of any breach of any term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach, or a waiver of any other condition or of any breach of any other term, covenant or warranty.

## XV.   EXECUTION

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument. This Agreement shall become effective as to each Party from and after the Execution Date.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement by their authorized officers or representatives.

Date: _12/1/09_

W.R. GRACE & CO.

Signed: _Richard C. Finke_

Name: RICHARD C. FINKE

Title: ASST. GENERAL COUNSEL — LITIGATION

Date: _____

AG INSURANCE

Signed: _____

Name: _____

Title: _____

**IN WITNESS WHEREOF,** the Parties have executed this Agreement by their authorized officers or representatives.

Date: _____

W.R. GRACE & CO.

Signed: _____

Name: _____

Title: _____

Date: _DECEMBER 7, 2009_

AG INSURANCE

Signed: _~Thomas J Quinn~_

Name: _T. HOMAS J QUINN_

Title: _AS ATTORNEY FOR AG INSURANCE_

## ATTACHMENT A

| Insurance Company Name | Policy Number | Policy Period |
|---|---|---|
| AG Insurance | AVB102 | 06/30/1977-06/30/1978 |
| AG Insurance | AVB124 | 06/30/1978-06/30/1979 |