subject to the reservations listed in Section 8.2.2 herein. On the Effective Date, the Asbestos PI Trust shall assume the liabilities of the Debtors with respect to all Asbestos PI Claims and shall pay Asbestos PI Claims entitled to payment in accordance with the Asbestos PI Trust Agreement and the Asbestos PI TDP.

### 8.1.3    Discharge of Liabilities to Holders of Asbestos PD Claims

The transfer to, vesting in, and assumption by the Asbestos PD Trust of the Asbestos PD Trust Assets as contemplated by this Plan, among other things, shall discharge the Debtors, the Reorganized Debtors and their Representatives for and in respect of all Asbestos PD Claims, subject to the reservations listed in Section 8.3.2 herein. On the Effective Date, the Asbestos PD Trust shall assume the liabilities of the Debtors with respect to all Asbestos PD Claims and shall pay Asbestos PD Claims entitled to payment in accordance with the Asbestos PD Trust Agreement and any Final Orders of the Bankruptcy Court allowing such claims.

### 8.1.4    Discharge of Liabilities to Holders of CDN ZAI PD Claims

The transfer to, vesting in, and assumption by the CDN ZAI PD Claims Fund of the CDN ZAI PD Claims as contemplated by the CDN ZAI Minutes of Settlement and this Plan, among other things, shall discharge the Debtors, the Reorganized Debtors and their Representatives for and in respect of all CDN ZAI PD Claims, subject to the reservations listed in Section 8.3.2 herein. On the Effective Date, the CDN ZAI PD Claims Fund shall assume the liabilities of the Debtors with respect to all CDN ZAI PD Claims and shall pay CDN ZAI PD Claims entitled to payment in accordance with the terms of the CDN ZAI Minutes of Settlement.

### 8.1.5    Disallowed Claims and Disallowed Equity Interests

On and after the Effective Date, the Debtors, the Reorganized Debtors and their Representatives shall be fully and finally discharged of any liability or obligation on a Disallowed Claim or Disallowed Equity Interest, and any order creating a Disallowed Claim that is not a Final Order as of the Effective Date solely because of an Entity's right to move for reconsideration of such order pursuant to Bankruptcy Code § 502 or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.

### 8.1.6    Non-Dischargeable ERISA Liability

The Parent is a controlled group member within the meaning of 29 U.S.C. § 1301(a)(14) and may also be a contributing sponsor of one or more ongoing, defined benefit pension plans to which Title IV of the ERISA applies (the "**Pension Plans**"). The Debtors intend that the Reorganized Parent will continue to be the continuing sponsor of the Pension Plans. Each of the Pension Plans is a defined benefit pension plan insured by the Pension Benefit Guaranty Corporation (**"PBGC"**) under ERISA. The Pension Plans are subject to minimum funding requirements of ERISA and section 412 of the IRC. Should the Pension Plans be underfunded and should the Pension Plans terminate, the PBGC may assert claims for the underfunding, for any unpaid minimum funding contributions owed the Pension Plan, and for any unpaid premiums owed the PBGC.

Nothing contained in this Plan, the Confirmation Order, the Bankruptcy Code (including Bankruptcy Code § 1141), or any other document Filed in the Chapter 11 Cases shall be construed to discharge, release or relieve the Debtors, or any other party, in any capacity, from any liability or responsibility to the PBGC with respect to the Pension Plans under any law, governmental policy, or regulatory provision. The PBGC shall not be enjoined or precluded from enforcing such liability or responsibility, as a result of any of the provisions of this Plan (including those provisions providing for exculpation, satisfaction, release, and discharge of Claims), the Confirmation Order, the Bankruptcy Code (including Bankruptcy Code § 1141), or any other document Filed in the Chapter 11 Cases. Notwithstanding the foregoing, neither the PBGC nor any other Entity shall assert any liability or responsibility with respect to the Pension Plans under any law, governmental policy or regulatory provisions against, and such liability or responsibility shall not attach to, the Asbestos PI Trust or any of the Asbestos PI Trust Assets or the Asbestos PD Trust or any of the Asbestos PD Trust Assets.

## 8.2    THE ASBESTOS PI CHANNELING INJUNCTION

In order to supplement, where necessary, the injunctive effect of the discharge provided by Bankruptcy Code §§ 1141, 524(a), and 105 and as described in this Article 8, and pursuant to the exercise of the equitable jurisdiction and power of the Court under Bankruptcy Code § 524(g), the Confirmation Order shall provide for issuance of the Asbestos PI Channeling Injunction to take effect as of the Effective Date.

### 8.2.1    Asbestos PI Channeling Injunction

On and after the Effective Date, the sole recourse of the Holder of an Asbestos PI Claim or a Successor Claim arising out of or based on any Asbestos PI Claim on account thereof shall be to the Asbestos PI Trust pursuant to the provisions of the Asbestos PI Channeling Injunction and the Asbestos PI TDP and such Holder shall have no right whatsoever at any time to assert its Asbestos PI Claim or Successor Claim arising out of or based on any Asbestos PI Claim against the Debtors, Reorganized Debtors, any other Asbestos Protected Party, or any property or interest (including any Distributions made pursuant to this Plan) in property of the Debtors, the Reorganized Debtors, or any other Asbestos Protected Party. Without limiting the foregoing, from and after the Effective Date, the Asbestos PI Channeling Injunction shall apply to all present and future Holders of Asbestos PI Claims or Successor Claims arising out of or based on any Asbestos PI Claim, and all such Holders permanently and forever shall be stayed, restrained, and enjoined from taking any and all legal or other actions or making any Demand against any Asbestos Protected Party or any property or interest (including Distributions made pursuant to this Plan) in property of any Asbestos Protected Party for the purpose of, directly or indirectly, claiming, collecting, recovering, or receiving any payment, recovery, satisfaction, or any other relief whatsoever on, of, or with respect to any Asbestos PI Claims or Successor Claims arising out of or based on any Asbestos PI Claims other than from the Asbestos PI Trust in accordance with the Asbestos PI Channeling Injunction and pursuant to the Asbestos PI Trust Agreement and the Asbestos PI TDP, including:

(a)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial,

arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(b) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(d) setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party; and

(e) proceeding in any other manner with regard to any matter that is subject to resolution pursuant to the Asbestos PI Trust, except in conformity and compliance with the Asbestos PI Trust Agreement and the Asbestos PI TDP.

### 8.2.2 Reservations from Asbestos PI Channeling Injunction

Notwithstanding anything to the contrary in Section 8.2.1 above, the Asbestos PI Channeling Injunction issued pursuant to Section 8.2.1 shall not enjoin:

(a) the rights of Entities to the treatment accorded them under this Plan, including the rights of Entities with Asbestos PI Claims to assert such Asbestos PI Claims in accordance with the Asbestos PI TDP;

(b) the rights of Entities to assert any claim, debt, obligation or liability for payment of expenses of the Asbestos PI Trust solely against the Asbestos PI Trust or the Asbestos PI Trust Assets;

(c) the rights of the Asbestos PI Trust and, to the extent permitted by the Asbestos Insurance Transfer Agreement, the Insurance Contributors, to prosecute any cause of action or to assert any Claim, Demand, debt, obligation, or liability for payment against any Entity (but not the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties), including any Asbestos Insurance Entity, based on or arising from the Asbestos Insurance Rights; and

(d)     the rights of the Asbestos PI Trust and, to the extent permitted by the Asbestos Insurance Transfer Agreement, the Insurance Contributors, to receive any settlement, award, payment of cash or other property of any kind whatsoever from any Entity (but not the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties) including any Asbestos Insurance Entity in satisfaction of any Asbestos Insurance Rights.

(e)     BNSF from asserting any claim (as that term is defined in Bankruptcy Code § 101(5)) for insurance coverage as an insured or an additional insured against a Settled Asbestos Insurance Company under and only under an insurance policy (or part of a policy) that is not identified as being the subject of any Asbestos Insurance Settlement Agreement in Exhibit 5 of the Exhibit Book or is not subject to protection under the terms of the Debtors' Settlement Agreement with the Royal Parties, dated June 17, 2009 (the "Arrowood Rule 9019 Settlement Agreement"). To avoid any doubt, BNSF shall be enjoined from asserting any claim against any of the policies identified in Exhibits 2 and 3 of the Arrowood Rule 9019 Settlement Agreement.

Except as otherwise expressly provided in this Plan, the Sealed Air Settlement Agreement, or the Fresenius Settlement Agreement, nothing contained in this Plan shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors, the Reorganized Debtors, or the Asbestos PI Trust may have against any Entity in connection with or arising out of or based on any Asbestos PI Claim. Notwithstanding anything to the contrary in this Section 8.2.2, in any other provision of this Plan, or in any Plan Document (including the Asbestos PI Trust Agreement and the Asbestos PI TDP), and for the avoidance of any doubt, following the transfer to the Asbestos PI Trust of the Cryovac Payment (reduced by the total aggregate amount of transfers to the Asbestos PD Trust by or on behalf of Cryovac, Inc. as part of the Class 7A Initial Payment and the Class 7B Initial Payment), (i) no Entity shall have any right to enforce any provision of this Plan relating to the Cryovac Payment or the payment thereof against any of the Sealed Air Indemnified Parties or any property or interest (including any Distributions made pursuant to this Plan) in property of any of the Sealed Air Indemnified Parties and (ii) the sole recourse of a Holder of an Asbestos PI Claim against any of the Sealed Air Indemnified Parties or a Successor Claim arising out of or based on any Asbestos PI Claim on account thereof, shall be to the Asbestos PI Trust, and such Holder shall have no right whatsoever at any time to assert its Asbestos PI Claim or Successor Claim arising out of or based on any Asbestos PI Claim against any of the Sealed Air Indemnified Parties or any property or interest (including any Distributions made pursuant to this Plan) in property of any of the Sealed Air Indemnified Parties. Notwithstanding anything to the contrary in this Section 8.2.2, in any other provision of this Plan, or in any Plan Document (including the Asbestos PI Trust and the Asbestos PI TDP), and for the avoidance of any doubt, following the transfer to the Asbestos PI Trust of the Fresenius Payment (reduced by the total aggregate amount of transfers to the Asbestos PD Trust by or on behalf of Fresenius as part of the Class 7A Initial Payment and the Class 7B Initial Payment), (i) no Entity shall have any right to enforce any provision of this Plan relating to the Fresenius Payment or the payment thereof against any of the Fresenius Indemnified Parties or any property or interest (including any Distributions made pursuant to this

94

Plan) in property of any of the Fresenius Indemnified Parties and (ii) the sole recourse of a Holder of an Asbestos PI Claim against any of the Fresenius Indemnified Parties or a Successor Claim arising out of or based on any Asbestos PI Claim on account thereof, shall be to the Asbestos PI Trust, and such Holder shall have no right whatsoever at any time to assert its Asbestos PI Claim or Successor Claim arising out of or based on any Asbestos PI Claim against any of the Fresenius Indemnified Parties or any property or interest (including any Distributions made pursuant to this Plan) in property of any of the Fresenius Indemnified Parties.

## 8.3    THE ASBESTOS PD CHANNELING INJUNCTION

In order to supplement, where necessary, the injunctive effect of the discharge provided by Bankruptcy Code §§ 1141, 524(a), and 105 and as described in this Article 8, and pursuant to the exercise of the equitable jurisdiction and power of the Court under Bankruptcy Code § 524(g), the Confirmation Order shall provide for issuance of the Asbestos PD Channeling Injunction to take effect as of the Effective Date.

### 8.3.1    Asbestos PD Channeling Injunction

On and after the Effective Date, (1) the sole recourse of the Holder of an Asbestos PD Claim or a Successor Claim arising out of or based on any Asbestos PD Claim on account thereof shall be to the Asbestos PD Trust; and (2) the sole recourse of a Holder of a CDN ZAI PD Claim or a Successor Claim arising out of or based on any CDN ZAI PD Claim, shall be as set forth in the CDN ZAI Minutes of Settlement, pursuant to the provisions of the Asbestos PD Channeling Injunction and any Final Orders of the Bankruptcy Court allowing such claims, and such Holders shall have no right whatsoever at any time to assert their Asbestos PD Claim, Successor Claim arising out of or based on any Asbestos PD Claim, CDN ZAI PD Claim, or Successor Claim arising out of or based on any CDN ZAI PD Claim against the Debtors, Reorganized Debtors, any other Asbestos Protected Party, or any property or interest (including any Distributions made pursuant to this Plan) in property of the Debtors, the Reorganized Debtors, or any other Asbestos Protected Party. Without limiting the foregoing, from and after the Effective Date, the Asbestos PD Channeling Injunction shall apply to all present and future Holders of Asbestos PD Claims, Successor Claims arising out of or based on any Asbestos PD Claim, CDN ZAI PD Claims, and Successor Claims arising out of or based on any CDN ZAI PD Claims, and all such Holders permanently and forever shall be stayed, restrained, and enjoined from taking any and all legal or other actions or making any Demand for the purpose of, directly or indirectly, claiming, collecting, recovering, or receiving any payment, recovery, satisfaction, or any other relief whatsoever on, of, or with respect to any Asbestos PD Claims, Successor Claims arising out of or based on any Asbestos PD Claims, CDN ZAI PD Claims, or Successor Claims arising out of or based on any CDN ZAI PD Claim other than from the Asbestos PD Trust in accordance with the Asbestos PD Channeling Injunction and pursuant to the Asbestos PD Trust Agreement in the case of Asbestos PD Claims or in accordance with the Asbestos PD Channeling Injunction and pursuant to the CDN ZAI Minutes of Settlement in the case of CDN ZAI PD Claims, including:

(a)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or

95

affecting any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(b) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(d) setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party; and

(e) proceeding in any other manner with regard to any matter that is subject to resolution pursuant to the Asbestos PD Trust, except in conformity and compliance with the Asbestos PD Trust Agreement in the case of Asbestos PD Claims, or proceeding in any other manner with regard to any matter that is subject to resolution pursuant to the CDN ZAI Minutes of Settlement in the case of CDN ZAI PD Claims.

**8.3.2    Reservations from Asbestos PD Channeling Injunction**

Notwithstanding anything to the contrary in Section 8.3.1 above, the Asbestos PD Channeling Injunction issued pursuant to Section 8.3.1 shall not enjoin:

(a) the rights of Entities to the treatment accorded them under this Plan, including the rights of Entities with Asbestos PD Claims to assert such Asbestos PD Claims in accordance with the PD Settlement Agreements, the Class 7A Case Management Order or the ZAI TDP, and the rights of Entities with CDN ZAI PD Claims to assert such CDN ZAI PD Claims in accordance with the provisions set forth in the CDN ZAI Minutes of Settlement. For the avoidance of doubt, such rights shall include the rights of an Entity holding an Allowed Asbestos PD Claim under a PD Settlement Agreement to enforce the provisions of this Plan which contemplate that on the Effective Date, the Asbestos PD Initial Payment will be made to the Asbestos PD Trust in an amount sufficient to permit the Asbestos PD Trust to make all payments, in full, on account of and as required by PD Settlement Agreements as contemplated by this Plan; and

(b)     the rights of Entities to assert any claim, debt, obligation or liability for payment of expenses of the Asbestos PD Trust solely against the Asbestos PD Trust or the Asbestos PD Trust Assets.

Except as otherwise expressly provided in this Plan, the Sealed Air Settlement Agreement, or the Fresenius Settlement Agreement, nothing contained in this Plan shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors, the Reorganized Debtors, or the Asbestos PD Trust may have against any Entity in connection with or arising out of or based on any Asbestos PD Claim or CDN ZAI PD Claim. Notwithstanding anything to the contrary in this Section 8.3.2, in any other provision of this Plan, or in any Plan Document (including the Asbestos PD Trust Agreement, the CDN ZAI Minutes of Settlement, the ZAI TDP, and the Class 7A Case Management Order), and for the avoidance of any doubt, following the transfer to the Asbestos PD Trust of Cryovac, Inc.'s share of the Asbestos PD Initial Payment by or on behalf of Cryovac, Inc., (i) no Entity shall have any right to enforce any provision of this Plan relating to the Asbestos PD Initial Payment or the payment thereof against any of the Sealed Air Indemnified Parties or any property or interest (including any Distributions made pursuant to this Plan) in property of any of the Sealed Air Indemnified Parties and (ii) the sole recourse of a Holder of an Asbestos PD Claim or CDN ZAI PD Claim against any of the Sealed Air Indemnified Parties or a Successor Claim arising out of or based on any Asbestos PD Claim or CDN ZAI PD Claim on account thereof, shall be to the Asbestos PD Trust or as set forth in the CDN ZAI Minutes of Settlement (as applicable), and such Holder shall have no right whatsoever at any time to assert its Asbestos PD Claim, CDN ZAI PD Claim, or Successor Claim arising out of or based on any Asbestos PD Claim or CDN ZAI PD Claim against any of the Sealed Air Indemnified Parties or any property or interest (including any Distributions made pursuant to this Plan) in property of any of the Sealed Air Indemnified Parties. Notwithstanding anything to the contrary in this Section 8.3.2, in any other provision of this Plan, or in any Plan Document (including the Asbestos PD Trust Agreement, the CDN ZAI Minutes of Settlement, the ZAI TDP, and the Class 7A Case Management Order), and for the avoidance of any doubt, following the transfer to the Asbestos PD Trust of Fresenius' share of the Asbestos PD Initial Payment by or on behalf of Fresenius, (i) no Entity shall have any right to enforce any provision of this Plan relating to the Asbestos PD Initial Payment or the payment thereof against any of the Fresenius Indemnified Parties or any property or interest (including any Distributions made pursuant to this Plan) in property of any of the Fresenius Indemnified Parties and (ii) the sole recourse of a Holder of an Asbestos PD Claim or CDN ZAI PD Claim against any of the Fresenius Indemnified Parties or a Successor Claim arising out of or based on any Asbestos PD Claim or CDN ZAI PD Claim on account thereof, shall be to the Asbestos PD Trust or as set forth in the CDN ZAI Minutes of Settlement (as applicable), and such Holder shall have no right whatsoever at any time to assert its Asbestos PD Claim, CDN ZAI PD Claim, or Successor Claim arising out of or based on any Asbestos PD Claim or CDN ZAI PD Claim against any of the Fresenius Indemnified Parties or any property or interest (including any Distributions made pursuant to this Plan) in property of any of the Fresenius Indemnified Parties.

## 8.4     ASBESTOS INSURANCE ENTITY INJUNCTION

Pursuant to the exercise of the equitable jurisdiction and power of the Court under Bankruptcy Code § 105(a), the Confirmation Order shall provide for issuance of the Asbestos Insurance Entity Injunction to take effect as of the Effective Date.

97

### 8.4.1    Asbestos Insurance Entity Injunction

#### 8.4.1.1    Injunction for the Benefit of the Asbestos PI Trust

(a)    All Entities that have held or asserted, that hold or assert, or that may in the future hold or assert, any claim or cause of action against any Asbestos Insurance Entity, based upon, or arising out of, any Asbestos PI Claim against the Debtors or any Asbestos Insurance Rights, whenever and wherever arisen or asserted (including all claims in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty) shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly claiming, collecting, recovering, or receiving any payment, recovery, satisfaction, or any other relief whatsoever on, of, or with respect to any such claim or cause of action, including:

(i)    commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding in any forum) against or affecting any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity;

(ii)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity;

(iii)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity;

(iv)    setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity; and

(v)    proceeding in any other manner with regard to any matter that is subject to resolution by the Asbestos PI Trust, except in conformity and compliance with the Asbestos PI Trust Agreement and the Asbestos PI TDP.

(b)    The Asbestos PI Trust shall have the sole and exclusive authority at any time to terminate, reduce or limit the scope of, the Asbestos Insurance Entity Injunction issued

pursuant to Section 8.4.1.1 as it may apply to any Asbestos Insurance Entity upon express written notice to that Asbestos Insurance Entity; and

      (c)    The Asbestos Insurance Entity Injunction is not issued for the benefit of any Asbestos Insurance Entity, and no Asbestos Insurance Entity is or may become a third-party beneficiary of the Asbestos Insurance Entity Injunction.

### 8.4.1.2    Reservations from the Injunction for the Benefit of the Asbestos PI Trust

Notwithstanding anything to the contrary in Section 8.4.1.1 above, the Asbestos Insurance Entity Injunction issued pursuant to Section 8.4.1.1 shall not enjoin:

      (a)    the rights of any Entity to the treatment accorded it under this Plan;

      (b)    the rights of the Asbestos PI Trust or, to the extent provided in the Asbestos Insurance Transfer Agreement, any of the Insurance Contributors, to prosecute any cause of action or to assert any claim, demand, debt, obligation, or liability for payment against any Entity (but not the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties), including any Asbestos Insurance Entity or any property or interest in property of any Asbestos Insurance Entity, based on or arising from the Asbestos Insurance Rights for the Asbestos PI Trust's benefit; and

      (c)    the rights of the Asbestos PI Trust or, to the extent provided in the Asbestos Insurance Transfer Agreement, any of the Insurance Contributors, to receive any settlement, award, payment of Cash or other property of any kind whatsoever from any Entity (but not the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties), including any Asbestos Insurance Entity or any property or interest in property of any Asbestos Insurance Entity, in satisfaction of any Asbestos Insurance Rights that the Asbestos PI Trust or any of the Insurance Contributors may have against any of the foregoing.

### 8.4.1.3    Reservations from the Injunction for the Benefit of BNSF

Notwithstanding anything to the contrary in Section 8.4.1.1 above, the Asbestos Insurance EntityInjunction issued pursuant to Section 8.4.1.1 shall not enjoin:

      (a)    BNSF from asserting any claim (as that term is defined in Bankruptcy Code § 101(5)) for insurance coverage as an insured or an additional insured against any Asbestos Insurance Entity that is not identified on Exhibit 5 of the Exhibit Book; and

      (b)    BNSF from asserting any claim (as that term is defined in Bankruptcy Code § 101(5)) for insurance coverage as an insured or an additional

insured against a Settled Asbestos Insurance Company under and only under an insurance policy (or part of a policy) that is not identified as being the subject of an Asbestos Insurance Settlement Agreement in Exhibit 5 of the Exhibit Book;

provided, however, that in all events, BNSF shall be enjoined from asserting any claim against any Entity or policy entitled to protection under the terms of the Arrowood Rule 9019 Settlement Agreement (as defined in Section 8.2.2(e) above), including any of the policies identified in Exhibits 2 and 3 to the Arrowood Rule 9019 Settlement.

### 8.4.1.4    Reservations from the Injunction Regarding Insurer Contribution Claims

Notwithstanding anything to the contrary in Section 8.4.1.1 above, the Asbestos Insurance Entity Injunction issued pursuant to Section 8.4.1.1 shall not enjoin an insurer from asserting any claim for contribution against any other insurer that is not a Settled Asbestos Insurance Company.

## 8.5    SUCCESSOR CLAIMS INJUNCTION

Pursuant to the exercise of the equitable jurisdiction and power of the Court under Bankruptcy Code § 105(a), the Confirmation Order shall provide for issuance of the Successor Claim Injunction to take effect as of the Effective Date.

### 8.5.1    Injunction

All Entities that have held or asserted, that hold or assert, or that may in the future hold or assert, any Successor Claim (other than Successor Claims arising out of or based on any Asbestos PI Claim, Asbestos PD Claim, or CDN ZAI PD Claim) against any Asbestos Protected Party shall be stayed, restrained, and enjoined from taking any and all legal or other actions or making any demand for the purpose of directly or indirectly claiming, collecting, recovering, or receiving any payment, recovery, satisfaction, or any other relief whatsoever on, of, or with respect to any such Successor Claim, including:

(a)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(b)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(c)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(d)    setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party; and

(e)    proceeding in any other manner with regard to any Successor Claim based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction or Fresenius Transaction (other than Successor Claims arising out of or based on any Asbestos PI Claim, Asbestos PD Claim, or CDN ZAI PD Claim).

K&E 15732365.115732365.2

**8.5.2    Reservations from the Injunction for the Benefit of Holders of Grace-Related Claims**

(a)    As used in this Section 8.5.2: (i) "GR Claim" means a Grace-Related Claim against Fresenius that is not (x) an Asbestos PI Claim or an Asbestos PD Claim; (y) a claim against such Fresenius Indemnified Party that arises out of the Fresenius Transaction, or (z) a claim for fraudulent conveyance, successor liability, piercing of the corporate veil, a claim arising under chapter 5 of the Bankruptcy Code, or any other similar claim or cause of action; and (ii) "GR Proof of Claim" means a proof of claim set forth in a format substantially the same as Official Form 10 that asserts a GR Claim;

(b)    Any Holder of a GR Claim who has not, on or before the Effective Date, filed a proof of claim against the Debtors with respect to the same claim(s) as are contemplated by such GR Claim, may file a GR Proof of Claim asserting such GR Claim against the Debtors on or before the sixtieth day subsequent to the Effective Date (the "GR Claims Bar Date");

(c)    The Reorganized Debtors, from and after the Effective Date, shall assume all liability of Fresenius, and be entitled to assert and have the benefit of all defenses of Fresenius, with respect to all GR Claims timely filed by the GR Claims Bar Date; and

(d)    For the avoidance of doubt, the Successor Claims Injunction shall not apply to Asbestos PI Claims and Asbestos PD Claims, which respectively shall be subject to the Asbestos PI Channeling Injunction and the Asbestos PD Channeling Injunction.

(e)    Nothing in this Section 8.5.2 shall be construed to limit the scope or effect of the injunction afforded to the Fresenius Indemnified Parties or any of the other Asbestos Protected Parties pursuant to Section 8.5.1 above nor any of the other injunctions, releases, indemnifications, or protections afforded to the Fresenius Indemnified Parties or any of the other Asbestos Protected Parties under this Plan.

**8.6    INJUNCTIONS AND RELEASES RELATED TO THE SEALED AIR INDEMNIFIED PARTIES AND FRESENIUS INDEMNIFIED PARTIES**

As required by the Sealed Air Settlement Agreement, the Sealed Air Settlement Order, the Fresenius Settlement Agreement, and the Fresenius Settlement Order, the injunctions and releases outlined in this Plan, including the Asbestos PI Channeling Injunction and Asbestos PD Channeling Injunction provided under Bankruptcy Code § 524(g) and the Successor Claims

102

Injunction provided under Bankruptcy Code § 105(a), shall absolutely and unequivocally extend to and protect the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties.

## 8.7   TERM OF CERTAIN INJUNCTIONS AND AUTOMATIC STAY

### 8.7.1   Injunctions and/or Automatic Stays in Existence Immediately prior to Confirmation

All of the injunctions and/or automatic stays provided for in or in connection with the Chapter 11 Cases, whether pursuant to Bankruptcy Code §§ 105, 362, or any other provision of the Bankruptcy Code or other applicable law, in existence immediately prior to the Confirmation Date shall remain in full force and effect until the injunctions set forth in this Plan become effective, and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms. In addition, on and after the Confirmation Date, the Reorganized Debtors or the Plan Proponents, acting together, may seek such further orders as they may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

### 8.7.2   Injunctions Provided for in this Plan

Each of the injunctions provided for in this Plan shall become effective on the Effective Date and shall continue in effect at all times thereafter unless otherwise provided by this Plan. Notwithstanding anything to the contrary contained in this Plan, all actions in the nature of those to be enjoined by such injunctions shall be enjoined during the period between the Confirmation Date and the Effective Date.

## 8.8   ADDITIONAL RELEASES AND INDEMNIFICATION

### 8.8.1   Release of Sealed Air Indemnified Parties

On or prior to the Effective Date, (i) the SA Debtors, the Asbestos PD Committee, and the Asbestos PI Committee shall execute and deliver the "Release" (as defined in the Sealed Air Settlement Agreement); (ii) the "Government Plaintiff" (as defined in the Sealed Air Settlement Agreement) shall execute and deliver the "Government Release" (as defined in the Sealed Air Settlement Agreement); and (iii) the Asbestos PI Committee and the Asbestos PD Committee shall deliver the "Fresenius Release" (as defined in the Sealed Air Settlement Agreement), all as provided for in the Sealed Air Settlement Agreement. In addition, in consideration for the Cryovac Payment, each of the SA Non-Debtor Affiliates shall irrevocably release, acquit, and forever discharge the Sealed Air Indemnified Parties from any and all present and future Asbestos-Related Claims and Demands related thereto and any and all present and future SA Claims, Canadian Claims, SA Debts, and SA Damages on the basis of, and arising from, or attributable to (in whole or in part, directly or indirectly) the Fresenius Transaction that have accrued or been asserted or that hereafter might accrue or be asserted against the Sealed Air Indemnified Parties, and that such Non-Debtor Affiliate shall not institute, participate in, maintain, maintain a right to or assert against the Sealed Air Indemnified Parties, either directly or indirectly, on its own behalf, derivatively, or on behalf of any other Entity any and all present

103

and future Asbestos-Related Claims and Demands related thereto, and any and all claims present and future SA Claims, Canadian Claims, SA Debts, and SA Damages on the basis of, arising from, or attributable to (in whole or in part, directly or indirectly) the Fresenius Transaction.

The SA Debtors and the Reorganized Debtors shall defend, indemnify, and hold harmless each of the Sealed Air Indemnified Parties as provided in, and to the extent set forth, in the Sealed Air Settlement Agreement.

The SA Debtors shall, jointly and severally, at their sole expense, indemnify, defend, and hold harmless the Sealed Air Indemnified Parties from and against (1) any and all present and future Asbestos-Related Claims and Demands related thereto and all SA Indemnified Taxes, (2) any and all losses, costs, and expenses incurred as a result of any breach of any of the SA Debtors' or SA Non-Debtor Affiliates' obligations, covenants, and agreements set forth or referred to in the Sealed Air Settlement Agreement, including any such obligation, covenant, or agreement of any SA Debtor or SA Non-Debtor Affiliates set forth in the Plan or Confirmation Order, (3) if any SA Non-Debtor Affiliate has not executed and delivered a "Release" (as defined in the Sealed Air Settlement Agreement), any and all Asbestos-Related Claims and Demands related thereto based on, arising out of, or attributable to, directly or indirectly, in whole or in part, such SA Non-Debtor Affiliate and (4) any and all attorneys' fees or costs and expenses attributable to any "SA Indemnity Claim" (as defined in Section 7.7(hh) above); *provided, however,* that in each case such indemnification shall not apply to "Excluded Fees" (as defined in the Sealed Air Settlement Agreement) and *provided, further,* that nothing in the Sealed Air Settlement Agreement or this Plan, shall adversely affect any rights of any Entity to file and pursue, or object to, a proof of claim for Excluded Fees in the Chapter 11 Cases.

Each SA Debtor shall execute and deliver an indemnity agreement in favor of the Released Parties in the form annexed as Exhibit 6 to the Sealed Air Settlement Agreement. The SA Debtors' Indemnity Obligation (and the obligations, covenants, and agreements of each of the SA Debtors and SA Non-Debtor Affiliates set forth or referred to in the Sealed Air Settlement Agreement, including any such obligation, covenant, or agreement of any SA Debtor or SA Non-Debtor Affiliate set forth in the Plan or Confirmation Order) shall not be discharged, expunged, estimated, or otherwise adversely affected in or by the Chapter 11 Cases or by the confirmation of the Plan.

The SA Debtors' Indemnity Obligation (and the obligation, covenants, and agreements of each of the SA Debtors and SA Non-Debtor Affiliates set forth or referred to in the Sealed Air Settlement Agreement, including any such obligation, covenant, or agreement of any SA Debtor or SA Non-Debtor Affiliate set forth in the Plan or Confirmation Order) shall continue unaffected as a post-confirmation obligation of each of the Reorganized Debtors.

### 8.8.2    Reservation of Rights With Respect to Cryovac Transaction Contractual Obligations

Notwithstanding anything to the contrary in this Plan, any of the Plan Documents, or the Confirmation Order, nothing in this Plan, any of the Plan Documents, or the Confirmation Order

(including any other provision that purports to be preemptory or supervening) shall in any way operate to, or have the effect of, impairing or limiting the contractual rights, obligations, and defenses of any of the Sealed Air Indemnified Parties or the Debtors and the Non-Debtor Affiliates with respect to outstanding claims arising out of the interpretation or application of the documents governing the Cryovac Transaction. All such contractual rights, obligations, and defenses shall survive confirmation and the Debtors' discharge and remain fully effective and enforceable after the Effective Date.

### 8.8.3    Release of Fresenius Indemnified Parties

Upon receipt of the Fresenius Payment, the Debtors, the Reorganized Debtors, the Asbestos PI Committee, and the Asbestos PD Committee will each fully, finally and forever release, relinquish and discharge each and every Fresenius Indemnified Party from any and all Grace-Related Claims, including, for the avoidance of doubt, claims and causes of action under chapter 5 of the Bankruptcy Code or similar claims or causes of action under state or any other law, that the Debtors, the Reorganized Debtors, the Asbestos PI Committee or the Asbestos PD Committee have asserted or could have asserted in the Bankruptcy Court or any other forum against any of the Fresenius Indemnified Parties and the release that is attached as Appendix B to the Fresenius Settlement Agreement shall become effective. Upon receipt of the Fresenius Payment, in addition to the more limited duties of indemnification by the Debtors to the Fresenius Indemnified Parties under Article III of the Fresenius Settlement Agreement, the Debtors and the Reorganized Debtors shall indemnify, defend and hold harmless the Fresenius Indemnified Parties as provided in and to the extent set forth in the Fresenius Settlement Agreement. Without limiting the foregoing, pursuant to Section 3.05 of the Fresenius Settlement Agreement, the Debtors and the Reorganized Debtors shall indemnify, defend and hold harmless the Fresenius Indemnified Parties from Fresenius Indemnified Taxes and, to the extent provided in the Fresenius Settlement Agreement, any and all losses, costs, and expenses incurred as a result of any breach of the Estate Parties' obligations, covenants, and agreements set forth or referred to in the Fresenius Settlement Agreement.

### 8.8.4    Assumption of 1998 Tax Sharing Agreement and Section 4.04 of the TSIA

(a)    The Confirmation Order shall constitute an order authorizing the assumption by each of the Debtors of the 1998 Tax Sharing Agreement. The 1998 Tax Sharing Agreement shall be an assumed agreement of each of the Debtors (including Grace New York and Grace-Conn) pursuant to 11 U.S.C. § 365 and nothing contained in, or contemplated by, this Plan, the Confirmation Order, or the Sealed Air Settlement Agreement shall adversely affect the rights of the Debtors, Sealed Air Corporation or any of their Affiliates under the 1998 Tax Sharing Agreement.

(b)    The Confirmation Order shall constitute an order authorizing the assumption by each of the Debtors of Section 4.04 of the TSIA. Section 4.04 of the TSIA shall be an assumed agreement of each of the Debtors (including Grace New York and Grace-Conn) pursuant to 11 U.S.C. § 365 and nothing contained in, or contemplated by, this Plan, the Confirmation Order, or the Fresenius Settlement Agreement shall adversely affect the rights of the Debtors, Fresenius or any of their Affiliates under Section 4.04 of the TSIA.

### 8.8.5 Effect of the Fresenius Settlement Agreement, the Fresenius Settlement Order, and the Sealed Air Settlement Agreement.

Notwithstanding anything to the contrary in this Plan, any of the Plan Documents, or the Confirmation Order, nothing in this Plan, any of the Plan Documents, or the Confirmation Order (including any other provision that purports to be preemptory or supervening) shall in any way operate to, or have the effect of, impairing or limiting the legal, equitable, or contractual rights or obligations of the Sealed Air Indemnified Parties, the Fresenius Indemnified Parties, or the Debtors, the Reorganized Debtors, the other Estate Parties, and the Non-Debtor Affiliates, respectively, pursuant to the Sealed Air Settlement Agreement, the Sealed Air Settlement Order, the Fresenius Settlement Agreement or the Fresenius Settlement Order, as applicable, each of which is expressly made a part of this Plan and incorporated in this Plan by reference.

106

### 8.8.6    Release of Avoidance Actions.

Effective as of the Effective Date, the Debtors and the Reorganized Debtors fully, finally and forever release, relinquish and discharge each and every claim, cause of action, or right of the Debtors, the Reorganized Debtors or any of them, arising under the Bankruptcy Code, including any avoidance or recovery actions under sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or under any similar state statutes, which seek recovery of or with respect to any payment by, or transfer of any interest in property of, any of the Debtors or the Debtors in Possession on account of an Asbestos PI Claim, Asbestos PD Claim, or CDN ZAI PD Claim, or any claim that would have constituted an Asbestos PI Claim, Asbestos PD Claim, or CDN ZAI PD Claim had such payment or transfer not been made.  Notwithstanding the foregoing, the release provided in this Section 8.8.6 shall supplement the other releases and injunctions provided by the Debtors and Reorganized Debtors to the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties pursuant to this Plan and nothing in this Section 8.8.6 in any way limits or modifies, nor shall be construed to in any way limit or modify, the scope of such releases.

### 8.8.7    Specific Releases by Holders of Claims or Equity Interests.

Without limiting any other provisions of this Plan, each Holder of a Claim or Equity Interest who votes in favor of this Plan shall be deemed to unconditionally have released the Asbestos Protected Parties, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Equity Committee, Asbestos PI FCR, and the Asbestos PD FCR, and each such party's Representatives to the extent such Representatives served during the Chapter 11 Cases (except that the foregoing limitation shall not apply to Representatives of the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties), as of the Effective Date, from any and all claims, SA Claims, SA Damages, obligations, rights, suits, judgments, damages, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, that such Holder would have been legally entitled to assert in its own right (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, their operations on or before the Effective Date, their respective property, the Chapter 11 Cases, or the negotiation, formulation, and preparation of this Plan or any related agreements, instruments, or other documents.  In addition to the foregoing, each Holder of a Claim or Equity Interest who receives or retains any property under this Plan shall also be deemed to unconditionally release the Fresenius Indemnified Parties to the same extent as the release in the preceding sentence.  This section is not intended to preclude a Governmental Unit from enforcing its police and regulatory powers.

### 8.8.8    Release by Debtors and Estate Parties.

Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each

107

Debtor, in its individual capacity and as a debtor-in-possession for and on behalf of its estate and its Affiliates, and the Reorganized Debtors on their own behalf and as representatives of their respective estates and their Affiliates, and their respective successors, assigns and any and all Entities who may purport to claim by, through, for or because of them, are hereby deemed to release and waive conclusively, absolutely, unconditionally, irrevocably, and forever each and all of the Debtors' and their Non-Debtor Affiliates' Representatives, to the extent they served during the Chapter 11 Cases, and their respective properties (the "Released Parties"), from any and all claims, obligations, rights, suits, damages, remedies, liabilities, or causes of action in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the Debtors' property, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and the Disclosure Statement, or related agreements, instruments, or other documents, involving any act, omission, transaction, agreement, occurrence, or event taking place on or before the Effective Date, other than any act or omission of a Released Party that constitutes willful misconduct.  Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute willful misconduct.

### 8.8.9 Indemnification of Representatives of the Debtors and Non-Debtor Affiliates.

The Reorganized Debtors will defend, indemnify, and hold harmless to the fullest extent permitted by applicable law, all Representatives of the Debtors, and all Representatives of the Non-Debtor Affiliates, on and after the Effective Date for all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever that are purported to be released pursuant to Sections 8.8.7 and 8.8.8 herein.  Nothing herein is intended to, and shall not, alter in any way the rights of the present and/or former officers and/or directors of the Debtors and the Non-Debtor Affiliates, under the Debtors' By-Laws and/or Certificate of Incorporation, and the Non-Debtor Affiliates' applicable bylaws and/or certificates of incorporation, whatever those rights may be.

### 8.8.10 Indemnification of Reorganized Debtors and Their Representatives by the Asbestos PI Trust.

From and after the Effective Date, the Asbestos PI Trust shall protect, defend, indemnify and hold harmless, to the fullest extent permitted by applicable law each of the Reorganized Debtors and their Representatives from and against: (a) any and all Asbestos PI Claims or Successor Claims arising out of or based on any Asbestos PI Claim to the extent they are subject to the Asbestos PI Channeling Injunction, together with any and all related Damages, (b) any and all Damages relating to Asbestos PI Claims or Successor Claims purported to be covered by the Asbestos PI Channeling Injunction, to the extent that such Asbestos PI Claims or Successor Claims are brought in jurisdictions outside of the United States of America or are not otherwise, for any reason, subject to the Asbestos PI Channeling Injunction, (c) any and all claims or Damages arising out of, resulting from, or attributable to, directly or indirectly, the assignment, transfer or other provision to the Asbestos PI Trust of the Asbestos Insurance Rights, and (d) any

and all claims or Damages arising out of Asbestos PI Claims, to the extent such Claims or Damages are based upon claims brought by, on behalf of or in the name of the Asbestos PI Trust on account of or derived from the Asbestos PI Trust Assets; *provided however*, that notwithstanding the foregoing, none of the Reorganized Debtors nor any of their Representatives shall be entitled to be protected, defended, indemnified or held harmless from any criminal proceeding or any claims or Damages arising out of, resulting from, or attributable to, directly or indirectly, the criminal proceeding styled *United States v. W. R. Grace & Co., et al.,* Case No. CR-05-07-M-DWM (D. Mont.) or any similar or related proceeding or any settlement thereof. If there shall be pending any claim against the Asbestos PI Trust for indemnification under this Section 8.8.10, the Asbestos PI Trust shall maintain sufficient assets (as determined in good faith by the Asbestos PI Trustees of the Asbestos PI Trust) to fund any payments in respect of that claim for indemnification. For purposes of this Section only, "Damages" to any Entity covered by the indemnity in this Section 8.8.10 shall mean any cost, damage (including any consequential, exemplary, punitive, or treble damage) or expense (including reasonable fees and actual disbursements by attorneys, consultants, experts, or other Representatives and costs of litigation) imposed upon that Entity. The Reorganized Debtors shall provide prompt notice to the Asbestos PI Trust upon becoming aware of the basis for any claim for indemnification under this Section 8.8.10.

### 8.8.11 Indemnification of the Reorganized Debtors and Their Representatives by the Asbestos PD Trust.

From and after the Effective Date, the Asbestos PD Trust shall protect, defend, indemnify and hold harmless, to the fullest extent permitted by applicable law each of the Reorganized Debtors and their Representatives from and against: (a) any and all Asbestos PD Claims or Successor Claims arising out of or based on any Asbestos PD Claim to the extent they are subject to the Asbestos PD Channeling Injunction, together with any and all related Damages, (b) any and all Damages relating to Asbestos PD Claims or Successor Claims purported to be covered by the Asbestos PD Channeling Injunction, to the extent that such Asbestos PD Claims or Successor Claims are brought in jurisdictions outside of the United States of America (other than Canada) or are not otherwise, for any reason, subject to the Asbestos PD Channeling Injunction, and (c) any and all claims or Damages arising out of Asbestos PD Claims, to the extent such Claims or Damages are based upon claims brought by, on behalf of or in the name of the Asbestos PD Trust on account of or derived from the Asbestos PD Trust Assets; *provided however*, that notwithstanding the foregoing, none of the Reorganized Debtors nor any of their Representatives shall be entitled to be protected, defended, indemnified or held harmless from any criminal proceeding or any claims or Damages arising out of, resulting from, or attributable to, directly or indirectly, the criminal proceeding styled *United States v. W. R. Grace & Co., et al.,* Case No. CR-05-07-M-SWM (D. Mont.) or any similar or related proceeding or any settlement thereof. If there shall be pending any claim against the Asbestos PD Trust for indemnification under this Section 8.8.11, the Asbestos PD Trust shall maintain sufficient assets (as determined in good faith by the Asbestos PD Trustees of the Asbestos PD Trust) to fund any payments in respect of that claim for indemnification. For purposes of this Section only, "Damages" to any Entity covered by the indemnity in this Section 8.8.11 shall mean any cost, damage (including any consequential, exemplary, punitive, or treble damage) or expense (including reasonable fees and actual disbursements by attorneys, consultants, experts, or other Representatives and costs of litigation) imposed upon that Entity. The Reorganized Debtors

shall provide prompt notice to the Asbestos PD Trust upon becoming aware of the basis for any claim for indemnification under this Section 8.8.11.

## ARTICLE 9
## EXECUTORY CONTRACTS, UNEXPIRED
## LEASES, LETTERS OF CREDIT, SURETY BONDS,
## COMPENSATION, INDEMNITY AND BENEFIT PROGRAMS

### 9.1 ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

#### 9.1.1 Assumption Generally.

Except for (i) executory contracts and unexpired leases that the Debtors reject prior to the Effective Date or designate (on a list set forth in Exhibit 18 in the Exhibit Book) as being subject to rejection in connection with the Effective Date; (ii) the TSIA which shall be terminated (except for Section 4.04) upon the effective date of the Fresenius Settlement Agreement; and (iii) agreements, to the extent executory, that create an obligation of the Debtors to reimburse or indemnify third parties with respect to Asbestos PI Claims, Asbestos PD Claims or CDN ZAI PD Claims (other than all Asbestos Insurance Policies, Asbestos Insurance Settlement Agreements, Asbestos In-Place Insurance Coverage, and Asbestos Insurance Reimbursement Agreements, to the extent they are executory, and the 1998 Tax Sharing Agreement), all executory contracts and unexpired leases (including all Asbestos Insurance Policies, Asbestos Insurance Settlement Agreements, Asbestos In-Place Insurance Coverage, and Asbestos Insurance Reimbursement Agreements, to the extent they are executory; the 1998 Tax Sharing Agreement; and the cost sharing agreement between the Debtors, Unifirst Corporation, and Beatrice Company, dated November 16, 1990 and described at Section 2.8.2 of the Disclosure Statement) not previously assumed by the Debtors pursuant to Bankruptcy Code § 365 shall be deemed to have been assumed by the Reorganized Debtors on the Effective Date, and this Plan shall constitute a motion to assume such executory contracts and unexpired leases as of the Effective Date.

#### 9.1.2 Assumption Procedures.

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute express approval of the assumption of the executory contracts and unexpired leases described in Section 9.1.1 pursuant to Bankruptcy Code § 365(a) and a finding by the Bankruptcy Court that each such assumption is in the best interests of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases.

Not later than twenty (20) days after entry of the Confirmation Order, the Debtors will File with the Bankruptcy Court an exhibit (the **"Cure Exhibit"**) setting forth those executory contracts and unexpired leases which are being assumed by the Debtors and as to which the Debtors believe that cure amounts are owing, together with the respective cure amounts due for each such executory contract or assumed lease. The Debtors shall serve the Cure Exhibit on each non-Debtor party to an executory contract or unexpired lease being assumed pursuant to the Plan, including those listed on such exhibit. If there is a dispute regarding (i) the nature or amount of any cure, (ii) the ability of a Reorganized Debtor or assignee to provide "adequate

110

assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (iii) any other matter pertaining to assumption, cure will occur following the entry of a Final Order resolving the dispute and approving the assumption. With respect to any executory contracts or unexpired leases which are being assumed by the Debtors but as to which the Debtors contend that no cure amounts are due, such executory contracts and unexpired leases will not be included on the Cure Exhibit.

Not later than twenty (20) days after the Filing and service of the Cure Exhibit, the non-Debtor party to any executory contract or unexpired lease that the Debtors propose to assume, whether or not listed on the Cure Exhibit, may dispute the cure amount, if any, set forth by the Debtors on the Cure Exhibit pursuant to Section 9.1.1 of the Plan, assert that a cure amount should be owing with respect to any executory contract or unexpired lease that is being assumed, or otherwise object to the assumption of the executory contract or unexpired lease indicated in Section 9.1.1 of the Plan by Filing a written objection with the Bankruptcy Court and serving such objection on counsel for the Debtors.

If no objection to the cure amount or the proposed assumption is properly Filed and served within twenty (20) days after the Filing and service of the Cure Exhibit then (i) the proposed assumption of the executory contract or unexpired leases shall be deemed approved without further action of the Bankruptcy Court in accordance with the Plan and the Confirmation Order, effective as of the Effective Date, and (ii) the cure amount, if any, identified by the Debtors in the Cure Exhibit shall be fixed and shall be paid in full in Cash on the Effective Date or on such other terms as are agreed to by the parties to such executory contract or unexpired lease.

If an objection to the cure amount or the proposed assumption is properly Filed and served within twenty (20) days after the Filing and service of the Cure Exhibit, then the Debtors or Reorganized Debtors, as applicable, and the objecting party may resolve such objection by stipulation, without further action of the Bankruptcy Court. If the parties are unable to resolve such objection, then: (i) the Debtors or Reorganized Debtors may file a reply to such objection no later than thirty (30) days after the Filing and service of such objection and ask the Bankruptcy Court to schedule a hearing on the particular objection and the related reply at an appropriate time; or (ii) the Debtors or Reorganized Debtors, as applicable, may designate the executory contract or unexpired lease underlying such objection for rejection pursuant to Section 9.1.3 of the Plan.

Executory contracts and unexpired leases previously assumed by the Debtors during the case pursuant to Bankruptcy Code § 365 shall be governed by and subject to the provisions of the order of the Court authorizing the assumption thereof.

### 9.1.3    Rejection of Certain Executory Contracts and Unexpired Leases.

On the Effective Date, each executory contract and unexpired lease listed on Exhibit 18 in the Exhibit Book shall be rejected pursuant to section 365 of the Bankruptcy Code. Each contract and lease listed on Exhibit 18 shall be rejected only to the extent that such contract or lease constitutes an executory contract or unexpired lease. Listing a contract or lease on Exhibit

18 shall not constitute an admission by the Debtors or Reorganized Debtors that such contract or lease is an executory contract or unexpired lease or that the Debtors or Reorganized Debtors have any liability thereunder. Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection pursuant to section 365 of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejection is in the best interests of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases.

The Debtors shall have the right until ten (10) days prior to the Effective Date to modify the list of rejected contracts included in Exhibit 18 in the Exhibit Book to add executory contracts or leases (but not the 1998 Tax Sharing Agreement or any Asbestos Insurance Policy, Asbestos Insurance Settlement Agreement, Asbestos In-Place Insurance Coverage, or Asbestos Insurance Reimbursement Agreements) or remove executory contracts or leases (but not Section 4.04 of the TSIA addressed in Section 8.8.4(b) of this Plan), *provided* that the Debtors shall file a notice with the Bankruptcy Court and serve each affected party with such notice. Notwithstanding the foregoing, such affected parties shall not be entitled to any Administrative Expense Claim for any executory contracts or leases added to the list of rejected contracts and will only be entitled to a Claim for rejection damages.

To the extent executory, all agreements that create an obligation of the Debtors to reimburse or indemnify third parties (other than the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties) with respect to Asbestos PI Claims, Asbestos PD Claims or CDN ZAI PD Claims (other than Asbestos Insurance Policies, Asbestos Insurance Settlement Agreements, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreements, or the 1998 Tax Sharing Agreement to the extent any are executory) shall be deemed rejected by operation of entry of the Confirmation Order, subject to the occurrence of the Effective Date, unless expressly identified and assumed pursuant to the Plan, a Plan Document, or an order of the Bankruptcy Court.

Pursuant to the terms of the March 2003 Bar Date Order and Bankruptcy Rule 3002(c)(4), and except as otherwise ordered by the Bankruptcy Court, a proof of claim for each Claim arising from the rejection of an executory contract or unexpired lease pursuant to this Plan shall be Filed with the Bankruptcy Court within thirty (30) days of the later of: (i) the date of service of the Notice of Confirmation Date, or (ii) the Effective Date. Any Claims not Filed within such applicable time period shall be forever barred from assertion. Except with respect to Claims arising from the rejection of an executory contract or unexpired lease that creates an obligation of the Debtors to reimburse or indemnify third parties with respect to Asbestos PI Claims, Asbestos PD Claims or CDN ZAI PD Claims, all Claims for damages arising from the rejection of an executory contract or unexpired lease shall be included in Class 9 and shall be treated in accordance with Article 3 herein. All Claims for damages arising from the rejection of an agreement that creates an obligation of the Debtors to reimburse or indemnify third parties with respect to Asbestos PI Claims, Asbestos PD Claims or CDN ZAI PD Claims shall be included in Class 6, Class 7 or Class 8, respectively, and shall be treated in accordance with Article 3 herein.

**9.2   LETTERS OF CREDIT AND SURETY BONDS**

Letters of credit related to the Debtors' post-petition credit facilities will be refinanced upon emergence from the Chapter 11 Cases. All other letters of credit and surety bonds on account of non-asbestos claims will remain in place and become obligations of the Reorganized Debtors. Claims arising under letters of credit and surety bonds issued or provided on account of Asbestos PI Claims will be treated as Indirect PI Trust Claims and will be channeled to the Asbestos PI Trust. Claims arising under letters of credit and surety bonds issued or provided on account of Asbestos PD Claims will be treated as Indirect PD Trust Claims and will be channeled to the Asbestos PD Trust. Notwithstanding any other provision in this Plan, the Disclosure Statement or any other document prepared in connection with the Chapter 11 Cases, nothing shall affect the right of the plaintiffs in *Sheldon H. Solow v. W. R. Grace & Co.,* No. 2453/88 (NY Sup. Ct.) to execute on and recover in satisfaction of the judgment in that case in accordance with state law against any entity that issued a surety bond to secure payment of that judgment, or any successor to such entity.

Nothing in Article 9 shall (i) constitute a reinstatement, continuation, or assumption of any warranty provision, guaranty, or any other contractual or other obligation, Demand, or Plan Claim by the Reorganized Debtors to the extent that the Plan Claim, Demand, or obligation constitutes an Asbestos PI Claim, or (ii) limit, restrict, or otherwise impair the releases afforded to the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties that are granted elsewhere in this Plan or Plan Documents.

## 9.3   COMPENSATION, INDEMNITY AND BENEFIT PROGRAM

### 9.3.1   Employee Benefits.

From and after the Effective Date, the Reorganized Debtors intend to continue their existing employee compensation, indemnity agreements, and benefit plans, programs, and policies, and to cure any defaults that may exist under such agreements, plans, programs, and policies, including payment of the Debtors' voluntary supplemental pension payments which were limited during the pendency of these Chapter 11 Cases, subject to any rights to amend, modify, or terminate such benefits under the terms of the applicable compensation and benefit plan, other agreement, or applicable nonbankruptcy law.

It is also anticipated that after the Effective Date, the Reorganized Debtors may award special cash bonuses of up to an aggregate of $6 million to a select group of key executives in recognition of their contributions during the Chapter 11 Cases, including substantially increasing the revenues and enterprise value of the Grace group and successfully leading the Debtors' reorganization efforts. The amount and allocation of such bonus awards will be determined after the Effective Date by the Board of Directors of the Reorganized Parent.

In addition, on the Effective Date, the Reorganized Parent's Board of Directors will have the authority to grant stock incentive awards to the management of the Reorganized Debtors and to other key employees, and to the Board of Directors of the Reorganized Debtors pursuant to the Stock Incentive Plan.

### 9.3.2   Retiree Benefits.

From and after the Effective Date, the Reorganized Debtors intend to continue to pay retiree benefits (as defined in section 1114(a) of the Bankruptcy Code) and any similar health, disability, or death benefits in accordance with the terms of the retiree benefit plans or other agreements governing the payment of such benefits, subject to any rights to amend, modify, or terminate such benefits under the terms of the applicable retiree benefits plan, other agreement, or applicable nonbankruptcy law.

### 9.3.3    Workers' Compensation Benefits.

From and after the Effective Date, the Reorganized Debtors, in their sole discretion, may continue to pay valid Workers' Compensation Claims, subject to any rights to amend, modify, or terminate such benefits pursuant to applicable nonbankruptcy law.

## ARTICLE 10
## RETENTION OF JURISDICTION

Pursuant to Bankruptcy Code §§ 105(a), 524(a), 1141(d), and 1142, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (i) arising under the Bankruptcy Code, (ii) arising in or related to the Chapter 11 Cases or this Plan, or (iii) that relates to the following, provided that the District Court shall retain jurisdiction for such matters to which the automatic reference to the Bankruptcy Court has been withdrawn or to the extent required by law:

### 10.1    PLAN DOCUMENTS

To interpret, enforce, and administer the terms of the Plan Documents and all annexes and exhibits thereto.

### 10.2    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

To hear and determine any and all motions or applications for the assumption and/or assignment or rejection of (i) executory contracts, (ii) unexpired leases, (iii) letters of credit, (iv) surety bonds, (v) guaranties (which for purposes of this Section include contingent liabilities arising in connection with assigned executory contracts and unexpired leases), or (vi) written indemnity agreements with respect to letters of credit, surety bonds or guaranties existing as of the Effective Date to which the Debtors are parties or with respect to which the Debtors may be liable that are: (A) pending on the Confirmation Date or (B) within the time period described in Section 9.1 of this Plan, and to review and determine all Claims resulting from the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date.

### 10.3    DISPUTED CLAIMS ALLOWANCE/DISALLOWANCE

To hear and determine any objections to: (i) the allowance of Plan Claims (other than Asbestos PI Claims and any Successor Claims arising out of or based on any Asbestos PI Claims), including any objections to the classification of any Claim; and (ii) the allowance or disallowance of any Disputed Claim in whole or in part, including Asbestos PD Claims pursuant to the Class 7A Case Management Order contemplated by Section 3.1.7 of this Plan.

114

**10.4    ENFORCEMENT/MODIFICATION OF THIS PLAN AND THE RELEASES, INJUNCTIONS AND DISCHARGE PROVIDED UNDER THE PLAN**

(a)    To enforce the discharge, releases, and injunctions provided under the Plan, including with respect to the assertion by any Entity after the Effective Date of claims or causes of action that are discharged, released, or enjoined pursuant to the Plan and the Confirmation Order;

(b)    To make all determinations or rulings as to whether claims or causes of action asserted after the Effective Date in any forum have been discharged, released, or enjoined pursuant to the Plan and the Confirmation Order;

(c)    To allow and disallow Asbestos PD Claims as contemplated by the Class 7A Case Management Order;

(d)    To issue such orders in aid of execution of this Plan to the extent authorized or contemplated by Bankruptcy Code § 1142;

(e)    To consider and approve any modifications of this Plan or Plan Documents, remedy any defect or omission, or reconcile any inconsistency in any order of the Court, including the Confirmation Order;

(f)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan Documents or their interpretation, implementation, enforcement, or consummation;

(g)    To hear and determine all objections to the termination of the Asbestos PI Trust or the Asbestos PD Trust;

(h)    To determine such other matters that may be set forth in, or that may arise in connection with, this Plan, the Confirmation Order, the Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, the Successor Claims Injunction, the Asbestos Insurance Entity Injunction, the Asbestos PI Trust Agreement, or the Asbestos PD Trust Agreement;

(i)    To hear and determine any proceeding that involves the validity, application, construction, enforceability, or request to modify the Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, the Successor Claims Injunction, or the Asbestos Insurance Entity Injunction;

(j)    To enter an order or final decree closing the Chapter 11 Cases;

(k)    To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of all orders entered by the Court in the Chapter 11 Cases;

(l)     To enter such orders as are necessary to implement and enforce the injunctions described herein; and

(m)     To enter orders authorizing immaterial modifications to this Plan and to hear and determine any issue involving the Asbestos PI Trust or the Asbestos PD Trust in order to comply with section 468B of the IRC.

## 10.5   COMPENSATION OF PROFESSIONALS

To hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals under Bankruptcy Code §§ 327, 328, 329, 330, 331, and 363 and any other fees and expenses authorized to be paid or reimbursed under this Plan.

## 10.6   SETTLEMENTS

To the extent that Court approval is required, to consider and act on the compromise and settlement of any Plan Claim or cause of action by or against the Debtors' or Reorganized Debtors' estates, the Asbestos PI Trust, or the Asbestos PD Trust.

## 10.7   TAXES

To hear and determine matters concerning state, local, and federal taxes (including the amount of net operating loss carryforwards), fines, penalties, or additions to taxes for which the Debtors or Debtors in Possession may be liable, directly or indirectly, in accordance with Bankruptcy Code §§ 346, 505, and 1146.

## 10.8   SPECIFIC PURPOSES

To hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order.

## 10.9   INSURANCE MATTERS

To hear and determine matters concerning the Asbestos Insurance Policies, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreements, and Asbestos Insurance Settlement Agreements; *provided, however,* that the Court shall have nonexclusive jurisdiction over such matters.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

## 11.1   AUTHORITY OF THE DEBTORS

On the Confirmation Date, the Debtors shall be directed and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement effectively the provisions of this Plan, the other Plan Documents (including the Sealed Air

116

Settlement Agreement and the Fresenius Settlement Agreement), and the creation of the Asbestos PI Trust and the Asbestos PD Trust, and to cooperate with the Plan Proponents as provided herein and with respect to matters related to the Plan generally.

## 11.2    AUTHORITY OF THE REORGANIZED DEBTORS TO GRANT NEW STOCK INCENTIVE PLAN AND IMPOSE STOCK TRADING RESTRICTIONS

On the Effective Date, the Reorganized Parent's Board of Directors shall have the authority to grant stock incentive awards to the management of the Reorganized Debtors and to other key employees, and to the Board of Directors of the Reorganized Debtors pursuant to the Stock Incentive Plan and as described more fully in the Disclosure Statement. Also on the Effective Date, the Board of Directors of the Reorganized Parent shall be authorized, in certain circumstances, to impose trading restrictions on Parent Common Stock pursuant to the Stock Trading Restrictions Term Sheet, and as described more fully in the Disclosure Statement.

## 11.3    PAYMENT OF STATUTORY FEES

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Court at the hearing on confirmation of this Plan, shall be paid by the Debtors on or before the Effective Date.

## 11.4    RETAINED CAUSES OF ACTION

### 11.4.1  Maintenance of Causes of Action

Nothing in this Section 11.4 of this Plan shall be deemed to be a transfer by the Debtors and the Reorganized Debtors of any claims, causes of action, or defenses relating to assumed executory contracts or otherwise which are required by the Reorganized Debtors to conduct their businesses in the ordinary course subsequent to the Effective Date.   Moreover, except as otherwise expressly contemplated by this Plan, the Sealed Air Settlement Agreement, the Fresenius Settlement Agreement or other Plan Documents, and except for the Asbestos PI Trust Causes of Action and the Asbestos PD Trust Causes of Action, from and after the Effective Date, the Reorganized Debtors shall have and retain any and all rights to commence and pursue any and all claims, causes of action, including the Retained Causes of Action, or defenses against any parties, other Claimants and Holders of Equity Interests, whether such causes of action accrued before or after the Petition Date.

The Reorganized Debtors shall retain and may exclusively enforce any and all such claims, rights, or causes of action, including Retained Causes of Action, and commence, pursue, and settle the causes of action in accordance with this Plan.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and causes of action, including Retained Causes of Action, without the consent or approval of any third party and without any further order of the Court.

117

### 11.4.2 Preservation of All Causes of Action not Expressly Settled or Released

Unless a claim or cause of action against a Claimant or other Entity is expressly waived, relinquished, released, compromised, or settled in this Plan or any Final Order, the Debtors expressly reserve such claim or Retained Cause of Action (including any unknown causes of action) for later adjudication by the Reorganized Debtors, the Asbestos PD Trust Causes of Action related to Claims in Class 7A for later adjudication by the Reorganized Debtors on behalf of the Asbestos PD Trust pursuant to the Class 7A CMO, the Asbestos PD Trust Causes of Action related to Claims in Class 7B for later adjudication by the Asbestos PD Trust, and the Asbestos PI Trust Causes of Action for later adjudication by the Asbestos PI Trust. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims, Retained Causes of Action, Asbestos PI Trust Causes of Action, or Asbestos PD Trust Causes of Action upon or after the Confirmation Date or Effective Date of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such claims or Retained Causes of Action have been released in this Plan or other Final Order. In addition, the Debtors, the Reorganized Debtors, and the successor entities under this Plan expressly reserve the right to pursue or adopt any claim alleged in any lawsuit in which the Debtors are defendants or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuits.

Any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Debtors or the Reorganized Debtors, and may, if appropriate, be the subject of an action after the Effective Date, whether or not (i) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases; (ii) such Claimant's proof of claim has been objected to; (iii) such Claimant's Claim was included in the Debtors' Schedules; or (iv) such Claimant's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as a Disputed Claim, a Contingent Claim, or an Unliquidated Claim.

## 11.5   THIRD-PARTY AGREEMENTS

The Distributions to the various Classes of Plan Claims hereunder will not affect the right of any Entity to levy, garnish, attach, or employ any other legal process with respect to such Distributions by reason of any claimed subordination rights or otherwise. All of such rights and any agreements relating thereto will remain in full force and effect.

## 11.6   REQUIREMENTS OF THE FRESENIUS SETTLEMENT AGREEMENT

Except as expressly waived in writing by Fresenius in its absolute discretion, each of the provisions to be included in the Plan to satisfy the preconditions to the payment of the Fresenius Payment set forth in the Fresenius Settlement Agreement and the other requirements of the Fresenius Settlement Agreement, to the extent not already included herein or waived pursuant to

118

the terms of the Fresenius Settlement Agreement, shall be included in Exhibit 13 in the Exhibit Book and are hereby expressly incorporated herein by reference and made a part hereof as if the same were fully set forth in this Plan.

## 11.7    REQUIREMENTS OF THE SEALED AIR SETTLEMENT AGREEMENT

Except as expressly waived in writing by each of Sealed Air Corporation and Cryovac, Inc. in its absolute discretion, each of the provisions to be included in the Plan to satisfy the preconditions to the payment of the Cryovac Payment set forth in the Sealed Air Settlement Agreement and the other requirements of the Sealed Air Settlement Agreement, to the extent not already included herein or waived pursuant to the terms of the Sealed Air Settlement Agreement, shall be included in Exhibit 22 in the Exhibit Book and are hereby expressly incorporated herein by reference and made a part hereof as if the same were fully set forth in this Plan.

## 11.8    DISSOLUTION OF THE UNSECURED CREDITORS' COMMITTEE, THE ASBESTOS PI COMMITTEE, THE ASBESTOS PD COMMITTEE AND THE EQUITY COMMITTEE; CONTINUED RETENTION OF THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE AND THE ASBESTOS PD FUTURE CLAIMANTS' REPRESENTATIVE

The Debtors shall pay the reasonable fees and expenses incurred by the Asbestos PI Committee, the Asbestos PD Committee, the Unsecured Creditors' Committee, the Equity Committee, the Asbestos PI Future Claimants' Representative, and the Asbestos PD Future Claimants' Representative through the Effective Date in accordance with the fee and expense procedures promulgated during the Chapter 11 Cases. On the Effective Date, except as set forth below, the Asbestos PI Committee, the Asbestos PD Committee, the Unsecured Creditors' Committee, and the Equity Committee shall thereupon be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Chapter 11 Cases, and those committees shall be deemed dissolved. After the Effective Date, the rights, duties, and responsibilities of the Asbestos PI Future Claimants' Representative shall be as set forth in the Asbestos PI Trust Agreement, and the rights, duties, and responsibilities of the Asbestos PD Future Claimants' Representative shall be as set forth in the Asbestos PD Trust Agreement.

Notwithstanding the foregoing, if the Effective Date occurs prior to the entry of a Final Order with respect to final fee applications of Professionals retained by order of the Bankruptcy Court during the Chapter 11 Cases, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, and the Equity Committee may, at their option, continue to serve until a Final Order is entered with respect to such proceedings. Further, after the Effective Date, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Equity Committee, the Asbestos PI Future Claimants' Representative, and the Asbestos PD Future Claimants' Representative shall continue in existence and have standing and capacity to (i) object to any proposed modification of the Plan, (ii) object to or defend the Administrative Expense Claims of Professionals employed by or on behalf of the Debtors or their estates, (iii) participate in any appeals of the Confirmation Order (if applicable), (iv) prepare and prosecute applications for the payment of fees and reimbursement of expenses, and (v) continue any adversary proceeding (but not the Sealed Air Action or the Fresenius Action, each of which shall

119

be dismissed with prejudice as a condition to the Effective Date), claim objection, appeal, or other proceeding that was in progress prior to the Effective Date. Nothing in section (v) of the foregoing sentence shall be deemed to confer standing and capacity on the Unsecured Creditors' Committee, the Asbestos PI Committee, the Equity Committee, the Asbestos PI Future Claimants' Representative, or the Asbestos PD Future Claimants' Representative to provide services or take action in connection with an adversary proceeding, claim objection, appeal or other proceeding that was in progress prior to the Effective Date where such services are for the benefit of an individual creditor or creditors and do not serve the direct interests of the creditor or equity interest class which such Entity is appointed to represent. The Reorganized Debtors shall pay the reasonable fees and expenses incurred by the Unsecured Creditors' Committee, the Asbestos PI Committee, Equity Committee, the Asbestos PI Future Claimants' Representative, and the Asbestos PD Future Claimants' Representative relating to any post-Effective Date activities authorized hereunder without further order of the Bankruptcy Court. Nothing in this Section 11.8 shall purport to limit or otherwise affect the rights of the United States Trustee under section 502 of the Bankruptcy Code or otherwise to object to Claims or requests for allowances of Administrative Expense Claims.

## 11.9    EXCULPATION

None of the Reorganized Debtors, the Debtors, the Non-Debtor Affiliates, the Sealed Air Indemnified Parties, the Fresenius Indemnified Parties, the Asbestos PI Committee, the Asbestos PD Committee, the Unsecured Creditors' Committee, the Equity Committee, the Asbestos PI FCR, the Asbestos PD FCR, or any of their respective Representatives are to have or incur any liability to any Entity for any act or omission in connection with or arising out of the Chapter 11 Cases, including the negotiation of this Plan or the settlements provided in the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement, the pursuit of confirmation of this Plan, the consummation of this Plan or the settlements provided in the Sealed Air Settlement Agreement or Fresenius Settlement Agreement, or the administration of this Plan or the property to be distributed under this Plan so long as, in each case such action, or failure to act, did not constitute gross negligence or willful misconduct. In all respects, they will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence or willful misconduct. This section is not intended to preclude a governmental entity from enforcing its police and regulatory powers.

## 11.10    TITLE TO ASSETS; DISCHARGE OF LIABILITIES

Upon the transfer of the Asbestos PI Trust Assets into the Asbestos PI Trust, such Asbestos PI Trust Assets shall be indefeasibly vested in the Asbestos PI Trust free and clear of all claims, Equity Interests, Encumbrances, and other interests of any Entity. Notwithstanding the foregoing, or anything else in this Plan to the contrary, the Asbestos PI Trust Assets shall remain subject to any and all restrictions imposed by applicable securities laws and the Sealed Air Common Stock transferred to the Asbestos PI Trust shall remain subject to any and all restrictions imposed by the Sealed Air Settlement Agreement (including any rights of Sealed Air under the Sealed Air Settlement Agreement) and applicable securities laws. Upon the transfer of the Asbestos PD Trust Assets into the Asbestos PD Trust, such Asbestos PD Trust Assets shall be indefeasibly vested in the Asbestos PD Trust free and clear of all claims, equity interests,

120

Encumbrances, and other interests of any Entity. Except as otherwise provided in this Plan and in accordance with Bankruptcy Code § 1123(b)(3), on the Effective Date, title to all of the Debtors' assets and properties and interests in property, including the Retained Causes of Action, shall vest in the Reorganized Debtors free and clear of all claims, Equity Interests, Encumbrances, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtors.

## 11.11 ENTIRE AGREEMENT

Except as otherwise indicated, the Plan and the Plan Documents supersede all prior negotiations, promises, covenants, agreements, understandings, and representations on such subjects, including all plans of reorganization previously filed by any party in interest with the Court in these Chapter 11 Cases.

## 11.12 NOTICES

Any notices, statements, requests, and demands required or permitted to be provided under this Plan, in order to be effective, must be: (i) in writing (including by facsimile transmission), and unless otherwise expressly provided herein, shall be deemed to have been duly given or made (A) if personally delivered or if delivered by facsimile or courier service, when actually received by the Entity to whom notice is sent, (B) if deposited with the United States Postal Service (but only when actually received), at the close of business on the third business day following the day when placed in the mail, postage prepaid, certified or registered with return receipt requested, or (C) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid) (but only when actually received) and (ii) addressed to the appropriate Entity or Entities to whom such notice, statement, request or demand is directed (and, if required, its counsel), at the address of such Entity or Entities set forth below (or at such other address as such Entity may designate from time to time by written notice to all other Entities listed below in accordance with this Section 11.12):

| | |
|---|---|
| **If to the Debtors:** | W. R. Grace & Co.<br>7500 Grace Drive<br>Columbia, MD 21044<br>Attn: General Counsel<br>Telephone:    (410) 531-4000<br>Facsimile:    (410) 531-4545 |
| **With a copy to:** | Kirkland & Ellis LLP<br>Citigroup Center<br>153 East 53rd Street<br>New York, NY 10022<br>Attn:    David M. Bernick, P.C./Theodore L. Freedman<br>Telephone    (212) 446-4800<br>Facsimile:    (212) 446-4900<br><br>and |

121

The Law Offices of Janet S. Baer, P.C.
70 W. Madison St.
Suite 2100
Chicago, IL 60602
Attn: Janet S. Baer
Telephone: 312-641-2162

and

Pachulski, Stang, Ziehl, & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Attn: Laura Davis Jones/James E. O'Neill
Telephone :    (302) 652-4100
Facsimile:     (302) 652-4400

**If to the Asbestos PI Committee:**

Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
Attn: Peter Lockwood/Ronald Reinsel
Telephone:    (202) 862-5000
Facsimile:    (202) 862-3301

and

Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152
Attn: Elihu Inselbuch
Telephone:    (212) 319-7125
Facsimile:    (212) 644-6755

**If to the Asbestos PD Committee:**

Bilzin Sumberg Baena Price & Axelrod LLP
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131-5340
Attn: Scott L. Baena/Jay M. Sakalo/Mindy A. Mora
Telephone:    (305) 374-7580
Facsimile:    (305) 374-7593

**If to the Asbestos PI Future Claimants' Representative:**

David T. Austern
3110 Fairview Park Drive

122

Suite 200
Falls Church VA 22042-0683
Telephone:    (703) 205-0835
Facsimile:    (703) 205-6249

**With a copy to:**

Orrick, Herrington & Sutcliffe LLP
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Attention:  Roger Frankel
Telephone: (202) 339-8400
Facsimile: (202) 339-8500

**If to the Asbestos PD Future Claimants' Representative:**

Alexander M. Sanders, Jr.
19 Water Street
Charleston, South Carolina 29401
Telephone: (843) 953-5755
Facsimile: (843) 953-7570

**With a copy to:**

Alan B. Rich
Attorney and Counselor
1401 Elm Street, Suite 4620
Dallas, Texas 75202-3909
Telephone: (214) 744-5100
Facsimile: (214) 744-5101

**If to the Unsecured Creditors' Committee:**

Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY  10038-4982
Attn:    Lewis  Kruger/Arlene  Krieger/Kenneth
Pasquale
Telephone:    (212) 806-5400
Facsimile:    (212) 806-6006

**If to Sealed Air:**

Sealed Air Corporation
200 Riverfront Boulevard
Elmwood Park, NJ 07407
Attn:  General Counsel
Telephone:    (201) 791-7600
Facsimile:    (201) 703-4113

**With a copy to:**

Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY  10036
Attn:  D. J. Baker
Telephone:    (212) 735-3000
Facsimile:    (212) 735-2000

**If to Fresenius:**

Fresenius Medical Care North America
Corporate Headquarters
Corporate Law Department
95 Hayden Avenue
Lexington, MA  02420-9192
Attn:  General Counsel
Telephone:    (781) 402-9000
Facsimile:    (781) 402-9700

**With a copy to:**

McDermott, Will & Emery
227 W. Monroe, Suite 4400
Chicago, IL  60606
Attn:  David S. Rosenbloom
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700

**If to the Equity Committee:**

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY  10036
Attn:  Phillip Bentley
Telephone:    (212) 715-9100
Facsimile:    (212) 715-8000

124

## 11.13  HEADINGS

The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

## 11.14  GOVERNING LAW

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Delaware, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

## 11.15  FILING OF ADDITIONAL DOCUMENTS

On or before the Effective Date, the Plan Proponents shall File with the Court such agreements and other documents, including the Plan Supplement, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

## 11.16  COMPLIANCE WITH TAX REQUIREMENTS

In connection with this Plan, the Debtors, the Reorganized Debtors, the Asbestos PI Trust, and the Asbestos PD Trust will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all Distributions hereunder or under any Plan Document shall be subject to such withholding and reporting requirements, if any.  Notwithstanding any other provision of this Plan, each Entity receiving a Distribution pursuant to this Plan, or any other Plan Document, will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income tax and other obligations, on account of that Distribution.

## 11.17  EXEMPTION FROM TRANSFER TAXES

Pursuant to Bankruptcy Code § 1146(a), the issuance, transfer, or exchange of notes or equity securities under this Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan shall be exempt from all taxes as provided in Bankruptcy Code § 1146(a).

## 11.18  FURTHER ASSURANCES

The Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, the Asbestos Protected Parties, the Asbestos Insurance Entities, the Asbestos PI Trust, the Asbestos PD Trust and all Holders of Plan Claims receiving Distributions under this Plan and all other parties in interest shall, and shall be authorized to, from time to time, prepare, execute, and deliver any agreements or documents and take any other action consistent with the terms of this Plan as may be

necessary to effectuate the provisions and intent of this Plan, with each such Entity to bear its own costs incurred in connection therewith.

## 11.19  FURTHER AUTHORIZATIONS

The Plan Proponents, and, after the Effective Date, the Reorganized Debtors, the Asbestos PI Trust, and the Asbestos PD Trust if and to the extent necessary, may seek such orders, judgments, injunctions, and rulings that any of them deem necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, this Plan, with each such Entity to bear its own costs in connection therewith.


[The remainder of this page has been left blank intentionally]

Respectfully submitted,

**W. R. GRACE & CO. (on behalf of itself and the other Debtors and Debtors In Possession)**

By:    /s/ Mark A. Shelnitz
Name:  Mark A. Shelnitz
Title:   Vice President, General Counsel & Secretary

**OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS**

By:    /s/ Elihu Inselbuch
Name:  Elihu Inselbuch
Title:   Counsel to the Asbestos PI Committee

**ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE**

By:    /s/ Roger Frankel
Name:  David T. Austern by counsel

**OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS**

By:    /s/ R. Ted Weschler
Name:  R. Ted Weschler
Title:    Chairman of the Equity Committee

**Annex I**

Pursuant to Section 7.7(nn) of the Plan, and not by way of limitation of the Sealed Air Settlement Agreement, each of the SA Debtors and the SA Non-Debtors Affiliates shall:

a. use its best efforts to cause each of the Asbestos PI Trust and the Asbestos PD Trust (each, for purposes of this Annex I, a "Trust" and, collectively, the "Trusts") to qualify, and to maintain its status, as a Qualified Settlement Fund (as defined in the Sealed Air Settlement Agreement), *provided, however*, that nothing herein shall in any way be construed as a representation, warranty, or covenant concerning the treatment for federal income tax purposes of the transfer by Cryovac, Inc. of the Cryovac Payment (reduced by the amount of the Asbestos PD Initial Payment) to the Asbestos PI Trust pursuant to Section 7.2.2 of the Plan and the Asbestos PD Initial Payment to the Asbestos PD Trust pursuant to Section 7.3.2 of the Plan and the Confirmation Order,

b. use its best efforts to cause the constitutive document(s) (including the Asbestos PI Trust Agreement and the Asbestos PD Trust Agreement) of each of the Asbestos PI Trust and the Asbestos PD Trust to contain provisions, reasonably satisfactory to Cryovac, Inc., qualifying and maintaining its status as a Qualified Settlement Fund (as defined in the Sealed Air Settlement Agreement) and providing that Cryovac, Inc. or its designee shall be a Transferor (as defined in the Sealed Air Settlement Agreement) to each Trust,

c. promptly provide to Cryovac, Inc. all Material Drafts (as defined in the Sealed Air Settlement Agreement) of each Asbestos PI Trust Agreement, Asbestos PD Trust Agreement and each Trust Document (as defined in the Sealed Air Settlement Agreement) (but excluding or redacting the Asbestos PI TDP and ZAI TDP), *provided, however*, that Cryovac, Inc. shall keep any such Material Draft (as defined in the Sealed Air Settlement Agreement) confidential and shall disclose any such Material Draft (as defined in the Sealed Air Settlement Agreement) only to Sealed Air Corporation, and officers, employees, and advisors of Cryovac, Inc., Sealed Air Corporation, or its Affiliates, and only after such Entity agrees to keep such Material Draft (as defined in the Sealed Air Settlement Agreement) confidential but may disclose to any and all Entities, without limitation of any kind, the tax treatment and any facts that may be relevant to the tax structure of the transactions contemplated by the Sealed Air Settlement Agreement,

d. incorporate promptly, if it is the party drafting such document, or if otherwise, urge the party drafting such document promptly to incorporate, into any such document each provision with respect to the subject matter set forth or referred to in paragraphs II(c)(ix), (x), and (xi), paragraph VI(g), clauses (i)(A) through (C) of paragraph VI(c) of the Sealed Air Settlement Agreement and clauses o. and p. and sub-clauses h(1) through (3) of this Annex I, as the case may be, that are reasonably requested by Cryovac, Inc.,

e. take all Defined Actions (as defined in the Sealed Air Settlement Agreement) required to be taken pursuant to, or that are reasonably requested by Sealed Air Corporation and consistent with the provisions of, paragraphs II(c)(ix), (x), or (xi), or VI(g), of the Sealed Air Settlement Agreement and clauses o. and p. of this Annex I, as the case may be, *provided, however*, that it shall not be required to take a Defined Action (as defined in the

Sealed Air Settlement Agreement) as required pursuant to this clause e. if each of the following four requirements has been previously satisfied (1) it has fully performed all of its obligations set forth in paragraph VI(f) of the Sealed Air Settlement Agreement or clause n. of this Annex I, (2) it has received a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) required or prohibited pursuant to paragraph VI(b) of the Sealed Air Settlement Agreement or clauses e., f. and g. of this Annex I, as the case may be, (3) it has provided a copy of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation, and (4) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement), Sealed Air Corporation has not provided it with a Sealed Air Opinion (as defined in the Sealed Air Settlement Agreement),

f.  be prohibited from taking any Defined Action (as defined in the Sealed Air Settlement Agreement) prohibited from being taken pursuant to, or that is inconsistent with the provisions of, paragraphs II(c)(ix), (x), or (xi), or VI(g), of the Sealed Air Settlement Agreement and clauses o. and p. of this Annex I, *provided, however,* that it shall not be prohibited from taking a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to this clause f. if each of the following four requirements has been previously satisfied (1) it has fully performed all of its obligations set forth in paragraph VI(f) of the Sealed Air Settlement Agreement or clause n. of this Annex I, (2) it has received a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) required or prohibited pursuant to paragraph VI(b) of the Sealed Air Settlement Agreement or clauses e., f. and g. of this Annex I, as the case may be, (3) it has provided a copy of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation, and (4) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement), Sealed Air Corporation has not provided it with a Sealed Air Opinion (as defined in the Sealed Air Settlement Agreement),

g.  use its best efforts not to make any statement in a court document filed in the SA Debtors' Chapter 11 Cases or in any oral statement to the court in the SA Debtors' Chapter 11 Cases that is prohibited by, or inconsistent with the provisions of, paragraphs II(c)(ix), (x), or (xi), or VI(g), of the Sealed Air Settlement Agreement or clauses o. and p. of this Annex I, as the case may be, *provided, however,* that it shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to this paragraph g. if each of the following four requirements has been previously satisfied (1) it has fully performed all of its obligations set forth in paragraph VI(f) of the Sealed Air Settlement or clause n. of this Annex I Agreement, as the case may be, (2) it has received a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) required or prohibited pursuant to this sentence, (3) it has provided a copy of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation, and (4) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion (as defined in the Sealed

Air Settlement Agreement), Sealed Air Corporation has not provided it with a Sealed Air Opinion (as defined in the Sealed Air Settlement Agreement),

h.  promptly notify Cryovac, Inc. and Sealed Air Corporation upon receipt by any of them or any of their Affiliates of any notice of any pending or threatened audit or assessment, suit, litigation, proposed adjustment, deficiency, dispute, administrative or judicial proceeding or other similar Claim (as defined in the Sealed Air Settlement Agreement) involving any of them or any of their Affiliates from any Tax authority or any other Entity challenging (1) the qualification of the Asbestos PI Trust or the Asbestos PD Trust as a Qualified Settlement Fund (as defined in the Sealed Air Settlement Agreement), (2) the qualification of Cryovac, Inc. as a Transferor (as defined in the Sealed Air Settlement Agreement) to the Asbestos PI Trust or the Asbestos PD Trust, (3) the transfer by Cryovac, Inc. of the Cryovac Payment (reduced by the amount of the Asbestos PD Initial Payment) to the Asbestos PI Trust pursuant to Section 7.2.2 of the Plan or the Confirmation Order and the Asbestos PD Initial Payment to the Asbestos PD Trust pursuant to Section 7.3.2 of the Plan or the Confirmation Order as a direct payment by Cryovac, Inc. to the Asbestos PI Trust or the Asbestos PD Trust for Asbestos Claims that constitutes an ordinary and necessary expense of Cryovac, Inc. (for purposes of this Annex I, any such audit or assessment, suit, litigation, proposed adjustment, deficiency, dispute, administrative or judicial proceeding or other similar Claim (as defined in the Sealed Air Settlement Agreement), for purposes of this Annex I a "Tax Claim"),

i.  permit, and cause their respective Affiliates to permit, Cryovac, Inc. and Sealed Air Corporation to participate at their expense in the defense or prosecution of any Tax Claim (including to participate in all discussions with the Tax authorities regarding any Tax Claim and to be allowed to provide affirmative suggestions or comments with respect to any written submissions or communications to the Tax authorities regarding any Tax Claims, which comments and suggestions shall be incorporated into such written submissions or communications with the consent of the SA Debtors, such consent not to be unreasonably withheld),

j.  consult with Cryovac, Inc. and Sealed Air Corporation in connection with the defense or prosecution of any Tax Claim and provide such cooperation and information as Cryovac, Inc. and Sealed Air Corporation shall reasonably request with respect to any Tax Claim,

k.  agree to use its best efforts to attempt to sever any Tax Claim from other issues raised in any audit or assessment, suit, litigation, proposed adjustment, deficiency, dispute, administrative or judicial proceeding or other similar Claim (as defined in the Sealed Air Settlement Agreement) and shall instruct their, and their Affiliates', respective Chief Executive Officer, Chief Financial Officer, and Director of Taxes to deliver, and shall cause each of their Affiliates, to deliver to Cryovac, Inc. and Sealed Air Corporation:

1.  promptly after the receipt of any document received from the IRS relating to a Tax Claim, a copy of such document;

2.  any document delivered to the IRS with respect to a Tax Claim promptly after such document is delivered to the IRS, *provided, however*, that, if such document

3

was prepared in response to a request by the IRS, then prior to the delivery of such document to the IRS, Cryovac, Inc. and Sealed Air Corporation shall be allowed to provide affirmative suggestions or comments with respect to any such document, as provided in paragraph VI(c)(ii) of the Sealed Air Settlement Agreement and clauses i. and j. of this Annex I;

3. at least five days prior to any meeting or conference (whether in person or by teleconference) scheduled with the IRS during which a Tax Claim may be discussed, with written notice of such scheduled meeting or conference, and an opportunity to attend the portions of such meeting or conference during which any Tax Claim is discussed; and

4. with cooperation and information reasonably requested by Cryovac, Inc. or Sealed Air Corporation in connection with any Tax Claim, including, at Cryovac, Inc.'s or Sealed Air Corporation's request, status updates with respect to all Tax Claims.

l. be entitled to redact any document to be provided to Cryovac, Inc. or Sealed Air Corporation in furtherance of the obligations set forth in clause k. of this Annex I to exclude information not pertinent to the Tax Claim,

m. not settle or otherwise dispose of any Tax Claim unless otherwise required by a Final Determination (as defined in the Sealed Air Settlement Agreement),

n. if any of the SA Debtors or the SA Non-Debtor Affiliates has determined that an issue (for the purposes of this Annex I such issue, a "Paragraph VI(f) Issue") may exist with respect to its taking, or the failure to take, a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to paragraph II(c)(ix), (x), or (xi), or VI(b) or VI(g), of the Sealed Air Settlement Agreement or clauses e., f., g., o., and p., of this Annex I, as the case may be, then, prior to delivering a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) in accordance with the provisos set forth in paragraph II(c)(ix), (x), or (xi), VI(b) or VI(g) of the Sealed Air Settlement Agreement, or clauses e., f., g., o., and p., of this Annex I, as the case may be, (1) provide to Sealed Air Corporation, as promptly as practicable, a written notice identifying such Defined Action (as defined in the Sealed Air Settlement Agreement) and describing in detail the Paragraph VI(f) Issue and (2) consult and act (and cause its advisors to, consult and act) in good faith to determine and resolve (i) if such issue relates to a Tax issue, whether, as a result of a Change in Circumstances, there is no "reasonable basis", as defined in IRC section 6662 (or successor provision thereof), for the taking of, or the failure to take, such Defined Action (as defined in the Sealed Air Settlement Agreement) by such Entity or (ii) if such issue relates to an accounting issue, whether, as a result of a Change in Circumstances, the taking, or the failure to take, such Defined Action (as defined in the Sealed Air Settlement Agreement) is inconsistent with generally accepted accounting principles.    For purposes of this Annex I, "Change in Circumstances" shall mean (i) for U.S. federal income tax purposes, (x) any amendment to the IRC or the final or temporary regulations promulgated under the IRC, (y) a decision by any federal court, or (z) a Revenue Ruling, Notice, Revenue Procedure, or

4

Announcement, which amendment is enacted, promulgated, issued, or announced, or which decision, Revenue Ruling, Notice, Revenue Procedure, or Announcement is issued or announced, in each case, after the Effective Date, and (ii) for financial accounting purposes, any amendment to or change in generally accepted accounting principles, which amendment is issued or announced or, which change occurs, in each case, after the Effective Date.

o.   unless otherwise required by a Final Determination (as defined in the Sealed Air Settlement Agreement), (1) file all Tax Returns required to be filed by such Entity, if any, consistent with the provisions of paragraph II(c)(ix) of the Sealed Air Settlement Agreement and take all other Defined Actions (as defined in the Sealed Air Settlement Agreement) that are reasonably requested by Sealed Air Corporation and consistent with the provisions of paragraph II(c)(ix) of the Sealed Air Settlement Agreement, and (2) be prohibited, from taking any Defined Action (as defined in the Sealed Air Settlement Agreement) that may result in the disqualification of the Asbestos PI Trust or the Asbestos PD Trust as a Qualified Settlement Fund (as such term is defined in the Sealed Air Settlement Agreement) or be inconsistent with Cryovac, Inc. being treated as a Transferor (as defined in the Sealed Air Settlement Agreement) of the Cryovac Payment (reduced by the amount of the Asbestos PD Initial Payment) directly to the Asbestos PI Trust pursuant to Section 7.2.2 of the Plan and the Confirmation Order and the Asbestos PD Initial Payment directly to the Asbestos PD Trust pursuant to Section 7.3.2 of the Plan and the Confirmation Order; *provided, however*, that it shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to this clause o. if each of the following four requirements has been previously satisfied: (1) it has fully performed all of its obligations set forth in paragraph VI(f) of the Sealed Air Settlement Agreement and clause n. of this Annex I, as the case may be, (2) it has received a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) required or prohibited pursuant to this clause o., (3) it has provided a copy of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation, and (4) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement), Sealed Air Corporation has not provided it with a Sealed Air Opinion (as defined in the Sealed Air Settlement Agreement),

p.   treat for all Tax purposes any and all payments by Cryovac, Inc. of the Cryovac Payment (reduced by the amount of the Asbestos PD Initial Payment) to the Asbestos PI Trust pursuant to Section 7.2.2 of the Plan and the Confirmation Order and the Asbestos PD Initial Payment to the Asbestos PD Trust pursuant to Section 7.3.2 of the Plan and the Confirmation Order as a direct payment by Cryovac, Inc. to the Asbestos PI Trust or the Asbestos PD Trust for Asbestos Claims that constitutes an ordinary and necessary expense of Cryovac, Inc., and, unless otherwise required by a Final Determination (as defined in the Sealed Air Settlement Agreement):

   1.   for financial accounting or any other regulatory purpose, be prohibited from treating any payment by Cryovac, Inc. to the Asbestos PI Trust or the Asbestos PD Trust pursuant to the Plan or the Confirmation Order as a payment by

Cryovac, Inc. to any of the SA Debtors or SA Non-Debtor Affiliates, or as a payment by any SA Debtor or SA Non-Debtor Affiliate to any Entity (including to the Asbestos PI Trust or the Asbestos PD Trust) (or treating such payment as, or resulting in, an expense or deduction of any Debtor or Non-Debtor Affiliate),

2. for Tax purposes, be prohibited from claiming that any payment by Cryovac, Inc. to the Asbestos PI Trust or the Asbestos PD Trust pursuant to the Plan or the Confirmation Order results in or gives rise (directly or indirectly) to the accrual or allowance of a deduction or expense, or income to, or any other transfer of any type to, any SA Debtor or SA Non-Debtor Affiliate,

3. take all Defined Actions (as defined in the Sealed Air Settlement Agreement) that are reasonably requested by Sealed Air Corporation and consistent with the provisions of this clause p.,

4. not take any position inconsistent with the foregoing on any Tax Return or with any Tax authority, and

5. not make any statement in any public or regulatory filing or release or otherwise, or take any other Defined Action (as defined in the Sealed Air Settlement Agreement), that is inconsistent with the obligations of such Entity pursuant to this clause p.,

*provided, however*, that with respect to sub-clauses p.3 and p.5 above, it shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to this clause p. if each of the following four requirements has been previously satisfied: (1) it has fully performed all of its obligations set forth in paragraph VI(f) of the Sealed Air Settlement Agreement and clause n. of this Annex 1, as the case may be, (2) it has received a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) required or prohibited pursuant to this clause p., (3) it has provided a copy of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation, and (4) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement), Sealed Air Corporation has not provided it with a Sealed Air Opinion (as defined in the Sealed Air Settlement Agreement),

q. be entitled to prepare and execute (but not file) a Protective Claim (as defined in the Sealed Air Settlement Agreement and, for purposes of this Annex I, with respect to each of the SA Debtors and the SA Non-Debtors Affiliates, a "Grace Protective Claim"), (which filing shall be effected only by Cryovac, Inc. pursuant to, and in accordance with, the provisions of the Settlement Agreement) for the taxable year of the SA Debtors in which the transfers by Cryovac, Inc. of the Cryovac Payment (reduced by the amount of the Asbestos PD Initial Payment) to the Asbestos PI Trust pursuant to Section 7.2.2 of the Plan or the Confirmation Order and the Asbestos PD Initial Payment to the Asbestos PD Trust pursuant to Section 7.3.2 of the Plan or the Confirmation Order (for purposes of

this Annex I, the "Transfer") are made, or for any other prior (solely with respect to a carryback from the taxable year of the Transfer) or subsequent taxable year in which the Tax Benefits (as defined in the Sealed Air Settlement Agreement) realized as a result of such Transfer may be claimed by the SA Debtors (for purposes of this Annex I any such taxable year, a "Relevant Tax Year"), and require Cryovac, Inc. to file such Grace Protective Claim with the IRS or other governmental authority for and on behalf of the SA Debtors; provided, however, that a Grace Protective Claim shall not be required to be filed by Cryovac, Inc. at any time prior to 15 days before the expiration (taking into account all extensions thereof) of the applicable statute of limitations for the SA Debtors to file an amended return ("SOL") for the Relevant Tax Year, and provided further that notwithstanding anything to the contrary set forth in paragraph VI(h) of the Sealed Air Settlement Agreement and clauses q., r., s., t. and u. of this Annex I, the Debtors may prepare and execute a Grace Protective Claim, and require Cryovac, Inc. to file such Grace protective Claim with the IRS or other governmental authority for a Relevant Tax Year, only if each of the following requirements has been previously satisfied:

1. the SA Debtors have granted each extension (and each further extension) to the applicable SOL for such Relevant Tax Year that has been requested by the IRS,

2. at the time of each such request by the IRS referred to in sub-clause p.1, above, to extend (or further extend) the applicable SOL for such Relevant Tax Year, the SA Debtors shall have used their best efforts to extend (and cause the IRS to agree to extend) such SOL for a period of two (2) years or longer;

3. in the event that the IRS has not requested the SA Debtors to extend (or further extend) the applicable SOL for such Relevant Tax Year prior to 180 days prior to the end of such SOL, the SA Debtors shall have used their best efforts to extend (and cause the IRS to agree to extend) such SOL for a period of two (2) years or longer;

4. the SA Debtors shall have provided to Cryovac, Inc. a written statement by their Chief Financial Officer that each of the requirements set forth immediately above in sub- clauses p.1, 2, and 3 has been satisfied in all respects; and

r.  at the request of Sealed Air Corporation, prepare and execute a Grace Protective Claim to be filed by Sealed Air Corporation pursuant to paragraph VI(h)(ii) of the Sealed Air Settlement Agreement or this clause r.

s.  pay to Cryovac, Inc. in immediately available funds fifty (50) percent of the amount of any Tax Benefit (as defined in the Sealed Air Settlement Agreement) realized as a result of the Transfer no later than ten (10) days after such Tax Benefit (as defined in the Sealed Air Settlement Agreement) has been deemed to have been Actually Realized (as defined in and determined pursuant to the Sealed Air Settlement Agreement),

t.  if requested by Sealed Air Corporation, use their best efforts to extend (and cause the IRS to agree to extend) the applicable SOL for any Relevant Tax Year,

u.  include in Part II of Form 1120X (or applicable section of any similar state or local tax form) of any Grace Protective Claim the language set forth on Exhibit 7 of the Sealed Air Settlement Agreement and only such other language as may be mutually agreed to by the SA Debtors and Cryovac, Inc. (or Sealed Air Corporation),

v.  withdraw all Grace Protective Claims upon a Cryovac Final Determination (as defined in the Sealed Air Settlement Agreement) that the Transfer results in a Tax Benefit (as defined in the Sealed Air Settlement Agreement) to Cryovac, Inc. (or the affiliated group filing a consolidated Tax Return of which Sealed Air Corporation is the common parent), and provide a written statement to Cryovac, Inc. signed by the Chief Financial Officer of the SA Debtors stating that all Grace Protective Claims have been withdrawn,

w.  upon notice by Cryovac, Inc. as provided in paragraph VI(i) of the Sealed Air Settlement Agreement, as the case may be, or if otherwise requested in writing by Cryovac, Inc., use reasonable best efforts to pursue all Grace Protective Claims and keep Cryovac, Inc. fully informed of, and permit Cryovac, Inc. to participate in, all developments with respect to all such Grace Protective Claims in a manner consistent with the provisions set forth in paragraphs VI(c)(ii) through (vi) of the Sealed Air Settlement Agreement and clauses i., j., k., l., and m. of this Annex I, as the case may be,

x.  no later than ten (10) days after the SA Debtors shall have Actually Realized (as defined in the Sealed Air Settlement Agreement) a Tax Benefit (as defined in the Sealed Air Settlement Agreement) as a result of the Transfer, provide Cryovac, Inc. with a detailed statement (for the purposes of this Annex I, the "Tax Benefit Statement") specifying (1) the amount of the Tax Benefit (as defined in the Sealed Air Settlement Agreement) that was Actually Realized (as defined in the Sealed Air Settlement Agreement) by the SA Debtors and any information relevant to the computation thereof (including full access to any applicable Tax Return, non-proprietary work papers and other materials and information of the SA Debtors and their accountants), (2) the date that such Tax Benefit (as defined in the Sealed Air Settlement Agreement) was Actually Realized (as defined in the Sealed Air Settlement Agreement), (3) the amount of deduction, loss, credit or exclusion initially claimed by the SA Debtors as a result of the Transfer (for purposes of this Annex I, the "Initial Tax Benefit Item"), (4) the amount of the Initial Tax Benefit Item that is utilized by the SA Debtors to create such Tax Benefit (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement) (including as a result of all or a portion of the Initial Tax Benefit Item being carried back or forward), and (5) the amount of the Initial Tax Benefit Item not yet utilized by the SA Debtors (to create a Tax Benefit (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement)) that will be carried forward,

y.  no later than 30 days after the SA Debtors have filed their U.S. federal consolidated income Tax Return for each year beginning the year that includes the Tax Benefit Start Date (as defined in the Sealed Air Settlement Agreement), deliver to Cryovac, Inc. an annual statement (for purposes of this Annex I, the "CFO Annual Statement"), signed by their Chief Financial Officer under penalties of perjury, that sets forth (1) the amount of the Tax Benefits (as defined in the Sealed Air Settlement Agreement) Actually Realized

8

(as defined in the Sealed Air Settlement Agreement), if any, by the SA Debtors as a result of the Transfer during the preceding taxable year (including, without limitation, as a result of an amended return for any taxable year, a loss or deduction being utilized for such preceding taxable year, a loss or credit carryback from such preceding taxable year, or a loss or credit carryforward to such preceding taxable year), (2) the date (or dates) such Tax Benefits were Actually Realized (as defined in the Sealed Air Settlement Agreement) during such taxable year, (3) the amount of the Initial Tax Benefit Item, (4) the amount of the Initial Tax Benefit Item that is utilized by the SA Debtors to create such Tax Benefit (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement), and (5) the amount of the Initial Tax Benefit Item not yet utilized by the SA Debtors (to create a Tax Benefit (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement)) that will be carried forward,

z.  provide Cryovac, Inc. with all information relevant to the computation of such Tax Benefits (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement) by the SA Debtors set forth in clause y.1 of this Annex 1 (including full access to any applicable Tax Return, the non-proprietary work papers, and other materials and information of the SA Debtors and their accountants),

aa. within fifteen (15) days after the SA Debtors' receipt of a Tax Benefit Dispute Notice (as defined in the Sealed Air Settlement Agreement), unless the matters in the Tax Benefit Dispute Notice (as defined in the Sealed Air Settlement Agreement) have otherwise been resolved by mutual agreement of the parties, select, jointly with Cryovac, Inc., a nationally-recognized independent certified public accountant (for purposes of this Annex I, the "Tax Benefit Accountant"); *provided, however*, if the SA Debtors and Cryovac, Inc. are unable to agree upon the Tax Benefit Accountant within such fifteen (15) day period, then the SA Debtors and Cryovac, Inc. shall each select a nationally-recognized independent certified public accountant which shall then jointly choose the Tax Benefit Accountant within fifteen (15) days thereafter, and the terms of the engagement of such Tax Benefit Accountant shall require the Tax Benefit Accountant to comply with paragraph VI(j)(iv) of the Sealed Air Settlement Agreement,

bb. pay to Cryovac, Inc. in immediately available funds no later than five (5) days after delivery of the Tax Benefit Report (as defined in the Sealed Air Settlement Agreement) to the SA Debtors and Cryovac, Inc. the sum of (x) the excess, if any, of fifty (50) percent of the amount of the Tax Benefit (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement) set forth in the Tax Benefit Report (as defined in the Sealed Air Settlement Agreement) over the amount previously paid, if any, by the SA Debtors to Cryovac, Inc. with respect thereto and (y) interest with respect to any such excess, as provided for in paragraph VI(k) of the Sealed Air Settlement Agreement,

cc. if a loss, deduction, credit or exclusion that resulted in Tax Benefit that was Actually Realized (as defined in the Sealed Air Settlement Agreement) by the SA Debtors is later denied by a Taxing authority by (x) a decision, decree or other order by a court of

9

competent jurisdiction, which has become final and unappealable or (y) any other means (including a closing agreement or accepted offer in compromise under section 7121 or 7122 of the Internal Revenue Code) if Cryovac, Inc. has consented to such other means, which consent shall not be unreasonably withheld or delayed, provide (1) a written statement, signed under penalties of perjury by the Chief Financial Officer of the SA Debtors, that states (i) the amount of such loss, deduction, credit or exclusion that was denied, (ii) the amount of the Tax Benefits (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement) that was initially determined and paid by the SA Debtors to Cryovac, Inc. for such taxable period, and (iii) the revised amount of the Tax Benefit (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement) for such taxable period taking into account the denial of such loss, deduction, credit or exclusion, and (2) provide to Cryovac, Inc. any information relevant to the computation of such initial and revised amount of the Tax Benefits (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement) by the SA Debtors (including full access to any applicable Tax Return, the non-proprietary work papers, and other materials and information of the SA Debtors and their accountants), and

dd. perform all other actions required, and refrain from taking any other activities precluded, by the Sealed Air Settlement Agreement.

## Annex II

Pursuant to Section 7.7(oo) of the Plan, and not by way of limitation of the Sealed Air Settlement Agreement, unless indicated otherwise:

a.  each of the Plaintiffs, the Asbestos PI Trust and the Asbestos PD Trust shall, unless otherwise required by a Final Determination, (1) file all Tax Returns required to be filed by it, if any, consistent with the provisions of this clause a. and shall take all other Defined Actions (as defined in the Sealed Air Settlement Agreement) that are reasonably requested by Sealed Air Corporation and consistent with the provisions of this clause a., and (2) be prohibited from taking any Defined Action (as defined in the Sealed Air Settlement Agreement) that may result in the disqualification of the Asbestos PI Trust or the Asbestos PD Trust as a Qualified Settlement Fund (as defined in the Sealed Air Settlement Agreement) or be inconsistent with Cryovac, Inc. being treated as a "transferor" (as defined under Treasury Regulations section 1.468B-1(d)) (for purposes of this Annex II the "Transferor") of the Cryovac Payment (reduced by the amount of the Asbestos PD Initial Payment) directly to the Asbestos PI Trust pursuant to Section 7.2.2 of the Plan and the Confirmation Order and the Asbestos PD Initial Payment directly to the Asbestos PD Trust pursuant to Section 7.3.2 of the Plan and the Confirmation Order, provided, however, that it shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to this clause a. if each of the following four requirements has been previously satisfied (i) it has fully performed all of its obligations set forth in paragraph VI(f) of the Sealed Air Settlement Agreement, (ii) it has received a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) required or prohibited pursuant to this clause a., (iii) it has provided a copy of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation, and (iv) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement), Sealed Air Corporation has not provided it with a Sealed Air Opinion (as defined in the Sealed Air Settlement Agreement),

b.  the Asbestos PI Trust and the Asbestos PD Trust shall, unless otherwise required by a Final Determination (as defined in the Sealed Air Settlement Agreement), treat for all Tax purposes any and all payments by Cryovac Inc. pursuant to Sections 7.2.2 and 7.2.3 of the Plan and the Confirmation Order, as a direct payment by Cryovac, Inc. to the Asbestos PI Trust or the Asbestos PD Trust, as applicable, for Asbestos Claims that constitutes an ordinary and necessary expense of Cryovac, Inc, and each of the Plaintiffs, the Asbestos PI Trust and the Asbestos PD Trust shall, unless otherwise required by a Final Determination (as defined in the Sealed Air Settlement Agreement): (1) be prohibited from taking any Defined Action (as defined in the Sealed Air Settlement Agreement) that is inconsistent with the foregoing provisions of this clause b., and (2) take all Defined Actions (as defined in the Sealed Air Settlement Agreement) that are

reasonably requested by Sealed Air Corporation and consistent with the provisions of this clause b.; provided, however, that it shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to sub-clauses (1) and (2) of this clause b. if each of the following four requirements has been previously satisfied (i) it has fully performed all of its obligations set forth in paragraph VI(f) of the Sealed Air Settlement Agreement, (ii) it has received a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) required or prohibited pursuant to this clause b., (iii) it has provided a copy of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation, and (iv) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement), Sealed Air Corporation has not provided it with a Sealed Air Opinion (as defined in the Sealed Air Settlement Agreement),

c.    if it has determined that an issue (for the purposes of this Annex II such issue, a "Paragraph VI(f) Issue") may exist with respect to its taking, or the failure to take, a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to paragraph II(c)(ix) or (x), of the Sealed Air Settlement Agreement or clauses a. and b., of this Annex II, as the case may be, then, prior to delivering a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) in accordance with the provisos set forth in paragraph II(c)(ix) or (x) of the Sealed Air Settlement Agreement, or clauses a. and b., of this Annex II, as the case may be, each of the Plaintiffs, the Asbestos PI Trust and the Asbestos PD Trust, as the case may be, shall (1) provide to Sealed Air Corporation, as promptly as practicable, a written notice identifying such Defined Action (as defined in the Sealed Air Settlement Agreement) and describing in detail the Paragraph VI(f) Issue and (2) consult and act (and cause its advisors (including accountants and tax attorneys, as the case may be) to, consult and act) in good faith to determine and resolve (i) if such issue relates to a Tax issue, whether, as a result of a Change in Circumstances (as defined in the Sealed Air Settlement Agreement), there is no "reasonable basis", as defined in IRC section 6662 (or successor provision thereof), for the taking of, or the failure to take, such Defined Action (as defined in the Sealed Air Settlement Agreement) by such Entity or (ii) if such issue relates to an accounting issue, whether, as a result of a Change in Circumstances, the taking, or the failure to take, such Defined Action (as defined in the Sealed Air Settlement Agreement) is inconsistent with generally accepted accounting principles, and

d.    perform all other actions required, and refrain from taking any other activities precluded, by the Sealed Air Settlement Agreement.

2