# **EXHIBIT E**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.,** *et al.* | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |
| | ) | |

**FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF
THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL., THE OFFICIAL
COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI
FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS ~~DATED FEBRUARY 27,~~ AS MODIFIED THROUGH
DECEMBER 16, 2009**

David M. Bernick, P.C.
Theodore L. Freedman
Deanna D. Boll
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022
Telephone: (212) 446-4800

**Janet S. Baer, P.C.**
**THE LAW OFFICES OF JANET S. BAER,**
**P.C.**
**70 W. Madison St.**
**Suite 2100**
**Chicago, IL 60602**
**Telephone: 312-641-2162**

Laura Davis Jones (#2436)
James E. O'Neill (#4042)
Timothy Cairns (#4228)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100

*Counsel for the Debtors and Debtors in Possession*

Roger Frankel
Richard H. Wyron
Debra L. Felder
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, NW
Washington, DC 20005-1706
Telephone: (202) 339-8400

John C. Phillips, Jr. (#110)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
Telephone: (302) 655-4200

*Counsel for David T. Austern,*
*Asbestos PI Future Claimants' Representative*

Elihu Inselbuch
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone: (212) 319-7125

Peter Van N. Lockwood
Ronald Reinsel
Jeffrey Liesemer
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, NW
Washington, DC 20005
Telephone: (202) 862-5000

Marla R. Eskin (#2989)
Mark T. Hurford (#3299)
CAMPBELL & LEVINE, LLC
800 King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900

*Counsel for the Official Committee of*
*Asbestos Personal Injury Claimants*

Philip Bentley
Douglas Mannal
KRAMER LEVIN NAFTALIS & FRANKEL
LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100

Teresa K.D. Currier (#3080)
BUCHANAN INGERSOLL & ROONEY PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801
Telephone: (302) 552-4200

*Counsel for the Official Committee of Equity*
*Security Holders*

ii

## TABLE OF CONTENTS

Page

ARTICLE 1 DEFINITIONS, CONSTRUCTION OF TERMS, EXHIBITS AND
    ANCILLARY DOCUMENTS ..................................................................2

**1.1   DEFINED TERMS** ....................................................................2

**1.2   OTHER TERMS/INTERPRETATION** ...................................~~40~~**41**

**1.3   THE PLAN DOCUMENTS**..........................................................42

**1.4   ANCILLARY DOCUMENTS** ......................................................42

ARTICLE 2 PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES
    AND PRIORITY TAX CLAIMS................................................42

**2.1   UNCLASSIFIED CLAIMS** ........................................................42

    2.1.1   PAYMENT OF ALLOWED ADMINISTRATIVE EXPENSE
            CLAIMS .....................................................................~~42~~**43**

    2.1.2   PRIORITY TAX CLAIMS .............................................~~43~~**44**

ARTICLE 3 CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
    INTERESTS .....................................................................44

**3.1   SUMMARY**...........................................................................44

    3.1.1   Class 1. Priority Claims ............................................45

    3.1.2   Class 2. Secured Claims ...........................................45

    3.1.3   Class 3. Employee Benefit Claims ............................46

    3.1.4   Class 4. Workers' Compensation Claims...................46

    3.1.5   Class 5. Intercompany Claims ..................................47

    3.1.6   Class 6. Asbestos PI Claims .....................................47

    3.1.7   Class 7. Asbestos PD Claims....................................48

    3.1.8   Class 8. CDN ZAI PD Claims ..................................50

    3.1.9   Class 9. General Unsecured Claims .....................~~50~~**51**

    3.1.10  Class 10. Equity Interests in the Parent.................~~54~~**56**

    3.1.11  Class 11. Equity Interests in the Debtors other than the Parent ..........~~55~~**56**

ARTICLE 4 MODIFICATION OR WITHDRAWAL OF THIS PLAN ................................~~55~~**57**

**4.1   MODIFICATION OF THE PLAN; AMENDMENT OF PLAN
        DOCUMENTS** ....................................................................~~55~~**57**

    4.1.1   Modification of the Plan...........................................~~55~~**57**

    4.1.2   Post-Effective Date Amendment of Other Plan Documents ................~~56~~**57**

**4.2   WITHDRAWAL OF THIS PLAN**..............................................~~56~~**58**

i

TABLE OF CONTENTS
(continued)

Page

4.2.1 Right to Withdraw this Plan ....................................................... ~~56~~**58**

4.2.2 Effect of Withdrawal ................................................................. ~~56~~**58**

ARTICLE 5 PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS AND
ASBESTOS CLAIMS GENERALLY ....................................................... ~~56~~**58**

**5.1 OBJECTION TO CLAIMS (OTHER THAN ASBESTOS PI
CLAIMS, ASBESTOS PD CLAIMS, AND CDN ZAI PD CLAIMS);
PROSECUTION OF DISPUTED CLAIMS ................................................. ~~57~~58**

**5.2 RESOLUTION OF ASBESTOS PI CLAIMS ........................................... ~~57~~59**

**5.3 RESOLUTION OF ASBESTOS PD CLAIMS ........................................... ~~57~~59**

**5.4 RESOLUTION OF CDN ZAI PD CLAIMS ............................................. ~~58~~59**

ARTICLE 6 ACCEPTANCE OR REJECTION OF THIS PLAN ........................................... ~~58~~**59**

**6.1 IMPAIRED CLASSES TO VOTE ........................................................... ~~58~~59**

**6.2 ACCEPTANCE BY IMPAIRED CLASSES OF CLAIMS ........................ ~~58~~59**

**6.3 PRESUMED ACCEPTANCE OF THIS PLAN ........................................... ~~58~~60**

**6.4 ACCEPTANCE PURSUANT TO SECTION 524(G) OF THE
BANKRUPTCY CODE. ........................................................................... ~~58~~60**

**6.5 NONCONSENSUAL CONFIRMATION ................................................. ~~58~~60**

6.5.1 Cram Down ................................................................................. ~~58~~**60**

6.5.2 General Reservation of Rights .................................................... ~~59~~**60**

ARTICLE 7 IMPLEMENTATION OF THIS PLAN .......................................................... ~~59~~**61**

**7.1 CORPORATE GOVERNANCE ............................................................... ~~59~~61**

7.1.1 Amendment of Certificates of Incorporation of the Debtors ................ ~~59~~**61**

7.1.2 Amendment of By-Laws of the Parent .......................................... ~~60~~**61**

7.1.3 Precedence of Share Issuance Obligations .................................... ~~60~~**61**

7.1.4 Warrants ..................................................................................... ~~60~~**62**

**7.2 THE ASBESTOS PI TRUST ................................................................. ~~61~~63**

7.2.1 Creation of the Asbestos PI Trust ............................................... ~~61~~**63**

7.2.2 Funding of the Asbestos PI Trust ................................................ ~~62~~**63**

7.2.3 Transfer of Claims and Demands to the Asbestos PI Trust .................. ~~63~~**65**

7.2.4 Assignment and Enforcement of Asbestos PI Trust Causes of
Action ......................................................................................... ~~63~~**65**

7.2.5 Appointment and Termination of Asbestos PI Trustees ...................... ~~64~~**65**

ii

TABLE OF CONTENTS
(continued)

**Page**

|  | 7.2.6 | Creation and Termination of the Asbestos PI TAC | ~~64~~**65** |
|---|---|---|---|
|  | 7.2.7 | Cooperation Agreement | ~~64~~**66** |
|  | 7.2.8 | Institution and Maintenance of Legal and other Proceedings | ~~64~~**66** |
| **7.3** | | **THE ASBESTOS PD TRUST** | ~~64~~**66** |
|  | 7.3.1 | Creation of the Asbestos PD Trust | ~~64~~**66** |
|  | 7.3.2 | Funding of the Asbestos PD Trust | ~~65~~**67** |
|  | 7.3.3 | Transfer of Claims and Demands to the Asbestos PD Trust | ~~66~~**67** |
|  | 7.3.4 | Assignment and Enforcement of Asbestos PD Trust Causes of Action | ~~66~~**68** |
|  | 7.3.5 | Appointment and Termination of Asbestos PD Trustees | ~~66~~**68** |
|  | 7.3.6 | Creation and Termination of the Zonolite Attic Insulation TAC | ~~67~~**68** |
| **7.4** | | **PAYMENTS AND DISTRIBUTIONS UNDER THIS PLAN** | ~~67~~**69** |
|  | 7.4.1 | Asbestos PI Trust Payments, Asbestos PD Trust Payments and Plan Distributions | ~~67~~**69** |
|  | 7.4.2 | Timing of Plan Distributions | ~~68~~**69** |
| **7.5** | | **DELIVERY OF DISTRIBUTIONS AND UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS.** | ~~68~~**70** |
|  | 7.5.1 | Delivery by the Reorganized Debtors of Distributions in General | ~~68~~**70** |
|  | 7.5.2 | Undeliverable Distributions by the Reorganized Debtors | ~~68~~**70** |
| **7.6** | | **PAYMENTS UNDER THIS PLAN** | ~~69~~**70** |
|  | 7.6.1 | Manner of Cash Payments under this Plan | ~~69~~**70** |
|  | 7.6.2 | Fractional Payments under this Plan | ~~69~~**70** |
| **7.7** | | **CONDITIONS TO OCCURRENCE OF THE CONFIRMATION DATE** | ~~69~~**71** |
| **7.8** | | **CONDITIONS TO OCCURRENCE OF THE EFFECTIVE DATE** | ~~81~~**83** |
| **7.9** | | **MANAGEMENT OF THE REORGANIZED DEBTORS** | ~~85~~**86** |
| **7.10** | | **CORPORATE ACTION** | ~~85~~**86** |
| **7.11** | | **EFFECTUATING DOCUMENTS AND FURTHER TRANSACTIONS** | ~~85~~**87** |
| **7.12** | | **ALLOCATION OF PLAN DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST** | ~~85~~**87** |
| **7.13** | | **NO SUCCESSOR LIABILITY** | ~~85~~**87** |

iii

TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| **7.14** | **DEEMED CONSOLIDATION OF THE DEBTORS FOR PLAN PURPOSES ONLY**......................................................... | 8688 |
| **7.15** | **INSURANCE NEUTRALITY**.......................................................... | 8788 |
| **ARTICLE 8** | INJUNCTIONS, RELEASES & DISCHARGE.................................... | 8890 |
| **8.1** | **DISCHARGE**............................................................................. | 8890 |
| | 8.1.1 Discharge of the Debtors and Related Discharge Injunction .............. | 8890 |
| | 8.1.2 Discharge of Liabilities to Holders of Asbestos PI Claims................. | 8990 |
| | 8.1.3 Discharge of Liabilities to Holders of Asbestos PD Claims ............... | 8991 |
| | 8.1.4 Discharge of Liabilities to Holders of CDN ZAI PD Claims.............. | 8991 |
| | 8.1.5 Disallowed Claims and Disallowed Equity Interests ........................ | 8991 |
| | 8.1.6 Non-Dischargeable ERISA Liability................................................. | 9091 |
| **8.2** | **THE ASBESTOS PI CHANNELING INJUNCTION** .................................. | 9092 |
| | 8.2.1 Asbestos PI Channeling Injunction .................................................. | 9092 |
| | 8.2.2 Reservations from Asbestos PI Channeling Injunction....................... | 9193 |
| **8.3** | **THE ASBESTOS PD CHANNELING INJUNCTION**................................ | 9395 |
| | 8.3.1 Asbestos PD Channeling Injunction.................................................. | 9395 |
| | 8.3.2 Reservations from Asbestos PD Channeling Injunction ..................... | 9496 |
| **8.4** | **ASBESTOS INSURANCE ENTITY INJUNCTION** .................................. | 9697 |
| | 8.4.1 Asbestos Insurance Entity Injunction ................................................ | 9698 |
| **8.5** | **SUCCESSOR CLAIMS INJUNCTION**.................................................. | 97101 |
| | 8.5.1 Injunction............................................................................... | 97101 |
| | **8.5.2 Reservations from the Injunction for the Benefit of Holders of Grace-Related Claims** ......................................................... | 102 |
| **8.6** | **INJUNCTIONS AND RELEASES RELATED TO THE SEALED AIR INDEMNIFIED PARTIES AND FRESENIUS INDEMNIFIED PARTIES**................................................................................. | 98103 |
| **8.7** | **TERM OF CERTAIN INJUNCTIONS AND AUTOMATIC STAY** ...... | 99103 |
| | 8.7.1 Injunctions and/or Automatic Stays in Existence Immediately prior to Confirmation........................................................................... | 99103 |
| | 8.7.2 Injunctions Provided for in this Plan ................................................ | 99103 |
| **8.8** | **ADDITIONAL RELEASES AND INDEMNIFICATION** ....................... | 99103 |
| | 8.8.1 Release of Sealed Air Indemnified Parties ......................................... | 99103 |

iv

TABLE OF CONTENTS
(continued)

**Page**

8.8.2   Reservation of Rights With Respect to Cryovac Transaction Contractual Obligations ................................................. ~~100~~**105**

8.8.3   Release of Fresenius Indemnified Parties ........................................ ~~101~~**105**

8.8.4   Assumption of 1998 Tax Sharing Agreement and Section 4.04 of the TSIA ...................................................................... ~~101~~**105**

8.8.5   Effect of the Fresenius Settlement Agreement, the Fresenius Settlement Order, and the Sealed Air Settlement Agreement. ......... ~~102~~**106**

8.8.6   Release of Avoidance Actions ..................................................... ~~102~~**107**

8.8.7   Specific Releases by Holders of Claims or Equity Interests. ........... ~~102~~**107**

8.8.8   Release by Debtors and Estate Parties ......................................... ~~103~~**107**

8.8.9   Indemnification of Representatives of the Debtors and Non-Debtor Affiliates. ............................................................. ~~103~~**108**

8.8.10  Indemnification of Reorganized Debtors and Their Representatives by the Asbestos PI Trust .................................................. ~~103~~**108**

8.8.11  Indemnification of the Reorganized Debtors and Their Representatives by the Asbestos PD Trust. ................................. ~~104~~**109**

ARTICLE 9 EXECUTORY CONTRACTS, UNEXPIRED LEASES, LETTERS OF CREDIT, SURETY BONDS, COMPENSATION, INDEMNITY AND BENEFIT PROGRAMS ....................................................... ~~105~~**110**

9.1   **ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ........................................................ ~~105~~**110**

9.1.1   Assumption Generally. ............................................................ ~~105~~**110**

9.1.2   Assumption Procedures. .......................................................... ~~105~~**110**

9.1.3   Rejection of Certain Executory Contracts and Unexpired Leases. .. ~~107~~**111**

9.2   **LETTERS OF CREDIT AND SURETY BONDS** ................................... ~~108~~**112**

9.3   **COMPENSATION, INDEMNITY AND BENEFIT PROGRAM** .......... ~~108~~**113**

9.3.1   Employee Benefits .................................................................. ~~108~~**113**

9.3.2   Retiree Benefits. .................................................................... ~~109~~**113**

9.3.3   Workers' Compensation Benefits ................................................ ~~109~~**114**

ARTICLE 10 RETENTION OF JURISDICTION .............................................. ~~109~~**114**

10.1   **PLAN DOCUMENTS** ................................................................ ~~109~~**114**

10.2   **EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ............... ~~109~~**114**

10.3   **DISPUTED CLAIMS ALLOWANCE/DISALLOWANCE** ................... ~~110~~**114**

v

TABLE OF CONTENTS
(continued)

**Page**

10.4 **ENFORCEMENT/MODIFICATION OF THIS PLAN AND THE RELEASES, INJUNCTIONS AND DISCHARGE PROVIDED UNDER THE PLAN**..................................................110115

10.5 **COMPENSATION OF PROFESSIONALS** ...........................................111116

10.6 **SETTLEMENTS** ........................................................111116

10.7 **TAXES**..............................................................111116

10.8 **SPECIFIC PURPOSES**....................................................111116

10.9 **INSURANCE MATTERS**..................................................111116

ARTICLE 11 MISCELLANEOUS PROVISIONS ..........................................112116

11.1 **AUTHORITY OF THE DEBTORS** .........................................112116

11.2 **AUTHORITY OF THE REORGANIZED DEBTORS TO GRANT NEW STOCK INCENTIVE PLAN AND IMPOSE STOCK TRADING RESTRICTIONS** ...................................................112117

11.3 **PAYMENT OF STATUTORY FEES**..........................................112117

11.4 **RETAINED CAUSES OF ACTION**..........................................112117

11.4.1 Maintenance of Causes of Action.....................................112117

11.4.2 Preservation of All Causes of Action not Expressly Settled or Released.........................................................113118

11.5 **THIRD-PARTY AGREEMENTS**............................................114118

11.6 **REQUIREMENTS OF THE FRESENIUS SETTLEMENT AGREEMENT** ........................................................114118

11.7 **REQUIREMENTS OF THE SEALED AIR SETTLEMENT AGREEMENT** ........................................................114119

11.8 **DISSOLUTION OF THE UNSECURED CREDITORS' COMMITTEE, THE ASBESTOS PI COMMITTEE, THE ASBESTOS PD COMMITTEE AND THE EQUITY COMMITTEE; CONTINUED RETENTION OF THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE AND THE ASBESTOS PD FUTURE CLAIMANTS' REPRESENTATIVE** ...................................114119

11.9 **EXCULPATION**.........................................................115120

11.10 **TITLE TO ASSETS; DISCHARGE OF LIABILITIES** .........................116120

11.11 **ENTIRE AGREEMENT**..................................................116121

11.12 **NOTICES** ...........................................................116121

11.13 **HEADINGS**..........................................................120125

vi

TABLE OF CONTENTS
(continued)

**Page**

11.14  GOVERNING LAW.................................................................~~120~~125

11.15  FILING OF ADDITIONAL DOCUMENTS .........................~~120~~125

11.16  COMPLIANCE WITH TAX REQUIREMENTS..................~~120~~125

11.17  EXEMPTION FROM TRANSFER TAXES .........................~~120~~125

11.18  FURTHER ASSURANCES ....................................................~~120~~125

11.19  FURTHER AUTHORIZATIONS...........................................~~121~~126

K&E ~~13758690.21~~15732365.2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.**, *et al.* | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |
| | ) | |

**FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL, THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS ~~DATED FEBRUARY 27, AS~~ MODIFIED THROUGH DECEMBER 16, 2009**

**THIS PLAN[1] PROVIDES, AMONG OTHER THINGS, FOR THE ISSUANCE OF INJUNCTIONS THAT (A) RESULT IN THE CHANNELING OF ALL ASBESTOS PERSONAL INJURY CLAIMS, ASBESTOS PROPERTY DAMAGE CLAIMS, AND CDN ZAI PD CLAIMS (INCLUDING ALL RELATED SUCCESSOR CLAIMS) AGAINST W. R. GRACE & CO. AND THE ASBESTOS PROTECTED PARTIES (AS DEFINED HEREIN) INTO TRUSTS AND/OR A CLAIMS FUND AND (B) ENJOIN ALL SUCCESSOR CLAIMS BASED ON OR ARISING FROM, IN WHOLE OR IN PART, DIRECTLY OR INDIRECTLY, THE CRYOVAC TRANSACTION OR FRESENIUS TRANSACTION AGAINST W. R. GRACE & CO. AND THE ASBESTOS PROTECTED PARTIES (AS DEFINED HEREIN), EACH AS MORE FULLY DESCRIBED HEREIN.**

This Plan constitutes a settlement of all Claims and Demands against the Debtors on, and subject to, the terms described herein and the other Plan Documents. Nothing in the Plan Documents constitutes an admission by the Debtors as to the existence, merits, or amount of the Debtors' actual present or future liability on account of any Claim or Demand except to the extent that such liability is specifically provided for in the Plan or the other Plan Documents in accordance with the Confirmation Order effective as of the Effective Date.

This Plan is not an offer with respect to any securities or a solicitation of acceptances of this Plan; any such offer or solicitation will only be made in compliance with applicable law, including applicable provisions of securities laws and the Bankruptcy Code. This Plan has not been filed with or reviewed by the Securities and Exchange Commission or any securities regulatory authority of any state under the Securities Act of 1933, as amended, or under any state

---

[1]     Unless otherwise indicated, capitalized terms shall have the meanings ascribed to them in Article 1 of this Plan.

securities or "blue sky" laws. This Plan has not been approved or disapproved by any court or the Securities and Exchange Commission. Any representation to the contrary is a criminal offense.

The Debtors, the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders hereby jointly propose the following Plan of Reorganization pursuant to the provisions of chapter 11 of title 11 of the United States Code for W. R. Grace & Co. and the other Debtors in these Chapter 11 Cases. Reference is made to the Disclosure Statement distributed contemporaneously herewith for, among other things, a discussion of the history, businesses, properties, and results of operations of the Debtors, and risks associated with this Plan.

**ARTICLE 1**
**DEFINITIONS, CONSTRUCTION OF TERMS, EXHIBITS**
**AND ANCILLARY DOCUMENTS**

## 1.1     DEFINED TERMS

**<u>Definitions</u>**

Terms defined in this Section 1 apply to the Plan, the Disclosure Statement and the other Plan Documents (unless specifically provided otherwise in any such Plan Document).

1.     **"1998 Tax Sharing Agreement"** means the Tax Sharing Agreement by and among Old Grace Delaware, Grace-Conn., and Old Sealed Air Corporation, dated as of March 30, 1998.

2.     **"Administrative Expense Claim"** shall mean: (i) any Claim constituting a cost or expense of administration in the Chapter 11 Cases, on or after the Petition Date but prior to the Effective Date, under Bankruptcy Code §§ 503(b), 507(a)(1), 507(b) or 1114(e)(2), including: (a) any actual and necessary costs and expenses of preserving the estates of the Debtors, (b) any actual and necessary costs and expenses of operating the businesses of the Debtors, (c) any indebtedness or obligation incurred or assumed by the Debtors (including any executory contracts of the Debtors assumed pursuant to Bankruptcy Code § 365 by order of the Bankruptcy Court or the Plan) in connection with the conduct of their businesses or for the acquisition or lease of property or the rendition of services, and (d) any allowed compensation or reimbursement of expenses awarded or allowed under Bankruptcy Code §§ 330(a), 331 or 503, and (ii) any fees or charges assessed against the estates of the Debtors under 28 U.S.C. § 1930.

3.     **"Affiliate"** shall mean as to any specified Entity: (i) any other Entity that, directly or indirectly through one or more intermediaries or otherwise, controls, is controlled by, or is under common control with, the specified Entity, and (ii) any Entity that is an "affiliate" (within the meaning of Bankruptcy Code § 101(2)) of the specified Entity. As used in clause (i) of this definition, "control" shall include the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of

2

an Entity (whether through ownership of Capital Stock of that Entity, by contract, or otherwise).

4.   **"Allowed"** shall mean:

(a)   With respect to Asbestos PD Claims in Class 7A, such Asbestos PD Claim in such amount as is set forth (i) in any PD Settlement Agreement and subject to the terms set forth in the Asbestos PD Trust Agreement, or (ii) after the Effective Date, as set forth in any stipulation, order, judgment, decree, or agreement approved by a Final Order of the Bankruptcy Court or such other United States District Court as is authorized to determine the liability of the Asbestos PD Trust on account of such Asbestos PD Claims as set forth in the Class 7A CMO;

(b)   With respect to any Plan Claim other than an Administrative Expense Claim or an Asbestos Claim, as to which a proof of claim was Filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Court, (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, (ii) as to which an objection to the allowance thereof has been interposed within such time as is set by the Bankruptcy Court pursuant to the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, such Plan Claim to the extent that such objection has been (A) overruled in whole or in part by a Final Order of the Bankruptcy Court, (B) resolved by agreement of the Debtors and the Claimant which is approved by a Final Order of the Bankruptcy Court, (C) resolved by agreement of the Reorganized Debtors and the Claimant pursuant to Section 5.1 of the Plan, or (D) determined by Final Order in the Chapter 11 Cases, or (iii) as to which such Claim is listed on an Undisputed Claims Exhibit indicating allowance thereof, which has been Filed pursuant to Section 5.1 of the Plan;

(c)   With respect to any Plan Claim other than an Administrative Expense Claim or Asbestos Claim, as to which no proof of claim was Filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, such Plan Claim to the extent that it has been listed by the Debtors in their Schedules as liquidated in amount and not disputed or contingent and not otherwise subject to an objection Filed within such time as is set by the Bankruptcy Court pursuant to the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court;

(d)   With respect to any Equity Interest in Parent, any Equity Interest registered in the stock register maintained by or on behalf of the Debtors as of the Confirmation Date; and

(e)   With respect to any Administrative Expense Claim:

3

> > (i)    that represents a Claim of a Professional, such a Claim to the extent it is allowed in whole or in part by a Final Order of the Bankruptcy Court; or
>
> > (ii)    other than with respect to a Claim of a Professional, (X) a Claim to the extent that the Debtors or the Reorganized Debtors determine it to constitute an Administrative Expense Claim, or (Y) a Claim to the extent it is allowed in whole or in part by a Final Order of the Bankruptcy Court and only to the extent that such allowed portion is deemed, pursuant to a Final Order of the Bankruptcy Court, to constitute a cost or expense of administration under Bankruptcy Code §§ 503 or 1114.

5.    **"Allowed Amount"** shall mean the dollar amount of an Allowed Plan Claim (other than an Asbestos PI Claim).

6.    **"Asbestos Claims"** shall mean any and all Asbestos PI Claims (including Indirect PI Trust Claims, CDN ZAI PI Claims, and Asbestos Medical Monitoring Claims), CDN ZAI PD Claims, Workers' Compensation Claims that are SA Asbestos Personal Injury Claims, Asbestos PD Claims (including US ZAI PD Claims and Indirect PD Trust Claims), SA Asbestos Personal Injury Claims, and SA Asbestos Property Damage Claims, and any and all Demands related thereto.

7.    **"Asbestos In-Place Insurance Coverage"** means any insurance coverage issued to any Insurance Contributor to the extent available to be utilized for the payment or reimbursement of liability, indemnity, or defense costs arising from or related to Asbestos PI Claims or Asbestos PI Trust Expenses under any Asbestos Insurance Policy or Asbestos Insurance Settlement Agreement; *provided, however,* that the term "Asbestos In-Place Insurance Coverage" shall not include any Asbestos Insurance Reimbursement Agreement.

8.    **"Asbestos Insurance Action"** shall mean any claim, cause of action, or right of any Insurance Contributor, under the laws of any jurisdiction, against any Asbestos Insurance Entity, arising from or based on: (i) any such Asbestos Insurance Entity's failure to provide coverage for, or failure to pay or agree to pay, any claim under any Asbestos Insurance Policy, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreement, or Asbestos Insurance Settlement Agreement; (ii) the refusal of any such Asbestos Insurance Entity to compromise or settle any claim under or pursuant to any Asbestos Insurance Policy, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreement, or Asbestos Insurance Settlement Agreement; (iii) the interpretation or enforcement of the terms of any Asbestos Insurance Policy, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreement, or Asbestos Insurance Settlement Agreement; or (iv) any conduct of any Asbestos Insurance Entity constituting "bad faith" or other wrongful conduct under applicable law with respect to any Asbestos Insurance Policy, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreement, or Asbestos Insurance Settlement Agreement.

4

9. ~~"Asbestos Insurance Reimbursement Agreement" means any agreement entered into prior to the Petition Date between the Debtors or Non-Debtor Affiliates, or any of them or their predecessors, on the one hand, and any Asbestos Insurance Entity, on the other hand, pursuant to which the Asbestos Insurance Entity agreed to reimburse the Debtors or the Non-Debtor Affiliates, or any of them or their predecessors, for certain liability, indemnity, or defense costs arising from or related to asbestos-related claims, including Asbestos PI Claims. The known Asbestos Insurance Reimbursement Agreements are listed on Schedule 3 to the Asbestos Insurance Transfer Agreement.~~

**9.** ~~10.~~ **"Asbestos Insurance Entity"** shall mean any Entity, including any insurance company, broker, or guaranty association, that has issued, or that has or had actual or potential liability, duties or obligations under or with respect to, any Asbestos Insurance Policy.

**10.** ~~11.~~ **"Asbestos Insurance Entity Injunction"** shall mean the injunction described in Section 8.4 of the Plan.

**11.** ~~12.~~ **"Asbestos Insurance Policy"** shall mean any insurance policy under which any Insurance Contributor has or had insurance coverage with a policy period incepting prior to June 30, 1985, whether known or unknown, that actually or potentially provides insurance coverage for any Asbestos Claim, including the policies listed on schedule 1 attached to Exhibit 6 in the Exhibit Book; *provided* that an Asbestos Insurance Policy shall not include any rights or obligations under any insurance policy or settlement agreement to which any of the Debtors are a party to the extent, but only to the extent, that such rights or obligations pertain solely to coverage for Workers' Compensation Claims.

**12.** _**"Asbestos Insurance Reimbursement Agreement"** means any agreement entered into prior to the Petition Date between the Debtors or Non-Debtor Affiliates, or any of them or their predecessors, on the one hand, and any Asbestos Insurance Entity, on the other hand, pursuant to which the Asbestos Insurance Entity agreed to reimburse the Debtors or the Non-Debtor Affiliates, or any of them or their predecessors, for certain liability, indemnity, or defense costs arising from or related to asbestos-related claims, including Asbestos PI Claims. The known Asbestos Insurance Reimbursement Agreements are listed on Schedule 3 to the Asbestos Insurance Transfer Agreement._

13. **"Asbestos Insurance Rights"** shall mean any and all rights, titles, privileges, interests, claims, demands or entitlements of the Insurance Contributors to any proceeds, payments, escrowed funds, initial or supplemental dividends, scheme payments, supplemental scheme payments, causes of action, and choses in action of any Insurance Contributor with respect to any Asbestos Insurance Policy, Asbestos Insurance Settlement Agreement, Asbestos In-Place Insurance Coverage, or Asbestos Insurance Reimbursement Agreement, including all Asbestos Insurance Actions, whether now

5

existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, including:

(a)     any and all rights of any Insurance Contributor to pursue or receive payments or proceeds under any Asbestos Insurance Policy, whether for liability, defense, or otherwise;

(b)     any and all rights of any Insurance Contributor to pursue or receive payments made or proceeds received on or after April 6, 2008, pursuant to any Asbestos Insurance Settlement Agreement or Asbestos In-Place Insurance Coverage, together with all interest earned thereon;

(c)     any and all proceeds of the settlement with Lloyd's Underwriters, together with all interest earned thereon;

(d)     any and all proceeds of all settlements with Asbestos Insurance Entities under Asbestos In-Place Insurance Coverage or installment payment agreements, to the extent payment of the proceeds occurred on or after April 6, 2008;

(e)     any and all rights of any Insurance Contributor to pursue or receive payments from any insolvent Asbestos Insurance Entity, whether in receivership, liquidation, rehabilitation, run-off, or scheme of arrangement, or any other form of proceeding, or from any insolvent insurer's estate, and the proceeds of all payments received by any Insurance Contributor from any such insolvent Asbestos Insurance Entity or such insolvent insurer's estate on or after April 6, 2008, together with all interest earned on such proceeds;

(f)     any and all rights of any Insurance Contributor to pursue or receive payments with respect to Asbestos PI Claims from any insurance guaranty association; and

(g)     any and all rights of any Insurance Contributor to pursue or receive payments pursuant to an exception to a workers' compensation exclusion in any Asbestos Insurance Policy;

*provided* that, other than the rights identified in Section 1.1.12(g) above, Asbestos Insurance Rights shall not include any rights or obligations under any insurance policy, settlement agreement, or coverage-in-place agreement to which any Insurance Contributor is a party to the extent, but only to the extent, that such rights or obligations pertain solely to coverage for Workers' Compensation Claims; and *provided, further,* that, for the avoidance of doubt, Asbestos Insurance Rights shall not include any rights, titles, privileges, interests, claims, demands, or entitlements of the Insurance Contributors against any of the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties.

14.     **"Asbestos Insurance Settlement Agreement"** shall mean any settlement agreement between or among any of the Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, or any of them or their predecessors, and any Asbestos Insurance Entity involving any Asbestos Insurance Policy, *provided, however*, that the term "Asbestos

6

Insurance Settlement Agreement" shall not include any Asbestos Insurance Reimbursement Agreement, and further provided that the parties to an Asbestos Insurance Reimbursement may agree to modify such agreement to become an Asbestos Insurance Settlement Agreement.

15.     **"Asbestos Insurance Transfer Agreement"** shall mean the Asbestos Insurance Transfer Agreement substantially in the form included as Exhibit 6 in the Exhibit Book.

16.     **"Asbestos Insurer Coverage Defenses"** shall mean all rights and defenses at law or in equity that any Asbestos Insurance Entity may have under any Asbestos Insurance Policy, Asbestos Insurance Settlement Agreement, Asbestos In-Place Insurance Coverage, or applicable law to a claim seeking insurance coverage. Asbestos Insurer Coverage Defenses include any defense based on the terms of the Plan or the Plan Documents or the manner in which the Plan or Plan Documents were negotiated; but Asbestos Insurer Coverage Defenses do not include any defense that (i) the Plan or any of the Plan Documents do not comply with the Bankruptcy Code, or (ii) the transfer of Asbestos Insurance Rights pursuant to the Asbestos Insurance Transfer Agreement is prohibited by any Asbestos Insurance Policy, any Asbestos Insurance Settlement Agreement, any Asbestos In-Place Insurance Coverage or applicable non-bankruptcy law.

17.     **"Asbestos Medical Monitoring Claim"** shall mean: a Claim, Canadian Claim, SA Claim, Grace-Related Claim, or Demand against, or present or future debt, liability, or obligation of, any of the Debtors or the Asbestos Protected Parties, including (x) all related claims, debts, obligations, liabilities or remedies for compensatory (including general, special, and consequential damages) and punitive damages, and (y) all cross-claims, contribution claims, subrogation claims, reimbursement claims or indemnity claims (whether or not such Claim, Canadian Claim, SA Claim, Grace-Related Claim, Demand, remedy, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, settled, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; whether or not the facts of or legal bases therefor are known or unknown; and whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity, or any other theory of law, equity, or admiralty), in each case for, based on, or arising out of, resulting from, or attributable to, directly or indirectly, personal injuries or damages by or on behalf of those who have not, as of the Petition Date, suffered any personal injury but who are alleging that:

      (i)     the Debtors (or (x) any of their respective predecessors, successors, or assigns, or any current or former Affiliate of any of the foregoing (including any of the Non-Debtor Affiliates), but only to the extent that any liability is asserted to exist as a result of it being such a predecessor, successor, assign, or current or former Affiliate, or (y) any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable) wrongfully caused them to be significantly exposed to hazardous asbestos fibers,

7

     (ii)   this exposure significantly increased the Claimant's risk of contracting a serious latent disease,

     (iii)  medical monitoring could reasonably be expected to result in early detection of the onset and mitigation of the severity of such disease, and

     (iv)  because of this exposure it is necessary for the Claimant to be examined by a physician or receive medical testing more often that he or she otherwise would.

Asbestos Medical Monitoring Claims are included within Asbestos PI Claims.

K&E 13758690.2115732365.2

18.     **"Asbestos PD Claim"** shall mean:

(i)     a Claim, Canadian Claim, Indirect PD Trust Claim, SA Claim, Grace-Related Claim, or Demand, if any, against, or present or future debt, liability, or obligation of, any of the Debtors or the Asbestos Protected Parties, including (x) all related claims, debts, obligations, liabilities, and remedies for compensatory (including general, special, and consequential damages) and punitive damages, and (y) all cross-claims, contribution claims, subrogation claims, reimbursement claims, and indemnity claims (whether or not such Claim, Canadian Claim, Indirect PD Trust Claim, SA Claim, Grace-Related Claim, Demand, if any, remedy, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, settled, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; whether or not the facts of or legal bases therefor are known or unknown; and whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity, or any other theory of law, equity, or admiralty):

(a)     arising from acts or omissions of one or more of the Debtors (or any of their respective predecessors, successors, or assigns, or any current or former Affiliate of any of the foregoing (including any of the Non-Debtor Affiliates), or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable); and

(b)     for, based on, or arising out of, resulting from, or attributable to, directly or indirectly, the cost of removal, abatement, operations and maintenance activities and programs, diminution of property value, environmental damage, economic loss, or property damage (including the cost of inspecting, maintaining, encapsulating, abating, repairing, decontaminating, removing, or disposing of asbestos or asbestos containing materials or products in buildings or other structures, or other property) caused or allegedly caused by, based on, arising out of, or attributable to, directly or indirectly, in whole or in part:

(1)     the installation in, presence in, or removal of asbestos or asbestos-containing materials or products mined, processed, consumed, used, stored, manufactured, designed, sold, assembled, distributed, supplied, produced, specified, selected, disposed of, installed by, or in any way marketed by, or on behalf of, one or more of the Debtors (or (x) any of their respective predecessors, successors, or assigns, or any current or former Affiliate of any of the foregoing (including any of the Non-Debtor Affiliates), but only to the extent that any liability is asserted to exist as a result of it being such a predecessor, successor, assign, or current or former Affiliate, or (y) any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable); or

9

(2)    asbestos-containing vermiculite mined, milled, or processed by the Debtors (or (x) any of their respective predecessors, successors, or assigns, or any current or former Affiliate of any of the foregoing (including any of the Non-Debtor Affiliates), but only to the extent that any liability is asserted to exist as a result of it being such a predecessor, successor, assign, or current or former Affiliate, or (y) any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable);

(ii)    any and all SA Asbestos Property Damage Claims (other than CDN ZAI PD Claims) and related Demands, if any, against any of the Debtors, the Sealed Air Indemnified Parties, or the Fresenius Indemnified Parties; and

(iii)    any and all US ZAI PD Claims against any of the Debtors or the Asbestos Protected Parties.

Notwithstanding the foregoing or anything else to the contrary, "Asbestos PD Claim" as defined herein does not include CDN ZAI PD Claims. For the avoidance of doubt, and notwithstanding the foregoing or anything else to the contrary, nothing in the Plan is intended or shall be interpreted, to exclude CDN ZAI PD Claims from, or to otherwise change, the definition of "Asbestos Property Damage Claims" as that term is defined in the Sealed Air Settlement Agreement.

19.    **"Asbestos PD Claimant"** shall mean the Holder of an Asbestos PD Claim.

20.    **"Asbestos PD Committee"** shall mean the Official Committee of Asbestos Property Damage Claimants appointed in the Chapter 11 Cases.

21.    **"Asbestos PD Channeling Injunction"** shall mean the order(s) entered or affirmed by the District Court, in accordance with and pursuant to Bankruptcy Code § 524(g), permanently and forever staying, restraining, and enjoining any Entity from taking any action against any Asbestos Protected Party (except as may be specifically provided in such order(s)) for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to (i) any Asbestos PD Claims in Class 7A, all of which shall be channeled to the Asbestos PD Trust for resolution as set forth in the Class 7A Case Management Order (other than actions brought to enforce any right or obligation under the Plan or any agreement or instrument between the Debtors or the Reorganized Debtors, on the one hand, and the Asbestos PD Trust, on the other hand, entered into pursuant to the Plan); including, (A) Unresolved Asbestos PD Claims, and (B) Asbestos PD Claims that were Allowed by PD Settlement Agreements that became final prior to the Effective Date, for which the Asbestos PD Trust shall pay such claims as provided in such PD Settlement Agreements from the proceeds of the Class 7A Initial Payment, (ii) any US ZAI PD Claims in Class 7B, all of which shall be channeled to the Asbestos PD Trust for resolution as set forth in the ZAI TDP, and (iii) any CDN ZAI PD Claims, the provision for payment of which shall be made to the Asbestos PD Trust to be

10

disbursed to the CDN ZAI PD Claims Fund. The Asbestos PD Channeling Injunction is further described in Section 8.3 of the Plan.

22.  **"Asbestos PD FCR"** shall mean the Asbestos PD Future Claimants' Representative.

23.  **"Asbestos PD Future Claimants' Representative"** shall mean Alexander M. Sanders, Jr. (or any Court-appointed successor), appointed as the legal representative for future asbestos-related property damage (including property damage related to ZAI) Claimants in the Chapter 11 Cases for the purpose of protecting the interests of persons that may subsequently assert Demands, if any, channeled to the Asbestos PD Trust.

24.  **"Asbestos PD Initial Payment"** shall mean collectively, the Class 7A Initial Payment and the Class 7B Initial Payment.

25.  **"Asbestos PD Trust"** shall mean the WRG Asbestos Property Damage Settlement Trust, a Delaware statutory trust, established pursuant to section 524(g) of the Bankruptcy Code and in accordance with the Asbestos PD Trust Agreement.

26.  **"Asbestos PD Trustees"** shall mean the Entities confirmed by the Court to serve as trustees of the Asbestos PD Trust pursuant to (a) the terms of the Plan, (b) the Confirmation Order, and (c) the Asbestos PD Trust Agreement, or who subsequently may be appointed pursuant to the terms of the Asbestos PD Trust Agreement.

27.  **"Asbestos PD Trust Agreement"** shall mean the WRG Asbestos PD Trust Agreement, effective as of the Effective Date, substantially in the form included as Exhibit 3 in the Exhibit Book, to be entered into by and among the Debtors, the Asbestos PD Future Claimants' Representative, and the Asbestos PD Trustees in connection with the formation of the Asbestos PD Trust.

28.  **"Asbestos PD Trust Assets"** shall mean the payments pursuant to (a) the Class 7A Asbestos PD Deferred Payment Agreement and all rights of the Asbestos PD Trust under the Class 7A Asbestos PD Deferred Payment Agreement; (b) the Class 7B Asbestos PD Deferred Payment Agreement and all rights of the Asbestos PD Trust under the Class 7B Asbestos PD Deferred Payment Agreement; (c) the Share Issuance Agreement and all rights of the Asbestos PD Trust pursuant to the Share Issuance Agreement; (d) the Asbestos PI/PD Inter-Creditor Agreement and all rights of the Asbestos PD Trust pursuant to the Asbestos PI/PD Inter-Creditor Agreement; (e) the Asbestos PD Initial Payment; (f) the Grace PD Guarantee Agreement for Class 7A and all rights of the Asbestos PD Trust under the Grace PD Guarantee Agreement for Class 7A; (g) the Grace PD Guarantee Agreement for Class 7B and all rights of the Asbestos PD Trust under the Grace PD Guarantee Agreement for Class 7B; and (h) the Asbestos PD Trust Causes of Action.

29.  **"Asbestos PD Trust Causes of Action"** shall mean any and all of the actions, claims, rights, defenses, counterclaims, suits and causes of action of the Debtors and the other Asbestos Protected Parties, whether known or unknown, in law, at equity or otherwise,

whenever and wherever arising under the laws of any jurisdiction attributable to: (a) all defenses to any Asbestos PD Claim other than Asbestos PD Claims that have been Allowed by PD Settlement Agreements, (b) with respect to any Asbestos PD Claims, all rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted, and (c) any other claims or rights with respect to Asbestos PD Claims that any of the Debtors and the other Asbestos Protected Parties would have had under applicable law if the Chapter 11 Cases had not occurred and the holder of such Asbestos PD Claim had asserted it by initiating civil litigation against any such Debtor and the other Asbestos Protected Parties.   Notwithstanding the foregoing, Asbestos PD Trust Assets and Asbestos PD Trust Causes of Action shall not include any claim, cause of action, or right of the Debtors or any of them, under the laws of any jurisdiction, against any party (including the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties) for reimbursement, indemnity, contribution, breach of contract or otherwise arising from or based on any payments made by the Debtors on account of Asbestos PD Claims prior to the Effective Date. In addition, for the avoidance of doubt, Asbestos PD Trust Causes of Action do not include any rights of the Debtors, the Reorganized Debtors, or the other Asbestos Protected Parties arising under the Asbestos PD Channeling Injunction or any of the other injunctions, releases, or the discharge entered into in connection with the Plan and the Confirmation Order.

30.   **"Asbestos PD Trust Expenses"** means any liabilities, costs, taxes, or expenses of, or imposed upon, or in respect of, the Asbestos PD Trust or, on and after the Effective Date, the Asbestos PD Trust Assets (except for payments to holders of Asbestos PD Claims on account of such Asbestos PD Claims).

31.   **"Asbestos Personal Injury Claim"** shall mean an Asbestos PI Claim.

32.   **"Asbestos PI Channeling Injunction"** shall mean the order(s) entered or affirmed by the District Court, in accordance with and pursuant to Bankruptcy Code § 524(g), permanently and forever staying, restraining, and enjoining any Entity from taking any action against any Asbestos Protected Party (except as may be specifically provided in such order(s)) for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos PI Claims, all of which shall be channeled to the Asbestos PI Trust for resolution as set forth in the Asbestos PI TDP (other than actions brought to enforce any right or obligation under the Plan or any agreement or instrument between the Debtors or the Reorganized Debtors, on the one hand, and the Asbestos PI Trust, on the other hand, entered into pursuant to the Plan). The Asbestos PI Channeling Injunction is further described in Section 8.2 of the Plan.

33.   **"Asbestos PI Claim"** shall mean:

(i)   a Claim, Canadian Claim, Indirect PI Trust Claim, SA Claim, Grace-Related Claim, or Demand against, or any present or future, debt, liability, or obligation of, any of the Debtors or the Asbestos Protected Parties, including (x) all related

12

claims, debts, obligations, liabilities, and remedies for compensatory (including general, special, and consequential damages) and punitive damages, and (y) all cross-claims, contribution claims, subrogation claims, reimbursement claims, and indemnity claims (whether or not such Claim, Canadian Claim, Indirect PI Trust Claim, SA Claim, Grace-Related Claim, Demand, remedy, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, settled, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; whether or not the facts of or legal bases therefor are known or unknown; and whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity, or any other theory of law, equity, or admiralty), in each case for, based on, or arising out of, resulting from, or attributable to, directly or indirectly:

(a)     death, wrongful death, personal or bodily injury (whether physical, emotional, or otherwise), sickness, disease, loss of consortium, survivorship, medical monitoring, or other personal injuries (whether physical, emotional, or otherwise) or other damages (including medical, legal, and other expenses, caused, or allegedly caused, based on, and arising or allegedly arising, from or attributable to, directly or indirectly, in whole or in part, acts or omissions of one or more of the Debtors (or any of their respective predecessors, successors, or assigns, or any current or former Affiliate of any of the foregoing (including any of the Non-Debtor Affiliates), or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable); and

(b)     the presence of or exposure at any time to:

        (1)     asbestos or any products or materials containing asbestos that were mined, processed, consumed, used, stored, manufactured, designed, sold, assembled, supplied, produced, specified, selected, distributed, disposed of, installed by, or in any way marketed by, or on behalf of, one or more of the Debtors (or (x) any of their respective predecessors, successors, or assigns, or any current or former Affiliate of any of the foregoing (including any of the Non-Debtor Affiliates), but only to the extent that any liability is asserted to exist as a result of it being such a predecessor, successor, assign, or current or former Affiliate, or (y) any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable); or

        (2)     asbestos-containing vermiculite mined, milled or processed by the Debtors (or (x) any of their respective predecessors, successors, or assigns, or any current or former Affiliate of any of the foregoing (including any of the Non-Debtor Affiliates), but only to the extent that any liability is asserted to exist as a result of it being such a predecessor, successor, assign or current or former

13

Affiliate, or (y) any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable);

(ii)     any and all SA Asbestos Personal Injury Claims (other than Workers' Compensation Claims) and related Demands against any of the Debtors, the Sealed Air Indemnified Parties, or the Fresenius Indemnified Parties;

(iii)    any and all CDN ZAI PI Claims and related Demands against any of the Debtors or the Asbestos Protected Parties; and

(iv)    any and all Asbestos Medical Monitoring Claims and related Demands against any of the Debtors or the Asbestos Protected Parties.

Notwithstanding the foregoing or anything else to the contrary, "Asbestos PI Claim" as defined herein does not include Workers' Compensation Claims; *provided, however*, for the avoidance of doubt, that nothing in the Plan is intended to change the definition of "Asbestos Personal Injury Claims" as that term is defined in the Sealed Air Settlement Agreement.

34.    **"Asbestos PI Claimant"** shall mean the Holder of an Asbestos PI Claim.

35.    **"Asbestos PI Committee"** shall mean the Official Committee of Asbestos Personal Injury Claimants appointed in the Chapter 11 Cases.

36.    **"Asbestos PI Deferred Payment Agreement"** shall mean the agreement setting forth the obligation of Reorganized Grace-Conn to make deferred payments to the Asbestos PI Trust over a 15-year period, consisting of five annual payments of $110 million commencing on January 2, 2019 and ten annual payments of $100 million commencing on January 2, 2024, in the form included as Exhibit 11 in the Exhibit Book or such other substantially similar form as shall have been agreed to by each of the Plan Proponents. As provided therein and in the Share Issuance Agreement, the payments made pursuant to the Asbestos PI Deferred Payment Agreement shall be secured by Parent's obligation to issue to the Trusts' Representative, on behalf of the Asbestos PI Trust and the Asbestos PD Trust, 50.1% of Parent Common Stock as of the Effective Date.

37.    "**Asbestos PI FCR**" shall mean the Asbestos PI Future Claimants' Representative.

38.    **"Asbestos PI Future Claimants' Representative"** shall mean David T. Austern (or any Court-appointed successor), appointed as the legal representative for future asbestos-related personal injury Claimants in the Chapter 11 Cases for the purpose of protecting the interests of persons that may subsequently assert Demands channeled to the Asbestos PI Trust.

39.    **"Asbestos PI/PD Inter-Creditor Agreement"** shall mean the inter-creditor agreement substantially in the form included at Exhibit 26 in the Exhibit Book.

40.    **"Asbestos PI TAC"** shall mean the Asbestos PI Trust Advisory Committee.

14

41.   **"Asbestos PI TDP"** shall mean the WRG Asbestos PI Trust Distribution Procedures.

42.   **"Asbestos PI Trust"** shall mean the WRG Asbestos PI Trust, a Delaware statutory trust, established pursuant to section 524(g) of the Bankruptcy Code and in accordance with the Asbestos PI Trust Agreement.

43.   **"Asbestos PI Trustee"** shall mean any Entity confirmed by the Court to serve as a trustee of the Asbestos PI Trust pursuant to (1) the terms of the Plan, (2) the Confirmation Order, or (3) the Asbestos PI Trust Agreement, or who subsequently may be appointed pursuant to the terms of the Asbestos PI Trust Agreement.

44.   **"Asbestos PI Trust Advisory Committee"** shall mean the Asbestos PI Trust Advisory Committee established pursuant to the terms of the Plan and having the powers, duties and obligations set forth in the Asbestos PI Trust Agreement.

45.   **"Asbestos PI Trust Agreement"** shall mean the agreement, effective as of the Effective Date, substantially in the form included as Exhibit 2 in the Exhibit Book, to be entered into by and among the Debtors, the Asbestos PI Future Claimants' Representative, the Asbestos PI TAC and the Asbestos PI Trustees in connection with the formation of the Asbestos PI Trust.

46.   **"Asbestos PI Trust Assets"** shall mean (a) $250 million in Cash plus interest thereon from January 1, 2009 until (and including) the Effective Date at the same rate applicable to the Debtors' senior debt; (b) the Warrant Agreement, the Warrant, and all rights of the Asbestos PI Trust under the Warrant Agreement and the Warrant; (c) the Asbestos PI Deferred Payment Agreement and all rights of the Asbestos PI Trust under the Asbestos PI Deferred Payment Agreement; (d) the Share Issuance Agreement and all rights of the Asbestos PI Trust pursuant to the Share Issuance Agreement; (e) the Asbestos PI/PD Inter-Creditor Agreement and all rights of the Asbestos PI Trust pursuant to the Asbestos PI/PD Inter-Creditor Agreement, (f) the Grace PI Guaranty and all rights of the Asbestos PI Trust pursuant to the Grace PI Guaranty; (g) the Plan Registration Rights Agreement; (h) the Asbestos Insurance Rights; (i) the Cryovac Payment reduced by the total aggregate amount of Cryovac, Inc.'s transfers to the Asbestos PD Trust as part of the Class 7A Initial Payment and the Class 7B Initial Payment; (j) the Fresenius Payment reduced by the total aggregate amount of Fresenius' transfers to the Asbestos PD Trust as part of the Class 7A Initial Payment and the Class 7B Initial Payment; (k) an amount in Cash contributed by the Parent equal to the Asbestos PD Initial Payment; (l) the Asbestos PI Trust Causes of Action, and (m) the Asbestos Insurance Transfer Agreement and all rights of the Asbestos PI Trust under the Asbestos Insurance Transfer Agreement, and, following the transfer or vesting of the foregoing to or in the Asbestos PI Trust, any proceeds thereof and earnings and income thereon.

47.   **"Asbestos PI Trust Causes of Action"** shall mean any and all of the actions, claims, rights, defenses, counterclaims, suits and causes of action of the Debtors and the other Asbestos Protected Parties, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction attributable to: (a) all

15

defenses to any Asbestos PI Claims, (b) with respect to any Asbestos PI Claims, all rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted, and (c) any other claims or rights with respect to Asbestos PI Claims that any of the Debtors and the other Asbestos Protected Parties would have had under applicable law if the Chapter 11 Cases had not occurred and the holder of such Asbestos PI Claim had asserted it by initiating civil litigation against any such Debtor and the other Asbestos Protected Parties. Notwithstanding the foregoing, except for the Asbestos Insurance Rights, Asbestos PI Trust Assets and Asbestos PI Trust Causes of Action shall not include any claim, cause of action, or right of the Debtors or any of them, under the laws of any jurisdiction, against any party (including the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties) for reimbursement, indemnity, contribution, breach of contract or otherwise arising from or based on any payments made by the Debtors on account of Asbestos PI Claims prior to the Effective Date. In addition, for the avoidance of doubt, Asbestos PI Trust Causes of Action do not include any rights of the Debtors, the Reorganized Debtors, or the other Asbestos Protected Parties arising under the Asbestos PI Channeling Injunction or any of the other injunctions, releases, or the discharge entered into in connection with the Plan and the Confirmation Order.

48. **"Asbestos PI Trust Distribution Procedures"** shall mean the procedures, substantially in the form included as Exhibit 4 in the Exhibit Book, to be implemented by the Asbestos PI Trustees pursuant to the terms and conditions of the Plan and the Asbestos PI Trust Agreement, to liquidate, determine, and pay (if entitled to payment) Asbestos PI Claims as and to the extent set forth in such procedures.

49. **"Asbestos PI Trust Expenses"** means any liabilities, costs, taxes, or expenses of, or imposed upon, or in respect of, the Asbestos PI Trust or, on and after the Effective Date, the Asbestos PI Trust Assets (except for payments to holders of Asbestos PI Claims on account of such Asbestos PI Claims).

50. **"Asbestos Protected Party"** shall mean any of the following parties:

    (a)     the Debtors;

    (b)     the Reorganized Debtors;

    (c)     the Non-Debtor Affiliates;

    (d)     the Settled Asbestos Insurance Companies;

    (f)     the Sealed Air Indemnified Parties;

    (g)     the Fresenius Indemnified Parties;

    (h)     Montana Vermiculite Company;

K&E 13758690.21 15732365.2

(i) any Entity that, pursuant to the Plan or otherwise on or after the Effective Date, becomes a direct or indirect transferee of, or successor to, any of the Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, the Sealed Air Indemnified Parties, or the Fresenius Indemnified Parties, or any of their respective assets (but only to the extent that any liability is asserted to exist as a result of its becoming such a transferee or successor);

(j) any Entity that, pursuant to the Plan or otherwise on or after the Effective Date, makes a loan to any of the Reorganized Debtors, the Non-Debtor Affiliates, the Asbestos PI Trust, the Asbestos PD Trust, or to a successor to, or transferee of any of the respective assets of, the Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, the Asbestos PI Trust, or the Asbestos PD Trust (but only to the extent that any liability is asserted to exist as a result of its becoming such a lender or to the extent that any Encumbrance of assets made in connection with such a loan is sought to be invalidated, upset or impaired in whole or in part as a result of its being such a lender);

(k) each of the respective present and future Affiliates of each of the Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, the Sealed Air Indemnified Parties, and the Fresenius Indemnified Parties (but only to the extent that any liability is asserted to exist as a result of its being or becoming such an Affiliate); or

(l) each of the respective Representatives of each of the Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, the Sealed Air Indemnified Parties, and the Fresenius Indemnified Parties.

51. **"Asbestos-Related Claims"** shall mean any and all SA Claims, SA Debts, SA Damages, or Grace-Related Claims based on or arising from, in whole or in part, directly or indirectly: (i) Asbestos Claims or (ii) Successor Claims based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction or the Fresenius Transaction.

52. **"Ballot"** shall mean the form or forms distributed to certain Holders of Plan Claims or Equity Interests by which such parties may indicate acceptance or rejection of the Plan.

53. **"Bankruptcy Code"** shall mean title 11 of the United States Code, as set forth in §§ 101 *et seq.*, and applicable portions of titles 18 and 28 of the United States Code, each as in effect on the Petition Date or as thereafter amended to the extent such amendment is applicable to the Chapter 11 Cases.

54. **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Delaware.

K&E 13758690.21 15732365.2

55. **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Chapter 11 Cases, including the Local Rules of the Bankruptcy Court.

**56.** **"BNSF" shall mean BNSF Railway Company, The Great Northern Railway Company, Burlington Northern, Inc., Burlington Northern Railway Company, The Burlington Northern and Santa Fe Railway Company, and any successor to any of the preceding.**

**57.** 56. **"Board of Directors"** shall mean the Board of Directors of any of the Debtors, or any of the Reorganized Debtors, as the case may be, as it may exist from time to time.

**58.** 57. **"Business Day"** shall mean any day other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)) in the United States of America.

**59.** 58. **"By-Laws"** shall mean the by-laws of any of the specified Debtors, as amended as of the Effective Date or thereafter.

**60.** 59. **"Canadian Claim"** shall mean any Claim, SA Claim, or Demand, if any, against any of the Debtors, the Canadian Entities, or the Sealed Air Indemnified Parties based on, arising from, or attributable to exposure to asbestos from the Debtors' asbestos containing products in Canada or the use in Canada of the Debtors' asbestos containing products, including any such Claim, SA Claim, or Demand that seeks reimbursement, contribution, or indemnification (contractual or otherwise).

**61.** 60. **"Canadian Court"** shall mean the Ontario Superior Court of Justice, Ontario Court of Appeal or the Supreme Court of Canada.

**62.** 61. **"Canadian Entities"** shall mean Grace Canada, Inc. and Sealed Air (Canada) Co./CIE, and each of their predecessors.

**63.** 62. **"Canadian Order"** shall mean the Order of the Canadian Court granted within Grace Canada's proceedings (Court File Number 01-CL-4081) and pursuant to Section 18.6 of the *Companies' Creditors Arrangement Act* recognizing the Confirmation Order and specifically providing for, *inter alia*, the approval of the Plan and granting the Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, the Successor Claims Injunction, and all of the Plan releases with respect to the Debtors and the other Asbestos Protected Parties, including the Canadian Entities, and declaring that such Confirmation Order be effective in Canada in accordance with its terms.

**64.** 63. **"Canadian Settlement Approval Order"** shall mean the Final Order of the Canadian Court approving the settlement of CDN ZAI PD Claims and CDN ZAI PI Claims as set forth in the CDN ZAI Minutes of Settlement.

**65.** 64. **"Capital Stock"** shall mean, with respect to: (i) any corporation, any share, or any depositary receipt or other certificate representing any share, of equity interest in that

18

corporation; and (ii) any other Entity, any share, membership, or percentage interest, unit of participation, or other equivalent (however designated) in or of equity interest in that Entity.

**66.** 65. **"Cash"** shall mean lawful currency of the United States of America.

**67.** 66. **"CCAA Representative Counsel"** shall mean Lauzon Belanger S.E.N.C.R.L. and Scarfone Hawkins LLP in their respective capacities as representative counsel to the Canadian ZAI PD Claimants and the CDN ZAI PI Claimants pursuant to an Order of the Canadian Court made on February 8, 2006.

**68.** 67. **"CDN ZAI Minutes of Settlement"** shall mean the minutes of settlement included as Exhibit 9 in the Exhibit Book, which explains **and the Amended and Restated CDN ZAI Minutes of Settlement included as Exhibit 34 in the Exhibit Book, which together explain** how all CDN ZAI PD and CDN ZAI PI Claims against the Debtors and the Sealed Air Indemnified Parties are treated under the Plan.

**69.** 68. **"CDN ZAI PD Claim"** shall mean a Canadian Claim against, or any present or future, debt, liability, or obligation of, any of the Debtors or the Asbestos Protected Parties, including (x) all related claims, debts, obligations, liabilities, and remedies for compensatory (including general, special, and consequential damages) and punitive damages, and (y) all cross-claims, contribution claims, subrogation claims, reimbursement claims, and indemnity claims (whether or not such Canadian Claim, remedy, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, settled, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; whether or not the facts of or legal bases therefor are known or unknown; and whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity, or any other theory of law, equity, or admiralty), for, based on, or arising out of, resulting from, or attributable to, directly or indirectly property damage located in Canada, including the cost of removal, abatement, or diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, by the ZAI sold, manufactured, supplied, produced, specified, selected, distributed, or in any way marketed by one or more of the Debtors (or any of their respective predecessors, successors, or assigns, or any current or former Affiliate of any of the foregoing (including any of the Non-Debtor Affiliates), but only to the extent that any liability is asserted to exist as a result of it being such a predecessor, successor, assign, or current or former Affiliate, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable). CDN ZAI PD Claims are not included within Asbestos PD Claims *provided, however*, that notwithstanding the foregoing or anything else to the contrary, nothing in the Plan is intended, or shall be interpreted, to exclude CDN ZAI PD Claims from, or otherwise change, "Asbestos Property Damage Claims" as that term is defined in the Sealed Air Settlement Agreement.

K&E 13758690.21 15732365.2

**70.** 69. **"CDN ZAI PD Claims Fund"** shall mean the fund established to administer and make payments in respect of CDN ZAI PD Claims as set forth in the CDN ZAI Minutes of Settlement.

**71.** 70. **"CDN ZAI PI Claim"** shall mean a Canadian Claim, SA Claim, or Demand against, or any present or future debt, liability, or obligation of, any of the Debtors or the Asbestos Protected Parties, including (x) all related claims, debts, obligations, liabilities or remedies for compensatory (including general, special, and consequential damages) and punitive damages, and (y) all cross-claims, contribution claims, subrogation claims, reimbursement claims, and indemnity claims (whether or not such Canadian Claim, SA Claim, Demand, remedy, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, settled, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; whether or not the facts of or legal bases therefor are known or unknown; and whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity, or any other theory of law, equity, or admiralty), in each case for, based on, or arising out of, resulting from, or attributable to, directly or indirectly from:

> (a) death, wrongful death, personal or bodily injury (whether physical, emotional, or otherwise), sickness, disease, loss of consortium, survivorship, medical monitoring, or other personal injuries (whether physical, emotional, or otherwise) or other damages (including medical, legal, and other expenses, caused, or allegedly caused, and arising or allegedly arising, from acts or omissions of one or more of the Debtors (or any of their respective predecessors, successors, or assigns, or any current or former Affiliate of any of the foregoing (including any of the Non-Debtor Affiliates), or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable); and

> (b) the presence of or exposure at any time to ZAI that was mined, processed, consumed, used, stored, manufactured, designed, sold, assembled, supplied, produced, specified, selected, distributed, disposed of, installed by, or in any way marketed by, or on behalf of, one or more of the Debtors in Canada (or (x) any of their respective predecessors, successors, or assigns, or any current or former Affiliate of any of the foregoing (including any of the Non-Debtor Affiliates), but only to the extent that any liability is asserted to exist as a result of it being such a predecessor, successor, assign or current or former Affiliate, or (y) any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable). CDN ZAI PI Claims are included within the Class of Asbestos PI Claims.

**72.** 71. **"Certificate of Incorporation"** shall mean the Certificate or Articles of Incorporation or equivalent document of any of the Debtors, as applicable, as amended as of the Effective Date or thereafter.

**73.** 72. **"Chapter 11 Cases"** shall mean the cases commenced by the Filing, on the Petition Date, by the Debtors of voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

**74.** ~~73.~~ **"Claim"** shall mean a claim (as defined in Bankruptcy Code § 101(5)) against a Debtor including any right to: (i) payment from any of the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) an equitable remedy for breach of performance if such breach gives rise to a right to payment from any or all of the Debtors, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

**75.** ~~74.~~ **"Claimant"** shall mean the Holder of a Plan Claim.

**76.** ~~75.~~ **"Class"** shall mean a group of Plan Claims or Equity Interests classified by the Plan pursuant to Bankruptcy Code § 1122(a).

**77.** ~~76.~~ **"Class 7A Asbestos PD Deferred Payment Agreement"** shall mean the "Deferred Payment Agreement (Class 7A PD)," substantially in the form included as Exhibit 27 in the Exhibit Book, executed by Parent pursuant to which the Parent shall commit to pay the Asbestos PD Trust on January 1 and July 1 of each year, a dollar amount equal to (i) the amount of the Asbestos PD Claims in Class 7A that were Allowed against the Asbestos PD Trust during the preceding six-month period, plus interest thereon accruing at the then applicable federal judgment rate per annum from the date of allowance of each such Asbestos PD Claim in Class 7A; and (ii) the Asbestos PD Trust Expenses for the next succeeding six-month period following the Asbestos PD Trust Expenses paid as part of the Asbestos PD Initial Payment. As provided therein, and in the Share Issuance Agreement, the payments made pursuant to the Class 7A Asbestos PD Deferred Payment Agreement shall be secured by Parent's obligation to issue to the Trusts' Representative, on behalf of the Asbestos PI Trust and the Asbestos PD Trust, 50.1% of Parent Common Stock as of the Effective Date.

**78.** ~~77.~~ **"Class 7A Case Management Order"** or **"Class 7A CMO"** shall mean the Case Management Order for Class 7A Asbestos PD Claims and Exhibit A to such Order (the Amended Order Setting Various Deadlines Regarding Asbestos Property Damage Claims) substantially in the form included at Exhibit 25 of the Exhibit Book or such other substantially similar form as shall have been agreed to by each of the Plan Proponents and entered by the Bankruptcy Court.

**79.** ~~78.~~ **"Class 7A Initial Payment"** shall mean (a) an amount in Cash sufficient for the Asbestos PD Trust to pay, in full, all obligations required to be paid on the Effective Date to Holders of Claims in Class 7A as set forth in the PD Settlement Agreements, and (b) an amount agreed to by the Parent, Sealed Air Corporation, Cryovac, Inc., Fresenius, and the Asbestos PD FCR, constituting an estimate of the first six months of the Asbestos PD Trust Expenses for Claims in Class 7A, to be transferred equally by Cryovac, Inc. and Fresenius directly to the Asbestos PD Trust on the Effective Date; *provided, however,* that Cryovac, Inc.'s transfer to the Asbestos PD Trust as part of the Class 7A Initial Payment when aggregated with Cryovac, Inc.'s transfer to the Asbestos PD Trust as part of the Class 7B Initial Payment shall not exceed 50% of the Cash component of the

Cryovac Payment; and *provided, further,* that the Fresenius transfer to the Asbestos PD Trust as part of the Class 7A Initial Payment when aggregated with Fresenius' transfer as part of the Class 7B Initial Payment shall not exceed 65% of the Fresenius Payment.

**80.** ~~79.~~ **"Class 7B Asbestos PD Deferred Payment Agreement"** shall mean the "Deferred Payment Agreement (Class 7B ZAI)," substantially in the form included as Exhibit 28 in the Exhibit Book, executed by the Parent pursuant to which the Parent shall commit to pay the Asbestos PD Trust for the benefit of claims in Class 7B and make certain future payments as set forth therein. As provided therein, and in the Share Issuance Agreement, the payments made pursuant to the Class 7B Asbestos PD Deferred Payment Agreement shall be secured by Parent's obligation to issue to the Trusts' Representative, on behalf of the Asbestos PI Trust and the Asbestos PD Trust, 50.1% of Parent Common Stock as of the Effective Date.

**81.** ~~80.~~ **"Class 7B Initial Payment"** shall mean an amount in Cash equal to $30 million plus interest from April 1, 2009 to the Effective Date, accrued at the same rate applicable to the Debtors' senior Exit Financing, to be transferred equally by Cryovac, Inc. and Fresenius directly to the Asbestos PD Trust on the Effective Date for the benefit of holders of Claims and Demands in Class 7B; *provided, however,* that Cryovac, Inc.'s transfer to the Asbestos PD Trust as part of the Class 7B Initial Payment when aggregated with Cryovac, Inc.'s transfer to the Asbestos PD Trust as part of the Class 7A Initial Payment shall not exceed 50% of the Cash component of the Cryovac Payment; and *provided, further,* that the Fresenius transfer to the Asbestos PD Trust as part of the Class 7B Initial Payment when aggregated with Fresenius' transfer as part of the Class 7A Initial Payment shall not exceed 65% of the Fresenius Payment.

**82.** ~~81.~~ **"Common Parent"** shall mean the common parent, as defined in Treasury Regulation section 1.1502-77, of those corporations that joined, or hereafter join in filing a Consolidated Tax Return under section 1501 of the IRC, and the Treasury Regulations thereunder, or a Consolidated Tax Return under comparable provisions of law for FSA Taxes or other jurisdictions (domestic or foreign).

**83.** ~~82.~~ **"Confirmation Date"** shall mean the date the clerk of the Court enters on the docket the Confirmation Order.

**84.** ~~83.~~ **"Confirmation Hearing"** shall mean the hearing that the Court conducts to consider confirmation of the Plan pursuant to Bankruptcy Code § 1129, as such hearing may be adjourned or continued from time to time.

**85.** ~~84.~~ **"Confirmation Order"** shall mean the order(s) entered by the Court on the Confirmation Date confirming the Plan.

**86.** ~~85.~~ **"Confirmation Procedures Order"** shall mean the order(s) of the Bankruptcy Court (i) approving procedures relating to the solicitation and tabulation of votes with respect to the Plan; and (ii) providing or establishing the basis for calculating the amount of any Plan Claim for voting purposes.

**87.** 86. **"Consolidated Tax Return"** shall mean (i) a federal consolidated income Tax Return, within the meaning of section 1501 of the IRC and the Treasury Regulations under section 1502 of the IRC, and (ii) any combined, joint, consolidated, or other Tax Return respecting FSA Taxes under the laws of any jurisdiction (domestic or foreign).

**88.** 87. **"Contingent Claim"** shall mean any Plan Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened, or been triggered, as of the date on which such Plan Claim is sought to be estimated or an objection to such Plan Claim is Filed, whether or not such event is within the actual or presumed contemplation of the Holder of such Plan Claim and whether or not a relationship between the Holder of such Plan Claim and a Debtor now or hereafter exists or previously existed.

**89.** 88. **"Court"** shall mean either the Bankruptcy Court or the District Court, as appropriate.

**90.** 89. **"Crown"** shall mean the Attorney General of Canada (Her Majesty the Queen in Right of Canada).

**91.** 90. **"Cryovac, Inc."** shall mean Cryovac, Inc., taxpayer identification number 13-2830262, a Delaware corporation, formerly named Grace Communications, Inc.

**92.** 91. **"Cryovac Payment"** shall mean (i) five hundred twelve million five hundred thousand dollars ($512,500,000) in Cash, plus interest thereon from December 21, 2002 until the Effective Date, at a rate of 5.5% per annum compounded annually and (ii) eighteen million (18,000,000) shares of Sealed Air Common Stock (as adjusted for a two-for-one stock split on March 16, 2007), each of (i) and (ii) subject to further adjustment to the extent provided in the Sealed Air Settlement Agreement.

**93.** 92. **"Cryovac Transaction"** shall mean the transfers of assets, the distribution of stock, the merger, and all predecessor, related, and ancillary transactions, agreements, transfers, and distributions relating to the transactions described in, referred to, or contemplated by Form S-4 Registration Statement filed by Old Grace Delaware with the SEC under the Securities Act, on or about February 13, 1998, SEC File No. 333-46281, including all attachments, exhibits, and schedules thereto.

**94.** 93. **"Debtor in Possession"** or **"Debtors in Possession"** shall mean one or more of the Debtors, each in its capacity as a debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

**95.** 94. **"Debtors"** or **"Grace"** shall mean, collectively, W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited

23

Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

**96.** 95. **"Demand"** shall mean a "demand" as defined in section 524(g)(5) of the Bankruptcy Code, including any present or future demand for payment against a Debtor that (i) was not a Claim in the Chapter 11 Cases prior to the Effective Date; (ii) arises out of the same or similar conduct or events that gave rise to the Claims addressed by the Asbestos PI Channeling Injunction or the Asbestos PD Channeling Injunction; and (iii) pursuant to the Plan, shall be dealt with by the Asbestos PI Trust, the Asbestos PD Trust, or the CDN ZAI PD Claims Fund.

**97.** 96. **"Disallowed"** shall mean, with respect to a Plan Claim (other than an Asbestos PI Claim and US ZAI PD Claim) or Equity Interest, disallowed in its entirety by a Final Order of the Bankruptcy Court, District Court, or another court of competent jurisdiction.

**98.** 97. **"Disclosure Statement"** shall mean the disclosure statement relating to the Plan, including all exhibits, appendices and schedules thereto, approved by order of the Bankruptcy Court in connection with the Plan pursuant to Bankruptcy Code § 1125, together with any amendments and supplements thereto.

**99.** 98. **"Disputed Claim"** shall mean a Plan Claim (other than an Asbestos PI Claim or US ZAI PD Claim) that is neither Allowed nor Disallowed.

**100.** 99. **"Distribution"** shall mean the payment, distribution, or assignment under the Plan by the Reorganized Debtors of property or interests in property to: (i) any Holder of an Allowed Plan Claim (other than an Asbestos PI Claim, an Asbestos PD Claim, or a CDN ZAI PD Claim) or Allowed Equity Interest; (ii) the Asbestos PI Trust; or (iii) the Asbestos PD Trust.

24

**101.** 100. **"District Court"** shall mean the United States District Court for the District of Delaware.

**102.** 101. **"Effective Date"** shall mean the first Business Day after the date on which all of the conditions precedent to the effectiveness of the Plan specified in Section 7.8 hereto shall have been satisfied or waived or, if a stay of the Confirmation Order is in effect on such date, the first Business Day after the expiration, dissolution, or lifting of such stay.

**103.** 102. **"Employee Benefit Claims"** shall mean all Claims, including accrued but unpaid pension Claims from the Petition Date, for compensation or benefits arising out of the Claimants' employment with the Debtors, but only to the extent and amount provided for under a written benefit plan sponsored by the Debtors. Workers' Compensation Claims, Asbestos Claims, and other Claims asserted by current or former employees are not Employee Benefit Claims. Further, any Claim for damages or other relief asserted by a current or former employee that is not for compensation or benefits in an amount permitted pursuant to the Debtors' written benefit plans is not an Employee Benefit Claim.

**104.** 103. **"Encumbrance"** shall mean with respect to any property or asset (whether real or personal, tangible or intangible), any mortgage, lien, pledge, charge, security interest, assignment as collateral, or encumbrance of any kind or nature in respect of such property or asset (including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction) to secure payment of a debt or performance of an obligation.

**105.** 104. **"Entity"** shall mean any person, individual, corporation, company, limited liability company, firm, partnership, association, joint stock company, joint venture, estate, trust, business trust, unincorporated organization, any other entity, the United States Trustee or any Governmental Unit or any political subdivision thereof.

**106.** 105. **"Environmental Claim"** shall mean any Claim, other than an Asbestos Claim, asserted by any Entity, arising out of, related to, or based upon any Environmental Law. Under the Plan, Environmental Claims are treated as Administrative Expense Claims or Unsecured Claims, as appropriate.

**107.** 106. **"Environmental Laws"** shall mean (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601, *et seq.*, (b) the Resource Conservation and Recovery Act, as amended by the Hazardous and Solid Waste Amendment of 1984, 42 U.S.C. §§ 6901, *et seq.*, (c) the Clean Air Act, 42 U.S.C. §§ 7401, *et seq.*, (d) the Clean Water Act of 1977, 33 U.S.C. §§ 1251, *et seq.*, (e) the Toxic Substances Control Act, 15 U.S.C. §§ 2601, *et seq.*, (f) all statutes, laws, rules, permits or regulations issued or promulgated by any Governmental Unit or court (including the common law), as they may be amended from time to time, relating to the

25

protection and/or prevention of harm, contamination or pollution of or to the environment (including ecological systems and living organisms including humans and the following media whether alone or in combination: air (including air within buildings), water (including water under or within land or in pipe or sewage systems), land, buildings and soil) and (g) ordinances, rules, regulations, orders, notices of violation, requests, demands, permits and requirements issued or promulgated by any Governmental Unit in connection with such statutes or laws.

**108.** ~~107.~~ **"Equity Committee"** shall mean the Official Committee of Equity Security Holders appointed in the Chapter 11 Cases.

**109.** ~~108.~~ **"Equity Interest"** shall mean any interest in any of the Debtors pursuant to an "equity security" within the meaning of Bankruptcy Code § 101(16).

**110.** ~~109.~~ **"ERISA"** shall mean the Employee Retirement Income Security Act of 1974 and any regulations issued pursuant thereto, as amended from time to time.

**111.** ~~110.~~ **"Estate Parties"** shall mean each of the Debtors, the estate of each Debtor, the post-confirmation estate of each Debtor, each of the Reorganized Debtors, and any trustee that may be appointed in any of the Debtors' cases under the Bankruptcy Code.

**112.** ~~111.~~ **"Exhibit Book"** shall mean the exhibits to the Disclosure Statement, the Plan, and/or the other Plan Documents, as may be amended, supplemented, or modified from time to time.

**113.** ~~112.~~ **"Exit Financing"** shall mean such financing agreement(s) or commitment(s) as the Debtors may enter into to provide the Reorganized Debtors with appropriate credit availability.

**114.** ~~113.~~ **"File"** or **"Filed"** or **"Filing"** shall mean file, filed, or filing with the Court in or to commence the Chapter 11 Cases, as the case may be.

**115.** ~~114.~~ **"Final Order"** shall mean an order, the operation or effect of which has not been stayed, reversed, or amended and as to which order the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing by all Entities possessing such right, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or from which reargument or rehearing was sought or certiorari has been denied, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided, however,* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order.

K&E 13758690.21 15732365.2

**116.**   ~~115.~~ "**FMCH**" shall mean Fresenius Medical Care Holdings, Inc. (taxpayer identification number 13-3461988), a New York corporation, formerly named W. R. Grace & Co. and Fresenius National Medical Care Holdings, Inc., its Affiliates, and any and all of their predecessors, successors, and assigns.

**117.**   ~~116.~~ "**FMCH Group**" shall mean that group of corporations, immediately after December 31, 1996, that were members of the affiliated group of corporations within the meaning of section 1504 of the IRC, and the Treasury Regulations thereunder, of which FMCH was and on the date of the Fresenius Settlement Agreement continued to be the Common Parent.

**118.**   ~~117.~~ "**Fresenius**" shall mean FMCH and NMC.

**119.**   ~~118.~~ "**Fresenius Action**" shall mean the suit styled *Official Committee of Asbestos Personal Injury Claimants and Official Committee of Asbestos Property Damage Claimants of W. R. Grace & Co, suing on behalf of the Chapter 11 Bankruptcy Estate of W. R. Grace & Co., el. al. v. Fresenius Medical Care Holdings, Inc.*, Adv. No. 02-2211 (D. Del.).

**120.**   ~~119.~~ "**Fresenius Indemnified Parties**" shall mean Fresenius and each of their respective present and former subsidiaries, parents, Affiliates, officers, directors, employees, partners, trustees, shareholders, beneficiaries, agents, attorneys, predecessors, successors, and assigns, including Fresenius Medical Care AG & Co. KGaA. and Fresenius AG, but not including the Estate Parties and Sealed Air.

**121.**   ~~120.~~ "**Fresenius Indemnified Taxes**" shall mean all FSA Taxes for or attributable to Tax Periods ending on or before December 31, 1996 other than NMC Indemnified Taxes.

**122.**   ~~121.~~ "**Fresenius Payment**" shall mean the $115,000,000 consideration to be paid by Fresenius as directed in the Confirmation Order pursuant to the terms of, and subject to the conditions set forth in, the Fresenius Settlement Agreement.

**123.**   ~~122.~~ "**Fresenius Settlement Agreement**" shall mean that certain settlement agreement and release of claims dated February 6, 2003 by and among the Parent, Grace-Conn, Fresenius, the Asbestos PI Committee, and the Asbestos PD Committee, included as Exhibit 13 in the Exhibit Book, as such agreement may be amended from time to time.

**124.**   ~~123.~~ "**Fresenius Settlement Order**" shall mean the Order Authorizing, Approving and Implementing Settlement Agreement By and Among Plaintiffs, the Official Committee of Asbestos Property Damage Claimants and the Official Committee of Asbestos Personal Injury Claimants, the Debtors, and Defendants Fresenius Medical Holdings, Inc. and National Medical Care, Inc., entered by the District Court on June 25, 2003, Dkt. No. 19 and included as part of Exhibit 14 in the Exhibit Book.

**125.**   ~~124.~~ "**Fresenius Transaction**" shall mean the series of transactions that became effective on September 27-30, 1996, whereby, *inter alia,* (i) NMC distributed approximately $2.3

27

billion in cash and assumed debt to Grace-Conn; (ii) Grace-Conn distributed 100% of the common shares of NMC stock to Grace New York; (iii) Grace New York contributed 100% of the common shares of Grace-Conn stock to Old Grace Delaware; (iv) Grace New York distributed 100% of the common shares of Old Grace Delaware stock to its shareholders; and (iv) Grace New York merged with a subsidiary of Fresenius Medical Care AG & Co. KGaA., all of which are more fully described in that certain Distribution Agreement dated as of February 4, 1996, among Grace New York, Grace-Conn and Fresenius AG, and that certain Contribution Agreement dated as of February 4, 1996, among Fresenius AG, Sterilpharma GmbH (as defined therein), and Grace-Conn, as that series of transactions is described in, referred to, or contemplated by Form S-4 Registration Statement filed by Grace New York with the SEC under the Securities Act, on or about August 2, 1996, SEC File No. 333-09497, including all attachments, exhibits and schedules thereto.

**126.**   ~~125.~~ **"FSA Taxes"** shall mean all forms of taxation, customs, duties, levies, fees, tariffs, imposts, deficiencies, or other charges or assessments of any kind whatsoever, imposed by any government entity whenever created or imposed, and whether of the United States or elsewhere, and whether imposed by a local, municipal, governmental, state, foreign, federation or other body, and without limiting the generality of the foregoing, shall include income (including alternative minimum), sales, use, *ad valorem*, gross receipts, license, value added, franchise, transfer, recording, withholding, payroll, employment, excise, occupation, unemployment insurance, social security, business license, business organization, stamp, environmental, premium and property taxes, together with any related interest, penalties and additions to any such tax, or additional amounts imposed by any taxing authority (domestic or foreign) upon the FMCH Group, the New Grace Group, the Grace New York Group, the Sealed Air Group or any of their respective members or divisions or branches.

**127.**   ~~126.~~ **"General Unsecured Claim"** shall mean any Claim in the Chapter 11 Cases that is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Secured Claim, Employee Benefit Claim, Workers' Compensation Claim, Intercompany Claim, Asbestos PI Claim, CDN ZAI PD Claim, or Asbestos PD Claim.

**128.**   ~~127.~~ **"Governmental Unit"** shall mean any domestic, foreign, provincial, federal, state, local or municipal (a) government, or (b) governmental agency, commission, department, bureau, ministry, or other governmental entity, or (c) any other "governmental unit" (as defined in Bankruptcy Code § 101(27)).

**129.**   ~~128.~~ **"Grace Canada"** shall mean Grace Canada, Inc., an Ontario corporation.

**130.**   ~~129.~~ **"Grace-Conn"** shall mean W. R. Grace & Co.-Conn., a Connecticut corporation, and one of the Debtors in these Chapter 11 Cases.

**131.**   ~~130.~~ **"Grace New York"** shall mean W. R. Grace & Co., a New York corporation, (taxpayer identification number 13-3461988), whose name was changed to Fresenius

28

National Medical Care Holdings, Inc. on September 27, 1996, and to Fresenius Medical Care Holdings on June 12, 1997.

**132.** ~~131.~~ **"Grace New York Group"** shall mean that group of corporations, including Grace-Conn and Old Grace Delaware, that were members through (and including) September 29, 1996 or December 31, 1996, as applicable, of the affiliated group of corporations within the meaning of section 1504 of the IRC, and the Treasury Regulations thereunder, of which Grace New York was the Common Parent, including, with respect to FSA Taxes of other jurisdictions (domestic or foreign), that group of corporations which included Grace New York or one or more of the members of the Grace New York Group with respect to a Consolidated Tax Return.

**133.** ~~132.~~ **"Grace PI Guaranty"** shall mean the guaranty by the Reorganized Parent of Reorganized Grace-Conn's obligations under the Asbestos PI Deferred Payment Agreement in the form set forth in Exhibit 15 of the Exhibit Book or such other substantially similar form as shall have been agreed to by each of the Plan Proponents.

**134.** ~~133.~~ **"Grace PD Guarantee Agreement for Class 7A"** shall mean the "W. R. Grace & Co. Guarantee Agreement (Class 7A PD)" substantially in the form included as Exhibit 29 of the Exhibit Book or such other substantially similar form as shall have been agreed to by each of the Plan Proponents.

**135.** ~~134.~~ **"Grace PD Guarantee Agreement for Class 7B"** shall mean "W. R. Grace & Co. Guarantee Agreement (Class 7B ZAI)" substantially in the form included as Exhibit 30 of the Exhibit Book or such other substantially similar form as shall have been agreed to by each of the Plan Proponents.

**136.** ~~135.~~ **"Grace-Related Claim"** shall have the same meaning as defined in the Fresenius Settlement Agreement and shall include all claims (including unknown claims), Demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, direct or indirect, whether concealed or hidden, from the beginning of time up to and including the date on which the Fresenius Payment is made pursuant to the Fresenius Settlement Agreement, asserted or that might have been asserted (including claims for fraudulent conveyance, successor liability, piercing of the corporate veil, negligence, gross negligence, professional negligence, breach of duty of care, breach of loyalty, breach of duty of candor, fraud, breach of fiduciary duty, mismanagement, corporate waste, breach of contract, negligent misrepresentation, contribution, indemnification, any other common law or equitable claims, and violations of any state or federal statutes, rules or regulations), which are either "Asbestos-Related Claims" (as defined in the Fresenius Settlement Agreement) or are based upon or arise out of the Fresenius Transaction, or the conduct or operations of any business or operations of any of Grace-Conn and its parents or subsidiaries at any time (other than the NMC Business), including without limitation any claims based on or arising out of environmental law, but not including any claims based on or arising out of the conduct or operations of the NMC Business or any act or omission of the Fresenius Indemnified Parties in connection with the operation of the NMC Business.

K&E ~~13758690.21~~15732365.2

**137.** ~~136.~~ **"Holder"** shall mean any Entity holding any Plan Claim or Equity Interest and, with respect to a vote on the Plan, shall mean the beneficial holders on the Voting Record Date or any authorized signatory who has completed and executed a Ballot or on whose behalf a Master Ballot has been properly completed and executed.

**138.** ~~137.~~ **"Indirect PD Trust Claim"** shall mean any Claim or remedy, liability, or Demand against the Debtors, now existing or hereafter arising, whether or not such Claim, remedy, liability, or Demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases for such Claim, remedy, liability, or Demand are known or unknown, that is (x)(i) held by (A) any Entity (other than a director or officer entitled to indemnification pursuant to Section 8.8.9 of the Plan) who has been, is, or may be a defendant in an action seeking damages for an Asbestos PD Claim or (B) any assignee or transferee of such Entity and (ii) on account of alleged liability of the Debtors for payment, repayment, reimbursement, indemnification, subrogation, or contribution of any portion of any damages such Entity has paid or may pay to the plaintiff in such action or (y) held by any Entity that is a claim seeking payment, repayment, reimbursement, indemnification, subrogation, or contribution from the Debtors with respect to any insurance settlement agreement, surety bond, letter of credit or other financial assurance issued or entered into by any Entity on account of, or with respect to, an Asbestos PD Claim; *provided, however,* that for the avoidance of doubt, the term "Indirect PD Trust Claim" shall not include or pertain to any Asbestos PI Claim, CDN ZAI PD Claim, Environmental Claim, or Workers' Compensation Claim.

**139.** ~~138.~~ **"Indirect PI Trust Claim"** shall mean any Claim or remedy, liability, or Demand against the Debtors, now existing or hereafter arising, whether or not such Claim, remedy, liability, or Demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases for such Claim, remedy, liability, or Demand are known or unknown, that is (x)(i) held by (A) any Entity (other than a director or officer entitled to indemnification pursuant to Section 8.8.9 of the Plan) who has been, is, or may be a defendant in an action seeking damages for death, bodily injury, sickness, disease, or other personal injuries (whether physical, emotional, or otherwise) to the extent caused or allegedly caused, directly or indirectly, by exposure to asbestos or asbestos-containing products for which the Debtors have liability or (B) any assignee or transferee of such Entity and (ii) on account of alleged liability of the Debtors for payment, repayment, reimbursement, indemnification, subrogation, or contribution of any portion of any damages such Entity has paid or may pay to the plaintiff in such action or (y) held by any Entity that is a claim seeking payment, repayment, reimbursement, indemnification, subrogation, or contribution from the Debtors with respect to any insurance settlement agreement, surety bond, letter of credit or other financial assurance issued or entered into by any Entity on account of, or with respect to, Asbestos PI Claims; *provided, however,* that for the avoidance of doubt, the term "Indirect PI Trust Claim" shall not include or pertain to any Asbestos PD Claim, CDN ZAI PD Claim, Environmental Claim, or Workers' Compensation Claim.

**140.** ~~139.~~ **"Initial Tax Distribution Date"** shall mean: (i) a date within the first sixty (60) days after the Effective Date as selected by the Reorganized Debtors, or (ii) such later date as the Bankruptcy Court may establish, upon request by the Reorganized Debtors, for cause shown.

**141.** ~~140.~~ **"Insurance Contributor"** shall mean any of (a) the Debtors, (b) the Reorganized Debtors, and (c) the Non-Debtor Affiliates identified in the Asbestos Insurance Transfer Agreement.

**142.** ~~141.~~ **"Intercompany Claim"** shall mean: (a) any Claim that arose prior to the Effective Date by: (i) any Debtor against any other Debtor, or (ii) a Non-Debtor Affiliate against any Debtor; or (b) any claim that arose prior to the Effective Date by any Debtor against any Non-Debtor Affiliate.

**143.** ~~142.~~ **"IRC"** shall mean the Internal Revenue Code of 1986, as amended, and any applicable regulations (including temporary and proposed regulations) promulgated thereunder by the United States Treasury Department.

**144.** ~~143.~~ **"IRS"** shall mean the United States Internal Revenue Service.

**145.** ~~144.~~ **"March 2003 Bar Date"** shall mean March 31, 2003, the last day for Filing a proof of claim relating to pre-petition (i) Asbestos PD Claims, (ii) non-asbestos claims (including all governmental claims, Environmental Claims, and all derivative asbestos claims and asbestos-related claims for contribution, indemnity, reimbursement, or subrogation), and (iii) Asbestos Medical Monitoring Claims.

**146.** ~~145.~~ **"March 2003 Bar Date Order"** shall mean the Court's order, dated April 22, 2002, Dkt. No. 1963, which established the March 2003 Bar Date.

**147.** ~~146.~~ **"Master Ballot"** shall mean a Ballot (a) cast on behalf of one or more Holders of Asbestos PI Claims or Asbestos PD Claims, or (b) cast on behalf of one or more beneficial owners of Parent Common Stock, in either case pursuant to the terms and guidelines established in the Plan Documents and/or the Confirmation Procedures Order.

**148.** ~~147.~~ **"New Grace Group"** shall mean that group of corporations, including Grace-Conn (taxpayer identification number 13-5114230) that are, or hereafter become, members of that affiliated group of corporations under section 1504 of the IRC, and the Treasury Regulations thereunder, that have joined, or hereafter join, in filing a Consolidated Tax Return of which the Parent, or any successor to the Parent, including any reorganized Debtor successor to the Parent, was or is the Common Parent.

**149.** ~~148.~~ **"NMC"** shall mean National Medical Care, Inc., a Delaware corporation (taxpayer identification number 04-2835488).

**150.** ~~149.~~ **"NMC Business"** shall mean all of the worldwide healthcare business and operations conducted by NMC and the direct and indirect subsidiaries of NMC at any time, whether prior to or after September 29, 1996.

**151.** ~~150.~~ **"NMC Indemnified Taxes"** shall mean all Taxes of or attributable to any Tax Period arising from Tax Items relating to the NMC Business conducted by a member of the FMCH Group (net of benefits from Tax Items relating to the NMC Business from one or more Tax Periods not previously paid to, or applied for the benefit of, any member of the FMCH Group) which have not previously been paid to (i) one of the Estate Parties, (ii) Grace New York prior to the Fresenius Transaction, or (iii) the applicable tax authority, by any member of the FMCH Group.

**152.** ~~151.~~ **"Non-Debtor Affiliate"** shall mean each Affiliate of the Debtors that is not a debtor or debtor-in-possession in the Chapter 11 Cases, including the Entities designated as Non-Debtor Affiliates in Exhibit 16 in the Exhibit Book.

**153.** ~~152.~~ **"Old Grace Delaware"** shall mean W. R. Grace & Co., a Delaware corporation (taxpayer identification number 65-0654331), prior to the change of its name to Sealed Air Corporation in the Cryovac Transaction.

**154.** ~~153.~~ **"Old Sealed Air Corporation"** shall mean Sealed Air Corporation (US), a Delaware corporation (taxpayer identification number 22-1682767), which was named Sealed Air Corporation until the consummation of the Cryovac Transaction.

**155.** ~~154.~~ **"Parent"** shall mean W. R. Grace & Co., a Delaware corporation (taxpayer identification number 65-0773649), the first named Debtor in the caption of the Chapter 11 Cases and ultimate parent holding company of all of the other Debtors and Non-Debtor Affiliates.

**156.** ~~155.~~ **"Parent Common Stock"** shall mean the common stock, par value $0.01 per share, of the Parent or, if after the Effective Date, of the Reorganized Parent.

**157.** ~~156.~~ **"PBGC"** shall have the meaning set forth in Section 8.1.6 of the Plan.

**158.** ~~157.~~ **"PD Settlement Agreements"** shall mean settlement agreements approved by the Bankruptcy Court on or before the Effective Date between the Debtors and certain Holders of Asbestos PD Claims fully and finally resolving the Allowed Amount of their Asbestos PD Claims.

**159.** ~~158.~~ **"PD Trust"** shall mean the Asbestos PD Trust.

**160.** ~~159.~~ **"Pension Plans"** shall have the meaning set forth in Section 8.1.6 of the Plan.

**161.** ~~160.~~ **"Petition Date"** shall mean April 2, 2001, the date on which the Debtors Filed their petitions for relief commencing the Chapter 11 Cases.

__162.__   ~~161.~~ **"Plaintiffs"** means the Asbestos PI Committee and the Asbestos PD Committee, suing on behalf of the Chapter 11 Bankruptcy Estate of W. R. Grace & Co. in the Fresenius Action and the Sealed Air Action.

__163.__   ~~162.~~ **"Plan"** shall mean the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009, as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules to the foregoing, as the same may be in effect from time to time.

__164.__   ~~163.~~ **"Plan Claims"** shall mean, collectively, Administrative Expense Claims, Priority Tax Claims, Priority Claims, Secured Claims, Employee Benefit Claims, Workers' Compensation Claims, Intercompany Claims, Asbestos PI Claims, CDN ZAI PD Claims, Asbestos PD Claims, and General Unsecured Claims.

__165.__   ~~164.~~ **"Plan Documents"** shall mean the Plan, the Exhibit Book, the Disclosure Statement, all exhibits in the Exhibit Book, and the Plan Supplement, either in the form approved by each of the Plan Proponents or as each may be amended, supplemented, or otherwise modified from time to time in accordance with its terms.

__166.__   ~~165.~~ **"Plan Proponents"** means, collectively, the Debtors, the Asbestos PI Committee, the Asbestos PI FCR, and the Equity Committee.

__167.__   ~~166.~~ **"Plan Registration Rights Agreement"** shall mean the Registration Rights Agreement in the form included as Exhibit 17 of the Exhibit Book or such other substantially similar form as shall have been agreed to by each of the Plan Proponents.

__168.__   ~~167.~~ **"Plan Supplement"** shall mean the supplement, containing copies of certain exhibits or schedules to the Plan and Disclosure Statement, including the By-Laws of the Parent, draft amended Certificates of Incorporation, and a list disclosing the identity and affiliates of any person proposed to serve on the initial board of directors or be an officer of one or more of the Reorganized Debtors, which shall be Filed with the Bankruptcy Court at least ten (10) days before the objection deadline with respect to the Plan and served on the Entities listed in Section 11.12 of this Plan.

__169.__   ~~168.~~ **"Pre-petition Credit Facilities"** shall mean (i) the Credit Agreement, dated as of May 14, 1998, among Grace-Conn., the Parent, the several banks from time to time parties thereto, the co-agents thereto, The Chase Manhattan Bank as administrative agent, and Chase Securities Inc. as arranger; and (ii) the 364-Day Credit Agreement, dated as of May 5, 1999, as amended by the First Amendment dated as of May 3, 2000, among Grace-Conn., the Parent, the several banks from time to time parties thereto, Bank of America National Trust and Savings Association as syndication agent, The Chase Manhattan Bank as administrative agent, Chase Securities Inc. as book manager, and First Union National Bank as documentation agent.

**170.** ~~169.~~ **"Post-Effective Distribution Date"** shall mean, with respect to any Plan Claim that becomes an Allowed Claim after the Effective Date or with respect to the amount of post-petition interest payable in relation to an Allowed General Unsecured Claim that is subject to a Post-Petition Interest Determination Notice or a Notice of Non-Default Contract Rate of Interest that is resolved pursuant to Sections 3.1.9(d) or (e) of the Plan, the last Business Day of the month following the month in which the Plan Claim has become an Allowed Claim or after the amount of post-petition interest has been resolved pursuant to Sections 3.1.9(d) or (e) of the Plan, as the case may be.

**171.** ~~170.~~ **"Priority Claim"** shall mean any Claim (other than an Administrative Expense Claim or Priority Tax Claim) to the extent such Claim is entitled to priority in right of payment under Bankruptcy Code § 507.

**172.** ~~171.~~ **"Priority Tax Claim"** shall mean a Claim that is of a kind specified in Bankruptcy Code §§ 502(i) or 507(a)(8).

**173.** ~~172.~~ **"Professional"** shall mean an Entity (i) employed pursuant to a Final Order in accordance with Bankruptcy Code §§ 327, 328, 363, 524(g)(4)(B)(i) and/or 1103 and to be compensated for services pursuant to Bankruptcy Code §§ 327, 328, 329, 330 and/or 331, or (ii) for which compensation and reimbursement have been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b)(4).

**174.** ~~173.~~ **"Quarterly Tax Distribution Date"** shall mean the first Business Day of each calendar quarter following the Initial Tax Distribution Date; *provided, however,* that the first Quarterly Tax Distribution Date following the Initial Tax Distribution Date shall be no less than ninety (90) days following such Initial Tax Distribution Date.

**175.** ~~174.~~ **"Reorganized Debtor," "Reorganized Debtors"** or **"Reorganized Grace"** shall mean the Debtor(s) from and after the Effective Date.

**176.** ~~175.~~ **"Reorganized Grace-Conn"** shall mean W. R. Grace & Co.-Conn from and after the Effective Date.

**177.** ~~176.~~ **"Reorganized Parent"** shall mean the Parent from and after the Effective Date.

**178.** ~~177.~~ **"Representatives"** shall mean, with respect to any Entity, the past and present directors, officers, employees, accountants (including independent registered public accountants), advisors, attorneys, consultants, or other agents of that Entity, or any other representatives or professionals of that Entity or of any of those directors, officers, employees, accountants (including independent registered public accountants), advisors, attorneys, consultants, or other agents, but only in their capacities as such.

**179.** ~~178.~~ **"Retained Causes of Action"** shall mean the actual and potential causes of action that the Reorganized Debtors shall retain under the Plan, on and after the Effective Date, on behalf of the Debtors, to commence and pursue, as appropriate, in any court or other tribunal including in an adversary proceeding filed in one or more of the Chapter 11

34

Cases, whether such causes of action accrued before or after the Petition Date and whether such causes of action are known or unknown as of any date of determination, including, but not limited to, the actions listed in Exhibit 19 included in the Exhibit Book, but specifically excluding the Asbestos PI Trust Causes of Action and the Asbestos PD Trust Causes of Action.

**180.**    ~~179.~~ **"SA Asbestos Personal Injury Claim"** shall mean an "Asbestos Personal Injury Claim" as defined in the Sealed Air Settlement Agreement, including any and all SA Claims, SA Debts, and SA Damages for death, bodily injury, sickness, disease, medical monitoring, or other personal injuries (whether physical or not) caused or allegedly caused by, based on, arising out of, or attributable to, directly or indirectly, in whole or in part, the presence of or exposure at any time to asbestos or asbestos-containing material or products, mined, processed, consumed, used, stored, manufactured, designed, sold, assembled, distributed, disposed of, or installed by or on behalf of any SA Debtor or any of its predecessors, successors, or assigns, or any current or former Affiliate of any of the foregoing (but only to the extent that any liability is asserted to exist as a result of it being such a predecessor, successor, assign, or current or former Affiliate), including any SA Claims, SA Debts, and SA Damages for reimbursement, indemnification, subrogation, or contribution.

**181.**    ~~180.~~ **"SA Asbestos Property Damage Claim"** shall mean an "Asbestos Property Damage Claim" as defined in the Sealed Air Settlement Agreement, including any and all SA Claims, SA Debts, and SA Damages for or arising out of property damage, including the cost of inspecting, maintaining, encapsulating, abating, repairing, decontaminating, removing, or disposing of asbestos or asbestos-containing materials or products in buildings or other structures, or other property caused or allegedly caused by, based on, arising out of, or attributable to, directly or indirectly, in whole or in part, the installation in, presence in, or removal of asbestos or asbestos-containing material or products mined, processed, consumed, used, stored, manufactured, designed, sold, assembled, distributed, disposed of, or installed by or on behalf of any SA Debtor or any of its predecessors, successors, or assigns, or any current or former Affiliate of any of the foregoing (but only to the extent that any liability is asserted to exist as a result of it being such a predecessor, successor, assign, or current or former Affiliate), including any SA Claims, SA Debts, and SA Damages for reimbursement, indemnification, subrogation, or contribution.

**182.**    ~~181.~~ **"SA Claims"** shall mean   "Claim" as defined in the Sealed Air Settlement Agreement, including any and all claims, whether direct, indirect, derivative or otherwise, including 'claim' as the term is defined in section 101(5) of the Bankruptcy Code (except that a right to an equitable remedy shall also be considered an SA Claim whether or not the breach gives rise to a right of payment), remedies, or causes of action, liability, SA Debts, or SA Damages, known or unknown, now existing or hereafter arising, that have been, could have been, may be, or could be alleged or asserted now or in the future by any Entity against the SA Debtors, their predecessors, successors, assigns, or any current or former Affiliate of any of the foregoing, including the Canadian Entities, or the Sealed Air Indemnified Parties, of whatsoever kind or nature, whether alleged or asserted or not, whether founded in law, equity, admiralty, tort, contract, statute, or otherwise, and

35

includes demands, liability, suits, judgments, and all legal or equitable theories of recovery whether arising under the common law or any statute, ordinance, or regulation. Without limiting the generality of the foregoing, SA Claims shall include any and all claims, causes of action, SA Debts, or SA Damages under or attributable to: (i) chapter 5 of the Bankruptcy Code; (ii) successor liability, piercing the corporate veil, alter ego liability, agency liability, transferee liability, or other similar claims or causes of action seeking to hold an Entity liable for the debts or obligations of another Entity; (iii) chapter 176 of title 28 of the United States Code or any other similar statutes; (iv) any debtor-creditor, fraudulent transfer, or fraudulent conveyance statutes; or (v) any other similar claims or causes of action (all such SA Claims, causes of action, SA Debts, or SA Damages under or attributable to (i) through (v), collectively, **"SA Successor Claims"**).

**183.** ~~182.~~ **"SA Damages"** shall mean "Damages" as defined in the Sealed Air Settlement Agreement, including any and all potential elements of recovery or relief, including those that are known, unknown, certain, uncertain, anticipated, or unanticipated, that have been, could have been, may be, or could be alleged or asserted now or in the future against the Sealed Air Indemnified Parties, whether alleged, unalleged, asserted, or unasserted by Plaintiffs or by any other Entity under any legal, regulatory, administrative, or equitable theory against the Sealed Air Indemnified Parties, and includes equitable relief, declaratory relief, actual damages (whether for successor liability, fraudulent transfer, fraudulent conveyance, alter ego liability, agency liability, property damage, environmental liability, Tax liability, economic loss, loss of profits, medical expenses, medical monitoring, personal injury, loss of consortium, wrongful death, survivorship, or compensatory, proximate, consequential, general, incidental, or special damages, or any other liability, loss, or injury), statutory or treble, or multiple or penal or punitive or exemplary damages, attorneys' fees, interest, expenses, and costs of court.

**184.** ~~183.~~ **"SA Debtors"** shall mean the "Debtors" as defined in the Sealed Air Settlement Agreement, including the Debtors, each of their estates, any trustee or examiner that may be appointed in any of the Debtors' cases under the Bankruptcy Code, and the reorganized Debtors and includes any new corporation or other entity to which the stock or the assets of any of the Debtors or any combination thereof, are transferred pursuant to the Plan (other than the Asbestos PI Trust, the Asbestos PD Trust, or an unrelated third-party that has purchased assets from a Debtor pursuant to section 363 of the Bankruptcy Code).

**185.** ~~184.~~ **"SA Debts"** shall mean "Debts" as defined in the Sealed Air Settlement Agreement, including any liability or obligation arising from, based on, or attributable to any SA Claim.

**186.** ~~185.~~ **"SA Indemnified Taxes"** shall mean all Taxes and other amounts for which any SA Debtor or any SA Non-Debtor Affiliate is responsible or required to pay, or is required to indemnify any SA Indemnified Party for or in respect thereto, pursuant to the 1998 Tax Sharing Agreement and including all "Grace Taxes" (as defined in the Sealed Air Settlement Agreement).

**187.** ~~186.~~ **"SA Non-Debtor Affiliates"** shall mean "Non-Debtor Affiliates" as defined in the Sealed Air Settlement Agreement, including the Affiliates of the SA Debtors that are not debtors or debtors in possession under the Bankruptcy Code.

**188.** ~~187.~~ **"SA Successor Claims"** shall have the meaning set forth in the definition of "SA Claims."

**189.** ~~188.~~ **"Schedules"** shall mean the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors in Possession with the Bankruptcy Court, as required by Bankruptcy Code § 521 and the Bankruptcy Rules, as such schedules and statements may be amended by the Debtors in Possession from time to time in accordance with Bankruptcy Rule 1007.

**190.** ~~189.~~ **"Sealed Air"** shall mean Sealed Air Corporation and Cryovac, Inc.

**191.** ~~190.~~ **"Sealed Air Action"** shall mean the suit styled *Official Committee of Asbestos Personal Injury Claimants and Official Committee of Asbestos Property Damage Claimants of W. R. Grace & Co., suing on behalf of the Chapter 11 Bankruptcy Estate of W. R. Grace & Co., el. al. v. Sealed Air Corporation and Cryovac, Inc.*, Adv. No. 02-2210 (D. Del.).

**192.** ~~191.~~ **"Sealed Air Common Stock"** shall mean the voting common stock, par value of $0.10 per share, of Sealed Air Corporation.

**193.** ~~192.~~ **"Sealed Air Corporation"** shall mean Sealed Air Corporation, a Delaware corporation (taxpayer identification number 65-0654331), formerly known as W. R. Grace & Co. prior to the Cryovac Transaction.

**194.** ~~193.~~ **"Sealed Air Group"** shall mean the group of corporations, including but not limited to Cryovac, Inc., that from on or about September 29, 1996, were or hereafter become, members of an affiliated group of corporations under section 1504 of the IRC, and the Treasury Regulations thereunder, that have joined, or hereafter join, in filing a Consolidated Tax Return of which Sealed Air Corporation, or any successor to Sealed Air Corporation, was or is the Common Parent.

**195.** ~~194.~~ **"Sealed Air Indemnified Parties"** shall mean the "Released Parties" as defined in the Sealed Air Settlement Agreement, including Sealed Air Corporation, Cryovac, Inc. and all of their parent corporations, subsidiary corporations, joint venturers, Affiliates, and sister corporations, and any and all of their past, present and future agents, servants, officers, directors, employees, successors, assigns, heirs, executors, administrators, legal representatives, beneficiaries, insurers (but solely to the extent of coverage procured by Sealed Air Corporation (after March 31, 1998) or Cryovac, Inc. (after such date) of any liabilities of Sealed Air Corporation or Cryovac, Inc. for Asbestos-Related Claims), or any of them, including any Entity acting on behalf of or at the direction of any of them, but specifically excluding (i) the SA Debtors, (ii) all SA Non-Debtor Affiliates, (iii) Fresenius (to the extent of any and all SA Claims, SA Damages or SA Debts arising out

of the Fresenius Transaction), and (iv) any and all insurers of the SA Debtors or the SA Non-Debtor Affiliates to the extent that they have provided coverage for Asbestos-Related Claims now or hereafter asserted or which could have been asserted at any time against the SA Debtors or the SA Non-Debtor Affiliates.

**196.** ~~195.~~ "**Sealed Air Settlement Agreement**" shall mean that certain Settlement Agreement and Release, dated November 10, 2003, by and among the Asbestos PI Committee, the Asbestos PD Committee, Sealed Air Corporation, and Cryovac, Inc., included as Exhibit 22 in the Exhibit Book and Filed with the Bankruptcy Court on November 26, 2003, in Adv. No. 02-2210, Dkt. No. 729, as amended by the Sealed Air Settlement Order.

**197.** ~~196.~~ "**Sealed Air Settlement Order**" shall mean the Order Approving, Authorizing, and Implementing Settlement Agreement By and Among the Plaintiffs, Sealed Air Corporation and Cryovac, Inc., dated June 27, 2005, and entered by the Bankruptcy Court on June 29, 2005, Dkt. No. 8742, included as Exhibit 23 in the Exhibit Book.

**198.** ~~197.~~ "**SEC**" shall mean the United States Securities and Exchange Commission.

**199.** ~~198.~~ "**Secured Claim**" shall mean a Claim that is: (i) secured by a lien (as such term is defined in Bankruptcy Code § 101(37)) on property in which the Debtors have an interest, which lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, or (ii) entitled to setoff under Bankruptcy Code § 553, to the extent of (A) the value of the Claimant's interest in the Debtor's interest in such property or (B) the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code § 506(a).

**200.** ~~199.~~ "**Securities Act**" shall mean the Securities Act of 1933, as amended.

**201.** ~~200.~~ "**Settled Asbestos Insurance Company**" shall mean any Asbestos Insurance Entity that has entered into an Asbestos Insurance Settlement Agreement prior to the ~~conclusion~~**eleventh day following the entry** of the Confirmation ~~Hearing~~**Order by the Bankruptcy Court**; *but only* with respect to, and only to the extent of, any Asbestos Insurance Policy (or any portion thereof) identified as the subject of an Asbestos Insurance Settlement Agreement in Exhibit 5 in the Exhibit Book; *provided, however,* that (i) each such Asbestos Insurance Settlement Agreement is listed by the Plan Proponents, acting together, in Exhibit 5**;** and (ii) ~~the~~**any** Asbestos Insurance Settlement Agreement ~~is approved by the Court as sufficiently comprehensive to warrant treatment under section 524(g) of the Bankruptcy Code~~**entered into after the Petition Date has been approved by the Court after notice and a hearing (which approval may be contained in the Confirmation Order or any other order of the Court)**; and *further provided*, for the avoidance of doubt, that an Asbestos Insurance Entity is a Settled Asbestos Insurance Company to the fullest extent, but only to the extent, provided by section 524(g) in respect of any claim that arises by reason of one of the activities enumerated in section 524(g)(4)(A)(ii).

**202.** ~~201.~~ **"Share Issuance Agreement"** shall mean the agreement setting forth the obligation of the Reorganized Parent to issue a number of shares of Parent Common Stock to the Trusts' Representative, on behalf of the Asbestos PI Trust and the Asbestos PD Trust, in the form included as Exhibit 20 of the Exhibit Book or such other substantially similar form as shall have been agreed to by each of the Plan Proponents.

**203.** ~~202.~~ **"Stock Incentive Plan"** shall mean the stock incentive awards to the management of the Reorganized Debtors and to other key employees, and to the Board of Directors of the Reorganized Debtors as set forth in the stock incentive plan included as Exhibit 31 of the Exhibit Book.

**204.** ~~203.~~ **"Stock Trading Restrictions Term Sheet"** shall mean trading restrictions on Parent Common Stock as summarized on the stock trading restrictions term sheet included as Exhibit 32 of the Exhibit Book. For the avoidance of doubt, no restrictions shall be imposed on the acquisition or sale of Parent Common Stock by the Asbestos PI Trust or the Asbestos PD Trust or the ability of any person to acquire any or all of the Warrant Stock (as defined in the Stock Trading Restrictions Term Sheet at ¶ 4(a)(iii)) or any other Parent Common Stock from the Asbestos PI Trust and/or the Asbestos PD Trust to the extent the aforementioned Warrant Stock or Parent Common Stock is acquired by the Asbestos PI Trust or the Asbestos PD Trust from the Parent.

**205.** ~~204.~~ **"Successor Claims"** shall mean any of the SA Successor Claims and/or the Grace-Related Claims.

**206.** ~~205.~~ **"Successor Claims Injunction"** shall have the meaning set forth in Section 8.5 of this Plan.

**207.** ~~206.~~ **"Tax"** or **"Taxes"** means all taxes, customs, duties, levies, fees, tariffs, imposts, deficiencies, or other charges or assessments of any kind whatsoever, including all net income, gross income, capital gains, gross receipt, property, franchise, sales, use, excise, withholding, payroll, employment, social security, worker's compensation, unemployment, occupation, severance, capital stock, ad valorem, value added, transfer, gains, profits, net worth, asset, transaction, business consumption, or other taxes, and any interest, penalties, fines, additions to tax, or additional amounts with respect thereto, imposed by any governmental authority (whether domestic or foreign).

**208.** ~~207.~~ **"Tax Item"** shall mean any item of income, gain, loss, deduction, credit, provisions for reserves, recapture of credit, net operating loss, net capital loss, tax credit, sales, revenues, property or asset values, capital or any other item which increases or decreases FSA Taxes paid or payable, including an adjustment under IRC section 481 (or comparable provisions of the FSA Tax law of any other jurisdiction (domestic or foreign)) resulting from a change in accounting method, the allowance or disallowance in whole or in part of, or assessment with respect to, a tentative allowance of refund claimed on Form 1139, the allowance or disallowance in whole or in part of a net operating loss, net capital loss, or tax credit claimed on a Tax Return, an amended Tax Return or claim

for refund, or an adjustment attributable to a quick refund of overpayment of estimated tax.

**209.** ~~208.~~ **"Tax Period"** shall mean any period for, or with respect to, which a Tax Return is or has been filed, is required to be filed or may be filed.

**210.** ~~209.~~ **"Tax Return"** shall mean any return, filing, questionnaire, information return or other document required or permitted to be filed, with respect to any Tax, including requests for extensions of time, filings made with estimated tax payments, claims for refund, Forms 1139 and amended returns, that has been, or hereafter may, be filed for any Tax Period with any tax authority (whether domestic or foreign).

**211.** ~~210.~~ **"Trusts' Representative"** shall mean the Entity from time to time acting as the "Trusts' Representative" on behalf of the Asbestos PI Trust and the Asbestos PD Trust pursuant to the terms of the Asbestos PI/PD Inter-Creditor Agreement.

**212.** ~~211.~~ **"TSIA"** shall mean that certain Tax Sharing and Indemnification Agreement made as of September 27, 1996, by and among Grace New York, Grace-Conn, and Fresenius AG, an Aktiengesellshaft organized under the laws of the Federal Republic of Germany and an indirect parent of FMCH.

**213.** ~~212.~~ **"United States Trustee"** shall mean the Office of the United States Trustee for the District of Delaware.

**214.** ~~213.~~ **"Unliquidated Claim"** shall mean: (i) any Plan Claim (other than an Asbestos PI Claim), the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be fixed, or (ii) any Plan Claim (other than an Asbestos PI Claim) for which no Allowed Amount has been determined.

**215.** ~~214.~~ **"Unresolved Asbestos PD Bar Date Claims"** shall mean the Asbestos PD Claims in Class 7A that are identified on Exhibit 21 of the Exhibit Book.

**216.** ~~215.~~ **"Unresolved Asbestos PD Claims"** shall mean the Unresolved Asbestos PD Bar Date Claims and all other Asbestos PD Claims in Class 7A, other than Asbestos PD Claims that were resolved pursuant to PD Settlement Agreements.

**217.** ~~216.~~ **"Unsecured Creditors' Committee"** shall mean the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Chapter 11 Cases pursuant to Bankruptcy Code § 1102.

**218.** ~~217.~~ **"US ZAI PD Claim"** shall mean a Claim, SA Claim, Grace-Related Claim, or Demand, if any, against or debt, liability, or obligation of, any of the Debtors or the Asbestos Protected Parties, including (x) all related claims, debts, obligations, liabilities, and remedies for compensatory (including general, special, and consequential damages) and punitive damages, and restitution and (y) all cross-claims, contribution claims,

40