UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                        .    Case No.  01-1139 (JKF)
                              .
W.R. GRACE & CO.,             .
et al.,                       .    USX Tower – 54th Floor
                              .    600 Grant Street
                              .    Pittsburgh, PA 15219
              Debtors.   .
                              .    December 14, 2009
. . . . . . . . . . . . ..    10:29 a.m.


TRANSCRIPT OF TELEPHONIC CONFERENCE
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:          Kirkland & Ellis, LLP
                          By:  DAVID BERNICK, ESQ.
                               BARBARA HARDING, ESQ.
                               JANET BAER, ESQ.
                               LISA ESAYIAN, ESQ.
                          200 East Randolph Drive
                          Chicago, IL  60601


For the Debtors:          Kirkland & Ellis, LLP
                          By:  THEODORE FREEDMAN, ESQ.
                          Citigroup Center, 153 East 53rd St.
                          New York, NY  10022


For the Debtors:          Reed, Smith, Shaw & McClay
                          By:  DOUGLAS E. CAMERON, ESQ.
                               JAMES J. RESTIVO, ESQ.
                          Reed Smith Centre
                          225 Fifth Avenue
                          Pittsburgh, PA  15222


Audio Operator:           Dayna Kanary


Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609)586-2311      Fax No. (609) 587-3599**

**APPEARANCES (CONT'D):**

For the Debtors:              W.R. Grace & Co.
                             By:  RICHARD FINKE

For the Asbestos
Creditors Committee:          Caplin & Drysdale, Chartered
                             By:  PETER LOCKWOOD, ESQ.
                                  NATHAN FINCH, ESQ.
                                  WALTER SLOCOMBE, ESQ.
                                  GARY SVIRSKY, ESQ.
                             One Thomas Circle, NW
                             Washington, D.C.  20005

For the Future               Orrick, Herrington & Sutcliffe, LLP
Claimants                    By:  ROGER FRANKEL, ESQ.
Representatives:                  JONATHAN GUY, ESQ.
                             Washington Harbour
                             3050 K Street, N.W.
                             Washington, D.C.  20007

For the Equity               Kramer Levin Naftalis & Frankel
Committee:                   By:  DOUGLAS H. MANNAL, ESQ.
                             919 Third Avenue
                             New York, NY  10022

For the Libby Claimants:     Lewis, Slovak & Kovacich, P.C.
                             By:  TOM L. LEWIS, ESQ.
                                  MARK KOVACICH, ESQ.
                             725 Third Avenue North
                             Great Falls, MT 59401

                             McGarvey, Heberling, Sullivan and
                              McGarvey, P.C.
                             By:  JON HEBERLING, ESQ.
                                  JOHN LACEY, ESQ.
                             725 Third Avenue North
                             Great Falls, MT  59401

                             Cohn Whitesell & Goldberg, LLP
                             By:  DANIEL C. COHN, ESQ.
                             101 Arch Street
                             Boston, MA  02110

For the                      Stroock & Stroock & Lavan
Unsecured Creditors'         By:  KENNETH PASQUALE, ESQ.
Committee:                        ARLENE KRIEGER, ESQ.
                             180 Maiden Lane
                             New York, NY  10038-4982

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (CONT'D):**

For the Property                Bilzin Sumberg Baena Price &
Damage Committee:                 Axelrod LLP
                                By:  MATTHEW KRAMER, ESQ.
                                200 South Biscayne Boulevard
                                Suite 2500
                                Miami, FL  33131

                                Law Office of Alan B. Rich
                                By:  ALAN B. RICH, ESQ.
                                1401 Elm Street
                                Suite 4620
                                Dallas, TX  75202

                                Hamilton, Rabinovitz & Alshuler
                                By:  FRANCINE RABINOWITZ
                                26384 Carmel Rancho Lane
                                Suite 202
                                Carmel, CA  93923

For the Ad Hoc                  Dewey & LeBoeuf, LLP
Committee of Equity             By:  JENNIFER WHITENER, ESQ.
Sec. Holders:                   125 West 55th Street
                                New York, NY  10019

For Committee of                Campbell & Levine
Asbestos Personal               By:  MARK T. HURFORD, ESQ.
Injury Claimants:               800 North King Street
                                Suite 300
                                Wilmington, DE  19701

For Maryland Casualty:          Eckert Seamans Cherin & Mellott, LLC
                                By:  EDWARD LONGOSZ, II, ESQ.
                                     GABRIELLA CELLAROSI, ESQ.
                                1747 Pennsylvania Avenue, N.W.
                                Suite 1200
                                Washington, D.C.  20006

For Sealed Air:                 Skadden, Arps, Slate, Meagher & Flom,
                                  LLP
                                By: DAVID TURETSKY, ESQ.
                                One Rodney Square
                                Wilmington, DE  19801

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (CONT'D):**

| | |
|---|---|
| For Garlock Sealing Technologies: | Robinson, Bradshaw & Hinson, P.A.<br>By:  GARLAND CASSADA, ESQ.<br>101 North Tryon Street<br>Suite 1900<br>Charlotte, NC  28246 |
| For AXA Belgium: | Tucker Arensberg, P.C.<br>By:  MICHAEL A. SHINER, ESQ.<br>1500 One PPG Place<br>Pittsburgh, PA  15222 |
| For State of Montana: | Womble, Carlyle, Sandridge & Rice<br>By:  FRANK MONACO, ESQ.<br>222 Delaware Avenue<br>Suite 1501<br>Wilmington, DE  19801 |
| For Serengeti: | Vinson & Elkins, LLP<br>By:  ARI BERMAN, ESQ.<br>Trammell Crow Center<br>2001 Ross Avenue, Suite 3700<br>Dallas, TX  75201 |
| For the Debtors: | Pachulski, Stang, Ziehl &Jones<br>By:  JAMES O'NEILL, ESQ.<br>919 North Market Street<br>17th Floor<br>Wilmington, DE  19899-8705 |
| For Federal Insurance Company: | Cozen O'Connor<br>By:  JACOB C. COHN, ESQ.<br>1900 Market Street<br>Philadelphia, PA  19103 |
| For Various Claimant Firms: | Stutzman, Bromberg, Esserman & Plifka<br>By:  DAVID J. PARSONS, ESQ.<br>2323 Bryan Street<br>Suite 2200<br>Dallas, TX  75201 |
| For Edwards' Judgment Claimants: | Reaud, Morgan & Quinn<br>By:  DAVID J. PARSONS, ESQ.<br>801 Laurel<br>Beaumont, TX  77701 |

**APPEARANCES (CONT'D)**

| | |
|---|---|
| For Edwards' Judgment Claimants: | Smith, Katzenstein & Furlow<br>By:  KATHLEEN MILLER, ESQ.<br>The Corporate Plaza<br>800 Delaware Avenue<br>Suite 1000<br>Wilmington, DE  19899 |
| For BNSF Railway: | Pepper Hamilton, LLP<br>By:  LINDA CASEY, ESQ.<br>3000 Two Logan Square<br>Philadelphia, PA  19103 |
| For Scott Company: | Vorys, Sater, Seymour & Pease, LLP<br>By:  TIFFANY COBB, ESQ.<br>52 East Gay Street<br>Columbus, OH  43216 |
| For Fresenius: | McDermott Will & Emery<br>By:  NATHAN F. COCO, ESQ.<br>227 West Monroe Street<br>Chicago, IL  60606 |
| For Travelers: | Simpson Thacher<br>By:  MARY BETH FORSHAW, ESQ.<br>     ELISA ALCABES, ESQ.<br>     SAMUEL J. RUBIN, ESQ.<br>425 Lexington Avenue<br>New York, NY  10017 |
| For GEICO, Seaton Ins. Co., Republic Ins. Co.: | Drinker Biddle & Reath LLP<br>By:  MICHAEL F. BROWN, ESQ.<br>     JEFFREY M. BOERGER, ESQ.<br>One Logan Square<br>18th and Cherry Streets<br>Philadelphia, PA  19103 |
| For Allstate Insurance: | Cuyler Burke, LLP<br>By:  ANDREW CRAIG, ESQ.<br>Parsippany Corporate Center<br>Four Century Drive<br>Parsippany, NJ  07054 |

**J&J COURT TRANSCRIBERS, INC.**

APPEARANCES (CONT'D):

| | |
|---|---|
| For Ford, Marrin, Esposito, Witmeyer & Gleser, LLP: | Ford, Marrin, Esposito, Witmeyer & Gleser, LLP<br>By:  ELIZABETH M. DeCRISTOFARO, ESQ.<br>Wall Street Plaza, 23rd Floor<br>New York, NY  10005-1875 |
| For Royal Indemnity & Arrowood: | O'Melveny & Myers, LLP<br>By:  TANCRED SCHIAVONI, ESQ.<br>     BRAD ELIAS, ESQ.<br>     PAUL KOEPFF, ESQ.<br>     ALLEN SCHWARTZ, ESQ.<br>Times Square Tower<br>Seven Times Square<br>New York, NY  10036 |
| For CNA: | Goodwin Procter, LLP<br>By:  DANIEL GLOSBAND, ESQ.<br>Exchange Place<br>Boston, MA  02109-2881 |
| For CNA: | Good Proctor, LLP<br>By:  MICHAEL GIANNOTTO, ESQ.<br>901 New York Avenue, NW<br>Washington, DC  20001 |
| For Fireman's Fund: | Stevens & Lee, P.C.<br>By:  JOHN DEMMY, ESQ.<br>1105 North Market Street, 7th Fl.<br>Wilmington, DE  19801 |
| For Maryland Casualty: | Connelly Bove Lodge & Hutz, LLP<br>By:  JEFFREY WISLER, ESQ.<br>The Nemours Building<br>1007 North Orange Street<br>Wilmington, DE  19899 |
| For Maryland Casualty: | Eckert Seamans<br>By:  EDWARD D. LONGOSZ, ESQ.<br>1747 Pennsylvania Avenue, NW<br>Suite 1200<br>Washington, DC 20006 |
| For Maryland Casualty: | Wiley Rein, LLP<br>By:  KARALEE C. MORELL, ESQ.<br>1776 K Street NW<br>Washington, DC 20006 |

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (CONT'D):**

| | |
|---|---|
| For Zurich Insurance: | Wiley Rein, LLP<br>By:  RICHARD IFFT, ESQ.<br>1776 K Street NW<br>Washington, DC 20006 |
| For the Unsecured<br>Creditors' Committee: | Strook & Strook & Lavan<br>By:  LEWIS KRUGER, ESQ.<br>180 Maiden Lane<br>New York, NY 10038 |
| For Official Committee<br>of Asbestos Property<br>Damage Claimants: | Dies & Hile, LLP<br>By:  MARTIN DIES, ESQ.<br>1601 Rio Grande, Suite 330<br>Austin, TX  78701 |
| | LECG<br>By:  ALAN MADIAN, ESQ.<br>1725 Eye Street NW, Ste 800<br>Washington, DC,  20006 |
| | Pryor Cashman, LLP<br>By:  RICHARD LEVY, ESQ.<br>7 Times Square<br>New York, NY  10036 |
| For the Property<br>Damage Committee: | Bilzin Sumberg Baena Price &<br>  Axelrod LLP<br>By:  SCOTT BAENA, ESQ.<br>     JAY SAKALO, ESQ.<br>200 South Biscayne Boulevard<br>Suite 2500<br>Miami, FL  33131 |
| For Hartford Financial<br>Service Group, Inc.: | Wilmer Cutler Pickering Hale & Dorr,<br>  LLP<br>By:  MELANIE DRITZ, ESQ.<br>399 Park Avenue<br>New York, NY  10022 |
| For the Bank Lenders: | Paul Weiss Rifkind Wharton &<br>  Garrison, LLP<br>By:  MARGARET PHILLIPS, ESQ.<br>     REBECCA ZUBATY, ESQ.<br>     SARAH HARNETT, ESQ.<br>     RICHARD H. WYRON, ESQ.<br>1285 Avenue of the Americas<br>New York, NY  10019 |

**APPEARANCES (CONT'D):**

| | |
|---|---|
| For Asbestos Property<br>Damage Claimants: | Scott Law Group<br>By:  DARRELL SCOTT, ESQ.<br>1001 East Main Street, Suite 500<br>Sevierville, TN  37864 |
| For National Union Fire<br>Insurance Co.: | Zeichner Ellman & Krause, LLP<br>By:  ROBERT GUTTMANN, ESQ.<br>        MICHAEL DAVIS, ESQ.<br>575 Lexington Avenue<br>New York, NY  10022 |
| For PD FCR: | Law Office of Alan B. Rich<br>By:  ALAN RICH, ESQ.<br>1201 Main Street, Suite 1910,<br>Dallas, TX  75202 |
| For the Future<br>Claimants<br>Representatives: | Orrick, Herrington & Sutcliffe,<br>  LLP<br>By:  PERI MAHALEY, ESQ.<br>Washington Harbour<br>3050 K Street, N.W.<br>Washington, D.C.  20007 |
| For Federal Insurance<br>Company: | Cozen O'Connor<br>By:  ILAN ROSENBERG, ESQ.<br>1900 Market Street<br>Philadelphia, PA  19103 |
| For Official Committee<br>of Asbestos Personal<br>Injury Claimants: | Anderson Kill & Olick<br>By:  ROBERT M. HORKOVICH, ESQ.<br>1251 Avenue of the Americas<br>New York, NY  10020-1186 |
| For Grace Certain<br>Cancer Claimants: | Montgomery, McCracken, Walker &<br>  Rhoads, LLP<br>By:  NATALIE D. RAMSEY, ESQ.<br>300 Delaware Avenue, Ste. 750<br>Wilmington, DE  19801 |
| For David T. Austern,<br>the Future Claimants'<br>Representative: | Phillips, Goldman & Spence, P.A.<br>By:  JOHN C. PHILLIPS, ESQ.<br>1200 North Broom Street<br>Wilmington, DE  19806 |

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (CONT'D):**

| | |
|---|---|
| For David T. Austern, the Future Claimants' Representative: | Lincoln International, LLC<br>By:  GEORGE COLES<br>JOSEPH RADECKI |
| For the Asbestos Creditors Committee: | Ferry Joseph & Pearce, P.A.<br>By:  THEODORE TACCONELLI, ESQ.<br>824 Market Street, Suite 19899<br>Wilmington, DE  19899 |
| For Ford, Marrin, Esposito, Witmeyer & Gleser: | Ford, Marrin, Esposito, Witmeyer & Gleser<br>By:  SHAYNE SPENCER, ESQ.<br>Wall Street Plaza<br>New York, NY  10005 |
| For Official Committee of Unsecured Creditors: | Duane Morris, LLP<br>By:  MICHAEL LASTOWSKI, ESQ.<br>1100 North Market Street, Suite 1200<br>Wilmington, DE  19801-1246 |
| For Official Committee of Asbestos Property Damage Claimants: | Brandi Law Firm<br>By:  THOMAS J. BRANDI, ESQ.<br>     TERENCE D. EDWARDS, ESQ.<br>44 Montgomery St., Suite 1050<br>San Francisco, CA  94104 |
| | Lieff, Cabraser, Heimann & Bernstein<br>By:  ELIZABETH J. CABRASER, ESQ.<br>Embarcadero Center West<br>275 Battery Street, Suite 3000<br>San Francisco, CA  94111 |
| For the Libby Claimants: | Cohn, Whitesell & Goldberg, LLP<br>By:  CHRISTOPHER M. CANDON, ESQ.<br>101 Arch Street<br>Boston, MA  02110 |
| For the Bank Lenders: | Landis, Rath & Cobb, LLP<br>By:  RICHARD COBB, ESQ.<br>919 Market Street, Suite 1800<br>Wilmington, DE  19899 |
| For Travelers Casualty Surety Company: | Morris, Nicholas, Arsht & Tunnell, LLP<br>By:  ANN C. CORDO, ESQ.<br>1201 North Market Street, 18th Floor<br>Wilmington, DE  19899 |

```
For Everest               Crowell & Moring LLP
Reinsurance Co.:          By:  LESLIE A. DAVIS, ESQ.
                               MARK PLEVIN, ESQ.
                          1001 Pennsylvania Avenue, N.W.
                          Washington, DC  20004

For the PD Committee:     Speights & Runyan
                          By:  DANIEL SPEIGHTS, ESQ.
                               MARION FAIREY, ESQ.
                               ALAN RUNYAN, ESQ.
                          200 Jackson Avenue, East
                          Hampton, SC  29924

For Garlock Sealing       Robinson, Bradshaw & Hinson
Technologies:             By:  GARLAND S. CASSADA, ESQ.
                          101 North Tryon Street
                          Suite 1900
                          Charlotte, NC  28246

For Everest Reinsurance   Marks, O'Neill, O'Brien & Courtney LLP
Company, et al.:          By:  BRIAN L. KASPRZAK, ESQ.
                               JOHN D. MATTEY, ESQ.
                          913 North Market Street
                          Suite 800
                          Wilmington, DE  19801

For Anderson Memorial     Kozyak, Tropin & Throckmorton, PA
Hospital:                 By:  DAVID L. ROSENDORF, ESQ.
                          2525 Ponce de Leon, 9th Floor
                          Miami, Florida 33134

For ZAI Claimants         Hogan Firm Attorneys at Law
& various law firms:      By:  DANIEL K. HOGAN, ESQ.
                          1311 Delaware Avenue
                          Wilmington, DE  19801

For the U.S. Trustee:     Office of the U.S. Trustee
                          By:  DAVID KLAUDER, ESQ.
                          844 King Street, Suite 2313
                          Wilmington, DE  19801

For AXA Belgium:          Mendes & Mount
                          By:  ANNA NEWSOM, ESQ.
                          750 Seventh Avenue
                          New York, NY  10019
```

**J&J COURT TRANSCRIBERS, INC.**

**APPEARANCES (CONT'D):**

For Royal Insurance:          Wilson Elser Moskowitz Edelman
                                & Dicker, LLP
                              By:  CARL PERNICONE, ESQ.
                                  150 East 42nd Street
                                  New York, NY  10017

For Official Committee        Richardson Patrick Westbrook &
of Asbestos Property            Brickman, P.C.
Claimants:                    By:  EDWARD J. WESTBROOK, ESQ.
                              174 East Bay Street
                              Charleston, SC  29401

For Morgan Stanley            Katten, Muchin, Rosenman, LLP
Senior Funding:               By:  JEFF FRIEDMAN, ESQ.
                                  MERRITT PARDINI, ESQ.
                              575 Madison Avenue
                              New York, NY  10022


For Alexander                 By:  ALEXANDER SANDERS Jr.
Sanders, Jr.:

                              -  -  -

1        THE COURT:  Good morning.  This is the matter of W.R.
2    Grace, Bankruptcy Number 01-1139.  I have a list of
3    participants.  Everyone is appearing by phone.  Scott Baena,
4    Janet Baer, Ari Berman, David Bernick, Thomas Brandi, Michael
5    Brown, Elizabeth Cabraser,  Douglas Cameron, Christopher
6    Candon, Linda Casey, Garland Cassada, Gabriella Cellarosi,
7    Richard Cobb, Tiffany Cobb, Daniel Cohn, Jacob Cohn, George
8    Coles, Ann Cordo, Andrew Craig, Jaqueline Dais-Visca, Leslie
9    Davis, Michael Davis, Elizabeth DeCristofaro, John Demmey,
10   Martin Dies, Melanie Dritz, Terence Edwards, Brad Elias, Lisa
11   Esayian, Marion Fairey, Richard Finke, Roger Frankel, Theodore
12   Freedman, Jeff Friedman, Michael Giannotto, Daniel Glosband,
13   James Green, Robert Guttmann, Jonathan Guy, Barbara Harding,
14   Sarah Harnett, Daniel Hogan, Robert Horkovich,  Mark Hurford,
15   Richard Lift -- Ifft, I'm sorry, Brian Kasprzak, David Klauder,
16   Paul Koepff,  Matthew Kramer, Arlene Krieger, Michael
17   Lastowski, Richard Levy, Peter Lockwood, Edward Longosz, Alan
18   Madian, Peri Mahaley, Douglas Mannal, John Mattey, Kathleen
19   Miller, Francis Monaco, Karalee Morell, James O'Neill, Kate
20   Orr, Merritt Pardini, David Parsons, Kenneth Pasquale, Carl
21   Pernicone, Margaret Phillips, John Phillips, Mark Plevin,
22   Francine Rabinovitz, Joseph Radecki, Natalie Ramsey, James
23   Restivo, Alan Rich, Ilan Rosenberg, David Rosendorf, Samuel
24   Rubin, Alan Runyan, Jay Sakalo, Alexander Sanders, Tancred
25   Schiavoni, Allen Schwartz, Darrell Scott, Mark Shelnitz,

1 Michael Shiner, Walter Slocombe, Warren Smith, Daniel Speights,

2 Shayne Spencer, Gary Svirsky, Theodore Tacconelli, David

3 Turetsky, Edward Westbrook, Jeffrey Wisler, Richard Wyron and

4 Rebecca Zubaty.

5       MS. BAER:  Good morning, Your Honor.  Janet Baer on

6 behalf of W.R.  Grace.

7       THE COURT:  Good morning.

8       MS. BAER:  Your Honor, on the agenda today, we really

9 actually only have one contested matter and it is at the end of

10 the agenda involving a property damage claim.  And after that I

11 just wanted to let the parties know that we did want to bring

12 the Court up to date on a couple of anticipated plan amendments

13 and what they're all about.  So with that I'll just proceed

14 through the agenda.

15       THE COURT:  All right.

16       MS. BAER:  Your Honor, matter Number one is the

17 continued objection of the debtors to the Massachusetts

18 Department of Revenue claim.  That matter is proceeding through

19 various entities at the Department of Revenue.  We want to

20 continue this to January 25th, Your Honor, but at that point in

21 time we may either have to ask the Court to get involved to

22 move this along or otherwise we will continue it for a number

23 of months so that the various state-related matters that relate

24 to it can just proceed and we not have to keep bringing this up

25 every month.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  All right.

2          MS. BAER:  Agenda Item Number 2, Your Honor, is the

3  debtors' 25th omnibus objection.  We have a number of contested

4  claims still remaining there.  We're working through them and

5  we anticipate by January 25th that we will actually have

6  stipulations resolving most of those.  So we'd just like to

7  continue the whole matter to January 25th.

8          THE COURT:  All right.

9          MS. BAER:  Your Honor, Agenda Item Number 3 is the

10  33rd quarterly interim fee application, and Your Honor did in

11  fact enter an order on that late last week.  So I think that

12  resolves the matter and we thank you very much for promptly

13  looking to do that.

14          THE COURT:  All right.

15          MS. BAER:  Agenda Item Number 4, Your Honor, is the

16  motion of General Insurance Company to file a late proof of

17  claim.  We are talking with General about how to handle that

18  matter and we've agreed to continue it to January 25th while we

19  complete those discussions.

20          THE COURT:  Okay.

21          MS. BAER:  Your Honor, Agenda Item Number 5 is the

22  debtors' motion to approve a property damage settlement.  This

23  involves the Solow claim, which is a longstanding significant

24  property damaged judgment that was on appeal.  There have been

25  no objections, Your Honor, we filed a certificate of no

1 objections, but the order has not yet been entered.

2         THE COURT:  I'm having -- I just recently had my

3 staff notify Delaware to enter that order.

4         MS. BAER:  Thank you very much.  We appreciate that.

5 Agenda Item Number 6, Your Honor, is the debtors' motion to

6 approve a settlement with Zurich Insurance.  Once again, no

7 objections have been filed and we ask the Court to enter that

8 order.

9         THE COURT:  Same.

10         MS. BAER:  Okay.  Number 7, this is the debtors'

11 application to approve a settlement with the Edwards'

12 plaintiffs.  This actually relates, Your Honor, to matters

13 Numbers 8 and 9.  Matter Number 9 you already entered the order

14 approving the debtor's settlement with Allianz Insurance.

15 Number 7 is the debtor's motion to approve the Edwards'

16 settlement, which was part of the judgment that was being

17 bonded by the insurance company and secured by Wachovia.  All

18 objections were resolved to that.  There's a certificate of no

19 objection that's been on file with respect to the Edwards'

20 settlement.

21         THE COURT:  All right.  I haven't entered that

22 because you indicated that you wanted to continue Item 8, and

23 I'm not sure what the interrelationship between 7 and 8 is.

24         MS. BAER:  Your Honor, Item Number 8 will become moot

25 when Items Number 7 and 9 are final orders that have not been

1  appealed.  So the relationship is that if Item 7 or Item 9, the

2  Edwards' settlement and the Allianz settlement were not

3  approved, then the Fireman's Fund lift stay, which is Item

4  Number 8, would be relevant.  So what Fireman's has asked us to

5  do is to continue the lift stay matter to January 25th, that's

6  Item Number 8, and then if the Court enters the order on

7  Number 7, the Court's already entered the order on Number 9,

8  Number 8 will be moot by the time we appear on January 25th.

9          THE COURT:  Okay, that's fine.  I'll have the order

10 entered on Item 7.  I just wasn't clear why Item 8 was being

11 continued because it appeared to be resolved by 7.

12         MS. BAER:  We agree with that, Your Honor.  But

13 because we have to wait for the ten-day appeal period once the

14 orders are entered to become final and non-appealable, Fireman

15 has asked that we just simply continue it to the January 25th

16 hearing.

17         THE COURT:  Okay.  Item 8's continued.  The order

18 will be entered hopefully today on Item 7.

19         MS. BAER:  Thank you, Your Honor.  Item Number 9

20 then, Your Honor, was the Allianz settlement on which you did

21 enter the order late last week.  That takes us, Your Honor, to

22 Item Number 10, which is the debtors' motion for an order

23 disallowing and expunging two time-barred Canadian claims, and

24 I believe Mr. Restivo from Reed Smith is going to address you

25 on that matter.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  All right, Mr. Restivo?

2          MR. RESTIVO:  Good morning, Your Honor.

3          THE COURT:  Good morning.

4          MR. RESTIVO:  James Restivo for the debtor.  Your

5    Honor, with respect to Item Number 10, a little background is

6    in order.  On April 14, Your Honor dismissed 35 Canadian claims

7    that emanated from the provinces of Alberta, Manitoba and

8    British Columbia due to the running of the Canadian ultimate

9    statute of limitations in those provinces.

10          When we had argued that motion, Your Honor, we

11   advised the Court that we had resolved with Mr. Speights the

12   remaining Canadian claims which were subject to our motion

13   relating to the general statute of limitations, not the

14   ultimate statute of limitations.  With respect to those

15   settlements, Your Honor, at least as of a few weeks ago, Mr.

16   Speights informed me that he had signed agreements from all but

17   one of the Canadian claimants and hopefully we'll be filing

18   motions to approve those Canadian settlements very shortly.

19          However, Your Honor, in that settlement discussion,

20   Grace, I believe that two cases from British Columbia were in

21   the settlement, Number 11627, which is Nanaimo-Lady Smith

22   School District and Number 12476, which is City of Vancouver.

23   Those two cases were subject to our motion on the general

24   statute of limitations, but not our motion on the ultimate

25   statute of limitations.  I believe that Mr. Speights assumed

1  that those two claims were in our motion under the ultimate

2  statute of limitations since they emanated from the Province of

3  British Columbia.  However, Your Honor, they were not part of

4  our motion under the British Columbia ultimate statute, because

5  at the time we did not have or did not know we had sufficient

6  information to move for summary judgment based upon undisputed

7  facts in the claim forms.  For Nanaimo, Your Honor, when we

8  asked for the date of construction, the claim form answered

9  1969, 1969 to 1973 and after 1973, and the magic date for Your

10 Honor's decision is 30 years before April of 2001 or 1971, and

11 with that answer, we did not have undisputed facts, so we did

12 not include that in our motion under the ultimate statute.  In

13 addition, the claim form answered that when asked when was the

14 product installed, the answer came back, don't know.

15        With respect to the City of Vancouver, Claim Number

16 12476, the same is true when the form asked when was the

17 product installed, the answer was, don't know, and again,

18 looking at that answer on the claim form, we did not believe we

19 had undisputed facts in order to include those two cases in our

20 motion under the ultimate statute.  We now appreciate and

21 realize that it is undisputed that both buildings were

22 constructed before April of 1971 and that both claimants

23 concede that they did not install the products, Nanaimo bought

24 its building in 1951, and so whatever is there was installed

25 prior to 1951.  City of Vancouver purchased the property, this

1  property in 1956, so whatever was in there was in there before

2  1956.  Both of those are more than 30 years before the filing

3  of the bankruptcy.  As a result of that, Your Honor, we have

4  filed a motion to add these two -- dismiss these two cases for

5  precisely the same reasons the other cases from that province

6  were dismissed, namely, the ultimate statute of limitations as

7  well.

8          I believe the opposition to our motion is a one-page

9  response that says in effect it's too late for the debtor to

10  file a motion for summary judgment, there was a time to do that

11  and we didn't do it on these two cases.  That's partially

12  right, that's partially incorrect.  We did do it on these two

13  cases, but only based on the regular statute, not the ultimate

14  statute.

15          And more importantly, if the Court set this down for

16  an adversary hearing rather than electing to decide it on the

17  undisputed facts on summary judgment, we would simply put the

18  evidence in as to the date the buildings were purchased, as to

19  the fact that neither of these property owners put this product

20  in, and I think, unless there's some facts we are unaware of, I

21  think ultimately at an adversary proceeding, the Court would

22  find that the 30-year ultimate statute had run.  We don't see

23  why we should go through that process and we think these are

24  just like the ones the Court has already dismissed, and that's

25  the purpose for our motion on these two buildings that are

1  subject to the 30-year ultimate statute.

2            THE COURT:  Okay.

3            MS. RESTIVO:  I believe Mr. Speights should be on the

4  line, Your Honor.

5            THE COURT:  Mr. Speights?

6            MR. SPEIGHTS:  May it please the Court.   Thank you,

7  Your Honor.  Mr. Restivo is sitting on second base and I

8  believe --

9            THE CLERK:  Please state your full name for the

10  Court.

11            MR. SPEIGHTS:  Dan Speights representing the Canadian

12  claimants.  Mr. Restivo is sitting on second base and I believe

13  he forgot to touch first base.  And first base is the CMO.  And

14  we've had a lot of CMOs in this bankruptcy and CMOs have to

15  mean something.   Mr. Restivo wants to throw out my clients'

16  claims because they were too late when he acknowledges that the

17  debtors did not comply with the CMO on these two claims and

18  filed their motions for summary judgment back in 2007 when they

19  were required to do so.  And in his argument today he concedes

20  that the information upon which he now bases his motion for

21  summary judgment is set forth in the 2003 claim form, so we

22  don't even have a situation where there's some newly discovered

23  evidence.

24            Your Honor, I believe, as I said in the response,

25  that we should be protected from arguing the merits and Mr.

1 Restivo should be required to file a motion to be excused from

2 the deadlines of the CMO.  We will oppose it, but Your Honor

3 can decide at that point whether he can or cannot now file a

4 motion for summary judgment two and a half, almost three years

5 after the Court's deadline.

6         However, there is an alternative.  I almost agree

7 with  Mr. Restivo.  Your Honor can recognize that in one sense

8 a motion for summary judgment is not dispositive or not the

9 only way to resolve this matter.  This case can be set down for

10 a trial.  And it can be determined in that way.  There are

11 questions out there about when it should be tried, whether Your

12 Honor's going to try it, whether it should be tried

13 post-confirmation or pre-confirmation.  These claimants have

14 filed an objection which they've joined in Anderson's objection

15 as to where the matter should be tried, but all of that can be

16 resolved, I think, fairly quickly, it may even be resolved in a

17 conversation with Mr. Restivo and myself if Your Honor agrees

18 with me that it's not appropriate to go forward with a motion

19 for summary judgment today.

20         But my response is very simple.  Your Honor set a

21 CMO, there was a deadline to file a motion for summary

22 judgment, they didn't meet the deadline, they need permission

23 from you to, upon some showing to excuse them from the

24 deadline, or in the alternative, it ought to be thrown over in

25 the trial bucket for it to be resolved that way at some time by

1  the appropriate Court.

2          THE COURT:  Well, okay, what type of discovery do you

3  need, I guess is the issue.  If I'm going to set this for

4  trial, I agree, it's past the summary judgment deadline on the

5  ultimate statute of limitations issue, but it appears that

6  setting it for trial's not going to be too much of a problem,

7  because the debtor's telling me they're basically ready to go.

8  So what kind of discovery do you need?

9          MR. SPEIGHTS:   Your Honor, I need very little

10  discovery if Your Honor -- and I've had no discussion with Mr.

11  Restivo about this -- but if Your Honor is going to in effect

12  bifurcate the trial and try the ultimate statute of limitations

13  first or the statute of limitations first, I don't need any

14  discovery.  If by trial you mean a full-blown discovery -- a

15  full-blown trial on the claim itself with one of the issues

16  that comprises, including damages et cetera, et cetera, then I

17  need to think about that actually.  I'm not sure what Mr.

18  Restivo would have in mind for a trial.  I'm perfectly happy to

19  have it bifurcated and we can do the trial on the limitations

20  issue, I think, very quickly, and from my standpoint, without

21  any discovery.

22          THE COURT:  Mr. Restivo?

23          MR. RESTIVO:  Your Honor, I agree that a bifurcated

24  trial makes sense.  I would think the trial would take no more

25  than 15 minutes to a half hour.  We need no discovery.  We will

1  put in the claim information provided to us by Mr. Speights.  I

2  believe the claim information will establish that 30 years have

3  run and we will rest.  So we don't need discovery and I don't

4  think we need a whole lot of trial time, and it would probably

5  be quicker for everyone to do it the way Mr. Speights is

6  suggesting, which is let's just have a trial rather than file a

7  motion and then he responds.  My guess is that in a half hour

8  this is over one way or the other.

9        THE COURT:  All right.  Mr. Speights, you've heard

10 what Mr. Restivo expects to do at a trial.  Bifurcation makes

11 sense if the limitations issue, if the debtor actually succeeds

12 in that limitations issue, there would be no point to going to

13 trial on damages right now and so I think it does make sense if

14 the debtor doesn't succeed, then there's time for discovery and

15 damages and whatever else you need to do later.  So it seems to

16 me that rather than go through the motions practice, if the

17 debtors' case is going to take half an hour, probably I should

18 set it for trial.  So what type of witnesses would you have?

19        MR. SPEIGHTS:  I agree with that procedure, Your

20 Honor, and I believe Mr. Restivo acknowledged this, the debtor

21 has the burden of proof on the statute of limitations and he

22 will be going first and I now understand what his case is.

23 I would think I would have -- I really need to speak with my

24 client, Your Honor -- I can't imagine that I would have more

25 than one witness per client, and it may well be I'll have no

1 witnesses per the client, and it may be that the essential

2 facts will not, as to the date material was installed may not

3 be in dispute, but I'm sure I will have some documents to make

4 a showing.  So I would respectfully ask Your Honor to give me a

5 day or two to report back to the Court or Mr. Restivo on what

6 kind of time I will need.

7       THE COURT:  Well, I think maybe the best thing to do

8 is to have you folks agree upon a trial schedule, do a very

9 brief pretrial narrative as to what witnesses you're going to

10 call, premark your documents for identification, and let's put

11 this over to the next omnibus hearing to actually pick a trial

12 date.  But I think in the meantime, you can agree on all of

13 those preliminaries, you can submit an order and then I can

14 discuss a trial date with you at the next omnibus hearing.

15       MR. SPEIGHTS:  I'm sure we can do that, Your Honor.

16       THE COURT:  All right, so, Mr. Restivo, could you

17 give me an order that will indicate that the matter will be set

18 for trial and whatever it is that you folks agree on in terms

19 of the witnesses, the dates to submit the pretrial narratives

20 and all documents premarked for identification, and then if

21 you'll just put it back on the agenda for next month, I will

22 discuss a trial date with you then.

23       MR. RESTIVO:  We will do so, Your Honor.

24       THE COURT:  All right, anything else on Item 10?

25       MR. RESTIVO:  No, Your Honor.

1              MR. SPEIGHTS:  No, Your Honor.

2              THE COURT:  Okay, thank you.

3              MS. BAER:  Your Honor, that then is the conclusion of

4    the formal agenda.  And I believe Mr. Freedman is on the phone

5    and wanted to address the Court on upcoming plan amendments.

6              THE COURT:  Wanted to address the issue of what?  I

7    couldn't hear you, there was a noise on the line.

8              MS. BAER:  Upcoming plan amendments, Your Honor.

9              THE COURT:  Oh, okay.  Mr. Freedman.

10             MR. FREEDMAN:  Yes, Your Honor.  Theodore Freedman

11   for Grace.  We'd like to bring the Court up to date on two

12   different matters.  First, to advise the Court that we will be

13   filing some additional modifications to the plan on Wednesday.

14   Those modifications to the plan, in particular, will include a

15   modification that addresses the Canadian ZAI minutes of

16   settlement.  As the Court may recall the plan did incorporate

17   minutes of settlement with respect to the treatment of Canadian

18   ZAI claims that were entered into in October of 2008.  By their

19   terms, those minutes of settlement expired on October 31st of

20   this year and we have been working, we, being Grace, have been

21   working with the Canadian ZAI representative to enter into new

22   minutes of settlement that have the effect of extending the

23   deal that was in the minutes that expired on October 31st.  And

24   I'm pleased to report to the Court that we did in fact enter

25   into a new deal which was approved yesterday by Justice

1 Morawetz in Canada.  That new deal has the following sort of

2 headline points that are different from the prior deal.

3          First, it extends the effectiveness of the minutes of

4 settlement through December 31st of 2010 and that is with

5 respect to receiving a confirmation order from this Court by

6 2010.  In other words, we need to get a confirmation order by

7 that date in order to keep the new minutes of settlement

8 ongoing.

9          Secondly, the contribution to the Canadian ZAI PD

10 claims fund is increased from 6.5 million to, depending on

11 certain milestones, either -- Canadian, 6.5 million Canadian to

12 either approximately 8 million Canadian or 8.6 million

13 Canadian, again, depending on certain milestones.  The Canadian

14 representative has agreed to this deal and that agreement does

15 constitute his vote, the Canadian representatives' vote in

16 favor of the plan.  Grace has agreed to support the application

17 of the Canadian representative onto this Court for special

18 counsel status, which would entitle them to apply to this Court

19 for fees.  There's no commitment on that other than Grace does

20 believe that that's an appropriate application.  And when the

21 Canadian representative, or when that application is made on

22 behalf of the Canadian representative, it will be supported by

23 Grace.

24          And finally, the Crown itself was not a party to the

25 old expired minutes of settlement.  Notwithstanding that, those

minutes did contain within them a release of claims by the

Canadian representative, the Canadian ZAI representative

against the Crown with respect to all matters which included

all personal injury claims that the Canadian ZAI representative

could bring on behalf of Canadian ZAI claimants.  And just to

explain that a little bit further, the release actually applied

with respect to personal injury claims or other claims as

against which the Canadian ZAI -- excuse me -- the Crown would

have contribution rights against Grace.  So the Canadian ZAI

representative agreed not to bring claims against the Crown to

the extent that those claims gave rise to a contribution claim

against Grace.  Under the new revised deal, that release is no

longer present.  The Crown can be sued in Canada by the

Canadian ZAI representative with respect to claims as against

which the Crown would have claims against Grace.

Those are the headlines with respect to this modified

deal.

THE COURT:  Well, this modified deal seems to me to

perhaps require some additional evidence with respect to how

this is going to impact the feasibility of this plan.  I mean,

this is a substantially different deal and I don't know what

the contribution rights that the Crown may have against Grace

in the event they're sued in Canada may amount to.  So I'm

going to need some evidence with respect to the plan

confirmation as to the effectiveness and what happens with

1  respect to this deal, the effectiveness -- the effect, pardon

2  me -- on the plan of this deal.

3        MR. FREEDMAN:  Well, to that point, Your Honor, we

4  understand that the Crown itself is not going to -- is opposed

5  to confirmation of the plan with this modified settlement and

6  it's going to raise objections and seek to argue that in some

7  fashion or another, this modified deal impacts on the Crown's

8  rights in a way that would affect the ability of the Court to

9  confirm the plan.  And the proposal, which we have discussed

10 with the Crown, and which we would like to suggest to this

11 Court is that this Court does have, on January 25th, an omnibus

12 hearing, and that we would like to use that time to present

13 whatever issues are raised with respect to the confirmability

14 of the plan in the context of this modified deal.

15       I think that on the feasibility issue, the very small

16 additional payments that are going to be made to the Canadian

17 fund, not in excess of one point -- excuse me -- $2.1 million

18 Canadian and quite possibly less will certainly not affect

19 feasibility, and we also do not believe that the change in this

20 deal, where the Crown wasn't the party to the original deal,

21 and in effect got a windfall settlement, that it no longer will

22 have the benefit of, has any bearing on the ability of the

23 Court to confirm the plan.  But nevertheless, we understand

24 that those, particularly as to the Crown, that issues needs to

25 be raised or they'd like to raise, and so we would again

1  propose that January 25th be the time to do that.

2         THE COURT:  Well, in terms of raising them, you mean

3  to make some argument?  I'm not going to use an omnibus hearing

4  for an evidentiary hearing.  You know, I don't have time to do

5  that.  So I can't hear evidence that day nor I think will the

6  parties -- I don't know, maybe the parties will be prepared to

7  hear it.  I want to see what it is that the issues are before I

8  go forward with some evidentiary hearing.

9         MR. MONACO:  Your Honor, this is Frank Monaco on

10 behalf of the Crown.  May we be heard on this issue?

11        THE COURT:  Let me find out if Mr. Freedman was

12 finished, and yes.

13        MR. MONACO:  Oh, okay, I'm sorry.

14        MR. FREEDMAN:  Your Honor, obviously in terms of when

15 it is appropriate to have an evidentiary hearing, should the

16 Court decides that it needs one, we have to defer to the Court.

17 The proposal that we were going to make to the Court with

18 respect to how to time this out would be that if Crown has

19 objections to confirmation as a result of this change, that it

20 file those objections no later than January 8th, that the

21 debtors be permitted to respond to that on January 18th and

22 that we go ahead with a hearing on those issues on January

23 25th.  And so that would be the schedule that we would like to

24 urge the Court to adopt subject to the Court's views on

25 feasibility issues I guess.

1           THE COURT:  Mr. Monaco?

2           MR. MONACO:  Good morning, Your Honor.  Frank Monaco,

3 for the record, on behalf of the Crown.  Your Honor, I also

4 have on the phone with me, my co-counsel, Jacqueline Dais-Visca

5 who also would also like to be heard on this.  Your Honor, just

6 as a preliminary matter, debtors' counsel's rendition of where

7 we are is essentially correct, but Your Honor should be aware

8 that the Crown did vociferously object to the approval of this

9 new settlement, and it was approved over our objection

10 yesterday.  One other thing that the Court needs to understand

11 is that Justice Morawetz has not, gave a very preliminary

12 approval.  He did not set forth his reasonings for that, and

13 it's the Crown's intention to appeal that decision.

14           It is true, Your Honor, that we had talked about

15 having this matter heard on the 25th omnibus objection and

16 maybe filing objections, but I think I'm going to let my co-

17 counsel address this more specifically.  But it may make sense

18 to wait until March because the appeal issues may render a lot

19 of this moot.  But we do intend to object to the plan

20 modifications as they exist now and I think we need to talk

21 about this further.

22           The other, I think, factor that has to be sort of

23 taken into account is, you know, is there any reason that we

24 have to have this heard on the 25th of January when Your Honor

25 may not be ready to render a decision in this matter, maybe for

1  much later in the year, I don't know, that's really a matter of

2  the Court's schedule and calendar.  But perhaps it would make

3  sense for my co-counsel to address the specific issues with

4  respect to the appeal for the Court's consideration in terms of

5  trying to figure out how and when we should hear this.

6           THE COURT:  All right.

7           MS. DAIS-VISCA:  Good morning, Judge.  This is

8  Jacqueline Dais-Visca with the Department of Justice acting for

9  Her Majesty, the Queen, in this matter.  My co-counsel, Mr.

10 Monaco's, indicated that there is a potential for an appeal

11 under the Companies Creditors Arrangement Act, we require leave

12 of the court of appeal and of the 15-day period from the date,

13 we say, from the date that the Court renders its reasons, and

14 if we do not yet have reasons and are therefore unable to

15 assess whether or not there are issues for appeal, so we have

16 15 days from the reasons being released and then another 30

17 days from that date to provide our written argument to the

18 Court.  And then the Court has 36 days from that date in which

19 to render decision if they decide to hear it in writing, and if

20 not, to schedule an oral hearing.

21           So it's my belief that the earliest possible time

22 that we could deal with these plan issues and be satisfied that

23 there has been an approval of this order subject to the appeal

24 or as resolved by a dismissal of the leave to appeal

25 application would be in March.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. BERNICK:  Your Honor, if I could be heard for

2    just a moment, David Bernick.

3          THE COURT:  Yes, sir.

4          MR. BERNICK:  It sounds to me like we should take

5    this in a sequential fashion.  The first order of business is

6    for them, the intent to file objections -- to file objections

7    and for us to respond, it sounds like that can get done by

8    January 25.  The exchange of the objections to the response

9    will also tee up whether there really is a necessity for

10   additional evidence as opposed to there being simply the same,

11   exactly the same kinds of legal issues that are associated with

12   some of the other objections that have been received.

13         The Crown is essentially in a position of being a

14   third-party defendant that wishes to seek contribution in

15   Canada, and therefore we're going to get presumably the same

16   kinds of classification issues and the same kinds of channeling

17   issues that have been raised by other constituencies, in fact,

18   Mr. Monaco represents one of them which is the State of

19   Montana.

20         There are some uniquely Canadian features to this

21   Canadian law, product liability law is different in some ways,

22   much more restrictive than U.S. law, and it may be that Your

23   Honor needs to take briefing on that, although I suspect that

24   those matters will also be raised during the course of the

25   objection and the response.  But the Crown, in our view, should

1  have filed their objections long ago.  We understand that Your
2  Honor's going to hear their objections so we don't quarrel with
3  the idea that they should now file those objections, but they
4  should be filed in a timely fashion.  This is not rocket
5  science.  And then the issue could be framed in the omnibus
6  whether it really is an issue to be litigated.

7       I don't think it's appropriate -- I think the service
8  of that would also be helpful by the 25th to get their proffer
9  on what evidence they would seek to offer in support of their
10 objections.  We had a whole pretrial -- a massive pretrial
11 schedule which made people file their objections, made them
12 submit proffers, designations of evidence in advance of
13 confirmation hearings and the like and none of that actually
14 took place, but there is no reason why we should have a process
15 that's any less robust and transparent here.  So they should
16 file their objection, they should file, you know, exhibits,
17 witness statements if they want to introduce any evidence, and
18 then we can actually see what it is that remains of this issue
19 on the 25th.

20      The proposal to defer all of this until there is a
21 ruling on the merits of their appeal with respect to the
22 Canadian settlement, I don't believe, I think it's an apples
23 and oranges problem.  Your Honor has jurisdiction over this
24 plan and has the right and obligation and power to move this
25 plan forward to confirmation.  And that can take place whatever

1  the status of this settlement is.  They are assuming in their

2  scenario that well, maybe the Court of Appeals will overturn

3  the settlement.  It could happen, it could not happen.  But

4  there is no reason to make that assumption and there is no

5  reason to defer even further the objection process that should

6  have been pursued earlier.  So there is, this Court, again is

7  dealing with a plan.  The plan -- this is the tip of the tip of

8  the tail of the dog and the plan should not be held hostage to

9  the prosecution of their appeal.  There are all kinds of

10 contested matters in this case that remain in active

11 litigation.  We just heard one of them.  This is another one.

12 And it doesn't have to hold up the plan confirmation process.

13       So we would propose that their objections be filed on

14 the date indicated by Mr. Freedman we'll respond, they should

15 submit their proffers in connection with the objection and then

16 on the 25th we can see where it is that we are.

17       THE COURT:  All right.  Well, I don't think there's a

18 problem with having the objection process get teed up so that

19 we can do a status conference on January 25th to determine

20 what, if any, issues there are.  I think the question that I

21 have with respect to confirmation is, the plan, as it's

22 currently crafted, essentially doesn't consider any

23 contribution claims by the Crown, because there shouldn't be

24 any based on the fact that the parties who could have sued the

25 Crown agreed not to do so.  So I'm not clear as to where and

1  how these claims will fit within that scope.  I need some

2  evidence with respect to that, and I also need to know to the

3  extent that they are filed, how they're going to be handled and

4  what the Canadian law would say with respect to their

5  allowance.  Because that's not an issue that's ever been

6  addressed.

7              MR. BERNICK:  I understand that.  I think that

8  those are fair points.  I think that it will turn out that the

9  answers to those questions are very straightforward,

10  predictable and familiar to Your Honor with the exception of

11  what are the differences under Canadian law with respect to

12  allowability, although, you know, that also has been the

13  subject of prior briefing before the Court not in connection

14  with the plan, but previously.  There's a significant history

15  to asbestos litigation in Canada.  But we're not fighting the

16  idea that those matters should be framed so that Your Honor can

17  understand what the issues are.  We're not intending to

18  litigate those issues on the 25th.  We are intending to, in a

19  sense, this whole matter be brought up to the same level of --

20  not the same, but close to the same level of transparency that

21  we have on other issues save only the actual presentation of

22  the evidence.  But there's no reason why they can't (a) set

23  forth their objection, (b) the evidentiary basis, what they

24  intend to introduce as evidence so that Your Honor can see it

25  and we can respond in like fashion.

1          MR. MONACO:  Your Honor, this is Frank Monaco, if I

2    could respond.  I want something to be noted for the record,

3    and we aren't really prepared nor should we argue the merits of

4    this, but I did want to make it clear that there are some

5    differences from the other indirect claimants, most notably

6    that the Canadian asbestos PI claimants are releasing their

7    claims against Grace.  But putting that aside, I don't disagree

8    with the concept that debtors' counsel is proposing.  I think

9    we probably do need to tee up the legal issues, what factual

10   issues there are, and perhaps have a status conference on the

11   25th and decide then, do we need an evidentiary hearing, number

12   one, and then follow up, do we need closing arguments?  I think

13   with the timing of this, that it's not going to prejudice the

14   debtor if it does turn out that we end up having this matter --

15   evidentiary hearing and/or closing argument, you know, further

16   down the road.  I don't know if my co-counsel has anything to

17   add to that, but --

18          MS. DAIS-VISCA:  Yes, the one thing -- thank you,

19   it's Jaqueline Dais-Visca -- the one thing I'd like to add and

20   just to respond to Mr. Bernick's suggestion that the Crown

21   ought to have filed an objection much earlier in the piece, we

22   had filed an objection back on October 17th, 2008 when it was

23   apparent that the deal was concluded in Canada and that the

24   Crown no longer needed to participate in the U.S. proceedings

25   because all claims against the Crown that would give rise to

1 contribution claims from Grace had been released.

2        The first time we heard about this, this news of it
3 was November 17th, so just a few weeks ago.  Had we known that
4 we were still to participate in the U.S. then we would have
5 been filing throughout as we had been up to the point of there
6 having been a full settlement of the Crown claims against
7 Grace.

8        So I think it's disingenuous for Mr. Bernick, who is,
9 you know, a party to the 180 reversal on the position vis-a-vis
10 the Crown to say that we ought to have been filing and we ought
11 to have been taking a position in these proceedings when they
12 had negotiated a deal that made it moot that we do participate.
13 But we aren't sure -- or we won't be sure until we hear and
14 receive a decision from Justice Morawetz exactly what the
15 issues are.  There were a number of issues put to him, but we
16 don't know whether he will determine some of the legal issues
17 or have them left to Your Honor to determine the context of the
18 U.S. approval of the amended minutes.  So until we have those
19 reasons, I'm not sure we can commit to a schedule that has us
20 trying to prepare submissions over the Christmas holidays when
21 we may not even have the reasons yet.  That's my only concern
22 in terms of timing.

23        THE COURT:  Well, I'm not sure what difference the
24 reasons will make from Justice Morawetz.  Maybe I'm missing
25 something, but it seems that if the settlement is not approved,

1  then the parties have to go back and negotiate something else

2  and he will eventually approve a settlement of some sort.  If

3  it turns out not to be this one, then I'm going to need to know

4  what it is that's approved and how that will affect the plan.

5  If it does -- if this one is approved and the preliminary

6  indication is that it is going to be approved, then you do know

7  what the parameters are, because you know what the terms of the

8  settlement are and how it will affect the Crown's position.  So

9  I'm not sure why we can't proceed on that basis.  If his -- I

10 mean, whatever his reasons are for accepting the settlement

11 doesn't make any difference for plan confirmation.  What makes

12 difference for plan confirmation is the fact that the deal's

13 changed, and I need to know what the consequences are as do the

14 other parties.

15        So it seems to me that this schedule ought to work.

16 Now having to work over the Christmas holiday, maybe that's a

17 different issue, but aside from that fact, I don't see a

18 problem with the schedule the way it's been advanced.

19        One second, let me take a look at the calendar here.

20 I was trying to see if I had another date that this could be

21 put on specially, but I actually don't, because of the -- oh,

22 wait, Pittsburgh Corning changed dates and I don't think it's

23 been reflected on my calendar yet.  Let me see.  Oh, that's

24 earlier, not later.  That doesn't help.

25        MR. BERNICK:  Well, you know, Your Honor, on the

1  Christmas holiday deal, you know, no one wants to work over the

2  --

3          THE CLERK:  Please state your name for the record.

4          MR. BERNICK:  Yes, it's David Bernick.  No one wants

5  to work over the holidays, on the other hand, again, I don't

6  know that the confirmation issues are -- I know that they're

7  very familiar to Mr. Monaco who's very able.  But all that

8  said, you know, we would be happy to, in a sense, compress our

9  time for responding.  If they respond by January the 8th and

10  then -- Ted, when was our reply to be --

11          MR. FREEDMAN:  We were proposing January 18th.

12          MR. BERNICK:  Yes.  If they wanted to say to take up

13  to the -- give another weekend, you know, do it by the 12th and

14  then we would still indeed make the 18th?

15          MR. FREEDMAN:  Sure.

16          THE COURT:  Actually I think you could make the 19th.

17  The 18th is, I think it's a federal holiday, isn't it, Mona?

18  Is the 18th, is that a federal holiday?  So I won't have any

19  staff in that day in any event, so you can have until the 19th.

20          MR. BERNICK:  Yes, that would be fine.

21          THE COURT:  All right.  So January 12th for the Crown

22  to submit any confirmation objections, I guess with a brief.  I

23  really would like to know what the legal issues are and a

24  summary of what evidence the Crown would expect to call -- to

25  produce.  I don't think I need documents premarked for

1  identification or anything like that at this time.  I really

2  think that what this has to be is a process that allows the

3  Crown and the plan proponents to figure out whether or not

4  there is going to be need for an evidentiary hearing and then

5  let me know what the issues are going to be.  So if there's

6  going to be an evidentiary hearing, we can take care of

7  pretrial narratives and document production and address that at

8  the next omnibus hearing.  So I think what I need are the

9  confirmation objections, a brief, and a summary of what that

10 evidence would be without the actual documentation, is that

11 acceptable to the plan proponents?

12          MR. BERNICK:  Yes.

13          THE COURT:  All right.  And then responses by anyone

14 by January 19, with the same type of information.  What the

15 response will be, a brief and a summary of the evidence will

16 be, but without the actual documents or witnesses.  I don't

17 need them at this point.  And then we'll do a status conference

18 on this matter on the next omnibus so that we can address what,

19 if anything, should happen next.

20          MR. BERNICK:  That's fine, Your Honor.

21          UNIDENTIFIED ATTORNEY:  That's fine.

22          THE COURT:  Okay.  Mr. Freedman:

23          MR. FREEDMAN:  Thank you, Your Honor.  One other

24 matter, just to advise the Court.  We will be filing also on

25 Wednesday, an updated chart that sets forth a summary of what

1  objections have been filed to the plan, the current status of

2  those objections, a number of them have been withdrawn and some

3  are still pending that have -- so modified in tenor.  But in

4  any event, the status of the objections and our responses, that

5  is the plan proponents' responses to the objections, with

6  citations to all the briefing so that the Court will be able to

7  find where in the briefing all this material occurs.  And we

8  also will attach to that an appendix which sets forth the

9  provisions of the Bankruptcy Code and the plan that the plan

10 proponents need to satisfy as to which there are no pending

11 objections so that the Court has a road map of where we've

12 covered all of that information too.  Again, that chart will be

13 filed on Wednesday and I just wanted to advise the Court that

14 that was coming.

15          THE COURT:  Okay, thank you.  Ms. Baer?

16          MS. BAER:  Your Honor, I think that's all the debtors

17 had intended to take up today.

18          THE COURT:  Anyone else have any housekeeping matters

19 to address?  All right, happy holidays, everyone.

20                    *  *  *  *  *

21

22

23

24

25

**J&J COURT TRANSCRIBERS, INC.**

**C E R T I F I C A T I O N**

I, RITA BERGEN, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Rita Bergen                    DATE:  December 21, 2009

RITA BERGEN

J&J COURT TRANSCRIBERS, INC.