**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 01-1139 (JKF)<br><br>Jointly Administered<br><br>Re: Docket Nos. 24031 and 24032<br><br>Hearing Date: 01/25/10 at 10:30 a.m. (Eastern)<br>Objection Deadline: 01/08/10 at 4:00 p.m. (Eastern) |

**OBJECTION OF HER MAJESTY THE QUEEN IN RIGHT OF CANADA TO (I) THE CANADIAN ZAI CLAIMANTS' APPLI CATION PURSUANT TO SECTIONS 105, 1102(A)(2) AND 1109, OR ALTERNATIVELY, SECTION 503 OF THE BANKRUPTCY CODE FOR APPOINTMENT OF SPECIAL COUNSEL NUNC PRO TUNC TO SEPTEMBER 1, 2008 AND (II) THE APPLI CATION PURSUANT TO SECTIONS 105, 1102(A)(2) AND 1109 OF THE BANKRUPTCY CODE AUTHORIZING RETNETION NUNC PRO TUNC OF DANIEL K. HOGAN, ESQ., AS COUNSEL TO THE REPRESENTATIVE COUNSEL FOR THE CANADIAN ZAI CLAIMANTS**

Her Majesty the Queen in Right of Canada (the "Crown"), by and through its undersigned counsel, hereby objects (the "Objection") to the "Special Counsel Applications" of the Canadian ZAI Companies' Creditors' Arrangement Act Representative Counsel ("CCAA Rep Counsel") and Daniel H. Hogan in so far as they are based on the Restated and Amended Minutes of Settlement of CDN ZAI Claims (the "Restated Settlement"). The Crown states that there is no legislative authority enabling counsel to be appointed "Special Counsel" pursuant to section 327 of the Bankruptcy Code, for the purpose of recovering legal fees incurred. Moreover, the Crown is currently seeking leave to appeal from the Approval by the CCAA Court of the Restated Settlement (the "CCAA Court Approval") and accordingly asks this Court to dismiss or adjourn these applications until the Crown has exhausted her appeal rights. In the

1

alternative, the Crown asks this Court to refuse, in the public interest, to appoint the CCAA Rep Counsel and Mr. Hogan as Special Counsel and thereby prevent them from being rewarded a payment of fees for conduct that amounts to a breach of the duty of loyalty they owed to the Crown, which duty was imposed upon them pursuant to the CCAA Representative Counsel Order.  In support of this Objection the Crown states as follows:

## BACKGROUND AND INTRODUCTION

1. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of title 11, United States Code (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors in possession.

### CCAA Proceedings and CCAA Rep Counsel Order

2. The Ontario Court of Justice in the Initial Order dated April 4, 2001, among other things, recognized and declared these U.S. Bankruptcy proceedings to be a "foreign proceedings for the purposes of s. 18.6 of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 ("CCAA") and ordered a stay of proceedings relating to, arising out of or in any way connected to damages or loss suffered, directly or indirectly, from asbestos, asbestos contamination or asbestos related disease against Grace.  The Ontario Superior Court of Justice ordered Grace to publish a notice in national newspapers which advised of the US Bankruptcy proceedings and recognition of those proceedings by the Canadian court "*to ensure fair and equal access for Canadians with asbestos claims against Grace Canada Inc. to the process established in the United States*."

3. On November 14, 2005, as a result of the commencement of proposed class actions in Canada, Grace obtained an order from the Ontario Superior Court of Justice, acting as

an ancillary court, pursuant to s. 18.6(4) of the CCAA Court File 01-CL-4081 (the "CCAA proceeding") , giving effect in Canada to the stay of proceedings granted by the US Court, and prohibiting the commencement or continuation of any asbestos related suits against Grace *and Canada* without further order of the CCAA court. Attached hereto as **Exhibit #1** is a true copy of the Attorney General of Canada's Responding Motion Record (delivered in response to Grace Canada's motion to Approve the Restated Settlement) dated December 8, 2009 containing the Affidavits of Hilda Mozaffar sworn December 4, 2009 and the Affidavit of Lillianne David sworn October 2, 2008 with attached Exhibits.[1]

4.     There are currently ten proposed class actions in which Canada has been sued that have been filed across Canada concerning claims that relate, *inter alia*, to the cost of removal, diminution of property value or economic loss allegedly caused by Zonolite Attic Insulation ("ZAI") manufactured by the Debtors. W.R. Grace and or its affiliated companies are co-defendants with Canada (hereinafter, the "Crown") in all but the first of these class actions, which are as follows**:**

- Viviane Brosseau et al v. Attorney General of Canada, Superior Court of Quebec, District of Montréal, 500-06-000286-050 (no claim against the Grace companies);

- Dextras et al v. Attorney General of Canada, W.R. Grace & Co. et al, Superior Court of Quebec, District of Montréal, 500-06-000258-042;

- Raven Thundersky et Rebecca Bruce v. Attorney General of Canada, W.R. Grace & Co., Court of Queen's Bench of Manitoba;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Federal Court, Saskatchewan;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Court of Queen's Bench of Saskatchewan;

---
[1] Exhibit #1, Tab 2, Exhibit "B", Order of Justice Farley dated November 14, 2006 extending stay of proceedings to include the Crown

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Court of Queen's Bench of Alberta;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Supreme Court of British Colombia;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Province of Quebec, District of Hull;

- Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Court of Queen's Bench of Manitoba; and

- Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Ontario Superior Court of Justice.[2]

5. In the aforementioned class actions, the proposed representative class action plaintiffs seek to represent all Canadians who have suffered past or will suffer future property damage and personal injury due to exposure to ZAI and allege, among other things, that the Crown has breached a duty to warn.

6. An action has also been instituted by the Province of Manitoba, *Her Majesty The Queen in the Right of the Province of Manitoba v. Attorney General of Canada, W.R. Grace & Co. et al.*, Court of Queen's Bench of Manitoba. The Province of Manitoba has sued the Crown and the manufacturer of ZAI for the health care costs incurred or to be incurred in relation to the treatment of class members in the Manitoba case as a result of their exposure to ZAI.

7. In the event that the Crown and the manufacturers are held jointly and severally liable to the Canadian ZAI Claimants, the Crown seeks contribution and indemnity from the manufacturers who are liable, including the Debtors W.R. Grace et al. On or about January 31, 2006, the Crown filed two separate claims against the Grace Parties in the Chapter 11 proceedings in the United States (the "Crown Claim"):

---

[2] Exhibit 1, Affidavit of Lillianne David, Tabs 2C and 2D containing the Crown's Proof of Claim for Asbestos property Damage and Non-Asbestos Proof of Claim respectively and outlining the various proposed class actions in Canada.

      a.    an "Asbestos Property Damage Proof of Claim Form" seeking contribution and indemnity from W.R. Grace and related companies for any damages the Crown might be found liable for in respect of ZAI.  The claim specifically indicated that it was filed for "protective reasons" only and in recognition that no claims bar date had yet been set in respect of PI claims; and

      b.    a "Non-Asbestos Proof of Claim Form" also seeking contribution and indemnity from W.R. Grace and related companies for any damages the Crown might be found liable for in respect of ZAI.[3]

8.    In addition to the Crown's claim for contribution and indemnity, the Crown also has direct claims against the Debtors in respect of costs incurred to seal attics and otherwise remediate ZAI installed in Canadian-owned properties built on military bases and reserves.

## CCAA Rep Counsel Order

9.    On February 8, 2006, Justice Farley of the CCAA Court made two orders in respect of the capacity of the CCAA Representative Counsel.  The first order appointed the Montreal, Quebec law firm of Lauzon Bélanger S.E.N.C.R.L. and the Hamilton Ontario law firm of Scarfone Hawkins, LLP to act as representative counsel on behalf of all persons who have, or at any time in the future may have, a claim arising out of or in any way connected to damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of ZAI products in Canada (the "Canadian ZAI Claimants") *"to negotiate on behalf of the Canadian Claimants with the Applicant, the Crown, and the U.S. Debtors, the Affiliated Entities and any other person or entity"* (the "CCAA Representative Counsel Order"). [4]

## 2008 CDN ZAI Claims Settlement

10.    On September 2, 2008, Grace and the CCAA Rep Counsel entered into Minutes of Settlement to resolve all Canadian ZAI claims ("CDN ZAI Claims") as against the Grace Parties (the "2008 CDN ZAI Settlement"), which settlement notably included a release of all

---

[3] Ibid footnote 2

CDN ZAI Claims against the Crown that would give right to claims for contribution or indemnity against Grace while preserving only the CDN Claimants' right to pursue so-called "independent" or several claims against the Crown. CDN ZAI Claims are defined in the Settlement as CDN ZAI PD claims or CDN ZAI PI Claims. The Crown was not a party to the 2008 CDN ZAI Settlement. Attached hereto as **Exhibit #2** is a true copy of Grace's Motion Record for approval of the 2009 Restated Settlement dated December 1, 2009, including at Tab 4 a blacklined copy of the the Amended and Restated CDN ZAI Minutes of Settlement.[5]

11. On September 30, 2008, Justice Morawetz, of the CCAA Court acting pursuant to this Court's Request of Aid and Assistance, heard argument on whether to approve the Settlement. At that hearing, the Crown, while conceding that the CCAA Rep counsel had authority to negotiate on behalf of Canada in respect of Canada's PD claim, argued that the CCAA Rep Counsel did not have authority to "negotiate away" the Crown's Chapter 11 'claim over' for contribution and indemnity against the Grace Parties, given that the "claims over" arise wholly from the claims of the other clients the CCAA Rep Counsel were authorized to represent. In short, the Crown argued that the CCAA Rep Counsel were in a conflict of interest and thus unable to negotiate on the Crown's behalf in respect of the Crown's contribution and indemnity claims.[6]

12. Paragraph 13(b)(iv) of the 2008 Settlement, which provided for the preservation of the CDN Claimants' right to pursue Canada in respect of so-called 'independent' or several claims illustrates the conflict arising from the CCAA Rep Counsel purported representation on

---

[4] Exhibit #1, Affidavit of Hilda Mozaffar Tab 1A, Exhibit A, Representation Order dated February 8, 2006
[5] Exhibit #2, see paras 15, 16, and 20 of the Blacklined Minutes of Settlement in particular.
[6] Exhibit #2, Tab 6, Reasons for Decision respecting Approval Order of Justice Morawetz, October 17, 2008at paras. 52 - 57

behalf of both sides, Canadian proposed class action representative plaintiffs and Canada as defendant in the class actions.

13. The Crown supported the Settlement as "fair and reasonable", *provided that* the Settlement did not impair the Crown's separately filed U.S. Chapter 11 Crown Claims for contribution and indemnity against the Grace Parties and provided that it did not impair the Crown's right to commence a third party claim against the Grace Parties to seek contribution and indemnity in any ZAI related action, even if sued on a several basis, which claims over the Crown argued were neither a CDN ZAI PD nor a CDN ZAI PI claim.

14. On October 17, 2008, Justice Morawetz released his decision approving the 2008 CDN ZAI Settlement as "fair and reasonable". He specifically found that CCAA Rep Counsel had the authority to negotiate on behalf of the Crown and to negotiate away the Crown's claims over against Grace for contribution and/or indemnity given that the 2008 CDN ZAI Settlement *specifically released all claims against the Crown* and so there was "nothing left" and thus **no prejudice** caused to the Crown by the CCAA Rep Counsel negotiating on the Crown's behalf.[7] He approved the third party release of the Canada (the "Crown Release") in respect of all but the Crown's alleged several liability (the "2008 CCAA Approval").[8]

15. On October 27, 2008, and as a result of the 2008 CCAA Approval by Justice Morawetz of the Crown Release, counsel for Canada advised this Court that Canada would not be proceeding with the Objection to the Disclosure Statement filed as Justice Morawetz had rendered an order recognizing that Canadian Representative counsel had authority to negotiate on behalf of the Crown and recognizing a release in favour of the Crown for any of the Crown claims seeking contribution and indemnity from Grace and stated:

---

[8] ibid

> *As a result of that, our objection is effectively moot now. We are no longer able to appear before you as we now are represented by the Canadian Representative counsel. There is an appeal period of 15 days, under the Ontario rules. Subject to the expiration of that appeal period, it would look like the Crown's participation in these proceedings, apart from any claims that may be filed against the Canadian PD fund in Canada, would appear to be at an end.*

Attached hereto as **Exhibit #3** is a true copy of pages 85-87 of the Transcript from the Hearing dated October 27, 2008 together with the Crown's Objection to the Disclosure Statement that was rendered moot by the release of the claims against the Crown in the approval of the 2008 Settlement.

16.     By its own terms, the 2008 CDN ZAI Settlement expired on October 31, 2009 as a result of US Confirmation of the Joint Plan having not been rendered by that date.

17.     During the course of these proceedings, a former counsel with the Department of Justice who represented the Crown in the Quebec class action and the CCAA proceedings, left the Department of Justice to join the law firm of Lauzon Bélanger. Consequently, the Lauzon Bélanger firm agreed to, and did in fact, undertake to not be part of any further proceedings in relation to the Crown and to limit its involvement to the administration of the CND settlement fund with Grace (the "Undertaking"). Attached as **Exhibit 4** is a true copy of the Supplementary Affidavit of Hilda Mozaffar sworn December 7, 2008, including attached Exhibits detailing correspondence with respect to this issue.

18.     Scarfone Hawkins, the other CCAA Rep Counsel, agreed to, and did in fact advise the CCAA court on April 1, 2009 of this change in the capacity of Lauzon Belanger to act as CCAA Rep Counsel.[9]

19.     In his 31st Information Officer Report dated October 6th, 2009, a copy of which is attached as **Exhibit #5,** Richard Finke, Information Officer, advised the CCAA Court in paragraph 16:

> *Given that the U.S. Confirmation Hearing will likely not conclude until January 2010, it appears that the Settlement will become null and void. However, the Company is engaged in on-going discussions with Representative Counsel with respect to an extension of the Settlement deadline.[10]*

20. Despite repeated requests by counsel for Canada for updates on the negotiations respecting the status of the 2008 CDN ZAI Settlement, the only information given was that negotiations were on-going. At no time was Canada advised that a part of those on-going negotiations to extend the date of the 2008 CDN Settlement was that the Crown Release was going to be removed. Attached as **Exhibit #6** is a true copy of the Affidavit of Allison Kuntz, Counsel for Grace Canada, sworn December 8, 2009 with attached Exhibits containing correspondence between Grace Canada and the Crown with respect to this issue.

## 2009 Restated CDN ZAI Settlement

21. On November 16, 2009, Grace and the CCAA Rep Counsel executed the Amended and Restated Minutes of Settlement (the "2009 Restated Settlement"). The Crown is not a party to the 2009 Restated Settlement.[11] Canada first became aware that the Crown Release had been removed upon receipt of the 2009 Restated Settlement on November 16, 2009.

22. The 2009 Restated Settlement purports to release Grace from all liability for CDN ZAI Claims but, in contrast to the 2008 CDN ZAI Settlement, maintains the CDN ZAI PI claimants' right to pursue the Crown not just for any alleged several liability of the Crown but also for all joint liability alleged to be shared with Grace and channels the Crown's claim over for contribution or indemnity to the Asbestos PI Trust Fund. In short, Grace and the CCAA Rep Counsel, without prior notice to the Crown, withdrew the Crown Release approved not only by the CCAA court in Canada but by this Court, and replaced it with the following:

---

[9] Ibid, Exhibit 4, Tab H, correspondence from Cindy Yates of Scarfone Hawkins to Careen Hannouche of Lauzon Belanger affirming the limited capacity in which Lauzon Belanger would continue to act.
[10] Exhibit #5, 31st Report of Richard C. Finke, Information Officer, para. 16
[11] Exhibit #2, Grace Motion Record, 2009 Restated Minutes of Settlement, Tab 3

> *… claims against the Crown, whether now or in the future, for injuries suffered directly or indirectly from the manufacture, sale or distribution of ZAI products in Canada. For greater certainty,*
>
> > *21(a) claims may be pursued by CDN ZAI PI Claimants against the Crown even though they may give rise to the CDN ZAI PI Claims by the Crown for contribution, indemnity or otherwise, provided that such CDN ZAI PI Claims by the Crown shall be channeled to the Asbestos Trust by the First Amended Joint Plan.*

23. The evidence relied upon to argue that the 2009 Restated Settlement and the removal of the Crown Release was fair and reasonable, not only to the Canadian class action plaintiffs but also to the Crown, was sworn by Mr. Bélanger.[12] In relying on Mr. Bélanger's affidavit, CCAA Rep Counsel is in a clear breach of Lauzon Bélanger's undertaking to withdraw from participation as CCAA Rep Counsel in respect of any and all matters relating to the Crown in these proceedings and in breach of the representation made to the CCAA court on April 1, 2009 advising that the Lauzon Bélanger firm would only continue participation in the proceedings in respect of the administration of the CDN settlement fund. Attached as **Exhibit #7** is a true copy of the Affidavit sworn by Mr. Belanger on December 4, 2009 without Exhibits.[13]

### No "Settlement" of CDN PI Claims

24. On December 13, 2009, Justice Morawetz released an endorsement approving the Restated 2009 Settlement, with reasons to follow. On January 5, 2010, the CCAA Court released the Issued and entered Order approving the 2009 Restated Settlement. As of the preparation of this Objection, the Reasons have not yet been released. Attached as **Exhibit #8** is a true copy of the December 13, 2009 issued and entered Order approving the 2009 Restated Settlement.

---

[12] Responding Motion Record of CCAA counsel, Affidavit of Michel Bélanger sworn December 4, 2009.
[13] The Crown in particular objected to the inclusion of paragraphs 120-126 included to justify the removal of the Crown release.

25. On December 21, 2009, CDN ZAI Rep Counsel delivered the within application for appointment of Special Counsel *nunc pro tunc* to September 1, 2008, seeking payment of fees for, among other things, the negotiation of the 2008 Settlement and the 2009 Restated Settlement. In paragraph 23 they make it clear that if CCAA Rep Counsel are not paid exactly the legal fees they are requesting, there shall be no settlement of the CDN ZAI Claims:

> *Additionally, pursuant to the terms of paragraph 20 of the Amended Minutes of Settlement, unless otherwise agreed to by the Parties hereto [being CCAA Re Counsel and Grace] in the even that Representative Counsel's Special Counsel Application is not approved by the U.S. Court, the Amended Minutes of Settlement shall be considered null and void. The necessity of the appointment of Representative Counsel as Special Counsel is clearly made by this language.*

26. On December 22, 2009, the Crown served a Notice of Motion for Leave to Appeal from the decision of Justice Morawetz approving the 2009 Restated Settlement, a copy of which is attached as **Exhibit #9**.

27. Neither the CCAA Rep Counsel nor Mr. Hogan have provided any evidence to suggest the CCAA Rep counsel intend to undertake any form of representation on behalf of the Crown or other Canadian PI Claimants in respect of the channelling of those claims to the Asbestos PI Trust. The 2009 Restated Settlement simply releases all of Grace's liability to CDN Claims and imposes the channelling injunction which requires CDN PI claimants to litigate with against the Asbestos PI Trust.

## OBJECTION

### Crown's Appeal Rights not Exhausted – Application Premature

28. The Crown's appeal rights have not been exhausted in Canada. Reasons for the decision have not yet been released by Justice Morawetz and until they are, the Crown will not be in a position to move ahead with the motion for leave.

29. Moreover, the Crown will be filing an Objection in this Court to the approval by this Court of the Restated Settlement which approval process seems to be proceeding by way of

Grace seeking confirmation to the incorporation of further amendments to the Joint Plan reflecting the terms of the 2009 Restated Settlement. Accordingly, the Crown will be filing an Objection to Confirmation of the treatment of the Crown contribution and indemnity claims in the Asbestos PI Trust Distribution Procedures as now reflected in the Third Modifications to the Joint Plan and the Asbestos PI Trust Distribution Procedures.

30. There is no evidence to support an argument that it is urgent that the CCAA Rep Counsel "Special Counsel Application" be heard in January. This Special Counsel Application puts the cart before the horse. Until such time as the Crown's appeal rights in Canada are exhausted and until such time as this Court rules on whether the 2009 Restated Settlement meets the requirements for US Bankruptcy Court approval, no fees should be paid to the CCAA Counsel.

**Public Interest Served by Rejecting or Adjourning Special Counsel Application**

31. It is fundamental law that counsel owe a duty of loyalty to the clients they represent. *See* In re Meridian Automotive Systems – Composite Operations, Inc., 340 B.R. 740 (D. Del. 2006).

32. Accordingly, where attorneys employed as estate professionals have breached their duty of loyalty, courts have held that denial of compensation and/or disgorgement of fees already paid are appropriate sanctions. This court has ordered that fees of debtors' counsel be disgorged where counsel breached its duty of loyalty by representing an interest adverse to the debtors' estates. See In re eToys, Inc., 331 B.R. 176, 193, 194 (Bankr. D. Del. 2005). Similarly, in Schilling v. Smith (In re Smith), Case No. 03-6248, 2005 WL 2089848 (6th Cir. Aug. 30, 2005), the court affirmed a bankruptcy court order denying compensation to counsel for the chapter 7 trustee because counsel breached his fiduciary duty of loyalty to those with an interest

in the bankruptcy estate. Id. at *5. The same trustee whose fees were denied in In re Smith had his fees disgorged in another case where, serving as an examiner, he breached his duty of loyalty by engaging in an undisclosed agreement with a party to litigation and then deceiving the court and other parties about this agreement. Utility Servs. of Dep't of Agriculture v. Schilling (In re Big Rivers Elec. Corp.), 355 F.3d 415, 435 (6th Cir. 2004). Indeed, in In re Big Rivers, the examiner was required to disgorge $1 million in fees. The court noted that "[s]teep as the sanction may be, it represents the price of disloyalty, a price the courts have not hesitated to charge in dealing with similar breaches of trust." Id. at 437.

33. In Meridian, the Delaware Bankruptcy Court specifically noted:

*The Court's "supervision of the ethical conduct of attorneys practicing before it is designed to protect the public interest and not merely the interest of the particular moving party." INA Underwriters Ins. V. Nalibotsky, 594 F. Supp. 1199, 1203 (E.D.Pa. 1984). Moreover, "[r]ules governing professional conduct are often viewed as even more necessary and applicable in bankruptcy cases than in other contexts." Congoleum, 426 F.3d at 686. The rules are so important that courts may act sua sponte to enforce them. O'Connor v. Jones, 946 F.2d 1395, 1399 (8th Cir. 1991).*

Meridian, 340 B.R. at 749-50.

34. The Model Rules of Professional Conduct of the American Bar Association (the "Model Rules") govern the practice of law before the Bankruptcy Court. [Del. Bankr. L.R. 1001-1(b) (adopting the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware); D. Del. L.R.83.6(d)(2) (incorporating the Model Rules).

*For conduct inconsistent with the Model Rules, an attorney "may . . . be reprimanded or subjected to other such disciplinary action as the circumstances may warrant." D. Del. L.R. 83(6)(d)(1). Model Rule 1.7(a), provides that "a lawyer shall not represent a client if the representation of . . .[that] client will be directly adverse to another client."*

35. In this case, not only since at least January 2009, the firm Lauzon Bélanger should not have been involved in any matter *vis-à-vis* the Crown . The Crown was clearly prejudiced by

the reversal of position of CCAA Rep counsel with respect to releasing all claims for which the Crown is or may become entitled to contribution or indemnity against the Grace Parties. CCAA Rep Counsel with full knowledge of the Representation Order requiring them to act not only on behalf of the CDN ZAI putative class they represent but also the Crown, as the Defendant to those proceedings, proceeding as if they were required only to act on behalf of the CDN ZAI putative class, without prior notice to the Crown of their revised view of their representation obligations.

36.   CCAA Rep Counsel never sought and accordingly did not receive the Crown's consent to continue to act on the Crown's consent given the conflict of interest that would necessarily arise upon the CCAA Rep Counsel decision to revoke the release of claims against the Crown that would give rise to contribution and indemnity claims against the Grace parties.

37.   It also bears noting that the 2009 Restated Settlement will be treated as null and void if this Court does not agree to give CCAA Rep Counsel what they are asking for in this application:

   a. CDN $2 million for fees and disbursements; and
   b. CDN$250,000 to CCAA Rep Counsel for "future legal fees and disbursements".[14]

38.   The Restated Settlement was possible only as a result of the CCAA Rep Counsel being authorized by the CCAA Court to negotiate on behalf of the Crown.  There was no "joint retainer" of the CCAA Rep Counsel, rather their obligations to act on behalf of the Crown arose from the CCAA Representative Counsel Order.  The Crown properly and necessarily relied on the CCAA Rep Counsel to discharge its representation on the Crown's behalf in negotiations with Grace in good faith in accordance with the Court order and to, at a minimum, put the Crown

14

on notice and give the Crown an opportunity to defend herself, if the CCAA Rep Counsel decided to reverse positions on the protections already negotiated on behalf of the Crown.

39. In light of the Crown's allegations that she had no choice, given the CCAA Court's ruling on the scope of the CCAA Rep Counsel authority to act on behalf of the Crown, but to rely on CCAA Rep Counsel to represent all of her interests (including her claims over) in negotiations with the Debtors, it is in the public interest that CCAA Rep Counsel not be awarded fees until such time as they have responded to the Crown's allegations that the negotiation of the 2009 Restated Settlement constituted a breach of the duty of loyalty owed to the Crown. These Crown's arguments will be made to the Ontario Court of Appeal in the motion for leave to appeal and to this Court in the Objection to the Modified Plan.

40. Approval of this Special Counsel Application and the provision of the Restated Settlement providing for same are not in the public interest. Despite the attempt by CCAA Rep Counsel and the Debtors to fetter this court's discretion to award determine terms and conditions associated with the appointment of Special Counsel by building in a self-destruct switch to the 2009 Restated Settlement in the event the CCAA Rep Counsel are not awarded exactly what they want, this Court has the power to refuse to hear this application at this time, and/or to decline to enter into a review of the merits until after the Crown has had a full opportunity to be heard on the conflict of interest objections to approval of the Settlement and other Objections to be made in respect of the unfair and inequitable treatment of the Crown in the Third Modifications to the Joint Plan and Asbestos PI Trust Distribution Procedures.

41. In the alternative, the Crown asks this Court to refuse to grant Special Counsel status to the CCAA Court upon finding that the past and contemplated future representation of

---

[14] Exhibit #2, Tab 3, para. 22

the CCAA Rep Counsel of the Crown has fallen short of the ethical and legal requirements that they provide adequate representation not tainted by an irreparable conflict of interest. Accordingly, the CCAA Rep Counsel and Mr. Hogan are not entitled to section 327 status in that the Crown specifically objects to their retention due to the conflict of interest.

42. Moreover, the CCAA Rep counsel and Mr. Hogan, while seeking a payment of fees to cover future representation of unknown future CDN PD and PI claims, have not undertaken to protect the future rights of those claimants by way of any special provisions in the 2009 Restated Settlement. Given the channeling injunction imposed on CDN PI claims and the concession by CCAA Rep Counsel that it will be treated in the same fashion as US PI Claims, it follows that CDN PI claimants will be better served by the existing Future Claims Representative, Mr. Austern who has been actively engaged throughout these proceeding on behalf of Future PI Claimants and will have an advisory role to play in relation to the Asbestos PI Trustee going forward. Accordingly, no compensation should be paid to the CCAA Rep Counsel or Mr. Hogan in respect of such representation and the "all or nothing" Special Counsel Fee application ought to be refused.

## RESERVATION OF RIGHTS

43. The Crown reserves all rights to raise additional arguments to the Special Counsel Applications either at or prior to any hearing with respect to such matters.

WHEREFORE, the Crown respectfully requests that this Court sustain the Objection and asks that these Special Counsel Applications be adjourned to be heard sometime after the Crown has exhausted her appeal rights and this Court has ruled on objections by the Crown to approval of the Restated Settlement and/or the consequent amendments to the Joint Plan, or alternatively the Special Counsel Applications be rejected; and that the Court grant such other and further relief as it deems just and proper.

Dated:  January 8, 2009                        Respectfully submitted,

**Womble Carlyle Sandridge & Rice, PLLC**

By:  /s/ Kevin J. Mangan
Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
Matthew P. Ward (#4471)
222 Delaware Avenue, Suite 1501
Wilmington, DE  19801
Ph: (302) 252-4320
Fax: (302) 252-4330

-and-

Jacqueline Dais-Visca
Senior Counsel
Business Law Section
Ontario Regional Office
Suite 3400, Box 34, The Exchange Tower
130 King Street West, Toronto, Ontario
M5X 1K6

Counsel for Her Majesty the Queen in Right of Canada as represented by the Attorney General of Canada