# EXHIBIT "1" TO OBJECTION

Court File No. 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

**IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF GRACE CANADA INC.**

# RESPONDING RECORD OF THE ATTORNEY GENERAL OF CANADA APPROVAL OF RESTATED CDN ZAI SETTLEMENT (Returnable Dec. 8, 2009)

**Dated: December 4, 2009**

**DEPARTMENT OF JUSTICE CANADA**
Ontario Regional Office
The Exchange Tower
3400-130 King St. West
Toronto, Ontario M5X 1K6

**JACQUELINE DAIS-VISCA**
Tel: (416) 952-6010
Fax: (416) 973-0809
Law Society No.: 35834I

**DEPARTMENT OF JUSTICE CANADA**
Québec Regional Office
200, Bvd René-Lévesque Ouest
Tour est, 5e étage
Montréal, Québec H2Z 1X4

**NATHALIE DROUIN**
Tel: (514) 283-8117
Fax: (514) 283-3856
Law Society No.: 184774-1

**Lawyers for the Attorney General of Canada**

# SERVICE LIST

TO: **OGILVY RÉNAULT LLP**
Barristers and Solicitors
Suite 3800, 200 Bay Street
Royal Bank Plaza, South Tower
Toronto, Ontario M5J 2Z4

**DERRICK C. TAY**
dtay@oglivyrenault.com
Tel: (416) 216-4832
Fax: (416) 216-3830

**ORESTES PASPARAKIS**
opasparakis@oglivyrenault.com
Tel: (416) 216-4815
Fax: (416) 216-3930

**Lawyers for Grace Canada Inc.**

AND TO: **ERNST & YOUNG INC.**
Ernst & Young Tower, 16th Floor
Toronto-Dominion Centre, P.O.Box 251
Toronto, Ontario M5K 1J7

**MURRAY A. McDONALD**
murray.a.mcdonald@ca.ey.com
Tel : (416) 943-3016
Fax: (416) 943-3300

**The Monitor**

AND TO: **ERNST & YOUNG INC.**
800, boul. René-Lévesque Ouest
Bureau 1900
Montréal, Québec H3B 1X9

**JEAN DANIEL BRETON**
jean-daniel.breton@ca.ey.com
Tel : (514) 875-6060
Fax: (514) 879-2600

**The Monitor**

AND TO: **AIKINS, MacAULAY & THORVALDSON LLP**
30th Floor, 360 Main Street
Winnipeg, Manitoba R3C 4G1

**KEITH J. FERBERS**
kjf@aikins.com
Tel: (204) 957-4691
Fax: (204) 957-4269

**Lawyers for Raven Thundersky and Rebecca Bruce**

AND TO: **MERCHANT LAW GROUP**
c/o Eau Claire Place II
#340 – 521 Third Ave. S.W.
Calgary, Alberta T2P 3T3

**EVATT MERCHANT**
emerchant@merchantlaw.com
Tel: (403) 237-9777
Fax: (403) 237-9775

AND TO: **THE SCOTT LAW GROUP, P.S.**
926 W. Sprague Ave, Suite 680
Spokane, WA 99201

**DARRELL W. SCOTT**
darrellscott@mac.com
Tel: (509) 455-3966
Fax: (509) 455-3906

AND TO: **LAUZON BÉLANGER S.E.N.C.**
286, rue St-Paul Ouest, Bureau 100
Montréal, Québec H2Y 2A3

**YVES LAUZON**
ylauzon@lauzonbelanger.qc.ca

**MICHEL BÉLANGER**
mbelanger@lauzonbelanger.qc.ca

**CAREEN HANNOUCHE**
careen.hannouche@lauzonbelanger.qc.ca

Tel: (514) 844-7612
Fax: (514) 844-7009

**Co-Lawyers for Association Des Consommatuers Pour La Qualité Dans La Construction and Jean-Charles Dextras**

**AND TO:** **SCARFONE HAWKINS LLP**
1 James St. S., 14th Flr.
PO Box 926, Stn. LCD 1
Hamilton, Ontario L8N 3P9

**DAVID THOMPSON**
thompson@shlaw.ca

**JEFFREY C. TEAL**
jteal@shlaw.ca

**MATTHEW G. MOLOCI**
moloci@shlaw.ca

Tel: (905) 523-1333
Fax: (905) 523-5878

**Co-Lawyers for Association Des Consommatuers Pour La Qualité Dans La Construction and Jean-Charles Dextras**

# INDEX

| | Description | Page No. |
|---|---|---|
| 1. | Affidavit of Hilda Mozaffar sworn December 4, 2009 | 1 – 4 |
| A. | Exhibit A – Order of Justice Farley dated February 8, 2006 | 5 – 10 |
| B. | Exhibit B –Objection to the Disclosure Statement filed on behalf of Her Majesty the Queen in right of Canada in US Bankruptcy Proceedings, dated October 17, 2009 | 11 – 29 |
| C. | Exhibit C – US Bankruptcy Court's Notice of Agenda of Matters scheduled for hearing on October 27, 2008 and October 28, 2008 | 30 – 35 |
| D. | Exhibit D – Settlement Approval Endorsement dated October 23, 2008 | 36 – 46 |
| E. | Exhibit E – Claims Bar Order dated November 13, 2008 | 47 – 53 |
| F. | Exhibit F – Excerpts from the Crown's PD claim filed on behalf of the Department of National Defence | 54 – 57 |
| G. | Exhibit G – W. R. Grace US ZAI Property Damage Trust Distribution Procedures | 58 – 83 |
| H. | Exhibit H – Term Sheet for Resolution of U.S. Zonolite Attic Insulation Claims, dated November 21, 2008 | 84 – 94 |
| I. | Exhibit I – W. R. Grace US ZAI Personal Injury Damage Trust Distribution Procedures | 95 – 162 |
| J. | Exhibit J – Justice Fitzgerlad's Memorandum Opinion, dated December 14, 2006 | 163 – 217 |
| K. | Exhibit K – State of Montana's Post-Trial Brief in Opposition to the Confirmation of the First Amended Joint Plan of Reorganization, dated November 2, 2009 | 218 – 233 |
| L. | Exhibit L – Phase II Post-Trial Brief of Garlock Sealing Technologies, LLC in Opposition to the Confirmation of the Plan Proponents' First Amended Join Plain of Reorganization, dated November 2, 2009 | 234 – 271 |
| M. | Exhibit M – US Scheduling Order, Confirmation Hearing Closing Argument, dated October 29, 2009 | 272 – 274 |
| N. | Exhibit N – Letter from Orestes Pasparakis, dated December 3, 2009 to Keith Ferbers | 275 – 278 |

| | Description | Page No. |
|---|---|---|
| 2. | Affidavit of Lilianne David sworn October 2, 2008 | 279 – 281 |
| A. | Exhibit A – Order of Justice Chaput, Quebec Superior Court, dated November 76, 2005 | 282 – 290 |
| B. | Exhibit B – Order and Endorsement of Justice Farley dated November 14, 2008 | 291 – 298 |
| C. | Exhibit C – W.R. Grace & Co. Asbestos Property Damage Proof of Claim Form | 299 – 314 |
| D. | Exhibit D – Grace Non-Asbestos Proof of Claim for | 315 – 320 |
| E. | Exhibit E – Order of Justice Farley dated February 8, 2006 | 321 – 324 |
| 3. | Responding Record, 30th Information Officer Report, dated June 18, 2009 | 325 – 355 |

Court File No.: 01-CL-4081

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORSARRANGEMENT ACT*, R.S.C. 1985, c. C-36 AS AMENDED AND IN THE MATTER OF GRACE CANADA INC

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

Proceeding Commenced at Toronto

**RESPONDING RECORD OF THE ATTORNEY GENERAL OF CANADA**
**APPROVAL OF RESTATED CDN ZAI SETTLEMENT**
**(Returnable Dec. 8, 2009)**

**Department of Justice Canada**
Ontario Regional Office
130 King Street West
Suite 3400, Box 36
Toronto, ON M5X 1K6

**Per:** **Jacqueline Dais-Visca**
Tel: (416) 952-6010
Fax: (416) 973-0809
Law Society No.: 358341

**Department of Justice Canada**
Québec Regional Office
200, Bvd René-Lévesque Ouest
Tour est, 5e étage
Montréal, Québec H2Z 1X4

**Per:** **Nathalie Drouin**
Tel: (514) 283-8117
Fax: (514) 283-3856
Law Society No.: 184774-1

Lawyers for the Attorney General of Canada

Court File No.: 01-CL-4081

**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

**IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36 AS AMENDED**

**AND IN THE MATTER OF GRACE CANADA INC.**

**Applicant**

# AFFIDAVIT OF HILDA MOZAFFAR
## Sworn December 4, 2009

I, HILDA MOZAFFAR, Legal Assistant with the Department of Justice Canada, of the City of Thornhill, in the Province of Ontario, MAKE OATH AND SAY:

1. I am the assistant to Jacqueline Dais-Visca, counsel with carriage of this file on behalf of the Attorney General of Canada. As such I have knowledge of the matters to which I hereinafter depose except where my knowledge is said to be based on information from others in which case I have identified the source of the information and verily believe the information to be true.

2. Attached hereto and marked as **Exhibit "A"** is a true copy of the Order of Justice Farley dated February 8, 2006 appointing Lauzon Belanger S.E.N.C.R.L. and Scarfone Hawkins LLP as representative counsel in these proceedings on behalf of all Canadian Claimants.

3. Attached here to and marked as **Exhibit "B"** is a true copy of the Objection to the Disclosure Statement filed on behalf of Her Majesty the Queen in right of Canada in

the US Bankruptcy Proceedings dated October 17, 2009 ("Crown Disclosure Statement Objection").

4.        Attached hereto and marked as **Exhibit "C"** is a true copy of the US Bankruptcy Court's Notice of Agenda of Matters scheduled for hearing on October 27, 2008 and October 28, 2008 confirming that the Crown Disclosure Statement Objection would be going forward.

5.        Attached hereto and marked as **Exhibit "D"** is a true copy of this Court's Endorsement dated October 23, 2008 in respect of this Court's approval of the Canadian Zonolite Attic Insulation ("ZAI") Claims Settlement ("2008 CDN ZAI Settlement").

6.        I am advised by Jacqueline Dais-Visca and verily believe that as a result of this Court's approval of the 2008 CDN ZAI Settlement, Ms. Dais-Visca advised the US Court that she would not be proceeding with the Crown Disclosure Statement Objection as the issue was moot.

7.        Attached hereto and marked as **Exhibit "E"** is a true copy of the Court's order dated November 13, 2008 recognizing and implementing the US Court's establishment of a proof of claim bar date for Canadian ZAI property damage claims and approval of related proof of claim form, bar date notices and notice program dated October 20, 2008 ("PD Claims Bar Order").

8.        Attached hereto and marked as **Exhibit "F"** is a true copy of excerpts from the Crown's claim filed on behalf of the Department of National Defence, pursuant to the PD Claims Bar Order seeking recovery of costs incurred to survey and inspect 11,864 units and seal 2202 units.

9. Attached hereto and marked as **Exhibit "G"** is a true copy of the W. R. Grace US ZAI Property Damage Trust Distribution Procedures, which sets out the procedures for resolving all US property damage Claims.

10. Attached hereto and marked as **Exhibit "H"** is a true copy of the Term Sheet for Resolution of U.S. Zonolite Attic Insulation Claims dated November 21, 2008.

11. Attached hereto and marked as **Exhibit "I"** is a true copy of the W. R. Grace US ZAI Personal Injury Damage Trust Distribution Procedures which sets out the procedures for resolving all US asbestos personal injury claims

12. Attached hereto and marked as **Exhibit "J"** is a true copy the Justice Fitzgerald's Memorandum Opinion dated December 14, 2006 in respect of the ZAI Science Trial.

13. Attached hereto and marked as **Exhibit "K"** is a true copy of State of Montana's Post-Trial Brief in Opposition to the Confirmation of the First Amended Joint Plan of Reorganization dated November 2, 2009.

14. Attached hereto and marked as **Exhibit "L"** is a true copy of the Phase II Post-Trial Brief of Garlock Sealing Technologies, LLC in Opposition to the Confirmation of the Plan Proponents' First Amended Joint Plan of Reorganization dated November 2, 2009.

15. Attached hereto and marked as **Exhibit "M"** is a true copy of the Order dated October 29, 2009 scheduling closing arguments in connection with the Confirmation Hearings to January 4th and 5th, 2010.

16. Attached hereto and marked as **Exhibit "N"** to my affidavit is a true copy of letter by Orestes Pasparakis dated December 3, 2009 to Keith Ferbers.

17. I make this affidavit in support of the Crown's objection to approval by this Court of the Restated CDN ZAI Settlement entered into between the Grace Parties and the Canadian Representative Counsel on November 16, 2009.

Sworn before me at the City of Toronto, in Province of Ontario, on December 4, 2009.

Commissioner for Taking Affidavits

HILDA MOZAFFAR

5

This is Exhibit "A" mentioned and referred to in the affidavit of

Hilda McCaffer

Sworn before me this 4th day of

December A.D. 2009

A Commissioner for taking affidavits

Court File No. 01-CL-4081

SUPERIOR COURT OF JUSTICE

COMMERCIAL LIST

| THE HONOURABLE | ) | WEDNESDAY, THE 8TH DAY OF |
|---|---|---|
| | ) | |
| MR. JUSTICE FARLEY | ) | FEBRUARY, 2006 |

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

# ORDER

**THIS MOTION** made by Grace Canada, Inc. (hereinafter referred to as the "Applicant"), for an Order:

(a) abridging the time for service of this motion;

(b) appointing Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP (the "Representative Counsel") to act as representative counsel in these proceedings on behalf of all persons who have, or at any time in the future may have a claim, arising out of or in any way connected to damages or loss suffered, directly or in directly, from the manufacture, sale or distribution of Zonolite attic insulation products in Canada ("Canadian Claimants") by the Applicant or any of W.R. Grace & Co. and all of its subsidiaries (the "U.S. Debtors") as well as certain other Affiliated Entities (as defined in the order of the United States Bankruptcy Court (the "U.S. Court") made on January 22, 2002, as amended);

(c) declaring that the Representative Counsel's powers shall include but not be limited to:

(i) representing the interests of Canadian Claimants in these proceedings;

(ii) appearing before this Honourable Court in these proceedings and applying to this Honourable Court for advice and directions from time to time;

(iii) seeking to appear or have an agent seek to appear before the U.S. Court in the context of the U.S. Debtors' Chapter 11 cases (the "Chapter 11 Cases"); and

(iv) negotiating on behalf of the Canadian Claimants with the Applicant, The Attorney General of Canada (Her Majesty the Queen in Right of Canada) (the "Crown"), the U.S. Debtors, the Affiliated Entities and any other person or entity;

(d) declaring that Canadian Claimants shall be responsible for the fees and disbursements of the Representative Counsel subject to further order of this Honourable Court;

(e) that any person affected by this Order (an "Affected Person") shall be entitled to apply to this Honourable Court for relief from time to time;

(f) discharging Pierre Le Bourdais as information officer in these proceedings and appointing Richard C. Finke as information officer in these procedures; and

(g) such further relief as this Honourable Court deems appropriate.

was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING**, the Applicant's Notice of Motion, the affidavit of Richard Finke sworn January 31, 2006, the affidavit of Raven Thundersky ("Thundersky") sworn February 1, 2006, the affidavit of Yves Lauzon sworn February 3, 2006 and the affidavit of Merv Nordick sworn February 6, 2006, and on hearing the submissions of counsel for: (a) the Applicant; (b) Association Des Consommatuers Pour La Qualité Dans La Construction and Jean-Charles Dextras, Viviane Brosseau and Léotine Roberge-Turgeon; (c) the Crown; (d) Thundersky et. al.; and (e) Merv Nordick and Ernest Spencer et. al., and upon being advised that no other person has appeared on this date or served and filed responding materials on this motion although duly served and on reading the affidavit of service of Monique Massabki sworn February 2, 2006:

1. **THIS COURT ORDERS** that the time for service of the Applicant's Notice of Motion and Motion Record in support of this Motion be and it is hereby abridged such that the Motion is properly returnable today, and, further, that any requirement for service of the Notice of Motion and of the Motion Record upon any interested party, other than the parties herein mentioned, is hereby dispensed with.

2. **THIS COURT ORDERS** that Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP be appointed as representative counsel, in these proceedings on behalf of all Canadian Claimants.

3. **THIS COURT ORDERS** that the Representative Counsel's power shall include but not be limited to:

(a) representing the interests of Canadian Claimants in these proceedings;

(b) appearing before this Honourable Court in these proceedings and applying to this Honourable Court for advice and directions from time to time;

(c) seeking to appear or have an agent seek to appear before the U.S. Court in the context of the Chapter 11 Cases; and

(d) negotiating on behalf of the Canadian Claimants with the Applicant, the Crown, the U.S. Debtors, the Affiliated Entities and any other person or entity.

4. **THIS COURT ORDERS** that Canadian Claimants shall be responsible for the fees and disbursements of the Representative Counsel subject to further order of this Honourable Court.

5. **THIS COURT ORDERS** that any Affected Person shall be entitled to apply to this Honourable Court for relief from time to time.

6. **THIS COURT ORDERS** that Pierre Le Bourdais be and is hereby discharged as information officer in these proceedings and Richard C. Finke is hereby appointed information officer in these proceedings.

JOSEPH P. VAN TASSEL
REGISTRAR

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO:

FEB 0 9 2005

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC

Court File No: 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE

Proceeding commenced at Toronto

**ORDER**

**OGILVY RENAULT LLP**
Barristers & Solicitors
Suite 3800, PO Box 84
Royal Bank Plaza, South Tower

200 Bay Street
Toronto, Ontario M5J 2Z4

**DERRICK C. TAY**
LSUC #21152A
Tel: 416.216.4832
Fax: 416.216.3930

**ORESTES PASPARAKIS**
LSUC # 36851T
Tel: 416.216.4815
Fax: 416.216.3930

Solicitors for the Applicant

11

This is Exhibit "G" mentioned and referred to in the affidavit of

Hilda Mozaffar

Sworn before me this 4th day of

December A.D. 2009

A Commissioner for taking affidavits

12

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 01-1139 (JKF)<br><br>Jointly Administered<br><br>**Re: Docket Nos. 19581, 19582, 19620, and 19695**<br><br>**Hearing Date: 10/27/08 at 9:00 a.m. (Eastern)**<br>**Objection Deadline: 10/17/08 at 4:00 p.m. (Eastern)** |

**OBJECTION OF HER MAJESTY THE QUEEN IN RIGHT OF CANADA TO (I) THE DEBTORS' DISCLOSURE STATEMENT FOR THE JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS AND (II) THE MOTION OF THE DEBTORS FOR AN ORDER**

---

[1] The Debtors are the following entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals Inc.), W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), ECARG, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, LB Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc. E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

13

**APPROVING DISCLOSURE STATEMENT, SOLICITATION AND CONFIRMATION PROCEDURES, CONFIRMATION SCHEDULE AND RELATED RELIEF**

Her Majesty the Queen in Right of Canada (the "Crown"), by and through its undersigned counsel, hereby objects (the "Objection") to the Debtors' Disclosure Statement for the Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of September 19, 2008 (Docket No. 19581) (the "Disclosure Statement") and to the Motion of the Debtors for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief (Docket No. 19620) (the "Solicitation Motion"), and in support of this Objection states as follows:

**BACKGROUND AND INTRODUCTION**

1. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession.

2. On September 19, 2008, the Debtors filed the Disclosure Statement. In connection with the Disclosure Statement, the Debtors also have provided a copy of the accompanying Exhibit Book, which identifies twenty-four exhibits to the Disclosure Statement, including as Exhibit 1 the Debtors' proposed plan of reorganization (the "Plan") and as Exhibit 9 the CDN ZAI Minutes of Settlement dated September 2, 2008.

3. On September 25, 2008, the Debtors then filed the Solicitation Motion, seeking approval of the Disclosure Statement. On the same day, the Debtors also filed a motion to shorten notice with respect to the Solicitation Motion (Docket No. 19621) (the "Motion to

Shorten"). The Court entered an order granting the Motion to Shorten on October 1, 2008 (Docket No. 19662).

4. As detailed below, among other objections, the Crown specifically objects to the failure of the Disclosure Statement to disclose how the Crown contribution and indemnity claim is being addressed and the failure of the Disclosure Statement to disclose the on-going dispute between the Crown and Grace in respect of this Crown claim.

**CCAA Proceedings and Representative Counsel Order**

5. On November 14, 2005, as a result of the commencement of the class action proceedings in Canada, Grace sought from and was granted an order pursuant to s. 18.6(4) of the *Companies' Creditors Arrangement Act* (the "CCAA") *In the Matter of S. 18.6 of the Companies' Creditors Arrangement Act, R.S.C. 1984, c. C-36, As Amended and In the Matter of Grace Canada, Inc.*, Court File 01-CL-4081 (the "CCAA proceeding") by the Ontario Superior Court of Justice (Commercial List), acting as an ancillary court, giving effect in Canada to the stay of proceedings granted by the US Court, staying proceedings and prohibiting the commencement or continuation of any asbestos related suits against Grace and Canada without further order of the CCAA court.

6. There are currently ten class actions in which the Crown has been sued that have been filed across Canada concerning claims that relate to the cost of removal, diminution of property value or economic loss allegedly caused by Zonolite Attic Insulation manufactured by the Debtors. W.R. Grace and or its affiliated companies are co-defendants with the Crown in all but the first of these class actions, which are as follows:

- Viviane Brosseau et al v. Attorney General of Canada, Superior Court of Quebec, District of Montréal, 500-06-000286-050 (no claim against the Grace companies);

- Dextras et al v. Attorney General of Canada, W.R. Grace & Co. et al, Superior Court of Quebec, District of Montréal, 500-06-000258-042;
- Raven Thundersky et Rebecca Bruce v. Attorney General of Canada, W.R. Grace & Co., Court of Queen's Bench of Manitoba;
- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Federal Court, Saskatchewan;
- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Court of Queen's Bench of Saskatchewan;
- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al. Court of Queen's Bench of Alberta;
- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Supreme Court of British Colombia;
- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Province of Quebec, District of Hull;
- Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Court of Queen's Bench of Manitoba; and
- Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Ontario Superior Court of Justice.

7. In the aforementioned class actions, the petitioners seek to represent all Canadians who have suffered past or will suffer future property damage and personal injury due to exposure to Zonolite Attic Insulation and allege, among other things, that the Crown has breached a duty to warn and breached fiduciary duties owing to aboriginals.

8. An action has also been instituted by the Province of Manitoba. *Her Majesty The Queen in the Right of the Province of Manitoba v. Attorney General of Canada, W.R. Grace & Co. et al.*, Court of Queen's Bench of Manitoba. The Province of Manitoba has sued the Crown and the manufacturer of Zonolite for the cost of insured health services paid or to be paid to the named plaintiffs in Thundersky and all other persons determined to be class members in the Thundersky case.

9. In the event that the Crown and the manufacturers are held jointly and severally liable to the Canadian ZAI Claimants, the Crown seeks contribution and indemnification from the manufacturers who are liable, including the Debtors W.R. Grace et al. On or about January 31, 2006, the Crown filed two separate claims against the Grace Parties in the Chapter 11 proceedings in the United States (the "Crown Claim"):

a. an "Asbestos Property Damage Proof of Claim Form" seeking contribution and indemnity from W.R. Grace and related companies for any damages the Crown might be found liable for in respect of ZAI. The claim specifically indicated that it was filed for "protective reasons" only and in recognition that no claims bar date had yet been set in respect of PI claims: and

b. a "Non-Asbestos Proof of Claim Form" also seeking contribution and indemnity from W.R. Grace and related companies for any damages the Crown might be found liable for in respect of ZAI.

10. In addition to the Crown's claim for contribution and indemnification, the Crown also has direct claims against the Debtors in respect of costs incurred to seal attics and otherwise remediate ZAI installed in Crown owned properties in homes built on military bases and Native reserves.

11. On February 8, 2006, Justice Farley of the Ontario Superior Court (the "CCAA Court") made two orders in respect of the capacity of the CCAA Representative Counsel. The first order appointed Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins, LLP to act as representative counsel on behalf of all persons who have, or at any time in the future may have, a claim arising out of or in any way connected to damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of ZAI products in Canada (the "Canadian ZAI Claimants") "to negotiate *on behalf of* the Canadian Claimants *with* the Applicant, the Crown, and the U.S. Debtors, the Affiliated Entities and any other person or entity" (the "CCAA Representative Counsel Order").

12. The second order made by Justice Farley on February 8, 2006 provided that, notwithstanding the CCAA Representative Counsel Order, nothing shall preclude Aikins MacAulay Thorvaldson from acting on behalf of Raven Thundersky (the representative counsel for aboriginal claimants) or any other party in respect of Canadian claims as against any party other than Grace and that Raven Thundersky shall not be precluded from participating in the CCAA proceedings in respect of Canadian claims as deemed appropriate by the CCAA court. This second order therefore permits separate treatment and representation in respect of ZAI claims against the Crown.

13. On September 2, 2008, Grace and the Canadian CCAA Representative Counsel entered into Minutes of Settlement (the "Settlement") purporting to resolve all Canadian ZAI claims ("CDN ZAI Claims") as against the Grace Parties. The Crown was not a party to this Settlement. To date the Crown has been unable to reach an agreement to resolve the ZAI Claims against the Crown or the Crown Claim for contribution and indemnity from Grace.

14. CDN ZAI Claims are defined in the Settlement as CDN ZAI PD claims or CDN ZAI PI Claims. CDN ZAI PD Claims expressly include any "ZAI PD Claims asserted or to be asserted by the Crown". An example of the Crown's PD claim is the Crown's claim in respect of the containment of ZAI in military homes in Canada, which work was paid for by the Crown.

15. The Crown acknowledges that the CCAA Representative Counsel have the authority, pursuant to the CCAA Representation Order, to negotiate on behalf of CDN ZAI PD claimants and CDN ZAI PI claimants which authority includes the power to negotiate on behalf of aboriginal claimants and on behalf of the Crown in respect only of the Crown's PD Claim against the Grace Parties. However, the Crown disputes the authority of the CCAA Rep Counsel to purport to negotiate away the Crown's Chapter 11 'claim over' for contribution and indemnity

18

against the Grace Parties, when Representative Counsel have a conflict of interest in the group they purport to represent. This conflict is highlighted by the elimination of the Crown's contribution and indemnity claims while at the same time expressly reserving the CDN Claimants' right to pursue so-called 'independent' or several claims against the Crown in paragraph 13(b)(iv) of the Settlement.

16. On September 30, 2008, Justice Morawetz, of the CCAA Court acting pursuant to this Court's Request of Aid and Assistance, heard argument on whether to approve the Settlement. The Crown advised the CCAA Court that it supported the Settlement as "fair and reasonable", *provided that* the Settlement did not impair the Crown's separately filed U.S. Chapter 11 Crown Claims for contribution and indemnity against the Grace Parties and provided that it did not impair the Crown's right to commence a third party claim against the Grace Parties to seek contribution and indemnity in any ZAI related action, even if sued on a several basis, which claims the Crown argued were neither a CDN ZAI PD nor a CDN ZAI PI claim.

17. The decision on the motion remains under reserve by Justice Morawetz.

## OBJECTION

### I. THE DISCLOSURE STATEMENT SHOULD NOT BE APPROVED.

18. Bankruptcy Code section 1125(b) provides that during the confirmation process, a plan proponent must present "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). Section 1125(a) defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records, . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a). The Crown maintains that in

WCSR 3997909v9

19

several respects, the Disclosure Statement does not provide a hypothetical investor with information that is sufficient in detail to allow it to make an informed judgment about the plan.

**A. The Disclosure Statement Should Disclose That The Crown's Claims For Contribution And Indemnification For Personal Injury And Breach Of Fiduciary Duty Were Not Settled Pursuant To The CDN ZAI Minutes Of Settlement.**

19. The Crown maintains that its claims for contribution and indemnification for personal injury and breach of fiduciary duty were not settled pursuant to the CDN ZAI Minutes of Settlement. As set forth above, the Crown was not involved in any of the negotiations leading up to the Canadian ZAI Settlement, and believes that the results of that settlement do not have any effect on the Crown's claims for contribution and indemnification for personal injury and breach of fiduciary duty. Rather, those claims have not been settled, and remain subject to ongoing litigation and dispute.

20. Section 2.8 of the Disclosure Statement describes and discusses the Debtors' ongoing litigation matters. However, that section does not make any disclosures regarding the Debtors' ongoing litigation with the Crown with respect to the aforementioned claims. In order for the Disclosure Statement to contain adequate information, the Disclosure Statement should be amended to include a new Section 2.8.6 to describe the Crown's contribution and indemnification claims for personal injury and breach of fiduciary duty, and should affirmatively state in that new section that the Crown believes that such claims have not been settled but rather are the subject of ongoing litigation and dispute.

21. Additionally, with respect to the Crown's fiduciary duty claims, the Disclosure Statement should be amended to clarify the class into which the Debtors have classified such claims. The Crown maintains that such claims were not settled pursuant to the CDN ZAI Minutes of Settlement. Consequently, the Disclosure Statement should be amended (i) to clarify

that such claims are not classified within Class 8 CDN ZAI PD Claims, and (ii) to specify into which other class such claims are classified.

**B. The Disclosure Statement Should Disclose That The Plan Blatantly Disregards The Absolute Priority Rule.**

22. As a preliminary matter, the Crown objects to the Disclosure Statement because it fails to disclose that the Plan blatantly disregards the absolute priority rule. Specifically, the Bankruptcy Code provides that a plan normally may be confirmed if it meets certain requirements, including that each and every class either accepts the plan or does not suffer any impairment under the plan. See 11 U.S.C. § 1129(a)(i) ("The court shall confirm a plan only if all of the following requirements are met: (i) With respect to each class of claims or interests—(A) such class has accepted the plan; or (B) such class is not impaired under the plan."). The Bankruptcy Code, however, provides an alternative regime for confirmation, commonly referred to as "cram down." Specifically, a debtor may confirm a plan even if one of the impaired classes does not accept the plan, so long as the plan is (among other things) fair and equitable. See id. § 1129(b)(1) "[I]f all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met[, the court] shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.").

23. The Bankruptcy Code provides that in order to meet the "fair and equitable" requirement of this cram down regime, it must comply with what is known as the "absolute priority rule." Specifically, it must be the case that each creditor in the dissenting class either receives the full value of the allowed amount of its claim, or alternatively that the creditors in junior classes do not receive any distribution. See 11 U.S.C. § 1129(b)(2)(B)(ii) (requiring that for "a plan [to] be fair and equitable with respect to a class" for purposes of cram down, it must

be the case that "the plan provides that each holder of a claim of such class receive . . . the allowed amount of such claim" or, alternatively, "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property . . . ."); see also In re Armstrong World Indus., Inc., 432 F.3d 507, 508 (3d Cir. 2005) (affirming denial of confirmation because plan violated absolute priority rule).

24. The Disclosure Statement and Plan directly contravene the requirements of the absolute priority rule:

a. The Crown's claims for indemnification and contribution for personal injuries have been classified within Class 6 Asbestos PI Claims. See supra Part I.C (discussing, and disputing, classification of the Crown's claims for indemnification and contribution for personal injuries). Class 6 Asbestos PI Claims are impaired under the Plan. See Disclosure Statement § 1.2.1 (stating that Class 6 Asbestos PI Claims will be resolved pursuant to the Asbestos PI Trust Agreement, and that holders of such claims will receive an "[u]nknown" amount); see also Plan § 3.1.

b. The Crown's property damage claims against the Debtors (both its direct property damage claims as well as its contribution and indemnification claims for property damage) have been classified within Class 8 CDN ZAI PD Claims. See supra Part II (discussing, and disputing, classification of the Crown's property damage claims). Class 8 CDN ZAI PD Claims are impaired under the Plan. See Disclosure Statement § 1.2.1 (stating that Class 8 CDN ZAI PD Claims will be resolved pursuant to the CDN ZAI Minutes of Settlement, and that holders of such claims will receive an "[u]nknown" amount); see also Plan § 3.1.

25. Notwithstanding that Classes 6 and 8 are impaired under the Plan, classes that are junior in priority to Classes 6 and 8 are unimpaired under the Plan. Specifically, the Disclosure Statement provides that each holder of allowed Class 7 Asbestos PD Claims "shall be paid the Allowed Amount of its Allowed Asbestos PD Claim in Cash in full . . ." Disclosure Statement 1.2.1 (listing estimated percentage recovery for Class 7 as "100%"). Likewise, the Disclosure Statement provides that each holder of allowed Class 9 General Unsecured Claims "shall be paid

the Allowed Amount of its Allowed General Unsecured Claim with postpetition interest . . . in Cash in full . . ." Disclosure Statement 1.2.1 (listing estimated percentage recovery for Class 9 as "100%"). Finally, the Disclosure Statement provides, with respect to Class 11 Equity interests in Debtors Other than the Parent, that "[t]he Plan leaves unaltered the legal, equitable, and contractual rights to which each Equity Interest in the Debtors other than the Parent entitles the Holder of such Equity Interest." Disclosure Statement 1.2.1 (listing estimated percentage recovery for Class 11 as "100%"). Even the class that is junior to Classes 6 and 8 that is impaired still is retaining rights under the Plan. Specifically, the Plan and Disclosure Statement provide that with respect to Class 10 Equity Interests in the Parent, that such interests shall be retained, subject to the issuance of the Warrant and the terms of the Share Issuance Agreement (as such terms are defined therein). See Disclosure Statement § 1.2.1; Plan § 3.1.10(b).

26. The Debtors have blatantly disregarded the absolutely priority rule. Specifically, they have stated that even if a class does not accept the Plan, the Debtors nonetheless are seeking confirmation of the Plan pursuant to the cram-down regime. See Disclosure Statement § 4.6 ("Section 6.5.1 of the Plan deals with confirmation in the event an impaired Class rejects the Plan. Impaired Equity Interests in the Parent and/or impaired Classes of Plan claims that fail to accept the Plan may be "crammed down" in accordance with Bankruptcy Code § 1129(b)."); id. § 8.2.1 (summarizing cram-down regime and stating that "[i]n the event one or more Classes of impaired Claims or Equity Interests rejects the Plan, the Debtors reserve the right to proceed with confirmation pursuant to Bankruptcy Code § 1129(b), and the Bankruptcy Court will determine, at the Confirmation Hearing, whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired Class of Claims or Equity Interests"); see also Plan § 6.5.1 ("With respect to impaired Equity Interests in the Parent, and subject to Section 6.of this

Plan [addressing acceptance by Classes 6 and 7 pursuant to Bankruptcy Code section 524(g)], with respect to any impaired Class of Plan claims that fail to accept this Plan in accordance with Bankruptcy Code §§ 1126 and 1129(a), the Plan Proponents request, to the extent consistent with applicable law, that the Court confirm this Plan in accordance with Bankruptcy Code § 1129(b) with respect to such non-accepting Class of Equity Interests and such non-accepting Class of Plan Claims (if any), and this Plan constitutes a motion for such relief."). This is so despite the fact that the Plan violates the absolute priority rule, in direct contravention of Bankruptcy Code section 1129(b).

27. The Disclosure Statement does not disclose that the Plan violates the absolute priority rule. To the contrary, the Disclosure Statements states in the section identifying risk factors that "[a]lthough the Debtors believe that the Plan will satisfy all requirements necessary for confirmation, there can be no assurance that the Bankruptcy Court will reach the same conclusion." Disclosure Statement § 9.2.3.

28. The Crown requests the Court to require the Debtors to amend the Disclosure Statement to expressly disclose the Plan's violation of the absolute priority rule, or alternatively, require the Debtors to amend the Disclosure Statement and Plan in order to bring them into compliance with the requirements of that rule. Specifically, the Debtors should not be allowed to maintain, in sections 4.6 and 8.2.1 of the Disclosure Statement or section 6.5.1 of the Plan, that they are seeking confirmation of the Plan pursuant to Bankruptcy Code section 1129(b) when, in fact, the Disclosure Statement and Plan in their current form directly violate the requirements of that section.

**C. The Disclosure Statement Should Disclose The Existence Of A Dispute Regarding Whether The Crown's Contribution And Indemnification Claims May Be Subject To A Channeling Injunction Or Discharged.**

29. With respect to contribution and indemnification claims for personal injuries, while the Disclosure Statement does not expressly and clearly state into which class such claims fall, the Crown anticipates that the Debtors would treat such claims as classified within Class 6 Asbestos PI Claims. Specifically, the Plan defines a "Canadian Claim" as "any Claim . . . against any of the Debtors . . . based on, arising from, or attributable to exposure to asbestos from the Debtors' asbestos containing products in Canada or the use in Canada of the Debtors' asbestos containing products, including any such Claim . . . that seeks reimbursement, contribution, or indemnification (contractual or otherwise)." Plan § 1.1(51). The Plan in turn defines a "CDN ZAI PI Claim" as "a Canadian Claim . . . including . . . (y) all cross-claims, contribution claims, subrogation claims, reimbursement claims or indemnity claims . . . based on, or arising out of, resulting from, or attributable to, directly or indirectly from: . . . (b) the presence of or exposure at any time to ZAI that was mined . . . in Canada . . . ." Plan § 1.1(61)(b). The Plan in turn defines an "Asbestos PI Claim" to include "any and all CDN ZAI PI Claims and related Demands against any of the Debtors . . . ." Plan § 1.1(32)(iii).

30. With respect to contribution and indemnification claims for property damage, the Debtors treat such claims as classified within Class 8 CDN ZAI PD Claims. Specifically, the Plan defines a "CDN ZAI PD Claim" as "a Canadian Claim against . . . any of the Debtors . . . , including . . . contribution claims, subrogation claims, reimbursement claims or indemnity claims . . . . for . . . property damage located in Canada, including the cost of removal, abatement, or diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, by the ZAI sold . . . by one or more of the Debtors . . . ." Plan at p. 15.

31. The Disclosure Statement then improperly provides that both the Class 6 Asbestos PI Claims, as well as the Class 8 CDN ZAI PD Claims, are channeled to various trusts. Specifically, the Class 6 Asbestos PI Claims are channeled to the Asbestos PI Trust. See Disclosure Statement § 1.2.3. ("The Asbestos PI Trust will, among other things, (1) assume liability for all Asbestos PI Claims (whether now existing or arising at any time in the future) . . . . The Asbestos PI Trust will be the only Entity that a Holder of an Asbestos PI Claim may look to for recovery on account of such a Claim." (emphasis in original)). The Class 8 CDN ZAI Claims are channeled to the CDN ZAI PD Claims Fund. See Disclosure Statement § 1.2.5 ("CDN ZAI PD Claim will be channeled to, and paid from, the CDN ZAI PD Claims Fund according to the CDN ZAI Minutes of Settlement. The CDN ZAI PD Claims Fund will be the only Entity that a Holder of an CDN ZAI PD Claim may look to for recovery on account of such a Claim." (emphasis in original)).

32. It is conceivable if not likely, that some of the Crown's contribution and indemnity claims in respect of PI and PD claims will be the shortfall of any amounts found to be owing to these claimants but not paid by Grace. Those amounts, and accordingly the Crown's liability will not be known until some time in the future. The Plan does not disclose how these future contingent claims will be dealt with in a fair and equitable manner. Nor has Grace negotiated a resolution of these claims with the Crown.

33. Moreover, the Debtors' purported basis for channeling the Asbestos PI Claims to the Asbestos PI Trust and the CDN ZAI PD Claims to the CDN ZAI PD Claims Fund is Bankruptcy Code section 524(g). See Disclosure Statement § 4.7.2.1 ("[T]he Asbestos PI Trust shall be created pursuant to section 524(g) of the Bankruptcy Code . . . . The purpose of the Asbestos PI Trust shall be to, among other things: (i) assume the liabilities of the Debtors with

respect to all Asbestos PI Claims . . . ."); id. § 4.8.3.1 ("[T]he sole recourse of a Holder of a CDN ZAI PD Claim . . . shall be to the CDN ZAI PD Claims Fund as set forth in the CDN ZAI Minutes of Settlement." (emphasis in original)).

34. The Crown maintains that its claims for indemnification and contribution (whether for personal injuries, property damage or breach of duty including duty to warn or fiduciary duty claims) are not of the type that are subject to Bankruptcy Code section 524(g). Specifically, the injunction that is implemented by that section addresses only the liabilities of a debtor that, as of the petition date, was named as a defendant in personal injury, wrongful death, or property damage actions. See 11 U.S.C. § 524(g)(2)(B)(i)(I) (requiring that "the injunction is to be implemented in connection with a trust that . . . is to assume the liabilities of a debtor which at the time of entry of the order for relief has been named as a defendant in personal injury, wrongful death, or property-damage actions"). The Crown believes that its Crown Claims are in the nature of indemnification and contribution, not personal injury, wrongful death, or property damage, fall outside the scope of this section.

35. The Crown further believes that its claims may not even be claims that are subject to the automatic stay or that are capable of being discharged by the Plan. The Bankruptcy Code defines a "claim" as a "right to payment." 11 U.S.C. § 101(5). Therefore, because the Crown may not have a "claim" as defined in the Bankruptcy Code until its right to payment arises, the Crown's claims may be treated as post-confirmation claims against the reorganized debtor, not subject to the automatic stay and not subject to compromise or discharge by the Plan. See Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.), 744 F.2d 332, 335-36 (3d Cir. 1984) (reversing district court, and concluding that the automatic stay did not apply to

indemnification and contribution claims that relate to a debtor's prepetition acts but for which the claimant did not have a right to payment until after the petition date).

36. Therefore, the Crown requests the Court to require the Disclosure Statement to be amended to disclose the existence of the dispute regarding whether the Crown's contribution and indemnification claims (whether for personal injuries or property damage or other "independent" or "several" claims against the Debtors) are property channeled to the section 524(g) injunction and whether they are subject to the automatic stay and to being discharged.

**D. The Disclosure Statement Should Disclose The Crown's Belief That The Plan Was Not Proposed In Good Faith.**

37. The Crown further objects to the Disclosure Statement because it fails to disclose that the Plan was not proposed in good faith.[3] The Bankruptcy Code provides that a plan normally may be confirmed only if, among other things, it was proposed "proposed in good faith." 11 U.S.C. § 1129(a)(3).

38. The Crown maintains that the Plan has not been proposed in good faith because, as set forth above, the Crown was not involved in any of the negotiations leading up to the Canadian ZAI Settlement which settlement purports to dispose of the Crown Claim.

39. Moreover, section 2.7 purports to define Asbestos claims as claims for personal injury from asbestos exposure and asbestos-related property damage Claims. The Plan's effectuation of the Asbestos PI Settlement does not reflect an agreement with the Crown on how its indemnification and contribution claims should be treated, and instead constitutes a concerted action among the Debtors, the Official Committee of Asbestos Personal Injury Claimants, and the Asbestos PI Future Claimants' Representative to satisfy asbestos personal injury claimants

[3] The Crown fully concedes that it is premature for the Court to consider whether the Plan was proposed in good faith, and that the Crown's substantive arguments regarding that issue will be presented in connection with the hearing on the confirmation of the Plan. However, the Crown does maintain that a hypothetical investor would be unable to make a knowledgeable decision with respect to the Plan without knowing, at a minimum, that such a dispute exists.

while leaving the Crown with no assurance of a fair and equitable distribution. The Crown requests that the Court require the Disclosure Statement to be revised to disclose the existence of this dispute.

## II. THE SOLICITATION MOTION SHOULD BE DENIED.

40. As set forth above, the Crown is asserting independent Crown claims for contribution and indemnity which it asks be included as Class 9 – General Unsecured Claims. As such, the Crown asserts that the Crown, and not the CCAA Representative Counsel should be the party solicited to vote in respect of this claim.

41. The Solicitation Motion provides that the Debtors anticipate that the CCAA Representative Counsel (which is defined as Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP) will be the only party who will be solicited to vote on the Plan with respect to the Class 8 CDN ZAI PD Claims. See Solicitation Motion ¶ 27(e). The Crown objects to this provision of the Solicitation Motion, and maintains that, as a member of the impaired class of CDN ZAI PD Claims, it should be entitled to vote on the acceptance or rejection of the Plan in relation to the Crown Claim.

42. Finally, the Solicitation Motion provides that Indirect PI Trust Claims will be estimated, for purposes of voting on the plan, at $1.00 each. See Solicitation Motion ¶ 28(A)(II) ("Each Holder of an Indirect PI Trust Claim will have a single vote in the amount, for voting purposes only, of $1.00, which is solely for voting purposes and does not constitute an allowance of such Claims for purposes of distribution"). The Debtors have provided no basis for such an estimation, and the Crown maintains that it is improper to estimate its indemnification and contribution claims (to the extent that such claims constitute Indirect PI Trust Claims), even for voting purposes, at such a nominal amount.

**RESERVATION OF RIGHTS**

43. The Crown reserves all rights to raise additional arguments to the Disclosure Statement and/or the Solicitation Motion either at or prior to any hearing with respect to such matters. The Crown further reserves all rights to raise arguments regarding the confirmation of the Plan, or any amended plan, at or prior to any hearing with respect to such matters.

WHEREFORE, the Crown respectfully requests that this Court sustain the Objection and limit any relief granted with respect to the Disclosure Statement and Solicitation Motion as set forth herein; and that the Court grant such other and further relief as it deems just and proper.

Dated: October 17, 2008

Respectfully submitted,

**Womble Carlyle Sandridge & Rice, PLLC**

By: /s/ Matthew P. Ward

Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
Matthew P. Ward (#4471)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Ph: (302) 252-4320
Fax: (302) 252-4330

Counsel for Her Majesty the Queen in Right of Canada as represented by the Attorney General of Canada

This is Exhibit "C" mentioned and referred to in the affidavit of

Hilda Mozaffar

Sworn before me this 4th day of

December A.D. 2009

A Commissioner for taking affidavits

31

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| In re: | ) | Chapter 11 |
|---|---|---|
| | ) | |
| W. R. GRACE & CO., *et al.*,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors | ) | |

**NOTICE OF AGENDA OF MATTERS SCHEDULED FOR HEARING ON OCTOBER 27, 2008 AND OCTOBER 28, 2008, AT 9:00 A.M. BEFORE THE HONORABLE JUDITH K. FITZGERALD IN PITTSBURGH, PENNSYLVANIA**

**PARTIES WISHING TO PARTICIPATE TELEPHONICALLY MUST MAKE ARRANGEMENTS THROUGH COURTCALL BY TELEPHONE (866-582-6878) OR FACSIMILE (866-533-2946), NO LATER THAN NOON ON THURSDAY, OCTOBER 23, 2008 AND OTHERWISE COMPLY WITH THE *AMENDED ORDER ESTABLISHING CASE MANAGEMENT PROCEDURES AND HEARING SCHEDULE* [DOCKET NO. 7709]**

**DISCLOSURE STATEMENT:**

1. Debtors' Disclosure Statement for the Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of September 19, 2008 [Filed: 9/19/08] (Docket No. 19581)

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Related Documents:

a. Joint Plan of Reorganization Under Chapter 11 Plan of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of September 19, 2008 [Filed: 9/19/08] (Docket No. 19579)

b. Exhibit Book [Filed: 9/19/08] (Docket No. 19580)

c. Amended Notice of Hearing to Consider Approval of Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code [Filed: 10/2/08] (Docket No. 19695)

d. Declaration of Service of the BMC Group Regarding Exhibit Book to Disclosure Statement; Debtors' Disclosure Statement; Notice of Hearing to Consider Approval of Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code [Filed: 10/3/08] (Docket No. 19699)

Response Deadline: October 17, 2008, at 4:00 p.m.

Responses Received:

a. **Objection of Maryland Casualty Company to the Debtors' Disclosure Statement for the Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos Future Claimants' Representative, and the Official Committee of Equity Security Holders [Filed: 10/17/08] (Docket No. 19777)**

b. **Objection of the Official Committee of Unsecured Creditors to the Debtors' Motion for an Order Approving Debtors' Disclosure Statement for the Joint Plan of Reorganization Dated as of September 19, 2008, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief [Filed: 10/17/08] (Docket No. 19779)**

c. **Objections and Reservation of Rights of CNA Companies to (A) Motion of the Debtors for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief and (B) Debtors' Disclosure Statement for the Joint Plan of Reorganization Dated as of September 19, 2008 [Filed: 10/17/08] (Docket No. 19780)**

d. **United States Trustee's Objection to the Debtors' Disclosure Statement for the Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dates as of September 19, 2008 [Filed: 10/17/08] (Docket No. 19781)**

e. **Joint Objection of Seaton Insurance Company and OneBeacon America Insurance Company to Debtors' Proposed Disclosure Statement [Filed 10/17/08] (Docket No. 19783)**

33

f. Objection of BNSF Railway Company to Debtors' Disclosure Statement for the Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of September 19, 2008 [Filed: 10/17/08] (Docket No. 19784)

g. ERISA Plaintiff's Objection to the Debtors' Disclosure Statement for the Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of September 19, 2008 [Filed: 10/17/08] (Docket No. 19785)

h. Objection of Bank Lender Group to Debtors' Motion for Entry of an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief [Filed: 10/17/08] (Docket No. 19786)

i. Objections and Reservation of Rights of Fireman's Fund Insurance Company, Riunione Adriatica Di Sicurta, and Possibly Other Related Insurance Companies to Debtors' Motion for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief [Filed: 10/17/08] (Docket No. 19787)

j. Objection of Century Indemnity Company et al. to Debtors' Disclosure Statement for the Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of September 19, 2008 [Filed: 10/17/08] (Docket No. 19788)

k. Objection of Zurich Insurance Company and Zurich International (Bermuda) LTD. To the Debtors' Disclosure Statement for the Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of September 19, 2008 [Filed: 10/17/08] (Docket No. 19789)

l. Joinder of JPMorgan Chase Bank, N.A. in the Objection of Bank Lender Group to Debtors' Motion for Entry of an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief [Filed: 10/17/08] (Docket No. 19790)

m. Objection of Her Majesty the Queen in Right of Canada to (I) the Debtors' Disclosure Statement for the Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders and (II) Motion of the Debtors for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief [Filed: 10/17/08] (Docket No. 19791)

n. Joint Objection of Bank of America, N.A., Morgan Stanley Senior Funding, Inc. and Tempo Master Fund LP to Approval of Disclosure Statement Regarding Joint Plan of Reorganization in Respect of the Debtors, the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative and the Official Committee of Equity Security Holders [Filed: 10/17/08] (Docket No. 19792)

o. Federal Insurance Company's Objection and Joinder in the Objections and Reservations of Rights to Debtors' Motion for Approval of Disclosure Statement, Solicitation, Confirmation Procedures and Confirmation Schedule for Joint Plan of Reorganization Dated as of September 19, 2008 of the CNA Companies and of Fireman's Fund Insurance Company [Filed: 10/17/08] (Docket No. 19793)

p. Objection of the State of Montana to (I) the Debtors' Disclosure Statement for the Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders and (II) Motion of the Debtors for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief [Filed: 10/17/08] (Docket No. 19795)

q. Limited Objection of the Official Committee of Asbestos Property Damage Claimants to Motion of the Debtors for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief [Filed: 10/17/08] (Docket No. 19800)

r. Arrowood Indemnity Company's Joinder in the Objections and Reservation of Rights of the CNA Companies and the Fireman's Fund Insurance Companies to Debtors' Motion for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief [Filed: 10/17/08] (Docket No. 19801)

s. Libby Claimants' Objection to Debtors' Disclosure Statement for Joint Plan of Reorganization and Approval Motion [Filed: 10/17/08] (Docket No. 19803)

(i) Motion of Libby Claimants' for Leave to Exceed Page Limitation Rule for Libby Claimants' Objection to Debtors' Disclosure Statement for Joint Plan of Reorganization [Filed: 10/17/08] (Docket No. 19804)

(ii) [Proposed] Order Approving Motion for Leave to Exceed Page Limitation Rule for Libby Claimants' Objection to Debtors' Disclosure Statement for Joint Plan of Reorganization [Filed: 10/17/08] (Docket No. 19804)

Status: This matter will go forward.

Motion of the Debtors for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief [Filed: 9/25/08] (Docket No. 19620)

2. Motion of the Debtors for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief [Filed: 9/25/08] (Docket No. 19620)

Related Documents:

a. [Proposed] Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief [Filed: 9/25/08] (Docket No. 19620, Exhibit A)

b. [Signed] Order for Leave From Scheduling Order and to Shorten Notice Period on Motion of the Debtors for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief [Filed: 10/1/08] (Docket No. 19662)

Response Deadline: October 17, 2008, at 4:00 p.m.

Responses Received: (See also responses to Agenda No. 1 above.)

a. **Acting United States Trustee's Objection to Motion of the Debtors for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief [Filed: 10/17/08] (Docket No. 19782)**

Status: This matter will go forward.

Dated: October 20, 2008

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, IL 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

-and-

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

This is Exhibit "O" mentioned and referred to in the affidavit of

Hilda Mezaffar

Sworn before me this 4th day of

December A.D. 2009

A Commissioner for taking affidavits

COURT FILE NO.: 01-CL-4081
DATE: 20081023

SUPERIOR COURT OF JUSTICE – ONTARIO
(COMMERCIAL LIST)

RE: IN THE MATTER OF S. 18.6 OF *THE COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, as amended

AND IN THE MATTER OF GRACE CANADA, INC.

BEFORE: MORAWETZ J.

COUNSEL: Derrick C. Tay, Orestes Pasparakis and Jennifer Stam for Grace Canada Inc.

Keith J. Ferbers for Raven Thundersky

Alexander Rose for Sealed Air (Canada)

Michel Bélanger, David Thompson, and Matthew G. Moloci, Representative Counsel for CDN ZAI Claimants

Jacqueline Dais-Visca and Carmela Maiorino for The Attorney General of Canada

HEARD: SEPTEMBER 30, 2008

## ENDORSEMENT

[1] Grace Canada Inc. ("Grace Canada" and with the U.S. debtors, "Grace") bring this motion to seek approval of the Minutes of Settlement ("the Minutes") in respect of claims against Grace relating to the manufacture and sale of Zonolite Attic Insulation ("ZAI") in Canada (the "CDN ZAI Claims").

[2] Under the Minutes, Grace agrees to:

(a) fund a broad multimedia notice programme across Canada;

(b) establish a trust with $6.5 million for the payment of Canada ZAI property damage claims; and

(c) channel any Canadian ZAI personal injury claims to a U.S. asbestos trust which will have in excess of US$1.5 billion in funding.

[3] In consideration, Grace would be discharged of any liability in connection with CDN ZAI Claims.

[4] Although there was no direct opposition to the terms of the Minutes as being fair and reasonable, certain parties proposed amendments to the form of order sought by Grace.

[5] Grace submits that the Minutes ought to be approved in the form submitted. Counsel submitted that Grace's significant settlement contribution is manifestly fair and reasonable, given Grace's defences to CDN ZAI Claims and, in particular, the judicial determination by the U.S. Bankruptcy Court (the "U.S. Court") that ZAI does not pose an unreasonable risk of harm.

[6] Further, counsel to Grace submits that the Minutes are an important step towards the successful reorganization of Grace and with this settlement, these insolvency proceedings, which were filed in April 2001, are nearing completion.

[7] W. R. Grace & Co. and its 61 subsidiaries (the "U.S. Debtors") have filed a joint Chapter 11 plan of reorganization (the "Plan") with the U.S. Court and expect to commence a confirmation hearing for the Plan in early 2009. The Plan incorporates the terms of the settlement before this Court and if confirmed, sees Grace emerging from Chapter 11 protection in 2009.

[8] The chain of events that resulted in the Minutes began in 1963 with Grace's purchase of the assets of the Zonolite Company ("Zonolite"). Zonolite mined and processed vermiculite from a mine near Libby, Montana (the "Libby Mine"). Vermiculite is an insulator which apparently has no known toxic properties. However, the vermiculite ore from the Libby Mine contained impurities, including asbestiform minerals.

[9] One of the products made from the U.S. Debtors' vermiculite was ZAI. ZAI was installed in attics of homes. Some ZAI contained trace amounts of asbestos.

[10] In addition, 40 years ago the U.S. Debtors manufactured a product known as monokote-3 ("MK-3") which had chrysotile asbestos added during the manufacturing process.

[11] Grace stopped manufacturing MK-3 in Canada by 1975 and ceased production of ZAI in 1984 and closed the Libby Mine in 1990.

[12] By the 1970s, the U.S. Debtors began to be named in asbestos-related lawsuits. These included both asbestos-related personal injury claims ("PI Claims") and property damage claims relating to ZAI.

[13] Due to a rise in the number of PI Claims in 2000 and 2001, the U.S. Debtors filed for protection under Chapter 11 of the *United States Bankruptcy Code* on April 2, 2001.

[14] Grace Canada was incorporated in 1997. According to the affidavit of Mr. Finke, it had no direct involvement in any historic use of asbestos.

[15] Rather, Grace's historic business operations in Canada were undertaken by a company now known as Sealed Air (Canada) Co./CIE ("Sealed Air Canada"). Sealed Air Canada is the successor to the Canadian companies with past involvement in the sale and distribution of ZAI and asbestos containing products such as MK-3.

[16] Sealed Air Canada was spun-off from Grace in 1998 and as part of the transaction, Grace Canada and the U.S. Debtors provided certain indemnities to Sealed Air Canada and its parent, Sealed Air Corporation, relating to historic asbestos liabilities.

[17] On April 4, 2001, two days after the Chapter 11 proceedings had been commenced, Grace Canada commenced these proceedings. The Canadian CCAA proceedings were commenced seeking ancillary relief to facilitate and coordinate the U.S. proceedings in Canada. An initial order was granted by this Court pursuant to s.18.6(4) of the CCAA (the "Initial Order").

[18] By 2005, despite the Initial Order, 10 proposed class actions (the "Proposed Class Actions") were commenced across Canada in relation to the manufacture, distribution and sale of ZAI. Grace Canada, some of the U.S. Debtors and Sealed Air Canada were named as defendants, as was the Attorney General of Canada (the "Crown").

[19] The allegations in the Proposed Class Actions include both ZAI PI Claims as well as damages for the cost of removing ZAI from homes across Canada ("CDN ZAI PD Claims").

[20] On November 14, 2005, an order was issued (the "November 14th Order") enjoining the Proposed Class Actions against the U.S. Debtors, Sealed Air Canada and the Crown.

[21] As a result, the Proposed Class Actions were brought within the overall restructuring process.

[22] By order of February 8, 2006 (the "Representation Order"), Lauzon Bélanger S.E.N.C. ("Lauzon") and Scarfone Hawkins LLP ("Scarfone") (jointly, "Representative Counsel") were appointed to act as the single representative on behalf of all of the holders of Canadian ZAI Claims ("CDN ZAI Claimants") to advocate their interests in the restructuring process.

[23] No one has taken issue with the authority of the Representative Counsel to represent all CDN ZAI Claimants in the U.S. Court, this Court or at any of the mediations. The Representation Order provided that Representative Counsel would, among other things, have authority to negotiate a settlement with Grace.

[24] After a long history of negotiations, on June 2, 2008, Grace, Representative Counsel and the Crown announced to the U.S. Court that they had reached an agreement in principle that remained subject to the Crown's acceptance. The Crown was not able to obtain firm instructions on whether to participate in the settlement.

[25] On September 2, 2008, Grace and Representative Counsel signed the Minutes resolving all CDN ZAI Claims against Grace and Sealed Air Canada.

[26] On April 7, 2008, the U.S. Debtors reached an agreement effectively settling all present and future PI Claims (the "PI Settlement") and under this agreement, the U.S. Debtors agreed to pay into trust various assets, including US$250 million, warrants to acquire common stock, proceeds of insurance, certain litigation and deferred payments and it estimates that the total value of the settlement is in excess of US$1.5 billion. Sealed Air Canada is making a contribution to the settlement in excess of $500 million, plus 18 million shares of stock

[27] On September 21, 2008, the U.S. Debtors filed their draft Plan with the U.S. Court and confirmation hearings are scheduled for early in 2009.

[28] The Minutes contemplate a settlement of all CDN ZAI Claims, both personal injury ("CDN ZAI PI Claims") and property damage, on the following terms:

(a) Grace agrees to provide in its Plan for the creation of a separate class of CDN ZAI PD Claims and to establish the CDN ZAI PD Claims Fund, which shall make payments in respect of CDN ZAI Claims;

(b) on the effective date of Grace's Plan, Grace will contribute $6,500,000 through a U.S. PD Trust to the CDN ZAI PD Claims Fund;

(c) Grace's Plan provides that any holder of a CDN ZAI PI Claim ("CDN ZAI PI Claimant") shall be entitled to file his or her claim with the Asbestos Personal Injury Trust to be created for all PI Claims and funded in accordance with the US$1.5 billion PI Settlement;

(d) Representative Counsel shall vote, on behalf of CDN ZAI Claimants, in favour of the Plan incorporating the settlement; and

(e) Representative Counsel shall be entitled to bring a fee application within the U.S. proceedings and any such payments received would reduce the amount otherwise payable to Representative Counsel under the Settlement.

In addition, Grace has agreed to fund a broad based media notice programme across Canada and an extended claims bar procedure for CDN ZAI PD Claims and Grace has also agreed to give direct notice to any known claimant.

[29] Under the Minutes, the bar date for CDN ZAI PD Claims is not less than 180 days from substantial completion of the CDN ZAI Claims Notice Program. The period for filing ZAI PD Claims in the U.S. is considerably shorter and Grace has scheduled a motion with the U.S. Court on October 20, 2008 to approve the CDN ZAI PD Claims bar date. Grace has indicated that if granted, recognition of the U.S. order will be sought from this Court. There will be no bar date for CDN ZAI PI Claims.

[30] Grace has indicated that it has contemplated that monies will be distributed out of the CDN ZAI PD Claims Fund based on a claimant's ability to prove that his or her property contained ZAI and that monies were expended to contain or remove ZAI from the property.

Based on proof of ZAI in the home and the remediation measures taken by a claimant, that claimant may recover $300 or $600 per property.

[31] The issues for consideration were stated by counsel to Grace as follows:

(a) Does Representative Counsel have the authority to enter into the Minutes on behalf of all CDN ZAI Claimants?

(b) Does the CCAA Court have the jurisdiction to approve the Minutes, including the relief in favour of Sealed Air Canada and the Crown?

(c) Are the Minutes fair and reasonable? In particular, is their prejudice to the key constituencies?

[32] The Representation Order is clear. It gives Representative Counsel broad powers, including the ability to negotiate on behalf of CDN ZAI Claimants. No party has objected to or taken issue with the Representation Order or with the authority of Representative Counsel to represent all CDN ZAI Claims.

[33] I am satisfied that Lauzon and Scarfone have the authority, as Representative Counsel, to enter the Minutes of Settlement on behalf of all CDN ZAI Claimants.

[34] I am also satisfied that the CCAA Court may approve material agreements, including settlement agreements, before the filing of any plan of compromise or arrangement. See *Canadian Red Cross Society (Re)* (1998), 5 C.B.R. (4th) 299 (Ont. Gen. Div.) and *Calpine Canada Energy Limited (Re)* (2007), 35 C.B.R. (5th) p. 1 (Alta. Q.B.), leave to appeal denied (2007), 35 C.B.R. (5th) 27 (Alta. C.A.).

[35] It is noted that, in this case, the Plan will be voted on by creditors in the U.S. proceedings.

[36] With respect to relief in favour of Sealed Air, Grace has agreed to indemnify Sealed Air Canada for certain liabilities in connection with ZAI. As part of the settlement, Grace seeks to ensure that the release of the CDN ZAI Claims includes a release for the benefit of Sealed Air Canada.

[37] Counsel submits that such release is not only necessary and essential, but also fair given Sealed Air Canada's contribution to the PI Settlement under the Plan in excess of $500 million. I am satisfied that, in these circumstances, the release for the benefit of Sealed Air Canada is fair and reasonable.

[38] The Minutes also provide a limited release in favour of the Crown. Pursuant to the Minutes, the Crown's claims for contribution and indemnity against Grace (being CDN ZAI Claims) are released. Counsel submits that the corollary is that the Crown is relieved of any joint liability it shares with Grace for CDN ZAI Claims.

[39] Counsel to Grace again submits that such a release of the Crown is necessary. Otherwise, Grace could become indirectly liable through contribution and indemnity claims.

[40] Counsel for Grace submits that, in certain circumstances, this Court has ordered third party releases where they are necessary and connected to a resolution of the debtor's claims, will benefit creditors generally, and are not overly broad or offensive to public policy. (See: *Re: Muscletech Research and Development Inc.* (2007), 30 C.B.R. (5th) 59 (Ont. Sup. Ct.) and *ATB Financial v. Metcalfe & Mansfield Alternative Investments II Corp.* (2008), 43 C.B.R. 5th 269 (Ont. Sup. Ct.), aff'd. (2008), ONCA 587 ("Metcalfe"), leave to appeal to S.C.C. denied.)

[41] Subsections 18.6(3) and (4) of the CCAA, allow the Ontario Court to make orders with respect to foreign insolvency proceedings, on such terms and conditions as the Court considers appropriate.

[42] In assessing whether to grant its approval, the Court has to consider whether the Minutes are fair and reasonable in all of the circumstances.

[43] It is the submission of Grace that the Minutes are fair and reasonable, and that resolutions of the CDN ZAI Claims in particular do not prejudice the Crown, CDN ZAI PD Claimants or, CDN ZAI PI Claimants.

[44] Grace also submits that, given the strong defences which it believes are available, the Minutes provide a substantial compromise by Grace, considering the circumstances in which it believes it has no liability for CDN ZAI Claims.

[45] Early in the insolvency proceedings, the U.S. Court held a hearing to determine, as a threshold scientific issue, whether the presence of ZAI in a home created an unreasonable risk of harm. The opinion of the U.S. Court was filed as part of the record. Grace states that the U.S. Court came to the conclusion that ZAI did not pose an unreasonable risk of harm. The background and conclusions of the U.S. Court have been summarized at paragraphs 72 to 85 of the Grace factum.

[46] I have been persuaded by and accept these submissions.

[47] In addition, even if ZAI had been found to pose an unreasonable risk of harm, Grace submits that it still has a complete defence to any claims under Canadian law for the reasons set out at paragraphs 86 to 97 of the factum.

[48] Further, the passage of time is such that Grace submits that many cases would be dismissed outright based on the expiry of the limitation period.

[49] With respect to the issue of prejudice to the Crown, on the one hand, the Crown has asserted claims against Grace. The Crown has estimated that over 2,000 homes located on military bases have been remediated to contain vermiculite attic insulation or ZAI from homes built by the Canadian military. Under the Settlement, the Crown, as a CDN ZAI Claimant, would receive $300 per unit for the sealing of ZAI. Based on the Crown's records, the Crown would potentially have a claim against the Fund for up to $660,000 and if it chose to pursue this claim, the Crown would recover approximately 50% of its remediation expenditures.

[50] On the other hand, the Crown is also a defendant in the Proposed Class Actions. Through the Minutes, the Crown will release its CDN ZAI Claims against Grace, but at the same time, counsel to Grace submits that the Crown is effectively released from any joint liability it may share with Grace. Grace submits that the Crown will be relieved from all CDN ZAI Claims except those for which it is severally responsible.

[51] It is with respect to the release language that the Crown takes exception.

[52] The Crown acknowledges that Representative Counsel has the authority to negotiate on behalf of ZAI Claimants. However, the Crown disputes the authority of Representative Counsel to purport to negotiate away the Crown's Chapter 11 "claim over" for contribution and indemnity.

[53] The Crown supports the approval of the Settlement insofar as it purports to resolve all of Grace's liability with respect to CDN ZAI PD and PI Claims, provided that the approval order expressly recognizes that the Crown's protective "claim over" for contribution and indemnity against Grace is unimpaired by the Settlement and provided that the Approval Order expressly allows the Crown to third party Grace in ZAI related actions where the Crown is sued on a several basis.

[54] Counsel to the Crown submits that to interpret the authority of Representative Counsel to have the power to release the Crown's "claim over" against Grace while they simultaneously reserve the right to pursue the claims against the Crown would conflict with the clear direction in the Representation Order. They submit that CCAA Representative Counsel does not represent the Crown's interest with respect to the contribution and indemnity claim, and would be in conflict of interest with respect to the members of the group it represents if it attempted to do so. They further submit that it has always been the position of the Crown that all ZAI related damages give rise to a contribution and indemnity claims against Grace and that no independent claim lies against the Crown; hence, the Crown has and will continue to assert a contribution and indemnity claim against Grace for the totality of the damages.

[55] At the hearing, the argument of the Crown was presented without the benefit of a factum. I requested and received a factum from the Crown which was then responded to by counsel to Grace and by Representative Counsel.

[56] In my view, the response of Grace is a complete answer to the Crown's submissions. Counsel to Grace notes that the Crown purports to support the Order sought on the proviso that its contribution and indemnity claims against Grace are unimpaired. However, the Minutes do impair the Crown's contribution claims, and with the Order, the Crown will have no claims for contribution and indemnity against Grace.

[57] It is Grace's position that Representative Counsel has the authority to resolve and release all CDN ZAI Claims, including Crown claims for contribution and indemnity. Further, in any event, there is no prejudice to the Crown as pursuant to the Minutes, CDN ZAI Claimants have agreed that they cannot pursue the Crown for claims for which Grace is

ultimately responsible. Consequently, the Crown has no contribution claims to assert against Grace. Simply put, as submitted by counsel to Grace, there is nothing left.

[58] The Representation Order applies to all claims "arising out of or in any way connected to damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of Zonolite attic insulation products in Canada".

[59] It seems to me that the wording of the Representation Order is clear. Representative Counsel have the authority to resolve and release all CDN ZAI Claims, including Crown claims for contribution and indemnity.

[60] With respect to the Release itself, the Minutes release any claims or causes of action for which the Crown has a right of contribution and indemnity. As submitted by counsel to Grace, Representative Counsel may not pursue the Crown in respect of claims for which Grace is ultimately liable.

[61] Paragraph 13(b)(iii) of the Minutes provides for a release of:

> "...any claims or causes of action asserted against the Grace Parties as a result of the Canadian ZAI Claims advanced by CCAA Representative Counsel against the Crown as a result of which the Crown is or may become entitled to contribution or indemnity from the Grace Parties."

[62] I accept the submission of counsel to Grace that the purpose of this provision is to protect Grace from indirect claims through the Crown. Since any claim for which Grace is ultimately liable cannot be pursued, the Crown has no need nor any ability to "claim over" against Grace.

[63] The Crown also relied on an order of November 7, 2005 of Chaput J. of the Québec Superior Court in the *Brosseau* case which was one of the Proposed Class Actions. The Crown relied on the order of Chaput J. to argue that all claims against the Crown flow through Grace and that Grace is therefore ultimately responsible for any Crown liability.

[64] I agree with the position being taken by Grace to the effect that this argument is misplaced. It was made quite clear at this hearing that the scope of any remaining Crown liability will need to be addressed at a future hearing.

[65] Submissions were also made by counsel on behalf of Ms. Thundersky.

[66] Counsel pointed out certain concerns and suggested that it was appropriate to alter the proposed form of order.

[67] The first concern raised related to the issue of preservation of claims against the Crown and counsel submitted that paragraph 13(b)(iv) creates some ambiguity in this area. In my view, paragraph 13(b)(iv) of the Minutes is clear. The concluding words read as follows:

> "For greater certainty, nothing contained in these Minutes shall serve to discharge, extinguish or release Canadian ZAI Claims asserted against the Crown and which claims seek to establish and apportion independent and/or several liability against the Crown."

[68] I do not share counsel's concern. The issue does not require clarification. In my view, this paragraph is not ambiguous.

[69] Counsel to Ms. Thundersky also raises concern that the draft order provides that all of the legal actions in Canada be "permanently stayed" until all of the actions have formally removed the Grace Parties as defendants which would not occur until the Effective Date of any approved Plan of Reorganization. In my view, this is not a significant concern. This Court retains jurisdiction over the matters before it in these proceedings and to the extent that further direction is required, the appropriate motion can be brought before me.

[70] The third concern raised by counsel to Ms. Thundersky was with respect to the Asbestos PI Fund to be established in the U.S. process. Concerns were raised with respect to the uncertainty surrounding when and in what manner the eligibility criteria for the fund would be established. Counsel to Grace advised that Mr. Ferbers would have the opportunity to provide comment during the Plan process on this issue. I expect that this should be sufficient to alleviate any concerns but, if not, further direction can be sought from this Court.

[71] Finally, concern was also raised with respect to the absence of a personal injury notice program. Counsel to Grace advised that this issue would be communicated to those involved in the U.S. Plan. In the circumstances, this would appear to be a pragmatic response to the concern raised by counsel to Ms. Thundersky.

[72] Counsel to Ms. Thundersky acknowledged that it was difficult to propose a resolution which stayed within the four corners of the Minutes, but that Ms. Thundersky did wish to bring the foregoing concerns to the attention of the parties and the Court in the hopes that they could be taken into account.

[73] Counsel to Grace and Representative Counsel are aware of these issues and will take them into account.

[74] I indicated at the hearing that I was inclined to either approve the Minutes or to reject them. The Minutes are the product of extensive negotiation between the Representative Counsel and the Grace Parties. I am of the view that it is not appropriate for me to examine and evaluate the Minutes on a line-by-line basis, nor to amend or alter the agreement as reached between Representative Counsel and the Grace Parties.

[75] In my view, to accept the submissions of the Crown and Ms. Thundersky would leave the Court in the position of having to reject the Minutes and refuse to approve the Settlement. Having considered all of the circumstances, I do not consider this to be an appropriate outcome.

[76] I have been satisfied that the Minutes are fair and reasonable. The Minutes have been agreed to by Representative Counsel. In my view, the Minutes do not prejudice the interests of the Crown. I am also of the view that there is no prejudice to the ZAI PD Claimants who will have access to a significant fund to assist with their remediation costs. Their alternative is more litigation which, at the end of the day, would have a very uncertain outcome. I am also of the view that there is no prejudice to the ZAI PI Claimants who will have the opportunity to make a claim to the asbestos trust in the U.S. I am satisfied that the ZAI PI Claimants will be receiving treatment that is fair and equal with other PI Claimants. Further, it is noted that counsel to Grace advised that the Thundersky family are the only known ZAI PI Claimants. Their alternative is the continuation of a claim that on its face, would appear to have been statute barred in 1994.

[77] I also accept the conclusions as put forth by counsel to Grace. This Settlement provides CDN ZAI PD Claimants with clear recourse to the CDN ZAI PD Claims Fund and CDN ZAI PI Claimants with recourse to the Asbestos Personal Injury Trust in situations where it is Grace's view that the Canadian claims have little or no value.

[78] I am also satisfied that third party releases are, in the circumstances of this case, directly connected to the resolution of the debtor's claims and are necessary. The third party releases are not, in my view, overly broad nor offensive to public policy.

[79] Counsel to Grace also submitted that Representative Counsel have been continuously active and diligent in both the U.S. and Canadian proceedings and Grace is of the view that it is appropriate that a portion of the funds paid under the settlement go towards compensation of Representative Counsel's fees. I accept this submission and specifically note that the Minutes provide for specified payments to Representative Counsel, a Claims Administrator and a qualified expert to assist in the claims process, in a total amount of approximately CDN$3,250,000.

[80] In conclusion, the Minutes, in my view, represent an important component of the Plan. They provide a mechanism for the resolution of CDN ZAI Claims without the uncertainty and delay associated with ongoing litigation.

[81] The Minutes are approved and an order shall issue in the form requested, as amended.

MORAWETZ J.

**DATE: Endorsement released October 17, 2008**

**With Reasons released October 23, 2008**

This is Exhibit "[illegible]" mentioned and referred to in the affidavit of

Hilda Mozaffar

Sworn before me this 4th day of

December A.D. 20 09

[signature]

A Commissioner for taking affidavits

55

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

W. R. GRACE & CO. CDN ZAI PD PROOF OF CLAIM FORM

W. R. Grace & Co., et al.

Case No. 01-1139

NOTE: Use this form only if you have a Canadian ("CDN") ZAI Claim related to property damage "PD" against any of the Debtors (a "CDN ZAI PD Claim"). The CDN ZAI PD Bar Date only involves claims affecting property located in Canada, and it does not include claims relating to personal injury. THE LAST DAY TO FILE A CDN ZAI PD Proof of Claim is August 31, 2009.

THIS SPACE IS FOR COURT USE ONLY

Name of Creditor (The injured person or other entity to whom the Debtor(s) owe money or property):
Receiver General for Canada (for the Department of National Defence of Canada) SEE ADDRESS BELOW

Name and address where notices should be sent:
Sebastien Gagne, Counsel, NATHALIE DROUIN, COUNSEL (514) 283-8117
Justice Canada, Guy Favreau Complex
200 Rene Levesque Blvd West, East Tower, 7th Floor
Montreal, Quebec, Canada
Telephone Number: (514) 283-7157

1. Building Information:

a. Address of the building that contains ZAI:

See National Vermiculite Program Summary

b. Approximate date the building was constructed:

See National Vermiculite Program Summary

c. Approximate date ZAI was installed in the building:

See National Vermiculite Program Summary

d. Location within building where ZAI is located:

See National Vermiculite Program Summary

e. What is your legal interest in the building (i.e., own or lease)?

See National Vermiculite Program Summary

f. Date of removal of ZAI (if applicable):

N/A

g. Date of containment of ZAI (remediation to contain, but not remove, the ZAI) (if applicable):

See National Vermiculite Program Summary

***Attach any backup documents to this form that are related to these questions.

THIS SPACE INTENTIONALLY LEFT BLANK

This is Exhibit "P-1" referred to in the affidavit of
MARK PETERS
Sworn before me this 28th day of AUGUST, 2009 A.D.
[signature]
Commissioner for taking affidavits

William Robert Hall,
a Commissioner, etc., Province of Ontario,
for the Government of Canada,
Department of National Defence.
Expires June 11, 2011.

2. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This Space is for Court Use Only

Date: 28/08/09

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
COUNSEL [signature]

K&E 13364082.2

7. The total cost for the survey and the visual inspections was $1,588,221.86. 11, 864 units were surveyed and inspected. The national average cost per unit surveyed and inspected is therefore $134, the whole as appears from tab 1 of exhibit P-3 to my affidavit;

8. The total cost incurred for the sealing was $1,435,191.59. 2202 housing units were sealed. The national average costs per unit sealed is therefore $ 652, the whole as appears from tab 1 of exhibit P-3 to my affidavit ;

9. The work performed in the course of the *National Vermiculite Program* was done by outside contractors, typically hired by Defence Construction Canada [DCC];

10. DCC is a Crown Corporation owned by the Government of Canada and specifically provides construction services, as well as environmental, commissioning and facilities management services to DND. When DCC performs work on behalf of DND, they often recover the money through financial documentation known as Return of Funds (ROF);

11. Attached as Exhibit **P-4** are different documents, including engineering progress reports for DCC and various ROFs between CFHA and DCC, illustrating the work performed in the course of the *National Vermiculite Program* by contractors hired by DCC;

12. Further documents substantiating DND's claim may be able to be made available if need be.

AND I HAVE SIGNED,

[signature]

Sworn before me in the City of Ottawa, Province of Ontario, this 28th day of August, 2009.

[signature]

COMMISSIONER FOR OATHS

William Robert Hall,
a Commissioner, etc., Province of Ontario,
for the Government of Canada,
Department of National Defence.
Expires June 11, 2011.

# AFFIDAVIT

I, THE UNDERSIGNED, Mark Peters, Senior Paralegal, Claims and Civil Litigation for the Canadian Forces Legal Advisor, under the Department of National Defence, working in Ottawa, Canada at 305 Rideau Street, hereby solemnly affirm to the best of my knowledge and belief, that:

1. I file this affidavit, to the best of my knowledge and belief, to support DND's claim and to explain the documents supporting the claim;

2. Following the order dated October 20, 2008 of Bankruptcy Judge Judith K. Fitzgerald, Sébastien Gagné, counsel, on behalf of the Receiver General for Canada - for property damages suffered by the Department of National Defence [DND] -, signed a CDN ZAI PD Proof of Claim Form against Grace;

3. I attach the CDN ZAI PD Proof of Claim Form to my affidavit as exhibit P-1;

4. In 2004, I understand that the Canadian Forces Housing Agency (CFHA) developed and implemented a *National Vermiculite Program* with respect to all housing units at bases across Canada in response to concerns about the possibility of vermiculite insulation containing asbestos, the whole as appears from the document entitled *Project Completion Report / National Vermiculite Program* prepared for the CEO, CFHA dated March 14, 2007, filed as exhibit P-2 to my affidavit;

5. In the course of the *National Vermiculite Program*, housing units were surveyed, visual inspections were performed and units with vermiculite were sealed. The program was completed in 2006;

6. In the binder entitled *National Vermiculite Program Summary*, I have prepared charts detailing the costs incurred by DND in relation to the costs incurred by DND for identifying and sealing vermiculite in the different housing units at the various bases across Canada as part of the National Vermiculite Program, the whole as appears from the said binder filed as exhibit P-3 to my affidavit;

This is Exhibit "N" mentioned and referred to in the affidavit of

Hilda Mozaffar

Sworn before me this 4th day of

December A.D. 2009

A Commissioner for taking affidavits



276

Direct Dial: (416) 216-4815
Direct Fax: (416) 216-3930
opasparakis@ogilvyrenault.com

SENT BY E-MAIL

Toronto, December 3, 2009

Keith Ferbers
Aikins, MacAulay & Thorvaldson LLP
30th Floor
Commodity Exchange Tower
360 Main Street
Winnipeg, Manitoba
R3C 4G1

Dear Mr. Ferbers:

**RE: W. R. Grace & Co. et al. v. Raven Thundersky et al.**

I write in response to your letter of November 30, 2009.

For ease of reference, I will use the same numbering as appears in your letter.

1. Closing arguments regarding Confirmation of the Plan are scheduled for January 4-5, 2010. We expect the U.S. Bankruptcy Judge will take the matter under advisement and thereafter issue a written ruling on Confirmation. We do not know how long it will take for the Judge to issue such ruling so we cannot provide a "best estimate" of when a Confirmation Order will be issued. We hope to obtain the U.S. Confirmation Order by June 30, 2010, or at the latest, by December 31, 2010. The timetable is controlled solely by the U.S. Bankruptcy Court.

2. As set out in the First Amended Joint Plan (the "Plan"), the Asbestos PI Trust will be established as of the Effective Date (as defined in the Plan). At this point, it is premature to estimate either when the Effective Date will occur or the length of the adjudication process for Canadian Asbestos PI Claims. The length of the process will vary depending on a number of factors, including the circumstances of each individual PI Asbestos Claim and the number of Asbestos PI Claims received by the Asbestos PI Trust.

OGILVY RENAULT LLP / S.E.N.C.R.L., s.r.l.
Barristers & Solicitors
Patent & Trade-mark Agents
DOCSTOR: 1820404\2

Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, Ontario M5J 2Z4
CANADA

T : 416.216.4000
F : 416.216.3930
toronto@ogilvyrenault.com

ogilvyrenault.com

Toronto • Montréal • Ottawa • Québec • London



3. The Asbestos PI Trust Distribution Procedures ("TDP") address these issues (a current copy is attached). Please see Sections 5.3(a), 5.3(b)(1), 5.3(b)(2), 7.6 and 8.3 in particular.

4. There is nothing in the Asbestos PI TDP or the Trust Agreement that addresses or provides for the recovery by claimants of legal fees and expenses.

5. As indicated in paragraph 2 above, the Asbestos PI Trust does not yet exist. Pursuant to Section 5.1(a)(1) of the Asbestos PI TDP, the PI Trust, once established, shall make available proof of claim forms and other claims materials so that claimants may file claims with the PI Trust. It is expected that in conjunction with this process a notice program for Asbestos PI Claimants will be developed by the Trustees of the PI Trust. There is no bar date for Asbestos PI Claims. The Asbestos PI TDP set forth the types of compensable claims, the payment amounts and terms and the effect of statutes of limitation and repose on claims (see Section 5.1(a)(2) of the Asbestos PI TDP on this last point).

6. The Special Counsel Application (the "Application") referenced in paragraphs 16 and 17 of the Amended and Restated CDN ZAI Minutes of Settlement (the "Amended Minutes") is in recognition of the activities undertaken and to be undertaken in the future by CCAA Representative Counsel on behalf of Canadian Claimants prior to Confirmation of the Plan. If the Application is approved, CCAA Representative Counsel will be entitled to apply for fees and expenses for their past activities and to submit subsequent applications for any further activities they undertake on behalf of Canadian Claimants prior to Confirmation.

7. The expected amounts to be claimed by CCAA Representative Counsel pursuant to the Application will be (subject to approval by the U.S. Bankruptcy Court) based on the work undertaken and the respective hourly rates of various counsel actually incurred. We understand that CCAA Representative Counsel expect to apply for approximately $500,000 in fees and $42,000 in disbursements for work carried out between September 1, 2008 to date. We do not know what CCAA Representative Counsel estimate for any future work they expect to perform prior to Confirmation.

8. No, paragraph 20(a) of the Amended Minutes contemplates only the appointment of CCAA Representative Counsel as special counsel by the U.S. Court. The fee application process and approval of fees requested is a separate process that does not affect approval of the Amended Settlement. You may follow up with CCAA Representative Counsel in respect of the anticipated filing date of their Application materials.



9.

(a) Pursuant to the Amended Minutes, Grace/Grace Canada are not subject to and will not be participating in any legal actions brought by Canadian Asbestos PI Claimants against the Crown. While Grace/Grace Canada may not be brought into any Canadian case against the Crown, the Court in such a Canadian case could apportion fault among the Crown and Grace/Grace Canada for purposes of deciding the liability of the Crown (see *Taylor v. Canada (Health)* (2009), Ont. C.A., attached). However, any claims by the Crown against Grace/Grace Canada for contribution, indemnity or otherwise would be channelled to the PI Trust to be addressed in accordance with the Asbestos PI TDP.

(b) N/A (based on the response to 9(a) above).

(c) Please see the response to 9(a) above.

(d) Grace and Grace Canada will address issues, including those relating to document production, if and as they arise.

10. This question requires a response from the Crown.

We trust the foregoing is satisfactory.

Yours very truly,

Orestes Pasparakis

OP/sk
Enclosures

cc: Michel Bélanger, *Lauzon Bélanger*
Jacqueline Dais-Visca, *Department of Justice Canada*
Matt Moloci, *Scarfone Hawkins LLP*
David Thompson, *Scarfone Hawkins LLP*