# EXHIBIT "3" TO OBJECTION

1  resolve it and if you do resolve it, Your Honor, we may suggest
2  that well, you didn't get all of it, and so we do need to
3  address solvency, or something else in the plan.  But that's a
4  fight we will have down the road.  We don't need to take up the
5  parties' time today, discussing this issue any further, in my
6  opinion.

7            THE COURT:  Mr. Monaco?

8            MR. MONACO:  Good morning, again, Your Honor.  My
9  co-counsel, Jacqueline Dais-Visca would like to address the
10 Court with respect to the Crown's objection.

11           THE COURT:  All right.

12           MR. MONACO:  Thank you.

13           THE COURT:  Good morning.

14           MS. DAIS-VISCA:  Good morning, Your Honor.  The
15 claimants filed an -- pardon me?

16           MS. HELLER:  State your name for the record.

17           MS. DAIS-VISCA:  Last name, Dais-Visca, D-a-i-s
18 hyphen, V, as in Victor i-s-c-a.  First name Jacqueline.

19           The Crown filed an objection in these proceedings.
20 Subsequent to filing that objection, Mr. Justice Morowitz of
21 the Ontario Superior Court acting under the CCAA, released his
22 reasons for a decision as well as the order approving the
23 Canadian settlement.  In the context of his reasons he did two
24 things that are of import for the purposes of the outstanding
25 objection from the Crown.  The first was, he approved the

1  settlement and in so doing, he recognized that the Canadian

2  representative counsel had authority to negotiate on behalf of

3  the Crown, and the second thing he did was, recognize a CCAA

4  release in favor of the Crown for any of the Crown claims

5  seeking contribution and indemnity from Grace.

6          As a result of that, our objection is effectively

7  moot now.  We are no longer able to appear before you as we now

8  are represented by the Canadian representative counsel.  There

9  is an appeal period of 15 days, under the Ontario rules.

10 Subject to the expiration of that appeal period, it would look

11 like the Crown's participation in these proceedings, apart from

12 any claims that may be filed against the Canadian PD fund in

13 Canada, would appear to be at an end.

14         THE COURT:  All right.  And when does that expire,

15 and does the Crown know whether it's going to appeal?

16         MS. DAIS-VISCA:  The Crown will not be seeking leave

17 to appeal, it's a leave to appeal procedures and we have not

18 heard from the plaintiff as to whether or not -- the

19 representative counsel, as to whether or not they will be

20 appealing, but that 15 day period should be expiring, the

21 Monday, two weeks ago from Friday, so the 2nd, week of

22 November, some time.  But a decision, the actual reasons were

23 released on the Friday, and the decision itself was released on

24 the Monday.  So we have another week or so.

25         THE COURT:  Okay.  Thank you very much.

**J&J COURT TRANSCRIBERS, INC.**

1          MS. DAIS-VISCA:   Thank you.

2          MR. MONACO:   Good morning, again, Your Honor, Frank
3   Monaco for the State of Montana.

4          Your Honor, I know the Court is painfully familiar
5   with the background of our matter and I will not burden the
6   record with providing more background, but our primary concern
7   is how our contribution indemnification claims are being
8   treated under the plan and while we realize that the crux of
9   our objections are, essentially plan objections, we do believe,
10  however, that it is important to the reader of the disclosure
11  statement that they understand the significance of these
12  disputes because they could render the plan un-confirmable.

13         Your Honor, with respect to the absolute priority
14  rule, just so the Court is aware, from our position, the plan
15  classifies our contribution indemnification claims as Class 6
16  asbestos personal injury claims, which are impaired under the
17  plan.   We are on par with the Class 7 asbestos PD claims and
18  the Class 9 general unsecured claims which are unimpaired under
19  the plan.

20         Also, Your Honor, the Class 11 equity interest in
21  non-parent debtors are unimpaired.   And, I think Your Honor,
22  it's important that the disclosure statement reveal that if
23  Class 6 rejects this plan, that it will be rendered
24  un-confirmable as a result of the absolute priority rule.

25         Your Honor, I think it is a risk factor which the

**J&J COURT TRANSCRIBERS, INC.**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., et al.,[1] | Case No. 01-1139 (JKF) |
| Debtors. | Jointly Administered |
| | **Re: Docket Nos. 19581, 19582, 19620, and 19695** |
| | **Hearing Date: 10/27/08 at 9:00 a.m. (Eastern)**<br>**Objection Deadline: 10/17/08 at 4:00 p.m. (Eastern)** |

**OBJECTION OF HER MAJESTY THE QUEEN IN RIGHT OF CANADA TO (I) THE DEBTORS' DISCLOSURE STATEMENT FOR THE JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS AND (II) THE MOTION OF THE DEBTORS FOR AN ORDER**

---

[1]     The Debtors are the following entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals Inc.), W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), ECARG, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, LB Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco. Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc. E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

1

**APPROVING DISCLOSURE STATEMENT, SOLICITATION AND CONFIRMATION PROCEDURES, CONFIRMATION SCHEDULE AND RELATED RELIEF**

Her Majesty the Queen in Right of Canada (the "Crown"), by and through its undersigned counsel, hereby objects (the "Objection") to the Debtors' Disclosure Statement for the Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of September 19, 2008 (Docket No. 19581) (the "Disclosure Statement") and to the Motion of the Debtors for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief (Docket No. 19620) (the "Solicitation Motion"), and in support of this Objection states as follows:

**BACKGROUND AND INTRODUCTION**

1.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession.

2.      On September 19, 2008, the Debtors filed the Disclosure Statement. In connection with the Disclosure Statement, the Debtors also have provided a copy of the accompanying Exhibit Book, which identifies twenty-four exhibits to the Disclosure Statement, including as Exhibit 1 the Debtors' proposed plan of reorganization (the "Plan") and as Exhibit 9 the CDN ZAI Minutes of Settlement dated September 2, 2008.

3.      On September 25, 2008, the Debtors then filed the Solicitation Motion, seeking approval of the Disclosure Statement. On the same day, the Debtors also filed a motion to shorten notice with respect to the Solicitation Motion (Docket No. 19621) (the "Motion to

2

Shorten"). The Court entered an order granting the Motion to Shorten on October 1, 2008 (Docket No. 19662).

4.    As detailed below, among other objections, the Crown specifically objects to the failure of the Disclosure Statement to disclose how the Crown contribution and indemnity claim is being addressed and the failure of the Disclosure Statement to disclose the on-going dispute between the Crown and Grace in respect of this Crown claim.

### CCAA Proceedings and Representative Counsel Order

5.    On November 14, 2005, as a result of the commencement of the class action proceedings in Canada, Grace sought from and was granted an order pursuant to s. 18.6(4) of the *Companies' Creditors Arrangement Act* (the "CCAA") *In the Matter of S. 18.6 of the Companies' Creditors Arrangement Act, R.S.C. 1984, c. C-36, As Amended and In the Matter of Grace Canada, Inc.,* Court File 01-CL-4081 (the "CCAA proceeding") by the Ontario Superior Court of Justice (Commercial List), acting as an ancillary court, giving effect in Canada to the stay of proceedings granted by the US Court, staying proceedings and prohibiting the commencement or continuation of any asbestos related suits against Grace and Canada without further order of the CCAA court.

6.    There are currently ten class actions in which the Crown has been sued that have been filed across Canada concerning claims that relate to the cost of removal, diminution of property value or economic loss allegedly caused by Zonolite Attic Insulation manufactured by the Debtors. W.R. Grace and or its affiliated companies are co-defendants with the Crown in all but the first of these class actions, which are as follows:

- Viviane Brosseau et al v. Attorney General of Canada, Superior Court of Quebec, District of Montréal, 500-06-000286-050 (no claim against the Grace companies);

3

- Dextras et al v. Attorney General of Canada, W.R. Grace & Co. et al, Superior Court of Quebec, District of Montréal, 500-06-000258-042;

- Raven Thundersky et Rebecca Bruce v. Attorney General of Canada, W.R. Grace & Co., Court of Queen's Bench of Manitoba;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Federal Court, Saskatchewan;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Court of Queen's Bench of Saskatchewan;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Court of Queen's Bench of Alberta;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Supreme Court of British Colombia;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Province of Quebec, District of Hull;

- Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Court of Queen's Bench of Manitoba; and

- Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Ontario Superior Court of Justice.

7.      In the aforementioned class actions, the petitioners seek to represent all Canadians who have suffered past or will suffer future property damage and personal injury due to exposure to Zonolite Attic Insulation and allege, among other things, that the Crown has breached a duty to warn and breached fiduciary duties owing to aboriginals.

8.      An action has also been instituted by the Province of Manitoba, *Her Majesty The Queen in the Right of the Province of Manitoba v. Attorney General of Canada, W.R. Grace & Co. et al.*, Court of Queen's Bench of Manitoba. The Province of Manitoba has sued the Crown and the manufacturer of Zonolite for the cost of insured health services paid or to be paid to the named plaintiffs in Thundersky and all other persons determined to be class members in the Thundersky case.

4

9.      In the event that the Crown and the manufacturers are held jointly and severally liable to the Canadian ZAI Claimants, the Crown seeks contribution and indemnification from the manufacturers who are liable, including the Debtors W.R. Grace et al.  On or about January 31, 2006, the Crown filed two separate claims against the Grace Parties in the Chapter 11 proceedings in the United States (the "Crown Claim"):

     a.      an "Asbestos Property Damage Proof of Claim Form" seeking contribution and indemnity from W.R. Grace and related companies for any damages the Crown might be found liable for in respect of ZAI. The claim specifically indicated that it was filed for "protective reasons" only and in recognition that no claims bar date had yet been set in respect of PI claims; and

     b.      a "Non-Asbestos Proof of Claim Form" also seeking contribution and indemnity from W.R. Grace and related companies for any damages the Crown might be found liable for in respect of ZAI.

10.      In addition to the Crown's claim for contribution and indemnification, the Crown also has direct claims against the Debtors in respect of costs incurred to seal attics and otherwise remediate ZAI installed in Crown owned properties in homes built on military bases and Native reserves.

11.      On February 8, 2006, Justice Farley of the Ontario Superior Court (the "CCAA Court") made two orders in respect of the capacity of the CCAA Representative Counsel.  The first order appointed Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins, LLP to act as representative counsel on behalf of all persons who have, or at any time in the future may have, a claim arising out of or in any way connected to damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of ZAI products in Canada (the "Canadian ZAI Claimants") "to negotiate *on behalf of* the Canadian Claimants *with* the Applicant, the Crown, and the U.S. Debtors, the Affiliated Entities and any other person or entity" (the "CCAA Representative Counsel Order").

5

12.     The second order made by Justice Farley on February 8, 2006 provided that, notwithstanding the CCAA Representative Counsel Order, nothing shall preclude Aikins MacAulay Thorvaldson from acting on behalf of Raven Thundersky (the representative counsel for aboriginal claimants) or any other party in respect of Canadian claims as against any party other than Grace and that Raven Thundersky shall not be precluded from participating in the CCAA proceedings in respect of Canadian claims as deemed appropriate by the CCAA court. This second order therefore permits separate treatment and representation in respect of ZAI claims against the Crown.

13.     On September 2, 2008, Grace and the Canadian CCAA Representative Counsel entered into Minutes of Settlement (the "Settlement") purporting to resolve all Canadian ZAI claims ("CDN ZAI Claims") as against the Grace Parties.   The Crown was not a party to this Settlement. To date the Crown has been unable to reach an agreement to resolve the ZAI Claims against the Crown or the Crown Claim for contribution and indemnity from Grace.

14.     CDN ZAI Claims are defined in the Settlement as CDN ZAI PD claims or CDN ZAI PI Claims. CDN ZAI PD Claims expressly include any "ZAI PD Claims asserted or to be asserted by the Crown". An example of the Crown's PD claim is the Crown's claim in respect of the containment of ZAI in military homes in Canada, which work was paid for by the Crown.

15.     The Crown acknowledges that the CCAA Representative Counsel have the authority, pursuant to the CCAA Representation Order, to negotiate on behalf of CDN ZAI PD claimants and CDN ZAI PI claimants which authority includes the power to negotiate on behalf of aboriginal claimants and on behalf of the Crown in respect only of the Crown's PD Claim against the Grace Parties. However, the Crown disputes the authority of the CCAA Rep Counsel to purport to negotiate away the Crown's Chapter 11 'claim over' for contribution and indemnity

6

against the Grace Parties, when Representative Counsel have a conflict of interest in the group they purport to represent. This conflict is highlighted by the elimination of the Crown's contribution and indemnity claims while at the same time expressly reserving the CDN Claimants' right to pursue so-called 'independent' or several claims against the Crown in paragraph 13(b)(iv) of the Settlement.

16.    On September 30, 2008, Justice Morawetz, of the CCAA Court acting pursuant to this Court's Request of Aid and Assistance, heard argument on whether to approve the Settlement. The Crown advised the CCAA Court that it supported the Settlement as "fair and reasonable", *provided that* the Settlement did not impair the Crown's separately filed U.S. Chapter 11 Crown Claims for contribution and indemnity against the Grace Parties and provided that it did not impair the Crown's right to commence a third party claim against the Grace Parties to seek contribution and indemnity in any ZAI related action, even if sued on a several basis, which claims the Crown argued were neither a CDN ZAI PD nor a CDN ZAI PI claim.

17.    The decision on the motion remains under reserve by Justice Morawetz.

## OBJECTION

### I.    THE DISCLOSURE STATEMENT SHOULD NOT BE APPROVED.

18.    Bankruptcy Code section 1125(b) provides that during the confirmation process, a plan proponent must present "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). Section 1125(a) defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records, . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a). The Crown maintains that in

7

several respects, the Disclosure Statement does not provide a hypothetical investor with information that is sufficient in detail to allow it to make an informed judgment about the plan.

A.   **The Disclosure Statement Should Disclose That The Crown's Claims For Contribution And Indemnification For Personal Injury And Breach Of Fiduciary Duty Were Not Settled Pursuant To The CDN ZAI Minutes Of Settlement.**

19.    The Crown maintains that its claims for contribution and indemnification for personal injury and breach of fiduciary duty were not settled pursuant to the CDN ZAI Minutes of Settlement. As set forth above, the Crown was not involved in any of the negotiations leading up to the Canadian ZAI Settlement, and believes that the results of that settlement do not have any effect on the Crown's claims for contribution and indemnification for personal injury and breach of fiduciary duty. Rather, those claims have not been settled, and remain subject to ongoing litigation and dispute.

20.    Section 2.8 of the Disclosure Statement describes and discusses the Debtors' ongoing litigation matters. However, that section does not make any disclosures regarding the Debtors' ongoing litigation with the Crown with respect to the aforementioned claims. In order for the Disclosure Statement to contain adequate information, the Disclosure Statement should be amended to include a new Section 2.8.6 to describe the Crown's contribution and indemnification claims for personal injury and breach of fiduciary duty, and should affirmatively state in that new section that the Crown believes that such claims have not been settled but rather are the subject of ongoing litigation and dispute.

21.    Additionally, with respect to the Crown's fiduciary duty claims, the Disclosure Statement should be amended to clarify the class into which the Debtors have classified such claims. The Crown maintains that such claims were not settled pursuant to the CDN ZAI Minutes of Settlement. Consequently, the Disclosure Statement should be amended (i) to clarify

8

that such claims are not classified within Class 8 CDN ZAI PD Claims, and (ii) to specify into which other class such claims are classified.

**B.    The Disclosure Statement Should Disclose That The Plan Blatantly Disregards The Absolute Priority Rule.**

22.    As a preliminary matter, the Crown objects to the Disclosure Statement because it fails to disclose that the Plan blatantly disregards the absolute priority rule.  Specifically, the Bankruptcy Code provides that a plan normally may be confirmed if it meets certain requirements, including that each and every class either accepts the plan or does not suffer any impairment under the plan.  See 11 U.S.C. § 1129(a)(i) ("The court shall confirm a plan only if all of the following requirements are met: (i) With respect to each class of claims or interests— (A) such class has accepted the plan; or (B) such class is not impaired under the plan.").  The Bankruptcy Code, however, provides an alternative regime for confirmation, commonly referred to as "cram down."  Specifically, a debtor may confirm a plan even if one of the impaired classes does not accept the plan, so long as the plan is (among other things) fair and equitable.  See id. § 1129(b)(1) "[I]f all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met[, the court] shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.").

23.    The Bankruptcy Code provides that in order to meet the "fair and equitable" requirement of this cram down regime, it must comply with what is known as the "absolute priority rule."  Specifically, it must be the case that each creditor in the dissenting class either receives the full value of the allowed amount of its claim, or alternatively that the creditors in junior classes do not receive any distribution.  See 11 U.S.C. § 1129(b)(2)(B)(ii) (requiring that for "a plan [to] be fair and equitable with respect to a class" for purposes of cram down, it must

9

be the case that "the plan provides that each holder of a claim of such class receive . . . the

allowed amount of such claim" or, alternatively, "the holder of any claim or interest that is junior

to the claims of such class will not receive or retain under the plan on account of such junior

claim or interest any property . . . ."); see also In re Armstrong World Indus., Inc., 432 F.3d 507,

508 (3d Cir. 2005) (affirming denial of confirmation because plan violated absolute priority

rule).

     24.    The Disclosure Statement and Plan directly contravene the requirements of the

absolute priority rule:

       a.    The Crown's claims for indemnification and contribution for personal
            injuries have been classified within Class 6 Asbestos PI Claims. See supra
            Part I.C (discussing, and disputing, classification of the Crown's claims
            for indemnification and contribution for personal injuries).  Class 6
            Asbestos PI Claims are impaired under the Plan.  See Disclosure
            Statement § 1.2.1 (stating that Class 6 Asbestos PI Claims will be resolved
            pursuant to the Asbestos PI Trust Agreement, and that holders of such
            claims will receive an "[u]nknown" amount); see also Plan § 3.1.

       b.    The Crown's property damage claims against the Debtors (both its direct
            property damage claims as well as its contribution and indemnification
            claims for property damage) have been classified within Class 8 CDN ZAI
            PD Claims. See supra Part II (discussing, and disputing, classification of
            the Crown's property damage claims).  Class 8 CDN ZAI PD Claims are
            impaired under the Plan.  See Disclosure Statement § 1.2.1 (stating that
            Class 8 CDN ZAI PD Claims will be resolved pursuant to the CDN ZAI
            Minutes of Settlement, and that holders of such claims will receive an
            "[u]nknown" amount); see also Plan § 3.1.

     25.    Notwithstanding that Classes 6 and 8 are impaired under the Plan, classes that are

junior in priority to Classes 6 and 8 are unimpaired under the Plan.  Specifically, the Disclosure

Statement provides that each holder of allowed Class 7 Asbestos PD Claims "shall be paid the

Allowed Amount of its Allowed Asbestos PD Claim in Cash in full . . ." Disclosure Statement

1.2.1 (listing estimated percentage recovery for Class 7 as "100%").  Likewise, the Disclosure

Statement provides that each holder of allowed Class 9 General Unsecured Claims "shall be paid

the Allowed Amount of its Allowed General Unsecured Claim with postpetition interest . . . in Cash in full . . ." Disclosure Statement 1.2.1 (listing estimated percentage recovery for Class 9 as "100%"). Finally, the Disclosure Statement provides, with respect to Class 11 Equity interests in Debtors Other than the Parent, that "[t]he Plan leaves unaltered the legal, equitable, and contractual rights to which each Equity Interest in the Debtors other than the Parent entitles the Holder of such Equity Interest." Disclosure Statement 1.2.1 (listing estimated percentage recovery for Class 11 as "100%"). Even the class that is junior to Classes 6 and 8 that is impaired still is retaining rights under the Plan. Specifically, the Plan and Disclosure Statement provide that with respect to Class 10 Equity Interests in the Parent, that such interests shall be retained, subject to the issuance of the Warrant and the terms of the Share Issuance Agreement (as such terms are defined therein). See Disclosure Statement § 1.2.1; Plan § 3.1.10(b).

26.    The Debtors have blatantly disregarded the absolutely priority rule. Specifically, they have stated that even if a class does not accept the Plan, the Debtors nonetheless are seeking confirmation of the Plan pursuant to the cram-down regime. See Disclosure Statement § 4.6 ("Section 6.5.1 of the Plan deals with confirmation in the event an impaired Class rejects the Plan. Impaired Equity Interests in the Parent and/or impaired Classes of Plan claims that fail to accept the Plan may be "crammed down" in accordance with Bankruptcy Code § 1129(b)."); id. § 8.2.1 (summarizing cram-down regime and stating that "[i]n the event one or more Classes of impaired Claims or Equity Interests rejects the Plan, the Debtors reserve the right to proceed with confirmation pursuant to Bankruptcy Code § 1129(b), and the Bankruptcy Court will determine, at the Confirmation Hearing, whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired Class of Claims or Equity Interests"); see also Plan § 6.5.1 ("With respect to impaired Equity Interests in the Parent, and subject to Section 6.of this

11

WCSR 3997909v9

Plan [addressing acceptance by Classes 6 and 7 pursuant to Bankruptcy Code section 524(g)], with respect to any impaired Class of Plan claims that fail to accept this Plan in accordance with Bankruptcy Code §§ 1126 and 1129(a), the Plan Proponents request, to the extent consistent with applicable law, that the Court confirm this Plan in accordance with Bankruptcy Code § 1129(b) with respect to such non-accepting Class of Equity Interests and such non-accepting Class of Plan Claims (if any), and this Plan constitutes a motion for such relief."). This is so despite the fact that the Plan violates the absolute priority rule, in direct contravention of Bankruptcy Code section 1129(b).

27.    The Disclosure Statement does not disclose that the Plan violates the absolute priority rule. To the contrary, the Disclosure Statements states in the section identifying risk factors that "[a]lthough the Debtors believe that the Plan will satisfy all requirements necessary for confirmation, there can be no assurance that the Bankruptcy Court will reach the same conclusion." Disclosure Statement § 9.2.3.

28.    The Crown requests the Court to require the Debtors to amend the Disclosure Statement to expressly disclose the Plan's violation of the absolute priority rule, or alternatively, require the Debtors to amend the Disclosure Statement and Plan in order to bring them into compliance with the requirements of that rule. Specifically, the Debtors should not be allowed to maintain, in sections 4.6 and 8.2.1 of the Disclosure Statement or section 6.5.1 of the Plan, that they are seeking confirmation of the Plan pursuant to Bankruptcy Code section 1129(b) when, in fact, the Disclosure Statement and Plan in their current form directly violate the requirements of that section.

12

C.    **The Disclosure Statement Should Disclose The Existence Of A Dispute Regarding Whether The Crown's Contribution And Indemnification Claims May Be Subject To A Channeling Injunction Or Discharged.**

29.    With respect to contribution and indemnification claims for personal injuries, while the Disclosure Statement does not expressly and clearly state into which class such claims fall, the Crown anticipates that the Debtors would treat such claims as classified within Class 6 Asbestos PI Claims. Specifically, the Plan defines a "Canadian Claim" as "any Claim . . . against any of the Debtors . . . based on, arising from, or attributable to exposure to asbestos from the Debtors' asbestos containing products in Canada or the use in Canada of the Debtors' asbestos containing products, including any such Claim . . . that seeks reimbursement, contribution, or indemnification (contractual or otherwise)." Plan § 1.1(51). The Plan in turn defines a "CDN ZAI PI Claim" as "a Canadian Claim . . . including . . . (y) all cross-claims, contribution claims, subrogation claims, reimbursement claims or indemnity claims . . . based on, or arising out of, resulting from, or attributable to, directly or indirectly from: . . . (b) the presence of or exposure at any time to ZAI that was mined . . . in Canada . . . ." Plan § 1.1(61)(b). The Plan in turn defines an "Asbestos PI Claim" to include "any and all CDN ZAI PI Claims and related Demands against any of the Debtors . . . ." Plan § 1.1(32)(iii).

30.    With respect to contribution and indemnification claims for property damage, the Debtors treat such claims as classified within Class 8 CDN ZAI PD Claims. Specifically, the Plan defines a "CDN ZAI PD Claim" as "a Canadian Claim against . . . any of the Debtors . . . , including . . . contribution claims, subrogation claims, reimbursement claims or indemnity claims . . . , for . . . property damage located in Canada, including the cost of removal, abatement, or diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, by the ZAI sold . . . by one or more of the Debtors . . . ." Plan at p. 15.

13

31.     The Disclosure Statement then improperly provides that both the Class 6 Asbestos PI Claims, as well as the Class 8 CDN ZAI PD Claims, are channeled to various trusts. Specifically, the Class 6 Asbestos PI Claims are channeled to the Asbestos PI Trust.  See Disclosure Statement § 1.2.3. ("The Asbestos PI Trust will, among other things, (1) assume liability for all Asbestos PI Claims (whether now existing or arising at any time in the future) . . . . The Asbestos PI Trust will be the only Entity that a Holder of an Asbestos PI Claim may look to for recovery on account of such a Claim." (emphasis in original)).  The Class 8 CDN ZAI Claims are channeled to the CDN ZAI PD Claims Fund.  See Disclosure Statement § 1.2.5 ("CDN ZAI PD Claim will be channeled to, and paid from, the CDN ZAI PD Claims Fund according to the CDN ZAI Minutes of Settlement. The CDN ZAI PD Claims Fund will be the only Entity that a Holder of an CDN ZAI PD Claim may look to for recovery on account of such a Claim." (emphasis in original)).

32.     It is conceivable if not likely, that some of the Crown's contribution and indemnity claims in respect of PI and PD claims will be the shortfall of any amounts found to be owing to these claimants but not paid by Grace. Those amounts, and accordingly the Crown's liability will not be known until some time in the future. The Plan does not disclose how these future contingent claims will be dealt with in a fair and equitable manner. Nor has Grace negotiated a resolution of these claims with the Crown.

33.     Moreover, the Debtors' purported basis for channeling the Asbestos PI Claims to the Asbestos PI Trust and the CDN ZAI PD Claims to the CDN ZAI PD Claims Fund is Bankruptcy Code section 524(g).  See Disclosure Statement § 4.7.2.1 ("[T]he Asbestos PI Trust shall be created pursuant to section 524(g) of the Bankruptcy Code . . . . The purpose of the Asbestos PI Trust shall be to, among other things: (i) assume the liabilities of the Debtors with

14

respect to all Asbestos PI Claims . . . ."); id. § 4.8.3.1 ("[T]he sole recourse of a Holder of a CDN ZAI PD Claim . . . shall be to the CDN ZAI PD Claims Fund as set forth in the CDN ZAI Minutes of Settlement." (emphasis in original)).

34.    The Crown maintains that its claims for indemnification and contribution (whether for personal injuries, property damage or breach of duty including duty to warn or fiduciary duty claims) are not of the type that are subject to Bankruptcy Code section 524(g). Specifically, the injunction that is implemented by that section addresses only the liabilities of a debtor that, as of the petition date, was named as a defendant in personal injury, wrongful death, or property damage actions. See 11 U.S.C. § 524(g)(2)(B)(i)(I) (requiring that "the injunction is to be implemented in connection with a trust that . . . is to assume the liabilities of a debtor which at the time of entry of the order for relief has been named as a defendant in personal injury, wrongful death, or property-damage actions"). The Crown believes that its Crown Claims are in the nature of indemnification and contribution, not personal injury, wrongful death, or property damage, fall outside the scope of this section.

35.    The Crown further believes that its claims may not even be claims that are subject to the automatic stay or that are capable of being discharged by the Plan. The Bankruptcy Code defines a "claim" as a "right to payment." 11 U.S.C. § 101(5). Therefore, because the Crown may not have a "claim" as defined in the Bankruptcy Code until its right to payment arises, the Crown's claims may be treated as post-confirmation claims against the reorganized debtor, not subject to the automatic stay and not subject to compromise or discharge by the Plan. See Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.), 744 F.2d 332, 335-36 (3d Cir. 1984) (reversing district court, and concluding that the automatic stay did not apply to

indemnification and contribution claims that relate to a debtor's prepetition acts but for which the claimant did not have a right to payment until after the petition date).

36.    Therefore, the Crown requests the Court to require the Disclosure Statement to be amended to disclose the existence of the dispute regarding whether the Crown's contribution and indemnification claims (whether for personal injuries or property damage or other "independent" or "several" claims against the Debtors) are property channeled to the section 524(g) injunction and whether they are subject to the automatic stay and to being discharged.

**D.    The Disclosure Statement Should Disclose The Crown's Belief That The Plan Was Not Proposed In Good Faith.**

37.    The Crown further objects to the Disclosure Statement because it fails to disclose that the Plan was not proposed in good faith.[2]    The Bankruptcy Code provides that a plan normally may be confirmed only if, among other things, it was proposed "proposed in good faith." 11 U.S.C. § 1129(a)(3).

38.    The Crown maintains that the Plan has not been proposed in good faith because, as set forth above, the Crown was not involved in any of the negotiations leading up to the Canadian ZAI Settlement which settlement purports to dispose of the Crown Claim.

39.    Moreover, section 2.7 purports to define Asbestos claims as claims for personal injury from asbestos exposure and asbestos-related property damage Claims.    The Plan's effectuation of the Asbestos PI Settlement does not reflect an agreement with the Crown on how its indemnification and contribution claims should be treated, and instead constitutes a concerted action among the Debtors, the Official Committee of Asbestos Personal Injury Claimants, and the Asbestos PI Future Claimants' Representative to satisfy asbestos personal injury claimants

---

[2]    The Crown fully concedes that it is premature for the Court to consider whether the Plan was proposed in good faith, and that the Crown's substantive arguments regarding that issue will be presented in connection with the hearing on the confirmation of the Plan. However, the Crown does maintain that a hypothetical investor would be unable to make a knowledgeable decision with respect to the Plan without knowing, at a minimum, that such a dispute exists.

WCSR 3997909v9

while leaving the Crown with no assurance of a fair and equitable distribution.  The Crown requests that the Court require the Disclosure Statement to be revised to disclose the existence of this dispute.

## II.    THE SOLICITATION MOTION SHOULD BE DENIED.

40.    As set forth above, the Crown is asserting independent Crown claims for contribution and indemnity which it asks be included as Class 9 – General Unsecured Claims. As such, the Crown asserts that the Crown, and not the CCAA Representative Counsel should be the party solicited to vote in respect of this claim.

41.    The Solicitation Motion provides that the Debtors anticipate that the CCAA Representative Counsel (which is defined as Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP) will be the only party who will be solicited to vote on the Plan with respect to the Class 8 CDN ZAI PD Claims.  See Solicitation Motion ¶ 27(c).  The Crown objects to this provision of the Solicitation Motion, and maintains that, as a member of the impaired class of CDN ZAI PD Claims, it should be entitled to vote on the acceptance or rejection of the Plan in relation to the Crown Claim.

42.    Finally, the Solicitation Motion provides that Indirect PI Trust Claims will be estimated, for purposes of voting on the plan, at $1.00 each.  See Solicitation Motion ¶ 28(A)(II) ("Each Holder of an Indirect PI Trust Claim will have a single vote in the amount, for voting purposes only, of $1.00, which is solely for voting purposes and does not constitute an allowance of such Claims for purposes of distribution").  The Debtors have provided no basis for such an estimation, and the Crown maintains that it is improper to estimate its indemnification and contribution claims (to the extent that such claims constitute Indirect PI Trust Claims), even for voting purposes, at such a nominal amount.

17

## RESERVATION OF RIGHTS

43.    The Crown reserves all rights to raise additional arguments to the Disclosure Statement and/or the Solicitation Motion either at or prior to any hearing with respect to such matters.  The Crown further reserves all rights to raise arguments regarding the confirmation of the Plan, or any amended plan, at or prior to any hearing with respect to such matters.

WHEREFORE, the Crown respectfully requests that this Court sustain the Objection and limit any relief granted with respect to the Disclosure Statement and Solicitation Motion as set forth herein; and that the Court grant such other and further relief as it deems just and proper.

Dated:  October 17, 2008                              Respectfully submitted,

                                                      **Womble Carlyle Sandridge & Rice, PLLC**

                                                      By:    /s/ Matthew P. Ward
                                                             Francis A. Monaco, Jr. (#2078)
                                                             Kevin J. Mangan (#3810)
                                                             Matthew P. Ward (#4471)
                                                             222 Delaware Avenue, Suite 1501
                                                             Wilmington, DE  19801
                                                             Ph: (302) 252-4320
                                                             Fax: (302) 252-4330

                                                             Counsel for Her Majesty the Queen in Right
                                                             of Canada as represented by the Attorney
                                                             General of Canada

18

WCSR 3997909v9