## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., et al.,[1] | Case No. 01-1139 (JKF) |
| Debtors. | Jointly Administered |
| | **Hearing Date: 01/25/10 at 10:30 a.m. (Eastern)**<br>**Objection Deadline: 01/12/10**<br>**Re: Docket Nos. 19579, 20872, 24016** |

### OBJECTIONS OF HER MAJESTY THE QUEEN IN RIGHT OF CANADA TO CONFIRMATION OF THE FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS DATED FEBRUARY 3, 2009

---

[1]     The Debtors are the following entities:  W.R. Grace & Co. (f/k/a Grace Specialty Chemicals Inc.), W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), ECARG, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, LB Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc. E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

1

Her Majesty the Queen in Right of Canada (the "Crown"), by and through her undersigned counsel, objects to confirmation of the First Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders dated February 3, 2009 (as such plan has been or may be modified and/or amended, the "Plan"), including the Third Set of Modifications to the Joint Plan dated December 16, 2010 (Docket No. 24016), to the extent that those modification seek to channel and compromise the Crown's claims over against the Debtors, and in support, states as follows:

## FACTUAL BACKGROUND

**A.**     **The Canadian CCAA Proceedings**

1.     On April 4, 2001, the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") entered an order (the "Initial Order") giving effect to this Court's order respecting the voluntary petitions for relief under Chapter 11 of title 11, United States Code (the "Bankruptcy Code") that were filed by the debtors and debtors-in-possession in the above-captioned Chapter 11 cases (collectively, the "Debtors").  In the Initial Order, the CCAA Court, among other things,

> a.   recognized and declared these U.S. Bankruptcy proceedings to be "foreign proceedings" for the purposes of section 18.6 of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 ("CCAA");

> b.   ordered a stay of proceedings relating to, arising out of or in any way connected to damages or loss suffered, directly or indirectly, from

2

asbestos, asbestos contamination or asbestos related disease against the Debtors; and

c. ordered the Debtors to publish a notice in national newspapers which advised of the US Bankruptcy proceedings and recognition of those proceedings by the Canadian court "*to ensure fair and equal access for Canadians with asbestos claims against Grace Canada Inc. to the process established in the United States*".

2.      On November 14, 2005, as a result of the commencement of proposed class actions in Canada, and upon finding that there would be "a considerable risk of record taint if the action against the Crown were allowed to proceed on its own without direct Grace evidence and counsel," the CCAA Court gave effect in Canada to the stay of proceedings granted by this Court, and prohibited the commencement or continuation of any asbestos related suits against the Debtors and extended that stay of proceedings to include the Crown.  After affirming that this Court had recognized that the Canadian proceeding would be governed by Canadian substantive law (at para. 9 of the November 14, 2005 Endorsement), the CCAA Court specifically relied on the following cases:  *Campeau v. Olympia & York* (1992), 14 C.B.R. (3d) 303 (Ont. Gen. Div.); *Canada Sys. Group EST Ltd. v. Allendale Mut. Ins. Co* (1982), 137 D.L.R. (3d) 287 (Ont. H.C.J.), *aff'd* (1983), 145 D.L.R. (3d) 266 (Ont. Div. Ct.); *Re Noma Co.,* [2004] O.J. No. 4914 (S.C.J.); *Re Lehndorff Gen. Partner ltd.* (1993), 17 C.B.R. (3d) 24 (Ont. Gen. Div.) and ordered:

> *. . . that until and including such time as the Stay Period expires, no suit, action, enforcement process, extra-judicial proceeding or other proceeding relating to, arising out of or in any [way] connected to damages or loss suffered, directly or indirectly, from asbestos, asbestos contamination or asbestos related diseases arising out of the exposure to or use of asbestos products in Canada manufactured, sold or distributed by any of the Applicant, the U.S. Debtors or the Affiliated Entities, shall be commenced against the Crown and any such suits, actions, enforcement processes, extra-judicial proceedings or other proceedings*

*already commenced against the Crown be and are hereby stayed and suspended.*

3.     The Canadian proceedings have been exclusively focused on only one of Grace's products, Zonolite Attic Insulation  ("ZAI").

**B.     Known CDN ZAI Claims**

4.     There are currently ten proposed class actions in which Canada has been sued that have been filed across Canada concerning claims that relate, *inter alia*, to the cost of removal, diminution of property value or economic loss allegedly caused by ZAI manufactured by the Debtors and personal injuries allegedly caused by exposure to ZAI.  W.R. Grace and or its affiliated companies are co-defendants with the Crown in all but the first of these proposed class actions, which are as follows**:**

- Viviane Brosseau et al. v. Attorney General of Canada, Superior Court of Quebec, District of  Montréal, 500-06-000286-050 (no claim against the Grace companies);

- Dextras et al. v. Attorney General of Canada, W.R. Grace & Co. et al., Superior Court of Quebec, District of Montréal, 500-06-000258-042;

- Raven Thundersky et Rebecca Bruce v. Attorney General of Canada, W.R. Grace & Co., Court of Queen's Bench of Manitoba;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al., Federal Court, Saskatchewan;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al., Court of Queen's Bench of Saskatchewan;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al., Court of Queen's Bench of Alberta;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al., Supreme Court of British Colombia;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al., Province of Quebec, District of Hull;

4

- Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al., Court of Queen's Bench of Manitoba; and

- Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al., Ontario Superior Court of Justice.[2]

5.    In the aforementioned class actions, the proposed representative class action plaintiffs seek to represent all Canadians who have suffered past or will suffer future property damage and personal injury due to exposure to ZAI and allege, among other things, that the Crown has breached a duty to warn.

6.    An action has also been instituted by the Province of Manitoba, *Her Majesty The Queen in the Right of the Province of Manitoba v. Attorney General of Canada, W.R. Grace & Co. et al.*, Court of Queen's Bench of Manitoba.  The Province of Manitoba has sued the Crown and the manufacturer of ZAI for the health care costs incurred or to be incurred in relation to the treatment of class members in the Manitoba case as a result of their exposure to ZAI.

7.    In the event that the Crown and the manufacturers are held jointly and severally liable to the Canadian ZAI Claimants, the Crown seeks contribution and indemnity from the manufacturers who are liable, including the Debtors.  On or about January 31, 2006, the Crown filed two separate claims against the Debtors in the Chapter 11 proceedings in the United States (the "Crown Claim"):

a.    an "Asbestos Property Damage Proof of Claim Form" seeking contribution and indemnity from the Debtors for any damages for which the Crown might be found liable in respect of ZAI.  The claim specifically indicated that it was filed for "protective reasons" only and in recognition that no claims bar date had yet been set in respect of PI claims; and

---

[2]    Exhibit 1 Tab 2 (Lilianne David Affidavit), at Exh. C & D, containing the Crown's Proof of Claim for Asbestos Property Damage and Non-Asbestos Proof of Claim respectively and outlining the various proposed class actions in Canada.

WCSR 4290447v8

b.  a "Non-Asbestos Proof of Claim Form" also seeking contribution and indemnity from the Debtors for any damages for which the Crown might be found liable in respect of ZAI.[3]

8.    In addition to the Crown's claim for contribution and indemnity, the Crown also has direct property damage claims against the Debtors in respect of costs incurred to seal attics and otherwise remediate ZAI installed in homes on military bases in Canada.[4]

**C.    Unknown Future PI Claims**

9.    The Canadian CCAA Proceedings have thus far been focused entirely on only one of Grace's products, ZAI, and CCAA Rep Counsel have been focused exclusively in negotiating settlements on behalf of the known ZAI PI Claimants with known proposed class actions.  It is not known what, if any, traditional asbestos PD or PI claims or future claims may arise in respect of any of the Debtors' products.  No release in respect of Canadian traditional asbestos PI or PD claims has been provided to Grace in respect of products other than ZAI.  Attached hereto as Exhibit 2 is a copy of the Order of Justice Morawetz dated December 13, 2009 together with the Endorsement dated January 8, 2010.[5]

**D.    CCAA Rep Counsel Order**

10.    On February 8, 2006, Justice Farley of the CCAA Court made two orders in respect of the capacity of the CCAA Representative Counsel.  The first order appointed the Montreal, Quebec law firm of Lauzon Bélanger S.E.N.C.R.L. and the Hamilton Ontario law firm of Scarfone Hawkins, LLP to act as representative counsel on behalf of all persons who have, or at any time in the future may have, a claim arising out of or in any way connected to damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of ZAI products in

---

[3]    *Id.*
[4]    Exhibit 1 Tab 1 (Hilda Mozaffar Affidavit ), at Exh. F, containing excerpts from Crown's ZAI PD claim.
[5]    Exhibit 2 (Order), at para. 9.

6

Canada (the "Canadian ZAI Claimants") *"to negotiate on behalf of the Canadian Claimants with the Applicant, the Crown, and the U.S. Debtors, the Affiliated Entities and any other person or entity"* (the "CCAA Representative Counsel Order").[6] In authorizing the CCAA Rep Counsel to negotiate on behalf of Canadian Claimants "with the Crown," Justice Farley was clearly cognizant of the mischief that would be caused by having one counsel act for both sides of a dispute in limiting the CCAA Rep Counsel authority to acting on behalf of Canadian claimants in their negotiations with the Crown.

>       E.       **2008 CDN ZAI Claims Settlement**

11.     On September 2, 2008, Grace and the CCAA Rep Counsel entered into Minutes of Settlement to resolve all Canadian ZAI claims ("CDN ZAI Claims") as against the Grace Parties (the "2008 CDN ZAI Settlement"), which settlement notably included a release of all CDN ZAI Claims against the Crown that would give right to claims for contribution or indemnity against Grace while preserving only the CDN Claimants' right to pursue so-called "independent" or several claims against the Crown. CDN ZAI Claims are defined in the Settlement as CDN ZAI PD Claims or CDN ZAI PI Claims. The Crown was not a party to the 2008 CDN ZAI Settlement. Attached hereto as Exhibit 3 is a true copy of Grace's Motion Record for approval of the 2009 Restated ZAI Settlement dated December 1, 2009, which includes at Tab 4 a black-lined copy of the Amended and Restated CDN ZAI Minutes of Settlement.[7]

12.     On September 30, 2008, Justice Morawetz, of the CCAA Court acting pursuant to this Court's Request of Aid and Assistance, heard argument on whether to approve the

---

[6]     Exhibit 1 Tab 1 (Hilda Mozaffar Affidavit), at Exh. A, Representation Order of Justice Farley dated February 8, 2006.

[7]     Exhibit 3 Tab 4 (Black-lined Minutes of Settlement), at paras. 15, 16, and 20 in particular.

WCSR 4290447v8

Settlement.  At that hearing, the Crown, while conceding that the CCAA Rep counsel had authority to negotiate on behalf of Canada in respect of Canada's PD claim, argued that the CCAA Rep Counsel did not have authority to "negotiate away" the Crown's Chapter 11 "claims over" for contribution and indemnity against the Grace Parties, given that the "claims over" arise wholly from the claims of the other clients that the CCAA Rep Counsel were authorized to represent.  In short, the Crown argued that the CCAA Rep Counsel were in a conflict of interest and thus unable to negotiate on the Crown's behalf in respect of the Crown's contribution and indemnity claims.[8]

13.    Paragraph 13(b)(iv) of the 2008 Settlement, which provided for the preservation of the CDN Claimants' right to pursue Canada in respect of so-called "independent" or several claims illustrates the conflict  arising from the CCAA Rep Counsel purported representation on behalf of both sides, Canadian proposed class action representative plaintiffs and Canada as defendant in the class actions.

14.    The Crown supported the Settlement as "fair and reasonable", *provided that* the Settlement did not impair the Crown's separately filed U.S. Chapter 11 Crown Claims for contribution and indemnity against the Grace Parties and *provided that* it did not impair the Crown's right to commence a third party claim against the Grace Parties to seek contribution and indemnity in any ZAI related action, even if sued on a several basis, which claims over the Crown argued were neither a CDN ZAI PD nor a CDN ZAI PI claim.

15.    On October 17, 2008, Justice Morawetz released his decision approving the 2008 CDN ZAI Settlement as "fair and reasonable".  He specifically found that CCAA Rep Counsel had the authority to negotiate on behalf of the Crown and to negotiate away the Crown's claims

---

[8]    Exhibit 3 Tab 6 (Reasons for Decision respecting Approval Order of Justice Morawetz dated October 17, 2008).

over against Grace for contribution and/or indemnity given that the 2008 CDN ZAI Settlement *specifically released all claims against the Crown* and so there was "nothing left" and thus **no prejudice caused to the Crown** by the CCAA Rep Counsel negotiating on the Crown's behalf.[9] He approved the third party release of the Canada (the "Crown Release") in respect of all but the Crown's alleged several liability (the "2008 CCAA Approval").[10]

16.    On October 27, 2008, and as a result of the 2008 CCAA Approval by Justice Morawetz of the Crown Release, counsel for the Crown advised this Court that the Crown would not be proceeding with the Crown's Objection to the Disclosure Statement, as Justice Morawetz had rendered an order recognizing that CCAA Rep Counsel had authority to negotiate on behalf of the Crown and recognizing a release in favor of the Crown for any of the Crown claims seeking contribution and indemnity from Grace and stated:

> *As a result of that, our objection is effectively moot now.  We are no longer able to appear before you as we now are represented by the Canadian Representative counsel.  There is an appeal period of 15 days, under the Ontario rules.  Subject to the expiration of that appeal period, it would look like the Crown's participation in these proceedings, apart from any claims that may be filed against the Canadian PD fund in Canada, would appear to be at an end.*

Attached hereto as Exhibit 4 is a true copy of pages 85-87 of the transcript from the Hearing dated October 27, 2008 together with the Crown's Objection to the Disclosure Statement that was rendered moot by the release of the claims against the Crown in the approval of the 2008 Settlement.

17.    By its own terms, the 2008 CDN ZAI Settlement expired on October 31, 2009 as a result of this Court's confirmation of the Plan having not been rendered by that date.

---

[9]      *Id.*
[10]     *Id*.

18.    In his 31st Information Officer Report dated October 6, 2009, a copy of which is attached hereto as Exhibit 5, Richard Finke, Information Officer, advised the CCAA Court in paragraph 16:

> *Given that the U.S. Confirmation Hearing will likely not conclude until January 2010, it appears that the Settlement will become null and void.  However, the Company is engaged in on-going discussions with Representative Counsel with respect to an extension of the Settlement deadline.*[11]

19.    Despite repeated requests by counsel for the Crown for updates on the negotiations respecting the status of the 2008 CDN ZAI Settlement, the only information given was that negotiations were on-going.  At no time was the Crown advised that a part of those on-going negotiations to extend the date of the 2008 CDN Settlement was that the Crown Release was going to be removed.  Attached as Exhibit 6 is a true copy of the Affidavit of Allison Kuntz, Counsel for Grace Canada, sworn December 8, 2009, with attached exhibits containing correspondence between Grace Canada and the Crown with respect to this issue.

### F.    2009 Restated CDN ZAI Settlement

20.    On November 16, 2009, Grace and the CCAA Rep Counsel executed the Amended and Restated Minutes of Settlement (the "2009 Restated ZAI Settlement").  The Crown is not a party to the 2009 Restated ZAI Settlement.[12]  The Crown first became aware that the Crown Release had been removed upon receipt of the 2009 Restated ZAI Settlement on November 16, 2009.

---

[11]    Exhibit 5 (31st Report of Richard C. Finke, Information Officer), at para. 16.
[12]    Exhibit 3 Tab 3 (2009 Restated Minutes of Settlement).

21.    The 2009 Restated ZAI Settlement purports to release Grace from all liability for CDN ZAI Claims but, in contrast to the 2008 CDN ZAI Settlement, maintains the CDN ZAI PI claimants' right to pursue the Crown not just for any alleged several liability of the Crown but also for all joint liability alleged to be shared with Grace, and also channels the Crown's claim over for contribution or indemnity to the Asbestos PI Trust.   In short, Grace and the CCAA Rep Counsel, without prior notice to the Crown, withdrew the Crown Release approved not only by the CCAA Court in Canada but by this Court, and replaced it with the following:

> . . . *claims against the Crown, whether now or in the future, for injuries suffered directly or indirectly from the manufacture, sale or distribution of ZAI products in Canada.  For greater certainty,*
>
>> *21(a) claims may be pursued by CDN ZAI PI Claimants against the Crown even though they may give rise to the CDN ZAI PI Claims by the Crown for contribution, indemnity or otherwise, provided that such CDN ZAI PI Claims by the Crown shall be channeled to the Asbestos Trust by the First Amended Joint Plan.*

22.    The evidence relied upon to argue that the 2009 Restated ZAI Settlement and the removal of the Crown Release was fair and reasonable, not only to the Canadian class action plaintiffs but also to the Crown, was sworn by Mr. Belanger.  Attached as Exhibit 7 is a true copy of the Affidavit sworn by Mr. Belanger on December 4, 2009 without exhibits.[13]

**G.    No "Settlement" of CDN PI Claims**

23.    On December 13, 2009, Justice Morawetz released an endorsement approving the 2009 Restated ZAI Settlement, with reasons to follow.  On January 5, 2010, the CCAA Court released the issued and entered Order approving the 2009 Restated ZAI Settlement.[14]

---

[13]    The Crown in particular objected to the inclusion of paragraphs 120-126 included to justify the removal of the Crown Release.

[14]    Exhibit 2 (Order).

WCSR 4290447v8

24.    Justice Morawetz, on the one hand, effectively held that the Crown had no standing to represent itself in either the Canadian or US Proceedings because the Crown was Represented by the CCAA Rep Counsel pursuant the 2005 Representation Order (paras. 38-40) but on other hand held that it was unreasonable for the Crown to rely on the terms of the Original Settlement (and accordingly, the good faith of their court ordered counsel, the CCAA Rep Counsel) in not continuing to actively participate in the US proceedings (para. 42-45).

25.    Moreover, Justice Morawetz approved the Restated ZAI Settlement as "fair and reasonable" upon concluding in his Endorsement that "claims can only be made against the Crown provided that the Crown's claims for contribution and indemnity are channeled to the Asbestos Trust."[15]

26.    Justice Morawetz reached this conclusion despite specifically refusing to consider the Crown's arguments about the unfair treatment Her indirect claims over against the Debtors would receive once channeled to the Asbestos PI Trust (see para. 55):

> *In my view, to the extent that the Crown has a complaint, it should be directed to the terms of the U.S. Plan.  There is nothing in this ruling that prohibits the Crown from taking a position of objection in the U.S. Confirmation Hearing.*

27.    Moreover, in assessing the overall issue of prejudice to the Crown, Justice Morawetz accepted the assertion of Grace that "there is but one cluster of claims (the Tundersky Family claim) and those claims may be statute barred"[16]  *Id.* para. 58.  This finding was neither fair nor reasonable given that there has, to date, been no personal injury notice program in Canada and thus there exists no proper foundation from which to assess Grace's or Canada's exposure in respect of CDN ZAI claims.

---

[15]    Exhibit 2 (Order), at para. 53.
[16]    Exhibit 2 (Order), Para. 58.

12

28.    On December 22, 2009, the Crown served a Notice of Motion for Leave to Appeal from the decision of Justice Morawetz approving the 2009 Restated ZAI Settlement, a copy of which is attached hereto as Exhibit 8.  The Notice of Motion may be amended to reflect new grounds of appeal relating to Justice Morawetz's misinterpretation of the 2005 Representation Order, among other things.

### H.    The Plan's Treatment of the Crown's Claim Over

29.    The Plan classifies the Crown's claim over and demand for contribution and indemnity as Class 6, Indirect PI Trust Claims.  *See* Plan § 1.1 at page 28 (definition 137).

30.    Indirect PI Trust Claims, which are included in the defined term "Asbestos PI Claims" are channeled to the Asbestos PI Trust.  *See* Plan § 1.1 at pages 11-12 (definition 32); *id.* § 3.16.

31.    Claims channeled to the Asbestos PI Trust "shall be resolved in accordance with the terms, provisions and procedures of the Asbestos PI Trust Agreement and the Asbestos PI TDP."  *See* Plan § 3.1.6(b)(i).

32.    The Third Plan Modifications purport to appoint CCAA Rep Counsel as Counsel representing all present and future Asbestos PI Claims including Crown Claims.

33.    The Asbestos PI Trust Agreement appoints attorneys representing asbestos personal injury claimants as the Trustees of the Asbestos PI Trust.  Plan, Exhibit 2, Section 4.1.

### OBJECTIONS

### I.    THE 2009 RESTATED ZAI SETTLEMENT IS UNFAIR, UNREASONABLE, AND INEQUITABLE AND OUGHT NOT TO BE APPROVED BY THIS COURT

34.    As a result of the late date at which the 2009 Restated ZAI Settlement was negotiated and approved by the CCAA Court, any challenges that the Crown has to this Court's

13

approval of the 2009 Restated ZAI Settlement appear to be being merged with confirmation objections to the Plan.

35.    In order for this Court to approve the 2009 Restated ZAI Settlement, this Court must be satisfied that, among other things, the settlement is in "the paramount interest of the creditors."  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (reinstating bankruptcy court's order disapproving of settlement).  Factors that courts consider include:

(1)    the probability of success in the litigation;
(2)    the likely difficulties in collection;
(3)    the complexity of the litigation involved and related expense and inconvenience; and
(4)    the interests of creditors.

*Id.*  In doing so, the Court should recognize that "a trustee has a fiduciary relationship with *all* creditors of the estate."  *Id.* at 394 (emphasis in original).

36.    The compromise and settlement memorialized in the 2009 Restated ZAI Settlement is the product of collusion on behalf of the Debtors and CCAA Rep Counsel to shift liability for Grace's joint liability onto the Crown and to deprive the Crown of the meaningful opportunity to actively participate in the US bankruptcy proceedings so as to limit the Crown's exposure to ZAI and other asbestos related claims arising from Grace's activities in Canada.

37.    Here, the proposed 2009 Restated ZAI Settlement does not satisfy this requirement.  Instead, the 2009 Restated ZAI Settlement is an undisguised attempt to transform the Crown, a tort action co-defendant, into a guarantor or insurer for the liability of Grace in respect of ZAI.  Specifically, it is the Crown's position that in Canada a party in a negligence action has a statutory right, arising from the moment an action is served naming her as a defendant, to seek contribution or indemnity from any other person who may be liable to the defendant for all or part of the plaintiff's claim and who may accordingly be added as a party to

14

the litigation in order to defend the claims and have joint and several liability apportioned against him.  Moreover, it is the Crown's position that a release of all liability of one defendant constitutes a release of the joint liability in favor of co-defendants when the claims against the co-defendant (in this case the Attorney General of Canada) find their factual underpinnings in the precise facts to which the release applies.

38.    The Debtors' own evidence, as accepted by the CCAA Court, is that CDN ZAI PI Claims had little to no likelihood of success given limitation period arguments.[17]  As such, the Debtors have a high likelihood of success and the costs to litigate such actions ought not to be hid or complex.  As a result, the release of the Debtors provided by the 2009 Restated ZAI Settlement is designed solely to increase the Crown's exposure by making it more difficult for the Crown to advance the legal defenses that would be easier and more appropriately advanced by the Debtors.

39.    Accordingly, this settlement ought not to be approved by this Court as it does not meet the requirements of *Martin*.

40.    Here, the 2009 Restated ZAI Settlement contemplates that Grace will take no part in the tort actions and will leave the Crown to defend all of the CDN ZAI PI claims without the benefit of having Grace as a party litigant at trial and without having the benefit of Grace's evidence to, among other things, provide the scientific evidence relating to the risk of harm caused by their product, ZAI.  Consequently, upon releasing Grace from all liability in respect of their asbestos containing products, the CDN ZAI PI claimants also released the Crown from any joint liability, thus resulting in there being "nothing left" for the Plan or this Court to channel to the Asbestos PI Trust.  The Crown will rely on the case of *Radvar v. AG Canada, et al.* (2007), ONCA 137 (Ontario Court of Appeal), at para. 5, in which a release was found to have released

claims against a defendant who was not party to the settlement where the allegations against that defendant arose from the same factual underpinnings to which the release applied.

## II.    THE PLAN WAS NOT PROPOSED IN GOOD FAITH

41.    Additionally, in order to confirm the Plan and approve the 2009 Restated ZAI Settlement that is incorporated therein, the Court must find that it was proposed in good faith. *See* 11 U.S.C. § 1129(a)(3).  In addressing this requirement, courts have "considerable judicial discretion" and should "evaluat[e] the totality of circumstances surrounding a plan."  *In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001).  If a court determines that a plan was not proposed in good faith, the court should deny confirmation.  *See In re ACandS, Inc.*, 311 B.R. 36, 42-43 (Bankr. D. Del. 2004) (denying confirmation of plan because, among other things, plan was not proposed in good faith); *Coram Healthcare*, 271 B.R. at 237, 240 (same).

42.    The Crown maintains that the Plan, including the 2009 Restated ZAI Settlement, has not been proposed in good faith because, as discussed above, the Crown was not involved in any of the negotiations leading up to the 2009 Restated ZAI Settlement.  The Crown concedes that, to the extent that the 2009 Restated ZAI Settlement simply puts the Crown back in the position that she would have been but for the 2008 Settlement, namely, that her claims over are channelled to the Asbestos PI Fund and classified as Class 6 claims, the Crown is receiving the same treatment as other tort action co-defendants.  However, the Crown objects to this Court's approval of the 2009 Restated ZAI Settlement in the particular circumstances of the CCAA Rep Counsel's breach of their fiduciary duty owed to the Crown as the Crown's court appointed representative in these proceedings and in negotiations with the Debtors.

---

[17]    Exhibit 2 (Order), para. 58.

WCSR  4290447v8

43.     Recently, the Crown filed its objection (Docket No. 24132) (the "Retention Objection") to the Canadian ZAI Claimants' applications for appointment of special counsel nunc pro tunc to September 1, 2008 and to appoint Daniel K. Hogan, Esq. as bankruptcy counsel. The Crown incorporates the Retention Objection as if set forth fully herein.  For the reasons set forth in the Retention Objection, the Crown maintains that as a result of the CCAA Rep Counsel's conduct, not only did the Crown lose the ability to protect its own interests by representing itself in the CCAA and US proceedings, but the Crown has not even been afforded a vote in the Plan (that Vote having be given to the CCAA Rep Counsel to vote on behalf of all CDN Claimants, including the Crown).  The Court should not find such a result to be good faith.

## III.     THE PLAN FAILS TO COMPLY WITH BANKRUPTCY CODE SECTION 524(g)

44.     The Crown maintains that the Plan fails to comply with Bankruptcy Code section 524(g).  The Crown incorporates by reference as if fully set forth herein those arguments set forth in Part I of the State of Montana's Phase II Trial Brief in Opposition to Confirmation of the Plan (Docket No. 22429) (the "Montana Phase II Brief").

45.     The Plan fails to comply with Bankruptcy Code section 524(g) primarily for two reasons.  First, the Crown maintains that its contribution and indemnification claims are of a different nature (contribution and indemnification, as opposed to personal injury, wrongful death, or property damage) and based on different acts (alleged failure to warn, as opposed to production of asbestos-containing products) from the types of claims to which a section 524(g) injunction may apply.  Accordingly, the Crown's claims for contribution and indemnification should not be subject to the 524(g) trust.  By attempting to expand the scope of section 524(g) to apply to those claims, the Plan fails to comply with the requirements of section 524(g)(2)(B), and

17

accordingly does not comply with the "applicable provisions" of the Bankruptcy Code, as required by section 1129(a)(1).  *See* Montana Phase II Brief Part I.A.

46.    Second, even if the Crown's contribution and indemnification claims were of the nature to which an injunction imposed under section 524(g) might be applicable, that section only enjoins "claims" or "demands," and the Crown's contribution and indemnification claims are not yet "claims" or "demands".  The Crown has not made any payment for which it seeks contribution or indemnification, the Crown has not entered into any settlement on the underlying failure to warn claims, and no judgment has been entered on those underlying claims.  Therefore, under the controlling law in the Third Circuit, the Crown's contribution and indemnification claims are not "claims" or "demands" for purposes of the Bankruptcy Code, and consequently do not fall within the scope of section 524(g).  *See* Montana Phase II Brief Part I.B; *see also* 11 U.S.C. § 101(5) (stating that a "claim" is defined as a "right to payment").[18]  Indeed, the Plan Proponents have acknowledged that "virtually none of the Indirect PI Trust Claims have arisen yet."  Debtors' Chart Summarizing Final Objections to its First Amended Joint Plan of Reorganization, at p. 20 (Docket No. 23114).  Therefore, the Plan Proponents appear to have tacitly conceded that the Crown's claims for contribution and indemnification are not yet "claims" or "demands" for purposes of the Bankruptcy Code.  As a result, because a section 524(g) injunction only applies to "claims" or "demands", the Crown's contribution and indemnification claims should not be subject to a 524(g) injunction.

---

[18]    In applying the section 101(5) definition in the context of contribution and indemnification claims, the Third Circuit Court of Appeals has determined that such claims were not "claims" for purposes of the Bankruptcy Code because a right to payment had not yet arisen.  *See Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.)*, 744 F.2d 332, 335-36 (3d Cir. 1984) (reversing district court, and concluding that the automatic stay did not apply to indemnification and contribution claims that relate to a debtor's prepetition acts but for which the claimant did not have a right to payment until after the petition date).

IV.    **THE PLAN FAILS TO COMPLY WITH BANKRUPTCY CODE SECTION 1122(a) BY CLASSIFYING CLAIMS THAT ARE NOT SUBSTANTIALLY SIMILAR WITHIN THE SAME CLASS**

47.    The Crown further objects to the Plan because it fails to comply with Bankruptcy Code section 1122(a).  Specifically, the Crown's claims for contribution and indemnification are classified alongside personal injury and other claims that are not "substantially similar" to the Crown's claims, as that term is used in Bankruptcy Code section 1122(a).  The Crown's claims have a distinct nature (contribution and indemnification, as opposed to personal injury and death) and a distinct legal effect (not subject to a section 524(g) injunction).  Therefore, the Crown's claims should not be classified within the same class as personal injury claims.  By attempting to do so, the Plan fails to comply with Bankruptcy Code section 1122(a), which provides that a plan may place a claim in a particular class only if such claim is "substantially similar" to the other claims in that class.  Instead, the Plan should be required to classify the Crown's contribution and indemnification claims in a distinct class for holders of indirect claims.  In that regard, the Crown incorporates by reference as if fully set forth herein those arguments set forth in Part II of the Montana Phase II Brief.

V.    **THE PLAN VIOLATES THE ABSOLUTE PRIORITY RULE AND PROHIBITION ON UNFAIR DISCRIMINATION BY PROVIDING FOR FAVORABLE TREATMENT TO CLASSES THAT ARE EQUAL OR JUNIOR IN PRIORITY TO CLASS 6 ASBESTOS PI CLAIMS**

48.    The Crown also objects to the Plan because it disregards the absolute priority rule and prohibition on unfair discrimination by seeking to cram down the Plan on the impaired Class 6 Asbestos PI Claims while, at the same time, leaving classes that are equal or junior in priority

19

unimpaired.  The Crown incorporates by reference as if fully set forth herein those arguments set forth in Parts III and IV of the Montana Phase II Brief.[19]

49.    As an example, the Crown's claims for indemnification and contribution for personal injuries have been classified within Class 6 Asbestos PI Claims.  *See supra* Part H.[20] The Plan concedes that Class 6 Asbestos PI Claims are impaired.  *See* Plan § 3.1.6(d) ("Class 6 is impaired.").

50.    Yet the Plan provides that certain other classes of unsecured claims are unimpaired.  *See* Plan § 3.1.5(c) (stating that Class 5 Intercompany Claims is "unimpaired"); *id.* § 3.1.7(c)(ii) (stating that Class 7A Asbestos PD Claims (except US ZAI PD Claims) its "unimpaired"); *id.* § 3.1.9(f) (stating that Class 9 General Unsecured Claims is "unimpaired"). Perhaps more tellingly, *the Plan even provides for a distribution to holders of equity interests*. *See id.* § 3.1.10(b) ("On the Effective Date, Class 10 Equity Interests in the Parent shall be retained, subject to the issuance of the Warrant, the terms of the Share Issuance Agreement, and the Stock Trading Restrictions Term Sheet.").   (Indeed, the Official Committee of Equity Security Holders is even one of the Plan Proponents.)  Such a result directly violates the Third

---

[19]    The Crown concedes that the absolute priority rule and the prohibition on unfair discrimination apply only in the event that the cram down regime is used.  *See* 11 U.S.C. § 1129(b).  The Crown understands that the Plan Proponents no longer intend to use the cram down regime, in light of the acceptance of the Plan by Class 6.  However, the Crown maintains that because its claims have a distinct nature (contribution and indemnification, as opposed to personal injury and death) and a distinct legal effect (not subject to a section 524(g) injunction) from the other claims within Class 6, the Crown's claims should be classified in a distinct class for holders of indirect claims.  *See supra* Part IV.  Had the Plan Proponents properly classified indirect claims within a distinct class, the Crown believes that the class would not have approved the Plan, and that the cram down regime would have had to be utilized.

[20]    The Crown's property damage claims against the Debtors (both its direct property damage claims as well as its contribution and indemnification claims for property damage) have been classified within Class 8 CDN ZAI PD Claims.

Circuit Court of Appeals' ruling in *In re Armstrong World Industries, Inc.*, 432 F.3d 507, 518 (3d Cir. 2005) (affirming denial of confirmation because plan violated absolute priority rule).

51.      As this Court recently acknowledged, the Debtors may not unfairly discriminate between different claims of the same nature.  *See* 10/14/09 Tr. p. 129, a copy of which is attached hereto as Exhibit 9 (Court recognizing that "[i]f the debtor tried to classify Libby claimants in a different class simply to pay them more through this plan than they paid other claimants with the same disease the plan would not be confirmable.  The debtor could not do that.  It would be gerrymandering.  That plan simply wouldn't work.").  Thus, because the Crown's claims (to the extent that they are "claims" as defined in the Bankruptcy Code) are general unsecured claims, and not Asbestos PI Claims, such claims should be classified in Class 9 and be afforded the same treatment as other Class 9 General Unsecured Claims, or at a minimum should be classified in a distinct class for holders of indirect claims.

52.      Because the Plan fails to comply with the absolute priority rule and disregards the prohibition on unfair discrimination in contravention of the requirements of Bankruptcy Code section 1129(b), the Crown objects to the Plan, and the Plan should not be confirmed.

## VI.      THE TRUST DISTRIBUTION PROCEDURES FAIL TO COMPLY WITH BANKRUPTCY CODE SECTIONS 1123(a)(4) AND 524(g)(2)(B) BY GIVING DISPARATE TREATMENT TO CLAIMS WITHIN A CLASS

53.      Additionally, the Trust Distribution Procedures that are implemented by the Plan violate Bankruptcy Code sections 1123(a)(4) and 524(g)(2)(B)(ii)(V) because those procedures will result in disparate treatment among claims within the same class.  Section 1123(a)(4) requires that a plan must provide the same treatment for all claims within a particular class.  Similarly, section 524(g)(2)(B)(ii)(V) requires a section 524(g) trust to operate through mechanisms that reasonably assure that present claims and future demands involving similar

claims will be paid in substantially the same manner.  Here, the Trust Distribution Procedures will result in unfair disparate treatment of Indirect PI Trust Claims (including contribution and indemnification claims) in disregard of these requirements in at least three respects.  In that regard, the Crown incorporates by reference as if fully set forth herein those arguments set forth in Part V of the Montana Phase II Brief.

54.    First, the Trust Distribution Procedures may be interpreted to give disparate treatment by providing for no payment whatsoever to holders of claims for contribution and indemnification.  *See* Montana Phase II Brief Part V.B.  Even to the extent that the Plan does contemplate a distribution on account of indirect contribution and indemnification claims, the requirement that the contribution and indemnification claimholder must first make payment to the purportedly injured direct claimholder disregards applicable state law, which allows a tort system defendant the right to pursue contribution prior to paying a judgment or settlement to the plaintiff.  *See id.* Part V.B n. 11; *see also* Objection of Garlock Sealing Techs., LLC to Confirmation of the Plan, at Part A (Docket No. 21795).  The Crown joins, incorporates herein by reference, and adopts as its own Part A of Garlock Sealing Technologies, LLC's objection.

55.    Second, the Trust Distribution Procedures give disparate treatment by implementing a first-in, first-out timing mechanic for Class 6 Asbestos PI Claims that will result in especially negative disparate treatment against holders of contribution and indemnification claims (such as the Crown) who must wait until any liability (such as on the underlying failure to warn allegations) is established before they may assert their contribution and indemnification claims.  *See* Phase II Brief Part V.C.  In fact, during the confirmation trial, David Austern, the Future Claimants Representative, acknowledged that "there is a possibility" that the Trust may not have sufficient funds to pay contribution and indemnification claims which are established at

22

a point later in time than the direct asbestos claims.  9/17/09 Tr. p. 71 (Austern), a copy of which is attached hereto as Exhibit 10.

56.     Third, the Trust Distribution Procedures give disparate treatment by imposing additional restrictions and requirements on holders of Indirect PI Trust Claims (including contribution and indemnification claims) that are not imposed on holders of other claims within Class 6.  For example, the Trust Distribution Procedures limit the allowable amount of an Indirect PI Trust Claim to the amount paid to the underlying asbestos plaintiff, without inclusion of attorneys' fees or other defense costs; they require that for a claimant to assert a presumptively valid Indirect PI Trust Claim, it must obtain a full release from the underlying asbestos creditor; and provide for a "maximum value" for Asbestos PI Claims which could result in negative disparate treatment to holders of Indirect PI Trust Claims in the event that a judgment is entered against it in an amount in excess of the maximum value.  *See* Phase II Brief Parts V.D.[21]

57.     Fourth, the 2009 Restated ZAI Settlement does not treat US and CDN PD Claimants fairly and equitably, as CDN claimants who live in homes containing ZAI will recover about 1/7 (one seventh) the amount that their American counterparts will recover for asserting the same or substantially the same ZAI claims.

58.     In short, the Crown maintains that it has the right to receive full contribution and indemnity in respect of Grace's several liability.  However, the Asbestos PI Trust Distribution

---

[21]     During the confirmation trial, Elihu Inselbuch acknowledged that a holder of an Indirect PI Trust Claim could only obtain a recovery against the Asbestos PI Trust in the "maximum amount", even if a judgment in excess of the maximum amount had been entered against the holder of the Indirect PI Trust Claim.  See 9/14/09 Tr. pp. 111-12 (Inselbuch), a copy of which is attached hereto as Exhibit 11 ("Q:  [W]here a judgment is rendered against a co-defendant and now has a contribution indemnification claim that exceeds the maximum allowed amount, could it have a negative impact based on how the TDP is set up currently?  A:  It can only recover up to the maximum value at the payment percentage.  Q:  Okay.  A:  If that is a negative impact, it is a negative impact.").

23

Procedure (the "TDP") eliminates this right.[22]  The TDP establishes an "extraordinary claim" that is equal to 8 times the Scheduled Value, and is available if a claimant can establish that 95% or more of its exposure was to Grace asbestos, and that it cannot recover from a third party.  *See* Asbestos PI TDP § 5.4(a).  The eight times multiplier was designed specifically in relation to the Libby claims, and, according to the Debtors, reflects the pre-petition value of the claims in Libby.  *See* Plan Proponents' Phase II Post-Trial Brief in Response to Confirmation Objections of the Libby Claimants, page 12, section 2.7 and 2.8.  However, if a claimant recovers against the Crown (i.e. a "Third Party"), such claimant would not qualify for extraordinary claim treatment, and would be relegated to either the Scheduled Value, or some value between the Scheduled Value and the Maximum Value if the claimant could establish, in Individual Review, certain factors that increase the value of the claim.  *See* Asbestos PI TDP § 5.4(a); 9/14 Tr. p. 131 (Inselbuch), a copy of which is attached hereto as Exhibit 11.  The alleged purpose for requiring a claimant to establish that it has no likelihood of recovery from another source is apparently to ensure that Grace is paying only its several share of liability.  However, any claimant who has claims against a third party, even if those claims are based ultimately in Graces' asbestos-related activity, is prevented from receiving Extraordinary Claim treatment. The Crown is limited to the claim that the direct claimant could have received.  Thus, the Crown will only receive the Scheduled Value, or a claim between the Scheduled Value and the Maximum Value if the claimant would have received a greater award based on the criteria set forth in the Asbestos PI TDP at section 5.3(b)(2), and only if the claimant herself did not receive such an award.  The Crown, being as she is a "Third Party", will ***never*** be entitled to the Extraordinary Claim value.

---

[22]    The Crown here repeats and relies on the BNSF Post Trial Brief dated Nov. 20, 2009 (Docket No. 23801).

59.     For all of these reasons, in order for the Trust Distribution Procedures to comply with Bankruptcy Code sections 1123(a)(4) and 524(g)(2)(B), those procedures will need to be revised to eliminate the potential for disparate treatment among claims within the same class. For this reason as well, the Court should not confirm the Plan at this time.

## VII.    THE TRUST DISTRIBUTION PROCEDURES AND THE PLAN ARE UNFAIR AND INEQUITABLE BECAUSE THEY FAIL TO CLARIFY THE PROCEDURES FOR PAYMENT OF CLASS 6 CLAIMS

60.     The Trust Distribution Procedures and the Plan also are unfair and inequitable in that the Trust Distribution Procedures fail to clarify the procedures pursuant to which Class 6 Asbestos PI Claims will be paid, or the percentage that claimholders in that class will receive on their claims.[23]  The Crown incorporates by reference as if fully set forth herein this argument set forth in Part VI of the Montana Phase II Brief.  Before the Court confirms the Plan, this omission should be rectified.

## CONCLUSION

61.     The fact that the TDP treats the Crown's indirect claims over differently than direct claims renders the Plan unconfirmable.

62.     In seeking to shift Grace's several liability on to the Crown and then to cap the Crown's recovery of indemnification and contribution on account of Grace's several liability to just a fraction of what would be recovered by direct claimants, while simultaneously depriving the Crown of the timely opportunity to protect her interests, which are adverse to the interests of

---

[23]     During the confirmation trial, the Future Claimants Representative acknowledged that the TDP lacks certainty regarding the value of the Asbestos PI Trust's assets and the amount of its liabilities.  *See* 9/17/09 Tr. p. 70 (Austern), a copy of which is attached hereto as Exhibit 10 ("Q:  Now, the TDP acknowledges, I think, and I'll just to speed 5 things along, under Sections 4.1 and 4.3 of the TDP that there 6 is uncertainty in connection with the value of the assets, the 7 amount of liabilities?  A:  Yes.").

25

the CDN ZAI class action claimants, and depriving the Crown of the right to a vote, renders the Plan fundamentally unfair and unconfirmable.

## JOINDER & RESERVATION OF RIGHTS

63.     The Crown reserves all rights to raise additional arguments to the Plan and the Third Set of Modifications to the Joint Plan either at or prior to any hearing with respect to such matters.   The Crown joins in other objectors' trial briefs, post-trial briefs, reply briefs, and objections as indicated above.

WCSR  4290447v8

WHEREFORE, the Crown respectfully requests that this Court sustain the Objection  and refuse to approve the 2009 Restated ZAI Settlement, and/or classify the Crown claims over as Class 9 Claims to be paid in full, and that the Court grant the Crown such other and further relief as it deems just and proper.

Dated:  January 12, 2010                           Respectfully submitted,

                                                   Womble Carlyle Sandridge & Rice, PLLC


                                                   By:____/s/ Matthew P. Ward_____
                                                   Francis A. Monaco, Jr. (#2078)
                                                   Kevin J. Mangan (#3810)
                                                   Matthew P. Ward (#4471)
                                                   222 Delaware Avenue, Suite 1501
                                                   Wilmington, DE  19801
                                                   Ph: (302) 252-4320
                                                   Fax: (302) 252-4330

                                                   -and-

                                                   Jacqueline Dais-Visca
                                                   Senior Counsel
                                                   Business Law Section
                                                   Ontario Regional Office
                                                   Suite 3400, Box 34, The Exchange Tower
                                                   130 King Street West, Toronto, Ontario
                                                   M5X 1K6

                                                   Counsel for Her Majesty the Queen in Right of
                                                   Canada as represented by the Attorney General of
                                                   Canada