# EXHIBIT "1"

Court File No. 01-CL-4081

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF GRACE CANADA INC.**

# RESPONDING RECORD OF THE ATTORNEY GENERAL OF CANADA
# APPROVAL OF RESTATED CDN ZAI SETTLEMENT
# (Returnable Dec. 8, 2009)

**Dated: December 4, 2009**

**DEPARTMENT OF JUSTICE CANADA**
Ontario Regional Office
The Exchange Tower
3400-130 King St. West
Toronto, Ontario  M5X 1K6

**JACQUELINE DAIS-VISCA**
Tel: (416) 952-6010
Fax: (416) 973-0809
Law Society No.: 35834I

**DEPARTMENT OF JUSTICE CANADA**
Québec Regional Office
200, Bvd René-Lévesque Ouest
Tour est, 5e étage
Montréal, Québec  H2Z 1X4

**NATHALIE DROUIN**
Tel: (514) 283-8117
Fax: (514) 283-3856
Law Society No.: 184774-1

**Lawyers for the Attorney General of Canada**

## SERVICE LIST

TO:      **OGILVY RÉNAULT LLP**
Barristers and Solicitors
Suite 3800, 200 Bay Street
Royal Bank Plaza, South Tower
Toronto, Ontario  M5J 2Z4

**DERRICK C. TAY**
dtay@ogilvyrenault.com
Tel:  (416) 216-4832
Fax:  (416) 216-3830

**ORESTES PASPARAKIS**
opasparakis@ogilvyrenault.com
Tel:  (416) 216-4815
Fax:  (416) 216-3930

**Lawyers for Grace Canada Inc.**

AND TO:    **ERNST & YOUNG INC.**
Ernst & Young Tower, 16th Floor
Toronto-Dominion Centre, P.O.Box 251
Toronto, Ontario  M5K 1J7

**MURRAY A. McDONALD**
murray.a.mcdonald@ca.ey.com
Tel : (416) 943-3016
Fax: (416) 943-3300

**The Monitor**

AND TO:    **ERNST & YOUNG INC.**
800, boul. René-Lévesque Ouest
Bureau 1900
Montréal, Québec  H3B 1X9

**JEAN DANIEL BRETON**
jean-daniel.breton@ca.ey.com
Tel : (514) 875-6060
Fax: (514) 879-2600

**The Monitor**

2

AND TO:    **AIKINS, MacAULAY & THORVALDSON LLP**
30th Floor, 360 Main Street
Winnipeg, Manitoba  R3C 4G1

**KEITH J. FERBERS**
kjf@aikins.com
Tel:  (204) 957-4691
Fax:  (204) 957-4269

**Lawyers for Raven Thundersky and Rebecca Bruce**

AND TO:    **MERCHANT LAW GROUP**
c/o Eau Claire Place II
#340 – 521 Third Ave. S.W.
Calgary, Alberta  T2P 3T3

**EVATT MERCHANT**
emerchant@merchantlaw.com
Tel: (403) 237-9777
Fax: (403) 237-9775

AND TO:    **THE SCOTT LAW GROUP, P.S.**
926 W. Sprague Ave, Suite 680
Spokane, WA  99201

**DARRELL W. SCOTT**
darrellscott@mac.com
Tel:  (509) 455-3966
Fax:  (509) 455-3906

AND TO:    **LAUZON BÉLANGER S.E.N.C.**
286, rue St-Paul Ouest, Bureau 100
Montréal, Québec  H2Y 2A3

**YVES LAUZON**
ylauzon@lauzonbelanger.qc.ca

**MICHEL BÉLANGER**
mbelanger@lauzonbelanger.qc.ca

**CAREEN HANNOUCHE**
careen.hannouche@lauzonbelanger.qc.ca

Tel:  (514) 844-7612
Fax:  (514) 844-7009

**Co-Lawyers for Association Des Consommatuers Pour La Qualité
Dans La Construction and Jean-Charles Dextras**

AND TO:   **SCARFONE HAWKINS LLP**
1 James St. S., 14th Flr.
PO Box 926, Stn. LCD 1
Hamilton, Ontario  L8N 3P9

**DAVID THOMPSON**
thompson@shlaw.ca

**JEFFREY C. TEAL**
jteal@shlaw.ca

**MATTHEW G. MOLOCI**
moloci@shlaw.ca

Tel: (905) 523-1333
Fax: (905) 523-5878

**Co-Lawyers for Association Des Consommatuers Pour La Qualité Dans La Construction and Jean-Charles Dextras**

## INDEX

| | Description | Page No. |
|---|---|---|
| 1. | Affidavit of Hilda Mozaffar sworn December 4, 2009 | 1 – 4 |
| A. | Exhibit A – Order of Justice Farley dated February 8, 2006 | 5 – 10 |
| B. | Exhibit B - Objection to the Disclosure Statement filed on behalf of Her Majesty the Queen in right of Canada in US Bankruptcy Proceedings, dated October 17, 2009 | 11 – 29 |
| C. | Exhibit C – US Bankruptcy Court's Notice of Agenda of Matters scheduled for hearing on October 27, 2008 and October 28, 2008 | 30 – 35 |
| D. | Exhibit D – Settlement Approval Endorsement dated October 23, 2008 | 36 – 46 |
| E. | Exhibit E – Claims Bar Order dated November 13, 2008 | 47 – 53 |
| F. | Exhibit F – Excerpts from the Crown's PD claim filed on behalf of the Department of National Defence | 54 - 57 |
| G. | Exhibit G – W. R. Grace US ZAI Property Damage Trust Distribution Procedures | 58 – 83 |
| H. | Exhibit H – Term Sheet for Resolution of U.S. Zonolite Attic Insulation Claims, dated November 21, 2008 | 84 – 94 |
| I. | Exhibit I – W. R. Grace US ZAI Personal Injury Damage Trust Distribution Procedures | 95 – 162 |
| J. | Exhibit J – Justice Fitzgerlad's Memorandum Opinion, dated December 14, 2006 | 163 – 217 |
| K. | Exhibit K – State of Montana's Post-Trial Brief in Opposition to the Confirmation of the First Amended Joint Plan of Reorganization, dated November 2, 2009 | 218 – 233 |
| L. | Exhibit L – Phase II Post-Trial Brief of Garlock Sealing Technologies, LLC in Opposition to the Confirmation of the Plan Proponents' First Amended Join Plain of Reorganization, dated November 2, 2009 | 234 – 271 |
| M. | Exhibit M – US Scheduling Order, Confirmation Hearing Closing Argument, dated October 29, 2009 | 272 – 274 |
| N. | Exhibit N – Letter from Orestes Pasparakis, dated December 3, 2009 to Keith Ferbers | 275 – 278 |

2

| | Description | Page No. |
|---|---|---|
| 2. | Affidavit of Lilianne David sworn October 2, 2008 | 279 – 281 |
| A. | Exhibit A – Order of Justice Chaput, Quebec Superior Court, dated November 76, 2005 | 282 – 290 |
| B. | Exhibit B – Order and Endorsement of Justice Farley dated November 14, 2008 | 291 – 298 |
| C. | Exhibit C – W.R. Grace & Co. Asbestos Property Damage Proof of Claim Form | 299 – 314 |
| D. | Exhibit D – Grace Non-Asbestos Proof of Claim for | 315 – 320 |
| E. | Exhibit E – Order of Justice Farley dated February 8, 2006 | 321 – 324 |
| 3. | Responding Record, 30th Information Officer Report, dated June 18, 2009 | 325 – 355 |

Court File No.: 01-CL-4081

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORSARRANGEMENT ACT*,
R.S.C. 1985, c. C-36 AS AMENDED AND IN THE MATTER OF GRACE CANADA INC

ONTARIO
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

Proceeding Commenced at Toronto

RESPONDING RECORD OF THE ATTORNEY
GENERAL OF CANADA
APPROVAL OF RESTATED CDN ZAI SETTLEMENT
(Returnable Dec. 8, 2009)

**Department of Justice Canada**
Ontario Regional Office
130 King Street West
Suite 3400, Box 36
Toronto, ON M5X 1K6

**Per:    Jacqueline Dais-Visca**
Tel:     (416) 952-6010
Fax:     (416) 973-0809
Law Society No.: 358341

**Department of Justice Canada**
Québec Regional Office
200, Bvd René-Lévesque Ouest
Tour est, 5e étage
Montréal, Québec  H2Z 1X4

**Per:    Nathalie Drouin**
Tel:     (514) 283-8117
Fax:     (514) 283-3856
Law Society No.: 184774-1

Lawyers for the Attorney General of Canada

Court File No.: 01-CL-4081

## SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

### IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36 AS AMENDED

### AND IN THE MATTER OF GRACE CANADA INC.

Applicant

## AFFIDAVIT OF HILDA MOZAFFAR
## Sworn December 4, 2009

I, HILDA MOZAFFAR, Legal Assistant with the Department of Justice Canada, of the City of Thornhill, in the Province of Ontario, MAKE OATH AND SAY:

1.          I am the assistant to Jacqueline Dais-Visca, counsel with carriage of this file on behalf of the Attorney General of Canada. As such I have knowledge of the matters to which I hereinafter depose except where my knowledge is said to be based on information from others in which case I have identified the source of the information and verily believe the information to be true

2.          Attached hereto and marked as **Exhibit "A"** is a true copy of the Order of Justice Farley dated February 8, 2006 appointing Lauzon Belanger S.E.N.C.R.L. and Scarfone Hawkins LLP as representative counsel in these proceedings on behalf of all Canadian Claimants.

3.          Attached here to and marked as **Exhibit "B"** is a true copy of the Objection to the Disclosure Statement filed on behalf of Her Majesty the Queen in right of Canada in

the US Bankruptcy Proceedings dated October 17, 2009 ("Crown Disclosure Statement Objection").

4.         Attached hereto and marked as **Exhibit "C"** is a true copy of the US Bankruptcy Court's Notice of Agenda of Matters scheduled for hearing on October 27, 2008 and October 28, 2008 confirming that the Crown Disclosure Statement Objection would be going forward

5.         Attached hereto and marked as **Exhibit "D"** is a true copy of this Court's Endorsement dated October 23, 2008 in respect of this Court's approval of the Canadian Zonolite Attic Insulation ("ZAI") Claims Settlement ("2008 CDN ZAI Settlement").

6.         I am advised by Jacqueline Dais-Visca and verily believe that as a result of this Court's approval of the 2008 CDN ZAI Settlement, Ms. Dais-Visca advised the US Court that she would not be proceeding with the Crown Disclosure Statement Objection as the issue was moot.

7.         Attached hereto and marked as **Exhibit "E"** is a true copy of the Court's order dated November 13, 2008 recognizing and implementing the US Court's establishment of a proof of claim bar date for Canadian ZAI property damage claims and approval of related proof of claim form, bar date notices and notice program dated October 20, 2008 ("PD Claims Bar Order").

8.         Attached hereto and marked as **Exhibit "F"** is a true copy of excerpts from the Crown's claim filed on behalf of the Department of National Defence, pursuant to the PD Claims Bar Order seeking recovery of costs incurred to survey and inspect 11,864 units and seal 2202 units.

9.          Attached hereto and marked as **Exhibit "G"** is a true copy of the W. R. Grace US ZAI Property Damage Trust Distribution Procedures, which sets out the procedures for resolving all US property damage Claims.

10.          Attached hereto and marked as **Exhibit "H"** is a true copy of the Term Sheet for Resolution of U.S. Zonolite Attic Insulation Claims dated November 21, 2008.

11.          Attached hereto and marked as **Exhibit "I"** is a true copy of the W. R. Grace US ZAI Personal Injury Damage Trust Distribution Procedures which sets out the procedures for resolving all US asbestos personal injury claims.

12.          Attached hereto and marked as **Exhibit "J"** is a true copy the Justice Fitzgerald's Memorandum Opinion dated December 14, 2006 in respect of the ZAI Science Trial.

13.          Attached hereto and marked as **Exhibit "K"** is a true copy of State of Montana's Post-Trial Brief in Opposition to the Confirmation of the First Amended Joint Plan of Reorganization dated November 2, 2009.

14.          Attached hereto and marked as **Exhibit "L"** is a true copy of the Phase II Post-Trial Brief of Garlock Sealing Technologies, LLC in Opposition to the Confirmation of the Plan Proponents' First Amended Joint Plan of Reorganization dated November 2, 2009

15.          Attached hereto and marked as **Exhibit "M"** is a true copy of the Order dated October 29, 2009 scheduling closing arguments in connection with the Confirmation Hearings to January 4th and 5th, 2010.

- 4 -

4

16.        Attached hereto and marked as **Exhibit "N"** to my affidavit is a true copy of letter by Orestes Pasparakis dated December 3, 2009 to Keith Ferbers.

17.        I make this affidavit in support of the Crown's objection to approval by this Court of the Restated CDN ZAI Settlement entered into between the Grace Parties and the Canadian Representative Counsel on November 16, 2009.

Sworn before me at the City of Toronto,
in Province of Ontario, on
December 4, 2009.

_____
Commissioner for Taking Affidavits

_____
**HILDA MOZAFFAR**

5

This is Exhibit ⁺ A ⁱ mentioned and
referred to in the affidavit of
_Hilda Mozaffar_
Sworn before me this  4th    day of
_December_    A.D. 20___
A Commissioner for taking affidavits

Court File No. 01-CL-4081

## SUPERIOR COURT OF JUSTICE

### COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE | ) | WEDNESDAY, THE 8TH DAY OF |
| | ) | |
| MR. JUSTICE FARLEY | ) | FEBRUARY, 2006 |

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'
CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS
AMENDED

AND IN THE **MATTER OF GRACE CANADA, INC.**

### ORDER

THIS **MOTION** made by Grace Canada, Inc. (hereinafter referred to as the "Applicant"), for an Order:

(a)   abridging the time for service of this motion;

(b)   appointing Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP (the "Representative Counsel") to act as representative counsel in these proceedings on behalf of all persons who have, or at any time in the future may have a claim, arising out of or in any way connected to damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of Zonolite attic insulation products in Canada ("Canadian Claimants") by the Applicant or any of W.R. Grace & Co. and all of its subsidiaries (the "U.S. Debtors") as well as certain other Affiliated Entities (as defined in the order of the United States Bankruptcy Court (the "U.S. Court") made on January 22, 2002, as amended);

- 2 -

7

(c)   declaring that the Representative Counsel's powers shall include but not be limited to:

    (i)   representing the interests of Canadian Claimants in these proceedings;

    (ii)   appearing before this Honourable Court in these proceedings and applying to this Honourable Court for advice and directions from time to time;

    (iii)   seeking to appear or have an agent seek to appear before the U.S. Court in the context of the U.S. Debtors' Chapter 11 cases (the "Chapter 11 Cases"); and

    (iv)   negotiating on behalf of the Canadian Claimants with the Applicant, The Attorney General of Canada (Her Majesty the Queen in Right of Canada) (the "Crown"), the U.S. Debtors, the Affiliated Entities and any other person or entity;

(d)   declaring that Canadian Claimants shall be responsible for the fees and disbursements of the Representative Counsel subject to further order of this Honourable Court;

(e)   that any person affected by this Order (an "Affected Person") shall be entitled to apply to this Honourable Court for relief from time to time;

(f)   discharging Pierre Le Bourdais as information officer in these proceedings and appointing Richard C. Finke as information officer in these procedures; and

(g)   such further relief as this Honourable Court deems appropriate,

- 3 -

8

was heard this day at 393 University Avenue, Toronto, Ontario.

ON READING, the Applicant's Notice of Motion, the affidavit of Richard Finke sworn January 31, 2006, the affidavit of Raven Thundersky ("Thundersky") sworn February 1, 2006, the affidavit of Yves Lauzon sworn February 3, 2006 and the affidavit of Merv Nordick sworn February 6, 2006, and on hearing the submissions of counsel for: (a) the Applicant; (b) Association Des Consommatuers Pour La Qualité Dans La Construction and Jean-Charles Dextras, Viviane Brosseau and Éotine Roberge-Turgeon; (c) the Crown; (d) Thundersky et. al.; and (e) Merv Nordick and Ernest Spencer et. al., and upon being advised that no other person has appeared on this date or served and filed responding materials on this motion although duly served and on reading the affidavit of service of Monique Massabki sworn February 2, 2006:

1.     THIS COURT ORDERS that the time for service of the Applicant's Notice of Motion and Motion Record in support of this Motion be and it is hereby abridged such that the Motion is properly returnable today, and, further, that any requirement for service of the Notice of Motion and of the Motion Record upon any interested party, other than the parties herein mentioned, is hereby dispensed with.

2.     THIS COURT ORDERS that Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP be appointed as representative counsel, in these proceedings on behalf of all Canadian Claimants.

3.     THIS COURT ORDERS that the Representative Counsel's power shall include but not be limited to:

   (a)     representing the interests of Canadian Claimants in these proceedings;

9

- 4 -

(b) appearing before this Honourable Court in these proceedings and applying to this Honourable Court for advice and directions from time to time;

(c) seeking to appear or have an agent seek to appear before the U.S. Court in the context of the Chapter 11 Cases; and

(d) negotiating on behalf of the Canadian Claimants with the Applicant, the Crown, the U.S. Debtors, the Affiliated Entities and any other person or entity.

4.     THIS COURT ORDERS that Canadian Claimants shall be responsible for the fees and disbursements of the Representative Counsel subject to further order of this Honourable Court.

5.     THIS COURT ORDERS that any Affected Person shall be entitled to apply to this Honourable Court for relief from time to time.

6.     THIS COURT ORDERS that Pierre Le Bourdais be and is hereby discharged as information officer in these proceedings and Richard C. Finke is hereby appointed information officer in these proceedings.

JOSEPH P VAN TASSEL
REGISTRAR
ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO

FEB 2 2 2006

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36. AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC

Court File No: 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE

Proceeding commenced at Toronto

ORDER

**OGILVY RENAULT LLP**
Barristers & Solicitors
Suite 3800, PO Box 84
Royal Bank Plaza, South Tower

200 Bay Street
Toronto, Ontario M5J 2Z4

DERRICK C. TAY
LSUC #211152A
Tel:    416.216.4832
Fax:    416.216.3930

**ORESTES PASPARAKIS**
LSUC # 36851T
Tel: 416.216.4815
Fax: 416.216.3930

Solicitors for the Applicant

This is Exhibit ` B ` mentioned and
referred to in the affidavit of
*Hikle Mozaffar*
Sworn before me this  4th      day of
*December*    A.D. 20 09
A Commissioner for taking affidavits

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., et al.,[1] | Case No. 01-1139 (JKF) |
| Debtors. | Jointly Administered |
| | Re: Docket Nos. 19581, 19582, 19620, and 19695 |
| | Hearing Date: 10/27/08 at 9:00 a.m. (Eastern)<br>Objection Deadline: 10/17/08 at 4:00 p.m. (Eastern) |

OBJECTION OF HER MAJESTY THE QUEEN IN RIGHT OF CANADA TO (I) THE
DEBTORS' DISCLOSURE STATEMENT FOR THE JOINT PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R.
GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL
INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS'
REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY
HOLDERS AND (II) THE MOTION OF THE DEBTORS FOR AN ORDER

---

[1]    The Debtors are the following entities: W.R. Grace & Co. (f/k/a Grace Specialty Chemicals Inc.),
W.R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land
Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc.,
Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del
Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), ECARG, Inc.,
Five Alewife Boston Ltd., GC Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I,
Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management
Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities
Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace
Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace
Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel
Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings,
Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated,
Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.R. Grace Capital
Corporation, W.R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land
Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai
Development Company, LB Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc.,
Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe
Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco,
Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association,
Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating
Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street
Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-
Gulch West Coal Company, H-G Coal Company.

1

## APPROVING DISCLOSURE STATEMENT, SOLICITATION AND CONFIRMATION PROCEDURES, CONFIRMATION SCHEDULE AND RELATED RELIEF

Her Majesty the Queen in Right of Canada (the "Crown"), by and through its undersigned counsel, hereby objects (the "Objection") to the Debtors' Disclosure Statement for the Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of September 19, 2008 (Docket No. 19581) (the "Disclosure Statement") and to the Motion of the Debtors for an Order Approving Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief (Docket No. 19620) (the "Solicitation Motion"), and in support of this Objection states as follows:

### BACKGROUND AND INTRODUCTION

1.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession.

2.      On September 19, 2008, the Debtors filed the Disclosure Statement. In connection with the Disclosure Statement, the Debtors also have provided a copy of the accompanying Exhibit Book, which identifies twenty-four exhibits to the Disclosure Statement, including as Exhibit 1 the Debtors' proposed plan of reorganization (the "Plan") and as Exhibit 9 the CDN ZAI Minutes of Settlement dated September 2, 2008.

3.      On September 25, 2008, the Debtors then filed the Solicitation Motion, seeking approval of the Disclosure Statement. On the same day, the Debtors also filed a motion to shorten notice with respect to the Solicitation Motion (Docket No. 19621) (the "Motion to

Shorten"). The Court entered an order granting the Motion to Shorten on October 1, 2008 (Docket No. 19662).

4.    As detailed below, among other objections, the Crown specifically objects to the failure of the Disclosure Statement to disclose how the Crown contribution and indemnity claim is being addressed and the failure of the Disclosure Statement to disclose the on-going dispute between the Crown and Grace in respect of this Crown claim.

### CCAA Proceedings and Representative Counsel Order

5.    On November 14, 2005, as a result of the commencement of the class action proceedings in Canada, Grace sought from and was granted an order pursuant to s. 18.6(4) of the *Companies' Creditors Arrangement Act* (the "CCAA") *In the Matter of S. 18.6 of the Companies' Creditors Arrangement Act, R.S.C. 1984, c. C-36, As Amended and In the Matter of Grace Canada, Inc.*, Court File 01-CL-4081 (the "CCAA proceeding") by the Ontario Superior Court of Justice (Commercial List), acting as an ancillary court, giving effect in Canada to the stay of proceedings granted by the US Court, staying proceedings and prohibiting the commencement or continuation of any asbestos related suits against Grace and Canada without further order of the CCAA court.

6.    There are currently ten class actions in which the Crown has been sued that have been filed across Canada concerning claims that relate to the cost of removal, diminution of property value or economic loss allegedly caused by Zonolite Attic Insulation manufactured by the Debtors. W.R. Grace and or its affiliated companies are co-defendants with the Crown in all but the first of these class actions, which are as follows:

- Viviane Brosseau et al v. Attorney General of Canada, Superior Court of Quebec, District of Montréal, 500-06-000286-050 (no claim against the Grace companies);

3

- Dextras et al v. Attorney General of Canada, W.R. Grace & Co. et al. Superior Court of Quebec, District of Montréal, 500-06-000258-042;

- Raven Thundersky et Rebecca Bruce v. Attorney General of Canada, W.R. Grace & Co., Court of Queen's Bench of Manitoba;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al. Federal Court, Saskatchewan;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al. Court of Queen's Bench of Saskatchewan;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al. Court of Queen's Bench of Alberta;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al. Supreme Court of British Colombia;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Province of Quebec, District of Hull;

- Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al. Court of Queen's Bench of Manitoba; and

- Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al. Ontario Superior Court of Justice.

7.    In the aforementioned class actions, the petitioners seek to represent all Canadians who have suffered past or will suffer future property damage and personal injury due to exposure to Zonolite Attic Insulation and allege, among other things, that the Crown has breached a duty to warn and breached fiduciary duties owing to aboriginals.

8.    An action has also been instituted by the Province of Manitoba, *Her Majesty The Queen in the Right of the Province of Manitoba v. Attorney General of Canada, W.R. Grace & Co. et al.*, Court of Queen's Bench of Manitoba. The Province of Manitoba has sued the Crown and the manufacturer of Zonolite for the cost of insured health services paid or to be paid to the named plaintiffs in Thundersky and all other persons determined to be class members in the Thundersky case.

4

WCSR 39979094.9

9.     In the event that the Crown and the manufacturers are held jointly and severally liable to the Canadian ZAI Claimants, the Crown seeks contribution and indemnification from the manufacturers who are liable, including the Debtors W.R. Grace et al.  On or about January 31, 2006, the Crown filed two separate claims against the Grace Parties in the Chapter 11 proceedings in the United States (the "Crown Claim"):

> a.     an "Asbestos Property Damage Proof of Claim Form" seeking contribution and indemnity from W.R. Grace and related companies for any damages the Crown might be found liable for in respect of ZAI. The claim specifically indicated that it was filed for "protective reasons" only and in recognition that no claims bar date had yet been set in respect of PI claims; and

> b.     a "Non-Asbestos Proof of Claim Form" also seeking contribution and indemnity from W.R. Grace and related companies for any damages the Crown might be found liable for in respect of ZAI.

10.     In addition to the Crown's claim for contribution and indemnification, the Crown also has direct claims against the Debtors in respect of costs incurred to seal attics and otherwise remediate ZAI installed in Crown owned properties in homes built on military bases and Native reserves.

11.     On February 8, 2006, Justice Farley of the Ontario Superior Court (the "CCAA Court") made two orders in respect of the capacity of the CCAA Representative Counsel.  The first order appointed Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins, LLP to act as representative counsel on behalf of all persons who have, or at any time in the future may have, a claim arising out of or in any way connected to damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of ZAI products in Canada (the "Canadian ZAI Claimants") "to negotiate *on behalf of* the Canadian Claimants *with* the Applicant, the Crown, and the U.S. Debtors, the Affiliated Entities and any other person or entity" (the "CCAA Representative Counsel Order").

5

12.    The second order made by Justice Farley on February 8, 2006 provided that, notwithstanding the CCAA Representative Counsel Order, nothing shall preclude Aikins MacAulay Thorvaldson from acting on behalf of Raven Thundersky (the representative counsel for aboriginal claimants) or any other party in respect of Canadian claims as against any party other than Grace and that Raven Thundersky shall not be precluded from participating in the CCAA proceedings in respect of Canadian claims as deemed appropriate by the CCAA court. This second order therefore permits separate treatment and representation in respect of ZAI claims against the Crown.

13.    On September 2, 2008, Grace and the Canadian CCAA Representative Counsel entered into Minutes of Settlement (the "Settlement") purporting to resolve all Canadian ZAI claims ("CDN ZAI Claims") as against the Grace Parties. The Crown was not a party to this Settlement. To date the Crown has been unable to reach an agreement to resolve the ZAI Claims against the Crown or the Crown Claim for contribution and indemnity from Grace.

14.    CDN ZAI Claims are defined in the Settlement as CDN ZAI PD claims or CDN ZAI PI Claims. CDN ZAI PD Claims expressly include any "ZAI PD Claims asserted or to be asserted by the Crown". An example of the Crown's PD claim is the Crown's claim in respect of the containment of ZAI in military homes in Canada, which work was paid for by the Crown.

15.    The Crown acknowledges that the CCAA Representative Counsel have the authority, pursuant to the CCAA Representation Order, to negotiate on behalf of CDN ZAI PD claimants and CDN ZAI PI claimants which authority includes the power to negotiate on behalf of aboriginal claimants and on behalf of the Crown in respect only of the Crown's PD Claim against the Grace Parties. However, the Crown disputes the authority of the CCAA Rep Counsel to purport to negotiate away the Crown's Chapter 11 'claim over' for contribution and indemnity

6

18

against the Grace Parties, when Representative Counsel have a conflict of interest in the group they purport to represent. This conflict is highlighted by the elimination of the Crown's contribution and indemnity claims while at the same time expressly reserving the CDN Claimants' right to pursue so-called 'independent' or several claims against the Crown in paragraph 13(b)(iv) of the Settlement.

16.    On September 30, 2008, Justice Morawetz, of the CCAA Court acting pursuant to this Court's Request of Aid and Assistance, heard argument on whether to approve the Settlement. The Crown advised the CCAA Court that it supported the Settlement as "fair and reasonable", *provided that* the Settlement did not impair the Crown's separately filed U.S. Chapter 11 Crown Claims for contribution and indemnity against the Grace Parties and provided that it did not impair the Crown's right to commence a third party claim against the Grace Parties to seek contribution and indemnity in any ZAI related action, even if sued on a several basis, which claims the Crown argued were neither a CDN ZAI PD nor a CDN ZAI PI claim.

17.    The decision on the motion remains under reserve by Justice Morawetz.

## OBJECTION

### I.    THE DISCLOSURE STATEMENT SHOULD NOT BE APPROVED.

18.    Bankruptcy Code section 1125(b) provides that during the confirmation process, a plan proponent must present "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). Section 1125(a) defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records, . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a). The Crown maintains that in

7

several respects, the Disclosure Statement does not provide a hypothetical investor with information that is sufficient in detail to allow it to make an informed judgment about the plan.

## A. The Disclosure Statement Should Disclose That The Crown's Claims For Contribution And Indemnification For Personal Injury And Breach Of Fiduciary Duty Were Not Settled Pursuant To The CDN ZAI Minutes Of Settlement.

19. The Crown maintains that its claims for contribution and indemnification for personal injury and breach of fiduciary duty were not settled pursuant to the CDN ZAI Minutes of Settlement. As set forth above, the Crown was not involved in any of the negotiations leading up to the Canadian ZAI Settlement, and believes that the results of that settlement do not have any effect on the Crown's claims for contribution and indemnification for personal injury and breach of fiduciary duty. Rather, those claims have not been settled, and remain subject to ongoing litigation and dispute.

20. Section 2.8 of the Disclosure Statement describes and discusses the Debtors' ongoing litigation matters. However, that section does not make any disclosures regarding the Debtors' ongoing litigation with the Crown with respect to the aforementioned claims. In order for the Disclosure Statement to contain adequate information, the Disclosure Statement should be amended to include a new Section 2.8.6 to describe the Crown's contribution and indemnification claims for personal injury and breach of fiduciary duty, and should affirmatively state in that new section that the Crown believes that such claims have not been settled but rather are the subject of ongoing litigation and dispute.

21. Additionally, with respect to the Crown's fiduciary duty claims, the Disclosure Statement should be amended to clarify the class into which the Debtors have classified such claims. The Crown maintains that such claims were not settled pursuant to the CDN ZAI Minutes of Settlement. Consequently, the Disclosure Statement should be amended (i) to clarify

8

that such claims are not classified within Class 8 CDN ZAI PD Claims, and (ii) to specify into
which other class such claims are classified.

## B.    The Disclosure Statement Should Disclose That The Plan Blatantly Disregards The Absolute Priority Rule.

22.    As a preliminary matter, the Crown objects to the Disclosure Statement because it
fails to disclose that the Plan blatantly disregards the absolute priority rule. Specifically, the
Bankruptcy Code provides that a plan normally may be confirmed if it meets certain
requirements, including that each and every class either accepts the plan or does not suffer any
impairment under the plan. See 11 U.S.C. § 1129(a)(i) ("The court shall confirm a plan only if
all of the following requirements are met: (i) With respect to each class of claims or interests --
(A) such class has accepted the plan; or (B) such class is not impaired under the plan."). The
Bankruptcy Code, however, provides an alternative regime for confirmation, commonly referred
to as "cram down." Specifically, a debtor may confirm a plan even if one of the impaired classes
does not accept the plan, so long as the plan is (among other things) fair and equitable. See id.
§ 1129(b)(1) "[I]f all of the applicable requirements of subsection (a) of this section other than
paragraph (8) are met[, the court] shall confirm the plan notwithstanding the requirements of
such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect
to each class of claims or interests that is impaired under, and has not accepted, the plan.").

23.    The Bankruptcy Code provides that in order to meet the "fair and equitable"
requirement of this cram down regime, it must comply with what is known as the "absolute
priority rule." Specifically, it must be the case that each creditor in the dissenting class either
receives the full value of the allowed amount of its claim, or alternatively that the creditors in
junior classes do not receive any distribution. See 11 U.S.C. § 1129(b)(2)(B)(ii) (requiring that
for "a plan [to] be fair and equitable with respect to a class" for purposes of cram down, it must

9

be the case that "the plan provides that each holder of a claim of such class receive . . . the allowed amount of such claim" or, alternatively, "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property . . . ."); see also In re Armstrong World Indus., Inc., 432 F.3d 507, 508 (3d Cir. 2005) (affirming denial of confirmation because plan violated absolute priority rule).

24.     The Disclosure Statement and Plan directly contravene the requirements of the absolute priority rule:

> a.     The Crown's claims for indemnification and contribution for personal injuries have been classified within Class 6 Asbestos PI Claims. See supra Part I.C (discussing, and disputing, classification of the Crown's claims for indemnification and contribution for personal injuries). Class 6 Asbestos PI Claims are impaired under the Plan. See Disclosure Statement § 1.2.1 (stating that Class 6 Asbestos PI Claims will be resolved pursuant to the Asbestos PI Trust Agreement, and that holders of such claims will receive an "[u]nknown" amount); see also Plan § 3.1.

> b.     The Crown's property damage claims against the Debtors (both its direct property damage claims as well as its contribution and indemnification claims for property damage) have been classified within Class 8 CDN ZAI PD Claims. See supra Part II (discussing, and disputing, classification of the Crown's property damage claims). Class 8 CDN ZAI PD Claims are impaired under the Plan. See Disclosure Statement § 1.2.1 (stating that Class 8 CDN ZAI PD Claims will be resolved pursuant to the CDN ZAI Minutes of Settlement, and that holders of such claims will receive an "[u]nknown" amount); see also Plan § 3.1.

25.     Notwithstanding that Classes 6 and 8 are impaired under the Plan, classes that are junior in priority to Classes 6 and 8 are unimpaired under the Plan. Specifically, the Disclosure Statement provides that each holder of allowed Class 7 Asbestos PD Claims "shall be paid the Allowed Amount of its Allowed Asbestos PD Claim in Cash in full . . . ." Disclosure Statement 1.2.1 (listing estimated percentage recovery for Class 7 as "100%"). Likewise, the Disclosure Statement provides that each holder of allowed Class 9 General Unsecured Claims "shall be paid

the Allowed Amount of its Allowed General Unsecured Claim with postpetition interest . . . in Cash in full . . ." Disclosure Statement 1.2.1 (listing estimated percentage recovery for Class 9 as "100%"). Finally, the Disclosure Statement provides, with respect to Class 11 Equity interests in Debtors Other than the Parent, that "[t]he Plan leaves unaltered the legal, equitable, and contractual rights to which each Equity Interest in the Debtors other than the Parent entitles the Holder of such Equity Interest." Disclosure Statement 1.2.1 (listing estimated percentage recovery for Class 11 as "100%"). Even the class that is junior to Classes 6 and 8 that is impaired still is retaining rights under the Plan. Specifically, the Plan and Disclosure Statement provide that with respect to Class 10 Equity Interests in the Parent, that such interests shall be retained, subject to the issuance of the Warrant and the terms of the Share Issuance Agreement (as such terms are defined therein). See Disclosure Statement § 1.2.1; Plan § 3.1.10(b).

26.    The Debtors have blatantly disregarded the absolutely priority rule. Specifically, they have stated that even if a class does not accept the Plan, the Debtors nonetheless are seeking confirmation of the Plan pursuant to the cram-down regime. See Disclosure Statement § 4.6 ("Section 6.5.1 of the Plan deals with confirmation in the event an impaired Class rejects the Plan. Impaired Equity Interests in the Parent and/or impaired Classes of Plan claims that fail to accept the Plan may be "crammed down" in accordance with Bankruptcy Code § 1129(b)."); id. § 8.2.1 (summarizing cram-down regime and stating that "[i]n the event one or more Classes of impaired Claims or Equity Interests rejects the Plan, the Debtors reserve the right to proceed with confirmation pursuant to Bankruptcy Code § 1129(b), and the Bankruptcy Court will determine, at the Confirmation Hearing, whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired Class of Claims or Equity Interests"); see also Plan § 6.5.1 ("With respect to impaired Equity Interests in the Parent, and subject to Section 6.of this

Plan [addressing acceptance by Classes 6 and 7 pursuant to Bankruptcy Code section 524(g)], with respect to any impaired Class of Plan claims that fail to accept this Plan in accordance with Bankruptcy Code §§ 1126 and 1129(a), the Plan Proponents request, to the extent consistent with applicable law, that the Court confirm this Plan in accordance with Bankruptcy Code § 1129(b) with respect to such non-accepting Class of Equity Interests and such non-accepting Class of Plan Claims (if any), and this Plan constitutes a motion for such relief."). This is so despite the fact that the Plan violates the absolute priority rule, in direct contravention of Bankruptcy Code section 1129(b).

27.    The Disclosure Statement does not disclose that the Plan violates the absolute priority rule. To the contrary, the Disclosure Statements states in the section identifying risk factors that "[a]lthough the Debtors believe that the Plan will satisfy all requirements necessary for confirmation, there can be no assurance that the Bankruptcy Court will reach the same conclusion." Disclosure Statement § 9.2.3.

28.    The Crown requests the Court to require the Debtors to amend the Disclosure Statement to expressly disclose the Plan's violation of the absolute priority rule, or alternatively, require the Debtors to amend the Disclosure Statement and Plan in order to bring them into compliance with the requirements of that rule. Specifically, the Debtors should not be allowed to maintain, in sections 4.6 and 8.2.1 of the Disclosure Statement or section 6.5.1 of the Plan, that they are seeking confirmation of the Plan pursuant to Bankruptcy Code section 1129(b) when, in fact, the Disclosure Statement and Plan in their current form directly violate the requirements of that section.

12

C.    **The Disclosure Statement Should Disclose The Existence Of A Dispute Regarding Whether The Crown's Contribution And Indemnification Claims May Be Subject To A Channeling Injunction Or Discharged.**

29.    With respect to contribution and indemnification claims for personal injuries, while the Disclosure Statement does not expressly and clearly state into which class such claims fall, the Crown anticipates that the Debtors would treat such claims as classified within Class 6 Asbestos PI Claims. Specifically, the Plan defines a "Canadian Claim" as "any Claim . . . against any of the Debtors . . . based on, arising from, or attributable to exposure to asbestos from the Debtors' asbestos containing products in Canada or the use in Canada of the Debtors' asbestos containing products, including any such Claim . . . that seeks reimbursement, contribution, or indemnification (contractual or otherwise)." Plan § 1.1(51). The Plan in turn defines a "CDN ZAI PI Claim" as "a Canadian Claim . . . including . . . (y) all cross-claims, contribution claims, subrogation claims, reimbursement claims or indemnity claims . . . based on, or arising out of, resulting from, or attributable to, directly or indirectly from: . . . (b) the presence of or exposure at any time to ZAI that was mined . . . in Canada . . . ." Plan § 1.1(61)(b). The Plan in turn defines an "Asbestos PI Claim" to include "any and all CDN ZAI PI Claims and related Demands against any of the Debtors . . . ." Plan § 1.1(32)(iii).

30.    With respect to contribution and indemnification claims for property damage, the Debtors treat such claims as classified within Class 8 CDN ZAI PD Claims. Specifically, the Plan defines a "CDN ZAI PD Claim" as "a Canadian Claim against . . . any of the Debtors . . . including . . . contribution claims, subrogation claims, reimbursement claims or indemnity claims . . . , for . . . property damage located in Canada, including the cost of removal, abatement, or diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, by the ZAI sold . . . by one or more of the Debtors . . . ." Plan at p. 15.

31.     The Disclosure Statement then improperly provides that both the Class 6 Asbestos PI Claims, as well as the Class 8 CDN ZAI PD Claims, are channeled to various trusts. Specifically, the Class 6 Asbestos PI Claims are channeled to the Asbestos PI Trust. See Disclosure Statement § 1.2.3. ("The Asbestos PI Trust will, among other things, (1) assume liability for all Asbestos PI Claims (whether now existing or arising at any time in the future) . . . . The Asbestos PI Trust will be the only Entity that a Holder of an Asbestos PI Claim may look to for recovery on account of such a Claim." (emphasis in original)). The Class 8 CDN ZAI Claims are channeled to the CDN ZAI PD Claims Fund. See Disclosure Statement § 1.2.5 ("CDN ZAI PD Claim will be channeled to, and paid from, the CDN ZAI PD Claims Fund according to the CDN ZAI Minutes of Settlement. The CDN ZAI PD Claims Fund will be the only Entity that a Holder of an CDN ZAI PD Claim may look to for recovery on account of such a Claim." (emphasis in original)).

32.     It is conceivable if not likely, that some of the Crown's contribution and indemnity claims in respect of PI and PD claims will be the shortfall of any amounts found to be owing to these claimants but not paid by Grace. Those amounts, and accordingly the Crown's liability will not be known until some time in the future. The Plan does not disclose how these future contingent claims will be dealt with in a fair and equitable manner. Nor has Grace negotiated a resolution of these claims with the Crown.

33.     Moreover, the Debtors' purported basis for channeling the Asbestos PI Claims to the Asbestos PI Trust and the CDN ZAI PD Claims to the CDN ZAI PD Claims Fund is Bankruptcy Code section 524(g). See Disclosure Statement § 4.7.2.1 ("[T]he Asbestos PI Trust shall be created pursuant to section 524(g) of the Bankruptcy Code . . . . The purpose of the Asbestos PI Trust shall be to, among other things: (i) assume the liabilities of the Debtors with

respect to all Asbestos PI Claims . . . ."); id. § 4.8.3.1 ("[T]he sole recourse of a Holder of a CDN ZAI PD Claim . . . shall be to the CDN ZAI PD Claims Fund as set forth in the CDN ZAI Minutes of Settlement." (emphasis in original)).

34.     The Crown maintains that its claims for indemnification and contribution (whether for personal injuries, property damage or breach of duty including duty to warn or fiduciary duty claims) are not of the type that are subject to Bankruptcy Code section 524(g). Specifically, the injunction that is implemented by that section addresses only the liabilities of a debtor that, as of the petition date, was named as a defendant in personal injury, wrongful death, or property damage actions. See 11 U.S.C. § 524(g)(2)(B)(i)(I) (requiring that "the injunction is to be implemented in connection with a trust that . . . is to assume the liabilities of a debtor which at the time of entry of the order for relief has been named as a defendant in personal injury, wrongful death, or property-damage actions"). The Crown believes that its Crown Claims are in the nature of indemnification and contribution, not personal injury, wrongful death, or property damage, fall outside the scope of this section.

35.     The Crown further believes that its claims may not even be claims that are subject to the automatic stay or that are capable of being discharged by the Plan. The Bankruptcy Code defines a "claim" as a "right to payment." 11 U.S.C. § 101(5). Therefore, because the Crown may not have a "claim" as defined in the Bankruptcy Code until its right to payment arises, the Crown's claims may be treated as post-confirmation claims against the reorganized debtor, not subject to the automatic stay and not subject to compromise or discharge by the Plan. See Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.), 744 F.2d 332, 335-36 (3d Cir. 1984) (reversing district court, and concluding that the automatic stay did not apply to

indemnification and contribution claims that relate to a debtor's prepetition acts but for which the claimant did not have a right to payment until after the petition date).

36.    Therefore, the Crown requests the Court to require the Disclosure Statement to be amended to disclose the existence of the dispute regarding whether the Crown's contribution and indemnification claims (whether for personal injuries or property damage or other "independent" or "several" claims against the Debtors) are properly channeled to the section 524(g) injunction and whether they are subject to the automatic stay and to being discharged.

D.    **The Disclosure Statement Should Disclose The Crown's Belief That The Plan Was Not Proposed In Good Faith.**

37.    The Crown further objects to the Disclosure Statement because it fails to disclose that the Plan was not proposed in good faith.[7]    The Bankruptcy Code provides that a plan normally may be confirmed only if, among other things, it was proposed "proposed in good faith."    11 U.S.C. § 1129(a)(3).

38.    The Crown maintains that the Plan has not been proposed in good faith because, as set forth above, the Crown was not involved in any of the negotiations leading up to the Canadian ZAI Settlement which settlement purports to dispose of the Crown Claim.

39.    Moreover, section 2.7 purports to define Asbestos claims as claims for personal injury from asbestos exposure and asbestos-related property damage Claims.    The Plan's effectuation of the Asbestos PI Settlement does not reflect an agreement with the Crown on how its indemnification and contribution claims should be treated, and instead constitutes a concerted action among the Debtors, the Official Committee of Asbestos Personal Injury Claimants, and the Asbestos PI Future Claimants' Representative to satisfy asbestos personal injury claimants

---

[7]    The Crown fully concedes that it is premature for the Court to consider whether the Plan was proposed in good faith, and that the Crown's substantive arguments regarding that issue will be presented in connection with the hearing on the confirmation of the Plan. However, the Crown does maintain that a hypothetical investor would be unable to make a knowledgeable decision with respect to the Plan without knowing, at a minimum, that such a dispute exists.

while leaving the Crown with no assurance of a fair and equitable distribution. The Crown requests that the Court require the Disclosure Statement to be revised to disclose the existence of this dispute.

## II.     THE SOLICITATION MOTION SHOULD BE DENIED.

40.     As set forth above, the Crown is asserting independent Crown claims for contribution and indemnity which it asks be included as Class 9 – General Unsecured Claims. As such, the Crown asserts that the Crown, and not the CCAA Representative Counsel should be the party solicited to vote in respect of this claim.

41.     The Solicitation Motion provides that the Debtors anticipate that the CCAA Representative Counsel (which is defined as Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP) will be the only party who will be solicited to vote on the Plan with respect to the Class 8 CDN ZAI PD Claims. See Solicitation Motion ¶27(e). The Crown objects to this provision of the Solicitation Motion, and maintains that, as a member of the impaired class of CDN ZAI PD Claims, it should be entitled to vote on the acceptance or rejection of the Plan in relation to the Crown Claim.

42.     Finally, the Solicitation Motion provides that Indirect PI Trust Claims will be estimated, for purposes of voting on the plan, at $1.00 each. See Solicitation Motion ℂ 28(A)(II) ("Each Holder of an Indirect PI Trust Claim will have a single vote in the amount, for voting purposes only, of $1.00, which is solely for voting purposes and does not constitute an allowance of such Claims for purposes of distribution"). The Debtors have provided no basis for such an estimation, and the Crown maintains that it is improper to estimate its indemnification and contribution claims (to the extent that such claims constitute Indirect PI Trust Claims), even for voting purposes, at such a nominal amount.

17

29

### RESERVATION OF RIGHTS

43.    The Crown reserves all rights to raise additional arguments to the Disclosure Statement and/or the Solicitation Motion either at or prior to any hearing with respect to such matters. The Crown further reserves all rights to raise arguments regarding the confirmation of the Plan, or any amended plan, at or prior to any hearing with respect to such matters.

WHEREFORE, the Crown respectfully requests that this Court sustain the Objection and limit any relief granted with respect to the Disclosure Statement and Solicitation Motion as set forth herein; and that the Court grant such other and further relief as it deems just and proper.

Dated: October 17, 2008                        Respectfully submitted,

                                 **Womble Carlyle Sandridge & Rice, PLLC**

                                 By:     /s/ Matthew P. Ward
                                         Francis A. Monaco, Jr. (#2078)
                                         Kevin J. Mangan (#3810)
                                         Matthew P. Ward (#4471)
                                         222 Delaware Avenue, Suite 1501
                                         Wilmington, DE 19801
                                         Ph: (302) 252-4320
                                         Fax: (302) 252-4330

                                         Counsel for Her Majesty the Queen in Right
                                         of Canada as represented by the Attorney
                                         General of Canada

WCSR 3997989v9

36

This is Exhibit " D " mentioned and
referred to in the affidavit of
*Hilda Mocaffar*
Sworn before me this  4 th       day of
*December*  A.D. 20 09
A Commissioner for taking affidavits

37

COURT FILE NO.: 01-CL-4081
DATE: 20081023

SUPERIOR COURT OF JUSTICE – ONTARIO
(COMMERCIAL LIST)

RE:            IN THE MATTER OF S. 18.6 OF *THE COMPANIES' CREDITORS
               ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, as amended

               AND IN THE MATTER OF GRACE CANADA, INC.

BEFORE:        MORAWETZ J.

COUNSEL:       Derrick C. Tay, Orestes Pasparakis and Jennifer Stam for Grace
               Canada Inc.

               Keith J. Ferbers for Raven Thundersky

               Alexander Rose for Sealed Air (Canada)

               Michel Bélanger, David Thompson, and Matthew G. Moloci,
               Representative Counsel for CDN ZAI Claimants

               Jacqueline Dais-Visca and Carmela Maiorino for The Attorney
               General of Canada

HEARD:         SEPTEMBER 30, 2008

## E N D O R S E M E N T

[1]    Grace Canada Inc. ("Grace Canada" and with the U.S. debtors, "Grace") bring this
motion to seek approval of the Minutes of Settlement ("the Minutes") in respect of claims
against Grace relating to the manufacture and sale of Zonolite Attic Insulation ("ZAI") in
Canada (the "CDN ZAI Claims").

[2]    Under the Minutes, Grace agrees to:

       (a)     fund a broad multimedia notice programme across Canada;

       (b)     establish a trust with $6.5 million for the payment of Canada ZAI property
               damage claims; and

       (c)     channel any Canadian ZAI personal injury claims to a U.S. asbestos trust
               which will have in excess of US$1.5 billion in funding.

- 2 -

[3]    In consideration, Grace would be discharged of any liability in connection with CDN ZAI Claims

[4]    Although there was no direct opposition to the terms of the Minutes as being fair and reasonable, certain parties proposed amendments to the form of order sought by Grace.

[5]    Grace submits that the Minutes ought to be approved in the form submitted. Counsel submitted that Grace's significant settlement contribution is manifestly fair and reasonable, given Grace's defences to CDN ZAI Claims and, in particular, the judicial determination by the U.S. Bankruptcy Court (the "U.S. Court") that ZAI does not pose an unreasonable risk of harm.

[6]    Further, counsel to Grace submits that the Minutes are an important step towards the successful reorganization of Grace and with this settlement, these insolvency proceedings, which were filed in April 2001, are nearing completion.

[7]    W. R. Grace & Co. and its 61 subsidiaries (the "U.S. Debtors") have filed a joint Chapter 11 plan of reorganization (the "Plan") with the U.S. Court and expect to commence a confirmation hearing for the Plan in early 2009.  The Plan incorporates the terms of the settlement before this Court and if confirmed, sees Grace emerging from Chapter 11 protection in 2009.

[8]    The chain of events that resulted in the Minutes began in 1963 with Grace's purchase of the assets of the Zonolite Company ("Zonolite"). Zonolite mined and processed vermiculite from a mine near Libby, Montana (the "Libby Mine"). Vermiculite is an insulator which apparently has no known toxic properties.  However, the vermiculite ore from the Libby Mine contained impurities, including asbestiform minerals

[9]    One of the products made from the U.S. Debtors' vermiculite was ZAI.  ZAI was installed in attics of homes.  Some ZAI contained trace amounts of asbestos.

[10]    In addition, 40 years ago the U.S. Debtors manufactured a product known as monokote-3 ("MK-3") which had chrysotile asbestos added during the manufacturing process.

[11]    Grace stopped manufacturing MK-3 in Canada by 1975 and ceased production of ZAI in 1984 and closed the Libby Mine in 1990.

[12]    By the 1970s, the U.S. Debtors began to be named in asbestos-related lawsuits. These included both asbestos-related personal injury claims ("PI Claims") and property damage claims relating to ZAI.

[13]    Due to a rise in the number of PI Claims in 2000 and 2001, the U.S. Debtors filed for protection under Chapter 11 of the *United States Bankruptcy Code* on April 2, 2001.

[14]    Grace Canada was incorporated in 1997.  According to the affidavit of Mr. Finke, it had no direct involvement in any historic use of asbestos.

17-03 2008  14:48          JUDGES ADMIN RM 170          410 327 5417    P.004/011

39

- 3 -

[15] Rather, Grace's historic business operations in Canada were undertaken by a company now known as Sealed Air (Canada) Co./CIE ("Sealed Air Canada"). Sealed Air Canada is the successor to the Canadian companies with past involvement in the sale and distribution of ZAI and asbestos containing products such as MK-3.

[16] Sealed Air Canada was spun-off from Grace in 1998 and as part of the transaction, Grace Canada and the U.S. Debtors provided certain indemnities to Sealed Air Canada and its parent, Sealed Air Corporation, relating to historic asbestos liabilities.

[17] On April 4, 2001, two days after the Chapter 11 proceedings had been commenced, Grace Canada commenced these proceedings. The Canadian CCAA proceedings were commenced seeking ancillary relief to facilitate and coordinate the U.S. proceedings in Canada. An initial order was granted by this Court pursuant to s.18.6(4) of the CCAA (the "Initial Order").

[18] By 2005, despite the Initial Order, 10 proposed class actions (the "Proposed Class Actions") were commenced across Canada in relation to the manufacture, distribution and sale of ZAI. Grace Canada, some of the U.S. Debtors and Sealed Air Canada were named as defendants, as was the Attorney General of Canada (the "Crown").

[19] The allegations in the Proposed Class Actions include both ZAI PI Claims as well as damages for the cost of removing ZAI from homes across Canada ("CDN ZAI PD Claims").

[20] On November 14, 2005, an order was issued (the "November 14th Order") enjoining the Proposed Class Actions against the U.S. Debtors, Sealed Air Canada and the Crown.

[21] As a result, the Proposed Class Actions were brought within the overall restructuring process.

[22] By order of February 8, 2006 (the "Representation Order"), Lauzon Belanger S.E.N.C. ("Lauzon") and Scarfone Hawkins LLP ("Scarfone") (jointly, "Representative Counsel") were appointed to act as the single representative on behalf of all of the holders of Canadian ZAI Claims ("CDN ZAI Claimants") to advocate their interests in the restructuring process.

[23] No one has taken issue with the authority of the Representative Counsel to represent all CDN ZAI Claimants in the U.S. Court, this Court or at any of the mediations. The Representation Order provided that Representative Counsel would, among other things, have authority to negotiate a settlement with Grace.

[24] After a long history of negotiations, on June 2, 2008, Grace, Representative Counsel and the Crown announced to the U.S. Court that they had reached an agreement in principle that remained subject to the Crown's acceptance. The Crown was not able to obtain firm instructions on whether to participate in the settlement.

[25] On September 2, 2008, Grace and Representative Counsel signed the Minutes resolving all CDN ZAI Claims against Grace and Sealed Air Canada.

OCT-23-2008  14:48       JUEGES ADMIN RM 172                416 327 5417     P.005/011

40

- 4 -

[26]   On April 7, 2008, the U.S. Debtors reached an agreement effectively settling all present and future PI Claims (the "PI Settlement") and under this agreement, the U.S. Debtors agreed to pay into trust various assets, including US$250 million, warrants to acquire common stock, proceeds of insurance, certain litigation and deferred payments and it estimates that the total value of the settlement is in excess of US$1.5 billion.  Sealed Air Canada is making a contribution to the settlement in excess of $500 million, plus 18 million shares of stock.

[27]   On September 21, 2008, the U.S. Debtors filed their draft Plan with the U.S. Court and confirmation hearings are scheduled for early in 2009.

[28]   The Minutes contemplate a settlement of all CDN ZAI Claims, both personal injury ("CDN ZAI PI Claims") and property damage, on the following terms:

    (a)   Grace agrees to provide in its Plan for the creation of a separate class of CDN ZAI PD Claims and to establish the CDN ZAI PD Claims Fund, which shall make payments in respect of CDN ZAI Claims;

    (b)   on the effective date of Grace's Plan, Grace will contribute $6,500,000 through a U.S. PD Trust to the CDN ZAI PD Claims Fund;

    (c)   Grace's Plan provides that any holder of a CDN ZAI PI Claim ("CDN ZAI PI Claimant") shall be entitled to file his or her claim with the Asbestos Personal Injury Trust to be created for all PI Claims and funded in accordance with the US$1.5 billion PI Settlement;

    (d)   Representative Counsel shall vote, on behalf of CDN ZAI Claimants, in favour of the Plan incorporating the settlement; and

    (e)   Representative Counsel shall be entitled to bring a fee application within the U.S. proceedings and any such payments received would reduce the amount otherwise payable to Representative Counsel under the Settlement.

In addition, Grace has agreed to fund a broad based media notice programme across Canada and an extended claims bar procedure for CDN ZAI PD Claims and Grace has also agreed to give direct notice to any known claimant.

[29]   Under the Minutes, the bar date for CDN ZAI PD Claims is not less than 180 days from substantial completion of the CDN ZAI Claims Notice Program.  The period for filing ZAI PD Claims in the U.S. is considerably shorter and Grace has scheduled a motion with the U.S. Court on October 20, 2008 to approve the CDN ZAI PD Claims bar date.  Grace has indicated that if granted, recognition of the U.S. order will be sought from this Court.  There will be no bar date for CDN ZAI PI Claims.

[30]   Grace has indicated that it has contemplated that monies will be distributed out of the CDN ZAI PD Claims Fund based on a claimant's ability to prove that his or her property contained ZAI and that monies were expended to contain or remove ZAI from the property.

- 5 -

Based on proof of ZAI in the home and the remediation measures taken by a claimant, that claimant may recover $300 or $600 per property.

[31]    The issues for consideration were stated by counsel to Grace as follows:

    (a)    Does Representative Counsel have the authority to enter into the Minutes on behalf of all CDN ZAI Claimants?

    (b)    Does the CCAA Court have the jurisdiction to approve the Minutes, including the relief in favour of Sealed Air Canada and the Crown?

    (c)    Are the Minutes fair and reasonable? In particular, is their prejudice to the key constituencies?

[32]    The Representation Order is clear. It gives Representative Counsel broad powers, including the ability to negotiate on behalf of CDN ZAI Claimants. No party has objected to or taken issue with the Representation Order or with the authority of Representative Counsel to represent all CDN ZAI Claims.

[33]    I am satisfied that Lauzon and Scarfone have the authority, as Representative Counsel, to enter the Minutes of Settlement on behalf of all CDN ZAI Claimants.

[34]    I am also satisfied that the CCAA Court may approve material agreements, including settlement agreements, before the filing of any plan of compromise or arrangement. See *Canadian Red Cross Society (Re)* (1998), 5 C.B.R. (4th) 299 (Ont. Gen. Div.) and *Calpine Canada Energy Limited (Re)* (2007), 35 C.B.R. (5th) p. 1 (Alta. Q.B.), leave to appeal denied (2007), 35 C.B.R. (5th) 27 (Alta. C.A.).

[35]    It is noted that, in this case, the Plan will be voted on by creditors in the U.S. proceedings.

[36]    With respect to relief in favour of Sealed Air, Grace has agreed to indemnify Sealed Air Canada for certain liabilities in connection with ZAI. As part of the settlement, Grace seeks to ensure that the release of the CDN ZAI Claims includes a release for the benefit of Sealed Air Canada.

[37]    Counsel submits that such release is not only necessary and essential, but also fair given Sealed Air Canada's contribution to the PI Settlement under the Plan in excess of $500 million. I am satisfied that, in these circumstances, the release for the benefit of Sealed Air Canada is fair and reasonable.

[38]    The Minutes also provide a limited release in favour of the Crown. Pursuant to the Minutes, the Crown's claims for contribution and indemnity against Grace (being CDN ZAI Claims) are released. Counsel submits that the corollary is that the Crown is relieved of any joint liability it shares with Grace for CDN ZAI Claims.

[39]    Counsel to Grace again submits that such a release of the Crown is necessary. Otherwise, Grace could become indirectly liable through contribution and indemnity claims.

42

- 6 -

[40]   Counsel for Grace submits that, in certain circumstances, this Court has ordered third party releases where they are necessary and connected to a resolution of the debtor's claims, will benefit creditors generally, and are not overly broad or offensive to public policy. (See. *Re. Muscletech Research and Development Inc.* (2007), 30 C.B.R. (5th) 59 (Ont. Sup. Ct.) and *ATB Financial v. Metcalfe & Mansfield Alternative Investments II Corp.* (2008), 43 C.B.R. 5th 269 (Ont. Sup. Ct.), aff'd. (2008). ONCA. 587 ("Metcalfe"), leave to appeal to S.C.C. denied.)

[41]   Subsections 18.6(3) and (4) of the CCAA, allow the Ontario Court to make orders with respect to foreign insolvency proceedings, on such terms and conditions as the Court considers appropriate.

[42]   In assessing whether to grant its approval, the Court has to consider whether the Minutes are fair and reasonable in all of the circumstances.

[43]   It is the submission of Grace that the Minutes are fair and reasonable, and that resolutions of the CDN ZAI Claims in particular do not prejudice the Crown, CDN ZAI PD Claimants or. CDN ZAI PI Claimants.

[44]   Grace also submits that, given the strong defences which it believes are available, the Minutes provide a substantial compromise by Grace, considering the circumstances in which it believes it has no liability for CDN ZAI Claims.

[45]   Early in the insolvency proceedings, the U.S. Court held a hearing to determine, as a threshold scientific issue, whether the presence of ZAI in a home created an unreasonable risk of harm. The opinion of the U.S. Court was filed as part of the record. Grace states that the U.S. Court came to the conclusion that ZAI did not pose an unreasonable risk of harm. The background and conclusions of the U.S. Court have been summarized at paragraphs 72 to 85 of the Grace factum.

[46]   I have been persuaded by and accept these submissions.

[47]   In addition, even if ZAI had been found to pose an unreasonable risk of harm, Grace submits that it still has a complete defence to any claims under Canadian law for the reasons set out at paragraphs 86 to 97 of the factum.

[48]   Further, the passage of time is such that Grace submits that many cases would be dismissed outright based on the expiry of the limitation period.

[49]   With respect to the issue of prejudice to the Crown, on the one hand, the Crown has asserted claims against Grace. The Crown has estimated that over 2,000 homes located on military bases have been remediated to contain vermiculite attic insulation or ZAI from homes built by the Canadian military. Under the Settlement, the Crown, as a CDN ZAI Claimant, would receive $300 per unit for the scaling of ZAI. Based on the Crown's records, the Crown would potentially have a claim against the Fund for up to $660,000 and if it chose to pursue this claim, the Crown would recover approximately 50% of its remediation expenditures.

- 7 -

[50]   On the other hand, the Crown is also a defendant in the Proposed Class Actions. Through the Minutes, the Crown will release its CDN ZAI Claims against Grace, but at the same time, counsel to Grace submits that the Crown is effectively released from any joint liability it may share with Grace. Grace submits that the Crown will be relieved from all CDN ZAI Claims except those for which it is severally responsible.

[51]   It is with respect to the release language that the Crown takes exception.

[52]   The Crown acknowledges that Representative Counsel has the authority to negotiate on behalf of ZAI Claimants. However, the Crown disputes the authority of Representative Counsel to purport to negotiate away the Crown's Chapter 11 "claim over" for contribution and indemnity.

[53]   The Crown supports the approval of the Settlement insofar as it purports to resolve all of Grace's liability with respect to CDN ZAI PD and PI Claims, provided that the approval order expressly recognizes that the Crown's protective "claim over" for contribution and indemnity against Grace is unimpaired by the Settlement and provided that the Approval Order expressly allows the Crown to third party Grace in ZAI related actions where the Crown is sued on a several basis.

[54]   Counsel to the Crown submits that to interpret the authority of Representative Counsel to have the power to release the Crown's "claim over" against Grace while they simultaneously reserve the right to pursue the claims against the Crown would conflict with the clear direction in the Representation Order. They submit that CCAA Representative Counsel does not represent the Crown's interest with respect to the contribution and indemnity claim, and would be in conflict of interest with respect to the members of the group it represents if it attempted to do so. They further submit that it has always been the position of the Crown that all ZAI related damages give rise to a contribution and indemnity claims against Grace and that no independent claim lies against the Crown; hence, the Crown has and will continue to assert a contribution and indemnity claim against Grace for the totality of the damages.

[55]   At the hearing, the argument of the Crown was presented without the benefit of a factum. I requested and received a factum from the Crown which was then responded to by counsel to Grace and by Representative Counsel.

[56]   In my view, the response of Grace is a complete answer to the Crown's submissions. Counsel to Grace notes that the Crown purports to support the Order sought on the proviso that its contribution and indemnity claims against Grace are unimpaired. However, the Minutes do impair the Crown's contribution claims, and with the Order, the Crown will have no claims for contribution and indemnity against Grace.

[57]   It is Grace's position that Representative Counsel has the authority to resolve and release all CDN ZAI Claims, including Crown claims for contribution and indemnity. Further, in any event, there is no prejudice to the Crown as pursuant to the Minutes, CDN ZAI Claimants have agreed that they cannot pursue the Crown for claims for which Grace is

- 8 -

ultimately responsible. Consequently, the Crown has no contribution claims to assert against Grace. Simply put, as submitted by counsel to Grace, there is nothing left.

[58]   The Representation Order applies to all claims "arising out of or in any way connected to damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of Zonolite attic insulation products in Canada".

[59]   It seems to me that the wording of the Representation Order is clear. Representative Counsel have the authority to resolve and release all CDN ZAI Claims, including Crown claims for contribution and indemnity.

[60]   With respect to the Release itself, the Minutes release any claims or causes of action for which the Crown has a right of contribution and indemnity. As submitted by counsel to Grace, Representative Counsel may not pursue the Crown in respect of claims for which Grace is ultimately liable.

[61]   Paragraph 13(b)(iii) of the Minutes provides for a release of:

> "...any claims or causes of action asserted against the Grace
> Parties as a result of the Canadian ZAI Claims advanced by
> CCAA Representative Counsel against the Crown as a result of
> which the Crown is or may become entitled to contribution or
> indemnity from the Grace Parties."

[62]   I accept the submission of counsel to Grace that the purpose of this provision is to protect Grace from indirect claims through the Crown. Since any claim for which Grace is ultimately liable cannot be pursued, the Crown has no need nor any ability to "claim over" against Grace.

[63]   The Crown also relied on an order of November 7, 2005 of Chaput J. of the Québec Superior Court in the *Brosseau* case which was one of the Proposed Class Actions. The Crown relied on the order of Chaput J. to argue that all claims against the Crown flow through Grace and that Grace is therefore ultimately responsible for any Crown liability.

[64]   I agree with the position being taken by Grace to the effect that this argument is misplaced. It was made quite clear at this hearing that the scope of any remaining Crown liability will need to be addressed at a future hearing.

[65]   Submissions were also made by counsel on behalf of Ms. Thundersky.

[66]   Counsel pointed out certain concerns and suggested that it was appropriate to alter the proposed form of order.

[67]   The first concern raised related to the issue of preservation of claims against the Crown and counsel submitted that paragraph 13(b)(iv) creates some ambiguity in this area. In my view, paragraph 13(b)(iv) of the Minutes is clear. The concluding words read as follows:

- 9 -

> "For greater certainty, nothing contained in these Minutes shall serve to discharge, extinguish or release Canadian ZAI Claims asserted against the Crown and which claims seek to establish and apportion independent and/or several liability against the Crown."

[68] I do not share counsel's concern. The issue does not require clarification. In my view, this paragraph is not ambiguous.

[69] Counsel to Ms. Thundersky also raises concern that the draft order provides that all of the legal actions in Canada be "permanently stayed" until all of the actions have formally removed the Grace Parties as defendants which would not occur until the Effective Date of any approved Plan of Reorganization. In my view, this is not a significant concern. This Court retains jurisdiction over the matters before it in these proceedings and to the extent that further direction is required, the appropriate motion can be brought before me.

[70] The third concern raised by counsel to Ms. Thundersky was with respect to the Asbestos PI Fund to be established in the U.S. process. Concerns were raised with respect to the uncertainty surrounding when and in what manner the eligibility criteria for the fund would be established. Counsel to Grace advised that Mr. Ferbers would have the opportunity to provide comment during the Plan process on this issue. I expect that this should be sufficient to alleviate any concerns but, if not, further direction can be sought from this Court.

[71] Finally, concern was also raised with respect to the absence of a personal injury notice program. Counsel to Grace advised that this issue would be communicated to those involved in the U.S. Plan. In the circumstances, this would appear to be a pragmatic response to the concern raised by counsel to Ms. Thundersky.

[72] Counsel to Ms. Thundersky acknowledged that it was difficult to propose a resolution which stayed within the four corners of the Minutes, but that Ms. Thundersky did wish to bring the foregoing concerns to the attention of the parties and the Court in the hopes that they could be taken into account.

[73] Counsel to Grace and Representative Counsel are aware of these issues and will take them into account.

[74] I indicated at the hearing that I was inclined to either approve the Minutes or to reject them. The Minutes are the product of extensive negotiation between the Representative Counsel and the Grace Parties. I am of the view that it is not appropriate for me to examine and evaluate the Minutes on a line-by-line basis, nor to amend or alter the agreement as reached between Representative Counsel and the Grace Parties.

[75] In my view, to accept the submissions of the Crown and Ms. Thundersky would leave the Court in the position of having to reject the Minutes and refuse to approve the Settlement. Having considered all of the circumstances, I do not consider this to be an appropriate outcome.

46

- 10 -

[76]  I have been satisfied that the Minutes are fair and reasonable. The Minutes have been agreed to by Representative Counsel. In my view, the Minutes do not prejudice the interests of the Crown. I am also of the view that there is no prejudice to the ZAI PD Claimants who will have access to a significant fund to assist with their remediation costs. Their alternative is more litigation which, at the end of the day, would have a very uncertain outcome. I am also of the view that there is no prejudice to the ZAI PI Claimants who will have the opportunity to make a claim to the asbestos trust in the U.S. I am satisfied that the ZAI PI Claimants will be receiving treatment that is fair and equal with other PI Claimants. Further, it is noted that counsel to Grace advised that the Thundersky family are the only known ZAI PI Claimants. Their alternative is the continuation of a claim that on its face, would appear to have been statute barred in 1994.

[77]  I also accept the conclusions as put forth by counsel to Grace. This Settlement provides CDN ZAI PD Claimants with clear recourse to the CDN ZAI PD Claims Fund and CDN ZAI PI Claimants with recourse to the Asbestos Personal Injury Trust in situations where it is Grace's view that the Canadian claims have little or no value.

[78]  I am also satisfied that third party releases are, in the circumstances of this case, directly connected to the resolution of the debtor's claims and are necessary. The third party releases are not, in my view, overly broad nor offensive to public policy.

[79]  Counsel to Grace also submitted that Representative Counsel have been continuously active and diligent in both the U.S. and Canadian proceedings and Grace is of the view that it is appropriate that a portion of the funds paid under the settlement go towards compensation of Representative Counsel's fees. I accept this submission and specifically note that the Minutes provide for specified payments to Representative Counsel, a Claims Administrator and a qualified expert to assist in the claims process, in a total amount of approximately CDN$3,250,000.

[80]  In conclusion, the Minutes, in my view, represent an important component of the Plan. They provide a mechanism for the resolution of CDN ZAI Claims without the uncertainty and delay associated with ongoing litigation.

[81]  The Minutes are approved and an order shall issue in the form requested, as amended.

MORAWETZ J.

DATE:    Endorsement released October 17, 2008

With Reasons released October 23, 2008

54

This is Exhibit " $\checkmark$ " mentioned and
referred to in the affidavit of
Hilda Mozaffar
Sworn before me this $4th$ **day of**
December , A.D. 2009
A Commissioner for taking affidavits

55

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | | W. R. GRACE & CO. CDN ZAI PD PROOF OF CLAIM FORM |
|---|---|---|
| W. R. Grace & Co., et al. | Case No. 01-1139 | |
| NOTE: Use this form **only** if you have a Canadian ("CDN") ZAI Claim related to property damage "PD" against any of the Debtors (a "CDN ZAI PD Claim"). The CDN ZAI PD Bar Date only involves claims affecting property located in Canada, and it does not include claims relating to personal injury. THE LAST DAY TO FILE A CDN ZAI PD Proof of Claim is August 31, 2009. | | |
| Name of Creditor (The injured person or other entity to whom the Debtor(s) owe money or property): SEE ADDRESS BELOW  Receiver General for Canada (for the Department of National Defence of Canada) | | THIS SPACE IS FOR COURT USE ONLY |
| Name and address where notices should be sent: Sebastien Gagne, Counsel, NATHALIE DROUIN, COUNSEL (514)283-8117  Justice Canada, Guy Favreau Complex  200 Rene Levesque Blvd West, East Tower, 7th Floor  Montreal, Quebec, Canada  Telephone Number (514) 283-7157 | | |

| 1. Building Information: | THIS SPACE INTENTIONALLY LEFT BLANK |
|---|---|
| a. Address of the building that contains ZAI:<br><br>See National Vermiculite Program Summary | This is Exhibit " P-1 " referred to in the affidavit of<br><br>MARK PETERS |
| b. Approximate date the building was constructed:<br><br>See National Vermiculite Program Summary | Sworn before me this 28th day of AUGUST, 2009 AD |
| c. Approximate date ZAI was installed in the building:<br><br>See National Vermiculite Program Summary | Commissioner for taking affidavits |
| d. Location within building where ZAI is located:<br><br>See National Vermiculite Program Summary | |
| e. What is your legal interest in the building (i.e., own or lease)?<br><br>See National Vermiculite Program Summary | William Robert Hall,<br>a Commissioner, etc., Province of Ontario,<br>for the Government of Canada,<br>Department of National Defence.<br>Expires June 11, 2011. |
| f. Date of removal of ZAI (if applicable):<br><br>N/A | |
| g. Date of containment of ZAI (remediation to contain, but not remove, the ZAI) (if applicable):<br><br>See National Vermiculite Program Summary<br>***Attach any backup documents to this form that are related to these questions. | |

| 2. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | This Space is for Court Use Only |
|---|---|
| Date: 28/08/09 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):  COUNSEL | |

KAE 11342612

7.    The total cost for the survey and the visual inspections was $1,588,221.86.  11, 864 units were surveyed and inspected.  The national average cost per unit surveyed and inspected is therefore $134, the whole as appears from tab 1 of exhibit P-3 to my affidavit;

8.    The total cost incurred for the sealing was $1,435,191.59.  2202 housing units were sealed.  The national average costs per unit sealed is therefore $ 652, the whole as appears from tab 1 of exhibit P-3 to my affidavit ;

9.    The work performed in the course of the *National Vermiculite Program* was done by outside contractors, typically hired by Defence Construction Canada [DCC];

10.   DCC is a Crown Corporation owned by the Government of Canada and specifically provides construction services, as well as environmental, commissioning and facilities management services to DND.  When DCC performs work on behalf of DND, they often recover the money through financial documentation known as Return of Funds (ROF);

11.   Attached as Exhibit P-4 are different documents, including engineering progress reports for DCC and various ROFs between CFHA and DCC, illustrating the work performed in the course of the *National Vermiculite Program* by contractors hired by DCC;

12.   Further documents substantiating DND's claim may be able to be made available if need be.

AND I HAVE SIGNED,

*Mark Pitres*

Sworn before me in the City of Ottawa,
Province of Ontario, this 28th day of
August, 2009.

COMMISSIONER FOR OATHS

William Robert Hall,
a Commissioner, etc., Province of Ontario,
for the Government of Canada,
Department of National Defence.
Expires June 11, 2011.

## AFFIDAVIT

I, THE UNDERSIGNED, Mark Peters, Senior Paralegal, Claims and Civil Litigation for the Canadian Forces Legal Advisor, under the Department of National Defence, working in Ottawa, Canada at 305 Rideau Street, hereby solemnly affirm to the best of my knowledge and belief, that:

1.  I file this affidavit, to the best of my knowledge and belief, to support DND's claim and to explain the documents supporting the claim;

2.  Following the order dated October 20, 2008 of Bankruptcy Judge Judith K. Fitzgerald, Sébastien Gagné, counsel, on behalf of the Receiver General for Canada - for property damages suffered by the Department of National Defence [DND] -, signed a CDN ZAI PD Proof of Claim Form against Grace;

3.  I attach the CDN ZAI PD Proof of Claim Form to my affidavit as exhibit P-1;

4.  In 2004, I understand that the Canadian Forces Housing Agency (CFHA) developed and implemented a *National Vermiculite Program* with respect to all housing units at bases across Canada in response to concerns about the possibility of vermiculite insulation containing asbestos, the whole as appears from the document entitled *Project Completion Report / National Vermiculite Program* prepared for the CEO, CFHA dated March 14, 2007, filed as exhibit P-2 to my affidavit;

5.  In the course of the *National Vermiculite Program*, housing units were surveyed, visual inspections were performed and units with vermiculite were sealed. The program was completed in 2006;

6.  In the binder entitled *National Vermiculite Program Summary*, I have prepared charts detailing the costs incurred by DND in relation to the costs incurred by DND for identifying and sealing vermiculite in the different housing units at the various bases across Canada as part of the National Vermiculite Program, the whole as appears from the said binder filed as exhibit P-3 to my affidavit;

275

This is Exhibit       $\lambda\omega$       mentioned and
referred to in the affidavit of
*Hilda Modaffar*
Sworn before me this   $4\text{-}th$       day of
*December*   A.D. 20x9
A Commissioner for taking affidavits



276

Direct Dial: (416) 216-4815
Direct Fax: (416) 216-3930
opasparakis@ogilvyrenault.com

SENT BY E-MAIL

Toronto, December 3, 2009

Keith Ferbers
Aikins, MacAulay & Thorvaldson LLP
30th Floor
Commodity Exchange Tower
360 Main Street
Winnipeg, Manitoba
R3C 4G1

Dear Mr. Ferbers:

### RE:    W. R. Grace & Co. et al. v. Raven Thundersky et al.

I write in response to your letter of November 30, 2009.

For ease of reference, I will use the same numbering as appears in your letter.

1.    Closing arguments regarding Confirmation of the Plan are scheduled for January 4-5, 2010. We expect the U.S. Bankruptcy Judge will take the matter under advisement and thereafter issue a written ruling on Confirmation. We do not know how long it will take for the Judge to issue such ruling so we cannot provide a "best estimate" of when a Confirmation Order will be issued. We hope to obtain the U.S. Confirmation Order by June 30, 2010, or at the latest, by December 31, 2010. The timetable is controlled solely by the U.S. Bankruptcy Court.

2.    As set out in the First Amended Joint Plan (the "Plan"), the Asbestos PI Trust will be established as of the Effective Date (as defined in the Plan). At this point, it is premature to estimate either when the Effective Date will occur or the length of the adjudication process for Canadian Asbestos PI Claims. The length of the process will vary depending on a number of factors, including the circumstances of each individual PI Asbestos Claim and the number of Asbestos PI Claims received by the Asbestos PI Trust.

OGILVY RENAULT  LLP / S.E.N.C.R.L., s.r.l.

Barristers & Solicitors
Patent & Trade-mark Agents

DOCSTOR: 1820404\2

Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, Ontario  M5J 2Z4
CANADA

T : 416.216.4000
F : 416.216.3930
toronto@ogilvyrenault.com

ogilvyrenault.com

Toronto   ·   Montréal   ·   Ottawa   ·   Québec   ·   London

277



3.  The Asbestos PI Trust Distribution Procedures ("TDP") address these issues (a current copy is attached).  Please see Sections 5.3(a), 5.3(b)(1), 5.3(b)(2), 7.6 and 8.3 in particular.

4.  There is nothing in the Asbestos PI TDP or the Trust Agreement that addresses or provides for the recovery by claimants of legal fees and expenses.

5.  As indicated in paragraph 2 above, the Asbestos PI Trust does not yet exist.  Pursuant to Section 5.1(a)(1) of the Asbestos PI TDP, the PI Trust, once established, shall make available proof of claim forms and other claims materials so that claimants may file claims with the PI Trust.  It is expected that in conjunction with this process a notice program for Asbestos PI Claimants will be developed by the Trustees of the PI Trust. There is no bar date for Asbestos PI Claims.  The Asbestos PI TDP set forth the types of compensable claims, the payment amounts and terms and the effect of statutes of limitation and repose on claims (see Section 5.1(a)(2) of the Asbestos PI TDP on this last point).

6.  The Special Counsel Application (the "Application") referenced in paragraphs 16 and 17 of the Amended and Restated CDN ZAI Minutes of Settlement (the "Amended Minutes") is in recognition of the activities undertaken and to be undertaken in the future by CCAA Representative Counsel on behalf of Canadian Claimants prior to Confirmation of the Plan.  If the Application is approved, CCAA Representative Counsel will be entitled to apply for fees and expenses for their past activities and to submit subsequent applications for any further activities they undertake on behalf of Canadian Claimants prior to Confirmation.

7.  The expected amounts to be claimed by CCAA Representative Counsel pursuant to the Application will be (subject to approval by the U.S. Bankruptcy Court) based on the work undertaken and the respective hourly rates of various counsel actually incurred.  We understand that CCAA Representative Counsel expect to apply for approximately $500,000 in fees and $42,000 in disbursements for work carried out between September 1, 2008 to date.  We do not know what CCAA Representative Counsel estimate for any future work they expect to perform prior to Confirmation.

8.  No, paragraph 20(a) of the Amended Minutes contemplates only the appointment of CCAA Representative Counsel as special counsel by the U.S. Court.  The fee application process and approval of fees requested is a separate process that does not affect approval of the Amended Settlement.  You may follow up with CCAA Representative Counsel in respect of the anticipated filing date of their Application materials.



9.

(a)    Pursuant to the Amended Minutes, Grace/Grace Canada are not subject to and will not be participating in any legal actions brought by Canadian Asbestos PI Claimants against the Crown. While Grace/Grace Canada may not be brought into any Canadian case against the Crown, the Court in such a Canadian case could apportion fault among the Crown and Grace/Grace Canada for purposes of deciding the liability of the Crown (see *Taylor v. Canada (Health)* (2009), Ont. C.A., attached). However, any claims by the Crown against Grace/Grace Canada for contribution, indemnity or otherwise would be channelled to the PI Trust to be addressed in accordance with the Asbestos PI TDP.

(b)    N/A (based on the response to 9(a) above).

(c)    Please see the response to 9(a) above.

(d)    Grace and Grace Canada will address issues, including those relating to document production, if and as they arise.

10.    This question requires a response from the Crown.

We trust the foregoing is satisfactory.

Yours very truly,

Orestes Pasparakis

OP/sk
Enclosures

cc:    Michel Bélanger, *Lauzon Bélanger*
       Jacqueline Dais-Visca, *Department of Justice Canada*
       Matt Moloci, *Scarfone Hawkins LLP*
       David Thompson, *Scarfone Hawkins LLP*

/

Court File No.: 01-CL-4081

### SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

?79

## IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36 AS AMENDED

### AND IN THE MATTER OF GRACE CANADA INC.

## AFFIDAVIT OF LILLIANNE DAVID

I, LILLIANNE DAVID, Legal Assistant with the Department of Justice Canada, of the City of Toronto, in the Province of Ontario, MAKE OATH AND SAY:

1.       I am the assistant to Jacqueline Dais-Visca, counsel with carriage of this file on behalf of the Attorney General of Canada. As such I have knowledge of the matters to which I hereinafter depose except where my knowledge is said to be based on information from others in which case I have identified the source of the information and verily believe the information to be true.

2.       Attached hereto and marked as **Exhibit "A"** to my affidavit is a true copy of the Order of Justice Chaput of the Quebec Superior Court dated November 7, 2005 in respect of a Quebec class action commenced by, among others Viviane Brosseau as court file No. 500-06-000286-050 and in relation to a second Quebec class action commenced by Jean-Charles Dextras, among others as court file No. 500-06-000258-042.

- 2 -

280

3.        On November 14, 2005, Justice Farley of the Ontario Superior Court (Commercial List), recognized the US Bankruptcy Court's stay of proceedings in favour of W.R. Grace and its affiliates and extended the protection of that stay to include the claims against Canada. A copy of that Order and Mr. Justice Farley's Endorsement is attached hereto as **Exhibit "B"**.

4.        I am advised by Mrs. Dais-Visca and verily believe that on or about January 30, 2006 The Attorney General of Canada filed the following Proofs of Claim in the U.S. Chapter 11 Insolvency proceedings for W.R. Grace and its affiliated companies:

   (a)    A "W.R. Grace & CO. Asbestos Property Damage Proof of Claim Form" seeking contribution and indemnity in respect of any Zonolite (ZAI") joint or several liability that may be found as against the Attorney General for Canada, a copy of which is attached hereto and marked as **Exhibit "C"**; and

   (b)    A "Grace Non-Asbestos Proof of Claim form" seeking contribution and indemnity in respect of any Zonolite (ZAI") joint or several liability that may be found as against the Attorney General for Canada, a copy of which is attached hereto and marked as **Exhibit "D"**.

5.        Attached hereto and marked as **Exhibit "E"** is a true copy of the Order of Justice Farley dated February 8, 2006 with respect to the Representation of aboriginal claimants in their claims against the Crown.

- 3 -

281

6.        I make this affidavit in response to the Grace parties' motion to approve the Minutes of Settlement entered into between the Grace Parties and the Canadian Representative Counsel on September 2, 2008.

Sworn before me at the City of Toronto,
in Province of Ontario, on
October 2, 2008.

Commissioner for Taking Affidavits
*ROGER FALAT*

**LILIANNE DAVID**

282

# TAB A

*4*

283

# SUPERIOR COURT

CANADA
PROVINCE OF QUÉBEC
DISTRICT OF MONTREAL

N° :     500-06-000286-050
         500-06-000258-042

DATE :   November 7, 2005

This is Exhibit *"H"* mentioned and
referred to in the affidavit of
*i i i i pranti Dril*
Sworn before me this *____day of*
*Ortober* A.D. 20*__*
A Commissioner for taking affidavits
*____*

---

IN THE PRÉSENCE OF :     THE HONOURABLE     PAUL G. CHAPUT, J.C.S.

---

N° : 500-06-000286-050

**ASSOCIATION DES CONSOMMATEURS POUR LA QUALITÉ DANS LA
CONSTRUCTION**
        Petitioner
-and-
**VIVIANE BROSSEAU**
-and-
**LÉONTINE ROBERGE-TURGEON**
        Designated members

c.

**ATTORNEY GENERAL OF CANADA**
        Respondent

---

N° : 500-06-000258-042

**ASSOCIATION DES CONSOMMATEURS POUR LA QUALITÉ DANS LA
CONSTRUCTION**
        Petitioner

JC 1815

284

No : 500-06-000286-050
500-06-000258-042


-and-
**JEAN-CHARLES DEXTRAS**
Designated member
c.

**GRACE CANADA INC.**
-and-
**ATTORNEY GENERAL OF CANADA**
Respondent

---

## JUDGMENT

---

[1]    WHEREAS the present motion has been instituted against the Attorney General of Canada by the petitioner and the designated members in the name of :

«1. Every person in Canada who is the owner of a property isolated with vermiculite contaminated by asbestos and commercialized under the trademark Zonolite® Attic Insulation;

2. Every person in Canada who was the owner of a property isolated with vermiculite contaminated by asbestos and commercialized under the trademark Zonolite® Attic Insulation and who will be named after the sale of the property as defendant in a latent defect action linked to said insulation product;

3. Every person in Canada who lives or who has lived in a property isolated with vermiculite contaminated by asbestos and commercialized under the trademark Zonolite® Attic Insulation and who suffered, suffers or will suffer in the future of asbestosis, mesothelioma, lung cancer or of any other physical or mental damage linked to the product;

4. Without limiting the abovementioned sub-classes, the aboriginal peoples of Canada and every other person in Canada who lives or who has lived in a property situated on a reserve or a designated land, said property being isolated with vermiculite contaminated by asbestos and commercialized under the trademark Zonolite® Attic Insulation and who suffered, suffers or will suffer in the future of asbestosis, mesothelioma, lung cancer or of any other physical or mental damage linked to the product;

5. The heirs and successors of the abovementioned class members;»

[2]    CONSIDERING that the following class actions have also been instituted against the Attorney General of Canada :

285

PAGE : 3

- *Dextras et al . c. Procureur général du Canada, W.R. Grace et al, C.S. Montréal, 500-06-000258-042;*
- *Raven Thundersky et Rebecca Bruce v. Attorney General of Canada, W.R. Grace, Court of Queen's Bench of Manitoba;*
- *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace et al, Federal Court, Saskatchewan;*
- *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace et al, Court of Queen's Bench of Saskatchewan;*
- *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace et al, Court of Queen's Bench of Alberta;*
- *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace et al, Supreme Court of British Colombia;*
- *Merv Nordick et al v. Attorney General of Canada and W.R. Grace et al, Province of Québec, District of Hull;*
- *Merv Nordick et al v. Attorney General of Canada, Department of National Defence and Canadian Forces, Canadian Froces Housing Agency, Canada Mortgage and Housing Corporation and W.R. Grace et al, The Queen's Bench, Winnipeg Centre; and*
- *Her Majesty the Queen in Right of the Province of Manitoba v. Attorney General of Canada and W.R. Grace et al, The Queen's Bench, Winnipeg Centre.*

[3]   **WHEREAS** the petitioner and the designated members allege that the use of Zonolite Attic Insulation (hereinafter "Zonolite") in their houses had negative repercussions on their health and caused economic damages as well;

[4]   **WHEREAS** the petitioners allege that Zonolite insulation was manufactured and sold by W.R. Grace;

[5]   **WHEREAS** the Attorney General of Canada is sued in each of the class actions on a joint and several basis for the totality of the alleged damages;

[6]   **WHEREAS** the petitioners acknowledge that the class actions filed against the Attorney General of Canada flow from their eventual claim against W.R. Grace;

[7]   **WHEREAS** the petitioners in the present case agree that W.R. Grace is the primary defendant of all and any damages related or derived from the acquisition or use of Zonolite and that W.R. Grace should be a necessary defendant in the present case;

[8]   **WHEREAS** the Attorney General of Canada intends to file a motion to add W.R. Grace as a third party in the Brosseau case and request that W.R. Grace

No :  500-06-000286-050
      500-06-000258-042

indemnify the Attorney General of Canada for all damages related to the use of Zonolite;

[9]  WHEREAS the manufacturer W.R. Grace is not presently a party in the present file for the reasons explained hereafter;

[10]  WHEREAS on April 2, 2001 W.R. Grace & Co. and 61 of its American affiliates (hereinafter collectively referred to as "W.R. Grace") voluntarily filed for reorganization under Chapter 11 of the *United States Bankruptcy Code* in the United States Court for the District of Delaware;

[11]  WHEREAS on April 4, 2001, upon the request of Grace Canada Inc., the Honourable Justice Farley of the Ontario Superior Court issued an order (hereinafter "Order") pursuant to the provisions of the *Companies' Creditors Arrangements Act* (R.S.C. 1985, c. C-36 hereinafter the "CCAA") in respect of Grace Canada Inc. and more specifically ordered a stay of all proceedings concerning asbestos-related claims (including Zonolite) against Grace Canada Inc. under section 18.6 of the CCAA (the Order);

[12]  WHEREAS due to the order rendered by the Honourable Justice Farley, the Attorney General of Canada can not file and serve a motion to add W.R. Grace as a third party;

[13]  WHEREAS W.R. Grace has filed a further motion before the Honourable Justice Farley seeking a modification of the Order which would extend the stay of proceedings and expand that stay to cover *inter alia* claims or purported claims against the Attorney General of Canada relating to the use of Zonolite;

[14]  WHEREAS the petitioner and the designated members in the present case agree to consent to an order expanding the Order to include a stay to cover claims or purported claims against the Attorney General of Canada relating to the use of Zonolite in order to allow the restructuring process of W.R. Grace to continue;

[15]  WHEREAS the Attorney General of Canada and the petitioners intends to file a claim against W.R. Grace under the CCAA;

[16]  WHEREAS the Superior Court of Quebec considers that the issues raised in the present case are intrinsically linked with those raised against Grace which may be determined by another court, and based on the principle of comity, it ought to implement a coordination process which will flow from the CCAA;

287--1

[17]  **WHEREAS** in the event that W.R. Grace decides to litigate the claims filed against it in court, the petitioner and the designated members in the present case agree to make all efforts to insure that all of the lawsuits against the Attorney General of Canada proceed in the same forum that will deal with claims of W.R. Grace and Grace Canada Inc. under the CCAA;

[18]  **WHEREAS** the Attorney General of Canada supports counsel for the petitioners in the present case acting as representative counsel for any Canadian asbestos claimants in the CCAA proceedings, subject to the necessary order of the judge presiding over Grace Canada's CCAA proceedings be obtained;

[19]  **WHEREAS** the Attorney General of Canada wishes to facilitate further the restructuring process of W.R. Grace and Grace Canada Inc. under the CCAA by allowing the petitioner and the designated members to consolidate their claims which in turn will allow the Attorney General of Canada to file a claim in the CCAA proceedings for the total amount of the eventual claim of the Attorney General of Canada against W.R. Grace;

[20]  **WHEREAS** the Attorney General of Canada agrees that the petitioners in the present case meet the criteria under sections 1002 and 1003 of the *Code of Civil Procedure of Québec*, under reserve of its right to argue on the merit that the said petitioners do not have any cause of action against the defendant and without admission of liability whatsoever;

[21]  **WHEREAS** the Attorney General of Canada intends to consent to the motion seeking authorization of a class action in the present case (the "Consent") in the event that the claims being advanced in the Brosseau case are not resolved pursuant to the Chapter 11 proceedings and given effect by the CCAA proceedings;

[22]  **WHEREAS** it is agreed between the Attorney General of Canada and the petitioners in the present case that the Consent shall be of no force or effect until such time as the reorganization of W.R. Grace is terminated or until further order of the judge presiding over the Grace Canada's CCAA proceedings;

[23]  **WHEREAS** the petitioner and the designated members in the present file acknowledge that the Consent is without admission of liability and without prejudice to the right of the Attorney General of Canada to raise any defence in any class action proceedings;

[24]  **WHEREAS** in the event that the reorganization of W.R. Grace is withdrawn or should the Honourable Justice Farley lift the stay to allow the petitioners to pursue their claims against the Attorney General of Canada and W.R. Grace, the

288    9

Superior Court will hear the parties on the scope of the order that it will issue under section 1005 of the *Code of Civil Procedure of Québec*;

[25]    **WHEREAS** following the issuance of an order under section 1005 of the *Code of civil Procedure of Québec*, the Attorney General of Canada will file a motion to third party W.R. Grace and the petitioners in the present case will consent to the said motion;

[26]    THE COURT ORDERS THE FOLLOWING:

[27]    The adjournment *sine die* of the following cases :

- *Dextras et al . c. Procureur général du Canada*, W.R. Grace et al, C.S. Montréal, 500-06-000258-042;
- *Viviane Brosseau et al c. Procureur général du Canada*, C.S. Montréal, 500-06-000286-050.

[28]    The Court declares the aforementioned preamble an integral part of this order;

[29]    The Court takes recognizance of the consent of the Attorney General of Canada to the motion seeking authorization to institute a class action in the present case conditional on the following :

1)  All asbestos-related actions or proceedings, including all the class actions filed in Canada against the Attorney General of Canada involving Zonolite are stayed by the Honourable Justice Farley, and any appeal from the order granting the stay is dismissed; and

2)  The consent is of no force or effect until such time as the reorganization of W.R. Grace is terminated or until further order of the judge presiding over Grace Canada's CCAA proceedings.

[30]    In the event that the Honourable Justice Farley does not issue the order as contemplated in the above paragraph, the Court declares the aforementioned agreement null and void and the petitioner and the designated members will consent that any authorization order that have been ordered by the Superior Court of Quebec will be rescinded;

[31]    In the event that the Honourable Justice Farley does issue the order as contemplated in the above paragraphs, the Court declares the following:

289 *10*

    1)   The petitioner and the designated members in the present case agree to take all the necessary steps to ensure that all the claims against W.R. Grace and the Attorney General of Canada be litigated in the same forum;

    2)   The petitioner and the designated members, as well as the Attorney General of Canada, in the present case reserve their right to seek leave from the CCAA court to continue the proceedings in the present case should the restructuring process under Chapter 11 and the CCAA not provide an adequate, fair and efficient means to address all Plaintiffs' claims across Canada and the claim for indemnity that the Attorney General of Canada will file against, inter alia, W.R. Grace or Grace Canada. In the event that the Honorable Justice Farley lifts the order, the Brosseau case will proceed as a class action.

[32]    The Court further declares that the consent of the Attorney General of Canada to the motion seeking authorization to institute a class action in Quebec is without admission of liability on behalf of the Attorney General of Canada and without prejudice to any arguments that the Attorney General of Canada may wish to raise in defense of the class action including the right to file a motion to dismiss by virtue of section 165.4 of the *Code of Civil Procedure* of Quebec.

[33]    THE WHOLE without costs.

 

PAUL G. CHAPUT, J.C.S.

Me Michel Bélanger
Me Jean-Philippe Lincourt
LAUZON BÉLANGER, s.e.n.c.r.l.

David Thompson
Jeff C. Teal
Scarfone Hawkins, L.L.P.
    Attorneys for the petitioner and the designated members

290  //

No : 500-06-000286-050
      500-06-000258-042

PAGE : 8

Me André Lespérance
Me Carmela Maiorino
Côté Marcoux Joyal
         Attorneys for the Attorney General of Canada

Date of hearing :    November 1, 2005

291

# TAB B

*12*

*292*

Court File No. 01 CL-4081

SUPERIOR COURT OF JUSTICE

COMMERCIAL LIST

THE HONOURABLE         )      MONDAY, THE 14ᵗʰ DAY OF

)

MR. JUSTICE FARLEY       )      NOVEMBER, 2005

This is Exhibit *12* mentioned and
referred to in the affidavit of
~~~~~~~~~~
Sworn before me this ~ ~ day of
~~~~~~ A.D. 20~~
A Commissioner for taking affidavits
~~~~~~~~~~

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS
AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

## ORDER

THIS MOTION made by Grace Canada, Inc. (hereinafter referred to as the "Applicant"),
for an Order:

(a)    abridging the time for service of this motion;

(b)    recognizing an order (as amended, the "Modified Preliminary Injunction") granted
on January 22, 2002 by the United States Bankruptcy Court for the District of
Delaware (the "Bankruptcy Court") providing injunctive relief to W.R. Grace Inc.
and all of its subsidiaries (the "U.S Debtors") as well as certain other Affiliated
Entities (as defined in the Modified Preliminary Injunction) and declaring that
such order be effective in Canada in accordance with its terms;

(c)    an order staying as against The Attorney General of Canada (Her Majesty the
Queen in Right of Canada) (the "Crown"), until such time as the Stay Period (as
defined in the order of this Honourable Court made on April 1, 2001 (the "Initial

/ 3

- 2 -

293

Order")) expires, all suits, actions, enforcement processes, extra-judicial proceedings or other proceedings relating to, arising out of or in any connected to damages or loss suffered, directly or in directly, from asbestos, asbestos contamination or asbestos related diseases arising out of the exposure to or use of products in Canada that may contain asbestos and were manufactured, sold or distributed by any of the Applicant, the U.S. Debtors or the Affiliated Entities; and

(d)     an order extending the Stay Period referred to in paragraphs 4 and 5 of the Initial Order to April 1, 2006,

was heard this day at 393 University Avenue, Toronto, Ontario.

ON READING,

(a)     the Applicant's Notice of Motion, the affidavit of Richard Finke sworn September 6, 2005 (the "Finke Affidavit"), the 16th Report of Pierre Le Bourdais, Information Officer, the Affidavit of George Triantis sworn September 28, 2005, the supplemental affidavit of Richard Finke sworn October 19, 2005,

(b)     the Notice of Appearance of Raven Thundersky ("Thundersky") dated September 13, 2005, the affidavit of Thundersky sworn September 14, 2005, the Notice of Motion and Motion Record of counsel to Thundersky dated September 19, 2005, the affidavit of Sander Esserman sworn October 11, 2005, the supplemental affidavit of Thundersky sworn October 7, 2005;

(c)     the Notice of Motion and affidavit of Yves Lauzon sworn September 16, 2005;

and on hearing the submissions of counsel for: (a) the Applicant; (b) Association Des Consomumatuers Pour La Qualité Dans La Construction and Jean-Charles Dextras, Viviane Brosseau and Léotine Roberge-Turgeon (collectively, the "Québec Plaintiffs"), who consent to the Order; (c) the Crown, who also consents to the Order; (d) Thundersky; and (e) Merv Nordick and Ernest Spencer et. al., and upon being advised that no other person has appeared on this date or served and filed responding materials on this motion:

/4

294

- 3 -

1.    THIS COURT ORDERS that the time for service of the Applicant's Notice of Motion and Motion Record in support of this Motion be and it is hereby abridged such that the Motion is properly returnable today, and, further, that any requirement for service of the Notice of Motion and of the Motion Record upon any interested party, other than the parties herein mentioned, is hereby dispensed with.

2.    THIS COURT ORDERS that the Modified Preliminary Injunction, as amended, be and is hereby recognized and shall be effective in Canada in accordance with its terms.

3.    THIS COURT ORDERS that until and including such time as the Stay Period expires, no suit, action, enforcement process, extra-judicial proceeding or other proceeding relating to, arising out of or in any connected to damages or loss suffered, directly or in directly, from asbestos, asbestos contamination or asbestos related diseases arising out of the exposure to or use of asbestos products in Canada manufactured, sold or distributed by any of the Applicant, the U.S. Debtors or the Affiliated Entities, shall be commenced against the Crown and any such suits, actions, enforcement processes, extra-judicial proceedings or other proceedings already commenced against the Crown be and are hereby stayed and suspended.

4.    THIS COURT ORDERS that the Stay Period referred to at paragraphs 4 and 5 of the Initial Order be and is hereby extended and continued to April 1, 2006.

JOSEPH P VAN TASSEL
REGISTRAR

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO ·

NOV 1 7 2005

PER/PAR

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC.

Court File No: 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE

Proceeding commenced at Toronto

ORDER

OGILVY RENAULT LLP
Barristers & Solicitors
Suite 3800, PO Box 84
Royal Bank Plaza, South Tower

200 Bay Street
Toronto, Ontario M5J 2Z4

DERRICK C. TAY
LSUC #21152A
Tel:    416.216.4832
Fax:    416.216.3930

ORESTES PASPARAKIS
LSUC # 36851T
Tel: 416.216.4815
Fax: 416.216.3930

Solicitors for the Applicant

295

· NOV-15-2005  15:49          JUDGES ADMIN RM 334                    416 327 5417    P.02/04  16

296

**COURT FILE NO.: 01-CL-4081**
**DATE: 20051114**

## SUPERIOR COURT OF JUSTICE - ONTARIO
## (COMMERCIAL LIST)

RE:        IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS*
           *ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

           AND IN THE MATTER OF GRACE CANADA, INC.

BEFORE:    Farley J.

COUNSEL:   *D. Tay, O. Pasparakis, J. Stam,* for the Plaintiffs, Grace Canada Inc.

           *E. Merchant,* for Merv Nordick and Ernest Spencer, et al.

           *K. Ferbers,* for Raven Thundersky

           *Ian Dick,* for the Attorney General of Canada

           *Michel Bélanger, Jean-Philippe Lincourt* and *Matt Moloci,* for the
           Association Des Consommatuers Pour La Qualité Dans La Construction and
           Jean-Charles Dextras, Viviane Brosseau and Léotine Roberge-Turgeon

HEARD:     November 14, 2005

### E N D O R S E M E N T

[1]    This endorsement applies to the 3 motions of Grace, the Quebec class proceeding
and the Manitoba class proceeding.

[2]    The Quebec plaintiffs in their putative class proceedings have worked out an
arrangement with the Federal Government. As a result they are not proceeding with their
request to lift the stay and other ancillary relief, but without prejudice to it or similar relief
being sought if the insolvency/CCAA recognition proceedings get bogged down. The
Grace relief was then supported by the Quebec plaintiffs.

[3]    The "Sask" plaintiffs (represented by the Merchant firm) were not opposed to the
Grace relief.

[4]    The Manitoba plaintiffs represented by the Atkins firm took the position that the
Grace relief was all right so long as it did not apply to their proceedings except that
judgment would not be enforced without leave of this court.

Page:2

297

[5]  It would seem to me that the various class proceedings would benefit from cooperation and coordination – using the 3Cs of the Commercial List (communication, cooperation and common sense). Otherwise they will be faced with the practical problem of fighting amongst themselves as to a turf war and running the risk of being divided and therefore susceptible to being conquered.

[6]  The stay is extended to April 1, 2006 and includes proceedings against the Federal Crown related to the Grace proceedings in these class actions.  As well the Modified Preliminary Injunction granted on January 22, 2002 by the US Bankruptcy Court is recognized pending further order of this Court.

[7]  The foregoing does not prevent any of the parties entering into consensual resolutions with the Federal Crown.

[8]  I note that the Grace interests represented before me today indicated that it was their goal to emerge from their insolvency proceedings as soon as reasonably possible but under the guidelines that there be justice for all affected persons.

[9]  I also note that there has been recognition in the US Bankruptcy Court that Canadian proceedings will be governed by Canadian substantive law.

[10]  The foregoing relief granted is pursuant to the principles set out in *Babcock & Wilcox Canada Ltd.* (2000), 18 C.B.R. (4th) 157 (Ont. S.C.J.) and is in furtherance of the long standing respect for comity extended by the courts of this country for the courts of the US and vice versa.

[11]  It would seem to me that the insolvency adjudicative proceedings would, at least under presently anticipated circumstances, result in a more effective efficient process than would a full-blown class action proceeding.

[12]  I concur with the views of the US court in *Maryland Casualty* re respect to the necessity/desirability of a stay against the Federal Crown as a "3rd" party" given the interrelated aspects of the claims against the Crown and Grace. There would in my mind be a considerable risk of record taint if the action against the Crown were allowed to proceed on its own without direct Grace evidence and counsel. See also *Campeau v. Olympia & York* (1992), 14 C.B.R. (3d) 303 (Ont. Gen. Div.); *Canada Systems Group (EST) Ltd. v. Allendale Mutual Insurance Co.* (1982), 137 D.L.R. (3d) 287 (Ont. H.C.J.), aff'd (1983), 145 D.L.R. (3d) 266 (Ont. Div. Ct.); *Re Noma Co.*, [2004] O.J. No. 4914 (S.C.J.); *Re Lehndorff General Partner Ltd.* (1993), 17 C.B.R. (3d) 24 (Ont. Gen. Div).

[13]  The stay does not affect the ability of the plaintiffs from coming back to court if they feel that there is foot dragging or other elements of prejudice.

[14]  I note that the Federal Crown may accept service of the Sask claim without that being an infringement of the stay now imposed (and previously requested). This is without prejudice to the Crown moving for relief on, say, a limitations point.

Page:3

298

[15]   What the Manitoba plaintiffs are in essence requesting is that they obtain a leg up on all other Canadian plaintiffs (and US plaintiffs) and that there be by this court somewhat of a quasi-certification, although indicating that the actual certification would be dealt with by the Manitoba court.

[16]   This would result in a lack of single control in insolvency proceedings which was cautioned against in *Sam Levy & Associes v. Azco Mining Inc.*, [2001] 3 S.C.R. 978. It would also fragment and possibly destabilize the other proceedings by other affected persons (including those claiming for personal injury including serious personal injury). In saying that I in no way wish to or intend to be taken as minimizing the terrible tragedy which has befallen the Thundersky/Bruce family.

[17]   I look forward to seeing that continued timely progress is being made with respect to this insolvency proceeding including the effective efficient way of dealing with personal injury and property damage claims. The information officer should ensure that this court and affected parties including these class action plaintiffs are kept abreast of proposed material developments and their outcome. That is the report on the regular time period basis should be the minimum.

[18]   The motion of the Manitoba plaintiffs is dismissed, but without prejudice to similar or other relief being sought in the future based on a change in circumstances.

J.M. Farley

DATE: November 14, 2005

299

TAB C

20

## INSTRUCTIONS FOR FILING THE W.R. GRACE & CO. ASBESTOS PROPERTY DAMAGE PROOF OF CLAIM FORM

## WHO SHOULD USE THIS ASBESTOS PROPERTY DAMAGE PROOF OF CLAIM FORM

1. This Asbestos Damage Proof of Claim Form (referred to in this document as the "Form") applies only to current claims made against Grace by or on behalf of parties who are alleging property damage with respect to asbestos in real property owned by the party (such person is referred to in this document as the "claiming party") from a Grace asbestos-containing product or as a result of one of Grace's vermiculite mining, milling, or processing facilities.

2. The Bar Date does not apply to Asbestos Personal Injury Claims, Settled Asbestos Claims or Zonolite Attic Insulation Claims. Those claims will be subject to a separate claim submission process and should not be filed at this time.

3. This form should not be used for Medical Monitoring Claims or Non-Asbestos Claims. Instead, separate specialized proof of claim forms for these claims should be completed.

4. If you are alleging current claims against Grace with respect to asbestos in more than one (1) real property, the claiming party should complete an Asbestos Property Damage Proof of Claim Form for each property. You may request additional forms by calling the Claims Processing Agent at 1-800-432-1909.

## GENERAL INSTRUCTIONS

1. This form must be signed by the claimant or authorized agent of the claimant. THIS FORM MUST BE RECEIVED ON OR BEFORE 4:00 PM EASTERN TIME ON MARCH 31, 2003, or you forever will be precluded from asserting your claim(s) against or receiving payment from Grace. Return your completed form to the Claims Processing Agent, Re: W.R. Grace & Co. Bankruptcy, P.O. Box 1620, Faribault, MN 55021-1620.
   If you are returning this form by mail, allow sufficient time so that this form is received on or before March 31, 2003. Forms that are postmarked before March 31, 2003 but received after March 31, 2003 will not be accepted. Only original forms will be accepted for filing. Forms transmitted by facsimile will not be accepted for filing.

2. If you cannot fit all information in any particular section or page, please make a copy of that page before filling it out and attach as many additional pages as needed.

3. If you are unable to provide any of the information required by the proof of claim form, please so specify, as well as provide a short statement describing why such information is unavailable. If you are in the process of obtaining such information at the time you file your proof of claim, please so advise and indicate that the same shall be provided when obtained.

4. This form must be filled out completely using BLACK or BLUE ink or may be typewritten.
   • Please print clearly using capital letters only.        • Do not use a felt tip pen.
   • Skip a box between words.                                • Do not bend or fold the pages of the form.
   • Do not write outside of the boxes or blocks.

5. Because this form will be read by a machine, please print characters using the examples below. For optimum accuracy, please print in capital letters and avoid contact with the edge of the character boxes.

6. Mark check boxes with an "X" (example at right).    ☒    N A M E  H E R E

7. Be accurate and truthful. A Proof of Claim Form is an official court document that may be used as evidence in any legal proceeding regarding your claim. The penalty for presenting a fraudulent claim is a fine of up to $500,000 or imprisonment for up to five years or both. 18 U.S.C. §§ 152 & 3571.

8. Make a copy of your completed Form to keep for your records. Send only original Forms to the Claims Processing Agent at the following address: Claims Processing Agent, Re: W.R. Grace & Co. Bankruptcy
   PO Box 1620
   Faribault, MN 55021-1620.

9. You will receive written notification of the proof of claim number assigned to this claim once it has been processed.

302

21

## PART 1: CLAIMING PARTY INFORMATION

NAME:

THE ATTORNEY GENERAL OF CANADA

*Name of individual claimant (first, middle and last name) or business claimant*

SOCIAL SECURITY NUMBER (Individual Claimants):       F.E.I.N. (Business Claimants)

N/A

*(last four digits of SSN)*

☐☐ - N/A

Other names by which claiming party has been known (such as maiden name or married name):

N/A

*First*          *MI*   *Last*

N/A

*First*          *MI*   *Last*

GENDER:   ☐ MALE     ☐ FEMALE

Mailing Address:

C/O IAN R D/CK, DEPARTMENT OF JUSTICE CANADA

*Street Address*

130 KING ST W SUITE 3400 TORONTO        ON   M5X 1K5

*City*                                                      *State*   *Zip Code*
                                                           *(Province)* *(Postal Code)*

CANADA

*Country*

## PART 2: ATTORNEY INFORMATION

The claiming party's attorney, if any (You do not need an attorney to file this form):

Law Firm Name:

MONZACK AND MONACO

Name of Attorney:

FRANCIS          A   MONACO

*First*          *MI*   *Last*

Mailing Address:

1201 WORTH ORANGE STREET SUITE 400 PO BOX 2031

*Street Address*

WILMINGTON                                              DE   19801

*City*                                                      *State*   *Zip Code*
                                                           *(Province)* *(Postal Code)*

Telephone:

(302) 656 - 8162

*Area Code*

707

## PART 2 PROPERTY INFORMATION

### A. Real Property For Which A Claim Is Being Asserted

1. What is the address of the real property for which a claim is being asserted (referred to herein as "the property")?

`N/A`

*Street Address*

*City*                    *State*      *Zip Code*
                          *(Province)* *(Postal Code)*

*Country*

2. Are you completing an Asbestos Property Damage Proof of Claim Form for any other real property other than the one listed at "1)" above?

   ☒ Yes    ☐ No

3. Do you currently own the property listed in Question 1, above?

   ☐ Yes    ☒ No

4. When did you purchase the property?   `N/A` – ☐ – ☐
   Month   Day   Year

5. What is the property used for (check all that apply)?
   ☐ Owner occupied residence
   ☐ Residential rental
   ☐ Commercial
   ☐ Industrial    Specify: `N/A`
   ☐ Other    Specify:

6. How many floors does the property have?   `N/A`

7. What is the approximate square footage of the property?   `N/A`

8. When was the property built?
   ☐ Before 1969
   ☐ 1969 - 1973
   ☐ After 1973

9. What is the structural support of the property?
   ☐ Wood frame
   ☐ Structural concrete
   ☐ Brick
   ☐ Steel beam/girder
   ☐ Other    Specify: `N/A`

10. Have you or has someone on your behalf completed any interior renovations on the property which affected any asbestos on the property?

    ☐ Yes    ☐ No

9276102                                    1024601

304     25

**A.** Real Property For Which A Claim Is Being Asserted (continued)

If yes, please specify the dates and description of such renovations.

| | Description | |
|---|---|---|
Year

| | Description | |
|---|---|---|
Year

| | Description | |
|---|---|---|
Year

11. To the best of your knowledge, have any other interior renovations been completed on the property during any other period of time which affected any asbestos on the property?

☐ Yes   ☐ No   N/A

If yes, please specify the dates and descriptions of such renovations.

| | Description | |
|---|---|---|
Year

| | Description | |
|---|---|---|
Year

| | Description | |
|---|---|---|
Year

**B.** Claim Category

12. For which category are you making a claim on the property?

☒ Category 1:   Allegation with respect to asbestos from a Grace product in the property

☐ Category 2:   Allegation with respect to one of Grace's vermiculite mining, milling or processing operations

If you checked Category 1 in question 12, complete section C;

If you checked Category 2 in question 12, complete section D;

**C.** Category 1 Claim: Allegation With Respect To Asbestos From A Grace Product In The Property

13. For what alleged asbestos-containing product(s) are you making a claim?

☒ Monokote-3 fireproofing insulation

☒ Other     Specify:   *See ATTACHED SCHEDULE "A"*

(For a list of the brand names under which Grace manufactured products that may have contained commercially added asbestos, see Exhibit 2 to the Claims Bar Date Notice provided with this Proof of Claim Form.)

14. When did you or someone on your behalf install the asbestos containing product(s) in the property?

| | | |
|---|---|---|
Year     ☒ I did not install the product(s)

15. If you or someone on your behalf did not install the asbestos containing product(s), to the best of your knowledge, when was/were the product(s) installed?

| | | |
|---|---|---|
Year     ☒ Don't know.

9 2 7 6 1 0 3                    1024601

305

16. Do you have documentation relating to the purchase and/or installation of the product in the property?

☐ Yes    ☒ No

If Yes, attach all such documents. If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who has possession and control of the document.

If you provide a summary of documents rather than the documents themselves, you are required to consent to the production and release of those documents to Grace upon Grace's further request.

17. If you do not have any such documents, explain why not and indicate who may have possession or control of such documents with respect to the property.

SEE ATTACHED SCHEDULE "A"

18. When did you first know of the presence of asbestos in the property of the Grace product for which you are making this claim?

N/A
*Year*

Please attach all documents relating or referring to the presence of asbestos in the property for which you are making this claim. If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who has possession and control of the document.

If you provide a summary of documents rather than the documents themselves, you are required to consent to the production and release of those documents to Grace upon Grace's further request.

19. How did you first learn of the presence of asbestos in the property of the Grace product for which you are making this claim?

SEE ATTACHED SCHEDULE "A"

20. When did you first learn that the Grace product for which you are making this claim contained asbestos?

N/A
*Year*

21. How did you first learn that the Grace product for which you are making the claim contained asbestos?

SEE ATTACHED SCHEDULE "A"

22. Have you or someone on your behalf made an effort to remove, contain and/or abate the Grace product for which you are making this claim?

☐ Yes    ☒ No

If Yes, attach all documents relating or referring to such efforts. If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who has possession and control of the document.

If you provide a summary of documents rather than the documents themselves, you are required to consent to the production and release of those documents to Grace upon Grace's further request.

23. If you do not have any such documents, explain why not and indicate who may have possession and control of such documents with respect to the property.

N/A

24. If you or someone on your behalf did not make an effort to remove, contain and/or abate the Grace product(s) for which you are making a claim, to the best of your knowledge, did anyone else make such an effort?

☐ Yes    ☒ No

9276104

1024601

306

25. If you responded Yes to question 22, or 24, and you have not supplied documents, please specify the dates and descriptions of any such efforts.

Description  N/A

Year

Description

Year

Description

Year

26. Have you or anyone on your behalf ever conducted any testing or sampling for the presence of asbestos or other particulates in the property?

☐ Yes    ☒ No    If Yes, Please All Documents Related To Any Testing Of The Property

27. If you responded Yes to question 26., but you have not provided documents, indicate who may have possession or control of such testing documents or where such documents may be located.

N/A

28. If you or someone on your behalf did not conduct any testing or sampling for the presence of asbestos or other particulates on the property, to the best of your knowledge, did anyone else conduct such testing or sampling with respect to the property?

☐ Yes    ☒ No

29. If you responded Yes to question 26. or 28. and you have not supplied related documents, please describe when and by whom and the type of testing and/or sampling (e.g. air, bulk and dust sampling).

Company/Individual  N/A

Year  Type of testing:

Company/Individual

Year  Type of testing:

Company/Individual

Year  Type of testing:

30. Has the Grace product or products for which you are making this claim ever been modified and/or disturbed?

☐ Yes    ☐ No

31. If yes, specify when and in what manner the Grace product or products was modified and/or disturbed?

Description  N/A

Year

Description

Year

Description

Year

9276105

1024601

**D.** Category 2 Claim:  Allegation With Respect To One of Grace's Vermiculite Mining, Milling Or Processing Operations

32. What is the business address or location of the Grace operation which has led to your claim?

307

*N/A*
Business Name

Street Address

City                                                                          State        Zip Code
                                                                          (Province)  (Postal )

Country

33. If your claim relates to a personal residence, does (or did) anyone living in the household work for Grace?

Yes          No

▨

34. If yes, specify the following for each such individual:

| Name of Individual Working at Grace Operation | Name of Individual Working at Grace Operation |
|---|---|
| Date of Birth | Date of Birth |
| *Month   Day       Year*<br>Occupation(s) of Individual | *Month   Day     Year*<br>Occupation(s) of Individual |
| Dates Worked at Operation<br>From:           To: | Dates Worked at Operation<br>From:            To: |
| *Year          Year* | *Year           Year* |
| Name of Individual Working at Grace Operation | Name of Individual Working at Grace Operation |
| Date of Birth | Date of Birth |
| *Month   Day       Year*<br>Occupation(s) of Individual | *Month   Day     Year*<br>Occupation(s) of Individual |
| Dates Worked at Operation<br>From:           To: | Dates Worked at Operation<br>From:            To. |
| *Year          Year* | *Year           Year* |

35. When did you first know of the presence of asbestos on your property?   *N/A*
                                                                                    *Year*          ▨

9276106                                           1024601

308

36. How did you first learn of the presence of asbestos on your property?

> SEE ATTACHED SCHEDULE "A"

Attach all documents relating or referring to the presence of asbestos on the property. If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who has possession or control of the document.

If you provide a summary of the documents rather than the documents themselves, you are required to consent to the production and release of those documents to Grace upon Grace's further request.

37. If you do not have any documents relating or referring to the presence of asbestos on the property, explain why not and indicate who may have possession or control of any such documents with respect to the property.

> SEE ATTACHED SCHEDULE "A"

38. Have you or anyone on your behalf made an effort to remove, contain and/or abate the asbestos on your property?

☐ Yes    ☒ No

If Yes, attach all documents relating or referring to such efforts. If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who has possession or control of the document.

If you provide a summary of the documents rather than the documents themselves, you are required to consent to the production and release of those documents to Grace upon Grace's further request.

39. If you do not have any documents relating or referring to the removal, containment and/or abatement of the asbestos on your property, explain why not and indicate who may have possession and control of such documents with respect to the property.

> SEE ATTACHED SCHEDULE "A"

40. If you or someone on your behalf did not make an effort to remove, contain and/or abate the asbestos on your property, to the best of your knowledge, did anyone else make such an effort?

☐ Yes    ☐ No

1024601

309

41. If you responded Yes to question 38, or question 40, and you have not supplied related documents, please specify the dates and descriptions of any such efforts.

|  | Description | N/A |
| Year | | |

|  | Description | |
| Year | | |

|  | Description | |
| Year | | |

42. Have you or anyone on your behalf conducted any other testing or sampling for the presence of asbestos on your property?

☐ Yes    ☒ No

If Yes, attach all documents relating or referring to such efforts. If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who has possession or control of the document.

If you provide a summary of the documents rather than the documents themselves, you are required to consent to the production and release of those documents to Grace upon Grace's further request.

43. If you do not have any documents relating or referring to any other such testing or sampling for the presence of asbestos on your property, explain why not and indicate who may have possession or control of such documents with respect to the property.

SEE ATTACHED SCHEDULE "A"

44. If you or someone on your behalf did not conduct any other testing or sampling for the presence of asbestos on your property, to the best of your knowledge, did anyone else conduct such testing or sampling?

☐ Yes    ☒ No

45. If you responded Yes to question 42, or question 44, and you have not supplied related documents, please specify the dates and descriptions of any such efforts.

|  | Description | N/A |
| Year | | |

|  | Description | |
| Year | | |

|  | Description | |
| Year | | |

46. Were you aware of the presence of asbestos on your property when you purchased your property?

☐ Yes    ☐ No

47. If you have sold the property, were you aware of the presence of asbestos on your property when you sold your property?

☐ Yes    ☐ No    ☐ Not Applicable, have not sold the property

9276108

1024601

$\mathcal{J}$ 1

## PART E. ASBESTOS LITIGATION AND CLAIMS

### A. INTRODUCTION

1. Has any asbestos-related property damage lawsuit or claim been filed against Grace on behalf of this claiming party relating to the property for which you are making this claim?

   ☐ No

   ☒ Yes – lawsuit                                              310

   ☐ Yes – non-lawsuit claim (other than a workers' compensation claim)

2. Has any asbestos-related property damage lawsuit or claim been filed against any other party on behalf of this claiming party relating to the property for which you are making this claim?

   ☐ No

   ☒ Yes – lawsuit

   ☐ Yes – non-lawsuit claim (other than a workers' compensation claim)

   *If an asbestos-related property damage lawsuit has been filed by or on behalf of this claiming party relating to the property for which you are making a claim, complete Section B. below.*

   *If an asbestos-related property damage non-lawsuit claim has been made by or on behalf of this claiming party relating to the property for which you are making a claim, complete Section C. on the following page.*

### B. LAWSUITS

1. Please provide the following information about each asbestos-related property damage lawsuit which has been filed relating to the property for which you are making this claim or attach a copy of the face page of each complaint filed.

   a. Caption    SEE ATTACHED · SCHEDULE "A"

   b. Court where suit originally filed: [          ] Docket No.: [          ]
      County/State

   c. Date filed: [  ] – [  ] – [    ]
      Month  Day   Year

   a. Caption [          ]

   b. Court where suit originally filed: [          ] Docket No.: [          ]
      County/State

   c. Date filed: [  ] – [  ] – [    ]
      Month  Day   Year

   a. Caption [          ]

   b. Court where suit originally filed: [          ] Docket No.: [          ]
      County/State

   c. Date filed: [  ] – [  ] – [    ]
      Month  Day   Year

   (Attach additional pages if necessary.)

9276109                                      1024601

5°

## C. NON-LAWSUIT CLAIMS

311

1. If the claiming party has made any claims relating to the property for which you are making a claim (including administrative claims) against anyone, that was not filed with a court of law, please provide the following information for each claim:

a. Description of claim: **SEE ATTACHED SCHEDULE "A"**

b. Date submitted: ☐☐ - ☐☐ - ☐☐☐☐
   Month   Day   Year

c. Name of entity to whom claim was submitted:
   ☐ Grace
   ☐ Other _____
   Name of Entity

---

a. Description of claim: **SEE ATTACHED SCHEDULE "A"**

b. Date submitted: ☐☐ - ☐☐ - ☐☐☐☐
   Month   Day   Year

c. Name of entity to whom claim was submitted:
   ☐ Grace
   ☐ Other _____
   Name of Entity

---

a. Description of claim: _____

b. Date submitted: ☐☐ - ☐☐ - ☐☐☐☐
   Month   Day   Year

c. Name of entity to whom claim was submitted:
   ☐ Grace
   ☐ Other _____
   Name of Entity

## PART 5: SIGNATURE PAGE

All claims must be signed by the claiming party.

I have reviewed the information submitted on this proof of claim form and all documents submitted in support of my claim. I declare, under penalty of perjury,* that the above statements are true, correct, and not misleading.

CONSENT TO RELEASE OF RECORDS AND INFORMATION: To the extent that I have produced a summary rather than the documents themselves as requested above or indicated who has possession and control of certain documents, I hereby authorize and request that all other parties with custody of any documents or information concerning my property damage or the information contained in this Form, upon the reasonable request of Grace or Grace's representative, with a copy to the claiming party, disclose any and all records to Grace or to Grace's representative.

_A. N. ____ For A.G CANADA_        ☐0☐1 - ☐1/☐9 - ☐2☐0☐0☐6
SIGNATURE OF CLAIMANT                Month   Day   Year

*The penalty for presenting a fraudulent claim is a fine up to $500,000.00 or imprisonment up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

9276110                                          1024601

Copyright © 2002, 2003 Pearson, Inc.  All rights reserved.

31
312

## SCHEDULE "A" TO PROOF OF CLAIM

Her Majesty the Queen in Right of Canada as represented by The Attorney
General of Canada (the "Crown"), files this Proof of Claim and states as follows:

1.    There are currently ten class actions which have been filed across Canada
concerning Zonolite Attic Insulation ("ZAI") in which the Crown has been sued. These
class actions include the following:

- Dextras et al v. Attorney General of Canada, W.R. Grace &
  Co. et al, Superior Court of Quebec, District of Montréal,
  500-06-000258-042 (the "Dextras Action");

- Viviane Brosseau et al v. Attorney General of Canada,
  Superior Court of Quebec, District of Montréal, 500-06-
  000286-050 (no claim against the Grace companies)(the
  "Brosseau Action");

- Raven Thundersky et Rebecca Bruce v. Attorney General of
  Canada, W.R. Grace & Co., Court of Queen's Bench of
  Manitoba (the "Thundersky Action");

- Merv Nordick et al. v. Attorney General of Canada, W.R.
  Grace & Co. et al, Federal Court, Saskatchewan;

- Merv Nordick et al. v. Attorney General of Canada, W.R.
  Grace & Co. et al, Court of Queen's Bench of
  Saskatchewan;

- Merv Nordick et al. v. Attorney General of Canada, W.R.
  Grace & Co. et al, Court of Queen's Bench of Alberta;

- Merv Nordick et al. v. Attorney General of Canada, W.R.
  Grace & Co. et al, Supreme Court of British Colombia;

- Merv Nordick et al. v. Attorney General of Canada, W.R.
  Grace & Co. et al, Province of Quebec, District of Hull;

- Ernest Spencer et al. v. Attorney General of Canada, W.R.
  Grace & Co. et al, Court of Queen's Bench of Manitoba;
  and

32

313

- Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Ontario Superior Court of Justice.

2.      In the aforementioned class actions, the petitioners/plaintiffs seek to represent all Canadians who have suffered past or will suffer future property damage and personal injury due to exposure to ZAI.

3.      An action has also been instituted by the Province of Manitoba, *Her Majesty The Queen in the Right of the Province of Manitoba v. Attorney General of Canada, W.R. Grace & Co. et al*, Court of Queen's Bench of Manitoba. The Province of Manitoba has sued the Crown and the manufacturers of ZAI for the cost of insured health services paid or to be paid to the named plaintiffs in the Thundersky Action and all other persons determined to be class members in the Thundersky Action.

4.      All the aforementioned actions pending in Canada were brought against the Crown subsequent to the Bar Date of March 31, 2003.

5.      The basic allegation in the various class actions pending in Canada is that W.R. Grace & Co. and related companies (the "Manufacturers") created and distributed an insulation product, ZAI, which contained asbestos and was therefore inherently dangerous.   The Crown's alleged wrongdoing is said to be that it permitted the distribution and sale of ZAI.   Nevertheless, the Crown denies owing any duty of care whatsoever toward any one who had purchased ZAI, purchased a building insulated with ZAI, or was exposed to ZAI by any means.

33

314

6     In the event that the Crown and the Manufacturers are held jointly and severally liable for damages arising from the use of ZAI, the Crown seeks contribution and indemnification from the Manufacturers who are liable, including the W.R. Grace & Co. and related companies (the " Crown Claims"), for any damages the Crown might be found liable for.

7.     This Proof of Claim is filed for protective reasons only. Specifically, it is possible that Crown Claims are exclusively related to ZAI claims for which a bar date has yet to be set. Moreover, as set forth above, it is possible that a portion of the Crown Claims may relate to asbestos personal injury claims for which a bar date has yet to be set. Nevertheless, out of the abundance of caution, the Crown files this protective Proof of Claim with respect to those Crown Claims that might relate to Asbestos Property Damage, Non-Asbestos Claims and Medical Monitoring Claims which had the March 31, 2003 Bar Date to the extent any or a portion of the Crown Claims are deemed to be an unsecured, pre-petition claim.

8.     Moreover, the Crown reserves all rights as to the determination of the classification and treatment of the Crown Claims, including without limitation, whether the Crown Claims; 1) are capable of being discharged; 2) should be part of any trust established by this Court pursuant to 11 U.S.C. Section 524(g); or 3) constitute administrative expense claims.

315

TAB D

316

This is Exhibit ⟨⟩ mentioned and
referred to in the affidavit of
*⟨illegible signature⟩*
Sworn before me this _____ day of
⟨illegible⟩ A.D. 20
A Commissioner for taking affidavits

317

34

COPY

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF Delaware | GRACE NON-ASBESTOS PROOF OF CLAIM FORM |

Name of Debtor:[1]  W. R. GRACE & Co. et al.   |  Case Number  01-01139 (JKF)

NOTE: Do not use this form to assert an Asbestos Personal Injury Claim, a Settled Asbestos Claim or a Zonolite Attic Insulation Claim. These claims will be subject to a separate claims submission process. This form should also not be used to file a claim for an Asbestos Property Damage Claim or Medical Monitoring Claim. A specialized proof of claim form for each of these claims should be filed.

Name of Creditor (The person or other entity to whom the Debtor owes money or property):

THE ATTORNEY GENERAL OF CANADA

Name and address where notices should be sent:
DEPARTMENT OF JUSTICE CANADA
130 KING ST. W., SUITE 3400, BOX 36
TORONTO, ONTARIO, CANADA, M5X 1K6
ATT. IAN R. DICK

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☒ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

This Space is for Court Use Only

Account or other number by which creditor identifies Debtor:

Check here ☐ replaces
if this claim ☐ amends a previously filed claim, dated:_____

Corporate Name, Common Name, and/or d/b/a name of specific Debtor against whom the claim is asserted:

W. R. GRACE & CO. et al

1. Basis for Claim
☐ Goods sold
☐ Services performed
☐ Environmental liability
☐ Money loaned
☐ Non-asbestos personal injury/wrongful death
☐ Taxes
☒ Other  Indemnity

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)

Your SS #:_____
Unpaid compensation for services performed
from:_____ to_____ (date)

2. Date debt was incurred: SEE SCHEDULE "A" ATTACHED    |  3. If court judgment, date obtained:

4. Total Amount of Claim at Time Case Filed:  $
If all or part of your claim is secured or entitled to priority, also complete Item 5 below.   SEE SCHEDULE "A" ATTACHED
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. Classification of Claim. Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☐ SECURED CLAIM (check this box if your claim is secured by collateral, including a right of setoff.)

Brief Description of Collateral:
☐ Real Estate    ☐ Other (Describe briefly)
_____

Amount of arrearage and other charges at time case filed included in secured claim above, if any: $_____

Attach evidence of perfection of security interest

☒ UNSECURED NONPRIORITY CLAIM  SEE  SCHEDULE "A" ATTACHED
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM - Specify the priority of the claim.

☐ Wages, salaries, or commissions (up to $4650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).

☐ Contribution to an employee benefit plan - 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(7).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

This Space is for Court Use Only

6. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

7. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.  SEE  SCHEDULE "A" ATTACHED

8. Acknowledgement: Upon receipt and processing of the Proof of Claim, you will receive an acknowledgement card indicating the date of filing and your unique claim number. If you want a file stamped copy of the Proof of Claim form itself, enclose a self addressed envelope and a copy of this proof of claim form.

Date
January 23, 2006

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
[signature]

IAN R. DICK, SENIOR COUNSEL, DEPARTMENT OF JUSTICE, CANADA

[1] See General Instructions and Claims Bar Date Notice and its exhibits for names of all Debtors and "other names" used by the Debtors

REC'D JAN 31 2006

35

318

## SCHEDULE "A" TO PROOF OF CLAIM

Her Majesty the Queen in Right of Canada as represented by The Attorney

General of Canada (the "Crown"), files this Proof of Claim and states as follows:

1.    There are currently ten class actions which have been filed across Canada

concerning Zonolite Attic Insulation ("ZAI") in which the Crown has been sued. These

class actions include the following:

- Dextras et al v. Attorney General of Canada, W.R. Grace & Co. et al, Superior Court of Quebec, District of Montréal, 500-06-000258-042 (the "Dextras Action");

- Viviane Brosseau et al v. Attorney General of Canada, Superior Court of Quebec, District of Montréal, 500-06-000286-050 (no claim against the Grace companies)(the "Brosseau Action");

- Raven Thundersky et Rebecca Bruce v. Attorney General of Canada, W.R. Grace & Co., Court of Queen's Bench of Manitoba (the "Thundersky Action");

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Federal Court, Saskatchewan;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Court of Queen's Bench of Saskatchewan;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Court of Queen's Bench of Alberta;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Supreme Court of British Columbia;

- Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Province of Quebec, District of Hull;

- Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Court of Queen's Bench of Manitoba; and

36

319

- Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al, Ontario Superior Court of Justice.

2.    In the aforementioned class actions, the petitioners/plaintiffs seek to represent all Canadians who have suffered past or will suffer future property damage and personal injury due to exposure to ZAI.

3.    An action has also been instituted by the Province of Manitoba, *Her Majesty The Queen in the Right of the Province of Manitoba v. Attorney General of Canada, W.R. Grace & Co. et al,* Court of Queen's Bench of Manitoba. The Province of Manitoba has sued the Crown and the manufacturers of ZAI for the cost of insured health services paid or to be paid to the named plaintiffs in the Thundersky Action and all other persons determined to be class members in the Thundersky Action.

4.    All the aforementioned actions pending in Canada were brought against the Crown subsequent to the Bar Date of March 31, 2003.

5.    The basic allegation in the various class actions pending in Canada is that W.R. Grace & Co. and related companies (the "Manufacturers") created and distributed an insulation product, ZAI, which contained asbestos and was therefore inherently dangerous. The Crown's alleged wrongdoing is said to be that it permitted the distribution and sale of ZAI. Nevertheless, the Crown denies owing any duty of care whatsoever toward any one who had purchased ZAI, purchased a building insulated with ZAI, or was exposed to ZAI by any means.

3+

320

6.      In the event that the Crown and the Manufacturers are held jointly and severally liable for damages arising from the use of ZAI, the Crown seeks contribution and indemnification from the Manufacturers who are liable, including the W.R. Grace & Co. and related companies (the " Crown Claims"), for any damages the Crown might be found liable for.

7.      This Proof of Claim is filed for protective reasons only.  Specifically, it is possible that Crown Claims are exclusively related to ZAI claims for which a bar date has yet to be set.  Moreover, as set forth above, it is possible that a portion of the Crown Claims may relate to asbestos personal injury claims for which a bar date has yet to be set.  Nevertheless, out of the abundance of caution, the Crown files this protective Proof of Claim with respect to those Crown Claims that might relate to Asbestos Property Damage, Non-Asbestos Claims and Medical Monitoring Claims which had the March 31, 2003 Bar Date to the extent any or a portion of the Crown Claims are deemed to be an unsecured, pre-petition claim.

8.      Moreover, the Crown reserves all rights as to the determination of the classification and treatment of the Crown Claims, including without limitation, whether the Crown Claims; 1) are capable of being discharged; 2) should be part of any trust established by this Court pursuant to 11 U.S.C. Section 524(g); or 3) constitute administrative expense claims.

321

TAB E

1 is Exhibit *E* mentioned and
eferred to in the affidavit of
    *ﾉﾉ ﾉ ﾉ ﾉ ﾉ ﾉﾉ*
;worn before me this ﾉﾉ day of
    *ﾉ ﾉ ﾉ ﾉ ﾉ*   A.D. 20ﾉﾉ
ommissioner for taking affidavits

53

322

Court File No. 01-CL-4081

SUPERIOR COURT OF JUSTICE

COMMERCIAL LIST

THE HONOURABLE ) WEDNESDAY, THE 8ᵗʰ DAY

MR. JUSTICE FARLEY ) OF FEBRUARY, 2006

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'
CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS
AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

### ORDER

THIS MOTION made by Grace Canada, Inc. (hereinafter referred to as the
"Applicant"), for an Order, among other things, appointing representative counsel in these
proceedings, was read this day at 393 University Avenue, Toronto, Ontario.

ON READING the Consent of the Parties, filed,

1. THIS COURT ORDERS that, notwithstanding the consent of Raven Thundersky,
through her counsel, Aikins MacAulay & Thorvaldson LLP ("Aikins") to the appointment of
Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP as representative counsel, Ms.
Thundersky and/or Aikins reserve the right to apply to this Honourable Court for an order
appointing Aikins as representative counsel in respect of aboriginal Canadian claims
("Aboriginal Canadian Claims"), subject to preserving the rights of all parties to raise all
objections and arguments as deemed necessary including relating to the conflict of interest
issue addressed in the Motion Record of the Applicant in support of the within motion.

DOCSTOR: 1075539u

34

- 2 -

323

2.    THIS COURT FURTHER ORDERS that, notwithstanding the preceding paragraph, and for greater certainty, nothing in this order shall preclude Aikins from acting on behalf of Raven Thundersky or any other party(ies) in respect of Canadian claims, and in particular, Aboriginal Canadian Claims, as against any party(ies) other than the Applicant, W. R. Grace & Co. and its subsidiaries, as well as certain other Affiliated Entities (as defined in the order of the United States Bankruptcy Court made on January 22, 2002, as amended).

3.    THIS COURT FURTHER ORDERS that Raven Thundersky shall in no way be precluded from nor limited in participating in these proceedings in respect of Canadian Claims, including Aboriginal Canadian Claims, as deemed appropriate by this Honourable Court.

JOSEPH P. VAN TASSEL
REGISTRAR

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

FEB 1  2005

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC

Court File No: 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE

Proceeding commenced at Toronto

ORDER

OGILVY RENAULT LLP
Barristers & Solicitors
Suite 3800, PO Box 84
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario M5J 2Z4

DERRICK C. TAY
LSUC #21152A
Tel:    416.216.4832
Fax:   416.216.3930

ORESTES PASPARAKIS
LSUC # 36851T
Tel: 416.216.4815
Fax: 416.216.3930

Solicitors for the Applicant

40
324

`

325

**TAB 3**

326

Court File No. 01-CL-4081

SUPERIOR COURT OF JUSTICE

COMMERCIAL LIST

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*

*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36,

AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

30TH REPORT OF RICHARD C. FINKE

INFORMATION OFFICER

June 18, 2009

327

## INTRODUCTION AND PURPOSE

1.    The Information Officer's 30th Report is intended to provide an update on the affairs of the Company, the U.S. Debtors and the U.S. Proceedings for the period from March 10, 2009 to June 18, 2009.[1]

## BACKGROUND

2.    The background to these proceedings is included in the previous reports filed with the Canadian Court and is therefore not repeated in detail in this 30th Report.

3.    The stay period in Canada is set to expire on October 1, 2009.

## CURRENT STATUS OF U.S. PROCEEDINGS

4.    Since the commencement of the U.S. Proceedings, the U.S. Debtors have had to address, amongst other issues, Asbestos Property Damage Claims, ZAI Claims and asbestos personal injury claims.

---

[1]      Unless stated otherwise, the defined terms have the meaning ascribed to them in Appendix "A". The information contained in this report has been received from sources believed by the Information Officer to be reliable. The Information Officer has not otherwise independently verified such information as to its accuracy or completeness. The reader is cautioned that this report may not disclose all significant matters about the Company (as defined herein). Accordingly, this report does not express an opinion or provide any other form of assurance on the information presented herein.    The Information Officer may refine or alter his observations as further information is obtained or is brought to his attention after the date of this report.

This report is made solely to inform and advise the Court of the progress of the Company during these proceedings. The Information Officer assumes no responsibility or liability for any loss or damage occasioned by any party as a result of the circulation, publication, reproduction or use of this report. Any use that any party makes of this report, or any reliance on or decisions to be made based on it, is the responsibility of such party.

328

- 2 -

### *Asbestos Property Damage Claims*

5.   Historically, the U.S. Debtors had faced litigation claims arising out of the use of certain building products (a spray on fireproofing sold as Monokote-3 and spray-on acoustical plasters) that contained commercially added asbestos. In order to address these claims, the U.S. Debtors implemented a claims bar process in both the U.S. and Canada. Through this process, the U.S. Debtors objected to and moved to dismiss the Asbestos Property Damage Claims it believed to be without merit. This process is ongoing and as of June 1, 2009, there are 53 remaining Asbestos Property Damage Claims that have been identified as against the U.S. Debtors.

6.   On April 14, 2009, the U.S. Court, for the reasons set out in the memorandum opinion of Judge Fitzgerald, dated April 14, 2009, and attached hereto as Exhibit "A", disallowed and expunged 35 Canadian Asbestos Property Damage Claims.

### *Zonolite® Attic Insulation Claims*

7.   At the June 2, 2008 omnibus hearing, Judge Fitzgerald (a) ordered a bar date of October 31, 2008, with respect to the U.S. ZAI Claims; (b) ordered a hearing on the U.S. ZAI claimants' motion for recognition of a Washington state class, which hearing was held on July 22, 2008; and (c) denied various other motions filed by the U.S. ZAI claimants.

8.   As of October 31, 2008, 16,218 U.S. ZAI Claims were filed with the claims processing agent as a result of the bar date outlined above.

9.   On November 21, 2008, the U.S. Debtors, the Equity Committee, the U.S. ZAI claimants and the PD Future Claimants Representative reached an agreement in principle to settle all present and future U.S. ZAI Claims (the "**U.S. ZAI Claims Agreement**"). Under the U.S. ZAI Claims Agreement, the U.S. Debtors agreed to pay into a trust, to be established in the Plan

DOCSTOR: 1700B14\2

- 3 -

329

under section 524(g) of the Bankruptcy Code, $30 million for the first year and $30 million after three years. After the fifth year, the company will add $8 million per year to the trust if the trust's ZAI assets fall below $10 million, up to a maximum of ten such $8 million payments over 20 years.

10.     On December 15, 2008, the U.S. ZAI claimants filed a motion for preliminary approval of the U.S. ZAI settlement agreement (the **"U.S. ZAI Settlement"**). Two objections to the U.S. ZAI Settlement were filed and resolved. On January 16, 2009, the U.S. Court entered an order preliminarily approving the U.S. ZAI Settlement. A hearing for final approval of the U.S. ZAI Settlement was held on April 1, 2009 at which the U.S. Court entered an order giving final approval to the settlement.

*Personal Injury Claims*

11.     On April 7, 2008, the U.S. Debtors announced to the U.S. Court and issued a press release (attached as Exhibit "A" to the 26th Report of Richard C. Finke, Information Officer, dated May 12, 2008), announcing that they had reached an agreement in principle with the PI Committee, the Equity Committee and the PI Future Claimants Representative that would settle all present and future asbestos-related personal injury claims. Under this agreement, the U.S. Debtors agreed to pay into a trust certain assets, including US$250 million, warrants to acquire common stock, the proceeds of insurance and certain litigation and certain deferred payments. Estimates of the total value of the settlement are in excess of US$1.5 billion.

330

- 4 -

*Key Orders*

12.    Since the commencement of the U.S. Proceedings, a number of key orders have been granted by the U.S. Court that have been listed in prior reports. The following key orders have been issued by the U.S. Court since December 1, 2008:

(a)    Order authorizing the sale of certain real property to the City of Charleston, South Carolina, dated December 18, 2008;

(b)    Order authorizing the U.S. Debtors' sale of limited partnership interests in Colowyo Coal Company L.P. , dated December 17, 2008;

(c)    Order granting the first and final application of Canadian ZAI claimants pursuant to 11 U.S.C. §§ 503(b )(3)(D) and (b)(4) for allowance of administrative expenses incurred in making substantial contribution for the period from June 22, 2006 through August 31, 2008, dated December 15, 2008;

(d)    Order authorizing the U.S. Debtors to make legally required minimum contributions to the defined benefit pension plans covering U.S. Debtors' employees due April, 2009, dated March 24, 2009;

(e)    Order authorizing the U.S. Debtors to enter into a new employment agreement to extend the term of their current chief executive officer dated April 22, 2009;

(f)    Order authorizing employment and retention of Seale & Associates, Inc. as the U.S. Debtors' financial advisors for the sale of their gas equipment business, dated April 22, 2009;

(g)    Order authorizing the implementation of the 2009-2011 long-term incentive plan for key employees, dated April 22, 2009;

- 5 -

331

(h)     Order disallowing and expunging Anderson Memorial Hospital's ZAI Claim, dated May 19, 2009; and

(i)     Memorandum opinion and order sustaining the U.S. Debtors' objection to unsecured claims insofar as claims include post-petition interest and the contract default rate, dated May 19, 2009.

## CURRENT STATUS OF CANADIAN PROCEEDINGS

### The Settlement

13.     On September 2, 2008, the U.S. Debtors, the Company and Representative Counsel executed the minutes of settlement resolving all Canadian ZAI Claims (the **"Settlement"**).

14.     On September 30, 2008, the Company brought a motion before the Canadian Court for an order (the **"Canadian Settlement Approval Order"**), *inter alia*:

(a)     approving the Settlement; and

(b)     binding the parties to the Settlement.

15.     On October 17, 2008, Justice Morawetz granted the Canadian Settlement Approval Order.

16.     On October 20, 2008, the U.S. Court established a proof of claim bar date of August 31, 2009 for Canadian ZAI property damage claims and approved the related proof of claim form, bar date notices, and notice program in accordance with the Settlement (the **"CDN ZAI PD Bar Date Order"**). On November 13, 2008, Justice Morawetz granted an order recognizing the CDN ZAI PD Bar Date Order in Canada, in accordance with its terms.

- 6 -

332

17.    Under the terms of the Settlement, if the U.S. Confirmation Order (as defined below) is not granted prior to October 31, 2009, then the Settlement will be considered null and void.

18.    Grace is cognizant of this deadline and is working toward having the U.S. Confirmation Order by that time.

### The Thundersky Motion

19.    On February 23, 2009, counsel for Raven Thundersky and Rebecca Bruce served materials in connection with a motion seeking an order, *inter alia*, (a) lifting of the stay period in Canada as against the Crown to allow certain Canadian claimants to pursue claims against the Crown; and (b) authorizing the Canadian claimants to commence and/or continue legal proceedings against the Crown (the **"Thundersky Motion"**).

20.    The Crown opposed the Thundersky Motion and on April 1, 2009, the Canadian Court dismissed the Thundersky Motion.

### The Disclosure Motion

21.    On June 2, 2009, Representative Counsel brought a motion before the Canadian Court seeking an order authorizing the Crown to disclose, on a monthly basis with the last disclosure to be provided on August 15, 2009, pursuant to Section 8(2)(c) of the *Privacy Act*, R.S.C. 1985, c. P-21, the personal information relevant to the identification of potential Canadian claimants who may have homes that may contain ZAI or vermiculite insulation (the **"Disclosure Motion"**).

22.    The Disclosure Motion was not opposed and the Canadian Court granted the relief sought.

333

## CHAPTER 11 PLAN

### *The Plan*

23.    On Friday, September 19, 2008, the proposed Plan and a draft disclosure statement for the Plan were filed in U.S. Court. Hearings were held on October 27, November 14 and 24, and December 15, 2008 with respect to approval of the disclosure statement. The U.S. Court did not approve the disclosure statement or the Plan, but instructed the Plan proponents to file an amended Plan and disclosure statement on February 3, 2009.

24.    On February 3, 2009, the U.S. Debtors filed the Amended Plan and the Disclosure Statement with the U.S. Court. The Amended Plan amended the proposed Plan in various ways, including the addition of an outline of, *inter alia*, the sources of funding for the asbestos property damage trust. Objections were filed by a few remaining objecting parties on February 20, 2009. The U.S. Debtors filed their first Amended Plan and Disclosure Statement, along with certain revised Plan exhibits, on February 27, 2009 in order to address the objections that were filed and otherwise make updates and modifications to the Plan documents that were requested by certain parties. The U.S. Debtors also filed updated financial projections and an updated best interest analysis. The U.S. Debtors resolved all remaining objections to the Disclosure Statement prior to or at a hearing held on March 9, 2009 before the U.S. Court, and the Disclosure Statement Order was entered.

25.    By March 31, 2009, the Debtors mailed copies of the final version of the Amended Plan documents and the solicitation materials to all classes of claimants designated in the Amended Plan and certain other parties as set forth in the Disclosure Statement order by March 31, 2009. The voting deadline on the Amended Plan was May 20, 2009 at 4:00 pm, prevailing Eastern

- 8 -

Time. In addition, any objections to the confirmation of the Amended Plan were to be in writing and served and filed on or before May 20, 2009, 4:00 p.m., prevailing Eastern Time.

26.     The results of the voting were that holders of at least two-thirds in amount and more than one-half in number (or for classes voting for Section 524(g) purposes, at least 75% in number) of claims voting in each impaired class have voted to accept the Plan. The votes of creditors in class 9, which is unimpaired, were provisionally solicited and provisionally tabulated. More than one-half in number of claims voting in class 9 voted to accept the Plan, but the provisional vote did not obtain the requisite two-thirds dollar amount for acceptance.

27.     The Honourable Judith K. Fitzgerald of the U.S Court will hold the confirmation hearing on the Amended Plan in two phases. The confirmation hearings on the U.S. Debtor's Amended Plan will be as follows:

    (a)     Phase I is scheduled for June 22-25, 2009; and

    (b)     Phase II is scheduled for September 8-11, 2009.

28.     A pre-trial conference for phase I is scheduled for June 18, 2009 and a pre-trial conference for phase II is scheduled to take place on July 20-21, 2009, at which time other confirmation issues may also be heard, if needed..

29.     If the Court is satisfied that the Amended Plan meets all confirmation requirements as outlined in section 1129 of the U.S. Bankruptcy Code, it is anticipated that the U.S. Court will enter a confirmation order (the "**U.S. Confirmation Order**").

## CRIMINAL PROCEEDINGS AGAINST W. R. GRACE

30.     The District Court in Montana heard a pre-trial hearing in the criminal proceeding, as described in previous Information Officer's reports, on January 21-23, 2009. The trial

- 9 -

335

commenced on February 19, 2009 and lasted eleven (11) weeks. On May 8, 2009, the jury acquitted the Company and three (3) former executives of the Company on all counts in the indictment. The prosecution had previously dropped the charges against two (2) other former executives of the Company due to lack of evidence. One additional defendant in the criminal proceedings was scheduled to stand trial beginning in September, 2009, but on June 15, 2009, the prosecution moved to dismiss all charges against that defendant.

**U.S. TRUSTEE**

31.    The U.S. Trustee is fulfilling its usual duties. The U.S. Debtors continue to file their monthly reports at the end of each month.

Dated as of this 18th day of June, 2009.

*Richard C. Finke*

INFORMATION OFFICER

336

APPENDIX "A"

| | |
|---|---|
| **Amended Plan** | means the amended proposed plan of reorganization filed with a disclosure statement by U.S. Debtors with the U.S. Court |
| **Asbestos Property Damage Claims** | means claims arising out of the use of Monokote-3 and acoustical plaster products which contained commercially added asbestos |
| **Canadian Court** | means the Ontario Superior Court of Justice |
| **Canadian Proceedings** | means these proceedings commenced in Canada by the Company on April 4, 2001 under the CCAA |
| **CCAA** | means *Companies' Creditors Arrangement Act* |
| **Company** | means Grace Canada, Inc. |
| **Disclosure Statement** | means the disclosure statement filed with the Amended Plan by U.S. Debtors with the U.S. Court |
| **Equity Committee** | means the Official Committee of Equity Security Holders |
| **PD Future Claimants Representative** | means the representative of future asbestos-related property damage claimants |
| **PI Future Claimants Representative** | means the representative of future asbestos-related personal injury claimants |
| **Information Officer** | means the Company representative appointed by the Canadian Court to provide information to the Canadian Court quarterly on the Company, the U.S. Debtors and the U.S. Proceedings |
| **PI Committee** | means the Official Committee of Asbestos Personal Injury Claimants |
| **Plan** | means the proposed plan of reorganization filed with a disclosure statement by U.S. Debtors with the U.S. Court |
| **Representative Counsel** | means Lauzon Belanger S.E.N.C.R.L. and Scarfone Hawkins LLP |
| **U.S. Court** | means the United States Bankruptcy Court for the District of Delaware |
| **U.S. Debtors** | means W. R. Grace and 61 of its U.S. subsidiaries that filed for protection in the U.S. Proceedings |
| **U.S. Proceedings** | means the proceedings commenced before the U.S. Court by the U.S. Debtors' filing of voluntary petitions for protection under Chapter 11 of the U.S. Bankruptcy Code |
| **ZAI** | means Zonolite Attic Insulation |
| **ZAI Claims** | means claims for property damage and personal injury as a result of ZAI |

337

EXHIBIT "A"

MEMORANDUM OPINION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR DISTRICT OF DELAWARE

IN RE:

W.R. GRACE & CO., et al.          Bankruptcy No. 01-01139
  Debtor(s)          Chapter 11

     Related to Dkt. No. 14597 Debtors' Motion and
     Memorandum for an Order Pursuant to F.R.B.P. 7056
     Disallowing and Expunging Eighty-Eight (88) Time-Barred
     Canadian Asbestos Property Damage Claims

### MEMORANDUM OPINION[1]

  The matter before the court is Debtors' Motion and Memorandum for an Order Pursuant

to F.R.B.P. 7056 Disallowing and Expunging Eighty-Eight Time-Barred Canadian Asbestos

Property Damage Claims, docketed as a Motion for Summary Judgment.[2] Since the filing of the

motion, the eighty-eight claims have been reduced to thirty-five due to withdrawal,

expungement, or settlement of claims. Debtors assert that these remaining thirty-five claims are

time-barred by the applicable Canadian ultimate limitations periods,[3] similar to American

statutes of repose, and move for summary judgment. Anderson Memorial Hospital filed a

response[4] to Debtors' motion on its own behalf and on behalf of the Canadian Claimants. The

---

 [1] The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

 [2] Doc. No. 14597.

 [3] The "ultimate" limitations periods are sometimes referred to as the "absolute" limitations periods. We use the terms interchangeably in this Memorandum Opinion and Order.

 [4] Anderson Memorial Hospital's Response to Debtor's Motion for Summary Judgment Directed to 88 Claims from Canada Based upon the Statute of Limitations, Doc. No. 14898. To the extent the response is filed by Anderson Memorial Hospital as the representative of a worldwide class action, no such class has been recognized and Anderson Memorial Hospital is
(continued...)

1

339

Canadian Claimants dispute the dates upon which the ultimate limitations periods would begin to run and contend that the limitations periods were tolled.[5]

Background

The Canadian Claimants seek to recover the costs associated with management and removal of asbestos-containing surfacing materials sold by Debtors and installed in the Claimants' buildings. The thirty-five remaining Canadian Claims involve buildings in three different Canadian provinces. Thirty-three of the claims arise from properties located in Alberta and the remaining two arise from properties located in Manitoba and British Columbia. It is undisputed that Debtors ceased selling asbestos-containing products in Canada by 1976, at the latest.[6] Based upon this date, Debtors argue that the thirty-three Alberta claims are time-barred. With regard to the Manitoba claim, the parties have stipulated to the fact that the asbestos-containing material was installed in 1956.[7] The British Columbia claim involves an installation date in the 1960s at the latest.[8] Based upon these dates, the Debtors argue that the applicable

---

[4](...continued)
not a Canadian Claimant. The court will proceed to address the substance of the Debtors' summary judgment motion.

[5] The Canadian Claimants also argued that the issue of ultimate limitations periods was not properly raised in Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims. *See* Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment Directed to 88 Claims from Canada Based upon the Statute of Limitations, Doc. No. 14898, at 3-4. The court previously ruled that the language of the objection was broad enough to raise the ultimate limitations periods. Transcript of 9/10/07, Doc. No. 16930, at 95-96.

[6] Affidavit of James Cintani, Exhibit D to Doc. No. 14597, at 2.

[7] Transcript of 12/15/08, Doc. No. 20371, at 16-17.

[8] Rule 1006 Summary of Voluminous Writings 44 Claims Barred By Canadian Ultimate Limitations Periods, Exhibit C to Doc. No. 14597, Debtors' Motion and Memorandum for an
(continued...)

2

340

Canadian ultimate limitations periods expired with respect to each of the remaining claims prior to April 2, 2001, the Bankruptcy Petition Date.

Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the moving party is entitled to summary judgment where the evidence shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The non-moving party can defeat summary judgment if it produces evidence in the record creating a genuine issue of material fact.[9] However, where the moving party has satisfied its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."[10] The non-moving party cannot "rely merely on allegations or denials in its own pleading; rather, its response must...set out specific facts showing a genuine issue for trial."[11] Only evidence which is "ultimately reducible to admissible evidence" will be considered.[12]

Causes of Action

Analysis of ultimate limitations periods requires identification of the cause of action being pursued. Debtors assert that, under Canadian law, "any asbestos-in-building tort claims

---

[8](...continued)
Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Eighty-Eight (88) Time-Barred Canadian Asbestos Property Damage Claims, at 2. The source of the installation date is identified as Report of Monenco Consultants Limited.

[9] *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

[10] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[11] Fed. R. Civ. Pro. 56(e)(2).

[12] *Lexington Insurance Co. v. Western Pennsylvania Hospital*, 423 F.3d 318, 329 n. 6 (3d Cir. 2005)(internal quotations omitted).

3

fail under the rubric of 'pure economic loss.'"[13] Therefore, the Debtors addressed only how the ultimate limitations periods would bar economic loss claims. However, the Claimants contend that the Debtors failed to show that claims based on certain other "asbestos-property damage causes of action," such as nuisance, warranty, conspiracy, restitution, fraud, and misrepresentation, would be barred.[14] In addition, the Claimants assert that, due to a manufacturer's continuing duty to warn, the ultimate limitations periods cannot bar these claims as "a new cause would accrue for every breach of the continuing duty to warn."[15]

Both parties' Canadian law experts reached the same conclusion with regard to the cause of action being pursued by the Claimants. That is, in Canada, the claims are cognizable only as negligence claims for pure economic loss.[16] The Supreme Court of Canada in *Winnipeg Condominium Corp. No. 36 v. Bird Construction Co. Ltd.*, addressed whether the cost of repairing a defect in the construction of a building is the type of economic loss recoverable in

---

[13] Debtors' Reply in Support of their Motion for an Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Eighty-Eight (88) Time-Barred Canadian Asbestos Property Damage Claims, Doc. No. 14965, at 4.

[14] Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment Directed to 88 Claims from Canada Based upon the Statute of Limitations, Doc. No. 14898, at 11-12.

[15] *Id.* at 11.

[16] *See* Affidavit of Graeme Mew, Debtors' Expert, Exhibit B to Doc. 14965, Debtors' Reply in Support of their Motion for an Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Eighty-Eight (88) Time-Barred Canadian Asbestos Property Damage Claims, at ¶ 13, stating "regardless of the nominate tort alleged, the claimants' allegations fall in line with what the leading author on Canadian tort law describes as recovery for pure economic loss." *See also* Deposition of John C. Irvine, Claimants' Expert, (Aug. 22, 2007), Tab E to Doc. No. 16757, Appendix to Debtors' Supplemental Submission in Support of Their Motion and Memorandum for an Order Pursuant to F.R.B.P. Disallowing and Expunging What is Now Fifty-Five (55) Time-Barred Canadian Asbestos Property Damage Claims, at 142-44, affirming his belief that all of the claims would be considered negligence claims for pure economic loss.

tort.[17] Pure economic loss claims are those which do not arise from injury to persons or damage to property apart from the defective product itself.[18] The *Winnipeg Condo* court recognized and outlined five categories in which these claims arise. The relevant category in both *Winnipeg Condo* and under the facts of this case is "negligent supply of shoddy goods or structures."[19] Prior to *Winnipeg Condo*, the claims asserted by the Canadian Claimants in this case "would have been regarded as speculative if not entirely unarguable in Canadian courts[.]"[20] Furthermore, Canadian courts are skeptical of attempts to recharacterize causes of action and are unwilling to permit the purpose of the ultimate limitations periods to be undermined.[21] Based on

---

[17] [1995] 1 S.C.R. 85, 90, 1995 S.C.R. LEXIS 373, at *10.

[18] *Id.* at 97, 1995 S.C.R. LEXIS 373, at *21-22.

[19] *Id.*, 1995 S.C.R. LEXIS 373, at *21. "[T]ort law serves to encourage the repair of dangerous defects and thereby to protect the bodily integrity of inhabitants of buildings." *Id.* at 120, 1995 S.C.R. LEXIS 373, at *60. Despite the use of the term "shoddy," the court distinguished poor quality workmanship from dangerous defects and restricted itself to the facts presented in ruling that, if negligence was found, the plaintiff was entitled "to recover the reasonable cost of putting the building into a non-dangerous state." *Id.* at 120-21, 1995 S.C.R. LEXIS 373, at *60.

[20] Expert Report of Professor John Irvine, Doc. No. 16754, at 4.

[21] *See Edwards Estate v. Beckmann*, No. S060723, 2008 BC.C. LEXIS 581, at *26 (B.C. S.C. Mar. 17. 2008) ("These amendments, then, seek to avoid the ultimate limitation period by alleging the breach of continuing duties during the relevant period. The plaintiffs seek to accomplish indirectly what they cannot achieve directly, that is, to extract damages for the time barred torts"); *Bowes v. Edmonton (City)*, [2007] 425 A.R. 123, at ¶ 173, 2007 AB.C. LEXIS 1877, at *77 (Alta. C.A. Dec. 28, 2007) ("To regard every ancient failure to warn as occurring every day would be a fiction destroying all limitations periods. If the above were not the law, then most cases of delayed harm from a tort could be dressed up as failures to warn, with no limitation period"); *Bowes v. Edmonton (City)*, [2005] 49 Alta. L.R. (4th) 100, at ¶ 210, 2005 AB.C. LEXIS 1114, at *105-06 (Alta. Q.B. July 7, 2005) ("It seems to me that categorization of non-action in this context as either nuisance or recurring negligence has the potential to substantially undermine limitations law in this province and to return us to the unacceptable uncertainty which marked litigation prior to proclamation of the Limitations Act").

343

reported cases construing Canadian law and the consensus in opinion of the parties' experts,
which is unrefuted on this record, the court will proceed to analyze the claims as negligence
claims for pure economic loss.

Canadian Limitations Acts

As the Claimants' buildings are located in Alberta, Manitoba, and British Columbia, the
laws of each of those Canadian provinces must be considered in determining whether the claims
are barred by the applicable limitations period.

Alberta's Limitations Act, R.S.A., ch. L-12

Pursuant to §3(1)(b) of Alberta's Limitations Act, a claimant must seek a remedial order
within the ten-year ultimate limitations period.[22] Section 3(3)(b) of the Act states that, for
purposes of the ultimate limitations period, "a claim based on a breach of a duty arises when the
conduct, act or omission occurs."[23] The Claimants contend, however, that this latter provision
does not apply to economic loss cases, but only to those cases involving a generalized breach of
duty. The Claimants base their argument on the general definition section of the Act which
defines "injury" in five separate categories, one of which is "economic loss" and another for
breach of duty where the injury does not fall into one of the other five categories.[24]  However, a

---

[22] "[I]f a claimant does not seek a remedial order within . . . (b)10 years after the claim
arose . . .the defendant, on pleading this Act as a defence, is entitled to immunity from liability in
respect of the claim." R.S.A., ch. L-12 §3(1)(b).

[21] [2007] 425 A.R. 123, at ¶ 151, 2007 AB.C. LEXIS 1877, at *69, interpreting and
applying the language of the R.S.A., ch. L-12 §3(3)(b). "That paragraph is plain. It says that the
time under the alternative absolute period starts to run from the negligent or wrongful act or
omission itself. Therefore, one should not wait until the harm occurs."

[24] Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re:
Canadian Statute of Limitations, Doc. No. 17059, at 17.

6

344

similar argument was rejected by the Alberta Court of Appeal in *Bowes v. Edmonton*.[25] In *Bowes*, counsel for the plaintiffs attempted to avoid the result of the language of § 3(3)(b) by relying on the definition of "claim" in §1(a), the general definition section of the Act.[26] The court rejected the argument, stating "the Legislature does not confine itself to the vague general s. 1(a) [definition],....Section 3(1)(b), the unconditional limitation period, has its own express interpretation section."[27] Therefore, Claimants cannot avoid the result that the Alberta ultimate limitations period commences to run upon the act, omission, or conduct that constituted the breach.

As previously stated, these claims fall under the *Winnipeg Condo* category of "negligent supply of shoddy goods or structures,"[28] and the Debtors ceased selling asbestos-containing products in Canada by 1976.[29] Therefore, the Debtors could not have committed an act constituting the negligent supply of these products after that date. Consequently, the ten-year ultimate limitations period for the Alberta claims would have expired by 1986. Absent suspension of the ultimate limitations period, the thirty-three Alberta claims are time-barred.

Manitoba's Limitation of Actions Act, R.S.M., ch. L150[30]

---

[25] *Bowes*, [2007] 425 A.R. 123, at ¶¶ 148-51, 2007 AB.C. LEXIS 1877, at *67-69.

[26] *Id.* at ¶ 148, 2007 AB.C. LEXIS 1877, at *68-69 (citing R.S.A., ch. L-12 § 1(a), which provides that "'claim' means a matter giving rise to a civil proceeding in which a claimant seeks a remedial order").

[27] *Id.* at ¶¶ 149-50, 2007 AB.C. LEXIS 1877, at *68-69.

[28] *Winnipeg Condo*, 1 S.C.R. at 97, 1995 S.C.R. LEXIS 373, at * 21.

[29] Affidavit of James Cintani, Exhibit D to Doc. No. 14597, at 2.

[30] The Claimants assert that the Manitoba ultimate limitations period has no application (continued...)

7

Pursuant to Manitoba's statute, the ultimate limitations period within which to bring an action is thirty years after the occurrence of the acts or omissions that gave rise to the cause of action.[31] The language of the statute is clear. As in Alberta, the date for commencement of the ultimate limitations period is the date of the relevant act or omission.[32] With regard to the single Manitoba claim, the parties stipulated to a 1956 installation date of the Debtors' product.[33] Therefore, the limitations period expired with respect to this claim no later than 1986 unless the period was otherwise tolled.[34]

### British Columbia's Limitation Act, R.S.B.C., ch. 266

British Columbia's Limitation Act provides a thirty-year ultimate limitations period to bring an action which begins to run from "the date on which the right to do so arose."[35] The

---

[30](...continued)
in this bankruptcy proceeding and only applies to special proceedings brought in Manitoba. *See* Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re: Canadian Statute of Limitations, Doc. No. 17059, at 15, n.12. The Claimants cite no authority for this assertion. The special proceedings described are the only mechanism by which a plaintiff can bring a claim after the normal limitations period has expired. R.S.M., ch. L150 § 14(1).

[31] In Manitoba, a plaintiff must apply to the court for an extension of time to begin or continue a cause of action beyond the normal limitations period. R.S.M., ch. L150 § 14(1). However, "[t]he court shall not grant leave (a) to begin an action; or (b) to continue an action that has been begun; more than 30 years after the occurrence of the acts or omissions that gave rise to the cause of action." § 14(4).

[32] *Cf.* R.S.A., ch. L-12 §§ 3(1)(b), (3)(b) (interpreted in *Bowes*, [2007] 425 A.R. 123, at ¶ 151, 2007 AB.C. LEXIS 1877, at *69, to mean the "absolute period starts to run from the negligent or wrongful act or omission itself").

[33] Transcript of 12/15/08, Doc. No. 20371, at 16-17.

[34] *See* discussion of "tolling," *infra*.

[35] "[N]o action to which this Act applies may be brought . . . (c) . . . after the expiration of 30 years from the date on which the right to do so arose." R.S.B.C., ch. 266 § 8(1)(c).

346

British Columbia Act, unlike the Alberta statute, does not define when a cause of action arises, but British Columbia case law provides guidance. The most factually relevant case is *Privest Properties Ltd. v. Foundation Co. of Canada*, where the plaintiffs sought compensation for the removal costs of the asbestos-containing material MK-3.[36] Claimants attempt to argue that the *Privest* decision is not applicable because it does not address the "ultimate" limitations period but rather interprets the "normal" limitations period.[37] The normal limitations period provided that an action "shall not be brought after the expiration of 6 years after the *date on which the right to do so arose.*"[38] Therefore, the court was interpreting identical language found in both the normal and ultimate limitations provisions and its analysis focused on the identical issue: that is, when time begins to run under the Act.[39] The court concluded that "a cause of action accrues when all of the constituent elements exist, whether or not the plaintiff is then aware of them."[40] The court then applied its ruling to the facts of the case and held that it was "clear that all of the elements necessary to the plaintiff's cause of action came into existence...when the MK-3 was installed in the Building. Accordingly, the limitation period began to run...when the installation was completed."[41]

The Claimants argue that the *Privest* court's holding is incorrect and is not based on any

---

[36] [1995] 11 B.C.L.R. (3d) 1, at ¶ 1 (B.C. S.C.).

[37] Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re: Canadian Statute of Limitations, Doc. No. 17059, at 18, n.13.

[38] *See Privest*, 11 B.C.L.R. (3d) 1, at ¶ 164 (emphasis added).

[39] *Id.* at ¶¶ 163-71.

[40] *Id.* at ¶ 171.

[41] *Id.* at ¶ 172.

9

347

Canadian legal authority.[42]  However, there is no British Columbia case law contrary to *Privest*

and we decline to create a different interpretation of the statute where a British Columbia court

has already spoken directly on the issue.  The single British Columbia claim at issue herein

involved an installation date in the 1960s.  Therefore, the thirty-year ultimate limitations period

expired prior to the April 2, 2001, Bankruptcy Petition Date.

Tolling of Limitations Periods

The Claimants assert that, even if the limitations periods would have commenced at a

date such as to potentially bar their claims, the running of the ultimate limitations periods was

suspended.

Fraudulent Concealment

First, the Claimants contend that the limitations periods were postponed by Debtors'

fraudulent concealment of the injury for which the remedial order is sought.  British Columbia's

ultimate limitations period continues to run despite fraudulent concealment.[43]  Therefore, this

---

[42] Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re: Canadian Statute of Limitations, Doc. No. 17059, at 7, n.6.

[43] *Edwards Estate*, 2008 BC.C. LEXIS 581, at *16 ("On the face of the legislation, it seems clear that the 30 year period runs despite a postponement under s. 6 of the running of time in an action '(d) based on fraud or deceit;' and '(e) in which the material facts relating to the cause of action have been willfully concealed'").

argument could only apply with respect to the Alberta[44] and Manitoba[45] claims. While the Claimants have produced numerous exhibits[46] in an attempt to support a claim of fraudulent concealment, the miscellaneous exhibits are not identified in any way or supported by an affidavit. Because the Claimants have not satisfied the basic evidentiary standards, the court will not consider these exhibits.[47] Despite the fact that the Claimants' pleadings contain allegations

---

[44] "(1) The operation of the limitation period provided by section 3(1)(b) is suspended during any period of time that the defendant fraudulently conceals the fact that the injury for which a remedial order is sought has occurred. (2) Under this section, the claimant has the burden of proving that the operation of the limitation period provided by section 3(1)(b) was suspended." Limitations Act, R.S.A., ch. L-12, § 4. Section 3(1)(b) provides the ultimate limitations period.

[45] "Where the existence of a cause of action has been concealed by fraud of the person setting up this Part or Part II as a defence, the cause of action shall be deemed to have arisen when the fraud was first known or discovered." Limitation of Actions Act, R.S.M., ch. L150, § 5. Part II of the Act contains §14(4), which is the ultimate limitation provision.

[46] In Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re: Canadian Statute of Limitations, Doc. No. 17059, at 12-15, Claimants made various allegations of Debtors' fraudulent concealment. In support of these allegations, Claimants state that "[e]vidence of Grace's concealment is demonstrated in Exhibits 1-145 submitted in the Court's binder prior to the September 10, 2007 hearing." Id. at 12, n.11. There is no indication that these exhibits were admitted into evidence, and they were submitted with no accompanying affidavit, exhibit list, certificate of authenticity, or any description of what the documents purport to be or how, if at all, they have any bearing on the matters at bench.

[47] The following is a partial, illustrative list of the documents submitted: unnumbered page one of Exhibit 2 appears to be a patent for "light weight moulded articles and methods of making the same," Exhibit 3 appears to be an undated advertisement for Monokote without any identification as to its circulation, and Exhibit 7 is titled "Information Kits/Booklets Distribution Breakdown" and is also undated. Claimants have not shown how the documents are related to this Motion. The exhibits were submitted without a document list, description, or affidavit, or identification of any kind. We have not even a proffer as to what the documents purport to be and, apparently are left to our own devices to figure that out. Claimants should produce a competent witness for that purpose and have not. Despite their burden in opposing summary judgment, Claimants failed to satisfy the most basic standards for admission of these documents into evidence. We have no evidence or proffer of authenticity, relevance, or exceptions to hearsay. In short, we have no principled way to relate these exhibits to the matter at bench. We

(continued...)

349

of fraudulent concealment, Claimants, as the non-moving parties, cannot "rely merely on allegations or denials in [their] own pleading."[48] In addition, while the fraudulent concealment alleged does not have to rise to the level of deceit or common law fraud, in order to argue equitable fraud under Canadian law, a special relationship must exist between the parties.[49] The Canadian Claimants have not shown that a special relationship exists between them and Debtors to support a fraudulent concealment argument based on equitable fraud. Therefore, the court has no evidence to conclude that the ultimate limitations periods were suspended by fraudulent concealment.[50]

---

[47](...continued)

do not know the source of these documents or how they came into the possession of Canadian Claimants' counsel. We have no foundation to consider these exhibits as evidence and we do not consider them. *Cf. Lexington Insurance Co. v. Western Pennsylvania Hospital*, 423 F.3d 318, 329 n. 6 (3d Cir. 2005) ("Our Court has not precluded reliance on unauthenticated documents to oppose a motion for summary judgment, so long as they are ultimately 'reducible to admissible evidence'"). In *Lexington*, the court had both testimony and circumstantial evidence of authenticity of the document, which the court found to provide a sufficient foundation. *Id.* We do not.

[48] Fed. R. Civ. Pro. 56(e).

[49] In order to toll the limitations period, the fraudulent concealment alleged "need not amount to deceit or common law fraud." *Guerin v. Canada*, [1984] 2 S.C.R. 335, 390, 1984 S.C.R. LEXIS 492, at *94. However, in order to demonstrate equitable fraud, there must have been "conduct which, having regard to some special relationship between the two parties concerned, is an unconscionable thing for the one to do towards the other." *Id.*

[50] Notwithstanding the failure of the Claimants to produce evidence in support of fraudulent concealment, it is unlikely that a fraudulent concealment argument could succeed given the facts. According to *Ambrozic v. Burcevski*, "[t]he limitation period will not be suspended if the plaintiff could have uncovered the fraud but did not make reasonable inquiries." [2008] 90 Alta. L.R. (4th) 247, at ¶ 25, 2008 AB.C. LEXIS 633, at *15-16 (Alta. C.A. May 22, 2008). Similarly, the Supreme Court of Canada, stated that "[i]t is well established that where there has been a fraudulent concealment of the existence of a cause of action, the limitation period will not start to run until the plaintiff discovers the fraud, or until the time when, with reasonable diligence, he ought to have discovered it." *Guerin*, 2 S.C.R. at 390, 1984 S.C.R.
(continued...)

12

Anderson Memorial Hospital's Class Action Complaint

The Claimants' second argument for tolling of the limitations periods is based upon

Anderson Memorial Hospital's Class Action Complaint, which was filed in a South Carolina

Court of Common Pleas in 1992.[51] Given the date the complaint was filed, the class action

tolling argument would not affect the expiration of the ultimate limitations periods with regard to

the Alberta and Manitoba claims, which expired by 1986. Therefore, the only issue is whether

the filing of the South Carolina complaint suspended the ultimate limitations period with respect

to the single British Columbia claim. British Columbia has a statute governing when the filing

of a class action suspends a limitations period.[52] Based on the language of the British Columbia

Class Proceedings Act, it is clear that it does not apply to suspend the limitations period in these

---

[50](...continued)
LEXIS 492, at *94. In *Canadian Indemnity Co. v. Canadian Johns-Manville Co.*, the Supreme Court of Canada addressed the awareness of the risks of asbestos within the insurance industry. [1990] 2 S.C.R. 549, 596, 1990 S.C.R. LEXIS 36, at *84. The court recognized that "asbestos-related health risks had spread well beyond the boundaries of industry knowledge and were in wide public circulation " in 1970. *Id.* at 597, 1990 S.C.R. LEXIS 36, at *86. There can be no fraudulent concealment of that which is public knowledge. Therefore, even if the limitations periods were tolled until 1970, both Alberta's ten-year limitations period and Manitoba's thirty-year limitations period would have expired by the Bankruptcy Petition Date, April 2, 2001.

[51] In its response to Debtors' Motion, Anderson Memorial Hospital states that "these Canadian claimants have filed claim forms...referencing the Anderson Memorial Hospital class litigation....That litigation was ongoing at the time the Debtors' bankruptcy petition was filed, and the Canadian claimants filing under that class action are entitled to have the statute of limitations tolled....Because these claims were subject to class proceedings, the statutes of limitations have been suspended since 1992." Doc. No. 14898, at 6. We note that the proofs of claim forms were actually filed by Speights & Runyan, the same firm attempting to be class counsel. However, in this Circuit, it is clear that Anderson Memorial Hospital does not have authority to represent the Canadian Claimants. *In re W.R. Grace & Co.*, 2009 U.S. App. LEXIS 5281, at *4-5 (3d Cir. Mar. 11, 2009) (holding that the role of class counsel in a South Carolina class action does not provide authority to file proofs of claim in bankruptcy proceedings).

[52] Class Proceedings Act, R.S.B.C., ch. 50.

351

circumstances.

First, the Class Proceedings Act provides for suspension of a limitations period where it would be reasonable for a person to assume that he would be included as a member of the class.[53] Due to South Carolina's "door closing statute,"[54] it would be unreasonable for any of the Canadian Claimants to believe that they would be included as class members. The door closing statute prohibits those who are not residents of South Carolina from suing foreign corporations in that State unless the claims arose or the property was situated in South Carolina. The statute "controls the eligibility of class members in a class action where the defendant is a foreign corporation."[55] The Debtors are corporations created by or under the laws of states other than South Carolina and are "foreign" corporations within the meaning of the South Carolina statute.[56] The claims asserted by the Canadian Claimants did not arise in South Carolina or

---

[53] "If a person has a cause of action, a limitation period applicable to that cause of action is suspended . . . in the event that . . . (b) when the proceeding . . . is commenced, it is reasonable to assume that, if the proceeding were to be certified...(ii) the person would be included as a member of the class on whose behalf the cause of action would be asserted . . . ." R.S.B.C., ch. 50, § 38.1.

[54] S.C. Code Ann. §15-5-150.

[55] *Farmer v. Monsanto*, 579 S.E.2d 325, 328 (S.C. 2003). In the Anderson Memorial action, the South Carolina court found that the door closing statute would not permit the court to "assert jurisdiction over the claims of non-resident potential class members...whose claims do not arise in South Carolina or whose property at issue is not situated within this state." *Anderson Memorial Hospital v. W.R. Grace & Co.*, No. CIV. A. 92-CP-25-279, 1994 WL 1744074 at *1 (S.C.Com.Pl. Aug. 8, 1994). Although the South Carolina Supreme Court in *Monsanto* found that §15-5-150 did not determine subject matter jurisdiction but rather dealt with capacity to sue, the Canadian Claimants would nonetheless have been excluded from the class by the door closing statute. "Limiting the class to members who qualify under § 15-5-150 simply excludes class members who would otherwise have no access to [South Carolina] courts via individual lawsuits." *Monsanto*, 579 S.E.2d at 328.

[56] *Anderson Memorial Hospital*, 1994 WL 1744074 at *2 (S.C.Com.Pl.) ("It is undisputed
(continued...)

14

involve property located in South Carolina.[57]  Based on the door closing statute, the tolling

provision does not apply here.

Second, the tolling argument must fail because the Class Proceedings Act does not apply

to proceedings that may be brought in a representative capacity under another statute.[58]  Clearly,

Anderson Memorial Hospital did not file under British Columbia's Class Proceedings Act.  In

addition, the Act does not apply to representative proceedings commenced before the Act came

into force.[59]  The British Columbia Legislature did not pass the Act until 1995, well after the

filing of the 1992 Anderson Memorial South Carolina Complaint.  Therefore, the Act does not

apply to the South Carolina action.

Conclusion

For the foregoing reasons, the court concludes that there is no genuine issue of material

fact in dispute and as a matter of law summary judgment in favor of Debtors is appropriate.  The

---

[56](...continued)
that the defendants in this action are corporations created by or under the laws of states other
than South Carolina").

[57] *Id.* at *1 ("Anderson's proposed class would include claims by purported class
members who are not residents of South Carolina and whose buildings at issue are not located in
South Carolina").

[58] R.S.B.C., ch. 50, § 41(a). In support of their class action tolling argument, the
Canadian Claimants rely upon the Class Proceedings Act and *Currie v. McDonald's Restaurants
of Canada Ltd.*, [2005] 74 O.R.3d 321, 2005 Ont. Rep. LEXIS 22 (Ont. C.A. Feb. 16, 2005).
Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment Directed to
88 Claims From Canada Based upon the Statute of Limitations, Doc. No. 14898, at 6-8. The
Canadian Claimants cited no other statute in support of the proposition that a foreign class action
could toll the British Columbia limitations period. With respect to the *Currie* case, the case was
not decided in British Columbia, did not apply British Columbia law, and did not address tolling
of limitations periods.

[59] *Id.* at § 41(c).

353

applicable ultimate limitations periods have expired and no evidence has been produced to show that the limitations periods were tolled. Therefore, the remaining thirty-five Canadian Asbestos Property Damage Claims are disallowed and expunged.

Counsel for Debtors shall serve a copy of this Memorandum Opinion and accompanying Order on all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.

DATE: Dated: 4/14/2009
14:52:01

Judith K. Fitzgerald                    cjs
United States Bankruptcy Judge

16

354

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR DISTRICT OF DELAWARE

IN RE:

W.R. GRACE & CO., et al.         Bankruptcy No. 01-01139
    Debtor(s)                Chapter 11
                        **Related to Dkt. No. 14597** Debtors' Motion and
                        Memorandum for an Order Pursuant to F.R.B.P.
                        7056 Disallowing and Expunging Eighty-Eight (88)
                        Time-Barred Canadian Asbestos Property Damage
                        Claims

### ORDER

AND NOW, this 14th day of April , 2009, for the reasons expressed in the

foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, and DECREED** that claim

numbers 011620, 011632, 012377, 012388, 012394, 012410, 012412, 012421, 012422, 012423,

012438, 012439, 012442, 012443, 012454, 012457, 012489, 012496, 012498, 012500, 012501,

012503, 012537, 012541, 012542, 012546, 012548, 012549, 012554, 012557, 012570, 012576,

012590, 012591, and 014885 are hereby disallowed and expunged as barred by the applicable

Canadian ultimate limitations periods.

IT IS FURTHER ORDERED THAT counsel for Debtors shall serve a copy of this

Memorandum Opinion and accompanying Order on all parties in interest who do not receive

electronic notice and shall file a certificate of service forthwith.

Dated: 4/14/2009
14:50:53

*Judith K. Fitzgerald*
Judith K. Fitzgerald      cjs
United States Bankruptcy Judge

1

355

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF GRACE CANADA, INC.

Court File No: 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE

Proceeding commenced at Toronto

30TH REPORT OF RICHARD C. FINKE
INFORMATION OFFICER

OGILVY RENAULT LLP
Barristers & Solicitors
Royal Bank Plaza, South Tower
Suite 3800, 200 Bay Street
Toronto, Ontario M5J 2Z4

DERRICK C. TAY
LSUC #211152A
Tel:     416.216.4832
Fax:     416.216.3930

ORESTES PASPARAKIS
LSUC #36851T
Tel:     416.216.4815
Fax:     416.216.3930

Solicitors for Grace Canada, Inc.