# EXHIBIT "7"

Court File No. 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE

COMMERCIAL LIST

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA INC.

MOTION RECORD OF REPRESENTATIVE COUNSEL
(Settlement Approval – December 8, 2009)

December 4, 2009

**SCARFONE HAWKINS** LLP
Barristers & Solicitors
One James Street South, 14th Floor
P.O. Box 926, Depot 1
Hamilton, Ontario
L8N 3P9

**DAVID THOMPSON (28271N)**
thompson@shlaw.ca
**MATTHEW G. MOLOCI (40579P)**
moloci@shlaw.ca

Tel: 905-523-1333
Fax: 905-523-5878

**LAUZON BÉLANGER**
Barristers & Solicitors
286, rùe St.-Paul Ouest, Bureau 100
Montréal, (Québec)
H2Y 2A3

**YVES LAUZON**
ylauzon@lauzonbélanger.qc.ca
**MICHEL BÉLANGER**
belanger@lauzonbélanger.qc.ca
**CAREEN HANNOUCHE**
careen.hannouche@lauzonbelanger.qc.ca

Tel : 514-844-7612
Fax: 514-844-7009

Representative Counsel for CDN ZAI
Claimants

Court File No. 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE-COMMERCIAL LIST

COMMERCIAL LIST

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'
CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA INC.

## SERVICE LIST

TO:    **OGILVY RENAULT** LLP
       Barristers & Solicitors
       Suite 3800, P.O. Box 84
       Royal Bank Plaza, South Tower
       200 Bay Street
       Toronto, Ontario M5J 2Z4

       **DERRICK C. TAY**
       dtay@ogilvyrenault.com
       Tel: 416-216-4832
       Fax: 416-216-3830

       **ORESTES PASPARAKIS**
       opasparakis@ogilvyrenault.com
       Tel: 416-216-4815
       Fax: 416-216-3930

       Lawyers for GRACE CANADA INC.

-2-

AND
TO:
**ERNST & YOUNG INC.**
Ernst & Young Tower,
222 Bay Street, 16th Floor
P.O. Box 251
Toronto-Dominion Centre
Toronto, Ontario
M5K 1J7

**MURRAY A. McDONALD**
murray.a.mcdonald@ca.ey.com
Tel : 416-943-3016
Fax: 416-943-3300

Financial Advisor to the Attorney
General of Canada (Her Majesty the
Queen in Right of Canada)

AND
TO:
**ERNST & YOUNG INC.**
800, boul. René-Lévesque Ouest
Bureau 1900
Montréal, Québec
H3B 1X9

**JEAN DANIEL BRETON**
Jean-Daniel.Bretaon@ca.ey.com
Tel : 514-875-6060
Fax: 514-871-8713

Financial Advisor to the Attorney
General of Canada (Her Majesty the
Queen in Right of Canada)

AND
TO:
**THE SCOTT LAW GROUP P.S.**
926 W. Sprague Avenue, Suite 680
Spokane, Washington
99201

**DARRELL W. SCOTT**
darrellscott@mac.com

Tel : 509-455-3966
Fax: 509-455-3906

AND
TO:
**MERCHANT LAW GROUP**
c/o Eau Claire Place II
#340-521 Third Avenue S.W.
Calgary, Alberta
T2P 3T3

**EVATT MERCHANT**
emerchant@merchantlaw.com

Tel : 403-237-9777
Fax: 403-237-9775

AND
TO:
**DEPARTMENT OF JUSTICE CANADA**
Ontario Regional Office
Counsel, Business Section
The Exchange Tower
130 King Street West, Suite 3400, Box 36
Toronto, Ontario
M5X 1K6

**JACQUELINE DAIS-VISCA**
jacqueline.dais-visca@justice.gc.ca
Tel : 416-952-6010
Fax: 416-973-0809

Lawyers for Health Canada

AND
TO:
**AIKINS, MacAULAY & THORVALDSON
LLP**
Barristers and Solicitors
Commodity Exchange Tower
30th Floor – 360 Main Street
Winnipeg, Manitoba
R3C 4G1

**KEITH FERBERS**
KJF@aikins.com
Tel : 204-957-4691
Fax: 204-957-4269

Lawyers for the Plaintiff in Manitoba Q.B.

-4-

Court File No. 01-CL-4081

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

**COMMERCIAL LIST**

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'
CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA INC.

**INDEX**

| **TAB** | **DESCRIPTION** | **PAGE NO.** |
|---|---|---|
| 1. | Affidavit of Michel Belanger and exhibits, sworn December 4, 2009 | 001-032 |
| A | *Curriculum vitae* of Yves Lauzon, Michel Belanger and Careen Hannouche | 033-041 |
| B | *Curriculum vitae* of David Thompson, Matthew G. Moloci and Jeffrey C. Teal | 042-063 |
| C | Order of the Honourable Mr. Justice Farley dated February 8, 2006 | 064-070 |
| D | Crown Disclosure Orders | 071-080 |
| E | Judge Fitzgerald Memorandum Opinion dated April 14, 2009 | 081-099 |

001

Our Court File No. 01-CL-4081

## ONTARIO
## SUPERIOR COURT OF JUSTICE

### COMMERCIAL LIST

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, C. c-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

### AFFIDAVIT OF MICHEL BÉLANGER
(Sworn December 4, 2009)

I, Michel Bélanger, of the City of Montreal, in the Province of Quebec, MAKE

OATH AND SAY:

1.       I am a lawyer and partner in Lauzon Bélanger Inc.  Lauzon Bélanger Inc. and

Scarfone Hawkins LLP were appointed Representative Counsel on behalf of all

Canadian ZAI claimants ("**Representative Counsel**") on February 8, 2006. As

such, I have knowledge of the matters contained in this affidavit.  Where I make

statements in this affidavit which are not within my personal knowledge, I have

identified the source of my information and belief.  I believe all that I depose

herein.

002

**OVERVIEW**

2.      On October 17, 2008, the Honourable Mr. Justice Morawetz ("**Morawetz, J.**") granted an order approving Minutes of Settlement entered into September 2, 2008 ("**Original Minutes**").

3..     The Original Minutes provided that in the event a U.S. Confirmation Order was not obtained prior to October 31, 2009, the Original Minutes will be considered null and void.

4.      A U.S. Confirmation Order was not obtained by October 31, 2009.

5.      Settlement discussions for an extension of the deadline contained in the Original Minutes took place and resulted in execution of Amended and Restated Minutes of Settlement (the "**Amended and Restated Minutes**") on November 16, 2009. A copy of the Amended and Restated Minutes is at tab 3 of Grace's Motion Record.

6.      An order is now sought approving the Amended and Restated Minutes.

**INTRODUCTION AND BACKGROUND RE: REPRESENTATIVE COUNSEL**

7.      I am a member of the Representative Counsel team of lawyers acting for all ZAI claimants. The lawyers involved include my partner, Yves Lauzon, and associate, Careen Hannouche, as well as lawyers David Thompson, Matthew G. Moloci and Jeffrey C. Teal of Scarfone Hawkins [LLP].

003

8.   Representative Counsel worked together to represent the interests of all Canadian ZAI claimants.

9.   Lauzon Bélanger Inc. and Scarfone Hawkins [LLP] have significant experience in handling plaintiff class proceeding cases.

10.   Lauzon Bélanger Inc. is an experienced plaintiff class action law firm in Quebec. My partner, Yves Lauzon, and I, have been and remain involved in numerous class proceeding cases involving vanishing premium life insurance policies, product liability issues, Saguenay river flooding, Duplessis orphans, failed investment programs, tobacco litigation, Hepatitis 'C', alleged overbilling by Bell Canada, etc. We are assisted by our associate, Careen Hannouche. My *curriculum vitae* and those of Yves Lauzon and Careen Hannouche are attached as exhibit "A".

11.   David Thompson, Matthew G. Moloci and Jeffrey C. Teal are partners at Scarfone Hawkins [LLP], an experienced plaintiff class action law firm in Ontario. They have been and remain involved in numerous class proceeding cases involving vanishing premium life insurance policies, food poisoning, product liability issues, medical negligence, unpaid overtime, environmental contamination, failed investment programs, mass termination of employment, alleged overbilling by Bell Canada, leveraged charitable donation programs, etc. The *curriculum vitae* of David Thompson, Matthew G. Moloci and Jeffrey C. Teal are all attached as exhibit "B". Included in David Thompson's *curriculum vitae* is

004

- 4 -

a list of some of the class proceedings in which Scarfone Hawkins [LLP] has been involved and some of their current class proceeding cases.

## THE INITIAL ORDER AND EXTENSIONS

12.    On April 2, 2001, W.R. Grace & Co. and several of its affiliates (the "**U.S. Debtors**") filed voluntary petitions for protection under Chapter 11 of the United States ("**U.S.**") Bankruptcy Code (the "**U.S. Proceedings**") and were granted a temporary restraining Order by the U.S. Bankruptcy Court providing certain injunctive relief in favour of the U.S. Debtors as well as certain other third-parties (the "**Affiliated Entities**").

13.    On April 4, 2001, the Applicant was granted the "**Initial Order**", pursuant to section 18.6(4) of the *Companies' Creditors Arrangement Act* in the Ontario Superior Court of Justice (the "**Court**") which, among other things, provided for a stay of proceedings prohibiting the commencement or continuation of any asbestos-related suits against the Applicant.

14.    The Stay Period referred to in paragraphs 4 and 5 of the Initial Order has been extended a number of times, most recently pursuant to the Order of Morawetz J. September 23, 2009 extending the Stay Period to March 1, 2010.

## INVOLVEMENT OF REPRESENTATIVE COUNSEL IN THIS ACTION

15.    As indicated above, Lauzon Bélanger Inc. and Scarfone Hawkins [LLP] were appointed Representative Counsel by the Order of the Honourable Mr. Justice

005

- 5 -

Farley ("**Farley J.**"), February 8, 2006, a copy of which is attached as exhibit "C".

16.    While that represents the date of our formal appointment as Representative Counsel, we were in fact involved in this matter much earlier.

17.    Lauzon Bélanger Inc., in particular, first became involved in prosecuting claims relating to ZAI through the following actions:

(a)    *Association des Consommateurs pour la Qualité dans la Construction et Jean-Charles Dextras v. Grace Canada Inc. and Attorney General of Canada*, Superior Court of Québec ("**the Dextras action**");

(b)    *Association des Consommateurs pour la Qualité dans la Construction Viviane Brosseau & Léontine Roberge-Turgeon v. Attorney General of Canada*, Superior Court of Québec ("**the Brosseau action**").

18.    The Dextras action was commenced November 1, 2004.

19.    The Brosseau action was commenced April 18, 2005.

20.    Other proposed class proceedings had been commenced by Aikins MacAulay & Thorvaldson[LLP] ("**Aikins**") and by Merchant Law Group ("**Merchant**").

21.    The Dextras and Brosseau actions were not stayed as a result of the Initial Order.

006

22.    As developments began to occur in the CCAA proceeding, Lauzon Bélanger
       Inc. determined that we could best represent Canadian ZAI claimants by
       entering into a co-counsel arrangement with Scarfone Hawkins [LLP], a firm with
       whom we had worked extensively in the past with great success. This was
       necessary given that we needed Ontario counsel for appearances in this
       Court, just as we had required in acting for pre-1986 and post-1990 Hepatitis
       C Quebec claimants in the Canadian Red Cross litigation. We worked
       successfully with Scarfone Hawkins [LLP] in that case, and in several other prior
       cases.

23.    We communicated with Scarfone Hawkins [LLP] in late 2004/early 2005 and
       Scarfone Hawkins [LLP] confirmed its willingness to assist in this matter and to
       join with us co-operatively to represent the interests of all Canadian ZAI
       claimants.

24.    We considered a motion seeking an order lifting the stay to allow prosecution of
       the Dextras and Brosseau actions and returned that motion before Farley J. in
       November, 2005.

25.    A similar motion was brought at that time by Aikins also seeking a lifting of the
       stay to allow prosecution of the proposed class proceeding brought in Manitoba.

26.    At that time there was no forum for prosecution of the claims of Canadian ZAI
       claimants and no agreement or structure in place pursuant to which the claims
       could be advanced.  There were competing proposed class proceedings all of

007

- 7 -

which had been stayed and no agreement in place between the law firms as to carriage of the actions.

27. We agreed to adjourn our lift-stay motion with a view to attempting to negotiate an arrangement with Grace that would provide a mechanism for prosecuting the claims of Canadian ZAI claimants.

28. This led to negotiations with Grace for us to be recognized and appointed as Representative Counsel to act on behalf of all Canadian ZAI claimants with a motion being brought before this Court in that regard, and for the Attorney General of Canada ("the Crown") to agree to support that motion.

29. We initiated contact and had significant dialogue with Merchant and Aikins, counsel acting in the other proposed class proceedings that had been commenced.

30. As referenced above, we obtained formal appointment as Representative Counsel from Farley J. on February 8, 2006.

31. We negotiated an arrangement with Merchant, being a cooperative and collaborative co-counsel arrangement and Merchant agreed to our appointment as Representative Counsel.

32. We agreed to act cooperatively with Aikins... Aikins did not oppose our appointment as Representative Counsel.

008

- 8 -

33. We considered opposition to various motions brought by Grace seeking extensions of the Initial Order and furthermore negotiated a consent arrangement in the Dextras and Brosseau actions pursuant to which:

    (a)    the Crown consented to the motion seeking authorization/certification of the Brosseau action in the event the claims are not resolved pursuant to the CCAA proceeding and Chapter 11 proceedings in the U.S.;

    (b)    the effect of such consent was to be suspended until the re-organization of Grace is terminated, or until further order of the court;

    (c)    the Crown agreed to support a motion to appoint Lauzon Bélanger Inc. and Scarfone Hawkins[LLP] as Representative Counsel;

    (d)    the stay order was amended to include the Crown on an interim basis;

    (e)    if the re-organization of Grace is terminated or the stay lifted, the Superior Court of Québec would rule on the manner in which the proposed litigation would proceed; and,

    (f)    an order from the Honourable Mr. Justice Chaput of the Québec Superior Court was obtained confirming this consent arrangement.

34. After our appointment as Representative Counsel, we retained U.S. counsel to represent the rights of all Canadian ZAI claimants in the U.S. Proceedings.

35. We participated in a mediation session in New York City before Judge Pointer on March 16 and 17, 2006.

009

- 9 -

36.   We appeared further before Farley, J. in March, 2006.

37.   We established a database of Canadian ZAI claimants who contacted our offices;
obtained disclosure information from Grace and the Crown; monitored publically-
available scientific developments in respect of ZAI and asbestos; monitored all
developments in the U.S. Proceedings; obtained transcripts from various U.S.
Proceedings and reviewed same; and initiated communication and dialogue with
the U.S. counsel for various interest groups in the U.S. Proceedings including the
Asbestos Personal Injury Claimants' Committee and Asbestos Property Damage
Claimants' Committee.

38.   Representative Counsel communicated with many potential ZAI claimants in
order to obtain evidence to assist in the prosecution of claims of Canadian
claimants.

39.   We considered and analyzed all potential claims available including a possible
claim framed as a duty to warn cause of action and as well considered limitation
period arguments and other defences available to Grace and the Crown.

40.   We prepared and filed a proof of claim in the U.S. Proceedings.

41.   We participated telephonically in numerous U.S. Proceedings and had many
discussions with our U.S. counsel regarding all issues.

42.   In December, 2006 we received and reviewed the U.S. "Science Trial"
Memorandum Opinion of U.S. Bankruptcy Court Judge Judith Fitzgerald ("**Judge
Fitzgerald**") and analyzed same. We considered the applicability of the "Science

010

Trial" Memorandum Opinion to Canadians, particularly given that Judge Fitzgerald concluded that if left undisturbed in homes, ZAI did not pose an unreasonable risk of harm.

43.  We considered a Canadian Litigation Procedure in the interests of all Canadian claimants including working jointly with the Crown to develop and prepare a proposed procedure to deal with Canadian claims.

44.  We then attempted to engage Grace in a dialogue regarding a possible Canadian Litigation Procedure and considered all options available to us to allow prosecution of claims on behalf of Canadian ZAI claimants.

45.  Our work was very difficult as we did not have any formal standing in the U.S. Proceedings, other than being represented by our U.S. counsel.

46.  We had been advised that neither the Asbestos Personal Injury Claimants' Committee nor the Asbestos Property Damage Claimants' Committee had undertaken to represent the interests of Canadian claimants.

47.  Property Damage ("PD") and Personal Injury ("PI") claimant groups in the U.S. Proceedings were separately and independently represented and were at odds competing for the same funds via settlement. Some asserted that since we act for all Canadian ZAI claimants, both PD and PI, that we were in a conflict of interest position given the nature of representation in the U.S. Proceedings.

48.  We returned a motion before this Court in fall, 2007 seeking an order for the establishment of cross-border communication between this Court and Judge

011

Fitzgerald and a protocol in that regard as a necessary, preliminary step to seeking orders lifting the stay in both the U.S. and in Canada to permit prosecution of the various proposed class proceedings.

49.   This motion was discouraged by Grace through counsel but once brought resulted in commencement of settlement discussions. The motion was adjourned given ongoing settlement discussions.

50.   As Representative Counsel, we were satisfied that we had a sufficient evidentiary basis to conduct settlement negotiations.   We understood the factual matrix of the claims and the difficult legal issues involved.

51.   When settlement discussions began with Grace, Grace was adamant that it was prepared to offer only a notice program for public education and awareness and no compensation whatsoever for PD claims. Grace maintained that PI claims would be channelled through an asbestos trust being established through the U.S. proceedings against which all asbestos-related claims would be made (the "**Asbestos Trust**") to ensure fair and equal treatment with other asbestos PI claimants.

52.   Grace's very strong position with Representative Counsel was that no claimant could establish liability.

53.   We participated in settlement discussions with Grace on an ongoing and very intensive basis from fall, 2007 through spring, 2008. When settlement

012

- 12 -

discussions broke down, we once again returned our fall, 2007 motion before the Court, although a firm hearing date was not set.

54.  We also served a Motion Record seeking oral and documentary discovery of records and information in the possession and control of the Crown relating to the identity of homes in Canada which may be insulated with ZAI.

55.  This motion culminated in an Order of Morawetz, J. on September 30, 2008 as well as subsequent Orders of June 2, 2009 and July 29, 2009, all three Orders requiring disclosure of Crown information relevant to identification of potential Canadian ZAI claimants. The Crown disclosure Orders are attached as exhibit "D".

56.  The Crown disclosure Orders eventually resulted in significantly enhanced notice to Canadian ZAI claimants.

57.  At that time, a motion was pending in the U.S. proceedings for establishment of a bar date for ZAI claims in the U.S. and in Canada. We were concerned that Judge Fitzgerald would set a claims bar date of October 31, 2008 for Canadian ZAI PD claimants.

58.  Settlement discussions continued once again and we participated in a mediation session in Delaware before Judge Gross on May 12, 2008. The mediation was not successful, however, settlement discussions continued with Grace and the Crown on a very intensive basis throughout May, June, July, August and into early September finally culminating in the Original Minutes.

- 13 -                                    **013**

## ORIGINAL MINUTES

59.   Following execution of the Original Minutes, Morawetz J. granted an order approving them. A copy of the Order of Morawetz J., dated October 17, 2008 approving the Original Minutes is at tab 6 of Grace's Motion Record.

60.   The Original Minutes specifically provided that in the event that a U.S. Confirmation Order was not obtained prior to October 31, 2009, the Original Minutes would be considered null and void.

61.   Pursuant to the Original Minutes, a broad-based media program was effected for Canadian ZAI PD claims. Significant notice was given and Representative Counsel responded to thousands of inquiries received.

62.   The U.S. Confirmation Order was not obtained by October 31, 2009.

63.   Settlement discussions for an extension of the deadline contained in the Original Minutes took place and resulted in execution of the Amended and Restated Minutes.

## THE AMENDED AND RESTATED MINUTES

64.   In the remainder of this affidavit, I will use the terms defined in the Amended and Restated Minutes.

65.   The Amended and Restated Minutes contemplate settlement of all Canadian ZAI claims, both PI and PD, with Grace, on the following terms:

014

(a) on the Effective Date of Grace's Plan of Reorganization, Grace will contribute $8,095,632.44 to a fund for the purpose of administering Canadian ZAI PD claims, in the event that a U.S. Confirmation Order is entered by the U.S. Court by June 30, 2010;

(b) alternatively, on the Effective Date of Grace's Plan or Reorganization, Grace will contribute $8,595,632.44 to a fund for the purpose of administering Canadian ZAI PD Claims in the event that that a U.S. Confirmation Order is entered by the U.S. Court after June 30, 2010, but on or before December 31, 2010;

(c) Grace shall provide in its Plan of Reorganization that any Canadian ZAI PD claimant shall be entitled to file a claim against the Asbestos Trust to be created for asbestos personal injury claims and shall be entitled to payments as provided thereunder;

(d) the vote of Representative Counsel made pursuant to the Original Minutes in favour of the First Amended Joint Plan of Reorganization shall constitute a vote pursuant to the Amended and Restated Minutes in favour of the First Amended Joint Plan of Reorganization. Further, Representative Counsel agree to vote, on behalf of Canadian ZAI claimants, in favour of the First Amended Joint Plan of Reorganization incorporating the Amended and Restated Minutes;

(e) Representative Counsel shall be entitled to bring an application seeking appointment as special counsel ("Special Counsel Application") for

Canadian ZAI claimants in the U.S. proceedings retroactively to September 1, 2008, and going forward to the date of the U.S. Confirmation Order;

(f)    Representative Counsel shall be entitled to bring an application to the U.S. Court for approval and payment of reasonable fees and expenses in accordance with the applicable provisions of the U.S. Bankruptcy Code, the U.S. Bankruptcy Rules, the Local Rules of the U.S. Court and any other applicable procedures and orders of the U.S. Court.

66.    The obligation of Grace to pay funds is subject to a number of conditions including obtaining Canadian settlement approval on the terms and conditions outlined in the Amended and Restated Minutes.

67.    It is contemplated that the funds paid under the settlement will be distributed as follows:

(a)    $2,000,000.00 to be paid to Representative Counsel in respect of legal fees and disbursements;

(b)    $250,000.00 will be set-aside in a fund for future legal fees and disbursements incurred from the date of the U.S. Confirmation Order for the purposes of carrying-out duties in respect of the Canadian ZAI PD Claims Notice Program and the Canadian ZAI PD Claims Procedure, which legal fees and disbursements shall be paid upon application to and approval by this Court;

016

(c)      up to $850,000.00 will be used to pay a third party Claims Administrator

for purposes of administering the Canadian ZAI PD Claims Procedure;

(d)      up to $150,000.00 will be made available to pay for assistance of an

expert in establishing procedures for the identification of ZAI, remedial

measures that might be undertaken by a Canadian ZAI PD claimant and

development of the Canadian ZAI PD Claims Procedure;

(e)      the balance of funds, being between approximately $4,850,000.00 and

$5,350,000.00 (depending on when the U.S. Confirmation Order is

obtained as referenced in paragraphs 65(a) and (b) above) as well as any

monies not used for the purposes set-out in (a) through (d) above, shall be

available to be distributed to the holders of Allowed Canadian ZAI PD

claims.

68.    Notwithstanding the Canadian ZAI PD claims bar date of August 31, 2009,

established by the U.S. Court, all Canadian ZAI PD claimants who file a Proof of

Claim by December 31, 2009 shall be entitled to seek compensation from the

Canadian ZAI PD claims fund, with entitlement to be determined in accordance

with the Canadian ZAI PD Claims Procedure.

69.    A Canadian ZAI PD Claims Procedure will be developed by Representative

Counsel with the Claims Administrator and will determine entitlement to

compensation based on the ability of a claimant to prove ownership of a property

insulated with ZAI and that costs were incurred or assumed to identify ZAI,

remove it, or otherwise remediate property.

- 17 -

017

70. The Amended and Restated Minutes do not preclude Canadian ZAI PI claimants from asserting claims against the Crown for injuries suffered directly or indirectly from the manufacture, sale or distribution of ZAI products in Canada. Claims may be pursued by Canadian ZAI PI claimants against the Crown even though they may give rise to Canadian ZAI PI claims by the Crown for contribution, indemnity or otherwise, provided that such Canadian ZAI PI claims by the Crown shall be channelled to the Asbestos Trust by the First Amended Joint Plan of Reorganization.

71. Canadian ZAI PD claimants will be entitled to make a claim to the fund referred to in paragraph 67 above and will receive compensation based on their ability to prove that they incurred or assumed costs to identify ZAI, remove it or otherwise remediate property.

72. A key component of the Original Minutes, which component has already been carried-out, was the establishment of a broad-based media program for Canadian ZAI PD claims and a claims bar procedure. The cost of the program was borne by Grace. I am advised that the notice program cost between $800,000.00 and $1,000,000.00. Representative Counsel had significant input into designing the notice program.

73. The broad-based media program was supplemented through direct mail notice to homes identified by the Crown to have possibly been insulated with ZAI,, and available through the Crown disclosure Orders referenced in paragraphs 55 and 56 above.

018

- 18 -

74.   The notice program was viewed as essential to the settlement under the Original Minutes as it involved public education and awareness in respect of the presence of ZAI in homes.

## RATIONALE FOR SETTLEMENT

75.   The Original Minutes were negotiated on the basis of Representative Counsel's assessment that a comprehensive program of notice and public education was needed for Canadians, coupled for the financial incentive for homeowners to take note of the presence of ZAI in their homes and to remediate.

76.   The Amended and Restated Minutes were negotiated on the same basis, with the need for additional funds to be contributed to the Canadian ZAI PD claims fund to pay claims.

### Limited Number of Claimants

77.   Grace obtained an expert report from Roger. G. Morse ("Morse") as to the information that was available to Canadian building owners and managers about asbestos-containing materials in buildings in the 1970's, 1980's and into the mid-1990's. Morse concluded that a vast amount of information on asbestos in buildings was available to building owners and managers in the mid to late 1980's and that certainly by 1995, building owners should have been aware of the widespread use of asbestos-containing materials in buildings, the controversy concerning the alleged potential health effects of asbestos in such building material and the development of the asbestos-in-buildings litigation in Canada.

019

- 19 -

78.    The Morse report indicates that a vast and overwhelming amount of information was available to the Canadian public through a wide variety of sources including Canadian newspaper articles and other sources on an ongoing basis between 1975 and 1995.

79.    This media notice was supplemented by materials available through the Canada Mortgage and Housing Corporation, Health Canada publications and materials, Canadian Medical Association publications, reports from Indian and Northern Affairs Canada, and other sources.

80.    All notices provided including the Canada Mortgage and Housing Corporation materials, Health Canada materials and other materials provided information significantly consistent with the "Science Trial" Memorandum Opinion of Judge Fitzgerald, i.e. that the presence of ZAI in homes does not pose an unreasonable risk of harm if left undisturbed.

81.    Despite this apparent wide and varied public notice, Representative Counsel, Aikins and Merchant received few inquiries regarding ZAI litigation and the case generated little interest from affected homeowners.

82.    This lack of significant interest seemed to support the "Science Trial" Memorandum Opinion which concluded that left undisturbed, the presence of ZAI in buildings does not pose an unreasonable risk of harm.

83.    Representative Counsel concluded that a better, more comprehensive and time-intensive program of notice and public awareness was needed for Canadians,

**020**

coupled with a financial incentive for homeowners to take note of the presence of ZAI in their homes and to remediate.

84.    As of the Canadian ZAI PD claims bar date of August 31, 2009, 13,095 Canadian ZAI PD claims had been filed. We expect that some additional claims will be filed by December 31, 2009. We expect that number of additional claims to be relatively small given that there will be no new widespread notice of the extension of the claims bar date.

**Limited Funds Available to Satisfy Claims**

85.    Disclosure information obtained revealed that there are approximately 10 times as many properties insulated with ZAI in the U.S. as compared to Canada. Disclosure information obtained in Canada indicated that approximately 245,000 Canadian homes are insulated with ZAI. This would mean that approximately 2.5 million homes are insulated with ZAI in the U.S. Preliminary indications were that complete removal of ZAI from an average residence would involve costs in the range of $10,000.00 to $15,000.00.

86.    A successful claim would therefore have resulted in potential liability in excess of $3.6 billion in Canada. When applied in the U.S., based upon the factor of 10 times, the total potential liability would approach $40 billion.

87.    It was clear that there would be an enormous shortfall of funds as settlement of all PI claims alone was proposed on the basis of approximately $1.5 billion being paid into the Asbestos Trust against which claims can be made for PI. On the

- 21 -

basis of the claimants' theory, the PD claims alone could result in potential liability in the range of $40 billion.

**Legal and Practical Hurdles**

88.    The "Science Trial" Memorandum Opinion of Judge Fitzgerald presented a significant impediment to successful prosecution of the claims of Canadian ZAI claimants.

89.    A motion was brought in the U.S. Proceedings seeking leave to appeal the "Science Trial" Memorandum Opinion, which motion was denied in March, 2007. A further motion for leave to appeal was denied in April, 2007.

90.    Representative Counsel concluded that it was highly unlikely that this Court would rule that the "Science Trial" Memorandum Opinion of Judge Fitzgerald is not binding on Canadians and order a new "Science Trial" in Canada.

91.    Representative Counsel were sensitive to the observation of Farley, J. that the insolvency adjudicative proceedings would result in a more efficient process than a full-blown class action proceeding.

92.    Representative Counsel were furthermore concerned that even if a new "Science Trial" were held in Canada, the state of product liability law in Canada is less favourable to claimants than in the U.S., presenting a further significant obstacle to success.

- 22 -

022

93.    Grace continued to assert the availability of limitation period defences which
       would operate as a complete defence to many of the claims that were being
       asserted by Canadians.

94.    Grace had obtained an expert report of Graeme Mew on Canadian limitation
       issues which report opined that all claims against Grace were time-barred as a
       result of the law of limitations resulting from application of ultimate limitation
       provisions in certain Provinces as well as from the application of normal limitation
       periods in all common law Provinces and Territories in Canada.

95.    Representative Counsel were furthermore concerned that the state of product
       liability law in Canada was less favourable to claimants as compared to the state
       of the law in the U.S. U.S. Courts have been prepared to adopt an approach of a
       strict liability standard, while Canadian Courts have required a finding of
       negligence as a basis for establishing liability.

96.    Representative Counsel were concerned that no Canadian claimant could
       succeed in an allegation that Grace knew or ought to have known at the time of
       manufacture, sale or installation of ZAI that same was defective and presented a
       real and substantial danger to occupants of homes where used.

97.    I attended a mediation before Judge Gross with David Thompson and Matthew
       G. Moloci in Delaware on May 12, 2008. The mediation did not achieve
       resolution. It was clear to us as Representative Counsel that an imminent
       resolution of ZAI claims in the U.S. Proceedings was highly unlikely and that if we
       were going to attempt to protect the interests of Canadian claimants, we would

- 23 -

have to do so on our own independent of efforts in the U.S. Proceedings, and strictly in the interests of Canadian claimants.

98.  In spring, 2008, Grace filed motions in the U.S. Proceedings to establish a bar date for ZAI claims in the U.S. and in Canada. Various pleadings were filed in opposition to the motion including pleadings prepared by our U.S. counsel on our instructions.

99.  Representative Counsel were concerned that Judge Fitzgerald was inclined to set a bar date with respect to Canadian ZAI PD claims, which bar date would allow a relatively short period for the filing of claims, which, in the opinion of Representative Counsel, would have been insufficient and unsatisfactory in the circumstances.

100.  Representative Counsel were concerned that the form of the notice program proposed, along with an imminent claims bar date, likely to be accepted by Judge Fitzgerald, would have been insufficient and inadequate in terms of providing proper and reasonable notice to Canadian claimants.

101.  On June 17, 2008, Judge Fitzgerald set a claims bar date for U.S. ZAI PD claimants of October 31, 2008.

102.  The U.S. process contemplated a claims bar date to identify potential ZAI PD claims and thereafter a review of the identified claims with Grace being at liberty to attempt to defeat all such claims based on any and all available defences.

024

- 24 -

103.   Representative Counsel were concerned that under such a process not only
        would there be very few identified Canadian ZAI PD claims, but indeed that all
        such claims could possibly be defeated.

104.   The notice program and claims bar date for Canadian ZAI PD claims negotiated
        as part of settlement were/are significantly enhanced as compared to what was
        proposed by Grace in its motion in the U.S. Proceedings.

105.   Representative Counsel were furthermore concerned that Grace's position that
        the "best case" scenario on behalf of all Canadian ZAI PD claimants was that
        removal of ZAI was not necessary and that sealing or other containment of the
        ZAI was more than sufficient in the circumstances.

106.   Representative Counsel also had regard to the unfavourable decision in *Privest
        Properties Ltd. v. Foundation Co. of Canada Ltd.* [1997] B.C.J. No. 427, as
        well as the state of Canadian law with respect to "stigma" damages. ...

107.   Representative Counsel concluded that there was a low likelihood that this
        Court would be prepared to lift the stay contained in the Initial Order to allow
        the prosecution of the Dextras and Brosseau actions and/or proposed Canadian
        class proceedings.

108.   Representative Counsel furthermore concluded that there was a low likelihood
        that Judge Fitzgerald would lift the U.S. stay order to allow prosecution of
        proposed class proceedings, particularly in light of her "Science Trial"
        Memorandum Opinion.

025

- 25 -

109.  Representative Counsel were also extremely concerned that Canadian ZAI claims would be time-barred by applicable Canadian limitations periods.

110.  On April 14, 2009, Judge Fitzgerald issued a Memorandum Opinion granting summary judgment in favour of the U.S. Debtors finding that applicable ultimate limitation periods had expired and disallowing and expunging 35 Canadian asbestos (non-ZAI) property damage claims. A copy of the Memorandum Opinion is attached as exhibit "E".

111.  Representative Counsel were furthermore extremely concerned about the future expense and duration of litigation including enormous uncertainty as to possible recovery and the real prospect that Canadian claimants would recover nothing in the long run.

112.  Representative Counsel concluded that the interests of Canadian ZAI claimants could best be protected by attempting to negotiate a resolution with Grace which would see a lump sum payment made, with a fair and consistent distribution process on a uniform basis, coupled with a broad-based media and direct notice program.

113.  All settlement discussions conducted by Representative Counsel were guided by an analysis of the facts and law applicable to the claims taking into account the burden and expense of litigation, including the risks and uncertainties associated with a protracted trial, possible appeals and the fair, cost-effective and assured method of resolving the claims of Canadian ZAI claimants.

026

- 26 -

114. The Amended and Restated Minutes reflect a settlement that is substantially more favourable than the settlement proposals first put forward by Grace, and substantially more favourable than the Original Minutes.

115. The Amended and Restated Minutes are the result of extensive negotiations, considerable risk assessment, significant investigation, study and review, all of which are aided by the benefit of the experience of Representative Counsel in other complex litigation.

116. Representing the interests of all Canadian ZAI claimants as Representative Counsel has been incredibly complex, time-intensive and an enormous responsibility which Representative Counsel took very seriously.

117. Representative Counsel have incurred more than $500,000.00 in additional fees and disbursements since execution of the Original Minutes. This has included responding to thousands of inquiries from Canadian ZAI claimants, continuing to monitor and participate in the U.S. proceedings, and negotiation of the Amended and Restated Minutes.

118. Representative Counsel believe that considering the issues set-out above, the proposed settlement as reflected in the Amended and Restated Minutes is fair, reasonable and in the best interests of Canadian ZAI claimants.

119. Representative Counsel recommend approval of this settlement to this Honourable Court.

- 27 -

027

**THE CROWN**

120. Several of the proposed class proceedings alleged liability against the Crown. Liability is alleged in those actions either on the basis that the Crown promoted and encouraged the use of ZAI in Canadian homes as part of an energy rebate program, or alternatively, on the basis that the Crown built and owned housing for Aboriginal persons and Crown employees, which housing contained ZAI.

121. Negotiation of settlement involved Crown participation and attempts were made to enter into an arrangement that involved Crown participation both by way of contribution and as a beneficiary of any release.

122. The negotiations were long and arduous, however, ultimately Representative Counsel determined that an arrangement with the Crown would not be possible.

123. Representative Counsel indicated to the Crown that its last settlement proposal was not acceptable. Representative Counsel remain open to a dialogue with the Crown regarding possible settlement of Crown liability.

124. Representative Counsel intend to undertake further work including a motion to be brought before this Court seeking to lift the stay of proceedings against the Crown and allowing prosecution of actions which assert Crown liability in respect of ZAI.

125. The Amended and Restated Minutes preserve the ability of Canadian ZAI PI claimants to pursue action against the Crown. Article 21 of the Amended and Restated Minutes specifically addresses this issue and provides that claims by

028

- 28 -

the Crown for contribution, indemnity or otherwise shall be channelled to the Asbestos Trust.

126. All Canadian ZAI PD claims against the Crown were extinguished under the Original Minutes, and remain extinguished under the Amended and Restated Minutes.

## REPRESENTATIVE COUNSEL FEES AND DISBURSEMENTS

127. Representative counsel will receive payment of fees, disbursements and applicable taxes as part of the settlement fund paid by Grace under the Amended and Restated Minutes.

128. When the Dextras and Brosseau actions were commenced and when Representative Counsel began their work on this matter and agreed to be appointed by Court Order, there was at that time no prospect of settlement and enormous uncertainty as to any recovery.

129. Representative Counsel agreed to Court appointment without any assurance whatsoever of payment. In fact, the appointment Order indicates that Canadian claimants shall be responsible for the fees and disbursements of Representative Counsel subject to further order of this Court.

130. Settlement with Grace was achieved without any claimant having to attend an examination for discovery or being subject to documentary disclosure requests.

131.  The negotiations, the form of the Amended and Restated Minutes and the process demonstrate the skill and experience of Representative Counsel.

132.  Representative Counsel believe that the result achieved on behalf of Canadian ZAI claimants is reasonable under the circumstances.

133.  As of the date of my affidavit sworn September 25, 2008, Lauzon Belanger Inc. had spent 1,243.89 hours on this matter, having an approximate total value of $400,000.00 at normal hourly rates for this type of work. In addition, Lauzon Belanger Inc. had incurred disbursements to date totalling approximately $234,984.23.

134.  Since then, Lauzon Belanger Inc. has spent 243.15 further hours on this matter, having an approximate total value of $79 637.30 at normal hourly rates for this type of work. In addition, Lauzon Belanger Inc. has incurred further disbursements to date totalling approximately $106 991.12.

135.  As of the date of my affidavit sworn September 25, 2008, Scarfone Hawkins [LLP] had spent 1,250.75 hours on this matter, having an approximate total value of $500,000.00 at normal hourly rates for this type of work. In addition, Scarfone Hawkins [LLP] had incurred disbursements to date totalling approximately $116,000.00.

136.  Since then, Scarfone Hawkins [LLP] has spent more than 864.85 further hours on this matter, having an approximate total value of $314,693.80 at normal hourly

- 30 -

030

rates for this type of work. In addition, Scarfone Hawkins [LLP] has incurred further disbursements to date totalling more than $41,000.00, plus applicable taxes.

137. As of September 25, 2008, Representative Counsel had paid or incurred expenses in our engagement of our U.S. counsel approximating $350,000.00, which was included in the disbursements incurred.

138. As of the date of my affidavit sworn September 25, 2008, I was advised that Aikins had spent 1,015.6 hours on this matter to date having a value of approximately $300,000.00 at normal hourly rates for this type of work. I was advised that Aikins had incurred disbursements totalling approximately $102,168.11.

139. As of the date of my affidavit sworn September 25, 2008, I was advised that Merchant had spent approximately 550 hours on this matter to date having a value of approximately $255,000.00 at normal hourly rates for this type of work. I was advised that Merchant had incurred disbursements totalling approximately $46,203.00.

140. Representative Counsel received and responded to literally thousands of inquiries during the Canadian ZAI PD Notice Program.

141. Lauzon Belanger Inc. received and responded to approximately 3,026 Canadian ZAI PD claimant inquiries via telephone, e-mail, fax, etc.

142. Scarfone Hawkins [LLP] responded to approximately 2,500 Canadian ZAI PD claimant inquiries via telephone, e-mail, fax, etc.

- 31 -

031

## FUTURE WORK OF REPRESENTATIVE COUNSEL

143. It is anticipated that Representative Counsel will continue to represent the interests of all Canadian ZAI claimants and take future significant steps in that regard. Those steps will include assistance in administrating the Canadian ZAI PD claims; assisting claimants and answering inquiries; participation in the U.S. Proceedings including approval of the proposed notice program and ultimate approval of Grace's Plan of Reorganization; communicating with claimants; assisting PI claimants in respect of claims against the Asbestos Trust; coordinating with the claims administrator for the administration of Canadian ZAI PD claims; retaining and consulting with a remediation expert to establish procedures for identification of ZAI and remedial measures that might be undertaken; as well as development of the Canadian ZAI PD claims procedure.

144. I make this affidavit in support of the motion for settlement approval.

SWORN BEFORE ME at the
City of Montreal, in the
Province of Quebec this 4th
day of December, 2009.

_____
Commissioner for Taking Affidavits
(or as may be)

_____
MICHEL BELANGER

55,627
Diane Blanchette

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC.

- 32 -

Court File No. 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

PROCEEDING COMMENCED AT
TORONTO

AFFIDAVIT OF MICHEL BÉLANGER SWORN THIS 3RD DAY OF
DECEMBER, 2009

| | |
|---|---|
| **SCARFONE HAWKINS** LLP<br>Barristers & Solicitors<br>One James Street South<br>14th Floor<br>P.O. Box 926, Depot 1<br>Hamilton, Ontario<br>L8N 3P9<br><br>**DAVID THOMPSON (28271N)**<br>**MATTHEW G. MOLOCI (40679P)**<br>thompson@shlaw.ca<br>moloci@shlaw.ca<br><br>Tel : 905-523-1333<br>Fax: 905-523-5878 | **LAUZON BÉLANGER INC.**<br>Barristers and Solicitors<br>286, rue St-Paul Ouest, Bureau, 100<br>Montreal, (Québec)<br>HY2 2A3<br><br>**YVES LAUZON**<br>ylauzon@lauzonbélanger.ca.ca<br>**MICHEL BELANGER**<br>mbelanger@lauzonbélanger.qc.ca<br>**CAREEN HANNOUCHE**<br>Careen_hannouche@lauzonbélanger.qc.ca<br>Tel : 514-844-7612<br>Fax: 514-844-7009 |

Representative Counsel for
CDN ZAI Claimants

RCP-E 4D (July 1, 2007)

032

033

This is "Exhibit A" referred to, in the Affidavit of MICHEL
BELANGER sworn December 4, 2009

_____
Commissioner for Taking Affidavits (or as may be)

55,027
Diane Blanchette



## LAUZON BÉLANGER
### AVOCATS · ATTORNEYS

home
history
contact us
français

lawyers

## Michel Bélanger

Telephone: 514 844-4646
Fax: 514 844-7009
E-mail: mbelanger@lauzonbelanger.qc.ca

Mr. Michel Bélanger is specialized in class actions and environmental law. In 1996, he founded, with his associate Yves Lauzon, the law firm of Lauzon Bélanger. He possesses training as a lawyer and notary, has a masters in public law from Université de Montréal and a diploma in specialized studies in environmental law and territorial management from Université Robert Schuman, (Strasbourg, France).

He teaches environmental law at École Polytechnique de Montréal, Laval University and at UQAM.

He is president of Nature Québec (formerly known as l'Union Québécoise pour la Conservation de la Nature U.Q.C.N.)) and administrator and co-founder of the Centre québécois du droit de l'environnement (C.Q.D.E.)

Mtre Bélanger has namely plead, *pro bono*, before the Supreme Court of Canada in the *Ciment St-Laurent* case on behalf of the Friends of the Earth and the *Centre québécois du droit de l'environnement* (C.Q.D.E.)

He was an additional commissionner at the *Bureau d'audiences publiques sur l'environnement (BAPE)* and in this function he sat as commissionner for the generic hearing on residual waste (1996-1997). He was senior research associate at the Chaire en éthique et environnement Hydro-Québec/McGill (1993-1996).

### Languages

French and English

### Professional Training

Université Robert Schuman – Strasbourg (1992)
Environmental Law Centre
**Diploma in specialized studies DESS – Environmental law and territorial management**

Université Robert Schuman – Strasbourg (1992)
**Diploma in pollution and nuisance**

Université de Montréal (1990)
Faculty of Law – Graduate studies
Masters in Public Law

Québec Bar (1988)
Professional training
**Professional Diploma**

Université d'Ottawa (1984)
Faculty of Law – Graduate studies

Diploma in notarial law

Université d'Ottawa (1963)
Faculty of law
Bachelor of law

Professional affiliations

Member of the Québec Bar
Member of the Canadian Bar Association

Publications

o «Clauses d'ordre environnemental pour offre d'achat et acte de vente
  d'immeuble ou terrain», amendements apportés au document de 1996, Répertoire de
  la Chambre des Notaires du Québec, Vente (2008).
o «Les recours collectifs intentés devant la Cour fédérale du Canada», dans Service
  de la formation permanente du Barreau du Québec.dans Service de la formation
  permanente du Barreau du Québec. Les récents développements en recours
  collectifs, 2005.
o «Clauses d'ordre environnemental pour offre d'achat et acte de vente
  d'immeuble ou terrain», amendements apportés au document de 1996, Répertoire de
  la Chambre des Notaires du Québec, Vente (2004).
o «Contrôle et responsabilité de l'État en environnement», dans Service de la
  formation permanente du Barreau du Québec, Les récents développements en droit de
  l'environnement 2000, Les Éditions Yvon Blais Inc., 2000, pp. 345 à 222 .
o «Lorsque la catastrophe environnementale n'est plus un cas fortuit», dans,
  Service de la formation permanente du Barreau du Québec, Les catastrophes naturelles
  et l'état du droit, Les Éditions Yvon Blais Inc., 1998, pp. 39 à 124 .
o «Clauses d'ordre environnemental pour offre d'achat et acte de vente
  d'immeuble ou terrain», Répertoire de la Chambre des Notaires du Québec, Vente
  (1996)..
o «Considérations environnementales dans les transactions immobilières» (1995) 1
  Cours de perfectionnement du notariat 327 ;
o «La responsabilité de l'État et de ses sociétés mandataires en environnement»,
  Cowansville, Les Éditions Yvon Blais Inc., 1994, 195 p.
o «La responsabilité de l'État et ses sociétés en environnement», dans Institut
  Canadien d'études juridiques.supérieures, Droits de la personne: l'émergence de droits
  nouveaux, Montréal, Les Éditions Yvon Blais Inc, 1993, pp. 415-439.
o «L'utilité juridique d'une charte des droits à un environnement de qualité», dans
  Monique ROSS et J. Owen SAUNDERS éd., Growing Demands on a Shrinking Heritage:
  Managing Resource-use conflicts, Institut canadien du droit des ressources, Calgary,
  1992, 389-407.
o «La faute civile en matière de responsabilité pour dommages
  environnementaux», dans Formation permanente du Barreau du Québec,
  Développements récents en droit de l'environnement, 1991, Cowansville, Les Éditions
  Yvon Blais Inc., 1991, 149.
o «Les récents amendements en droit de l'environnement : application du principe
  «pollueur-payeur» eu «notaire-payeur», (1990) 2 Cours de perfectionnement du
  notariat, 467.
o «La reconnaissance d'un droit fondamental à un environnement de qualité»,
  Montréal, Les Éditions Thémis, 1990, 175 pages.
o «Le droit de l'environnement et le citoyen», dans Département de santé
  communautaire (D.S.C.), Hôpital de l'Enfant-Jésus, Vivre avec son environnement,
  Québec, Édition produite par la Direction des Communications du ministère de la Santé et
  des Services Sociaux, 1990, 344.
o «Environnement et conservation: érosion du concept de propriété privée» (1988)
  Recueil de droit immobilier, 467.
o «Le droit de l'environnement et la pratique notariale à l'égard des terrains
  contaminés» (1988) 5 Cours de perfectionnement du notariat, 375.

Courses and conferences

o Part time lecturer, Université Laval (Québec), Faculty of Law, Masters in Environmental
  Law, "Droit et recours privés en environnement (DRT 66981)" since 2008;

036

o Part-time lecturer, École Polytechnique de Montréal, «Environmental law (SSH 5402)», 1990 to the present;
o Part-time lecturer, Université du Québec à Montréal, «Environmental law» 2002, 2003, 2006 and 2009;
o Speaker at the conference « Droits et libertés aujourd'hui : organisations et enjeux » given by the Canadian Association of Statutory Human Rights Agencies (CASHRA) on the theme « Environment and human rights », Montréal, June 16, 2009;
o Speaker at the Conseil patronal de l'environnement du Québec : «L'acceptabilité sociale des projets », Montréal, March 24, 2009;
o Speaker at the workshops on the conservation of national land, organized by Nature Québec : «Maitriser l'aspect juridique en aménagement du territoire pour intervenir efficacement», Beaupré, March 13 and 14, 2009;
o Environmental law lecture, "Environmental Class Actions : Comparing Experiences in Ontario and Québec", University of Ottawa, December 3rd 2008
o Speaker at the Canadian Bar Association conference, «Les développements récents en droit de l'environnement – Point de vue sur l'affaire Ciment du St-Laurent», Québec, August 18, 2008;
o Speaker in the context of the professional development course for chemists, University of Montréal, Department of chemistry, since 2006;
o Speaker at the Francophone Association for Knowledge congress, entitled "Environnement et engagement citoyen", Chicoutimi, May 8, 9 and 10 2007;
o Speaker at the Quebec Order of Chartered Appraisers, Le recours collectif en environnement et le rôle de l'évaluateur agréé, October 5-7, 2006;
o Co-speaker at the Québec Bar - Continuing Education Services, Les recours collectifs intentés devant la Cour fédérale du Canada, Les développements récents en recours collectifs, 2005;
o Speaker at the Canadian Institute conference «Les développements récents sur la procédure fédérale en matière de recours collectifs : tout ce que vous devez savoir», February 2005 ;
o Co-presenter at the Insight Information Inc. conference, «Le recours collectif et le droit de l'environnement: les points de vue de la demande et de la défense», January 24 and 25, 2005.
o Speaker at Insight Information Inc. conference, «Le recours collectif : mécanismes de résolution des conflits environnementaux», December 1 and 2, 2004;
o Speaker at the Canadian Institute conference «La conférence de règlement à l'amiable en recours collectif», March 27 and 28 2003.
o Speaker for the Chambre des notaires du Québec's ongoing professional training, «Les nouvelles règles en matière de contamination de sols : moins de victimes, plus de responsables», November 2002.
o Speaker at the Quebec Bar Association's ongoing professional training program «Les récents développements en droit de l'environnement – contrôle et responsabilité de l'état en environnement», Montréal, May 2000.
o Speaker at the International Research Institute, «Connaissez parfaitement vos responsabilités, celles des autorités publiques et des tiers en cas de désastre», Montréal, April, 26, 27 and 28, 1999.
o Speaker at the Québec Bar Association's ongoing professional training symposium, «Les catastrophes naturelles et l'état du droit – lorsque la catastrophe environnementale n'est plus un cas fortuit», Montréal, December 4, 1998.
o Speaker at the Bar Convention, «Le droit de l'environnement à l'ère des catastrophes», Charlevoix, June 4, 5, and 6, 1998.
o Conference for the Canadian Institute, «Les développements en matière de droit de l'environnement au Québec et leurs impacts sur la gestion environnementale de votre entreprise», May 20 and 21, 1998.
o Speaker at the 63rd annual Association canadienne-française pour l'avancement des sciences (ACFAS) Convention entitled «Comment opérationnaliser le développement durable au sein de l'entreprise», Chicoutimi, May 26 and 27, 1995.
o Presenter at the International conference on «La dimension sociale de l'intégration continentale», organized by the Réseau québécois sur l'intégration continentale (RQIC), Montréal, May 11-13, 1995.
o Speaker in the context of notarial refresher courses, 54th session on «Droit de l'environnement», Montréal, March 24 and 25, 1995.
o Part-time lecturer, Faculty of Law, McGill University, «La responsabilité pour l'environnement», 1993-1994.
o President and reporter for the International Law Commission at the 90th Convention of

037

-notaires of France, Nantes, France, May 1994.
o Speaker in the context of thematic conferences organized by the Department of social
  and preventive medecine of Université Laval on «Le droit de l'environnement : l'état de la
  situation-et tendances actuelles au Québec», February 24, 1994.
o Presenter at the environmental law course given by the Centre d'étude du droit de
  l'environnement, Faculté de droit des facultés universitaires Saint-Louis, Bruxelles,
  Belgique, 27 mai 1993.
o Presenter at the The Canadian Institute : «L'aspect environnemental des transactions
  immobilières», Montréal, November 23 and 24, 1992.
o Speaker at the Canadian Institute for Advanced Legal Studies Conference (Journées
  Strasbourgeoises) on : «La responsabilité de l'État et de ses sociétés mandetaires en
  environnement», Strasbourg, France, July 12-18, 1992.
o Speaker at the Union Internationale du Notariat Latin Convention, on «La protection
  juridique des habitats et le rôle du notariat», Carthagene, Colombia, April 27 to May 4,
  1992.
o Speaker at the Ordre des Ingénieurs du Québec conference, Plain Sud regional division
  on: «La législation environnementale en matière d'enfouissement ou d'incinération de
  déchets», Longueuil, March 11, 1992.
o Speaker at the conference organized by the University of Ottawa, Faculty of civil law, on:
  «Perspectives de l'État actuel et de l'évolution future de la réglementation
  environnementale : vers une meilleure concertation», Ottawa, February 6, 1992.
o Speaker at the XIXe annual regional conference of the Association québécoise des
  techniques de l'eau (A.Q.T.E) Mauricie - Bois-Franc region : «Nettoyage et
  décontamination des sites industriels», Trois-Rivières, November 21, 1991.
o Presenter at the Confédération des syndicats nationaux (C.S.N.) symposium:
  «L'environnement et les syndicats - droits et recours en matière d'environnement»,
  Montréal, November 20, 1991.
o Speaker for The Canadian Institute: «l'aspect environnemental des transactions
  immobilières», Montréal, October 23 and 24, 1991.
o Speaker at the Institut canadien du droit des ressources 5th conference: «L'utilité
  juridique d'une charte des droits à un environnement de qualité», Ottawa, May 9-11,
  1991.
o Speaker at the Quebec Bar's Ongoing professional training service Convention: «Les
  récents développements en droit de l'environnement - La faute en matière de
  responsabilité civile pour dommages environnementaux», Montréal and Québec, January
  24 and 25, 1991.
o Part-time lecturer, Université de Montréal, Faculty of Continuing Education : «Droit de
  l'environnement», (DRT-3304 G-A), 1990-1991.
o Speaker during refresher courses in notarial law : «Les récents développements en droit
  de l'environnement : l'application du principe pollueur-payeur ou notaire-payeur»,
  Québec, November 3 and 4, 1990.
o Presenter at Environment Canada's Canadian Wildlife Service's annual convention: «Les
  aspects juridiques associés à la conservation des habitats», Québec, October 27 and 28,
  1990.
o Presenter at the Canadian Environmental Network's annual convention on the
  environment: «La Charte des droits à un environnement de qualité», Montréal, October
  12, 1990.
o Presenter at McGill's Environmental Law Association Symposium : «Défis juridiques et
  politiques: comment vivre une ère environnementale», Montréal, October 10 and 11,
  1990.
o Presenter at the symposium : «Le droit en question - la déjudiclarisation : comment
  remédier à l'inflation judiclaire», «Droit et Environnement» organized by the Agora,
  Centre Sheraton, Montréal, April 27 and 28, 1990.
o Presenter at the Canadian Institute : «Implications juridiques du développement de sites
  industriels contaminés», Montréal, October 26, 1989.
o Presenter at the Canadian Bar Association's annual convention : «Environnement et
  conservation: Érosion du concept de propriété privée», Montréal, April 7, 1989.
o Presenter during refresher notarial law courses: «Le droit de l'environnement et la
  pratique notariale à l'égard des terrains contaminés», Québec, November 4 and 5, 1988.
o Part-time lecturer, University of Ottawa, Faculty of law, Diploma in notarial law: «Les
  radiations» (NOT-5605), 1987-1988, 1988-1989 school years.

          Para-professional activities

Michel Belangér's Résumé ::... Michel Belangér's Résumé ::...                    Page 5 of 5

038

o President of Nature Québec since 2007.
o Vice-president of Union québécoise pour la conservation de la nature (U.Q.C.N.) (1989-2006).
o Founder and administrator of the Centre québécois du droit de l'environnement (C.Q.D.E.) (since January 1989).
o Vice-president of Nature Québec (since 1989).
o Ad hoc commissioner, Bureau d'audiences publiques sur l'environnement (B.A.P.E.) (1991-2007), having namely acted as commissioner for the generic hearing on residual waste (1996-1997).
o Member of the Advisory committee on environmental protection (ACEP) for Environment Canada and Industry, Science and Technology Canada (from 1994 to 1997).
o Director of masters thesis for Mtre Yves Corriveau, presented to the masters program in environment and prevention at Université de Montréal, Mrs. Véronique Meunier, for the master law program at Université de Montréal.
o Consultant and person in charge of various memoranda by the Chambre des Notaires du Québec, on environmental law (since 1991).
o Member of the advisory committee of the Centre de développement d'agrobiologie du Québec (1990-1993).
o Member of the legal committee of the Fondation québécoise en environnement (1988 - 1990).
o Member of the editorial board of the Québec Bar for the memorandum on bill C-78 on the federal environmental evaluation process (October to December 1990).
o Québec Bar editorial board coordinator for the memorandum on the legal aspects of hazardous waste management in Québec, presented to the Commission d'enquête sur les déchets dangereux (commission Charbonneau), June 1990.
o Member of the hazardous waste committee of Union des Municipalités du Québec (U.M.Q.) (November 1989 to May 1990).
o Consultant to the Conseil consultatif de l'environnement du Gouvernement du Québec, relative to the study of the legal point of view of «Charte de la Qualité de la Vie» (February 1988 to December 1989).
o Consultant and person in charge of writing a thesis for the Chambre des Notaires du Québec, on the public review of the Conseil de la conservation et de l'environnement du Gouvernement du Québec, January 1989: «Une stratégie de la conservation et du développement.»



039





## LAUZON BÉLANGER
### AVOCATS · ATTORNEYS

home
history
contact us
français

lawyers

## Yves Lauzon

Telephone: 514 844-4646
Fax: 514 844-7009
E-mail: ylauzon@lauzonbelanger.qc.ca

Mr. Lauzon received his diploma in law from Université de Montréal in 1972 and was admitted to the Québec bar in 1974. Mr. Lauzon is involved in the area of class actions since the coming into force of this procedure in 1979, as lawyer for the Fonds d'aide aux recours collectif first and then in private practice.

**Languages**

French and english

**Training**

Admitted to the Québec Bar (1974)

**Professional affiliations**

Member of the Québec Bar
Member of the Canadian Bar Association

**Conferences**

Mr. Lauzon has participated in many conferences, symposiums and committees on class actions for 25 years on a regular basis and has been a speaker at many conferences in Canada and abroad.

He was invited as an expert witness before a French Government committee whose mandate it was to make recommendations on the adoption of a law on collective actions in Paris.

**Publications**

o Recours collectif, Gérald R. Tremblay, c.r. (co-author), collection Aide-Mémoire, no. 104, 1st edition, 1986.
o Le recours collectif québécois, Louise Ducharme (co-author), Les éditions Yvon Blais Inc., 1988.
o Le recours collectif, (Points de droit), Les Éditions Yvon Blais Inc., 2001.
o La classe nationale: Critères d'autorisation in Développement récent sur les recours collectifs, Service de la formation permanente du Barreau du Québec, 2005, volume 232, pages 35 to 53.

**Para-professional Activities**

Member of l'Union des producteurs agricoles du Québec
Member of the Fédération des pointculteurs du Québec

040




## Careen Hannouche

Telephone: 514 844-4646
Fax: 514 844-7009
E-mail: careen.hannouche@lauzonbelanger.qc.ca

Ms. Hannouche joined Lauzon Bélanger as a student at law in 2003 and as an articling student in 2005. She completed her civil law degree in 2003 and her common law degree in 2004. She was admitted to the Québec Bar in 2005. She is implicated in pleadings before the Court, written procedures and implementation of settlements and this in all the class actions taken by the firm.

**Languages**

French, English, Italian

**Professional Training**

Ontario Bar (2007)
Admitted to the Québec Bar in 2005
LL.B. University of Ottawa- National Program in common law (2004)
Certificate from the World Intellectual Property (WIPO) Worldwide Academy Distance Learning Program for the General Course on Intellectual Property
LL.B. Université de Montréal (2003)

**Professional affiliations**

Member of the Ontario Bar
Member of the Québec Bar
Member of the Canadian Bar Association
Member of the Young Montreal Bar Association

**Conferences**

Speaker at the Canadian Bar Association's, Québec Division, Third Conference on class actions – « Dans l'intérêt des membres : application du principe de protection des membres du groupe » - May 8, 2008.
Collaboration with Mr. Lauzon and Mr. Bélanger in various conferences on class actions.

**Publications**

Collaboration « Dans l'intérêt des membres : application du principe de protection des membres du groupe » in Actes de la formation juridique permanente, Association du Barreau Canadien, Division Québec, Éditions Yvon Blais, 2008, Volume 2, pages 23 to 47.

**Para-professional Activities**

President of the executive board of the Junior Associates of the Cedars Cancer Institute
Member of the Association des diplômés en droit de l'Université de Montréal (ADDUM)
Member of UNICEF

041

home | history | contact us | français | lawyers | class action | member services | useful resources
© Copyright Lauzon Bélanger Inc. Class action Law Firm, Montreal, Quebec, Canada

042

This is "Exhibit B" referred to in the Affidavit of MICHEL
BELANGER sworn December 4, 2009

_____
(Commissioner for Taking Affidavits (or as may be)

55,827
Diane Blanchette

043

# DAVID THOMPSON

# CURRICULUM VITAE

## WORK EXPERIENCE

February, 2001
to present

Barrister and Solicitor
SCAREONE HAWKINS LLP
Barristers and Solicitors
One James Street South, 14th Floor
Hamilton, Ontario
L8N 3P9

Partner

Civil Litigation Practice with a strong emphasis on Plaintiff Class Action work, and Commercial Litigation. Broad exposure to a wide range of litigation matters including class proceedings, breach of contract, shareholder and corporate disputes, injunctions and mandatory orders, fiduciary duties, negligence, misrepresentation and detrimental reliance, aborted real estate and business transactions, wrongful dismissal and labour disputes, insurance claims and debt collection.

**Responsibilities**

Client contact, determined problem areas, analyzed problems, recommended and implemented solutions. Negotiated settlements to conflict, participated in numerous interlocutory proceedings in Ontario Superior Court of Justice, numerous trials in Ontario Superior Court of Justice, etc., and appeal proceedings in the Ontario Court of Appeal and Divisional Court.

Also appeared before numerous and various administrative tribunals/committees including Land Division Committees, Academic Appeals Committees, Workers' Safety and Insurance Board of Ontario, Liquor Licence Board of Ontario and Commercial Registration Appeals Tribunal.

**044**

| | |
|---|---|
| February, 1988 to<br>January, 2001 | Barrister and Solicitor<br>BROWN, SCARFONE, HAWKINS<br>Barristers and Solicitors<br>1050-120 King Street West<br>Hamilton, Ontario<br>L8N 3P9 |

Associate February 1988 - January 1993
Partner February 1993 - January, 2001

| | |
|---|---|
| June, 1987 to<br>September, 1987 | Student-at-Law<br>STEPHAN M. FRANKEL<br>Barrister and Solicitor<br>4200-100 Main Street East<br>Hamilton, Ontario<br>L8N 3W6 |

Exposure to various areas of law including criminal law, civil litigation and landlord and tenant law.

**Responsibilities**

Drafting pleadings; and other documents; research and preparing memoranda of law, meeting clients, daily attendance in Ontario Court (Provincial Division) and weekly attendance in Ontario Court (General Division) on interlocutory motions and Landlord and Tenant trials.

| | |
|---|---|
| June, 1986 to<br>June, 1987 | Articled Student-at-Law<br>EVANS, PHILP<br>Barristers and Solicitors<br>1 King Street West<br>16th Floor<br>Hamilton, Ontario<br>L8P 1A4 |

Exposure to various areas of law including civil litigation, family law, criminal law, real estate and wills, labour law and administrative law.

**Responsibilities**

Drafting pleadings and other legal documents, researching and preparing memoranda of law, meeting clients, full carriage of Small Claims Court files, attendance on motions and adjournments in Ontario Court (General Division) and

|  | attendance on motions and adjournments in Ontario Court (Provincial Division) |
|---|---|
| Summer, 1985 | Student-at-Law/Clerk<br>Unified Family Court<br>55 Main Street West<br>Hamilton, Ontario<br>L8P 1H4<br>Clerk for Justices Beckett, Goodearle, Mendes da Costa, Steinberg and Van Duzer. |

**Responsibilities**

Legal research, the provision of legal opinions, and the preparation of briefs and memoranda for the five Justices.

| Summer, 1984 | Student-at-Law/Clerk<br>Unified Family Court<br>55 Main Street West<br>Hamilton, Ontario<br>L8P 1H4 |
|---|---|

Clerk for Justices Gravely, Steinberg and Van Duzer.

**Responsibilities**

Legal research, the provision of legal opinions, and the preparation of briefs and memoranda for the three Justices.

## EDUCATION

| September, 1987 to February, 1988 | Law Society of Upper Canada<br>Bar Admission Course<br>Called to the Bar as a Barrister and Solicitor for the Province of Ontario:<br>April, 1988 |
|---|---|
| 1983 to 1986 | Osgoode Hall Law School<br>Overall Average:  B<br>Bachelor of Laws Degree Obtained:  May, 1986 |

046

| 1980 to 1983 | McMaster University<br>Overall Average: A<br>Bachelor of Arts Degree Obtained: May, 1983<br>Graduation Standing: 1 - Summa Cum Laude<br>Major: Political Science |
|---|---|
| 1975 to 1980 | Cathedral Boys' High School<br>Overall Average: A<br>S.S.H.G.D. Obtained: January, 1980 |

## ACADEMIC AWARDS

| 1982 to 1983 | Edwin Marwin Dailey Memorial Scholarship<br>McMaster University Dean's Honour List |
|---|---|
| 1981 to 1982 | Edwin Marwin Dailey Memorial Scholarship<br>McMaster University Dean's Honour List |
| 1980 to 1981 | McMaster University Chancellors' Scholarship<br>McMaster University Dean's Honour List |
| 1979 to 1980 | Ontario Scholarship<br>The Permanent Annual Student Writing Award<br>Reader's Digest Award<br>High School Class Valedictorian |

## PERSONAL/PROFESSIONAL ACHIEVEMENTS

| 1979 | Class Valedictorian - Graduating Class - Cathedral Boys' High School. |
|---|---|
| 1983 | Duty Counsel - Osgoode Hall Community Legal Aid Services Programme. |
| 1984 to 1985 | Assisted Justice David M. Steinberg of the Unified Family Court with research for his text, Family Law in the Family Courts, Carswell, 1986. |

047

| | |
|---|---|
| 1989 | Article published, February, 1989<br>Hamilton Law Association Newsmagazine - "Arguing Motions in District and Supreme Court: A Back to Basics Guide".<br><br>Articles published, June, July/August, September and December, 1989<br>Let's Talk Business Magazine - Hamilton and Niagara Editions - Four part series on Business Contracts.<br><br>Guest Speaker - Cathedral Girls' High School<br>Topic - Tort Law and Civil Litigation.<br><br>Guest Speaker - Hamilton Catholic High Schools<br>Conducted mock civil trial.<br><br>Guest Speaker - C.H.M.L. Radio<br>John Hardy Show "Your Day in Court".<br><br>Travelled to Tokyo, Japan to conduct cross-examinations on a complex commercial litigation matter involving a heavy equipment distributorship agreement. Multi-million dollar settlement ultimately achieved. |
| 1990 | Member - Editorial Board, Hamilton Law Association Newsmagazine.<br><br>Member - Library Committee, Hamilton Law Association.<br><br>Article published, January, 1990<br>Hamilton Law Association Newsmagazine<br>"Far Eastern Observations".<br><br>Article published, June/July, 1990<br>Hamilton Law Association Newsmagazine<br>"Use of Factums in Motions Court".<br><br>Article published, September, 1990<br>Hamilton Law Association Newsmagazine<br>"Court Reform in the Central South Region". |

048

| 1991 | Member - Editorial Board, Hamilton Law Association Newsmagazine. |
|---|---|
|  | Vice-Chairman - Library Committee, Hamilton Law Association. |
|  | Article published, May, 1991<br>Hamilton Law Association Newsmagazine<br>"Civil Pre-Trials - Maximizing Their Effectiveness". |
|  | Article published, September, 1991<br>Hamilton Law Association Newsmagazine<br>"Interlocutory Injunction Applications - Practical Tips". |
|  | Guest speaker - Kelsey's Restaurant Managers' Meeting<br>Tort Liability for Serving Liquor in the Hospital Industry. |
|  | Guest speaker - LMC Management Consultants<br>Employment Law Seminar<br>Fiduciary Obligations of Employees. |
| 1992 | Trustee of the Board of Directors,<br>Hamilton Law Association. |
|  | Member - Editorial Board,<br>The Hamilton Lawyer Newsmagazine. |
|  | Member - Library Committee,<br>Hamilton Law Association. |
|  | Chairman - Young Lawyers' and Articling Students' Committee<br>Hamilton Law Association. |
|  | Article published, September, 1992<br>Contact Magazine<br>"What to Expect in a Lawsuit". |
|  | Article published, September, 1992<br>The Hamilton Lawyer Newsmagazine<br>"Fiduciary Obligations of Real Estate Agents". |

049

| 1993 | Trustee of the Board of Directors,<br>Hamilton Law Association<br>Editor-In-Chief,<br>The Hamilton Lawyer Newsmagazine.<br><br>Member - Library Committee,<br>Hamilton Law Association.<br><br>Regular contributor to The Hamilton Lawyer Newsmagazine,<br>Restaurant Review column.<br><br>Guest speaker - Hamilton Law Association,<br>Practical Tips for the Courtroom. |
| 1994 | Trustee of the Board of Directors,<br>Hamilton Law Association.<br><br>Editor-In-Chief,<br>The Hamilton Lawyer Newsmagazine.<br><br>Member - Library Committee,<br>Hamilton Law Association.<br><br>Guest speaker - Hamilton Law Association,<br>Evidence: A Practical Guide.<br><br>Guest Speaker - C.F.M.U. Radio<br>"Court Process and Procedure".<br><br>Lecturer/Speaker - Ontario Trial Lawyers Association Spring<br>Conference<br>"Breach of Fiduciary Duty". |
| 1995 | Trustee of the Board of Directors,<br>Hamilton Law Association.<br><br>Member - Editorial Board<br>The Hamilton Lawyer Newsmagazine.<br><br>Guest Speaker - Hamilton Law Association<br>Preparing Witnesses to Give Evidence at Trial.<br><br>Guest Speaker - CHCH T.V.<br>2 on-air television appearances. |

050

| | |
|---|---|
| 1996 | Member - Advocates' Society. |
| | Member - Editorial Board<br>The Hamilton Lawyer Newsmagazine. |
| | Guest Speaker - Hamilton Law Association<br>Arguing Motions in Ontario Court (General Division). |
| | Guest Speaker - The Advocates' Society<br>Alternative Dispute Resolution. |
| | Guest Speaker - The Law Society of Upper Canada, The<br>Ontario Court of Justice and The Canadian Bar Association<br>- Ontario<br>The Simplified Rules of Civil Procedure. |
| 1997 | Member - Advocates' Society. |
| | Member - Ontario Trial Lawyers Association. |
| | Member - American Trial Lawyers Association. |
| | Retained as Class Counsel on several large complex claims<br>under the Class Proceedings Act acting for hundreds of<br>thousands of class members in claims involving millions of<br>dollars. |
| | Received significant media exposure regarding the Class<br>Action claims including Articles in The Globe & Mail, The<br>Financial Post, Toronto Star, etc. |
| 1998 | Member - Advocates' Society. |
| | Member - Ontario Trial Lawyers Association. |
| | Member - American Trial Lawyers Association. |
| | Participation in Alberta Trial Lawyers Conference ("Rockies<br>Rendezvous"), Banff Springs, Alberta. |
| 1999 | Member - Advocates' Society. |
| | Member - Ontario Trial Lawyers Association. |
| | Member - American Trial Lawyers Association. |

051

Guest Speaker - Ancaster Mens Club - Litigation Procedures and Class Actions.

Founding principal of e-incorp Inc., Canada's online corporate services provider.

2000        Member - Advocates' Society.

Member - Ontario Trial Lawyers Association.

Member - American Trial Lawyers Association.

Continuing involvement as Lead Counsel in large Class Action claims including attendances in New York and Vancouver in respect of such matters.

Article published - Lorman Education Services Seminar - "Employee Termination in Ontario: Navigating The Press – – Important Termination Concerns".

Guest Speaker - Downtown Rotary Club - The Internet: Changing the Dynamics of Small Business in Canada.

2001        Achieved successful settlement of Vanishing Premium Class Action Claim against Canada Life Assurance Company on a national basis on behalf of approximately 135,000 policyholders.    Settlement Agreement signed February. Court Approval obtained April.

Travel to San Diego, California for participation in Association of Fundraising Professionals International Conference on Fundraising.

Founding principal of Freewills.com, an online free will-preparation service that uniquely links will-preparation with the encouragement and availability of charitable giving. Involvement included all aspects of business start-up including strategic vision, conceptualization, design and development of product, overall management, marketing and sales, operations, implementation, securing subscriptions, preparation of business plan, etc.

Guest Speaker - Lorman Education Services Seminar, Employee Leave Issues/Maternity and Parental Leave Issues, April 26, 2001.

Guest Speaker- Lorman Education Services Seminar, Employee Termination in Ontario: Navigating the Process - Important Termination Concerns, May 17, 2001.

Article published, Spring, 2001 issue of the "The Litigator. Journal of the Ontario Trial Lawyers Association" - "Class Proceedings and Product Liability Claims".

Achieved successful settlement of Vanishing Premium Class Action Claim against London Life Insurance Company on a national basis on behalf of approximately 890,000 policyholders (settlement value $260M). Settlement Agreement signed June, 2001; Court approval obtained October, 2001; Final Court approval by Ontario Court of Appeal, February, 2002.

Travel to Indianapolis, Indiana for participation in National Association of Gift Planners Conference.

2002

Travel to St. Louis, Missouri for participation in Association of Fundraising Professionals International Conference on Fundraising.

Guest Speaker - Lorman Education Services Seminar - Employee Leave Issues April 27, 2002.

Guest Speaker - The Canadian Institute, Litigating Class Actions Seminar, September 26 and 27, 2002.

2003

Guest Speaker - Insight Conference: Class Actions - The Litigators' Conference, "Certification Update", January 27 and 28, 2003.

Guest Speaker - Ontario Trial Lawyers Association Spring Conference, Class Actions, May 31, 2003.

Achieved successful settlement of Class Action claim against Canada Post Corporation, Cybersurf Corp. and 3Web Corp. on a national basis on behalf of approximately 150,000 customers who purchased a CD-Rom product that did not function as represented. Settlement Agreement signed July, 2003; Court approval obtained December, 2003.

2004

Achieved successful settlement of Class Action claim against Bell Canada on a national basis on behalf of approximately 750,000 subscribers to Bell Canada's First Rate[TM] long distance plan in connection with unilateral

053

billing changes. Settlement Agreement signed March, 2004;
Court approval obtained May, 2004.

Received widespread media exposure in respect of
settlement of Bell First Rate Class Action, including articles
in Toronto Star (lead story in Business Section, etc.,)
Hamilton Spectator, etc.

Appeared as guest commentator on legal issues on CH TV
"Live @ 5:30" television news program.

Received significant media exposure regarding new class
action claim against Bell Canada relating to modem
hijacking, including articles in the Toronto Star, Hamilton
Spectator, radio news broadcasts and appearances on CH
TV television news program.

Guest Legal Consultant on CH TV. Several on-air television
appears on various legal topics.

2005     Speaker at Advocate's Society, Court House Series,
seminar re: Mock Summary Judgment Motion and Effective
Advocacy in Motions Court, February 10, 2005.

Speaker at Cross-Border Commercial Litigation Seminar re:
Class Actions: Cross-Border Issues, April 7th and 8th, 2005.

Speaker at The 5th Annual Advocacy Conference, seminar
re: Class Actions: Nuts & Bolts of a Class Action, April 20,
2005.

Appeared as guest commentator on various legal issues on
CH TV "Live @ 5:30" television news program.

2006     Multiple Appearances as Guest Legal Consultant on CHML
radio program re: Payday Loan litigation.

Chairman of the 1st Annual Hamilton Law Association
Current Issues in Commercial Litigation Seminar held April
6, 2006.

2007     Co-Chairman of the 2nd Annual Hamilton Law Association
Current Issues in Commercial Litigation Seminar held April
12, 2007.

054

| | |
|---|---|
| 2008 | Co-Chairman of the 3rd Annual Hamilton Law Association Current Issues In Commercial Litigation Seminar held March 27, 2008. |

Co-Chairman of the 3rd Annual Hamilton Law Association Current Issues In Commercial Litigation Seminar held March 27, 2008.

Member – Board of Directors of Mark Preece Family House—a family house to be located near the Hamilton General Hospital to provide close, accessible and affordable short-term accommodation for the families of adult patients in Hamilton hospitals.

2009      Co-Chairman of the 4th Annual Hamilton Law Association Current Issues In Commercial Litigation Seminar held March 12, 2009.

Member – Board of Directors of Mark Preece Family House.

Speaker at Hamilton Law Association 9th Annual Advocacy Conference re: Update on Class Actions, April 30, 2009.

Article published May, 2009 edition "Commercial Litigation Review" Volume 7, Number 2. Co-author of article on Blended Retainer Agreements with Heather C. Devine and James Tausendfreund(Gowlings)

Multiple Appearances as Guest Legal Consultant on CHML radio program re: Facebook Terms of Service, Access to Courts for terror victims, etc.

## CERTIFICATIONS AND SUCCESSFUL RESOLUTIONS OF CLASS PROCEEDINGS

### 2009

*Robinsons v. Rochester Financial et al.* – Certification motion argued June 23, 24, 25, the Honourable Madam Justice Lax; decision under reserve.

*Watson et al v.   Northstar Aerospace, Inc., and Northstar Aerospace (Canada) Inc.* – Certification and court approval of settlement, June 18,  the Honourable Mr. Justice Perell.

### 2008

*McCutcheon v. The Cash Store et al.*  – Court approval of settlement, December 2, the Honourable Mr. Justice Cullity.

*Zonolite Attic Insulation* – CCAA Court approval of settlement on behalf of all Canadian ZAI claimants, October 17, the Honourable Mr. Justice Morawetz, Superior Court of Justice – Commercial Court.

**2007**

*Bellaire/LaRocca et al. v. Salim Daya and Hamilton Health Sciences Corporation,* [2007] O.J. No. 4819 – Certification and court approval of settlement, December 14, the Honourable Madam Justice Hoy.

**2006**

*McCutcheon v. The Cash Store et al,* [2006] O.J. No. 2360 - Certified May 10, the Honourable Mr. Justice Cullity.

*Jones v. Royal Botanical Gardens et al* - Certification and court approval of settlement, September 28, the Honourable Mr. Justice Crane.

*Humphreys et al. v. Select Financial et al.,* (Hamilton Court file No. 01-3510CP) (Unreported) - Certification and court approval of settlement, November 2, the Honourable Mr. Justice Crane.

*Zonolite Attic Insulation* – Appointed as Representative Counsel for all Canadian ZAI claimants, February 8, the Honourable Mr. Justice Farley.

**2004**

*Sajecki v. Bell Canada* - Certification and court approval of settlement, May 10, the Honourable Mr. Justice Crane.

**2003**

*McArthur v. Canada Post Corporation et al,* [2004] O.J. No. 1406 - Certification and court approval of settlement, December 22, the Honourable Mr. Justice Crane.

**2001**

*Gibbs v. Canada Life Assurance Co.,* [2001] O.J. No. 6269 - Certification and court approval of settlement, April 4, the Honourable Mr. Justice Cumming.

*Directright Cartage Ltd. v. London Life Insurance Co.,* [2001] O.J. No. 4073 - Certification and court approval of settlement, October 18, the Honourable Mr. Justice Cumming.

056

## CURRENT CLASS PROCEEDINGS

*McKee's Carpet Zone v. Sears Canada Inc., Sears, Roebuck and Co. and Home Coverings Buying Group Inc.* – This proceeding is brought on behalf of all individuals or entities in Canada who/which entered into a license agreement with Sears for operation of a "Sears Floor Covering Centre", since 1998.

*Stephanie Graham and Angela Miceli v. Imperial Parking Canada Corporation carrying on business as Impark* – This proceeding is brought on behalf of all persons who parked a vehicle or whose vehicle was parked at an Impark parking lot and were charged and paid violation fees to Impark.

*Levesque v. Ford Motor Company of Canada* - This proceeding is brought on behalf of all individuals in Canada who were offered employment by Ford commending in July, 2008 as part of a Third Work Shift at Ford's Oakville plant.

*Kafka et al. v. Allstate Insurance Company* - This proceeding is brought on behalf of all Allstate agents across Canada who were employed by Allstate as of July 27, 2007 and who were constructively dismissed.

*Robinsons v. Rochester Financial et al* - This proceeding is brought on behalf of persons who participated in the Banyan Tree Gift Program, a leveraged charitable donation program, for taxation years 2003-2007.

*Penney et al. v. Bell Canada* - This proceeding is brought on behalf of wireline telephone customers of Bell Canada, being persons who made arrangements or wireline telephone service to be installed in their homes between March 24 and December 31, 2005.

*Cotton et al. v. Michaels Stores Inc* - This proceeding is brought on behalf of persons in Canada who were/are former employees/employees of Michaels who worked in excess of 44 hours in any given week without receiving overtime pay.

057

# MATTHEW G. MOLOCI

# CURRICULUM VITAE

## PROFESSIONAL EXPERIENCE

1999
to present

**SCARFONE HAWKINS** [LLP]
Barristers and Solicitors
One James Street South, 14th Floor
Hamilton, Ontario
L8N 3P9

Associate -- 1999 -- 2007
Partner -- 2007

Practice areas: bankruptcy/insolvency, commercial,
construction, employment, estates and class action litigation

Carriage of complex litigation matters through trial and
appeal

1998 -- 1999

**PENMAN & PENMAN** [LLP]
Barristers and Solicitors
206-4195 Dundas Street West
Etobicoke, Ontario
M8X 1Y4

Associate lawyer

Client development, law firm administration and carriage of
litigation matters in personal injury, employment, family,
commercial, construction lien and estates matters.

1996 - 1997

**STEWART, ESTEN** [LLP]
Barristers and Solicitors
100 Collier Street
Barrie, Ontario
L4M 4V3

Student-at-law

058

| | |
|---|---|
| 1996 | **PENMAN & PENMAN** [LLP]<br>Barristers and Solicitors<br>206-4195 Dundas Street West<br>Etobicoke, Ontario<br>M8X 1Y4<br><br>Summer Student |
| 1995 | **MILLER THOMSON** [LLP]<br>Barristers and Solicitors<br>Toronto, Ontario<br><br>Summer Student<br><br>Assisted with the research and writing of John Sproat's textbook on constitutional law and the *Charter of Rights and Freedoms*<br><br>Co-author: "Non-Competition and Non-Solicitation Agreements", with John Sproat, Federated Press, Executive Employment Law seminar |
| 1985-1993 | **TNT CANADA INC./ TRANSFREIGHT INC.**<br><br>Manager, Specialized transportation and logistics<br><br>Eight-year career in specialized transportation and logistics<br>General management of successful operating division |

**EDUCATION**

| | |
|---|---|
| February 26, 1998 | Called to the Ontario Bar, Law Society of Upper Canada |
| 1993-1996 | Bachelor of Laws, Dalhousie University |
| 1984-1986 | Sheridan College of Applied Arts and Technology<br>Motor Carrier Administration |

## NOTABLE CIVIL LITIGATION CASES

*Shekhdar v. K & M Engineering and Consulting Corporation* (2004), 71 O.R. (3d) 475 (S.C.J.). Lead counsel at trial and on appeal.

*Schaible Electric Ltd.* v. *Melloul-Blamey Construction Inc.*, [2004] O.J. No. 3088, affirmed [2005] O.J. No. 3226 (C.A.).  Lead counsel at trial and on appeal.

*Choquette v. 995146 Ontario Ltd.* [2004] O.J. No. 3593 (C.A.). Lead counsel at trial and on appeal.

## CERTIFICATIONS AND SUCCESSFUL RESOLUTIONS OF CLASS PROCEEDINGS

### 2009

*Robinsons v. Rochester Financial et al.* – Certification motion argued June 23, 24, 25, 2009, before the Honourable Madam Justice Lax; decision under reserve.

### 2008

*McCutcheon v. The Cash Store et al.* – Court approval of settlement, December 2, by the Honourable Mr. Justice Cullity.

*Zonolite Attic Insulation* – Appointed as Representative Counsel for all Canadian ZAI claimants, February 8, 2008 by the Honourable Mr. Justice Farley. CCAA Court approval of settlement on behalf of all Canadian ZAI claimants, October 17, by the Honourable Mr. Justice Morawetz, Superior Court of Justice – Commercial Court .

### 2006

*McCutcheon v. The Cash Store et al*, [2006] O.J. No. 2360 - Certified May 10, by the Honourable Mr. Justice Cullity.

*Humphreys et al. v. Select Financial et al.*, (Hamilton Court file No. 01-3510CP) (Unreported) - Certification and court approval of settlement, November 2, by the Honourable Mr. Justice Crane.

*Jones v. Royal Botanical Gardens et al* - Certification and court approval of settlement, September 28, by the Honourable Mr. Justice Crane.

2003

*McArthur v. Canada Post Corporation et al,* [2004] O.J. No. 1406 – Certification and court approval of settlement, December 22, by the Honourable Mr. Justice Crane.

2001

*Gibbs v. Canada Life Assurance Co.,* [2001] O.J. No. 6269 - Certification and court approval of settlement, April 4, by the Honourable Mr. Justice Cumming.

*Directright Cartage Ltd. v. London Life Insurance Co.,* [2001] O.J. No. 4073 – Certification and court approval of settlement, October 18, by the Honourable Mr. Justice Cumming.

## CURRENT CLASS PROCEEDINGS

*McKee's Carpet Zone v. Sears Canada Inc., Sears, Roebuck and Co. and Home Coverings Buying Group Inc.* – This proceeding is brought on behalf of all individuals or entities in Canada who/which entered into a license agreement with Sears for operation of a "Sears Floor Covering Centre", since 1998, and who alleges undisclosed rebates and/or secret commissions.

*Stephanie Graham and Angela Miceli v. Imperial Parking Canada Corporation carrying on business as Impark* -- This proceeding is brought on behalf of all persons who parked a vehicle or whose vehicle was parked at an Impark parking lot and were charged and paid violation fees to Impark.

*Kafka et al. v. Allstate Insurance Company* - This proceeding is brought on behalf of all Allstate agents across Canada who were employed by Allstate as of July 27, 2007 and who were constructively dismissed.

*Robinsons v. Rochester Financial et al* - This proceeding is brought on behalf of persons who participated in the Banyan Tree Gift Program, a leveraged charitable donation program, for taxation years 2003-2007, which donation tax receipts and credits were denied by Canada Revenue Agency.

*Penney et al. v. Bell Canada* - This proceeding is brought on behalf of wireline telephone customers of Bell Canada, being persons who made arrangements or wireline telephone service to be installed in their homes between March 24 and December 31, 2005, where installation dates were not met.

*Cotton et al. v. Michaels Stores Inc.* - This proceeding is brought on behalf of persons in Canada who were/are former employees/employees of Michaels who worked in excess of 44 hours in any given week without receiving overtime pay.

061

# CURRICULUM VITAE

**NAME:**            JEFFREY CARTER TEAL

**ADDRESS:**        10 Harrington Place
                    Ancaster, Ontario
                    L9G 4Z2
                    (905) 523-1333 (Business)
                    (905) 648-8349 (Residence)

**DATE OF BIRTH:**   MARCH 14, 1960

## ACADEMIC QUALIFICATIONS

April, 1986:
    Admitted to the Law Society of Upper Canada

September 1985 to March 1986
        Law Society of Upper Canada
        Bar Admission Course, Osgoode Hall

September 1981 to May 1984
        University of Western Ontario, London
        Course: Faculty of Law
        Bachelor of Laws Degree obtained May 1984

September 1980 to May 1981
        University of Western Ontario, London
        Course: Economics
        Standing: Dean's Honour List

September 1979 to May 1980
        University of Western Ontario, London
        Course: Social Sciences
        Standing: Dean's Honour List

## SCHOLARSHIPS

        University of Western Ontario Entrance Scholarship
        Ontario Scholarship

062

**EXPERIENCE**

January 2001 to present
>   Partner: Scarfone Hawkins LLP
>   Barristers & Solicitors
>   One James Street South, 14th Floor
>   Hamilton, Ontario  L8N 3P9
>   (905) 523-1333

Area of Practice: Corporate/Commercial Law, Class Action Law, e-Commerce
Law

Corporate/Commercial
Extensive experience in domestic and international
commercial transactions, including, corporate finance transactions, re-
organizations, cross-border transactions, general mergers and acquisitions;

Provide corporate services to an international corporate
clientele from Colombia, Germany, Australia, Wales, Hong Kong and
mainland China;

Class Action Law
Involved in various complex class action claims; including
several vanishing premium insurance cases; co-counsel in the settlement
of the vanishing premium class action against Canada Life Assurance
Company affecting 140,000 class members; co-counsel in settlement of
vanishing premium class action against London Life Insurance Company
affecting 900,000 class members and a settlement value of approximately
$260,000,000.00;

e-Commerce Law
Extensive experience in e-commerce law which includes
servicing a national insurance claims portal, gift registry portal and a
virtual coaching technology corporation.

1991 to January 2001
>   Partner: Brown Scarfone Hawkins
>   Barristers & Solicitors
>   Suite 1050, 120 King Street West
>   Hamilton, Ontario L8N 3P9
>   (905) 523-1333

063

March 1986 to 1988
>
> Outerbridge Barristers & Solicitors
> 678 Main Street East
> Hamilton, Ontario

July 1984 to July 1985
>
> Outerbridge Barristers & Solicitors
> 390 Bay Street, Suite 3000
> Toronto, Ontario
>
> Articling experience:  Commercial Litigation
>> worked on a team with Ian Outerbridge on several complex
> commercial litigation matters.

## PERSONAL/PROFESSIONAL ACHIEVEMENTS

Published "Bank Entry into the Canadian Leasing Market", Equipment Financing Journal, Sept/Oct 1999, Vol.24, No. 5.;

Contributing columnist to Canasia Link
> The Investment Planning Newsletter for Canada and the Far East Published by Peter K.C. Ho, RBC Dominion Securities Inc.;

Co-founder and counsel to e-incorp Inc. the first on-line Canadian incorporation service providing on-line incorporations both federally and provincially. Successfully negotiated exclusive agreements for e-incorp Inc. with the Canadian Imperial Bank of Commerce, Bell Canada and Canoe.ca;

Travelled to Cartagena, Colombia, to complete commercial transactions;

Travelled to Hong Kong and mainland China to assist in completing complex commercial transactions under the Canadian Immigrant Investor Program;

Travelled to various states in the United States to complete large commercial nursing home transactions;

Travelled to San Diego, California as a participant in the Association of Fund Raising Professionals International Conference on Fund Raising.

## MEMBERSHIPS

Canadian Bar Association
Hamilton Law Association

064

This is "Exhibit C" referred to in the Affidavit of MICHEL
BELANGER sworn December 4/2009

_____
Commissioner for Taking Affidavits (or as may be)

065

Court File No. 01-CL-4081

SUPERIOR COURT OF JUSTICE

COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE | ) | WEDNESDAY, THE 8TH DAY OF |
| | ) | |
| MR. JUSTICE FARLEY | ) | FEBRUARY, 2006 |

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS
AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

ORDER

THIS MOTION made by Grace Canada, Inc. (hereinafter referred to as the
"Applicant"), for an Order:

(a)     abridging the time for service of this motion;

(b)     appointing Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP (the
"Representative Counsel") to act as representative counsel in these proceedings,
on behalf of all persons who have, or at any time in the future may have a claim,
arising out of or in any way connected to damages or loss suffered, directly or in
directly, from the manufacture, sale or distribution of Zonolite attic insulation
products in Canada ("Canadian Claimants") by the Applicant or any of W.R.
Grace & Co. and all of its subsidiaries (the "U.S. Debtors") as well as certain
other Affiliated Entities (as defined in the order of the United States Bankruptcy
Court (the "U.S. Court") made on January 22, 2002, as amended);

DOCSTOR: 1052576v1

066

-2-

(c)    declaring that the Representative Counsel's powers shall include but not be
limited to:

(i)    representing the interests of Canadian Claimants in these proceedings;

(ii)    appearing before this Honourable Court in these proceedings and applying
to this Honourable Court for advice and directions from time to time;

(iii)    seeking to appear or have an agent seek to appear before the U.S. Court in
the context of the U.S. Debtors' Chapter 11 cases (the "Chapter 11
Cases"); and

(iv)    negotiating on behalf of the Canadian Claimants with the Applicant, The
Attorney General of Canada (Her Majesty the Queen in Right of Canada)
(the "Crown"), the U.S. Debtors, the Affiliated Entities and any other
person or entity;

(d)    declaring that Canadian Claimants shall be responsible for the fees and
disbursements of the Representative Counsel subject to further order of this
Honourable Court;

(e)    that any person affected by this Order (an "Affected Person") shall be entitled to
apply to this Honourable Court for relief from time to time;

(f)    discharging Pierre Le Bourdais as information officer in these proceedings and
appointing Richard C. Finke as information officer in these procedures; and

(g)    such further relief as this Honourable Court deems appropriate,

067

- 3 -

was heard this day at 393 University Avenue, Toronto, Ontario.

ON READING, the Applicant's Notice of Motion, the affidavit of Richard Finke sworn January 31, 2006, the affidavit of Raven Thundersky ("Thundersky") sworn February 1, 2006, the affidavit of Yves Lauzon sworn February 3, 2006 and the affidavit of Merv Nordick sworn February 6, 2006, and on hearing the submissions of counsel for: (a) the Applicant; (b) Association Des Consommatuers Pour La Qualité Dans La Construction and Jean-Charles Dextras, Viviane Brosseau and Léotine Roberge-Turgeon; (c) the Crown; (d) Thundersky et. al.; and (e) Merv Nordick and Ernest Spencer et. al., and upon being advised that no other person has appeared on this date or served and filed responding materials on this motion although duly served and on reading the affidavit of service of Monique Massabki sworn February 2, 2006:

1.     THIS COURT ORDERS that the time for service of the Applicant's Notice of Motion and Motion Record in support of this Motion be and it is hereby abridged such that the Motion is properly returnable today, and, further, that any requirement for service of the Notice of Motion and of the Motion Record upon any interested party, other than the parties herein mentioned, is hereby dispensed with.

2.     THIS COURT ORDERS that Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP be appointed as representative counsel, in these proceedings on behalf of all Canadian Claimants.

3.     THIS COURT ORDERS that the Representative Counsel's power shall include but not be limited to:

   (a)     representing the interests of Canadian Claimants in these proceedings;

068

- 4 -

 (b) appearing before this Honourable Court in these proceedings and applying to this Honourable Court for advice and directions from time to time;

 (c) seeking to appear or have an agent seek to appear before the U.S. Court in the context of the Chapter 11 Cases; and

 (d) negotiating on behalf of the Canadian Claimants with the Applicant, the Crown, the U.S. Debtors, the Affiliated Entities and any other person or entity.

4. **THIS COURT ORDERS** that Canadian Claimants shall be responsible for the fees and disbursements of the Representative Counsel subject to further order of this Honourable Court.

5. **THIS COURT ORDERS** that any Affected Person shall be entitled to apply to this Honourable Court for relief from time to time.

6. **THIS COURT ORDERS** that Pierre Le Bourdais be and is hereby discharged as information officer in these proceedings and Richard C. Finke is hereby appointed information officer in these proceedings.

JOSEPH P VAN TASSEL
REGISTRAR
ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

FEB 0 9 2006

PER/PAR

069

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC

Court File No: 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE

Proceeding commenced at Toronto

ORDER

OGILVY RENAULT LLP
Barristers & Solicitors
Suite 3800, PO Box 84
Royal Bank Plaza, South Tower

200 Bay Street
Toronto, Ontario  M5J 2Z4

DERRICK C. TAY
LSUC #21152A
Tel:     416.216.4832
Fax:     416.216.3930

ORESTES PASPARAKIS
LSUC # 36851T
Tel: 416.216.4815
Fax: 416.216.3930

Solicitors for the Applicant

070

Court File No. CI-01-4083

ONTARIO
SUPERIOR COURT OF JUSTICE

Proceeding commenced at Toronto

MOTION RECORD

OGILVY RENAULT LLP
Barristers & Solicitors
Suite 3800, PO Box 84
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario M5J 2Z4

DERRICK C. TAY
LSUC #211152A
Tel:    416.216.4832
Fax:    416.215.3930

ORESTES PASP...
LSUC #36851T
Tel: 416.216.4815
Fax: 416.216.3930

Solicitors for the Applicant

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36 AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC.

*[handwritten notations — illegible]*

071

This is "Exhibit D" referred to in the Affidavit of MICHEL
BELANGER sworn December 7, 2009

_____
Commissioner for Taking Affidavits (or as may be)

55,827
Diane Blanchette

072

Court File No. 01-CL-4(

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

| THE HONOURABLE | ) | WEDNESDAY, THE 29TH DAY |
|---|---|---|
| JUSTICE MORAWETZ | ) | OF JULY, 2009 |



IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS
AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

Applica

**ORDER**

THIS MOTION made by Grace Canada, Inc. (hereinafter referred to as the "Applicar
was heard this day at 330 University Avenue, Toronto, Ontario,

ON READING the Applicant's Motion Record, including the Affidavit of Allison Ku
sworn July 28, 2009, and on hearing the submissions of counsel for the Applicant and for
parties appearing on the counsel slip, no one appearing for the other parties served with
Applicant's Notice of Motion,

1.      THIS COURT ORDERS that the time for service of the Applicant's Notice of Mot
and Motion Record in support of this Motion be and is hereby abridged such that the Motio
properly returnable today and hereby dispenses with further service thereof.

2.      THIS COURT ORDERS that the Order of the Honourable Mr. Justice Morawetz da
June 2, 2009, requiring Her Majesty the Queen in the Right of Canada as represented by
Attorney General of Canada to disclose, for the purposes of the Notice Program in th
proceedings, personal information contained in documents and/or databases relevant to

073

- 2 -

identification of potential Canadian claimants who may have homes that may contain Zono
Attic Insulation and/or vermiculite insulation on a monthly basis until August 15, 2009, is here
amended *nunc pro tunc* to an Order requiring the Crown to disclose the said perso
information on a monthly basis until July 15, 2009.

ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

JUL 2 9 2009

PER/PAR:

074

*ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
(Commercial List)

Proceeding commenced at Toronto

**ORDER**

**OGILVY RENAULT LLP**
Barristers & Solicitors
Suite 3800, P.O Box 84
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario M5J 2Z4

**DERRICK C. TAY**
LSUC #211S2A
Tel:    416.216.4832
Fax:    416.216.3930

**ORESTES PASPARAKIS**
LSUC #36851T
Tel: 416.216.4815
Fax: 416.216.3930

Lawyers for the Applicant

DOCSTOR: 1735121

075

Our Court File No. 01-CL-4081

## ONTARIO
## SUPERIOR COURT OF JUSTICE

### COMMERCIAL LIST

THE HONOURABLE              )              TUESDAY, THE 2nd DAY

MR. JUSTICE MORAWETZ        )              OF JUNE, 2009



IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, C. c-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

### ORDER

THIS MOTION, made by Representative Counsel for Canadian ZAI Claimants
was heard this day at the court house, 330 University Avenue, Toronto, Ontario.

ON READING the Motion Record of Representative Counsel for Canadian
ZAI Claimants, and ~~on hearing submissions of Representative Counsel,~~ no other
party or person opposing this motion, although all parties on the service list were
properly served, and upon being advised that the Crown, in compliance with the
Order issued by this Court on September 30, 2008, delivered documents and/or
databases concerning personal information, has since compiled further personal
information in connection with the ecoENERGY Retrofit program which might

076

-2-

identify potential claimants who may have homes that might contain Zonolite Attic Insulation;

1.    THIS COURT ORDERS THAT Her Majesty the Queen in Right of Canada as represented by the Attorney General of Canada shall disclose, for the purposes of the Notice Program in these proceedings, pursuant to Section 8(2)(c) of the *Privacy Act*, R.S.C. 1985, c. P-21, the personal information contained in documents and/or databases relevant to the identification of potential Canadian claimants who may have homes that may contain Zonolite Attic Insulation or vermiculite insulation, which disclosure shall be on a best efforts basis, and provided monthly with the last disclosure being provided on August 15, 2009.

2.    THIS COURT ORDERS THAT there shall be no costs of this motion.

ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

JUN 0 2 2009

PER / PAR:

077

GRACE CANADA INC.                    and            HEALTH CANADA, et al.
Applicant                                            Respondents

Court File No.: 01-CL-4081

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

PROCEEDING COMMENCED AT TORONTO

---

**ORDER**

---

LAUZON BÉLANGER INC.
Barristers and Solicitors
286, rue St-Paul Ouest, Bureau 100
Montréal, QC  H2Y 2A3

YVES LAUZON
ylauzon@lauzonbelanger.qc.ca
MICHEL BÉLANGER
mbelanger@lauzonbelanger.qc.ca
CAREEN HANNOUCHE
careen.hannouche@lauzonbelanger.qc.ca

Tel : 514-844-7612
Fax: 514-844-7009

SCARFONE HAWKINS LLP
Barristers and Solicitors
One James St. S., 14th Floor
P.O. Box 926, Depot 1
Hamilton, ON  L8N 3P9

DAVID THOMPSON (LSUC# 26271N)
thompson@shlaw.ca
MATTHEW G. MOLOCI (LSUC# 40579P)
moloci@shlaw.ca

Tel : 905-523-1333
Fax: 905-523-5878

Representative Counsel for Canadian ZAI Claimants

078

Court File No. 01-CL-4081

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE | ) | TUESDAY, THE 30TH DAY |
| | ) | |
| MR. JUSTICE MORAWETZ | ) | OF SEPTEMBER, 2008 |

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'
CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA INC.

*AMENDED
RESTATED* ORDER

THIS MOTION, made by Representative Counsel for Canadian ZAI Claimants, was
heard this day at the court house, 330 University Avenue, Toronto, Ontario.

ON READING the Motion Record of Representative Counsel and on hearing
submissions of Representative Counsel, no other party or person opposing this motion,
although all parties on the service list were properly served,

1.   THIS COURT ORDERS THAT Her Majesty the Queen in Right of Canada as
     represented by the Attorney General of Canada shall disclose, pursuant to Section
     8(2)(c) of the *Privacy Act*, R.S.C. 1985, c.P-21, the personal information contained
     in documents and/or databases relevant to the identification of potential Canadian

079

Claimants who may have homes that may contain Zonolite Attic Insulation or vermiculite attic insulation for the purposes of these proceedings.

2.    **THIS COURT ORDERS THAT** there shall be no costs of this motion.

Signature of Judge

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

OCT 0 7 2008

Joanne Nicoara
PER/PAR: JS⸳      ᵖᵉᵍᵒ ᵗᵢ Superior Court of Justice

GRACE CANADA INC.
Applicant

and

HEALTH CANADA, et al.
Respondents

Court File No.: 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

PROCEEDING COMMENCED AT TORONTO

ORDER

LAUZON BÉLANGER INC.
Barristers and Solicitors
286, rue St-Paul Ouest, Bureau 100
Montréal, QC   H2Y 2A3

YVES LAUZON
ylauzon@lauzonbelanger.qc.ca
MICHEL BÉLANGER
mbelanger@lauzonbelanger.qc.ca
CAREEN HANNOUCHE
careen.hannouche@lauzonbelanger.qc.ca

Tel: 514-844-7612
Fax: 514-844-7009

SCARFONE HAWKINS LLP
Barristers and Solicitors
One James St. S., 14th Floor
P.O. Box 926, Depot 1
Hamilton, ON   L8N 3P9

DAVID THOMPSON (LSUC# 28271N)
thompson@shlaw.ca
MATTHEW G. MOLOCI (LSUC# 40579P)
mbici@shlaw.ca

Tel : 905-523-1333
Fax: 905-523-5878

Representative Counsel for Canadian ZAI Claimants

080

081

This is "Exhibit E" referred to in the Affidavit of MICHEL
BELANGER sworn December 1, 2009

_____
Commissioner for Taking Affidavits (or as may be)

082

IN THE UNITED STATES BANKRUPTCY COURT
FOR DISTRICT OF DELAWARE

IN RE:

W.R. GRACE & CO., et al.       Bankruptcy No. 01-01139
   Debtor(s)           Chapter 11

                    Related to Dkt. No. 14597 Debtors' Motion and
                    Memorandum for an Order Pursuant to F.R.B.P. 7056
                    Disallowing and Expunging Eighty-Eight (88) Time-Barred
                    Canadian Asbestos Property Damage Claims

MEMORANDUM OPINION[1]

The matter before the court is Debtors' Motion and Memorandum for an Order Pursuant

to F.R.B.P. 7056 Disallowing and Expunging Eighty-Eight Time-Barred Canadian Asbestos

Property Damage Claims, docketed as a Motion for Summary Judgment.[2] Since the filing of the

motion, the eighty-eight claims have been reduced to thirty-five due to withdrawal,

expungement, or settlement of claims. Debtors assert that these remaining thirty-five claims are

time-barred by the applicable Canadian ultimate limitations periods,[3] similar to American

statutes of repose, and move for summary judgment. Anderson Memorial Hospital filed a

response[4] to Debtors' motion on its own behalf and on behalf of the Canadian Claimants. The

---

[1] The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our
findings of fact and conclusions of law.

[2] Doc. No. 14597.

[3] The "ultimate" limitations periods are sometimes referred to as the "absolute"
limitations periods. We use the terms interchangeably in this Memorandum Opinion and Order.

[4] Anderson Memorial Hospital's Response to Debtor's Motion for Summary Judgment
Directed to 88 Claims from Canada Based upon the Statute of Limitations, Doc. No. 14898. To
the extent the response is filed by Anderson Memorial Hospital as the representative of a
worldwide class action, no such class has been recognized and Anderson Memorial Hospital is
                                        (continued...)

1

083

Canadian Claimants dispute the dates upon which the ultimate limitations periods would begin to

run and contend that the limitations periods were tolled.[5]

Background

The Canadian Claimants seek to recover the costs associated with management and

removal of asbestos-containing surfacing materials sold by Debtors and installed in the

Claimants' buildings. The thirty-five remaining Canadian Claims involve buildings in three

different Canadian provinces. Thirty-three of the claims arise from properties located in Alberta

and the remaining two arise from properties located in Manitoba and British Columbia. It is

undisputed that Debtors ceased selling asbestos-containing products in Canada by 1976, at the

latest.[6] Based upon this date, Debtors argue that the thirty-three Alberta claims are time-barred.

With regard to the Manitoba claim, the parties have stipulated to the fact that the asbestos-

containing material was installed in 1956.[7] The British Columbia claim involves an installation

date in the 1960s at the latest.[8] Based upon these dates, the Debtors argue that the applicable

---

[4](...continued)
not a Canadian Claimant. The court will proceed to address the substance of the Debtors'
summary judgment motion.

[5] The Canadian Claimants also argued that the issue of ultimate limitations periods was
not properly raised in Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property
Damage Claims. See Anderson Memorial Hospital's Response to Debtors' Motion for Summary
Judgment Directed to 88 Claims from Canada Based upon the Statute of Limitations, Doc. No.
14898, at 3-4. The court previously ruled that the language of the objection was broad enough to
raise the ultimate limitations periods. Transcript of 9/10/07, Doc. No. 16930, at 95-96.

[6] Affidavit of James Cintani, Exhibit D to Doc. No. 14597, at 2.

[7] Transcript of 12/15/08, Doc. No. 20371, at 16-17.

[8] Rule 1006 Summary of Voluminous Writings 44 Claims Barred By Canadian Ultimate
Limitations Periods, Exhibit C to Doc. No. 14597, Debtors' Motion and Memorandum for an
(continued...)

2

084

Canadian ultimate limitations periods expired with respect to each of the remaining claims prior
to April 2, 2001, the Bankruptcy Petition Date.

Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the moving party is entitled to
summary judgment where the evidence shows that "there is no genuine issue as to any material
fact and that the movant is entitled to judgment as a matter of law." The non-moving party can
defeat summary judgment if it produces evidence in the record creating a genuine issue of
material fact.[9] However, where the moving party has satisfied its burden under Rule 56(c), "its
opponent must do more than simply show that there is some metaphysical doubt as to the
material facts."[10] The non-moving party cannot "rely merely on allegations or denials in its own
pleading; rather, its response must...set out specific facts showing a genuine issue for trial."[11]
Only evidence which is "ultimately reducible to admissible evidence" will be considered.[12]

Causes of Action

Analysis of ultimate limitations periods requires identification of the cause of action
being pursued. Debtors assert that, under Canadian law, "any asbestos-in-building tort claims

---

[8](...continued)
Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Eighty-Eight (88) Time-Barred
Canadian Asbestos Property Damage Claims, at 2. The source of the installation date is
identified as Report of Monenco Consultants Limited.

[9] *Ell v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

[10] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[11] Fed. R. Civ. Pro. 56(e)(2).

[12] *Lexington Insurance Co. v. Western Pennsylvania Hospital*, 423 F.3d 318, 329 n. 6 (3d
Cir. 2005)(internal quotations omitted).

3

085

full under the rubric of 'pure economic loss.'"[13]  Therefore, the Debtors addressed only how the

ultimate limitations periods would bar economic loss claims.  However, the Claimants contend

that the Debtors failed to show that claims based on certain other "asbestos-property damage

causes of action," such as nuisance, warranty, conspiracy, restitution, fraud, and

misrepresentation, would be barred.[14]  In addition, the Claimants assert that, due to a

manufacturer's continuing duty to warn, the ultimate limitations periods cannot bar these claims

as "a new cause would accrue for every breach of the continuing duty to warn."[15]

        Both parties' Canadian law experts reached the same conclusion with regard to the cause

of action being pursued by the Claimants.  That is, in Canada, the claims are cognizable only as

negligence claims for pure economic loss.[16]  The Supreme Court of Canada in *Winnipeg*

*Condominium Corp. No. 36 v. Bird Construction Co. Ltd.*, addressed whether the cost of

repairing a defect in the construction of a building is the type of economic loss recoverable in

_____

        [13] Debtors' Reply in Support of their Motion for an Order Pursuant to F.R.B.P. 7056
Disallowing and Expunging Eighty-Eight (88) Time-Barred Canadian Asbestos Property
Damage Claims, Doc. No. 14965, at 4.

        [14] Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment
Directed to 88 Claims from Canada Based upon the Statute of Limitations, Doc. No. 14898, at
11-12.

        [15] *Id.* at 11.

        [16] *See* Affidavit of Graeme Mew, Debtors' Expert, Exhibit B to Doc. 14965, Debtors'
Reply in Support of their Motion for an Order Pursuant to F.R.B.P. 7056 Disallowing and
Expunging Eighty-Eight (88) Time-Barred Canadian Asbestos Property Damage Claims, at ¶ 13,
stating "regardless of the nominate tort alleged, the claimants' allegations fall in line with what
the leading author on Canadian tort law describes as recovery for pure economic loss." *See also*
Deposition of John C. Irvine, Claimants' Expert, (Aug. 22, 2007), Tab E to Doc. No. 16757,
Appendix to Debtors' Supplemental Submission in Support of Their Motion and Memorandum
for an Order Pursuant to F.R.B.P. Disallowing and Expunging What is Now Fifty-Five (55)
Time-Barred Canadian Asbestos Property Damage Claims, at 142-44, affirming his belief that all
of the claims would be considered negligence claims for pure economic loss.

4

086

tort.[17] Pure economic loss claims are those which do not arise from injury to persons or damage to property apart from the defective product itself.[18] The *Winnipeg Condo* court recognized and outlined five categories in which these claims arise. The relevant category in both *Winnipeg Condo* and under the facts of this case is "negligent supply of shoddy goods or structures."[19]

Prior to *Winnipeg Condo*, the claims asserted by the Canadian Claimants in this case "would have been regarded as speculative if not entirely unarguable in Canadian courts[.]"[20]

Furthermore, Canadian courts are skeptical of attempts to recharacterize causes of action and are unwilling to permit the purpose of the ultimate limitations periods to be undermined.[21] Based on

---

[17] [1995] 1 S.C.R. 85, 90, 1995 S.C.R. LEXIS 373, at *10.

[18] *Id.* at 97, 1995 S.C.R. LEXIS 373, at *21-22.

[19] *Id.*, 1995 S.C.R. LEXIS 373, at *21. "[T]ort law serves to encourage the repair of dangerous defects and thereby to protect the bodily integrity of inhabitants of buildings." *Id.* at 120, 1995 S.C.R. LEXIS 373, at *60. Despite the use of the term "shoddy," the court distinguished poor quality workmanship from dangerous defects and restricted itself to the facts presented in ruling that, if negligence was found, the plaintiff was entitled "to recover the reasonable cost of putting the building into a non-dangerous state." *Id.* at 120-21, 1995 S.C.R. LEXIS 373, at *60.

[20] Expert Report of Professor John Irvine, Doc. No. 16754, at 4.

[21] *See Edwards Estate v. Beckmann*, No. S060723, 2008 BC.C. LEXIS 581, at *26 (B.C. S.C. Mar. 17. 2008) ("These amendments, then, seek to avoid the ultimate limitation period by alleging the breach of continuing duties during the relevant period. The plaintiffs seek to accomplish indirectly what they cannot achieve directly, that is, to extract damages for the time barred torts"); *Bowes v. Edmonton (City)*, [2007] 425 A.R. 123, at ¶ 173, 2007 AB.C. LEXIS 1877, at *77 (Alta. C.A. Dec. 28, 2007) ("To regard every ancient failure to warn as occurring every day would be a fiction destroying all limitations periods. If the above were not the law, then most cases of delayed harm from a tort could be dressed up as failures to warn, with no limitation period"); *Bowes v. Edmonton (City)*, [2005] 49 Alta. L.R. (4th) 100, at ¶ 210, 2005 AB.C. LEXIS 1114, at *105-06 (Alta. Q.B. July 7, 2005) ("It seems to me that categorization of non-action in this context as either nuisance or recurring negligence has the potential to substantially undermine limitations law in this province and to return us to the unacceptable uncertainty which marked litigation prior to proclamation of the Limitations Act").

5

087

reported cases construing Canadian law and the consensus in opinion of the parties' experts,

which is unrefuted on this record, the court will proceed to analyze the claims as negligence

claims for pure economic loss.

Canadian Limitations Acts

As the Claimants' buildings are located in Alberta, Manitoba, and British Columbia, the

laws of each of those Canadian provinces must be considered in determining whether the claims

are barred by the applicable limitations period.

Alberta's Limitations Act, R.S.A., ch. L-12

Pursuant to §3(1)(b) of Alberta's Limitations Act, a claimant must seek a remedial order

within the ten-year ultimate limitations period.[22] Section 3(3)(b) of the Act states that, for

purposes of the ultimate limitations period, "a claim based on a breach of a duty arises when the

conduct, act or omission occurs."[23] The Claimants contend, however, that this latter provision

does not apply to economic loss cases, but only to those cases involving a generalized breach of

duty. The Claimants base their argument on the general definition section of the Act which

defines "injury" in five separate categories, one of which is "economic loss" and another for

breach of duty where the injury does not fall into one of the other five categories.[24] However, a

---

[22] "[I]f a claimant does not seek a remedial order within . . . (b)10 years after the claim arose . . . the defendant, on pleading this Act as a defence, is entitled to immunity from liability in respect of the claim." R.S.A., ch. L-12 §3(1)(b).

[23] [2007] 425 A.R. 123, at ¶ 151, 2007 AB.C. LEXIS 1877, at *69, interpreting and applying the language of the R.S.A., ch. L-12 §3(3)(b). "That paragraph is plain. It says that the time under the alternative absolute period starts to run from the negligent or wrongful act or omission itself. Therefore, one should not wait until the harm occurs."

[24] Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re: Canadian Statute of Limitations, Doc. No. 17059, at 17.

6

**088**

similar argument was rejected by the Alberta Court of Appeal in *Bowes v. Edmonton*.[25]  In *Bowes*, counsel for the plaintiffs attempted to avoid the result of the language of § 3(3)(b) by relying on the definition of "claim" in §1(a), the general definition section of the Act.[26]  The court rejected the argument, stating "the Legislature does not confine itself to the vague general s. 1(a) [definition],....Section 3(1)(b), the unconditional limitation period, has its own express interpretation section."[27]  Therefore, Claimants cannot avoid the result that the Alberta ultimate limitations period commences to run upon the act, omission, or conduct that constituted the breach.

As previously stated, these claims fall under the *Winnipeg Condo* category of "negligent supply of shoddy goods or structures,"[28] and the Debtors ceased selling asbestos-containing products in Canada by 1976.[29]  Therefore, the Debtors could not have committed an act constituting the negligent supply of these products after that date. Consequently, the ten-year ultimate limitations period for the Alberta claims would have expired by 1986.  Absent suspension of the ultimate limitations period, the thirty-three Alberta claims are time-barred.

<u>Manitoba's Limitation of Actions Act, R.S.M., ch. L150</u>[30]

[25] *Bowes*, [2007] 425 A.R. 123, at ¶¶ 148-51, 2007 AB.C. LEXIS 1877, at *67-69.

[26] *Id.* at ¶ 148, 2007 AB.C. LEXIS 1877, at *68-69 (citing R.S.A., ch. L-12 § 1(a), which provides that "'claim' means a matter giving rise to a civil proceeding in which a claimant seeks a remedial order").

[27] *Id.* at ¶¶ 149-50, 2007 AB.C. LEXIS 1877, at *68-69.

[28] *Winnipeg Condo*, 1 S.C.R. at 97, 1995 S.C.R. LEXIS 373, at *21.

[29] Affidavit of James Cintani, Exhibit D to Doc. No. 14597, at 2.

[30] The Claimants assert that the Manitoba ultimate limitations period has no application
(continued...)

7

089

Pursuant to Manitoba's statute, the ultimate limitations period within which to bring an action is thirty years after the occurrence of the acts or omissions that gave rise to the cause of action.[31] The language of the statute is clear. As in Alberta, the date for commencement of the ultimate limitations period is the date of the relevant act or omission.[32] With regard to the single Manitoba claim, the parties stipulated to a 1956 installation date of the Debtors' product.[33] Therefore, the limitations period expired with respect to this claim no later than 1986 unless the period was otherwise tolled.[34]

### British Columbia's Limitation Act, R.S.B.C., ch. 266

British Columbia's Limitation Act provides a thirty-year ultimate limitations period to bring an action which begins to run from "the date on which the right to do so arose."[35] The

---

[30](...continued)
in this bankruptcy proceeding and only applies to special proceedings brought in Manitoba. *See* Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re: Canadian Statute of Limitations, Doc. No. 17059, at 15, n.12. The Claimants cite no authority for this assertion. The special proceedings described are the only mechanism by which a plaintiff can bring a claim after the normal limitations period has expired. R.S.M., ch. L150 § 14(1).

[31] In Manitoba, a plaintiff must apply to the court for an extension of time to begin or continue a cause of action beyond the normal limitations period. R.S.M., ch. L150 § 14(1). However, "[t]he court shall not grant leave (a) to begin an action; or (b) to continue an action that has been begun; more than 30 years after the occurrence of the acts or omissions that gave rise to the cause of action." § 14(4).

[32] *Cf.* R.S.A., ch. L-12 §§ 3(1)(b), (3)(b) (interpreted in *Bowes*, [2007] 425 A.R. 123, at ¶ 151, 2007 AB.C. LEXIS 1877, at *69, to mean the "absolute period starts to run from the negligent or wrongful act or omission itself").

[33] Transcript of 12/15/08, Doc. No. 20371, at 16-17.

[34] *See* discussion of "tolling," *infra.*

[35] "[N]o action to which this Act applies may be brought . . . (c) . . . after the expiration of 30 years from the date on which the right to do so arose." R.S.B.C., ch. 266 § 8(1)(c).

8

090

British Columbia Act, unlike the Alberta statute, does not define when a cause of action arises, but British Columbia case law provides guidance. The most factually relevant case is *Privest Properties Ltd. v. Foundation Co. of Canada*, where the plaintiffs sought compensation for the removal costs of the asbestos-containing material MK-3.[36] Claimants attempt to argue that the *Privest* decision is not applicable because it does not address the "ultimate" limitations period but rather interprets the "normal" limitations period.[37] The normal limitations period provided that an action "shall not be brought after the expiration of 6 years after the *date on which the right to do so arose*."[38] Therefore, the court was interpreting identical language found in both the normal and ultimate limitations provisions and its analysis focused on the identical issue: that is, when time begins to run under the Act.[39] The court concluded that "a cause of action accrues when all of the constituent elements exist, whether or not the plaintiff is then aware of them."[40] The court then applied its ruling to the facts of the case and held that it was "clear that all of the elements necessary to the plaintiff's cause of action came into existence...when the MK-3 was installed in the Building. Accordingly, the limitation period began to run...when the installation was completed."[41]

The Claimants argue that the *Privest* court's holding is incorrect and is not based on any

---

[36] [1995] 11 B.C.L.R. (3d) 1, at ¶ 1 (B.C. S.C.).

[37] Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re: Canadian Statute of Limitations, Doc. No. 17059, at 18, n.13.

[38] *See Privest*, 11 B.C.L.R. (3d) 1, at ¶ 164 (emphasis added).

[39] *Id.* at ¶¶ 163-71.

[40] *Id.* at ¶ 171.

[41] *Id.* at ¶ 172.

9

091

Canadian legal authority.[42] However, there is no British Columbia case law contrary to *Privest* and we decline to create a different interpretation of the statute where a British Columbia court has already spoken directly on the issue. The single British Columbia claim at issue herein involved an installation date in the 1960s. Therefore, the thirty-year ultimate limitations period expired prior to the April 2, 2001, Bankruptcy Petition Date.

Tolling of Limitations Periods

The Claimants assert that, even if the limitations periods would have commenced at a date such as to potentially bar their claims, the running of the ultimate limitations periods was suspended.

Fraudulent Concealment

First, the Claimants contend that the limitations periods were postponed by Debtors' fraudulent concealment of the injury for which the remedial order is sought. British Columbia's ultimate limitations period continues to run despite fraudulent concealment.[43] Therefore, this

---

[42] Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re: Canadian Statute of Limitations, Doc. No. 17059, at 7, n.6.

[43] *Edwards Estate*, 2008 BC.C. LEXIS 581, at *16 ("On the face of the legislation, it seems clear that the 30 year period runs despite a postponement under s. 6 of the running of time in an action '(d) based on fraud or deceit;' and '(e) in which the material facts relating to the cause of action have been willfully concealed'").

10

092

argument could only apply with respect to the Alberta[44] and Manitoba[45] claims. While the

Claimants have produced numerous exhibits[46] in an attempt to support a claim of fraudulent

concealment, the miscellaneous exhibits are not identified in any way or supported by an

affidavit. Because the Claimants have not satisfied the basic evidentiary standards, the court will

not consider these exhibits.[47]  Despite the fact that the Claimants' pleadings contain allegations

---

[44] "(1) The operation of the limitation period provided by section 3(1)(b) is suspended during any period of time that the defendant fraudulently conceals the fact that the injury for which a remedial order is sought has occurred. (2) Under this section, the claimant has the burden of proving that the operation of the limitation period provided by section 3(1)(b) was suspended." Limitations Act, R.S.A., ch. L-12, § 4. Section 3(1)(b) provides the ultimate limitations period.

[45] "Where the existence of a cause of action has been concealed by fraud of the person setting up this Part or Part II as a defence, the cause of action shall be deemed to have arisen when the fraud was first known or discovered." Limitation of Actions Act, R.S.M., ch. L150, § 5. Part II of the Act contains §14(4), which is the ultimate limitation provision.

[46] In Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re: Canadian Statute of Limitations, Doc. No. 17059, at 12-15, Claimants made various allegations of Debtors' fraudulent concealment. In support of these allegations, Claimants state that "[e]vidence of Grace's concealment is demonstrated in Exhibits 1-145 submitted in the Court's binder prior to the September 10, 2007 hearing." Id. at 12, n.11. There is no indication that these exhibits were admitted into evidence, and they were submitted with no accompanying affidavit, exhibit list, certificate of authenticity, or any description of what the documents purport to be or how, if at all, they have any bearing on the matters at bench.

[47] The following is a partial, illustrative list of the documents submitted: unnumbered page one of Exhibit 2 appears to be a patent for "light weight moulded articles and methods of making the same," Exhibit 3 appears to be an undated advertisement for Monokote without any identification as to its circulation, and Exhibit 7 is titled "Information Kits/Booklets Distribution Breakdown" and is also undated. Claimants have not shown how the documents are related to this Motion. The exhibits were submitted without a document list, description, or affidavit, or identification of any kind. We have not even a proffer as to what the documents purport to be and, apparently are left to our own devices to figure that out. Claimants should produce a competent witness for that purpose and have not. Despite their burden in opposing summary judgment, Claimants failed to satisfy the most basic standards for admission of these documents into evidence. We have no evidence or proffer of authenticity, relevance, or exceptions to hearsay. In short, we have no principled way to relate these exhibits to the matter at bench. We
(continued...)

11

093

of fraudulent concealment, Claimants, as the non-moving parties, cannot "rely merely on allegations or denials in [their] own pleading."[48] In addition, while the fraudulent concealment alleged does not have to rise to the level of deceit or common law fraud, in order to argue equitable fraud under Canadian law, a special relationship must exist between the parties.[49] The Canadian Claimants have not shown that a special relationship exists between them and Debtors to support a fraudulent concealment argument based on equitable fraud. Therefore, the court has no evidence to conclude that the ultimate limitations periods were suspended by fraudulent concealment.[50]

---

[47](...continued)
do not know the source of these documents or how they came into the possession of Canadian Claimants' counsel. We have no foundation to consider these exhibits as evidence and we do not consider them. Cf. *Lexington Insurance Co. v. Western Pennsylvania Hospital*, 423 F.3d 318, 329 n. 6 (3d Cir. 2005) ("Our Court has not precluded reliance on unauthenticated documents to oppose a motion for summary judgment, so long as they are ultimately reducible to admissible evidence'"). In *Lexington*, the court had both testimony and circumstantial evidence of authenticity of the document, which the court found to provide a sufficient foundation. *Id.* We do not.

[48] Fed. R. Civ. Pro. 56(e).

[49] In order to toll the limitations period, the fraudulent concealment alleged "need not amount to deceit or common law fraud." *Guerin v. Canada*, [1984] 2 S.C.R. 335, 390, 1984 S.C.R. LEXIS 492, at *94. However, in order to demonstrate equitable fraud, there must have been "conduct which, having regard to some special relationship between the two parties concerned, is an unconscionable thing for the one to do towards the other." *Id.*

[50] Notwithstanding the failure of the Claimants to produce evidence in support of fraudulent concealment, it is unlikely that a fraudulent concealment argument could succeed given the facts. According to *Ambrozic v. Burcevski*, "[t]he limitation period will not be suspended if the plaintiff could have uncovered the fraud but did not make reasonable inquiries." [2008] 90 Alta. L.R. (4th) 247, at ¶ 25, 2008 ABC. LEXIS 633, at *15-16 (Alta. C.A. May 22, 2008). Similarly, the Supreme Court of Canada, stated that "[i]t is well established that where there has been a fraudulent concealment of the existence of a cause of action, the limitation period will not start to run until the plaintiff discovers the fraud, or until the time when, with reasonable diligence, he ought to have discovered it." *Guerin*, 2 S.C.R. at 390, 1984 S.C.R.

(continued...)

12

Anderson Memorial Hospital's Class Action Complaint

The Claimants' second argument for tolling of the limitations periods is based upon

Anderson Memorial Hospital's Class Action Complaint, which was filed in a South Carolina

Court of Common Pleas in 1992.[51]  Given the date the complaint was filed, the class action

tolling argument would not affect the expiration of the ultimate limitations periods with regard to

the Alberta and Manitoba claims, which expired by 1986.  Therefore, the only issue is whether

the filing of the South Carolina complaint suspended the ultimate limitations period with respect

to the single British Columbia claim.  British Columbia has a statute governing when the filing

of a class action suspends a limitations period.[52]  Based on the language of the British Columbia

Class Proceedings Act, it is clear that it does not apply to suspend the limitations period in these

---

[50](...continued)
LEXIS 492, at *94.  In *Canadian Indemnity Co. v. Canadian Johns-Manville Co.*, the Supreme
Court of Canada addressed the awareness of the risks of asbestos within the insurance industry.
[1990] 2 S.C.R. 549, 596, 1990 S.C.R. LEXIS 36, at *84.  The court recognized that "asbestos-
related health risks had spread well beyond the boundaries of industry knowledge and were in
wide public circulation" in 1970.  *Id.* at 597, 1990 S.C.R. LEXIS 36, at *86.  There can be no
fraudulent concealment of that which is public knowledge.  Therefore, even if the limitations
periods were tolled until 1970, both Alberta's ten-year limitations period and Manitoba's thirty-
year limitations period would have expired by the Bankruptcy Petition Date, April 2, 2001.

[51] In its response to Debtors' Motion, Anderson Memorial Hospital states that "these
Canadian claimants have filed claim forms...referencing the Anderson Memorial Hospital class
litigation....That litigation was ongoing at the time the Debtors' bankruptcy petition was filed,
and the Canadian claimants filing under that class action are entitled to have the statute of
limitations tolled....Because these claims were subject to class proceedings, the statutes of
limitations have been suspended since 1992."  Doc. No. 14898, at 6.  We note that the proofs of
claim forms were actually filed by Speights & Runyan, the same firm attempting to be class
counsel.  However, in this Circuit, it is clear that Anderson Memorial Hospital does not have
authority to represent the Canadian Claimants.  *In re W.R. Grace & Co.*, 2009 U.S. App. LEXIS
5281, at *4-5 (3d Cir. Mar. 11, 2009) (holding that the role of class counsel in a South Carolina
class action does not provide authority to file proofs of claim in bankruptcy proceedings).

[52] Class Proceedings Act, R.S.B.C., ch. 50.

13

095

circumstances.

First, the Class Proceedings Act provides for suspension of a limitations period where it would be reasonable for a person to assume that he would be included as a member of the class.[53] Due to South Carolina's "door closing statute,"[54] it would be unreasonable for any of the Canadian Claimants to believe that they would be included as class members. The door closing statute prohibits those who are not residents of South Carolina from suing foreign corporations in that State unless the claims arose or the property was situated in South Carolina. The statute "controls the eligibility of class members in a class action where the defendant is a foreign corporation."[55] The Debtors are corporations created by or under the laws of states other than South Carolina and are "foreign" corporations within the meaning of the South Carolina statute.[56] The claims asserted by the Canadian Claimants did not arise in South Carolina or

---

[53] "If a person has a cause of action, a limitation period applicable to that cause of action is suspended . . . in the event that . . . (b) when the proceeding . . . is commenced, it is reasonable to assume that, if the proceeding were to be certified...(ii) the person would be included as a member of the class on whose behalf the cause of action would be asserted . . . ." R.S.B.C., ch. 50, § 38.1.

[54] S.C. Code Ann. §15-5-150.

[55] *Farmer v. Monsanto*, 579 S.E.2d 325, 328 (S.C. 2003). In the Anderson Memorial action, the South Carolina court found that the door closing statute would not permit the court to "assert jurisdiction over the claims of non-resident potential class members...whose claims do not arise in South Carolina or whose property at issue is not situated within this state." *Anderson Memorial Hospital v. W.R. Grace & Co.*, No. CIV. A. 92-CP-25-279, 1994 WL 1744074 at *1 (S.C.Com.Pl. Aug. 8, 1994). Although the South Carolina Supreme Court in *Monsanto* found that §15-5-150 did not determine subject matter jurisdiction but rather dealt with capacity to sue, the Canadian Claimants would nonetheless have been excluded from the class by the door closing statute. "Limiting the class to members who qualify under § 15-5-150 simply excludes class members who would otherwise have no access to [South Carolina] courts via individual lawsuits." *Monsanto*, 579 S.E.2d at 328.

[56] *Anderson Memorial Hospital*, 1994 WL 1744074 at *2 (S.C.Com.Pl.) ("It is undisputed (continued...)

14

involve property located in South Carolina.[56] Based on the door closing statute, the tolling
provision does not apply here.

Second, the tolling argument must fail because the Class Proceedings Act does not apply
to proceedings that may be brought in a representative capacity under another statute.[58] Clearly,
Anderson Memorial Hospital did not file under British Columbia's Class Proceedings Act. In
addition, the Act does not apply to representative proceedings commenced before the Act came
into force.[59] The British Columbia Legislature did not pass the Act until 1995, well after the
filing of the 1992 Anderson Memorial South Carolina Complaint. Therefore, the Act does not
apply to the South Carolina action.

<u>Conclusion</u>

For the foregoing reasons, the court concludes that there is no genuine issue of material
fact in dispute and as a matter of law summary judgment in favor of Debtors is appropriate. The

---

[56](...continued)
that the defendants in this action are corporations created by or under the laws of states other
than South Carolina").

[57] *Id.* at *1 ("Anderson's proposed class would include claims by purported class
members who are not residents of South Carolina and whose buildings at issue are not located in
South Carolina").

[58] R.S.B.C., ch. 50, § 41(a). In support of their class action tolling argument, the
Canadian Claimants rely upon the Class Proceedings Act and *Currie v. McDonald's Restaurants
of Canada Ltd.,* [2005] 74 O.R.3d 321, 2005 Ont. Rep. LEXIS 22 (Ont. C.A. Feb. 16, 2005).
Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment Directed to
88 Claims From Canada Based upon the Statute of Limitations, Doc. No. 14898, at 6-8. The
Canadian Claimants cited no other statute in support of the proposition that a foreign class action
could toll the British Columbia limitations period. With respect to the *Currie* case, the case was
not decided in British Columbia, did not apply British Columbia law, and did not address tolling
of limitations periods.

[59] *Id.* at § 41(e).

15

097

applicable ultimate limitations periods have expired and no evidence has been produced to show that the limitations periods were tolled. Therefore, the remaining thirty-five Canadian Asbestos Property Damage Claims are disallowed and expunged.

Counsel for Debtors shall serve a copy of this Memorandum Opinion and accompanying Order on all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.

DATE: Dated: 4/14/2009
14:52:01

Judith K. Fitzgerald
Judith K. Fitzgerald        cjs
United States Bankruptcy Judge

16

098

IN THE UNITED STATES BANKRUPTCY COURT
FOR DISTRICT OF DELAWARE

IN RE:

W.R. GRACE & CO., et al.                    Bankruptcy No. 01-01139
    Debtor(s)                            Chapter 11
                                   Related to Dkt. No. 14597 Debtors' Motion and
                                   Memorandum for an Order Pursuant to F.R.B.P.
                                   7056 Disallowing and Expunging Eighty-Eight (88)
                                   Time-Barred Canadian Asbestos Property Damage
                                   Claims

**ORDER**

AND NOW, this 14th day of ___April___, 2009, for the reasons expressed in the

foregoing Memorandum Opinion, it is ORDERED, ADJUDGED, and DECREED that claim

numbers 011620, 011632, 012377, 012388, 012394, 012410, 012412, 012421, 012422, 012423,

012438, 012439, 012442, 012443, 012454, 012457, 012489, 012496, 012498, 012500, 012501,

012503, 012537, 012541, 012542, 012546, 012548, 012549, 012554, 012557, 012570, 012576,

012590, 012591, and 014885 are hereby disallowed and expunged as barred by the applicable

Canadian ultimate limitations periods.

IT IS FURTHER ORDERED THAT counsel for Debtors shall serve a copy of this

Memorandum Opinion and accompanying Order on all parties in interest who do not receive

electronic notice and shall file a certificate of service forthwith.

Dated: 4/14/2009
14:50:53

                            *Judith K. Fitzgerald*
                              Judith K. Fitzgerald      cjs
                              United States Bankruptcy Judge

1

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF GRACE CANADA, INC.

Court File No: 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE

Proceeding commenced at Toronto

30TH REPORT OF RICHARD C. FINKE
INFORMATION OFFICER

OGILVY RENAULT LLP
Barristers & Solicitors
Royal Bank Plaza, South Tower
Suite 3800, 200 Bay Street
Toronto, Ontario M5J 2Z4

DERRICK C. TAY
LSUC #21152A
Tel:    416.216.4832
Fax:    416.216.3930

ORESTES PASPARAKIS
LSUC #36851T
Tel:    416.216.4815
Fax:    416.216.3930

Solicitors for Grace Canada, Inc.

099

DOCSTOR: 1700H402

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC.

Court File No. 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

PROCEEDING COMMENCED AT
TORONTO

## MOTION RECORD OF REPRESENTATIVE COUNSEL
(Settlement Approval – December 8, 2009)

**SCARFONE HAWKINS** LLP
Barristers & Solicitors
One James Street South
14th Floor
P.O. Box 926, Depot 1
Hamilton, Ontario
L8N 3P9

**DAVID THOMPSON (28271N)**
thompson@shiaw.ca
**MATTHEW G. MOLOCI (40579P)**
moloci@shiaw.ca

Tel : 905-523-1333
Fax: 905-523-5878

Representative Counsel for
CDN ZAI Claimants

**LAUZON BÉLANGER INC.**
Barristers and Solicitors
286, rue St-Paul Ouest, Bureau, 100
Montreal, (Québec)
HY2 2A3

**YVES LAUZON**
ylauzon@lauzonbélanger.qu.ca
**MICHEL BELANGER**
mbelanger@lauzonbélanger.qc.ca
**CAREEN HANNOUCHE**
Careen.hannouche@lauzonbélanger.qc.ca
Tel : 514-844-7612
Fax: 514-844-7009

RCP-E 4D (July 1, 2007)