THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Objection Deadline: February 5, 2010 at 4:00 p.m.**
**Hearing Date: February 16, 2010 at 10:30 a.m.**

## DEBTORS' MOTION FOR AN ORDER EXTENDING THE TERM OF THE CREDIT AGREEMENT WITH ADVANCED REFINING TECHNOLOGIES LLC

The Debtors respectfully move this Court (the "Motion") for entry of an order authorizing the Debtors to amend the ART Credit Agreement (as defined herein) between W. R. Grace & Co.-Conn., one of the Debtors ("Grace"), and Advanced Refining Technologies LLC ("ART") to extend its termination date to February 28, 2011, and reduce Grace's revolving credit commitment thereunder from $20.25 million to $15 million. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## JURISDICTION

1.　　This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion is proper under 28 U.S.C. § 1408.

2.　　The statutory predicates for this Motion are sections 105 and 363(b) of the Bankruptcy Code and Rule 9019 the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

3.　　Effective March 1, 2001, Grace and Chevron Products Company, a division of Chevron U.S.A. Inc ("Chevron USA"), formed ART, a Delaware limited liability company. ART develops, manufactures and sells hydroprocessing catalysts, which are used in the petroleum refining industry for the removal of certain impurities from petroleum feedstock. Initially, Grace owned a 55% interest in ART and Chevron USA owned a 45% interest. In October, 2009, as authorized by this Court [Docket No. 23596], Grace sold 5% of the total company interest to Chevron USA; and as a result, each of Grace and Chevron USA now owns a 50% interest in ART. ART is governed by the Limited Liability Company Agreement dated as of March 1, 2001 (as amended, the "Operating Agreement"), between Grace and Chevron USA.

4.　　In connection with the formation of ART, Grace and Chevron Capital Corporation, an affiliate of Chevron USA ("Chevron Capital"), entered into separate credit agreements with ART (as amended, the "ART Credit Agreements") under which they provided ART with an aggregate of $20 million of revolving credit in proportion to the ownership of ART: $11 million from Grace, and $9 million from Chevron Capital. The ART Credit Agreements commitments were subsequently increased to a total of $45 million ($24.75 million from Grace and $20.25 million from Chevron Capital), and their terms extended to March 1,

2008, and then to March 1, 2010. A subsequent amendment in 2009 reduced the Grace commitment to $20.25 million to reflect the change of ART's ownership to 50% Grace and 50% Chevron USA. The amendments to the ART Credit Agreement between Grace and ART were authorized pursuant to orders entered by the Court on January 22, 2004 [Docket No. 4965], March 24, 2006 [Docket No. 12119], March 10, 2008 [Docket No. [18259] and October 28, 2009 [Docket No. 23596].

5.     The two ART Credit Agreements are substantially identical. The Operating Agreement provides that loans under the ART Credit Agreements aggregating $2,000,000 or integral multiples thereof will be lent 50% by Grace and 50% by Chevron Capital. For administrative convenience, loans in lesser amounts are made exclusively by Grace until their balance reaches $2,000,000.

6.     For the reasons explained below, Grace and Chevron Capital propose to amend the ART Credit Agreements to extend their terms to February 28, 2011, and reduce the credit commitment of each lender to $15,000,000.

7.     The purpose of the ART Credit Agreements is to provide financing arrangements so that excess cash from operations can be used to pay dividends to Grace and Chevron and to fund ART growth, and not be tied up to fund periodic "spikes" in working capital. ART has paid dividends of $96.7 million to Grace and Chevron during 2008 and 2009, and has declared an additional $19.0 million of dividends to be paid in 2010. In 2010 and thereafter, ART expects to continue experiencing spikes in working capital requirements and therefore to continue to require the existing lines of credit, particularly if excess cash is distributed in dividends or used to further grow the ART joint venture.

8.      The hydroprocessing catalyst business involves large orders that in some cases require several months of production time. Over the next few years, ART expects new refinery projects and other transactions that will require initial orders of several million pounds of catalyst. The long production time on these orders will require temporary buildup of inventory. It is for situations like this that the working capital lines will be needed.

9.      "However, Grace and Chevron Capital believe that based on ART's current business scale and analysis of various scenarios impacting cash flow, the level of their revolving credit commitments should be decreased to $15 million each. In addition, in order to support closer oversight by its owners of ART's credit situation, Grace and Chevron Capital have decided that the extended term of the Credit Agreements should be limited to 364 days.

## RELIEF REQUESTED

10.     By this Motion, the Debtors seek an order authorizing the Debtors to amend Grace's ART Credit Agreement to extend its term to February 28, 2011, and to reduce Grace's revolving credit commitment thereunder to $15 million.

## BASIS FOR RELIEF

11.     Section 105(a) of the Bankruptcy Code permits the court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title..." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trusee, after notice and a hearing, may use, sell, or lease, other than in the ordinary court of business property of the estate." 11 U.S.C. §363(b)(1).

12.     A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In

4

re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by "some articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

13.     Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See Lionel Corp., 722 F.2d at 1070-71. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). The business judgment rule has significance in chapter 11 cases as it shields a debtor's management from judicial second-guessing. See Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-16 (Bankr. S.D. N.Y. 1986) ("[T]he Code favors the continued operations of a business by a debtor and a presumption of reasonableness attaches to debtor's management decisions."). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

14.     Courts have applied four factors in determining whether a sound business justification exists:   (i) whether a sound business reason exists for the proposed transaction;

(ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. See Lionel Corp., 722 F.2d at 1071 (setting forth the "sound business purpose" test); Abbotts Dairies, 788 F.2d at 145-47 (implicitly adopting the articulated business justification test of the Lionel standard and adding the "good faith" requirement); Delaware & Hudson, 124 B.R. at 176 (adopting Lionel in this district). As demonstrated below, amending Grace's ART Credit Agreement to extend its term until February 28, 2011, and to reduce Grace's revolving credit commitment therunder to its ART joint venture satisfies each of these factors and is in the best interests of the Debtors.

15.     *Sound Business Reasons.* The hydroprocessing catalyst business involves large orders that in some cases require several months of production time. Over the next few years, ART expects new refinery projects and other transactions that will require initial orders of several million pounds of catalyst. The production time on orders of this magnitude will require temporary build up of inventory, and that inventory must be financed either from ART's cash reserves or from lines of credit.

16.     Grace and Chevron Capital have examined the alternatives and concluded that it is more cost-effective to continue the existing lines of credit than to tie up cash in ART continuously in order to be prepared to meet financing needs if and when they occur. When the financing needs are not pressing, ART's positive cash flow will be distributed as dividends to Grace and Chevron USA for other uses or used for growth by internal expansion, acquisitions or other strategic initiatives. Then, if ART requires additional financing, it is available under the extended ART Credit Agreements.

17.    *Fair and Reasonable Consideration.*  Grace believes that the continuation of the lines of credit will provide the most cost-effective means of managing its investment in the ART joint venture.

18,    *Good Faith.*  The Debtors have negotiated the extension of the ART Credit Agreement and reduction of its revolving credit commitment at arm's length and in good faith. The Debtors also believe that the terms of the proposed transaction are fair to and in the best interests of the Debtors.

19.    *Adequate and Sufficient Notice.*  In satisfaction of the requirements of Rule 2002 of the Bankruptcy Rules, the Debtors intend to serve copies of this Motion to all parties as provided herein.

20.    In light of the foregoing, the Debtors have determined in their business judgment that the extension of Grace's ART Credit Agreement and reduction of its revolving credit commitment thereunder is fair and reasonable.  The Debtors believe that the proposed transaction is in the best interest of their estates, grounded in sound business judgment and satisfies the "sound business judgment" test for the use of assets outside the ordinary course of business under Section 363(b) of the Bankruptcy Code.

## NOTICE

Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, (iv) counsel to the Future Claimants' Representatives, and (v) those parties that requested papers under Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order (a) authorizing the Debtors to amend Grace's ART Credit Agreement to extend its term to February 28, 2011, and (b) granting such other and further relief as the Court deems just and proper.

Dated: January 15, 2010

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Theodore L. Freedman
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
70 W. Madison Street
Suite 2100
Chicago, IL 60602
(312) 641-2162

and

PACHULSKI STANG ZIEHL & JONES LLP


/s/ James E. O'Neill
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession