IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date:  January 25, 2010 at 9:30 a.m.** |
| | | **Related To Docket No. 24144** |

## PLAN PROPONENTS' RESPONSE TO
## CROWN'S OBJECTION TO PLAN CONFIRMATION

### Introduction

Pursuant to the Court's directive on December 14, 2009, the Crown has filed a late

objection to the Joint Plan in which the Crown alleges that the recent approval by the Canadian

Court of the Amended Minutes of Settlement of Canadian ZAI Claims involving the Debtors

prejudices the Crown by eliminating the Crown's gratuitous windfall release made available to it

under the original settlement to which it was not a party and for which it gave no consideration.

---

[1]    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife  Boston Ltd., Alewife Land Corporation, Amicon, Inc.,  CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

In permitting the Crown to file a late plan objection, the Court directed the Crown to not only set forth its plan objections, but more importantly, to provide the evidentiary basis of its objections (*i.e.*, a summary of whatever evidence the Crown would introduce in support of its plan objections):

> COURT: So January 12th for the Crown to submit any confirmation objections, I guess with a brief. I really would like to know what the legal issues are and a summary of what evidence the Crown would expect to call -- to produce.

12/14/09 Hrg. Tr. at 39-40. The Crown, however, has provided no evidentiary summary. Instead, the Crown simply filed a plan objection, argued the legal merits of its objection, and attached certain supporting documents, which primarily consist of orders and other court documents from the Canadian proceedings -- the existence of which is not disputed. The Crown did not argue that an evidentiary hearing is necessary in order for this Court to decide the merits of its objection, and the Plan Proponents submit that no factual issues are raised by the Crown's objection that would otherwise support the need for an evidentiary hearing. In fact, the Crown's objection is essentially identical to the objections raised by several other plan objectors, including the State of Montana, which is represented by the same counsel as the Crown and whose brief is incorporated by reference throughout the Crown's plan objection. As such, the Court has before it the complete record necessary to decide the Crown's plan objection on the papers and without further hearing or delay. In addition, for the reasons outlined herein and in the voluminous pre- and post-trial briefs filed in these confirmation proceedings that have addressed the Crown's objections, the Crown's plan objections lack merit and should be overruled.

2

**The Canadian Proceedings**

In order to understand precisely what is at issue in the Crown's Objection, it is important to understand what types of Canadian Claims[2] may exist and which of those Claims are ***not*** at issue. There are four different types of potential Canadian Claims:  traditional Asbestos PD Claims, traditional Asbestos PI Claims, CDN ZAI PD Claims, and CDN ZAI PI Claims.  The Crowns' Objection does not relate to either traditional Asbestos PD or PI Claims.  Those Canadian Claims, to the extent any exist or may arise in the future, are treated ***exactly*** the same under the Joint Plan as U.S. traditional Asbestos PD and PI Claims.  CCAA Representative Counsel ("Rep. Counsel") does not represent anyone who holds those types of Claims, and it is unclear and doubtful that the Crown has any such Claims.

The remaining Claims are CDN ZAI PD Claims and CDN ZAI PI Claims.  As outlined below, the main purpose of the original CDN ZAI Minutes of Settlement (the "Original Settlement") as well as the Amended and Restated CDN ZAI Minutes of Settlement (the "Amended Settlement") is to resolve and settle Grace's and its affiliates and predecessors' exposure for CDN ZAI PD Claims.  And, the Crown does not really take issue with the terms of the settlement of CDN ZAI PD Claims, including those asserted against it.  What is at issue is the provision in the Amended Settlement that addresses potential CDN ZAI PI Claims.

With that starting point, Grace will briefly summarize the history of how the parties reached the point of where the matters stand today.

      (a)    *The CCAA Proceedings*

Historically, prior to Grace's chapter 11 filing, through certain predecessor affiliates in Canada, Grace was engaged in the sale and distribution of Zonolite Attic Insulation and asbestos-

---

[2]    Capitalized terms not defined herein shall have the same meaning as those terms in the First Amended Joint Plan of Reorganization, dated February 27, 2009, as amended.

3

containing insulation products in Canada. *See* Affidavit of Richard C. Finke, Esq. ("Finke Aff.") at 3 annexed hereto as <u>Exhibit A</u>. As a result, Grace was a party to historical asbestos litigation in Canada. *Id.* Two days after Grace commenced its Chapter 11 cases in the United States, it commenced proceedings before the Ontario Superior Court of Justice pursuant to Section 18.6 of the CCAA. *Id.* at 4. The Canadian CCAA proceedings were commenced seeking ancillary relief to facilitate and coordinate the U.S. Chapter 11 cases in Canada. At the outset, the Canadian Court entered an Order recognizing the chapter 11 cases in the U.S. and the automatic stay. *Id.* and <u>Ex. 1</u> thereto (4/4/01 Order).

In late 2004 through 2005, despite the recognition of the automatic stay, 10 proposed class actions were commenced across Canada against Grace and certain of its affiliates and predecessors, as well as the Crown, in relation to the manufacture, distribution, and sale of ZAI. Finke Aff. at 5. In response, Grace sought and obtained an Order from the Canadian Court extending the protection granted by this Court's Preliminary Injunction, dated January 22, 2002, to stay all such cases against Grace, its affiliates, its predecessors, and the Crown in Canada. *Id.* and <u>Ex. 2</u> thereto (1/22/02 Order).

On February 8, 2006, the Canadian Court appointed Rep. Counsel to act as the single representative in Canada "on behalf of all persons who have, or at any time in the future may have a claim, arising out of or in any way connected to damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of" ZAI in Canada. Finke Aff. at 6 and <u>Ex. 3</u> thereto (2/8/06 Order). Among other things, the Order authorized Rep. Counsel to do the following:

- Appear before the Canadian Court;

- Seek to appear or have an agent appear before the U.S. Bankruptcy Court; and

4

- Negotiate on behalf of the Canadian ZAI Claimants with Grace Canada, the Crown, and the U.S. Chapter 11 Debtors.

      (b)    *Settlement of CDN ZAI Claims Under Original Settlement*

Settlement discussions commenced among Grace, Rep. Counsel, and the Crown shortly after the appointment of Rep. Counsel. Finke Aff. at 7. Those settlement discussions continued in various forms for over two years. *Id.* The Crown participated in virtually all of those discussions, but ultimately could not obtain authorization to settle with Grace and Rep. Counsel. *Id.* As a result, at virtually the last minute, the Crown was eliminated as a party to the settlement, and on September 2, 2008, Grace and Rep. Counsel signed the Original Settlement while the Crown did not. *Id.; see also* PP 277.09 (Original Settlement).

The Original Settlement, in pertinent part, provided for the following:

- The contribution by Grace to a CDN ZAI PD Claims Fund established to process and pay CDN ZAI PD Claims.

- Creation of a separate Class in the Joint Plan for CDN ZAI PD Claims and establishment of the CDN ZAI PD Claims Fund;

- Preservation of the rights of CDN ZAI PI Claimants to file Asbestos PI Claims against the Asbestos PI Trust and entitlement to the same rights as all other Asbestos PI Claimants under the Joint Plan.

- The Original Settlement was to be considered null and void if the order confirming the Joint 11 Plan was not granted prior to October 31, 2009.

In addition, despite the fact that the Crown was not a party to the Original Settlement, the Original Settlement contained a provision that benefitted the Crown, namely, the Original Settlement prohibited the CDN ZAI Claimants from asserting any CDN ZAI Claims against the Crown for which the Crown may have become entitled to contribution or indemnity from Grace. *See* PP 277.09 at ¶13 (containing Crown release). The provision was requested by Grace at a time when the Joint Plan had neither been filed nor had the US ZAI PD Settlement been reached. Finke Aff. at 8. Thus, it was unclear how such contribution or indemnity claims would be

treated under an ultimate plan. Grace sought to avoid a situation where it was discharged of all

asbestos liability under a plan, only to have that liability come back to Grace through the back

door by contribution and indemnity claims asserted against it by the Crown. *Id.* The provision

was essentially a windfall to the Crown. CDN ZAI Claimants were prohibited from pursuing

Claims against the Crown, while the Crown did not participate in the Original Settlement or

contribute anything to Grace, the CDN PD Claims Fund, or the CDN ZAI Claimants.

      (c)     *Settlement of CDN ZAI Claims Under Amended Settlement*

In the summer of 2009, after it became clear that entry of the Confirmation Order by

October 31, 2009 was not likely, Grace approached Rep. Counsel to discuss the potential for an

extension of the Original Settlement. *Id.* at 9. Thereafter, the parties engaged in discussions,

but were unable to reach an agreement on an extension of the deadline in the Original

Settlement, and it expired, rendering the Original Settlement null and void. However, the parties

continued to engage in discussions regarding the possibility of an amended settlement. *Id.*

As a result of those discussions, on November 16, 2009, Grace and Rep. Counsel

executed the Amended Settlement. *Id.* at 10 and <u>Ex. 4</u> thereto (Amended Settlement); *see also*

Plan Exhibit 34 filed with Third Set of Plan Modifications, dated December 16, 2009 (Dkt. No.

24016). The key differences between the Amended Settlement and the Original Settlement are

as follows:

- Grace increased its contribution to the CDN ZAI PD Claims Fund and the new date by which the Amended Settlement would expire in the absence of a Confirmation Order was set at December 31, 2010;

- Consistent with the Original Settlement, the Amended Settlement continues to prohibit CDN ZAI PD Claimants from pursuing CDN ZAI PD Claims against the Crown if such claims will result in a claim for contribution, indemnity or otherwise by the Crown against Grace. However, CDN ZAI PI Claimants are now permitted to pursue CDN ZAI PI Claims against the Crown provided that any subsequent claims by the Crown for contribution, indemnity or otherwise against Grace and its affiliates and predecessors are channeled to the Asbestos PI Trust; and

6

- Grace consents to and supports the application by Rep. Counsel for their appointment as special counsel for CDN ZAI Claimants in the U.S. chapter 11 cases retroactively to September 1, 2008, and going forward to the date of the Confirmation Order. As a result of this appointment, Rep. Counsel will be entitled to apply to have Grace pay their legal fees for this period. There was no similar provision in the Original Settlement.

(d)    *Approval of the Amended Settlement in Canada*

Pursuant to the Amended Settlement and consistent with Canadian law, upon execution of the Amended Settlement, Grace filed a motion in the Canadian Court for an order approving the Amended Settlement. That motion was heard by Justice Morawetz on December 8, 2009. In support of the motion, Grace and Rep. Counsel filed supporting memoranda. The Crown filed opposition papers. On December 13, 2009, after considering all of the arguments presented, Justice Morawetz endorsed the record in the Canadian Court, thereby granting the application for approval of the Amended Settlement with a formal order and reasons to follow. Thereafter, on January 5, 2010, Justice Morawetz issued an order approving the Amended Settlement, and on January 8, 2010, published his endorsement ("the Endorsement"), which set forth the reasons for approving the Amended Settlement. Finke Aff. at 10 and Ex. 5 thereto (Endorsement).

In the Endorsement, Justice Morawetz addressed and overruled all of the Crown's objections, including the Crown's claims of alleged conflicts of interest (no conflict found to exist), reasonable reliance on the Original Settlement (unreasonable to rely on an agreement that was subject to expiration), inadequate representation by Rep. Counsel (not supportable to hold Rep. Counsel to the original, expired deal), and general unfairness as compared to what U.S. ZAI Claimants were receiving under the Joint Plan (U.S. recoveries not relevant to whether Canadian settlement is fair and reasonable). *See* Endorsement at 4-5; 7-9. Based on the foregoing, Justice Morawetz found that the Amended Settlement was fair and reasonable. *Id.* at 11. A more detailed discussion of the Endorsement and the Canadian Court's decision to approve the

7

Amended Settlement is set forth below in part (e) in the context of the Crown's specific objections to the Amended Settlement.

(e)    *The Crown's Issues with the Amended Settlement.*

As outlined above, the Crown does not really take issue with the primary resolution achieved by the Amended Settlement – the settlement of CDN ZAI PD Claims. In its entire plan objection (the "Crown Objection"), which, with exhibits, numbers in the hundreds of pages, the Crown devotes one sentence to the way in which the Amended Settlement addresses CDN ZAI PD Claims. The Crown simply states that CDN ZAI PD Claimants are not treated "fairly and equitably" because the "CDN claimants who live in homes containing ZAI will recover about 1/7 (one seventh) the amount that their American counterparts will recover for asserting the same or substantially the same ZAI claims." Crown Objection ¶ 57. The Crown is absolutely silent on the vast differences between Canadian law and U.S. law with respect to asbestos property damage claims and is silent with respect to, for example, the outcome in Canada of the *Privest* case,[3] which all but virtually shut down asbestos property damage claims litigation in Canada. As Justice Morawetz found in his Endorsement approving the Amended Settlement with respect to this very same argument:

> While the potential and theoretical recovery for U.S. PD Claimants is interesting, it is not directly relevant to the issue of whether the Amended Settlement is fair and reasonable. The Amended Settlement puts forth the compensation package for CDN ZAI PD Claims and it is this term that has to be considered and not the U.S. proposal.

*See* Endorsement ¶ 47.

---

[3]    The court in the leading Canadian asbestos-in-buildings case found that all of the factors necessary to bring a claim existed upon the installation of an asbestos-containing product in the building at issue. *See Privest Properties Ltd. v. Foundation Co. of Canada Ltd.*, [1995] 10 W.W.R. 385 (B.C.S.C.) at para. 198 ("The plaintiffs were aware of the controversies surrounding asbestos and, in my opinion, they either knew or ought to have known that MK-3 contained asbestos. All of the factors necessary to an action regarding the MK-3 existed as of the date of completion of its installation.").

The remainder of the Crown's Objection and hundreds of pages of exhibits is devoted to two points. First, it alleges that Rep. Counsel has a conflict of interest. Justice Morawetz, in his Endorsement, disposed of the portions of the Crown's complaints regarding this alleged conflict of interest, "summarily." *Id.* ¶15. Indeed, it is clear, and Rep. Counsel has filed a response respecting the challenge to its retention which more fully addresses this issue (*see* Dkt. No. 24155), that Rep. Counsel never individually represented the Crown nor was it intended that Rep. Counsel individually represent the interests of the Crown rather than the interests of the overall class. The Crown has always maintained its own counsel in the U.S. and Canadian proceedings to represent any individual interests it may have that may differ from its interests as a member of the overall class. Therefore, no conflict of interest exists.

Second, the Crown objects to the Amended Settlement and, thus, the Joint Plan, because the Amended Settlement no longer bestows on it the windfall protection from CDN ZAI PI Claims that it received in the Original Settlement. While Grace understands that the Crown is disappointed that this gratuitous treatment no longer exists, that disappointment has nothing to do with whether the Amended Settlement can and should be approved. As Justice Morawetz found in his Endorsement:

> The submission of the Crown is based on the premise that there has been a unilateral decision by CCAA Representative Counsel to strip away the Third Party Release. The Third Party Release is embedded in the Original Settlement. The Original Settlement is dead and the Third Party Release no longer exists. Representative Counsel have to deal with this reality. The mandate of Representative Counsel flows from the Order of February 8, 2006. To suggest that Representative Counsel can only properly discharge their legal and equitable duties by restoring the Third Party Release is, in my view, not supportable. The issue for consideration is whether the Amended Settlement is fair and reasonable in all the circumstances. I have not been persuaded of the necessity to require a Third Party Release to be part of any settlement before it can be considered to be fair and reasonable.

***

9

> **. . . I find that the Amended Settlement is both fair and reasonable. The Amended Settlement represents an important component of the First Amended Joint Plan and provides a venue through which ZAI Claims may be resolved.** It is not in the interest of any party for there to be ongoing uncertainly and delay as to the resolution of these claims, nor the escalating costs which will likely accompany further delays.

*See* Endorsement ¶¶ 41, 61 (emphasis added).

Justice Morawetz also found that the "concerns of the Crown, if any, arise from the First Amended Joint Plan and not from the Amended Settlement." *Id.* at ¶60. For the reasons stated below, those concerns do not constitute a basis for denying confirmation of the Joint Plan.

### The Crown's Plan Objections Lack Merit

As discussed above, the Crown's Objection to the Joint Plan stems from the fact that its potential indemnity and contribution claims on account of CDN ZAI PI Claims are channeled to the Asbestos PI Trust under the Amended Settlement. The Crown is treated as an Indirect PI Trust Claimant under the Joint Plan and the Amended Settlement. Indeed, the Crown has raised no arguments not previously addressed by similarly-situated claimants and, thus, adopts most of its argument from other plan objectors such as the State of Montana and Garlock Sealing Technologies, LLC. The arguments have been previously addressed in terms of those other objectors, but the Plan Proponents will briefly discuss the objections specifically in the context of the Crown.

(a)     *The Amended Settlement Is Fair and Reasonable.*

In an effort to take a second "bite at the apple" in challenging the reasonableness of the Amended Settlement, the Crown alleges that the Joint Plan is not confirmable because the Amended Settlement is not fair and reasonable in that the Amended Settlement is the "product of collusion on behalf of the Debtors and CCAA Rep Counsel." Crown Objection ¶36. This assertion is completely false. Both the Original Settlement and the Amended Settlement

10

negotiated with Rep. Counsel of the CDN ZAI Claims were negotiated at arm's length, and there is no evidence to suggest otherwise. As noted above, the Crown contributed *nothing* under the Original Settlement – it was merely a third party beneficiary of that agreement. Moreover, it was always clear that the Original Settlement was dependent upon the Joint Plan being confirmed by October 31, 2009. After that date passed, the Debtors could not guarantee that the Crown would receive the same treatment that was contemplated under the Original Settlement. Simply put, Rep. Counsel would not agree to the same terms as the Original Settlement, and the Debtors negotiated the best deal that they could achieve, which resulted in the Debtors paying more money on account of the CDN ZAI PD Claims, and the Crown losing its gratuitous release. Simply put, notwithstanding some changed terms from the Original Settlement, the Amended Settlement is fair and reasonable and has already been approved by the Canadian Court.[4]

(b)   *The Joint Plan Has Been Proposed In Good Faith.*

The Crown alleges that the Joint Plan has not been proposed in good faith for the same reason previously argued by the State of Montana, namely, that is was not included in certain plan-related negotiations. Crown Objection ¶42. This argument erroneously assumes that every individual creditor must participate in a plan negotiation process in order for a plan to be proposed in good faith. It also assumes that the Crown is somehow different from all of the other individual creditors in its class and that it should be classified separately and represented separately from all other members of its class. The fact, however, is that the evidence demonstrates that the Crown's claims are properly classified as Class 6 claims since they are Indirect PI Trust Claims – they are contribution and indemnity claims on account of asbestos personal injury claims in Canada. The Crown has produced no evidence or law to suggest

---

[4]   The approval of the Amended Settlement is the subject of a motion for leave to appeal which the parties are presently seeking to expedite.

11

otherwise – it simply wants to benefit from the Original Settlement under which claims against it were released such that it would hold no indirect asbestos claims against Grace. But that deal expired, and there was nothing contained in that agreement or in any other document that required the parties to resurrect that deal.

In addition, as certified by the balloting agent in these Chapter 11 Cases, over 99% of the claimants in Class 6 approved the terms of the settlement by voting in favor of the Joint Plan.[5] While the Crown did not previously vote on the Joint Plan,[6] it is clear based on the Crown Objection, it would vote to reject the Joint Plan at this time. The fact, however, is that even if the Balloting Agent re-tabulates the voting to include "no" votes from the Crown, which the Plan Proponents concede as "no" votes without the need for re-solicitation, the overwhelming support by the claimants in Class 6 further substantiates that the Joint Plan, and the treatment of claimants in Class 6 specifically, has been proposed in good faith. *See In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 723, 769 (Bankr. S.D.N.Y. 1992) (finding that the fact that the plan was accepted overwhelmingly by all classes of impaired creditors and two out of three classes of equity holders was an important factor leading to a determination of good faith); *In re ABB Lummus Global, Inc.,* No. 06-10401 (JKF), WL 2052409, at *16 (Bankr. D. Del. June 29, 2006) (stating that the overwhelming acceptance of the plan was a factor leading to a determination of good faith).

Furthermore, to the extent the Crown is alleging unfair treatment under the Joint Plan should be equated with bad faith, it is clear that the Crown Objection fails. Disagreements over a creditor's plan treatment are not enough to sustain an allegation of bad faith, as a plan proponent

---

[5]     PP Ex. 281 (Amended Declaration of Kevin A. Martin Certifying Tabulation of Ballots Regarding Vote on First Amended Joint Plan of Reorganization).

[6]     The Balloting Agent timely mailed ballots to the Crown, but the Crown did not vote on the Joint Plan likely based on its satisfaction with the Original Settlement.

12

only needs to show that the purpose of the proposed plan is to reorganize and that the plan has a reasonable hope of success.[7]  In any event, there has been absolutely no evidence presented that the unfair treatment arguments have any merit.  Not only is there a lack of evidence showing unfair treatment toward the Crown, but there is clear evidence that the Crown will receive the *same* treatment as all other similarly-situated Indirect PI Trust Claimants under the Joint Plan, and all similarly-situated Indirect PI Trust Claimants will receive the *same* treatment under the Joint Plan as the Direct Claimants in Class 6.  Thus, the Crown's objection is without merit.

(c)   *The Plan Complies With the Requirements of Section 524(g).*

The Crown alleges that the Joint Plan fails to comply with the requirements under section 524(g) of the Bankruptcy Code.  Crown Objection ¶44.  The Crown alleges that the Joint Plan fails to comply with section 524(g) primarily for two reasons: (1) that indemnification and contribution claims are of a different nature than the underlying personal injury and wrongful death claims, and (2) the claims stem from different acts (alleged failures owed by the Crown to Canadian residents rather than production of asbestos products).  Crown Objection ¶45.

With respect to the Crown's first argument, the Bankruptcy Code and relevant case law do not support the distinction the Crown is attempting to draw.  Under the Joint Plan, all Indirect PI Trust Claims will be channeled to the Asbestos PI Trust.[8]  These claims include claims for indemnification, contribution, or reimbursement from Grace in connection with its asbestos liabilities.[9]  The Joint Plan's Asbestos PI Channeling Injunction is consistent with the language of section 524(g).  11 U.S.C. § 524(g)(1)(B) provides that "[a]n injunction may be issued under subparagraph (A) to enjoin entities from taking legal action for the purpose of directly or

---

[7]     *In re Century Glove, Inc.,* Nos. Civ. A. 90-400 SLR, 1993 WL 239489, at *4 (Bankr. D. Del. 1993) (bad faith claim without merit since it did not address the purpose of the proposed plan or whether the plan had a reasonable hope of success).

[8]     Joint Plan § 8.2.1.

[9]     Joint Plan § 1.1(138).

13

*indirectly* collecting, recovering, or receiving payment or recovery with respect to any claim or demand that, under a plan of reorganization, is to be paid in whole or in part by a trust described in paragraph (2)(B)(i)." (emphasis added).    Moreover, the injunction described in section 524(g)(2)(B)(i) applies in connection with a trust that will "assume the liabilities of a debtor which . . . has been named as a defendant in . . . actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos containing products." These two sections, read together, support the proposition that a section 524(g)(1)(B) injunction may bar indirect efforts to collect on a chapter 11 debtor's asbestos liabilities.

With respect to the Crown's second argument which adopts Montana's earlier identical argument and asserts that its claims are based on different acts rather than Grace's asbestos liabilities, thus, not qualifying as claims covered by section 524(g)(2)(B), this, too, must be rejected.  In claiming that it has rights of indemnification and contribution against Grace, the Crown cannot have it both ways -- it purports to have claims against Grace because it is being held liable for Grace's actions, but asserts that its claims cannot be channeled because its claims are based on different acts than those that give rise to Grace's asbestos liabilities.  Indeed, Mr. Monaco has made this argument in the context of the State of Montana and how failure to warn claims against it cannot be said to arise out of the same or similar conduct to that of the Debtors such that they fall within the definition of section 524(g).  The Court's response was that "it has to arise out of the same or similar conduct.  It is not the nature of the claim that controls.  It is the nature of the conduct.  If your client's view is that Grace is liable . . . [i]t is clearly based on the same conduct."  1/4/10 Hrg. Tr. 3759 (Unofficial Transcript).  The same rule applies here.

In addition, like Montana, the Crown objects to the channeling of its claims under section 524(g), arguing that its alleged claims are not "claims or demands" under section 524(g)(1)(B).

14

Crown Objection ¶46.   Like Montana, the Crown ignores the plain language of section 524(g)(5) by asserting that its alleged claims are not "demands" within the meaning of section 524(g).   The Crown has been named as a defendant in numerous Canadian class actions (the "Canadian Cases") seeking damages resulting from alleged exposure to asbestos resulting from Grace's manufacturing and installation of asbestos-containing vermiculite within Canada.   The Crown alleges that if it is found to be liable for damages in any of the Canadian Cases, Grace will be liable to the Crown for indemnification and/or contribution because its alleged breaches of various duties were the proximate cause of the alleged injuries.

Section 524(g)(5) defines a "demand" as "a demand for payment, present or future," that "(A) was not a claim during the proceedings leading to the confirmation of a plan of reorganization; (B) arises out of the same or similar conduct or events that gave rise to the claims addressed by the injunction issued under [524(g)(1)]; and (C) pursuant to the plan, is to be paid by a trust described in paragraph (2)(B)(i)."[10]   By the express, unambiguous terms of this provision, any future demand for payment of an asbestos-related claim is a "demand" that can be channeled by a section 524(g) injunction.   The Crown argues that its alleged causes of action against Grace are not "demands" within the meaning of section 524(g) because they have not paid or settled any claims as of this time.   Crown Objection ¶46.   This argument disregards the definition of "demand" under the Bankruptcy Code.   When an amount is presently due, a "claim" necessarily exists.[11]   And a "demand," by definition, is a right for payment that does not qualify as a "claim."[12]   Thus, the Crown's purported causes of action are clearly "demands" under section 524(g).

---

[10]      11 U.S.C. § 524(g)(5).

[11]      11 U.S.C. § 101(5)(A).

[12]      11 U.S.C. § 524(g)(5)(A).

15

(d)    *The Plan Properly Classifies the Crown's Claims in Class 6.*

The Crown argues that its indemnification and contribution claims are not properly classified in Class 6.  Crown Objection ¶47.  Section 1122(a) of the Bankruptcy Code provides that a plan of reorganization may place a claim in a particular class if it is "substantially similar to the other claims . . . of such class."[13]  Under Plan § 1.1(33)(i), Asbestos PI Claims include Indirect PI Trust Claims, which are defined under the Joint Plan as claims for indemnification, contribution, or subrogation for damages paid to a plaintiff in an action seeking recovery for "personal injuries allegedly caused by exposure to asbestos or asbestos-containing products for which the Debtors have liability."[14]  The reason for classifying these claims together is that, as to the Debtors, these claims implicate and seek to recover the same liabilities and damages as direct claims for asbestos personal injuries asserted against Grace, and therefore, as explained in the Plan Proponents' Pretrial Phase II Main Brief,[15] these claims must be channeled to the Asbestos PI Trust.  In particular, allowing Indirect PI Trust Claims to be asserted against Grace as general unsecured claims would open a back door to recovery against Grace, and would frustrate the purpose of section 524(g), which is to achieve a global resolution of the Debtors' asbestos liabilities.[16]

There can be no disputing that this principle of classification is proper.  Courts, interpreting section 1122(a) in the context of asbestos-driven Chapter 11 cases, have consistently held that where claims for indemnification and contribution, contractual or otherwise, relate to personal injury claims arising from the debtor's asbestos products and operations, such claims

---

[13]    11 U.S.C. § 1122(a).
[14]    PP Ex. 277.01 (Plan § 1.1(138)).
[15]    PP Pretrial Phase II Main Br. at 47-50.
[16]    *See id.* at 18-19.

are substantially similar and may be placed together in the same class.[17]   Thus, the classification of Indirect PI Trust Claims in Class 6 is proper, and any claim that falls within the Joint Plan's definition of an Indirect PI Trust Claim including, in particular, the Indirect CDN Asbestos PI Claims of the Crown, is properly classified in Class 6.

Likewise, because the Crown's claims are properly classified in Class 6, and because Class 6 has overwhelmingly voted in favor of the Joint Plan, the Crown's additional arguments regarding the absolute priority rule fall flat -- section 1129(b) of the Bankruptcy Code is not applicable here.   Crown Objection ¶¶48-52.

      (e)    *The TDP Satisfies the Requirements of Sections 1123(a)(4) and 524(g)(2)(B).*

The Crown reiterated objections raised by Montana and Garlock related to section 1123(a)(4) based on alleged discriminatory treatment under the Asbestos PI TDP.   Crown Objection ¶53. However, the evidence is clear that similarly-situated Indirect PI Trust Claimants receive equal treatment with direct claimants.   Indirect claimants "step into the [ ] shoes" of direct claimants.[18]   "The indirect claimant will then liquidate the claim in the same manner that the claim could've liquidated the claim . . . and be paid at the payment percentage just in the same way the claimant would've been paid."[19]   Furthermore, when asked what, if any,

---

[17]    *See In re Armstrong World Indus., Inc.,* 348 B.R. 136, 168-69 (D. Del. 2006) ("Because Indirect PI Trust Claims, including those arising under contract, relate to direct Asbestos Personal Injury Claims, they are appropriately channeled to the Asbestos PI Trust and have historically been channeled to trusts established in connection with asbestos related chapter 11 cases.") (emphasis added); *see also In re Burns and Roe Enters. Inc.,* No. 08-4191, 2009 WL 438694, at *24 (D.N.J. Feb. 23, 2009) (approving classification grouping direct and indirect asbestos claims in one class where definition of indirect claim under plan included claims for indemnification and subrogation); *In re Asbestos Claims Mgmt. Corp.,* 294 B.R. 663(N.D. Tex. 2003) (affirming plan grouping direct and indirect asbestos claims together where definition of indirect claim under plan explicitly included contractual claims for reimbursement, indemnification, and other forms of relief); *In re Celotex Corp.,* 204 B.R. 586 (M.D. Fla. 1996) (same); *In re Porter Hayden Co.,* No. 02-54152, 2006 WL 4667137 (Bank. D. Md. June 30, 2006) (same); *In re Federal- Mogul Global, Inc.,* No. 01-10578, 2007 WL 4180545 (Bank. D. Del. Nov. 16, 2007) (same).

[18]    9/14/09 Tr. 44 (Inselbuch).
[19]    *Id.*

differences are there between this process and the individual review process for direct claimants, Mr. Inselbuch explained "none."[20]

More specifically, like Garlock, the Crown objects to the requirement under the Asbestos TDP that the holder of the Indirect PI Trust Claims must first be required to pay the direct claimholder without being able to implead the Asbestos PI Trust. Crown Objection ¶54. The provisions of the Asbestos PI TDP restricting impleader of the Asbestos PI Trust are essential to preserve trust assets from dissipation through the transaction costs attendant upon litigation in the tort system. With respect to this provision, Direct Claimants are treated the same way, *i.e.*, the Asbestos PI TDP also restricts Direct Claimants from initiating litigation against the Asbestos PI Trust as part of suits brought against codefendants.

In addition, like Montana, the Crown objects to provisions of the Asbestos PI TDP that establish maximum values for Asbestos PI Claims and exclude attorneys' fees and defense costs. Crown Objection ¶¶56, 58. These provisions, however, are not unique to Indirect PI Trust Claims. Instead, they apply across the board to all similarly-situated Asbestos PI Claims channeled to the Asbestos PI Trust, as they do in every approved set of trust distribution procedures in every other section 524(g) case.

Furthermore, like Montana, the Crown criticizes the Asbestos PI TDP's FIFO payment scheme, claiming that the FIFO scheme unfairly discriminates against Indirect PI Trust Claims. Crown Objection ¶55. The FIFO payment mechanism, however, applies equally to all Asbestos PI Claims. What is more, the Asbestos PI TDP provides numerous protections to ensure that Asbestos PI Claims receive similar treatment regardless of where they fall in the FIFO queue, not the least of which is the Payment Percentage.

---

[20]    *Id.* at 45; *see also* PP 277.04 (Asbestos PI TDP); PP Pretrial Phase II Main Br. at 66-69.

Separately, the Crown objects to the requirement, set forth in Asbestos PI TDP section 5.6, that Holders of Indirect PI Trust Claims must obtain a release from the underlying direct claimant for the Indirect PI Trust Claim to be treated as presumptively valid.  Crown Objection ¶56. This requirement, however, imposes no greater burden on Indirect PI Trust Claims than any other Asbestos PI Claims face.  All Asbestos PI Claims are required to establish the validity of their claims in order to receive any payment.  For Indirect PI Trust Claims, this involves proving that the Holder satisfied a liability of the Debtors.  Obtaining a release is simply one way in which a Holder can meet its burden of proof.   Indeed, obtaining a release is not an absolute requirement for an Indirect PI Trust Claim to be paid.  If a Holder does not have a release, the Holder can still request individual review, and establish the validity of its Indirect PI Trust Claim through other means.  Moreover, when the Holder satisfies the underlying claim pursuant to a Final Order, the release requirement is not applicable.

Accordingly, for the reasons stated above, the Asbestos PI TDP does not unfairly discriminate against Indirect PI Trust Claims in violation of §§1123(a)(4) and 524(g)(2)(B).

(f)     *The Asbestos PI TDP Adequately Specifies The Treatment Of Indirect PI Trust Claims.*

The Crown also reiterates Montana's argument that the Asbestos PI TDP is inequitable because it does not specify how Class 6 Claims will be paid. Crown Objection ¶60.

But Article 8.2.1 of the Joint Plan states that "[o]n and after the Effective Date, the sole recourse of the Holder of an Asbestos PI Claim . . . shall be to the Asbestos PI Trust pursuant to the provisions of . . . the Asbestos PI TDP."  Section 5.6 of the Asbestos PI TDP, in turn, sets forth in detail the manner in which Indirect PI Trust Claims will be treated under the Asbestos PI TDP.  In fact, under section 5.6 of the Asbestos PI TDP, Indirect PI Trust Claims will be treated as presumptively valid if four separate conditions are met.  First, the Holder's liability for the

19

underlying direct claim must be fixed and liquidated by either settlement or Final Order, and the Holder must fully pay its share of the liability to the underlying direct claimant. Second, the Holder must fully pay the Asbestos PI Trust's share of the liability to the underlying direct claimant. Third, in any case in which the Holder satisfies the underlying direct claim by way of a settlement, the Holder must obtain for the benefit of the Asbestos PI Trust a release of liability. Fourth, the Indirect PI Trust Claim must not be barred by a statute of limitation or repose or by other applicable law. If each of these four conditions is satisfied, the validity of the Indirect PI Trust Claim will be conclusively established.

Alternatively, if a Holder cannot meet the requirements for presumptive validity, the Holder can nevertheless request individual review of its Indirect PI Trust Claim. This review will be conducted in accordance with procedures to be developed and implemented by the Trustees of the Asbestos PI Trust to determine the validity, acceptability, and enforceability of Indirect PI Trust Claims. If a Holder disagrees with the Asbestos PI Trust's decision, it can then dispute the decision in accordance with the Asbestos PI TDP's ADR Procedures and, afterwards, litigate the dispute in the tort system.

In either event, once the Holder establishes the validity of the its Indirect PI Trust Claim, the Indirect PI Trust Claim will be subject to the same categorization, evaluation, and payment provisions of the Asbestos PI TDP as all other Asbestos PI Claims. Asbestos PI TDP §§ 2.6, 5.6. Thus, the Indirect PI Trust Claim will be paid in first-in-first-out ("FIFO") order based on the date the Indirect PI Trust Claim is liquidated in the claims review process (Asbestos PI TDP § 5.1(c)), and the Holder will receive an amount equal to the lesser of the liquidated value of Indirect PI Trust Claim multiplied by the Payment Percentage, or the liquidated value of the

20

underlying claim multiplied by the Payment Percentage (Asbestos PI TDP §§ 4.1-4.3, 5.3(b)(3), 5.6).

In the face of these detailed provisions, it is disingenuous for the Crown to argue that the Asbestos PI TDP lacks sufficient clarity as to the payment of Class 6 Claims. The Asbestos PI TDP is as specific as is practically possible. Virtually none of the alleged Indirect PI Trust Claims exists at this time. As such, there is no experiential base upon which to draw to create more-detailed evidentiary guidelines for conducting individual review of Indirect PI Trust Claims. The most that can be done now is to ensure that procedures are developed, as experience is accumulated, by the Asbestos PI Trustees, who will act as fiduciaries for the Holders of Indirect PI Trust Claims.[21] Similarly, the Asbestos PI TDP cannot be any more specific with regard to the amount or timing of payment. The ultimate Payment Percentage and the timing of payment are a function of the number of Asbestos PI Claims that are asserted against the Asbestos PI Trust -- a number which is inherently uncertain. The most the Asbestos PI TDP can offer, therefore, is a set of procedures which the Asbestos PI Trustees, as fiduciaries, will implement, with their determinations subject to judicial review if the Holder of an Indirect PI Trust Claim feels aggrieved.

---

[21]   *See* Asbestos PI Trust Agreement § 2.1, at Exhibit 2 to the Exhibit Book.

**Conclusion**

For the reasons stated herein, the Crown's Objections to confirmation of the Joint Plan

should be overruled, and the Joint Plan should be confirmed.

Dated: January 19, 2010                    Respectfully submitted,
Wilmington, Delaware

                                           KIRKLAND & ELLIS LLP
                                           David M. Bernick, P.C.
                                           Theodore L. Freedman
                                           Deanna D. Boll
                                           601 Lexington Avenue
                                           New York, NY 10022
                                           Telephone: (212) 446-4800
                                           Facsimile: (212) 446-4900


                                           and


                                           THE LAW OFFICES OF JANET S. BAER, P.C.
                                           Janet S. Baer, P.C.
                                           70 W. Madison Street
                                           Suite 2100
                                           Chicago, IL 60602
                                           Telephone: (312) 641-2162


                                           and


                                           PACHULSKI, STANG, ZIEHL & JONES LLP
                                           James E. O'Neill (Bar No. 4042)
                                           Kathleen P. Makowski (Bar No. 3648)
                                           919 North Market Street, 17th Floor
                                           P.O. Box 8705
                                           Wilmington, Delaware 19899-8705
                                           (Courier 19801)
                                           Telephone: (302) 652-4100
                                           Facsimile: (302) 652-4400

                                           *Counsel for the Debtors and Debtors in Possession*

CAMPBELL & LEVINE, LLC


*/s/ Mark T. Hurford*
Mark T. Hurford (No. 3299)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone:  (302) 426-1900
Facsimile:  (302) 426-9947
mhurford@camlev.com

and

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

Peter Van N. Lockwood
Nathan D. Finch
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone:  (202) 862-5000
Facsimile:  (202) 429-3301

*Counsel for the Official Committee of Asbestos
Personal Injury Claimants*

PHILLIPS, GOLDMAN & SPENCE, P.A.

*/s/ John C. Phillips*
John C. Phillips (Bar No. 110)
1200 North Broom Street
Wilmington, DE 19806
Telephone: (302) 655-4200
Facsimile: (302) 655-4210
jcp@pgslaw.com

and

ORRICK, HERRINGTON & SUTCLIFFE LLP
Roger Frankel
Richard H. Wyron
Jonathan P. Guy
Debra L. Felder
1152 15th Street, NW
Washington, DC 20005
Telephone: (202) 339-8400
Facsimile: (202) 339-8500

*Counsel for David T. Austern, Asbestos PI Future Claimants' Representative*

DOCS_DE:156747.1

SAUL EWING LLP

*/s/ Teresa K.D. Currier*
Teresa K.D. Currier (Bar No. 3080)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Facsimile: (302) 421-6813
tcurrier@saul.com

and

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Philip Bentley
Gregory Horowitz
Douglas Mannal
1177 Avenue of the Americas
New York, NY 10022
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee of Equity Security Holders*

DOCS_DE:156747.1