# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. [1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Chapter 11 |

**AFFIDAVIT OF RICHARD C. FINKE, ESQ. IN SUPPORT OF PLAN PROPONENTS'**
**RESPONSE TO CROWN'S OBJECTION TO PLAN CONFIRMATION**

Richard C. Finke, Esq., being duly sworn, deposes and states:

1.     I am Assistant General Counsel-Litigation of W. R. Grace & Co.-Conn.. a corporation organized under the laws of the State of Delaware and one of the above-referenced debtors and debtors-in-possession (collectively, the "Debtors").

---

[1]   The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2.    I am over 21 years of age.  I submit this affidavit in support of the *Plan Proponents' Response to Crown's Objection to Plan Confirmation*.  Except as otherwise indicated, all facts set forth in this affidavit are based upon my personal knowledge and information supplied to me by other members of the Debtors' management and professionals, or learned from my review of relevant documents.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.  I am authorized to submit this affidavit.

3.    Historically, prior to Grace's chapter 11 filing, through certain predecessor affiliates in Canada, Grace was engaged in the sale and distribution of Zonolite Attic Insulation and asbestos-containing insulation products in Canada.  As a result, Grace was a party to historical asbestos litigation in Canada.

4.    Two days after Grace commenced its Chapter 11 cases in the United States, it commenced proceedings before the Ontario Superior Court of Justice pursuant to Section 18.6 of the CCAA.  Grace commenced the proceedings in Canada in order to obtain ancillary relief to facilitate and coordinate the U.S. Chapter 11 cases in Canada.  The Canadian Court entered an Order recognizing the chapter 11 cases in the U.S. and the automatic stay.  A copy of that Order is attached hereto at Exhibit 1.

5.    In late 2004 through 2005, ten proposed class actions were commenced across Canada against Grace and certain of its affiliates and predecessors, as well as the Crown, in relation to the manufacture, distribution, and sale of ZAI.  In response, Grace sought and obtained an Order from the Canadian Court extending the protection granted by this Court's Preliminary Injunction to stay all such cases against Grace, its affiliates, its predecessors, and the Crown in Canada.  A copy of that Order is attached hereto at Exhibit 2.

2

6.      On February 8, 2006, the Canadian Court appointed Rep. Counsel to act as the single representative in Canada on behalf of all persons who either had or may have in the future a claim rising out of or in any way connected to damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of ZAI in Canada. A copy of that Order is attached hereto at Exhibit 3. Pursuant to the same Order, the Canadian Court appointed me as Grace's Information Officer charged with the responsibility of providing information to that Court quarterly on the Debtors and these Ch. 11 cases.

7.      Settlement discussions commenced among Grace, Rep. Counsel, and the Crown shortly after the appointment of Rep. Counsel. Those settlement discussions continued in various forms for over two years. To the best of my recollection, the Crown participated fully throughout the course of those settlement discussions, but the Crown ultimately informed Grace and Rep. Counsel that it could not obtain authorization to settle with Grace and Rep. Counsel. As a result, at virtually the last minute, the Crown was eliminated as a party to the settlement, and on September 2, 2008, Grace and Rep. Counsel signed the Original Settlement without the Crown as a party. A copy of the Original Settlement was submitted in the Exhibit Book for the Plan Documents at Exhibit 9, which was marked and admitted during the Confirmation Hearing as PP 277.09 rev.

8.      Despite the fact that the Crown was not a party to the Original Settlement, the Original Settlement contained a provision that benefitted the Crown, namely, the Original Settlement prohibited CDN ZAI Claimants from asserting any CDN ZAI Claims against the Crown for which the Crown may have become entitled to contribution or indemnity from Grace. Grace requested the provision be added to the Original Settlement at a time when the Joint Plan had neither been filed nor had the US ZAI PD Settlement been reached. At that time, it was

3

unclear how such contribution or indemnity claims would be treated under an ultimate plan. Grace sought to avoid a situation where it was discharged of all asbestos liability under a plan, only to have that liability come back to Grace through the back door by contribution and indemnity claims asserted against it by the Crown.

9.      In the summer of 2009, after it became clear that entry of the Confirmation Order by October 31, 2009 was not likely, Grace approached Rep. Counsel to discuss the potential for an extension of the Original Settlement. Thereafter, we engaged in discussions, but were unable to reach an agreement on an extension of the deadline in the Original Settlement, and it expired, rendering the Original Settlement null and void. However, we continued to engage in discussions regarding the possibility of an amended settlement.

10.      As a result of those discussions, on November 16, 2009, Grace and Rep. Counsel executed the Amended Settlement. A copy of the Amended Settlement was filed with the Third Set of Plan Modifications and is also attached hereto at Exhibit 4. Pursuant to the Amended Settlement and the advice I received from Grace's Canadian counsel concerning Canadian law, Grace was then required to file a motion in the Canadian Court for an order approving the Amended Settlement. That motion was heard by Justice Morawetz on December 8, 2009. On December 13, 2009, after considering all of the arguments presented, Justice Morawetz endorsed the record in the Canadian Court, thereby granting the application for approval of the Amended Settlement with a formal order and reasons to follow. Thereafter, on January 5, 2010, Justice Morawetz issued an order approving the Amended Settlement, and on January 8, 2010, published his endorsement ("the Endorsement"), which set forth the Canadian Court's reasons for approving the Amended Settlement. A copy of the Endorsement is attached hereto at Exhibit 5.

4

11.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 19, 2010

_Richard C. Finke_
Name: Richard C. Finke
Title:   Assistant General Counsel-Litigation
W. R. Grace & Co.-Conn.

Sworn to and subscribed before

me this _19_ day of _Jan_ , _2010_ .


_Janet L. Davis_
Notary Public, _Carroll_ County, _MD_

My commission expires: _9/1/2010_
Acting in the County of _Carroll_

5

This is Exhibit.........E..........referred to in the
affidavit of....Richard. C. Finke
sworn before me, this......... 15th
day of........September............20.08

Janet L. Davis

A COMMISSIONER FOR TAKING AFFIDAVITS

My commission expires 9/1/2010

002.9

**JANET L. DAVIS**
**NOTARY**
**PUBLIC**
**CARROLL COUNTY, MD**

Court File No. 01-CL-4081

## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE | ) | WEDNESDAY, THE 4TH DAY OF |
| | ) | |
| MR. JUSTICE FARLEY | ) | APRIL, 2001. |

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

### INITIAL ORDER

THIS MOTION made by the Applicant Grace Canada, Inc. for an Order
substantially in the form attached to the Application Record herein was heard this day,
at 393 University Avenue, Toronto, Ontario.

ON READING the Notice of Application, the Affidavit of Pierre Le Bourdais
sworn April 3, 2001 (the "Le Bourdais Affidavit") and upon being advised that no other
person who might be interested in these proceedings was served with the Notice of
Application herein.

### SERVICE

1.      THIS COURT ORDERS that the time for service of the Notice of
Application and the Affidavit in support of this Application be and it is hereby abridged
such that the Application is properly returnable today, and, further, that any

- 2 -

requirement for service of the Notice of Application and of the Application Record upon any interested party is hereby dispensed with.

## RECOGNITION OF THE U.S. PROCEEDINGS

2.      **THIS COURT ORDERS AND DECLARES** that the proceedings commenced by the Applicant's United States corporate parent and certain other related corporations in the United States for protection under Chapter 11 of the United States Bankruptcy Code in connection with asbestos claims (the "U.S. Proceedings") be and hereby is recognized as a "foreign proceeding" for purposes of Section 18.6 of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c.C-36, as amended, (the "CCAA").

## APPLICATION

3.      **THIS COURT ORDERS AND DECLARES** that the Applicant is a company which is entitled to relief pursuant to s. 18.6 of the CCAA.

## PROTECTION FROM ASBESTOS PROCEEDINGS

4.      **THIS COURT ORDERS** that until and including October 1, 2001, or such later date as the Court may order (the "Stay Period"), no suit, action, enforcement process, extra-judicial proceeding or other proceeding relating to, arising out of or in any way connected to damages or loss suffered, directly or indirectly, from asbestos, asbestos contamination or asbestos related diseases ("Asbestos Proceedings") against or in respect of the Applicant, its directors, officers or employees or any property of the Applicant, wheresoever located, and whether held by the Applicant in whole or in part, directly or indirectly, as principal or nominee, beneficially or otherwise shall be

002 7

- 3 -

commenced, and any Asbestos Proceedings against or in respect of the Applicant, its directors, officers or employees or the Applicant's Property already commenced be and are hereby stayed and suspended.

5.        **THIS COURT ORDERS** that during the Stay Period, the right of any person, firm, corporation, governmental authority or other entity to assert, enforce or exercise any right, option or remedy arising by law, by virtue of any agreement or by any other means, as a result of the making or filing of these proceedings, the U.S. Proceedings or any allegation made in these proceedings or the U.S. Proceedings be and is hereby restrained.

## REPORT AND EXTENSION OF STAY

6.        As part of any application by the Applicant for an extension of the Stay Period:

(a)    the Applicant shall appoint Pierre Le Bourdais, or such other senior officer as it deems appropriate from time to time, as an information officer (the "Information Officer");

(b)    the Information Officer shall deliver to the Court a report at least once every three (3) months outlining the status of the U.S. Proceedings, the development of any process for dealing with asbestos claims and such other information as the Information Officer believes to be material (the "Information Reports"); and

(c)    the Applicant and the Information Officer shall incur no liability or obligation as a result of the appointment of the Information Officer or the

0021

- 4 -

fulfilment of the duties of the Information Officer in carrying out the provisions of this Order and no action or other proceedings shall be commenced against the Applicant or Information Officer as an result of or relating in any way to the appointment of the Information Officer or the fulfilment of the duties of the Information Officer, except with prior leave of this Court and upon further order securing the solicitor and his own client costs of the Information Officer and the Applicant in connection with any such action or proceeding.

**SERVICE AND NOTICE**

7.          **THIS COURT ORDERS** that the Applicant shall, within fifteen (15) business days of the date of entry of this Order, publish a notice of this Order in substantially the form attached as Schedule "A" hereto on two separate days in the Globe & Mail (National Edition) and the National Post.

8.          **THIS COURT ORDERS** that the Applicant be at liberty to serve this Order, any other orders in these proceedings, all other proceedings, notices and documents by prepaid ordinary mail, courier, personal delivery or electronic transmission to any interested party at their addresses as last shown on the records of the Applicant and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

002 9

- 5 -

## MISCELLANEOUS

9.      **THIS COURT ORDERS** that notwithstanding anything else contained herein, the Applicant may, by written consent of its counsel of record herein, agree to waive any of the protections provided to it herein.

10.      **THIS COURT ORDERS** that the Applicant may, from time to time, apply to this Court for directions in the discharge of its powers and duties hereunder or in respect of the proper execution of this Order.

11.      **THIS COURT ORDERS** that, notwithstanding any other provision of this Order, any interested person may apply to this Court to vary or rescind this order or seek other relief upon ten (10) days' notice to the Applicant and to any other party likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

12.      **THIS COURT ORDERS AND REQUESTS** the aid and recognition of any court or any judicial, regulatory or administrative body in any province or territory of Canada (including the assistance of any court in Canada pursuant to Section 17 of the CCAA) and the Federal Court of Canada and any judicial, regulatory or administrative tribunal or other court constituted pursuant to the Parliament of Canada or the legislature of any province and any court or any judicial, regulatory or administrative body of the United States and the states or other subdivisions of the United States and of any other nation or state to act in aid of and to be complementary to this Court in carrying out the terms of this Order.

S:\Client\4226\1\application record\initial.order.apr4.01.sef.wpd

APR 0 4 2001

**J. PERSAUD**
REGISTRAR, ONTARIO COURT (GEN. DIV.)
GREFFIER ADJOINT, COUR DE L'ONTARIO (DIV. GÉN.)

00214

## SCHEDULE "A"

### NOTICE

RE:     **IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS
        ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED (the
        "CCAA")**

        **AND IN THE MATTER OF GRACE CANADA, INC.**

        **PLEASE TAKE NOTICE** that this notice is being published pursuant to an Order
of the Superior Court of Justice of Ontario made April 4, 2001. The corporate parent
of Grace Canada, Inc. and certain other affiliated corporations in the United States
have filed for protection in the United States under Chapter 11 of the Bankruptcy Code
to seek, as the result of recent, sharp increases in the number of asbestos claims
which have seriously threatened the Grace Enterprise's long term health, protection
from mass asbestos claims to which they are or may become subject. Grace Canada,
Inc. itself has not filed under Chapter 11 but has sought and obtained an interim order
under Section 18.6 of the CCAA affording it a stay against asbestos claims in Canada.
Further application may be made to the Court by Grace Canada, Inc. to ensure fair and
equal access for Canadians with asbestos claims against Grace Canada, Inc. to the
process established in the United States.  Representations may also be made by
parties who would prefer to purse their remedies in Canada.

        Persons who wish to be a party to the Canadian proceedings or to receive a
copy of the order or any further information should contact counsel for Grace Canada,
Inc., Derrick C. Tay at Meighen Demers LLP (Telephone 416.340.6032 and
Fax 416.977.5239).

        DATED this            day of              , 2001 at Toronto, Canada

S:\Client\4226\1\application record\sched.a.notice.apr.01.set.wpd

Court File No. 01-CL-4081

IN THE MATTER OF S. 18.6 of THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST
PROCEEDINGS COMMENCED AT TORONTO

INITIAL ORDER

**MEIGHEN DEMERS LLP**
Barristers & Solicitors
Suite 1100, Box 11
Merrill Lynch Canada Tower
Sun Life Centre
200 King Street West
Toronto, Ontario  M5H 3T4

**DERRICK C. TAY**
LSUC No. 21152A
Tel: 416.340.6032
Fax: 416.340.5900

Solicitors for the Applicant

Court File No. 01-CL-4081

## SUPERIOR COURT OF JUSTICE

### COMMERCIAL LIST

| THE HONOURABLE | ) | MONDAY, THE 14th DAY OF |
| MR. JUSTICE FARLEY | ) | NOVEMBER, 2005 |

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS
AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

### ORDER

THIS MOTION made by Grace Canada, Inc. (hereinafter referred to as the "Applicant"), for an Order:

(a)    abridging the time for service of this motion;

(b)    recognizing an order (as amended, the "Modified Preliminary Injunction") granted on January 22, 2002 by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") providing injunctive relief to W.R. Grace Inc. and all of its subsidiaries (the "U.S Debtors") as well as certain other Affiliated Entities (as defined in the Modified Preliminary Injunction) and declaring that such order be effective in Canada in accordance with its terms;

(c)    an order staying as against The Attorney General of Canada (Her Majesty the Queen in Right of Canada) (the "Crown"), until such time as the Stay Period (as defined in the order of this Honourable Court made on April 1, 2001 (the "Initial

- 2 -

Order")) expires, all suits, actions, enforcement processes, extra-judicial

proceedings or other proceedings relating to, arising out of or in any connected to

damages or loss suffered, directly or in directly, from asbestos, asbestos

contamination or asbestos related diseases arising out of the exposure to or use of

products in Canada that may contain asbestos and were manufactured, sold or

distributed by any of the Applicant, the U.S. Debtors or the Affiliated Entities;

and

(d)    an order extending the Stay Period referred to in paragraphs 4 and 5 of the Initial

Order to April 1, 2006,

was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING,**

(a)    the Applicant's Notice of Motion, the affidavit of Richard Finke sworn
September 6, 2005 (the "Finke Affidavit"), the 16th Report of Pierre Le
Bourdais, Information Officer, the Affidavit of George Triantis sworn
September 28, 2005, the supplemental affidavit of Richard Finke sworn
October 19, 2005,

(b)    the Notice of Appearance of Raven Thundersky ("Thundersky") dated
September 13, 2005, the affidavit of Thundersky sworn September 14, 2005,
the Notice of Motion and  Motion Record of counsel to Thundersky dated
September 19, 2005, the affidavit of Sander Esserman sworn October 11,
2005, the supplemental affidavit of Thundersky sworn October 7, 2005;

(c)    the Notice of Motion and affidavit of Yves Lauzon sworn September 16,
2005;

and on hearing the submissions of counsel for: (a) the Applicant; (b) Association Des
Consommatuers Pour La Qualité Dans La Construction and Jean-Charles Dextras, Viviane
Brosseau and Léotine Roberge-Turgeon (collectively, the "Québec Plaintiffs"), who consent
to the Order; (c) the Crown, who also consents to the Order; (d) Thundersky; and (e) Merv
Nordick and Ernest Spencer et. al., and upon being advised that no other person has appeared
on this date or served and filed responding materials on this motion:

1.    **THIS COURT ORDERS** that the time for service of the Applicant's Notice of Motion and Motion Record in support of this Motion be and it is hereby abridged such that the Motion is properly returnable today, and, further, that any requirement for service of the Notice of Motion and of the Motion Record upon any interested party, other than the parties herein mentioned, is hereby dispensed with.

2.    **THIS COURT ORDERS** that the Modified Preliminary Injunction, as amended, be and is hereby recognized and shall be effective in Canada in accordance with its terms.

3.    **THIS COURT ORDERS** that until and including such time as the Stay Period expires, no suit, action, enforcement process, extra-judicial proceeding or other proceeding relating to, arising out of or in any connected to damages or loss suffered, directly or in directly, from asbestos, asbestos contamination or asbestos related diseases arising out of the exposure to or use of asbestos products in Canada manufactured, sold or distributed by any of the Applicant, the U.S. Debtors or the Affiliated Entities, shall be commenced against the Crown and any such suits, actions, enforcement processes, extra-judicial proceedings or other proceedings already commenced against the Crown be and are hereby stayed and suspended.

4.    **THIS COURT ORDERS** that the Stay Period referred to at paragraphs 4 and 5 of the Initial Order be and is hereby extended and continued to April 1, 2006.

JOSEPH P VAN TASSEL
REGISTRAR

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

NOV 1 7 2005

PER/PAR:

Court File No: 01-CL-4081

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Toronto

**ORDER**

**OGILVY RENAULT LLP**
Barristers & Solicitors
Suite 3800, PO Box 84
Royal Bank Plaza, South Tower

200 Bay Street
Toronto, Ontario  M5J 2Z4

**DERRICK C. TAY**
LSUC #21152A
Tel:     416.216.4832
Fax:     416.216.3930

**ORESTES PASPARAKIS**
LSUC # 36851T
Tel: 416.216.4815
Fax: 416.216.3930

Solicitors for the Applicant

This is Exhibit......`C`..............referred to in the
affidavit of.....*`Richard C. Finke`
sworn before me, this..........`15th`
day of......`September`............`20 03`

.....`David R. David`
A COMMISSIONER FOR TAKING AFFIDAVITS
`my commission expires 9/1/2010`

00219

Court File No. 01-CL-4081

**SUPERIOR COURT OF JUSTICE**

**COMMERCIAL LIST**

THE HONOURABLE            )        WEDNESDAY, THE 8TH DAY OF
                          )
MR. JUSTICE FARLEY        )        FEBRUARY, 2006

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS
AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

### ORDER

THIS **MOTION** made by Grace Canada, Inc. (hereinafter referred to as the "Applicant"), for an Order:

(a)    abridging the time for service of this motion;

(b)    appointing Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP (the "Representative Counsel") to act as representative counsel in these proceedings on behalf of all persons who have, or at any time in the future may have a claim, arising out of or in any way connected to damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of Zonolite attic insulation products in Canada ("Canadian Claimants") by the Applicant or any of W.R. Grace & Co. and all of its subsidiaries (the "U.S. Debtors") as well as certain other Affiliated Entities (as defined in the order of the United States Bankruptcy Court (the "U.S. Court") made on January 22, 2002, as amended);

DOCSTOR: 1052578\4

(c)    declaring that the Representative Counsel's powers shall include but not be limited to:

    (i)    representing the interests of Canadian Claimants in these proceedings;

    (ii)    appearing before this Honourable Court in these proceedings and applying to this Honourable Court for advice and directions from time to time;

    (iii)    seeking to appear or have an agent seek to appear before the U.S. Court in the context of the U.S. Debtors' Chapter 11 cases (the "Chapter 11 Cases"); and

    (iv)    negotiating on behalf of the Canadian Claimants with the Applicant, The Attorney General of Canada (Her Majesty the Queen in Right of Canada) (the "Crown"), the U.S. Debtors, the Affiliated Entities and any other person or entity;

(d)    declaring that Canadian Claimants shall be responsible for the fees and disbursements of the Representative Counsel subject to further order of this Honourable Court;

(e)    that any person affected by this Order (an "Affected Person") shall be entitled to apply to this Honourable Court for relief from time to time;

(f)    discharging Pierre Le Bourdais as information officer in these proceedings and appointing Richard C. Finke as information officer in these procedures; and

(g)    such further relief as this Honourable Court deems appropriate,

-3-

002: ٩

was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING,** the Applicant's Notice of Motion, the affidavit of Richard Finke sworn January 31, 2006, the affidavit of Raven Thundersky ("Thundersky") sworn February 1, 2006, the affidavit of Yves Lauzon sworn February 3, 2006 and the affidavit of Merv Nordick sworn February 6, 2006, and on hearing the submissions of counsel for: (a) the Applicant; (b) Association Des Consommatuers Pour La Qualité Dans La Construction and Jean-Charles Dextras, Viviane Brosseau and Léotine Roberge-Turgeon; (c) the Crown; (d) Thundersky et. al.; and (e) Merv Nordick and Ernest Spencer et. al., and upon being advised that no other person has appeared on this date or served and filed responding materials on this motion although duly served and on reading the affidavit of service of Monique Massabki sworn February 2, 2006:

1.      **THIS COURT ORDERS** that the time for service of the Applicant's Notice of Motion and Motion Record in support of this Motion be and it is hereby abridged such that the Motion is properly returnable today, and, further, that any requirement for service of the Notice of Motion and of the Motion Record upon any interested party, other than the parties herein mentioned, is hereby dispensed with.

2.      **THIS COURT ORDERS** that Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP be appointed as representative counsel, in these proceedings on behalf of all Canadian Claimants.

3.      **THIS COURT ORDERS** that the Representative Counsel's power shall include but not be limited to:

        (a)      representing the interests of Canadian Claimants in these proceedings;

- 4 -

0021

(b)     appearing before this Honourable Court in these proceedings and applying to this
        Honourable Court for advice and directions from time to time;

(c)     seeking to appear or have an agent seek to appear before the U.S. Court in the
        context of the Chapter 11 Cases; and

(d)     negotiating on behalf of the Canadian Claimants with the Applicant, the Crown,
        the U.S. Debtors, the Affiliated Entities and any other person or entity.

4.      **THIS COURT ORDERS** that Canadian Claimants shall be responsible for the fees and
disbursements of the Representative Counsel subject to further order of this Honourable Court.

5.      **THIS COURT ORDERS** that any Affected Person shall be entitled to apply to this
Honourable Court for relief from time to time.

6.      **THIS COURT ORDERS** that Pierre Le Bourdais be and is hereby discharged as
information officer in these proceedings and Richard C. Finke is hereby appointed information
officer in these proceedings.

JOSEPH P VAN TASSEL
REGISTRAR
ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

FEB 0 9 2006

PER/PAR

002 9

Court File No: 01-CL-4081

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC

*ONTARIO*
SUPERIOR COURT OF JUSTICE

Proceeding commenced at Toronto

ORDER

**OGILVY RENAULT LLP**
Barristers & Solicitors
Suite 3800, PO Box 84
Royal Bank Plaza, South Tower

200 Bay Street
Toronto, Ontario  M5J 2Z4

**DERRICK C. TAY**
LSUC #21152A
Tel:     416.216.4832
Fax:    416.216.3930

**ORESTES PASPARAKIS**
LSUC # 36851T
Tel: 416.216.4815
Fax: 416.216.3930

Solicitors for the Applicant

26

Court File No. 01-CL-4081

## ONTARIO

### SUPERIOR COURT OF JUSTICE

### COMMERCIAL LIST

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'
CREDITORS ARRANGEMENT ACT, R.S.C.* 1985, c. C-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

## AMENDED AND RESTATED CDN ZAI MINUTES OF SETTLEMENT

PREAMBLE

1.    The Parties to these Amended and Restated CDN ZAI Minutes of Settlement (the "Amended and Restated Minutes") agree:

      (a)    to be bound by the terms herein; and

      (b)    that the Amended and Restated Minutes supersede and replace the Minutes of Settlement dated September 2, 2008 (the "Original Settlement").

2.    Capitalized terms used herein and not otherwise defined have the meaning ascribed to them in Appendix "A".

BACKGROUND AND PURPOSE

3.    Grace Canada and Grace, along with certain other Grace Parties, have been variously named as defendants in the Canadian actions listed in Appendix "B" (the "Actions").

_ _ _ _27

2

In the Actions, the plaintiffs seek damages for, *inter alia*, CDN ZAI Claims.

4.    Pursuant to an order of the CCAA Court dated November 15, 2005, a Modified Preliminary Injunction granted by the U.S. Court was recognized in Canada and the Actions were stayed.

5.    Pursuant to an order of the CCAA Court dated February 8, 2006, Lauzon Belanger S.E.N.C.R.L. and Scarfone Hawkins LLP were appointed as CCAA Representative Counsel to represent the interests of, *inter alia*, CDN ZAI Claimants in Canada. As such, CCAA Representative Counsel had and continues to have the authority to enter into the Original Settlement and the Amended and Restated Minutes.

6.    On October 17, 2008, the CCAA Court approved the Original Settlement (the "Canadian Settlement Approval"). The U.S. Court was advised of the Original Settlement on October 20, 2008.

7.    Pursuant to its terms, the Original Settlement is null and void because the U.S. Confirmation Order was not obtained by October 31, 2009.

8.    The purpose of the Amended and Restated Minutes is to modify the Original Settlement to extend its deadline and to make other appropriate changes in order to provide for the full and final resolution of all CDN ZAI Claims brought against the Grace Parties.

NO ADMISSION OF LIABILITY

9.    Grace Canada and Grace, in agreeing to the Amended and Restated Minutes, do not admit liability of any kind in relation to CDN ZAI Claims. The Parties acknowledge that Grace Canada and Grace are entering into these Amended and Restated Minutes for settlement purposes only and that nothing in the Amended and Restated Minutes

3

constitutes an admission by the Grace Parties that they have any liability under Canadian or U.S. law on account of the presence of or exposure to ZAI or that any person who has owned or occupied a dwelling unit in Canada with ZAI has any valid claim against the Grace Parties under Canadian or U.S. law.  By entering into the Amended and Restated Minutes, Grace Canada and Grace are not waiving any of their defences to liability.  The Parties further acknowledge that Grace Parties who are not signatories hereto have not waived any of their defences to liability.

10.    CCAA Representative Counsel, on behalf of the CDN ZAI Claimants, agrees that it will not publicly disparage, impugn or malign the acts or omissions of any of the other Parties or the Grace Parties who are not signatories hereto with respect to CDN ZAI Claims.

**TERMS OF SETTLEMENT WITH GRACE PARTIES**

11.    On the Effective Date (as defined in the First Amended Joint Plan) and pursuant to the First Amended Joint Plan, Grace shall transfer to the Asbestos PD Trust (as defined in the First Amended Joint Plan) and the Asbestos PD Trust shall immediately transfer to the CDN ZAI PD Claims Fund, the following:

(a)    in the event that the U.S. Confirmation Order is entered by the U.S. Court by June 30, 2010, the amount of eight million, ninety-five thousand, six hundred and thirty-two dollars and forty-four cents Canadian (CDN$8,095,632.44);

(b)    in the event that the U.S. Confirmation Order is entered by the U.S. Court after June 30, 2010 but on or before December 31, 2010, the amount of eight million, five hundred ninety-five thousand, six hundred and thirty-two dollars and forty-four cents Canadian (CDN$8,595,632.44); and

4

    (c)    the amount contributed to the CDN ZAI PD Claims Fund pursuant to either scenario (a) or (b) above shall be the **"Grace Funds"**.

12.    Grace shall provide in its First Amended Joint Plan for the creation of a separate class of CDN ZAI PD Claims and for the establishment of the CDN ZAI PD Claims Fund, which shall administer and make payments in respect of CDN ZAI PD Claims in accordance with the terms of these Amended and Restated Minutes.

13.    Grace shall provide in its First Amended Joint Plan that any CDN ZAI PI Claimant shall be entitled to file his or her claim against the Asbestos Trust to be created for asbestos personal injury claims pursuant to the First Amended Joint Plan, the Trust Agreement and the TDP ("Asbestos Trust", "Trust Agreement" and "TDP" are as defined in the First Amended Joint Plan and exhibits thereto), and shall be entitled to payments as provided thereunder. CDN ZAI PI Claimants shall be entitled to the same rights as all other Asbestos PI Claimants (as defined in the First Amended Joint Plan) to recover legal fees and expenses as part of their claims against the Asbestos Trust established for payment of Asbestos PI Claims (as defined in the First Amended Joint Plan) pursuant to the First Amended Joint Plan.

14.    The vote which the CCAA Representative Counsel made pursuant to the Original Settlement in favour of the First Amended Joint Plan shall constitute a vote pursuant to these Amended and Restated Minutes of Settlement in favour of the First Amended Joint Plan. Further, on behalf of CDN ZAI Claimants, CCAA Representative Counsel shall, in any future vote, vote in favour of the First Amended Joint Plan incorporating the Amended and Restated Minutes.

30

5

15.    Upon execution of the Amended and Restated Minutes, Grace shall, as soon as reasonably practicable:

(a) .    advise the U.S. Court of these Amended and Restated Minutes;

(b)    revise the First Amended Joint Plan to be consistent with these Amended and Restated Minutes;

(c)    bring a motion in the CCAA Court for an order:

(i)    approving these Amended and Restated Minutes;

(ii)    providing that the vote which the CCAA Representative Counsel made pursuant to the Original Settlement in favour of the First Amended Joint Plan shall constitute a vote pursuant to these Amended and Restated Minutes of Settlement in favour of the First Amended Joint Plan;

(iii)    authorizing CCAA Representative Counsel to vote as proxy and power of attorney for CDN ZAI Claimants in any future vote on the First Amended Joint Plan;

(iv)    providing for a variation of the Canadian Settlement Approval, and in particular the deletion of paragraphs 7(i) and 8 thereof, pursuant to which CCAA Representative Counsel shall be permitted, on behalf of the CDN ZAI PI Claimants, to pursue claims against the Crown even if the Crown raises, by way of contribution, indemnity or otherwise, CDN ZAI PI Claims;

6

> (v) providing for, on the Effective Date; (A) releases in favour of the Grace Parties from the CDN ZAI Claimants of all claims and causes of action of any kind whatsoever relating to CDN ZAI Claims; (B) the discharge and extinguishment of all CDN ZAI Claims against the Grace Parties (collectively, the "Releases"); and (C) a stay of the Actions until the Actions are amended to remove the Grace Parties as named defendants as provided for herein; and
>
> (vi) addressing all other matters required in order to implement these Amended and Restated Minutes.

16. Grace shall consent to and support CCAA Representative Counsel's application seeking appointment as special counsel for CDN ZAI Claimants in the U.S. proceedings (the "Special Counsel Application") retroactively to September 1, 2008 and going forward to the date of the U.S. Confirmation Order.

17. CCAA Representative Counsel shall make application to the U.S. Court for approval and payment of CCAA Representative Counsel's reasonable fees and expenses (including matters relating to the Original Settlement, the Canadian Settlement Approval, the CDN ZAI PD Claims Notice Program, the Amended and Restated Minutes of Settlement, communication with CDN ZAI Claimants, the U.S. Confirmation Order and any other matter relating to the interests of CDN ZAI Claimants in contribution and support of the First Amended Joint Plan) in accordance with the applicable provisions of the U.S. Bankruptcy Code, the U.S. Bankruptcy Rules, the Local Rules of the U.S. Court and any other applicable procedures and orders of the U.S. Court.

32

7

**CONDITIONS OF FUNDING**

18. The Grace Parties' obligation to contribute the Grace Funds, as set out in paragraph 11 herein, is subject to the following conditions (the **"Grace Funding Conditions"**):

    (a)    an order of the CCAA Court pursuant to paragraph 15(b) herein shall have been obtained;

    (b)    the First Amended Joint Plan shall incorporate the terms of these Amended and Restated Minutes and such other matters required to implement the Amended and Restated Minutes and shall include, in particular, the discharge and extinguishment of all CDN ZAI Claims against the Grace Parties;

    (c)    all conditions precedent to the Effective Date in the First Amended Joint Plan implementation shall be satisfied, including the entering or the issuance, as applicable, of:

        (i)    a Final Order (as defined in the First Amended Joint Plan) in respect of the U.S. Confirmation Order; and

        (ii)    a final order of the CCAA Court, or an appellate Canadian court if applicable, recognizing and implementing the U.S. Confirmation Order in Canada.

33

8

19.    Upon payment of the Grace Funds:

(a)    All CDN ZAI Claims against the Grace Parties shall be forever disallowed and expunged;

(b)    CCAA Representative Counsel shall cause the Actions to be amended such that no CDN ZAI Claims are asserted against the Grace Parties as named defendants; and

(c)    CDN ZAI Claimants shall no longer have recourse in respect of CDN ZAI Claims against the Grace Parties, but shall have recourse only to the CDN ZAI PD Claims Fund or the Asbestos Trust. Thereafter, none of the Grace Parties shall have any liability for the CDN ZAI Claims whatsoever, and, for greater certainty, no CDN ZAI Claimant shall have any further recourse against any of the Grace Parties.

20.    Unless otherwise agreed to by the Parties hereto, in the event of any of the following:

(a)    CCAA Representative Counsel's Special Counsel Application is not approved by the U.S. Court;

(b)    an order of the CCAA Court pursuant to paragraph 15(b) herein is not obtained;

(c)    the U.S. Confirmation Order is not entered by the U.S. Court on or before December 31, 2010; or

9

(d)     the First Amended Joint Plan, as confirmed, does not reflect the terms of

these Amended and Restated Minutes,

the Amended and Restated Minutes shall be considered null and void.

**CLAIMS AGAINST THE CROWN**

21.   Nothing in these Amended and Restated Minutes precludes CDN ZAI PI Claimants from

asserting claims against the Crown, whether now or in the future, for injuries suffered

directly or indirectly from the manufacture, sale or distribution of ZAI products in Canada.

For greater certainty,

(a)     claims may be pursued by CDN ZAI PI Claimants against the Crown even

though they may give rise to CDN ZAI PI Claims by the Crown for

contribution, indemnity or otherwise, provided that such CDN ZAI PI

Claims by the Crown shall be channeled to the Asbestos Trust by the First

Amended Joint Plan; and

(b)     no claims may be pursued by CDN ZAI PD Claimants against the Crown

that may give rise to CDN ZAI PD Claims.

**USE OF FUNDS IN THE CDN ZAI PD CLAIMS FUND**

22.   The CDN ZAI PD Claims Fund shall be used for the following purposes and the funds

shall be distributed as follows:

(a)     As soon as reasonably practicable following the Effective Date, two million

Canadian dollars (CDN$2,000,000) shall be paid to CCAA Representative

Counsel in respect of legal fees and disbursements;

10

(b)     As soon as reasonably practicable following the Effective Date, two hundred
fifty thousand Canadian dollars (CDN$250,000) shall be set aside by the
Fund to pay CCAA Representative Counsel for future legal fees and
disbursements incurred from the date of the U.S. Confirmation Order for the
purposes of carrying out its duties in respect of the CDN ZAI PD Claims
Notice Program and the CDN ZAI PD Claims Procedure, which legal fees
and disbursements shall be paid upon application to and approval by the
CCAA Court;

(c)     The Fund shall be authorized to pay a Claims Administrator up to eight
hundred fifty thousand Canadian dollars (CDN$850,000) for fees and
disbursements incurred for the purposes of administering the CDN ZAI PD
Claims Procedure and the Fund;

(d)     The Fund shall be authorized to pay up to one hundred fifty thousand
Canadian dollars (CDN$150,000) to a qualified expert to be jointly selected
by CCAA Representative Counsel and the Claims Administrator to provide
expert and consulting services to assist in establishing procedures for the
identification of ZAI, remedial measures that might be undertaken by a CDN
ZAI PD Claimant and the development of the CDN ZAI PD Claims
Procedure (the "Qualified Expert"); and

(e)     The remainder of the monies in the Fund plus interest earned therein and any
monies not used for the purposes outlined in sections (b)-(d) above, shall be
available to be distributed to the holders of Allowed CDN ZAI PD Claims in
full and complete satisfaction and payment of their CDN ZAI PD Claims.

11

### CDN ZAI PD BAR DATE

23.    Notwithstanding the CDN ZAI PD Claims Bar Date of August 31, 2009 established by

the U.S. Court, all CDN ZAI PD Claimants who have filed a proof of claim by December

31, 2009, shall be entitled to seek compensation from the CDN ZAI PD Claims Fund,

which entitlement shall be determined in accordance with the CDN ZAI PD Claims

Procedure.

24.    Any CDN ZAI PD Claim that is not filed in accordance with the CDN ZAI PD Claims

Bar Date or paragraph 23 herein, shall be forever barred and expunged.

### CDN ZAI PD CLAIMS PROCEDURE

25.    CCAA Representative Counsel and the Claims Administrator shall develop and

implement the CDN ZAI PD Claims Procedure. The CDN ZAI PD Claims Procedure

shall include the following:

(a)    CDN ZAI PD Claims shall be submitted initially through the proof of claim

form that is part of the CDN ZAI PD Claims Notice Program. The CDN ZAI

PD Claims Fund may then require CDN ZAI PD Claimants with Timely

CDN ZAI PD Claims (as defined in the First Amended Joint Plan), or claims

filed in accordance with paragraph 23 herein, to submit a further

questionnaire, a sample of the insulation that forms the basis of the claim or

other necessary information in order to determine whether such claim should

be allowed and paid by the Fund;

(b)    In order to qualify as an Allowed CDN ZAI PD Claim, a CDN ZAI PD

Claimant must prove on a summary basis that:

12

(i)    the dwelling unit for which the CDN ZAI PD Claimant is making a claim was or is insulated with ZAI;

(ii)   the CDN ZAI PD Claimant undertook measures and incurred or assumed costs to identify and prove the existence of ZAI, and to remediate the dwelling unit to avoid possible adverse effects to occupants and others of exposure to ZAI;

(iii)  the CDN ZAI PD Claimant incurred or assumed the costs of identifying ZAI and/or the costs of other measures undertaken to remediate the dwelling unit to avoid possible adverse effects of exposure to ZAI; and

(iv)   any other criteria as agreed upon by the CCAA Representative Counsel and the Claims Administrator, with the benefit of advice and consultation from the Qualified Expert as necessary, have been met.

(c)    Each CDN ZAI PD Claim shall be categorized, administered, quantified and paid, if applicable, through the CDN ZAI PD Claims Procedure as follows:

(i)    Category I - NO ZAI AND/OR NO REMEDIAL MEASURES -- NO COMPENSATION - the CDN ZAI PD Claimant fails to prove the existence of ZAI and/or fails to prove that costs were incurred or assumed to identify and/or fails to prove that costs were incurred or assumed to remediate the dwelling unit to avoid possible adverse effects to occupants and others of exposure to ZAI. All Category I claims will be disallowed by the Claims Administrator. Category I claims shall be disallowed in full;

13

(ii)     Category II - ZAI IDENTIFICATION AND MINOR REMEDIAL
MEASURES -- 50% OF THE COSTS OF REMEDIAL MEASURES
UP TO CDN $300.00 - the CDN ZAI PD Claimant proves the
existence of ZAI, proves that costs were incurred or assumed to
identify and prove the existence of ZAI, and proves that costs were
incurred or assumed for minor remedial measures undertaken to the
dwelling unit to avoid possible risks of exposure to ZAI to occupants
and others;

(iii)    Category III - ZAI IDENTIFICATION AND MAJOR REMEDIAL
MEASURES -- 50% OF THE COSTS OF REMEDIAL MEASURES
UP TO CDN$600.00 - the CDN ZAI PD Claimant proves the
existence of ZAI, proves that costs were incurred or assumed to
identify and prove the existence of ZAI, and proves that costs were
incurred or assumed for major remedial measures undertaken to
remediate the dwelling unit to avoid possible adverse effects of
exposure to ZAI to occupants and others;

(d)    The CCAA Representative Counsel and the Claims Administrator shall act
reasonably, in consultation with the Qualified Expert as necessary, to
establish and agree upon such other criteria to determine what is necessary to
satisfy and establish an Allowed CDN ZAI PD Claim, including, but not
limited to establishing specific criteria to determine what constitutes minor
or major remedial measures.

14

26. Payments on Allowed CDN ZAI PD Claims shall be as provided for in paragraph 25 herein. However:

    (a)    in the event the Fund does not have enough monies to pay the maximum amount recoverable for Allowed CDN ZAI PD Claims, each CDN ZAI PD Claim shall be paid based upon a pro-rated distribution of each claim in relation to all Allowed CDN ZAI PD Claims made against the CDN ZAI PD Claims Fund. For greater certainty, aside from the Grace Funds, under no circumstances shall the Grace Parties have an obligation to contribute further monies to the Fund; and

    (b)    if the Fund is not exhausted after the administration of the CDN ZAI PD Claims Procedure is complete, such funds shall be used:

        (i)    first, to make a further allowance to holders of Allowed CDN ZAI PD Claims on a pro rata basis up to the maximum amount of the Allowed ZAI PD Claim; and

        (ii)    thereafter, if the Fund has not been exhausted as a result of the further allowance in paragraph 25(b) herein, for such charitable or education purposes as the Claims Administrator, in consultation with CCAA Representative Counsel, deems appropriate.

**ENTIRE AGREEMENT**

27. Each of the Parties acknowledges and agrees that these Amended and Restated Minutes are:

    (a)    subject only to the conditions outlined herein; and

40

15

(b)    not subject to or conditional upon a settlement of any claims related to ZAI
outside of Canada being reached by the Grace Parties, nor shall the terms
herein be affected by any such settlement.

**W.R. GRACE & CO.** on its own behalf and
on behalf of the other debtors in possession
in the chapter 11 cases

Per: _Mark A. Shelnitz_

Name: Mark A. Shelnitz
Title: VP, Gen. Counsel & Secretary

Per: _____

Name:
Title:


**GRACE CANADA, INC.**

Per: _W B McGowan_

Name: W. Brian McGowan
Title: President

Per: _____

Name:
Title:


**SCARFONE HAWKINS LLP** on its own
behalf and, in its capacity as representative
counsel, on behalf all holders of CDN ZAI
Claims

Per: _____

Name: David Thompson
Title: Partner

Per: _____

Name:
Title:

41

16

**LAUZON BÉLANGER S.E.N.C.R.L.** on its
own behalf and, in its capacity as
representative counsel, on behalf all holders
of CDN ZAI Claims

Per: _____

Name: Michel Bélanger

Title: Lawyer November 16, 2009

Per: _____

Name:

Title:

17

## APPENDIX "A"

### DEFINED TERMS

"**Allowed CDN ZAI PD Claims**" means Timely CDN ZAI PD Claims allowed by the Claims Administrator pursuant to the CDN ZAI PD Claims Procedure;

"**Canadian Settlement Approval**" means the Order of the CCAA Court of October 17, 2008 as described in paragraph 6;

"**CCAA Court**" means the Ontario Superior Court of Justice;

"**CCAA Representative Counsel**" means Lauzon Belanger S.E.N.C.R.L. and Scarfone Hawkins LLP in their capacity as representative counsel to the Canadian ZAI Claimants pursuant to an Order of the CCAA Court made on February 8, 2006;

"**CDN ZAI Claimants**" means CDN ZAI PD Claimants and CDN ZAI PI Claimants;

"**CDN ZAI Claims**" means Canadian ZAI PI Claims and Canadian ZAI PD Claims;

"**CDN ZAI PD Claimants**" means a holder of a CDN ZAI PD Claim;

"**CDN ZAI PD Claims**" means claims arising out of or in any way connected to property damages arising, directly or indirectly, from the manufacture, sale or distribution of ZAI in Canada as more particularly defined in the First Amended Joint Plan and includes, without limitation all past, present and future claims against the Grace Parties described in or arising from the Actions, including any ZAI PD Claims asserted or to be asserted by the Crown;

"**CDN ZAI PD Claims Bar Date**" means the date set out in the CDN ZAI PD Claims Notice Program by which CDN ZAI PD Claims must be filed in order to qualify as Timely CDN PD Claims or else be forever barred and extinguished;

"**CDN ZAI PD Claims Fund**" or the "**Fund**" means the fund to be established for the administration, adjudication and distribution of funds with respect to CDN ZAI PD Claims;

"**CDN ZAI PD Claims Notice Program**" means the broad-based media program for CDN ZAI PD Claims currently contained within the Bar Date and Notice program Grace filed with the Bankruptcy Court on March 18, 2008 [Docket No. 18328] as amended on April 10, 2008 [Docket No. 18495] and May 23, 2008 [Docket No. 18784];

"**CDN ZAI PD Claims Procedure**" means procedures established by the Claims Administrator and the CCAA Representative Counsel for the Fund to review, administer, adjudicate and pay Allowed CDN ZAI PD Claims as appropriate;

"**CDN ZAI PI Claimants**" means holders of CDN ZAI PI Claims;

"**CDN ZAI PI Claims**" means claims arising out of or in any way connected to personal injuries arising, directly or indirectly, from the manufacture, sale or distribution of ZAI in

18

Canada and as more particularly defined in the First Amended Joint Plan and includes, without limitation, all past, present and future claims against the Grace Parties described in or arising from the Actions set out in Appendix "B";

"Claims Administrator" means a person appointed by CCAA Representative Counsel and approved by the U.S. Court to administer the Fund in accordance with this Settlement and any subsequent Fund administration agreement or other related document;

"Crown" means the Attorney General of Canada (Her Majesty the Queen in Right of Canada);

"First Amended Joint Plan" means Grace's First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code filed in Grace's Chapter 11 cases or any subsequent version thereof;

"Grace" means W. R. Grace & Co. and its 61 U.S. subsidiaries filed under the Chapter 11 cases;

"Grace Canada" means Grace Canada, Inc.;

"Grace Parties" means Grace, Sealed Air (Canada) Co./CIE, Sealed Air Corporation, Cryovac, Inc. and Grace Canada and each of their parent corporations, subsidiary corporations, joint ventures, affiliates, sister corporations, and any and all of their past, present, and future agents, servants, officers, directors, employees, predecessors, successors, assigns, heirs, executors, administrators, legal representatives, beneficiaries and insurers;

"Modified Preliminary Injunction" means the Order granted to Grace on January 22, 2002, that provided injunctive relief to affiliated entities;

"Original Settlement" means the minutes of settlement between the Parties dated September 2, 2008.

"Parties" means CCAA Representative Counsel, Grace and Grace Canada;

"U.S. Confirmation Order" means the Confirmation Order as defined in the First Amended Joint Plan.

"U.S. Court" means the United States Bankruptcy Court for the District of Delaware;

"ZAI" means Zonolite Attic Insulation, which is loose-fill, non-roll vermiculite home attic insulation, which may contain naturally occurring asbestos manufactured and sold by the Grace Parties and installed in homes and buildings that are located in Canada.

44

19

## APPENDIX "B"

### LIST OF ACTIONS IN CANADA

1.  Association des Consommateurs pour la Qualite dans la Construction,

    Viviane BROSSEAU & Leontine ROBERGE-TURGEON v. Attorney General of
    Canada; Superior Court of Quebec; court no. 500-06-000286-050

2.  NORDICK, Merv et al v. Attorney General of Canada, W.R. Grace & Co. et al.;
    Federal Court of Canada; court no. T-1503-05

3.  THUNDERSKY, Raven and BRUCE, Rebecca v. the Attorney General of Canada,
    W.R. Grace & Co. et al.; Manitoba Queen's Bench; court no. CI04-01-39818

4.  Association des Consommateurs pour la Qualite dans la Construction et Jean-Charles
    DEXTRAS v. Grace Canada Inc. and Attorney General of Canada; Superior Court of
    Quebec; court no. 500-06-000258-042

5.  NORDICK, Merv et al v. Attorney General of Canada, W.R. Grace & Co. et al.;
    Superior Court of Quebec; court no. 550-06-000020-058

6.  NORDICK, Merv et al v. Attorney General of Canada, W.R. Grace & Co. et al.;
    Saskatchewan Queen's Bench; court no. 696-2005

7.  NORDICK, Merv et al v. Attorney General of Canada, W.R. Grace & Co et al.;
    Alberta Queen's Bench; court no. 0501-07100

8.  NORDICK, Merv et at v. Attorney General of Canada, W.R. Grace & Co et al.; B.C.
    Queen's Bench; court no. L-052352

9.  SPENCER, Ernest et at. v. Attorney General of Canada, W.R. Grace & Co et al.;
    Ontario Superior Court of Justice; court no. 5-CV-32367

10. SPENCER, Ernest et al. v. Attorney General of Canada, W.R. Grace & Co et al.;
    Manitoba Queen's Bench; court no. CI-05-01-44628

11. Her Majesty in Right of the Province of Manitoba v. Attorney General of Canada,
    W.R. Grace & Co et al.; Manitoba Queen's Bench; court no. CI-05-01-41069

CITATION: Grace Canada, Inc., 2010 ONSC 161
COURT FILE NO.: 01-CL-4081
DATE: 20100108

SUPERIOR COURT OF JUSTICE – ONTARIO

(COMMERCIAL LIST)

RE:          IN THE MATTER OF s.18.6 OF *THE COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

             AND IN THE MATTER OF Grace Canada, Inc.

BEFORE:      MORAWETZ J.

COUNSEL:     Derrick C. Tay and Orestes Pasparakis, for Grace Canada, Inc.

             David Thompson and Matthew G. Moloci, Representative Counsel for the Canadian ZAI Claimants

             Jacqueline Dais-Visca and Nathalie Drouin, for The Attorney General of Canada

HEARD:       December 8, 2009

## ENDORSEMENT

[1]    On December 13, 2009, I endorsed the record as follows:

> The motion was heard December 8, 2009. The parties indicated that, in view of the ongoing Chapter 11 proceedings, it would be desirable for me to rule on this motion at the earliest time possible, even if reasons were to follow at a later date. It is my understanding that there is a status hearing in the U.S. court scheduled for December 14, 2009, which again underscores the importance of providing a decision today.

> The motion of the Applicant is granted. Amended Settlement approved. Reasons will follow.

[2]    These are those reasons.

[3]    Grace Canada, Inc. ("Grace Canada" and with W. R. Grace & Co. and its 61 U.S. subsidiaries filed under Chapter 11 cases (the "U.S. Debtors"), "Grace") brought this motion to seek approval of the Amended and Restated CDN ZAI Minutes of Settlement (the "Amended Settlement").

- Page 2 -

[4]    On October 17, 2008, I approved the Original Settlement which resolved all claims against Grace relating to the manufacture and sale of ZAI in Canada.

[5]    By its terms, the Original Settlement was void if Grace did not obtain the U.S. Confirmation Order by October 31, 2009.  The U.S. Confirmation Order was not obtained by that date and consequently the Original Settlement became void.

[6]    The Amended Settlement extends the Original Settlement on terms.  In summary, those terms are:

    (a)    the deadline for the U.S. Confirmation Order is now December 31, 2010;

    (b)    Grace agrees to increase its contribution to the CDN ZAI PD Claims Fund;

    (c)    the parties agree that the CDN ZAI PD Claims Fund may accept CDN ZAI PD Claims through to December 31, 2009;

    (d)    Grace agrees to support the application of Representative Counsel in the U.S. Court for their appointment as special counsel for CDN ZAI Claimants, which will entitle them to apply to the U.S. Court to have the U.S. Debtors pay certain of their legal fees; and

    (e)    CDN ZAI PI Claimants may pursue the Crown for CDN ZAI PI Claims provided that any subsequent claims by the Crown for contribution and indemnity are channelled to the Asbestos Trust (as defined in the First Amended Joint Plan).

[7]    Counsel to Grace submits that the Amended Settlement is substantially similar to the Original Settlement, the only material difference relates to the ability of ZAI PI Claims to pursue claims against the Crown.  Counsel further submitted that while the Crown benefited under the Original Settlement, that benefit was gratuitous since the Crown refused to participate in the settlement.  Further, the Original Settlement is now void and the Crown currently has no protection from CDN ZAI Claims.

[8]    Counsel to Grace further submits that pursuant to the Amended Settlement:

    (a)    the Crown is entirely protected from CDN ZAI PD Claims (again gratuitously); and

    (b)    CDN ZAI PI Claimants will be able to pursue CDN ZAI PI Claims even though they may give rise to claims by the Crown for contribution, indemnity or otherwise provided that such CDN ZAI PI Claims by the Crown are channelled to the Asbestos Trust by the First Amended Joint Plan.

[9]    Counsel further contends that the term summarized at [8](b) immediately above is fair and reasonable:

    (a)    as CDN ZAI PI Claimants may now pursue claims against the Crown;

- Page 3 -

(b)     as any resulting claims by the Crown for contribution or indemnity are
        preserved by being channelled to the Asbestos Trust and will be treated in the
        same manner as all other Asbestos PI Claims;

(c)     since, if the Crown believes that the channelling injunction unfairly prejudices
        its interests, that is an issue to be addressed by the U.S. court; and

(d)     as, in any event, it is unclear to what extent there are, in fact, CDN ZAI PI
        Claims.  To date, after an enormous amount of publicity, only one family (the
        "Thundersky Family") appear to assert ZAI PI Claims.  As has been set out in
        earlier filings, Grace believes it has a complete defence to the Thundersky
        Family claims.

[10]    Counsel to Grace also submits that the Amended Settlement provides tangible benefits to
all stakeholders in place of potentially prolonged litigation with uncertain outcome and that the
Amended Settlement is an important step towards the re-organization of Grace which has been
ongoing since April 2001.

[11]    The Crown takes a different view.

[12]    Counsel to the Crown submits that the Amended Settlement no longer releases CDN ZAI
PI Claims against the Crown for which the Crown could claim over against Grace ("Third Party
Release"), but rather "channels" the Crown contribution and indemnity claim to the Asbestos
Trust.  The Crown further submits that the Amended Settlement is not "substantially similar" to
the Original Settlement.  In addition, the time for "addressing" the fairness of the channelling
injunction has now passed as the Confirmation Hearing, subject to final legal argument in
January 2010, has concluded and it is therefore too late for the Crown to "address" the issue of
prejudice as an objection made within the context of the Confirmation Hearings.

[13]    Counsel to the Crown further submits that the Amended Settlement is neither fair nor
reasonable and ought not to receive court approval on the following grounds:

(a)     Conflict of Interest – The CCAA Representative Counsel generally, and the
        Lauzon Belanger firm in particular, are in a conflict of interest and have
        breached their obligations to act in the best interests of the Crown, a claimant
        on behalf of whom this Court has specifically approved them to represent, in
        negotiating a "restated" settlement that deliberately removes the Third Party
        Release in order to increase the number of claims available to the CDN PI
        Claimants against the Crown and increase their possible recovery while
        effectively barring the Crown's ability to seek contribution and indemnity
        against Grace;

(b)     The removal of the Third Party Release is unfair and prejudicial to the Crown:

        (i)     Detrimental Reliance:  the Crown relied upon this Court's approval of the
                Original Settlement and withdrew from active participation in the U.S.
                Proceedings to challenge the fairness and equity of the treatment of the
                Crown's contribution and indemnity claims in the Joint Plan and PI TDP

- Page 4 -

[Trust Distribution Procedures] and it now appears to be too late to participate in the Confirmation Hearings as the evidentiary portion of the hearings is now closed;

(ii)   Increased Litigation Costs and Decreased Recovery: Whereas the Crown, under the Original Settlement was exposed to only respond to alleged direct liability claims, if any, and was not going to have to participate in the U.S. proceedings at all, the Crown will now have to actively participate in litigating its contribution and indemnity claim against the PI in accordance with the PI TDP which procedures provide for a cap on amounts recoverable and preserve to Grace all defences to claims and other procedural hurdles that will create uncertainty and increased costs for the Crown and potentially leave the Crown without recovery against Grace for amounts paid to the CDN PI Claimants for which the Crown has no direct liability;

(iii)   Increase Procedural Uncertainty: There is a live issue as to whether the CDN PI Claimants must first litigate against the U.S. PI Trust or whether they can compel the Crown to litigate the class actions in Canada first. The Crown asserts that by filing claims in the U.S. bankruptcy proceedings, both CDN PI Claimants and the Crown have attorned to the jurisdiction of the U.S. court to resolve Grace's joint and several liability. Grace and the CCAA Representative Counsel, however, appear to be asserting that the Amended Settlement permits the CDN ZAI PI Claimants to litigate their claims in Canada against the Crown without Grace being a party and without procedural orders to ensure Grace's evidence will be made available for trial, thus leaving it to the Crown to litigate against the U.S. PI Trust in order to recover any amounts paid by the Crown on behalf of Grace's joint liability; and

(c)   ZAI PD Claimants in Canada Receive Less than U.S. ZAI PD Claimants -- Individual ZAI PD Claimants appear to be able to recover more from the U.S. ZAI PD Fund than CDN ZAI PD Claimants.

[14]   Counsel to the Crown submits that Grace's motion should be dismissed and requests the court to direct Grace and CCAA Representative Counsel to return to the bargaining table to reach a settlement that restores the Third Party Release as such an outcome is "fair and equitable" and consistent with the finding in the Original Settlement approval that the CCAA Representative Counsel have a duty to represent and therefore to protect the Crown's interest.

Preliminary Issue

[15]   In my view, there is one submission that can be disposed of summarily.

[16]   The Crown submits that Lauzon Belanger is specifically in a conflict of interest. The Crown takes the position that in 2009, after the Original Settlement was approved, counsel at the Department of Justice who had carriage of the file, left the Department of Justice and joined the

- Page 5 -

law firm of Lauzon Belanger. Counsel for the Crown wrote to Lauzon Belanger and received assurance that Lauzon Belanger would cease acting as CCAA Representative Counsel in respect to any and all matters relating to the Crown. The Crown submits that Mr. Belanger's affidavit, sworn December 4, 2009 in support of this motion is improper and a clear breach of Lauzon Belanger's agreement to withdraw from participation as CCAA Representative Counsel in respect of matters relating to the Crown.

[17]    Counsel to the Crown submits that all portions of Mr. Belanger's affidavit that attest to the "fairness" of the Amended Settlement should be struck.

[18]    It seems to me that although there may be an argument as to conflict with respect to the Lauzon Belanger firm, it should not result in an order striking out portions of Mr. Belanger's affidavit. The individual formerly employed by the Department of Justice has had no involvement in this matter while at Lauzon Belanger. Further, an ethical wall is in place at Lauzon Belanger and there is no suggestion that there has been any transfer of confidential information. In addition, there is no motion before the court to disqualify Lauzon Belanger. In my view, this issue does not go to the merits of the dispute and I see no basis, in these circumstances, to strike out certain portions of Mr. Belanger's affidavit.

Facts

[19]    Counsel to Grace summarized the facts at paragraphs 12 – 51 of his factum. Counsel to the Crown summarized the facts at paragraphs 7 – 32 of her factum. In addition, a summary of facts up to the time of the Original Settlement is reported at *Grace Canada Inc. (Re)* (2008), O.J. No. 4208.

[20]    I do not propose to comment further on the facts, unless it is necessary to do so in light of specific differences.

Issues

[21]    The issue is whether the Amended Settlement is fair and reasonable and ought to be approved.

[22]    The Amended Settlement contemplates a settlement of all CDN ZAI Claims, both CDN ZAI PI Claims and CDN ZAI PD Claims. In my view, the differences between the Amended Settlement and the Original Settlement have been fairly represented at paragraph 51 of the factum submitted by counsel to Grace:

51.    The key differences between the Amended Settlement and the Original Settlement are as follows:

(a)    Pursuant to the Original Settlement, the U.S. Confirmation Order was to be obtained by October 31, 2009. Pursuant to the Amended Settlement, the U.S. Confirmation Order is to be obtained by December 31, 2010;

(b)    Pursuant to the Original Settlement, Grace was to contribute CAD $6,500,000.00 million to a fund in respect of the administration, adjudication and

- Page 6 -

distribution of funds in respect of the CDN ZAI PD Claims Fund. Pursuant to the Amended Settlement, Grace is required to contribute CAD $8,095,632.44 or CAD $8,595,632.44, depending on the date the U.S. Confirmation Order is obtained:

(c)    Pursuant to the Original Settlement, Representative Counsel was not permitted to pursue CDN ZAI Claims against the Crown if the Crown could then raise, by way of contribution, indemnity or otherwise, CDN ZAI Claims against the Grace Parties. Pursuant to the Amended Settlement, Representative Counsel may pursue CDN ZAI PI Claims against the Crown provided that any subsequent claims by the Crown for contribution, indemnity or otherwise against the Grace Parties are channelled to the Asbestos Trust. Consistent with the Original Settlement, the Amended Settlement continues to prohibit Representative Counsel from pursuing CDN ZAI PD Claims against the Crown if such claims will result in a claim for contribution, indemnity or otherwise by the Crown against the Grace Parties;

(d)    Pursuant to the Amended Settlement, Grace will consent to and support an application by Representative Counsel for the appointment as special counsel for CDN ZAI Claimants in the U.S. Proceedings retroactively to September 1, 2008, and going forward to the date of the U.S. Confirmation Order. As a result of this appointment, Representative Counsel will be entitled to apply to have the U.S. Debtors pay their legal fees for this period. There was no similar provision in the Original Settlement; and

(e)    Pursuant to the Original Settlement, CDN ZAI PD Claimants were required to file a proof of claim on or before the CDN ZAI PD Claims Bar Date of August 31, 2009 in order to seek compensation from the CDN ZAI PD Claims Fund. Pursuant to the Amended Settlement, all CDN ZAI PD Claimants who file proofs of claim by December 31, 2009 shall be entitled to seek compensation from the CDN ZAI PD Claims Fund.

[23]    I am in agreement with the submissions of counsel to Grace as set out at paragraphs 52 and 53 of his factum. Specifically, it has already been determined that Representative Counsel have the authority to enter into the Amended Settlement on behalf of all CDN ZAI Claimants. See *Grace Canada Inc., supra*, at paragraph 32.

[24]    Further, it has also been determined that the court has the jurisdiction to approve settlements such as the Amended Settlement, including settlements with third party releases. See *Grace Canada Inc., supra*, at paragraphs 34 and 40 – 41.

[25]    In assessing whether to grant approval, the court should consider whether the Amended Settlement is fair and reasonable in all of the circumstances.

[26]    I determined that the Original Settlement was fair and reasonable. In doing so, I expressly referenced submission in Grace's factum dated September 25, 2008, which were attached at Schedule "C" to the factum on this motion.

- Page 7 -

[27]    Counsel to Grace submits that the Amended Settlement is a fair and reasonable resolution of the CDN ZAI Claims and that the Amended Settlement does not prejudice the Crown, the CDN ZAI PD Claimants or CDN ZAI PI Claimants.

[28]    Counsel also submits that the Amended Settlement is of critical importance to Grace and its ability to complete its restructuring in accordance with the First Amended Joint Plan as a resolution of the CDN ZAI Claims is a pre-condition to the First Amended Joint Plan.

[29]    Counsel also submits that the Amended Settlement is also of greater benefit to the key stakeholders:

    (a)    CDN ZAI PD Claimants will now have a larger monetary fund to claim against and the period in which they can file claims against Grace has been extended; and

    (b)    Any CDN ZAI PI Claimants will now have an ability to pursue the Crown for claims in respect of which the Crown can claim over against Grace, provided that such claims over are channelled to the Asbestos Trust.

[30]    Counsel to Grace addressed the issue of prejudice:

    (i)    Thunderksy Family

[31]    Grace submits that the Thundersky Family are the only known ZAI PI Claimants. Grace takes the position that the Thundersky Family cannot properly advance a claim in respect of ZAI as the claims are statute barred by virtue of the 30 year ultimate limitation period under the *Manitoba Limitation of Actions Act*. ZAI is alleged to have been installed in the Thundersky Family home in 1964. The Thundersky Family Claim was first made 40 years later in 2004.

[32]    Counsel to Grace further submits that, in any event, the Amended Settlement is more advantageous to ZAI PI Claimants as it provides some potential recourse against the Crown for claims for which the Crown is jointly liable whereas the Original Settlement did not.

[33]    The Thundersky Family took no position on this motion.

[34]    There is nothing on the record to indicate that there is any prejudice to the Thundersky Family arising out of the Amended Settlement.

    (ii)    Crown

[35]    The Crown objects to the motion for the reasons referenced at [12] and [13].

**CCAA Representative Counsel in a Conflict of Interest**

[36]    Counsel for the Crown submits that a unilateral decision by CCAA Representative Counsel to strip away the Third Party Release as part of the Amended Settlement constitutes a breach of their legal duty owed to the Crown and necessarily renders the Amended Settlement

- Page 8 -

unfair and unreasonable and is not in the best interests of the class members given the increased costs and uncertainty of litigating the joint liability issues that had previously been released.

[37]   Counsel to the Crown also submits that there was a deliberate targeting of the Crown in the removal of the specific provisions previously negotiated on behalf of the Crown providing for the Third Party Release and that this is evidence of a fundamental conflict of interest created by the CCAA Representative Order and that CCAA Representative Counsel can only properly discharge their legal and equitable duties owed to the Crown arising from the CCAA Representative Counsel Order by restoring the Third Party Release.

[38]   In my view, this submission is misguided.

[39]   By Order of Farley J. on February 8, 2006, Representative Counsel were appointed to act as the single representative on behalf of all CDN ZAI Claimants and to advocate their interests in the restructuring process.

[40]   No one has taken issue with the authority of Representative Counsel to represent all CDN ZAI Claimants in the U.S. court, this court or at any of the mediations connected with these proceedings.

[41]   The submission of the Crown is based on the premise that there has been a unilateral decision by CCAA Representative Counsel to strip away the Third Party Release. The Third Party Release is embedded in the Original Settlement. The Original Settlement is dead and the Third Party Release no longer exists. Representative Counsel have to deal with this reality. The mandate of Representative Counsel flows from the Order of February 8, 2006. To suggest that Representative Counsel can only properly discharge their legal and equitable duties by restoring the Third Party Release is, in my view, not supportable. The issue for consideration is whether the Amended Settlement is fair and reasonable in all the circumstances. I have not been persuaded of the necessity to require a Third Party Release to be part of any settlement before it can be considered to be fair and reasonable.

## Crown Detrimental Reliance on Third Party Release

[42]   The Crown submits that in reliance upon the Original Settlement and the specific approval of the Third Party Releases, the Crown withdrew an objection to the U.S. Joint Plan Disclosure Statement on the basis that the Original Settlement rendered that objection, and any further challenges to the Joint Plan, moot. The Crown further takes the position that the U.S. Joint Plan Confirmation Hearings have now concluded and it appears to be too late for the Crown to object to the PI TDP or to object to other treatment in the Joint Plan of the Crown contribution and indemnity claims.

[43]   I have not been persuaded by this argument. In reply, Mr. Tay submitted that all parties were aware that the Original Settlement had a "drop dead date" of October 31, 2009. As this date approached, it was apparent the U.S. Confirmation Order had not been obtained. As such, the risk of the Original Settlement becoming void was known.

- Page 9 -

[44]   Mr. Tay further submitted that Grace cannot be held responsible for the Crown not acting and that there was no basis for the Crown to have placed such reliance on the Original Settlement.

[45]   I agree with the submission of Mr. Tay. The parties involved are all sophisticated and they knew the consequences of failure to obtain the U.S. Confirmation Order by October 31, 2009. The reliance placed on the Original Settlement by the Crown was, in my view, unreasonable in the circumstances and does not alter the fact that the merits of the Amended Plan should be considered in light of the reality that the Original Settlement no longer exists.

## CDN ZAI PD Claimants Would Recover More in U.S. PD Fund

[46]   The Crown estimates that its recovery against the CDN PD Fund will range between CAD $666,000 to CAD $1.321 million. In contrast, the Crown submits that had the Crown been permitted to file her PD claim in the U.S., the Crown may have been entitled to recover in U.S. dollars its total claim of U.S. $3.023 million.

[47]   While potential and theoretical recovery for U.S. PD Claimants is interesting, it is not directly relevant to the issue of whether the Amended Settlement is fair and reasonable. The Amended Settlement puts forth the compensation package for CDN ZAI PD Claims and it is this term that has to be considered and not the U.S. proposal.

[48]   In respect of CDN ZAI PD Claims, the Amended Settlement, in my view, benefits the Crown:

  (a)   Under the Amended Settlement, as under the Original Settlement, CDN ZAI PD Claimants have agreed not to pursue the Crown; and

  (b)   The Crown is also a potential CDN ZAI PD claimant and as such will benefit from Grace's increased monetary contribution to the CDN ZAI PD Fund.

[49]   I accept the submission of counsel to Grace that given the approval of the Original Settlement and the fact that the Amended Settlement provides further benefits to the Crown in respect of its CDN ZAI PD Claims, there is no basis for the Crown to raise objections related to the treatment of the CDN ZAI PD claims.

## CDN ZAI PI CLAIMANTS

[50]   The major dispute is with respect to the treatment of CDN ZAI PI Claims.

[51]   It is clear that pursuant to the Amended Settlement, Representative Counsel may pursue CDN ZAI PI Claims against the Crown provided that any subsequent claims by the Crown for contribution, indemnity or otherwise against the Grace Parties are channelled to the Asbestos Trust.

[52]   The Crown submits that it was not a party to the Amended Settlement and the Crown specifically objects to the Amended Settlement which results in the Crown having to defend all claims brought against the Crown.

- Page 10 -

[53]    In my view, the concerns of the Crown are misguided for two reasons. First, the concerns of the Crown do not arise as a result of the Settlement. It seems to me that the treatment of the contribution and indemnity claims of the Crown against Grace are identical to the treatment of all co-defendants having claims against Grace. In this respect, it can be said that the Amended Settlement has gratuitous benefits for the Crown insofar as claims can only be made against the Crown provided that the Crown's claims for contribution and indemnity are channelled to the Asbestos Trust.

[54]    Second, the Crown is currently exposed to any and all suits by CDN ZAI Claimants whether or not it is jointly liable with Grace. The Amended Settlement provides that the treatment provided to the Crown, and its ability to claim against the Asbestos Trust, is identical to that of all co-defendants. In this regard, it cannot be said that the Crown has been unfairly targeted in the Amended Settlement.

[55]    In my view, to the extent that the Crown has a complaint, it should be directed to the terms of the U.S. Plan. There is nothing in this ruling that prohibits the Crown from taking a position of objection in the U.S. Confirmation Hearing. The State of Montana has put forth a similar position to that of the Crown and, in this respect, the legal position of the Crown may very well be considered by the U.S. court.

### Increased Procedural Uncertainty

[56]    The Crown submits that by filing claims in the U.S. Chapter 11 Proceedings, the CDN ZAI PI and PD Claimants and the Crown have all attorned to the jurisdiction of the U.S. Court to determine Grace's joint and several liability in respect of the 11 Canadian Class Actions.

[57]    In my view, this may be an ongoing issue but it does not impact on the issue before the Court on this motion.

### Other Factors

[58]    I have also considered the submission of counsel on behalf of Grace to the effect that the concerns of the Crown related to liability arising from "claims over" in the context of CDN ZAI PI Claims are largely theoretical. Counsel to Grace submits that there is but one cluster of claims (the Thundersky Family Claim) and those claims may be statute barred. In my view, it is appropriate to take this submission, which I accept, into account when considering the overall issue of prejudice as raised by the Crown.

### Disposition

[59]    I have not been persuaded by the arguments of the Crown.

[60]    The concerns of the Crown, if any, arise from the First Amended Joint Plan and not from the Amended Settlement. The U.S. Court will at first instance, determine the appropriateness of the channelling injunction and the Asbestos Trust. In addition, the Crown will also have the opportunity to make submissions on any motion to recognize the First Amended Joint Plan including the channelling injunction, in Canada.

- Page 11 -

[61]    For the reasons set forth, I find that the Amended Settlement is both fair and reasonable. The Amended Settlement represents an important component of the First Amended Joint Plan and provides a venue through which ZAI Claims may be resolved.  It is not in the interest of any party for there to be ongoing uncertainty and delay as to the resolution of these claims, nor the escalating costs which will likely accompany further delays.

[62]    Accordingly, the motion is granted.  The Amended Settlement is approved.  As agreed by the parties, there is no order as to costs.

MORAWETZ J.

Date: January 8, 2010