IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al[1], | ) | Case No. 01-01139 |
| | ) | |
| Debtors. | ) | Jointly Administered |

Re DN 24261, 24156 and 24295
2/16/10 Agenda # 9

**FINAL ORDER AUTHORIZING SECURED POST-PETITION
LETTER OF CREDIT FACILITY AND HEDGING AND SWAP
ARRANGEMENTS ON A SUPER-PRIORITY BASIS PURSUANT
TO 11 U.S.C. § 364, AND GRANTING RELIEF FROM
THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362**

The above-captioned debtors and debtors in possession (collectively, the

"**Debtors**") filed a motion (the "**Motion**") dated January 15, 2010, seeking this Court's

authorization pursuant to sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code,

11 U. S. C. §§ 101-1330 (the "**Bankruptcy Code**") and Rules 2002, 4001(c) and 9014 of the

---

[1] The Debtors are the following entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey & Almy, LLC (f/k/a Dewey & Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for W. R. Grace & Co.-Conn. ("**Grace**"), inter alia, (i) to obtain post-petition financing in the form of a letter of credit facility (the "**Post-Petition Facility**") in an amount not to exceed $100,000,000 (the "**Commitment**"), under the Post-Petition Letter of Credit Facility Agreement among Grace, as the Account Party, Bank of America, N.A. ("**BofA**"), as the Agent for the Letter of Credit Issuers (the "**Agent**"), (ii) to enter into hedging and swap arrangements (the "**Hedging Arrangements**") as set forth in the Swap Documents, (iii) to execute the Post-Petition Letter of Credit Facility Agreement (as amended, supplemented or otherwise modified from time to time, the "**Facility Agreement;**" terms not otherwise defined herein shall have the meaning ascribed to them in the Facility Agreement, attached hereto as **Exhibit A**), (iv) to execute the Swap Documents, including but not limited to the ISDA Master Agreement, dated as of 12/22/09 between Bank of America, N.A. and Grace (attached hereto as **Exhibit B**), (v) to execute all related documents contemplated by the Facility Agreement, together with the Facility Agreement, and all ancillary documents at any time executed in connection therewith, including but not limited to the cash collateral control agreements with BANA (the "**Control Agreements**", attached hereto as **Exhibit C**), the Letter of Credit Documents and the Swap Documents, collectively, the "**Facility Documents**"); (vi) to grant pursuant to section 364 of the Bankruptcy Code, first priority liens and security interests, senior to any and all other liens and security interests as follows: (a) as security for all L/C Obligations, to the Agent, for the benefit of the Agent, the Letter of Credit Issuers and, subject to Section 3.3(b) of the Facility Agreement, the other holders of the Obligations, a continuing security interest in, lien on, and right of set-off against the L/C Cash Collateral Account, all money, cash, Cash Equivalents or other property deposited in or credited to the L/C Cash Collateral Account, and all accessions to, substitutions

for and replacements, products and proceeds of any of the foregoing and, subject to Section 3.3(b) of the Facility Agreement, a continuing security interest in, lien on, and right of set-off against the F/X Hedge Cash Collateral Account, the Commodity Hedge Cash Collateral Account, all money, cash, Cash Equivalents or other property deposited in or credited thereto and all accessions to, substitutions for and replacements, products and proceeds of any of the foregoing;

(b) as security for all F/X Hedge Obligations, to the Agent, for the benefit of the Agent, the holders of the F/X Hedge Obligations and, subject to Section 3.3(b) of the Facility Agreement, the other holders of the Obligations, a continuing security interest in, lien on, and right of set-off against the F/X Hedge Cash Collateral Account, all money, cash, Cash Equivalents or other property deposited in or credited to the F/X Hedge Cash Collateral Account, and all accessions to, substitutions for and replacements, products and proceeds of any of the foregoing and, subject to Section 3.3(b) of the Facility Agreement, a continuing security interest in, lien on, and right of set-off against the L/C Cash Collateral Account, the Commodity Hedge Cash Collateral Account, all money, cash, Cash Equivalents or other property deposited in or credited thereto and all accessions to, substitutions for and replacements, products and proceeds of any of the foregoing;

and (c) as security for all Commodity Hedge Obligations, to the Agent, for the benefit of the Agent, the holders of the Commodity Hedge Obligations and, subject to Section 3.3(b) of the Facility Agreement, the other holders of the Obligations, a continuing security interest in, lien on, and right of set-off against the Commodity Hedge Cash Collateral Account, all money, cash, Cash Equivalents or other property deposited in or credited to the Commodity Hedge Cash Collateral Account, and all accessions to, substitutions for and replacements, products and proceeds of any of the foregoing and, subject to Section 3.3(b) of the Facility Agreement, a continuing security interest in, lien on, and right of set-off against the L/C Cash Collateral

Account, the F/X Hedge Cash Collateral Account, all money, cash, Cash Equivalents or other property deposited in or credited thereto and all accessions to, substitutions for and replacements, products and proceeds of any of the foregoing; (vii) to grant the Agent, the Letter of Credit Issuers and the other holders of Obligations administrative super-priority in payment with respect to such Obligations over any and all administrative expenses of the kinds specified in sections 503(b), 507(b) and 546(c) of the Bankruptcy Code; and (viii) to set a hearing on the Motion (the **"Final Hearing"**). Due and proper notice of the Motion pursuant to Bankruptcy Rule 4001 has been given as set forth below. The Court having further considered the Motion and any objections thereto, and upon the entire record made at the Final Hearing, and this Court having found good and sufficient cause,

**IT IS HEREBY FOUND AND CONCLUDED that:**

A. On April 2, 2001 (the **"Petition Date"**), the Debtors each filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code (the **"Chapter 11 Cases"**). The Debtors are continuing in possession of their property, and operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion presents a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C. The Debtors require a facility of approximately $100 million of availability for the issuance of letters of credit (including, but not limited to, the Existing Letters of Credit) and collateral arrangements to secure certain Hedging Arrangements to carry on the operation of their businesses in their current state without the financial accommodations

4

91100-001\DOCS_DE:157467.1

provided for in the Facility Agreement and the Swap Documents. Without access to these post-petition credit accommodations, as contemplated herein and in the Facility Documents, serious and irreparable harm to the Debtors and their estates would occur. In addition, the Debtors' need for access to these post-petition credit accommodations, as contemplated herein and in the Facility Documents, is immediate. The preservation, maintenance and enhancement of the going concern value of the Debtors, as well as the protection of the interests of others as described herein, are of the utmost significance and importance to a successful reorganization of the Debtors under chapter 11 of the Bankruptcy Code.

D. Given the Debtors' current financial condition and capital structure, without access to the post-petition credit accommodations, as contemplated herein and in the Facility Documents,, the Debtors are unable to sustain their current operations and are unable to obtain sufficient unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The post-petition credit accommodations, as contemplated herein and in the Facility Documents, are not otherwise available without the Debtors' granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b), 507(b), and 546(c) of the Bankruptcy Code, and securing such indebtedness and obligations with the security interests in and the liens upon the property described in the Facility Documents and below pursuant to sections 364(c)(2) and (c)(3).

E. Notice of the relief requested in the Motion, the Final Hearing and the proposed form of this Order has been given to: (a) the office of the United States Trustee; (b) counsel to the Agent; (c) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (d) counsel to each of the official committees appointed in these Chapter 11

Cases (the "**Committees**"); (e) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives (the "**Asbestos Representatives**"); (f) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (h) all known domestic secured creditors of the Debtor and holders of Prior Claims (defined below). Based upon all of the foregoing, sufficient and adequate notice under the circumstances of the Motion, and this Order has been given pursuant to sections 102(l) and 364(c) of the Bankruptcy Code, and Bankruptcy Rules 2002 and 4001(c).

F. The Post-Petition Facility has been negotiated in good faith and at arms-length among the Debtors and BofA (as Agent and as a Letter of Credit Issuer), and any credit accommodations (including Bank Products) extended and letters of credit issued for the account of the Debtors pursuant to the Facility Agreement ("**Letters of Credit**") or financial accommodations provided pursuant to the Facility Documents shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of section 364(e) of the Bankruptcy Code, and the Agent and the Letter of Credit Issuers are entitled to the protections of section 364(e) of the Bankruptcy Code.

G. The terms of the Post-Petition Facility and the Facility Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

H. This Court concludes that entry of this Order is in the best interests of the Debtors' estates and creditors because its implementation, among other things, will allow for the availability to the Debtors of a letter of credit facility and other financial accommodations that are necessary to sustain the operations of the Debtors' existing businesses and enhance the Debtors' prospects for successful reorganization.

I. Each of the foregoing findings by the Court will be deemed a finding of fact if and to the full extent that it makes and contains factual findings and a conclusion of law if and to the full extent that it makes legal conclusions.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1. The Motion is granted, subject to the terms and conditions set forth in this Order and any objections to the entry of this Order are resolved hereby or, to the extent not resolved, are overruled.

2. The Debtors are each authorized and obligated on a final basis to comply with and perform, and are bound by, all of the terms, conditions and waivers contained in the Facility Documents, and the Debtors are each authorized and obligated to repay amounts owed, with interest and any other allowed charges, to the Agent and Letter of Credit Issuers and holders of other Obligations in accordance with and subject to the terms and conditions set forth in the Facility Documents and this Order. None of the Facility Documents nor this Order, nor any provision of any thereof, nor any right arising under any thereof, shall be voidable or avoidable under section 548 of the Bankruptcy Code or under any applicable State Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law. The Debtors are further authorized and obligated to pay all facility, commitment, letter of credit, unused line and other fees and expenses in accordance with the terms of the Facility Documents, including, without limitation, a $250,000 Facility Fee due and payable upon entry of this Order, an Administration Fee of $75,000 due and payable upon entry of this Order, and all reasonable

fees and expenses of professionals engaged by the Agent or the Letter of Credit Issuers, in accordance with the terms of the Facility Agreement.

3. Grace is expressly authorized to obtain financial accommodations from the Agent, the Letter of Credit Issuers and the other holders of the Obligations, on the terms and subject to the conditions and limitations in availability set forth in the Facility Documents and this Order, of up to $100 million in the form of Letters of Credit, to enter into Hedging Arrangements as contemplated by the Swap Documents and to obtain Bank Products from the Bank or the Bank's Affiliates. Grace is authorized to request the issuance of Letters of Credit, to enter into Hedging Arrangements and to request Bank Products, for the purposes permitted under the Facility Documents.

4. Effective immediately, the automatic stay pursuant to section 362(a) of the Bankruptcy Code, and any and all other stays and injunctions which are or may be applicable, shall be and hereby are modified and vacated as to the Agent, the Letter of Credit Issuers and the other holders of the Obligations and all of their Collateral (as defined below), so that (i) if an Event of Default (as defined in the Facility Documents) occurs, subject to Paragraph 10 of this Order, the Agent and the Letter of Credit Issuers shall be entitled to terminate the Post-Petition Facility and the Agent, the Letter of Credit Issuers and the other holders of the Obligations shall be entitled to exercise any and all of their rights and remedies under the Facility Agreement, the other Facility Documents and this Order, and (ii) prior to an Event of Default, the Agent, the Letter of Credit Issuers and the other holders of the Obligations may take such actions with respect to the Collateral and proceeds thereof as are authorized in the Facility Agreement, the other Facility Documents and this Order, including without limitation the application of amounts in and proceeds of Cash Collateral Accounts and other Collateral to the Obligations as permitted

by the Facility Agreement, the establishment of Cash Collateral Accounts, and the taking of steps to perfect Agent's Liens on the Collateral. Notwithstanding anything herein to the contrary, no Letters of Credit, or Collateral or proceeds thereof may be used to object to or contest in any manner, or raise any defenses to, the validity, perfection, priority or enforceability of the Obligations owing to the Letter of Credit Issuers or Agent or the other holders of the Obligations, or the liens in favor of the Agent securing such Obligations, or to assert any claims or causes of action against the Letter of Credit Issuers or Agent or the other holders of the Obligations in their respective capacities under the Facility Documents.

5. In accordance with sections 364(c)(1) and 507(b) of the Bankruptcy Code, the Obligations shall constitute claims with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b) and 546(c) of the Bankruptcy Code and shall at all times be senior to the rights of the Debtors, any successor trustee to the extent permitted by law, or any other creditor in the Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code. No cost or expense of administration under sections 105, 364(c)(1), 503(b), 506(c), 507(b) of the Bankruptcy Code or otherwise, shall be senior to or equal to the claim of the Agent, the Letter of Credit Issuers or any other holder of the Obligations, arising out of the Obligations. Notwithstanding anything else in this Order, the super-priority claims of the Agent, the Letter of Credit Issuers and any other holders of the Obligations arising from the Obligations shall be solely to the extent of the Collateral, and not to any other property of the Debtors, on the terms and conditions provided for in section 1.3 of the Facility Agreement.

6. As security for all L/C Obligations, and as provided in the Facility Documents, Grace hereby grants to the Agent, for the benefit of the Agent, the Letter of Credit Issuers and, subject to Section 3.3(b) of the Facility Agreement, the other holders of the Obligations (effective upon the date of the Order and without the necessity of the execution, filing and/or recordation by the Debtors of mortgages, security agreements, patent security agreements, trademark security agreements, pledge agreements, financing statements or otherwise), valid, perfected and continuing security interests in, liens on, and rights of set-off against ("**Liens**") the L/C Cash Collateral Account, all money, cash, Cash Equivalents or other property deposited in or credited to the L/C Cash Collateral Account, and all accessions to, substitutions for and replacements, products and proceeds of any of the foregoing and, subject to Section 3.3(b) of the Facility Agreement, Liens against the F/X Hedge Cash Collateral Account, the Commodity Hedge Cash Collateral Account, all money, cash, Cash Equivalents or other property deposited in or credited thereto and all accessions to, substitutions for and replacements, products and proceeds of any of the foregoing. As security for all F/X Hedge Obligations, Grace hereby grants to the Agent, for the benefit of the Agent, the holders of the F/X Hedge Obligations and, subject to Section 3.3(b) of the Facility Agreement, the other holders of the Obligations, Liens against the F/X Hedge Cash Collateral Account, all money, cash, Cash Equivalents or other property deposited in or credited to the F/X Hedge Cash Collateral Account, and all accessions to, substitutions for and replacements, products and proceeds of any of the foregoing and, subject to Section 3.3(b) of the Facility Agreement, Liens against the L/C Cash Collateral Account, the Commodity Hedge Cash Collateral Account, all money, cash, Cash Equivalents or other property deposited in or credited thereto and all accessions to, substitutions for and replacements, products and proceeds of any of the foregoing. As security for all

Commodity Hedge Obligations, Grace hereby grants to the Agent, for the benefit of the Agent, the holders of the Commodity Hedge Obligations and, subject to Section 3.3(b) of the Facility Agreement, the other holders of the Obligations, Liens against the Commodity Hedge Cash Collateral Account, all money, cash, Cash Equivalents or other property deposited in or credited to the Commodity Hedge Cash Collateral Account, and all accessions to, substitutions for and replacements, products and proceeds of any of the foregoing and, subject to Section 3.3(b) of the Facility Agreement, Liens against the L/C Cash Collateral Account, the F/X Hedge Cash Collateral Account, all money, cash, Cash Equivalents or other property deposited in or credited thereto and all accessions to, substitutions for and replacements, products and proceeds of any of the foregoing. Collectively, the property and assets against which Liens are granted in this section of this Order, all accessions to, substitutions for and replacements, products and proceeds of any of the foregoing, are referred to herein as the "**Collateral**." The Liens granted herein against the Collateral shall be Liens with the following priority:

(a) pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority, perfected Lien upon all of Grace's right, title and interest in, to and under all Collateral that is not otherwise encumbered by a valid and unavoidable liens or security interests to the extent and in the amounts existing as of the commencement of the Chapter 11 Cases ("**Prior Claims**"); and

(b) pursuant to section 364(c)(3) of the Bankruptcy Code, a junior priority, perfected Lien upon all of Grace's right, title and interest in, to and under the Collateral that is subject to a Prior Claim (subject only to such Prior Claims).

The Collateral shall not include (a) claims of the Debtors arising under sections 544, 546, 547, 548, 549, 550 or 553 of the Bankruptcy Code ("**Avoidance Actions**"), (b) stock or other equity interests of the Debtors in any foreign subsidiary, and (c) life insurance policies owned by, or assigned to, any of the Debtors. "Prior Claims" shall not include any lien or security interest that is avoidable pursuant to any provision of the Bankruptcy Code.

11

Notwithstanding anything else in this Order, the Liens of the Agent shall attach solely to the Collateral, and not to any other property of the Debtors, on the terms and conditions provided for in section 1.4 of the Facility Agreement.

7. Neither the Debtors, the Debtors' estates nor the Debtors' professionals shall assert a claim under section 506(c) of the Bankruptcy Code against Agent or any Letter of Credit Issuers or any holders of Obligations for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Agent, any Letter of Credit Issuers or any other holders of the Obligations upon the Collateral. The Agent, the Letter of Credit Issuers and the other holders of the Obligations shall not be subject to the equitable doctrine of marshaling or any other similar doctrine with respect to any Collateral. None of the Agent or the Letter of Credit Issuers or any other holders of Obligations shall be required to file or serve financing statements, mortgages, patent and trademark security agreements and similar instruments which are used to perfect liens and security interests in intellectual property, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect the Liens. If, however, the Agent, any Letter of Credit Issuers, or any other holders of any Obligations, in their sole discretion, shall determine to file any such financing statements, mortgages, agreements, notices of lien or similar instruments, or to otherwise confirm perfection of such Liens, the Debtors are obligated to cooperate with and assist in such process, and all such documents shall be deemed to have been perfected at the time of and on the date of this Order, and shall be and hereby are deemed and adjudicated senior to any other post-petition filing by any other person or entity with respect to the same collateral.

8. A copy of this Order may be used by Agent, any Letter of Credit Issuers or any holder of any Obligations as a financing statement, mortgage, deed of trust or similar instrument for purposes of any public filing made by such parties for the perfection of the Liens. All state, federal, and county recording officers are authorized and directed to accept a copy of this Order for filing for such purposes.

9. As long as any portion of the Obligations remains unpaid, or any Facility Document remains in effect (without prejudice to other Events of Default set forth in the Facility Agreement), in addition to the other Events of Default set out in the Facility Documents it shall constitute an Event of Default if there shall be entered in any of the Chapter 11 Cases or any subsequent chapter 7 case any order which authorizes under any section of the Bankruptcy Code, including sections 105, 363, or 364 of the Bankruptcy Code, (i) the granting of any lien or security interest in the Collateral in favor of any party other than the Agent, the Letter of Credit Issuers and the other holders of the Obligations, (ii) the obtaining of credit or the incurring of indebtedness that is entitled to super-priority administrative status, in either case equal or superior to that granted to the Agent, the Letter of Credit Issuers and the other holders of the Obligations pursuant to this Order and Section 1.3 of the Facility Agreement, or (iii) the use of Collateral or the Debtors seek any of the foregoing relief; unless, in connection with any transaction cited in clause (i), (ii), or (iii) of this paragraph, such order requires that the Obligations shall first be indefeasibly paid in full in cash (including cash collateralization or backstopping of all then outstanding Letters of Credit). Otherwise, and in addition to creating an Event of Default, the Debtors, on behalf of their estates, expressly waive any right to request, without the prior written consent of Agent, any relief of the type described in the preceding sentence.

91100-001\DOCS_DE:157467.1

13

10. Upon the occurrence of and during the continuance of any Event of Default, including the Events of Default identified in Section 9.1 of the Facility Agreement, the Agent and the Letter of Credit Issuers and the other holders of the Obligations may, acting pursuant to the Facility Documents, exercise rights and remedies and take all or any of the following actions without further relief from the automatic stay pursuant to section 362(a) Bankruptcy Code or any other applicable stay or injunction (which have been modified and vacated, as heretofore ordered, to the extent necessary to permit such exercise of rights and remedies and the taking of such actions) or further order of or application to this Court: (a) terminate or suspend the Commitment and thereafter cease to issue Letters of Credit to the Debtors; (b) declare the principal of and accrued interest, fees and other liabilities constituting the Obligations to be due and payable; (c) set-off amounts in any of the Debtors' accounts maintained with the Agent or any Letter of Credit Issuer or any other holder of the Obligations, or otherwise enforce rights against any of the Collateral in the possession of the Agent or any Letter of Credit Issuers or any other holders of Obligations; (d) charge the default rate of interest as set forth in the Facility Documents; and/or (e) take any other action or exercise any other right or remedy permitted to the Agent or the Letter of Credit Issuers or any other holders of the Obligations under the Facility Documents, this Order or applicable law. The Debtors waive any right to seek relief under the Bankruptcy Code, including, without limitation, under section 105, to the extent any such relief would in any way restrict or impair the rights and remedies of the Agent or the Letter of Credit Issuers or any other holders of the Obligations set forth in this Order or in the Facility Documents. If the Agent or Letter of Credit Issuers or any other holders of the Obligations elect to exercise any rights or remedies with respect to the Collateral that are predicated upon an Event of Default having occurred, before taking such action, the Agent shall

91100-001\DOCS_DE:157467.1

provide the Debtors' counsel, and counsel to the Committees and counsel to the Asbestos Representatives at least five (5) business days prior written notice, provided that no prior notice of a termination or suspension of the Commitment shall be required. If any of the Debtors or any other person challenges the occurrence of an Event of Default, any such objector's remedy shall be limited to requesting a hearing before this Court at least on five business days' written notice (a "**Hearing Notice**") to the Agent. If a hearing is requested in accordance with the preceding sentence, then subsequent to receipt by Agent of a Hearing Notice, unless the Court orders otherwise, the Agent, the Letter of Credit Issuers and the other holders of the Obligations shall not take the actions described in clauses (c) or (e) above (or shall suspend such actions if commenced prior to Agent's receipt of a Hearing Notice) for at least five business days after Agent's receipt of a Hearing Notice. In any such hearing, the sole issue before the Court shall be whether an Event of Default exists.

11.     The Debtors are authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the Facility Documents, as the Agent or the Letter of Credit Issuers or any other holders of the Obligations may reasonably require, as evidence of and for the protection of the Obligations or the Liens in favor of Agent, or which otherwise may be deemed reasonably necessary by the Agent or the Letter of Credit Issuers or the other holders of the Obligations to effectuate the terms and conditions of this Order and the Facility Documents. The Debtors, the Agent, the Letter of Credit Issuers and the other holders of the Obligations are hereby authorized to implement, in accordance with the terms of the Facility Documents, any non-material modifications (including, without limitation, any change in the number or composition of the Letter of Credit Issuers) of the Facility Documents without further notice or order of this Court.

15

91100-001\DOCS_DE:157467.1

12. Without limiting the rights of access and information afforded the Agent and the Letter of Credit Issuers and the other holders of the Obligations under the Facility Documents, the Debtors shall afford representatives, agents and/or employees of the Agent and the Letter of Credit Issuers and the other holders of the Obligations reasonable access to the Debtors' premises and their records in accordance with the Facility Documents and shall cooperate, consult with, and provide to such persons all such non-privileged information and information not subject to a binding confidentiality agreement, as they may reasonably request.

13. Having been found to be extending credit accommodations and issuing Letters of Credit to Grace in good faith, based on the record before this Court, the Agent and the Letter of Credit Issuers and the other holders of the Obligations shall be entitled to the full protection of section 364(e) of the Bankruptcy Code with respect to the Obligations and the Liens created, adjudicated or authorized by this Order in the event that this Order or any finding, adjudication, or authorization contained herein is stayed, vacated, reversed or modified on appeal. Any stay, modification, reversal or vacation of this Order shall not affect the validity of any Obligations of the Debtors to the Agent or the Letter of Credit Issuers or the other holders of the Obligations incurred pursuant to this Order. Notwithstanding any such stay, modification, reversal or vacation, all Letters of Credit issued and financial accommodations provided pursuant to this Order and the Facility Documents and all Obligations incurred by the Debtors pursuant hereto prior to the effective date of any such stay, modification, reversal or vacation shall be governed in all respects by the original provisions hereof, and the Agent and the Letter of Credit Issuers and the other holders of the Obligations shall be entitled to all the rights, privileges and benefits, including without limitation, the liens, security interests and first priorities granted herein with respect to all such Obligations.

14. Neither the Agent nor any Letter of Credit Issuers nor any other holders of the Obligations shall be deemed to be in "control" of the operations of any Debtor, to be acting as a "responsible person" or "owner" or "operator" with respect to the operation or management of any Debtor (as such terms or similar terms are used in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, or any similar federal or state statute) by reason of any credit or financial accommodations extended to the Debtors under the Facility Documents or the exercise by the Agent or any Letter of Credit Issuers or any other holders of the Obligations of any rights or remedies hereunder or thereunder, except that this paragraph shall apply to environmental liabilities to the United States only so long as the actions of the Agent and the Letter of Credit Issuers and the other holders of the Obligations do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by the Debtors, or otherwise cause lender liability to arise or the status of control, responsible person, owner, or operator to exist under applicable law.

15. The Post-Petition Loan and Security Agreement, dated as of April 1, 2001, as amended (the "**DIP Loan Agreement**"), among the financial institutions named therein (collectively, "**DIP Lenders**"), Bank of America, N.A. ("**BofA**"), as agent for such Lenders ("**DIP Agent**"), and W.R. Grace & Co. and the Subsidiaries of W.R. Grace & Co. named therein (collectively, "DIP Borrowers"), together with the credit facility documents and agreements executed in connection therewith (collectively, "**2001 Loan Documents**"), and the liens of the DIP Agent thereunder, shall, as, when, and to the extent provided in the Payoff Confirmation Letter attached hereto as **Exhibit D**, be terminated.

17

91100-001\DOCS_DE:157467.1

16. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order (a) confirming any plan of reorganization in the Chapter 11 Cases, and, to the extent not satisfied in full in cash, (or, with respect to the Letters of Credit, with cash collateralization or supporting Letters of Credit) the Obligations shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors having hereby waived such discharge; (b) converting any of the Chapter 11 Cases to a chapter 7 case; or (c) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Order as well as the claims and liens granted pursuant to this Order and the Facility Documents shall continue in full force and effect notwithstanding the entry of such order, and such claims and liens shall maintain their priority as provided by this Order until all of the Obligations are indefeasibly paid in full in cash and discharged.

17. Pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors after the Petition Date, is not and shall not be subject to any lien of any entity resulting from any Prior Claim except to the extent that such property constitutes proceeds of property encumbered by a Prior Claim.

18. To the fullest extent permitted by law, the provisions of this Order and the Facility Documents shall be binding upon and inure to the benefit of the Agent, the Letter of Credit Issuers, the other holders of the Obligations, the Debtors, and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Cases or in subsequent chapter 7 cases as a legal representative of the Debtors or their estates.

19. The Debtors shall provide counsel to each of the Committees and counsel to the Asbestos Representatives with copies of any notices, amendments, financial data or similar information that Debtors provide to the Agent or the Letter of Credit Issuers pursuant to this

Order or the Facility Documents, substantially contemporaneously with delivery of such information to the Agent or the Letter of Credit Issuers.

20. In the event of any conflict between any term, covenant or condition of this Order and any term, covenant or condition of any Facility Document, the provisions of this Order shall control and govern.

21. The Court has and will retain jurisdiction to enforce this Order according to its terms.

Dated: Feb. 16 , 2010

*Judith K. Fitzgerald*
Honorable Judith K. Fitzgerald
United States Bankruptcy Judge