<u>**EXHIBIT C**</u>
**Form of Control Agreements**

**Final Draft**

**(Account - Without Activation)**

## DEPOSIT ACCOUNT CONTROL AGREEMENT

This Agreement is entered into as of _____, 2010, among **W.R. Grace & Co.-Conn.** ("*Company*"), **Bank of America, N.A.**, in its capacity as agent for the holders of the Obligations (as defined in the LC Agreement as defined below) (in such capacity, "*Agent*"), and **Bank of America, N.A.** ("*Bank*") with respect to the following:

    A.    Bank has agreed to establish and maintain for Company deposit account number _____ (the "*Account*").

    B.    Pursuant to that certain Post-Petition Letter of Credit Facility Agreement, dated as of _____, 2010, by and among Company, Agent and the Letter of Credit Issuers from time to time party thereto (the "*LC Agreement*"), Company has granted to Agent a security interest in the Account and all amounts on deposit in the Account (such amounts, the "*Account Funds*").

    C.    Company, Agent and Bank are entering into this Agreement to evidence Agent's security interest in the Account and the Account Funds and to provide for the disposition of the Account Funds.

Accordingly, Company, Agent and Bank agree as follows:

1.    (a)    This Agreement evidences Agent's control over the Account. Notwithstanding anything to the contrary in the agreement between Bank and Company governing the Account, Bank will comply with instructions originated by Agent as set forth herein directing the disposition of the Account Funds without further consent of Company.

    (b)    Company represents and warrants to Agent and Bank that it has not assigned or granted a security interest in the Account or Account Funds, except to Agent.

    (c)    Company will not permit the Account to become subject to any other pledge, assignment, lien, charge or encumbrance of any kind, other than Agent's security interest referred to herein.

    (d)    Bank of America, N.A., in its capacity as Agent, agrees with Company that it will not withdraw or initiate transfers of Account Funds from the Account except as permitted by Sections 1.2(e) and 3.2(c) of the LC Agreement.

2.    Bank shall prevent Company from making any withdrawals from the Account. Company agrees that Agent may from time to time in its sole discretion instruct the Bank to initiate transfers of the Account Funds to Agent at its account specified below (the "*Agent's Account*") or to such other account as Agent may direct in writing:

Bank Name:   Bank of America, N.A.
ABA No. ACH transfers:
ABA No. Wire transfers:

CH\1139662.5

Account Name:
Account No.:

3. Notwithstanding anything to the contrary set forth herein, Bank shall not be permitted to charge the Account for the fees, charges and other amounts payable to Bank hereunder or otherwise.

4. (a) Bank will send information regarding the deposits to the Accounts to the address specified below for Company or as otherwise specified in writing by Company to Bank.

(b) In addition to the original Bank statement provided to Company, Bank will provide Agent with a duplicate of such statement.

5. (a) Bank will not be liable to Company or Agent for any expense, claim, loss, damage or cost ("***Damages***") arising out of or relating to its performance under this Agreement other than those Damages which result directly from its acts or omissions constituting gross negligence or intentional misconduct.

(b) In no event will Bank be liable for any special, indirect, exemplary or consequential damages, including but not limited to lost profits.

(c) Bank will be excused from failing to act or delay in acting, and no such failure or delay shall constitute a breach of this Agreement or otherwise give rise to any liability of Bank, if (i) such failure or delay is caused by circumstances beyond Bank's reasonable control, including but not limited to legal constraint, emergency conditions, action or inaction of governmental, civil or military authority, fire, strike, lockout or other labor dispute, war, riot, theft, flood, earthquake or other natural disaster, breakdown of public or private or common carrier communications or transmission facilities, equipment failure, or negligence or default of Company or Agent or (ii) such failure or delay resulted from Bank's reasonable belief that the action would have violated any guideline, rule or regulation of any governmental authority.

(d) Bank shall have no duty to inquire or determine whether Company's obligations to Agent are in default or whether Agent is entitled to provide the Notice to Bank. Bank may rely on notices and communications it believes in good faith to be genuine and given by the appropriate party.

(e) Bank shall be permitted to comply with any writ, levy order or other similar judicial or regulatory order or process concerning the Account or any Account Funds and shall not be in violation of this Agreement for so doing.

6. (a) Company shall indemnify Bank against, and hold it harmless from, any and all liabilities, claims, costs, expenses and damages of any nature (including reasonable attorney's fees and expenses) in any way arising out of or relating to disputes or legal actions concerning Bank's provision of the services described in this Agreement. This section does not apply to any cost or damage attributable to the gross negligence or intentional misconduct of Bank. Company's obligations under this section shall survive termination of this Agreement.

(b) Agent hereby agrees to indemnify, defend and hold harmless Bank against any loss, liability or expense (including but not limited to allocated costs of staff counsel, other reasonable

CH\1139662.5

attorney's fees and any fees and expenses) arising from Bank complying with any written instructions of Agent pursuant to this Agreement other than if related to Bank's gross negligence, bad faith, or willful misconduct. Agent's obligations under this section shall survive termination of this Agreement.

7. (a) Company shall pay to Bank, upon receipt of Bank's invoice, all costs, expenses and reasonable attorneys' fees incurred by Bank in connection with the enforcement of this Agreement and any instrument or agreement required hereunder, including but not limited to any such reasonable costs, expenses and fees arising out of the resolution of any conflict, dispute, motion regarding entitlement to rights or rights of action, or other action to enforce Bank's rights in a case arising under Title 11, United States Code. Company agrees to pay Bank, upon receipt of Bank's invoice, all costs, expenses and attorneys' fees incurred by Bank in the preparation and administration of this Agreement (including any amendments hereto or instruments or agreements required hereunder).

(b) Agent shall pay to Bank, upon receipt of Bank's invoice, all reasonable costs, expenses and attorneys' fees (including allocated costs for in-house legal services) incurred by Bank in connection with the enforcement against Agent of this Agreement and any instrument or agreement required hereunder to the extent that Bank is the prevailing party in such enforcement action.

8. Termination and Assignment of this Agreement shall be as follows:

(a) Agent may terminate this Agreement by providing notice to Company and Bank that all of Company's obligations which are secured by Accounts Funds and the Account are paid in full. Agent may also terminate or assign this Agreement upon 30 day's prior written notice to Company and Bank; provided, however, that any such assignment shall only be to an affiliate or wholly-owned subsidiary of Agent. Bank may terminate this Agreement upon 30 days' prior written notice to Company and Agent. Company may not terminate this Agreement except with the written consent of Agent and upon prior written notice to Bank.

(b) Notwithstanding subsection 8(a), Bank may terminate this Agreement at any time by written notice to Company and Agent if either Company or Agent breaches any of the terms of this Agreement, or any other agreement with Bank.

9. (a) Each party represents and warrants to the other parties that (i) this Agreement constitutes its duly authorized, legal, valid, binding and enforceable obligation; (ii) the performance of its obligations under this Agreement and the consummation of the transactions contemplated hereunder will not (A) constitute or result in a breach of its certificate or articles of incorporation, by-laws or partnership agreement, as applicable, or the provisions of any material contract to which it is a party or by which it is bound or (B) result in the violation of any law, regulation, judgment, decree or governmental order applicable to it; and (iii) all approvals and authorizations required to permit the execution, delivery, performance and consummation of this Agreement and the transactions contemplated hereunder have been obtained.

(b) The parties each agree that they shall be deemed to make and renew each representation and warranty in subsection 9(a) on and as of each day on which Company uses the services set forth in this Agreement.

10. (a) This Agreement may be amended only by a writing signed by Company, Agent and Bank; except that Bank's charges are subject to change by Bank upon 30 days' prior written notice to Company. This Section shall survive the termination of this Agreement.

(b) This Agreement may be executed in counterparts; all such counterparts shall constitute but one and the same agreement.

(c) This Agreement controls in the event of any conflict between this Agreement and any other document or written or oral statement. This Agreement supersedes all prior understandings, writings, proposals, representations and communications, oral or written, of any party relating to the subject matter hereof. This Agreement may not be amended except by a written agreement executed and delivered by all parties hereto.

(d) This Agreement shall be interpreted in accordance with New York law without reference to that state's principles of conflicts of law.

11. Any written notice or other written communication to be given under this Agreement shall be addressed to each party at its address set forth on the signature page of this Agreement or to such other address as a party may specify in writing. Such notice shall be effective upon receipt.

12. Nothing contained in the Agreement shall create any agency, fiduciary, joint venture or partnership relationship between Bank and Company or Agent.

[signature pages follow]

In Witness Whereof, the parties hereto have executed this Agreement by their duly authorized officers as of the day and year first above written.

**W.R. Grace & Co.-Conn.**
**("Company")**

By: _____
Name: _____
Title:

Address for notices:

7500 Grace Drive
Columbia, Maryland 21044
Attention: Asif Arshad
Fax: 410-531-4461

**Bank of America, N.A.**
**("Agent")**

By: _____
Name: _____
Title:

Address for notices:

335 Madison Avenue
New York, New York 10017
Attention: Allan Juleus and Ed Kahn
Fax: 312-453-3977

**Bank of America, N.A. ("Bank")**

By: _____
Name: _____
Title:

Address for notices:

600 Peachtree Street, 10th Floor
Atlanta, GA 30308
Attn: Connie Warfield
Tel: 404-607-5375
Fax: 904-312-6756 and,

600 Peachtree Street, 10th Floor
Atlanta, GA 30308
Attn: Shanelle Dawson
Tel: 404-607-5493
Fax: 404-607-6281

CH\1139662.5