**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO.,** *et al.*, | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF KIRKLAND & ELLIS LLP**
**FOR THE THIRTY-FOURTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee

auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Kirkland</u>

<u>& Ellis LLP for the Thirty-Fourth Interim Period</u> (the "Application").

## BACKGROUND

1.     Kirkland & Ellis LLP ("K&E") was retained as counsel to the Debtors.  In the

Application, K&E seeks approval of fees totaling $6,408,883.65 and expenses totaling

$1,166,546.10 for its services from July 1, 2009 through September 30, 2009 (the "Application

Period").

2.     In conducting this audit and reaching the conclusions and recommendations

contained herein, we reviewed in detail the Application in its entirety, including each of the time and

expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330,

Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of

Delaware, Amended Effective February 1, 2009, and the United States Trustee Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C.

§ 330, Issued January 30, 1996 (the "U.S. Trustee Guidelines"), as well as for consistency with

precedent established in the United States Bankruptcy Court for the District of Delaware, the United

States District Court for the District of Delaware, and the Third Circuit Court of Appeals.   We

served on K&E an initial report based on our review, and received a response from K&E, portions

of which response are quoted herein.

## DISCUSSION

### General Issues

3.       We noted that included in K&E's fee request for September 2009 is an adjustment,

or credit, of $303,213.15.  The adjustment is explained in K&E's Application:

> In an adjustment to a discount reflected in the Fee Auditor's Final Report
> Regarding Fee Application of Kirkland & Ellis LLP for the Thirty-Second Interim
> Period, dated September 14, 2009 [Docket No. 23239], W. R. Grace has agreed to
> pay $303,213.15 in respect of fees for February and March 2009, which has been
> added to this Fee Application.  Due to a misunderstanding, a 10% fee reduction had
> been taken.  W. R. Grace and K&E have agreed to a 5% reduction for the February
> and March fees, requiring the adjustment reflected in this Fee Application.

In the final report referenced above, we had recommended a fee reduction of $906,426.30 for the

Thirty-Second Interim Period based upon information which had been provided by debtor's

counsel.[1]  Thus, we requested a clarification of this adjustment, or credit, from K&E, and K&E

responded:

> Indeed, we initially did provide you with an incorrect first quarter fee reduction
> amount.  The fee reductions all relate to the criminal matter that was conducted in
> the first and second quarters of 2009.  Many discussions were undertaken between
> David Bernick and Tyler Mace at K&E (both of whom were heavily involved in the

---

[1]We received the following email from debtor's counsel on September 14, 2009:

> Kirkland and Grace have negotiated some fee reductions for 2009.  They are:
> 1. $906,426.30 fee reduction for the First Quarter of 2009 services; and
> 2. $378,676.00 fee reduction for April 2009 services. . . .

criminal matter) and Grace leading up to and during the criminal case regarding the fact that fees were going to substantially increase during this period as a direct result of the enormous efforts needed to be undertaken in the criminal case.  Ultimately, David and Grace reached an agreement to cap April fees at $2,000,000 and agreed to certain other reductions related to paraprofessional time.

In September 2009, one of Grace's senior in-house attorneys advised me that K&E Quarterly Applications for the first and second quarter of 2009 did not reflect an agreed-to ten percent reduction for the First Quarter of 2009 services which amounted to $906,426.30, and $378,676.00 for April 2009 with respect to the criminal case, which was the amount of April fees in excess of the $2,000,000 cap. Based on this advice from Grace's in-house counsel, I immediately had my co-counsel, Mr. O'Neill, reach out to you to inform you of these reductions, of which I was not previously aware.

At some point during the next few weeks, Mr. Bernick indicated that the Jan. - March 2009 reduction did not appear to be correct.  It was at that point that we realized there was a misunderstanding and that we incorrectly took a 10 percent reduction on fees for February and March 2009 when it was always supposed to have been a 5 percent reduction for such months (along with a $300,000 agreed-to reduction for January paraprofessional time).  Accordingly, in late October 2009, Grace was made aware of this error, and agreed to pay K&E an additional $303,213.15 in connection with the criminal case, in respect of fees for February and March 2009 (reducing the discount for those months from 10% to 5%).  We quickly noted this error in our September 2009 fee application, which was the next fee-related document we were filing after we resolved the error with Grace.

We accept K&E's explanation of its agreement with the debtor.

4.      In our initial report, we noted that several timekeepers had billed in excess of 15-hour days on a number of occasions.  The timekeepers in question and the days upon which their hours exceeded 15 are listed on Exhibit "A."  While we understand that the firm was involved in the confirmation trial during this period, we questioned whether time billed in excess of 14 to 15 hours per day for consecutive days can all be quality, billable time.  Given the factors of attorney fatigue and work interruptions, we asked K&E to explain why the time listed in excess of 15 hours billed in one day should be fully compensated.  K&E responded as follows:

Exhibit "A" to the Initial Report lists eleven billers who billed over 15 hours

to Grace on certain days during September of 2009.

As you know, during the time period in question (between September 1st and September 16th, 2009),[2] K&E was preparing for and conducting Phase 2 of the confirmation hearings in the Debtors' Case (The "Phase 2 Hearings").  Not coincidentally, every professional and paraprofessional whose over-15-hour day you question is a member of the Phase 2 Hearings team.[3]  It is the nature of a trial, particularly one as large and complex as the Phase 2 Hearings, that unexpected and time-consuming tasks arise in court, and that preparation generally for hearings as complex as the Phase 2 Hearings involves an enormous amount of work.  The work must be done on a tight time frame, typically for the next morning's day in court, and only certain team members are equipped to manage certain of the various tasks, necessarily making for long days for team members responsible for certain projects.

You also raise the issue of work interruptions, attorney fatigue, and the like.  K&E professionals may bill a client only for time spent directly working on the client's matter at hand.  Work interruptions are, as a matter of K&E policy, not billed to the client.  Notwithstanding deducting for non-working meals and other non-billable time in a given day, the Phase 2 Hearings team still had to work extremely long hours during the trial time, but these professionals and paraprofessionals are experienced at working long hours on this and other matters, and we believe that attorney fatigue, etc., as questioned in your Initial Report, did not create inefficiencies in the work product performed for Grace.

For all of the reasons enumerated above, K&E respectfully requests reimbursement in full for all of the time listed on Exhibit "A" to the Initial Report.

We understand K&E's response and appreciate the enormous amount of work which these professionals and paraprofessionals were required to perform within a short time frame.  We understand that in order to meet the deadlines in question, the K&E attorneys and legal assistants

_____

[2] Exhibit "A" lists one biller with an over-15-hour day outside this time frame (Chicago legal assistant Kimberly Love's September 24 billable day).  The bulk of Kim's billed time on September 24 related to the drafting and revising of a master admitted trial exhibit list for distribution to the various confirmation hearing parties for use at the upcoming continuation of the confirmation hearings.  She was under a deadline to complete the list, and so worked until it was completed.

[3] ¶ 4(d) of the Fee Response describes the Phase 2 Hearings roles and responsibilities of each of the individuals listed on Exhibit "A" to the Initial Report.

had no choice but to work these hours, and thus we have no objection to these fees.

<u>Specific Time and Expense Entries</u>

4.      In our initial report, we noted certain instances in which multiple K&E professionals and paraprofessionals attended the same hearing.  However, it was unclear from the time entries why all attendees needed to be present.  We have noted the time entries for these hearings on Exhibit "B."  Paragraph II.D.5. of the U.S. Trustee Guidelines provides: "If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  For each hearing listed, we asked K&E to please explain why it was necessary for each attorney and legal assistant to be present, as well as the role of each attendee.  K&E provided a response which we have included as Response Exhibit "1."  We appreciate K&E's response and have no objection to these fees.

5.      We noted that on July 30, 2009, attorneys Christian O Nagler ($725), James L Baribeau ($610), Jonah L Price ($520), and Ron DeRose ($470) attended a conference concerning exit financing.  The total time spent was 22.50 hours, and the total fees billed were $12,310.50.

| 7/30/2009 | Jonah L Price | 6.00 | 3,120.00 | Confer with client on exit financing commitment papers (6.0);....... |
| 7/30/2009 | Christian O Nagler | 2.50 | 1,812.50 | Attend conference re financing commitments. |
| 7/30/2009 | James L Baribeau | 5.70 | 3,477.00 | Prepare for and participate in conference with Grace and Blackstone re exit commitment papers (5.7);...... |
| 7/30/2009 | Ron DeRose | 8.30 | 3,901.00 | Confer with Blackstone, client, A. Gregory, C. Nagler, J. Baribeau and J. Price re exit financing commitment papers and revise commitment letter. |
| | | 22.50 | 12,310.50 | |

In light of the Guideline cited above, we asked K&E to explain why it was necessary for each

attorney to attend this conference.  K&E responded:

> July 30th, 2009 Exit Financing Conference ...
>
> *Nagler/Baribeau/Price/DeRose*
>
> The July 30th conference, attended by representatives of the Debtors, Blackstone, and K&E, was held to review, discuss and compare a variety of exit financing commitment papers received by Grace from several financing institutions the day before.  The meeting participants discussed loan pricing, conditions to effectiveness, Grace's cash position, and other matters relevant to negotiating exit financing.  K&E needed to quickly review all the pieces of each financing entity's commitment papers -- engagement letters, term sheets, fee letters, and other documents – and come to the conference prepared to discuss the commitment papers and K&E's comments and suggested changes thereto.
>
> Due to the time constraint of receiving the papers immediately before the meeting, the evening prior, four K&E corporate attorneys, Christan Nagler, James Baribeau, Jonah Price, and Ron DeRose, were each assigned to review and comment on a particular financing entity's set of commitment papers.  The various sets of commitments paper were all quite lengthy and complex, and no one attorney could have reviewed them all in time for the conference.  Each of these attorneys was responsible for presenting and commenting on his assigned papers at the meeting.  Each also had to provide answers to any questions that arose with regard to his assigned set of papers.
>
> For these reasons, K&E respectfully requests payment in full for the fees related to the exit financing conference.

We accept K&E's response and have no objection to these fees.

6.      We noted that on September 2, 2009, K&E attorneys David M Bernick ($955) and Eric F Leon ($715) attended the Kruger deposition.  The total time spent, including preparation, was 7.90 hours, for total fees of $7,112.50.

| | | | |
|---|---|---|---|
| 9/1/2009 | David M Bernick, P.C. | 2.10 | .......; prepare for Krugar deposition (2.1);......... |
| 9/2/2009 | David M Bernick, P.C. | 4.00 | Prepare for and attend deposition of Krugar (4.0);..... |
| 9/2/2009 | Eric F Leon | 1.80 | Prepare for and attend Krugar deposition (1.8);..... |
| | | 7.90 | |

We asked K&E to explain why it was necessary for both attorneys to attend the Kruger deposition.

K&E responded:

> Mr. Kruger is the attorney who represented the Lenders during their negotiations with the Debtors about the rate of post-petition interest, and those negotiations were the primary focus of the deposition. David took the deposition, and worked with Eric to prepare for it. Eric identified, collected and reviewed documents critical to the deposition; he reviewed other deposition transcripts to gather relevant excerpts; and he prepared the outline of questions for David to use. Eric attended the entire deposition in order to be able to prepare the cross-examination outline K&E would need if Mr. Kruger later testified at the Phase 2 Hearings. (Mr. Kruger did testify at the Phase 2 Hearings, and Eric's outline was the basis for K&E's cross.)
>
> For these reasons, K&E respectfully requests reimbursement in full for the fees related to the deposition of Lewis Kruger.

We accept K&E's response and have no objection to these fees.

7.     We noted that on two consecutive days, July 29, 2009 and July 30, 2009, case assistant Morgan Rohrhofer ($150) billed time for traveling from Butte, Montana, to Washington, DC:

| 7/29/2009 | Morgan Rohrhofer | 4.20 | 630.00 | Return travel to Washington, DC from Butte, MT after deposition of Dr. Spear (billed at half time). |
|---|---|---|---|---|
| 7/30/2009 | Morgan Rohrhofer | 4.50 | 675.00 | Return travel to Washington, DC from Butte, MT from deposition of Dr. Spear (billed at half time). |
| | | 8.70 | $1,305.00 | |

Thus, we asked K&E whether one of these time entries was a duplicate. K&E responded:

> The July 30th entry is not a duplicate of the July 29th entry, but rather represents the continuation of a very, very long travel day (days) by Morgan. On July 28th, she traveled from Washington, DC to Butte, MO, for the deposition of Dr. Spear. She was scheduled to fly out of Helena, MO on July 29th via Denver to Washington, DC. Her Helena flight was delayed due to bad weather, which caused her to miss her connecting flight. When she did reach Denver, all flights from that airport were further delayed due to weather. Morgan finally took a red-eye flight from Denver to Chicago and then an early morning flight from Chicago to DC,

arriving in DC on July 30th . . . .

We appreciate K&E's response and have no objection to these fees.

8.      We noted that K&E Technical Services employee Derek Bremer ($240) billed 167.30 hours for total fees of $40,152.00 for on-site technical support for the confirmation hearing.  The pertinent time entries are listed on Exhibit "C."  We further noted that Mr. Bremer billed anywhere from 9 to 16.5 hours on the case in one day.  Thus, we asked K&E whether Mr. Bremer was performing tasks directly related to the case for all the time he billed, or whether he was billing for all the time that he was "on call" or "on hand" to assist with technical support.  K&E responded:

> The Initial Report identifies fourteen time entries of Derek Bremer's related to his providing on-site trial support in Pittsburgh for the Phase 2 Hearings, and requests that we advise you of whether Derek was performing tasks directly related to the case for all his billed time, or whether some of his entries represent time spent "on call."

> Derek's many on-site trial support tasks included: working with local counsel's technology and legal staffs to ascertain capabilities and procure needed resources for use by the hearing team; coordinating with a technology rental company to acquire additional resources for use during trial; setting up all computers and associated technology for use by the trial team during trial; setting up technology in the courtroom for use by trial presentation specialists; setting up technology in the court conference room for use by attorneys and staff during trial; and providing support with regard to all of these technology setups by troubleshooting and resolving issues as they arise.

> None of Derek's days at the trial site were the same.  On days where the team was preparing for court, he assisted with setup of technologies and resolved any equipment issues that arose.  On court days, he assisted with the technological aspects of needed documents and demonstratives.  During court proceedings, he remained mainly in the courthouse conference room to assist the legal team with the preparation of trial exhibits, and printing/gathering cases and other documents that were mentioned in court and not otherwise available to the trial team.  During the evenings, he continued to provide technical support and also assisted the graphics and trial presentation specialists with various trial projects.

> If there was a block of time during any given hearing day during which Derek was not actively and directly providing technical assistance, he turned his attention

to assisting the graphics and trial presentation specialists as described above. None
of his billed time can be considered "on call" or "on hand" time.

　　　　　For these reasons, K&E respectfully requests payment in full for Derek
Bremer's time.

We accept K&E's response and have no objection to these fees.

　　　　　9.　　　In our initial report, we noted the following time entries in which there is a

discrepancy between the total time billed and the time recorded in parentheses within the time entry:

|   |   |   |   |   |
|---|---|---|---|---|
| a. | 9/3/2009 | Deanna D Boll | 14.30 | Prepare trial materials and participate in conferences with co-proponents re same (11.2); prepare post-trial briefing order (.8); correspond with L. Esayian and T. Rea re PD CMO (.5); draft revisions to same (1.3). |

*(The time recorded in parentheses totals 13.80 hours, for a difference of 0.5 hours
and $337.50 in fees.)*

|   |   |   |   |   |
|---|---|---|---|---|
| b. | 9/13/2009 | Lisa G Esayian | 8.70 | Correspond with J. Brooks re motion to strike Speights' late Florence designations (.3); correspond with R. Horkovich re witnesses and evidence for various insurers (.5); correspond with J. Brooks re 1006 summaries for Hughes testimony (.5); correspond with N. Finch re same (.5); correspond with plan proponents re BNSF's proposed plan modifications (.4); correspond with BNSF re same (.3); revise J. Hughes testimony outline (1.0); confer with team (1.0); correspond with M. Plevin re R. Finke testimony re surety bond issues (.4); correspond with D. Speights re his witnesses for confirmation hearing (.3); prepare R. Finke and J. Hughes slides for tomorrow's testimony (.5); confer with R. Finke to prepare his testimony (1.5); revise Sanders proffer (.5). |

*(The time recorded in parentheses totals 7.70 hours, for a difference of 1.0 hour and
$735.00 in fees.)*

|   |   |   |   |   |
|---|---|---|---|---|
| c. | 9/15/2009 | Elli Leibenstein | 14.00 | Confer with D. Bernick re best interests (.9); analyze best interests issue (5.8); review P. Zilly deposition (1.7); confer with P. Zilly re |

trial (1.9); confer with D. Martin re trial (1.1);<br>revise charts (2.4).

*(The time recorded in parentheses totals 13.80 hours, for a difference of 0.2 hours and $137.00 in fees.)*

We asked K&E whether it agreed that reductions were warranted for these time entries, and K&E responded: "... Each of these three entries contains a discrepancy due to an error made in the process of revising time entries, and K&E agrees with the time reductions suggested in the Initial Report."

We appreciate K&E's response and recommend a reduction of $1,209.50 in fees.

　　10.　　We noted the following car rental charge which, without additional information, appeared expensive:

| | | |
|---|---|---|
| 8/26/2009 | 729.47 | Peter Farrell, Car Rental, Libby, MT, 08/25/09 to 08/28/09 (Attend Deposition) |

In response to our inquiry, K&E provided the following information:

> This charge was for the rental of a sports utility vehicle used by Peter Farrell and Patrick King for travel between Spokane, WA (the airport they flew into) and Libby, MT, where they were deposing four Libby claimants' different witnesses. Because Libby is a remote location without assurance of a reliable and secure receiving site for the deposition materials, Peter and Patrick opted to ship the materials to a Spokane law firm whose space K&E had previously used for depositions. They then drove the materials to Libby in the SUV. The materials included approximately a dozen boxes plus luggage for several days of travel. Since there are no direct flights to Libby, they would have needed to drive to Libby from Spokane regardless of where the materials were shipped, so a vehicle rental charge would have been incurred in any event.

> Because this car service expense is properly chargeable to the Debtors' estate, K&E respectfully requests full reimbursement for the charge.

We accept K&E's response and have no objection to this expense.

　　11.　　We noted the following hotel charges for which more information was needed:

| | | |
|---|---|---|
| 9/4/2009 | 49,319.82 | RENAISSANCE PITTSBURGH HOTEL - Payment to Renaissance Hotel Rooms for 9/3/09 to 9/17/09 (17 rooms, 207 total nights) for confirmation hearing |

| 9/4/2009 | 64,574.16 | WESTIN CONVENTION CENTER PITTSBURGH - Hotel Rooms for 9/05/09 to 9/17/09 (15 rooms, 196 total nights) for confirmation hearing |

In response to our request, K&E provided us with a copy of the itemized invoices for these charges,

along with the following explanation:

The two hotel charges listed above are both for the cost of hotel rooms for the trial team, the graphics persons employed by the Debtors, and the Grace clients and witnesses during the Phase 2 Hearings.  Despite the Westin expense indicating that the charge was for the September 5th – September 17th period, it actually relates to a hotel room charge for October as well.  See the paragraph below about the Westin charge for more detail.  During the September hearing dates, due to several conventions being held in Pittsburgh, there was limited hotel space available, so the team was spread across the two hotels that month. They were able to fit into one hotel (the Westin) during the October hearing dates.

The Renaissance Hotel expense listed above is for the cost of hotel rooms for members of the Phase 2 Hearing team from September 3rd through September 17th. K&E was charged a nightly rate of $209.00, which is in compliance with your suggested hotel room cost cap.  Attached as <u>Exhibit A</u> is the Renaissance Hotel invoice, together with a chart which lists the number of rooms booked for each date, room rate, and applicable taxes.

The Westin Convention Center charge above is for the cost of hotel rooms for members of the Phase 2 Hearing team from September 6th through September 17th, and for rooms from October 8th through October 12th.  The Debtors were charge a nightly rate of $289.00, which is in compliance with your suggested hotel room cost cap.  Attached as <u>Exhibit B</u> is the invoice from the Westin, together with a chart listing the number of rooms booked for each date, room rate, and applicable taxes along with the invoice from the Westin Hotel.

We accept K&E's response and have no objection to these expenses.

12.    We noted the following air fare charges for which more information was needed:

| 9/7/2009 | 1,533.20 | Ted Freedman, Airfare, Pittsburgh, PA, 09/07/09 to 09/17/09 (Court Hearing) |
| 9/7/2009 | 1,831.20 | Brian Stansbury, Airfare, Pittsburgh, PA, 09/07/09 to 09/11/09 (Trial) |
| 9/13/2009 | 1,818.20 | Heather Bloom, Airfare, Hartford/Pitt/Wash, 09/13/09 |

to 09/16/09 (Trial)

In response to our inquiry, K&E provided the following information:

> 9/7/2009      1,533.20      Ted Freedman, Airfare, Pittsburgh, PA, 09/07/09 to
>                                      09/17/09 (Court Hearing)
>
> This airfare expense is for the cost of Ted Freedman's round-trip coach-class ticket from Newark, NJ to Pittsburgh, PA purchased for Ted to go to and from the Phase 2 Hearings. Ted was originally scheduled to return from the hearings on September 11th, but he cancelled his flight in order to remain in Pittsburgh to handle pressing Plan confirmation matters. As a result, Ted purchased a separate return ticket on September 17th. This return ticket was the lowest possible coach fare available at the time of purchase. The fare is a "Y" fare including no upgrades of any kind. A baggage fee of $140 ($70 each way) is included in the total amount.

> 9/7/2009      1,831.20      Brian Stansbury, Airfare, Pittsburgh, PA, 09/07/09 to
>                                      09/11/09 (Trial)
>
> This airfare expense is for the cost of Brian Stansbury's round-trip coach class ticket from Washington, D.C. to Pittsburgh, PA, purchased for Brian to go to and from the Phase 2 Hearings. The cost represents the lowest available fully-refundable coach class ticket price available on September 3rd, 2009 (the time of booking). This fare is a "Y" fare; it includes no upgrades of any kind.

> 9/13/2009      1,818.20      Heather Bloom, Airfare, Hartford/Pitt/Wash, 09/13/09
>                                        to 09/16/09 (Trial)
>
> This airfare expense is for the cost of two fully-refundable one-way coach class tickets for Heather Bloom in connection with the Phase 2 Hearings. The September 13th ticket ($868.60) was for travel from Windsor Locks, Connecticut (where Heather had gone for personal reasons) to Pittsburgh, PA. The September 16th ticket ($949.60) was for travel from Pittsburgh, PA to Washington, DC. These costs represent the lowest available fully-refundable coach class ticket prices available at the time of booking. This fare is a "Y" fare; it includes no upgrades of any kind.

> Because each of these airfares was booked at the lowest available coach rate, included no upgrades, and was properly billed to the Debtors, K&E respectfully requests full reimbursement for the cost of these flights.

Based upon K&E's representation that these were the lowest-priced fully-refundable coach fares

available on the dates in question, we accept K&E's response and have no objection to these

expenses.

## CONCLUSION

13.     Thus, we recommend approval of $6,407,674.15 in fees ($6,408,883.65 minus

$1,209.50) and $1,166,546.10 in expenses for K&E's services for the Application Period.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
        Warren H. Smith
        Texas State Bar No. 18757050

Republic Center
325 N. St. Paul Street, Suite 1250
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served by
First Class United States mail to the attached service list on this 25th day of February, 2010.

_____
Warren H. Smith

# SERVICE LIST
## Notice Parties

**The Applicant**
David M. Bernick, P.C.
Deanna Boll
Holly Bull
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

dbernick@kirkland.com
dboll@kirkland.com
hbull@kirkland.com

**The Debtor**
William Sparks
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044
william.sparks@grace.com

**Co-Counsel for the Debtors**
Laura Davis Jones, Esq.
James R. O'Neill
Pachulski, Stang, Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris LLP
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**
Gary M. Becker
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

**United States Trustee**
David Klauder
Office of the United States Trustee
844 King Street, Suite 2311
Wilmington, DE 19801

## EXHIBIT "A"

*(See attached Excel spreadsheet.)*

## EXHIBIT "B"

a.      We noted that on July 27, 2009, attorneys David M Bernick ($955), Theodore L Freedman ($915), Laura G. Esayian ($735), Barbara M Harding ($635), Heather Bloom ($375), and legal assistant Kimberly K Love ($250), attended an omnibus hearing.  The total time spent, including non-working travel, was 62.10 hours.  Total fees were $38,348.50.

| 7/27/2009 | Kimberly K Love | 9.50 | 2,375.00 | Attend omnibus hearing and assist with requests arising from hearing (5.0); prepare and organize materials for use at omnibus hearing (4.5). |
| 7/27/2009 | Heather Bloom | 9.60 | 3,600.00 | Continue preparing folders for D. Bernick for July 27 hearing (1.0); attend and assist during and following hearing (8.6). |
| 7/27/2009 | David M Bernick, P.C. | 10.00 | 9,550.00 | Prepare for and attend court hearing. |
| 7/27/2009 | Lisa G Esayian | 2.00 | 1,470.00 | Participate in portion of omnibus hearing re Royal Insurance settlement. |
| 7/27/2009 | Theodore L Freedman | 12.50 | 11,437.50 | Prepare for and participate in omnibus hearing (12.5); .... |
| 7/27/2009 | Barbara M Harding | 9.00 | 5,715.00 | Prepare materials for D. Bernick re omnibus hearing (4.4); represent client at omnibus hearing (4.6). |
| 7/26/2009 | Kimberly K Love | 2.70 | 675.00 | Travel to Wilmington, DE from Chicago, IL for hearing (billed at half time). |
| 7/26/2009 | Heather Bloom | 1.00 | 375.00 | Travel to Wilmington, DE from Washington, DC for July 27 hearing (billed at half time). |
| 7/26/2009 | David M Bernick, P.C. | 2.20 | 2,101.00 | Travel from Chicago, IL to Philadelphia, PA for hearing (billed at half time). |
| 7/27/2009 | Kimberly K Love | 2.40 | 600.00 | Return travel to Chicago, IL from Wilmington, DE after hearing (billed at half time). |

| 7/27/2009 | Heather Bloom | 1.20 | 450.00 | Return travel to Washington, DC from Wilmington, DE after hearing (billed at half time). |
|---|---|---|---|---|
| | | 62.10 | $38,348.50 | |

b.      We noted that on August 24, 2009, attorneys David M Bernick ($955), Theodore L Freedman ($915), Laura G Esayian ($735), Deanna D Boll ($675), Barbara M Harding ($635), and Justin S Brooks ($415), attended an omnibus hearing.  The total time spent, including non-working travel, was 27.30 hours.  Total fees of $20,867.50 were billed.

| 8/24/2009 | Deanna D Boll | 4.80 | 3,240.00 | Participate in omnibus hearing re lender issues, Libby issues and other confirmation hearing issues, including order of proof. |
|---|---|---|---|---|
| 8/24/2009 | Justin S Brooks | 2.00 | 830.00 | Telephonically attend omnibus hearing re lenders' request for judicial notice. |
| 8/24/2009 | David M Bernick, P.C. | 9.00 | 8,595.00 | Prepare for and attend omnibus hearing. |
| 8/24/2009 | Lisa G Esayian | 2.00 | 1,470.00 | Participate telephonically in portions of omnibus hearing re order of proof/witnesses for confirmation hearing and insurance neutrality issues. |
| 8/24/2009 | Theodore L Freedman | 2.50 | 2,287.50 | Participate telephonically in omnibus hearing. |
| 8/24/2009 | Barbara M Harding | 7.00 | 4,445.00 | Prepare materials for D. Bernick for omnibus hearing (3.8); represent client at omnibus hearing (7.0). |
| | | 27.30 | $20,867.50 | |

c.      We noted that on September 1, 2009, attorneys David M Bernick ($955), Theodore

Freedman ($915), and Ellie Leibenstein ($685) attended a telephonic hearing.  The total time spent

was 6.20 hours, for total fees of $5,563.00.

| 9/1/2009 | David M Bernick, P.C. | 3.00 | 2,865.00 | Conduct hearing on Libby issues and prepare for same. |
|---|---|---|---|---|
| 9/1/2009 | Theodore L Freedman | 2.20 | 2,013.00 | Prepare for and participate in telephonic hearing. |
| 9/1/2009 | Elli Leibenstein | 1.00 | 685.00 | Participate in court hearing. |
| | | 6.20 | $5,563.00 | |

 

 

        d.      We noted that on September 8-11, 2009 and September 14-18, 2009, 18 K&E

attorneys and legal assistants attended Phase II of the confirmation hearing, with 9 to 12 people

attending on each day of the hearing.  The total time spent, including non-working travel time, was

925.60 hours for total fees of $452,293.00.

| 9/8/2009 | Kimberly K Love | 21.00 | 5,250.00 | Prepare and organize materials to be used at confirmation hearing (5.1); prepare and organize materials at Court (3.1); attend court for hearing to assist with in-court attorney requests (9.0); prepare and organize materials for use with various witnesses as requested by attorneys (3.8). |
|---|---|---|---|---|
| 9/8/2009 | Morgan Rohrhofer | 20.50 | 3,075.00 | Assist attorneys with in-court requests at confirmation hearing and provide as-needed assistance before and after hearing. |
| 9/8/2009 | Brian T Stansbury | 5.80 | 3,190.00 | Attend hearing re Libby issues and assist D. Bernick with same. |
| 9/8/2009 | Meghan M Haynes | 3.00 | 410.00 | Respond to requests from attorneys at court during hearing. |
| 9/8/2009 | Margaret Jantzen | 5.10 | 1,912.50 | Attend Libby trial and assist D. Bernick with Libby trial issues. |

| 9/8/2009 | Heather Bloom | 7.60 | 2,850.00 | Assist D. Bernick, B. Harding and B. Stansbury and other team members at Day 1 of confirmation hearing re Libby issues. |
| 9/8/2009 | David M Bernick, P.C. | 14.00 | 13,370.00 | Prepare for and attend trial. |
| 9/8/2009 | Theodore L Freedman | 20.00 | 18,300.00 | Participate in Phase II hearing and address various matters in connection with hearing, including conferences with team members re various confirmation issues. |
| 9/8/2009 | Travis J Langenkamp | 2.50 | 650.00 | ..........; attend plan confirmation hearing to assist with in-court attorney needs (2.5). |
| 9/8/2009 | Barbara M Harding | 19.20 | 12,192.00 | Prepare for confirmation trial on Libby issues, including document review, witness preparation, team conferences, preparation of exhibits and demonstratives, and represent client at trial. |
| 9/9/2009 | Kimberly K Love | 20.50 | 5,125.00 | Prepare and organize materials for court (2.2); attend confirmation hearing to assist with attorney requests (7.9); prepare and organize various materials for use with witnesses as requested by attorneys (10.4). |
| 9/9/2009 | Morgan Rohrhofer | 17.80 | 2,670.00 | Assist trial team at confirmation hearing with requests before, during, and after court. |
| 9/9/2009 | Brian T Stansbury | 4.00 | 2,200.00 | Attend confirmation hearing re Libby issues and prepare D. Bernick for cross examination issues. |
| 9/9/2009 | Meghan M Haynes | 17.50 | 3,587.50 | Assist D. Bernick, B. Harding, B. Stansbury and H. Bloom at confirmation hearing (7.5); review and organize materials for 9/10/09 hearing (10.0). |
| 9/9/2009 | Heather Bloom | 9.80 | 3,675.00 | Assist D. Bernick, B. Harding, B. Stansbury and other team members at Day 2 of confirmation hearing re Libby issues. |
| 9/9/2009 | David M Bernick, P.C. | 15.00 | 14,325.00 | Prepare for and attend trial. |

| | | | | |
|---|---|---|---|---|
| 9/9/2009 | Lisa G Esayian | 2.00 | 1,470.00 | Participate by telephone in portion of hearing re Hughes testimony re insurance issues related to Libby claims. |
| 9/9/2009 | Theodore L Freedman | 18.00 | 16,470.00 | Participate in Phase II hearing and address various matters in connection with hearing. |
| 9/9/2009 | Travis J Langenkamp | 2.50 | 650.00 | Attend plan confirmation hearing to assist attorneys with in court requests. |
| 9/9/2009 | Elli Leibenstein | 3.10 | 2,123.50 | Attend portions of hearing telephonically re Libby claims. |
| 9/9/2009 | Barbara M Harding | 18.50 | 11,747.50 | Prepare for and represent client at confirmation hearings re Libby issues. |
| 9/10/2009 | Kimberly K Love | 19.80 | 4,950.00 | Prepare and organize materials for use at court (3.0); attend confirmation hearing to assist with attorney requests (8.1); prepare and organize materials requested by various attorneys (3.9); prepare and organize materials for use with various witnesses (4.8). |
| 9/10/2009 | Maria D Gaytan | 18.80 | 2,726.00 | Prepare and organize various materials for use at Phase II confirmation hearing trial as requested by various attorneys (10.8); review and obtain various materials to be used by witnesses for trial testimony (8.0). |
| 9/10/2009 | Morgan Rohrhofer | 18.80 | 2,820.00 | Assist attorneys with exhibits and document preparation at confirmation hearing. |
| 9/10/2009 | Brian T Stansbury | 1.50 | 825.00 | Attend confirmation hearing and respond to requests from D. Bernick. |
| 9/10/2009 | Meghan M Haynes | 10.00 | 2,050.00 | Respond to requests from attorneys at court during hearing. |
| 9/10/2009 | Margaret Jantzen | 9.00 | 3,375.00 | Conduct trial preparation (6.0); participate in court proceedings re Libby issues (3.0). |
| 9/10/2009 | Heather Bloom | 11.30 | 4,237.50 | Prepare and assist D. Bernick, B. Harding, B. Stansbury and other team members at Day 3 of confirmation hearing re Libby issues. |

| 9/10/2009 | David M Bernick, P.C. | 14.00 | 13,370.00 | Prepare for and attend trial. |
| 9/10/2009 | Theodore L Freedman | 15.00 | 13,725.00 | Participate in Phase II hearing and address various matters in connection with hearing. |
| 9/10/2009 | Travis J Langenkamp | 5.00 | 1,300.00 | Attend plan confirmation hearing. |
| 9/10/2009 | Elli Leibenstein | 2.00 | 1,370.00 | Telephonically attend hearing. |
| 9/10/2009 | Barbara M Harding | 17.50 | 11,112.50 | Prepare for and represent client at confirmation hearings. |
| 9/11/2009 | Kimberly K Love | 10.00 | 2,500.00 | ........; attend confirmation hearing to assist with various attorney requests (6.9); prepare and organize materials requested by attorneys (3.1). |
| 9/11/2009 | Morgan Rohrhofer | 13.00 | 1,950.00 | Assist attorneys with confirmation hearing requests. |
| 9/11/2009 | Brian T Stansbury | 6.00 | 3,300.00 | Attend confirmation hearing and respond to requests from B. Bernick. |
| 9/11/2009 | Meghan M Haynes | 9.50 | 1,947.50 | Respond to requests from attorneys at court during hearing. |
| 9/11/2009 | Margaret Jantzen | 9.50 | 3,562.50 | Participate in court proceedings (7.5); prepare for in-court testimony (2.0). |
| 9/11/2009 | Heather Bloom | 7.60 | 2,850.00 | Assist D. Bernick, B. Harding and B. Stansbury and other team members at Day 4 of confirmation hearing re Libby issues. |
| 9/11/2009 | Justin S Brooks | 5.10 | 2,116.50 | Prepare for, attend and assist at trial. |
| 9/11/2009 | David M Bernick, P.C. | 12.00 | 11,460.00 | Prepare for and attend trial. |
| 9/11/2009 | Lisa G Esayian | 3.00 | 2,205.00 | Attend confirmation hearing for Posner testimony. |
| 9/11/2009 | Theodore L Freedman | 20.00 | 18,300.00 | Participate in Phase II hearing and address various matters in connection with hearing. |
| 9/11/2009 | Barbara M Harding | 12.60 | 8,001.00 | Prepare for and represent client at |

| | | | | |
|---|---|---|---|---|
| | | | | confirmation hearings. |
| 9/14/2009 | Christopher T Greco | 6.40 | 3,008.00 | Attend confirmation hearing telephonically re relevant indirect asbestos claim testimony, third party release testimony, debtor release testimony, successor claims injunction testimony and relevant MCC, BNSF, State of Montana and insurer-related testimony. |
| 9/14/2009 | Kimberly K Love | 19.50 | 4,875.00 | Prepare and organize materials for Court (3.5); attend confirmation hearing to assist with various attorney requests (8.1); prepare and organize materials requested by various attorneys (4.1); assist with preparation of witness materials (3.8). |
| 9/14/2009 | Morgan Rohrhofer | 19.50 | 2,925.00 | Assist attorneys with confirmation hearing exhibits and other document requests. |
| 9/14/2009 | Meghan M Haynes | 10.00 | 2,050.00 | Attend court and assist with requests from attorneys with documents and plan edits. |
| 9/14/2009 | David M Bernick, P.C. | 12.00 | 11,460.00 | Prepare for and attend trial. |
| 9/14/2009 | Lisa G Esayian | 7.00 | 5,145.00 | Attend E. Inselbuch and J. Hughes confirmation hearing testimony re TDPs, insurance and third-party claims issues (5.0); conduct examination of R. Finke re release and exculpation issues (2.0). |
| 9/14/2009 | Theodore L Freedman | 20.00 | 18,300.00 | Participate in Phase II hearing and address various matters in connection with hearing. |
| 9/14/2009 | Elli Leibenstein | 3.00 | 2,055.00 | Telephonically attend hearing. |
| 9/14/2009 | Barbara M Harding | 5.70 | 3,619.50 | Represent client at confirmation trial. |
| 9/15/2009 | Kimberly K Love | 18.80 | 4,700.00 | Prepare and organize materials for Court (4.2); attend confirmation hearing to assist with various attorney requests (8.0); prepare and organize witness materials (3.8); prepare and organize various materials requested by attorneys (2.8). |

| | | | | |
|---|---|---|---|---|
| 9/15/2009 | Maria D Gaytan | 19.50 | 2,827.50 | Prepare and organize various materials for use at Phase II confirmation hearing trial as requested by various attorneys (11.0); review and obtain various materials to be used by witnesses for trial testimony (8.5). |
| 9/15/2009 | Morgan Rohrhofer | 19.50 | 2,925.00 | Assist attorneys with confirmation hearing needs. |
| 9/15/2009 | Meghan M Haynes | 10.00 | 2,050.00 | Attend court and assist with requests from attorneys. |
| 9/15/2009 | David M Bernick, P.C. | 13.00 | 12,415.00 | Prepare for and attend trial. |
| 9/15/2009 | Lisa G Esayian | 6.00 | 4,410.00 | Attend portions of confirmation hearing re insurance and third-party claims issues. |
| 9/15/2009 | Theodore L Freedman | 14.00 | 12,810.00 | Participate in Phase II hearing and conduct/address various matters in connection with hearing, including conferring and corresponding with client and team. |
| 9/15/2009 | Elli Leibenstein | 1.50 | 1,027.50 | Participate in hearing. |
| 9/15/2009 | Barbara M Harding | 4.50 | 2,857.50 | Represent client at confirmation trial. |
| 9/16/2009 | Kimberly K Love | 18.50 | 4,625.00 | Prepare and organize materials for use in court (3.1); attend confirmation hearing to assist with attorney requests (7.9); prepare and organize witness materials (4.0); prepare and organize materials requested by various attorneys (3.5). |
| 9/16/2009 | Morgan Rohrhofer | 18.50 | 2,775.00 | Assist attorney team with confirmation hearing needs. |
| 9/16/2009 | Meghan M Haynes | 17.70 | 3,628.50 | Attend court and assist with requests from attorneys (10.0); assist E. Leibenstein, J. Brooks and N. Kritzer with preparation of hearing material (7.7). |
| 9/16/2009 | Justin S Brooks | 9.50 | 3,942.50 | Prepare for and attend trial on lender issues. |
| 9/16/2009 | David M Bernick, P.C. | 13.00 | 12,415.00 | Prepare for and attend trial. |

| 9/16/2009 | Lisa G Esayian | 3.00 | 2,205.00 | Attend portion of confirmation hearing re insurers' proffers of exhibits and completion of cross examination of R. Finke. |
|---|---|---|---|---|
| 9/16/2009 | Theodore L Freedman | 15.00 | 13,725.00 | Participate in Phase II hearing, confer and correspond with team members re same and prepare materials in connection with hearing. |
| 9/16/2009 | Elli Leibenstein | 8.00 | 5,480.00 | Attend court hearing on solvency issues. |
| 9/16/2009 | Eric F Leon | 9.50 | 6,792.50 | Prepare for and attend trial on lender issues. |
| 9/17/2009 | Nate Kritzer | 4.10 | 1,455.50 | Attend trial re issues on satisfaction of 524(g). |
| 9/17/2009 | Kimberly K Love | 4.00 | 1,000.00 | Prepare and organize materials for court (2.1); attend confirmation hearing to assist with attorney requests (4.0); prepare and organize materials for use in Court (1.9); prepare materials to be returned to Chicago (3.8). |
| 9/17/2009 | Morgan Rohrhofer | 11.50 | 1,725.00 | Assist with confirmation hearing with exhibits and other document requests. |
| 9/17/2009 | Deanna D Boll | 3.80 | 2,565.00 | Attend confirmation hearing for information related to best interests and PD FCR testimony. |
| 9/17/2009 | Meghan M Haynes | 4.00 | 820.00 | Attend court and assist with requests from attorneys. |
| 9/17/2009 | David M Bernick, P.C. | 14.00 | 13,370.00 | Prepare for and attend trial. |
| 9/17/2009 | Theodore L Freedman | 12.00 | 10,980.00 | Participate in Phase II hearing and address various matters in connection with hearing. |
| 9/17/2009 | Elli Leibenstein | 1.00 | 685.00 | Attend court hearing re Zilly issues on best interests test. |
| 9/18/2009 | Kimberly K Love | 4.80 | 1,200.00 | Prepare and organize materials during and after hearing. |
| 9/5/2009 | Kimberly K Love | 2.50 | 625.00 | Travel from Chicago, IL to Pittsburgh, PA for confirmation hearing (billed at half time). |

| 9/5/2009 | Maria D Gaytan | 2.50 | 362.50 | Travel from Chicago, IL to Pittsburgh, PA for Phase II confirmation trial (billed at half time). |
| 9/5/2009 | Morgan Rohrhofer | 2.60 | 390.00 | Travel from Washington, DC to Pittsburgh, PA for trial (billed at half time). |
| 9/6/2009 | Nate Kritzer | 1.80 | 639.00 | Travel from New York, NY to Pittsburgh, PA for trial (billed at half time). |
| 9/6/2009 | Margaret Jantzen | 2.00 | 750.00 | Travel from Chicago, IL to Pittsburgh, PA for trial (billed at half time). |
| 9/6/2009 | Heather Bloom | 1.60 | 600.00 | Travel from Washington, DC to Pittsburgh, PA for trial (billed at half time). |
| 9/6/2009 | Justin S Brooks | 1.90 | 788.50 | Travel from New York, NY to Pittsburgh, PA for trial (billed at half time). |
| 9/7/2009 | Deanna D Boll | 1.20 | 810.00 | Travel from New Jersey to Pittsburgh, PA for confirmation hearing (billed at half time). |
| 9/7/2009 | Brian T Stansbury | 1.10 | 605.00 | Travel from Washington, DC to Pittsburgh, PA for confirmation hearing (billed at half time). |
| 9/7/2009 | Elli Leibenstein | 1.20 | 822.00 | Travel from Chicago, IL to New York, NY for expert conference (billed at half time). |
| 9/8/2009 | Meghan M Haynes | 2.00 | 410.00 | Travel to Pittsburgh for plan confirmation hearing (billed at half time). |
| 9/9/2009 | Eric F Leon | 1.00 | 715.00 | Travel from Baltimore, MD to Pittsburgh, PA for confirmation hearing (billed at half time). |
| 9/11/2009 | Brian T Stansbury | 1.10 | 605.00 | Return travel to Washington, DC from Pittsburgh, PA after confirmation hearing (billed at half time). |
| 9/11/2009 | Eric F Leon | 1.30 | 929.50 | Return travel from Pittsburgh, PA to New York, NY after confirmation hearing (billed at half time). |
| 9/12/2009 | Margaret Jantzen | 2.50 | 937.50 | Return travel from Pittsburgh, PA to Chicago, |

|  |  |  |  | IL after confirmation hearing (billed at half time). |
| --- | --- | --- | --- | --- |
| 9/13/2009 | Elli Leibenstein | 1.00 | 685.00 | Travel from Chicago, IL to Pittsburgh, PA for confirmation hearing (billed at half time). |
| 9/13/2009 | Eric F Leon | 1.10 | 786.50 | Travel from New York, NY to Pittsburgh, PA for confirmation hearing (billed at half time). |
| 9/16/2009 | Heather Bloom | 2.00 | 750.00 | Return travel from Pittsburgh, PA to Washington, DC after confirmation hearing (billed at half time). |
| 9/16/2009 | Eric F Leon | 1.60 | 1,144.00 | Return travel to New York, NY from Pittsburgh, PA after confirmation hearing (billed at half time). |
| 9/17/2009 | Nate Kritzer | 2.50 | 887.50 | Return travel from Pittsburgh, PA to New York, NY after confirmation hearing (billed at half time). |
| 9/17/2009 | Deanna D Boll | 1.50 | 1,012.50 | Return travel from Pittsburgh, PA to New Jersey after confirmation hearing (billed at half time). |
| 9/17/2009 | Justin S Brooks | 2.00 | 830.00 | Return travel from Pittsburgh, PA to New York, NY after confirmation hearing (billed at half time). |
| 9/17/2009 | Elli Leibenstein | 1.20 | 822.00 | Return travel to Chicago, IL from Pittsburgh, PA after confirmation hearing (billed at half time). |
| 9/18/2009 | Kimberly K Love | 2.00 | 500.00 | Return travel to Chicago, IL from Pittsburgh, PA after confirmation hearing (billed at half time). |
| 9/18/2009 | Maria D Gaytan | 2.00 | 290.00 | Return travel to Chicago, IL from Pittsburgh, PA after confirmation hearing (billed at half time). |
| 9/18/2009 | Meghan M Haynes | 2.20 | 451.00 | Return travel to Washington, DC from Pittsburgh, PA after confirmation hearing (billed at half time). |

925.60     $452,293.00

**EXHIBIT "C"**

| | | | |
|---|---|---|---|
| 9/4/2009 | Derek J Bremer | 9.50 | Provide on-site trial support in Pittsburgh for hearing. |
| 9/5/2009 | Derek J Bremer | 9.00 | Provide on-site trial support in Pittsburgh for hearing. |
| 9/6/2009 | Derek J Bremer | 10.30 | Provide on-site trial support in Pittsburgh for hearing. |
| 9/7/2009 | Derek J Bremer | 12.50 | Provide on-site trial support in Pittsburgh for hearing. |
| 9/8/2009 | Derek J Bremer | 15.00 | Provide on-site trial support in Pittsburgh for hearing. |
| 9/9/2009 | Derek J Bremer | 15.80 | Provide on-site trial support in Pittsburgh for hearing. |
| 9/10/2009 | Derek J Bremer | 16.50 | Provide on-site trial support in Pittsburgh for hearing. |
| 9/11/2009 | Derek J Bremer | 8.80 | Provide on-site trial support in Pittsburgh for hearing. |
| 9/12/2009 | Derek J Bremer | 5.50 | Provide on-site trial support in Pittsburgh for hearing. |
| 9/13/2009 | Derek J Bremer | 10.00 | Provide on-site trial support in Pittsburgh for hearing. |
| 9/14/2009 | Derek J Bremer | 13.80 | Provide on-site trial support in Pittsburgh for hearing. |
| 9/15/2009 | Derek J Bremer | 15.30 | Provide on-site trial support in Pittsburgh for hearing. |
| 9/16/2009 | Derek J Bremer | 15.30 | Provide on-site trial support in Pittsburgh for hearing. |
| 9/17/2009 | Derek J Bremer | 10.00 | Provide on-site trial support in Pittsburgh for hearing. |

167.30

# RESPONSE EXHIBIT "1"

<u>Multiple K&E Professionals' and/or Paraprofessionals' Attendance at Hearings . . . .</u>

Virtually every past initial fee report, including the current one, has requested that we justify the presence of multiple professionals at various hearings.  We have explained that we staff the Debtors' Case as leanly as possible without sacrificing quality of work product.[4]

The Initial Report requests that we explain the necessity of multiple K&E professionals' and paraprofessionals' attendance at four hearings:  the July omnibus hearing, the August omnibus hearing, a September 1st hearing on Libby issues, and the Phase 2 Hearings held in September.

First, as a general matter, most of the attorneys on the Grace bankruptcy team are responsible for certain specific subject matters, and, therefore, when there are portions of a hearing related to those subject matter areas, the responsible attorneys need to participate (at least telephonically) so that they can (i) answer questions as they arise during the hearing, and (ii) handle any immediate follow-up that needs to be done.  David Bernick and Ted Freedman are the two exceptions to this rule -- together, they are responsible for the entire Case; thus, they need to participate in all hearings, with minor exceptions (for example, they might decide not to participate in an omnibus hearing if there is nothing of consequence on the agenda.)

We address each hearing, and each such professional's or paraprofessional's respective responsibilities, in the lettered paragraphs below.

(a)    July 27th, 2009 Omnibus Hearing

*Bernick, Freedman, Esayian, Harding, Bloom, Love*

Significant matters up at the July omnibus hearing included:

(i)      Grace's motion for a protective order and objections to Anderson Memorial Hospital's notice of deposition of Mark Shelnitz;

(ii)     Libby claimants' motion to reconsider modified order granting in part motion of Arrowood Indemnity Company (f/k/a Royal Indemnity Co.) to strike expert report of Dr. Alan Whitehouse, or, alternatively, to compel the production of documents on which he relied and for entry of a confidentiality

---

[4]We have also provided detailed explanations of Case billers' roles and responsibilities, and have explained our philosophy that, when we have multiple professionals attend a hearing or conference, it is because we have determined that it would be more cost-effective for the professionals involved to attend, rather than having the needed information "trickle down."

order;

(iii)      Arguments on Grace's motion for order approving settlement agreement and mutual release with the Royal parties (Libby claimants had moved to defer consideration of the motion) – and arguments on Libby claimants' motion to compel Debtors and Arrowood to respond to discovery requests in connection with Debtors' motion to approve Royal parties settlement agreement;

(iv)      Plan Proponents' expedited motion *in limine* to exclude Dr. Terry Spear's testimony and expert report;

(v)      Pre-trial conference on Phase 2 Hearings issues;

(vi)      Status conference on remaining confirmation hearing Phase I issues;

(vii)      Arguments on Arrowood's motion for relief against Libby claimants based on their designation of over 100 witnesses for the confirmation hearing; and

(viii)      Motion for leave to file supplement to Libby claimants' objection to the plan proponent's first amended plan of reorganization (the "Plan").

Lead Case attorney and senior litigation partner David Bernick, together with senior restructuring partner Ted Freedman, conducted the July omnibus hearing on behalf of Grace. They were involved in all of the matters up at the hearing, David from a litigation perspective and Ted from a bankruptcy perspective.

D.C. litigation partner Barbara Harding assisted David with the Libby matters, as she has worked significantly on Libby issues in both the Debtors' chapter 11 cases, as well as the criminal case, which involved many of the same Libby-related issues and experts.

Chicago litigation partner Lisa Esayian is responsible for all insurance-related issues, a great number of which were up at the July hearing. The motion for approval of Grace's settlement with Royal Insurance was extremely important, as Royal was one of the principal Plan objectors. The settlement was a significant agenda item at the hearing because the Libby claimants and BNSF both contested it. Lisa was involved in negotiating and drafting the settlement, and needed to participate (via telephone) in the portion of the hearing related to Royal issues. D.C. litigation associate Heather Bloom assisted Barb and David prior to and during the hearing with respect to Libby-related issues. Heather searched for specific Libby-related pleadings, reports, transcript citations, and other items requested by Barb or David and created folders for each. Under Barb's supervision, she highlighted key points in the documents and created cover pages and flags for David to reference during the hearing. Heather also drafted a proposed order during the hearing, based on an oral ruling from the Judge. Chicago legal assistant Kimberly Love attended in her usual hearing role,

in order to assist with obtaining materials or information requested by the attorney team.[5]  She made sure that the necessary hearing materials got delivered and set up, provided real-time hearing assistance as needed, and cleaned up and organized hearing materials at the end of the day.

      (b)      August 24th, 2009 Omnibus Hearing

      *Bernick, Freedman, Esayian, Boll, Harding, Brooks*

      Significant items up at the August omnibus hearing included:

      (i)      Plan Proponents' joint expedited motion *in limine* to exclude Dr. Spear's expert report;

      (ii)      Libby claimants' motion to supplement Dr. Molgaard's expert report;

      (iii)      Libby claimants' motion to strike or limit Dr. Stockman's expert testimony;

      (iv)      Libby claimants' motion to strike or limit Dr. Parker's expert testimony;

      (v)      Libby claimants' motion to strike or limit, and to allow for rebuttal of Dr. Friedman's testimony;

      (vi)      Joint motion of asbestos personal injury ("PI") claimants and PI future claimants' representative for an order limiting the Court's findings on solvency;

      (vii)      Motion for leave to file supplement to Libby claimants' objection to the first amended Plan.

      and Phase 2 Hearings Issues:

      (viii)      Status on Phase 2 Hearings – final order of witnesses and any other matters pending regarding the start of the Phase 2 Hearings;

      (ix)      Status conference on Phase 1 confirmation hearing issues, including the status of insurance neutrality negotiations; and

      (x)      Matters regarding lender impairment.

Again, David and Ted conducted the hearing on behalf of the Debtors, in their roles described in ¶ 4(a) above.

---

[5]See ¶ 2(a) of the fee response for the thirty-third interim period (the "Thirty-Third Interim Period Response") for a more detailed description of Kim's bankruptcy hearing role.

Barb assisted David on the Libby matters as described above.

Lisa, as the partner responsible for preparing the Debtors' witnesses and evidence for the Phase 2 Hearings regarding insurance and PD issues, participated in the hearing items relating witnesses for the Phase 2 Hearings and the items relating to insurance neutrality.

I attended the hearing telephonically as I was the primary drafter of the order of proof for the Phase 2 Hearings, and I worked with opposing counsel, along with Lisa and Barb, to resolve disputes related to same.  I am also the primary drafter of the Plan, and issues related to insurance neutrality and lender impairment are of critical importance to the Plan and plan settlement negotiations in which I have been involved over the course of many months.

New York litigation associate, Justin Brooks, assisted mainly with lender-related issues with regard to the August omnibus hearing.  Under Eric Leon's supervision, Justin drafted a motion opposing the lenders' taking judicial notice of various materials, a motion that was argued at the hearing.  Justin prepared David to argue these issues, and he (Justin) needed to telephonically attend the hearing in order to be able to provide assistance to David on this issue.

(c)    September 1st, 2009 Telephonic Hearing on Libby Issues

*Bernick, Freedman, Leibenstein*

The September 1st telephonic hearing was held in order for the Court to hear arguments concerning the Libby claimants' motion *in limine* to preclude expert testimony by Pamela Zilly concerning the best interests standard under Code section 1129(a)(7).

David Bernick and Ted Freedman participated telephonically in their roles described above. In particular, in this instance, matters involving Ms. Zilly's testimony respecting the best interests test were of critical importance to Plan confirmation.  Ms. Zilly was the Debtors' key witness on this point, and as you are aware, the best interests test must be satisfied as one of the conditions to confirmation.  Accordingly, it was important for David and Ted to both participate to ensure that such testimony would not be stricken, and so that it was clear to the court that Ms. Zilly's testimony was needed in order for the Debtors to meet their burden of proof under section 1129 of the Bankruptcy Code.

Elli Leibenstein participated in the hearing because he had worked extensively with Ms. Zilly in connection with her work on the best interests test, and he could answer more specific questions related to her upcoming testimony.

(d)    September 8th – 11th and September 14th – 17th Phase 2 Hearings

September 8th – 11th: *Love, Rohrhofer, Stansbury, Haynes, Jantzen, Bloom, Bernick, Freedman , Harding, Esayian, Leibenstein, Gaytan, Brooks*

September 14th – 17th: *Greco, Love, Rohrhofer, Haynes, Bernick, Esayian, Freedman, Leibenstein, Gaytan, Brooks, Harding, Leon, Kritzer, Boll*

The Phase 2 Hearings were the hotly contested confirmation hearings in the Case, excepting some of the Lender issues and insurance neutrality issues that were addressed in June 2009. They spanned two weeks in September: the 8th - 11th and then the 14th - 17th. The Phase 2 Hearings were organized by topic with Libby issues addressed first, Lender issues addressed next, and then all other objections thereafter.

As we discussed in the Thirty-Third Interim Period Response, confirmation team attorneys' participation, throughout the Plan confirmation proceedings, on any given hearing date has depended upon that particular attorney's role and responsibilities with regard to both the given phase of the hearings and the specific items on the hearing agenda.

The Phase 2 Hearing roles and responsibilities of each of the professionals and paraprofessionals whose time entries are listed in Exhibit "B" to the Initial Report are set forth below.[6]

David and Ted led the Phase 2 Hearings on behalf of the Debtors. As with all hearings in the Case, they are ultimately responsible for all issues from a litigation side and bankruptcy side, and, therefore, they are heavily involved in every major hearing.

As described above, Lisa handles all insurance issues in connection with Plan confirmation, and she attended relevant portions of the Phase 2 Hearings in order to address insurance neutrality issues, and to be able to follow up on additional insurance-related issues that arose from the Phase 2 Hearings. D.C. litigation partner Elli Leibenstein worked on the PI and best interests issues (raised by the Libby claimants), feasibility and PD estimation issues (raised by Anderson Memorial), and PI liability and solvency issues (relevant to the bank lenders issues). He participated in the portions of the Phase 2 Hearings related to these issues.

In addition as described above, I am the K&E partner directly responsible for drafting the Debtors' Plan, and as such, I was heavily involved in hearing preparation related to plan confirmation including preparing demonstratives, negotiating potential settlements with plan objectors, negotiating the order of proof and matters related to certain trial exhibits, possible plan amendments, and the like. I attended the Phase 2 Hearings both weeks, but primarily performed support tasks related to the trial either in the courthouse conference room or at local counsel's offices while focusing attention on certain testimony vis-à-vis a "Live Note" broadcast, rather than listening to all of the testimony at the courthouse.

_____

[6]We note that many of the time entries of those professionals and paraprofessionals listed on Exhibit "B" to the Initial Report are quite detailed, and we do not repeat them here. Instead, we provide you with a description of each person's hearing-related role. In the case of those entries that may not have been descriptive, we do include additional detail here about that person's daily hearing tasks.

Barb assisted David on all things Libby, and she handled the examination of certain Libby witnesses.  Barb did not attend the Phase 2 Hearings after the Libby witness testimony was complete.

D.C. litigation partner Brian Stansbury's role was to prepare Debtors' expert witness Dr. David Weill to testify, and Brian also assisted Barb and David in preparing for the cross examinations of Drs. Whitehouse, Frank, and Molgaard.  In addition, he assisted with preparing Debtors' witness Jay Hughes to testify.  During these witnesses' testimony, Brian had to quickly respond to the Libby claimants' questions and provide David the material needed to address such questions on cross or re-direct. Brian did not attend the Phase 2 Hearings after the Libby witness testimony was complete.

Justin Brooks was most involved with issues related to the bank lenders. He helped prepare cross-examination outlines for witnesses Lewis Kruger and Robert Frezza, as well as direct outlines for Debtors' witnesses Mark Shelnitz and Robert Tarola.  He also worked extensively on graphics and demonstrative exhibits for David's use during the Phase 2 Hearings.  Justin also helped prepare graphics and packets of materials on Libby issues and insurance issues, and organized materials by subject for the cross-examinations of Dr. Molgaard and other Libby witnesses.  He and associate Nathaniel Kritzer reviewed hundreds of adverse party exhibits for the purpose identifying objection grounds.  This review helped David react quickly in court and to keep those exhibits from coming into evidence. Justin also prepared summaries and graphics of key testimony on non-products issues in relation to Jay Hughes' testimony.  During court, Justin revised and updated direct and cross outlines for key witnesses based on information that came into evidence during the Hearings.

New York litigation associate Nathaniel Kritzer assisted with the preparation of the Debtors' witnesses and evidence relating to the issuance of injunctions under Code Section 524(g).  He assisted with:  preparing objections to the 1,600 exhibits identified by the parties for possible submission into evidence; managing documents during the hearing; and the preparation of related graphics.  Nate attended that part of the Phase 2 Hearings during which the plan proponents put on evidence to support the issuance of the Section 524(g) injunctions called for by the Plan.  He had worked closely with Ted Freedman before the hearing to outline the evidence and testimony needed to be introduced to create a record that would support all necessary findings for issuance of the injunctions.  Nate needed to be at this portion of the hearings to assist with any questions that arose as well as to assist in managing the documents that supported the findings needed to be made under Section 524(g).  After the trial, Nate was responsible for drafting the sections of the Debtors' post-trial brief relating to issuance of the 524(g) injunctions.

D.C. litigation associate Heather Bloom and Chicago litigation associate Margaret Jantzen (whose role is described below) were the junior associates assisting Brian Stansbury, Barbara Harding, and David Bernick with regard to all Libby issues.  The Libby issues were so numerous and complex that they took up practically the entire first week of the hearings.  During that week, Heather, under Barb's instructions, helped draft last minute Libby-related pleadings; met with the Debtors' expert Dr. Weill in preparation for his testimony; helped create several Libby-related graphics; pulled and highlighted numerous transcript citations from depositions for David to use on

cross-examination; pulled and analyzed charts and reports requested by David; and organized all items into specific folders for David's courtroom use. She assisted Barb and Brian with the review and analysis of the many Libby-related charts and tables on a rolling basis prior to and throughout the course of all the hearing days during which Libby issues were argued. Throughout the Libby portions of the hearings, David would request specific items to use on cross-examination and direct, and Heather would then assist Brian and Barbara in pulling, highlighting, and analyzing those newly-requested documents. Heather returned for a portion of the second week of the hearings, to assist with the preparation of folders for David's courtroom use. This was an efficient use of Heather's time because she was very familiar with the protocol for preparing items for David during the hearing. She gathered documents for portion of the Phase 2 Hearings, and gathered transcript citations and notes for use during the post-trial briefing.

Chicago junior litigation associate Margaret Jantzen attended the hearings on September 8th, 10th, and 11th. On September 8th, she took notes which were used for identifying and pulling testimony from the transcript on Libby-related matters that were important points for rebuttal. She also verified the contents of exhibits and prepared new exhibit versions when needed. On September 10th and 11th, Margaret reviewed materials to find record evidence of witness admissions to be used in cross-examinations scheduled for the next hearing day. During court hours, she performed the same tasks as she did on September 8th.

New York restructuring associate Christopher Greco billed 6.4 hours to the Phase 2 Hearings, on September 14th. Chris had worked with Lisa prior to that hearing day to help prepare witness Richard Finke (Grace in-house counsel) for Mr. Finke's testimony related to both the successor claims issue and the Plan's exculpation and release provisions. Chris listened in only to portions of the hearing during which Mr. Finke testified. Chris needed to be prepared for any follow-up work that might arise from Mr. Finke's examination, questions from the bench, and cross-examination questions. Chris also needed to listen in order to prepare the Debtors' proposed findings of fact and conclusions of law as related to Mr. Finke's areas of testimony.

D.C. senior legal assistant Travis Langenkamp spearheaded the legal assistant projects for the DC attorney team of Barb, Brian and Heather. He also reported to Ted, Elli, Deanna and David, and the NY associates, performing such tasks as they requested. Travis prepared exhibits for expert witnesses and assisted with drafting related demonstratives. He also coordinated with the copy vendor in the Courthouse to prepare copy sets for courtroom distribution, prepared and couriered exhibit packages to and from court, organized, labeled and relabeled folders and binders of last minute exhibits, delivered draft briefs and outlines to attorneys in the courtroom, relayed messages to and from attorneys (due to the Court's restriction on cellular telephone access), and drove witnesses and attorneys to and from the Courthouse.

Chicago legal assistant Kimberly Love attended the hearing in order to perform her usual hearing tasks. She assisted with obtaining materials or information requested by the attorneys and prepared sets of additional required exhibits. She was also charged with ensuring that the materials to be used in the Courtroom got delivered and set up each morning, and she cleaned up and organized hearing materials at the end of each Court day to ensure that the materials got returned

to the proper K&E attorneys or were ready for courtroom use the next day.[7]

New York legal assistant Meghan Haynes attended in order to assist other support personnel when they were overloaded with their specific tasks.  She was primarily responsible for assisting the New York attorney team of Ted, Deanna, Nate, and Justin.  Her original time entries on Initial Report Exhibit "B" set forth the specific tasks she performed.

D.C. case assistant Morgan Rohrhofer reported to Travis Langenkamp.  Morgan attended the Hearings in order to provide exhibits to attorneys, help create exhibits, keep a log of all exhibits used, and provide any other reference materials needed during trial. The exhibit log was a very detailed and precise document, and included information such as hearing date, witness identification and examining attorney, whether or not the exhibit was admitted.  Morgan was assigned the duty of preparing and maintaining the log, which is why she attending every hearing day.  The exhibit log was later used to create a disc for the judge containing the hyperlinked briefs of each party.[8]  The log was also used to create a final binder of the Debtors' exhibits to be used during the continuation of the January hearings.

Chicago case assistant Maria Gaytan assisted the hearing team on September 10th and September 15th.  She did not attend the hearings, but instead remained in local counsel's offices and handled all attorney requests – requests related to documents, pleadings, charts, and hearing material preparation -- not handled by in-court assistants.  She also delivered materials to court as needed on these two hearing dates.

K&E respectfully requests payment in full for the Phase 2 Hearing time of all of these professionals and paraprofessionals.

---

[7]Kim's September 18th time entry listed on Exhibit "B" contains an error.  September 18th was not a hearing day, and rather than "prepare and organize materials during and after hearing," her entry should have read "prepare and organize hearing materials for return to K&E offices." (Many of the hearing materials were to be used for post-trial briefing purposes, and so had to be organized and returned to the appropriate attorneys immediately after the Phase 2 Hearings ended.)

[8]The disc of the hyperlinked briefs allowed the Judge to find a referenced exhibit or other document by clicking on its link set forth in the briefs.