## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 01-1139 (JKF) |
| W.R. GRACE & CO., *et al.*, | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | **Related to Docket No. 21345** |

## RESPONSE OF MARYLAND CASUALTY COMPANY
## IN OPPOSITION TO DEBTORS' OBJECTION TO CLAIMS

Maryland Casualty Company ("MCC"), by and through its undersigned counsel, hereby responds in opposition to *Debtors' Objection to Claims filed by Maryland Casualty Company* [Docket No. 21345] ("Claims Objection") and requests that the Court overrule the Claims Objection.

## I.    PRELIMINARY STATEMENT

**I will not allow the debtor to get out of something that the debtor advocated before this Court**.[1]

These are the words of <u>this</u> Court, in <u>this</u> case.  Like any court, this Court expects and demands that parties who advocate a position will do so because that position, and its underlying facts, are true and correct, and are not just temporary, convenient arguments that can be later abandoned to justify that party's latest needs.

**Ms. Gerard's alleged "independent" claim against Maryland for negligence involves actions that generally only Grace, not Maryland, could have taken such as: providing facilities to prevent exposure to asbestos dust; controlling asbestos dust on premises; or exercising reasonable care in the operation of the Libby Plant.  Maryland could not have taken these actions independently of Grace.**[2]

---

[1] *Transcript of Hearing held on January 5, 2010*, dated January 22, 2010 (U.S. Bankruptcy Court, D. Del., Case No. 01-01139, Docket No. 24181) ("1/5/10 Hearing Transcript"), at 293.

[2] *Debtors' Sur-Reply to Carol Gerard's Reply in Support of Her Motion to Clarify the Scope of, or in the Alternative, to Modify the Preliminary Injunction* [Adv. D.I. 92] ("Debtors' Sur-Reply"), at 2.

These are representations that the above-captioned debtors ("Debtors" or "Grace") made to <u>this</u> Court in <u>this</u> case, as it advocated for, obtained and enforced the Preliminary Injunction (defined below).  The Debtors have enjoyed the fruit of these and other MCC-related representations for the last 8 years, as they continue to benefit from the protections afforded by the Preliminary Injunction.

This Court clearly stated that, if the Debtors advocated a position in this case, they may not abandon that position, regardless of the immediate convenience that the abandonment offers. The Claims Objection is premised upon a transparent reversal of the Debtors' prior, long-standing positions.  This conduct cannot be accepted, and the Claims Objection should be overruled.

## II.    BACKGROUND

### A.    <u>Settlement Between MCC and Debtors</u>

Prior to 1973, MCC issued certain general liability insurance policies to the Debtors ("MCC Policies").  Under separate settlement agreements ("MCC Settlement Agreements"), Debtors and MCC agreed to settle all litigation between them regarding insurance coverage provided by the MCC Policies for, *inter alia*, asbestos-related claims for which Debtors demanded coverage.

The MCC Settlement Agreements addressed, *inter alia*, all claims by third-parties arising from or relating to the exposure to asbestos for which coverage might be sought under the policies. Under the MCC Settlement Agreements, all of MCC's obligations for the defense and indemnification of asbestos-related claims under the MCC Policies were fully and finally exhausted.  Further, the MCC Settlement Agreements obligated W.R. Grace & Co.-Conn and all of its subsidiaries and successors to, *inter alia*, indemnify and hold MCC harmless from and

against all future liability, loss, cost, or expense arising from asbestos-related claims ("MCC Indemnity Rights").

**B.**    **Bankruptcy Filing and Proofs of Claim**

Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") with this Court on April 2, 2001 ("Petition Date"). Subsequently, MCC timely filed sixty-two (62) separate proofs of claim ("Proofs of Claim") – one proof of claim against each of the sixty-two (62) Debtors.  Each Proof of Claim asserts separate, independent claims against the respective Debtor in whose bankruptcy case the Proof of Claim was filed.  The Proofs of Claim, in the aggregate, do not seek duplicate recovery.  Rather, they properly assert valid claims for the Debtors' joint and several liability for both the MCC Indemnity Rights, and MCC's common law indemnity and contribution rights (collectively "MCC Claims").

**C.**    **Preliminary Injunction**

On the Petition Date, Debtors initiated injunction litigation ("PI Litigation") by filing an adversary complaint which sought to preliminarily enjoin asbestos-related claims against Debtors' affiliates and insurers.  On May 3, 2001, this Court issued an order granting Debtors' motion for the entry of a preliminary injunction, staying all asbestos-related "Actions" against "Affiliated Entities."  On January 22, 2002, this Court issued a Modified Preliminary Injunction ("Preliminary Injunction").  The Preliminary Injunction clarified the definition of enjoined "Actions" to include "actions that have not been filed or are not pending as of the date of entry of this Order."

On February 4, 2002, an unaffilitated group of individuals asserting asbestos-related bodily injury claims arising from Debtors' operations in Libby, Montana (collectively "Libby

Plaintiffs") filed a motion to clarify the scope of the Preliminary Injunction ("Clarification

Motion"), asking this Court to "clarify" that the Preliminary Injunction did <u>not</u> enjoin the Libby

Plaintiffs from prosecuting certain claims against MCC.  Specifically, the Libby Plaintiffs sought

to prosecute claims against MCC that they had asserted in a complaint filed in Baltimore City,

Maryland, styled *Carol Gerard v. W.R. Grace and Maryland Casualty Company*, Case No. X-

00-001554,[3] and in complaints filed in Lewis and Clark County, Montana, styled *Schull et al., v.*

*State of Montana and Maryland Casualty Company*, Case No. CDV-2001-704, and *Alfred v.*

*Pennock v. Maryland Casualty Company*, Case No. CDV 2002-233 (collectively, "Existing

Libby Claims").[4]  The Existing Libby Claims are claims based on the Debtors' conduct and

operations that have been creatively crafted in an attempt to implicate MCC.  The Libby

Plaintiffs argued that the Existing Libby Claims were so-called "independent" claims and

therefore should not be enjoined.

On June 20, 2002, this Court denied the Clarification Motion, finding, *inter alia*, no basis

for the Libby Plaintiff's allegations of independent liability against MCC.[5]  Thereafter, the Libby

Plaintiffs filed a motion for reconsideration that this Court denied on August 26, 2002.

The Libby Plaintiffs appealed the order denying the Clarification Motion to the United

States District Court for the District of Delaware ("District Court").  The District Court vacated

this Court's denial of the Clarification Motion, and remanded.  However, on appeal, the District

---

[3] This complaint alleges, e.g., that MCC "encouraged, advised, aided, supported, assisted and abetted Grace whose asbestos products and asbestos dust were substantial contributing factors to the development of Gerard's mesothelioma," ¶ 42.

[4] Copies of these complaints are attached to the Claims Objection as Exhibits B-D.

[5] *See, e.g. Transcript of Hearing held on August 26, 2002*, dated September 9, 2002 (U.S. Bankruptcy Court, D. Del. Case No. 01-01139, Docket No. 2670) ("8/26/02 Hearing Transcript"), at 15.

Court's decision was vacated[6] by the United States Court of Appeals for the Third Circuit, and this Court's rulings were upheld.

The Existing Libby Claims remain pending, but are stayed by the Preliminary Injunction.

**D.      First Amended Plan**

On February 27, 2009, Debtors filed the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders dated as of February 27, 2009* [Docket No. 20872] ("First Amended Plan").    Under the First Amended Plan, MCC is a Settled Asbestos Insurance Company and is fully and permanently protected by the Asbestos Insurance Channeling Injunction from any and all Asbestos PI Claims, including any and all third party claims against MCC that implicate the conduct and liability of the Debtors, their products or their operations.

**E.      Claims Objection**

On April 21, 2009, Debtors filed the Claims Objection seeking to disallow, in their entirety, all of MCC's Proofs of Claim.    The foundation of the Claims Objection is Debtors' allegation that the MCC Claims "incorrectly assert liability of the Debtors to Maryland Casualty on account of Maryland Casualty's independent liability for its own tortuous conduct or for workers compensation policies that it issued."[7]    In the Claims Objection, the Debtors cite only the Existing Libby Claims as examples of such "independent liability."

---

[6] Vacating a lower court's ruling "deprives that [lower] court's opinion of precedential effect."    *O'Connor v. Donaldson*, 422 U.S. 563, 577, (1975); *see also Falcon v. General Telephone Co.*, 815 F.2d 317, 320 (5th Cir.1987) ("[I]n essence, when a judgment is vacated all is effectively extinguished")  (internal quotation marks and citations omitted).  Thus, Debtors' citations to the District Court's vacated opinion have no value whatsoever.

[7] Claims Objection, ¶ 4.  The portion of the Claims Objection based on section 502(e) of the Bankruptcy Code has been withdrawn.

### III.    ARGUMENT

MCC respectfully requests that this Court deny the relief sought in the Claims Objection because (i) the Claims Objection is based upon a complete reversal of Debtors' long standing representations upon which this Court relied in entering prior orders, (ii) MCC Claims arising from the Existing Libby Claims are not "independent," and MCC Claims arising from Prospective Claims (defined below) are not ripe for adjudication, and (iii) the Debtors have failed to meet their burden of proof.

**A.    The Claims Objection Is Based Upon Allegations That Debtors Are Judicially Estopped From Making**

The Debtors' Claims Objection is based on arguments that are diametrically opposite from those that they repeatedly made to this Court in the PI Litigation, wherein Debtors advocated for, obtained and enforced the Preliminary Injunction to enjoin the Libby Plaintiffs from prosecuting alleged independent liability claims against MCC.  This Court has already declared that it will not tolerate such disingenuous litigation tactics[8] and the Debtors are estopped from asserting their new, contradictory positions in support of the Claims Objection.

Judicial estoppel prohibits a party "from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 121 S.Ct. 1808, 1814 (2001).  The purpose of the doctrine is to uphold the integrity of the judicial process by preventing parties from "deliberately changing positions according to the exigencies of the moment." *Id.* at 1815.

Several factors may govern a court's decision whether to apply judicial estoppel, including whether the party's later asserted position was "clearly inconsistent" with its previous position, and whether the party prevailed on its earlier position, "so that judicial acceptance of an

---

[8] 1/5/10 Hearing Transcript, at 293.

inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *New Hampshire v. Maine*, 121 S. Ct. at 1815. The Third Circuit has stated that the imposition of judicial estoppel is justified where: (i) the party to be estopped must have taken two positions that are irreconcilably inconsistent; (ii) the party changes his or her position in bad faith – i.e., with intent to play fast and loose with the court; (iii) the estoppel is tailored to address the harm identified, and no lesser sanction would adequately remedy the damage done by the litigant's misconduct; and (iv) the party to be estopped is given a meaningful opportunity to provide an explanation for its changed position. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 319-20 (3d Cir. 2003) ("The basic principle of judicial estoppel . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory"). However, the circumstances under which judicial estoppel should be applied "are not properly reducible to any general formulation or principle." *New Hampshire v. Maine*, 121 S. Ct. at 1815.

1.      **The Debtors Have Taken Irreconcilably Inconsistent Positions**

The positions taken by the Debtors in the Claims Objection are irreconcilably inconsistent with the positions taken in the PI Litigation.

Underlying Debtors' entire argument in support of the Claims Objection are three basic allegations: (i) claims asserted against MCC by the Libby Plaintiffs are based on MCC's conduct, independent of any conduct or liability of the Debtors; (ii) the Libby Plaintiffs' claims are completely unrelated to insurance coverage provided by MCC; and (iii) the Libby Plaintiffs' claims do not trigger the indemnity provisions of the Settlement Agreements.[9]  However,

---

[9] *See, e.g.*, Claims Objection at ¶ 36, 40, 42.

throughout the PI Litigation, the Debtors argued the opposite. The following are examples of Debtors' prior representations in support of the entry and enforcement of the Preliminary Injunction:

        **a.**        **MCC's Alleged Conduct Is Not Independent of Grace**.

o      "[T]he Libby Plaintiffs cannot establish a cause of action against Maryland that is wholly independent of Grace. Maryland was nothing more than Grace's insurer. It is Grace's mine and Grace's product that allegedly caused the Libby Plaintiffs' injuries. Any duty Maryland had was derivative of Grace."[10]

o      "Ms. Gerard's alleged 'independent' claim against Maryland for negligence involves actions that generally only Grace, not Maryland, could have taken such as: providing facilities to prevent exposure to asbestos dust; controlling asbestos dust on Grace's premises; or exercising reasonable care in the operation of the Libby Plant. Maryland could not have taken these actions independently of Grace."[11]

o      "Ms. Gerard alleges that certain industrial hygiene actions taken by Maryland were the proximate cause of her illness and these alleged actions form the basis of her "independent" negligence claim against Maryland. In fact, to the extent such actions were taken, they would have been performed at Grace's direction, with Grace determining and controlling the scope of Maryland's work."[12]

o      "[T]he Libby Plaintiffs cannot support an independent claim against Maryland since at all relevant times it was acting as no more than Grace's insurer."[13]

---

[10] *Brief of Appellees* (U.S. District Court, D. Del., Civil Action No. 02-1549, Docket No. 12) ("Debtors' District Court Brief"), at 18.

[11] Debtors' Sur-Reply, at 2; *see also, Debtors' Reply to Motion of Carol Gerard; Alfred Pennock, et all; and Billie Schull, et al. (i) for Relief from the Court's June 20, 2002 Order Under Fed. R. Civ. P. 60(b) and Fed. R. Bankr. P. 9024, and/or (ii) to Alter or Amend Said Order Under Fed. R. Civ. P. 59(e) and Fed. R. Bankr. P. 9023, and/or (iii) to Amend Said Order Under Fed. R. Civ. P. 52(b) and Fed. R. Bankr. P. 7052 or, alternatively, (iv) to Reconsider Said Order* [Adv. D.I. 123] ("Debtors' Reply")*, at 3.

[12] Debtors' Reply, at 3. Debtors' Sur-Reply, at 2.

[13] Debtors' District Court Brief, at 21.

o   "It is Grace, not Maryland Casualty, that operated the Libby mine and constructed the dust control system that Ms. Gerard claims was negligently built.[14]

o   "It is Grace's asbestos dust, Grace's dust control system and Grace's maintenance thereof that have allegedly caused the Libby Plaintiff's injuries."[15]

### b.   The Libby Claims Relate to MCC's Role as Insurer.

o   "[A]ny actions of Maryland that occurred at the Libby Mine were clearly taken in the course of Maryland acting as Grace's insurer and assessing or limiting its liability as such."[16]

o   "Ms. Gerard's claims against Maryland Casualty still implicate Debtors' insurance coverage because they put Grace's conduct directly at issue.  By litigating her claims against Maryland Casualty, Grace's actions at the Libby mine will be put in issue, and findings made by the Court and or jury relating to that conduct will likely have the effect of triggering coverage, or affecting whether or not coverage may exist, for Ms. Gerard's claims against Grace."[17]

o   "Ms. Gerard's claims against Maryland relate to Grace's asbestos liabilities at the Libby Plant, which are covered by the Maryland Policies."[18]

o   "Maryland never assumed a role other than as an insurer and this is precisely what the Bankruptcy Court concluded."[19]

### c.   The Libby Claims Trigger MCC's Indemnity Rights

o   "[H]aving settled its coverage issues with Grace, Maryland obtained a contractual release and indemnity from Grace with respect to claims made

---

[14] *Debtors' Opposition to Carol Gerard's Motion to Clarify the Scope of, or in the alternative, to Modify the Preliminary Injunction, and Response to Carol Gerard's Motion to Intervene* [Adv. D.I. 89] ("Debtors' Opposition to Clarification Motion"), at 2.

[15] Debtors' District Court Brief, at 11:

[16] Debtors' District Court Brief, at 20.

[17] Debtors' Opposition to Clarification Motion, at 4.

[18] Debtors' Sur-Reply, at 2. Debtors' Reply, at 3-4.

[19] Debtors' District Court Brief, at 24.

due to asbestos liability.  As a result, any claims made by the Libby Plaintiffs against Maryland trigger the release and a contractual indemnity clause in the Maryland Agreement.  The indemnity claims against Grace's estates is not a possibility.  It is a contractual obligation between Grace and Maryland triggered by the Baltimore and Montana Actions."[20]

o    "So these indemnities, as a result, are designed to be large and broad and they will assert that they're large and broad, and they certainly include exactly this kind of situation.  This is precisely why the indemnities were entered into to begin with, is to make sure that that settlement was a final settlement and the claimants couldn't come after [MCC], basically, to pay out the policy twice."[21]

o    "In the Maryland Agreement, Grace agreed to completely release Maryland from any and all claims related "to any liability imposed on, or alleged against [Grace] . . . (regardless of the legal theory on which such liability is premised), or any casualty or loss of any nature whatsoever, where such actual or alleged liability, casualty or loss "relates to, among other things, Asbestos-Related Claims and alleged misconduct of Maryland relating to its performance under the Primary Policies. . . .  The Actions clearly trigger the release and the indemnity."[22]

o    "Maryland's alleged liability is wholly derivative of the Libby Plaintiffs' claims against Grace and implicates the indemnification rights of Maryland under the [Settlement] Agreement."[23]

The  Debtors'  representations  in  the  Preliminary  Injunction  are  unquestionably inconsistent and irreconcilable with the positions they are now taking to support the Claims Objection.

2.       **The Debtors' Assertion Of These Conflicting Positions Is In Bad Faith**

Where  a  party  assumes  a  certain  position  in  a  legal  proceeding,  and  succeeds  in maintaining that position, he may not thereafter assume a contrary position simply because his

---

[20]Debtors' District Court Brief, at 10.

[21] *Transcript of Hearing* held on May 20, 2002 (U.S. Bankruptcy Court, D. Del., Case 01-01139) [D.I. 2162], BERNICK, at 53.

[22] Debtors' District Court Brief, at 17-18.

[23] Debtors' District Court Brief, at 25.

interests have changed. *Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 780-81 (3d Cir. 2001). Here, the Debtors' initial position was presented to, and accepted by, this Court in the PI Litigation. *See New Hampshire v. Maine*, 121 S.Ct. at 1815, 1817. Now, because their agenda has changed, the Debtors are taking a completely contrary position and are asking this Court to accept that contrary position to grant separate relief. This tactic is intentional, and in bad faith.

### 3.    No Lesser Remedy Will Suffice

To preserve the integrity of both the bankruptcy process and the "integrity of the earlier proceedings," the Debtors must be estopped from prosecuting the Claims Objection on the basis of allegations that are completely contrary to those the Debtors made to this Court, and upon which this Court relied, earlier in this case. *See Krystal,* 337 F.3d at 319, 325.    No lesser remedy will adequately address the Debtors' misconduct. *Id*.

### 4.    No Explanation Is Necessary

The Claims Objection offers no explanation for the Debtors' changed position. However, none is necessary. Debtors' representations to this Court early in the case successfully persuaded this Court to provide the relief Debtors needed at that time. Now, with their focus squarely on resolution of the Libby Plaintiffs' objections to the First Amended Plan, the Debtors' agenda has changed. In bad faith, and with disregard to the integrity of the judicial process, the Debtors have completely reversed their position. *Krystal*, 337 F.3d at 325 (no evidentiary hearing is necessary to find bad faith for estoppel purposes)(citing *Montrose*, 243 F.3d at 750 n.5).

The positions taken by the Debtors' in support of the Claims Objection violate this Court's standing decree prohibiting this precise conduct. The criteria for application of judicial estoppel are met, and the Debtors are estopped from taking these positions.

**B.**     **The MCC Claims That This Court Has Not Already Addressed Are Not Ripe For Adjudication**.

Through the Clarification Motion, the Libby Plaintiffs sought leave to prosecute the Existing Libby Claims against MCC in the three Complaints cited in the Claims Objection.[24]  In the PI Litigation, Grace conceded that the Existing Libby Claims trigger the MCC Indemnity Rights.[25]  More importantly, this Court found that there is <u>no basis</u> to conclude that the Existing Libby Claims are "independent" claims against MCC.[26]  Thus, as to the Existing Libby Claims, the Claims Objection must fail.

Presumably due to the continued existence of the Preliminary Injunction, no claims relating to the Debtors' Libby operations, other than the Existing Libby Claims, have been asserted against MCC.  Thus, the universe of ripe MCC Claims arising from alleged independent liability relate only to the Existing Libby Claims.  The balance of the MCC Claims are indemnity and contribution claims relating to the Debtors, their products and their operations <u>that have not yet been asserted</u> by the Libby Plaintiffs, or by any other parties (collectively, "Prospective Claims").

Because these Prospective Claims have not yet been asserted, it is impossible to adjudicate MCC Claims that may arise therefrom.  For instance, if a Prospective Claim were asserted against MCC that arose from Mr. Lockwood's hypothetical auto accident (a resident of

---

[24] See, Claims Objection, Ex's. B-D.

[25] *See, e.g.*, section III.A.1.c, *supra*.

[26] *See, e.g.* 8/26/02 Hearing Transcript at 15.  THE COURT: "Regardless of what the documentation says or doesn't say, the question is whether or not Maryland was a volunteer, or somehow or other a principal, as opposed to an agent, in undertaking some obligation.  Now, maybe I'm missing documents.  But I got I think two binders full that were submitted to me in Pittsburgh.  I read every word of those documents.  There is nothing in the documents that were sent to me that establishes that Maryland was acting as anything other at any time than as an agent for the Debtor.  Nothing."

Libby is struck by an insurer's truck on the way to work),[27] that Prospective Claim would likely be deemed an "independent claim" against MCC that would <u>not</u> trigger the MCC Indemnity Rights.[28]   In contrast, if a Prospective Claim was asserted by a third-party claimant against MCC for liabilities relating to Grace asbestos, even the Debtors should concede that such a claim <u>would</u> trigger the MCC Indemnity Rights and create a resulting claim by MCC against Grace. Between these two examples lie a broad spectrum of Prospective Claims against MCC that may or may not trigger the MCC Indemnity Rights.   However, since no Prospective Claims currently exist, there is no resulting indemnity claim by MCC against Grace for this Court to adjudicate. Thus, the only possible "independent claims" against MCC are those that have not yet been asserted.   Any attempted adjudication of potential, resulting MCC Claims would be nothing more than an advisory opinion.

The doctrine of ripeness is a direct prohibition against the issuance of advisory opinions. *In re Grand Court Lifestyles, Inc.*, 309 B.R. 117, 122 (Bankr. D.N.J. 2004) (citing *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992)).   Disputes that are not sufficiently ripe cannot be determined.  *In re Lake Ariel Assocs., Ltd.*, Case No. 00-11484F, 2000 WL 33728177, at * 2 (E.D. Pa. Apr. 26, 2000).   The purpose of the ripeness doctrine is to prevent federal courts "through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995); *see also Peachlum v. City of York*, 333 F.3d 429, 434 (3d Cir. 2003) ("[T]he challenge [must] grow out of a real, substantial controversy between parties involving a dispute

---

[27]  May 4, 2009 Deposition of Peter Van N. Lockwood ("5/4/09 Lockwood Dep. Tr.") at 517: "[I]f somebody in Libby, Montana is run over by an insurer's truck on the way to work . . . [t]hat's an independent tort claim."

[28] 5/4/09 Lockwood Dep. Tr. at 513-14: "a claim against an insurance company [that] has nothing to do with asbestos personal injury liability claims against Grace [is an] independent tort claim . . . ."

definite and concrete); *In re G-1 Holdings, Inc.*, 318 B.R. 66 (D. N.J. 2004) (District Court upheld Bankruptcy Court's determination that debtors' request for a preliminary injunction precluding the assertion of a defense to a hypothetical future action was not ripe).

Because the Prospective Claims have neither been asserted nor adjudicated, the MCC Claims that they will trigger are not ripe for adjudication. Therefore, any adjudication of the MCC Claims at this point is premature and unnecessary.

## C.    The Debtors Have Failed To Meet Their Burden Of Proof

Under Rule 3001(f) of the Federal Rules of Bankruptcy Procedure, the Proofs of Claim constitute *prima facie* evidence of the validity of the MCC Claims. Fed. R. Bankr. P. 3001(f). "The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence*." *See In Re Hemingway Trans., Inc.*, 993 F.2d 915, 925 (1st Cir. 1993) (emphasis added). "To overcome this presumed validity, the Debtor must present evidence that, if believed, "would refute at least one of the allegations that is essential to the claim's legal sufficiency." *See In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).

MCC's Proofs of Claim assert valid claims against the Debtors for contractual indemnity, common law indemnity and contribution. The Debtors have not presented any evidence to support their Claims Objection, and mere allegations in the Claims Objection fail to overcome the *prima facie* validity of the Proofs of Claim.[29] On the contrary, throughout this bankruptcy

---

[29] For instance, Debtors' argument that MCC's alleged liability to the Libby Plaintiffs is solely related to workers compensation policies is facially incorrect. MCC issued both general liability and workers compensation policies to Debtors, and there is no evidence that any actions by MCC were taken exclusively in its capacity as a workers compensation insurer. *See e.g.*, *Transcript of Phase II Confirmation Hearing* held on September 14, 2009 (U.S. Bankruptcy Court, D. Del., Case No. 01-01139) HUGHES, at 261-263. In fact, Carol Gerard, the lead plaintiff in one of the Libby Plaintiffs' complaints, was never an employee. Additionally, Debtors have made no allegations at all that would overcome the validity of MCC's common law claims.

case, the Debtors have presented this Court with evidence and arguments that support the validity of the MCC claims.  The Claims Objection should be overruled.

To the extent that this Court does not summarily overrule the Claims Objection based on the arguments above, MCC hereby requests that a scheduling order be entered that governs discovery and trial on Debtors' allegations supporting the Claims Objection.

WHEREFORE, MCC respectfully requests that (i) the relief requested in the Claims Objection be denied, with prejudice, and (ii) the Court grant such other and further relief as the Court deems just and proper.

Dated: March 5, 2010                          CONNOLLY BOVE LODGE & HUTZ LLP

                                              /s/ Jeffrey C. Wisler
                                              Jeffrey C. Wisler (#2795)
                                              Marc J. Phillips (#4445)
                                              Kelly M. Conlan (#4786)
                                              The Nemours Building
                                              1007 N. Orange Street
                                              P.O. Box 2207
                                              Wilmington, DE  19899
                                              (302) 658-9141 Telephone
                                              (302) 658-0380 Facsimile

                                              OF COUNSEL:

                                              Edward J. Longosz, II
                                              Gabriella Cellarosi
                                              Eckert Seamans Cherin & Mellott, LLC
                                              1747 Pennsylvania Avenue, N.W.,
                                              Suite 1200
                                              Washington, DC  20006
                                              (202) 659-6600 Telephone
                                              (202) 659-6699 Facsimile

                                              Richard A. Ifft
                                              Karalee C. Morell
                                              WILEY REIN LLP
                                              1776 K Street, N.W.
                                              Washington, DC 20006
                                              (202) 719-7170 Telephone
                                              (202) 719-7049 Facsimile

                                              *Attorneys for Maryland Casualty Company*

#692723