## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: April 19, 2010, at 10:30 a.m.** |
| | ) | **Objection Deadline: March 26, 2010** |
| | ) | |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE IMPLEMENTATION OF THE 2010-2012 LONG-TERM INCENTIVE PLAN FOR KEY EMPLOYEES

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby file this motion (the "Motion") for entry of an order authorizing the implementation of the Grace 2010-2012 Long-Term Incentive Plan (the "2010-2012 LTIP") for certain key employees, as part of the Debtors' ongoing long-term incentive compensation program. In support of this Motion, the Debtors respectfully state as follows:

### JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

---

[1]     The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2.     The statutory predicates for this Motion are sections 105(a) and 363(b) of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

BACKGROUND

3.     On the dates noted in the following Schedule, the Court entered orders authorizing the Debtors to implement the respective long-term incentive plans (the "Chapter 11 LTIPs") for management and other key employees of the Debtor selected to participate in the LTIPs (the "Key Employees"), as part of the Debtors' ongoing long-term incentive program:[2]

| Date of Order | Period of LTIP |
|---|---|
| August 26, 2002 | 2002-2004 LTIP |
| March 26, 2003 | 2003-2005 LTIP |
| June 9, 2004 | 2004-2006 LTIP |
| July 13, 2005 | 2005-2007 LTIP |
| July 24, 2006 | 2006-2008 LTIP |
| August 29, 2007 | 2007-2009 LTIP |
| August 26, 2008 | 2008-2010 LTIP |
| April 22, 2010 | 2009-2011 LTIP |

4.     The Debtors' long-standing, ongoing strategy for its long-term incentive program necessitates that a renewed LTIP be implemented each calendar year, with no more than three LTIPs in effect in any year. Thus, upon approval of this Motion by the Court, the 2008-2010 LTIP, the 2009-2011 LTIP, and the 2010-2012 LTIP will each be active in 2010.

5.     The provisions of the 2010-2012 LTIP are very similar to the provisions under the 2009-2011 LTIP, except as indicated below.

---

[2]     The 2010-2012 LTIP continues the practice implemented under the 2009-2011 LTIP and the 2008-2010 LTIP, to provide cash payouts based on business performance during a three-calendar year performance period, as well as for awards of stock options for common stock of the Debtors' parent company, W. R. Grace & Co.  Prior to the 2008-2010 LTIP, the Chapter 11 LTIPs provided for only cash-based incentives, and did not include any incentives based on the performance of that common stock.

2

DOCS_DE:158149.1

## Basic Design of the 2010-2012 LTIP[3]

6.      The aggregate targeted award value of the 2009-2011 LTIP will be $15.5 million (including the Chief Executive Officer of the Debtors (the "CEO")).[4]

7.      The total aggregate award of $15.5 million will be distributed to Key Employees in the form of (i) targeted cash payout opportunities and (ii) options covering shares of common stock of the Debtors' parent corporation, W. R. Grace & Co. ("Grace Stock").

8.      With respect to a 2010-2012 LTIP award for any specific Key Employee, Debtors' management will exercise discretion to determine the percentage split between the value of the targeted cash award and the value of options granted for Grace Stock. This means that the allocation of the total value awarded to some Key Employees will be more heavily weighted towards awards of options for Grace Stock, while others will be more heavily weighted towards targeted cash payout opportunities, as determined by Debtors' management.[5]

## Cash Component of the 2010-2012 LTIP

9.      In no event will the total targeted cash award opportunities under the 2010-2012 LTIP exceed 50% of the $15.5 million aggregate targeted award value specified above (i.e., $7.75 million).

10.      The aggregate cash awards (if earned) under the 2010-2012 LTIP (including the CEO) will not exceed the following:

---

[3]  As with prior LTIPs, the Debtors reserve the right to determine whether a particular employee is a Key Employee with respect to the 2010-2012 LTIP; and the right to vary the selection, and the degree of participation, of Key Employees under the 2009-2011 LTIP from the Key Employees identified under prior LTIPs.

[4]  The total targeted award value last year under the 2009-2011 LTIP, including the CEO, was $15.7 million. The Court approved an award value of $12.5 million for Key Employees under the 2009-2011 LTIP (excluding the CEO), on April 22, 2009. The CEO's targeted award under the 2009-2011 LTIP was specified in his written employment agreement, which was also approved by the Court on that date, in the amount of $3.2 million. That employment agreement does not specify the CEO's incentive opportunities under subsequent LTIPs, like the 2010-2012 LTIP.

[5]  Under the prior two LTIPs, the cash payout award component for each Key Employee generally equaled 50% of the total targeted award that the Key Employee received; and the remaining 50% was comprised of a grant of stock options for shares of the Grace Stock.

| Year | Targeted Cash Payout | Maximum Cash Payout |
|------|---------------------|---------------------|
| 2012 | $2.53 million | $2.53 million |
| 2013 | $5.22 million | $12.47 million |
| Total | $7.75 million | $15.5 million |

11.    Cash awards to Key Employees (if earned) will be made in one-third and two-thirds installments in 2012 and 2013, respectively, which continues the cash payout practice applicable to the prior Chapter 11 LTIPs, including the 2009-2011 LTIP.

12.    The performance criteria for the cash awards portion of the 2010-2012 LTIP are essentially the same as the provisions of the 2009-2011 LTIP (and the earlier Chapter 11 LTIPs). Specifically:

  a.  Business performance for cash awards is measured on a three-year performance period, commencing with 2010.[6]

  b.  The applicable compounded annual 3-year growth rate in core earnings before interest and taxes ("EBIT") to achieve a cash payment of 100% of the 2009-2011 LTIP target award (the "Base Target Cash Award") will be 6% per annum. Core EBIT for the 3-year period is adjusted for changes in pension expense and LTIP expense ("Core EBIT").

  c.  Partial payouts for EBIT growth rates between 0% and 6% will be implemented on a straight-line basis.

  d.  The amount of the 2010-2012 LTIP cash payments will be increased at EBIT compounded annual growth rates in excess of the 6%, up to a maximum of 200% of the Base Target Cash Award at an annual compounded EBIT growth rate of 25%.

  e.  Cash payouts (if earned) will occur in 1/3 and 2/3 installments, respectively, in early March following years 2 and 3 of the LTIP (i.e., in 2011 and 2012.) The 1/3 installment following year 2 is limited to 1/3 of the Base Targeted Cash Award.

  f.  Cash payout adjustments for a "significant acquisition" and a "significant divestiture" applicable to the calculation of cash awards under the immediately prior Chapter 11 LTIPs will also apply to cash awards under the 2010-2012 LTIP.

---

[6]    For each of the previous Chapter 11 LTIPs, the three-year performance period also commenced with the calendar year in which the LTIP was implemented.

## Stock Option Component of the 2010-2012 LTIP

13.    As specified above, the portion of $15.5 million aggregate targeted award value that is not allocated to cash award opportunities for Key Employees, will be awarded to Key Employees in the form of options on Grace Stock.

14.    The value of an option on a share of Grace Stock granted under the 2010-2012 LTIP will be calculated by dividing the price of a share of Grace Stock on the award date (provided that, for the purpose of valuing such grants, that price may not exceed $33.00 or be less than $23.00) by the applicable Black Scholes factor.[7]

15.    The grants will be awarded under the Grace 2000 Stock Incentive Plan (the "Plan"), which was authorized and approved by the Court in 2001, in conjunction with the Debtors' petition for relief under Chapter 11.  Currently, the number of shares of Grace Stock available for option grants of options under the Plan equals approximately 1.359 million.

16.    Under the 2010-2012 LTIP, the Debtors anticipate utilizing all remaining authority under the Plan; i.e., granting options covering approximately 1.359 million shares of Grace Stock (including the CEO).[8]  In no event, will the total number of shares covered by grants under the 2010-2012 LTIP exceed the remaining authority under the Plan.

17.    The "strike price" of the stock options awarded under the 2010-2012 LTIP will be the price of Grace Stock as of the award date (i.e., the average of the high and low market price of Grace Stock on that date).  One third of the awarded stock options would vest in 2011, one-third would vest in 2012, and the remaining one-third would vest in 2013; each on the

---

[7]    The applicable Black Scholes factor used for this calculation is 4. (This is the same factor used under the immediately prior LTIPs.)  The formula to determine the value of an option on a share of Grace Stock is as follows: Price of Grace Stock/4.  Therefore, the higher the price of Grace Stock on the date of grant, the higher the value of an option covering a share of Grace Stock, and therefore the lower the total number of shares covered by any specific grant under the LTIP.  Conversely, the lower the price of Grace Stock on that date, the lower the value of an option covering a share of Grace Stock, and therefore the higher the number of shares covered by any specific grant under the LTIP.  In order to address this possible variability in the number of shares covered by these option grants, the Debtors have determined to limit the range of the price of Grace Stock that may be used to value a grant of options for purposes of the 2010-2012 LTIP to the range noted above -- $33.00 to $23.00.

[8]    Under the 2009-2011 LTIP, the Debtor issued option grants on approximately 1.57 million shares of Grace Stock (including the CEO).

5

anniversaries of the award date. The stock options would generally be exercisable for a period of 5 years after grant.[9]

**RELIEF REQUESTED**

18.     By this Motion, the Debtors request that the Court authorize the continuation of the Debtors' ongoing long-term incentive program by authorizing the implementation of the 2010-2012 LTIP, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

**BASIS FOR RELIEF**

19.     Section 105(a) of the Bankruptcy Code permits the court to "issue any order… that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This Court has recognized that the broad reach of its equitable powers under section 105(a) of the Bankruptcy Code authorizes, among other things, implementation of key employee retention programs, including long-term incentive plans.

20.     Section 363(b)(1) provides in relevant part that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate …" A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991); see also Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by an "articulated business justification"); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales

---

[9]     The stock options awarded last year under the 2009-2011 LTIP also were subject to 3-year vesting, and were exercisable for a period of 5 years after grant.

proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147,

153 (D. Del. 1999); In re Ernst Home Ctr., Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

      21.     Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish

that it has a valid business purpose for using estate property outside the ordinary course of

business. See In re Montgomery Ward Holding Corp., 242 B.R. at 153; see also In re Delaware

& Hudson Ry. Co., 124 B.R. at 175-76; In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir.

1983). Once the debtor has articulated such a valid business purpose, however, a presumption

arises that the debtor's decision was made on an informed basis, in good faith and in the honest

belief that the action was in the debtor's best interest. See In re Integrated Res., Inc., 147 B.R.

650, 656 (S.D.N.Y. 1992).

      22.     Generally, courts authorize debtors to implement key employee incentive

programs because key employees are essential to a debtor's continued operations. See In re

Montgomery Ward Holding Corp., 242 B.R. at 153 (sound business purpose justified the

debtor's employee incentive programs); see also In re America West Airlines, Inc., 171 B.R.

674, 678 (Bankr. D. Ariz. 1994) (approving success bonuses to certain officers and employees

as within Debtor's sound business judgment); In re Interco Inc., 128 B.R. 229, 234 (Bankr. E.D.

Mo. 1991) (authorizing the debtor to assume prepetition severance contracts and approving

performance based retention program to ensure critical employees remained with the debtor).

      23.     Permitting the Debtors to continue the Debtors' ongoing long-term incentive

program by implementing the 2010-2012 LTIP, will accomplish the sound business purpose of

maximizing the value of the Debtors' estates and furthering the Debtors' efforts to successfully

reorganize during the remaining period of the Chapter 11 process, by promoting the motivation

and retention of Key Employees.

24.    Adjusting the Program for the 2010-2012 LTIP so that the Debtors' management has the discretion to weight the total value of an award to any specific Key Employee more heavily towards options on Grace Stock (and to other Key Employees more heavily towards cash award opportunities), will allow management to more effectively align the interests of Key Employees with the interests of the Debtors' shareholders and other stakeholders, as appropriate in the judgment of management.

25.    It continues to be the case that the Debtors must provide sufficient incentives to motivate and retain a critical mass of their high-performing employees in sufficient numbers during the remaining pendency of the Debtors' chapter 11 cases to maximize the likelihood of a successful restructuring.

26.    In light of the foregoing, the Debtors believe that the incentives provided by the 2010-2012 LTIP are reasonable and appropriate and will enhance the prospect of retaining and motivating Key Employees and, ultimately, attaining a successful result in these Chapter 11 Cases. For all of these reasons, the 2010-2012 LTIP should be approved.

### NO PREVIOUS MOTION

27.    No previous motion for the relief sought herein has been made to this or any other court.

<u>NOTICE</u>

28.    Notice of this Motion has been given to:  (i) the office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these chapter 11 cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; and (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[nothing further on this page]**

WHEREFORE, the Debtors respectfully request that the Court enter an order authorizing, but not requiring, the Debtors to continue the Debtors' ongoing long-term incentive program by authorizing the implementation of the 2010-2012 Long-Term Incentive Plan, and authorizing the Debtors take such other action as may be necessary or appropriate to effect the intent of this Motion, and granting such other and further relief as the Court deems just and proper.

Dated:  March 8, 2010

KIRKLAND & ELLIS LLP
Theodore L. Freedman
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

and

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
Roger J. Higgins
70 W. Madison St., Suite 2100
Chicago, IL 60602-4253
(312) 641-2162

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705
(302) 652-4100
(302) 652-4400
Co-Counsel for the Debtors and Debtors-in-Possession