# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.,** *et al.* | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |
| | ) | |

**FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS AS MODIFIED THROUGH ~~DECEMBER 16, 2009~~MARCH 19, 2010**

~~David M. Bernick, P.C.~~
Theodore L. Freedman
Deanna D. Boll
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022
Telephone: (212) 446-4800

Janet S. Baer, P.C.
THE LAW OFFICES OF JANET S. BAER, P.C.
70 W. Madison St.
Suite 2100
Chicago, IL 60602
Telephone: 312-641-2162

Laura Davis Jones (#2436)
James E. O'Neill (#4042)
Timothy Cairns (#4228)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100

*Counsel for the Debtors and Debtors in Possession*

Roger Frankel
Richard H. Wyron
Debra L. Felder
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, NW
Washington, DC 20005-1706
Telephone: (202) 339-8400

John C. Phillips, Jr. (#110)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
Telephone: (302) 655-4200

*Counsel for David T. Austern,
Asbestos PI Future Claimants' Representative*

Elihu Inselbuch
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone: (212) 319-7125

Peter Van N. Lockwood
Ronald Reinsel
Jeffrey Liesemer
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, NW
Washington, DC 20005
Telephone: (202) 862-5000

Marla R. Eskin (#2989)
Mark T. Hurford (#3299)
CAMPBELL & LEVINE, LLC
800 King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900

*Counsel for the Official Committee of
Asbestos Personal Injury Claimants*

Philip Bentley
Douglas Mannal
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100

Teresa K.D. Currier (#3080)
BUCHANAN INGERSOLL & ROONEY PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801
Telephone: (302) 552-4200

*Counsel for the Official Committee of Equity
Security Holders*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R. GRACE & CO., ET AL, THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS AS MODIFIED THROUGH ~~DECEMBER 16, 2009~~MARCH 19, 2010**

THIS PLAN[1] PROVIDES, AMONG OTHER THINGS, FOR THE ISSUANCE OF INJUNCTIONS THAT (A) RESULT IN THE CHANNELING OF ALL ASBESTOS PERSONAL INJURY CLAIMS, ASBESTOS PROPERTY DAMAGE CLAIMS, AND CDN ZAI PD CLAIMS (INCLUDING ALL RELATED SUCCESSOR CLAIMS) AGAINST W. R. GRACE & CO. AND THE ASBESTOS PROTECTED PARTIES (AS DEFINED HEREIN) INTO TRUSTS AND/OR A CLAIMS FUND AND (B) ENJOIN ALL SUCCESSOR CLAIMS BASED ON OR ARISING FROM, IN WHOLE OR IN PART, DIRECTLY OR INDIRECTLY, THE CRYOVAC TRANSACTION OR FRESENIUS TRANSACTION AGAINST W. R. GRACE & CO. AND THE ASBESTOS PROTECTED PARTIES (AS DEFINED HEREIN), EACH AS MORE FULLY DESCRIBED HEREIN.

This Plan constitutes a settlement of all Claims and Demands against the Debtors on, and subject to, the terms described herein and the other Plan Documents. Nothing in the Plan Documents constitutes an admission by the Debtors as to the existence, merits, or amount of the Debtors' actual present or future liability on account of any Claim or Demand except to the extent that such liability is specifically provided for in the Plan or the other Plan Documents in accordance with the Confirmation Order effective as of the Effective Date.

---

[1]    Unless otherwise indicated, capitalized terms shall have the meanings ascribed to them in Article 1 of this Plan.

This Plan is not an offer with respect to any securities or a solicitation of acceptances of this Plan; any such offer or solicitation will only be made in compliance with applicable law, including applicable provisions of securities laws and the Bankruptcy Code. This Plan has not been filed with or reviewed by the Securities and Exchange Commission or any securities regulatory authority of any state under the Securities Act of 1933, as amended, or under any state securities or "blue sky" laws. This Plan has not been approved or disapproved by any court or the Securities and Exchange Commission. Any representation to the contrary is a criminal offense.

The Debtors, the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders hereby jointly propose the following Plan of Reorganization pursuant to the provisions of chapter 11 of title 11 of the United States Code for W. R. Grace & Co. and the other Debtors in these Chapter 11 Cases. Reference is made to the Disclosure Statement distributed contemporaneously herewith for, among other things, a discussion of the history, businesses, properties, and results of operations of the Debtors, and risks associated with this Plan.

# ARTICLE 1
## DEFINITIONS, CONSTRUCTION OF TERMS, EXHIBITS AND ANCILLARY DOCUMENTS

## 1.1   DEFINED TERMS

### Definitions

Terms defined in this Section 1 apply to the Plan, the Disclosure Statement and the other Plan Documents (unless specifically provided otherwise in any such Plan Document).

1. **"1996 CU Agreement" shall mean that particular Settlement Agreement and Release entered into between W. R. Grace & Co.-Conn., a Connecticut corporation, W. R. Grace & Co., a New York corporation which has changed its name to Fresenius National Medical Care Holdings, Inc., W. R. Grace & Co.-Del., a Delaware corporation, American Employers' Insurance Company, and Employers Commercial Union Insurance Company, dated as of December 17, 1996.**

2. **"1996 Unigard Agreement" shall mean that particular Settlement Agreement, Release and Indemnification/Hold Harmless Agreement between W. R. Grace & Co-Conn.,   W. R. Grace & Co., and Unigard Security Company, dated as of July 11, 1996.**

3. 1. **"1998 Tax Sharing Agreement"** means the Tax Sharing Agreement by and among Old Grace Delaware, Grace-Conn., and Old Sealed Air Corporation, dated as of March 30, 1998.

K&E 15732365.215732365.6

16. ~~**"Asbestos Insurer Coverage Defenses"** shall mean all rights and defenses at law or in equity that any Asbestos Insurance Entity may have under any Asbestos Insurance Policy, Asbestos Insurance Settlement Agreement, Asbestos In-Place Insurance Coverage, or applicable law to a claim seeking insurance coverage. Asbestos Insurer Coverage Defenses include any defense based on the terms of the Plan or the Plan Documents or the manner in which the Plan or Plan Documents were negotiated; but Asbestos Insurer Coverage Defenses do not include any defense that (i) the Plan or any of the Plan Documents do not comply with the Bankruptcy Code, or (ii) the transfer of Asbestos Insurance Rights pursuant to *the Asbestos Insurance Transfer Agreement* is prohibited by any Asbestos Insurance Policy, any Asbestos Insurance Settlement Agreement, any Asbestos In-Place Insurance Coverage or applicable non-bankruptcy law.~~

**18.**    ~~17.~~ **"Asbestos Medical Monitoring Claim"** shall mean: a Claim, Canadian Claim, SA Claim, Grace-Related Claim, or Demand against, or present or future debt, liability, or obligation of, any of the Debtors or the Asbestos Protected Parties, including (x) all related claims, debts, obligations, liabilities or remedies for compensatory (including general, special, and consequential damages) and punitive damages, and (y) all cross-claims, contribution claims, subrogation claims, reimbursement claims or indemnity claims (whether or not such Claim, Canadian Claim, SA Claim, Grace-Related Claim, Demand, remedy, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, settled, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; whether or not the facts of or legal bases therefor are known or unknown; and whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity, or any other theory of law, equity, or admiralty), in each case for, based on, or arising out of, resulting from, or attributable to, directly or indirectly, personal injuries or damages by or on behalf of those who have not, as of the Petition Date, suffered any personal injury but who are alleging that:

> (i)    the Debtors (or (x) any of their respective predecessors, successors, or assigns, or any current or former Affiliate of any of the foregoing (including any of the Non-Debtor Affiliates), but only to the extent that any liability is asserted to exist as a result of it being such a predecessor, successor, assign, or current or former Affiliate, or (y) any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable) wrongfully caused them to be significantly exposed to hazardous asbestos fibers,

> (ii)    this exposure significantly increased the Claimant's risk of contracting a serious latent disease,

> (iii)    medical monitoring could reasonably be expected to result in early detection of the onset and mitigation of the severity of such disease, and

> (iv)    because of this exposure it is necessary for the Claimant to be examined by a physician or receive medical testing more often that he or she otherwise would.

8

**82.** ~~81.~~ **"Class 7B Initial Payment"** shall mean an amount in Cash equal to $30 million plus interest from April 1, 2009 to the Effective Date, accrued at the same rate applicable to the Debtors' senior Exit Financing, to be transferred equally by Cryovac, Inc. and Fresenius directly to the Asbestos PD Trust on the Effective Date for the benefit of holders of Claims and Demands in Class 7B; *provided, however,* that Cryovac, Inc.'s transfer to the Asbestos PD Trust as part of the Class 7B Initial Payment when aggregated with Cryovac, Inc.'s transfer to the Asbestos PD Trust as part of the Class 7A Initial Payment shall not exceed 50% of the Cash component of the Cryovac Payment; and *provided, further,* that the Fresenius transfer to the Asbestos PD Trust as part of the Class 7B Initial Payment when aggregated with Fresenius' transfer as part of the Class 7A Initial Payment shall not exceed 65% of the Fresenius Payment.

**83.** **"CNA" shall mean Continental Casualty Company and Continental Insurance Company, on their own behalf and on behalf of their predecessor companies, affiliates and subsidiaries which issued insurance policies to the Debtors.**

**84.** **"CNA/Old Grace Delaware 5/30/97 Settlement Agreement" shall mean that certain Settlement Agreement and Release, dated May 30, 1997, by and among Grace-Conn., Old Grace Delaware, Grace New York, and Continental Casualty Company (CNA Confirmation Hearing Ex. 38).**

**85.** **"CNA/Old Grace Delaware Settlement Agreements" shall mean (a) that certain Settlement Agreement and Release, dated February 13, 1997, by and between Grace-Conn., Old Grace Delaware, Grace New York, and Continental Casualty Company (CNA Confirmation Hearing Ex. 32B), (b) that certain Settlement Agreement, dated May 22, 1997, by and among Old Grace Delaware, Grace-Conn., Grace New York, and Continental Casualty Company (CNA Confirmation Hearing Ex. 32C), and (c) the CNA/Old Grace Delaware 5/30/97 Settlement Agreement.**

**86.** **"CNA Post-Trial Brief" shall mean the Phase II Post-Trial Brief for the CNA Companies, dated November 2, 2009, and filed in the Chapter 11 Cases at Docket No. 23644.**

**87.** ~~82.~~ **"Common Parent"** shall mean the common parent, as defined in Treasury Regulation section 1.1502-77, of those corporations that joined, or hereafter join in filing a Consolidated Tax Return under section 1501 of the IRC, and the Treasury Regulations thereunder, or a Consolidated Tax Return under comparable provisions of law for FSA Taxes or other jurisdictions (domestic or foreign).

**88.** ~~83.~~ **"Confirmation Date"** shall mean the date the clerk of the Court enters on the docket the Confirmation Order.

**89.** ~~84.~~ **"Confirmation Hearing"** shall mean the hearing that the Court conducts to consider confirmation of the Plan pursuant to Bankruptcy Code § 1129, as such hearing may be adjourned or continued from time to time.

**144.** ~~139.~~ **"Indirect PI Trust Claim"** shall mean any Claim or remedy, liability, or Demand against the Debtors, now existing or hereafter arising, whether or not such Claim, remedy, liability, or Demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases for such Claim, remedy, liability, or Demand are known or unknown, that is (x)(i) held by (A) any Entity (other than a director or officer entitled to indemnification pursuant to Section 8.8.9 of the Plan) who has been, is, or may be a defendant in an action seeking damages for death, bodily injury, sickness, disease, or other personal injuries (whether physical, emotional, or otherwise) to the extent caused or allegedly caused, directly or indirectly, by exposure to asbestos or asbestos-containing products for which the Debtors have liability or (B) any assignee or transferee of such Entity and (ii) on account of alleged liability of the Debtors for payment, repayment, reimbursement, indemnification, subrogation, or contribution of any portion of any damages such Entity has paid or may pay to the plaintiff in such action or (y) held by any Entity that is a claim seeking payment, repayment, reimbursement, indemnification, subrogation, or contribution from the Debtors with respect to any insurance settlement agreement, surety bond, letter of credit or other financial assurance issued or entered into by any Entity on account of, or with respect to, Asbestos PI Claims; *provided, however,* that for the avoidance of doubt, the term "Indirect PI Trust Claim" shall not include or pertain to any Asbestos PD Claim, CDN ZAI PD Claim, Environmental Claim, or Workers' Compensation Claim~~.~~***; and further provided, however,* for the avoidance of doubt, Indirect PI Trust Claims shall not be disallowed by the Court under section 502(e) of the Bankruptcy Code on the grounds that such claims were contingent or unliquidated.**

**145.** ~~140.~~ **"Initial Tax Distribution Date"** shall mean: (i) a date within the first sixty (60) days after the Effective Date as selected by the Reorganized Debtors, or (ii) such later date as the Bankruptcy Court may establish, upon request by the Reorganized Debtors, for cause shown.

**146.** ~~141.~~ **"Insurance Contributor"** shall mean any of (a) the Debtors, (b) the Reorganized Debtors, and (c) the Non-Debtor Affiliates identified in the Asbestos Insurance Transfer Agreement.

**147.** ~~142.~~ **"Intercompany Claim"** shall mean: (a) any Claim that arose prior to the Effective Date by: (i) any Debtor against any other Debtor, or (ii) a Non-Debtor Affiliate against any Debtor; or (b) any claim that arose prior to the Effective Date by any Debtor against any Non-Debtor Affiliate.

**148.** ~~143.~~ **"IRC"** shall mean the Internal Revenue Code of 1986, as amended, and any applicable regulations (including temporary and proposed regulations) promulgated thereunder by the United States Treasury Department.

**149.** ~~144.~~ **"IRS"** shall mean the United States Internal Revenue Service.

**150.** **"Kaneb" shall mean Kaneb Pipeline Operating Partnership n/k/a NuStar Pipeline Operating Partnership L.P., Support Terminal Services Inc. n/k/a NuStar Terminal Services Inc. and NuStar Energy L.P.**

**151.** ~~145.~~ **"March 2003 Bar Date"** shall mean March 31, 2003, the last day for Filing a proof of claim relating to pre-petition (i) Asbestos PD Claims, (ii) non-asbestos claims (including all governmental claims, Environmental Claims, and all derivative asbestos claims and asbestos-related claims for contribution, indemnity, reimbursement, or subrogation), and (iii) Asbestos Medical Monitoring Claims.

**152.** ~~146.~~ **"March 2003 Bar Date Order"** shall mean the Court's order, dated April 22, 2002, Dkt. No. 1963, which established the March 2003 Bar Date.

**153.** ~~147.~~ **"Master Ballot"** shall mean a Ballot (a) cast on behalf of one or more Holders of Asbestos PI Claims or Asbestos PD Claims, or (b) cast on behalf of one or more beneficial owners of Parent Common Stock, in either case pursuant to the terms and guidelines established in the Plan Documents and/or the Confirmation Procedures Order.

**154.** ~~148.~~ **"New Grace Group"** shall mean that group of corporations, including Grace-Conn (taxpayer identification number 13-5114230) that are, or hereafter become, members of that affiliated group of corporations under section 1504 of the IRC, and the Treasury Regulations thereunder, that have joined, or hereafter join, in filing a Consolidated Tax Return of which the Parent, or any successor to the Parent, including any reorganized Debtor successor to the Parent, was or is the Common Parent.

**155.** ~~149.~~ **"NMC"** shall mean National Medical Care, Inc., a Delaware corporation (taxpayer identification number 04-2835488).

**156.** ~~150.~~ **"NMC Business"** shall mean all of the worldwide healthcare business and operations conducted by NMC and the direct and indirect subsidiaries of NMC at any time, whether prior to or after September 29, 1996.

**157.** ~~151.~~ **"NMC Indemnified Taxes"** shall mean all Taxes of or attributable to any Tax Period arising from Tax Items relating to the NMC Business conducted by a member of the FMCH Group (net of benefits from Tax Items relating to the NMC Business from one or more Tax Periods not previously paid to, or applied for the benefit of, any member of the FMCH Group) which have not previously been paid to (i) one of the Estate Parties, (ii) Grace New York prior to the Fresenius Transaction, or (iii) the applicable tax authority, by any member of the FMCH Group.

**158.** ~~152.~~ **"Non-Debtor Affiliate"** shall mean each Affiliate of the Debtors that is not a debtor or debtor-in-possession in the Chapter 11 Cases, including the Entities designated as Non-Debtor Affiliates in Exhibit 16 in the Exhibit Book.

**159.** ~~153.~~ "**Old Grace Delaware**" shall mean W. R. Grace & Co., a Delaware corporation (taxpayer identification number 65-0654331), prior to the change of its name to Sealed Air Corporation in the Cryovac Transaction.

**160.** ~~154.~~ "**Old Sealed Air Corporation**" shall mean Sealed Air Corporation (US), a Delaware corporation (taxpayer identification number 22-1682767), which was named Sealed Air Corporation until the consummation of the Cryovac Transaction.

**161.** **"OneBeacon" shall mean OneBeacon America Insurance Company on its own behalf and on behalf of its predecessor companies, affiliates and subsidiaries that issued insurance policies to the Debtors.**

**162.** ~~155.~~ "**Parent**" shall mean W. R. Grace & Co., a Delaware corporation (taxpayer identification number 65-0773649), the first named Debtor in the caption of the Chapter 11 Cases and ultimate parent holding company of all of the other Debtors and Non-Debtor Affiliates.

**163.** ~~156.~~ "**Parent Common Stock**" shall mean the common stock, par value $0.01 per share, of the Parent or, if after the Effective Date, of the Reorganized Parent.

**164.** ~~157.~~ "**PBGC**" shall have the meaning set forth in Section 8.1.6 of the Plan.

**165.** ~~158.~~ "**PD Settlement Agreements**" shall mean settlement agreements approved by the Bankruptcy Court on or before the Effective Date between the Debtors and certain Holders of Asbestos PD Claims fully and finally resolving the Allowed Amount of their Asbestos PD Claims.

**166.** ~~159.~~ "**PD Trust**" shall mean the Asbestos PD Trust.

**167.** ~~160.~~ "**Pension Plans**" shall have the meaning set forth in Section 8.1.6 of the Plan.

**168.** ~~161.~~ "**Petition Date**" shall mean April 2, 2001, the date on which the Debtors Filed their petitions for relief commencing the Chapter 11 Cases.

**169.** ~~162.~~ "**Plaintiffs**" means the Asbestos PI Committee and the Asbestos PD Committee, suing on behalf of the Chapter 11 Bankruptcy Estate of W. R. Grace & Co. in the Fresenius Action and the Sealed Air Action.

**170.** ~~163.~~ "**Plan**" shall mean the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009, as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules to the foregoing, as the same may be in effect from time to time.

35

**202.** ~~195.~~ **"Sealed Air Indemnified Parties"** shall mean the "Released Parties" as defined in the Sealed Air Settlement Agreement, including Sealed Air Corporation, Cryovac, Inc. and all of their parent corporations, subsidiary corporations, joint venturers, Affiliates, and sister corporations, and any and all of their past, present and future agents, servants, officers, directors, employees, successors, assigns, heirs, executors, administrators, legal representatives, beneficiaries, insurers (but solely to the extent of coverage procured by Sealed Air Corporation (after March 31, 1998) or Cryovac, Inc. (after such date) of any liabilities of Sealed Air Corporation or Cryovac, Inc. for Asbestos-Related Claims), or any of them, including any Entity acting on behalf of or at the direction of any of them, but specifically excluding (i) the SA Debtors, (ii) all SA Non-Debtor Affiliates, (iii) Fresenius (to the extent of any and all SA Claims, SA Damages or SA Debts arising out of the Fresenius Transaction), and (iv) any and all insurers of the SA Debtors or the SA Non-Debtor Affiliates to the extent that they have provided coverage for Asbestos-Related Claims now or hereafter asserted or which could have been asserted at any time against the SA Debtors or the SA Non-Debtor Affiliates.

**203.** ~~196.~~ **"Sealed Air Settlement Agreement"** shall mean that certain Settlement Agreement and Release, dated November 10, 2003, by and among the Asbestos PI Committee, the Asbestos PD Committee, Sealed Air Corporation, and Cryovac, Inc., included as Exhibit 22 in the Exhibit Book and Filed with the Bankruptcy Court on November 26, 2003, in Adv. No. 02-2210, Dkt. No. 729, as amended by the Sealed Air Settlement Order.

**204.** ~~197.~~ **"Sealed Air Settlement Order"** shall mean the Order Approving, Authorizing, and Implementing Settlement Agreement By and Among the Plaintiffs, Sealed Air Corporation and Cryovac, Inc., dated June 27, 2005, and entered by the Bankruptcy Court on June 29, 2005, Dkt. No. 8742, included as Exhibit 23 in the Exhibit Book.

**205.** **"Seaton" shall mean Seaton Insurance Company on its own behalf and on behalf of its predecessor companies, affiliates and subsidiaries that issued insurance policies to the Debtors.**

**206.** ~~198.~~ **"SEC"** shall mean the United States Securities and Exchange Commission.

**207.** ~~199.~~ **"Secured Claim"** shall mean a Claim that is: (i) secured by a lien (as such term is defined in Bankruptcy Code § 101(37)) on property in which the Debtors have an interest, which lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, or (ii) entitled to setoff under Bankruptcy Code § 553, to the extent of (A) the value of the Claimant's interest in the Debtor's interest in such property or (B) the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code § 506(a).

**208.** ~~200.~~ **"Securities Act"** shall mean the Securities Act of 1933, as amended.

K&E ~~15732365.2~~15732365.6

### 7.2.1    Creation of the Asbestos PI Trust

Upon the entry of the Confirmation Order, effective as of the Effective Date, the Asbestos PI Trust shall be created pursuant to section 524(g) of the Bankruptcy Code and in accordance with the Plan Documents.    The Asbestos PI Trust shall be a "qualified settlement fund" for federal income tax purposes within the meaning of the treasury regulations issued pursuant to section 468B of the IRC.

The purpose of the Asbestos PI Trust shall be to, among other things: (i) assume the liabilities of the Debtors with respect to all Asbestos PI Claims; (ii) process, liquidate, pay and satisfy all Asbestos PI Claims in accordance, as applicable, with this Plan, the Asbestos PI Trust Agreement and the Asbestos PI TDP and in such a way that provides reasonable assurance that the Asbestos PI Trust will value, and be in a financial position to pay, present and future Asbestos PI Claims (including Demands that involve similar claims) in substantially the same manner and to otherwise comply with Bankruptcy Code § 524(g)(2)(B)(i); (iii) preserve, hold, manage, and maximize the assets of the Asbestos PI Trust for use in paying and satisfying Asbestos PI Claims entitled to payment; (iv) qualify at all times as a "qualified settlement fund" for federal income tax purposes within the meaning of the treasury regulations issued pursuant to section 468B of the IRC; and (v) otherwise carry out the provisions of the Asbestos PI Trust Agreement and any other agreements into which the Asbestos PI Trustees have entered or will enter in connection with this Plan.

### 7.2.2    Funding of the Asbestos PI Trust

(a)    On the Effective Date, Grace-Conn or Parent shall transfer to the Asbestos PI Trust (i) the sum of $250 million in Cash that is part of the Asbestos PI Trust Assets, plus interest thereon from January 1, 2009 until (and including) the Effective Date at the same rate applicable to the Debtors' senior debt and (ii) an amount in Cash equal to the Asbestos PD Initial Payment.    In addition to the foregoing, on the Effective Date, Grace-Conn or Parent shall transfer, or cause the transfer of, on behalf of the Reorganized Debtors and the Non-Debtor Affiliates, all other Asbestos PI Trust Assets that are not otherwise identified, transferred, or assigned in this Section 7.2.2 and Section 7.2.4 hereof to the Asbestos PI Trust.

(b)    On the Effective Date, Cryovac, Inc. shall transfer the Cryovac Payment (reduced by the total aggregate amount of Cryovac, Inc.'s transfers to the Asbestos PD Trust as part of the Class 7A Initial Payment and the Class 7B Initial Payment) directly to the Asbestos PI Trust. Simultaneously with, and in exchange for such direct transfer and payment to the Asbestos PI Trust and Cryovac Inc.'s transfers to the Asbestos PD Trust described in Sections 7.3.2(a) and 7.3.2(b) of the Plan, the Plaintiffs shall deliver to Sealed Air: (i) the "Release" (as defined in the Sealed Air Settlement Agreement) duly executed by each of the Plaintiffs and the SA Debtors; (ii) a copy of the Plan, (iii) a copy of the Confirmation Order, (iv) a duly executed Stipulation of Dismissal With Prejudice of the Sealed Air Action in the form annexed as Exhibit 4 to the Sealed Air Settlement Agreement, denying any other recovery against the Sealed Air Indemnified Parties, and (v) the Registration Rights Agreement, in the form annexed as Exhibit 1 to the Sealed Air Settlement Agreement, with appropriate insertions therein, duly executed by the "Initial Holders" (as defined in the Sealed Air Settlement Agreement).

K&E 15732365.2 15732365.6

(c)     On the Effective Date, Fresenius shall transfer the Fresenius Payment (reduced by the total aggregate amount of Fresenius' transfers to the Asbestos PD Trust as part of the Class 7A Initial Payment and the Class 7B Initial Payment) to the Asbestos PI Trust.

(d)     (i)     On the Effective Date, the Insurance Contributors shall execute and deliver the Asbestos Insurance Transfer Agreement to the Asbestos PI Trust.

(ii)     All Asbestos Insurance Rights, and all claims and causes of action asserted or to be asserted in furtherance of or connection therewith, shall be preserved for the benefit of the Asbestos PI Trust, for prosecution either by the applicable Insurance Contributor or the Asbestos PI Trust in accordance with the Asbestos Insurance Transfer Agreement.  Upon execution and delivery of the Asbestos Insurance Transfer Agreement, all Asbestos Insurance Rights shall be irrevocably transferred to and vested in the Asbestos PI Trust in accordance with the Asbestos Insurance Transfer Agreement, without any further action by the Debtors, the other Insurance Contributors, the Asbestos PI Trust, or the Bankruptcy Court.  Asbestos Insurance Rights shall be so vested free and clear of all Encumbrances, liens, security interests, and other Claims or causes of action, except ~~that all Asbestos Insurer Coverage Defenses are preserved~~**as expressly provided in Section 7.15 of the Plan**.

(iii)     Upon its execution and delivery, the Asbestos Insurance Transfer Agreement shall be valid, binding, and enforceable.  However, if a court of competent jurisdiction determines the Asbestos Insurance Transfer Agreement to be invalid, non-binding, or unenforceable, in whole or in part, then each Insurance Contributor shall (1) upon request by the Asbestos PI Trust and at the reasonable expense of the Asbestos PI Trust, take all reasonable actions to pursue any of the Asbestos Insurance Rights for the benefit of, and to the extent requested by, the Asbestos PI Trust and (2) immediately transfer any amounts recovered under or on account of any of the Asbestos Insurance Rights to the Asbestos PI Trust; *provided, however,* that while any such amounts are held by or under the control of any Insurance Contributor, such amounts shall be held in trust for the benefit of the Asbestos PI Trust.

(iv)     On the Effective Date, the Asbestos PI Trust shall be the successor to all rights of the Debtors and Non-Debtor Affiliates under each Asbestos Insurance Reimbursement Agreement. The Asbestos PI Trust's payment of an Asbestos PI Claim under the PI TDP shall be deemed to constitute settlement and payment of such claim by or on behalf of the Debtors or Non-Debtor Affiliates within the meaning of, and in full compliance with, each Asbestos Insurance Reimbursement Agreement.

### 7.2.3   Transfer of Claims and Demands to the Asbestos PI Trust

payment made shall reflect a rounding of such fraction to the nearest whole dollar or nearest whole share of Parent Common Stock, as applicable, (up or down), with half dollars or half shares being rounded up.

## 7.7    CONDITIONS TO OCCURRENCE OF THE CONFIRMATION DATE

The Court shall have made the following findings of fact, conclusions of law, orders, and/or decrees among others, substantially to the effect as follows, in connection with the confirmation of this Plan, each of which shall be expressly set forth in the Confirmation Order:

(a)    The Plan satisfies all applicable sections of the Bankruptcy Code, including Bankruptcy Code § 524(g);

(b)    Claimants in Classes 6, 7, and 8 have voted to accept the Plan in the requisite numbers and amounts required by Bankruptcy Code §§ 524(g), 1126, and 1129;

(c)    As of the Petition Date, the Debtors have been named as defendants in personal injury, wrongful death, and property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(d)    Effective as of the Effective Date, the Asbestos PI Trust shall be created and the Asbestos PD Trust shall be created pursuant to Bankruptcy Code § 524(g) and in accordance with the Plan Documents;

(e)    The Asbestos PI Trust and the Asbestos PD Trust shall be "qualified settlement funds" for federal income tax purposes within the meaning of the treasury regulations issued pursuant to section 468B of the IRC and shall be subject to the continuing jurisdiction of the Bankruptcy Court;

(f)    On the Effective Date, the Asbestos PI Trust shall assume the liabilities of the Debtors with respect to all Asbestos PI Claims, the Asbestos PD Trust shall assume the liabilities of the Debtors with respect to all Asbestos PD Claims, and the CDN ZAI PD Claims Fund contemplated by the CDN ZAI Minutes of Settlement shall assume the liabilities of the Debtors with respect to all CDN ZAI PD Claims;

(g)    The Asbestos PI Trust and the Asbestos PD Trust are to be funded in part by securities of the Parent and by the obligations of the Reorganized Parent to make future payments, including dividends;

(h)    The Asbestos PI Trust and the Asbestos PD Trust are to own, or by the exercise of rights granted under the Plan would be entitled to own if specified contingencies occur, a majority of the voting shares of the Reorganized Parent;

Agreement and the compromise settlement would not have been accomplished;

(aa) The settlements, compromises, releases, and injunctions in favor of the Asbestos Protected Parties described in the Plan (including those described in the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement) are approved in all respects;

(bb) In approving the settlements, compromises, releases, and injunctions with respect to the Asbestos Protected Parties (including the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement, and the releases and injunctions in favor of the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties), the Court has considered, among other things: (1i) the nature of the claims asserted or potentially asserted by the Debtors, the Non-Debtor Affiliates, the Plaintiffs (on behalf of the Debtors' creditors, stakeholders, and estates), and/or the Debtors' creditors against the Asbestos Protected Parties, and the claims asserted or potentially assertable by the Asbestos Protected Parties against the Debtors and the Non-Debtor Affiliates, (ii) the balance of the likelihood of success of claims which might be asserted by the Debtors or other claimants against the Asbestos Protected Parties against the likelihood of success of the defenses or counterclaims possessed by the Asbestos Protected Parties, (iii) the complexity, cost, and delay of litigation that would result in the absence of these settlements, compromises, releases, and injunctions, (iv) the lack of objections by, or the overruling of objections of any creditor or party-in-interest to the settlements, compromises, releases and injunctions, (v) that the Asbestos PI Claims will be channeled to the Asbestos PI Trust rather than extinguished, (vi) that the Estate Parties and the Asbestos PI Trust will receive substantial consideration from the Asbestos Protected Parties described in the Plan, (vii) that the Asbestos PD Claims will be channeled to the Asbestos PD Trust rather than extinguished, and the CDN ZAI PD Claims will be channeled to the CDN ZAI PD Claims Fund rather than extinguished, (viii) that the Estate Parties and the Asbestos PD Trust will receive substantial consideration from **or on behalf of** the Asbestos Protected Parties described in the Plan, (ix) that the Asbestos Protected Parties that will benefit from the releases and injunctions share an identity of interest with the Debtors, (x) that the enjoined claims against the Asbestos Protected Parties would otherwise indirectly impact the Debtors' reorganization by way of indemnity or contribution, and (xi) the Plan and the settlements, compromises, releases, and injunctions described in the Plan are the product of extensive arms' length negotiations among the Debtors, the Asbestos PI Committee, the Asbestos PI FCR, the Asbestos PD FCR, and the Asbestos Protected Parties, among others;

(cc) As of the Effective Date, the Reorganized Debtors will have the ability to pay and satisfy in the ordinary course of business their respective obligations and liabilities, including any and all indemnification

Reorganized Debtors shall be deemed to have occurred and to have been authorized, and shall be in effect from and after the Effective Date without requiring further action under applicable law, regulation, order, or rule, including any action by the stockholders or directors of the Debtors, the Debtors in Possession, or the Reorganized Debtors.

## 7.11    EFFECTUATING DOCUMENTS AND FURTHER TRANSACTIONS

Each of the officers of the Debtors and the Reorganized Debtors is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtors and the Reorganized Debtors, to effectuate and further evidence the terms and conditions of this Plan, the transactions contemplated by this Plan, and any securities issued pursuant to this Plan.

## 7.12    ALLOCATION OF PLAN DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST

To the extent that any Allowed Plan Claim entitled to a Distribution under this Plan consists of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated first to the principal amount of the Plan Claim and then, to the extent the Distribution exceeds the principal amount of the Plan Claim, to the accrued but unpaid interest.

## 7.13    NO SUCCESSOR LIABILITY

Except as otherwise expressly provided in this Plan, the Debtors, the Reorganized Debtors, the Asbestos PI Committee, the Asbestos PD Committee, the Asbestos PI FCR, the Asbestos PD FCR, the CCAA Representative Counsel, and the Asbestos Protected Parties will not, pursuant to this Plan or otherwise, assume, agree to perform, pay, or indemnify creditors or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any of the Debtors' past or present Affiliates, as such liabilities or obligations may relate to or arise out of the operations of or assets of the Debtors or any of the Debtors' past or present Affiliates or any of their respective successors, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Confirmation Date. Neither the Asbestos Protected Parties, the Reorganized Debtors, the Asbestos PI Trust, the Asbestos PD Trust, nor the CDN ZAI PD Claims Fund is, or shall be, a successor to the Debtors or any of the Debtors' past or present Affiliates by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character, except that the Reorganized Debtors, the Asbestos PI Trust, the Asbestos PD Trust, and the CDN ZAI PD Claims Fund shall assume the obligations specified in this Plan and the Confirmation Order.

Except as otherwise expressly provided in this Plan, effective automatically on the Effective Date, the Asbestos Protected Parties shall be unconditionally, irrevocably and fully released from (a) any and all Asbestos-Related Claims, including (i) any and all Successor Claims based on or arising from, in whole or in part, directly or indirectly, or related to the Cryovac Transaction and (ii) any and all Asbestos Claims, (b) any and all SA Claims, SA Debts, SA Damages, including Successor Claims, based on, arising from, or attributable to (in whole or

15732365.6

in part, directly or indirectly) the Fresenius Transaction, and (c) any other claims and causes of action arising under Chapter 5 of the Bankruptcy Code or similar claims or causes of action arising under state or any other law, including, if applicable, claims in the nature of fraudulent transfer, successor liability, corporate veil piercing, or alter ego-type claims, as a consequence of transactions, events, or circumstances involving or affecting the Debtors (or any of their predecessors) or any of their respective businesses or operations that occurred or existed prior to the Effective Date. Notwithstanding the foregoing, nothing herein shall release any Asbestos Insurance Entity from its obligations under any Asbestos Insurance Settlement Agreement or Asbestos In-Place Insurance Coverage or Asbestos Insurance Reimbursement Agreement. **For the avoidance of doubt, and without limiting any defense, counterclaim, or other right of any of the Sealed Air Indemnified Parties or the application of any other provision of the Plan (including each of the injunctions and releases in the Plan), this Section 7.13 of the Plan does not release the Sealed Air Indemnified Parties from any direct contractual indemnification obligation that they may have to OneBeacon America Insurance Company under the 1996 CU Agreement with respect to environmental claims asserted against the policies covered by that agreement except where any such obligation is, gives rise to, is based on, arises out of, or otherwise relates to any Asbestos Claim. For the avoidance of doubt, and without limiting any other defense, counterclaim, or other right of any of the Sealed Air Indemnified Parties or the application of any other provision of the Plan (including each of the other injunctions and releases in the Plan), this Section 7.13 of the Plan does not release the Sealed Air Indemnified Parties from any contractual indemnification and hold harmless obligations for which the Sealed Air Indemnified Parties are directly obligated to CNA and that arise directly under (or are directly based on) the CNA/Old Grace Delaware 5/30/97 Settlement Agreement except to the extent that any such obligation is, gives rise to, is based on, arises out of, or otherwise relates to any Asbestos Claim. For the further avoidance of doubt, CNA's claims against the Sealed Air Indemnified Parties under or based on any of the CNA/Old Grace Delaware Settlement Agreements that are Asbestos PI Claims or Asbestos PD Claims shall be subject to the Asbestos PI Channeling Injunction or the Asbestos PD Injunction and shall be treated as Class 6 Claims or Class 7A Claims under the Joint Plan.**

This section is not intended to preclude a governmental entity from enforcing its police and regulatory powers.

## 7.14    DEEMED CONSOLIDATION OF THE DEBTORS FOR PLAN PURPOSES ONLY

Subject to the occurrence of the Effective Date, the Debtors shall be deemed consolidated under this Plan for Plan purposes only. Each and every Claim Filed or to be Filed against any of the Debtors shall be deemed Filed against the deemed consolidated Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Debtors.

Such deemed consolidation, however, shall not (other than for purposes related to funding Distributions under this Plan and as set forth above in this Section 7.14) affect: (i) the legal and organizational structure of the Debtors; (ii) any Encumbrances that are required to be maintained under this Plan (A) in connection with executory contracts or unexpired leases that were entered

96

into during the Chapter 11 Cases or that have been or will be assumed, (B) pursuant to this Plan, or (C) in connection with any Exit Financing; (iii) the Sealed Air Settlement Agreement; and (iv) the Fresenius Settlement Agreement.

Notwithstanding anything contained in this Plan to the contrary, the deemed consolidation of the Debtors shall not have any effect on any of the Plan Claims being reinstated and left unimpaired under this Plan, and the legal, equitable, and contractual rights to which the Holders of any such Plan Claims are entitled shall be left unaltered by this Plan.

## 7.15    INSURANCE NEUTRALITY

(a)    ~~Except to the extent provided in this Section 7.15, notwithstanding~~ **Notwithstanding** anything to the contrary in the ~~Confirmation Order, the~~ Plan or any of the Plan Documents**, except as provided in Sections 7.15(b) through 7.15(j) of the Plan: (i)** nothing in the ~~Confirmation Order, the~~ Plan or any of the Plan Documents (including any other provision that purports to be preemptory or supervening)~~,~~ shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect.~~;~~ **and (ii) the rights of each Asbestos Insurance Entity** *shall be determined under the* **applicable Asbestos Insurance Policies, Asbestos In-Place Insurance Coverages**, *Asbestos Insurance Reimbursement Agreements, or Asbestos Insurance Settlement Agreements.*

(b)    The Plan, the Plan Documents, and the Confirmation Order shall be binding on the Debtors, the Reorganized Debtors, the Asbestos PI Trust and the ~~beneficiaries of the Asbestos PI Trust~~**holders of Class 6 Asbestos PI Claims; provided, however, that to the extent that an Asbestos Insurance Entity is or may be a holder of a Class 6 Asbestos PI Claim, the portions of the Plan and the Plan Documents addressing holders of Class 6 Asbestos PI Claims shall be binding on such Asbestos Insurance Entity only in its capacity as a holder of a Class 6 Asbestos PI Claim**. The obligations, if any, of the Asbestos PI Trust to pay holders of Asbestos PI Claims shall be determined pursuant to the Plan, the Plan Documents~~,~~ and the Confirmation Order. ~~(c)~~    ~~Except as provided in this Section 7.15, the rights of Asbestos Insurance Entities~~ *shall be determined under the* **Except as provided in Sections 7.15(e), 7.15(h) and 7.15(j), none of (I) the Bankruptcy Court's or District Court's approval of the Plan or the Plan Documents, (II) the Confirmation Order or any findings and conclusions entered with respect to Confirmation, (III) any judgment, order, finding of fact, conclusion of law, determination or statement (written or oral, made on or off the record) made by the Bankruptcy Court or issued or affirmed by the District Court pursuant to 11 U.S.C. § 524(g)(3), or (IV) any estimation or valuation of Asbestos PI Claims, either individually or in the aggregate (including, without limitation, any agreement as to the valuation of Asbestos PI Claims or any value attributed to the Asbestos PI Trust Assets) in the Chapter 11 Cases or otherwise, shall, with respect to any Asbestos Insurance Entity, constitute a trial or hearing on the merits or an adjudication or judgment; or accelerate (on the basis of the decision in or principles espoused in** *UNR Industries, Inc. v. Continental Casualty Co.,* **942 F.2d 1101 (7**[th]** Cir. 1991) or otherwise) the obligations**, *if any,* **of any Asbestos Insurance Entity under its** Asbestos Insurance Policies~~,~~**, or** Asbestos In-Place Insurance Coverage, *Asbestos Insurance Reimbursement Agreements, or*

97

*Asbestos Insurance Settlement Agreements*, as applicable.**; or be used as evidence or argument in any forum to prove or claim:**

**(i)     that any of the Debtors, the Reorganized Debtors, the Asbestos PI Trust, or any Asbestos Insurance Entity is liable for, or otherwise obligated to indemnify or pay with respect to, any individual Asbestos PI Claim or Demand;**

**(ii)     that the procedures established by the Plan, including without limitation the Asbestos PI Trust Distribution Procedures, for evaluating and paying Asbestos PI Claims and Demands (including the medical, causation or exposure criteria and disease values) are reasonable or appropriate;**

**(iii)     that the procedures established by the Plan, including without limitation the Asbestos PI Trust Distribution Procedures, for evaluating and paying Asbestos PI Claims and Demands (including the medical, causation or exposure criteria and disease values) are consistent with any procedures that were used to evaluate or settle Asbestos PI Claims against the Debtors before the Petition Date;**

**(iv)     that the settlement of, or the value assigned to, any individual Asbestos PI Claim pursuant to the Asbestos PI Trust Distribution Procedures was, is or will be reasonable and/or otherwise appropriate;**

**(v)     that any of the Asbestos Insurance Entities participated in the negotiation of and/or consented to the Plan or any of the Plan Documents, including without limitation the Asbestos PI Trust Distribution Procedures;**

**(vi)     that any of the Debtors or the Asbestos PI Trust has suffered an insured loss with respect to any Asbestos PI Claim or Demand; or**

**(vii)     (A) the liability of the Debtors, the Reorganized Debtors or the Asbestos PI Trust for Asbestos PI Claims or Demands, whether such Asbestos PI Claims or Demands are considered individually or on an aggregate basis; or (B) the value of such Asbestos PI Claims or Demands, individually or in the aggregate.**

**For the avoidance of any doubt, nothing in this Section 7.15 of the Plan shall preclude the Asbestos PI Trust from asserting in any subsequent coverage litigation:**

**(i)     that the Asbestos PI Trust has assumed the liabilities and responsibilities for all Asbestos PI Claims;**

**(ii)     that the Plan or any of the Plan Documents, including without limitation the Asbestos PI Trust Distribution Procedures, constitute a mechanism setting out a procedure for determination of the approval/disapproval and valuation of Asbestos PI Claims which would result in settlements that trigger coverage; or**

**(iii)** **that the Asbestos PI Trust's liability for which the Asbestos PI Trust is entitled to coverage under the Asbestos Insurance Policies is the full value for which a claim is resolved by the Asbestos PI Trust and is not limited to just the amount that the Asbestos PI Trust is able to pay on the claim.**

**Nothing in this Section 7.15 of the Plan shall preclude the Asbestos Insurance Entities from disputing the assertions by the Asbestos PI Trust set forth in subsections (i) through (iii) immediately above in any subsequent coverage litigation, but this Section 7.15 of the Plan likewise shall not be used by the Asbestos Insurance Entities as evidence that the Asbestos PI Trust has acceded to the Asbestos Insurance Entities' positions on those points.**

(d̶**c**)    Nothing in **this Section 7.15 of** the Plan ̶o̶r̶ ̶t̶h̶e̶ ̶P̶l̶a̶n̶ ̶D̶o̶c̶u̶m̶e̶n̶t̶s̶ shall affect or limit, or be construed as affecting or limiting, the protection afforded to any Settled Asbestos Insurance Company by the Asbestos PI Channeling Injunction.̶ **or the Asbestos PD Channeling Injunction.**

(e̶**d**)    Nothing in t̶h̶i̶s̶ ̶S̶e̶c̶t̶i̶o̶n̶ ̶7̶.̶1̶5̶**the Plan or Plan Documents** is intended ̶o̶r̶**, nor** shall **it** be construed**,** to preclude otherwise applicable principles of *res judicata* or collateral estoppel**s** from being applied against any Asbestos Insurance Entity with respect to any issue that **has not been withdrawn by the Asbestos Insurance Entity prior to issuance of the Confirmation Order and that** is actually litigated by such Asbestos Insurance Entity as part of its objections, if any, to confirmation of the Plan or as part of any contested matter or adversary proceeding filed in conjunction with or related to confirmation of the Plan.̶ ̶P̶l̶a̶n̶ ̶o̶b̶j̶e̶c̶t̶i̶o̶n̶s̶ ̶t̶h̶a̶t̶ ̶a̶r̶e̶ ̶w̶i̶t̶h̶d̶r̶a̶w̶n̶ ̶p̶r̶i̶o̶r̶ ̶t̶o̶ ̶t̶h̶e̶ ̶b̶e̶g̶i̶n̶n̶i̶n̶g̶ ̶o̶f̶ ̶t̶h̶e̶ ̶C̶o̶n̶f̶i̶r̶m̶a̶t̶i̶o̶n̶ ̶H̶e̶a̶r̶i̶n̶g̶ ̶s̶h̶a̶l̶l̶ ̶b̶e̶ ̶d̶e̶e̶m̶e̶d̶ ̶n̶o̶t̶ ̶t̶o̶ ̶h̶a̶v̶e̶ ̶b̶e̶e̶n̶ ̶a̶c̶t̶u̶a̶l̶l̶y̶ ̶l̶i̶t̶i̶g̶a̶t̶e̶d̶.̶

(f)    ̶E̶x̶c̶e̶p̶t̶ ̶a̶s̶ ̶o̶t̶h̶e̶r̶w̶i̶s̶e̶ ̶p̶r̶o̶v̶i̶d̶e̶d̶ ̶i̶n̶ ̶t̶h̶i̶s̶ ̶S̶e̶c̶t̶i̶o̶n̶ ̶7̶.̶1̶5̶,̶ ̶n̶o̶t̶h̶i̶n̶g̶ ̶i̶n̶ ̶t̶h̶e̶ ̶P̶l̶a̶n̶,̶ ̶t̶h̶e̶ ̶P̶l̶a̶n̶ ̶D̶o̶c̶u̶m̶e̶n̶t̶s̶,̶ ̶t̶h̶e̶ ̶C̶o̶n̶f̶i̶r̶m̶a̶t̶i̶o̶n̶ ̶O̶r̶d̶e̶r̶,̶ ̶o̶r̶ ̶a̶n̶y̶ ̶f̶i̶n̶d̶i̶n̶g̶ ̶o̶f̶ ̶f̶a̶c̶t̶ ̶a̶n̶d̶/̶o̶r̶ ̶c̶o̶n̶c̶l̶u̶s̶i̶o̶n̶ ̶o̶f̶ ̶l̶a̶w̶ ̶w̶i̶t̶h̶ ̶r̶e̶s̶p̶e̶c̶t̶ ̶t̶o̶ ̶t̶h̶e̶ ̶c̶o̶n̶f̶i̶r̶m̶a̶t̶i̶o̶n̶ ̶o̶r̶ ̶c̶o̶n̶s̶u̶m̶m̶a̶t̶i̶o̶n̶ ̶o̶f̶ ̶t̶h̶e̶ ̶P̶l̶a̶n̶ ̶s̶h̶a̶l̶l̶ ̶l̶i̶m̶i̶t̶ ̶t̶h̶e̶ ̶r̶i̶g̶h̶t̶,̶ *̶i̶f̶ ̶a̶n̶y̶,̶ ̶o̶f̶ ̶a̶n̶y̶*̶**e**)    **Each** Asbestos Insurance Entity*̶,̶ ̶i̶n̶ ̶a̶n̶y̶ ̶A̶s̶b̶e̶s̶t̶o̶s̶ ̶I̶n̶s̶u̶r̶a̶n̶c̶e̶ ̶A̶c̶t̶i̶o̶n̶,̶* ̶t̶o̶ ̶a̶s̶s̶e̶r̶t̶ ̶a̶n̶y̶ ̶A̶s̶b̶e̶s̶t̶o̶s̶ ̶I̶n̶s̶u̶r̶e̶r̶ ̶C̶o̶v̶e̶r̶a̶g̶e̶ ̶D̶e̶f̶e̶n̶s̶e̶.̶

(g̶)    ̶N̶o̶t̶w̶i̶t̶h̶s̶t̶a̶n̶d̶i̶n̶g̶ ̶t̶h̶e̶ ̶p̶r̶o̶v̶i̶s̶i̶o̶n̶s̶ ̶o̶f̶ ̶t̶h̶i̶s̶ ̶S̶e̶c̶t̶i̶o̶n̶ ̶7̶.̶1̶5̶,̶ ̶A̶s̶b̶e̶s̶t̶o̶s̶ ̶I̶n̶s̶u̶r̶a̶n̶c̶e̶ ̶E̶n̶t̶i̶t̶i̶e̶s̶ shall be bound by t̶h̶e̶**any Final Order, and related** Court̶'̶s̶ findings and conclusions that, under the Bankruptcy Code, the transfer of r̶i̶g̶h̶t̶s̶**Asbestos Insurance Rights** under the Asbestos Insurance Transfer Agreement is valid and enforceable against each Asbestos Insurance Entity notwithstanding *applicable non-bankruptcy law* **or** any anti-assignment provision in or incorporated into any Asbestos Insurance Policy, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreement**,̶ or** Asbestos Insurance Settlement Agreement ̶o̶r̶ *̶a̶p̶p̶l̶i̶c̶a̶b̶l̶e̶ ̶n̶o̶n̶-̶b̶a̶n̶k̶r̶u̶p̶t̶c̶y̶ ̶l̶a̶w̶*̶.

(h̶**f**)    T̶h̶e̶**Each** Asbestos Insurance Entit̶i̶e̶s̶y̶ shall be s̶u̶b̶j̶e̶c̶t̶ ̶t̶o̶**bound by any Final Order that** the releases and injunctions t̶o̶**as provided in** the e̶x̶t̶e̶n̶t̶ ̶d̶e̶s̶c̶r̶i̶b̶e̶d̶ ̶i̶n̶ ̶t̶h̶i̶s̶ ̶Plan **are valid and enforceable against each Asbestos Insurance Entity**, and this Section 7.15 **of the Plan** is not intended**,** nor shall it be construed**,** to limit the protections afforded to the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties by **any Final Order approving** such releases and injunctions **in the Plan** or to allow the Asbestos Insurance Entities to undertake any

99

action against any of the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties that is contrary to **any** such ~~releases and/or injunctions~~**Final Order**.

(~~ig~~) If an Asbestos Insurance Entity that is not a Settled Asbestos Insurance Company asserts that it has rights of contribution, indemnity, reimbursement, subrogation~~,~~ or other similar claims (collectively, for purposes of this Section 7.15(~~ig~~), "Contribution Claims") against a Settled Asbestos Insurance Company, (~~a~~i) such Contribution Claims may be asserted as a defense or offset against the Asbestos PI Trust or the Reorganized Debtors (as applicable) in any Asbestos Insurance Action including such Asbestos Insurance Entity that is not a Settled Asbestos Insurance Company, and the Asbestos PI Trust or the Reorganized Debtors (as applicable) may assert the legal or equitable rights, if any, of the Settled Asbestos Insurance Entity, and (~~b~~ii) to the extent such Contribution Claim is determined to be valid, pursuant to a Final Order, the liability (if any) of such Asbestos Insurance Entity that is not a Settled Asbestos Insurance Company to the Asbestos PI Trust or the Reorganized Debtors (as applicable) shall be reduced by the amount of such Contribution Claim.

(~~j~~) ~~Asbestos Insurance Entities that are parties to Asbestos Insurance Reimbursement Agreements shall be bound by the provisions of Section 7.2.2(d)(iv) with respect to such Asbestos Insurance Reimbursement Agreements.~~**h)** **Each Asbestos Insurance Entity that is a party to an Asbestos Insurance Reimbursement Agreement shall be bound by any Final Order that the provisions of Section 7.2.2(d)(iv) of the Plan are applicable to such Asbestos Insurance Reimbursement Agreement.**

(i) **Notwithstanding anything to the contrary in the Plan or the Plan Documents: (i) any Entity (including the Asbestos PI Trust, any Reorganized Debtor and any non-Debtor Affiliate) that tenders a claim for defense, indemnity or coverage under an Asbestos Insurance Policy to an Asbestos Insurance Entity shall be responsible, for purposes of such claim, for any retrospective insurance premium, self-insured retention, deductible or similar obligation of the insured under the Asbestos Insurance Policies with respect to such claim; (ii) with respect to any self-insured retention, deductible or similar obligation, any Asbestos Insurance Entity to which such claim is tendered may assert, as a coverage defense, that such tendering Entity has not fulfilled the obligations of the insured under the Asbestos Insurance Policies in respect of which such claim was tendered; and (iii) with respect to any retrospective insurance premium or similar obligation, any Asbestos Insurance Entity to which such claim is tendered may offset the amount of such retrospective insurance premium or similar obligation against any amount otherwise payable by such Asbestos Insurance Entity to the Asbestos PI Trust on account of that or any other claim tendered by the Asbestos PI Trust to that Asbestos Insurance Entity.**

(j) **The duties and obligations of an Asbestos Insurance Entity under any Asbestos Insurance Policy, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreement or Asbestos Insurance Settlement Agreement are not diminished, reduced or eliminated by (1) the discharge of the obligations and liabilities of the Debtors and Reorganized Debtors for and in respect of all Asbestos PI Claims or (2) the assumption by the Asbestos PI Trust of responsibility and liability for all Asbestos PI Claims. Except as provided in Sections 7.15(e) and 7.15(h),** *in any Asbestos Insurance*

*Action,* an Asbestos Insurance Entity may assert against any Entity (including the Asbestos PI Trust, any Reorganized Debtor and any non-Debtor Affiliate) seeking coverage any applicable defense that the insured or the Entity seeking coverage under the Asbestos Insurance Policy, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreement or Asbestos Insurance Settlement Agreement has failed to comply with the terms and conditions of the Asbestos Insurance Policy, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreement or Asbestos Insurance Settlement Agreement, or any other obligation imposed on the insured by the Asbestos Insurance Policy, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreement or Asbestos Insurance Settlement Agreement or under applicable law, and any such failure to comply by the insured may be asserted as a defense against any Entity (including the Asbestos PI Trust) to the same extent that such failure to comply could have been asserted as a defense against the insured had the insured brought the Asbestos Insurance Action against the Asbestos Insurance Entity. Except as provided in Sections 7.15(e) and 7.15(h), the Asbestos PI Trust shall be subject to the duties, terms and conditions of any Asbestos Insurance Policy, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreement or Asbestos Insurance Settlement Agreement that set forth, define or limit the Asbestos Insurance Rights that are transferred to the Asbestos PI Trust under *the Asbestos Insurance Transfer Agreement,* to the same extent that the Debtors would be subject to such duties, terms or conditions under applicable law had the Debtors' obligations and liabilities not been discharged in this Chapter 11 case.

## ARTICLE 8
## INJUNCTIONS, RELEASES & DISCHARGE

## 8.1    DISCHARGE

### 8.1.1    Discharge of the Debtors and Related Discharge Injunction

The rights afforded in this Plan and the treatment of all Claims, Plan Claims, Demands and Equity Interests herein shall be in exchange for and shall discharge all Claims, Plan Claims, Demands and Equity Interests of any nature whatsoever, including any interest accrued thereon from and after the Petition Date, against the Debtors and the Debtors in Possession, or their assets, properties, or interests in property. Except as otherwise provided herein, on the Effective Date, all Claims, Plan Claims, Demands against, and Equity Interests in the Debtors and the Debtors in Possession shall be discharged. The Reorganized Debtors shall not be responsible for any obligations of the Debtors or the Debtors in Possession except those expressly assumed by the Reorganized Debtors pursuant to this Plan. All Entities shall be precluded and forever barred from asserting against the Debtors and the Reorganized Debtors, or their assets, properties, or interests in property any other or further Claims, Plan Claims, or Demands based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except as expressly provided in this Plan.

With respect to any debts discharged by operation of law under Bankruptcy Code §§ 524(a) and 1141, the discharge of the Debtors operates as an injunction against the

### 8.5.2    Reservations from the Injunction for the Benefit of Holders of Grace-Related Claims

(a)    As used in this Section 8.5.2: (i) **"GR Claim"** means a Grace-Related Claim against Fresenius that is not (x) an Asbestos PI Claim or an Asbestos PD Claim; (y) a claim against such Fresenius Indemnified Party that arises out of the Fresenius Transaction, or (z) a claim for fraudulent conveyance, successor liability, piercing of the corporate veil, a claim arising under chapter 5 of the Bankruptcy Code, or any other similar claim or cause of action; ~~and~~ (ii) **"GR Proof of Claim"** means a proof of claim set forth in a format substantially the same as Official Form 10 that asserts a GR Claim; **(iii) provided, however, that with respect to Seaton, a GR Claim may only be asserted, and a GR Proof of Claim may only be filed with respect to a GR Claim that is based on the 1996 Unigard Agreement; and (iv) further provided that with respect to OneBeacon, a GR Claim may only be asserted, and a GR Proof of Claim may only be filed, with respect to a GR Claim that is based on the 1996 CU Agreement.**

(b)    Any Holder of a GR Claim who has not, on or before the Effective Date, filed a proof of claim against the Debtors with respect to the same claim(s) as are contemplated by such GR Claim, may file a GR Proof of Claim asserting such GR Claim against the Debtors on or before the sixtieth day subsequent to the Effective Date (the **"GR Claims Bar Date"**);

(c)    The Reorganized Debtors, from and after the Effective Date, shall assume all liability of Fresenius, and be entitled to assert and have the benefit of all defenses of Fresenius, with respect to all GR Claims timely filed by the GR Claims Bar Date; and

(d)    For the avoidance of doubt, the Successor Claims Injunction shall not apply to Asbestos PI Claims and Asbestos PD Claims, which respectively shall be subject to the Asbestos PI Channeling Injunction and the Asbestos PD Channeling Injunction.

(e)    Nothing in this Section 8.5.2 shall be construed to limit the scope or effect of the injunction afforded to the Fresenius Indemnified Parties or any of the other Asbestos Protected Parties pursuant to Section 8.5.1 above ~~nor~~**or** any of the other injunctions, releases, indemnifications, or protections afforded to the Fresenius Indemnified Parties or any of the other Asbestos Protected Parties under this Plan.

### 8.5.3    Reservations from the Injunction for the Benefit of OneBeacon and CNA

114

(a)     Notwithstanding anything to the contrary contained in Section 8.5.1 above, and without limiting any defense, counterclaim, or other right of any of the Sealed Air Indemnified Parties or the application of any other provision of the Plan (including each of the injunctions and releases in the Plan), the Successor Claims Injunction shall not apply to any direct contractual indemnification obligation that any Sealed Air Indemnified Party may have to OneBeacon based upon or arising under the 1996 CU Agreement with respect to "Hatco-Related Environmental Claims" (as defined in the 1996 CU Agreement) asserted against the policies covered by that agreement.

(b)     Notwithstanding anything to the contrary contained in Section 8.5.1 above, and without limiting any other defense, counterclaim, or other right of any of the Sealed Air Indemnified Parties or the application of any other provision of the Plan (including each of the other injunctions and releases in the Plan), the Successor Claims Injunction shall not apply to any contractual indemnification and hold harmless obligations for which the Sealed Air Indemnified Parties are directly obligated to CNA and that arise directly under (or are directly based on) the CNA/Old Grace Delaware 5/30/97 Settlement Agreement except to the extent that any such obligation is, gives rise to, is based on, arises out of, or otherwise relates to any Asbestos Claim.  For the avoidance of doubt, CNA's claims against the Sealed Air Indemnified Parties under or based on any of the CNA/Old Grace Delaware Settlement Agreements that are Asbestos PI Claims or Asbestos PD Claims shall be subject to the Asbestos PI Channeling Injunction or the Asbestos PD Injunction and shall be treated as Class 6 Claims or Class 7A Claims under the Joint Plan.

**8.6    INJUNCTIONS AND RELEASES RELATED TO THE SEALED AIR INDEMNIFIED PARTIES AND FRESENIUS INDEMNIFIED PARTIES**

As required by the Sealed Air Settlement Agreement, the Sealed Air Settlement Order, the Fresenius Settlement Agreement, and the Fresenius Settlement Order, the injunctions and releases outlined in this Plan, including the Asbestos PI Channeling Injunction and Asbestos PD Channeling Injunction provided under Bankruptcy Code § 524(g) and the Successor Claims Injunction provided under Bankruptcy Code § 105(a), shall absolutely and unequivocally extend to and protect the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties.

**8.7    TERM OF CERTAIN INJUNCTIONS AND AUTOMATIC STAY**

**8.7.1    Injunctions and/or Automatic Stays in Existence Immediately prior to Confirmation**

All of the injunctions and/or automatic stays provided for in or in connection with the Chapter 11 Cases, whether pursuant to Bankruptcy Code §§ 105, 362, or any other provision of the Bankruptcy Code or other applicable law, in existence immediately prior to the Confirmation Date shall remain in full force and effect until the injunctions set forth in this Plan become effective, and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms.  In addition, on and after the Confirmation Date, the Reorganized Debtors or the Plan Proponents, acting together, may seek such further orders as they may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

**8.7.2    Injunctions Provided for in this Plan**

Each of the injunctions provided for in this Plan shall become effective on the Effective Date and shall continue in effect at all times thereafter unless otherwise provided by this Plan. Notwithstanding anything to the contrary contained in this Plan, all actions in the nature of those to be enjoined by such injunctions shall be enjoined during the period between the Confirmation Date and the Effective Date.

**8.8    ADDITIONAL RELEASES AND INDEMNIFICATION**

**8.8.1    Release of Sealed Air Indemnified Parties**

116

On or prior to the Effective Date, (i) the SA Debtors, the Asbestos PD Committee, and the Asbestos PI Committee shall execute and deliver the "Release" (as defined in the Sealed Air Settlement Agreement); (ii) the "Government Plaintiff" (as defined in the Sealed Air Settlement Agreement) shall execute and deliver the "Government Release" (as defined in the Sealed Air Settlement Agreement); and (iii) the Asbestos PI Committee and the Asbestos PD Committee shall deliver the "Fresenius Release" (as defined in the Sealed Air Settlement Agreement), all as provided for in the Sealed Air Settlement Agreement. In addition, in consideration for the Cryovac Payment, each of the SA Non-Debtor Affiliates shall irrevocably release, acquit, and forever discharge the Sealed Air Indemnified Parties from any and all present and future Asbestos-Related Claims and Demands related thereto and any and all present and future SA Claims, Canadian Claims, SA Debts, and SA Damages on the basis of, and arising from, or attributable to (in whole or in part, directly or indirectly) the Fresenius Transaction that have accrued or been asserted or that hereafter might accrue or be asserted against the Sealed Air Indemnified Parties, and that each Non-Debtor Affiliate shall not institute, participate in, maintain, maintain a right to or assert against the Sealed Air Indemnified Parties, either directly or indirectly, on its own behalf, derivatively, or on behalf of any other Entity any and all present and future Asbestos-Related Claims and Demands related thereto, and any and all claims present and future SA Claims, Canadian Claims, SA Debts, and SA Damages on the basis of, arising from, or attributable to (in whole or in part, directly or indirectly) the Fresenius Transaction.

The SA Debtors and the Reorganized Debtors shall defend, indemnify, and hold harmless each of the Sealed Air Indemnified Parties as provided in, and to the extent set forth, in the Sealed Air Settlement Agreement.

The SA Debtors shall, jointly and severally, at their sole expense, indemnify, defend, and hold harmless the Sealed Air Indemnified Parties from and against (1) any and all present and future Asbestos-Related Claims and Demands related thereto and all SA Indemnified Taxes, (2) any and all losses, costs, and expenses incurred as a result of any breach of any of the SA Debtors' or SA Non-Debtor Affiliates' obligations, covenants, and agreements set forth or referred to in the Sealed Air Settlement Agreement, including any such obligation, covenant, or agreement of any SA Debtor or SA Non-Debtor Affiliates set forth in the Plan or Confirmation Order, (3) if any SA Non-Debtor Affiliate has not executed and delivered a "Release" (as defined in the Sealed Air Settlement Agreement), any and all Asbestos-Related Claims and Demands related thereto based on, arising out of, or attributable to, directly or indirectly, in whole or in part, such SA Non-Debtor Affiliate and (4) any and all attorneys' fees or costs and expenses attributable to any "SA Indemnity Claim" (as defined in Section 7.7(hh) above); *provided, however,* that in each case such indemnification shall not apply to "Excluded Fees" (as defined in the Sealed Air Settlement Agreement) and *provided, further*, that nothing in the Sealed Air Settlement Agreement or this Plan, shall adversely affect any rights of any Entity to file and pursue, or object to, a proof of claim for Excluded Fees in the Chapter 11 Cases.

Each SA Debtor shall execute and deliver an indemnity agreement in favor of the Released Parties in the form annexed as Exhibit 6 to the Sealed Air Settlement Agreement. The SA Debtors' Indemnity Obligation (and the obligations, covenants, and agreements of each of the SA Debtors and SA Non-Debtor Affiliates set forth or referred to in the Sealed Air Settlement Agreement, including any such obligation, covenant, or agreement of any SA Debtor or SA Non-Debtor Affiliate set forth in the Plan or Confirmation Order) shall not be discharged, expunged, estimated, or otherwise adversely affected in or by the Chapter 11 Cases or by the confirmation of the Plan.

The SA Debtors' Indemnity Obligation (and the obligation, covenants, and agreements of each of the SA Debtors and SA Non-Debtor Affiliates set forth or referred to in the Sealed Air Settlement Agreement, including any such obligation, covenant, or agreement of any SA Debtor or SA Non-Debtor Affiliate set forth in the Plan or Confirmation Order) shall continue unaffected as a post-confirmation obligation of each of the Reorganized Debtors. **For the avoidance of doubt, each of the SA Debtors' and the Reorganized Debtors' obligations to indemnify, defend, and hold harmless the Sealed Air Indemnified Parties under the Sealed Air Settlement Agreement and the documents governing the Cryovac Transaction shall survive confirmation and the SA Debtors' and the Reorganized Debtors' discharge and remain fully effective and enforceable after the Effective Date; and for the further avoidance of doubt the foregoing obligations include the obligations of the SA Debtors and Reorganized Debtors, at their sole expense, to jointly and severally defend, indemnify, and hold harmless the Sealed Air Indemnified Parties from and against any and all indemnification obligations of any of the Sealed Air Indemnified Parties to OneBeacon based upon or arising under the 1996 CU Agreement with respect to environmental claims asserted against the policies covered by that agreement. For the avoidance of doubt, each of the SA Debtors' and the Reorganized Debtors' obligations to indemnify, defend, and hold harmless the Sealed Air Indemnified Parties under the Sealed Air Settlement Agreement and the documents governing the Cryovac Transaction shall survive confirmation and the SA Debtors' and the Reorganized Debtors' discharge, and shall remain fully effective and enforceable after the Effective Date; and, for the further avoidance of doubt, the foregoing obligations include the obligations of the SA Debtors and Reorganized Debtors, at their sole expense, to jointly and severally defend, indemnify, and hold harmless the Sealed Air Indemnified Parties from and against any and all indemnification obligations of any of the Sealed Air Indemnified Parties to CNA based upon or arising under any of the CNA/Old Grace Delaware Settlement Agreements with respect to environmental claims asserted by Kaneb (as described on page 36 of the CNA Post-Trial Brief) or "Hatco Environmental Claims" (as defined by the CNA/Old Grace Delaware 5/30/97 Settlement Agreement).**

### 8.8.2    Reservation of Rights With Respect to Cryovac Transaction Contractual Obligations

K&E ~~15732365.2~~ 15732365.6

Any notices, statements, requests, and demands required or permitted to be provided under this Plan, in order to be effective, must be: (i) in writing (including by facsimile transmission), and unless otherwise expressly provided herein, shall be deemed to have been duly given or made (A) if personally delivered or if delivered by facsimile or courier service, when actually received by the Entity to whom notice is sent, (B) if deposited with the United States Postal Service (but only when actually received), at the close of business on the third business day following the day when placed in the mail, postage prepaid, certified or registered with return receipt requested, or (C) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid) (but only when actually received) and (ii) addressed to the appropriate Entity or Entities to whom such notice, statement, request or demand is directed (and, if required, its counsel), at the address of such Entity or Entities set forth below (or at such other address as such Entity may designate from time to time by written notice to all other Entities listed below in accordance with this Section 11.12):

**If to the Debtors:**                    W. R. Grace & Co.
                                          7500 Grace Drive
                                          Columbia, MD  21044
                                          Attn: General Counsel
                                          Telephone:    (410) 531-4000
                                          Facsimile:    (410) 531-4545

**With a copy to:**                       Kirkland & Ellis LLP
                                          ~~Citigroup Center~~
                                          ~~153 East 53rd Street~~
                                          **601 Lexington Avenue**
                                          New York, NY 10022
                                          Attn:  ~~David M. Bernick, P.C.~~/Theodore L. Freedman
                                          Telephone    (212) 446-4800
                                          Facsimile:    (212) 446-4900

                                          and

                                          The Law Offices of Janet S. Baer, P.C.
                                          70 W. Madison St.
                                          Suite 2100
                                          Chicago, IL 60602
                                          Attn:  Janet S. Baer
                                          Telephone: 312-641-2162

                                          and

                                          Pachulski, Stang, Ziehl, & Jones LLP
                                          919 North Market Street, 17th Floor
                                          P.O. Box 8705
                                          Wilmington,  Delaware  19899-8705  (Courier

138