# EXHIBIT A

## <u>AMENDED AND RESTATED SETTLEMENT AGREEMENT</u>

This Amended and Restated Settlement Agreement (hereinafter the "Amended Agreement") is made as of the Execution Date by and among W. R. GRACE & CO. (hereinafter referred to as "Grace"), EMPLOYERS MUTUAL CASUALTY COMPANY (hereinafter referred to as "EMC"), MUTUAL MARINE OFFICE, INC., PACIFIC MUTUAL MARINE OFFICE, INC., and MUTUAL MARINE OFFICE OF THE MIDWEST (Mutual Marine Office, Inc., Pacific Mutual Marine Office, Inc., and Mutual Marine Office of the Midwest are collectively referred to hereinafter as "MMO"). Grace, EMC, and MMO are collectively referred to hereinafter as the "Parties."

### WITNESSETH THAT:

WHEREAS, Mutual Marine Office, Inc., as attorney-in-fact for EMC, issued certain liability insurance policies to Grace as more fully set forth and identified on Attachment A hereto (hereinafter referred to as the "Subject Insurance Policies"); and

WHEREAS, claims have been asserted against Grace alleging injury due to exposure to asbestos and asbestos-containing materials and Grace has incurred certain liabilities, expenses, and losses arising out of such claims, and Grace has asserted rights to insurance coverage with respect to such claims pursuant to the Subject Insurance Policies; and

WHEREAS, Grace, EMC, and MMO previously entered into an Asbestos Settlement Agreement on or about August 28, 1998, resolving disputes regarding the application of the Subject Insurance Policies to certain claims involving asbestos (hereinafter referred to as the "1998 Agreement"); and

WHEREAS, on or about April 2, 2001, Grace and various affiliated companies filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, <u>In re W. R. Grace & Co., et al.</u>, No. 01-1139

(JKF) (defined herein as the "Bankruptcy Case"), and they continue to operate their businesses as debtors and as debtors-in-possession; and

WHEREAS, Grace anticipates that a plan of reorganization will be confirmed by the Bankruptcy Court in the Bankruptcy Case, and that such plan will provide for the establishment of one or more trusts pursuant to Section 524(g) of the Bankruptcy Code to process and pay certain claims involving asbestos; and

WHEREAS, the Parties wish to fully and finally compromise and resolve their disputes and the Parties' rights and obligations under the Subject Insurance Policies and the 1998 Agreement;

NOW, THEREFORE, for good and valuable consideration, the Parties agree as follows:

## I.    **DEFINITIONS**

The following definitions shall apply to the listed terms wherever those terms appear in this Amended Agreement, as well as in any exhibits or attachments hereto. Moreover, each defined term stated in a singular form shall include the plural form, and each defined term stated in a plural form shall include the singular form, and each defined term stated in the masculine form or in the feminine form shall include the other. Section and subsection numbers used in this Amended Agreement refer to sections and subsections of this Amended Agreement unless otherwise specifically stated.

### A.    Approval Order

"Approval Order" means an order of the Bankruptcy Court, to be entered in the Bankruptcy Case, in form and substance satisfactory to the Parties, the Committee, and the Futures Representative, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, approving this Amended Agreement and the compromise and settlement memorialized herein.

2

B.    Asbestos Insurance Settlement Agreement

"Asbestos Insurance Settlement Agreement" has the meaning set forth in the Joint Plan of Reorganization.

C.    Asbestos PI Channeling Injunction

"Asbestos PI Channeling Injunction" has the meaning set forth in the Joint Plan of Reorganization.

D.    Asbestos PI Claim

"Asbestos PI Claim" has the meaning set forth in the Joint Plan of Reorganization.

E.    Bankruptcy Case

"Bankruptcy Case" means In re W. R. Grace & Co., et al., No. 01-1139 (JKF) and the other bankruptcy cases that are jointly administered under Case No. 01-1139, including any appeals of decisions in the Bankruptcy Case.

F.    Bankruptcy Code

"Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended from time to time.

G.    Bankruptcy Court

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware and, to the extent it exercises jurisdiction over the Bankruptcy Case, the United States District Court for the District of Delaware.

H.    Committee

"Committee" means the Official Committee of Asbestos Personal Injury Claimants appointed in the Bankruptcy Case.

3

I.    <u>Confirmation Order</u>

"Confirmation Order" means an order entered by the District Court in the Bankruptcy Case confirming the Joint Plan of Reorganization or affirming or reissuing the order of the Bankruptcy Court confirming the Joint Plan of Reorganization.

J.    <u>Court</u>

"Court" has the meaning set forth in the Joint Plan of Reorganization.

K.    <u>Debtors</u>

"Debtors" has the meaning set forth in the Joint Plan of Reorganization.

L.    <u>District Court</u>

"District Court" means the United States District Court for the District of Delaware.

M.    <u>Effective Date</u>

"Effective Date" has the meaning set forth in the Joint Plan of Reorganization.

N.    <u>Execution Date</u>

"Execution Date" means the first date on which all Parties have executed this Amended Agreement.

O.    <u>Extra-Contractual Claim</u>

"Extra-Contractual Claim" means any claim seeking any type of relief, including compensatory, exemplary, or punitive damages, on account of alleged bad faith, failure to act in good faith, violation of any duty of good faith and fair dealing, violation of any unfair claims practices act, unfair trade practices act, or similar statute, regulation, or code, or any other similar type of alleged misconduct or omission. "Extra-Contractual Claim" does not mean claims for insurance coverage and/or benefits under any insurance policy.

P.    <u>Final Order</u>

"Final Order" means an order or judgment (including any modification or amendment thereof) that remains in effect and has not been reversed, vacated, stayed, or amended and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired and as to which no appeal or petition for review, reconsideration, rehearing, or certiorari has been taken or, if taken, remains pending.

Q.    <u>Futures Representative</u>

"Futures Representative" means David Austern, the Asbestos PI Future Claimants' Representative appointed, for each Debtor, by Order of the Bankruptcy Court dated May 24, 2004, and any successor to him.

R.    <u>Grace Parties</u>

"Grace Parties" means:

1.    W. R. Grace & Co.;

2.    W. R. Grace & Co.-Conn., a Connecticut corporation;

3.    The Debtors;

4.    The past and present subsidiaries and affiliates of the Persons listed in subsections 1 through 3 above;

5.    The predecessors and successors of such subsidiaries and affiliates;

6.    Any Person on whose behalf Grace or W. R. Grace & Co.-Conn. has the power to release claims under the Subject Insurance Policies; and

7.    The directors, officers, agents, and employees of the Persons listed in subsections 1 through 5 above, solely in their capacities as such.

S.    Joint Plan of Reorganization

"Joint Plan of Reorganization" means the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009, including all exhibits thereto, as such plan has been and may be modified from time to time.

T.    Person

"Person" means an individual, a corporation, a partnership, a joint venture, an association, a joint stock company, a limited liability company, a limited liability partnership, an estate, an unincorporated organization, a trust, a class or group of individuals, or any other entity or organization, including any federal, state, or local governmental or quasi-governmental body or political subdivision, department, agency, or instrumentality thereof.

U.    Settled Asbestos Insurance Company

"Settled Asbestos Insurance Company" has the meaning set forth in the Joint Plan of Reorganization.

V.    Settlement Amount

"Settlement Amount" means the total sum of Three Million Six Hundred Eight Thousand Two Hundred Forty-Seven Dollars ($3,608,247.00).

W.    Trigger Date

"Trigger Date" means the later of the Effective Date, the date when the Approval Order becomes a Final Order, or the date when the Confirmation Order becomes a Final Order.

6

X.    Trust

"Trust" means the "Asbestos PI Trust" as defined in the Joint Plan of Reorganization, or

such other trust as may be established under Section 524(g) of the Bankruptcy Code to process

and pay Asbestos PI Claims pursuant to a plan of reorganization filed by Grace, the Committee,

and the Futures Representative.

## II.    PAYMENT OF SETTLEMENT AMOUNT

A.    Mutual Marine Office, Inc., on behalf of EMC as its managing general agent and

attorney-in-fact, shall pay the Settlement Amount to the Trust in four equal quarterly installments

as follows:

1.    Within fourteen (14) days of Mutual Marine Office, Inc.'s receipt of
notice from the Trust that the Trigger Date has occurred, Mutual Marine
Office, Inc., on behalf of EMC as its managing general agent and attorney-
in-fact, shall pay to the Trust the sum of $902,061.75 in immediately
available funds.  The date upon which Mutual Marine Office, Inc., on
behalf of EMC as its managing general agent and attorney-in-fact, makes
the payment called for in this Section II.A.1 shall be referred to hereinafter
as the "Initial Payment Date."

2.    On or before the three-month anniversary of the Initial Payment Date,
Mutual Marine Office, Inc., on behalf of EMC as its managing general
agent and attorney-in-fact, shall pay to the Trust the sum of $902,061.75
in immediately available funds.

3.    On or before the six-month anniversary of the Initial Payment Date,
Mutual Marine Office, Inc., on behalf of EMC as its managing general

agent and attorney-in-fact, shall pay to the Trust the sum of $902,061.75 in immediately available funds.

4.      On or before the nine-month anniversary of the Initial Payment Date, Mutual Marine Office, Inc., on behalf of EMC as its managing general agent and attorney-in-fact, shall pay to the Trust the sum of $902,061.75 in immediately available funds.

B.      Mutual Marine Office, Inc., on behalf of EMC as its managing general agent and attorney-in-fact, shall make the payments to the Trust required in Section II.A in accordance with reasonable written instructions to be provided to Mutual Marine Office, Inc. by the Trust.

C.      Time is of the essence with respect to each and every installment payment set forth above. If Mutual Marine Office, Inc., on behalf of EMC as its managing general agent and attorney-in-fact, fails timely to make payment in accordance with the foregoing schedule, Mutual Marine Office, Inc., on behalf of EMC as its managing general agent and attorney-in-fact, shall pay interest to the Trust on the unpaid amount, with interest commencing on the fifth business day after payment is due and ending on the date of payment at the rate of interest per annum announced from time to time during such period by the main office of Citibank, N.A. in New York, N.Y as its "prime rate" plus three percentage points.

D.      The Parties agree that the Settlement Amount represents a reasonable compromise of the net present value of the limits of the Subject Insurance Policies that would otherwise be paid out for Asbestos PI Claims, and fully and properly exhausts all per-occurrence and aggregate limits of liability of the Subject Insurance Policies.

III.    **RELEASES**

A.      <u>Release of EMC and MMO by the Grace Parties and the Trust</u>. Upon the Trust's receipt of the Initial Payment in accordance with Section II.A of this Amended Agreement, but

subject to the Trust's receiving the entire Settlement Amount in accordance with Section II.A, Grace, on behalf of itself, the Debtors, and, to the extent it has the power to bind them, the Grace Parties, and the Trust, remise, release, and forever discharge EMC and MMO, along with (i) EMC's and MMO's subsidiaries, divisions, and affiliates, and (ii) the directors, officers, agents, and employees of EMC and MMO and of the Persons listed in subparagraph (i) solely in their capacities as such, with respect to:

1.   Any and all claims for insurance coverage and/or any other obligations under, based on, or arising out of the Subject Insurance Policies; and

2.   Any and all Extra-Contractual Claims arising in connection with the claims released pursuant to Section III.A.1 above;

*provided, however,* that the releases provided for in this Section III.A shall not relieve EMC and MMO of any of their obligations under this Amended Agreement.

B.    <u>Release of Debtors, the Grace Parties, and the Trust by EMC and MMO</u>.  EMC and MMO remise, release, and forever discharge Debtors, the Grace Parties, and the Trust with respect to:

1.   Any and all obligations under, based on, or arising out of the Subject Insurance Policies;

2.   Any and all Extra-Contractual Claims arising in connection with the claims released pursuant to Section III.B.1 above;

*provided, however,* that the releases provided for in this Section III.B shall not relieve Grace or the Trust of any of their obligations under this Amended Agreement.

C.    Upon the Trust's receipt of the Initial Payment in accordance with Section II.A of this Amended Agreement, but subject to the Trust's receiving the entire Settlement Amount in

accordance with Section II.A, the Parties hereto intend to reserve no rights or benefits whatsoever under or in connection with the Subject Insurance Policies, and any and all rights, duties, responsibilities, and obligations of the Parties created by or in connection with the Subject Insurance Policies are terminated. The releases contained in this Section III are intended to operate as if the Subject Insurance Policies had never been issued by Mutual Marine Office, Inc., as attorney-in-fact for EMC.

D.    THE PARTIES ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH, CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT. THE PARTIES EXPRESSLY ASSUME THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES, OR THINGS MAY HAVE OCCURRED THAT THEY DO NOT KNOW OR DO NOT SUSPECT TO EXIST.

IV.    **RELEASE OF SUBROGATION AND CONTRIBUTION CLAIMS AND JUDGMENT REDUCTION CLAUSE**

A.    Payments Made Under This Amended Agreement. EMC and MMO shall not seek reimbursement of the Settlement Amount or any portion thereof, whether by way of a claim for contribution, subrogation, indemnification, or otherwise, from anyone other than their reinsurers, retrocessionaires, or pool members in their capacities as such. Notwithstanding the

foregoing, if a third party pursues a contribution, subrogation, indemnification, or similar claim against EMC or MMO relating to the subject matter of this Amended Agreement, then EMC or MMO shall be free to assert such a claim against such third party, to the extent permitted by the Joint Plan of Reorganization. To the extent that EMC or MMO recovers any amount from such third party, the net proceeds of such recovery (after any payment made by EMC or MMO to such third party on its claim and after EMC or MMO is reimbursed from such proceeds for its fees, costs, and expenses incurred in prosecuting or defending such claim) shall be paid by EMC or MMO promptly to the Trust. The Grace Parties and the Trust shall use reasonable best efforts to obtain from all insurers with which they settle agreements similar to those contained in this Section IV.A.

B.    Payments Received From Other Insurers. Following the Trust's receipt of the Settlement Amount as provided in Section II of this Amended Agreement, in the event that:

1.    Grace or the Trust, as applicable, and/or any other Person becomes entitled to receive a payment from one or more of the insurers other than EMC or MMO for any Claims that have been remised, released, and forever discharged as against any of EMC and MMO pursuant to this Amended Agreement; and

2.    As a result of such other insurer's obligation to pay described in Section IV.B.1 above, such insurer either:

a.    enters into a settlement with EMC or MMO, which settlement has been consented to by Grace or the Trust, as applicable, and any other Person (as applicable), requiring EMC or MMO to reimburse some or all of the payment made or to be made by such insurer; or

11

b.    obtains a final, non-appealable judicial or quasi-judicial determination or award entitling such insurer to obtain a sum certain from EMC or MMO for contribution, subrogation, or indemnification or other similar Claim, against EMC or MMO for its alleged share or equitable share, or to enforce subrogation rights, if any, relating to such payment referenced in Section IV.B.1 above;

the Person entitled to receive such payment shall voluntarily reduce the amount of payment to be received by it (referred to in Section IV.B.1 above) by the amount necessary to reduce or eliminate such settlement, determination, or award against EMC or MMO (referred to in Section IV.B.2 above).

To ensure that such a reduction is accomplished, EMC and/or MMO shall be entitled to assert this Section IV as a defense to any action against it for any such portion of the determination or award against EMC or MMO (referred to in Section IV.B.2 above) and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect EMC and/or MMO from any liability for the determination or award. Grace or the Trust, as applicable, agrees that in any proceeding against insurers other than EMC or MMO in which Grace or the Trust, as applicable, and/or any other Person makes a claim for insurance rights or benefits for any claim that may give rise to the events referenced in Section IV.B.1 above, it will provide notice to Mutual Marine Office, Inc. of such Claim within thirty (30) days of the time Grace or the Trust, as applicable, first becomes aware that such claim is reasonably likely to result in a claim against EMC or MMO and shall consent to EMC's or

MMO's intervention in any such proceeding to the extent that EMC or MMO seeks to intervene to effectuate the intent of this Section IV.

**V.    DEFENSE OF THE ASBESTOS PI CHANNELING INJUNCTION**

A.    Following the Trust's receipt of the Initial Payment, and subject to Section VII.E, if any Person asserts against EMC, and/or Mutual Marine Office, Inc., in its capacity as managing general agent and attorney-in-fact for EMC, a Claim based on or arising out of the Subject Insurance Policies that is an Asbestos PI Claim subject to the Asbestos PI Channeling Injunction ("EMC Channeling Injunction Claim"), the Trust shall expend reasonable best efforts, at its own expense, to enforce the Asbestos PI Channeling Injunction with respect to the EMC Channeling Injunction Claim and to obtain a ruling that such EMC Channeling Injunction Claim is channeled to the Trust pursuant to the Asbestos PI Channeling Injunction and Bankruptcy Code Section 524(g).  In no event, however, shall the Trust be required to expend an amount greater than that portion of the Settlement Amount that has then been received by the Trust in carrying out its obligation under this Section V.A.  When the Trust has expended an amount equal to that portion of the Settlement Amount that has then been received by the Trust in defending the application of the Asbestos PI Channeling Injunction to EMC Channeling Injunction Claims, the Trust shall have no further obligation under this Section V.A.  For the avoidance of doubt, this Section V.A shall not obligate the Trust to retain counsel to represent EMC or to pay the costs and expenses, including attorneys' fees, associated with such legal, consulting, or expert representation as EMC may choose to engage in connection with any claim against EMC.

B.    Mutual Marine Office, Inc. shall promptly notify the Trust in writing of any demand, notice, summons, or other process received by EMC and/or Mutual Marine Office, Inc. that EMC and/or Mutual Marine Office, Inc. reasonably believes is an EMC Channeling

Injunction Claim. If the Trust determines that a claim presented by Mutual Marine Office, Inc. is not an EMC Channeling Injunction Claim, the Trust shall promptly notify Mutual Marine Office, Inc. and shall not be required to undertake to defend the application of the Asbestos PI Channeling Injunction as to such claim. In the event of a dispute as to whether a claim triggers the Trust's obligations under Section V.A, the Trust and Mutual Marine Office, Inc. shall meet and confer to attempt to resolve any such dispute. If they are unable to resolve such dispute through meeting and conferring, they may litigate the issue before the Bankruptcy Court, or, if the Bankruptcy Court declines to exercise jurisdiction, before any court of competent jurisdiction. If the Trust undertakes to defend the application of the Asbestos PI Channeling Injunction to a claim presented by Mutual Marine Office, Inc., but a court of competent jurisdiction thereafter determines that the claim is not an Asbestos PI Claim subject to the Asbestos PI Channeling Injunction and such order becomes a Final Order, the Trust shall have no further obligation to defend the application of the Asbestos PI Channeling Injunction to such claim.

C.    In the event that Mutual Marine Office, Inc., on behalf of EMC as its managing general agent and attorney-in-fact, fails timely to make any of the payments required by Section II.A of this Agreement, and fails to cure that failure within ten (10) days of notice of such failure by the Trust, the Trust shall have no further obligation pursuant to this Section V.

VI.    **CONFIDENTIALITY**

A.    The Parties agree that all information relating to the negotiation of this Amended Agreement (collectively referred to in this Amended Agreement as the "Information," except that such term does not include information that is or becomes available other than as a result of an act or omission of any of the Parties) shall be confidential and is not to be disclosed except as follows:

14

1.     The fact that the Parties have entered into this Amended Agreement may be disclosed to any Person;

2.     The Information may be disclosed as necessary to obtain an Approval Order from the Bankruptcy Court;

3.     The Information may be disclosed by order of court, or pursuant to a written agreement of the Parties;

4.     The Information may be disclosed by EMC or MMO to their reinsurers, retrocessionaires, or pool members, directly or through intermediaries;

5.     Grace, the Committee, the Futures Representative, or the Trust may disclose the Information to other insurers and their representatives;

6.     The Information may be disclosed to outside auditors or accountants of any Party or to the Internal Revenue Service;

7.     A Party may disclose the Information to its accountants, to its counsel, to underwriters in connection with offerings of securities to be issued by such Party and to counsel for such underwriters; and

8.     The Information may be disclosed in any action brought to enforce the terms of this Amended Agreement;

*provided, however*, that a Party making disclosure of any of the Information pursuant to one of the exceptions set forth in clauses (3) through (7) above shall inform any Person to whom such disclosure is made of the confidential nature of the Information and of the understanding upon which it has been disclosed and shall use reasonable efforts to obtain the agreement of such Person to hold the Information in confidence.

B.     A Party may describe and/or make reference to this Amended Agreement to the extent that such disclosure is required to comply with any statute, rule, or other requirement of any government or governmental agency or other authority.  Without limiting the foregoing, the Parties agree that Grace may describe and/or make reference to this Amended Agreement in a Current Report on Form 8-K, a Quarterly Report on Form 10-Q, an Annual Report on Form 10-K or any other report or filing that, on advice of counsel, Grace is required to make pursuant to the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, and in any financial statements and/or related notes included or incorporated by reference in any such report or filing.

C.     In the event a court, litigant, or governmental body requests or requires disclosure of anything protected by this Section VI, the Party from whom disclosure is sought shall immediately give written notice to the other Party in order to allow each Party to take such protective steps as may be appropriate.

D.     Material protected by this Section VI shall be deemed to fall within the protection afforded compromises and offers of compromise by Rule 408 of the Federal Rules of Evidence and similar provisions of state law or state rules of court.

## VII.    **BANKRUPTCY-RELATED OBLIGATIONS**

A.     <u>Committee and Futures Representative Approval</u>.  By executing this Amended Agreement, EMC and MMO confirm receipt of written approval by the Committee and Futures Representative of this Amended Agreement and the releases contained herein.

B.     <u>Approval Motion</u>.  Promptly following the Execution Date, Grace will prepare and file a motion seeking entry of the Approval Order with the Court, which motion will be in form and substance satisfactory to the Parties, the Committee, and the Futures Representative. Grace will use its reasonable best efforts promptly to obtain entry of the Approval Order, and

promptly to obtain entry of the Approval Order as a Final Order. EMC and MMO, at their own expense, will cooperate with Grace in obtaining the Approval Order.

      C.    <u>Order</u>. Grace will use its reasonable best efforts to cause the Court to enter an order providing, among other things:

      1.    that the terms of this Amended Agreement are approved in their entirety, and that Grace is authorized to take all actions necessary to implement and effectuate the terms of the Amended Agreement;

      2.    that this Amended Agreement will be designated an Asbestos Insurance Settlement Agreement, and that (a) EMC, and (b) Mutual Marine Office, Inc., in its capacity as managing general agent and attorney-in-fact for EMC, to the fullest extent, but only to the extent, that Mutual Marine Office, Inc. is eligible for protection under Bankruptcy Code Section 524(g), will be designated Settled Asbestos Insurance Companies, with respect to the Subject Insurance Policies on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization, subject to Section VII.E below; and

      3.    that the Trust, upon its creation, will be bound to the provisions of this Amended Agreement with the same force and effect as if the Trust was a Party to this Amended Agreement from the Execution Date.

      D.    <u>Designation of EMC and Mutual Marine Office, Inc. as Settled Asbestos Insurance Companies</u>. Upon the Approval Order becoming a Final Order, Grace shall designate this Amended Agreement as an Asbestos Insurance Settlement Agreement, and (a) EMC, and (b) Mutual Marine Office, Inc., in its capacity as managing general agent and attorney-in-fact for EMC, to the fullest extent, but only to the extent that Mutual Marine Office, Inc. is eligible for

protection under Bankruptcy Code Section 524(g), as Settled Asbestos Insurance Companies, with respect to the Subject Insurance Policies on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization.

     E.    <u>Withdrawal of Designation of EMC and Mutual Marine Office, Inc. as Settled Asbestos Insurance Companies</u>.  In the event that Mutual Marine Office, Inc., on behalf of EMC as its managing general agent and attorney-in-fact, fails timely to make any of the payments to the Trust required by Section II.A, and Mutual Marine Office, Inc., on behalf of EMC as its managing general agent and attorney-in-fact, fails to cure that failure within ten (10) days of notice of such failure by the Trust, then the Trust may, in its sole discretion, withdraw the designation of this Amended Agreement as an Asbestos Insurance Settlement Agreement, and EMC and Mutual Marine Office, Inc. as Settled Asbestos Insurance Companies eligible for protection under Bankruptcy Code Section 524(g), on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization.

     F.    <u>Trust as a Party</u>.  Upon the Effective Date, the Trust automatically and without need for further action will become a Party to this Amended Agreement.

     G.    <u>No Bankruptcy-Related Activities</u>.  Effective upon the Execution Date, EMC and MMO (1) shall take no action of any nature (including filing any objection to the Joint Plan of Reorganization and initiating or taking discovery) that may hinder, delay, or oppose actions of the Debtors, the Committees, or the Futures Representative in the Bankruptcy Case; and (2) shall not oppose the entry of a Confirmation Order.  Upon the Approval Order becoming a Final Order, EMC and MMO expressly consent to the assignment of Asbestos Insurance Rights as provided in the Asbestos Insurance Transfer Agreement, Exhibit 6 to the Joint Plan of Reorganization.

## VIII.  <u>TERMINATION</u>

A.     After the Execution Date, this Amended Agreement shall terminate upon the occurrence of any of the following events:

1.     The entry of an order of the Bankruptcy Court denying approval of this Amended Agreement or the entry of an order by the District Court reversing the Approval Order;

2.     The entry of an order by the Bankruptcy Court dismissing the Bankruptcy Case or converting it into a Chapter 7 case;

3.     The entry of an order denying confirmation of the Joint Plan of Reorganization or the entry of an order by the District Court reversing the order approving confirmation of the Joint Plan of Reorganization; or

4.     The failure of the Effective Date to occur, coupled with circumstances that make clear that the Effective Date will never occur.

B.     After the Execution Date, EMC and MMO shall have the option to terminate this Amended Agreement by providing written notice of termination to Grace, the Committee, and the Futures Representative within thirty (30) days of the occurrence of any of the following events:

1.     Notice to EMC and MMO by Grace or the Trust of the entry of an order that has become a Final Order that has the effect of providing that EMC is not a Settled Asbestos Insurance Company and/or that this Amended Agreement is not an Asbestos Insurance Settlement Agreement, except as provided in Section VII.E;

2.     Notice to EMC and MMO by Grace or the Trust of the entry of an order that has become a Final Order that has the effect of providing that Mutual

Marine Office, Inc., in its capacity as managing general agent and attorney-in-fact for EMC, is not protected under section 524(g) of the Bankruptcy Code to the fullest extent, but only to the extent that Mutual Marine Office, Inc. is eligible for protection under Bankruptcy Code Section 524(g), except as provided in Section VII.E;

3.    The confirmation of a plan of reorganization other than the Joint Plan of Reorganization as it exists as of the Execution Date that materially and adversely affects the interests of EMC and MMO under this Amended Agreement.

Failure by EMC and MMO to give notice of the exercise of their option to terminate this Amended Agreement within thirty (30) days following the occurrence of any of the foregoing events will be deemed a permanent waiver of the option to terminate with respect to that condition.

C.    After the Effective Date, the Trust shall have the option, at its sole discretion, to terminate this Amended Agreement by providing written notice to EMC and MMO within thirty (30) days of the failure by Mutual Marine Office, Inc., on behalf of EMC as its managing general agent and attorney-in-fact, timely to make any payment required by Section II.A and to cure such failure with ten (10) days of the payment due date.

D.    In the event that this Amended Agreement is terminated pursuant to Section VIII.A, B, or C:

1.    This Amended Agreement, including the releases set forth in Section III, shall be of no further force and effect, and the Parties shall have no further

20

obligations under this Amended Agreement, except the obligations set forth in Section VI, which shall survive termination;

2.     This Amended Agreement shall no longer be designated an Asbestos Insurance Settlement Agreement, and EMC and Mutual Marine Office, Inc. will no longer be designated Settled Asbestos Insurance Companies, with respect to the Subject Insurance Policies on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization; and

3.     The 1998 Agreement will remain in force and effect as if this Amended Agreement had never existed, and any portions of the Settlement Amount already paid shall be treated as payments under the 1998 Agreement.

## IX.     NON-PREJUDICE AND CONSTRUCTION OF AGREEMENT

A.     This Amended Agreement is intended to be and is a commercial accommodation between the Parties hereto and shall not be construed as an admission of coverage under the Subject Insurance Policies or any other policies subscribed to or issued by EMC or MMO in favor of the Grace Parties. Neither this Amended Agreement nor any provision hereof shall be construed as a waiver, modification, or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Insurance Policies.

B.     This Amended Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, this Amended Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Persons outside the scope of this Amended Agreement. This Amended Agreement is without prejudice to the positions taken by EMC and MMO with regard to other insureds, and without prejudice with regard to positions taken by Grace with regard to other insurers. The

21

Parties specifically disavow any intention to create rights in third parties under or in relation to this Amended Agreement, except as expressly provided herein.

C.     This Amended Agreement is the jointly drafted product of arms'-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed.   In particular, with respect to interpretation of this Amended Agreement, the Parties waive any benefits from the principle of *contra proferentem* or other principles which would result in the interpretation of any ambiguities against insurers.  No Party shall be deemed to be the drafter of this Amended Agreement or of any particular provision or provisions, and no part of this Amended Agreement shall be construed against any Party on the basis of the Party's identity as an insurance company or as the drafter of any part of this Amended Agreement.

## X.     NO MODIFICATION

This Amended Agreement may be amended, modified, superseded, or canceled, and any of the terms hereof may be waived, only by a written instrument which specifically states that it amends, modifies, supersedes, or cancels this Amended Agreement, executed by or on behalf of all of the Parties or, in the case of a waiver, by or on behalf of the Party waiving compliance. The failure of a Party at any time or times to require performance of any provision of this Amended Agreement shall in no manner affect the right at a later time to enforce the same.  No waiver by a Party of any condition, or of any breach of any term, covenant, representation, or warranty contained in this Amended Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach, or a waiver of any other condition or of any breach of any other term, covenant, or warranty.

22

XI.  **EXECUTION**

This Amended Agreement may be executed in two originals, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

XII.  **GOVERNING LAW**

This Amended Agreement and the performance of the transactions contemplated hereby shall be governed by and construed and enforced in accordance with the laws of the State of New York, other than the conflict-of-laws provisions thereof that would otherwise require the application of the substantive law of any other jurisdiction.

XIII.  **ARBITRATION**

A.     Except as provided in Section V.B, the Parties agree to resolve any dispute which arises regarding the terms of this Amended Agreement or the implementation thereof (a "Dispute") by way of binding arbitration in accordance with the Center for Public Resources Rules for Non-Administered Arbitration of Business Disputes (the "Rules") and the provisions of this Section.

B.     Except as provided in Section V.B, in the event any Dispute arises that the Parties are unable to resolve by agreement, any Party to such Dispute shall have the right to commence binding arbitration of such Dispute under this Section by sending written notice demanding such arbitration to the other Party in accordance with Section XIV.  Such notice shall briefly describe the Dispute as well as the relief sought by the Party demanding arbitration.  Promptly following any such notice, the Parties shall attempt to agree upon the selection of an arbitrator (the "Arbitrator") to resolve such Dispute.  If the Parties have not agreed upon the selection of the Arbitrator by the fifteenth day following delivery of the notice demanding arbitration, then any Party may request the Center for Public Resources to select the Arbitrator, provided that any Arbitrator selected by the Center for Public Resources shall be a retired federal or state court

23

judge.  Any such selection of the Arbitrator by the Center for Public Resources shall be conclusive and binding on the Parties.

C.    All arbitrations under this Section XIII shall be conducted in accordance with the Rules and the Parties shall faithfully abide by the Rules and abide by and perform any award rendered by the Arbitrator.  All such arbitrations shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1-16, and judgment upon the award may be entered by any court having jurisdiction thereof.  Any such arbitration shall be conducted in New York, New York.

D.    Any process against EMC or MMO in, or in connection with, any suit, action, or proceeding arising out of or relating to this Amended Agreement or any of the transactions contemplated by this Amended Agreement may be served on the representative personally or by mail at the address set forth in Section XIV with the same effect in either case as though served upon EMC or MMO personally.

## XIV.  NOTICES

A.    All notices, requests, demands, and other communications required or permitted to be given under this Amended Agreement shall be deemed to have been duly given if in writing and delivered in person, mailed first-class postage prepaid, or by registered or certified mail, or transmitted by facsimile, addressed as follows:

If to Grace:                              W. R. Grace & Co.
                                          7500 Grace Drive
                                          Columbia, MD  21044
                                          Attn: General Counsel
                                          Telephone:  (410) 531-4000
                                          Facsimile: (410) 531-4545

24

| | |
|---|---|
| With a copy to: | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>Attn: Theodore L. Freedman<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900 |
| If to EMC and/or MMO: | Mutual Marine Office Inc.<br>919 Third Avenue, 10th Floor<br>New York, NY 10022<br>Attn: Stephen E. McCarthy<br>Telephone: (212) 551-0701<br>Facsimile: (212) 986-1310 |
| With a copy to: | Michaels & May, P.C.<br>300 South Wacker Drive, Suite 1800<br>Chicago, IL 60606<br>Attn: Scott M. Salerno<br>Telephone: (312) 428-4733<br>Facsimile: (312) 575-8679 |
| If to the Committee: | Caplin & Drysdale, Chartered<br>One Thomas Circle, NW, Suite 1100<br>Washington, DC 20005<br>Attn: Peter Lockwood<br>Telephone: (202) 862-5000<br>Facsimile: (202) 862-3301<br><br>and<br><br>Caplin & Drysdale, Chartered<br>375 Park Avenue, 35th Floor<br>New York, NY 10152<br>Attn: Elihu Inselbuch<br>Telephone: (212) 319-7125<br>Facsimile: (212) 644-6755 |
| With a copy to: | Anderson Kill & Olick, PC<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Attn: Robert M. Horkovich<br>Telephone: (212) 278-1322<br>Facsimile: (212) 278-1733 |

25

If to the Futures Representative:                David T. Austern
                                                 3110 Fairview Park Drive
                                                 Suite 200
                                                 Falls Church, VA 22042-0683
                                                 Telephone: (703) 205-0835
                                                 Facsimile: (703) 205-6249

With a copy to:                                  Orrick, Herrington & Sutcliffe LLP
                                                 1152 15th Street, N.W.
                                                 Washington, D.C. 20005-1706
                                                 Attn: Roger Frankel
                                                 Telephone: (202) 339-8400
                                                 Facsimile: (202) 339-8500

B.     Any Party or the Designated Representative may change the address to which such communications are to be directed to it by giving notice to the others, in the manner provided in this Section.

## XV.   **INTEGRATION**

This Amended Agreement, including the Attachment hereto, constitutes the entire Amended Agreement and understanding among EMC, MMO, and Grace with respect to the subject matter hereof, and supersedes all prior agreements, arrangements, and understandings relating to the subject matter hereof.  For the avoidance of doubt, this Amended Agreement supersedes the 1998 Agreement, which will have no further force and effect as between the Parties, unless this Amended Agreement is terminated in accordance with Section VIII.

## XVI.  **AUTHORITY**

A.     EMC and MMO represent and warrant to Grace that all necessary corporate approvals have been obtained for its execution and delivery of this Amended Agreement to Grace.

B.    Grace represents and warrants to EMC and MMO that, subject to the Approval Order becoming a Final Order, all necessary corporate approvals have been obtained for its execution and delivery of this Amended Agreement to EMC and MMO.

## XVII. **BINDING EFFECT**

This Amended Agreement shall be binding on and inure to the benefit of the successors and assigns of the Parties.

27

B.      Grace represents and warrants to EMC and MMO that, subject to the Approval

Order becoming a Final Order, all necessary corporate approvals have been obtained for its

execution and delivery of this Amended Agreement to EMC and MMO.

## XVII. **BINDING EFFECT**

This Amended Agreement shall be binding on and inure to the benefit of the successors

and assigns of the Parties.

IN WITNESS WHEREOF, the Parties have executed this Amended Agreement by their

authorized representatives as of the date first above written.

Dated: MARCH 25, 2010      W. R. GRACE & CO.

By: _Richard C. Finke_

Printed: RICHARD C. FINKE

Title: ASST. GEN. COUNSEL

Dated:_____      MUTUAL MARINE OFFICE, INC., PACIFIC MUTUAL
MARINE OFFICE, INC., MUTUAL MARINE OFFICE
OF THE MIDWEST, and EMPLOYERS MUTUAL
CASUALTY COMPANY (by its managing general agent
and attorney-in-fact Mutual Marine Office, Inc.)

By:_____

Printed:_____

Title:_____

27

IN WITNESS WHEREOF, the Parties have executed this Amended Agreement by their authorized representatives as of the date first above written.

Dated:_____          W. R. GRACE & CO.

By:_____

Printed:_____

Title:_____


Dated: *3/26/10*          MUTUAL MARINE OFFICE, INC., PACIFIC MUTUAL
MARINE OFFICE, INC., MUTUAL MARINE OFFICE
OF THE MIDWEST, and EMPLOYERS MUTUAL
CASUALTY COMPANY (by its managing general agent
and attorney-in-fact Mutual Marine Office, Inc.)

By:_____

Printed: *STEPHEN E. MCCARTHY*

Title: *Senior Vice President*

28

**Attachment A**

**Subject Insurance Policies**

| Begin | End | Policy Number |
|-------|-----|---------------|
| 06/30/1978 | 06/30/1979 | MMO-70347 |
| 06/30/1978 | 06/30/1979 | MMO-70348 |
| 06/30/1978 | 06/30/1979 | MMO-70349 |