## Confirmation Requirements and Objections[1] [2]

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **Contested Provisions** | | |
| **1.  Good Faith: § 1129(a)(3).**  Plan must have been proposed in good faith and in accordance with the law. | | |
| Plan has been conceived and proposed with an honest purpose and with the reasonable hope of success.  It has been proposed after arm's-length negotiations for the purposes of maximizing the value of the Debtors' estates.  *PP Main Pre-Trial Br. at 34-37; PP Main Post-Trial Br. at 2-9; PP Main Post-Trial Response Br. at 1-4.* | Plan filed in bad faith because it seeks to maximize value for equity at the expense of the creditors.  *Bank Lenders Objection at ¶¶ 56-58; Lender/Committee Pre-Trial Br. at 68.* | Plan provides that unsecured creditors will be paid the full amount of their allowed claims and will receive post-petition interest at the appropriate rate.  Disagreements over a creditor's treatment are an insufficient basis to allege bad faith.  *PP Main Pre-Trial Br. at 57; PP Main Post-Trial Response Br. at 2-3.* |
| | Record fails to include any evidence of Plan Proponents' good faith in proposing the Plan.  *Lender/Committee Post-Trial Br. at 40.* | Evidence of years of litigation and arm's-length negotiations prove good faith.  *PP Main Post-Trial Br. at 2-5; PP Main Post-Trial Response Br. at 1-4.* |

---

[1]    Some parties have joined the objections of others and are not listed individually on this chart.  These parties include the following: National Union Fire Insurance Company of Pittsburgh, PA, joining in Longacre's Objection (*see* Dkt. 21779 and Dkt. 22422); City of Vancouver, joining in AMH's Objection (*see* Dkt. 21792); School District 68 Nanaimo-Ladysmith, joining in AMH's Objection (*see* Dkt. 21793); TIG Insurance Company and United States Fire Insurance Company joining other insurers' objections (*see* Dkt. 21800).

[2]    This chart has been revised to show resolutions of Objections since the Closing Arguments.  Those objections resolved by filed Stipulations are now crossed out on this chart and included in Appendix A, which outlines all filed objections to confirmation of the Plan that have been withdrawn and/or resolved.  Appendix B identifies by topic the remaining Plan objections and the parties who continue to assert those objections.

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Plan not filed in good faith because it singles out AMH for disparate treatment. As in *ACandS, Inc.*, the Plan violates § 1129(a)(3), notwithstanding any technical compliance with §§ 1122, 1129(b) and 524(g) because it is fundamentally unfair and treats similarly situated creditors differently. *AMH Objection at 25-27, Pre-Trial Br. at 34-35, Post-Trial Br. at 60-62.* | Not a valid good faith objection, but rather implicates § 1123(a)(4) and is addressed accordingly in this chart. In any case, the Plan is fundamentally fair to AMH and all Class 7A Claimants because, among other things, it provides uniform procedures for resolution of such claims. *PP Main Pre-Trial Br. at 109-111.* |
| | ~~Scope of exculpation as it applies to the TAC evidences bad faith. *Seaton OneBeacon Pre-Trial Br. at 37-38.*~~ | ~~The Plan has been amended to eliminate the TAC from parties receiving protection under § 11.9. *PP Main Post-Trial Br. at 9.*~~ |
| | ~~The TAC is in a position to control the Trust and the TAC members' appointment is not consistent with the interests of public policy. *Seaton OneBeacon Objection at ¶¶ 53-64, Pre-Trial Br. at 31.*~~ | ~~Plan has been conceived and proposed with an honest purpose and with the reasonable hope of success by which good faith under § 1129(a)(3) is measured. Thus, the good faith requirement is met. *PP Main Pre-Trial Br. at 34-37; PP Main Post-Trial Br. at 2-9; PP Main Post-Trial Response Br. at 1-4.* Furthermore, the TAC is not conflicted, and the appointment of the TAC is consistent with the interests of creditors, equity security holders, and public policy. *PP Main Post-Trial Response Br. at 77.*~~ |
| | Plan fails to provide fair and equitable treatment to the MCC claims. *MCC Post-Trial Br.* at 12. | Not a valid good faith objection, but rather, implicates § 1123(a)(4) and is addressed accordingly in this chart. |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Plan not proposed in good faith because the settlement of the Asbestos PI Claims occurred without Montana's or Canada's participation. *Montana Post-Trial Br. at 11, Post-Trial Response Br. at 9-10*; *Crown Obj. at 16.* | Montana's and Canada's claims are Class 6 claims, and Class 6's treatment is the product of extensive negotiation with the ACC, representing the interests of the Asbestos PI Claimants, and the PI FCR.  Good faith does not require that every individual creditor participate in plan settlement negotiations. *PP Main Post-Trial Br. at 9; PP Main Post-Trial Response Br. at 2-3*; *Reply to Crown at 11.* |
| | Violations of state laws and various sections of the Bankruptcy Code, including §§ 1129(b), 1129(a)(11), 1122(a), 1123(a)(4), and 524(g), evidence bad faith. *Montana Objection at 26-27, Pre-Trial Br. at 37*; ~~*CNA Pre-Trial Br. at 14, 17, 34, 36-37.*~~ | Plan does not violate any provisions of the Code or state law.  The Code plainly pre-empts anti-assignment provisions in CNA's policies.  *PP Main Pre-Trial Insurance Br. at 3-9.*  Objections on grounds of unfair treatment do not sustain an allegation of bad faith.  *PP Main Post-Trial Br. at 6.*  Plan neither implicates nor violates the absolute priority rule.  *PP Main Post-Trial Br. at 8-9; PP Main Post-Trial Response Br. at 78; PP Lender Pre-Trial Br. at 51-57.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **2. Feasibility: § 1129(a)(11).**  Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors. | | |
| Reorganized Debtors will be able to generate strong growth into the future, obtain exit financing, and pay their debts as they come due.  *See PP Pre-Trial Feasibility Br.; PP Main Post-Trial Br. at 10-17; PP Main Post-Trial Response Br. at 16-31.* | Plan Proponents have not estimated Grace's liability for traditional Asbestos PD Claims. *AMH Post-Trial Feasibility Br. at 6-14, Pre-Trial Feasibility Br. at 3-4.* | 1) AMH has not presented any evidence that these liabilities will exceed Reorganized Grace's ability to pay. *PP Main Post-Trial Response Br. at 18.*<br><br>2) Liability for these claims does not need to be estimated because few, if any, future traditional Asbestos PD Claims will have merit. *PP Main Post-Trial Response Br. at 19-21.*<br><br>3) Grace has presented evidence that it could pay $1.6 billion in traditional Asbestos PD Claims and the Plan would still be feasible. There is absolutely no evidence that Grace's liability on account of such claims could exceed this amount. *PP Main Post-Trial Response Br. at 21-22.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Plan does not estimate the value of AMH's class claim. *AMH Post-Trial Feasibility Br. at 15-16, Pre-Trial Feasibility Br. at 4-5.* | AMH has presented no evidence that its class claim could threaten the Plan's feasibility, or that there is any real possibility that the repeated rulings denying class certification will be reversed.  Moreover, even if class certification denial is reversed, the Bankruptcy Court must still consider the merits of the claims, and Debtors have numerous defenses.  In addition, the Reorganized Debtors would be in a position to pay up to $1.6 billion for any such class action. *PP Main Post-Trial Response Br. at 24-26.* |
| | There is insufficient evidence of necessary exit financing. *AMH Post-Trial Feasibility Br. at 16-19, Pre-Trial Feasibility Br. at 5.* | There is no requirement of formal execution of specific documents to prove feasibility.  Plan Proponents have demonstrated that Grace will be able to obtain the necessary financing, and AMH has not offered any contrary evidence. *PP Main Post-Trial Response Br. at 26-27.* |
| | Inadequate notice of the Bar Date threatens the Plan's feasibility. *AMH Post-Trial Feasibility Br. at 19-21.* | AMH's argument regarding the Bar Date notice raises no new facts and has been repeatedly rejected in these bankruptcy proceedings. *PP Main Post-Trial Response Br. at 27-30.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Montana may have a claim for $750 million against Grace that cannot be discharged. *Montana Objection at 25-26, Pre-Trial Br. at 37, Post-Trial Br. at 10-11, Post-Trial Response Br. at 8-9.* | Montana has not provided any foundation or proof for the assertion that it could have a claim for $750 million. *PP Main Post-Trial Response Br. at 30-31.*<br><br>Montana's argument is based on a false legal premise because its purported claims will be channeled to the Asbestos PI Trust and therefore will not threaten Reorganized Grace, regardless of their magnitude. *PP Main Pre-Trial Br. at 124-26; PP Pre-Trial Feasibility Br. at 8-9; PP Main Post-Trial Br. at 16-17; PP Main Post-Trial Response Br. at 30-31.* |
| **3. Best Interests: § 1129(a)(7).** Each impaired class of claims must either accept the Plan or receive property of a value, as of the Effective Date, not less than the impaired class would receive under a Chapter 7 liquidation on that date. | | |
| Plan fixes disputed liabilities and realizes the full value of Grace, whereas a Chapter 7 liquidation does not provide an adequate mechanism to do either.  Impaired classes will receive or retain value that is not less than the value of Grace in Chapter 7. *PP Main Pre-Trial Br. at 37-46; PP Main Post-Trial Br. at 17-37; PP Main Post-Trial Response Br. at 4-15; PP Lender Pre-* | Plan provides Libby less than they would receive in a liquidation. *Libby Objection at 85-87, Pre-Trial Br. at 100-01.* At trial, Plan Proponents failed to show that Libby Claimants will receive greater recoveries under the Plan than in Chapter 7. *Libby Post-Trial Br. at 24-27, Post-Trial Response Br. at 6-9.* | Debtors have much higher value in Chapter 11 than Chapter 7.  In Chapter 7, unsecured creditors would receive far less than 100 cents on the dollar. *PP Main Pre-Trial Br. at 44-46.*<br><br>Under the Plan, all Asbestos PI Claimants receive 25 to 35% of the value of their claims, which is more than they would receive in a Chapter 7 liquidation. *PP Main Post-Trial Br. at 26-37.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| *Trial Br. at 15-18, 46-47.* | Assuming general unsecured claims of $1 billion and PD claims of $200 million, total liabilities under Chapter 7 would range from $5.9 billion to $6.4 billion. Utilizing an asset range of $2.2 billion to $3.3 billion, the Chapter 7 payment percentage ranges from 34% to 56%, which is more than the payment percentage under the Plan. *Libby Post-Trial Br. at 27.* | Libby improperly calculates the values of Grace's assets and liabilities in Chapter 7, overestimating assets and underestimating liabilities. With proper valuation of assets and liabilities, Libby Claimants receive more under the Plan than in Chapter 7. *PP Main Post-Trial Response Br. at 4-12.*<br><br>In Chapter 7, there would be no cap on recovery for <u>any</u> Asbestos PI Claimants. Given the resulting dilution to the estate in contrast to the individual review available to the Libby Claimants under the PI TDP, it is highly speculative that the Libby Claimants would receive more under Chapter 7.<br><br>Although the Libby Claimants receive more under the Plan even when applying a simple mathematical formula, it is not proper to apply a mathematical formula mechanically. The application of the best interests test must turn on the facts of the case and serve the basic purposes of that test. When considering these facts, in the context of unliquidated mass tort liabilities, the recovery for Grace's unsecured creditors in a Chapter 7 liquidation must be heavily discounted. *PP Main Post-Trial Br. at 17-25.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | When considering Libby Claimants' rights to non-products insurance coverage and potentially high jury verdicts not subject to any cap, the Libby Claimants' recovery would be even greater under Chapter 7. *Libby Post-Trial Br. at 27.* | Libby Claimants do not have exclusive or "vested" rights in the non-products insurance coverage and hold no right of direct action against Grace's insurance carriers. *PP Libby Pre-Trial Br. at 51-55; PP Libby Post-Trial Br. at 31-34.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Equity Interests are being retained while Class 9 Bank Lenders are not receiving the contract default rate in violation of § 1129(a)(7). *Committee Objection at 14-18; Bank Lenders Objection ¶¶ 46-55; Lender/Committee Pre-Trial Br. at 69-72, Post-Trial Br. at 5, n.5.* <br><br> ~~Morgan Stanley is entitled to the rate of interest stated in their letters of credit, whether or not that rate is characterized as a default rate.~~ ~~*Morgan Stanley Objection ¶¶ 17-20, 7/17/09 Supp. Br. at 11-12.*~~ | § 1129(a)(7) does not apply because Grace's solvency cannot be established and none of the unsecured creditors are impaired.  *See PP Lender Pre-Trial Br. at 42-45; Grace's Lender Post-Trial Br. at 24; see* § 1124(1) of the Chart for a summary of the solvency issue. <br><br> ~~Under § 1129(a)(7), unsecured creditors are only entitled to receive post-petition interest at the federal judgment rate.  The Plan pays this rate or more to all unsecured creditors.~~ ~~*PP Lender Pre-Trial Br. at 15-17, 46-48; Grace's Lender Post-Trial Br. at 27.*~~ <br><br> Neither the Lenders ~~nor Morgan Stanley~~ are entitled to default interest because there have been no legally cognizable defaults.  ~~*PP Supp. Br. on Morgan Stanley at 4;*~~ *PP Lender Pre-Trial Br. at 19-35.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | While the Bank Lenders' post-petition interest under § 502(b)(2) may be disallowed as part of the "allowed pre-petition claim amount," this has not eliminated and has nothing to do with a creditor's entitlement to post-petition interest which is preserved under §§ 1129(a)(7), 726(a)(5), and 1129(b). *Bank Lender Objection ¶¶ 25-30; Lender/Committee Pre-Trial Br. at 49-67, 69-72.* | All creditors are receiving a proper rate of post-petition interest under §§ 1129(a)(7).<br><br>All creditors are also receiving a proper rate of post-petition interest under § 1129(b).  *See* sections 15-16 of this Chart. |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **4.  Classification: § 1122(a).**  Plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims of such class. | | |
| Plan properly classifies all claims and interests.  *PP Main Pre-Trial Br. at 47-50; PP Main Post-Trial Br. at 37-39.* | Plan violates § 1122 because Libby claims are not substantially similar to other claims in their class.  Because of the nature of their injuries and the insurance coverage available to them alone, they should be separately classified.  *Libby Objection at 49-55, Pre-Trial Br. at 61-68, Post-Trial Br. at 19-24.* | Libby Claimants are properly classified as Class 6 Claimants.  As the Court has recognized, the Plan cannot distinguish between Libby Claimants and other Asbestos PI Claimants -- to do so would be gerrymandering.  *PP Libby Pre-Trial Br. at 59-62; PP Libby Post-Trial Br. at 37-40; PP Libby Post-Trial Response Br. at 19-24.*<br><br>Libby Claimants have no exclusive rights to non-products insurance coverage.  They have not shown that they hold any lien or security interest in the non-products coverage or any existing proceeds.  *PP Libby Pre-Trial Br. at 51-59, 64-68; PP Libby Post-Trial Br. at 31-34, 37-40; PP Libby Post-Trial Response Br. at 16.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Plan misclassifies Indirect PI Trust Claims. *BNSF Objection at 16, Pre-Trial Br. at 27, Post-Trial Br. at 7; MCC Objection at ¶ 7, Pre-Trial Br. at 6-8, Post-Trial Br. at 9-11, Post-Trial Response Br. at 9-11*; *Montana Objection at 6-7, Pre-Trial Br. at 19-21, Post-Trial Br. at 5*; ~~*Seaton/OneBeacon Objection at ¶ 23-36, Pre-Trial Br. at 13-19, Post-Trial Br. at 19*~~; *Crown Obj. at 19.* | MCC, Montana, BNSF~~, and Seaton/OneBeacon's~~ and Canada's contingent claims are properly classified in Class 6 because they are claims for indemnification, contribution, or subrogation for damages paid to a plaintiff seeking recovery for personal injuries allegedly caused by exposure to asbestos or asbestos-containing products for which the Debtors allegedly have liability. *PP Main Pre-Trial Br. at 47-51, 56-59; PP Main Post-Trial Br. at 37-40, 46-47; PP Main Post-Trial Response Br. at 37-39,41-43*; *Reply to Crown at 16.* |
| | ~~Plan misclassifies Longacre's claim relating to RMQ settlement.  It is not substantially similar to other Class 6 claims.  Instead of being based on negligence or tort, it is based on contractual obligations of the Debtors. *Longacre Objection at ¶¶ 8-17, Pre-Trial Br. at 5-11, Post-Trial Br. at 9-18, Post-Trial Response Br. at 1-5; National Union Objection at 2-3, Pre-Trial Br. at 2-4.*~~ | ~~Longacre's claim is properly classified in Class 6 because it is a claim for indemnification for moneys paid to satisfy a settlement for personal injuries allegedly caused by exposure to asbestos or asbestos-containing products for which the Debtors allegedly have liability.  *PP Main Pre-Trial Br. at 47-51; PP Main Post-Trial Br. at 37-39, 44-46.*~~  ~~Nothing in Grace's settlement with National Union requires classification of this claim in Class 9.  *PP Main Post-Trial Response Br. at 39-40.*~~ |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | ~~ACC and PI FCR have been representing the interests of tort claimants, but no one has been representing the interest of Indirect PI Trust Claimants as Class 6 Claimants. Thus it is unfair to classify such claims in Class 6. *Longacre Objection at ¶ 14, Pre-Trial Br. at 8, National Union Pre-Trial Br. at 4.*~~ | ~~Longacre and other similarly-situated creditors have been represented by their own counsel, and have had adequate opportunity to raise their objections and have them heard. *See PP Main Pre-Trial Br. at 47-63.*~~ ~~Further, the purpose of the PI Trust is to, among other things, use the PI Trust's assets and income to pay the holders of all PI Trust Claims in such a way that such holders of PI Trust Claims are treated fairly, equitably, and reasonably. The duty of the PI Trustees, who are independent and do not represent any party in these cases, is to assure that all Asbestos PI Claimants are treated as such. *PP Main Pre-Trial Br. at 72-77; PP Main Post-Trial Response Br. at 74-75.*~~ |
| | Plan violates § 1122(a) by classifying the Lenders' claims under the Credit Agreements with substantially dissimilar claims of other unsecured creditors whose agreements may or may not provide for default interest. *Bank Lender Objection at ¶¶ 40-45.* | § 1122 requires only that claims be "substantially similar," and does not require absolute homogeneity. Class 9 consists of unsecured claims of equal rank, and the classification of the Bank Lenders' claims in Class 9 is proper. Moreover, the Bank Lenders are not entitled to default interest. *See PP Lender Pre-Trial Br. at 15-35, 46-51.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **5. Equal Treatment: § 1123(a)(4).** Plan must provide the same treatment for each claim or interest of a particular class. | | |
| Plan provides the same treatment for each claim or interest in a particular class. *See PP Main Pre-Trial Br. at 66-69, 108-109; PP Main Post-Trial Br. at 78-79; PP Main Post-Trial Response Br. at 64-69; PP Libby Pre-Trial Br. at 3-64, PP Libby Post-Trial Br. at 13-37; PP Libby Post-Trial Br. at 1-14.* | Plan violates § 1123(a)(4) by taking away the Libby Claimants' valuable insurance rights. *Libby Objection at 48, 67-68, Pre-Trial Br. at 80-81, Post-Trial Br. at 21-24, Post-Trial Response at 4-6.* | Libby Claimants have no vested rights or rights of direct action against the insurance companies and no unique rights against the non-products insurance coverage. *PP Libby Pre-Trial Br. at 51-55; PP Libby Post-Trial Br. at 31-34.*<br><br>All Asbestos Insurance Rights will be transferred to the Trust and preserved, where they will be asserted for the benefit of all Asbestos PI Claimants.  In a § 524(g) case, no Asbestos PI Claimant or class of claimants should have exclusive access to insurance policies to the detriment of other claimants. *PP Libby Pre-Trial Br. at 60-64; PP Libby Post-Trial Br. at 34-37.* |
| | Plan violates § 1123(a)(4) by providing different treatment to PI claims based on inappropriate factors such as (a) the type of disease, (b) whether the claim is based on a jury verdict, (c) whether the claim is liquidated by the Trust, (d) whether the claim is for wrongful death, and (e) whether the claim is for compensatory or punitive damages. *Libby Objection at 55-67, Pre-Trial Br. at 68-79.* | The PI TDP treats all Class 6 claims the same.  The PI TDP's medical criteria, jury verdict caps, treatment of liquidated claims, treatment of wrongful death claims, and treatment of punitive damage claims apply equally to all Asbestos PI Claimants, including the Libby Claimants. *PP Libby Pre-Trial Br. at 11-16; PP Libby Post-Trial Br. at 12-21, 40-43.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | ~~Plan discriminates against MCC's claim because the Debtors sought to disallow the claim under § 502(e). *MCC Objection at ¶ 13, Pre-Trial Br. at 10-12, Post-Trial Br. at 13.*~~ | ~~Debtor's mere assertion of a defense to a claim does not constitute discrimination. *PP Main Post-Trial Response Br. at 68.* Further, there is no process in the PI TDP or under the Plan for disallowing such claims and upon Plan confirmation this objection will be inapplicable. *PP Main Pre-Trial Br. at 68-69; PP Main Post-Trial Br. at 123.*~~ |
| | ~~Plan discriminates against Indirect PI Trust Claims because those claims are potentially subject to disallowance under the Plan. *CNA Objection at 31, Pre-Trial Br. at 20-22, Post-Trial Br. at 17-19.*~~ | ~~There is no process in the PI TDP or under the Plan for disallowing such claims. *PP Main Pre-Trial Br. at 68-69; PP Main Post-Trial Br. at 123.*~~ |
| | ~~Plan discriminates against claimants with entitlements to contract interest, because those claimants may be determined to be entitled to a post-petition interest rate less than the standard 4.19% rate allowed under the Plan. *Longacre Objection at ¶¶ 18-21.*~~ | ~~Under the Plan, Longacre will receive post-petition interest at whatever rate the Court deems appropriate. This treatment is proper. *PP Supp. Br. on Morgan Stanley at 3.* Different claimants may receive different rates of interest. Under § 1123(a)(4), equal treatment does not necessarily require equal payment. *PP Phase I Pre-Trial Br. at 50.*~~ |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | ~~Longacre's claim includes post-petition interest, while Class 6 Claimants are generally not entitled to post-petition interest. Thus, if Longacre is classified in Class 6, it will receive more favorable treatment than other Class 6 Claimants under the Plan, causing the Plan to violate § 1123(a)(4). *Longacre Post-Trial Br. at 19-20.*~~ | ~~To the extent Longacre is correct that it is entitled to post-petition interest, it will be treated *better* than other claimants and lacks standing to allege a violation of § 1123(a)(4). The objection also lacks merit. § 1123(a)(4) is not violated because other Class 6 Claimants agreed to their treatment under the Plan by overwhelmingly voting in favor of it. *PP Main Post-Trial Response Br. at 64-65.*~~ |
| | ~~Different post-petition interest rates paid to claimants within Class 9 violate § 1123(a)(4). *Morgan Stanley Objection at 4-6.*~~ | ~~Under the Plan, at their option, all claimants are entitled to the rate offered by the Plan or the rate that they are entitled to as a matter of law. This constitutes equal treatment. *PP Main Pre-Trial Br. at 111.*~~ |
| | Plan discriminates against Montana by calling for a distribution of stock to Montana in violation of the Montana Constitution. *Montana Objection at 19-20; Pre-Trial Br. at 35, Post-Trial Br. at 9, Post-Trial Response Br. at 7.* | The Asbestos PI Trust will distribute cash, not stock, and nothing in the Plan calls for a distribution of stock to any Class 6 Claimant. *See* 01/04/2010 Tr. at 294. |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | PI TDP treats claims within the same class differently by failing to provide for any payment on account of Montana's contribution and indemnification claims. *Montana Pre-Trial Br. at 26-28, Post-Trial Br. at 7, Post-Trial Response Br. at 5; Crown Obj. at 21.* | The PI TDP treats all Class 6 claims the same. To the extent Montana has a valid Class 6 Claim for contribution and indemnification, it will be treated like all similarly situated Class 6 Claims. *PP Main Post-Trial Br. at 78-79, 107; Reply to Crown at 17.* |
| | PI TDP discriminates against holders of Indirect PI Trust Claims by abrogating state law rights to join Grace in litigation as the responsible (or jointly responsible) party to lawsuits. *CNA Objection at 30-32, Pre-Trial Br. at 22; Garlock Sealing Pre-Trial Br. at 19-20.* | Holders of Indirect PI Trust Claims may pursue claims for indemnification or contribution against the Asbestos PI Trust, These claims will be treated the same as other Class 6 Claims. *PP Main Pre-Trial Br. at 66-69.* |
| | AMH is treated differently than any other PD claim, present or future. Plan singles out AMH by forcing it to litigate its claim in the Bankruptcy Court. Thus, it is discriminatory and violates both § 1123(a)(4) and the more general principle of "equality of treatment" mandated by the Code. *AMH Objection at 15-16, Pre-Trial Br. at 23-24. Post-Trial Br. at 51-55.* | Plan scrupulously provides the same treatment for all unresolved Class 7A PD Claimants by subjecting them to the same PD CMO. In addition to AMH's claim, there are currently 16 building claims in the U.S. and 2 in Canada that will be treated in this manner. *PP Main Pre-Trial Br. at 109-111. PP Post-Trial AMH Br.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Plan does not provide fair and equitable treatment of indemnity claims that may arise and/or be liquidated after the Effective Date.  Thus, the Plan does not comply with § 1123(a)(4).  *MCC Objection at ¶ 8; Pre-Trial Br. at 8-9; Post-Trial Br. at 11-12.* | Holders of Indirect PI Trust Claims may pursue claims for indemnification or contribution against the Asbestos PI Trust, These claims will be treated the same as other Class 6 Claims.  *PP Main Pre-Trial Br. at 66-69.* |
| | ~~Sealed Air and Fresenius are inappropriately granted preferential treatment under the Plan because they are entitled to reimbursement for asbestos claims and attorney fees.~~  ~~*Seaton/OneBeacon Objection at ¶¶ 31-32, Pre-Trial Br. at 16-18.*~~ | ~~Sealed Air and Fresenius' treatment is required by settlement agreements approved by the Court.  Sealed Air and Fresenius are making substantial contributions under these settlements.~~  ~~*PP Main Pre-Trial Br. at 108-09.*~~ |
| | PI TDP fails to protect the rights of Indirect PI Trust Claimants as they include too many restrictions on allowed claims, such as not including attorney fees and defense costs and requiring a full release from the underlying asbestos creditor.  *BNSF Objection at ¶¶ 56, 58, Pre-Trial Br. at 26, 27; Montana Pre-Trial Br. at 31-33, Post-Trial Br. at 7-9, Post-Trial Response Br. at 4-6; CNA Objection at 30-31, Pre-Trial Br. at 22-23, Post-Trial Br. at 19-20.* | Indirect PI Trust claimants are not required to obtain a release in favor of the Asbestos PI Trust, and valid claims for attorney fees and defense costs are expressly payable under the PI TDP.  *PP Main Pre-Trial Br. at 66, 68.*  The Plan Proponents intend to amend the TDP to add new Section 5.14, which fully addresses BNSF's objection regarding defense costs and attorneys fees under its contractual indemnity claim. |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Plan discriminates against the Libby Claimants by undervaluing their claims. *Libby Objection at 40-42, Pre-Trial Br. at 52-54, Post-Trial Br. at 6-8.* The extraordinary claims provisions of the PI TDP do not value Libby claims consistently with similar claims in the tort system. *Post-Trial Response Br. at 2-4.* | The scheduled values in the PI TDP do not discriminate against the Libby Claimants. They treat all claimants that meet the medical criteria the same and specifically include disease criteria intended to address Libby Claims. *PP Libby Post-Trial Br. at 21-26; PP Libby Post-Trial Response Br. at 1-6.*<br><br>The scheduled values set for severe pleural disease actually favor the Libby Claimants in light of changed circumstances negatively affecting their claim values. *PP Libby Post-Trial Br. at 26-28; PP Libby Post-Trial Response Br. at 4.* |
| | Plan fails to account for factors other than disease which had a profound impact on claim values in the tort system. *Libby Post-Trial Br. at 8-10.* | The PI TDP takes into account the following factors: number of defendants, product identification, severity of disease, and jurisdiction. Moreover, the opportunity for Individual Review permits factors other than disease to be considered. *PP Libby Post-Trial Br. at 21-28; PP Libby Post-Trial Response Br. at 6-9.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | PI TDP medical criteria are not medically reasonable and impermissibly discriminate against those claimants with severe pleural disease. *Libby Post-Trial Br. at 10-17.* | The PI TDP medical and exposure criteria achieve proper compensation goals, and capture clear cases of disease. Moreover, the PI TDP medical criteria are medically reasonable in that they are supported by the literature and the ILO Guidelines. *PP Libby Post-Trial Br. at 13-20; PP Libby Post-Trial Response Br. at 9-14.* |
| | Libby is deprived of effective voting rights because they are improperly classified with other asbestos claimants and treated less favorably than those claimants. *Libby Objection at 68-69, Pre-Trial Br. at 81.* | Libby is properly classified and treated no less favorably than other claimants in Class 6. Thus, this objection lacks merit. *PP Libby Pre-Trial Br. at 64-70; PP Libby Post-Trial Br. at 37-40; PP Libby Post-Trial Response Br. at 16.* |
| | The availability of individual review provides no defense to discrimination against those claimants with severe pleural disease under Level IV-B. Individual review is unfair and entirely discretionary. *Libby Post-Trial Br. at 18-19.* | There is no evidence that the individual review process is unfair or discriminates against the Libby Claimants. The Libby Claimants offered no witness or exhibit demonstrating that the individual review process will treat the Libby Claimants unfairly as compared to non-Libby Claimants. *PP Libby Post-Trial Br. at 20-21; PP Libby Post-Trial Response Br. at 14-16.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | BNSF has the right to receive defense costs and attorneys' fees for any claim asserted against it, whether or not it is meritorious, but the Plan eliminates BNSF's right to receive defense costs in such cases. *BNSF Post-Trial Response Br. at 2.* | The Plan Proponents intend to amend the TDP to add new Section 5.14, which fully addresses BNSF's objection regarding defense costs and attorneys fees under its contractual indemnity claim. |

### 6. TAC Objections

| | | |
|---|---|---|
| The proposed members of the TAC do not have conflicts of interest. *PP Main Pre-Trial Br. at 71-79; PP Main Post-Trial Br. at 96-97; PP Main Post-Trial Response Br. at 72-77* | TAC representatives have actual and apparent conflicts with the interests of Indirect Claimants as they may exercise control over the Trust, causing it to pay unmeritorious claims. *CNA Objection at 17-22, Pre-Trial Br. at 10-17, Post-Trial Br. at 7-17; ~~GEICO/Republic Objection at ¶¶ 40-53, Phase I Pre-Trial Br. at 24-29, Post-Trial Br. at 5; Federal Objection at ¶¶ 38-51~~; Garlock Sealing Objection at ¶¶ 25-31; ~~Seaton OneBeacon Objection at ¶ 53-67, Pre-Trial Br. at 25-32, Post-Trial Br. at 34, Post-Trial Response Br. at 20~~.*<br><br>As a result of the conflicts of interest, the Plan is not fair and equitable. *Montana Post-Trial Br. at 9.*<br><br>~~These conflicts are "irreconcilable." GEICO/Republic Objection at ¶¶ 40-53; Seaton/OneBeacon Pre-Trial Br. at 25-32, Post-Trial Br. at 34.~~ | The TAC is a common feature of asbestos PI trusts; its representatives have limited roles and duties.  Duties to represent clients and claimants are compatible; and the assumption that TAC representatives will pay unmeritorious claims or act unethically is legally and factually unsupported. *PP Main Pre-Trial Br. at 71-79.*  The Plan Objectors produced no evidence of conflicts of interest or impropriety regarding the composition and purpose of the TAC. *PP Main Post-Trial Br. at 96-97.*<br><br>Courts have rejected this "conflict of interest" argument.  Contrary to the Plan Objectors' assertions, in *In re Eagle-Picher*, the court held that § 1129(a)(5) of the Code would not be violated because the TAC would be consistent with the interest of creditors and equity security holders and with public policy.  The same is true here. *PP Main Post-Trial Response Br. at 77.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | TAC members should be neutral or the TAC should be reduced to an advisory role. Alternatively, the Court should require the TAC to have an equal number of representatives of Indirect Claimants. *Garlock Objection at ¶¶ 40-53; Federal Objection at ¶¶ 38-51.* | The TAC is a common feature of asbestos PI trusts; its representatives have limited roles and duties.  Duties to represent clients and claimants are compatible; and the assumption that TAC representatives will pay unmeritorious claims or act unethically is legally and factually unsupported.  *PP Main Pre-Trial Br. at 71-79.* |
| **7.  Insurance Neutrality[3]** | | |
| Under § 7.15, the Plan is insurance neutral.  *PP Phase I Pre-Trial Br. at 4-19; PP Main Pre-Trial Br. at 149.* | Plan is not insurance neutral because it alters and impairs the insurers' contractual rights under their policies, Asbestos Insurance Reimbursement Agreements, and applicable state law to evaluate, defend and settle PI Claims.  Therefore, the Plan does not satisfy the requirements of § 1129(a)(3) and it also violates § 1129(a)(1).  *GEICO/Republic Objection at ¶¶ 25-30, Phase I Pre-Trial Br. at 15-18; CNA Objection at 6, Pre-Trial Br. at 32-33; Federal Objection at ¶¶ 16-34; AXA Belgium Objection at 3-4, Joinder to Fireman's Pre-Trial Br. at 3.* | § 7.15 expressly preserves all insurers' rights. To the extent this complaint has any validity, it has been preserved as a coverage defense, a treatment that the Third Circuit found appropriate in *Combustion Engineering.  PP Phase I Pre-Trial Br. at 27-28.*<br><br>§§ 1123(a)(5), 524(g), and persuasive precedent dictate that the Plan does not violate any consent-to-settlement, cooperation, management-of-claims or no-action provisions.  *PP Insurance Pre-Trial Br. at 25.* |

---

3   The Plan Proponents are in negotiations with the insurers with respect to revised insurance neutrality language.  These negotiations have not yet concluded.  These Objections relate to the current version of the Plan.  To the extent that the Plan Proponents and the insurers are able to reach agreement on revised insurance neutrality language, these Objections may be moot.

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Plan is not insurance neutral in that § 7.15 of the Plan is unintelligible or otherwise confusing with respect to insurers' rights. CNA, in particular, questions whether insurance neutrality is "swallowed" because Asbestos Insurer Coverage Defenses under § 1.1.16 of the Plan "do not include any defense that (i) the Plan or any of the Plan Documents do not comply with the Bankruptcy Code." *GEICO/Republic Objection at ¶¶ 19-24, Phase I Pre-Trial Br. at 7-10; CNA Objection at 9-11; Federal Objection at ¶¶ 31-34.* | The super-preemptory language of § 7.15 makes it explicitly clear that the plan shall not impair any Asbestos Insurance Entity's legal, equitable or contractual rights. *PP Phase I Pre-Trial Br. at 8-11.* |
| | § 7.15 of the Plan does not appear to preserve insurance neutrality because § 8.1.1 discharges all Claims of "any nature whatsoever," and § 7.13 also casts doubt on whether the Debtors' obligations remain undiminished and/or are transferred to the Trust. *Federal Objection at ¶¶ 21-23; CNA Objection at 8-13, Pre-Trial Br. at 33.* | Neither § 7.13 nor § 8.1.1 nor any other provision of the Plan excuses the Debtors from their obligations. *PP Phase I Pre-Trial Br. at 8-11.* |
| | Plan needs to clarify that there is no acceleration of any of the Asbestos Insurance Entity obligations. (cites *UNR*). Plan Proponents' denials that this could occur are not adequate. *Federal Objection at ¶ 34, fn 10.* | § 7.15 of the Plan leaves the insurers' rights unaltered, and the Plan does not provide for acceleration of obligations. *PP Phase I Pre-Trial Br. at 4-19.* There is no need to amend the Plan to affirmatively state that something that is not in the Plan is not in the Plan. |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | ~~The Plan violates § 1129(a)(1) of the Bankruptcy Code because it is not insurance neutral and purports to release Grace from the anti-assignment provisions of its contracts. *CNA Objection at 37-39, Pre-Trial Br. at 36-38, Post-Trial Br. at 32-34, Post-Trial Response Br. at 7-9.*~~ | ~~The Plan is insurance neutral and assignment of insurance rights is valid notwithstanding any contractual provisions to the contrary. *See PP Phase I Pre-Trial Br. at 4-19; PP Insurance Pre-Trial Br. at 1-16.* Thus, the Plan does not violate § 1129(a)(1).~~ |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **8. Insurance Company Standing** | | |
| Insurers only have standing to object to the issues that directly and pecuniarily affect them.  *PP Main Pre-Trial Br. at 79-80; PP Main Post-Trial Br. at 71, 79-80; PP Main Post-Trial Response Br. at 73-74.* | In Phase I, various insurers claimed they had standing to object to a broad array of issues, including the TAC's composition, alleged § 524(g) violations, and the Plan's releases and injunctions.  ~~*AXA Belgium Phase I Pre-Trial Br. at 3-6;*~~ *CNA Phase I Trial Br. at 1-8;* ~~*Federal Phase I Pre-Trial Br. at 10-11; GEICO/Republic Objection at 1-2, Phase I Pre-Trial Br. at 37-39*~~.<br><br>Various insurers continue to affirmatively argue that they have standing to object to the TAC.  *CNA Pre-Trial Br. at 8-9, Post-Trial Br. at 6-7, Post-Trial Response Br. at 3;* ~~*GEICO/Republic Phase I Pre-Trial Br. at 28-29, 37-39, Post-Trial Br. at 5; Seaton OneBeacon Pre-Trial Br. at 32, Post-Trial Br. at 35.*~~ | In their capacity as insurers, the insurance companies only have standing to object to issues that directly and pecuniarily affect them.  Because the Plan is insurance neutral, the only such issues are the transfer of Asbestos Insurance Rights and the Plan's treatment of Asbestos Insurance Reimbursement Agreements.  Insurers that are also creditors have standing to object to certain Plan provisions in their capacity as creditors.  *PP Phase I Pre-Trial Br. at 4-31; PP Insurance Pre-Trial Br. at 1-2; PP Main Post-Trial Br. at 79-80.*<br><br>Insurers have no standing to raise "conflict of interest" issues with respect to the TAC under Third Circuit precedent.  Their arguments to the contrary misconstrue the case law and ignore the controlling precedent of *Combustion Engineering*.  *PP Main Pre-Trial Br. at 71; PP Main Post-Trial Response Br. at 73-74.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Insurers allege the Plan violates § 524(g) funding requirements.  *CNA Objection at 34-35, Pre-Trial Br. at 30-32, Post-Trial Br. at 24-27; Seaton OneBeacon Pre-Trial Br. at 32-37, Post-Trial Br. at 25, Post-Trial Response Br. at 21-22; GEICO/Republic Objection at ¶¶ 54-65, Phase I Pre-Trial Br. at 29-35, Post-Trial Br. at 5.* | Insurers do not have standing to complain about the § 524(g) funding requirements because they are not creditors and will not be affected by funding issues.  *PP Main Pre-Trial Br. at 79-80.* |
| | CNA also claims it has standing to object to the TAC as an Indirect Trust Claimant. *CNA Pre-Trial Br. at 5-7, Post-Trial Br. at 1-5.* | CNA has not filed a claim in this capacity. Its standing argument is based on the assertion that it might 'one day' file an indirect claim against the Trust if certain things happen.  Such speculative developments, entirely contingent on uncertain events, are no basis for standing. Nor has CNA explained how such a claim could survive the Plan's injunctions.  *PP Main Post-Trial Response Br. at 73-74.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **9. Anti-Assignment Provisions of Insurance Policies** | | |
| The assignment of Asbestos Insurance Rights under the Plan is appropriate. *PP Pre-Trial Insurance Br. at 2-31; PP Main Post-Trial Br. at 80-96; PP Main Post-Trial Response Br. at 69.* | Plan impairs the rights of insurers as it improperly abrogates the anti-assignment provisions of their policies by assigning insurance rights of non-debtor affiliates to the Trust. *CNA Objection at 6, Pre-Trial Br. at 36-38, Post-Trial Br. at 32-34; GEICO/Republic Objection at ¶¶ 31-39, Pre-Trial Br. at 18-23, Post-Trial Br. at 3-5; Federal Objection at ¶¶ 9-15; AXA Belgium Objection at 3-4, Joinder to Fireman's Pre-Trial Br. at 3.* | § 1123(a)(5) expressly preempts any anti-assignment clauses in the applicable polices, as recognized by this Court and every court to consider the issue. *See PP Insurance Pre-Trial Br. at 2-7; PP Main Post-Trial Br. at 81-82.*<br><br>GEICO/Republic acknowledges that the insurers can only prevail on the assignment issue if this Court's decision in *Federal-Mogul* is reversed. *PP Main Post-Trial Response Br. at 69.*<br><br>§ 1123(b)(3)(B) permits the transfer of asbestos insurance rights from policies to a trust, and § 524(g) impliedly preempts any anti-assignment clauses in the policies. *PP Insurance Pre-Trial Br. at 14-19; PP Main Post-Trial Br. at 87-89.* |
| | There is a presumption against preemption. *GEICO/Republic Pre-Trial Br. at 19; CNA Pre-Trial Br. at 38 n.39.* | To the extent a presumption exists, it does not apply when interpreting § 1123(a), which provides for preemption. *PP Insurance Pre-Trial Br. at 7-8; PP Main Post-Trial Br. at 82-83.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Preemption only applies to non-bankruptcy law relating to the financial condition of a debtor and not to insurance policies (citing *Pacific Gas & Elec. Co. v. California,* 350 F.3d 932 (9th Cir. 2003). *GEICO/Republic Objection at ¶ 36, Phase I Pre-Trial Br. at 20; CNA Pre-Trial Br. at 38 n.39.* | Preemption is not so limited in the Third Circuit, and the Ninth Circuit's interpretation violated basic rules of statutory construction by rendering the "notwithstanding" clause of § 1123(a) meaningless. *PP Insurance Pre-Trial Br. at 9-10; PP Main Post-Trial Br. at 83-85.* |
| | *Combustion Engineering* only addressed whether the right to insurance *proceeds* could be assigned. In the present case, the assignment of insurance rights is contemplated, and the Code does not allow this. *CNA Pre-Trial Br. at 37.* | CNA is incorrect. Notwithstanding any semantic difference, the plan in *Combustion Engineering* transferred the right to sue insurers to the trusts, as this Plan does. The district court, affirming this Court's decision in *Federal Mogul,* has also expressly rejected insurers' attempts to distinguish between a transfer of insurance rights and proceeds. *See PP Insurance Pre-Trial Br. at 5, n.7* |
| | § 1123(a)(5) cannot preempt private contracts. *GEICO/Republic Phase I Pre-Trial Br. at 18-19; CNA Pre-Trial Br. at 38, n.39.* | § 1123(a)(5) <u>does</u> preempt the provisions of private contracts. *PP Insurance Pre-Trial Br. at 7-8; PP Main Post-Trial Br. at 85-87.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **10. Asbestos Insurance Reimbursement Agreement Issues** | | |
| Transfer of rights under Asbestos Insurance Reimbursement Agreements to the Asbestos PI Trust is permissible under Third Circuit Law.  *PP Insurance Pre-Trial Br. at 19-24, 31; PP Main Post-Trial Response Br. at 69-72.* | Plan impairs CNA's rights under its Asbestos Insurance Reimbursement Agreement.  Modifications of CNA's rights are not authorized by bankruptcy law and violate otherwise applicable state law, failing to satisfy §§ 1129(a)(1) and (3).  *CNA Objection at 6-7, 26-28, Pre-Trial Br. at 32-34, Post-Trial Br. at 27-29.*<br><br>Hartford argues that bankruptcy courts lack the power to unilaterally modify a debtor's contractual rights and obligations, and the Plan purports to do so.  *Hartford Pre-Trial Br. at 9-11.*<br><br>§ 7.2.2(d)(iv) eviscerates all contractual rights under the insurers' agreements, allowing the Plan Proponents and Bankruptcy Court to re-write and modify the insurers' agreements with Grace.  *Hartford Pre-Trial Br. at 4, 9-11.* | Plan Objectors' rights are not modified in violation of the law.  § 7.2.2(d)(iv) simply makes it clear that the Trust is the successor to the Debtors with respect to the Asbestos Insurance Reimbursement Agreements and must make payments the Debtors would have made under the framework of the PI TDP.  As with assignment of rights under insurance policies, this treatment is authorized under the clearly preemptive language of § 1123(a)(5)(B) and likewise authorized by §§ 1123(b)(3)(B) and 524(g).  *PP Insurance Pre-Trial Br. at 19-24; PP Main Post-Trial Response Br. at 69-70.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | § 7.2.2(d)(iv) is unclear and ambiguous and could be read to void all potential defenses to payment under the Asbestos Insurance Reimbursement Agreements. *CNA Post-Trial Br. at 27-29; Hartford Post-Trial Br. at 3-5.*<br><br>Despite the Plan Proponents' insistence that § 7.2.2(d)(iv) only eliminates defenses that would interfere with the transfer of rights, they have "carefully and deliberately chosen not to include any provisions that would make that clear." *Hartford Post-Trial Br. at 5.* | The language of § 7.2.2(d)(iv) is clear. It does not remove obligations owed to insurers  It simply makes it clear that payment by the "Asbestos PI Trust" shall be treated as payment "by or on behalf of the Debtors." Thus, the insurers cannot use the fact that the Trust is the one making payments as excuse for their nonpayment, as that would prevent the assignment from being effective. *PP Main Post-Trial Response Br. at 70-71.*<br><br>Very few obligations are owed to Hartford and CNA under the Asbestos Insurance Reimbursement Agreements.  At trial, they failed to demonstrate that § 7.2.2(d)(iv) threatens any of these obligations. *PP Main Post-Trial Response Br. at 71.*<br><br>To the extent concerns about 'ambiguous language' in § 7.2.2(d)(iv) are valid at all, they can be addressed by clarifying language in the Confirmation Order.  The provision is not an obstacle to confirmation. *PP Main Post-Trial Response Br. at 70.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | § 7.2.2(d)(iv) of the Plan constitutes a declaration under Bankruptcy Rule 7001(1) and (9) that can only be issued through an adversary proceeding.  This declaration concerns "non-core issues on which this Court does not have the authority to issue a final determination."  *Hartford Pre-Trial Br. at 5-8, Hartford Post-Trial Br. at 1-2; 5-7.* | § 7.2.2(d)(iv) does not call for a declaratory judgment and the Court's determination of whether a plan containing this section may be confirmed is a "core issue."  *PP Insurance Pre-Trial Br. at 26-30; PP Main Post-Trial Response Br. at 71-72.*<br><br>Hartford's cases are not on point and fail to refute the directly on-point cases cited by the Plan Proponents where similar plan provisions were held appropriate as part of plan confirmation.  *PP Insurance Pre-Trial Br. at 27-28; PP Main Post-Trial Response Br. at 72.*<br><br>Moreover, having raised several substantive objections to § 7.2.2(d)(iv) and argued that the provision precludes confirmation, Hartford cannot now claim the Court cannot determine these issues.  *PP Pre-Trial Insurance Brief at 28-30.* |
| | Parties should not have to pay to the Trust any amount in excess of the amount actually paid by the Trust to the holder of a claim.  *Hartford Pre-Trial Br. at 4; ~~AXA Belgium Objection at 5, Joinder to Fireman Fund's Non-Surety Pre-Trial Br. at 3-4.~~* | With respect to existing Asbestos Insurance Reimbursement Agreements, the Plan does not purport to impose reimbursement payments on the insurance companies on the basis of the liquidated value of the claims. *See PP Insurance Pre-Trial Br. at 31.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **11. Exculpatory Clauses and Releases.**  Under Third Circuit law, releases must be fair and equitable, narrowly tailored and those parties being released must either make substantial contributions to the reorganization or have indemnification rights against the Debtors. | | |
| The releases provided for by § 8.8.7 are appropriate and necessary under the facts and circumstances of this case and comply with Third Circuit law.  The releases are consensual and apply only to creditors voting for the Plan.  These consensual releases are narrowly tailored to protect only those parties who made substantial contributions to the reorganization or have indemnification rights against the Debtors.  *PP Main Pre-Trial Br. at 94-95; PP Main Post-Trial Br. at 72-74; PP Main Post-Trial Response Br. at 62.* | The releases in § 8.8.7 are too broad, violate § 524(g), and fail to meet the requirements for such releases.  *Libby Objection at 79-84, Pre-Trial Br. at. 92-99; AMH Objection at 23-25, Pre-Trial Br. at 31-33;* ~~*Seaton OneBeacon Objection at ¶¶ 83-85, Pre-Trial Br. at 37-39, Post-Trial Br. at 20-24;*~~ ~~*GEICO/Republic Objection at ¶¶ 68-69, Pre-Trial Br. at 36*~~*; AXA Belgium Objection at 4-5; MCC Objection at ¶ 11, Pre-Trial Br. at 13-14, Post-Trial Br. at 13-14.* | Third party releases in § 8.8.7 are consensual as they only apply to Creditors voting to accept the Plan.  These consensual releases are narrowly tailored to protect only those parties who made substantial contributions to the reorganization or have indemnification rights against the Debtors.  *PP Main Pre-Trial Br. at 94-95; PP Main Post-Trial Br. at 72-74; PP Main Post-Trial Response Br. at 62.*

The Plan will be amended to add procedures allowing for direct, non-asbestos claims against Fresenius that are enjoined by the Successor Claims Injunction to be channeled to Grace and paid in their full allowed amount.  Thus, the release of Fresenius in § 8.8.7, which is the only portion of that provision that applies to entities that did not vote for the Plan, does not prejudice any party.  *PP Main Post-Trial Response Br. at 62.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | ~~The release in § 8.8.7 violates § 524(e). *Seaton/OneBeacon Post-Trial Br. at 20-24, Post-Trial Response Br. at 2-11.*~~ | ~~§ 524(e) does not preclude third party releases and no court in the Third Circuit has held otherwise. The release meets the standard required by the Third Circuit. *PP Main Post-Trial Br. at 69.*~~ |
| | The § 8.8.7 releases of certain non-debtors, such as Fresenius and Sealed Air, are "illegal on [their] face." ~~*Seaton OneBeacon Objection at ¶¶ 83-84, Pre-Trial Br. at 38; GEICO/Republic Phase I Pre-Trial Br. at 36*~~; *AXA Belgium Objection at 4-5.* | The releases in § 8.8.7 are required by the Fresenius Settlement Order, which is *res judicata*, and a final order as to all parties. *See PP Main Pre-Trial Br. at 82-85; PP Main Post-Trial Br. at 72-74; PP Main Post-Trial Response Br. at 62.*<br><br>Moreover, Fresenius is contributing substantial funds to the reorganization, and the release in the second-to-last sentence of 8.8.7, which is the only non-consensual release in that section, does not apply to Sealed Air. *PP Main Pre-Trial Br. at 82-88.* Finally, the Plan Proponents will amend the Plan as explained above. |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | § 8.7.1 purports to freeze the injunctions in place -- such as the preliminary injunction in the *Chakarian* case preventing Libby Claimants from pursuing claims against BNSF.  Thus, the Plan usurps the Court's function to modify or dissolve preliminary injunctions and is accordingly unconfirmable.  *Libby Objection at 84-85, Pre-Trial Br. at 99-100.* | The Plan Proponents disagree that the Plan works in this way and dispute the objection. |
| The releases provided for by § 8.8.8 release claims of the Debtors against their own affiliates and representatives.  They are appropriate and necessary under the facts and circumstances of this case and comply with Third Circuit law.  Pursuant to the Debtors' business judgment, the Debtor Releases in § 8.8.8 represent a valid settlement of claims pursuant to § 1123(b)(3)(A).  *PP Main Pre-Trial Br. at 96; PP Main Post-Trial Br. at 70-71.* | The releases in § 8.8.8 are too broad, violate § 524(g), and fail to meet the requirements for such releases.  *Libby Objection at 79-84, Pre-Trial Br. at. 92-99; AMH Objection at 23-25, Pre-Trial Br. at 31-33;* ~~*Seaton/OneBeacon Objection at ¶¶ 81-85, Pre-Trial Br. at 37-39.*~~ | The releases in § 8.8.8. represent a valid settlement of claims of the Debtors against the Released Parties pursuant to § 1123(b)(3)(A).  These releases are necessary to Debtors' reorganization efforts, and a substantial financial contribution is not required to provide such releases.  *PP Main Pre-Trial Br. at 96; PP Main Post-Trial Br. at 71.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| ~~The release in § 7.13 is permitted. It is required by both the Fresenius Settlement Agreement and the Sealed Air Settlement Agreement, which are *res judicata*. Section 7.13 is necessary to both Settlement Agreements, without which the Plan would not be possible. *PP Main Post-Trial Response Br. at 61-62.*~~ | ~~The release in § 7.13 is improper. *Seaton/OneBeacon Post-Trial Br. at 20-24.*~~ <br><br> ~~The release in § 7.13 bars CNA from asserting indemnification claims against Sealed Air. *CNA Post-Trial Br. at 34-38.*~~ | ~~The release in § 7.13 is a necessary condition to the Fresenius and Sealed Air Settlement Agreements, which are *res judicata*, and without which the Plan would not be possible. *PP Main Post-Trial Response Br. at 61-62.*~~ <br><br> ~~Nothing in the Plan bars CNA from asserting indemnification claims against Sealed Air based on settlement agreements identified in its briefs to which Sealed Air might be found to be a party. *PP Main Post-Trial Response Br. at 46, 61-63.*~~ |
| (Not Applicable) | Concerned about the alleged conflicts of interest of TAC representatives, CNA recommended that the exculpation provision be clarified to provide that individuals remain liable, *inter alia*, for "bad faith, including bad faith breach of the covenant of good faith and fair dealing owed to Asbestos PI Trust beneficiaries" and "willful misappropriation." *CNA Objection at 22, Pre-Trial Br. at 38.* | The exculpation clause has been modified to remove the Trustees of the Asbestos PI Trust, the Asbestos PI Trust Advisory Committee, the Trustees of the Asbestos PD Trust, and the Asbestos PD Trust Advisory Committee. *PP Main Post-Trial Br. at 77.* The U.S. Trustee, a former Plan Objector, has consented to this provision as modified. |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| Article 11.9 is a standard exculpation provision providing that certain parties will not incur liability for any act or omission in connection with the confirmation, consummation or administration of the Plan, unless such act or omission rises to the level of "gross negligence or willful misconduct." Article 11.9 is not a mandatory release of liability, but instead establishes the appropriate *standard of liability* with respect to exculpated parties. *PP Main Pre-Trial Br. at 98-99.* | Exculpation provisions are too broad as a general matter and should not apply to various non-debtor third parties. ~~*Seaton OneBeacon Objection at ¶¶ 81-82, Pre-Trial Br. at 37-38*~~; *CNA Objection at 22-23, Pre-Trial Br. at 38; MCC Objection at ¶ 12, Pre-Trial Br. at 12-13, Post-Trial Br. at 13-14;* ~~*GEICO/Republic Phase I Pre-Trial Br. at 35-37*~~; *AXA Belgium Objection at 4-5, AXA Belgium Joinder to Fireman's Pre-Trial Br. at 3; Libby Plan Obj. at 79, Pre-Trial Trial Br. at 92-93; AMH Pre-Trial Trial Br. at 31-32.* | Exculpation of non-debtor third parties is "commonplace" where a Plan does not purport to release claims for willful misconduct or acts taken in bad faith. Section 11.9 merely states the standard of liability to be applied to claims against the Exculpated Parties, and it is therefore appropriate. *PP Main Pre-Trial Br. at 99-102; PP Main Post-Trial Br. at 76-77.*<br><br>The exculpation clause has been modified to remove the Trustees of the Asbestos PI Trust, the Asbestos PI Trust Advisory Committee, the Trustees of the Asbestos PD Trust, and the Asbestos PD Trust Advisory Committee. *PP Main Post-Trial Br. at 77.* |
|  | § 11.9 of the Plan is too broad with respect to releases of the Trustees and the TAC and, in conjunction with their conflicts of interest, violates § 1129(a)(3) of the Code. *Federal Pre-Trial Br. at ¶¶ 52-53; CNA Objection at 22.* | The exculpation clause has been modified to remove the Trustees of the Asbestos PI Trust, the Asbestos PI Trust Advisory Committee, the Trustees of the Asbestos PD Trust, and the Asbestos PD Trust Advisory Committee. *PP Main Post-Trial Br. at 77.* |
|  | ~~Exculpation clause impermissibly goes beyond activities related to the prosecution of the bankruptcy case. *Seaton/OneBeacon Objection at 38.*~~ | ~~§ 11.9 merely states the appropriate standard of liability under Delaware law. *PP Main Pre-Trial Br. at 104-105; PP Main Post-Trial Br. at 76-77.*~~ |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | § 11.9 "immunizes" parties from liability and must satisfy the factors considered in *In re Genesis Health Ventures*.  *MCC Post-Trial Br. at 13-14.* | § 11.9 does not immunize parties from liability; rather, it states the appropriate standard of conduct.  *In re Genesis Health Ventures* is inapplicable to this case because the provision at issue in that case actually purported to release certain claims, whereas the provision in § 11.9 merely states a standard of liability to be applied.  *PP Main Post-Trial Response Br. at 63.* |
| ~~**12.  Successor Claims Injunction under § 105(a).**  A court may issue injunctive relief under Section 105(a) where unusual circumstances exist, such as in cases involving the settlement of massive liabilities against debtors and co-liable parties, and where the injunction is fair and necessary to the plan of reorganization.~~ | | |
| ~~The Successor Claims Injunction is permitted under § 105(a) because it is warranted by the unusual circumstances of Debtors' Chapter 11 Cases, necessary to the Debtors' reorganization, and fair to all parties in interest.  *PP Main Pre-Trial Br. at 89-94; PP Main Post-Trial Br. at 47-62;*~~ | ~~The Court does not have subject matter jurisdiction to issue the Successor Claims Injunction.  *Seaton/OneBeacon Objection ¶¶ 37-47, Pre-Trial Br. at 20-23; CNA Post-Trial Br. at 37-38.*~~ | ~~The Successor Claims Injunction is well within the Court's jurisdiction due to the Debtors' broad pre-bankruptcy, contractual indemnification obligations.  *PP Main Pre-Trial Br. at 89-91; PP Main Post-Trial Br. at 48-53; PP Main Post-Trial Response Brief at 47-49.*~~ |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| *PP Main Response Brief at 45-61.* | The Court does not have the authority pursuant to § 105(a) to issue the Successor Claims Injunction. *Seaton/OneBeacon Objection at ¶¶ 48-52, Pre-Trial Br. at 23-25, Post-Trial Br. at 21-26, Post-Trial Response Br. at 4-10; CNA Pre-Trial Br. at 15, Post-Trial Br. at 34-38.* | In light of the unusual circumstances of this case, and because the Successor Claims Injunction is fair and necessary to the Debtors' reorganization, the Court has authority under § 105(a) to issue the Successor Claims Injunction. *PP Main Pre-Trial Br. at 89-93; PP Main Post-Trial Br. at 53-58; PP Main Response Br. at 49-51.* |
| | The Successor Claims Injunction enjoins claims without providing Seaton or CNA with compensation. *CNA Post-Trial Br. at 38; Seaton/OneBeacon Post-Trial Response Br. at 11.* | Plan compensates claimants affected by the Successor Claims Injunction. Enjoined claims will be Class 9, General Unsecured Claims, and holders of such allowed claims will receive payment in full plus post-petition interest. *PP Main Post-Trial Br. at 57.*<br><br>Many of the claims alleged to be enjoined by the Successor Claims Injunction are not in fact enjoined, or will not be enjoined following the Plan Proponents' amendment to the Plan. *PP Main Post-Trial Br. at 46-47.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | The Successor Claims Injunction circumvents the more specific requirements of § 524(g). *Seaton/OneBeacon Pre-Trial Br. at 24, Post-Trial Br. at 24-25.* | § 524(g) does not apply to the claims enjoined by the Successor Claims Injunction because they are not asbestos claims. *PP Main Post-Trial Br. at 58.* |
| | The Successor Claims Injunction (and various releases in the Plan) violate Seaton/OneBeacon's Fifth Amendment rights by depriving Seaton of its property without due process. *Seaton/OneBeacon Pre-Trial Br. at 25, Post-Trial Br. at 24, 26.* | Seaton/OneBeacon provides no argument or case law to support this position. *PP Main Post-Trial Response Br. at 57, n.220.* |
| | Successor Claims Injunction provides a discharge of liabilities broader than that permitted by 11 U.S.C. § 1141(a). *Kaneb Post-Trial Br. at 7-12.* | Successor Claims Injunction is sought pursuant to the Court's authority under § 105, and nothing in § 1141(a) precludes the Court from using its authority under § 105(a) to bind creditors of third parties whose claims will affect the bankruptcy estate. *PP Main Post-Trial Response Br. at 60.* |
| | Indemnity claims against the Debtors for cost of environmental remediation under the 1992 Merger Agreement may not be discharged because the Merger Agreement is an executory contract. *Kaneb Trial Br. at 4-6.* | The Merger Agreement is not executory. There were no material obligations remaining to be performed by each party as of the petition date. *PP Main Pre-Trial Br. at 148.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | ~~The claims enjoined by the Successor Claims Injunction are overly broad because they prevent Kaneb from asserting defensive rights.~~ *~~Kaneb Objection at 5, Pre-Trial Br. at 4-5, Post-Trial Br. at 13-14.~~* | ~~The Plan does not prevent Kaneb's assertion of defensive rights.~~ *~~PP Main Pre-Trial Br. at 148; PP Main Post-Trial Response Br. at 61.~~* |
| | ~~Kaneb should be permitted to pursue the debtors nominally in order to obtain access to Debtors' liability insurance coverage.~~ *~~Kaneb Post-Trial Br. at 17.~~* | ~~Such suit would harm the Debtors by allowing Kaneb to collect against Grace's insurance, which would otherwise be available to pay other claims.~~ *~~PP Main Post-Trial Response Br. at 60-61.~~* <br><br> ~~Furthermore, Kaneb has already sought and been denied such relief by this Court.~~ *~~See Order Denying Kaneb's Motions For Orders Modifying the Automatic Stay Regarding Otis Pipeline and Macon, GA, Sites~~* ~~(Dkt. 22373) (entered 07/09/2009).~~ |
| | ~~The Plan Proponents have not met their burden of proof to extend protection of the Successor Claims Injunction to each of the Non-Debtor Affiliates.~~ *~~Kaneb Post-Trial Br. at 12.~~* | ~~Kaneb did not raise this objection until their post-trial brief, filed November 2.  Because Kaneb has repeatedly failed to raise this objection, it must be overruled as untimely and prejudicial.~~ *~~PP Main Post-Trial Response Br. at 58.~~* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | The Court does not have subject matter jurisdiction to enjoin Kaneb's claims against Settled Asbestos Insurance Companies. *Kaneb Pre-Trial Br. at 7, Post-Trial Br. at 15, Post-Trial Response Br. at 1-4.* | Kaneb has provided no evidence to support its claim that proceeds of the relevant insurance policies would not be payable to the debtors, but instead, to a third party and are thus not assets of the estate. It cannot be assumed that any proceeds of the Debtors' insurance policies are not assets of the estate. **Furthermore, Settled Asbestos Insurance Companies are only protected to the extent of policies listed as a result of Court-approved settlements or Debtors' contractual indemnification obligations.** *PP Main Post-Trial Response Br. at 59.* |
| | The Fresenius and Sealed Air Settlement Agreements are not *res judicata*, and thus the Successor Claims Injunction is not *res judicata. Seaton/OneBeacon Post-Trial Br. at 25; CNA Post-Trial Br. at 38.* | Both the Fresenius and Sealed Air Settlement Orders are final orders of this Court that are binding in all respects. The Successor Claims Injunction is a precondition of both Settlement Agreements and enjoins claims as required by those agreements. *PP Main Post-Trial Br. at 59-62; PP Main Post-Trial Response Br. at 52-57.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | The Successor Claims Injunction is not "fair" to CNA, because even if its claims enjoined against Sealed Air are Class 9 Claims against the Debtor, they are potentially subject to disallowance under section 502(e) if they remain contingent and unliquidated as of the date of confirmation of the Plan. *CNA Post-Trial Response Br. at 5-6* | **This is a new argument asserted for the first time in CNA's Post-Trial Response Brief. This argument will be addressed at closing arguments.** |
| | CNA alleges that there is no evidence that Sealed Air would not have settled without protection from non-asbestos claims. *CNA Post-Trial Response Br. at 6.* | The Sealed Air Settled Agreement is expressly conditioned on receiving the "full benefit of an injunction under §§ 524(g) and 105(a) of the Bankruptcy Code." *PP Main Post-Trial Br. at 56.* |
| | The Court lacks jurisdiction to issue the Successor Claims Injunction as to Fresenius and Sealed Air because these injunctions are not limited to claims covered by the pre-petition indemnities that Grace gave those parties, and because there is no language indicating that these indemnities are "automatically" triggered by a claim against Fresenius or Sealed Air. *CNA Post-Trial Response Br. at 4.* | The Successor Claims Injunction is well within the Court's jurisdiction due to the Debtors' broad pre-bankruptcy, contractual indemnification obligations. *PP Main Pre-Trial Br. at 89-91; PP Main Post-Trial Br. at 48-53; PP Main Post-Trial Response Brief at 47-49; See 01/05/2010 Tr. at 315-319.* |
| | *Res judicata* argument is "bootstrapping" or "sleight of hand." *CNA Post-Trial Response Br. at 4; Kaneb Post-Trial Response Br. at 4.* | The Debtors have contested this objection. |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | ~~The massive scale of Grace's asbestos liabilities does not justify the issuance of a § 105(a) injunction covering Grace's non-asbestos liabilities.  *Kaneb Post-Trial Response Br. at 5; Seaton/OneBeacon Post-Trial Response Br. at 6-7.*~~ | **~~This is a new argument asserted for the first time in Kaneb's and Seaton/OneBeacon's Post-Trial Response Brief.  This argument will be addressed at closing arguments.~~** |
| **13.  Impairment: § 1124(1).** | | |
| Class 9 creditors are unimpaired because they are being paid 100% of their claims plus interest at the appropriate rate.  *PP Lender Pre-Trial Br. at 18-41; Grace's Lender Post-Trial Br. at 18-27; Grace's Lender Post-Trial Response Br. at 1-6; PP Supp. Br. on Morgan Stanley at 1-4; PP Main Pre-Trial Br. at. 107-108.* | Because Grace's shareholders will retain value following Grace's full payment and satisfaction of its previously disputed and unliquidated asbestos liabilities (the amount of which shall become substantially fixed pursuant to the Plan), as well as Grace's other liabilities, Grace is a solvent debtor and Grace's lenders are presumptively entitled to interest at the contract default rate provided for in the Credit Agreements.  *Lender/Committee Pre-Trial Br. at 41, Post-Trial Br. at 13-22, Post-Trial Response Br. at 10-15; ~~Morgan Stanley Post-Trial Br. at 11-13, Post-Trial Response Br. at 9-11.~~*  Grace is also solvent based on its market capitalization and the fact that equity retains value under the Plan.  *Lender/Committee Pre-Trial Br. at 41-44, Post-Trial at 22-24, Post-Trial Response Br. at 12; ~~Morgan Stanley 7/17/09 Supp. Br. at 4, Post-Trial Br. at 12, Post-Trial Response Br. at 10.~~* | Grace has not been and cannot be proven solvent because its liabilities are indeterminable without the Plan.  <u>Reorganized</u> Grace's emergence from bankruptcy as a solvent entity only shows the Plan is feasible.  If this was the measure of solvency for a Chapter 11 debtor, the debtor would be solvent in every successful reorganization, and various Code sections would be displaced and rendered meaningless.  *PP Lender Pre-Trial Br. at 12-15, 42-45;  Grace's Lender Post-Trial Br. at 28-33; Grace's Lender Post-Trial Response Br. at 6-15.*<br><br>Grace's market capitalization and the fact that equity will retain value do not show that Grace is solvent.  *PP Lender Pre-Trial Br. at 44-46, 52-54; Grace's Lender Post-Trial Br. at 36-38; Grace's Lender Post-Trial Response Br. at 17-18.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Because Grace is solvent, all unsecured creditors should get the rate of interest that they bargained for in their contract, regardless of whether it is a default or non-default rate.  In order for a class to be unimpaired, every claim in the class must be unimpaired.  Here, all of Class 9 is impaired because the rights of some claimants are altered.  *Committee Objection at 6-8; Morgan Stanley Objection at 11-16, 7/17/09 Supp. Br. at 2, 11-14; Lender/Committee Post-Trial Br. at 11.* | Even where a debtor is solvent, the dicta in *PPIE* can at most be read to require post-petition interest at the federal judgment rate in order to render unsecured creditors unimpaired.  *PP Lender Pre-Trial Br. at 35-41; Grace's Lender Post-Lender Br. at 27; Grace's Lender Post-Trial Response Br. at 3-4.*<br><br>Creditors' rights are not altered, and they are not impaired where the right to receive interest is contingent on the debtor's default and there are no defaults.  *PP Lender Pre-Trial Br. at 19-35; PP Supp. Br. on Morgan Stanley at 4.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Grace does not and cannot challenge the Bank Lenders' right to default interest under applicable state law.  There is simply no federal interest or any Bankruptcy Code provision or caselaw that permits a court to rewrite a contract so as to read valid state law property rights to default interest out of a contract entirely.  Nor do state law property rights vanish in Bankruptcy.  A contrary holding would violate the Supreme Court's mandate in *Butner.  Bank Lenders Objection at ¶¶ 37-38; Lender/Committee Pre-Trial Br. at 32-33, Post-Trial Response Br. at 7-9.* | The Credit Agreements implicitly incorporate and are subject to federal bankruptcy law.  Section 502(b) extinguishes the Lenders' contractual right to default interest and post-maturity interest.  A singular exception for unsecured creditors allows post-petition interest at the federal judgment rate, if, and only if, Grace is solvent.  The Code alters contractual rights that would be enforceable under state law outside of bankruptcy.  This is not a function of the Plan and is not impairment.  *PP Lender Pre-Trial Br. at 15-18, 35-41; Grace's Lender Post-Trial Br. at 25-27; Grace's Lender Post-Trial Response Br. at 3-4.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | The Lenders are impaired because Grace has defaulted and is not paying them interest at the contract default rate under the Plan. *Bank Lenders Objection at ¶¶ 15-39; Lender/Committee Pre-Trial Br. at 19-34, Post-Trial Br. at 9-13.* | The Lenders will be paid 100% of the allowed amount of their claims plus post-petition interest in excess of the contract non-default rate and federal judgment rate. There have been no cognizable defaults that would entitle them to default interest. *PP Lender Pre-Trial Br. at 18-35; Grace's Lender Post-Trial Br. at 18-23; Grace's Lender Post-Trial Response Br. at 1-3.*<br><br>Lenders are not impaired under *PPIE* because the Code and not the Plan dictates that the Lenders are only entitled to interest at the federal judgment rate. *PP Lender Pre-Trial Br. at 35-41; Grace's Lender Post-Trial Br. at 25-27; Grace's Lender Post-Trial Response Br. at 3-4.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | The dispute resolution procedures under § 3.1.9(b)(i)(b), (d), and (e) are not appropriate, and the Plan is ambiguous because it fails to affirmatively state that it will leave the legal, equitable, and contractual rate of creditors unaltered.  Thus, it is unclear whether Class 9 Non-Lender Claimants will be able to receive the full amount of post-petition interest necessary in order for them to be unimpaired.  *Committee Objection at 10-12; Lender/Committee Post-Trial Br. at 41-42.*<br><br>~~The Plan does not assure that a "litigant [challenging the interest rate under § 3.1.9(d)(iii)] can recover its attorneys' fees and costs to the extent its contract so provides." Morgan Stanley Post-Trial Br. at 6.~~ | Section 3.1.9(d) is appropriate and assures non-impairment because it allows dissatisfied claimants to challenge the interest rate.  *PP Main Pre-Trial Br. at 114-15.*  Morgan Stanley is the <u>only</u> 'litigant' that chose to challenge the interest rate by the Court-approved deadline, and it is clear they may raise whatever arguments they want.  There is no group of Class 9 Non-Lender Claims suffering from 'ambiguous' procedures.  The Morgan Stanley objection relating to this issue is now settled.  *See* Appendix at 14.  *PP Main Post-Trial Response Br. at 99-103.*<br><br>Moreover, it was the *Committee* that recommended these now-questioned procedures.  *See PP Main Post-Trial Response Br. at 100-101, n.375.* |
| | § 3.1.9(b) should simply state that the Plan leaves unsecured creditors' rights unaltered.  The additional phrase "subject to the preemptory effect of bankruptcy law" does not comport with the language of section 1124(1).  *Lender/Committee Post-Trial Br. at 42-43.* | Plan Proponents added this phrase when amending § 3.1.9(b) in response to the Committee's request for language making it clear Class 9 creditors' rights were unaltered and the Claims were unimpaired.  The phrase comports with § 1124(1).  *PPIE* makes clear that statutory impairment is not impairment under § 1124(1), and the clarifying language incorporates *PPIE's* holding.  *PP Main Post-Trial Response Br. at 101-02.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | The Lenders ~~and Morgan Stanley~~ are impaired under § 1124(1) because they will not receive interest until a Final Order has been issued, rather than on the Plan's Effective Date. *Lender/Committee Post-Trial Br. at 11-12; ~~Morgan Stanley 7/17/09 Supp. Br. at 10-11, Post-Trial Br. at 10-13.~~* | § 1124(1) does not require payment of interest on the Effective Date where entitlement to interest and the rate of interest is disputed. The Code expressly calls for litigation of the parties' claim to interest, and until a Final Order establishes a right to interest and determines the rate, the parties are not impaired by non-payment. The authority cited does not show otherwise. *PP Lender Post-Trial Response Br. at 4-6; ~~see also PP Supp. Br. on Morgan Stanley at 2-4~~*. |
| | ~~Rather than paying interest on the Effective Date, the Plan provides for a 'cash-out' that resuscitates § 1124(3) and the abrogated holding in New Valley. Morgan Stanley 7/17/09 Supp. Br. at 8-11, Post-Trial Response Br. at 1-2.~~ | ~~The fact that Morgan Stanley will not receive interest on the Effective Date has nothing to do with § 1124(1). PP Supp. Br. on Morgan Stanley at 1-5.~~<br><br>~~Plan does not resuscitate New Valley, which held that a solvent debtor need not pay postpetition interest at all. By election, Morgan Stanley will receive post-petition interest at the rate the Court deems appropriate. Under § 1124(1), this receipt of post-petition interest renders them unimpaired. Id. at 3-4.~~ |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | AMH's claim is impaired because Class 7A Claimants are not entitled to recover interest and because AMH may not pursue its claim in its chosen forum. *AMH Objection at 19-20, Pre-Trial Br. at 28-30, Post-Trial Br. at 58-59.* | AMH is not impaired because this Court will determine whether its claims are allowable and whether interest is appropriate. By filing a proof of claim with the Bankruptcy Court, AMH has consented to the Court's jurisdiction to make this determination. Nor is AMH impaired because the Plan does not specify a rate of post-petition interest. If the Court determines it has an allowed claim and interest is appropriate, it will receive post-petition interest. *PP Main Pre-Trial Br. at 107-08.* |
| | ~~Whatever rate of post-petition interest the Court determines Morgan Stanley should receive, it may not be zero under § 1124(1) *Morgan Stanley 7/17/09 Supp. Br. at 13-14, Post-Trial Br. at 10, n.5.*~~ | ~~Plan Proponents have not argued that Morgan Stanley should not receive any post-petition interest. It is up to the Court to decide how much, if any, post-petition interest Morgan Stanley should receive. Plan Proponents note that there must be actual defaults to the extent the rate is a default rate, and the Plan Proponents reserve their right to argue that the rate in the contract at issue is indeed a default rate. *PP's Supp. Br. on Morgan Stanley at 4.*~~ |
| **14. Voting: § 1129(a)(8).** Each class has accepted the Plan or is not impaired under the Plan | | |
| *See PP Main Pre-Trial Br. at 105-08.* | *See Miscellaneous Objections* at section 32 of chart. | |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **15. Fair and Equitable: § 1129(b).**  Plan must not discriminate unfairly and be fair and equitable. | | |
| (Not applicable) | Plan violates the "fair and equitable test" and "absolute priority rule" of § 1129(b) because Equity Interests are retained while Class 9 claims are not paid in full.  Payment in full requires interest at the contract default rate for the Lenders ~~and the contract rate for Morgan Stanley~~.  *Committee Objection at 14-18; Bank Lenders Objection at ¶¶ 52-55; Lender/Committee Pre-Trial Br. at 49-68, 69-72; ~~Morgan Stanley Objection at ¶¶ 17-20, 7/17/09 Supplemental Br. at 11-12, Post-Trial Br. at 13-14;~~ Lender/Committee Post Trial Br. at 24-40.* | § 1129(b) is not implicated because Grace's solvency has not been and cannot be established, and none of the unsecured creditors are impaired.  *PP Lender Pre-Trial Br. at 42-45; Grace's Lender Post-Trial Br. at 24, 27-38; Grace's Lender Post-Trial Response Br. at 18.*  <br><br>§ 1129(b) is satisfied because the interest rate set forth in the Plan is more than fair and equitable.  There is no legal entitlement to post-petition interest under the absolute priority rule.  *PP Lender Pre-Trial Br. at 47-53; Grace's Lender Post-Trial Br. at ¶¶ 77-92; Grace's Lender Post-Trial Response Br. at 18-32.* |
| | Plan is not fair and equitable with respect to Montana because it provides for a distribution to Montana that violates the Montana Constitution.  *Montana Objection at 19-20, Pre-Trial Br. at 35, Post-Trial Br. at 9, Post-Trial Response Br. at 7.* | The Asbestos PI Trust will distribute cash, not stock, and nothing in the Plan calls for a distribution of stock to any Class 6 Claimant.  *See 01/04/2010 Tr. at 294.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Plan does not provide fair and equitable treatment to MCC in accordance with § 1129(b)(2)(B)(ii). *MCC Pre-Trial Br. at 9-10, Post-Trial Br. at 11-12.* | § 1129(b) only applies to impaired creditors whose class does not accept the Plan.  Class 6 has overwhelmingly accepted the Plan. Thus, analysis under § 1129(b) is not implicated.  *PP Main Pre-Trial Br. at 105-06; PP Main Post-Trial Response Br. at 78.* |
| | While the Bank Lenders' post-petition interest under § 502(b)(2) may be disallowed as part of the "allowed pre-petition amount," this has not eliminated -- and has nothing to do with -- the Bank Lenders' entitlement to post-petition interest, which is preserved under § 1129(b). *Bank Lender Objection at ¶¶ 25-30; Lender/Committee Pre-Trial Br. at 49-67, 69-72.* <br><br> Under the fair and equitable test of § 1129(b), the equities warrant an award of default interest for the the Bank Lenders. *Lender/GUCs Pre-Trial Br. at ¶¶ 109-141, Post-Trial Br. at 24-40, Post-Trial Response Br. at 15-24.* | Under the circumstances of this case, after engaging in a true balancing of the equities, the rate of interest the Lenders will receive under the Plan is fair and equitable.  If anything, they are entitled to less.  *PP Lender Pre-Trial Br. at 3-12, 48-51; Grace's Lender Post-Trial Br. at 5-18, 38-43; Grace's Lender Post-Trial Response Br. at 28-31.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **16. Absolute Priority Rule: § 1129(b).** | | |
| (Not applicable) | Plan violates the "absolute priority rule" and is not "fair and equitable" to Class 6 claimants as required by § 1129(b). *Montana Objection at 15-19, Pre-Trial Br. at 21-26, Post-Trial Br. at 5-6, Post-Trial Response Br. at 3-4; MCC Objection at ¶ 10, Pre-Trial Br. at. 9-10; Crown Objection at 19.* | Each class of interests has either voted to accept the Plan or will not be impaired under the Plan, and thus, the Plan does not implicate the absolute priority rule, § 1129(b). *PP Main Pre-Trial Br. at 105-06; PP Main Post-Trial Br. at 89; PP Main Post-Trial Response Br. at 78; Reply to Crown at 17.* |
| | Because the general unsecured creditors are receiving payment in full, and equity holders are retaining their interests, the Plan violates the absolute priority rule if any class votes to reject it. *BNSF Objection at 15-16, Pre-Trial Br. at 27, Post-Trial Br. at 10.* | BNSF claims are classified in Class 6. Class 6 has voted overwhelmingly to accept the Plan. § 1129(b) only applies to impaired creditors whose class rejects the Plan. Thus, analysis under § 1129(b) is not implicated. *PP Main Pre-Trial Br. at 105-06; PP Main Post-Trial Response Br. at 78.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Because equity retains value, the absolute priority rule requires that the Lenders receive default interest under *Dow Corning* and *Coram Healthcare*. *Lender/Committee Post-Trial Response Br. at 24-26.* | In *Dow Corning*, the court only recognized a <u>presumption</u> in favor of default interest <u>if</u> the debtor is solvent.  It is the only case to recognize such a presumption, and it held that default interest is not warranted if it would be inequitable.  *PP Lender Pre-Trial Br. at 54-57.*<br><br>*Coram Healthcare* recognized that post-petition interest may be warranted in some circumstances.  But instead of recognizing any presumption of default interest, it held that "the specific facts of each case will determine what rate interest is fair and equitable."  *Grace's Post-Trial Response Br. on Lender Issues at 19.* |
| | Equity may not retain any value <u>unless</u> Grace is found to be solvent.  Grace has cited no authority for the proposition that equity may retain value where a debtor is not solvent.   If the Court does not find Grace is solvent, the Plan cannot be confirmed in its current form. *Lender/Committee Post-Trial Response Br. at 13; ~~see also Morgan Stanley Post-Trial Response Br. at 10-11~~.* | The Debtors contest this objection. |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **17.  Adequate Means for Implementation: § 1123(a)(5).** | | |
| *PP Main Pre-Trial Br. at 112.* | See objections re satisfaction of § 524(g) requirements in section 29 herein. | See responses to objections re satisfaction of § 524(g) requirements in section 27 herein. |
| ~~**18.  Disclosure of Insiders: § 1129(a)(5).**~~ | | |
| ~~Plan Supplement dated May 8, 2009, as amended on May 15, 2009 [Dkt. 21706], discloses all such information. *PP Main Pre-Trial Br. at 112-113;  PP Main Post-Trial Response Br. at 77.*~~ | ~~TAC Members have inappropriate conflicts of interest, which violates § 1129(a)(5) because their appointment is not "consistent with the interest of creditors and equity security holders and with public policy." *Seaton/OneBeacon Pre-Trial Br. at 31; GEICO/Republic Pre-Trial Br. at 5.*~~ | ~~§ 1129(a)(5) is not violated because the TAC is appropriate.  This argument has been expressly rejected by courts.  *See* TAC Objection section of the Chart and *PP Main Post-Trial Response Br. at 77.*~~ |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **19. Compliance with Title 11: § 1129(a)(1)**. | | |
| *PP Main Pre-Trial Br. at 115-116; PP Main Post-Trial Br. at 98-99.* | Various Objectors claim the Plan violates § 1129(a)(1) as a result of various violations of other Code provisions. *Anderson Memorial Objection at 27, Pre-Trial Br. at 36; Bank Lender Objection at 7; CNA Objection at 37, Pre-Trial Br. at 36-38, Post-Trial Br. at 32-34; GEICO/Republic Phase I Pre-Trial Br. at 7; Lender/Committee Pre-Trial Br. at 19, Post-Trial Br. at 43-44; Montana Objection at 7-15, Pre-Trial Br. at 11-19; ~~Seaton/One Beacon Post-Trial Response Br. at 23-24~~*. | Objectors use § 1129(a)(1) as a 'catch all' provision to object to the Plan but have presented no evidence to suggest that the Plan violates § 1129(a)(1). Because the Plan complies with all applicable provisions of this title, any objections on this ground should be overruled, and the Court should find that this provision has been satisfied. *PP Main Post-Trial Br. at 98-99.*[4] |

---

[4]    Individual allegations that the Plan violates 1129(a)(1) are noted in the section of the Chart dealing with underlying Code provision on which the alleged violation of § 1129(a)(1) is based.  In each case, the underlying Code requirement is satisfied, disposing of the alleged violation of 1129(a)(1).

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **20. Trust Requirements: § 524(g)(2)(B)(i).** | | |
| The Asbestos PI and PD Trusts will be implemented in connection with the Asbestos PI and PD Injunctions. *PP Main Pre-Trial Br. at 121-23; PP Main Post-Trial Br. at 107-08.* | The Asbestos PD Trust is not a genuine trust for members of Class 7A.  It is simply a conduit for payment of funds by the Reorganized Debtors.  The structure of the Plan and Trust actually make it harder for claimants to recover than if Reorganized Grace assumed liability for unresolved PD claims. *AMH Objection at 18-19, Pre-Trial Br. at 26, Post-Trial Br. at 56-57.* | The Asbestos PD Trust will be properly formed under Delaware law, and will provide procedures for handling and paying future claims in the same manner as present claims in accordance with § 524(g). *PP Main Pre-Trial Br. at 116-17.* |
| | Montana's and Canada's claims for contribution and indemnification are not subject to an injunction under § 524(g) because they are of a different nature than asbestos claims.  Alternatively, § 524(g) only enjoins "claims" or "demands," and Montana's and Canada's requests for contribution and indemnification are not yet "claims" or "demands." *Montana Objection at 7-15, Pre-Trial Br. at 11-19, Post-Trial Br. at 3-5, Post-Trial Response Br. at 2-3; Crown Obj. at 17-18.* | This argument disregards the Bankruptcy Code's definition of "demand" under the Bankruptcy Code.  When an amount is presently due, a "claim" necessarily exists.  And a "demand," by definition, is a right for payment that does not qualify as a "claim."  Thus, Montana's purported causes of action are clearly "demands" under § 524(g). *PP Main Pre-Trial Br. at 124-26, PP Pre-Trial Feasibility Br. at 8, PP Main Post-Trial Response Br. at 31; Reply to Crown at 13.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | § 524(g) should only apply when the company cannot continue to pay asbestos-related claims.  Class 7A claims, which are supposedly "unimpaired" and will receive 100% payment, should not be channeled to the PD Trust.  This is further evidenced by the uncertainty as to whether there will be future PD claims.  Although the Debtors offered expert testimony that they are likely to be subject to substantial future property damage demands, the Plan itself presumes that there will be **no** allowed PD Claims or future demands.  *AMH Objection at 18-19; Pre-Trial Br. at 26-27, Post-Trial Br. at 57-58.* | Channeling PD Claims to the PD Trust is appropriate.  Contrary to AMH's assertion, the Plan does <u>not</u> presume that there will be no allowed PD Claims.  While the Debtors believe future PD Claims will lack merit, the Debtors expect substantial future PD demands to be asserted.  *PP Main Post-Trial Br. at 10-15, 114-117; Post-Trial Response Br. at 19-23, 78-79.*  Accordingly, the Plan contains detailed mechanisms for the determination of whether such claims will be allowed.  *See PP Main Pre-Trial Br. at 116-17; PP Main Post-Trial Response Br. at 79.* |

| 21.  Funding by Securities and Future Obligations: § 524(g)(2)(B)(i)(II). | | |
|---|---|---|
| Asbestos PI and PD Trusts will be funded with securities as defined in the Bankruptcy Code.  *PP Main Pre-Trial Br. at 118-19; PP Main Post-Trial Br. at 110-11.* | Because the Asbestos PI Trust will not be funded with equity in the Reorganized Debtors, the Plan violates § 524(g)(2)(B)(i)(II).  ~~Seaton/OneBeacon Objection at ¶¶ 68-78, Pre-Trial Br. at 32-37, Post-Trial Response Br. at 21-22~~; CNA Objection at 32-34, Pre-Trial Br. at 27-30, Post-Trial Br. at 23-24; ~~GEICO/Republic Objection at ¶¶ 54-62, Pre-Trial Br. at 29-34.~~ | Warrants used to fund the Asbestos PI Trust are clearly "securities" under § 101(49) of the Code.  Thus, the Plan complies with § 524(g)(2)(B)(i)(I).  *PP Main Pre-Trial Br. at 118-19; PP Main Post-Trial Br. at 110-11; PP Main Post-Trial Response Br. at 80-81.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | ~~§ 524(g)(2)(B)(i)(II) requires that a trust be funded in part by the obligation of the debtor to make future payments "including dividends." For the Asbestos PI Trust to receive dividends, it must first have stock, which it will not have under the Plan. Seaton/OneBeacon Post-Trial Response Br. at 21.~~ | ~~**This is a new argument asserted for the first time in Seaton/OneBeacon's Post-Trial Response Brief. This argument will be addressed at closing arguments.**~~ |
| **22. Trust Ownership in the Debtor: § 524(g)(2)(B)(i)(III).** | | |
| Under specified contingencies, the Asbestos PI and PD Trusts will jointly own 50.1% of the voting shares in the Reorganized Parent. *PP Main Pre-Trial Br. at 121-23, PP Main Post-Trial Br. at 112-13.* | The Plan does not satisfy the majority ownership requirement because the Asbestos PI and PD Trust's rights to obtain jointly 50.1% of the Reorganized Debtor's common stock is conditioned on the Reorganized Debtor's default on its deferred payment obligation. By this point, the common stock would be worthless, and § 524(g)'s requirements are not satisfied under such conditions. *CNA Objection at 34, Pre-Trial Br. at 32, Post-Trial Br. at 24-26; ~~Seaton/OneBeacon Objection at ¶ 78-80, Pre-Trial Br. at 37, Post-Trial Response Br. at 21-22; GEICO/Republic Objection at ¶ 63, Pre-Trial Br. at 34.~~* | The Plan complies with § 524(g)(2)(B)(i)(III) by granting the Asbestos PI and PD Trusts the right to majority ownership in the Reorganized Debtors upon any Event of Default. Events of Default are defined broadly to ensure Reorganized Grace's continuing commitment to its funding obligations, and to allow the Trusts, under certain circumstances, to obtain control of the Reorganized Debtors. *PP Main Pre-Trial Br. at 121-23; PP Main Post-Trial Br. at 112-13; PP Main Post-Trial Response Br. at 81-82.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | By having two trusts, the Plan violates the requirement that a trust must own a majority of the securities of one or more of the debtors.  Here, at best, the two trusts share ownership.  ~~Seaton/OneBeacon Objection at ¶ 79, Pre-Trial Br. at 37, Post-Trial Response Br. at 21-22~~; CNA Objection at 34-35, Pre-Trial Br. at 30-32, Post-Trial Br. at 26-27; ~~GEICO/Republic Objection at ¶ 63; Pre-Trial Br. at 34~~. | A two-trust structure is entirely consistent with the plain language and purposes of § 524(g).  *PP Main Pre-Trial Br. at 116-18, PP Main Post-Trial Response Br. at 82-84.*  For this structure to be possible, contingencies providing for shared control of a debtor must satisfy § 524(g).  Moreover, under the rule of construction in 11 U.S.C. § 102(7), "the singular includes the plural."  *PP Main Pre-Trial Br. at 123, PP Main Post-Trial Response Br. at 82-84.* |
| **23.  Future Demands Likely: § 524(g)(2)(B)(ii)(I).** | | |
| Debtors are likely to be subject to substantial future Asbestos PI and PD Demands.  *PP Main Post-Trial Br. at 114-16.* | There is little or no evidence that there will be future Asbestos PD Demands.  ~~Seaton/OneBeacon Objection at ¶ 80, Pre-Trial Br. at 37, Post-Trial Br. at 22~~; ~~GEICO/Republic Objection at ¶ 64, Pre-Trial Br. at 34~~; AMH Pre-Trial Br. at 27. | Dr. Denise Martin testified that the Debtors are likely to be subject to substantial future Asbestos PD Demands.  Dr. Martin's testimony has satisfied the Plan Proponents' burden on this point, and no contrary evidence has been offered.  *PP Main Post-Trial Br. at 117.* |
| **24.  Future Demands Threaten Equitable Claims Treatment: § 524(g)(2)(B)(ii)(III).** | | |
| In light of the scale of Grace's alleged asbestos liabilities, pursuit of Asbestos PI and PD Demands outside the procedures described in the Plan would frustrate the Plan's purpose to deal equitably with such claims.  *PP Main Post-Trial Br. at 117-18.* | If the Debtors' reserve of $37 million for pending and future traditional Asbestos PD Claims is accurate, then the Debtors should have little trouble dealing with such claims outside of the constructs of the Plan.  *AMH Post-Trial Feasibility Br. at 9, n.5.* | Substantial future traditional Asbestos PD Claims subject to similar meritorious defenses create the need for the Plan's procedures for handling these claims.  Uniform procedures under the Plan designed to determine whether such claims have been discharged by the Plan and the Bar Date will allow the Debtors to dispose of meritless |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | | claims without incurring excessive legal fees.  Thus, these procedures will help to assure that the Reorganized Debtors' contributions to the Asbestos PI and PD Trusts will be used to pay claims, not legal fees.  This is the precise objective of § 524(g).  *PP Main Post-Trial Response Br. at 79.* |
| **25.  Present and Future Claims Demands Will be Treated Similarly: § 524(g)(2)(B)(ii)(V).** | | |
| Asbestos PI Trust Agreement, Asbestos PI TDP, and ZAI TDP are specifically designed to ensure that similar present and future claims are treated in substantially the same manner.  *PP Main Pre-Trial Br. at 124; PP Main Post-Trial Br. at 120-25.*  Moreover, the Class 7A PD CMO provides that all pending and future traditional Asbestos PD Claims will be paid in full.  *PP Main Pre-Trial Br. at 124, PP Main Post-Trial Br. at 125-26.* | Timing established by the PI TDP is flawed and violates § 524(g)(2)(B) as the PI Trust may only settle an Indirect PI Trust Claim after the Indirect Claimant has paid the Trust's liability to the Direct Claimant.  This abridges parties' state law rights to contribution.  *Montana Objection at 20-24, Pre-Trial Br. at 28-31, Post-Trial Br. at 8, Post-Trial Response Br. at 6-7; Garlock Sealing Objection at ¶¶ 16-24, Pre-Trial Br. at 18-23; MCC Pre-Trial Br. at 8-9; CNA Pre-Trial Br. at 22-23, Post-Trial Br. at 20; Crown Obj. at 22.* | FIFO payment mechanism applies equally to all Asbestos PI Claims.  Also, the PI TDP provides numerous protections, including the Payment Percentage, to ensure that Asbestos PI Claims receive similar treatment regardless of where they fall in the FIFO queue.  *PP Main Pre-Trial Br. at 70; Reply to Crown at 17.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Plan treats substantially similar present and future claims differently. AMH is prejudiced because it may not litigate claims in its chosen forum. *AMH Objection at 17, Pre-Trial Br. at 25, Post-Trial Br. at 56.* | Plan and Asbestos PD CMO provide that all Class 7A claims will be resolved in the same manner, *i.e.*, pursuant to the Federal Rules of Civil Procedure. Present claims will be resolved by the Bankruptcy Court, as such claimants have submitted to Bankruptcy Court jurisdiction. Any Class 7A future claims will be resolved in a different forum but using the same rules. Such treatment does not constitute discrimination against AMH under § 1123(a)(4) and does not violate § 524(g). *PP Main Pre-Trial Br. at 109-10.* |
| | Abrogation of Indirect Claimants' rights to bring contribution claims as soon as they are sued violates § 524(g)(2)(B)(ii)(V). *Garlock Objection at 8-11.* | Holders of Indirect PI Trust Claims may pursue claims for indemnification or contribution against the Asbestos PI Trust. These claims will be treated the same as other Class 6 Claims. Thus, the Plan does not discriminate against Indirect PI Trust Claims. *PP Main Pre-Trial Br. at 66-69.* |
| | ~~There is no judicial oversight or insurer participation to make sure that the requirement to pay present claims and future demands that involve similar claims in substantially the same manner is satisfied. AXA Belgium Objection at 4, Joinder to Fireman's Fund's Pre-Trial Br. at 3.~~ | ~~The features of the Asbestos PI Trust itself and the Trustees' fiduciary duty to apply the Asbestos PI TDP fairly provide reasonable assurance that the Asbestos PI Trust shall value, and be in a financial position to pay, Asbestos PI Claims and Demands in substantially the same manner. PP Main Post-Trial Br. at 120-122.~~ |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **26.  Third Party Protection: § 524(g)(4)(A)(ii).** | | |
| The extension of the Asbestos PI and PD Channeling Injunctions to Fresenius, Sealed Air, and the other Asbestos Protected Parties is permitted by § 524(g).  *PP Main Post-Trial Br. at 126-138.* | § 524(g) cannot be used to enjoin Seaton/OneBeacon's contractual indemnification claims against Fresenius.  *Seaton/OneBeacon Objection at 20-22, Pre-Trial Br. at 23-24, Post-Trial Br. at 24-26, Post-Trial Response Br. at 12-14.* | Fresenius Settlement Order requires that Fresenius receive full protection under § 524(g), and this order is *res judicata* to all parties-in-interest and cannot be attacked at this time.  *PP Main Post-Trial Br. at 131-33; PP Main Post-Trial Response Br. at 84-85.*  Also, contrary to Seaton/OneBeacon's assertions, Fresenius' alleged liability under settlement agreements with Seaton/OneBeacon clearly arises from its "ownership of a financial interest in the debtor."  Any alleged asbestos liability of Fresenius arose from the operations of Grace-Conn., the only Grace entity that ever had asbestos-related operations.  Moreover, the indemnity agreements under which Fresenius is allegedly liable to Seaton and OneBeacon settled insurance policies covering periods before Fresenius was incorporated.  *PP Main Post-Trial Br. at 133-36; PP Main Post-Trial Response Br. at 84-86.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **27.  Future Claimants Representative Required: § 524(g)(4)(B)(i).** | | |
| David Austern has been appointed as the Asbestos PI FCR, and the Honorable Judge Alexander Sanders has been appointed as the Asbestos PD FCR.  *PP Main Post-Trial Br. at 138-39.* | No FCR has been appointed for the purpose of representing parties that will assert demands for contribution and indemnification.  To remedy this problem, the Court should appoint Garlock as the representative for the class of future holders of contribution demands.  *Garlock Post-Trial Response Br. at 2-8.* | David Austern, as the Asbestos PI FCR, represents all holders of future asbestos personal injury claims against the Debtors in these Chapter 11 Cases.  *See 01/05/2010 Tr. at 102-105.* |
| **28.  Injunction of Future Demands is Fair and Equitable: § 524(g)(4)(B)(ii).** | | |
| Identifying the Debtors and the other Asbestos Protected Parties in the Asbestos PI and PD Channeling Injunctions is fair and equitable because the Asbestos Protected Parties will contribute substantial value to the Asbestos PI Trust.  *PP Main Pre-Trial Br. at 127-28, 131, PP Main Post-Trial Br. at 139-44.* | Asbestos PI Channeling Injunction is not "fair and equitable" as required by § 524(g)(4)(B)(ii) because "Plan is an overt attempt to transfer 100% of Grace's asbestos liability to defendants surviving in the tort system," Garlock's anticipated contribution claims against the Asbestos PI Trust will be "valueless" due to plaintiffs' "conceal and defer" strategy, and Garlock will receive "no benefit" from the Asbestos PI Trust.  *Garlock Pre-Trial Br. at 21-23,Post-Trial Br. at 12-28, Post-Trial Response Br. at 14-16.* | Garlock's proven ability to obtain satisfactory contribution from other asbestos personal injury trusts, and the evidence that the Asbestos PI Trust will be similar in this respect, demonstrates that Garlock's objection is meritless.  *PP Main Post-Trial Response Br. at 92-94.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Plan is not fair and equitable under § 524(g)(4)(B)(ii) because the Asbestos Insurance Entity Injunction does not allow the Libby Claimants to pursue Grace's insurers directly for non-products coverage, as to which they do not compete with other claimants. *Libby Objection at 82-84, Pre-Trial Br. at 96-98, Post-Trial Br. at 21-24, Post-Trial Response Br. at 4-6.* | Libby Claimants have no exclusive or "vested" rights in the non-products insurance coverage. They hold no right of direct action against Grace's insurance carriers. And, they are not the only ones holding "non-products claims. *PP Libby Pre-Trial Br. at 54-55; PP Libby Post-Trial Br. at 29-37; PP Libby Post-Trial Response Br. at 16-17.* |
| | Asbestos PI Channeling Injunction is not "fair and equitable" as required by § 524(g)(4)(B)(ii) because it leads to violation of the absolute priority rule, which is incorporated by § 524(g)(4)(B)(ii). *Garlock Pre-Trial Br. at 8-18, Post-Trial Br. at 6-11, Post-Trial Response Br. at 9-10.*<br><br>Alternatively, Grace's contribution to the PI Trust is not sufficiently substantial to merit enjoining claims against Grace. *Garlock Post-Trial Response Br. at 10-13.* | The standard to be applied under § 524(g)(4)(B)(ii) is whether, in light of the substantial contributions to be made to the Trust by or on behalf of the protected parties, the injunction is fair and equitable with respect to persons that might subsequently assert demands. This standard does not incorporate an absolute priority rule. The Asbestos PI Channeling Injunction is "fair and equitable" because the substantial contributions to the Plan by or on behalf of the Asbestos Protected Parties are sufficient to merit enjoining such claims. *PP Main Pre-Trial Br. at 128-131; PP Main Post-Trial Br. at 142; PP Main Post-Trial Response Br. at 78, 91.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| | Enjoining third-party actions against pre-petition Settled Insurers and granting the Asbestos PI Trust the authority to settle any claims against the insurers is not "fair and equitable" under § 524(g)(4)(B) because the provision requires the injunction to be tied to value contributed, and pre-petition Settled Insurers are contributing nothing to the Plan. *Libby Objection at 81-82, Pre-Trial Br. at 95-96.* | § 524(g)(4)(B) requires that benefits be provided to the trust "on behalf of" any third party receiving protection under § 524(g). Grace will contribute substantial value on behalf of the pre-petition Settled Insurers, and therefore their inclusion under the § 524(g) injunction is "fair and equitable." *PP Main Pre-Trial Br. at 127-29; PP Main Post-Trial Br. at 142-44.* |
| | Arrowood cannot be protected by the § 524(g) injunction because the Arrowood Settlement commits the Asbestos PI Trust to expend the entire $5.8 million that Arrowood will pay under the settlement to pay lawyers to defend the application of the Asbestos PI Channeling Injunction to Arrowood. *Libby Post-Trial Response Br. at 17-20.* | The Bankruptcy Court approved the Arrowood settlement and found that its terms and conditions, including the provision that the Trust defend the application of the Asbestos PI Channeling Injunction, were reasonable. *See 07/29/2009 Tr. at 135-140; Order Approving the Debtors Entering into the Settlement Agreement with the Royal Parties (Dkt. 22859) (entered 08/19/2009).* |
| | The PI TDP fails to clarify the payment amount and payout percentage that claimants subject to the Trust may expect to receive as well as the procedures under which Indirect PI Trust Claims will be processed, in violation of § 524(g)(4)(B). *Montana Objection at 24-25, Pre-Trial Br. at 33; Crown Obj. at 25.* | The PI TDP is as specific as practically possible at this juncture. *PP Main Pre-Trial Br. at 63-66; Reply to Crown at 19.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **29. Scope of Injunctions: § 524(g); § 1123.** | | |
| (Not applicable) | The Channeling Injunction violates § 524(g)(1)(B) because it fails to cover derivative claims asserted against BNSF. *BNSF Objection at ¶¶ 52-55, Pre-Trial Br. at 25-26, Post-Trial Br. at 7, Post-Trial Response Br. at 3-4.* | Protection of third parties under a § 524(g) injunction is permissive, not mandatory. *See* 11 U.S.C. § 524(g)(a)(ii) ("such injunction ***may*** bar any action directed against a third party . . .") (emphasis added). Thus, the Bankruptcy Code does not require that BNSF be protected by the channeling injunction. *PP Main Post-Trial Br. at 138.* Moreover, BNSF does not fit into any of the four categories in 524(g)(4)(A)(ii), and thus could not be protected by the Channeling Injunctions. *PP Main Post-Trial Response Br. at 87.* |
| | Scope of the Asbestos PI Channeling Injunction is not as broad as is permitted by § 1123(a)(5) and its timing restriction impedes the rights of non-settling insurers who would settle post-confirmation in violation of § 524(g). ~~Federal requests that the timing restriction be eliminated.~~ CNA argues that the Plan should authorize the Court to make the Asbestos PI Channeling Injunction insurer-specific, not policy-specific. *CNA Objection at 23-26, Pre-Trial Br. at 23-27, Post-Trial Br. at 20-22; ~~Federal Objection at ¶¶ 54-61~~.* | § 524(g) does not require plans to provide injunctions in favor of every insurance company that settles <u>after</u> plan confirmation, and the cases cited by the parties do not hold otherwise. *PP Main Pre-Trial Br. at 135; PP Main Post-Trial Br. at 137-38; PP Main Post-Trial Response Br. at 88-90.* The Plan Proponents have also amended the Plan's definition of "Settled Asbestos Insurance Company" to include any Asbestos Insurance Entity that has entered into an Asbestos Insurance Settlement Agreement prior to the eleventh day following the entry of the Confirmation Order. *PP Main Post-Trial Br. at 137-38.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **30. Asbestos Insurance Entity Injunction under § 105(a).** | | |
| Asbestos Insurance Entity Injunction is well within the Court's subject matter jurisdiction, and it is fair, necessary to the reorganization of the Debtors, and warranted by the unusual circumstances of the Debtors' Chapter 11 Cases. Absent the injunction, Asbestos PI Claimants could file direct claims against certain Asbestos Insurance Entities, thereby depleting one of the Asbestos PI Trust's most valuable assets. *PP Main Pre-Trial Br. at 137-138; PP Main Post-Trial Br. at 63-69.* | Injunction violates § 524(g) by protecting third parties from claims outside the permissible four categories of § 524(g)(4)(A)(ii). *Libby Objection at 80, Pre-Trial Br. at 94-95.* | Injunction is specifically limited to claims based upon or arising out of any Asbestos PI Claim against the Debtors or any Asbestos Insurance Rights, and, thus, enjoins claims against insurers only to the extent of insurers' provision of insurance to the debtor or a related party as permitted under § 524(g)(4)(a)(ii)(III). *PP Main Post-Trial Br. at 67-68.* |
| | Injunction violates § 524(g) by protecting parties that are not making a substantial financial contribution to the Plan. *Libby Objection at 81-82, Pre-Trial Br. at 95-96.* | Asbestos Insurance Entity Injunction is not designed or intended to protect third party insurers, but to protect the assets of the Asbestos PI Trust. *PP Main Pre-Trial Br. at 137; PP Main Post-Trial Br. at 68.* |
| | Injunction bars Libby Claimants and holders of future Libby Claims from pursuing claims for payment under non-products coverage. *Libby Objection at 82-84, Pre-Trial Br. at 96-97.* | Libby Claimants cite no case in support of the theory that a § 105 injunction may not enjoin claims against an uncapped portion of the insurance policy. Whether non-products coverage does or does not have aggregate limits is not relevant to the Court's power to issue an injunction under § 105(a). *PP Main Post-Trial Br. at 69.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| **31.  § 524(g)(2)(B)(ii)(IV)(bb):** Establishment of classes of claimants whose claims are to be addressed by a § 524(g) trust, and of such classes, 75% of those voting must vote in favor in the Plan. | | |
| *PP Main Pre-Trial Br. at 156; PP Main Post-Trial Br. at 120.* | The disparate treatment of claims in the same class renders any vote made on the Plan meaningless in violation of § 524(g)'s requirement that the Plan be approved by a 75% vote of "a separate class…whose claims are to be addressed by a trust." *AMH Pre-trial Br. at 16, Post-Trial Br. at 55.* | The Plan complies with the Bankruptcy Code's requirements of equal treatment.  All pending Asbestos PD Claims will be subject to the same treatment as AMH's claim. *Debtors' Response to AMH's Post-Trial Br. at 24-25.* |
| **32.  Miscellaneous Objections** | | |
| *PP Main Pre-Trial Br. at 147.* | Plan provides no meaningful opt-out for ZAI PD Claimants, in violation of the ZAI Settlement.  These claimants should have the option of liquidating their claims outside of the ZAI TDP.  *AMH Objection at 22-23, Pre-Trial Br. at 30.* | AMH is not a Class 7B ZAI Claimant and has no standing to make this argument.  Class 7B Claimants voted overwhelmingly in favor of the Plan, and the concept of opting out is not relevant to the treatment of Class 7B ZAI PD Claims.  In fact, it would be directly contrary to the Bankruptcy Code's provisions that substantially similar claims be classified within the same class and that the plan provide the same treatment for each class.  *PP Main Pre-Trial Br. at 147.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| (Not applicable) | Class 7A Claimants who may not litigate in their chosen forum and have not waived their right to interest are impaired. Accordingly, they should have been permitted to vote in a separate class. Instead, settling Class 7A Claimants determine the fate of unresolved Class 7A Claims. This is tantamount to artificial impairment. *AMH Objection at 20-21, Pre-Trial Br. at 28-30, Post-Trial Br. at 59-60.* | Class 7A Claimants will be paid in full with post-petition interest to the extent the Court determines their Claims are allowed and interest is appropriate. Thus, the class is not impaired, and the objection lacks merit. *PP Main Pre-Trial Br. at 107-08.* |
| (Not applicable) | Solicitation process with respect to Class 6 PI Claims is flawed. Debtors never sought a claims bar date. As a result, any vote by Class 6 claimants is solely by those who voluntarily elected to file proofs of claims despite lack of a deadline. The entire class of creditors cannot be bound. *AMH Objection at 17, n.3; Pre-Trial Br. at 25, n.12; Post-Trial Br. at 55, n.13.* | AMH is not a Class 6 Claimant and thus lacks standing to make this argument. Even if AMH had standing to object on this ground, which it does not, AMH has provided no evidence that the solicitation process was in any way defective. *Debtors' Response to AMH's Post-Trial Br. at 30-31.* |
| (Not applicable) | ~~The Plan should not affect Kaneb's rights under its Merger Agreement because it is an executory contract. *Kaneb Pre-Trial Br. at 5.*~~ | ~~The Merger Agreement is not executory. *PP Main Pre-Trial Br. at 148.*~~ |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| (Not applicable) | ~~Debtors should not be permitted to use insurance policies that are not property of the estate to fund the Trust.  *Kaneb Objection at 2, Pre-Trial Br. at 6-7.*~~ | ~~The insurance policies being transferred to the Trust are property of the estate.  To the extent that Kaneb believes it has rights in any such policies or other insurance coverage claims, those claims may be addressed by the appropriate court in the appropriate insurance coverage litigation. PP Main Pre-Trial Br. at 149.~~ |
| (Not applicable) | The cap on Asbestos PI Claims should be lifted to take into account future claims.  *Pro Se ZAI Claimant Objection at ¶ 1.* | The PI TDP provides for the payment of future claims in a similar matter as present claims as is required by § 524(g).  *PP Main Post-Trial Br. at 124-26.* |
| (Not applicable) | ~~Plan should be revised to provide that it does not modify the parties' rights under certain insurance programs with the Fresenius Indemnified Parties and the Sealed Air Indemnified Parties.  Any such modification renders the Plan unconfirmable under § 1129(a)(1).  *CNA Objection at 15, Pre-Trial. Br. at 38.*~~ | ~~The Debtors contest this objection.~~ |
| (Not applicable) | ~~Plan should be modified to clarify the post-confirmation handling of the workers' compensation claims -- if the Debtors intend for CNA to continue handling the workers' compensation claims in the ordinary course, the Plan injunctions need to be expressly modified for that purpose.  *CNA Objection at 16.*~~ | ~~This objection was resolved by the Insurance Neutrality Stipulation.~~ |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| (Not applicable) | Plan Exhibit 5 (PP Ex. 277.05 Rev.) does not list all of the CNA insurance settlement agreements. *CNA Objection at. 16-17, Pre-Trial Br. at 34-36, Post-Trial Br. at 29-32.* | Three of CNA's policies at issue will be added to Exhibit 5.  With these additions, Exhibit 5 will properly reflect the agreements of settled insurers as defined in the Plan.  CNA's remaining claims are not resolved, and CNA makes no showing that the scope of the injunction should be greater than the scope of the resolved coverage.  Nor does § 524(g) require that Asbestos Insurance Reimbursement Agreements be treated as Asbestos Insurance Settlement Agreement.  *PP Main Post-Trial response Br. at 88-89.* |
| (Not applicable) | PI Channeling Injunction is improperly limited to Asbestos Insurance Policies identified in Plan Exhibit 5.  It should extend to insurers with respect to claims allegedly arising out of policies that are the subject of an Asbestos Insurance Reimbursement Agreement listed in Plan Exhibit 6.  *CNA Objection at 24, Pre-Trial Br. at 24.* | The limitation is appropriate.  § 524(g) does not require that Asbestos Insurance Reimbursement Agreements be treated as Asbestos Insurance Settlement Agreement.  *PP Main Post-Trial Response Br. at 88-89.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| (Not applicable) | Libby Claimants have the right to have their claims allowed in accordance with applicable non-bankruptcy law.  The TDP is unconstitutional, depriving the Libby Claimants of their Seventh Amendment right to a jury trial, because it caps the amount of damages that a jury may award.  Accordingly, the Plan is unconfirmable. *Libby Objection at 69-92, Pre-Trial Br. at 82-92, Post-Trial Response Brief at 9-11.* | All claimants may elect to have a jury determine their claims under the TDP.  The TDP's jury caps do not violate the Libby Claimants' alleged right to have claims 'allowed' in accordance with state law.  <br><br>§ 524(g) trusts to serve as a legal <u>alternative</u> to the tort system and to § 502 allowance proceedings for valuing and paying claims.  By voting for the Plan, Class 6 has waived the right to have juries decide the amount of their claims, and the Libby Claimants are also deemed to have waived that right.  *PP Libby Pre-Trial Br. at 65-66, 73-75; PP Libby Post-Trial Br. at 43-46.* |
| (Not applicable) | ~~The discharge under § 8.1 is inappropriately broad under § 524(g) and § 1141 of the Bankruptcy Code as it bars all claims against the Reorganized Debtors in perpetuity and inappropriately bars state court proceedings with respect to Kaneb and other ongoing litigations with respect to Kaneb.~~ *~~Kaneb Pre-Trial Br. at 3-4, Post-Trial Br. at 7-12.~~* | ~~The discharge does not affect Kaneb's rights to assert defenses and counterclaims in state court proceedings.  It only affects Kaneb's direct claims against the Debtors, for which Kaneb failed to file a timely proof of claim, are discharged.~~ *~~PP Main Pre-Trial Br. at 148.~~* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| (Not applicable) | Plan should explicitly reference stipulation between Tyco and the Debtors relating to the Superfund site of Blackburn & Union Privileges similar to its language in § 3.1.9(c) for the EPA Multi-Site Agreement Obligations. *Tyco/Covidien Objection at ¶¶ 1-5.* | The Debtors contest this objection. |
| ~~(Not applicable)~~ | ~~Plan improperly eliminates Federal's Contractual Indemnity Rights with respect to claims other than Asbestos PI Claims. *Federal Objection at ¶¶ 62-63.*~~ | ~~All Indirect PI Trust Claims may be channeled to a § 524(g) Trust, including indemnity claims based on contractual rights. The claims need not be direct claims for personal injuries or property damage caused by asbestos, but simply need to arise from or relate to such liabilities. *PP Main Pre-Trial Br. at 47-49.* Indemnity claims that are not Asbestos PI Claims are Class 9 claims.~~ |
| (Not Applicable) | § 11.8 of the Plan violates §§ 1129(a)(1) and 1103 by dissolving the Creditors' Committee on the Effective Date, notwithstanding pending bank claim litigation that may not be concluded at that time. The Committee should be able to take an active role in the Lenders' default interest litigation currently on appeal. *Committee Objection at 18-20; Lender/Committee Post-Trial Br. at 43-44.* | Issues involving the Committee's conduct are factual. The evidence has been presented, and the record is closed. The Lenders are also ably represented by their own attorneys, and there is no need for the Committee to duplicate their efforts. The Committee's dissolution does not violate any provision of the Code, and it should be disbanded on the Effective Date. *PP Main Post-Trial Response Br. at 104-105.* |

| Plan Satisfies Requirement | Objections | Response to Objections |
|---|---|---|
| (Not Applicable) | The Crown's challenges to this Court's approval of the 2009 Restated ZAI Settlement Appear to be being merged with confirmation objections to the Plan. The Settlement is unfair, unreasonable, and inequitable, and it should not be approved by this Court. *Crown Obj. at 13-14.* | Both the Original Settlement and the Amended Settlement negotiated with Rep. Counsel of the CDN ZAI Claims were negotiated at arm's length, and there is no evidence to suggest otherwise. The Settlement is fair and reasonable and should be approved by this Court. *Reply to Crown at 10.* |

| **Uncontested Provisions** | |
|---|---|
| **§ 1129(a)(2).**  Compliance with applicable provisions of title 11.  *PP Main Pre-Trial Br. at 149; PP Main Post-Trial Br. at 103.* | No pending objections. |
| **§ 1129(a)(4).**  Payments for services or expenses in connection with this case or Plan must have been approved, or must be subject to approval by the court as reasonable.  *PP Main Pre-Trial Br. at 114; PP Main Post-Trial Br. at 97-98.* | No pending objections. |
| **§ 1129(a)(6).**  Regulatory commission approval of rate changes.  The Plan does not provide for any such rate changes, therefore, this requirement is met. *PP Main Pre-Trial Br. at 150; PP Main Post-Trial Br. at 104.* | No pending objections. |
| **§ 1129(a)(9).**  Payment of priority claims.  *PP Main Pre-Trial Br. at 151; PP Main Post-Trial Br. at 104.* | No pending objections. |
| **§ 1129(a)(10).**  Acceptance by at least one impaired class.  *PP Main Pre-Trial Br. at 151; PP Main Post-Trial Br. at 105.* | No pending objections. |
| **§ 1129(a)(12).**  Payment of Trustee fees.  *PP Main Pre-Trial Br. at 151; PP Main Post-Trial Br. at 106.* | No pending objections. |
| **§ 1129(a)(13).**  Payment of retiree benefits.  *PP Main Pre-Trial Br. at 152; PP Main Post-Trial Br. at 106.* | No pending objections. |
| **§ 1123(a)(1).**  Designation of classes of claims and interests.  *PP Main Pre-Trial Br. at 152; PP Main Post-Trial Br. at 99.* | No pending objections. |
| **§ 1123(a)(2).**  Specification of classes of claims and interests *not* impaired under the Plan.  *PP Main Pre-Trial Br. at 152; PP Main Post-Trial Br. at 99.* | No pending objections. |

| | |
|---|---|
| **§ 1123(a)(6).** Inclusion in the charter of prohibition of non-voting securities and appropriate distribution of such power among security holders. *PP Main Pre-Trial Br. at 153; PP Main Post-Trial Br. at 100.* | No pending objections. |
| **§ 1123(a)(7).** Provisions relating to the selection of officers, directors or trustees must be consistent with the interests of creditors, equity holders, and public policy. *PP Main Pre-Trial Br. at 154; PP Main Post-Trial Br. at 101.*s. | No pending objections. |
| **§ 1123(b)(1).** Impaired or unimpaired classes permitted. *PP Main Pre-Trial Brief at 155.* | No pending objections. |
| **§ 1123(b)(2).** Provision for assumption, rejection or assignment of executory contracts and unexpired leases. *PP Main Pre-Trial Br. at 154; PP Main Post-Trial Br. at 101-02.* | No pending objections. |
| **§ 1123(b)(3).** Provision for resolution of claims. *PP Main Pre-Trial Br. at 80, 85, 96; PP Main Post-Trial Br. at 70, 74, 101.* | No pending objections (but see objections to releases). |
| **§ 1123(b)(3)(B).** Retention and enforcement of any claim or interest belonging to the Debtors or the estate. *PP Main Pre-Trial Br. at 154; PP Main Post-Trial Br. at 81, 87, 91-92, 101.* | No pending objections  (but see objections to assignment). |
| **§ 1123(b)(6).** Provisions not inconsistent with chapter 11. *PP Main Pre-Trial Br. at 154; PP Main Post-Trial Br. at 102.* | No pending objections. |
| **§ 524(g)(2)(B)(i)(I).** Debtor must have been named as a defendant in asbestos personal injury, wrongful death, or property damage actions. The Debtors have been named as defendants in numerous asbestos personal injury, wrongful death, and property damage cases. *PP Main Post-Trial Br. at 108-09.* | No pending objections. |

| | |
|---|---|
| **§ 524(g)(2)(B)(i)(I).** Each § 524(g) trust must assume the liabilities of the debtor. The Asbestos PI Trust will assume the debtors' asbestos PI liabilities; the Asbestos PD Trust will assume the debtors' asbestos PD liabilities. *PP Main Post-Trial Br. at 109-10.* | No pending objections. |
| **§ 524(g)(2)(B)(i)(IV).** Each § 524(g) trust must use its assets or income to pay claims and demands. *PP Main Post-Trial Br. at 113.* | No pending objections. |
| **§ 524(g)(2)(B)(ii)(IV)(aa).** Inclusion of terms of the injunctions to be implemented under § 524(g) and any provisions barring action against third parties. *PP Main Pre-Trial Br. at 156; PP Main Post-Trial Br. at 119.* | No pending objections. |

## Bankruptcy Code Section Index*

**§ 1122(a)** ........................................................... 11

**§ 1123** ................................................................ 66

**§ 1123(a)(1)** ..................................................... 75

**§ 1123(a)(2)** ..................................................... 75

**§ 1123(a)(4)** ..................................................... 14

**§ 1123(a)(5)** ..................................................... 54

**§ 1123(a)(6)** ..................................................... 76

**§ 1123(a)(7)** ..................................................... 76

**§ 1123(b)(1)** ..................................................... 76

**§ 1123(b)(2)** ..................................................... 76

**§ 1123(b)(3)** ..................................................... 76

**§ 1123(b)(3)(B)** ................................................ 76

**§ 1123(b)(6)** ..................................................... 76

**§ 1124(1)** .......................................................... 43

**§ 1129(a)(1)** ..................................................... 55

**§ 1129(a)(10)** ................................................... 75

**§ 1129(a)(11)** ..................................................... 4

**§ 1129(a)(12)** ................................................... 75

**§ 1129(a)(13)** ................................................... 75

**§ 1129(a)(2)** ..................................................... 75

**§ 1129(a)(3)** ....................................................... 1

**§ 1129(a)(4)** ..................................................... 75

**§ 1129(a)(5)** ..................................................... 54

**§ 1129(a)(6)** ..................................................... 75

**§ 1129(a)(7)** ....................................................... 6

**§ 1129(a)(8)** ..................................................... 49

**§ 1129(a)(9)** ..................................................... 75

**§ 1129(b)** ................................................... 50, 52

**§ 524(g)** ............................................................ 66

**§ 524(g)(2)(B)(i)** .............................................. 56

**§ 524(g)(2)(B)(i)(I)** ..................................... 76, 77

**§ 524(g)(2)(B)(i)(II)** ......................................... 57

**§ 524(g)(2)(B)(i)(III)** ....................................... 58

**§ 524(g)(2)(B)(i)(IV)** ....................................... 77

**§ 524(g)(2)(B)(ii)(I)** ......................................... 59

**§ 524(g)(2)(B)(ii)(III)** ...................................... 59

**§ 524(g)(2)(B)(ii)(IV)(aa)** ............................... 77

**§ 524(g)(2)(B)(ii)(IV)(bb)** .............................. 68

**§ 524(g)(2)(B)(ii)(V)** ....................................... 60

~~**§ 524(g)(4)(A)(ii)**~~ ............................................ 62

**§ 524(g)(4)(B)(i)** .............................................. 63

**§ 524(g)(4)(B)(ii)** ............................................. 63

**Anti-Assignment Provisions of Insurance Policies** ............ 27

**Asbestos Insurance Entity Injunction under § 105(a)** ....... 67

**Asbestos Insurance Reimbursement Agreement Issues** .... 29

**Exculpatory Clauses and Releases** ...................................... 32

**Insurance Company Standing** ............................................ 25

~~**Insurance Neutrality**~~ ....................................................... 22

**Miscellaneous Objections** .................................................. 68

~~**Successor Claims Injunction under § 105(a)**~~ ...................... 37

**TAC Objections** ................................................................ 21

*This index identifies where each Bankruptcy Code provision is addressed in this Confirmation Requirements and Objections Chart.

**Index of Objecting Parties***

Anderson Memorial Hospital (AMH).................................................................. 1, 2, 4, 5, 17, 32, 34, 36, 49, 55, 56, 57, 59, 61, 68, 69

AXA Belgium ................................................................................................................. ~~22, 25,~~ 27, ~~31,~~ 32, 33, 36~~, 61~~

Bank Lender Group and Official Committee of Unsecured Creditors (Lender/Committee).............1, 9, 10, 43-48, 50, 51, 53, 55, 73

BNSF Railway Company...................................................................................................................12, 18, 21, 35, 52, 66

CNA Companies .....................................................................................~~3, 15,~~ 17, 18, 21, 25-31, 35-36, ~~41, 42,~~ 55, 57-60, 66, ~~70,~~ 71

Crown......................................................................................................................3, 12, 17, 52, 56, 60, 65, 74

Federal Insurance Company ...................................................................................................... ~~21-23, 25,~~ 27, 36~~, 66, 73~~

Garlock Sealing Technologies, LLC........................................................................................ 17, 21, 22, 25, 60, 61, 63, 64

GEICO/Republic.................................................................................................~~21-23,~~ 27, 28~~, 32, 33, 36, 54~~, 55, ~~57-59~~

Hartford Accident and Indemnity Company........................................................................................................29-31

~~Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc.~~ ..........................................~~39-43, 69-70, 72~~

Libby Claimants................................................................................................. 6-8, 11, 14, 19, 20, 32, 34, 36, 64, 65, 67, 72

~~Longacre Master Fund, Ltd. and Longacre Capital Partners (QP), L.P.~~......................................................~~12, 13, 15, 16~~

Maryland Casualty Company (MCC)............................................................................................ 2, 12, ~~15,~~ 18, 32, 36, 37, 51

~~Morgan Stanley~~...............................................................................................................~~9, 15, 16, 43, 44, 47-50, 53~~

~~Seaton Insurance Company and OneBeacon America Insurance Company (Seaton/OneBeacon)............2, 12, 18, 21, 25, 26, 32, 33, 34, 35, 36, 37, 38, 39, 41, 43, 54, 55, 57, 58, 59, 62.~~

The State of Montana............................................................................................ 3, 6, 12, 16, 17, 18, 21, 50, 52, 55, 56, 60, 65

*This index identifies where the objections of each party are located in the Confirmation Requirements and Objections Chart.

## Appendix A

All objections related to confirmation of the Joint Plan raised in the following pleadings have been withdrawn and/or resolved:[1]

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| **AIU Insurers ("<u>Chartis</u>")** | | |
| *Objection of Certain AIU Insurers to the Debtors' First Amended Joint Plan of Reorganization Dated February 27, 2009* (Dkt. 21777) (filed 05/20/2009). | *See* Exhibit A to Debtors' Motion for an Order Approving the Amended Settlement Agreement and Mutual Release with the Chartis Insurance Companies at 22 (Dkt. 23230) (filed 09/11/2009) ("Upon the Approval Order becoming a Final Order, the Chartis Insurance Companies shall withdraw all of their objections to the Joint Plan of Reorganization . . . [and] to confirmation of the Joint Plan of Reorganization . . . ."). | The coverage dispute was resolved with payments and releases as provided in the settlement agreement.  The Plan Proponents have listed the settlement agreement on Exhibit 5 as an Asbestos Insurance Settlement Agreement and, thus, if the Plan is confirmed, the insurers would have section 524(g) protection as provided in the settlement agreement.  The insurers agreed to withdraw all objections to confirmation upon the approval order becoming a final order, and the approval order is now a final order. |
| *Joinder Of Certain AIU Insurers To Trial Briefs Supporting Their Phase I Objections To The Debtors' First Amended Joint Plan of Reorganization* (Dkt. 21940) (filed 06/01/2009). | | |
| *Trial Brief in Support of the Limited Objection of Certain AIU Insurers to the Debtors' First Amended Joint Plan of Reorganization* (Dkt. 22421) (filed 07/13/2009). | *See* Order Pursuant to Sections 105, 363, 1007 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure Approving the Amended Settlement Agreement and Mutual Release with the Chartis Insurance Companies (Dkt. 23484) (entered 10/13/2009). | |
| *Pre-Trial Statement Regarding Issues to be Raised By The AIU Insurers at the Phase II Confirmation Hearing and Evidence Expected to be Introduced* (Dkt. 07/20/2009) (filed 07/20/2009). | | |

---

[1]    BNSF Railway Company and CNA have withdrawn all but certain objections that remain listed on the Amended Chart of Confirmation Requirements and Objections (filed 3/19/2010).

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| **Allstate Insurance Company ("<u>Allstate</u>")** | | |
| *Objections of Allstate Insurance Company to First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimant's Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009* (Dkt. 21767) (filed 05/20/2009).<br><br>*Phase II Trial Brief on Behalf of Allstate Insurance Company, Solely As Successor In Interest To Northbrook Excess And Surplus Insurance Company, Formerly Northbrook Insurance Company, In Opposition to Confirmation of First Amended Joint Plan Of Reorganization* (Dkt. 22406) (filed 07/13/2009).<br><br>*Pre-Trial Submission on Behalf of Allstate Insurance Company, Solely As Successor In Interest To Northbrook Excess and Surplus Insurance Company, Formerly Northbrook Insurance Company* (Dkt. 22521) (filed 07/20/2009). | *See* Exhibit A to Debtors' Motion for an Order Approving the Amended and Restated Asbestos Settlement Agreement at 39 (Dkt. 22787) (filed 08/14/2009) ("Upon the Bankruptcy Court's Approval Order becoming a Final Order, Subject Insurer [Allstate Insurance Company] shall withdraw all of its objections to the Joint Plan of Reorganization . . .[and] to confirmation of the Joint Plan of Reorganization . . . .").<br><br>*See* Order Pursuant to Sections 105, 363, 1007 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure Approving Amended and Restated Asbestos Settlement Agreement with Allstate Insurance Company (Dkt. 23205) (entered 09/09/2009). | The coverage dispute was resolved with payments and releases as provided in the settlement agreement. The Plan Proponents have listed the settlement agreement on Exhibit 5 as an Asbestos Insurance Settlement Agreement and, thus, if the Plan is confirmed, the insurer would have section 524(g) protection as provided in the settlement agreement. The insurer agreed to withdraw all objections to confirmation upon the approval order becoming a final order, and the approval order is now a final order. |
| **Arrowood Indemnity Company, f/k/a Royal Indemnity Company ("<u>Royal</u>")** | | |
| *Arrowood Indemnity Company, f/k/a Royal Indemnity Company's Objections to Debtors' Amended Joint Plan of Reorganization* (Dkt. 21814) (filed 05/20/2009). | *See* Exhibit A to Debtors' Motion for an Order Approving Settlement Agreement and Mutual Release with the Royal Parties at 17 (Dkt. 22153) (filed 06/16/2009) ("Following the | The coverage dispute was resolved with payments and releases as provided in the settlement agreement. The Plan Proponents have listed the settlement agreement on Exhibit |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| *Arrowood's Phase II Objections to the Non-Debtor Release and Exculpation Provision and the Injunction Impairing its Rights of Contribution, Subrogation and Reimbursement that are Contained in the Amended Joint Plan of Reorganization* (Dkt. 21815) (filed 05/20/2009).<br><br>*Arrowood Indemnity Company's Joinder to Objections of Other Parties Regarding Phase I and Phase II Issues of Amended Joint Plan of Reorganization* (Dkt. 21867) (filed 05/26/2009).<br><br>*Arrowood's Phase I Trial Brief Objecting To The Amended Joint Plan's Non-Debtor Release And Exculpation Provisions And The Injunction That Impair Arrowood's Rights Of Contribution, Subrogation And Reimbursement* (Dkt. 21945) (filed 06/01/2009).<br><br>*Arrowood's Phase I Trial Brief Objecting To The Plan Proponents' First Amended Joint Plan Of Reorganization* (Dkt. 21946) (filed 06/01/2009).<br><br>*Notice of Arrowood's Reservation of Rights with Regard to Pre-Trial Submission* (Dkt. No. 22153) (filed 07/20/2009). | Execution Date [of the Settlement Agreement], the Royal Parties (1) will suspend prosecution of all of their objections to the Plan or Plan documents, to confirmation of a Plan, or to the Debtors', Committee's or Futures Representative's motions or applications pending in the Bankruptcy Case . . . (2) will suspend prosecution of their proof of claim . . . .").<br><br>*See* Order Pursuant to Sections 105, 363, 1007 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure Authorizing and Approving the Debtors Entering into the Settlement Agreement with the Royal Parties and Denying Libby Claimants' Motions to Defer Consideration and Compel Discovery (Dkt. 22859) (entered 08/19/2009). | 5 as an Asbestos Insurance Settlement Agreement and thus, if the Plan is confirmed, the insurer would have section 524(g) protection as provided in the settlement agreement, subject to the Approval Order becoming a Final Order. The insurer agreed to suspend prosecution of its objections on the execution date of the settlement agreement, and to withdraw its objections when the Approval Order becomes a Final Order. The Approval Order entered by the Bankruptcy Court is on appeal. |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| **BNSF Railway Company ("<u>BNSF</u>")** | | |
| *Objections of BNSF Railway Company to Confirmation of the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimant's Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009* (Dkt. 21769) (filed 05/20/2009).<br><br>*Pre-Trial Submission of BNSF Railway Company* (Dkt. 22526) (filed 07/20/2009).<br><br>*Phase II Trial Brief of BNSF* (Dkt. 22410) (filed under seal on 07/13/2009).<br><br>*Post Trial Brief of BNSF Railway Company Regarding Confirmation of the First Amended Chapter 11 Plan . . .* (Dkt. No. 23648) (filed 11/02/2009). | BNSF has withdrawn all of its objections except for those that remain listed in the Chart of Confirmation Requirements and Objections. *See* 09/16/2009 REV. Tr. at 86-87 (Casey). | Pursuant to BNSF's objection, the Plan Proponents modified the definition of "Settled Asbestos Insurance Company" under the Plan to provide that any settlement agreement that would be deemed an insurance settlement agreement under the Plan would require the Bankruptcy Court's approval under Bankruptcy Rule 9019. Pursuant to these modifications, BNSF withdrew all of its objections relating to the scope of the 524(g) injunction and the Successor Claims Injunction. *See* 09/16/2009 REV. Tr. at 86-87 (Casey); Exhibit A to *Notice of Second Set of Modifications to Joint Plan of Reorganization* (Dkt. 23474) (filed 10/12/2009).<br><br>The Plan Proponents intend to amend the TDP to add new section 5.14, which fully addresses BNSF's objection regarding defense costs and attorney's fees under its contractual indemnity claim. *See* Chart of Confirmation Requirements and Objections at 18, 22. |
| **The CNA Companies ("<u>CNA</u>")** | | |
| *Final Plan Objections of the CNA Companies to the First Amended Joint Plan of Reorganization* (Dkt. 21794) (filed 05/20/2009).<br><br>*Phase II Trial Brief for the CNA Companies* (Dkt. 22415) (filed 07/13/2009). | *See* Stipulation Among the Plan Proponents and CNA Regarding Certain Actions Against Sealed Air (filed 3/19/2010) ("Effective upon the filing of this Stipulation with the Bankruptcy Court, and contingent on a Final Order confirming the Plan containing the Plan amendments set forth | CNA submitted Phase II objections to confirmation of the Plan, asserting, among other objections, that the release of non-debtor Sealed Air Corporation under §7.13 of the Plan and the Successor Claims Injunction under §8.5.1 of the Plan, to the extent that they enjoin CNA's |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| *Phase II Post-Trial Brief for the CNA Companies* (Dkt. No. 23644) (filed 11/02/2009).<br><br>*Phase II Post-Trial Reply Brief for the CNA Companies* (Dkt. No. 23644) (filed 11/02/2009). | herein, CNA's Sealed Air Release and Injunction Objections shall be deemed withdrawn.").<br><br>* CNA is a also a party to the Stipulation and Agreed Order, dated December 31, 2009, by and between the Plan Proponents and various insurers (the "Insurance Neutrality Stipulation") described herein at page 11. | claims against Sealed Air, improperly release and enjoin contractual indemnification claims that CNA has against Sealed Air, including indemnification claims arising from environmental coverage claims (together, the "Sealed Air Release and Injunction Objections"). The Plan Proponents have agreed to amend sections 1.1, 7.3 and 8.8.1 of the Plan to address CNA's concerns. The Plan Proponents also added to the Plan a new Section 8.5.3 containing a reservation from the Successor Claims Injunction for the benefit of CNA. Finally, the Debtors agreed to use good faith efforts to obtain releases from Kaneb in favor of CNA regarding the Otis Pipeline site. CNA is withdrawing the foregoing objections by stipulation. |
| **The Edwards Judgment Claimants (the "<u>Edwards Claimants</u>")** | | |
| *Objection of the Edwards Judgment Claimants to the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimant's Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009* (Dkt. 21773) (filed 05/20/2009). | *See* Exhibit A to Debtors' Motion for an Order Approving the Settlement Agreement By and Between W. R. Grace & Co. and the Edwards Plaintiffs (Dkt. 23723) (filed 11/09/2009) ("Upon the Approval Order becoming a Final Order, Plaintiffs agree to withdraw their objections to confirmation of the Plan.").<br><br>*See* Order Pursuant to Sections 105, 363, 1007 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal | In 1995, the Edwards Claimants sued W. R. Grace and other defendants for asbestos-related personal injuries. The case proceeded to a jury and the Plaintiffs were awarded over $38 million, plus post-judgment interest at the rate of 12%. W. R. Grace appealed this judgment. While the appeal was pending, the Debtors filed for chapter 11 relief. Pursuant to the Settlement Agreement, the Edwards Plaintiffs' claims are reduced in value, will be treated as prepetition |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| *Pre-Trial Submissions of The Edwards Judgment Claimants In Compliance With The Order Regarding Phase II Pre-Trial Proceedings* (Docket No. 22351) (filed 07/20/2009). | Rules of Bankruptcy Procedure Approving Settlement Agreement By and Between W. R. Grace & Co. and the Edwards Plaintiffs (Dkt. 24019) (entered 12/17/2009). | liquidated claims under § 5.2 of the TDP and will be subject to all terms and conditions of the TDP. In return, the plaintiffs will release all interest in the supersedeas bond which Debtors were required to post in order to appeal the judgment described above. The Settlement Agreement also provides for a mutual release of all claims by all parties, and for the Edwards' Claimants to withdraw their Plan objections. The Approval Order has become a Final Order. |
| **ERISA Plaintiffs** | | |
| *ERISA Plaintiffs' Limited Protective Objection to Confirmation of the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimant's Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009* (Dkt. 21762) (filed 05/20/2009). | *See* Exhibit A to Motion of Debtors for Entry of an Order Authorizing Debtors' Entry Into Settlement Agreements to Resolve Pending ERISA Litigation at 7 (Dkt. 21432) (filed 04/27/2009) (ERISA Plaintiffs agreed to release all pending claims in the Debtors' chapter 11 case and agreed not to file any new claims in these cases).<br><br>*See* Order Authorizing Debtors' Entry Into Settlement Agreements to Resolve Pending ERISA Litigation (Dkt. 21860) (entered 05/26/2009). | The ERISA Plaintiffs, in two separate lawsuits settled together as part of the Settlement Agreements to Resolve Pending ERISA Litigation, alleged that members of the Board and certain other employees of the Debtors' breached their fiduciary duties in failing to divest the Debtors' 401(k) Savings & Income Plan of the Debtors' stock. The Debtors maintained an insurance policy for such liability, and pursuant to the Settlement Agreements, the Debtors' insurer, National Union, agreed to pay $10 million to the ERISA Plaintiffs. In exchange, the ERISA Plaintiffs agreed to release the Debtors and non-debtor defendants from any further claims related to the ERISA litigation and withdraw their Plan objections. |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| **Fireman's Fund Insurance Company and Allianz S.P.A., F/K/A Riunione Adriatica Di Sicurta, and Allianz SE, F/K/A Allianz Aktiengesellschaft ("Allianz")** | | |
| *Final Phase I and Non-Surety Claim Related Phase II Objection of Fireman's Fund Insurance Company, Allianz S.P.A., F/K/A Riunione Adriatica Di Sicurta, and Allianz SE, F/K/A Allianz Aktiengesellschaft to Confirmation of the First Amended Joint Plan of Reorganization* (Dkt. 21781) (filed 05/20/2009).<br><br>*Phase II "Surety Claim" Related Objections of Fireman's Fund Insurance Company, as a Creditor, to Confirmation of the First Amended Plan of Reorganization* (Dkt. 21791) (filed 05/20/2009).<br><br>*Phase I Trial Brief Of Fireman's Fund Insurance Company, Allianz S.P.A., F/K/A/ Riunione Adriatica DI Sicurta, And Allianz SE, F/K/A Allianz Aktiengesellschaft Pursuant To Third Amended Case Management Order* (Dkt. 21929) (filed 06/01/2009).<br><br>*Joinder of Fireman's Fund Insurance Company . . . to Confirmation Objections with Respect to the First Amended Joint Plan of Reorganization* (Dkt. 21975) (filed 06/04/2009). | *See* Exhibit A to Debtors' Motion Pursuant to Sections 105, 363, 1007 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure for an Order Approving the Settlement Agreement Between W. R. Grace & Co. and the Allianz Companies at 24 (Dkt. 23722) (filed 11/09/2009) ("Upon the Approval Order becoming a Final Order, the Allianz Companies . . . shall withdraw all of their objections to the Joint Plan of Reorganization or plan-related documents [and] to confirmation of the Joint Plan of Reorganization . . . .").<br><br>Order Pursuant to Sections 105, 363, 1007 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement By and Between W. R. Grace & Co. and the Allianz Companies (Dkt. 23995) (entered 12/11/2009). | The coverage dispute was resolved with payments and releases as provided in the settlement agreement. The Plan Proponents have listed the settlement agreement on Exhibit 5 as an Asbestos Insurance Settlement Agreement and thus, if the Plan is confirmed, the insurer would have section 524(g) protection as provided in the settlement agreement. The insurer agreed to withdraw all objections to confirmation upon the approval order becoming a final order, and the approval order is now a final order. |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| *Fireman's Fund Insurance Company's Phase II Trial Brief Relating to its "Surety Claim"* (Exhibits 1-3) (Dkt. 22412) (filed 07/13/2009). | | See p. 7 above. |
| *Non-Surety Claim Related Phase II Trial Brief of Fireman's Fund Insurance Company . . . (Appendix and attachment)* (Dkt. 22418) (filed 07/13/2009). | | |
| *Pre-Trial Submission* (Dkt. 22559) (filed 07/20/2009) and *Pre-Trial Submission* (Dkt. 22534) (filed 07/20/2009). | | |
| **General Insurance Company of America ("General")** | | |
| *Objection of General Insurance Company of America to W. R. Grace & Co. First Amended Joint Plan of Reorganization and Joinder in Objections by Other Insurers* (Dkt. 21776) (filed 05/20/2009).<br><br>*General Insurance Company Of America's Trial Brief (Phase I) And Exchange Of Exhibits* (Dkt. 21930) (filed 06/01/2009).<br><br>*Phase II Trial Brief of General Insurance Company of America in Support of Objection to W. R. Grace & Co. First Amended Joint Plan of Reorganization* (Exhibits A-B) (Dkt. 22419) (filed 07/13/2009). | *See* Exhibit A to Debtors' Motion for and Order Approving the Stipulation and Order With Respect to (1) Liability Insurance Policies Issued by General Insurance Company of American and (2) 1994 Settlement Agreement Between W. R. Grace & Co. and General Insurance Company of America (Dkt. 22552) (filed 07/20/2009) ("Upon completion of certain modifications to the exhibits and schedules to the Plan, and the Bankruptcy Court having approved the motion, General would withdraw all of its objections to the Plan and/or Plan documents, [and] to confirmation of the Plan . . . ."). | General issued certain policies of insurance that provide insurance coverage to Grace. In 1994, the Debtors and General entered into an agreement which fully and finally settled all asbestos related claims and products claims related to General's policies (the "1994 Agreement"). In 2009, General and the Debtors negotiated a stipulation agreeing, among other things, that the 1994 Agreement would be listed as an Asbestos Insurance Settlement Agreement under the Plan, the Insurance Contributors' rights under the 1994 Agreement or insurance policies subject thereto would not be transferred to the Trust, and General would withdraw all objections to the Plan. It is also stipulated that |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| *Pre-Trial Statement Regarding Issues to be Raised By General Insurance Company of America at The Phase II Confirmation Hearing and Evidence To Be Introduced* (Dkt. 22540) (filed 07/20/2009). | *See* Order Approving the Stipulation and Order with Respect to (1) Liability Insurance Policies Issued by General Insurance Company of American and (2) 1994 Settlement Agreement Between W. R. Grace & Co. and General Insurance Company of America (Dkt. 22857) (entered 08/19/2009). | the 1994 Agreement releases General from any insurance obligations for asbestos claims under the policies that were the subject of the 1994 Agreement.  Plan Exhibit 5 has been amended to include General. |
| **Insurers (Insurance Neutrality)** | | |
| *See* Objections to Insurance Neutrality asserted in objection and response briefs filed by AXA Belgium, the CNA Companies, Government Employees Insurance Co. and Republic Insurance Company n/k/a Starr Indemnity & Liability Company, and Federal Insurance Company. | *See* Insurance Neutrality Stipulation, Exhibit A to Plan Proponents' Joint Motion for Entry of Order Approving Stipulation and Agreed Order Resolving Neutrality Objections at 2-3 (Dkt. 24097) (filed 12/31/2009) ("Effective upon the entry of an order of the Bankruptcy Court approving this Stipulation and Agreed Order . . . [t]he Insurers' Neutrality Objections shall be withdrawn.").

*See* Order Approving Stipulation and Agreed Order Resolving Neutrality Objections to First Amended Plan of Reorganization (Dkt. 24297) (entered 02/16/10).  The Stipulation resolves all Insurance Neutrality Objections.  Plan Objectors not party to the stipulation have previously settled and/or dropped their objections. | To avoid protracted litigation with respect to the Neutrality Objections, the Plan Proponents, without admission, made certain modifications to the Plan to resolve the Neutrality Objections.  Specifically, in exchange for withdrawal of the Insurance Neutrality objections by the Insurers, the Plan Proponents amended the Plan to, among other things, include section 7.15, which states that, except as provided in 7.15(b) through 7.15(j), nothing in the Plan shall have the effect of impairing any Asbestos Insurance Entity's rights.

In addition to resolving the Insurance Neutrality Objections, pursuant to paragraphs 2(a) and 2(b) of the Insurance Neutrality Stipulation, the insurers withdrew other objections to the Plan as reflected in the Chart of Confirmation Requirements and Objections. |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| **Objections regarding § 502(e) of the Bankruptcy Code** | | |
| *See* Objections that Plan may discriminate against Indirect PI Trust Claims by making them subject to disallowance by the Court under § 502(e) of the Bankruptcy Code, asserted in objection and response briefs filed by the CNA Companies and Maryland Casualty Company. | *See* Stipulation by W. R. Grace & Co., et. al. (Dkt. 24250) (filed 02/05/2010) ("Effective upon execution of the Stipulation by all of the Parties . . . the Insurers' Contingent Claim Objections shall be deemed withdrawn. . ."). | Certain insurers objected to the Plan, alleging that the Plan could discriminate against Indirect PI Trust claims by making them subject to disallowance under § 502(e) of the Bankruptcy Code, or by the Asbestos PI Trust, because the claims were contingent and unliquidated on the date of the Plan Confirmation, and that the Plan and Asbestos PI TDP should be clarified to prevent such potential disallowance. Pursuant to the Stipulation, the Plan Proponents agreed to amend the following: (1) the definition of "Indirect PI Trust Claim" as set forth in § 1.1(139) of the Plan; (2) § 5.6 of the Asbestos PI TDP; and (3) § 5.13 of the Asbestos PI TDP. In exchange, the insurers withdrew their contingent claim and 502(e) objections. |
| **Certain London Market Insurance Companies ("London")** | | |
| *Objection of Certain London Market Insurance Companies to Confirmation of First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimant's Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009* (Dkt. 21801) (filed 05/20/2009). | *See* Exhibit A to Debtors' Motion for An Order Approving the Amended and Restated Settlement Agreement with Certain London Market Insurance Companies at 41-42 (Dkt. 22741) (filed 08/11/2009) (The London Market Insurance Companies agreed to withdraw all objections to confirmation of the plan of reorganization upon the Court's order approving the Amended Agreement becoming a Final Order). | The coverage dispute was resolved with payments and releases as provided in the settlement agreement. The Plan Proponents have listed the settlement agreement on Exhibit 5 as an Asbestos Insurance Settlement Agreement and thus, if the Plan is confirmed, the insurer would have section 524(g) protection as provided in the settlement agreement. The insurer agreed to withdraw all objections to confirmation upon the approval |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| *Phase II Trial Brief of Certain London Market Insurance Companies (Exhibits A-C)* (Dkt. 22424) (filed 07/13/2009). | *See* Order Pursuant to Sections 105, 363, 1007 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure Approving Amended and Restated Settlement Agreement with Certain London Market Insurance Companies (Dkt. 23204) (entered 09/09/09). | order becoming a final order, and the approval order is now a final order. |
| *Phase II Pre-Trial Statement of Certain London Market Insurance Companies* (Dkt. 22512) (filed 07/20/2009). | | |
| **Kaneb Pipe Line Operating Partnership, L.P. ("Kaneb")** | | |
| *Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc.'s Preliminary Objection to Confirmation of the First Amended Joint Plan of Reorganization* (Dkt. 20307) (filed 12/22/08). | *See* Stipulation Concerning Kaneb Pipe Line Operating Partnership L.P. and Support Terminal Services, Inc.'s Objections to Confirmation of Plan of Reorganization at 2 (Dkt. 24096) (filed 12/31/2009) *and see* Amended Stipulation Concerning Kaneb Pipe Line Operating Partnership L.P. and Support Terminal Services, Inc.'s Objections to Confirmation of Plan of Reorganization at 2 (Dkt. 24283) (filed 02/12/2010) ("NuStar, on behalf of Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. agrees to withdraw its objections to confirmation of the Joint Plan" (provided certain language outlined in the stipulation is included in the Confirmation Order). | NuStar, on behalf of Kaneb, agreed to withdraw its objections to confirmation of the Plan, conditioned on the addition of language to the Confirmation Order stating that neither the Successor Claims Injunction nor the Asbestos Insurance Entity Injunction nor any other provision of the Plan bars Kaneb from pursuing certain non-asbestos claims against certain insurers. |
| *Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc.'s Final Objection to Confirmation of the First Amended Joint Plan of Reorganization* (Dkt. 21707) (filed 05/15/2009). | | |
| *Kaneb Pipe Line Operating Partnership, L.P. And Support Terminal Services, Inc.'s Trial Brief* . . . (Dkt. 22417) (filed 07/13/2009). | | |
| *Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc.'s Phase II Post-Confirmation Hearing Opening Brief* (Dkt. 23647) (filed 11/02/2009). | | |
| *Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc.'s Reply Brief to "Plan Proponents' Main Post-Trial* | | |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| *Brief in Support of Confirmation of Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code*" (Dkt. 23819) (filed 11/20/2009) | | |
| **Longacre Master Fund, Ltd. and Longacre Capital Partners (QP), L.P. ("Longacre")** | | |
| *Objection of Longacre Master Fund, Ltd. and Longacre Capital Partners (QP), L.P. to Confirmation of the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimant's Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009* (Dkt. 21778) (filed 05/20/2009).<br><br>*Trial Brief of Longacre master Fund, LTD. And Longacre Capital Partners (QP), L.P. Objection to Confirmation of the First Amended Chapter 11 Plan of W. R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants Representative, and The Official Committee of Equity Security Holders dated February 27, 2009* (Dkt. 22427) (filed 07/13/2009).<br><br>*Post-Trial Brief of Longacre Master Fund, Ltd. and Longacre Capital Partners (QP), L.P., in Connection with Phase II Hearing to Consider* | *See* Stipulation Regarding Classification, Allowance and Payment of Claim of Longacre Master Fund, LTD and Longacre Capital Partners (QP), L.P. and Withdrawing Plan Objections (Dkt. 24418) (filed 03/08/2010) ("Longacre hereby (i) withdraws all of its objections to the Plan; (ii) agrees to take no further actions of any nature (including filing new objections to the Plan) that may hinder, delay, or oppose the action of the Plan Proponents in seeking confirmation of the Plan; and (iii) agrees not to oppose the entry of an order confirming the Plan."). | Prior to the Petition Date, National Union had issued certain surety bonds in favor of the Debtors to secure the Debtors' obligations under certain settlement agreements (the "RMQ Settlements"). National Union filed a related proof of claim, which it later assigned to Longacare. Longacre objected to the Plan, arguing that its claim should be classified as a Class 9 Claim rather than a Class 6 Claim. Pursuant to the Stipulation, Longacre's allowed claim was reduced and reclassified as a Class 9 Claim, which will be paid in the reduced amount with no interest under the Plan. In exchange for such treatment, Longacre agreed to withdraw all objections to the Plan. |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| *Confirmation of The First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants' Representative, and The Official Committee of Equity Security Holders Modified Through October 12, 2009* (Dkt. No. 23655) (filed11/02/2009) | | See p. 12 above. |
| *Post-Trial Reply Brief of Longacre Master Fund, Ltd. and Longacre Capital Partners (QP), L.P., in Connection with Phase II Hearing to Consider Confirmation of The First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimants' Representative, and The Official Committee of Equity Security Holders Modified Through October 12, 2009* (Dkt. No. 23782) (filed 11/20/2009). | | |
| **Michigan Department of Treasury** | | |
| *Objection of the Michigan Department of Treasury to the First Amended Joint Plan of Reorganization for W. R. Grace & Co. and its Affiliates Under Chapter 11 of the Bankruptcy Code* (Dkt. 21611) (filed 05/20/2009). | The parties have resolved the issue raised by the State and the State has agreed to withdraw its objection. | No change to the Plan necessary. |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| **Morgan Stanley Senior Funding, Inc. ("<u>Morgan Stanley</u>")** | | |
| *Objection of Morgan Stanley to the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimant's Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009* (Dkt. 21752) (filed 05/19/2009).<br><br>*Notice of Morgan Stanley Senior Funding's Incorporation of Brief of Date May 19, 2009 Regarding the Filing of Trial Brief in Connection with Phase II Hearing w/attached 5/19/2009 Objection of Morgan Stanley Senior Funding, Inc.* (Dkt. 22416) (filed 07/13/2009).<br><br>*Supplemental Memorandum of Law of Morgan Stanley Senior Funding, Inc. Regarding Impairment Issues . . .* (Dkt. 22502) (filed 07/17/2009).<br><br>*Post-Trial Brief of Morgan Stanley Senior Funding, Inc. in Opposition to Confirmation of the First Amended Joint Plan of Reorganization . . .* (Dkt. 23636) (filed 11/02/2009).<br><br>*Reply of Morgan Stanley Senior Funding, Inc. to Debtors Post-Trial Brief Regarding Bank Lender Issues* (Dkt. 23803) (filed 11/20/2009). | *See* Stipulation Among the Plan Proponents and Morgan Stanley Senior Funding, Inc. Regarding Rate of Post-Petition Interest for Claims of Morgan Stanley Senior Funding, Inc. as Assignee of Certain Claims of Bank of America, N.A. Under the Joint Plan (Dkt. 24347) (filed 02/24/2010) ("Upon the effectiveness of this Stipulation, Morgan Stanley agrees to (1) immediately withdraw its Objection; (2) take no further actions of any nature (including filing new objections to the Joint Plan and initializing or taking discovery) that may hinder, delay, or oppose the actions of Grace, the ACC, or the PI FCR, and (3) not oppose the entry of an order confirming the Joint Plan nor its consummation or effectiveness"). | Prior to the petition date, Bank of America ("BofA") issued three letters of credit to the Debtors, two of which were drawn upon by National Union. In 2005 and 2006, the Debtors and BofA stipulated that BofA was entitled to allowed claims of $9,779,270 and $6,710,100, respectively. In 2006, BofA transferred its claims to Morgan Stanley. In May 2009, the Debtors and Morgan Stanley stipulated that Morgan Stanley's claims would be Class 9 Claims, but did not resolve what interest rate would be paid on such claims. Morgan Stanley argued that the appropriate rate was prime plus 3%. The Debtors disagreed. Pursuant to the Stipulation filed Feb. 24, 2010, the Debtors and Morgan Stanley agree that interest will be paid at the same rate the Plan pays the Debtors' lenders -- 6.09% from the dates on which the letters of credit were drawn upon through December 2005, and the floating prime rate thereafter. In exchange, Morgan Stanley agreed to withdraw all objections to the Plan. |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| **National Union Fire Insurance Company of Pittsburgh, PA ("<u>National Union</u>")** | | |
| *Objection of National Union Fire Insurance Company of Pittsburgh, PA to Confirmation of the First Amended Joint Plan of Reorganization dated February 27, 2009 and Joinder* (Dkt. 21779) (filed 05/20/2009)<br><br>*Trial Brief in Support of Objection of National Union Fire Insurance Company of Pittsburgh, PA to Confirmation of the First Amended Joint Plan of Reorganization and Joinder* (Dkt. 22422) (filed 07/13/2009). | *See* Stipulation Regarding Classification, Allowance and Payment of Claim of National Union Fire Insurance Company of Pittsburgh, et. al. and Withdrawing Plan Objections (Dkt. 24419) (filed 03/08/2010) ("National Union hereby (i) withdraws all of its objections to the Plan; (ii) agrees to take no further actions of any nature (including filing new objections to the Plan) that may hinder, delay, or oppose the action of the Plan Proponents in seeking confirmation of the Plan; and (iii) agrees not to oppose the entry of an order confirming the Plan."). | Pursuant to a 2007 Settlement Agreement between National Union and the Debtors, on November 19, 2008, National Union filed a new proof of claim in the amount of $2,553,216.60, which consisted of (i) $135,491 related to bonds issued in connection with the RMQ Settlement (*see* summary of Stipulation with Longacre above), and (iii) $2,414,720 in amounts claimed owing for premiums arising under a Tennessee surety bond. National Union objected to the Plan, arguing that it entire claim should be classified as a Class 9 Claim rather than a Class 6 Claim. Pursuant to the Stipulation, National Union's claim related to the RMQ Settlement bonds was reduced, reclassified as a Class 9 Claim, and will be paid in the reduced amount with no interest under the Plan. National Union's claim for $2,414,720 shall be allowed as a general unsecured claim and paid accordingly. In exchange for such treatment, National Union agreed to withdraw all of its objections to the Plan. |
| **OneBeacon America Insurance Company and Seaton Insurance Company ("Seaton" and "OneBeacon")** | | |
| *Final Objections of OneBeacon America Insurance Company and Seaton Insurance Company to Confirmation of Amended Joint Plan of Reorganization* (Dkt. 21763) (filed 05/20/2009). | *See* Stipulation Among the Plan Proponents, OneBeacon America Insurance Company and Seaton Insurance Company at 3 (Dkt. 24294) (filed 02/15/2010) ("The insurers hereby . . . withdraw all of their Objections, which, for the | Seaton and OneBeacon have agreed to withdraw all of their objections to the Plan. All Asbestos PI Claims or Asbestos PD Claims by Seaton or OneBeacon against Fresenius arising under the 1995 Agreement shall be subject to |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| *Phase II Trial Brief of Creditors OneBeacon America Insurance Company and Seaton Insurance Company in Opposition to Confirmation of First Amended Joint Plan of Reorganization* (Dkt. 22433) (filed 07/13/2009).<br><br>*Phase II Post-Trial Brief of Creditors OneBeacon America Insurance Company and Seaton Insurance Company in Opposition to Confirmation of Amended Joint Plan of Reorganization* (Dkt. 23637) (filed 11/02/2009).<br><br>*Phase II Post-Trial Reply Brief of Creditors OneBeacon America Insurance Company and Seaton Insurance Company in Opposition to Confirmation of Amended Joint Plan of Reorganization* (Dkt. 23825) (filed 11/20/2009). | avoidance of doubt, include all objections to the Joint Plan stated by Seaton and OneBeacon in both Phase I and Phase II of the Plan confirmation proceedings . . .”). | the Asbestos PI Channeling Injunction or Asbestos PD Channeling Injunction, and will be treated as Class 6 Claims or Class 7A Claims. In exchange, the Plan Proponents agreed to amend or add Sections 1.1, 7.13, 8.5.2, 8.5.4, and 8.8.1 of the Plan as set forth in the Stipulation, and to use good faith efforts to obtain releases from Kaneb and Samson Hydrocarbons Company with respect to claims arising from the Otis Pipeline site. |
| **The Scotts Company LLC (“Scotts”)** | | |
| *Objection of The Scotts Company LLC to Confirmation of First Amended Joint Plan of Reorganization* (Dkt. 21775) (filed 05/20/2009).<br><br>*Phase II Trial Brief of The Scotts Company LLC in Support of its Objection to Confirmation of First Amended Joint Plan of Reorganization (Exhibits A)* (Dkt. 22425) (filed 07/13/2009). | *See* Exhibit A to Debtors’ Motion for an Order Approving the Settlement Agreement by and between W. R. Grace & Co., *et al*. and the Scotts Company at ¶ 19 (Dkt. 22735) (filed 08/08/2009) (The Settlement Agreement removes Scotts as an objector to confirmation of the Plan). | Scotts is a named defendant in several state court actions alleging asbestos related liability based on a product sold to Scotts by the Debtors. As such, Scotts alleges that it has and may in the future have claims for indemnification by the Debtors and filed a proof of claim for such indemnification. Under the Plan, Scotts’ claims would be enjoined and |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| *Pre-Trial Submission of The Scotts Company LLC In Connection With Phase II Confirmation Hearing* (Dkt. 22522) (07/20/2009). | *See* Order Pursuant to Sections 105, 363, 1007 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement by and between W. R. Grace & Co., et al. and The Scotts Company LLC (Dkt. 23203) (entered 09/09/2009). | channeled to the Asbestos PI Trust.  Scotts objected on various grounds to treatment of its claims.  To avoid protracted litigation, the Debtors entered into a Settlement Agreement with Scotts, which provides, among other things, that: (1) the Trust shall pay Scotts $1.8 million when the Plan goes effective; (2) any claim by Scotts for indemnification or contribution from the Debtors shall be treated as a Class 6 Claim and channeled to the Trust; and (3) Scotts will release all rights to certain of the Debtors' insurance policies; (4) the Debtors and Scotts agree to a mutual release from any and all claims; and (5) Scotts agreed to withdraw its Plan objections. |
| **St. Paul Companies ("<u>Travelers</u>")** | | |
| *Limited Objection and Reservation of Rights of the St. Paul Companies to the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009* (Dkt. 21876) (filed 05/27/2009). | *See* Exhibit A to Motion of the Debtors for Entry of an Order Approving Stipulation Regarding Treatment of Certain Claims of the St. Paul Companies, Inc., Travelers Casualty and Surety Company of America and Certain of Their Affiliates an Subsidiaries Under the Plan filed by W. R. Grace & Co., et. al. at 3 (Dkt. 22745) (filed 08/11/2009) ("The Debtors shall submit this Stipulation to the Bankruptcy Court for approval.  Upon approval by the Bankruptcy Court, the Objection shall be deemed satisfied in accordance with the terms hereof."). *See* Order Approving Stipulation Regarding Treatment of Certain Claims of the St. Paul Companies, Inc., Travelers Casualty and Surety | Travelers sought and received assurance in the Stipulation that the Plan provides that Travelers is unimpaired in connection with any claims resulting from the Operating Bonds, and that the liability and obligations of the Reorganized Debtors pursuant to the Operating Bonds and GCIs shall be assumed by the Reorganized Debtors and any cure amounts paid on the date when the Debtors' plan goes effective.  As a result, Travelers withdrew their Plan objection. |

17

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| | Company of America and Certain of their Affiliates and Subsidiaries Under the Plan (Dkt. 23202) (entered 09/09/2009). | |
| **Travelers Casualty and Surety Company ("Travelers Casualty")** | | |
| *Travelers Casualty and Surety Company's Final Objections to Confirmation of First Amended Joint Plan Reorganization Dated February 27, 2009* (Dkt. 21796) (filed under seal 05/20/2009).<br><br>*Travelers Casualty and Surety Company's Phase II Trial Brief Objection to Confirmation of First Amended Joint Plan of Reorganization dated February 27, 2009* (Dkt. 22420) (filed under seal 07/13/2009). | *See* Exhibit A to Debtors' Motion Pursuant to Sections 105, 363, 1007 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure for an Order Approving the Agreement Amending and Restating the Asbestos Settlement Agreement with the Aetna Casualty and Surety Company (Dkt. 23235) (filed 09/14/2009) ("Upon the Approval Order becoming a Final Order, Travelers (1) shall withdraw all of its objections to the Joint Plan of Reorganization . . . [and] to confirmation of the Joint Plan of Reorganization . . . .").<br><br>*See* Order Pursuant to Sections 105, 363, 1007 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure Approving the Agreement Amending and Restating the Asbestos Settlement Agreement with the Aetna Casualty and Surety Company (Dkt. 23485) (entered 10/13/2009). | The coverage dispute was resolved with payments and releases as provided in the settlement agreement.  The Plan Proponents have listed the settlement agreement on Exhibit 5 as an Asbestos Insurance Settlement Agreement and thus, if the Plan is confirmed, the insurer would have section 524(g) protection as provided in the settlement agreement.  The insurer agreed to withdraw all objections to confirmation upon the approval order becoming a final order, and the approval order is now a final order. |
| **Texas Comptroller** | | |
| *Texas Comptroller's Objection to First Amended Joint Plan of Reorganization at ¶ 1* (Dkt. 21291) (filed 04/16/2009) (Art. 8.1 of the | The Plan does not enjoin the Texas Comptroller's post-petition setoff rights.  This matter has been resolved and Texas has agreed | No change to Plan necessary. |

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| Plan attempts to enjoin setoff rights of taxing authorities when the state should be able to exercise setoff under state law in order to recover admin claim by applying any post-petition refund claims held by the Debtors.). | to drop its objection. | |
| **United States Trustee** | | |
| *Acting United States Trustee's Objection to the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimant's Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009* (Dkt. 21797) (filed 05/20/2009).<br><br>*Acting United States Trustee's Pre-Trial Submission Related to Phase II Confirmation Hearing* (Dkt. 22529) (filed 07/20/2009). | *See* 10/14/2009 Revised Tr. 148-149 (Freedman) ("[A]ll objections of the United States Trustee have been resolved by modifications to the plan that address those objections . . . .").<br><br>*See* Notice of First Set of Modifications to Joint Plan of Reorganization at ¶(k) (Dkt. 23177) (filed 09/04/2009) ("Sections 8.8.7, 8.8.8, and 11.9 relating to releases and exculpation have been amended to address the objections of the U.S. Trustee regarding the scope of those sections, thereby resolving all of the U.S. Trustee's objections to the Plan."). | The U.S. Trustee objected to the scope of the releases and the exculpation provision in §§ 8.8.7, 8.8.8, and 11.9 of the Plan, and the Plan language was modified to satisfy those objections. |

19

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| **Zurich Insurance Company and Zurich International (Bermuda) Ltd. ("<u>Zurich</u>")** | | |
| *Zurich Insurance Company and Zurich International (Bermuda) Ltd.'s Objection to First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., The Official Committee of Asbestos Personal Injury Claimants, The Asbestos PI Future Claimant's Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009* (Dkt. 21764) (filed 05/20/2009).

*Joinder Of Zurich Insurance Company And Zurich International (Bermuda) Ltd. To The Phase I Trial Brief For CNA Companies . . .* (Dkt. 21939) (filed 06/01/2009).

*Zurich Insurance Company and Zurich International (Bermuda) Ltd.'s Brief In Support of its Phase II Objections . . . Dated February 27, 2009* (Dkt. 22413) (filed 07/13/2009).

*Pre-Trial Submission of Zurich Insurance Company And Zurich International (Bermuda) Ltd.* (Dkt. 22535) (filed 07/20/2009). | *See* Exhibit A to Debtors' Motion Pursuant to Sections 105, 363, 1007 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement Between W. R. Grace & Co. and Zurich at 13-14 (Dkt. 23736) (filed 11/11/2009) ("Upon the Approval Order becoming a Final Order, Zurich (1) shall withdraw all its objections to the Joint Plan of Reorganziation . . . [and] to confirmation of the Joint Plan of Reorganization.").

Order Pursuant to Sections 105, 363, 1007 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement Between W. R. Grace & Co. and Zurich (Dkt. 24018) (12/17/2009). | The coverage dispute was resolved with payments and releases as provided in the settlement agreement. The Plan Proponents have listed the settlement agreement on Exhibit 5 as an Asbestos Insurance Settlement Agreement and thus, if the Plan is confirmed, the insurer would have section 524(g) protection as provided in the settlement agreement. The insurer agreed to withdraw all objections to confirmation upon the approval order becoming a final order, and the approval order is now a final order. |

20

| Objection | Settlement Agreement or Evidence of Withdrawal of Objections | |
|---|---|---|
| *Joinder of Zurich Insurance Company and Zurich International (Bermuda) Ltd. to the Phase II Post-Trial Brief for CNA Companies and in support of Their Phase II Objection to Confirmation of the First Amended Joint Plan of Reorganization* (Dkt. No. 23646) (filed 11/02/2009). | | See p. 20 above. |

## <u>Appendix B</u>

## <u>Summary of Remaining Confirmation Objections</u>

1. **Good Faith: § 1129(a)(3)**
   - Bank Lenders/Creditors' Committee (Objection Chart at 1).
   - AMH (Objection Chart at 1).
   - MCC (Objection Chart at 2).
   - Montana (Objection Chart at 3).
   - The Crown (Objection Chart at 3).
2. **Feasibility: § 1129(a)(11)**
   - AMH (Objection Chart at 4, 5).
   - Montana (Objection Chart at 6).
3. **Best Interests: § 1129(a)(7)**
   - Libby (Objection Chart at 6, 8).
   - Bank Lenders/Creditors' Committee (Objection Chart at 9, 10).
4. **Classification: § 1122(a)**
   - Libby (Objection Chart at 11).
   - MCC (Objection Chart at 12).
   - BNSF (Objection Chart at 12).
   - Montana (Objection Chart at 12).
   - Bank Lenders/Creditors' Committee (Objection Chart at 13).
   - The Crown (Objection Chart at 12).
5. **Equal Treatment: § 1123(a)(4)**
   - Libby (Objection Chart at 14, 19, 20).
   - Montana (Objection Chart at 16, 17, 18).
   - CNA (Objection Chart at 17, 18).
   - Garlock (Objection Chart at 17).
   - AMH (Objection Chart at 17).
   - MCC (Objection Chart at 18).
   - BNSF (Objection Chart at 18, 21).
   - The Crown (Objection Chart at 16).
6. **TAC Objections**
   - CNA (Objection Chart at 21).
   - Garlock (Objection Chart at 21, 22).
   - Montana (Objection Chart at 21).

**7. Insurance Neutrality**

- No pending objections.

**8. Insurance Company Standing**

- CNA (Objection Chart at 25, 26).

**9. Anti-Assignment Provisions of Insurance Policies**

- CNA (Objection Chart at 27, 28).
- GEICO/Republic (Objection Chart at 27, 28).
- AXA (Objection Chart at 27).
- Federal (Objection Chart at 27).

**10. Asbestos Insurance Reimbursement Agreement Issues**

- CNA (Objection Chart at 29, 30).
- Hartford (Objection Chart at 29, 31).

**11. Exculpatory Clauses and Releases**

- AMH (Objection Chart at 32, 34, 36).
- Libby (Objection Chart at 32, 34, 36).
- AXA (Objection Chart at 32, 33, 36).
- MCC (Objection Chart at 32, 36, 37).
- CNA (Objection Chart at 35, 36).
- Federal (Objection Chart at 36).

**12. Successor Claims Injunction under §105(a).**

- No pending objections.

**13. Impairment: § 1124(1).**

- Bank Lenders/Creditors' Committee (Objection Chart at 43, 48).
- AMH (Objection Chart at 49).

**14. Voting: § 1129(a)(8).**

- See *Miscellaneous Objections* (Objection Chart at 69).

**15. Fair and Equitable: § 1129(b).**

- Bank Lenders/Creditors' Committee (Objection Chart at 50, 51).
- Montana (Objection Chart at 50).
- MCC (Objection Chart at 51).

**16. Absolute Priority Rule: § 1129(b)**

- Montana (Objection Chart at 52).
- MCC (Objection Chart at 52).
- BNSF (Objection Chart at 52).
- Bank Lenders/Creditors' Committee (Objection Chart at 53).
- The Crown (Objection Chart at 52).

2

**17. Adequate Means for Implementation: § 1123(a)(5)**

- See *Scope of Injunctions* (Objection Chart at 66).

**18. Disclosure of Insiders: § 1129(a)(5)**

- No pending objections.

**19. Compliance with Title 11: § 1129(a)(1)**

- AMH (Objection Chart at 55).
- Bank Lenders/Creditors' Committee (Objection Chart at 55).
- CNA (Objection Chart at 55).
- GEICO/Republic (Objection Chart at 55).
- Montana (Objection Chart at 55).

**20. Trust Requirements: § 524(g)(2)(B)(i)**

- AMH (Objection Chart at 56, 57).
- Montana (Objection Chart at 56).
- The Crown (Objection Chart at 56).

**21. Funding by Securities and Future Obligations: § 524(g)(2)(B)(i)(II)**

- CNA Objection (Objection Chart at 57).

**22. Trust Ownership in the Debtor: § 524(g)(2)(B)(i)(III)**

- CNA (Objection Chart at 58, 59).

**23. Future Demands Likely: § 524(g)(2)(B)(ii)(I)**

- AMH (Objection Chart at 59).

**24. Future Demands Threaten Equitable Claims Treatment: § 524(g)(2)(B)(ii)(III)**

- AMH (Objection Chart at 59).

**25. Present and Future Claims Demands Will be Treated Similarly: § 524(g)(2)(B)(ii)(V)**

- Montana (Objection Chart at 60).
- Garlock (Objection Chart at 60, 61).
- MCC (Objection Chart at 60).
- CNA (Objection Chart at 60).
- AMH (Objection Chart at 61).
- The Crown (Objection Chart at 60).

**26. Third Party Protection: § 524(g)(4)(A)(ii)**

- No pending objections.

**27. Future Claimants Representative Required: § 524(g)(4)(B)(i)**

- Garlock (Objection Chart at 63).

**28. Injunction of Future Demands is Fair and Equitable: § 524(g)(4)(B)(ii)**

- Garlock (Objection Chart at 63, 64).
- Libby (Objection Chart at 64, 65).

3

- Montana (Objection Chart at 65).
- The Crown (Objection Chart at 65).

**29. Scope of Injunctions: § 524(g); § 1123**

- BNSF (Objection Chart at 66).
- CNA (Objection Chart at 66).

**30. Asbestos Insurance Entity Injunction under § 105(a)**

- Libby (Objection Chart at 67).

**31. § 524(g)(2)(B)(ii)(IV)(bb)**

- AMH (Objection Chart at 68).

**32. Miscellaneous Objections**

- AMH (Objection Chart at 68, 69).
- Pro se ZAI Claimant (Objection Chart at 70).
- CNA (Objection Chart at 70, 71).
- Libby (Objection Chart at 72).
- TYCO/Covidien (Objection Chart at 73).
- Creditors' Committee (Objection Chart at 73).
- The Crown (Objection Chart at 74).