IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO., *et al.*¹** | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |
| | ) | |
| | ) | |
| | ) | |


EXHIBIT 32 TO EXHIBIT BOOK
**STOCK TRADING RESTRICTIONS TERM SHEET**

**EXHIBIT 32**

Attached.

---

¹ The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Term Sheet for Proposed Trading Restrictions
## on Reorganized WR Grace Common Stock

Reorganized WR Grace's ("Grace") Restated Certificate of Incorporation will provide:

1. No tax restrictions on trading (either buying or selling) after emergence from bankruptcy other than as provided herein.

2. In the event that the following event occurs, Grace's Board of Directors shall meet on an expedited basis to determine whether to impose trading restrictions on transfers of Grace equity:

    a. At least 25 percentage points of "owner shift" have occurred with respect to Grace equity during the immediately preceding three-year period for purposes of Section 382 of the Internal Revenue Code and the Treasury regulations thereunder (collectively, "Section 382") since Grace's most recent "ownership change" (the "Testing Period") as reasonably determined by Grace (in consultation with outside counsel).

In determining whether 25 percentage points of "owner shift" have occurred during the Testing Period, it shall be presumed that at least 12.5 percentage points of "owner shift" have occurred as a result of the issuance of warrants (the "Warrants") to the WRG Asbestos PI Trust (the "Trust") pursuant to the Warrant Agreement dated as of the Effective Date. The actual exercise of such warrants shall then be disregarded for purposes of determining whether 25 percentage points of "owner shift" has occurred. To the extent that the Trust has exercised a portion of its Warrants, appropriate adjustments shall be made in the presumption that at least 12.5 percentage points of "owner shift" have occurred. To the extent that the Trust has exercised all of its Warrants, the presumption of this paragraph shall be eliminated.

3. The decision by Grace's Board of Directors to impose trading restrictions will require a vote by 2/3 of such Directors based upon the advice of tax counsel experienced in matters regarding Section 382. Grace shall promptly announce the imposition of such restrictions by means of a press release and the filing of an 8-K. The decision by Grace's Board of Directors to remove trading restrictions shall require only a majority vote of such Directors.

4. If Grace's Board of Directors votes to impose restrictions, the principal terms of such restrictions will be:

    a. Any acquisition of stock by a person or entity who is not a 5% shareholder of Grace will be null and void ab initio as to the purchaser to the extent such acquisition causes such person or entity to become a 5% shareholder, unless the acquisition of such stock (i) has been approved by a majority vote of Grace's Board of

Directors, (ii) will not result in an increase in an "owner shift" for purposes of Section 382 in excess of any "owner shift" that would have occurred if the seller had sold the same amount of stock in the market (e.g., because the stock is purchased from another 5% shareholder whose stock acquisition had caused an owner shift), (iii) is the result of the exercise by the Trust of the Warrants (the "Warrant Stock") or (iv) is the result of any stock acquisition by the Trust, the Asbestos PD Trust, or both. Clause (iii) and (iv) constitute a "Trust Permitted Acquisition", and together with clauses (i) and (ii) above, each a "Permitted Acquisition".

     b.    Any person or entity that is a 5% shareholder of Grace shall not be permitted to acquire any additional stock of Grace without the consent of a majority of Grace's Board of Directors, unless the acquisition is a Permitted Acquisition.

Any shareholder seeking to use the "Permitted Acquisition" exception in the case of 4(a) or (b) above (other than in respect of a Trust Permitted Acquisition) shall, at the request of Grace, provide at its own expense either (i) a legal opinion reasonably acceptable to Grace to the effect that such acquisition will qualify as a Permitted Acquisition or (ii) a representation reasonably acceptable to Grace, establishing that the acquisition will qualify as a Permitted Acquisition.

     c.    Any person or entity that holds more than 5% of Grace's stock, other than as a result of a Trust Permitted Acquisition, shall not be permitted to sell such stock, subject to the following two exceptions:

     (i) There shall be no restriction on the ability of any person or entity to dispose of any Grace stock to the extent that the amount of stock sold by such person or entity is equal to or less than the amount of stock held by such shareholder on the Effective Date of Grace's bankruptcy.

     (ii) Any person or entity holding 9.99% or less of the outstanding Grace stock by value shall be permitted to sell up to 5 percentage points of such stock. Beginning two business days after such person or entity owns less than 5% of Grace's stock by value, such person or entity shall be permitted to sell the rest of such stock.

     d.    Grace will announce by press release and 8-K if its Board of Directors shall determine that trading restrictions are no longer required. However, any such trading restrictions shall expire automatically if the total amount of "owner shift" during the current Testing Period shall be less than 20 percentage points for purposes of Code Section 382.

     e.    Not withstanding anything to the contrary contained herein, no restrictions shall be imposed on the acquisition or sale of Grace stock by the Trust or the Asbestos PD Trust or the ability of any person to acquire any or all of the Warrant Stock or any other Grace stock from the Trust and/or the Asbestos PD Trust to the

extent the aforementioned Warrant Stock or Grace stock is acquired by the Trust or the Asbestos PD Trust from Grace..

5. All shareholders that have filed or would be required to file a Form 13D or 13G with the Securities and Exchange Commission shall be required to provide reasonable information to Grace regarding such shareholder's ownership of Grace stock, including the dates of the acquisition and disposition of such stock and the amounts of such acquisitions and dispositions, to the extent such information is reasonably requested by Grace and such information is not readily available through the Form 13D or 13G. Such information shall be provided within five business days of Grace's request, and shall be subject to standard confidentiality provisions. In determining whether any information requested by Grace is reasonable, any such information shall be reasonably necessary only to the extent such information is relevant to Grace in determining the level of owner shift that has or will occur for purposes of Section 382.

6. The restrictions described herein, once in effect, shall be subject to the standard rules for corporations emerging from bankruptcy, including that any acquisitions of stock in violation of such restrictions shall be null and void ab initio without any action being taken by Grace

(a) Any trading restrictions imposed by the Board shall automatically expire on (i) the second anniversary of the imposition of such restrictions, subject to the ability of the Board to impose new restrictions by an affirmative vote of the Board pursuant to Paragraph 3 above or (ii) the date on which the amount of "owner shift" for purposes of Section 382 during the Testing Period is less than 20 percentage points.

(b) The provisions of this Term Sheet, as reflected in Grace's Restated Certificate of Incorporation, shall automatically expire on the date that is three years after the Effective Date of Grace's bankruptcy; provided, however, that Grace's Board shall be permitted to extend such provisions for additional three-year periods upon the affirmative 2/3 vote of such Board.

7. Terms used herein are intended to have the meanings ascribed to them under Section 382 and the Plan and shall be construed accordingly.