# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made by and between W. R. Grace & Co. (hereinafter referred to as "Grace"), on behalf of itself and the Grace Group, and North Star Reinsurance Corporation (hereinafter referred to as "North Star") (collectively "the Parties").

### WITNESSED THAT:

WHEREAS, North Star issued a policy of insurance that provides, or is alleged to provide, liability insurance coverage to Grace; and

WHEREAS, claims have been asserted against Grace alleging injury due to exposure to asbestos and asbestos-containing materials ("Asbestos-Related Claims") and Grace has incurred certain liabilities, expenses and losses arising out of such Asbestos-Related Claims; and

WHEREAS, Grace has asserted rights to insurance coverage with respect to Asbestos-Related Claims pursuant to a policy of insurance issued by North Star to Grace ("Subject Policy"), and disputes have arisen between Grace and North Star regarding the Parties' respective rights and obligations under the Subject Policy; and

WHEREAS, on or about April 2, 2001, W. R. Grace & Co., W. R. Grace & Co-Conn., and certain other debtors filed reorganization cases pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, jointly administered as Case No. 01-1139 (JKF), *et seq.* (collectively, the "Bankruptcy Case"), and Grace and such other debtors continue to operate their businesses as debtors and debtors-in-possession; and

WHEREAS, Grace anticipates that a plan of reorganization will be confirmed by

the Bankruptcy Court in the Bankruptcy Case and that the plan will provide for the establishment of one or more trusts pursuant to Section 524(g) of the Bankruptcy Code to process and pay Asbestos-Related Claims involving Grace; and

WHEREAS, in consideration of certain monetary payments and other consideration as more fully set forth herein, the Parties intend to adopt, by way of compromise, and without (i) prejudice to or waiver of their respective positions in other matters, (ii) trial or adjudication of any issues of fact or law, or (iii) North Star's admission of liability or responsibility under the Subject Policy, a full and final settlement that releases and terminates all rights, obligations and liabilities (if any) that the Parties may owe one another under the Subject Policy.

## AGREEMENTS:

NOW, THEREFORE, in full consideration of the foregoing and of the mutual promises and covenants herein contained, and intending to be legally bound hereby, subject to the entry of the Approval Order and subject to the terms and conditions set forth herein, the Parties hereby agree as follows:

## I.    Definitions

The following definitions apply to the capitalized terms wherever those terms appear throughout this Agreement or in any attachments hereto. Capitalized terms in the prefatory paragraph, recitals, this Definitions section and in the sections below have the meanings ascribed to them therein to the extent they are not otherwise defined in this Definitions section. Capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in the Joint Plan of Reorganization (as defined below). Each defined term stated in a singular form includes the plural form, each defined term stated in plural form includes the singular form, and each defined term stated in the masculine, feminine or neuter form includes

each of the masculine, feminine and neuter forms. The word "including" means "including but not limited to."

A.    Approval Order: "Approval Order" means an order of the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, in form and substance satisfactory to the Parties, approving this Agreement and the compromise and settlement memorialized herein between and among the Parties.

B.    Asbestos PI Claims: "Asbestos PI Claims" has the meaning set forth in the Joint Plan of Reorganization.

C.    Bankruptcy Court: "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware and, to the extent it exercises jurisdiction over the Bankruptcy Case, the United States District Court for the District of Delaware.

D.    Business Day: "Business Day" means any day that is not a Saturday, a Sunday or a federal holiday in the United States of America.

E.    Claim: "Claim" means:

1.    "Claim" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. Section 101(5);

2.    "Demand" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. Section 524(g)(5); and

3.    any claim (whether past, present or future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, direct or indirect, matured or unmatured, liquidated or unliquidated, direct or consequential, and whether in law, equity, admiralty or otherwise), assertion of right, complaint, cross-complaint, counterclaim, affirmative defense, writ,

demand, inquiry, request, directive, obligation, suit, lawsuit, action, cause of action, administrative proceeding, governmental claim or action, order, judgment, settlement, mediation, arbitration, lien and any other assertion of liability of any kind.

F.   Committee: "Committee" means the Official Committee of Asbestos Personal Injury Claimants in the Bankruptcy Case.

G.   Confirmation Order: "Confirmation Order" means an order entered by the Bankruptcy Court in the Bankruptcy Case confirming the Joint Plan of Reorganization, together with any order of the District Court issued pursuant to Section 524(g)(3)(A) of the Bankruptcy Code confirming or affirming such order.

H.   District Court: The term "District Court" means the United States District Court for the District of Delaware.

I.   Effective Date: The term "Effective Date" has the meaning set forth in the Joint Plan of Reorganization.

J.   Entity: The term "Entity" means any individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, including the Trust as defined in Section I.T. herein, unincorporated organization, federal, state, local or foreign government or any political subdivision thereof, or other person or entity.

K.   Execution Date: The term "Execution Date" means the earliest date on which this Agreement has been signed by all of the Parties.

L.   Final Order: "Final Order" means an order or judgment of the Bankruptcy Court, the District Court or other court of competent jurisdiction, as entered on the

docket in the Bankruptcy Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or has resulted in no modification of such order.

M.    Futures Representative:  "Futures Representative" means David Austern, the Asbestos PI Future Claimants' Representative appointed, for each Debtor, by Order of the Bankruptcy Court dated May 24, 2004, and any successor to him.

N.    Grace: "Grace" means W. R. Grace & Co.

O.    Grace Group:  "Grace Group" means Grace, the past and present subsidiaries and affiliates of Grace, the predecessors and successors of such subsidiaries and affiliates, the directors, officers, agents and employees of Grace and of such subsidiaries and affiliates, and any other Entity that was insured under the Subject Policy and on whose behalf Grace has the power to release Claims under the Subject Policy.

P.    Joint Plan of Reorganization:  "Joint Plan of Reorganization" means the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury

Claimants, the Asbestos PI Future Claimants' Representative and the Official Committee of Equity Security Holders Dated February 27, 2009, including all exhibits thereto, as such plan has been and may be modified from time to time.

Q.   North Star: "North Star" means North Star Reinsurance Corporation.

R.   Subject Policy: "Subject Policy" means the insurance policy number NXS12398 issued by North Star to Grace and/or one or more members of the Grace Group for the policy period July 17, 1974 to June 1, 1975.

S.   Trigger Date: The term "Trigger Date" means the last date upon which all of the following have occurred, provided that this Agreement has not previously become null and void pursuant to its terms:

1.   The Approval Order becomes a Final Order;

2.   The Confirmation Order becomes a Final Order; and

3.   The Effective Date occurs.

T.   Trust: "Trust" means the "Asbestos PI Trust" as defined in the Joint Plan of Reorganization, or such other trust as may be established under Section 524(g) of the Bankruptcy Code to process and pay Asbestos PI Claims pursuant to a plan of reorganization filed by Grace, the Committee and the Futures Representative.

## II.   Payment of the Settlement Amount

A.   Within ten (10) days after written notice of the occurrence of the Trigger Date, North Star shall pay to the Trust the sum of Two Million United States Dollars ($2,000,000.00) (the "Settlement Amount") in immediately available funds. The Parties agree that payment of the Settlement Amount to the Trust represents a reasonable compromise of the net present value of the limits of the Subject Policy that would otherwise be paid out for Asbestos PI Claims, and fully and properly exhausts all limits of liability, including without limitation all per-occurrence

and aggregate limits of the Subject Policy.

      B.     Payment of the Settlement Amount to the Trust shall be made in accordance with written instructions provided to North Star by the Trust.

## III.   Releases

      A.     <u>Release by Grace and the Trust</u>

          1.    Upon the Trust's receipt of the Settlement Amount in accordance with Section II. of this Agreement, Grace, on behalf of itself and, to the extent it has the power to bind them, the Grace Group, and the Trust hereby release, remise, covenant not to sue and forever discharge North Star along with its parents, subsidiaries, divisions and affiliates, and the directors, officers, agents and employees of North Star in their capacities as such, with respect to:

               a.    all Claims for insurance coverage and/or other obligations under, based upon or arising out of the Subject Policy; and

               b.    any Claim based on or arising out of any alleged act, omission, representation or conduct of any sort by North Star in connection with the Claims released in Section III.A.1.a. above, including but not limited to Claims alleging bad faith, breach of an implied warranty of good faith and fair dealing or unfair claims practices, whether under statute or common law.

          2.    GRACE AND THE TRUST ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH, THE CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER

CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.   GRACE AND THE TRUST EXPRESSLY ASSUME THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES OR THINGS MAY HAVE OCCURRED THAT THEY DO NOT KNOW OR DO NOT SUSPECT TO EXIST.

B.   <u>Release by North Star</u>

    1.   Upon payment of the Settlement Amount in accordance with Section II. of this Agreement, North Star hereby releases, remises, covenants not to sue and forever discharges the Grace Group and the Trust, and the trustees, officers, agents and employees of the Trust in their capacities as such with respect to:

        a.   any Claim and/or other obligations under, based on or arising under the Subject Policy; and

        b.   any Claim based on or arising out of any alleged act, omission, representation or conduct of any sort by Grace or the Trust in connection with the Claims released in Section III.B.1.a. above.

    2.   NORTH STAR ACKNOWLEDGES THAT IT HAS BEEN ADVISED

BY ITS ATTORNEYS CONCERNING, AND IS FAMILIAR WITH, THE CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.   NORTH STAR EXPRESSLY ASSUMES THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES OR THINGS MAY HAVE OCCURRED THAT IT DOES NOT KNOW OR DOES NOT SUSPECT TO EXIST.

C.    No Release of Obligations Under This Agreement

The releases set forth in this Section III.A. and B. do not relieve the Parties of any of their obligations under this Agreement.

D.    Upon the Trust's receipt of payment of the Settlement Amount in accordance with Section II. of this Agreement, the Parties hereto intend to reserve no rights or benefits whatsoever under or in connection with the Subject Policy, and any and all rights, duties, responsibilities and obligations of the Parties created by or in connection with the Subject Policy are terminated.  The releases contained in this Section III., together with the sale described in Section V., are intended to operate as if the Subject Policy had never been issued by North Star.

IV.    **Release of Subrogation and Contribution Claims and Judgment Reduction Clause**

      A.    Payments Made Under This Agreement

          North Star shall not seek reimbursement of any portion of the Settlement Amount, whether by way of a Claim for contribution, subrogation, indemnification or otherwise, from anyone other than North Star's reinsurers or retrocessionaires in their capacity as such. Notwithstanding the foregoing, if a third party pursues a contribution, subrogation, indemnification or similar Claim against North Star relating to the Subject Policy, then North Star shall be free to assert such a Claim against such third party, to the extent permitted by the Joint Plan of Reorganization. To the extent that North Star recovers any amount from such third party, the net proceeds of such recovery (after any payment made by North Star to such third party on its Claim and after North Star is reimbursed from such proceeds for its fees, costs and expenses incurred in prosecuting or defending such Claims) shall be paid by North Star promptly to the Trust. Grace and the Trust shall use reasonable best efforts to obtain from all insurers with which they settle agreements similar to those contained in this Section IV.A.

      B.    Payments Received From Other Insurers

          Following the Trust's receipt of the Settlement Amount in accordance with Section II. of this Agreement, in the event that:

          1.    Grace or the Trust, as applicable, and/or any other Entity becomes entitled to receive a payment from one or more of the insurers other than North Star for any Claims that have been remised, released, acquitted and forever discharged as against North Star pursuant to this Agreement, and

          2.    As a result of such other insurer's obligation to pay described in Section IV.B.1. above, such insurer either:

a.    enters into a settlement with North Star, which settlement has been consented to by Grace or the Trust, as applicable, and any other Entity (as applicable), requiring North Star to reimburse some or all of the payment made or to be made by such insurer; or

b.    obtains a final, non-appealable judicial or quasi-judicial determination or award entitling such insurer to obtain a sum certain from North Star for contribution, subrogation or indemnification or other similar Claim, against North Star for its alleged share or equitable share, or to enforce subrogation rights, if any, relating to such payment referenced in Section IV.B.1. above,

the Entity entitled to receive such payment shall voluntarily reduce the amount of payment to be received by it (referred to in Section IV.B.1. above) by the amount necessary to reduce or eliminate such settlement, determination or award against North Star (referred to in Section IV.B.2. above).

To ensure that such a reduction is accomplished, North Star shall be entitled to assert this Section IV. as a defense to any action against it for any such portion of the determination or award against North Star (referred to in Section IV.B.2. above) and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect North Star from any liability for the determination or award. Grace or the Trust, as applicable, and/or any other Entity (as applicable) agrees that in any proceeding against other insurers in which Grace or the Trust, as applicable, and/or any other Entity makes a Claim for insurance rights or benefits for any Claim that may give rise to the events referenced in Section IV.B.1. above, it will provide notice to North Star of such Claim within thirty (30) days

of the time Grace or the Trust, as applicable, first becomes aware that such Claim is reasonably likely to result in a Claim against North Star and shall consent to North Star's intervention in any such proceeding to the extent that North Star seeks to intervene to effectuate the intent of this Section IV.

V.    **Bankruptcy-Related Obligations**

A.    Committee and Futures Representative Approval

Grace will make a good faith effort to obtain written approval of this Agreement and the releases contained herein from the Committee and the Futures Representative within thirty (30) days of the Execution Date.

B.    Approval Motion

Promptly following the Execution Date, Grace will prepare and file a motion to approve this Agreement with the Bankruptcy Court, which motion shall be in form and substance reasonably satisfactory to North Star. Grace will use its reasonable best efforts promptly to obtain entry of the Approval Order, and promptly to obtain entry of the Approval Order as a Final Order. North Star, at its own expense, will cooperate with Grace in obtaining the Approval Order.

C.    Approval Order

Grace will use its reasonable best efforts to cause the Court to enter an order providing, among other things:

1.    That the terms of this Agreement are approved in their entirety, and that Grace is authorized to take all actions necessary to implement the terms of the Agreement;

2.    That the Agreement will be designated an Asbestos Insurance Settlement Agreement, and that North Star will be designated a Settled Asbestos

Insurance Company, with respect to the Subject Policy on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization;

3.     That, upon the Trust's receipt of payment of the Settlement Amount in accordance with Section II. of this Agreement, Grace shall be deemed to have sold, conveyed, assigned, transferred and delivered to North Star, and North Star shall be deemed to have purchased from Grace, all rights, title and interests of Grace in and under the Subject Policy, free and clear of liens, encumbrances and/or interests of any kind or nature whatsoever, under Section 363(f) of the Bankruptcy Code, and that North Star shall be entitled to the protections of Section 363(m) of the Bankruptcy Code; and

4.     That the Trust, upon its creation, will be bound to the provisions of this Agreement with the same force and effect as if the Trust was a Party to this Agreement from the Execution Date.

D.     <u>Designation of North Star as a Settled Asbestos Insurance Company</u>.  Upon the Approval Order becoming a Final Order, Grace shall designate this Agreement as an Asbestos Insurance Settlement Agreement, and North Star as a Settled Asbestos Insurance Company, with respect to the Subject Policy on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization.

E.     <u>Sale Pursuant to Section 363(f)</u>.  Upon the Trust's receipt of payment of the Settlement Amount as provided in Section II. of this Agreement, and without need for further action, Grace shall be deemed to have sold, conveyed, assigned, transferred and delivered to North Star, and North Star shall be deemed to have purchased from Grace, all rights, title and interests of Grace in and under the Subject Policy, free and clear of all liens, encumbrances

and/or interests of any kind or nature whatsoever, to the extent permitted under Section 363(f) of the Bankruptcy Code. The Parties agree that the Settlement Amount is at least equal to the fair value of the Subject Policy.

F.    Trust Bound by Agreement

Upon the Effective Date, the Trust shall be bound by this Agreement as if it had been a Party hereto as of the Execution Date.

G.    No Bankruptcy-Related Activities

Effective upon the Execution Date, North Star (1) shall take no action of any nature (including filing any objection to the Joint Plan of Reorganization and initiating or taking discovery) that may hinder, delay or oppose actions of the Debtors, the Committee and/or the Futures Representative in the Bankruptcy Case; and (2) shall not oppose the entry of a Confirmation Order. Upon the Approval Order becoming a Final Order, North Star expressly consents to the assignment of Asbestos Insurance Rights as provided in the Asbestos Insurance Transfer Agreement, Exhibit 6 to the Joint Plan of Reorganization.

**VI.    Termination of Agreement**

A.    Automatic Termination

After the Execution Date, this Agreement shall terminate upon the occurrence of any of the following events:

1.    The entry of an order by the Bankruptcy Court dismissing the Bankruptcy Case or converting it into a Chapter 7 case;

2.    The entry of an order by the Bankruptcy Court denying approval of this Agreement or the entry of an order by the District Court reversing the Approval Order;

3.    The failure of a Grace plan of reorganization to be confirmed, the failure

of the Confirmation Order to become a Final Order or the failure of the Effective Date to occur, coupled with circumstances that make clear that such events will never occur;

4.    The entry of a Confirmation Order that becomes a Final Order that fails to extend protection to North Star as a Settled Asbestos Insurance Company with respect to the Subject Policy pursuant to the Asbestos PI Channeling Injunction;

5.    The failure of the Committee or the Futures Representative to consent to the Agreement within thirty (30) days of the Execution Date; or

6.    The failure of Grace to designate this Agreement as an Asbestos Insurance Settlement Agreement, and North Star as a Settled Asbestos Insurance Company, with respect to the Subject Policy on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization in accordance with Section V.D. prior to the Confirmation Order becoming a Final Order.

B.    <u>Conditions for Termination by North Star</u>

North Star, at its sole option, may terminate this Agreement and render this Agreement null and void by providing written notice of termination to Grace, the Committee and the Futures Representative within thirty (30) days of the occurrence of any of the below described conditions of termination:

1.    The entry of an Approval Order that becomes a Final Order that fails to approve the sale of the Subject Policy free and clear of all liens, encumbrances or interests of any kind or nature whatsoever pursuant to Section 363(f) of the Bankruptcy Code; or

2.      The confirmation of a Chapter 11 plan of reorganization other than the Joint Plan of Reorganization that materially and adversely affects the interests of North Star under this Agreement.

Failure by North Star to give timely written notice of termination following the occurrence of one of the above conditions of termination shall be deemed a permanent waiver of such condition by North Star.

C.      <u>Effect of Termination</u>

Notwithstanding anything in this Agreement to the contrary, in the event this Agreement terminates, is ineffective and/or is rendered null and void pursuant to this Section VI.:

1.      This Agreement shall be of no further force and effect, and the Parties shall have no further obligations under this Agreement, except the obligations set forth in Section VIII.;

2.      None of the Parties shall be bound by the terms of any Approval Order;

3.      North Star shall not be designated as a Settled Asbestos Insurance Company and shall neither seek nor receive any benefit or protection as a Settled Asbestos Insurance Company under the Joint Plan of Reorganization;

4.      The Parties shall have the rights, defenses and obligations under or with respect to the Subject Policy, or any other agreement between the Parties relating to the Subject Policy, that they would have had absent this Agreement; and

5.      The releases provided in Section III. shall become null and void <u>ab initio</u>.

VII.    **Defense of the Asbestos PI Channeling Injunction**

A.      Following the Trust's receipt of payment of the Settlement Amount in accordance with Section II. of this Agreement, if any Entity asserts against North Star an Asbestos PI Claim based on or arising under the Subject Policy ("North Star Channeling Injunction Claim"), the Trust shall expend reasonable best efforts, at its own expense, to enforce the Asbestos PI Channeling Injunction with respect to the North Star Channeling Injunction Claim and to obtain a ruling that such North Star Channeling Injunction Claim is channeled to the Trust pursuant to the Asbestos PI Channeling Injunction and Bankruptcy Code Section 524(g). In no event, however, shall the Trust be required to expend an amount greater than the Settlement Amount in carrying out its obligation under this Section VII.A. When the Trust has expended an amount equal to the Settlement Amount in defending the application of the Asbestos PI Channeling Injunction to North Star Channeling Injunction Claims, the Trust shall have no further obligation under this Section VII.A. For the avoidance of doubt, this Section VII.A. shall not obligate the Trust to retain counsel to represent North Star or to pay the costs and expenses, including attorneys' fees, associated with such legal, consulting or expert representation as North Star may choose to engage in connection with any Claim against North Star.

B.      North Star shall promptly notify the Trust in writing of any demand, notice, summons or other process received by North Star that North Star reasonably believes is a North Star Channeling Injunction Claim. If the Trust determines that a Claim presented by North Star is not a North Star Channeling Injunction Claim, the Trust shall promptly notify North Star and shall not be required to undertake to defend the application of the Asbestos PI Channeling Injunction as to such Claim. In the event of a dispute as to whether a Claim triggers the Trust's obligations under Section VII.A., the Trust and North Star shall meet and confer to attempt to resolve any such dispute. If they are unable to resolve such dispute through meeting and

conferring, they may litigate the issue before the Bankruptcy Court, or, if the Bankruptcy Court declines to exercise jurisdiction, before any court of competent jurisdiction.    If the Trust undertakes to defend the application of the Asbestos PI Channeling Injunction to a Claim presented by North Star, but a court of competent jurisdiction thereafter determines that the Claim is not an Asbestos PI Claim subject to the Asbestos PI Channeling Injunction and such order becomes a Final Order, the Trust shall have no further obligation to defend the application of the Asbestos PI Channeling Injunction to such Claim.

**VIII.    Confidentiality**

      A.      Settlement negotiations leading up to this Agreement, all information exchanged between the Parties in connection with such negotiations and all related discussions (collectively, "Information") are confidential, shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions, and shall not be disclosed by any Party except as permitted in Section VIII.B. and C. below.

      B.      The Parties may disclose Information as follows:

          1.      The fact that the Parties have entered into this Agreement may be disclosed to any Entity;

          2.      The Information may be disclosed as necessary to obtain an Approval Order from the Bankruptcy Court;

          3.      The Information may be disclosed by order of court, or pursuant to a written agreement of the Parties;

          4.      The Information may be disclosed by North Star to its reinsurers, directly or through intermediaries;

          5.      Grace or the Trust may disclose the Information to other insurers and their

representatives;

6.      The Information may be disclosed to outside auditors or accountants of any Party or to the Internal Revenue Service;

7.      A Party may disclose the Information to its accountants, to its counsel, to underwriters in connection with offerings of securities to be issued by such Party and to counsel for such underwriters; and

8.      The Information may be disclosed in any action brought to enforce the terms of this Agreement;

*provided, however*, that a Party making disclosure of any of the Information pursuant to one of the exceptions set forth in clauses (3) through (7) above shall inform any Entity to which such disclosure is made of the confidential nature of the Information and of the understanding upon which it has been disclosed and shall use reasonable efforts to obtain the agreement of such Entity to hold the Information in confidence.

C.      A Party may describe and/or make reference to this Agreement to the extent that such disclosure is required to comply with any statute, rule or other requirement of any government, governmental agency or other authority.

D.      In the event a court, litigant or governmental body requests or requires disclosure of anything protected by this Section VIII., the Party from whom disclosure is sought shall immediately give written notice to the other Party in order to allow each Party to take such protective steps as may be appropriate.

IX.     **Non-Prejudice and Construction of Agreement**

A.      This Agreement is intended to be and is a commercial accommodation between the Parties hereto and shall not be construed as an admission of coverage under the Subject Policy, nor shall this Agreement or any provision hereof be construed as a waiver, modification

or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Policy.

B.      This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, this Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Entities outside the scope of this Agreement. This Agreement is without prejudice to positions taken by North Star with regard to other insureds, and without prejudice to positions taken by Grace with regard to other insurers. The Parties and the Trust specifically disavow any intention to create rights in third parties under or in relation to this Agreement except as expressly provided herein.

C.      Neither the terms of this Agreement nor its negotiation, its execution or any act in performance of this Agreement shall be invoked by North Star, Grace or the Trust, or their attorneys or agents, in any proceeding for the purpose of attempting to establish or prove the acceptance by North Star, Grace or the Trust of any particular interpretation of any insurance policy with respect to any Claim.

D.      The Parties agree, as an essential and integral part of this Agreement, that this Agreement and the matters contained in this Agreement are not intended to be, nor shall they be, admissible or relevant in any case or proceeding to prove the acceptance by any Party hereto of any particular theory of coverage, or as evidence of any obligation that any Party hereto has or may have to anyone other than to one another.

E.      This Agreement is the jointly drafted product of arms'-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed. In particular, with respect to interpretation of this Agreement, the Parties waive any benefits from the principle of *contra proferentem* or other principles which would result in

the interpretation of any ambiguities against insurers.  No Party shall be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement shall be construed against any Party on the basis of the Party's identity as an insurance company or as the drafter of any part of this Agreement.

## X.    Modification

This Agreement may be amended, modified, superseded or canceled, and any of the terms hereof may be waived, only by a written instrument which specifically states that it amends, modifies, supersedes or cancels this Agreement, executed by or on behalf of all of the Parties or, in the case of a waiver, by or on behalf of the Party waiving compliance.  The failure of a Party at any time or times to require performance of any provision of this Agreement shall in no manner affect the right at a later time to enforce the same.  No waiver by a Party of any condition, or of any breach of any term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach, or a waiver of any other condition or of any breach of any other term, covenant or warranty.

## XI.    Integration

### A.    Entire Agreement

This Agreement constitutes the entire agreement and understanding among the Parties with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, among the Parties with respect hereto.  Except as expressly set forth in this Agreement, there are no representations, warranties, promises or inducements, whether oral, written, expressed or implied, that in any way affect or condition the validity of this Agreement or alter its terms.

B.    Titles and Captions

Titles and captions contained in this Agreement are inserted only as a matter of convenience and are for reference purposes only. Such titles and captions are intended in no way to define, limit, expand or describe the scope of this Agreement or the intent of any provision hereof.

## XII.    Governing Law

This Agreement shall be governed by, and shall be construed in accordance with, the laws of the State of New York without regard to its choice of law rules. Nothing in this Section XII. shall affect what law would govern the interpretation or application of the Subject Policy.

## XIII.    Representations

Each Party represents and warrants that it has authority to execute this Agreement as its binding and legal obligation (subject, in the case of Grace, to the entry of an Approval Order). Each Party represents and warrants that the person signing this Agreement on its behalf is authorized to execute this Agreement (subject, in the case of Grace, to the entry of an Approval Order).

## XIV.    Execution and Authority

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

## XV.    Right of Review

A.    North Star shall have the right, at its own expense, upon reasonable notice, at a time and place convenient to the Trust, to review records relating to Asbestos PI Claims paid by the Trust solely for the purpose of obtaining reinsurance for any portion of the Settlement Amount or of complying with applicable regulations. The Trust shall have no obligation to

create any new documents or to collect any information in connection with any such review beyond the documents or information ordinarily created or maintained by the Trust, and North Star shall not be permitted to challenge the review, determination or payment of any Asbestos PI Claims by the Trust or the payment of any expenses or costs of the Trust; *provided, however,* that the determination or payment of any Asbestos PI Claim by the Trust shall have no collateral estoppel effect as to North Star with respect to Asbestos PI Claims asserted against North Star by Entities not parties to this Agreement.  This Section XV., and any results of such a review, shall not affect North Star's payment obligations under this Agreement.  Notwithstanding any of the foregoing, the Trust shall not be obligated to provide the Social Security Identification Number of any Asbestos PI Claimant beyond the last four digits.

B.     North Star shall not provide any information, documents, notes or other results of any review undertaken pursuant to Section XV.A. (the "Material") to any other Entity and shall keep any and all such Material confidential, except that North Star may provide such Material to any of its auditors, regulators or reinsurers solely for the purpose of obtaining reinsurance for any portion of the Settlement Amount or of complying with applicable regulations, provided that North Star shall first obtain from such Entities a written pledge (which requirement may be satisfied by transmission of an electronic mail message) to maintain the confidentiality of the Material and not to disclose such Material to any other Entity.  In the event that disclosure of any Material in North Star's possession is sought pursuant to subpoena or other legal process, North Star shall immediately notify the Trust of the request for disclosure and cooperate with the Trust in seeking a protective order regarding the Material.  Upon resolution of all reinsurance issues, North Star shall, at the Trust's option, return or destroy all Material.

## XVI.  Notices

Unless another person is designated, in writing, for receipt of notices hereunder, any and all statements, communications or notices to be provided pursuant to this Agreement shall be deemed to have been duly given if in writing and delivered in person, mailed first-class postage prepaid or by registered or certified mail, or transmitted by facsimile, addressed as follows:

If to Grace:

W. R. Grace & Company
7500 Grace Drive
Columbia, Maryland  21044
Attn:  Secretary
Fax:  (410) 531-4367

with a copy to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York  10022-4611
Attn:  Theodore L. Freedman
Fax:  (212) 446-4900

If to North Star:

North Star Reinsurance Corporation
c/o Berkshire Hathaway, Inc.
120 Long Ridge Road
Stamford, Connecticut  06902
Attn:  Alfred T. Childer
Fax:  (203) 328-6423

with a copy to:

Sedgwick, Detert, Moran & Arnold LLP
One North Wacker Drive, Suite 4200
Chicago, Illinois  60606-2841
Attn:  Michael B. Satz
Fax:  (312) 641-9530

If to the Committee:

Caplin & Drysdale Chartered
One Thomas Circle, NW
Washington, DC 20005
Attn: Peter Lockwood
Fax: (202) 429-3301

and

Caplin & Drysdale Chartered
375 Park Avenue, 35th Floor
New York, New York 10152
Attn: Elihu Inselbuch
Fax: (212) 644-6755

with a copy to:

Anderson Kill & Olick, PC
1251 Avenue of the Americas
New York, New York 10020
Attn: Robert Horkovich
Fax: (212) 278-1733

If to the Futures Representative:

David T. Austern
Asbestos PI Future Claimants'
  Representative
c/o Claims Resolution Management
  Corporation
3110 Fairview Park Drive, Suite 200
Falls Church, Virginia 22042-0683
Fax: (703) 205-6249

with a copy to:

Orrick, Herrington & Sutcliffe LLP
1152 Fifteenth Street, NW
Washington, DC 20005
Attn: Roger Frankel
Fax: (202) 339-8500

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

W. R. GRACE & CO.

By: *Richard C. Finke*

Name: RICHARD C. FINKE

Title: ASSISTANT GENERAL COUNSEL

Date: APRIL 13, 2010

NORTH STAR REINSURANCE CORPORATION

By: *Alfred T Childers*

Name: Alfred T Childers

Title: VICE PRESIDENT

Date: APRIL 14, 2010