UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
IN RE:                       .  Case No.  01-1139 (JKF)
                             .
W.R. GRACE & CO.,            .
et al.,                      .  824 North Market Street
                             .  Wilmington, DE 19801
              Debtors.       .
                             .  April 19, 2010
. . . . . . . . . . . . . .  .  10:37 a.m.
```

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:          Law Offices of Janet S. Baer, P.C.
                          By:  JANET S. BAER, ESQ.
                          70 West Madison, Suite 2100
                          Chicago, IL 60602-4253

                          Kirkland & Ellis, LLP
                          By:  JOHN DONLEY, ESQ.
                          200 East Randolph Drive
                          Chicago, IL  60601

                          Kirkland & Ellis, LLP
                          By:  THEODORE FREEDMAN, ESQ.
                          601 Lexington Avenue
                          New York, NY 10022


Audio Operator:           Ginger Mace

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609)586-2311      Fax No. (609) 587-3599**

2

APPEARANCES (Cont'd.):

For State of Montana        Womble Carlyle Sandridge & Rice
Dept. of Environmental      By:  KEVIN MANGAN ESQ.
Quality:                    222 Delaware Avenue, Suite 1501
                            Wilmington, DE 19801

For Committee of            Campbell & Levine
Asbestos Personal           By:  MARK T. HURFORD, ESQ.
Injury Claimants:           800 North King Street
                            Suite 300
                            Wilmington, DE  19701

For the Unsecured           Stroock & Stroock & Lavan
Creditors' Committee:       By:  KENNETH PASQUALE, ESQ.
                            180 Maiden Lane
                            New York, NY 10038

For the Bank Debt           Landis, Rath & Cobb, LLP
Holders:                    By:  RICHARD COBB, ESQ.
                            919 Market Street, Suite 1800
                            Wilmington, DE  19899

For PD/FCR:                 Law Office of Alan B. Rich
                            By: ALAN B. RICH, ESQ.
                            1201 Main Street
                            Suite 1910, LB 201
                            Dallas, TX

For the PD Committee:       Ferry Joseph & Pearce, P.A.
                            By:  THEODORE TACCONELLI, ESQ.
                            824 Market Street, Suite 19899
                            Wilmington, DE  19899

For the U.S. Trustee:       Office of the U.S. Trustee
                            By:  DAVID KLAUDER, ESQ.
                            844 King Street, Suite 2313
                            Wilmington, DE  19801

For Maryland Casualty:      Connolly Bove Lodge & Hutz LLP
                            By:  JEFFREY WISLER, ESQ.
                            The Nemours Building
                            1007 North Orange Street
                            Wilmington, DE  19801

                            Eckert Seamans Cherin & Mellott, LLC
                            By:  EDWARD J. LONGOSZ II, ESQ.
                            1717 Pennsylvania Avenue, N.W.
                            12th Floor
                            Washington, DC  20006

**J&J COURT TRANSCRIBERS, INC.**

APPEARANCES (Cont'd.):

| | |
|---|---|
| For the UCC: | Duane Morris, LLP<br>By:  RICHARD W. RILEY, ESQ.<br>Suite 1200<br>1100 North Market Street<br>Wilmington, DE  19801-1246 |
| For Canadian ZAI<br>Claimants: | The Hogan Firm<br>By:  DANIEL K. HOGAN, ESQ.<br>1311 Delaware Avenue<br>Wilmington DE  19806 |
| For the Future<br>Claimants<br>Representatives: | Orrick, Herrington & Sutcliffe,<br> LLP<br>By:  ROGER FRANKEL, ESQ.<br>Washington Harbour<br>3050 K Street, N.W.<br>Washington, D.C.  20007 |
| For the Debtors: | Reed Smith, LLP<br>By:  JAMES RESTIVO, ESQ.<br>     TRACI REA, ESQ.<br>435 Sixth Avenue<br>Pittsburgh, PA  15219 |
| For Sealed Air: | Skadden, Arps, Slate, Meagher &<br> Flom, LLP<br>By:  DAVID TURETSKY, ESQ.<br>One Rodney Square<br>Wilmington, DE  19801 |
| For the Debtors: | Pachulski, Stang, Ziehl &Jones<br>By:  KATHLEEN MAKOWSKI, ESQ.<br>919 North Market Street, 17th Floor<br>Wilmington, DE  19899-8705 |
| For the PD Committee: | Speights & Runyan<br>By:  DANIEL SPEIGHTS, ESQ.<br>200 Jackson Avenue, East<br>Hampton, SC  29924 |
| For Travelers Casualty<br>& Surety Co.: | L. JOHN BIRD, ESQ. |
| For BNSF Railway Co.: | Pepper Hamilton LLP<br>By:  LINDA J. CASEY, ESQ.<br>3000 Two Logan Square<br>Eighteenth and Arch Streets<br>Philadelphia, PA  19103-2799 |

**J&J COURT TRANSCRIBERS, INC.**

4

TELEPHONIC APPEARANCES:

For Everest                Marks, O'Neill, O'Brien & Courtney
Reinsurance Co., et al:    LLP
                           By:  MICHAEL F. DUGGAN, ESQ.
                                BRIAN L. KASPRZAK, ESQ.
                           913 North Market Street
                           Suite 800
                           Wilmington, DE  19801

For the United States:     United States Department of Justice
                            Department
                           By:  ELIZABETH YU, ESQ.
                           1425 New York Avenue NW
                           Washington, DC  20530

For Garlock Sealing        Robinson Bradshaw & Hinson, P.A.
Technologies:              By:  RICHARD WORF, ESQ.
                           101 North Tryon Street
                           Suite 1900
                           Charlotte, NC 28246

For Official Committee     Richardson Patrick Westbrook &
of Asbestos Property        Brickman, P.C.
Claimants:                 By:  EDWARD J. WESTBROOK, ESQ.
                           174 East Bay Street
                           Charleston, SC  29401

For Macquarie Bank:        Macquarie Bank
                           By:  CHRIS WARREN

For the Asbestos           Caplin & Drysdale, Chartered
Creditors Committee:       By:  WALTER SLOCOMBE, ESQ.
                           One Thomas Circle, NW
                           Washington, D.C. 20005

For Robert Siegel:         Traub, Lieberman Straus & Shrewsberry
                           By:  ROBERT P. SIEGEL, ESQ.
                           Mid-Westchester Executive Park
                           Seven Skyline Dr.
                           Hawthorne, NY 10532

For AXA Belgium:           Tucker Arensberg, P.C.
                           By:  MICHAEL A. SHINER, ESQ.
                           1500 One PPG Place
                           Pittsburgh, PA  15222

For W.R. Grace:            W.R. Grace
                           By:  MARK SHELNITZ, ESQ.
                           7500 Grace Drive
                           Columbia, MD  21044

**J&J COURT TRANSCRIBERS, INC.**

TELEPHONIC APPEARANCES (Cont'd.):

For Asbestos Property          Scott Law Group
Damage Claimants:              By:  DARRELL SCOTT, ESQ.
                               1001 East Main Street, Suite 500
                               Sevierville, TN  37864

In Pro Per/Pro:                ALEXANDER SANDERS, JR.

For Travelers Casualty         Simpson Thacher & Bartlett
& Surety Co.:                  By:  SAMUEL J. RUBIN, ESQ.
                               425 Lexington Avenue
                               New York, NY 10017-3954

For Grace Certain              Montgomery, McCracken, Walker
Cancer Claimants:               & Rhoads, LLP
                               By:  NATALIE D. RAMSEY, ESQ.
                               123 South Broad Street
                               Philadelphia, PA  19109

For David T. Austern,          Phillips, Goldman & Spence, P.A.
the Future Claimants'          By:  JOHN C. PHILLIPS, ESQ.
Representative:                1200 North Broom Street
                               Wilmington, DE  19806

For Axa Belgium:               Mendes & Mount
                               By:  ANNA R. NEWSOM, ESQ.
                               750 Seventh Avenue
                               New York, NY 10019

For Farallon Capital           Farallon Capital Management
Management:                    By:  MICHAEL LINN

For Asbestos Property          Pryor Cashman, LLP
Damage Claimants:              By:  RICHARD LEVY, ESQ.
                               410 Park Avenue
                               New York, NY  10022

For the Unsecured              Stroock & Stroock & Lavan
Creditors' Committee:          By:  ARLENE KRIEGER ESQ.
                               180 Maiden Lane
                               New York, NY 10038

For the Debtor:                Onex Credit Partners
                               By:  STUART KOVENSKY

**J&J COURT TRANSCRIBERS, INC.**

TELEPHONIC APPEARANCES (Cont'd.):

| | |
|---|---|
| For State of California, Dept. of General Services: | Hahn & Hessen LLP<br>By:  CHRISTINE J. KANG,, ESQ.<br>488 Madison Avenue<br>14th and 15th Floor<br>New York, NY  10022 |
| For Zurich Insurance Co.: | Wiley Rein, LLP<br>By:  RICHARD A. IFFT, ESQ.<br>         KARALEE C. MORELL, ESQ.<br>1776 K Street NW<br>Washington, DC 20006 |
| For Official Committee of Asbestos Personal Injury Claimants: | Anderson Kill & Olick<br>By:  ROBERT M. HORKOVICH, ESQ.<br>1251 Avenue of the Americas<br>New York, NY  10020-1186 |
| For Halcyon: | JOHN GREENE, ESQ. |
| For CNA: | Goodwin Procter, LLP<br>By:  MICHAEL GIANNOTTO, ESQ.<br>         DANIEL GLASBAND, ESQ.<br>Exchange Place<br>Boston, MA  02109-2881 |
| For the Future Claimants Representatives: | Orrick, Herrington & Sutcliffe, LLP<br>By:  DEBRA FELDER, ESQ.<br>Washington Harbour<br>3050 K Street, N.W.<br>Washington, D.C.  20007 |
| For the PD Committee: | Speights & Runyan<br>By:  MARION FAIREY, ESQ.<br>         ALAN RUNYAN, ESQ.<br>200 Jackson Avenue, East<br>Hampton, SC  29924 |
| For Various Claimant Firms: | Stutzman, Bromberg, Esserman & Plifka<br>By:  DAVID J. PARSONS, ESQ.<br>         SANDER L. ESSERMAN, ESQ.<br>2323 Bryan Street, Suite 2200<br>Dallas, TX  75201 |

**J&J COURT TRANSCRIBERS, INC.**

TELEPHONIC APPEARANCES (Cont'd.):

| | |
|---|---|
| For the Debtor: | Kirkland & Ellis, LLP<br>By:  LISA ESAYIAN, ESQ.<br>200 East Randolph Drive<br>Chicago, IL  60601 |
| For Hartford Financial<br>Service Group: | Wilmer Wilmer Cutler Pickering Hale<br> & Dorr, LLP<br>By:  MELANIE R. DRITZ, ESQ.<br>399 Park Avenue<br>New York, NY  10022 |
| For Official Committee<br>of Asbestos Property<br>Damage Claimants: | Dies & Hile, LLP<br>By:  MARTIN DIES, ESQ.<br>1601 Rio Grande, Suite 330<br>Austin, TX  78701 |
| | LECG<br>By:  ALAN MADIAN, ESQ.<br>1725 Eye Street NW, Ste 800<br>Washington, DC,  20006 |
| | Hamilton, Rabinovitz & Alshuler<br>By:  DR. FRANCINE RABINOVITZ<br>26384 Carmel Rancho Lane, Suite 202<br>Carmel, California 93923 |
| For Ford, Marrin,<br>Esposito, Witmeyer<br>& Gleser: | Ford, Marrin, Esposito, Witmeyer &<br> Gleser<br>By:  SHAYNE SPENCER, ESQ.<br>     ELIZABETH DeCRISTOFARO, ESQ.<br>Wall Street Plaza<br>New York, NY  10005 |
| For National Union Fire<br>Insurance Co.: | Zeichner Ellman & Krause, LLP<br>By:  MICHAEL S. DAVIS, ESQ.<br>     ROBERT GUTTMANN, ESQ.<br>575 Lexington Avenue<br>New York, NY  10022 |
| For Fireman's Fund<br>Insurance Co.: | Crowell & Moring LLP<br>By:  LESLIE A. DAVIS, ESQ.<br>     MARK PLEVIN, ESQ.<br>1001 Pennsylvania Avenue, N.W.<br>Washington, DC  20004 |

**J&J COURT TRANSCRIBERS, INC.**

TELEPHONIC APPEARANCES (Cont'd.):

For Allstate Insurance:    Cuyler Burk, LLP
                           By:  ANDREW K. CRAIG, ESQ.
                           Parsippany Corporate Center
                           Four Century Drive
                           Parsippany, NJ  07054

For Scotts Co.:            Vorys, Sater, Seymour & Pease, LLP
                           By:  TIFFANY S. COBB, ESQ.
                           52 East Gay Street
                           Columbus, OH  43215

For Federal Insurance      Cozen O'Connor
Co.:                       By:  JACOB C. COHN, ESQ.
                                IRA ROSENBERG, ESQ.
                           1900 Market Street
                           Philadelphia, PA  19103

For the Libby              Cohn Whitesell & Goldberg, LLP
Claimants:                 By:  DANIEL C. COHN, ESQ.
                                CHRISTOPHER M. CANDON, ESQ.
                           101 Arch Street
                           Boston, MA  02110

For the Bank Lenders:      Paul Weiss Rifkind Wharton &
                             Garrison, LLP
                           By:  KELLIE CAIRNS, ESQ.
                                MARGARET PHILLIPS, ESQ.
                                REBECCA ZUBATY, ESQ.
                                ANDREW N. ROSENBERG, ESQ.
                                SARAH HARNETT, ESQ.
                           1285 Avenue of the Americas
                           New York, NY  10019

For Oliver Butt:           JP Morgan Chase & Co.
                           By:  OLIVER BUTT

For David T. Austern,      Lincoln International, LLC
Future Claimants'          By:  CLAIRE BURKE
Representative:                 GEORGE COLES
                                JOSEPH RADECKI

For OneBeacon Ins. Co.,    Drinker Biddle & Reath LLP
& Seaton Ins. Co.:         By:  MICHAEL F. BROWN, ESQ.
                           One Logan Square
                           18th and Cherry Streets
                           Philadelphia, PA  19103

**J&J COURT TRANSCRIBERS, INC.**

TELEPHONIC APPEARANCES (Cont'd.):

For Official Committee        Brandi Law Firm
of Asbestos Property          By:   THOMAS J. BRANDI, ESQ.
Damage Claimants:                   TERENCE D. EDWARDS, ESQ.
                              44 Montgomery St., Suite 1050
                              San Francisco, CA  94104

                              Lieff, Cabraser, Heimann & Bernstein
                              By:  ELIZABETH J. CABRASER, ESQ.
                              Embarcadero Center West
                              275 Battery Street, Suite 3000
                              San Francisco, CA  94111

For the Debtors:              Kirkland & Ellis, LLP
                              By:  DEANNA BOLL, ESQ.
                              200 East Randolph Drive
                              Chicago, IL  60601

For Official Committee        Kramer, Levin, Naftalis &
of Equity Security             Frankel, LLP
Holders:                      By:  DAVID E. BLABEY, JR., ESQ.
                              919 Third Avenue
                              New York, NY  10022

For the Future               Orrick, Herrington & Sutcliffe, LLP
Claimants                     By:  RICHARD WYRON, ESQ.
Representatives:              Washington Harbour
                              3050 K Street, N.W.
                              Washington, D.C.  20007

For Arrowwood:               Wilson, Elser, Moskowitz, Edelman,
                               & Dicker, LLP
                              By:  CARL J. PERNICONE, ESQ.
                              150 East 42nd Street
                              New York, NY 10017

                              O'Melveny & Myers, LLP
                              By:  TANCRED SCHIAVONI, ESQ.
                              Times Square Tower
                              7 Times Square
                              New York, NY, 10036

For the Bank Lender          Landis, Rath & Cobb, LLP
Group:                        By:  JAMES S. GREEN, JR., ESQ.
                              919 Market Street, Suite 1800
                              Wilmington, DE  19899

TELEPHONE APPEARANCES (Cont'd.):

| | |
|---|---|
| For Maryland Casualty<br>& Zurich Insurance: | Eckert Seamans Cherin & Mellott, LLC<br>By:  GABRIELLE V. CELLOROSI, ESQ.<br>4 East 8th Street, Suite 200<br>Wilmington, DE  19801 |
| For the Property<br>Damage Committee: | Bilzin Sumberg Price &<br>  Axelrod LLP<br>By:  MATTHEW KRAMER, ESQ.<br>      SCOTT L. BAENA, ESQ.<br>      JAY SAKALO, ESQ.<br>200 South Biscayne Boulevard<br>Suite 2500<br>Miami, FL  33131 |
| For Vinson & Elkins,<br>LLP: | Vinson & Elkins, LLP<br>By:  ARI BERMAN, ESQ.<br>Trammell Crow Center<br>2001 Ross Avenue, Suite 3700<br>Dallas, TX  75201 |

## INDEX

**EXHIBITS**                                          **I.D.**      **EVD.**
D-1 Claim file for Claim Number 11627        72            72
D-2 Claim file for Claim Number 12576        72            72

1          THE CLERK:  All rise.

2          THE COURT:  Good morning.  Please be seated.  This is

3   the matter of W.R. Grace & Company, 01-1139.  I have a list of

4   participants by phone.  Scott Baena, Janet Baer, Ari Berman,

5   David Blabey, Deanne Boll, Thomas Brandi, Michael Brown, Claire

6   Burke, Oliver Butt, Elizabeth Cabraser, Kellie Cairns,

7   Christopher Candon, Gabriella Cellarosi, Richard Cobb, Tiffany

8   Cobb, Daniel Cohn, Jacob Cohn, George Coles, Andrew Craig,

9   Leslie Davis, Michael Davis, Elizabeth DeCristofaro, Martin

10  Dies, John Donley, Melanie Dritz, Michael Duggan, Terrence

11  Edwards, Lisa Esayian, Sandy Esserman, Marion Fairey, Debra

12  Felder, Theodore Freedman,  Michael Giannotto, Daniel Glasband,

13  James Green, John Greene, Robert Guttmann, Sarah Harnett,

14  Robert Horkovich, Richard Ifft, Christina Kang, Brian Kasprzak,

15  Stuart Kovensky, Matthew Kramer, Arlene Krieger, Richard Levy,

16  Alan Michael Linn, Peter Lockwood, Alan Madian, Karalee Morell,

17  Anna Newsom, David Parsons, Carl Pernicone, Margaret Phillips,

18  John Phillips, Mark Plevin, Francine Rabinovitz, Joseph

19  Radecki, Natalie Ramsey, Andrew Rosenberg, Ilan Rosenberg,

20  Samuel Rubin, Alan Runyan, Jay Sakalo, Alexander Sanders,

21  Tancred Schiavoni, Darrell Scott, Mark Shelnitz, Michael

22  Shiner, Robert Siegel, Walter Slocombe, Daniel Speights, Shayne

23  Spencer, Theodore Tacconelli, Chris Warren,  Edward Westbrook,

24  Richard Worf, Richard Wyron, Elizabeth Yu, and Rebecca Zubaty.

25  And I'll take entries in court.  Good morning.

**J&J COURT TRANSCRIBERS, INC.**

1          MS. BAER:  Good morning, Your Honor.  Janet Baer on
2    behalf of W.R. Grace.

3          MR. FREEDMAN:  Theodore Freedman on behalf of W.R.
4    Grace.

5          MR. DONLEY:  John Donley on behalf of W.R. Grace,
6    Your Honor.

7          MR. LOCKWOOD:  Peter Lockwood on behalf of the ACC,
8    Your Honor.

9          MR. FRANKEL:  Good morning, Your Honor.  It's Roger
10   Frankel on behalf of the PI FCR.

11         MR. HURFORD:  Good morning, Your Honor.  Mark
12   Hurford, Campbell & Levine, on behalf of the ACC.

13         MS. MAKOWSKI:  Good morning, Your Honor.  Kathleen
14   Makowski from Pachulski Stang on behalf of the debtors.

15         MR. RICH:  Good morning, Your Honor.

16         THE COURT:  Good morning.

17         MR. RICH:  Alan Rich for the Property Damage FCR.

18         THE COURT:  Good morning.

19         MR. PASQUALE:  Good morning.  Ken Pasquale from
20   Stroock for the Unsecured Creditors' Committee.

21         THE COURT:  Good morning.

22         MR. RESTIVO:  Good morning, Your Honor.  James
23   Restivo and Tracey Rea for W.R. Grace.

24         MR. SPEIGHTS:  Good morning, Your Honor.  Dan
25   Speights on behalf of two Canada claimants which are going to

1 be tried today.

2          THE COURT:  Good morning.

3          MS. CASEY:  Good morning, Your Honor.  Linda Casey on

4 behalf of BNSF Railway Company.

5          MR. TACCONELLI:  Good morning, Your Honor.  Theodore

6 Tacconelli for the Property Damage Committee.

7          MR. TURETSKY:  Good morning, Your Honor.  David

8 Turetsky of Skadden Arps on behalf of Sealed Air Corporation.

9          MR. COBB:  Good morning, Your Honor.  Richard Cobb on

10 behalf of certain bank debt holders.  Thank you.

11          MR. BIRD:  Good morning, Your Honor.  L. John Bird

12 with Travelers Casualty & Surety.

13          MR. RILEY:  Good morning, Your Honor.  Richard Riley

14 from Duane Morris on behalf of the Official Committee of

15 Unsecured Creditors.

16          MR. HOGAN:  Good morning, Your Honor.  Daniel Hogan

17 on behalf of the Canadian Zonolite claimants and special

18 counsel thereto.

19          THE COURT:  Good morning.

20          MR. MANGAN:  Your Honor, Kevin Mangan on behalf of

21 the State of Montana and Her Majesty and Rite of the Crown.

22          THE COURT:  Good morning.

23          MR. WISLER:  Good morning, Your Honor.  Jeffrey

24 Wisler on behalf of Maryland Casualty Company.

25          MR. LONGOSZ:  Good morning, Your Honor.  Edward

1   Longosz on behalf of Maryland Casualty.

2            THE COURT:  Ms. Baer.

3            MS. BAER:  Thank you, Your Honor.  Your Honor, agenda

4   Item Number 1 is the continuing objection of the debtors' to

5   the claim of Massachusetts Department of Envir -- of Revenue.

6   That matter is working on a settlement.  It's in the process,

7   but it's a complicated mess, so we'd just like to continue that

8   again to the next omnibus hearing.

9            THE COURT:  All right.

10           MS. BAER:  Your Honor, agenda Item Number 2 are the

11  remaining objections and the debtors' 25th omnibus objection.

12  Most of the remaining objections are tax claims, and we're

13  working through those.  One of the objections, however, Your

14  Honor, was the Munoz claim, and agenda Item Number 13 is a

15  related matter to Munoz.  It was a motion to lift stay.

16           Your Honor, you ordered a few months that that matter

17  go to mediation.  It did, and it was successful.  We have

18  settled the Munoz.  The amount is under the negative notice

19  amount, so we sent out a negative notice.  It's returnable on

20  the 27th of April.  Assuming there are no objections, that

21  settlement of the claim will then become final, and agenda Item

22  Number 13, which is the lift stay, will become moot.

23           What I would suggest, Your Honor, on Item Number --

24  well, Item Number 2 we just enter and continue it to the next

25  omnibus hearing, because there are other objections on the 25th

**J&J COURT TRANSCRIBERS, INC.**

1    omni.  On agenda Item Number 13 what we'd ask Your Honor is

2    just to be able to submit an order on a certification of

3    counsel after the time passes for the negative notice

4    indicating that the matter's moot.

5            THE COURT:  That's fine.

6            MS. BAER:  Your Honor, agenda Items 3 through 9 were

7    all property damage claim settlements.  Those have all had

8    orders entered on them.

9            Number 10 was the debtors' L-TIP motion.  An order's

10   been entered on that.

11           Number 11 was an application to employ Kaye Scholer

12   as regular special counsel.  An order was entered on that.

13           That takes us, Your Honor, to agenda Item Number 12,

14   which we'd like to skip over for now.  That's the Maryland

15   Casualty matter, and we think logically it makes sense to go to

16   agenda Item Number 14, since we've now dealt with 13.

17           Agenda Item 14, Your Honor, is plan status, and Mr.

18   Freedman would like to address that matter, and then we'll go

19   back to the Maryland Casualty matter.

20           THE COURT:  All right.  Thank you.  Mr. Freedman.

21           MR. FREEDMAN:  Good morning, Your Honor.

22           THE COURT:  Good morning.

23           MR. FREEDMAN:  Your Honor, on March 30th we filed --

24   the plan proponents filed a amended chart which set forth all

25   of the pending objections and that also had two appendices

1  attached to it.  Appendix B was a -- sort of a summary by

2  claimant or by objector of the pending objections, and Appendix

3  A identified those objections which had been settled and

4  identified to the Court the nature of the settlement.

5          The objection chart itself is done in the same format

6  as the Court saw immediately prior to the oral argument, except

7  that we struck out, for the Court's information, those

8  objections which were either resolved or withdrawn, so that

9  when the Court goes through it, it'll be very apparent what's

10  pending and what isn't pending.

11          And frankly, Your Honor, that demonstrates is that

12  where we are right now is -- at the Court's instruction the

13  plan proponents have been diligently pursuing the ability to

14  find settlement where we can find settlement.  At this point I

15  can say that we are in productive discussions with CNA, but

16  beyond that the plan proponents do not believe that there is a

17  possibility of coming to a settlement at this stage, and that,

18  frankly, the fastest way to move this case forward, the most

19  productive way to move the case forward would be to ask the

20  Court to proceed to rule on those outstanding objections to

21  confirmation of the plan that are currently before the Court.

22  We --

23          THE COURT:  Mr. Freedman, have I actually received a

24  completed plan document that shows all of the changed language,

25  because I thought I was waiting for something to be filed, and

**J&J COURT TRANSCRIBERS, INC.**

1  maybe I missed it, but I haven't --

2          MR. FREEDMAN:  There was a filing on March 19th which

3  did set forth all of the changes to the plan --

4          THE COURT:  In the --

5          MR. FREEDMAN:  -- through today.

6          THE COURT:  In the chart.

7          MR. FREEDMAN:  No.  No.  March -- the chart on  March

8  30th provided those objections -- set forth the status of the

9  objections.  On March 19th we filed an amended plan.

10         THE COURT:  Okay.

11         MR. FREEDMAN:  And we also filed -- or actually, we

12 filed modifications to the plan.  We filed with that document a

13 black line that showed how the plan has been changed pursuant

14 to those most current modifications, and also a sort of

15 composite black line that demonstrates changes from the

16 beginning of time as it relates to this plan that's before the

17 Court.

18         We also filed amended documents with respect to the

19 TDP, the PI TDP, and a number of other amended documents.  But

20 that filing, our March 19th, was definitive in terms of

21 amendments to the plan as they now are before the Court.  And

22 while it's possible that if we have a successful outcome with

23 our CNA discussions, there might be some further modifications

24 that are necessitated by that.  In our view, the issues that

25 are before the Court that relate to confirmation of the plan

1  will not change by any CNA discussion, and the Court has a

2  complete record before it to go ahead and rule.

3          THE COURT:  Okay, because what I saw on or about

4  March 19th was a chart which was then amended March 30 that I -

5  - maybe I just didn't get --

6          MR. FREEDMAN:  Well, Your --

7          THE COURT:  -- for whatever reason, the additional

8  documents.

9          MR. FREEDMAN:  Your Honor, we can --

10          MS. BAER:  Your Honor, if I might, Your Honor, the

11  Docket Number 24477 is the fourth set of modifications to the

12  joint plan that was filed on March 19th.  It was filed the same

13  day as that objection chart, which has subsequently been slight

14  updated.

15          THE COURT:  Okay, but what I'm -- what I'm trying to

16  get at is do I have a complete plan, not one that shows me 15

17  different sets of changes that I have to incorporate.  What was

18  filed March 19th is actually a complete plan.

19          MS. BAER:  Yes, Your Honor, it is.

20          THE COURT:  With --

21          MS. BAER:  It includes a complete plan.

22          THE COURT:  Okay.  I'm sorry.  For whatever reason, I

23  haven't seen it.  Okay.

24          MR. FREEDMAN:  So, Your Honor, with that

25  clarification then, as I indicated, when we did our host trial

1  briefing at the Court's instructions, those briefs were set

2  forth in a format that was proposed findings and conclusions

3  with explanation and argument.  And so in connection with that

4  briefing the Court has the parties' views as to what the

5  proposed findings and conclusions are or should be, and each

6  party to the confirmation hearing has asked the Court to enter

7  what they believe is appropriate with respect to that.

8          The Court has not asked for a confirmation order, and

9  to the extent that the Court finds that that would be a helpful

10  document, the plan proponents would be prepared to file with

11  the Court in short order a proposed confirmation order if the

12  Court would find that helpful in moving forward.

13          THE COURT:  No, I think what I'm still trying to

14  reconcile is whether all of these proposed findings and the

15  conclusions, based on all of the modifications, are still

16  current, because it seems to me that a number of the findings

17  and overrulings of objections and other requests are not going

18  to be relevant anymore.  So I -- I'm wondering whether that's

19  what needs to be amended.

20          MR. FREEDMAN:  Well, we can certainly provide the

21  Court with a amended -- with a set of proposed findings that

22  would in the plan proponents' view incorporate all of the

23  amendments and modifications to the plan.  We tried to

24  structure the chart in a way that would, in effect, do the same

25  thing, but we can certainly set it forth in the format of

1  proposed findings if that would be helpful to the Court.

2          THE COURT:  I actually think it would be, because the

3  chart does help in terms of pinpointing where the responses

4  are, but I'm not sure it helps with respect to the actual

5  parties' views about the findings and conclusions, because

6  there have been a significant number of changes, and I'm

7  grateful for that.  This isn't a criticism I'm happy about, but

8  nonetheless, in terms of trying to match up those changes with

9  the proposed findings, it's not always easy to do, so it may be

10  helpful to get a revised set.

11          MR. FREEDMAN:  I guess I would ask the Court -- and

12  we're certainly happy to do -- anxious to do whatever is going

13  to be helpful to the Court.  But is the Court asking for

14  proposed findings that go into the same detail in terms of

15  cross references to the record or something that simply

16  summarizes the proposed findings with clarification on  what's

17  been settled?

18          THE COURT:  I think a clarification of what's been

19  settled is really what I need.   You know, to the extent that

20  certain findings are no longer necessary, and, therefore, I'll

21  use the word can be withdrawn or need to be changed in order to

22  put them in accord with the settlement, that's really what I

23  need.  So I'll just make something up.

24          Let's say, for example, that finding number two

25  related to an issue that has been settled and so finding number

1  two -- proposed finding number two is no longer the way that

2  the proponents or even the objectors would want the finding

3  phrase.  I'd like to know that.  So I don't really need a whole

4  new complete set.  What I need to know is what needs to be

5  changed in light of the various modifications to the plan.

6          MR. FREEDMAN:  Fine, Your Honor, we will proceed

7  forward to do that expeditiously.  And thinking about it, I

8  suppose it's probably something that the Court should set a

9  schedule for doing, because it may be parties that will want to

10 address what the plan proponents' file.

11         THE COURT:  Yes, I would think with respect to the

12 issues that have been settled or objections that are withdrawn,

13 there really shouldn't be much --

14         MR. FREEDMAN:  I wouldn't think so.

15         THE COURT:  -- controversy, but I agree.  You'll need

16 to at least exchange and have an opportunity to share that

17 information, because if there is still a controversy, then I'm

18 not sure what's been settled.  So I think there ought to be

19 some agreement as to those changes.  So tell me how much time

20 you need.

21         MR. FREEDMAN:  What I'd like to do is confer with my

22 colleagues and perhaps if we could go through the discussion

23 and Maryland Casualty, then we could take a few minutes after

24 that.

25         THE COURT:  All right.  Does anybody else have

*J&J COURT TRANSCRIBERS, INC.*

1  anything on the plan status that needs to be addressed?

2                    (No verbal response)

3           THE COURT:  Okay.  Mr. Freedman, thank you.

4           MR. FREEDMAN:   Thank you.

5           MR. DONLEY:  Good morning, Your Honor.

6           THE COURT:  Good morning.

7           MR. DONLEY:   John Donley for W.R. Grace on the

8  Maryland Casualty matter.  The status is Maryland Casualty last

9  month filed its response to our objection and since then three

10 parties have filed joinders in our objection, the Libby

11 Claimants, the ACC, and the FCR, and we've discussed with all

12 those parties a proposed joint scheduling order, and we've

13 reached agreement except for perhaps I believe one point with

14 Mr. Wisler who represents Maryland Casualty this morning.  So

15 let me start with what we'd agree on as a proposed schedule.

16          We'd propose 30 days from entry of a scheduling order

17 for us to file our reply brief.  From discussions with Mr.

18 Wisler this morning, he asked if they could have, I believe, 14

19 days for a surreply, and that's fine with us.  And then we

20 would suggest, because there is a -- not a huge amount of

21 discovery but some discovery that we would like to take, that

22 discovery begin with 60 days from entry of a scheduling order

23 for written discovery, so that it starts even while people are

24 working on the briefs and we can make good use of the time.

25 And 45 days after that for depositions, and then we'd return at

1 the -- I believe it's the August 9th omnibus for setting of

2 what we believe is just one hearing that would be needed, and

3 all legal arguments, any evidence that may need to be presented

4 could all be presented at that one unitary hearing.

5        Now, Mr. Wisler, I'll let him speak for himself.  I

6 understand he would prefer to have legal briefing done and

7 legal arguments prior to the initiation of any discovery, and

8 then if there's discovery or an evidentiary hearing, do that

9 later.  But I'll defer to Mr. Wisler on that point.

10        THE COURT:  Okay.  Well, you're -- on August 9th are

11 you talking about coming to court to do a schedule for the

12 hearing or to do the --

13        MR. DONLEY:  To set a date for that hearing that fits

14 the Court's schedule.

15        THE COURT:  Then I'm going to want -- I'm sorry.  I

16 apologize.  I was talking over you, and I missed what you said.

17        MR. DONLEY:  We'd anticipate coming in August 9th and

18 proposing a date or asking the Court for a date for an

19 evidentiary hearing.

20        THE COURT:  Okay.  Not to do the argument that date.

21        MR. DONLEY:  Correct, Your Honor.

22        THE COURT:  All right.  Mr. Wisler.

23        MR. WISLER:  Good morning again, Your Honor.  Jeffrey

24 Wisler on behalf of Maryland Casualty.  Your Honor, there are

25 -- as Mr. Donley said, we're fine with the schedule for the

1 reply brief and the surreply.  And, in fact, Your Honor, that

2 schedule fits nicely into the June 7th omnibus, which would be

3 about two weeks after we file our reply to have an argument, if

4 Your Honor wanted to have it, on the legal issues, because,

5 Your Honor, there are threshold legal issues here.

6        Number one, while we have no problem with Grace

7 filing a reply and obviously doing what they need to do, we

8 don't concede Libby or either of the committees may intervene

9 in this claim objection.  Rule 7024 does not apply in contested

10 matters.  The decision on whether a party can or cannot

11 intervene in a contested matter is purely discretionary with

12 Your Honor.

13        The joinders that were filed were more or less one

14 liners.  We join -- there is no basis set forth in those

15 joinders as to why they should be permitted to intervene or why

16 they need to intervene or why they need to be involved in this

17 claim objection at all.  So that's a threshold legal issue that

18 perhaps could be addressed in the briefs to get filed between

19 now and the June 7th omnibus.

20        The other thing, Your Honor, is I don't know whether

21 you had a chance to look at our response, but there are

22 threshold legal issues that need to be decided before there

23 even needs to be a decision on whether there's going t be an

24 evidentiary hearing.  We raised at least two threshold legal

25 issues beyond intervention.  One is that the debtors are

**J&J COURT TRANSCRIBERS, INC.**

1 judicially estopped from even bringing this claim objection on

2 the basis that they brought it, and that's completely spelled

3 out in our response.

4        So if Your Honor rules that, in fact, the debtors are

5 judicially estopped from bringing the claim objection as they

6 did, well, there's no need for discovery.  There's no need for

7 an evidentiary hearing, and there's no need to do anything

8 between now and June 7th when Your Honor hears that argument.

9        The other issue is, Your Honor, as we set out in our

10 response, the claim objection essentially seeks an advisory

11 opinion on matters that are not yet right.  Specifically, this

12 claim objection says both in the beginning and in the prayer

13 for relief debtor -- the debtors want Your Honor to expunge all

14 Maryland Casualty claims.  Well, what are they?  Maryland

15 Casualty's claims arise out of its indemnity rights, so every

16 time a claim would be asserted against Maryland Casualty, an

17 indemnity right may or may not be triggered.

18        If the indemnity right is triggered, that creates a

19 claim.  Well, what claims is Your Honor going to decide?  Some

20 of these claims haven't arisen yet.  After the plan is

21 confirmed, if it's confirmed, claims may be filed against

22 Maryland Casualty.  Are those expunged?  Well, there's no way

23 to tell, because they haven't been raised yet.

24        So I don't want to completely argue this issue, but

25 we did raise in our response that this is not a matter to be

1  decided now.  It's not right for adjudication.  The debtor is

2  asking for an advisory opinion, and until Your Honor reads and

3  hears those arguments, there's no basis upon which Your Honor

4  can say yes, there should be discovery, it should be 60 days,

5  it should be 45 days, here's the scope.  There's no basis for

6  that.

7         Now, we understand that the debtor wants discovery.

8  We don't necessarily agree on what the scope is, but Mr. Donley

9  and I can talk about that.  But part of what will drive the

10 scope of any discovery is what's in the reply papers.  When

11 they filed their objection, we filed our response.  They want

12 to file a reply.  I don't know what's going to be in there, but

13 that may drive the scope of the discovery that may lead to us

14 being able to agree on a discovery schedule.

15        But, more importantly, Your Honor, when we come back

16 on June 7, if Your Honor wants to hear the arguments that day,

17 we can talk about what the issues are, whether this claim

18 objection should go away simply on legal issues, or whether

19 there should be an evidentiary hearing, and what's the scope of

20 that evidentiary hearing.  We want to present that to Your

21 Honor when the time comes.  We don't even know what that would

22 be today, so the point is it's not time to take discovery.

23 It's not time to decide on what the discovery is.  If they

24 serve discovery requests on us today, I don't know what the

25 scope should or should not be, and we'd like to have an

1  opportunity to talk with Your Honor about that if we disagree

2  with that.

3        I want to mention one alternative, also, Your Honor,

4  and that is that as part of confirmation Your Honor's going to

5  have to rule on objections by parties like Maryland Casualty.

6  One of our objections was the classification of our claims.  If

7  Your Honor upholds our classification  objection and some of

8  our claims are deemed Class 9 claims, that creates one set of

9  interested parties and one set of legal issues.  If Your Honor

10  overrules our objection and says all of our claims are Class 6

11  claims, that creates another set of potential legal issues and

12  another set of  interested parties.

13        What I'm getting at, Your Honor, is our claims have

14  been pending since 2004.  Waiting until this plan is or is not

15  confirmed on whatever basis Your Honor confirms it or doesn't

16  confirm it, we'll narrow the issues of what our claims are, and

17  you are the parties that really have a stake in arguing about

18  it, and that would be the most judicially efficient way of

19  resolving these claims.  So a suggestion I would make is, Your

20  Honor, to defer all of this until the plan is or is not

21  confirmed.  But, if not, Your Honor, we simply suggest that we

22  go along the briefing schedule, have argument on June 9, and if

23  that's the time -- if Your Honor decides at the June -- excuse

24  me -- the June 7th hearing that there is going to be an

25  evidentiary hearing, we should talk about the scope of

1   discovery and the length of discovery at that time.

2            THE COURT:  Okay.  Well, how will I know whether an

3   evidentiary hearing's necessary until I know what class the

4   claims are in?  I'm not sure if that's going to make a

5   difference.

6            MR. WISLER:  I understand, Your Honor, which is the

7   reason I made that suggestion, or are -- did I understand your

8   question correctly?  You're saying how could I really decide

9   this until I know what the class is.

10           THE COURT:  Yes, I guess that's what I'm asking.

11           MR. WISLER:  I raise the same issue, Your Honor.

12           THE COURT:  All right.  Mr. Lockwood.

13           MR. LOCKWOOD:  Your Honor, with respect to the last

14  question, it seems to me that the question demonstrates the

15  fallacy of Mr. Wisler's prematurity argument, because it's a

16  little disingenuous to say he doesn't -- I know what the issue

17  is.  His asserted claims, which he's now telling you are

18  wrongly classified, well, how could he tell you if they're

19  wrongly classified if he doesn't know what they are?  The

20  answer's he does know what they are.  He has a contract.  It's

21  a settlement agreement with an indemnity provision in writing

22  in it, and the scope of the claim objection has to do with is

23  there, in fact, a real indemnity agreement beyond the insurance

24  -- additional insureds' type claims to cover the so-called

25  independent tort claims of the Libby Claimants.

                    **J&J COURT TRANSCRIBERS, INC.**

1        That's a very discreet issue.  It's either a standard

2   kind of insurance settlement where the insured indemnifies the

3   insurer against other claims against the same insurance

4   coverage, which is one set of indemnity type questions, or it

5   is, as Maryland Casualty has argued in connection, among other

6   things, with its classification objections, does it cover tort

7   claims directly against Maryland Casualty for activities that

8   Maryland Casualty did, actions it took, that while Maryland

9   Casualty may argue are related to its provision of insurance to

10  the debtor are not actually insurance.  They're not a --

11  they're not somebody claiming that I have -- that Maryland

12  Casualty is liable under a policy that it issued to Grace.

13       So I'm at somewhat of a loss to know how you could

14  even rule on the classification issues if you don't have some

15  sense of whether (a) what the claim is and (b) whether it's

16  valid.  I mean one of the things that the debtor is trying to

17  do here is moot the classification issue by having the Court

18  rule that there is no indemnity for these independent tort

19  claims.

20       With respect to his comment about the intervention

21  and whether the FCR and the ACC should be entitled to

22  intervene, and that's a separate legal issue that ought to get

23  argued first, you may have noticed that one of his arguments

24  that he referred to is judicial estoppel.  Well, that judicial

25  estoppel argument is based on statements attributed to W.R.

**J&J COURT TRANSCRIBERS, INC.**

1 Grace, the debtor, in various pleadings that were filed in the

2 bankruptcy case.  None of the statements that were made were

3 made by the ACC.  None of them were made by the Future Claims

4 Representative.  None of them, for that matter, were made by

5 the Libby Claimants.  And all of those entities --

6         I mean take, for example, the ACC and the FCR.  One

7 possibility is if there is a valid claim here, it's going to

8 get channeled to the Trust.  Well, heaven knows, the

9 constituencies of the ACC and the FCR have a profound interest

10 in preventing invalid claims for being channeled to the trust.

11 And but what Mr. Wisler would propose is that argument that

12 basically says nobody can object to this indemnity claim that

13 they want to have either paid by the debtor as a Class 9 claim

14 or channel to the Trust as a Class 6 claim, because the debtor

15 said some things in its papers during the bankruptcy case that

16 estops it from making certain arguments about the validity, but

17 the real parties in interest, if it's a Class 6 claim, under

18 some technical reading of the rules relating to contested

19 matters, don't have standing to pursue that.  And, obviously,

20 we dispute that.  That's why we filed the motion to intervene.

21         But the notion that we would have an argument on the

22 merits of the judicial estoppel claim at a hearing in which

23 we're being told the ACC and the FCR can't even speak to it is

24 something that puts the cart before the horse.  The bottom line

25 is there's a lot of complicated interactions here, and the gut

**J&J COURT TRANSCRIBERS, INC.**

1  issue of the scope of this contractual indemnity that Maryland

2  Casualty is relying on here is a written document.  Is it

3  ambiguous?  Did the parties -- is there going to be parole

4  evidence sought to be introduced by any party relating to the

5  interpretation of that document?  That's what the discovery is

6  all about.

7          And rather than having a sequencing of legal

8  arguments which I would submit are very unlikely to resolve the

9  issue at the end of the day.  It makes more sense, the ACC

10  believes at least, to adopt the debtors' approach, which is a

11  standard approach.  I mean what he wants to do is basically

12  have a sort of a summary judgment type or motion to dismiss or

13  motion for judgment as a matter of law or something like that,

14  and then if he loses, then we have a second round of

15  proceedings which will further delay it.

16          And, also, how does that further delay tie into Your

17  Honor's rulings about classification and whether or not the

18  claim that the debate is about is a valid claim to begin with?

19  So we would support the debtors' proposal on this, Your Honor.

20  Thank you.

21          THE COURT:  Mr. Donley.

22          MR. DONLEY:  Three brief responses, Your Honor.

23  First, Mr. Wisler raised the issue of joinder and whether other

24  creditors can object and join in an objection to another

25  creditor's claim.  And the answer -- we haven't briefed or

1  raised that formally as of now.  The issue there is it depends.

2          We recognize under Section 502(a) that creditors can,

3  under certain circumstances, do that, and there are

4  authorities, the <u>Dow-Corning</u> case is one I can think of, where

5  if a -- if an objecting creditor comes in and obstructs the

6  case or does something contrary to the case, we would stand up

7  at that point and question their authority.  But it's really an

8  issue for another day.

9          Number two, on the discovery we do know that it

10  doesn't depend on the motion practice or legal arguments.  We

11  know what we want.  It's reasonably limited, and it's the

12  evidence Mr. Lockwood pointed out, evidence on the -- extrinsic

13  evidence on the meaning, the drafting history, the drafts, and

14  the intent, and the meeting of the minds on the indemnity terms

15  that are at issue.  So we have a good idea in a focused way

16  what that's about.

17          And then number three, Your Honor raised the point

18  how can you decide an evidentiary hearing without knowing the

19  classification, and I think that's a fair question.  We're just

20  trying to move things along in the meantime and make productive

21  use of developing the legal and discovery record, if we can, in

22  the next few months and then come back on August 9th and see if

23  at that point it's appropriate and timely to have an

24  evidentiary hearing.

25          So we'd suggest either, you know, defer the schedule

1  entirely or, as we have proposed, have an essentially unitary

2  schedule where rather than taking things at piecemeal, legal

3  arguments, briefing, discovery all get done all without taking

4  up the Court's time with an evidentiary hearing, which may or

5  may not turn out to be necessary at the end of the day.  We

6  just thought that would be the most efficient way to proceed.

7          THE COURT:  Mr. Wisler.

8          MR. WISLER:  Your Honor, I agree with Mr. Lockwood

9  that a lot of this is the cart before the horse.  Number one,

10  all the parties at the table has rested at confirmation, so

11  Your Honor doesn't need anything else to rule on our

12  classification objection.  What a ruling on the classification

13  objection in the context of plan confirmation will do is it

14  will decide the question Mr. Lockwood asked Your Honor, which

15  is who are the real parties in interest.  That's going to

16  answer the question.

17          If it's all Class 6, then really the debtor isn't a

18  party in interest anymore, and it's all Mr. Lockwood and Mr.

19  Frankel's issue.  If it's partially Class 6, partially Class 9,

20  they probably both have a stake in that game.  But  that's what

21  a ruling on confirmation will decide, that is the real parties

22  in interest.

23          Your Honor, Mr. Donley got up here and said he's very

24  clear on what he wants for discovery.  That's great.  I'm not,

25  and I want to be able to bring that to the Court should I need

1  to after the threshold legal issues are decided.  This is not a

2  novel approach to a motion.  Let's decide first whether this

3  contested matter even should go to an evidentiary hearing or

4  get into evidence before we start using time and money to take

5  a lot of discovery that may or may not be within a relevant

6  scope.

7           So, Your Honor, if --

8           THE COURT:  Well, but if the --

9           MR. WISLER:  -- if you defer everything --

10          THE COURT:  But if the issue is limited to

11 essentially the scope of the indemnity that exists, that is not

12 really a plan confirmation issue per se.  Determining the

13 classification as to how any claims that survive under that

14 indemnity are treated in the plan is a classification issue,

15 but the legal issue itself is not a plan confirmation issue.

16 It's a determination as to whether or not there is even a claim

17 that goes into a class regardless of what that class is.  So

18 I'm not certain why I have to get through the confirmation

19 issues before I can determine the legal issue.

20          And to the extent that the scope of the indemnity --

21 and those are my words, I realize, not the parties.  To the

22 extent that it's the scope of the indemnity question, it seems

23 to me that discover is appropriate, and if it is focused on

24 those issues, then you should be able to determine whether

25 somebody's going to argue that there is some ambiguity in the

1  contract or not.  And if there is no ambiguity, then you don't

2  need an evidentiary hearing.  If there is, you do.  So I'm not

3  sure why the discovery shouldn't take place on that track.

4       MR. WISLER:  Well, let me explain, Your Honor.  First

5  of all, I agree that the scope of the indemnity is not

6  something Your Honor's going to decide at confirmation.  I was

7  merely saying that if Your Honor chose to go that way, going

8  through plan confirmation would potentially narrow the scope,

9  maybe potentially settle the claim objection.  In other words,

10 give us a basis to settle the claim objection, but it would

11 likely decide what parties really need to be involved in this

12 process.

13      But let me answer Your Honor's second question,

14 because the idea that --

15      THE COURT:  Well, the -- but the debtor is always a

16 relevant party in interest with respect to a claims objection

17 against its estate.  And to the extent that the ACC and/or FCR

18 are involved in issues involving both Class 6 and Class 9, then

19 assuming that they can get past the legal issue as to whether

20 or not they can participate at all, then I don't see what

21 difference the classification makes, because the debtors are

22 there.

23      The concept of judicial  estoppel on a claims

24 objection is really going to be pretty novel based on the

25 issues that have taken place before the Court before.  So I'm

**J&J COURT TRANSCRIBERS, INC.**

1  going to have to hear why the debtor should not be able to

2  object to claims against this estate based on the issues that

3  have now been raised.

4           It seems to me that the debtors' fiduciary

5  obligations ought to take it in that direction.  But if it is

6  judicially estopped, it also seems to me that there ought to be

7  parties out there who can raise it, who haven't been judicially

8  estopped, if that's the case.  If they can raise issues, you

9  know, a la the <u>Owens-Corning</u> issues, because creditors'

10 committees can substitute where the debtor can't bring

11 preference claims, for example, surely they can object to

12 claims objections, which aren't nearly as onerous to any

13 particular creditor as a preference recovery.  So I'm not sure

14 why I don't have at least a party in interest without

15 determining who that is right now who can object.

16          MR. WISLER:  Understood, Your Honor, and that's an

17 issue that they can raise in their brief and we can reply and

18 we can discuss with Your Honor.  I mean that's part of what I'm

19 saying.  Your Honor will decide this one way or another on the

20 legal issues.  We don't need discovery for Your Honor to decide

21 the issue you just discussed.  We'd like to have an opportunity

22 to brief it and see what the debtor has to say, because we

23 raised it.  The other parties intervened.  We want to see, you

24 know, how's Your Honor going to rule on that.

25          THE COURT:  But I'm not going to prevent anybody

1  from, in quotes, participating, i.e., observing or whatever

2  when the discovery takes place in any event.  So if discovery's

3  going to go forward, I'm a little hard pressed to say why the

4  debtors shouldn't be leading the charge on a claims objection

5  issue.  I'm having great difficulty with that concept.

6          MR. WISLER:  Well, and I'm not here to argue that to

7  you today, Your Honor.  I, of course, can, but that's not

8  what --

9          THE COURT:  No, it isn't --

10          MR. WISLER:  -- we were scheduled to do.

11          THE COURT:  -- for today.

12          MR. WISLER:  Well, you know, Your Honor can order

13  discovery, but my problem is what is the scope.  The debtor

14  says they know what the scope is.  It's very narrow.  I don't

15  necessarily agree with that scope, and that scope will be

16  driven by what Your Honor rules on the legal issues.

17          THE COURT:  All right.

18          MR. WISLER:  Let me give -- so let me give you an

19  example, unless -- I mean if Your Honor's going to agree with

20  my schedule, I don't need to explain, but --

21          THE COURT:  Go ahead.

22          MR. WISLER:  Okay.  There is a spectrum of claims

23  that can be brought against Maryland Casualty.

24          THE COURT:  Yes.

25          MR. WISLER:  You -- on the one end of the spectrum

1 you have your classic direct claim, which is a claim by a

2 claimant against a company, but they can't be brought against

3 that company or doesn't need to be brought against that

4 company, just brought against the insurance company.  Okay.

5 That's on one end of the spectrum.

6          The other is Mr. Lockwood's traffic accident in

7 Libby, the one he described in his deposition that we've cited

8 a couple times.  And that is that someone employed by Maryland

9 Casualty was driving an automobile in Libby, Montana outside

10 the scope of its employment.  There's a traffic accident.

11 There's a lawsuit arising out of that.  Maybe a claim gets

12 filed against Maryland Casualty.

13          So somewhere within this scope falls Maryland's

14 indemnity rights.  We don't know where it is.  That's for Your

15 Honor to decide or some other court to decide some day.  But

16 somewhere within that it does.

17          Now, the debtor wants you to decide what's that

18 scope.  As we say, they want an advisory opinion.  They want

19 Your Honor to set a bar here and bar here.  I don't know

20 exactly how they're going to do that, but that's what they're

21 asking you to do.

22          Well, what happens when there's a claim outside of

23 one goal post?  Do we still have that claim?  Who's to decide

24 whether a claim falls within those goal posts?  If Your Honor

25 accepts their request for an advisory opinion and you set the

1  goal posts, well, who then decides what claims go in there?

2  Future claims, when they come in, are they gone?  How could

3  Your Honor decide that?

4        THE COURT:  I think that's what bankruptcy courts do

5  all the time --

6        MR. WISLER:  I'm asking --

7        THE COURT:  -- is determine claims.

8        MR. WISLER:  Right.  I'm sorry.

9        THE COURT:  Is determine claims and whether claims

10  are allowed and whether contingent, unliquidated, disputed,

11  unmatured claims will or will not survive.  That's what

12  bankruptcy -- that's the meat and potatoes of being a

13  bankruptcy judge.

14        MR. WISLER:  Understood.  If five years from now

15  somebody files a claim against Maryland Casualty, and we claim

16  it's within the scope of indemnity, you today and I today don't

17  know what that claim is, so how can we decide whether a claim

18  we -- that doesn't exist, that has not yet triggered an

19  indemnity claim, therefore, that indemnity claim is not right.

20  How can Your Honor determine the validity of that indemnity

21  claim?

22        THE COURT:  I'm not sure that the issue is the

23  validity.  Whether it would be an allowed claim against the

24  estate and whether or not it would be treated under the TDP

25  somewhere or fall into a class or not be discharged, that's

1  what bankruptcy courts do.

2          MR. WISLER:  But they don't it before the claim is

3  right.

4          THE COURT:  Sure we do.  We estimate claims all the

5  time.

6          MR. WISLER:  But they haven't asked for it.  Let's be

7  clear.  They haven't asked for estimation.  They've asked that

8  all claims of Maryland Casualty be expunged forever, proofs of

9  claim gone.

10          THE COURT:  Okay.

11          MR. WISLER:  Those claims are indemnity claims that

12  arise out of claims that have not even arisen, so how could

13  this Court decide whether those claims are valid today?

14          THE COURT:  It -- well, okay.  I think I've attempted

15  to address that fact, but --

16          MR. WISLER:  Right.

17          THE COURT:  -- but maybe it's the basis for a legal

18  argument.

19          MR. WISLER:  It is, and until -- and Your Honor

20  hasn't had a chance to read --

21          THE COURT:  No, I haven't.

22          MR. WISLER:  -- our response, and we're going to file

23  briefs, and I -- it would be better to have this discussion

24  about what the scope of discovery should be when Your Honor

25  knows what those issues are and perhaps has ruled on them.

**J&J COURT TRANSCRIBERS, INC.**

1 That's my point.

2      THE COURT:  Okay.  Well, I think if -- I think what

3 I'm hearing from the debtor is that the issue that the debtor

4 wants to pursue -- and maybe I'd better inquire to make sure

5 this is the only issue the debtor intends to pursue -- is how

6 the indemnities came to be, what the meaning of the indemnities

7 is from the perspective of the entities who were involved in

8 drafting the contracts to determine whether or not they're

9 going to take the position that there is some ambiguity and,

10 therefore, need an evidentiary hearing on the scope -- on the

11 issue of the scope and language and interpretation of the

12 indemnity.  Now, is there something more, Mr. Donley?

13      MR. DONLEY:  No, Your Honor, that's the scope of

14 discovery we'd like to pursue.

15      THE COURT:  Okay, so I understand Maryland is saying

16 that you don't know yet what you need to do, because you

17 haven't seen the reply papers, and -- but you've raised the

18 issue as to which the reply papers need to be filed.  Because

19 if you hadn't raised the new issue, there wouldn't be a need

20 for a reply, and I wouldn't be taking one.

21      MR. WISLER:  Your Honor, that's -- we responded to

22 their claim objection.

23      THE COURT:  Yes.

24      MR. WISLER:  Their claim objection said we expunge

25 all claims, so we didn't raise any new issues.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  Well, you've raised --

2          MR. WISLER:  We simply raised --

3          THE COURT:  -- the intervention.

4          MR. WISLER:  -- defenses.

5          THE COURT:  Well, you -- I thought you'd raised the

6     intervention issue, which is a new issue.  I mean --

7          MR. WISLER:  Right, but that isn't subject to

8     discovery.

9          THE COURT:  Well, no, it's subject to reply papers.

10         MR. WISLER:  Yes.

11         THE COURT:  I was addressing reply papers.

12         MR. WISLER:  I apologize, Your Honor.

13         THE COURT:  Okay, so in that sense what I was saying

14    is you already know what the issues are.  The debtors have

15    raised some, and Maryland's raised the rest, so you already

16    know the issues.  That's what discovery is to do.  It's to

17    eliminate the issues.  So what is it that's missing?

18         MR. WISLER:  We argue, as I've just somewhat

19    articulated, that this is an advisory -- they're seeking an

20    advisory opinion.  If Your Honor, for instance, rules against

21    that, then we need to know, for instance, what claims --

22    Maryland Casualty has a spectrum of claims.  We raised our

23    indemnity rights.  Those get triggered by claims against us

24    that we don't control.  As each claim against Maryland Casualty

25    arises, that may or may not trigger an indemnity claim.  If it

1 does, now we have a claim that we will make.

2          So what claim is it that the debtors -- that has

3 triggered an indemnity claim that the debtors now want to have

4 expunged?  So we need to know what those claims are.

5          THE COURT:  I think what the debtor's saying --

6          MR. WISLER:  This is the right --

7          THE COURT:  -- is that the debtor wants to expunge

8 any and all indemnity claims that arise under this indemnity

9 outside the scope of the particular provisions of the contract.

10 So I think what I'm hearing is it's a contract interpretation

11 issue.

12          MR. WISLER:  That is not --

13          THE COURT:  For example -- I just want to make sure I

14 understand, Mr. Wisler.  For example, if the contract is clear

15 that environmental claims are covered by the indemnity, then

16 that should be a -- and the parties agree the contract's clear,

17 then that's a dead bang issue.  The indemnity claims are

18 covered.  If the -- if there is not clear language, for

19 example, that tort claims are covered, then the issue is are

20 tort claims covered.  If the Court determines they are, then as

21 and when they arise, Maryland can pursue its indemnity claim

22 based on the underlying tort claim against the estate.  If not,

23 Maryland can't, and they'll be expunged.

24          So I think the issue is not specific claim-by-claim

25 matters.  It's the scope of the indemnity and does it apply to

1 that spectrum of claims, any of which Maryland Casualty may

2 raise against the estate?  I think that's what I'm being asked

3 to determine.

4          MR. WISLER:  Well, let me read you the --

5          MR. DONLEY:  That's correct, Your Honor.

6          THE COURT:  Okay.

7          MR. WISLER:  Let me read you the end of their claim

8 objection.  "The debtors respectfully request that this Court

9 disallow all of the proofs of claim filed by Maryland

10 Casualty."  All of them.

11          THE COURT:  All right.

12          MR. WISLER:  Well, what are those?

13          THE COURT:  All of the proofs of claim.

14          MR. WISLER:  Well, there are no other claims.

15          THE COURT:  Well, then you know what you've raised in

16 the proofs of claim.

17          MR. LOCKWOOD:  Your Honor, for the record, Maryland

18 Casualty identified three petition -- pre-petition lawsuits in

19 its proof of claim brought by certain claimants, the Libby

20 Claimants, against Maryland Casualty as forming a or the basis

21 for the proof of claim.  There's nothing hypothetical about

22 those.  There's nothing speculative about them.  They were

23 filed in courts, and Maryland Casualty was a defendant, and

24 Maryland Casualty based its proof of claim in whole or in part

25 on those three lawsuits, and those are examples of the type of

1 claim that the debtor is arguing it has not indemnified

2 Maryland Casualty against.

3          So there's a perfectly concrete dispute between the

4 debtor and the ACC and the FCR, and Maryland Casualty, as to

5 the scope of the indemnity, as framed by Maryland Casualty's

6 own proof of claim.

7          THE COURT:  Okay.  Well, if it's -- I'm sorry.  I was

8 somewhat off on the wrong tangent, I think, by the argument

9 that all claims at some point in time may come up that were

10 being asked to be expunged.  If it's limited to the proofs of

11 claim, then, of course, this is an appropriate  process to go

12 through.  I mean Maryland's proofs of claim are filed.  So if

13 the debtor's saying the claims that arise in the proof of claim

14 are not valid against the estate, that's discreet litigation.

15          MR. WISLER:  Your Honor, I think -- as I said, I

16 think this is a better argument to present to the Court once

17 Your Honor's read their objection, our response, and perhaps

18 any reply papers.  All we're suggesting is that we have this

19 discussion on June 7th not today.  I'll leave it at that,

20 because I don't -- wrestling with these issues without Your

21 Honor having the benefit of what we filed --

22          THE COURT:  All right.

23          MR. WISLER:  -- is difficult.

24          THE COURT:  Okay.

25          MR. WISLER:  That's --

1           THE COURT:  Is --

2           MR. WISLER:  So that's our request.

3           THE COURT:  Is there some reason why we can't do this

4  argument on whatever the legal issue is that needs -- that

5  apparently needs to be addressed on June 7th and do discovery

6  thereafter?  I mean if it's claims objection, it's not going to

7  affect the plan confirmation in any event.  So it may affect

8  where the claims go to the extent there are valid claims, but

9  it's not going to affect confirmation.  So is there some reason

10 why the discovery schedule can't simply be addressed in June?

11          MR. DONLEY:  I just have a personal scheduling

12 difficulty.  I have an appellate argument that day, Your Honor,

13 June 7th.

14          THE COURT:  Well, you folks ought to be able to work

15 out -- if I told you we're going to do the argument June 7th,

16 you should be able to work out a discovery schedule that you

17 can agree on for thereafter, because you can just

18 hypothetically assume that whatever the legal issue is goes

19 against Maryland just so you can get to a discovery schedule

20 not -- I'm not making findings.  I haven't even read the --

21 read Maryland's reply.  But just so you can get to a discovery,

22 make that assumption.  If it's not necessary, there won't be a

23 discovery schedule.

24          MR. DONLEY:  Yes, the answer is either way would be

25 fine, Your Honor.  We were hoping to get going.  Now we could

**J&J COURT TRANSCRIBERS, INC.**

1 wait until June to start the discovery and have it ready to go

2 at such time.  Either way is fine.

3        THE COURT:  I think it might -- may make sense, so

4 that I have the benefit of everybody's analysis to address the

5 discovery schedule in June.  But I think you folks ought to be

6 able to work one out again on the assumption that you'll need

7 one.  If you don't, then you'll have spent an hour or two

8 working on a schedule that you don't need.  So I don't think in

9 the grand scope of things it will matter much.  I'll continue

10 Item 12 to June 7th.

11        MR. GLASBAND:  Your Honor --

12        THE COURT:  And if you're able to submit a discovery

13 schedule on a certification of counsel in the meantime, then

14 please do it.  Yes, who's speaking?

15        MR. COHN:  Yes, Your Honor, this is Daniel Cohn on

16 behalf of the Libby Claimants.  I just wanted to address a

17 technical point, which is that subject to whatever ruling you

18 might later make on who's entitled to be heard on this, we

19 would like leave to have the same 30-day deadline as the debtor

20 to reply to Maryland Casualty's response to the objections.

21        THE COURT:  Oh, yes, anybody who's attempting to

22 intervene is subject to that same schedule.  I think that's the

23 purpose of the reply papers.  So yes, all of the people or

24 entities that joined the debtors' objection have that same

25 opportunity, and if anybody intends to join Maryland's

1  position, they -- they're on Maryland Casualty's schedule.

2          MR. COHN:  Thank you, Your Honor.

3          MR. DONLEY:  One other request, Your Honor -- John

4  Donley -- on our reply papers.  Their judicial estoppel

5  briefing was very extensive.  I think it was 28 or 30 pages,

6  and I know normally replies are limited to five pages, but we'd

7  ask -- I -- and I don't like to write anything longer than it

8  needs to be, but we'd ask for something similar in length just

9  to address the issues they've raised fully.

10          THE COURT:  You don't need 28 papers (sic) on

11  judicial estoppel.  Do you really?

12          MR. DONLEY:  Well --

13          MR. FREEDMAN:  Ours was five pages, Your Honor.

14          MR. DONLEY:  Oh --

15          THE COURT:  Five pages?  I'll give you ten pages for

16  a reply.  Surely, that should be -- is there another issue that

17  you're going to address other than judicial estoppel?  The

18  intervention -- the intervention motion.

19          MR. DONLEY:  The debtor doesn't need -- see a need to

20  address the intervention, Your Honor.

21          MR. LOCKWOOD:  The ACC and the FCR obviously

22  wouldn't.  I rather suspect Mr. Cohn would, so --

23          THE COURT:  All right, so --

24          MR. LOCKWOOD:  It's a little -- there's -- the

25  intervention issue as such has been sort of tendered here in

1  open court orally.

2          THE COURT:  Oh, it's not in the brief?

3          MR. LOCKWOOD:  It's not.

4          THE COURT:  I'm sorry.  I haven't seen Maryland's

5  response.

6          MR. LOCKWOOD:  To the best -- I don't -- we filed

7  joinders to the claim objection, and there's been no motion to

8  strike the joinders, no motion to say we don't have standing to

9  effectually make a joinder, so that was one of the reasons I

10  was discussing earlier the -- how we could be having an

11  argument on judicial estoppel where we would be arguing that it

12  doesn't apply to us, and our opponent is arguing without ever

13  having filed any papers that we don't have any standing to even

14  make the argument.

15          THE COURT:  I see.  I'm sorry.  I haven't seen

16  Maryland's response, so I apologize for being a day late and a

17  dollar short here.  I am.  I thought, Mr. Wisler, you had

18  raised this issue in your response.

19          MR. WISLER:  The debtors filed an objection.  We

20  filed a response.

21          THE COURT:  Yes.

22          MR. WISLER:  Subsequently --

23          THE COURT:  After that.

24          MR. WISLER:  -- joinders were filed.

25          THE COURT:  All right, so are you going to be

1  opposing the joinders?

2          MR. WISLER:  Yes.

3          THE COURT:  Okay, then --

4          MR. WISLER:  But I -- if the parties that want to

5  join are going to file briefs anyway, then they might as well

6  address the basis for their joinder in those and we can reply.

7          THE COURT:  Well, no, I think if you're going to

8  object, as -- at least as the Committee, I'm not exactly sure

9  why when the Committee I think is affected by both classes why

10 the Committee would not be an appropriate party.  As to the

11 others, I'm not so sure, but the Committee, it seems to me,

12 ought to, without any concern, be an appropriate party to look

13 at this issue.

14         And as to the others, I just don't know.  I don't

15 know whether the FCR is actually involved in both classes.  I

16 just don't remember at the moment, and I am not sure about

17 Libby either.  Particular entities as opposed to the Committee

18 function joining is a different issue from the Committee itself

19 having standing to take a look at claims objections.  And to

20 the extent that the Committee thinks the claim is being

21 asserted against a class in which it has an interest, I'm not

22 sure why it's not a party in interest to raise an objection.

23         So just as I sit here, without having seen anything

24 on this issue, it seems to me the debtor and the Committee

25 ought to be pretty solid in terms of taking a look at this.

**J&J COURT TRANSCRIBERS, INC.**

1  The others I don't know about.  I simply haven't had to take a

2  look at that issue.

3          MR. WISLER:  Well, let me make this suggestion then,

4  Your Honor.  On the day when -- well, I see Mr. Donley rising.

5  Maybe we should talk about it, because I think we could

6  probably work that part out.

7          THE COURT:  If you file -- yes, if you have 30 days

8  to address this issue and the other parties have the 14 you

9  would've had to reply to address it, it seems to me that should

10 work, as long as I don't have any additional replies and

11 surreplies, and, frankly, on this issue, I don't think I

12 should.  There's not that much case law on the subject.

13         MR. WISLER:  That's fine.

14         MR. DONLEY:  It seems reasonable to us, Your Honor.

15 I just wanted to ask one favor of the Court.  I checked my

16 notes.  I did read their response.  It was 28 pages not 5 and

17 all but --

18         THE COURT:  No, I think he was saying 5 on the issue

19 of judicial estoppel.

20         MR. DONLEY:  It was all judicial estoppel.  They only

21 had one or two pages, at most, on other issues at the end.  It

22 was like 15 pages of case law, 10 pages of quotes from briefs.

23 We just need a little space to be able to respond to that, and

24 maybe not the same length, but if we could get --

25         THE COURT:  Okay.  15 pages.  If you need more than

*J&J COURT TRANSCRIBERS, INC.*

1   15 pages, I should be getting some entirely separate briefing

2   process.  This is --

3            MR. DONLEY:  15 would be --

4            THE COURT:  -- a reply.

5            MR. DONLEY:  15 would be terrific, Your Honor.

6            THE COURT:  All right.  Mr. Wisler, yours is limited

7   to 5, your surreply, because all you're going to be replying to

8   is their reply, so you've got 5 pages on a surreply.  They've

9   got 15 on a reply.

10           MR. WISLER:  That's fine, Your Honor.

11           THE COURT:  Okay.  One second.

12           MR. LOCKWOOD:  Your Honor, just for --

13           THE COURT:  Wait, Mr. Lockwood.

14                         (Pause)

15           THE COURT:  Yes, sir.

16           MR. LOCKWOOD:  Just for logistical question, I'm not

17  sure whether we're having what amount to two-track briefing

18  here --

19           THE COURT:  Yes.

20           MR. LOCKWOOD:  -- in which he's going -- Maryland

21  Casualty's going to make some kind of motion about why we

22  aren't entitled to -- don't have standing to participate in the

23  claims objection at the same time the briefing is going on on

24  judicial estoppel.  What I would propose, if that's the case,

25  and it sounded like that was the case, that we -- we, the

1  Committee and the FCR, file a reply at the same time that the

2  debtor is filing a reply on the judicial estoppel point limited

3  to the question of if judicial estoppel were applicable to the

4  debtor, would it also be applicable to the debtor's estate to

5  the extent that the other creditors of that estate would be

6  adversely affected --

7              THE COURT:  All right.  That's fine.

8              MR. LOCKWOOD:  -- by the application of judicial

9  estoppel.  I mean it's a backdoor way of addressing standing,

10 to some extent, but at least it gets our views on the judicial

11 estoppel question in front of the court at the same time that

12 Maryland Casualty and our responsive briefing on the right to

13 intervene is before the Court, and you can -- you can consider

14 both at the same time.

15             THE COURT:  That's fine.

16             MR. LOCKWOOD:  Is that okay?

17             THE COURT:  Yes --

18             MR. LOCKWOOD:  Thank you, Your Honor.

19             THE COURT:  -- that's fine.

20             MR. FRANKEL:  Your Honor, could I just -- this is

21 Roger Frankel for the FCR.  If I could just clarify, while

22 we're happy to have Mr. Lockwood carry our water for us, I

23 think it's clear under the plan and the objection to MCC that

24 the PI FCR and the ACC are in the same boat.

25             MR. LOCKWOOD:  Oh, I meant to suggest that we were

                    **J&J COURT TRANSCRIBERS, INC.**

1  going to -- we would file the judicial estoppel brief jointly,

2  the FCC -- FCR and the ACC.

3          THE COURT:  Okay.  That's fine.  To make sure I

4  understand, 30 days from now I'm going to get what I will call

5  the reply briefs on the judicial estoppel issue from any party

6  who's going to submit one, and 14 days thereafter I'm going to

7  get the surreply on that issue.  Okay.  30 days from now I'm

8  going to get Maryland's motion and brief concerning I'll call

9  it the standing -- the party in interest standing of entities

10  other than the debtor to join in the debtor's objection, and 14

11  days thereafter I'm going to get the responses.  Both of those

12  issues will be argued on June 7th.  Is that everybody's

13  understanding?

14                      (No verbal response)

15          THE COURT:  Okay, then I'm on the same page.  Let me

16  make a note to make sure that I remember what I'm getting.

17                      (Pause)

18          THE COURT:  Okay.  Thank you.

19          MS. BAER:  Your Honor, would you like an order

20  setting forth those dates?

21          THE COURT:  That would probably be a good idea.

22          MS. BAER:  Will do so.

23          THE COURT:  Thank you.  Mr. Freedman.

24          MR. FREEDMAN:  Yes, Your Honor.  So we've been

25  chatting about what would best help the Court in terms of

**J&J COURT TRANSCRIBERS, INC.**

1  moving this process forward, and frankly, we have a couple of

2  concerns, because, obviously, the plan proponents want to move

3  the process forward as quickly as possible.  We also understand

4  and are very desirous of giving the Court something that is

5  simple and straightforward, because this is such a complex

6  case, and there's so many different dimensions of issues that

7  are before the Court.

8         I would point out that the charts which were filed,

9  in particular, the one that was filed as of March 30th, is

10 organized to go through the various findings and conclusions.

11 In other words, each column in that chart lays out -- the first

12 column lays out a necessary finding that this Court would need

13 to make in order to properly confirm the plan.  The next column

14 identifies what the objections are and where those objections

15 can be found.  And the third column identifies the plan

16 proponents' responses to those objections.

17        So in that sense the Court actually does have now

18 before it a document which we worked hard to try and set

19 forward in a simple way as we could that does what the Court

20 asked for.  And followed -- and that is followed by an Appendix

21 A, which identifies all of the objections that have been

22 settled and resolved and the nature of the resolution, a

23 summary of those resolutions.

24        Within the chart itself is -- are various boxes, if

25 you will, where an objection was pending, and it has been

**J&J COURT TRANSCRIBERS, INC.**

1 stricken out because of a settlement, so that the main chart

2 shows objections that are no longer pending, and then Exhibit A

3 identifies in a different way those same objections and the

4 nature of the resolution, all of which has been filed by the --

5 for the Court through various plan modifications or settlement

6 agreements.

7        And finally, there is also an Appendix B to the chart

8 which is a summary of remaining confirmation objections in kind

9 of a bullet point form.  If it would help the Court, I can hand

10 up my copy of this to --

11        THE COURT:  I have it.

12        MR. FREEDMAN:  Oh, okay.  So we have through that

13 document I believe in one format all of the information that

14 the Court was asking to receive.

15        Now, what we would propose to do, if the Court thinks

16 that this additional step would be helpful, is to go through

17 the proposed findings that we submitted and identify which ones

18 are uncontested, either because they were not contested or

19 because of settlement.  That's effectively already what's in

20 the chart, but we can set it forth in another format if the

21 Court thinks it would be helpful.

22        THE COURT:  Well, this chart links to the trial

23 briefs to the objections that were filed not to the evidence.

24 That's what the chart does.  The proposed findings link to the

25 evidence, and, as a result, I haven't attempted to match this

1  up with the proposed findings.  But it seems -- and I'm looking

2  now to see whether the evidence is cited in either Appendix A

3  or B, and I'm not seeing that it is, so I think -- wait one

4  second.  No, it cites -- the appendices cite back to the

5  objection charts but not to the evidence, and the objection

6  charts cite to the legal argument but not to the evidence.  The

7  proposed findings should be dealing with the evidence.  That's

8  why I'm not sure how these -- the chart matches up with the

9  proposed findings.

10       I understand when you're saying Column 1.  Let's just

11 look together for a second.  If I turn to the very first page

12 of the chart that was filed on March 30, Number 1 says,  "Good

13 faith, 1129(a), plan must have been proposed in good faith and

14 in accordance with the law."  Obviously, that's a finding the

15 Court has to make.

16       And the first column then states why the plan

17 proponents feel that the -- or I'm sorry.  It states

18 essentially the legal proposition.  The second column states

19 the objection, and the third states the response.  But all of

20 the citations are not to the evidence that support the

21 proposition but to the legal argument that support it.

22       MR. FREEDMAN:  Well, they actually -- it's -- by

23 reference, it's to both, because we cite the pages in our

24 briefs, and at the Court's instructions all of these briefs

25 were hyperlinked --

1             THE COURT:  Contain the findings.

2             MR. FREEDMAN:  -- to the evidence.

3             THE COURT:  All right, so if I, for example -- I

4   don't have this here.  If I checked, for example, again just

5   looking at the first box, the third column, "PP Main -- Plan

6   Proponents' Main Pretrial Brief at 57 and Post-trial Response

7   at 2 to 3."  Those are going to be proposed findings not legal

8   argument.

9             MR. FREEDMAN:  Right.

10            THE COURT:  All right.  Well, if that's the case, I'm

11  not sure I need anything else.  Let me check with my law clerk.

12  We'll take a brief recess and see whether or not that's all I

13  need.  I don't want you to do additional work if I don't need

14  it.

15            MR. FREEDMAN:  Thank you.

16            MS. BAER:  And, Your Honor, it's the post-trial

17  briefs that have the proposed findings in them, because those

18  are the ones that were filed after the trial that point to the

19  evidence.  So you're -- when you look at the response column,

20  you've got both the pretrial brief where it was discussed, and

21  then the post-trial which would have the evidence and the

22  proposed finding.

23            THE COURT:  All right, so in the pretrial brief it's

24  the argument.  In the post-trial it's the finding.

25            MS. BAER:  Right.

                    **J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  Okay.  One second.

2                    (Pause)

3          THE COURT:  Okay.  All right.  Before we start --

4  I'll take a break at the end of the entire agenda for just a

5  few minutes to check this with my law clerk before we start the

6  trial, and then I'll let you know whether I need anything more.

7          MR. FREEDMAN:  Okay, Your Honor, Mr. Pasquale is

8  suggesting that at least as to the materials submitted in

9  connection with the lender arguments, they may not have been

10 submitted in the form of findings.

11         THE COURT:  Actually, a number of them haven't been

12 submitted in the form of findings.  The plan proponents were

13 but not all other parties did.

14         MR. FREEDMAN:  The plan proponents understood that

15 those were the instructions that the Court gave, and so we

16 fashioned our briefs in that format.  Apparently, the lenders

17 did.  But I will say that what the chart does is, particularly

18 with respect -- as Ms. Baer clarified with respect to the post-

19 trial memoranda, it identifies the portions of the post-trial

20 memoranda that addressed each of these issues in Column 1, and

21 within each of those post-trial memoranda all the parties cited

22 their evidence.  So the references to the evidence are captured

23 by the pages that are identified on the chart.

24         THE COURT:  Okay.  Mr. Pasquale.

25         MR. PASQUALE:  Thank you, Your Honor.  My

1  recollection, Your Honor, is at the time the Court did not and

2  specifically said it did not want findings, it wanted -- I want

3  to use the word different than the pretrial briefs  Your Honor

4  will recall.  You didn't want repeated legal argument.  You

5  wanted specific citations to the arguments and then to the

6  evidence, and that's, of course, what we gave you.  You did not

7  ask at the time for specific findings of fact and conclusions,

8  because there were so many open issues, and you said that

9  wouldn't be helpful to the Court.

10         So Mr. Freedman's right, the evidence is cited in our

11 briefs.  It's all there for the Court to see.  I was just

12 concerned sitting in the back hearing the discussion that Your

13 Honor -- the references to findings of fact that the Court was

14 being -- was a bit confused over what it had, and I just wanted

15 to be clear that you do have specific citations to the evidence

16 --

17         THE COURT:  I am --

18         MR. PASQUALE:  -- tied back to the legal argument.

19         THE COURT:  I am confused about what I have --

20         MR. PASQUALE:  Right.

21         THE COURT:  -- because there have been so many

22 changes that have come in since the time that we -- I heard the

23 evidence and what I thought I was getting, that I don't know

24 what I have.  That's the truth.  And whether I'm going to be

25 able to get through it in some organized fashion with what I

**J&J COURT TRANSCRIBERS, INC.**

1  have, I don't know yet.  I haven't really started down that

2  track.

3          MR. PASQUALE:  One thing that is clear is as to the

4  Committee and bank lender issues, none of that has changed,

5  Your Honor --

6          THE COURT:  Yes.

7          MR. PASQUALE:  -- at any point in this process.

8  Thank you, Your Honor.

9          THE COURT:  I've been hopeful, Mr. Pasquale.

10          MR. PASQUALE:  Thank you.

11          MR. FREEDMAN:  Your Honor, again, the plan proponents

12  are absolutely willing to do anything that the Court finds will

13  be helpful.  My only point in these comments is to sort of

14  direct the Court to what we have provided, which we thought

15  would actually give the Court what it needed to proceed in that

16  direction.

17          And I just have two other comments I'd like to make

18  before -- if I could, before the Court checks with the clerk.

19  One is to clarify what was actually filed on March 19th.  What

20  was filed on March 19th is a amended -- oh, excuse me -- is a

21  modified plan, if you will.  That document, the document that

22  was filed by -- on March 19th,  was filed as a black line, so

23  that it shows the changes from prior versions of the plan.  We

24  did not file a single clean document that said the proponents'

25  plan as of March 19th.  We'd be happy to file that, and that

1  can be done very quickly, if the Court would be -- prefer to be

2  working from a clean document as opposed to the black line

3  documents --

4          THE COURT:  Yes.

5          MR. FREEDMAN:  -- that were filed on March 19th.

6          THE COURT:  I would prefer to work from a -- from one

7  final document, something that I don't have to worry about

8  strikeouts and black lines and edits.  I would prefer to have a

9  clean document, so I know what the final version actually is.

10          MR. FREEDMAN:  That's fine, Your Honor, then we will

11  submit that immediately.

12          The other thing is that if I could just go back to

13  the thought that it might be helpful to the Court to see a

14  proposed confirmation order.  The reason why we think -- the

15  plan proponents think that that could be helpful to the Court

16  is, because the nature of this plan is such that there are a

17  lot of intricate findings and rulings of law that we ask the

18  Court to make as part of confirmation of the plan. And we

19  though that it would be helpful for the Court to actually see

20  the order that we believe would accomplish that purpose in

21  terms -- so that when the Court is going through the process of

22  considering confirmation, you could actually see what the --

23          THE COURT:  That's fine.

24          MR. FREEDMAN:  -- plan proponents are striving for.

25  So to the extent that the Court would allow us to, we we'd like

1  to file a proposed order, too.

2          THE COURT:  You can always a proposed order.  I'm

3  happy to take a look at the proposed order.

4          MR. FREEDMAN:  Well, with that, Your Honor, we'd be

5  happy --

6          THE COURT:  If you're going to do it, cite back to

7  the record, so I know where it is that you're citing me to  the

8  record in the proposed order for finding and --

9          MR. FREEDMAN:  Well, there again we have sort of the

10 dichotomy between the proposed findings and conclusions which,

11 I respectfully disagree with Mr. Pasquale, at least from the

12 plan proponents' standpoint, we believe we filed, but we'd be

13 happy to file amended renewed ones, if the Court thinks it'll

14 be helpful, and the separate order that the Court would have to

15 enter, which actually decrees the various things that are

16 necessary for confirmation.  We understand that those would

17 appear in two different documents, one proposed findings and

18 conclusions and one a proposed order.  And so what we're

19 talking about at this point is to let the Court see what the

20 order would look like.

21         THE COURT:  The order would incorporate proposed

22 findings and conclusions.  I mean, otherwise, you can just have

23 an order that says the plan's confirmed --

24         MR. FREEDMAN:  Well --

25         THE COURT:  -- as stated in the proposed findings and

1 conclusions.

2          MR. FREEDMAN:  It's more intricate than that.

3          THE COURT:  All right.  Submit whatever you want to

4 submit, Mr. Freedman.

5          MR. FREEDMAN:  Thank you, Your Honor.  That's all

6 right.  I just -- that's what I was thinking.  If we could

7 request that the Court then consider -- confer with the clerk,

8 if you think that that's appropriate, so that we can get the

9 appropriate instructions and whether we need to file something

10 else and how -- and what it would look like.

11          THE COURT:  All right, so you're going to file a

12 clean version of the plan.

13          MR. FREEDMAN:  That's right.

14          THE COURT:  And a proposed confirmation order, and

15 when is that coming in?

16          MR. FREEDMAN:  The clean version of the plan will be

17 filed before the end of the week, and the clean -- and the

18 proposed order, we could file that by the end of next week at

19 the latest.

20          THE COURT:  All right.  Are there any other issues on

21 today's agenda or anything anyone wants to raise before I take

22 a ten-minute recess other than the trial, which we will start

23 after a brief recess?  Ms. Baer.

24          MS. BAER:  Your Honor, I have one matter to attend to

25 that's pretty much for the convenience of all parties.  Our

1  next omnibus hearing is on May 3rd.  Your Honor, the

2  preliminary agenda is due today.  The objection deadline was

3  last Friday, and there are no contested matters.  We will be

4  submitting certificates of counsel on all of the matters that

5  were on the agenda.  So assuming that Your Honor would enter

6  those orders, there's actually no need for the omnibus hearing

7  on May 3rd.

8          THE COURT:  Okay.

9          MS. BAER:  And, Your Honor, I'm not sure how you want

10 to handle that.  Perhaps after the orders are entered, if, in

11 fact, they are entered, it would be canceled at that time.

12         THE COURT:  I think that would be fine, Ms. Baer.

13 You'll know when all of the orders have been entered, if they

14 all are.  You could just simply do a notice that cancels the

15 hearing, otherwise, we could set it up telephonically in the

16 event that there is still something left.

17         MS. BAER:  Your Honor, once the orders are entered,

18 then I'll contact your chambers, but I just wanted everybody to

19 know that it's extremely unlikely that we will be seeing you on

20 May 3rd.

21         THE COURT:  All right.

22         MS. BAER:  Thanks.

23         THE COURT:  Okay.  Thank you.  Anything else before I

24 take a brief recess?

25              (No verbal response)

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  All right.  We'll be in recess for ten

2    minutes.

3                         (Pause)

4          THE COURT:  Oh, could I -- may I ask the parties for

5    the trial, can you give me an estimate of how long it's going

6    to be?  Judge Gross has a proceeding at 1:30.  If we're going

7    to be longer than that, we need to move.

8          UNIDENTIFIED ATTORNEY:  A couple days, Your Honor.

9                        (Laughter)

10          UNIDENTIFIED ATTORNEY:  I would think 20 minutes, 15

11    to 30 -- 15 to 30 minutes is what we estimated, and I think

12    that's probably correct.

13          THE COURT:  Mr. Speights.

14          MR. SPEIGHTS:  I agree, Your Honor.

15          THE COURT:  Wow.

16                        (Laughter)

17          THE COURT:  Okay.  We'll be in recess for ten

18    minutes.  Thank you.

19                         (Recess)

20          THE CLERK:  All rise.

21          THE COURT:  Please be seated.  I believe that we have

22    everything we need in terms of the charts and the analysis of

23    the evidence.  If, as we're actually going through it, I see

24    that I'm incorrect and we need something more, we'll do an

25    order.  But I think for now we're okay.

**J&J COURT TRANSCRIBERS, INC.**

1            MR. FREEDMAN:  So with the Court's permission, then

2    we will then proceed to file a clean plan, as we  indicated, by

3    the end of this week, and a proposed confirmation order by the

4    end of next week.

5            THE COURT:  Yes, sir, that's fine.

6            MR. FREEDMAN:  Thank you, Your Honor.

7            THE COURT:  Okay.  Anything more before we start the

8    trial?

9                      (No verbal response)

10            THE COURT:  Okay.  Everyone else is excused.  Thank

11    you.

12            MR. LOCKWOOD:  Thank you, Your Honor.

13                          (Pause)

14            THE COURT:  Okay.  We are back in the W.R. Grace

15    matter on a trial set for objections to two Canadian property

16    damage claims, Numbers 11627 and 12476, and on the April 19th

17    agenda this is agenda Number 15, and it refers to Docket Number

18    23724.  May I get entries of appearances just for counsel who

19    are going to be doing any presentation regarding the trial,

20    please?

21            MR. RESTIVO:  Your Honor, James Restivo for the

22    debtor.

23            MR. SPEIGHTS:  Dan Speights for the Canadian

24    claimants, Your Honor.

25            THE COURT:  Okay, Mr. Restivo.

**J&J COURT TRANSCRIBERS, INC.**

1                          (Pause)

2                THE COURT:  Mr. Speights.

3                MR. SPEIGHTS:  Your Honor, I mentioned to Mr. Restivo

4    and he kindly gave me the podium to simply preserve our

5    objections on two matters.  First, Your Honor, we previously

6    took the position with the Court that the debtors have not

7    objected to the Canadian claims on the grounds of the ultimate

8    statute of limitations.  Your Honor rejected that contention

9    both at one or more hearings and in your previous order on the

10   35.  I just wanted to reserve it on behalf of these two

11   claimants as well.

12               Secondly, Your Honor, we previously took the position

13   that the Canadian claimants are part of the Anderson class.

14   Your Honor, of course, has denied certification of the Anderson

15   class, and again, I just wanted to preserve our position on

16   that as well.

17               THE COURT:  All right.  Thank you.

18               MR. SPEIGHTS:  Thank you, Your Honor.

19               THE COURT:  Mr. Restivo.

20               MR. RESTIVO:  Your Honor, we are here today to try

21   the Canadian limitations period issue with respect to two

22   asbestos property damage claims.  With respect to those claims,

23   we have two exhibits that we will move in a minute, and there

24   are no objections to authenticity of those two exhibits.

25               Your Honor, the ultimate statute of limitations

**J&J COURT TRANSCRIBERS, INC.**

1  period we will be trying is a 30-year period, which we believe

2  is triggered by installation of the product.  There is also a

3  regular limitations objection which is six years in Canada.

4  These two claims were subject to our motion on the regular

5  statute of limitations.  The parties then asked the Court not

6  to rule on the regular statute of limitations, and ultimately,

7  those cases were settled for a variety of reasons.  These two

8  were not settled even though some of us thought they were

9  settled.  So we have also raised the regular statute of

10 limitations.  We believe that is also triggered by installation

11 under <u>PriVest</u>.

12        But in talking about this before the hearing, before

13 the trial with Mr. Speights, he indicated that the plaintiffs

14 are here -- claimants are here to try the ultimate statute of

15 limitations, and so we just want the record to be clear that we

16 do have on file the original motion for summary judgment on the

17 regular statute of limitations.  We will not be trying that

18 today, even though we believe the evidence is the same given

19 Mr. Speights' position.  Obviously, if the Court rules in favor

20 of our position on the ultimate statute, the regular statute's

21 irrelevant as it was with respect to the Court's prior ruling

22 on the ultimate statute, but we want the record to make sure

23 that we have preserved our objection based upon the regular

24 statute.

25        THE COURT:  All right.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. RESTIVO:  Secondly, Your Honor, we provided to

2   Mr. Speights on Friday, consistent with the 24 hours in advance

3   rule of this court, a set of proposed findings of fact and

4   conclusions of law on both of these claims.  They are very

5   short, but some of them -- some of the conclusions of law deal

6   with the regular statute of limitations, since we believe it's

7   the same.  We would like to provide to the Court our proposed

8   findings of fact and conclusions of law which we have already

9   provided to Mr. Speights and just ask the Court to simply

10  ignore the conclusions of law relating to the regular statute

11  of limitations.

12          THE COURT:  All right.

13          MR. RESTIVO:  May I hand this to the Court?

14          THE COURT:  Yes.  Thank you.

15          MR. RESTIVO:  Your Honor, we move into evidence

16  Exhibits -- Exhibit D-1, the claim file for Claim Number 11627,

17  and Exhibit D-2, the claim file for Claim Number 12576.

18          THE COURT:  Mr. Speights, is there any objection?

19          MR. SPEIGHTS:  Well, I certainly don't object to the

20  authenticity of those documents.  They are the claim forms that

21  we submitted.  I believe we will argue that most of the

22  information contained in that -- in those documents is

23  irrelevant to the issue on the ultimate statute of limitations.

24  So, technically, I would object on that grounds of relevancy,

25  but I understand Your Honor will have the claims before you,

1  and we can deal with that during the argument following the

2  evidence.

3          THE COURT:  All right.  That's fine.  I will admit

4  them subject to a determination of relevance with respect to

5  the information contained therein.  Let me make a note, please.

6  That's Exhibits D-1 and D-2 are admitted subject to a

7  determination of relevance regarding the ultimate statute of

8  limitations.  Okay.

9          MR. RESTIVO:  And, Your Honor, by way of a opening

10 statement, the evidence in those exhibits, taking them

11 separately, is as follows.

12         With respect to Claim Number 11627, which is a senior

13 secondary school in School District 68 called Nanaimo-

14 Ladysmith, the evidence will show that the property is located

15 in British Columbia, Canada.  That the claimant purchased the

16 property on January 9, 1951.  That's at Page 03 of Exhibit D-1.

17 That the claimant did not install or have anyone install on its

18 behalf the asbestos-containing product for which it's making a

19 claim in this case, and, therefore, that the asbestos-

20 containing product on this claim was installed before January

21 9, 1951.  January 9, 1951 is more than 30 years before the

22 debtor filed their Chapter 11 cases on April 2, 2001, and as a

23 result of that, this claim was filed more than 30 years after

24 this product was installed as shown by Exhibit D-1, therefore,

25 consistent with the Court's prior ruling.  Therefore, this case

1  is barred by the British Columbia ultimate statute of

2  limitations.

3         Claim Number 12476 is a theater and related rooms of

4  a theater by the City of Vancouver.  That is Claim Number

5  12476.  I believe the theater in the claim form is known as the

6  Queen Elizabeth's Theater and Playhouse.  The claim form

7  establishes that this property is located in British Columbia,

8  Canada.  That the claimant purchased the property on July 1,

9  1956.  That the claimant did not install or have installed the

10 asbestos-containing product for which it is making a claim.

11 That, therefore, the claimant is making a claim on asbestos

12 installed in the property before July 31, 1956, and July 31,

13 1956 is more than 30 years before the debtor's filed their

14 Chapter 11 case, and, therefore, the claim is barred by the 30-

15 year ultimate statute of limitations.

16        Lastly, Your Honor, there are some attachments filed

17 with the claim form.  This claim form was initially filed on

18 March 30, 2003.  It was supplemented on May 16, 2005.  It was

19 further supplemented on January 20, 2006 and on September 25,

20 2006.

21        In sum, of the supplemental material, at least one

22 report suggests that the room this product was in was a room

23 that was added six years after purchase of the building, some

24 time in 1961.  That is not consistent with the claim form, but

25 even if that were correct, the 30-year statute would've run 30

1 years after 1961 or 1991, and, therefore, even if the

2 installation period is a little bit ambiguous because of one

3 attachment, it is either the construction of the original

4 building in 1956 or the construction of some other something in

5 1961, both of those being barred by the 30-year ultimate

6 statute of limitations.  That concludes our case, Your Honor.

7          THE COURT:  Mr. Speights.

8          MR. SPEIGHTS:  May I assume, Your Honor, that debtors

9 rest?

10          MR. RESTIVO:  The debtors rest, Your Honor.

11          MR. SPEIGHTS:  And, Your Honor, at this time the

12 Canadian claimants would make a motion for directed verdict.

13 If it would expedite matters, Your Honor, if you should deny my

14 motion for directed verdict, I'm not going to offer any

15 evidence, so we can proceed to argument on both at the same

16 time.

17          THE COURT:  Well, I think I have to deny it based on

18 my prior rulings.  I'm not aware of any appellate decisions on

19 those matters.  Have there been any, before I deny it, on the

20 basis of my prior rulings?  It would nice to know.

21          MR. SPEIGHTS:  Well, I'm not aware of any additional

22 Canadian appellate rulings, but I can just -- let me address

23 the motion for directed verdict, and then I can say -- I can

24 repeat myself in the event that you deny it.

25          The only appellate ruling that I'm aware of in Canada

1  is the one that the debtors do not focus on, and that is the

2  appellate ruling in _PriVest_.   _PriVest_, of course, was a trial

3  court decision, and I don't think it has precedential effect,

4  although I understand Your Honor has looked for that decision

5  as being some precedent in the absence of anything else in

6  Canada.

7         But the _PriVest_ decision was appealed.   It was

8  affirmed on appeal, but as I read the appellate decision in

9  Canada, it was careful to say we're ruling on these facts and

10  not trying to decide precedence for all other cases, and I

11  think that's important in that case even though it's not an

12  ultimate statute of limitations case.   Counsel uses it in this

13  matter as well as to when a cause of action arises.   I think

14  that's important, because we don't agree with the way that the

15  plaintiffs tried the case in Canada, and we don't think we are

16  bound by statements that trial counsel in the _PriVest_ case made

17  in Canada.

18         But to answer your direct question, that is the only

19  appellate decision in an asbestos property damage case in

20  Canada that I'm aware of.   Your Honor, we're also -- we do also

21  have, however, the appellate decision in this bankruptcy, and

22  that is the District Court's decision in the California case,

23  which we think is instructive, number one, on the very issue in

24  dispute here, albeit not Canada law.   But we also think that

25  the Court has a threshold issue in this case as to whether

1 Canada law applies or Delaware law applies.

2          That issue was not argued in your dealing with the 35

3 cases, but Grace has consistently taken the position throughout

4 this bankruptcy that on limitations issues Delaware law

5 applies, and Your Honor in the California case agreed with

6 that.  The District Court had the temerity to disagree with

7 Your Honor on that.  Grace did not take an appeal on that, and

8 now you have these two California -- these two Canadian

9 claimants taking the position.  I represent a lot people, and a

10 lawyer can take different positions for different clients.  For

11 these two clients I agree with Grace that the Delaware law

12 should apply.

13          THE COURT:  But I've been beaten down on that.  I

14 think Delaware law should apply in a lot of circumstances, too,

15 Mr. Speights, but --

16          MR. SPEIGHTS:  Well --

17          THE COURT:  -- as one of my colleagues says, my

18 learned colleagues in this case, I -- I guess -- I'm not sure

19 if Philly is actually east now.  I'm accustomed to sitting in

20 Pittsburgh, and they talk about the District Court when there

21 the Appellate Court judges in the east have disagreed.  So I'm

22 not sure where we sit geographically, but, in any event, my

23 learned colleague has disagreed.

24          MR. SPEIGHTS:  And I appreciate Judge Buckwalter's

25 view, which are consistent with some views, I take it, it don't

1  representing other claimants before you, however, I will just

2  say that eventually one day this case could end up in the Third

3  Circuit, and so I need to protect my record of course on this.

4  I understand Your Honor's reluctance to disagree with Judge

5  Buckwalter today.

6           But my legal position is, number one, Delaware law

7  should apply, and they haven't met their burden on Delaware law

8  that these claims would be barred, and, number two, if we have

9  to go to Canadian law, and I understand Your Honor's ruling,

10 and that's why I will not be very long-winded, however, it

11 seems to me that the statute on its face is absolutely clear.

12 The ultimate statute for British Columbia -- and, as Your Honor

13 knows, each one of these statutes differ among -- from province

14 to province in Canada, but the one in British Columbia, and you

15 only had, I believe one British Columbia claim before you in

16 your previous order, says 30 years from the date on which the

17 right to bring the action arose.

18          So Mr. Restivo is arguing with some authority from

19 Your Honor that the -- that these two British Columbia

20 claimants had the right to bring asbestos property damage cases

21 more than 30 years ago, and I believe that that is not

22 established in Canada.

23          Again, _PriVest_ is one trial court case which the

24 Appellate Court says is not precedent for anything, in my view,

25 but that case.  There's a mixed factual presentation.  There's

1 a legal theory the plaintiffs took, which is not consistent

2 with the way we try the cases down here, and we are now

3 instructed by the same decision, and which Your Honor, of

4 course, is going to accept in the choice of law issue, but the

5 same decision on an analysis of when does an asbestos property

6 damage case arise.

7        And Judge Buckwalter says not until there's been

8 injury, and there's no injury until -- and we could start

9 talking about what the until makes, and Mr. Restivo, I don't

10 believe, has shown, representing the debtors, that there was an

11 injury more than 30 years before this bankruptcy was filed.  In

12 fact, he would be in an interesting position trying to prove

13 that his product caused injury more than 30 years before the

14 bankruptcy applied.

15        So in summary in support of the motion for directed

16 verdict, Your Honor, I don't believe that they have shown that

17 the case -- the claims are barred under Delaware law, and I

18 don't think they have shown that there was injury more than 30

19 years before the bankruptcy was filed, and that mere

20 installation is not injury, and I don't think they could have

21 brought a lawsuit more than 30 years before the bankruptcy

22 applied -- was filed.  Thank you, Your Honor.

23        THE COURT:  All right.

24        MR. RESTIVO:  Very quickly, Your Honor.  The regular

25 statute of limitations in Vancouver begins on, "the date on

1  which the right to do so arose."  The ultimate statute of

2  limitations in Vancouver begins using the same language, "the

3  date on which the right to do so arose."  PriVest was a

4  Vancouver case.  PriVest ruled that the date on which the right

5  to do so a rose meant with respect to Grace's Monokote, that

6  the right to do so arose on the date of installation.

7         This Court correctly ruled that that holding in

8  PriVest is equally applicable to the exact same language under

9  the ultimate statute, and under the law of this case for the

10  reasons set out in this Court's prior opinion, the judgment,

11  the verdict, the ruling should be in favor of the objections

12  and these two claims expunged.  Thank you, Your Honor.

13         THE COURT:  Mr. Speights, I'm not sure.  You said you

14  were not proffering any evidence.  Are the claimants then

15  resting?

16         MR. SPEIGHTS:  If you deny my motion for directed

17  verdict, I will, Your Honor.

18         THE COURT:  Okay.  Yes, I am denying the motion for

19  directed verdict, simply because I believe that the issue is

20  identical to the issue with respect to the one British Columbia

21  claim that was involved in the 35, and I don't see a

22  distinction having looked at -- and I thank you for the binders

23  in advance.  I did have a chance to go through them.  I don't

24  see any material distinction in the claim that was at issue in

25  the 35 and here with respect to the application of the ultimate

1 statute of limitations and when it began to run.  So yes, the

2 motion for directed verdict is denied.

3          MR. SPEIGHTS:  Claimants rest, Your Honor.

4          THE COURT:  All right.

5                         (Pause)

6          THE COURT:  Mr. Speights, do you have any additional

7 argument?

8          MR. SPEIGHTS:  No, Your Honor.

9          THE COURT:  All right.  Do you, Mr. Restivo?

10          MR. RESTIVO:  No, Your Honor.

11          THE COURT:  Okay.  Well, of course, I think, with all

12 due respect, that Judge Buckwalter was in error, but

13 nonetheless, I'm a little hesitant, I think, to disagree with

14 Judge Buckwalter, and, as a result, I don't believe that there

15 is any basis on this record that I could apply a Delaware

16 limitations period, although I believe that there is a

17 difference in looking at international law issues with respect

18 to the comity and so forth.

19          Nonetheless, I don't believe that that is material to

20 the Court's determination.  I think this case is governed by

21 the earlier opinion that I wrote, and, as a result, the

22 ultimate statute of limitations will bar this action.

23          In the event that I am reversed, then I think there

24 is still the motion for summary judgment pending on the regular

25 statute of limitations issue.  Is there some proceeding that

1  you want to address with respect to the regular statute of

2  limitations issues now or should that abide future courses of

3  events?

4          MR. RESTIVO:  I think we need to abide the course of

5  events given what Mr. Speights told me before we started, which

6  is he is here to try the ultimate statute of limitations.  If

7  we need to try the regular statute of limitations, we would

8  represent to the Court our evidence in this trial is the same

9  evidence we would put in for the regular statute, and maybe Mr.

10 Speights and our side and the Court could agree that we would

11 use this record and simply argue from that by way of argument,

12 but I don't think we have to decide that today, Your Honor.

13 But we would have no different evidence other than the claim

14 files we already introduced.

15         THE COURT:  Mr. Speights.

16         MR. SPEIGHTS:  Well, first of all, of course, Mr.

17 Restivo and I had a lot of credibility, because we met just 20

18 minutes outside there.  I came to try the ultimate statute,

19 because the pretrial statement -- our pretrial order deals only

20 with the ultimate statute.  I really hadn't thought through

21 these other things, but I'm confident if a trial is required on

22 the regular statute of limitations, that Mr. Restivo and I

23 could work together.  But I frankly haven't thought through

24 what that might entail.

25         THE COURT:  All right.  I will -- I think what I need

**J&J COURT TRANSCRIBERS, INC.**

1  then is an order from the debtor -- let me move this one note

2  -- that will indicate that for the reasons expressed on this

3  record and in the opinion that I previously wrote these two

4  claims are barred by the ultimate statute of limitations.  I

5  will take that order from the debtor after you run it by Mr.

6  Speights.

7        And then I guess I'll just wait to hear from you

8  folks with respect to the motion for summary judgment.  Should

9  it just sit out there until --

10       MR. SPEIGHTS:  Actually, it's sitting out there for

11  the 35 as well, because once you enter that order, we file a

12  notice of appeal on that, and I would think that --

13       THE COURT:  That's still pending.

14       MR. SPEIGHTS:  -- after that appeal is disposed of,

15  one way or the other, if Your Honor is affirmed, it will

16  evaporate.

17       THE COURT:  Okay, then I'll just wait to hear from

18  you about that, because I think you're correct.  It's still out

19  there on the other matters, too.  So okay.  I'll take an order

20  when the debtor submits it, and thank you very much.  Anything

21  further?

22       MR. RESTIVO:  No, Your Honor.

23       MR. SPEIGHTS:  No, Your Honor.

24       THE COURT:  This may be the shortest trial I've ever

25  conducted.  We're adjourned.  Thank you.

**J&J COURT TRANSCRIBERS, INC.**

* * * * *

## C E R T I F I C A T I O N

1  I, PATRICIA C. REPKO, court approved transcriber,
2  certify that the foregoing is a correct transcript from the
3  official electronic sound recording of the proceedings in the
4  above-entitled matter, and to the best of my ability.

/s/ Patricia C. Repko          DATE:  April 22, 2010
PATRICIA C. REPKO
J&J COURT TRANSCRIBERS, INC.