# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.[1] | ) Case No. 01-01139 (JKF) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) |

**[PROPOSED] ORDER CONFIRMING FIRST AMENDED JOINT PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF W. R.
GRACE & CO., ET AL., THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL
INJURY CLAIMANTS, THE ASBESTOS PI FUTURE CLAIMANTS' REPRESENTATIVE,
AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS AS MODIFIED
THROUGH _____ 2010**

---

[1]   The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.),
W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon,
Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc.,
Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC
(f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a
Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC
Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities
Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary
Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe,
Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc.
(f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace
Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.
R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe
Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai
Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH,
Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings
Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA
Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental
Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin &
Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country
Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## INTRODUCTION

WHEREAS, the above-captioned debtors (collectively, the "Debtors" and, as reorganized entities after emergence, the "Reorganized Debtors"), together with the Asbestos Claimants' Committee, the Asbestos PI Future Claimants' Representative, and the Official Equity Committee proposed the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders As Modified Through _____ 2010 (as it may be further modified hereafter in accordance with its terms, this Confirmation Order, and the Bankruptcy Code, the "Plan");[2]

WHEREAS, on March 9, 2009, the Bankruptcy Court entered the Order Approving the Disclosure Statement, Solicitation and Confirmation Procedures, Confirmation Schedule and Related Relief (D.I. 20944) (the "Solicitation Procedures Order"), by which the Bankruptcy Court, among other things, (1) established procedures for the solicitation and tabulation of votes to accept or reject the Plan; (2) approved the Disclosure Statement; and (3) scheduled a hearing to consider Phase I of the Confirmation Hearing on the Plan to commence on June 22, 2009 at 9:00 a.m., prevailing Eastern time and set a hearing to consider Phase II of the Confirmation Hearing on the Plan to commence on September 8, 2009 at 11:00 a.m., prevailing Eastern time (the "Confirmation Hearing");

WHEREAS, an affidavit of service was filed by the BMC Group, Inc. ("BMC") on August 17, 2009 (service commenced on April 1, 2009) (D.I. 22825) respecting service of the

---

[2]   Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Plan.  For the avoidance of doubt, this Confirmation Order shall be interpreted and construed in accordance with the provisions of Section 1.2 of the Plan.

Disclosure Statement, solicitation materials, and the Exhibit Book containing the Plan and other plan documents;

WHEREAS, an affidavit of publication was filed by the Debtors with the Bankruptcy Court on June 3, 2009 (D.I. 21974) regarding, *inter alia*, the publication of the notice of the Confirmation Hearing, as approved by the Bankruptcy Court, in certain magazines and newspapers and as set forth in the Solicitation Procedures Order;

WHEREAS, BMC, the Court-appointed solicitation and tabulation agent in respect of the Plan, filed (a) the Declaration of Kevin A. Martin Certifying Tabulation of Ballots Regarding Vote on First Amended Joint Plan of Reorganization, on June 8, 2009 (D.I. 22020); (b) Exhibit A to the Declaration of Kevin A. Martin Certifying Tabulation of Ballots Regarding Vote on First Amended Joint Plan of Reorganization, on June 10, 2009 (D.I. 22044); and (c) the Amended Declaration of Kevin A. Martin Certifying Tabulation of Ballots Regarding the Plan on August 17, 2009 (D.I. 22825) (collectively, the "BMC Voting Declarations");

WHEREAS, as indicated in the BMC Voting Declarations, every impaired class populated by Claims entitled to vote on the Plan, voted to accept the Plan, as follows:

| Description of Class | Class Designation |
| --- | --- |
| Asbestos PI Claims | Class 6 |
| Asbestos PD Claims --(all except US ZAI PD Claims) | Class 7A (unimpaired -- vote for §524(g) purposes only) |
| Asbestos PD Claims (US ZAI PD Claims) | Class 7B |
| CDN ZAI PD Claims | Class 8 |
| Equity Interests in the Parent | Class 10 |

3

WHEREAS, as indicated in the BMC Voting Declarations, Class 6 accepted the Plan by 99.51% in number and 99.39% in dollar amount; Class 7A accepted the Plan by 98.99% in number;[3] Class 7B accepted the Plan by 88.42% in number and 88.60% in dollar amount; Class 8 accepted the Plan by 100% in number and 100% in dollar amount; and Class 10 accepted the Plan by 89.89% in number; [4]

WHEREAS, as indicated in the BMC Voting Declarations, General Unsecured Claims in Class 9, which the Plan Proponents asserted were unimpaired and not entitled to vote, were afforded the opportunity to cast provisional ballots on the Plan as ordered by this Court given the dispute whether Class 9 was an impaired class. Class 9 accepted the Plan by 92.54% in number, but rejected the Plan by 83.03% in dollar amounts;

WHEREAS, on May 8, 2009, the Debtors filed a Plan Supplement containing (1) the Bylaws of W. R. Grace & Co.; (2) amended certificates of incorporation of the Debtors; and (3) a list of the identity and affiliations of persons proposed to serve as initial board of directors or officers of the Reorganized Debtors (D.I. 21594);

WHEREAS, on May 15, 2009, the Debtors filed a first amendment to the Plan Supplement (the "First Plan Supplement Amendment") regarding the list of the identity and affiliations of persons proposed to serve as initial board of directors or officers of the Reorganized Debtors (D.I. 21706);

WHEREAS, on April 23, 2010, the Debtors filed a second amendment to the Plan Supplement (the "Second Plan Supplement Amendment") that amended the list of the identity

---

[3]   Class 7A was solicited and allowed to vote solely to the extent required by Section 524(g) of the Bankruptcy Code, and the approved voting procedures did not require dollar amounts. *See* Solicitation Procedures Order at p. 20 of Exhibit C thereto.

[4]   Class 10 -- Equity Interests -- was allowed to vote based on the number of shares of Parent Common Stock owned on the Voting Record Date, and the approved voting procedures did not require dollar amounts. *See* Solicitation Procedures Order at p. 21 of Exhibit C thereto.

and affiliations of persons proposed to serve as initial board of directors or officers of the

Reorganized Debtors (D.I. 24663);

WHEREAS, the objection deadline for objecting to the confirmation of the Plan

was set for May 20, 2009 pursuant to the Solicitation Procedures Order. Objections to the Plan

were filed by (1) the Bank Lender Group (D.I. 20315, 21789); (2) the Unsecured Creditors'

Committee (D.I. 20308, 21790); (3) Certain AIU Insurers (D.I. 21777); (4) Allstate Insurance

Company ("Allstate") (D.I. 20419, 21767); (5) Arrowood Indemnity Company f/k/a Royal

Indemnity Company ("Arrowood") (D.I. 20450, 21814, 21815, 21867); (6) Anderson Memorial

Hospital ("AMH") (D.I. 21782); (7) Seaton Insurance Company and OneBeacon America

Insurance Company ("Seaton OneBeacon") (D.I. 20434, 21763); (8) Maryland Casualty

Company ("MCC") (D.I. 20195, 20420, 21783); (9) the State of Montana ("Montana") (D.I.

20305, 21785); (10) Her Majesty the Queen in Right of Canada (the "Crown") (D.I. 24144); (11)

CNA Companies ("CNA") (D.I. 21794); (12) the Libby Claimants (D.I. 20313, 21811, 21952);

(13) Morgan Stanley Senior Funding ("Morgan Stanley") (D.I. 21752); (14) BNSF Railway

Company ("BNSF") (D.I. 20309, 21769); (15) Longacre Master Fund, Ltd. and Longacre Capital

Partners (QP), L.P. ("Longacre") (D.I. 20324, 21778); (16) National Union Fire Insurance

Company of Pittsburgh, Pa ("National Union") (D.I. 21779); (17) City of Vancouver (D.I.

21792); (18) School District 68 Nanaimo-Ladysmith (D.I. 21793); (19) TIG Insurance Company

and United States Fire Insurance Company (D.I. 21800); (20) Garlock Sealing Technologies,

LLC ("Garlock") (D.I. 21795); (21) Federal Insurance Company ("Federal") (D.I. 20444,

21770); (22) Government Employees Insurance Co. and Republic Insurance Company n/k/a

Starr Indemnity & Liability Company ("GEICO") (D.I. 20439, 21771); (23) AXA Belgium

Insurance Company ("AXA") (D.I. 20427, 21803); (24) Fireman's Fund Insurance Company and

Allianz S.P.A., f/k/a Riunione Adriatica Di Sicurta, and Allianz SE, f/k/a Allianz

Aktiengesellschaft (D.I. 20425, 21781, 21975); (25) Fireman's Fund Insurance Company

("Fireman's Fund") (D.I. 21791); (26) Hartford Accident and Indemnity Company ("Hartford")

(D.I. 21802); (27) Kaneb Pipeline Operating Partnership, L.P. and Support Terminal Services,

Inc. ("Kaneb") (D.I. 20307, 21707); (28) Tyco/Covidien (D.I. 21760); (29) the Edwards

Judgment Claimants (D.I. 21773); (30) the ERISA Plaintiffs (D.I. 20310, 21762); (31) General

Insurance Company of America ("General") (D.I. 21776); (32) Certain London Market

Insurance Companies ("London") (D.I. 20300, 20442, 21801); (33) the Michigan Department of

Treasury (D.I. 20260, 21611); (34) the Scotts Company LLC (D.I. 20306, 21775); (35) the St.

Paul Companies (D.I. 21876); (36) Travelers Casualty and Surety Company (D.I. 20416, 21796);

(37) the Texas Comptroller (D.I. 21291); (38) Zurich Insurance Company and Zurich

International (Bermuda) Ltd. (D.I. 20195, 20420, 21764); (39) the U.S. Trustee (D.I. 20312,

21797); (40) Joseph W. Parry-Hill (D.I. 21567); (41) Lloyd's Underwriters (D.I. 20300); (42) the

Dow Chemical Company (D.I. 20311); and (43) Owens-Illinois, Inc. (D.I. 20317);

WHEREAS, briefs were filed by the objecting parties and by the Plan Proponents,

discovery was undertaken, and the Confirmation Hearing commenced on June 22, 2009. The

June 22-23, 2009 hearing dates ("Phase I") covered certain objections raised by the Bank Lender

Group and the Unsecured Creditors' Committee with respect to impairment, and also covered

certain objections raised by various insurers regarding insurance neutrality. The second phase of

the Confirmation Hearing ("Phase II") addressed the objections of (a) parties classified under the

Plan as Holders of Indirect PI or PD Trust Claims (including insurers as Holders of Indirect PI or

PD Trust Claims with respect to such Claims); (b) the objections of the Libby Claimants; and (c)

any other confirmation objections not addressed and resolved in Phase I;

6

WHEREAS, Phase II of the Confirmation Hearing commenced on September 8, 2009 and continued through January 25, 2010, at which time the record was closed;

WHEREAS, on September 4, 2009, the Plan Proponents filed their First Set of Modifications to the Joint Plan of Reorganization (D.I. 23177);

WHEREAS, on October 12, 2009, the Plan Proponents filed their Second Set of Modifications to the Joint Plan of Reorganization (D.I. 23474);

WHEREAS, on December 16, 2009, the Plan Proponents filed their Third Set of Modifications to the Joint Plan of Reorganization (D.I. 24016);

WHEREAS, on March 19, 2010, the Plan Proponents filed their Fourth Set of Modifications to the Joint Plan of Reorganization (D.I. 24477);

WHEREAS, on ___, 2010, the Plan Proponents filed their Fifth Set of Modifications to the Joint Plan of Reorganization (D.I. _____) (collectively, with earlier modifications to the Plan, the "Modifications") **[fifth set of modifications has not been filed, but Plan Proponents anticipate filing this shortly]**;

WHEREAS, many objections were resolved or withdrawn pursuant to various settlement agreements reached between the Plan Proponents and various objecting parties as outlined in Section VII below; however, certain objections remain subject to the Court's determination as outlined in the Plan Proponents' Updated and Amended Chart (Revised) Summarizing Confirmation Requirements and Remaining Objections to the First Amended Plan of Reorganization, which Chart was filed on March 30, 2010 (D.I. 24549);

WHEREAS, the Court has reviewed the Plan, the Disclosure Statement, the Solicitation Procedures Order, the BMC Voting Declarations, the Affidavits of Service, the

7

Publication Affidavit, the objections, the statements of counsel, briefs, declarations, expert reports and all other evidence admitted as part of the Confirmation Hearing;

WHEREAS, the Court has taken judicial notice of the papers and pleadings on file and prior Court hearings in these Chapter 11 Cases and in each of the adversary proceedings filed in one or more of these Chapter 11 Cases, including the Sealed Air Action and the Fresenius Action;

WHEREAS, the Court has separately entered the Findings and Conclusions, including the findings that (i) the Bankruptcy Court and the District Court have jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (iii) each of the Debtors was and is qualified to be a debtor under section 109 of the Bankruptcy Code, and (iv) venue of the Chapter 11 Cases in the United States Bankruptcy Court for the District of Delaware was proper as of the Petition Date, pursuant to 28 U.S.C. § 1408, and continues to be proper; and

WHEREAS, the Findings and Conclusions establish just cause for the relief granted herein;

THE BANKRUPTCY COURT HEREBY ORDERS THAT:

I.    **GENERAL PROVISIONS REGARDING CONFIRMATION OF THE PLAN AND APPROVAL OF PLAN-RELATED DOCUMENTS.**

A.    **MODIFICATIONS TO THE PLAN.**

The Modifications to the Plan are deemed to be either technical changes or clarifications that do not adversely change the treatment of the Claim of any creditor of the Debtors or have been consented to by the entities affected thereby and are approved in all respects. Accordingly, the Plan Proponents are authorized to take any and all steps and actions

8

necessary to implement or effectuate any of the transactions or other matters set forth in the Modifications to the Plan.

**B.    CONFIRMATION OF THE PLAN.**

1.    The Plan and each of its provisions (whether or not specifically approved herein) and all exhibits and schedules thereto are CONFIRMED in each and every respect, pursuant to section 1129 of the Bankruptcy Code. If there is any direct conflict between the terms of the Plan or any exhibit thereto and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

2.    As set forth more fully in this Court's Findings of Fact and Conclusions of Law, Class 9 is unimpaired pursuant to section 1124(1) of the Bankruptcy Code; therefore, the provisional vote of Class 9 shall have no force and effect.

**C.    SPECIFIC CONDITIONS TO CONFIRMATION OF THE PLAN**

As required by Section 7.7 of the Plan, the Court makes the following findings of fact, conclusions of law, orders, and/or decrees:

(a)    The Plan satisfies all applicable sections of the Bankruptcy Code, including Bankruptcy Code § 524(g);

(b)    Claimants in Classes 6, 7 (including both sub-classes 7A and 7B), and 8 have voted to accept the Plan in the requisite numbers and amounts required by Bankruptcy Code §§ 524(g), 1126, and 1129;

(c)    As of the Petition Date, the Debtors have been named as defendants in personal injury, wrongful death, and property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(d)    Effective as of the Effective Date, the Asbestos PI Trust shall be created and the Asbestos PD Trust shall be created pursuant to Bankruptcy Code § 524(g) and in accordance with the Plan Documents;

(e)    The Asbestos PI Trust and the Asbestos PD Trust shall be "qualified settlement funds" for federal income tax purposes within the meaning of

the treasury regulations issued pursuant to section 468B of the IRC and shall be subject to the continuing jurisdiction of the Bankruptcy Court;

(f)     On the Effective Date, the Asbestos PI Trust shall assume the liabilities of the Debtors with respect to all Asbestos PI Claims, the Asbestos PD Trust shall assume the liabilities of the Debtors with respect to all Asbestos PD Claims, and the CDN ZAI PD Claims Fund contemplated by the CDN ZAI Minutes of Settlement shall assume the liabilities of the Debtors with respect to all CDN ZAI PD Claims;

(g)     The Asbestos PI Trust and the Asbestos PD Trust are to be funded in part by securities of the Reorganized Parent and by the obligations of the Reorganized Parent to make future payments, including dividends;

(h)     The Asbestos PI Trust and the Asbestos PD Trust are to own, or by the exercise of rights granted under the Plan would be entitled to own if specified contingencies occur, a majority of the voting shares of the Reorganized Parent;

(i)     The Asbestos PI Trust is to use the Asbestos PI Trust Assets to pay Asbestos PI Claims (including Demands) and Asbestos PI Trust Expenses, and the Asbestos PD Trust is to use the Asbestos PD Trust Assets to pay Asbestos PD Claims (including Demands, if any) and Asbestos PD Trust Expenses, and the CDN ZAI PD Claims Fund is to use the funds identified in the CDN ZAI Minutes of Settlement to pay CDN ZAI PD Claims and the expenses outlined in the CDN ZAI Minutes of Settlement;

(j)     The Debtors are likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos PI Claims, which Demands are addressed by the Asbestos PI Channeling Injunction, and the Debtors are likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos PD Claims, which Demands, if any, are addressed by the Asbestos PD Channeling Injunction;

(k)     The actual amounts, numbers, and timing of such future Demands cannot be determined;

(l)     Pursuit of such Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with the Asbestos PI Claims, the Asbestos PD Claims, and the CDN ZAI PD Claims;

(m)     The terms of the Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, the Successor Claims Injunction, and the Asbestos Insurance Entity Injunction, and any provisions barring actions against third parties, are set out in the Plan and the Disclosure Statement, and each of the Plan and the Disclosure Statement adequately describes such

10

injunctions and provisions (and the acts and entities to which they apply) in specific and conspicuous language in accordance with the requirements of Bankruptcy Rule 3016(c));

(n)   Pursuant to Court orders or otherwise, the Asbestos PI Trust, the Asbestos PD Trust, and CDN ZAI PD Claims Fund shall operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of (1) Asbestos PI Claims (including Demands) in the case of the Asbestos PI Trust, (2) Asbestos PD Claims (including Demands, if any) in the case of the Asbestos PD Trust, or (3) CDN ZAI PD Claims (including Demands, if any) in the case of the CDN ZAI PD Claims Fund, or other comparable mechanisms that provide reasonable assurance that the Asbestos PI Trust shall value, and be in a financial position to pay, Asbestos PI Claims (including Demands that involve similar claims) in substantially the same manner, that the Asbestos PD Trust shall value, and be in a financial position to pay Asbestos PD Claims (including Demands, if any, that involve similar claims) in substantially the same manner, and that the CDN ZAI PD Claims Fund shall value, and be in a financial position to pay CDN ZAI PD Claims (including Demands, if any, that involve similar claims) in substantially the same manner;

(o)   The Asbestos PI FCR has been appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Asbestos PI Channeling Injunction for the purpose of, among other things, protecting the rights of Entities that might subsequently assert Demands of the kind that are addressed in the Asbestos PI Channeling Injunction and transferred to the Asbestos PI Trust;

(p)   The Asbestos PD FCR has been appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Asbestos PD Channeling Injunction for the purpose of, among other things, protecting the rights of Entities that might subsequently assert Demands, if any, of the kind that are addressed in the Asbestos PD Channeling Injunction and transferred to the Asbestos PD Trust;

(q)   CCAA Representative Counsel has been appointed by the Canadian Court as part of proceedings leading to the issuance of the Asbestos PD Channeling Injunction for the purpose of, among other things, protecting the rights of Entities that might subsequently assert Demands, if any, of the kind that are addressed in the Asbestos PD Channeling Injunction and transferred to the CDN ZAI PD Claims Fund;[5]

---

[5]   While not a condition to confirmation under Section 7.7 of the Plan, it should be noted that this Court also approved the appointment of the CCAA Representative Counsel to serve as Special Counsel to Canadian ZAI Claimants in the Chapter 11 Cases. *See* Modified Order Granting the Canadian ZAI Claimants' Application for

11

(r)    The Court has jurisdiction over each of the Claims, SA Claims, Grace-Related Claims, and Demands that is subject to any of (i) the Asbestos PI Channeling Injunction described in Section 8.2 of the Plan, (ii) the Asbestos PD Channeling Injunction described in Section 8.3 of the Plan, (iii) the Successor Claims Injunction described in Section 8.5 of the Plan, and (iv) the releases described in the Plan;

(s)    In light of the benefits provided, or to be provided, to the Asbestos PI Trust and the Asbestos PD Trust by, or on behalf of, each Asbestos Protected Party (including the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties), (i) the Asbestos PI Channeling Injunction is fair and equitable (including with respect to the Entities that might subsequently assert Demands against any Asbestos Protected Party) and is supported by reasonable consideration, (ii) the Asbestos PD Channeling Injunction is fair and equitable (including with respect to the Entities that might subsequently assert Demands, if any, against any Asbestos Protected Party) and is supported by reasonable consideration, (iii) the Successor Claims Injunction is fair and equitable and is supported by reasonable consideration, and (iv) the releases in favor of the Asbestos Protected Parties described in the Plan are fair and equitable and are supported by reasonable consideration;

(t)    The Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, the Successor Claims Injunction, the Asbestos Insurance Entity Injunction, and the releases in favor of the Asbestos Protected Parties described in the Plan are to be implemented and granted in connection with the Plan and the Plan Documents;

(u)    The Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, the Successor Claims Injunction, and the releases in favor of the Asbestos Protected Parties described in the Plan (i) are essential to the Debtors' reorganization efforts and the feasibility of the Plan, (ii) provide necessary funding to the Plan that otherwise would be unavailable absent the injunctions and releases, (iii) are necessary to induce the Asbestos Protected Parties (including Sealed Air and Fresenius) to enter into the settlements and agreements described in the Plan and to otherwise settle their disputes, and (iv) are necessary to resolve finally all claims of the Debtors, the Non-Debtor Affiliates, and the Debtors' creditors against the other Asbestos Protected Parties (including the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties);

(v)    An identity of interests exists among the Debtors and the Asbestos Protected Parties such that an Asbestos PI Claim (including a Successor

---

Appointment of Special Counsel Lauzon Belanger S.E.N.C.R.L. and Scarfone Hawkins LLP, dated 3/19/10 (D.I. 24508).

Claim based upon an Asbestos PI Claim and/or a Successor Claim based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction or the Fresenius Transaction) asserted against any of the Asbestos Protected Parties gives rise to a Claim against the Debtors, including by the operation of the law of indemnity (contractual or otherwise) and/or contribution; and an Asbestos PD Claim or CDN ZAI PD Claim (including a Successor Claim based upon an Asbestos PD Claim or CDN ZAI PD Claim and/or a Successor Claim based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction or the Fresenius Transaction) asserted against any of the Asbestos Protected Parties gives rise to a Claim against the Debtors, including by the operation of the law of indemnity (contractual or otherwise) and/or contribution;

(w)     The Sealed Air Settlement Agreement is essential and integral to the Plan, and the payment of the Cryovac Payment to the Asbestos PI Trust and the Asbestos PD Trust in accordance with the Sealed Air Settlement Agreement and the terms of the Plan, together with the other Asbestos PI Trust Assets and the Asbestos PD Trust Assets to be transferred to the Asbestos PI Trust and the Asbestos PD Trust, respectively, pursuant to the Plan, constitute both (i) substantial assets of the Plan and the reorganization, and (ii) a fair, reasonable, and equitable settlement of all claims, potential claims, and Demands against the Asbestos Protected Parties (including, with respect to the Sealed Air Indemnified Parties, all Asbestos-Related Claims and any other claims, potential claims, and Demands for which the Sealed Air Settlement Agreement contemplates a release or injunction in favor of the Sealed Air Indemnified Parties) that are subject to the injunctions and releases described in the Plan, and the only unsatisfied conditions precedent to payment of the Cryovac Payment are the satisfaction or waiver of the conditions to the Effective Date in accordance with Section 7.8 of the Plan;

(x)     The Fresenius Settlement Agreement is essential and integral to the Plan, and the payment of the Fresenius Payment to the Asbestos PI Trust and the Asbestos PD Trust in accordance with the Fresenius Settlement Agreement and the Plan, together with the other Asbestos PI Trust Assets and the Asbestos PD Trust Assets to be transferred to the Asbestos PI Trust and the Asbestos PD Trust, respectively, pursuant to the Plan, constitute both (i) substantial assets of the Plan and the reorganization, and (ii) a fair, reasonable, and equitable settlement of all claims, potential claims, and Demands against the Asbestos Protected Parties (including, with respect to the Fresenius Indemnified Parties, the Grace-Related Claims, all Asbestos-Related Claims and Demands related thereto and any other claims, potential claims, and Demands for which the Fresenius Settlement Agreement contemplates a release or injunction in favor of the Fresenius Indemnified Parties) that are subject to the injunctions and releases described in the Plan, and the only unsatisfied conditions

13

precedent to payment of the Fresenius Payment are the satisfaction or waiver of the conditions to the Effective Date in accordance with Section 7.8 of the Plan;

(y)     The SA Debtors, the Plaintiffs, and the SA Non-Debtor Affiliates understand and agree, and the Court so finds, that Sealed Air has entered into the Sealed Air Settlement Agreement in order to settle, release, extinguish, and terminate fully, finally, and forever any and all further controversy respecting any and all Asbestos-Related Claims and any and all Demands related thereto against the Sealed Air Indemnified Parties. The SA Debtors, the Plaintiffs, and the SA Non-Debtor Affiliates have acknowledged and agreed that this provision is an essential and material term of the Sealed Air Settlement Agreement and the compromise settlement leading to the Sealed Air Settlement Agreement, and that, without such provision, neither Sealed Air Corporation nor Cryovac, Inc. would have executed the Sealed Air Settlement Agreement and the compromise settlement would not have been accomplished;

(z)     The Debtors, the Plaintiffs, and the Non-Debtor Affiliates understand and agree, and the Court so finds, that Fresenius has entered into the Fresenius Settlement Agreement in order to settle, release, extinguish, and terminate fully, finally, and forever any and all further controversy respecting any and all Asbestos-Related Claims against the Fresenius Indemnified Parties. The Debtors, the Plaintiffs, and the Non-Debtor Affiliates have acknowledged and agreed that this provision is an essential and material term of the Fresenius Settlement Agreement, and that, without such provision, Fresenius would not have executed the Fresenius Settlement Agreement and the compromise settlement would not have been accomplished;

(aa)    The settlements, compromises, releases, and injunctions in favor of the Asbestos Protected Parties described in the Plan (including those described in the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement) are approved in all respects;

(bb)    In approving the settlements, compromises, releases, and injunctions with respect to the Asbestos Protected Parties (including the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement, and the releases and injunctions in favor of the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties), the Court has considered, among other things: (i) the nature of the claims asserted or potentially asserted by the Debtors, the Non-Debtor Affiliates, the Plaintiffs (on behalf of the Debtors' creditors, stakeholders, and estates), and/or the Debtors' creditors against the Asbestos Protected Parties, and the claims asserted or potentially assertable by the Asbestos Protected Parties against the Debtors and the Non-Debtor Affiliates, (ii) the balance of the likelihood of success of claims which might be asserted by the Debtors or other

14

claimants against the Asbestos Protected Parties against the likelihood of success of the defenses or counterclaims possessed by the Asbestos Protected Parties, (iii) the complexity, cost, and delay of litigation that would result in the absence of these settlements, compromises, releases, and injunctions, (iv) the lack of objections by, or the overruling of objections of any creditor or party-in-interest to the settlements, compromises, releases and injunctions, (v) that the Asbestos PI Claims will be channeled to the Asbestos PI Trust rather than extinguished, (vi) that the Estate Parties and the Asbestos PI Trust will receive substantial consideration from the Asbestos Protected Parties described in the Plan, (vii) that the Asbestos PD Claims will be channeled to the Asbestos PD Trust rather than extinguished, and the CDN ZAI PD Claims will be channeled to the CDN ZAI PD Claims Fund rather than extinguished, (viii) that the Estate Parties and the Asbestos PD Trust will receive substantial consideration from or on behalf of the Asbestos Protected Parties described in the Plan, (ix) that the Asbestos Protected Parties that will benefit from the releases and injunctions share an identity of interest with the Debtors, (x) that the enjoined claims against the Asbestos Protected Parties would otherwise indirectly impact the Debtors' reorganization by way of indemnity or contribution, and (xi) the Plan and the settlements, compromises, releases, and injunctions described in the Plan are the product of extensive arms' length negotiations among the Debtors, the Asbestos PI Committee, the Asbestos PI FCR, the Asbestos PD FCR, and the Asbestos Protected Parties, among others;

(cc)     As of the Effective Date, the Reorganized Debtors will have the ability to pay and satisfy in the ordinary course of business their respective obligations and liabilities, including any and all indemnification obligations to the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties with respect to present and future Asbestos-Related Claims and Demands related thereto, SA Indemnified Taxes, Fresenius Indemnified Taxes, and all other obligations set forth in the Fresenius Settlement Agreement and the Sealed Air Settlement Agreement;

(dd)     Upon the transfer of the Sealed Air Common Stock to the Asbestos PI Trust, the Asbestos PI Trustees shall represent and warrant to and agree with (on behalf of the Asbestos PI Trust) Sealed Air, that the Asbestos PI Trust is acquiring the Sealed Air Common Stock for its own account for investment and not with a view toward distribution in a manner which would violate the Securities Act and the Asbestos PI Trust and its transferees will comply with all filing and other reporting obligations under all applicable laws which shall be applicable to such Asbestos PI Trust with respect to the Sealed Air Common Stock;

(ee)     On or before the Effective Date, (i) the SA Debtors, the Asbestos PD Committee, and the Asbestos PI Committee shall have executed and delivered the "Release" (as defined in the Sealed Air Settlement

15

Agreement), (ii) the "Government Plaintiff" (as defined in the Sealed Air Settlement Agreement) shall have executed and delivered the "Government Release" (as defined in the Sealed Air Settlement Agreement), and (iii) the Asbestos PI Committee and the Asbestos PD Committee shall have delivered the "Fresenius Release" (as defined in the Sealed Air Settlement Agreement), all as provided for in the Sealed Air Settlement Agreement. In addition, in consideration for the Cryovac Payment, (i) each of the SA Non-Debtor Affiliates shall irrevocably release, acquit, and forever discharge the Sealed Air Indemnified Parties from any and all (A) present and future Asbestos-Related Claims and Demands relating thereto and (B) present and future SA Claims, Canadian Claims, SA Debts, and SA Damages on the basis of, arising from, or attributable to (in whole or in part, directly or indirectly) the Fresenius Transaction that have accrued or been asserted or that hereafter might accrue or be asserted against the Sealed Air Indemnified Parties and (ii) each SA Non-Debtor Affiliate shall not institute, participate in, maintain, maintain a right to or assert against the Sealed Air Indemnified Parties, either directly or indirectly, on its own behalf, derivatively, or on behalf of any other Entity, any and all present and future Asbestos-Related Claims and/or Demands relating thereto, and any and all present and future SA Claims, Canadian Claims, SA Debts, and SA Damages on the basis of, arising from, or attributable to (in whole or in part, directly or indirectly) the Fresenius Transaction;

(ff)     The Asbestos Protected Parties shall receive the full benefit of the Asbestos PI Channeling Injunction and the Asbestos PD Channeling Injunction under Bankruptcy Code § 524(g) and the Successor Claims Injunction under Bankruptcy Code § 105(a), which Asbestos PI Channeling Injunction, Asbestos PD Channeling Injunction, and Successor Claims Injunction (1) shall be in form and substance reasonably acceptable to Sealed Air Corporation, Cryovac Inc., and Fresenius, and (2) as applicable, include provisions enjoining any and all Entities from taking any and all legal or other actions (including the continued prosecution of pending "Actions" or the commencement of future "Actions" as such term is used in paragraph II(c)(vi) of the Sealed Air Settlement Agreement) or making any Demand for the purpose of, directly or indirectly, claiming, collecting, recovering, or receiving any payment, recovery, or any other relief whatsoever from any and all of the Asbestos Protected Parties with respect to any and all Asbestos PI Claims, Asbestos PD Claims, CDN PI Claims, Asbestos PD Claims, CDN ZAI PD Claims, and/or Successor Claims based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction or the Fresenius Transaction;

(gg)     Each of the SA Debtors and the Plaintiffs have acknowledged and agreed that the Sealed Air Common Stock to be transferred to the Asbestos PI Trust has not been and, upon delivery of such Sealed Air Common Stock to the Asbestos PI Trust, shall not be registered under the Securities Act

16

and that the certificates for such Sealed Air Common Stock shall bear a legend to that effect. Each of the SA Debtors and the Plaintiffs understand and have acknowledged that any transfer by Cryovac, Inc. of Sealed Air Common Stock to the Asbestos PI Trust is being made pursuant to an exemption from registration contained in the Securities Act based in part upon the foregoing representation and the representations contained in the Sealed Air Settlement Agreement;

(hh)    The SA Debtors shall, jointly and severally, at their sole expense, indemnify, defend, and hold harmless the Sealed Air Indemnified Parties from and against (1) any and all present and future Asbestos-Related Claims and Demands related thereto and all SA Indemnified Taxes, (2) any and all losses costs, and expenses incurred as a result of any breach of any of the SA Debtors' or SA Non-Debtor Affiliates' obligations, covenants, and agreements set forth or referred to in the Sealed Air Settlement Agreement, including any such obligation, covenant, or agreement of any SA Debtors or SA Non-Debtor Affiliates set forth in the Plan or Confirmation Order, (3) if any SA Non-Debtor Affiliate has not executed and delivered a "Release" (as defined in the Sealed Air Settlement Agreement), any and all Asbestos-Related Claims and Demands related thereto based on, arising out of, or attributable to, directly or indirectly, in whole or in part, such SA Non-Debtor Affiliate and (4) any and all attorneys' fees or costs and expenses attributable to any "SA Indemnity Claim" (as defined below), provided, however, that in each case such indemnification shall not apply to "Excluded Fees" (as defined in the Sealed Air Settlement Agreement) (such indemnity obligations, collectively, the "SA Debtors' Indemnity Obligation"; and any and all SA Claims, SA Debts, or SA Damages that could be asserted by any of the Sealed Air Indemnified Parties under the SA Debtors' Indemnity Obligation, the "SA Indemnity Claims"), and provided, further, that nothing in the Sealed Air Settlement Agreement shall adversely affect any rights of any Entity to file and pursue, or object to, a proof of claim for "Excluded Fees" (as defined in the Sealed Air Settlement Agreement) in the Chapter 11 Cases;

(ii)    Each SA Debtor shall execute and deliver an indemnity agreement in favor of the Sealed Air Indemnified Parties in the form annexed as Exhibit 6 to the Sealed Air Settlement Agreement;

(jj)    The SA Debtors' Indemnity Obligation (and the obligations, covenants, and agreements of each of the SA Debtors and SA Non-Debtor Affiliates set forth or referred to in the Sealed Air Settlement Agreement, including any such obligation, covenant, or agreement of any SA Debtor or SA Non-Debtor Affiliate set forth in the Plan or Confirmation Order) shall not be discharged, expunged, estimated, or otherwise adversely affected in the Chapter 11 Cases or by the confirmation of the Plan;

17

(kk)    The SA Debtors' Indemnity Obligation (and the obligations, covenants, and agreements of each of the SA Debtors and SA Non-Debtor Affiliates set forth or referred to in the Sealed Air Settlement Agreement, including any such obligation, covenant, or agreement of any SA Debtor or SA Non-Debtor Affiliate set forth in the Plan or Confirmation Order) shall continue unaffected as a post-confirmation obligation of each of the Reorganized Debtors;

(ll)    The Debtors, the Asbestos PI Committee, the Asbestos PI FCR, the Asbestos PI TAC, and the Asbestos PI Trustees have (i) promptly provided to Cryovac, Inc. and Fresenius all "Material Drafts" (as defined in the Sealed Air Settlement Agreement) of the Asbestos PI Trust Agreement and each related "Trust Document" (as defined in the Sealed Air Settlement Agreement) (but excluding or redacting drafts of the Asbestos PI TDP), and (ii) incorporated promptly (if it was the party drafting such document), or if otherwise, urged the party drafting such document promptly to incorporate, into any such document each provision with respect to the subject matter set forth or referred to in paragraphs II(c)(ix), (x), and (xi) paragraph VI(g), clauses (i)(A) through (D), and paragraph VI(c) of the Sealed Air Settlement Agreement that were reasonably requested by Cryovac, Inc. or Fresenius;

(mm)    The Debtors, the Asbestos PD Committee, and the Asbestos PD FCR have (i) promptly provided to Cryovac, Inc. and Fresenius all "Material Drafts" (as defined in the Sealed Air Settlement Agreement) of the Asbestos PD Trust Agreement and each related "Trust Document" (as defined in the Sealed Air Settlement Agreement) (but excluding or redacting drafts of the ZAI TDP), and (ii) incorporated promptly (if it was the party drafting such document), or if otherwise, urged the party drafting such document promptly to incorporate, into any such document each provision with respect to the subject matter set forth or referred to in paragraphs II(c)(ix), (x), and (xi) paragraph VI(g), clauses (i)(A) through (D), and paragraph VI(c) of the Sealed Air Settlement Agreement that were reasonably requested by Cryovac, Inc. or Fresenius;

(nn)    SA Debtors and SA Non-Debtor Affiliates shall take all actions required or requested by Sealed Air as contemplated in the Sealed Air Settlement Agreement and shall be prohibited from taking any actions prohibited by Sealed Air as provided by the Sealed Air Settlement Agreement with respect to tax matters, including those set forth in Annex I attached hereto as Exhibit A and those set forth in paragraphs II(c)(x), IV, and VI of the Sealed Air Settlement Agreement and those provisions of the Sealed Air Settlement Agreement are incorporated in the Plan as if fully set forth therein and are likewise incorporated into this Confirmation Order as if fully set forth herein;

18

(oo)   The Plaintiffs, Asbestos PI Trust and Asbestos PD Trust shall take all actions required or requested by Sealed Air as provided by the Sealed Air Settlement Agreement and shall be prohibited from taking any actions prohibited by Sealed Air as contemplated in the Sealed Air Settlement Agreement with respect to tax matters, including those set forth in Annex II attached hereto as Exhibit A and those set forth in paragraphs II(c)(ix), II(c)(x) and II(c)(xi) of the Sealed Air Settlement Agreement and those provisions of the Sealed Air Settlement Agreement are incorporated in the Plan as if fully set forth therein and are likewise incorporated into this Confirmation Order as if fully set forth herein;

(pp)   Each of the SA Debtors acknowledge and agree that (i) to the extent that any SA Debtor is required, pursuant to generally accepted accounting principles, to accrue a liability for asbestos which liabilities are satisfied by Cryovac, Inc. by a transfer made by Cryovac, Inc. directly to the Asbestos PI Trust or Asbestos PD Trust pursuant to the Plan or the Confirmation Order and such SA Debtor is required pursuant to generally accepted accounting principles to reverse such accrual, to the extent that there is more than one methodology under generally accepted accounting principles pursuant to which the SA Debtors are allowed to reverse any such accrual, such SA Debtor shall adopt the methodology, if any, not inconsistent with the provisions of paragraphs VI(b) and VI(g) of the Sealed Air Settlement Agreement, (ii) any payment or transfer by Cryovac, Inc. directly to the Asbestos PI Trust or Asbestos PD Trust shall not be treated, for financial accounting purposes, as resulting in an expense or deduction of any SA Debtor or SA Non-Debtor Affiliate and (iii) to the extent that any payment or transfer by Cryovac, Inc. directly to the Asbestos PI Trust or Asbestos PD Trust results, for financial accounting purposes, in income to any SA Debtor, the SA Debtors shall treat such income as income from the cancellation of indebtedness or liabilities of the SA Debtors;

(qq)   The Debtors and Estate Parties shall take all actions required or requested by Fresenius as contemplated in the Fresenius Settlement Agreement and be prohibited from taking any actions prohibited by Fresenius as contemplated in the Fresenius Settlement Agreement with respect to tax matters, including those outlined in Article III of the Fresenius Settlement Agreement and those provisions of the Fresenius Settlement Agreement are incorporated in the Plan as if fully set forth therein and are likewise incorporated into this Confirmation Order as if fully set forth herein;

(rr)   The 1998 Tax Sharing Agreement shall be an assumed agreement of each of the SA Debtors (including Grace New York and Grace-Conn) pursuant to section 365 of the Bankruptcy Code, and nothing contained in or contemplated by the Sealed Air Settlement Agreement, the Plan, or this Confirmation Order shall adversely affect the rights of the Debtors, Sealed

19

Air Corporation or any of their respective Affiliates under the 1998 Tax Sharing Agreement;

(ss)    Upon confirmation, each of the Sealed Air Settlement Agreement, the Sealed Air Settlement Order, the Fresenius Settlement Agreement and the Fresenius Settlement Order shall be in full force and effect;

(tt)    Subject to Section 7.7(uu) of the Plan, the duties and obligations of the Asbestos Insurance Entities under the Asbestos Insurance Policies, Asbestos Insurance Settlement Agreements, Asbestos In-Place Insurance Coverage, and Asbestos Insurance Reimbursement Agreements are not diminished, reduced or eliminated by (1) the discharge of the obligations and liabilities of the Debtors and the Reorganized Debtors for and in respect of all Asbestos PI Claims or (2) the assumption by the Asbestos PI Trust of responsibility and liability for all Asbestos PI Claims;

(uu)    As of the Effective Date, the Asbestos Insurance Transfer Agreement shall be a valid and binding obligation of each the parties thereto, shall be in full force and effect and shall be valid and enforceable in accordance with its terms, in each case notwithstanding any anti-assignment provision in or incorporated into any Asbestos Insurance Policy, Asbestos Insurance Settlement Agreement, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreement, or under applicable non-bankruptcy law;

(vv)    As of the Effective Date, each of the Asbestos PI Deferred Payment Agreement, the Class 7A Asbestos PD Deferred Payment Agreement, the Class 7B Asbestos PD Deferred Payment Agreement, the Share Issuance Agreement, the Grace PI Guaranty, the Grace PD Guarantee Agreement for Class 7A, the Grace PD Guarantee Agreement for Class 7B, the Plan Registration Rights Agreement, the Asbestos PI/PD Inter-Creditor Agreement, the Warrant, and the Warrant Agreement shall be a valid and binding obligation of each of the parties thereto and shall be in full force and effect and enforceable in accordance with its terms;

(ww)    All Asbestos PI Claims shall be resolved by and channeled to the Asbestos PI Trust, all Asbestos PD Claims shall be resolved by and channeled to the Asbestos PD Trust, and all CDN ZAI PD Claims shall be resolved by and channeled to the CDN ZAI PD Claims Fund in the manner set forth in the CDN ZAI Minutes of Settlement;

(xx)    The Court entered a Final Order allowing claims for post-petition interest on account of the General Unsecured Claims arising from the Pre-petition Credit Facilities in amounts that are not in excess of the rates set forth in Section 3.1.9(b) of the Plan;

(yy)    The Canadian Settlement Approval Order has been entered; and

(zz)    As of the Effective Date, pursuant to Section 3.1(a) of the Asbestos PD Trust Agreement, the Class 7B Trustee (as defined in the Asbestos PD Trust Agreement) shall keep segregated the ZAI Trust Assets (as defined in the Asbestos PD Trust Agreement) from the other Asbestos PD Trust Assets at all times, and no non-US ZAI PD Claim or liability of any kind shall ever be satisfied, either voluntarily or involuntarily, with ZAI Trust Assets.

## D.    CONDITIONS TO THE EFFECTIVE DATE OF THE PLAN.

Nothing in this Confirmation Order or in the Findings and Conclusions shall in any way affect the provisions of Section 7.8 of the Plan, which include provisions regarding (1) the conditions precedent to the Effective Date of the Plan and (2) the waiver of any such conditions. If a condition to the occurrence of the Effective Date set forth in Section 7.8 of the Plan cannot be satisfied, and the occurrence of such condition is not waived in writing by the parties set forth in Section 7.8 of the Plan, then the Plan and the Confirmation Order shall be deemed null and void. Upon the satisfaction or waiver of the conditions contained in Section 7.8 of the Plan and the occurrence of the Effective Date, substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, is deemed to occur.

## E.    EFFECTS OF CONFIRMATION.

1.    Upon entry of this Confirmation Order, but subject to the occurrence of the Effective Date as provided in Section 7.8 of the Plan and Section I.D of this Confirmation Order, the terms of the Plan and this Confirmation Order shall binding upon all Entities, including the Debtors, the Reorganized Debtors, any and all holders of Claims, Demands or Interests (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan), any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors and any and all Entities who are parties to or are subject to the settlements, compromises, releases, waivers, discharges and injunctions described herein, and in

21

the Findings and Conclusions or in the Plan and the respective heirs, executors, administrators,

trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians,

successors or assigns, if any, of any of the foregoing.

    2.  On the Effective Date, the Reorganized Debtors shall be vested with all of

the assets and property of their former bankruptcy estates, free and clear of all Claims, liens,

charges and other interests of holders of Claims except to the extent specifically provided herein,

in another order of this Court, or in the Plan, and may operate their businesses free of any

restrictions imposed under the Bankruptcy Code.

  F.  **APPROVAL, MODIFICATION AND EXECUTION**
    **OF PLAN DOCUMENTS.**

    1.  The Plan, all exhibits and schedules thereto, substantially in the form as

they exist at the time of the entry of this Confirmation Order, including the documents relating to

the Asbestos PI Trust and the Asbestos PD Trust, and each of the other Plan Documents filed as

part of the Exhibit Book are ratified and approved in all respects. All relevant parties, including

the Debtors, the Trustees of the Asbestos PI Trust and the Asbestos PD Trust, and the CCAA

Representative Counsel shall be authorized, without further action by the Bankruptcy Court, to

enter into and effectuate, to the extent applicable, and perform under the Plan Documents,

notwithstanding that the efficacy of such documents may be subject to the occurrence of the

Effective Date as contemplated by and under the Plan and/or Plan Documents.

    2.  The Plan Proponents are hereby authorized to amend or modify the Plan at

any time prior to the substantial consummation of the Plan, but only in accordance with section

1127 of the Bankruptcy Code and Section 4.1.1 of the Plan. In addition, without the need for a

further order or authorization of the Bankruptcy Court or further notice to any Entities, but

subject to the express provisions of this Confirmation Order and Sections 4.1.1 and 4.1.2 of the

Plan, the Plan Proponents shall be authorized and empowered to make modifications to the documents filed with the Bankruptcy Court, including exhibits and schedules to the Plan or documents forming part of the evidentiary record at the Confirmation Hearing, as well as the other Plan Documents, consistent with the terms of such documents in their reasonable business judgment as may be necessary.

        3.      Nothing in this Confirmation Order, the Plan, or any other Plan Document shall allow any of the Plan Proponents to, or shall be deemed to, alter, modify, amend, or otherwise change in any way (i) the Sealed Air Settlement Agreement, except to the extent that each of Sealed Air Corporation and Cryovac, Inc. expressly consents to such alteration, modification, amendment, or change in writing in its absolute discretion or (ii) the Fresenius Settlement Agreement, except to the extent that Fresenius consents to such alteration, modification, amendment, or change in writing in its absolute discretion.

        4.      The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on the validity, binding effect, and enforceability of such provision and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan.

## II.    CLAIMS BAR DATES AND OTHER CLAIMS MATTERS.

### A.    GENERAL BAR DATE PROVISIONS FOR ADMINISTRATIVE EXPENSE CLAIMS.

        All requests for payment of an Administrative Expense Claim (other than as set forth in Section 2.1.1(b)(1) of the Plan and Section II.B below) shall be filed with the Bankruptcy Court and served on the Reorganized Debtors at the addresses set forth in Section 11.12 of the Plan not later than ninety (90) days after the Effective Date. Unless an objection to an Administrative Expense Claim is filed and served on the requesting party within two hundred

seventy (270) days after the Effective Date (unless the objection deadline is extended by the

Court upon request of the Reorganized Debtors), such Administrative Expense Claim shall be

deemed Allowed in the amount requested.  In the event that the Reorganized Debtors object to an

Administrative Expense Claim, the Bankruptcy Court shall determine the Allowed amount of

such Administrative Expense Claim; provided, however, that the Reorganized Debtors and the

applicant may resolve such objection by stipulation, without further action of the Bankruptcy

Court.  Notwithstanding the foregoing, no request for payment of an Administrative Expense

Claim need be filed with respect to an Administrative Expense Claim which is paid or payable

by a Debtor in the ordinary course of business.

      **B.**     **BAR DATE FOR PROFESSIONAL FEE CLAIMS.**

      All final requests for compensation or reimbursement of the fees of any

Professionals employed in the Chapter 11 Cases pursuant to Section 327 or 1103 of the

Bankruptcy Code or otherwise, including the professionals seeking compensation or

reimbursement of costs and expenses relating to services performed after the Petition Date and

prior to and including the Effective Date in connection with the Chapter 11 Cases, pursuant to

sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered to the

Debtors, the Unsecured Creditors' Committee, the Equity Committee, the Asbestos Claimants'

Committee, the Asbestos PI Future Claimants' Representative, the Asbestos PD Future

Claimants' Representative, and the CCAA Representative Counsel (post-appointment as Special

Counsel in these Chapter 11 Cases), and Claims for making a substantial contribution under

sections 503(b)(3)(D) and/or 503(b)(4) of the Bankruptcy Code, including any requests by the

CCAA Representative Counsel or their respective professionals not previously made for

reimbursement of reasonable fees and expenses shall be filed and served on the Reorganized

Debtors and their counsel not later than ninety (90) days after the Effective Date, unless

24

otherwise ordered by the Bankruptcy Court. Objections to applications of such professionals or

other entities for compensation or reimbursement of expenses must be filed and served on the

Reorganized Debtors and their counsel and the requesting professional or other entity not later

than sixty (60) days after the date on which the applicable application for compensation or

reimbursement was served; provided, however, that, in lieu of such sixty (60) day objection

deadline, the following protocol shall apply to the fee auditor appointed in these Chapter 11

Cases (the "Fee Auditor"):

> (i) if the Fee Auditor has any questions for any applicant, the Fee Auditor may communicate such questions in writing to the applicant in an initial report (the "Initial Report") within forty-five (45) days after the date on which the applicable application for compensation or reimbursement was served on the Fee Auditor;

> (ii) any applicant who receives an Initial Report and wishes to respond thereto shall respond within fifteen (15) days after the date of the Initial Report and shall serve upon the Fee Auditor via e-mail a response in an electronic format such as Microsoft Word, WordPerfect, or Excel, but not Adobe Acrobat;

> (iii) within seventy-five (75) days after the date on which the applicable application for compensation or reimbursement was served on the Fee Auditor, the Fee Auditor shall file with the Court a final report (the "Final Report") with respect to each such application for compensation or reimbursement; and

> (iv) within fifteen (15) days after the date of the Final Report, the subject applicant may file with the Court a response to such Final Report.

## C.    BAR DATE FOR REJECTION DAMAGES CLAIMS.

On the Effective Date, each executory contract and unexpired lease listed on

Exhibit 18 in the Exhibit Book shall be rejected pursuant to section 365 of the Bankruptcy Code.

The Debtors shall have the right until ten (10) days prior to the Effective Date to modify the list

of rejected contracts included in Exhibit 18 in the Exhibit Book to add executory contracts or

leases to the extent described in Section 9.1.3 of the Plan. To the extent executory, all

agreements that create an obligation of the Debtors to reimburse or indemnify third parties (other

than the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties) with respect to

Asbestos PI Claims, Asbestos PD Claims or CDN ZAI PD Claims (other than Asbestos Insurance Policies, Asbestos Insurance Settlement Agreements, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreements, the Sealed Air Settlement Agreement, the Fresenius Settlement Agreement, or the 1998 Tax Sharing Agreement to the extent any are executory) are deemed rejected by operation of this Confirmation Order, subject to the occurrence of the Effective Date, unless expressly identified and assumed pursuant to the Plan, a Plan Document, or an order of this Court.

Pursuant to the terms of the March 2003 Bar Date Order and Bankruptcy Rule 3002(c)(4), and except as otherwise ordered by this Court, a proof of claim for each Claim arising from the rejection of an executory contract or unexpired lease pursuant to the Plan shall be filed with this Court within thirty (30) days of the later of: (i) the date of service of the Notice of Confirmation Date, or (ii) the Effective Date. Any Claims not filed within such applicable time period shall be forever barred from assertion. Except with respect to Claims arising from the rejection of an executory contract or unexpired lease that creates an obligation of the Debtors to reimburse or indemnify third parties with respect to Asbestos PI Claims, Asbestos PD Claims, or CDN ZAI PD Claims, all Claims for damages arising from the rejection of an executory contract or unexpired lease shall be included in Class 9 and shall be treated in accordance with Article 3 of the Plan. All Claims for damages arising from the rejection of an agreement that creates an obligation of the Debtors to reimburse or indemnify third parties with respect to Asbestos PI Claims, Asbestos PD Claims, or CDN ZAI PD Claims shall be included in Class 6, Class 7, or Class 8, respectively, and shall be treated in accordance with Article 3 of the Plan.

III.  **APPROVAL OF EXECUTORY CONTRACTS, UNEXPIRED LEASES,
      LETTERS OF CREDIT, SURETY BONDS, COMPENSATION, INDEMNITY
      AND BENEFIT PROGRAMS.**

   A.    **GENERAL APPROVAL**

   The executory contract, unexpired lease, letter of credit, and surety bond provisions of Article IX of the Plan are specifically approved. The compensation, indemnity and benefit programs described in Article IX of the Plan are also specifically approved.

   B.    **ASSUMED CONTRACTS AND LEASES AND RELATED PROCEDURES**

   Except for (i) executory contracts and unexpired leases that the Debtors reject prior to the Effective Date or designate (on Exhibit 18 in the Exhibit Book) as being subject to rejection in connection with the Effective Date; (ii) the TSIA which shall be terminated (except for Section 4.04 thereof) upon the effective date of the Fresenius Settlement Agreement; and (iii) agreements, to the extent executory, that create an obligation of the Debtors to reimburse or indemnify third parties with respect to Asbestos PI Claims, Asbestos PD Claims, or CDN ZAI PD Claims (other than, to the extent they are executory, (a) all Asbestos Insurance Policies, (b) Asbestos Insurance Settlement Agreements, (c) Asbestos In-Place Insurance Coverage, and (d) Asbestos Insurance Reimbursement Agreements; the Sealed Air Settlement Agreement; the Fresenius Settlement Agreement; and the 1998 Tax Sharing Agreement), all executory contracts and unexpired leases (including, to the extent they are executory, (a) all Asbestos Insurance Policies, (b) Asbestos Insurance Settlement Agreements, (c) Asbestos In-Place Insurance Coverage, and (d) Asbestos Insurance Reimbursement Agreements; the Sealed Air Settlement Agreement; the Fresenius Settlement Agreement; the 1998 Tax Sharing Agreement; and the cost sharing agreement between the Debtors, Unifirst Corporation, and Beatrice Company, related to the Wells G&H Superfund site in Woburn, MA, dated November 16, 1990 and described at

27

Section 2.8.2 of the Disclosure Statement) not previously assumed by the Debtors pursuant to

section 365 of the Bankruptcy Code shall be deemed to have been assumed by the Reorganized

Debtors on the Effective Date, and the Plan shall constitute a motion to assume such executory

contracts and unexpired leases as of the Effective Date.

Subject to the occurrence of the Effective Date, entry of this Confirmation Order

shall constitute express approval of the assumption of the executory contracts and unexpired

leases described in Section 9.1.1 of the Plan pursuant to section 365(a) of the Bankruptcy Code

and a finding by this Court that each such assumption is in the best interests of the Debtors, their

estates, and all parties in interest in the Chapter 11 Cases.

Not later than twenty (20) days after entry of this Confirmation Order, the Debtors

will file with this Court an exhibit (the "**Cure Exhibit**") setting forth those executory contracts

and unexpired leases which are being assumed by the Debtors and as to which the Debtors

believe that cure amounts are owing, together with the respective cure amounts due for each such

executory contract or assumed lease.  The Debtors shall serve the Cure Exhibit on each non-

Debtor party to an executory contract or unexpired lease being assumed pursuant to the Plan,

including those listed on such exhibit.  If there is a dispute regarding (i) the nature or amount of

any cure, (ii) the ability of a Reorganized Debtor or assignee to provide "adequate assurance of

future performance" (within the meaning of section 365 of the Bankruptcy Code) under the

contract or lease to be assumed or (iii) any other matter pertaining to assumption, cure will occur

following the entry of a Final Order resolving the dispute and approving the assumption.  With

respect to any executory contracts or unexpired leases which are being assumed by the Debtors

but as to which the Debtors contend that no cure amounts are due, such executory contracts and

unexpired leases will not be included on the Cure Exhibit.

28

Not later than twenty (20) days after the Filing and service of the Cure Exhibit, the non-Debtor party to any executory contract or unexpired lease that the Debtors propose to assume, whether or not listed on the Cure Exhibit, may dispute the cure amount, if any, set forth by the Debtors on the Cure Exhibit pursuant to Section 9.1.1 of the Plan, assert that a cure amount should be owing with respect to any executory contract or unexpired lease that is being assumed, or otherwise object to the assumption of the executory contract or unexpired lease indicated in Section 9.1.1 of the Plan by filing a written objection with this Court and serving such objection on counsel for the Debtors.

If no objection to the cure amount or the proposed assumption is properly filed and served within twenty (20) days after the filing and service of the Cure Exhibit then (i) the proposed assumption of the executory contract or unexpired leases shall be deemed approved without further action of this Court in accordance with the Plan and this Confirmation Order, effective as of the Effective Date, and (ii) the cure amount, if any, identified by the Debtors in the Cure Exhibit shall be fixed and shall be paid in full in Cash on the Effective Date or on such other terms as are agreed to by the parties to such executory contract or unexpired lease.

If an objection to the cure amount or the proposed assumption is properly filed and served within twenty (20) days after the filing and service of the Cure Exhibit, then the Debtors or Reorganized Debtors, as applicable, and the objecting party may resolve such objection by stipulation, without further action of this Court. If the parties are unable to resolve such objection, then: (i) the Debtors or Reorganized Debtors may file a reply to such objection no later than thirty (30) days after the filing and service of such objection and ask this Court to schedule a hearing on the particular objection and the related reply at an appropriate time; or (ii)

29

the Debtors or Reorganized Debtors, as applicable, may designate the executory contract or unexpired lease underlying such objection for rejection pursuant to Section 9.1.3 of the Plan.

**C.    ASSUMPTION OF 1998 TAX SHARING AGREEMENT AND SECTION 4.04 OF THE TSIA**

This Confirmation Order shall constitute an order authorizing the assumption by each of the Debtors of the 1998 Tax Sharing Agreement. The 1998 Tax Sharing Agreement shall be an assumed agreement of each of the SA Debtors (including Grace New York and Grace-Conn) pursuant to 11 U.S.C. § 365 and nothing contained in, or contemplated by, the Plan, this Confirmation Order, or the Sealed Air Settlement Agreement shall adversely affect the rights of the Debtors, Sealed Air Corporation or any of their respective Affiliates under the 1998 Tax Sharing Agreement.

This Confirmation Order shall constitute an order authorizing the assumption by each of the Debtors of Section 4.04 of the TSIA. Section 4.04 of the TSIA shall be an assumed agreement of each of the Debtors (including Grace New York and Grace-Conn) pursuant to 11 U.S.C. § 365 and nothing contained in, or contemplated by, the Plan, this Confirmation Order, or the Fresenius Settlement Agreement shall adversely affect the rights of the Debtors, Fresenius or any of their respective Affiliates under Section 4.04 of the TSIA.

**IV.    MATTERS RELATING TO IMPLEMENTATION OF THE PLAN.**

**A.    ACTIONS IN FURTHERANCE OF THE PLAN.**

1.    Pursuant to sections 1123 and 1142 of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation law of any other state (collectively, the "Reorganization Effectuation Statutes"), without further action by the Bankruptcy Court or the stockholders, members, managers or board of directors of any Debtor or Reorganized Debtor, the Debtors and the Reorganized Debtors, as

30

well as each of the Chief Executive Officer, President, or any Vice President of any Debtor or

Reorganized Debtor (collectively, the "Responsible Officers"), is hereby authorized to execute,

deliver, file or record such contracts, instruments, releases and other agreements or documents

and take or direct such actions as may be necessary or appropriate to effectuate and further

evidence the terms and conditions of the Plan, the Plan Documents, this Confirmation Order, and

the transactions contemplated thereby or hereby.

        2.      To the extent that, under applicable non-bankruptcy law, any of the

foregoing actions would otherwise require the consent or approval of the stockholders, members,

managers, or directors of any of the Debtors or Reorganized Debtors, this Confirmation Order

shall, pursuant to sections 1123(a)(5) and 1142 of the Bankruptcy Code and the Reorganization

Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have

been taken by unanimous action of the stockholders, members, managers or directors, as the case

may be, of the appropriate Debtor or Reorganized Debtor.

        3.      The approvals and authorizations specifically set forth in this

Confirmation Order are non-exclusive and are not intended to limit the authority of any Debtor

or Reorganized Debtor or any officer thereof to take any and all actions necessary or appropriate

to implement, effectuate and consummate the Plan, this Confirmation Order, the Plan Documents

or the transactions contemplated thereby or hereby. In addition to the authority to execute,

deliver, and adopt, as the case may be, the contracts, instruments, releases and other agreements,

including the Plan Documents, specifically granted in this Confirmation Order, each of the

Debtors and the Reorganized Debtors is authorized and empowered, without further action in the

Bankruptcy Court or further action or consent by its directors, managers, trustees, members or

stockholders, to take any and all such actions as any of its Responsible Officers may determine

are necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order, the Plan Documents or the transactions contemplated thereby or hereby.

       4.     To the extent any approval of the Bankruptcy Court is required for any of the Plan Proponents to enter into any of the Plan Documents, or to take any actions thereunder or to consummate any of the transactions contemplated thereby, such approvals are hereby granted.

## B.    DIRECTORS AND OFFICERS OF REORGANIZED DEBTORS

       1.     The appointment of the initial members of the Reorganized W. R. Grace & Co. Board of Directors, as set forth in the Second Plan Supplement Amendment as of and immediately following the Effective Date, is hereby approved.

       2.     The appointment of the initial members of the Board of Directors for the Debtors other than W. R. Grace & Co., as set forth in the Second Plan Supplement Amendment is hereby approved.

## C.    COMPENSATION AND BENEFIT PROGRAMS

       1.     The Reorganized Debtors shall continue, automatically and without further act, deed, or court order, their existing employee compensation, indemnity agreements, and benefit plans, programs, and policies, and to cure any defaults that may exist under such agreements, plans, programs, and policies, including payment of the Debtors' voluntary supplemental pension payments which were limited during the pendency of these Chapter 11 Cases, subject to any rights to amend, modify, or terminate such benefits under the terms of the applicable compensation and benefit plan, other agreement, or applicable nonbankruptcy law.

       2.     The Reorganized Debtors shall have the authority to pay retiree benefits (as defined in section 1114(a) of the Bankruptcy Code) and any similar health, disability, or death benefits in accordance with the terms of the retiree benefit plans or other agreements governing the payment of such benefits, subject to any rights to amend, modify, or terminate

such benefits under the terms of the applicable retiree benefits plan, other agreement, or applicable nonbankruptcy law.

### D.    APPROVAL OF EXIT FACILITIES

1.    Without further action by this Court or the directors, managers, trustees, partners, members and stockholders of any Reorganized Debtor or further notice to any entities, each applicable Reorganized Debtor is authorized, as of the Effective Date, to (i) execute, deliver, file, record and implement (a) one or more senior secured term loan facilities (the "Term Facility"); (b) a senior secured revolving credit facility (the "Revolving Facility," and together with the Term Facility, the "Facilities"); (c) debt securities in the form of notes issued pursuant to a registered public offering or a private placement under Rule 144A or otherwise (together with the Term Facility and the Revolving Facilities, the "Exit Facilities"), and (d) such other contracts, instruments, agreements, guaranties or other documents executed or delivered in connection with the Exit Facilities (the "Other Exit Facility Documents"), (ii) perform all of its obligations under the Term Facility and the Other Exit Facility Documents, and (iii) take all such other actions as any of the Responsible Officers of such Reorganized Debtor may determine are necessary, appropriate, or desirable in connection with the consummation of the transactions contemplated by the Exit Facilities and the Other Exit Facility Documents.

2.    In addition to the foregoing, each applicable Reorganized Debtor is authorized, as of the Effective Date, to grant such liens and security interests as necessary to provide security for the Exit Facilities in accordance with the Term Facility and the Other Exit Facility Documents.

E.    **CREATION OF THE ASBESTOS PI TRUST, THE ASBESTOS PD TRUST, AND THE CDN ZAI PD CLAIMS FUND**

1.    On the Effective Date, the Asbestos PI Trust shall be created in accordance with the terms and conditions of the Plan and the Asbestos PI Trust Agreement; on the Effective Date, the Asbestos PD Trust shall be created in accordance with the terms and conditions of the Plan and the Asbestos PD Trust Agreement; and, on the Effective Date, the CDN ZAI PD Claims Fund shall be created in accordance with the CDN ZAI Minutes of Settlement. The Asbestos PI Trust and the Trustees thereof are authorized and empowered to receive the property to be transferred to the Asbestos PI Trust pursuant to Section 7.2 of the Plan; and the Asbestos PD Trust and the Trustees thereof are authorized and empowered to receive the property to be transferred to the Asbestos PD Trust pursuant to Section 7.3 of the Plan, which includes, but is not limited to, the property that will be ultimately transferred from the Asbestos PD Trust to the CDN ZAI PD Claims Fund.

2.    Pursuant to the Reorganization Effectuation Statutes, as applicable, and other appropriate provisions of applicable state laws governing corporations or other legal entities and section 1142(b) of the Bankruptcy Code, without further action by this Court or the directors, managers, partners, members or stockholders of any Reorganized Debtor or further notice to any entities, the Reorganized Debtors are authorized and directed to execute, deliver and perform their obligations under the Asbestos PI Trust Agreement, the Asbestos PD Trust Agreement, and the CDN ZAI Minutes of Settlement, and to execute, deliver, file, record, and implement all such other contracts, instruments, agreements, or documents and take all such other actions as any of the Responsible Officers of the Reorganized Debtors may determine are necessary, appropriate, or desirable in connection therewith. The Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures shall be substantially in the forms attached as

34

Exhibits 2 and 4 of the Exhibit Book respectively, and the Asbestos PD Trust Agreement, the

Case Management Order for Class 7A Asbestos PD Claims, the ZAI Trust Distribution

Procedures, and the CDN ZAI Minutes of Settlement shall be substantially in the forms attached

as Exhibit 3, 25, 33, and 34 respectively of the Exhibit Book.

      3.    On the Effective Date, all right, title and interest in and to the Asbestos PI

Trust Assets and any proceeds or causes of action thereunder shall be automatically transferred

and assigned to, and indefeasibly vested in, the Asbestos PI Trust free and clear of all Claims,

interests, encumbrances, and other interests of any Entity without any further action of any

Entity. On the Effective Date, all right, title and interest in and to the Asbestos PD Trust Assets

and any proceeds or causes of action thereunder shall be automatically transferred and assigned

to, and indefeasibly vested in, the Asbestos PD Trust free and clear of all Claims, interests,

encumbrances, and other interests of any Entity without any further action of any Entity. In

addition, on the Effective Date, Grace-Conn or Parent shall, on behalf of the Reorganized

Debtors and the Non-Debtor Affiliates, transfer to the Asbestos PD Trust all funds as set forth in

the CDN ZAI Minutes of Settlement, which shall be free and clear of all Claims, interests,

encumbrances, and other interests of any Entity without any further action of any Entity. The

Asbestos PD Trust shall immediately transfer the amounts set forth in the CDN ZAI Minutes of

Settlement to the CDN ZAI PD Claims Fund to be used in the manner set forth in the CDN ZAI

Minutes of Settlement.

      4.    During these Chapter 11 Cases, the Bankruptcy Court has approved

certain settlement agreements pursuant to Rule 9019 of the Federal Rules of Bankruptcy

Procedure that require the Asbestos PI Trust and/or the Asbestos PD Trust to be bound by such

agreements. Accordingly, the Asbestos PI Trust and the Asbestos PD Trust shall be bound as

35

provided in those agreements without any further action by the Court, the Asbestos PI Trust, the

Asbestos PD Trust, or any other Entity.

### F.    TRANSFERS OF PROPERTY TO AND ASSUMPTION OF CERTAIN LIABILITIES BY THE ASBESTOS PI TRUST

#### 1.    Funding of the Asbestos PI Trust

The Asbestos PI Trust shall be funded in accordance with Section 7.2.2 of the

Plan.

#### 2.    Transfer of Claims and Demands to the Asbestos PI Trust

On the Effective Date, without any further action of any Entity, all liabilities,

obligations, and responsibilities of any Asbestos Protected Party with respect to all Asbestos PI

Claims shall be channeled to and assumed by the Asbestos PI Trust in accordance with Section

7.2.3 of the Plan.

#### 3.    Assignment and Enforcement of Asbestos PI Trust Causes of Action

On the Effective Date, by virtue of the confirmation of the Plan, without further

notice, action, or deed, the Asbestos PI Trust Causes of Action shall be automatically transferred

and assigned to, and indefeasibly vested in, the Asbestos PI Trust, and the Asbestos PI Trust

shall thereby become the estate representative pursuant to section 1123(b)(3)(B) of the

Bankruptcy Code with respect to the Asbestos PI Trust Causes of Action, with the exclusive

right to enforce the Asbestos PI Trust Causes of Action against any Entity in accordance with

Section 7.2.4 of the Plan.

#### 4.    Appointment of Asbestos PI Trustees

The appointment of Harry Huge, Lewis Sifford, and Dean Trafelet as the initial

Asbestos PI Trustees of the Asbestos PI Trust as set forth in the Asbestos PI Trust Agreement is

approved.

5.    **Creation of the Asbestos PI TAC**

The Asbestos PI Trust Advisory Committee shall be established pursuant to the Asbestos PI Trust Agreement.

6.    **Cooperation Agreement**

On the Effective Date, the Reorganized Debtors and the Asbestos PI Trust shall enter into a cooperation agreement substantially in the form included as Exhibit 10 in the Exhibit Book.

7.    **Institution and Maintenance of Legal and Other Proceedings**

As of the Effective Date, without any further action of the Court or any Entity, the Asbestos PI Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos PI Trust, including the Asbestos PI Trust Causes of Action.

8.    **Appointment of Asbestos PI Future Claimants' Representative**

David T. Austern shall continue to serve as the Asbestos PI Future Claimants' Representative on and after the Effective Date pursuant to Section 6 of the Asbestos PI Trust Agreement.

9.    **Asbestos Insurance Transfer Agreement**

a.    On the Effective Date, the Insurance Contributors and the Asbestos PI Trust shall execute and deliver the Asbestos Insurance Transfer Agreement (substantially in the form included as Exhibit 6 in the Exhibit Book) to the Asbestos PI Trust.

b.    All Asbestos Insurance Rights and all claims and causes of action asserted or to be asserted in furtherance of or in connection therewith, shall be preserved for the benefit of the Asbestos PI Trust, for prosecution either by the applicable Insurance Contributor

37

or the Asbestos PI Trust in accordance with the Asbestos Insurance Transfer Agreement. Upon execution and delivery of the Asbestos Insurance Transfer Agreement, the Asbestos Insurance Rights shall be irrevocably transferred to and vested in the Asbestos PI Trust in accordance with the Asbestos Insurance Transfer Agreement. Asbestos Insurance Rights shall be so vested free and clear of all Encumbrances, liens, security interests, and other Claims or causes of action, except as expressly provided in Section 7.15 of the Plan.

G.    **TRANSFERS OF PROPERTY TO AND ASSUMPTION OF CERTAIN LIABILITIES BY THE ASBESTOS PD TRUST**

1.    **Funding of the Asbestos PD Trust**

The Asbestos PD Trust shall be funded in accordance with Section 7.3.2 of the Plan.

2.    **Transfer of Claims and Demands to the Asbestos PD Trust**

On the Effective Date, without any further action of any Entity, all liabilities, obligations, and responsibilities of any Asbestos Protected Party with respect to all Asbestos PD Claims shall be channeled to and assumed by the Asbestos PD Trust in accordance with Section 7.3.3 of the Plan.

3.    **Assignment and Enforcement of Asbestos PD Trust Causes of Action**

On the Effective Date, by virtue of the confirmation of the Plan, without further notice, action, or deed, the Asbestos PD Trust Causes of Action shall be automatically transferred and assigned to, and indefeasibly vested in, the Asbestos PD Trust, and the Asbestos PD Trust shall thereby become the estate representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Asbestos PD Trust Causes of Action, with the exclusive right to enforce the Asbestos PD Trust Causes of Action against any Entity.

38

4.      **Appointment of Asbestos PD Trustees**

The appointment of _____ as the initial Class 7A Trustee and _____ as the

initial Class 7B Trustee of the Asbestos PD Trust are approved.[6]

5.      **Creation of the Zonolite Attic Insulation TAC**

The Zonolite Attic Insulation Trust Advisory Committee or ZTAC shall be

established pursuant to the Asbestos PD Trust Agreement.

6.      **Appointment of Asbestos PD Future Claimants' Representative**

The Honorable Alexander M. Sanders, Jr. shall continue to serve as the Asbestos

PD Future Claimants' Representative on and after the Effective Date pursuant to Section 6 of the

Asbestos PD Trust Agreement.

**H.      PROVISIONS RELATING TO SETTLED ASBESTOS INSURANCE
COMPANIES**

Certain Asbestos Insurance Entities have entered into settlement agreements with

the Debtors, which have been approved by the Bankruptcy Court by Final Order.  No ruling,

proceeding, or other matter in connection with the Plan or the Chapter 11 Cases will impair,

affect, or modify the rights and obligations under any such settlement agreements.  Pursuant to

those settlement agreements, certain Asbestos Insurance Entities have been identified as Settled

Insurance Companies on Exhibit 5 of the Exhibit Book to the Plan and, subject to any limitations

and conditions identified on Exhibit 5, are entitled to all rights, protections, and benefits

provided to Settled Asbestos Insurance Companies pursuant to the Plan.

Certain other Asbestos Insurance Entities have entered into or may enter into

settlement agreements with the Debtors, which are or will be pending approval by this Court, or

---

[6]    The identities of these individuals will be provided in an amendment to the Asbestos PD Trust Agreement in the
Plan Proponents' Fifth Set of Plan Modifications.

which have been or may be approved by this Court in an order which is subject to review on an

appeal or otherwise. Subject to, and conditioned on, this Court's approval of those settlement

agreements, and this Court's approval order becoming a Final Order, such Asbestos Insurance

Entities may be identified by the Plan Proponents as Settled Asbestos Insurance Companies on

Exhibit 5 of the Exhibit Book to the Plan and, if so identified, subject to any limitations and

conditions identified on Exhibit 5, will be entitled to all rights, protections, and benefits provided

to Settled Asbestos Insurance Companies pursuant to the Plan.

I.      **EXEMPTIONS FROM TAXATION**

Pursuant to section 1146 of the Bankruptcy Code, (i) any transfers in the United

States from a Debtor to a Reorganized Debtor or any other Entity pursuant to or in connection

with the Plan or any of the Plan Documents, shall not be subject to any document recording tax,

stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer

tax, mortgage recording tax, franchise tax or other similar tax or governmental assessment, and

(ii) the appropriate state or local governmental officials or agents are hereby directed to forego

the collection of any such tax or governmental assessment and to accept for filing and

recordation any of the foregoing instruments or other documents without the payment of any

such tax or governmental assessment.

J.      **EXEMPTIONS FROM SECURITIES LAWS**

The issuance and distribution of any and all of (i) the Warrants; (ii) the Parent

Common Stock; and (iii) any other stock, options, warrants, conversion rights, rights of first

refusal or other related rights, contractual, equitable or otherwise, issued (or to be issued),

authorized or reserved under or in connection with the Plan, shall be, and shall be deemed to be,

exempt from registration under any applicable federal or state securities law to the fullest extent

permissible under applicable non-bankruptcy law and under bankruptcy law, including section 1145 of the Bankruptcy Code.

**K.      DISTRIBUTION RECORD DATE**

The Record Date for purposes of determining the holders of Allowed Claims that are entitled to distributions that are required to be made under the Plan on the Effective Date or as otherwise provided under the Plan shall be the date this Confirmation Order is entered on the docket in the Chapter 11 Cases by the clerk of this Court. As of the close of business on the Record Date, the various transfer and claims registers for each of the classes of Claims as maintained by the Debtors or their agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims. The Debtors and the Reorganized Debtors shall have no obligation to recognize any transfer of the Claims occurring after the close of business on the Record Date. Each of the Debtors and the Reorganized Debtors shall be entitled to recognize and deal under the Plan only with those record holders stated on the transfer ledgers as of the close of business on the Record Date, to the extent applicable. Notwithstanding anything to the contrary set forth in the Plan or in this Confirmation Order, the Debtors, the Reorganized Debtors and/or the Disbursing Agent may take such other and additional steps as they may deem appropriate to effectuate distributions to holders of Claims.

**L.      DELIVERY OF DOCUMENTS**

Pursuant to Section 1142 of the Bankruptcy Code, all entities holding Claims against or Equity Interests in the Debtors or collateral pledged as security for any Claims against the Debtors that are treated under the Plan shall be, and they hereby are, directed to execute, deliver, file or record any document, and to take any action necessary, including cancelling, releasing, and discharging any liens arising under any security documents to implement, consummate, and otherwise effect the Plan and the Plan Documents in accordance with their

41

respective terms, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan and the Plan Documents.

**M.    ISSUANCE OF NEW INSTRUMENTS**

All instruments to be issued under the Plan (including the Warrant) shall upon issuance be duly authorized and validly issued, fully paid, and non-assessable, and any conditions precedent to issuance shall be deemed satisfied.

**V.    RELEASES, EXCULPATION, AND INDEMNIFICATION PROVISIONS**

Each of the release, exculpation, and indemnification provisions set forth in the Plan (including the provisions in Sections 7.13, 8.6, 8.8.1, 8.8.3, 8.8.6, 8.8.7, 8.8.8, 8.8.9, 8.8.10, 8.8.11, 11.8, and 11.9 of the Plan) is hereby approved in all respects, is incorporated herein in its entirety, is so ordered and shall be immediately effective on the Effective Date of the Plan without further action or notice by this Court, any of the parties to such releases, exculpations, and indemnifications, or any other party.

**VI.    DISCHARGE, INJUNCTIONS, AND RELATED MATTERS**

**A.    DISCHARGE OF CLAIMS**

**1.    Discharge of the Debtors**

The rights afforded in the Plan and the treatment of all Claims, Plan Claims, and Demands shall be in exchange for and shall discharge all Claims, Plan Claims, and Demands of any nature whatsoever, including any interest accrued thereon from and after the Petition Date, against the Debtors and the Debtors in Possession, or their assets, properties, or interests in property. Except as otherwise provided in the Plan, on the Effective Date, all Claims, Plan Claims, and Demands against the Debtors and the Debtors in Possession shall be discharged. The Reorganized Debtors shall not be responsible for any obligations of the Debtors or the Debtors in Possession except those expressly assumed by the Reorganized Debtors

42