pursuant to the Plan. All Entities shall be precluded and forever barred from asserting against the Debtors and the Reorganized Debtors, or their assets, properties, or interests in property any other or further Claims, Plan Claims, or Demands based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except as expressly provided in the Plan.

2.      **Discharge Injunction**

With respect to any debts discharged by operation of law under Sections 524(a) and 1141 of the Bankruptcy Code, the discharge of the Debtors operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the Debtors, whether or not the discharge of such debt is waived; *provided, however,* that the obligations of the Reorganized Debtors under the Plan and the other Plan Documents to be entered into on the Effective Date are not so discharged.

3.      **Discharge of Liabilities to Holders of Asbestos PI Claims**

The transfer to, vesting in, and assumption by the Asbestos PI Trust of the Asbestos PI Trust Assets as contemplated by the Plan, among other things, shall discharge the Debtors, the Reorganized Debtors and their Representatives for and in respect of all Asbestos PI Claims, subject to the reservations listed in Section 8.2.2 of the Plan. On the Effective Date, the Asbestos PI Trust shall assume the liabilities of the Debtors with respect to all Asbestos PI Claims and shall pay Asbestos PI Claims entitled to payment in accordance with the Asbestos PI Trust Agreement and the Asbestos PI TDP.

4.    **Discharge of Liabilities to Holders of Asbestos PD Claims**

The transfer to, vesting in, and assumption by the Asbestos PD Trust of the Asbestos PD Trust Assets as contemplated by the Plan, among other things, shall discharge the Debtors, the Reorganized Debtors and their Representatives for and in respect of all Asbestos PD Claims, subject to the reservations listed in Section 8.3.2 of the Plan. On the Effective Date, the Asbestos PD Trust shall assume the liabilities of the Debtors with respect to all Asbestos PD Claims and shall pay Asbestos PD Claims entitled to payment in accordance with the Asbestos PD Trust Agreement and any Final Orders of the Bankruptcy Court allowing such claims.

5.    **Discharge of Liabilities to Holders of CDN ZAI PD Claims**

The transfer to, vesting in, and assumption by the CDN ZAI PD Claims Fund of the CDN ZAI PD Claims as contemplated by the CDN ZAI Minutes of Settlement and the Plan, among other things, shall discharge the Debtors, the Reorganized Debtors and their Representatives for and in respect of all CDN ZAI PD Claims, subject to the reservations listed in Section 8.3.2 of the Plan. On the Effective Date, the CDN ZAI PD Claims Fund shall assume the liabilities of the Debtors with respect to all CDN ZAI PD Claims and shall pay CDN ZAI PD Claims entitled to payment in accordance with the terms of the CDN ZAI Minutes of Settlement.

6.    **Disallowed Claims**

On and after the Effective Date, the Debtors, the Reorganized Debtors and their Representatives shall be fully and finally discharged of any liability or obligation on a Disallowed Claim, and any order creating a Disallowed Claim that is not a Final Order as of the Effective Date solely because of an Entity's right to move for reconsideration of such order pursuant to Section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.

44

7.      **Non-Dischargeable ERISA Liability**

The Parent, W. R. Grace & Co., is a controlled group member within the meaning of 29 U.S.C. § 1301(a)(14) and may also be a contributing sponsor of one or more ongoing, defined benefit pension plans to which Title IV of the ERISA applies (the **"Pension Plans"**). The Debtors intend that the Reorganized Parent will continue to be the continuing sponsor of the Pension Plans. Each of the Pension Plans is a defined benefit pension plan insured by the Pension Benefit Guaranty Corporation (**"PBGC"**) under ERISA. The Pension Plans are subject to minimum funding requirements of ERISA and section 412 of the IRC. Should the Pension Plans be underfunded and should the Pension Plans terminate, the PBGC may assert claims for the underfunding, for any unpaid minimum funding contributions owed the Pension Plan, and for any unpaid premiums owed the PBGC.

Nothing contained in this Confirmation Order, the Plan, the Bankruptcy Code (including Bankruptcy Code § 1141), or any other document filed in the Chapter 11 Cases shall be construed to discharge, release, or relieve the Debtors, or any other party, in any capacity, from any liability or responsibility to the PBGC with respect to the Pension Plans under any law, governmental policy, or regulatory provision. The PBGC shall not be enjoined or precluded from enforcing such liability or responsibility, as a result of any of the provisions of the Plan (including those provisions providing for exculpation, satisfaction, release, and discharge of Claims), this Confirmation Order, the Bankruptcy Code (including Bankruptcy Code § 1141), or any other document filed in the Chapter 11 Cases. Notwithstanding the foregoing, neither the PBGC nor any other Entity shall assert any liability or responsibility with respect to the Pension Plans under any law, governmental policy, or regulatory provisions

45

against, and such liability or responsibility shall not attach to, the Asbestos PI Trust or any of the Asbestos PI Trust Assets or the Asbestos PD Trust or any of the Asbestos PD Trust Assets.

### B.    THE ASBESTOS PI CHANNELING INJUNCTION

In order to supplement, where necessary, the injunctive effect of the discharge provided by Sections 1141, 524(a), and 105 of the Bankruptcy Code and as described in Article 8 of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of this Court under Section 524(g) of the Bankruptcy Code, the Plan provides for the following injunction, which is hereby approved and authorized in all respects and which shall take effect as of the Effective Date:

### 1.    Asbestos PI Channeling Injunction

On and after the Effective Date, the sole recourse of the Holder of an Asbestos PI Claim or a Successor Claim arising out of or based on any Asbestos PI Claim on account thereof shall be to the Asbestos PI Trust pursuant to the provisions of the Asbestos PI Channeling Injunction and the Asbestos PI TDP and such Holder shall have no right whatsoever at any time to assert its Asbestos PI Claim or Successor Claim arising out of or based on any Asbestos PI Claim against the Debtors, Reorganized Debtors, any other Asbestos Protected Party, or any property or interest (including any Distributions made pursuant to the Plan) in property of the Debtors, the Reorganized Debtors, or any other Asbestos Protected Party. Without limiting the foregoing, from and after the Effective Date, the Asbestos PI Channeling Injunction shall apply to all present and future Holders of Asbestos PI Claims or Successor Claims arising out of or based on any Asbestos PI Claim, and all such Holders permanently and forever shall be stayed, restrained, and enjoined from taking any and all legal or other actions or making any Demand against any Asbestos Protected Party  or any property or interest (including Distributions made pursuant to the Plan) in property of any Asbestos Protected Party for the

purpose of, directly or indirectly, claiming, collecting, recovering, or receiving any payment, recovery, satisfaction, or any other relief whatsoever on, of, or with respect to any Asbestos PI Claims or Successor Claims arising out of or based on any Asbestos PI Claims other than from the Asbestos PI Trust in accordance with the Asbestos PI Channeling Injunction and pursuant to the Asbestos PI Trust Agreement and the Asbestos PI TDP, including:

(a)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(b)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(c)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(d)    setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party; and

(e)    proceeding in any other manner with regard to any matter that is subject to resolution pursuant to the Asbestos PI Trust, except in conformity and compliance with the Asbestos PI Trust Agreement and the Asbestos PI TDP.

2.    **Reservations from Asbestos PI Channeling Injunction**

Notwithstanding anything to the contrary in the foregoing provisions of Section

VI(B)(1) of this Confirmation Order and Section 8.2.1 of the Plan, the Asbestos PI Channeling

Injunction shall not enjoin:

(a)    the rights of Entities to the treatment accorded them under the Plan, including the rights of Entities with Asbestos PI Claims to assert such Asbestos PI Claims in accordance with the Asbestos PI TDP;

(b)    the rights of Entities to assert any claim, debt, obligation or liability for payment of expenses of the Asbestos PI Trust solely against the Asbestos PI Trust or the Asbestos PI Trust Assets;

(c)    the rights of the Asbestos PI Trust and, to the extent permitted by the Asbestos Insurance Transfer Agreement, the Insurance Contributors, to prosecute any cause of action or to assert any Claim, Demand, debt, obligation, or liability for payment against any Entity (but not the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties), including any Asbestos Insurance Entity, based on or arising from the Asbestos Insurance Rights;

(d)    the rights of the Asbestos PI Trust and, to the extent permitted by the Asbestos Insurance Transfer Agreement, the Insurance Contributors, to receive any settlement, award, payment of cash or other property of any kind whatsoever from any Entity (but not the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties) including any Asbestos Insurance Entity in satisfaction of any Asbestos Insurance Rights; and

(e)    BNSF from asserting any claim (as that term is defined in Bankruptcy Code § 101(5)) for insurance coverage as an insured or an additional insured against a Settled Asbestos Insurance Company under and only under an insurance policy (or part of a policy) that is not identified as being the subject of any Asbestos Insurance Settlement Agreement in Exhibit 5 of the Exhibit Book or is not subject to protection under the terms of the Debtors' Settlement Agreement with the Royal Parties, dated June 17, 2009 (the "Arrowood Rule 9019 Settlement Agreement"). To avoid any doubt, BNSF shall be enjoined from asserting any claim against any of the policies identified in Exhibits 2 and 3 of the Arrowood Rule 9019 Settlement Agreement.

Except as otherwise expressly provided in the Plan, the Sealed Air Settlement Agreement, or the Fresenius Settlement Agreement, nothing contained in the Plan shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors, the Reorganized Debtors, or the Asbestos PI Trust may have against any Entity in connection with or arising out of or based on any Asbestos PI Claim. Notwithstanding anything to the contrary in this Confirmation Order, in any provision of the Plan, or in any Plan Document (including the Asbestos PI Trust Agreement and the Asbestos PI TDP), and for the avoidance of any doubt, following the transfer to the Asbestos PI Trust of the Cryovac Payment (reduced by the total aggregate amount of transfers to the Asbestos PD Trust by or on behalf of Cryovac, Inc. as part of the Class 7A Initial Payment and the Class 7B Initial Payment), (i) no Entity shall have any right to enforce any provision of the Plan relating to the Cryovac Payment or the payment thereof against any of the Sealed Air Indemnified Parties or any property or interest (including any Distributions made pursuant to the Plan) in property of any of the Sealed Air Indemnified Parties and (ii) the sole recourse of a Holder of an Asbestos PI Claim against any of the Sealed Air Indemnified Parties or a Successor Claim arising out of or based on any Asbestos PI Claim on account thereof, shall be to the Asbestos PI Trust, and such Holder shall have no right whatsoever at any time to assert its Asbestos PI Claim or Successor Claim arising out of or based on any Asbestos PI Claim against any of the Sealed Air Indemnified Parties or any property or interest (including any Distributions made pursuant to the Plan) in property of any of the Sealed Air Indemnified Parties. Notwithstanding anything to the contrary in this Confirmation Order, in any provision of the Plan, or in any Plan Document (including the Asbestos PI Trust and the Asbestos PI TDP), and for the avoidance of any doubt, following the transfer to the Asbestos PI

49

Trust of the Fresenius Payment (reduced by the total aggregate amount of transfers to the

Asbestos PD Trust by or on behalf of Fresenius as part of the Class 7A Initial Payment and the

Class 7B Initial Payment), (i) no Entity shall have any right to enforce any provision of the Plan

relating to the Fresenius Payment or the payment thereof against any of the Fresenius

Indemnified Parties or any property or interest (including any Distributions made pursuant to the

Plan) in property of any of the Fresenius Indemnified Parties and (ii) the sole recourse of a

Holder of an Asbestos PI Claim against any of the Fresenius Indemnified Parties or a Successor

Claim arising out of or based on any Asbestos PI Claim on account thereof, shall be to the

Asbestos PI Trust, and such Holder shall have no right whatsoever at any time to assert its

Asbestos PI Claim or Successor Claim arising out of or based on any Asbestos PI Claim against

any of the Fresenius Indemnified Parties or any property or interest (including any Distributions

made pursuant to the Plan) in property of any of the Fresenius Indemnified Parties.

### C.     THE ASBESTOS PD CHANNELING INJUNCTION

In order to supplement, where necessary, the injunctive effect of the

discharge provided by Sections 1141, 524(a), and 105 of the Bankruptcy Code and as

described in Article 8 of the Plan, and pursuant to the exercise of the equitable jurisdiction and

power of this Court under Section 524(g) of the Bankruptcy Code, the Plan provides for the

following injunction, which is hereby approved and authorized in all respects and which shall

take effect as of the Effective Date:

### 1.     Asbestos PD Channeling Injunction

On and after the Effective Date, (1) the sole recourse of the Holder of an

Asbestos PD Claim or a Successor Claim arising out of or based on any Asbestos PD Claim on

account thereof shall be to the Asbestos PD Trust; and (2) the sole recourse of a Holder of a

CDN ZAI PD Claim or a Successor Claim arising out of or based on any CDN ZAI PD Claim,

shall be as set forth in the CDN ZAI Minutes of Settlement, pursuant to the provisions of the

Asbestos PD Channeling Injunction and any Final Orders of the Bankruptcy Court allowing such

claims, and such Holders shall have no right whatsoever at any time to assert their Asbestos PD

Claim, Successor Claim arising out of or based on any Asbestos PD Claim, CDN ZAI PD Claim,

or Successor Claim arising out of or based on any CDN ZAI PD Claim against the Debtors,

Reorganized Debtors, any other Asbestos Protected Party, or any property or interest (including

any Distributions made pursuant to the Plan) in property of the Debtors, the Reorganized

Debtors, or any other Asbestos Protected Party.  Without limiting the foregoing, from and after

the Effective Date, the Asbestos PD Channeling Injunction shall apply to all present and future

Holders of Asbestos PD Claims, Successor Claims arising out of or based on any Asbestos PD

Claim, CDN ZAI PD Claims, and Successor Claims arising out of or based on any CDN ZAI PD

Claims, and all such Holders permanently and forever shall be stayed, restrained, and enjoined

from taking any and all legal or other actions or making any Demand for the purpose of, directly

or indirectly, claiming, collecting, recovering, or receiving any payment, recovery, satisfaction,

or any other relief whatsoever on, of, or with respect to any Asbestos PD Claims, Successor

Claims arising out of or based on any Asbestos PD Claims, CDN ZAI PD Claims, or Successor

Claims arising out of or based on any CDN ZAI PD Claim other than from the Asbestos PD

Trust in accordance with the Asbestos PD Channeling Injunction and pursuant to the Asbestos

PD Trust Agreement in the case of Asbestos PD Claims or in accordance with the Asbestos PD

Channeling Injunction and pursuant to the CDN ZAI Minutes of Settlement in the case of CDN

ZAI PD Claims, including:

> (a)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or

51

affecting any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(b)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(c)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(d)    setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party; and

(e)    proceeding in any other manner with regard to any matter that is subject to resolution pursuant to the Asbestos PD Trust, except in conformity and compliance with the Asbestos PD Trust Agreement in the case of Asbestos PD Claims, or proceeding in any other manner with regard to any matter that is subject to resolution pursuant to the CDN ZAI Minutes of Settlement in the case of CDN ZAI PD Claims.

## 2.    Reservations from Asbestos PD Channeling Injunction

Notwithstanding anything to the contrary in the foregoing provisions of Section

VI(C)(1) of this Confirmation Order and Section 8.3.1 of the Plan, the Asbestos PD Channeling

Injunction shall not enjoin:

(a)    the rights of Entities to the treatment accorded them under the Plan, including the rights of Entities with Asbestos PD Claims to assert such Asbestos PD Claims in accordance with the PD Settlement Agreements, the Class 7A Case Management Order or the ZAI TDP, and the rights of Entities with CDN ZAI PD Claims to assert such CDN ZAI PD Claims in accordance with the provisions set forth in the CDN ZAI Minutes of Settlement. For the avoidance of doubt, such rights shall include the rights of an Entity holding an Allowed Asbestos PD Claim under a PD Settlement Agreement to enforce the provisions of the Plan which contemplate that on the Effective Date, the Asbestos PD Initial Payment will be made to the Asbestos PD Trust in an amount sufficient to permit

52

the Asbestos PD Trust to make all payments, in full, on account of and as
required by PD Settlement Agreements as contemplated by the Plan; and

(b)    the rights of Entities to assert any claim, debt, obligation or liability for
payment of expenses of the Asbestos PD Trust solely against the Asbestos
PD Trust or the Asbestos PD Trust Assets.

Except as otherwise expressly provided in this Confirmation Order, the

Plan, the Sealed Air Settlement Agreement, or the Fresenius Settlement Agreement, nothing

contained in the Plan shall constitute or be deemed a waiver of any claim, right, or cause of

action that the Debtors, the Reorganized Debtors, or the Asbestos PD Trust may have against any

Entity in connection with or arising out of or based on any Asbestos PD Claim or CDN ZAI PD

Claim. Notwithstanding anything to the contrary in this Confirmation Order, in any provision of

the Plan, or in any Plan Document (including the Asbestos PD Trust Agreement, the CDN ZAI

Minutes of Settlement, the ZAI TDP, and the Class 7A Case Management Order), and for the

avoidance of any doubt, following the transfer to the Asbestos PD Trust of Cryovac, Inc.'s share

of the Asbestos PD Initial Payment by or on behalf of Cryovac, Inc., (i) no Entity shall have any

right to enforce any provision of the Plan relating to the Asbestos PD Initial Payment or the

payment thereof against any of the Sealed Air Indemnified Parties or any property or interest

(including any Distributions made pursuant to the Plan) in property of any of the Sealed Air

Indemnified Parties and (ii) the sole recourse of a Holder of an Asbestos PD Claim or CDN ZAI

PD Claim against any of the Sealed Air Indemnified Parties or a Successor Claim arising out of

or based on any Asbestos PD Claim or CDN ZAI PD Claim on account thereof, shall be to the

Asbestos PD Trust or as set forth in the CDN ZAI Minutes of Settlement (as applicable), and

such Holder shall have no right whatsoever at any time to assert its Asbestos PD Claim, CDN

ZAI PD Claim, or Successor Claim arising out of or based on any Asbestos PD Claim or CDN

ZAI PD Claim against any of the Sealed Air Indemnified Parties or any property or interest

(including any Distributions made pursuant to the Plan) in property of any of the Sealed Air Indemnified Parties. Notwithstanding anything to the contrary in this Confirmation Order, in any provision of the Plan, or in any Plan Document (including the Asbestos PD Trust Agreement, the CDN ZAI Minutes of Settlement, the ZAI TDP, and the Class 7A Case Management Order), and for the avoidance of any doubt, following the transfer to the Asbestos PD Trust of Fresenius' share of the Asbestos PD Initial Payment by or on behalf of Fresenius, (i) no Entity shall have any right to enforce any provision of the Plan relating to the Asbestos PD Initial Payment or the payment thereof against any of the Fresenius Indemnified Parties or any property or interest (including any Distributions made pursuant to the Plan) in property of any of the Fresenius Indemnified Parties and (ii) the sole recourse of a Holder of an Asbestos PD Claim or CDN ZAI PD Claim against any of the Fresenius Indemnified Parties or a Successor Claim arising out of or based on any Asbestos PD Claim or CDN ZAI PD Claim on account thereof, shall be to the Asbestos PD Trust or as set forth in the CDN ZAI Minutes of Settlement (as applicable), and such Holder shall have no right whatsoever at any time to assert its Asbestos PD Claim, CDN ZAI PD Claim, or Successor Claim arising out of or based on any Asbestos PD Claim or CDN ZAI PD Claim against any of the Fresenius Indemnified Parties or any property or interest (including any Distributions made pursuant to the Plan) in property of any of the Fresenius Indemnified Parties.

**D.      ASBESTOS INSURANCE ENTITY INJUNCTION**

Pursuant to the exercise of the equitable jurisdiction and power of the Court under Section 105(a) of the Bankruptcy Code, the Plan provides for the following injunction, which is hereby approved and authorized in all respects and which shall take effect as of the Effective Date:

54

1.    **Asbestos Insurance Entity Injunction -- Injunction for the Benefit of the Asbestos PI Trust**

(a)    All Entities that have held or asserted, that hold or assert, or that may in the future hold or assert, any claim or cause of action against any Asbestos Insurance Entity, based upon, or arising out of, any Asbestos PI Claim against the Debtors or any Asbestos Insurance Rights, whenever and wherever arisen or asserted (including all claims in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty) shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly claiming, collecting, recovering, or receiving any payment, recovery, satisfaction, or any other relief whatsoever on, of, or with respect to any such claim or cause of action, including:

(i)    commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding in any forum) against or affecting any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity;

(ii)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity;

(iii)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity;

(iv)    setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity; and

(v)    proceeding in any other manner with regard to any matter that is subject to resolution by the Asbestos PI Trust, except in conformity

55

and compliance with the Asbestos PI Trust Agreement and the Asbestos PI TDP.

(b)     The Asbestos PI Trust shall have the sole and exclusive authority at any time to terminate, reduce or limit the scope of, the Asbestos Insurance Entity Injunction issued pursuant to Section 8.4.1.1 of the Plan as it may apply to any Asbestos Insurance Entity upon express written notice to that Asbestos Insurance Entity; and

(c)     The Asbestos Insurance Entity Injunction is not issued for the benefit of any Asbestos Insurance Entity, and no Asbestos Insurance Entity is or may become a third-party beneficiary of the Asbestos Insurance Entity Injunction.

2.      **Reservations from the Injunction for the Benefit of the Asbestos PI Trust**

Notwithstanding anything to the contrary in the foregoing provisions of Section VI(D)(1) of this Confirmation Order and Section 8.4.1.1 of the Plan, the Asbestos Insurance Entity Injunction shall not enjoin:

(a)    the rights of any Entity to the treatment accorded it under the Plan;

(b)    the rights of the Asbestos PI Trust or, to the extent provided in the Asbestos Insurance Transfer Agreement, any of the Insurance Contributors, to prosecute any cause of action or to assert any claim, demand, debt, obligation, or liability for payment against any Entity (but not the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties), including any Asbestos Insurance Entity or any property or interest in property of any Asbestos Insurance Entity, based on or arising from the Asbestos Insurance Rights for the Asbestos PI Trust's benefit; and

(c)    the rights of the Asbestos PI Trust or, to the extent provided in the Asbestos Insurance Transfer Agreement, any of the Insurance Contributors, to receive any settlement, award, payment of Cash or other property of any kind whatsoever from any Entity (but not the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties), including any Asbestos Insurance Entity or any property or interest in property of any Asbestos Insurance Entity, in satisfaction of any Asbestos Insurance

56

Rights that the Asbestos PI Trust or any of the Insurance Contributors may have against any of the foregoing.

3.      **Reservations from the Injunction for the Benefit of BNSF**

Notwithstanding anything to the contrary in the foregoing provisions of Section VI(D)(1) of this Confirmation Order and Section 8.4.1.1 of the Plan, the Asbestos Insurance Entity Injunction shall not enjoin:

> (a) BNSF from asserting any claim (as that term is defined in Bankruptcy Code § 101(5)) for insurance coverage as an insured or an additional insured against any Asbestos Insurance Entity that is not identified on Exhibit 5 of the Exhibit Book; and
>
> (b) BNSF from asserting any claim (as that term is defined in Bankruptcy Code § 101(5)) for insurance coverage as an insured or an additional insured against a Settled Asbestos Insurance Company under and only under an insurance policy (or part of a policy) that is not identified as being the subject of an Asbestos Insurance Settlement Agreement in Exhibit 5 of the Exhibit Book;
>
> provided, however, that in all events, BNSF shall be enjoined from asserting any claim against any Entity or policy entitled to protection under the terms of the Arrowood Rule 9019 Settlement Agreement (as defined in Section 8.2.2(e) of the Plan), including any of the policies identified in Exhibits 2 and 3 to the Arrowood Rule 9019 Settlement.

4.      **Reservations from the Injunction Regarding Insurer Contribution Claims**

Notwithstanding anything to the contrary in the foregoing provisions of Section VI(D)(1) of this Confirmation Order and Section 8.4.1.1 of the Plan, the Asbestos Insurance Entity Injunction shall not enjoin an insurer from asserting any claim for contribution against any other insurer that is not a Settled Asbestos Insurance Company.

E.      **SUCCESSOR CLAIMS INJUNCTION**

Pursuant to the exercise of the equitable jurisdiction and power of the Court under Section 105(a) of the Bankruptcy Code, the Plan provides for the following

injunction, which is hereby approved and authorized in all respects and which shall take effect as of the Effective Date:

### 1.    Injunction

All Entities that have held or asserted, that hold or assert, or that may in the future hold or assert, any Successor Claim (other than Successor Claims arising out of or based on any Asbestos PI Claim, Asbestos PD Claim, or CDN ZAI PD Claim) against any Asbestos Protected Party shall be stayed, restrained, and enjoined from taking any and all legal or other actions or making any demand for the purpose of directly or indirectly claiming, collecting, recovering, or receiving any payment, recovery, satisfaction, or any other relief whatsoever on, of, or with respect to any such Successor Claim, including:

(a)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(b)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(c)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(d)    setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party; and

(e)    proceeding in any other manner with regard to any Successor Claim based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction or Fresenius Transaction (other than Successor Claims arising

out of or based on any Asbestos PI Claim, Asbestos PD Claim, or CDN ZAI PD Claim).

2.    **Reservations from the Injunction for the Benefit of Holders of Grace-Related Claims**

(a)    Any Holder of a GR Claim (as that term is defined in Section 8.5.2 of the Plan and subject to the limitations involving Seaton and OneBeacon as set forth in Section 8.5.2 of the Plan) who has not, on or before the Effective Date, filed a proof of claim against the Debtors with respect to the same claim(s) as are contemplated by such GR Claim, may file a GR Proof of Claim (as that term is defined in Section 8.5.2 of the Plan and subject to the limitations involving Seaton and OneBeacon as set forth in Section 8.5.2 of the Plan) asserting such GR Claim against the Debtors on or before the sixtieth day subsequent to the Effective Date (the **"GR Claims Bar Date"**);

(b)    The Reorganized Debtors, from and after the Effective Date, shall assume all liability of Fresenius, and be entitled to assert and have the benefit of all defenses of Fresenius, with respect to all GR Claims timely filed by the GR Claims Bar Date; and

(c)    For the avoidance of doubt, the Successor Claims Injunction shall not apply to Asbestos PI Claims and Asbestos PD Claims, which respectively shall be subject to the Asbestos PI Channeling Injunction and the Asbestos PD Channeling Injunction.

(d)    Nothing in this Confirmation Order or Section 8.5.2 of the Plan shall be construed to limit the scope or effect of the injunction afforded to the Fresenius Indemnified Parties or any of the other Asbestos Protected Parties pursuant to Section 8.5.1 of the Plan or any of the other injunctions, releases, indemnifications, or protections afforded to the Fresenius Indemnified Parties or any of the other Asbestos Protected Parties under the Plan.

3.    **Reservations from the Injunction for the Benefit of OneBeacon and CNA**

(a)    Notwithstanding anything to the contrary contained in this Confirmation Order or Section 8.5.1 of the Plan, and without limiting any defense, counterclaim, or other right of any of the Sealed Air Indemnified Parties or the application of any other provision of the Plan (including each of the injunctions and releases in the Plan), the Successor Claims Injunction shall not apply to any direct contractual indemnification obligation that any Sealed Air Indemnified Party may have to OneBeacon based upon or arising under the 1996 CU Agreement with respect to "Hatco-Related

Environmental Claims" (as defined in the 1996 CU Agreement) asserted
against the policies covered by that agreement.

(b)     Notwithstanding anything to the contrary contained in this Confirmation
Order or Section 8.5.1 of the Plan, and without limiting any other defense,
counterclaim, or other right of any of the Sealed Air Indemnified Parties
or the application of any other provision of the Plan (including each of the
other injunctions and releases in the Plan), the Successor Claims
Injunction shall not apply to any contractual indemnification and hold
harmless obligations for which the Sealed Air Indemnified Parties are
directly obligated to CNA and that arise directly under (or are directly
based on) the CNA/Old Grace Delaware 5/30/97 Settlement Agreement
except to the extent that any such obligation is, gives rise to, is based on,
arises out of, or otherwise relates to any Asbestos Claim. For the
avoidance of doubt, CNA's claims against the Sealed Air Indemnified
Parties under or based on any of the CNA/Old Grace Delaware Settlement
Agreements that are Asbestos PI Claims or Asbestos PD Claims shall be
subject to the Asbestos PI Channeling Injunction or the Asbestos PD
Injunction and shall be treated as Class 6 Claims or Class 7A Claims
under the Plan.

F.     **INJUNCTIONS AND RELEASES RELATED TO THE SEALED AIR
INDEMNIFIED PARTIES AND FRESENIUS INDEMNIFIED PARTIES**

As required by the Sealed Air Settlement Agreement, the Sealed Air Settlement

Order, the Fresenius Settlement Agreement, and the Fresenius Settlement Order, the injunctions,

releases, and indemnifications outlined in the Plan, including the Asbestos PI Channeling

Injunction and Asbestos PD Channeling Injunction provided under Section 524(g) of the

Bankruptcy Code and the Successor Claims Injunction provided under Section 105(a) of the

Bankruptcy Code, are hereby approved in all respects, incorporated herein in their entirety, and

are so ordered and shall be immediately effective upon the Effective Date of the Plan without

further action or notice by this Court or any other party. Such injunctions, releases, and

indemnifications shall absolutely and unequivocally extend to and protect the Sealed Air

Indemnified Parties and the Fresenius Indemnified Parties. For the avoidance of doubt, the

releases, injunctions, and indemnifications as provided in the Plan are valid and enforceable

against each Asbestos Insurance Entity, and Section 7.15 of the Plan is not intended, nor shall it

60

be construed, to limit the protections afforded to the Sealed Air Indemnified Parties or the

Fresenius Indemnified Parties by this Confirmation Order or the Plan or to allow the Asbestos

Insurance Entities to undertake any action against any of the Sealed Air Indemnified Parties or

the Fresenius Indemnified Parties that is contrary to this Confirmation Order or the Plan.

### G.    INJUNCTIONS AS RELATED TO KANEB

Neither the Successor Claims Injunction nor the Asbestos Insurance Entity

Injunction nor any other provision in the Plan bars Kaneb Pipe Line Operating Partnership, L.P.

(now known as NuStar Pipeline Operating Partnership L.P.) or Support Terminal Services, Inc.

(now known as NuStar Terminal Services, Inc.) (collectively, "Kaneb") from pursuing claims

against any Asbestos Insurance Entities pursuant to the premises/operations coverage of the

Asbestos Insurance Policies issued by Settled Asbestos Insurance Companies listed on Exhibit 5

of the Exhibit Book of the Plan with respect to alleged liability of Kaneb in connection with

claims that are not Asbestos PI Claims or Asbestos PD Claims as those terms are defined in the

Plan, to the extent that Kaneb owns property rights in such Asbestos Insurance Policies.  For the

avoidance of doubt: (A) nothing in the Plan or in sub-clause (B) of this paragraph shall permit

Kaneb to pursue Asbestos Claims as that term is defined in the Plan, and (B) the environmental

claims asserted by Kaneb against certain Asbestos Insurance Entities with respect to the Otis

Pipeline site (relating to alleged jet fuel releases from the pipeline which previously served Otis

Air Force Base on the Massachusetts Military Reservation in Sandwich, MA but not relating to

asbestos, as described in the Motion for Relief from Stay (D.I. 20538 and Conf. Hrg. Ex. OS-

40)) and the Macon Pipeline site (relating to alleged jet fuel releases from the pipeline in Macon,

GA serving Warner Robins Air Force Base but not relating to asbestos, as described in the

Motion for Relief from Stay (D.I. 20846 and Conf. Hrg. Ex. OS-41)) are recognized not to be

enjoined by either the Asbestos PI Channeling Injunction or the Asbestos PD Channeling

Injunction; provided, however, that the SA Debtors and Reorganized Debtors shall, at their sole

expense, jointly and severally defend, indemnify, and hold harmless the Sealed Air Indemnified

Parties or the Fresenius Indemnified Parties from and against any and all SA Claims, SA Debts,

and SA Damages that may be asserted against such parties relating (whether directly or

indirectly, in whole or in part) to the claims described in sub-clause (B).

## H.    TERM OF CERTAIN INJUNCTIONS AND AUTOMATIC STAY

### 1.    Injunctions and/or Automatic Stays in Existence Immediately prior to Confirmation

All of the injunctions and/or automatic stays provided for in or in connection with

the Chapter 11 Cases, whether pursuant to Sections 105 or 362 of the Bankruptcy Code, or any

other provision of the Bankruptcy Code or other applicable law, in existence immediately prior

to the Confirmation Date shall remain in full force and effect until the injunctions set forth in the

Plan become effective, and thereafter if so provided by the Plan, the Confirmation Order, or by

their own terms.  In addition, on and after the Confirmation Date, the Reorganized Debtors or the

Plan Proponents, acting together, may seek such further orders as they may deem necessary or

appropriate to preserve the status quo during the time between the Confirmation Date and the

Effective Date.

### 2.    Injunctions Provided for in the Plan

Each of the injunctions provided for in the Plan and described above in this

Confirmation Order shall become effective on the Effective Date and shall continue in effect at

all times thereafter unless otherwise provided by the Plan.  Notwithstanding anything to the

contrary contained in the Plan, all actions in the nature of those to be enjoined by such

injunctions shall be enjoined during the period between the Confirmation Date and the Effective

Date.

## VII.    ISSUES RELATED TO PLAN AND OBJECTIONS TO CONFIRMATION.

### A.    RESOLUTION OF ISSUES RELATED TO PLAN OBJECTIONS

Based upon the record of the Chapter 11 Cases, the Bankruptcy Court hereby determines that certain of the objections to Confirmation have been resolved by separate agreement and/or orders from this Court. Those include:

1.    Order Authorizing Debtors' Entry Into Settlement Agreements to Resolve Pending ERISA Litigation, dated 5/26/09 (D.I. 21860) (releasing all pending claims and resolving all objections);

2.    Order Pursuant to Sections 105, 363, 1107 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure Authorizing and Approving the Debtors Entering Into the Settlement Agreement With the Royal Parties and Denying Libby Claimants' Motion to Defer Consideration and Compel Discovery, dated 8/19/09 (D.I. 22859) (resolving all objections once Order becomes a Final Order -- Order currently on appeal);

3.    Order Approving Stipulation and Order With Respect to (1) Liability Insurance Policies Issued by General Insurance Company of America and (2) 1994 Settlement Agreement Between W. R. Grace & Co. and General Insurance Company of America, dated 8/19/09 (D.I. 22857) (resolving all objections);

4.    Order Approving Amended and Restated Settlement Agreement and Mutual Release with Lloyd's Underwriters, dated 8/19/09 (D.I. 22856) (resolving all objections);

5.    Order Pursuant to Sections 105, 363, 1107 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure Approving Amended and Restated Asbestos Settlement Agreement with Allstate Insurance Company, dated 9/9/09 (D.I. 23205) (resolving all objections);

6.      Order Pursuant to Sections 105, 363, 1107 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure Approving Settlement Agreement By and Between W. R. Grace & Co., et al. and The Scotts Company LLC, dated 9/9/09 (D.I. 23203) (resolving all objections);

7.      Order Pursuant to Sections 105, 363, 1107 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure Approving Amended and Restated Settlement Agreement with Certain London Market Insurance Companies, dated 9/9/09 (D.I. 23204) (resolving all objections);

8.      Order Approving Stipulation Regarding Treatment of Certain Claims of the St. Paul Companies, Inc., Travelers Casualty and Surety Company of America and Certain of Their Affiliates and Subsidiaries Under the Plan, dated 9/9/09 (D.I. 23202) (resolving all objections);

9.      Order Pursuant to Sections 105, 363, 1107 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure Approving the Amended Settlement Agreement and Mutual Release with the Chartis Insurance Companies, dated 10/13/09 (D.I. 23484) (resolving all objections of Certain AIU/AIG Insurers);

10.      Order Pursuant to Sections 105, 363, 1107 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure Approving the Agreement Amending and Restating the Asbestos Settlement Agreement with the Aetna Casualty and Surety Company, dated 10/13/09 (D.I. 23485) (resolving all objections);

11.      Order Pursuant to Sections 105, 363, 1007 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure

Approving the Settlement Agreement Between W. R. Grace & Co. and the Allianz Companies,

dated 12/11/09 (D.I. 23995) (resolving all objections);

12.    Order Pursuant to Sections 105, 363, 1007 and 1108 of the Bankruptcy

Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure

Approving Settlement Agreement By and Between W. R. Grace & Co. and the Edwards

Plaintiffs, dated 12/17/09 (D.I. 24019) (resolving all objections);

13.    Order Pursuant to Sections 105, 363, 1107 and 1108 of the Bankruptcy

Code and Rules 2002, 6004, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure

Approving the Settlement Agreement Between W. R. Grace & Co. and Zurich, dated 12/17/09

(D.I. 24018) (resolving all objections);

14.    Stipulation between the Plan Proponents and Insurers, dated 2/5/10 (D.I.

24250) (regarding section 502(e) of the Bankruptcy Code);

15.    Amended Stipulation Concerning Kaneb Pipe Line Operating Partnership,

L.P. and Support Terminal Services, Inc.'s Objections to Confirmation of Plan of

Reorganization, dated 2/12/10 (D.I. 24283) (resolving all objections);

16.    Stipulation Among the Plan Proponents, OneBeacon America Insurance

Company and Seaton Insurance Company, dated 2/15/10 (D.I. 24294) (resolving all objections);

17.    Order Approving Stipulation and Agreed Order Resolving Neutrality

Objections to First Amended Joint Plan of Reorganization, dated 2/16/10 (D.I. 24297) (resolving

insurer neutrality objections). This stipulation shall be binding upon the Parties (as defined

therein) and their respective successors and assigns, upon the Asbestos PI Trust once it is

established pursuant to the Plan and as described in Section IV.E.4 above, and upon all Asbestos

PI Trustees;

65

18.    Stipulation Among the Plan Proponents and Morgan Stanley Senior Funding, Inc. Regarding Rate of Post-Petition Interest for Claims of Morgan Stanley Senior Funding, Inc. as Assignee of Certain Claims of Bank of America, N.A. Under the Joint Plan, dated 2/24/10 (D.I. 24347) (resolving all objections);

19.    Stipulation Among the Plan Proponents and CNA Regarding Certain Actions Against Sealed Air, dated 3/19/10 (D.I. 24479) (resolving Sealed Air Release and Injunction Objections);

20.    Order Approving Stipulation Regarding Classification, Allowance and Payment of Claim No. 9553 of Longacre Master Fund, Ltd. and Longacre Capital Partners (QP), L.P. and Withdrawing Plan Objections, dated 4/7/10 (D.I. 24583) (resolving all objections);

21.    Order Approving Stipulation Regarding Classification, Allowance and Payment of Claim No. 18508 of National Union Fire Insurance Company of Pittsburgh, PA and Withdrawing Plan Objections, dated 4/7/10 (D.I. 24584) (resolving all objections); and

22.    Certain other parties agreed that their Plan Objections were resolved as a result of the Modifications or through negotiations with the Plan Proponents.  These include: (A) BNSF (withdrawn all objections except those remaining on the Chart of Confirmation Requirements and Objections); (B) Michigan Department of Treasury (resolved all objections); (C) the Texas Comptroller (resolved all objections); and (D) the United States Trustee (resolved all objections).

## B.    OVERRULING OF CERTAIN OBJECTIONS TO CONFIRMATION.

All objections not otherwise addressed herein or previously withdrawn are hereby overruled for the reasons set forth on the record at the Confirmation Hearing and in Section ____ of the Findings and Conclusions.

## VIII.  COMMITTEES AND FUTURE CLAIMANTS' REPRESENTATIVES.

In accordance with Section 11.8 of the Plan, on the Effective Date, except as set forth below, the Asbestos PI Committee, the Asbestos PD Committee, the Unsecured Creditors' Committee, and the Equity Committee shall thereupon be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Chapter 11 Cases, and those committees shall be deemed dissolved.  After the Effective Date, the rights, duties, and responsibilities of the Asbestos PI Future Claimants' Representative shall be as set forth in the Asbestos PI Trust Agreement, and the rights, duties, and responsibilities of the Asbestos PD Future Claimants' Representative shall be as set forth in the Asbestos PD Trust Agreement.

Notwithstanding the foregoing, if the Effective Date occurs prior to the entry of a Final Order with respect to final fee applications of Professionals retained by order of the Bankruptcy Court during the Chapter 11 Cases, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, and the Equity Committee may, at their option, continue to serve until a Final Order is entered with respect to such proceedings.  Further, after the Effective Date, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Equity Committee, the Asbestos PI Future Claimants' Representative, and the Asbestos PD Future Claimants' Representative shall continue in existence and have standing and capacity to (i) object to any proposed modification of the Plan, (ii) object to or defend the Administrative Expense Claims of Professionals employed by or on behalf of the Debtors or their estates, (iii) participate in any appeals of the Confirmation Order (if applicable), (iv) prepare and prosecute applications for the payment of fees and reimbursement of expenses, and (v) continue any adversary proceeding (but not the Sealed Air Action or the Fresenius Action, each of which shall be dismissed with prejudice as a condition to the Effective Date), claim objection, appeal, or

other proceeding that was in progress prior to the Effective Date. Nothing in section (v) of the

foregoing sentence shall be deemed to confer standing and capacity on the Unsecured Creditors'

Committee, the Asbestos PI Committee, the Equity Committee, the Asbestos PI Future

Claimants' Representative, or the Asbestos PD Future Claimants' Representative to provide

services or take action in connection with an adversary proceeding, claim objection, appeal or

other proceeding that was in progress prior to the Effective Date where such services are for the

benefit of an individual creditor or creditors and do not serve the direct interests of the creditor or

equity interest class which such Entity is appointed to represent. The Reorganized Debtors shall

pay the reasonable fees and expenses incurred by the Unsecured Creditors' Committee, the

Asbestos PI Committee, Equity Committee, the Asbestos PI Future Claimants' Representative,

and the Asbestos PD Future Claimants' Representative relating to any post-Effective Date

activities authorized hereunder without further order of the Bankruptcy Court. Nothing

contained herein or in Section 11.8 of the Plan shall purport to limit or otherwise affect the rights

of the United States Trustee under section 502 of the Bankruptcy Code or otherwise to object to

Claims or requests for allowances of Administrative Expense Claims.

## IX.    RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT AND THE DISTRICT COURT.

### A.    RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT AND THE DISTRICT COURT.

Pursuant to Sections 105(a), 524(a), 1141(d), and 1142 of the Bankruptcy Code,

the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (i) arising

under the Bankruptcy Code, (ii) arising in or related to the Chapter 11 Cases or the Plan, or (iii)

that relates to the matters set forth in Article 10 of the Plan, provided that the District Court shall

retain jurisdiction for such matters to which the automatic reference to the Bankruptcy Court has

been withdrawn or to the extent required by law.

68

Nothing in the Plan, or any other orders, including this Confirmation Order, shall, or shall be deemed to, affect (1) the procedures established pursuant to the Asbestos PI Trust Agreement, the Asbestos PI TDP, the Asbestos PD Trust Agreement, the Case Management Order for Class 7A Asbestos PD Claims, the ZAI Trust Distribution Procedures, and the CDN ZAI Minutes of Settlement for resolving Asbestos PI Claims, Asbestos PD Claims, and CDN ZAI PD Claims; and (2) the forum in which such resolution will be determined, which shall be governed exclusively by and in accordance with the Asbestos PI TDP, the Asbestos PD Trust Agreement, the Case Management Order for Class 7A Asbestos PD Claims, the ZAI Trust Distribution Procedures, and the CDN ZAI Minutes of Settlement.

**X.    NOTICE OF ENTRY OF CONFIRMATION ORDER.**

A.    Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtors or the Reorganized Debtors are directed to serve, within ten (10) days after the occurrence of the Effective Date, a notice of the entry of this Confirmation Order, which shall include notice of the bar dates established by the Plan and this Confirmation Order, the issuance of the injunctions pursuant to the Plan, and notice of the Effective Date, substantially in the form of Exhibit B attached hereto and incorporated herein by reference (the "Confirmation Notice"), on all parties that received notice of the Confirmation Hearing, including the various counsel to holders of Asbestos PI Claims, the CCAA Representative Counsel on behalf of holders of Class 8 CDN ZAI PD Claims, the class representative counsel for the holders of Class 7B Asbestos PD Claims, and counsel for holders of Class 7A Asbestos PD Claims; provided, however, that the Debtors or the Reorganized Debtors are directed to serve the Confirmation Notice directly on those holders of Asbestos PI Claims, Class 7A Asbestos PD Claims, Class 7B Asbestos PD Claims, and Class 8 CDN ZAI PD Claims that received Solicitation Packages directly from the Debtors pursuant to the terms of the Solicitation Procedures Order.

69

B.     As soon as practicable after the entry of this Confirmation Order, the Debtors shall make copies of this Confirmation Order and the Confirmation Notice available on the Debtors' website.

C.     No later than twenty (20) business days after the Effective Date, the Reorganized Debtors are directed to publish the version of the Confirmation Notice attached hereto as Exhibit C once in the national editions of The Wall Street Journal, The New York Times, the USA Today, and **[others]**. The Reorganized Debtors are authorized to pay all fees associated with the publication program described in this paragraph to Miller Legal Services, which will coordinate publication of the Confirmation Notice for the Reorganized Debtors.

D.     All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court, shall be paid on the Effective Date or as soon as practicable thereafter. All post-confirmation and post-Effective Date fees that are due and payable shall be paid by the Reorganized Debtors until the Chapter 11 Cases are closed pursuant to section 350 of the Bankruptcy Code.

## XI.    CANADIAN ORDER

This Court respectfully requests that the Canadian Court enter an Order within Grace Canada's proceedings (Court File Number 01-CL-4081) and pursuant to Section 18.6 of the Companies' Creditors Act recognizing this Confirmation Order and specifically providing for, *inter alia*, the approval of the Plan and granting the Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, the Successor Claims Injunction, and all of the Plan releases with respect to the Debtors and the other Asbestos Protected Parties, including the Canadian Entities, and declaring that this Confirmation Order be effective in Canada in accordance with its terms.

> THIS ORDER IS HEREBY DECLARED TO BE IN
> RECORDABLE FORMAT AND SHALL BE ACCEPTED BY
> ANY RECORDING OFFICER FOR FILING AND RECORDING
> PURPOSES WITHOUT FURTHER OR ADDITIONAL
> ORDERS, CERTIFICATIONS OR OTHER SUPPORTING
> DOCUMENTS.

Dated: _____, 2010          _____
                                The Honorable Judith K. Fitzgerald
                                United States Bankruptcy Judge

# EXHIBIT A

## Tax Annexes I & II

## Annex I

Pursuant to I.C(nn) of the Confirmation Order, and not by way of limitation of the Sealed Air Settlement Agreement, each of the SA Debtors and the SA Non-Debtors Affiliates shall:

a.  use its best efforts to cause each of the Asbestos PI Trust and the Asbestos PD Trust (each, for purposes of this Annex I, a "Trust" and, collectively, the "Trusts") to qualify, and to maintain its status, as a Qualified Settlement Fund (as defined in the Sealed Air Settlement Agreement), *provided, however,* that nothing herein shall in any way be construed as a representation, warranty, or covenant concerning the treatment for federal income tax purposes of the transfer by Cryovac, Inc. of the Cryovac Payment (reduced by the amount of the Asbestos PD Initial Payment) to the Asbestos PI Trust pursuant to Section 7.2.2 of the Plan and Section IV.F. of the Confirmation Order and the Asbestos PD Initial Payment to the Asbestos PD Trust pursuant to Section 7.3.2 of the Plan and Section IV.G. of the Confirmation Order,

b.  use its best efforts to cause the constitutive document(s) (including the Asbestos PI Trust Agreement and the Asbestos PD Trust Agreement), or any amendments thereto, of each of the Asbestos PI Trust and the Asbestos PD Trust to contain provisions, reasonably satisfactory to Cryovac, Inc., qualifying and maintaining its status as a Qualified Settlement Fund (as defined in the Sealed Air Settlement Agreement) and providing that Cryovac, Inc. or its designee shall be a Transferor (as defined in the Sealed Air Settlement Agreement) to each Trust,

c.  promptly provide to Cryovac, Inc. all Material Drafts (as defined in the Sealed Air Settlement Agreement), or any amendments thereto, of each Asbestos PI Trust Agreement, Asbestos PD Trust Agreement and each Trust Document (as defined in the Sealed Air Settlement Agreement) (but excluding or redacting the Asbestos PI TDP and ZAI TDP), *provided, however,* that Cryovac, Inc. shall keep any such Material Draft (as defined in the Sealed Air Settlement Agreement), or any amendments thereto, confidential and shall disclose any such Material Draft (as defined in the Sealed Air Settlement Agreement), or any amendments thereto, only to Sealed Air Corporation, and officers, employees, and advisors of Cryovac, Inc., Sealed Air Corporation, or its Affiliates, and only after such Entity agrees to keep such Material Draft (as defined in the Sealed Air Settlement Agreement), or any amendments thereto, confidential but may disclose to any and all Entities, without limitation of any kind, the tax treatment and any facts that may be relevant to the tax structure of the transactions contemplated by the Sealed Air Settlement Agreement,

d.  incorporate promptly, if it is the party drafting such document, or if otherwise, urge the party drafting such document promptly to incorporate, into any such document, or any amendments thereto, each provision with respect to the subject matter set forth or referred to in paragraphs II(c)(ix), (x), and (xi), paragraph VI(g), clauses (i)(A) through (C) of paragraph VI(c) of the Sealed Air Settlement Agreement and clauses o. and p. and sub-clauses h(1) through (3) of this Annex I, as the case may be, that are reasonably requested by Cryovac, Inc.,

e. take all Defined Actions (as defined in the Sealed Air Settlement Agreement) required to be taken pursuant to, or that are reasonably requested by Sealed Air Corporation and consistent with the provisions of, paragraphs II(c)(ix), (x), or (xi), or VI(g), of the Sealed Air Settlement Agreement and clauses o. and p. of this Annex I, as the case may be, *provided, however*, that it shall not be required to take a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to this clause e. if each of the following four requirements has been previously satisfied (1) it has fully performed all of its obligations set forth in paragraph VI(f) of the Sealed Air Settlement Agreement or clause n. of this Annex I, (2) it has received a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) required or prohibited pursuant to paragraph VI(b) of the Sealed Air Settlement Agreement or clauses e., f. and g. of this Annex I, as the case may be, (3) it has provided a copy of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation, and (4) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement), Sealed Air Corporation has not provided it with a Sealed Air Opinion (as defined in the Sealed Air Settlement Agreement),

f. be prohibited from taking any Defined Action (as defined in the Sealed Air Settlement Agreement) prohibited from being taken pursuant to, or that is inconsistent with the provisions of paragraphs II(c)(ix), (x), or (xi), or VI(g), of the Sealed Air Settlement Agreement and clauses o. and p. of this Annex I, *provided, however,* that it shall not be prohibited from taking a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to this clause f. if each of the following four requirements has been previously satisfied (1) it has fully performed all of its obligations set forth in paragraph VI(f) of the Sealed Air Settlement Agreement or clause n. of this Annex I, (2) it has received a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) required or prohibited pursuant to paragraph VI(b) of the Sealed Air Settlement Agreement or clauses e., f. and g. of this Annex I, as the case may be, (3) it has provided a copy of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation, and (4) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement), Sealed Air Corporation has not provided it with a Sealed Air Opinion (as defined in the Sealed Air Settlement Agreement),

g. use its best efforts not to make any statement in a court document filed in the SA Debtors' Chapter 11 Cases or in any oral statement to the court in the SA Debtors' Chapter 11 Cases that is prohibited by, or inconsistent with the provisions of paragraphs II(c)(ix), (x), or (xi), or VI(g), of the Sealed Air Settlement Agreement or clauses o. and p. of this Annex I, as the case may be, *provided, however,* that it shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to this paragraph g. if each of the following four requirements has been previously satisfied (1) it has fully performed all of its obligations set forth in paragraph VI(f) of the Sealed Air Settlement or clause n. of this Annex I Agreement, as the case may be, (2) it has received a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) with respect to such Defined Action (as

defined in the Sealed Air Settlement Agreement) required or prohibited pursuant to this sentence, (3) it has provided a copy of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation, and (4) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement), Sealed Air Corporation has not provided it with a Sealed Air Opinion (as defined in the Sealed Air Settlement Agreement),

h.  promptly notify Cryovac, Inc. and Sealed Air Corporation upon receipt by any of them or any of their Affiliates of any notice of any pending or threatened audit or assessment, suit, litigation, proposed adjustment, deficiency, dispute, administrative or judicial proceeding or other similar Claim (as defined in the Sealed Air Settlement Agreement) involving any of them or any of their Affiliates from any Tax authority or any other Entity challenging (1) the qualification of the Asbestos PI Trust or the Asbestos PD Trust as a Qualified Settlement Fund (as defined in the Sealed Air Settlement Agreement), (2) the qualification of Cryovac, Inc. as a Transferor (as defined in the Sealed Air Settlement Agreement) to the Asbestos PI Trust or the Asbestos PD Trust, (3) the transfer by Cryovac, Inc. of the Cryovac Payment (reduced by the amount of the Asbestos PD Initial Payment) to the Asbestos PI Trust pursuant to Section 7.2.2 of the Plan or Section IV.F. of the Confirmation Order and the Asbestos PD Initial Payment to the Asbestos PD Trust pursuant to Section 7.3.2 of the Plan or Section IV.G. of the Confirmation Order as a direct payment by Cryovac, Inc. to the Asbestos PI Trust or the Asbestos PD Trust for Asbestos Claims that constitutes an ordinary and necessary expense of Cryovac, Inc. (for purposes of this Annex I, any such audit or assessment, suit, litigation, proposed adjustment, deficiency, dispute, administrative or judicial proceeding or other similar Claim (as defined in the Sealed Air Settlement Agreement), for purposes of this Annex I a "Tax Claim"),

i.  permit, and cause their respective Affiliates to permit, Cryovac, Inc. and Sealed Air Corporation to participate at their expense in the defense or prosecution of any Tax Claim (including to participate in all discussions with the Tax authorities regarding any Tax Claim and to be allowed to provide affirmative suggestions or comments with respect to any written submissions or communications with the Tax authorities regarding any Tax Claims, which comments and suggestions shall be incorporated into such written submissions or communications with the consent of the SA Debtors, such consent not to be unreasonably withheld),

j.  consult with Cryovac, Inc. and Sealed Air Corporation in connection with the defense or prosecution of any Tax Claim and provide such cooperation and information as Cryovac, Inc. and Sealed Air Corporation shall reasonably request with respect to any Tax Claim,

k.  agree to use its best efforts to attempt to sever any Tax Claim from other issues raised in any audit or assessment, suit, litigation, proposed adjustment, deficiency, dispute, administrative or judicial proceeding or other similar Claim (as defined in the Sealed Air Settlement Agreement) and shall instruct their, and their Affiliates', respective Chief Executive Officer, Chief Financial Officer, and Director of Taxes to deliver, and shall cause each of their Affiliates, to deliver to Cryovac, Inc. and Sealed Air Corporation:

1. promptly after the receipt of any document received from the IRS relating to a Tax Claim, a copy of such document;

2. any document delivered to the IRS with respect to a Tax Claim promptly after such document is delivered to the IRS, *provided, however*, that, if such document was prepared in response to a request by the IRS, then prior to the delivery of such document to the IRS, Cryovac, Inc. and Sealed Air Corporation shall be allowed to provide affirmative suggestions or comments with respect to any such document, as provided in paragraph VI(c)(ii) of the Sealed Air Settlement Agreement and clauses i. and j. of this Annex I;

3. at least five days prior to any meeting or conference (whether in person or by teleconference) scheduled with the IRS during which a Tax Claim may be discussed, with written notice of such scheduled meeting or conference, and an opportunity to attend the portions of such meeting or conference during which any Tax Claim is discussed; and

4. with cooperation and information reasonably requested by Cryovac, Inc. or Sealed Air Corporation in connection with any Tax Claim, including, at Cryovac, Inc.'s or Sealed Air Corporation's request, status updates with respect to all Tax Claims.

l. be entitled to redact any document to be provided to Cryovac, Inc. or Sealed Air Corporation in furtherance of the obligations set forth in clause k. of this Annex I to exclude information not pertinent to the Tax Claim,

m. not settle or otherwise dispose of any Tax Claim unless otherwise required by a Final Determination (as defined in the Sealed Air Settlement Agreement),

n. if any of the SA Debtors or the SA Non-Debtor Affiliates has determined that an issue (for the purposes of this Annex I such issue, a "Paragraph VI(f) Issue") may exist with respect to its taking, or the failure to take, a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to paragraph II(c)(ix), (x), or (xi), or VI(b) or VI(g), of the Sealed Air Settlement Agreement or clauses e., f., g., o., and p., of this Annex I, as the case may be, then, prior to delivering a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) in accordance with the provisos set forth in paragraph II(c)(ix), (x), or (xi), VI(b) or VI(g) of the Sealed Air Settlement Agreement, or clauses e., f., g., o., and p., of this Annex I, as the case may be, (1) provide to Sealed Air Corporation, as promptly as practicable, a written notice identifying such Defined Action (as defined in the Sealed Air Settlement Agreement) and describing in detail the Paragraph VI(f) Issue and (2) consult and act (and cause its advisors to, consult and act) in good faith to determine and resolve (i) if such issue relates to a Tax issue, whether, as a result of a Change in Circumstances, there is no "reasonable basis", as defined in IRC section 6662 (or successor provision thereof), for the taking of, or the failure to take, such Defined Action (as defined in the Sealed Air Settlement Agreement) by such Entity or (ii) if such issue relates to an accounting issue, whether, as a result of a Change in Circumstances, the taking, or the failure to take, such Defined

4

Action (as defined in the Sealed Air Settlement Agreement) is inconsistent with generally accepted accounting principles. For purposes of this Annex I, "Change in Circumstances" shall mean (i) for U.S. federal income tax purposes, (x) any amendment to the IRC or the final or temporary regulations promulgated under the IRC, (y) a decision by any federal court, or (z) a Revenue Ruling, Notice, Revenue Procedure, or Announcement, which amendment is enacted, promulgated, issued, or announced, or which decision, Revenue Ruling, Notice, Revenue Procedure, or Announcement is issued or announced, in each case, after the Effective Date, and (ii) for financial accounting purposes, any amendment to or change in generally accepted accounting principles, which amendment is issued or announced or, which change occurs, in each case, after the Effective Date.

o.  unless otherwise required by a Final Determination (as defined in the Sealed Air Settlement Agreement), (1) file all Tax Returns required to be filed by such Entity, if any, consistent with the provisions of paragraph II(c)(ix) of the Sealed Air Settlement Agreement and take all other Defined Actions (as defined in the Sealed Air Settlement Agreement) that are reasonably requested by Sealed Air Corporation and consistent with the provisions of paragraph II(c)(ix) of the Sealed Air Settlement Agreement, and (2) be prohibited, from taking any Defined Action (as defined in the Sealed Air Settlement Agreement) that may result in the disqualification of the Asbestos PI Trust or the Asbestos PD Trust as a Qualified Settlement Fund (as such term is defined in the Sealed Air Settlement Agreement) or be inconsistent with Cryovac, Inc. being treated as a Transferor (as defined in the Sealed Air Settlement Agreement) of the Cryovac Payment (reduced by the amount of the Asbestos PD Initial Payment) directly to the Asbestos PI Trust pursuant to Section 7.2.2 of the Plan and Section IV.F. of the Confirmation Order and the Asbestos PD Initial Payment directly to the Asbestos PD Trust pursuant to Section 7.3.2 of the Plan and Section IV.G. of the Confirmation Order; *provided, however,* that it shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to this clause o. if each of the following four requirements has been previously satisfied: (1) it has fully performed all of its obligations set forth in paragraph VI(f) of the Sealed Air Settlement Agreement and clause n. of this Annex I, as the case may be, (2) it has received a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) required or prohibited pursuant to this clause o., (3) it has provided a copy of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation, and (4) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement), Sealed Air Corporation has not provided it with a Sealed Air Opinion (as defined in the Sealed Air Settlement Agreement),

p.  treat for all Tax purposes any and all payments by Cryovac, Inc. of the Cryovac Payment (reduced by the amount of the Asbestos PD Initial Payment) to the Asbestos PI Trust pursuant to Section 7.2.2 of the Plan and Section IV.F. of the Confirmation Order and the Asbestos PD Initial Payment to the Asbestos PD Trust pursuant to Section 7.3.2 of the Plan and Section IV.G. of the Confirmation Order as a direct payment by Cryovac, Inc. to the Asbestos PI Trust or the Asbestos PD Trust for Asbestos Claims that constitutes an

ordinary and necessary expense of Cryovac, Inc., and, unless otherwise required by a Final Determination (as defined in the Sealed Air Settlement Agreement):

1. for financial accounting or any other regulatory purpose, be prohibited from treating any payment by Cryovac, Inc. to the Asbestos PI Trust or the Asbestos PD Trust pursuant to the Plan or the Confirmation Order as a payment by Cryovac, Inc. to any of the SA Debtors or SA Non-Debtor Affiliates, or as a payment by any SA Debtor or SA Non-Debtor Affiliate to any Entity (including to the Asbestos PI Trust or the Asbestos PD Trust) (or treating such payment as, or resulting in, an expense or deduction of any Debtor or Non-Debtor Affiliate),

2. for Tax purposes, be prohibited from claiming that any payment by Cryovac, Inc. to the Asbestos PI Trust or the Asbestos PD Trust pursuant to the Plan or the Confirmation Order results in or gives rise (directly or indirectly) to the accrual or allowance of a deduction or expense, or income to, or any other transfer of any type to, any SA Debtor or SA Non-Debtor Affiliate,

3. take all Defined Actions (as defined in the Sealed Air Settlement Agreement) that are reasonably requested by Sealed Air Corporation and consistent with the provisions of this clause p.,

4. not take any position inconsistent with the foregoing on any Tax Return or with any Tax authority, and

5. not make any statement in any public or regulatory filing or release or otherwise, or take any other Defined Action (as defined in the Sealed Air Settlement Agreement), that is inconsistent with the obligations of such Entity pursuant to this clause p.,

*provided, however,* that with respect to sub-clauses p.3 and p.5 above, it shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to this clause p. if each of the following four requirements has been previously satisfied: (1) it has fully performed all of its obligations set forth in paragraph VI(f) of the Sealed Air Settlement Agreement and clause n. of this Annex I, as the case may be, (2) it has received a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) required or prohibited pursuant to this clause p., (3) it has provided a copy of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation, and (4) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement), Sealed Air Corporation has not provided it with a Sealed Air Opinion (as defined in the Sealed Air Settlement Agreement),

q. be entitled to prepare and execute (but not file) a Protective Claim (as defined in the Sealed Air Settlement Agreement and, for purposes of this Annex I, with respect to each of the SA Debtors and the SA Non-Debtors Affiliates, a "Grace Protective Claim"),

6

(which filing shall be effected only by Cryovac, Inc. pursuant to, and in accordance with, the provisions of the Sealed Air Settlement Agreement) for the taxable year of the SA Debtors in which the transfers by Cryovac, Inc. of the Cryovac Payment (reduced by the amount of the Asbestos PD Initial Payment) to the Asbestos PI Trust pursuant to Section 7.2.2 of the Plan or Section IV.F. of the Confirmation Order and the Asbestos PD Initial Payment to the Asbestos PD Trust pursuant to Section 7.3.2 of the Plan or Section IV.G. of the Confirmation Order (for purposes of this Annex I, the "Transfer") are made, or for any other prior (solely with respect to a carryback from the taxable year of the Transfer) or subsequent taxable year in which the Tax Benefits (as defined in the Sealed Air Settlement Agreement) realized as a result of such Transfer may be claimed by the SA Debtors (for purposes of this Annex I any such taxable year, a "Relevant Tax Year"), and require Cryovac, Inc. to file such Grace Protective Claim with the IRS or other governmental authority for and on behalf of the SA Debtors; provided, however, that a Grace Protective Claim shall not be required to be filed by Cryovac, Inc. at any time prior to 15 days before the expiration (taking into account all extensions thereof) of the applicable statute of limitations for the SA Debtors to file an amended return ("SOL") for the Relevant Tax Year, and provided further that notwithstanding anything to the contrary set forth in paragraph VI(h) of the Sealed Air Settlement Agreement and clauses q., r., s., t. and u. of this Annex I, the Debtors may prepare and execute a Grace Protective Claim, and require Cryovac, Inc. to file such Grace protective Claim with the IRS or other governmental authority for a Relevant Tax Year, only if each of the following requirements has been previously satisfied:

1. the SA Debtors have granted each extension (and each further extension) to the applicable SOL for such Relevant Tax Year that has been requested by the IRS,

2. at the time of each such request by the IRS referred to in sub-clause p.1, above, to extend (or further extend) the applicable SOL for such Relevant Tax Year, the SA Debtors shall have used their best efforts to extend (and cause the IRS to agree to extend) such SOL for a period of two (2) years or longer;

3. in the event that the IRS has not requested the SA Debtors to extend (or further extend) the applicable SOL for such Relevant Tax Year prior to 180 days prior to the end of such SOL, the SA Debtors shall have used their best efforts to extend (and cause the IRS to agree to extend) such SOL for a period of two (2) years or longer;

4. the SA Debtors shall have provided to Cryovac, Inc. a written statement by their Chief Financial Officer that each of the requirements set forth immediately above in sub- clauses p.1, 2, and 3 has been satisfied in all respects; and

r.  at the request of Sealed Air Corporation, prepare and execute a Grace Protective Claim to be filed by Sealed Air Corporation pursuant to paragraph VI(h)(ii) of the Sealed Air Settlement Agreement or this clause r.

s.  pay to Cryovac, Inc. in immediately available funds fifty (50) percent of the amount of any Tax Benefit (as defined in the Sealed Air Settlement Agreement) realized as a result

of the Transfer no later than ten (10) days after such Tax Benefit (as defined in the Sealed Air Settlement Agreement) has been deemed to have been Actually Realized (as defined in and determined pursuant to the Sealed Air Settlement Agreement),

t.    if requested by Sealed Air Corporation, use their best efforts to extend (and cause the IRS to agree to extend) the applicable SOL for any Relevant Tax Year,

u.    include in Part II of Form 1120X (or applicable section of any similar state or local tax form) of any Grace Protective Claim the language set forth on Exhibit 7 of the Sealed Air Settlement Agreement and only such other language as may be mutually agreed to by the SA Debtors and Cryovac, Inc. (or Sealed Air Corporation),

v.    withdraw all Grace Protective Claims upon a Cryovac Final Determination (as defined in the Sealed Air Settlement Agreement) that the Transfer results in a Tax Benefit (as defined in the Sealed Air Settlement Agreement) to Cryovac, Inc. (or the affiliated group filing a consolidated Tax Return of which Sealed Air Corporation is the common parent), and provide a written statement to Cryovac, Inc. signed by the Chief Financial Officer of the SA Debtors stating that all Grace Protective Claims have been withdrawn,

w.    upon notice by Cryovac, Inc. as provided in paragraph VI(i) of the Sealed Air Settlement Agreement, as the case may be, or if otherwise requested in writing by Cryovac, Inc., use reasonable best efforts to pursue all Grace Protective Claims and keep Cryovac, Inc. fully informed of, and permit Cryovac, Inc. to participate in, all developments with respect to all such Grace Protective Claims in a manner consistent with the provisions set forth in paragraphs VI(c)(ii) through (vi) of the Sealed Air Settlement Agreement and clauses i., j., k., l., and m. of this Annex I, as the case may be,

x.    no later than ten (10) days after the SA Debtors shall have Actually Realized (as defined in the Sealed Air Settlement Agreement) a Tax Benefit (as defined in the Sealed Air Settlement Agreement) as a result of the Transfer, provide Cryovac, Inc. with a detailed statement (for the purposes of this Annex I, the "Tax Benefit Statement") specifying (1) the amount of the Tax Benefit (as defined in the Sealed Air Settlement Agreement) that was Actually Realized (as defined in the Sealed Air Settlement Agreement) by the SA Debtors and any information relevant to the computation thereof (including full access to any applicable Tax Return, non-proprietary work papers and other materials and information of the SA Debtors and their accountants), (2) the date that such Tax Benefit (as defined in the Sealed Air Settlement Agreement) was Actually Realized (as defined in the Sealed Air Settlement Agreement), (3) the amount of deduction, loss, credit or exclusion initially claimed by the SA Debtors as a result of the Transfer (for purposes of this Annex I, the "Initial Tax Benefit Item"), (4) the amount of the Initial Tax Benefit Item that is utilized by the SA Debtors to create such Tax Benefit (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement) (including as a result of all or a portion of the Initial Tax Benefit Item being carried back or forward), and (5) the amount of the Initial Tax Benefit Item not yet utilized by the SA Debtors (to create a Tax Benefit (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement)) that will be carried forward,

8

y.  no later than 30 days after the SA Debtors have filed their U.S. federal consolidated income Tax Return for each year beginning the year that includes the Tax Benefit Start Date (as defined in the Sealed Air Settlement Agreement), deliver to Cryovac, Inc. an annual statement (for purposes of this Annex I, the "CFO Annual Statement"), signed by their Chief Financial Officer under penalties of perjury, that sets forth (1) the amount of the Tax Benefits (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement), if any, by the SA Debtors as a result of the Transfer during the preceding taxable year (including, without limitation, as a result of an amended return for any taxable year, a loss or deduction being utilized for such preceding taxable year, a loss or credit carryback from such preceding taxable year, or a loss or credit carryforward to such preceding taxable year), (2) the date (or dates) such Tax Benefits were Actually Realized (as defined in the Sealed Air Settlement Agreement) during such taxable year, (3) the amount of the Initial Tax Benefit Item, (4) the amount of the Initial Tax Benefit Item that is utilized by the SA Debtors to create such Tax Benefit (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement), and (5) the amount of the Initial Tax Benefit Item not yet utilized by the SA Debtors (to create a Tax Benefit (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement)) that will be carried forward,

z.  provide Cryovac, Inc. with all information relevant to the computation of such Tax Benefits (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement) by the SA Debtors set forth in clause y.1 of this Annex I (including full access to any applicable Tax Return, the non-proprietary work papers, and other materials and information of the SA Debtors and their accountants),

aa. within fifteen (15) days after the SA Debtors' receipt of a Tax Benefit Dispute Notice (as defined in the Sealed Air Settlement Agreement), unless the matters in the Tax Benefit Dispute Notice (as defined in the Sealed Air Settlement Agreement) have otherwise been resolved by mutual agreement of the parties, select, jointly with Cryovac, Inc., a nationally-recognized independent certified public accountant (for purposes of this Annex I, the "Tax Benefit Accountant"); *provided, however,* if the SA Debtors and Cryovac, Inc. are unable to agree upon the Tax Benefit Accountant within such fifteen (15) day period, then the SA Debtors and Cryovac, Inc. shall each select a nationally-recognized independent certified public accountant which shall then jointly choose the Tax Benefit Accountant within fifteen (15) days thereafter, and the terms of the engagement of such Tax Benefit Accountant shall require the Tax Benefit Accountant to comply with paragraph VI(j)(iv) of the Sealed Air Settlement Agreement,

bb. pay to Cryovac, Inc. in immediately available funds no later than five (5) days after delivery of the Tax Benefit Report (as defined in the Sealed Air Settlement Agreement) to the SA Debtors and Cryovac, Inc. the sum of (x) the excess, if any, of fifty (50) percent of the amount of the Tax Benefit (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement) set forth in the Tax Benefit Report (as defined in the Sealed Air Settlement Agreement) over the amount previously paid, if any, by the SA Debtors to Cryovac, Inc. with respect thereto and (y)

interest with respect to any such excess, as provided for in paragraph VI(k) of the Sealed Air Settlement Agreement,

cc. if a loss, deduction, credit or exclusion that resulted in Tax Benefit that was Actually Realized (as defined in the Sealed Air Settlement Agreement) by the SA Debtors is later denied by a Taxing authority by (x) a decision, decree or other order by a court of competent jurisdiction, which has become final and unappealable or (y) any other means (including a closing agreement or accepted offer in compromise under section 7121 or 7122 of the Internal Revenue Code) if Cryovac, Inc. has consented to such other means, which consent shall not be unreasonably withheld or delayed, provide (1) a written statement, signed under penalties of perjury by the Chief Financial Officer of the SA Debtors, that states (i) the amount of such loss, deduction, credit or exclusion that was denied, (ii) the amount of the Tax Benefits (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement) that was initially determined and paid by the SA Debtors to Cryovac, Inc. for such taxable period, and (iii) the revised amount of the Tax Benefit (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement) for such taxable period taking into account the denial of such loss, deduction, credit or exclusion, and (2) provide to Cryovac, Inc. any information relevant to the computation of such initial and revised amount of the Tax Benefits (as defined in the Sealed Air Settlement Agreement) Actually Realized (as defined in the Sealed Air Settlement Agreement) by the SA Debtors (including full access to any applicable Tax Return, the non-proprietary work papers, and other materials and information of the SA Debtors and their accountants), and

dd. perform all other actions required, and refrain from taking any other activities precluded, by the Sealed Air Settlement Agreement.

## Annex II

Pursuant to Section I.C(oo) of the Confirmation Order, and not by way of limitation of the Sealed Air Settlement Agreement, unless indicated otherwise:

a.    each of the Plaintiffs, the Asbestos PI Trust and the Asbestos PD Trust shall, unless otherwise required by a Final Determination, (1) file all Tax Returns required to be filed by it, if any, consistent with the provisions of this clause a. and shall take all other Defined Actions (as defined in the Sealed Air Settlement Agreement) that are reasonably requested by Sealed Air Corporation and consistent with the provisions of this clause a., and (2) be prohibited from taking any Defined Action (as defined in the Sealed Air Settlement Agreement) that may result in the disqualification of the Asbestos PI Trust or the Asbestos PD Trust as a Qualified Settlement Fund (as defined in the Sealed Air Settlement Agreement) or be inconsistent with Cryovac, Inc. being treated as a "transferor" (as defined under Treasury Regulations section 1.468B-1(d)) (for purposes of this Annex II the "Transferor") of the Cryovac Payment (reduced by the amount of the Asbestos PD Initial Payment) directly to the Asbestos PI Trust pursuant to Section 7.2.2 of the Plan and Section IV.F. of the Confirmation Order and the Asbestos PD Initial Payment directly to the Asbestos PD Trust pursuant to Section 7.3.2 of the Plan and Section IV.G. of the Confirmation Order, *provided, however,* that it shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to this clause a. if each of the following four requirements has been previously satisfied (i) it has fully performed all of its obligations set forth in paragraph VI(f) of the Sealed Air Settlement Agreement, (ii) it has received a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) required or prohibited pursuant to this clause a., (iii) it has provided a copy of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation, and (iv) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement), Sealed Air Corporation has not provided it with a Sealed Air Opinion (as defined in the Sealed Air Settlement Agreement),

b.    the Asbestos PI Trust and the Asbestos PD Trust shall, unless otherwise required by a Final Determination (as defined in the Sealed Air Settlement Agreement), treat for all Tax purposes any and all payments by Cryovac Inc. pursuant to Sections 7.2.2 and 7.2.3 of the Plan and Sections IV.F. and IV.G. of the Confirmation Order, as a direct payment by Cryovac, Inc. to the Asbestos PI Trust or the Asbestos PD Trust, as applicable, for Asbestos Claims that constitutes an ordinary and necessary expense of Cryovac, Inc, and each of the Plaintiffs, the Asbestos PI Trust and the Asbestos PD Trust shall, unless otherwise required by a Final Determination (as defined in the Sealed Air Settlement Agreement): (1) be prohibited from taking any Defined Action (as defined in the Sealed Air Settlement Agreement) that is inconsistent with the foregoing provisions of this clause b., and (2) take all Defined Actions (as defined in the Sealed Air

Settlement Agreement) that are reasonably requested by Sealed Air Corporation and consistent with the provisions of this clause b.; *provided, however,* that it shall not be required to take, or be prohibited from taking, as the case may be, a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to sub-clauses (1) and (2) of this clause b. if each of the following four requirements has been previously satisfied (i) it has fully performed all of its obligations set forth in paragraph VI(f) of the Sealed Air Settlement Agreement, (ii) it has received a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) required or prohibited pursuant to this clause b., (iii) it has provided a copy of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation, and (iv) within forty-five days of the receipt by Sealed Air Corporation of such Contrary Opinion (as defined in the Sealed Air Settlement Agreement), Sealed Air Corporation has not provided it with a Sealed Air Opinion (as defined in the Sealed Air Settlement Agreement),

c.  if it has determined that an issue (for the purposes of this Annex II such issue, a "Paragraph VI(f) Issue") may exist with respect to its taking, or the failure to take, a Defined Action (as defined in the Sealed Air Settlement Agreement) as required pursuant to paragraph II(c)(ix) or (x), of the Sealed Air Settlement Agreement or clauses a. and b., of this Annex II, as the case may be, then, prior to delivering a Contrary Opinion (as defined in the Sealed Air Settlement Agreement) to Sealed Air Corporation with respect to such Defined Action (as defined in the Sealed Air Settlement Agreement) in accordance with the provisos set forth in paragraph II(c)(ix) or (x) of the Sealed Air Settlement Agreement, or clauses a. and b., of this Annex II, as the case may be, each of the Plaintiffs, the Asbestos PI Trust and the Asbestos PD Trust, as the case may be, shall (1) provide to Sealed Air Corporation, as promptly as practicable, a written notice identifying such Defined Action (as defined in the Sealed Air Settlement Agreement) and describing in detail the Paragraph VI(f) Issue and (2) consult and act (and cause its advisors (including accountants and tax attorneys, as the case may be) to, consult and act) in good faith to determine and resolve (i) if such issue relates to a Tax issue, whether, as a result of a Change in Circumstances (as defined in the Sealed Air Settlement Agreement), there is no "reasonable basis", as defined in IRC section 6662 (or successor provision thereof), for the taking of, or the failure to take, such Defined Action (as defined in the Sealed Air Settlement Agreement) by such Entity or (ii) if such issue relates to an accounting issue, whether, as a result of a Change in Circumstances, the taking, or the failure to take, such Defined Action (as defined in the Sealed Air Settlement Agreement) is inconsistent with generally accepted accounting principles, and

d.  perform all other actions required, and refrain from taking any other activities precluded, by the Sealed Air Settlement Agreement.

2

# EXHIBIT B

**[to come]**