**IN THE UNITED STATE BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | |
| **W.R. GRACE & CO.,** *et. al.*, | ) | **Case No. 01-01139 (JKF)** |
| | ) | **Jointly Administered** |
| **Debtors.** | ) | |
| | ) | Objection Deadline: May 21, 2010 at 4:00 p.m. |
| | ) | Hearing Date: June 7, 2010 at 10:30 a.m. |

**SUMMARY OF FIRST APPLICATION OF CANADIAN ZAI CLAIMANTS
PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND 503 (b)(4) FOR ALLOWANCE
OF ADMINISTRATIVE EXPENSES OF LAUZON BÉLANGER S.E.N.C.R.L. AND
SCARFONE HAWKINS LLP AS CCAA REPRESENTATIVE COUNSEL
INCURRED IN MAKING SUBSTANTIAL CONTRIBUTION
FOR THE PERIOD OCTOBER 1, 2004 TO AUGUST 31, 2008**

| | |
|---|---|
| Name of Applicant: | Canadian Zonolite Attic Insulation Claimants ("Canadian ZAI Claimants") |
| Professional Services of: | Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP ("Representative Counsel") |
| Date of Retention: | February 8, 2006 |
| Period for which compensation and reimbursement is sought: | October 1, 2004, through August 31, 2008 |
| Amount of compensation sought as actual, reasonable and necessary: | CDN $ 2,000,000.00[1]<br>**($818,746.15 Actual Fees in Comp. Period)** |
| Amount of expense reimbursement (Including Goods & Services Tax and Quebec Sales Tax) sought as actual, reasonable and necessary: | CDN $ 348,010.88 |

This is Applicant's First Application.

---

[1] On or about November 16, 2009, the Debtors and Representative Counsel acknowledged and agreed to the Amended and Restated Minutes of Settlement wherein paragraph 22(a) provides: "The CDN ZAI PD Claims Fund shall be used for the following purposes and the funds shall be distributed as follows: (a) As soon as reasonably practicable following the Effective Date, two million Canadian dollars (CDN$2,000,000) shall be paid to CCAA Representative Counsel in respect of legal fees and disbursements;"

**Fee Detail by Professional for the Period of October 1, 2004 through August 31, 2008:**

| Name of Professional Person | Position of the Applicant, Number of Years in that Position, Year of Obtaining License to Practice | Hourly Billing Rate (including changes) | Total Billed Hours | Total Fees |
|---|---|---|---|---|
| Yves Lauzon | Partner, 14 years 1974 | $450.00 $225.00 | 141.87 9.00 | 63,841.50 2,025.00 |
| Michel Bélanger | Partner, 14 years 1994 | $350.00 $175.00 | 558.50 26.00 | 195,475.00 4,550.00 |
| Jean-Phillippe Lincourt | No longer employed by Lauzon Bélanger, was employed for 4 years as Associate 2004 | $200.00 | 208.31 | 41,662.00 |
| Careen Hannouche | Associate, 5 years 2005 | $285.00 | 258.59 | 73,698.15 |
| **Sub-Total (LB)** | | | **1202.27** | **$ 381,251.65** |
| **Blended Rate LB** | | | | **$ 317.11** |
| Jeffrey C. Teal | Partner, 22 years 1986 | $450.00 | 1.00 | 450.00 |
| David Thompson David Thompson – Travel | Partner, 22 years 1988 | $450.00 $225.00 | 543.35 29.40 | 244,507.50 6,615.00 |
| Matthew G. Moloci Matthew G. Moloci- Travel | Partner, 11 years 1998 | $350.00 $175.00 | 456.80 47.00 | 159,880.00 8,225.00 |
| Mike Stanton | Associate, 3 years 2006 | $250.00 | 3.75 | 937.50 |
| Todd Storms Todd Storms – Travel | Associate, 1 year 2009 | $250.00 $125.00 | 34.20 10.00 | 8,550.00 1,250.00 |
| Articling Student | | $100.00 | 32.05 | 3,205.00 |
| Law Clerk | | $90.00 | 43.05 | 3,874.50 |
| **Sub-Total (SH)** | | | **1200.6** | **$437,494.50** |
| **Blended Rate SH** | | | | **$ 364.40** |
| **GRAND TOTAL** | | | **2402.87** | **$818,746.15** |
| **Blended Rate** | | | | **$ 340.74** |

**Cumulative Compensation by Matter Description for the Period of October 1, 2004, through August 31, 2008:**

| Project Category | Total Hours | Total Fees |
|---|---|---|
| **Case Administration** | 1172.82 | 403,328.90 |
| **Hearings** | 356.36 | 106,808.30 |
| Meetings | 873.69 | 308,608.95 |
| **TOTAL** | **2402.87** | **$818,746.15** |

**Expense Summary for the Period of October 1, 2004, through August 31, 2008**

| Expense | Lauzon Belanger | Scarfone Hawkins | Total Expenses |
|---|---|---|---|
| Facsimiles | 465.00 | 6.05 | 471.05 |
| Photocopies | 997.30 | 0.00 | 997.30 |
| Postage | | .51 | .51 |
| Courier Fees | 353.06 | 470.89 | 823.95 |
| Long Distance Calls | 175.63 | 541.82 | 717.45 |
| Various Fees | 932.55 | 99.10 | 1,031.65 |
| Travel Fees | 13,258.66 | 3,061.73 | 16,320.39 |
| Parking | 232.41 | 119.00 | 351.41 |
| Lodging | 3,266.12 | 2,127.06 | 5,393.18 |
| Expert Fees | 355,749.93 | | 355,749.93 |
| Received from colleagues | (143,248.74) | | (143,248.74) |
| Case Law | 365.21 | 1,079.46 | 1,444.67 |
| Conference Calls | 4,698.46 | 296.78 | 4,995.24 |
| Bailiffs | 419.83 | | 419.83 |
| Messengers | 185.00 | | 185.00 |
| Stenographer | 25.00 | | 25.00 |
| Tapes/Transcripts | | 73.80 | 73.80 |

| | | | |
|---|---|---|---|
| ACQC-Viviane Brousseau | 25.00 | | 25.00 |
| Court fees | 127.00 | 127.00 | 254.00 |
| Goods & Services Tax | 30,956.36 | 22,267.64 | 53,224.00 |
| Quebec Sales Tax | 48,756.26 | | 48,756.26 |
| **TOTAL** | **$ 317,740.04** | **$30,270.84** | **$348,010.88** |

**IN THE UNITED STATE BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | |
| **W.R. GRACE & CO.,** *et. al.*, | ) | **Case No. 01-01139 (JKF)** |
| | ) | **Jointly Administered** |
| **Debtors.** | ) | |
| | ) | Objection Deadline: May 21, 2010 at 4:00 p.m. |
| | ) | Hearing Date: June 7, 2010 at 10:30 a.m. |
| | ) | |
| | ) | |

**FIRST APPLICATION OF CANADIAN ZAI CLAIMANTS PURSUANT TO 11 U.S.C. §§
503(b)(3)(D) AND 503(b)(4) FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES OF
LAUZON BÉLANGER S.E.N.C.R.L. AND SCARFONE HAWKINS LLP AS CCAA
REPRESENTATIVE COUNSEL INCURRED IN MAKING  SUBSTANTIAL
<u>CONTRIBUTION FOR THE PERIOD OCTOBER 1, 2004 TO AUGUST 31, 2008</u>**

COMES NOW, Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP as

Representative Counsel ("Representative Counsel") to Canadian Zonolite Attic Insulation("ZAI")

Claimants ("Canadian ZAI Claimants"), and hereby submits this application for compensation for

professional services rendered and reimbursement of expenses (the "Application"), and moves the

Court for entry of an order authorizing reimbursement of its reasonable attorneys fees and expenses

incurred in making a substantial contribution to the estate of W. R. Grace and its affiliated Debtors

and Debtors in Possession (the "Debtors") and to the reorganization process pursuant to 11 U.S.C.

§§ 503(b)(3)(D) and 503(b)(4) of title 11 of the Bankruptcy Code (the "Bankruptcy Code").   In

support of this Application, Representative Counsel respectfully represents as follows:

## <u>I. INTRODUCTION</u>

1.      ZAI was extensively utilized in Canadian home building and renovations during the

approximate period of time between 1940 and the late 1980s. W.R. Grace and Co. and several of its

affiliates (the "U.S. Debtors") created and distributed ZAI for use in Canadian homes.

2.      Canadian ZAI homeowners suffer a range of injuries. These include diminution in property values, the costs of asbestos abatement, the financial burden of removing asbestos-contaminated ZAI and refitting homes, and loss of use and enjoyment of their homes due to limitations on remodeling and restrictions on use of areas contaminated with ZAI.

3.      Numerous proposed class actions were commenced in Canada against certain of the U.S. Debtors, Grace Canada, Affiliated Entities and other parties including the Attorney General of Canada (Her Majesty the Queen in Right of Canada) (the "Crown").  These actions assert claims for damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of ZAI attic insulation products in Canada.

4.      As a result of the these numerous class actions,  Representative Counsel was duly appointed by the Ontario Superior Court of Justice (the "CCAA Court") to represent the interests of Canadian ZAI claimants, both for property damage and personal injury claims in this bankruptcy proceeding.

5.      Representative Counsel has played a substantial and critical role in the Debtors' formulation of the plan of reorganization as it relates to the treatment of both personal injury and property damage claims ("Canadian ZAI PD Claims") asserted by Canadian ZAI Claimants. Representative Counsel was responsible for negotiating the Original Minutes of Settlement (the "Minutes of Settlement")[1] with the Debtors that initially resolved the treatment of all Canadian ZAI claims and that created a separate class for Canadian ZAI PD Claims within the Plan.  The Minutes of Settlement is attached hereto as **Exhibit A.**

---

[1] Pursuant to its term, the Original Minutes of Settlement, dated September 2, 2008, is null and void because the Confirmation Order was not obtained by October 31, 2009.   The Amended and Restated Minutes of Settlement were agreed to on November 16, 2009.

6.    On or about November 16, 2009, the Debtors and Representative Counsel acknowledged and agreed to the Amended and Restated Minutes of Settlement ("Amended Minutes of Settlement").  The Amended Minutes of Settlement is attached hereto as **Exhibit B.**

7.    Pursuant to the terms of the Amended Minutes of Settlement, the Canadian ZAI PD Claims Fund shall, as soon as reasonably practicable following the Effective Date of the First Amended Joint Plan, distribute two million Canadian dollars (CDN$2,000.000.00) to Representative Counsel in respect of legal fees and disbursements as class counsel. Amended Minutes of Settlement ¶ 22.

8.    On or about December 13, 2009, the Honorable Justice Morawetz, of the CCAA Court, endorsed the Amended Minutes of Settlement.  The Honorable Justice Morawetz found that the Amended Minutes of Settlement are "both fair and reasonable". Reasoning of Justice Morawetz, 6 n.23 (Jan. 8, 2010).  The Honorable Justice Morawetz's Order and Reasoning are attached as **Exhibit C**.

9.    Accordingly, this Court should allow Representative Counsel's application for payment of two million Canadian dollars (CDN$2,000.000.00) in respect of legal fees and disbursements as administrative expense claims under §§ 503(b)(3)-(b)(4) of the Bankruptcy Code.

10.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and this matter constitute a core proceeding pursuant to 28 U.S.C. §§ 157(b).  Venue for this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).  The statutory predicates for the relief sought herein is 11 U.S.C. § 503(b).

## II. BACKGROUND

11.    On April 2, 2001, U.S. Debtors filed voluntary petitions for protection under Chapter 11 of the United States Bankruptcy Code (The "U.S. Proceedings") and were granted a temporary

restraining order by this Court providing for certain injunctive relief in favor of the U.S. Debtors as well as certain other third parties (the "Affiliated Entities").

12.    Two days later Grace Canada, Inc. ("Grace Canada"), a Canadian affiliated entity of U.S. Debtors, was granted an order (the "Initial CCAA order") pursuant to Section 18.6(4) of the Companies' Creditors Arrangement Act in the Ontario Superior Court of Justice which, among other things, provided for a stay of proceedings against the commencement or continuation of any asbestos-related suits against Grace Canada.

13.    The Debtors have continued operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

14.    There were eleven proposed class actions (the "Proposed Class Actions") filed across Canada concerning claims that relate, *inter alia*, to the cost of removal, diminution of property value or economic loss allegedly caused by ZAI manufactured by the Debtors and personal injuries allegedly caused by exposure to ZAI. W.R. Grace and/or its affiliated companies are co-defendants together with the Crown in all but the first of these proposed class actions, which are as follows**:**

    a.  *Viviane Brosseau et al. v. Attorney General of Canada*, Superior Court of Quebec, District of Montréal, 500-06-000286-050 (no claim against the Grace companies);

    b.  *Dextras et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Superior Court of Quebec, District of Montréal, 500-06-000258-042;

    c.  *Raven Thundersky et Rebecca Bruce v. Attorney General of Canada, W.R. Grace & Co.*, Court of Queen's Bench of Manitoba, CI04-01-39818;

    d.  *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Federal Court, Saskatchewan, T-1503-05;

4

e.  *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Court of Queen's Bench of Saskatchewan, 696-2005;

f.  *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Court of Queen's Bench of Alberta, 0501-07100;

g.  *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Supreme Court of British Colombia, L-052352;

h.  *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Province of Quebec, District of Hull, 550-06-000020-058;

i.  *Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Court of Queen's Bench of Manitoba, C1-05-01-44628;

j.  *Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Ontario Superior Court of Justice, 5-CV-32367; and

k.  *Her Majesty in Right of the Province of Manitoba v. Attorney General of Canada, W.R. Grace & Co et al.,* Court of Queen's Bench of Manitoba, C1-05-01-41069.

15.    The Proposed Class Actions were prosecuted by separate class action law firms located throughout Canada including Lauzon Belanger, the Merchant Law Group and the Aikins MacAulay firm.

16.    On November 14, 2005, as the result of the Proposed Class Actions commenced in Canada against certain of the U.S. Debtors, Grace Canada, Affiliated Entities and other parties, including the Crown, the CCAA Court granted an order recognizing the injunctive relief provided for by this Court and giving effect to it in Canada, thereby implementing a limited stay of proceedings with respect to the Crown.  See copy of Order for Injunctive Relief attached as **Exhibit D.**[2]

---

[2] A copy of His Honour's Reasons for Decision is reported and attached as **Exhibit D**.

17.     On November 14, 2005, the CCAA Court also considered a request for an extension of the stay contained in the initial order in light of the Proposed Class Actions.  The Honorable Justice Farley indicated that cooperation and coordination between the CCAA Court and the Court was needed, that there had been recognition in the U.S. Bankruptcy Court that Canadian proceedings would be governed by Canadian substantive law, and that the insolvency adjudicative proceedings presented an efficient process, but that the extension of the stay not affect the ability of the Plaintiffs in the Proposed Class Actions from returning to the CCAA Court if they felt there was "foot dragging or other elements of prejudice."  Order for Injunctive Relief, 3 n.13 (Nov. 14, 2005).

18.     Another product of the November 14, 2005, hearing before Justice Farley was the creation of co-counsel agreements between the aforementioned class action law firms. Justice Farley's Reasons for Decision is somewhat of a recital of His Honour's open court direction to counsel, Lauzon Belanger, Scarfone Hawkins, Merchant Law Group and Aikins MacAulay, warning that counsel ought to work toward an agreement to work cooperatively as opposed to running the risk of being divided.  Order for Injunctive Relief, 2 n.5 (Nov. 15, 2005).  It was Justice Farley's admonitions that largely motivated the co-counsel agreements among Representative Counsel (Lauzon Belanger and Scarfone Hawkins) with Merchant Law Group and the Aikins MacAulay firm.

19.     In January 2006, Grace Canada made application to the CCAA Court for the appointment of two law firms, Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP, as Representative Counsel in the CCAA Court proceedings on behalf of all Canadian ZAI Claimants.

20.     On February 9, 2006, the CCAA Court entered an Order appointing Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP as Representative Counsel, and declaring that Representative Counsel shall have the power, among others, to appear or have an agent appear before the U.S. Court in the context of the Debtors Chapter 11 cases, and to negotiate on behalf of

6

the Canadian ZAI Claimants with Grace Canada, the Debtors, and The Crown. See copy of Order for Appointment of Representative Counsel attached as **Exhibit E**.

21.    Since its appointment by the CCAA Court in 2006, Representative Counsel has engaged in extensive negotiations with Grace Canada, representatives of the U.S. Debtors, and the Crown, in an attempt to fashion a comprehensive resolution of all Canadian ZAI personal injury claims and property damage claims.

22.    Representative Counsel has actively monitored these proceedings since their appointment by the CCAA Court in an effort to advance the interests of Canadian ZAI Claimants. Representative Counsel filed a motion with the CCAA seeking instruction from that court on the issues of development of a Canadian litigation procedure to deal with claims advanced by Canadian ZAI claimants consistent with the Debtors first proposed plan of reorganization.  The motion also sought directions from the CCAA as to the effect of the Science Trial memorandum opinion on Canadian ZAI Claimants.  The motion raised notice issues with the CCAA and affirmatively sought documentary discovery of records and information in the possession and control of the Crown for the purpose of aiding and enhancing a direct notice program.

23.    In this proceeding, Representative Counsel filed the following pleadings and/or applications in the United State Bankruptcy Court for the District of Delaware:

| Docket No. | Event Name | Filed |
|---|---|---|
| 12725 | Notice of Appearance | 06/28/2006 |
| 12751 | Response Limited Response to Debtors' Motion for A Scheduling Order Regarding Certain of the Debtors' Fifteenth Omnibus Objections to PD Claims (Substantive) | 07/07/2006 |
| 18519 | Motion for Leave to File an Objection to Debtors' Amendment to Motion for Order (A) Establishing | 04/15/2008 |

7

|  |  |  |
|---|---|---|
|  | a Proof of Claim Bar Date for Zonolite Attic Insulation Claims and (B) Approving the Related Proof of Claim Form, Bar Date Notices, and Notice Program. |  |
| 18520 | Motion for Leave to File an Objection to ZAI Claimants' Motion for Dismissal of an Individual ZAI Claim or For Rule 54(b) Determination to Permit Appellate Review of the ZAI Opinion | 04/15/2008 |
| 18522 | Motion to Shorten Time/Notice for Expedited Consideration of Their Motion for Relief From The Automatic Stay (B) | 04/15/2008 |
| 18523 | Motion of the Canadian ZAI Claimants for an Order lifting the Automatic Stay Imposed By § 362(a) of Title 11 | 04/15/2008 |
| 18728 | Objection to ZAI Claimants' Motion for Dismissal of an Individual ZAI Claim or for a Rule 54(b) Determination to Permit Appellate Review of The ZAI Opinion | 05/16/2008 |
| 18731 | Objection to Debtors' Amendment to Motion for An Order (A) Establishing a Proof of Claim Bar Date for Zonolite Attic Insulation Claims and (B) Approving the Related Proof of Claim Form, Bar Date Notices, and Notice Program | 05/16/2008 |
| 18807 | Joinder of The Canadian ZAI Claimants in the Motion of The Official Committee of Asbestos Property Damage Claimants for Partial Continuance of June 2, 2008, Hearing on Motion of the Debtors for an Order (A) Establishing a Proof of Claim Bar Date for | 05/28/2008 |

|       | Zonolite Attic Insulation Claims, and (B) Approving the Related Proof of Claim Form, Bar Date Notices, and Notice Program |            |
| 18930 | Motion to Authorize/for an Order to Establish a Protocol for Cross-Border Communication Between the United States Bankruptcy Court and the CCAA Court | 06/16/2008 |
| 19208 | Certification of Counsel Regarding Revised Order Establishing A Protocol For Cross-Border Communications | 07/31/2008 |

24.     Additionally, Representative Counsel attended and actively participated in the mediation conference which was held on May 12, 2008.  Although the mediation did not result in a settlement of the pending ZAI Claims issues, it aided in post-mediation settlement negotiations.

25.     In support of the efforts undertaken by Representative Counsel with the CCAA proceeding, a complete copy of the Motion Record of Representative Counsel for settlement approval of original Minutes of Settlement in September, 2008 is attached as **Exhibit F.**  Michel Belanger, an appointed Representative Counsel, gives a brief chronological history of the commencement of the Quebec class proceedings, the CCAA proceedings and the role played by the Merchant and Aikins law firms and the co-counsel agreements with them, and further particulars leading to the Minutes of Settlement.  In his affidavit, Mr. Belanger also speaks to Representative Counsel fees and disbursements.  Mot. Record of Representative Counsel ¶ 107-119.  The exhibits to Michel Belanger's affidavit also include the curriculum vitas of Yves Lauzon, Michel Belanger, Careen Hannouche, David Thompson, Jeff Teal and Matthew Moloci.

26.     As set forth below, Representative Counsel's success in negotiating the Minutes of Settlement, which provides for a significant recovery to Canadian ZAI Claimants and which allows

for a consensual Plan, constitutes a substantial contribution under § 503(b)(3)(D) of the Bankruptcy Code.

27.    The possibility of protracted litigation regarding the nature and extent of ZAI claims, both Canadian and American, complicated Plan negotiations.  Because of the unknown number of Canadian ZAI claimants and the lack of certainty in respect of the nature and value of the claims pursuant to Canadian laws, Representative Counsel played a critical role in negotiating the Plan.  In fact, Representative Counsel's support of the Plan is a critical element of the Minutes of Settlement. Without Representative Counsel's involvement and support for the development of the Plan, the confirmation process would be further delayed by a prolonged battle concerning the estimation and valuation of these claims.  To avoid a longer delay in the Debtors' emergence from bankruptcy, a delay in distributions to creditors and equity holders and significant additional administrative costs, Representative Counsel worked with Grace Canada and other constituencies to create and negotiate a plan that contained a separate class for Canadian ZAI PD Claims.

28.    After nine years in bankruptcy, numerous iterations of a reorganization plan, and significant litigation, Representative Counsel, in tandem with Grace Canada, the U.S. Debtors, and the Affiliated Entities, worked tirelessly to negotiate a global Canadian ZAI claims settlement. Representative Counsel was intimately involved in the development and drafting of many of the key documents which led to the creation of a separate class of Canadian ZAI PD Claims within the Debtors' Plan.  Representative Counsel's support for the Plan and Representative Counsel's diplomatic negotiations through this case substantially assisted the Debtors' reorganization process.

29.    To support Grace's Plan, the Representative Counsel, on behalf of the Canadian ZAI Claimants, agreed to be bound by the terms of the Minutes of Settlement which includes a full and final resolution of all claims against the Grace Parties recognizing that a fully consensual resolution would provide the most fruitful outcome for the Canadian ZAI Claimants.

30.     On October 17, 2008, The Honorable Justice Morawetz, of the CCAA Court, released an Endorsement approving The Minutes of Settlement and confirming, in Paragraph 79, that "Counsel to Grace also submitted that Representative Counsel have been continuously active and diligent in both the U.S. and Canadian proceedings and Grace is of the view that it is appropriate that a portion of the funds paid under the settlement go towards compensation of Representative Counsel's fees."  Endorsement, 10 n.79 (Oct. 17, 2008).  A true and correct copy of the Endorsement is attached hereto as **Exhibit G**.[3]

31.     On November 1, 2009, the original Minutes of Settlement became null and void, in accordance with the terms of the Minutes of Settlement which provided, inter alia, that the Plan had to be confirmed by October 31, 2009.

32.     On or about November 16, 2009, the Debtors and Representative Counsel acknowledged and agreed to the Amended Minutes of Settlement.

33.     Pursuant to the terms of the Amended Minutes of Settlement, Debtors agree to consent to and support Representative Counsel's application seeking appointment as special counsel for Canadian ZAI Claimants in the U.S. proceeding, retroactively to September 1, 2008, and going forward to the date of the U.S. Confirmation Order.  Amended Minutes of Settlement ¶ 16.

34.     On or about December 13, 2009, the Honorable Justice Morawetz, of the CCAA Court, endorsed the Amended Minutes of Settlement.  The Honorable Justice Morawetz found that the Amended Minutes of Settlement are "both fair and reasonable".  Reasoning of Justice Morawetz, 6 n.23 (Jan. 8, 2010)[4].

_____

3 Paragraph 79 of Morawetz's Reasons for Decision is noteworthy in that it was Grace's submissions that persuaded Morawetz to approve the payments to Representative Counsel, the claims administrator and qualified expert to assist in the claims process totally approximately $3,250,000.00.

4 The Decision of Justice Morawetz dated January 8, 2010, regarding Morawetz's approval of the Amended and Restated Minutes of Settlement is noteworthy that paragraphs 35 through 41 speak to the Crown's allegation against Representative Counsel regarding the Crown's conflict of interest argument.

11

35.     On December 22, 2009, the Crown filed and served in the CCAA, a Notice of Motion for Leave to Appeal to the Ontario Court of Appeal.  The appeal was of the decision of Justice Morawetz, wherein he approved the Amended Minutes of Settlement.

36.     The basis of the Crown's appeal to the Ontario Court of Appeal was that Representative Counsel's representation of the Crown's interests created a conflict of interest which precluded the approval of the Amended Minutes of Settlement.  Furthermore, the Crown argued detrimental reliance on the original Minutes of Settlement.  The Crown argued that Representative Counsel owed a duty of loyalty to the Crown and that the Crown was prejudiced by the reversal of position of Representative Counsel with respect to releasing all claims for which the Crown is or may become entitled to contribution or indemnity against the Grace Parties.  These arguments were considered and rejected by both the CCAA Court and the Ontario Court of Appeal.

37.     On February 19, 2010, the Crown's motion for leave to appeal was dismissed by the Ontario Court of Appeal.

38.     Representative Counsel seeks allowance and payment of attorneys fees and expenses as class action counsel, pursuant to § 503(b) of the Bankruptcy Code, incurred in making a substantial contribution to these Chapter 11 cases.

39.     In allowing Representative Counsel's legal fees, the Debtors recognized that Representative Counsel's contribution to the Chapter 11 cases was "substantial" within the meaning of § 503(b) of the Bankruptcy Code.  Indeed, it is fair to say that Representative Counsel served as one of the prime architects and facilitators for both the original Minutes of Settlement as well as the Amended Minutes of Settlement which is incorporated by reference into the Plan.

## III. RELIEF REQUESTED

40.     Pursuant to the terms of the Amended Minutes of Settlement and §§ 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, Representative Counsel seeks an order allowing as

administrative expenses, in recognition of Representative Counsel's substantial contributions in these Chapter 11 cases, the aggregate amount of CDN $2,000,000.00[5] comprised of: (i) professional fees in the amount of $818,746.15 and expenses in the amount of $348,010.88 (including Goods & Services Tax; and Quebec Sales Tax) incurred by Representative Counsel during the Compensation Period.

### IV. LEGAL BASIS

41.     Section 503(b) of the Bankruptcy Code provides, in relevant part, that after notice and a hearing, there shall be allowed administrative expenses of the estate with respect to "the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by … a creditor, …in making a substantial contribution in a case under chapter 9 or 11 of this title."  11 U.S.C. § 503(b)(3)(D).  Furthermore:

> reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under…paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

11 U.S.C. § 503(b)(4) (2005).

42.     The Debtors have acknowledged that Representative Counsel made a substantial contribution to these cases by agreeing to be bound by the terms of the Minutes of Settlement and the Amended Minutes of Settlement.

43.     The record makes clear that Representative Counsel and its professionals indeed made a "substantial contribution" to the Debtors' reorganization with the meaning of the § 503(b) of the Bankruptcy Code.

---

5 ,Pursuant to the terms of the Amended and Restated Minutes of Settlement, Debtors shall distribute two million Canadian dollars (CDN$2,000.000.00) to Representative Counsel in respect of legal fees and disbursements. *(See paragraph 22 of Exhibit B).*

44.      As this Court has explained, §§ 503(b)(3)(D)-(b)(4) permit payment, as an administrative expense, of the expenses of a creditor, including reasonable and necessary attorney's fees incurred, where a substantial contribution has been made to a reorganization.  In re Columbia Gas System, Inc., 224 B.R. 540 (Bankr., D. Del. 1998); see also In re Buckhead America, 161 B.R. 11 (Bankr. D. Del. 1993).  The Third Circuit explicitly recognized this rule in stating:

> The services engaged by creditors, creditor committees and other parties interested in a reorganization are presumed to be incurred for the benefit of the engaging party and are reimbursable if, but only if, the services "directly and materially contributed" to the reorganization.

Lebron v. Mechem Financial Inc., 27 F.3d 937, 943 (3d Cir. 1994).

45.      Pursuant to § 503(b)(4) of the Bankruptcy Code, compensation is authorized even where the services rendered by the attorney were primarily for its clients, if such services transcend such self-protection and extend to the entire bankruptcy estate. Id. at 944.  Although the Bankruptcy Code does not define the term "substantial contribution," courts have considered whether the "efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." Id. (quoting In re Lister, 846 f.2d 55, 57 (10th Cir. 1988).  In determining whether services constitute a substantial contribution and are therefore compensable, courts consider services that "foster and enhance, rather than retard or interrupt the progress of the reorganization." Id. (quoting Consolidated Bancshares, Inc., 785 F.2d 1249, 1253 (5th Cir. 1986)).

46.      In particular, "substantial contribution" fee requests have been granted where "the creditor took and active role in facilitating the negotiation and successful confirmation of the plan." In re Granite Partners, L.P., et al., 213 B.R. 440, 446 (Bankr. S.D.N.Y. 1997) (citing, among other cases, In re Baldwin-United Corp., 79 B.R. 321, 339 (Bankr. S.D. Ohio 1987)) (explaining that creditor's counsel acted as voice of reason in otherwise contentious case); In re Richton Int'l Corp.,

14

15 B.R. 854, 856 (Bankr. S.D.N.Y. 1981) ("services … which facilitated the progress of these cases and … substantially aided the formulation and adoption of the Plan of Reorganization").

## V. ARGUMENT

### A.    Representative Counsel Has Made Substantial Contributions to the Debtors' Reorganization in Facilitating the Negotiations between the Representative Counsel and Debtors which resulted in the Minutes of Settlement

47.    Applying the above standards, Representative Counsel unquestionably made a substantial contribution to these Chapter 11 Cases, including the facilitation of the proposals and negotiations and drafting certain key documents, including numerous iterations of the Minutes of Settlement.

48.    Indeed, Representative Counsel was the catalyst in the filing of all documents in the United States Bankruptcy Court, District of Delaware, on behalf of the Canadian ZAI Claimants.

49.    Representative Counsel's activities prior to the negotiation of the Minutes of Settlement helped to highlight many of the unresolved issues in the Chapter 11 cases, including the Canadian ZAI personal injury estimation issues.  As set forth in the pleadings filed with this Court, the Debtors' Plan was destined to be contested. However, working hand-in-hand with the Debtor, Representative Counsel spearheaded the negotiations for the Minutes of Settlement.

### B.    The application of comity principles to the judicial acts of the CCAA Court with regard to the approval of the Amended and Restated Minutes of settlement is appropriate under these circumstances.

50.    Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice, convenience, and expediency. Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the

rights of persons protected by its own laws. Comity should be withheld only when its acceptance would be prejudicial to the interest of the nation called upon to give it effect. Remington Rand Corp-Delaware v. Business Systems Inc., et al., 830 F.2d 1260, 1267 (3d. Cir. 1987). Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 (3d Cir. 1971); see also Hilton v. Guyot, 159 U.S. 113, 163-64 (1895).

51.     Furthermore, § 304 of the Bankruptcy Code expresses Congressional recognition of an American policy favoring comity for foreign bankruptcy proceedings. That section provides, in pertinent part, that an American bankruptcy court, at the request of a foreign administrator, may enjoin actions and the enforcement of judgments against the foreign debtor in this country. 11 U.S.C. § 304(b) (2005). The House Reports states that "[p]rinciples of international comity and respect for the judgments and laws of other nations suggest that the court be permitted to make the appropriate orders under all of the circumstances of each case...." H.R.Rep. No. 595 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6281. The court should be free to consider "economical and expeditious administration of the estate, ... protection of local creditors and equity security holders against prejudice and inconvenience in processing claims and interest in the foreign proceeding; prevention of preferential or fraudulent disposition of property of the estate...." Remington Rand, 830 F.2d at 1272.

52.     Some factors which the deciding court may consider in granting comity are "economical and expeditious administration of the estate,…protection of local creditors and equity security holders against prejudice and inconvenience in processing claims and interest in the foreign proceeding, prevention of preferential or fraudulent disposition of property of the estate." Id.

53.     In Philadelphia Gear Corp v. Philadelphia Gear De Mexico, S.A., 44 F.3d 187 (3d Cir. 1994), the Third Circuit Court of Appeals considered the district court's refusal to consider a letter rogatory issued by a Mexican court requesting a stay of the U.S. litigation thereby allowing a

suspension of payments proceeding to move forward in Mexican courts pursuant to Mexican bankruptcy law.  It was found that the Mexican bankruptcy law was similar to a Chapter 11 proceeding under U.S. bankruptcy law. <u>Id.</u> at 190.  The district court's refusal is examined under a discretionary standard by the appellate court, and the court ultimate found an abuse of the district court's discretion. <u>Id.</u> at 191. "In general, under the principles of international comity, a domestic court normally will give effect to executive, legislative, and judicial acts of a foreign nation" and should only be "withheld…when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." <u>Id.</u>  The moving party has the burden to prove a *prima facie* case for the extension of comity. <u>Id.</u> at 192.  In setting forth such a *prima facie* case, the moving party should show that "the foreign bankruptcy court shares our 'fundamental principle that assets be distributed equally among creditors of similar standing.'" <u>Id.</u>

54.     In another case, <u>Tradewell, Inc. v. American Sensors Electronics, Inc.</u>, 1997 WL 423075 (D.S.D.N.Y. 1997), the Court determined issues concerning extending comity to be afforded to Canadian bankruptcy court rulings.  This case specifically references the CCAA and the standards it affords in bankruptcy proceedings in comparison to the requirements under U.S. bankruptcy law.  The district court found no relevant distinctions between the two courts for purposes of extending comity. "Comity will be granted if 'it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." <u>Id.</u> at *1.  "It is appropriate to grant comity if the foreign court abides by 'fundamental standards of procedural fairness.'" <u>Id.</u>

55.     Factors utilized by the Court in <u>Tradewell</u> in determining whether "insolvency proceedings warrant comity" were: "1) whether creditors of the same class are treated equally in the distribution of assets; 2) whether the liquidators are considered fiduciaries and are held accountable to the court; 3) whether creditors have the right to submit claims which, if denied, can be submitted

to a bankruptcy court for adjudication; 4) whether the liquidators are required to give notice to the debtor's potential claimants; 5) whether there are provisions for creditors' meetings; 6) whether a foreign country's insolvency laws favor its own citizens; 7) whether all assets are marshaled before one body for centralizes distribution; and 8) whether there are provisions for an automatic stay and for the lifting of such stays to facilitate the centralization of claims." Id. at *2.  A party moving in opposition to comity must show that more than just one of these factors is not met in order to succeed. Id. at *3.

56.     The application of the principals of comity to the CCAA proceedings and the findings of the CCAA and the Ontario Court of Appeal is appropriate and warranted under these circumstances.  The CCAA applied its standards to its determinations.  There is no relevant distinction between the CCAA and the U.S. Bankruptcy Court for purposes of extending comity. Comity should be granted as it has been shown that the CCAA is a court of competent jurisdiction, and that the laws and public policy of Canada and the rights of its residents have not been violated.

57.     The CCAA Court judiciously considered and approved both the Minutes of Settlement and the Amended Minutes of Settlement, including the specific provisions relating to the compensation of Representative Counsel.  It also considered and overruled the objections raised thereto by the Crown.  Representative Counsel respectfully requests that the Court apply the principles of comity and give effect to the CCAA rulings in the proceeding.

**C.**     **Canadian Law supports the award of the legal fees and disbursements agreed to in the Amended and Restated Minutes of Settlement.**

58.     The Canadian case of Parsons v. Canadian Red Cross Society, [2000] 49 O.R.3d 281 (Can.), is illustrative of the analysis undertaken by Canadian courts when a request is made to approve counsel fees in class proceedings.  In Parsons, the Ontario Superior Court of Justice was asked to approve counsel fees in connection with two companion class proceedings brought against the Red Cross and the federal and provincial governments for damages arising from tainted blood.

18

In determining that the $20 million counsel fees were fair and reasonable, the Court reviewed the risk taken at the outset of commencement of the class proceedings by class action counsel; the risk and responsibilities that continued to be borne by class counsel once appointed; despite the risks and legal obstacles, the fact that some settlement for the benefit of the class was achieved; and the nature and extent of the fees and hourly rates claimed. Id.   A copy of the Parsons reported opinion is attached as **Exhibit H.**

59.    Applying these standards to the actions taken at the outset of commencement of the class proceedings by Lauzon Belanger, Merchant Law Group and Aikens MacAulay, it is clear that the proposed class actions were fraught with peril.  Furthermore, the risk and responsibilities have continued to be borne by Representative Counsel once appointed by the CCAA.   Further risk was created for Representative Counsel given Judge Fitzgerald's ZAI Science Memorandum ("no unreasonable risk of harm") and later Memorandum of Opinion on traditional Canadian property damage claims ("ultimate limitation periods") which arguably rendered the Canadian ZAI PD Claims as destined to fail.  Despite the risks and legal obstacles, some settlement for the benefit of the class was achieved and later improved upon by negotiation and resolution of the Amended Minutes of Settlement.

60.    Representative Counsel fees and hourly rates, as claimed, are extremely modest given the risks articulated and the ongoing nature of Representative Counsel's responsibilities going forward.

**D.**    **The Requested Expenses Are Allowable As Administrative Expenses**

61.    Representative Counsel made a substantial contribution to the Debtors successful reorganization and Representative Counsel's expenses and professional fees are therefore allowable as administrative expense claims under §§ 503(b)(3)-(b)(4) of the Bankruptcy Code.

62.     As described in the annexed certification of David Thompson, on behalf of Representative Counsel, which is attached hereto as **Exhibit I**, and in light of all of the above, Representative Counsel seeks allowance of reimbursement for certain fees and disbursements.

### i. Requested Fee Reimbursement

63.     Once an applicant establishes it made a substantial contribution under § 503(b)(3) of the Bankruptcy Code, the Court may allow reasonable compensation for professional services rendered in connection therewith.  11 U.S.C. § 503(b)(4) (2005).

64.     From October 1, 2004, through and including August 31, 2008, Representative Counsel devoted approximately 2,402.87 hours to represent the Canadian ZAI Claimants, and in doing so has provided actual and necessary professional services in the amount of $818,746.15.

65.     Pursuant to the terms of the Amended Minutes of Settlement, Debtors shall distribute two million Canadian dollars (CDN$2,000.000.00) to Representative Counsel in respect of legal fees and disbursements. *(See paragraph 22 of Exhibit B).*

66.     Accordingly, Representative Counsel seeks payment of fees in the amount of CDN $2,000,000.00 as an administrative claim.

67.     A detailed description and breakdown of all of the services provided by Representative Counsel during the Compensation Period is set forth in Representative Counsel's Time Summaries attached hereto as **Exhibits J-1 through Exhibit J-3**.

68.     Representative Counsel seeks payment of customary fees at rates which are comparable to those charged by law firms of similar expertise in their respective relevant market.

### ii. Requested Expense Reimbursement

69.     In addition, during the Compensation Period, Representative Counsel incurred actual out-of-pocket expenses in connection with the rendition of the foregoing professional services in the

20

sum of $348,010.88 (includes Goods & Services Tax in the amount of $53,224.00; and Quebec Sales Tax in the amount of $48,756.26).

70.     Pursuant to the terms of the Amended Minutes of Settlement, Debtors shall distribute two million Canadian dollars (CDN$2,000.000.00) to Representative Counsel in respect of legal fees and disbursements. *(See paragraph 22 of Exhibit B).*

71.     Accordingly, Representative Counsel seeks reimbursement of expenses in the amount of CDN $2,000,000.00 as an administrative claim.

*72.*     A description and breakdown of the expenses incurred by Representative Counsel during the Compensation Period are set forth in Representative Counsel's Time Summaries.  *See attached Exhibit J-1 through J-3.*

73.     The disbursements and expenses have been incurred in accordance with Representative Counsel's normal practice of charging clients for expenses clearly related to and required by particular matters.  Representative Counsel's billing rates do not include charges for telephone toll charges, computerized research, and certain other office services, because the needs of each client for such services differ.  Representative Counsel charged $.10 per page for photocopying services and $1.00 per page for facsimiles.  With respect to outside copying and delivery services, long distance charges, postage, travel fees, conference fees and court fees, Representative Counsel charges the actual cost from the vendor.

74.     No agreement or understanding exists between Representative Counsel and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases other than the co-counsel agreements referenced in this motion and approved by the CCAA.

75.     Representative Counsel have reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believe that

this application for allowance of compensation and reimbursement of expenses complies with the rules set forth therein.

76.    No prior application has been made in this or in any other Court for the relief requested herein.

## SUMMARY OF EXHIBITS

Exhibit A              Canadian ZAI Minutes of Settlement ("Minutes of Settlement")

Exhibit B              Amended and Restated Minutes of Settlement ("Amended Minutes of Settlement")

Exhibit C              Morawetz's Endorsement of Amended and Restated Minutes of Settlement and the Decision of Justice Morawetz dated January 8, 2010 ("Reasoning of Justice Morawetz")

Exhibit D              November 14, 2005, CCAA Court Order ("Order for Injunctive Relief")

Exhibit E              February 9, 2006, CCAA Court Order for Appointment of Representative Counsel

Exhibit F              Motion Record of Representative Counsel for settlement approval of original Minutes of Settlement in September, 2008 ("Mot. Record of Representative Counsel")

Exhibit G              October 17, 2008 Endorsement approving the original Minutes of Settlement ("Endorsement")

Exhibit H              Parsons v. Canadian Red Cross Society, [2000] 49 O.R.3d 281 (Can.).

Exhibit I              Certification of David Thompson on behalf or Representative Counsel

Exhibit J-1 to J-3     Representative Counsel's Time Summaries for October 1, 2004 through August 31, 2008

## CONCLUSION

WHEREFORE, Representative Counsel, on behalf of Canadian ZAI Claimants, respectfully requests that this Court (i) enter an order, in a form substantially similar to the one attached hereto, granting this Application, allowing as administrative expenses the legal fees and expenses incurred

by Representative Counsel pursuant to §§ 503(b)(3)(d)-(b)(4) of the Bankruptcy Code, and

authorizing payment of Representative Counsel's professional fees and expenses, and (ii) grant such

other and further relief as the Court deems just and proper.


Dated: May 3, 2010

                                         */s/Daniel K. Hogan*

                                         Daniel K. Hogan (DE Bar No. 2814)
                                         **THE HOGAN FIRM**
                                         1311 Delaware Avenue
                                         Wilmington, Delaware 19806
                                         Telephone: (302) 656.7540
                                         Facsimile: (302) 656.7599
                                         E-Mail: dkhogan@dkhogan.com

                                        -and-

                                         **LAUZON BÉLANGER, INC**.
                                         Yves Lauzon
                                         Michel Bélanger
                                         286, rue St-Paul Quest, Bureau 100
                                         Montreal Quebec
                                         Telephone: (514) 844-7403
                                         ylauzon@lauzonbelanger.qc.ca
                                         mbelanger@lauzonbelanger.qc.ca

                                         **SCARFONE HAWKINS LLP**
                                         Matthew G. Moloci
                                         David Thompson
                                         One James Street South, 14th Floor
                                         P.O. Box 926, Depot 1
                                         Hamilton, Ontario
                                         Canada L8N 3P9
                                         Telephone: (905) 523-1333
                                         moloci@shlaw.ca
                                         thompson@shlaw.ca