**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| **W.R. GRACE & CO.,** *et al.*, | ) | **Case No. 01-01139 (JFK)** |
| | ) | **Jointly Administered** |
| Debtors. | ) | |
| | ) | Objection Deadline: May 21, 2010 at 4:00 p.m. |
| | ) | Hearing Date: June 7, 2010 at 10:30 a.m. |
| | ) | |
| | ) | |

**SUMMARY OF THE SECOND APPLICATION OF CANADIAN ZAI CLAIMANTS**
**PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND (b)(4) FOR ALLOWANCE**
**OF ADMINISTRATIVE EXPENSES OF**
**LAUZON BÉLANGER S.E.N.C.R.L. AND SCARFONE HAWKINS LLP**
**INCURRED IN MAKING  SUBSTANTIAL CONTRIBUTION**
**FOR THE PERIOD SEPTEMBER 1, 2008 THROUGH DECEMBER 20, 2009**

Name of Applicant:                              Canadian Zonolite Attic Insulation Claimants
                                                ("Canadian ZAI Claimants")

Professional Services of:                       Lauzon Bélanger S.E.N.C.R.L. and Scarfone
                                                Hawkins LLP ("Representative Counsel")

Date of Retention:                              February 8, 2006

Period for which compensation
and reimbursement is sought:                    September 1, 2008 through December 20, 2009

Amount of compensation sought
as actual, reasonable and necessary:            $   394,007.04

Amount of expense reimbursement
(Includes Goods & Service Tax and
Quebec Sales Tax) sought as actual,
reasonable and necessary:                       $   55,377.79

This is Applicant's Second Application.

**Prior Fee Applications:**

| Date Filed | Period Covered | Requested Fees & Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|
| **05/03/2010 Dkt. #** | **October 1, 2004 - August 31, 2008** | **$2,000,000.00[1]** | **Pending** | **Pending** |

**Fee Detail by Professional for the Period of September 1, 2008 through December 20, 2009:**

| Name of Professional Person | Position of the Applicant, Number of Years in that Position, Year of Obtaining License to Practice | Hourly Billing Rate (including changes) | Total Billed Hours | Total Fees |
|---|---|---|---|---|
| Yves Lauzon | Partner, 14 yrs., 1974 | $450.00 | 1.00 | $      450.00 |
| Michel Bélanger | Partner, 14 yrs. 1994 | $350.00 $175.00 | 163.49 4.00 | $ 57,221.50 $      700.00 |
| Careen Hannouche | Associate, 5 years 2005 | $285.00 | 97.39 | $ 27,756.15 |
| **Sub-Total (LB)** | | | **265.88** | **$86,127.65** |
| **Blended Rate** | | | | $323.93 |
| David Thompson David Thompson – Travel | Partner, 22 years 1988 | $475.00 $237.50 | 391.75 11.75 | 186,081.25 2,790.63 |
| Matthew G. Moloci Matthew G. Moloci- Travel | Partner, 11 years 1998 | $375.00 $187.50 | 269.55 9.50 | 101,081.25 1,781.25 |
| Mike Stanton | Associate, 3 years 2006 | $250.00 | 1.95 | 487.50 |
| Krystyn Ordyniec | Associate, 1 year 2009 | $100.00 | 1.10 | 110.00 |
| Law Clerk | | $90.00 | 172.75 | 15,547.50 |

---

[1] On or about November 16, 2009, the Debtors and Representative Counsel acknowledged and agreed to the Amended and Restated Minutes of Settlement wherein paragraph 22(a) provides: "The CDN ZAI PD Claims Fund shall be used for the following purposes and the funds shall be distributed as follows: (a) As soon as reasonably practicable following the Effective Date, two million Canadian dollars (CDN$2,000,000) shall be paid to CCAA Representative Counsel in respect of legal fees and disbursements;"

| | | | | |
|---|---|---|---|---|
| Sub-Total (SH) | | | 858.35 | $307,879.39 |
| Blended Rate SH | | | | $ 358.69 |
| GRAND TOTAL | | | 1124.23 | $394,007.04 |
| Blended Rate | | | | $ 350.47 |

**Cumulative Compensation by Matter Description for the Period of September 1, 2008 through December 20, 2009:**

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Case Administration | | $259,350.55 |
| Hearings | | $35,484.09 |
| Meetings | | $99,172,40 |
| TOTAL | | $394,007.04 |

**Expense Summary for the Period of September 1, 2008 through December 20, 2009:**

| Expense | Lauzon Belanger | Scarfone Hawkins | Total Expenses |
|---|---|---|---|
| Facsimiles | 270.00 | 24.02 | 294.02 |
| Photocopies @ .10 each | 917.60 | 156.40 | 1074.00 |
| Postage | | 89.83 | 89.83 |
| Courier Fees | | 685.00 | 685.00 |
| Long Distance Calls | 2.23 | 934.00 | 936.23 |
| Various Fees | 72.00 | | 72.00 |
| Travel Fees | 491.22 | | 491.22 |
| Parking | 31.90 | 24.00 | 55.90 |
| Chase Process Servers | | 617.00 | 617.00 |
| Member Services (830.5 Hours) | 20,056.58 | | 20,056.58 |
| Case Law | | 193.52 | 193.52 |
| Conference Calls | 97.04 | | 97.04 |
| Messengers | 16.85 | | 16.85 |
| Tabs/Bindings | | 24.75 | 24.75 |

| | | | |
|---|---:|---:|---:|
| Translator | 718.76 | | 718.76 |
| Court fees | | 508.00 | 508.00 |
| Goods & Services Tax | 5,404.15 | $15,531.40 | 20,935.55 |
| Quebec Sales Tax | 8,511.54 | | 8,511.54 |
| **TOTAL** | **$36,589.87** | **$18,787.92** | **$55,377.79** |

## IN THE UNITED STATE BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **IN RE:** | ) | **Chapter 11** |
| | ) | |
| **W.R. GRACE & CO.,** *et. al.,* | ) | **Case No. 01-01139 (JKF)** |
| | ) | **Jointly Administered** |
| **Debtors.** | ) | |
| | ) | Objection Deadline: May 21, 2010@ 4:00 p.m. |
| | ) | Hearing Date: June 7, 2010 @ 10:30 a.m. |
| | ) | |

**SECOND APPLICATION OF CANADIAN ZAI CLAIMANTS
PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND 503(b)(4) FOR ALLOWANCE
OF ADMINISTRATIVE EXPENSES OF LAUZON BÉLANGER S.E.N.C.R.L. AND
SCARFONE HAWKINS LLP AS REPRESENTATIVE COUNSEL
INCURRED IN MAKING SUBSTANTIAL CONTRIBUTION
FOR THE PERIOD SEPTEMBER 1, 2008 THROUGH DECEMBER 20, 2009**

Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP as Representative Counsel ("Representative Counsel") to Canadian Zonolite Attic Insulation Claimants ("Canadian ZAI Claimants"), hereby respectfully submits this application for compensation for professional services rendered and reimbursement of expenses (the "Application"), and moves the Court for entry of an order authorizing reimbursement of its reasonable attorneys fees and expenses incurred in making a substantial contribution to the estate of W. R. Grace and its affiliated Debtors and Debtors in Possession (the "Debtors") and to the reorganization process pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) of title 11 of the United States Code (the "Bankruptcy Code") for the period from September 1, 2008 through December 20, 2009[1]. In support of this Application, Representative Counsel respectfully represents as follows:

## I. INTRODUCTION

1.      ZAI was extensively utilized in Canadian home building and renovations during the approximate period of time between 1940 and the late 1980s. W.R. Grace and Co. and

---

[1] Simultaneously with this Application, Representative Counsel has filed a separate Application of Canadian ZAI Claimants Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and (b)(4) for allowance of Administrative Expenses of Lauzon Belanger S.E.N.C.R.L. and Scarfone Hawkins as CCAA Representative Counsel incurred in Making a Substantial Contribution for the Period from October 1, 2004 to August 31, 2008. Said Application is incorporated herein by reference.

several of its affiliates (the "U.S. Debtors") created and distributed ZAI for use in Canadian homes.

2.      Canadian ZAI homeowners suffer a range of injuries. These include diminution in property values, the costs of asbestos abatement, the financial burden of removing asbestos-contaminated ZAI and refitting homes, and loss of use and enjoyment of their homes due to limitations on remodeling and restrictions on use of areas contaminated with ZAI.

3.      Numerous proposed class actions were commenced in Canada against certain of the U.S. Debtors, Grace Canada, Affiliated Entities and other parties including the Attorney General of Canada (Her Majesty the Queen in Right of Canada) (the "Crown").  These actions assert claims for damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of ZAI attic insulation products in Canada.

4.      As a result of the these numerous class actions, Representative Counsel was duly appointed by the Ontario Superior Court of Justice (the "CCAA Court") to represent the interests of Canadian ZAI claimants, both for property damage and personal injury claims in this bankruptcy proceeding.

5.      Representative Counsel has played a substantial and critical role in the Debtors' formulation of the plan of reorganization as it relates to the treatment of both personal injury and property damage claims asserted by Canadian ZAI Claimants. Representative Counsel was responsible for negotiating the Original Minutes of Settlement (the "Minutes of Settlement")[2] with the Debtors that initially resolved the treatment of all Canadian ZAI claims and that created a separate class for Canadian ZAI PD claims within the Plan.  The Minutes of Settlement is attached hereto as **Exhibit A.**

---

[2] Pursuant to its term, the Original Minutes of Settlement, dated September 2, 2008, is null and void because the Confirmation Order was not obtained by October 31, 2009.

6.      On or about November 16, 2009, the Debtors and Representative Counsel acknowledged and agreed to the Amended and Restated Minutes of Settlement ("Amended Minutes of Settlement").  The Amended Minutes of Settlement is attached hereto as **Exhibit B.**

7.      Pursuant to the terms of the Amended Minutes of Settlement, Debtors agree to consent to and support Representative Counsel's application seeking appointment as special counsel for Canadian ZAI Claimants in the U.S. proceeding, retroactively to September 1, 2008, and going forward to the date of the U.S. Confirmation Order.  Amended Minutes of Settlement ¶ 16.

8.      On or about December 13, 2009, the Honorable Justice Morawetz, of the CCAA Court, endorsed the Amended Minutes of Settlement.  The Honorable Justice Morawetz found that the Amended Minutes of Settlement are "both fair and reasonable". Reasoning of Justice Morawetz, 6 n.23 (Jan. 8, 2010).  The Honorable Justice Morawetz's Order and Reasoning is attached as **Exhibit C**.

9.      On December 21, 2009, Representative Counsel brought a motion in this Court seeking their appointment as Special Counsel, ("Special Counsel Motion") [Docket No. 24031].

10.     At the January 25, 2010 hearing before the Court on the Special Counsel motion, the Court instructed Representative Counsel as follows:

```
1 THE COURT: Okay. As of anything that happened from
2 September 1 of 2008, to the date the application for special
3 counsel approval was filed, because I'm willing to make this
4 application nunc pro tunc to that date, I think there's
5 precedent for that.
6 MR. HOGAN: Okay.
7 THE COURT: And that was in December, I think, 2009.
8 MR. HOGAN: It was, Your Honor.
9 THE COURT: Okay. So, from September 1st of 2008, to
10 December, whatever the date is, 2009, a substantial
11 contribution award can be sought for any items that weren't
12 already compensated by this Court.
13 MR. HOGAN: Of course.
14 THE COURT: I'm not going back and reopening the
```

```
15 issue that it was already awarded, I'm not entering
additional
16 fees, that's over and done with, that's the end. So, from
17 September 1st to December whatever, 2009, you can make a
18 substantial contribution fee request.
19 As of the date that the application was filed, you're
20 then into the fee management order that's approved in this
case
21 because you're now special counsel and I'm not going to be
22 judging things by substantial contribution, I'm going to be
23 looking at the fees as I do for everybody else's fees.
24 MR. HOGAN: Understood, Your Honor.
```

Tr. 34:1-24 (Jan. 25, 2010).

11.    On March 19, 2010, this Court entered a Modified Order authorizing the retention

of Representative Counsel as Special Counsel *nunc pro tunc* to September 1, 2008 [Docket No.

24509].

12.    By this Application, Representative Counsel seeks the Court approval of, and

seeks reimbursement of $394,007.04 for professional fees and actual and necessary expenses in

the amount of $55,377.79 for a total of $449,384.83 (the "Requested Amount") for the period

from September 1, 2008, through December 20, 2009 (the "Compensation Period").

Representative Counsel respectfully submits that the Requested Amount is reasonable and

should be approved, as administrative expense claims under §§ 503(b)(3)-(b)(4) of the

Bankruptcy Code.

13.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157(a)

and 1334(b) and this matter constitute a core proceeding pursuant to 28 U.S.C. §§ 157(b).  Venue

for this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408

and 1409(a).  The statutory predicates for the relief sought herein is 11 U.S.C. § 503(b).

## II. BACKGROUND

14.    On April 2, 2001, U.S. Debtors filed voluntary petitions for protection under

Chapter 11 of the United States Bankruptcy Code (The "U.S. Proceedings") and were granted a

temporary restraining order by this Court providing for certain injunctive relief in favor of the U.S. Debtors as well as certain other third parties (the "Affiliated Entities").

15.     Two days later Grace Canada, Inc. ("Grace Canada"), a Canadian affiliated entity of U.S. Debtors, was granted an order (the "Initial CCAA order") pursuant to Section 18.6(4) of the Companies' Creditors Arrangement Act in the Ontario Superior Court of Justice which, among other things, provided for a stay of proceedings against the commencement or continuation of any asbestos-related suits against Grace Canada.

16.     The Debtors have continued operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

17.     There were eleven proposed class actions (the "Proposed Class Actions") filed across Canada concerning claims that relate, *inter alia*, to the cost of removal, diminution of property value or economic loss allegedly caused by ZAI manufactured by the Debtors and personal injuries allegedly caused by exposure to ZAI. W.R. Grace and/or its affiliated companies are co-defendants together with the Crown in all but the first of these proposed class actions, which are as follows**:**

    a.   *Viviane Brosseau et al. v. Attorney General of Canada*, Superior Court of Quebec, District of Montréal, 500-06-000286-050 (no claim against the Grace companies);

    b.   *Dextras et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Superior Court of Quebec, District of Montréal, 500-06-000258-042;

    c.   *Raven Thundersky et Rebecca Bruce v. Attorney General of Canada, W.R. Grace & Co.*, Court of Queen's Bench of Manitoba, CI04-01-39818;

    d.   *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Federal Court, Saskatchewan, T-1503-05;

    e.   *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Court of Queen's Bench of Saskatchewan, 696-2005;

    f.   *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Court of Queen's Bench of Alberta, 0501-07100;

g.  *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Supreme Court of British Colombia, L-052352;

h.  *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Province of Quebec, District of Hull, 550-06-000020-058;

i.  E*rnest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Court of Queen's Bench of Manitoba, C1-05-01-44628;

j.  *Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Ontario Superior Court of Justice, 5-CV-32367; and

k.  *Her Majesty in Right of the Province of Manitoba v. Attorney General of Canada, W.R. Grace & Co et al.,* Court of Queen's Bench of Manitoba, C1-05-01-41069.

18.     The Proposed Class Actions were prosecuted by separate class action law firms located throughout Canada including Lauzon Belanger, the Merchant Law Group and the Aikins MacAulay firm.

19.     On November 14, 2005, as the result of the Proposed Class Actions commence in Canada against certain of the U.S. Debtors, Grace Canada, Affiliated Entities and other parties, including the Crown, the CCAA Court granted an order recognizing the injunctive relief provided for by this Court and giving effect to it in Canada, thereby implementing a limited stay of proceedings with respect to the Crown.  See copy of Order for Injunctive Relief attached as **Exhibit D.**[3]

20.     On November 14, 2005, the CCAA Court also considered a request for an extension of the stay contained in the initial order in light of the Proposed Class Actions.  The Honorable Justice Farley indicated that cooperation and coordination between the CCAA Court and the Court was needed, that there had been recognition in the U.S. Bankruptcy Court that Canadian proceedings would be governed by Canadian substantive law, and that the insolvency adjudicative proceedings presented an efficient process, but that the extension of the stay not affect the ability of the Plaintiffs in the Proposed Class Actions from returning to the CCAA

---

[3] A copy of His Honour's Reasons for Decision is reported and attached as **Exhibit D**.

Court if they felt there was "foot dragging or other elements of prejudice." Order for Injunctive Relief, 3 n.13 (Nov. 14, 2005).

21.     Another product of the November 14, 2005, hearing before Justice Farley was the creation of co-counsel agreements between the aforementioned class action law firms. Justice Farley's Reasons for Decision is somewhat of a recital of His Honour's open court direction to counsel, Lauzon Belanger, Scarfone Hawkins, Merchant Law Group and Aikins MacAulay, warning that counsel ought to work toward an agreement to work cooperatively as opposed to running the risk of being divided. Order for Injunctive Relief, 2 n.5 (Nov. 15, 2005). It was Justice Farley's admonitions that largely motivated the co-counsel agreements among Representative Counsel (Lauzon Belanger and Scarfone Hawkins) with Merchant Law Group and the Aikins MacAulay firm.

22.     In January 2006, Grace Canada made application to the CCAA Court for the appointment of two law firms, Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP, as Representative Counsel in the CCAA Court proceedings on behalf of all Canadian ZAI Claimants.

23.     On February 9, 2006, the CCAA Court entered an Order appointing Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP as Representative Counsel, and declaring that Representative Counsel shall have the power, among others, to appear or have an agent appear before the U.S. Court in the context of the Debtors Chapter 11 cases, and to negotiate on behalf of the Canadian ZAI Claimants with Grace Canada, the Debtors, and The Crown. See copy of Order for Appointment of Representative Counsel attached as **Exhibit E**.

24.     Since its appointment by the CCAA Court in 2006, Representative Counsel has engaged in extensive negotiations with Grace Canada, representatives of the U.S. Debtors, and the Crown, in an attempt to fashion a comprehensive resolution of all Canadian ZAI personal injury claims and property damage claims.

7

25.    Representative Counsel has actively monitored these proceedings since their appointment by the CCAA Court in an effort to advance the interests of Canadian ZAI Claimants.

26.    In this proceeding, Representative Counsel filed the following pleadings and/or applications in the United State Bankruptcy Court for the District of Delaware during the period from September 1, 2008 until December 21, 2009:

| Docket No. | Event Name | Filed |
|---|---|---|
| 19980 | Motion for Payment of Administrative Expenses/Claims for Allowance Incurred in Making Substantial Contribution Filed by Canadian ZAI Claimants | 11/10/08 |
| 20190 | Certificate of No Objection Regarding The First and Final Application of Canadian ZAI Claimants Pursuant to 11 USC Sections 503(b)(3)(D) and (b)(4) for Allowance of Administrative Expenses Incurred in Making Substantial Contribution | 12/04/08 |
| 24031 | Canadian ZAI Claimants' Application for Appointment of Special Counsel Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP | 12/21/09 |
| 24032 | Application to Employ Daniel K. Hogan As Counsel to the Representative Counsel for the Canadian ZAI Claimants Filed by Canadian ZAI | 12/21/09 |

27.    As set forth below, Representative Counsel's success in negotiating the Minutes of Settlement, which provides for a significant recovery to Canadian ZAI Claimants and which allows for a consensual Plan, constitutes a substantial contribution under § 503(b)(3)(D) of the Bankruptcy Code.

28.    The possibility of protracted litigation regarding the nature and extent of ZAI claims, both Canadian and American, complicated Plan negotiations.  Because of the unknown number of Canadian ZAI claimants and the lack of certainty in respect of the nature and value of

the claims pursuant to Canadian laws, Representative Counsel played a critical role in negotiating the Plan. In fact, Representative Counsel's support of the Plan is a critical element of the Minutes of Settlement. Without Representative Counsel's involvement and support for the development of the Plan, the confirmation process would be further delayed by a prolonged battle concerning the estimation and valuation of these claims. To avoid a longer delay in the Debtors' emergence from bankruptcy, a delay in distributions to creditors and equity holders and significant additional administrative costs, Representative Counsel worked with Grace Canada and other constituencies to create and negotiate a plan that contained a separate class for Canadian ZAI PD Claims.

29.    After nine years in bankruptcy, numerous iterations of a reorganization plan, and significant litigation, Representative Counsel, in tandem with Grace Canada, the U.S. Debtors, and the Affiliated Entities, worked tirelessly to negotiate a global Canadian ZAI claims settlement. Representative Counsel was intimately involved in the development and drafting of many of the key documents which led to the creation of a separate class of Canadian ZAI PD Claims within the Debtors' Plan. Representative Counsel's support for the Plan and Representative Counsel's diplomatic negotiations through this case substantially assisted the Debtors' reorganization process.

30.    To support Grace's Plan, the Representative Counsel, on behalf of the Canadian ZAI Claimants, agreed to be bound by the terms of the Minutes of Settlement which includes a full and final resolution of all claims against the Grace Parties recognizing that a fully consensual resolution would provide the most fruitful outcome for the Canadian ZAI Claimants.

31.    On November 1, 2009, the original Minutes of Settlement became null and void, in accordance with the terms of the Minutes of Settlement which provided, inter alia, that the Plan had to be confirmed by October 31, 2009.

32.    On or about November 16, 2009, the Debtors and Representative Counsel acknowledged and agreed to the Amended Minutes of Settlement.

33.    Pursuant to the terms of the Amended Minutes of Settlement, Debtors agree to consent to and support Representative Counsel's application seeking appointment as special counsel for Canadian ZAI Claimants in the U.S. proceeding, retroactively to September 1, 2008, and going forward to the date of the U.S. Confirmation Order.  Amended Minutes of Settlement ¶ 16.

34.    In December 2009, in support of the CCAA approval of the Amended Minutes of Settlement, Michel Bélanger submitted an affidavit with a complete copy of the Motion Record of Representative Counsel for settlement approval of Amended Minutes of Settlement.  The affidavit is attached as **Exhibit F.**  In the affidavit Mr. Bélanger, an appointed Representative Counsel, gives a brief chronological history of actions of Representative Counsel leading to the Amended Minutes of Settlement and includes a copy of Judge Fitzgerald's Memorandum Opinion disallowing and expunging 88 time-barred Canadian Asbestos Property Damage claims dated April 14, 2009.  The inclusion of the Memorandum Opinion speaks to the risk that Representative Counsel have taken in this proceeding given the unlikelihood of success as well as the submission that, in the circumstances, the settlement achieved is better than none at all.  Paragraphs 140 through 142 speak to the thousands of inquiries Representative Counsel have responded to in response to the CDN ZAI PD Notice Program which was deployed in late 2008 following approval of the original minutes.

35.    On or about December 13, 2009, the Honorable Justice Morawetz, of the CCAA Court, endorsed the Amended Minutes of Settlement.  The Honorable Justice Morawetz found

that the Amended Minutes of Settlement are "both fair and reasonable". Reasoning of Justice

Morawetz, 6 n.23 (Jan. 8, 2010)[4].

36.     On December 22, 2009, the Crown filed and served in the CCAA, a Notice of

Motion for Leave to Appeal to the Ontario Court of Appeal.  The appeal was of the decision of

Justice Morawetz, wherein he approved the Amended Minutes of Settlement.

37.     The basis of the Crown's appeal to the Ontario Court of Appeal was that

Representative Counsel's representation of the Crown's interests created a conflict of interest

which precluded the approval of the Amended Minutes of Settlement.  Furthermore the Crown

argued detrimental reliance on the original Minutes of Settlement.  The Crown argued that

Representative Counsel owed a duty of loyalty to the Crown and that the Crown was prejudiced

by the reversal of position of Representative Counsel with respect to releasing all claims for

which the Crown is or may become entitled to contribution or indemnity against the Grace

Parties.  These arguments were considered and rejected by both the CCAA Court and the Ontario

Court of Appeal.

38.     On February 19, 2010, the Crown's motion for leave to appeal was dismissed by

the Ontario Court of Appeal.

## III. RELIEF REQUESTED

39.     Pursuant to the terms of the Amended Minutes of Settlement and

§§503(b)(3)(D)(b)(4) of the Bankruptcy Code, Representative Counsel seeks an order allowing

as administrative expenses, in recognition of Representative Counsel's substantial contributions

in these Chapter 11 cases, the aggregate amount of $449,384.8350.94 comprised of: (i)

professional fees in the amount of $394,007.04 and expenses in the amount of $55,377.79

---

4 The Decision of Justice Morawetz dated January 8, 2010, regarding Morawetz's approval of the Amended and Restated Minutes of Settlement is noteworthy that paragraphs 35 through 41 speak to the Crown's allegation against Representative Counsel regarding the Crown's conflict of interest argument.

(includes Goods & Services Tax; and Quebec Sales Tax) incurred by Representative Counsel

during the Compensation Period.

### IV. LEGAL BASIS

40.    Section 503(b) of the Bankruptcy Code provides, in relevant part, that after notice

and a hearing, there shall be allowed administrative expenses of the estate with respect to "the

actual, necessary expenses, other than compensation and reimbursement specified in paragraph

(4) of this subsection, incurred by … a creditor, …in making a substantial contribution in a case

under chapter 9 or 11 of this title."  11 U.S.C. 503(b)(3)(D) (2005).  Furthermore:

> reasonable compensation for professional services rendered by an attorney or an
> accountant of an entity whose expense is allowable under…paragraph (3) of this
> subsection, based on the time, the nature, the extent, and the value of such
> services, and the cost of comparable services other than in a case under this title,
> and reimbursement for actual, necessary expenses incurred by such attorney or
> accountant[.]

11 U.S.C. § 503(b)(4) (2005).

41.    The Debtors acknowledged that Representative Counsel made a substantial

contribution to these cases by agreeing to be bound by the terms of the Minutes of Settlement

and the Amended and Restated Minutes of Settlement.

42.    The record makes clear that Representative Counsel and its professionals indeed

made a "substantial contribution" to the Debtors' reorganization with the meaning of the §

503(b) of the Bankruptcy Code

43.     As this Court has explained, §§ 503(b)(3)(D)-(b)(4) permit payment, as an

administrative expense, of the expenses of a creditor, including reasonable and necessary

attorney's fees incurred, where a substantial contribution has been made to a reorganization.  In

re Columbia Gas System, Inc., 224 B.R. 540 (Bankr. D. Del. 1998); see also In re Buckhead

America, 161 B.R. 11 (Bankr. D. Del. 1993).

44.    The Third Circuit explicitly recognized this rule in stating:

The services engaged by creditors, creditor committees and other parties interested in a reorganization are presumed to be incurred for the benefit of the engaging party and are reimbursable if, but only if, the services "directly and materially contributed" to the reorganization.

Lebron v. Mechem Financial Inc., 27 F.3d 937, 943 (3d Cir. 1994).

45.    Pursuant to § 503(b)(4) of the Bankruptcy Code, compensation is authorized even where the services rendered by the attorney were primarily for its clients, if such services transcend such self-protection and extend to the entire bankruptcy estate. Id. at 944.  Although the Bankruptcy Code does not define the term "substantial contribution," courts have considered whether the "efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." Id. (quoting In re Lister, 846 F.2d 55, 57 (10th Cir. 1988)).  In determining whether services constitute a substantial contribution and are therefore compensable, courts consider services that "foster and enhance, rather than retard or interrupt the progress of the reorganization." Id. (quoting Consolidated Bancshares, Inc., 785 F.2d 1249, 1253 (5th Cir. 1986)).

46.    In particular, "substantial contribution" fee requests have been granted where "the creditor took an active role in facilitating the negotiation and successful confirmation of the plan." In re Granite Partners, L.P., et al., 213 B.R. 440, 446 (Bankr. S.D.N.Y. 1997) (citing, among other cases, In re Baldwin-United Corp., 79 B.R. 321, 339 (Bankr. S.D. Ohio 1987)) (explaining that creditor's counsel acted as voice of reason in otherwise contentious case); In re Richton Int'l Corp., 15 B.R. 854, 856 (Bankr. S.D.N.Y. 1981) ("services … which facilitated the progress of these cases and … substantially aided the formulation and adoption of the Plan of Reorganization").

47.    Section 503(b) of the Bankruptcy Code provides, in relevant part, that after notice and a hearing, there shall be allowed administrative expenses of the estate with respect to "the

actual, necessary expenses, other than compensation and reimbursement specified in paragraph

(4) of this subsection, incurred by … a creditor, …in making a substantial contribution in a case

under chapter 9 or 11 of this title."  11 U.S.C. § 503(b)(3)(D) (2005).  Furthermore:

> reasonable compensation for professional services rendered by an attorney or an
> accountant of an entity whose expense is allowable under…paragraph (3) of this
> subsection, based on the time, the nature, the extent, and the value of such
> services, and the cost of comparable services other than in a case under this title,
> and reimbursement for actual, necessary expenses incurred by such attorney or
> accountant[.]

11 U.S.C. § 503(b)(4) (2005).

48.    The Debtors have already acknowledged that Representative Counsel made a

substantial contribution to these cases by agreeing to be bound by the terms of the Amended

Minutes of Settlement.

49.    The record makes clear that Representative Counsel and its professionals indeed

made "substantial contribution" to the Debtors' reorganization within the meaning of § 503(b) of

the Bankruptcy Code.

50.    As this Court has explained, §§ 503(b)(3)(D)-(b)(4) permit payment, as an

administrative expense, of the expenses of a creditor, including reasonable and necessary

attorney's fees incurred, where a substantial contribution has been made to a reorganization.  In

re Columbia Gas System, Inc., 224 B.R. 540 (Bankr. D. Del. 1998); see also In re Buckhead

America, 161 B.R. 11 (Bankr. D. Del. 1993).  The Third Circuit explicitly recognized this rule in

stating:

> The services engaged by creditors, creditor committees and other
> parties interested in a reorganization are presumed to be incurred
> for the benefit of the engaging party and are reimbursable if, but
> only if, the services "directly and materially contributed" to the
> reorganization.

Lebron, 27 F.3d at 943.

51.     Pursuant to § 503(b)(4) of the Bankruptcy Code, compensation is authorized even where the services rendered by the attorney were primarily for its clients, if such services transcend such self-protection and extend to the entire bankruptcy estate. Id. at 944.  Although the Bankruptcy Code does not define the term "substantial contribution," courts have considered whether the "efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." Id. (quoting In re Lister, 846 F.2d at 57).  In determining whether services constitute a substantial contribution and are therefore compensable, courts consider services that "foster and enhance, rather than retard or interrupt the progress of the reorganization." Id. (quoting Consolidated Bancshares, Inc., 785 F.2d at 1253).

52.     In particular, "substantial contribution" fee requests have been granted where "the creditor took an active role in facilitating the negotiation and successful confirmation of the plan." In re Granite Partners, L.P., et al., 213 B.R. at 446 (citing, among other cases, In re Baldwin-United Corp., 79 B.R. at 339) (explaining that creditor's counsel acted as voice of reason in otherwise contentious case); In re Richton Int'l Corp., 15 B.R. at 856 (" services … which facilitated the progress of these cases and … substantially aided the formulation and adoption of the Plan of Reorganization").

## V. ARGUMENT

**A.     Substantial Contributions Were Made To The Debtors' Estate**

53.     Applying the above standards, Representative Counsel unquestionably made a substantial contribution to these Chapter 11 Cases during the period of September 1, 2008, through December 20, 2009, including the facilitation of the proposals and negotiations and drafting certain key documents, which includes hearings in Delaware and numerous filings of documents in Canada.

54.     Representing the interests of all Canadian ZAI claimants as Representative Counsel has been incredibly complex, time-intensive and an enormous responsibility which

Representative Counsel took very seriously, and, consequently, Representative Counsel has incurred additional fees and disbursements since the execution of the original Minutes of Settlement.

55.    The Amended Minutes of Settlement are the result of extensive negotiations, considerable risk assessment, significant investigation, study and review, all of which were aided by the benefit of the experience of Representative Counsel.  As set forth in the pleadings filed with this Court, the Debtors' Plan was destined to be contested. However, working hand-in-hand with the Debtor, Representative Counsel spearheaded further negotiations for the Amended Minutes of Settlement.

56.    Representative Counsel's activities subsequent to the Amended Minutes of Settlement helped to highlight many of the unresolved issues in the Chapter 11 cases, including the Canadian ZAI personal injury estimation issues.  Representative Counsel have responded to thousands of inquiries from Canadian ZAI claimants and continued to monitor and participate in the proceedings in the United States.

57.    The terms of the Amended Minutes of Settlement specifically state that the Canadian ZAI PD Claims Fund shall pay, as soon as reasonably practicable following the Effective Date of the First Amended Joint Plan, two million Canadian dollars (CDN$2,000.000.00) to Representative Counsel in respect of legal fees and disbursements.

**B.    The Requested Expenses Are Allowable As Administrative Expenses**

58.    Representative Counsel made a substantial contribution to the Debtors successful reorganization and Representative Counsel's expenses and professional fees are therefore allowable as administrative expense claims under §§ 503(b)(3)-(b)(4) of the Bankruptcy Code.

59.    As described in the annexed certification of David Thompson, on behalf of Representative Counsel, which is attached hereto as **Exhibit G**, and in light of all of the above, Representative Counsel seeks allowance of reimbursement for certain fees and disbursements.

16

### i. Requested Fee Reimbursement

60.    Once an applicant establishes it made a substantial contribution under § 503(b)(3) of the Bankruptcy Code, the Court may allow reasonable compensation for professional services rendered in connection therewith.  11 U.S.C. § 503(b)(4) (2005).

61.    From September 1, 2008, through and including December 20, 2009, Representative Counsel devoted approximately 1124.23 hours to represent the Canadian ZAI Claimants, and in doing so has provided actual and necessary professional services in the amount of $394,007.04.

62.    Accordingly, Representative Counsel seeks payment of fees in the amount of $394,007.04 as an administrative claim.

63.    A detailed description and breakdown of all of the services provided by Representative Counsel during the Compensation Period is set forth in Representative Counsel's Time Summaries attached hereto as **Exhibits H-1 & H-2**.

64.    Representative Counsel seeks payment of customary fees at rates which are comparable to those charged by law firms of similar expertise in their respective relevant market.

### ii. Requested Expense Reimbursement

65.    In addition, during the Compensation Period, Representative Counsel incurred actual out-of-pocket expenses in connection with the rendition of the foregoing professional services in the sum of $55,377.79 (includes Goods & Services Tax; and Quebec Sales Tax).

66.    Accordingly, Representative Counsel seeks reimbursement of $55,377.79 in expenses and disbursements as an administrative claim.

67.    A description and breakdown of the expenses incurred by Representative Counsel during the Compensation Period are set forth in Representative Counsel's Time Summaries.  *See attached Exhibits H-1 & H-2*.

68.     The disbursements and expenses have been incurred in accordance with Representative Counsel's normal practice of charging clients for expenses clearly related to and required by particular matters.  Representative Counsel's billing rates do not include charges for telephone toll charges, computerized research and certain other office services, because the needs of each client for such services differ.  Representative Counsel charged $.10 per page for photocopying services and $1.00 per page for facsimiles.  With respect to outside copying and delivery services, long distance charges, postage, travel fees, conference fees and court fees, Representative Counsel charges the actual cost from the vendor.

69.     No agreement or understanding exists between Representative Counsel and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

70.     Representative Counsel have reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believe that this application for allowance of compensation and reimbursement of expenses complies with the rules set forth therein.

71.     No prior application has been made in this or in any other Court for the relief requested herein.

## **SUMMARY OF EXHIBITS**

| | |
|---|---|
| Exhibit A | Canadian ZAI Minutes of Settlement ("Minutes of Settlement") |
| Exhibit B | Canadian ZAI Amended and Restated Minutes of Settlement ("Amended Minutes of Settlement") |
| Exhibit C | Morawetz's Endorsement of Amended and Restated Minutes of Settlement and the Decision of Justice Morawetz dated January 8, 2010 ("Reasoning of Justice Morawetz") |
| Exhibit D | November 14, 2005, CCAA Court Order ("Order for Injunctive Relief") |
| Exhibit E | February 9, 2006, CCAA Court Order for Appointment of Representative Counsel |

18

Exhibit F                    Affidavit of Michael Bélanger to Motion Record of Representative
                             Counsel for settlement approval of Amended Minutes of Settlement dated
                             December 2009

Exhibit G                    Certification of David Thompson on behalf or Representative Counsel

Exhibit H & H2               Representative Counsel's Time Summaries for September 1, 2008,
                             through December 20, 2009.

## <u>VI. CONCLUSION</u>

WHEREFORE, Representative Counsel, on behalf of Canadian ZAI Claimants, respectfully

requests that this Court (i) enter an order, in a form substantially similar to the one attached hereto,

granting this Application, allowing as administrative expenses the legal fees and expenses

incurred by Representative Counsel pursuant to §§ 503(b)(3)(d)-(b)(4) of the Bankruptcy Code,

and directing the Debtors to reimburse Representative Counsel the legal fees and expenses, and

(ii) grant such other and further relief as the Court deems just and proper.

Dated: May 3, 2010                           */s/Daniel K. Hogan*
                                             Daniel K. Hogan (DE Bar No. 2814)
                                             **THE HOGAN FIRM**
                                             1311 Delaware Avenue
                                             Wilmington, Delaware 19806
                                             Telephone: (302) 656.7540
                                             Facsimile: (302) 656.7599
                                             E-Mail: dkhogan@dkhogan.com


                                             -and-

**LAUZON BÉLANGER, INC**.
Yves Lauzon
Michel Bélanger
286, rue St-Paul Quest, Bureau 100
Montreal Quebec
Telephone: (514) 844-7403
ylauzon@lauzonbelanger.qc.ca
mbelanger@lauzonbelanger.qc.ca

**SCARFONE HAWKINS LLP**
Matthew G. Moloci
David Thompson
One James Street South, 14th Floor
P.O. Box 926, Depot 1
Hamilton, Ontario
Canada L8N 3P9
Telephone: (905) 523-1333
moloci@shlaw.ca
thompson@shlaw.ca