# EXHIBIT F

Court File No. 01-CL-4081

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

**COMMERCIAL LIST**

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA INC.

**MOTION RECORD OF REPRESENTATIVE COUNSEL**
**(Settlement Approval – December 8, 2009)**

December 4, 2009

**SCARFONE HAWKINS** LLP
Barristers & Solicitors
One James Street South, 14th Floor
P.O. Box 926, Depot 1
Hamilton, Ontario
L8N 3P9

**DAVID THOMPSON (28271N)**
thompson@shlaw.ca
**MATTHEW G. MOLOCI (40579P)**
moloci@shlaw.ca

Tel: 905-523-1333
Fax: 905-523-5878

**LAUZON BÉLANGER**
Barristers & Solicitors
286, rùe St.-Paul Ouest, Bureau 100
Montréal, (Québec)
H2Y 2A3

**YVES LAUZON**
ylauzon@lauzonbélanger.qc.ca
**MICHEL BÉLANGER**
belanger@lauzonbélanger.qc.ca
**CAREEN HANNOUCHE**
careen.hannouche@lauzonbelanger.qc.ca

Tel : 514-844-7612
Fax: 514-844-7009

Representative Counsel for CDN ZAI
Claimants

Court File No. 01-CL-4081

**ONTARIO**
**SUPERIOR COURT OF JUSTICE-COMMERCIAL LIST**

**COMMERCIAL LIST**

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA INC.

<u>**SERVICE LIST**</u>

TO:    **OGILVY RENAULT** <sup>LLP</sup>
Barristers & Solicitors
Suite 3800, P.O. Box 84
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario M5J 2Z4

**DERRICK C. TAY**
dtay@ogilvyrenault.com
Tel: 416-216-4832
Fax: 416-216-3830

**ORESTES PASPARAKIS**
opasparakis@ogilvyrenault.com
Tel: 416-216-4815
Fax: 416-216-3930

Lawyers for GRACE CANADA INC.

AND
TO:

**ERNST & YOUNG INC.**
Ernst & Young Tower,
222 Bay Street, 16th Floor
P.O. Box 251
Toronto-Dominion Centre
Toronto, Ontario
M5K 1J7

**MURRAY A. McDONALD**
murray.a.mcdonald@ca.ey.com
Tel : 416-943-3016
Fax: 416-943-3300

Financial Advisor to the Attorney
General of Canada (Her Majesty the
Queen in Right of Canada)

AND
TO:

**ERNST & YOUNG INC.**
800, boul. René-Lévesque Ouest
Bureau 1900
Montréal, Québec
H3B 1X9

**JEAN DANIEL BRETON**
Jean-Daniel.Bretaon@ca.ey.com
Tel : 514-875-6060
Fax: 514-871-8713

Financial Advisor to the Attorney
General of Canada (Her Majesty the
Queen in Right of Canada)

AND
TO:

**THE SCOTT LAW GROUP P.S.**
926 W. Sprague Avenue, Suite 680
Spokane, Washington
99201

**DARRELL W. SCOTT**
darrellscott@mac.com

Tel : 509-455-3966
Fax: 509-455-3906

AND
TO:

**MERCHANT LAW GROUP**
c/o Eau Claire Place II
#340-521 Third Avenue S.W.
Calgary, Alberta
T2P 3T3

**EVATT MERCHANT**
emerchant@merchantlaw.com

Tel : 403-237-9777
Fax: 403-237-9775

AND
TO:

**DEPARTMENT OF JUSTICE CANADA**
Ontario Regional Office
Counsel, Business Section
The Exchange Tower
130 King Street West, Suite 3400, Box 36
Toronto, Ontario
M5X 1K6

**JACQUELINE DAIS-VISCA**
jacqueline.dais-visca@justice.gc.ca
Tel : 416-952-6010
Fax: 416-973-0809

Lawyers for Health Canada

AND
TO:

**AIKINS, MacAULAY & THORVALDSON LLP**
Barristers and Solicitors
Commodity Exchange Tower
30th Floor – 360 Main Street
Winnipeg, Manitoba
R3C 4G1

**KEITH FERBERS**
KJF@aikins.com
Tel : 204-957-4691
Fax: 204-957-4269

Lawyers for the Plaintiff in Manitoba Q.B.

Court File No. 01-CL-4081

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**

**COMMERCIAL LIST**

**IN THE MATTER OF S. 18.6 OF THE COMPANIES'**
**CREDITORS ARRANGEMENT ACT, R.S.C. 1985, c. C-36,**
**AS AMENDED**

**AND IN THE MATTER OF GRACE CANADA INC.**

**INDEX**

| TAB | DESCRIPTION | PAGE NO. |
|-----|-------------|----------|
| 1. | Affidavit of Michel Belanger and exhibits, sworn December 4, 2009 | 001-032 |
| A | Curriculum vitae of Yves Lauzon, Michel Belanger and Careen Hannouche | 033-041 |
| B | Curriculum vitae of David Thompson, Matthew G. Moloci and Jeffrey C. Teal | 042-063 |
| C | Order of the Honourable Mr. Justice Farley dated February 8, 2006 | 064-070 |
| D | Crown Disclosure Orders | 071-080 |
| E | Judge Fitzgerald Memorandum Opinion dated April 14, 2009 | 081-099 |

**001**

Our Court File No. 01-CL-4081

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE

#### COMMERCIAL LIST

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'
CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, C. c-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

#### AFFIDAVIT OF MICHEL BÉLANGER
#### (Sworn December 4, 2009)

I, Michel Bélanger, of the City of Montreal, in the Province of Quebec, MAKE

OATH AND SAY:

1.    I am a lawyer and partner in Lauzon Bélanger Inc.  Lauzon Bélanger Inc. and

Scarfone Hawkins [LLP] were appointed Representative Counsel on behalf of all

Canadian ZAI claimants ("**Representative Counsel**") on February 8, 2006. As

such, I have knowledge of the matters contained in this affidavit.  Where I make

statements in this affidavit which are not within my personal knowledge, I have

identified the source of my information and belief. I believe all that I depose

herein.

## OVERVIEW

2.     On October 17, 2008, the Honourable Mr. Justice Morawetz ("**Morawetz, J.**")
       granted an order approving Minutes of Settlement entered into September 2,
       2008 ("**Original Minutes**").

3.     The Original Minutes provided that in the event a U.S. Confirmation Order was
       not obtained prior to October 31, 2009, the Original Minutes will be considered
       null and void.

4.     A U.S. Confirmation Order was not obtained by October 31, 2009.

5.     Settlement discussions for an extension of the deadline contained in the Original
       Minutes took place and resulted in execution of Amended and Restated Minutes
       of Settlement (the "**Amended and Restated Minutes**") on November 16, 2009.
       A copy of the Amended and Restated Minutes is at tab 3 of Grace's Motion
       Record.

6.     An order is now sought approving the Amended and Restated Minutes.

## INTRODUCTION AND BACKGROUND RE: REPRESENTATIVE COUNSEL

7.     I am a member of the Representative Counsel team of lawyers acting for all ZAI
       claimants. The lawyers involved include my partner, Yves Lauzon, and associate,
       Careen Hannouche, as well as lawyers David Thompson, Matthew G. Moloci and
       Jeffrey C. Teal of Scarfone Hawkins [LLP].

003

8.  Representative Counsel worked together to represent the interests of all Canadian ZAI claimants.

9.  Lauzon Bélanger Inc. and Scarfone Hawkins <sup>LLP</sup> have significant experience in handling plaintiff class proceeding cases.

10. Lauzon Bélanger Inc. is an experienced plaintiff class action law firm in Quebec. My partner, Yves Lauzon, and I, have been and remain involved in numerous class proceeding cases involving vanishing premium life insurance policies, product liability issues, Saguenay river flooding, Duplessis orphans, failed investment programs, tobacco litigation, Hepatitis 'C', alleged overbilling by Bell Canada, etc. We are assisted by our associate, Careen Hannouche. My *curriculum vitae* and those of Yves Lauzon and Careen Hannouche are attached as exhibit "A".

11. David Thompson, Matthew G. Moloci and Jeffrey C. Teal are partners at Scarfone Hawkins <sup>LLP</sup>, an experienced plaintiff class action law firm in Ontario. They have been and remain involved in numerous class proceeding cases involving vanishing premium life insurance policies, food poisoning, product liability issues, medical negligence, unpaid overtime, environmental contamination, failed investment programs, mass termination of employment, alleged overbilling by Bell Canada, leveraged charitable donation programs, etc. The *curriculum vitae* of David Thompson, Matthew G. Moloci and Jeffrey C. Teal are all attached as exhibit "B". Included in David Thompson's *curriculum vitae* is

a list of some of the class proceedings in which Scarfone Hawkins [LLP] has been involved and some of their current class proceeding cases.

## THE INITIAL ORDER AND EXTENSIONS

12.    On April 2, 2001, W.R. Grace & Co. and several of its affiliates (the **"U.S. Debtors"**) filed voluntary petitions for protection under Chapter 11 of the United States (**"U.S."**) Bankruptcy Code (the **"U.S. Proceedings"**) and were granted a temporary restraining Order by the U.S. Bankruptcy Court providing certain injunctive relief in favour of the U.S. Debtors as well as certain other third-parties (the **"Affiliated Entities"**).

13.    On April 4, 2001, the Applicant was granted the **"Initial Order"**, pursuant to section 18.6(4) of the *Companies' Creditors Arrangement Act* in the Ontario Superior Court of Justice (the **"Court"**) which, among other things, provided for a stay of proceedings prohibiting the commencement or continuation of any asbestos-related suits against the Applicant.

14.    The Stay Period referred to in paragraphs 4 and 5 of the Initial Order has been extended a number of times, most recently pursuant to the Order of Morawetz J. September 23, 2009 extending the Stay Period to March 1, 2010.

## INVOLVEMENT OF REPRESENTATIVE COUNSEL IN THIS ACTION

15.    As indicated above, Lauzon Bélanger Inc. and Scarfone Hawkins [LLP] were appointed Representative Counsel by the Order of the Honourable Mr. Justice

Farley (**"Farley J."**), February 8, 2006, a copy of which is attached as exhibit "C".

16. While that represents the date of our formal appointment as Representative Counsel, we were in fact involved in this matter much earlier.

17. Lauzon Bélanger Inc., in particular, first became involved in prosecuting claims relating to ZAI through the following actions:

   (a) *Association des Consommateurs pour la Qualité dans la Construction et Jean-Charles Dextras v. Grace Canada Inc. and Attorney General of Canada*, Superior Court of Québec (**"the Dextras action"**);

   (b) *Association des Consommateurs pour la Qualité dans la Construction Viviane Brosseau & Léontine Roberge-Turgeon v. Attorney General of Canada*, Superior Court of Québec (**"the Brosseau action"**).

18. The Dextras action was commenced November 1, 2004.

19. The Brosseau action was commenced April 18, 2005.

20. Other proposed class proceedings had been commenced by Aikins MacAulay & Thorvaldson [LLP] (**"Aikins"**) and by Merchant Law Group (**"Merchant"**).

21. The Dextras and Brosseau actions were not stayed as a result of the Initial Order.

22.     As developments began to occur in the CCAA proceeding, Lauzon Bélanger Inc. determined that we could best represent Canadian ZAI claimants by entering into a co-counsel arrangement with Scarfone Hawkins [LLP], a firm with whom we had worked extensively in the past with great success. This was necessary given that we needed Ontario counsel for appearances in this Court, just as we had required in acting for pre-1986 and post-1990 Hepatitis C Quebec claimants in the Canadian Red Cross litigation. We worked successfully with Scarfone Hawkins [LLP] in that case, and in several other prior cases.

23.     We communicated with Scarfone Hawkins [LLP] in late 2004/early 2005 and Scarfone Hawkins [LLP] confirmed its willingness to assist in this matter and to join with us co-operatively to represent the interests of all Canadian ZAI claimants.

24.     We considered a motion seeking an order lifting the stay to allow prosecution of the Dextras and Brosseau actions and returned that motion before Farley J. in November, 2005.

25.     A similar motion was brought at that time by Aikins also seeking a lifting of the stay to allow prosecution of the proposed class proceeding brought in Manitoba.

26.     At that time there was no forum for prosecution of the claims of Canadian ZAI claimants and no agreement or structure in place pursuant to which the claims could be advanced.  There were competing proposed class proceedings all of

- 7 -

which had been stayed and no agreement in place between the law firms as to carriage of the actions.

27. We agreed to adjourn our lift-stay motion with a view to attempting to negotiate an arrangement with Grace that would provide a mechanism for prosecuting the claims of Canadian ZAI claimants.

28. This led to negotiations with Grace for us to be recognized and appointed as Representative Counsel to act on behalf of all Canadian ZAI claimants with a motion being brought before this Court in that regard, and for the Attorney General of Canada (**"the Crown"**) to agree to support that motion.

29. We initiated contact and had significant dialogue with Merchant and Aikins, counsel acting in the other proposed class proceedings that had been commenced.

30. As referenced above, we obtained formal appointment as Representative Counsel from Farley J. on February 8, 2006.

31. We negotiated an arrangement with Merchant, being a cooperative and collaborative co-counsel arrangement and Merchant agreed to our appointment as Representative Counsel.

32. We agreed to act cooperatively with Aikins. Aikins did not oppose our appointment as Representative Counsel.

008

- 8 -

33. We considered opposition to various motions brought by Grace seeking extensions of the Initial Order and furthermore negotiated a consent arrangement in the Dextras and Brosseau actions pursuant to which:

(a)    the Crown consented to the motion seeking authorization/certification of the Brosseau action in the event the claims are not resolved pursuant to the CCAA proceeding and Chapter 11 proceedings in the U.S.;

(b)    the effect of such consent was to be suspended until the re-organization of Grace is terminated, or until further order of the court;

(c)    the Crown agreed to support a motion to appoint Lauzon Bélanger Inc. and Scarfone Hawkins [LLP] as Representative Counsel;

(d)    the stay order was amended to include the Crown on an interim basis;

(e)    if the re-organization of Grace is terminated or the stay lifted, the Superior Court of Québec would rule on the manner in which the proposed litigation would proceed; and,

(f)    an order from the Honourable Mr. Justice Chaput of the Québec Superior Court was obtained confirming this consent arrangement.

34. After our appointment as Representative Counsel, we retained U.S. counsel to represent the rights of all Canadian ZAI claimants in the U.S. Proceedings.

35. We participated in a mediation session in New York City before Judge Pointer on March 16 and 17, 2006.

- 9 -

36.    We appeared further before Farley, J. in March, 2006.

37.    We established a database of Canadian ZAI claimants who contacted our offices; obtained disclosure information from Grace and the Crown; monitored publically-available scientific developments in respect of ZAI and asbestos; monitored all developments in the U.S. Proceedings; obtained transcripts from various U.S. Proceedings and reviewed same; and initiated communication and dialogue with the U.S. counsel for various interest groups in the U.S. Proceedings including the Asbestos Personal Injury Claimants' Committee and Asbestos Property Damage Claimants' Committee.

38.    Representative Counsel communicated with many potential ZAI claimants in order to obtain evidence to assist in the prosecution of claims of Canadian claimants.

39.    We considered and analyzed all potential claims available including a possible claim framed as a duty to warn cause of action and as well considered limitation period arguments and other defences available to Grace and the Crown.

40.    We prepared and filed a proof of claim in the U.S. Proceedings.

41.    We participated telephonically in numerous U.S. Proceedings and had many discussions with our U.S. counsel regarding all issues.

42.    In December, 2006 we received and reviewed the U.S. "Science Trial" Memorandum Opinion of U.S. Bankruptcy Court Judge Judith Fitzgerald ("**Judge Fitzgerald**") and analyzed same. We considered the applicability of the "Science

Trial" Memorandum Opinion to Canadians, particularly given that Judge Fitzgerald concluded that if left undisturbed in homes, ZAI did not pose an unreasonable risk of harm.

43.    We considered a Canadian Litigation Procedure in the interests of all Canadian claimants including working jointly with the Crown to develop and prepare a proposed procedure to deal with Canadian claims.

44.    We then attempted to engage Grace in a dialogue regarding a possible Canadian Litigation Procedure and considered all options available to us to allow prosecution of claims on behalf of Canadian ZAI claimants.

45.    Our work was very difficult as we did not have any formal standing in the U.S. Proceedings, other than being represented by our U.S. counsel.

46.    We had been advised that neither the Asbestos Personal Injury Claimants' Committee nor the Asbestos Property Damage Claimants' Committee had undertaken to represent the interests of Canadian claimants.

47.    Property Damage ("PD") and Personal Injury ("PI") claimant groups in the U.S. Proceedings were separately and independently represented and were at odds competing for the same funds via settlement. Some asserted that since we act for all Canadian ZAI claimants, both PD and PI, that we were in a conflict of interest position given the nature of representation in the U.S. Proceedings.

48.    We returned a motion before this Court in fall, 2007 seeking an order for the establishment of cross-border communication between this Court and Judge

011

- 11 -

Fitzgerald and a protocol in that regard as a necessary, preliminary step to seeking orders lifting the stay in both the U.S. and in Canada to permit prosecution of the various proposed class proceedings.

49.    This motion was discouraged by Grace through counsel but once brought resulted in commencement of settlement discussions. The motion was adjourned given ongoing settlement discussions.

50.    As Representative Counsel, we were satisfied that we had a sufficient evidentiary basis to conduct settlement negotiations.  We understood the factual matrix of the claims and the difficult legal issues involved.

51.    When settlement discussions began with Grace, Grace was adamant that it was prepared to offer only a notice program for public education and awareness and no compensation whatsoever for PD claims. Grace maintained that PI claims would be channelled through an asbestos trust being established through the U.S. proceedings against which all asbestos-related claims would be made (the **"Asbestos Trust"**) to ensure fair and equal treatment with other asbestos PI claimants.

52.    Grace's very strong position with Representative Counsel was that no claimant could establish liability.

53.    We participated in settlement discussions with Grace on an ongoing and very intensive basis from fall, 2007 through spring, 2008. When settlement

012

- 12 -

discussions broke down, we once again returned our fall, 2007 motion before the Court, although a firm hearing date was not set.

54. We also served a Motion Record seeking oral and documentary discovery of records and information in the possession and control of the Crown relating to the identity of homes in Canada which may be insulated with ZAI.

55. This motion culminated in an Order of Morawetz, J. on September 30, 2008 as well as subsequent Orders of June 2, 2009 and July 29, 2009, all three Orders requiring disclosure of Crown information relevant to identification of potential Canadian ZAI claimants. The Crown disclosure Orders are attached as exhibit "D".

56. The Crown disclosure Orders eventually resulted in significantly enhanced notice to Canadian ZAI claimants.

57. At that time, a motion was pending in the U.S. proceedings for establishment of a bar date for ZAI claims in the U.S. and in Canada. We were concerned that Judge Fitzgerald would set a claims bar date of October 31, 2008 for Canadian ZAI PD claimants.

58. Settlement discussions continued once again and we participated in a mediation session in Delaware before Judge Gross on May 12, 2008. The mediation was not successful, however, settlement discussions continued with Grace and the Crown on a very intensive basis throughout May, June, July, August and into early September finally culminating in the Original Minutes.

- 13 -

013

## ORIGINAL MINUTES

59.    Following execution of the Original Minutes, Morawetz J. granted an order approving them. A copy of the Order of Morawetz J., dated October 17, 2008 approving the Original Minutes is at tab 6 of Grace's Motion Record.

60.    The Original Minutes specifically provided that in the event that a U.S. Confirmation Order was not obtained prior to October 31, 2009, the Original Minutes would be considered null and void.

61.    Pursuant to the Original Minutes, a broad-based media program was effected for Canadian ZAI PD claims. Significant notice was given and Representative Counsel responded to thousands of inquiries received.

62.    The U.S. Confirmation Order was not obtained by October 31, 2009.

63.    Settlement discussions for an extension of the deadline contained in the Original Minutes took place and resulted in execution of the Amended and Restated Minutes.

## THE AMENDED AND RESTATED MINUTES

64.    In the remainder of this affidavit, I will use the terms defined in the Amended and Restated Minutes.

65.    The Amended and Restated Minutes contemplate settlement of all Canadian ZAI claims, both PI and PD, with Grace, on the following terms:

- 14 -

**014**

(a)   on the Effective Date of Grace's Plan of Reorganization, Grace will contribute $8,095,632.44 to a fund for the purpose of administering Canadian ZAI PD claims, in the event that a U.S. Confirmation Order is entered by the U.S. Court by June 30, 2010;

(b)   alternatively, on the Effective Date of Grace's Plan or Reorganization, Grace will contribute $8,595,632.44 to a fund for the purpose of administering Canadian ZAI PD Claims in the event that that a U.S. Confirmation Order is entered by the U.S. Court after June 30, 2010, but on or before December 31, 2010;

(c)   Grace shall provide in its Plan of Reorganization that any Canadian ZAI PI claimant shall be entitled to file a claim against the Asbestos Trust to be created for asbestos personal injury claims and shall be entitled to payments as provided thereunder;

(d)   the vote of Representative Counsel made pursuant to the Original Minutes in favour of the First Amended Joint Plan of Reorganization shall constitute a vote pursuant to the Amended and Restated Minutes in favour of the First Amended Joint Plan of Reorganization. Further, Representative Counsel agree to vote, on behalf of Canadian ZAI claimants, in favour of the First Amended Joint Plan of Reorganization incorporating the Amended and Restated Minutes;

(e)   Representative Counsel shall be entitled to bring an application seeking appointment as special counsel ("Special Counsel Application") for

- 15 -

**015**

Canadian ZAI claimants in the U.S. proceedings retroactively to September 1, 2008, and going forward to the date of the U.S. Confirmation Order;

(f)     Representative Counsel shall be entitled to bring an application to the U.S. Court for approval and payment of reasonable fees and expenses in accordance with the applicable provisions of the U.S. Bankruptcy Code, the U.S. Bankruptcy Rules, the Local Rules of the U.S. Court and any other applicable procedures and orders of the U.S. Court.

66.    The obligation of Grace to pay funds is subject to a number of conditions including obtaining Canadian settlement approval on the terms and conditions outlined in the Amended and Restated Minutes.

67.    It is contemplated that the funds paid under the settlement will be distributed as follows:

(a)     $2,000,000.00 to be paid to Representative Counsel in respect of legal fees and disbursements;

(b)     $250,000.00 will be set-aside in a fund for future legal fees and disbursements incurred from the date of the U.S. Confirmation Order for the purposes of carrying-out duties in respect of the Canadian ZAI PD Claims Notice Program and the Canadian ZAI PD Claims Procedure, which legal fees and disbursements shall be paid upon application to and approval by this Court;

(c)     up to $850,000.00 will be used to pay a third party Claims Administrator

for purposes of administering the Canadian ZAI PD Claims Procedure;

(d)     up to $150,000.00 will be made available to pay for assistance of an

expert in establishing procedures for the identification of ZAI, remedial

measures that might be undertaken by a Canadian ZAI PD claimant and

development of the Canadian ZAI PD Claims Procedure;

(e)     the balance of funds, being between approximately $4,850,000.00 and

$5,350,000.00 (depending on when the U.S. Confirmation Order is

obtained as referenced in paragraphs 65(a) and (b) above) as well as any

monies not used for the purposes set-out in (a) through (d) above, shall be

available to be distributed to the holders of Allowed Canadian ZAI PD

claims.

68.    Notwithstanding the Canadian ZAI PD claims bar date of August 31, 2009,

established by the U.S. Court, all Canadian ZAI PD claimants who file a Proof of

Claim by December 31, 2009 shall be entitled to seek compensation from the

Canadian ZAI PD claims fund, with entitlement to be determined in accordance

with the Canadian ZAI PD Claims Procedure.

69.    A Canadian ZAI PD Claims Procedure will be developed by Representative

Counsel with the Claims Administrator and will determine entitlement to

compensation based on the ability of a claimant to prove ownership of a property

insulated with ZAI and that costs were incurred or assumed to identify ZAI,

remove it, or otherwise remediate property.

017

- 17 -

70.  The Amended and Restated Minutes do not preclude Canadian ZAI PI claimants from asserting claims against the Crown for injuries suffered directly or indirectly from the manufacture, sale or distribution of ZAI products in Canada. Claims may be pursued by Canadian ZAI PI claimants against the Crown even though they may give rise to Canadian ZAI PI claims by the Crown for contribution, indemnity or otherwise, provided that such Canadian ZAI PI claims by the Crown shall be channelled to the Asbestos Trust by the First Amended Joint Plan of Reorganization.

71.  Canadian ZAI PD claimants will be entitled to make a claim to the fund referred to in paragraph 67 above and will receive compensation based on their ability to prove that they incurred or assumed costs to identify ZAI, remove it or otherwise remediate property.

72.  A key component of the Original Minutes, which component has already been carried-out, was the establishment of a broad-based media program for Canadian ZAI PD claims and a claims bar procedure.  The cost of the program was borne by Grace. I am advised that the notice program cost between $800,000.00 and $1,000,000.00. Representative Counsel had significant input into designing the notice program.

73.  The broad-based media program was supplemented through direct mail notice to homes identified by the Crown to have possibly been insulated with ZAI,, and available through the Crown disclosure Orders referenced in paragraphs 55 and 56 above.

018

74.   The notice program was viewed as essential to the settlement under the Original Minutes as it involved public education and awareness in respect of the presence of ZAI in homes.

## RATIONALE FOR SETTLEMENT

75.   The Original Minutes were negotiated on the basis of Representative Counsel's assessment that a comprehensive program of notice and public education was needed for Canadians, coupled for the financial incentive for homeowners to take note of the presence of ZAI in their homes and to remediate.

76.   The Amended and Restated Minutes were negotiated on the same basis, with the need for additional funds to be contributed to the Canadian ZAI PD claims fund to pay claims.

### Limited Number of Claimants

77.   Grace obtained an expert report from Roger. G. Morse ("**Morse**") as to the information that was available to Canadian building owners and managers about asbestos-containing materials in buildings in the 1970's, 1980's and into the mid-1990's. Morse concluded that a vast amount of information on asbestos in buildings was available to building owners and managers in the mid to late 1980's and that certainly by 1995, building owners should have been aware of the widespread use of asbestos-containing materials in buildings, the controversy concerning the alleged potential health effects of asbestos in such building material and the development of the asbestos-in-buildings litigation in Canada.

019

- 19 -

78. The Morse report indicates that a vast and overwhelming amount of information was available to the Canadian public through a wide variety of sources including Canadian newspaper articles and other sources on an ongoing basis between 1975 and 1995.

79. This media notice was supplemented by materials available through the Canada Mortgage and Housing Corporation, Health Canada publications and materials, Canadian Medical Association publications, reports from Indian and Northern Affairs Canada, and other sources.

80. All notices provided including the Canada Mortgage and Housing Corporation materials, Health Canada materials and other materials provided information significantly consistent with the "Science Trial" Memorandum Opinion of Judge Fitzgerald, i.e. that the presence of ZAI in homes does not pose an unreasonable risk of harm if left undisturbed.

81. Despite this apparent wide and varied public notice, Representative Counsel, Aikins and Merchant received few inquiries regarding ZAI litigation and the case generated little interest from affected homeowners.

82. This lack of significant interest seemed to support the "Science Trial" Memorandum Opinion which concluded that left undisturbed, the presence of ZAI in buildings does not pose an unreasonable risk of harm.

83. Representative Counsel concluded that a better, more comprehensive and time-intensive program of notice and public awareness was needed for Canadians,

020

coupled with a financial incentive for homeowners to take note of the presence of ZAI in their homes and to remediate.

84. As of the Canadian ZAI PD claims bar date of August 31, 2009, 13,095 Canadian ZAI PD claims had been filed. We expect that some additional claims will be filed by December 31, 2009. We expect that number of additional claims to be relatively small given that there will be no new widespread notice of the extension of the claims bar date.

**Limited Funds Available to Satisfy Claims**

85. Disclosure information obtained revealed that there are approximately 10 times as many properties insulated with ZAI in the U.S. as compared to Canada. Disclosure information obtained in Canada indicated that approximately 245,000 Canadian homes are insulated with ZAI. This would mean that approximately 2.5 million homes are insulated with ZAI in the U.S. Preliminary indications were that complete removal of ZAI from an average residence would involve costs in the range of $10,000.00 to $15,000.00.

86. A successful claim would therefore have resulted in potential liability in excess of $3.6 billion in Canada. When applied in the U.S., based upon the factor of 10 times, the total potential liability would approach $40 billion.

87. It was clear that there would be an enormous shortfall of funds as settlement of all PI claims alone was proposed on the basis of approximately $1.5 billion being paid into the Asbestos Trust against which claims can be made for PI. On the

- 21 -

basis of the claimants' theory, the PD claims alone could result in potential liability in the range of $40 billion.

**Legal and Practical Hurdles**

88. The "Science Trial" Memorandum Opinion of Judge Fitzgerald presented a significant impediment to successful prosecution of the claims of Canadian ZAI claimants.

89. A motion was brought in the U.S. Proceedings seeking leave to appeal the "Science Trial" Memorandum Opinion, which motion was denied in March, 2007. A further motion for leave to appeal was denied in April, 2007.

90. Representative Counsel concluded that it was highly unlikely that this Court would rule that the "Science Trial" Memorandum Opinion of Judge Fitzgerald is not binding on Canadians and order a new "Science Trial" in Canada.

91. Representative Counsel were sensitive to the observation of Farley, J. that the insolvency adjudicative proceedings would result in a more efficient process than a full-blown class action proceeding.

92. Representative Counsel were furthermore concerned that even if a new "Science Trial" were held in Canada, the state of product liability law in Canada is less favourable to claimants than in the U.S., presenting a further significant obstacle to success.

- 22 -

93.    Grace continued to assert the availability of limitation period defences which would operate as a complete defence to many of the claims that were being asserted by Canadians.

94.    Grace had obtained an expert report of Graeme Mew on Canadian limitation issues which report opined that all claims against Grace were time-barred as a result of the law of limitations resulting from application of ultimate limitation provisions in certain Provinces as well as from the application of normal limitation periods in all common law Provinces and Territories in Canada.

95.    Representative Counsel were furthermore concerned that the state of product liability law in Canada was less favourable to claimants as compared to the state of the law in the U.S. U.S. Courts have been prepared to adopt an approach of a strict liability standard, while Canadian Courts have required a finding of negligence as a basis for establishing liability.

96.    Representative Counsel were concerned that no Canadian claimant could succeed in an allegation that Grace knew or ought to have known at the time of manufacture, sale or installation of ZAI that same was defective and presented a real and substantial danger to occupants of homes where used.

97.    I attended a mediation before Judge Gross with David Thompson and Matthew G. Moloci in Delaware on May 12, 2008. The mediation did not achieve resolution. It was clear to us as Representative Counsel that an imminent resolution of ZAI claims in the U.S. Proceedings was highly unlikely and that if we were going to attempt to protect the interests of Canadian claimants, we would

023

- 23 -

have to do so on our own independent of efforts in the U.S. Proceedings, and strictly in the interests of Canadian claimants.

98.    In spring, 2008, Grace filed motions in the U.S. Proceedings to establish a bar date for ZAI claims in the U.S. and in Canada. Various pleadings were filed in opposition to the motion including pleadings prepared by our U.S. counsel on our instructions.

99.    Representative Counsel were concerned that Judge Fitzgerald was inclined to set a bar date with respect to Canadian ZAI PD claims, which bar date would allow a relatively short period for the filing of claims, which, in the opinion of Representative Counsel, would have been insufficient and unsatisfactory in the circumstances.

100.    Representative Counsel were concerned that the form of the notice program proposed, along with an imminent claims bar date, likely to be accepted by Judge Fitzgerald, would have been insufficient and inadequate in terms of providing proper and reasonable notice to Canadian claimants.

101.    On June 17, 2008, Judge Fitzgerald set a claims bar date for U.S. ZAI PD claimants of October 31, 2008.

102.    The U.S. process contemplated a claims bar date to identify potential ZAI PD claims and thereafter a review of the identified claims with Grace being at liberty to attempt to defeat all such claims based on any and all available defences.

024

- 24 -

103. Representative Counsel were concerned that under such a process not only would there be very few identified Canadian ZAI PD claims, but indeed that all such claims could possibly be defeated.

104. The notice program and claims bar date for Canadian ZAI PD claims negotiated as part of settlement were/are significantly enhanced as compared to what was proposed by Grace in its motion in the U.S. Proceedings.

105. Representative Counsel were furthermore concerned that Grace's position that the "best case" scenario on behalf of all Canadian ZAI PD claimants was that removal of ZAI was not necessary and that sealing or other containment of the ZAI was more than sufficient in the circumstances.

106. Representative Counsel also had regard to the unfavourable decision in *Privest Properties Ltd. v. Foundation Co. of Canada Ltd.* [1997] B.C.J. No. 427, as well as the state of Canadian law with respect to "stigma" damages.

107. Representative Counsel concluded that there was a low likelihood that this Court would be prepared to lift the stay contained in the Initial Order to allow the prosecution of the Dextras and Brosseau actions and/or proposed Canadian class proceedings.

108. Representative Counsel furthermore concluded that there was a low likelihood that Judge Fitzgerald would lift the U.S. stay order to allow prosecution of proposed class proceedings, particularly in light of her "Science Trial" Memorandum Opinion.

025

- 25 -

109. Representative Counsel were also extremely concerned that Canadian ZAI claims would be time-barred by applicable Canadian limitations periods.

110. On April 14, 2009, Judge Fitzgerald issued a Memorandum Opinion granting summary judgment in favour of the U.S. Debtors finding that applicable ultimate limitation periods had expired and disallowing and expunging 35 Canadian asbestos (non-ZAI) property damage claims. A copy of the Memorandum Opinion is attached as exhibit "E".

111. Representative Counsel were furthermore extremely concerned about the future expense and duration of litigation including enormous uncertainty as to possible recovery and the real prospect that Canadian claimants would recover nothing in the long run.

112. Representative Counsel concluded that the interests of Canadian ZAI claimants could best be protected by attempting to negotiate a resolution with Grace which would see a lump sum payment made, with a fair and consistent distribution process on a uniform basis, coupled with a broad-based media and direct notice program.

113. All settlement discussions conducted by Representative Counsel were guided by an analysis of the facts and law applicable to the claims taking into account the burden and expense of litigation, including the risks and uncertainties associated with a protracted trial, possible appeals and the fair, cost-effective and assured method of resolving the claims of Canadian ZAI claimants.

026

- 26 -

114.    The Amended and Restated Minutes reflect a settlement that is substantially more favourable than the settlement proposals first put forward by Grace, and substantially more favourable than the Original Minutes.

115.    The Amended and Restated Minutes are the result of extensive negotiations, considerable risk assessment, significant investigation, study and review, all of which are aided by the benefit of the experience of Representative Counsel in other complex litigation.

116.    Representing the interests of all Canadian ZAI claimants as Representative Counsel has been incredibly complex, time-intensive and an enormous responsibility which Representative Counsel took very seriously.

117.    Representative Counsel have incurred more than $500,000.00 in additional fees and disbursements since execution of the Original Minutes. This has included responding to thousands of inquiries from Canadian ZAI claimants, continuing to monitor and participate in the U.S. proceedings, and negotiation of the Amended and Restated Minutes.

118.    Representative Counsel believe that considering the issues set-out above, the proposed settlement as reflected in the Amended and Restated Minutes is fair, reasonable and in the best interests of Canadian ZAI claimants.

119.    Representative Counsel recommend approval of this settlement to this Honourable Court.

027

## THE CROWN

120. Several of the proposed class proceedings alleged liability against the Crown. Liability is alleged in those actions either on the basis that the Crown promoted and encouraged the use of ZAI in Canadian homes as part of an energy rebate program, or alternatively, on the basis that the Crown built and owned housing for Aboriginal persons and Crown employees, which housing contained ZAI.

121. Negotiation of settlement involved Crown participation and attempts were made to enter into an arrangement that involved Crown participation both by way of contribution and as a beneficiary of any release.

122. The negotiations were long and arduous, however, ultimately Representative Counsel determined that an arrangement with the Crown would not be possible.

123. Representative Counsel indicated to the Crown that its last settlement proposal was not acceptable. Representative Counsel remain open to a dialogue with the Crown regarding possible settlement of Crown liability.

124. Representative Counsel intend to undertake further work including a motion to be brought before this Court seeking to lift the stay of proceedings against the Crown and allowing prosecution of actions which assert Crown liability in respect of ZAI.

125. The Amended and Restated Minutes preserve the ability of Canadian ZAI PI claimants to pursue action against the Crown. Article 21 of the Amended and Restated Minutes specifically addresses this issue and provides that claims by

- 28 -

the Crown for contribution, indemnity or otherwise shall be channelled to the Asbestos Trust.

126. All Canadian ZAI PD claims against the Crown were extinguished under the Original Minutes, and remain extinguished under the Amended and Restated Minutes.

## REPRESENTATIVE COUNSEL FEES AND DISBURSEMENTS

127. Representative counsel will receive payment of fees, disbursements and applicable taxes as part of the settlement fund paid by Grace under the Amended and Restated Minutes.

128. When the Dextras and Brosseau actions were commenced and when Representative Counsel began their work on this matter and agreed to be appointed by Court Order, there was at that time no prospect of settlement and enormous uncertainty as to any recovery.

129. Representative Counsel agreed to Court appointment without any assurance whatsoever of payment. In fact, the appointment Order indicates that Canadian claimants shall be responsible for the fees and disbursements of Representative Counsel subject to further order of this Court.

130. Settlement with Grace was achieved without any claimant having to attend an examination for discovery or being subject to documentary disclosure requests.

029

131. The negotiations, the form of the Amended and Restated Minutes and the process demonstrate the skill and experience of Representative Counsel.

132. Representative Counsel believe that the result achieved on behalf of Canadian ZAI claimants is reasonable under the circumstances.

133. As of the date of my affidavit sworn September 25, 2008, Lauzon Belanger Inc. had spent 1,243.89 hours on this matter, having an approximate total value of $400,000.00 at normal hourly rates for this type of work. In addition, Lauzon Belanger Inc. had incurred disbursements to date totalling approximately $234,984.23.

134. Since then, Lauzon Belanger Inc. has spent 243.15 further hours on this matter, having an approximate total value of $79 637.30 at normal hourly rates for this type of work. In addition, Lauzon Belanger Inc. has incurred further disbursements to date totalling approximately $106 991.12.

135. As of the date of my affidavit sworn September 25, 2008, Scarfone Hawkins LLP had spent 1,250.75 hours on this matter, having an approximate total value of $500,000.00 at normal hourly rates for this type of work. In addition, Scarfone Hawkins LLP had incurred disbursements to date totalling approximately $116,000.00.

136. Since then, Scarfone Hawkins LLP has spent more than 864.85 further hours on this matter, having an approximate total value of $314,693.80 at normal hourly

- 30 -                                    030

rates for this type of work. In addition, Scarfone Hawkins [LLP] has incurred further disbursements to date totalling more than $41,000.00, plus applicable taxes.

137. As of September 25, 2008, Representative Counsel had paid or incurred expenses in our engagement of our U.S. counsel approximating $350,000.00, which was included in the disbursements incurred.

138. As of the date of my affidavit sworn September 25, 2008, I was advised that Aikins had spent 1,015.6 hours on this matter to date having a value of approximately $300,000.00 at normal hourly rates for this type of work. I was advised that Aikins had incurred disbursements totalling approximately $102,168.11.

139. As of the date of my affidavit sworn September 25, 2008, I was advised that Merchant had spent approximately 550 hours on this matter to date having a value of approximately $255,000.00 at normal hourly rates for this type of work. I was advised that Merchant had incurred disbursements totalling approximately $46,203.00.

140. Representative Counsel received and responded to literally thousands of inquiries during the Canadian ZAI PD Notice Program.

141. Lauzon Belanger Inc. received and responded to approximately 3,026 Canadian ZAI PD claimant inquiries via telephone, e-mail, fax, etc.

142. Scarfone Hawkins [LLP] responded to approximately 2,500 Canadian ZAI PD claimant inquiries via telephone, e-mail, fax, etc.

031

- 31 -

**FUTURE WORK OF REPRESENTATIVE COUNSEL**

143. It is anticipated that Representative Counsel will continue to represent the interests of all Canadian ZAI claimants and take future significant steps in that regard. Those steps will include assistance in administrating the Canadian ZAI PD claims; assisting claimants and answering inquiries; participation in the U.S. Proceedings including approval of the proposed notice program and ultimate approval of Grace's Plan of Reorganization; communicating with claimants; assisting PI claimants in respect of claims against the Asbestos Trust; coordinating with the claims administrator for the administration of Canadian ZAI PD claims; retaining and consulting with a remediation expert to establish procedures for identification of ZAI and remedial measures that might be undertaken; as well as development of the Canadian ZAI PD claims procedure.

144. I make this affidavit in support of the motion for settlement approval.

**SWORN BEFORE ME** at the
City of Montreal, in the
Province of Quebec this 4th
day of December, 2009.

_Commissioner for Taking Affidavits_
  _(or as may be)_


55,827
Diane Blanchette

MICHEL BÉLANGER

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC.

Court File No. 01-CL-4081

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

PROCEEDING COMMENCED AT
TORONTO

**AFFIDAVIT OF MICHEL BÉLANGER SWORN THIS 3RD DAY OF DECEMBER, 2009**

**SCARFONE HAWKINS** LLP
Barristers & Solicitors
One James Street South
14th Floor
P.O. Box 926, Depot 1
Hamilton, Ontario
L8N 3P9

**DAVID THOMPSON (28271N)**
thompson@shlaw.ca
**MATTHEW G. MOLOCI (40579P)**
moloci@shlaw.ca

Tel : 905-523-1333
Fax: 905-523-5878

**LAUZON BÉLANGER INC.**
Barristers and Solicitors
286, rue St-Paul Ouest, Bureau, 100
Montreal, (Québec)
HY2 2A3

**YVES LAUZON**
ylauzon@lauzonbélanger.qu.ca
**MICHEL BÉLANGER**
mbelanger@lauzonbélanger.qc.ca
**CAREEN HANNOUCHE**
Careen.hannouche@lauzonbélanger.qc.ca
Tel : 514-844-7612
Fax: 514-844-7009

Representative Counsel for
CDN ZAI Claimants

032

RCP-E 4D (July 1, 2007)

- 32 -

033

This is "Exhibit A" referred to in the Affidavit of MICHEL
BELANGER sworn December 9, 2009

_____
Commissioner for Taking Affidavits (or as may be)

55,827
Diane Blanchette