062

# EXPERIENCE

January 2001 to present
Partner: Scarfone Hawkins LLP
Barristers & Solicitors
One James Street South, 14th Floor
Hamilton, Ontario   L8N 3P9
(905) 523-1333

Area of Practice: Corporate/Commercial Law, Class Action Law, e-Commerce
Law

Corporate/Commercial
Extensive experience in domestic and international
commercial transactions, including, corporate finance transactions, re-
organizations, cross-border transactions, general mergers and acquisitions;

Provide corporate services to an international corporate
clientele from Colombia, Germany, Australia, Wales, Hong Kong and
mainland China;

Class Action Law
Involved in various complex class action claims; including
several vanishing premium insurance cases; co-counsel in the settlement
of the vanishing premium class action against Canada Life Assurance
Company affecting 140,000 class members; co-counsel in settlement of
vanishing premium class action against London Life Insurance Company
affecting 900,000 class members and a settlement value of approximately
$260,000,000.00;

e-Commerce Law
Extensive experience in e-commerce law which includes
servicing a national insurance claims portal, gift registry portal and a
virtual coaching technology corporation.

1991 to January 2001
Partner: Brown Scarfone Hawkins
Barristers & Solicitors
Suite 1050, 120 King Street West
Hamilton, Ontario L8N 3P9
(905) 523-1333

063

March 1986 to 1988
> Outerbridge Barristers & Solicitors
> 678 Main Street East
> Hamilton, Ontario

July 1984 to July 1985
> Outerbridge Barristers & Solicitors
> 390 Bay Street, Suite 3000
> Toronto, Ontario

> Articling experience:  Commercial Litigation
> > worked on a team with Ian Outerbridge on several complex commercial litigation matters.

## PERSONAL/PROFESSIONAL ACHIEVEMENTS

Published "Bank Entry into the Canadian Leasing Market", Equipment Financing Journal, Sept/Oct 1999, Vol.24, No. 5.;

Contributing columnist to Canasia Link
> The Investment Planning Newsletter for Canada and the Far East Published by Peter K.C. Ho, RBC Dominion Securities Inc.;

Co-founder and counsel to e-incorp Inc. the first on-line Canadian incorporation service providing on-line incorporations both federally and provincially. Successfully negotiated exclusive agreements for e-incorp Inc. with the Canadian Imperial Bank of Commerce, Bell Canada and Canoe.ca;

Travelled to Cartagena, Colombia, to complete commercial transactions;

Travelled to Hong Kong and mainland China to assist in completing complex commercial transactions under the Canadian Immigrant Investor Program;

Travelled to various states in the United States to complete large commercial nursing home transactions;

Travelled to San Diego, California as a participant in the Association of Fund Raising Professionals International Conference on Fund Raising.

## MEMBERSHIPS

Canadian Bar Association
Hamilton Law Association

064

This is "Exhibit C" referred to in the Affidavit of MICHEL
BELANGER sworn December 4 2009

_Commissioner for Taking Affidavits (or as may be)_

065

Court File No. 01-CL-4081

SUPERIOR COURT OF JUSTICE

COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE | ) | WEDNESDAY, THE 8TH DAY OF |
| | ) | |
| MR. JUSTICE FARLEY | ) | FEBRUARY, 2006 |

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

ORDER

THIS MOTION made by Grace Canada, Inc. (hereinafter referred to as the "Applicant"), for an Order:

(a) abridging the time for service of this motion;

(b) appointing Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP (the "Representative Counsel") to act as representative counsel in these proceedings on behalf of all persons who have, or at any time in the future may have a claim, arising out of or in any way connected to damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of Zonolite attic insulation products in Canada ("Canadian Claimants") by the Applicant or any of W.R. Grace & Co. and all of its subsidiaries (the "U.S. Debtors") as well as certain other Affiliated Entities (as defined in the order of the United States Bankruptcy Court (the "U.S. Court") made on January 22, 2002, as amended);

DOCSTOR: 1052575\4

066

-2-

(c) declaring that the Representative Counsel's powers shall include but not be limited to:

  (i) representing the interests of Canadian Claimants in these proceedings;

  (ii) appearing before this Honourable Court in these proceedings and applying to this Honourable Court for advice and directions from time to time;

  (iii) seeking to appear or have an agent seek to appear before the U.S. Court in the context of the U.S. Debtors' Chapter 11 cases (the "Chapter 11 Cases"); and

  (iv) negotiating on behalf of the Canadian Claimants with the Applicant, The Attorney General of Canada (Her Majesty the Queen in Right of Canada) (the "Crown"), the U.S. Debtors, the Affiliated Entities and any other person or entity;

(d) declaring that Canadian Claimants shall be responsible for the fees and disbursements of the Representative Counsel subject to further order of this Honourable Court;

(e) that any person affected by this Order (an "Affected Person") shall be entitled to apply to this Honourable Court for relief from time to time;

(f) discharging Pierre Le Bourdais as information officer in these proceedings and appointing Richard C. Finke as information officer in these procedures; and

(g) such further relief as this Honourable Court deems appropriate,

067

- 3 -

was heard this day at 393 University Avenue, Toronto, Ontario.

ON READING, the Applicant's Notice of Motion, the affidavit of Richard Finke sworn January 31, 2006, the affidavit of Raven Thundersky ("Thundersky") sworn February 1, 2006, the affidavit of Yves Lauzon sworn February 3, 2006 and the affidavit of Merv Nordick sworn February 6, 2006, and on hearing the submissions of counsel for: (a) the Applicant; (b) Association Des Consommatuers Pour La Qualité Dans La Construction and Jean-Charles Dextras, Viviane Brosseau and Léotine Roberge-Turgeon; (c) the Crown; (d) Thundersky et. al.; and (e) Merv Nordick and Ernest Spencer et. al., and upon being advised that no other person has appeared on this date or served and filed responding materials on this motion although duly served and on reading the affidavit of service of Monique Massabki sworn February 2, 2006:

1.    THIS COURT ORDERS that the time for service of the Applicant's Notice of Motion and Motion Record in support of this Motion be and it is hereby abridged such that the Motion is properly returnable today, and, further, that any requirement for service of the Notice of Motion and of the Motion Record upon any interested party, other than the parties herein mentioned, is hereby dispensed with.

2.    THIS COURT ORDERS that Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP be appointed as representative counsel, in these proceedings on behalf of all Canadian Claimants.

3.    THIS COURT ORDERS that the Representative Counsel's power shall include but not be limited to:

    (a)    representing the interests of Canadian Claimants in these proceedings;

- 4 -

(b)    appearing before this Honourable Court in these proceedings and applying to this Honourable Court for advice and directions from time to time;

(c)    seeking to appear or have an agent seek to appear before the U.S. Court in the context of the Chapter 11 Cases; and

(d)    negotiating on behalf of the Canadian Claimants with the Applicant, the Crown, the U.S. Debtors, the Affiliated Entities and any other person or entity.

4.    **THIS COURT ORDERS** that Canadian Claimants shall be responsible for the fees and disbursements of the Representative Counsel subject to further order of this Honourable Court.

5.    **THIS COURT ORDERS** that any Affected Person shall be entitled to apply to this Honourable Court for relief from time to time.

6.    **THIS COURT ORDERS** that Pierre Le Bourdais be and is hereby discharged as information officer in these proceedings and Richard C. Finke is hereby appointed information officer in these proceedings.

JOSEPH P. VAN TASSEL
REGISTRAR

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

FEB 0 9 2006

PERIPAR

069

Court File No: 01-CL-4081

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC

*ONTARIO*
SUPERIOR COURT OF JUSTICE

Proceeding commenced at Toronto

ORDER

OGILVY RENAULT LLP
Barristers & Solicitors
Suite 3800, PO Box 84
Royal Bank Plaza, South Tower

200 Bay Street
Toronto, Ontario  M5J 2Z4

DERRICK C. TAY
LSUC #21152A
Tel:      416.216.4832
Fax:     416.216.3930

ORESTES PASPARAKIS
LSUC # 36851T
Tel: 416.216.4815
Fax: 416.216.3930

Solicitors for the Applicant

070

Court File No. 01-CL-4081

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Toronto

**MOTION RECORD**

**OGILVY RENAULT LLP**
Barristers & Solicitors
Suite 3800, PO Box 84
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario M5J 2Z4

**DERRICK C. TAY**
LSUC #21152A
Tel:    416.216.4835
Fax:    416.216.3930

**ORESTES PASPARAKIS**
LSUC #36851T
Tel:    416.216.4815
Fax:    416.216.3930

Solicitors for the Applicant

IN THE MATTER OF SECTION 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC.

071

This is "Exhibit D" referred to in the Affidavit of MICHEL
BELANGER sworn December 1, 2009

Commissioner for Taking Affidavits (or as may be)

55,827
Diane Blanchette

072

Court File No. 01-CL-4(

## ONTARIO
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

THE HONOURABLE          )     WEDNESDAY, THE 29TH DAY

JUSTICE MORAWETZ       )     OF JULY, 2009
                               )



IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS
AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

Applic:

### ORDER

THIS MOTION made by Grace Canada, Inc. (hereinafter referred to as the "Applicar
was heard this day at 330 University Avenue, Toronto, Ontario,

ON READING the Applicant's Motion Record, including the Affidavit of Allison Ku
sworn July 28, 2009, and on hearing the submissions of counsel for the Applicant and for
parties appearing on the counsel slip, no one appearing for the other parties served with
Applicant's Notice of Motion,

1.     THIS COURT ORDERS that the time for service of the Applicant's Notice of Mot
and Motion Record in support of this Motion be and is hereby abridged such that the Motion
properly returnable today and hereby dispenses with further service thereof.

2.     THIS COURT ORDERS that the Order of the Honourable Mr. Justice Morawetz da
June 2, 2009, requiring Her Majesty the Queen in the Right of Canada as represented by
Attorney General of Canada to disclose, for the purposes of the Notice Program in th
proceedings, personal information contained in documents and/or databases relevant to

073

- 2 -

identification of potential Canadian claimants who may have homes that may contain Zono Attic Insulation and/or vermiculite insulation on a monthly basis until August 15, 2009, is here amended *nunc pro tunc* to an Order requiring the Crown to disclose the said perso information on a monthly basis until July 15, 2009.

ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

**JUL 2 9 2009**

PER / PAR:

074

*ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE
CANADA, INC

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(Commercial List)

Proceeding commenced at Toronto

**ORDER**

**OGILVY RENAULT LLP**
Barristers & Solicitors
Suite 3800, P.O Box 84
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario M5J 2Z4

**DERRICK C. TAY**
LSUC #21152A
Tel:     416.216.4832
Fax:    416.216.3930

**ORESTES PASPARAKIS**
LSUC # 36851T
Tel: 416.216.4815
Fax: 416.216.3930

Lawyers for the Applicant

DOCSTOR: 1716312\1

075

Our Court File No. 01-CL-4081

### ONTARIO
### SUPERIOR COURT OF JUSTICE

#### COMMERCIAL LIST

| | |
|---|---|
| THE HONOURABLE ) | TUESDAY, THE 2nd DAY |
| MR. JUSTICE MORAWETZ ) | OF JUNE, 2009 |



IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, C. c-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

#### ORDER

**THIS MOTION**, made by Representative Counsel for Canadian ZAI Claimants
was heard this day at the court house, 330 University Avenue, Toronto, Ontario.

**ON READING** the Motion Record of Representative Counsel for Canadian
ZAI Claimants, and on hearing submissions of Representative Counsel, no other
party or person opposing this motion, although all parties on the service list were
properly served, and upon being advised that the Crown, in compliance with the
Order issued by this Court on September 30, 2008, delivered documents and/or
databases concerning personal information, has since compiled further personal
information in connection with the ecoENERGY Retrofit program which might

076

-2-

Identify potential claimants who may have homes that might contain Zonolite Attic Insulation;

1.    **THIS COURT ORDERS THAT** Her Majesty the Queen in Right of Canada as represented by the Attorney General of Canada shall disclose, for the purposes of the Notice Program in these proceedings, pursuant to Section 8(2)(c) of the *Privacy Act*, R.S.C. 1985, c. P-21, the personal information contained in documents and/or databases relevant to the identification of potential Canadian claimants who may have homes that may contain Zonolite Attic Insulation or vermiculite Insulation, which disclosure shall be on a best efforts basis, and provided monthly with the last disclosure being provided on August 15, 2009.

2.    **THIS COURT ORDERS THAT** there shall be no costs of this motion.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO:

JUN 0 2 2009

PER / PAR:

077

GRACE CANADA INC.
Applicant

and

HEALTH CANADA, et al.
Respondents

Court File No.: 01-CL-4081

ONTARIO
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

PROCEEDING COMMENCED AT TORONTO

ORDER

LAUZON BÉLANGER INC.
Barristers and Solicitors
286, rue St-Paul Ouest, Bureau 100
Montréal, QC  H2Y 2A3

YVES LAUZON
ylauzon@lauzonbelanger.qc.ca
MICHEL BÉLANGER
mbelanger@lauzonbelanger.qc.ca
CAREEN HANNOUCHE
careen.hannouche@lauzonbelanger.qc.ca

Tel : 514-844-7612
Fax: 514-844-7009

SCARFONE HAWKINS LLP
Barristers and Solicitors
One James St. S., 14th Floor
P.O. Box 926, Depot 1
Hamilton, ON   L8N 3P8

DAVID THOMPSON (LSUC# 26771N)
thompson@shlaw.ca
MATTHEW G. MOLOCI (LSUC# 40578P)
mmoloci@shlaw.ca

Tel : 905-523-1333
Fax: 905-523-5878

Representative Counsel for Canadian ZAI Claimants

073

Court File No. 01-CL-4081

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

**COMMERCIAL LIST**

|  |  |  |
|---|---|---|
| THE HONOURABLE | ) | TUESDAY, THE 30TH DAY |
|  | ) |  |
| MR. JUSTICE MORAWETZ | ) | OF SEPTEMBER, 2008 |

IN THE MATTER OF S. 18.6 OF THE ***COMPANIES'
CREDITORS ARRANGEMENT ACT***, R.S.C. 1985, c. C-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA INC.

 **ORDER**

THIS MOTION, made by Representative Counsel for Canadian ZAI Claimants, was

heard this day at the court house, 330 University Avenue, Toronto, Ontario.

ON READING the Motion Record of Representative Counsel and on hearing

submissions of Representative Counsel, no other party or person opposing this motion,

although all parties on the service list were properly served,

1.    THIS COURT ORDERS THAT Her Majesty the Queen in Right of Canada as

representative by the Attorney General of Canada shall disclose, pursuant to Section

8(2)(c) of the *Privacy Act*, R.S.C. 1985, c.P-21, the personal information contained

in documents and/or databases relevant to the identification of potential Canadian

079

Claimants who may have homes that may contain Zonolite Attic Insulation or vermiculite attic insulation for the purposes of these proceedings.

2.    **THIS COURT ORDERS THAT** there shall be no costs of this motion.

Signature of Judge

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

OCT. 0 7 2008

PER/PAR: JS         Joanne Niccara
                    ·ʊʒ ·∴ Superior Court of Justice

080

GRACE CANADA INC.
Applicant

and

HEALTH CANADA, et al.
Respondents

Court File No.: 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

PROCEEDING COMMENCED AT TORONTO

ORDER

LAUZON BÉLANGER INC.
Barristers and Solicitors
286, rue St-Paul Ouest, Bureau 100
Montréal, QC    H2Y 2A3

YVES LAUZON
ylauzon@lauzonbelanger.qc.ca
MICHEL BELANGER
mbelanger@lauzonbelanger.qc.ca
CAREEN HANNOUCHE
careen.hannouche@lauzonbelanger.qc.ca

Tel : 514-844-7612
Fax: 514-844-7009

SCARFONE HAWKINS LLP
Barristers and Solicitors
One James St. S., 14th Floor
P.O. Box 926, Depot 1
Hamilton, ON    L8N 3P9

DAVID THOMPSON (LSUC# 28271N)
thompson@shlaw.ca
MATTHEW G. MOLOCI (LSUC# 40579P)
moloci@shlaw.ca

Tel: 905-523-1333
Fax: 905-523-5878

Representative Counsel for Canadian ZAI Claimants

081

This is "Exhibit E" referred to in the Affidavit of MICHEL
BELANGER sworn December 1, 2009

_Commissioner for Taking Affidavits (or as may be)_

55,827
Diane Blanchette

082

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR DISTRICT OF DELAWARE

IN RE:

W.R. GRACE & CO., et al.   Bankruptcy No. 01-01139
   Debtor(s)      Chapter 11

          **Related to Dkt. No. 14597** Debtors' Motion and
          Memorandum for an Order Pursuant to F.R.B.P. 7056
          Disallowing and Expunging Eighty-Eight (88) Time-Barred
          Canadian Asbestos Property Damage Claims

### MEMORANDUM OPINION[1]

The matter before the court is Debtors' Motion and Memorandum for an Order Pursuant

to F.R.B.P. 7056 Disallowing and Expunging Eighty-Eight Time-Barred Canadian Asbestos

Property Damage Claims, docketed as a Motion for Summary Judgment.[2] Since the filing of the

motion, the eighty-eight claims have been reduced to thirty-five due to withdrawal,

expungement, or settlement of claims. Debtors assert that these remaining thirty-five claims are

time-barred by the applicable Canadian ultimate limitations periods,[3] similar to American

statutes of repose, and move for summary judgment. Anderson Memorial Hospital filed a

response[4] to Debtors' motion on its own behalf and on behalf of the Canadian Claimants. The

---

[1] The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our
findings of fact and conclusions of law.

[2] Doc. No. 14597.

[3] The "ultimate" limitations periods are sometimes referred to as the "absolute"
limitations periods. We use the terms interchangeably in this Memorandum Opinion and Order.

[4] Anderson Memorial Hospital's Response to Debtor's Motion for Summary Judgment
Directed to 88 Claims from Canada Based upon the Statute of Limitations, Doc. No. 14898. To
the extent the response is filed by Anderson Memorial Hospital as the representative of a
worldwide class action, no such class has been recognized and Anderson Memorial Hospital is
                   (continued...)

1

083

Canadian Claimants dispute the dates upon which the ultimate limitations periods would begin to run and contend that the limitations periods were tolled.[5]

Background

The Canadian Claimants seek to recover the costs associated with management and removal of asbestos-containing surfacing materials sold by Debtors and installed in the Claimants' buildings. The thirty-five remaining Canadian Claims involve buildings in three different Canadian provinces. Thirty-three of the claims arise from properties located in Alberta and the remaining two arise from properties located in Manitoba and British Columbia. It is undisputed that Debtors ceased selling asbestos-containing products in Canada by 1976, at the latest.[6] Based upon this date, Debtors argue that the thirty-three Alberta claims are time-barred. With regard to the Manitoba claim, the parties have stipulated to the fact that the asbestos-containing material was installed in 1956.[7] The British Columbia claim involves an installation date in the 1960s at the latest.[8] Based upon these dates, the Debtors argue that the applicable

---

[4](...continued)
not a Canadian Claimant. The court will proceed to address the substance of the Debtors' summary judgment motion.

[5] The Canadian Claimants also argued that the issue of ultimate limitations periods was not properly raised in Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims. *See* Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment Directed to 88 Claims from Canada Based upon the Statute of Limitations, Doc. No. 14898, at 3-4. The court previously ruled that the language of the objection was broad enough to raise the ultimate limitations periods. Transcript of 9/10/07, Doc. No. 16930, at 95-96.

[6] Affidavit of James Cintani, Exhibit D to Doc. No. 14597, at 2.

[7] Transcript of 12/15/08, Doc. No. 20371, at 16-17.

[8] Rule 1006 Summary of Voluminous Writings 44 Claims Barred By Canadian Ultimate Limitations Periods, Exhibit C to Doc. No. 14597, Debtors' Motion and Memorandum for an (continued...)

084

Canadian ultimate limitations periods expired with respect to each of the remaining claims prior to April 2, 2001, the Bankruptcy Petition Date.

Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the moving party is entitled to summary judgment where the evidence shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The non-moving party can defeat summary judgment if it produces evidence in the record creating a genuine issue of material fact.[9] However, where the moving party has satisfied its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."[10] The non-moving party cannot "rely merely on allegations or denials in its own pleading; rather, its response must...set out specific facts showing a genuine issue for trial."[11] Only evidence which is "ultimately reducible to admissible evidence" will be considered.[12]

Causes of Action

Analysis of ultimate limitations periods requires identification of the cause of action being pursued. Debtors assert that, under Canadian law, "any asbestos-in-building tort claims

---

[8](...continued)
Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Eighty-Eight (88) Time-Barred Canadian Asbestos Property Damage Claims, at 2. The source of the installation date is identified as Report of Monenco Consultants Limited.

[9] *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

[10] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[11] Fed. R. Civ. Pro. 56(e)(2).

[12] *Lexington Insurance Co. v. Western Pennsylvania Hospital*, 423 F.3d 318, 329 n. 6 (3d Cir. 2005)(internal quotations omitted).

3

085

fall under the rubric of 'pure economic loss.'"[13] Therefore, the Debtors addressed only how the ultimate limitations periods would bar economic loss claims. However, the Claimants contend that the Debtors failed to show that claims based on certain other "asbestos-property damage causes of action," such as nuisance, warranty, conspiracy, restitution, fraud, and misrepresentation, would be barred.[14] In addition, the Claimants assert that, due to a manufacturer's continuing duty to warn, the ultimate limitations periods cannot bar these claims as "a new cause would accrue for every breach of the continuing duty to warn."[15]

Both parties' Canadian law experts reached the same conclusion with regard to the cause of action being pursued by the Claimants. That is, in Canada, the claims are cognizable only as negligence claims for pure economic loss.[16] The Supreme Court of Canada in *Winnipeg Condominium Corp. No. 36 v. Bird Construction Co. Ltd.*, addressed whether the cost of repairing a defect in the construction of a building is the type of economic loss recoverable in

---

[13] Debtors' Reply in Support of their Motion for an Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Eighty-Eight (88) Time-Barred Canadian Asbestos Property Damage Claims, Doc. No. 14965, at 4.

[14] Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment Directed to 88 Claims from Canada Based upon the Statute of Limitations, Doc. No. 14898, at 11-12.

[15] *Id.* at 11.

[16] *See* Affidavit of Graeme Mew, Debtors' Expert, Exhibit B to Doc. 14965, Debtors' Reply in Support of their Motion for an Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Eighty-Eight (88) Time-Barred Canadian Asbestos Property Damage Claims, at ¶ 13, stating "regardless of the nominate tort alleged, the claimants' allegations fall in line with what the leading author on Canadian tort law describes as recovery for pure economic loss." *See also* Deposition of John C. Irvine, Claimants' Expert, (Aug. 22, 2007), Tab B to Doc. No. 16757, Appendix to Debtors' Supplemental Submission in Support of Their Motion and Memorandum for an Order Pursuant to F.R.B.P. Disallowing and Expunging What is Now Fifty-Five (55) Time-Barred Canadian Asbestos Property Damage Claims, at 142-44, affirming his belief that all of the claims would be considered negligence claims for pure economic loss.

4

086

tort.[17] Pure economic loss claims are those which do not arise from injury to persons or damage to property apart from the defective product itself.[18] The *Winnipeg Condo* court recognized and outlined five categories in which these claims arise. The relevant category in both *Winnipeg Condo* and under the facts of this case is "negligent supply of shoddy goods or structures."[19] Prior to *Winnipeg Condo*, the claims asserted by the Canadian Claimants in this case "would have been regarded as speculative if not entirely unarguable in Canadian courts[.]"[20] Furthermore, Canadian courts are skeptical of attempts to recharacterize causes of action and are unwilling to permit the purpose of the ultimate limitations periods to be undermined.[21] Based on

---

[17] [1995] 1 S.C.R. 85, 90, 1995 S.C.R. LEXIS 373, at *10.

[18] *Id.* at 97, 1995 S.C.R. LEXIS 373, at *21-22.

[19] *Id.*, 1995 S.C.R. LEXIS 373, at *21. "[T]ort law serves to encourage the repair of dangerous defects and thereby to protect the bodily integrity of inhabitants of buildings." *Id.* at 120, 1995 S.C.R. LEXIS 373, at *60. Despite the use of the term "shoddy," the court distinguished poor quality workmanship from dangerous defects and restricted itself to the facts presented in ruling that, if negligence was found, the plaintiff was entitled "to recover the reasonable cost of putting the building into a non-dangerous state." *Id.* at 120-21, 1995 S.C.R. LEXIS 373, at *60.

[20] Expert Report of Professor John Irvine, Doc. No. 16754, at 4.

[21] *See Edwards Estate v. Beckmann*, No. S060723, 2008 BC.C. LEXIS 581, at *26 (B.C. S.C. Mar. 17. 2008) ("These amendments, then, seek to avoid the ultimate limitation period by alleging the breach of continuing duties during the relevant period. The plaintiffs seek to accomplish indirectly what they cannot achieve directly, that is, to extract damages for the time barred torts"); *Bowes v. Edmonton (City)*, [2007] 425 A.R. 123, at ¶ 173, 2007 AB.C. LEXIS 1877, at *77 (Alta. C.A. Dec. 28, 2007) ("To regard every ancient failure to warn as occurring every day would be a fiction destroying all limitations periods. If the above were not the law, then most cases of delayed harm from a tort could be dressed up as failures to warn, with no limitation period"); *Bowes v. Edmonton (City)*, [2005] 49 Alta. L.R. (4th) 100, at ¶ 210, 2005 AB.C. LEXIS 1114, at *105-06 (Alta. Q.B. July 7, 2005) ("It seems to me that categorization of non-action in this context as either nuisance or recurring negligence has the potential to substantially undermine limitations law in this province and to return us to the unacceptable uncertainty which marked litigation prior to proclamation of the Limitations Act").

087

reported cases construing Canadian law and the consensus in opinion of the parties' experts,

which is unrefuted on this record, the court will proceed to analyze the claims as negligence

claims for pure economic loss.

Canadian Limitations Acts

As the Claimants' buildings are located in Alberta, Manitoba, and British Columbia, the

laws of each of those Canadian provinces must be considered in determining whether the claims

are barred by the applicable limitations period.

### Alberta's Limitations Act, R.S.A., ch. L-12

Pursuant to §3(1)(b) of Alberta's Limitations Act, a claimant must seek a remedial order

within the ten-year ultimate limitations period.[22] Section 3(3)(b) of the Act states that, for

purposes of the ultimate limitations period, "a claim based on a breach of a duty arises when the

conduct, act or omission occurs."[23] The Claimants contend, however, that this latter provision

does not apply to economic loss cases, but only to those cases involving a generalized breach of

duty. The Claimants base their argument on the general definition section of the Act which

defines "injury" in five separate categories, one of which is "economic loss" and another for

breach of duty where the injury does not fall into one of the other five categories.[24] However, a

---

[22] "[I]f a claimant does not seek a remedial order within . . . (b)10 years after the claim
arose . . . the defendant, on pleading this Act as a defence, is entitled to immunity from liability in
respect of the claim." R.S.A., ch. L-12 §3(1)(b).

[23] [2007] 425 A.R. 123, at ¶ 151, 2007 AB.C. LEXIS 1877, at *69, interpreting and
applying the language of the R.S.A., ch. L-12 §3(3)(b). "That paragraph is plain. It says that the
time under the alternative absolute period starts to run from the negligent or wrongful act or
omission itself. Therefore, one should not wait until the harm occurs."

[24] Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re:
Canadian Statute of Limitations, Doc. No. 17059, at 17.

088

similar argument was rejected by the Alberta Court of Appeal in *Bowes v. Edmonton*.[25] In

*Bowes,* counsel for the plaintiffs attempted to avoid the result of the language of § 3(3)(b) by

relying on the definition of "claim" in §1(a), the general definition section of the Act.[26] The

court rejected the argument, stating "the Legislature does not confine itself to the vague general

s. 1(a) [definition],....Section 3(1)(b), the unconditional limitation period, has its own express

interpretation section."[27] Therefore, Claimants cannot avoid the result that the Alberta ultimate

limitations period commences to run upon the act, omission, or conduct that constituted the

breach.

As previously stated, these claims fall under the *Winnipeg Condo* category of "negligent

supply of shoddy goods or structures,"[28] and the Debtors ceased selling asbestos-containing

products in Canada by 1976.[29] Therefore, the Debtors could not have committed an act

constituting the negligent supply of these products after that date. Consequently, the ten-year

ultimate limitations period for the Alberta claims would have expired by 1986. Absent

suspension of the ultimate limitations period, the thirty-three Alberta claims are time-barred.

Manitoba's Limitation of Actions Act, R.S.M., ch. L150[30]

---

[25] *Bowes,* [2007] 425 A.R. 123, at ¶¶ 148-51, 2007 AB.C. LEXIS 1877, at *67-69.

[26] *Id.* at ¶ 148, 2007 AB.C. LEXIS 1877, at *68-69 (citing R.S.A., ch. L-12 § 1(a), which provides that "'claim' means a matter giving rise to a civil proceeding in which a claimant seeks a remedial order").

[27] *Id.* at ¶¶ 149-50, 2007 AB.C. LEXIS 1877, at *68-69.

[28] *Winnipeg Condo,* 1 S.C.R. at 97, 1995 S.C.R. LEXIS 373, at * 21.

[29] Affidavit of James Cintani, Exhibit D to Doc. No. 14597, at 2.

[30] The Claimants assert that the Manitoba ultimate limitations period has no application
(continued...)

Pursuant to Manitoba's statute, the ultimate limitations period within which to bring an action is thirty years after the occurrence of the acts or omissions that gave rise to the cause of action.[31] The language of the statute is clear. As in Alberta, the date for commencement of the ultimate limitations period is the date of the relevant act or omission.[32] With regard to the single Manitoba claim, the parties stipulated to a 1956 installation date of the Debtors' product.[33] Therefore, the limitations period expired with respect to this claim no later than 1986 unless the period was otherwise tolled.[34]

### British Columbia's Limitation Act, R.S.B.C., ch. 266

British Columbia's Limitation Act provides a thirty-year ultimate limitations period to bring an action which begins to run from "the date on which the right to do so arose."[35] The

---

[30](...continued)
in this bankruptcy proceeding and only applies to special proceedings brought in Manitoba. *See* Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re: Canadian Statute of Limitations, Doc. No. 17059, at 15, n.12. The Claimants cite no authority for this assertion. The special proceedings described are the only mechanism by which a plaintiff can bring a claim after the normal limitations period has expired. R.S.M., ch. L150 § 14(1).

[31] In Manitoba, a plaintiff must apply to the court for an extension of time to begin or continue a cause of action beyond the normal limitations period. R.S.M., ch. L150 § 14(1). However, "[t]he court shall not grant leave (a) to begin an action; or (b) to continue an action that has been begun; more than 30 years after the occurrence of the acts or omissions that gave rise to the cause of action." § 14(4).

[32] *Cf.* R.S.A., ch. L-12 §§ 3(1)(b), (3)(b) (interpreted in *Bowes*, [2007] 425 A.R. 123, at ¶ 151, 2007 AB.C. LEXIS 1877, at *69, to mean the "absolute period starts to run from the negligent or wrongful act or omission itself").

[33] Transcript of 12/15/08, Doc. No. 20371, at 16-17.

[34] *See* discussion of "tolling," *infra*.

[35] "[N]o action to which this Act applies may be brought . . . (c) . . . after the expiration of 30 years from the date on which the right to do so arose." R.S.B.C., ch. 266 § 8(1)(c).

8

090

British Columbia Act, unlike the Alberta statute, does not define when a cause of action arises, but British Columbia case law provides guidance. The most factually relevant case is *Privest Properties Ltd. v. Foundation Co. of Canada*, where the plaintiffs sought compensation for the removal costs of the asbestos-containing material MK-3.[36]  Claimants attempt to argue that the *Privest* decision is not applicable because it does not address the "ultimate" limitations period but rather interprets the "normal" limitations period.[37]  The normal limitations period provided that an action "shall not be brought after the expiration of 6 years after the *date on which the right to do so arose.*"[38]  Therefore, the court was interpreting identical language found in both the normal and ultimate limitations provisions and its analysis focused on the identical issue: that is, when time begins to run under the Act.[39]  The court concluded that "a cause of action accrues when all of the constituent elements exist, whether or not the plaintiff is then aware of them."[40]  The court then applied its ruling to the facts of the case and held that it was "clear that all of the elements necessary to the plaintiff's cause of action came into existence...when the MK-3 was installed in the Building.  Accordingly, the limitation period began to run...when the installation was completed."[41]

The Claimants argue that the *Privest* court's holding is incorrect and is not based on any

---

[36] [1995] 11 B.C.L.R. (3d) 1, at ¶ 1 (B.C. S.C.).

[37] Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re: Canadian Statute of Limitations, Doc. No. 17059, at 18, n.13.

[38] *See Privest*, 11 B.C.L.R. (3d) 1, at ¶ 164 (emphasis added).

[39] *Id.* at ¶¶ 163-71.

[40] *Id.* at ¶ 171.

[41] *Id.* at ¶ 172.

091

Canadian legal authority.[42]  However, there is no British Columbia case law contrary to *Privest*

and we decline to create a different interpretation of the statute where a British Columbia court

has already spoken directly on the issue.  The single British Columbia claim at issue herein

involved an installation date in the 1960s.  Therefore, the thirty-year ultimate limitations period

expired prior to the April 2, 2001, Bankruptcy Petition Date.

Tolling of Limitations Periods

The Claimants assert that, even if the limitations periods would have commenced at a

date such as to potentially bar their claims, the running of the ultimate limitations periods was

suspended.

Fraudulent Concealment

First, the Claimants contend that the limitations periods were postponed by Debtors'

fraudulent concealment of the injury for which the remedial order is sought.  British Columbia's

ultimate limitations period continues to run despite fraudulent concealment.[43]  Therefore, this

---

[42] Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re:
Canadian Statute of Limitations, Doc. No. 17059, at 7, n.6.

[43] *Edwards Estate*, 2008 BC.C. LEXIS 581, at *16 ("On the face of the legislation, it
seems clear that the 30 year period runs despite a postponement under s. 6 of the running of time
in an action '(d) based on fraud or deceit;' and '(e) in which the material facts relating to the
cause of action have been willfully concealed'").

10

092

argument could only apply with respect to the Alberta[44] and Manitoba[45] claims. While the

Claimants have produced numerous exhibits[46] in an attempt to support a claim of fraudulent

concealment, the miscellaneous exhibits are not identified in any way or supported by an

affidavit. Because the Claimants have not satisfied the basic evidentiary standards, the court will

not consider these exhibits.[47] Despite the fact that the Claimants' pleadings contain allegations

---

[44] "(1) The operation of the limitation period provided by section 3(1)(b) is suspended during any period of time that the defendant fraudulently conceals the fact that the injury for which a remedial order is sought has occurred. (2) Under this section, the claimant has the burden of proving that the operation of the limitation period provided by section 3(1)(b) was suspended." Limitations Act, R.S.A., ch. L-12, § 4. Section 3(1)(b) provides the ultimate limitations period.

[45] "Where the existence of a cause of action has been concealed by fraud of the person setting up this Part or Part II as a defence, the cause of action shall be deemed to have arisen when the fraud was first known or discovered." Limitation of Actions Act, R.S.M., ch. L150, § 5. Part II of the Act contains §14(4), which is the ultimate limitation provision.

[46] In Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re: Canadian Statute of Limitations, Doc. No. 17059, at 12-15, Claimants made various allegations of Debtors' fraudulent concealment. In support of these allegations, Claimants state that "[e]vidence of Grace's concealment is demonstrated in Exhibits 1-145 submitted in the Court's binder prior to the September 10, 2007 hearing." Id. at 12, n.11. There is no indication that these exhibits were admitted into evidence, and they were submitted with no accompanying affidavit, exhibit list, certificate of authenticity, or any description of what the documents purport to be or how, if at all, they have any bearing on the matters at bench.

[47] The following is a partial, illustrative list of the documents submitted: unnumbered page one of Exhibit 2 appears to be a patent for "light weight moulded articles and methods of making the same," Exhibit 3 appears to be an undated advertisement for Monokote without any identification as to its circulation, and Exhibit 7 is titled "Information Kits/Booklets Distribution Breakdown" and is also undated. Claimants have not shown how the documents are related to this Motion. The exhibits were submitted without a document list, description, or affidavit, or identification of any kind. We have not even a proffer as to what the documents purport to be and, apparently are left to our own devices to figure that out. Claimants should produce a competent witness for that purpose and have not. Despite their burden in opposing summary judgment, Claimants failed to satisfy the most basic standards for admission of these documents into evidence. We have no evidence or proffer of authenticity, relevance, or exceptions to hearsay. In short, we have no principled way to relate these exhibits to the matter at bench. We

(continued...)

11

of fraudulent concealment, Claimants, as the non-moving parties, cannot "rely merely on allegations or denials in [their] own pleading."[48] In addition, while the fraudulent concealment alleged does not have to rise to the level of deceit or common law fraud, in order to argue equitable fraud under Canadian law, a special relationship must exist between the parties.[49] The Canadian Claimants have not shown that a special relationship exists between them and Debtors to support a fraudulent concealment argument based on equitable fraud. Therefore, the court has no evidence to conclude that the ultimate limitations periods were suspended by fraudulent concealment.[50]

---

[47](...continued)

do not know the source of these documents or how they came into the possession of Canadian Claimants' counsel. We have no foundation to consider these exhibits as evidence and we do not consider them. *Cf. Lexington Insurance Co. v. Western Pennsylvania Hospital*, 423 F.3d 318, 329 n. 6 (3d Cir. 2005) ("Our Court has not precluded reliance on unauthenticated documents to oppose a motion for summary judgment, so long as they are ultimately 'reducible to admissible evidence'"). In *Lexington*, the court had both testimony and circumstantial evidence of authenticity of the document, which the court found to provide a sufficient foundation. *Id.* We do not.

[48] Fed. R. Civ. Pro. 56(e).

[49] In order to toll the limitations period, the fraudulent concealment alleged "need not amount to deceit or common law fraud." *Guerin v. Canada*, [1984] 2 S.C.R. 335, 390, 1984 S.C.R. LEXIS 492, at *94. However, in order to demonstrate equitable fraud, there must have been "conduct which, having regard to some special relationship between the two parties concerned, is an unconscionable thing for the one to do towards the other." *Id.*

[50] Notwithstanding the failure of the Claimants to produce evidence in support of fraudulent concealment, it is unlikely that a fraudulent concealment argument could succeed given the facts. According to *Ambrozic v. Burcevski*, "[t]he limitation period will not be suspended if the plaintiff could have uncovered the fraud but did not make reasonable inquiries." [2008] 90 Alta. L.R. (4th) 247, at ¶ 25, 2008 AB.C. LEXIS 633, at *15-16 (Alta. C.A. May 22, 2008). Similarly, the Supreme Court of Canada, stated that "[i]t is well established that where there has been a fraudulent concealment of the existence of a cause of action, the limitation period will not start to run until the plaintiff discovers the fraud, or until the time when, with reasonable diligence, he ought to have discovered it." *Guerin*, 2 S.C.R. at 390, 1984 S.C.R.

(continued...)

094

### Anderson Memorial Hospital's Class Action Complaint

The Claimants' second argument for tolling of the limitations periods is based upon

Anderson Memorial Hospital's Class Action Complaint, which was filed in a South Carolina

Court of Common Pleas in 1992.[51]  Given the date the complaint was filed, the class action

tolling argument would not affect the expiration of the ultimate limitations periods with regard to

the Alberta and Manitoba claims, which expired by 1986.  Therefore, the only issue is whether

the filing of the South Carolina complaint suspended the ultimate limitations period with respect

to the single British Columbia claim.  British Columbia has a statute governing when the filing

of a class action suspends a limitations period.[52]  Based on the language of the British Columbia

Class Proceedings Act, it is clear that it does not apply to suspend the limitations period in these

---

[50](...continued)

LEXIS 492, at *94.  In *Canadian Indemnity Co. v. Canadian Johns-Manville Co.*, the Supreme
Court of Canada addressed the awareness of the risks of asbestos within the insurance industry.
[1990] 2 S.C.R. 549, 596, 1990 S.C.R. LEXIS 36, at *84.  The court recognized that "asbestos-
related health risks had spread well beyond the boundaries of industry knowledge and were in
wide public circulation" in 1970.  *Id.* at 597, 1990 S.C.R. LEXIS 36, at *86.  There can be no
fraudulent concealment of that which is public knowledge.  Therefore, even if the limitations
periods were tolled until 1970, both Alberta's ten-year limitations period and Manitoba's thirty-
year limitations period would have expired by the Bankruptcy Petition Date, April 2, 2001.

[51] In its response to Debtors' Motion, Anderson Memorial Hospital states that "these
Canadian claimants have filed claim forms...referencing the Anderson Memorial Hospital class
litigation....That litigation was ongoing at the time the Debtors' bankruptcy petition was filed,
and the Canadian claimants filing under that class action are entitled to have the statute of
limitations tolled....Because these claims were subject to class proceedings, the statutes of
limitations have been suspended since 1992."  Doc. No. 14898, at 6.  We note that the proofs of
claim forms were actually filed by Speights & Runyan, the same firm attempting to be class
counsel.  However, in this Circuit, it is clear that Anderson Memorial Hospital does not have
authority to represent the Canadian Claimants.  *In re W.R. Grace & Co.*, 2009 U.S. App. LEXIS
5281, at *4-5 (3d Cir. Mar. 11, 2009) (holding that the role of class counsel in a South Carolina
class action does not provide authority to file proofs of claim in bankruptcy proceedings).

[52] Class Proceedings Act, R.S.B.C., ch. 50.

13

095

circumstances.

First, the Class Proceedings Act provides for suspension of a limitations period where it would be reasonable for a person to assume that he would be included as a member of the class.[53] Due to South Carolina's "door closing statute,"[54] it would be unreasonable for any of the Canadian Claimants to believe that they would be included as class members. The door closing statute prohibits those who are not residents of South Carolina from suing foreign corporations in that State unless the claims arose or the property was situated in South Carolina. The statute "controls the eligibility of class members in a class action where the defendant is a foreign corporation."[55] The Debtors are corporations created by or under the laws of states other than South Carolina and are "foreign" corporations within the meaning of the South Carolina statute.[56] The claims asserted by the Canadian Claimants did not arise in South Carolina or

[53] "If a person has a cause of action, a limitation period applicable to that cause of action is suspended . . . in the event that . . . (b) when the proceeding . . . is commenced, it is reasonable to assume that, if the proceeding were to be certified...(ii) the person would be included as a member of the class on whose behalf the cause of action would be asserted . . . ." R.S.B.C., ch. 50, § 38.1.

[54] S.C. Code Ann. §15-5-150.

[55] *Farmer v. Monsanto*, 579 S.E.2d 325, 328 (S.C. 2003). In the Anderson Memorial action, the South Carolina court found that the door closing statute would not permit the court to "assert jurisdiction over the claims of non-resident potential class members...whose claims do not arise in South Carolina or whose property at issue is not situated within this state." *Anderson Memorial Hospital v. W.R. Grace & Co.*, No. CIV. A. 92-CP-25-279, 1994 WL 1744074 at *1 (S.C.Com.Pl. Aug. 8, 1994). Although the South Carolina Supreme Court in *Monsanto* found that §15-5-150 did not determine subject matter jurisdiction but rather dealt with capacity to sue, the Canadian Claimants would nonetheless have been excluded from the class by the door closing statute. "Limiting the class to members who qualify under § 15-5-150 simply excludes class members who would otherwise have no access to [South Carolina] courts via individual lawsuits." *Monsanto*, 579 S.E.2d at 328.

[56] *Anderson Memorial Hospital*, 1994 WL 1744074 at *2 (S.C.Com.Pl.) ("It is undisputed (continued...)

14

096

involve property located in South Carolina.[57]  Based on the door closing statute, the tolling

provision does not apply here.

Second, the tolling argument must fail because the Class Proceedings Act does not apply

to proceedings that may be brought in a representative capacity under another statute.[58]  Clearly,

Anderson Memorial Hospital did not file under British Columbia's Class Proceedings Act.  In

addition, the Act does not apply to representative proceedings commenced before the Act came

into force.[59]  The British Columbia Legislature did not pass the Act until 1995, well after the

filing of the 1992 Anderson Memorial South Carolina Complaint.  Therefore, the Act does not

apply to the South Carolina action.

Conclusion

For the foregoing reasons, the court concludes that there is no genuine issue of material

fact in dispute and as a matter of law summary judgment in favor of Debtors is appropriate.  The

---

[56](...continued)
that the defendants in this action are corporations created by or under the laws of states other
than South Carolina").

[57] *Id.* at *1 ("Anderson's proposed class would include claims by purported class
members who are not residents of South Carolina and whose buildings at issue are not located in
South Carolina").

[58] R.S.B.C., ch. 50, § 41(a). In support of their class action tolling argument, the
Canadian Claimants rely upon the Class Proceedings Act and *Currie v. McDonald's Restaurants
of Canada Ltd.*, [2005] 74 O.R.3d 321, 2005 Ont. Rep. LEXIS 22 (Ont. C.A. Feb. 16, 2005).
Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment Directed to
88 Claims From Canada Based upon the Statute of Limitations, Doc. No. 14898, at 6-8.  The
Canadian Claimants cited no other statute in support of the proposition that a foreign class action
could toll the British Columbia limitations period.  With respect to the *Currie* case, the case was
not decided in British Columbia, did not apply British Columbia law, and did not address tolling
of limitations periods.

[59] *Id.* at § 41(c).

15

097

applicable ultimate limitations periods have expired and no evidence has been produced to show that the limitations periods were tolled. Therefore, the remaining thirty-five Canadian Asbestos Property Damage Claims are disallowed and expunged.

Counsel for Debtors shall serve a copy of this Memorandum Opinion and accompanying Order on all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.

DATE: Dated: 4/14/2009
14:52:01

Judith K. Fitzgerald    cjs
United States Bankruptcy Judge

16

098

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR DISTRICT OF DELAWARE

IN RE:

| | |
|---|---|
| W.R. GRACE & CO., et al.<br>Debtor(s) | Bankruptcy No. 01-01139<br>Chapter 11<br>**Related to Dkt. No. 14597** Debtors' Motion and<br>Memorandum for an Order Pursuant to F.R.B.P.<br>7056 Disallowing and Expunging Eighty-Eight (88)<br>Time-Barred Canadian Asbestos Property Damage<br>Claims |

### ORDER

AND NOW, this 14th day of ___April___, 2009, for the reasons expressed in the

foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, and DECREED** that claim

numbers 011620, 011632, 012377, 012388, 012394, 012410, 012412, 012421, 012422, 012423,

012438, 012439, 012442, 012443, 012454, 012457, 012489, 012496, 012498, 012500, 012501,

012503, 012537, 012541, 012542, 012546, 012548, 012549, 012554, 012557, 012570, 012576,

012590, 012591, and 014885 are hereby disallowed and expunged as barred by the applicable

Canadian ultimate limitations periods.

**IT IS FURTHER ORDERED THAT** counsel for Debtors shall serve a copy of this

Memorandum Opinion and accompanying Order on all parties in interest who do not receive

electronic notice and shall file a certificate of service forthwith.

Dated: 4/14/2009
14:50:53

_Judith K. Fitzgerald_
Judith K. Fitzgerald                cjs
United States Bankruptcy Judge

1

099

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND IN THE MATTER OF GRACE CANADA, INC.

Court File No: 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE

Proceeding commenced at Toronto

30TH REPORT OF RICHARD C. FINKE
INFORMATION OFFICER

OGILVY RENAULT LLP
Barristers & Solicitors
Royal Bank Plaza, South Tower
Suite 3800, 200 Bay Street
Toronto, Ontario M5J 2Z4

DERRICK C. TAY
LSUC #21152A
Tel:    416.216.4832
Fax:    416.216.3930

ORESTES PASPARAKIS
LSUC #36851T
Tel:    416.216.4815
Fax:    416.216.3930

Solicitors for Grace Canada, Inc.

DOCSTOR: 1700814\2

Court File No. 01-CL-4081

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC.

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

PROCEEDING COMMENCED AT
TORONTO

## MOTION RECORD OF REPRESENTATIVE COUNSEL
(Settlement Approval – December 8, 2009)

**SCARFONE HAWKINS** LLP
Barristers & Solicitors
One James Street South
14th Floor
P.O. Box 926, Depot 1
Hamilton, Ontario
L8N 3P9

**DAVID THOMPSON (28271N)**
thompson@shlaw.ca
**MATTHEW G. MOLOCI (40579P)**
moloci@shlaw.ca

Tel : 905-523-1333
Fax: 905-523-5878

**LAUZON BÉLANGER INC.**
Barristers and Solicitors
286, rue St-Paul Ouest, Bureau, 100
Montreal, (Québec)
HY2 2A3

**YVES LAUZON**
ylauzon@lauzonbélanger.qu.ca
**MICHEL BÉLANGER**
mbelanger@lauzonbélanger.qc.ca
**CAREEN HANNOUCHE**
Careen.hannouche@lauzonbélanger.qc.ca
Tel : 514-844-7612
Fax: 514-844-7009

Representative Counsel for
CDN ZAI Claimants

RCP-E 4D (July 1, 2007)