## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO.,** *et al.*, | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| **Debtors.** | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING THIRTY-FIFTH QUARTERLY FEE APPLICATION OF KIRKLAND & ELLIS LLP FOR THE INTERIM PERIOD OF OCTOBER 1, 2009 THROUGH DECEMBER 31, 2009

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Thirty-Fifth Quarterly Fee Application of Kirkland & Ellis LLP for the Interim Period of October 1, 2009 through December 31, 2009 (the "Application").

### BACKGROUND

1.       Kirkland & Ellis LLP ("K&E") was retained as counsel to the Debtors.  In the Application, K&E seeks approval of fees totaling $3,387,893.00 and expenses totaling $966,793.14 for its services from October 1, 2009 through December 31, 2009 (the "Application Period").

2.       In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2010, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, Issued January 30, 1996 (the "U.S. Trustee Guidelines"), as well as for consistency with

precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served an initial report on K&E based on our review, and we received a response from K&E, portions of which response are quoted herein.

**DISCUSSION**

3.      In our initial report, we noted that on October 13-14, 2009, 14 K&E professionals and paraprofessionals attended the confirmation hearing.  The total time spent, including non-working travel, was 230.6 hours for $98,802.50 in fees.  See Exhibit "A."  Paragraph II.D.5. of the U.S. Trustee Guidelines provides: "If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  We asked K&E to explain why it was necessary for each attorney and legal assistant to be present.  K&E provided a response which we have included as Response Exhibit "1."  We appreciate K&E's response and, consistent with the response, we recommend a reduction of $365.00 in fees.

4.      We noted that on October 7, 2009, attorneys Theodore L Freedman ($915), Lisa G Esayian ($735), Andrew R Running ($735), Elli Leibenstein ($685), and Barbara M Harding ($635) attended a hearing.  The total time spent was 10.5 hours, for total fees of $7,662.50.

| | | | | |
|---|---|---|---|---|
| 10/7/2009 | Lisa G Esayian | 1.80 | 1,323.00 | Participate in telephonic hearing re Speights issues. |
| 10/7/2009 | Theodore L Freedman | 2.00 | 1,830.00 | Participate in telephonic hearing on discovery issues. |
| 10/7/2009 | Elli Leibenstein | 1.50 | 1,027.50 | Participate in hearing re P. Zilly and H. La Force depositions. |
| 10/7/2009 | Barbara M Harding | 3.40 | 2,159.00 | Attend telephonic hearing re motion to compel (3.4); . . . . |

| 10/7/2009 | Andrew R Running | 1.80 | 1,323.00 | Confer with J. Baer re telephonic hearing on Anderson Memorial's motion to compel (.2); listen to court hearing re Anderson Memorial motion (1.6). |
|-----------|------------------|------|----------|---|
| | | 10.5 | $7,662.50 | |

In light of the Guideline cited above, we asked K&E to explain why it was necessary for each attorney to attend the hearing. K&E provided a response which we have included as Response Exhibit "2." We accept K&E's response and have no objection to these fees.

     5.     We noted the following time entry in which there is a discrepancy between the total time billed and the time recorded in parentheses:

| 10/2/2009 | Kristina Alexander | 6.10 | 2,226.50 | Conduct additional research re section 501(e)(1)(B) issues (.7); confer with N. Kritzer and T. Freedman re claims defenses (.5); confer with team (.5); review objections to successor claims injunction (1.0); create document listing objections and compile with excerpts of relevant briefs (2.2); confer with N. Kritzer re same (.2). |
|-----------|--------------------|------|----------|---|

The time recorded in parentheses totals 5.10 hours, and thus it appeared that there was an overcharge of $365.00. In response to our inquiry, K&E stated: "K&E agrees with the fee reduction of $365.00 suggested in the Initial Report." We appreciate K&E's response and recommend a reduction of $365.00 in fees.

     6.     We noted the following car service charges which appeared excessive without more information:

| 9/18/2009 | 4,775.63 | Regency Global Transportation Group LTD - Local Transportation, Car service for attorneys/staff during confirmation hearing to/from hotel/courthouse/airport, 9/8/09 thru 9/15/09 |
|-----------|----------|---|

| | | |
|---|---|---|
| 10/7/2009 | 1,865.00 | Regency Global Transportation Group LTD - Local Transportation, Car service for attorneys/staff during confirmation hearing to/from hotel/courthouse/airport, 9/16/09 thru 9/18/09 |
| 10/20/2009 | 2,591.75 | Regency Global Transportation Group LTD - Local Transportation - Car Service for WR Grace Confirmation Hearings - To/From Airport, Hotel, Reed Smith (worksite) and Courthouse, 10/11/09 thru 10/15/09 |

In response to our inquiry, K&E provided the itemized invoices for each charge and stated as follows:

> These charges are for car service for the period from September 8, 2009 through September 18, 2009, and again for the period from October 11, 2009 through October 15, 2009, and were incurred in connection with the Phase 2 confirmation hearings. Each day during these periods, various K&E attorneys and support staff, representatives of the Debtors, and Debtors' witnesses needed to travel to and from Court, meeting sites, the airport, and their respective hotels. It was usually very important for these individuals to get from Point A to Point B as quickly as possible, and taxi service was not readily available in Pittsburgh to move people to and from these myriad locations throughout the day and evening. Having pre-booked car service allowed individuals to avoid waiting for taxicabs, and was also safer, in that team members could avoid waiting for taxicabs after dark. Team members were working late into the evening from Reed Smith's new offices, which are quite a longer distance from the hotels at which Debtors' trial team were staying than Reed Smith's former offices.

We would ordinarily expect professionals to utilize taxi service for the short trip from the hotel to the court house or from Reed Smith's offices to the court house (both less than one mile). However, in this particular instance, we understand the difficulty of shuttling a dozen or so professionals, paraprofessionals, and witnesses back and forth throughout the day on a relatively tight schedule. Nevertheless, we inquired of K&E as to why rental of multiple cars would not have been a more practical and inexpensive alternative to car service. K&E responded:

> The car service was to get attorneys, clients, witnesses and support staff to destinations as quickly as possible. Local counsel did not use it. In the mornings,

the car would drive people from the office to Court and/or from the office to meetings with David Bernick, our lead trial lawyer, at his hotel.  Sometimes we would bring materials back and forth to David and the eTrial graphics folks late in the evening at the hotel or the office.  In the evenings, we would also have the car drive people from the office to the hotels.

The car service allowed large numbers of people to get around quickly. There were upwards of 10-20 different people using the car on any given day with these multiple runs to and from the office, the courthouse, etc.  I do not know why the car company would list an individual name in some instances and then a firm name in other instances, but most of the time, multiple people took the car at the same time as their schedules allowed.  For example, I generally finished up working at the same time as Justin Brooks and Nate Kritzer at my firm, so we shared the car back to the hotel in the evenings.  But someone like Kim Love was on a different schedule from me, working on different projects, so she may have shared with another legal assistant or even gone by herself places. Kim was also a point person to take materials back and forth to the courthouse.

We possibly could have rented a couple of cars to do this shuttle service ourselves, but then we would have had to devote at least one person to be the driver and that would have taken away from the staff working to complete various projects.  Also, we would have needed to pay for parking at both the office and hotels. There was also no place to park by the US Steel building (the courthouse) and having the car service "on call" allowed folks to bring things back and forth to the courthouse, hotels, and office in the most efficient way. Therefore, we believe the car service provided a more efficient alternative to car rentals.

Based on the number of people which K&E needed to transport at any given time (10 to 20), it appears that K&E would have required three large cars or SUVs–particularly if it was to avoid having to designate one person as driver at all times.   We note that the car service charges for the 11-day period of September 8-18, 2009, totaled $6,640.63.   We estimate that it would cost approximately $6,284.00 to rent three full-size cars or SUVs[1] for 11 days,[2] or approximately $356.63

---

[1]Our estimates are based on the cost of renting a Mercury Grand Marquis, a Lincoln Towncar, or a Chevrolet Tahoe.

[2]We found that it would cost $1,400.00 to rent a large car or SUV in Pittsburgh for an 11-day period, or $4,200.00 if three such vehicles were rented.  Based on the parking rates for the Renaissance Hotel, as well as parking lots at or near the U.S. Steel Tower where the Court is

less than car service.   Because there was only a few hundred dollars difference[3] between the actual

car service charges and our estimate of the cost of three rental cars, and because there are a number

of variables over the course of an 11-day period that could affect the accuracy of our estimate, we

recommend no reduction in this instance.   We then researched the cost of car rental for the five-day

period for which K&E retained car service (at a cost of $2,591.75) and found that three full-size

rental cars or SUVs would cost $2,550.00 for the five-day period, *not* including parking, gas, or tips.

We therefore recommend no reduction of the $2,591.75 car service charge.   Thus, we have no

objection to these expenses.

      7.     We noted the following hotel charges for which more information was needed:

| 12/16/2009 | 4,753.80 | RENAISSANCE PITTSBURGH HOTEL - Travel Expense, Hotel Rooms for 1/2/10 to 1/6/10 (6 rooms, 30 total nights) for hearings |
| 12/17/2009 | 8,823.04 | WESTIN CONVENTION CENTER PITTSBURGH - Travel Expense, Hotel Rooms for 1/2/10 to 1/6/10 (14 rooms, 49 total nights) for hearings |

In response to our inquiry, K&E provided the itemized invoices for both charges and, in addition,

responded as follows:

> Both of these charges are for lodging for trial team members during the final confirmation hearings held in January 2010.   As was the case during the September 2009 confirmation hearings, during the January 2010 hearings, there was limited hotel space available in Pittsburgh, and so the trial team was again spread across the two hotels.

>     (a)    Renaissance Pittsburgh Hotel charges:

---

located, we calculated an additional $1,584.00 for parking, $300.00 for gas (slightly in excess of
one tank of gas for each vehicle), and $200.00 for tips, to arrive at our estimate of $6,284.00.

[3]Spread over the 11-day period, the difference between the cost of the car service and rental cars
computes to approximately $32.00 per day.

12/16/2009    4,753.80    RENAISSANCE PITTSBURGH HOTEL - Travel Expense, Hotel Rooms for 1/2/10 to 1/6/10 (6 rooms, 30 total nights[4]) for hearings

   This charge represents a prepayment for hotel rooms at the Renaissance Pittsburgh Hotel for trial team members for lodging during the confirmation hearings held during the first week of January 2010.  The itemized invoice for the prepayment is attached at <u>Exhibit B</u>.  K&E ended up using 33 room nights during this week, incurring an additional charge of $475.38, which brought the total charge to $5,229.19.  This charge is shown on the final invoice, attached at <u>Exhibit C</u>.  The Renaissance Pittsburgh Hotel is a four star hotel based on the Expedia star rating system.  The per-room per-night cost of $158.46 ($5,229.19 charge for 33 nights) is below the recommended cap for four star hotels.

   As these hotel charges are properly chargeable to the Debtors, K&E respectfully requests full reimbursement.

   (b)    Westin Convention Center Pittsburgh charges:

12/17/2009    8,823.04    WESTIN CONVENTION CENTER PITTSBURGH - Travel Expense, Hotel Rooms for 1/2/10 to 1/6/10 (14 rooms, 49 total nights[5]) for hearings

   This expense is for a prepayment for a second block of hotel rooms for confirmation trial team members for the January 2010 confirmation hearings.  The invoice for this $8,823.04 prepayment is attached as <u>Exhibit D</u>.  K&E ended up using only 44[6] total nights at the Westin, resulting in a final invoice of $7,750.84, attached hereto at <u>Exhibit E</u>.  The Westin refunded K&E the difference ($1,072.20, shown on the last page of <u>Exhibit E</u>), and K&E credited the Debtors with the refunded amount in our February 2010 fee application (filed April 2, 2010, Docket No. 24563).  A copy of the relevant fee application page is attached at <u>Exhibit F</u>.  The Westin

---

[4]The reference to "30 total nights" refers to the cumulative number of hotel rooms expected to be used by hearing team members at the Renaissance Hotel over the January 2nd – January 6th period.

[5]The reference to "49 total nights" refers to the cumulative number of hotel rooms expected to be used by hearing team members at the Westin over the January 2nd – January 6th period.

[6]One night of the 44 was for lodging for Chicago case assistant Maria Gaytan during the October 2009 confirmation hearings.  It was added to the January invoice as it had inadvertently been omitted from the Westin's October invoice.

Convention Center Pittsburgh is a four star hotel based on the Expedia star rating system.  The per-room, per-night cost of $176.16 ($7,750.84 charge for 44 nights) is below the recommended cap for four star hotels.

As these hotel charges are properly chargeable to the Debtors, K&E respectfully requests full reimbursement.

We reviewed the invoices and other exhibits provided by K&E, and we have no objection to these expenses.

8.    We noted the following air fare charges for which more information was needed.

| 9/7/2009 | 1,127.20 | David Bernick, Airfare, New York - Pittsburgh, PA, 09/07/09 to 09/11/09 (Trial) |
| 10/11/2009 | 1,864.20 | Ayesha Johnson, Airfare, Pittsburgh, PA, 10/11/09 to 10/15/09 (Hearing) |
| 10/12/2009 | 872.20 | Ted Freedman, Airfare, Pittsburgh, PA, 10/12/09 to 10/14/09 (Court Hearing) |
| 10/12/2009 | 1,843.21 | Heather Bloom, Airfare, Pittsburgh, PA, 10/12/09 to 10/14/09 (Trial) |
| 10/12/2009 | 827.20 | Justin Brooks, Airfare, Pittsburgh, PA, 10/12/09 to 10/14/09 (Court Hearing) |
| 10/14/2009 | 1,841.20 | Brian Stansbury, Airfare, Pittsburgh, PA, 10/12/09 to 10/14/09 (Court Hearing) |
| 10/25/2009 | 731.69 | David Bernick, Airfare, Chicago - New York, 10/25/09 to 10/28/09 (Hearing) |

In response to our inquiry, K&E provided the information set forth in Response Exhibit "3".  We accept K&E's response and have no objection to these expenses.

9.    We noted the following expenses for professional fees paid to eTrial Communications:

| 9/13/2009 | 220,340.99 | ETRIAL COMMUNICATIONS - Professional fees, Trial Preparation Assistance, Services rendered 8/26/09 - 9/26/09 |

| 10/12/2009 | 22,962.50 | ETRIAL COMMUNICATIONS - Professional fees, Trial Graphic Artist, Services rendered 10/5/09 - 10/11/09 |
| 10/19/2009 | 44,175.00 | ETRIAL COMMUNICATIONS - Professional Fees, Trial Graphic Artist, Services rendered 10/12/09 - 10/18/09 |

In response to our request, K&E provided us with a copy of the itemized invoices comprising these charges. We noted from the invoices that eTrial billed the travel time of its personnel at their full hourly rates, rather than discounting the time by 50% as required by the Local Rules[7]:

| Bryan Eytcheson: Travel--Denver, CO to Pittsburgh, PA Assist law firm with trial preparation and implementation on site | 13 hrs | 9/5/2009 | 3,250.00 |
|---|---|---|---|
| Bryan Eytcheson: Produce PowerPoint, illustrations or Photoshop work Warroom Support — Zilly Day 2 Witness graphics + travel Pittsburgh to Denver | 11 hrs | 9/17/2009 | 2,750.00 |
| Bryan Eytcheson: Visual Consulting: Visual Production – Grace Hearing Timelines, Travel Denver to Pittsburgh, Grace Hearing Board | 13 hrs | 10/05-10/11/2009 | |
| Chris Hazelmann: Technology Consulting — BLV — PIT travel and work on plane; 530a PDT — 730p EDT | 11 hrs | 10/05/09-10/11/09 | |
| Kristen Vanderport: Visual Consulting: Visual Development — 10/11/09; Develop Graphics for Zilly, Motions, Finke, travel to Pittsburgh | 15 hrs | 10/5-10/11/09 | |
| Bryan Eytcheson Warroom Support + Travel Pittsburgh to Denver, CO | 12 hrs | 10/12/09-10/18/09 | |
| Chris Hazelmann …….. travel to BOS | 7 hrs | 10/12/09-10/18/09 | |
| Chris Hazelmann …….. travel BOS to BLV — 6a EDT — 1230p PDT | 9.5 hrs | 10/12/09-10/18/09 | |

[7] *See* Del. Bankr. L.R. 2016-2(d)(viii).

| Kristen Vanderport …….. travel from Pittsburgh | 13 hrs | 10/12/09-10/18/09 | |

We sent a follow-up inquiry to K&E on this issue, and K&E responded:

> We contacted eTrial. They indicated that they generally spend approximately half of their travel time working and half not working, although they do not have any more detailed entries to provide. They indicated that Bryan and Kristen's travel time between Denver and Pittsburgh took approximately 5 hours. Bryan had 4 trips, so if half of the time was non-working, then 10 hours would be non-working travel. His rate is $250.00. We recommend a reduction of $2,500.00. Kristen had 1 trip, so 2.5 hours would be non-working travel. Her rate is $300.00. We recommend a reduction of $750.00.

> For Chris, he was traveling longer distances, but he listed out his travel time separately. He listed a total of 27.5 hours of travel and if half of that time was non-working, we recommend a reduction of $3,437.50 (13.75 hrs at $250/hr).

We appreciate K&E's response, but upon further examination, note that Ms. Vanderport made two trips between Denver and Pittsburgh, not one.[8] Thus, in addition to K&E's voluntary reductions of $6,687.50, we recommend an additional $750.00 reduction, for total reductions of $7,437.50 in expenses.

## CONCLUSION

10.    Thus, we recommend approval of $3,387,163.00 in fees ($3,387,893.00 minus $730.00) and $959,355.64 in expenses ($966,793.14 minus $7,437.50) for K&E's services for the Application Period.

---

[8]In our initial email to K&E, we mistakenly attributed Ms. Vanderport's 10/11/09 trip to Mr. Hazelmann.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**


By:_____
          Warren H. Smith
          Texas State Bar No. 18757050


325 N. St. Paul Street, Suite 1250
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 10th day of May, 2010.


_____
          Warren H. Smith

# SERVICE LIST
## Notice Parties

**The Applicant**
Deanna Boll
Holly Bull
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

dboll@kirkland.com
hbull@kirkland.com

**The Debtor**
Richard Finke
Assistant General Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Co-Counsel for the Debtors**
Laura Davis Jones, Esq.
James R. O'Neill
Pachulski, Stang, Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris LLP
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**
Gary M. Becker
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

**United States Trustee**
David Klauder
Office of the United States Trustee
844 King Street, Suite 2311
Wilmington, DE 19801

**Counsel to the Official Committee of Property**

**EXHIBIT "A"**

| | | | | |
|---|---|---|---|---|
| 10/13/2009 | Nate Kritzer | 7.10 | 2,520.50 | Attend confirmation hearing for issues related to 524(g) argument. |
| 10/13/2009 | Kimberly K Love | 15.00 | 3,750.00 | Prepare and organize materials for court (1.9); attend court to assist with attorney requests (9.0); assist with various attorney requests for confirmation hearing (4.1). |
| 10/13/2009 | Morgan Rohrhofer | 18.30 | 2,745.00 | Prepare materials in court and for 10/14 hearing. |
| 10/13/2009 | Deanna D Boll | | 4.50  3,037.50 | Participate telephonically in confirmation hearing for consideration of hearing testimony re P. Zilly and D. Martin. |
| 10/13/2009 | Brian T Stansbury | 1.50 | 825.00 | Attend confirmation hearing re Daubert issues. |
| 10/13/2009 | Justin S Brooks | 7.30 | 3,029.50 | Attend confirmation hearing for issues related to Zilly testimony. |
| 10/13/2009 | Ayesha Johnson | 13.00 | 2,470.00 | Provide support re plan confirmation trial re R. Finke, D. Martin and P. Zilly. |
| 10/13/2009 | David M Bernick, PC | 12.50 | 11,937.50 | Prepare for and attend confirmation hearing. |
| 10/13/2009 | Lisa G Esayian | 7.00 | 5,145.00 | Attend portions of confirmation hearing re PD issues. |
| 10/13/2009 | Theodore L Freedman | 14.50 | 13,267.50 | Prepare for and participate in trial. |
| 10/13/2009 | Elli Leibenstein | 8.00 | 5,480.00 | Attend hearing re Zilly and Martin issues. |
| 10/14/2009 | Kristina Alexander | 1.00 | 365.00 | Attend telephonic hearing re Libby issue. |
| 10/14/2009 | Nate Kritzer | 6.30 | 2,236.50 | Attend hearing re best interest and pd future claims. |
| 10/14/2009 | Kimberly K Love | 11.50 | 2,875.00 | Prepare and organize materials for court |

|  |  |  |  | (2.3); attend court to assist attorneys with various requests (9.2);...... |
|---|---|---|---|---|
| 10/14/2009 | Maria D Gaytan | 7.30 | 1,058.50 | Prepare and organize various materials for use at trial as requested by various attorneys (7.3);............... |
| 10/14/2009 | Morgan Rohrhofer | 14.50 | 2,175.00 | Assist at court and after hearing with various attorney requests. |
| 10/14/2009 | Brian T Stansbury | 5.50 | 3,025.00 | Attend Daubert hearing and assist D. Bernick with various issues throughout hearing. |
| 10/14/2009 | Heather Bloom | 6.20 | 2,325.00 | Attend and assist D. Bernick and B. Stansbury during hearing re Libby issues. |
| 10/14/2009 | Ayesha Johnson | 13.50 | 2,565.00 | Provide support re plan confirmation trial re Daubert issues (8.0); provide support re conclusion of plan confirmation trial (5.5). |
| 10/14/2009 | David M Bernick, PC | 12.00 | 11,460.00 | Prepare for and attend confirmation hearing. |
| 10/14/2009 | Theodore L Freedman | 12.00 | 10,980.00 | Prepare for and participate in trial. |
| 10/8/2009 | Kimberly K Love | 2.50 | 312.50 | Travel from Chicago, IL to Pittsburgh, PA for hearing (billed at half time). |
| 10/10/2009 | Maria D Gaytan | 2.70 | 195.75 | Travel to Pittsburgh, PA for trial (billed at half time). |
| 10/11/2009 | Morgan Rohrhofer | 3.00 | 225.00 | Travel to Pittsburgh, PA for confirmation hearing (billed at half time). |
| 10/12/2009 | Nate Kritzer | 2.80 | 994.00 | Travel from New York, NY to Pittsburgh, PA for hearing (billed at half time). |
| 10/12/2009 | Brian T Stansbury | 1.00 | 275.00 | Travel from Washington, DC to Pittsburgh, PA for Daubert hearing (billed at half time). |
| 10/12/2009 | Heather Bloom | 2.30 | 431.25 | Travel from Washington, DC to Pittsburgh, PA for end of confirmation hearing/Daubert hearing (billed at half time). |

| 10/12/2009 | Elli Leibenstein | 1.00 | 342.50 | Travel to Pittsburgh, PA for hearing (billed at half time). |
|---|---|---|---|---|
| 10/14/2009 | Nate Kritzer | 3.10 | 550.25 | Return travel from Pittsburgh, PA to New York, NY after hearing (billed at half time). |
| 10/14/2009 | Brian T Stansbury | 1.00 | 275.00 | Return travel to Washington, DC from Pittsburgh, PA after Daubert hearing (billed at half time). |
| 10/14/2009 | Heather Bloom | 1.70 | 318.75 | Return travel from Pittsburgh, PA to Washington, DC after hearing (billed at half time). |
| 10/14/2009 | Justin S Brooks | 2.00 | 415.00 | Return travel from Pittsburgh, PA to New York, NY after hearing (billed at half time). |
| 10/14/2009 | Elli Leibenstein | 1.50 | 513.75 | Return travel from Pittsburgh, PA to Chicago, IL after hearing (billed at half time). |
| 10/15/2009 | Kimberly K Love | 2.50 | 312.50 | Return travel from Pittsburgh, PA to Chicago, IL (billed at half time). |
| 10/15/2009 | Maria D Gaytan | 2.50 | 181.25 | Travel back from Pittsburgh, PA to Chicago, IL after hearing (billed at half time). |
| 10/15/2009 | Morgan Rohrhofer | 2.50 | 187.50 | Travel back from Pittsburgh, PA after confirmation hearing (billed at half time). |
| | | 230.6 | $98,802.50 | |

**RESPONSE EXHIBIT "1"**

Multiple Professionals' Attendance on October 13th – 14th, 2009 Confirmation Hearing Dates
(. . . Exhibit "A")

*Kritzer, Love, Rohrhofer, Boll, Stansbury, Brooks, Johnson, Bernick, Esayian, Freedman,*
*Leibenstein, Alexander, Gaytan, Bloom*

The Initial Report requests that we explain the necessity of fourteen K&E professionals' and paraprofessionals' attendance at all or portions of the October 13th – 14th, 2009 Phase 2 confirmation hearings.

As we have previously explained, when K&E has multiple professionals attend a hearing, it is because we have determined that it would be more cost-effective for the professionals involved to attend, rather than having the needed information "trickle down" to them after the hearing. Most of the attorneys on the Grace bankruptcy team are responsible for certain specific subject matters, and, accordingly, attend (in person or telephonically) portions of hearings related to those subjects. This is so that they can immediately answer questions that may arise during the hearing, and it also allows them to undertake any needed follow-up work immediately upon the hearing's conclusion. As a rule, attorneys attend only the portions of a given hearing during which their assigned subject matters are at issue. Two exceptions to this rule are former senior litigation partner David Bernick and senior restructuring partner Ted Freedman. Ted, as senior restructuring counsel to the Debtors, and David, as senior litigator for the Debtors (until his departure from K&E), were the partners in charge of the entire Case, and so participated in and conducted all hearings of significance, including, of course, the confirmation hearings.

As we discussed in our fee response for the thirty-fourth interim period (the "Thirty-Fourth Response"), the Phase 2 confirmation hearings were held in order to address: (i) plan objections of the Libby claimants, (ii) plan objections of holders of indirect personal injury ("PI") or property damage ("PD") trust claims, and (iii) the objections of any other parties not resolved in Phase 1 of the confirmation hearings. As the September hearings ran long, many of the matters on the September agenda were continued to the October confirmation hearings. Those attorneys whose matters did not get resolved at the September hearings needed to attend the October hearings as well.

The October 13th and 14th hearing dates were also used for arguments on Daubert issues and motions *in limine.*

Specifically, significant matters up at the October 13th -14th hearings were:

    (i)       Continuation of Phase 2 confirmation hearings;

    (ii)      Plan Proponents' motion *in limine* to preclude expert testimony of Alan Whitehouse, Arthur Frank, Craig Molgaard, and Terry Spear;

    (iii)     Plan Proponents' motion *in limine* to preclude expert testimony on behalf of

Libby claimants where reliance materials not produced;

(iv)   Plan Proponents' motion *in limine* to preclude expert testimony of individual claimants regarding Grace's culpability and effect of asbestos illness;

(v)    Plan Proponents' objections and counter-designations to objecting parties' and Arrowood Indemnity Company's Phase 2 designations;

(vi)   Motion *in limine* to preclude Libby claimants from identifying additional individual claimants;

(vii)  Motion to exclude testimony of Robert Frezza; and

(viii) Motion to strike untimely deposition designations of Anderson Memorial.

The hearing team role descriptions we provided in the Thirty-Fourth Response and our fee response for the thirty-third interim period (the "Thirty-Third Response") remain accurate, and we refer you to those Responses for full role descriptions.  Below we provide information on hearing team members' specific responsibilities with respect to the October hearings.

Attorney hearing team members – *Bernick, Freedman, Leibenstein, Boll, Esayian, Stansbury, Bloom, Kritzer, Brooks, Alexander*

Former senior litigation counsel David Bernick, together with senior restructuring partner Ted Freedman, conducted the October confirmation hearings on behalf of Grace.  They were involved in all of the matters up at the hearing, David from a litigation perspective and Ted from a bankruptcy perspective, and, as such, their participation was critical. I assisted Mr. Freedman and Mr. Bernick as I am in charge of all plan modifications and any proposed findings of fact and conclusions of law to be submitted to the Court related to confirmation.

D.C. litigation partner Elli Leibenstein worked on many of the matters heard at the October hearings, including PI liability and solvency issues, best interests issues raised by the Libby claimants, and PD estimation issues.  In particular, Elli had worked extensively with Debtors' witness Pamela Zilly in connection with her work on best interests, and, as Ms. Zilly did not complete her testimony at the September hearings, Elli needed to attend the October hearings for its continuation.

Chicago litigation partner Lisa Esayian attended only the October 13th hearing, as the issues for which she was responsible were all heard that day.  PD claimants' attorney Dan Speights had been scheduled to put on several witnesses, and Lisa developed extensive graphics and testimony for use by Debtors' rebuttal witness Richard Finke.  After oral argument regarding Mr. Speights' witnesses and Mr. Finke's potential testimony, none of Mr. Speights' witnesses testified.  However, Mr. Speights' bankruptcy counsel did cross-examine Debtors' witnesses Pamela Zilly and Denise Martin, and, to fulfill her responsibilities with regard to all PD issues, Lisa needed to attend.

D.C. litigation partner Brian Stansbury attended only the portions of the hearings related to Libby claimant issues. Brian was the attorney most directly involved with preparing the expert reports used by the Debtors to rebut the Libby claimants' experts, and he was primarily responsible for the Daubert briefs themselves. He prepared David to respond to arguments made by Libby claimants' counsel, and, throughout the hearing, he responded to specific requests from David.

D.C. litigation associate Heather Bloom was the only associate tasked with Libby-related responsibilities at the October hearings. She attended court on October 14th, assisting Brian and David with issues related to the Debtors' Daubert motion and motions *in limine*. Heather helped create the slides David used in Court, helped prepare his folders, and gathered additional materials needed for court. Additionally, under Brian's supervision, she identified a significant amount of testimony from the Libby experts that K&E used to support the Daubert motion. Heather also responded to various in-court requests from David and Brian related to these matters. Finally, Heather supervised the creation of binders for opposing counsel and the Court regarding the Daubert motion and the motions *in limine*.

New York litigation associate Nathaniel Kritzer attended Court on October 13th in furtherance of his role described in the Thirty-Fourth Response. Nate assisted Ted with the preparation of the Debtors' witnesses and evidence supporting issuance of Section 524(g) injunctions. Nate also drafted sections of the post-trial brief related to 524(g) issues. He worked with Elli to prepare and outline evidence supporting the Debtors' best interests arguments, and Nate attended Court on October 14th to provide support to Elli, managing relevant documents, graphics, and exhibits related to best interests issues. Nate was also responsible for drafting the pre-trial and post-trial feasibility briefs with regard to PD claims, and needed to attend the PD portions of the hearings in order to both provide support to David and to hear evidence for use in the post-trial brief.

New York litigation associate Justin Brooks attended Court on October 13th. He was responsible for assisting David and Elli with solvency issues, and needed to attend the portions of Ms. Zilly's testimony relating to solvency. The issue was a key aspect of all the lender briefs, on which Justin worked both pre-trial and post-trial. Justin also assisted Elli with the best interests and feasibility sections of the post-trial main brief, and needed to hear Ms. Zilly's testimony on these issues as well.

For the reasons described above, K&E respectfully requests approval of all of the October 13th – 14th hearing-related time of these nine attorneys.[9]

---

[9]The tenth attorney whose time is listed on Initial Report Exhibit "A" is New York associate Kristina Alexander. Kristina joined K&E just prior to the October hearings, and her confirmation team role had not yet been determined. She listened to a portion of the hearing mainly to learn some background about certain confirmation-related topics. Her hour of listening to the hearing is more properly categorized as nonbillable training time, and K&E therefore agrees to a fee reduction of $365.00 for her hearing-related time ($365.00 × 1.0 hour).

Hearing Support Team– *Love, Gaytan, Rohrhofer, Johnson*

Chicago legal assistant Kimberly Love headed up the hearing support team in furtherance of her bankruptcy team hearing role described in the Thirty-Third Response.  Kim worked in local counsel's offices, going to court as needed, assisting the hearing team attorneys with preparing the materials that were used in court each day.  Kim prepared, and supervised the other support team members in preparing, trial exhibits, binders of background information, and witness materials. Chicago case assistant Maria Gaytan also conducted hearing tasks to fulfill her confirmation hearing role (described in the Thirty-Third Response).  Maria assisted Kim with hearing matters on October 14th, as the complexity and document-intensiveness of the matters up on that hearing date dictated.[10]

D.C. legal assistant Ayesha Johnson also assisted the hearing team, performing similar tasks as Kim's and Maria's, though Ayesha's main responsibility was to provide support to the trial attorneys in connection with the scheduled examinations of Debtors' witnesses Pamela Zilly, Richard Finke, and Denise Martin.  Prior to the hearing, Ayesha, under Elli's supervision, prepared hearing materials for David's use during Ms. Zilly's testimony.

D.C. case assistant Morgan Rohrhofer was the only K&E paraprofessional stationed in Court for the full session on each hearing date.  She sat at counsel table and was charged with providing exhibits and any other requested materials to the presenting attorneys on the spot.  She was also responsible for recording all exhibits presented and admitted during the hearing and updating the Concordance exhibits database following the hearing.  After Court on October 13th, she assisted the team in preparing for the next day of Court, updating exhibit binders, and preparing and finalizing presentation materials.

For the reasons described above, K&E respectfully requests approval of all of the October 13th – 14th hearing-related time of these four paraprofessionals.

---

[10]As we have discussed previously, K&E does not staff trial teams with multiple assistants in case they are needed; instead, assistants are called up as circumstances require.  For example, Maria Gaytan did not bill to the hearings on October 13th (although available), but stepped in to assist Kim and the hearing team on October 14th with the high volume of work that needed to be done on that date.

## RESPONSE EXHIBIT "2"

October 7th, 2009 Telephonic Hearing

*Freedman, Esayian, Leibenstein, Harding, Running*

Paragraph 5 of the Initial Report lists five attorneys who attended all or portions of the October 7th, 2009 telephonic hearing relating to Anderson Memorial Hospital matters, and requests that we explain the necessity of each of these attorneys' hearing attendance.[11]

At issue in the October 7th hearing were the Debtors' motions *in limine* to preclude the testimony of Anderson Memorial's witnesses William Ewing and Gibson Solomons, and Anderson Memorial's motion to compel the Debtors to provide full and complete deposition answers.

David Bernick (whose time entry is not questioned in the Initial Report) and Ted Freedman participated in the hearing to fulfill their roles described in Paragraph 2 above.

As we have previously described, Chicago litigation partner Lisa Esayian was responsible for PD claims issues in general. By the time of the October 7th hearing, Mr. Speights, as Anderson Memorial's counsel, was the only remaining PD claimants' counsel with claims still at issue in the Case. Lisa had deposed witness Gibson Solomons before the hearing, and had drafted the Debtors' motions *in limine* to exclude the testimony of Mr. Solomons and Mr. Ewing. Lisa prepared David to argue these issues. It was necessary for Lisa to participate in the October 7th hearing because if those two witnesses were going to be permitted to testify at the October 13th – 14th Phase 2 confirmation hearings, she would have been the attorney responsible for preparing the Debtors' cross examinations.[12]

Elli Leibenstein had responsibility for Pamela Zilly and Hudson LaForce, the Debtors' witnesses on financial and feasibility issues, and two of the witnesses that Anderson Memorial argued should be required to provide further deposition answers. Elli attended the hearing in order to answer questions and address issues as they arose, as well as to enable him to prepare for the October Phase 2 hearings with regard to these issues.

D.C. litigation partner Barbara Harding attended the hearing because she had previously defended Anderson Memorial's deposition of Grace's general counsel, Mark Shelnitz. At the

---

[11]This hearing was telephonic only, and each attorney we describe as attending the hearing did so via telephone.

[12]The Court ruled that Mr. Ewing would be precluded from testifying at the October Phase 2 confirmation hearings. Mr. Solomons was scheduled to testify at the Phase 2 hearings, but, after oral arguments on October 13th, Mr. Speights agreed to take Mr. Solomons off his witness list.

October 7th hearing, Anderson argued (in connection with its motion to compel) that Mr. Shelnitz should be required to disclose information which K&E argued was privileged or irrelevant. Because Barb had defended Mr. Shelnitz's deposition, had handled the negotiations with Anderson Memorial's counsel, and had prepared many of the relevant demonstratives, it was critical that she be available during this portion of the hearing to answer any questions or address any issues that arose.

Chicago litigation partner Andrew Running attended the portion of the hearing related to Anderson Memorial's motion to compel. In the week prior to the hearing, Andy reviewed the relevant transcripts and prepared the summary table of deposition testimony and objections that K&E provided to the Court and that David used as the basis for the Debtors' argument in opposition to the motion. Andy attended the hearing in order to be able to answer any questions that arose regarding the summary table or other issues regarding the Debtors' arguments against the motion to compel.

For the reasons described above, K&E respectfully requests reimbursement in full for all of the time related to the October 7th telephonic hearing.

## RESPONSE EXHIBIT "3"

In response to our inquiry, K&E provided the following information:

Regarding airfare in general, due to the frequency with which professionals are forced to change or cancel flight reservations as a result of rescheduled or cancelled meetings and/or hearings, K&E typically purchases refundable airfare tickets.  While the airlines require a premium for this option, it is often more economical to pay the refundable ticket premium than pay for unused tickets or pay the change penalty.  Additionally, with regard to airfares between Washington, D.C. and Pittsburgh, PA, these prices are particularly high because there is only one carrier that provides non-stop service between the two cities.  K&E makes every effort to minimize travel expenses.

All of the airfares except David Bernick's October 25th airfare are for travel to and from the confirmation hearings in Pittsburgh.

Each airfare listed in the Initial Report, followed by the requested information, is set forth below.

a.    <u>David Bernick - 9/7/09</u>

9/7/2009    1,127.20    David Bernick, Airfare, New York - Pittsburgh, PA, 09/07/09 to 09/11/09 (Trial)

This charge is for a one-way New York, NY – Pittsburgh, PA flight on September 7th.  David had booked a coach class round-trip ticket for travel from New York to Pittsburgh on September 7th, returning to New York on September 11th, but, on his outgoing flight date, due to numerous delays and the ultimate cancellation of his original flight, he booked a separate one-way ticket in order to reach Pittsburgh in time for the September 8th hearing.  He was forced to purchase a first-class ticket as that was the only seating available.  The ticket price includes a $35 baggage fee.

b.    <u>Ayesha Johnson - 10/11/09</u>

10/11/2009    1,864.20    Ayesha Johnson, Airfare, Pittsburgh, PA, 10/11/09 to 10/15/09 (Hearing)

This charge is for a coach class round-trip ticket for travel from Washington, D.C. to Pittsburgh, PA, on October 11th, with return travel on October 15th.   The price includes baggage fees of $50.  The airfare was the lowest available for a fully refundable, coach class ticket at the time of booking.

c.    <u>Ted Freedman - 10/12/09</u>

| 10/12/2009 | 872.20 | Ted Freedman, Airfare, Pittsburgh, PA, 10/12/09 to 10/14/09 (Court Hearing) |

   This charge is for a coach class round-trip ticket for travel from New York, NY, to Pittsburgh, PA, on October 12th, with return travel to New York, NY, on October 14th. The price includes baggage fees of $45. The airfare was the lowest available for a fully refundable, coach class ticket at the time of booking.

   d. <u>Heather Bloom - 10/12/09</u>

| 10/12/2009 | 1,843.21 | Heather Bloom, Airfare, Pittsburgh, PA, 10/12/09 to 10/14/09 (Trial) |

   This charge is for a coach class round-trip ticket for travel from Washington, D.C. to Pittsburgh, PA, on October 12th, with return travel on October 14th. The airfare was the lowest available for a fully refundable, coach class ticket at the time of booking.

   e. <u>Justin Brooks - 10/12/09</u>

| 10/12/2009 | 827.20 | Justin Brooks, Airfare, Pittsburgh, PA, 10/12/09 to 10/14/09 (Court Hearing) |

   This expense is for a coach class round-trip ticket for travel from New York, NY, to Pittsburgh, PA, on October 12th, with return travel on October 14th. Baggage fees of $100 ($50 each way) are included in the cost. The airfare was the lowest available for a fully refundable, coach class ticket at the time of booking.

   f. <u>Brian Stansbury - 10/14/09</u>

| 10/14/2009 | 1,841.20 | Brian Stansbury, Airfare, Pittsburgh, PA, 10/12/09 to 10/14/09 (Court Hearing) |

   This charge is for the cost of a coach class round-trip ticket for travel from Washington, D.C. to Pittsburgh, PA, on October 12th, with return travel on October 14th. The airfare was the lowest available for a fully refundable, coach class ticket at the time of booking.

   g. <u>David Bernick - 10/25/09</u>

| 10/25/2009 | 731.69 | David Bernick, Airfare, Chicago - New York, 10/25/09 to 10/28/09 (Hearing) |

This charge is for the cost of a fully refundable, coach class one-way ticket from Chicago, IL to New York, NY, on October 25th. David flew into New York the evening before the October 26th omnibus hearing in Wilmington, DE (early on October 26th, he took the Amtrak train from New York to Wilmington). The price of this airline ticket was the lowest available for a fully refundable, coach class ticket at the time of booking.

As each of these airfares was properly billed to the Debtors, K&E respectfully requests full reimbursement for the cost of these flights.