# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

RECEIVED
JUL 22 2003
JCW

| | |
|---|---|
| IN RE : | Chapter 11 |
| : | Bankruptcy No. 01-1139 |
| W.R. GRACE & CO., et al., : | through 01-1200 |
| : | |
| Debtors. : | |
| : | District Court |
| : | Civil Action No. 02-1549 |
| CAROL GERARD, ALFRED : | |
| PENNOCK, BILLIE SCHULL, : | |
| et al., : | |
| : | MEMORANDUM OPINION |
| Defendants-Appellants, : | |
| : | |
| v. : | |
| : | |
| W.R. GRACE & CO., INC., : | |
| et al., : | |
| : | |
| Plaintiffs-Appellees. : | |

**WOLIN, District Judge**

This matter is opened before the Court on an appeal pursuant to 28 U.S.C. § 158(a)(1) from an Order of the Bankruptcy Court denying the motion of certain asbestos claimants Carol Gerard, Alfred Pennock, Billie Schull, and others (the "Asbestos Claimants") to clarify or modify the scope of a preliminary injunction entered by the Bankruptcy Court pursuant to Section 105 of the Bankruptcy Code. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1292(a)(1) in the exercise of its

jurisdiction over interlocutory orders with respect to injunctions. The matter has been decided upon the written submissions of the parties. For the reasons set forth below, the appeal will be granted and the Order of the Bankruptcy Court will be modified.

## BACKGROUND

On April 2, 2001, debtor, W.R. Grace & Co. ("Grace") filed its petition in the Bankruptcy Court in the District of Delaware for relief under Chapter 11 of the Bankruptcy Code, and contemporaneously sought temporary restraints and a preliminary injunction of asbestos-related claims against itself and a defined set of affiliates and co-insured non-debtor affiliates. The effect of these Orders was to stay the Asbestos Claimants' claims against Grace, but not claims made against Grace's former liability and workers compensation insurer, Maryland Casualty Company, in which the asbestos claimants had asserted independent tort causes of action against Maryland Casualty.

The Temporary Restraining Order and Preliminary Injunction also stayed prosecution of all asbestos-related actions against Grace's affiliated entities, as defined in the Order, where the alleged exposure to asbestos was allegedly caused by Grace directly or indirectly. The Order specifically covered non-

debtor affiliates which might be entitled to coverage under Grace's insurance for asbestos-related claims.

On May 1, 2001, Grace applied to the Bankruptcy Court, requesting that Maryland Casualty be added as a party protected by this injunction, attaching a Settlement Agreement dated September 1, 1991. On May 3, 2001, the Bankruptcy Court granted the preliminary injunction, specifically enjoining actions against Maryland Casualty. After applications to modify the injunction to add other affiliated entities and extended hearings, the Bankruptcy Court on January 22, 2002 entered an Order continuing the preliminary injunction and barring actions against Maryland Casualty arising from exposure to asbestos directly or indirectly allegedly caused by Grace.

Less than two weeks later, claimant Carol Gerard filed a motion to clarify the scope of the preliminary injunction, or in the alternative to modify it. She further sought leave to proceed against Maryland Casualty in a pending state court action in Baltimore, Maryland. Shortly thereafter, claimants Alfred Pennock, Billie Schull and other asbestos claimants on this appeal filed similar complaints against Maryland Casualty in Montana. On June 20, 2002, the Bankruptcy Court denied Gerard's motion and stayed both her pending action in Maryland and the other claimants' actions in Montana. A motion to reconsider

3

followed, which was denied by an Order dated September 12, 2002. After denial of their motions to reconsider, these claimants sought review of the Bankruptcy Court's decision through this appeal, which is opposed by both Maryland Casualty and Grace.

The factual background of appellants' claims is relevant to their appeal. These Asbestos Claimants seek damages for asbestos-related injuries alleged to have occurred to them as residents of Libby, Montana, a town of approximately 2,600 near which Grace operated a mining, milling and processing facility for vermiculite. The vermiculite mine was 10 miles north of Libby and was operated by Grace from 1963 until 1990. The mine yielded ore used to create zonolite, an insulating material originally produced for the Zonolite Company which was purchased by Grace in 1963. Grace continued operation of the mine from 1963 until 1990. The zonolite ore contained tremolite asbestos, asserted to be 10 times more carcinogenic and fibrogenic and hundreds of times more productive of mesothelioma than the more typical chrysotile asbestos, which has been the subject of most asbestos litigation. The processing of zonolite at the plant apparently removed much of the tremolite asbestos from the eventual product, but generated high volumes of tremolite-containing dust, allegedly causing injury to both the plant workers, their families, and other members of the community. It

is contended that those who have been diagnosed with tremolite asbestos disease have approximately a 76% likelihood of progressing from mild to moderate to severe asbestos disease, a rate three times that of chrysotile asbestos exposure.

Historically, the first civil complaints were by former employees. Later, however, family members exposed to the tremolite dust brought home on employees' clothing brought suit, joined after 1995 by non-employees and Libby residents living near the mine.[1] The earlier complaints generally involved diagnosed asbestosis or other serious disease. The more recent complaints generally alleged no current impairment.[2] Plaintiff Carol Gerard lived and worked in Libby, Montana for a period of time, and asserted that she had been exposed to dust in the air and on mine workers' clothing at her place of business. The other Asbestos Claimants are former Grace employees or their family members.

Maryland Casualty Company was Grace's primary general liability insurer through June 30, 1973. It also issued worker's

---

[1] The first worker's compensation claims for asbestos-related diseases related to the Libby mine were presented to Grace in 1967, and in 1984 the first civil complaint was filed. Although the mine was closed in 1990, the complaints continued to be filed, but increased dramatically in 1997.

[2] 216 cases relating to Libby Mine exposure were filed against Grace; 83 were settled for nearly $22 million, 11 were dismissed, and 122 were pending at the time of the Grace Chapter 11 filing.

compensation policies covering the site. Following litigation between Grace and Maryland Casualty concerning the insurance coverage for the then-pending thousands of asbestos-related claims, Grace and Maryland Casualty entered into a Settlement Agreement on September 1, 1991. The Settlement Agreement (1) provided that Grace was to receive a cash settlement which would exhaust the aggregate policy limits on Maryland Casualty's primary policies, (2) indemnified Maryland Casualty against specified future claims under its policies, and (3) discharged Maryland Casualty's obligations under the policies for asbestos-related claims against Grace. The terms of this Agreement will be analyzed in more detail, _infra_.

The Asbestos Claimants have asserted that, as Grace's worker's compensation carrier from June 30, 1962 to June 30, 1973, and specifically commencing in 1964, Maryland Casualty, through its engineering division and medical division, undertook to design an industrial hygiene program to control and prevent asbestos dust in Libby, Montana under the rubric "Maryland Casualty Safety Program." In doing so, these Asbestos Claimants contend that Maryland Casualty undertook a duty to the workers, their families and the community of Libby, Montana to exercise reasonable care in relation to the program. They allege that

Maryland Casualty both negligently and intentionally failed to fulfill this duty, as defined by Montana law.

The Asbestos Claimants list five areas of wrongful conduct: (a) omitting to educate workers about the hazards of asbestos exposure, (b) failing to warn workers' families and the community of these hazards, (c) taking insufficient measures to establish standards for dust control through housekeeping, ventilation and exhaust air cleaning, (d) omitting sufficient measures and standards for the maintenance of equipment and premises, and (e) providing insufficient medical monitoring programs. They further assert that Maryland Casualty's staff included industrial hygienists and medical doctors with expertise in occupational diseases, that it was well aware of the hazards of asbestos exposure, that it knew that such exposure existed at the Grace operations, and that workers were contracting diseases and dying from this exposure, an on-going hazardous condition.

The Asbestos Claimants claim to possess statements from Maryland Casualty's staff's records showing a geometric increase in people dying of asbestos disease and with abnormal chest X-rays, and evidence that Maryland Casualty knew that there was a lack of showers and coveralls for the workers and that workers went home each day into the community covered with asbestos dust, a hazard to all who might come in contact with them. The

7

Asbestos Claimants have defined the specific areas of negligence, not only in the insurer's inadequate recommendation of control procedures, but also in its engaging in reckless and intentional misconduct, including the concealment of the asbestos hazard it had agreed to address. In fact, as far back as 1967, Maryland Casualty's counsel allegedly indicated that there were efforts to suppress the extent and severity of the problems and to prevent Montana's Industrial Accident Board from obtaining information concerning the results of this asbestos contamination.

## DISCUSSION

This Court may review the legal determinations of the Bankruptcy Court *de novo* after assessing any facts found by the Bankruptcy Judge for clear error, with any exercise of discretion reviewed solely for abuse of discretion. See In Re Professional Insurance Management, 285 F.3d 268, 282-83 (3d Cir. 2002); Interface Group-Nevada, Inc. v. Trans World Airlines, Inc. (In Re Trans World Airlines, Inc.), 145 F.3d 124, 130 (3d Cir. 1998). Of course, there is also *de novo* review where the Bankruptcy Court has determined how to apply the law to its factual findings. See In Re O'Brien Environmental Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999). This case involves matters of law and the application of legal standards in the issuance of an injunction. These issues are being considered *de novo*.

The asbestos claimants, in their application to the Bankruptcy Court and to this Court, have made it clear that they are seeking leave to pursue their state remedies against Maryland Casualty solely with respect to Maryland Casualty's independent tort liability. They disavow any intention to press claims based upon Grace's Maryland Casualty's policies or for the insurer's vicarious liability for Grace's torts. The claimants acknowledge that their claims against Grace must await resolution in or as directed by the pending bankruptcy proceedings. They also acknowledge that any judicial findings made in the course of the litigation of state claims against Maryland Casualty will not be binding upon Grace in any subsequent proceeding. They specifically eschew any collateral estoppel impact in any later action.

Against this background, Maryland Casualty and Grace urge this Court to uphold the Order of the Bankruptcy Judge that the claims against Maryland Casualty for its own torts are barred by the Bankruptcy Code. Specifically, they assert that the claims against Maryland Casualty "relate to" the pending bankruptcy claims against Grace. The Judiciary Code, at 28 U.S.C. § 1334(b), establishes jurisdiction in the Bankruptcy Court if the cause of action in question "arises under," "arises in," or is "related to" a case under Title 11. There is no question in this

9

proceeding that the claims against Maryland Casualty arose neither under the Bankruptcy Code nor in a pending case. The sole issue, therefore, is whether the claims of the asbestos claimants are "related to" the Grace bankruptcy proceeding.

This Court has had an opportunity to treat this issue in detail in In re Federal-Mogul Global, Inc., 282 B.R. 301 (D. Del. 2002), in which the Third Circuit's controlling authority, Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984) was analyzed and quoted at length. There must be a nexus between the related civil proceeding and the Title 11 case, with the core of the test being "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy" 282 B.R. at 305 (quoting Pacor, 743 F.2d at 994). Pacor further explained that a civil proceeding would be considered "related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." Id. at 994. Common issues of fact are insufficient. Id. In Federal-Mogul, this Court held that

> The narrow holding of Pacor was that a mere common-law indemnity claim by a non-debtor co-defendant of a debtor will not "alter the debtors rights, liabilities, options, or freedom of action (either positively or negatively)" in a way that "impacts on the handling and administration of the bankruptcy estate." [Pacor, 743 F.2d] at 994. That common

facts would be litigated against the co-defendant did not matter, because no resolution of a factual issue would be binding on the debtor's estate.

282 B.R. at 306.

This Court declined to follow the Sixth Circuit's contrary view of this issue set forth in In re Dow Corning Corp., 86 F.3d 482 (6th Cir. 1996), cert. denied, 519 U.S. 1071 (1997). 282 B.R. at 308-09 (noting possible points of distinction between Pacor and Dow Corning and observing that "to the extent that the reasoning of the Sixth and Third Circuits conflict, this Court must follow that of the Third"). Reviewing Third Circuit decisions following Pacor, this Court restated the rule: "that related-to bankruptcy jurisdiction will not extend to a dispute between non-debtors unless that dispute, by itself, creates at least the logical possibility that the estate will be affected." Id. at 309.

On the other hand, as noted in Federal-Mogul, a guarantee or indemnification by the debtor of an otherwise unrelated party may bring a common claimant's suit against the indemnitee within the jurisdiction of the Bankruptcy Code. 282 B.R. at 311-12. The example discussed in Pacor was In re Brentano's, 27 B.R. 90 (Bankr. S.D.N.Y. 1983), reconsidered after remand In re Brentano Inc., 36 B.R. 90 (S.D.N.Y. 1984). Reviewing the case law following Pacor, the Court in Federal Mogul found that, without

11

more, a bare indemnification agreement by the debtor may not suffice to create to find related-to jurisdiction. 282 B.R. at 310-11. Indeed, in Brentano, the indemnitor was the largest unsecured creditor of the debtor and also was liable for eleven other guarantees it had made of the debtors other lease obligations. Consequently, an action by a creditor against the indemnitee could have affected the status of the other creditors, and therefore the administration of the debtor's estate. However, the court's have noted that "the clear implication of [Pacor discussion of Brentano's] is that, if there had been a contract to indemnify, a contrary result would have been in order." In re A.H. Robins Co., Inc., 788 F.2d 994, 1001 (4th Cir.), cert. denied, 107 S. Ct. 251 (1986).

As a result, Maryland Casualty takes refuge in its Settlement Agreement with Grace, specifically Grace's indemnification of Maryland Casualty from future claims. The Court finds little comfort for Maryland Casualty there, however. The indemnification provision in the Agreement clearly relates solely to claims against Maryland Casualty based on the liability of Grace, or claims made under the policies. It does not cover the insurer's direct liability to third parties for its own acts or omissions.

The applicable portion of the Agreement reads:

12

Grace-Conn. agrees to indemnify and hold Maryland harmless at all times from and after the effective date of this Agreement from and against any and all liability loss, cost or expense (excluding attorneys fees and other defense costs) imposed upon or incurred by Maryland as a result of any known or unknown, past, pending, future, or threatened claims, rights, demands, lawsuits, causes of actions or proceedings that:

(1) are asserted or initiated against Maryland by any Person (including, without limitation, Other Insurers, Bodily Injury Indemnitees, Bodily Injury Claims Plaintiffs, Property Damage Indemnitees, Property Damage Claims Plaintiffs); and

(2) arise out of any one or more of the following:

i) claims which involve liability or alleged liability on the part of Grace-Conn. subject to the Aggregate Product Limits set forth in any of the Primary Policies issued by Maryland to Grace-Conn. for the period of 6-30-1962 to 6-30-1973;

ii) Asbestos-Related Claims that are covered, or have been or may be alleged by Grace-Conn. to be covered, by any of the Primary Policies;

iii) the existence or extent of Maryland's obligations to any Person with respect to claims involving liability or alleged liability on the part of Grace-Conn. subject to the Aggregate Product Limits set forth in any or the Primary Policies issued by Maryland to Grace-Conn. for the period of 6-30-1962 to 6-30-1973;

iv) the existence or extent of Maryland's obligations to any Person with respect to Asbestos-Related Claims that are covered, or have been or may be alleged by Grace-Conn. to be covered, by any of the Primary Policies; or

v) payments made by Maryland under this Agreement or otherwise with respect to Asbestos-Related Claims that are covered, or have been or may be alleged by Grace-Conn. to be covered, by any of the

13

> Primary Policies, or with respect to any other liability or alleged liability on the part of Grace-Conn. subject to the Aggregate Product Limits set forth in any of the Primary Policies issued by Maryland to Grace-Conn. for the period of 6-30-1962 to 6-30-1973.

A737-78.

The Settlement Agreement neither in its general terms nor in it specific indemnification language provides for Grace to indemnify Maryland Casualty for Maryland Casualty's own negligence. The Agreement relates only to insurance coverage and establishes that the settlement was complete with respect to all Maryland Casualty's insurance obligations for asbestos-related claims against Grace.

Moreover, the plain language reading of the Agreement is the most reasonable. One would not expect that a settlement agreement between insurer and insured would cover more than the then-existing claims under the policies extant and in dispute at the time the settlement agreement was entered into. There was no issue between Grace and Maryland Casualty relating to the insurer's independent responsibility for its own torts. Nowhere within the four corners of the agreement is there the slightest hint that Grace so indemnified Maryland Casualty.

After careful review of the contractual indemnification language and the nature of the Asbestos Claimant's tort claims

14

against Maryland Casualty, it is clear that the debtor's estate will in no way be affected by a remand of the independent claims against Maryland Casualty to the Montana and Maryland State Courts. As was argued by the claimants to the Bankruptcy Judge, and has been reasserted here, there is no substantial burden upon Grace's attorneys or management. This is true for several reasons. Among them are: (1) All documentary evidence is contained in a repository in Boston. There is an existing database of the documents, and the repository searches are regularized without involvement of Grace's current management. (2) Similar issues in cases against Grace itself have been tried five times to verdict in Montana and the substance of the ongoing cases against Grace (which, of course, have been stayed by the pending bankruptcy) is mature in its proofs. Therefore, any revelations in the Maryland Casualty proceedings are unlikely to have any substantive impact upon later claims against Grace. (3) As to the Maryland Casualty liability, there has been substantial discovery with respect to Grace in its extensive litigation, which resulted in the settlement and indemnity agreement. (4) There are no current Grace employee-witnesses to be deposed, except possibly two retired managers who had already been deposed. The burden on Grace is insignificant while the burden of waiting upon the plaintiffs is substantial.

15

Grace asserts that evidence derived in the state actions will be used against it in later proceedings because admissions under oath or otherwise by an agent of a party will stand, irrespective of the actual parties to that litigation, citing <u>Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.)</u>, 40 B.R. 219, 225 (S.D.N.Y. 1984). As just noted, there are no current employees or agents of Grace with relevant information to this case, and all or nearly all of the evidence is already a matter of record. Former employees are not agents of a corporation, and their statements are not imputed to or considered admissions by such a corporation. See <u>Action Airfreight, Inc. v. Pilot Airfreight Corp.</u>, 769 F. Supp. 899, 902-03 (E.D. Pa. 1991) (citing <u>Anderson v. United States</u>, 417 U.S. 211, 218-19 n.6 (1974)); <u>Jenkins v. Walmart, Inc.</u>, 956 F. Supp. 695, 697 (W.D. La. 1997).

Another non-sequitur in the Maryland Casualty and Grace argument is that because the dust that caused the claimant's injuries came from Grace's mines, Maryland Casualty's obligations must be derivative of the claims against Grace and therefore subject to an active/passive tortfeasor common-law indemnification. As claimants correctly note, the genesis of a particular carcinogenic or fibrogenic element did not generate indemnification responsibility in <u>Federal-Mogul</u> or in <u>Pacor</u>. The

16

fact that the debtors' respective brake pads or asbestos in those cases generated the offending substance did not prevent the courts from permitting independent liability by a third party being the subject of an independent suit.

The Bankruptcy Judge also erred in the basis for assessing the substantive proofs against Maryland Casualty as revealed in the various documents she examined. There was no written opinion, but in oral argument, she responded to the claimants' counsel stating that she saw no independent obligation undertaken by Maryland Casualty to design a dust control system. She also questioned whether the insurer was merely a volunteer rather than a principal, even if there might be such documentation, and then concluded that the insurer acted merely as an agent of the debtor without incurring individual responsibility.

These conclusions, however, were merely opinions concerning whether there might be an eventual basis for independent liability proven against Maryland Casualty. However, the issue before the Bankruptcy Court, and here, is not whether the claimants will or will not be successful in their state court claims. They may or may not prevail; but this is of no moment. If they are successful, they may be paid for their injuries from a source completely independent from the debtor. Such liability is independent from the insurance agreement in that such payment

17

discharges no separate obligation of the debtor to the claimants, nor does it trigger any indemnification of the debtor by Maryland Casualty or of the insurer by Grace. If the claimants are unsuccessful, Grace has no other claims against Maryland Casualty which would have been prejudiced by the state actions. The Settlement Agreement precludes such actions if based on the insurance policies. As noted at the outset, factual issues determined against Maryland Casualty which might be included in a later resolution of the tort claims against Grace are non-existent. Unless later determined or stipulated, any facts in such subsequent proceedings must be proven without any collateral estoppel effect. In short, while the claimants may or may not benefit from their actions against Maryland Casualty, the Grace estate is unaffected.

## CONCLUSION

For the reasons set forth above, the Order of the Bankruptcy Court denying appellants' motion to modify the injunction of the Asbestos Claimants' from prosecuting claims against Maryland Casualty will be vacated. This matter will be remanded for

further proceedings consistent with this Opinion. An appropriate Order is attached.

Dated: July 16, 2003.

*[signature]*
ALFRED M. WOLIN
UNITED STATES DISTRICT JUDGE