IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: June 7, 2010 10:30 a.m.** |
| | | **Re: Docket Nos. 21345, 24407, 24471, 24423** |

## DEBTORS' REPLY IN SUPPORT OF OBJECTIONS TO CLAIMS OF MARYLAND CASUALTY COMPANY

---

[1]    The Debtors consist of the following 62 entities referred to for purposes of this motion as "Grace": W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc.,  CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## INTRODUCTION

Our legal system permits parties to plead in the alternative, to propose modified plans of reorganization, and to revise their factual contentions as the record evolves and rulings are made. Under controlling Third Circuit precedent (discussed in the Argument section below), judicial estoppel may be invoked to bar a party from changing a prior position only in extraordinary circumstances that are not present here. *First*, a party can be judicially estopped only if it assaulted the integrity of the courts by changing its position in bad faith. That did not happen here because Grace changed its position in good faith in response to Judge Wolin's 2003 injunction ruling and has consistently maintained that position since. *Second*, a party cannot be estopped unless it successfully persuaded a court to accept its earlier position. This too did not happen here, as Judge Wolin rejected Grace's initial position on the meaning of the Maryland Casualty Company ("MCC") indemnity, and the Third Circuit ruled on alternate grounds without any finding on the indemnity. *Third*, there can be no estoppel unless the party changing positions gains an unfair advantage or imposes an unfair disadvantage on its adversary. Neither is the case here. Indeed, all that has happened during the pendency of this case is that the injunction has remained in place, thus maintaining the status quo – to the benefit of both MCC and Grace – and preserving all parties' ability to now present a full record on which MCC's indemnity claim can be determined.

## PROCEDURAL AND FACTUAL BACKGROUND

Grace incorporates by reference its detailed recitation of the procedural history from its claim objection (4/21/09 Debtors' Obj. to Claims Filed by MCC, Dkt. No. 21345, hereafter "Cl. Obj.") and summarizes only the highlights here:

**The Policy Settlements.**  MCC was Grace's primary insurance carrier from 1962-73, one of Grace's excess carriers from 1969-75, and Grace's workers comp carrier from 1962-73.  In 1991, MCC and W.R. Grace & Co.-Conn entered into a settlement agreement for the primary policies in which, essentially, MCC paid a substantial sum in exchange for exhaustion of its coverage obligations and indemnification by Grace against any future claims that might be asserted against MCC arising out of its primary coverage obligations that were being settled. Two similar settlements for the excess coverage were agreed to in 1996.[2]  Grace and MCC agree that the indemnities given to MCC by Grace in the three settlement agreements (the "Indemnities") are not unlimited.  Thus, both parties agree that the Indemnities do not extend to claims relating to MCC's own independent tortious conduct – such as a hypothetical claim against an MCC employee who runs over a pedestrian in Libby, Montana with a truck (MCC 3/5/10 Response, Dkt. 24407, hereafter "MCC Resp.," at 12-13) – but disagree about what constitutes an "independent" MCC tort.

**The MCC Lawsuits.**  Libby, Montana plaintiffs filed three lawsuits against MCC germane to this claim objection: *Gerard*, filed in Maryland state court before the petition date by Libby residents, and *Pennock* and *Schull*, filed in Montana state court after the petition date by current and former Grace employees and family members (collectively, the "MCC Lawsuits" filed by the "Libby Plaintiffs"; *see* complaints, Exs. A, B and C to Grace Cl. Obj.).  The MCC Lawsuits allege, *inter alia*, that MCC negligently undertook to design an industrial hygiene

---

[2]   The workers compensation policies were never settled.  Two of the three primary and excess settlement agreements were admitted at the confirmation hearing as Exs. MCC-1 and MCC-2 and are incorporated by reference herein; the third settlement agreement will be offered into evidence at any evidentiary hearing on this contested claim.  In light of the page limit for this brief, and in an effort not to burden the Court with excess paper, copies of these agreements are not attached to this brief.  If the Court so requests, Grace would be pleased to provide an exhibit binder.

program in Libby, consequently owed a duty to Grace employees and Libby residents, and

breached that duty by negligently and intentionally concealing MCC's extensive knowledge of

asbestos hazards and failing to take appropriate safety steps. (*See* Cl. Obj. ¶¶ 21-32.)

**The Injunction Proceedings.** In a series of motions and hearings before this Court in

2001 and 2002, Libby Plaintiffs challenged whether the MCC Lawsuits were properly within the

section 105 injunction applicable to lawsuits that could affect Grace's estate. Libby Plaintiffs

gave mixed messages about whether or not the MCC Lawsuits involved Grace liability or

otherwise affected Grace. At most times, they asserted that the suits were independent of Grace

conduct, liability and insurance coverage and related only to MCC's independent conduct (*e.g.*,

5/20/02 Hrg. Tr. at 17, Mr. Parker, Bankr. Dkt. No. 2162), in support of their argument that the

injunction did not apply. But when pressed by this Court, Libby Plaintiffs conceded that their

theory of the case was that MCC was liable in its capacity "as the agent for the debtor," adding

that "if a good plaintiff's lawyer is handling the case, everyone's going to get sued." (*Id.* at 32-

34) Grace's liability as a principal was clearly implicated by this *respondeat superior* theory.

Grace argued that the injunction was necessary because the MCC Lawsuits could affect

Grace in two respects. In a practical sense, the Libby Plaintiffs and/or MCC would point the

finger at Grace and take active discovery of Grace and its employees, burdening the estate and

potentially locking in testimony unfavorable to Grace (so-called "evidentiary prejudice") unless

Grace participated actively. In a legal sense, the MCC Lawsuits could affect Grace because

(a) there might be collateral estoppel effects on Grace and (b) MCC claimed that "Grace agreed

to indemnify and defend Maryland" for any potential liability. (*Id.* at 14) This Court agreed

with Grace and MCC, denying Libby Plaintiffs' motion to carve out the MCC Lawsuits from the

injunction. (9/12/02 Order, Adv. Proc. 01-771, Dkt. No. 133)

3

**The Appeal to Judge Wolin.** At the District Court, the Libby Plaintiffs unequivocally

stated that the MCC Lawsuits related solely to MCC's independent tortious conduct:

> After the dangers of asbestos were uncovered, Maryland Casualty,
> Grace's workers' compensation carrier between 1962 and 1973,
> agreed to design an industrial hygiene program that would
> minimize or eliminate the dangers associated with asbestos from
> the vermiculite operation in Libby. Under Montana law, Maryland
> Casualty therefore took on a direct duty to Grace's employees,
> their families and the residents of Libby. Maryland Casualty failed
> to design a program that met even minimum standards and, rather
> than help fix the problem, Maryland Casualty intentionally
> concealed it. (1/27/03 Libby Dist. Ct. Br. at 2, Civ. A. No. 02-
> 1549, Dist. Ct. Dkt. No. 10)

Libby Plaintiffs further argued that the Indemnities are limited to claims against MCC arising

from its insurance coverage obligations and indicate no "intent by Grace to indemnify Maryland

Casualty for claims based on Maryland Casualty's own, independent torts." (3/24/03 Libby Dist.

Ct. Reply Br. at 3, Dist. Ct. Dkt. No. 16)

Recognizing the threat to the estate if the MCC Lawsuits were allowed to proceed and if

Grace were found to owe MCC indemnification, Grace filed a brief with the District Court in

2003 opposing the Libby Plaintiffs' appeal. Most of the Grace statements for which MCC seeks

estoppel come from that brief[3] or from the immediately prior injunction proceedings.

At the District Court, Libby Plaintiffs won and Grace (as well as MCC) lost. Judge

Wolin found that "[t]he asbestos claimants, in their application to the Bankruptcy Court and to

this Court, have made it clear that they are seeking leave to pursue their state remedies against

Maryland Casualty solely with respect to Maryland Casualty's independent tort liability,"

---

[3]    For example, MCC relies on Grace's assertions that the MCC Lawsuits "cannot establish a cause of action
against Maryland that is wholly independent of Grace," that "[a]ny duty Maryland had was derivative of
Grace," that MCC "was acting as no more than Grace's insurer," and that "any claims made by the Libby
Plaintiffs against Maryland trigger the release and a contractual indemnity clause in the Maryland Agreement."
(MCC Resp. at 8-10 (quoting Grace Dist. Ct. Br., Dist. Ct. Dkt. No. 12).)

4

unrelated to the policies or to any Grace liability, and they "specifically eschew any collateral

estoppel impact in any later action" against Grace. (7/16/03 Dist. Ct. Op. at 9, Dist. Ct. Dkt.

No. 19) The District Court held that Grace owed no indemnity obligation for the MCC Lawsuits,

Grace's estate therefore could not be affected if the suits went forward, and thus the Bankruptcy

Court lacked "related to" jurisdiction to extend the injunction to MCC. (*Id.* at 14-18)

   **The Third Circuit Appeal.**  When MCC appealed to the Third Circuit, Grace openly –

and appropriately – changed its position in response to the District Court's findings and the

Libby Plaintiffs' now-unequivocal statements about the MCC Lawsuits' effect on Grace. As

Grace explained in its 2004 Third Circuit brief:

> To the extent the complaints themselves allow for any ambiguity
> on this score, moreover, plaintiffs removed any such ambiguity in
> the proceedings below. As the district court explained, "[t]he
> asbestos claimants, in their application to the Bankruptcy Court
> and to this Court, have made it clear that they are seeking leave to
> pursue their state remedies against [MCC] *solely* with respect to
> [MCC's] *independent* tort liability. They *disavow* any intention to
> press claims based upon Grace's [MCC] policies or for the
> insurer's vicarious liability for Grace's torts." (2/27/04 Grace 3d
> Cir. Br. at 15, No. 03-3453) (citations omitted; italics in original).

Grace told the Third Circuit that it had "no quarrel with" the District Court's rulings so long as

the key underlying premises – "that plaintiffs may pursue wholly independent claims against

MCC, that Grace has no indemnity obligations to MCC for such claims" and that there would be

no collateral estoppel effect on Grace – remained valid. (*Id.* at 1) But in the alternative event

that "any of the premises underlying the district court's decision proves erroneous" – *e.g.*,

(1) that MCC's liability "is not truly independent of Grace," (2) that "Grace may be required to

indemnify MCC" or (3) if MCC Lawsuit findings were to "have collateral estoppel effect against

Grace" – then Grace's initial contentions would still apply. (*Id.* at 1-2)

5

The Third Circuit reversed the District Court and held that this Court had jurisdiction to extend the preliminary injunction to MCC. Significantly for purposes of the judicial estoppel dispute, the Third Circuit made no ruling on the Indemnities – either in Grace's favor or in MCC's favor – and likewise deferred any ruling as to whether or not the MCC Lawsuits alleged conduct by MCC that was truly independent of Grace. The Third Circuit merely upheld the injunction on the more limited grounds that the "prospect of indemnification" made it appropriate to enjoin the MCC Lawsuits and that Grace would be disadvantaged if the MCC Lawsuits were allowed to proceed, both as a "practical" matter (apparently referring to the potential for evidentiary prejudice) and also as a "legal matter" (apparently referring to potential collateral estoppel). *In re W.R. Grace & Co.*, 115 Fed. Appx. 565, 568-569 (3rd Cir. 2004).

**MCC's Contested Claim.** In 2004, MCC filed 62 proofs of claim (collectively, "MCC Claim") asserting that Grace is obligated to indemnify MCC for the MCC Lawsuits. Grace filed its objection in 2009, reiterating the same position it had maintained since the Third Circuit briefing: that the Libby Plaintiffs' allegations about MCC's independent tortious conduct are not covered by Grace's Indemnities. (Cl. Obj. ¶¶ 37, 38) On March 5, 2010, MCC filed its response (Dkt. 24407), arguing judicial estoppel (addressed in Argument Section I below), lack of ripeness (Section II below) and burden of proof (Section III below).

## ARGUMENT

### I.    JUDICIAL ESTOPPEL

Judicial estoppel is an "extraordinary remedy" that applies only "when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996) (citation omitted). Under Third Circuit precedent, it is reserved for situations where a party has "assaulted the dignity or

6

authority of the court," *Montrose Med. Group Part. Sav. Plan v. Bulger*, 243 F.3d 773, 781 (3d Cir. 2001), "play[ed] 'fast and loose with the courts,'" *Scarano v. Cent. R.R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953), committed "intentional wrongdoing," *Ryan*, 81 F.3d at 362-63,[4] or "purposefully misle[d] the court," *Behrend v. Comcast Corp.*, 626 F. Supp. 2d 495, 510 (E.D. Pa. 2009).

The mere fact that a party changed a position during the course of a case is insufficient to impose judicial estoppel. *Montrose*, 243 F.3d at 782. That is because, just as pleading in the alternative "is specifically sanctioned by the Federal Rules, asserting inconsistent claims within a single action obviously does not constitute misconduct that threatens the court's integrity." *Id.*

Although the elements of judicial estoppel may not be "reducible to any general formulation of principle," the Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), set forth three principal factors:

(1)    "[A] party's later position must be 'clearly inconsistent' with its earlier position;"

(2)    "[T]he party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'"; and

(3)    "[T]he party seeking to assert an inconsistent position would derive an unfair advantage or impose unfair detriment on the opposing party if not estopped." *Id.* at 751 (citations omitted).

In the Third Circuit, two additional factors apply:

(4)    The party being estopped must have acted in bad faith. *Montrose*, 243 F.3d at 784. This is an "essential requirement for the application of judicial estoppel." *Whiting v. Krassner*, 391 F.3d 540, 544 (3d Cir. 2004); *Montrose*, 243 F.3d at 777, 779.

---

[4]    Citing *Total Petroleum, Inc. v. Davis*, 822 F.2d 734 (8th Cir. 1987) (judicial estoppel applies only to deliberate inconsistencies that are "tantamount to a knowing misrepresentation to or even fraud on the court").

K&E 16552119

(5)    Estoppel may be imposed only if it is "tailored to address the harm
identified" and no lesser sanction would provide an adequate remedy. *Id.*
at 779-80 (citation omitted).

As shown below, MCC cannot satisfy these requirements.

## A.    Grace Modified Its Position With Transparency and In Good Faith, In Response To Court Findings.

In the Third Circuit, courts have interpreted the first prong to require that the party not

only took "clearly" inconsistent positions, *see New Hampshire*, 532 U.S. at 750, but also

"irreconcilably" inconsistent positions, *see Montrose*, 243 F.3d at 779.  This prong involves bad-

faith considerations similar to the fourth prong.  If a party changed its position for legitimate,

good-faith reasons, then the new position cannot be "irreconcilable" with the prior position.

Rather, it is a rational, good-faith change and cannot be estopped.

Grace has never disputed that it changed certain of its positions regarding the MCC

Lawsuits.  It did so transparently and properly, in response to Judge Wolin's 2003 ruling, and has

maintained its position ever since.

As noted above, during the 2001 and 2002 preliminary injunction proceedings before this

Court, the Libby Plaintiffs gave mixed signals about whether and to what extent the MCC

Lawsuits affected Grace.  Grace made two main arguments for enjoining the MCC Lawsuits:

practical impacts relating to discovery, and legal impacts such as potential collateral estoppel or

potential indemnity obligations.

When the injunction was appealed to Judge Wolin, Libby Plaintiffs stated unequivocally

that the MCC Lawsuits did not relate to Grace conduct, liability or coverage, but related solely to

MCC's independent tortious conduct (both intentional and negligent).  (Libby 1/27/03 Br. at 3,

Dist. Ct. Dkt. No. 10)  They further disavowed "any collateral estoppel impact" on Grace if the

MCC Lawsuits were to proceed.  *Id.* at 21-22, 25.  Based on these representations, Judge Wolin

8

found that the MCC Lawsuits alleged independent torts based solely on MCC's own conduct, unrelated to Grace insurance coverage or liability, and that Grace owed no indemnity for MCC Lawsuit claims. Accordingly, Judge Wolin found that subject-matter jurisdiction to enjoin the MCC Lawsuits was lacking. (7/16/03 Dist. Ct. Op. at 9, Dist. Ct. Dkt. No. 19)

In direct response to this ruling, Grace modified its position in its Third Circuit brief. Assuming the District Court was correct that the MCC Lawsuits were wholly independent of Grace conduct and liability, then "Grace has no quarrel with the district court's conclusion," albeit Grace's prior position remained valid in the event the District Court's premises turned out to be erroneous. (2/27/04 Grace 3d Cir. Br. at 1-2, No. 03-3453) Grace's position has remained unchanged since then. There can be no bad faith where, as here, the modifications in Grace's position (1) were open and transparent with all courts and parties, (2) were good-faith responses to court rulings, and (3) have been consistently maintained by Grace for more than six years.

### B.    Grace Did Not Convince Earlier Courts To Adopt Its Position.

Judicial estoppel cannot be imposed unless the party succeeded with the position taken before the earlier court. *New Hampshire*, 532 U.S. at 750-51. As the Third Circuit held in *Scarano*, judicial estoppel applies only to a plaintiff who has "*obtained relief* from an adversary by asserting and offering proof to support one position," and is thereafter barred from making "against the same adversary a second claim inconsistent with his earlier contention." *Scarano*, 203 F.2d at 513 (emphasis added).

In *Montrose*, a hospital and its retirement plan contended in a lawsuit that the plan was covered by ERISA and that claims had been timely filed, notwithstanding having taken inconsistent positions on both issues in an earlier suit. 243 F.3d at 778-79. The Third Circuit found no bad faith and no estoppel because the prior suit had settled without the court adopting the prior positions. *Id.* at 781. "[A] party has not displayed bad faith for judicial estoppel

9

purposes if the initial claim was never accepted or adopted by a court or agency." *Id.* at 778. This is because, without judicial acceptance, "it is difficult to see how a later change manifests an intent to play fast and loose with the courts." *Id.* at 782 (internal citation and italics omitted). *See also In re Genesis Health Ventures, Inc.*, 184 Fed. Appx. 197, 201 (3d Cir. 2006) (no estoppel because court did not base ruling on party's prior argument); *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 121 (3d Cir. 1992) ("[W]here a party assumes a certain position in a legal proceeding, and *succeeds in maintaining that position*, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (emphasis added).

The Supreme Court's ruling earlier this year in *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010), is directly on point. In that case, the Second Circuit rejected the position asserted by a party regarding subject-matter jurisdiction; the party then asserted the opposite position before the Supreme Court. *Id.* at 1249. The Supreme Court declined to impose judicial estoppel, quoting with approval its *New Hampshire* holding that estoppel typically applies "when, among other things, a 'party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.'" *Id.* (internal citation omitted).

Similar to the sequence in *Reed Elsevier*, Grace initially asserted a position some eight to nine years ago during the initial injunction proceedings – the MCC Lawsuits were not independent of Grace and triggered the Indemnities – that the lower court (Wolin, J.) rejected. Although MCC makes much of favorable rulings for Grace made by this Court during those early proceedings (MCC Resp. at 2-4), once Judge Wolin reversed those rulings Grace was no

10

longer the successful party, and in any event Grace was not adverse to MCC but was actually

aligned with MCC in the proceedings before this Court. *See Scarano*, 203 F.2d at 513 ("A

plaintiff who has *obtained relief from an adversary* by asserting and offering proof to support

one position may not be heard later in the same court to contradict himself in an effort to

establish against the same adversary a second claim inconsistent with his earlier contention.")

(emphasis added). Nor did the Third Circuit adopt any of the contentions for which MCC now

seeks estoppel. The Third Circuit merely upheld the injunction on more limited grounds

concerning the *prospect* of indemnification, the *prospect* of collateral estoppel and the risk of

evidentiary prejudice if discovery were conducted without Grace counsel present. *See In re W.R.

Grace*, 115 Fed. Appx. at 569. Accordingly, there can be no judicial estoppel here.

### C.  There Is No Unfair Advantage Or Disadvantage If The MCC Indemnities Are Determined On The Merits And Facts, Rather Than By Estoppel.

This is not a situation where, if Grace is not estopped, it would "derive an unfair

advantage or impose unfair detriment on the opposing party." *New Hampshire*, 532 U.S. at 743;

*see also Scarano*, 203 F.2d at 513; *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General

Motors Corp.*, 337 F.3d 315, 325 (3d Cir. 2003) ("The Bankruptcy Court could not accept

Krystal's argument that its creditors were not harmed, and neither can we."). To the contrary,

there was no prejudice to MCC when Grace modified its position before the Third Circuit, and

candidly articulated its reasons why, back in 2004.

MCC was not prejudiced, and indeed fully exercised its right to argue to the Third Circuit

that Grace's "self-contradiction[s]" were "binding judicial admissions." (3/12/04 MCC 3d Cir.

Reply Brief at 2, No. 03-3453)  However, the Third Circuit did not find any assault to the dignity

or authority of the courts and declined even to rule on the meaning of the Indemnities. *In re W.

R. Grace & Co.*, 115 Fed. Appx. at 568 n.2.  Nor has MCC suffered any prejudice in the

11

meantime.  Indeed, the net result of the earlier proceedings in this case has merely been to keep the injunction in place and maintain the status quo – ironically, to MCC's benefit – for nine years with no ruling on the meaning of the Indemnities and no advantage gained or disadvantage suffered by anyone.

In *Armstrong World Indus., Inc.*, 432 F.3d 507 (3d Cir. 2005), the Third Circuit found that the third prong of judicial estoppel – "whether the party changing position would gain an unfair advantage over the opposing party" – was not met in a complex bankruptcy proceeding where events legitimately spurred a change of position.  The Unsecured Creditors Committee ("UCC") joined in negotiations with Armstrong and others, resulting in the UCC's support of an Amended Plan of Reorganization.  *Id.* at 510, 517-518.  Later, however, the UCC objected to Plan confirmation.  Armstrong argued that the UCC was estopped from objecting due to its prior shaping and endorsement of the Plan, but the Third Circuit disagreed because the confirmation process "entitled UCC to lodge an objection against the Plan before the objection deadline," thus negating any prejudice to Armstrong from the changed position.  *Id.* at 517-18.

In this case, as in *Armstrong*, the changed position has caused no prejudice.  The record remains a clean slate, and MCC retains the ability to take discovery, present evidence and argue its own interpretation of the Indemnities as part of the contested claim objection process.

**D.**  **Judicial Estoppel Is Neither Tailored Nor Appropriate.**

The final prong in the Third Circuit requires that the sanction of judicial estoppel be "tailored to address the harm identified" and that no other adequate remedy exists.  *Montrose*, 243 F.3d at 784.  But judicial estoppel is neither tailored nor appropriate here.  As noted above, MCC has a fully adequate remedy:  the opportunity to present facts and argument about the merits of what the Indemnities mean.  *See generally* 18B Wright & Miller Fed. Prac. & Proc.

12

Juris. § 4477 (2d ed.) ("Doubts about inconsistency often should be resolved by assuming there is no disabling inconsistency, so that the second matter may be resolved on the merits.")(citation omitted).  In contrast, imposing judicial estoppel would be highly prejudicial to Grace, depriving it of a ruling on the merits of the Indemnities – an outcome that would not be tailored, measured or equitable.

Judicial estoppel is an equitable doctrine, *see New Hampshire*, 532 U.S. at 750, whose purpose is to "secure substantial equity." *Gleason v. U.S.*, 458 F.2d 171, 175 (3d Cir. 1972) (superseded by statute on other grounds, as stated in *Bradshaw v. Gen. Motors Corp.*, 805 F.2d 110 (3d Cir. 1986)).  The most equitable process here would be to deny estoppel and allow the parties to present their respective cases on the merits.

## II.    RIPENESS

Grace is mystified by MCC's argument that its indemnity claims are not ripe.  (MCC Resp. at 12-14)  MCC initiated this proceeding by filing its Claim.  Although the Claim was short on specifics, it appeared to relate to – and MCC has subsequently confirmed (MCC Resp. at 12) that it does relate to – the Indemnities from the 1991 and 1996 settlement agreements, including whether and to what extent they apply to the concrete, current allegations of the MCC Lawsuits. Grace filed its Claim Objection, initiating a contested matter pursuant to Bankruptcy Rule 9014, and that matter is now proceeding with briefing, imminent discovery and – depending on whether the need for a hearing becomes mooted by intervening Plan confirmation rulings – an evidentiary hearing.

13

Courts routinely consider and decide issues of contract interpretation, such as the Indemnities. Such claims are clearly ripe and justiciable.[5] With regard to possible future indemnity claims about which MCC has speculated, no one knows whether any such claims will ever materialize, but that does not prevent the meaning of the Indemnities from being decided now, in the context of MCC's rights against Grace with respect to the pending *Gerard*, *Pennock*, and *Schull* proceedings. *See ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 821-23 (3d Cir. 1981) (reversing district court's ruling that action for breach of contract and declaratory relief was not ripe because "the parties and the facts of the underlying asbestos suits were not before the court," where the factors "determin[ing] the relative duties and benefits" under the contracts at issue were "independent of the underlying claims . . . .").

## III.    MCC, NOT GRACE, HAS FAILED TO MEET ITS BURDEN.

MCC's assertion that Debtors have "not presented any evidence to support their Claims Objection" (MCC Resp. at 14) is incorrect. In its Claims Objection, Grace produced substantial evidence, specifically, the terms of the Indemnities (Cl. Obj. at 8-9; full text to be offered at any evidentiary hearing on this claim) and the allegations of the MCC Lawsuits (*id.* at 12-16 & Exs. A, B and C).

To the contrary, it is MCC that has failed to carry its burden on the Objection. Once an objector produces "evidence sufficient to negate the *prima facie* validity" of a claim, as Grace has done, the "burden reverts to the claimant to prove the validity of the claim by a

---

[5]    To determine whether a controversy is "ripe," the Court must consider, *inter alia*, "the fitness of the issues for judicial decision." *In re Armstrong World Indus., Inc.*, 961 F.2d 405, 411 (3d Cir. 1992) (citing *Abbott Lab. v. Gardner*, 387 U.S. 136, 149 (1967)). Here, the issues are concretely framed for judicial review -- the language of the Indemnities, any admissible parol evidence about their drafting, and the MCC Lawsuit Complaints provide a concrete, current controversy about the meaning of specific Indemnity terms.

14

preponderance of the evidence." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)

(citation omitted). And "[t]he burden of persuasion is always on the claimant." *Id.*

Specifically, MCC failed in its Response even to address the following deficiencies

identified by Grace:

- As matter of law, a party cannot be indemnified for liability arising out of intentional wrongdoing. (Cl. Obj. ¶¶ 45-47.) Thus, to the extent that MCC seeks indemnity from Grace for *intentional* misconduct, MCC's claim must be disallowed. (*Id.*)

- As a matter of law, indemnity provisions cannot be construed to cover the indemnitee's negligence unless required by "unequivocal terms"; here, there is no express (or even implicit) indication of an intent by the Debtors to indemnify MCC for claims based on MCC's own negligence. (*Id.* ¶¶ 41-42.)

- Certain complaints against MCC allege claims arising from the worker's compensation policies issued by MCC to the Debtors. The Debtors never agreed to indemnify MCC for claims related to these policies, and MCC's proofs of claim should be disallowed to the extent that they seek recovery on this basis.[6] (*Id.* ¶¶ 49-55.)

- MCC failed to assert any claims for common law indemnification or contribution in its proofs of claim, despite clearly being aware of such purported claims when it filed its proofs of claim. (*Id.* ¶ 34.)

After Grace produced evidence and/or flagged MCC's utter failure to make any showing

on these bases, the burden shifted to MCC to prove the validity of the claims. *Allegheny*, 954

F.2d at 173-74. MCC failed to meet this burden and, as a matter of law, the defective portions of

MCC's Claim must be disallowed. *See id.*

---

[6] In a footnote, MCC mischaracterized Grace's objection as purportedly saying that the MCC Lawsuits were based "solely" on worker's compensation claims. (MCC Resp. at 14 n.29) In fact, Grace said they were partially based on worker's compensation claims and argued that MCC's claims should be disallowed *"to the extent that* they purport to seek indemnification from the Debtors for [MCC's] alleged liability under the worker's compensation policies that [MCC] provided to the Debtors" (*see* Cl. Obj. ¶¶ 49-55, emph. added) -- an objection to which MCC provided no substantive response whatsoever.

## CONCLUSION

For the reasons stated herein and in its Claims Objection, Grace's Objection to MCC's

Claims should be granted and MCC's Claims should be disallowed.

Dated: May 19, 2010

Respectfully submitted,

KIRKLAND & ELLIS LLP
John Donley
Lisa G. Esayian
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Theodore L. Freedman
Nathaniel Kritzer
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

PACHULSKI, STANG, ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kitty P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

*Counsel for the Debtors and Debtors in Possession*

16

K&E 16552119