## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

**W.R. Grace & Co., et al.**

Debtors.

Chapter 11

Case No. 01-01139 (JKF)

Jointly Administered

**THIRTY-SIXTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM JANUARY 1, 2010 THROUGH MARCH 31, 2010**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **January 1, 2010 – March 31, 2010** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$290,697.25** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$5,468.29** |
| Fees and Expenses of the Asbestos Issues Expert: | |

This is an: ☒ interim ☐ final application

This is the thirty-sixth quarterly application filed.

**Attachment A**

## Monthly Interim Fee Applications

| Date Filed | Period Covered | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02-04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

| | | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|---|
| July 2, 2002<br>D.I.2324 | 05/01/02 –<br>05/31/02 | $74,910.75 | $2,9154.43 (Stroock)<br>$43,190.69 (Chambers) | | $59,928.60 | $46,105.12 |
| August 5, 2002<br>D.I.2495 | 06/01/02 –<br>06/30/02 | $73,096.75 | $2,054.05 (Stroock)<br>$114,666.72 (Chambers) | | $58,477.4011 | $116,720.77 |
| September 20, 2002<br>D.I.2720 | 07/01/02 –<br>07/31/02 | $90,903.27 | $1,250.79 (Stroock)<br>$11,996.25 (Chambers) | | $72,722.61 | $13,274.04 |
| October 29, 2002<br>D.I.2898 | 08/01/02 –<br>08/31/02 | $93,151.25 | $11,539.51 (Stroock)<br>$5,046.70 (Chambers) | | $74,521.00 | $16,586.21 |
| November 14, 2002<br>D.I.2981 | 09/01/02 -<br>09/30/02 | $96,613.25 | $15,567.77 (Stroock)<br>$771.50 (Chambers) | | $77,290.60 | $16,339.27 |
| December 10, 2002<br>D.I.3129 | 10/1/02 –<br>10/31/02 | $68,404.00 | $2,956.54 (Stroock)<br>$1,780.75 (Chambers) | | $54,723.20 | $4,737.29 |
| January 28, 2003<br>D.I.3286 | 11/1/02 –<br>11/30/02 | $75,345.50 | $8,712.16 (Stroock) | | $60,276.40 | $8,712.16 |
| February 7, 2003<br>D.I.3349 | 12/1/02 –<br>12/31/02 | $27,683.50 | $13,332.14 (Stroock) | | $22,146.80 | $13,332.14 |
| March 26, 2003<br>D.I.3552 | 1/1/03 –<br>1/31/03 | $88,139.00 | $1,210.11 (Stroock) | | $70,511.20 | $1,210.11 |
| April 7, 2003<br>D.I.3626 | 2/1/03 –<br>2/28/03 | $76,313.00 | $2,022.78 (Stroock)<br>$1,077.80 (Chambers) | | $61,050.40 | $3,100.58 |
| April 29, 2003<br>D.I.3718 | 3/1/03 –<br>3/31/03 | $60,163.50 | $6,191.15 (Stroock) | | $48,130.80 | $6,191.15 |
| June 2, 2003<br>D.I. 3850 | 4/1/03 –<br>4/30/03 | $60,269.00 | $814.02 (Stroock)<br>$2,043.00 (Chambers) | | $48,215.20 | $2,857.02 |
| July 1, 2003<br>D.I. 3983 | 5/1/03 –<br>5/31/03 | $111,990.50 | $691.84 (Stroock)<br>$3,830.50 (Chambers) | | $89,592.40 | $10,522.34 |
| August 5, 2003<br>D.I. 4152 | 6/1/03 –<br>6/30/03 | $43,824.00 | $1,220.42 (Stroock)<br>$61,755.00 (Chambers) | | $35,059.20 | $62,975.42 |
| September 4, 2003<br>D.I. 4381 | 7/1/03 –<br>7/31/03 | $79,090.50 | $2,301.33 (Stroock)<br>$14,274.25 (Chambers) | | $63,272.40 | $16,575.58 |

|  |  | Payment Requested |  | Payment Approved |  |
|---|---|---|---|---|---|
| September 30, 2003<br>D.I. 4512 | 8/1/03 –<br>8/31/03 | $69,927.00 | $1,164.19 (Stroock)<br>$12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003<br>D.I. 4625 | 9/1/03 –<br>9/30/03 | $69,409.50 | $1,076.94 (Stroock)<br>$10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003<br>D.I. 4843 | 10/1/03 –<br>10/31/03 | $96,980.50 | $3,800.45 (Stroock)<br>$42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004<br>D.I. 4976 | 11/1/03 –<br>11/30/03 | $66,428.50 | $1,225.38 (Stroock)<br>$30,463.00 (Navigant<br>f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004<br>D.I. 5056 | 12/1/03 –<br>12/31/03 | $52,321.50 | $924.99 (Stroock)<br>$27,005.00 (Navigant<br>f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004<br>D.I. 5309 | 1/1/04 –<br>1/31/04 | $65,980.50 | $1,917.93 (Stroock)<br>$47,654.57 (Navigant<br>f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004<br>D.I. 5406 | 2/1/04 –<br>2/29/04 | $90,421.50 | $3,636.48 (Stroock)<br>$35,492.50 (Navigant<br>f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004<br>D.I. | 3/1/04 –<br>3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004<br>D.I. 5803 | 4/1/04 –<br>4/30/04 | $99,136.00 | $3,518.96 (Stroock)<br>$1,515.00 (Navigant<br>February)<br>$49,667.00 (Navigant<br>March)<br>$80,307.11 (Navigant<br>April) | $79,308.80 | $135,008.07 |
| July 2, 2004<br>D.I. 5917 | 5/1/04 –<br>5/31/04 | $134,324.50 | $2,409.97 (Stroock)<br>$78,360.05 (Navigant<br>May) | $107,459.60 | $80,770.02 |
| August 2, 2004<br>D.I. 6105 | 6/1/04 –<br>6/31/04 | $120,501.00 | $1,831.49 (Stroock)<br>$62,625.00 (Navigant<br>June) | $96,400.80 | $64,456.49 |
| September 9, 2004<br>D.I. 6341 | 7/1/04 –<br>7/31/04 | $72,394.00 | $3,461.84 (Stroock)<br>$40,427.50 (Navigant<br>July) | $57,915.20 | $43,889.34 |

|  |  | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 23, 2004 D.I. 6444 | 8/1/04 – 8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004 D.I 6625 | 9/1/04 – 9/30/04 | $83,903.50 | $1,535.61 (Stroock) $27,142.00 (Navigant August) | $67,122.80 | $28,677.61 |
| December 3, 2004 D.I. 7086 | 10/1/04 – 10/31/04 | $200,155.50 | $1,368.18 (Stroock) $ 24,659.00 (Navigant September) | $160,124.40 | $26,027.18 |
| January 7, 2005 D.I. 7481 | 11/1/04 – 11/30/04 | $218,608.50 | $14,019.09 (Stroock) $25,102.80 (Navigant October) $27,972.34 (Navigant November) | $174,886.80 | $67,094.23 |
| February 2, 2005 D.I. 7667 | 12/1/04 – 12/31/04 | $235,503.70 | $10,442.92 (Stroock) $62,687.97 (Navigant December) | $188,402.96 | $73,130.89 |
| March 15, 2005 D.I. 8026 | 1/1/05 – 1/31/05 | $187,168.00 | $4,411.55 (Stroock) $15,686.00 (Navigant January) | $149,734.40 | $20,097.55 |
| April 1, 2005 D.I. 8155 | 2/1/05 – 2/28/05 | $108,180.25 | $8,102.85 (Stroock) $18,303.37 (Navigant February) | $86,544.20 | $26,406.22 |
| April 29, 2005 D.I. 8305 | 3/1/05 – 3/31/05 | $56,941.25 | $287.23 (Stroock) $6,114.86 (Navigant March) | $45,553.00 | $6,402.09 |
| June 6, 2005 D.I. 8562 | 4/1/05- - 4/30/05 | $127,695.00 | $3,531.45 (Stroock) $20,129.06 (Navigant April) | $102,156.00 | $23,660.51 |
| June 28, 2005 D.I. 8704 | 5/1/05- 5/31/05 | $98,569.00 | $4,871.74 (Stroock) | $78,855.20 | $858.21 |
| August 3, 2005 D.I. 9135 | 6/1/05- 6/30/05 | $114,903.75 | $4,871.74 (Stroock) $34,075.28 (Navigant June) | $91,923.00 | $38,947.02 |
| September 8, 2005 D.I. 9356 | 7/1/05 – 7/31/05 | $117,780.75 | $2,088.44 (Stroock) $2,211.00 (Navigant) | $94,224.60 | $4,299.44 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| October 4, 2005<br>D.I. 9565 | 8/1/05 –<br>8/31/05 | $106,796.25 | $5,046.99 (Stroock)<br>$18,550.00 (Navigant) | $85,437.00 | $23,596.99 |
| November 1, 2005<br>D.I. 10951 | 9/1/05 –<br>9/30/05 | $67,697.50 | $1,399.68 (Stroock)<br>$11,197.50 (Navigant) | $54,158.00 | $12,597.18 |
| November 29, 2005<br>D.I. 11202 | 10/1/05 –<br>10/31/05 | $98,216.75 | $1,611.30 (Stroock)<br>$11,582.50 (Navigant) | $78,573.40 | $13,193.80 |
| January 9, 2006<br>D.I. 11507 | 11/1/05 –<br>11/30/05 | $104,348.00 | $2,847.45 (Stroock)<br>$71,598.50 (Navigant) | $83,478.40 | $74,445.95 |
| January 30, 2006<br>D.I. 11655 | 12/1/05 –<br>12/31/05 | $96,855.00 | $1,379.53 (Stroock)<br>$20,317.49 (Navigant) | $77,484.00 | 21,697.02 |
| March 1, 2006<br>D.I. 11921 | 1/1/06 –<br>1/31/06 | $73.383.00 | $1,810.85 (Stroock)<br>$14,124.01 (Navigant) | $58.706.40 | $15,934.86 |
| March 28, 2006<br>D.I. 12134 | 2/1/06 –<br>2/28/06 | $105,083.75 | $1,434.62 (Stroock)<br>$25,971.70 (Navigant) | $84.067.00 | $27,406.32 |
| May 2, 2006<br>D.I. 12354 | 3/1/06 –<br>3/31/06 | $145,189.50 | $2,512.81 (Stroock)<br>$25,838.37 (Navigant) | $116,151.60 | $28,351.18 |
| May 31, 2006    DI.<br>12558 | 4/1/2006 –<br>4/30/2006 | $116,817.00 | $2,141.42 (Stroock)<br>$7,425.00 (Navigant) | $93,453.60 | $9,566.42 |
| July 6, 2006<br>D.I. 12748 | 5/1/2006 –<br>5/31/2006 | $121,304.50 | $1,838.71 (Stroock)<br>$17,493.75 (Navigant) | $97,043.60 | $19,332.46 |
| August 1, 2006<br>D.I. 12899 | 6/1/2006 –<br>6/30/2006 | $94,856.50 | $1,869.66 (Stroock)<br>$38,548.75 (Navigant) | $75,885.20 | $40,418.41 |
| August 30, 2006<br>D.I. 13117 | 7/1/2006 –<br>7/31/2006 | $97,397.25 | $496.76 (Stroock)<br>$30,280.00 (Navigant) | $77,917.80 | $30,776.76 |
| October 2, 2006<br>D.I. 13336 | 8/1/2006 –<br>8/31/2006 | $131,856.25 | $98.34 (Stroock)<br>$98,317.50 (Navigant) | $105,485.00 | $98,415.84 |
| November 2, 2006<br>D.I. 13559 | 9/1/2006 –<br>9/30/2006 | $150,960.00 | $4,147.01 (Stroock)<br>$91,179.11 (Navigant) | $120,768.00 | $95,326.12 |
| November 29, 2006<br>D.I. 13838 | 10/1/06 –<br>10/31/06 | $196,223.50 | $915.14 (Stroock)<br>$147,374.20 (Navigant) | $156,978.89 | $148,289.34 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| January 12, 2007 D.I. 14292 | 11/1/06 – 11/30/06 | $188,638.00 | $3,370.16 (Stroock) $133,438.70 (Navigant) | $150,910.40 | $136,808.86 |
| January 29, 2007 D.I. 14415 | 12/1/06 – 12/31/06 | $99,832.00 | $5,752.89 (Stroock) $55,245.22 (Navigant) | $79,865.60 | $60,998.11 |
| March 8, 2007 D.I. 14810 | 1/1/07 – 1/31/07 | $77,582.00 | $962.06 (Stroock) $90,474.74 (Navigant) | $62,065.60 | $91,436.80 |
| April 10, 2007 D.I. 15132 | 2/1/07 – 2/28/07 | $119,140.50 | $3,092.88 (Stroock) $77,301.25 (Navigant) | $95,312.40 | $80,394.13 |
| May 1, 2007 D.I. 15457 | 3/1/07 – 3/31/07 | $135,228.00 | $6,635.25 (Stroock) $104,674.53 (Navigant) | $108,182.40 | $111,309.78 |
| June 22, 2007 D.I. 16136 | 4/1/07 – 4/30/07 | $177,646.00 | $815.81 (Stroock) $173,437.45 (Navigant) | $142,116.80 | $174,253.26 |
| July 17, 2007 D.I. 16309 | 5/1/07 – 5/31/07 | $205,937.25 | $6,405.01 (Stroock) $162,431.03 (Navigant) | $164,749.80 | $168,836.04 |
| August 10, 2007 D.I. 16528 | 6/1/07 – 6/30/07 | $225,650.50 | $5,929.97 (Stroock) $200,294.81 (Navigant) | $180,520.40 | $206,224.78 |
| September 14, 2007 D.I. 16822 | 7/1/07 – 7/31/07 | $157,268.50 | $4,021.65 (Stroock) $208,116.54 (Navigant) | $125,814.80 | $212,138.19 |
| October 1, 2007 D.I. 16959 | 8/1/07 – 8/31/07 | $145,866.50 | $3,354.61 (Stroock) $210,152.54 (Navigant) | $116,693.20 | $213,507.15 |
| November 16, 2007 D.I. 17394 | 9/1/07 – 9/30/07 | $206,908.50 | $3,056.89 (Stroock) | $165,526.80 | $3,056.89 |
| December 5, 2007 D.I. 17548 | 10/1/07 – 10/31/07 | $288,976.50 | $22,324.58 (Stroock) $325,509.63 (Navigant) | $231,181.20 | $303,185.05 |
| January 11, 2008 D.I. 17803 | 11/1/07 – 11/30/07 | $249,372.50 | $32,780.40 (Stroock) $162,394.93 (Navigant) | $199,498.00 | $195,175.33 |
| February 1, 2008 D.I. 17957 | 12/1/07 – 12/31/07 | $116,522.50 | $57,717.92 (Stroock) $47,444.43 (Navigant) | $93,218.00 | $105,162.35 |
| March 4, 2008 D.I. 18202 | 1/1/08 – 1/31/08 | $201,472.50 | $3,282.80 (Stroock) $86,070.26 (Navigant) | $161,178.00 | $89,353.06 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| April 5, 2008<br>D.I. 18450 | 2/1/08 –<br>2/29/08 | $195,491.00 | $5,922.25 (Stroock)<br>$73,924.16 (Navigant) | $156,392.80 | $79,846.41 |
| April 29, 2008<br>D.I. 18639 | 3/1/08 –<br>3/31/08 | $275,659.00 | $11,217.17 (Stroock)<br>$69,201.53 (Navigant) | $220,527.20 | $80,418.70 |
| June 4, 2008<br>D.I. 18862 | 4/1/08<br>4/30/08 | $298,888.00 | $10,143.60 (Stroock)<br>$38,800.00 (Navigant) | $239,110.40 | $48,943.60 |
| July 1, 2008<br>D.I. 19032 | 5/1/08<br>5/31/08 | $138,683.50 [1] | $3,649.95 (Stroock) | $110,946.80 [2] | $3,649.95 |
| August 4, 2008<br>D.I. 19224 | 6/1/08<br>6/30/08 | $213,559.00 | $12,357.78 (Stroock)<br>$96.84 (Navigant) | $170,847.20 | $12,454.62 |
| September _, 2008<br>D.I. 19516 | 7/1/08<br>7/31/08 | $206,087.50 | $6,717.13 (Stroock)<br>$259.90 (Navigant) | $164,870.00 | $6,977.03 |
| September 30, 2008<br>D.I. 19653 | 8/1/08<br>8/31/08 | $212,928.50 | $2,326.65 (Stroock) | $170,342.80 | $2,326.65 |
| November 6, 2008<br>D.I. 19949 | 9/1/08<br>9/30/08 | $226,486.50 | $2,844.77 (Stroock) | $181,189.20 | $2,844.77 |
| December 2, 2008<br>D.I. 20168 | 10/1/08<br>10/31/08 | $270,097.00 | $10,611.52 (Stroock) | $216,077.60 | $10,611.52 |
| December 30, 2008<br>D.I. 20384 | 11/1/08<br>11/30/08 | $184,642.00 | $5,870.24 (Stroock) | $147,713.60 | $5,870.24 |
| February 3, 2009<br>D.I. 20654 | 12/1/08-<br>12/31/08 | $102,648.50 | $4,017.80 (Stroock) | $82,118.80 | $4,017.80 |
| March 3, 2009<br><br>D.I. 20906 | 1/1/09<br>1/31/09 | $114,525.00 | $2,458.44 (Stroock) | $91,620.00 | $2,458.44 |
| March 30, 2009<br>D.I. 21152 | 2/1/08<br>2/28/09 | $141,569.00 | $1,627.89 (Stroock) | $113,255.20 | $1,627.89 |
| April 29, 2009<br>D.I. 21475 | 3/01/09<br>3/31/09 | $181,006.75 | $3,270.02 (Stroock) | $144,805.40 | $3,270.02 |

---

[1]    See paragraph 10 herein.

[2]    See paragraph 10 herein.

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| May 29, 2009<br>D.I. 21910 | 4/01/09<br>4/30/09 | $187,588.50 | $1,545.41 (Stroock) | $150,070.80 | $1,545.41 |
| July 1, 2009<br>D.I. 22310 | 5/01/09<br>5/31/09 | $227,989.00 | $9,428.79 (Stroock) | $182,391.20 | $9,428.79 |
| August 6, 2009<br>D.I. 22709 | 6/01/09<br>6/30/09 | $238,611.25 | $5,960.91 (Stroock) | $190,889.00 | $5,960.91 |
| September 25, 2009<br>D.I. 23338 | 7/01/09<br>7/31/09 | $294,766.50 | $17,306.20 (Stroock) | $235,813.20 | 17,306.20 |
| October 5, 2009<br>D.I. 23422 | 8/01/09<br>8/31/09 | $299,544.25 | $7,237.57(Stroock)<br>$2,812.50 (Navigant) | $239,635.40 | $10,050.07 |
| November 13, 2009<br>D.I. 23759 | 9/01/09<br>9/30/09 | $349,937.50 | $20,164.05 (Stroock) | $279,950.00 | $20,164.05 |
| December 1, 2009<br>D.I. 23897 | 10/01/09<br>10/31/09 | $281,050.75 | $12,457.25 (Stroock) | $224,840.60 | $12,457.25 |
| December 30,2009<br>D.I. 24087 | 11/01/09<br>11/30/09 | $219,347.00 | $10,084.80 (Stroock) | $175,477.60 | $10,084.80 |
| January 29, 2010<br>D.I. 24211 | 12/01/09<br>12/31/09 | $117,137.00 | $3,532.36 (Stroock) | $93,709.60 | $3,532.36 |
| March 1, 2010<br>D.I. 24376 | 1/01/10<br>1/31/10 | $193,442.75 | $3,163.37 (Stroock) | $154,754.20 | $3,163.37 |
| March 30, 2010<br>D.I. 24537 | 2/01/10<br>2/28/10 | $56,435.50 | $1,668.29 (Stroock) | $45,148.40 | $1,668.29 |
| April 28, 2010<br>D.I. 24687 | 3/01/10<br>3/31/10 | $42,209.00 | $636.63 (Stroock) | | |

**Quarterly Fee Applications**

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01- 6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43* | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[3] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[4] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |

---

\*   These amounts relate to the Committee's Asbestos Issues Expert.

[3]   Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[4]   Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 20, 2003<br>D.I. 3815<br>(Eighth) | 1/1/03 –<br>3/31/03 | $224,358.50 | $9,424.04<br>$1,077.80* | $224,615.50[5] | $9,424.04<br>(Stroock)[3]<br>$1,077.80<br>(Chambers)[3] |
| August 29, 2003<br>D.I. 4357<br>(Ninth) | 4/1/03 –<br>6/30/03 | $215,903.50 | $2,726.28<br>$67,628.50* | $215,903.50[6] | $2,726.28<br>(Stroock)[4]<br>$67,628.50<br>(Chambers)[4] |
| December 5, 2003<br>D.I. 4778<br>(Tenth) | 7/1/03 –<br>9/30/03 | $218,222.00 | $4,339.46<br>$36,865.19* | $218,222.00[7] | $4,339.46<br>(Stroock)[5]<br>$36,865.19<br>(Chambers)[5] |
| March 2, 2004<br>D.I. 5212<br>(Eleventh) | 10/1/03 –<br>12/31/03 | $215,718.50 | $5,950.82<br>$100,349.50* | $215,718.50[8] | $5,922.67<br>(Stroock)[6]<br>$100,349.50<br>(Chambers)[6] |
| May 18, 2004<br>D.I. 5597<br>(Twelfth) | 1/1/04 –<br>3/31/04 | $254,857.00 | $9,965.36<br>$83,147.07* | $254,857.00[9] | $9,965.36<br>(Stroock)[7]<br>$83,147.07<br>(Navigant)[7] |
| August 26, 2004<br>D.I. 6269<br>(Thirteenth) | 4/1/04 –<br>6/30/04 | $353,629.50 | $7,760.42<br>$272,474.16* | $353,629.50[10] | $7,760.42<br>(Stroock)[8]<br>$272,474.16<br>(Navigant)[8] |

[5]   Court Order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[6]   Amended Court Order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[7]   Court Order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[8]   Court Order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[9]   Court Order dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[10]   Court Order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| November 10, 2004 D.I. 6871 (Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08 $67,569.50* | $226,702.50[11] | $6,705.08 (Stroock)[9] $67,569.50 (Navigant)[9] |
| February 22, 2005 D.I. 7851 (Fifteenth) | 10/1/04 – 12/31/04 | $653,133.20 | $25,830.19 $140,422.11* | $648,355.70[12] | $25,830.19 (Stroock)[10] $140,422.11 (Navigant)[10] |
| May 16, 2005 D.I. 8468 (Sixteenth) | 1/1/05- 3/31/05 | $352,289.50 | $12,746.23 $40,104.23* | $349,644.00 | $12,746.23 (Stroock)[13] $40,104.23 (Navigant) |
| August 19, 2005 D.I. 9225 (Seventeenth) | 4/1/-5 – 6/30/05 | $340,821.25 | $9,261.40 $54,204.34* | $340,096.25[14] | $9,261.40 (Stroock) $54,204.34 (Navigant) |
| November 18, 2005 D.I. 11118 (Eighteenth) | 7/1/05 – 9/30/05 | $291,843.50 | $8,534.71 $31,958.50* | $291,843.50[15] | $8,534.71 (Stroock) $31,958.50 (Navigant) |
| February 15, 2006 D.I. 11798 (Nineteenth) | 10/1/05 – 12/31/05 | $299,419.75 | $5,838.28 $103,498.49* | $299,419.75[16] | $5,838.69 (Stroock $103,498.49 (Navigant) |

[11]  Court Order dated March 22, 2005 approved fees in the amount of $226,702.50 and expenses in the amount of $74,274.58.

[12]  Court Order dated June 29, 2005 approved fees in the amount of $648,335.70 and expenses in the amount of $166,252.30.

[13]  Court  Order dated September 27, 2005 approved fees in the amount of $349,644.00 and expenses in the amount of $52,850.46.

[14]  Court Order dated December 19, 2005 approved fees in the amount of $340,096.25 and expenses in the amount of $63,465.74.

[15]  Court Order dated March 24, 2006 approved fees in the amount of $291,843.50 and expenses in the amount of $40,493.21.

[16]  Court Order dated June 16, 2006 approved fees in the amount of $299,419.75 and expenses in the amount of $109,337.18.

11

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 26, 2006<br>D.I. 12533<br>(Twentieth) | 1/1/2006 –<br>3/31/2006 | $323,566.25 | $5,758.28<br>$65,934.98* | $323,451.25[17] | $5,758.28<br>(Stroock)<br>$64,810.58<br>(Navigant) |
| August 17, 2006<br>D.I. 13006<br>(Twenty-First) | 4/1/2006 –<br>6/30/2006 | $332,978.00 | $5,849.79<br>$63,467.50* | $332,978.00[18] | $5,849.70<br>(Stroock)<br>$63,467.50<br>(Navigant) |
| November 29,<br>2006<br>D.I. 13835<br>(Twenty-Second) | 7/1/2006 –<br>9/30/2006 | $380,213.50 | $4,742.11<br>$219,776.61* | $380,213.50[19] | $4,742.11<br>(Stroock)<br>$219,776.61<br>(Navigant) |
| March 1, 2007<br>D.I. 14717<br>(Twenty-Third) | 10/1/2007 –<br>12/31/07 | $484,693.50 | $10,038.19<br>$336,058.12* | $484,693.50[20] | $10,038.19<br>(Stroock)<br>$336,058.12<br>(Navigant) |
| June 4, 2007<br>D.I. 15949<br>(Twenty-Fourth) | 1/1/07 -<br>3/31/07 | $331,950.50 | $10,690.15<br>$272,450.52* | $331,950.50[21] | $10,690.15<br>(Stroock)<br>$272,450.52<br>(Navigant) |
| August 30, 2007<br>D.I. 16710<br>(Twenty-Fifth) | 4/1/2007 -<br>6/30/2007 | $609,233.75 | $13,150.79<br>$536,163.29* | $609,233.75[22] | $13,150.79<br>(Stroock)<br>$536,163.29<br>(Navigant) |

---

[17] Court Order dated September 25, 2006 approved fees in the amount of $323,451.25 and expenses in the amount of $71,130.16.

[18] Court Order dated December 18, 2006 approved fees in the amount of $332,978.00 and expenses in the amount of $69,317.29.

[19] Court Order dated May 3, 2007 approved fees in the amount of $380,213.50 and expenses in the amount of $224,518.72.

[20] Court Order dated June 20, 2007 approved fees in the amount of $484,693.50 and expenses in the amount of $346,096.31.

[21] Court Order dated September 24, 2007 approved fees in the amount of $331,950.50 and expenses in the amount of $283,140.67.

[22] Court order dated December 13, 2007 approved fees in the amount of $609,233.75 and expenses in the amount of $549,314.08.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| December 12, 2007<br>D.I. 17625<br>(Twenty-Sixth) | 7/1/2007 –<br>9/30/2007 | $510,043.50 | $10,433.15<br>$418.269.08* | $508,758.50[23] | $10,433.15<br>(Stroock)<br>$418,269.08<br>(Navigant) |
| March 5, 2008<br>D.I. 18222<br>(Twenty-Seventh) | 10/1/07 –<br>12/31/07 | $654,871.50 | $112,822.90<br>$535,348.99* | $654,871.50[24] | $112,650.85<br>(Stroock)<br>$535,348.99<br>(Navigant) |
| May 27, 2008<br>D.I. 18789<br>(Twenty-Eighth) | 1/1/08<br>3/31/08 | $672,622.50 | $20,422.22<br>$229,195.95* | $672,622.50[25] | $20,422.22<br>(Stroock)<br>$229,195.95<br>(Navigant) |
| August 27, 2008<br>D.I. 19386<br>(Twenty-Ninth) | 4/1/08<br>6/30/08 | $653,130.50 | $26,151.33<br>$38,896.84* | $653,130.50[26] | $26,151.33<br>(Stroock)<br>$38,896.84<br>(Navigant) |
| December 5, 2008<br>D.I. 20207<br>(Thirtieth) | 7/1/08 –<br>9/30/08 | $645,502.50 | $11,888.55<br>$259.90* | $645,092.50[27] | $11,888.55<br>(Stroock)<br>$259.90<br>(Navigant) |
| March 9, 2009<br>D.I. 20950<br>(Thirty-First) | 10/01/08<br>12/31/08 | $557,387.50 | $20,499.56 | $557,387.50[28] | $20,499.56 |
| June 1, 2009<br>D.I. 21937<br>(Thirty-Second) | 1/01/09<br>3/31/09 | $437,100.75 | $7,356.35 | $433,438.75[29] | $7356.35 |

---

[23]  Court order dated March 12, 2008 approved fees in the amount of $508,758.50 and expenses in the amount of $428,702.23.

[24]  Court order dated June 23, 2008 approved fees in the amount of $654,871.50 and expenses in the amount of $647,999.84.

[25]  Court order dated October 1, 2008 approved fees in the amount of $672,622.50 and expenses in the amount of $249,618.17.

[26]  Court order dated December 17, 2008 approved fees in the amount of $653,130.50 and expenses in the amount of $65,048.17.

[27]  Court order dated April 1, 2009 approved fees in the amount of $645,092.50 and expenses in the amount of $12,148.45.

[28]  Court order dated July 7, 2009 approved fees in the amount of $557,387.50 and expenses in the amount of $20,499.56.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| August 19, 2009<br>D.I. 22869<br>(Thirty-Third) | 4/01/09<br>6/30/09 | $654,188.75 | $16,935.11 | $653,243.75[30] | $16,935.11 |
| December 4, 2009<br>D.I. 23944<br>(Thirty-Fourth) | 7/01/09<br>9/30/09 | $944,248.25 | $44,707.82<br>$2,812.50* | $942,116.25[31] | $43,707.82<br>(Stroock)<br>$2,812.50<br>(Navigant) |
| February 16, 2010<br>D.I. 24308<br>(Thirty-Fifth) | 10/01/10<br>12/31/09 | $617,534.75 | $26,074.41 | | |

---

[29] Court order dated September 28, 2009 approved fees in the amount of $433,438.75 and expenses in the amount of $7,356.35.

[30] Court order dated December 11, 2009 approved fees in the amount of $653,243.75 and expenses in the amount of $16,935.11.

[31] Court order dated March 19, 2010 approved fees in the amount of $942,116.25 and expenses in the amount of $47,520.32.

**WR GRACE & CO**

**ATTACHMENT B**

**JANUARY 1, 2010 - MARCH 31, 2010**

|  | Hours | Rate | Amount | No. of Years in Position |
|---|---|---|---|---|
| **Partners** |  |  |  |  |
| Kruger, Lewis | 32.3 | $ 995 | $   32,138.50 | 40 |
| Pasquale, Kenneth | 59.4 | 875 | 51,975.00 | 10 |
|  |  |  |  |  |
| **Associates** |  |  |  |  |
| Krieger, Arlene G. | 282.8 | 695 | 196,546.00 | 26 |
|  |  |  |  |  |
| **Paraprofessionals** |  |  |  |  |
| Cromwell, Marlon E. | 0.9 | 245 | 220.50 | 3 |
| Magzamen, Michael S. | 10.2 | 305 | 3,111.00 | 5 |
| Mohamed, David | 86.5 | 190 | 16,435.00 | 20 |
| Wojcik, Mark R. | 1.3 | 305 | 396.50 | 4 |
|  |  |  |  |  |
| **Sub Total** | **473.4** |  | **$ 300,822.50** |  |
| **Less 50% Travel** | **(12.9)** |  | **(10,125.25)** |  |
| **Total** | **460.5** |  | **$ 290,697.25** |  |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |

### THIRTY-SIXTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JANUARY 1, 2010 THROUGH MARCH 31, 2010

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

accordance with the Administrative Fee Order (defined below) for interim allowance of

---

[1]    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc.,  Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA  Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

compensation for services rendered and for reimbursement of expenses incurred in connection

therewith, respectfully represents as follows:

## INTRODUCTION

1.    By this application (the "Application"), Stroock seeks (i) an interim allowance of

compensation for the professional services rendered by Stroock as counsel for the Committee for

the period from January 1, 2010 through March 31, 2010 (the "Compensation Period") in the

aggregate amount of $290,697.25[2] representing 374.5 hours of professional services and 98.9

hours of paraprofessional services; and (ii) the reimbursement of actual and necessary expenses

incurred by Stroock during the Compensation Period in connection with its rendition of such

professional and paraprofessional services for the Committee in the aggregate amount of

$5,468.29.

2.    Venue of this proceeding and this Application is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C.

§§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## BACKGROUND

3.    On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary

petitions for reorganization under chapter 11 of the Bankruptcy Code and has continued in the

management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

---

[2]    This amount reflects a reduction of $1390.00 in Category 0018 from Stroock's February 2010 fee statement that
inadvertently reflected an aggregate of 2.1 hours of time on 2/8/10 for services rendered rather than just 0.1
hours of time.  This downward adjustment is also reflected in the Category 0018 amount on Exhibit B, Part 1 in
this Application.  In addition, the number of hours of time stated in this Application as rendered during the
Compensation Period has been adjusted downward by 2.0 hours both in the aggregate number of hours and in the
number of hours of professional services rendered, as applicable.

Bankruptcy Code. Pursuant to an order of the Court, the Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.

4.     The Debtors operate a worldwide specialty chemicals and materials business and employ approximately 3860 full and part-time employees. On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[3] from $1.59 billion in net revenues. The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.     On April 12, 2001, the United States Trustee formed the Committee. During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases. The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP (n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel. On December 3, 2003, the United States Trustee filed a second amended notice of appointment of the Committee. On July 10, 2006, the United States Trustee filed a third amended notice of appointment of the Committee.

6.     The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims (the "ACC") and asbestos-related property damage claims (the "PD Committee") against the Debtors (collectively, the "Asbestos Claim Committees"). On June 18, 2001, the United States Trustee

---

[3]   The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

appointed an official committee to represent the interests of equity security holders of the

Debtors (the "Equity Committee").

7.    By order dated May 24, 2004, the Court authorized the appointment of a legal

representative for future asbestos personal injury claimants (the "PI FCR").  By order dated

October 20, 2008, the Court authorized the appointment of a legal representative for future

asbestos property damage claimants (the "PD FCR").

8.    By application dated May 1, 2001, Stroock sought Court approval for its retention

as counsel to the Committee nunc pro tunc to April 12, 2001.  The Court signed an order

approving Stroock's retention as counsel to the Committee on May 30, 2001.

9.    This is the thirty-sixth quarterly interim application Stroock has filed with the

Court for an allowance of compensation and reimbursement of expenses for services rendered to

the Committee.  This Application is submitted pursuant to the terms of the Administrative Order

Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement

of Expenses for Professionals and Official Committee Members, approved by the Court on

May 3, 2001 as amended by order dated April 17, 2002 (collectively, the "Administrative Fee

Order").

10.    In accordance with the procedures established by the Administrative Fee Order,

Stroock had, at the time of filing this Application, received payment from the Debtors for 80% of

the fees and 100% of Stroock's expenses requested, and not objected to, in the January 2010 and

February 2010 fee statements.  Stroock has not received payment for the fees and expenses

requested in the March 2010 fee statement for which a certificate of no objection has not yet

been filed.  Applicant has received no other payments and no promises for payment from any

source for services rendered in connection with these cases for the months encompassing this Compensation Period other than as immediately set forth above.  There is no agreement or understanding between the Applicant and any other person (other than members of Stroock) for the sharing of compensation to be received for the services rendered in these cases.

11.    As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

12.    Since being retained by the Committee, Stroock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates.  The variety and complexity of these cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

13.    Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee.  Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Stroock's practice, and are presented in compliance with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2006.  A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the

services during the Compensation Period is annexed hereto as Exhibit "B". In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

14.    Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection. A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D".

15.    Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

16.    The following summary of the services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

### Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003

17.    As reflected in prior compensation applications, in mid-November 2004, the Debtors filed a reorganization plan and numerous related pleadings including their motion seeking the estimation of asbestos claims and the establishment of a schedule and procedures for

6

carrying out the estimations (the "Estimation Motion"), and their motion to establish post-confirmation litigation protocols for liquidating asbestos claims.

18.     The Court subsequently approved a form of case management order to govern the pre-confirmation estimation of asbestos personal injury claims (the "PI CMO") and several amendments thereto (the "Amended PI CMOs") and the related form of questionnaire (the "Questionnaire") to be used by asbestos personal injury claimants who had commenced pre-petition litigation against the Debtors (the "PI Pre-Petition Litigation Claimants"), and two case management orders for property damage claims (as amended, the "PD CMOs"); one to govern the Debtors' claims objection process and the other to govern the pre-confirmation estimation of property damage claims ("PD Claims").  The Amended PI CMOs established pre-trial dates and deadlines and trial dates to govern the estimation of asbestos personal injury claims (the "PI Estimation").  The PI Estimation trial commenced in January 2008.

19.     On April 7, 2008, the Debtors informed the Court that they had reached an agreement with the ACC, the PI FCR and the Equity Committee (collectively, the "Plan Proponents") on a resolution of the Debtors' present and future asbestos liabilities (the "Proposed PI Resolution") and made public a term sheet (the "Term Sheet") setting forth terms of such parties' proposed treatment of classes of claims and equity holders to be embodied in a plan of reorganization to be filed with the Court.  As a result of the Proposed PI Resolution of the Debtors' asbestos personal injury liabilities (the "Proposed Asbestos Resolution"), the PI Estimation trial was suspended, subject to being restarted if the Proposed PI Resolution fell apart or a plan embodying the Term Sheet was not confirmed.  The Debtors and the Plan Proponents filed a plan embodying the Term Sheet and a related disclosure statement on September 19, 2008.  By order dated March 9, 2009, the Court approved, inter alia, a disclosure statement, as

amended, as containing adequate information, and established the solicitation and confirmation

processes and procedures with respect to the Plan Proponents' first amended joint plan (the

"Plan"). The confirmation trial was held during prior compensation periods.

20.    During the Compensation Period, in connection with the Debtors' resolution of

outstanding PD and PI Claims and the Plan Proponents' resolution of objections to the Plan, the

Debtors filed numerous motions seeking approval of settlements with Canadian PD Claims and

filed a separate motion seeking approval of a settlement with one of Grace's pre-petition insurers

regarding the parties' respective rights and obligations under excess insurance policies. As

reflected in this category and elsewhere in the Application, Stroock reviewed these settlement

motions, including the underlying agreements and related materials, sought and reviewed

additional information obtained from counsel for the Debtors, as applicable, and prepared

memoranda for the Committee discussing the settlements. In addition, during this Compensation

Period, Stroock reviewed the decision issued by the Third Circuit Court of Appeals affirming the

district court's prior affirmance of the opinion issued by the bankruptcy court denying the relief

sought by the Debtors and the State of Montana to expand the preliminary injunction in these

cases. Stroock has expended 6.7 hours on this category for a fee of $4,716.50.

### Asset Dispositions, Sales, Uses and Leases (Section 363) – Category 0009

21.    During this Compensation Period, Stroock communicated with Capstone

regarding certain divestiture-related materials. Stroock has expended 0.3 hours on this category

for a fee of $208.50.

## Business Operations -- Category 0013

22.     During this Compensation Period, the Debtors filed a motion proposing to

terminate their existing DIP facility and replace it with a new letter of credit facility and new

hedging facilities (collectively, the "LOC Facilities") and filed a separate motion seeking

authorization to retain and compensate certain financial institutions to act as lead arrangers and

secure exit financing, so that the Plan might be consummated, if that became applicable (the

"Exit Financing Engagement").  Stroock reviewed the motions and all related documentation and

agreements, discussed these matters with Capstone, requested additional documentation from

Debtors' counsel and other representatives, and provided comments on and sought changes to

certain provisions of the LOC Facilities' documentation and proposed order.  Ultimately,

changes were made to the LOC Facilities-related documentation and order that were agreeable to

the Committee.  Stroock has expended 51.4 hours on this category for a fee of $35,813.00.

## Case Administration -- Category 0014

23.     As reported in prior monthly compensation applications, these chapter 11 cases

were reassigned to District Court Judge Alfred Wolin in November 2001 and referred to

Bankruptcy Court Judge Judith Fitzgerald, and then reassigned to District Court Judge Ronald L.

Buckwalter following Judge Wolin's recusal from these cases.

24.     During this Compensation Period, Stroock continued to closely monitor the items

on the Court's general chapter 11 docket for these cases, as well as those dockets relating to

pending adversary proceedings and appeals, to ensure that the Committee was fully informed

about all pending motions, adversary proceedings and appeals and that Stroock would be ready

to timely respond on behalf of the Committee, as might be applicable.  Stroock continued to

engage Debtors' counsel and Capstone on an on-going basis with respect to pending matters and

information requests.  In addition, during this Compensation Period, Stroock prepared a response

to the Fee Auditor's initial response to Stroock's 34th Quarterly Application.  Stroock has

expended 81.6 hours on this category for a fee of $21,611.00.

### Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015

25.     During this Compensation Period, the Debtors filed a motion seeking to establish

a protocol to address nearly 7,000 claims filed by former and current employees and

beneficiaries thereof who receive benefits under certain of the Debtors' existing benefit

programs.  Stroock reviewed the motion and the proposed from of notice and communicated

proposed clarifications and modifications to the terms of the protocol to Debtors' counsel.  In

addition, during this Period, the Debtors filed stipulations embodying the settlements they

reached with Morgan Stanley Senior Funding, National Union Fire Insurance Company and

Longacre Master Funding regarding their post-petition interest and/or Plan classification

objections, as applicable.  Stroock reviewed these stipulations and as reflected in this category

and elsewhere in this Application, prepared memoranda for the Committee discussing these

resolutions.  Stroock has expended 10.4 hours on this category for a fee of $7,594.00.

### Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017

26.     During this Compensation Period, Stroock communicated with the full Committee

and its members through memoranda, telephone and conference calls.  In order to keep the

Committee fully informed of all of the pending matters in these cases, and thus enable the

Committee to take informed positions on those issues, Stroock reviewed and summarized the

motions, other pleadings and notices filed by the Debtors and other parties in interest in these

cases and the objections and responses filed, raised issues the Committee should be aware of,

made recommendations to the Committee concerning appropriate actions to be taken with regard

to the pleadings and communicated with members of the Committee regarding the positions to be

taken.  In addition, Stroock engaged counsel and other representatives for the Debtors, with the

Committee's questions, concerns and comments, negotiated whenever and to the extent possible

consensual resolutions of outstanding issues and acceptable forms of proposed orders,

stipulations and settlement agreements.

27.    A focus of the discussions with and memoranda to the Committee and its

members during this period was the closing arguments on Plan confirmation issues, including on

the post-petition interest issues, before the Court.  In addition, the memoranda Stroock prepared

for the Committee during this Compensation Period addressed, among other matters, (a) the

status of the amended Canadian ZAI Settlement and related matters, (b) the National Union and

Longacre settlements, (c) the separate settlements of Canadian PD Claims, (d) the Debtors'

proposed employee benefit claims protocol and (e) the discussions taking place with the Debtors'

representatives and others regarding pension plan issues and alternatives.

28.    Through its correspondence and communication with the Committee, Stroock has

assisted the Committee in fulfilling its statutory duties to make informed decisions and express

the Committee's views regarding the issues which arise in these cases, to participate in those

proceedings and matters and in the confirmation of a plan providing appropriate treatment for the

creditors represented by the Committee.  Stroock has expended 46.9 hours on this category for a

fee of $33,399.50.

### Fee Application, Applicant -- Category 0018

29.    During this Compensation Period, Stroock prepared its fee statements for the

months of December 2009, January 2010 and February 2010 and related notices, affidavits of

service and certifications of no objection where applicable. Stroock also prepared its Thirty-Fifth Quarterly Fee Application covering the period from October 1, 2009 through December 31, 2009 (the "prior compensation application"), including a narrative section summarizing the services rendered during that period by Stroock and numerous fee and expense schedules, as required by the Administrative Fee Order entered by the Court. Stroock has expended 35.2 hours on this category for a fee of $15,810.00.

### Creditor Inquiries -- Category 0019

30.    During this Compensation Period, Stroock responded to inquiries from unsecured creditors with respect to the treatment of Class 9 claims and the status of these cases. Stroock has expended 2.1 hours on this category for a fee of $1,633.50.

### Fee Application, Others -- Category 0020

31.    During this Compensation Period, Stroock prepared notices, affidavits of service and certifications with respect to Capstone's monthly fee statements for the months of July 2009, August 2009 and September 2009 and with respect to Capstone's 23rd quarterly interim fee application. Stroock also attended to fee applications of other professionals retained in these cases. Stroock has expended 11.0 hours on this category for a fee of $3,756.50.

### Employee Benefits, Pension -- Category 0021

32.    During the Compensation Period, the Debtors filed a motion seeking authority to make certain contributions to their pension plans in April 2010 and a motion seeking authority to implement another long-term incentive compensation program; this one covering the 2010-2012 period. Stroock reviewed the motions and related materials. In addition, Stroock prepared for and participated in several conference calls with representatives for the Debtors and other parties

in interest during which the Debtors discussed the review they had undertaken of their pension plans for salaried employees and of the implementation of the previously proposed new defined contribution plan for new hires, and thereafter communicated with the Committee on these conferences. Stroock has expended 9.0 hours on this category for a fee of $6,291.00.

### Travel – Non Working -- Category 0035

33.     Stroock's fees in this category during this Compensation Period relate to Stroock attorneys traveling (i) to and from Pittsburgh, PA for the closing arguments on confirmation issues held on January 4, 5 and 6, 2010 and (ii) to and from an omnibus hearing before Judge Fitzgerald in Wilmington, DE on January 25, 2010, during which the closing arguments were completed. Stroock has expended 25.9 hours on this category for a fee of $20,250.50, for which Stroock is seeking payment in the amount of $10,125.25.

### Plan and Disclosure Statement -- Category 0036

34.     As reported in prior compensation applications, in September 2008, the Debtors filed a plan of reorganization embodying the Proposed PI Resolution and the Term Sheet the Debtors reached with the Plan Proponents. Stroock reviewed the drafts of the plan and related exhibits, the disclosure statement and the solicitation–related materials focusing on those terms and provisions affecting the treatment of general unsecured creditors in Class 9, and communicated with the Committee and Capstone regarding these documents. The Court approved an amended disclosure statement (the "Disclosure Statement") corresponding to the first amended plan of reorganization dated February 27, 2009 (the "Plan") and solicitation procedures and creditors and equity holders voted on the Plan and filed objections to confirmation. Stroock prepared and filed objections to confirmation of the Plan on behalf of the

Committee, and participated in the Phase I hearings and Phase II confirmation trial that took place during the prior compensation periods.

35.    During this Compensation Period, Stroock attended all of the closing arguments on confirmation issues that took place during the first month of this Compensation Period, and prepared for, and argued, along with counsel for the bank lender group, the closing argument on the post-petition interest issues.  As reflected in this category and elsewhere in this Application, Stroock communicated with the Committee and Capstone on these matters.  In addition, during this Compensation Period, Stroock reviewed several Plan-related stipulations with certain of the Debtors' pre-petition insurers addressing Plan objections seeking insurance neutrality language and modifications regarding the treatment of indirect PI Trust claims, and rendered services in this category with respect to its review of the LOC Facilities and Exit Financing Engagement for which the Debtors were seeking Court approval.  Stroock expended 122.7 hours on this category for a fee of $93,208.50.

### Hearings -- Category 0037

36.    During the Compensation Period, Judge Fitzgerald heard three days of closing arguments on confirmation in Pittsburgh, PA and completed the closing arguments at the January 2010 omnibus hearing held in Wilmington, DE.  Other Plan-related matters were addressed during another omnibus hearing held telephonically during the Period.  Stroock reviewed each of the agenda notices, all relevant pleadings and Plan-related documents and submissions in advance of these hearings, prepared for and attended the hearings, and argued positions on behalf of the Committee, as appropriate.  As reflected elsewhere in the Application, Stroock discussed the hearings and the comments and rulings made by the Court with the Committee.  Stroock expended 70.0 hours on this category for a fee of $56,391.00.

**Employment Applications – Others – Category 0040**

37.    During this Compensation period, Stroock reviewed the application filed by the Debtors seeking to retain intellectual property counsel. Stroock expended 0.2 hours on this category for a fee of $139.00.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

38.    The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts. Stroock respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

The Time and Labor Required. The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch. Occasionally, Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends. The services rendered by Stroock were performed efficiently, effectively and economically.

The Novelty and Difficulty of Questions. Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered. In this case, as in

15

many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

The Skill Requisite to Perform the Legal Services Properly.  Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of the Case.  Due to the size of Stroock's insolvency department, Stroock's representation of the Committee has not precluded its acceptance of new clients.  However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to these cases.

The Customary Fee.  The fee sought herein is based upon Stroock's normal hourly rates for services of this kind.  Stroock respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these cases and the time expended in attending to the representation of the Committee, and is commensurate with fees Stroock has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

<u>Whether the Fee is Fixed or Contingent</u>.  Pursuant to §§ 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under § 1103 of the Code are contingent pending final approval by this Court, and are subject to adjustment dependent upon the services rendered and the results obtained.

<u>Time Limitations Imposed by Client or Other Circumstances</u>.  As already indicated, Stroock has attended to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

<u>The Amount Involved and Results Obtained</u>.  Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

<u>The Experience, Reputation and Ability of the Attorneys</u>.  Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: <u>Acme Metals, Inc.</u>, <u>Hillsborough Holdings Corporation</u>, <u>Laclede Steel Company</u>, <u>Gulf States Steel, Inc. of Alabama</u>, <u>The LTV Corporation</u>, <u>Wheeling-Pittsburgh Steel Corporation</u>, <u>Allis-Chalmers Corporation</u>, <u>The Charter Company</u>, <u>Federated Department Stores</u>, <u>G. Heileman Brewing</u>

17

Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc.,
Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation,
Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc.,
Flushing Hospital and Medical Center, Planet Hollywood International,
Anchor Glass Container Corporation, Beloit Corporation in the
Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG
Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings.
Stroock's experience enables it to perform the services described herein
competently and expeditiously.  In addition to its expertise in the area of
corporate reorganization, Stroock has already frequently called upon the
expertise of its partners and associates in the litigation, ERISA, tax,
environmental and intellectual property law areas to perform the wide
ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case.  These cases are not undesirable, but as
already indicated, have required a significant commitment of time from
several of the attorneys assigned hereto.

Nature and Length of Professional Relationship.  As described above,
Stroock has been actively rendering services on behalf of the Committee
as necessary and appropriate from April 12, 2001 through to the present.

## ALLOWANCE OF COMPENSATION

39.     The professional services rendered by Stroock required a high degree of
professional competence and expertise so that the numerous issues requiring evaluation and

determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

40.    With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person. 11 U.S.C. § 330. Section 330 further states that the court should take into consideration, inter alia, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title. Id. The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

41.    The total time spent by Stroock attorneys and paraprofessionals during the Compensation Period for which Stroock seeks payment was 473.4 hours. Such services have a fair market value of $290,697.25. The work involved, and thus the time expended, was carefully assigned in light of the experience, expertise and familiarity with the issues in these cases required for a particular task.

42.    As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are

summaries of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

43.    In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $5,468.29 for which Stroock respectfully requests reimbursement in full. The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters. Stroock has endeavored to minimize to the fullest extent possible those expenses incurred to enable Stroock to devote time beyond normal office hours to matters that imposed extraordinary time demands. Attached hereto as Exhibit "D" is a summary chart reflecting each category of disbursement for which Stroock seeks reimbursement.

44.    Stroock's billing rates do not include charges for photocopying, telephone and telecopy toll charges, computerized research, travel expenses, "working meals", secretarial overtime, postage and certain other office services, because the needs of each client for such services differ. Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it. Stroock has endeavored to minimize these expenses to the fullest extent possible.

45.    Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions. Stroock does not charge for incoming facsimiles.

46.    No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

47.     Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

48.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

**[Remainder of Page Left Intentionally Blank]**

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order:
(a) the allowance of compensation for professional services rendered to the Committee during
the period from January 1, 2010 through and including March 31, 2010 in the amount of
$290,697.25, for which Stroock seeks payment; (b) the reimbursement of Stroock's out-of-
pocket expenses incurred in connection with the rendering of such services during the period
from January 1, 2010 through and including March 31, 2010 in the amount of $5,468.29;
and an order authorizing and directing the Debtors to pay to Stroock each of the amounts set
forth in (a), (b) and (c) of this WHEREFORE clause (to the extent not already paid pursuant to
the Administrative Fee Order); and granting such other and further relief as this Court may deem
just and proper.

Dated: New York, New York
　　　　May 20, 2010

                                    STROOCK & STROOCK & LAVAN LLP


                                    _____
                                    Lewis Kruger
                                    Kenneth Pasquale
                                    Members of the Firm
                                    180 Maiden Lane
                                    New York, New York 10038-4982
                                    (212) 806-5400
                                    Co-Counsel for the Official Committee of
                                    Unsecured Creditors of W. R. Grace & Co., et al.