IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Objection Deadline: June 25, 2010, at 4:00 p.m.** |
| | ) | **Hearing Date: July 12, 2010, at 10:30 a.m.** |

**DEBTORS' MOTION PURSUANT TO SECTIONS 105, 363, 1107 AND 1108 OF
THE BANKRUPTCY CODE AND RULES 2002, 6004, 9014 AND 9019 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
FOR AN ORDER APPROVING THE AMENDED AND RESTATED SETTLEMENT
AGREEMENT BETWEEN W. R. GRACE & CO. AND HARPER INSURANCE LTD.**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors")

hereby submit this motion (the "Motion") for entry of an order approving the Amended and

Restated Settlement Agreement (the "Agreement") by and between W. R. Grace & Co.

("Grace") and Harper Insurance Ltd., formerly known as Turegum Insurance Company

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

(hereinafter referred to as "Harper"). A copy of the Agreement is attached hereto as <u>Exhibit A</u>.

In support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of

this Motion is proper under 28 U.S.C. § 1408.

2.      The statutory predicates for this Motion are sections 105(a) and 363(b) of

title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 the Federal Rules of

Bankruptcy Procedure.

## Background

3.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary

petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11

Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and,

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate

their businesses and manage their properties as debtors in possession.

4.      Harper, along with other underwriters doing business in the London

insurance market that are not parties to the Agreement, severally subscribed to four policies of

excess liability insurance (defined in the Agreement as the "Subject Policies")[2] that provide, or

are alleged to provide, insurance coverage to Grace. The Subject Policies were issued for the

period June 30, 1977 to June 30, 1979. The Subject Policies attach at excess layers ranging from

$10 million to $25 million. Harper's several share of the available remaining aggregate limits

---

[2]  Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Agreement or the Plan (as
defined herein, paragraph 6 *infra*), as applicable.

2

for the products/completed operations hazards under the Subject Policies total $1,446,153. Harper also severally subscribed to another excess liability policy issued to Grace for the period July 17, 1974 to June 30, 1977 – Policy No. 74DD663C. The latter policy attaches at $100 million and has remaining products/completed operations aggregate limits of $1,426,500, but this policy is not the subject of the current settlement.

5.      Grace has incurred and may incur in the future certain liabilities, expenses and losses arising out of asbestos-related claims, for which Grace seeks coverage under the Subject Policies. Disputes have arisen between Grace and Harper regarding their respective rights and obligations under the Subject Policies with respect to coverage for asbestos-related claims.

6.      The First Amended Joint Plan of Reorganization proposed by the Plan Proponents contemplates that Asbestos PI Claims will be enjoined and channeled to the Asbestos PI Trust (the "Trust"). *See* First Amended Joint Plan of Reorganization, as modified through March 19, 2010, and as it may be amended, supplemented, or modified from time to time (the "Plan"), Art. 8.2.1. If established as proposed, the Trust will process and resolve Asbestos PI Claims pursuant to the Asbestos PI Trust Distribution Procedures.

7.      The Plan further contemplates that Asbestos Insurance Rights, including rights to coverage under the Subject Policies, are to be transferred to the Trust, to be used to fund payment of Asbestos PI Claims. *See* Plan, Art. 7.2.2(d)(ii) and (iv); Plan Ex. 6 – Asbestos Insurance Transfer Agreement.

8.      The Subject Policies, along with Policy No. 74DD663C, are the subject of a prior agreement between Grace and London Market Insurers, dated August 10, 2009, which was approved by this Court on September 9, 2009 (the "London Agreement"). Under the

3

London Agreement, Harper agreed to reimburse the Trust, if the Trust is established pursuant to a confirmed Plan, for Harper's several share of certain Asbestos PI Claims paid by the Trust. Harper recently approached Grace requesting the opportunity to buy out certain of its obligations under the Subject Policies. The London Agreement expressly contemplates that individual insurance company parties to that agreement may negotiate separate settlement agreements with Grace.

9. The Agreement provides for a buy-out of certain of Harper's coverage obligations under the lower-layer Subject Policies at a settlement value that is within the range of Grace's settlements with its other insurers that have been approved by the Court. Harper remains obligated under the London Agreement for reimbursements to the Trust with respect to Policy No. 74DD663C that attaches at $100 million.

10. The Agreement benefits the Debtors' estate by, among other things, converting Harper's obligation to make payments over time with respect to the Subject Policies, as claims are submitted by the Trust, to an obligation to make a lump sum payment to Grace of One Million Two Hundred Twenty Six Thousand U.S. Dollars ($1,226,000.00) (the "Settlement Amount") within ten days of the Execution Date of the Agreement. The Settlement Amount is to be held by Grace for the benefit of the Trust. The immediate payment of this substantial sum, among other things, eliminates any collection risk and risk of disputes with respect to Harper's payments under the Subject Policies.

11. The Agreement includes a complete, mutual release of claims under the Subject Policies with respect to asbestos Bodily Injury claims that fall within the products aggregate limit of the Subject Policies, as further defined in the Agreement. The Agreement does not release Harper from claims for coverage for non-products asbestos-related claims.

91100-001\DOCS_DE:160258.1

12.     The Agreement further provides that if the Plan is confirmed, the Trust, at its own expense, will enforce the Asbestos PI Channeling Injunction with respect to Bodily Injury Claims, as defined, that constitute Asbestos PI Claims subject to the Asbestos PI Channeling Injunction that are asserted against Harper under the Subject Insurance Policies, provided, however, that the Trust's obligation in this respect ceases after it has spent a sum equivalent to the Settlement Amount.

## Relief Requested

13.     By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Agreement, which has been executed by the parties, and, by its terms, will become effective upon the approval of this Court.

## Basis for Relief

14.     This Court has statutory authority to authorize and approve the Debtors' entry into the Agreement pursuant to sections 105 and 363(b)(l) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). A settlement of claims and causes of action by a debtor in possession constitutes a use of property of the estate. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.*

5

15.    Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019(a). Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed compromise is in the best interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the compromise. *See Martin*, 91 F.3d at 393.

16.    The standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should only be rejected if they fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The standards set forth above are plainly met in this case.

6

17.   The Agreement is in the best interests of the Debtors, their estates and their creditors because it resolves all existing and potential future disputes between the parties regarding their respective rights and obligations with respect to insurance coverage under the Subject Policies with respect to asbestos-related Bodily Injury Claims, as defined in the Agreement, and provides substantial monies to fund the payment by the Trust of Asbestos PI Claims, while simultaneously mitigating the risk posed by any potential Harper insolvency.

18.   For all of the foregoing reasons, the Debtors submit that the Agreement is fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and thus the Debtors should be authorized to enter into the Agreement.

### Notice

19.   Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, (iv) counsel to the Asbestos PI Future Claimants' Representative and counsel to the Asbestos PD Future Claimants' Representative; and (v) those parties that requested papers under Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

91100-001\DOCS_DE:160258.1

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the Agreement, and granting such other and further relief as the Court deems just and proper.

Dated: May 25 2010

KIRKLAND & ELLIS LLP
Lisa G. Esayian
300 N. LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Theodore Freedman
601 Lexington Avenue
New York, New York  10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

8

91100-001\DOCS_DE:160258.1