# EXHIBIT A

## AMENDED AND RESTATED SETTLEMENT AGREEMENT

This Amended and Restated Settlement Agreement (hereinafter the "Amended Agreement") is made as of the Execution Date by and between W. R. GRACE & CO. (hereinafter referred to as "Grace") and HARPER INSURANCE LTD., formerly known as Turegum Insurance Company (hereinafter referred to as "Harper") (Grace and Harper being referred to hereinafter collectively as the "Parties").

## WITNESSETH THAT:

WHEREAS, Harper, along with other insurers that are not parties to this Amended Agreement, severally subscribed to certain liability insurance policies in favor of Grace as more fully set forth and identified on Attachment A hereto (hereinafter referred to as the "Subject Insurance Policies"); and

WHEREAS, claims have been asserted against Grace alleging injury due to exposure to asbestos and asbestos-containing materials (hereinafter referred to as "Asbestos-Related Claims") and Grace has incurred certain liabilities, expenses, and losses arising out of such Asbestos-Related Claims; and

WHEREAS, Grace has asserted rights to insurance coverage with respect to Asbestos-Related Claims pursuant to the Subject Insurance Policies; and

WHEREAS, Grace and Harper previously entered into the Amended and Restated Settlement Agreement executed by certain London Market Insurance Companies, including Harper, on August 7, 2009, resolving disputes with respect to obligations under certain policies of insurance, including the Subject Insurance Policies (hereinafter referred to as the "London Agreement"); and

WHEREAS, on or about April 2, 2001, Grace and various affiliated companies filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code in the United States

Bankruptcy Court for the District of Delaware, In re W. R. Grace & Co., et al., No. 01-1139 (JKF) (defined herein as the "Bankruptcy Case"), and they continue to operate their businesses as debtors and as debtors-in-possession; and

WHEREAS, Grace anticipates that a plan of reorganization will be confirmed by the Bankruptcy Court in the Bankruptcy Case, and that such plan will provide for the establishment of one or more trusts pursuant to Section 524(g) of the Bankruptcy Code to process and pay Asbestos-Related Claims involving Grace; and

WHEREAS, the Parties wish to fully and finally compromise and resolve their disputes regarding the application of the Parties' rights and obligations with respect to the Claims addressed herein solely with respect to the Subject Insurance Policies, while leaving the Parties' rights and obligations under other liability insurance policies subscribed to by Harper that are not Subject Insurance Policies to be governed by the existing London Agreement to which Harper remains a party, to the extent addressed therein; and

WHEREAS, the Parties acknowledge that this Amended Agreement is not intended to govern all Claims for which Grace or the Trust may in the future seek coverage from Harper under the Subject Insurance Policies or otherwise;

NOW, THEREFORE, for good and valuable consideration, the Parties agree as follows:

## I.   **DEFINITIONS**

The following definitions shall apply to the listed terms wherever those terms appear in this Amended Agreement, as well as in any exhibits or attachments hereto.  Moreover, each defined term stated in a singular form shall include the plural form, and each defined term stated in a plural form shall include the singular form, and each defined term stated in the masculine form or in the feminine form shall include the other.  Section and subsection numbers used in

2

this Amended Agreement refer to sections and subsections of this Amended Agreement unless otherwise specifically stated.

A.    <u>Approval Order</u>

"Approval Order" means an order of the Bankruptcy Court, to be entered in the Bankruptcy Case, in form and substance satisfactory to the Parties, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, approving this Amended Agreement and the compromise and settlement memorialized herein.

B.    <u>Asbestos Insurance Settlement Agreement</u>

"Asbestos Insurance Settlement Agreement" has the meaning set forth in the Joint Plan of Reorganization.

C.    <u>Asbestos PI Channeling Injunction</u>

"Asbestos PI Channeling Injunction" has the meaning set forth in the Joint Plan of Reorganization.

D.    <u>Asbestos PI Claim</u>

"Asbestos PI Claim" has the meaning set forth in the Joint Plan of Reorganization.

E.    <u>Bankruptcy Case</u>

"Bankruptcy Case" means In re W. R. Grace & Co., et al., No. 01-1139 (JKF) and the other bankruptcy cases that are jointly administered under Case No. 01-1139, including any appeals of decisions in the Bankruptcy Case.

F.    <u>Bankruptcy Code</u>

"Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended from time to time.

3

G.    Bankruptcy Court

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware and, to the extent it exercises jurisdiction over the Bankruptcy Case, the United States District Court for the District of Delaware.

H.    Bodily Injury Claims

"Bodily Injury Claim" means any Claim, demand, suit, action, or request for relief or action, or any portion of same, that seeks monetary damages or other payment or relief from any member of the Grace Group or the Trust for bodily injury alleged to have been caused, in whole or in part, by exposure to asbestos-containing materials manufactured, sold, or distributed by any member of the Grace Group or any of its licensees, except as follows:

1.    Claims or lawsuits brought against the Grace Group or the Trust by former Grace Group employees under any workers' compensation statute, occupational disease law or law of similar import, or any Claim or lawsuit brought by anyone else for contribution or indemnity, or other legal relief, arising out of bodily injury suffered by current or former Grace Group employees in the course and scope of their employment with the Grace Group shall not be considered Bodily Injury Claims for purposes of this Amended Agreement.

2.    Claims against the Grace Group or the Trust which do not arise out of products liability, including but not limited to Claims by or on behalf of individuals who allege that they were injured as a result of exposure to asbestos at premises owned or operated by the Grace Group shall not be

4

considered Bodily Injury Claims for purposes of this Amended Agreement.

3.  The Parties reserve all of their respective rights under the Subject Insurance Policies with respect to the Claims described in subsections (1) and (2) of this Section immediately above, and such Claims shall not be considered within the scope of this Amended Agreement notwithstanding that such Claims may arise out of exposure to asbestos-containing materials.

I.  <u>Claim</u>

"Claim" means:

1.  "Claim" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. § 101(5);

2.  "Demand" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. § 524(g)(5); and

3.  Any claim (whether past, present, or future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, direct or indirect, matured or unmatured, liquidated or unliquidated, direct or consequential, and whether in law, equity, admiralty, or otherwise), assertion of right, complaint, cross-complaint, counterclaim, affirmative defense, writ, demand, inquiry, request, directive, obligation, suit, lawsuit, action, direct action, cause of action, administrative proceeding, governmental claim or action, order, judgment, settlement, mediation, arbitration, lien, and any other assertion of liability of any kind or subject

5

matter whatsoever (whether related to asbestos or not). For the avoidance of doubt, "Claim" includes, among other things, any claim arising out of, related to, involving, resulting from, or attributable to asbestos in any form and from any source, including products containing such substances, or to any other substance, product, matter, or material in any form or state.

J.    Committee

"Committee" means the Official Committee of Asbestos Personal Injury Claimants appointed in the Bankruptcy Case.

K.    Confirmation Order

"Confirmation Order" means an order entered by the District Court in the Bankruptcy Case confirming the Joint Plan of Reorganization or affirming or reissuing the order of the Bankruptcy Court confirming the Joint Plan of Reorganization.

L.    Court

"Court" means the Bankruptcy Court or the District Court, as appropriate.

M.    District Court

"District Court" means the United States District Court for the District of Delaware.

N.    Effective Date

"Effective Date" has the meaning set forth in the Joint Plan of Reorganization.

O.    Execution Date

"Execution Date" means the first date on which both W. R. Grace & Co. and Harper have executed this Amended Agreement.

P.    Extra-Contractual Claim

"Extra-Contractual Claim" means any claim seeking any type of relief, including compensatory, exemplary, or punitive damages, on account of alleged bad faith, failure to act in good faith, violation of any duty of good faith and fair dealing, violation of any unfair claims practices act, unfair trade practices act, or similar statute, regulation, or code, or any other similar type of alleged misconduct or omission. "Extra-Contractual Claim" does not mean claims for insurance coverage and/or benefits under any insurance policy.

Q.    Final Order

"Final Order" means an order or judgment (including any modification or amendment thereof) that remains in effect and has not been reversed, vacated, stayed, or amended and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired and as to which no appeal or petition for review, reconsideration, rehearing, or certiorari has been taken or, if taken, remains pending.

R.    Futures Representative

"Futures Representative" means David Austern, the Asbestos PI Future Claimants' Representative appointed, for each Debtor, by Order of the Bankruptcy Court dated May 24, 2004, and any successor to him.

S.    Grace and Grace Group

1.    "Grace" means W. R. Grace & Co.

2.    "Grace Group" means Grace, the past and present subsidiaries and affiliates of Grace, the predecessors and successors of such subsidiaries and affiliates, the directors, officers, agents, and employees of Grace and of such subsidiaries and affiliates, and any other Person that was insured

under the Subject Insurance Policies (including endorsements), and those insureds' subsidiaries, affiliates, successors, directors, officers, agents, and employees.

T.    Joint Plan of Reorganization

"Joint Plan of Reorganization" means the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders as modified through March 19, 2010, including all exhibits thereto, as such plan has been and may be modified from time to time.

U.    Person

"Person" means an individual, a corporation, a partnership, a joint venture, a sole proprietorship, an association, a joint stock company, a limited liability company, a limited liability partnership, an estate, an unincorporated organization, a trust, a class or group of individuals, or any other entity or organization, including any international, federal, state, or local governmental or quasi-governmental body or political subdivision, department, agency, or instrumentality thereof.

V.    Settled Asbestos Insurance Company

"Settled Asbestos Insurance Company" has the meaning set forth in the Joint Plan of Reorganization.

W.    Trust

"Trust" means the "Asbestos PI Trust" as defined in the Joint Plan of Reorganization, or such other trust as may be established under Section 524(g) of the Bankruptcy Code to process

and pay Asbestos PI Claims pursuant to a plan of reorganization filed by Grace, the Committee and the Futures Representative.

## II.    PAYMENT OF SETTLEMENT AMOUNT

A.    Within ten (10) days of the Execution Date, Harper shall pay to Grace for the benefit of the Trust the sum of One Million Two Hundred Twenty Six Thousand United States Dollars ($1,226,000.00) (the "Settlement Amount") in immediately available funds.    The Parties agree that payment of the Settlement Amount to Grace for the benefit of the Trust represents a reasonable compromise of the net present value of the limits of the Subject Insurance Policies that would otherwise be paid out for Bodily Injury Claims, and fully and properly exhausts all limits of liability, including without limitation all per-occurrence and aggregate limits, applicable to the products/completed operations hazards of the Subject Insurance Policies.

B.    Payment of the Settlement Amount to Grace for the benefit of the Trust shall be made in accordance with separately written instructions provided to Harper by Grace.

## III.    CLAIMS HANDLING REPORTS

A.    Harper waives any right to review or audit the Trust's files under procedures set forth in the London Agreement.  Notwithstanding the foregoing, following the Effective Date, the Trust will provide to Harper, through the Law Offices of Jay M. Borowsky, quarterly reports of new filings of Bodily Injury Claims, along with listings of Bodily Injury Claims paid by the Trust during the preceding quarter.

B.    Harper shall keep any reports or other information obtained from the Trust pursuant to this Section III (the "Material") confidential, and shall not disclose Material except to its reinsurers or retrocessionaires, or as otherwise necessary in connection with proceedings to obtain reinsurance with respect to amounts paid pursuant to this Amended Agreement, or to

its accountants, actuaries, consultants, or counsel, or to a governmental authority as required by law, subject to reasonable assurances that the Persons to whom the Material is disclosed will maintain the confidentiality of the Materials. Harper may use the Material solely in connection with the Bankruptcy Case, the implementation of this Amended Agreement, any proceeding to obtain reinsurance with respect to amounts paid pursuant to this Amended Agreement, or as required to comply with applicable laws or regulations, and shall not create or use a database based on the Material for any other purpose. Harper shall return or destroy any and all such documents when its reinsurance claim is resolved or there are no further legal requirements by any governmental authority to disclose any Material.

## IV.    CONFIDENTIALITY

A.    The Parties agree that all information relating to the negotiation of this Amended Agreement (collectively referred to in this Amended Agreement as the "Information," except that such term does not include information that is or becomes available other than as a result of an act or omission of any of the Parties) shall be confidential and is not to be disclosed except as follows:

1.    The fact that the Parties have entered into this Amended Agreement may be disclosed to any Person;

2.    The Information may be disclosed as necessary to obtain an Approval Order from the Bankruptcy Court;

3.    The Information may be disclosed by order of court, or pursuant to a written agreement of the Parties;

4.    The Information may be disclosed by Harper to its reinsurers, directly or through intermediaries;

10

5.  Grace, the Committee, the Futures Representative, or the Trust may disclose the Information to other insurers or liquidators and their representatives;

6.  The Information may be disclosed to outside auditors or accountants of either Party or to the Inland Revenue, Internal Revenue Service, Swiss Revenue Department, the FSA, or the Swiss insurance regulator;

7.  The Information may be disclosed to representatives of any insurer subscribing or allegedly subscribing to one or more of the Subject Insurance Policies, including an insurer that is, has been, or may become insolvent in the future including, without limitation, any liquidators, provisional liquidators, scheme administrators, trustees, or similarly empowered persons or entities;

8.  A Party may disclose the Information to its accountants, counsel, consultants, and underwriters in connection with offerings of securities to be issued by such Party and to counsel for such underwriters; and

9.  The Information may be disclosed in any action brought to enforce the terms of this Amended Agreement;

*provided, however,* that a Party making disclosure of any of the Information pursuant to one of the exceptions set forth in clauses (3) through (8) above shall inform any Person to which such disclosure is made of the confidential nature of the Information and of the understanding upon which it has been disclosed and shall use reasonable efforts to obtain the agreement of such Person to hold the Information in confidence.

B.    A Party may describe and/or make reference to this Amended Agreement to the extent that such disclosure is required to comply with any statute, rule, or other requirement of any government or governmental agency or other authority.  Without limiting the foregoing, the Parties agree that Grace may describe and/or make reference to this Amended Agreement in a Current Report on Form 8-K, a Quarterly Report on Form 10-Q, an Annual Report on Form 10-K or any other report or filing that, on advice of counsel, Grace is required to make pursuant to the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, and in any financial statements and/or related notes included or incorporated by reference in any such report or filing.

C.    In the event a court, litigant, or governmental body requests or requires disclosure of anything protected by this Section IV, the Party from whom disclosure is sought shall immediately give written notice to the other Party in order to allow each Party to take such protective steps as may be appropriate.

D.    Information protected by this Section IV shall be deemed to fall within the protection afforded compromises and offers of compromise by Rule 408 of The Federal Rules of Evidence and similar provisions of state law or state rules of court.

## V.    RELEASES

A.    <u>Release of Harper by Grace Group and the Trust</u>.  Upon Grace's receipt of payment of the Settlement Amount in accordance with Section II of this Amended Agreement, Grace, on behalf of itself and, to the extent it has the power to bind them, the Grace Group, and the Trust, remise, release, and forever discharge Harper along with (i) its subsidiaries, divisions, and affiliates, and (ii) the directors, officers, agents, and employees of Harper and of the Persons listed in subparagraph (i) solely in their capacities as such, with respect to:

12

1.    All Bodily Injury Claims for insurance coverage based on or arising out of the Subject Insurance Policies; and

2.    All Extra-Contractual Claims arising in connection with the Claims released pursuant to Section V.A.1 above;

*provided, however,* that the releases provided for in this Section V.A shall not relieve Harper of any of its obligations under this Amended Agreement.

B.    <u>Release of Grace Group and the Trust by Harper</u>.    Upon payment of the Settlement Amount in accordance with Section II of this Amended Agreement, Harper remises, releases, and forever discharges the Grace Group and the Trust with respect to:

1.    All obligations under, based on, or arising out of the Subject Insurance Policies in connection with any Bodily Injury Claims, including obligations to pay any premiums, deductibles, self-insured retentions, retrospective premiums, or other similar charges;

2.    All Extra-Contractual Claims arising in connection with the Claims released pursuant to Section V.B.1 above;

*provided, however,* that the releases provided for in this Section V.B shall not relieve the Grace Group or the Trust of any of their obligations under this Amended Agreement.

C.    THE PARTIES ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH, CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF

EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT. THE PARTIES EXPRESSLY ASSUME THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES, OR THINGS MAY HAVE OCCURRED THAT THEY DO NOT KNOW OR DO NOT SUSPECT TO EXIST.

**VI.    RELEASE OF SUBROGATION AND CONTRIBUTION CLAIMS AND JUDGMENT REDUCTION CLAUSE**

A.    _Payments Made Under This Amended Agreement_.    Harper shall not seek reimbursement of the Settlement Amount or any portion thereof, whether by way of a Claim for contribution, subrogation, indemnification, or otherwise, from anyone other than Harper's reinsurers or retrocessionaires in their capacity as such. Notwithstanding the foregoing, if a third party pursues a contribution, subrogation, indemnification, or any other Claim against Harper relating to the subject matter of this Amended Agreement, then Harper shall be free to assert such a Claim against such third party, to the extent permitted by the Joint Plan of Reorganization. To the extent Harper recovers any amount from such third party, the net proceeds of such recovery (after any payment made by Harper to such third party on its Claim and after Harper is reimbursed from such proceeds for its fees, costs, and expenses incurred in prosecuting or defending such Claim) shall be paid by Harper promptly to the Trust. The Grace Group and the Trust shall use reasonable best efforts to obtain from all insurers with which they settle agreements similar to those contained in this Section VI.A.

B.    _Payments Received From Other Insurers_.    Following the Trust's receipt of payment of the Settlement Amount as provided in Section II of this Amended Agreement, in the event that:

1.    Grace or the Trust, as applicable, and/or any other Person becomes entitled to receive a payment from one or more of the insurers other than Harper for any Claims that have been remised, released, and forever discharged as against any of Harper pursuant to this Amended Agreement; and

2.    As a result of such other insurer's obligation to pay described in Section VI.B.1 above, such insurer either:

a.    enters into a settlement with Harper, which settlement has been consented to by Grace or the Trust, as applicable, and any other Person (as applicable), requiring Harper to reimburse some or all of the payment made or to be made by such insurer; or

b.    obtains a final, non-appealable judicial or quasi-judicial determination or award entitling such insurer to obtain a sum certain from Harper for contribution, subrogation, or indemnification or other similar Claim, against Harper for its alleged share or equitable share, or to enforce subrogation rights, if any, relating to such payment referenced in Section VI.B.1. above;

the Person entitled to receive such payment shall voluntarily reduce the amount of payment to be received by it (referred to in Section VI.B.1. above) by the amount necessary to reduce or eliminate such settlement, determination, or award against Harper (referred to in Section VI.B.2 above).

To ensure that such a reduction is accomplished, Harper shall be entitled to assert this Section VI as a defense to any action against it for any such portion of the determination or

award against Harper (referred to in Section VI.B.2 above) and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Harper from any liability for the determination or award. Grace or the Trust, as applicable, agrees that in any proceeding against insurers other than Harper in which Grace or the Trust, as applicable, and/or any other Person makes a Claim for insurance rights or benefits for any Claim that may give rise to the events referenced in Section VI.B.1. above, it will provide notice to Harper of such Claim within thirty (30) days of the time Grace or the Trust, as applicable, first becomes aware that such Claim is reasonably likely to result in a Claim against Harper and shall consent to Harper's intervention in any such proceeding to the extent that Harper seeks to intervene to effectuate the intent of this Section VI.

## VII.    DEFENSE OF THE ASBESTOS PI CHANNELING INJUNCTION

A.    Following the Trust's receipt of the Settlement Amount from Grace, if any Person asserts against Harper a Claim based on or arising out of (a) a Bodily Injury Claim and (b) the Subject Insurance Policies that is an Asbestos PI Claim subject to the Asbestos PI Channeling Injunction ("Harper Channeling Injunction Claim"), the Trust shall expend reasonable best efforts, at its own expense, to enforce the Asbestos PI Channeling Injunction with respect to the Harper Channeling Injunction Claim and to obtain a ruling that such Harper Channeling Injunction Claim is channeled to the Trust pursuant to the Asbestos PI Channeling Injunction and Bankruptcy Code Section 524(g). In no event, however, shall the Trust be required to expend an amount greater than the Settlement Amount in carrying out its obligation under this Section VII.A. When the Trust has expended an amount equal to the Settlement Amount in defending the application of the Asbestos PI Channeling Injunction to Harper Channeling Injunction Claims, the Trust shall have no further obligation under this Section VII.A. For the avoidance of doubt, this Section VII.A. shall not obligate the Trust to retain counsel to

16

represent Harper or to pay the costs and expenses, including attorneys' fees, associated with such legal, consulting, or expert representation as Harper may choose to engage in connection with any claim against Harper.

B.    Harper shall promptly notify the Trust in writing of any demand, notice, summons, or other process received by Harper that Harper reasonably believes is a Harper Channeling Injunction Claim. If the Trust determines that a Claim presented by Harper is not a Harper Channeling Injunction Claim, the Trust shall promptly notify Harper and shall not be required to undertake to defend the application of the Asbestos PI Channeling Injunction as to such Claim. In the event of a dispute as to whether a Claim triggers the Trust's obligations under Section VII.A, the Trust and Harper shall meet and confer to attempt to resolve any such dispute. If they are unable to resolve such dispute through meeting and conferring, they may litigate the issue before the Bankruptcy Court, or, if the Bankruptcy Court declines to exercise jurisdiction, before any court of competent jurisdiction. If the Trust undertakes to defend the application of the Asbestos PI Channeling Injunction to a Claim presented by Harper, but a court of competent jurisdiction thereafter determines that the Claim is not an Asbestos PI Claim subject to the Asbestos PI Channeling Injunction and such order becomes a Final Order, the Trust shall have no further obligation to defend the application of the Asbestos PI Channeling Injunction to such Claim.

## VIII.    BANKRUPTCY-RELATED OBLIGATIONS

A.    Committee and Futures Representative Approval. By executing this Amended Agreement, Harper confirms receipt of written approval by the Committee and Futures Representative of this Amended Agreement and the releases contained herein.

B.    Approval Motion. Promptly following the Execution Date, Grace will prepare and file a motion seeking entry of the Approval Order with the Bankruptcy Court, which

17

motion will be in form and substance satisfactory to the Parties.  Grace will use its reasonable best efforts promptly to obtain entry of the Approval Order, and promptly to obtain entry of the Approval Order as a Final Order.  Harper, at its own expense, will cooperate with Grace in obtaining the Approval Order.

C.    Order.  Grace will use its reasonable best efforts to cause the Court to enter an order providing, among other things:

1.    that the terms of this Amended Agreement are approved in their entirety, and that Grace is authorized to take all actions necessary to implement and effectuate the terms of the Amended Agreement;

2.    that this Amended Agreement will be designated an Asbestos Insurance Settlement Agreement, and that Harper will be designated a Settled Asbestos Insurance Company, with respect to the Subject Insurance Policies and the Claims released herein on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization; and

3.    that the Trust, upon its creation, will be bound to the provisions of this Amended Agreement with the same force and effect as if the Trust was a Party to this Amended Agreement from the Execution Date.

D.    No Modification of Asbestos PI Channeling Injunction.  Grace and, upon its creation, the Trust, covenant that:

1.    From and after the Effective Date, they will take no action to terminate, reduce, or limit the scope of the Asbestos PI Channeling Injunction so as to materially and adversely affect Harper, except in the event of termination of this Amended Agreement pursuant to Section IX; and

18

2.      To the extent that they seek any other injunction with respect to insurance

companies that are similarly situated to Harper, they will use reasonable

best efforts to include Harper within the scope of such injunction.

E.      <u>Trust as a Party</u>.  Upon the Effective Date, the Trust automatically and without

need for further action will become a Party to this Amended Agreement.

F.      <u>Withdrawal of Objections</u>.  Harper acknowledges that, pursuant to the London

Agreement, it has withdrawn its objections to the Joint Plan of Reorganization and plan-related

documents, and to confirmation of the Joint Plan of Reorganization, and that it has expressly

consented to the Assignment of Asbestos Insurance Rights as provided in the Asbestos

Insurance Transfer Agreement, Exhibit 6 of the Exhibit Book to the Joint Plan of

Reorganization.

## IX.    TERMINATION

A.      After the Execution Date, this Amended Agreement shall terminate upon the

occurrence of any of the following events:

1.      The entry of an order of the Bankruptcy Court denying approval of this

Amended Agreement or the entry of an order by the District Court

reversing the Approval Order;

2.      The entry of an order by the Bankruptcy Court dismissing the Bankruptcy

Case or converting it into a Chapter 7 case;

3.      The entry of an order denying confirmation of the Joint Plan of

Reorganization or the entry of an order by the District Court reversing the

order approving confirmation of the Joint Plan of Reorganization;

4.      The failure of the Effective Date to occur on or before December 31,

2013; or

19

     5.     Grace or the Trust is required to return all or any part of the Settlement Amount to Harper or any of its representatives, including but not limited to Harper's administrators, trustees, receivers, or liquidators, except as provided in Section IX.C.4.

B.    After the Execution Date, Harper shall have the option to terminate this Amended Agreement by providing written notice of termination to Grace, the Committee, and the Futures Representative within thirty (30) days of the occurrence of any of the following events:

     1.     The entry of an order that becomes a Final Order stating that Subject Insurer is not a Settled Asbestos Insurance Company or that this Amended Agreement is not an Asbestos Insurance Settlement Agreement;

     2.     The confirmation of a plan of reorganization other than the Joint Plan of Reorganization that materially and adversely affects the interests of Harper under this Amended Agreement; or

     3.     The modification of the Asbestos PI Channeling Injunction in such a way as to materially and adversely affect Harper.

Failure by Harper to give notice of the exercise of its option to terminate this Amended Agreement within thirty (30) days following the occurrence of any of the foregoing events will be deemed a permanent waiver of the option to terminate with respect to that condition.

C.    In the event that this Amended Agreement is terminated pursuant to Section IX.A or B:

     1.     This Amended Agreement shall be of no further force and effect, and the Parties shall have no further obligations under this Amended Agreement,

except the obligations set forth in Section IV and Section IX.D, which shall survive termination;

2.    This Amended Agreement shall no longer be designated an Asbestos Insurance Settlement Agreement, and Harper will no longer be designated a Settled Asbestos Insurance Company, with respect to the Subject Insurance Policies and the Claims released herein on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization; and

3.    The London Agreement, or, if the London Agreement has previously been terminated, the Confidential Settlement Agreement between Grace and Harper dated November 17, 1995, will remain in force and effect as if this Amended Agreement had never existed.

4.    Grace shall return the Settlement Amount to Harper within ten (10) business days of the event triggering termination under Section IX.A, or within ten (10) business days of the receipt by Grace of notice of termination by Harper under Section IX.B, as applicable. The return of the Settlement Amount by Grace to Harper shall be effected by wire transfer in accordance with written instructions to be provided by Harper.

D.    Notwithstanding the foregoing, in the event Harper initiates or is the subject of an insolvency proceeding of any kind, and Harper or its representatives, including but not limited to Harper's administrators, trustees, receivers, or liquidators, or any other Person seeks to rescind, set aside, or otherwise affect this Amended Agreement, or otherwise seeks the return of all or any portion of the Settlement Amount, then Harper acknowledges that the Trust's claim in any such insolvency proceeding shall not be limited to the Settlement Amount. Harper and any

21

administrators, trustees, receivers, or liquidators representing Harper or its estate are and shall be directed not to rely upon or apply the Settlement Amount in any evaluation of the coverage available to Grace or the Trust under the Subject Insurance Policies or of the proceeds available under the Subject Insurance Policies to pay Claims to or on behalf of Grace or the Trust. Instead, Harper admits and acknowledges that the value of any proof of claim submitted by Grace or the Trust in connection with Bodily Injury Claims under the Subject Insurance Policies shall be the full available and unimpaired policy limits of the Subject Insurance Policies and not merely the Settlement Amount.

## X.    NON-PREJUDICE AND CONSTRUCTION OF AGREEMENT

A.    This Amended Agreement is intended to be and is a commercial accommodation between the Parties hereto and shall not be construed as an admission of coverage under the Subject Insurance Policies or any other policies subscribed to or issued by Harper in favor of the Grace Group nor shall this Amended Agreement or any provision hereof be construed as a waiver, modification, or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Insurance Policies.

B.    This Amended Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, this Amended Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Persons outside the scope of this Amended Agreement. This Amended Agreement is without prejudice to the positions taken by Harper with regard to other insureds, and without prejudice with regard to positions taken by Grace with regard to other insurers. The Parties specifically disavow any intention to create rights in third parties under or in relation to this Amended Agreement.

C.    This Amended Agreement is the jointly drafted product of arms'-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed.   In particular, with respect to interpretation of this Amended Agreement, the Parties waive any benefits from the principle of contra proferentem or other principles which would result in the interpretation of any ambiguities against insurers.   No Party shall be deemed to be the drafter of this Amended Agreement or of any particular provision or provisions, and no part of this Amended Agreement shall be construed against any Party on the basis of the Party's identity as an insurance company or as the drafter of any part of this Amended Agreement.

**XI.    NO MODIFICATION**

This Amended Agreement may be amended, modified, superseded, or canceled, and any of the terms hereof may be waived, only by a written instrument which specifically states that it amends, modifies, supersedes, or cancels this Amended Agreement, executed by or on behalf of both Parties or, in the case of a waiver, by or on behalf of the Party waiving compliance. The failure of a Party at any time or times to require performance of any provision of this Amended Agreement shall in no manner affect the right at a later time to enforce the same.   No waiver by a Party of any condition, or of any breach of any term, covenant, representation, or warranty contained in this Amended Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach, or a waiver of any other condition or of any breach of any other term, covenant, or warranty.

**XII.    EXECUTION**

This Amended Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

23

## XIII.  GOVERNING LAW

This Amended Agreement and the performance of the transactions contemplated hereby shall be governed by and construed and enforced in accordance with the laws of the State of New York, other than the conflict-of-laws provisions thereof that would otherwise require the application of the substantive law of any other jurisdiction.

## XIV.  ARBITRATION

A.    Except as provided in Section VII.B, the Parties agree to resolve any dispute which arises regarding the terms of this Amended Agreement or the implementation thereof (a "Dispute") by way of binding arbitration in accordance with the Center for Public Resources Rules for Non-Administered Arbitration of Business Disputes (the "Rules") and the provisions of this Section.

B.    Except as provided in Section VII.B, in the event any Dispute arises that the Parties are unable to resolve by agreement, any Party to such Dispute shall have the right to commence binding arbitration of such Dispute under this Section by sending written notice demanding such arbitration to the other Party in accordance with Section XV.  Such notice shall briefly describe the Dispute as well as the relief sought by the Party demanding arbitration.  Promptly following any such notice, the Parties shall attempt to agree upon the selection of an arbitrator (the "Arbitrator") to resolve such Dispute.  If the Parties have not agreed upon the selection of the Arbitrator by the fifteenth day following delivery of the notice demanding arbitration, then any Party may request the Center for Public Resources to select the Arbitrator, provided that any Arbitrator selected by the Center for Public Resources shall be a retired federal or state court judge.  Any such selection of the Arbitrator by the Center for Public Resources shall be conclusive and binding on the Parties.

C.    All arbitrations under this Section XIV shall be conducted in accordance with the Rules and the Parties shall faithfully abide by the Rules and abide by and perform any award rendered by the Arbitrator.    All such arbitrations shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1-16, and judgment upon the award may be entered by any court having jurisdiction thereof.  Any such arbitration shall be conducted in New York, New York.

D.    Any process against Harper in, or in connection with, any suit, action, or proceeding arising out of or relating to this Amended Agreement or any of the transactions contemplated by this Amended Agreement may be served on the Representative personally or by mail at the address set forth in Section XV with the same effect in either case as though served upon Harper personally.

## XV.    NOTICES

A.    All notices, requests, demands, and other communications required or permitted to be given under this Amended Agreement shall be deemed to have been duly given if in writing and delivered in person, mailed first-class postage prepaid, or by registered or certified mail, or transmitted by facsimile, addressed as follows:

If to Grace:

W. R. Grace & Co.
7500 Grace Drive
Columbia, MD  21044
Attn: General Counsel
Telephone:  (410) 531-4000
Facsimile:  (410) 531-4545

With a copy to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022
Attn:  Theodore L. Freedman
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

If to Harper:

Enstar (EU) Ltd.
Avaya House
2 Cathedral Hill
Attn:  David Atkins
Guildford GU2 7YL
England
Telephone:  +44 1483 452622
Facsimile:  +44 1483 452644

With a copy to:

Law Offices of Jay M. Borowsky
335 South 2nd Street
3rd Floor
Philadelphia, PA 19106
Attn:  Jay M. Borowsky
Telephone:  (215) 605-1598
Facsimile:  (267) 417-0345

If to the Committee:

Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC  20005
Attn:  Peter Lockwood
Telephone:  (202) 862-5000
Facsimile:  (202) 862-3301

and

Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY  10152
Attn:  Elihu Inselbuch
Telephone:  (212) 319-7125
Facsimile:  (212) 644-6755

With a copy to:

Anderson Kill & Olick, PC
1251 Avenue of the Americas
New York, NY  10020
Attn:  Robert M. Horkovich
Telephone:  (212) 278-1322
Facsimile:  (212) 278-1733

If to the Futures Representative:

David T. Austern
3110 Fairview Park Drive
Suite 200
Falls Church, VA 22042-0683
Telephone: (703) 205-0835
Facsimile: (703) 205-6249

With a copy to:

Orrick, Herrington & Sutcliffe LLP
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Attn: Roger Frankel
Telephone: (202) 339-8400
Facsimile: (202) 339-8500

B.    Any Party or the Designated Representative may change the address to which such communications are to be directed to it by giving notice to the others, in the manner required in this Section.

## XVI.    <u>INTEGRATION</u>

A.    This Amended Agreement, including the attachment hereto, constitutes the entire Amended Agreement and understanding between Harper and Grace with respect to the subject matter hereof, and supersedes all prior agreements, arrangements, and understandings relating to the subject matter hereof. For the avoidance of doubt, this Amended Agreement supersedes the London Agreement, which will have no further force and effect with respect to the Subject Insurance Policies as between the Parties, unless this Amended Agreement is terminated in accordance with Section IX. Notwithstanding the foregoing, this Amended Agreement does not supersede the London Agreement with respect to agreements between the Parties contained therein relating to insurance policies to which Harper severally subscribed that are not Subject Insurance Policies, or with respect to agreements between Grace and Persons other than Harper who are parties to the London Agreement.

IN WITNESS WHEREOF, the Parties have executed this Amended Agreement by their authorized representatives as of the date first above written.

Date: 5/20/10          W. R. GRACE & CO.

                    Signed: _Richard C. Finke_____

                    Name: RICHARD C. FINKE

                    Title: ASSISTANT GENERAL COUNSEL


Date: 5/24/10          HARPER INSURANCE LTD.

                    Signed: _____

                    Name: ALAN TURNER

                    Title: GENERAL MANAGER, UK BRANCH

28

**Attachment A**

**Subject Insurance Policies**

| Begin | End | Layer | Policy Number |
|-------|-----|-------|---------------|
| 06/30/77 | 06/30/78 | 4 | 77DD1631C |
| 06/30/77 | 06/30/78 | 5 | 77DD1632C |
| 06/30/78 | 06/30/79 | 3 | 78DD1417C |
| 06/30/78 | 06/30/79 | 4 | 78DD1418C |