**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 01-1139 (JKF) |
| W.R. GRACE & CO., *et al.*, | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | **Related to Docket No.  21345, 24407, 24795, 24796,** |
| | ) | **24797, 24801, 24802** |

**SUR-REPLY OF MARYLAND CASUALTY COMPANY
IN OPPOSITION TO DEBTORS' OBJECTION TO CLAIMS**

Maryland Casualty Company ("MCC"), by and through its undersigned counsel, hereby further responds in opposition to *Debtors' Objection to Claims filed by Maryland Casualty Company* [Docket No. 21345] ("Claims Objection") and to the replies filed on behalf of the Debtors[1] [Docket No. 24801] ("Debtors' Reply"), the Libby Plaintiffs [Docket No. 24797] and the Official Committee of Asbestos Personal Injury Plaintiffs and the Asbestos PI Future Plaintiffs' Representative (jointly " Committees") [Docket No. 24802].

**A.    Judicial Estoppel**

Debtors concede that their prior representations to this Court are diametrically opposite from the representations they now ask this Court to accept.  Indeed, the Debtors' Reply succinctly describes Debtors' prior position: "the MCC Lawsuits were not independent of Grace and triggered the Indemnities."  Debtors' Reply p. 10.

Notwithstanding this concession, Debtors attempt to sidestep judicial estoppel with a web of technical arguments and excuses.  However, judicial estoppel prohibits a party "from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase," and there is no way to reconcile Debtors prior <u>unequivocal</u> representations to <u>this</u> Court with the new position they now ask <u>this</u> Court to adopt.  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

---

[1] Capitalized terms not defined herein, have the meaning defined in *Response of Maryland Casualty Company in Opposition to Debtors' Objection to Claims* [Docket No. 24407] ("MCC Response").

Debtors first argue that their complete reversal of position was a mere "inconsistency" excused by the distinguishable practice of "pleading in the alternative." A party pleads in the alternate when it sets out two or more alternate positions to the court. Fed. R. Civ. P. 8(d)(2). Here, in contrast, Debtors made consistent, unequivocal representations to this Court in support of the Preliminary Injunction. At no time did the Debtors simultaneously present two alternative positions to this Court. Instead, years after the Preliminary Injunction was granted, Debtors completely reversed their position in support of their Claim Objection. This is <u>not</u> pleading in the alternative;[2] it is making contradictory representations to the Court for separate purposes.[3]

Debtors further attempt to avoid judicial estoppel through a confusing maze of arguments focused on their conduct before the District Court and the Third Circuit Court of Appeals. However, the fact that Debtors hedged their bets on MCC's Indemnity Rights before the Third Circuit Court of Appeals does not excuse a reversal of representations made to <u>this</u> Court. Debtors' representations to <u>this</u> Court <u>successfully</u> convinced <u>this</u> Court to grant, maintain and enforce the Preliminary Injunction.

Recognizing that courts must prevent parties from "deliberately changing positions according to the exigencies of the moment,"[4] this Court previously admonished the Debtors that it would not tolerate reversal of position for tactical advantage.[5] When it served the Debtors'

---

[2] *See Continental Illinois Corporation v. Commissioner of Internal Revenue*, 998 F.2d 513, 518 (7th Cir. 1993) ("A party can argue inconsistent positions in the alternative, but once it has sold one to the Court, it cannot turn around and repudiate it in order to have a second victory").

[3] Debtors claim to have consistently maintained their new position for six years, but fail to cite any examples of doing so in <u>this</u> Court. On the contrary, even at confirmation, Debtors presented direct testimony that MCC provided industrial hygiene services "in connection with its insurance coverage for Grace," and that the claims that underlie the MCC Claims "are the same types of exposures, same claims, that would underlie the Libby Claims against Grace." *Testimony of Jay Hughes*, Transcript of September 14, 2009 Phase II Confirmation Hearing, p. 261, 262.

[4] *New Hampshire v. Maine*, 532 U.S. at 750.

[5] *See*, *Transcript of Hearing held on January 5, 2010,* dated January 22, 2010 (U.S. Bankruptcy Court, D. Del., Case No. 01-01139, Docket No. 24181), at 293 (emphasis added).

purpose to represent to this Court that the Existing Claims were <u>not</u> independent and <u>did</u> trigger the MCC Indemnity Claims, they did so.  Now, it apparently serves the Debtors to make the opposite representations to this Court for a separate purpose.  As this Court warned, the Debtors' reversal should not be tolerated.

Finally, the Libby Plaintiffs and the Committees make various arguments in an effort to avoid judicial estoppel, but fail to address the obvious: Libby Plaintiffs and the Committees have attempted to join the <u>Debtors' objection</u> to the MCC Claims.  If the Debtors are judicially estopped from prosecuting the Claims Objection, that estoppel is not erased by the participation of third parties.  Such a loophole would effectively eviscerate the doctrine of judicial estoppel in chapter 11 bankruptcy cases.  Debtors such as Grace would be free to play fast and loose with their representations knowing that the consequences of those representations can be nullified by simply finding a party-in-interest willing to join a subsequent contested matter.  This cannot be the state of the law, and neither the Libby Plaintiffs nor the Committees have cited to any cases that would support such an outcome.

## B.    <u>Ripeness</u>

As explained in the MCC Response, the MCC Claims arise from both the Existing Libby Claims,[6] and the Prospective Claims.[7]  Although this Court has already concluded that the Existing Claims are not "independent," these appear to be the focus of the Claims Objection.  However, since a court of competent jurisdiction could determine that the alleged MCC conduct is derivative of Debtors, or that MCC's alleged conduct was that of an agent acting at the

---

[6] Those claims against MCC set forth in the three complaints filed by the Libby Claimants that are attached to the Claims Objection as Exhibits B-D.

[7] Claims against MCC relating to the Debtors, their products or their operations that have not yet been asserted by the Libby Plaintiffs, or by any other parties.  The *Claims Bar Date Notice* issued in this case required MCC to assert MCC Claims that may arise from these claims.  *See,* Docket No. 1960 ("any creditor having a claim against the Debtors, no matter how remote or contingent, must file a proof of claim").  There are also Grace-related "direct action" claims pending against MCC.

direction of Debtors as principals, or that MCC has no liability for the Existing Claims at all, adjudication of the potentially resulting MCC Claims is not only advisory, but may also be academic.[8]  Neither the Prospective Claims nor the Existing Claims are ripe for adjudication.

While claiming to be "mystified" by MCC's ripeness arguments, Debtors acknowledge that, because Plan confirmation remains pending, adjudication of the Claims Objection is potentially unnecessary.  Debtor Reply, p. 13.  Confirmation of the Plan will determine whether the MCC Claims will ever be triggered.  As MCC consistently argued throughout the Plan confirmation process, MCC is a Settled Asbestos Insurance Company under the Plan and will be fully and permanently protected by the Asbestos PI Channeling Injunction from any and all Asbestos PI Claims.  Thus, the MCC Claims may never need to be adjudicated.

## C.      Reargument By The Libby Plaintiffs

The Libby Plaintiffs' attempted participation in this contested matter is a transparent effort to reargue points that this Court has already heard and considered.  For instance, ignoring this Court's prior conclusion that they have demonstrated no basis for their alleged independent claims,[9] the Libby Plaintiffs rely upon the vacated District Court Opinion to reargue that issue. The District Court Opinion was effectively extinguished, and has no precedential effect whatsoever.  *O'Connor v. Donaldson*, 422 U.S. 563, 577 (1975).  Moreover, the Third Circuit ruled that the District Court erred in making <u>any</u> rulings on MCC's Indemnity Rights,  and

---

[8] *Capitol Indemnity Corporation v. Elston Self Service Wholesale Groceries, Inc*, 551 F.Supp.2d 711, 729 (N.D. Ill. 2008) (internal citations omitted) (An "indemnification issue will become ripe only upon completion of the [underlying] litigation, for its resolution depends upon an analysis of the type of relief, if any, ultimately obtained in [the underlying] suit."); *see also, e.g., Lear Corporation v. Johnson Electric Holdings Ltd.,* 353 F.3d 580, 583 (7th Cir. 2003)(the duty to indemnify is not ripe for adjudication until the underlying liability has been established).

[9] *See, Transcript of Hearing held on August 26, 2002*, dated September 9, 2002 (U.S. Bankruptcy Court, D. Del. Case No. 01-01139, Docket No. 2670), at 15.

implicitly reversed the District Court's baseless ruling on this issue by finding the "prospect of indemnity."[10]

The Libby Plaintiffs also appear to reargue their Plan confirmation objection.  At the Confirmation Hearing, the Libby Plaintiffs asked this Court to "clarify" that the Asbestos PI Channeling Injunction did not enjoin their prosecution of "independent claims."[11]  However, despite having ample opportunity to do so, the Libby Plaintiffs failed to present any evidence of those "independent claims" at the Confirmation Hearing.  The Libby Plaintiffs should not be permitted a second opportunity to present evidence or argument on this issue.

**D.    <u>Relief Sought</u>**

Should the Court decline to apply judicial estoppel <u>and</u> determine that certain MCC Claims are ripe for adjudication, it is critical to frame the precise relief sought by Debtors.

In the Claim Objection, the Debtors asked this Court to "disallow all of the Proofs of Claim."  Claim Objection, p. 31.  In contrast, the Debtors' Reply suggests that they seek a declaratory judgment on "the meaning of the Indemnities."[12] Debtors' Reply, p. 14.  Taken as a whole, however, Debtors' Reply indicates that the objection may be limited to those MCC Claims that are contractual indemnity claims arising from the Existing Claims.[13]  Thus, MCC is uncertain as to what it is being compelled to defend.  Before the Claims Objection proceeds, a specific and focused statement of the precise relief sought by the Debtors must be provided.

---

[10] *In re W.R. Grace & Co.*, 115 Fed. Appx. 565, 568 fn. 2, 569 (3d Cir. 2004).

[11] Notably, both the Debtors and the ACC opposed this request, and it appeared that the Court declined the invitation to so "clarify."

[12] Such a determination would be analogous to the "coverage litigation" that this Court has vowed to avoid.

[13] The MCC Proofs of Claim assert both contractual <u>and</u> common law claims, and those claims are <u>not</u> limited to those triggered by the Existing Claims.  MCC Proof of Claim, p. 3 (Debtors are "liable to MCC on common law and/or statutory grounds").

WHEREFORE, MCC respectfully requests that (i) the relief requested in the Claims Objection be denied, with prejudice, and (ii) the Court grant such other and further relief as it deems just and proper.

Dated: June 2, 2010

CONNOLLY BOVE LODGE & HUTZ LLP

/s/ Jeffrey C. Wisler
Jeffrey C. Wisler (#2795)
Marc J. Phillips (#4445)
Kelly M. Conlan (#4786)
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE  19899
(302) 658-9141 Telephone

OF COUNSEL:

Edward J. Longosz, II
Gabriella Cellarosi
Eckert Seamans Cherin & Mellott, LLC
1747 Pennsylvania Avenue, N.W.,
Suite 1200
Washington, DC  20006
(202) 659-6600 Telephone

Richard A. Ifft
Karalee C. Morell
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
(202) 719-7170 Telephone
(202) 719-7049 Facsimile

*Attorneys for Maryland Casualty Company*

#781404