## <u>Exhibit A</u>

### Form of Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re docket no.** _____ |
| | ) | **Hearing Agenda item no.** _____ |

## ORDER AUTHORIZING ENTRY INTO A CONSENT DECREE WITH THE UNITED STATES REGARDING THE BLACKBURN AND UNION PRIVILEGES SUPERFUND SITE - WALPOLE, MA.

Upon consideration of the *Motion of Debtors for Entry of an Order Authorizing Entry Into a Consent Decree with the United States Regarding the Blackburn and Union Privileges Superfund Site - Walpole, MA.* (the "Motion"); and due and proper notice of the Motion having been given; and it appearing that the relief requested in the Motion is

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

in the best interests of the Debtors,[2] their estates and creditors, it is hereby ORDERED that:

1.    The Motion is granted in its entirety.

2.    The Debtors are authorized to enter into the Consent Decree, which is attached to this Order as Exhibit I.

3.    The Debtors are authorized to consummate the transactions contemplated in the Consent Decree, including the use of the Debtors' estate property and resources necessary to undertake the performance of the work set forth in the Consent Decree.

4.    Claim No. 9634 of the U.S. EPA with respect to Past Response Costs and Future Oversight Costs and Future Response Costs at the Site is resolved by the Consent Decree as follows:

    (i)    The U.S. E.P.A. shall have an allowed general unsecured claim against the Debtors in the amount of $715,930 (the "Allowed Past Response Cost Claim"). The Allowed Past Response Cost Claim will be paid in the same manner as all other allowed general unsecured claims on the effective date of a confirmed chapter 11 plan of reorganization for the Debtors. Notwithstanding what the Debtors' plan may provide, however, Interest will not accrue on the Allowed Past Response Cost Claim until 30 days after the Effective Date of the Consent Decree, at which point, Interest will accrue on the Allowed Past Response Cost Claim at the rate established by 26 U.S.C. § 9507; and

---

[2]    Capitalized terms not defined in this Order shall have the meaning ascribed to them in, as the case may be, the Consent Decree or the *First Amended Joint Plan of Reorganization in these Chapter 11 Cases*, dated February 27, 2009, as amended.).

(ii)    The Debtors are authorized to pay 50% of Future Oversight Costs and Future Response Costs.    These costs shall be payable within 30 days of Settling Defendants' receipt of each bill requiring payment or within 30 days of the effective date of the Debtors' plan of reorganization, whichever is later. Payment of Future Oversight Costs incurred by U.S. EPA shall be capped at the greater of $2,000,000 or 15% of the total costs incurred by the Settling Defendants to complete the ROD remedy.

5.    The Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order and the Consent Decree.

6.    This Order is effective immediately upon its entry, notwithstanding Fed. R. Bankr. P. 6004(h).

Dated: _____, 2010

_____
Honorable Judith K. Fitzgerald
United States Bankruptcy Judge

3

## Exhibit I

### Consent Decree

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | |
| BIM INVESTMENT CORPORATION, | ) | |
| SHAFFER REALTY NOMINEE TRUST, | ) | |
| TYCO HEALTHCARE GROUP LP, and | ) | |
| W.R. GRACE & CO.-CONN., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CONSENT DECREE**

TABLE OF CONTENTS

I. BACKGROUND ......................................................................................................... 1
II.  JURISDICTION ...................................................................................................... 3
III.  PARTIES BOUND ................................................................................................ 3
IV.  DEFINITIONS ....................................................................................................... 3
V.  GENERAL PROVISIONS ...................................................................................... 7
VI.  PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS ............................. 9
VII.  REMEDY REVIEW ............................................................................................. 12
VIII.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS ............................. 13
IX.  ACCESS AND INSTITUTIONAL CONTROLS ...................................................... 14
X.  WITHDRAWAL OF NOTICE OF FEDERAL LIEN ................................................ 18
XI.  REPORTING REQUIREMENTS .......................................................................... 18
XII.  EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS ................................. 19
XIII.  PROJECT COORDINATORS .............................................................................. 20
XIV.  PERFORMANCE GUARANTEE .......................................................................... 21
XV.  CERTIFICATION OF COMPLETION ................................................................... 25
XVI.  EMERGENCY RESPONSE ................................................................................. 26
XVII.  PAYMENTS FOR RESPONSE COSTS ............................................................... 26
XVIII.  INDEMNIFICATION AND INSURANCE ............................................................ 30
XIX.  FORCE MAJEURE ............................................................................................ 31
XX.  DISPUTE RESOLUTION .................................................................................... 32
XXI.  STIPULATED PENALTIES ................................................................................. 35
XXII.  COVENANTS NOT TO SUE BY PLAINTIFF ...................................................... 37
XXIII.  COVENANTS BY SETTLING DEFENDANTS .................................................... 39
XXIV.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION ............................ 40
XXV.  ACCESS TO INFORMATION ............................................................................ 41
XXVI.  RETENTION OF RECORDS .............................................................................. 42
XXVII.  NOTICES AND SUBMISSIONS ....................................................................... 43
XXVIII.  EFFECTIVE DATE ........................................................................................ 45
XXIX.  RETENTION OF JURISDICTION ..................................................................... 45
XXX.  APPENDICES .................................................................................................. 45
XXXI.  COMMUNITY RELATIONS .............................................................................. 46
XXXII.  MODIFICATION ............................................................................................ 46
XXXIII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ............................ 46
XXXIV.  SIGNATORIES/SERVICE ............................................................................. 47
XXXV.  FINAL JUDGMENT ....................................................................................... 47

## I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.      The United States in its complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA and the Department of Justice for response actions at the Blackburn & Union Privileges Superfund Site in Walpole, Massachusetts (the "Site"), together with accrued interest; and (2) performance of response actions at the Site by the defendants consistent with the National Contingency Plan, 40 C.F.R. Part 300, as amended ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the Commonwealth of Massachusetts (the "Commonwealth") on January 15, 2009, of negotiations with potentially responsible parties regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the Commonwealth with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the Massachusetts Executive Office of Energy and Environmental Affairs, the United States Department of the Interior, and the National Oceanic and Atmospheric Administration on January 15, 2009, of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal or State trusteeship and encouraged the trustees to participate in the negotiation of this Consent Decree.

E.      Settling Defendant W.R. Grace & Co.-Conn. ("Grace") has filed for protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"), *In re W.R. Grace & Co., et al.*, No. 01-01139 (JKF). In connection with its reorganization, Grace has entered into a multi-site settlement agreement with EPA. The Blackburn & Union Privileges Superfund Site is an "Additional Site" under that agreement.

F.      The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor any matter of fact or law alleged in the complaint except as set forth in this Consent Decree, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

G.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on May 31, 1994, 59 Fed. Reg. 27,989.

H.    In response to a release or a substantial threat of a release of a hazardous substances at or from the Site, Settling Defendant Tyco Healthcare Group LP ("Tyco Healthcare") performed a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430 and an Administrative Order on Consent reached with EPA on September 29, 1999.

I.    Tyco Healthcare completed a Remedial Investigation ("RI") Report on March 30, 2007, and Tyco Healthcare completed a draft Feasibility Study ("FS") Report, subsequently approved with modifications by EPA, in June 2008.

J.    Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of EPA's proposed plan for remedial action on May 29, 2008, and June 5, 2008, respectively, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

K.    The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on September 30, 2008, in which the Commonwealth has concurred. The ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

L.    In accordance with Section § 107(*l*) of CERCLA, 42 U.S.C. § 9607(*l*), on April 16, 2009, after providing notice to Settling Defendants BIM Investment Corporation and Shaffer Realty Nominee Trust, EPA filed a Notice of Federal Lien with the Norfolk County Registry of Deeds for all costs and damages for which BIM Investment Corporation and Shaffer Realty Nominee Trust are liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

M.    Based on the information presently available to EPA, EPA believes that the Work, as defined in Paragraph 4, will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

N.    Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the Remedial Action selected by the ROD and the Work to be performed by Settling Defendants shall constitute a response action taken or ordered by the President.

O.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

2

## II. JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2.      This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their heirs, successors and assigns. Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.      Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated under this Consent Decree in accordance with its terms. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.      Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, et seq.

"Commonwealth" shall mean the Commonwealth of Massachusetts.

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 104.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Oversight Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs after the date of lodging of this Consent Decree in monitoring and supervising Settling Defendants' performance of the Work to determine whether such performance is consistent with the requirements of this Consent Decree, including costs incurred in reviewing plans, reports and other documents submitted pursuant to this Consent Decree, as well as costs incurred in overseeing implementation of the Work. Future Oversight Costs shall include, but not be limited to, payroll costs, costs incurred by EPA and its representatives (including contractors) under or in connection with a contract or arrangement for technical assistance in overseeing and reviewing the conduct of activities required under the Consent Decree, travel costs, laboratory costs, technical support costs, interagency and intergovernmental agreement costs (including ATSDR costs), costs under a cooperative agreement with the Commonwealth, and data management costs, insofar as such costs are incurred for activities listed in the previous sentence.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs after the date of lodging of this Consent Decree pursuant to the provisions of this Consent Decree other than those costs specifically included in the definition of Future Oversight Costs. Future Response Costs shall include, but not be limited to, costs incurred to enforce the Consent Decree (including costs incurred pursuant to Section XX (Dispute Resolution); costs incurred pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement Institutional Controls including, but not limited to, the amount of just compensation), XVI (Emergency Response), and Paragraph 86 of Section XXII (Work Takeover); community relations costs; enforcement support costs; records management costs; ATSDR costs other than those specifically included in the definition of Future Oversight Costs; and accrued Interest.

"Grace" shall mean Settling Defendant W.R. Grace & Co.-Conn.

"Institutional Controls" shall mean those aspects of the response action involving legal

and administrative measures, but not engineering controls, required to ensure the long-term effectiveness and protectiveness of response actions performed at the Site.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"M. G. L. c. 21E" shall mean the Massachusetts Oil and Hazardous Materials Release Prevention and Response Act, as amended.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O&M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to Section VI (Performance of the Work by Settling Defendants) and the Statement of Work ("SOW").

"Owner Settling Defendants" shall mean BIM Investment Corporation and Shaffer Realty Nominee Trust.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States and Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through the Effective Date, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date, except that "Past Response Costs" shall not include those costs included in the definition of "Future Oversight Costs" or "Future Response Costs."

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in the ROD and the SOW.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901, *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on September 30, 2008, by the Regional Administrator, EPA Region 1, or his delegate, and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Action" shall mean those activities, except for Operation and Maintenance, to be undertaken by Settling Defendants to implement the ROD, in accordance with the SOW and the final Remedial Design and Remedial Action Work Plans and other plans approved by EPA.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 13 and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by Settling Defendants to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 12 and approved by EPA, and any amendments thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean those persons identified in Appendix D to this Consent Decree.

"Site" shall mean the Blackburn & Union Privileges Superfund Site located in Walpole, Norfolk County, Massachusetts, encompassing the areal extent of contamination resulting from the operations of industrial facilities formerly located on both the east and west side of South Street, and depicted generally on the map attached as Appendix C.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design, Remedial Action, and Operation and Maintenance at the Site, as set forth in Appendix B to this Consent Decree, and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"Tyco Healthcare" shall mean Settling Defendant Tyco Healthcare Group LP.

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); (4) any "hazardous material" or "oil" under the Massachusetts Oil and Hazardous Release Prevention and Response Act, M. G. L. c. 21E, § 2; and (5) any "hazardous waste" under the Massachusetts Hazardous Waste Management Act, M. G. L. c. 21C § 2.

"West Street Dam" shall mean the dam on the Neponset River in Walpole, MA, known as the West Street Dam and generally depicted on Figure L-8 of the ROD.

"Work" shall mean all activities Settling Defendants are required to perform under this Consent Decree, except those required by Section XXVI (Retention of Records).

## V. GENERAL PROVISIONS

5.    Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment by the design and implementation of response actions at the Site by Settling Defendants, to reimburse response costs of the Plaintiff, and to resolve the claims of Plaintiff against Settling Defendants as provided in this Consent Decree.

6.    Commitments by Settling Defendants.

a.    Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth in this Consent Decree or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree.  Settling Defendants shall also reimburse the United States for Past Response Costs, Future Response Costs, and Future Oversight Costs as provided in this Consent Decree.

b.    The obligations of BIM Investment Corporation, Shaffer Realty Nominee Trust, and Tyco Healthcare to finance and perform the Work and to pay amounts owed the United States under this Consent Decree are joint and several.  In the event of the insolvency of any Settling Defendant or the failure by any Settling Defendant to implement any requirement of this Consent Decree, the remaining Settling Defendants among BIM Investment Corporation, Shaffer Realty Nominee Trust, and Tyco Healthcare shall fulfill the obligations of the non-performing Settling Defendant and all remaining requirements of the Consent Decree.

7.    Compliance With Applicable Law.  All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP.

8.    Permits.

a.    As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e),  and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-Site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-Site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.     Settling Defendants may seek relief under the provisions of Section XIX (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work, provided that they have submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

c.     This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

9.     Notice to Successors-in-Title.

a.     With respect to any property owned or controlled by Owner Settling Defendants that is located within the Site, within 15 days after the Effective Date, Owner Settling Defendants shall submit to EPA for review and approval a notice to be filed with the Norfolk County Registry of Deeds, which shall provide notice to all successors-in-title that the property is part of the Site, that EPA selected a remedy for the Site on September 30, 2008, and that potentially responsible parties have entered into a Consent Decree requiring implementation of the remedy. Such notices shall identify the United States District Court in which the Consent Decree was filed, the name and civil action number of this case, and the date the Consent Decree was entered by the Court. Owner Settling Defendants shall record the notices within 10 days of EPA's approval of the notices. Owner Settling Defendants shall provide EPA and the other Settling Defendants with a certified copy of the recorded notices within 10 days of recording such notices.

b.     At least 30 days prior to the conveyance of any interest in property located within the Site including, but not limited to, fee interests, leasehold interests, and mortgage interests, the Owner Settling Defendant conveying the interest shall give the grantee written notice of (i) this Consent Decree, (ii) any instrument by which an interest in real property has been conveyed that confers a right of access to the Site (hereinafter referred to as "access easements") pursuant to Section IX (Access and Institutional Controls), and (iii) any instrument by which an interest in real property has been conveyed that confers a right to enforce restrictions on the use of such property (hereinafter referred to as "restrictive easements") pursuant to Section IX (Access and Institutional Controls). At least 30 days prior to such conveyance, the Owner Settling Defendant conveying the interest shall also give written notice to EPA , the Commonwealth, and the other Settling Defendants of the proposed conveyance, including the name and address of the grantee, and the date on which notice of the Consent Decree, access easements, and/or restrictive easements was given to the grantee.

c.     In the event of any such conveyance, each Owner Settling Defendant's obligations under this Consent Decree, including, but not limited to, its obligation to provide or secure access and Institutional Controls, as well as to abide by such Institutional Controls, pursuant to Section IX (Access and Institutional Controls), shall continue to be met by such Owner Settling Defendant. In no event shall the conveyance release or otherwise affect the liability of Owner Settling Defendants to comply with all provisions of this Consent Decree, absent the prior written consent of EPA. If the United States approves, the grantee may perform some or all of the Work under this Consent Decree.

8

VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS

10.    The Settling Defendants shall perform the Work for the Site as described in this Consent Decree; in the ROD; in the SOW (which the Parties agree is consistent with the ROD); and any modifications thereto. The ROD, the SOW, and all modifications to the SOW are hereby incorporated by reference and made a part of this Decree. The Work shall be performed in accordance with all provisions of this Decree, the SOW, and any modifications to the SOW, and all design specifications or other plans or scheduled attached to or approved pursuant to the SOW.

11.        Selection of Supervising Contractor.

a.    All aspects of the Work to be performed by Settling Defendants pursuant to this Section VI and Sections VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XVI (Emergency Response) shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA, after reasonable opportunity for review and comment by the Commonwealth. Within 10 days after the lodging of this Consent Decree, Settling Defendants shall notify EPA and the Commonwealth in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. With respect to any contractor proposed to be Supervising Contractor, Settling Defendants shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQ E4-2004, "Quality Systems for Environmental Data and Technology Programs – Requirements with Guidance for Use" (American Society for Quality, August 2004), by submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001; Reissued May 2006) or equivalent documentation as determined by EPA. EPA will issue, in writing, a notice of disapproval or an authorization to proceed. If at any time thereafter, Settling Defendants propose to change a Supervising Contractor, Settling Defendants shall give such notice to EPA and the Commonwealth and must obtain an authorization to proceed from EPA, after a reasonable opportunity for review and comment by the Commonwealth, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b.    If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendants in writing. Settling Defendants shall submit to EPA and the Commonwealth a list of contractors, including the qualifications of each contractor, that would be acceptable to Settling Defendants within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA and the Commonwealth of the name of the contractor selected within 21 days of EPA's authorization to proceed.

c.    If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents Settling Defendants from

meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendants may seek relief under the provisions of Section XIX (Force Majeure) hereof.

  12.  Remedial Design.

    a.  Consistent with the deadlines provided in the SOW, attached as Appendix B hereto, Settling Defendants shall submit to EPA and the Commonwealth a work plan for the design of the Remedial Action at the Site ("Remedial Design Work Plan" or "RD Work Plan"). The Remedial Design Work Plan shall provide for design of the remedy set forth in the ROD, in accordance with the SOW and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree and/or the SOW. Upon its approval by EPA, the Remedial Design Work Plan shall be incorporated into and become enforceable under this Consent Decree. In accordance with the schedule set forth in the SOW, Settling Defendants shall submit to EPA and the Commonwealth a Health and Safety Plan for field design activities which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

    b.  The Remedial Design Work Plan shall include plans and schedules for implementation of all remedial design and pre-design tasks identified in the SOW. In addition, the Remedial Design Work Plan shall include a schedule for completion of the Remedial Action Work Plan.

    c.  Upon approval of the Remedial Design Work Plan by EPA, after a reasonable opportunity for review and comment by the Commonwealth, and submittal of the Health and Safety Plan for all field activities to EPA and the Commonwealth, Settling Defendants shall implement the Remedial Design Work Plan. Settling Defendants shall submit to EPA and the Commonwealth all plans, submittals and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section XII (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Defendants shall not commence further Remedial Design activities at the Site prior to approval of the Remedial Design Work Plan.

  13.  Remedial Action.

    a.  Consistent with the deadlines provided in the SOW, attached as Appendix B hereto, Settling Defendants shall submit to EPA and the Commonwealth a work plan for the performance of the Remedial Action at the Site ("Remedial Action Work Plan"). The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan and approved by EPA. Upon its approval by EPA, the Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent Decree. At the same time as they submit the Remedial Action Work Plan, Settling Defendants shall submit to EPA and the Commonwealth a Health and Safety Plan for field activities required by the Remedial Action Work Plan which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited

to, 29 C.F.R. § 1910.120.

      b.     Upon approval of the Remedial Action Work Plan by EPA, after a reasonable opportunity for review and comment by the Commonwealth, Settling Defendants shall implement the activities required under the Remedial Action Work Plan. Settling Defendants shall submit to EPA and the Commonwealth all plans, submittals, or other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XII (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Defendants shall not commence physical Remedial Action activities at the Site prior to approval of the Remedial Action Work Plan.

14.     Settling Defendants shall continue to implement the Remedial Action and O&M until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

15.     <u>Modification of the SOW or Related Work Plans.</u>

      a.     If EPA determines that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD.

      b.     For the purposes of this Paragraph 15 and Paragraph 51 (Completion of the Work) only, the "scope of the remedy selected in the ROD" is: the remedy described in Section L of the ROD, whose major components include but are not limited to: excavation and dredging of contaminated soils and sediments and off-site disposal of these materials; extraction and treatment of groundwater from a portion of the Site and discharge of treated effluent to the Former Mill Tailrace, as defined in the SOW; long-term monitoring of groundwater, surface water, soils and sediments; operation and maintenance of the Area of Containment, as defined in the SOW, and other remedial measures; Institutional Controls; and periodic five-year reviews of the remedy.

      c.     If Settling Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Paragraph 69 (Record Review) of Section XX (Dispute Resolution). The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

      d.     Settling Defendants shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

      e.     Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

16.    Nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

17.    a.    Settling Defendants shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material.  However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

(1)    Settling Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation.  Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2)    The identity of the receiving facility and state will be determined by Settling Defendants following the award of the contract for Remedial Action construction.  Settling Defendants shall provide the information required by Paragraph 17(a) as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b.    Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-Site location, Settling Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. § 300.440.  Settling Defendants shall only send hazardous substances, pollutants, or contaminants from the Site to an off-Site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

VII.  REMEDY REVIEW

18.    Periodic Review.  Settling Defendants shall conduct any studies and investigations that EPA requests in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA, 42 U.S.C.§ 9621(c), and any applicable regulations.

19.    EPA Selection of Further Response Actions.  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

20.    Opportunity To Comment.  Settling Defendants and, if required by Sections

12

113(k)(2) or 117 of CERCLA, 42 U.S.C. § 9613(k)(2) or 9617, the public will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

## VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

21.     Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendants of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.  Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by the Commonwealth, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and applicable guidance documents.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Decree.  Settling Defendants shall ensure that EPA and Commonwealth personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendants in implementing this Consent Decree.  In addition, Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring.  Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted EPA methods.  Accepted EPA methods consist of those methods that are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, after opportunity for review and comment by the Commonwealth, Settling Defendants may use other analytical methods which are as stringent as or more stringent than the CLP-approved methods.  Settling Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program.  Settling Defendants shall use only laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001; Reissued May 2006) or equivalent documentation as determined by EPA.  EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements.  Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

22.     Upon request, Settling Defendants shall allow split or duplicate samples to be

taken by EPA and the Commonwealth or their authorized representatives. Settling Defendants shall notify EPA and the Commonwealth not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA and the Commonwealth shall have the right to take any additional samples that EPA or the Commonwealth deems necessary, and shall provide Settling Defendants with all sampling data generated therefrom upon request. Upon request, EPA shall allow Settling Defendants to take split or duplicate samples of any samples it takes as part of the Plaintiff's oversight of Settling Defendants' implementation of the Work.

23. Settling Defendants shall submit three printed copies and one electronic copy to EPA and two printed copies and one electronic copy to the Commonwealth, and such additional copies as requested by EPA and the Commonwealth, of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

24. Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## IX. ACCESS AND INSTITUTIONAL CONTROLS

25. If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by any of Settling Defendants, such Settling Defendants shall:

a. commencing on the date of lodging of this Consent Decree, provide the United States and the Commonwealth and their representatives, including EPA and its contractors, and the other Settling Defendants and their representatives, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

(1) Monitoring the Work;

(2) Verifying any data or information submitted to the United States or the Commonwealth;

(3) Conducting investigations relating to contamination at or near the Site;

(4) Obtaining samples;

(5) Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6) Assessing implementation of quality assurance and quality control

practices as defined in the approved Quality Assurance Project Plans;

(7)     Implementing the Work pursuant to the conditions set forth in Paragraph 86 (Work Takeover);

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXV (Access to Information);

(9)     Assessing Settling Defendants' compliance with this Consent Decree; and

(10)     Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

b.     commencing on the date of lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree including, but not limited to, land/water use restrictions listed in the SOW; and

c.     to the extent required under, and in accordance with the schedule of, the approved Institutional Control Plan under the SOW, execute and record in the Norfolk County Registry of Deeds a grant of environmental restriction and easement ("GERE"), substantially in the form of Appendix F to this Consent Decree, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25(a), and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 25(b) and the SOW, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such Settling Defendants shall grant the access rights and the rights to enforce the land/water use restrictions to (i) the United States, on behalf of EPA, and its representatives, (ii) the Commonwealth and its representatives, (iii) the other Settling Defendants and their representatives, and/or (iv) other appropriate grantees. Such Settling Defendants shall, in accordance with the Institutional Controls Plan submitted pursuant to the SOW, submit to EPA for review and approval with respect to such property:

(1)     a fully executed GERE, in substantially the form of Appendix F hereto, that is enforceable under the laws of the Commonwealth of Massachusetts, free and clear of all prior liens and encumbrances (except as approved by EPA and the Commonwealth), and acceptable under the Attorney General's Title Regulations promulgated pursuant to 40 U.S.C. § 3111;

(2)     a current title commitment or Certification of Title prepared in accordance with the U.S. Department of Justice Title Standards 2001; and

15

(3)     any other documents, including but not limited to a Subordination Agreement for any prior liens and encumbrances, and a survey plan, if required by EPA pursuant to CERCLA and/or the Commonwealth pursuant to M. G. L. c. 21E.

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, such Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, record the easement with the Norfolk County Registry of Deeds. Within 30 days of recording the easement, such Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps.

26.     If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than any of Settling Defendants, Settling Defendants shall use best efforts to secure from such persons:

a.     an agreement to provide access thereto for Settling Defendants, as well as for the United States on behalf of EPA, and the Commonwealth, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25(a);

b.     an agreement, enforceable by Settling Defendants and the United States, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree including, but not limited to, land/water use restrictions listed in the SOW; and

c.     the execution and recordation in the Norfolk County Registry of Deeds of a GERE, substantially in the form of Appendix F to this Consent Decree, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25(a), and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 25(b) and the SOW, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. The access rights and/or rights to enforce land/water use restrictions shall be granted to (i) the United States, on behalf of EPA, and its representatives, (ii) the Commonwealth and its representatives, (iii) Settling Defendants and their representatives, and/or (iv) other appropriate grantees. In accordance with the Institutional Controls Plan submitted pursuant to the SOW, Settling Defendants shall submit to EPA for review and approval with respect to such property:

(1)     a fully executed GERE, in substantially the form of Appendix F hereto, that is enforceable under the laws of the Commonwealth of Massachusetts, free and clear of all prior liens and encumbrances (except as approved by EPA and the Commonwealth), and acceptable under the Attorney General's Title Regulations promulgated pursuant to 40 U.S.C. § 3111;

(2)    a current title commitment or Certification of Title prepared in accordance with the U.S. Department of Justice Title Standards 2001; and

(3)    any other documents, including but not limited to a Subordination Agreement for any prior liens and encumbrances, and a survey plan, if required by EPA pursuant to CERCLA and/or the Commonwealth pursuant to M. G. L. c. 21E.

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, the easement shall be recorded with the Norfolk County Registry of Deeds.  Within 30 days of the recording of the easement, Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps.

27.    For purposes of Paragraphs 25 and 26, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, restrictive easements, and/or an agreement to release or subordinate a prior lien or encumbrance.  If (a) any access or land/water use restriction agreements required by Paragraph 26(a) or 26(b) are not obtained in accordance with the Institutional Controls Plan submitted pursuant to the SOW, (b) any access easements or restrictive easements described in Paragraph 26(c) are not submitted to EPA in draft form in accordance with the Institutional Controls Plan submitted pursuant to the SOW, or (c) Settling Defendants are unable to obtain an agreement pursuant to Paragraph 25(c)(1) or Paragraph 26(c)(1) from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement being created pursuant to this consent decree in accordance with the Institutional Controls Plan submitted pursuant to the SOW, Settling Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendants have taken to attempt to comply with Paragraph 25 or 26.  The United States may, as it deems appropriate, assist Settling Defendants in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance.  Settling Defendants shall reimburse the United States in accordance with the procedures in Section XVII (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

28.    If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall cooperate with EPA's and the Commonwealth's efforts to secure such governmental controls.

29.    Notwithstanding any provision of this Consent Decree, the United States retains

all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## X. WITHDRAWAL OF NOTICE OF FEDERAL LIEN

30.     Upon the Owner Settling Defendants' performance of their obligations under Paragraph 9(a) and Paragraph 25(c) of this Consent Decree, and provided that the Owner Settling Defendants have complied to that point with their obligations under Paragraph 25(a) and (b) of this Consent Decree, EPA shall file a Withdrawal of Notice of Federal Lien with the Norfolk County Registry of Deeds. The Withdrawal of Notice of Federal Lien shall withdraw the Notice of Federal Lien filed by EPA on April 16, 2009, with respect to Lots 172, 174, 173, 127, 128, 130, 129, 137, 123, 120, 126, and 121 on Town of Walpole Assessors Map 33, and shall not release any other lien or encumbrance that may exist upon the Site.

## XI. REPORTING REQUIREMENTS

31.     In addition to any other requirement of this Consent Decree, Settling Defendants shall submit one electronic copy to EPA and one electronic copy to the Commonwealth (and such additional copies as requested by EPA or the Commonwealth) of written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and of all other data received or generated by Settling Defendants or their contractors or agents in the previous month; (c) identify all work plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next month and provide other information relating to the progress of construction, including, for example, critical path diagrams, Gantt charts and/or Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Defendants have proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next month. Settling Defendants shall submit these progress reports to EPA and the Commonwealth by the tenth day of every month following the lodging of this Consent Decree until EPA notifies Settling Defendants pursuant to Paragraph 51(b) of Section XV (Certification of Completion) that the Work has been performed in accordance with this Consent Decree. Upon request by Settling Defendants, and subject to EPA approval, Settling Defendants may submit these progress reports on a less frequent basis after the completion of the Remedial Action. If requested by EPA or the Commonwealth, Settling Defendants shall also provide briefings for EPA and the Commonwealth to discuss the progress of the Work.

32.     Settling Defendants shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the

performance of the activity.

33.    Upon the occurrence of any event during performance of the Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11004, Settling Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 1, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

34.    Within 20 days of the onset of such an event, Settling Defendants shall furnish to Plaintiff a written report, signed by Settling Defendants' Project Coordinator, setting forth the events that occurred and the measures taken, and to be taken, in response thereto. Within 30 days of the conclusion of such an event, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

35.    Settling Defendants shall submit three copies of all plans, reports, and data required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans. Settling Defendants shall simultaneously submit two copies of all such plans, reports and data to the Commonwealth. Upon request by EPA, Settling Defendants shall submit in electronic form all portions of any report or other deliverable Settling Defendants are required to submit pursuant to the provisions of this Consent Decree.

36.    All reports and other documents submitted by Settling Defendants to EPA (other than the monthly progress reports referred to above) which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of Settling Defendants.

XII.    EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

37.    After review of any plan, report or other item that is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the Commonwealth, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that Settling Defendants modify the submission; or (e) any combination of the above.

38.    In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 37(a), 37(b), or 37(c), Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XX (Dispute Resolution) with respect to the modifications or conditions made by EPA. In the event that EPA modifies the

submission to cure the deficiencies pursuant to Paragraph 37(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XXI (Stipulated Penalties).

    39.    <u>Resubmission of Plans</u>.

    a.    Upon receipt of a notice of disapproval pursuant to Paragraph 37(d), Settling Defendants shall, within 21 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XXI (Stipulated Penalties), shall accrue during the 21-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 40 and 41.

    b.    Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 37(d), Settling Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve Settling Defendants of any liability for stipulated penalties under Section XXI (Stipulated Penalties).

    40.    In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require Settling Defendants to correct the deficiencies, in accordance with the preceding Paragraphs. EPA also retains the right to modify or develop the plan, report, or other item. Settling Defendants shall implement any such plan, report, or item as modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XX (Dispute Resolution).

    41.    If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless Settling Defendants invoke the dispute resolution procedures set forth in Section XX (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XX (Dispute Resolution) and Section XXI (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XXI (Stipulated Penalties).

    42.    All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XIII.  PROJECT COORDINATORS

    43.    Within 20 days of lodging this Consent Decree, Settling Defendants and EPA will

notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made. Settling Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. Settling Defendants' Project Coordinator shall not be an attorney for any of Settling Defendants in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

44.    Plaintiff may designate other representatives, including, but not limited to, EPA and Commonwealth employees, and federal and Commonwealth contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the NCP, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any Work required by this Consent Decree and to take any necessary response action when he or she determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

45.    EPA's Project Coordinator and Settling Defendants' Project Coordinator will meet monthly, as necessary.

## XIV. PERFORMANCE GUARANTEE

46.    In order to ensure the full and final completion of the Work, Settling Defendants shall establish and maintain a Performance Guarantee for the benefit of EPA in the amount of $13,000,000 (hereinafter "Estimated Cost of the Work"). The Performance Guarantee, which must be satisfactory in form and substance to EPA, shall be in one or more of the following mechanisms (provided that, if Settling Defendants intend to use multiple mechanisms, such multiple mechanisms shall be limited to trust funds, surety bonds guaranteeing payment, letters of credit, and insurance policies):

a.    A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.    One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of credit and (ii) whose letter-of-credit operations are regulated and examined by a U.S. Federal or State agency;

c.    A trust fund established for the benefit of EPA that is administered by a trustee (i) that has the authority to act as a trustee and (ii) whose trust operations are regulated

and examined by a U.S. Federal or State agency;

        d.    A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (b) whose insurance operations are regulated and examined by a State agency;

        e.    A demonstration by one or more Settling Defendants that each such Settling Defendant meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work, provided that all other requirements of 40 C.F.R. § 264.143(f) are satisfied; or

        f.    A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (i) a direct or indirect parent company of a Settling Defendant, or (ii) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with at least one Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test requirements of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work that it proposes to guarantee hereunder.

Settling Defendants have selected, and EPA has approved, as an initial Performance Guarantee a surety bond pursuant to Paragraph 46(a), in the form attached hereto as Appendix E. Within 10 days after the Effective Date, Settling Defendants shall execute or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee legally binding in a form substantially identical to the document attached hereto as Appendix E, and such Performance Guarantee shall thereupon be fully effective. Within 30 days of the Effective Date, Settling Defendants shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee legally binding to the EPA Regional Financial Management Officer in accordance with Section XXVII (Notices and Submissions), and to the United States and EPA as specified in Section XXVII.

        47.    If at any time during the effective period of this Consent Decree, Settling Defendants provide a Performance Guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 46(e) or 46(f), the relevant Settling Defendants shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f), 40 C.F.R. 264.151(f), and 40 C.F.R. § 264.151(h)(1) relating to these methods unless otherwise provided in this Consent Decree, including but not limited to (i) the initial submission of required financial reports and statements from the relevant entity's chief financial officer and independent certified public accountant; (ii) the annual re-submission of such reports and statements within 90 days after the close of each such entity's fiscal year; and (iii) the notification of EPA within 90 days after the close of any fiscal year in which such entity no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1). For purposes of the Performance Guarantee methods specified in this Section XIV, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to refer to the Work required under this Consent Decree, and the terms "current closure cost estimate," "current post-closure

cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to refer to the Estimated Cost of the Work.

48.    In the event that EPA determines at any time that a Performance Guarantee provided by any Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that any Settling Defendant becomes aware of information indicating that a Performance Guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Defendants, within 30 days of receipt of notice of EPA's determination or, as the case may be, within 30 days of any Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of Performance Guarantee listed in Paragraph 46 that satisfies all requirements set forth in this Section XIV. In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 50. Settling Defendants' inability to post a Performance Guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendants to complete the Work in strict accordance with the terms hereof.

49.    The commencement of any Work Takeover pursuant to Paragraph 86 shall trigger EPA's right to receive the benefit of any Performance Guarantee(s) provided pursuant to Paragraph 46(a), 46(b), 46(c), 46(d), or 46(f), and at such time EPA shall have immediate access to resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover. If for any reason EPA is unable to promptly secure the resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or in the event that the Performance Guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 46(e), Settling Defendants shall immediately upon written demand from EPA deposit into an account specified by EPA, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed as of such date, as determined by EPA. In addition, if at any time EPA is notified by the issuer of a Performance Guarantee that such issuer intends to cancel the Performance Guarantee mechanism it has issued, then, unless Settling Defendants provide a substitute Performance Guarantee mechanism in accordance with this Section XIV no later than 30 days prior to the impending cancellation date, EPA shall be entitled (as of and after the date that is 30 days prior to the impending cancellation) to draw fully on the funds guaranteed under the then-existing Performance Guarantee.

50.    Modification of Amount and/or Form of Performance Guarantee.

a.    Reduction of Amount of Performance Guarantee. If Settling Defendants believe that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 46, Settling Defendants may, on any anniversary of the Effective Date, or

at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the Performance Guarantee provided pursuant to this Section so that the amount of the Performance Guarantee is equal to the estimated cost of the remaining Work to be performed. Settling Defendants shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the cost of the remaining Work to be performed and the basis upon which such cost was calculated. In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 50(b)(2). If EPA decides to accept such a proposal, EPA shall notify the petitioning Settling Defendants of such decision in writing. After receiving EPA's written acceptance, Settling Defendants may reduce the amount of the Performance Guarantee in accordance with and to the extent permitted by such written acceptance. In the event of a dispute, Settling Defendants may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XX (Dispute Resolution). No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraph 48 or 50(b).

     b.    <u>Change of Form of Performance Guarantee.</u>

     (1)    If, after the Effective Date, Settling Defendants desire to change the form or terms of any Performance Guarantee(s) provided pursuant to this Section, Settling Defendants may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form of the Performance Guarantee provided hereunder. The submission of such proposed revised or alternative form of Performance Guarantee shall be as provided in Paragraph 50(b)(2). Any decision made by EPA on a petition submitted under this Paragraph shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

     (2)    Settling Defendants shall submit a written proposal for a revised or alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the estimated cost of the remaining Work to be performed, the basis upon which such cost was calculated, and the proposed revised form of Performance Guarantee, including all proposed instruments or other documents required in order to make the proposed Performance Guarantee legally binding. The proposed revised or alternative form of Performance Guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Settling Defendants shall submit such proposed revised or alternative form of Performance Guarantee to the EPA Regional Financial Management Officer, with a copy to the Regional Financial Assurance Specialist, in accordance with Section XXVII (Notices and Submissions). EPA shall notify Settling Defendants in writing of its decision to accept or reject a revised or alternative Performance Guarantee submitted pursuant to this Paragraph. Within 10 days after receiving a written decision approving the proposed revised or alternative Performance Guarantee, Settling Defendants shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such Performance Guarantee(s) shall thereupon be fully effective. Settling Defendants shall submit all executed

and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding to the EPA Regional Financial Management Officer within 30 days of receiving a written decision approving the proposed revised or alternative Performance Guarantee in accordance with Section XXVII (Notices and Submissions), with copies to the Regional Financial Assurance Specialist, the United States and EPA as specified in Section XXVII.

        c.    <u>Release of Performance Guarantee</u>. If Settling Defendants receive written notice from EPA in accordance with Paragraph 51(b) that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Settling Defendants in writing, Settling Defendants may thereafter release, cancel, or discontinue the Performance Guarantee(s) provided pursuant to this Section. Settling Defendants shall not release, cancel, or discontinue any Performance Guarantee provided pursuant to this Section except as provided in this Paragraph. In the event of a dispute, Settling Defendants may release, cancel, or discontinue the Performance Guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XX (Dispute Resolution).

XV. <u>CERTIFICATION OF COMPLETION</u>

    51.    <u>Completion of the Work</u>.

        a.    Within 90 days after Settling Defendants conclude that all phases of the Work (including O&M, but not including any obligations under Section VII, Remedy Review, that arise after completion of the O&M), have been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants, EPA and the Commonwealth. If, after the pre-certification inspection, Settling Defendants still believe that the Work has been fully performed, Settling Defendants shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity for review and comment by the Commonwealth, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Work provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 15(b).

25

EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Defendants to submit a schedule to EPA for approval pursuant to Section XII (EPA Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XX (Dispute Resolution).

      b.    If EPA concludes, based on the initial or any subsequent request for Certification of Completion of the Work by Settling Defendants and after a reasonable opportunity for review and comment by the Commonwealth, that the Work has been performed in accordance with this Consent Decree, EPA will so notify Settling Defendants in writing.

## XVI. EMERGENCY RESPONSE

    52.    In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 53, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator. If neither of these persons is available, Settling Defendants shall notify the EPA Emergency Planning & Response Branch, Region 1. Settling Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Settling Defendants fail to take appropriate response action as required by this Section, and EPA takes such action instead, Settling Defendants shall reimburse EPA all costs of the response action not inconsistent with the NCP pursuant to Section XVII (Payments for Response Costs).

    53.    Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to Section XXII (Covenants Not to Sue by Plaintiff).

## XVII. PAYMENTS FOR RESPONSE COSTS

    54.    <u>Payments for Past Response Costs.</u>

      a.    Within 30 days of the Effective Date, Tyco Healthcare shall pay to EPA $715,930 in payment for Past Response Costs. Payment shall be made in accordance with Paragraph 56(a) and (c) (Payment Instructions).

      b.    Within 30 days of the Effective Date, or within 30 days of the effective

date of Grace's plan of reorganization, whichever is later, Grace shall pay to EPA $715,930 in payment for Past Response Costs. Grace's payment shall include, as applicable, Interest running from the date 30 days after the Effective Date through the date of payment. Payment shall be made in accordance with Paragraph 56(a) and (c) (Payment Instructions).

      c.      The total amount to be paid by Settling Defendants pursuant to Paragraph 54(a) and (b) shall be deposited by EPA in the Blackburn & Union Privileges Superfund Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

      55.      <u>Payments for Future Response Costs and Future Oversight Costs.</u>

      a.      Settling Defendants shall pay to EPA all Future Response Costs not inconsistent with the NCP.

      b.      Settling Defendants shall pay to EPA Future Oversight Costs not inconsistent with the NCP, in an amount that does not exceed the greater of: (1) $2,000,000, or (2) 15 percent of the total costs that Settling Defendants incur in performing the Work.

      c.      On a periodic basis, the United States will send Settling Defendants a bill requiring payment of Future Response Costs and/or Future Oversight Costs that consists of a Region 1 standard cost summary, which is a line-item summary of costs by category (including but not limited to payroll, travel, indirect costs, cooperative agreement costs with the Commonwealth, and contract costs) incurred by the United States.

      d.      For each bill received by the Settling Defendants prior to the effective date of Grace's plan of reorganization, Settling Defendants shall make payments as follows:

      (1)      Within 30 days of Settling Defendants' receipt of each bill requiring payment, Tyco Healthcare shall pay to EPA 50 percent of the Future Response Costs and/or Future Oversight Costs summarized in the bill, except as otherwise provided in Paragraph 57. All such payments shall be made in accordance with Paragraph 56(b) and (c) (Payment Instructions).

      (2)      Within 30 days of Settling Defendants' receipt of each bill requiring payment, or within 30 days of the effective date of Grace's plan of reorganization, whichever is later, Grace shall pay to EPA 50 percent of the Future Response Costs and/or Future Oversight Costs summarized in the bill, except as otherwise provided in Paragraph 57. Grace's payment shall include, as applicable, Interest running from the date 30 days after Settling Defendants' receipt of the bill through the date of payment. All such payments shall be made in accordance with Paragraph 56(b) and (c) (Payment Instructions).

      e.      For each bill received by the Settling Defendants after the Bankruptcy Court's entry of a final order confirming Grace's plan of reorganization, Settling Defendants shall pay the Future Response Costs and/or Future Oversight Costs summarized in the bill within

30 days of Settling Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 57. All such payments shall be made in accordance with Paragraph 56(b) and (c) (Payment Instructions).

      f.    The total amount to be paid by Settling Defendants pursuant to this Paragraph 55 shall be deposited by EPA in the Blackburn & Union Privileges Superfund Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

      56.    <u>Payment Instructions</u>.

      a.    <u>Instructions for Past Response Costs Payments</u>. All payments of $10,000 or more required pursuant to Paragraph 54(a) or (b) of this Consent Decree shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, and in accordance with instructions provided to Settling Defendants by the Financial Litigation Unit of the United States Attorney's Office for the District of Massachusetts following lodging of the Consent Decree. All payments of less than $10,000 required pursuant to Paragraph 54(a) or (b) of this Consent Decree shall be made by official bank check made payable to the "U.S. Department of Justice," referencing the name and address of the party making payment, and shall be sent to: U.S. Attorney's Office for the District of Massachusetts, Financial Litigation Unit, One Courthouse Way, John Joseph Moakley Courthouse, Boston MA 02210. All payments under this Paragraph shall reference the USAO File Number, EPA Site/Spill ID Number 01B3, and DOJ Case Number 90-11-3-09667.

      b.    <u>Instructions for Future Response Costs Payments, Future Oversight Costs Payments, and Stipulated Penalties</u>. All payments required elsewhere in this Consent Decree to be made in accordance with this Paragraph shall be made by official bank checks made payable to "EPA Hazardous Substance Superfund," referencing the name and address of the party making the payment, EPA Site/Spill ID Number 01B3, and DOJ Case Number 90-11-3-09667. Settling Defendants shall send the check(s) to:

      (For Delivery by First Class Mail)

      U.S. Environmental Protection Agency
      Superfund Payments
      Cincinnati Finance Center
      P.O. Box 979076
      St. Louis, MO 63197-9000

      (For Delivery by Overnight Mail)

      U.S. Bank
      1005 Convention Plaza
      Mail Station SL-MO-C2GL
      St. Louis, MO 63101

In the alternative, Settling Defendants may make such payments through a wire transfer. Wire transfers shall reference the name and address of the party making the payment, EPA Site/Spill ID Number 01B3 and DOJ Case Number 90-11-3-09667, and shall be directed to:

> Federal Reserve Bank of New York
> 33 Liberty Street
> New York, NY 10045
> ABA = 021030004
> Account = 68010727
> SWIFT Address = FRNYUS33
> Field Tag 4200 of the FedWire message should read "D 68010727 Environmental Protection Agency"

     c.   <u>Instructions for All Payments</u>. At the time of any payment required to be made in accordance with this Paragraph, Settling Defendants shall send notice that payment has been made to the United States, to EPA, and to the Regional Financial Management Officer, in accordance with Section XXVII (Notices and Submissions), and to the EPA Cincinnati Finance Office by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268, and by email at acctsreceivable.cinwd@epa.gov.

     57.    Settling Defendants may contest payment of any Future Response Costs and/or Future Oversight Costs under Paragraph 55 if they determine that the United States has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP. Such objection shall be made in writing within 30 days of receipt of the bill and must be sent to the United States pursuant to Section XXVII (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs and/or Future Oversight Costs and the basis for objection. In the event of an objection, Settling Defendants shall pay all uncontested Future Response Costs and/or Future Oversight Costs to the United States within 30 days of Settling Defendants' receipt of the bill requiring payment. Simultaneously, Settling Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the Commonwealth of Massachusetts and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs and/or Future Oversight Costs. Settling Defendants shall send to the United States, as provided in Section XXVII (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs and/or Future Oversight Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, Settling Defendants shall initiate the Dispute Resolution procedures in Section XX (Dispute Resolution). If the United States prevails in the dispute, Settling Defendants shall pay the sums due (with accrued interest) to the United States within five days of the resolution of the dispute. If Settling Defendants prevail concerning any aspect of the contested costs, Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States within five days of the resolution of the dispute. Settling Defendants shall be disbursed any

balance of the escrow account. All payments to the United States under this Paragraph shall be made in accordance with Paragraph 56(b) and 56(c) (Payment Instructions). The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Settling Defendants' obligation to reimburse the United States for its Future Response Costs and/or Future Oversight Costs.

58.    In the event that any payment for Past Response Costs, Future Response Costs, or Future Oversight Costs required under this Section is not made by the date required, Settling Defendants shall pay Interest on the unpaid balance. The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue on the Effective Date. The Interest on Future Response Costs and/or Future Oversight Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of Settling Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 73.

## XVIII.  INDEMNIFICATION AND INSURANCE

59.    Settling Defendants' Indemnification of the United States.

a.    The United States does not assume any liability by entering into this Consent Decree or by virtue of any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e). Settling Defendants shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Further, Settling Defendants agree to pay the United States all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree. Neither Settling Defendants nor any such contractor shall be considered an agent of the United States.

b.    The United States shall give Settling Defendants notice of any claim for which the United States plans to seek indemnification pursuant to this Paragraph, and shall consult with Settling Defendants prior to settling such claim.

60.    Settling Defendants waive all claims against the United States for damages or

reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Defendants shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

61.     No later than 30 days before commencing any on-Site Work, Settling Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Work pursuant to Paragraph 51(b) of Section XV (Certification of Completion) comprehensive general liability insurance with limits of two million dollars, combined single limit, and automobile liability insurance with limits of two million dollars, combined single limit, naming the United States as an additional insured. In addition, for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendants shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendants demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendants need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor.

## XIX. FORCE MAJEURE

62.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

63.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Settling Defendants shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Office of Site Remediation and Restoration, EPA Region 1,

31

within 24 hours of when Settling Defendants first knew that the event might cause a delay. Within five days thereafter, Settling Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Settling Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known.

64.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Settling Defendants in writing of its decision. If EPA agrees that the delay is attributable to a force majeure event, EPA will notify Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

65.    If Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 62 and 63. If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XX. DISPUTE RESOLUTION

66.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Defendants that have not been disputed in accordance with this Section.

67.    Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

68.    Statements of Position.

a.    In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 10 days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by Settling Defendants. The Statement of Position shall specify Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 69 or Paragraph 70.

b.    Within 21 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 69 or 70. Within 14 days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

c.    If there is disagreement between EPA and Settling Defendants as to whether dispute resolution should proceed under Paragraph 69 or 70, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 69 and 70.

69.    Record Review. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions.

a.    An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.    The Director of the Office of Site Remediation and Restoration, EPA Region 1, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 69(a).  This decision shall be binding upon Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraph 69(c) and 69(d).

c.    Any administrative decision made by EPA pursuant to Paragraph 69(b) shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Defendants with the Court and served on all Parties within 10 days of receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The United States may file a response to Settling Defendants' motion within the time limits set forth by the applicable Rules of Civil Procedure.

d.    In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Director of the Office of Site Remediation and Restoration is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 69(a).

70.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.    Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 68, the Director of the Office of Site Remediation and Restoration, EPA Region 1, will issue a final decision resolving the dispute.  The Office of Site Remediation and Restoration Director's decision shall be binding on Settling Defendants unless, within 10 days of receipt of the decision, Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United States may file a response to Settling Defendants' motion.

b.    Notwithstanding Paragraph M of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

71.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 76.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.  In the event that Settling Defendants do not prevail

34

on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XXI (Stipulated Penalties).

## XXI.  STIPULATED PENALTIES

72.    Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 73 and 74 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XIX (Force Majeure). "Compliance" by Settling Defendants shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

73.    Stipulated Penalty Amounts – Work and Payments.

The following stipulated penalties shall accrue per violation per day for any noncompliance except those identified in Paragraph 74:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 2,500 | 1st through 14th day |
| $ 5,000 | 15th through 30th day |
| $ 7,500 | 31st day and beyond |

74.    Stipulated Penalty Amounts - Reports.

The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other written documents pursuant to Section XI (Reporting Requirements):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 500 | 1st through 14th day |
| $ 1,000 | 15th through 30th day |
| $ 2,500 | 31st day and beyond |

75.    In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 86 (Work Takeover) of Section XXII (Covenants Not to Sue by Plaintiff), Settling Defendants shall be liable for a stipulated penalty in the following amounts:

a.    $1,000,000, in the event that EPA assumes performance of a portion or all

of the Work prior to EPA approval or modification of all Final Remedial Construction Reports required pursuant to Section VI.G of the SOW; or

        b.    $500,000, in the event that EPA assumes performance of a portion or all of the Work after EPA approval or modification of all Final Remedial Construction Reports required pursuant to Section VI.G of the SOW.

        76.    All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue:  (1) with respect to a deficient submission under Section XII (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency; (2) with respect to a decision by the  Director of the Office of Site Remediation and Restoration, EPA Region 1, under Paragraph 69(b) or 70(a) of Section XX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.  Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

        77.    Following EPA's determination that Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendants written notification of the same and describe the noncompliance.  EPA may send Settling Defendants a written demand for the payment of the penalties.  However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified Settling Defendants of a violation.

        78.    All penalties accruing under this Section shall be due and payable to the United States within 30 days of Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section XX (Dispute Resolution).  All payments to the United States under this Section shall indicate that the payment is for stipulated penalties, and shall be made in accordance with Paragraph 56(b) and (c) (Payment Instructions).

        79.    The payment of penalties shall not alter in any way Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree.

        80.    Penalties shall continue to accrue as provided in Paragraph 76 during any dispute resolution period, but need not be paid until the following:

        a.    If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 15 days of the agreement or the receipt of EPA's decision or order;

b.    If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Paragraph 80(c) below;

c.    If the District Court's decision is appealed by any Party, Settling Defendants shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendants to the extent that they prevail.

81.    If Settling Defendants fail to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as Interest. Settling Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 78.

82.    Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(*l*) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(*l*) of CERCLA for any violation for which a stipulated penalty is provided in this Consent Decree, except in the case of a willful violation of the Consent Decree.

83.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

XXII. COVENANTS NOT TO SUE BY PLAINTIFF

84.    In consideration of the actions that will be performed and the payments that will be made by Settling Defendants under the terms of this Consent Decree, and except as specifically provided in Paragraph 85 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA for performance of the Work and for recovery of Past Response Costs, Future Response Costs, and Future Oversight Costs. These covenants not to sue shall take effect upon the receipt by EPA of the payments required by Paragraph 54 (Payments for Past Response Costs) and any Interest or stipulated penalties due thereon under Paragraphs 58 and 73. These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree. These covenants not to sue extend only to Settling Defendants and do not extend to any other person.

85.    General Reservations of Rights. The United States reserves, and this Consent

Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiff's covenants not to sue. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants with respect to:

        a.     claims based on a failure by Settling Defendants to meet a requirement of this Consent Decree;

        b.     liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

        c.     liability based on the ownership or operation of the Site by Settling Defendants after signature of this Consent Decree by Settling Defendants;

        d.     liability based on Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal, of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by Settling Defendants;

        e.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

        f.     criminal liability;

        g.     liability for violations of federal or state law which occur during or after implementation of the Remedial Action; and

        h.     liability, prior to Certification of Completion of the Work, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 15 (Modification of the SOW or Related Work Plans);

        i.     liability for costs incurred or to be incurred by the Agency for Toxic Substances and Disease Registry related to the Site;

        j.     liability for costs that the United States will incur related to the Site but are not within the definition of Future Response Costs or Future Oversight Costs; and

        k.     liability for additional response actions at the Site, including but not limited to any response action arising from the disposal, release, or threat of release of hazardous substances in the Neponset River and floodplain downstream of the West Street Dam.

      86.    <u>Work Takeover</u>.

        a.     In the event EPA determines that Settling Defendants have (1) ceased implementation of any portion of the Work, or (2) are seriously or repeatedly deficient or late in their performance of the Work, or (3) are implementing the Work in a manner that may cause an

endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Defendants. Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendants a period of 30 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.      If, after expiration of the 30-day notice period specified in Paragraph 86(a), Settling Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover"). EPA shall notify Settling Defendants in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 86(b).

c.      Settling Defendants may invoke the procedures set forth in Section XX (Dispute Resolution), Paragraph 69 (Record Review), to dispute EPA's implementation of a Work Takeover under Paragraph 86(b). However, notwithstanding Settling Defendants' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 86(b) until the earlier of (1) the date that Settling Defendants remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered in accordance with Section XX (Dispute Resolution), Paragraph 69, requiring EPA to terminate such Work Takeover.

d.      After commencement and for the duration of any Work Takeover, EPA shall have immediate access to and benefit of any performance guarantee(s) provided pursuant to Section XIV, in accordance with the provisions of Paragraph 49. If and to the extent that EPA is unable to secure the resources guaranteed under any such performance guarantee(s) and Settling Defendants fail to remit a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed, all in accordance with the provisions of Paragraph 49, any unreimbursed costs incurred by EPA in performing Work under the Work Takeover shall be considered Future Response Costs that Settling Defendants shall pay pursuant to Section XVII (Payments for Response Costs).

87.      Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

### XXIII. COVENANTS BY SETTLING DEFENDANTS

88.      <u>Covenant Not to Sue</u>. Subject to the reservations in Paragraph 89, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Work, past response actions, Past Response Costs, Future Response Costs, and Future Oversight Costs as defined herein, or this Consent Decree, including, but not limited to:

a.      any direct or indirect claim for reimbursement from the Hazardous

Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

          b.     any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Site; or

          c.     any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Massachusetts Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

Except as provided in Paragraph 95 (Waiver of Res Judicata and Other Defenses), these covenants not to sue shall not apply in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraph 85(b)-(e) or (h)-(j) (General Reservations), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

      89.     Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of Settling Defendants' plans or activities.  The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

      90.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

### XXIV.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

      91.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  Each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.  Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into

settlements that give rise to contribution protection pursuant to Section 113(f)(2).

92.     Except as provided in Paragraph 96 of this Consent Decree, the Parties agree, and by entering this Consent Decree the Court finds, that this settlement constitutes a judicially approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that each Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are Past Response Costs, Future Response Costs, Future Oversight Costs, and the Work as these terms are defined herein. The "matters addressed" in this Consent Decree do not include those response costs or response actions as to which the United States has reserved its rights under this Consent Decree (except for claims for failure to comply with this Decree), in the event that the United States asserts rights against Settling Defendants coming within the scope of such reservations.

93.     Settling Defendants shall, with respect to any suit or claim brought by them for matters related to this Consent Decree, notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

94.     Settling Defendants shall, with respect to any suit or claim brought against them for matters related to this Consent Decree, notify in writing the United States within 10 days of service of the complaint on Settling Defendants. In addition, Settling Defendants shall notify the United States within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

95.     <u>Waiver of Res Judicata and Other Defenses</u>. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXII (Covenants Not to Sue by Plaintiff).

96.     Nothing in this Consent Decree shall be construed to release any claims that the Settling Defendants may have among themselves. Each Settling Defendant expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action that each Settling Defendant may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any other Settling Defendant.

## XXV.  ACCESS TO INFORMATION

97.     Settling Defendants shall provide to EPA, upon request, copies of all records, reports, documents and other information (hereinafter referred to as "Records") within their possession or control or that of their contractors or agents relating to activities at the Site or to

the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work.  Settling Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

      98.    <u>Business Confidential and Privileged Documents</u>.

      a.    Settling Defendants may assert business confidentiality claims covering part or all of the Records submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies Records when they are submitted to EPA, or if EPA has notified Settling Defendants that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Defendants.

      b.    Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendants assert such a privilege in lieu of providing Records, they shall provide the Plaintiff with the following: (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege asserted by Settling Defendants.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only.  Settling Defendants shall retain all Records that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendants' favor.

      c.    No  Records created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

      99.    No claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXVI. <u>RETENTION OF RECORDS</u>

      100.    Until 10 years after Settling Defendants' receipt of EPA's notification pursuant to Paragraph 51(b) of Section XV (Certification of Completion of the Work), each Settling Defendant shall preserve and retain all non-identical copies of Records  (including Records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however,

that Settling Defendants who are potentially liable as owners or operators of the Site must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site. Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

101.    At the conclusion of this record retention period, Settling Defendants shall notify the United States at least 90 days prior to the destruction of any such Records, and, upon request by the United States, Settling Defendants shall deliver any such Records to EPA. Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendants assert such a privilege, they shall provide the Plaintiff with the following: (a) the title of the Record; (b) the date of the Record; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege asserted by Settling Defendants. If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only. Settling Defendants shall retain all Records that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendants' favor. However, no Records created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

102.    Each Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the Commonwealth or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

XXVII. NOTICES AND SUBMISSIONS

103.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, and Settling Defendants, respectively. Notices required to be sent to EPA, and not to the United States, under the terms of

this Consent Decree should not be sent to the U.S. Department of Justice.

As to the United States:           Chief, Environmental Enforcement Section
                                   Environment and Natural Resources Division
                                   U.S. Department of Justice
                                   P.O. Box 7611
                                   Washington, D.C.  20044-7611
                                   Re: DJ # 90-11-3-09667

                                   and

                                   James T. Owens, III,
                                   Director
                                   Office of Site Remediation & Restoration
                                   United States Environmental Protection Agency
                                   Region 1, New England
                                   5 Post Office Square, Suite 100
                                   Boston, MA 02109

As to EPA:                         David Lederer
                                   EPA Project Coordinator
                                   United States Environmental Protection Agency
                                   Mail Code OSRR 7-4
                                   Region 1, New England
                                   5 Post Office Square, Suite 100
                                   Boston, MA 02109

As to the Regional Financial       David Tornstrom
Management Officer:                Regional Financial Management Officer
                                   United States Environmental Protection Agency
                                   Mail Code OARM16-1
                                   Region 1, New England
                                   5 Post Office Square, Suite 100
                                   Boston, MA 02109

As to the Regional Financial       John L. Shanahan, Jr.
Assurance Specialist:             United States Environmental Protection Agency
                                   Mail Code OSRR01-5
                                   Region 1, New England
                                   5 Post Office Square, Suite 100
                                   Boston, MA 02109

As to the Commonwealth:        Robert Campbell
                               State Project Manager
                               Blackburn & Union Privileges Superfund Site
                               Department of Environmental Protection
                               Bureau of Waste Site Cleanup
                               One Winter Street, 8th Floor
                               Boston, MA 02108

As to Settling Defendants:     Settling Defendants' Project Coordinators

                               Paul Bucens
                               Remedium Group, Inc.
                               62 Whittemore Avenue
                               Cambridge, MA 02140

                               Kathryn Zeigler
                               Director, Environmental Remediation
                               675 McDonnell Blvd.
                               St. Louis, MO 63042

## XXVIII.  EFFECTIVE DATE

104.    The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered, or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XXIX.  RETENTION OF JURISDICTION

105.    This Court retains jurisdiction over both the subject matter of this Consent Decree and Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XX (Dispute Resolution).

## XXX.  APPENDICES

106.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" is a map generally depicting the Site.

45

"Appendix D" is the list of Settling Defendants.

"Appendix E" is the performance guarantee.

"Appendix F" is the draft easement.

## XXXI. COMMUNITY RELATIONS

107.    If requested by EPA, Settling Defendants shall participate in the community relations plan to be developed by EPA after reasonable opportunity for review and comment, upon request, by the Commonwealth and Settling Defendants.  EPA will determine the appropriate role for Settling Defendants under the Plan.  Settling Defendants shall also cooperate with EPA in providing information regarding the Work to the public.  As requested by EPA, Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Site.

## XXXII. MODIFICATION

108.    Material modifications to this Consent Decree (other than to the SOW) shall be in writing, signed by the Parties, and shall be effective upon approval by the Court.  Non-material modifications to this Consent Decree (other than to the SOW) shall be in writing and shall be effective when signed by the Parties.

109.    Except as provided in Paragraph 15 (Modification of the SOW or Related Work Plans), material modifications to the SOW shall be in writing, signed by the Parties, and shall be effective upon approval by the Court.  Non-material modifications to the SOW shall be in writing and shall be effective when signed by the Parties.  A modification to the SOW shall be considered material if it fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii).  A modification to the SOW shall be considered non-material if it does not fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii).  Prior to providing its approval to any modification to the SOW, the United States will provide the Commonwealth with a reasonable opportunity to review and comment on the proposed modification.

110.    Schedules specified in this Consent Decree for completion of the Work may be modified by written agreement of the Parties.

111.    Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

112.    This Consent Decree shall be subject to the approval of the Bankruptcy Court. Upon signature by all of the Parties, Grace shall promptly seek approval of this Consent Decree

under Bankruptcy Rule 9019 or other applicable provisions of the Bankruptcy Code.

113.    Once the Consent Decree has been approved by the Bankruptcy Court, and either such approval has been affirmed upon appeal or the period in which to lodge an appeal from such approval has expired without any appeal having been filed, the United States shall lodge the Consent Decree with this Court for a period of not less than 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

114.    If for any reason (i) the United States withdraws or withholds its consent as provided in Paragraph 113, (ii) the Bankruptcy Court declines to approve this Consent Decree in the form presented, or (iii) this Court declines to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIV.  SIGNATORIES/SERVICE

115.    Each undersigned representative of a Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

116.    Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

117.    Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXXV.  FINAL JUDGMENT

118.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

119.    Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and Settling Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.


SO ORDERED THIS __ DAY OF _____, 2010.


_____

United States District Judge

48

THE UNDERSIGNED PARTY enters into this Consent Decree regarding the Blackburn & Union Privileges Superfund Site.

**THE UNITED STATES OF AMERICA**

5/17/10
Date

Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530


5/18/10
Date

Mark Sabath
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611


Carmen M. Ortiz
United States Attorney
District of Massachusetts

George B. Henderson, II
Assistant U.S. Attorney
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210


49

THE UNDERSIGNED PARTY enters into this Consent Decree regarding the Blackburn & Union Privileges Superfund Site.

5/28/10
Date

H. Curtis Spalding
Regional Administrator, Region 1
U.S. Environmental Protection Agency
5 Post Office Square, Suite 100
Boston MA 02109

5/4/10
Date

Peter DeCambre
Senior Enforcement Counsel
U.S. Environmental Protection Agency
5 Post Office Square, Suite 100
Mail Code OES04-4
Boston MA 02109

50

THE UNDERSIGNED PARTY enters into this Consent Decree regarding the Blackburn & Union Privileges Superfund Site.

**BIM INVESTMENT CORPORATION**

4—16—10

Date

Irving Shaffer, Treasurer

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Irving Shaffer, Treasurer
101 Waterway
New Seabury, MA 02649

51

THE UNDERSIGNED PARTY enters into this Consent Decree regarding the Blackburn & Union Privileges Superfund Site.

**SHAFFER REALTY NOMINEE TRUST**

4-16-10
_____
Date

_____
Irving Shaffer, Trustee

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Irving Shaffer, Trustee
101 Waterway
New Seabury, MA 02649

52

THE UNDERSIGNED PARTY enters into this Consent Decree regarding the Blackburn & Union Privileges Superfund Site.

**TYCO HEALTHCARE GROUP LP**

4/27/10
Date

Patricia H. Duft
Vice President
675 McDonnell Boulevard
Hazelwood, MO 63042

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

CT Corporation System
120 South Central Avenue, Suite 400
Clayton, MO 63105

53

THE UNDERSIGNED PARTY enters into this Consent Decree regarding the Blackburn & Union Privileges Superfund Site.

**W.R. GRACE & CO.-CONN., for itself and on behalf of W.R. Grace & Co. and Remedium Group, Inc.**

_4/26/10_
Date

William M. Corcoran
Vice President
7500 Grace Drive
Columbia, MD 21044

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Corporation Service Company
84 State Street
Boston, MA 02109

54

# Consent Decree

# Appendix A

# Record of Decision

The Record of Decision ("ROD) executed on September 30, 2008 is hundreds of pages long. As a result, it is not attached to this document and will not be filed on the Court's docket. The ROD can be obtained at the following web site: http://www.epa.gov/region1/superfund/sites/blackburn/293498.pdf.

If you wish to obtain the ROD and do not have access to the internet or are unable to access it at the above address,  you may contact the Debtors' counsel, Janet S. Baer, at the address listed in the pleadings to make arrangements to obtain it.

# APPENDIX B

**APPENDIX B**
**STATEMENT OF WORK**
**BLACKBURN AND UNION PRIVILEGES SUPERFUND SITE**

**TABLE OF CONTENTS**

I.     INTRODUCTION AND PURPOSE .................................................................. 1

II.    DEFINITIONS ................................................................................................. 1

III.   SELECTED REMEDY ..................................................................................... 2

IV.    PERFORMANCE STANDARDS .................................................................... 3
       A.    Groundwater Performance Standards ................................................... 3
       B.    Soil Cleanup Levels ............................................................................. 3
       C.    Sediment Cleanup Levels ..................................................................... 4
       D.    Surface Water Cleanup Levels.............................................................. 4
       E.    Additional Performance Standards ....................................................... 4
             1.    Wetlands Restoration ................................................................. 4
             2.    Institutional Controls ................................................................. 5
             3.    Area of Containment ................................................................. 5

V.     REMEDIAL DESIGN ..................................................................................... 5
       A.    Short Term Response Phase................................................................. 5
       B.    Remedial Design Work Plan, POP, and Surface Water and Groundwater
             Monitoring Plan ................................................................................... 6
       C.    30% Design Submission and Institutional Controls Plan ....................10
       D.    100% Design Submission ....................................................................13

VI.    REMEDIAL ACTION...................................................................................... 14
       A.    Remedial Action Work Plan and Revised POP .................................... 14
       B.    Pre-construction Conference................................................................ 15
       C.    Initiation of Construction..................................................................... 15
       D.    Meetings During Construction............................................................. 15
       E.    Operation and Maintenance Plan, Environmental Monitoring Work Plan,
             and Revised POP.................................................................................. 15
             1.    Operation and Maintenance Plan ............................................... 16
             2.    Environmental Monitoring Work Plan ....................................... 17
             3.    Revised POP ............................................................................. 17
       F.    Final Construction Inspection ............................................................. 17
       G.    Final Remedial Construction Reports................................................... 18
       H.    Demonstration of Compliance Report .................................................. 18
       I.    Operation and Maintenance ................................................................. 19

VII.    SUBMISSIONS REQUIRING AGENCY APPROVAL ......................................................... 19

Attachment A:  Project Operations Plan

Attachment B:  Performance Standard Tables from September 30, 2008 Record of Decision

Attachment C:  Figure SOW-1:  General Site Plan