IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: July 14, 2010 at 10:30 a.m.** |
| | ) | **Objection Deadline: June 28, 2010 at 4:00 p.m.** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THEIR ENTRY INTO (I) CONSENT ORDER WITH THE UNITED STATES REGARDING THE ZONOLITE/W.R. GRACE EASTHAMPTON, MA SUPERFUND SITE, (II) STIPULATION RESOVING CLAIM 11301 OF OLDON LIMITED PARTNERSHIP, AND (III) STIPULATION RESOLVING CLAIM 7121 OF THE CITY OF EASTHAMPTON**

The Debtors respectfully request entry of an order (substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Order</u>")) authorizing their entry into (i) an Administrative Settlement Agreement and Order on Consent for Removal Action ("<u>Consent Order</u>") with the United States of America (the "<u>United States</u>") and Oldon

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company ( collectively, "Debtors" or "Grace.").

Limited Partnership ("Oldon") resolving the United States' claims with respect to the Zonolite/W.R. Grace Easthampton, MA, Superfund site (the "Site") and providing for environmental remediation of the Site; (ii) a Stipulation resolving Claim no. 11301 from Oldon Limited Partnership (the "Oldon Stipulation"); and (iii) a Stipulation resolving Claim no. 7121 from the City of Easthampton, MA. (the "City Stipulation"). The Site is an Additional Site within the meaning of the *Settlement Agreement Resolving the United States' Proof of Claim Regarding Certain Environmental Matters* (the "Multi-Site Agreement"), entered by this Court by Order dated June 2, 2008 (Docket No. 18847). In support of the Motion, the Debtors respectfully state as follows:

### JURISDICTION

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for this Motion are sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

### BACKGROUND

3.    From 1963 to 1993, Grace leased from Oldon or its predecessors a building located at 19 Wemelco Way, Easthampton, MA (the "Property"). Until 1992, Grace operated a manufacturing facility (the "Former Zonolite Facility"), which produced expanded vermiculite products at the Property. In that year, Grace closed the Former Zonolite Facility, removed all equipment from the facility and terminated the Property

lease.[2]  The Property was thereafter either vacant or used by a lessee for storage from 1993 to present.

4.    The Site consists of approximately 2.3 acres, which encompasses the Property on which the Former Zonolite Facility was located as well as certain adjacent properties, including a railroad right-of-way now owned by the City. (see Site Diagram attached to the Consent Order as Appendix C). Asbestos is present in surface and subsurface soils surrounding the Property and inside the Former Zonolite Facility.

5.    In August 2000, the Massachusetts Department of Environmental Protection ("MassDEP") issued a Notice of Responsibility to Grace pursuant to Massachusetts General Laws Chapter 21E, "MGLc.21E") related to asbestos-contaminated soils at the Site.  With oversight from MassDEP and an access agreement with Oldon, Grace conducted soil sampling at the site and assessment activities in December 2000, January 2001 and April 2001 to determine the nature and extent of asbestos in surficial and subsurface soils.

6.    On April 2, 2001, Grace commenced its chapter 11 cases.  In June 2001, Grace's field investigation report regarding the Site was submitted to MassDEP.  Grace then ceased all work relating to the Site as a result of the chapter 11 cases.

7.    Thereafter, Oldon continued to cooperate with MassDEP and the United States Environmental Protection Agency ("USEPA") related to subsequent investigations at the Site.  On October 27, 2006, (the "2006 MassDEP Letter"), six years after notifying Grace, MassDEP notified Oldon that it was also a Potentially Responsible Party under

---

[2]    Capitalized terms not defined in this Motion shall have the meaning ascribed to them, as the case may be, in the Consent Order, the Oldon Stipulation, the City Stipulation or the Multi-Site Agreement.

MCL c.21E regarding asbestos contamination at the Site. At that time, Oldon began a process of interaction and working in cooperation with MassDEP. Rather than excavation of asbestos-contaminated soils and offsite disposal, Oldon proposed a more cost-effective (i.e., less expensive) remediation strategy, whereby asbestos-containing soils would be excavated and placed under a cap on Oldon's property. This solution contemplated Oldon permanently losing approximately 1.6 acres in the northern part of the Property.

8.    Massachusetts Department of Public Health (MDPH) and the United States Agency for Toxic Substances and Disease Registry (ATSDR) also made several visits to the Site. In December 2006, MDPH prepared and issued a Health Consultation pursuant to a cooperative agreement with ATSDR.

9.    In an October 2008 memorandum, USEPA's Office of Solid Waste and Emergency Response ("OSWER") directed USEPA Regional Removal Programs to reassess vermiculite sites that received asbestos-containing concentrate from Libby, Montana. As a result, in January 2009, USEPA Region 1's Emergency Planning & Response Branch contacted MassDEP to discuss the status of the Site. At that time, USEPA learned that no action had been taken to address asbestos materials in surface and subsurface soils at the Site.

10.   In February 2009, USEPA conducted a preliminary assessment/site investigation based on the available sampling data and historical information for the Site.

11.   Grace and Oldon each received a July 15, 2009 Notice Letter (the "USEPA Notice Letter") from USEPA Region 1 regarding environmental liability at the Site

under CERCLA, 42 U.S.C. §9601 et seq. The letter identified two Potentially Responsible Parties (PRPs)—Grace and Oldon, put them on notice of USEPA's planned asbestos removal activities at the Site (the "Proposed Remediation Work") and further demanded that they either perform the Proposed Remediation Work or pay the cost of such performance. The USEPA Notice Letter further stated that the USEPA was designating the Site as an Additional Site pursuant to the Multi-Site Agreement. The Multi-Site Agreement states that the USEPA may file additional general unsecured claims for costs arising from Additional Sites.

12.    Since receiving the USEPA Notice Letter, Grace and Oldon have cooperated with the USEPA in negotiating the Consent Order, the form of which is attached as Exhibit I to the Order.

13.    On March 23, 2010, USEPA issued an Action Memorandum (Appendix A to the Consent Order) authorizing removal of contaminated soils from the Site (the "Removal Action").

14.    Grace, Oldon and the United States now desire, without any admission of fact, law or liability, to proceed with a remedy for the environmental remediation of the Site, resolve the USEPA's claims and demands relating to the Site, and resolve the claims asserted against Grace by Oldon and the City of Easthampton (the "City") on the terms set forth in the Consent Order, the Oldon Stipulation and the City Stipulation, described in more detail below.

## THE CONSENT ORDER

15.    The Consent Order specifically resolves: (a) the USEPA's claim for the Site as an Additional Site under the Multi-Site Agreement; and (b) the demands for

performance of and  payment of costs associated with the Proposed Remediation Work as set forth in the USEPA Notice Letter.

16.    In particular, the Consent Order requires Grace and Oldon perform and manage remediation at the Site based on parameters defined in a Scope of Work (the "SOW", attached as Appendix D to the Consent Order) and the USEPA's Action Memorandum.  The SOW and Action Memorandum call for excavation and removal of asbestos-containing soils at the Site with disposal either offsite or in a surface impoundment located on property owned by Oldon.

17.    Asbestos-containing soils located along an abandoned railroad right-of-way owned by the City in the vicinity of the Site and asbestos fibers in a localized area inside the Former Zonolite Facility will also be addressed by the remediation provided for in the Consent Order and appendices.

18.    Oldon will provide Site access to Grace for the duration of the response actions. Oldon will allow an activity and use limitation (AUL) to be placed on the capped portion of Oldon's property, which will limit future uses of Oldon's property and therefore reduce its fair market value. And, Oldon will fund and manage operation and maintenance at the Site in perpetuity, including maintaining the integrity of the cap and monitoring as required by EPA.

19.    Except as otherwise outlined herein, Oldon will not perform any of the remediation activity nor will Oldon fund any of the remediation. Likewise, as discussed in more detail below, Oldon will not be compensated for the loss of the acreage to be set aside on their property for the disposal and capping of the asbestos-containing materials nor will they receive compensation for the other damages they allege to have suffered,

discussed in more detail below, which Oldon asserts to be in excess of $1 million, as a result of Grace's operations on the Property and the resulting contamination.

20.    The Action Memorandum estimates the cost for USEPA to perform the remedial actions at the Site to be approximately $1.357 million. Grace's cost estimate for the same work is less than $1 million. Remediation and Site restoration will take approximately 6 months to complete.

21.    With respect to the USEPA's Past Response Costs, Grace agrees under the Consent Order to pay $72,537 to the USEPA. Consistent with the Multi-Site Agreement, Grace's obligation to pay the Past Response Costs is in the form of an allowed general unsecured claim against Grace's chapter 11 estates (the "<u>Allowed Past Response Cost Claim</u>"). The Allowed Past Response Cost Claim will be paid within 30 days after the effective date of the Plan of Reorganization for the Debtors in the same manner as all other allowed general unsecured claims. Notwithstanding what the Plan of Reorganization may provide, however, interest on the Allowed Past Response Cost Claim will not commence accruing until 30 days after the Effective Date of the Consent Order, at which point, interest will accrue on the Allowed Past Response Cost Claim at the rate established by 26 U.S.C. § 9507.

22.    Under the Consent Order, Grace also agrees that it will pay USEPA's Future Response Costs. These costs shall be payable within 30 days of Grace's receipt of each bill requiring payment or within 30 days of the effective date of the Plan of Reorganization, whichever is later.

23.    In return for the obligations to be assumed by Grace and Oldon under the Consent Order, the United States will provide Grace and Oldon with a covenant not to

sue for matters addressed under the Consent Order. Those matters include implementation of the SOW and Action Memorandum.

### THE OLDON STIPULATION

24.    On March 27, 2003, Oldon filed a timely proof of claim in the Grace chapter 11 case (Claim No. 11301) in the amount of at least $2,151,000 (the "Oldon Claim") arising from the estimated cost of remediation at the Site. In addition, since filing the Oldon Claim, Oldon has made demand upon Grace for additional losses related to the Property in the amount of approximately $1 million.

25.    The Oldon Stipulation (Exhibit II to the Order) resolves the Oldon Claim in the amount of $118,010 (the "Allowed Oldon Claim") for certain actual costs already incurred by Oldon for compliance fees to MassDEP, a site survey, environmental consulting, legal fees and other the costs incurred by Oldon as Owner of the Site. The Allowed Oldon Claim shall be paid in the same manner as all other similarly situated allowed asbestos property damage claims[3] under the Plan of Reorganization. All other amounts outlined in or related to Oldon Claim No. 11301 relating to the Property shall be disallowed and expunged.

26.    The Oldon Stipulation also provides that: (i) Grace will be given access to the Site by Oldon for the duration of remediation of the Site; (ii) an activity and use limitation (AUL) will be placed on the capped portion of the Property; and (iii) Oldon

---

[3] The Debtors' current chapter 11 Plan of Reorganization (the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al, the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PD Future Claimants' Representative and the Official Committee of Equity Security Holders As Modified Through March 19, 2010*, as thereafter amended ( Docket No.24657)) specifically provides that the Debtors' obligations under the Multi-Site Agreement constitute Class 9 General Unsecured Claims, including claims of the USEPA arising from Additional Sites, notwithstanding any other provisions of the plan (See, plan section 3.1.9(c)). However, the Oldon Claim was not addressed in the Multi-Site Agreement and under the plan, costs associated with environmental remediation of asbestos contamination constitute Asbestos PD Claims ( See, plan section 1.1(19.)).

will fund and manage operation and maintenance at the Site in perpetuity, including maintaining the integrity of the cap and monitoring as required by EPA.

27.    Except as otherwise outlined in the Oldon Stipulation (described above in ¶ 26), Oldon will not perform any of the remediation on the Site contemplated by the SOW, nor will Oldon fund any such remediation. Likewise, Oldon will not be compensated for: (i) property used for the disposal and capping of the asbestos containing materials; (ii) any other damages (asserted to exceed $1 million) alleged to have arisen from Grace's operation of the Former Zonolite Facility and any associated contamination of the Property.

## THE CITY STIPULATION

28.    On March 27, 2003, the City filed a proof of claim against Grace, identified as Claim No. 7121 in an unspecified amount (the "City Claim") for compensation of the City's anticipated costs relating to Site remediation, including remediation of certain City-owned property within the Site, which the City alleges was contaminated by asbestos as a result of Grace's operation of the Former Zonolite Facility.

29.    The City Stipulation (Exhibit III to the Order) provides that the City Claim will be disallowed and expunged. The City Stipulation further provides that, in the event that Grace fails to perform its obligations under the Consent Order to remediate the Site as set forth in the Consent Order, the City shall have the right to reassert the City Claim.

## RELIEF REQUESTED

30.    By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 (a) authorizing the Debtors' entry into (i) the Consent Order permitting Grace to remediate

the Site and compensate the USEPA for its Past Response Costs and Future Response Costs related to the Site; (ii) the Oldon Stipulation resolving Oldon's reimbursement claims related to the Site; and (iii) the City Stipulation resolving the City's claims with respect to environmental clean-up of the Site; (b) granting the Debtors authority to consummate the transactions contemplated in the Consent Order, the Oldon Stipulation and the City Stipulation, including the use of the Debtors' estate property and resources necessary to undertake the performance of the work set forth in the Consent Order; and (d) granting such other relief as may be appropriate.

## BASIS FOR RELIEF

### Sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a)

31.    This Court has the statutory authority to authorize and approve the Debtors' entry into the Consent Order, the Oldon Stipulation and the City Stipulation and the incurrence of costs and expenses contemplated therein, pursuant to Bankruptcy Code sections 105(a) and 363(b) and Bankruptcy Rule 9019.

32.    Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

33.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. §363(b)(1). This Court may authorize the Debtors to use or sell property of the estates pursuant to section 363(b)(1) of the Bankruptcy Code if such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986);

In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also In re Schipper, 933 F.2d

513, 515 (7th Cir. 1991) (a debtor's decision must be supported by some "articulated

business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986)

(adopting the "sound business purpose" standard for sales proposed pursuant to section

363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In

re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

     34.    A settlement of claims and causes of action by a debtor in possession constitutes a

use of the property of the estate. See Northview Motors, Inc. v. Chrysler Motors Corp.,

186 F.3d 346, 350 (3d Cir. 1999). If a settlement is outside the ordinary course of

business of the debtor, it requires the approval of the bankruptcy court pursuant to

Bankruptcy Code section 363(b).

     35.    Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the

trustee and after notice and a hearing, the court may approve a compromise or

settlement." Fed. R. Bankr. P. 9019(a). Settlements and compromises are "a normal part

of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT

Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (citations omitted). Indeed,

compromises are favored in bankruptcy since they minimize litigation and expedite the

administration of a bankruptcy case. See In re Martin, 91 F.3d 389, 393 (3d Cir. 1996);

see also In re Key3Media Group, Inc., 2006 WL 2842462, at *3 (D. Del. 2006).

     36.    Before approving a settlement under Bankruptcy Rule 9019, however, a

court must determine that the proposed settlement is in the best interests of the debtor's estate.

See Martin, 91 F.3d at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del.

1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the

interest of the estate.'") (citation omitted). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

37.    The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id.; see also, In re Nutraquest, Inc., 434 F.3d 639, 644-45 (3d Cir. 2006).

38.    It is also well settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." Key3Media Group, 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)). Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness." World Health Alternatives, 344 B.R. at 296 (citations omitted); see also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).

**Application of Standards for Approval of a Settlement to the Facts of This Case**

39.    The Debtors have determined that entry into the Consent Order, the Oldon Stipulation and the City Stipulation is in the best interests of the Debtors and their estates. The Consent Order, Oldon Stipulation and City Stipulation were the process of a rigorous negotiation process, are fair and reasonable, and are within the reasonable range of litigation possibilities.

40.    The Consent Order is in the best interests of the estate for a number of reasons. First, the Consent Order prevents the incurrence of significant transaction and litigation costs and cost-effectively resolves significant environmental liabilities of the Debtors. Approving entry into the Consent Order will allow the Debtors to implement a removal action for a fraction of the estimated cost if USEPA were to perform the remedy, will provide assurance to the creditors that environmental liabilities associated with the Site are fully addressed and permanently resolved and will resolve claims for Past Response Costs and Future Response Costs.

41.    Second, the Consent Order is consistent with CERCLA's goals and benefits the public interest because the Consent Order will result in the implementation of a clean-up remedy at the Site. Such approval benefits the public by assuring that the clean-up work will proceed.

42.    Third, as discussed above, USEPA designated the Site as an Additional Site pursuant to the Multi-Site Agreement, which permits the USEPA to assert additional general unsecured claims against the Debtors for environmental remediation costs associated with the Site.  Resolution of the USEPA's claims on the terms and conditions set forth in the Consent Order is consistent with the treatment for Additional Sites outlined in the Multi-Site Agreement and resolves the Debtors' liability for Site remediation costs and other associated liabilities on terms and in amounts favorable to the Debtors.

43.    The terms and conditions of the Oldon Stipulation are similarly fair and equitable under the circumstances.  Under CERCLA and MGLc.21E, Oldon, as the Property's owner, is a responsible party jointly and severally liable for environmental response actions at the Site, but applicable statutory provisions and case law provide

Oldon with defenses to that joint and several liability.  A recent U.S. Supreme Court decision under CERCLA may support Oldon's argument that there is a reasonable basis to apportion nearly all liability for the Site entirely to Grace.  See <u>Burlington Northern and Santa Fe Railway Co. v. US</u>, 129 S.Ct. 1870 (2009).  Using the so-called "Gore Factors" used under CERCLA and 21E to allocate equitable shares of responsibility for contamination, in this case where Oldon's actions contributed nothing to the contamination, Grace could likely be found responsible for almost 100% of the costs of cleanup of the contamination.  See <u>American Cyanamid v. Capuano</u>, 383 F3d 6 (1st Cir. 2004) and <u>Martignetti v. Haigh-Farr</u>, 425 Mass. 294 (1997).  In addition, Oldon is entitled to seek contribution and reimbursement of cleanup as well as other costs from Grace, especially under MGLc.21E.  Under these facts and circumstances, Grace's assumption of the remediation costs under the Consent Order in exchange for the reduction of the Oldon Claim from a several million dollar claim to $118,010 is a fair compromise, particularly given the costs and fees already incurred by Oldon, Oldon's substantial work in formulating a cost effective remedy for the Site, the long-term monitoring and maintenance obligations Oldon is assuming for the Site, and the reduced value of Oldon's property from the AUL use limitations required by USEPA.

44.    As discussed above, after receiving the 2006 MassDEP Letter asserting that it was a potentially responsible party for the Site, Oldon cooperated with MassDEP and USEPA related to subsequent investigations at the Site. Oldon retained an environmental consultant who proposed a more cost-effective remedy for Site contamination.  Oldon's attorney and consultant played a critical role in convincing the government to adopt the more cost-effective remedy.  The Debtors estimate that this

remedy will cost less than $1 million as compared to the contemplated alternative of soil removal and offsite disposal, the cost of which the Debtors estimate could exceed $2 million. The remedy proposed by the Consent Order and the Oldon Stipulation will result in Oldon's loss of the use of approximately 1.6 acres of the Property—for which it will receive no compensation. Moreover, since receiving the 2006 MassDEP Letter, Oldon has provided access to the Property, including the Former Zonolite Facility, obtained a survey of the Site and made preliminary contacts with Tennessee Gas Pipeline which owns an easement over a portion of the Site. Oldon also took responsibility for contacting adjacent landowners to inform them of the Consent Order's contemplated removal actions and Oldon's attorney helped negotiate more favorable terms in the Consent Order than the terms USEPA proposed, which benefits Debtors as well as Oldon.

45.    The Debtors have benefitted from all these activities and costs incurred by Oldon over the past number of years. None of the costs incurred by Oldon would have been necessary but for Grace's operation of the Former Zonolite Facility.

46.    Resolution of the City Claim on the terms and conditions of the City Stipulation is likewise fair and equitable. The City protectively filed the City Claim to assure that the Site is remediated and the contamination of the City's property is addressed. The remediation which the City seeks is provided for in the Consent Order. As a result, so long as Grace performs under the Consent Order, the City will have no claim. Only if Grace fails to fully perform under the Consent Order will the City have any right or need to assert a claim. Thus, the disallowance and expungement of the City Claim as provided for in the City Stipulation is appropriate.

47.    Thus, for the reasons stated above, the proposed Consent Order, Oldon Stipulation and City Stipulation are all fair and equitable and in the best interests of the Debtors, their estates, and their creditors, and also in the public interest because they are the best settlement attainable given all the facts and circumstances. In the absence of a resolution by settlement, the Debtors will likely incur substantial legal fees and expenses litigating these matters to final judgment. Accordingly, the Debtors have demonstrated a sound business justification and best interest for the execution and consummation of the Consent Order, the Oldon Stipulation and the City Stipulation.

### No Previous Motion

48.    No previous motion for the relief sought herein has been made to this or any other court.

### No Briefing Schedule

49.    The Debtors respectfully submit that this Motion does not present any novel issues of law requiring briefing.  Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference in Del. Bankr. L.R. 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Rules.

### Notice

50.    Notice of this Motion has been given to:  (i) the office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants'

Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) counsel to the United States, Oldon and the City.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached as Exhibit A hereto, (1) approving the Debtors' execution of (i) the Consent Order attached as Exhibit I to the form of order; (ii) the Oldon Stipulation, attached as Exhibit II to the form of order which resolves Claim No. 11301; and (iii) the City Stipulation attached as Exhibit III to the form of order which resolves Claim No. 7121; (2) authorizing the Debtors to consummate the transactions contemplated in the Consent Order, the Oldon Stipulation and the City Stipulation; and (3) granting such other relief as may be just or proper.

Dated:  June 7, 2010

KIRKLAND & ELLIS LLP
Theodore L. Freedman
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

and

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
Roger J. Higgins
70 W. Madison St., Suite 2100
Chicago, IL 60602-4253
(312) 641-2162

and

PACHULSKI STANG ZIEHL & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
Kathleen P. Makowski ( Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705
(302) 652-4100
(302) 652-4400
Co-Counsel for the Debtors and Debtors-in-
Possession

DOCS_DE:160716.1