- Sample, identify and characterize all asbestos-containing soils and other hazardous materials;
- Excavate asbestos-containing surface soils located on the railroad Right-of-Way and prepare for either placement in a surface impoundment located in Areas A and B of the Former Zonolite Facility or at an EPA-approved disposal facility;
- Excavate asbestos-containing soils located in Areas A, C, D and E of the Former Zonolite Facility, the Cernak Parcel, the DOS Parcel and the Elastomerics Parcel, and place in a surface impoundment to be located in Areas A and B of the Former Zonolite Facility;
- Take all required actions as needed to facilitate vegetation cutting; surveying; site grading; excavation or grading of asbestos-containing soils in Areas A and B of the Former Zonolite Facility; relocation of asbestos-containing soil; installation of a minimum two-foot cover consisting of a demarcation (geotextile) layer covered with at least two feet of compacted non-asbestos-containing material and hydroseeded;
- Take required actions as needed to remove amphibole asbestos fibers from the building and dispose in a surface impoundment located in Areas A and B of the Former Zonolite Facility;
- Coordinate with Tennessee Gas Pipeline during excavation of asbestos-containing soil located within Area C of the Former Zonolite Facility and the railroad Right-of-Way;
- Coordinate transportation and disposal of hazardous substances to an EPA-approved disposal facility;
- Repair any response-related damage at the Site; and
- Demobilize all equipment and personnel.

## 2. Community relations

The OSC will continue to coordinate with MassDEP, MassDPH, the City of Easthampton, and other involved entities. If necessary, the OSC will coordinate a public information session with the surrounding community, and will issue press releases and fact sheets as required.

## 3. Contribution to remedial performance

EPA designed the cleanup proposed in this Action Memorandum to mitigate the threats to human health and the environment posed by the Site. The actions taken at the Site would be consistent with and will not impede any future responses.

## 4. Description of alternative technologies

EPA does not plan to use alternative technology for this removal action.

## 5.    Applicable or relevant and appropriate requirements (ARARs)

Federal ARARs:

40 CFR Part 262  Standards Applicable to Generators of Hazardous Waste:

> Subpart B - The Manifest
> 262.20 : General requirements for manifesting
> 262.21 : Acquisition of manifests
> 262.22 : Number of copies of manifests
> 262.23 : Use of the manifest
>
> Subpart C - Pre-Transport Requirements
> 262.30 : Packaging
> 262.31 : Labeling
> 262.32 : Marking
>
> Subpart D - Recordkeeping and Reporting
> 262.40 : Recordkeeping

40 CFR Part 264  Standards for Owners and Operators of Hazardous waste Treatment, Storage, and Disposal Facilities:

> Subpart I - Use and Management of Containers
> 264.171 : Condition of containers
> 264.172 : Compatibility of waste with containers
> 264.173 : Management of containers
> 264.174 : Inspections
> 264.175 : Containment
> 264.176 : Special requirements for ignitable or reactive waste
> 264.177 : Special requirements for incompatible wastes

40 CFR Part 264  Hazardous Waste Regulations - RCRA Subtitle C:
> 268-270 : Hazardous and Solid Waste Amendments Land Disposal Restrictions Rule

40 CFR Part 61  Clean Air Act – National Emission Standards for Hazardous Air Pollutants (NESHAP) Subpart M – worker safety requirements.

The EPA OSC will meet Federal ARARs to the extent practicable considering the exigencies of the situation.  The following, while not ARARs, will be complied with during the removal action:

29 CFR Parts 1910, 1926, and 1904: OSHA Health and Safety Regulations.

State ARARs:

Massachusetts Contingency Plan  310 CMR Section 7.15: U Asbestos  Commonwealth of Massachusetts standards for handling, transporting and disposing asbestos.

The OSC will coordinate with State officials to identify additional State ARARs, if any.  In accordance with the National Contingency Plan and EPA Guidance Documents, the OSC will determine the applicability and practicability of complying with each ARAR identified in a timely manner.

6.   **Project schedule**

The PRPs have expressed interest in conducting the required work within this Action Memorandum under an Administrative Order on Consent (AOC).  The PRPs will provide a detailed project schedule for this time-critical removal action within the project work plan developed as part of the AOC.  EPA anticipates the removal action to be complete within six months of its commencement.

B.   **Estimated Costs**

The table below reflects EPA estimated costs if the aforementioned AOC is not in effect.

| COST CATEGORY | | CEILING |
|---|---|---|
| *REGIONAL REMOVAL ALLOWANCE COSTS:* | | |
| ERRS Contractor | | $600,000.00 |
| Interagency Agreement | | $  0.00 |
| *OTHER EXTRAMURAL COSTS NOT FUNDED FROM THE REGIONAL ALLOWANCE:* | | |
| START Contractor | | $125,000.00 |
| Extramural Subtotal | | $725,000.00 |
| Extramural Contingency | 15% | $108,000.00 |
| **TOTAL, REMOVAL ACTION CEILING** | | **$833,000.00** |

VI.   **EXPECTED CHANGE IN THE SITUATION SHOULD ACTION BE DELAYED OR NOT TAKEN**

In the absence of the response action described herein, conditions at the Site will continue to remain constant or deteriorate, and the threats associated with the presence of amphibole asbestos fibers in the building and on-site soils will persist.  Delayed action will increase public health risks and environmental risks posed by the release or threat of release of amphibole asbestos fibers.

VII.   **OUTSTANDING POLICY ISSUES**

The proposed action is precedent setting because asbestos is the principal contaminant of concern.

## VIII.    ENFORCEMENT ... For Internal Distribution Only

See attached Enforcement Strategy.

The total EPA costs for this removal action based on full-time accounting practices that will be eligible for cost recovery are estimated to be $833,000 (extramural costs) + $100,000 (EPA intramural costs) = $933,000 X 1.4541 (regional indirect rate) = **$1,356,675** [2].

## IX.    RECOMMENDATION

This decision document represents the selected removal action for the Zonolite/W.R. Grace Site in Easthampton, Massachusetts, developed in accordance with CERCLA, as amended, and is not inconsistent with the National Contingency Plan.  EPA will document this decision in the administrative record for this Site.

Conditions at the Site meet the NCP Section 300.415 (b) (2) criteria for a removal action due to the following:

*Actual or potential exposure to nearby human populations, animals, or the food chain from hazardous substances or pollutants or contaminants [§300.415(b)(2)(i)];*

*High levels of hazardous substances or pollutants or contaminants in soils largely at or near the surface, that may migrate [§300.415(b)(2)(iv)];*

*Weather conditions that may cause hazardous substances or pollutants or contaminants to migrate or be released [§300.415(b)(2)(v)];*

---

[2] Direct Costs include direct extramural costs $833,000 and direct intramural costs $100,000. Indirect costs are calculated based on an estimated indirect cost rate expressed as a percentage of site-specific costs [45.41% x $933,000, consistent with the full accounting methodology effective October 2, 2000. These estimates do not include pre-judgment interest, do not take into account other enforcement costs, including Department of Justice costs, and may be adjusted during the course of a removal action. The estimates are for illustrative purposes only and their use is not intended to create any rights for responsible parties. Neither the lack of a total cost estimate nor deviation of actual total costs from this estimate will affect the United States' right to cost recovery.

Action Memorandum for Zonolite / W.R. Grace Site
Easthampton, Massachusetts

March 23, 2010
Page 13 of 13

*The availability of other appropriate Federal or State response mechanisms to respond to the release [§300.415(b)(2)(vii)];*

I recommend that you approve the proposed removal action.  The total removal action project ceiling if approved will be $833,000.

APPROVAL:_____     DATE:_3-23-2010_

DISAPPROVAL:_____     DATE:_____

# **<u>APPENDIX B</u>**

IFMS Reconciliation Pending

Itemized Cost Summary

ZONOLITE/W.R. GRACE FACILITY, EASTHAMPTON, MA  SITE ID = 01 FK

Payroll Costs Through Pay Period 11 of Fiscal Year 2010 Ending February 27, 2010
Voucher Costs Through March 14, 2010

**REGIONAL PAYROLL COSTS** ....................................................................................... $12,140.26

**HEADQUARTERS PAYROLL COSTS** ............................................................................. $139.89

**ENVIRONMENTAL SERVICES ASSISTANCE TEAMS (ESAT) CONTRACT COSTS**

      TECHLAW, INC. (EPW06017) ............................................................................. $81.63

**SUPERFUND TECHNICAL ASSISTANCE AND RESPONSE TEAM (START)
CONTRACT COSTS**

      WESTON SOLUTIONS, INC. (EPW05042) ......................................................... $33,203.41

      SOVEREIGN CONSULTING, INC. (EPW06043) ............................................... $4,319.56

**EPA INDIRECT COSTS** ................................................................................................. $22,652.68

**Total Site Costs:** $72,537.43

IFMS Reconciliation Pending

Regional Payroll Costs

ZONOLITE/W.R. GRACE FACILITY, EASTHAMPTON, MA  SITE ID = 01 FK

Payroll Costs Through Pay Period 11 of Fiscal Year 2010 Ending February 27, 2010
Voucher Costs Through March 14, 2010

| Employee Name | Fiscal Year | Pay Period | Payroll Hours | Payroll Costs |
|---|---|---|---|---|
| HENNESSY, TINA M. | 2009 | 08 | 7.00 | 459.37 |
| (CAVANAUGH), | | 09 | 5.00 | 328.13 |
| | | 10 | 11.50 | 754.68 |
| | | 11 | 0.50 | 32.82 |
| | | 12 | 2.25 | 147.66 |
| | | 13 | 1.00 | 65.62 |
| | | 14 | 2.00 | 131.25 |
| | | 15 | 1.50 | 100.24 |
| | | 16 | 2.00 | 131.25 |
| | | 17 | 1.75 | 114.85 |
| | | 18 | 7.50 | 492.17 |
| | | 20 | 15.75 | 1,033.58 |
| | | 21 | 14.25 | 935.14 |
| | | 22 | 8.00 | 525.00 |
| | | 23 | 15.75 | 1,039.53 |
| | | 24 | 1.75 | 114.86 |
| | | 25 | 4.00 | 262.51 |
| | | 26 | 8.25 | 541.40 |
| | | 27 | 4.00 | 262.51 |
| | 2010 | 01 | 6.00 | 393.74 |
| | | 02 | 0.25 | 16.42 |
| | | 03 | 0.25 | 16.39 |
| | | 04 | 2.00 | 131.25 |
| | | 05 | 3.50 | 229.68 |
| | | 06 | 5.50 | 357.57 |
| | | 07 | 1.25 | 82.04 |
| | | 08 | 5.00 | 335.73 |
| | | 09 | 5.50 | 369.30 |
| | | 10 | 1.50 | 100.72 |
| | | 11 | 2.50 | 167.88 |
| | | | 147.00 | $9,673.29 |
| MCKEOWN, JOHN A. | 2010 | 07 | 6.00 | 419.02 |
| | | | 6.00 | $419.02 |
| ZUCKER, AUDREY L. | 2009 | 10 | 1.00 | 93.28 |
| | | 18 | 2.00 | 186.54 |

Report Date: 03/15/2010                                                                 Page 2 of 2

IFMS Reconciliation Pending

Regional Payroll Costs

ZONOLITE/W.R. GRACE FACILITY, EASTHAMPTON, MA  SITE ID = 01 FK

Payroll Costs Through Pay Period 11 of Fiscal Year 2010 Ending February 27, 2010
Voucher Costs Through March 14, 2010

| Employee Name | Fiscal Year | Pay Period | Payroll Hours | Payroll Costs |
|---|---|---|---|---|
| ZUCKER, AUDREY L. | 2009 | 20 | 1.25 | 116.60 |
| | | 21 | 1.00 | 93.28 |
| | | 22 | 4.00 | 373.09 |
| | | 23 | 2.50 | 233.18 |
| | | 25 | 2.50 | 233.18 |
| | | 26 | 7.00 | 629.70 |
| | 2010 | 01 | 1.00 | 89.10 |
| | | | 22.25 | $2,047.95 |
| | | | | |
| Total Regional Payroll Costs | | | 175.25 | $12,140.26 |

## IFMS Reconciliation Pending

### Headquarters Payroll Costs

### ZONOLITE/W.R. GRACE FACILITY, EASTHAMPTON, MA  SITE ID = 01 FK

Payroll Costs Through Pay Period 11 of Fiscal Year 2010 Ending February 27, 2010
Voucher Costs Through March 14, 2010

| Employee Name | Fiscal Year | Pay Period | Payroll Hours | Payroll Costs |
|---|---|---|---|---|
| GILBERT, EDWARD J. | 2009 | 25 | 0.50 | 34.51 |
|  | 2010 | 05 | 0.25 | 16.93 |
|  |  | 09 | 1.25 | 88.45 |
|  |  |  | 2.00 | $139.89 |
|  |  |  |  |  |
| Total Headquarters Payroll Costs |  |  | 2.00 | $139.89 |

Report Date: 03/15/2010                                                                    Page 1 of 2

## IFMS Reconciliation Pending

### Contract Costs

### ZONOLITE/W.R. GRACE FACILITY, EASTHAMPTON, MA  SITE ID = 01 FK

Payroll Costs Through Pay Period 11 of Fiscal Year 2010 Ending February 27, 2010
Voucher Costs Through March 14, 2010

ENVIRONMENTAL SERVICES ASSISTANCE TEAMS (ESAT) CONTRACT COSTS

| | |
|---|---|
| Contractor Name: | TECHLAW, INC. |
| EPA Contract Number: | EPW06017 |
| Delivery Order Information | DO #    Start Date    End Date |
| | 44    01/23/2010    01/29/2010 |
| Project Officer(s): | DEPIERRO, DENISE |
| Dates of Service: | From: 01/23/2010    To: 01/29/2010 |
| Summary of Service: | ENVIRON SERVICES ASSIST TEAMS(SUB-REDI) |
| Total Costs: | $81.63 |

| Voucher Number | Voucher Date | Voucher Amount | Treasury Schedule Number and Date | Site Amount | Annual Allocation |
|---|---|---|---|---|---|
| 3033.44-48 | 02/08/2010 | 830.53 | R0472    03/09/2010 | 36.10 | 45.53 |
| | | | Total: | $36.10 | $45.53 |

IFMS Reconciliation Pending

Contract Costs

## ZONOLITE/W.R. GRACE FACILITY, EASTHAMPTON, MA  SITE ID = 01 FK

Payroll Costs Through Pay Period 11 of Fiscal Year 2010 Ending February 27, 2010
Voucher Costs Through March 14, 2010

ENVIRONMENTAL SERVICES ASSISTANCE TEAMS (ESAT) CONTRACT COSTS

| | |
|---|---|
| Contractor Name: | TECHLAW, INC. |
| EPA Contract Number: | EPW06017 |

Delivery Order Information

| DO # | Start Date | End Date |
|---|---|---|
| 44 | 01/23/2010 | 01/29/2010 |

| | |
|---|---|
| Project Officer(s): | DEPIERRO, DENISE |
| Dates of Service: | From: 01/23/2010    To: 01/29/2010 |
| Summary of Service: | ENVIRON SERVICES ASSIST TEAMS(SUB-REDI) |
| Total Costs: | $81.63 |

| Voucher Number | Schedule Number | Rate Type | Annual Allocation Rate |
|---|---|---|---|
| 3033.44-48 | R0472 | Class | 1.261336 |

IFMS Reconciliation Pending

Contract Costs

ZONOLITE/W.R. GRACE FACILITY, EASTHAMPTON, MA  SITE ID = 01 FK

Payroll Costs Through Pay Period 11 of Fiscal Year 2010 Ending February 27, 2010
Voucher Costs Through March 14, 2010

SUPERFUND TECHNICAL ASSISTANCE AND RESPONSE TEAM (START) CONTRACT COSTS

| | |
|---|---|
| Contractor Name: | WESTON SOLUTIONS, INC. |
| EPA Contract Number: | EPW05042 |
| Project Officer(s): | CARLSON, JOHN |
| Dates of Service: | From: 12/27/2008    To: 01/29/2010 |
| Summary of Service: | S/F TECH ASSESSMENT&RESPONSE TEAM (REDI) |
| Total Costs: | $33,203.41 |

| Voucher Number | Voucher Date | Voucher Amount | Treasury Schedule Number and Date | | Site Amount | Annual Allocation |
|---|---|---|---|---|---|---|
| 1-A47 | 02/02/2009 | 331,727.69 | R9844 | 02/27/2009 | 679.67 | 76.81 |
| 1-A48 | 03/03/2009 | 331,727.69 | R9914 | 03/27/2009 | 6,284.07 | 710.11 |
| 2-A48 | 03/03/2009 | 43,690.24 | R9914 | 03/27/2009 | 70.20 | 7.93 |
| 1-A49 | 04/07/2009 | 414,659.62 | R9A04 | 05/01/2009 | 2,401.73 | 271.40 |
| 1-A50 | 05/05/2009 | 331,727.69 | R9A83 | 06/02/2009 | 292.18 | 33.02 |
| 1-A51 | 06/02/2009 | 331,727.69 | R9B63 | 06/26/2009 | 275.63 | 31.15 |
| 1-A53 | 08/06/2009 | 337,948.77 | R9D46 | 08/31/2009 | 833.62 | 94.20 |
| 2-A53 | 08/06/2009 | 95,756.37 | R9D46 | 08/31/2009 | 93.79 | 10.60 |
| 1-A54 | 09/03/2009 | 337,948.77 | R9E32 | 09/29/2009 | 138.05 | 15.60 |
| 1-A55 | 10/08/2009 | 414,846.60 | R0090 | 11/03/2009 | 1,296.14 | 146.47 |
| 1-A56 | 11/04/2009 | 337,948.77 | R0171 | 12/01/2009 | 5,215.77 | 589.39 |
| 2-A56 | 11/04/2009 | 105,519.36 | R0171 | 12/01/2009 | 93.16 | 10.53 |
| 1-A57 | 11/30/2009 | 337,948.77 | R0252 | 12/23/2009 | 380.36 | 42.98 |
| 1-A58 | 01/12/2010 | 421,237.64 | R0379 | 02/05/2010 | 7,361.33 | 831.85 |
| 2-A58 | 01/12/2010 | 223,354.10 | R0379 | 02/05/2010 | 3.25 | 0.37 |
| 1-A59 | 02/09/2010 | 337,948.77 | R0463 | 03/04/2010 | 4,297.25 | 485.60 |
| 2-A59 | 02/09/2010 | 52,562.14 | R0463 | 03/04/2010 | 116.08 | 13.12 |
| | | | | Total: | $29,832.28 | $3,371.13 |

IFMS Reconciliation Pending

Contract Costs

ZONOLITE/W.R. GRACE FACILITY, EASTHAMPTON, MA  SITE ID = 01 FK

Payroll Costs Through Pay Period 11 of Fiscal Year 2010 Ending February 27, 2010
Voucher Costs Through March 14, 2010

SUPERFUND TECHNICAL ASSISTANCE AND RESPONSE TEAM (START) CONTRACT COSTS

| | |
|---|---|
| Contractor Name: | WESTON SOLUTIONS, INC. |
| EPA Contract Number: | EPW05042 |
| Project Officer(s): | CARLSON, JOHN |
| Dates of Service: | From: 12/27/2008    To: 01/29/2010 |
| Summary of Service: | S/F TECH ASSESSMENT&RESPONSE TEAM (REDI) |
| Total Costs: | $33,203.41 |

| Voucher Number | Schedule Number | Rate Type | Annual Allocation Rate |
|---|---|---|---|
| 1-A47 | R9844 | Provisional | 0.113002 |
| 1-A48 | R9914 | Provisional | 0.113002 |
| 2-A48 | R9914 | Provisional | 0.113002 |
| 1-A49 | R9A04 | Provisional | 0.113002 |
| 1-A50 | R9A83 | Provisional | 0.113002 |
| 1-A51 | R9B63 | Provisional | 0.113002 |
| 1-A53 | R9D46 | Provisional | 0.113002 |
| 2-A53 | R9D46 | Provisional | 0.113002 |
| 1-A54 | R9E32 | Provisional | 0.113002 |
| 1-A55 | R0090 | Provisional | 0.113002 |
| 1-A56 | R0171 | Provisional | 0.113002 |
| 2-A56 | R0171 | Provisional | 0.113002 |
| 1-A57 | R0252 | Provisional | 0.113002 |
| 1-A58 | R0379 | Provisional | 0.113002 |
| 2-A58 | R0379 | Provisional | 0.113002 |
| 1-A59 | R0463 | Provisional | 0.113002 |
| 2-A59 | R0463 | Provisional | 0.113002 |

Report Date: 03/15/2010                                                          Page 1 of 1

IFMS Reconciliation Pending

Contract Costs

ZONOLITE/W.R. GRACE FACILITY, EASTHAMPTON, MA  SITE ID = 01 FK

Payroll Costs Through Pay Period 11 of Fiscal Year 2010 Ending February 27, 2010
Voucher Costs Through March 14, 2010

SUPERFUND TECHNICAL ASSISTANCE AND RESPONSE TEAM (START) CONTRACT COSTS

| | |
|---|---|
| Contractor Name: | SOVEREIGN CONSULTING, INC. |
| EPA Contract Number: | EPW06043 |
| Delivery Order Information | DO #        Start Date        End Date |
| | 4        06/01/2009        08/31/2009 |
| Project Officer(s): | CARLSON, JOHN |
| Dates of Service: | From: 06/01/2009    To: 08/31/2009 |
| Summary of Service: | S/F TECH ASSESSMENT&RESPONSE TEAM (REDI) |
| Total Costs: | $4,319.56 |

| Voucher Number | Voucher Date | Voucher Amount | Treasury Schedule Number | and | Date | Site Amount |
|---|---|---|---|---|---|---|
| EG100-A3-08 | 07/24/2009 | 4,424.80 | R9D15 | | 08/18/2009 | 614.90 |
| EG100-A3-09 | 08/23/2009 | 3,788.72 | R9D92 | | 09/16/2009 | 2,261.81 |
| EG100-A3-10 | 09/24/2009 | 5,522.58 | R0053 | | 10/20/2009 | 1,442.85 |
| | | | | | Total: | $4,319.56 |

Report Date: 03/15/2010                                                                                     Page 1 of 1

IFMS Reconciliation Pending

EPA Indirect Costs

ZONOLITE/W.R. GRACE FACILITY, EASTHAMPTON, MA  SITE ID = 01 FK

Payroll Costs Through Pay Period 11 of Fiscal Year 2010 Ending February 27, 2010
Voucher Costs Through March 14, 2010

| Fiscal Year | Direct Costs | Indirect Rate( %) | Indirect Costs |
|---|---|---|---|
| 2009 | 24,662.40 | 45.41% | 11,199.21 |
| 2010 | 25,222.35 | 45.41% | 11,453.47 |
| | 49,884.75 | | |

| | |
|---|---|
| Total EPA Indirect Costs | $22,652.68 |

IFMS Reconciliation Pending

EPA Indirect Costs

ZONOLITE/W.R. GRACE FACILITY, EASTHAMPTON, MA  SITE ID = 01 FK

Payroll Costs Through Pay Period 11 of Fiscal Year 2010 Ending February 27, 2010
Voucher Costs Through March 14, 2010

### PAYROLL DIRECT COSTS

| Employee Name | Fiscal Year | Pay Period | Payroll Costs | Ind. Rate (%) | Indirect Costs |
|---|---|---|---|---|---|
| GILBERT, EDWARD J. | 2009 | 25 | 34.51 | 45.41% | 15.67 |
| | | | 34.51 | | $15.67 |
| | | | | | |
| HENNESSY, TINA M. | 2009 | 08 | 459.37 | 45.41% | 208.60 |
| | | 09 | 328.13 | 45.41% | 149.00 |
| | | 10 | 754.68 | 45.41% | 342.70 |
| | | 11 | 32.82 | 45.41% | 14.90 |
| | | 12 | 147.66 | 45.41% | 67.05 |
| | | 13 | 65.62 | 45.41% | 29.80 |
| | | 14 | 131.25 | 45.41% | 59.60 |
| | | 15 | 100.24 | 45.41% | 45.52 |
| | | 16 | 131.25 | 45.41% | 59.60 |
| | | 17 | 114.85 | 45.41% | 52.15 |
| | | 18 | 492.17 | 45.41% | 223.49 |
| | | 20 | 1,033.58 | 45.41% | 469.35 |
| | | 21 | 935.14 | 45.41% | 424.65 |
| | | 22 | 525.00 | 45.41% | 238.40 |
| | | 23 | 1,039.53 | 45.41% | 472.05 |
| | | 24 | 114.86 | 45.41% | 52.16 |
| | | 25 | 262.51 | 45.41% | 119.21 |
| | | 26 | 541.40 | 45.41% | 245.85 |
| | | 27 | 262.51 | 45.41% | 119.21 |
| | | | 7,472.57 | | $3,393.29 |
| | | | | | |
| ZUCKER, AUDREY L. | 2009 | 10 | 93.28 | 45.41% | 42.36 |
| | | 18 | 186.54 | 45.41% | 84.71 |
| | | 20 | 116.60 | 45.41% | 52.95 |
| | | 21 | 93.28 | 45.41% | 42.36 |
| | | 22 | 373.09 | 45.41% | 169.42 |
| | | 23 | 233.18 | 45.41% | 105.89 |
| | | 25 | 233.18 | 45.41% | 105.89 |

IFMS Reconciliation Pending

EPA Indirect Costs

ZONOLITE/W.R. GRACE FACILITY, EASTHAMPTON, MA  SITE ID = 01 FK

Payroll Costs Through Pay Period 11 of Fiscal Year 2010 Ending February 27, 2010
Voucher Costs Through March 14, 2010

## PAYROLL DIRECT COSTS

| Employee Name | Fiscal Year | Pay Period | Payroll Costs | Ind. Rate (%) | Indirect Costs |
|---|---|---|---|---|---|
| ZUCKER, AUDREY L. | 2009 | 26 | 629.70 | 45.41% | 285.95 |
| | | | 1,958.85 | | $889.53 |
| Total Fiscal Year 2009 Payroll Direct Costs: | | | 9,465.93 | | $4,298.49 |

## OTHER DIRECT COSTS

| Contract, IAG, SCA, Misc.NO | Voucher Number | Treasury Schedule Date | Site Amount | Annual/SMO Allocation Costs | Ind. Rate (%) | Indirect Costs |
|---|---|---|---|---|---|---|
| EPW05042 | 1-A47 | 02/27/2009 | 143.78 | 16.25 | 45.41% | 72.67 |
| | | | 535.89 | 60.56 | 45.41% | 270.85 |
| | 2-A48 | 03/27/2009 | 70.20 | 7.93 | 45.41% | 35.48 |
| | 1-A48 | 03/27/2009 | 6,284.07 | 710.11 | 45.41% | 3,176.06 |
| | 1-A49 | 05/01/2009 | 2,401.73 | 271.40 | 45.41% | 1,213.87 |
| | 1-A50 | 06/02/2009 | 292.18 | 33.02 | 45.41% | 147.67 |
| | 1-A51 | 06/26/2009 | 275.63 | 31.15 | 45.41% | 139.31 |
| | 2-A53 | 08/31/2009 | 93.79 | 10.60 | 45.41% | 47.40 |
| | 1-A53 | 08/31/2009 | 833.62 | 94.20 | 45.41% | 421.32 |
| | 1-A54 | 09/29/2009 | 138.05 | 15.60 | 45.41% | 69.77 |
| | | | 11,068.94 | 1,250.82 | | $5,594.40 |
| EPW06043 | EG100-A3-08 | 08/18/2009 | 614.90 | 0.00 | 45.41% | 279.23 |
| | EG100-A3-09 | 09/16/2009 | 2,261.81 | 0.00 | 45.41% | 1,027.09 |
| | | | 2,876.71 | 0.00 | | $1,306.32 |
| Total Fiscal Year 2009 Other Direct Costs: | | | 13,945.65 | 1,250.82 | | $6,900.72 |
| Total Fiscal Year 2009: | | | 24,662.40 | | | $11,199.21 |

IFMS Reconciliation Pending

EPA Indirect Costs

ZONOLITE/W.R. GRACE FACILITY, EASTHAMPTON, MA  SITE ID = 01 FK

Payroll Costs Through Pay Period 11 of Fiscal Year 2010 Ending February 27, 2010
Voucher Costs Through March 14, 2010

### PAYROLL DIRECT COSTS

| Employee Name | Fiscal Year | Pay Period | Payroll Costs | Ind. Rate (%) | Indirect Costs |
|---|---|---|---|---|---|
| GILBERT, EDWARD J. | 2010 | 05 | 16.93 | 45.41% | 7.69 |
| | | 09 | 88.45 | 45.41% | 40.17 |
| | | | 105.38 | | $47.86 |
| | | | | | |
| HENNESSY, TINA M. | 2010 | 01 | 393.74 | 45.41% | 178.80 |
| | | 02 | 16.42 | 45.41% | 7.46 |
| | | 03 | 16.39 | 45.41% | 7.44 |
| | | 04 | 131.25 | 45.41% | 59.60 |
| | | 05 | 229.68 | 45.41% | 104.30 |
| | | 06 | 357.57 | 45.41% | 162.37 |
| | | 07 | 82.04 | 45.41% | 37.25 |
| | | 08 | 335.73 | 45.41% | 152.45 |
| | | 09 | 369.30 | 45.41% | 167.70 |
| | | 10 | 100.72 | 45.41% | 45.74 |
| | | 11 | 167.88 | 45.41% | 76.23 |
| | | | 2,200.72 | | $999.34 |
| | | | | | |
| MCKEOWN, JOHN A. | 2010 | 07 | 419.02 | 45.41% | 190.28 |
| | | | 419.02 | | $190.28 |
| | | | | | |
| ZUCKER, AUDREY L. | 2010 | 01 | 89.10 | 45.41% | 40.46 |
| | | | 89.10 | | $40.46 |

Total Fiscal Year 2010 Payroll Direct Costs:     2,814.22          $1,277.94

### OTHER DIRECT COSTS

| Contract, IAG, SCA, Misc.NO | Voucher Number | Treasury Schedule Date | Site Amount | Annual/SMO Allocation Costs | Ind. Rate (%) | Indirect Costs |
|---|---|---|---|---|---|---|
| EPW05042 | 1-A55 | 11/03/2009 | 1,296.14 | 146.47 | 45.41% | 655.09 |

Report Date: 03/15/2010

IFMS Reconciliation Pending

EPA Indirect Costs

ZONOLITE/W.R. GRACE FACILITY, EASTHAMPTON, MA  SITE ID = 01 FK

Payroll Costs Through Pay Period 11 of Fiscal Year 2010 Ending February 27, 2010
Voucher Costs Through March 14, 2010

OTHER DIRECT COSTS

| Contract, IAG, SCA, Misc.NO | Voucher Number | Treasury Schedule Date | Site Amount | Annual/SMO Allocation Costs | Ind. Rate (%) | Indirect Costs |
|---|---|---|---|---|---|---|
| EPW05042 | 1-A56 | 12/01/2009 | 5,215.77 | 589.39 | 45.41% | 2,636.12 |
| | 2-A56 | 12/01/2009 | 93.16 | 10.53 | 45.41% | 47.09 |
| | 1-A57 | 12/23/2009 | 380.36 | 42.98 | 45.41% | 192.24 |
| | 1-A58 | 02/05/2010 | 7,361.33 | 831.85 | 45.41% | 3,720.52 |
| | 2-A58 | 02/05/2010 | 3.25 | 0.37 | 45.41% | 1.64 |
| | 1-A59 | 03/04/2010 | 4,297.25 | 485.60 | 45.41% | 2,171.89 |
| | 2-A59 | 03/04/2010 | 116.08 | 13.12 | 45.41% | 58.67 |
| | | | 18,763.34 | 2,120.31 | | $9,483.26 |
| EPW06017 | 3033.44-48 | 03/09/2010 | 36.10 | 45.53 | 45.41% | 37.07 |
| | | | 36.10 | 45.53 | | $37.07 |
| EPW06043 | EG100-A3-10 | 10/20/2009 | 1,442.85 | 0.00 | 45.41% | 655.20 |
| | | | 1,442.85 | 0.00 | | $655.20 |

Total Fiscal Year 2010 Other Direct Costs:    20,242.29    2,165.84    $10,175.53

Total Fiscal Year 2010:    25,222.35    $11,453.47

Total EPA Indirect Costs    $22,652.68

# **APPENDIX C**



**Figure 1**

Site Diagram

Zonolite/W.R. Grace Easthampton
Superfund Removal Site
19 Wemelco Way
Easthampton, Massachusetts

EPA Region 1
Superfund Technical Assessment and
Response Team (START) III
Contract No. EP-W-05-042

| | |
|---|---|
| TDD Number: | 01-08-11-0009 |
| Created by: | C. Imbrex |
| Created on: | 22 October 2009 |
| Modified by: | C. Imbrex |
| Modified on: | 22 January 2010 |

Legend

Area B
Building
Oldon Property Boundary
Area E
Hayfield
Wemelco Way
DOS Parcel - Asbestos in Soil
Elastomerics Parcel - Asbestos in Soil
Parking Lot
Railroad Right-of-Way - Asbestos in Soil
Cernak Parcel - Asbestos in Soil
Area A
Area C
Area D

N

0    25    50
          Feet

Data Sources:
Imagery: Google Earth
Parcel Data: MassGIS
All other data: START

Note that sampling points and areas
of contamination are approximate

WESTON
SOLUTIONS
Restoring Resource Efficiency

Labels on image: HAYFIELD, RAILROAD RIGHT-OF-WAY, DOS PARCEL, AREA D, AREA E, AREA C, AREA B, AREA A, PARKING LOT, BUILDING, RAILROAD RIGHT-OF-WAY, ELASTOMERICS PARCEL, CERNAK PARCEL, RAILROAD RIGHT-OF-WAY, CERNAK PARCEL

E:\MA_gis\Zonolite Co (Easthampton)\MXDs\Figure_SOW_updated012210_AM.mxd

# **<u>APPENDIX D</u>**

**APPENDIX D**

**SCOPE OF WORK**

**ZONOLITE/W.R. GRACE EASTHAMPTON SUPERFUND REMOVAL SITE**

**EASTHAMPTON, MASSACHUSETTS**

**Pursuant to the**

Administrative Settlement Agreement and Order on Consent
To Perform a Removal Action

**CERCLA Docket No.** 01-2010-0019

Preface

This scope of work ("SOW") identifies the activities required pursuant to the
Administrative Order on Consent ("Settlement Agreement") (CERCLA Docket
No. 01-2010-0019) for performance of a removal action at the Zonolite/W.R.
Grace Easthampton Superfund Removal (the "Site") located in Easthampton,
Massachusetts. Under this SOW, W.R. Grace & Co. and Oldon Limited
Partnership ("Respondents") shall prepare and submit to the On-Scene
Coordinator ("OSC") for approval the items identified below. The removal action
conducted under this Settlement Agreement and SOW shall abate the potential
danger to public health or welfare or the environment, which may otherwise result
from the actual or threatened release of Amphibole Asbestos Fibers located in on-
site soils (Asbestos-Containing Soils) and inside the former exfoliation plant
structure (the building).

A.    General Requirements

      1.    For communications between EPA and the Respondents related to
the implementation of the SOW, the OSC shall be the point of contact for
EPA. The point of contact for the Respondents shall be the Project
Coordinator, as defined in paragraph 24 of the Settlement Agreement. .
The Respondents shall communicate freely with the OSC prior to and
during the development of plans and deliverables, and continually
throughout the implementation of the work described in this SOW. Open
and routine communication will result in the most effective, safest, and
efficient cleanup. Where deliverables are required, draft documents may
be submitted for consideration prior to the due date and submission of the
final documents for OSC approval. EPA will notify Respondents of the
identities of any OSC-designated representatives assigned during
oversight of on-site removal activities.

      2.    All work performed by the Respondents shall be conducted in
accordance with the Comprehensive Environmental Response,
Compensation, and Liability Act of 1980, as amended, ("CERCLA"), the
National Contingency Plan ("NCP"), 40 CFR Part 300 and any applicable
amendments thereto, applicable guidance documents provided by EPA,
and the provisions of this Settlement Agreement including any standards,
specifications, and time schedules contained in the SOW or as specified by
the OSC.

      3.    EPA must approve each plan generated pursuant to the
requirements identified below prior to implementation.

      4.    Unless otherwise allowed or approved by EPA in writing, the
Respondents shall perform and complete all activities that have been
authorized in accordance with this SOW and the Settlement Agreement.

2

5.      The Respondents may be required (if and to the extent authorized by applicable law) or may (at their discretion) request to alter or expand upon the plans after approval, based on new information, changes in Site conditions, or subsequently identified deficiencies.

6.      By telephone or otherwise, the Respondents shall inform the OSC of any disposal shipments no less than three (3) working days prior to the event.

B.    Definitions

The definitions provided in the Settlement Agreement are incorporated herein by reference. In addition, the following definitions shall apply to this SOW:

1.      "Amphibole Asbestos Fibers" shall refer to the five classes of amphibole fibers regulated as asbestos by the U.S. Department of Labor's Occupational Safety and Health Administration (OSHA). The five classes include fibrous tremolite, actinolite, anthophyllite, crocidolite and amosite.

2.      "Asbestos–Containing Soil" shall mean the reproducible presence of Amphibole Asbestos Fibers in soil tests conducted in accordance with EPA Method 600/R-93/116 using the PLM visual estimation method, or the asbestos in soil characterizations set forth in map depicting the 2000-2001 sampling at the Site. Weston Solutions Site Map dated 11 January 2010 was developed using the aforementioned 2000-2001 map and is attached as SOW Attachment 1.

3.      "Cernak Parcel" shall mean an area of Asbestos-Containing Soil on farmland located within the Site, southeast of the Railroad Right-of-Way, as generally shown on the map attached to this SOW.  (SOW Attachment 1)

4.      "DOS Parcel" shall mean an area of Asbestos-Containing Soil on the parcel of land located within the Site, northwest of the Former Zonolite Facility, as generally shown on SOW Attachment 1.

5.      "Elastomerics Parcel" shall mean an area of Asbestos-Containing Soil on the wooded property located within the Site, across Wemelco Way from the Former Zonolite Parcel, as generally shown on Appendix C (Figure 1 Site Diagram) to the Settlement Agreement.

6.      "Former Zonolite Facility" shall mean the former W.R. Grace facility located within the Site at 19 Wemelco Way.  The Former Zonolite Facility shall include the former Zonolite exfoliation plant structure located on the property and the following areas shown on Appendix C (Figure 1 Site Diagram) to the Settlement Agreement:

3

Area A (an area of < 1% asbestos-containing surface soils located east of Area C);
Area B (an area of > 1 % asbestos-containing surface and subsurface soils located east of Area C);
Area C (an area of asbestos-containing surface and subsurface soils located within the Tennessee Gas Pipeline easement).
Area D (an area of < 1% asbestos-containing surface soils located west of Area C);
Area E (an area of > 1% asbestos-containing surface soils located west of Area C).

7.    "Railroad Right-of-Way" shall mean the former Pioneer Valley Rail Line located within the Site, adjacent to the Former Zonolite Facility, as shown on  Appendix C (Figure 1 Site Diagram) to the Settlement Agreement.

C.    Work Tasks

The Respondents shall provide the technical experts, personnel, equipment and materials to perform and complete the following removal action tasks associated with this Site within the approved time schedule set forth in the Settlement Agreement:

1.    Consult with the local conservation commission, as appropriate, regarding  the work to be conducted.

2.    Provide site security as necessary based on Site conditions and approved by EPA;

3.    If necessary, due to the presence of hazardous wastes determined by pre-testing, excavate Asbestos-Containing Soils located on the Railroad Right-of-Way and prepare for disposal at an EPA-approved disposal facility.  If pre-testing determines that there are no hazardous wastes or that the hazardous wastes do not exceed regulatory limits, the Asbestos-Containing Soils shall be disposed within  Area A or B of the Former Zonolite Facility;

4.    Excavate Asbestos-Containing Soils within the Cernak Parcel, the DOS Parcel and the Elastomerics Parcel, and prepare for disposal within Area A or Area B of the Former Zonolite Facility;

5.    Excavate Asbestos-Containing Soil located within Area C of the Former Zonolite Facility to limits mutually agreed by EPA, Respondents and Tennessee Gas Pipeline based on appropriate sampling data, likely exposure scenarios and pipeline-related engineering and structural

4

characteristics. Dispose excavated Asbestos-Containing Soils in Area A or Area B of the Former Zonolite Facility.

6.    Plan and implement confirmatory soil sampling (prior to or after excavations described above, with the timing based on engineering judgments) to provide reasonable documentation that: (i) Asbestos-Containing Soil has been removed from the Railroad Right-of-Way, the Cernak Parcel, the DOS Parcel, the Elastomerics Parcel, and Areas A, D and E of the Former Zonolite Facility; (ii) Asbestos-Containing Soil has been removed to the level required by paragraph C.5 above.

7.    Take required actions as needed to facilitate vegetation cutting; surveying; site grading; excavation or grading of Asbestos-Containing Soils in Areas A and B of the Former Zonolite Facility; relocation of Asbestos-Containing Soil; installation of a minimum two foot cover consisting of a demarcation (geotextile) layer covered with at least two feet of compacted non-asbestos-containing material and hydroseeded;

8.    Take required actions to remove Amphibole Asbestos Fibers and materials containing such Fibers from the building located on the Former Zonolite Facility. Dispose of such Fibers and materials in Area A or B of the Former Zonolite Facility. These actions shall be sufficient such that an Asbestos Project Monitor licensed by the Massachusetts Division of Occupational Safety confirms in a report that the building meets all applicable state and federal regulatory requirements for post asbestos abatement clearance in accordance with 40 CFR Part 763 Subpart 3 (AHERA).

9.    To the extent feasible, avoid or limit disturbance of the existing vegetative mat and underlying Asbestos-Containing Soil in Area A and B;

10.    Coordinate transportation and disposal of waste streams related to Asbestos-Containing Soils, other hazardous substances (if any that are located on Respondents' property or caused by Respondents), railroad-specific hazardous wastes, if any, that fail federal or Massachusetts regulatory limits for hazardous wastes, decontamination waste and spent personal protective equipment ("PPE") at a disposal facility licensed to accept such waste, as agreed upon with EPA;

11.    Repair any response-related damage to the Site; and

12.    Implement institutional controls, as necessary.

D.    Time Schedule

The Respondents shall provide the required technical experts, personnel, equipment and materials to perform and complete the following removal action support tasks associated with this Site, within the approved time schedule:

1.    Coordinate with OSC to conduct an initial site reconnaissance visit to assess layout of Site, and determine required equipment, personnel and logistics;

2.    Develop and implement a site-specific work plan;

3.    Develop and implement a site-specific Quality Assurance Project Plan (QAPP);

4.    Prepare and implement a site-specific air monitoring plan addressing asbestos specific issues and assuring protection of cleanup workers and surrounding properties;

5.    Ensure all personnel working on the Site meet asbestos certification requirements of the HASP;

6.    Establish and maintain a command post at the Site;

7.    Mobilize personnel and equipment;

8.    If necessary, install runoff control measures for containment during removal activities;

9.    Develop and implement a site-specific Health and Safety Plan (HASP), in accordance with Occupational Safety and Health Administration (OSHA) regulations;

10.    Delineate the work zones and decontamination area in compliance with the HASP;

11.    Coordinate with EPA and Tennessee Gas Pipeline prior to and during work within the Tennessee Gas Pipeline easement;

12.    Disposal of materials in accordance with *40 CFR Part 300.440 Procedures for Planning and Implementing Off-Site Response Actions.* Determine that all disposal facilities are in compliance with the *CERCLA Off-Site Rule (40 CFR Part 300.440).* Obtain EPA approval prior to off-site disposal;

13.    Provide and affix all appropriate labels in accordance with state

and federal regulations for storage, transportation, and/or disposal of waste streams, as appropriate; and

14.    Demobilize all equipment and personnel.

E.    Coordinating and Reporting Instructions

1.    **Designation of the Contractor and Project Coordinator**

The Respondents shall propose an environmental consulting services contractor or an environmental services cleanup contractor for the purpose of performing and/or supervising the work required by this Settlement Agreement in accordance with the terms and conditions of the Settlement Agreement and shall notify EPA of the name(s) and qualifications of such contractor(s) within seven (7) business days of the Effective Date. Respondents shall also notify EPA of the name(s) and qualification(s) of any other contractor(s) or subcontractor(s) retained to perform the Work under this Settlement Agreement at least seven (7) business days prior to commencement of such Work. The supervising contractor shall provide a written Removal Work Plan that outlines the work to be performed under this Settlement Agreement and SOW and the schedule for completing the work. EPA retains the right to disapprove of a selected contractor. If EPA disapproves of a selected contractor, Respondents shall retain a different contractor and shall notify EPA of that contractor's name and qualifications within seven (7) business days of EPA's disapproval.

Within seven (7) business days after the Effective Date, Respondents shall designate a Project Coordinator who shall be responsible for administration of all actions by Respondents required by this Settlement Agreement and shall submit to EPA the designated Project Coordinator's name, address, telephone number, and qualifications. The Project Coordinator shall be present on Site while Respondent's contractors are conducting removal activities, as required in the SOW. EPA retains the right to disapprove the designated Project Coordinator. If EPA disapproves the designated Project Coordinator, Respondents shall retain a different Project Coordinator and shall notify EPA of that person's name, address, telephone number, and qualifications within seven (7) business days following EPA's disapproval. Receipt by Respondents' Project Coordinator of any notice or communication from EPA relating to this Settlement Agreement shall constitute receipt by Respondents.

2.    **Site Security**

The Respondents shall take reasonable precautions, in consultation with EPA, to prevent unauthorized access onto the portion of the Site shown on Appendix C (Figure 1 Site Diagram) to the Settlement Agreement as the

"Oldon Property" for the duration of the removal action. If, in the judgment of the OSC, these precautions are not preventing unauthorized access to the Site, the Respondents shall institute additional security measures, which may include 24-hour security, until the removal action is completed.

**3.     Within 30 days of the Effective Date of this Settlement Agreement**

Site Specific Work Plan:  Respondents shall submit a work plan that describes how the Respondents will complete the work in the SOW, including a proposed schedule for performing the work. The plan shall describe the methods that will be used including, but not limited to personnel and equipment that will be utilized and contingency plans including containment of Asbestos-Containing Soil. For the media characterization, the plan shall include a Sampling and Analysis Plan ("SAP") that will discuss, but not be limited to, sample methodology; the name, address, and point of contact of the laboratory that will be utilized; and quality assurance/quality control ("QA/QC") procedures. The proposed schedule shall require completion of all on-site activities (i.e., not including off-site transport and disposal, or implementation of institutional controls), within 180 days of EPA's approval of the work plan.

Site Specific Health and Safety Plan (HASP):  Respondents shall submit for EPA review and comment a plan that ensures the protection of the public health and safety during performance of work under this Settlement Agreement. This plan shall be prepared in accordance with EPA's Standard Operating Safety Guide (PUB 9285.1-03, PB 92-963414, June 1992). In addition, the plan shall comply with all currently applicable Occupational Safety and Health Administration ("OSHA") regulations found at 29 C.F.R. Part 1910. If EPA determines that it is appropriate, the plan shall also include contingency planning. Respondents shall incorporate all changes to the plan recommended by EPA and shall implement the plan during the pendency of the removal action.

Respondents shall submit to EPA for approval the transport and disposal ("T&D") facilities where Respondents will transport any waste material away from the Site to an off-Site disposal facility, if any materials are disposed off-Site. Transporters and disposal facilities must have a proper license and permit for handling the constituents of the waste from the Site.

4.  **During the Removal Action**

The Respondents shall submit to EPA a report every two weeks detailing Site activities, problems encountered, other important issues, and activities anticipated in the two weeks to follow.

5.    **Within 180 days of EPA approval of Respondents' Work Plan**

Respondents complete transportation and disposal of all waste-streams designated for off-site disposal to an EPA approved disposal facility.

6.    **Within 45 days of the final transportation**

Respondents shall submit to EPA for approval a Final Report. The final report shall conform to the requirements set forth in Section 300.165 of the NCP entitled "OSC Reports." The Final Report shall include all waste manifests (legible), signed by the disposal facility and any other disposal documents.

F.    Removal Action Standards

In conducting all activities under this SOW, Respondents shall:

1.    Institute practices during loading of Asbestos-Containing Soils and other waste-streams to ensure the safe transfer of materials from the Site to the transport vehicle;

2.    Identify and comply with all State and Federal Applicable or Relevant and Appropriate Requirements ("ARARs") including but not limited to: manifesting, packaging, labeling, marking, recordkeeping, use of containers, and land disposal restrictions. Respondents shall also comply with all applicable local, state, and federal laws and regulations, which include all Department of Transportation regulations regarding transportation of hazardous substances.

3.    Provide the On-Scene Coordinator, upon request, all sampling data and quality assurance/quality control procedures utilized by the supervising contractor and its laboratory pertaining to all sampling and analytical work performed pursuant to this Settlement Agreement.

4.    Provide five (5) days advance notification to the On-Scene Coordinator of any planned field activities related to this Settlement Agreement including restaging, sampling, bulking, and loading for transportation and disposal.

## EXHIBIT II

**Oldon Stipulation**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |
| | ) |

---

**STIPULATION RESOLVING CLAIM OF OLDON LIMITED PARTNERSHIP
(CLAIM NO. 11301)**

---

This stipulation ("Stipulation") is entered into this 27th day of May 2010, between

W. R. Grace & Co. and its affiliates (collectively, the "Debtors") and Oldon Limited Partnership (the

"Claimant") (collectively, "Parties").[2]

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]    Capitalized terms not defined in this Stipulation shall have the meanings ascribed to them, as the case may be, in the *Amended Order Authorizing and Approving an Omnibus Procedure for Settling Certain Claims and Causes of Action Brought by or Against the Debtors in a Judicial, Administrative, Arbitral or Other Action or Proceeding*, [Docket no. 936] (the "Omnibus Settlement Procedures Order") or the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., Et Al., the Official Committee of Asbestos Personal Injury Claimant, the Asbestos PI Future Claimant' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009*, as thereafter amended (the "Plan").

## STATEMENT OF FACTS

**WHEREAS,** on April 22, 2002, the Court entered its *Order as to all Non-Asbestos Claims, Asbestos Property Damage Claims, and Medical Monitoring Claims: (I) Establishing Bar Date, (II) Approving Proof of Claim Forms and (III) Approving Notice Program,* which established March 31, 2003 as the Bar Date for the filing of certain pre petition (a) non asbestos, (b) asbestos property damage, and (c) medical monitoring claims. [Docket No. 1963];

**WHEREAS,** the Debtors leased real property located at 19 Wemelco Way in Easthampton, Massachusetts (the "Property") from the Claimant or its predecessor-in-interest, Mr. Edward J. O'Leary, from approximately 1963 to 1993;

**WHEREAS,** on or about March 27, 2003, Claimant filed proof of claim No. 11301 which is attached hereto as Exhibit A:

| Claim No. | Location | Amount | Priority | Basis |
|-----------|----------|--------|----------|-------|
| 11301 | Easthampton, Massachusetts | $2,151,000.00 | Unsecured | Asbestos property damage response costs |

**WHEREAS,** on or about May 20, 2010, W.R. Grace & Co. and the Claimant entered into an *Administrative Settlement Agreement and Order on Consent for Removal Action,* U.S. EPA Region 1 CERCLA Docket No. 01-2010-0019 (the "Agreement") in connection with the Property setting forth certain responsibilities for the Debtors and the Claimant with respect to asbestos remediation response actions at the Property to resolve claims and demands relating to the Property from the United States Environmental Protection Agency ("USEPA");

**WHEREAS,** the Debtors and Claimant have now agreed to settle Claim No. 11301 and all matters related to the Property on the terms and conditions set forth herein (the "Settlement") and in the Agreement;

**NOW, THEREFORE,** after a thorough review of the Proof of Claim, discussion and negotiations, for good and valuable consideration, the parties hereby stipulate and agree that, as of the date on which this Stipulation becomes effective:

<u>THE SETTLEMENT</u>

1.    Claim No. 11301, which for purposes of this Stipulation includes, but is not limited to, the costs and fees to Oldon as owner of the Property as outlined in the letters to Grace from Oldon's counsel, Shatz, Schwartz and Fentin, P.C., dated February 18, 2010 and May 3, 2010,  shall be Allowed as a Class 7A Asbestos PD Claim (the "Allowed Claim"), as those terms are defined by the Plan, in the amount of $118,010.  Claim No. 11301 shall be paid in the same manner as all other similarly situated Class 7A Asbestos PD Claims pursuant to the Plan.  All other amounts outlined in or related to Claim No. 11301 relating to the Property shall hereby be disallowed and expunged.

2.    Except to the extent explicitly provided otherwise in paragraph 7 below, the Debtors shall perform all obligations, pay all costs, penalties, and interest, and otherwise fulfill the terms and conditions of the Agreement, which are incorporated into this Stipulation by reference, and the Agreement is attached hereto as Exhibit B, *provided that* the Claimant shall not be entitled to any recovery under Claim 11301 other than the Debtors' performance of their obligations set forth in this Stipulation and the Agreement.

3.    Claimant will provide Debtors with access to the Property for performance of obligations under the Agreement.

4.    Claimant will allow an "activity and use limitation" (AUL) to be placed on the capped portion of the Property.  The terms of the AUL shall be subject to Claimant's approval, which approval shall not be unreasonably withheld.  Debtors shall pay the costs for the AUL and the cap pursuant to paragraph 2 above.

5.     Debtors shall release, defend, indemnify and hold Claimant and its partners, agents, successors, heirs, and assigns harmless from and against (a) any performance of obligations under the Agreement, except to the extent explicitly provided otherwise in paragraph 7 below, and (b) all loss, cost, expense, or damage (including reasonable attorneys' and other professional fees) arising as a result of the performance or non-performance of any obligations under the Agreement, except to the extent explicitly provided otherwise in paragraph 7 below.

6.     Debtors will provide and pay for appropriate insurance and site security while Debtors and or its contractors are present on the Property or otherwise still obligated for Work under the Agreement.

7.     Claimant will fund and be responsible in perpetuity for (a) maintenance of the "cap" at the Property once the installed cap has been approved by USEPA in the USEPA notice under paragraph 85 of the Agreement, except to the extent that maintenance may be required as a result of the Debtors' failure to meet its obligations under the Agreement, and (b) any monitoring required by USEPA at the Property after the effective date of USEPA's notice under paragraph 85 of the Agreement that all Work under the Agreement has been fully performed.

8.     (a) Debtors shall notify Oldon within 48 hours of any significant non-emergency development under the Agreement, and within 12 hours of an emergency development related to the Agreement. Oldon shall have a reasonable opportunity to review and comment on such significant or emergency developments. (b) Debtors shall provide Oldon with reasonable advance notice of, and the right to observe, preparation for and execution of Work inside the building on the Property. (c) Debtors shall provide Oldon with reasonable advance notice prior to contacting either Tennessee Gas Pipeline or any adjoining property owners regarding any matters under the Agreement.

9.     The Parties and their agents, employees, contractors, subcontractors, consultants and authorized representatives agree to use their respective good faith efforts to cooperate with each other

4

in connection with the Work under the Agreement, including but not limited to reasonable coordination of the scheduling. Debtors and their representatives shall have the right of reasonable ingress and egress across the Property for all purposes necessary to Debtor's completion of its responsibilities outlined in the Agreement. Claimant specifically grants to Debtors and their representatives a temporary right-of-way and temporary license to the Property to the extent necessary to perform the Work for the duration of the Work outlined in the Agreement. Debtors may at any time during performance of the Work place on or about the Property any necessary signage for the performance of its obligations under the Agreement. Claimant hereby waives any claim for rent of Claimant's Property for the necessary duration of Debtor's performance of its obligations hereunder.

## INJUNCTION

10.    The Parties shall be forever barred, estopped, and enjoined from asserting against each other, other than on the terms and conditions forth in this Stipulation and in the Agreement, any other or additional claims, liabilities, or causes of action arising from or related to the Property of any nature, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise.

## NECESSARY ACTIONS

11.    In order to receive authority to carry out its obligations under this Stipulation and the Agreement, W.R. Grace & Co. shall file a motion for approval of this Stipulation and the Agreement with the Bankruptcy Court within fourteen (14) days after signature by all parties of this Stipulation and the Agreement in order to obtain permission to perform its obligations under the Agreement and this Stipulation.

12.    Upon entry of the Order approving this Stipulation, the Debtors shall direct their claims agent Rust Consulting, Inc. to record Claim No. 11301 as an Allowed Class 7A Asbestos PD Claim as outlined in this Stipulation.

13.     The Parties shall take whatever additional action, if any, is necessary to make sure that the specified Claim No. 11301 is allowed as outlined herein.

**MISCELLANEOUS**

14.     **Integration**.  This Stipulation and any other documents to be executed in connection herewith shall constitute the sole and complete agreement of the Parties hereto with respect to the matters addressed herein.

15.     **Amendment**.  This Stipulation may not be amended except by a writing signed by all Parties to this Stipulation.

16.     **Counterparts**.  This Stipulation may be executed in counterparts each of which shall constitute an original and all of which shall constitute one and the same agreement.

17.     **Full Power and Authority**.  Each Party executing this Stipulation represents that such party has the full authority and legal power to do so.  The Parties further agree that facsimile signatures hereon shall be deemed to be original signatures.  This Stipulation shall be binding upon and inure to the benefit of each of the Parties, and upon their respective assignees, successors and/or partners, including, but not limited to any trustee(s) appointed in the Bankruptcy Cases.

18.     **No Admissions**.  This Stipulation is being entered into solely as a settlement of issues and does not represent an admission by any of the Parties of the validity of any liability or defense with respect to the matters set forth herein.

19.     **Headings**.  Headings in this Stipulation are descriptive only and shall have no legal force or effect.

20.     **Retention of Jurisdiction**.  The Bankruptcy Court shall retain jurisdiction to enforce this Stipulation and all matters relating thereto for the duration of the performance of the terms and provisions of this Stipulation for the purpose of enabling any of the Parties to apply to the Court at any

6

time for such further order, direction, and relief as may be necessary or appropriate for the construction or interpretation of this Stipulation or to effectuate or enforce compliance with its terms.

21.    **Dispute Resolution and Governing Law**. (a) If there is any dispute related to this Stipulation, then the Parties shall use best efforts to resolve such dispute by good faith negotiation. If such negotiation does not resolve such dispute and if the Parties do not agree to pursue mediation or other alternative dispute resolution (or if a mediation or other alternative dispute resolution process does not resolve a dispute within 180 days of an initial notice from one Party to the other of such a dispute), then such dispute shall be resolved by litigation in the Bankruptcy Court.    (b)    This Stipulation shall be governed by the laws of the State of Delaware, except that any issues that arise under this Stipulation with regarding to environmental obligations shall be governed by the laws of the Commonwealth of Massachusetts and by the terms of the Agreement.

22.    **Notices**. Any notices under this Stipulation shall be sent by Federal Express or other confirmed delivery service (email or fax shall not be sufficient notice) to the following:

For W.R. Grace & Co:    Robert Emmett, W. R. Grace & Co., 7500 Grace Drive, Columbia, MD 21044; Phone 410-531-4751; Email Robert.Emmett@grace.com

For Oldon Limited Partnership:    Timothy P. Mulhern, Shatz, Schwartz and Fentin, P.C., 1441 Main St., Springfield, MA 01103-1450;    Phone 412-737-1131; Email tmulhern@ssfpc.com

The following Parties enter into this Stipulation on behalf of:

**Oldon Limited Partnership**

By: _____

Timothy P. Mulhern, Esquire

**W. R. Grace & Co., et al., Debtors**

By: _____

William M. Corcoran
Vice President, Public and Regulatory Affairs
W.R. Grace & Co.
7500 Grace Drive
Columbia, Maryland 21044

Date: _MAy 27, 2010_

Date: _June 1, 2010_

8

EXHIBIT III

**City Stipulation**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                           ) Chapter 11
                                                 )
W. R. GRACE & CO., et al.[1]                     ) Case No. 01-01139 (JKF)
                                                 ) (Jointly Administered)
                    Debtors.                     )
                                                 )
_____          )

STIPULATION RESOLVING CLAIM OF CITY OF EASTHAMPTON

(CLAIM NO. 7121)

This stipulation ("Stipulation") is entered into this 25th day of May 2010, between

W. R. Grace & Co. and its affiliates (collectively, the "Debtors") and the City of Easthampton,

Massachusetts (the "Claimant").[2]

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]    Capitalized terms not defined in this Stipulation shall have the meanings ascribed to them, as the case may be, in the Amended Order Authorizing and Approving an Omnibus Procedure for Settling Certain Claims and Causes of Action Brought by or Against the Debtors in a Judicial, Administrative, Arbitral or Other Action or Proceeding, [Docket no. 936] (the "Omnibus Settlement Procedures Order") or the First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., Et Al., the Official Committee

## STATEMENT OF FACTS

**WHEREAS,** on April 22, 2002, the Court entered its *Order as to all Non-Asbestos Claims, Asbestos Property Damage Claims, and Medical Monitoring Claims: (I) Establishing Bar Date, (II) Approving Proof of Claim Forms and (III) Approving Notice Program,* which established March 31, 2003 as the Bar Date for the filing of certain pre petition (a) non asbestos, (b) asbestos property damage, and (c) medical monitoring claims. [Docket No. 1963];

**WHEREAS,** the Debtors operated a vermiculite expanding plant in Easthampton, Massachusetts (the "Property") from approximately 1963 to 1993;

**WHEREAS,** on or about March 27, 2003, Claimant filed proof of claim No. 7121 (the "Claim") which is attached hereto as Exhibit A :

| Claim No. | Location | Amount | Priority | Basis |
|---|---|---|---|---|
| 7121 | Easthampton, Massachusetts | Unspecified | Unsecured | Asbestos property damage response costs |

**WHEREAS,** on or about May _20_, 2010, the Debtors, Oldon Limited Partnership, ("Oldon") and the United States Environmental Protection Agency ("USEPA") entered into an *Administrative Settlement Agreement and Order on Consent for Removal Action* (the "Agreement") in connection with the Property setting forth certain responsibilities for the Debtors and Oldon with respect to asbestos remediation response actions at the Property to resolve claims and demands relating to the Property from the USEPA;

---

*of Asbestos Personal Injury Claimant, the Asbestos PI Future Claimant' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009,* as thereafter amended (the "Plan").

2

**WHEREAS**, the Debtors and the City have now agreed to settle Claim No. 7121 and all matters related to the City's claims against the Debtors relating to the Property on the terms and conditions set forth herein (the "Settlement") and in the Agreement;

**NOW, THEREFORE**, after a thorough review of the Proof of Claim, discussion and negotiations, for good and valuable consideration, the parties hereby stipulate and agree that, as of the date on which this Stipulation becomes effective:

## THE SETTLEMENT

1.    Claim No. 7121 shall be disallowed and expunged in its entirety.

2.    The disallowance and expungement of Claim No. 7121 is dependent upon the Debtors' performance of all of its obligations under and fulfillment of the terms and conditions of the Agreement. The City shall not be entitled to any recovery under Claim 7121 other than the Debtors' performance of their obligations set forth in the Agreement.

3.    In the event that the Debtors do not complete their obligations under the Agreement to remediate the Property as set forth in the Agreement, the City shall have a right to re-assert its Claim against the Debtors.

## INJUNCTION

4.    The City shall be forever barred, estopped, and enjoined from asserting against the Debtors, other than on the terms and conditions forth in this Stipulation and in the Agreement, any other or additional claims, liabilities, or causes of action arising from or related to the Property of any nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise.

3

## NECESSARY ACTIONS

5.    In order to receive authority to carry out its obligations under this Stipulation and the Agreement, Grace shall file a motion for approval of this Stipulation and the Agreement with the Bankruptcy Court within fourteen (14) days after signature by all parties of this Stipulation and the Agreement in order to obtain permission to perform its obligations under the Agreement and this Stipulation.

6.    Upon entry of the Order approving this Stipulation, the Debtors shall direct their claims agent Rust Consulting, Inc. to record Claim No. 7121 as disallowed and expunged as outlined in this Stipulation.

7.    The parties shall take whatever additional action, if any, is necessary to make sure that Claim No. 7121 is disallowed and expunged as outlined herein.

## MISCELLANEOUS

8.    **Integration**.    This Stipulation and any other documents to be executed in connection herewith shall constitute the sole and complete agreement of the parties hereto with respect to the matters addressed herein.

9.    **Amendment**.    This Stipulation may not be amended except by a writing signed by all parties to this Stipulation.

10.    **Counterparts**.    This Stipulation may be executed in counterparts each of which shall constitute an original and all of which shall constitute one and the same agreement.

11.    **Full Power and Authority**.    Each party executing this Stipulation represents that such party has the full authority and legal power to do so.    The parties further agree that facsimile signatures hereon shall be deemed to be original signatures.    This Stipulation shall be

4

binding upon and inure to the benefit of each of the parties, and upon their respective assignees, successors and/or partners, including, but not limited to any trustee(s) appointed in the Bankruptcy Cases.

12.    **No Admissions.** This Stipulation is being entered into solely as a settlement of issues and does not represent an admission by any of the parties of the validity of any liability or defense with respect to the matters set forth herein.

13.    **Headings.** Headings in this Stipulation are descriptive only and shall have no legal force or effect.

14.    **Retention of Jurisdiction.** The Bankruptcy Court shall retain jurisdiction to enforce this Stipulation and all matters relating thereto for the duration of the performance of the terms and provisions of this Stipulation for the purpose of enabling any of the parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or interpretation of this Stipulation or to effectuate or enforce compliance with its terms.

The following Parties enter into this Stipulation on behalf of:

The City of Easthampton, MA                W. R. Grace & Co., et al., Debtors

By:                                        By:

Mayor Michael A. Tautznik                  William M. Corcoran
                                           Vice President, Public and Regulatory Affairs
                                           W.R. Grace & Co.
                                           7500 Grace Drive
                                           Columbia, Maryland  21044

Date: May 25, 2010                         Date: May 27, 2010