**IN THE UNITED STATE BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | |
| **W.R. GRACE & CO.**, *et. al.*, | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Re: Docket Nos. 24724 & 24808** |
| | ) | |
| | ) | Objection Deadline: July 5, 2010 at 4:00 p.m. |
| | ) | Hearing Date: July 14, 2010 at 10:00 a.m. |

**AMENDED[1] APPLICATION OF CANADIAN ZAI CLAIMANTS PURSUANT TO
11 U.S.C. §§ 503(b)(3)(D) AND 503(b)(4) FOR ALLOWANCE OF ADMINISTRATIVE
EXPENSES OF LAUZON BÉLANGER S.E.N.C.R.L. AND SCARFONE HAWKINS LLP
AS CCAA REPRESENTATIVE COUNSEL INCURRED IN MAKING  SUBSTANTIAL
CONTRIBUTION FOR THE PERIOD OCTOBER 1, 2004 TO AUGUST 31, 2008**

COMES NOW, Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP as

Representative Counsel ("Representative Counsel") to Canadian Zonolite Attic Insulation

("ZAI") Claimants ("Canadian ZAI Claimants"), and hereby submits this amended application

for compensation for professional services rendered and reimbursement of expenses (the

"Application"), and moves the Court for entry of an order authorizing payment of the reasonable

attorney's fees and expenses incurred in making a substantial contribution to the estate of W. R.

Grace and its affiliated Debtors and Debtors in Possession (the "Debtors") and to the

reorganization process pursuant to 11 U.S.C. §§ 503(b)(3)(D)-(b)(4) of title 11 of the Bankruptcy

Code (the "Bankruptcy Code"). In support of this Application, Representative Counsel

respectfully represents as follows:

---

[1] Movants originally filed the Application of Canadian ZAI Claimants for Allowance of Administrative
Expenses of  Lauzon Bélanger and Scarfone Hawkins as CCAA Representative Counsel Incurred in Making
Substantial Contribution for the Period October 1, 2004, to August 31, 2008, filed on May 3, 2010, [Docket No.
24724] (the "Original Application").

## I.  INTRODUCTION

1.      As noted previously in the Original Application, Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP were appointed Representative Counsel on behalf of all Canadian ZAI personal injury and property damage claimants, by the Honorable Mr. Justice Farley of the Ontario Superior Court of Justice (Commercial Court) ("CCAA Court") on February 8, 2006. Representative Counsel are similar to class counsel in the U.S. in terms of the nature and scope of representation provided to claimants.  This application applies only to the Canadian ZAI Claimants' fees of $2 million Canadian ("CDN") as provided for in the Amended Minutes of Settlement and previously approved by the CCAA.  A prior substantial contribution application, filed on November 10, 2008, [Docket No. 19974] covers a portion of this same time period, however, it relates to separate fees for The Hogan Firm only, and is not being duplicated here.[2]

2.      Pursuant to the Amended Minutes of Settlement, "as soon as reasonably practicable following the Effective Date [of the Grace chapter 11 plan], two million Canadian dollars (CDN $2,000.000.00) shall be paid to CCAA Representative Counsel in respect of legal fees and disbursements."

3.      The purpose of this Amendment is to clarify (a) the "value added" nature of the work performed by Representative Counsel and their co-counsel as class counsel to the Canadian ZAI Claimants and to demonstrate why the $2 million CDN is appropriate as a substantial contribution award notwithstanding a lower hourly fee calculation; (b) that this fee applies for the work performed by Representative Counsel and their co-counsel  in relation to both Canadian ZAI personal injury claims (the "CDN ZAI PI Claims") and Canadian ZAI property damage

---

[2] On May 3, 2010, Representative Counsel filed their Second Application of Canadian ZAI Claimants for Allowance of Administrative Expenses Incurred in Making Substantial Contribution for the Period September 1, 2008, Through December 20, 2009 [Docket No. 24725].

claims (the "CDN ZAI PD Claims"), notwithstanding that the funds are to be paid through the Asbestos PD Trust under the First Amended Joint Plan (the "Plan") ; and (c) that pursuant to the terms of the Plan and the Amended Minutes of Settlement, the award sought by this application will be paid as reasonably practicable following the Effective Date.

4.      As detailed in the Original Application, Representative Counsel have played a substantial and critical role in the Debtors' formulation of the plan of reorganization as it relates to the treatment of both the CDN ZAI PI Claims and the CDN ZAI PD Claims asserted by Canadian ZAI Claimants. Representative Counsel were responsible for negotiating the original Minutes of Settlement (the "Minutes of Settlement") with the Debtors that initially resolved the treatment of all Canadian ZAI claims and that created a separate class for the CDN ZAI PD Claims within the Plan.  The Minutes of Settlement are attached as **Exhibit A.**

5.      The Minutes of Settlement were approved by the Honourable Mr. Justice Morawetz of the CCAA Court on October 17, 2008, however, by their terms, the Minutes of Settlement, dated September 2, 2008, became null and void as no plan of reorganization of the Debtors was confirmed by October 31, 2009.

6.      On or about November 16, 2009, the Debtors and Representative Counsel agreed to the Amended and Restated Minutes of Settlement ("Amended Minutes of Settlement").  The Amended Minutes of Settlement are attached as **Exhibit B.**

7.      The Amended Minutes of Settlement provide that the CDN ZAI PD Claims Fund will be funded with between $8,095,632.44 CDN and $8,595,632.44 CDN.  Additionally, pursuant to the terms of the Amended Minutes of Settlement, the CDN ZAI PD Claims Fund shall, as soon as reasonably practicable following the Effective Date of the Plan, distribute $2 million CDN to Representative Counsel in respect of legal fees and disbursements as class

counsel on account of both CDN ZAI PI and CDN ZAI PD Claimants. Amended Minutes of Settlement ¶ 22.

8.      On or about December 13, 2009, the Honorable Mr. Justice Morawetz, of the CCAA Court, approved the Amended Minutes of Settlement.  Mr. Justice Morawetz found that the Amended Minutes of Settlement are "both fair and reasonable". The approval of the Minutes of Settlement and the Amended Minutes of Settlement by Mr. Justice Morawetz included approval of payment to Representative Counsel of $2 Million CDN in respect of legal fees and disbursements.  Reasons for Decision of Justice Morawetz, 6 n.23 (Jan. 8, 2010).  The Order and Reasons for Decision of Mr. Justice Morawetz are attached as **Exhibit C**.

9.      Accordingly, this Court should allow the application of Representative Counsel for payment of $2 million CDN in respect of legal fees and disbursements as an administrative expense claim under §§ 503(b)(3)-(b)(4) of the Bankruptcy Code.

10.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and this matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).  The statutory predicates for the relief sought herein is 11 U.S.C. § 503(b).

## II. BACKGROUND

11.      ZAI was utilized in Canadian home building and renovations during the approximate period of time between 1940 and the late 1980s. W.R. Grace and Co. and several of its affiliates (the "U.S. Debtors") created and distributed ZAI for use in Canadian homes.

12.      Canadian ZAI homeowners alleged a range of losses. Those losses include diminution in property values, the costs of asbestos abatement, the financial burden of removing

asbestos-contaminated ZAI and refitting homes, and loss of use and enjoyment of their homes due to limitations on remodeling and restrictions on use of areas contaminated with ZAI.

13.     On April 2, 2001, the U.S. Debtors filed voluntary petitions for protection under Chapter 11 of the United States Bankruptcy Code (the "U.S. Proceedings") and were granted a temporary restraining order by this Court providing for certain injunctive relief in favor of the U.S. Debtors as well as certain other third parties (the "Affiliated Entities").

14.     Two days later Grace Canada, Inc. ("Grace Canada"), a Canadian affiliated entity of U.S. Debtors, was granted an order (the "Initial CCAA Order") pursuant to Section 18.6(4) of the Companies' Creditors Arrangement Act in the CCAA Court which, among other things, provided for a stay of proceedings against the commencement or continuation of any asbestos-related suits against Grace Canada.

15.     The Debtors have continued operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

16.     Numerous proposed class actions were commenced in Canada against certain of the U.S. Debtors, Grace Canada, Affiliated Entities and other parties including the Attorney General of Canada (Her Majesty the Queen in Right of Canada) (the "Crown").  These actions assert claims for damages or loss suffered, directly or indirectly, from the manufacture, sale or distribution of ZAI attic insulation products in Canada.

17.     There were eleven proposed class actions (the "Proposed Class Actions") filed across Canada concerning claims that relate, *inter alia*, to the cost of removal, diminution of property value or economic loss allegedly caused by ZAI manufactured by the Debtors and personal injuries allegedly caused by exposure to ZAI. W.R. Grace and/or its affiliated

companies are co-defendants together with the Crown in all but the first of these proposed class actions, which are as follows**:**

a. *Viviane Brosseau et al. v. Attorney General of Canada*, Superior Court of Quebec, District of Montréal, 500-06-000286-050 (no claim against the Grace companies);

b. *Dextras et al. v. Attorney General of Canada, W.R. Grace & Co. et. al.*, Superior Court of Quebec, District of Montréal, 500-06-000258-042;

c. *Raven Thundersky et Rebecca Bruce v. Attorney General of Canada, W.R. Grace & Co.*, Court of Queen's Bench of Manitoba, CI04-01-39818;

d. *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Federal Court, Saskatchewan, T-1503-05;

e. *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Court of Queen's Bench of Saskatchewan, 696-2005;

f. *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Court of Queen's Bench of Alberta, 0501-07100;

g. *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Supreme Court of British Colombia, L-052352;

h. *Merv Nordick et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Province of Quebec, District of Hull, 550-06-000020-058;

i. *Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Court of Queen's Bench of Manitoba, C1-05-01-44628;

j. *Ernest Spencer et al. v. Attorney General of Canada, W.R. Grace & Co. et al.*, Ontario Superior Court of Justice, 5-CV-32367; and

k. *Her Majesty in Right of the Province of Manitoba v. Attorney General of Canada, W.R. Grace & Co et al.,* Court of Queen's Bench of Manitoba, C1-05-01-41069.

18.     The Proposed Class Actions were commenced by several law firms in Canada including Lauzon Bélanger, Merchant Law Group ("MLG") and Aikins MacAulay and Thorvaldson LLP ("Aikins") (jointly referred to as "co-counsel").

19.     On November 14, 2005, as the result of the Proposed Class Actions commenced in Canada against certain of the U.S. Debtors, Grace Canada, Affiliated Entities and other parties, including the Crown, the CCAA Court granted an order recognizing the injunctive relief provided for by this Court and giving it effect in Canada, thereby implementing a limited stay of proceedings with respect to the Crown.  See copy of Order for Injunctive Relief attached as **Exhibit D.**[3]

20.     On November 14, 2005, the CCAA Court also considered a request for an extension of the stay contained in the initial order in light of the Proposed Class Actions.  The Honorable Mr. Justice Farley indicated that cooperation and coordination between the CCAA Court and this Court was needed, that there had been recognition in the U.S. Bankruptcy Court that Canadian proceedings would be governed by Canadian substantive law, and that the insolvency adjudicative proceedings presented an efficient process, but that the extension of the stay not affect the ability of the Plaintiffs in the Proposed Class Actions from returning to the CCAA Court if they felt there was "foot dragging or other elements of prejudice."  Order for Injunctive Relief, 3 n.13 (Nov. 14, 2005).

---

[3] A copy of The Honorable Justice Farley's Reasons for Decision is reported and attached as **Exhibit D**.

21.    Another product of the November 14, 2005 hearing before Mr. Justice Farley was the genesis of co-counsel agreements between Representative Counsel, MLG and Aikins. The Reasons for Decision of Mr. Justice Farley recite his Honor's open-court direction to Representative Counsel, MLG and Aikins, that all involved ought to work together toward an agreement to work cooperatively as opposed to running the risk of being divided. "It would seem to me that the various class proceedings would benefit from cooperation and coordination - using the 3Cs of the Commercial List (communication, cooperation and common sense). Otherwise they will be faced with the practical problem of fighting amongst themselves as to a turf war and running the risk of being divided and therefore susceptible to being conquered." Order for Injunctive Relief, 2 n.5 (Nov. 15, 2005).    It was Justice Farley's admonition that largely motivated the co-counsel agreements between Representative Counsel and MLG, and between Representative Counsel and Aikins.  Plainly put, the co-counsel agreements provide for the division of fees between Representative Counsel, MLG and Aikins in accordance with the co-counsel agreements.

22.    In January 2006, Grace Canada made application to the CCAA Court for appointment of Representative Counsel in the CCAA Court on behalf of all Canadian ZAI Claimants.

23.    On February 9, 2006, the CCAA Court entered an Order appointing Representative Counsel and declaring that they shall have the power, among others, to appear or have an agent appear before the U.S. Court in the context of the Debtors' Chapter 11 cases, and to negotiate on behalf of the Canadian ZAI Claimants with Grace Canada, the Debtors, and the Crown. See copy of Order for Appointment of Representative Counsel attached as **Exhibit E**.

24.     Since its appointment by the CCAA Court in 2006, Representative Counsel has engaged in extensive negotiations with Grace Canada, representatives of the U.S. Debtors, and the Crown, in an attempt to fashion a comprehensive resolution of all CDN ZAI PI claims and CDN ZAI PD claims.

25.     Representative Counsel has actively monitored these proceedings since their appointment by the CCAA Court in an effort to advance the interests of CDN ZAI PI and CDN ZAI PD Claimants.  Representative Counsel filed a motion with the CCAA Court seeking direction on development of a Canadian litigation procedure to deal with claims advanced by Canadian ZAI Claimants consistent with the Debtors' first proposed plan of reorganization.  The motion also sought directions as to the effect of the Science Trial Memorandum Opinion on Canadian ZAI Claimants. The motion raised notice issues with the CCAA and affirmatively sought documentary discovery of records and information in the possession and control of the Crown for the purpose of aiding and enhancing a direct notice program.

26.     In this proceeding, Representative Counsel filed the following pleadings and/or applications in the U. S. Bankruptcy Court for the District of Delaware:

| Docket No. | Event Name | Filed |
|---|---|---|
| 12725 | Notice of Appearance | 06/28/2006 |
| 12751 | Response Limited Response to Debtors' Motion for a Scheduling Order Regarding Certain of the Debtors' Fifteenth Omnibus Objections to PD Claims (Substantive) | 07/07/2006 |
| 18519 | Motion for Leave to File an Objection to Debtors' Amendment to Motion for Order (A) Establishing a Proof of Claim Bar Date for Zonolite Attic Insulation Claims and | 04/15/2008 |

(B) Approving the Related Proof of
Claim Form, Bar Date Notices,
and Notice Program.

18520          Motion for Leave to File an          04/15/2008
               Objection to ZAI Claimants'
               Motion for Dismissal of an
               Individual ZAI Claim or For Rule
               54(b) Determination to Permit
               Appellate Review of the ZAI Opinion

18522          Motion to Shorten Time/Notice          04/15/2008
               for Expedited Consideration of
               Their Motion for Relief From
               The Automatic Stay (B)

18523          Motion of the Canadian ZAI          04/15/2008
               Claimants for an Order lifting
               the Automatic Stay Imposed
               By § 362(a) of Title 11

18728          Objection to ZAI Claimants'          05/16/2008
               Motion for Dismissal of an
               Individual ZAI Claim or for a
               Rule 54(b) Determination to
               Permit Appellate Review of
               The ZAI Opinion

18731          Objection to Debtors'          05/16/2008
               Amendment to Motion for An
               Order (A) Establishing a Proof
               of Claim Bar Date for Zonolite
               Attic Insulation Claims and
               (B) Approving the Related Proof
               of Claim Form, Bar Date Notices,
               and Notice Program

18807          Joinder of The Canadian ZAI          05/28/2008
               Claimants in the Motion of The
               Official Committee of Asbestos
               Property Damage Claimants for
               Partial Continuance of June 2, 2008,
               Hearing on Motion of the Debtors
               for an Order (A) Establishing a
               Proof of Claim Bar Date for
               Zonolite Attic Insulation Claims, and

(B) Approving the Related Proof of
Claim Form, Bar Date Notices, and
Notice Program

18930          Motion to Authorize/for an Order to  06/16/2008
               Establish a Protocol for Cross-
               Border Communication Between
               the United States Bankruptcy Court
               and the CCAA Court

19208          Certification of Counsel Regarding   07/31/2008
               Revised Order Establishing A
               Protocol For Cross-Border
               Communications

27.     Additionally, Representative Counsel attended and actively participated in the

mediation conferences which were held in March, 2006, and again on May 12, 2008.  Although

the mediations did not result in a settlement of the pending ZAI Claims issues, they aided in

post-mediation settlement negotiations.

28.     Attached as **Exhibit F** is a copy of the Motion Record of Representative Counsel

in support of approval of the Minutes of Settlement. Michel Bélanger ("Bélanger"), a member of

the Representative Counsel team, provides in his affidavit, a brief chronological history of the

Quebec class proceeding, the CCAA proceedings and the role played by MLG and Aikins and

the co-counsel agreements in place and further provides particulars leading to the Minutes of

Settlement.  Bélanger also speaks to justification of the fees and disbursements of Representative

Counsel.   Mot. Record of Representative Counsel ¶ 107-119.  The exhibits to Bélanger's

affidavit include his curriculum vitae and those of Yves Lauzon, Careen Hannouche, David

Thompson, Jeffrey C. Teal and Matthew Moloci.

29.     The work of Representative Counsel, working together with co-counsel pursuant

to the co-counsel agreements, in negotiating and obtaining CCAA Court approval of the Minutes

of Settlement, and subsequently the Amended Minutes of Settlement, constitutes a substantial

contribution under § 503(b)(3)(D) of the Bankruptcy Code in that the settlement allows for a consensual Plan which provides for a significant recovery to CDN ZAI PI and CDN ZAI PD claimants.

30.    The possibility of protracted litigation regarding the nature and extent of ZAI claims, both Canadian and American, complicated Plan negotiations.  Because of the unknown number of Canadian ZAI claimants and the lack of certainty in respect of the nature and value of the claims pursuant to Canadian law, Representative Counsel, working together with co-counsel pursuant to the co-counsel agreements, have played a critical role in negotiating the Plan.  In fact, support of the Plan by Representative Counsel is a critical element of the Amended Minutes of Settlement.  Without this support, the confirmation process may have been further delayed by a prolonged dispute concerning estimation and valuation of Canadian ZAI claims.  To avoid a longer delay in the Debtors' emergence from bankruptcy, a delay in distributions to creditors and equity holders, and significant additional administrative costs, Representative Counsel worked with Grace Canada and other constituencies to create and negotiate a plan that contained a separate class for CDN ZAI PD Claims.

31.    Representative Counsel, working together with co-counsel pursuant to the co-counsel agreements, worked diligently with Grace Canada, the U.S. Debtors, and the Affiliated Entities to negotiate a comprehensive resolution of Canadian ZAI claims.  Representative Counsel was intimately involved in the development and drafting of many of the key documents which led to the creation of a separate class of CDN ZAI PD Claims within the Debtors' Plan. The work of Representative Counsel through negotiation of the Minutes of Settlement and subsequently the Amended Minutes of Settlement has substantially assisted the Debtors' reorganization process.

32.     To support Grace's Plan, Representative Counsel, on behalf of the Canadian ZAI Claimants, agreed to be bound by the terms of the Minutes of Settlement which includes a full and final resolution of all claims against the Grace Parties recognizing that a fully consensual resolution would provide the most fruitful outcome for the Canadian ZAI Claimants.

33.     On October 17, 2008, the Honorable Mr. Justice Morawetz, of the CCAA Court, released an Endorsement approving the Minutes of Settlement and confirming, in paragraph 79, that "Counsel to Grace also submitted that Representative Counsel have been continuously active and diligent in both the U.S. and Canadian proceedings and Grace is of the view that it is appropriate that a portion of the funds paid under the settlement go towards compensation of Representative Counsels' fees."   Endorsement, 10 n.79 (Oct. 17, 2008).   A copy of the Endorsement is attached as **Exhibit G**.[4]

34.     On November 1, 2009, the Minutes of Settlement became null and void, according to their terms which provided, *inter alia*, that a plan of reorganization of the Debtors be confirmed by October 31, 2009.

35.     On November 16, 2009, the Debtors and Representative Counsel agreed to the Amended Minutes of Settlement.  Co-counsel supported the Amended Minutes of Settlement.

36.     Pursuant to the terms of the Amended Minutes of Settlement, Debtors agree to consent to and support Representative Counsels' application seeking appointment as special counsel for Canadian ZAI Claimants in the U.S. proceeding, retroactively to September 1, 2008, and going forward to the date of the U.S. Confirmation Order.  Amended Minutes of Settlement ¶ 16.

---

[4] Paragraph 79 of Morawetz's Reasons for Decision is noteworthy in that it was Grace's submissions that persuaded Morawetz to approve the payments to Representative Counsel, the claims administrator and qualified expert to assist in the claims process totally approximately CDN$3,250,000.00.

37.     On or about December 13, 2009, the Honorable Justice Morawetz of the CCAA Court approved the Amended Minutes of Settlement.  Mr. Justice Morawetz found that the Amended Minutes of Settlement are "both fair and reasonable". Reasons for Decision of Mr. Justice Morawetz, 6 n.23 (Jan. 8, 2010)[5].

38.     On December 22, 2009, the Crown filed and served a Notice of Motion for Leave to Appeal to the Ontario Court of Appeal from the decision of Mr. Justice Morawetz.  The Crown sought a reversal of the decision of Mr. Justice Morawetz approving the Amended Minutes of Settlement.

39.     The basis of the Crown appeal was that Representative Counsel were in a conflict of interest position.  The Crown argued that Representative Counsel acted both on behalf of the Crown as a Canadian ZAI Claimant and against the Crown. The Crown also argued detrimental reliance on the terms of the Minutes of Settlement. The Crown argued that Representative Counsel owed a duty of loyalty to the Crown and that the Crown was prejudiced by the reversal of position of Representative Counsel with respect to releasing all claims for which the Crown is or may become entitled to contribution or indemnity against the Grace Parties.  These arguments were considered and rejected by both the CCAA Court and the Ontario Court of Appeal.

40.     On February 19, 2010, the Crown's motion for leave to appeal was dismissed by the Ontario Court of Appeal, which panel included the Chief Justice of Ontario, the Honourable Mr. Justice Winkler.

---

[5] The Decision of Justice Morawetz dated January 8, 2010, approving the Amended and Restated Minutes of Settlement is noteworthy in that paragraphs 35 through 41 speak to the Crown's allegation against Representative Counsel regarding the Crown's conflict of interest argument.

### III. RELIEF REQUESTED

41.     Pursuant to §§ 503(b)(3)(D)-(b)(4) of the Bankruptcy Code and the terms of the Amended Minutes of Settlement, Representative Counsel seeks an order allowing as administrative expenses, in recognition of its substantial contribution in these Chapter 11 cases, the aggregate amount of $2 million CDN[6].  In support of the amount sought, Representative Counsel has compiled time and expense records for the period of October 1, 2004 to August 31, 2008, comprised of: (i) professional fees in the amount of $818,746.15 CDN and expenses in the amount of $108,150.16 CDN (including Goods & Services Tax; and Quebec Sales Tax) incurred by Representative Counsel during the Compensation Period.  Co-counsel have compiled time and expenses for the same period of approximately $555,000.00 CDN in professional fees and $147,371 CDN in expenses.  The $2 million CDN is appropriate as a substantial contribution award notwithstanding a lower hourly fee calculation because of the value added nature of the work performed by Representative Counsel and co-counsel on behalf of the Canadian ZAI Claimants.  The invoices attached to this application are provided to demonstrate the nature and extent of the efforts undertaken by Representative Counsel on behalf of the Canadian ZAI Claimants.

### IV. LEGAL BASIS

42.     Section 503(b) of the Bankruptcy Code provides, in relevant part, that after notice and a hearing, there shall be allowed administrative expenses of the estate with respect to "the actual, necessary expenses, other than compensation and reimbursement specified in paragraph

---

[6] Pursuant to the terms of the Amended and Restated Minutes of Settlement, Debtors shall distribute two million Canadian dollars (CDN$2,000.000.00) to Representative Counsel in respect of legal fees and disbursements. *(See paragraph 22 of Exhibit B).*

(4) of this subsection, incurred by … a creditor, …in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D). Furthermore:

> reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under…paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

11 U.S.C. § 503(b)(4) (2005).

43.     This standard is the same as the standard in Section 330(a) of the Bankruptcy Code, which provides for attorneys' fees for counsel to the bankruptcy trustee/debtor. *See* 11 U.S.C. § 330(a). It is a "normal rule of statutory construction" for "identical words used in different parts of the same act are intended to have the same meaning." *Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 342 (1994) (internal quotations omitted).

44.     Section 330(a)(3) also indicates that in examining the nature, extent, and value of such services, a court should take into account all relevant factors, including whether the "services were necessary to the administration of . . .a case under this title; whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; and whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than under this title." *See* § 330(a)(3).

45.     Pursuant to Section 330(a), courts have found that the professional's hourly rate is not the only consideration to be made when determining the value of the services and the appropriate rate to be paid. *See In re Iron Horse Bicycle Co., LLC*, 2010 WL 474560, at *7 (Bankr. E.D.N.Y. Feb. 4, 2010)("[R]easonableness of a chapter 11 professional's fee need not always consider hours worked or billing rates."); *See also In re XO Commc'n, Inc.*, 398 B.R.

106, 116 (Bankr. S.D.N.Y. 2008) (awarding a transaction fee to the debtor's financial advisors in a Section 330(a) analysis and deciding that the court must look at a market-driven approach rather that merely hours billed -- *i.e.*, the nexus between what was achieved and the impact of the advisor's effort in that regard); *See also In re Northwest Airlines Corp.*, 400 B.R. 393, 401 (Bankr. S.D.N.Y. 2009) (denying a success fee where market-driven approach indicated advisor had not shown it "played a vital and indispensable role at any stage of the reorganization, such as the confirmation of the Debtors' plan.").

46.     As this Court has explained, §§ 503(b)(3)(D)-(b)(4) permits payment, as an administrative expense, of the expenses of a creditor, including reasonable and necessary attorney's fees incurred, where a substantial contribution has been made to a reorganization.  *In re Columbia Gas System, Inc.*, 224 B.R. 540 (Bankr., D. Del. 1998); *See also In re Buckhead America*, 161 B.R. 11 (Bankr. D. Del. 1993).  The Third Circuit explicitly recognized this rule in stating:

> The services engaged by creditors, creditor committees and other parties interested in a reorganization are presumed to be incurred for the benefit of the engaging party and are reimbursable if, but only if, the services "directly and materially contributed" to the reorganization.

*Lebron v. Mechem Financial Inc.*, 27 F.3d 937, 943 (3d Cir. 1994).

47.     Pursuant to § 503(b)(4) of the Bankruptcy Code, compensation is authorized even when the services rendered by the attorney were primarily for its clients, if such services transcend such self-protection and extend to the entire bankruptcy estate. *Id.* at 944.  Although the Bankruptcy Code does not define the term "substantial contribution," courts have considered whether the "efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Id.* (quoting *In re Lister*, 846 f.2d 55, 57 (10th Cir. 1988)).  In

determining whether services constitute a substantial contribution and are therefore compensable, courts consider services that "foster and enhance, rather than retard or interrupt the progress of the reorganization." *Id.* (quoting *Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir. 1986)).

48.     In particular, "substantial contribution" fee requests have been granted where "the creditor took an active role in facilitating the negotiation and successful confirmation of the plan." *In re Granite Partners, L.P., et al.*, 213 B.R. 440, 446 (Bankr. S.D.N.Y. 1997) (citing, among other cases, *In re Baldwin-United Corp.*, 79 B.R. 321, 339 (Bankr. S.D. Ohio 1987)) (explaining that creditor's counsel acted as voice of reason in otherwise contentious case); *See In re Richton Int'l Corp.*, 15 B.R. 854, 856 (Bankr. S.D.N.Y. 1981) ("services … which facilitated the progress of these cases and … substantially aided the formulation and adoption of the Plan of Reorganization.").

49.     The record makes clear that Representative Counsel and their co- counsel MLG and Aikins have made a "substantial contribution" to the Debtors' reorganization within the meaning of § 503(b) of the Bankruptcy Code.  In agreeing to the payment of Representative Counsels' legal fees as a term of the Amended Minutes of Settlement, the Debtors recognized that Representative Counsels' contribution to the Chapter 11 Cases was "substantial" within the meaning of § 503(b) of the Bankruptcy Code.  Indeed, it is fair to say that Representative Counsel served as one of the prime architects and facilitators for both the Minutes of Settlement as well as the Amended Minutes of Settlement which is incorporated by reference into the Plan.

## V. ARGUMENT

**A.**    **The $2 Million CDN Fee Is Appropriate Under the Bankruptcy Code And The Circumstances Of These Cases.**

50.    As indicated in the Original Application, the total number of hours billed for Representative Counsel total $818,746.15 CDN in hourly fees, plus $108,150.16 CDN in out-of-pocket expenses.  See Original Application ¶64.  However, the Amended Minutes of Settlement provide for the payment of a flat fee of $2 million CDN notwithstanding the hourly calculation.  In addition to the reasons set forth in the Original Application respecting issues of comity, this Court has authority to award the flat fee of $2 million CDN pursuant to the Bankruptcy Code and U.S. case law.

51.    While the market-driven approach has been applied most commonly with respect to financial advisors rather than attorneys, there is nothing that forecloses its use under these circumstances in assessing the value of the services and other factors to be considered in deciding whether to make a substantial contribution for the extraordinary efforts by Representative Counsel in these Chapter 11 Cases.

52.    Representative Counsel worked with Grace Canada and other constituencies to negotiate a plan that contained a separate class for CDN ZAI PD Claims.  Representative Counsel were intimately involved in the development and drafting of many of the key documents which led to the creation of a separate class of CDN ZAI PD Claims within the Debtors' Plan and which also directs CDN ZAI PI Claims to the Personal Injury Trust (the "PI Trust").  The support of Representative Counsel for the Plan, and good faith negotiations through this case, have substantially assisted the Debtors' reorganization process.

53.    Because of the unknown number of CDN ZAI PI and CDN ZAI PD Claimants and the lack of certainty in respect of the nature and value of the claims pursuant to Canadian

laws, Representative Counsel played a critical role in negotiating the Plan.  As noted above, without Representative Counsels' involvement and support for the development of the Plan, the confirmation process may have been further delayed by a prolonged battle concerning the estimation and valuation of these claims.

54.    Furthermore, while Representative Counsel was not appointed class counsel in the United States, Representative Counsel was appointed in Canada to serve in essentially a class representative capacity.  Representative Counsel negotiated with its constituency in Canada in a similar fashion to how the U.S. ZAI class counsel negotiated with its constituency to result in the U.S. ZAI settlement which was approved by this Court on April 1, 2009 ("U.S. ZAI Order") [Docket No. 21174].  With respect to the U.S. ZAI settlement, this Court noted that "a 25% fee is considered a benchmark in this circuit for a reasonable class action attorneys' fee award."  U.S. ZAI Order at 4 (citing *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 262 (D. Del. 2002)).  By analogy, the Representative Counsels' $2 million CDN would meet this standard. The Amended Minutes of Settlement provide that the CDN ZAI PD Claims Fund will be funded with between $8,095,632.44 CDN and $8,595,632.44 CDN depending on certain timing issues. In calculating twenty-five percent of the lower funding figure, the fees would be $2,023,908.00 CDN; and $2,148,908.00 CDN under the higher funding scenario.  Accordingly, the $2 million CDN fee complies with the 25% benchmark applied to U.S. class action fees.  Furthermore, given that a percentage-based fee is customary compensation charged by comparably skilled class action practitioners, this Section 330(a) consideration is also relevant to Section 503(b)(4) of the Bankruptcy Code for the reasons stated above, and has been met.

**B.    The $2 Million CDN Fee For Representative Counsel Covers Work For CDN ZAI PI And CDN ZAI PD Claims.**

55.    The Amended Minutes of Settlement resolve both CDN ZAI PI Claims and the CDN ZAI PD Claims.  The settlement amount being transferred to the CDN ZAI PD Claims Fund includes the $2 million CDN Representative Counsel fee, but that is a fee on account of the negotiations they performed related to the CDN ZAI PI Claims and the CDN ZAI PD Claims, notwithstanding the fact that it is being turned over to the CDN ZAI PD Fund to then be distributed to Representative Counsel.   The Court may recall the argument of Jacqueline Dias-Visca, co-counsel to the Crown, at the hearing of January 25, 2010.  Ms. Dias-Visca contended that the fees are only related to one aspect of the claim, CDN ZAI PD Claims *or* CDN ZAI PI Claims, which, ultimately, perplexed the Court regarding the Crown's position.  Representative Counsels' fees are for work performed on behalf of *both* the CDN ZAI PI claims and the CDN ZAI PD claims.  However, the $2 million CDN, pursuant to the Plan, is to be paid by the Debtors to the Asbestos PD Trust and immediately transferred as "set forth in the CDN ZAI Minutes of Settlement to the CDN ZAI PD Claims Fund to be used in the manner set forth in the CDN ZAI Minutes of Settlement."[7]

56.    In this respect, the Asbestos PD Trust is the agreed upon mechanism for payment of the $2 million fee for both Representative Counsel's work on behalf of the CDN ZAI PD and CDN ZAI PI Claimants.  The payment, however, does not decrease the amount of compensation available for CDN ZAI PD Claimants as the $2 million fee is a separate component of the Amended Minutes of Settlement.

---

[7] See page 68, ¶ 7.3.2 (d), of the First Amended Joint Plan of Reorganization [Docket No. 24657].

**C.**    **Representative Counsel Have Made Substantial Contributions To The Debtors' Reorganization In Facilitating The Negotiations Between The Representative Counsel And Debtors Which Resulted In The Amended Minutes Of Settlement**

57.    Applying the above standards, Representative Counsel, MLG and Aikins unquestionably made a substantial contribution to these Chapter 11 cases, including the facilitation of the proposals and negotiations and drafting certain key documents, including numerous versions of Minutes of Settlement.

58.    Indeed, Representative Counsel was the catalyst in the filing of all pleadings in the U. S. Bankruptcy Court, District of Delaware, on behalf of the Canadian ZAI Claimants.

59.    The activities of Representative Counsel prior to the negotiation of the Minutes of Settlement assisted in highlighting many of the unresolved issues in the Chapter 11 cases, including the CDN ZAI PI estimation issues.    Working hand-in-hand with the Debtors, Representative Counsel spearheaded the negotiations for the Minutes of Settlement and ultimately the Amended Minutes of Settlement.

**D.**    **The Prohibition Against Fee Sharing is Not Applicable to the Substantial Contribution Application of Representative Counsel and MLG and Aikins**

60.    Section 504 of the Bankruptcy Code provides that "a person receiving compensation for reimbursement under section 503(b)(2) or 503(b)(4) of the Bankruptcy Code may not share or agree to share (1) any such compensation or reimbursement with another person; or (2) any compensation or reimbursement received by another person under such sections." 11 U.S.C. § 504.

61.    In *In re Winstar Commc'ns, Inc.*, 378 B.R. 756 (Bankr. D. Del. 2007), the United States Bankruptcy Court for the District of Delaware denied, without prejudice, a motion of special counsel and a consultant to assign a portion of their contingency fees.  The Bankruptcy Court then noted that section 504 of the Bankruptcy Code "provides only two exceptions to the

prohibition: partners or associates in the same professional association, partnership or corporation may share compensation inter se; and attorneys for petitioning creditors that join in a petition commencing an involuntary case may share compensation." 11 U.S.C. § 504; *Winstar*, 378 B.R. at 759-60.  The Bankruptcy Court stated that the policy reasons behind the prohibition contained in section 504 included that: (a) sharing of compensation can inflate the amount of compensation sought and subjects the professional to outside influences over which the court has no control, which tends to transfer from the court some degree of power over allowance and expenditures; (b) referral fees should be prevented as should the participation by the professionals who have not been retained by the bankruptcy court; and (c) retention of professionals engaged in bankruptcy cases should be encouraged to attend to their duty as officers of the bankruptcy court rather than treating their interest in the bankruptcy cases as matters of trade and commerce. Id. at 760.

62.     In *In re Worldwide Direct,* the United States Bankruptcy Court for the District of Delaware held that contract attorneys or  paralegals employed by a firm employed by the bankruptcy court are considered associated with that firm for fee sharing purposes, thus the payment of fees to contract attorneys or paralegals do not violate section 504 of the Bankruptcy Code. *In re Worldwide Direct, Inc*., 316 B.R. 637 (Bankr. D. Del. 2004)

63.     In the present instance, Representative Counsel is making this application on behalf of each of the law firms that represent the interests of Canadian ZAI Claimants in the Proposed Class Actions.  The application is for the efforts undertaken by each of the class action attorneys on behalf of the class members.  Because each of the firms is applying for the award of $2 million CDN pursuant to this application, and because there has been recognition in this Court that CCAA proceedings would be governed by Canadian substantive law, including the awarding

of these fee pursuant to the Amended Minutes of Settlement, the prohibitions contained in Section 504(a) are inapplicable. The Rule appears to limit fee sharing with parties who are not applicants to the award of compensation.

**E.      The Application Of Comity Principles To The Judicial Acts Of The CCAA Court With Regard To The Approval Of The Amended And Restated Minutes Of Settlement Is Appropriate Under These Circumstances.**

64.      Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice, convenience, and expediency. Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws. Comity should be withheld only when its acceptance would be prejudicial to the interest of the nation called upon to give it effect. *Remington Rand Corp-Del. v. Bus. Sys. Inc.*, 830 F.2d 1260, 1267 (3d. Cir. 1987); *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971); *See also Hilton v. Guyot,*, 159 U.S. 113, 163-64 (1895).

65.      Section 304 of the Bankruptcy Code expresses Congressional recognition of an American policy favoring comity for foreign bankruptcy proceedings. This section provides, in pertinent part, that an American bankruptcy court, at the request of a foreign administrator, may enjoin actions and the enforcement of judgments against the foreign debtor in this country. 11 U.S.C. § 304(b) (2005). The House Reports states that "[p]rinciples of international comity and respect for the judgments and laws of other nations suggest that the court be permitted to make the appropriate orders under all of the circumstances of each case...." H.R. Rep. No. 595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6281. The court should be free to consider "economical

24

and expeditious administration of the estate,…protection of local creditors and equity security holders against prejudice and inconvenience in processing claims and interest in the foreign proceeding; prevention of preferential or fraudulent disposition of property of the estate...." *Remington Rand*, 830 F.2d at 1272.

66.     Some factors which the deciding court may consider in granting comity are "economical and expeditious administration of the estate,… protection of local creditors and equity security holders against prejudice and inconvenience in processing claims and interest in the foreign proceeding, prevention of preferential or fraudulent disposition of property of the estate." *Id.*

67.     In *Philadelphia Gear Corp v. Philadelphia Gear De Mexico, S.A.*, 44 F.3d 187 (3d Cir. 1994), the Third Circuit Court of Appeals considered the district court's refusal to consider a letter rogatory issued by a Mexican court requesting a stay of the U.S. litigation thereby allowing a suspension of payments proceeding to move forward in Mexican courts pursuant to Mexican bankruptcy law.  It was found that the Mexican bankruptcy law was similar to a Chapter 11 proceeding under U.S. bankruptcy law.  *Id.* at 190.  The district court's refusal is examined under a discretionary standard by the appellate court, and the court ultimately found an abuse of the district court's discretion.   *Id.* at 191. "In general, under the principles of international comity, a domestic court normally will give effect to executive, legislative, and judicial acts of a foreign nation" and should only be "withheld…when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Id.*  The moving party has the burden to prove a *prima facie* case for the extension of comity.  *Id.* at 192.  In setting forth such a *prima facie* case, the moving party should show that "the foreign bankruptcy

court shares our 'fundamental principle that assets be distributed equally among creditors of similar standing.'" *Id.*

68.     In another case, *Tradewell, Inc. v. Am. Sensors Elec., Inc.*, 1997 WL 423075 (D.S.D.N.Y. July 29, 1997), the Court determined issues concerning extending comity to be afforded to Canadian bankruptcy court rulings.  This case specifically references the CCAA and the standards it affords in bankruptcy proceedings in comparison to the requirements under U.S. bankruptcy law.  The district court found no relevant distinctions between the two courts for purposes of extending comity. "Comity will be granted if 'it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." *Id.* at *1.  "It is appropriate to grant comity if the foreign court abides by 'fundamental standards of procedural fairness.'" *Id.*

69.     Factors utilized by the Court in *Tradewell* to determine whether "insolvency proceedings warrant comity" were: "1) whether creditors of the same class are treated equally in the distribution of assets; 2) whether the liquidators are considered fiduciaries and are held accountable to the court; 3) whether creditors have the right to submit claims which, if denied, can be submitted to a bankruptcy court for adjudication; 4) whether the liquidators are required to give notice to the debtor's potential claimants; 5) whether there are provisions for creditors' meetings; 6) whether a foreign country's insolvency laws favor its own citizens; 7) whether all assets are marshaled before one body for centralizes distribution; and 8) whether there are provisions for an automatic stay and for the lifting of such stays to facilitate the centralization of claims." *Id.* at *2.  A party moving in opposition to comity must show that more than just one of these factors is not met in order to succeed.  *Id.* at *3.

26

70.     The application of the principles of comity to the CCAA proceedings and the findings of the CCAA Court and the Ontario Court of Appeal is appropriate and warranted in these circumstances.   The CCAA Court applied appropriate standards in making its rulings. There is no relevant distinction between the CCAA Court and the U.S. Bankruptcy Court for purposes of extending comity. Comity should be granted as it has been shown that the CCAA Court is a court of competent jurisdiction, and that the laws and public policy of Canada and the rights of its residents have not been violated.

71.     The CCAA Court properly considered and approved both the Minutes of Settlement and the Amended Minutes of Settlement including the specific provisions relating to compensation of Representative Counsel, *i.e.* the $2 million payment for which approval is now being sought as substantial contribution.  It also considered and overruled the objections raised by the Crown.  Representative Counsel respectfully request that this Court apply the principles of comity and give effect to the prior CCAA rulings in the proceeding.

**F.     Canadian Law Supports The Award Of The Legal Fees And Disbursements Agreed To In The Amended And Restated Minutes Of Settlement.**

72.     Canadian law permits counsel to enter into contingency fee agreements with representative plaintiffs in class action cases. Furthermore, Canadian law permits counsel to have their fees increased by a multiplier to be determined by the court. Percentage-based fees and block fees are regularly approved by the Canadian courts.   Whether courts have determined counsel fees using a base fee and a multiplier approach, a percentage-based fee, or a fixed sum, the factors considered are essentially the same.

73.     In deciding on an appropriate multiplier, Canadian courts generally consider the percentage of the recovery which the fee will equate to.   In evaluating a percentage-based fee or a fixed fee, the court will often "cross-check" whether the resultant multiplier is within a

reasonable range. Ultimately, the inquiry and determination center on whether there is fair value to the class. In performing its function of determining appropriate legal fees, Canadian courts have been aware of their role as sole independent arbiter of the fee request and its reasonableness:

> The defendant has capped its contribution to legal costs in the settlement agreement, so the defendant is indifferent as to the determination of class counsel's fees. The self-interest of class counsel is adverse to the self-interest of the class members. Therefore, the Court is the only independent reviewer of the claimed fees.

*Clients of JNP Financial Services Inc. v. Paul,* [2001], O.J. No. 1616 (S.C.J.).

74.     The multiplier approach described below requires that the court determine the appropriate "reasonable base fee".  Canadian courts scrutinize the total hours docketed by counsel and paralegal staff involved in the litigation and the appropriateness of the hourly rate. In considering the reasonableness of a base fee, the usual factors to be considered include the following:

    a.  time expended by counsel;

    b.  legal complexity of the matters in issue;

    c.  degree of responsibility assumed by counsel;

    d.  the monetary value of matters in issue;

    e.  the importance of matters in issue to the client;

    f.  the degree of skill and competence demonstrated by counsel;

    g.  the result achieved;

    h.  the ability of the client to pay (if relevant); and,

    i.  the client's expectation as to the amount of the fee.

*Windisman v. Toronto College Park Ltd.*, [1996] O.J. No. 2897, 3 C.P.C. (4th) 369 (Gen. Div.).

75.     The application of a multiplier to a base fee is one method of providing economic incentive to lawyers who take on appropriate cases, thereby satisfying the goal of

increased access to justice, one of the main objectives of class proceedings legislation. In *Gagne v. Silcorp Ltd*., the Ontario Court of Appeal stated:

> Another fundamental objective [of the *Class Proceedings Act*, *1992*] is to provide enhanced access to justice to those with claims that would not otherwise be brought because to do so as individual proceedings would be prohibitively uneconomic or inefficient. The provision of contingency fees where a multiplier is applied to the base fee is an important means to achieve this objective. The opportunity to achieve a multiple of the base fee if the class action succeeds gives the lawyer the necessary economic incentive to take the case in the first place and to do it well. However, if the Act is to fulfill its promise, that opportunity must not be a false hope.
>
> [F]air and reasonable compensation must be sufficient to provide a real economic incentive to solicitors in the future to take on this sort of case and to do it well.

*Gagne v. Silcorp Ltd*., [1998] O.J. No. 4182 (C.A.).

76.     Twelve factors have normally been considered in setting class counsel fees under the multiplier approach. These factors include:

a.   time and labour required;

b.   novelty and difficulty of the action;

c.   skill of counsel required to provide required legal service;

d.   preclusion of other employment by counsel due to acceptance of the case;

e.   customary fee;

f.   whether the fee is fixed or contingent;

g.   time limitations imposed by the client or the circumstances;

h.   amount involved and results obtained;

i.   experience, reputation and ability of counsel;

j.   undesirability of the case;

k.   nature and length of professional relationship with the client; and,

l.   awards in similar cases.

*Windisman v. Toronto College Park Ltd.*, [1996] O.J. No. 2897, 3 C.P.C. (4th) 369 (Gen. Div.).

77.     These 12 factors are drawn from U.S. case law pursuant to which American courts have used a "lodestar" approach to calculate counsel fees. The "lodestar" approach is comparable to the base fee/multiplier approach used in Canada.  The "Lindy Lodestar" approach was developed in the U.S. with the term arising out of the decision *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator and Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973), *appeal allowed following remand*, 540 F.2d 102 (3d Cir. 1976). Pursuant to the "Lodestar" approach the number of hours reasonably expended by counsel is multiplied by both the lawyer's hourly rate and a court-approved multiplier.  Canadian case law has generally looked to these various factors in using a multiplier approach. Canadian law generally indicates that any multiplier should result in "fair and reasonable compensation" for the risk incurred in taking on a case on a contingent basis. *Id.* The court also considers the manner in which counsel conducted the proceedings.  The determination of the fee is of necessity largely discretionary.  *Class Proceedings Act, 1992*, S.O. 1992, c.6, s. 33(7)(b), s. 33(8) and (9).

78.     The Ontario Court of Appeal has stated that multipliers will tend to range between slightly greater than 1 at the low end, and 4 in the most difficult cases, however, there are cases where a multiplier close to 5 has been awarded.  Canadian law emphasizes the risk to counsel in taking on difficult cases on a contingency basis. Re-evaluation of risk with perfect hindsight is viewed to be unfair to class counsel.  In a case which appears risky at the outset (when counsel decides to accept the case), but rapidly becomes less risky due to other circumstances, there is no corresponding reason to adjust a multiplier or percentage. In most cases, the courts consider the following: (i) the degree of legal complexity of the matters in question; (ii) the amount of time expended by counsel' (iii) the responsibility involved in bringing a matter to a successful

conclusion; (iv) the monetary value of matters in issue; (v) the importance of the matter to the class; (vi) the degree of skill and competence demonstrated by counsel; (vii) the result achieved; and (viii) the expectation of any representative plaintiff as to the amount of the fee. The courts emphasize the degree of risk to counsel and the degree of success achieved, particularly in difficult cases.  *Gagne v. Silcorp Ltd.*, [1998] O.J. No. 4182, 41 O.R. (3d) 417 (C.A.).

79.     Canadian law also recognizes fixed sums per case and block fees which have been approved by the court. Even in these types of cases, Canadian courts still adhere to the principles discussed in *Gagne* above in assessing the fairness and reasonableness of the counsel fee, whether that fee is calculated on a lump-sum basis or otherwise.

80.     In Canada there has been some criticism of the "lodestar"/multiplier approach and a suggested shift towards a simpler percentage method.  One argument generally put forward is that the "lodestar"/multiplier method generally produces a result equivalent to approximately 30% of the settlement or judgment fund, which could be arrived at more quickly and efficiently using a percentage-based approach from the start. It has been argued that a percentage-based calculation places the emphasis on the quality of representation and the benefit conferred on the class. Such an approach properly rewards "one imaginative, brilliant hour" rather than "one thousand plodding hours". As indicated, the percentage of the potential fee awarded as compared to the quantum of settlement or judgment is often compared to a multiplier approach as a "cross-check" of reasonableness of the fee.  *In re Warner Communications Securities Litigation*, 618 FSupp, 735 (S.D.N.Y. 1985), adopted by Cuming, J. in *Vitapharm Canada Ltd. v. F. Hoffmann-La Roche Ltd.*, [2005] O.J. No. 1117 (S.C.J.); *Crown Bay Hotel Ltd. Parternship v. Zurich Indemnity Co. of Canada,* [1998] O.J. No. 1891, 40 O.R. (3d) 83 (Gen.Div.).

81.     In the same way that a percentage-based calculation may be considered in determining the appropriate quantum of a multiplier-based fee, the reasonableness of a percentage-based fee is often assessed by a number of corroborating factors such as testing the fee as a percentage against recovery, as a multiple of base fees and whether, in the circumstances, the fee provides sufficient incentive for counsel to take on difficult cases in the future.  Canadian courts have approved percentage-based contingent fee agreements where counsel receive 25% of the amounts recovered by the class under any judgment, order or settlement, plus costs recovered from the defendant.   Some C*anadian* courts have determined that a sliding scale percentage is most appropriate. By way of example, counsel could receive a fee of up to one-third on the first $10 million recovered, a reduced percentage on the next $10 million and a smaller percentage on all amounts thereafter. The percentage fee is generally regarded to be lower where the recovery is higher.

82.     Where Canadian class actions overlap with insolvency proceedings, the approach of the courts in the insolvency proceedings towards counsel fees for counsel involved in pursuing class proceedings is consistent with the general class proceeding approach.  There are numerous examples in Canadian law of Canadian insolvency courts awarding fees to counsel in the context of the insolvency proceedings on the basis of the class proceeding principles where counsel have been involved in prosecuting class proceedings against the insolvent/court-protected debtors.

83.     The case of *Parsons v. Canadian Red Cross Society*, [2000] 49 O.R. (3d) 281 (S.C.J.), is illustrative of the analysis undertaken by Canadian courts when a request is made to approve counsel fees in class proceedings.  In *Parsons*, the Ontario Superior Court of Justice was asked to approve counsel fees in connection with two companion class proceedings brought against the Red Cross and the federal and provincial governments for damages arising from

tainted blood.  In determining that the $20 million counsel fees were fair and reasonable, the Court reviewed the following: (i) the risk taken at the outset of commencement of the class proceedings by class action counsel; (ii) the risk and responsibilities that continued to be borne by class counsel once appointed; (iii) despite the risks and legal obstacles, the fact that some settlement for the benefit of the class was achieved; and (iv) the nature and extent of the fees and hourly rates claimed. *Id.*  A copy of the *Parsons* reported opinion is attached as **Exhibit H.**

84.    Applying these standards to the actions taken at the time of commencement of the class actions by Lauzon Bélanger, MLG and Aikins, it is clear that the proposed class actions were fraught with peril.  Furthermore, the risk and responsibilities have continued to be borne by Representative Counsel once appointed by the CCAA. Further risk was created for Representative Counsel given Judge Fitzgerald's ZAI Science Memorandum ("no unreasonable risk of harm") and later Memorandum of Opinion on traditional Canadian property damage claims ("ultimate limitation periods") which arguably rendered the CDN ZAI PD Claims as questionable claims.  Despite the risks and legal obstacles, some settlement for the benefit of the class was achieved and later improved upon by negotiation and resolution of the Amended Minutes of Settlement.

85.    The requested fee of Representative Counsel is modest given the risks articulated and the ongoing nature of the responsibility of Representative Counsel on a go-forward basis.

**G.    The Requested Professional Fees And Expenses Are Allowable As An Administrative Expense**

86.    As herein demonstrated, Representative Counsel and the aforementioned law firms of MLG and Aikins have made a substantial contribution to the Debtors' reorganization. Representative Counsels' professional fees and expenses and the professional fees and expenses

of MLG and Aikins are allowable as administrative expense claims under §§ 503(b)(3)-(b)(4) of the Bankruptcy Code.

87.     As described in the annexed certification of David Thompson, on behalf of Representative Counsel, which is attached as **Exhibit I**, and in light of all of the above, Representative Counsel seeks allowance of an award of $2 million CDN for fees and disbursements.

### i. Requested Fee Reimbursement

88.     Once an applicant establishes it made a substantial contribution under § 503(b)(3) of the Bankruptcy Code, the Court may allow reasonable compensation for professional services rendered in connection therewith.  11 U.S.C. § 503(b)(3) (2005).

89.     From October 1, 2004, through and including August 31, 2008, Representative Counsel devoted approximately 2,402.87 hours to represent the Canadian ZAI Claimants, and in doing so has provided actual and necessary professional services in the amount of $818,746.15 CDN.

90.     Representative Counsel negotiated cooperative and collaborative co-counsel arrangements with the law firms of MLG and Aikins, who, along with Representative Counsel, commenced the Proposed Class Actions in Canada.  These co-counsel arrangements provide for the sharing of fees generated by the Proposed Class Actions. See **Exhibit F** ¶27 & ¶28 of the Affidavit of Michel Bélanger.

91.     Upon information and belief, as of August 31, 2008, Aikins had spent approximately 1,015.6 hours on this matter for a total in fees of approximately $300,000.00 CDN at normal hourly rates for this type of work.  See **Exhibit F** ¶115 of the Affidavit of Michel Bélanger.

92.     Upon information and belief, as of August 31, 2008, MLG had spent approximately 550 hours on this matter for a total in fees of approximately $255,000.00 CDN at normal hourly rates for this type of work.  See **Exhibit F** ¶116 of the Affidavit of Michel Bélanger.

93.      Pursuant to the terms of the Amended Minutes of Settlement, Debtors shall distribute $2 million CDN to Representative Counsel in respect of all legal fees and disbursements. See ¶ 22 of **Exhibit B**.

94.     Accordingly, Representative Counsel seek payment as an administrative claim the sum of the $2 million CDN, as provided in the Amended Minutes of Settlement, for all of all above mentioned fees.

95.     A detailed description and breakdown of all of the services provided by Representative Counsel during the Compensation Period is set forth in the Time Summaries of Representative Counsel attached as **Exhibits J-1 through Exhibit J-3**.

96.     Representative Counsel seeks payment of customary fees at rates which are comparable to those charged by law firms of similar expertise in their respective relevant market.

**ii. Requested Expense Reimbursement**

97.     Additionally, during the Compensation Period, Representative Counsel incurred actual out-of-pocket expenses in connection with the rendition of the foregoing professional services in the sum of $108,150.16 CDN (includes Goods & Services Tax in the amount of $42,598.94 CDN; and Quebec Sales Tax in the amount of $32,021.79 CDN).

98.     Upon information and belief, as of August 31, 2008, Aikins had incurred disbursements in the amount of approximately $102,168.11 CDN. See **Exhibit F** ¶115 of the Affidavit of Michel Bélanger.

99.     Upon information and belief, as of August 31, 2008, MLG had incurred disbursements in the amount of approximately $46,203.00 CDN.  See **Exhibit F** ¶116 of the Affidavit of Michel Bélanger.

100.    Aikins and MLG each bore a proportionate share of attorney's fees to The Hogan Firm and these amounts are included in their aforementioned disbursements.  Aikins and MLG have been partially reimbursed through payment of The Hogan Firm's prior substantial contribution application [Docket No. 19980, filed November 10, 2008] and order, signed December 15, 2008, and entered January 7, 2009, [Docket No. 20471].

101.    Pursuant to the terms of the Amended Minutes of Settlement, Debtors shall distribute $2 million CDN to Representative Counsel in respect of legal fees and disbursements. See ¶22 of **Exhibit B**.  The aforementioned fees and expenses are provided as material justification for the payment of the $2 million CDN and are not being separately sought by Representative Counsel or MLG and Aikins.

102.    Accordingly, Representative Counsel seek payment as an administrative claim the sum of the $2 million CDN, as provided in the Amended Minutes of Settlement, for all of all above mentioned expenses.

103.    A description and breakdown of the expenses incurred by Representative Counsel during the Compensation Period are set forth in Representative Counsels' Time Summaries.  See attached **Exhibit J-1** through **J-3**.

104.    The disbursements and expenses of Representative Counsel have been incurred in accordance with normal practice of charging clients for expenses clearly related to and required by particular matters.  The billing rates do not include charges for telephone toll charges, computerized research, and certain other office services, because the needs of each client for

such services differ.  Representative Counsel charged $.10 per page for photocopying services and $1.00 per page for facsimiles.  With respect to outside copying and delivery services, long distance charges, postage, travel fees, conference fees and court fees, Representative Counsel charged the actual cost from the vendor.

105.    This Application has as exhibits only the time and expenses of Representative Counsel.  The aforementioned time and expenses of MLG and Aikins are not included in Representative Counsel's actual and necessary professional fees in the amount of $818,746.15 CDN, or actual out-of-pocket expenses in the amount of $108,150.16 CDN.

106.    Pursuant to co-counsel arrangements with MLG and Aikins, Representative Counsel will make payment to MLG of eleven percent (11%) of the total award, and to Aikins of a flat fee of $300,000 CDN, of the $2 million award  received pursuant to the Amended Minutes of Settlement in compensation for both the time expended and expenses incurred by co-counsel.

107.    Representative Counsel have reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believe that this application for allowance of compensation and reimbursement of expenses complies with the rules set forth therein.

108.    No prior application has been made in this or in any other Court for the relief requested herein.

## VI. SUMMARY OF EXHIBITS

| | |
|---|---|
| Exhibit A | Canadian ZAI Minutes of Settlement ("Minutes of Settlement") |
| Exhibit B | Amended and Restated Minutes of Settlement ("Amended Minutes of Settlement") |
| Exhibit C | Morawetz's Endorsement of Amended and Restated Minutes of Settlement and the Decision of Justice Morawetz dated January 8, 2010 ("Reasoning of Justice Morawetz") |

| | |
|---|---|
| Exhibit D | November 14, 2005, CCAA Court Order ("Order for Injunctive Relief") |
| Exhibit E | February 9, 2006, CCAA Court Order for Appointment of Representative Counsel |
| Exhibit F | Motion Record of Representative Counsel for settlement approval of Minutes of Settlement in September, 2008 ("Mot. Record of Representative Counsel") |
| Exhibit G | October 17, 2008 Endorsement approving the Minutes of Settlement ("Endorsement") |
| Exhibit H | Parsons v. Canadian Red Cross Society, [2000] 49 O.R.3d 281 (Can.). |
| Exhibit I | Certification of David Thompson on behalf or Representative Counsel |
| Exhibit J-1 to J-3 | Time Summaries of Representative Counsel for October 1, 2004 through August 31, 2008 |

## VII.  CONCLUSION

WHEREFORE, Representative Counsel, on behalf of the Canadian ZAI Claimants, respectfully request that this Court (i) enter an order, in a form substantially similar to the one attached hereto, granting this Application, allowing as an administrative expenses the sum of $2 million CDN for the legal fees and expenses incurred by Representative Counsel pursuant to §§ 503(b)(3)(d)-(b)(4) of the Bankruptcy Code, and authorizing payment of Representative Counsels' professional fees and expenses pursuant to the terms of the First Amended Joint Plan (the "Plan") and the Amended Minutes of Settlement, as reasonably practicable following the Effective Date, and (ii) grant such other and further relief as the Court deems just and proper.

Dated: June 14, 2010

*/s/Daniel K. Hogan*
Daniel K. Hogan (DE Bar No. 2814)
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656.7540
Facsimile: (302) 656.7599
E-Mail: dkhogan@dkhogan.com

-and-

**LAUZON BÉLANGER, INC**.
Yves Lauzon
Michel Bélanger
286, rue St-Paul Quest, Bureau 100
Montreal Quebec
Telephone: (514) 844-7403
ylauzon@lauzonBélanger.qc.ca
mBélanger@lauzonBélanger.qc.ca

**SCARFONE HAWKINS LLP**
David Thompson
Matthew G. Moloci
One James Street South, 14th Floor
P.O. Box 926, Depot 1
Hamilton, Ontario
Canada L8N 3P9
Telephone: (905) 523-1333
thompson@shlaw.ca
moloci@shlaw.ca