# EXHIBIT F

Court File No. 01-CL-4081

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

**COMMERCIAL LIST**

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA INC.


**MOTION RECORD OF REPRESENTATIVE COUNSEL**
**(Settlement Approval – September 30, 2008)**


September 25, 2008

**SCARFONE HAWKINS** LLP
Barristers & Solicitors
One James Street South, 14th Floor
P.O. Box 926, Depot 1
Hamilton, Ontario
L8N 3P9

**DAVID THOMPSON (28271N)**
thompson@shlaw.ca
**MATTHEW G. MOLOCI (40579P)**
moloci@shlaw.ca

Tel: 905-523-1333
Fax: 905-523-5878

**LAUZON BÉLANGER**
Barristers & Solicitors
286, rue St.-Paul Ouest, Bureau 100
Montréal, (Québec)
H2Y 2A3

**YVES LAUZON**
ylauzon@lauzonbélanger.qc.ca
**MICHEL BÉLANGER**
belanger@lauzonbélanger.qc.ca
**CAREEN HANNOUCHE**
careen.hannouche@lauzonbelanger.qc.ca

Tel : 514-844-7612
Fax: 514-844-7009


Representative Counsel for CDN ZAI
Claimants

Court File No. 01-CL-4081

### *ONTARIO*
## SUPERIOR COURT OF JUSTICE-COMMERCIAL LIST

### COMMERCIAL LIST

**IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF GRACE CANADA INC.**

## <u>SERVICE LIST</u>

TO:    **OGILVY RENAULT** <sup>LLP</sup>
Barristers & Solicitors
Suite 3800, P.O. Box 84
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario M5J 2Z4

**DERRICK C. TAY**
dtay@ogilvyrenault.com
Tel: 416-216-4832
Fax: 416-216-3830

**ORESTES PASPARAKIS**
opasparakis@ogilvyrenault.com
Tel: 416-216-4815
Fax: 416-216-3930

Lawyers for GRACE CANADA INC.

AND
TO:

**ERNST & YOUNG INC.**
Ernst & Young Tower,
222 Bay Street, 16th Floor
P.O. Box 251
Toronto-Dominion Centre
Toronto, Ontario
M5K 1J7

**MURRAY A. McDONALD**
murray.a.mcdonald@ca.ey.com
Tel : 416-943-3016
Fax: 416-943-3300

Financial Advisor to the Attorney
General of Canada (Her Majesty the
Queen in Right of Canada)

AND
TO:

**ERNST & YOUNG INC.**
1 Place Ville Marie
Bureau 2400
H3B 3M9

**JEAN DANIEL BRETON**
Jean-Daniel.Bretaon@ca.ey.com
Tel : 514-875-6060
Fax: 514-871-8713

Financial Advisor to the Attorney
General of Canada (Her Majesty the
Queen in Right of Canada)

AND
TO:

**THE SCOTT LAW GROUP P.S.**
926 W. Sprague Avenue, Suite 680
Spokane, Washington
99201

**DARRELL W. SCOTT**
darrellscott@mac.com

Tel : 509-455-3966
Fax: 509-455-3906

AND
TO:    **MERCHANT LAW GROUP**
c/o Eau Claire Place II
#340-521 Third Avenue S.W.
Calgary, Alberta
T2P 3T3

**EVATT MERCHANT**
emerchant@merchantlaw.com

Tel : 403-237-9777
Fax: 403-237-9775


AND
TO:    **DEPARTMENT OF JUSTICE CANADA**
Ontario Regional Office
Counsel, Business Section
The Exchange Tower
130 King Street West, Suite 3400, Box 36
Toronto, Ontario
M5X 1K6

**JACQUELINE DAIS-VISCA**
jacqueline.dais-visca@justice.gc.ca
Tel : 416-952-6010
Fax: 416-973-0809

Lawyers for Health Canada


AND
TO:    **AIKINS, MacAULAY & THORVALDSON
LLP**
Barristers and Solicitors
Commodity Exchange Tower
30th Floor – 360 Main Street
Winnipeg, Manitoba
R3C 4G1

**KEITH FERBERS**
KJF@aikins.com
Tel : 204-957-4691
Fax: 204-957-4269

Lawyers for the Plaintiff in Manitoba Q.B.

Court File No. 01-CL-4081

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

**COMMERCIAL LIST**

**IN THE MATTER OF S. 18.6 OF THE *COMPANIES'***
***CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF GRACE CANADA INC.**

**INDEX**

**TAB**      **DESCRIPTION**

1.        Affidavit of Michel Belanger and exhibits, sworn September 25, 2008

          A     C*urriculum vitae* of Yves Lauzon, Michel Belanger and Careen Hannouche

          B     *Curriculum vitae* of David Thompson, Matthew G. Moloci and Jeffrey C. Teal

Our Court File No. 01-CL-4081

## ONTARIO
## SUPERIOR COURT OF JUSTICE

### COMMERCIAL LIST

IN THE MATTER OF S. 18.6 OF THE *COMPANIES'*
*CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, C. c-36,
AS AMENDED

AND IN THE MATTER OF GRACE CANADA, INC.

### AFFIDAVIT OF MICHEL BÉLANGER
### (Sworn September 25, 2008)

I, Michel Bélanger, of the City of Montreal, in the Province of Quebec, MAKE

OATH AND SAY:

1.      I am a lawyer and partner in Lauzon Bélanger Inc.  Lauzon Bélanger Inc. and

Scarfone Hawkins LLP are Representative Counsel on behalf of all Canadian ZAI

claimants, having been appointed as such by the Honourable Justice Farley

("**Justice Farley**"), on February 8, 2006. As such, I have knowledge of the

matters contained in this affidavit.  Where I make statements in this affidavit

which are not within my personal knowledge, I have identified the source of my

information and belief. I believe all that I depose herein.

2.      This affidavit is filed in support of a motion seeking court approval of a proposed

settlement relating to Zonolite Attic Insulation ("**ZAI**") claims.  A copy of the

Minutes of Settlement (**"the Minutes"**) dated September 2, 2008 is attached as

- 2 -

Exhibit "A" to the affidavit of Richard C. Finke sworn September 15, 2008 (**"the Finke Affidavit"**).

**INTRODUCTION AND BACKGROUND RE REPRESENTATIVE COUNSEL**

3.      I am a member of a team of lawyers acting for all ZAI claimants.  The lawyers involved include my partner, Yves Lauzon, and associate, Careen Hannouche, as well as lawyers David Thompson, Matthew G. Moloci and Jeffrey C. Teal of Scarfone Hawkins $^{LLP}$, hereinafter collectively referred to as **"Representative Counsel"**.

4.      Representative Counsel worked together to represent the interests of all Canadian ZAI claimants.

5.      Lauzon Bélanger Inc. and Scarfone Hawkins $^{LLP}$ are experienced Canadian plaintiff class action law firms.

6.      Lauzon Bélanger Inc. is an experienced plaintiff class action law firm in Quebec. My partner, Yves Lauzon, and I, have been and remain involved in numerous class actions involving vanishing premium life insurance policies, product liability issues, Saguenay river flooding, Duplessis orphans, failed investment programs, tobacco litigation, Hepatitis 'C', alleged overbilling by Bell Canada, etc. We are assisted by our associate, Careen Hannouche. My *curriculum vitae* and those of Yves Lauzon and Careen Hannouche are attached as Exhibit "A".

7.      David Thompson, Matthew G. Moloci and Jeffrey C. Teal are partners at Scarfone Hawkins $^{LLP}$, an experienced plaintiff class action law firm in Ontario.

- 3 -

They have been and remain involved in numerous class actions involving vanishing premium life insurance policies, food poisoning, product liability issues, medical negligence, unpaid overtime, environmental contamination, failed investment programs, mass termination of employment, alleged overbilling by Bell Canada, leveraged charitable donation programs, etc. The *curriculum vitae* of David Thompson, Matthew G. Moloci and Jeffrey C. Teal are all attached as Exhibit "B". Included in David Thompson's *curriculum vitae* is a list of some of the class proceedings in which Scarfone Hawkins [LLP] has been involved and some of their current class proceeding cases.

## THE INITIAL ORDER AND EXTENSIONS

8.    On April 2, 2001, W.R. Grace & Co. and several of its affiliates (the "U.S. Debtors") filed voluntary petitions for protection under Chapter 11 of the United States ("**U.S.**") Bankruptcy Code (the "**U.S. Proceedings**") and were granted a temporary restraining Order by the U.S. Bankruptcy Court providing certain injunctive relief in favour of the U.S. Debtors as well as certain other third-parties (the "**Affiliated Entities**").

9.    On April 4, 2001, the Applicant was granted the "**Initial Order**", pursuant to Section 18.6(4) of the Companies' Creditors Arrangement Act in the Ontario Superior Court of Justice (the "**Court**") which, among other things, provided for a stay of proceedings prohibiting the commencement or continuation of any asbestos-related suits against the Applicant.

10.   The Stay Period referred to in paragraphs 4 and 5 of the Initial Order has been extended a number of times, most recently pursuant to the Order of the Honourable Justice Morawetz, dated March 26, 2008, extending the Stay Period to October 1, 2008.

## INVOLVEMENT OF REPRESENTATIVE COUNSEL IN THIS ACTION

11.   As indicated above, Lauzon Bélanger Inc. and Scarfone Hawkins [LLP] were appointed as Representative Counsel on behalf of all Canadian ZAI claimants, by the Order of Justice Farley, February 8, 2006, a copy of which is attached to the Finke Affidavit as Exhibit "G".

12.   While that represents the date of our formal appointment as Representative Counsel, we were in fact involved in this matter much earlier.

13.   Lauzon Bélanger Inc., in particular, first became involved in prosecuting claims relating to ZAI through the following actions:

   (a)   *Association des Consommateurs pour la Qualité dans la Construction et Jean-Charles Dextras v. Grace Canada Inc. and Attorney General of Canada*; Superior Court of Québec ('**the Dextras action**").

   (b)   *Association des Consommateurs pour la Qualité dans la Construction Viviane Brosseau & Léontine Roberge-Turgeon v. Attorney General of Canada* ("**the Brosseau actio**n");

14.   The Dextras action was commenced November 1, 2004.

- 5 -

15.  The Brosseau action was commenced April 18, 2005.

16.  Other proposed class proceedings had been commenced by Aikins MacAulay & Thorvaldson [LLP] ("**Aikins**") and by Merchant Law Group ("**Merchant**").

17.  The Dextras and Brosseau actions were not stayed as a result of the Initial Order.

18.  As developments began to occur in the CCAA proceeding, Lauzon Bélanger Inc. determined that we could best represent Canadian ZAI claimants by entering into a co-counsel arrangement with Scarfone Hawkins [LLP], a firm with whom we had worked extensively in the past with great success. This was necessary given that we needed Ontario counsel for appearances in this Court, just as we had required in acting for pre-1986 and post-1990 Hepatitis C Quebec claimants in the Canadian Red Cross litigation.  We worked successfully with Scarfone Hawkins [LLP] in that case.

19.  We communicated with Scarfone Hawkins [LLP] in late 2004/early 2005 and Scarfone Hawkins [LLP] confirmed its willingness to assist in this matter and to join with us co-operatively to represent the interests of all Canadian ZAI claimants.

20.  We considered a motion seeking an order lifting the stay to allow prosecution of the Dextras and Brosseau actions and returned that motion before Justice Farley in November, 2005.

- 6 -

21.  A similar motion was brought at that time by Aikins also seeking a lifting of the stay to allow prosecution of the proposed class proceeding brought in Manitoba.

22.  At that time there was no forum for prosecution of the claims of Canadian ZAI claimants and no agreement or structure in place pursuant to which the claims could be advanced.  There were competing proposed class proceedings all of which had been stayed and no agreement in place between the law firms as to carriage of the actions.

23.  We agreed to adjourn our lift-stay motion with a view to attempting to negotiate an arrangement with Grace that would provide a mechanism for prosecuting the claims of Canadian ZAI claimants.

24.  This led to negotiations with Grace for us to be recognized and appointed as Representative Counsel to act on behalf of all Canadian ZAI claimants with a motion being brought before this Court in that regard, and for the Attorney General of Canada (**"the Crown"**) to agree to support that motion.

25.  We initiated contact and had significant dialogue with Merchant and Aikins, counsel acting in the other proposed class proceedings that had been commenced.

26.  As referenced above, we obtained formal appointment as Representative Counsel from Justice Farley on February 8, 2006.

- 7 -

27.    We negotiated an arrangement with Merchant, being a cooperative and collaborative co-counsel arrangement and Merchant agreed to our appointment as Representative Counsel.

28.    We agreed to act cooperatively with Aikins and Aikins did not oppose our appointment as Representative Counsel. We later came to agreement on terms of a co-counsel arrangement with Aikins.

29.    We considered opposition to various motions brought by Grace seeking extensions of the Initial Order and furthermore negotiated a consent arrangement in the Dextras and Brosseau actions pursuant to which:

(a)    the Crown consented to the motion seeking authorization/certification of the Brosseau action in the event the claims are not resolved pursuant to the CCAA proceeding and Chapter 11 proceedings in the U.S.;

(b)    the effect of such consent was to be suspended until the re-organization of Grace is terminated, or until further order of the court;

(c)    the Crown agreed to support a motion to appoint Lauzon Bélanger Inc. and Scarfone Hawkins LLP as Representative Counsel;

(d)    the stay order was amended to include the Crown on an interim basis;

(e)    if the re-organization of Grace is terminated or the stay lifted, the Superior Court of Quebec would rule on the manner in which the proposed litigation would proceed;

- 8 -

(f)      an order from the Honourable Mr. Justice Chaput of the Quebec Superior Court was obtained confirming this consent arrangement;

30.   After our appointment as Representative Counsel, we retained U.S. counsel to represent the rights of all Canadian ZAI claimants in the U.S. Proceedings.

31.   We participated in a mediation session in New York City before Judge Pointer on March 16 and 17, 2006.

32.   We appeared further before Justice Farley in March, 2006.

33.   We established a database of Canadian ZAI claimants who contacted our offices; obtained disclosure information from Grace and the Crown; monitored publically-available scientific developments in respect of ZAI and asbestos; monitored all developments in the U.S. Proceedings; obtained transcripts from various U.S. Proceedings and reviewed same; and initiated communication and dialogue with the U.S. counsel for various interest groups in the U.S. Proceedings including the Asbestos Personal Injury Claimants' Committee and Asbestos Property Damage Claimants' Committee.

34.   Representative Counsel communicated with many potential ZAI claimants in order to obtain evidence to assist in the prosecution of claims of Canadian claimants.

35.   We considered and analyzed all potential claims available including a possible claim framed as a duty to warn cause of action and as well considered limitation period arguments and other defences available to Grace and the Crown.

36. We prepared and filed a proof of claim in the U.S. Proceedings.

37. We participated telephonically in numerous U.S. Proceedings and had many discussions with our U.S. counsel regarding all issues.

38. In December, 2006 we received and reviewed the U.S. "Science Trial" Memorandum Opinion of U.S. Bankruptcy Court Judge Judith Fitzgerald ("**Judge Fitzgerald**") and analyzed same. We considered the applicability of the "Science Trial" Memorandum Opinion to Canadians, particularly given that Judge Fitzgerald concluded that if left undisturbed in homes, ZAI did not pose an unreasonable risk of harm.

39. We considered a Canadian Litigation Procedure in the interests of all Canadian claimants including working jointly with the Crown to develop and prepare a proposed procedure to deal with Canadian claims.

40. We then attempted to engage Grace in a dialogue regarding a possible Canadian Litigation Procedure and considered all options available to us to allow prosecution of claims on behalf of Canadian ZAI claimants.

41. Our work was very difficult as we did not have any formal standing in the U.S. Proceedings, other than being represented by our U.S. counsel.

42. We had been advised that neither the Asbestos Personal Injury Claimants' Committee nor the Asbestos Property Damage Claimants' Committee had undertaken to represent the interests of Canadian claimants.

- 10 -

43.    Property Damage ("**PD**") and Personal Injury ("**PI**") claimant groups in the U.S.
       Proceedings were separately and independently represented and were at odds
       competing for the same funds via settlement. Some asserted that since we act
       for all Canadian ZAI claimants, both PD and PI, that we were in a conflict of
       interest position given the nature of representation in the U.S. Proceedings.

44.    We returned a motion before this Court in Fall, 2007 seeking an order for the
       establishment of cross-border communication between this Court and Judge
       Fitzgerald and a protocol in that regard as a necessary, preliminary step to
       seeking orders lifting the stay in both the U.S. and in Canada to permit
       prosecution of the various proposed class proceedings.

45.    This motion was discouraged by Grace through counsel but once brought
       resulted in commencement of settlement discussions. The motion was adjourned
       given ongoing settlement discussions.

46.    As Representative Counsel, we were satisfied that we had a sufficient
       evidentiary basis to conduct settlement negotiations.   We understood the
       factual matrix of the claims and the difficult legal issues involved.

47.    When settlement discussions began with Grace, Grace was adamant that it was
       prepared to offer only a notice program for public education and awareness and
       no compensation whatsoever for PD claims. Grace maintained that PI claims
       would be channelled through the Asbestos Trust to ensure fair and equal
       treatment with other asbestos PI claimants.

48.    Grace's very strong position with Representative Counsel was that no claimant could establish liability.

49.    We participated in settlement discussions with Grace on an ongoing and very intensive basis from Fall, 2007 through Spring, 2008. When settlement discussions broke down, we once again returned our Fall, 2007 motion before the Court, although a firm hearing date was not set.

50.    Settlement discussions continued once again and we participated in a mediation session in Delaware before Judge Gross on May 12, 2008. The mediation was not successful, however, settlement discussions continued with Grace and the Crown on a very intensive basis throughout May, June, July, August and into early September finally culminating in the Minutes.

51.    By June 2, 2008, Representative Counsel had reached an agreement in principle with Grace and the Crown which was subject only to the Crown's confirmation of acceptance of terms, which ultimately was not achieved.

52.    While settlement discussions with Grace and the Crown continued, Representative Counsel concluded that the interests of Canadian claimants were best protected by attempting to negotiate a settlement with Grace only, particularly in light of the possibility of an imminent notice program and claims bar date for Canadian ZAI PD claimants, as more particularly referred to below.

## MINUTES OF SETTLEMENT

53.    In the remainder of this affidavit, I will use the terms defined in the Minutes.

- 12 -

54.    The Minutes contemplate settlement of all Canadian ZAI claims, both PI and PD,

with Grace,  on the following terms:

(a)    on the Effective Date of Grace's Plan of Reorganization, Grace will contribute $6,500,000.00 to a fund created for the purpose of administering Canadian ZAI PD claims;

(b)    Grace shall provide in its Plan of Reorganization that any Canadian ZAI PI claimant shall be entitled to file his or her claim against the Asbestos Trust to be created for asbestos personal injury claims and funded in accordance with the PI settlement in the U.S.;

(c)    Representative Counsel agree to vote, on behalf of all Canadian ZAI claimants, in favour of Grace's Plan of Reorganization incorporating the settlement; and

(d)    Representative Counsel shall be entitled to bring a fee application in the U.S. for approval of up to U.S. $350,000.00 fees and expenses incurred by us as Representative Counsel in paying our U.S. counsel.  Grace agrees to support such application to the extent permitted by law and any payments made as authorized by the Court under the fee application will reduce the amount payable to Representative Counsel under the settlement.

- 13 -

55.    The obligation of Grace to pay funds is subject to a number of conditions including obtaining Canadian settlement approval on the terms and conditions outlined in the Minutes.

56.    It is contemplated that the funds paid under the settlement will be distributed as follows:

(a)    $2,000,000.00 (less any amounts paid pursuant to the fee application referenced above) to be paid to Representative Counsel for fees, disbursements and taxes incurred to that point;

(b)    $250,000.00 will be set-aside in a fund for future legal fees and disbursements to be incurred by Representative Counsel in administering the Canadian ZAI settlement;

(c)    up to $850,000.00 will be used to pay a third party Claims Administrator for the administration of Canadian ZAI PD claims;

(d)    up to $150,000.00 will be made available to pay for assistance of an expert in establishing procedures for identification of ZAI, remedial measures that might be undertaken and development of the claim procedure;

(e)    the balance of funds, namely $3,250,000.00 will be made available for distribution to holders of allowed Canadian ZAI PD claims.

- 14 -

57.    PD claimants will be entitled to make a claim to the PD fund and will receive compensation based on their ability to prove ownership of a property insulated with ZAI and that costs were incurred or assumed to identify ZAI, remove it, or otherwise remediate the property.

58.    A key component of the settlement is agreement with respect to establishment of a broad-based media notice program for Canadian ZAI PD claims and a claims bar procedure for such claims.  The cost of this program will be borne by Grace. Grace estimates that the notice program will cost approximately $800,000.00. Representative Counsel have had significant input into designing the notice program, and our input is ongoing.

59.    The notice program is essential to the settlement as it involves public education and awareness in respect of the presence of ZAI in homes.

## RATIONALE FOR SETTLEMENT

60.    The Minutes were negotiated on the basis of Representative Counsel's assessment that a better and more comprehensive program of notice and pubic education was needed for Canadians, coupled with a financial incentive for homeowners to take note of the presence of ZAI in their homes and to remediate.

- 15 -

**Limited Number of Claimants**

61.    Grace obtained an expert report from Roger G. Morse (**"Morse"**) as to the information that was available to Canadian building owners and managers about asbestos-containing materials in buildings in the 1970's, 1980's and into the mid-1990's. Morse concluded that a vast amount of information on asbestos in buildings was available to building owners and managers in the mid to late 1980's and that certainly by 1995, building owners should have been aware of the widespread use of asbestos-containing materials in buildings, the controversy concerning the alleged potential health effects of asbestos in such building material and the development of the asbestos-in-buildings litigation in Canada.

62.    The Morse report indicates that a vast and overwhelming amount of information was available to the Canadian public through a wide variety of sources including Canadian newspaper articles and other sources on an ongoing basis between 1975 and 1995.

63.    This media notice was supplemented by materials available through the Canada Mortgage and Housing Corporation, Health Canada publications and materials, Canadian Medical Association publications, reports from Indian and Northern Affairs Canada, and other sources.

64.    All notices provided including the Canada Mortgage and Housing Corporation materials, Health Canada materials and other materials provided information significantly consistent with the "Science Trial" Memorandum Opinion of Judge

Fitzgerald, i.e. that the presence of ZAI in homes does not pose an unreasonable risk of harm if left undisturbed.

65.    Despite this apparent wide and varied public notice, Representative Counsel, Aikins and Merchant received few inquiries regarding ZAI litigation and the case generated little interest from affected homeowners.

66.    This lack of significant interest seemed to support the "Science Trial" Memorandum Opinion which concluded that left undisturbed, the presence of ZAI in buildings does not pose an unreasonable risk of harm.

67.    Representative Counsel concluded that a better, more comprehensive and time-intensive program of notice and public awareness was needed for Canadians, coupled with a financial incentive for homeowners to take note of the presence of ZAI in their homes and to remediate.

**Limited Funds Available to Satisfy Claims**

68.    Disclosure information obtained revealed that there are approximately 10 times as many properties insulated with ZAI in the U.S. as compared to Canada. Disclosure information obtained in Canada indicated that approximately 245,000 Canadian homes are insulated with ZAI. This would mean that approximately 2.5 million homes are insulated with ZAI in the U.S. Preliminary indications were that complete removal of ZAI from an average residence would involve costs in the range of $10,000.00 to $15,000.00.

69. A successful claim would therefore have resulted in potential liability in excess of $3.6 billion in Canada. When applied in the U.S., based upon the factor of 10 times, the total potential liability would approach $40 billion.

70. It was clear that there would be an enormous shortfall of funds as settlement of all PI claims alone was proposed on the basis of approximately $1.5 billion being paid into an Asbestos Trust against which claims can be made for PI. On the basis of the claimants' theory, the PD claims alone could result in potential liability in the range of $40 billion.

**Legal and Practical Hurdles**

71. The "Science Trial" Memorandum Opinion of Judge Fitzgerald presented a significant impediment to successful prosecution of the claims of Canadian ZAI claimants.

72. A motion was brought in the U.S. Proceedings seeking leave to appeal the "Science Trial" Memorandum Opinion, which motion was denied in March, 2007. A further motion for leave to appeal was denied in April, 2007.

73. Representative Counsel concluded that it was highly unlikely that this Court would rule that the "Science Trial" Memorandum Opinion of Judge Fitzgerald is not binding on Canadians and order a new "Science Trial" in Canada.

74. Representative Counsel were sensitive to the observation of Justice Farley that the insolvency adjudicative proceedings would result in a more efficient process than a full-blown class action proceeding.

75.     Representative Counsel were furthermore concerned that even if a new "Science
        Trial" were held in Canada, the state of product liability law in Canada is less
        favourable to claimants than in the U.S., presenting a further significant obstacle
        to success.

76.     Grace continued to assert the availability of limitation period defences which
        would operate as a complete defence to many of the claims that were being
        asserted by Canadians.

77.     Grace had obtained an expert report of Graeme Mew on Canadian limitation
        issues which report opined that all claims against Grace were time-barred as a
        result of the law of limitations resulting from application of ultimate limitation
        provisions in certain Provinces as well as from the application of normal limitation
        periods in all common law Provinces and Territories in Canada.

78.     Representative Counsel were furthermore concerned that the state of product
        liability law in Canada was less favourable to claimants as compared to the state
        of the law in the U.S. U.S. Courts have been prepared to adopt an approach of a
        strict liability standard, while Canadian Courts have required a finding of
        negligence as a basis for establishing liability.

79.     Representative Counsel were concerned that no Canadian claimant could
        succeed in an allegation that Grace knew or ought to have known at the time of
        manufacture, sale or installation of ZAI that same was defective and presented a
        real and substantial danger to occupants of homes where used.

80.    I attended a mediation before Judge Gross with David Thompson and Matthew G. Moloci in Delaware on May 13, 2008. The mediation did not achieve resolution. It was clear to us as Representative Counsel that an imminent resolution of ZAI claims in the U.S. Proceedings was highly unlikely and that if we were going to attempt to protect the interests of Canadian claimants, we would have to do so on our own independent of efforts in the U.S. Proceedings, and strictly in the interests of Canadian claimants.

81.    In spring, 2008, Grace filed motions in the U.S. Proceedings to establish a bar date for ZAI claims in the U.S. and in Canada. Various pleadings were filed in opposition to the motion including pleadings prepared by our U.S. counsel on our instructions.

82.    As a result of participation in the U.S. Proceedings, Representative Counsel were concerned that Judge Fitzgerald was inclined to set a bar date with respect to all ZAI PD claims of Canadians, which bar date would allow a relatively short period for the filing of claims, which, in the opinion of Representative Counsel, would be insufficient and unsatisfactory in the circumstances.

83.    On June 17, 2008, Judge Fitzgerald set a claims bar date for U.S. ZAI PD claimants of October 31, 2008.

84.    Representative Counsel were furthermore concerned that the form of the notice program proposed, along with an imminent claims bar date, was likely to be accepted by Judge Fitzgerald and might have been insufficient and inadequate in terms of providing proper and reasonable notice to Canadian claimants.

- 20 -

85.    The U.S. process contemplated a claims bar date to identify potential ZAI PD claims and thereafter a review of the identified claims with Grace being at liberty to attempt to defeat all such claims based on any and all available defences.

86.    Representative Counsel were concerned that under such a process not only would there be very few identified Canadian ZAI PD claims, but indeed that all such claims could possibly be defeated.

87.    The notice program and claims bar date for Canadian ZAI PD claims negotiated as part of settlement are enhanced and improved as compared to what was proposed by Grace in its motion in the U.S. Proceedings. The claims bar date is proposed to be August 31, 2009 which, if approved by Judge Fitzgerald (scheduled hearing for October 20, 2008), will provide a claims period of approximately 8 months for Canadians, which, in the view of Representative Counsel, is fair and reasonable in the circumstances.

88.    Representative Counsel were furthermore concerned that Grace's position that the "best case" scenario on behalf of all Canadian ZAI PD claimants was that removal of ZAI was not necessary and that sealing or other containment of the ZAI was more than sufficient in the circumstances.

89.    Representative Counsel also had regard to the unfavourable decision in *Privest Properties Ltd. v. Foundation Co. of Canada Ltd.* [1997] B.C.J. No. 427, as well as the state of Canadian law with respect to "stigma" damages.

90.    Representative Counsel concluded that there was a low likelihood that this Court would be prepared to lift the stay contained in the Initial Order to allow the prosecution of the Dextras and Brosseau actions and/or proposed Canadian class proceedings.

91.    Representative Counsel furthermore concluded that there was a low likelihood that Judge Fitzgerald would lift the U.S. stay order to allow prosecution of proposed class proceedings, particularly in light of her "Science Trial" Memorandum Opinion.

92.    Representative Counsel were furthermore extremely concerned about the future expense and duration of litigation including enormous uncertainty as to possible recovery and the real prospect that Canadian claimants would recover nothing in the long run.

93.    Representative Counsel concluded that the interests of Canadian ZAI claimants could best be protected by attempting to negotiate a resolution with Grace which would see a lump sum payment made, with a fair and consistent distribution process on a uniform basis, coupled with a broad-based media and direct notice program.

94.    All settlement discussions conducted by Representative Counsel were guided by an analysis of the facts and law applicable to the claims taking into account the burden and expense of litigation, including the risks and uncertainties associated with a protracted trial, possible appeals and the fair, cost-effective and assured method of resolving the claims of Canadian ZAI claimants.

- 22 -

95.  The Minutes reflect a settlement that is substantially more favourable than the settlement proposals first put forward by Grace.

96.  The Minutes are the result of extensive negotiations, considerable risk assessment, significant investigation, study and review, all of which are aided by the benefit of the experience of Representative Counsel in other complex litigation.

97.  Representing the interests of all Canadian ZAI claimants as Representative Counsel has been incredibly complex, time-intensive and an enormous responsibility which Representative Counsel took very seriously.

98.  Representative Counsel believe that considering the issues set-out above, the proposed settlement as reflected in the Minutes is fair, reasonable and in the best interests of Canadian ZAI claimants.

99.  Representative Counsel recommend approval of this settlement to this Honourable Court.


**THE CROWN**

100.  Several of the proposed class proceedings alleged liability against the Crown. Liability is alleged in those actions either on the basis that the Crown promoted and encouraged the use of ZAI in Canadian homes as part of an energy rebate

- 23 -

program, or alternatively, on the basis that the Crown built and owned housing for Aboriginal persons and Crown employees, which housing contained ZAI.

101.   Negotiation of settlement involved Crown participation and attempts were made to enter into an arrangement that involved Crown participation both by way of contribution and as a beneficiary of any release.

102.   The negotiations were long and arduous, however, ultimately Representative Counsel determined that an arrangement with the Crown would not be possible.

103.   Representative Counsel have indicated to the Crown that its last settlement proposal is not acceptable but that Representative Counsel remain open to a dialogue with the Crown regarding possible settlement of Crown liability. Discussions are ongoing.

104.   Representative Counsel intend to undertake further work including a motion to be brought before this Court seeking to lift the stay of proceedings against the Crown and allowing prosecution of actions which assert several Crown liability in respect of ZAI. This settlement preserves the ability of such claimants to pursue action against the Crown. Article 13 of the Minutes specifically addresses this issue and it is the intention to preserve and pursue claims against the Crown which assert several Crown liability.

105.   As part of settlement, Representative Counsel have advised the Crown of our intention to seek an order of this Court compelling the Crown to disclose certain information relating to specific homes and homeowners who may have ZAI or

- 24 -

vermiculite attic insulation in their homes. The Crown has indicated that an order of the Court is required in order to compel production of that information.

106. The Crown is a Canadian ZAI PD claimant. The Crown does have and intends to assert claims against the PD fund. Representative Counsel were aware of these claims during the negotiation process and took them into account in agreeing to final settlement.

## REPRESENTATIVE COUNSEL FEES AND DISBURSEMENTS

107. Representative counsel will receive payment of fees, disbursements and applicable taxes as part of the settlement fund paid by Grace under the Minutes.

108. When the Dextras and Brosseau actions were commenced and when Representative Counsel began their work on this matter and agreed to be appointed by Court Order, there was at that time no prospect of settlement and enormous uncertainty as to any recovery.

109. Representative Counsel agreed to Court appointment without any assurance whatsoever of payment. In fact, the appointment Order indicates that Canadian claimants shall be responsible for the fees and disbursements of Representative Counsel subject to further order of this Court.

110. Settlement with Grace was achieved without any claimant having to attend an examination for discovery or being subject to documentary disclosure requests.

- 25 -

111. The negotiations, the form of the Minutes and the process demonstrate the skill and experience of Representative Counsel.

112. Representative Counsel believe that the result achieved on behalf of Canadian ZAI claimants is reasonable under the circumstances.

113. To date, Lauzon Belanger Inc. have spent 1,243.89 hours on this matter, having an approximate total value of $400,000.00 at normal hourly rates for this type of work. In addition, Lauzon Belanger Inc. have incurred disbursements to date totalling approximately $234,984.23.

114. To date, Scarfone Hawkins [LLP] have spent 1,250.75 hours on this matter, having an approximate total value of $500,000.00 at normal hourly rates for this type of work. In addition, Scarfone Hawkins [LLP] have incurred disbursements to date totalling approximately $116,000.00.

115. I am advised that Aikins has spent 1,015.6 hours on this matter to date having a value of approximately $300,000.00 at normal hourly rates for this type of work. I am advised that Aikins has incurred disbursements to date totalling approximately $102,168.11.

116. I am advised that Merchant has spent approximately 550 hours on this matter to date having a value of approximately $255,000.00 at normal hourly rates for this type of work. I am advised that Merchant has incurred disbursements to date totalling approximately $46,203.00.

117. To date, Representative Counsel have paid or incurred expenses in our engagement of our U.S. counsel approximating $350,000.00, which is included in the disbursements incurred by us.

118. It is anticipated and contemplated that Representative Counsel will spend very significant additional time in this matter going forward.

## FUTURE REPRESENTATIVE COUNSEL WORK

119. It is anticipated that Representative Counsel will continue to represent the interests of all Canadian ZAI claimants and take future significant steps in that regard. Those steps will include assistance in administrating the Canadian ZAI PD claims; assisting claimants and answering inquiries; participation in the U.S. Proceedings including approval of the proposed notice program and ultimate approval of Grace's Plan of Reorganization; communicating with claimants; assisting PI claimants in respect of claims against the Asbestos Trust; coordinating with the claims administrator for the administration of Canadian ZAI PD claims; retaining and consulting with a remediation expert to establish procedures for identification of ZAI and remedial measures that might be undertaken; as well as development of the Canadian ZAI PD claims procedure.

- 27 -

120.    I make this affidavit in support of the motion for settlement approval.

**SWORN BEFORE ME** at the
City of Montreal, in the
Province of Quebec this 25th
day of September, 2008.

_Commissioner for Taking Affidavits
(or as may be)_

MICHEL BÉLANGER

This is Exhibit "A" referred to in the Affidavit of Michel
Belanger sworn September 25, 2008

_____
Commissioner for Taking Affidavits (or as may be)

55,827
Diane Blanchette

# Yves Lauzon

Telephone : 514 844-4646
Fax : 514 844-7009
Email: ylauzon@lauzonbelanger.qc.ca

Mr. Lauzon received his diploma in law from Université de Montréal in 1972 and was admitted to the Québec Bar in 1974. Mr. Lauzon is involved in the area of class actions since the coming into force of this procedure in 1979, as lawyer for the Fonds d'aide aux recours collectif first and then in private practice.

**Languages**

French and English

**Training**

Admitted to the Québec Bar (1974)

**Professional affiliations**

Member of the Québec Bar
Member of the Canadian Bar Association

**Conferences**

Mr. Lauzon has participated in many conferences, symposiums and committees on class actions for 25 years on a regular basis and has been a speaker at many conferences in Canada and abroad.

He was invited as an expert witness before a French Government committee whose mandate it was to make recommendations on the adoption of a law on collective actions in Paris.

**Publications**

- **Recours collectif**, Gérald R. Tremblay, c.r. (co-author), collection Aide-Mémoire, no. 104, 1st edition, 1988.
- **Le recours collectif québécois**, Louise Ducharme (co-author), Les éditions Yvon Blais Inc., 1988.
- **Le recours collectif**, (Points de droit), Les Éditions Yvon Blais Inc., 2001.
- **La classe nationale: Critères d'autorisation** in Développement récent sur les recours collectifs, Service de la formation permanente du Barreau du Québec, 2005, volume 232, pages 35 to 53.

## Michel Bélanger

Telephone:  (514.) 844-4646
Fax : (514) 844-7009
@: mbelanger@lauzonbelanger.qc.ca

Mr. Michel Bélanger is specialized in class actions and environmental law.  In 1996, he founded, with his associate Yves Lauzon, the law firm of Lauzon Bélanger inc. He possesses training as a lawyer and notary, has  a masters in public law from 'Université de Montréal and a diploma in specialized studies in environmental law and territorial management from Université Robert Schuman, (Strasbourg, France).

He teaches environmental law at École Polytechnique de Montréal and at UQAM.  He is an additional commissioner at the Bureau d'audiences publiques sur l'environnement (BAPE) and in this function he sat as commissioner for the generic hearing on residual waste (1996-1997).  He was senior research associate at the Chaire en éthique et environnement Hydro-Québec/McGill (1993-1996).

He is vice-president and co-founder of the Centre québécois du droit de l'environnement, and vice-president of Nature Quebec..

**Languages**
French and English

**Professional Training**

Université Robert Schuman – Strasbourg (1992)
Environmental Law Centre
**Diploma in specialized studies DESS – Environmental law and territorial management**

Université Robert Schuman – Strasbourg (1992)
**Diploma in pollution and nuisance**

Université de Montréal (1990)
Faculty of Law – Graduate studies
**Masters in public law**


Quebec Bar (1988)
Professional training
**Professional Diploma**

Université d'Ottawa (1984)
Faculty of Law – Graduate studies
**Diploma in notarial law**

Université d'Ottawa (1983)
Faculty of law
**Bachelor of law**

**Professional affiliations**

Member of the Québec Bar
Member of the Canadian Bar Association

**Publications**

- *«Clauses d'ordre environnemental pour offre d'achat et acte de vente d'immeuble ou terrain»*, amendements apportés au document de 1996, Répertoire de la Chambre des Notaires du Québec, Vente (2008).

- *« Les recours collectifs intentés devant la Cour fédérale du Canada »*, dans Service de la formation permanente du Barreau du Québec. *Les récents développements en recours collectifs*, 2005.

- *«Clauses d'ordre environnemental pour offre d'achat et acte de vente d'immeuble ou terrain»*, amendements apportés au document de 1996, Répertoire de la Chambre des Notaires du Québec, Vente (2004).

- *« Contrôle et responsabilité de l'État en environnement »*, dans Service de la formation permanente du Barreau du Québec, *Les récents développements en droit de l'environnement 2000,* Les Éditions Yvon Blais Inc., 2000, pp. 145 à 222 .

- *«Lorsque la catastrophe environnementale n'est plus un cas fortuit»*, dans, Service de la formation permanente du Barreau du Québec, *Les catastrophes naturelles et l'état du droit,* Les Éditions Yvon Blais Inc., 1998, pp. 39 à 124 .

- *«Clauses d'ordre environnemental pour offre d'achat et acte de vente d'immeuble ou terrain»*, Répertoire de la Chambre des Notaires du Québec, Vente (1996).

- *«Considérations environnementales dans les transactions immobilières»* (1995) 1 Cours de perfectionnement du notariat  327 ;

- *«La responsabilité de l'État et de ses sociétés mandataires en environnement»*, Cowansville, Les Éditions Yvon Blais Inc., 1994, 195 p.

- *«La responsabilité de l'État et ses sociétés en environnement»*, dans Institut Canadien d'études juridiques supérieures, Droits de la personne: l'émergence de droits nouveaux, Montréal, Les Éditions Yvon Blais Inc, 1993, pp. 415-439.

- *«L'utilité juridique d'une charte des droits à un environnement de qualité»*, dans Monique ROSS et J. Owen SAUNDERS éd., Growing Demands on a Shrinking Heritage: Managing Resource-use conflicts, Institut canadien du droit des ressources, Calgary, 1992, 389-407.

- *«La faute civile en matière de responsabilité pour dommages environnementaux»*, dans Formation permanente du Barreau du Québec, Développements récents en droit de l'environnement, 1991, Cowansville, Les Éditions Yvon Blais Inc., 1991, 149.

- *«Les récents amendements en droit de l'environnement : application du principe «pollueur-payeur» ou «notaire-payeur» ?»*, (1990) 2 Cours de perfectionnement du notariat, 467.

- *La reconnaissance d'un droit fondamental à un environnement de qualité*, Montréal, Les Éditions Thémis, 1990, 175 pages.

- *«Le droit de l'environnement et le citoyen»*, dans Département de santé communautaire (D.S.C.), Hôpital de l'Enfant-Jésus, Vivre avec son environnement, Québec, Édition produite par la Direction des Communications du ministère de la Santé et des Services Sociaux, 1990, 344.

- *«Environnement et conservation: érosion du concept de propriété privée»* (1988) Recueil de droit immobilier, 467.

- *«Le droit de l'environnement et la pratique notariale à l'égard des terrains contaminés»* (1988) 5 Cours de perfectionnement du notariat, 375.

**Conferences**

- **Part-time lecturer, Université Laval (Québec)**, Faculty of Law, Masters in Environmental Law, *"Droit et recours privés en environnement (DRT 66981)"* since 2008.

- **Part-time lecturer, École Polytechnique de Montréal**, *«Environmental law (SSH 5402)»*, 1990 to the present.

- **Part-time lecturer, Université du Québec à Montréal**, *«Environmental law»* since 2002;

- Speaker at the Canadian Bar Association conference, ***«Les développements récents en droit de l'environnement – Point de vue sur l'affaire Ciment du St-Laurent»***, Québec, August 18, 2008;

- Conférencier dans le cadre du cours de formation professionnelle pour chimiste, Université de Montréal, Département de chimie, depuis 2006;

- Conférencier au congrès de l'Association canadienne-française pour l'avancement des sciences (ACFAS), intitulé ***«Environnement et engagement citoyen»***, Chicoutimi, 8,9 et 10 mai 2007.

- Speaker at the Quebec Order of Chartered Appraisers, **Le recours collectif en environnement et le rôle de l'évaluateur agréé**, October 5-7, 2006;

- Co-speaker at the Quebec Bar - Continuing Education Services, **Les recours collectifs intentés devant la Cour fédérale du Canada**, Les développements récents en recours collectifs, 2005;

- Speaker at the Canadian Institute conference « **Les développements récents sur la procédure fédérale en matière de recours collectifs : tout ce que vous devez savoir »**, February 2005 ;

- Co-presenter at the Insight Information Inc. conference, *«Le recours collectif et le droit de l'environnement: les points de vue de la demande et de la défense»*, January 24 and 25, 2005.

- Speaker at Insight Information Inc. conference, *«Le recours collectif : mécanismes de résolution des conflits environnementaux»*, December 1 and 2, 2004.

- Speaker at the Canadian Institute conference *«La conférence de règlement à l'amiable en recours collectif»*, March 27 and 28 2003.

- Speaker for the Chambre des notaires du Québec's ongoing professional training, *«Les nouvelles règles en matière de contamination de sols : moins de victimes, plus de responsables»*, November 2002.

- Speaker at the Quebec Bar Association's ongoing professional training program *«Les récents développements en droit de l'environnement – contrôle et responsabilité de l'état en environnement»*, Montréal, May 2000.

- Speaker at the International Research Institute, *«Connaissez parfaitement vos responsabilités, celles des autorités publiques et des tiers en cas de désastre»*, Montréal, April, 26, 27 and 28, 1999.

- Speaker at the Quebec Bar Association's ongoing professional training symposium, *«Les catastrophes naturelles et l'état du droit – lorsque la catastrophe environnementale n'est plus un cas fortuit»*, Montréal, December 4, 1998.

- Speaker at the Bar Convention, *«Le droit de l'environnement à l'ère des catastrophes»*, Charlevoix, June 4, 5, and 6, 1998.

- Conference for the Canadian Institute, *«Les développements en matière de droit de l'environnement au Québec et leurs impacts sur la gestion environnementale de votre entreprise»*, May 20 and 21, 1998.

- Speaker at the 63rd annual *Association canadienne-française pour l'avancement des sciences (ACFAS)* Convention entitled *«Comment opérationnaliser le développement durable au sein de l'entreprise»*, Chicoutimi, May 26 and 27, 1995.

- Presenter at the International conference on *«La dimension sociale de l'intégration continentale»*, organized by the *Réseau québécois sur l'intégration continentale (RQIC)*, Montréal, May 11-13, 1995.

- Speaker in the context of notarial refresher courses, 54th session on *«Droit de l'environnement»*, Montréal, March 24 and 25, 1995.

- Part-time lecturer, Faculty of Law, McGill University, *« La responsabilité pour l'environnement »*, 1993-1994.

- President and reporter for the International Law Commission at the 90th Convention of notaires of France, Nantes, France, May 1994.

- Speaker in the context of thematic conferences organized by the Department of social and preventive medecine of Université Laval on *«Le droit de l'environnement : l'état de la situation et tendances actuelles au Québec»*, February 24, 1994.

- Presenter at the environmental law course given by the *Centre d'étude du droit de l'environnement*, Faculté de droit des facultés universitaires Saint-Louis, Bruxelles, Belgique, 27 mai 1993.

- Presenter at the The Canadian Institute : *«L'aspect environnemental des transactions immobilières»*, Montréal, November 23 and 24, 1992.

- Speaker at the Canadian Institute for Advanced Legal Studies Conference (*Journées Strasbourgeoises*) on : *«La responsabilité de l'État et de ses sociétés mandataires en environnement»*, Strasbourg, France, July 12-18, 1992.

- Speaker at the *Union Internationale du Notariat Latin* Convention, on *«La protection juridique des habitats et le rôle du notariat»*, Carthagene, Colombia, April 27 to May 4, 1992.

- Speaker at the *Ordre des Ingénieurs du Québec* conference, Plein Sud regional division on : *«La législation environnementale en matière d'enfouissement ou d'incinération de déchets»*, Longueuil, March 11, 1992.

- Speaker at the conference organized by the University of Ottawa, Faculty of civil law, on : *«Perspectives de l'État actuel et de l'évolution future de la réglementation environnementale : vers une meilleure concertation»*, Ottawa, February 6, 1992.

- Speaker at the XIXe annual regional conference of the *Association québécoise des techniques de l'eau (A.Q.T.E)* Mauricie - Bois-Franc region : *«Nettoyage et décontamination des sites industriels»*, Trois-Rivières, November 21, 1991.

- Presenter at the *Confédération des syndicats nationaux (C.S.N.)* symposium: *«L'environnement et les syndicats - droits et recours en matière d'environnement»*, Montréal, November 20, 1991.

- Speaker for The Canadian Institute: *«L'aspect environnemental des transactions immobilières»*, Montréal, October 23 and 24, 1991.

- Speaker at the *Institut canadien du droit des ressources* 5th conference: *«L'utilité juridique d'une charte des droits à un environnement de qualité»*, Ottawa, May 9-11, 1991.

- Speaker at the Quebec Bar's Ongoing professional training service Convention : *«Les récents développements en droit de l'environnement - La faute en matière de responsabilité civile pour dommages environnementaux»*, Montréal and Québec, January 24 and 25, 1991.

- Part-time lecturer, Université de Montréal, Faculty of Continuing Education : *«Droit de l'environnement»*, (DRT-3304 G-A), 1990-1991.

- Speaker during refresher courses in notarial law : *«Les récents développements en droit de l'environnement: l'application du principe pollueur-payeur ou notaire-payeur?»*, Québec, November 3 and 4, 1990.

- Presenter at Environment Canada's Canadian Wildlife Service's annual convention: *«Les aspects juridiques associés à la conservation des habitats»*, Québec, October 27 and 28, 1990.

- Presenter at the Canadian Environmental Network's annual convention on the environment: *«La Charte des droits à un environnement de qualité»*, Montréal, October 12, 1990.

- Presenter at McGill's Envrionmental Law Association Symposium : *«Défis juridiques et politiques: comment vivre une ère environnementale»*, Montréal, October 10 and 11, 1990.

- Presenter at the symposium : *«Le droit en question - La déjudiciarisation : comment remédier à l'inflation judiciaire»*, «Droit et Environnement» organized by the Agora, Centre Sheraton, Montréal, April 27 and 28, 1990.

- Presenter at The Canadian Institute : *«Implications juridiques du développement de sites industriels contaminés»*, Montréal,  October 26, 1989.

- Presenter at the Canadian Bar Association's annual convention  : *«Environnement et conservation: Érosion du concept de propriété privée»*, Montréal, April 7, 1989.

- Presenter during refresher notarial law courses: *«Le droit de l'environnement et la pratique notariale à l'égard des terrains contaminés»*, Québec, November 4 and 5, 1988.

- Part-time lecturer, University of Ottawa, Faculty of law, Diploma in notarial law: *«Les radiations»* (NOT-5605), 1987-1988, 1988-1989 school years.

**Para-professional activities**

President of Nature Québec since 2007.

Vice-president of *Union québécoise pour la conservation de la nature (U.Q.C.N.)* (1989-2006).

Founder and administrator of the *Centre québécois du droit de l'environnement (C.Q.D.E.)* (since January 1989).

Ad hoc commissioner, *Bureau d'audiences publiques sur l'environnement (B.A.P.E.)* (1991-2007) (since September 1991), having namely acted as commissioner for the generic hearing on residual waste (1996-1997).

Member of the Advisory committee on environmental protection (ACEP) for Environment Canada  and Industry, Science and Technology Canada (from 1994 to 1997).

Director of masters thesis for Mtre Yves Corriveau, for the masters program in environment and prevention at Université de Montréal, Mrs. Véronique Meunier, for the master law program at Université de Montréal.

Consultant and person in charge of various memoranda by the *Chambre des Notaires du Québec*, on environmental law (since 1991).

Member of the advisory committee of the *Centre de développement d'agrobiologie du Québec* (1990-1993).

Member of the legal committee of the *Fondation québécoise en environnement* (1988 - 1990).

Member of the editorial board of the Québec Bar for the memorandum on Bill C-78 on the federal environmental evaluation process (October to December 1990).

Quebec Bar editorial board coordinator for the memorandum on the legal aspects of hazardous waste management in Québec, presented to the *Commission d'enquête sur les déchets dangereux (commission Charbonneau)*, June 1990.

Member of the hazardous waste committee of *Union des Municipalités du Québec (U.M.Q.)* (November 1989 to May 1990).

Consultant to the *Conseil consultatif de l'environnement du Gouvernement du Québec*, relative to the study of the legal point of view of *«Charte de la Qualité de la Vie»* (February 1988 to December 1989).

Consultant and person in charge of writing a thesis for the *Chambre des Notaires du Québec*, on the public review of the *Conseil de la conservation et de l'environnement du Gouvernement du Québec*, January 1989: «Une stratégie de la conservation et du développement.»

Student representative at the Quebec Bar School, Ottawa Centre (1987-1988).

President and person in charge of the 4th year of notarial school, University of Ottawa (1983-1984).

# Careen Hannouche

Telephone: 514 844-4646
Fax: 514 844-7009
E-mail: careen.hannouche@lauzonbelanger.qc.ca

Ms. Hannouche joined Lauzon Bélanger as a student at law in 2003 and as an articling student in 2005. She completed her civil law degree in 2003 and her common law degree in 2004. She was admitted to the Québec Bar in 2005 and the Law Society of Upper Canada in 2007. She is implicated in pleadings before the Court, written procedures and implementation of settlements and this in all the class actions taken by the firm.

## Languages

French, English, Italian

## Professional Training

Ontario Bar (2007)
Admitted to the Québec Bar in 2005
LL.B. University of Ottawa- National Program in common law (2004)
Certificate from the World Intellectual Property (WIPO) Worldwide Academy Distance Learning Program for the General Course on Intellectual Property
LL.B. Université de Montréal (2003)

## Professional affiliations

Member of the Law Society of Upper Canada
Member of the Québec Bar
Member of the Canadian Bar Association
Member of the Young Montreal Bar Association

## Conferences

Speaker at the Canadian Bar Association's, Québec Division, Third Conference on class actions –« Dans l'intérêt des membres : application du principe de protection des membres du groupe » - May 8, 2008.

Collaboration with Mr. Lauzon and Mr. Bélanger in various conferences on class actions.

## Publications

Author : « Dans l'intérêt des membres : application du principe de protection des membres du groupe » in Actes de la formation juridique permanente, Association du Barreau Canadien, Division Québec, Éditions Yvon Blais, 2008, Volume 2, pages 23 to 47.

**Para-professional Activities**
President of the executive board of the Junior Associates of the Cedars Cancer Institute
Member of the Association des diplômés en droit de l'Université de Montréal (ADDUM)

This is Exhibit "B" referred to in the Affidavit of Michel
Belanger sworn September 25, 2008

_Commissioner for Taking Affidavits (or as may be)_

55,827
Diane Blanchette

# DAVID THOMPSON

# CURRICULUM VITAE

## WORK EXPERIENCE

February, 2001
to present

Barrister and Solicitor
SCARFONE HAWKINS LLP
Barristers and Solicitors
One James Street South, 14th Floor
Hamilton, Ontario
L8N 3P9

Partner

Civil Litigation Practice with a strong emphasis on Plaintiff Class Action work, and Commercial Litigation. Broad exposure to a wide range of litigation matters including class proceedings, breach of contract, shareholder and corporate disputes, injunctions and mandatory orders, fiduciary duties, negligence, misrepresentation and detrimental reliance, aborted real estate and business transactions, wrongful dismissal and labour disputes, insurance claims and debt collection.

**Responsibilities**

Client contact, determined problem areas, analyzed problems, recommended and implemented solutions. Negotiated settlements to conflict, participated in numerous interlocutory proceedings in Ontario Superior Court of Justice, numerous trials in Ontario Superior Court of Justice, etc., and appeal proceedings in the Ontario Court of Appeal and Divisional Court.

Also appeared before numerous and various administrative tribunals/committees including Land Division Committees, Academic Appeals Committees, Workers' Safety and Insurance Board of Ontario, Liquor Licence Board of Ontario and Commercial Registration Appeals Tribunal.

| February, 1988 to January, 2001 | Barrister and Solicitor<br>BROWN, SCARFONE, HAWKINS<br>Barristers and Solicitors<br>1050-120 King Street West<br>Hamilton, Ontario<br>L8N 3P9 |
|---|---|

Associate February 1988 - January 1993
Partner February 1993 - January, 2001

| June, 1987 to September, 1987 | Student-at-Law<br>STEPHAN M. FRANKEL<br>Barrister and Solicitor<br>4200-100 Main Street East<br>Hamilton, Ontario<br>L8N 3W6 |
|---|---|

Exposure to various areas of law including criminal law, civil litigation and landlord and tenant law.

**Responsibilities**

Drafting pleadings, and other documents, research and preparing memoranda of law, meeting clients, daily attendance in Ontario Court (Provincial Division) and weekly attendance in Ontario Court (General Division) on interlocutory motions and Landlord and Tenant trials.

| June, 1986 to June, 1987 | Articled Student-at-Law<br>EVANS, PHILP<br>Barristers and Solicitors<br>1 King Street West<br>16th Floor<br>Hamilton, Ontario<br>L8P 1A4 |
|---|---|

Exposure to various areas of law including civil litigation, family law, criminal law, real estate and wills, labour law and administrative law.

**Responsibilities**

Drafting pleadings and other legal documents, researching and preparing memoranda of law, meeting clients, full carriage of Small Claims Court files, attendance on motions

and adjournments in Ontario Court (General Division) and attendance on motions and adjournments in Ontario Court (Provincial Division)

Summer, 1985

Student-at-Law/Clerk
Unified Family Court
55 Main Street West
Hamilton, Ontario
L8P 1H4
Clerk for Justices Beckett, Goodearle, Mendes da Costa, Steinberg and Van Duzer.

**Responsibilities**

Legal research, the provision of legal opinions, and the preparation of briefs and memoranda for the five Justices.

Summer, 1984

Student-at-Law/Clerk
Unified Family Court
55 Main Street West
Hamilton, Ontario
L8P 1H4

Clerk for Justices Gravely, Steinberg and Van Duzer.

**Responsibilities**

Legal research, the provision of legal opinions, and the preparation of briefs and memoranda for the three Justices.

## EDUCATION

September, 1987 to
February, 1988

Law Society of Upper Canada
Bar Admission Course
Called to the Bar as a Barrister and Solicitor for the Province of Ontario:
April, 1988

1983 to 1986

Osgoode Hall Law School
Overall Average:  B
Bachelor of Laws Degree Obtained:  May, 1986

| 1980 to 1983 | McMaster University<br>Overall Average: A<br>Bachelor of Arts Degree Obtained:  May, 1983<br>Graduation Standing: 1 - <u>Summa Cum Laude</u><br>Major:  Political Science |
| 1975 to 1980 | Cathedral Boys' High School<br>Overall Average: A<br>S.S.H.G.D. Obtained: January, 1980 |

## ACADEMIC AWARDS

| 1982 to 1983 | Edwin Marwin Dalley Memorial Scholarship<br>McMaster University Dean's Honour List |
| 1981 to 1982 | Edwin Marwin Dalley Memorial Scholarship<br>McMaster University Dean's Honour List |
| 1980 to 1981 | McMaster University Chancellors' Scholarship<br>McMaster University Dean's Honour List |
| 1979 to 1980 | Ontario Scholarship<br>The Permanent Annual Student Writing Award<br>Reader's Digest Award<br>High School Class Valedictorian |

## PERSONAL/PROFESSIONAL ACHIEVEMENTS

| 1979 | Class Valedictorian - Graduating Class - Cathedral Boys' High School. |
| 1983 | Duty Counsel - Osgoode Hall Community Legal Aid Services Programme. |
| 1984 to 1985 | Assisted Justice David M. Steinberg of the Unified Family Court with research for his text, <u>Family Law in the Family Courts</u>, Carswell, 1986. |

| | |
|---|---|
| 1989 | Article published, February, 1989<br>Hamilton Law Association Newsmagazine - "Arguing Motions in District and Supreme Court: A Back to Basics Guide". |
| | Articles published, June, July/August, September and December, 1989<br>Let's Talk Business Magazine - Hamilton and Niagara Editions - Four part series on Business Contracts. |
| | Guest Speaker - Cathedral Girls' High School<br>Topic - Tort Law and Civil Litigation. |
| | Guest Speaker - Hamilton Catholic High Schools<br>Conducted mock civil trial. |
| | Guest Speaker - C.H.M.L. Radio<br>John Hardy Show "Your Day in Court". |
| | Travelled to Tokyo, Japan to conduct cross-examinations on a complex commercial litigation matter involving a heavy equipment distributorship agreement. Multi-million dollar settlement ultimately achieved. |
| 1990 | Member - Editorial Board, Hamilton Law Association Newsmagazine. |
| | Member - Library Committee, Hamilton Law Association. |
| | Article published, January, 1990<br>Hamilton Law Association Newsmagazine<br>"Far Eastern Observations". |
| | Article published, June/July, 1990<br>Hamilton Law Association Newsmagazine<br>"Use of Factums in Motions Court". |
| | Article published, September, 1990<br>Hamilton Law Association Newsmagazine<br>"Court Reform in the Central South Region". |

1991                              Member - Editorial Board, Hamilton Law Association
                                  Newsmagazine.

                                  Vice-Chairman - Library Committee, Hamilton Law
                                  Association.

                                  Article published, May, 1991
                                  Hamilton Law Association Newsmagazine
                                  "Civil Pre-Trials - Maximizing Their Effectiveness".

                                  Article published, September, 1991
                                  Hamilton Law Association Newsmagazine
                                  "Interlocutory Injunction Applications - Practical Tips".

                                  Guest speaker - Kelsey's Restaurant Managers' Meeting
                                  Tort Liability for Serving Liquor in the Hospital Industry.

                                  Guest speaker - LMC Management Consultants
                                  Employment Law Seminar
                                  Fiduciary Obligations of Employees.

1992                              Trustee of the Board of Directors,
                                  Hamilton Law Association.

                                  Member - Editorial Board,
                                  The Hamilton Lawyer Newsmagazine.

                                  Member - Library Committee,
                                  Hamilton Law Association.

                                  Chairman - Young Lawyers' and Articling Students'
                                  Committee
                                  Hamilton Law Association.

                                  Article published, September, 1992
                                  Contact Magazine
                                  "What to Expect in a Lawsuit".

                                  Article published, September, 1992
                                  The Hamilton Lawyer Newsmagazine
                                  "Fiduciary Obligations of Real Estate Agents".

| | |
|---|---|
| 1993 | Trustee of the Board of Directors,<br>Hamilton Law Association<br>Editor-In-Chief,<br>The Hamilton Lawyer Newsmagazine. |
| | Member - Library Committee,<br>Hamilton Law Association. |
| | Regular contributor to The Hamilton Lawyer Newsmagazine,<br>Restaurant Review column. |
| | Guest speaker - Hamilton Law Association,<br>Practical Tips for the Courtroom. |
| 1994 | Trustee of the Board of Directors,<br>Hamilton Law Association. |
| | Editor-In-Chief,<br>The Hamilton Lawyer Newsmagazine. |
| | Member - Library Committee,<br>Hamilton Law Association. |
| | Guest speaker - Hamilton Law Association,<br>Evidence:  A Practical Guide. |
| | Guest Speaker - C.F.M.U. Radio<br>"Court Process and Procedure". |
| | Lecturer/Speaker - Ontario Trial Lawyers Association Spring<br>Conference<br>"Breach of Fiduciary Duty". |
| 1995 | Trustee of the Board of Directors,<br>Hamilton Law Association. |
| | Member - Editorial Board<br>The Hamilton Lawyer Newsmagazine. |
| | Guest Speaker - Hamilton Law Association<br>Preparing Witnesses to Give Evidence at Trial. |
| | Guest Speaker - CHCH T.V.<br>2 on-air television appearances. |

| 1996 | Member - Advocates' Society. |
| | Member - Editorial Board<br>The Hamilton Lawyer Newsmagazine. |
| | Guest Speaker - Hamilton Law Association<br>Arguing Motions in Ontario Court (General Division). |
| | Guest Speaker - The Advocates' Society<br>Alternative Dispute Resolution. |
| | Guest Speaker - The Law Society of Upper Canada, The Ontario Court of Justice and The Canadian Bar Association - Ontario<br>The Simplified Rules of Civil Procedure. |
| 1997 | Member - Advocates' Society. |
| | Member - Ontario Trial Lawyers Association. |
| | Member - American Trial Lawyers Association. |
| | Retained as Class Counsel on several large complex claims under the Class Proceedings Act acting for hundreds of thousands of class members in claims involving millions of dollars. |
| | Received significant media exposure regarding the Class Action claims including Articles in The Globe & Mail, The Financial Post, Toronto Star, etc. |
| 1998 | Member - Advocates' Society. |
| | Member - Ontario Trial Lawyers Association. |
| | Member - American Trial Lawyers Association. |
| | Participation in Alberta Trial Lawyers Conference ("Rockies Rendezvous"), Banff Springs, Alberta. |
| 1999 | Member - Advocates' Society. |
| | Member - Ontario Trial Lawyers Association. |
| | Member - American Trial Lawyers Association. |

Guest Speaker - Ancaster Mens Club - Litigation Procedures and Class Actions.

Founding principal of e-incorp Inc., Canada's online corporate services provider.

2000

Member - Advocates' Society.

Member - Ontario Trial Lawyers Association.

Member - American Trial Lawyers Association.

Continuing involvement as Lead Counsel in large Class Action claims including attendances in New York and Vancouver in respect of such matters.

Article published - Lorman Education Services Seminar - "Employee Termination in Ontario: Navigating The Press – – Important Termination Concerns".

Guest Speaker - Downtown Rotary Club -  The Internet Changing the Dynamics of Small Business in Canada.

2001

Achieved successful settlement of Vanishing Premium Class Action Claim against Canada Life Assurance Company on a national basis on behalf of approximately 135,000 policyholders.   Settlement Agreement signed February.  Court Approval obtained April.

Travel to San Diego, California for participation in Association of Fundraising Professionals International Conference on Fundraising.

Founding principal of Freewills.com, an online free will-preparation service that uniquely links will-preparation with the encouragement and availability of charitable giving. Involvement included all aspects of business start-up including strategic vision, conceptualization, design and development of product, overall management, marketing and sales, operations, implementation, securing subscriptions, preparation of business plan, etc.

Guest Speaker - Lorman Education Services Seminar, Employee Leave Issues/Maternity and Parental Leave Issues, April 26, 2001.

Guest Speaker- Lorman Education Services Seminar, Employee Termination in Ontario: Navigating the Process -

Important Termination Concerns, May 17, 2001.

Article published, Spring, 2001 issue of the "The Litigator. Journal of the Ontario Trial Lawyers Association" - "Class Proceedings and Product Liability Claims".

Achieved successful settlement of Vanishing Premium Class Action Claim against London Life Insurance Company on a national basis on behalf of approximately 890,000 policyholders (settlement value $260M). Settlement Agreement signed June, 2001; Court approval obtained October, 2001; Final Court approval by Ontario Court of Appeal, February, 2002.

Travel to Indianapolis, Indiana for participation in National Association of Gift Planners Conference.

2002     Travel to St. Louis, Missouri for participation in Association of Fundraising Professionals International Conference on Fundraising.

Guest Speaker - Lorman Education Services Seminar - Employee Leave Issues April 27, 2002.

Guest Speaker - The Canadian Institute, Litigating Class Actions Seminar, September 26 and 27, 2002.

2003     Guest Speaker - Insight Conference: Class Actions - The Litigators' Conference, "Certification Update", January 27 and 28, 2003.

Guest Speaker - Ontario Trial Lawyers Association Spring Conference, Class Actions, May 31, 2003.

Achieved successful settlement of Class Action claim against Canada Post Corporation, Cybersurf Corp. and 3Web Corp. on a national basis on behalf of approximately 150,000 customers who purchased a CD-Rom product that did not function as represented. Settlement Agreement signed July, 2003; Court approval obtained December, 2003.

2004     Achieved successful settlement of Class Action claim against Bell Canada on a national basis on behalf of approximately 750,000 subscribers to Bell Canada's First Rate$^{TM}$ long distance plan in connection with unilateral billing changes. Settlement Agreement signed March, 2004; Court approval obtained May, 2004.

Received widespread media exposure in respect of settlement of Bell First Rate Class Action, including articles in Toronto Star (lead story in Business Section, etc.,) Hamilton Spectator, etc.

Appeared as guest commentator on legal issues on CH TV "Live @ 5:30" television news program.

Received significant media exposure regarding new class action claim against Bell Canada relating to modem hijacking, including articles in the Toronto Star, Hamilton Spectator, radio news broadcasts and appearances on CH TV television news program.

Guest Legal Consultant on CH TV. Several on-air television appears on various legal topics.

2005          Speaker at Advocate's Society, Court House Series, seminar re: Mock Summary Judgment Motion and Effective Advocacy in Motions Court, February 10, 2005.

Speaker at Cross-Border Commercial Litigation Seminar re: Class Actions: Cross-Border Issues, April 7th and 8th, 2005.

Speaker at The 5th Annual Advocacy Conference, seminar re: Class Actions: Nuts & Bolts of a Class Action, April 20, 2005.

Appeared as guest commentator on various legal issues on CH TV "Live @ 5:30" television news program.

2006          Multiple Appearances as Guest Legal Consultant on CHML radio program re: Payday Loan litigation.

Chairman of the  1st Annual Hamilton Law Association Current Issues In Commercial Litigation Seminar held April 6, 2006.

2007          Co-Chairman of the 2nd Annual Hamilton Law Association Current Issues In Commercial Litigation Seminar held April 12, 2007.

2008

Co-Chairman of the 3rd Annual Hamilton Law Association Current Issues In Commercial Litigation Seminar held March 27, 2008.

Member — Board of Directors of Mark Preece Family House—a family house to be located near the Hamilton General Hospital to provide close, accessible and affordable short-term accommodation for the families of adult patients in Hamilton hospitals.

## CERTIFICATIONS AND SUCCESSFUL RESOLUTIONS OF CLASS PROCEEDINGS

### 2007

*Bellaire/LaRocca et al. v. Salim Daya and Hamilton Health Sciences Corporation,* [2007] O.J. No. 4819 - Certified and Settled December 14, 2007

### 2006

*McCutcheon v. The Cash Store et al,* [2006] O.J. No. 2360 - Certified May 10, 2006

*Jones v. Royal Botanical Gardens et al* - Certified and settled September 28, 2006

*Humphreys et al. v. Select Financial et al.,* (Hamilton Court file No. 01-3510CP) (Unreported) - Certified and settled November 2, 2006

### 2004

*Sajecki v. Bell Canada* - Certified and settled May 10, 2004

### 2003

*McArthur v. Canada Post Corporation et al,* [2004] O.J. No. 1406 - Certified and settled December 22, 2003

**2001**

*Gibbs v. Canada Life Assurance Co.,* [2001] O.J. No. 6269 - Certified and settled April 4, 2001

*Directright Cartage Ltd. v. London Life Insurance Co.,* [2001] O.J. No. 4073 - Certified and settled October 18, 2001

## CURRENT CLASS PROCEEDINGS

Levesque v. Ford Motor Company of Canada - This proceeding is brought on behalf of all individuals in Canada who were offered employment by Ford commending in July, 2008 as part of a Third Work Shift at Ford's Oakville plant.

*Kafka et al. v. Allstate Insurance Company* - This proceeding is brought on behalf of all Allstate agents across Canada who were employed by Allstate as of July 27, 2007 and who were constructively dismissed

*Robinsons v. Rochester Financial et al* - This proceeding is brought on behalf of persons who participated in the Banyan Tree Gift Program, a leveraged charitable donation program, for taxation years 2003-2007

*Cotton et al. v. Michaels Stores Inc* - This proceeding is brought on behalf of persons in Canada who were/are former employees/employees of Michaels who worked in excess of 44 hours in any given week without receiving overtime pay

*IN THE MATTER OF S. 18.6 OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, C. c-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC.(Zonolite Attic Insulation ("ZAI"))* - We were appointed as Representative Counsel by Order of Farley, J., dated February 8, 2006 to act on behalf of all Canadians who have been exposed to asbestos as a result of installation of ZAI in their homes

*Watson et al v. Northstar Aerospace, Inc., and Northstar Aerospace (Canada) Inc.* - This proceeding is brought on behalf of residents of homes that are contaminated with trichloroethylene ("TCE") in the subsurface and groundwater of lands in close proximity of the Northstar manufacturing plant located in Cambridge, Ontario

*Penney et al. v. Bell Canada* - This proceeding is brought on behalf of wireline telephone customers of Bell Canada, being persons who made arrangements or wireline telephone service to be installed in their homes between March 24 and December 31, 2005.

# MATTHEW G. MOLOCI

# CURRICULUM VITAE

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| 1999<br>to present | **SCARFONE HAWKINS** <sup>LLP</sup><br>Barristers and Solicitors<br>One James Street South, 14th Floor<br>Hamilton, Ontario<br>L8N 3P9 |

Associate – 1999 – 2007
Partner – 2007

Practice areas: bankruptcy/insolvency, commercial, construction, employment, estates and class action litigation

Carriage of complex litigation matters through trial and appeal

Mentoring associates and students

| | |
|---|---|
| 1998 – 1999 | **PENMAN & PENMAN** <sup>LLP</sup><br>Barristers and Solicitors<br>206-4195 Dundas Street West<br>Etobicoke, Ontario<br>M8X 1Y4 |

Associate lawyer

Client development, law firm administration and carriage and management of litigation matters

Practice areas included: personal injury, employment, family, commercial, construction lien and estates
Some experience in corporate/commercial, real estate and estate matters

| 1996 - 1997 | **STEWART, ESTEN** LLP |
|---|---|
| | Barristers and Solicitors |
| | 100 Collier Street |
| | Barrie, Ontario |
| | L4M 4V3 |

Student-at-law

Experience in civil litigation, including: drafting pleadings and motions; appearing on motions; carriage of small claims matters through to trial

Conduct of legal research; solicitor account collections

| 1996 | **PENMAN & PENMAN** LLP |
|---|---|
| | Barristers and Solicitors |
| | 206-4195 Dundas Street West |
| | Etobicoke, Ontario |
| | M8X 1Y4 |

Summer Student

Experience included: attending on real estate closings; conducting research; and client interviews

| 1995 | **MILLER THOMPSON** LLP |
|---|---|
| | Barristers and Solicitors |
| | Toronto, Ontario |

Summer Student

Assisted with the research and writing of John Sproat's textbook on constitutional law and the *Charter of Rights and Freedoms*

Co-author: "Non-Competition and Non-Solicitation Agreements", with John Sproat, Federated Press, Executive Employment Law seminar

| 1985-1993 | **TNT CANADA INC./ TRANSFREIGHT INC.** |
|---|---|
| | Manager, Specialized transportation and logistics |
| | Eight-year career in specialized transportation and logistics |
| | General management of successful operating division |

## EDUCATION

| February 26, 1998 | Called to the Ontario Bar, Law Society of Upper Canada |
|---|---|
| 1993-1996 | Bachelor of Laws, Dalhousie University |
| 1984-1986 | Sheridan College of Applied Arts and Technology Motor Carrier Administration |

## NOTABLE CASES

## CIVIL LITIGATION

*Shekhdar v. K & M Engineering and Consulting Corporation* (2004), 71 O.R. (3d) 475 (S.C.J.). Lead counsel at trial and on appeal.

*Schaible Electric Ltd.* v. *Melloul-Blamey Construction Inc.*, [2004] O.J. No. 3088, affirmed [2005] O.J. No. 3226 (C.A.). Lead counsel at trial and on appeal.

*Choquette v. 995146 Ontario Ltd.* [2004] O.J. No. 3593 (C.A.). Lead counsel at trial and on appeal.

## CLASS ACTIONS

### CERTIFICATION AND SUCCESSFUL RESOLUTIONS

*Carriere* v. *Bell Canada*, [2006] O.J. No. 2360. Counsel through to motion seeking certification of class proceeding.

*McCutcheon* v. *The Cash Store Inc.*, [2006] O.J. No. 1860. Counsel through to motion seeking certification of class proceeding (under appeal).

*McArthur* v. *Canada Post Corp.*, [2004] O.J. No. 1406. Counsel through to motion seeking certification and court approval of settlement of class proceeding.

*Directright Cartage Ltd.* v. *London Life Insurance Co.*, [2001] O.J. No. 4073. Counsel through to motion seeking certification and court approval of settlement of class proceeding.

*Gibbs* v. *Canada Life Assurance Co.*, [2001] O.J. No. 6269. Counsel through to motion seeking certification and court approval of settlement of class proceeding.

*Humphreys et al.* v. *Select Financial et al.*, (Hamilton Court file No. 01-3510CP) (Unreported)
Counsel through to motion seeking certification and court approval of settlement of class proceeding.

## CURRENT CLASS PROCEEDINGS

*Kafka et al. v. Allstate Insurance Company*
This proceeding is brought on behalf of all Allstate agents across Canada who were employed by Allstate as of July 27, 2007 and who were constructively dismissed

*Robinsons v. Rochester Financial et al.*
This proceeding is brought on behalf of persons who participated in the Banyan Tree Gift Program, a leveraged charitable donation program, for taxation years 2003-2007

*IN THE MATTER OF S. 18.6 OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, C. c-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC.(Zonolite Attic Insulation ("ZAI"))*
We were appointed as Representative Counsel by Order of

Farley, J., dated February 8, 2006 to act on behalf of all Canadians who have been exposed to asbestos as a result of installation of ZAI in their homes.

*Cotton et al. v. Michaels Stores Inc.*
This proceeding is brought on behalf of persons in Canada who were/are former employees/employees of Michaels who worked in excess of 44 hours in any given week without receiving overtime pay

# CURRICULUM VITAE

NAME:          JEFFREY CARTER TEAL

ADDRESS:       10 Harrington Place
               Ancaster, Ontario
               L9G 4Z2
               (905) 523-1333 (Business)
               (905) 648-8349 (Residence)

DATE OF BIRTH:  MARCH 14, 1960

## ACADEMIC QUALIFICATIONS

April, 1986:
    Admitted to the Law Society of Upper Canada

September 1985 to March 1986
    Law Society of Upper Canada
    Bar Admission Course, Osgoode Hall

September 1981 to May 1984
    University of Western Ontario, London
    Course: Faculty of Law
    Bachelor of Laws Degree obtained May 1984

September 1980 to May 1981
    University of Western Ontario, London
    Course: Economics
    Standing: Dean's Honour List

September 1979 to May 1980
    University of Western Ontario, London
    Course: Social Sciences
    Standing: Dean's Honour List

## SCHOLARSHIPS

University of Western Ontario Entrance Scholarship
Ontario Scholarship

**EXPERIENCE**

January 2001 to present
        Partner: Scarfone Hawkins LLP
                Barristers & Solicitors
                One James Street South, 14th Floor
                Hamilton, Ontario   L8N 3P9
                (905) 523-1333

        Area of Practice: Corporate/Commercial Law, Class Action Law, e-Commerce
Law

                Corporate/Commercial
                        Extensive experience in domestic and international
                commercial transactions, including, corporate finance transactions, re-
                organizations, cross-border transactions, general mergers and acquisitions;

                        Provide corporate services to an international corporate
                clientele from Colombia, Germany, Australia, Wales, Hong Kong and
                mainland China;

                Class Action Law
                        Involved in various complex class action claims; including
                several vanishing premium insurance cases; co-counsel in the settlement
                of the vanishing premium class action against Canada Life Assurance
                Company affecting 140,000 class members; co-counsel in settlement of
                vanishing premium class action against London Life Insurance Company
                affecting 900,000 class members and a settlement value of approximately
                $260,000,000.00;

                e-Commerce Law
                        Extensive experience in e-commerce law which includes
                servicing a national insurance claims portal, gift registry portal and a
                virtual coaching technology corporation.

        1991 to January 2001
                Partner: Brown Scarfone Hawkins
                        Barristers & Solicitors
                        Suite 1050, 120 King Street West
                        Hamilton, Ontario L8N 3P9
                        (905) 523-1333

March 1986 to 1988
>   Outerbridge Barristers & Solicitors
>   678 Main Street East
>   Hamilton, Ontario

July 1984 to July 1985
>   Outerbridge Barristers & Solicitors
>   390 Bay Street, Suite 3000
>   Toronto, Ontario

>   Articling experience:  Commercial Litigation
>   worked on a team with Ian Outerbridge on several complex commercial litigation matters.

## PERSONAL/PROFESSIONAL ACHIEVEMENTS

Published "Bank Entry into the Canadian Leasing Market", Equipment Financing Journal, Sept/Oct 1999, Vol.24, No. 5.;

Contributing columnist to Canasia Link
The Investment Planning Newsletter for Canada and the Far East Published by Peter K.C. Ho, RBC Dominion Securities Inc.;

Co-founder and counsel to e-incorp Inc. the first on-line Canadian incorporation service providing on-line incorporations both federally and provincially. Successfully negotiated exclusive agreements for e-incorp Inc. with the Canadian Imperial Bank of Commerce, Bell Canada and Canoe.ca;

Travelled to Cartagena, Colombia, to complete commercial transactions;

Travelled to Hong Kong and mainland China to assist in completing complex commercial transactions under the Canadian Immigrant Investor Program;

Travelled to various states in the United States to complete large commercial nursing home transactions;

Travelled to San Diego, California as a participant in the Association of Fund Raising Professionals International Conference on Fund Raising.

## MEMBERSHIPS

Canadian Bar Association
Hamilton Law Association

- 28 -

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC.

Court File No. 01-CL-4081

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

PROCEEDING COMMENCED AT
TORONTO

AFFIDAVIT OF MICHEL BÉLANGER SWORN THIS 25th DAY OF SEPTEMBER, 2008

SCARFONE HAWKINS LLP
Barristers & Solicitors
One James Street South
14th Floor
P.O. Box 926, Depot 1
Hamilton, Ontario
L8N 3P9

DAVID THOMPSON (28271N)
thompson@shlaw.ca
MATTHEW G. MOLOCI (40579P)
moloci@shlaw.ca

Tel : 905-523-1333
Fax: 905-523-5878

LAUZON BÉLANGER INC.
Barristers and Solicitors
286, rue St-Paul Ouest, Bureau, 100
Montreal, (Québec)
HY2 2A3

YVES LAUZON
ylauzon@lauzonbélanger.qu.ca
MICHEL BÉLANGER
mbelanger@lauzonbélanger.qc.ca
CAREEN HANNOUCHE
Careen.hannouche@lauzonbélanger.qc.ca
Tel : 514-844-7612
Fax: 514-844-7009

Representative Counsel for
CDN ZAI Claimants

RCP-E 4D (July 1, 2007)

66

Court File No. 01-CL-4081

IN THE MATTER OF S. 18.6 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED AND IN THE MATTER OF GRACE CANADA, INC.

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

PROCEEDING COMMENCED AT
TORONTO

## MOTION RECORD OF REPRESENTATIVE COUNSEL
(Settlement Approval – September 30, 2008)

**SCARFONE HAWKINS** LLP
Barristers & Solicitors
One James Street South
14th Floor
P.O. Box 926, Depot 1
Hamilton, Ontario
L8N 3P9

**DAVID THOMPSON (28271N)**
thompson@shlaw.ca
**MATTHEW G. MOLOCI (40579P)**
moloci@shlaw.ca

Tel : 905-523-1333
Fax: 905-523-5878

**LAUZON BÉLANGER INC.**
Barristers and Solicitors
286, rue St-Paul Ouest, Bureau, 100
Montreal, (Québec)
HY2 2A3

**YVES LAUZON**
ylauzon@lauzonbélanger.qu.ca
**MICHEL BELANGER**
mbelanger@lauzonbélanger.qc.ca
**CAREEN HANNOUCHE**
Careen.hannouche@lauzonbélanger.qc.ca
Tel : 514-844-7612
Fax: 514-844-7009

Representative Counsel for
CDN ZAI Claimants

RCP-E 4D (July 1, 2007)

-2-