# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made by and between W. R. Grace & Co. (hereinafter referred to as "Grace") and Nationwide Indemnity Company, on behalf of Employers Insurance of Wausau (hereinafter referred to as "Wausau," as defined more fully below) (collectively "the Parties").

## WITNESSED THAT:

WHEREAS, Employers Mutual Liability Insurance Company of Wisconsin issued certain policies of insurance that provide, or are alleged to provide, liability insurance coverage to Grace (the "Subject Policies," as more fully defined below); and

WHEREAS, claims have been asserted against Grace alleging injury due to exposure to asbestos and asbestos-containing materials ("Asbestos-Related Claims") and Grace has incurred certain liabilities, expenses and losses arising out of such Asbestos-Related Claims; and

WHEREAS, Grace has asserted rights to insurance coverage with respect to Asbestos-Related Claims pursuant to the Subject Policies, and disputes have arisen between Grace and Wausau regarding the Parties' respective rights and obligations under the Subject Policies; and

WHEREAS, on or about April 2, 2001, W. R. Grace & Co., W. R. Grace & Co-Conn., and certain other debtors filed reorganization cases pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, jointly administered as Case No. 01-01139 (JKF), *et seq.* (collectively, the "Bankruptcy Case"), and Grace and such other debtors continue to operate their businesses as debtors and debtors-in-possession; and

WHEREAS, Grace anticipates that a plan of reorganization will be confirmed by the Bankruptcy Court in the Bankruptcy Case and that the plan will provide for the establishment of one or more trusts pursuant to Section 524(g) of the Bankruptcy Code to process and pay Asbestos-Related Claims involving Grace; and

WHEREAS, in consideration of certain monetary payments and other consideration as more fully set forth herein, the Parties intend to adopt, by way of compromise, a full and final settlement that releases and terminates all rights, obligations and liabilities (if any) that the Parties may owe one another under the Subject Policies.

### AGREEMENTS:

NOW, THEREFORE, in full consideration of the foregoing and of the mutual promises and covenants herein contained, and intending to be legally bound hereby, subject to the entry of the Approval Order and subject to the terms and conditions set forth herein, the Parties hereby agree as follows:

**I.**    **Definitions**

The following definitions apply to the capitalized terms wherever those terms appear throughout this Agreement or in any attachments hereto. Capitalized terms in the prefatory paragraph, recitals, this Definitions section and in the sections below have the meanings ascribed to them therein to the extent they are not otherwise defined in this Definitions section. Capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in the Joint Plan of Reorganization (as defined below). Each defined term stated in a singular form includes the plural form, each defined term stated in plural form includes the singular form, and each defined term stated in the masculine, feminine or neuter form includes each of the masculine, feminine and neuter forms. The word "including" means "including but not limited to."

A.  <u>Approval Order</u>:  "Approval Order" means an order of the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, in form and substance satisfactory to the Parties, approving this Agreement and the compromise and settlement memorialized herein between the Parties.

B.  <u>Asbestos PI Claims</u>:  "Asbestos PI Claims" has the meaning set forth in the Joint Plan of Reorganization.

C.  <u>Bankruptcy Court</u>:  "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware and, to the extent it exercises jurisdiction over the Bankruptcy Case, the United States District Court for the District of Delaware.

D.  <u>Claim</u>:  "Claim" means:

1.  "Claim" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. Section 101(5);

2.  "Demand" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. Section 524(g)(5); and

3.  any claim (whether past, present or future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, direct or indirect, matured or unmatured, liquidated or unliquidated, direct or consequential, and whether in law, equity, admiralty or otherwise), assertion of right, complaint, cross-complaint, counterclaim, affirmative defense, writ, demand, inquiry, request, directive, obligation, suit, lawsuit, action, cause of action, administrative proceeding, governmental claim or action, order, judgment, settlement, mediation, arbitration, lien and any other assertion of liability of any kind.

E.    Committee:  "Committee" means the Official Committee of Asbestos Personal Injury Claimants in the Bankruptcy Case.

F.    Confirmation Order:  "Confirmation Order" means an order entered by the Bankruptcy Court in the Bankruptcy Case confirming the Joint Plan of Reorganization, together with any order of the District Court issued pursuant to Section 524(g)(3)(A) of the Bankruptcy Code confirming or affirming such order.

G.    Debtors:  "Debtors" has the meaning set forth in the Joint Plan of Reorganization.

H.    District Court:  The term "District Court" means the United States District Court for the District of Delaware.

I.    Effective Date:  The term "Effective Date" has the meaning set forth in the Joint Plan of Reorganization.

J.    Entity:  The term "Entity" means any individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, federal, state, local or foreign government or any political subdivision thereof, or other person or entity.

K.    Execution Date:  The term "Execution Date" means the earliest date on which this Agreement has been signed by all of the Parties.

L.    Final Order:  "Final Order" means an order or judgment of the Bankruptcy Court, the District Court or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings

for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or has resulted in no modification of such order.

M.    Futures Representative:    "Futures Representative" means David Austern, the Asbestos PI Future Claimants' Representative appointed, for each Debtor, by Order of the Bankruptcy Court dated May 24, 2004, and any successor to him.

N.    Grace: "Grace" means W. R. Grace & Co.

O.    Grace Group: "Grace Group" means Grace, the past and present subsidiaries and affiliates of Grace, the predecessors and successors of such subsidiaries and affiliates, the directors, officers, agents and employees of Grace and of such subsidiaries and affiliates, and any other Entity that was insured under the Subject Policy and on whose behalf Grace has the power to release Claims under the Subject Policies.

P.    Joint Plan of Reorganization:    "Joint Plan of Reorganization" means the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative and the Official Committee of Equity Security Holders as modified through March 19, 2010, including all exhibits thereto, and as such plan may be further modified from time to time.

Q.    Subject Policies:  "Subject Policies" means the liability insurance policies listed

on Attachment A hereto.

R.    Trigger Date:  The term "Trigger Date" means the last date upon which all of the

following have occurred, provided that this Agreement has not previously become

null and void pursuant to its terms:

1.    The Approval Order becomes a Final Order;

2.    The Confirmation Order becomes a Final Order; and

3.    The Effective Date occurs.

S.    Trust:  "Trust" means the "Asbestos PI Trust" as defined in the Joint Plan of

Reorganization, or such other trust as may be established under Section 524(g) of

the Bankruptcy Code to process and pay Asbestos PI Claims pursuant to a plan of

reorganization filed by Grace, the Committee and the Futures Representative.

T.    Wausau:  "Wausau" means Employers Insurance of Wausau, formerly known as

Employers Mutual Liability Insurance Company of Wisconsin, and Nationwide

Indemnity Company, solely in its capacity as claims administrator for Employers

Insurance of Wausau.

## II.    Payment of the Settlement Amount

A.    Within thirty (30) days after the occurrence of the Trigger Date, Nationwide

Indemnity Company, on behalf of Employers Insurance of Wausau, shall pay to the Trust the

sum of Three Million Eight Hundred Thousand United States Dollars ($3,800,000.00) (the

"Settlement Amount") in immediately available funds.  The Parties agree that payment of the

Settlement Amount to the Trust represents a reasonable compromise of the net present value of

the limits of the Subject Policies that would otherwise be paid out for Asbestos PI Claims, and

fully and properly exhausts all limits of liability, including without limitation all per-occurrence and aggregate limits of the Subject Policies.

B.     Payment of the Settlement Amount to the Trust shall be made in accordance with written instructions provided to Nationwide Indemnity Company by the Trust.

**III.   Releases**

A.     <u>Release by Grace and the Trust</u>

1.   Upon the Trust's receipt of the Settlement Amount in accordance with Section II. of this Agreement, the Trust and Grace (on behalf of itself, the Debtors, and, to the extent it has the power to bind them, the Grace Group) hereby release, remise, covenant not to sue and forever discharge Wausau along with its predecessors, successors, parents, subsidiaries, divisions and affiliates solely in their capacities as such, and the directors, officers, agents, attorneys and employees of Wausau solely in their capacities as such, with respect to:

a.     all Claims for insurance coverage and/or other obligations under, based on or arising out of the Subject Policies; and

b.     any Claim based on or arising out of any Claims alleging bad faith, breach of an implied warranty of good faith and fair dealing and unfair claims practices, whether under statute or common law, or any other similar type of alleged misconduct or omission in connection with the Subject Policies.

2.   GRACE AND THE TRUST ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH, THE CALIFORNIA CIVIL CODE SECTION 1542

AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT. GRACE AND THE TRUST EXPRESSLY ASSUME THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES OR THINGS MAY HAVE OCCURRED THAT THEY DO NOT KNOW OR DO NOT SUSPECT TO EXIST.

B.    Release by Wausau

1.    Upon payment of the Settlement Amount in accordance with Section II. of this Agreement, Wausau hereby releases, remises, covenants not to sue and forever discharges the Debtors, the Grace Group and the Trust, and the trustees, officers, agents and employees of the Trust in their capacities as such with respect to:

a.    any Claim and/or other obligations under, based on or arising out of the Subject Policies; and

b.    any Claim based on or arising out of any alleged act, omission, representation or conduct of any sort by Grace or the Trust in connection with the Subject Policies.

2.    WAUSAU ACKNOWLEDGES THAT IT HAS BEEN ADVISED BY ITS ATTORNEYS CONCERNING, AND IS FAMILIAR WITH, THE CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVES ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.  WAUSAU EXPRESSLY ASSUMES THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES OR THINGS MAY HAVE OCCURRED THAT IT DOES NOT KNOW OR DOES NOT SUSPECT TO EXIST.

C.    No Release of Obligations Under This Agreement

The releases set forth in this Section III.A. and B. do not relieve the Parties of any of their obligations under this Agreement.

D.    Upon the Trust's receipt of payment of the Settlement Amount in accordance with Section II. of this Agreement, the Parties hereto intend to reserve no rights or benefits whatsoever under or in connection with the Subject Policies, and any and all rights, duties, responsibilities and obligations of the Parties created by or in connection with the Subject Policies are terminated.  The releases contained in this Section III., together with the sale

described in Section V.E., are intended to operate as if the Subject Policies had never been issued by Wausau.

### IV. Release of Subrogation and Contribution Claims and Judgment Reduction Clause

#### A. Payments Made Under This Agreement

Wausau shall not seek reimbursement of any portion of the Settlement Amount, whether by way of a Claim for contribution, subrogation, indemnification or otherwise, from anyone other than Wausau's reinsurers or retrocessionaires in their capacities as such. Notwithstanding the foregoing, if a third party pursues a contribution, subrogation, indemnification or similar Claim against Wausau relating to the Subject Policies, then Wausau shall be free to assert such a Claim against such third party, to the extent permitted by the Joint Plan of Reorganization. To the extent that Wausau recovers any amount from such third party, the net proceeds of such recovery (after any payment made by Wausau to such third party on its Claim and after Wausau is reimbursed from such proceeds for its fees, costs and expenses incurred in prosecuting or defending such Claims) shall be paid by Wausau promptly to the Trust. Grace and the Trust shall use reasonable best efforts to obtain from all insurers with which they settle agreements similar to those contained in this Section IV.A.

#### B. Payments Received From Other Insurers

Following the Trust's receipt of the Settlement Amount in accordance with Section II. of this Agreement, in the event that:

1. Grace or the Trust, as applicable, and/or any other Entity becomes entitled to receive a payment from one or more of the insurers other than Wausau for any Claims that have been remised, released, acquitted and forever discharged as against Wausau pursuant to this Agreement, and

2.    As a result of such other insurer's obligation to pay described in Section IV.B.1. above, such insurer either:

a.    enters into a settlement with Wausau, which settlement has been consented to by Grace or the Trust, as applicable, and any other Entity (as applicable), requiring Wausau to reimburse some or all of the payment made or to be made by such insurer; or

b.    obtains a final, non-appealable judicial or quasi-judicial determination or award entitling such insurer to obtain a sum certain from Wausau for contribution, subrogation or indemnification or other similar Claim, against Wausau for its alleged share or equitable share, or to enforce subrogation rights, if any, relating to such payment referenced in Section IV.B.1. above,

the Entity entitled to receive such payment shall voluntarily reduce the amount of payment to be received by it (referred to in Section IV.B.1. above) by the amount necessary to reduce or eliminate such settlement, determination or award against Wausau (referred to in Section IV.B.2. above).

To ensure that such a reduction is accomplished, Wausau shall be entitled to assert this Section IV. as a defense to any action against it for any such portion of the determination or award against Wausau (referred to in Section IV.B.2. above) and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Wausau from any liability for the determination or award.  Grace or the Trust, as applicable, and/or any other Entity (as applicable) agrees that in any proceeding against other insurers in which Grace or the Trust, as applicable, and/or any other Entity makes a Claim

for insurance rights or benefits for any Claim that may give rise to the events referenced in Section IV.B.1. above, it will provide notice to Wausau of such Claim within thirty (30) days of the time Grace or the Trust, as applicable, first becomes aware that such Claim is reasonably likely to result in a Claim against Wausau and shall consent to Wausau's intervention in any such proceeding to the extent that Wausau seeks to intervene to effectuate the intent of this Section IV.

## V.    **Bankruptcy-Related Obligations**

### A.    Committee and Futures Representative Approval

Grace will make a good faith effort to obtain written approval of this Agreement and the releases contained herein from the Committee and the Futures Representative within thirty (30) days of the Execution Date.

### B.    Approval Motion

Promptly following the Execution Date, Grace will prepare and file a motion to approve this Agreement with the Bankruptcy Court, which motion shall be in form and substance reasonably satisfactory to Wausau. Grace will use its reasonable best efforts promptly to obtain entry of the Approval Order, and promptly to obtain entry of the Approval Order as a Final Order. Wausau, at its own expense, will cooperate with Grace in obtaining the Approval Order.

### C.    Approval Order

Grace will use its reasonable best efforts to cause the Court to enter an order providing, among other things:

1.    That the terms of this Agreement are approved in their entirety, and that Grace is authorized to take all actions necessary to implement the terms of the Agreement;

2.    That the Agreement will be designated an Asbestos Insurance Settlement Agreement, and that Employers Insurance of Wausau and Nationwide Indemnity Company, solely in its capacity as claims administrator for Employers Insurance of Wausau, will be designated as Settled Asbestos Insurance Companies, with respect to the Subject Policies on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization;

3.    That, upon the Trust's receipt of payment of the Settlement Amount in accordance with Section II. of this Agreement, Grace shall be deemed to have sold, conveyed, assigned, transferred and delivered to Wausau, and Wausau shall be deemed to have purchased from Grace, all rights, title and interests of Grace in and under the Subject Policies, free and clear of liens, encumbrances and/or interests of any kind or nature whatsoever, under Section 363(f) of the Bankruptcy Code, and that Employers Insurance of Wausau and Nationwide Indemnity Company, solely in its capacity as claims administrator for Employers Insurance of Wausau, shall be entitled to the protections of Section 363(m) of the Bankruptcy Code; and

4.    That the Trust, upon its creation, will be bound to the provisions of this Agreement with the same force and effect as if the Trust was a Party to this Agreement from the Execution Date.

D.    <u>Designation as Settled Asbestos Insurance Companies</u>

Upon the Approval Order becoming a Final Order, Grace shall designate this Agreement as an Asbestos Insurance Settlement Agreement, and Employers Insurance of Wausau and Nationwide Indemnity Company, solely in its capacity as claims administrator for Employers

Insurance of Wausau, as Settled Asbestos Insurance Companies, with respect to the Subject Policies on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization.

      E.      <u>Sale Pursuant to Section 363(f).</u>

      Upon the Trust's receipt of payment of the Settlement Amount in accordance with Section II. of this Agreement, and without further need for action, Grace shall be deemed to have sold, conveyed, assigned, transferred and delivered to Wausau, and Wausau shall be deemed to have purchased from Grace, all rights, title and interests of Grace in and under the Subject Policies, free and clear of all liens, encumbrances and/or interests of any kind or nature whatsoever, to the extent permitted under Section 363(f) of the Bankruptcy Code. The Parties agree that the Settlement Amount is at least equal to the fair value of the Subject Policies.

      F.      <u>Trust Bound by Agreement</u>

      Upon the Effective Date, the Trust shall be bound by this Agreement as if it had been a Party hereto as of the Execution Date.

      G.      <u>No Bankruptcy-Related Activities</u>

      Effective upon the Execution Date, Wausau (1) shall take no action of any nature (including filing any objection to the Joint Plan of Reorganization and initiating or taking discovery) that may hinder, delay or oppose actions of the Debtors, the Committee and/or the Futures Representative in the Bankruptcy Case; and (2) shall not oppose the entry of a Confirmation Order. Upon the Approval Order becoming a Final Order, Wausau expressly consents to the assignment of Asbestos Insurance Rights as provided in the Asbestos Insurance Transfer Agreement, Exhibit 6 to the Joint Plan of Reorganization.

## VI.    Termination of Agreement

### A.    Automatic Termination

After the Execution Date, this Agreement shall terminate upon the occurrence of any of the following events:

1.    The entry of an order by the Bankruptcy Court dismissing the Bankruptcy Case or converting it into a Chapter 7 case;

2.    The entry of an order by the Bankruptcy Court denying approval of this Agreement or the entry of an order by the District Court reversing the Approval Order;

3.    The failure of a Grace plan of reorganization to be confirmed, the failure of the Confirmation Order to become a Final Order or the failure of the Effective Date to occur, coupled with circumstances that make clear that such events will never occur;

4.    The entry of a Confirmation Order that becomes a Final Order that fails to extend protection to Employers Insurance of Wausau and Nationwide Indemnity Company, solely in its capacity as claims administrator for Employers Insurance of Wausau, as Settled Asbestos Insurance Companies with respect to the Subject Policies pursuant to the Asbestos PI Channeling Injunction;

5.    The failure of the Committee or the Futures Representative to consent to the Agreement within thirty (30) days of the Execution Date; or

6.    The failure of Grace to designate this Agreement as an Asbestos Insurance Settlement Agreement, and Employers Insurance of Wausau and Nationwide Indemnity Company, solely in its capacity as claims

administrator for Employers Insurance of Wausau, as Settled Asbestos Insurance Companies, with respect to the Subject Policies on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization in accordance with Section V.D. prior to the Confirmation Order becoming a Final Order.

B.     Termination by Wausau

Wausau, at its sole option, may terminate this Agreement and render this Agreement null and void by providing written notice of termination to Grace, the Committee and the Futures Representative within thirty (30) days of the occurrence of any of the below described conditions of termination:

1.     The entry of an Approval Order that becomes a Final Order that fails to approve the sale of the Subject Policies free and clear of all liens, encumbrances or interests of any kind or nature whatsoever pursuant to Section 363(f) of the Bankruptcy Code; or

2.     The entry of an order by the Bankruptcy Court confirming a Chapter 11 plan of reorganization for the Debtors other than the Joint Plan of Reorganization that materially and adversely affects the interests of Wausau under this Agreement.

Failure by Wausau to give timely written notice of termination pursuant to this Section VI.B. following the occurrence of one of either of the above conditions of termination shall be deemed a permanent waiver of such condition by Wausau.

C.     Effect of Termination

Notwithstanding anything in this Agreement to the contrary, in the event this Agreement terminates, is ineffective and/or is rendered null and void pursuant to this Section VI.:

1.      This Agreement shall be of no further force and effect, and the Parties shall have no further obligations under this Agreement, except the obligations set forth in Section VIII.;

2.      None of the Parties shall be bound by the terms of any Approval Order;

3.      This Agreement shall no longer be designated an Asbestos Insurance Settlement Agreement, and Employers Insurance of Wausau and Nationwide Indemnity Company, solely in its capacity as claims administrator for Employers Insurance of Wausau, will no longer be designated as Settled Asbestos Insurance Companies, with respect to the Subject Insurance Policies on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization;

4.      The Parties shall have the rights, defenses and obligations under or with respect to the Subject Policies, or any other agreement between the Parties relating to the Subject Policies that may have been in effect at the time of the Execution Date, that they would have had absent this Agreement; and

5.      The releases provided in Section III. shall become null and void *ab initio*.

## VII.    Defense of the Asbestos PI Channeling Injunction

A.      Following the Trust's receipt of payment of the Settlement Amount in accordance with Section II. of this Agreement, if any Entity asserts against Employers Insurance of Wausau and/or Nationwide Indemnity Company, solely in its capacity as claims administrator for Employers Insurance of Wausau, an Asbestos PI Claim based on or arising under the Subject Policies ("Wausau Channeling Injunction Claim"), the Trust shall expend reasonable best efforts, at its own expense, to enforce the Asbestos PI Channeling Injunction with respect to the Wausau Channeling Injunction Claim and to obtain a ruling that such Wausau Channeling Injunction

Claim is channeled to the Trust pursuant to the Asbestos PI Channeling Injunction and Bankruptcy Code Section 524(g). In no event, however, shall the Trust be required to expend an amount greater than the Settlement Amount in carrying out its obligation under this Section VII.A. When the Trust has expended an amount equal to the Settlement Amount in defending the application of the Asbestos PI Channeling Injunction to Wausau Channeling Injunction Claims, the Trust shall have no further obligation under this Section VII.A. For the avoidance of doubt, this Section VII.A. shall not obligate the Trust to retain counsel to represent Wausau or to pay the costs and expenses, including attorneys' fees, associated with such legal, consulting or expert representation as Wausau may choose to engage in connection with any Claim against Wausau.

B.    Wausau shall promptly notify the Trust in writing of any demand, notice, summons or other process received by Wausau that Wausau reasonably believes is a Wausau Channeling Injunction Claim. If the Trust determines that a Claim presented by Wausau is not a Wausau Channeling Injunction Claim, the Trust shall promptly notify Wausau and shall not be required to undertake to defend the application of the Asbestos PI Channeling Injunction as to such Claim. In the event of a dispute as to whether a Claim triggers the Trust's obligations under Section VII.A., the Trust and Wausau shall meet and confer to attempt to resolve any such dispute. If they are unable to resolve such dispute through meeting and conferring, they may litigate the issue before the Bankruptcy Court, or, if the Bankruptcy Court declines to exercise jurisdiction, before any court of competent jurisdiction. If the Trust undertakes to defend the application of the Asbestos PI Channeling Injunction to a Claim presented by Wausau, but a court of competent jurisdiction thereafter determines that the Claim is not an Asbestos PI Claim subject to the Asbestos PI Channeling Injunction and such order becomes a Final Order, the

Trust shall have no further obligation to defend the application of the Asbestos PI Channeling Injunction to such Claim.

## VIII.   Confidentiality

A.       Settlement negotiations leading up to this Agreement, all information exchanged between the Parties in connection with such negotiations and all related discussions (collectively, "Information") are confidential, shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions, and shall not be disclosed by any Party except as permitted in Section VIII.B. and C. below.

B.       The Parties may disclose Information as follows:

1.       The fact that the Parties have entered into this Agreement may be disclosed to any Entity;

2.       The Information may be disclosed as necessary to obtain an Approval Order from the Bankruptcy Court;

3.       The Information may be disclosed by order of court, or pursuant to a written agreement of the Parties;

4.       The Information may be disclosed by Wausau to its reinsurers, directly or through intermediaries;

5.       Grace or the Trust may disclose the Information to other insurers and their representatives;

6.       The Information may be disclosed to outside auditors or accountants of any Party or to the Internal Revenue Service;

7.     A Party may disclose the Information to its accountants, to its counsel, to underwriters in connection with offerings of securities to be issued by such Party and to counsel for such underwriters; and

8.     The Information may be disclosed in any action brought to enforce the terms of this Agreement;

*provided, however*, that a Party making disclosure of any of the Information pursuant to one of the exceptions set forth in clauses (3) through (7) above shall inform any Entity to which such disclosure is made of the confidential nature of the Information and of the understanding upon which it has been disclosed and shall use reasonable efforts to obtain the agreement of such Entity to hold the Information in confidence.

C.     A Party may describe and/or make reference to this Agreement to the extent that such disclosure is required to comply with any statute, rule or other requirement of any government, governmental agency or other authority.

D.     In the event a court, litigant or governmental body requests or requires disclosure of anything protected by this Section VIII., the Party from whom disclosure is sought shall immediately give written notice to the other Party in order to allow each Party to take such protective steps as may be appropriate.

## IX.    Non-Prejudice and Construction of Agreement

A.     This Agreement is intended to be and is a commercial accommodation between the Parties hereto and shall not be construed as an admission of coverage, liability or responsibility under the Subject Policies, nor shall this Agreement or any provision hereof be construed as a waiver, modification or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Policies.

B.     This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions.  Accordingly, this Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Entities outside the scope of this Agreement.  This Agreement is without prejudice to positions taken by Wausau with regard to other insureds, and without prejudice to positions taken by Grace with regard to other insurers.  The Parties and the Trust specifically disavow any intention to create rights in third parties under or in relation to this Agreement except as expressly provided herein.

C.     Neither the terms of this Agreement nor its negotiation, its execution or any act in performance of this Agreement shall be invoked by Wausau, Grace or the Trust, or their attorneys or agents, in any proceeding for the purpose of attempting to establish or prove the acceptance by Wausau, Grace or the Trust of any particular interpretation of any insurance policy with respect to any Claim.

D.     The Parties agree, as an essential and integral part of this Agreement, that this Agreement and the matters contained in this Agreement are not intended to be, and shall not be, admissible or relevant in any case or proceeding to prove the acceptance by any Party hereto of any particular theory of coverage, or as evidence of any obligation that any Party hereto has or may have to anyone other than to one another.

E.     This Agreement is the jointly drafted product of arms'-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed.  In particular, with respect to interpretation of this Agreement, the Parties waive any benefits from the principle of *contra proferentem* or other principles which would result in the interpretation of any ambiguities against insurers.  No Party shall be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement

shall be construed against any Party on the basis of the Party's identity as an insurance company or as the drafter of any part of this Agreement.

**X.  Modification**

This Agreement may be amended, modified, superseded or canceled, and any of the terms hereof may be waived, only by a written instrument which specifically states that it amends, modifies, supersedes or cancels this Agreement, executed by or on behalf of all of the Parties or, in the case of a waiver, by or on behalf of the Party waiving compliance. The failure of a Party at any time or times to require performance of any provision of this Agreement shall in no manner affect the right at a later time to enforce the same. No waiver by a Party of any condition, or of any breach of any term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach, or a waiver of any other condition or of any breach of any other term, covenant or warranty.

**XI.  Integration**

A.  Entire Agreement

This Agreement, together with its attachment, constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, between the Parties with respect hereto. Except as expressly set forth in this Agreement, there are no representations, warranties, promises or inducements, whether oral, written, expressed or implied, that in any way affect or condition the validity of this Agreement or alter its terms.

B.  Titles and Captions

Titles and captions contained in this Agreement are inserted only as a matter of convenience and are for reference purposes only. Such titles and captions are intended in no way

to define, limit, expand or describe the scope of this Agreement or the intent of any provision hereof.

## XII.    Governing Law

This Agreement shall be governed by, and shall be construed in accordance with, the laws of the State of New York without regard to its choice of law rules.  Nothing in this Section XII. shall affect what law would govern the interpretation or application of the Subject Policies.

## XIII.    Representations

Each Party represents and warrants that it has authority to execute this Agreement as its binding and legal obligation (subject, in the case of Grace, to the entry of an Approval Order).  Each Party represents and warrants that the person signing this Agreement on its behalf is authorized to execute this Agreement (subject, in the case of Grace, to the entry of an Approval Order).

## XIV.    Execution and Authority

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

## XV.    Notices

Unless another person is designated, in writing, for receipt of notices hereunder, any and all statements, communications or notices to be provided pursuant to this Agreement shall be deemed to have been duly given if in writing and delivered in person, mailed first-class postage prepaid or by registered or certified mail, or transmitted by facsimile, addressed as follows:

If to Grace:

W. R. Grace & Company
7500 Grace Drive
Columbia, Maryland  21044
Attn:  Secretary
Fax:  (410) 531-4367

with a copy to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York  10022-4611
Attn:  Theodore L. Freedman
Fax:  (212) 446-4900

If to Wausau:

Nationwide Indemnity Company
400 Westwood Drive
Wausau, Wisconsin 54401-7895
Attn:  Diane L. Korbisch
         NWI Specialty Claims Manager
Fax:  (715) 843-8734

with a copy to:

Dorsey & Whitney LLP
250 Park Avenue
New York, New York 10017
Attn:  Patrick J. Feeley
Fax:  (212) 953-7201

If to the Committee:

    Caplin & Drysdale Chartered
One Thomas Circle, NW
Washington, DC 20005
Attn: Peter Lockwood
Fax: (202) 429-3301

    and

    Caplin & Drysdale Chartered
375 Park Avenue, 35th Floor
New York, New York 10152
Attn: Elihu Inselbuch
Fax: (212) 644-6755

    with a copy to:

    Anderson Kill & Olick, PC
1251 Avenue of the Americas
New York, New York 10020
Attn: Robert Horkovich
Fax: (212) 278-1733

If to the Futures Representative:

    David T. Austern
Asbestos PI Future Claimants'
  Representative
c/o Claims Resolution Management
  Corporation
3110 Fairview Park Drive, Suite 200
Falls Church, Virginia 22042-0683
Fax: (703) 205-6249

    with a copy to:

    Orrick, Herrington & Sutcliffe LLP
1152 Fifteenth Street, NW
Washington, DC 20005
Attn: Roger Frankel
Fax: (202) 339-8500

## XVI. **Binding Effect**

This Agreement shall be binding on and inure to the benefit of the successors and assigns of the Parties.

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

W. R. GRACE & CO.

By: _Richard C. Finke_

Name:   Richard C. Finke

Title:   Assistant General Counsel

Date:   6/22/2010

**NATIONWIDE INDEMNITY COMPANY on behalf of Employers Insurance of Wausau**

By: _____

Name:   Diane L. Korbisch

Title:   NWI Specialty Claims Manager

Date:   _____

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

**W. R. GRACE & CO.**

By: _____

Name:   Richard C. Finke

Title:   Assistant General Counsel

Date: _____

**NATIONWIDE INDEMNITY COMPANY on behalf of Employers Insurance of Wausau**

By:   *Diane L. Korbisch*

Name:   Diane L. Korbisch

Title:   NWI Specialty Claims Manager

Date:   6/24/10

26 of 26

**ATTACHMENT A**

**Subject Policies**

| Policy Number | Policy Period | Underlying Limit | Policy Limit |
|---|---|---|---|
| 053700086732 | July 17, 1974-June 30, 1975 | $100,000,000 | $2,000,000 part of $50,000,000 |
| 053700086732 | June 30, 1975-June 30, 1976 | $100,000,000 | $2,000,000 part of $50,000,000 |
| 053700086732 | June 30, 1976-June 30, 1977 | $100,000,000 | $2,000,000 part of $50,000,000 |