# EXHIBIT B

# Engagement Letter

# LAZARD

LAZARD FRÈRES & CO. LLC
190 S. LASALLE
31ST FLOOR
CHICAGO, IL 60603
PHONE 312-407-6600
FAX 312-407-6620
www.lazard.com

December 1, 2009

U.S. Concrete, Inc.
2925 Briarpark, Suite 1050
Houston, Texas 77042

Attention:   Michael W. Harlan
             President and Chief Executive Officer

Dear Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Frères & Co. LLC ("Lazard") and U.S. Concrete, Inc. ("USC") and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "Company").

*Assignment Scope:*

The Company hereby retains Lazard as its investment banker to provide USC with general restructuring advice and to advise in connection with any Restructuring, Amendment, Sale Transaction and/or Financing (each as defined below) on the terms and conditions set forth herein. As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of all or a significant portion of the Company's outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness, excluding any indebtedness of Superior Materials Holdings LLC), trade claims, leases (both on and off balance sheet), asbestos and other litigation-related claims and obligations, unfunded pension and retiree medical liabilities, or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities, sale or disposition of assets in connection with such restructuring, reorganization or recapitalization, sale of debt or equity securities or other interests or other similar transaction or series of transactions. By signing this Agreement, we hereby accept our appointment as the Company's investment banker under the terms hereof.

LAZARD

U.S. Concrete, Inc.
December 1, 2009
Page 2

*Description of Services:*

1. Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as the Company may reasonably request, including:

(a) Reviewing and analyzing the Company's business, operations and financial projections;

(b) Evaluating the Company's potential debt capacity in light of its projected cash flows;

(c) Assisting in the determination of a capital structure for the Company;

(d) Assisting the Company, together with its public accounting firm, in the determination of a range of values for the Company on a going concern basis;

(e) Advising the Company on tactics and strategies for negotiating with the Stakeholders;

(f) Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders, and/or rating agencies or other appropriate parties in connection with any Restructuring;

(g) Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to the Restructuring;

(h) Advising and assisting the Company in evaluating potential Financing[1] transaction by the Company, and, subject to Lazard's agreement so to act and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such a Financing;

(i) Assisting the Company in preparing documentation within our area of expertise that is required in connection with the Restructuring;

(j) Assisting the Company in identifying and evaluating candidates for a potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of a Sale Transaction[2];

---

[1] As used in this Agreement, the term "Financing" means any transaction or series of transactions involving the public or private issuance, sale, or placement of equity, equity-linked, or debt securities, instruments, or obligations of the Company, including any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code, but shall not include any current obligations under the Company's senior credit facility or any transactions involving Superior Materials Holdings LLC. Notwithstanding the foregoing, it is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by USC to utilize Lazard or Lazard Capital Markets LLC or any of their respective affiliates to underwrite any high-yield offerings issued under Rule 144A.

[2] As used in this Agreement, the term "Sale Transaction" means any transaction or series of transactions involving (a) an acquisition, merger, consolidation, or other business combination pursuant to which all or a majority of the business or assets of the Company are, directly or

LAZARD

U.S. Concrete, Inc.
December 1, 2009
Page 3

(k)     Attending meetings of USC's Board of Directors and its committees with respect to matters on which we have been engaged to advise you;

(l)     Providing testimony, as necessary, with respect to matters on which we have been engaged to advise the Company in any proceeding before the Bankruptcy Court; and

(m)     Providing the Company with other financial restructuring advice.

*Fees:*

2. As consideration for the services to be provided, the Company shall pay Lazard the following fees:

(a)     A monthly fee of $125,000 (the "Monthly Fee"), payable on execution of this Agreement and on the last day of each month thereafter until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to Section 10. The first six Monthly Fees paid shall be credited (without duplication) against any Restructuring Fee, Amendment Fee, Sale Transaction Fee, Minority Sale Transaction Fee, or Financing Fee payable; provided, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable.

(b)     A fee equal to $3,750,000 for any Restructuring that is consummated prior to a Chapter 11 filing or that is consummated pursuant to a "pre-packaged" or "pre-arranged" plan of reorganization and $3,250,000 for any other Restructuring (the "Restructuring Fee"). Such fee shall be payable upon the consummation of the Restructuring; provided, however, that if a Restructuring is to be completed through a "pre-packaged" or "pre-arranged" plan of reorganization, one-half of the Restructuring Fee shall be earned and shall be payable upon the earlier of (i) execution of definitive agreements with respect to such plan and (ii) delivery of binding consents to such plan by a sufficient number of creditors and/or bondholders, as the case may be, to bind the creditors or bondholders, as the case may be to the plan, and one-half of the Restructuring Fee shall be earned and shall be payable upon the consummation of the "pre-packaged" or "pre-arranged" plan of reorganization; provided, further, that in the event that Lazard is paid a fee in connection with a "pre-packaged" or "pre-arranged" plan and a plan of reorganization is not consummated, Lazard shall return such fee to the Company.

---

indirectly, combined with another company ; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Company or possessing a majority of the then outstanding voting power of the Company (except as may occur with current Stakeholders as a result of a Restructuring); (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of significant assets securities or other interests of the Company, but specifically excluding the assets of Superior Materials Holdings LLC or (d) the formation of a joint venture or partnership involving all or a significant portion of the assets of the Company or a direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party. For purposes of this Agreement, any transaction involving the sale of newly issued securities shall be deemed a "Financing" and not a "Sale Transaction".

LAZARD

U.S. Concrete, Inc.
December 1, 2009
Page 4

(c)     A fee equal to $700,000, payable upon consummation of an Amendment[3] (the "Amendment Fee"). Any Amendment Fee paid shall be credited without duplication against any Restructuring Fee or Sale Transaction Fee subsequently payable.

(d)     (i) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Company, Lazard shall be paid a fee (the "Sale Transaction Fee") equal to the greater of (A) 1.15% of the Aggregate Consideration (as defined in Schedule I hereto) or (B) the Restructuring Fee, without duplication.

(ii) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates any Sale Transaction not covered by clause (i) above, the Company shall pay Lazard a fee (the "Minority Sale Transaction Fee") equal to 1.15% of the Aggregate Consideration in such Sale Transaction (as defined in Schedule I hereto). One-half of any fee paid under this Section 2(d)(ii) shall be credited against any fees subsequently payable under Section 2(b) or Section 2(d)(i).

(iii) Any Sale Transaction Fee or Minority Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

(e)     A fee, payable upon consummation of a Financing, equal to the applicable percentage of proceeds raised (including undrawn amounts) as set forth in Schedule II (the "Financing Fee"). One-half of any Financing Fee(s) paid with respect to debtor in possession financing paid shall be credited without duplication against any Restructuring Fee or Sale Transaction Fee subsequently payable. One-quarter of any other Financing Fee(s) paid shall be credited without duplication against any Restructuring Fee or Sale Transaction Fee subsequently payable.

(f)     For the avoidance of any doubt, more than one fee may be payable pursuant to each of clauses (c), (d) and (e) above.

(g)     In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all: (A) reasonable expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable fees and expenses, including expenses of counsel, if any.

(h)     As part of the compensation payable to Lazard hereunder, the Company agrees to the indemnification, contribution and related provisions (the

---

[3] As used in this Agreement, the term "Amendment" shall mean, collectively, any Restructuring involving only a renegotiation, modification, reduction, amendment, waiver or consent in respect of all or a portion of the Company's indebtedness under that certain Senior Secured Facility Agreement (the "Credit Agreement"), dated as of June 30, 2006.

LAZARD

U.S. Concrete, Inc.
December 1, 2009
Page 5

"Indemnification Letter") attached to this Agreement as Addendum A and incorporated herein in their entirety.

(i) All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

*Retention in Chapter 11 Proceedings:*

3. In the event of the commencement of chapter 11 proceedings, the Company agrees that it will use commercially reasonable efforts to obtain prompt authorization from the Bankruptcy Court to retain Lazard on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, Lazard agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court. The Company shall supply Lazard with a draft of the application and proposed retention order authorizing Lazard's retention sufficiently in advance of the filing of such application and proposed order to enable Lazard and its counsel to review and comment thereon. Lazard shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Lazard's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to Lazard. In so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Amendment, Sale Transaction or Financing, that the value to the Company of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Restructuring Fee, Amendment Fee, Sale Transaction Fee and Financing Fee is reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder.

*Other:*

4. No fee payable to any other person, by you or any other party, shall reduce or otherwise affect any fee payable hereunder to us.

5. The Company will furnish or cause to be furnished to Lazard such current and historical financial information and other information regarding the business of the Company as Lazard may request in connection with this engagement. The Company agrees to keep Lazard advised of all developments materially affecting the Company or its financial position. In performing its services pursuant to this Agreement, including in connection with any valuation of the Company, Lazard shall be entitled to rely upon information furnished to it by the Company or that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of

LAZARD

U.S. Concrete, Inc.
December 1, 2009
Page 6

the assets or liabilities of the Company or of any third party, or opine or give advice to the Board of Directors, the Company or management or shareholders with respect thereto.

6. In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring, Amendment, Sale Transaction, Financing or other transaction. Lazard shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Lazard be responsible for providing any tax, legal or other specialist advice.

7. It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or Lazard Capital Markets LLC or any of their respective affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

8. Simultaneously herewith, the parties hereto are entering into the Indemnification Letter. The Indemnification Letter shall survive any termination or expiration of this Agreement.

9. In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, the Company will promptly inform Lazard of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement. In the event that Lazard receives an inquiry concerning any transaction, we will promptly inform the Company of such inquiry.

10. Our engagement hereunder will automatically expire upon consummation of a Restructuring for which a fee is paid pursuant to Section 2(b) and may be earlier terminated by you or us at any time without liability or continuing obligation to you or us, except that following any such termination and any expiration of our engagement (a) we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by the Company and any expiration of our engagement, we shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect to any Restructuring, any Amendment, any Sale Transaction and any Financing announced or resulting from negotiations occurring during the period from the date hereof until one year following such termination or expiration, as the case may be.

11. The Company recognizes that Lazard has been engaged only by the Company and that the Company's engagement of Lazard is not deemed to be on behalf of and is not intended to confer rights upon any shareholder, partner or other owner of the Company, the Board of Directors or any employee of the Company, any creditor, lender or any other person not a party hereto as against Lazard or any of its affiliates or any of their respective directors, officers, members, agents, employees or representatives. Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of the Company in their capacities as such is authorized to rely upon the Company's engagement of Lazard or any statements, advice, opinions or conduct by Lazard. Without limiting the foregoing, any advice, written or oral,

LAZARD

rendered to the Company's Board of Directors or management in the course of the Company's engagement of Lazard are solely for the purpose of assisting senior management or the Board of Directors of the Company, as the case may be, in evaluating the Restructuring and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with the Restructuring, Amendment, Sale Transaction or Financing. Any advice, written or oral, rendered by Lazard may not be disclosed publicly or made available to third parties without the prior written consent of Lazard. Notwithstanding the foregoing, nothing herein shall prohibit you from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure. Lazard's role herein is that of an independent contractor; nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Lazard and the Company or its Board of Directors or any other person.

12. In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates and Lazard Capital Markets LLC and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any nonpublic information confidential in accordance with their respective customary policies relating to nonpublic information. Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its costs and expenses on the same basis as Lazard.

13. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under the Indemnification Letter. The Company's obligations pursuant to this Agreement shall be joint and several. This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersede any and all prior agreements, arrangements, and understandings, related to the matters provided for herein.

14. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

**LAZARD**

U.S. Concrete, Inc.
December 1, 2009
Page 8

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____
Rick Stearns
Managing Director

By: _____
Stephen Goldstein
Managing Director

By: _____
Donald Fawcett
Managing Director

Accepted and Agreed to as of the date first written above.

U.S. CONCRETE, INC., on behalf of itself
and its controlled subsidiaries

By. _____
Name: MICHAEL W. HARLAN
Title: PRESIDENT AND CEO

LAZARD

U.S. Concrete, Inc.
December 1, 2009

## SCHEDULE I

For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid or payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid or payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money or other liabilities of the Company or relevant Company entity, as applicable, as set forth on the most recent balance sheet, or, in case of the sale of assets, all indebtedness for borrowed money or other liabilities assumed by the third party. Aggregate Consideration shall also include the aggregate amount of any dividends or other distributions declared by the Company or relevant Company entity, as applicable, after the date hereof other than normal quarterly cash dividends, and, in the case of the sale of assets, the net value of any current assets not sold by the Company or relevant Company entity, as applicable. For purposes of calculating Aggregate Consideration, (i) all shares will be deemed transferred where a Sale Transaction is effected by the transfer of shares, (a) constituting more than 30% of the then outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, or (b) possessing more than 30% of the then outstanding voting power of the outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, and (ii) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock. Aggregate Consideration shall also be deemed to include pension liabilities on the balance sheet and guarantees of monies borrowed assumed directly or indirectly by the third party. If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by the parties in good faith and paid to us upon consummation of the Sale Transaction.

LAZARD

U.S. Concrete, Inc.
December 1, 2009

## SCHEDULE II

Fees for Financings

The following table outlines the Financing Fees. For any Financing, the total Financing Fee shall be calculated by multiplying the applicable fee percentage by the total gross proceeds raised (including undrawn amounts) in each Financing.

| Funds Raised | Fee % |
|---|---|
| Debt (including Secured, Senior, Subordinated and debtor in possession financing) | 1.50% |
| Equity (including Common Stock, Convertible Debt and Convertible Preferred Stock) | 5.00% |