IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 01-01139 (JKF)<br>(Jointly Administered)<br><br>Hearing Date: August 9, 2010, 10:00 a.m. (EDT)<br>Objection Date: July 23, 2010 |

**MOTION OF PLUM CREEK TIMBERLANDS, L.P.
TO ALLOW LATE FILING OF PROOFS OF CLAIM**

Pursuant to 11 U.S.C. § 105(a) and Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, Plum Creek Timberlands, L.P. ("Plum Creek") seeks entry of the attached proposed Order allowing Plum Creek's late filing of proofs of claim. This motion is supported by the Declarations of Rosemary Daszkiewicz, Gregg D. Johnson, and John R. Knapp, Jr. and the files and records herein. Plum Creek respectfully states as follows:

**SUMMARY**

1. Several weeks ago, on May 6, 2010, a draft report was prepared by the United States Environmental Protection Agency (the "EPA Draft Report"), which raised for the first time the issue of whether Plum Creek's timberlands in the vicinity of Libby, Montana, might be unsafe to log because of the presence of asbestos (specifically, vermiculite) released into the atmosphere by one or more of the Debtors' mining operations near Libby.

2. The EPA Draft Report is a technical document titled "Remedial Investigation for Operable Unit 3, Libby Asbestos Superfund Site, Phase IV Sampling and Analysis Plan, Part A, Data to Support Human Health Risk Assessment." To Plum Creek's knowledge, the EPA Draft Report was prepared as part of a joint effort by EPA and the Debtors to conduct a remedial investigation and feasibility study of the Libby Superfund Site pursuant to the requirements of EPA's regulations at 40 C.F.R. Part 300. The EPA Draft Report concerns only a portion of the Libby Site known as Operable Unit 3 ("OU3"[1]), where it appears that

---

[1] OU3 is located within what Debtors and the EPA have referred to as the Libby Superfund Site.

asbestos has become embedded into the bark of trees owned by Plum Creek. Although the EPA Draft Report is just that – a draft – and is presumably subject to EPA review and approval, it raises for the first time to Plum Creek's knowledge the prospect that the commercial harvesting of its trees may be hazardous to human health. For this reason the EPA Draft Report recommends that testing and analysis is necessary to determine if this is so.

3. Plum Creek is in the business of growing and commercially harvesting trees and owns approximately 5,000-6,000 acres of timberlands within OU3 and a total of approximately 30,000 acres in the vicinity of Libby. Plum Creek is reviewing the value of the timber and will advise the Debtors and the Court of the status at or prior to the hearing on the Motion.

4. Upon learning of the EPA Draft Report, Plum Creek determined that no confirmation order had been entered in these proceedings and promptly contacted the Debtors' counsel who had not yet seen the EPA Draft Report. In an effort to promptly inform the bankruptcy estate of this development, Plum Creek notified the Debtors' counsel that it was intending to file proofs of claim, followed by a motion to allow these claims. The Debtors' counsel advised it had no objection to this approach.

5. At present, it is unclear to Plum Creek whether the claims bar date of March 31, 2003, which has been set in this case (the "Bar Date") applies to the damages incurred, if at all, with respect to trees owned by Plum Creek. The Instructions printed on the Proof of Claim form state that it applies only to claimants who are "alleging property damage with respect to asbestos in *real property* owned by a party . . . as a result of one of Grace's vermiculite mining, milling or processing facilities." (emphasis added) To the extent Plum Creek has suffered compensable damages, it is most likely to be with respect to its inventory of trees ("goods" under the Uniform Commercial Code, not real property).[2] However, to the extent

---

[2] The Uniform Commercial Code defines "goods" as including "standing timber that is to be cut and removed under a conveyance or contract for sale" but does not specify when the conveyance or contract for sale must arise. UCC §9-102(44).

the Bar Date applies to Plum Creek's claims, cause exists to allow the late-filed claims given that (1) upon information and belief, this is a truly novel situation because it is the first instance where a governmental agency such as the EPA has raised the issue of whether the hazardous substance, asbestos, which has become imbedded into tree bark, may lead to unacceptable health effects if those trees are harvested, thus potentially rendering the trees unusable; and (2) Plum Creek filed its proofs of claim promptly upon learning of the EPA Draft Report.

## FACTS

6. On April 2, 2001, the Debtors filed voluntary petitions for relief under Chapter 11, title 11, United States Code, in the United States Bankruptcy Court for the District of Delaware. The Debtors are continuing to operate their businesses and manage their properties as debtors in possession.

7. Although the bankruptcy schedules and statements of affairs filed by the Debtors are unavailable online, the bankruptcy records reviewed by Plum Creek's counsel do not indicate that the Debtors made any reference to Plum Creek or any claim held by Plum Creek, nor is there any indication that the Debtors identified potential claims arising from vermiculite becoming embedded into the bark of trees as a result of the mining, milling, or processing activities conducted by the Debtors. However, given Plum Creek's status as a landowner in the area, Plum Creek should have been in the Debtors' records.

8. On April 22, 2002, this Court entered an order setting March 31, 2003, as the Bar Date for filing all prepetition claims relating to asbestos property damage, non-asbestos claims, and medical monitoring claims. (Doc. # 1963.)

9. Although newspaper accounts generally reported that the Debtors had filed bankruptcy, Plum Creek was unaware of the Bar Date and Plum Creek, to its knowledge, received no notices in the bankruptcy case. (See Declaration of Rosemary Daszkiewicz ("Daszkiewicz Decl.") ¶ 3.) The fact that Plum Creek received no bankruptcy court notices is a further indication that the Debtors did not identify Plum Creek in their bankruptcy schedules.

Page - 3

Counsel for the Debtors has advised, after review of the mailing records by the Debtors' claims consultant, that no entity with the name "Plum Creek" in it received actual notice of the Bar Date.

10.  More than six (6) months before expiration of the Bar Date, the EPA listed the Libby Asbestos Site on the National Priorities List.  See 67 Fed. Reg. 65,315 (Oct. 24, 2002). OU3 is included within that "Superfund Site" and there are only a few major property owners within OU3.  (Daszkiewicz Decl. ¶ 4.)  To Plum Creek's knowledge, however, the Debtors did not amend their bankruptcy schedules to identify property owners within OU3.  Counsel for the Debtors has advised that she had not previously contemplated, but will consider, amending the schedules to add Plum Creek.

11.  On March 28, 2003, the EPA filed a timely proof of claim.  (Claim Number 00009634 (the "EPA's Claim").)  A copy of the EPA's Claim is attached to the Declaration of Gregg D. Johnson.  The EPA's Claim asserts environmental contamination at numerous specific sites, including the Superfund Site in Libby, Montana, which includes OU3. According to the EPA's Claim, W.R. Grace & Co. – Conn. was liable under an administrative order issued pursuant to CERCLA and a judicial consent decree in connection with the Libby Site.  The EPA's Claim also refers to a pending lawsuit against W.R. Grace & Co. – Conn. styled United States v. W.R. Grace & Company – Conn., et al., Case No. 01-72-M-DWM (D. Mont.). Although the EPA's Claim refers to this Debtor's liability for cleanup of U.S. Forest Service roads and Forest Service property along the Kootenai River, there is no reference to any of the Debtors' liability for contamination of trees on US Forest Service lands.

12.  On September 7, 2007, the EPA, W.R. Grace & Co. - Conn. and Kootenai Development Company entered into an "*Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study*" with respect to the Libby, Montana Superfund Site (the "Order on Consent").  A copy of the Order on Consent is attached to the Declaration of Gregg D. Johnson.  Under the Order on Consent, both W.R. Grace & Co. - Conn. and Kootenai Development Company are determined to have joint and several liability for

performance of remedial action and payment of response costs to be incurred at the Libby Site. The Agreement further provides that the Debtors shall conduct a remedial investigation and feasibility study under a scope of work prepared by EPA. Plum Creek is not a party to the Agreement, was not privy to negotiations regarding it, and to its knowledge, had no advance notice regarding it (other than such notice, if any, as may have appeared generally in newspapers). (See Daszkiewicz Decl. ¶ 5.)

13. On February 27, 2009, the Debtors filed an Amended Disclosure Statement, (Doc. # 20873), and an Amended Plan of Reorganization, (Doc. # 20872). Sections 2.7.2 to 2.8.1.3 of the Amended Disclosure Statement discuss asbestos-related litigation and property damage claims including those in the Libby area but say nothing about the Debtors having any liability for claims related to contaminated trees.[3] To the extent that Plum Creek's claims may be classified as so-called "Asbestos Property Damage" claims, Exhibit 3 to the Amended Plan provides that upon confirmation, a trust will be established and funded (the WRG Asbestos Property Damage Settlement Trust Agreement) for purposes of assuming all liabilities and responsibility for all Property Damage Trust Claims, and for processing, liquidation and payment of such claims. (Exhibit 3 to Plan Exhibit Book, "Asbestos PD Trust Agreement," Section 1.2.) Exhibit 25 to the Amended Plan allows the filing of proofs of claim with a trust (the Asbestos Property Damage Trust) after confirmation of the Amended Plan, after which the Debtors may file a motion in this Court seeking to enjoin such claims on grounds that they are barred by the discharge granted to the Debtors pursuant to confirmation of the Plan and the March 2003 Bar Date. (Exhibit 25 to Plan Exhibit Book, "Case Management Order for Class 7A Asbestos PD Claims," Section II.A., B.3.)

14. Due to the Debtors' ongoing involvement since at least 2001 in dealing with environmental contamination at OU3, either Plum Creek's identity as a property owner

---

[3] For example, Section 2.8.1.1 discusses remediation costs for "cleaning and/or demolition of contaminated buildings, excavation and removal of contaminated soil, health screening of Libby residents and of former mine workers, and investigation and monitoring costs."

Page - 5

within OU3 could easily have been discovered by a review of the books and records presumably within the possession of the Debtors. If the Debtors could not reasonably have been expected to identify Plum Creek as a creditor, it is likely because the Debtors themselves did not foresee any claim arising from property owners on account of tree bark being contaminated by the Debtors' mining operations.

15. In connection with the Order on Consent, on May 6, 2010, the EPA prepared the EPA Draft Report. Upon information and belief, the EPA Draft Report was generally prepared pursuant to 40 C.F.R. Part 300 and specifically pursuant to 40 C.F.R. 300.430 ("Remedial investigation, feasibility study and selection of remedy"), which provides a step by step process to study/assess a release (a/k/a "remedial investigation"), followed by a phase to determine the viable options to clean up the release (a/k/a "feasibility study") and finally a phase to make a determination on a clean up (a/k/a "Record of Decision"). The remedial investigation and feasibility study phases are collectively known as the "RI/FS." Upon information and belief, the May 6, 2010, EPA Draft Report constitutes the EPA staff's recommended scope of testing and analysis to assess the human health impacts from asbestos within OU3 and specifically within tree bark.

16. Specifically with respect to the potential risk associated with the commercial harvesting of timber lands, the EPA Draft Report concludes that there is a need to undertake various types of testing, sampling and analysis in OU3. A map of OU3 obtained from the EPA Draft Report is attached as Exhibit 2 to Plum Creek's claims and incorporated herein by reference. As noted previously, Plum Creek currently owns approximately 5,000-6,000 acres of timberland within OU3. The EPA Draft Report states that the presence of asbestos contamination in OU3 must be studied in order to determine its effect on, among others, commercial loggers. (See EPA Draft Report, Section 2.1, at 5-6.) Specifically, it identifies the need "to monitor air levels during authentic commercial logging activities near the site." (Id.

Section 3.1, at 10.)  The EPA Draft Report states that it is *not currently known* whether the asbestos in OU3 presents an unacceptable risk to human health.  (See id. Section 4.1, at 12.)

17. On or about May 21, 2010, Plum Creek learned of the EPA Draft Report. Promptly thereafter, Plum Creek retained bankruptcy counsel, who in turn contacted the Debtors' bankruptcy counsel regarding the EPA Draft Report (a report which the Debtors' counsel had not seen yet) and the prospect that Plum Creek might hold claims against the Debtors.  (See Daszkiewicz Decl. ¶ 6.)

18. The contents of the EPA Draft Report created uncertainty for Plum Creek because (1) it raises an unresolved issue of the threat, if any, to human health if Plum Creek's OU3 timberlands are commercially logged, and (2) it raises an unresolved issue of whether any of Plum Creek's land will need to undergo an EPA approved remedial action under the Comprehensive Environmental Response, Compensation and Liability Act, 42 §§ 9601 et seq. ("CERCLA").  If any of Plum Creek's timber cannot be logged or cannot be logged without some prior EPA approved remedial action, Plum Creek will suffer a financial loss.

19. Because the EPA Draft Report is merely a draft, Plum Creek has had insufficient opportunity to determine the scope and extent of its claims against the Debtors. Accordingly, the proofs of claim asserted by Plum Creek are contingent and unliquidated.  (See Daszkiewicz Decl. ¶ 7.)

20. On June 7, 2010, proofs of claim were filed with Rust Consulting in the name of Plum Creek Timber Company, Inc. against Kootenai Development Company and W.R. Grace & Co. – Connecticut.  Date-stamped copies of the proofs of claim are attached as Exhibits A and B to the Declaration of Gregg D. Johnson.

21. After the filing of the proofs of claim, Plum Creek determined that the proofs of claim should be filed in the name of Plum Creek Timberlands, L.P.  On June 30, 2010, Plum Creek sent amended proofs of claim to Rust Consulting for filing via FedEx.  Copies of the

amended proofs of claim are attached as Exhibits A and B to the Declaration of John R. Knapp, Jr.

22. As of the filing of this Motion, no confirmation order has been entered with respect to the Debtors' Amended Plan of Reorganization, and to the knowledge of Plum Creek, there have been no distributions to creditors holding prepetition general unsecured claims.

**ARGUMENT**

**A. Legal Standards: Applicable Statutes and Rules**

23. Section 502(b)(9) of the Bankruptcy Code provides that a late-filed claim is not allowed unless the late-filed claim is permitted under the Federal Rules of Bankruptcy Procedure.

24. Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure provides that the "court shall fix and for cause shown may extend the time within which proofs of claim . . . may be filed."  Rule 9006(b)(1) provides that a court may allow a party to file a late claim "on motion made after the expiration of the specified period . . . where the failure to act was the result of excusable neglect."

**B. Legal Standards: Applicable Precedent**

25. In <u>Pioneer Investment Services Co. v. Brunswick Assoc. Ltd. P'ship</u>, 507 U.S. 380 (1993), the Supreme Court determined that a party's failure to timely file a proof of claim before the bar date can constitute excusable neglect.  In so ruling, the Supreme Court established a two-part test in determining what constitutes excusable neglect:  (1) the conduct must not be deliberate but must constitute neglect, which "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness"; and (2) the conduct must be excusable which is "at bottom an equitable one, taking into account all relevant circumstances surrounding the party's omission," including (1) the danger of prejudice to the debtor, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for

the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith.  Id. at 388, 395.

26.     The United States Court of Appeals for the Third Circuit and the Federal District Court for the District of Delaware have applied the Pioneer factors and have allowed for the late filing of claims based on excusable neglect in a number of cases.  See In re Inacom Corp., Civ. A. 04-390-GMS, 2004 WL 2283599, at *1 (D. Del. Oct. 4, 2004) (applying Pioneer to allow a late-filed claim); Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 188 F.3d 116, 125 (3d Cir. 1999) (same); Chemetron Corp. v. Jones, 72 F.3d 341, 349-50 (3d Cir. 2000); In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d 315, 321-23 (3d Cir. 2001); Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.), 233 F.3d 188, 196 (3d Cir. 2000).  The Delaware Bankruptcy Court has also applied the Pioneer factors recently.  See, e.g., In re Smidth & Co., 413 B.R. 161, 166-67 (Bankr. D. Del. 2009); In re Garden Ridge Corp., 348 B.R. 642, 645 (Bankr. D. Del. 2006).

27.     In this bankruptcy case, this Court has applied the Pioneer equitable factors in several instances.  For example, on February 23, 2004, this Court entered an order, (Doc. # 4667), allowing the late filed claim of Royal Indemnity Company, a claimant which had actually received written notice of the Bar Date.  Unlike Royal Indemnity Company, Plum Creek never received a proof of claim packet from the Debtors.

**C.     Applying the Legal Standards to the Facts Here, Plum Creek's Claims Should Be Allowed as Timely**

28.     The factors analyzed below establish that Plum Creek's claims should be allowed as timely.

**D.     There Is No Danger of Prejudice to the Debtors or Creditors**

29.     According to the Third Circuit, "prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts and evidence." Manus, 188 F.3d at 127.  In Inacom, the federal District Court for the District of Delaware determined that the following factors should be considered in determining whether prejudice

might arise: (a) "whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated"; (b) "whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect the distribution to creditors"; (c) "whether payment of the claim would jeopardize the success of the debtor's reorganization"; (d) "whether allowance of the claim would adversely impact the debtor actually or legally"; and (e) "whether allowance of the claim would open the floodgates to other future claims." Inacom, 2004 WL 2283599, at *4.

30. *The Debtors Should Not Be Surprised.* The Debtors identified 32 different sites subject to contamination, including the Libby, Montana site, and the EPA filed a timely proof of claim with respect to the contaminated sites. As a result, the Debtors have known of their potential liability with respect to these contaminated sites for years, although the prospect for contamination to tree bark and related health effects to commercial loggers, if any, is admittedly new with the issuance of the EPA's Draft Report in the past several weeks.

31. *Payment of Plum Creeks' Claims Will Not Force the Return of Other Payments.* To date, there has been no confirmation order entered with respect to the Debtors' Amended Plan and based upon information and belief, there has been no distribution in payment of general unsecured creditors' claims that might have to be returned upon allowance of Plum Creek's claims.

32. *Payment Will Not Jeopardize Success of the Plan.* Although the amount of Plum Creek's claims are undetermined at present, they are likely to be insubstantial in comparison to the amount of the Debtors' total liabilities given that the Debtors' most recently filed monthly operating report shows that the Debtors have estimated total liabilities of $3.555 billion. (Doc. # 24904, at 12.) Moreover, the Debtors' Amended Plan contemplates that property damage claims relating to the Debtors' mining, milling and processing of vermiculite will continue to arise against the Debtors postconfirmation, and for that reason, such claims and the assets to be used in payment of those claims are being transferred to a trust specifically

dealing with property damage claims. As a result, allowance of Plum Creek's claims will not jeopardize success of the Amended Plan.

33. *Allowance of Plum Creek's Claims Will Not Open the Floodgates.* The EPA Draft Report is targeted at a certain area of land (OU3) on which timber is located. To the knowledge of Plum Creek, there are only two other significant owners of timberlands within OU3, the U.S. Forest Service and the State of Montana. Accordingly, allowance of Plum Creek's claims will not open the floodgates for a significant number of other claimants.

34. *Additional Factors Favoring Allowance of Plum Creek's Late-Filed Claims.*

(a)    *The Debtor's Delay.* Courts in the Third Circuit have also considered a debtor's role in causing a creditor's delay in filing its claim. Manus, 188 F.3d at 128; Chemetron Corp., 72 F.2d at 360. If, during the bankruptcy case, the Debtors reviewed or received any records indicating that Plum Creek might have a claim against the Debtors, it was the Debtors' obligation to amend their schedules to list Plum Creek as a creditor. See, e.g., In re Coastal Plains, Inc., 179 F.3d 197, 207-08 (5th Cir. 1999); see generally Collier on Bankruptcy, ¶ 521.07, at 521-31 (16th ed. 2009). Furthermore, the Debtors would have had an obligation to provide Plum Creek with notice of any amendment listing Plum Creek as a creditor. See Fed. R. Bankr. P. 1009(a). Here, to Plum Creek's knowledge, and the Debtors' counsel concedes, the Debtors did not provide Plum Creek with any actual notice of the bankruptcy proceedings (whether notice of the Bar Date, an amendment to the bankruptcy schedules listing Plum Creek as a creditor, or otherwise.)

(b)    *Length of Delay Overall*. In Manus, the Third Circuit held that the length of delay must be considered in "absolute terms," not merely the "delay's effect on the judicial proceedings." 188 F.3d at 130. As a result, even a near three-year delay in filing a claim can be insignificant under circumstances where the judicial proceedings have not been unduly delayed. See, e.g., Inacom, 2004 WL 2283599, at *6-*7. Although Plum Creek is filing its claims several years after the Bar Date, there has been no confirmation order and allowance of

the claims will have no material impact on the judicial proceedings, in part because the Amended Plan itself provides a procedure for the allowance and payment of even later-filed claims. Thus, the Amended Plan clearly contemplates parties like Plum Creek. Based upon the Debtors' Motion for Entry of An Order Seeking the Estimation of Asbestos Claims and Certain Related Relief (the "Estimation Motion"), the Debtors indicated that they do not intend to litigate property damage claims until after confirmation of the plan. (Doc. # 6899, at 34.) To the knowledge of Plum Creek, the trust that is to take responsibility with respect to the determination and payment of property damage claims does not yet exist because no confirmation order has yet been entered.

(c) *Plum Creek's Good Faith*. Plum Creek has acted in good faith. Promptly upon learning of the EPA Draft Report, Plum Creek contacted the Debtors' counsel to advise them of it and the prospect that Plum Creek would be filing proofs of claim. The Debtors' counsel advised that the Debtors had no objection to Plum Creek proceeding to file its proofs of claim, followed by this Motion.

35. The Debtors have asserted that "the central task in these Chapter 11 cases has always been to define the debtors' true liability to Asbestos Claimants." (Doc. # 6899, at 2.) Based upon the circumstances here and the novel issue triggered by the EPA's Draft Report issued in the past two months, Plum Creek's proofs of claim, as originally filed and as amended, should be allowed as being timely filed.

**[*REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.*]**

## CONCLUSION

36. Based upon the equitable concerns set forth above, Plum Creek respectfully requests that the Court enter the attached proposed Order, allowing as timely the proofs of claim submitted by Plum Creek Timberlands, L.P., as originally filed and as amended, together with any other relief the Court deems just and equitable.

Dated: Seattle, Washington
July 1, 2010

Respectfully submitted,

MILLER NASH LLP


*/s/ John R. Knapp, Jr.*
John R. Knapp, Jr. (Del. I.D. No. 3681)
4400 Two Union Square
601 Union Street
Seattle, Washington 98101
Telephone: (206) 622-8484
Facsimile: (206) 622-7485

Attorneys for Plum Creek Timberlands, L.P.

SUMMARY SHEET

Exhibit A: Notice of Hearing

Exhibit B: Proposed Order Granting Motion

Exhibit C: Declaration of Rosemary Daszkiewicz

Exhibit D: Declaration of Gregg D. Johnson

Exhibit E: Declaration of John R. Knapp, Jr.