IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., *et al.*, | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING THE AMENDED APPLICATION OF
CANADIAN ZAI CLAIMANTS PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND (b)(4)
FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES OF
LAUZON BÉLANGER S.E.N.C.R.L. AND SCARFONE HAWKINS LLP
INCURRED IN MAKING SUBSTANTIAL CONTRIBUTION
FOR THE PERIOD OF OCTOBER 1, 2004 THROUGH AUGUST 31, 2008**

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Amended[1] Application of Canadian ZAI Claimants Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and (b)(4) for Allowance of Administrative Expenses of Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP Incurred in Making Substantial Contribution for the Period of October 1, 2004 through August 31, 2008 (the "Application").[2]

---

[1] The applicants filed the First Application of Canadian ZAI Claimants Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for Allowance of Administrative Expenses of Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP as CCAA Representative Counsel Incurred in Making Substantial Contribution for the Period of October 1, 2004 to August 31, 2008 (the "original application") on May 3, 2010 [Docket No. 24724]. The Amended Application provides clarification, as well as additional factual and legal support, for the applicants' fee request and deletes certain expenses which were erroneously included in the original application.

[2] This is the third Section 503(b) application that Representative Counsel have filed in this case.

The first Section 503(b) application sought fees of $321,109.00 and expenses of $11,566.90 for sums paid to local Delaware counsel, The Hogan Firm, for the period of June 22, 2006 through August 31, 2008. The Court approved the application by order dated December 15, 2008 [Docket #20471].

The second Section 503(b) application filed by Representative Counsel sought approval of fees of $394,007.04 and expenses of $55,377.79 incurred by Lauzon Bélanger and Scarfone Hawkins for the period of September 1, 2008 through December 20, 2009. The Court approved the application by order dated June 7, 2010 [Docket #24914].

**FEE AUDITOR'S FINAL REPORT** - Page 1
wrg FR Lauzon and Scarfone Amended 503(b) v2.wpd

## BACKGROUND

1. Lauzon Bélanger S.E.N.C.R.L. ("Lauzon Bélanger") and Scarfone Hawkins LLP ("Scarfone Hawkins") (both, "Representative Counsel") are Canadian law firms which were retained by the Ontario Superior Court of Justice to act as Representative Counsel to Canadian Zonolite Attic Insulation Claimants ("Canadian ZAI Claimants") in a number of Canadian class action lawsuits involving the Debtors and other entities, including the Attorney General of Canada. In the Application, the Representative Counsel seek approval of $2,000,000.00[3], inclusive of both fees and expenses,[4] for their services from October 1, 2004 through August 31, 2008 (the "Application Period").

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2010, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, Issued January 30, 1996 (the "U.S. Trustee Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served an initial report on Representative Counsel based on our review, and we received a response from Representative Counsel, portions of which response are quoted herein.

---

[3] Consistent with the Application, all dollar amounts in this report are in Canadian currency, unless otherwise indicated.

[4] We noted that on pp. 1-2 of the Application, Representative Counsel requested $2,000,000.00 in compensation *and* $108,150.16 in expenses. In response to our request for clarification, Representative Counsel stated that it "is seeking only $2,000,000.00 for both fees *and* expenses, no additional fees or costs."

## DISCUSSION

### General Issues

3.  We offer no opinion in this report as to whether Representative Counsel should be compensated under Section 503(b), or as to Representative Counsel's suggestion that the Court should approve the $2 million award explained in Paragraph 4, *infra,* under the principles of comity. Rather, our recommendations pertain only to the reasonableness of the fees and expenses requested and are contingent on the Court's determination that Representative Counsel have satisfied the requirements of Section 503(b).

4.  We note that Representative Counsel were retained by the Ontario Superior Court of Justice to represent the Canadian ZAI Claimants by order dated February 8, 2006, in case No. 01-CL-4081 ("Canadian ZAI Litigation"). Pursuant to the terms of Representative Counsel's retention order, Representative Counsel were to be compensated by the Canadian ZAI Claimants. We asked Representative Counsel to provide any other documents pertaining to their retention. We also asked Representative Counsel if they have received any compensation or expense reimbursement in the case to date, aside from that which was awarded by the Court on June 7, 2010.[5] Representative Counsel directed us to the retention order referenced above and responded as follows:

> It was originally contemplated that Representative Counsel was to be compensated by Canadian claimants, however, that changed pursuant to the Amended and Restated Minutes of Settlement. Representative Counsel have not received any compensation for their services on the case to date other than pursuant to Order of this Court....

We understand from Representative Counsel's response that there are no other agreements for its compensation in the ZAI litigation.

5.  We further note that, pursuant to the terms of the <u>Amended and Restated CDN ZAI Minutes of Settlement</u> ("CDN ZAI Settlement") between Debtors and Representative Counsel, dated November 16, 2009, and approved by the Ontario Superior Court of Justice in the Canadian ZAI

---

[5] *See* Footnote 2, *supra.*

Litigation on January 5, 2010, Representative Counsel are to be paid the sum of $2,000,000.00 from the Canadian ZAI Property Damage Claims Fund, which fund shall be funded on the Effective Date of Debtors' First Amended Joint Plan of Reorganization (the "Plan"). In the meantime, however, Representative Counsel filed with the Court this Application pursuant to Section 503(b) seeking approval of their $2,000,000.00 compensation payment as an administrative expense. In response to our request for clarification, Representative Counsel confirmed that they "are seeking Court approval of the $2 million payment contingent upon the Plan being confirmed and becoming effective."

6.  We note that attached to the Application are time and expense entries supporting total fees of $818,746.15 and total expenses of $108,150.16. Of this amount, $381,251.65 in fees and $77,879.32 in expenses were incurred by Lauzon Bélanger, and $437,494.50 in fees and $30,270.84 in expenses were incurred by Scarfone Hawkins. The Application also states that 11% of the $2,000,000.00 award would be paid by Representative Counsel to the Merchant Law Group ("MLG") and $300,000.00 of the $2,000,000.00 award would be paid to Aikins MacAulay and Thorvaldson ("Aikins"), both of which are Canadian law firms acting as co-counsel with Lauzon Bélanger and Scarfone Hawkins in the Canadian class actions concerning ZAI. For clarification, we asked Representative Counsel how the remainder of the $2 million sum would be divided, and Representative Counsel responded: "The $2,000,000.00 will be divided 50/50 between Lauzon Bélanger and Scarfone Hawkins after the applicable payments to Merchant Law Group and Aikins MacAulay and Thorvaldson."

7.  Among those factors listed in Section 330(a)(3) for determining reasonable compensation are:

> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Similarly, "the cost of comparable services other than in a case under this title" is a factor for determining reasonable compensation under Section 503(b)(4). We note the Court's observation

in its Order approving the settlement agreement of the U.S. ZAI claimants[6] that "a 25% fee is considered a benchmark in this circuit for a reasonable class action attorney's fee award."[7] We further note Representative Counsel's statement in Paragraph 54 of the Application that the $2 million award in this instance would "meet this standard":

> By analogy, the Representative Counsels' $2 million CDN would meet this (the 25%) standard. The Amended Minutes of Settlement provide that the CDN ZAI PD Claims Fund will be funded with between $8,095,632.44 CDN and $8,595,632.44 CDN depending on certain timing issues. In calculating twenty-five percent of the lower funding figure, the fees would be $2,023,908.00 CDN; and $2,148,908.00 CDN under the higher funding scenario. Accordingly, the $2 million CDN fee complies with the 25% benchmark applied to U.S. class action fees.

We asked Representative Counsel to provide some examples of attorney's fee awards in Canadian class action cases which have settled under terms similar to those in the CDN ZAI Settlement. Representative Counsel responded as follows:

> Regarding examples of attorney's fee awards in Canadian class action cases, we provide the following: a) Memorandum of David Thompson, of Scarfone Hawkins, which summarizes Canadian law regarding class action fees, attached hereto ...; b) Canadian case law, *Gagne v. Silcorp Ltd -1998,* attached hereto ...; and c) Pages 6 through 23 of Ward Branch's textbook, "Class Actions in Canada" (Canada Law Book, November, 2009), which deals with approval of fees, attached hereto .... Ward Branch's text is considered to be one of the leading works on Canadian class actions and contains multiple references to cases involving fee approvals.

We have attached the Memorandum, the *Gagne* case, and the excerpt from the treatise, *Class Actions in Canada*, as Response Exhibits "1," "2," and "3," respectively. While we would have liked to have seen more discussion of fees awarded in class action cases settling under terms similar to those in the present case, nevertheless, the materials provided by Representative Counsel are generally helpful in evaluating the reasonableness of the $2 million compensation request. We note that according to *Class Actions in Canada*, at 7:175, class action counsel can be compensated by means of a percentage of recovery, a multiplier on time spent, or a flat fee. In instances such as the present

---

[6] Dated April 1, 2009 and entered at Docket No. 21174.

[7] The Court made this statement in the context of its determination of whether the U.S. ZAI claimants' settlement was fair, reasonable, and adequate overall, and was not specifically addressing counsel's fees.

case, where class action counsel seek compensation by means of a flat fee, the reasonableness of the flat fee is tested against the contingency and multiplier approaches. *Id.* In Ontario, approved contingency fees have ranged from 5–30%, with a median percentage fee of 14.73%. Approved multipliers have varied between 1.1 and 5.5, with a median multiplier of 2.74. *Id.* As stated in the Application, the $2 million request computes to slightly less than 25% of the total fund. In *Class Actions in Canada*, the author lists a number of Ontario class actions in which a 25% contingency fee was approved. *See* ¶ 7.175, FN 35(c). Thus, it appears to us that when evaluated on a percentage basis, the $2 million award sought by Representative Counsel is not unreasonable.

8.    We note that if applying a multiplier approach, the $2 million award amounts to approximately 2.44 times the actual fees billed by Representative Counsel. In *Gagne*, the Ontario Court of Appeal found that a lower court judge erred by refusing to apply a multiplier to the base fee. The appellate court noted that the two factors to be considered in determining the appropriateness of a multiplier are (1) the degree of risk assumed by the solicitors and (2) the degree of success they achieve. *Gagne* at ¶ 15. Class action counsel had requested a multiplier of 3 be applied. *Gagne* at ¶ 9. The appellate court held that a multiplier of 2 should be applied to the base fee:

> 25    I recognize that the selection of the precise multiplier is an art, not a science. All the relevant factors must be weighed. Here, while the risk of an adverse finding on liability was minimal, there was a material risk of non-certification. As well, as I have outlined, there were significant elements of success in the manner in which the solicitors conducted the proceedings. Weighed against these success factors is the fact that following the April 17, 1997 settlement, individual class members had to incur further legal fees to finally realize on their claims.
>
> 26    In the end, these considerations must yield a multiplier that, in the words of section 33(7)(b),[8] results in fair and reasonable compensation to the solicitors. One yardstick by which this can be tested is the percentage of gross recovery that would be represented by the multiplied base fee. If the base fee as multiplied constitutes an excessive proportion of the total recovery, the multiplier might well be too high. A second way of testing whether the ultimate compensation is fair and reasonable is to see whether the multiplier is appropriately placed in a range that might run from slightly greater than one to three or four in the most deserving case. Thirdly, regard

---

[8] The court was referring to Section 33(7)(b) of the *Class Proceedings Act, 1992*, S.O. 1992, c. 6.

can be had to the retainer agreement in determining what is fair and reasonable. Finally, fair and reasonable compensation must be sufficient to provide a real economic incentive to solicitors in the future to take on this sort of case and to do it well.

27   In this case, then, taking into account all the relevant considerations I have recited, in my view the appropriate multiplier is two. This reflects the risk and success factors at play. It represents a multiplied fee that is significantly less than ten per cent of gross recovery. It reflects the fact that this case does not exemplify the greatest risk or the greatest success. It is within the range contemplated by the retainer agreement. And finally, the resulting compensation should provide a sufficient real incentive for solicitors in future similar cases.

9.   With regard to the degree of risk incurred by Representative Counsel, we note that in Paragraph 84 of the Application, Representative Counsel stated as follows:

. . . [I]t is clear that the proposed class actions were fraught with peril. Furthermore, the risk and responsibilities have continued to be borne by Representative Counsel once appointed by the CCAA. Further risk was created for Representative Counsel given Judge Fitzgerald's ZAI Science Memorandum ("no reasonable risk of harm") and later Memorandum of Opinion on traditional Canadian property damage claims ("ultimate limitation periods") which arguably rendered the CDN ZAI PD Claims as questionable claims. Despite the risks and legal obstacles, some settlement for the benefit of the class was achieved and later improved upon by negotiation and resolution of the Amended Minutes of Settlement.

We asked Representative Counsel to describe in greater detail the risks which they assumed in undertaking this litigation, and Representative Counsel responded:

Representative Counsel agreed to be appointed pursuant to terms which contemplated they would be paid by Canadian claimants, i.e., with no certainty of recovery of fees or disbursements. Representative Counsel incurred out-of-pocket costs of hundreds of thousands of dollars in engaging a U.S. law firm as an agent as contemplated by paragraph 3(c) of the Order of Justice Farley. Again, there was no certainty of reimbursement of those amounts. Furthermore, when appointed, Representative Counsel had limited information and documentation available to them which would allow them to assess the likelihood of success in the class actions. Additionally, Representative Counsel had not been present at or aware of the Science Trial when it occurred. The class proceedings were stayed pursuant to Order of the CCAA Court. In order to be in a position to prosecute those actions, it would be necessary for Representative Counsel to obtain a lift stay order from the CCAA Court, the prospect of which was daunting. Agreeing to be appointed as Representative Counsel under these circumstances involved enormous risk undertaken by Representative Counsel.

10.   With regard to the degree of success achieved by Representative Counsel, we note that Representative Counsel negotiated with the Debtor the Amended Minutes of Settlement which

provide that, upon the Effective Date of the Plan, between $8,095,643.44 CDN and $8,595,632.44 CDN will be deposited into a fund for the benefit of the Canadian ZAI Claimants. Thus, the efforts of Representative Counsel will lead to a significant recovery for Canadian ZAI Claimants, upon the Effective Date of the Plan. Thus, in view of the risk assumed by Representative Counsel and the degree of success achieved by Representative Counsel, it appears to us that a multiplier of 2.44 applied to Representative Counsel's fees is not unreasonable.

11.     In summary, it appears to us that, if a contingent fee is found to be appropriate, Representative Counsel's request of $2 million is not unreasonable because it is consistent with the customary compensation charged by comparably skilled practitioners in class action cases, and thus we have no objection to Representative Counsel's fees on that basis.

## **Specific Time and Expense Entries**

12.     As noted in paragraph 2, *supra,* we have reviewed each of the time and expense entries attached to the Application, in the event the Court determines that Representative Counsel are more appropriately compensated on the basis of time billed and expenses incurred.

### Lauzon Bélanger

13.     We noted the following expenses for which more information was needed:

| | |
|---|---|
| Various Fees | $932.55 |
| Travel Fees | $13,258.66 |
| Lodging | $3,266.12 |

Lauzon Bélanger provided an itemization for these expenses, which itemization we have attached as Response Exhibit "4,"[9] and, in addition, provided copies of receipts for these expenses. We had no objection to the expenses, except for the following:

$111.50 breakfast expense in Montreal
$215.29 meal expense in New York City

---

[9] The totals for the expenses on the itemization do not correspond to the amounts listed in Paragraph 9 because some of the expense items were converted from CDN to US Dollars. Nevertheless, Lauzon Bélanger has confirmed that the expenses of $932.55 (Various), $3,266.12 (Lodging), and $13,258.66 (Travel) are the accurate expense amounts.
.

$237.07 meal expense

In response to our follow-up inquiry concerning these expenses, Lauzon Bélanger provided the following information:

$111.50 There were two people dining for breakfast;
$215.29 There were two people dining in New York for dinner;
$237.07:    April 15, 2006 — lunch in Philadelphia for $148.81 CDN. We are not sure how many people were dining.
April 15, 2006 — dinner in Philadelphia for $70.84 CDN, and 1 person dined.
April 16, 2006 - snack in Philadelphia for $16.42 CDN, 1 person.

It appears to us that during the timeframe in question, one person could have dined satisfactorily in most locales for $15 for breakfast, $25 for lunch, and $50 for dinner. Accordingly, we accept Lauzon Bélanger's response regarding the snack for $16.42, but recommend the following reductions:

| | |
|---|---|
| $111.50 for breakfast for two | Reduce to $30, for a reduction of $81.50 |
| $215.29 for dinner for two | Reduce to $100, for a reduction of $115.29 |
| $148.81 for lunch for an unknown number of people | Reduce to $50,[10] for a reduction of $98.81 |
| $70.84 for dinner for one | Reduce to $50, for a reduction of $20.84 |

Thus, for all items questioned, we recommend a reduction of $316.44 in expenses.

### Scarfone Hawkins

14.    We noted the following food and lodging expense for which more information was needed:

$1,888.06        New York City expenses: Food & Accommodation – March 16, 2006 – mediation sessions

In response to our inquiry, Scarfone Hawkins provided the expense itemization attached as Response Exhibit "5," and, in addition, stated as follows:

---

[10]It seems reasonable to assume that at least two people dined.

**FEE AUDITOR'S FINAL REPORT** - Page 9
wrg FR Lauzon and Scarfone Amended 503(b) v2.wpd

> Regarding Scarfone Hawkins' food and lodging expense listed as "$1,888.06 New York City expenses: Food & Accommodation - March 16, 2006 - mediation sessions". These charges are for two nights, March 15, 2006, and March 16, 2006, at the Courtyard Marriott in New York, NY.... The room rate was $299.00 per night plus applicable taxes, and a restaurant room charge of $10.89, plus additional food/drink charges of $222.05....

It appears to us that during the timeframe in question, one could obtain satisfactory lodging in New York City for $350 per night, including taxes. Thus, we accept Scarfone Hawkins' response with respect to the hotel charges included in this total. However, we noted from the itemization the following expenses that included charges for drinks:

| Date | Amount | Description |
|---|---|---|
| 3/15/06 | $28.55 | Drinks and snack at CA One Services / Buffalo Airport / with Todd Storms / US$24.14 |
| 3/15/06 | $35.39 | Dinner and drinks at Houston's with Storms / US$35.39 |
| 3/16/06 | $35.21 | Drinks with Storms / Lincourt / US$30.00 |

We inquired of Scarfone Hawkins as to whether these charges included alcoholic beverages, and Scarfone Hawkins responded as follows:

> In respect of the meal expenses dated 3/15/06 and 3/16/06 (Items 1, 3 and 5) the "drinks" do refer to alcoholic beverages. Because the receipts are not detailed, it cannot be determined which portion is for drinks and which is for food items. Accordingly, those three expenses can be deducted in their entirety.

We appreciate Scarfone Hawkins' response and recommend a reduction of $99.15 in expenses.

15. We noted the following air fare charges for which more information was needed:

$1,653.88    Air travel to and from Philadelphia, May 12

$100.00    May 12, flight upgrades for David Thompson and Matt Moloci

In response to our inquiry, Scarfone Hawkins provided the following information:

> The "Air travel to and from Philadelphia, May 12" in the amount of $1,653.88, was for two passengers, David Thompson and Matthew G. Moloci. The departure airport was Toronto for attendance at mediation in Wilmington, Delaware, on May 12, 2009. The "flight upgrade" charge of $100.00 was for a flight time change, not an upgrade to business or first class. The class of fare for both passengers was coach/regular.

We accept Scarfone Hawkins' response and have no objection to these expenses.

16.  We noted the following travel expense for which more information was needed:

TRAVEL – Toronto hearings            $705.76

In response to our inquiry, Scarfone Hawkins provided an expense itemization which we have attached as Response Exhibit "6," and in addition, stated as follows:

> Upon detailed review, Scarfone Hawkins realized that some of their historical disbursement items were improperly labeled and characterized. This occurred early on in the case well before they ever contemplated that they would be appointed special counsel. Their practice today is to more accurately and precisely record all items.
>
> Attached is a chart showing as much detail as is available in an attempt to reconcile the charges.
>
> Please note as well that in some instances there are no actual receipts. Some of the travel items are per kilometre charges by the lawyers for hearings/meetings in Toronto and would be recorded on internal expense reports.
>
> All available receipts have been previously provided. Additionally, please note that the disbursement items are being claimed as part of the overall $2 million payment and not over and above that amount.
>
> The disbursement details are provided as part and parcel of our justification of the overall $2 million substantial contribution request.

We appreciate Scarfone Hawkins' response and have no objection to any of the expenses listed on Response Exhibit "6," with the exception of the following items:

| 12 | 8/31/07 | 360.00 | Attend Plaintiffs' counsel meeting at Lauzon Belanger Montreal; travel expense |
| 14 | 7/10/08 | 136.76 | Travel to Buffalo New York (May 2008) |

As the response provides no indication of the type of travel expense incurred, we are unable to evaluate the reasonableness or necessity of these expenses, and must, therefore, recommend disallowance of same, for a reduction of $496.76 in expenses.

## CONCLUSION

17.  Thus, contingent upon the Court's determination that Representative Counsel should be compensated, either by virtue of Section 503(b) or the principles of comity, we recommend

approval of the following:

      a.     In the event the Court determines that Representative Counsel are appropriately compensated by means of a contingency fee, we recommend approval of $2,000,000.00, inclusive of fees and expenses, for Representative Counsel's services for the Application Period.

      b.     Alternatively, if the Court determines that compensation on an hourly basis is appropriate, we recommend approval of $818,746.15 in fees and $107,237.81 in expenses ($108,150.16 minus $912.35) for Representative Counsel's services for the Application Period, of which $381,251.65 in fees and $77,562.88 in expenses ($77,879.32 minus $316.44) are for the services of Lauzon Bélanger, and $437,494.50 in fees and $29,674.93 in expenses ($30,270.84 minus $595.91) are for the services of Scarfone Hawkins.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _/s/ Warren H. Smith_

    Warren H. Smith
    Texas State Bar No. 18757050

Republic Center
325 N. St. Paul Street, Suite 1250
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 12th day of July, 2010.

                                        Warren H. Smith

## SERVICE LIST
### Notice Parties

**Counsel for the Applicants**
Daniel K. Hogan
THE HOGAN FIRM
1311 Delaware Avenue
Wilmington, DE 19806

dan@dkhogan.com

**The Debtors**
Richard Finke.
Assistant General Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
Deanna Boll
Holly Bull
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

Laura Davis Jones, Esq.
James E. O'Neill
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris LLP
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
Wilmington, DE 19801

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**
Gary M. Becker
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

Teresa K.D. Currier, Esq.
SAUL EWING LLP
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899

**United States Trustee**
David Klauder
Office of the United States Trustee
844 King Street, Lockbox 35, Room 2207
Wilmington, DE 19801

**FEE AUDITOR'S FINAL REPORT** - Page 14
wrg FR Lauzon and Scarfone Amended 503(b) v2.wpd

# RESPONSE EXHIBIT "1"

## MEMORANDUM

TO: FILE

FROM: DAVID THOMPSON

RE: SUMMARY OF CANADIAN LAW RE: CLASS ACTION FEES

DATE: JUNE 1, 2010

## INTRODUCTION

Generally speaking, Canadian law permits counsel to enter into contingency fee agreements with representative plaintiffs in class action cases. Furthermore, Canadian law permits counsel to have their fees increased by a multiplier to be determined by the court. Percentage-based fees and block fees are regularly approved by the Canadian courts.

Whether courts have determined counsel fees using a base fee and a multiplier approach, a percentage-based fee, or a fixed sum, the factors considered are essentially the same.

In deciding on an appropriate multiplier, courts generally consider the percentage of the recovery which the fee will equate to. In evaluating a percentage-based fee or a fixed fee, the court will often "cross-check" whether the resultant multiplier is within a reasonable range. Ultimately, the inquiry/determination centers on whether there is fair value to the class. In performing its function of determining appropriate legal fees, Canadian courts have been aware of their role as sole independent arbiter of the fee request and its reasonableness:

> The defendant has capped its contribution to legal costs in the settlement agreement, so the defendant is indifferent as to the determination of class counsel's fees. The self-interest of class counsel is adverse to the self-interest of the class members. Therefore, the Court is the only independent reviewer of the claimed fees.
>
> *Clients of JNP Financial Services Inc. v. Paul,* [2001], O.J. No. 1616 (S.C.J.)

## BASE FEE

The multiplier approach described below requires that the court determine the appropriate "reasonable base fee".

Canadian courts scrutinize the total hours docketed by counsel and paralegal staff involved in the litigation and the appropriateness of the hourly rate.

In considering the reasonableness of a base fee, the usual factors to be considered include the following:

1. time expended by counsel;
2. legal complexity of the matters in issue;
3. degree of responsibility assumed by counsel;
4. the monetary value of matters in issue;
5. the importance of matters in issue to the client;
6. the degree of skill and competence demonstrated by counsel;
7. the result achieved;
8. the ability of the client to pay (if relevant); and,
9. the client's expectation as to the amount of the fee.

## **MULTIPLIER APPROACH**

The application of a multiplier to a base fee is one method of providing economic incentive to lawyers who take on appropriate cases, thereby satisfying the goal of increased access to justice, one of the main objectives of class proceedings legislation.

In *Gagne v. Silcorp Ltd.*, the Ontario Court of Appeal stated:

> Another fundamental objective [of the *Class Proceedings Act*, *1992*] is to provide enhanced access to justice to those with claims that would not otherwise be brought because to do so as individual proceedings would be prohibitively uneconomic or inefficient. The provision of contingency fees where a multiplier is applied to the base fee is an important means to achieve this objective. The opportunity to achieve a multiple of the base fee if the class action succeeds gives the lawyer the necessary economic incentive to take the case in the first place and to do it well. However, if the Act is to fulfill its promise, that opportunity must not be a false hope.
>
> [F]air and reasonable compensation must be sufficient to provide a real economic incentive to solicitors in the future to take on this sort of case and to do it well.
>
> *Gagne v. Silcorp Ltd.*, [1998] O.J. No. 4182 (C.A.)

Twelve factors have normally been considered in setting class counsel fees under the multiplier approach. These factors include:

1. time and labour required;
2. novelty and difficulty of the action;
3. skill of counsel required to provide required legal service;
4. preclusion of other employment by counsel due to acceptance of the case;
5. customary fee;
6. whether the fee is fixed or contingent;
7. time limitations imposed by the client or the circumstances;
8. amount involved and results obtained;
9. experience, reputation and ability of counsel;
10. undesirability of the case;
11. nature and length of professional relationship with the client; and,
12. awards in similar cases.

These 12 factors are drawn from U.S. case law pursuant to which American courts have used a "lodestar" approach to calculate counsel fees. The "lodestar" approach is comparable to the base fee/multiplier approach used in Canada.

The "Lindy Lodestar" approach was developed in the U.S. with the term arising out of the decision *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator and Standard Sanitary Corp.*, 487 F.2d 161 (3D Cir. 1973), appeal allowed following remand, 540 F.2d 102 (3D Cir. 1976).

Under the "Lodestar" approach the number of hours reasonably expended by counsel is multiplied by both the lawyer's hourly rate and a court-approved multiplier.

Canadian case law has generally looked to these various factors in using a multiplier approach. Canadian law generally indicates that any multiplier should result in "fair and reasonable compensation" for the risk incurred in taking on a case on a contingent basis. The court also considers the manner in which counsel conducted the proceedings.

The determination of the fee is of necessity largely discretionary.

The Ontario Court of Appeal has stated that multipliers will tend to range between slightly greater than 1 at the low end and 4 in the most difficult cases, however, there are cases where a multiplier close to 5 has been awarded.

Canadian law emphasizes the risk to counsel in taking on difficult cases on a contingency basis. Re-evaluation of risk with perfect hindsight is viewed to be unfair to class counsel.

In a case which appears risky at the outset (when counsel decides to accept the case), but rapidly becomes less risky due to other circumstances, there is no corresponding reason to adjust a multiplier or percentage. In most cases, the courts consider the degree of legal complexity of the matters in question, the amount of time expended by counsel, the responsibility involved in bringing a matter to a successful conclusion, the monetary value of matters in issue, the importance of the matter to the class, the degree of skill and competence demonstrated by counsel, the result achieved and the expectation of any representative plaintiff as to the amount of the fee. The courts emphasize the degree of risk to counsel and the degree of success achieved, particularly in difficult cases.

**FIXED FEES**

Canadian law recognizes fixed sums per case and block fees which have been approved by the court.

Even in these types of cases, Canadian courts still adhere to the principles discussed in *Gagne* above in assessing the fairness and reasonableness of the counsel fee, whether that fee is calculated on a lump-sum basis or otherwise.

The discretion of the court still applies and prevails.

**PERCENTAGE-BASED FEES**

In Canada there has been some criticism of the lodestar/multiplier approach and a suggested shift towards a simpler percentage method.

One argument generally put forward is that the lodestar/multiplier method generally produces a result equivalent to approximately 30% of the settlement or judgment fund, which could be arrived at more quickly and efficiently using a percentage-based approach from the start.

**FEE AUDITOR'S FINAL REPORT** - Page 17
wrg FR Lauzon and Scarfone Amended 503(b) v2.wpd

It has been argued that a percentage-based calculation places the emphasis on the quality of representation and the benefit conferred on the class. Such an approach properly rewards "one imaginative, brilliant hour" rather than "one thousand plodding hours" - - a statement of Justice Winkler (now the Chief Justice of Ontario).

As indicated, the percentage of the potential fee awarded as compared to the quantum of settlement or judgment is often compared to a multiplier or approach as a "cross-check" of reasonableness of the fee.

In the same way that a percentage-based calculation may be considered in determining the appropriate quantum of a multiplier-based fee, the reasonableness of a percentage-based fee is often assessed by a number of corroborating factors such as testing the fee as a percentage against recovery, as a multiple of base fees and whether, in the circumstances, the fee provides sufficient incentive for counsel to take on difficult cases in the future.

Canadian courts have approved percentage-based contingent fee agreements where counsel receive 25% of the amounts recovered by the class under any judgment, order or settlement plus costs recovered from the defendant.

Some Canadian courts have determined that a sliding scale percentage is most appropriate. By way of example, counsel could receive a fee of up to one-third on the first $10 million recovered, a reduced percentage on the next $10 million and a smaller percentage on all amounts thereafter. The percentage fee is generally regarded to be lower where the recovery is higher.

## CLASS COUNSEL FEES IN CANADIAN INSOLVENCY PROCEEDINGS

Where Canadian class actions overlap with insolvency proceedings, the approach of the courts in the insolvency proceedings towards counsel fees for counsel involved in pursuing class proceedings is consistent with the general class proceeding approach.

There are numerous examples in Canadian law of Canadian insolvency courts awarding fees to counsel in the context of the insolvency proceedings on the basis of the class proceeding principles where counsel have been involved in prosecuting class proceedings against the insolvent/court-protected debtors.

It is of course noteworthy here that the $2 million fee request was approved by decision of the Honourable Mr. Justice Morawetz of the Superior Court of Justice as part of approval of the Amended and Restated Minutes of Settlement by the CCAA Court.


DAVE
/ad