# EXHIBIT C-2

**Westlaw Delivery Summary Report for MCCORMICK,SUSAN**

Date/Time of Request:                    Thursday, February 5, 2009 12:16 Central
Client Identifier:                       08L165KM
Database:                                CAN-ALLCASES
Citation Text:                           1998 CarswellOnt 4045
Lines:                                   385
Documents:                               1
Images:                                  0

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

113 O.A.C. 299, 167 D.L.R. (4th) 325, 39 C.C.E.L. (2d) 253, 41 O.R. (3d) 417,
27 C.P.C. (4th) 114, [1998] O.J. No. 4182

**H**1998 CarswellOnt 4045

Gagne v. Silcorp Ltd.

Sherrie B. Gagne, Plaintiff and Silcorp Limited, Defendant

Ontario Court of Appeal

Charron, Rosenberg and Goudge JJ.A.

Heard: May 27, 1998
Judgment: October 21, 1998
Docket: CA C28348

Copyright © Carswell, a Division of

Thomson Reuters Canada Ltd. or its Licensors. All rights reserved.

Proceedings: reversing in part (1997), 14 C.P.C. (4th) 269 (Ont. Gen. Div.)

Counsel: *Paul S.A. Lamek, Q.C.*, for the appellant solicitors.

McGowan & Associates and Jeff Burtt, advocate.

Subject: Civil Practice and Procedure

Barristers and solicitors --- Relationship with client -- Fees -- Agreements for fees -- Contingency fees -- General

Plaintiffs brought wrongful dismissal class action proceeding against corporation after they were terminated during merger of convenience store chains -- Consortium of solicitors represented plaintiffs on contingency basis -- Agreement between consortium and plaintiffs stated that consortium could seek court approval for a multiplier to be applied to base fee -- Action was settled successfully shortly after being commenced -- Consortium brought motion for approval of agreement for base fee and multiplier for solicitor's fees, and pro rata division of fees among class members -- Motions judge held that multiplier not appropriate as consortium did not face material risk in accepting retainer -- There was no serious issue as to liability in action -- Base fee and pro rata division of fees among class members approved -- Appeal by consortium allowed in part -- Section 33(7)(b) of Class Proceedings Act provided judge with discretion whether to apply multiplier or not -- Motions judge erred in exercise of his discretion by failing to give weight to relevant risk and success considerations -- Risk that class action would not be certified was material, and ought to have been given weight -- Motions judge failed to recognize that consortium achieved immediate, partial success in extracting commitment from corporation to comply with Employment Standards Act -- Motions judge gave little consideration to fact that ultimate settlement was achieved quickly -- Consideration of success of action should also have recognized that settlement provided creative and effective process resulting in speedy resolution of individual claims -- Motions judge was correct in not considering views of class members as to

113 O.A.C. 299, 167 D.L.R. (4th) 325, 39 C.C.E.L. (2d) 253, 41 O.R. (3d) 417,
27 C.P.C. (4th) 114, [1998] O.J. No. 4182

whether multiplier should be applied -- Appropriate multiplier in circumstances was two -- Class Proceedings Act,
1992, S.O. 1992, c. 6 ss. 7(b), 33(1), (4), and (7)(b) -- Employment Standards Act, R.S.O. 1990, c. E.14.

**Cases considered by *Goudge J.A.*:**

> *Dabbs v. Sun Life Assurance Co. of Canada* (September 14, 1998), Doc. CA C30326, M22971, M23028
> (Ont. C.A.) -- considered

> *Friends of the Oldman River Society v. Canada (Minister of Transport)*, [1992] 2 W.W.R. 193, [1992] 1
> S.C.R. 3, 3 Admin. L.R. (2d) 1, 7 C.E.L.R. (N.S.) 1, 84 Alta. L.R. (2d) 129, 88 D.L.R. (4th) 1, 132 N.R.
> 321, 48 F.T.R. 160 (S.C.C.) -- applied

**Statutes considered:**

*Class Proceedings Act, 1992*, S.O. 1992, c. 6

> Generally -- referred to

> s. 25 -- referred to

> s. 29 -- referred to

> s. 33 -- considered

> s. 33(2) -- considered

> s. 33(3) "base fee" -- considered

> s. 33(7)(b) -- considered

> s. 33(9) -- considered

*Employment Standards Act*, R.S.O. 1990, c. E.14

> Generally -- referred to

APPEAL from judgment reported at (1997), 14 C.P.C. (4th) 269, 35 O.R. (3d) 501, 42 O.T.C. 62 (Ont. Gen. Div.),
denying consortium's request to increase base fee by multiple of three.

**The judgment of the court was delivered by *Goudge J.A.*:**

1    The *Class Proceedings Act, 1992*, S.O. 1992, c. 6 (the "Act") permits a solicitor to take a class action on a con-
tingency basis. If the action is successful the Act permits the solicitor to seek the court's approval to increase his or
her base fee by applying a multiple to that fee. This appeal concerns the appropriate considerations that should in-
form the court's decision on such a motion.

2    The appellants are solicitors who acted on behalf of the plaintiff Sherrie Gagne in a class action against the de-
fendant Silcorp Limited. The action was concluded successfully and the appellants, having taken the case on a con-

113 O.A.C. 299, 167 D.L.R. (4th) 325, 39 C.C.E.L. (2d) 253, 41 O.R. (3d) 417,
27 C.P.C. (4th) 114, [1998] O.J. No. 4182

tingency basis, moved to increase their base fee by a multiple of three. Southey J. denied this request, allowing the
solicitors only their base fee, namely the product of their usual hourly rates and their hours worked on the matter.
This is an appeal from that disposition.

**The Factual Background**

3    Beginning in late 1996, the defendant Silcorp proceeded to merge the operations of the Becker's and Mac's con-
venience store chains which it owned. As a consequence of the merger, a number of its employees were no longer
needed and were dismissed. Initially Silcorp offered those terminated only an amount that was less than the mini-
mum termination and severance pay to which they were entitled under the *Employment Standards Act*, R.S.O. 1990,
c. E.14.

4    On March 24, 1997 the appellant solicitors commenced a class action for wrongful dismissal on behalf of those
former employees who had been terminated. Sherrie Gagne was the representative plaintiff.

5    Immediately after commencing the action, the appellants brought a motion before Southey J. seeking an injunc-
tion to compel Silcorp to comply with the *Employment Standards Act*. This motion was adjourned from April 3,
1997 to April 17, 1997 on the undertaking of Silcorp to immediately comply with the requirements of that Act.

6    The parties then engaged in intensive negotiations which culminated in minutes of settlement dated April 14,
1997. On April 17, 1997, that settlement was approved by Southey J. as required by s. 29 of the Act. The settlement
order was very complex but its essential elements were the following:

    • The action was certified as a class proceeding for the purposes of the Act.

    • Sherrie Gagne was appointed the representative plaintiff on behalf of the class of former employees
    who had been terminated by the defendant Silcorp.

    • The appellant solicitors were appointed as counsel for the class.

    • The defendant was adjudged liable for compensatory damages and *Employment Standards Act* enti-
    tlements.

    • The claims for punitive and exemplary damages were dismissed.

    • Pursuant to s. 25 of the Act, a reference was directed to determine the quantum of damages for each
    class member.

    • The terms of the reference created a mini-hearing process with a mediation stage and an arbitration
    stage.

    • The class members were each permitted to be represented in the mini-hearing process by a personal
    lawyer rather than the appellant solicitors.

7    Between the date of the settlement and August 26, 1997, when the appellant solicitors prepared the material
seeking to triple their base fee, thirty-five individual claims were finally resolved through the mini-hearing process.
This court was further advised that by the time of this appeal, all sixty-five class members had resolved their indi-
vidual claims for a total gross recovery of $1,945,723.

Copr. © West 2008 No Claim to Orig. Govt. Works

113 O.A.C. 299, 167 D.L.R. (4th) 325, 39 C.C.E.L. (2d) 253, 41 O.R. (3d) 417,
27 C.P.C. (4th) 114, [1998] O.J. No. 4182

8    As required by the Act, the appellant solicitors executed a written agreement with the representative plaintiff respecting their fees and disbursements. It provided that the payment of any legal fees was contingent on the class action being concluded successfully as defined by the Act. It also provided that the base fee would be the product of the hours worked by the solicitors and their usual hourly rates. In addition, it set out that the solicitors could seek court approval for a multiplier to be applied to that base fee. Finally, the agreement described two examples of how this might work:

> 7. The Consortium and the Client acknowledge it is difficult to estimate what the expected fee will be. However, the following are estimates:
>
> (a) If the class action results in a quick settlement for the class, within 3 months after the date of this retainer, and at that time the Base Fee is $50,000 and if the court sets the Multiplier at 3.0, then the fee will be $50,000 x 3.0 = $150,000.
>
> (b) If the trial of the common issues occurs within 2 or 3 years and is decided in favour of the class and no appeals are taken, and at the time the Base Fee is $250,000 and if the court sets the Multiplier at 2.0, then the fee will be $250,000 x 2.0 = $500,000.
>
> These estimates do not include work for any mini-hearings or other proceedings which may be necessary to deal with individual damage claims.

9    The motion brought by the appellants sought a multiplier of 3. In denying this request Southey J. considered two factors, namely the degree of risk in accepting the retainer and the degree of success achieved by the solicitors. He set out his analysis of each of these factors clearly and concisely as follows:

> As to the first of the above elements, I am unable to see any reason why the employees who were dismissed would not be entitled to their "entitlements" under the *Employment Standards Act* and to compensatory damages, if any. It appears to me that there was no serious issue as to liability in this case. In these circumstances, I cannot find that there was any material risk in accepting the retainer.
>
> When I asked counsel for the Consortium to explain the risk, his reply was that the difficulty arose out of procedural complexity. In my judgment, that is not the sort of risk that should influence the multiplier. That sort of risk is adequately covered by an award of a Base Fee in the full amount of the usual charges made by the legal professionals, as I have approved in this case....
>
> As to the second element, what has been achieved? Former employees now have available to them a procedure for the prompt determination of their claims. For Achieving that result, the solicitors, in my opinion, are fairly compensated for their services to August 8 last by the Base Fee of $109,411.28, including GST. Any premium based on a high degree of success must depend on the recovery in each case, which was not the subject of evidence before me.

10    The appellants argue that Southey J. erred in his consideration of both the risk factors and the success factors and, further, that he failed to give weight to the views of the class members who, it is argued, appear content with a significant multiplier. No one appeared in opposition to the appellants.

**Analysis**

11    Central to a consideration of these arguments is s. 33 of the Act. It reads as follows:

113 O.A.C. 299, 167 D.L.R. (4th) 325, 39 C.C.E.L. (2d) 253, 41 O.R. (3d) 417,
27 C.P.C. (4th) 114, [1998] O.J. No. 4182

**Agreements for payment only in the event of success**

33. -- (1) Despite the *Solicitors Act* and *An Act Respecting Champerty*, being chapter 327 of Revised Stat-
utes of Ontario, 1897, a solicitor and a representative party may enter into a written agreement providing
for payment of fees and disbursements only in the event of success in a class proceeding.

**Interpretation, success in a proceeding**

(2) For the purposes of subsection (1), success in a class proceeding includes,

    (a) a judgment on common issues in favour of some or all class members; and

    (b) a settlement that benefits one or more class members.

**Definitions**

(3) For the purposes of subsections (4) to (7), "base fee" means the result of multiplying the total number of
hours worked by an hourly rate;

"multiplier" means a multiple to be applied to a base fee.

**Agreements to increase fees by a multiplier**

(4) An agreement under subsection (1) may permit the solicitor to make a motion to the court to have his or
her fees increased by a multiplier.

**Motion to increase fee by a multiplier**

(5) A motion under subsection (4) shall be heard by a judge who has,

    (a) given judgment on common issues in favour of some or all class members; or

    (b) approved a settlement that benefits any class member.

**Idem**

(6) Where the judge referred to in subsection (5) is unavailable for any reason, the regional senior judge
shall assign another judge of the court for the purpose.

**Idem**

(7) On the motion of a solicitor who has entered into an agreement under subsection (4), the court,

    (a) shall determine the amount of the solicitor's base fee;

    (b) may apply a multiplier to the base fee that results in fair and reasonable compensation to the solici-
tor for the risk incurred in undertaking and continuing the proceeding under an agreement for payment
only in the event of success; and

Copr. © West 2008 No Claim to Orig. Govt. Works

113 O.A.C. 299, 167 D.L.R. (4th) 325, 39 C.C.E.L. (2d) 253, 41 O.R. (3d) 417,
27 C.P.C. (4th) 114, [1998] O.J. No. 4182

(c) shall determine the amount of disbursements to which the solicitor is entitled, including interest calculated on the disbursements incurred, as totalled at the end of each six-month period following the date of the agreement.

**Idem**

(8) In making a determination under clause (7)(a), the court shall allow only a reasonable fee.

**Idem**

(9) In making a determination under (7)(b), the court may consider the manner in which the solicitor conducted the proceeding.

12    This section makes clear that the motion seeking to apply a multiplier to the base fee can be brought only after the class proceeding has been concluded successfully as defined in s. 33(2). Section 33(7)(b) gives the judge a discretion in determining whether to apply a multiplier or not. Hence, on appeal, while this court is not free to simply substitute its own exercise of discretion for that exercised at first instance, reversal of the order appealed from may be justified if the motions judge gave no weight or insufficient weight to considerations relevant to his decision. See *Friends of the Oldman River Society v. Canada (Minister of Transport), [1992] 1 S.C.R. 3* (S.C.C.) at 76-77.

13    In applying this standard of review to the decision appealed from, it is appropriate to begin with a consideration of the genesis of the *Class Proceedings Act, 1992*. It was enacted following much legislative study and in the wake of a detailed report of the Ontario Law Reform Commission laying out the broad rationale for such legislation. One of the objects which the Act seeks to achieve is the efficient handling of potentially complex cases of mass wrongs. See *Dabbs v. Sun Life Assurance Co. of Canada*, a judgment of the Ontario Court of Appeal, released (September 14, 1998), Doc. CA C30326, M22971, M23028 (Ont. C.A.) at p. 3.

14    Another fundamental objective is to provide enhanced access to justice to those with claims that would not otherwise be brought because to do so as individual proceedings would be prohibitively uneconomic or inefficient. The provision of contingency fees where a multiplier is applied to the base fee is an important means to achieve this objective. The opportunity to achieve a multiple of the base fee if the class action succeeds gives the lawyer the necessary economic incentive to take the case in the first place and to do it well. However, if the Act is to fulfill its promise, that opportunity must not be a false hope.

15    With that background, I turn to the judgment appealed from. As I have said, Southey J. addressed two criteria in concluding that he would not apply a multiple to the base fee: the degree of risk assumed by the solicitors and the degree of success they achieve. In my view, he was correct in focusing on these two considerations. Section 33(7)(b) makes clear the relevance of "the risk incurred in undertaking and continuing the proceeding under an agreement for payment only in the event of success". Section 33(9) invites a consideration of the manner in which the solicitor conducted the proceedings. However, for the reasons that follow I have concluded that he erred in giving no weight to considerations relevant to each of the risk and success criteria.

***Risk Factors***

16    The multiplier is in part a reward to the solicitor for bearing the risks of acting in the litigation. The court must determine whether these risks were sufficient that together with the other relevant considerations a multiplier is warranted. While this determination is made after the class proceeding has concluded successfully, it is the risks when the litigation commenced and as it continued that must be assessed.

Copr. © West 2008 No Claim to Orig. Govt. Works

113 O.A.C. 299, 167 D.L.R. (4th) 325, 39 C.C.E.L. (2d) 253, 41 O.R. (3d) 417,
27 C.P.C. (4th) 114, [1998] O.J. No. 4182

17    The only risk factor considered by Southey J. was whether the defendant might ultimately escape liability. Because there was no real doubt about that liability, he determined that there was no material risk in accepting the retainer.

18    Since this class proceeding was concluded quickly, the risk assessment was properly focussed on the risks incurred at the outset in undertaking the proceeding and did not have to extend to the risks, if any, in continuing it. Nonetheless, in my view there was from the beginning a second material risk that was a relevant consideration, namely the risk that comes with this action being brought as a class proceeding, particularly the risk of non-certification. The certification step in a class action is a significant one, often requiring extensive preparation by counsel. If certification is denied, a solicitor who has agreed to a fee contingent on success recovers nothing. Moreover, when this action was commenced, certification could not be predicted with certainty. A debate was quite possible about whether the common issues requirement would be met or whether a class proceeding was the preferable procedure given the enforcement mechanisms provided by the *Employment Standards Act*. This risk factor was material and ought to have been given weight.

19    It is true that this risk factor will be present in most class proceedings. This factor should be recognized so that solicitors faced with a class proceeding retainer will have the necessary economic incentive to take on the matter. They will know that if, in prosecuting the action, they can meet the success criterion there will be a real opportunity to have some multiple attached to the base fee. To accord due weight to this consideration is to serve the legislative objective of enhanced access to justice.

### Success Factors

20    Section 33(9) invites the court, in determining whether a multiplier is appropriate, to consider the manner in which the solicitor conducted the proceeding. Just as the real opportunity to receive an enhanced reward for incurring the risks of the litigation serves as an incentive for the solicitor to take on the retainer, that opportunity is also designed to serve as an incentive for the solicitor to achieve the best possible results for the class, expeditiously and efficiently.

21    The only success factor considered by Southey J. was that a procedure had been provided to former employees for the prompt determination of their claims. This was insufficient, in his view, to warrant the application of any multiple to the base fee.

22    In my view, this fails to recognize that the solicitors achieved immediate, partial success in extracting a commitment from the defendant to comply forthwith with the *Employment Standards Act*. Second, the ultimate settlement of the common issues was achieved quickly. Third, the settlement provided for a creative and effective mini-hearing process that resulted in the complete resolution of all individual claims within little more than a year. These factors are all relevant to the degree of success with which the solicitors conducted the proceedings and all deserved to be considered in determining whether a multiplier was appropriate.

### Views of Class Members

23    In reaching his decision Southey J. did not consider the views of class members about whether a multiplier should properly be applied to the base fee. In my view, he was correct in doing so. The Act does not appear to invite such a consideration. Moreover, in this case those views, which are said to constitute acceptance or even approval of a multiplier, can be gleaned only by a very tenuous process of inference. One simply cannot say with any certainty that the views of class members on this issue are as they are argued to be.

24    In summary, therefore, I have concluded that Southey J. erred in the exercise of his discretion in failing to give

Copr. © West 2008 No Claim to Orig. Govt. Works

113 O.A.C. 299, 167 D.L.R. (4th) 325, 39 C.C.E.L. (2d) 253, 41 O.R. (3d) 417,
27 C.P.C. (4th) 114, [1998] O.J. No. 4182

due weight to relevant risk and success considerations. If appropriate weight is accorded them, I think the conclusion must be that this is an appropriate case to apply a multiplier to the base fee.

25    I recognize that the selection of the precise multiplier is an art, not a science. All the relevant factors must be weighed. Here, while the risk of an adverse finding on liability was minimal, there was a material risk of non-certification. As well, as I have outlined, there were significant elements of success in the manner in which the solicitors conducted the proceedings. Weighed against these success factors is the fact that following the April 17, 1997 settlement, individual class members had to incur further legal fees to finally realize on their claims.

26    In the end, these considerations must yield a multiplier that, in the words of section 33(7)(b), results in fair and reasonable compensation to the solicitors. One yardstick by which this can be tested is the percentage of gross recovery that would be represented by the multiplied base fee. If the base fee as multiplied constitutes an excessive proportion of the total recovery, the multiplier might well be too high. A second way of testing whether the ultimate compensation is fair and reasonable is to see whether the multiplier is appropriately placed in a range that might run from slightly greater than one to three or four in the most deserving case. Thirdly, regard can be had to the retainer agreement in determining what is fair and reasonable. Finally, fair and reasonable compensation must be sufficient to provide a real economic incentive to solicitors in the future to take on this sort of case and to do it well.

27    In this case, then, taking into account all the relevant considerations I have recited, in my view the appropriate multiplier is two. This reflects the risk and success factors at play. It represents a multiplied fee that is significantly less than ten per cent of gross recovery. It reflects the fact that this case does not exemplify the greatest risk or the greatest success. It is within the range contemplated by the retainer agreement. And finally, the resulting compensation should provide a sufficient real incentive for solicitors in future similar cases.

**Disposition**

28    I would therefore allow the appeal and provide for a multiplier of two to be applied to the base fee up to April 17, 1997, the date of the settlement order. I would vary the order below accordingly. The appellants do not seek costs of the appeal and I would order none.

*Appeal allowed in part.*

END OF DOCUMENT

Copr. © West 2008 No Claim to Orig. Govt. Works

# EXHIBIT C-3

The class representative may also pay class counsel pursuant to the terms of a retainer agreement during the course of litigation. However, the retainer agreement cannot be enforced against the representative until court approval is given.[21]

## 2. FEE APPROVAL[21a]

**7.110**   In the U.S., the basis for payment to class counsel has been the concept of unjust enrichment. The non-representative class members should not be entitled to the common fund created by class counsel without class counsel being reimbursed for reasonable litigation expenses.[22]

**7.120**   The approval of class counsel fees in Canada need not rely on general principles of unjust enrichment. There is a statutory process for establishing class counsel's right to fees and disbursements.

**7.130**   As noted above, retainer agreements in the common law provinces can be enforced against the class only after court approval.[23] The approved fees and disbursements will be a first charge on any award to the class.[24] Provision is made for interest on unpaid disbursements.[25] Saskatchewan, Newfoundland,

---

against class counsel, and on a partial indemnity basis against the representative plaintiff. The court found that none of the special circumstances in s. 31(1) of the Ontario Act existed, and appeared to criticize class counsel for having failed to provide such an indemnity (or at least failing to fully explain the costs consequences to the representative). The court concluded:

"The fact remains that at the time of instituting the action and mounting the Certification Motion, Mr. Poulin was without an indemnity undertaking and it was accordingly, open for [counsel] to obtain extremely large fees arising from a successful outcome without any concomitant risk of adverse costs consequences.

"For the above reasons, I conclude that [counsel] is subject to a costs award in favour of the defendants arising out of the Certification Motion." [At paras. 70 and 71.]

See also *Corless v. KPMG LLP*, [2008] O.J. No. 3092 (S.C.J.), at para. 44, where the court held that whether class counsel had granted an indemnity was a positive factor in favour of a higher fee award.

21   Ontario Act, s. 32(2); B.C. Act, s. 38(2); Saskatchewan Act, s. 41(2); Newfoundland Act, s. 38(2); Manitoba Act, s. 38(2); Alberta Act, s. 39(1); New Brunswick Act, s. 40(2); Nova Scotia Act, s. 41(2).

21a  Articles considering this issue include: Rodney L. Hayley, "Risks, Results and Rewards: Counsel Fees in Class Actions", *Preparing for Class Actions* (Toronto: Insight Information Co., 2002).

22   Newberg, *supra*, footnote 7, at para. 14.02.

23   Ontario Act, s. 32(2); B.C. Act, s. 38(2); Saskatchewan Act, s. 41(2); Newfoundland Act, s. 38(2); Manitoba Act, s. 38(2); Alberta Act, s. 39(1); New Brunswick Act, s. 40(2); Nova Scotia Act, s. 41(2); Federal Court Rules, R. 334.4.

24   Ontario Act, s. 32(3); B.C. Act, s. 38(6); Saskatchewan Act, s. 41(4); Newfoundland Act, s. 38(6); Manitoba Act, s. 38(6); Alberta Act, s. 39(6); New Brunswick Act, s. 40(4); Nova Scotia Act, s. 41(4).

25   Ontario Act, s. 37(2)(c); B.C. Act, s. 38(5); Saskatchewan Act, s. 42(2); Newfoundland Act, s. 38(5); Manitoba Act, s. 38(5); Alberta Act, s. 39(5); New Brunswick Act, s. 40(1)(c); and Nova Scotia Act, s. 41(1)(c) (requiring retainer agreement to state the manner in which the interest will be calculated).

B.C., Manitoba, Alberta, New Brunswick and Nova Scotia also provide for interest on the fee and disbursements in appropriate circumstances.[26]

**7.140**   The application for approval will normally take place at the close of the litigation,[27] except in Alberta where a retainer agreement cannot be enforced unless it is approved by the court prior to or at the time of applying for the certification of the proceeding.[27a] This obligation only applies, however, if the fees are being paid from the settlement or award being paid to the class. Where the defendant is paying class counsel's fees over and above the amount of the settlement or award, payment is not being made under a contingency or retainer agreement, and therefore, court pre-approval is not required.[27b] In other jurisdictions, counsel may wish to apply for the approval of the general structure of the agreement prior to the certification motion although, depending on the nature of the agreement or the court order, final approval of the actual amount may have to await the end of the litigation.[27c] When counsel seek a multiplier on their total billable hours in Ontario, final approval of the fee must await the conclusion of the common issue stage of the litigation or settlement in order to determine the number of hours available for multiplication.

**7.150**   The Saskatchewan, Newfoundland, B.C., Manitoba, Alberta, New Brunswick and Nova Scotia Acts provide that notice of the application to approve need not be served on the defendants. Unless the court makes an order in special circumstances,[27d] the defendants will not be parties to the application for approval of the retainer.[28] This may be meant to allow earlier application for approval of the structure of the fee arrangement by ensuring that the terms of the retainer remain private during the course of the litigation. However, this is unlikely to be completely effective at maintaining secrecy over the essential terms given that the initial notice to class members after certification must summarize the proposed fee arrangement in any event. In *Endean v. Canadian Red Cross Society*,[28a] the B.C. Court of Appeal held that the parties to a fee

---

26   B.C. Act, s. 38(4); Saskatchewan Act, s. 42(1); Newfoundland Act, s. 38(4); Manitoba Act, s. 38(4); Alberta Act, s. 39(4); New Brunswick Act, s. 40(1)(c); and Nova Scotia Act, s. 41(1)(c) (requiring retainer agreement to state the manner in which the interest will be calculated).

27   *Crown Bay Hotel Limited Partnership v. Zurich Indemnity Co. of Canada* (1998), 160 D.L.R. (4th) 186 (Ont. Ct. (Gen. Div.)).

27a   *Alberta Act*, s. 39.

27b   *Northwest v. Canada (Attorney General)*, [2006] A.J. No. 1612 (Q.B.).

27c   Citing Rule 86 of the Queen's Bench Rules, the court in *Sparvier v. Canada (Attorney General)*, 2006 SKQB 362 at para. 41, rejected pre-approval of a retainer agreement on fees.

27d   In *Segnitz v. Royal & SunAlliance Insurance Co. of Canada* (2002), 41 C.C.L.I. (3d) 30, [2002] O.J. No. 2332 (S.C.J.) (intervention by defendants to retainer approval application) the court granted the defendant the right to intervene because the form of the agreement arguably interfered with the defendant's right to refund amounts to class members prior to certification.

28   B.C. Act, s. 38(3); Saskatchewan Act, s. 41(3); Manitoba Act, s. 38(3); Newfoundland Act, s. 38(3); Alberta Act, s. 39(2); New Brunswick Act, s. 40(3); Nova Scotia Act, s. 41(3).

application are the class counsel, the representative plaintiffs, and perhaps other class members. While the court may grant the defendants the right to make submissions, that does not make them parties, and they do not have standing to appeal any fee decision.

**7.160**   Quebec's class action rules do not contain a detailed procedure for fee approval. However, Quebec does provide that the order of priority in relation to a sum obtained on behalf of the class is: (1) legal costs including the costs of notification and the fees of the claims administrator; (2) the fees of the representative's attorney; and (3) the claims of the class members.[29] The second stage of this determination gives the court the ability to assess and consider the purported fee. The Quebec agency which funds class actions must be given notice of any application to approve class counsel's fee.[30]

**7.165**   The material produced in support of the motion needs to address the factors relevant to the fee determination, which are discussed below. In terms of the level of detail required from class counsel, the court in *Murphy v. Mutual of Omaha Assurance Co.*[31] stated:

> [41] Class counsel takes the view their time records are privileged and production would reveal matters of confidence in the conduct of the action . . .
>
> [42] I am of the view that absent some basis to suggest impropriety or other unusual circumstance regarding the evidence as to the claimed time expended, it should not be necessary for counsel to produce their detailed time records to the opposing party.
>
> [43] That said however, class counsel could reveal more general information summarized from their time records that would assist the Court in considering the complexity of their work, the seniority and abilities of counsel providing services, the nature of the services undertaken, hourly rates, efficiency of time expended and like matters. That would not breach any privilege nor unfairly require disclosing sensitive information to an opponent.
>
> [44] Showing the proposed fee to be reasonable is upon the applicant and a failure of helpful detail will in the end result be to the disadvantage of the applicant who bears that onus of proof.

**7.170**   The Acts in the common law provinces and the Federal Court Rules do

---

28a   [2000] 8 W.W.R. 294, 78 B.C.L.R. (3d) 28, 45 C.P.C. (4th) 39 (S.C.), appeal struck for lack of standing 82 B.C.L.R. (3d) 287, 2000 BCCA 638. See also *Parsons v. Canadian Red Cross Society* (2001), 102 A.C.W.S. (3d) 483 (Ont. C.A.) to similar effect.

29   Quebec Art. 1035 C.C.P.; Quebec *Rules of Practice — Superior Court*, Art. 66.

30   Quebec, *An Act Respecting the Class Action*, s. 32. See, for example, *Jolicoeur v. 2693-7634 Québec Inc. (Airprice Vacances)* (unreported, August 31, 1995, Montreal 500-06-000006-946, Que. S.C.) (certification decision); (unreported, December 2, 1996, Que. S.C.) (judgment on the merits); (unreported, January 6, 1997, Que. S.C.) (notice, costs and fee approval).

31   (2000), 80 B.C.L.R. (3d) 384, 47 C.P.C. (4th) 310, leave to appeal to C.A. refused 102 A.C.W.S. (3d) 13, 2001 BCCA 15. See also *Endean v. Canadian Red Cross Society*, [2000] 8 W.W.R. 294, 78 B.C.L.R. (3d) 28, 45 C.P.C. (4th) 39 (S.C.), appeal struck for lack of standing 82 B.C.L.R. (3d) 287, 2000 BCCA 638, in which the court rejected a defence application to examine the detailed time dockets of class counsel on the basis that such an examination would have constituted an unwarranted invasion of the plaintiffs' solicitor-client privilege and, furthermore, was unnecessary.

not provide much guidance to the court in the exercise of its discretion to approve the fee.[31a] The Ontario Act does state that the court may consider the manner in which counsel has conducted the litigation in determining the appropriate multiplier where the agreement is in the "Lindy Lodestar" form.[32] Factors that will be considered by the court in assessing the fee include:[32a]

(1)    the results achieved;[33]
(2)    the risks undertaken,[33a] including an assessment of the risk that the matter would not be certified,[34] whether there was a significant reduction of the

---

[31a]    In determining an appropriate fee for class counsel, the Federal Court has looked to the factors considered by the courts in Quebec and the common law provinces: *Châteauneuf v. Canada*, 2006 FC 446, [2006] F.C.J. No. 556.

[32]    Ontario Act, s. 33(9).

[32a]    Beyond the cases cited below in relation to specific factors, see generally: *Girard v. 2944-7828 Quebec inc*, [2007] Q.J. No. 2166 (S.C.); *Windisman v. Toronto College Park Ltd.* (1996), 132 D.L.R. (4th) 512, 28 O.R. (3d) 29, 1 R.P.R. (3d) 119 (Gen. Div.) (decision on the merits); further proceedings (1996), 3 C.P.C. (4th) 369 (Ont. Ct. (Gen. Div.)) (fees hearing); *Murphy v. Mutual of Omaha Assurance Co.*, *infra*, footnote 34a; *A.C.E.F. Centre v. Bristol-Myers Squibb C*o. (unreported, August 8, 1995, Montreal, 500-06-0000004-917, Que. S.C.) (certification and settlement approval); (unreported, January 16, 1997) (fee approval); *Mayer v. Cast Terminal Inc.* (unreported, March 3, 1998, Montreal 500-06-000030-979, Que. S.C.); (unreported, January 27, 1999, Montreal 500-06-000030-979, Que. S.C.) (settlement and fee approval). This list is similar to the factors considered in the United States. Other factors considered in the U.S. include: (1) the award in similar cases, and (2) the presence or absence of substantial objections by class members to the settlement and/or proposed fee: Federal Judicial Centre, Manual of Complex Litigation, 3rd Ed. (West Publishing, 1995), at p. 190. See also *Page v. Canada (Procureur Général)*, [2000] J.Q. 3020 (Que. S.C.); *Sparvier v. Canada (Attorney General)* (2006), 290 Sask. R. 111 (Q.B.), affd [2007] 7 W.W.R. 682 (Sask. C.A.); *Rideout v. Health Labrador Corp.* (2007), 270 Nfld. & P.E.I.R. 90 (Nfld. & Lab. S.C.T.D.) (settlement approval and counsel fees).

[33]    The court must consider the degree to which counsel contributed to the result, as opposed to other forces that were at work: *Endean v. Canadian Red Cross Society*, [2000] 8 W.W.R. 294, 78 B.C.L.R. (3d) 28, 45 C.P.C. (4th) 39, 2000 BCSC 971, at para. 66, appeal struck for lack of standing 82 B.C.L.R. (3d) 287, 2000 BCCA 638; *Maxwell v. MLG Ventures Ltd* (1995), 54 A.C.W.S. (3d) 847 (Ont. Ct. (Gen. Div.) (certification decision); further proceedings (unreported, September 14, 1995, 95-CQ-60022, Gen. Div.) (amending pleadings); (1996) 30 O.R. (3d) 304, 3. C.P.C. (4th) 360 (Gen. Div.) (determination of fee). The court should also consider any the relative ease or difficulty of access by class members to the benefits achieved: *Parsons v. Canadian Red Cross Society* (2001), 102 A.C.W.S. (3d) 483 (Ont. C.A.), at para. 17 (fee approval); *McArthur v. Canada Post Corp.*, [2004] O.J. No. No. 1406 (S.C.J.).

[33a]    In *Sun-Rype Products Ltd. v. Archer Daniels Midland Co.* (2002), 17 C.P.C. (5th) 178, 2002 BCSC 379, the court noted that an agreement in principle had already been negotiated by counsel in another jurisdiction in awarding a fee in which the multiplier was just over one. In *Girard v. 2944-7828 Quebec inc*, [2007] Q.J. No. 2166 (S.C.), the court noted that the funding received from the Fonds d'aide aux recours collectifs substantially reduced the risk of the action. In *Killough v. Canadian Red Cross Society*, 2007 BCSC 941, the court noted, *in obiter*, that the settlement structure had been modeled on an earlier settlement, and had essentially "rode the back" of that prior settlement.

risk at some point in the litigation,[34a] and whether counsel agreed to indemnify the representative plaintiffs against any adverse costs award and thereby saved the class from having to make a payment to the Class Proceedings Fund;[34b]

(3)    the time expended;[35]

(4)    the legal and factual complexity of the matters to be dealt with;[35a]

(5)    the degree of responsibility assumed by counsel;

(6)    the monetary value of the matters in issue;[35a.1]

---

34    *Gagne v. Silcorp Ltd.* (unreported, April 17, 1997, 97-CU-120941, Ont. Ct. (Gen. Div.)) (certification and settlement approval); (1997), 14 C.P.C. (4th) 269, 35 O.R. 501 (Gen. Div.) (fee approval), revd 167 D.L.R. (4th) 325, 41 O.R. (3d) 417, 113 O.A.C. 299 (C.A.); (unreported, December 15, 1998, S.C.) (final counsel fee approval); *Vitapharm Canada Ltd. v. F. Hoffmann-LaRoche Ltd.*, [2005] O.J. No. 1117 (S.C.J.), at para. 72. *Lonsdale Printing Services (Trustee of) v. Cascades Fine Papers Group Inc.* (2008), 173 A.C.W.S. (3d) 695, [2008] O.J. No. 5280 (Ont. S.C.J.).

34a    *Murphy v. Mutual of Omaha Assurance Co.* (2000), 80 B.C.L.R. (3d) 384, 47 C.P.C. (4th) 310, 2000 BCSC 1510, leave to appeal to C.A. refused 102 A.C.W.S. (3d) 13, 2001 BCCA 15. According to a report in the Siskinds Class Action Newsletter SCAN2000/10, in the case of *Godi v. Toronto Transit Commission* (unreported, September 20, 1996, 95-CU-89529, Ont. Ct. (Gen. Div.)), the court approved a multiplier of 2.25 up to time of settlement and no multiplier thereafter).

34b    *Bellaire v. Daya*, [2007] O.J. No. 4819 (S.C.J.), at para. 81; *Corless v. KPMG LLP*, [2008] O.J. No. 3092 (S.C.J.), at para. 44.

35    In *Killough v. Canadian Red Cross Society*, 2007 BCSC 941, the court noted, at paras. 45 and 46, *in obiter*, "The principal concern is that there is no means of assessing whether the accumulated time was necessary and represented a reasonable and productive use of counsel's time. Class actions must not represent an open-ended invitation to accumulate time without regard to productivity. The accumulation of substantial time charges in relation to a legal matter does not always justify compensation at base rates or multiples thereof. Conversely, low time endeavours may justify fees that are many multiples of the book value of accumulated time." In *Endean v. Canadian Red Cross Society*, [2000] 8 W.W.R. 294, 78 B.C.L.R. (3d) 28, 45 C.P.C. (4th) 39 (S.C.), appeal struck for lack of standing 82 B.C.L.R. (3d) 287, 2000 BCCA 638, the court held that the time spent securing court approval of the fee could properly be considered. In *Martin v. Barrett* (2008), 55 C.P.C. (6th) 377 (Ont. S.C.J.), the court reduced class counsel's base fee from $2,335,354 to $1,634,748 and then applied a 2.5 multiplier (resulting in an approximate $750,000 fee reduction). The court noted that the matter had been over-lawyered, stating (at para. 51): "Over-lawyering rarely, if ever, achieves economies of scale vis-a-vis particular clients. Delegation of different tasks among numerous partners, associates and others may sometimes be an efficient way for a law firm to deal with many files simultaneously but, as between the firm and any particular client, over-lawyering inevitably involves a duplication of work and an inefficient expenditure of time." And, at para. 52, "Counsel are, of course, perfectly entitled to dot every i and cross every t more than once if they so choose, and to keep track of every minute of time spent thinking about a file, but it does not follow that all of their time will then be reflected in a reasonable base fee."

35a    *Parsons, supra*, footnote 33, at para. 72.

35a.1    However, note that in *Marcantonio v. TVI Pacific Inc.*, [2009] O.J. No. 3409 (S.C.J.), at para. 30, the court noted that "The need for a meaningful premium on fees is particularly important in cases involving more modest damage amounts where the maximum potential upside to class counsel is limited. Otherwise, there is a risk that counsel would decline to pursue cases giving rise to modest damages and smaller

(7)    the importance of the matter to the client;[35a.2]

(8)    the degree of skill and competence demonstrated by counsel;[35a.3]

(9)    the ability of the class to pay;

(10)   the client and the class's expectation as to the amount of the fee;

(11)   avoiding inconsistencies with awards made in similar cases in other Canadian jurisdictions.[35b]

(12)   the integrity of the legal profession.[35c]

Consideration of the appropriate fee is inherently subjective, and is not capable of refined econometric expert analysis.[35d]

**7.175**    The fee may be approved on variety of bases, including: percentage of recovery; a multiplier on time spent; or a flat fee. The court has avoided use of percentage of recovery where that approach could result in unfairly low compensation if the class size is smaller than anticipated or the "take up rate" is low.[35d.1] Approved contingency fees have ranged from 5-30%.[35e] Approved

---

issuers would effectively become immunized from class litigation." To similar effect, see *Stewart v. General Motors* (unreported, September 15, 2009, Court File No. 06-CV-310082PD1, Ont. S.C.) (payment out of escrow pursuant to settlement agreement).

[35a.2]   See discussion in *Gariepy v. Shell Oil Co.* (2003), 123 A.C.W.S. (3d) 949, [2003] O.J. No. 2490 (S.C.J.), at paras. 16 to 19.

[35a.3]   *Mondor v. Fisherman* (2002), 26 B.L.R. (3d) 281, 22 C.P.C. (5th) 346, [2002] O.J. No. 1855 (Ont. S.C.J.), at para. 51.

[35b]   *Killough v. Canadian Red Cross Society* (2001), 110 A.C.W.S. (3d) 23, 2001 BCSC 1745 at para. 22.

[35c]   *White v. Canada (Attorney General)* (2006), 148 A.C.W.S. (3d) 691, 2006 BCSC 561.

[35d]   *Endean v. Canadian Red Cross Society, supra,* footnote 35, para. 25 (S.C.); *Honhon v. Canada (Procureur General)* (unreported, August 30, 2000, 500-06-000016-96, Que. S.C.) at paras. 32-3; *Parsons v. Canadian Red Cross Society, supra,* footnote 33 at paras. 24-31 (S.C.).

[35d.1]   *Hislop v. Canada (Attorney General)* (2004), 130 A.C.W.S. (3d) 907 [004/131/112 – 10 pp.], [2004] O.J. No. 1867 (S.C.J.). This is an interesting approach, as defendants will often use the prospect of a low take up rate as a reason to argue for lower class counsel fees. In the *Hislop* analysis, the court recognized that this risk should not necessarily fall at the feet of plaintiff's counsel, who have in good faith set up a benefit structure that is available to all class members.

[35e]   **Ontario Cases:**
*Association pour l'accés à l'avortement v. Québec (Procureur général)*, [2007] Q.J. No. 3364 (S.C.) (25%); *Montreal Trust Co. of Canada v. Armstrong* (2006), 55 C.C.P.B. 117 (Ont. S.C.J.) (15%); *Bona Foods Ltd. v. Ajinomoto U.S.A., Inc.* (2004), 129 A.C.W.S. (3d) 456 [004/071/012 - 11 pp.], [2004] O.J. No. 908 (S.C.J.) (25%); *Nehme v. Civil Service Co-Operative Credit Society, Ltd.,* [2004] O.J. No. 2552 (S.C.J.) (30%); *Crown Bay Hotel Limited Partnership v. Zurich Indemnity Co. of Canada* (1998), 160 D.L.R. (4th) 186, 40 O.R. (3d) 83, 21 C.P.C. (4th) 272 (Gen. Div.) (20%); *Clients of JNP Financial Services Inc. (Re)* (2001), 10 C.P.C. (5th) 317 *sub nom. Delgrosso v. Paul,* [2001] O.J. No. 1616 *sub nom. Clients of JNP Financial Services Inc. v. Paul* (S.C.J.) (20%); *Vitapharm Canada Ltd. v. F. Hoffman-La Roche Ltd.,* [2005] O.J. No. 1117 (S.C.J.) (maximum of 15%); *Hoy v. Medtronic Inc.* (unreported, April 1, 2005, Vancouver M000047, B.C.S.C.) (maximum of 30%); *Kelman v. Goodyear Tire and Rubber Co.,* [2005] O.J. No. 175 (S.C.J.) (8% of the potential recovery); *Bellaire v. Daya* (2007), 49 C.P.C. (6th) 110 (Ont. S.C.J.) (18%);

multipliers have varied between 1.1 and 5.5.[35f] A study of Ontario fee approvals

*Currie v. McDonald's Restaurants of Canada*, [2007] O.J. No. 3622 (S.C.J.) (25.4%); *Lonsdale Printing Services (Trustee of) v. Cascades Fine Papers Group Inc.* (2008), 173 A.C.W.S. (3d) 695, [2008] O.J. No. 5280 (Ont. S.C.J.) (25%); *Georghiades v. Scotia Capital Inc./Scotia Capitux Inc.* (unreported, January 23, 2009, 03-0CV-1982 (S.C.J.) (25%); *Nutech Brands Inc.v. Air Canada*, [2009] O.J. No. 710 (S.C.) (fee approval) (25% or 1.46 multiplier); *Meretsky v. Bank of Nova Scotia* (unreported, January 23, 2009, 97-CV-128599 (S.C.J.) (20%); *799376 Ontario Inc. (c.o.b. Lonsdale Printing Services) (Trustee of) v. Cascades Fine Papers Group Inc.*, [2008] O.J. No. 5280 (S.C.J.) (25% of $2.95M plus accrued interest); *Cassano v. Toronto-Dominion Bank*, [2009] O.J. No. 2922 (S.C.J.) (approving counsel fees of $11,000,000, representing 20% of settlement amount and 28% of net amount to be distributed to or for benefit of class members); *Nutech Brands Inc. v. Air Canada*, [2009] O.J. No. 710 (S.C.J.) (25%, representing approximately a 1.46 multiplier); *Nantais v. Easyhome Ltd.*, [2005] O.J. No. 5805 (10%, representing a 3.4 multiplier); *Butler v. Honda*, [2009] O.J. No. 2263 (25%); *Farkas v. Sunnybrook and Women's College Health Sciences Centre*, [2009] O.J. No. 3533 (S.C.J.) (30% of individual class member settlement; 25% of OHIP settlement); *Marcantonio v. TVI Pacific Inc.*, [2009] O.J. No. 3409 (S.C.J.) (25%, equating to a multiplier of approximately 2.5); *Robertson v. Thomson Corp.*, [2009] O.J. No. 2650 (S.C.J.) (36%, equating to a multiplier of approximately 2.4); *Wamboldt v. Northstar Aerospace (Canada) Inc.*, [2009] O.J. No. 2583 (S.C.J.) (25%); *Skopit v. Merrill Lynch Canada Inc.* (unreported, August 6, 2009, Court File No. CV-09-13357CP, Ont. S.C.) (30%).

**British Columbia Cases:**
*Campbell v. Flexwatt* (unreported, February 26, 1996, Victoria 95/2895, B.C.S.C.) (pre-settlement approval of fee agreement stipulating fee ranging from 10%-33% depending on the time of settlement or recovery); *Harrington v. Dow Corning Corp.* (unreported, February 18, 1999) (15%); *Knudsen v. Consolidated Food Brands Inc.* (unreported, January 4, 2001, Vancouver L000093, B.C.S.C.) (20%+1% to cover disbursements); *Sawatzky v. Société Chirurgicale Instrumentarium Inc.* (unreported, September 8, 1999, Vancouver C954740, B.C.S.C.) (20%); *Fischer v. Delgratia Mining Corp.* (unreported, December 7, 1999, Vancouver C974521, B.C.S.C.) (30%); *Killough v. Canadian Red Cross Society* (2001), 110 A.C.W.S. (3d) 23, 2001 BCSC 1745 (15%); *Head v. Miralex Health Care Ltd.* (unreported, April 18, 2002, B.C.S.C., docket No. Vancouver S000294) (settlement approval) (30%); *Mura v. Hoescht* (unreported, March 12, 2002, B.C.S.C., docket No. Vancouver S024333) (25%); *White v. Canada (Attorney General)* (2006), 148 A.C.W.S. (3d) 691, 2006 BCSC 561 (30%); *Pearson v. Boliden Ltd.* (2006), 151 A.C.W.S. (3d) 367, 2006 BCSC 1031 (25%).

**Quebec Cases:**
*Doyer v. Dow Corning Corp.* (unreported, September 1, 1999, Montreal 500-06-000013-934, Que. S.C.) (20%, yielding a fee of $10,400,000); *Pelletier v. Baxter Health Care Corp.*, [1999] J.Q. no 3038 (S.C.) (16.9% yielding $3,648,000 in fees); Gérald R. Tremblay, *supra*, footnote 15, at p. 4; *Association pour l'accès à l'avortement v. Québec (Procureur général)*, 2007 QCCS 1796 (25%).

35f *Alfresh Beverages Canada Corp. v. Hoechst AG* (2002), 16 C.P.C. (5th) 301 (Ont. S.C.J.) (multiplier of 3; *Alfresh Beverages Canada Corp. v. Archer Daniels Midland Co.* (unreported, October 23, 2001, Ont. S.C.J., London Court File No. 322562/99) (multiplier of 3); *Gagne v. Silcorp. Ltd.*, *supra*, footnote 34 (multiplier of 2); *Maxwell v. MLG Ventures Ltd.*, *supra*, footnote 33 (multiplier of 1.5); *Windisman v. Toronto College Park Ltd.*, *supra*, footnote 32a (multiplier of 2.5); *Serwaczek v. Medical Engineering Corp.* (unreported, July 31, 1995, 17629/94, Ont. Ct. (Gen. Div.)) (certification decision) (multiplier of 3); further proceedings (1996), 3 C.P.C. (4th) 386

from 1996-2006 found that the median multiplier was 2.74 and the median percentage fee was 14.73%.[35f.1] The courts have suggested that there is a rough upper limit on any fee award equivalent to a multiplier of 3 to 4[35g] in Ontario, and 5.5 in B.C.[35h] However, the court may depart from these rough limits. For example, in *Hislop v. Canada (Attorney General)*,[35h.1] a class action brought on behalf of surviving same-sex partners of deceased contributors to the Canada Pension Plan, the Ontario Superior Court of Justice approved a multiplier of 4.8, noting (at para. 26) that "My choice of a 4.8 times multiplier reflects fair compensation for very devoted and experienced counsel who carried enormous financial burden and risk in their commitment to access justice for the class members." Flat fee proposals are usually tested against both the contingency and multiplier approaches.[35i] In *Endean v. Canadian Red Cross Society*,[35j] the court

(Gen. Div.) (fees hearing); *Bisignano v. La Corporation Instrumentarium Inc.* (unreported, July 25, 1996, 22404/96, Ont. Ct. (Gen. Div.)) (certification); (unreported, September 1, 1999) (S.C.)) (endorsement approving settlement); (unreported, November 16, 1999 (S.C.)) (fee approval) (multiplier of 2.86); *A.C.E.F. Centre v. Bristol-Myers Squibb Co.*, *supra*, footnote 32a (multiplier of 2 plus 5% of total recovery); *Honhon v. Canada (Procureur General)*, *supra*, footnote 35d (multiplier of 3); *Page v. Canada (Procureur General)* (unreported, August 30, 2000, 500-06-000068-987, Que. S.C.) (multiplier of 2.5); *Godi v. Toronto Transit Commission* (unreported, September 20, 1996, 95-CU-89529, Ont. Ct. (Gen. Div.)). (According to report in the Siskinds Class Action Newsletter SCAN2000/10, multiplier of 2.25 up to time of settlement and no multiplier thereafter). It has been said that a multiplier of 5.5 would be at the high end of the appropriate spectrum: *Endean v. Canadian Red Cross Society*, *supra*, footnote 35, at para. 100 (S.C.); *Burleton v. Royal Trust Corp. of Canada* (2003), 34 C.P.C. (5th) 182, [2003] O.J. No. 2168 (S.C.J.) (multiplier of 2.4); *Penton v. Parker Canada Holding Co.*, [2003] O.J. No. 2253 (S.C.J.) (multiplier of 1.65); *Bona Foods Ltd. v. Ajinomoto U.S.A., Inc.* (2004), 129 A.C.W.S. (3d) 456, [2004] O.J. No. 908 (S.C.J.) (contingency agreement at 25%, which resulted in a multiplier of "slightly less than 3"); *Hislop v. Canada (Attorney General)* (2004), 130 A.C.W.S. (3d) 907, [2004] O.J. No. 1867 (S.C.J.) (multiplier of 4.8); *La Cie McCormick Canada Co. v. Stone Container Corp.* (2006), 150 A.C.W.S. (3d) 771, [2006] O.J. 3321 No. (S.C.J.) (multiplier of 1.4); *Hotte v. Servier Canada Inc.*, 2006 QCCS 4007 (multiplier of 1.14); *Martin v. Barrett* (2008), 55 C.P.C. (6th) 377 (Ont. S.C.J.) (multiplier of 2.5); *Walker v. Union Gas Ltd.* (2009), 174 A.C.W.S. (3d) 947, [2009] O.J. No. 536 (Ont. S.C.J.) (multiplier of 2.19); *Lawrence v. Atlas Cold Storage* (unreported, February 12, 2009, 04-CV-263289CP (Ont. S.C.J.) (multiplier of 2.6 on adjusted time); *Association de protection des epargnants et investisseurs du Québec (APEIQ) v. Corp. Nortel Networks*, 2009 QCCS 2407 (request for $6.7 million was reduced to $3 million, or about a 2X multiplier. The court held that most of the difficult work was performed in other jurisdictions); *Cassano v. Toronto-Dominion Bank*, [2009] O.J. No. 2922 (multiplier of 5.5).

35f.1 Alarie, Benjamin, "Rethinking the Approval of Class Counsel's Fees in Ontario Class Actions", Third National Symposium on Class Actions (Toronto: Osgoode Hall Law School of York University, 2006) at p. 15.

35g *Gagne v. Silcorp Ltd.*, *supra*, footnote 34.

35h *Endean v. Canadian Red Cross Society*, *supra*, footnote 35.

35h.1 (2004), 130 A.C.W.S. (3d) 907, [2004] O.J. No. 1867 (S.C.J.).

35i *Endean v. Canadian Red Cross Society*, *supra*, footnote 35, at paras. 74-6 (S.C.) ($15 million for Endean HCV class; $500,000 for Mitchell Haemophiliac class); *Murphy v. Mutual of Omaha Assurance Co.*, *supra*, footnote 34a; *Parsons v. Canadian Red*

emphasized that the multiplier approach was not the only appropriate measure. Courts have recognized the benefit of the percentage approach in that "A percentage-based fee rewards 'one imaginative, brilliant hour' rather than 'one thousand plodding hours'."[35j.1]

*Cross Society*, *supra*, footnote 33 (fees of $15 million and $5 million); *Nantais v. Telectronics Proprietary (Canada) Ltd.* (1995), 127 D.L.R. (4th) 552, 25 O.R. (3d) 331, 40 C.P.C. (3d) 245 (Gen. Div.), leave to appeal to Div. Ct. refused 129 D.L.R. (4th) 110, 25 O.R. (3d) 331 at p. 347, 40 C.P.C. (3d) 263 (Gen. Div.), leave to appeal to C.A. refused 7 C.P.C. (4th) 206 (C.A.); (unreported, October 3, 1997, 95-GD-31789, Gen. Div.) (settlement approval) ($6 million); *McCarthy v. Canadian Red Cross Society* (2001), 106 A.C.W.S. (3d) 193, [2001] O.J. No. 2474 (S.C.J.) ($2.1 million, or approximately 8.5% of the common fund); *Surprenant v. Société Canadienne de la Croix-rouge* (unreported, October 19, 2001) ($1.9 million, or approximately 10% of the common fund); *Killough v. Canadian Red Cross Society* (2001), 110 A.C.W.S. (3d) 23, 2001 BCSC 1745 ($1.9 million); *Directright Cartage Ltd. v. London Life Insurance Co.*, [2001] I.L.R. ¶1-4013, [2001] O.J. No. 4073 (S.C.J.); appeal by objector quashed (unreported, February 12, 2002, Ont. C.A., Court File No. C37258); *Walcott v. London Life Insurance Co.* (2001), 110 A.C.W.S. (3d) 974, [2001] B.C.J. No. 2664, 2001 BCSC 1756; *McNeil v. London Life* [2001] J.Q. no 4397 (S.C.) (collective fee of $7.5 million approved for all three jurisdictions); *Sutherland v. Boots Pharmaceutical PLC*, [2002] O.J. 1361 (S.C.) ($710,000, which was approximately 27.4% of the settlement or a 1.97 multiplier); *Fraser v. Falconbridge Ltd.*, [2002] O.J. No. 2383 (S.C.) ($850,000, or 1.5 multiplier); *Mondor v. Fisherman*, [2002] O.J. No. 1855 (S.C.) ($6.1 million which was 8% of the settlement and a multiplier between 1.5 and 3); *Sun-Rype Products ltd. v. Archer Daniels Midland Co.*, [2002] B.C.J. No. 539 (S.C.) ($90,000 or multiplier just over 1); *Gariepy v. Shell Oil Co.* (2003), 123 A.C.W.S. (3d) 949, [2003] O.J. No. 2490 (S.C.J.), *Furlan v. Shell Oil Co.*, 2003 BCSC 298 ($4.5 million or multiplier of 1.75 on all time, including American counsel time); *Mura v. Archer Daniels Midland Co.*, [2003] B.C.J. No. 1751, 2003 BCSC 1164 (S.C.) ($64,625); *Scott v. TD Waterhouse Investor Services (Canada) Inc.* (unreported, April 25, 2003, Court File No. S002736, B.C.S.C.); *Chisholm v. TD Waterhouse Investor Services (Canada) Inc.* (unreported, April 28, 2003, Court File No. 03-CV-481, Ont. S.C.) ($1.296 million, or the equivalent of a multiplier of 3 plus $95,000 for work after settlement); *McArthur v. Canada Post Corp.*, [2004] O.J. No. 1406 (S.C.J.) ($260,000); *Gilbert v. Canadian Imperial Bank of Commerce*, [2004] O.J. No. 4260 (S.C.J.) (all inclusive amount of $3,000,000, which was less than 20%); *Wilson v. Servier Canada Inc.*, [2005] O.J. No. 1039 (S.C.J.) (minimum of $10 million (or 1.8 multiplier) and potential further increase depending on claims experience); *Girard v. 2944-7828 Quebec inc*, [2007] Q.J. No. 2166 (S.C.) ($67,330); *Frohlinger v. Nortel Networks Corp.*, [2007] O.J. No. 148 (S.C.J.) ($5 million); *CBS Pictures Canada Inc. v. Dillon* (2006), 57 C.C.P.B. 291 (Ont. S.C.J.) ($247,000); *Hurst v. Berkshire Securities Inc.*, [2006] O.J. No. 3647 (S.C.J.) ($300,000); *Adrian v. Canada (Minister of Health)*, 2007 ABQB 376 and 2007 ABQB 377; *Killough v. Canadian Red Cross Society*, 2007 BCSC 836 and 2007 BCSC 941; *McCarthy v. Canadian Red Cross Society*, [2007] O.J. No. 2314 (S.C.J.) ($37.29 million); *Al-Harazi v. Quizno's Canada Restaurant Corp.*, [2007] O.J. No. 2819 (S.C.J.) (450,000, of which $350,000 came from the defendant and the balance from the settlements with class members); *Rideout v. Health Labrador Corp.* (2007), 270 Nfld. & P.E.I.R. 90 (Nfld. & Lab. S.C.T.D.) ($93,000 plus disbursements and taxes, which amounted to 31% of the amount the defendant was responsible to pay under the settlement).

35j    *Ibid.*

35j.1  *VitaPharm Canada Ltd. v. Hoffman-La Roche Ltd.*, [2005] OJ. No. 1117 (S.C.J.), at

**7.176**   The fee award may be staggered in appropriate circumstances.[35j.2]

**7.177**   The representative plaintiff may be compensated for his or her efforts in the case.[35k] Payment will be awarded where the representative plaintiff can show that he or she rendered active and necessary assistance in the preparation or presentation of the case and that such assistance resulted in monetary success for the class.[35k.1] Certain courts have accepted that a "token honorarium" can be paid to the representative beyond awards based strictly on "quantum meruit".[35k.1a] Such awards should not be seen as routine.[35k.2] Indeed, certain

para. 34; *Stastny v. Southwestern Resources Corp.* (unreported, November 3, 2008, Court File No. CV-07-CV009525-0000, Ont. S.C.), at p. 5; *Endean v. Canadian Red Cross Society*, [2000] B.C.J. No. 1254 (B.C.S.C.), at para. 74; *Crown Bay Hotel Ltd. Partnership v. Zurich Indemnity Co. of Canada* (1998), 40 O.R. (3d) 83 (Gen. Div.), at p. 88.

35j.2   *Stewart v. General Motors of Canada Ltd.*, [2008] O.J. No. 4426 (S.C.). In *Option Consommateurs v. Service aux marchands detaillants ltee (Household Finance)*, 2009 QCCS 2516, a supplementary fee of $25,000 was approved for work done after an initial fee approval in a settled action. Class counsel had requested $85,000. The court found that the time was too high and could have been performed at a lower level.

35k   *Sutherland v. Boots Pharmaceutical PLC* (2002), 21 C.P.C. (5th) 196, [2002] O.J. 1361 (S.C.); *Windisman v. Toronto College Park Ltd.* (1996), 3 C.P.C. (4th) 369 (Ont. Ct. (Gen. Div.)). In *Hislop v. Canada (Attorney General)* (2004), 130 A.C.W.S. (3d) 907, [2004] O.J. No. 1867 (S.C.J.), the court approved compensation to the representative plaintiffs in the amounts of $15,000; $10,000; and $5,000 respectively ". . . for their work on the preparation of this case . . .". The court held that such amounts ". . . are to be treated as a disbursement and are recoverable from the class members . . .". See also *Mondor v. Fisherman* (2002), 26 B.L.R. (3d) 281, 22 C.P.C. (5th) 346, [2002] O.J. No. 1855 (S.C.J.), at para. 45; *Reid v. Ford Motor Co.*, 2006 BCSC 1454 ($3000); *Association pour l'acces a l'avortement v. Quebec (Procureur general)*, 2007 QCCS 1796 ($5000); *Garland v. Enbridge Gas Distribution Inc.*, [2006] O.J. No. 4907 (S.C.J.) ($25,000); *Association pour l'accès à l'avortement v. Québec (Procureur général)*, 2007 QCCS 1796 ($5000); *Antoniali v. Coquitlam* (unreported, May 12, 2008, Court File No. L022644, B.C.S.C.) ($15,000); *Association des consommateurs pour la qualité dans la construction v. Flamidor inc.*, 2008 QCCS 4848 ($75,000).

35k.1   *Sutherland v. Boots Pharmaceutical PLC*, *supra*, at para. 20; *Windisman v. Toronto College Park Ltd.*, *supra*, at para. 28; *Reid v. Ford Motor Co.*, *supra*, at para. 34.

35k.1a   *Currie v. McDonald's Restaurants of Canada*, [2007] O.J. No. 3622 (S.C.J.).

35k.2   *Garland v. Enbridge Gas Distribution Inc.*, [2006] O.J. No. 4907 (S.C.J.), at paras. 43-47 and 51, 52:

> "[43] My understanding of the analysis in those cases is that compensation is to be awarded only where the representative's contribution is greater than that which would normally be expected of a representative party in the circumstances of the case. Such a contribution must have related to functions necessary for the preparation or presentation of the case and have resulted in a direct financial benefit of the class. It will often be indicated — and, perhaps, usually — by an extraordinary commitment of time and effort, or the application of special expertise.
>
> [44] It may also be relevant, I think, if the contribution is referable to the representative's obligation to fairly and adequately represent the class rather than, for example, to time spent considering and communicating with counsel with respect to the legal issues and tactics and strategies in the litigation. Finally, I note that each of the learned judges would attribute importance to the initiative shown by the representative party in connection with decisions to commence and continue the proceedings. All these factors, in my opinion, must be weighed

courts have held that, absent special circumstances, courts will not approve an application to compensate the representative plaintiff for fees or reimbursement for time expended in the pursuit of the action.[35k.3] The courts are concerned that

> in the light of the benefit that the class received from the representative's contribution.
>
> [45] In the light of the above considerations, Mr. Garland has, in my judgment, made out a strong case for compensation. He took the initiative in seeking legal advice with respect to the legality of late payment penalties and in instructing counsel to commence the proceedings. He was instrumental in keeping the legal team together when members of the class counsel sought to withdraw from the proceedings on the ground of a business conflict, and he accepted a large part of the responsibility for communicating with class members personally or through interviews with representatives of the media. He also played an active part in the settlement negotiations and, in particular, in obtaining agreement to the nature and details of the *cy pres* distribution — one of the matters for which he found it desirable to retain separate counsel.
>
> [46] The litigation was commenced, and continued, by Mr. Garland in the public interest and, I am satisfied, that throughout it his primary concern has been to protect and serve the interests of the class.
>
> [47] . . . His records — in the form of dockets — disclose that he has spent 1584 hours and incurred expenses of $464.93 . . . He seeks $95,000 in compensation to be paid out of the amount I have approved as the fees of class counsel.
>
> . . . . .
>
> [51] Overall, I am satisfied that Mr. Garland did contribute to the success of the proceeding to an extent that exceeded significantly what might properly have been expected of a representative plaintiff in the circumstances of this case . . . I believe that $25,000 is an amount that would represent fair and reasonable compensation for his exceptional contribution . . .
>
> [52] In arriving at that result, I have not ignored the comments of Winkler J. with respect to the possible inconsistency between the concept of a *cy pres* distribution and an award of an amount of compensation to a representative plaintiff. I respectfully accept that the inconsistency — and an appearance of a conflict of interest — could arise if such compensation were to be awarded routinely. However, I do not think the problem arises here where the compensation is for the direct benefit Mr. Garland has obtained for the class by his special contribution, and where I have approved, as fair and reasonable compensation to class counsel, the amount from which Mr. Garland's compensation is to be paid.''

35k.3  In *McCarthy v. Canadian Red Cross Society*, [2007] O.J. No. 2314 (S.C.J.), the court refused to provide $75,000 compensation to the representative plaintiff, rationalizing this decision as follows:

> "[19] . . . While I have no doubt his efforts and perseverance have benefited the class through the attainment of this settlement, the statute requires that type of commitment on the part of the representative plaintiff [quoting from McLachlin C.J.C.'s reasons in *Western Canadian Shopping Centres Inc. v. Dutton*, [2001] 2 S.C.R. 534 at para. 41.
>
> . . . . .
>
> "[20] Mr. McCarthy has fulfilled his obligation to the class as their representative. However, a distinction must be drawn between the professional advisors to the class and the representative plaintiff with respect to fees. Where it is necessary for the representative plaintiff to incur out-of-pocket expenses in acting in that capacity, such as attendance at discoveries as one example, it may be appropriate for class counsel to reimburse such amounts and claim it as a disbursement subject to recovery on approval by the Court. While each case turns on its facts, in my view, *it is not generally appropriate for a representative plaintiff to receive a payment for fees or for time expended in the pursuit of the action*. Further, any payment made to a representative plaintiff in connection with the action, whether directly or indirectly, and whether for reimbursement or otherwise, must be disclosed to the Court." [Emphasis added.]

a class proceeding not be seen as a method by which persons can seek to receive personal gain over and above any damages or other remedy to which they would otherwise be entitled on the merits of their claims. In *Kerr v. Danier Leather Inc.*,[35k.4] the court did not award any financial compensation to the representative plaintiffs themselves, as they had their own significant personal financial interest in the outcome, so that they were found to be just like other plaintiffs in non-class action cases who might invest considerable time and effort into the litigation but receive no compensation for same. In *Association de protection des épargnants et investisseurs du Québec (APEIQ) v. Ontario Public Service Employees' Union Pension Plan Trust Fund*,[35k.4a] the court refused to allow the non-profit organization acting as representative plaintiff an award from the settlement fund. However, in *Association des consommateurs pour la qualité dans la construction v. Flamidor inc*, the Quebec court did allow an award to the representative plaintiff group direct from the defendant.[35k.5] As part of any judgment or settlement, the court can order that class members who contributed to the financing of the litigation be repaid.[35l] In *Romanchuk v. Poyner Baxter LLP*,[35l.1] a stand alone small claims action was brought by a representative plaintiff against B.C. class counsel for time spent and reimbursement for moneys expended in the class action. The class action was settled in accordance with a formula for determination of individual entitlement. When this formula was applied to Mr. Romanchuk's circumstances, he was not entitled to any benefits. Before the settlement was finalized, Mr. Romanchuk had expressed some concerns to his counsel with respect to the terms of the offer. These concerns led to a discussion between Mr. Romanchuk and the Ontario counsel prosecuting the same case. Following this discussion, Ontario counsel sent Mr. Romanchuk a letter stating that he would be compensated for his time. While this letter was not copied to the B.C. class counsel, the court concluded that B.C. class counsel were bound by its terms. Approval of a payment to Mr. Romanchuk was not being sought in the context of the approval of the settlement, but afterwards, the court found that this posed no difficulties as payment would come from counsel's fees in any event. In determining the appropriate level of compensation, the court reviewed the other decisions reviewed above, and noted that the relevant factors included involvement from the outset, active pursuit of litigation and salutary results of the action. Taking these factors into account, the court awarded Mr. Romanchuk the sum of $4,000.

---

35k.4  (2005), 139 A.C.W.S. (3d) 237, [2005] O.J. No. 1972 (S.C.J.).

35k.4a 2008 QCCA 1132.

35k.5  2008 QCCS 4848. The Quebec Fonds had challenged the fees agreed to be paid by the defendant to the representative plaintiff organization. The court found that a contract between the parties in addition to the amount paid out to the class was permissible, and did not interfere with the Fonds' ability to receive repayment of its advances.

35l  *Fraser v. Falconbridge Ltd.*, [2002] O.J. 2383 (S.C.) ($850,000 or 1.5 multiplier); *Lam v. Ajinomoto U.S.A., Inc.* (2004), 47 C.P.C. (5th) 122, 2004 BCSC 651, [2004] B.C.J. No. 985 ($500,000); *Killough v. Canadian Red Cross Society*, 2007 BCSC 941 (fees of $37.29 million nationally including a payment of $11 million to B.C. class counsel).

35l.1  2008 BCPC 188.

**7.178**    Courts have expressed concerns about the practice of including in a class settlement a term requiring approval of class counsel's fee in a specific amount.[35m] Courts have also expressed concern with the practice of fees being paid directly by defendants under a settlement.[35n]

**7.180**    If the fee agreement is not approved, the court may determine the appropriate fee or direct that it be determined in some other manner.[36]

**7.190**    Some of the key decisions will now be reviewed in order to illustrate the application of these general principles.

**7.200**    The leading Ontario decision is *Gagne v. Silcorp. Ltd.*[37] At the trial level, the court limited the multiplier to one on the basis that the settlement provided little benefit beyond the statutory entitlement already available to the class under the *Employment Standards Act*. On appeal the court increased the multiplier to two. The court stated that although the trial judge had properly focused on the degree of risk assumed and the degree of success obtained, he had given

---

[35m]    In *Garland v. Enbridge Gas Distribution Inc.*, [2006] O.J. No. 4907 (S.C.J.), the court initially indicated a concern that the settlement was said to be contingent on fee approval in the amount requested. The concern was addressed by amending the agreement to provide that, if the fees are reduced by the court in an exercise of its discretion, and the settlement is otherwise approved, the settlement would be binding but the amount payable to a charity would be increased to the extent of the fee reduction. See also *Quatell v. Canada (Attorney General)*, 2006 BCSC 1840; *Northwest v. Canada (Attorney General)*, 2006 ABQB 902.

[35n]    In *Killough v. Canadian Red Cross Society*, 2007 BCSC 941, the B.C. Supreme Court was faced with an application for approval of counsel fees in connection with the settlement of the pre-1986/post-1990 Hepatitis C class action. As the amount was payable by the defendant and was negotiated subsequent to, and independent of, negotiations with respect to the benefits payable to the members of the class, the court expressed the view that the fees did not come under the approval mechanism in s. 38(7), since the amount was not being paid pursuant to the retainer agreement. However, the impact of fees upon the reasonableness of the settlement was addressed in an earlier application for approval of settlement: 2007 BCSC 836. The court expressed concern about direct payment of fees by the defendants, as it denied the court an opportunity to review the reasonableness of the fees. See also *Adrian v. Canada (Minister of Health)*, 2007 ABQB 376, and 2007 ABQB 377.

[36]    Ontario Act, s. 32(4); B.C. Act, s. 38(7); Newfoundland Act, s. 38(7); Saskatchewan Act, s. 41(5); Manitoba Act, s. 38(7); Alberta Act, s. 39(7); New Brunswick Act, s. 40(5); Nova Scotia Act, s. 41(5). In *Mura v. Archer Daniels Midland Co.* (2003), 18 B.C.L.R. (4th) 194, [2003] B.C.J. No. 1751, 2003 BCSC 1164, the court suggested, in *obiter dicta*, that a reference to the Registrar for a determination of the appropriate fee would be helpful in many circumstances. The court refrained from doing so in that case primarily because of the consistency between time spent and the proposed fee. In *Lam v. Ajinomoto U.S.A., Inc.* (2004), 47 C.P.C. (5th) 122, 2004 BCSC 651, [2004] B.C.J. No. 985, the court followed the decision in *Mura v. Archer Daniels Midland Co.* and considered itself unable to approve a fee agreement which did not contain an estimate of the expected fees as mandated by s. 38(1)(b) of the BC *Class Proceedings Act*. The court went on to assess the amount owing to the solicitors for the class on a *quantum meruit* basis and set the fees at $500,000, which was $25,000 less than what was requested on a percentage basis.

[37]    *Supra*, footnote 34 (fee approval).

insufficient weight to each of these factors. In particular, the trial court failed to consider the risk that the case would not be certified as an element of the risk assessment. In relation to the degree of success, the trial court did not properly recognize the benefit of the defendant's immediate agreement to comply with the *Employment Standards Act*, and the claims simplification achieved through the settlement's mini-hearing process. The court did accept that the views of class members are irrelevant to the assessment of the appropriate multiplier.

**7.210**  In *Nantais v. Telectronics Proprietary (Canada) Ltd.*,[38] the court approved an arrangement whereby, if successful, class counsel would obtain the party and party costs award and the fixed sum of $5,000 per class member. The application for approval of the fee arrangement took place shortly after certification. Given that the fee did not fluctuate with the *degree* of success, the court was able to approve the fee arrangement in advance of the determination on the merits. The court held the Lindy Lodestar multiplier approach was not the only type of retainer contingent upon success that Ontario class counsel may adopt. It is only one example. The decision suggested that class counsel in Ontario could enter into a pure percentage contingency fee agreement. In fact, a 25% contingency fee agreement was subsequently approved at the outset of the litigation by the court in *Anderson v. Wilson*.[39] These decisions have been the subject of some criticism given that there appears to have been no legislative intent to make contingency fees available in the class action context.[40] At a minimum, the court should review the fees payable pursuant to such agreements once the litigation is concluded to confirm that they remain fair and reasonable.

**7.220**  In *Maxwell v. MLG Ventures Ltd.*,[41] the defendants settled a misrepresentation case by offering an increased amount per share to each minority shareholder who had tendered shares pursuant to the defendants' offer to purchase. The settlement was approved by the court.

**7.230**  As part of the settlement, the defendants agreed to pay the plaintiff's costs, including any fee approved by the court, as though the fee were being paid directly by the class members. The court undertook to determine the appropriate fee. The fee agreement in place contemplated an application to determine the appropriate multiplier if the claim was successful.

---

38  *Supra*, footnote 13.

39  (1996), 18 O.T.C. 79 (Ont. Ct. Gen. Div.) (application for documents); (1997), 32 O.R. (3d) 400 (Gen. Div.) (certification decision), certification upheld and class modified 156 D.L.R. (4th) 735, 37 O.R. (3d) 235, 107 O.A.C. 274 (Div. Ct.), certification upheld, class restored, and common issues vard 175 D.L.R. (4th) 409, 44 O.R. (3d) 673, 122 O.A.C. 69 (C.A.), leave to appeal to S.C.C. refused 185 D.L.R. (4th) vii, 258 N.R. 194*n*. The fee agreement is reported in Garry D. Watson, "Is the Price Still Right? Class Proceedings in Ontario", presented at the Canadian Institute for the Administration of Justice Conference, October 15-18, 1997, Toronto, Ontario.

40  *Watson, ibid.*

41  (1995), 54 A.C.W.S. (3d) 847 (Ont. Ct. (Gen. Div.)) (certification decision), further proceedings (unreported, September 14, 1995, 95-CQ-60022, Ont. Ct. Gen. Div.) (amending pleadings); (1996), 30 O.R. (3d) 304, 3 C.P.C. (4th) 360 (Gen. Div.) (determination of fee).

**7.240**    The court noted that the determination of the fee where the agreement was in the "Lindy Lodestar" form required a two-step process. First, the base fee must be assessed. This fee will normally be determined on a solicitor-and-client basis, but there may be situations where the party-and-party scale may be more appropriate. Second, the court must determine the appropriate multiplier.

**7.250**    In determining the base fee and the multiplier, the court must be concerned with the protection of the class members who in a normal class action may have very little contact with their solicitors.

**7.260**    In assessing the base fee, the court reduced the hourly rate of two junior counsel. The court then assessed whether the hours spent were reasonable in light of the steps taken prior to settlement. Subsection 33(8) directed the court to allow only a reasonable base fee. In making this determination, the court held that it was not making an item-by-item assessment as a master would do, but rather determining more generally the value of the services devoted to the proceeding. The court considers the submissions of counsel and the court's own experience, and has some regard to what could be taxed on the party-and-party scale. The court held that the hours spent in this case were excessive and halved the proposed base fee.

**7.270**    The court went on to consider whether a multiplier was appropriate. The multiplier was applied in order to determine fair and reasonable compensation for the risk incurred in accepting a retainer in a class action under an agreement for payment only in the event of success. The court noted that, absent the multiplier factor, class counsel would not want to accept the risks inherent in agreeing to a retainer where they would be compensated only if successful.

**7.280**    In assessing the risk, the court noted that the plaintiff's counsel had been entitled to seek contributions from class members for financing the disbursements, and that the disbursements were not large in any event. Therefore, there was little risk in relation to disbursements. However, counsel did assume a risk

*(The next page is* 7-19)

in accepting the retainer given that it initially appeared that the action would be vigorously defended.

**7.290**   The court agreed that the degree of success should be considered in determining the multiplier. While the settlement was substantial, the court found that credit for the settlement went more to the pressure placed on the defendant through a parallel action by the Public Trustee rather than to the efforts of class counsel. The court rejected the submission of class counsel that a multiplier of three would be appropriate, and awarded a multiplier of 1.5.

**7.300**   In *Windisman v. Toronto College Park Ltd.*,[42] the class had obtained judgment for $2.6 million. The class claim was for interest on deposits held by the defendant in relation to a condominium development.

**7.310**   The initial fee agreement set out the hourly rates of each counsel and stated that counsel would be applying for a multiplier of 1.75. Later the hourly rate of lead counsel was increased and the proposed multiplier was increased to 2.5. The fee agreement had been mentioned in the certification order and all class members had had notice of it.

**7.330**   In terms of the complexity of the action, the court noted that this was the first class action to reach trial. The action was hotly contested at every stage. In relation to the responsibility assumed, class counsel was dealing with a class of 500 persons, some of whom had an active interest in the ongoing litigation. The amount in issue was substantial. In terms of assessing the importance to the client, the court stated that it was appropriate to look at the importance to the class as a whole rather than to each individual class member. The skill of class counsel was reflected in the narrowing of issues for trial through Notices to Admit and a summary judgment application.

**7.340**   The court found that the hours docketed were somewhat high, and reduced the base fee from $350,000 to $300,000.

**7.350**   With respect to the multiplier, the court assessed the risk undertaken. At the outset of the litigation, the risk was not that large. There was authority supporting the plaintiff's position. However, the claim was later expanded, venturing into more uncharted territories. Furthermore, an aggressive defence was put forward, including counterclaims against class members. The court approved the proposed multiplier of 2.5.

**7.360**   Class counsel also proposed a fee for the work performed by the class representative herself. The claim was for 81.2 hours at $125 per hour. The court noted that there was no provision in the Act justifying such a fee. However, the court did accept the claim on a reduced basis. The court stated:

> In my view, where a representative plaintiff can show that he or she rendered active and necessary assistance in the preparation or presentation of the case and that such

---

[42]   (1996), 132 D.L.R. (4th) 512, 28 O.R. (3d) 29, 1 R.P.R. (3d) 119 (Gen. Div.) (decision on the merits); further proceedings (1996), 3 C.P.C. (4th) 369 (Ont. Ct. (Gen. Div.)) (fees hearing).

[43]   [Footnote deleted.]

assistance resulted in monetary success for the class, the representative plaintiff may be compensated on a quantum meruit basis for the time spent. I agree with the American commentators that such awards should not be seen as routine. The evidence here is that Ms. Windisman took a very active part at all stages of this action. It seems clear that the case would not have been brought but for her initiative. She assumed the risk of costs and she devoted an unusual amount of time and effort to communicating with other class members, acting as a liaison with the solicitors, and assisting the solicitors at all stages of the proceeding. She kept careful records of her time and effort.

On the other hand, I find that the amount claimed by way of compensation for Ms. Windisman at the rate of $125 per hour is excessive. It bears no relation to Ms. Windisman's usual rate of compensation. In my view, the rate should be purely compensatory and, in that light, a rate of $40 per hour seems appropriate. There should also be a modest reduction in the time to exclude matters not strictly necessary to the prosecution of the action, such as dealing with the media after the judgment was rendered. For the very considerable amount of time and effort Ms. Windisman devoted to this matter, I would award her a total compensation of $4,000 which amount is to be deducted from the net recovery to the plaintiff class.

**7.370** In *Serwaczek v. Medical Engineering Corp.*[44] the court approved a multiplier of three following an approval of a settlement. The court noted that the plaintiff's counsel had voluntarily removed "incidental" time, and that the fee would account for only 20% of the amount awarded. The court agreed that plaintiff's counsel should be properly rewarded for their "commendable achievement". A multiplier of 2.86 was approved in *Bisignano v. La Corporation Instrumentarium Inc.*[45] The court found that the action involved a high degree of risk both procedurally and substantively. A 20% contingency fee was approved in *Crown Bay Hotel Ltd. Partnership v. Zurich Indemnity Co. of Canada.*[46] The court commented on the "resourcefulness and tenacity of plaintiffs' counsel" in advancing the matter over a four year period. The court was also influenced by the supportive material filed by class members.

**7.375** In *Clients of JNP Financial Services Inc. (Re)*,[46a] the court ordered that the approved fee payment from a common fund be staged in order to account for the fact that there remained work to be done by class counsel before class members received their award.

**7.380** In the B.C. decision *Harrington v. Dow Corning*,[47] a contingency fee of 15% was approved on a global settlement of approximately $40 million. Class counsel had entered into an agreement for a 40% contingency fee with the representative plaintiff. Once a settlement was reached, class counsel proposed that they be paid 15% on the global amount, with the court capping the fee payable to lawyers who prosecuted individual claims under the proposed

---

44  *Supra*, footnote 35f. Given that the settlement covered both Ontario and Quebec, a parallel fee application was brought in *A.C.E.F. Centre v. Bristol-Myers Squibb Co.*, *supra*, footnote 35b. A multiplier of two was approved in Quebec.

45  (unreported, November 16, 1999) (Ont. S.C.) (fee approval).

46  (1998), 160 D.L.R. (4th) 186, 40 O.R. (3d) 83, 21 C.P.C. (4th) 272 (Gen. Div.).

46a  *Supra*, footnote 35e.

47  (1999), 29 C.P.C. (4th) 14 (B.C.S.C.) (approval of Dow settlement); (unreported, February 18, 1999) (approving fees on Dow settlement).

settlement structure at a further 25% of each class member's award. The 15% figure was to be paid in instalments as class members advanced claims under the settlement. The court approved the 15% global contingency fee agreement. The court declined to place any specific controls on the fees payable by class members to lawyers who provided assistance in advancing individual claims through the settlement process. The court found that for class members in B.C., existing statutory controls in relation to contingency fees were sufficient protection. For class members outside B.C., the court found that it did not have any jurisdiction to make an order governing fee arrangements with lawyers in other provinces. In *Stewart v. General Motors of Canada Inc.*,[47a] the court expressed some concern as to how to properly approve fees of a pan-national counsel group where actions were filed across the country. The court found that there was no evidence that they worked as a team in the prosecution of the main Ontario action, or that the work on the other cases benefited the class. The court was concerned that the only persons who would benefit would be the lawyers in those other proceedings who would, in effect, "be bought off". The court also found that the suggestion that the court should approve payment to the other lawyers could only give further encouragement to the commencement of multiple class actions. However, the court did find that there was validity in the submission that, by reaching agreements with respect to the other actions, class counsel conferred a benefit on the class. The benefit consisted of avoiding delay and expense that otherwise might well be incurred because of the unresolved problems with multiple multi-jurisdictional class actions. The court concluded that this benefit could legitimately be taken into account in determining the appropriate quantum of the fee to be awarded to counsel in the main action, without purporting to approve the fees of counsel in the other cases.

**7.385** In *Gould v. BMO Nesbitt Burns Inc.*,[47b] a fund of approximately $29 million was created. Fees of $4.5 million were approved, less than the $6 million requested. The court expressed some concern about the effort to support the fee on a multiplier approach stating:

> [49] My concerns were enhanced when counsel attempted to persuade me that the fee of $6 million would represent a multiplier of less than three times the value of the time that will have been expended by the conclusion of the matter. As of January 17, 2007, the time sheets and dockets provided on behalf of the six law firms recorded time of more than 50 lawyers, paralegals and students for a total value of $ 1,776,430.20. As I have earlier indicated, the Michigan action was commenced on December 5, 2005 and this action on January 25, 2006. While I do not question that the docket entries record time actually spent, they fall far short of satisfying me that it was productive time, or time that might otherwise properly be charged to a client, or allowed for the purpose of determining a base fee pursuant to section 33 of the CPA. Many of the entries are repetitive, and inscrutably uninformative, and suggest, rather than exclude, the possibility of an amount of duplication and unnecessary work.
>
> [50] . . . Overall, although I do not denigrate the high professional quality of the work performed, or the benefits achieved for the class, the time recorded is, in my

---

47a   [2008] O.J. No. 4426 (QL).

47b   [2007] O.J. No. 847 (S.C.J.); and [2007] O.J. No. 1095 (S.C.J.).

judgment, significantly in excess of that which could properly be charged to a client in the absence of a contingency fee agreement.

[51] The fees awarded to plaintiffs' counsel in class actions are often astronomical compared with those in other civil proceedings. They can provide an enormous, and understandable, incentive to lawyers to be over-generous in their allocation of their time and their resources. Inflated expectations of counsel can be reflected in inflated hourly rates as, for example, in the rate of $ 810 per hour reported by one of the senior counsel who performed supervisory work in the preparation of an opinion on the Class II discount. The hourly rates of other lawyers increased significantly during the proceeding but, overall, I do not consider them to be unreasonable.

[52] The application of a multiplier to a base fee is just one method of computing a contingency fee under the provisions of the CPA. It may also be helpful in some circumstances in testing the reasonableness of a fee that is expressed as a percentage of recovery in an agreement between counsel and representative plaintiffs. Its utility is more limited in a case like this where the proceedings were settled in a relatively short time. In these circumstances, the speed with which a resolution of the issues was effected can itself be considered to be a significant benefit for the class. To the extent, however, that class counsel have relied on the multiplier method to justify their fee request, my review of the time records they have provided, and of the course of the proceedings, has satisfied me that a reasonable base fee for past and future professional services would not exceed $ 1,000,000.

The court noted that the first settlement meeting was held three weeks after the statement of claim was filed. The court continued:

[54] I am satisfied that, when the retainer agreements with Messrs Gould and Leach were executed in December 2005, Siskinds was aware that there was a reasonable possibility that an early settlement would be reached. There is no evidence that they informed their clients of this, or of the possibility of having variable percentages in the retainer agreements to accommodate the possibility of an early settlement.

[55] In determining whether the fee requested in this case is excessive, it is necessary to be careful not to rely on hindsight, or to penalize counsel for the quality of their work and the success they achieved in negotiating an early settlement. It is also necessary to recognize that, in December 2005, when they accepted the retainers from Messrs Gould and Leach that made their fees and disbursements contingent on success in the litigation, there was only a reasonable possibility, and no certainty, that the defendants would settle. The risks counsel assumed were not negligible. They are, nevertheless, very experienced in class action litigation and must be presumed to have been cognizant of the possibility of a speedy recovery, as well as the risks they were assuming.

**7.390**    There is some possibility that part of the award made to the class will be unclaimed and returned to the defendant. The question may arise whether the determination of the proper fee should be based on the global recovery, or the amount actually claimed. This issue has been considered in the U.S. In *Boeing Co. v. Van Gemert*,[48] the Supreme Court stated that the reasonable fee should be based on the funds available to be claimed rather than on the amount actually claimed by class members. However, some Canadian courts have expressed concern with such an approach, and have in certain cases deferred full approval of fees pending evidence on the amount actually paid to the class. In *Stewart v. General Motors of Canada Inc.*,[48a] the court stated:

---

[48]    444 U.S. 472 (1980).

I am, however, not satisfied that, in this case, I can appropriately disregard the possibility that, when all claims have been dealt with, the lawyers and not the class members may turn out to be by far the principal beneficiaries of the settlement. The defendants have not agreed to contribute a minimum amount for the benefit of the class members, and there is no assurance that the net recovery for them will not be significantly less than the amount of the fees. It is, of course, equally possible that the fees will represent an acceptable percentage of the gross recovery, in which the expenses of administration to be borne by the defendants must be included. On the evidence in the record, it would be sheer speculation on my part to draw one inference rather than the other.

. . . . .

It has been recognised in other cases, that, for the purpose of fee approval, it is legitimate to look at the actual recovery achieved for the benefit of the class. This is consistent with the requirement that the court should look at the degree of success as well as the degree of risk . . .

In similar circumstances, it has been recognised that it may be appropriate to defer final agreement of fees until the amounts recovered for the benefit of the class have been ascertained . . .

. . . . .

In this case the amounts payable to individual class members are relatively small and over 25,000 successful applications at an average payment of $100 will be required for the payments to even equal the fees requested. Even after giving significant weight to the other factors that are relevant to a fee determination — as I am satisfied I must in this case — there is such uncertainty on the question of the total recovery, that I am not prepared at this stage to approve the payment of $2,520,000 . . . There will be an order that $1.5 million of the amount to be held in escrow . . . may be paid to class counsel . . . The balance — less any amount ordered by the Superior Court of Quebec to be paid to counsel in the Quebec proceeding — is to continue to be held in escrow until further order of the court . . .

**7.395** Another issue that can arise is how to value non-monetary benefits. In *Mortillaro v. Cash Money Cheque Cashing Inc.*,[48a.1] the court rejected the argument that pursuant to a contingency fee agreement class counsel should have been entitled to 25% of the value of a voucher settlement, which would have amounted to fees in the amount of $1.567 million. The court held that "vouchers have a real value if redeemed or transferred for cash, but the cash value of a voucher settlement cannot confidently be determined and a percentage that is based on an assumed potential value is, in my opinion, an inappropriate yardstick for the calculation of class counsel fees." The court approved a fee that amounted to approximately the time expended with no premium.

## 3.  ETHICAL OBLIGATIONS[48b]

**7.400** The representative plaintiff has authority to select and instruct[48c] class

---

48a   [2008] O.J. No. 4426 (S.C.J.), at paras. 50-57.

48a.1 [2009] O.J. No. 2905 (S.C.J.), at para. 24.

48b   Articles considering this issue include: Douglas Lennox and Silvie Kuppek, "Balancing Tradition and Modern Realities: Class Actions and Legal Ethics", *Class Actions: The Litigators' Conference* (Toronto: Insight Information Co., 2002); David

| TRAVEL FEES | | | | | | |
|---|---|---|---|---|---|---|
| Name | Date | Mode of transportation | Departure and destination | Class of fare | Amount | Exhibit |
| Jean-Philippe Lincourt | 09-21-2005 | Taxis | | | 110.41 | 1 |
| Jean-Philippe Lincourt | 09-21-2005 | Airplane | Montreal - Toronto | Economy | 479.34 | 2 |
| Jean-Philippe Lincourt | 09-21-2005 | Airplane (modification billet) | Montreal - Toronto | Economy | 30 | 3 |
| Jean-Philippe Lincourt | 11-15-2005 | Taxi | | | 34.78 | 4 |
| Jean-Philippe Lincourt | 11-10-2005 | Airplane (modification billet) | Montreal - Toronto | Economy | 60 | 5 |
| Michel Bélanger | 11-14-2005 | Taxis | | | 86.93 | 6 |
| Jean-Philippe Lincourt | 11-14-2005 | Airplane | Montreal - Toronto | Economy | 615.17 | 7 |
| Michel Bélanger | 11-14-2005 | Airplane | Montreal - Toronto | Economy | 615.17 | 8 |
| Michel Bélanger | 02-07-2006 | Taxi | Hotel to airport in Toronto | | 44.14 | 9 |
| Michel Bélanger | 02-07-2006 | Airplane | Montreal - Toronto | Economy | 513.35 | 10 |
| Michel Bélanger | 02-08-2006 | Taxi | Airport to office | | 43.47 | 9 |
| Michel Bélanger | 02-23-2006 | Taxis (3) | | | 30.43 | 11 |
| Yves Lauzon | 02-07-2006 | Airplane | Montreal - Toronto | Economy | 513.35 | 12 |
| Jean-Philippe Lincourt | 02-07-2006 | Airplane | Montreal - Toronto | Economy | 513.35 | 13 |
| Yves Lauzon | 02-09-2006 | Airplane | Montreal - Toronto | Economy | 30 | 14 |
| Jean-Philippe Lincourt | 02-09-2006 | Airplane | Montreal - Toronto | Economy | 30 | 15 |
| Yves Lauzon | 02-07-2006 | Taxi | Airport to hotel | | 46.96 | 16 |
| Jean-Philippe Lincourt | 03-09-2006 | 400 km @ ,45$ | Montreal - Ottawa | | 156.49 | 17 |
| Yves Lauzon | 03-16-2006 | Taxis (4) New York | | | 95.41 | 18 |
| Jean-Philippe Lincourt | 03-16-2006 | Airplane | Montreal - New York | Economy | 993.96 | 19 |
| Yves Lauzon | 03-16-2006 | Airplane | Montreal - New York | Economy | 1072.07 | 20 |
| Jean-Philippe Lincourt | 03-16-2006 | Taxi | Airport | | 13.04 | 21 |
| Jean-Philippe Lincourt | 03-17-2006 | Air Canada Web | | | 34.98 | 22 |
| Michel Bélanger | 03-16-2006 | Airplane | Montreal - New York | Economy | 1072.07 | 23 |
| Michel Bélanger | 03-17-2006 | Air Canada Web | | | 34.98 | 24 |
| Jean-Philippe Lincourt | 03-17-2006 | Taxi | | | 32.17 | 21 |
| Michel Bélanger | 03-24-2006 | Airplane | Montreal - Toronto | Economy | 558.74 | 25 |
| Yves Lauzon | 03-24-2006 | Airplane | Montreal - Toronto | Economy | 558.74 | 26 |
| Yves Lauzon | 03-28-2006 | Taxis (2 x 50$) | | | 93.91 | 27 |
| Yves Lauzon | 04-15-2006 | Airplane | Montreal - Philadelphia | Economy | 1071.52 | 28 |
| Yves Lauzon | 04-15-2006 | National rental location  and gaz | Philadelphia | | 197.37 | 29 |
| Michel Bélanger | 04-21-2008 | Airplane | Montreal - Philadelphia | Economy | 1271.16 | 30 |
| Michel Bélanger | 04-22-08 | Taxi | Wilmington | | 81.38 | 31 |
| Michel Bélanger | 05-12-2008 | Airplane | Montreal - Philadelphia | Economy | 1271.65 | 32 |
| Michel Bélanger | 05-28-2008 | Airplane | Montreal - Toronto | Economy | 483.34 | 33 |
| Michel Bélanger | 05-12-2008 | Taxi | Philadelphia | | 75.29 | 34 |

| Michel Bélanger | 05-29-2008 | Taxi | Philadelphia | | | 54.3 | **34** |
|---|---|---|---|---|---|---|---|
| | | | Total | | | 13019.42 | |

## LODGING

| Name | Date | Name of hotel | City | Room rate | Meals | Meals | Nights | Taxes | Other | Exhibit |
|---|---|---|---|---|---|---|---|---|---|---|
| Jean-Philippe Lincourt | 11-14-2005 | Sutton Place Hotel | Toronto | 180.24 | 23.25 | | 1 | 8.75 | | **35** |
| Michel Bélanger | 11-14-2005 | Sutton Place Hotel | Toronto | 180.24 | 20.7 | 71.3 | 1 | 8.75 | 10.7 | **36-37** |
| Michel Bélanger | 02-07-2006 | Hilton Toronto | Toronto | 184.01 | | | 1 | 8.95 | | **38** |
| Yves Lauzon | 02-07-2006 | Hilton Toronto | Toronto | 184.01 | 111.5 | | 1 | 16.75 | 5.52 | **39** |
| Yves Lauzon | 03-16-2006 | Radisson Hotel New York East Side | New York * | 259 | 24.58 | | 1 | 38.14 | | **40** |
| Yves Lauzon | 03-16-2006 | Cuba New York | New York | | 215.29 | | | | | **41** |
| Michel Bélanger | 03-16-2006 | Radisson Hotel New York East Side | New York * | 259 | | | 1 | 38.14 | | **42** |
| Jean-Philippe Lincourt | 03-16-2006 | Radisson Hotel New York East Side | New York * | 259 | | | 1 | 38.14 | | **43** |
| Yves Lauzon | 04-15-2006 | Crowne Plaza Philadelphia | Philadelphia * | 259.9 | 12.15 | | 2 | 36.4 | 62 | **44** |
| Yves Lauzon | 04-15-2006 | Restaurants | Philadelphia | | 237.07 | | | | | **45** |
| Michel Bélanger | 04-21-2008 | Hotel Dupont | Wilmington * | 199 | 20 | | 1 | 19.9 | | **46** |
| | | | | 1964.4 | 664.54 | 71.3 | | 213.92 | 78.22 | |
| | | | Total | | 2992.38 | | | | | |
| | | | * Amounts in US$ | | | | | | | |

## VARIOUS FEES

| Name | Date | Description | | | | |
|---|---|---|---|---|---|---|
| Uniglobe Carolann | 02-09-2006 | Airplane ticket modification MB | | | 30 | **47** |
| Uniglobe Carolann | 02-07-2006 | Airplane ticket reservation YL | | | 35.24 | **12** |
| Uniglobe Carolann | 02-07-2006 | Airplane ticket reservation JPL | | | 35.24 | **13** |
| Uniglobe Carolann | 03-16-2006 | Airplane ticket reservation YL | | | 74.08 | **20** |
| Uniglobe Carolann | 03-16-2006 | Airplane ticket reservation JPL | | | 74.08 | **19** |
| Uniglobe Carolann | 03-16-2006 | Airplane ticket modification JPL | | | 30 | **22** |
| Uniglobe Carolann | 03-16-2006 | Airplane ticket reservation MB | | | 74.08 | **23** |
| Uniglobe Carolann | 03-17-2006 | Airplane ticket modification MB | | | 30 | **24** |
| Uniglobe Carolann | 03-24-2006 | Airplane ticket reservation MB | | | 35.61 | **25** |
| Uniglobe Carolann | 03-24-2006 | Airplane ticket reservation YL | | | 35.61 | **26** |
| Uniglobe Carolann | 03-28-2006 | Airplane ticket modification YL | | | 30 | **48** |
| Uniglobe Carolann | 03-28-2006 | Airplane ticket modification MB | | | 30 | **49** |
| Yves Lauzon | 03-28-2006 | Meals in Toronto | | | 89.31 | **50** |
| Uniglobe Carolann | 04-12-2006 | Airplane ticket reservation YL | | | 73.94 | **51** |
| Uniglobe Carolann | 04-21-2008 | Airplane ticket reservation MB | | | 79.18 | **30** |
| Uniglobe Carolann | 05-12-2008 | Airplane ticket reservation MB | | | 79.18 | **32** |
| Uniglobe Carolann | 05-28-2008 | Airplane ticket reservation MB | | | 37 | **33** |
| | | | Total | | 872.55 | |

**Matt Moloci**              **Expense Report (March 1 - March 31, 2006)**              **Date: April 11, 2006**

| No. | Date (m/d/y) | File No. | Client / Matter | Expense Amount | SH LLP VISA | Due MGM | Description |
|---|---|---|---|---|---|---|---|
| 1 | 03/15/06 | 05L121 | Zonolite Class Action | $28.55 | $28.55 | $0.00 | Drinks and snack at CA One Services / Buffalo Airport / with Todd Storms / US$24.14 @ 1.182684341 = CDN$28.55 |
| 2 | 03/15/06 | 05L121 | Zonolite Class Action | $70.41 | $0.00 | $70.41 | Taxi with Storms from JFK to Hotel / US$60.00 @ 1.1735 = CDN$70.41 |
| 3 | 03/15/06 | 05L121 | Zonolite Class Action | $35.39 | $35.39 | $0.00 | Dinner and drinks at Houston's with Storms / US$35.39 @ 1.182425660 = CDB$35.39 |
| 4 | 03/16/06 | 05L121 | Zonolite Class Action | $23.47 | $0.00 | $23.47 | Taxi to Cuba Restaurant / US$20.00 @ 1.1735 = CDN$23.47 |
| 5 | 03/1606 | 05L121 | Zonolite Class Action | $35.21 | $0.00 | $35.21 | Drinks with Storms / Lincourt / US$30.00 @ 1.1735 = CDN$35.21 |
| 6 | 03/17/06 | 05L121 | Zonolite Class Action | $122.90 | $122.90 | $0.00 | Houston's luncheon with Lauzon, Belanger, Lincourt, Dick and Storms / US$103.33 @ 1.189393206 = CDN$122.90 |
| 7 | 03/17/06 | 05L121 | Zonolite Class Action  2 nights; 3/15 & 3/16/2006 | $855.32 | $855.32 | $0.00 | Courtyard Marriott / Hotel / Moloci / US$719.12 @ 1.189398153 = CDN$855.32 |
| 8 | 03/17/06 | 05L121 | Zonolite Class Action  2 nights; 3/15 & 3/16/2006 | $840.49 | $840.49 | $0.00 | Courtyard Marriott / Hotel / Storms / US$706.65 @ 1.189400693 = CDN$840.49 |
| 9 | 03/17/06 | 05L121 | Zonolite Class Action | $64.54 | $0.00 | $64.54 | Taxi / Marriot to JFK / US$55.00 @ 1.1735 = CDN$64.54 |
| 10 | 03/18/06 | 05L121 | Zonolite Class Action | $33.96 | $33.96 | $0.00 | Parking at Buffalo Airport / US$28.55 @ 1.189492119 = CDN$33.96 |
| 11 | 03/28/06 | 05L121 | Zonolite Class Action | $24.05 | $0.00 | $24.05 | Travel to/from Toronto - 130 km x $0.37 x 1/2 = $24.05; attend Court and luncheon with Lauzon, Belanger and Dick |
| 12 | 03/28/06 | 05L121 | Zonolite Class Action | $15.00 | $0.00 | $15.00 | Parking in Toronto for Court; attendance at meetings |
|  | Total |  |  | $2,149.29 | $1,916.61 | $232.68 |  |

| August 31, 2007 | DT | Travel to Pearson Airport re: Montreal to attend plaintiffs' counsel meeting at Lauzon Belanger | $48.00 |
| September 5, 2007 | MGM | travel to Montreal to attend plaintiffs' counsel meeting at Lauzon Belanger | $360.00 |
| May 12, 2008 | DT | Travel to Buffalo Airport | $138.76 |

$705.76 - Scarfone Hawkins travel regarding Toronto".

| No. | Date m/d/y | Expense Amount | SH LLP Visa | Due MGM | Description |
|-----|-----------|---------------|-------------|---------|-------------|
| 1 | 11/14/05 | 18.00 | $0.00 | $18.00 | Parking in Toronto for Court; attendance at meeting |
| 2 | 11/14/05 | 48.10 | $0.00 | $48.10 | Travel/Mileage  to/from Toronto – 130 km x 0.37 = $48.10; attend Court and meeting |
| 3 | 11/14/05 | 8.00 | $0.00 | $8.00 | Taxi in Toronto to meet with co-counsel |
| 4 | 12/30/05 | 10.00 | $0.00 | $10.00 | Parking in Toronto to attend Court |
| 5 | 03/15/06 | 70.41 | $0.00 | $70.41 | Taxi with Storms from JFK to Hotel/ US$60.00 @ 1.1735 = CDN$70.41 |
| 6 | 03/16/06 | 23.47 | $0.00 | $23.47 | Taxi with Cuba Restaurant/US $20.00 @ 1.1735 =  CDN $23.47 |
| 7 | 03/16/06 | 28.55 | $0.00 | $28.55 | Travel to Buffalo, New York (March, 2006) |
| 8 | 03/17/06 | 64.54 | $0.00 | $64.54 | Taxi /Marriot JFK  US $55.00 @ 1.1735 =  CDN $64.54 |
| 9 | 03/28/06 | 24.05 | $0.00 | $24.05 | Travel/Mileage  to/from Toronto – 130 km x 0.37 x ½ = $24.05; attend Court and luncheon with Lauzon, Belanger and Dick |
| 10 | 03/28/06 | 15.00 | $0.00 | $15.00 | Parking to attend Court and luncheon with Lauzon, Belanger and Dick |
| 11 | 08/31/07 | 40.00 | $0.00 | $40.00 | Attend Plaintiffs' counsel meeting at Lauzon Belanger Montreal; cab fare to airport |
| 12 | 08/31/07 | 360.00 | $0.00 | $360.00 | Attend Plaintiffs' counsel meeting at Lauzon Belanger Montreal; travel expense |
| 13 | 10/1/07 | 48.00 | $0.00 | $48.00 | Parking at Pearson Airport to Attend Plaintiffs' counsel meeting at Lauzon Belanger Montreal; |
| 14 | 07/10/08 | 136.76 | $0.00 | $136.76 | Travel to Buffalo, New York (May, 2008) |
|  |  |  |  | $894.88 |  |