# EXHIBIT 1

## LONG-TERM PURCHASE AGREEMENT

THIS AGREEMENT dated as of the ___19th___ day of Dec., 2000, by and between W. R. Grace & Co. - Conn., a Connecticut corporation, acting through its Grace Construction Products unit and having an office at 62 Whittemore Avenue, Cambridge, Massachusetts 02173 ("Grace") and Neutocrete® Products, Inc., a Connecticut corporation and having an office at 564 Danbury Rd., New Milford, CT 06776 ("Neutocrete").

### WITNESSETH:

WHEREAS, Grace has offered to sell and deliver Neutocrete® product as toll manufactured by Grace (or its contractors and licensees) to Neutocrete in the quantities and in accordance with the terms and conditions set forth herein; and

WHEREAS, Neutocrete has agreed to purchase and receive Neutocrete® Product from Grace.

NOW, THEREFORE, in consideration of the mutual agreements herein contained, the parties agree as follows:

1. <u>Definitions</u>. As used herein the following terms shall have the following representative meanings:

    "Affiliate" means Neutocrete Systems Inc.

    "Trademark" means Neutocrete's trademark and design "Neutocrete".

    "Patent" means Neutocrete's US Patent 5890845.

"Neutocrete® Product" means the formulated product as specified in Exhibit A (and as may be modified) and identified under the Trademark. Both parties agree that formulation changes may be necessary to optimize the Neutocrete® Product, and that such changes may change the cost structure of the finished product. It is mutually agreed that any formulation changes and respective price changes be agreed to by both parties in writing.

2. <u>Quantity</u>. During the term of this Agreement, Neutocrete shall purchase one hundred percent (100%) of its Neutocrete® Product requirements from Grace in accordance with the terms and conditions of this contract. Neutocrete agrees to purchase a minimum of 50,000 bags of Neutocrete® Product each 12 month period of this contract. For any quantities of Neutocrete® Product which Grace does not supply or which Grace cannot supply within 14 working days of Neutocrete's requested delivery date, Neutocrete may purchase such quantities from alternate suppliers and such quantities shall be deducted from Neutocrete's purchase obligation hereunder.

Grace shall sell Neutocrete® Product exclusively to Neutocrete for its Patented use. Grace will not intentionally promote the use of vermiculite in the refurbishment of crawlspaces as defined under the Patent, except as directed in writing by Neutocrete. Neutocrete may but shall not be obligated to purchase Neutocrete® Product for uses other than the only Patented use.

3. <u>Term</u>. This Agreement shall commence on January 1, 2001 and continue for a period of three years. This Agreement may be renewed upon mutual agreement, evidenced by written correspondence at any time prior to the conclusion of its term.

4. <u>Prices</u>. Provided in Exhibit A. The price is F.O.B. Grace's plant in Enoree, South Carolina or its toll manufacturer as mutually agreed to in writing.. All freight charges and applicable taxes will be paid by Neutocrete accordingly. Neutocrete, at its discretion, may direct the mode of transportation to be used by Grace.

5. <u>Delivery.</u> Neutocrete shall use its best efforts to give at least seven (7) days notice to Grace of a requested delivery date for Neutocrete® Product. Should the inability to meet a requested delivery date be anticipated by Grace, Grace shall so advise Neutocrete. If Neutocrete is unable to provide Grace with at least seven (7) days notice of a need for Neutocrete® Product, Grace agrees to use reasonable efforts to meet the requested delivery date.

6. <u>Payment</u>. Payment terms are Net 30 days from date of invoice.

Title and all risk of loss of Neutocrete® Product shall pass to Neutocrete upon delivery F.O.B. Grace's plant. GRACE SHALL NOT BE LIABLE FOR ANY DELAY IN TRANSPORTATION OCCASIONED.

Grace's invoice weights, volumes and sizes shall be treated as prima facie correct.

7. <u>Warranties, Remedies and Limitations.</u>

a) Grace warrants to Neutocrete that at the time of delivery the Neutocrete product sold hereunder will conform substantially to the typical properties attached hereto as Exhibit A. Grace's liability and Neutocrete's remedy under this warranty are limited in Grace's discretion to replacement of Neutocrete® Product returned to Grace which are shown to Grace's reasonable satisfaction to have been non-conforming or to refund or credit of the purchase price. Transportation charges for the return of any non-conforming Neutocrete® Product to Grace and the risk of loss or damage thereto shall be borne by Grace provided such Neutocrete® Product is returned in accordance with Grace's written instructions.

(b) Grace warrants to Neutocrete that it will convey good title to the Neutocrete® Product sold hereunder. Grace's liability and Neutocrete's remedy under this warranty are limited to the removal of any title defect or, at the election of Grace, to the replacement of the Neutocrete® Product or any part thereof which are defective in title.

(c) Grace warrants to Neutocrete that all Neutocrete® Product is well below the permissible exposure limits as defined under current EPA and OSHA regulations for asbestiform tremolite. Upon written request from Neutocrete, Grace will provide a Certificate of Insurance with a General Liability limit not to exceed $1,000,000.

(d) THE FOREGOING WARRANTIES ARE EXCLUSIVE AND ARE GIVEN AND ACCEPTED IN LIEU OF ANY AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTY OF MERCHANTABILITY AND THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE. THE REMEDIES OF NEUTOCRETE FOR ANY BREACH OF WARRANTY SHALL BE LIMITED TO THOSE PROVIDED HEREIN AND FOR DELAY OR NONDELIVERY WHICH IS NOT EXCUSABLE TO THE PURCHASE PRICE OF THE NEUTOCRETE® PRODUCT IN RESPECT OF WHICH THE DELAY OR NONDELIVERY IS CLAIMED TO THE EXCLUSION OF ANY

AND ALL OTHER REMEDIES INCLUDING, WITHOUT LIMITATION, INCIDENTAL OR CONSEQUENTIAL DAMAGES. NO AGREEMENT VARYING OR EXTENDING THE FOREGOING WARRANTIES, REMEDIES OR THIS LIMITATION WILL BE BINDING UPON GRACE UNLESS IN WRITING, SIGNED BY A DULY AUTHORIZED OFFICER OF GRACE.

8. <u>Force Majeure.</u> Neither party shall be charged with any liability for delay in performance or nonperformance when due to delays of suppliers, equipment, or machinery breakdowns, acts of God or the public enemy, compliance with any governmental regulation, order or law, whether or not it proves to be invalid, fires, riots, unusually severe weather, strike, lockout or injunction, inability to obtain raw materials, or any other cause, similar or dissimilar, beyond the reasonable control of either party. The party affected by the events identified in this paragraph shall invoke this provision by promptly notifying the other party of the affected nature and estimated duration of the delay period and such affected party shall exercise diligence in an endeavor to remove or overcome the cause of the inability to perform. Grace shall use all reasonable efforts to notify Neutocrete of any labor disputes which could result in Grace's invoking the relief provided for in this Paragraph 8.

9. <u>Assignment and Nonwaiver.</u>

    (a) This Agreement shall inure to the benefit of and be binding upon the successors and permitted assigns of the parties hereto. This Agreement is not assignable or transferable by either party whether voluntary or by operation of law, in whole or in part, without the prior written consent of the other party, which consent shall not be unreasonably withheld, provided that (i) Neutocrete may assign this Agreement to its Affiliate and (ii) either party may assign this Agreement to the buyer of all or substantially all of the business or assets of the assigning party to which this Agreement relates.

    (b) Either party's failure to insist upon strict performance of any provision hereof shall not be deemed to be any waiver of either party's rights or remedies or a waiver of an subsequent default by the other party in the performance of or compliance with any of the terms hereof.

10. <u>Separate Contract.</u> Each delivery shall stand and may be recovered for as a separate and independent contract. If Neutocrete fails to fulfill the terms of order, purchase or payment under this or any other contract with Grace, Grace without prejudice to other lawful remedies may at its option defer further shipments hereunder until such default is made good, treat such default as a breach of this entire contract or terminate this contract.

11. <u>Compliance with Fair Labor Standards Act.</u> Grace hereby certifies that all goods sold hereunder which are produced or manufactured in the United States of America are produced in compliance with Sections 6, 7, or 12 of the Fair Labor Standards Act of 1938, as amended (29 U.S. Code 201-219), or of any order of the Administrator issued under Section 14 of said Act. All requirements as to the certificate contemplated in the October 26, 1949 amendment to the Fair Labor Standards Act of 1938 shall be considered as satisfied by this certification.

12. <u>Notices.</u>  Notices, demands and communications hereunder, to Neutocrete or Grace, must be delivered personally or by certified mail as follows:

    If to Neutocrete:
    Neutocrete® Products, Inc.
    564 Danbury Rd.
    New Milford, CT  06776

    Attention:    Frank Buonaiuto

    If to Grace:
    Grace Specialty Vermiculite
    W.R. Grace & Co.
    Construction Products Division
    62 Whittemore Avenue
    Cambridge, Massachusetts  02140

    Attention:    General Manager, Specialty Vermiculite

Either party may designate by notice in writing a new address to which any notice, demand or communication may hereafter be so given or sent.

13. <u>Confidentiality</u>.  Grace acknowledges that Neutocrete owns the Patents relating to the processes for the installation of Neutocrete® Product.  Grace and Neutocrete mutually agree that they will maintain during the term of this Agreement and for two (2) years thereafter confidentiality of non-public information provided by each other in writing and marked as "Confidential" concerning the Product and the Patent.

14. <u>Termination.</u>  Either party may terminate this Agreement at any time by written notice if:

    (i) the other fails to observe any of the material terms and conditions of this Agreement and fails to remedy such breach within thirty (30) days of written notice from the terminating party requiring remedy;

    (ii) the other becomes insolvent, or becomes a party in a bankruptcy or similar proceeding brought against it;

    (iii) upon mutual consent and written notice to the other party

Neutocrete, at its discretion, may terminate this Agreement and or source from another supplier if Grace is unable to supply 100% of the ordered Neutocrete® Product within 30 days of Neutocrete's requested delivery date.

Upon termination of this Agreement for any reason whatsoever, Neutocrete shall take delivery and pay for any remaining Neutocrete® Products and bags which Grace may have in stock up to, but not exceeding thirty (30) days average inventory based on prior twelve (12) months purchases and provided such Neutocrete® Products are in usable condition.

15. <u>Entire Agreement</u>.  This Agreement constitutes the full exclusive understanding between the parties hereto with reference to the subject matter hereof and no statements or agreements, oral or written, made prior to or at the signing hereof shall

4

vary or modify the written terms hereof; and neither party shall claim any amendment, modification or release from any provisions hereto of mutual agreement, acknowledgment or acceptance of purchase order forms, or otherwise, unless such agreement is in writing signed by the other party and specifically stating it is an amendment to this Agreement.

This contract shall be interpreted in accordance with and the construction thereof shall be governed by the laws of the Commonwealth of Massachusetts. Captions as used in these terms and conditions are for convenience or reference only and shall not be deemed or construed as in any way limiting or extending the language of the provisions to which such captions may refer.

Signed and agreed to as of the date first herein above stated.


Neutocrete® Products, Inc.

By: *[signature]*

Title: PRESIDENT


Grace Specialty Vermiculite
W. R. Grace & Co. - Conn.
Grace Construction Products

By: *[signature]*

Title: General Manager-Specialty Vermiculite


Attachments:

Exhibit A

# EXHIBIT A

### Product Definition:
Each bag of Neutocrete will consist of the following formulation, which may only be changed with written consent by both parties.

Neutocrete® Product Formulation:

| | |
|---|---|
| Zonolite® #4 Vermiculite | 2 cu ft |
| Type I or II Portland Cement | 30 lbs |
| Grace proprietary additive package | <2 oz |

### Packaging:
As a service to Neutocrete, Grace will purchase under its third party bag purchase agreement the Neutocrete marked bags. Grace will immediately invoice Neutocrete for the cost of these bags to Grace, and Neutocrete will upon receipt of invoice pay for said bags. Grace will maintain stocking and ordering of the bags for Neutocrete and Neutocrete will have title to the bags. Grace shall not use Neutocrete bags other than to supply Neutocrete® Product to Neutocrete hereunder.

### Price:
Minimum purchase Quantity is 50,000 bags per each 12 month period, for the term of this Agreement. This is a "Take or Pay" Agreement.

Packaged in Neutocrete bags provided to Grace for filling, the purchase price will be $5.27/bag.

Pricing will be fixed for the first twelve months of this Agreement, and will be adjusted up or down each 6 months thereafter by multiplying the current price by the 6 month trailing percent change for the Producer Price Unadjusted Index (PPI) for Commodity Code 13-3 (Concrete Products) as published by the US Department of Labor, Bureau of Labor Statistics.

Calculating PPI Index Changes

Each index measures price changes from a reference period which equals 100.0 (1982 or some later month). An increase of 5.5 percent from the reference period in the Finished Goods Price Index, for example, is shown as 105.5. This change can also be expressed in dollars as follows: "Prices received by domestic producers of a systematic sample of finished goods have risen from $100 in 1982 to $105.50 today." Likewise, a current index of 90.0 would indicate

6

that prices received by producers of finished goods today are 10 percent lower than they were in 1982.

Movements of price indexes from one month to another are usually expressed as percent changes rather than as changes in index points because index point changes are affected by the level of the index in relation to its base period, while percent changes are not. The example below shows the computation of index point and percent changes.

Index point change

| | |
|---|---|
| Finished Goods Price Index | 107.5 |
| Less previous index | 104.0 |
| Equals index point change | 3.5 |

Index percent change

| | |
|---|---|
| Index point change | 3.5 |
| Divided by the previous index | 104.0 |
| Equals | 0.034 |
| Result multiplied by 100 | 0.034 x 100 |
| Equals percent change | 3.4 |