## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Hearing Date: September 13, 2010, at 10:00 a.m.** |
| | ) **Objection Deadline: August 27, 2010** |

## DEBTORS' MOTION FOR AN ORDER ENFORCING THE 2009 STIPULATION AND ORDER AND ORDERING THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION TO CEASE AND DESIST FROM FURTHER VIOLATIONS THEREOF

The New Jersey Department of Environmental Protection ("NJDEP") has made demands

of the Debtors that violate the release and injunctive provisions of the stipulation executed by

NJDEP and the Debtors, and which this Court approved on November 18, 2009.[2]    The

---

[1]   The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]   See, *Order Approving a Stipulation with the New Jersey Department of Environmental Protection.* ("2009 Stipulation and Order"), docket no. 23783, attached as Appendix Exhibit 1. The stipulation contained in the 2009 Stipulation and Order shall hereinafter be referred to as the "Stipulation" Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in, as the case may be, the 2009 Stipulation and Order or

Stipulation obligates NJDEP to *release the Debtors of all liability* for the "Hamilton Township Claims", which comprise "*all claims*" that NJDEP "*asserted or otherwise could have asserted*" in two litigation matters (as defined herein, the "State Court Action" and the "NJDEP Motion") involving asbestos contamination at the Debtors' former vermiculite plant in Hamilton Township, New Jersey (the "Hamilton Township Site" or the "Site"). In exchange for that release, *NJDEP received an Allowed Claim of $1 million plus interest*.

NJDEP has now demanded that Grace perform certain additional asbestos soil sampling at the Site. *This demand is precisely the type of claim from which NJDEP agreed to release the Debtors of all liability*. It demands the very same type of soil sampling that in 2005 led directly to NJDEP seeking to impose penalties on Grace in the now-dismissed State Court Action.[3] This Court and the Delaware District Court have both expressly ruled that the bar date precludes NJDEP from asserting any such Site-related asbestos claims or demands.

The Debtors ultimately agreed to settle with NJDEP and give it a $1 million Allowed Claim—but only in exchange for NJDEP's guaranty (in the form of an express release of liability) that it would never again pursue the Debtors for any Site-related asbestos contamination matters. In other words, the Debtors paid NJDEP with an Allowed Claim of $1 million—money to which NJDEP was not otherwise entitled—in exchange for the finality and certainty that would allow the Debtors to put all Site-related asbestos contamination issues behind them once and for all. If NJDEP had not agreed to release the Debtors from all Site-related asbestos

---

the *First Amended Joint Plan of Reorganization* in these Chapter 11 Cases, as amended, docket nos. 19579, 20666, 20872, 20873, 21594 and 24657 (the "Plan").

[3]    The demands at issue are documented in several communications by NJDEP that are described below in detail ("NJDEP Demands"). The communications include technical comments from the NJDEP in an e-mail from Case Manager Jay Nickerson dated April 30, 2010, an e-mail from Mr. Nickerson dated June 22, 2010, and a letter from Deputy Attorney General John Dickinson, dated July 1, 2010.

contamination claims and demands, then the Debtors would never have agreed to give NJDEP an Allowed Claim of $1 million.

If NJDEP truly believes that additional asbestos testing is necessary, then it has $1 million to fund such testing. But NJDEP knows full well that there is not a scintilla of evidence in the record suggesting that any such testing is needed. Site remediation for asbestos contamination concluded over two years ago. Grace has paid for its share of the cleanup costs—approximately $4 million—in the form of Allowed Claims for the USEPA and the two PRPs that funded the work. Moreover, NJDEP accepted the USEPA's final report approving completion of the remediation, and it further agreed that asbestos remediation at the Site had met all applicable New Jersey state statutory requirements for such remediation.

The Debtors respectfully submit that the NJDEP Demands are exactly the type of creditor's claims that both the Seventh Circuit and the Third Circuit have directly warned against: a circumstance where there is no ongoing and continuing threat of environmental contamination, but where a creditor is "merely … repackaging … a forfeited claim for damages". NJDEP's failed attempts in the State Court Action and the NJDEP Motion and its contemplated end run around the 2009 Stipulation and Order smack of such "repackaging". *In Re Torwico Electronics, Inc. v. State of New Jersey Department of Environmental Protection*, 8 F.3d. 146, 150 (3d. Cir. 1993), citing *In re CMC Heartland Partners*, 966 F.2d 1143, 1146-47 (7th Cir. 1992).

Grace therefore respectfully requests that this Court enter an order substantially in the form attached hereto: (1) directing NJDEP to comply with the Stipulation and cease making demands on Grace with respect to asbestos related activity at the Site; and (2) awarding Grace its fees and costs incurred in having to bring this Motion.

DOCS_DE:162571.1

## I.    JURISDICTION

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.    The predicate for this Motion is section 105(a) of the Bankruptcy Code and Fed.R.Bankr.P. 9011.

## II.    FACTS, BACKGROUND AND PROCEDURAL HISTORY

### A.    Prepetition Background

3.    From approximately 1950 to 1994, W.R. Grace & Co. ("Grace") and its predecessor-in-interest, Zonolite Corp., operated a vermiculite expansion plant at 15 Industrial Drive, Hamilton Township, New Jersey (the "Hamilton Township Site" or the "Site").  The Hamilton Township Site was shut down in 1994.

4.    In 1995, in conjunction with closing the Site, Grace complied with the New Jersey Industrial Site Recovery Act ("ISRA"), N.J.S.A. 13:1K-6, et seq., by retaining the services of Environmental Resources Management ("ERM"), to assess whether the ground surrounding the Hamilton Township Site was contaminated with asbestos and thus required remediation.  ERM prepared a Preliminary Assessment/Site Investigation report ("PA/SI Report") for submission to NJDEP.  Although the report acknowledged the use of asbestos-containing material at the Hamilton Township Site and the potential for resultant soil contamination, ERM opined that the levels of asbestos did not warrant further investigation or remediation.  In 1995, Grace submitted the PA/SI Report to NJDEP.  In August and November 1995, NJDEP issued no-further-action letters for the Hamilton Township Site.

4

**B.**     **The Chapter 11 Cases and Notice to NJDEP of the Bar Date**

5.      On April 2, 2001, Grace and its debtor affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  NJDEP and the Office of the New Jersey Attorney General ("NJAG") filed notices of appearance, and NJAG elected to place itself on the Rule 2002 list.  NJDEP did not elect to place itself on the Rule 2002 list.

6.      By an order dated April 22, 2002 (the "Bar Date Order"), this Court set March 31, 2003 as the last date for filing proofs of claim for all pre-Petition Date claims relating to: (i) asbestos property-damage: (ii) non-asbestos claims (including all governmental claims); and (iii) medical monitoring claims (the "Bar Date"). (docket no. 1963).  On June 21, 2002,  NJDEP was served with copies of the Bar Date Order and notice.  NJDEP did not file timely claims for the Hamilton Township Site.

**C.**     **Asbestos Remediation at the Hamilton Township Site Has Been Completed Under the Auspices of the USEPA**

7.      In March 2000, USEPA informed NJDEP that it was investigating potential asbestos contamination at the Hamilton Township Site.  *"Notification Events for NJDEP and Hamilton Twp"*, as produced by USEPA (the "USEPA Chronology", attached as Appendix, Exhibit 2) at March 23, 2000, entry.

8.      On May 29, 2002, USEPA sent letters to several PRPs, including Grace, Amtrak and American Premier Underwriters, Inc. ("APU"), notifying the PRPs of their potential liability and the need for a removal action at the Site.  Letter from George Pavlou to Jared Roberts et al. (May 29, 2002) (attached as Appendix, Exhibit 3).  On May 31, 2002, Grace responded by informing the USEPA that the Debtors had commenced their chapter 11 cases, which meant that Grace could not perform or fund any removal activities at the Hamilton Township Site.  Letter from Robert A. Emmett, Esq. of Grace to Brian E. Carr, Esq., USEPA Region II (May 31, 2002)

DOCS_DE:162571.1

(attached as Appendix, Exhibit 4). That letter further stated that USEPA would be able to file a claim with the Bankruptcy Court, and would soon be notified of the bankruptcy claims procedures.

9.      By July 24, 2002, Amtrak and APU had agreed to fund the asbestos removal activities at the Site, splitting the costs equally between them. Letters from counsel to Amtrak and APU addressed to Brian E. Carr, Esq., USEPA Region II (July 24, 2002) (attached as Appendix, Exhibit 5 and 6, respectively).

10.     In early November 2002, USEPA sent to NJDEP, care of Robert Van Fossen and Janet Smolenski, who the Debtors understand are still NJDEP employees, copies of a fourteen-page USEPA Action Memorandum titled "*Request for a Time Critical Removal Action at the former W.R. Grace/Zonolite Site in Hamilton Township, Mercer County, New Jersey – Action Memorandum*" (the "USEPA Memorandum") (attached as Appendix, Exhibit 7); *see also* USEPA Chronology.

11.     The USEPA Memorandum set forth a detailed analysis of, among other things, the Hamilton Township Site conditions and background, asbestos investigations and sampling conducted to date, alleged releases or threatened releases of asbestos into the environment, and the alleged resultant threats to the public health or welfare. USEPA Memorandum. Figure 3, entitled "*Proposed Excavation Areas*," detailed the scope of soil sampling conducted and identified the areas proposed for excavation.

12.     In a section of the USEPA Memorandum entitled "*Potential for Continued State/Local Response*," the USEPA stated that:

> State and local governments agencies are not able to undertake timely response actions to eliminate the threats posed by the Site. The state and local governments do not have the resources to

6

conduct the required cleanup actions. However, both organizations
will support EPA during this removal action.

Id. at 8, § II(C)(2).

13.     Initial asbestos removal activities commenced on November 24, 2003. On
January 30, 2004, and February 27, 2004, respectively, USEPA sent to NJDEP copies of USEPA
Pollution Reports ("POLREPs") that detailed the status of the asbestos removal activities at the
Hamilton Township Site. USEPA Initial Pollution Reports (January 30, 2004, and February 27,
2004) (respectively "POLREP I" and "POLREP II", which are attached as Appendix, Exhibits 8
& 9).

14.     In April 2004, USEPA completed the first phase of the asbestos cleanup at the
Hamilton Township Site. USEPA Region II Press Release, "*EPA to Supervise the Removal of
Approximately 6,500 Tons of Contaminated Soil from Former Vermiculite Plant*" (August 28,
2006) (the "USEPA Press Release", attached as Appendix, Exhibit 10).

15.     In March 2005, Sadat and Associates performed a study on behalf of the Hamilton
Township, taking approximately fifteen samples, to determine whether there had been any
airborne migration of asbestos off-site. The Sadat Associates detected no evidence that any such
migration had occurred. Testimony of Dr. Marwan Sadat, Committee Meeting of Assembly
Judiciary Committee and Assembly Environment and Solid Waste Committee, "*Testimony from
Invited Individuals Concerning Asbestos Contamination at the Former W. R. Grace Zonolite
Plant in Hamilton Township, Mercer County*" (May 10, 2005) (the "5/10/05 Assembly
Committee Meeting", attached as Appendix, Exhibit 11). NJDEP Commissioner Bradley
Campbell and Deputy Attorney General Richard Engel attended the 5/10/05 Assembly
Committee Meeting.

16.    In April 2006, USEPA took hundreds of samples in the area surrounding the Hamilton Township Site. The USEPA study found no trace of asbestos off-site, and the USEPA concluded that no offsite migration of asbestos had occurred. USEPA Region II Press Release titled *"Good News from Soil Sampling Results at Hamilton's Former Vermiculite Plant"* (June 6, 2006) (attached as Appendix, Exhibit 12).

17.    In September 2007, USEPA provided NJDEP and others with a third "POLREP" report regarding the Site. USEPA Pollution Report No. 3 (September 10, 2007) (the "POLREP III", attached as Appendix, Exhibit 13). The POLREP III documented additional asbestos remediation work being performed by Amtrak and APU pursuant to a Phase II Area Administrative Order on Consent, which became effective on September 29, 2006. Id. at p. 3.

18.    On July 10, 2008, USEPA accepted the *Final Report for the Removal Action at the Hamilton Township Site.* (the "USEPA Final Report"). The USEPA Final Report confirmed that all asbestos work required had been completed to the requirements outlined in Administrative Orders on Consent entered into between USEPA, Amtrak and APU. Letter from Michael Ferriola, On Scene Coordinator, USEPA Response & Prevention Branch, to Tom Buggey of Roux Associates Inc., (July 10, 2008) (the "7/10/08 Ferriola Letter", attached as Appendix, Exhibit 14).

19.    On July 11, 2008, Amtrak's counsel forwarded the 7/10/08 Ferriola Letter and a copy of the USEPA Final Report to NJDEP. Letter from Charles S. Warren, Esq. to Ann Wolf, Bureau of Industrial Site Remediation, NJDEP (July 11, 2008) (the "2008 Warren Letter", attached as Appendix, Exhibit 15). In that letter, Amtrak's counsel confirmed that NJDEP personnel had stated that submission to NJDEP of USEPA Final Report was sufficient to deal with the asbestos issues at the Hamilton Township Site, while Grace would continue to address

DOCS_DE:162571.1

any remaining non-asbestos issues. Amtrak's counsel concluded the letter by declaring that submission of the USEPA Final Report should complete all the ISRA related actions called for by NJDEP. Id.

**D.    NJDEP Violates the Automatic Stay by Commencing the State Court Action**

    *1.    The State Court Action*

20.    On June 1, 2005, more than four years after the Petition Date, and more than two years after the Bar Date had passed, NJDEP filed the Complaint the Superior Court of New Jersey, Law Division - Mercer County, thereby commencing the State Court Action, which was captioned *New Jersey Department of Environmental Protection v. W. R. Grace & Co., Inc., W. R. Grace & Co.-Conn., "Grace Conn.-Successor", Jay H. Burrill and Robert J. Bettacchi*, Civ. No. L-001473-05 (Super. Ct., Mercer County, N.J.) (the "State Court Action"). The Complaint named Grace, a former Grace officer and a former Grace employee as defendants, alleged fraud and misrepresentation in the 1995 PA/SI Report filed by Grace (described in ¶ 4, above) and sought to recover over $800 million in alleged penalties with respect to the Hamilton Township Site.

21.    The Complaint itself makes clear that the gravamen of NJDEP's commencement of the State Court Action was the asbestos contamination of the Hamilton Township Site and the ongoing remediation of that asbestos contamination. In particular, the Complaint contained a detailed recitation of past asbestos sampling and investigations at the Site by USEPA, past and future asbestos remediation to be conducted by Amtrak and APU, together with NJDEP's demands for relief against Grace pursuant to ISRA and the Spill Act. Complaint at ¶¶ 26-30.

22.    In addition, the Complaint specifically cited several Areas of Concern ("AOCs") at the Site, including some of the very same AOCs that NJDEP now demands be sampled. Complaint at ¶¶ 31-40. NJDEP asserted in the Complaint that Grace should have suspected in

1995 that the various AOCs may contain actionable asbestos levels. The Complaint specifically faulted Grace for not sampling these AOCs, and sought impose penalties on Grace based upon this alleged failure to sample the AOCs. Id.

      23.    For instance, the Complaint contained the following specific allegations:

- "In the PA/SI Report, Grace-Conn identified several Areas of Concern ('AOC') at the Site where waste from Grace-Conn's on-site vermiculite processing activities could have come to be located. Those AOCs were identified in the report as: 'Silos'; 'Rail Spurs or Sidings'; 'Rail/truck loading and unloading areas'; 'Storage pads and areas including drum and/or waste storage'; three 'dumpsters'; 'Areas of stressed vegetation'; 'Discolored areas or spill areas' and 'Loading and transfer areas'." (Complaint at ¶ 32).

- "In the PA/SI Report, Grace-Conn advised that it did not sample the 'silo'/ 'storage pads and areas including drum and/or waste storage' AOCs …" (Complaint at ¶ 34).

- "In the PA/SI Report, Grace-Conn advised that it did not sample the 'rail spur or siding'/ 'rail truck loading and unloading'/ 'loading or transfer' AOCs …" (Complaint at ¶ 35).

- "… Grace-Conn further advised in the PA/SI that the dumpster areas were not sampled …" (Complaint at ¶ 36).

- "In the PA/SI Report, Grace-Conn advised that it did not sample the 'stressed vegetation'/'discolored areas or spills' AOCs to test for asbestos contamination … Additionally, Grace-Conn advised that a trailer storage area located within these AOCs had dark-colored areas on the ground, but that it did not sample those areas …" (Complaint at ¶ 37).

- "Grace-Conn sought to justify its failure to sample the AOC's identified in the PA/SI Report on seven separate occasions in the report …" (Complaint at ¶ 38).

- "… None of the areas of concern Grace-Conn identified in the PA/SI report as potentially being the repository for vermiculite processing waste were inspected by Grace-Conn." (Complaint at ¶ 40).

      24.    In the State Court Action, NJDEP opted to pursue only monetary fines pursuant to ISRA and the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10-23.11 et seq. for alleged false statements caused by Grace's "failure to sample" for asbestos. NJDEP did not seek any environmental investigation or remediation of the Hamilton Township

DOCS_DE:162571.1

Site, nor did it seek costs of any such environmental investigation or clean-up. NJDEP did not

seek penalties for environmental violations.[4]

### 2.    *Grace Commences the Adversary Proceeding*

25.    On or about September 19, 2005, the Debtors removed the State Court Action to

the United States District Court for the District of New Jersey (the "New Jersey District Court")

in an action captioned *New Jersey Department of Environmental Protection v. W. R. Grace &*

*Co., et al.* (Civ. Action No. 05-4581) (MLC) (the "New Jersey District Court Action").

26.    On or about September 19, 2005, the Debtors commenced a related adversary

proceeding in this Court, captioned *W. R. Grace & Co., et al. v. Campbell, et al. (In re W. R.*

*Grace, et al., Debtor(s))* (Adversary No. 05-52724) (the "Adversary Proceeding"), seeking to

enjoin the State Court Action. At a hearing on November 14, 2005, this Court observed that "the

fine is not the damage, it's simply a penalty … [s]o I'm not sure how that's not stayed by 362."

Tr. of Hr'g at 182 (Nov. 14, 2005). The Court then issued "a temporary stay … so that the

parties can meet and confer in an effort to resolve the issues that were discussed today

consensually." Id. at 188.

27.    On or about May 17, 2006, the New Jersey District Court denied without

prejudice the Debtors' motion to transfer venue of the New Jersey District Court Action to the

United States District Court for the District of Delaware (the "Delaware District Court"), and

likewise denied without prejudice NJDEP's motion to remand the New Jersey District Court

---

[4]    Such costs would have been duplicative of the claims allowed to the USEPA, Amtrak and APU in these chapter
11 cases in the amount of approximately $4 million for reimbursement of asbestos remediation at the Hamilton
Township Site. See, *Order Authorizing Settlement Agreement Resolving the United States' Proofs of Claim*
*Regarding Certain Environmental Matters* (the "Multisite Agreement") (docket no. 18847). And, as discussed
above, asbestos remediation on the Site has now been completed. The USEPA also reported that there are no
detectable levels of asbestos at the Hamilton Township Site and that asbestos had not migrated offsite. See
USEPA Press Release.

11

Action to the State Court. The New Jersey District Court also granted leave to the parties to reinstate the motions if settlement negotiations failed.

28.     On or about April 1, 2008, the Bankruptcy Court entered an order: (i) finding that the automatic stay barred NJDEP from filing or further prosecuting the State Court Action; and (ii) concomitantly denying NJDEP's motion to dismiss the Adversary Proceeding (the "Adversary Proceeding Order"). NJDEP thereafter appealed the Adversary Proceeding Order (the "Injunction Appeal") to the Delaware District Court.

29.     On or about December 10, 2008, the New Jersey District Court "stayed and administratively terminated" the New Jersey District Court Action, with leave for the parties to reopen the action if appropriate.

30.     On or about March 12, 2009, in the Injunction Appeal, the District Court affirmed the decision of the Bankruptcy Court, although it based its decision on different grounds than those set forth in the Bankruptcy Court's *Memorandum Opinion and Adversary Proceeding Order*. The Bankruptcy Court had held that the automatic stay barred the State Court Action because the State Court Action was not an exercise of NJDEP's police and regulatory powers, and was therefore not subject to the Bankruptcy Code section 362(b)(4) exception to the automatic stay.

31.     The Delaware District Court disagreed with the Bankruptcy Court, holding that the State Court Action was indeed an exercise of NJDEP's police and regulatory powers. But, the Delaware District Court agreed the State Court Action should be stayed on alternative grounds, enjoining the State Court Action pursuant to section 105(a) of the Bankruptcy Code.

32.     NJDEP thereafter appealed the Delaware District Court's order (the "Third Circuit Injunction Appeal") to the Court of Appeals for the Third Circuit.

E.    **The Court Denies NJDEP Motion to File a Late-Filed Proof of Claim**

33.    On April 26, 2007, more than six years after the Petition Date, more than five years after learning of the potential existence of Site asbestos contamination, more than four years after the expiration of the Bar Date, almost two years after commencing the State Court Action and months after receiving various 2006-07 URS Reports (discussed below in ¶¶ 42-43, NJDEP filed the NJDEP Motion, which sought leave to file a late proof of claim (docket nos. 15307 and 16443).    In the Proof of Claim filed with the NJDEP Motion, NJDEP sought $30,035,577.00 in "estimated penalties" based on the allegedly false PA/SI Report and Negative Declaration relating in part to the fault NJDEP attributed to Grace for not having sampled for potential asbestos contamination certain AOCs at issue in the Complaint.    Proof of Claim at ¶ 4. The Proof of Claim did not assert any claims for Site asbestos contamination, whether based upon the URS Reports, the USEPA Memorandum, the POLREPs or other relevant documents in NJDEP's possession at the time that discussed then-ongoing USEPA-directed Site remediation efforts.

34.    On or about August 2, 2007, this Court entered an order denying the NJDEP Motion because NJDEP failed to demonstrate why it should be given leave to file a proof of claim more than four years after the applicable bar date had passed (docket no. 16467) (the "Late-Filed POC Order").    NJDEP subsequently appealed the Late-Filed POC Order (the "Late-Filed POC Appeal") to the Delaware District Court.

35.    On or about March 11, 2008, in the Late-Filed POC Appeal, the Delaware District Court affirmed the Bankruptcy Court's denial of NJDEP's request to file a late proof of claim. NJDEP thereafter appealed that order (the "Third Circuit Late-Filed POC Appeal") to the Court of Appeals for the Third Circuit.

DOCS_DE:162571.1

**F.    The 2009 Order and Stipulation Resolves All of NJDEP's Hamilton Township Claims and All Related Litigation**

36.    Upon the filing of the Third Circuit Late-Filed POC Appeal, the matter was assigned to a Third Circuit mediator, who directed the parties to discuss settlement. The initial settlement discussions failed. Upon the filing of the Third Circuit Injunction Appeal, the Third Circuit mediator once again directed the parties to discuss settlement. In the summer of 2009, the parties reached a settlement in principle whereby Grace agreed to give NJDEP an Allowed Claim in the principal amount of $1 million, with interest accruing thereon from the date of an order approving the settlement. In exchange, NJDEP agreed to the disallowance of all Hamilton Township Site Claims. NJDEP further agreed to release the Debtors of all liability for the Hamilton Township Site Claims. This settlement did not affect certain ongoing non-asbestos remediation that Grace was undertaking at the Site under NJDEP's supervision. *See infra*, § II.G.

37.    On October 19, 2009, NJDEP and Grace memorialized this settlement by executing the Stipulation, which contains the following specific terms:

- NJDEP released the Debtors of all liability for the Hamilton Township Site Claims, which comprised "*any and all claims* that Claimant Release Parties asserted *or otherwise could have asserted* in the State Court Action and the NJDEP Motion";

- All Hamilton Township Site Claims shall be deemed disallowed and expunged for all purposes;

- NJDEP is forever barred, estopped, and enjoined from asserting the Hamilton Township Site Claims against the Debtors;

- NJDEP was required to dismiss the State Court Action and the two appeals pending at the Third Circuit with prejudice; and

- NJDEP agreed that it had "released the Debtor Release Parties from all liability for the Hamilton Township Site Claims".

14

38.    On November 18, 2009, this Court entered the 2009 Stipulation and Order and specifically retained jurisdiction regarding implementation and enforcement of the 2009 Stipulation and Order.

39.    In December 2009, the New Jersey District Court entered a 60-day Order dismissing the State Court Action with prejudice. The sixty-day period expired on February 7, 2010. The pending Third Circuit appeals were also dismissed.

**G.    NJDEP and Grace Agree That Grace Will Perform Non-Asbestos Remediation at the Hamilton Township Site**

40.    On May 3, 2005, just prior to commencing the State Court Action, NJDEP sent a letter to Grace rescinding the no-further-action letters it had issued in 1995, citing the elevated asbestos levels found by USEPA. Letter from Mark J. Pedersen of NJDEP to Paul J. Norris, CEO, W.R. Grace & Co.-Conn. and Charles Warren, Esq., Bryan Cave (May 3, 2005) (the "5/3/05 Pedersen Letter", attached as Appendix, Exhibit 16).

41.    Grace promptly retained an environmental consultant, URS Corporation ("URS"), to conduct a Site investigation and to prepare the supplemental PA/SI report demanded by NJDEP in the 5/3/05 Pedersen Letter. On August 31, 2005, URS (on behalf of Grace) submitted the supplemental PA/SI report to NJDEP. Letter from Michael Akerbergs of URS to Joshua Gradwohl of NJDEP (August 31, 2005) (the "2005 Akerbergs Letter", attached as Appendix, Exhibit 17). Grace noted that, with the approval of NJDEP, and consistent with the approach adopted by USEPA regarding the respective roles of itself and Amtrak in the then-ongoing Site asbestos remediation (and the relegation of NJDEP and local authorities to the sidelines), Amtrak had agreed that it would, as the subsequent landowner, address all asbestos remediation issues with NJDEP. Id.; USEPA Memorandum. During the course of this Site investigation, Grace

15

became aware of certain, hitherto undiscovered non-asbestos contamination, which Grace agreed to address. Id.

42.    In 2006 and early 2007, Grace submitted several more URS environmental reports to NJDEP regarding certain non-asbestos environmental remediation issues that Grace had agreed to address at the Site (collectively, the "2006-07 URS Reports"): (1) "*Remedial Investigation Report – Non-Asbestos*", dated May 3, 2006 (the "5/3/06 RIR Report"); (2) "*Remedial Action Work Plan for Non-Asbestos Soil Issues*", dated October 30, 2006; (3) "*Groundwater Remedial Investigation Report – Non-Asbestos Issues*", dated October 30, 2006; and (4) "*Supplemental Groundwater Remedial Investigation Report – Non-Asbestos Issues*", dated February 22, 2007.  On April 20, 2007, Grace submitted URS's "*Groundwater Remedial Action Work Plan for Non-Asbestos Issues*".  The reports were strictly limited to non-asbestos issues, as it was understood by NJDEP and others involved on the project that the asbestos issues were to be addressed by other PRPs under the direction of USEPA.  2005 Akerbergs Letter; USEPA Memorandum.

43.    With the exception of a terse May 9, 2006, letter from NJDEP responding to the 5/3/06 RIR Report, which adverted to a "significant review backlog" at NJDEP, NJDEP did not comment on any of these reports until April 30, 2010, approximately four years later, and approximately six months after NJDEP executed the Stipulation, whereby it agreed to the disallowance of all asbestos-related claims relating to the Hamilton Township Site.  Letter from Joshua Gradwohl of NJDEP to Robert Medler of Grace (May 9, 2006) (the "5/9/06 Gradwohl Letter", attached as Appendix, Exhibit 18); E-mail from Jay Nickerson, Site Remediation Program, NJDEP, to Cathy Bryant and Michael Ackerbergs of URS Corporation (April 30,

16

2010) ("4/30/10 Nickerson E-Mail", attached as Appendix, Exhibit 19) (adverting to four year delay in reviewing the 2006-07 URS Reports).

**H.   NJDEP Violates the Stipulation By Demanding Grace Perform Asbestos Sampling at the Site**

44.    On April 29, 2010, NJDEP personnel performed a Site visit.  4/30/10 Nickerson E-Mail.  The next day, on April 30, 2010, NJDEP finally provided comments on the 2006-07 URS Reports.  Id.  In addition to addressing the non-asbestos issues for which Grace had previously assumed responsibility, NJDEP also sought to require Grace to perform investigation for potential residual asbestos contamination at the Site.  Id. at 3-4.  For instance, NJDEP has requested that Grace collect additional soil samples and investigate ground water at the Site for asbestos.  Id.

45.    NJDEP did not limit its comments to the non-asbestos issues addressed in the 2006-07 URS Reports.  Instead, NJDEP requested additional investigation for potential asbestos contamination at the Site. In so doing, NJDEP alleged that such asbestos sampling is the responsibility of Grace.  4/30/10 Nickerson E-Mail.

46.    The assertions in the 4/30/10 Nickerson E-Mail directly contravene:

- NJDEP's agreement in 2006 that Amtrak and APU may address Site asbestos remediation (which by now had been completed for nearly two years).  2005 Akerbergs Letter; USEPA Memorandum; 2006 USEPA Press Release; 2008 Warren Letter (re completion of Site asbestos remediation);

- NJDEP's acknowledgement to Amtrak that remediation of asbestos contamination at the Site had been resolved to NJDEP's satisfaction.  2008 Warren Letter; and

- NJDEP's own express agreement to the disallowance of all asbestos-related claims arising at the Site.  2009 Stipulation and Order, Stipulation at ¶ 3.

47.    At Grace's request, a meeting was held on June 11, 2010, between non-attorney representatives of Grace and NJDEP personnel, including Mr. Nickerson and Mr. John Graham. Letter from Robert J. Medler of Grace to Jay Nickerson, Site Remediation Program, NJDEP

(June 15, 2010) (attached as <u>Appendix, Exhibit 20</u>).    During the meeting, the Grace representatives reviewed with NJDEP the import and scope of the dismissal with prejudice of the State Court Action, this Court's rulings regarding the State Court Action and the NJDEP Motion, and the 2009 Stipulation and Order.   NJDEP personnel stated that, at the time they issued the Gradwohl Letter, they had not been aware of NJDEP's agreement to the disallowance of all asbestos-related claims in the 2009 Stipulation and Order, nor had they been aware of this Court's and the District Court's rulings regarding the State Court Action and the NJDEP Motion.   They said that they would confer with Deputy Attorney General Rachel Lehr to learn more about these issues, as she had been involved in the State Court Action, the NJDEP Motion and the negotiation and execution of the 2009 Stipulation and Order resolving the foregoing litigation and agreeing to the disallowance of the Hamilton Township Site Claims.

48.     During the June 11 meeting, Grace and NJDEP agreed that, in order to facilitate Grace's desire to move forward expeditiously to remediate non-asbestos Site contamination, Grace would submit a separate letter on non-asbestos issues, and NJDEP would bifurcate its technical comments concerning asbestos and non-asbestos issues and address them in separate letters.   <u>Id</u>.   On June 15, 2010, Grace forwarded a letter to NJDEP memorializing the matters agreed upon at the meeting.   <u>Id</u>.

49.     On June 22, 2010, Mr. Nickerson sent an e-mail to several Grace representatives, copying counsel to Amtrak and APU, stating that Grace's June 15, 2010, letter was "incorrect". E-mail from Jay Nickerson to Debbie Parker of Grace (June 22, 2010) (the "<u>6/22/10 Nickerson E-Mail</u>", attached as <u>Appendix, Exhibit 21</u>).   Specifically, NJDEP stated that it had "instructed" Grace to address both asbestos and non-asbestos issues in a single letter.   The e-mail further stated that, if such a letter did not address the asbestos issues to NJDEP's satisfaction, then

DOCS_DE:162571.1

NJDEP would issue a deficiency as to the asbestos issues. Id. NJDEP reiterated its request that Grace submit a schedule with remedial timeframes as to both asbestos and non-asbestos issues. Id.

50.    Among those copied on 6/22/10 Nickerson E-Mail was Ann Wolf of NJDEP, the recipient of the 2008 Warren Letter, in which (as discussed above in ¶ 19) Amtrak's counsel confirmed that NJDEP agreed that submission of the *Final Report for the Removal Action* satisfied all ISRA-related requirements regarding asbestos at the Site. Mr. Nickerson did not copy D.A.G. Lehr or any of the other Deputy Attorneys General who were involved in negotiating the Stipulation. It was thus unclear whether NJDEP had made any effort to determine whether it was violating this Court's Orders or the terms of the Stipulation.

51.    On June 23, 2010, Grace's environmental counsel wrote to Deputy Attorney General John Dickinson, the lead attorney with respect to the State Court Action and the prior proceedings before this Court, to inform him of NJDEP's attempt to reassert the settled asbestos issues. Letter from Anthony J. Marchetta, Esq. to John F. Dickinson, Esq. (June 23, 2010) (attached as Appendix, Exhibit 22). Grace's counsel informed Mr. Dickinson that it generally accepted NJDEP's April 30, 2010, technical comments concerning non-asbestos issues at the Site. He also reiterated that Grace wanted to commence—and complete—all required non-asbestos Site remediation. Id. Grace further reiterated that all asbestos-related issues at the Site between Grace and NJDEP had been fully resolved by the 2009 Stipulation and Order. Grace asked Mr. Dickinson to discuss with the relevant NJDEP personnel: (i) the import of the 2009 Stipulation and Order along with dismissal of the State Court Action, and (ii) the import of the various relevant Bankruptcy Court and District Court rulings, so as to avoid any delays or disputes concerning the very same issues that the Stipulation had resolved. Id.

52.    On June 28, 2010, Grace submitted its response to NJDEP's April 30, 2010, technical comments concerning the non-asbestos issues, along with a proposed schedule for conducting such work.   Letter from Michael Akerbergs of URS to Jay Nickerson of NJDEP (June 28, 2010) (attached as <u>Appendix, Exhibit 23</u>).  Grace explained that its response pertained only to the non-asbestos issues, because Grace was awaiting a further response from Deputy Attorneys General Engel and Dickinson as to whether NJDEP actually intended to pursue the released asbestos claims. <u>Id</u>. at 1.

53.    On July 1, 2010, NJDEP's counsel responded to Grace's June 23, 2010, letter. Letter from Deputy Attorney General John Dickinson to Anthony J. Marchetta, Esq. (July 1, 2010) (the "<u>Dickinson Letter</u>", attached as <u>Appendix, Exhibit 24</u>).   In the Dickinson Letter, NJDEP asserted that its demand that Grace conduct further asbestos soil sampling pursuant to ISRA was not released by the 2009 Stipulation and Order.  NJDEP took this position even though the Stipulation states that NJDEP released "any and all claims" that NJDEP "asserted or otherwise could have been asserted in the State Court Action and the NJDEP Motion".

54.    On August 6, 2010, Grace wrote to NJDEP's counsel to advise that it appeared the parties were in disagreement over the scope of Grace's remaining obligations with respect to the Site.   Letter from Anthony J. Marchetta, Esq. to Deputy Attorney General John Dickinson (August 6, 2010) (the "<u>8/6/10 Marchetta Letter</u>", attached as <u>Appendix, Exhibit 25</u>).  The letter explained to NJDEP the reasons why NJDEP's position was both legally inapposite and factually incorrect.  The letter informed NJDEP that Grace believed the parties were at an impasse, and that Grace therefore would be filing this Motion, asking this Court to find that the NJDEP Demands are Hamilton Township Claims (as are any other asbestos-related claims arising from the Site) which were released and enjoined by the 2009 Stipulation and Order.  The letter

concluded by stating that Grace still intended to proceed with non-asbestos work at the Site for the reasons discussed above. *See* § II.G.

### III.    RELIEF REQUESTED

55.    The Debtors respectfully request the Court:

- Find that the actions contemplated by the NJDEP Demands violate the 2009 Stipulation and Order;

- Order NJDEP and the other Claimant Release Parties comply with the 2009 Stipulation and Order by ceasing and desisting from taking any of the actions contemplated by the NJDEP Demands; and

- Award the Debtors the costs and attorneys' fees they have incurred in having to bring this matter to the Court's attention.

### IV.    ANALYSIS

56.    The NJDEP Demands violate the 2009 Stipulation and Order, because they constitute claims that "could have been asserted in the State Court Action and the NJDEP Motion". The State Court Action Complaint faults Grace for not having sampled certain AOCs for potential asbestos contamination. NJDEP now demands that Grace test those very same AOCs. NJDEP could have demanded in 2005, when it commenced the State Court Action, that Grace sample the AOCS. But even if the 2006-07 URS Reports were the sole information upon which NJDEP was basing the NJDEP Demands, the Stipulation still precludes NJDEP from asserting those demands because it had those reports on hand well before it filed the NJDEP Motion in April 2007. In other words, the NJDEP Demands "could have been asserted" in both the State Court Action and the NJDEP Motion. Therefore, they are  Hamilton Township Site Claims.

57.    NJDEP and its fellow Claimant Release Parties released the Debtors of all Hamilton Township Site Claims in consideration for a $1 million Allowed Claim  (an Allowed Claim that has been accruing interest since the 2009 Stipulation and Order was entered in

November 2009). Moreover, the 2009 Stipulation and Order permanently enjoins NJDEP from taking the actions contemplated by the NJDEP Demands.

58.     And, even if the Stipulation was not clear and unambiguous, this Court and the District Court have already ruled that NJDEP is time-barred from pursuing any asbestos-related claims relating to the Hamilton Township Site. Therefore, the doctrine of *res judicata* bars NJDEP from prosecuting any such claims, whether before this Court or in any other venue.

59.     Finally, NJDEP's reliance on the *Torwico* case is inapposite because, unlike the situation in *Torwico*, there is no "ongoing and continuing threat" or "ongoing pollution emanating from [accumulated] wastes" from the Site. The facts of this matter could not be more different from those presented in *Torwico*. Amtrak and APU remediated the asbestos contamination at the Hamilton Township Site under the USEPA's auspices. USEPA kept NJDEP fully informed at every juncture of the progress of that remediation. USEPA and Amtrak informed NJDEP more than two years ago that all such remediation had been fully completed, and NJDEP stated to Amtrak that the remediation complied with applicable statutory requirements. Moreover, unlike in *Torwico*, where the courts found that NJDEP's demands could not be reduced to money damages, the demands contained in the NJDEP Demands have already been reduced to money damages in Allowed Claims for the USEPA, Amtrak and APU.

**A.     The Stipulation's Release Language Is Clear And Unambiguous And Bars NJDEP From Asserting Any Further Asbestos-Related Claims Regarding The Site, Including NJDEP's Current Demand For Additional Asbestos Sampling.**

60.     It is well established that the settlement of litigation ranks high in New Jersey public policy. *Jannarone v. W.T. Co.*, 65 N.J. Super. 472, 476 (App. Div.), cert. denied, 35 N.J. 61 (1961); *see also Judson v. Peoples Bank & Trust Co.*, 25 N.J. 17, 35 (1957); *Carlsen v. Carlsen*, 49 N.J. Super. 130, 136 (App. Div. 1958). Indeed,

22

> [a]n agreement to settle a lawsuit is a contract which, like all
> contracts, may be freely entered into and which a court, absent a
> demonstration of fraud or other compelling circumstances, should
> honor and enforce as it does other contracts."

*Pascarella v. Bruck*, 190 N.J. Super. 118, 124-25 (App. Div.), cert. denied, 94 N.J. 600 (1983).

61.     Fed.R.Bankr.P. 9019 has a similar public policy function, and compromises are favored in bankruptcy. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

62.     This Court expressly retained jurisdiction over the 2009 Stipulation and Order, and has the inherent power to enforce that Order. 11 U.S.C. §105(a); 28 U.S.C. § 1651.

63.     For the reasons discussed below, the NJDEP Demands fall foursquare within the definition of "Hamilton Township Claims". NJDEP is also incorrect in its asserting that the NJDEP Demands are not section 101(5) bankruptcy claims. Finally, given that the NJDEP Demands are Hamilton Township Site Claims, the 2009 Stipulation and Order's express release and injunctive provisions—which NJDEP freely negotiated with the Debtors—should be enforced.

### 1.     The NJDEP Demands Are "Hamilton Township Claims", Because They "Could Have Been Asserted" in the State Court Action and the NJDEP Motion

64.     The Stipulation states unequivocally that NJDEP agreed to release the "Hamilton Township Site Claims". The Stipulation defines such claims as "any and all claims that Claimant Release Parties asserted or otherwise could have asserted in the State Court Action and the NJDEP Motion". Stipulation at p. 3. The NJDEP Demands are clearly claims that NJDEP "could have asserted in the State Court Action and the NJDEP Motion".

65.     NJDEP has known for over a decade that asbestos contamination was an issue at the Site. USEPA Chronology; USEPA Memorandum. In particular, NJDEP was kept apprised of developments in sampling at the Site and ongoing remediation efforts prior to the commencement of the State Court Action. *See, e.g.*, USEPA Memorandum; POLREP I;

DOCS_DE:162571.1

POLREP II. Moreover, NJDEP's sampling demands involve the very same AOCs that, over five years ago, when it commenced the State Court Action, NJDEP faulted Grace for not having sampled. 4/30/10 Nickerson E-Mail; 6/22/10 Nickerson E-Mail; Complaint at ¶¶ 31-40. NJDEP could have asserted its sampling demand (and any other NJDEP Demands) in the Complaint, but it did not.

66.    NJDEP has also based its asbestos sampling demands on its apparently recent review of information contained in the 2006-07 URS Reports, which have been in NJDEP's possession since well before it filed the NJDEP Motion in 2007. 4/30/10 Nickerson E-Mail. NJDEP failed to provide any comments on those reports until April 30, 2010, some three to four years later, and many months after it executed the Stipulation and the Court entered the 2009 Stipulation and Order. Id. If NJDEP truly was relying solely on information contained in the 2006-07 URS Reports, then it could have asserted the sampling demands in the NJDEP Motion and the associated Proof of Claim when they were filed in April 2007. Again, as with the State Court Action, it did not choose to do so.

### 2.    The NJDEP Demands Are Not Governed by In re Torwico

67.    NJDEP asserts that the NJDEP Demands do not constitute "claims" for purposes of section 105, because NJDEP is not seeking to have the Debtors "pay over money to the State". 7/1/10 Dickinson Letter at 2. NJDEP asserts that *Torwico* entitles NJDEP to force the Debtors to perform further remediation at the Site because of "ongoing environmental hazards" or "existing hazards". Dickinson Letter at 2, citing *In re Torwico Electronics*. NJDEP misapprehends the *Torwico* case and misapplies it to the facts of this matter.

68.    The Third Circuit in *Torwico* stated that the NJDEP order at issue in that matter required the debtor file "a written closure plan . . . for closure of the seepage pit" where "wastes

are migrating into the surrounding environment". *In re Torwico Elecs*, 8 F.3d 146, 150 n.5 (3d Cir. N.J. 1993). Thus, the remedy could not be simply reduced to money damages.

69.     That factual predicate does not exist in this matter:

- *First*, there is no hazard—whether ongoing or otherwise.

70.     The asbestos contamination at the Hamilton Township Site has already been remediated, and USEPA has accepted the final report regarding the remediation and has confirmed that all such asbestos-related remediation was completed in accordance with USEPA requirements.  7/10/08 Ferriola Letter.   Moreover, NJDEP itself has acknowledged that the cleanup has been satisfactorily completed.  2008 Warren Letter.   Thus, there is no hazard, let alone one that is ongoing.

- *Second*, there is no risk of off-site migration of asbestos contamination.

71.     NJDEP is well aware that there is no risk of offsite migration.  In 2005, prior to the end of the cleanup, Hamilton Township's consultant reported at an assembly committee meeting that, albeit with only a small number of samples, he had not found any evidence of asbestos contamination having migrated from the Site.  NJDEP and the New Jersey Attorney General had representatives attending that meeting. 5/10/05 Assembly Committee Meeting.  In 2006, USEPA conducted a far more exhaustive study, which confirmed that there was no evidence of offsite migration—a result that was made public by the USEPA.  USEPA Press Release.

- *Third*, the asbestos-related remediation of the Hamilton Township Site has already been reduced to a money claim.

72.     As this Court is well aware, the Hamilton Township Site asbestos cleanup has been completed.  Grace paid for its share of that clean-up when USEPA, Amtrak and APU were granted Allowed Claims for approximately $4 million in the aggregate.  In light of these facts,

NJDEP's assertion that it is rightfully asking for equitable action rather than money damages is disingenuous.

73.    The Third Circuit in *Torwico* confirms this conclusion:

> *CMC* held that the CERCLA § 106 order there involved must be in response to an ongoing and continuing threat, and not merely the repackaging of a forfeited claim for damages.

*Torwico Elecs,*, 8 F.3d at 150, citing *In re CMC Heartland Partners*, 966 F.2d 1143, 1146-47 (7th Cir. 1992.

74.    The record here amply demonstrates that there is no ongoing and continuing threat. The record also demonstrates that the NJDEP Demands are no more than "a repackaging of a forfeited claim for damages." Indeed, this Court and the District Court have specifically found NJDEP's asbestos claims for the Site to be time-barred. Thus, NJDEP is trying to force Grace's hand, yet again, in another way, as NJDEP is now apparently not satisfied with the $1 million settlement it agreed to and which was approved by this Court.

### 3.    *NJDEP Released the Hamilton Township Claims and NJDEP Is Barred From Asserting the NJDEP Demands*

75.    The Stipulation's release language is clear and unambiguous. The Stipulation states that NJDEP agreed that it and its fellow Claimant Release Parties "released the Debtor Release Parties from all liability for the Hamilton Township Site Claims". The injunctive language is likewise clear and unambiguous. It bars NJDEP from pursuing the actions contemplated by the NJDEP Demands.

### B.    Independent Of The Stipulation, NJDEP's Current Asbestos Claims Are Barred By The Doctrine Of *Res Judicata* Given This Court's Prior Rulings Regarding NJDEP's Failure To File A Proof Of Claim.

76.    Even if the Stipulation did not resolve all of NJDEP's Site asbestos contamination claims issues, NJDEP's attempt to now pursue such asbestos claims is prohibited by the doctrine

of *res judicata*.  The *res judicata* doctrine serves "the important policy goals of finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness." *First Union National Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 352 (2007). The *res judicata* doctrine applies to bar subsequent attempts to re-litigate a matter, provided that:

> "the judgment relied upon must be valid, final and on the merits; the parties in the two actions must be either identical or in privity with one another; and the claims must grow out of the same transaction or occurrence.

*Olds v. Donnelly*, 291 N.J. Super. 222, 232 (App. Div. 1996); aff'd 150 N.J. 424 (1997).  The three elements of *res judicata* are clearly satisfied in this case.

- **First**, the judgment relied upon must be valid, final, and on the merits.

77.    The State Court Action has been dismissed with prejudice.  The orders of this Court and the District Court denying the NJDEP Motion are both final and non-appealable. The appeals to the Third Circuit relating to both matters have likewise been dismissed with prejudice.

- **Second**, the parties in the two actions must be identical or in privity with one another.

78.    The parties in the State Court Action, the NJDEP Motion, the 2009 Stipulation and Order and the current dispute as outlined in the NJDEP Demands are identical, and thus satisfy this element.

- **Third**, the claims must grow out of the same transaction or occurrence.

79.    *Res judicata* "applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined"" *Reid v. Reid*, 310 N.J. Super. 12, 16 (App. Div. 1998).  The State Court Action was a claim for penalties under ISRA and the Spill Act relating to the asbestos contamination at the Site and Grace's alleged "failure to sample" certain AOCs at the Site.  The NJDEP Motion requested leave to file a proof of claim

for those very same penalties.  The 2009 Stipulation and Order settled those penalties, as well as "any and all claims" the NJDEP "asserted or could have asserted in the State Court Action and the NJDEP Motion. The NJDEP Demands contained in the various correspondence from NJDEP include a demand that Grace sample various AOCs at the Site pursuant to ISRA.  The NJDEP Demands thus arise from the "same transaction or occurrence" as did the State Court Action, the NJDEP Motion and the 2009 Stipulation and Order.   Accordingly, the third element is also obviously met.

80.     Finally, "the important policy goals of finality, repose and prevention of needless litigation" that are addressed by the *res judicata* doctrine have been implicated in this matter. *First Union National Bank*, 190 N.J. at 352 (internal citations omitted).  By reasserting its ISRA claims following its belated review of Grace's 2006 and 2007 environmental reports, NJDEP is forcing Grace (at considerable expense and to the detriment of the Debtors and their various creditor and equity constituencies) and this Court, to revisit the same underlying facts, circumstances, and legal issues that were resolved as part of the 2009 Stipulation and Order, the NJDEP Motion and the State Court Action.   The NJDEP Demands thus have created an entirely unnecessary burden on the Debtors' time, energy and financial resources, and they have injected confusion and uncertainty into a matter in which the Debtors have paid $1 million to NJDEP for finality and certainty.  The NJDEP Demands thus undermine notions of basic fairness by forcing Grace to re-litigate issues that have already been resolved to the satisfaction of all parties— including NJDEP (as of last year, at least).

## V.    CONCLUSION

81.     The demands that NJDEP is making of Grace for asbestos sampling at the Hamilton Township Site directly violate the terms of the 2009 Stipulation and Order.  Further, even if the Stipulation had not settled such claims, those claims are barred by the doctrine of *res*

*judicata*. The Debtors therefore respectfully submit that NJDEP should be ordered to comply with the 2009 Stipulation and Order and immediately cease and desist from pursuit of its demands for further asbestos sampling by Grace. NJDEP should also be ordered to pay the costs incurred by the Debtors in having to bring NJDEP's flagrant disregard of this Court's order to the attention of the Court.

## VI.    NO PREVIOUS MOTION

82.    No previous motion for the relief sought herein has been made to this or any other court.

## VII.    NOTICE

83.    Notice of this Motion has been given to:  (i) the office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) NJDEP.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[nothing further on this page]**

DOCS_DE:162571.1

WHEREFORE, the Debtors respectfully request that this Court enter an Order (1) directing NJDEP to comply with the 2009 Stipulation and Order and cease pursuit of further asbestos work on the Hamilton Township Site by Grace; (2) awarding Grace its costs and fees for having to bring this motion; and (3) granting such other relief as may be appropriate.

Dated:  August 9, 2010

KIRKLAND & ELLIS LLP
Theodore L. Freedman
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

and

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
Roger J. Higgins
70 W. Madison St., Suite 2100
Chicago, IL 60602-4253
(312) 641-2162

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705
(302) 652-4100
(302) 652-4400
Co-Counsel for the Debtors and Debtors-in-Possession