# EXHIBIT 6

# BLANK ROME COMISKY & MCCAULEY LLP

*Counselors at Law*

WRG 7.7047

Delaware
Florida
Maryland
New Jersey
New York
Ohio
Pennsylvania
Washington, DC

Direct Dial: (215) 569-5689
Fax: (215) 832-5689
Email: stonelake@blankrome.com

July 24, 2002

**VIA FACSIMILE TRANSMISSION**
**(212) 637-3104**
**AND FIRST CLASS MAIL**

Brian E. Carr, Esquire
Assistant Regional Counsel
Office of Regional Counsel
U. S. Environmental Protection Agency, Region II
290 Broadway, 17th Floor
New York, NY 10007-1866

Re: <u>W. R. Grace Site, Hamilton, New Jersey</u>

Dear Brian:

We are writing on behalf of American Premier Underwriters, Inc. ("APU") to respond to the Notice Letter EPA issued to Amtrak, W.R.Grace ("Grace") and APU, dated May 29, 2002, concerning the above-referenced Site. Among other things, this Notice Letter alleges that: (1) the Site is contaminated with asbestos; (2) Zonolite Co. ("Zonolite") and Grace used and disposed of asbestos at the Site; (3) Zonolite leased the Site from Penn Central Transportation Corp.("PCT Corp.") until Zonolite was acquired by Grace; (4) Grace then leased the Site from PCT Corp. and later Amtrak; (5) asbestos was disposed at the Site while PCT Corp. owned it; (6) APU is the successor to PCT Corp.; and (7) Amtrak, Grace, and APU are potentially responsible parties ("PRPs") for response costs and response actions under the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. Section 9601 et seq. ("CERCLA").

Initially, I want to acknowledge our appreciation that you agreed to extend the time for both APU and Amtrak to respond to this Notice Letter until July 24, 2002 and to provide us with certain documents and information relating to the Site and to the pending bankruptcy proceedings of Grace.

We are still investigating EPA's allegations relating to the Site. Depending on the accuracy of EPA's allegations, it is possible that APU is not a PRP for current conditions at this Site or that Grace may have liability for violations of some environmental requirements that are not dischargeable in the bankruptcy proceeding and that Grace may be subject to

BLANK ROME COMISKY & MCCAULEY LLP⎯⎯

WRG 7.7048

Brian E. Carr, Esquire
July 24, 2002
Page 2

enforcement actions for such conduct that would not be subject to the automatic stay of litigation relating to prepetition conduct. Also, we currently believe that EPA's proposal to excavate the asbestos and dispose it at an offsite location would be inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. Part 300 ("NCP"). We reserve the right to amend and/or supplement this response when we obtain any further information on these issues.

Meanwhile, APU denies that it is a PRP for the alleged contamination but APU offers to perform the response actions set forth below subject to a reservation of rights while it continues its investigation of this matter. Based on our consultations with Amtrak, we currently believe that APU and Amtrak would agree to perform these actions jointly and that we would also seek to obtain the cooperation of other parties.

### Identification of PRP's

As mentioned above, APU denies that it is a PRP for any asbestos contamination at the Site. Among other things, we dispute EPA's interpretation of the aerial photographs of the Site. Some of those photographs do show disturbance of the land on specific dates but they can not distinguish storage of raw materials or finished products from storage or disposal of waste materials. Also, they can not distinguish materials that contain asbestos ("ACM") from materials that do not contain asbestos.

Also, APU contends that no CERCLA response action is necessary or appropriate for any asbestos disposed at the Site before April 1, 1976, when APU's alleged predecessor sold the property

If Zonolite and/or Grace disposed of asbestos on the Site, they should have complied with applicable environmental laws and Grace should have disclosed those disposals to the New Jersey Department of Environmental Protection ("NJDEP") and installed an appropriate cap or implemented another appropriate remedy when it terminated manufacturing operations at the Site as required by the New Jersey Industrial Site Recovery Act, N.J.S.A. 13:1K-6 et seq. ("ISRA"). If Grace violated these requirements, such violations would not be dischargeable in the bankruptcy proceeding. In re Torwico Electronics, Inc., 8 F. 3d 146 (3rd Cir. 1993). Also, an enforcement action to cure such violations would not be subject to the automatic stay. If Grace complied with those requirements, the problem must have arisen after Grace vacated the Site and, therefore, the prior owners should not be responsible for it.

If we assume, without admitting, that a CERCLA response action is necessary now because Grace violated applicable environmental laws: (1) Grace should be compelled to

# BLANK ROME COMISKY & MCCAULEY LLP

WRG 7.7049

Brian E. Carr, Esquire
July 24, 2002
Page 3

cure these violations; (2) EPA should not use CERCLA to circumvent such violations; and (3) EPA should not use the equitable remedies established under CERCLA to compel other parties to perform or pay for remedial work because it is unlikely that they could collect a money judgment from Grace in a contribution claim under CERCLA. Direct action by EPA against APU or other parties would frustrate public policy, including one of CERCLA's purposes, which is to facilitate an equitable allocation of responsibility through contribution claims under Section 113 of CERCLA. A potentially uncollectable contribution claim would not be necessary if EPA or DEP took appropriate enforcement action to cure such violations.

If Grace did not violate applicable laws, there would not be any need (or basis) to attempt to impose CERCLA liability on a prior owner of the Site.

## NCP Compliance

If it was appropriate to address the asbestos contamination under CERCLA, which is a contention we do not concede, EPA's proposal to excavate and remove the asbestos from the Site would be inconsistent with the NCP.

CERCLA and the NCP require the selection and use of cost effective remedies that protect public health and welfare and the environment and meet all applicable and relevant or appropriate requirements ("ARARs"). EPA regulation of asbestos waste disposal sites under the National Emission Standards for Hazardous Air Pollutants ("NESHAPS") specifically authorizes capping of asbestos wastes with as little as 6 inches of compacted non-asbestos-containing material and either a vegetative cover or 3 additional inches of crushed rock to prevent asbestos from becoming airborne. 40 C.F.R. Section 61.151 (a)(2). The NCP also authorizes capping of contaminated soils or sludges "where needed to reduce migration". 40 C.F.R. Section 300.415 (e)(4).

The NCP does authorize excavation under some circumstances but, in the case of asbestos, excavation alternatives could cause more harm than good by increasing the risk that asbestos emissions would occur while the remedy is being performed. Any benefit of excavation would be offset by the short term risks and would be inconsistent with the NESHAP regulations that authorize a capping remedy- even for highly concentrated asbestos waste.

The NCP also establishes a preference for on-site remedies and for remedies that reduce the mobility, toxicity or volume of the waste or contaminated media. Any excavation remedy would increase the volume of the material and would probably increase its mobility, - at least during the excavation process and during all material handling phases of the

071820.07615/11093662v1

**BLANK ROME COMISKY & MCCAULEY LLP**              WRG 7.7050

Brian E. Carr, Esquire
July 24, 2002
Page 4

remedy. Each material handling phase would present an opportunity for asbestos to become airborne.

The NCP also requires that each remedy be cost effective as long as it meets ARARs and is protective of public health and welfare and the environment. 40 C.F.R. Section 300.430 (f) (1) (ii) (D) since capping remedies are authorized by EPA's asbestos NESHAP's regulation they are, per se, sufficiently protective, as a matter of law.

Capping remedies are available that would be substantially less expensive than EPA's proposed excavation remedy.

For the above reasons, an excavation remedy would be inconsistent with the NCP.

### APU's Offer

Without admitting any liability for the Site and, subject to a reservation of rights to obtain contribution from PRPs for the Site and to contest any other EPA demands relating to the Site, APU offers to: (1) perform additional investigation of the three parcels identified by EPA as the MLB parcel, the Milham Yard and, if we can get access, the Hamilton Transit Corporate Center to delineate the nature and extent of asbestos contamination on those parcels; (2) perform an expedited evaluation of alternative remedies for asbestos present on those parcels; and (3) submit a report to EPA that delineates the location(s) on those parcels where asbestos concentrations exceed one percent (1%) and evaluates appropriate alternative remedies for such areas of asbestos contamination. We propose to perform the investigation with a protocol that involves a 50 foot by 50 foot sampling grid and uses polarized light, phase-contrast microscopy ("PLM"). We would agree to use transmission electronmicroscopy ("TEM") to check ten percent (10%) of the PLM samples along the perimeter of each area for possible false negative results and we may also elect to use TEM to check for false positive PLM results.

If EPA agrees with this approach, we will prepare a work plan for EPA's review that describes this proposal in more detail.

# BLANK ROME COMISKY & MCCAULEY LLP

WRG 7.7051

Brian E. Carr, Esquire
July 24, 2002
Page 5

    We look forward to discussing this proposal with EPA after you have an opportunity to review it.

    Best regards.

Sincerely,

BENJAMIN G. STONELAKE, JR.

BGS:emi
cc:    Jared Roberts, Esq. (via fax and mail)
       Michael Ferriola (via mail) ✓

071820.07615/11093662v1