# **EXHIBIT 11**

# Committee Meeting

of

## ASSEMBLY JUDICIARY COMMITTEE AND ASSEMBLY ENVIRONMENT AND SOLID WASTE COMMITTEE

*"Testimony from invited individuals concerning asbestos contamination at the former W.R. Grace Zonolite plant in Hamilton Township, Mercer County"*

**LOCATION:** Committee Room 11
State House Annex
Trenton, New Jersey

**DATE:** May 10, 2005
11:00 a.m.

### MEMBERS OF COMMITTEES PRESENT:

Assemblywoman Linda R. Greenstein, Chair
Assemblyman John F. McKeon, Chair
Assemblyman Patrick J. Diegnan Jr., Vice Chair
Assemblyman Michael J. Panter, Vice Chair
Assemblyman Peter J. Barnes Jr.
Assemblyman Robert M. Gordon
Assemblyman Reed Gusciora
Assemblyman Louis M. Manzo
Assemblyman Bill Baroni
Assemblyman Michael Patrick Carroll
Assemblyman Larry Chatzidakis



### ALSO PRESENT:

| | | |
|---|---|---|
| Rafaela Garcia | Kay Henderson | Mary C. Beaumont |
| Carrie Anne Calvo-Hahn | David Eber | Thea M. Sheridan |
| *Office of Legislative Services* | *Assembly Majority* | *Assembly Republican* |
| *Committee Aides* | *Committee Aides* | *Committee Aides* |

**Meeting Recorded and Transcribed by**
The Office of Legislative Services, Public Information Office,
Hearing Unit, State House Annex, PO 068, Trenton, New Jersey

## TABLE OF CONTENTS

|  | Page |
|---|---|
| Kathleen Fitzgerald<br>Director<br>Senior and Veterans Services, Health and Recreation<br>Hamilton Township | 3 |
| Glen D. Gilmore<br>Mayor<br>Hamilton Township | 4 |
| Curtis N. Williams<br>Private Citizen | 24 |
| Gregory Rue<br>Private Citizen | 26 |
| Denise McCall<br>Private Citizen | 28 |
| Helen McCall<br>Private Citizen | 29 |
| Linda Ramos<br>Private Citizen | 30 |
| Anthony J. Marchetta, Esq.<br>Representing<br>W.R. Grace and Company | 47 |
| Bradley M. Campbell<br>Commissioner<br>New Jersey Department of Environmental Protection | 74 |
| Dan Benson<br>Councilman<br>Hamilton Township | 107 |

## TABLE OF CONTENTS (continued)

   **Page**

Raymond Basso  
Acting Deputy Director  
Emergency and Remedial Response Division  
Region 2  
U.S. Environmental Protection Agency   111

Michael Ferriola  
On-Scene Coordinator  
U.S. Environmental Protection Agency   112

Marwan Sadat, Ph.D.  
President  
Sadat Associates   140

Rick Engler  
Director  
New Jersey Work Environmental Council   147

Bill Wolfe  
Policy Director  
Sierra Club   156

Stephen Mandarano  
CEO  
Accurate Document Destruction   157

Steven Picco, Esq.  
Representing  
Environment Resources Management, Inc.   163

Andrew Huggins, Ph.D.  
Principal  
Environment Resources Management, Inc.   169

James Blumenstock  
Deputy Commissioner  
Public Health Protection and Emergency Preparedness  
New Jersey Department of Health and Senior Services   184

# TABLE OF CONTENTS (continued)

|  | **Page** |
|---|---|
| Jerald Fagliano, Ph.D.<br>Program Manager<br>Hazardous Site and Health Evaluation<br>New Jersey Department of Health and Senior Services | 186 |

**APPENDIX:**

| | |
|---|---|
| Letter addressed to<br>Mr. Paul J. Norris and<br>Charles Warren, Esq.<br>from<br>Mark J. Pedersen<br>submitted by<br>Rafaela Garcia and<br>Carrie Anne Calvo-Hahn | 1x |
| Letter addressed to<br>George Pavlou<br>from<br>Michael Ferriola<br>submitted by<br>Glen Gilmore | 3x |
| Statement and report<br>submitted by<br>Anthony J. Marchetta, Esq. | 16x |
| Testimony<br>submitted by<br>Raymond Basso | 75x |
| Statement<br>submitted by<br>Steven Picco | 83x |

## TABLE OF CONTENTS (continued)

### APPENDIX (continued):

**Page**

Information
submitted by
James Blumenstock and
Jerald Fagliano, Ph.D.                                      84x

rs: 1-104
lmb: 105-192

MR. FERRIOLA: Thank you.

MR. BASSO: Thank you.

ASSEMBLYWOMAN GREENSTEIN: The next person, I guess, that we'll ask up is from Sadat Associates.

Thank you. I know you've been here all day. We really appreciate your sitting through all this, and I hope you found it moderately interesting, because it really has been a (indiscernible).

Could you identify yourselves?

M A R W A N   S A D A T, Ph.D.: Yes. I will do that, Madam Chairman.

I am Marwan Sadat. I'm the President of Sadat Associates. We are an engineering and environmental science consulting firm located in Trenton. I have a Ph.D. from Rutgers University in civil and environmental engineering. I'm a registered professional engineer in the State of New Jersey.

I am very pleased to brief the Committee on the sampling for asbestos that was conducted on March 28. So, on behalf of Hamilton Township--

ASSEMBLYWOMAN GREENSTEIN: By the way, Mr. Sadat, was that your first work on this project for Hamilton, in March of this year?

DR. SADAT: That is correct, Ma'am.

ASSEMBLYWOMAN GREENSTEIN: Okay.

DR. SADAT: In fact, Suzanne Macaoay, who is on my right, is the person who actually did the sampling. She's a project manager. I

brought her along because, if you have some specific questions, she is probably more qualified to answer you than I am.

ASSEMBLYWOMAN GREENSTEIN: I think what we'd want to know, in terms of that particular sampling, is when the testing began, when it ended, where were the samples taken from, and then, of course, a discussion of the results.

DR. SADAT: Madam Chairman, we did the sampling, as I said, on March 28, 2005. And we had 15 samples that were taken. Five were done at the Amherst Park, five were done at the Whitehead Park, and then we had another five samples that were taken from residences which were within a mile of the W.R. Grace site. Now, we received the results of the samples -- I think was in a short period of time -- we had 72 hours. We had to expedite it. And the results at the Amherst Park were nondetect; there was no asbestos that was detected in Amherst Park. Obviously, there was a lot of concern about public space.

Whitehead Park, similarly, no detection of asbestos. The two residences -- I'm sorry, there were three residences -- two had no asbestos and one had traces of asbestos. In fact, we found one residence where vermiculite had been brought to the property, and this is where we found some asbestos. Less than 1 percent. But I have to tell you, in conversation with EPA, Region 8, that was doing the Libby investigations -- we were told by EPA that, in effect, you can get unacceptable exposure, even if the levels are less than 1 percent.

ASSEMBLYWOMAN GREENSTEIN: And who told you that, I'm sorry?

DR. SADAT: That was conveyed to us by U.S. EPA Region 8 staff, Dr. Aubrey Miller, who is a senior toxicologist for the Libby Superfund site in Montana.

ASSEMBLYWOMAN GREENSTEIN: I see.

Now, did you find less than 1 percent? Did you find less than 1 percent, or more?

DR. SADAT: No. We found less than 1 percent. The highest concentration we found was 0.25.

ASSEMBLYWOMAN GREENSTEIN: Okay. Now, I did notice in some of the documents a distinction made between polarized light microscopy--

DR. SADAT: Microscopy.

ASSEMBLYWOMAN GREENSTEIN: --and -- what was the other one -- electron. Let me see here. Oh, electron -- transmission electron microscopy.

DR. SADAT: Yes. We did it by polarized light.

ASSEMBLYWOMAN GREENSTEIN: And did you have some issue about that, where you thought, perhaps, that doesn't quite go as strongly as you need it for this?

DR. SADAT: I think the results we have are reliable. I think if we had gone to electron microscopy, we may have gotten maybe a little bit better resolution, but I don't think it would have significantly changed the results.

ASSEMBLYWOMAN GREENSTEIN: And what were the results?

148

DR. SADAT: As I said, the results were nondetect in the parks, nondetect in two of the residences. One residence had traces of asbestos, because we did find vermiculite on the site, and the level that was detected was about 0.25 percent, which is less than 1 percent, one-quarter of 1 percent.

ASSEMBLYWOMAN GREENSTEIN: I believe it said in your report, in the summary, that you could not declare the area asbestos free. Was that a result of the finding at the one house, or something else that led you to that conclusion?

DR. SADAT: Well, Madam Chairman, I think it's a combination. One, we have 15 samples. This is a fairly large area. Fifteen samples, statistically, really, is not going to give you a reliable result. What we were doing for Hamilton Township -- and we must commend the Township, because it's really not their responsibility to do this -- is (a) immediately focus on public spaces, which is the parks where you have a high degree of exposure, if there is exposure to asbestos. So based on the 15 samples and the large areas that are involved, frankly, we can't say that there is no asbestos contamination throughout the area.

ASSEMBLYWOMAN GREENSTEIN: What -- and you did strictly soil testing, is that right, just soil testing?

DR. SADAT: I'm sorry. Soil testing. Yes, I think for asbestos that is really the main method of detection. EPA, when they were doing their excavation, were doing air sampling, which is the appropriate way to do it. Because, obviously, if you were excavating material, you want to make sure that your particulates are not going off-site.

ASSEMBLYWOMAN GREENSTEIN: What do you think needs to be done next, and how much concern do you think there should be at this point?

DR. SADAT: I think EPA is proposing to do off-site sampling, which I think is the appropriate thing to do. The EPA moves in very deliberate ways. I worked -- I served with government for 11 years, many years ago at the DEP. And I knew how deliberate EPA is. But in general, everything they do is based on very, very good science. So I suspect that once they are finished with the off-site sampling, the public then will really know what is going on. At this point, I think we are just speculating, because we have only one sample that showed traces of contamination.

ASSEMBLYMAN MANZO: Thank you, Mr. Sadat, for your testimony today.

First off, when the town of Hamilton came to you and asked you to go out and do some sampling, did you think it was a prudent measure on their part to do some sampling?

DR. SADAT: Well, we certainly thought it was really going beyond and above what townships usually do -- (*a*) there is no budget for such efforts, in general. It's really more of a function of the Department of Health or the DEP or EPA. Townships are not equipped to do that kind of investigation.

ASSEMBLYMAN MANZO: I didn't mean as far as what it-- As based on the science and technology of what they were being presented with, in relationship to a problem that existed, do you feel that someone

should have taken the onus of sampling? Not just them, but somebody should have, based upon what you have read.

DR. SADAT: I think off-site, I think the township did the appropriate thing by going off-site. Somebody -- and especially the public spaces. You have two parks which are within a mile-and-a-half of the site. And the question that comes up is, is there exposure at these parks from asbestos? And I think the only way that you can determine that is to go out and do some sampling. So I think they did what was appropriate. It's too bad that they had to do this. I think other agencies should have done that before.

ASSEMBLYMAN MANZO: So when I -- again, and not to be redundant -- but, again, the whole premise for why the DEP had issued a notice of compliance and why they had not addressed sampling on the site was basically the report given to them by Grace's consultant, which basically listed these three criterias, again, for not sampling: asbestos-containing Montana vermiculite concentrate comprised only a percentage of the total concentrate stored on that site; number two, the fact that less than 1 percent of asbestos would be present in the vermiculite concentrate -- their conclusion; and that the Montana vermiculite was less than 10 percent from 1991 to 1992, and was discontinued in 1993. Now, had someone come to you, as an environmental engineer, and given you that criteria, based upon what you already knew about that site, do you think that was sufficient reason not to warrant additional sampling?

DR. SADAT: Well, I think what should have been done is, some sampling should have been done. I really think that on a site that has

151

had industrial activity for a number of years -- certainly it's almost three decades or almost four decades -- not to do any sampling, to me, seems imprudent. And I have to add that I think one of the weaknesses of the system that we have right now is that documents are produced and delivered to DEP without basically anyone signing them, being responsible for them. So the document goes in and it is based on a certification by the company. There is no seal. That is, you don't have a professional engineer sealing a document that goes to DEP and says, "This document is, to the best of my knowledge, a document that reflects what's on the site."

Everything in this state -- you can't build a building, you can't do anything without an engineer signing a set of plans and saying, "I've certified that these plans are going to work." You do 3,000 cleanups at DEP, and it is not signed by any professional engineer, which I think is a fallacy in the system.

ASSEMBLYMAN MANZO: You hit on something which I think this -- especially the Environmental Committee wants to look at in regards of regulatory. But let me just get your thoughts on this. You're telling me that despite the fact that an environmental consulting firm does work for a responsible party, or a suspected responsible party, relative to an environmental issue, even though that they might have within their employ the services of environmental engineers, it is not required for a certification to be made -- on important data like sampling or evaluations or permits -- when passed on to DEP?

DR. SADAT: That is correct, Assemblyman.

152

The only time that a certification from a professional engineer is required is when there is a deed restriction. That is, where the property has a deed notification attached to it. At that point, there has to be a certification by a professional engineer, otherwise there isn't.

ASSEMBLYMAN MANZO: Do you think there is a -- I'll put you on the spot with this question -- did you think there might be a tendency for companies, or suspected polluters, to fudge a little on data and criteria because of that fact?

DR. SADAT: Well, I think it would be purely speculation on my part. I certainly would be somewhat hesitant to make a statement like that, because I have no evidence to that effect. But I do know that when a document is presented to the agency and it is not signed by the author, there is something wrong with the system.

ASSEMBLYMAN MANZO: Thank you, Mr. Sadat.

ASSEMBLYWOMAN GREENSTEIN: Thank you very much. Thank you. I think those were all the questions.

DR. SADAT: Thank you very much.

ASSEMBLYWOMAN GREENSTEIN: We really appreciate your testimony. Thank you.

The next -- I'll call Rick Engler, from the Work Environment Council.

And I also don't know if Jeff Tittel is in the room, because I was going to invite him up at the same time.

Rick, thank you for waiting all this time.

R I C K   E N G L E R: Thank you very much.

153