# **EXHIBIT 22**

# DAY PITNEY LLP

BOSTON    CONNECTICUT    NEW JERSEY    NEW YORK    WASHINGTON, D.C.

ANTHONY J. MARCHETTA
Attorney At Law

*Mail To:* P.O. Box 1945  Morristown, NJ  07962
*Deliver To:* 200 Campus Drive  Florham Park, NJ  07932
T: 973-966-8032 F: (973) 966 1015
amarchetta@daypitney.com

June 23, 2010

<u>VIA E-MAIL AND FIRST CLASS MAIL</u>

John F. Dickinson, Esq.
Deputy Attorney General
State of New Jersey Office of the Attorney General
Division of Law
25 Market Street, P.O. Box 093
Trenton, NJ 08625-0093

Re:    Former W.R. Grace Hamilton Township Site,
        <u>NJDEP Reassertion of Settled Asbestos Issues</u>

Dear John:

As you know, this firm represents W. R. Grace & Co.-Conn. ("Grace") with respect to the former vermiculite expansion plant located at 15 Industrial Drive, Hamilton Township, New Jersey (the "Site"). We write to inform you of recent communications, detailed below, between Grace and the NJDEP regarding certain environmental issues at the Site. Specifically, while Grace has informed the NJDEP that it generally accepts the NJDEP's April 30, 2010 technical comments concerning non-asbestos issues at the Site, and is willing to undertake and complete the required remediation for all such non-asbestos issues, the NJDEP has also requested that Grace conduct additional investigation in order to determine whether residual asbestos contamination is present. At the time this request was made, the NJDEP personnel involved were likely unaware of the NJDEP's 2005 New Jersey lawsuit, several Bankruptcy Court and District Court rulings, as well as the parties' 2009 settlement agreement.[1]

As a result of this misunderstanding, Grace is now faced with a <u>June 28, 2010 deadline</u> to respond to the NJDEP's technical comments concerning asbestos issues and to submit a schedule for investigation of same. We bring these developments to your attention in the hope that you will discuss the prior court rulings and settlement terms with the NJDEP personnel involved and thereby avoid potential delays or unnecessary disputes as to asbestos issues that are not the

---

[1] For your convenience, a copy of the settlement agreement is attached hereto at Tab A.

83292533.1

DAY PITNEY LLP
John F. Dickinson, Esq.
June 23, 2010
Page 2

responsibility of Grace. For your convenience, set forth below is a more detailed summary of the relevant communications between Grace and the NJDEP.

During 2006 and early 2007, Grace submitted a series of environmental reports concerning the Site prepared by its environmental consultant, URS Corporation.[2] The reports were limited to non-asbestos issues, as it was understood by NJDEP and all others involved on the project that the asbestos issues were to be addressed by other PRPs under the direction of USEPA. In June 2008, the Bankruptcy Court approved a Multi-Site Agreement that allowed the USEPA a general unsecured claim for the Site of $931,100.99. It also allowed general unsecured claims to the subsequent landowners that funded much of the asbestos remediation work at the site, as follows: To National Railroad Passenger Corporation an allowed unsecured claim of $1,528,550.33 (later reduced to $1,452,029.34 due to settlement of a dispute with a contractor) and to American Premier Underwriters, Inc. an allowed general unsecured claim of $1,763,492.44 (later reduced to $1,686,971.45 due to settlement of a dispute with a contractor). These payments, totaling over $4 million for the Site, will be made pursuant to Grace's reorganization plan.

On April 29, 2010, NJDEP performed a Site visit and the next day issued its technical comments regarding Grace's 2006 and 2007 reports. For your convenience, attached at Tab B are the April 30, 2010 comments of ISRA Case Manager, Jay Nickerson. As previously noted, the NJDEP's comments were not limited to the non-asbestos issues addressed in Grace's environmental reports, but also included comments requesting additional investigation for asbestos at the Site.

At Grace's request, a meeting was held on June 11, 2010 between representatives of Grace and NJDEP personnel, including Mr. Nickerson and Mr. John Graham. During the June 11 meeting, the Grace representatives reviewed the 2005 NJDEP New Jersey lawsuit, the related bankruptcy rulings, and the 2009 settlement agreement. The NJDEP personnel stated that they had not been aware of these prior proceedings relating to Site asbestos issues at the time they issued their April 30, 2010 comments. During the meeting, it was agreed that NJDEP would bifurcate its technical comments concerning asbestos and non-asbestos issues, and would address same in separate letters for the Site as Grace is anxious to move ahead on the non-asbestos issues. Attached hereto at Tab C is a June 15, 2010 letter from Grace to Mr. Nickerson memorializing the items discussed at that meeting.

---

[2] Specifically, Grace submitted the following environmental reports to NJDEP: (1) May 3, 2006 "Remedial Investigation Report – Non-Asbestos;" (2) October 30, 2006 "Remedial Action Work Plan for Non-Asbestos Soil Issues;" (3) October 30, 2006 "Groundwater Remedial Investigation Report – Non-Asbestos Issues;" and (4) February 22, 2007 "Supplemental Groundwater Remedial Investigation Report – Non-Asbestos Issues." On April 20, 2007, Grace submitted URS' "Groundwater Remedial Action Work Plan for Non-Asbestos Issues."

DAY PITNEY LLP
John F. Dickinson, Esq.
June 23, 2010
Page 3

On June 22, 2010, Mr. Nickerson forwarded an e-mail stating that Grace's June 11, 2010 letter was incorrect.[3] For your convenience, a copy of that e-mail is attached hereto at Tab D. Among other things, NJDEP's e-mail states that Grace must submit a response as to both asbestos and non-asbestos issues by June 28, 2010, along with a schedule with remedial timeframes for both issues.

Grace has every intention of providing a written response and schedule regarding the non-asbestos issues in accordance with the June 28, 2010 deadline, and to cooperate with NJDEP regarding those issues. However, we ask that you confer with Mr. Nickerson regarding the asbestos issues so we can hopefully avoid any delays or disputes concerning the very same issues that were resolved by NJDEP in the settlement with Grace.

Thank you for your prompt attention to this matter.

Please contact us if you have any questions or wish to discuss this matter further.

Very truly yours,

Anthony J. Marchetta

cc:    Rachel Lehr, Esq.
       Deputy Attorney General (via e-mail and First Class Mail)

       Richard F. Engel, Esq.
       Deputy Attorney General (via e-mail and First Class Mail)

       Mr. Jay Nickerson
       ISRA Case Manager, Site Remediation Program
       New Jersey Department of Environmental Protection (via e-mail and First Class Mail)

---

[3] Also, counsel to Amtrak and APU have since stated they did not agree to take responsibility for the asbestos issues at the Site.

83292533.1

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

STIPULATION RESOLVING CLAIMS OF STATE OF NEW JERSEY, DEPARTMENT
OF ENVIRONMENTAL PROTECTION

This stipulation (the "Stipulation") is entered into this ___ day of _____, 2009,

between W. R. Grace & Co. ("Grace"), W. R. Grace & Co.-Conn., and their affiliates

(collectively, the "Debtors"), Robert J. Bettacchi, Jay H. Burrill and the State of New Jersey,

Department of Environmental Protection (the "Claimant").[2]

---

[1]   The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]   Capitalized terms not defined in this Motion shall have the meaning ascribed to them in, as the case may be, the Stipulation or the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., Et Al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009*, as thereafter amended (the "Plan").

**Definitions**

The following terms shall have the meanings specified below:

a.    "Adversary Proceeding" means *W. R. Grace & Co., et al. v. Campbell, et al. (In re W. R. Grace, et al., Debtor(s))* (Adversary No. 05-52724).

b.    "Adversary Proceeding Order" means the Bankruptcy Court's *Order Denying Motion to Dismiss and Issuing Declaratory and Permanent Injunctive Relief in Favor of the Debtors*, dated April 1, 2008 (Adversary docket no. 30).

c.    "Allowed Amount" has the meaning set forth in the Plan.

d.    "Appeals" means: (i) all appeals pending in the Adversary Proceeding, including but not limited to, the Injunction District Court Appeal and the Injunction Third Circuit Appeal; and (ii) all appeals from the Late-Filed POC Order, including but not limited to, the Late-Filed POC District Court Appeal and the Late-Filed POC Third Circuit Appeal.

e.    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

f.    "Bettacchi" is Robert J. Bettacchi.

g.    "Burrill" is Jay H. Burrill.

h.    "Claimant Release Parties" are, collectively: (i) Claimant; (ii) the Commissioner of the New Jersey Department of Environmental Protection; (iii) the New Jersey Spill Compensation Fund; and (iv) the Administrator of the New Jersey Spill Compensation Fund

i.    "Debtor Release Parties" are, collectively, the Debtors, Bettacchi, Burrill, all current and former directors, officers and employees of the Debtors and all other related parties.

j.    "Delaware District Court" means the United States District Court for the District of Delaware.

k.    "General Unsecured Claim" shall have the meaning set forth in the Plan.

2

l.     "Hamilton Township Site" means the site of the Debtors' former vermiculite expansion plant located at 35 Industrial Drive, Hamilton Township, Mercer County, New Jersey.

m.     "Hamilton Township Site Claims" means any and all claims that Claimant Release Parties asserted or otherwise could have asserted in the State Court Action and the NJDEP Motion.

n.     "Injunction District Court Appeal" means the appeal to the Delaware District Court of the Adversary Proceeding Order, captioned *Campbell, et al., v. W. R. Grace & Co. (In re W. R. Grace, et al, Debtor(s))* (Civil Action No. 08-250) (Buckwalter, J.).

o.     "Injunction Third Circuit Appeal" means the appeal to the United States Court of Appeals for the Third Circuit of the Delaware District Court's decision in the Injunction District Court Appeal, captioned *W. R. Grace & Co., et al. v. Campbell, et al.* (Civil Action No. 09-2075).

p.     "Late-Filed POC District Court Appeal" means the appeal to the Delaware District Court of the Late-Filed POC Order, captioned *State of New Jersey, Dept. of Environmental Protection v. W. R. Grace & Co. (In re W. R. Grace, et al, Debtor(s))* (Civil Action No. 07-536) (Buckwalter, J.).

q.     "Late-Filed POC Order" means the Bankruptcy Court's *Order Denying Motion of the State of New Jersey, Department of Environmental Protection, For Leave to File a Late Proof of Claim*, dated August 2, 2007 (docket no. 16467).

r.     "Late-Filed POC Third Circuit Appeal" means the appeal to the United States Court of Appeals for the Third Circuit of the Delaware District Court's decision in the Late-Filed POC District Court Appeal, captioned *State of New Jersey, Dept. of Environmental Protection v. W. R. Grace & Co. (In re W. R. Grace, et al, Debtor(s))* (Civil Action No. 08-2069).

3

s.    "New Jersey District Court" means the United States District Court for the District of New Jersey.

t.    "New Jersey District Court Action" means the proceeding in the New Jersey District Court, captioned *New Jersey Department of Environmental Protection v. W. R. Grace & Co., et al.* (Civ. Action No. 05-4581) (MLC).

u.    "NJDEP Motion" means the motion filed by the Claimant for leave to file a late-filed proof of claim, captioned *Motion of the State of New Jersey, Department of Environmental Protection, For Leave to File a Late Proof of Claim* (docket nos. 15307 and 16443).

v.    "Settlement Order" means the order entered by the Bankruptcy Court approving the terms of the settlement documented in this Stipulation.

w.    "State Court" means the Superior Court of New Jersey, Law Division - Mercer County.

x.    "State Court Action" means the action commenced in the State Court by the Claimant against the State Court Action Defendants, captioned *New Jersey Department of Environmental Protection v. W. R. Grace & Co., Inc., W. R. Grace & Co.-Conn., "Grace Conn.-Successor", Jay H. Burrill and, Robert J. Bettacchi,* Civ. No. L-001473-05 (Super. Ct., Mercer County, N.J.).

y.    "State Court Action Defendants" are, collectively, Grace, W. R. Grace & Co.-Conn., "Grace Conn.-Successor", Bettacchi and Burrill.

### Statement of Facts

**WHEREAS,** on April 2, 2001 (the "Petition Date"), the Debtors commenced their respective reorganization cases by filing in the Bankruptcy Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4

**WHEREAS,** on or about June 1, 2005, the Claimant commenced the State Court Action in the State Court.

**WHEREAS,** on or about September 19, 2005, the Debtors commenced the New Jersey District Court Action by removing the State Court Action to the New Jersey District Court.

**WHEREAS,** on or about September 19, 2005, the Debtors commenced the Adversary Proceeding in the Bankruptcy Court, seeking to enjoin the State Court Action.

**WHEREAS,** on or about May 17, 2006, the New Jersey District Court denied without prejudice the Debtors' motion to transfer venue of the New Jersey District Court Action to the Delaware District Court, and likewise denied without prejudice the Claimant's motion to remand the New Jersey District Court Action to the State Court. The parties were also granted leave to reinstate the motions if settlement negotiations failed.

**WHEREAS,** on or about April 26, 2007, the Claimant filed the NJDEP Motion in the Bankruptcy Court.

**WHEREAS,** on or about August 2, 2007, the Bankruptcy Court entered the Late-Filed POC Order, denying the NJDEP Motion. The Claimant thereafter commenced the Late-Filed POC District Court Appeal.

**WHEREAS,** on or about March 11, 2008, in the Late-Filed POC District Court Appeal, the Delaware District Court affirmed the Bankruptcy Court's Late-Filed POC Order. The Claimant thereafter commenced the Late-Filed POC Third Circuit Appeal.

**WHEREAS,** on or about April 1, 2008, the Bankruptcy Court entered the Adversary Proceeding Order, which denied the Claimant's motion to dismiss the Adversary Proceeding, and which also issued declaratory and permanent injunctive relief in favor of the Debtors and a

5

preliminary injunction in favor of Burrill and Bettacchi. The Claimant thereafter commenced the Injunction District Court Appeal.

**WHEREAS**, on or about December 10, 2008, the New Jersey District Court "stayed and administratively terminated" the New Jersey District Court Action, with leave for the parties to reopen the action "when appropriate".

**WHEREAS**, on or about March 12, 2009, in the Injunction District Court Appeal, the Delaware District Court denied the Claimant's appeal of the Adversary Proceeding Order. The Claimant thereafter commenced the Third Circuit Injunction Appeal.

## The Settlement

**NOW, THEREFORE**, for good and valuable consideration, the parties hereby stipulate and agree that as of the date on which the Settlement Order becomes final and non-appealable:

1.    The Claimant shall be allowed a General Unsecured Claim (the "Claimant's Allowed Claim"), in the Allowed Amount of $1 million (the "Claimant's Allowed Claim Amount"), *provided, however*, that: (i) the Claimant shall be entitled to interest only as set forth in this Stipulation, and shall not be allowed any pre- or post-petition interest on the Claimant's Allowed Claim for any period of time prior to the date on which the Settlement Order becomes final and non-appealable; (ii) interest on the Claimant's Allowed Claim Amount shall accrue at the rate and in the manner provided in the Plan for similarly situated General Unsecured Claims; and (iii) such interest accrual shall commence on the date on which the Settlement Order becomes final and non-appealable and continue until the date on which the Claimant receives payment in satisfaction of the Claimant's Allowed Claim.

2.    Pursuant to the terms of the Plan, on or before 30 days after the Plan's Effective Date, the Debtors shall pay to the Claimant the Claimant's Allowed Claim Amount (plus any applicable interest).

3.     The Hamilton Township Site Claims shall be deemed disallowed and expunged for all purposes, and the Claimant Release Parties agree that the Hamilton Township Site Claims are discharged and satisfied by payment of the Claimant's Allowed Claim, and that the Claimant Release Parties are forever barred, estopped, and enjoined from asserting against the Debtor Release Parties any of the foregoing claims or any claims arising from the Settlement other than to enforce the Debtors' obligations as set forth in this Stipulation.

4.     On or before 30 days after the date the Settlement Order becomes final and non-appealable, Claimant shall take all actions necessary to cause the State Court Action and the New Jersey District Court Action to be dismissed with prejudice, and the Claimant agrees that it is permanently enjoined from pursuing the State Court Action and the District Court Action.

5.     On or before 30 days after the Settlement Order becomes final and non-appealable, the Claimant and the Debtors shall promptly take all actions necessary to cause the Appeals to be dismissed.

6.     The Claimant shall file a proof of claim with the Debtors' claims agent in the Claimant's Allowed Claim Amount.  The Debtors shall instruct the claims agent to record the proof of claim as an Allowed General Unsecured Claim with an Allowed Amount of the Claimant's Allowed Claim Amount.

### Release

7.     The Claimant Release Parties agree that they have released the Debtor Release Parties from all liability for the Hamilton Township Site Claims.

### Miscellaneous

8.     Notwithstanding the foregoing, this Stipulation and the Debtors' signature hereon shall not become effective and binding until the Bankruptcy Court enters the Settlement Order upon a motion of the Debtors served upon the necessary parties-in-interest in accordance with

the Bankruptcy Code and the Bankruptcy Rules.  Upon execution of this Stipulation by the parties, the Debtors shall promptly prepare and file the motion and serve it upon the necessary parties-in-interest.

9.    Each party executing this Stipulation represents that such party has the full authority and legal power to do so.  This Stipulation may be executed in counterparts and each such counterpart together with the others shall constitute one and the same instrument.  The parties further agree that facsimile signatures hereon shall be deemed to be original signatures. This Stipulation shall be binding upon and inure to the benefit of each of the parties, and upon their respective assignees, successors and/or partners, including, but not limited to any trustee(s) appointed in the Bankruptcy Cases.

10.    This Stipulation is being entered into solely as a settlement of issues and does not represent an admission by any of the parties of the validity of any liability or defense with respect to the matters set forth herein.

11.    The Bankruptcy Court shall retain jurisdiction to enforce this Stipulation and all matters relating thereto.

Anne Milgram Attorney General of New Jersey

By: _____

John F. Dickinson, Jr.
Deputy Attorney General
Richard J. Hughes Justice Complex
25 Market Street, PO Box 093
Trenton, NJ 08625-0093

Date: October 19, 2009

W. R. Grace & Co., et al. ("Debtors")

By: _____

William M. Corcoran
Vice President, Public and Regulatory Affairs
W.R. Grace & Co.
7500 Grace Drive
Columbia, Maryland 21044

Date: _____


Weil, Gotshal & Manges LLP
Attorneys for Robert J. Bettacchi

By: _____

Thomas C. Frongillo
100 Federal Street
34th Floor
Boston, MA 02110-1800

Date: _____

Gibbons, P.C.
Attorneys for Jay H. Burrill

By: _____

Edward F. McTiernan
Gibbons, P.C.
One Gateway Center
Newark, NJ 07102-5310

Date: _____

**Anne Milgram Attorney General of New Jersey**

By:_____

John F. Dickinson, Jr.
Deputy Attorney General
Richard J. Hughes Justice Complex
25 Market Street, PO Box 093
Trenton, NJ 08625-0093

Date:_____

**W. R. Grace & Co., et al. ("Debtors")**

By: _____

William M. Corcoran
Vice President, Public and Regulatory Affairs
W.R. Grace & Co.
7500 Grace Drive
Columbia, Maryland 21044

Date: 10/15/09

**Weil, Gotshal & Manges LLP**
**Attorneys for Robert J. Bettacchi**

By:_____

Thomas C. Frongillo
100 Federal Street
34th Floor
Boston, MA 02110-1800

Date:_____

**Gibbons, P.C.**
**Attorneys for Jay H. Burrill**

By:_____

Edward F. McTiernan
Gibbons, P.C.
One Gateway Center
Newark, NJ 07102-5310

Date:_____

| | |
|---|---|
| **Anne Milgram Attorney General of New Jersey** | **W. R. Grace & Co., et al. ("Debtors")** |
| By:_____ | By:_____ |
| John F. Dickinson, Jr.<br>Deputy Attorney General<br>Richard J. Hughes Justice Complex<br>25 Market Street, PO Box 093<br>Trenton, NJ 08625-0093 | William M. Corcoran<br>Vice President, Public and Regulatory Affairs<br>W.R. Grace & Co.<br>7500 Grace Drive<br>Columbia, Maryland 21044 |
| Date:_____ | Date:_____ |
| **Weil, Gotshal & Manges LLP**<br>**Attorneys for Robert J. Bettacchi** | **Gibbons, P.C.**<br>**Attorneys for Jay H. Burrill** |
| By:*Thomas C. Frongillo* | By:_____ |
| Thomas C. Frongillo<br>100 Federal Street<br>34th Floor<br>Boston, MA 02110-1800 | Edward F. McTiernan<br>Gibbons, P.C.<br>One Gateway Center<br>Newark, NJ 07102-5310 |
| Date: *Oct 19, 2009* | Date:_____ |

| | |
|---|---|
| **Anne Milgram Attorney General of New Jersey** | **W. R. Grace & Co., et al. ("<u>Debtors</u>")** |
| By:_____ | By:_____ |
| John F. Dickinson, Jr.<br>Deputy Attorney General<br>Richard J. Hughes Justice Complex<br>25 Market Street, PO Box 093<br>Trenton, NJ 08625-0093 | William M. Corcoran<br>Vice President, Public and Regulatory Affairs<br>W.R. Grace & Co.<br>7500 Grace Drive<br>Columbia, Maryland 21044 |
| Date:_____ | Date:_____ |
| **Weil, Gotshal & Manges LLP**<br>**Attorneys for Robert J. Bettacchi** | **Gibbons, P.C.**<br>**Attorneys for Jay H. Burrill** |
| By:_____ | By:_____ |
| Thomas C. Frongillo<br>100 Federal Street<br>34th Floor<br>Boston, MA 02110-1800 | Edward F. McTiernan<br>Gibbons, P.C.<br>One Gateway Center<br>Newark, NJ 07102-5310 |
| Date:_____ | Date:_ Oct.br 19, 2009 _ |

# EXHIBIT B

To: <cathy_bryant@urscorp.com>, <michael_ackerbergs@urscorp.com>
From: "Jay Nickerson" <Jay.Nickerson@dep.state.nj.us>
Date: 04/30/2010 11:36AM
cc: "Ann Wolf" <Ann.Wolf@dep.state.nj.us>
Subject: WR Grace Site, ISRA Case #E94651

Michael and Cathy

The New Jersey Department of Environmental Protection (Department) performed a site visit on April 29, 2010 at the WR Grace site, and has completed its review of the October 30, 2006 Non-Asbestos Soil Remedial Investigation Report (RIR), the October 30, 2006 Ground Water RIR, the February 9, 2007 Ground Water RIR, the April 20, 2007 Ground Water Remedial Action Workplan (RAW), September 15, 2009 Public Notification Document and the USEPA's May 30, 2008 Final Removal Action Report (prepared by Roux Associates Inc.). Based on the review of these reports, the following comments, concerns and issues/deficiencies were noted. Please review the comments provided below and provide a response with a remedial schedule within two weeks of receipt of this email. If WR Grace is in agreement with the actions provided below, then an approval letter may be issued for the above mentioned documents, if appropriate. Otherwise, a Notice of Deficiency letter may be issued. If you have any questions please contact me at the number provided below or by email.

Comments:

AOC # 1:       8,000 Gallon No. 2 Fuel Oil UST with piping sampling
AOC # 2:       UST Piping (Pumps) of 8,000 Diesel Tank and 1,000 gasoline Tank
AOC #12:       8,000 Diesel UST and two (2) 1,000 Gasoline UST

An 8000 gallon diesel UST and a 1000 gallon gasoline UST were located on the western side of the site. The 8000 gallon UST was removed in 1992 under DEP/BUST and was given an NFA on 4/9/92. During the 2005 investigation, a previously unknown 1000 gallon UST was identified.

4 borings, SB5, SB6, SB7 and SB8, were completed near the 1000 gallon UST. Ground water was identified at 8' below grade surface (bgs). Borings SB5, SB6, SB7 and SB8 had strong petroleum odors at the water table. Samples were collected at 7.5-8' bgs. The VO+10 results were non-detected except for benzene (at 1.9 ppm; slightly above 1 ppm IGW and current SRS of 5 ppb) and xylene (at 24 ppm; < IGW and > IGW SRS of 12 ppm) in sample location SB-6 (7-7.5' bg). Some elevated MDLs were identified, e.g. 1 ppm 5/12/99 SCC and MDL identified as 1.4 ppm. This is acceptable; slightly elevated. The slightly elevated MDL's were reported for chlorinated compounds unrelated to fuel oil contents. TPHC results ND to 2900 ppm; below 6/08 SRS for TPHC of 5100 ppm. Monitoring wells MW-1 and MW-2 are located downgradient and within 10' of the two USTs. On 3/10/06, a ground water sample was collected from MW1 and benzene was identified at 3.57 ppb. All other VO results were < GWQS. On 8/10/2006, ground water samples were collected from MW1 and MW2 and were non-detect for VO's. Monitoring well MW3 was placed downgradient of this AOC. Downgradient well MW3 was sampled for VO+10; MTBE was identified at 1360 ppb in MW3. Upgradient well MW-4 was also sample; VOs were ND in the ground water sample collected from MW4. On 9/27/2006, a second round of ground water samples were collected from MW1, MW2, MW3 and MW4; all results were ND for VO's except for MTBE in MW3 at 930 ppb. (Summary: 3/10/06 * benzene in MW1;   8/10/06 MW1/MW2/MW4

VO's ND and MW3 MTBE >GWQS; 9/27/06 MW1/MW2/MW4 VOs ND and MW3 MTBE > GWQS).

April 2007 report: subsequently, temporary well points TW-1 through TW-10 were placed around MW-3 to delineate extent of MTBE. MTBE identified in TW7 downgradient of MW3 at 2100 ppb. MTBE is delineated. Benzene was identified at 24 ppb in TW10 which is downgradient from sample location MW1 (VOs ND). Benzene is delineated.

WR Grace may resample MW3 to confirm presence/absence of MTBE in ground water. Due to natural attenuation, MTBE may no longer be an issue at the site. Or, WR Grace will need to provide a proposal to address MTBE for ground water in MW3. In monitoring well MW1, ground water was sample twice after the initial identification of benzene and was ND. Monitoring well MW1 is acceptable with no contaminants. WR Grace should resample to confirm presence or absence of benzene in temporary well point location TW10. If benzene is identified above GWQS, then need to remediate the benzene contamination previously identified in soil sample location SB6.

Note: The 1000 gallon UST is still in place. The 1000 gallon UST needs to be properly excavated or, if appropriate, abandoned in placed per TRSR NJAC 7:26E-6.3 (b), and registered and delisted with the DEP.

The two 8,000 gallon USTs have been properly registered and delisted, and removed.

AOC #3:    Area of Concern:    Black Ash Type Layer

A black ash like layer was identified in the former truck trailer area on the south side of the site, near the former UST located on the east side of the site, and near the former and present UST on the west side of the site. 41 soil samples were collected from the site. Soil samples identified as SB-1 through SB28 and SS1 through SS13. Fill varies in range from 0.5 to 6 ft and beginning at depths ranging from 0 bgs to 4.7' bgs (section 3.2). DEP designated historic fill GIS data base indicates historic fill on site. Soil samples analyzed for PPMs, PCBs, and SV+15. Contaminants identified include PAHs b(a)p, b(a)a, b(b)f, b(k)f, chrysene, indeno(1,2,3-cd)pyrene and dibenz(a,h)anthracene, and PPMs Pb and As. Results are above the Residential and Non-residential 6/08 soil remediation standards. No sampling performed for Asbestos. In determining the characteristics of fill material, need to investigate for the presence of asbestos in on site and in areas outside those areas investigated by the USEPA.

No soil boring logs were provided; however, boring logs were provided with the ground water reports for the monitoring wells. Ash and black sandy type material reported. No boring logs were provided for the southwestern portion of the site (not addressed by USEPA and no ground water monitoring wells placed in this area. Need a proposal, to address fill (deed notice and engineering control are minimum requirements). The 0-2' interval at the site is not an acceptable engineering control since it is reported that the contaminated fill exists at 0' bgs (section 3.2). Contaminated fill is ubiquitous. The existing asphalt and concrete will need to be evaluated to determine there acceptability as an engineering control.

AOC #4:    Hydraulic Lift Pit

Identified in case file. Hydraulic lift pits were located in the building to lift vermiculite to the furnaces. Pits were steel lined and were not noted to have any breaches in integrity. Measured 5' long, 3.5' deep. After WR Grace vacated the site the pits were filled and paved with concrete. Need to investigate the soil adjacent/beneath the pit for TPHC, PAHs and asbestos per TRSR * 7:26E-3.9, since AOC managed hydraulic oil and asbestos.

AOC #5:    Solid Waste Dumpsters

All dumpsters reportedly used for solid non-hazardous waste.  The areas where all 3 dumpsters were located were excavated in the summer 2004 by USEPA for asbestos containing vermiculite.  Area now cover with stone.  Acceptable.

AOC #6:    Trailer Storage Area (Area C in SI Report)

Truck trailer storage area in Area C.  Area has been unpaved.  Oiling of area has occurred to control dust in area.   13 soil samples collected in the area of the former truck parking area due to report of oiling of unpaved areas.  Analysis of 0-6" for BN+15 and TPHCs, and VOCs sampled at 18-24".  Ash and black sandy type material identified in borings.  Elevated BNs found in SS1 [b(a)a, b(k)f, b(a)p], SS2 [b(a)p], SS3 [b(a)p, b(k)f, b(b)f, b(a)p, indeno(1,2,3-cd)p, dibenz(a,h)a], SS8 [b(a)a, b(k)f, b(b)f] and SS-10 [b(a)a, b(k)f, b(a)p].  TPHCs < 6/2/08 SRS.  VOCs are non-detected, except in SS1 (PCE at 170 ppb) and SS7 (PCE at 180 ppb), which are above 6/08 IGW Guidance Criteria of 5 ppb.  Some elevated MDLs, but are acceptable

Need to provide a remedial proposal for contaminated historic fill.

AOC #7:     89-02-08-1039

USTs were removed in 1990 and NFA in April 1992 by NJDEP/BUST.  Acceptable.

AOC #9:    Vermiculite Soils

Disposal of vermiculite soils occurred at the site; also, six 200 ton silos located on the east end of the main building.  Vermiculite soils located offsite (N/E/S), on the east side of the building and to the south of the property and were addressed by the USEPA.  The investigation/remediation did not appear to address the soils located around the exterior of the building (two to three sides of the building)(west, south and SE sides of building).  Based on review of historical photographs, asbestos containing material surrounds  the building.  USEPA issued an acceptance letter for the removal of asbestos containing material performed on and offsite site.  The USEPA remedial activities appeared to be Interim Remedial Measures.  A ground water investigation was not reported by the USEPA.  However, during the excavation process, ground water entered the excavation and was sampled for asbestos.  Asbestos exceeded the SWQS of 7 mf/l (million fibers per liter).  NJDEP GWQS = 7X106f/L>10uma;   same as USEPA SWQS.  Asbestos containing ground water had to be properly disposed of.  No ground water data reported.

Based on 10/2006 Non-Asbestos Soil and GW reports, fill material exists on the immediate west, south and north sides of the building which was not addressed by the USEPA.  Ground water was not investigated by USEPA, onsite or offsite (outside of groundwater entering the excavation).  The ground water level was monitored.

USEPA May 3, 2008 Report, page 21, visual observation of water performed in excavation.   Need to investigate ground water for asbestos and investigate the soil in operational areas on the west, south and SE sides of the building, and close to the north side of the building.

AOC #10:    Rail Cars Area D and H

Rail Car Area A and H located on west side of the site and was used to unload vermiculite.  Rail tracks removed in the summer of 2004 under oversight of USEPA and Amtrak, asbestos containing vermiculite reportedly remediated in this area.  See AOC 9 above.

AOC #11:    No. 2 Fuel Oil AGST (Area B in SI Report)

Investigation for this area of concern is acceptable.

AOC #13:    Ground Water

Need to investigate ground water at site for asbestos.

Also,   see ground water comments in AOC 12 above.

AOC #14:    Child Care Facilities

NJDEP Daycare search * Hamilton Head Start approximately 4500 feet south (2/5/07).
Need to provide a current search for daycare facilities within 400' of site.

AOC #15:    Baseline Ecological Evaluation

Propose that the site does pose an ecological risk.  Proposal cannot be accepted at
this time since remedial investigation is incomplete.

AOC #16:    Vapor Intrusion Pathway    -    Not applicable at this time

AOC #17:    USEPA Interim Asbestos Removal

The USEPA's interim asbestos removal measure performed offsite and onsite (back
eastern section of the property) is acceptable.  Post-excavation sampling was
performed and all samples met the 0.25% remedial criteria for asbestos.    USEPA
report dated May 30, 2008.  NFA required.

AOC #18:    Public Notification Requirement

9/15/2009 Public Notification documentation provided and is acceptable.

If you have any questions please contact me by email or by the telephone number
provided at the end of this email.    Please provided a response within two
weeks (or sooner) of receiving this email.

Jay Nickerson
Site Remediation Program
New Jersey Department of Environmental Protection
(609) 633-1448 telephone
(609) 341-4509 fax

This e-mail and any attachments contain URS Corporation confidential information that may be proprietary or privileged. If you receive this message
in error or are not the intended recipient, you should not retain, distribute, disclose or use any of this information and you should destroy the e-mail and
any attachments or copies.

6/23/2010

# EXHIBIT C

Robert J. Medler, Director
**Remedium Group, Inc.**
A Subsidiary of W. R. Grace & Co.

6401 Poplar Ave., Suite 301
Memphis, TN 38119

Tel: (901) 820-2024
Fax: (901) 820-2061

# Remedium

June 15, 2010

Jay Nickerson, ISRA Case Manager
NJDEP
Site Remediation
401 East State St.
Trenton, NJ 08625

Re:    Hamilton Township Site - ISRA Case #E94651

Dear Jay,

This letter follows and confirms the issues discussed and understanding reached between NJDEP and Grace at the meeting held in your offices on June 11, 2010 concerning the Hamilton Township Site (the "Site"). We appreciate the Department taking the time to meet with us to discuss this matter.

Grace understands and confirms that NJDEP has agreed to bifurcate its technical comments concerning the Site (which comments were provided in your memo to Mike Akerbergs of URS on April 30, 2010) as follows: (1) non-asbestos issues, and (2) asbestos issues, and that NJDEP will address and issue separate letters concerning those matters for the Site.

On behalf of Grace, URS will submit a letter and schedule to NJDEP by June 28, 2010 in response to the Department's April 30, 2010 comments concerning all non-asbestos issues. Grace generally accepts the Department's proposed comments on the non-asbestos issues and is willing to undertake and complete the required remediation for all non-asbestos issues at the Site. On

-2-

that basis, Grace further understands that NJDEP will approve Grace's modified 2006/2007 work plans after incorporating the changes in your comments.

Grace contacted the legal representatives of Amtrak and American Premier Underwriters on June 15, 2010 and has advised them that Grace will take responsibility for addressing the remediation of all non-asbestos issues at the Site. Furthermore, Grace and legal representatives for Amtrak and American Premier Underwriters agreed that responsibility for asbestos issues at the Hamilton Township Site rests with Amtrak and American Premier Underwriters.

Please feel free to contact me if you have any questions concerning the foregoing or related to this matter. Thank you.

Regards,

Robert J. Medler

cc:     M. Akerbergs - URS
        W. M. Corcoran - Grace
        R. A. Emmett, Esquire - Grace
        L. S. Gardner - Remedium
        R. R. Marriam - Remedium
        Benjamin G. Stonelake, Jr., Esquire - American Premier Underwriters
        Charles S. Warren, Esquire - Amtrak


dwp

# EXHIBIT D

From: Jay Nickerson [mailto:Jay.Nickerson@dep.state.nj.us]
Sent: Tuesday, June 22, 2010 1:27 PM
To: Parker, Debbie
Cc: stonelake@blankrome.com; Ann Wolf; John Graham; Gardner, Lynne G.; Emmett, Robert;
Medler, Robert J.; Corcoran, William ; CWarren@KRAMERLEVIN.com;
Michael_Akerbergs@URSCorp.com
Subject: Re: Hamilton Township Site - ISRA Case #E94651

All

Please be advised that the attached letter to the June 17, 2010 email is incorrect.  The
Representatives of the WR Grace were specifically instructed with the following:

a)    Asbestos and non-asbestos issues would be addressed in the same
letter.  For example, if a document came in addressing non-asbestos issues only and not
the asbestos issues, and the non-asbestos were determined to be satisfactory, an approval
would be issued for the non-asbestos issues but the asbestos issue would be addressed as a
deficiency in the same letter;

b)  WR Grace is required to submit a schedule with the remedial timeframes for both the
asbestos and non-asbestos issues; and

c)  The Department did state that it will work with WR Grace and Amtrack (Third Party
Concerns) to help bring this case to closure.

Please be advised that WR Grace is requird to submit a schedule by June 28, 2010 as
specified in Michael Akerbergs email dated May 14, 2010.  If you have any questions,
please contact me at the number provided below or by email.  Regards Jay  Nickerson


Jay Nickerson
Site Remediation Program
New Jersey Department of Environmental Protection
(609) 633-1448 telephone
(609) 341-4509 fax

>>> "Parker, Debbie" <Debbie.Parker@grace.com> 6/17/2010 12:16 PM >>>
This is being sent on behalf of Robert Medler.

Debbie Parker
Sr. Financial Analyst
Remedium Group, Inc.
901-820-2030 (o)
901-849-8300 (c)