

WOMBLE
CARLYLE
SANDRIDGE
& RICE
A PROFESSIONAL LIMITED
LIABILITY COMPANY

222 Delaware Avenue
Wilmington, DE 19801

www.wcsr.com

Francis A. Monaco, Jr.
Attorney
Direct Dial: (302) 252-4340
Direct Fax: (302) 661-7730
E-mail: FMonaco@wcsr.com

August 12, 2010

The Honorable Judith K. Fitzgerald
United States Bankruptcy Court for the
Western District of Pennsylvania
5490 U.S. Steel Tower
600 Grant Street
Pittsburgh, PA 15219

Re: *In re W.R. Grace & Co., et al.,*
Case No. 01-1139 (JKF) (Bankr. D. Del.)

Dear Judge Fitzgerald:

As you are aware, this firm is counsel to the State of Montana in the above-listed bankruptcy cases. As you are further aware, Montana has objected to the confirmation of the Debtors' First Amended Joint Plan of Reorganization (Docket No. 24657) (as such plan has been or may be modified and/or amended, the "Plan"). We are writing to Your Honor pursuant to Rule 7007-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), which states that after completion of trial briefing, "a party may call to the Court's attention and briefly discuss pertinent cases decided after a party's final brief is filed or after oral argument."

By this letter, Montana is bringing to the Court's attention a case decided after briefing and arguments regarding confirmation of the Plan were completed. Namely, in JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.), 607 F.3d 114, 2010 U.S. App. LEXIS 11155 (3d Cir. June 2, 2010) (en banc), the Court of Appeals recently revamped how a court should determine at what point in time a claim for an asbestos personal injury arises. In so doing, the Court of Appeals reversed two prior decisions upon which Montana relied in its trial briefs -- JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.), 400 B.R. 429 (D. Del. 2009) and Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.), 744 F.2d 332 (3d Cir. 1984). Specifically, in its Brief in Opposition to Confirmation of the Plan (Docket No. 21785) filed on May 20, 2009, Montana relied upon those two cases (among others) for the proposition that its requests for contribution and indemnification against the Debtors do not constitute claims that arose pre-petition, and therefore such requests may not be subjected to an injunction pursuant to Bankruptcy Code section 524(g) nor may they be discharged pursuant to Bankruptcy Code section 1141.

WOMBLE
CARLYLE
SANDRIDGE
& RICE
PLLC

Montana does not believe that the new JELD-WEN decision is applicable to Montana's dispute with the Debtors for two reasons. First, the JELD-WEN case did not involve requests for contribution and indemnification, but rather involved direct claims against a debtor for asbestos personal injuries. Second, the lawsuits filed and being filed against Montana allege ongoing tortious actions by Montana. Nevertheless, because the Court of Appeals in JELD-WEN did overturn two prior decisions upon which Montana relied in its brief, Montana is bringing the recent decision to the Court's attention pursuant to Local Rule 7007-1(b). A more thorough description of these cases, and Montana's arguments, follows.

**The Frenville Decision and the JELD-WEN District Court Decision**

The Bankruptcy Code defines the term "claim" to include any "right to payment." 11 U.S.C. § 101(5). The Third Circuit Court of Appeals previously had interpreted that definition of the term "claim" in the context of requests for contribution and indemnification in Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.), 744 F.2d 332 (3d Cir. 1984). In that case, an involuntary petition was filed against the debtor in 1980. Later that year, four banks filed a lawsuit in state court against the debtor's former accountants, alleging that the accountants negligently and recklessly prepared the debtor's pre-petition financial statements. The banks sought damages for their alleged losses exceeding five million dollars. The accountants then sought relief from the automatic stay in order to seek contribution or indemnification from the debtor under state law. The Court of Appeals for the Third Circuit recognized that the automatic stay applies only to claims that arose pre-petition. That Court held that under applicable state law (New York in that case), the accountants did not have a right to payment from the debtor with respect to their requests for contribution or indemnification until after the banks had filed their suit against the accountants. Therefore, the accountants' requests for contribution and indemnification against the debtor arose post-petition. (That was so even though the conduct upon which the accountants' liability was predicated, namely, negligent preparation of the debtor's financial statements, occurred pre-petition.) Id. at 335-37. Consequently, the automatic stay was inapplicable to the requests for contribution and indemnification, since those requests did not arise pre-petition.

Thus, under Frenville, the point in time at which a claim arises previously was based upon when the right to payment under state law accrues. Following Frenville, courts within the Third Circuit continued to apply that interpretation of the term "claim." Indeed, the district court has even applied the Frenville approach in an adversary proceeding in these cases. See Official Committee of Asbestos Personal Injury Claimants v. Fresenius Med. Care Holdings, Inc. (In re W.R. Grace & Co.), 281 B.R. 852, 860 (Bankr. D. Del. 2002) (stating that "Frenville remains the law of this Circuit" regarding the determination of when a claim arises).

Courts in this circuit also previously have applied the Frenville interpretation of the term "claim" for purposes of determining whether a claim may be discharged by a bankruptcy plan. For example, the lower court in JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.), 400 B.R. 429 (D. Del. 2009) previously applied that interpretation in order to determine whether asbestos personal injury claims that arose from pre-petition exposure to asbestos, but based on injuries that were not manifested until after the effective date, could be discharged by the debtors' plan. The lower court in that case recognized that Bankruptcy Code section 1141(c)



provides that after confirmation of a plan, property of the estate is free and clear only of all "claims and interests." 11 U.S.C. § 1141(c) (emphasis added); cf. id. § 1141(d)(1)(A) (providing for a discharge only of "any debt that arose before the date of such confirmation"). Applying the Frenville interpretation of the term "claim," the lower court in JELD-WEN held that such an asbestos personal injury claim was not a pre-petition claim, because the right to payment under state law did not arise until after the plan went effective. Consequently, such a claim was not discharged. Id. at 432.

In their analyses, the Frenville, JELD-WEN, and W.R. Grace courts all turned to state law to determine when a right to payment accrued (and consequently, under Frenville, when a "claim" for purposes of the Bankruptcy Code arose). See Frenville, 744 F.2d at 337 (applying New York law); JELD-WEN, 400 B.R. at 432 (applying New York law, but noting that result would have been the same had federal law been applicable); W.R. Grace, 281 B.R. at 860-61 (applying New Jersey law).

Under Montana law, "a cause of action accrues 'when all elements of the claim . . . exist or have occurred.'" Orr v. State of Montana, 2004 MT 354, P76, 324 Mont. 391, 416, 106 P.3d 100, 117 (2004) (quoting Mont. Code Ann. § 27-2-102(1)(a)). Further, under Montana law, "the right of indemnity does not arise until the obligation arises . . . the absolute right does not arise until payment has been made." Linder v. Missoula County, 251 Mont. 292, 299, 824 P.2d 1004, 1008 (Mont. 1992). Additionally, under Montana law, "[t]he contribution claim . . . does not arise until judgment or settlement is paid or discharged." Id. No settlements or judgments have been entered with or against Montana, and Montana has made no payments in the state court actions against it.

Indeed, the district court has already observed that Montana's requests for contribution and indemnification did not arise as pre-petition "claims," but rather would arise as claims only when and if a judgment is entered against Montana in the state court actions against it. Specifically, in affirming this Court's denial of Montana's request to expand this Court's preliminary injunction to apply to those state court actions, the district court concluded:

> Notwithstanding the State of Montana's pending proof of claim in the bankruptcy proceedings, their potential indemnification claim against Debtors is not contractual and thus insufficient to establish "related-to" jurisdiction under the well established Third Circuit precedent . . . . [T]he state court actions simply have the potential to give rise to a common law indemnification claim against Debtors pending the outcome.

See W.R. Grace & Co. v. Libby Claimants (In re W.R. Grace & Co.), Civ. A. No. 08-246, 2008 U.S. Dist. LEXIS 61361, at *11-12, 16 (D. Del. Aug. 12, 2008) (emphases added).

Thus, Montana maintained in its confirmation trial briefs that the right to payment on its requests for contribution and indemnification has not presently accrued, and therefore such requests are not "claims" as that term is utilized in the Bankruptcy Code, nor are such requests subject to any injunction imposed pursuant to Bankruptcy Code section 524(g). Montana has further maintained that because its requests for contribution and indemnification are not



WOMBLE
CARLYLE
SANDRIDGE
& RICE
PLLC

"claims," those requests will not be discharged by the Plan even if the Plan is confirmed and goes effective.

Additionally, the lawsuits filed and being filed against Montana, allege that the plaintiffs are subjected to present and continuing asbestos exposures caused by the State's alleged failure to provide a clean and healthful environment. In contrast and as discussed below, JELD-WEN involved conduct that arose pre-petition.

**The JELD-WEN Third Circuit Court of Appeals Decision**

On Wednesday, June 2, 2010, the Third Circuit Court of Appeals issued its decision in JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.), 607 F.3d 114, 2010 U.S. App. LEXIS 11155 (3d Cir. June 2, 2010) (en banc). By that decision, the Court of Appeals expressly overturned Frenville's test that previously focused on when the right to payment accrues. Instead, the Court of Appeals adopted a test pursuant to which a claim will be determined to arise at the time that the claimant is exposed to the product or other conduct giving rise to its injury. Specifically, the Court held as follows: "We . . . hold that a 'claim' arises when an individual is exposed prepetition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." Id. at *28. Therefore, because the claimants in that case were exposed to asbestos pre-petition, their claims for asbestos personal injury arose at that time, even if their injuries were not manifested until some future point.

**Implications of the JELD-WEN Third Circuit Court of Appeals Decision**

Notwithstanding the recent JELD-WEN decision by the Third Circuit Court of Appeals, this Court still should find that Montana's requests for contribution and indemnification do not constitute pre-petition "claims" (as that term is used in the Bankruptcy Code), and therefore may not be subjected to an injunction under Bankruptcy Code section 524(g) or discharged pursuant to Bankruptcy Code section 1141.

Under the new JELD-WEN test, the Libby Claimants' asbestos personal injury claims against the Debtors constitute pre-petition "claims" because the conduct that caused their injury (i.e., the Debtors' mining and milling of asbestos-containing vermiculite) occurred pre-petition, even if their injury did not manifest until post-petition. Consequently, those pre-petition "claims" may be subjected to an injunction under Bankruptcy Code section 524(g) and discharged pursuant to Bankruptcy Code section 1141.

However, with respect to Montana's requests for contribution and indemnification, JELD-WEN is not on point, as the Court in that case did not directly address requests for contribution and indemnification, nor as discussed above, did it address alleged conduct that arose post-petition or both pre- and post-petition. Montana's requests for contribution and indemnification arise from Montana being sued in numerous lawsuits in state court. Only after being subjected to liability through various lawsuits would Montana's right to contribution and indemnification from the Debtors arise under Montana state law. Additionally, Montana's alleged conduct continues through the present, and thus, is post-petition. Consequently, the Court should find that those requests for contribution and indemnification do not constitute



pre-petition "claims" under Bankruptcy Code section 101(5), even under the new JELD-WEN test, and therefore such requests may not be subjected to an injunction under Bankruptcy Code section 524(g) or be discharged pursuant to Bankruptcy Code section 1141. Cf. In re Penn Cent. Transp. Co., 71 F.3d 1113, 1115 (3d Cir. 1995) (relying on Frenville, but holding that "claims for contribution and indemnity could not accrue until the [underlying] complaints were filed" and therefore because the claimants "could not have filed [claims] during the . . . bankruptcy, . . . their claims could not have been discharged").

Finally, as the Court is aware, Montana raised several other arguments in opposition to confirmation of the Plan, arguments that the new JELD-WEN opinion should not affect. Specifically, Montana maintained, and continues to maintain, that:

- The Plan fails to comply with Bankruptcy Code section 1122(a) by classifying claims that are not substantially similar within the same class.

- The Plan violates the absolute priority rule by providing for favorable treatment to classes that are junior in priority to Class 6 Asbestos PI Claims.

- The Plan violates the prohibition on unfair discrimination by providing for favorable treatment to classes that are equal in priority to Class 6 Asbestos PI Claims.

- Bankruptcy Code sections 1123(a)(4) and 524(g)(2)(b) require that each claim of a particular class receive the same treatment. The Trust Distribution Procedures fail to comply with those sections by giving disparate treatment to claims within a class. Specifically, the Trust Distribution Procedures:

    - may be interpreted to give disparate treatment by providing for no payout on account of contribution and indemnification claims;

    - give disparate treatment by implementing a first-in-first-out mechanic; and

    - give disparate treatment by imposing additional restrictions or requirements on holders of Indirect PI Trust Claims.

- The Trust Distribution Procedures and the Plan are not fair and equitable for additional reasons, as set forth in Montana's confirmation trial briefs.

- The Plan was not proposed in good faith because Montana was not included in the negotiations of the Plan.


We do not think that the new JELD-WEN opinion affects those additional arguments, and for those reasons as well, the Court should deny confirmation of the Plan.

Respectfully,

**WOMBLE CARLYLE SANDRIDGE & RICE**
***A Professional Limited Liability Company***

Francis A. Monaco, Jr.

cc: Janet S. Baer, Esq. (by electronic mail)
Theodore L. Freedman, Esq. (by electronic mail)
Laura Davis Jones, Esq. (by electronic mail)
Richard H. Wyron, Esq. (by electronic mail)
Peter Van N. Lockwood, Esq. (by electronic mail)
Roger Frankel, Esq. (by electronic mail)
Jonathan P. Guy, Esq. (by electronic mail)
John C. Phillips, Jr., Esq. (by electronic mail)
Elihu Inselbuch, Esq. (by electronic mail)
Marla R. Eskin, Esq. (by electronic mail)
Mark T. Hurford, Esq. (by electronic mail)
Daniel C. Cohn, Esq. (by electronic mail)
Christopher M. Candon, Esq. (by electronic mail)
Adam G. Landis, Esq. (by electronic mail)